# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL NO. 1456 CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | Judge Patti B. Saris |

## MASTER CONSOLIDATED CLASS ACTION COMPLAINT



# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................3

II.    JURISDICTION AND VENUE .........................................................................5

III.   PARTIES ..............................................................................................................6

      1.     Individual Patients ........................................................................6

      2.     Third-Party Payors ........................................................................8

      3.     Non-Profit Associations Whose Members Purchased
          Prescription Drugs .......................................................................10

IV.    GENERAL ALLEGATIONS APPLICABLE TO ALL DEFENDANTS.........................32

    A.     The AWP System.................................................................................32

    B.     The Defendant Drug Manufacturers' Use Of AWP Fraud To
        Increase Market Share For Their Drugs Covered By Medicare Part B .................34

      1.     The Medicare Insurance Program.................................................34

      2.     Congressional and Other Federal Investigations and Actions ...................36

      3.     The Defendant Drug Manufacturers' Fraudulent Conduct
          Within the Medicare Part B Program..........................................39

          a.     Artificially Inflating AWPs...........................................39

          b.     Improper Use of Free Samples .....................................40

          c.     Other Hidden and Improper Inducements and Price
              Reductions..................................................................40

    C.     The Defendant Drug Manufacturers' Use Of AWP Fraud To Increase
        And Maintain The High Price Of Their Brand Name Drugs Outside
        Of The Medicare Part B Context .....................................................41

    D.     Defendants' Concealment of the Truth.................................................42

    E.     Tolling of Applicable Statutes of Limitation .........................................44

V.     EXAMPLES OF SPECIFIC UNLAWFUL CONDUCT .................................................44

    A.     Abbott .................................................................................................44

    B.     Amgen.................................................................................................46

|      |       |                                                                                       |      |
|------|-------|---------------------------------------------------------------------------------------|------|
|      | C.    | AstraZeneca ......................................................................... | 47   |
|      | D.    | The Aventis Group (Aventis, Pharma, Hoechst and Behring).............................. | 50   |
|      | E.    | Baxter ............................................................................... | 52   |
|      | F.    | Bayer ................................................................................ | 54   |
|      | G.    | The Boehringer Group (Boehringer, Ben Verue, Bedford) ................................ | 57   |
|      | H.    | Braun ................................................................................ | 58   |
|      | I.    | The BMS Group (Bristol-Myers, OTN and Apothecon) ..................................... | 59   |
|      | J.    | Dey .................................................................................. | 61   |
|      | K.    | The Fujisawa Group (Fujisawa Pharmaceutical, Fujisawa Healthcare, Fujisawa USA)....... | 63   |
|      | L.    | The GSK Group (GlaxoSmithKline, SmithKline Beecham, Glaxo Welcome).....               | 64   |
|      |       | 1.    Glaxo's Zofran .................................................................. | 65   |
|      |       | 2.    SKB's Kytril .................................................................... | 69   |
|      |       | 3.    General Counsel Correspondence between Glaxo and SKB .................... | 71   |
|      | M.    | Immunex .............................................................................. | 73   |
|      | N.    | The Johnson & Johnson Group (J&J, Centocor and Ortho) ................................ | 75   |
|      | O.    | The Pharmacia Group (Pharmacia and P&U)............................................... | 76   |
|      | P.    | The Schering-Plough Group (Schering-Plough and Warrick).............................. | 82   |
|      | Q.    | The Sicor Group (Sicor, Gensia and Gensia-Sicor)..................................... | 84   |
|      | R.    | Watson ............................................................................... | 85   |
| VI.  | DIRECT DAMAGE SUSTAINED BY PLAINTIFFS AND THE MEMBERS OF THE CLASS ..................... |      | 86   |
| VII. | CLASS ACTION ALLEGATIONS ............................................................. |      | 87   |
| VIII.| PRAYER FOR RELIEF .................................................................... |      | 158  |
| IX.  | DEMAND FOR JURY TRIAL ................................................................ |      | 159  |

ii

Plaintiffs, by and through their counsel, upon personal knowledge as to their own acts and beliefs, and upon information and belief as to all other matters based upon the investigations of counsel, allege as follows:

## I.   INTRODUCTION

1.    This case is brought by Plaintiffs as a proposed class action on behalf of consumers, self-insured employers, health and welfare plans, health insurers and other end-payors for prescription drugs (the "Class") against most of the nation's largest pharmaceutical companies (referred to as the "Defendant Drug Manufacturers"). One of the goals of this suit is to recover hundreds of millions of dollars overpaid as a result of Defendants' fraudulent scheme to inflate and maintain the high reimbursement amounts upon which payments made by Plaintiffs and Class members for prescription drugs are based.

2.    For the last decade, the Defendant Drug Manufacturers have conspired with others in the distribution chain, including but not limited to physicians and hospitals (hereafter "medical providers" or "providers"), to collect inflated prescription drug payments from Plaintiffs and the Class.

