agents.  The Pharmacia Group Provider Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Pharmacia Group Provider Enterprise affected interstate commerce.

(s)     *The Schering-Plough Group Provider Enterprise:*  The Schering-Plough Group Provider Enterprise is an association-in-fact consisting of the various and independent medical providers who prescribed Covered Drugs for which the Schering-Plough Group reported an AWP, and the Schering-Plough Group, including its directors, employees and agents.  The Schering-Plough Group Provider Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Schering-Plough Group Provider Enterprise affected interstate commerce.

(t)     *The Sicor Group Provider Enterprise:*  The Sicor Group Provider Enterprise is an association-in-fact consisting of the various and independent medical providers who prescribed Covered Drugs for which the Sicor Group reported an AWP, and the Sicor Group, including its directors, employees and agents.  The Sicor Group Provider Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to

individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Sicor Group Provider Enterprise affected interstate commerce.

(u)     *The Watson Provider Enterprise:* The Watson Provider Enterprise is an association-in-fact consisting of the various and independent medical providers who prescribed Covered Drugs for which Watson reported an AWP, and Watson, including its directors, employees and agents. The Watson Provider Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Watson Provider Enterprise affected interstate commerce.

**The Third-Party Payor AWP Enterprises**

351.    At all relevant times and in the alternative, in accordance with 18 U.S.C. § 1961(4), each of the Plaintiffs identified as Third-Party Payors in ¶¶ 23-26 of the Complaint constituted a separate RICO "enterprise." As alleged herein, during the Class Period each of the Third-Party Payor AWP Enterprises was billed for and paid charges for Covered Drugs Manufactured by the Defendant Drug Manufacturers, and each of these Plaintiffs was victimized by the AWP Scheme. For purposes of this claim, such victim enterprises are referred to as the "Third-Party Payor AWP Enterprises."

**Defendants' Use of the U.S. Mails and Interstate Wire Facilities**

352.    At all relevant times, the AWP Enterprises and the Third-Party Payor AWP Enterprises identified in ¶¶ 350-51 engaged in and affected interstate commerce because they engage in the following activities across state boundaries: The sale and/or purchase of Covered

- 101 -

Drugs, and/or the transmission of sales and marketing literature, and/or the transmission and/or receipt of invoices and payments related to the use of Covered Drugs. During the Class Period, the AWP Enterprises prescribed and/or administered Covered Drugs to thousands of individuals located throughout the United States. Similarly, during the Class Period the Third-Party Payor AWP Enterprises purchased Covered Drugs manufactured and sold by the Defendant Drug Manufacturers.

353.    The Defendant Drug Manufacturers' fraudulent and wrongful practices, illegal conduct and violations of RICO were carried out by an array of employees, working across state boundaries, who necessarily relied upon frequent transfers of documents and information, products and funds by the U.S. mails and interstate wire facilities.

354.    The nature and pervasiveness of the Defendant Drug Manufacturers' AWP Scheme, which was orchestrated out of the Defendant Drug Manufacturers' corporate headquarters, necessarily required those headquarters to communicate directly and frequently by the U.S. mails and interstate wire facilities with various local district managers who oversee the sales forces and the numerous pharmaceutical sales representatives who, in turn, directly communicated with the providers.

355.    Many of the precise dates of the Defendant Drug Manufacturers' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts of mail and wire fraud) have been hidden and cannot be alleged without access to the Defendant Drug Manufacturers' books and records. Indeed, an essential part of the successful operation of the AWP Scheme alleged herein depended upon secrecy, and, as alleged above, the Defendant Drug Manufacturers took deliberate steps to conceal their wrongdoing. However, Plaintiffs can generally describe the occasions on which the RICO predicate acts of mail and wire fraud occurred, and how those acts were in furtherance of the AWP Scheme to defraud and do so below.

