**FOR UNLAWFUL CONDUCT ASSOCIATED WITH BRAND NAME PRESCRIPTION DRUGS)**

397.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

398.    This Count, which alleges violations of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), is asserted against the Defendant Drug Manufacturers on behalf of Class 2 by the Class 2 representatives.

399.    Plaintiffs, the members of Class 2 and the Defendant Drug Manufacturers are each "persons," as that term is defined in 18 U.S.C. § 1961(3).

400.    The following publishers of pharmaceutical industry compendia that periodically publish the AWPs, both in printed and electronic media, for various dosages of drugs are each "persons," as that term is defined in 18 U.S.C. § 1961(3):  (a) Thomson Medical Economics is a division of the Thomson Corporation, a Delaware corporation with its principal place of business located at One Station Place, Stamford, Connecticut, and it is the publisher of the *Drug Topics Red Book*; (b) First DataBank, Inc., a Missouri corporation, with its principal place of business at 1111 Bayhill Drive, San Bruno, California, and it is the publisher of drug pricing information, including, but not limited to, *American Druggist First Databank Annual Directory of Pharmaceuticals* and *Essential Directory of Pharmaceuticals*, commonly referred to as the *Blue Book*; (c) and Facts & Comparisons, Inc., a division of Lippincott Williams & Wilkins, Inc., a Pennsylvania corporation which acquired all drug information reference products formerly published by Medi-Span, Inc. and which currently makes available drug pricing information including, but not limited to, the Medi-Span *Master Drug Data Base*. These entities are collectively referred to herein as "the Publishers."

401.    At all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendant Drug Manufacturers and the Publishers each conducted the affairs of certain association-in-fact

enterprises identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity.

**The Publisher Enterprises**

402.   For purposes of this claim, the RICO "enterprises" are associations-in-fact each consisting of (a) the various Publishers that reported AWPs for brand name drugs, and (b) a Defendant Drug Manufacturer, including its directors, employees and agents ("the Publisher Enterprises"). The Publisher Enterprises are ongoing and continuing business organizations consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.

403.   At all relevant times, each of the Publishers was aware of the Defendants Drug Manufacturers' AWP Scheme, was a knowing and willing participant in that scheme, profited from that scheme and was aware of the involvement of other Publishers in that scheme.

404.   The Publisher Enterprises are identified as follows:

(a)   *The Abbott Publisher Enterprise:*  The Abbott Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Abbott, and Abbott, including its directors, employees and agents. The Abbott Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Abbott Publisher Enterprise affected interstate commerce.

- 126 -

(b)     *The Amgen Publisher Enterprise:*  The Amgen Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Amgen, and Amgen, including its directors, employees and agents.  The Amgen Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Amgen Publisher Enterprise affected interstate commerce.

(c)     *The AstraZeneca Publisher Enterprise:*  The AstraZeneca Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by AstraZeneca, and AstraZeneca, including its directors, employees and agents.  The AstraZeneca Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the AstraZeneca Publisher Enterprise affected interstate commerce.

(d)     *The Aventis Group Publisher Enterprise:*  The Aventis Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by the Aventis Group, and the Aventis Group, including its directors, employees and agents.  The Aventis Group Publisher Enterprise is an ongoing and continuing business organization consisting of both

- 127 -

corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Aventis Group Publisher Enterprise affected interstate commerce.

(e)     *The Baxter Publisher Enterprise:*  The Baxter Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Baxter, and Baxter, including its directors, employees and agents.  The Baxter Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Baxter Publisher Enterprise affected interstate commerce.

(f)     *The Bayer Publisher Enterprise:*  The Bayer Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Bayer, and Bayer, including its directors, employees and agents.  The Bayer Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Bayer Publisher Enterprise affected interstate commerce.

- 128 -

(g)     *The BMS Group Publisher Enterprise:*  The BMS Group Publisher

Enterprise is an association-in-fact consisting of the Publishers that reported the brand

name drug AWPs that were provided to them by the BMS Group, and the BMS Group,

including its directors, employees and agents.  The BMS Group Publisher Enterprise is

an ongoing and continuing business organization consisting of both corporations and

individuals that are and have been associated for the common purposes of selling,

purchasing, prescribing, and administering brand name drugs to individual Plaintiffs

and Class 2 members and to participants in those Plaintiffs and Class 2 members that

comprise health and welfare plans, and deriving profits from these activities.  At all

relevant times hereto, the activities of the BMS Group Publisher Enterprise affected

interstate commerce.

