UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | JUDGE PATTI B. SARIS |
| THIS DOCUMENT RELATES | ) | |
| TO ALL ACTIONS | ) | |

**DEFENDANT "BOEHRINGER GROUP'S" MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION TO STRIKE AND MOTION FOR A MORE DEFINITIVE STATEMENT**

**I.  INTRODUCTION**

Boehringer Ingelheim Corporation ("Boehringer"), Ben Venue Laboratories ("Ben Venue") and Bedford Laboratories ("Bedford") (collectively "Boehringer") have been named in Counts I, II, V and VI of plaintiffs' "Master Consolidated Class Action Complaint" ("Complaint").  For the following reasons Boehringer moves this Court to dismiss the claims against Boehringer or, in the alternative, moves to strike portions of the Complaint and moves for a more definite statement.

**II.  ARGUMENT**

    **A.  Boehringer Moves To Dismiss the Complaint For Failure to Plead Fraud With Particularity and Failure to Serve Process According to Local Rule 15.1**

        1.  Failure to Plead Fraud with Particularity

Fed. R. Civ. P. 9(b) requires a plaintiff to allege "the circumstances constituting fraud . . . with particularity."  The Federal Rules require particularity because unspecified fraud allegations are costly.  They cost the Court by inviting groundless claims and strike suits. *See New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987).  They cost the accused by damaging reputations and generating legal expenses.  *Id.*  Further, unspecified fraud allegations

are unfair. A defendant cannot meaningfully reply to a general accusation of falsehood. *Id.* To contain these costs and to ensure fairness, the District of Massachusetts has stated that the Rule 9(b) particularity requirement must be "strictly construed." *See Curtis v. Duffy*, 742 F. Supp. 34, 38 (D.Mass. 1990).

A RICO fraud allegation, just like any other fraud allegation, must be particular. *N. Bridge Assoc., Inc. v. Boldt*, 274 F.3d 38, 42 (1st Cir. 2001). A plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id.* at 42. "A pattern of racketeering activity" requires a specific allegation of at least two predicate acts of racketeering conduct, conduct that includes mail and wire fraud. *Id.* The two predicate acts of fraud must be specifically identified as to time, place, and content. *Becher*, 829 F.2d at 288, 290. Merely "salt[ing] the complaint with the words 'falsely' and 'fraudulently'" is not sufficient to meet the specificity requirement of Rule 9(b). *Duffy*, 742 F.Supp. at 38.

An examination of the Complaint demonstrates that plaintiffs have disregarded this requirement. While plaintiffs have liberally seasoned the Complaint with accusatory adjectives, the substance of the Complaint remains an undifferentiated, indigestible mass. The Complaint purports to identify predicate acts of fraud under RICO. *See* Compl. ¶¶ 355, 382. In reality, the Complaint lumps Boehringer with other defendants and makes a blanket accusation, nowhere identifying even one particular Boehringer communication as to time, place, and content. For example, Count I alleges unspecified defendants mailed fraudulent checks, grant and fee documents in the scheme. Compl. ¶ 356(e). This allegation implicates millions of communications, and leaves it to Boehringer to figure out who wrote the communications, when they were written, who they were sent to, and how and if they contain material falsehoods. *See* Compl. ¶¶ 352-56. Similarly, plaintiffs allege unspecified defendants used the mails to fraudulently represent to the U.S. Government and private insurers "what the AWPs were."

Compl. ¶ 383(e). But the Complaint does not specify what Boehringer communication was supposedly fraudulent, when the communication was sent, or what product or products the AWP was meant to misrepresent. These are but two examples of what plaintiffs concede is a <u>general</u> description of the alleged fraud. *See* Compl. ¶¶ 355, 382 (admitting that plaintiffs can only "<u>generally</u> describe the occasions on which the RICO predicate acts of mail [fraud] and wire fraud occurred").

Such admitted generalization in a complaint warrants dismissal. *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) ("Failure to plead predicate acts adequately is enough to sink [a] RICO claim.") Despite the minimal burden to identify alleged fraud with particularity, plaintiffs have disregarded the requirements of Rule 9(b). Boehringer therefore moves to dismiss the claims against it.

