UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO ALL ACTIONS | MDL NO. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS <br><br> Judge Patti B. Saris |

### THE JOHNSON & JOHNSON DEFENDANTS' INDIVIDUAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE MASTER CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Johnson & Johnson ("J&J") and two of its affiliates, defendants Centocor, Inc. ("Centocor") and Ortho Biotech Products, L.P. ("Ortho Biotech") (collectively, the "J&J Defendants") by their attorneys Patterson, Belknap, Webb & Tyler LLP, respectfully submit the following Individual Memorandum of Law.[1]

### INTRODUCTION

Plaintiffs' Master Consolidated Complaint ("MCC") fails to set forth with any degree of specificity what fraudulent conduct any J&J Defendant allegedly engaged in, with respect to any drug manufactured by a J&J Defendant, or the time, place and content of any such actions or resulting injury to plaintiffs. Accordingly, each of plaintiffs' legal claims, which are rooted in fraud, must be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead them with particularity.

---

[1] The J&J Defendants are among the movants filing the Consolidated Memorandum and the Motions to Strike and for a More Definite Statement, and incorporate herein the factual and legal arguments contained in and supporting those papers.

In accordance with their improper attempt to sweep dozens of defendants under a single set of blanket and general allegations, plaintiffs merely list the Medicare-covered drugs manufactured by Centocor and Ortho Biotech, and with the exception of a fleeting, afterthought reference to two such drugs, never lodge a single specific allegation against any of the J&J Defendants. This wholesale approach falls far short of Rule 9(b)'s requirements that plaintiffs assert specific and separate allegations against each defendant. For this reason, in addition to those set forth in the Consolidated Memorandum, plaintiffs' claims against the J&J Defendants should be dismissed.

## I. PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY AS AGAINST ANY OF THE J&J DEFENDANTS

### A. Plaintiffs Make No Allegations Whatsoever Relating to the Vast Majority of the "J&J Defendants' Drugs" Listed in the MCC

Plaintiffs' allegations specific to the J&J Defendants begin with a checklist of the entire universe of drugs manufactured by Centocor or Ortho Biotech that qualify for coverage under Medicare Part B:

> The drugs manufactured by J&J, Centocor, and Ortho (collectively referred to as the "J&J Group") and covered by Medicare Part B include, but may not be limited to: ReoPro® (abciximab), an anti-blood clotting medication, Retavase® (reteplase), an anti blood clotting agent, Procrit® (epoetin alfa), for the treatment of anemia, Leustatin® (cladribine), for the treatment of leukemia, Orthoclone® (muromonab-CD3), used to prevent organ transplant rejection, Sporanox® (itraconazole), used in the treatment of fungal infections, and Remicade® (infliximab), an anti-inflammatory drug. (MCC ¶ 109).

This preamble leads one to believe that if each of these drugs were within the scope of their claims plaintiffs would set forth, consistent with any minimal standard of pleading, specific allegations as to how each of the J&J Defendants purportedly violated any laws with respect to each of these drugs. This is not the case, however. With the exception of a fleeting

2

868148v1

later reference to Procrit® and Remicade®, none of the listed drugs manufactured by Centocor or Ortho Biotech. Defendants are *ever mentioned again* by plaintiffs in the MCC.

Because Plaintiffs have made no particular allegations of fraud with respect ReoPro®, Retavase®, Leustatin®, Orthoclone® and Sporanox®, their claims against the J&J Defendants relating to those products must be dismissed.

### B. Plaintiffs' Allegations Relating to Procrit® Refer to No Conduct of Any J&J Defendant

With respect to Procrit®, plaintiffs merely allege, without substantiation, that "federal investigations have documented fraudulently inflated AWPs reported for epoetin alfa." (MCC ¶ 294). The MCC provides *no* specific allegations against Ortho Biotech relating to the marketing of Procrit®, but only notes the extent of total federal expenditures for epoetin alfa.[2] (MCC ¶¶ 294-95). Accordingly, plaintiffs' claims against Ortho Biotech and the other two J&J Defendants relating to Procrit® must be dismissed.

### C. Plaintiffs' Allegations Relating to Remicade® Are Insufficient Under Rule 9(b)

Plaintiffs can identify no fraudulent conduct on the part of Centocor or the other two J&J Defendants relating to Remicade®, and are left to make unsupported inferential leaps regarding the use of the words "financial impact", unidentified by person, date or context.

Plaintiffs allege that the "published AWP for Remicade continued to increase each year during the class period" and state generally that "J&J deliberately marketed and promoted the sale of Remicade® to physicians based on the availability of inflated payments made by Medicare, assuring them that they would make a significant profit from the purchase of

---

[2]  Moreover, the MCC concedes that epoetin alfa is sold by two different sets of defendants, Ortho Biotech (under the brand name Procrit®) and defendant Amgen (under the brand name Epogen®), a company that has no affiliation with Ortho Biotech or J&J.

Remicade as a result of the spread between the actual price to physicians and reimbursement based on the published AWP." (MCC ¶ 296).

The only particular allegations with respect to Remicade® contain no indicia of fraud and appear in paragraph 297 of the MCC as follows:

> The J&J Group created promotional materials and worksheets to allow them to market the spread between the published AWP and the actual selling price to doctors. For example, a publication accessible through Defendants' web sites entitled "Office-Based Infusion Guide" demonstrates Defendants' aggressive marketing of this spread, specifically noting that, "[d]epending on reimbursement, office-based infusion may provide a financial impact to a physician's practice." Moreover, the "Financial Analysis" section of the guide includes a "REMICADE® (infliximab) Financial Impact Worksheet," which enables doctors see in actual dollars how much additional revenue the use of Remicade® would bring to their practice.

Plaintiffs fail to provide sufficient information for each of the J&J Defendants to identify whether, where and when these alleged statements were made by them. However, even if they were, plaintiffs' mere recitation of a statement that a drug may have a "financial impact" on a physician's practice gives no J&J Defendant any indication as to how such a statement might have defrauded the plaintiffs in this case, especially given that the statement allegedly appeared in a website for the entire public, including plaintiffs, to see. *See* Consolidated Memorandum II.D.

## II.    PLAINTIFFS FAIL TO PLEAD THAT, OTHER THAN REMICADE, THEY PURCHASED ANY DRUG SOLD BY ANY OF THE J&J DEFENDANTS

No named plaintiff alleges that he or she purchased any of the drugs manufactured by any J&J Defendant identified in ¶ 109 of the MCC other than Remicade. *See* ¶¶ 13-49. Consequently, none of the plaintiffs has standing to assert any claim against Centocor, which manufacturers Remicade, with respect to any other drug identified in ¶ 109. Nor do plaintiffs have standing to assert claims against defendants J&J and Ortho Biotech in regard to

4

868148v1

any drug identified in ¶ 109. *See* Memorandum of Bayer Corporation in Support of its Individual Motion to Dismiss, the reasoning which the J&J Defendants adopt.

## CONCLUSION

For the foregoing reasons, in addition to the reasons set forth in the Consolidated Memorandum, the J&J Defendants respectfully request that the claims asserted against the J&J Defendants in the MCC be dismissed in their entirety, with prejudice.

Respectfully submitted,

November 4, 2002

William F. Cavanaugh, Jr.
Andrew D. Schau
Kieran M. Corcoran
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

ATTORNEYS FOR JOHNSON & JOHNSON, CENTOCOR, INC. AND ORTHO BIOTECH PRODUCTS, L.P.

868148v1