UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**B. BRAUN MEDICAL INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE
MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

Daniel F. Attridge, P.C.
Robert S. Ryland
Colin R. Kass
KIRKLAND & ELLIS
655 Fifteenth Street, N.W.
Washington, D.C. 20005
T: (202) 879-5000
F: (202) 879-5200

*Attorneys for B. Braun Medical Inc.*

December 20, 2002

In its Initial Brief, Braun raised four grounds for dismissal.[1] Nothing in plaintiffs' Opposition is sufficient to overcome any of those grounds.

## I. Dismissal Is Warranted Because No Named Plaintiff Suffered Injury.

The claims of 33 named plaintiffs, who admittedly have not purchased a Braun product, fail because they cannot show injury. The remaining two plaintiffs' claims also fail because their payments for Braun's sodium chloride were not based on any price allegedly set by Braun. No directly-caused injury can be shown because, as plaintiffs acknowledge, until 1997, *Medicare set* the "allowed" amount based on the *lower of* the *estimated acquisition cost or* the *median wholesale price*, and after 1997, on the *lower of* the *billed charge or* 95 percent of the *median AWP* reported in publications. Cmplt. ¶¶ 144, 147-48. Braun is not alleged to have set those government-prescribed formulas, nor to have set the specific "lower" amounts derived from the estimated acquisition cost, median wholesale price and billed charge determined by others.[2]

Plaintiffs offer two novel reasons why injury is unnecessary. First, they say a non-injured plaintiff can sue if some *other* plaintiff suffered injury. But it is settled that "standing [is] *personal*" and a "named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who have suffered injury." *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F.Supp.2d 198, 205 (D.Mass. 2002) (Saris, J.); Braun Br. at 4 & n.4 (citing cases). Second, plaintiffs say one can sue *the entire industry* so long as it purchased a product from one manufacturer. But

---

[1] Plaintiffs assert that Braun's 13-page Initial Brief filed on November 4th did not comply with the November 6th Order rejecting a proffered stipulation on page limits. But that Order did not apply, since Braun was not a party to, and was expressly excluded from, that stipulation. Instead, Braun elected to proceed directly under the 20-page limit authorized by the Local Rules.

[2] Plaintiffs' catch-all allegation that "Third-Party Payor Plaintiffs overpaid for applicable drugs based on, and in reliance on, the AWPs," is insufficient to support a fraud-based claim under Fed.R.Civ.P. 9(b). These plaintiffs are not even among the Class 1 plaintiffs, which is the only group suing Braun for alleged RICO violations.

1

they allege no facts to support "juridical linkage." It is not alleged that Braun conspired with any other defendant, and, unlike in *Alves*, defendants are not members of a single corporate family.

## II.   Dismissal is Warranted Under the Filed Rate Doctrine.

The filed rate doctrine bars ***private claims*** based on alleged manipulation of information used by the government in setting or approving prices.  *See* Braun Br. at 5 (citing cases). Because this is exactly what the plaintiffs allege, Braun moved to dismiss the Complaint.

In response, plaintiffs argue that the doctrine only applies where defendants mechanically "file rates" with the government.  But this limitation lacks legal support and is inconsistent with the doctrine's rationale precluding a collateral, price-based attack on government policy.  The Supreme Court has ruled that the doctrine "is not limited to 'rates' per se."  *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986).  Nor is there any requirement that the government be the physical repository for the information filed by defendants.  *Servais v. Kraft Foods, Inc.*, 631 N.W.2d 629 (Wis. Ct. App. 2001), *aff'd*, 643 N.W.2d 92 (2002).

It is enough that the prices plaintiffs pay be set by the government.  Plaintiffs concede that Medicare sets reimbursement rates and establishes their co-pay obligations.  They cite no case rejecting the doctrine where the government similarly determines the price-setting process.[3] To the contrary, the doctrine has been applied where, as here, plaintiffs allege manipulation of a ***third-party data source*** used by the government in setting prices.  *See* Braun Br. at 7 (citing *Servais*, 631 N.W.2d at 634 & n. 5 (court cannot "look underneath the minimum pay prices set [by government], regardless of the acts alleged to have caused an invalid price."))._[4]_

---

[3] *Comsource Indep. Foodservice Co. v. Union Pacific R.R.*, 102 F.3d 438, 442 (9th Cir. 1996), is completely inapposite.  That case did not even discuss the filed rate doctrine.  Nor did plaintiff's injuries flow from government-established prices or terms.

[4] Plaintiffs do not argue that *Servais* was wrongly decided.  Nor, despite trying to leave a different ***impression***, do plaintiffs claim that the government's involvement in *Servais* in setting prices paid by plaintiffs, or its awareness of the alleged scheme, was any greater than here.

2

### III. Plaintiffs Have Not Alleged an Actionable Misrepresentation of Fact.

Plaintiffs have not met their burden of establishing that AWP is a defined term. They do not dispute that the term AWP is facially ambiguous and undefined by statute, regulation, or common-industry practice. Instead, plaintiffs say the term is "*capable*" of interpretation. Pl. Br. at 13. But that is not the correct legal standard. For a *fraud-based* claim, the test is whether the term was sufficiently definite (*i.e.*, expressly defined or commonly-accepted) when the representations were made. *See* Braun Br. at 10 & n. 13. Because plaintiffs fail to satisfy this burden, their ruminations about how the term might later be "defined" in litigation are irrelevant.

### IV. Plaintiffs Fail to a Allege a Cognizable RICO Enterprise.

The alleged "Braun Provider Enterprise" consists of thousands of "*independent*" healthcare providers who obtained Braun's product through the stream of commerce. The alleged "Braun Publisher Enterprise" similarly consists of independent publishers who make independent decisions. Neither are *cognizable* RICO enterprises.

Plaintiffs' Opposition fails to address the many cases Braun cites rejecting similar litigation-concocted enterprises. *See* Braun Br. at 12 n. 15. Instead, plaintiffs would eviscerate the enterprise requirement through a misreading of *U.S. v. Patrick*, 248 F.3d 11 (1st Cir. 2001). In *Patrick*, the enterprise was an "ongoing and identifiable" street gang that had a name, colors and signs, older members that instructed younger ones, members that referred to the gang as a family, and sessions where important decisions were made. *Patrick*, 248 F.3d at 19-20. Here, there is none of that. Nor are there allegations of "systematic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination." *See U.S. v. Owens*, 167 F.3d 739, 751 (1st Cir. 1999).

For the foregoing reasons, as well as those stated in the submissions of other defendants, Braun urges that it be dismissed from the case.

Dated: December 20, 2002

Respectfully submitted,

[*Original Signature on file with the Court*]

---

Daniel F. Attridge, P.C.
Robert S. Ryland
Colin R. Kass
KIRKLAND & ELLIS
655 Fifteenth Street, N.W.
Washington, D.C. 20005
T: (202) 879-5000
F: (202) 879-5200

***Attorneys for B. Braun Medical Inc.***