# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL DOCKET NO. 1456 |
| | FILED/D |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| 1. *State of Nevada v. Abbott Labs., Inc., et al.,* D. Nev. Cause No. CV-N-02-0080-ECR | |
| 2. *State of Nevada v. American Home Products Corp., et al.,* D. Nev. Cause No. CV-N-02-0202-ECR | |

## PLAINTIFF STATE OF NEVADA'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND AND WAIVER OF ORAL ARGUMENT

1534.13 0036 MTN.DOC

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT......................................................................................................................2

  A. Nevada's Best Price Claims Do Not Arise Under Federal Law ...............................2

    1. There is No Rule that a Case Automatically Arises Under Federal Law Whenever Federal Common Law Applies............................................2

    2. Defendants Cannot Effectively Distinguish Nevada's Case Cites ..............7

    3. Defendants' Breach of Contract and Other Cases Are Inapposite...............9

  B. In *Abbott*, The Failure To Obtain The Consent Of All Co-Defendants To Removal Mandates Remand .........................................................................................12

    1. The Breach of Contract Claim is not "Separate and Independent" from the Other "Best Price" Claims and the AWP Claims.........................12

    2. Even if "Separate and Independent" Claims Were at Issue as Contemplated in § 1441(c), Unanimous Consent is Required Because the *Same* Claims are Asserted against *All* Defendants, Including Baxter.........................................................................................14

  C. The Court Should Not Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims............................................................................................................18

    1. § 1367(a)(1) Commends Remand..............................................................19

    2. § 1367(a)(2) Commends Remand, as Does § 1441(c)...............................19

    3. § 1367(a)(4) Commends Remand..............................................................19

III. CONCLUSION AND WAIVER OF ORAL ARGUMENT .............................................20

# TABLE OF AUTHORITIES

## CASES

*Almond v. Capital Props., Inc.,*
212 F.3d 20 (1st Cir. 2000) ................................................................................... *passim*

*Amoco Chem. Co. v. Tex Tin Corp.,*
902 F. Supp. 730 (S.D. Tex. 1995) ................................................................................... 9

*Berg v. Leason,*
32 F.3d 422 (9th Cir. 1994) ................................................................................... *passim*

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988) ................................................................................... 11

*Brawn v. Coleman,*
167 F. Supp. 2d 145 (D. Mass. 2001) ................................................................................... 6, 9

*Cabana v. Forcier,*
148 F. Supp. 2d 110 (D. Mass. 2001) ................................................................................... 5, 6, 8

*Caudill v. Blue Cross & Blue Shield,*
999 F.2d 74 (4th Cir. 1993) ................................................................................... 9, 10

*Charles D. Bonanno Linen Serv., Inc. v. McCarthy,*
708 F.2d 1 (1st Cir. 1983) ................................................................................... 1, 12

*City of Chicago v. International Coll. of Surgeons,*
522 U.S. 156 (1997) ................................................................................... 3, 4

*Costantini v. Guardian Life Ins. Co. of Am.,*
859 F. Supp. 89 (S.D.N.Y. 1994) ................................................................................... 16

*Danca v. Private Health Care Sys., Inc.,*
185 F.3d 1 (1st Cir. 1999) ................................................................................... 6

*Danfelt v. Board of County Comm'rs,*
998 F. Supp. 606 (D. Md. 1998) ................................................................................... 13

*Danis Indus. Corp. v. Fernald Envtl. Restoration Mgmt. Corp.,*
947 F. Supp. 323 (S.D. Ohio 1996) ................................................................................... 9

*Dezell v. Day Island Yacht Club,*
796 F.2d 324 (9th Cir. 1986) ................................................................................... 20

*Goepel v. National Postal Mail Handlers Union,*
36 F.3d 306 (4th Cir. 1994), *cert. denied*, 514 U.S. 1063 (1995) ................................................................................... 10

*Henry v. Independent Am. Sav. Ass'n,*
857 F.2d 995 (5th Cir. 1988) ................................................................................... 15

*Howard v. Group Hosp. Serv.,*
739 F.2d 1508 (10th Cir. 1984) ................................................................................... 10

- ii -

*Hunter v. United Van Lines,*
   746 F.2d 635 (9th Cir. 1984) ................................................................... *passim*

*International Ass'n of Machinists v. Central Airlines, Inc.,*
   372 U.S. 682 (1963) ...................................................................................10

*Jetstar, Inc. v. Monarch Sales & Service Co.,*
   652 F. Supp. 310 (D. Nev. 1987) ...................................................... *passim*

*Knickerbocker v. Chrysler Corp.,*
   728 F. Supp. 460 (E.D. Mich. 1990) ................................................16, 17

*Lemke v. St. Margaret Hosp.,*
   552 F. Supp. 833 (N.D. Ill. 1982) ...........................................................13

*Marcus v. AT&T Corp.,*
   138 F.3d 46 (2d Cir. 1998) ......................................................................11

*Merrell Dow Pharm., Inc. v. Thompson,*
   478 U.S. 804 (1986) ............................................................................ *passim*

*Mooney v. Blue Cross of W. Pa.,*
   678 F. Supp. 565 (W.D. Pa. 1988) ..........................................................10

*Moore v. Chesapeake & O. R. Co.,*
   291 U.S. 205 (1934) ..................................................................................4

*Moscovitch v. Danbury Hosp.,*
   25 F. Supp. 2d 74 (D. Conn. 1998) .....................................................2, 15

*National Farmers Union Ins. Cos. v. Crow Tribe of Indians,*
   471 U.S. 845 (1985) ............................................................................10, 11

*New England Concrete Pipe v. D/C Sys.,*
   658 F.2d 867 (1st Cir. 1981) ...............................................................12, 14

*New SD, Inc. v. Rockwell Int'l Corp.,*
   79 F.3d 953 (9th Cir. 1996) .......................................................................9

*PCS 2000 LP v. Romulus TeleComm., Inc.,*
   148 F.3d 32 (1st Cir. 1998) ...............................................................4, 7, 8

*P.P. Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.,*
   395 F.2d 546 (7th Cir. 1968) .............................................................15, 16

*Port of New York Authority v. Eastern Air Lines, Inc.,*
   259 F. Supp. 142 (E.D.N.Y. 1966) ..........................................................18

*Postal Instant Press v. Clark,*
   741 F.2d 256 (9th Cir. 1984) ............................................................5, 6, 8

*Sable v. GMC,*
   90 F.3d 171 (6th Cir. 1996) .....................................................................11

- iii -

*Shorty v. Top Rank,*
  876 F. Supp. 838 (E.D. La. 1995)................................................................................13

*Smith v. Kansas City Title & Trust Co.,*
  255 U.S. 180 (1921)......................................................................................................3, 4

