UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

―――――――――――――――――――――――

STATE OF MONTANA,

       Plaintiff,

v.                 CIVIL ACTION NO. 02-12084-PBS

ABBOT LABORATORIES, et al.,

       Defendants.

―――――――――――――――――――――――

STATE OF NEVADA,

       Plaintiff,

v.                 CIVIL ACTION NO. 02-12085-PBS

ABBOT LABORATORIES, et al.,

       Defendants.

―――――――――――――――――――――――

STATE OF NEVADA,

       Plaintiff,

v.                 CIVIL ACTION NO. 02-12086-PBS

AMERICAN HOME PRODUCTS, et al.,

       Defendants.

―――――――――――――――――――――――

STATE OF MINNESOTA,

       Plaintiff,

v.                 CIVIL ACTION NO. 03-10069-PBS

PHARMACIA CORPORATION,

       Defendant.

―――――――――――――――――――――――

**MEMORANDUM AND ORDER**

June 11, 2003

SARIS, U.S.D.J.

**INTRODUCTION**

Plaintiffs Minnesota, Montana, and Nevada bring these actions against various pharmaceutical companies, alleging the companies violated state law by fraudulently misrepresenting prescription-drug prices.  Defendants have removed the suits from state court on the ground that plaintiffs' claims raise federal questions, because they turn on the meaning of "average wholesale price" in the federal Medicare statute, 42 U.S.C. § 1395u(o), or on the meaning of "best price" in Medicaid-rebate contracts between the federal government and each defendant.[1]  Plaintiffs argue that any federal issues are not substantial enough to confer jurisdiction, and seek remand to state court.  After hearing, the Court **ORDERS** that <u>State of Minnesota v. Pharmacia</u> and <u>State of Nevada vs. Abbot Laboratories, et al.</u> be remanded to their respective state courts and that <u>State of Montana vs. Abbot Laboratories, et al.</u> and <u>State of Nevada vs. American Home Products Corp., et al.</u> remain in federal court.

**BACKGROUND**

This background section draws on the allegations in the

---

[1] Because plaintiffs are state governments, defendants do not assert diversity jurisdiction as a ground for removal.  <u>See generally</u> 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3723, at 595 (3rd ed. 1998) ("[S]ince it is well established that a state is not a 'citizen' of any state, it follows that when a state is the real party in interest, the case cannot be removed on the basis of diversity of citizenship jurisdiction.").

- 2 -

complaints; defendants hotly dispute many of these allegations.

## I.  Medicare

Medicare is the federal insurance program that pays for the medical care of persons 65 and older.  See 42 U.S.C. §§ 1395-1395ggg (2003).  The Medicare program is administered by the Center for Medicare and Medicaid Services ("CMS"), which is under the authority of the Secretary of Health and Human Services. Medicare Part B establishes an insurance program to pay for physicians' services.  See id. §§ 1395j-1395w.  Medicare generally does not cover the cost of prescription drugs that a Medicare beneficiary self-administers (e.g., by swallowing the drug).  It does cover some outpatient drugs, including ones that are administered by a doctor, and certain oral anti-cancer drugs. Approximately 450 drugs are covered by Medicare Part B.

Through its Medicare Part B program, the federal government reimburses health-care providers like physicians for up to 80 percent of the allowable cost of certain prescription drugs that they administer directly to patients.  The remaining 20 percent is paid by the Medicare Part B beneficiary, as a co-payment.  The drug-reimbursement rates are based on "the lower of the actual charge on the Medicare claim for benefits or 95 percent of the national average wholesale price ["AWP"] of the drug or biological."  42 C.F.R. § 405.517(b) (2003).  See also 42 U.S.C. § 1395u(o) ("[T]he amount payable for the drug or biological is

equal to 95 percent of the average wholesale price.").

In setting reimbursement rates, the Medicare program uses the AWPs generated by the pharmaceutical industry.  There are no regulations describing how AWPs are to be calculated, nor any regulatory process for approving AWPs.  Pharmaceutical companies do not report directly to the federal government, but instead send their pricing information to independent publishing companies that compile the data and publish the AWPs in trade publications, which are then used by the government and private health plans.[2]  The publishing companies do not independently review the figures for accuracy.  The figures are not filed with the CMS.

Minnesota, Montana, and Nevada all allege that defendant pharmaceutical companies overstate the AWPs of many drugs in the data they provide to the trade publications.  This overstatement in AWP reporting creates a "spread" between the actual cost of a drug to a health-care provider, and the reimbursement paid to the provider by the federal government.  It also inflates the co-payments made by consumers; indeed, in some instances the co-payment alone exceeds the cost of the drug to the provider. Defendants actively market this spread to providers, who are encouraged to buy drugs from defendants at highly discounted

---

[2] The major reporting services include First Data Bank (the "Blue Book"), Medical Economics Co., Inc. (the "Red Book"), and Medispan.

prices and urged to keep the reimbursement and co-payment spreads for themselves.  The pharmaceutical companies benefit through higher sales and larger market share.