3.    More specifically, the Defendant Drug Manufacturers report to trade publications a drug price – the Average Wholesale Price (or "AWP") – that is deliberately set far above the prices that their drugs are available in the marketplace. The AWPs for these drugs are deliberately false and fictitious and created solely to cause Plaintiffs and the Class members to overpay for drugs. Because all drugs administered under Medicare Part B and brand name drugs administered outside of the Medicare context are priced based on the published AWPs, the Defendant Drug Manufacturers inflate AWP reimbursement rates to enable providers and others to make secret profits through overcharges to patients and their insurers. This, in turn, incentivizes the providers to sell and administer the drugs with the most inflated AWPs, resulting in increased market share and profit for the Defendant Drug

- 3 -

Manufacturers and inflated payments for drugs by individual patients and their insurers (through co-pays or direct payments).

4.      For drugs reimbursed by Medicare Part B (which generally, but not always, require administration in a provider's office), the health care providers administer the drugs and are reimbursed by Medicare based on the inflated AWP.  Thus, the providers benefit by pocketing the "spread" between the AWP and the actual cost that they pay for the drugs, and the Defendant Drug Manufacturers benefit by increasing the sales of their drugs that are covered by Medicare Part B ("Covered Drugs") and by increasing their market share.  In some cases, the Defendant Drug Manufacturers also provide chargebacks, rebates, hidden price discounts and/or other unlawful financial inducements, including free samples, to further increase the provider's spread and, therefore, their incentive to prescribe a particular Defendant Drug Manufacturer's product.

5.      For brand name drugs administered outside of the Medicare Part B context, most patients and health plans pay based on the inflated AWP with an intermediary (for example, a pharmacy benefit manager or others) pocketing the "spread" between the AWP and the actual cost that the intermediaries pay for the brand name drugs.  And similar to the benefit that the Defendant Drug Manufacturers obtain through the AWP scheme for Part B drugs, the Defendant Drug Manufacturers also benefit from the AWP scheme by increasing the sales of their particular brand name drugs and their market share for that drug.

6.      Thus, in a perversion of the type of competitive behavior expected in a market not subject to illegal restraints of trade, the Defendant Drug Manufacturers often promote their drugs not simply with lower prices, but with reimbursement rates based on a fictitious AWP that allows purchasers and intermediaries (including providers and PBMs) to make inflated profits – and the Defendant Drug Manufacturers to increase their market share – at the expense of Plaintiffs and the Class.

- 4 -

7.      The Defendant Drug Manufacturers also caution providers and other intermediaries that the success of the high profit scheme will be jeopardized if anyone discloses the significantly lower prices actually paid for the drugs (allowing the scheme to be concealed and to continue).  All Defendants actively conceal, and caused others to conceal, information about the true pricing structure for the prescription drugs, including the fact that the AWPs for the drugs are deliberately overstated.

8.      This suit, brought under the federal Racketeering and Corrupt Organizations Act and the consumer protection statutes of many states, is necessary to protect consumers, Medicare participants, health plans and insurers from Defendants' predatory and unlawful conduct.

## II.      JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, 18 U.S.C. § 1964(c) because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

10.     The Court has supplemental jurisdiction over the claims for violations of the consumer protection statutes alleged herein.

11.     A substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial District, and Defendants may be found within this judicial District.  Venue is proper in this jurisdiction under 28 U.S.C. § 1391 and 18 U.S.C. § 1965.  Defendants implemented their fraudulent marketing scheme in this District, as well as nationwide, through providers and sales representatives who reside or transact business in this District and thereby affected Class Members, who similarly reside or transact business in this District.

- 5 -

12.     The Judicial Panel on Multidistrict Litigation has, by Order dated April 30,
2002, ordered all related cases in the *In re: Pharmaceutical Industry Average Wholesale Price
Litigation*, MDL Docket Number 1456, transferred to the District of Massachusetts for
coordinated or consolidated pre-trial proceedings.

## III.     PARTIES

### Plaintiffs

#### 1.     Individual Patients

13.     Plaintiff Dr. Shirley Geller ("Geller") is a resident of the State of California.
During the Class Period, Dr. Geller's clinician administered to her a Medicare Plan B covered
prescription drug manufactured and distributed by the Defendant Drug Manufacturers,
including Vancomycin.  Dr. Geller, a Medicare Part B participant, paid the 20% co-payment for
such drugs.

14.     Plaintiff Leroy Townsend ("Townsend") is a resident of the state of Florida.
Towsend has prostate cancer and, during the Class Period, received injections of Zoladex from
his physician.  Townsend is a Medicare Part B participant and has been billed for and paid the
Medicare Part B 20% co-payment.