- 102 -

356.    The Defendant Drug Manufacturers' use of the U.S. mails and interstate wire facilities to perpetrate their AWP Schemes involved thousands of communications throughout the Class Period including, *inter alia*:

(a)    Marketing materials about the AWPs for Covered Drugs and the available spread, which were sent to providers located across the country;

(b)    Written representations of the AWPs for Covered Drugs made to the *Red Book* and similar publications, which were made at least annually and in many cases several times during a single year;

(c)    Thousands of written and oral communications discussing, confirming and forwarding free samples of drugs, for which the Defendant Drug Manufacturers understood that the providers would unlawfully bill Plaintiffs and Class members;

(d)    Documents providing information or incentives designed to lessen the prices that providers paid for the drugs, and/or to conceal those prices or the AWP Scheme alleged here;

(e)    Written communications, including checks, documents discussing and relating to grants, payments of consulting fees, debt forgiveness and/or other financial inducements, as detailed herein;

(f)    Written and oral communications with U.S. Government agencies and private insurers that fraudulently misrepresented what the AWPs for Covered Drugs were, or that were intended to deter investigations into the AWPs for the Covered Drugs or to forestall changes to reimbursement based on something other than AWPs;

(g)    Written and oral communications with health insurers and patients, including Plaintiffs and the members of the Class, inducing payments for Covered Drugs that were made in reliance on AWPs; and

(h)     Receipts of money on tens of thousands of occasions through the U.S. mails and interstate wire facilities – the wrongful proceeds of the Defendant Drug Manufacturers' AWP Scheme.

(i)     In addition to the above-referenced RICO predicate acts, the Defendant Drug Manufacturers' respective corporate headquarters have communicated by use of the U.S. mails and by interstate wire facilities with their various local headquarters or divisions, in furtherance of the AWP Scheme.  These mails include some of the documents referenced in this Complaint.

## Conduct of the RICO Enterprises' Affairs and RICO Conspiracy

357.    During the Class Period, the Defendant Drug Manufacturers have exerted control over their particular AWP Enterprise (as identified in ¶ 350(a)-(u)), and, in violation of Section 1962(c) of RICO, have conducted or participated in the conduct of the affairs of that particular RICO enterprise, directly or indirectly, in the following ways:

(a)     Each Defendant Drug Manufacturer has directly controlled the price at which providers purchase its Covered Drugs;

(b)     Each Defendant Drug Manufacturer has directly controlled the AWPs that are reported in the *Red Book* and similar industry publications;

(c)     Each Defendant Drug Manufacturer has directly controlled the price at which providers are reimbursed by the Medicare Program;

(d)     Each Defendant Drug Manufacturer has directly controlled the creation and distribution of marketing, sales, and other materials used to inform providers located nationwide of the profit potential of its Covered Drugs;

(e)     Each Defendant Drug Manufacturer has directly controlled the marketing and sales scheme to artificially and unlawfully inflate the Medicare reimbursement rate (and co-payment rate) to induce providers to prescribe Covered Drugs to their patients;

- 104 -

(f)     Each Defendant Drug Manufacturer has directly controlled the use and distribution of free samples of its Covered Drugs to providers;

(g)     Each Defendant Drug Manufacturer has directly or indirectly controlled the ability of providers to unlawfully seek reimbursement from the Medicare Program for free samples;

(h)     Each Defendant Drug Manufacturer has relied upon its employees and agents to promote the AWP Schemes alleged herein through the U.S. mails, through interstate wire facilities, and through direct contacts with providers; and

(i)     Each Defendant Drug Manufacturer has controlled and participated in the affairs of its respective AWP Enterprise by using a fraudulent scheme to manufacture, market and sell its Covered Drugs through the use of unlawful inducements to providers.