(h)     *The GSK Group Publisher Enterprise:*  The GSK Group Publisher

Enterprise is an association-in-fact consisting of the Publishers that reported the brand

name drug AWPs that were provided to them by the GSK Group, and the GSK Group,

including its directors, employees and agents.  The GSK Group Publisher Enterprise is

an ongoing and continuing business organization consisting of both corporations and

individuals that are and have been associated for the common purposes of selling,

purchasing, prescribing, and administering brand name drugs to individual Plaintiffs

and Class 2 members and to participants in those Plaintiffs and Class 2 members that

comprise health and welfare plans, and deriving profits from these activities.  At all

relevant times hereto, the activities of the GSK Group Publisher Enterprise affected

interstate commerce.

(i)     *The Hoffman-La Roche Publisher Enterprise:*  The Hoffman-La Roche

Publisher Enterprise is an association-in-fact consisting of the Publishers that reported

the brand name drug AWPs that were provided to them Hoffman-La Roche, and

Hoffman-La Roche, including its directors, employees and agents.  The Hoffman-La

- 129 -

Roche Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Hoffman-La Roche Publisher Enterprise affected interstate commerce.

(j)     *The Immunex Publisher Enterprise:*  The Immunex Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Immunex, and Immunex, including its directors, employees and agents. The Immunex Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Immunex Publisher Enterprise affected interstate commerce.

(k)     *The Johnson & Johnson Group Publisher Enterprise:*  The Johnson & Johnson Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by the Johnson & Johnson Group, and the Johnson & Johnson Group, including its directors, employees and agents. The Johnson & Johnson Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that

- 130 -

comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Johnson & Johnson Group Publisher Enterprise affected interstate commerce.

(l)      *The Merck Publisher Enterprise:*  The Merck Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Merck, and Merck, including its directors, employees and agents.  The Merck Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Merck Publisher Enterprise affected interstate commerce.

(m)      *The Pfizer Publisher Enterprise:*  The Pfizer Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by Pfizer, and Pfizer, including its directors, employees and agents.  The Pfizer Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Pfizer Publisher Enterprise affected interstate commerce.

(n)      *The Pharmacia Group Publisher Enterprise:*  The Pharmacia Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by the Pharmacia Group, and

- 131 -

the Pharmacia Group, including its directors, employees and agents. The Pharmacia Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Pharmacia Group Publisher Enterprise affected interstate commerce.

(o)     *The Schering-Plough Group Publisher Enterprise:* The Schering-Plough Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by the Schering-Plough Group, and the Schering-Plough Group, including its directors, employees and agents. The Schering-Plough Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Schering-Plough Group Publisher Enterprise affected interstate commerce.

(p)     *The Sicor Group Publisher Enterprise:* The Sicor Group Publisher Enterprise is an association-in-fact consisting of the Publishers that reported the brand name drug AWPs that were provided to them by the Sicor Group, and the Sicor Group, including its directors, employees and agents. The Sicor Group Publisher Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling,

- 132 -

purchasing, prescribing, and administering brand name drugs to individual Plaintiffs
and Class 2 members and to participants in those Plaintiffs and Class 2 members that
comprise health and welfare plans, and deriving profits from these activities. At all
relevant times hereto, the activities of the Sicor Group Publisher Enterprise affected
interstate commerce.

## The Third-Party Payor Publisher Enterprises

405.    At all relevant times and in the alternative, in accordance with 18 U.S.C. §
1961(4), each of the Plaintiffs identified as Third-Party Payors in ¶¶ 23-26 of the Complaint
constituted an "enterprise." As alleged herein, during the Class Period each of the Third-Party
Payor Publisher Enterprises was billed for and paid charges for brand name drugs
manufactured by the Defendant Drug Manufacturers, and each of these Plaintiffs was
victimized by the AWP Scheme. For purposes of this claim, such victim enterprises are
referred to as the "Third-Party Payor Publisher Enterprises."