    2.    <u>Failure to Serve Process In Accordance With Local Rule 15.1</u>

Boehringer also moves this Court to dismiss plaintiffs' action because it does not appear plaintiffs served Boehringer according to District of Massachusetts Local Rule 15.1. Local Rule 15.1 states that when a party moves to amend a pleading to add a new party, the new party must be notified at least ten days in advance that they are about to be added. L. R. 15.1(b). According to this Court's Case Management Order ("CMO") No. 2, the Complaint amended all the pending or transfered constituent complaints without waving any defendant's jurisdictional, service of process, or other defense. CMO No. 2 at 2.

Boehringer was added to this action on September 9, 2002, only as a result of the Complaint's amendment of the constituent complaints. Boehringer was not notified under L. R. 15.1 that it was to be added as a party to any pending or transferred action. Boehringer's first notice that it had been added was upon receipt of the Complaint on September 17. In *Ali v. Univ. of Mass. Med. Ctr.*, 140 F.Supp. 2d 107 (D.Mass. 2001), this Court denied a plaintiff's motion to

add another party when the motion was filed on the same day service was delivered to the proposed new defendant. *Id.* at 111. As there is no evidence plaintiffs notified Boehringer in compliance with L. R. 15.1, Boehringer moves to be dismissed from this action.

### B. Alternatively, All Actions Against Boehringer Should Be Dismissed on the Grounds Set Forth in "Memorandum of Bayer Corporation In Support of Its Individual Motion to Dismiss" With the Exception of Plaintiff United Food and Commercial Workers Unions

Plaintiff's Complaint is largely bereft of any allegation that any specific plaintiff actually purchased a Boehringer product. Of the multitude of plaintiffs in this Complaint, only <u>one</u> -- the third-party payor United Food and Commercial Workers Unions ("UFCW") -- has specifically alleged an injury fairly traceable to Boehringer. UFCW, an employee benefit plan, alleges it overpaid for the drug leucovorin calcium manufactured by Boehringer affiliate Bedford. Compl. ¶ 26.[1]

As codefendant Bayer has pointed out, the threshold question for any federal court is whether it has jurisdiction. *See United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (citation omitted). Since only one plaintiff in this case, UFCW, has alleged an injury "fairly traceable" to a Boehringer product, and for the other reasons specified in the Bayer Memorandum, Boehringer moves to dismiss the claims of all plaintiffs save UFCW.

### C. Alternatively, Boehringer Moves This Court to Strike Paragraphs from the Master Complaint And Moves For a More Definite Statement on the Grounds Set Forth in "Memorandum of Law in Support of Motion to Strike Paragraphs 155-156 of the Master Complaint and Motion for a More Definite Statement from Certain Paragraphs of the Master Complaint"

Boehringer joins with the Schering-Plough Memorandum in moving that inflammatory language of paragraphs 155-156 be stricken, and that under Rule 12(e), acts of fraud be specified both as to defendant and as to time, place, and content.

---

[1] Plaintiffs do mention eight other products elsewhere in the Complaint, Compl. ¶ 231; however, not a single plaintiff has alleged that it or its members purchased any of these other eight products.

Boehringer also moves under Rule 12(e) that the Complaint specify which allegations are directed at Boehringer Ingelheim Corporation and which are directed at Ben Venue Laboratories. Like the "Schering-Plough Group," the so-called "Boehringer Group" is actually composed of two corporate entities, Boehringer and Ben Venue. Yet, throughout the Complaint, plaintiffs refer to the two corporations as if they were identical. *See* Compl. ¶¶ 229-32, 350(g), 377(g). Boehringer and Ben Venue are located in different states, have different management structures and serve different functions. They cannot reasonably be expected to respond to a Complaint that does not specify which acts in Counts I, II, V and VI apply to which defendant. Boehringer thus joins in the codefendants' motion to strike and motion for a more definite statement.

## III. CONCLUSION

For the foregoing reasons, Boehringer moves that the claims against it be dismissed, or, in the alternative, that the offending paragraphs be stricken and that plaintiffs supply a more definite statement.

Respectfully submitted,

Randal C. Teague (493800)
VORYS, SATER, SEYMOUR AND PEASE LLP
1828 L Street N.W., 11th Floor
Washington, D.C. 20036-5109
Tel: 202-467-8800
Fax: 202-467-8900

Attorneys for the Boehringer Group

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all counsel of record by electronic service pursuant to Case Management Order No. 2 on November 4, 2002.

Randal C. Teague (493800)