*In re Stelmach,*
  812 F. Supp. 727 (S.D. Tex. 1993) ............................................................................13

*T. B. Harms Co. v. Eliscu,*
  339 F.2d 823 (2d Cir. 1964), *cert. denied*, 381 U.S. 915 (1965)..................................5, 6, 8

*Texas Hosp. Ass'n v. National Heritage Ins. Co.,*
  802 F. Supp. 1507 (W.D. Tex. 1992)..........................................................................13

*United States v. Swiss Am. Bank, Ltd.,*
  191 F.3d 30 (1st Cir. 1999).........................................................................................11

*Williams-Ward v. Lorenzo Pitts, Inc.,*
  908 F. Supp. 48 (D. Mass. 1995) ...............................................................................7

## STATUTES/RULES

28 U.S.C. § 1331, *et seq*..............................................................................................9, 15, 16

28 U.S.C. § 1441(c) ....................................................................................................... *passim*

28 U.S.C. § 1367, *et seq.*..................................................................................................2

42 U.S.C. § 1396r-8, *et seq*.............................................................................................7, 19

49 U.S.C. § 11707............................................................................................................7

49 U.S.C. § 5101 .............................................................................................................5

Fed. R. Civ. P. 4(k)(2).....................................................................................................11

N.J. Stat. Ann. § 17B:30-13.1.........................................................................................10

NRS 598.0903, *et seq*......................................................................................................19

NRS 598.0973..................................................................................................................19

## MISCELLANEOUS

14 C Fed. Practice and Procedure Juris. 3d § 3731 (2002).......................................17

1A Moores Federal Practice ¶ 0.168 ..........................................................................2

## I.    INTRODUCTION

Defendants have not satisfied their burden of demonstrating that removal is proper, and a long overdue remand is in order. First, Nevada's claims do not arise under federal law because a substantial, disputed question of federal law is not a necessary element of one of the well-pleaded state claims as is required to find "arising under" jurisdiction. *See, e.g., Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 813 (1986); *Almond v. Capital Props., Inc.,* 212 F.3d 20, 22 (1st Cir. 2000). Importantly, the mere presence of a federal issue as an element in a state cause of action does not automatically confer federal jurisdiction, and threshold determinations of duty – such as whether a federal standard is violated – do not convert state claims in ones arising under federal law. *Merrell Dow,* 478 U.S. at 813; *Almond,* 212 F.3d at 24; *Berg v. Leason,* 32 F.3d 422, 425 (9th Cir. 1994); *Hunter v. United Van Lines,* 746 F.2d 635, 646 (9th Cir. 1984). Judged against these standards, Nevada's claims do not arise under federal law. Although defendants' duty to report "best prices" originates under federal law, this threshold determination of duty does not turn Nevada's state claims into federal ones because, like the plaintiffs' claims in *Hunter* and *Berg,* the other elements of each of Nevada's causes of action are determined by reference to *state* law. For this reason, a "substantial proposition" of federal law does *not* form a "direct and essential element of the plaintiff's cause of action," *see Hunter,* 746 F.2d at 644, and Nevada's claims do not arise under federal law.

Second, in the *Abbott* case, unanimity of consent to removal was required and, as is undisputed, Baxter failed to consent in a timely manner. Defendants demand that the Court excuse the consent requirement because, defendants claim, the case involves "separate and independent" claims such that 28 U.S.C. § 1441(c) applies. Defendants are again mistaken. Under the test articulated by the First Circuit in *Charles D. Bonanno Linen Serv., Inc. v. McCarthy,* 708 F.2d 1, 10 (1st Cir. 1983) – binding precedent that defendants choose to ignore – Nevada's "best price" claims are not "separate and distinct" from the breach of contract claim upon which defendant GlaxoSmithKline ("GSK") predicates removal. Indeed, the allegations in the breach of contract claim form the gravamen of the State's claims for deceptive trade practices

- 1 -

in Count III, violations of Nevada RICO in Count IV, and violations of the Nevada Medicare Fraud statute in Count VI.

Equally fatal to GSK's claim that unanimity is not required for removal in this case, the very same breach of contract claim is pending against each and every defendant in this case – including Baxter. Accordingly, if GSK is correct that each breach of contract claim is a "separate and independent" removable claim (and it is not), then Baxter's consent would *still* be necessary if this entire case is to be removed to federal court. *See, e.g., Jetstar, Inc. v. Monarch Sales & Service Co.*, 652 F. Supp. 310, 312 (D. Nev. 1987); 1A MOORE'S FEDERAL PRACTICE, ¶ 0.168 at 556-57; *Moscovitch v. Danbury Hosp.*, 25 F. Supp. 2d 74, 78 (D. Conn. 1998).

Finally, should the Court find jurisdiction over Nevada's "best price" claims – and it should not – the Court should nonetheless exercise its discretion under 28 U.S.C. §§ 1441(c) and 1367 to remand the AWP claims that invoke important state interests to be enforced under state law.

## II.   ARGUMENT

### A.   Nevada's Best Price Claims Do Not Arise Under Federal Law

Contrary to defendants' claim, Nevada's "best price" claims all arise under Nevada and not federal law, as Nevada alleges that defendants violated the Nevada Deceptive Trade Practices Act, Nevada's civil RICO statute, and Nevada's Medicaid fraud statute in misrepresenting best prices. Nonetheless, defendants persist in perpetuating the fiction that – below the surface – these claims are really federal claims dressed in state-law clothes. As Nevada demonstrated in its opening memorandum and reinforces again below, an appropriate analysis employing the appropriate standards leads to only one conclusion: Nevada's "best price" claims do not arise under federal law.

### 1.   There is No Rule that a Case Automatically Arises Under Federal Law Whenever Federal Common Law Applies

Citing to the DHHS contracts purporting to apply federal common law, defendants insist that a case *automatically* arises under federal law whenever federal common law applies. Defs.

- 2 -

Mem. at 8.[1]  Thus, the argument goes, Nevada's "best price" claims (excluding breach of

contract) arise under federal law because they relate to defendants' contractual obligation to

report best prices.  But this conclusion cannot withstand careful scrutiny.

Not even defendants' inapposite authorities support the automatic rule that defendants

advocate.  For instance, in the *Fernald* breach of contract case cited by defendants, the court

rejected suggestions that the mere inclusion of a federal common law choice-of-law provision

provided federal jurisdiction.  Rather, the court was still required to determine whether the issue

presented a ***substantial*** question of federal law.  *See* 947 F. Supp. at 328.