Defendants exacerbate the AWP spread through certain marketing practices.  For example, some defendants provide "free samples" to health providers, who are sometimes encouraged to bill their customers for the samples as they would any other drug.  This free-sample scheme lowers the providers' overall costs while not reducing the amount they receive in reimbursements from the federal government or co-payments from consumers, which remain tied to the reported AWPs.  Other fraudulent pricing practices include off-invoice pricing, rebates, and grants.  All of these incentives are designed to lower the providers' net cost of purchasing the drugs – with a corresponding increase in the AWP spread.

The AWP scheme harms Medicare beneficiaries or their insurers because it artificially inflates the co-payments for drugs subject to an AWP spread, to the financial detriment of individual patients or their insurers.

## II.  Medicaid

The Medicaid program is a federal-state collaboration designed to provide medical care for the poor.  See 42 U.S.C. §§ 1396-1396v (2003).  The federal government sets certain broad standards for the program and provides funds to states that elect

- 5 -

to participate.  Each participating state determines, within the federal guidelines, its own rules for program eligibility and content of medical care; each state then administers its program, and complements the federal funding with state appropriations.

In Minnesota, Montana, and Nevada, the state Medicaid programs include coverage of certain prescription drugs and use AWP in their drug-reimbursement formulae.  See, e.g., Minn. Stat. § 256B.0625, subd. 13(c) (2003) (using "average wholesale price" in formula for drug reimbursement).  By overstating the AWPs for many of their drugs, defendants cause these state Medicaid programs to overpay physicians for these drugs.

Under the federal Medicaid statute, each defendant must enter into a rebate agreement with the United States Secretary of Health and Human Services.  See 42 U.S.C. § 1396r-8(a)(1).  Every rebate agreement requires compliance with 42 U.S.C. § 1396r-8, which (1) requires each contracting company to report its "best price" for prescription drugs, and to make rebates when necessary, and (2) requires that best price be based on the average manufacturer's price, inclusive of discounts provided to certain purchasers.

Under these rebate agreements with the federal government, each pharmaceutical manufacturer is required to file quarterly reports with CMS identifying particular pricing information by drug.  Id. § 1396r-8(b)(3).  The quarterly report must contain

the "manufacturer's best price" for each particular drug.  Id.
This data is used to calculate the rebates that manufacturers
must provide state Medicaid programs that purchase their drugs.

Defendants do not report the actual best prices mandated by
the rebate agreements, but instead exclude from best-price
calculations certain discounts and other inducements offered to
physicians to increase use of certain drugs.  Defendants'
violation of the best-price terms in their contracts with the
federal government harms the state Medicaid programs because it
lowers the rebate payments to these programs.

## III. Other State Prescription-Drug Programs

Minnesota, Montana, and Nevada all have other prescription-
drug programs that use AWP to set reimbursement rates.
Defendants' misreporting of AWPs also harms these programs.

### DISCUSSION

## I.   Standard for Removal

A party seeking to remove a case to federal court has the
burden of demonstrating the existence of federal jurisdiction.
See, e.g., BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir.
1997). Furthermore, the removal statute should be strictly
construed, and any doubts about the propriety of removal should
be resolved against the removal of an action. See, e.g., Danca v.
Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

## II.  Analysis of Federal-Question Jurisdiction

A state-court suit that includes at least one claim "arising under the Constitution, laws, or treaties of the United States" can be removed to federal court.  See 28 U.S.C. § 1441 (2003) (allowing for removal of suits that fall within the federal district courts' original jurisdiction over federal-question cases); 28 U.S.C. § 1331 (2003) (federal-question statute). "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'  A defense that raises a federal question is inadequate to confer federal jurisdiction." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) (citations omitted); see also Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) ("[A] case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.") (citation omitted).

Usually, a federal claim creates the federal question.  See Merrell Dow, 478 U.S. at 808 ("The 'vast majority' of cases that come within this grant of jurisdiction are covered by Justice Holmes' statement that a 'suit arises under the law that creates the cause of action.'") (quoting American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916)).

But a federal question can arise in other ways, including through a state-law claim "requir[ing] resolution of a

- 8 -

substantial question of federal law." <u>City of Chicago v. Int'l
Coll. of Surgeons</u>, 522 U.S. 156, 164 (1997) (permitting removal
of state suit containing claims that local administrative action
violated federal law) (quoting <u>Franchise Tax Bd. of Cal. v.
Constr. Laborers Vacation Trust for Southern Cal.</u>, 463 U.S. 1, 13
(1983)).  Determining whether a state-law claim houses a
substantial question of federal law requires entering what the
First Circuit has characterized as a "remarkably tangled corner
of the law." <u>Almond v. Capital Props., Inc.</u>, 212 F.3d 20, 22
(1st Cir. 2000) (analyzing whether a federal question arose out
of a state-law claim that turned on the interpretation of a
contract with the federal government).  The Court will apply this
difficult body of precedent to the claims in this case; because
each state's claims raise certain distinct issues, the Court will
address the suits serially.