15.     Plaintiff Betty Sicher ("Sicher") is a citizen and resident of the State of New
York and a member of Plaintiff New York StateWide Senior Action Council.  She resides in
Spring Valley, New York.  During the Class Period, Sicher's clinician administered to her a
Plan B covered prescription drug manufactured and distributed by Defendant Drug
Manufacturers.  Sicher, a Part B participant paid the 20% co-payment.

16.     Plaintiff Joan Lee ("Lee") is a citizen and resident of the State of California and
a member of Plaintiff Gray Panthers of Sacramento and Plaintiff Congress of California
Seniors.  She resides in Sacramento, California.  During the Class Period, Lee's clinician
administered to her a Plan B covered prescription drug manufactured and distributed by the

- 6 -

Defendant Drug Manufacturers.  Lee, a Part B participant, paid the twenty percent (20%) co-payment.

17.      Plaintiff John Bennett ("Bennett") is a citizen and resident of the Commonwealth of Massachusetts and a member of Plaintiff Massachusetts Senior Action Counsel. He resides in Agawam, Massachusetts. During the Class Period, Bennett's clinician administered to him a Plan B covered prescription drug manufactured and distributed by the Defendant Drug Manufacturers.  Bennett, a Part B participant, paid the twenty percent (20%) co-payment.

18.      Plaintiff Pearl Munic ("Munic") is a citizen and resident of the State of Minnesota and a member of Plaintiff Minnesota Senior Federation.  She resides in Duluth, Minnesota. During the Class Period, Munic's clinician administered to her a Part B covered prescription drug manufactured and distributed by the Defendant Drug Manufacturers.  Munic, a Plan B participant, paid the twenty percent (20%) co-payment.

19.      Plaintiff Sue Miles ("Miles") is a citizen and resident of the State of New York. She resides in New York City.  During the Class Period, Miles's clinician administered to her a Part B covered prescription drugs manufactured and distributed by the Defendant Drug Manufacturers.  Miles, a Plan B participant, paid the twenty percent (20%) co-payment.

20.      Plaintiff Jack Douglas ("Douglas") is a citizen and resident of the State of New York.  He resides in Elmhurst, New York.  During the Class Period, Douglas's clinicians administered to him Part B covered prescription drugs manufactured and distributed by the Defendant Drug Manufacturers.  Douglas, a Plan B participant, paid the twenty percent (20%) co-payment.

21.      Plaintiff Jean H. Aierstuck ("Aierstuck") is a citizen and resident of the State of Pennsylvania.  She resides in Leola, Pennsylvania.  During the Class Period, Aierstuck's clinicians administered to her Part B covered prescription drugs manufactured and distributed

1534.16 0018 BSC.DOC

by the Defendant Drug Manufacturers.  Aierstuck, a Plan B participant, paid the twenty percent (20%) co-payment.

22.     Each of the individual patient Plaintiffs overpaid for applicable drugs based on, and in reliance on, the AWPs.

### 2.     Third-Party Payors

23.     Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund ("CMHV") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), and as defined by §§ 1002(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1001, *et seq.*, for the purpose of providing health benefits to eligible participants and beneficiaries.  As such, CMHV is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d).  CMHV maintains its principal place of business at 9555 West Sam Houston Parkway South, Suite 400, Houston, Texas.  During the Class Period, Carpenters Welfare Trust Fund has been billed for and paid charges [or Medicare Part B 20% co-payments] for Covered Drugs and otherwise made payments for brand name drugs outside of the Medicare Part B context based on published AWPs .

24.     Plaintiff Teamsters Health & Welfare Fund of Philadelphia and Vicinity ("THWF") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to §§ 1002(1) and (3) of ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries.  As such, THWF is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d).  THWF maintains its principal place of business at Fourth & Cherry Streets, Philadelphia, Pennsylvania 19106.  It provides comprehensive health coverage for over 28,000 participants and beneficiaries in parts of Pennsylvania, New Jersey and Delaware.  During the Class Period, THWF has been billed

- 8 -

for and paid charges for Covered Drugs, including: Amgen's filgrastin; AstraZeneca's Zoladex; Aventis' Acthar; BMS' Mesnex, Taxol, Paraplatin, Blenoxane, Vepesid, Etopophos and Ifex; GSK's Navelbine, Kytril and Zofran; Immunex' Novantrone; Johnson & Johnson's Remicade; Pharmacia's Camptosar; and various generic drugs from several manufacturers. THWF also made payments for brand name drugs outside of the Medicare Part B context based on published AWPs.