358.     Each of the AWP Enterprises identified in ¶ 350(a)-(u) of this Complaint had a hierarchical decision-making structure headed by the respective Defendant Drug Manufacturer. Each of the AWP Enterprises also had a consensual decision-making structure because, as described above, the providers played an active role in the affairs of the enterprise. In violation of Section 1962(d) of RICO, each of the Defendant Drug Manufacturers and each of the providers that were members of the AWP Enterprises conspired to conduct the affairs of such enterprises through the pattern of racketeering activity alleged herein. The conspiratorial agreement between the Defendant Drug Manufacturers and the providers and their overt acts are described in this Complaint.

359.     In violation of Section 1962(c) of RICO, each of the Defendant Drug Manufacturers and the subject providers have conducted the affairs of each of the Third-Party Payor AWP Enterprises with which they dealt by reporting fraudulently inflated AWPs for Covered Drugs and by submitting false and misleading invoices to Plaintiffs, thereby inducing Plaintiffs to pay inflated amounts for Covered Drugs. In violation of Section 1962(d) of RICO,

- 105 -

each of the Defendant Drug Manufacturers and each of the subject providers conspired to conduct the affairs of each of the Third-Party Payor AWP Enterprises with which they dealt through the pattern of racketeering activity alleged herein. The conspiratorial agreement between the Defendant Drug Manufacturers and the providers and their overt acts that are described in this Complaint.

**Pattern of Racketeering Activity**

360.     Each of the Defendant Drug Manufacturers has conducted and participated in the affairs of its respective AWP Enterprises and the Third-Party Payor AWP Enterprises through a pattern of racketeering activity, including acts that are indictable under 18 U.S.C. § 1341, relating to mail fraud, and 18 U.S.C. § 1343, relating to wire fraud. The Defendant Drug Manufacturers' pattern of racketeering likely involved thousands, if not hundreds-of-thousands, of separate instances of use of the U.S. mails or interstate wire facilities in furtherance of their AWP Scheme. Each of these fraudulent mailings and interstate wire transmissions constitutes a "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) in which the Defendant Drug Manufacturers intended to defraud Plaintiffs and other intended victims of the AWP Scheme.

361.     The Defendant Drug Manufacturers' fraudulent and unlawful AWP Scheme consisted, in part, of deliberately overstating the AWPs for their Covered Drugs, thereby creating a "spread" based on the inflated figure in order to induce providers to prescribe their Covered Drugs to their patients and causing the Medicare program to pay an artificially-inflated rate of reimbursement for the Covered Drugs. The Defendant Drug Manufacturers' AWP Scheme also consisted of providing free samples of the drugs to providers, instructing (or urging) such providers to bill the Medicare program for these free samples, and providing the providers with other unlawful financial incentives, including kickbacks and bribes, to induce use of the Covered Drugs.

- 106 -

362.    The AWP Scheme was calculated and intentionally crafted so as to ensure that the Medicare Program would be over-billed for the Covered Drugs.  In designing and implementing the AWP Scheme, the Defendant Drug Manufacturers were at all times cognizant of the fact that the entire Medicare Program and all patients for whom the Covered Drugs are prescribed rely upon the honesty of the Defendant Drug Manufacturers in setting the AWP as reported in the *Red Book* and similar publications.  Thus, Plaintiffs and the members of Class 1 were intended targets of the Defendant Drug Manufacturers' AWP Scheme.

363.    By intentionally and artificially inflating the AWP and by the providers with unlawful financial inducements to use the Covered Drugs, and by subsequently failing to disclose such practices to the patients from whom reimbursement was sought through the U.S. mails or interstate wire facilities, the Defendant Drug Manufacturers engaged in fraudulent, and unlawful conduct constituting a pattern of racketeering activity.

364.    The Defendant Drug Manufacturers' racketeering activities amounted to a common course of conduct, with a similar pattern and purpose, intended to deceive Plaintiffs and members of the Class.  Each separate use of the U.S. mails and/or interstate wire facilities employed by the Defendant Drug Manufacturers was related, had similar intended purposes, involved similar participants and methods of execution, and had the same results affecting the same victims, including Plaintiffs and members of Class 1.  Each of the Defendant Drug Manufacturers has engaged in the pattern of racketeering activity for the purpose of conducting the ongoing business affairs of its particular AWP Enterprise and the Third-Party Payor AWP Enterprises.