## Defendants' Use of the U.S. Mails and Interstate Wire Facilities

406.    The Publisher Enterprises and the Third-Party Payor Publisher Enterprises
engaged in and affected interstate commerce because they engage in the following activities
across state boundaries:  The sale, purchase and/or administration of brand name drugs; and/or
the transmission and/or receipt of sales and marketing literature; and/or the transmission to
patients of individual prescriptions for brand name drugs by mail-order pharmacies; and/or the
transmission and/or receipt of invoices, statements and payments related to the use or
administration of brand name drugs. During the Class Period, the Publisher Enterprises
participated in the administration of brand name drugs to millions of individuals located
throughout the United States. Similarly during the Class Period, the activities of the Third-
Party Payor Publisher Enterprises engaged in and affected interstate commerce because they
contracted for the administration of their brand name prescription drug benefits based on
AWPs.

- 133 -

407.    During the Class Period, the Defendants Drug Manufacturers' illegal conduct and wrongful practices were carried out by an array of employees, working across state boundaries, who necessarily relied upon frequent transfers of documents and information, products and funds by the U.S. mails and interstate wire facilities.

408.    The nature and pervasiveness of the Defendant Drug Manufacturers' AWP Scheme, which was orchestrated out of the corporate headquarters of the Defendant Drug Manufacturers, necessarily required those headquarters to communicate directly and frequently by the U.S. mails and by interstate wire facilities with the various local district managers overseeing the sales force, the numerous pharmaceutical sales representatives who, in turn, directly communicated with providers and employees who communicated with the Publishers.

409.    Many of the precise dates of Defendant Drug Manufacturers' uses of the U.S. mails and interstate wire facilities (and corresponding RICO predicate acts) have been hidden and cannot be alleged without access to these Defendants' books and records.  Indeed, an essential part of the successful operation of the AWP Scheme alleged herein depended upon secrecy, and as alleged above, the Defendants took deliberate steps to conceal their wrongdoing.  However, Plaintiffs can generally describe the occasions on which the RICO predicate acts of mail fraud and wire fraud occurred, and how those acts were in furtherance of the AWP Scheme and do so below.

410.    The Defendant Drug Manufacturers' use of the U.S. mails and interstate wire facilities to perpetrate the AWP Scheme involved thousands of communications throughout the Class Period including, *inter alia*:

(a)    Marketing materials about the AWPs for brand name drugs and the available spread, which were sent to providers located across the country;

(b)    Written representations of the AWPs made to the Publishers, which were made at least annually and in many cases several times during a single year;

- 134 -

(c)     Documents providing information or incentives designed to lessen the prices that providers paid for brand name drugs, and/or to conceal those prices or the AWP Scheme alleged here;

(d)     Written communications, including checks, relating to rebates, kickbacks or other financial inducements as detailed herein;

(e)     Written and oral communications with U.S. Government agencies and private insurers that fraudulently misrepresented what the AWPs were, or that were intended to deter investigations into the true nature of the AWPs or to forestall changes to reimbursement based on something other than AWPs;

(f)     Written and oral communications with health insurers and patients, including Plaintiffs and the members of Class 2, inducing payments for the drugs that were made in reliance on AWPs; and

(g)     Receipts of money on tens of thousands of occasions through the U.S. mails and interstate wire facilities – the wrongful proceeds of the Defendant Drug Manufacturers' AWP Scheme.

(h)     In addition to the above-referenced RICO predicate acts, the Publishers have distributed their publications containing false AWPs through the U.S. mails and by interstate wire facilities.  Further, Defendants' corporate headquarters have communicated through use of the U.S. mails and by interstate wire facilities with their various local headquarters or divisions, in furtherance of the AWP Scheme. These mails include some of the documents referenced in this Complaint.

## Conduct of the RICO Enterprises' Affairs and RICO Conspiracy

411.    During the Class Period, the Defendant Drug Manufacturers and the Publishers have exerted control over their particular Publisher Enterprise (as identified in ¶ 404(a)-(p)) and in violation of Section 1962(c) of RICO have conducted or participated in the conduct of the affairs of that RICO enterprise, directly or indirectly, in the following ways:

- 135 -

(a)     Each Defendant Drug Manufacturer has directly controlled the price for its brand name drugs;

(b)     Each Defendant Drug Manufacturer has directly controlled the AWPs that are reported by the Publishers;

(c)     Each Defendant Drug Manufacturer has directly controlled the creation and distribution of marketing, sales, and other materials used to inform providers nationwide of the profit potential of its brand name drugs;

(d)     Each Defendant Drug Manufacturer has relied upon its employees and agents to promote the AWP Scheme through the U.S. mails, through interstate wire facilities, and through direct contacts with providers and the Publishers;

(e)     Each Defendant Drug Manufacturer has controlled and participated in the affairs of its respective Publisher Enterprise by using a fraudulent scheme to manufacture, market and sell its brand name drugs on the basis of AWPs that each Defendant Drug Manufacturer provides to the Publishers; and

(f)     The Publishers distributed their publications containing false AWPs through the U.S. mails and by interstate wire facilities.