Similarly, in *Almond v. Capital Props., Inc.*, 212 F.3d 20 (1st Cir. 2000), where Rhode

Island sued a private company for breach of its contractual obligation to seek approval for rate

increases on a railroad commuter line, the First Circuit recently referred to "arising under"

jurisdiction involving cases interpreting contractual obligations to the United States as "a

remarkably tangled corner of the law" with "little direct authority."  *Id.* at 22.  The inquiry is

whether the complaint required resolution of a ***substantial*** question of federal law, *id.* at 24,

which is a far cry from defendants' suggestion of an automatic rule.  Indeed, the First Circuit

noted that the Supreme Court had rarely applied the concept in practice and "left the very scope

of the concept unclear[:]  Perhaps the best one can say is that this basis endures in principle but

***should be applied with caution*** and various qualifications."  *Id.* (footnote omitted) (emphasis

added).  The court further explained the difficulty of applying the concept in the context of the

case before it:

> What remains is the almost unanswerable question of whether the Supreme Court
> would regard the federal issue in this case as sufficiently important to confer
> "arising under" jurisdiction on the district court under section 1331 where the
> claim (we are assuming arguendo) is for a state remedy.  Two of the Supreme
> Court decisions (*Smith* and *City of Chicago*[2]) have said yes where important
> constitutional issues were presented; two have said no where a state tort claim

---

[1] Defendants concede that jurisdiction is not predicated on "artful pleading" or complete
preemption.  *See* Nevada's opening memorandum at 11-12.

[2] These are shorthand cites to *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921),
and *City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156 (1997).

- 3 -

> merely incorporated a federal fault standard (*Merrell Dow* and *Moore*[3]).  Our case arguably falls in the middle:  the federal interest is less than in *Smith* (*City of Chicago* is hard to classify) but surely more than in *Merrell* and *Moore*.

*Id.*  What ultimately tipped the scales in favor of federal jurisdiction was that, under the contract at issue, specific rate increases were required to be presented to a federal agency – the Federal Railroad Administration – for review and approval.  *Id.* & n.3.  This, the plaintiffs alleged, the defendant failed to do in breach of the agreement.

Thus, *Almond* eviscerates the "automatic" rule that defendants advocate.  Applying *Almond* here, the First Circuit is likely to find that this case is more akin to *Merrell Dow*, where federal jurisdiction was lacking, than *Smith* and *City of Chicago*.  *See Almond*, 212 F.3d at 24.  In *Merrell Dow*, the plaintiff alleged that the drug Benedictin was "misbranded" in violation of the Federal Food, Drug and Cosmetic Act ("FDCA") and that this violation constituted a rebuttable presumption of negligence under state law.  478 U.S. at 805-06.  As defendants do here, defendant Merrell Dow asserted that this claim arose under federal law.  *Id.* at 806.  The Supreme Court observed that the mere presence of a federal issue as an element in a state cause of action does not automatically confer federal jurisdiction.  Some ***substantial***, disputed question of federal law must be a necessary element of one of the well-pleaded state claims.  *Id.* at 813.

The court first decided that Congress's decision not to include a federal remedy for violation of the FDCA demonstrated that a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.  *Id.* at 814.  "[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system."  *Id.*[4]

The court next turned to defendants' contention – similar to that advanced by defendants here – that a powerful federal interest existed in assuring that the FDCA is given uniform

---

[3] *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986); *Moore v. Chesapeake & O. R. Co.*, 291 U.S. 205 (1934).

[4] The First Circuit explicitly applied this holding in *PCS 2000 LP v. Romulus TeleComm., Inc.*, 148 F.3d 32 (1st Cir. 1998), commenting:  "Unless a federal statute bestows a private right of action, courts ought to presume that Congress did not intend the statute to confer federal jurisdiction."  *Id.* at 35 (citing *Merrell Dow*).

- 4 -

interpretations.  The court disagreed that this reason, even if true, could be the basis for "arising

under" jurisdiction.  As the court explained:

> To the extent that petitioner is arguing that state use and interpretation of the
> FDCA pose a threat to the order and stability of the FDCA regime, petitioner
> should be arguing, not that federal courts should be able to review and enforce
> state FDCA-based causes of action as an aspect of federal-question jurisdiction,
> but that the FDCA pre-empts state-court jurisdiction over the issue in dispute. . . .
> Petitioner's concern about the uniformity of interpretation, moreover, is
> considerably mitigated by the fact that, even if there is no original district court
> jurisdiction for these kinds of action, this Court retains power to review the
> decision of a federal issue in a state cause of action.

*Id.* at 816 (footnote omitted).  The court also brushed aside suggestions that potentially novel

questions under the FDCA supported federal jurisdiction:  "We do not believe the question

whether a particular claim arises under federal law depends on the novelty of the federal

issue . . . .  [The judicial system] would be ill served by a rule that made the existence of federal-

question jurisdiction depend on the district court's case-by-case appraisal of the novelty of the

federal question asserted as an element of the state tort."  *Id.* at 817.

   *Berg v. Leason*, 32 F.3d 422 (9th Cir. 1994), and *Hunter v. United Van Lines*, 746 F.2d

635 (9th Cir. 1984), cited by Nevada in its opening brief, also provide that the Court must

analyze whether a "substantial proposition" of federal law forms a "direct and essential element

of the plaintiff's cause of action" before finding that a claim arises under federal law.  *Hunter*,

746 F.2d at 644.  As the Ninth Circuit held in *Berg* and *Hunter*, threshold determinations of duty

do not convert state claims into federal claims when the elements of the causes of action are

determined by reference to state law.  *See* Nevada's Opening Mem. at 12-15; *see also Postal*

*Instant Press v. Clark*, 741 F.2d 256 (9th Cir. 1984) (denying "arising under" jurisdiction in

trademark case even though the trademark rights were in the first instance were created by

federal law); *T. B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964) (federal "arising under"

jurisdiction denied even though copyright was created by federal law), *cert. denied*, 381 U.S. 915

(1965).  Judge Gorton agrees, having recently held that incorporation of the Hazardous Materials

Transportation Uniform Safety Act of 1990 (49 U.S.C. § 5101) into a state negligence action to

establish the standard of care is insufficient to confer federal question jurisdiction.  *Cabana v.*

*Forcier*, 148 F. Supp. 2d 110, 114 (D. Mass. 2001); *see also id.* at 113 ("Pleading [a] violation of a federal statute as an element of a state law cause of action is insufficient to confer federal question jurisdiction, however, when that statute does not provide for a private cause of action.").

Lastly, the heavy burden that defendants face in defending removal vitiates an automatic rule, as the Court must strictly construe the removal statute against finding jurisdiction and resolve all doubts in favor of remand. *Danca v. Private Health Care Sys., Inc.,*, 185 F.3d 1, 4 (1st Cir. 1999); *Brawn v. Coleman*, 167 F. Supp. 2d 145, 148 (D. Mass. 2001).