### A.   Minnesota

Minnesota's complaint includes six state-law claims:
consumer fraud, false advertising, fraud on senior citizens and
handicapped persons, Medicaid fraud, common-law fraud, and unjust
enrichment.  All of these claims are grounded in allegations that
Pharmacia misreported the AWPs for various Pharmacia prescription
drugs, to the detriment of Minnesota Medicare beneficiaries, the
Minnesota Medicaid program, and certain other Minnesota state
programs that use AWP to set reimbursement rates for prescription

drugs.   Minnesota acts under its <u>parens</u> <u>patriae</u> authority in bringing claims on behalf of the Medicare beneficiaries. Minnesota's suit is unique in that Minnesota has not brought any claim based on violation of the "best price" requirement in a Medicaid-rebate agreement between a drug manufacturer and the federal government.

The procedural posture of Minnesota's suit against Pharmacia is also unique, in that Chief United States Magistrate Judge Lebedoff (District of Minnesota) has already recommended granting Minnesota's motion for remand.   (<u>See</u> Report and Recommendation, Docket No. 25 in Civ. Action No. 02-1779-MJD/JGL (D. Minn.).) Pharmacia filed objections to Judge Lebedoff's Report and Recommendation.   Before the district judge in Minnesota could rule on these objections, the case was transferred to this Court.

Pharmacia argues that federal jurisdiction is appropriate because Minnesota's claims on behalf of Medicare beneficiaries depend on a substantial question of federal law.[3]   In particular, Pharmacia contends that Minnesota's <u>parens</u> <u>patriae</u> claims on behalf of Medicare beneficiaries require a determination of whether the AWPs reported by Pharmacia comport with the meaning of AWP under the Medicare statute; Pharmacia argues that Congress has sanctioned the AWP "spread."   Minnesota replies that its

_____

[3] Pharmacia waives its preemption argument for purposes of its motion to remand.

claims do not require reference to the Medicare statute, and that Pharmacia's statutory argument is simply a defense, which is not a ground for removal.  Pharmacia readily wins this dispute, because an essential element of Minnesota's <u>parens patriae</u> claims is proof of a discrepancy between the AWPs reported by Pharmacia and the meaning of AWP under the Medicare statute.

At first blush, this element of Minnesota's suit presents a federal question.  The adjudication of whether the term "average wholesale price" in the Medicare statute embraces a "spread" could have broad implications for Medicare reimbursements and co-payments.  But this Court is bound by the Supreme Court's decision in <u>Merrell Dow</u>, which requires remanding Minnesota's suit.

In <u>Merrell Dow</u>, plaintiffs brought a state-law negligence claim alleging "that the drug Bendectin was 'misbranded' in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), 52 Stat. 1040, as amended, 21 U.S.C. § 301 <u>et seq.</u> (1982 ed. and Supp. III), because its labeling did not provide adequate warning that its use was potentially dangerous."  478 U.S. at 805-6.  The Supreme Court held that even if plaintiffs' state-law claim turned on a violation of the FDCA, this was not an issue of federal law substantial enough to convey federal-question jurisdiction.  The Supreme Court found dispositive the FDCA's lack of a private right of action for branding violations:

We simply conclude that the congressional determination
that there should be no federal remedy for the
violation of this federal statute is tantamount to a
congressional conclusion that the presence of a claimed
violation of the statute as an element of a state cause
of action is insufficiently "substantial" to confer
federal-question jurisdiction.

Id. at 814.

Under Merrell Dow, where a state-law claim includes as a
necessary element the violation of a federal statute, the federal
statute must provide a private remedy for violation of that
standard, for federal-question jurisdiction to obtain.  See id.;
see also PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32, 35
(1st Cir. 1998) ("Unless a federal statute bestows a private
right of action, courts ought to presume that Congress did not
intend the statute to confer federal jurisdiction."); Nashoba
Communications Ltd. P'ship No. 7 v. Town of Danvers, 893 F.2d
435, 439 (1st Cir. 1990) (rejecting defendants' argument that
plaintiff's state-law claims raised a federal question concerning
the Cable Communications Policy Act of 1984, 47 U.S.C. § 543
(Supp.II 1984), because the statute's lack of an express or an
implied private remedy "ma[de] the federal issue insubstantial");
Seinfeld v. Austen, 39 F.3d 761, 764 (7th Cir. 1994) ("Under
Merrell Dow, therefore, 'if federal law does not provide a
private right of action, then a state law action based on its
violation perforce does not raise a "substantial" federal
question.'") (quoting Utley v. Varian Assocs., Inc., 811 F.2d