25.     Plaintiff Twin Cities Bakery Workers Health and Welfare Fund ("TCBW") is a jointly administered Taft-Hartley Fund established and maintained pursuant to § 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries. TCBW maintains its principal place of business in Mendota Heights, Minnesota. As such, TCBW is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d). TCBW provides health benefits, including prescription drug benefits, to approximately 2000 active participants, and their spouses and dependants. During the Class Period, TCBW has been billed for and paid charges for Covered Drugs, including: Dey's albuterol sulfate and cromolyn sodium; and Schering-Plough/Warrick's albuterol sulfate. TCBW also made payments for brand name drugs outside of the Medicare Part B context based on published AWPs.

26.     Plaintiff United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW") is an employee welfare benefit plan and employee benefit plan maintained pursuant to section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries. UFCW maintains its principal place of business in Cook County, Illinois. During the Class Period, UFCW has been billed for and paid charges for Covered Drugs, including: Abbott's sodium chloride, gentamicin sulfate, furosemide, heparin lock flush and dextrose; Baxter's sodium chloride and dextrose; Bedford's

- 9 -

leucovorin calcium; Sicor's leucovorin calcium; Pharmacia's methylprednisolone sodium; Braun's sodium chloride; Aventis' Furosemide; Immunex' leucovorin calcium and Johnson & Johnson's Remicade. UFCW also made payments for brand name drugs outside of the Medicare Part B context based on published AWPs.

27.     Each of the Third-Party Payor Plaintiffs named overpaid for applicable drugs based on, and in reliance on, the AWPs.

### 3.     Non-Profit Associations Whose Members Purchased Prescription Drugs

28.     Plaintiff Citizens for Consumer Justice ("CCJ") is a Pennsylvania nonprofit umbrella organization that promotes affordable, quality health care. It is located at Architects Building, 117 South 17th Street, Ste. 311, Philadelphia, Pennsylvania. During the Class Period, CCJ's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, CCJ has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

29.     Plaintiff Citizen Action of New York ("CANY") is a coalition of labor, senior citizen, women's, student, tenant and community organizations that works with community activists for social and economic justice. It is located at 94 Central Avenue, Albany, New York. During the Class Period, CANY's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, CANY has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

30.     Plaintiff Colorado Progressive Coalition ("CPC") is a statewide nonprofit, multiracial network of groups and individuals united for racial and economic justice. It is located at 1420 Ogden Street, 1st Floor, Denver, Colorado. During the Class Period, CPC's members purchased prescription pharmaceuticals manufactured and/or distributed by the

- 10 -

Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, CPC has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

31.     Plaintiff Connecticut Citizen Action Group ("CCAG") is a statewide membership organization dedicated to working with people to bring about social, economic and environmental justice. It is located at 139 Vanderbilt Avenue, West Hartford, Connecticut. During the Class Period, CCAG's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, CCAG has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

32.     Plaintiff Florida Alliance for Retired Americans ("FLARA") is a nonprofit umbrella organization formed in 1963 representing over 80 groups of retired Floridians with a cumulative membership of over 80,000 individuals. It is located at 12773 West Forest Hill Blvd., Ste. 1213, Wellington, Florida. During the Class Period, FLARA's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, FLARA has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

33.     Plaintiff Gray Panthers of Sacramento ("Gray Panthers") is a non-profit organization devoted to advocating justice and equal access for its members and those who are powerless. It has an address at P.O. Box 19438, Sacramento, California 19348. During the Class Period, Gray Panther's members purchased prescription pharmaceuticals manufactured and or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an

- 11 -

unincorporated association, Gray Panthers has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

34.    Plaintiff Health Care For All, Inc. ("HCA") is a non-profit organization devoted to making health care a right of all people. It is located at 30 Winter Street, 10th Floor, Boston, Massachusetts. During the Class Period, HCA's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, HCA has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

35.    Plaintiff Maine Consumers for Affordable Health Care ("MCAHC") is a non-profit organization committed to helping the people of Maine obtain affordable, quality health care. It is located at One Weston Court, Level 1, Augusta, Maine. During the Class Period, MCAHC's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, MCAHC has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

36.    Plaintiff Massachusetts Senior Action Council ("MSAC") is a nonprofit advocacy group for seniors, especially championing health care issues. It has 3,000 individual members and over 60 affiliate organizations. It is located at 565 Warren Street, Boston, Massachusetts. During the Class Period, MSAC's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, MSAC has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

37.    Plaintiff MASSPIRG is Massachusetts' largest consumer advocacy group. It is located at 29 Temple Place, Boston, Massachusetts. During the Class Period, MASSPIRG's

- 12 -

members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, MASSPIRG has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

38.      Plaintiff Minnesota Senior Federation ("MSF") is a statewide, Minnesota nonprofit and nonpartisan organization with 25,000 active members and 400 affiliated organizations, representing 100,000 individuals. It is located at 555 Park St., Ste. 110, St. Paul, Minnesota. During the Class Period, Plaintiff's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, MSF has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

39.      Plaintiff New Jersey Citizen Action ("NJCA") is the state's largest independent citizen watchdog. It is located at 85 Raritan Ave., #100, Highland Park, New Jersey. During the Class Period, NJCA's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, NJCA has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