**The Defendant Drug Manufacturers' Motive**

365.    The Defendant Drug Manufacturers' motive in creating and operating the AWP Scheme and conducting the affairs of the RICO enterprises described herein was to fraudulently obtain sales of and profits from their Covered Drugs.

- 107 -

366.    The Defendant Drug Manufacturers' AWP Scheme was designed to, and did, encourage providers to use their Covered Drugs.  Thus, each of the Defendant Drug Manufacturers used the AWP Scheme in an effort to sell more of its Covered Drugs, thereby fraudulently gaining sales and market share and profits.

**Damages Proximately Caused By The Defendant Drug Manufacturers' AWP Scheme**

367.    The Defendant Drug Manufacturers' violations of federal law and their pattern of racketeering activity have directly and proximately caused Plaintiff and members of Class 1 to be injured in their business or property because Plaintiffs and the members of the Class 1 have paid many millions, if not hundreds-of-millions, of dollars in inflated reimbursements or other payments for Covered Drugs.

368.    Defendants sent billing statements through the U.S. mails or by interstate wire facilities and reported AWPs and other information by the same methods in furtherance of their AWP Scheme.  Plaintiffs and the members of Class 1 have made inflated payments for Covered Drugs based on and/or in reliance on reported and false AWPs.

369.    Under the provisions of Section 1962(c) of RICO, the Defendant Drug Manufacturers are jointly and severally liable to Plaintiffs and the members of Class 1 for three times the damages that Plaintiffs and the members of Class 1 have sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## COUNT II

## VIOLATIONS OF 18 U.S.C. § 1962(c)

## (AGAINST DEFENDANT DRUG MANUFACTURERS FOR UNLAWFUL CONDUCT ASSOCIATED WITH MEDICARE PART B COVERED DRUGS)

370.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

371.   This Count, which alleges violations of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), is asserted alternatively against the Defendant Drug Manufacturers on behalf of Class 1 by the Class 1 representatives.

372.   Plaintiffs, the members of Class 1 and the Defendant Drug Manufacturers are each "persons," as that term is defined in 18 U.S.C. § 1961(3).

373.   The following publishers of pharmaceutical industry compendia that periodically publish the AWPs, both in printed and electronic media, for various dosages of drugs are each "persons," as that term is defined in 18 U.S.C. § 1961(3):  (a) Thomson Medical Economics is a division of the Thomson Corporation, a Delaware corporation with its principal place of business located at One Station Place, Stamford, Connecticut, and it is the publisher of the *Drug Topics Red Book*; (b) First DataBank, Inc., a Missouri corporation, with its principal place of business at 1111 Bayhill Drive, San Bruno, California, and it is the publisher of drug pricing information including, but not limited to, *American Druggist First Databank Annual Directory of Pharmaceuticals* and *Essential Directory of Pharmaceuticals*, commonly referred to as the *Blue Book*; (c) and Facts & Comparisons, Inc., a division of Lippincott Williams & Wilkins, Inc., a Pennsylvania corporation which acquired all drug information reference products formerly published by Medi-Span, Inc. and which currently makes available drug pricing information, including, but not limited to, the Medi-Span *Master Drug Data Base*. These entities are collectively referred to herein as "the Publishers."

374.   At all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendant Drug Manufacturers and the Publishers each conducted the affairs of certain association-in-fact enterprises identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity.

**The Publisher Enterprises**

375.   For purposes of this claim, the RICO "enterprises" are associations-in-fact consisting of (a) the various Publishers that reported AWPs for Covered Drugs, and (b) a

- 109 -

Defendant Drug Manufacturer, including its directors, employees and agents ("the Publisher Enterprises"). The Publisher Enterprises are ongoing and continuing business organizations consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.