412.    Each of the Publisher Enterprises identified in ¶ 404(a)-(p) of this Complaint had a hierarchical decision-making structure headed by the respective Defendant Drug Manufacturer.

413.    In violation of Section 1962(c) of RICO, each of the Defendant Drug Manufacturers have conducted the affairs of each of the Publisher Enterprises with which they dealt by reporting fraudulently inflated AWPs for brand name drugs that were then published by the Publishers.

**Pattern of Racketeering Activity**

414.    Each of the Defendant Drug Manufacturers have conducted and participated in the affairs of the particular Publisher Enterprises through a pattern of racketeering activity,

including acts that are indictable under 18 U.S.C. § 1341, relating to mail fraud, and 18 U.S.C. § 1343, relating to wire fraud. These Defendants' pattern of racketeering likely involved thousands, if not hundreds-of-thousands, of separate instances of use of the U.S. mails or interstate wire facilities in furtherance of their AWP Scheme. Each of these fraudulent mailings and interstate wire transmissions constitutes a "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) in which the Defendant Drug Manufacturers intended to defraud Plaintiffs, the members of Class 2 and other intended victims of the AWP Scheme.

415.    The Defendants Drug Manufacturers' fraudulent and unlawful AWP Scheme consisted, in part, of deliberately overstating the AWPs for their brand name drugs, thereby creating a "spread" based on the inflated figure in order to induce others to advocate and favor that manufacturer's brand name drugs. Further, others would bill their clients for the Defendant Drug Manufacturers' brand name drugs based on the inflated AWPs, which did not reflect the true price paid for the brand name drugs.

416.    The AWP Scheme was calculated and intentionally crafted so as to ensure that Plaintiffs and the members of Class 2 would be over-billed for the drugs. In designing and implementing this scheme, at all times these Defendants were cognizant of the fact that Plaintiffs and the members of Class 2 rely upon the honesty of the Defendant Drug Manufacturers in setting the AWP as reported by the Publishers.

417.    By intentionally and artificially inflating the AWPs, and by subsequently failing to disclose such practices to the individual patients and their insurers, the Defendant Drug Manufacturers engaged in a fraudulent and unlawful course of conduct constituting a pattern of racketeering activity.

418.    Defendants' racketeering activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive Plaintiffs and the members of Class 2.

- 137 -

Each separate use of the U.S. mails and/or interstate wire facilities employed by the Defendants was related, had similar intended purposes, involved similar participants and methods of execution, and had the same results affecting the same victims, including Plaintiffs and the members of Class 2. Each of the Defendants has engaged in the pattern of racketeering activity for the purpose of conducting the ongoing business affairs of its particular Publisher Enterprise.

**The Defendants' Motive**

419.   The Defendant Drug Manufacturers' motive in creating and operating the AWP Scheme and conducting the affairs of the Publisher Enterprises described herein was to fraudulently obtain sales of and profits from their brand name drugs.

420.   The AWP Scheme was designed to, and did, encourage others, including providers, to advocate the use of the Defendant Drug Manufacturers' brand name drugs. Thus, each Defendant Drug Manufacturer used the scheme to sell more of its drugs, thereby fraudulently gaining sales and market share and profits.

**Damages Caused By Defendants' AWP Scheme**

421.   The Defendant Drug Manufacturers' violations of federal law and their pattern of racketeering activity have directly and proximately caused Plaintiffs and the members of Class 2 to be injured in their business or property because Plaintiffs and the members of Class 2 have paid many millions of dollars in inflated reimbursements or other payments for brand name drugs.

422.   Defendants sent billing statements through the U.S. mails or by interstate wire facilities and reported AWPs and other information by the same methods in furtherance of their AWP Scheme. Plaintiffs and the members of Class 2 have made inflated payments for Covered Drugs based on and/or in reliance on reported and false AWPs.