The lessons of *Merrell Dow, Almond, Berg, Hunter, PCS 2000 LP, Cabana, Danca* and *Brawn* are clear: (i) removal jurisdiction is strictly construed and all doubts are resolved against federal jurisdiction and in favor of remand (*Danca, Brawn*); (ii) general "arising under" jurisdiction should be applied with caution (*Almond*); (iii) to find jurisdiction, a substantial, disputed question of federal law must be a necessary element of one of the well-pleaded state claims (*Merrell Dow, Almond, Berg, Hunter*); (iv) yet the mere presence of a federal issue as an element in a state cause of action does not automatically confer federal jurisdiction, and threshold determinations of duty – such as whether a federal standard is violated – do not convert state claims in ones arising under federal law (*Merrell Dow, Almond, Cabana, Berg, Hunter*); (v) the absence of right of action in the federal statute invoked as an element of the state law violation leads to a presumption that Congress did not intend the statute to confer federal jurisdiction (*Merrell Dow, PCS 2000 LP, Cabana*); and (vi) concerns about the uniform application of federal law or resolution of novel issues under federal law do not necessarily suffice (*Merrell Dow*).

Thus, there is simply no "automatic" rule. Judged against the proper standards, Nevada's claims do not arise under federal law. Although defendants' duty to report "best prices" originates under federal law, this threshold determination of duty does not turn Nevada's state claims into federal ones because, like the plaintiffs' claims in *Hunter, Berg, Clark, Eliscu* and *Cabana*, the other elements of each of Nevada's causes of action are determined by reference to ***state*** law. For this reason, a "substantial proposition" of federal law does ***not*** form a "direct and

- 6 -

essential element of the plaintiff's cause of action," *see Hunter*, 746 F.2d at 644, and Nevada's

claims do not arise under federal law.[5]  As the Magistrate concluded in *State of Minnesota v.*

*Pharmacia*, "[t]he fact that Plaintiff will need to prove that Defendant submitted misleading

reports, does not mean that there is a federal question presented in this case."  Report at 10.[6]

Defendants simply do not meet their heavy burden of demonstrating that Nevada's claims

raise a substantial, disputed question of federal law.  Defendants merely argue that Nevada's

"best price" claims depend on a threshold showing that they failed to submit "best prices" to

DHHS.  Defs. Mem. at 10.  This is true, but this argument is no different than the failed "federal

threshold" or "federal standard" cases cited above where jurisdiction simply does not lie.

To be sure, some suits involving the Medicaid program would involve "substantial,

disputed question[s] of federal law," *Merrell Dow*, 478 U.S. at 813, and therefore "arise under"

federal law for jurisdictional purposes.  Such cases would include attacks on the validity of the

Medicaid program, and disputes between the state and federal governments over allocation of

Medicaid monies.  But Nevada's case is far down the jurisdictional continuum from these

hypotheticals.  Enforcing *state* law, as Nevada seeks to do here, does not create the "substantial"

question of federal law required to satisfy the jurisdictional threshold.

### 2.    Defendants Cannot Effectively Distinguish Nevada's Case Cites

Defendants misfire in their attempt to minimize the impact of *Berg* and *Hunter*.  First,

defendants claim that neither case involved a contract governed by federal law (Defs. Mem. at

10), yet in *Hunter* it is clear that the viability of the plaintiffs' bad faith claim ***depended on a***

***contract claim that was governed by federal law***. *Hunter*, 746 F.2d at 645.[7]  Defendants next

---

[5] Furthermore, the rebate statute upon which defendants so heavily rely – 42 U.S.C. § 1396r-8 – does not contain a right of action in favor of the states (the penalties provided therein are assessed by the Secretary of HHS).  This is further evidence that, pursuant to *Merrell Dow* and *PCS 2000 LP*, Congress did not intend the statute to confer federal jurisdiction.

[6] Nevada recognizes that this Court found federal jurisdiction over a claim involving a federal contract in *Williams-Ward v. Lorenzo Pitts, Inc.*, 908 F. Supp. 48 (D. Mass. 1995).  Nonetheless, the Court should still engage in the analysis set forth herein and ultimately conclude that Nevada's claims do not arise under federal law.

[7] Defendants also assert that *Hunter* did not involve federal common law, Defs. Mem. at 8 n.1, yet interpreting contractual obligations under 49 U.S.C. § 11707 (the so-called Carmack Amendment) is, of course, a matter of federal common law.

- 7 -

claim that federal law played only a "minor" role in *Berg* and *Hunter*, rendering those cases inapposite. Yet, the role that federal law played in these two decisions is nearly identical to the role that federal law plays here. Yes, it is a "minor" role because the elements of the causes of action were – just like the instant case – determined under state law. However, the respective federal issues still played a ***threshold*** role in the cases. In *Hunter*, the threshold issue was whether a colorable breach of contract claim existed under a contract created by federal law. 746 F.2d at 646. In *Berg*, the threshold issue was whether, under federal law, the prior action had any merit under federal law. 32 F.3d at 424. Nonetheless, both courts held that when federal law plays a threshold role, the state-law claim is not automatically transformed into one arising under federal law; something more is needed. As the *Hunter* court noted with particular importance to the instant case:

> The gist of plaintiffs' bad faith claim is that defendants engaged in conduct regarding the handling of the underlying claim that is made unlawful by California; ***the federal element merely determines as a preliminary matter, whether the duty imposed by the state is applicable in the case of a particular transaction***. The fact that federal law plays a preliminary, threshold role in the case of state claims such as this one does not, by itself, transform such state claims into federal ones.

*Id.* at 646 (emphasis added).

Defendants do not even attempt to distinguish two other cases cited by Nevada where federal jurisdiction was found lacking even though federal law played a threshold role in the subject matter of the claims. *See* Nevada Opening Mem. at 13 (citing *Clark*, 741 F.2d at 256, and *Eliscu*, 339 F.2d at 823).

Each of these decisions is consistent with Supreme Court and First Circuit authority holding that the need for construction or interpretation of an issue of federal law as part of a state law claim does not provide a basis for removal based on an alleged substantial federal issue when Congress has not provided a federal cause of action. *See Merrell Dow*, 478 U.S. at 817; *PCS 2000 LP*, 148 F.3d at 35; *Cabana*, 148 F. Supp. 2d at 113-14. To date, defendants have failed to reference a remedy under the federal Medicaid statute for misrepresenting "best prices."

- 8 -

*Berg* and *Hunter* are also consistent with *Almond*'s requirement that the complaint present a **substantial** question of federal law before "arising under" jurisdiction obtains.  212 F.3d at 24.