1279, 1283 (9th Cir. 1987)); <u>Mulcahey v. Columbia Organic Chems.</u> <u>Co., Inc.</u>, 29 F.3d 148, 152 (4th Cir. 1994) ("[U]nder <u>Merrell</u> <u>Dow</u>, if a federal law does not provide a private right of action, a state law action based on its violation does not raise a 'substantial' federal question."); <u>Smith v. Ind. Valley Title</u> <u>Ins. Co.</u>, 957 F.2d 90, 94 (3rd Cir. 1992) ("Since Congress has not provided a private federal remedy for violating [26 U.S.C.] § 6045(e)(3), <u>Merrell Dow</u> dictates that the district court did not have subject matter jurisdiction . . . ."); <u>Willy v. Coastal</u> <u>Corp.</u>, 855 F.2d 1160, 1168 (5th Cir. 1988) ("<u>Merrell Dow</u> held that a private, federal remedy was a necessary predicate to determining the presence of a federal element in a state-created cause of action resulted in that cause of action being one which arose under federal law . . . ."); <u>Rogers v. Platt</u>, 814 F.2d 683, 688 (D.C. Cir. 1987) ("[I]n <u>Merrell Dow</u> . . . [the] Court held that if Congress affirmatively determines that there should be <u>no</u> private federal cause of action that is effectively the end of the matter.") (emphasis in original); Erwin Chemerinsky, <u>Federal</u> <u>Jurisdiction</u> § 5.2, at 284 (3rd ed. 1999) ("[W]ithout a federal cause of action, a federal law cannot be the basis for federal question jurisdiction."). <u>But</u> <u>see</u> <u>Barbara v. New York Stock</u> <u>Exch., Inc.</u>, 99 F.3d 49, 54 (2nd Cir. 1996) ("[C]ases in this circuit have not read <u>Merrell Dow</u> categorically to preclude federal question jurisdiction in the absence of a private remedy

for violation of the relevant federal law . . . ."); <u>City of
Huntsville v. City of Madison</u>, 24 F.3d 169, 174 (11th Cir. 1994)
(interpreting <u>Merrell Dow</u> to allow for the possibility that an
"exceptional federal statute that does not provide for a private
remedy . . . still raises a federal question substantial enough
to confer federal question jurisdiction when it is an element of
a state cause of action").

Here, Pharmacia makes no argument that the Medicare statute
provides a private right of action for AWP misreporting.  Thus,
even though violation of the Medicare statute is a necessary
element of Minnesota's Medicare-beneficiary claims, <u>Merrell Dow</u>
requires a finding that the federal issue is not substantial
enough to create federal jurisdiction.  <u>See</u> 478 U.S. at 814.

Pharmacia also contends that remand would open the door for
multiple judicial determinations of the meaning of AWP under the
Medicare statute, which in turn would result in confusion in the
administration of the Medicare program.  But in <u>Merrell Dow</u> the
Supreme Court rejected a similar argument for removal:

> [P]etitioner contends that there is a powerful
> federal interest in seeing that the federal statute is
> given uniform interpretations, and that federal review
> is the best way of insuring such uniformity.  In
> addition to the significance of the congressional
> decision to preclude a federal remedy, we do not agree
> with petitioner's characterization of the federal
> interest and its implications for federal-question
> jurisdiction.  To the extent that petitioner is arguing
> that state use and interpretation of the FDCA pose a
> threat to the order of the FDCA regime, petitioner
> should be arguing, not that federal courts should be

> able to review and enforce state FDCA-based causes of
> action as an aspect of federal-question jurisdiction,
> but that the FDCA pre-empts state-court jurisdiction
> over the issue in dispute.  Petitioner's concern about
> the uniformity of interpretation, moreover, is
> considerably mitigated by the fact that, even if there
> is no original district court jurisdiction for these
> kinds of action, this Court retains power to review the
> decision of a federal issue in a state cause of action.

Id. at 815-16.  The Court sees no cause to depart from Merrell

Dow on this score.

For these reasons, Minnesota's suit must be remanded to

state court in Minnesota.

### B.    Montana

Montana's amended complaint against various pharmaceutical

companies includes seven state-law claims: two separate claims

for deceptive trade practices, two separate claims for restraint

of trade, a Medicaid-fraud claim, a false-claims claim, and a

claim for punitive damages.  Several of these claims are founded

on allegations that defendants misreported AWPs for certain of

their drugs, to the detriment of Montana Medicare beneficiaries,

the Montana Medicaid program, and other Montana state agencies

that use AWP to determine reimbursement rates for prescription

drugs.  These AWP claims echo those of Minnesota, and for the

reasons discussed above, such claims do not provide a basis for

federal jurisdiction.