40.      Plaintiff New York StateWide Senior Action Council ("StateWide") is a grassroots membership organization made up of individual senior citizens and senior citizen clubs from all parts of New York State. It is located at 275 State Street, Albany, New York. During the Class Period, StateWide's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As

- 13 -

an unincorporated association, StateWide has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

41.     Plaintiff North Carolina Fair Share ("NCFS") is a non-profit grassroots organization. It is located at 3824 Barrett Drive, Suite 312, Raleigh, North Carolina. During the Class Period, NCFS's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, NCFS has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

42.     Plaintiff Oregon Health Action Campaign ("OHAC") is a non-profit public interest organization that works to enable Oregon citizens to become better health care consumers while maintaining affordable health care costs. It is located at 3896 Beverly Avenue, N.E., Building J-6, Salem, Oregon. During the Class Period, OHAC's members purchased prescription pharmaceuticals manufactured and /or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged here. As an unincorporated association, OHAC has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

43.     Oregon State Public Interest Research Group ("OSPIRG") is a non-profit public interest research and advocacy group with 33,000 members throughout the State of Oregon. It is located at 1536 S.E. 11th Street, Portland, Oregon. During the Class Period, OSPIRG's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, OSPIRG has standing to pursue this action under Fed. R. Civ. P. 17 (b)(1).

44.     Plaintiff Pennsylvania Alliance for Retired Americans ("PARA") is a nonprofit, advocacy group committed to promoting affordable healthcare. It is located at 2116 Chestnut

- 14 -

St., Philadelphia, Pennsylvania.  During the Class Period, PARA's members purchased
prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug
Manufacturers, made inflated payments or co-payments therefor, and were injured by the
illegal conduct alleged herein.  As an unincorporated association, PARA has standing to pursue
this action under Fed. R. Civ. P. 17(b)(1).

      45.     Plaintiff United Senior Action of Indiana, Inc. ("USAI") is a nonprofit advocacy
group located at 1920 West Morris St., #246, Indianapolis, Indiana.  During the Class Period,
USAI's members purchased prescription pharmaceuticals manufactured and/or distributed by
the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were
injured by the illegal conduct alleged herein.  As an unincorporated association, USAI has
standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

      46.     Plaintiff Vermont Public Interest Research Group ("VPIRG") has been
Vermont's leading watchdog and advocacy group since 1972.  It is located at 141 Main Street,
Ste. 6, Montpelier, Vermont.  During the Class Period, VPIRG's members purchased
prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug
Manufacturers, made inflated payments or co-payments therefor, and were injured by the
illegal conduct alleged herein.  As an unincorporated association, VPIRG has standing to
pursue this action under Fed. R. Civ. P. 17(b)(1).

      47.     Plaintiff West Virginia Citizen Action ("WVCA") is a nonprofit organization
devoted to increase the voice of the average citizen in public affairs with an emphasis on health
care reform.  It is located at 1500 Dixie Street, Charlestown, West Virginia.  During the Class
Period, WVCA's members purchased prescription pharmaceuticals manufactured and/or
distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments
therefor, and were injured by the illegal conduct alleged herein.  As an unincorporated
association, WVCA has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

48.     Plaintiff Wisconsin Citizen Action ("WCA") is the state's premiere public interest organization with 53,000 individual members and 250 affiliate organizations. It is located at 1202 Williamson St., Suite B, Madison, Wisconsin. During the Class Period, Plaintiff's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, WCA has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

49.     Action Alliance of Senior Citizens of Greater Philadelphia ("AASCGP") is a non-profit corporation organized under the laws of the State of Pennsylvania and is located in Philadelphia County, Pennsylvania. During the Class Period, AASCGP's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefor, and were injured by the illegal conduct alleged herein. As an unincorporated association, AASCGP, has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).

50.     Each Plaintiff and all Class Members paid for the Covered Drugs and/or brand name drugs based upon and in reliance on the AWPs published by each Defendant Drug Manufacturer for those drugs.

**Defendants**

51.     The acts charged in this complaint as having been done by the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of the Defendants' business or affairs.

52.     Various other individuals, partnerships, sole proprietors, business entities, companies and corporations, presently unknown to Plaintiffs and not named as Defendants in this Complaint, participated as co-conspirators in the violations alleged in this Complaint and performed acts and made statements in furtherance thereof. Such unknown persons or entities

- 16 -

acted as co-conspirators and aided, abetted or participated with Defendants in the commission of the wrongful acts alleged in this Complaint.

**Abbott**

53.     Defendant Abbott Laboratories ("Abbott") is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois.  Abbott is a diversified health care company that discovers, develops, manufactures, and markets health care products and pharmaceuticals.  Abbott's principal businesses are global pharmaceuticals, nutritionals, and medical products.  Abbott reported revenues for the year 2000 of approximately $13.7 billion and net earnings of $2.8 billion.