376.    At all relevant times, each of the Publishers was aware of the Defendants Drug Manufacturers' AWP Scheme, was a knowing and willing participant in that scheme, profited from that scheme and was aware of the involvement of other Publishers in that scheme.

377.    The Publisher Enterprises are identified as follows:

(a)    *The Abbott Publisher Enterprise:* The Abbott Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Abbott, and Abbott, including its directors, employees and agents. The Abbott Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Abbott Publisher Enterprise affected interstate commerce.

(b)    *The Amgen Publisher Enterprise:* The Amgen Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Amgen, and Amgen, including its directors, employees and agents. The Amgen Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and

- 110 -

administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Amgen Publisher Enterprise affected interstate commerce.

      (c)    *The AstraZeneca Publisher Enterprise:*  The AstraZeneca Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by AstraZeneca, and AstraZeneca, including its directors, employees and agents. The AstraZeneca Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the AstraZeneca Publisher Enterprise affected interstate commerce.

      (d)    *The Aventis Group Publisher Enterprise:*  The Aventis Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Aventis Group, and the Aventis Group, including its directors, employees and agents. The Aventis Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Aventis Group Publisher Enterprise affected interstate commerce.

1534.16 0018 BSC.DOC

(e) *The Baxter Publisher Enterprise:* The Baxter Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Baxter, and Baxter, including its directors, employees and agents. The Baxter Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Baxter Publisher Enterprise affected interstate commerce.

(f) *The Bayer Publisher Enterprise:* The Bayer Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Bayer, and Bayer, including its directors, employees and agents. The Bayer Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Bayer Publisher Enterprise affected interstate commerce.

(g) *The Boehringer Group Publisher Enterprise:* The Boehringer Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Boehringer Group, and the Boehringer Group, including its directors, employees and agents. The Boehringer Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the

- 112 -

common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Boehringer Group Publisher Enterprise affected interstate commerce.

(h)    *The Braun Publisher Enterprise:*  The Braun Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Braun, and Braun, including its directors, employees and agents.  The Braun Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Braun Publisher Enterprise affected interstate commerce.

(i)    *The BMS Group Publisher Enterprise:*  The BMS Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the BMS Group, and the BMS Group, including its directors, employees and agents.  The BMS Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the BMS Group Publisher Enterprise affected interstate commerce.

- 113 -

(j)     *The Dey Publisher Enterprise:*  The Dey Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Dey, and Dey, including its directors, employees and agents.  The Dey Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Dey Publisher Enterprise affected interstate commerce.

(k)     *The Fujisawa Group Publisher Enterprise:*  The Fujisawa Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Fujisawa Group, and the Fujisawa Group, including its directors, employees and agents.  The Fujisawa Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Fujisawa Group Publisher Enterprise affected interstate commerce.

(l)     *The GSK Group Publisher Enterprise:*  The GSK Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the GSK Group, and the GSK Group, including its directors, employees and agents.  The GSK Group Publisher Enterprise is an ongoing and continuing business organization consisting of both

- 114 -

corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the GSK Group Publisher Enterprise affected interstate commerce.

(m)     *The Hoffman-La Roche Publisher Enterprise:*  The Hoffman-La Roche Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them Hoffman-La Roche, and Hoffman-La Roche, including its directors, employees and agents.  The Hoffman-La Roche Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Hoffman-La Roche Publisher Enterprise affected interstate commerce.

(n)     *The Immunex Publisher Enterprise:*  The Immunex Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Immunex, and Immunex, including its directors, employees and agents.  The Immunex Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise

- 115 -

health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Immunex Publisher Enterprise affected interstate commerce.

(o)  *The Johnson & Johnson Group Publisher Enterprise:*  The Johnson & Johnson Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Johnson & Johnson Group, and the Johnson & Johnson Group, including its directors, employees and agents. The Johnson & Johnson Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Johnson & Johnson Group Publisher Enterprise affected interstate commerce.