423.   Under the provisions of Section 1964(c) of RICO, Defendants are jointly and severally liable to Plaintiffs and members of Class 2 for three times the damages that Plaintiffs

and the Class 2 members have sustained, plus the costs of bringing this suit, including reasonable attorneys' fees.

## COUNT IV

### VIOLATIONS OF 18 U.S.C. § 1962(c)

**(AGAINST DEFENDANT DRUG MANUFACTURERS – EXCLUDING THE BOEHRINGER GROUP, BRAUN, DEY, FUJISAWA AND WATSON DEFENDANTS – FOR UNLAWFUL CONDUCT ASSOCIATED WITH BRAND NAME PRESCRIPTION DRUGS)**

424.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege and incorporate herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

425.    This Count, which alleges violations of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), is asserted in the alternative against the Defendant Drug Manufacturers on behalf of Class 2 by the Class 2 representatives.

426.    Plaintiffs, the members of Class 2 and the Defendant Drug Manufacturers are each "persons," as that term is defined in 18 U.S.C. § 1961(3).

427.    In addition, unnamed pharmacy benefit managers ("PBMs") are each "persons," as that term is defined in 18 U.S.C. § 1961(3). PBMs are fiscal intermediaries that specialize in the administration and management of prescription benefit programs. PBM clients include HMOs, employers, preferred provider organizations and other health insurers and third-party payors (collectively referred to as "health plans"). PBMs purportedly encourage the cost effective utilization of prescription drugs through, *inter alia*, the establishment of formularies. Formularies are lists of required, preferred or recommended medications compiled by the PBMs based on, among other things, negotiated pricing and rebates with drug manufacturers. Formularies are used to steer patients toward the listed or preferred drugs within each therapeutic class through financial or other incentives and penalties (for example, through the use of different levels of co-payments). PBMs administer the formularies for health plans by

- 139 -

contracting with a given health plan to manage the pharmacy benefits program for the plan's members and beneficiaries. PBMs also craft networks of participating pharmacies. In exchange for being included in the network, the participating pharmacies agree to fill pharmaceutical prescriptions at a discount to the PBM. Because PBMs administer the pharmacy benefits for a substantial percentage of health plans and their members within the United States, drug manufacturers are under competitive pressures to have their brand name drugs listed on the formularies established by the PBMs.

428.    At all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendant Drug Manufacturers and the PBMs each conducted the affairs of certain association-in-fact enterprises identified herein, the affairs of which affected interstate commerce through a pattern of racketeering activity.

**The PBM Enterprises**

429.    For purposes of this claim, the RICO "enterprises" are associations-in-fact consisting of (a) PBMs that administered purchases of Defendant Drug Manufacturers' brand name drugs and billed its members on the basis of the Defendant Drug Manufacturers' reported AWPs, and (b) a Defendant Drug Manufacturer, including its directors, employees and agents ("the PBM Enterprises"). The PBM Enterprises are ongoing and continuing business organizations consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.

430.    At all relevant times, each of the PBMs was aware of the Defendants Drug Manufacturers' AWP Scheme, was a knowing and willing participant in that scheme, profited from that scheme and was aware of the involvement of other PBMs in that scheme.

431.    The PBM Enterprises are identified as follows:

- 140 -

(a)    *The Abbott PBM Enterprise:*  The Abbott PBM Enterprise is an
association-in-fact consisting of the PBM Defendants who administered purchases of
Abbott's brand name drugs and billed their members on the basis of Abbott's reported
AWPs, and Abbott, including its directors, employees and agents.  The Abbott PBM
Enterprise is an ongoing and continuing business organization consisting of both
corporations and individuals that are and have been associated for the common purposes
of selling, purchasing, prescribing, and administering brand name drugs to individual
Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2
members that comprise health and welfare plans, and deriving profits from these
activities.  At all relevant times hereto, the activities of the Abbott PBM Enterprise
affected interstate commerce.

(b)    *The Amgen PBM Enterprise:*  The Amgen PBM Enterprise is an
association-in-fact consisting of the PBM Defendants who administered purchases of
Amgen's brand name drugs and billed their members on the basis of Amgen's reported
AWPs, and Amgen, including its directors, employees and agents.  The Amgen PBM
Enterprise is an ongoing and continuing business organization consisting of both
corporations and individuals that are and have been associated for the common purposes
of selling, purchasing, prescribing, and administering brand name drugs to individual
Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2
members that comprise health and welfare plans, and deriving profits from these
activities.  At all relevant times hereto, the activities of the Amgen PBM Enterprise
affected interstate commerce.