### 3.   Defendants' Breach of Contract and Other Cases Are Inapposite

In claiming that Nevada's "best price" claims arise under federal law, defendants rely heavily on **breach of contract** cases holding that, when federal common law applies to the contract, federal question jurisdiction under 28 U.S.C. § 1331 exists.  *See, e.g., New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (claim for breach of a defense subcontract that is governed by federal, not state, common law); *Danis Indus. Corp. v. Fernald Envtl. Restoration Mgmt. Corp.,* 947 F. Supp. 323, 325-29 (S.D. Ohio 1996) (claim alleging breach of a federal procurement subcontract governed by Department of Energy regulations and federal common law); *Amoco Chem. Co. v. Tex Tin Corp.*, 902 F. Supp. 730, 735 (S.D. Tex. 1995) (claim alleging breach of a contract for reimbursement of expenses incurred under a consent decree with the Environmental Protection Agency relating to the clean-up of a site placed on EPA's National Priorities List where the plaintiff and defendant were both owners of the two adjacent lots comprising the site); *Caudill v. Blue Cross & Blue Shield*, 999 F.2d 74, 78 (4th Cir. 1993) (claim by a federal employee alleging breach of a health insurance contract made under the Federal Employees Health Benefits Act and interpreted under federal common law rather than state contract law).  But these cases are distinguished by the simple fact that no breach of a federal contract is pled as a cause of action in the *AHP* action.  Therefore, these cases do not apply;[8] under the well-pleaded complaint rule, a plaintiff "can avoid federal question jurisdiction by relying solely on state-law causes of action."  *Brawn*, 167 F. Supp. 2d at 148.

Furthermore, defendants neglect to disclose that courts do not uniformly agree that a claim by a federal employee alleging breach of a health insurance contract made under the

---

[8] They arguably would apply in *Abbott*, but the Court would still be required to evaluate whether the issue presented was a substantial issue of federal law.  Moreover, the Court still would not have jurisdiction over the *Abbott* case because all defendants failed to timely consent to the removal.  *See infra.*

- 9 -

Federal Employees Health Benefits Act ("FEHBA") arises under federal law.[9]  For example, the

Third Circuit expressly rejected the Fourth Circuit's holding in *Caudill* on the basis that removal

cannot be based on preemption in the absence of complete preemption, that is, where Congress

has preempted the field and simultaneously provided enforcement provisions within the scope of

which the plaintiff's state claim falls. *Goepel v. National Postal Mail Handlers Union*, 36 F.3d

306, 311-13 (3d Cir. 1994), *cert. denied*, 514 U.S. 1063 (1995) (plaintiff brought state law claims

for violation of the New Jersey Law Against Discrimination, breach of contract,

unconscionability, and unfair claims settlement practices in violation of N.J. Stat. Ann.

§ 17B:30-13.1).  Of course, defendants here have not claimed that the rebate statute creates a

cause of action in favor of the states for violations thereof, nor could they.  Other courts, like

*Goepel*, have also held that removal of state law claims to recover benefits under a FEHBA plan

is improper. *See Howard v. Group Hosp. Serv.*, 739 F.2d 1508, 1510-12 (10th Cir. 1984);

*Mooney v. Blue Cross of W. Pa.*, 678 F. Supp. 565, 566-67 (W.D. Pa. 1988).

　　*International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682 (1963), also

cited by defendants, does not apply because, unlike here, no state law causes of action were at

issue.  Instead, plaintiffs were suing to enforce an award rendered by a National Mediation Board

mediator under collective bargaining agreements governed by the Railway Labor Act (the

"RLA"). *Id.* at 682-84.  All aspects of the parties' behavior were governed by the RLA,

including the composition of the adjustment board (which had deadlocked prior to appointment

of the mediator), the procedures to be employed as to notice and hearing or for breaking

deadlocks, and the finality to be accorded board awards. *Id.* at 694.  In contrast, the success of

Nevada's claims here depends upon whether Nevada can prove each element of its state-law

claims.

　　Nor does *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845

(1985), apply here.  In *Crow*, the issue was whether the Crow Tribal Court had jurisdiction over

---

[9] Health care plans established by FEHBA constitute contracts between the federal Office of Personnel Management and private carriers ("OPM"). *See Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 308 (4th Cir. 1994), *cert. denied*, 514 U.S. 1063 (1995).

- 10 -

a civil action brought against a non-Indian. The Supreme Court held that because the case invoked principles of sovereignty, it arose under federal law: "The power of the Federal Government over the Indian tribes is plenary," *id.* at 851, the court explained, and "federal law has sometimes diminished the inherent power of Indian tribes in significant ways." *Id.* at 853 n.14. Furthermore, the petitioners affirmatively contended that federal law provided the relief that they sought: "Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference." *Id.* at 852-53. But here, not only are sovereignty issues irrelevant, Nevada contends, unlike the petitioners in *Crow*, that ***state*** law, not federal law, provides the relief that Nevada seeks.

Another case cited by defendants, *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), does not even involve jurisdictional issues and therefore cannot be cited for the faulty proposition that contracts governed by federal common law confer federal "arising under" jurisdiction. In *Boyle*, the father of a deceased Marine brought a diversity action in federal court under state tort law against a helicopter manufacturer. *Id.* at 502. Thus, *Boyle* did not involve the removal of a state law claim from state to federal court on the basis of federal question jurisdiction. Moreover, the *Boyle* court held that federal law displaced state tort liability for design defects in military equipment, *id.* at 512, and defendants here are not so bold as to argue that federal law displaces any of the state-law claims that Nevada brings. Similarly, *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999), is not a federal subject matter jurisdiction case but one of deciding personal jurisdiction under Fed. R. Civ. P. 4(k)(2). Therefore, it cannot apply.

Defendants citation to *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998), is equally unavailing, as *Marcus* involved challenges to agreements covered by a federal tariff, and federal tariffs are not mere contracts but "the law." *Id.* at 56. Here, no federal tariffs are at issue. Likewise, *Sable v. GMC*, 90 F.3d 171 (6th Cir. 1996), where plaintiff's claims were tantamount

- 11 -

to a challenge to provisions of a federal consent decree, has nothing in common with the instant case. Defendants' cases are simply inapposite.

**B.     In *Abbott*, The Failure To Obtain The Consent Of All Co-Defendants To Removal Mandates Remand**

In a desperate bid to excuse its non-compliance with the unanimity requirement, defendants misread 28 U.S.C. § 1441(c), which allows a defendant to remove a "separate and independent" federal claim without its co-defendants' consent so long as none of the other defendants face removable claims. *See, e.g., Jetstar, Inc. v. Monarch Sales & Serv. Co.*, 652 F. Supp. 310, 312 (D. Nev. 1987). Defendants' argument cannot prevail here, because (i) the breach of contract claim in the *Abbott* case seeks remedies based upon the "best price scheme" ***as do three other non-removable counts of Nevada's Complaint***, and is therefore not a "separate and independent" claim at all; and (ii) if defendants were correct, then ***all co-defendants face removable claims and must therefore consent to the removal.*** *See, e.g., Jetstar,* 652 F. Supp. at 312 ("[I]f there are two separate and independent claims and both such claims are removable, then all the defendants to both claims must seek removal."). Hence, even if the Court accepts defendants' argument and finds that the breach of contract claim against all defendants is a "separate and independent" removable claim (and it is not), the Court must remand this case because Baxter faces the very same "separate and independent" claim and did not timely consent to removal.