Montana's original complaint had a claim for breach of

contract based on violations of federal Medicaid-rebate

agreements; this claim was deleted from the amended complaint.
At the hearing before this Court, plaintiffs did not dispute that
the deleted claim raised a federal question, but argued that the
Court must limit its jurisdictional analysis to the amended
complaint.  But defendants correctly noted that the Court must
analyze removal based on the original complaint, including the
breach of contract claim.  Ching v. Mitre Corp., 921 F.2d 11, 13
(1st Cir. 1990) ("An amendment to a complaint after removal
designed to eliminate the federal claim will not defeat federal
jurisdiction.") (emphasis in original).  This does not end the
Court's inquiry into Montana's claims, however, as the Court will
proceed to determine whether there is an independent basis for
federal jurisdiction over the remaining claims, or whether the
Court has the discretion to remand these claims pursuant to 28
U.S.C. § 1367(c)(3) (2003).

The remaining claims are tort claims based on allegations
that defendants violated the "best price" requirement contained
in Medicaid-rebate agreements between defendants and the federal
government.  These claims raise the question of whether state-law
tort claims requiring interpretation of a contract with the
federal government – as opposed to the interpretation of a
federal statute, as in Merrell Dow – create federal-question
jurisdiction.

The First Circuit answered this question in Almond v.

- 16 -

Capital Properties, Inc., 212 F.3d 20 (1st Cir. 2000).  In

Almond, various parties – including the Federal Railroad

Administration ("FRA"), the state of Rhode Island, and a real-

estate developer – entered into an agreement to relocate a

Providence railroad station and to build a parking garage at the

new station location.  Id. at 21.  The developer and the FRA

entered into a subordinate contract in which the developer agreed

that the FRA "shall have the right of prior approval of any

changes in public parking rates."  Id.  This subordinate contract

was incorporated into an agreement between the developer and the

state of Rhode Island.  Id.  After the developer's successor-in-

interest allegedly raised the garage's parking rates without

seeking the FRA's approval, Rhode Island filed suit "to enjoin

[the successor-in-interest's] alleged violation of its

contractual obligation to seek FRA approval for rate increases."

Id. at 21-22.  The defendant removed the case to federal court.

Id. at 22.

       On appeal, the First Circuit sua sponte examined the

propriety of removal.  Id. at 22-24.  At the outset, the First

Circuit noted that

        [t]his action was removed from state court on the
        ground that it came within the district court's
        "arising under" jurisdiction, 28 U.S.C. § 1331 (1994).
        This appears to be a correct position, as we will
        explain, because the complaint necessarily presents and
        turns upon the interpretation of a contractual
        obligation to the United States.  But this is a
        remarkably tangled corner of the law and there is

                              - 17 -

little direct authority, partly because in most cases
interpreting contracts with the United States the
federal government is a party and jurisdiction is
automatic under 28 U.S.C. §§ 1345, 1346(a)(2) (1994).

Id. at 22.  The Circuit Court assumed that federal law did not
create the state's contract claim, but held "federal law surely
controls on what is the most important issue."  Id. at 23.

Though the federal contract-law issue was plainly necessary
to Rhode Island's state-law claim, this left the "almost
unanswerable question of whether the Supreme Court would regard
the federal issue in this case as sufficiently important to
confer 'arising under' jurisdiction on the district court."  Id.
at 23-24.  The First Circuit found that the federal interest was
"surely more than in Merrell" because "not only is a federal
agency a party to the [parking-rate] contract, but the issue
presented is whether a specific rate increase must be presented
to that agency."  Id. at 24 & n.3.  The First Circuit held that
federal-question jurisdiction existed.  Id. at 24.

Here, Montana's best-price claims require interpretation of
contracts to which the Federal Department of Health and Human
Services is a party, and the pharmaceutical companies' best-price
obligations under these contracts are governed by federal common
law.  See Boyle v. United Tech. Corp., 487 U.S. 500, 504 (1988)
("[O]bligations to and rights of the United States under its
contracts are governed exclusively by federal law.").  Moreover,
if Montana were to prevail on the best-price claims, it could

result in substantial changes in the Medicaid reimbursements paid
out by the federal government – an impact far greater than the
FRA's possible need to review a rate increase for a Providence
parking garage.  In short, if the federal contract-law issues in
Almond were substantial enough to create federal-question
jurisdiction, a fortiori Montana's best-price claims also produce
federal-question jurisdiction.