54.     Abbott, one of the world's largest pharmaceutical companies, is in the business of manufacturing prescription medications for clinical distribution by Medicare Plan B providers nationwide.  The drugs manufactured by Abbott and covered by Medicare Part B include, but may not be limited to:  acetylcysteine, acyclovir, amikacin sulfate, calcitriol, cimetidine hydrochloride, clindamycin phosphate, dextrose, dextrose sodium chloride, diazepam, furosemide, gentamicin sulfate, heparin lock flush, metholprednisolone sodium succinate, sodium chloride, tobramycin sulfate, vancomycin, and zemplar.

**Amgen**

55.     Defendant Amgen Inc. ("Amgen") is a California corporation with its principal place of business at Amgen Center, Thousand Oaks, California.  Amgen is a biotechnology corporation that focuses its research and development efforts on drugs related to nephrology, cancer, inflammation, neurology and metabolism.  In 2000, Amgen's revenues exceeded $3.6 billion.

56.     Amgen is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.  Pharmaceuticals that are manufactured by Amgen and covered by Medicare Part B include, but may not be limited to, Epogen® (epoetin alfa) and Neupogen® (filgrastim).

- 17 -

1534.16 0018 BSC.DOC

**AstraZeneca**

57.     Defendant Zeneca, Inc. ("Zeneca") is a Delaware corporation with its principal place of business at Malvern, Pennsylvania.  Zeneca is a wholly owned subsidiary of AstraZeneca, PLC, a limited liability company domiciled in the United Kingdom.

58.     Defendant AstraZeneca US is a Delaware corporation with its principal place of business at 1800 Concord Pike, Wilmington, Delaware.

59.     Defendant AstraZeneca Pharmaceuticals L.P. is a Delaware corporation, with its principal place of business located at 1800 Concord Pike, Wilmington, Delaware.  AstraZeneca Pharmaceuticals L.P. is owned and controlled by AstraZeneca PLC, a public limited liability company domiciled in the United Kingdom.

60.     AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P. and AstraZeneca U.S. are collectively referred to as "AstraZeneca."

61.     AstraZeneca maintains research and development and manufacturing facilities worldwide, including in the United States.  AstraZeneca reported annual sales of $16.5 billion in 2001, with an operating profit of $4.2 billion.

62.     AstraZeneca manufactures and markets several drugs covered by Medicare Part B including, but not limited to:  Zoladex® (goserilin acetate implant), Nolvadex® (tamoxifen citrate), Tomudex® (raltitrexed) and Diprivan® (propofol).

**The Aventis Group (Aventis, Pharma, Hoechst and Behring)**

63.     Defendant Aventis Pharmaceuticals, Inc. ("Pharma") is a Delaware corporation with its principal place of business located at 300-400 Somerset Corporate Blvd., Bridgewater, New Jersey.  Pharma is a wholly owned subsidiary of Aventis, S.A., a company domiciled in France.  Pharma is comprised of the U.S. commercial operations of predecessor companies Rhone-Poulenc Rorer, S.A. and Defendant Hoechst Marion Roussel, Inc. ("Hoechst").  Prior to its acquisition by Pharma, Hoechst was a Delaware corporation with its principal place of business located at 10236 Marion Park Drive, Kansas City, Missouri.

- 18 -

64.     Pharma's principal business activities are the discovery, development, manufacture and sale of prescription pharmaceuticals in the areas of cardiology, oncology, infectious diseases, arthritis, allergies and respiratory disorders, diabetes and central nervous system disorders.  Pharma reported U.S. net sales of approximately $5.8 billion in 2001.

65.     Defendant Aventis Behring L.L.C. ("Behring"), located at 1020 First Avenue, King of Prussia, Pennsylvania, formerly did business as Centeon L.L.C., a 50/50 joint venture between Hoechst and Rhone-Poulenc Rorer, S.A.  When Centeon L.L.C.'s parent companies merged to create Aventis in 1996, Behring became its wholly-owned subsidiary.

66.     Behring is the plasma protein business of Pharma, producing a line of therapies including coagulation therapies for the treatment of hemophilia, wound healing agents used during major surgical procedures, inhibitor treatments that inhibit the formation of blood clots, immunoglobulins for the prevention and treatment of immune disorders, and plasma expanders for the treatment of a variety of conditions such as shock, burns and circulatory disorders.  In 2000, Behring held assets estimated at $1.5 billion.

67.     The drugs manufactured by Pharma, Hoechst and Behring (collectively referred to as "The Aventis Group") and covered by Medicare Part B include, but may not be limited to: Anzemet® (dolasteron mesylate), Bioclate® (antihemo factor viii), Gammar® (immune globulin), Helixate® (antihemo factor viii), Humate-P® (antihemo factor viii), Mononine® (antihemo factor ix complex), Monoclate-P® (antihemo factor viii) and Taxotere® (docetaxel).