(p)  *The Merck Publisher Enterprise:*  The Merck Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Merck, and Merck, including its directors, employees and agents. The Merck Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Merck Publisher Enterprise affected interstate commerce.

(q)  *The Pfizer Publisher Enterprise:*  The Pfizer Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs

that were provided to them by Pfizer, and Pfizer, including its directors, employees and agents. The Pfizer Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Pfizer Publisher Enterprise affected interstate commerce.

(r)     *The Pharmacia Group Publisher Enterprise:* The Pharmacia Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Pharmacia Group, and the Pharmacia Group, including its directors, employees and agents. The Pharmacia Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Pharmacia Group Publisher Enterprise affected interstate commerce.

(s)     *The Schering-Plough Group Publisher Enterprise:* The Schering-Plough Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Schering-Plough Group, and the Schering-Plough Group, including its directors, employees and agents. The Schering-Plough Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and

- 117 -

administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Schering-Plough Group Publisher Enterprise affected interstate commerce.

(t)     *The Sicor Group Publisher Enterprise:*  The Sicor Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by the Sicor Group, and the Sicor Group, including its directors, employees and agents. The Sicor Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Sicor Group Publisher Enterprise affected interstate commerce.

(u)     *The Watson Publisher Enterprise:*  The Watson Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the Covered Drug AWPs that were provided to them by Watson, and Watson, including its directors, employees and agents. The Watson Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering Covered Drugs to individual Plaintiffs and Class 1 members and to participants in those Plaintiffs and Class 1 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Watson Publisher Enterprise affected interstate commerce.

**The Third-Party Payor Publisher Enterprises**

378.    At all relevant times and in the alternative, in accordance with 18 U.S.C. §
1961(4), each of the Plaintiffs identified as Third-Party Payors in ¶¶ 23-26 of the Complaint
constituted an "enterprise."  As alleged herein, during the Class Period each of the Third-Party
Payor Publisher Enterprises was billed for and paid charges for Covered Drugs manufactured
by the Defendant Drug Manufacturers, and each of these Plaintiffs was victimized by the AWP
Scheme.  For purposes of this claim, such victim enterprises are referred to as the "Third-Party
Payor Publisher Enterprises."

**Defendants' Use of the U.S. Mails and Interstate Wire Facilities**

379.    The Publisher Enterprises and the Third-Party Payor Publisher Enterprises
engaged in and affected interstate commerce because they engage in the following activities
across state boundaries:  The sale, purchase and/or administration of Covered Drugs; and/or the
transmission and/or receipt of sales and marketing literature; and/or the transmission and/or
receipt of invoices, statements and payments related to the use or administration of Covered
Drugs.  During the Class Period, the Publisher Enterprises participated in the administration of
Covered Drugs to millions of individuals located throughout the United States.  Similarly
during the Class Period, the activities of the Third-Party Payor Publisher Enterprises engaged in
and affected interstate commerce because they contracted for the administration of their brand
name prescription drug benefits based on AWPs.

380.    During the Class Period, the Defendants Drug Manufacturers' illegal conduct
and wrongful practices were carried out by an array of employees, working across state
boundaries, who necessarily relied upon frequent transfers of documents and information,
products and funds by the U.S. mails and interstate wire facilities.

381.    The nature and pervasiveness of the Defendant Drug Manufacturers' AWP
Scheme, which was orchestrated out of the corporate headquarters of the Defendant Drug
Manufacturers, necessarily required those headquarters to communicate directly and frequently

- 119 -

by the U.S. mails and by interstate wire facilities with the various local district managers overseeing the sales force, the numerous pharmaceutical sales representatives who, in turn, directly communicated with providers and employees who communicated with the Publishers.