(c)    *The AstraZeneca PBM Enterprise:*  The AstraZeneca PBM Enterprise is
an association-in-fact consisting of the PBM Defendants who administered purchases of
AstraZeneca's brand name drugs and billed their members on the basis of
AstraZeneca's reported AWPs, and AstraZeneca, including its directors, employees and

- 141 -

agents. The AstraZeneca PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the AstraZeneca PBM Enterprise affected interstate commerce.

(d)   *The Aventis Group PBM Enterprise:*  The Aventis Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of the Aventis Group's brand name drugs and billed their members on the basis of the Aventis Group's reported AWPs, and the Aventis Group, including its directors, employees and agents.  The Aventis Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Aventis Group PBM Enterprise affected interstate commerce.

(e)   *The Baxter PBM Enterprise:*  The Baxter PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Baxter's brand name drugs and billed their members on the basis of Baxter's reported AWPs, and Baxter, including its directors, employees and agents.  The Baxter PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual

- 142 -

Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Baxter PBM Enterprise affected interstate commerce.

(f)     *The Bayer PBM Enterprise:* The Bayer PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Bayer's brand name drugs and billed their members on the basis of Bayer's reported AWPs, and Bayer, including its directors, employees and agents. The Bayer PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Bayer PBM Enterprise affected interstate commerce.

(g)     *The BMS Group PBM Enterprise:* The BMS Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of BMS Group brand name drugs and billed their members on the basis of the BMS Group's reported AWPs, and the BMS Group, including its directors, employees and agents. The BMS Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the BMS Group PBM Enterprise affected interstate commerce.

- 143 -

(h)     *The GSK Group PBM Enterprise:* The GSK Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of GSK Group brand name drugs and billed their members on the basis of the GSK Group's reported AWPs, and the GSK Group, including its directors, employees and agents. The GSK Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the GSK Group PBM Enterprise affected interstate commerce.

(i)     *The Hoffman-La Roche PBM Enterprise:* The Hoffman-La Roche PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Hoffman-La Roche's brand name drugs and billed their members on the basis of Hoffman-La Roche's reported AWPs, and Hoffman-La Roche, including its directors, employees and agents. The Hoffman-La Roche PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Hoffman-La Roche PBM Enterprise affected interstate commerce.

(j)     *The Immunex PBM Enterprise:* The Immunex PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Immunex' brand name drugs and billed their members on the basis of Immunex'

- 144 -

reported AWPs, and Immunex, including its directors, employees and agents. The Immunex PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Immunex PBM Enterprise affected interstate commerce.

(k)     *The Johnson & Johnson Group PBM Enterprise:* The Johnson & Johnson Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Johnson & Johnson Group brand name drugs and billed their members on the basis of the Johnson & Johnson Group's reported AWPs, and the Johnson & Johnson Group, including its directors, employees and agents. The Johnson & Johnson Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Johnson & Johnson Group PBM Enterprise affected interstate commerce.

(l)     *The Merck Provider Enterprise:* The Merck PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Hoffman-La Roche's brand name drugs and billed their members on the basis of Merck's reported AWPs, and Merck, including its directors, employees and agents. The Merck PBM Enterprise is an ongoing and continuing business organization consisting

- 145 -

of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Merck PBM Enterprise affected interstate commerce.

(m)     *The Pfizer Provider Enterprise:*  The Pfizer PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Pfizer's brand name drugs and billed their members on the basis of Pfizer's reported AWPs, and Pfizer, including its directors, employees and agents. The Pfizer PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities. At all relevant times hereto, the activities of the Pfizer PBM Enterprise affected interstate commerce.

(n)     *The Pharmacia Group PBM Enterprise:*  The Pharmacia Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Pharmacia Group brand name drugs and billed their members on the basis of the Pharmacia Group's reported AWPs, and the Pharmacia Group, including its directors, employees and agents. The Pharmacia Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise

- 146 -

health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Pharmacia Group PBM Enterprise affected interstate commerce.