**1.     The Breach of Contract Claim is not "Separate and Independent" from the Other "Best Price" Claims and the AWP Claims**

As the First Circuit held in *Charles D. Bonanno Linen Serv., Inc. v. McCarthy*, 708 F.2d 1, 10 (1st Cir. 1983), claims are not "separate and independent" when they "substantially derive from the same facts."[10]  *See also New England Concrete Pipe v. D/C Sys.*, 658 F.2d 867, 872 (1st Cir. 1981). In *Abbott,* Nevada's breach of contract claim against each defendant in Count V "substantially derive[s] from the same facts'" as the State's claims in Counts III, IV and VI,

---

[10] Incredibly, defendants ignore the First Circuit's binding precedent in *McCarthy*, failing to cite the case in their brief.

- 12 -

which, as demonstrated above and in Nevada's opening brief, do not arise under federal law and are, therefore, non-removable.[11] Indeed, all four claims arise from defendants' alleged failure to accurately calculate the "best price" paid for their drugs.

Under these facts and the First Circuit's decision in *McCarthy*, it cannot be argued that the breach of contract claim is "separate and independent" from the other claims in the case which are not removable. *See also Texas Hosp. Ass'n v. National Heritage Ins. Co.*, 802 F. Supp. 1507 (W.D. Tex. 1992) (removal improper under Section 1441(c) where, although the hospital association alleged violations of both federal and state laws, the claims all arose out of the same basic transaction – the allegedly improper reimbursements by the state — and thus involved a single wrong, alleged financial hardships to the hospitals); *Danfelt v. Board of County Comm'rs*, 998 F. Supp. 606 (D. Md. 1998) (Section 1441(c) would not support removal where the suit presented claims stemming from a single alleged wrong to the bus driver resulting from the same transaction); *Shorty v. Top Rank*, 876 F. Supp. 838, 840 (E.D. La. 1995) (because both the 1934 Securities Act claim and the 1933 Securities Act claim involved the same wrong to investors, the claims were not "separate and independent" within the meaning of Section 1441(c)).

Because this case involves several non-removable claims against defendants arising from the very same "best price" scam that forms the basis for the breach of contract claim, this case is easily distinguishable from the authorities relied upon by defendants in support of their bankrupt "separate and independent" argument. *See* Defs. Mem. at 13 and cases cited therein, including *In re Stelmach*, 812 F. Supp. 727, 729 (S.D. Tex. 1993) (RTC's claim for lien on property was separate and distinct from other claims in divorce proceedings); *Lemke v. St. Margaret Hosp.*, 552 F. Supp. 833, 840 (N.D. Ill. 1982) (claim against school for negligent supervision leading to plaintiff's injury was "separate and independent" from malpractice claim in plaintiff's treatment

---

[11] Similarly, and as defendants have conceded, the AWP claims are not removable. In defendant GSK's memorandum in opposition to the motion to remand filed in the United States District Court in Nevada, it conceded at page 11, note 3, that the AWP claims against GSK are "not removable based on the particular allegations in this case."

because plaintiff was "seeking to vindicate different rights against different defendants."). Here, in stark contrast to every authority relied upon by defendants, Nevada seeks to vindicate the very same "best price" rights in its breach of contract claim in Count V as it seeks to vindicate against the very same defendants in Counts III, IV and VI. This was explicitly *admitted* by defendant Baxter, an admission that defendants cannot contest was made and binds Baxter:

> Count V is not separate and independent from the other claims in the Complaint *because it seeks to recover for the same alleged harms and arises from the same purported misconduct of all the parties as the other claims. Specifically the allegations in Count V are part of the same purported "AWP Scheme" cited by the plaintiff as the basis for damages sought in Counts I-IV and VI.* Accordingly, Count V is not a "separate and independent claim" within the meaning of 28 U.S.C. § 1441(c).

Baxter Objection at 5 (emphasis added).

In sum, because Nevada seeks to remedy the alleged "best price" violations in three other claims in addition to the breach of contract claim, the breach of contract claim is not "separate and independent" from the other non-removable claims in Nevada's under the § 1441(c) inquiry. To quote the First Circuit, the wrongs underlying each claim "arise from an interlocked series of transactions, that is, . . . they substantially derive from the same facts." *D/C Systems*, 658 F.2d at 874 n.12. Accordingly, § 1441(c) does not apply here.

2.    **Even if "Separate and Independent" Claims Were at Issue as Contemplated in § 1441(c), Unanimous Consent is Required Because the *Same* Claims are Asserted against *All* Defendants, Including Baxter**

Defendants do not contest that Baxter failed to consent to removal within the 30-day removal period. But in a deft exercise in fostering confusion, defendants focus their argument on the misconception that, because the claims brought against one defendant are "separate and independent" within the meaning of § 1441(c) from those brought against the *other* defendants, including Baxter, that Baxter's consent to removal was not necessary (or, for that matter, the consent of other defendants). *Defendants cannot cite a single case in which a court has upheld removal under § 1441(c) based on removable claims brought simultaneously against separate defendants.* That is because where, as here, it is alleged that a claim arising under federal law is brought against *each* defendant, § 1441(c) simply does not apply.

- 14 -

GSK asserts that the breach of contract claim (and other "best price" claims) against it are "separate and independent" from the very same claims asserted against Baxter and the other defendants because they signed separate agreements with DSHS. But this is not the inquiry to be made under § 1441(c). When evaluating the claims brought against multiple defendants, the inquiry to be made is whether a claim arising under federal law is brought against one defendant while, in the same suit, **_only non-removable_** state claims are brought against another defendant. In these circumstances, § 1441(c) provides the first defendant with a right of removal without requiring him to obtain the consent of the second defendant. Otherwise, "a plaintiff might be able to prevent removal of a federal claim by joining an unrelated claim against a different defendant, and this would reduce the effectiveness of section 1441(c) in making separate and independent claims a basis for removal." *Henry v. Independent Am. Sav. Ass'n*, 857 F.2d 995, 999 (5th Cir. 1988) (quoting *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 183 (7th Cir. 1984)).