The cases cited by Montana are not on point – i.e., they do
not address a state-law claim of which a federal contract-law
issue is a necessary element – with one exception: the Ninth
Circuit's decision in Hunter v. United Van Lines, 746 F.2d 635
(9th Cir. 1985).  In Hunter, the Ninth Circuit examined whether
federal-question jurisdiction arose from a claim under California
law for tortious bad faith, where the claim depended on federal
contract law.  Id. at 644-48.  As the Circuit Court stated:

> The core of the tortious bad faith claim . . . is that
> the alleged harassment and intimidation on the part of
> appellees constituted a breach of their state-law duty
> to handle [a] contract claim in good faith.  We assume
> that, in order to prevail on such a state-law claim,
> plaintiffs must show that they had at least a colorable
> contract claim against defendants; otherwise, there
> would have been no duty to negotiate the claim in good
> faith, and no breach would have occurred.  Here, the
> alleged contract claim that gave rise to the duty to
> negotiate in good faith was a claim which was itself
> governed by federal law.  Federal law thus can be said
> to form an ingredient in plaintiffs' state-law claim
> for tortious bad faith.  We must determine whether that
> federal ingredient is sufficient to give rise to
> federal jurisdiction . . . .

Id. at 645.  The Ninth Circuit held that the federal contract-law

- 19 -

issue did not create federal-question jurisdiction:

> Even if California requires a showing that the
> contract claim is valid, federal jurisdiction is
> lacking.  To be sure, proving a federal element would
> be necessary to making out the state claim.
> Nonetheless, federal law would play an insufficiently
> prominent role in the resolution of the state claim to
> give rise to federal jurisdiction over that claim.  The
> gist of plaintiffs' bad faith claim is that defendants
> engaged in conduct regarding the handling of the
> underlying claim that is made unlawful by California;
> the federal element merely determines as a preliminary
> matter, whether the duty imposed by the state is
> inapplicable in the case of a particular transaction.
> The fact that federal law plays a preliminary,
> threshold role in the case of state claims such as this
> one does not, by itself, transform such state claims
> into federal ones.

Id. at 646.

Hunter can be fairly distinguished from Almond and the instant case, because Hunter did not involve a contract with the federal government.  Even if Hunter conflicts with Almond, this Court is bound by First Circuit precedent in adjudicating transferred multi-district cases.  See, e.g., In re TMJ Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); Newton v. Thomeson, 22 F.3d 1455, 1460 (9th Cir. 1994) (same); Menowitz v. Brown, 991 F.2d 36, 40-41 (2nd Cir. 1993) (same); In re Korean Air Lines Disaster of September 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (same).  Following Almond, the Court holds that Montana's best-price claims fall within the Court's federal-

question jurisdiction, and the Court exercises supplemental jurisdiction over Montana's AWP claims.

### C.   Nevada

Nevada has filed two suits: one versus Abbot Laboratories, Inc., et al. ("Nevada I"), and one against American Home Products Corp., et al. ("Nevada II").  Both suits include, inter alia, best-price claims like those of Montana.  For the reasons discussed above, Nevada's best-price claims give this Court federal-question jurisdiction over Nevada I and II.

Nevada raises a procedural argument for remanding Nevada I, namely, defendants' failure to consent unanimously to removal. As a general matter, in cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition.  See, e.g., Lapides v. Board of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 620 (2002) (citing Chicago, Rock Island, & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900) for the proposition that "removal requires the consent of all defendants"); Wis. Dep't of Corrections v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) ("Removal requires the consent of all of the defendants.").  "This 'rule of unanimity' requires that all defendants file their notice of removal or consent to removal within thirty days of being served," and "[f]ailure to do so constitutes a 'defect in the removal procedure' and is grounds for remand.'"  Murphy v. Newell

Operating Co., 245 F. Supp.2d 316, 318 (D. Mass. 2003) (citing Sansone v. Morton Mach. Works, Inc., 188 F. Supp.2d. 182, 184 (D.R.I. 2002)). See also 28 U.S.C. § 1446(b) (2003) (stating that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading").

Here, the following facts are undisputed: Defendants in Nevada I were served with the complaint on January 17, 2002. All the defendants faced removable federal claims, i.e., the best-price claims, though the particular Medicaid rebate agreement(s) at issue varied from defendant to defendant. On February 15, 2002, defendant GlaxoSmithKline removed the case to federal district court pursuant to 28 U.S.C. § 1441, the general removal statute. Defendant Baxter Pharmaceutical Products, Inc. not only failed to consent to removal, it filed an objection to removal on February 20, 2002. On May 30, 2002 - well over thirty days after being served with the complaint - Baxter reversed itself, and filed a notice of consent to removal. These facts show that unanimous consent was not achieved due to Baxter's failure to consent in timely fashion.[4]

While not disputing that unanimous consent is required for

---

[4] At the hearing before this Court, defendants' counsel stated that "we agree that to the extent a party later consented that doesn't matter," waiving any argument that failure to consent can be cured.

removal pursuant to 28 U.S.C. § 1441(a)-(b), defendants argue
that 28 U.S.C. § 1441(c) authorized removal of the Nevada cases
without unanimous consent.  § 1441(c) states:

> Whenever a separate and independent claim or cause
> of action within the jurisdiction conferred by section
> 1331 [the federal-question statute] of this title is
> joined with one or more otherwise non-removable claims
> or causes of action, the entire case may be removed . .
> . .