**Baxter**

68.     Defendant Baxter International Inc. ("Baxter") is a Delaware corporation with its principal place of business at One Baxter Parkway, Deerfield, Illinois.  Baxter manufactures and distributes prescription drugs to clinical administrators.  Baxter's annual sales from January 1, 2000 through December 31, 2000 were over $6.8 billion.

69.     Defendant Baxter Healthcare Corporation is the principal domestic operating subsidiary of Baxter International.  Baxter International and Baxter Healthcare Corporation are collectively referred to as "Baxter."

70.     Baxter is a global medical products company that, *inter alia*, develops, manufactures, markets and/or distributes drugs to treat cancer, trauma, hemophilia, immune deficiencies, infectious diseases, kidney disease and other disorders.  Baxter reported year 2000 sales of $6.9 billion.

71.     The drugs developed, manufactured, marketed, sold and/or distributed  by Baxter that are covered by Medicare Part B include, but may not be not limited to:  albumin, Bebulin® (factor ix complex), Buminat® (human albumin), dextrose, dextrose sodium chloride, Gammagard® (immune globulin), Iveegam® (immune globulin), Holoxan® (ifosfanide), Uromitexan® (mesna), Endoxan® (cyclophosphamide), Hemofil M® (antihemo factor viii), Proplex T® (factor ix complex), Recombinate® (antihemo factor viii), cisplatin, sodium chloride and diazepam.

**Bayer**

72.     Defendant Bayer Corporation ("Bayer") is an Indiana corporation with its principal place of business located at 100 Bayer Road, Pittsburgh, Pennsylvania.  Bayer is a wholly owned United States subsidiary of a German corporation, Bayer AG.  Bayer's pharmaceutical division is located at 400 Morgan Lane, West Haven, Connecticut.

73.     Bayer is a highly diversified health care company whose principal business includes the development, manufacture, marketing, sale and/or distribution of healthcare products and services, including pharmaceuticals.  Bayer reported sales in the United States of $10.1 billion in 2001 and $8.9 billion in 1999.

74.     Bayer is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.  The pharmaceutical drugs manufactured by Bayer and covered by Medicare Part B include, but may not be limited

- 20 -

to: Kogenate® (antihemo factor viii), FS/Kogenate® (antihemo factor viii), and Koate-DVI® (antihemo factor viii) and Gamimune® (immune globulin), all used to treat hemophilia, and Gamimune® which is used in the treatment of immunodeficiency and autoimmune disorders.

**The Boehringer Group (Boehringer, Ben Venue, Bedford)**

75.     Defendant Boehringer Ingelheim Corp. ("Boehringer"), is a Nevada corporation with its principal place of business located at 900 Ridgefield Road, Ridgefield, Connecticut. Boehringer is a United States subsidiary of Pharma Investment Ltd., of Burlington, Canada, which in turn is a division of C.H. Boehringer Sohn Gurdstucksverwaltung GmbH & Co. KG of Ingelheim, Germany.  Boehringer designs, manufactures and markets pharmaceuticals. Boehringer is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.

76.     Defendant Ben Venue Laboratories Inc. ("Ben Venue") is a Delaware corporation with its principal place of business located at 300 Northfield Road, Bedford, Ohio. Ben Venue is a wholly owned subsidiary of Defendant Boehringer.  Ben Venue is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.

77.     Bedford Laboratories ("Bedford") is a division of Ben Venue with its principal place of business located at 300 Northfield Road, Bedford, Ohio.  Bedford manufactures and markets injectable pharmaceuticals.  Bedford is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.  (Boehringer, Ben Venue, and Bedford are collectively referred to herein as the "Boehringer Group.")

78.     The pharmaceuticals manufactured by the Boehringer Group and covered by Medicare Part B include, but may not be limited to injectable forms of:  acyclovir, bleomycin, cisplatin, cyclosporine, cytarabine, doxorubicin hydrochloride, doxorubicin hydrochloride,

- 21 -

doxycycline, etoposide, leucovorin calcium, leucovorin calcium, methotrexate, mitomycin, paclitaxel, pamidronate disodium, and vinblastine sulfate.

## Braun

79.     Defendant B. Braun Medical Inc. ("Braun") is a Pennsylvania corporation with its principal place of business located at 824 Twelfth Avenue, Bethlehem, PA. Braun designs, manufactures and markets medical devices and certain intravenous solutions. Braun is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.