382.    Many of the precise dates of Defendant Drug Manufacturers' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts) have been hidden and cannot be alleged without access to these Defendants' books and records.  Indeed, an essential part of the successful operation of the AWP Scheme alleged herein depended upon secrecy, and as alleged above, the Defendants took deliberate steps to conceal their wrongdoing.  However, Plaintiffs can generally describe the occasions on which the RICO predicate acts of mail fraud and wire fraud occurred, and how those acts were in furtherance of the AWP Scheme and do so below.

383.    The Defendant Drug Manufacturers' use of the U.S. mails and interstate wire facilities to perpetrate the AWP Scheme involved thousands of communications throughout the Class Period including, *inter alia*:

(a)    Marketing materials about the AWPs for Covered Drugs and the available spread, which were sent to providers located across the country;

(b)    Written representations of the AWPs made to the Publishers, which were made at least annually and in many cases several times during a single year;

(c)    Documents providing information or incentives designed to lessen the prices that providers paid for Covered Drugs and/or to conceal those prices or the AWP Scheme alleged here;

(d)    Written communications, including checks, relating to rebates, kickbacks or other financial inducements as detailed herein;

(e)    Written and oral communications with U.S. Government agencies and private insurers that fraudulently misrepresented what the AWPs were, or that were

- 120 -

intended to deter investigations into the true nature of the AWPs or to forestall changes to reimbursement based on something other than AWPs;

(f)     Written and oral communications with health insurers and patients, including Plaintiffs and the members of Class 1, inducing payments for the drugs that were made in reliance on AWPs; and

(g)     Receipts of money on tens of thousands of occasions through the U.S. mails and interstate wire facilities – the wrongful proceeds of the Defendant Drug Manufacturers' AWP Scheme.

(h)     In addition to the above-referenced RICO predicate acts, the Publishers have distributed their publications containing false AWPs through the U.S. mails and by interstate wire facilities. Further, Defendants' corporate headquarters have communicated through use of the U.S. mails and by interstate wire facilities with their various local headquarters or divisions, in furtherance of the AWP Scheme. These mails include some of the documents referenced in this Complaint.

## Conduct of the RICO Enterprises' Affairs and RICO Conspiracy

384.    During the Class Period, the Defendant Drug Manufacturers and the Publishers have exerted control over their particular Publisher Enterprise (as identified in ¶ 377(a)-(u)) and, in violation of Section 1962(c) of RICO, have conducted or participated in the conduct of the affairs of that RICO enterprise, directly or indirectly, in the following ways:

(a)     Each Defendant Drug Manufacturer has directly controlled the price for its Covered Drugs;

(b)     Each Defendant Drug Manufacturer has directly controlled the AWPs that are reported by the Publishers;

(c)     Each Defendant Drug Manufacturer has directly controlled the creation and distribution of marketing, sales, and other materials used to inform providers nationwide of the profit potential of its Covered Drugs;

- 121 -

(d)     Each Defendant Drug Manufacturer has relied upon its employees and agents to promote the AWP Scheme through the U.S. mails, through interstate wire facilities, and through direct contacts with providers and the Publishers;

(e)     Each Defendant Drug Manufacturer has controlled and participated in the affairs of its respective Publisher Enterprise by using a fraudulent scheme to manufacture, market and sell its Covered Drugs on the basis of AWPs that each Defendant Drug Manufacturer provides to the Publishers; and

(f)     The Publishers distributed their publications containing false AWPs through the U.S. mails and by interstate wire facilities

385.    Each of the Publisher Enterprises identified in ¶ 377(a)-(u) of this Complaint had a hierarchical decision-making structure headed by the respective Defendant Drug Manufacturer.

386.    In violation of Section 1962(c) of RICO, each of the Defendant Drug Manufacturers have conducted the affairs of each of the Publisher Enterprises with which they associated by reporting fraudulently inflated AWPs for Covered Drugs that were then published by the Publishers.