(o)     *The Schering-Plough Group PBM Enterprise:*  The Schering-Plough Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Schering-Plough Group brand name drugs and billed their members on the basis of the Schering-Plough Group's reported AWPs, and the Schering-Plough Group, including its directors, employees and agents.  The Schering-Plough Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Schering-Plough Group PBM Enterprise affected interstate commerce.

(p)     *The Sicor Group PBM Enterprise:*  The Sicor Group PBM Enterprise is an association-in-fact consisting of the PBM Defendants who administered purchases of Sicor Group brand name drugs and billed their members on the basis of the Sicor Group's reported AWPs, and the Sicor Group, including its directors, employees and agents.  The Sicor Group PBM Enterprise is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common purposes of selling, purchasing, prescribing, and administering brand name drugs to individual Plaintiffs and Class 2 members and to participants in those Plaintiffs and Class 2 members that comprise health and welfare plans, and deriving profits from these activities.  At all relevant times hereto, the activities of the Sicor Group PBM Enterprise affected interstate commerce.

- 147 -

**The Third-Party Payor PBM Enterprises**

432.     At all relevant times and in the alternative, in accordance with 18 U.S.C. §

1961(4), each of the Plaintiffs identified as Third-Party Payors in ¶¶ 23-26 of the Complaint

constituted an "enterprise."  As alleged herein, during the Class Period each of the Third-Party

Payor PBM Enterprises was billed for and paid charges for brand name drugs manufactured by

the Defendant Drug Manufacturers, and each of these Plaintiffs was victimized by the AWP

Scheme.  For purposes of this claim, such victim enterprises are referred to as the "Third-Party

Payor PBM Enterprises."

**Defendants' Use of the U.S. Mails and Interstate Wire Facilities**

433.     The PBM Enterprises and the Third-Party Payor PBM Enterprises engaged in

and affected interstate commerce because they engage in the following activities across state

boundaries:  The sale, purchase and/or administration of brand name drugs; and/or the

transmission and/or receipt of sales and marketing literature; and/or the transmission to patients

of individual prescriptions for brand name drugs by mail-order pharmacies; and/or the

transmission and/or receipt of invoices, statements and payments related to the use or

administration of brand name drugs.  During the Class Period, the PBM Enterprises

participated in the administration of brand name prescription drugs to millions of individuals

located throughout the United States.  Similarly during the Class Period, the activities of the

Third-Party Payor PBM Enterprises engaged in and affected interstate commerce because they

contracted for the administration of their brand name prescription drug benefits based on

AWPs.

434.     During the Class Period, the Defendants Drug Manufacturers' illegal conduct

and wrongful practices were carried out by an array of employees, working across state

boundaries, who necessarily relied upon frequent transfers of documents and information,

products and funds by the U.S. mails and interstate wire facilities.

435.    The nature and pervasiveness of the Defendant Drug Manufacturers' AWP
Scheme, which was orchestrated out of the corporate headquarters of the Defendant Drug
Manufacturers, necessarily required those headquarters to communicate directly and frequently
by the U.S. mails and by interstate wire facilities with the various local district managers
overseeing the sales force, the numerous pharmaceutical sales representatives who, in turn,
directly communicated with providers and employees who communicated with the PBMs.

436.    Many of the precise dates of Defendant Drug Manufacturers' uses of the U.S.
mails and interstate wire facilities (and corresponding RICO predicate acts) have been hidden
and cannot be alleged without access to these Defendants' books and records.  Indeed, an
essential part of the successful operation of the AWP Scheme alleged herein depended upon
secrecy, and as alleged above, the Defendants took deliberate steps to conceal their
wrongdoing.  However, Plaintiffs can generally describe the occasions on which the RICO
predicate acts of mail fraud and wire fraud occurred, and how those acts were in furtherance of
the AWP Scheme and do so below.

437.    The Defendant Drug Manufacturers' use of the U.S. mails and interstate wire
facilities to perpetrate the AWP Scheme involved thousands of communications throughout the
Class Period including, *inter alia*:

        (a)     Marketing materials about the AWPs for brand name drugs and the
        available spread, which were sent to PBMs located across the country;

        (b)     Written representations of the AWPs made to the Publishers, which were
        made at least annually and in many cases several times during a single year;

        (c)     Thousands of written and oral communications discussing, negotiating
        and confirming the placement of a Defendant Drug Manufacturer's brand name drugs
        on a PBM's formulary;

- 149 -