Hence, § 1441(c) does not apply when two allegedly removable claims are brought against two defendants, like the breach of contract claim Nevada asserts against GSK **_and_** Baxter **_and_** all other defendants and that GSK asserts arises under federal law. "[I]f there are two separate and independent claims and both such claims are removable, then all the defendants to both claims must seek removal." *Jetstar, Inc. v. Monarch Sales & Service Co.*, 652 F. Supp. 310, 312 (D. Nev. 1987) (quoting 1A MOORE'S FEDERAL PRACTICE, ¶ 0.168 at 556-57);[12] *see also Moscovitch v. Danbury Hosp.*, 25 F. Supp. 2d 74, 78 (D. Conn. 1998) (Where a claim arising under federal law is brought against one defendant and the claim pending against another defendant does not arise under federal law, "even though the entire complaint is removed to federal court, only the defendants who have the right to remove the action to federal court are required to consent to removal" per § 1331(c).); *P.P. Farmers' Elevator Co. v. Farmers Elevator*

---

[12] Defendants claim that Judge Reed, the author of *Jetstar* and the District Court Judge in the transferor court, somehow retreated from *Jetstar* in issuing his stay order. Defs. Mem. at 16 n.7. This is simply untrue; in staying the case pending resolution of transfer issues by the MDL Panel, Judge Reed did not rule on the merits of Nevada's remand motions.

- 15 -

*Mut. Ins. Co.*, 395 F.2d 546, 548 (7th Cir. 1968) ("Here the cause of action on [both defendants']

bond[s] would be removable if sued on alone, and sec. 1441(c) does not apply.").

As the court explained in *Costantini v. Guardian Life Ins. Co. of Am.*, 859 F. Supp. 89, 90

(S.D.N.Y. 1994):

> Removal may be achieved where a claim within federal jurisdiction under 28
> U.S.C. 1331 is present even if not all claims asserted in the complaint are within
> federal jurisdiction. . . . A related claim may then be retained under 28 U.S.C.
> 1367 even if it had no independent federal jurisdictional underpinning.
>
> Although all defendants must ordinarily join in a removal, . . . this is not required
> where a case involving a federal claim under 28 U.S.C. 1331 is removed ***and a
> separate claim not independently within federal jurisdiction is involved.*** *See* 28
> U.S.C. 1441(c). [Emphasis added; citations omitted.]

In *Knickerbocker v. Chrysler Corp.*, 728 F. Supp. 460, 463 (E.D. Mich. 1990), the court

labeled as "untenable" one defendant's interpretation of § 1441(c) that parallels GSK's

interpretation here:

> Jonick argues that plaintiff is asserting "separate and independent claims" against
> the two defendants, and that therefore Chrysler's joinder in Jonick's removal
> notice was not required.
>
> Jonick's interpretation of § 1441(c) is untenable. As is clear from the plain
> wording of the statute, § 1441(c) provides an exception to the "all defendants
> must join" rule only with respect to defendants as to whom the complaint states
> ***non-removable claims***. If the claims against both defendants are removable, both
> defendants must join in the removal notice.
>
>> Thus when a separate and independent claim or cause of action,
>> which would be removable if sued upon alone, is joined with one
>> more otherwise nonremovable claims or causes of action, the
>> defendant or defendants to the claim that is removable may file a
>> notice to remove the entire case without the joinder of the
>> defendant or defendants to the otherwise nonremovable cause of
>> action. ***But if there are two separate and independent claims and
>> both such claims are removable, then all the defendants to both
>> claims must seek removal.***

*Id.* at 462-63 (emphasis in original) (quoting and citing 1A Moore's Federal Practice para.

0.168 [3.-2-2], pp. 555-56 (1989); *Jetstar*, 652 F. Supp. 310).[13]

---

[13] Although Congress later amended § 1441(c) to apply only to claims arising under federal
law (thereby excluding removal based upon diversity), the analysis presented in *Knickerbocker*
applies equally here.

Thus, for GSK's argument to work, the claims Nevada has brought against Baxter could *not* have arisen under federal law. But because GSK argues that the breach of contract claim does arise under federal law, it *must* concede that the breach of contract claim brought against Baxter and the other defendants also arise under federal law. Because GSK must make this concession in order for it to predicate federal jurisdiction on the breach of contract claim asserted against itself, the consent of each defendant *is* required to remove the case to federal court. This is plainly not a case in which the plaintiff brings a purportedly federal claim against one defendant, but omits that claim against another. Hence, § 1441(c) does not apply.

Recognizing that *Jetstar* (and the many cases that *Jetstar* relied upon) is fatal to its claim that unanimity is not required to support removal here, GSK attempts to distinguish *Jetstar* by making assertions that are either flat-out false or simply irrelevant.[14] For instance, GSK asserts: "[I]n *Jetstar*, the removable claims against each defendant were not separate and independent." Defs. Mem. at 16. In fact, the *Jetstar* court noted:

> The above conclusion [that Section 1441(c) does not apply] is true
> *regardless* of whether or not the claims by plaintiff against
> Monarch are separate and independent from the claims by plaintiff
> against Marsh & McLennan. *The Court need not reach that
> question.* [652 F. Supp. at 312]

Accordingly, it is false to suggest that the *Jetstar* decision hinged on a finding that the claims at issue were not "separate and independent."

In *Jetstar*, as here, § 1441(c) "does not apply" because the allegedly "separate and independent" breach of contract claim against GSK is coupled with other claims against the other defendants that are also allegedly removable. *Jetstar*, 652 F. Supp. at 311; *see also Knickerbocker*, 728 F. Supp. at 462-63.

---

[14] And in keeping with its effort to distort the rule of § 1441(c), GSK quotes language from WRIGHT & MILLER which, according to GSK, supports its position that other defendants with removable claims need not consent. *See* Defs. Mem. at 12, n.3. GSK's effort is undermined by the very sentence it does quote, which reads in part that unanimous consent to removal is not required "when a separate and independent claim . . . *is joined with other non-removable claims.*" *Id.* (quoting 14C WRIGHT & MILLER, FED. PRACTICE AND PROCEDURE JURIS. 3d § 3731). As WRIGHT & MILLER explicitly recognize, along with virtually every other authority to ever consider the issue, when there is more than one defendant facing a separate and independent claim "*then all defendants to both claims must seek removal.*" 14C WRIGHT & MILLER, FED. PRACTICE AND PROCEDURE JURIS. 3d § 3731, n.15 (2002).