Defendants contend that under § 1441(c), <u>any</u> defendant facing a
federal-question claim that is separate and independent from
otherwise non-removable claims in the case, unilaterally can
remove the entire case to federal court.  Defendants' argument
requires the Court to carefully examine both the rule of
unanimity and § 1441(c).

The rule of unanimity is a judicial interpretation of
statutory removal procedure.  28 U.S.C. § 1446, which sets out
the basic procedures for removal, provides:  "<u>A defendant or
defendants</u> desiring to remove any civil action . . . ." (emphasis
added).  The courts have long construed this language to require
the rule of unanimity.  <u>See</u>, <u>e.g.</u>, <u>Doe v. Kerwood</u>, 969 F.2d 165,
167 (5th Cir. 1992) (stating that courts have read "defendant or
defendants" in removal statutes as "mean[ing] that, if there is
only one defendant then that defendant may remove the case;
however, if there is more than one defendant, then the defendants
must act collectively to remove the case").  As the Eleventh
Circuit recently observed, the rule is consistent with the

traditionally narrow reading of the removal statutes:

> Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand. <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994).  Beginning with the United States Supreme Court's decision in <u>Chicago R.I. & Pac. Ry. Co.</u>, 178 U.S. at 248, 20 S.Ct. 854, 44 L.Ed. 1055, federal courts have universally required unanimity of consent in removal cases involving multiple defendants. There are several such bright line limitations on federal removal jurisdiction (e.g. the removal bar for in-state defendants and the one year time limit for diversity removals) that some might regard as arbitrary and unfair.  Such limitations, however, are an inevitable feature of a court system of limited jurisdiction that strictly construes the right to remove.

<u>Russell Corp. v. American Home Assurance Co.</u>, 264 F.3d 1040, 1050 (11th Cir. 2001).

Courts have disagreed over the contours of the rule of unanimity.  Two cases from this District have found an exception where certain defendants face only non-removable claims.  <u>See Shepard v. Egan</u>, 767 F. Supp. 1158, 1161 (D. Mass. 1990) (holding that "those defendants who could not have removed the case themselves if they had been the sole defendants in the action, need not join the removal petition"); <u>Hill v. City of Boston</u>, 706 F. Supp. 966, 968 (agreeing with other district-court opinions that "unanimity as to removal is required only of those parties who would independently have the right to remove").  The Fifth Circuit has disagreed.  <u>See Kerwood</u>, 969 F.2d at 167-68 (rejecting <u>Hill</u>'s "refinement" of the rule of unanimity, and

holding that unanimity of consent is required by the Supreme
Court's decision in <u>Chicago, Rock Island, & Pacific Railway Co.
v. Martin</u>, even where certain defendants face only non-removable
claims).  Regardless of the outcome of this judicial debate, this
exception is inapplicable here because all of the defendants
faced a removable federal claim.

The Court now turns to § 1441(c) and the stygian caselaw
surrounding it.  The current version of § 1441(c) – as amended by
Congress in 1990 – "explicitly provid[es] discretionary removal
jurisdiction over [an] entire case where [a] federal claim is
accompanied by a 'separate and independent' state law claim."
<u>Schacht</u>, 524 U.S. at 387.  § 1441(c) stretches removal
jurisdiction beyond § 1441(a)-(b), which are limited to the
federal courts' supplemental jurisdiction.  <u>See</u> 28 U.S.C. §
1367(a) (giving federal courts supplemental jurisdiction over
state-law claims that "are so related to claims in the action
within such original jurisdiction that they form part of the same
case or controversy").[5]  The House Report for the 1990 Act
discussed the purpose of the current version of § 1441(c):

---

[5] In <u>Bonanno Linen Serv., Inc. v. McCarthy</u>, 708 F.2d 1, 6-11
(1st Cir. 1983) (dealing with state claim against pendent
parties), the First Circuit held that an intermediate area
existed between supplemental jurisdiction and jurisdiction under
§ 1441(c).  In this intermediate area, removal is improper.  <u>See
id.</u>; <u>see also</u> John Henry Lewin, "The Federal Courts' Hospitable
Back Door – Removal of "Separate and Independent" Non-Federal
Causes of Action," 66 Harv. L. Rev. 423, 431 (1953) (noting the
"curious result" in the intermediate area).