80.     In 1997, Braun acquired McGaw, Inc. ("McGaw"), a Delaware corporation with a principal place of business in Irvine, CA. Upon information and belief, McGaw ceased to maintain a separate corporate entity upon the acquisition of McGaw by Braun. According to Braun's own marketing materials, Braun accepts responsibility for McGaw's former line of products, including the manufacture and marketing of certain intravenous solutions. Until its acquisition by Braun, McGaw was in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide. (Braun and McGaw are collectively referred to herein as "Braun.")

81.     The pharmaceuticals manufactured by Braun and covered by Medicare Part B include, but may not be limited to intravenous solutions of dextrose, dextrose sodium chloride and sodium chloride.

## The BMS Group

82.     Defendant Bristol-Myers Squibb Co. ("Bristol-Myers") is a Delaware corporation with its principal place of business located at 345 Park Avenue, New York, New York. Bristol-Myers is a multi-national health care company specializing in the manufacturing, marketing and sale of pharmaceuticals and medical devices. For the year 2000, BMS reported revenues of approximately $20 billion and net earnings of $4.7 billion.

83.     Defendant Oncology Therapeutics Network Corp. ("OTN") is a Delaware corporation with its principal place of business located at 395 Oyster Point Boulevard, Suite 405, South San Francisco, California.  OTN has been a wholly-owned subsidiary of Bristol-Myers since its acquisition in 1996.  Prior to 1996, OTN was an independent company.  In 2001, OTN reported revenues of over $1.4 billion.

84.     OTN is a healthcare services and distribution firm that directly sells Bristol-Myers' infusion oncology drugs and related products to approximately 2,300 office-based oncology practices in the United States.  At the time of its acquisition by Bristol-Myers, OTN was the leading distributor of chemotherapeutic drugs and related products for the treatment of cancer.  Bristol-Myers paid OTN a commission for marketing and selling its drugs.  Both prior to and after Bristol-Myers acquired OTN, Bristol-Myers marketed and sold its drugs directly to medical providers across the country, and thus Bristol-Myers and OTN employed and maintained extensive marketing and sales departments.

85.     Defendant Apothecon, Inc. ("Apothecon") is a Delaware corporation with its principal place of business located in Princeton, New Jersey.  It is a subsidiary of Bristol-Myers specializing in small to mid-size niche brand and generic products.

86.     Bristol-Myers, OTN and Apothecon are collectively referred to herein as the "BMS Group."

87.     The BMS Group manufactures and distributes prescription drugs that are clinically distributed by Medicare Plan B providers nationwide.  The drugs manufactured by the BMS Group and covered by Medicare Part B include, but may not be not limited to: Blenoxane® (bleomycin sulfate), Paraplatin® (carboplatin), Cytoxan® (cyclophospamide), Rubex® (doxorubicin hydrochloride), Etopophos® (etoposide), Vepesid® (etoposide), TaxolV (paclitaxel) and Fungizone® (amphotericin B).

- 23 -

**Dey**

88.     Defendant Dey, Inc. ("Dey") is a Delaware corporation with its principal place
of business at 2751 Napa Valley Corporate Drive, Napa, California.  Dey is a unit of Merck
KGaA, a German pharmaceutical conglomerate.

89.     Dey is a specialty pharmaceutical company that primarily develops,
manufactures and markets generic drugs used in the treatment of selected respiratory diseases
and allergies.  Dey, one of the largest U.S. manufacturers of such pharmaceuticals, had net
sales of $266 million in 1998.

90.     The drugs manufactured by Dey and covered by Medicare Part B include, but
may not be not limited to:  albuterol sulfate, acetylcysteine, cromolyn sodium, ipratropium
bromide and metproterenol sulfate.

**The Fujisawa Group (Fujisawa Healthcare, Fujisawa USA)**

91.     Defendant Fujisawa Healthcare, Inc. ("Fujisawa Healthcare") is a Delaware
corporation with its principal place of business located at Three Parkway North, Deerfield,
Illinois, 60015.  Fujisawa Healthcare is a wholly-owned subsidiary of Fujisawa Pharmaceutical
Co. Ltd., a Japanese corporation.  Fujisawa Healthcare focuses its efforts in the therapeutic
areas of immuno-suppression and transplantation, cardiovascular care, skin care, oncology, and
antifungal and anti-infective treatment.

92.     Defendant Fujisawa USA, Inc. ("Fujisawa USA") is a Delaware corporation
with its principal place of business located at Three Parkway North, Deerfield, Illinois.
Fujisawa USA was a wholly-owned subsidiary of Fujisawa Pharmaceutical Co. Ltd.  In 1998,
Fujisawa Healthcare assumed responsibility for Fujisawa USA's portfolio of proprietary
products

93.     The drugs manufactured by Fujisawa Healthcare and Fujisawa USA
(collectively referred to as "The Fujisawa Group") and covered by Medicare Part B include, but
may not be limited to:  Acyclovir Sodium, Dexamethasone Sodium Phosphate, Doxorubicin

- 24 -