**Pattern of Racketeering Activity**

387.    Each of the Defendant Drug Manufacturers have conducted and participated in the affairs of the particular Publisher Enterprises through a pattern of racketeering activity, including acts that are indictable under 18 U.S.C. § 1341, relating to mail fraud, and 18 U.S.C. § 1343, relating to wire fraud. These Defendants' pattern of racketeering likely involved thousands, if not hundreds-of-thousands, of separate instances of use of the U.S. mails or interstate wire facilities in furtherance of their AWP Scheme. Each of these fraudulent mailings and interstate wire transmissions constitutes a "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity," within the meaning of 18 U.S.C. § 1961(5), in which the Defendant

- 122 -

Drug Manufacturers intended to defraud Plaintiffs, the members of Class 1 and other intended victims of the AWP Scheme.

388.    The Defendants Drug Manufacturers' fraudulent and unlawful AWP Scheme consisted, in part, of deliberately overstating the AWPs for their Covered Drugs, thereby creating a "spread" based on the inflated figure in order to induce others to advocate and favor that manufacturer's Covered Drugs. Further, others would bill their clients for the Defendant Drug Manufacturers' Covered Drugs based on the inflated AWPs, which did not reflect the true price paid for the Covered Drugs.

389.    The AWP Scheme was calculated and intentionally crafted so as to ensure that Plaintiffs and the members of Class 1 would be over-billed for the drugs. In designing and implementing this scheme, at all times these Defendants were cognizant of the fact that Plaintiffs and the members of Class 1 rely upon the honesty of the Defendant Drug Manufacturers in setting the AWP as reported by the Publishers.

390.    By intentionally and artificially inflating the AWPs, and by subsequently failing to disclose such practices to the individual patients and their insurers, the Defendant Drug Manufacturers engaged in a fraudulent and unlawful course of conduct constituting a pattern of racketeering activity.

391.    Defendants' racketeering activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive Plaintiffs and members of Class 1. Each separate use of the U.S. mails and/or interstate wire facilities employed by the Defendants was related, had similar intended purposes, involved similar participants and methods of execution, and had the same results affecting the same victims, including Plaintiffs and the members of Class 1. Each of the Defendants has engaged in the pattern of racketeering activity for the purpose of conducting the ongoing business affairs of its particular Publisher Enterprise.

- 123 -

**The Defendants' Motive**

392.   The Defendant Drug Manufacturers' motive in creating and operating the AWP Scheme and conducting the affairs of the Publisher Enterprises described herein was to fraudulently obtain sales of and profits from their Covered Drugs.

393.   The AWP Scheme was designed to, and did, encourage others, including providers, to advocate the use of the Defendant Drug Manufacturers' Covered Drugs. Thus, each Defendant Drug Manufacturer used the scheme to sell more of its drugs, thereby fraudulently gaining sales and market share and profits.

**Damages Caused By Defendants' AWP Scheme**

394.   The Defendant Drug Manufacturers' violations of federal law and their pattern of racketeering activity have directly and proximately caused Plaintiffs and the members of Class 1 to be injured in their business or property because Plaintiffs and the members of Class 1 have paid many millions of dollars in inflated reimbursements or other payments for Covered Drugs.

395.   Defendants sent billing statements through the U.S. mails or by interstate wire facilities and reported AWPs and other information by the same methods in furtherance of their AWP Scheme. Plaintiffs and the members of Class 1 have made inflated payments for Covered Drugs based on and/or in reliance on reported and false AWPs.

396.   Under the provisions of Section 1964(c) of RICO, Defendants are jointly and severally liable to Plaintiffs and members of Class 1 for three times the damages that Plaintiffs and the Class 1 members have sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

**COUNT III**

**VIOLATIONS OF 18 U.S.C. § 1962(c)**

**(AGAINST DEFENDANT DRUG MANUFACTURERS – EXCLUDING THE BOEHRINGER GROUP, BRAUN, DEY, FUJISAWA AND WATSON DEFENDANTS –**

- 124 -