1534.13 0036 MTN.DOC

Contrary to GSK's claim, the court did not limit the rule of *Jetstar* to the situation in which "'no otherwise non-removable claims' existed against any of the defendants, including the removing defendant." Defs. Mem. at 16. Had the court meant to do so, it surely would have so restricted its holding. Instead, the court grounded its holding in the rule that, "'***before the plaintiff's choice of the state forum can be avoided, unanimity among all parties substantively entitled to remove is required.***'" *Jetstar,* 652 F. Supp. at 311 (internal citation omitted). Indeed, the court went on to hold that "the law is . . . clear" that:

> [W]hen a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the defendant or defendants to the claim that is removable may file a petition to remove the entire case without the joinder of the defendant or defendants to the otherwise nonremovable cause of action. But if there are two separate and independent claims and both such claims are removable, then all the defendants to both claims must seek removal. [*Id.* at 311, internal citations omitted].

Defendants cite only a single case in support of GSK's position that unanimous consent is not required in order to justify removal here. That case – *Port of New York Authority v. Eastern Air Lines, Inc.,* 259 F. Supp. 142 (E.D.N.Y. 1966) – was rejected in *Jetstar. See Jetstar,* 652 F. Supp. at 312 (citing long line of cases that support its holding and the State's position here, and noting that *Port of New York Authority* went the other way). Furthermore, *Port of New York* is contrary to every other court and commentator to consider the question. Accordingly, because Baxter, which faces the very same purportedly "separate and independent" claim as GSK does, failed to timely consent to removal, § 1441(c) does not apply and this case should be remanded forthwith.

## C.   The Court Should Not Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims

Invoking § 1441(c) and the supplemental jurisdiction statute, 28 U.S.C. § 1367, GSK encourages the Court to retain jurisdiction over Nevada's remaining claims, *see* Defs. Mem. at 18-20, yet the Court should exercise its discretion to remand these claims even if it chooses to exercise jurisdiction over the "best price" claims (which it should not do due to the weight of authority detailed above).

- 18 -

### 1.    § 1367(a)(1) Commends Remand

Although GSK claims otherwise, Nevada's remaining claims raise novel issues of state law and, thus, should be remanded under § 1367(a)(1).  Defendants do not deny that Nevada's state-law claims are novel or complex and that the very integrity of Nevada's Medicaid program is invoked in this case.  Instead, GSK conclusorily notes that the Court will be called upon to review complex federal statutes.  Although the federal statutes are *not* complex, GSK misses the point:  According to a plain reading of § 1367(a)(1), the inquiry thereunder is whether issues of *state* law will be novel or complex and not whether any federal law components (which are not even mentioned in the subsection) are novel or complex.  Nor does § 1367(a)(1) call for a weighing of the importance of state law vs. federal law in the claims.

### 2.    § 1367(a)(2) Commends Remand, as Does § 1441(c)

As noted above, § 1441(c) does not apply.  But if it did, the Court still retains the discretion to remand all matters in which State law predominates.  The same is true under § 1367(c)(2).  Here, the AWP claims predominate over the "best price" claims.  The Medicaid AWP reimbursement scheme is predicated upon reimbursement rates established by the state Medicaid program.  Further, the central elements of the AWP claims depend on analysis of state law.  For instance, the Court will be called upon to apply the elements of the deceptive trade practices statute (NRS 598.0903, *et seq.)*; NRS 598.0973, which provides special protections for elderly Nevada residents; and Nevada's racketeering statute, NRS 207.470, *et seq.*  It should also be noted that *many* of the drugs at issue in this litigation – to wit, drugs that are physician-administered – are explicitly *excluded* from the rebate program, *see* 42 U.S.C. § 1396r-8(k)(3), and therefore are not even part of Nevada's "best price" claims.

### 3.    § 1367(a)(4) Commends Remand

And, contrary to GSK's assertion, compelling reasons do exist for declining jurisdiction over the remaining claims pursuant to § 1367(a)(4).  In its motion, Nevada detailed how principles of convenience, fairness and comity favor remand of the remaining claims.  *See* Nevada Mtn. at 17-20.  This case involves significant Nevada public policies implicating

- 19 -

consumer protection, protection of elderly citizens and the integrity of Nevada's Medicaid program. Further, the case forms part of a comprehensive Nevada regulatory scheme for Medicaid services. Under these circumstances, comity principles dictate against requiring the Attorney General to pursue his state-law based enforcement claims in federal court. Thus, *Dezell v. Day Island Yacht Club*, 796 F.2d 324 (9th Cir. 1986) – holding that considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling state-law principles and the authority to render a final judgment – strongly supports remand here, yet GSK fails to even discuss *Dezell* in its opposition brief. Thus, defendants fail to address the critical issues of comity raised by Nevada – which counsel strongly in favor of remand here.[15]

### III.    CONCLUSION

For the foregoing reasons, the Court should exercise its sound discretion to remand these actions that invoke important state interests under Nevada law. This case focuses on the Nevada ***state*** Medicaid program and should proceed in state court, just like the Attorney General actions in Texas and West Virginia.

### IV. PLAINTIFF'S WAIVER OF ORAL ARGUMENT

Plaintiff hereby waives oral argument on its Motion to Remand. Although Plaintiff originally requested oral argument upon the filing of its motion, Plaintiffs believe that the papers submitted by the parties are sufficient to allow the Court to properly consider the motion.

---

[15] Defendants cannot deny that Nevada's cases differ in important respects from the private class actions consolidated before this Court. Notwithstanding Nevada's allegations of AWP fraud, Nevada's cases focus on its state Medicaid Program. Therefore, the dominant issues here will significantly differ from those at issue in the class actions. These issues include general Medicaid issues and "best price" issues that are simply irrelevant to the private class actions; causes of action unique to an Attorney General enforcement case, such as Medicaid Fraud; and a damage model and the discovery associated therewith unrelated to any damages calculation to be presented by any class plaintiff in the private class actions. Finally, this case will involve requests for law enforcement penalties and civil forfeiture relief that are not part of the private class actions.

DATED:  January 6, 2003

By _____

Steve W. Berman
Robert B. Carey
Sean R. Matt
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol  (BBO # 471770)
Edward Notargiacomo (BBO # 567636)
HAGENS BERMAN LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Frankie Sue Del Papa
Attorney General of the State of Nevada
L. Timothy Terry
Chief Deputy Attorney General
David Wasick
Special Assistant Attorney General
100 N. Carson Street
Carson City, NV 89701-4714

**COUNSEL FOR PLAINTIFF
STATE OF NEVADA**

## CERTIFICATE OF SERVICE

I hereby certify that I, Edward Notargiacomo, an attorney, caused a true and correct copy

of the foregoing Plaintiffs State of Nevada's Reply Memorandum in Support of Motion to

Remand and Waiver of Oral Argument to be served on all counsel of record electronically,

pursuant to Section D of Case Management Order No. 2.

By:

Edward Notargiacomo, Esq. (BBO # 567636)
HAGENS BERMAN LLP
225 Franklin Street, 26th floor
Boston, MA 02110
(617) 482-3700

- 22 -