> The amendment . . . retain[s] the opportunity for
> removal in the one situation in which it seems clearly
> desirable.  The joinder rules of many states permit a
> plaintiff to join completely unrelated claims in a
> single action.  The plaintiff could easily bring a
> single action on a federal claim and a completely
> unrelated state claim.  The reasons for permitting
> removal of federal question cases applies with full
> force.  In addition, the amended provision could
> actually simplify determination of removability.  In
> many cases the federal and state claims will be related
> in such a way as to establish pendent [or
> "supplemental"] jurisdiction over the state claim.
> Removal of such cases is possible under Sec. 1441(a).
> The amended provision would establish <u>a basis for
> removal</u> that would avoid the need to decide whether
> there is pendent jurisdiction.

H.R. Rep. No. 101-734, section 109 (1990) (emphasis added).

As the House Report indicates, the current § 1441(c) was not

intended to provide an exception to the rule of unanimity, but

rather to allow for removal of an entire case where a plaintiff

attempts to use liberal joinder rules to preclude supplemental

jurisdiction.  Indeed, § 1441(c) is different in kind from the

rule of unanimity: § 1441(c) is a <u>basis for removal jurisdiction</u>,

while the rule of unanimity is a <u>rule of removal procedure</u>.

Thus, defendants' argument that § 1441(c) necessarily trumps the

rule of unanimity is incorrect.

The pivotal question is whether the Court should nonetheless

find an exception to the rule of unanimity where § 1441(c) is a

proper basis for jurisdiction, even if multiple defendants face

removable claims.  The weight of authority is against such an

exception.  As the District of Nevada stated in <u>Jetstar Inc. v.</u>

Monarch Sales & Service Co.:

> Thus when a separate and independent claim or cause of
> action, which would be removable if sued upon alone, is
> joined with one or more otherwise nonremovable claims
> or causes of action, the defendant or defendants to the
> claim that is removable may file a petition to remove
> the entire case without the joinder of the defendant or
> defendants to the otherwise nonremovable cause of
> action.  But if there are two separate and independent
> claims and both such claims are removable, then all the
> defendants to both claims must seek removal.

652 F. Supp. 310, 312 (D. Nev. 1987) (quoting 1A Moore's Federal

Practice ¶ O.168 [3.-2-2] at p. 556-57).  See also P.P. Farmers'

Elevator Co. v. Farmers Elevator Mutual Ins. Co., 395 F.2d 546,

548 (7th Cir. 1968) (relying on Moore's to reject argument that

one insurer could properly effect removal acting alone under 28

U.S.C. § 1441(c) where other insurer had a removable claim but

declined to remove); Knickerbocker v. Chrysler Corp., 728 F.

Supp. 460, 462-63 (E.D. Mich. 1990) (quoting Moore's with

approval).  But see Port of N.Y. Auth. v. Eastern Air Lines,

Inc., 259 F. Supp. 142, 145 (E.D.N.Y. 1966) (holding that, under

earlier version of § 1441(c), "[i]f . . . the right of removal is

to have substance, it should not be defeated by the joinder in

the same suit of other removable claims and the failure of the

other removable defendants to exercise their right to remove").

In accordance with the weight of authority – and with the general

presumption against the exercise of federal jurisdiction – the

Court holds that under the rule of unanimity, all defendants to

all removable claims must consent to removal, even where §

1441(c) is a proper basis for removal.

The procedure used to effect removal of Nevada I was therefore defective and plaintiffs did not waive the defect.  In Nevada I, all defendants confronted removable claims – namely, the best-price claims – and all defendants needed to consent to removal.  Because Baxter did not timely consent to removal, unanimous consent was not achieved, and Nevada I must be remanded to state court in Nevada.

In Nevada II, however, all defendants consented to removal. The Court has federal-question jurisdiction over the best-price claims in Nevada II, and the Court exercises supplemental jurisdiction over the remaining claims in Nevada II.

### ORDER

The Court **DENIES** Defendant Pharmacia Corporation's Objections to Magistrate Judge's Report and Recommendation Regarding Plaintiff's Motion to Remand (Docket No. 27 in Civ. Action No. 02-1779-MJD/JGL (D. Minn.)), **ALLOWS** Plaintiff State of Minnesota's Motion to Remand (Docket No. 1 in Civ. Action No. 03-10069-PBS), and **ORDERS** Civil Action Number 03-10069-PBS remanded to District Court in the Fourth Judicial District, County of Hennepin, Minnesota.  The Court **DENIES** Minnesota's request for attorneys' fees.  The Court **DENIES** Plaintiff State of Montana's Motion to Remand (Docket No. 251 in Civ. Action No. 01-12257-PBS).  The Court **ALLOWS-IN-PART** and **DENIES-IN-PART** Plaintiff

State of Nevada's Motion to Remand (Docket No. 255 in Civ. Action No. 01-CV-12257-PBS) and **ORDERS** Civil Action Number 02-12085-PBS remanded to the Second Judicial District Court, Washoe County, Nevada.

                              S/Patti B. Saris
                         _____
                         United States District Judge