**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

THIS DOCUMENT RELATES TO:

CONGRESS OF CALIFORNIA SENIORS, (individually and on behalf of the general public, )

v.

ABBOTT LABORATORIES, ET AL.

**PLAINTIFF CONGRESS OF CALIFORNIA SENIOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. SUMMARY OF PERTINENT FACTS ..... 4

A. The Allegations Of CCS' State Court Complaint ..... 4

B. The Nature of CCS's California State-Law Claim ..... 5

C. Defendants' Removal Of This Representative Action ..... 7

III. ARGUMENT ..... 8

A. Defendants Have A Heavy Burden Of Demonstrating That Removal Jurisdiction Exists ..... 8

B. This Court Lacks Subject-Matter Jurisdiction Over CCS' Claims Because CCS, As A Representative Plaintiff Suing Under The UCL, Does Not Allege Standing to Sue in Federal Court Under "Article III" ..... 10

C. CCS Has Not Engaged In "Artful Pleading" Because ERISA Does Not Preempt CCS' UCL Claim ..... 11

1. This case does not "relate to" an ERISA plan ..... 13

2. The existence of plan documents does not change this conclusion ..... 16

3. This representative action does not seek to enforce the terms of an ERISA plan ..... 17

D. CCS' Suit Does Not Otherwise Arise Under Federal Law ..... 19

IV. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

## CASES

*American Bldgs. Co. v. Varicon, Inc.*,
616 F. Supp. 641 (D. Mass. 1985) ........ 8

*American Policyholders Ins. Co. v. Nyacol Prods.*,
989 F.2d 1256 (1st Cir. 1993) ........ 19

*Andrews-Clarke v. Travelers Ins. Co.*,
984 F. Supp. 49 (D. Mass. 1997) ........ 13

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*,
132 F.3d 824 (1st Cir. 1997) ........ 8, 11, 12

*Bank of the West v. Superior Ct.*,
2 Cal. 4th 1254, 833 P.2d 545 (1992) ........ 7

*Barbara Brawn & Ameriklean, Inc. v. Donald Coleman & Seiu*,
167 F. Supp. 2d 145 (D. Mass. 2001) ........ 9, 12

*Barquis v. Merchants Collection Ass'n*,
7 Cal. 3d 94, 496 P.2d 817 (1972) ........ 6

*Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*,
187 F.3d 1045 (9th Cir. 1999) ........ 15, 16

*Boston Reed Co. v. Pitney Bowes, Inc.*,
2002 U.S. Dist. Lexis 11683 (N.D. Cal. June 20, 2002) ........ 9, 10

*Burns v. Windsor Ins. Co.*,
31 F.3d 1092 (11th Cir. 1994) ........ 8

*California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*,
519 U.S. 316 (1997) ........ 2, 12, 13

*Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*,
215 F.3d 136 (1st Cir. 2000) ........ 2, 13, 14, 15

*Castro v. Providian Nat'l Bank*,
2000 U.S. Dist. Lexis 19062 (N.D. Cal. Dec. 29, 2000) ........ 20

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987) ........ 9, 11

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tele. Co.*,
20 Cal. 4th 163, 973 P.2d 527 (1999) ........ 6

*Ching v. Mitre Corp.*,
921 F.2d 11 (1st Cir. 1990) ........ 8, 9

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997)....................19

*Combined Mgt., Inc. v. Superintendent of the Bureau of Ins.*, 22 F.3d 1 (1st Cir. 1994)....................12, 15

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 673 P.2d 660 (1983)....................7

*Corbett v. Superior Court*, 101 Cal. App. 4th 649, 125 Cal. Rptr. 2d 46 (2002)....................6

*Danca v. Private Health Care Sys.*, 185 F.3d 1 (1st Cir. 1999)....................8, 11, 12

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806 (1997)....................14

*District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125 (1992)....................12, 15

*Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751 (9th Cir. 2001), *cert. denied*, 536 U.S. 958 (2002)....................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)....................10

*Giannetti v. Mahoney*, 218 F. Supp. 2d 8 (D. Mass. 2002)....................8

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)....................18

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 128 Cal. Rptr. 2d 389 (2002)....................6

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000)....................17

*Hotz v. Blue Cross & Blue Shield of Mass.*, 292 F.3d 57 (1st Cir. 2002)....................2, 12

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1980)....................2, 12

*Kingsley v. Lania*, 221 F. Supp. 2d 93 (D. Mass. 2002)....................8

*Klussman v. Cross-Country Bank*, 2002 U.S. Dist. Lexis 9387 (N.D. Cal. May 10, 2002)....................20

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134, 63 P.3d 937 (2003) ........................................................................6

*Kraus v. Trinity Mgmt. Svcs., Inc.*,
23 Cal. 4th 116, 999 P.2d 718 (2000) ....................................................................6, 7

*Lee v. American Nat'l Ins. Co.*,
260 F.3d 997 (9th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002) ...........................2, 7, 10

*Metropolitan Life Ins. Co. v. Massachusetts*,
471 U.S. 724 (1985) .................................................................................................13, 14

*Metropolitan Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) .......................................................................................................11

*Mortera v. North Am. Mortg. Co.*,
172 F. Supp. 2d 1240 (N.D. Cal. 2001) .................................................................2, 7, 10

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) ...............................................................................................3, 13, 14

*Nishi v. Ethicon, Inc.*,
2003 U.S. Dist. Lexis 3101 (N.D. Cal. Feb. 26, 2003) ..................................................7

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
104 Cal. App. 4th 508, 128 Cal. Rptr. 2d 463 (2002) .....................................................6

*In Re Pharm. Indus. Average Wholesale Price Litig.*,
M.D.L. No. 1456, Civil Action No. 01-12257-PBS,
2003 U.S. Dist. Lexis 8279 (D. Mass. May 13, 2003) ...................................................16

*Rosario-Cordero v. Crowley Towing & Transp. Co.*,
46 F.3d 120 (1st Cir. 1995) ......................................................................................12, 15

*Rubin v. Green*,
4 Cal. 4th 1187, 847 P.2d 1044 (1993) ............................................................................6

*Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*,
201 F.3d 1212 (9th Cir. 2000) .......................................................................................12

*Sallen v. Corinthians Licenciamentos LTDA*,
273 F.3d 14 (1st Cir. 2001) ...................................................................................10, 18, 19

*Schwartz v. Visa Int'l Corp.*,
2001 U.S. Dist. Lexis 105 (N.D. Cal. Jan. 8, 2001) ......................................................20

*Shamrock Oil & Gas Corp. v. Sheets*,
313 U.S. 100 (1941) .........................................................................................................8

*Shaw v. Delta Air Lines, Inc.*,

463 U.S. 85 (1983) ........ 12

*State of Montana v. Abott Labs.*,
Nos. 02-12084 - 86 PBS, 03-10069-PBS,
2003 U.S. Dist. Lexis 9890 (D. Mass. June 11, 2003) ........ *passim*

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 10

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
17 Cal. 4th 553, 950 P.2d 1086 (1998) ........ 1, 6, 9

*Terry v. Bayer Corp.*,
145 F.3d 28 (1st Cir. 1998) ........ 17

*The Fair v. Kohler Die & Specialty Co.*,
228 U.S. 22 (1913) ........ 8

*Washington Physicians Serv. Ass'n v. Gregoire*,
147 F.3d 1039 (9th Cir. 1998) ........ 14

*Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*,
223 F. Supp. 2d 346 (D. Mass. 2002) ........ 11

**STATUTES**

28 U.S.C. § 1331 ........ 7, 18

28 U.S.C. § 1441(a)-(b) ........ 7

29 U.S.C. § 1132(a) ........ 2, 12, 17, 18

29 U.S.C. § 1144(a) ........ 14

**UNRECOGNIZED**

Prof. Code § 17200 ........ 1, 5, 6

Prof. Code § 17203 ........ 5, 6

Prof. Code § 17535 ........ 5

Prof. Code § 17204 ........ 5, 6, 9

Plaintiff, Congress of California Seniors ("CCS"), by counsel and pursuant to 28 U.S.C. § 1447(c), hereby files its Memorandum of Law in Support of the foregoing Motion to Remand. For the reasons stated herein, this representative action should be remanded to Los Angeles Superior Court, where it was originally filed.

## I. INTRODUCTION

This case concerns an industry-wide corrupt practice that inflated the cost of prescription drugs to California consumers. This same practice also magnified the cost of Medicare reimbursement paid by federal and state governments, as asserted by other plaintiffs in related actions. Anxious to sweep the scores of consumer and governmental lawsuits filed against them into a single federal forum, defendants have removed all state lawsuits to federal court – and in doing so ignored the striking differences between these suits, some of which, as here, bar federal jurisdiction and compel remand to state court.

First, CCS lacks standing to assert its claims in federal court. As alleged in the Representative Complaint for Violations of the Unfair Competition Law ("Complaint") that it filed in Los Angeles Superior Court on September 24, 2002, Congress of California Seniors v. Abbott Laboratories, et al., Case No. BC 282102, CCS is a nonprofit organization representing over 650,000 senior citizens and their families that reside in the State of California. CCS's members purchase (and have purchased) prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers ("Defendants"). As an unincorporated association, CCS has standing to bring a representative action under California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq. The UCL provides that an action challenging wrongful business conduct may be brought "by any person acting for the interests of itself, its members or the general public." Id., § 17204. See Stop Youth Addiction, Inc. v. Lucky

Stores, Inc., 17 Cal. 4th 553, 950 P.2d 1086, 1090 (1998) (holding that a "person" suing under the UCL does not have to prove that he, she, or it was directly injured by defendants' wrongful business practices).

But, as pled, CSS lacks standing to assert a claim in federal court under the requirements of Article III of the U.S. Constitution. As a "representative" plaintiff suing under Section 17204 of the UCL, CCS does not allege injury-in-fact. This Court therefore does not have subject-matter jurisdiction over CCS' claims against Defendants, and this case should be remanded. *See Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002); *Mortera v. North Am. Mortg. Co.,* 172 F. Supp. 2d 1240, 1243-44 (N.D. Cal. 2001) (collecting cases).

In its representative capacity, and by this representative action, CCS seeks to remedy abuses that the Defendant Drug Manufacturers have inflicted upon residents and entities in the State of California caused by Defendants' scheme to artificially inflate the Average Wholesale Prices ("AWPs") of their drugs upon which prescription-drug reimbursements are based. CCS' claim against Defendants in this representative action is based solely on UCL violations. Defendants nonetheless improvidently removed this action to this Court, claiming that it arises under federal law. It does not, and this case should be remanded to the California state court from where it was removed.

Moreover, federal subject-matter jurisdiction is unavailable under the so-called "artful pleading" doctrine because Defendants cannot establish that ERISA completely preempts CCS' UCL claim. Complete preemption under ERISA is found only where (i) ERISA preempts the plaintiff's cause of action, and (ii) the cause of action falls within the scope of ERISA's

enforcement provision, 29 U.S.C. § 1132(a). *E.g.*, *Hotz v. Blue Cross & Blue Shield of Mass.*, 292 F.3d 57, 59 (1st Cir. 2002). Neither prong of the applicable test may be satisfied here.

First, a state law is preempted only when it "relates to" an ERISA plan, that is, it has a "reference to" or a "connection with" an ERISA plan. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138-39 (1980). The "reference to" variety of preemption clearly does not apply here because it applies only to laws that specifically refer to ERISA plans or make the presence of an ERISA plan necessary to the law's operation (and the UCL does not). *See California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) ("*Dillingham*"). Nor does in "connection with" preemption apply. The UCL is a law of general application that is indifferent to ERISA coverage. *See Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 145 (1st Cir. 2000). In addition, CCS' UCL claim will little impact on any ERISA plan, and thus lacks the requisite connection to ERISA. *See, e.g.*, *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995). Plaintiff's UCL claim simply has no "connection with" any ERISA plan.

ERISA preemption aside, CSS' case also does not generally "arise under" federal law as Defendants claim. First, a significant portion of Plaintiff's Complaint does not even pertain to Medicare reimbursement. Second, as this Court already held, a claim may "arise under" federal law only if that law provides a right of action under that law. *State of Montana v. Abott Labs.*, Nos. 02-12084 – 86 PBS, 03-10069-PBS, 2003 U.S. Dist. Lexis 9890, at *9, 13-17 (D. Mass. June 11, 2003). Neither ERISA nor Medicare offer CCS any claim for relief. CCS' claims hence do not arise under federal law. The Court should remand this action to the California state court from whence it came.

## II. SUMMARY OF PERTINENT FACTS

### A. The Allegations Of CCS' State Court Complaint

As alleged in the Complaint that it filed in the Los Angeles Superior Court on September 24, 2002 ("Complaint, ¶__" or "¶ __"), CCS is a nonprofit organization representing over 650,000 Californian senior citizens and their families. ¶ 13. This is a representative action brought by CCS, pursuant to Section 17204 of the UCL, against Defendants, who comprise most of the nation's largest pharmaceutical companies.

For the last decade, as alleged in the Complaint, Defendants have conspired with others in the distribution chain including, but not limited to, physicians and hospitals ("medical providers" or "providers"), to collect inflated prescription drug payments from consumers. Complaint, ¶ 1. More specifically, CCS alleges that Defendants report to trade publications a drug price – the Average Wholesale Price (or "AWP") – that they deliberately set far above the prices that their drugs are available in the marketplace. The AWPs for these drugs are false and fictitious and created solely to cause consumers to overpay for drugs. Because all drugs administered under Medicare Part B, and brand-name drugs administered outside of the Medicare context, are priced based on the published AWPs, the Complaint alleges that Defendants inflate AWP reimbursement rates to enable providers and others to make secret profits through overcharges to patients and their insurers. In turn, this scheme motivates the providers to sell and administer the drugs with the most inflated AWPs, resulting in increased market share and profit for Defendants and inflated payments for drugs by individual patients and their insurers, through co-pays or direct payments. ¶ 3.

For brand-name drugs administered outside of the Medicare Part B context, most patients and health plans pay based on the inflated AWP with an intermediary (for example, a pharmacy

benefit manager or others) pocketing the "spread" between the AWP and the actual cost that the intermediaries pay for the brand-name drugs. And similar to the benefit that Defendants obtain through the AWP scheme for Part B drugs, Defendants also benefit from the AWP scheme by increasing the sales of their particular brand-name drugs and their market share for that drug. ¶ 5.

**B. The Nature of CCS's California State-Law Claim**

The UCL imposes liability for "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...." Bus. & Prof. Code § 17200. Section 17203 of the UCL, entitled "Remedies and Injunction," expressly authorizes the trial court to award equitable relief (in the form of restitution and disgorgement) ***and*** injunctive relief:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Bus. & Prof. Code § 17203 (emphasis added).[1] Section 17204 of the UCL, which permits injunctive actions, provides:

---

[1] The corresponding remedies provision of the False Advertising Statute, Bus. & Prof. Code § 17500 *et seq.*, states:

> Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any

> Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association ***or by any person acting for the interests of itself, its members or the general public.*** [Bus. & Prof. Code § 17204 (emphasis added).]

Simply stated, the UCL permits "any person acting for the interests of itself, its members or the general public," *id.*, § 17204, to file an action for restitution and/or injunctive relief, *id.*, § 17203, against any person or business entity alleged to be engaged in "unfair competition." *Id.*, § 17200.[2] The UCL's §§ 17203 and 17204 accordingly permit a private plaintiff who has ***suffered no injury*** to file a lawsuit in order to obtain relief for others. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 950 P.2d 1086, 1091 (1998); *accord Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.3d 937, 943 (2003) ("[S]tanding to sue under the UCL is expansive .... Unfair competition actions can be brought by a public prosecutor or 'by any person acting for the interests of itself, its members or the general public'"; quoting §

---

> money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

Bus. & Prof. Code § 17535.

[2] As the California Supreme Court has stated, the UCL was "one of the so-called 'little FTC Acts' of the 1930's, enacted by many states in the wake of amendments to the Federal Trade Commission Act enlarging the commission's regulatory jurisdiction to include unfair business practices that harmed, not merely the interests of business competitors, but of the general public as well." *Rubin v. Green*, 4 Cal. 4th 1187, 847 P.2d 1044, 1052 (1993). The supreme court discussed the ULC legislative history in *Kraus v. Trinity Mgmt. Svcs., Inc.*, 23 Cal. 4th 116, 999 P.2d 718, 727-28 (2000), and summarized by a California court of appeals in *Corbett v. Superior Court*, 101 Cal. App. 4th 649, 125 Cal. Rptr. 2d 46, 55-56 (2002).

17204).[3] In addition to these expansive concepts of standing, "Section 17200 does not require that a plaintiff prove that he or she was directly injured by the unfair practice or that the predicate law provides for a private right of action." *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 128 Cal. Rptr. 2d 389, 392 (2002) (citation omitted).[4] Moreover, a "representative" plaintiff need only show that members of the general public are ***likely*** to be deceived. "Allegations of actual deception, reasonable reliance, and damage are unnecessary." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 673 P.2d 660, 668 (1983); *see also Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 833 P.2d 545, 553 (1992). As the California supreme court repeatedly recognized, sound public policy reasons support the expansive standing principles governing UCL actions: "Class actions and representative UCL actions make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage attorneys to undertake private enforcement actions." *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 999 P.2d 718, 725 (2000).

### C. Defendants' Removal Of This Representative Action

Citing 28 U.S.C. §§ 1331 and 1441(a)-(b), on October 23, 2002, Defendants removed this case from California state court. In support of removal, Defendants assert that CCS' claims arise

[3] The primary purpose of the UCL is "the preservation of fair business competition." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 973 P.2d 527, 539 (1999) (citations omitted). This purpose includes "the right of the public to protection from fraud and [deceit]." *Barquis v. Merchants Collection Ass'n*, 7 Cal. 3d 94, 496 P.2d 817, 829 (1972); *see also People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 128 Cal. Rptr. 2d 463, 469 (2002).

[4] In *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997 (9th Cir. 2001), the plaintiff brought an action in federal court under the UCL, claiming that California law allowed him to challenge an insurance company's allegedly unfair business practices as a "private attorney general" even though he suffered no individualized injury as a result of the insurer's challenged conduct. The Ninth Circuit agreed with the district court that "[even] though the [UCL] requires no ... actual injury to pursue a claim in state court ..., Article III of the [U.S.] Constitution takes priority in federal court over the [UCL's] more liberal standing rules." *Id.* at 999-1000. "So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury." 260 F.3d at 1001-02; *see also Nishi v. Ethicon, Inc.*, 2003 U.S. Dist. Lexis 3101, at *5 (N.D. Cal. Feb. 26, 2003); *Mortera v. North Am. Mortg. Co.*, 172 F. Supp. 2d 1240, 1244 (N.D. Cal. 2001) (remanding UCL representative action to state court).

under federal law because (i) ERISA completely preempts Plaintiff's UCL claim; and (ii) CCS' UCL claim otherwise "arises under" federal law because it "raises a substantial federal question in that it requires the resolution of complex issues of federal law." Notice of Removal, at 11. But as shown below, Defendants are wrong on both counts. Their removal was improvident and, accordingly, this case should be remanded.

## III. ARGUMENT

### A. Defendants Have A Heavy Burden Of Demonstrating That Removal Jurisdiction Exists

Courts strictly construe the removal and jurisdictional statutes against finding jurisdiction and in favor of remand in determining whether they have subject-matter jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Danca v. Private Health Care Sys.*, 185 F.3d 1, 4 (1st Cir. 1999); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Every doubt concerning whether removal was proper should therefore be resolved in favor of remand. *Id.*; *Kingsley v. Lania*, 221 F. Supp. 2d 93, 95 (D. Mass. 2002); *Giannetti v. Mahoney*, 218 F. Supp. 2d 8, 10 (D. Mass. 2002); *American Bldgs. Co. v. Varicon, Inc.*, 616 F. Supp. 641, 643 (D. Mass. 1985). Once CCS files a motion to remand, the Defendants, as the parties invoking federal jurisdiction and seeking removal, have the burden of proving that removal was proper and that this Court has subject-matter jurisdiction. *See, e.g.*, *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997); *Danca*, 185 F.3d at 4; *Giannetti v. Mahoney*, 218 F. Supp. 2d at 10. The burden is a heavy one, *Burns*, 31 F.3d at 1095, which Defendants here cannot sustain.

In deciding whether a suit "arises under" federal law for purposes of removal jurisdiction, the First Circuit adheres to the "well-pleaded complaint rule." *Danca*, 185 F.3d at 4 (citing

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)); *Ching v. Mitre Corp.*, 921 F.2d 11, 14 (1st Cir. 1990). Under this rule, a plaintiff is "master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913); *Danca*, 185 F.3d at 4, and, if the plaintiff can maintain its claim on both state and federal grounds, it may ignore the federal question and assert only a state-law claim and defeat removal, *id.* As the Supreme Court explained:

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.... The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citations omitted); *Ching*, 921 F.2d at 13 (quoting *Caterpillar*). "A defendant thus cannot remove a state-law claim from state to federal court even if his defense is based entirely on federal law." *Caterpillar Inc.*, 482 U.S. at 393; *Barbara Brawn & Ameriklean, Inc. v. Donald Coleman & Seiu*, 167 F. Supp. 2d 145, 149 (D. Mass. 2001).

A plaintiff's claim arises under federal law where the claim asserts federal law on its face or the plaintiff engaged in "artful pleading" to avoid federal questions necessary to the claim. *See Barbara Brawn*, 167 F. Supp. 2d at 149. Neither of these elements exists here. Accordingly, CCS' UCL claim against Defendants does not "arise under" federal law, and the Court has no jurisdiction over this case.

**B. This Court Lacks Subject-Matter Jurisdiction Over CCS' Claims Because CCS, As A Representative Plaintiff Suing Under The UCL, Does Not Allege Standing to Sue in Federal Court Under "Article III"**

CCS, an incorporated association, has standing to bring a representative action in state court under Section 17204 of the UCL, Bus. & Prof. Code § 17204. The UCL provides that an action challenging wrongful business conduct may be brought "by any person acting for the interests of itself, its members or the general public." *Id. See also Stop Youth Addiction*, 17 Cal. Rptr. 2d at 736 (a "person" suing under the UCL does not have to prove that he, she, or it was directly injured by defendants' wrongful business practices). As a "representative" plaintiff suing under Section 17204 of the UCL, however, ***CCS does not allege injury-in-fact sufficient to meet the standing requirements of Article III of the U.S. Constitution***. *See, e.g., Boston Reed Co. v. Pitney Bowes, Inc.*, 2002 U.S. Dist. Lexis 11683, at *21 (N.D. Cal. June 20, 2002) ("[i]t is often the case that one who has standing to sue under the UCL in state court does not enjoy standing in federal court"; citing *Mortera*, 172 F. Supp. 2d at 1244). Article III limits the jurisdiction of the federal courts to "cases and controversies," a restriction that requires a plaintiff to show, inter alia, that he has actually been injured by the defendant's challenged conduct. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 25 (1st Cir. 2001). As the Ninth Circuit held in another UCL claim removed to federal court, this Court hence does not have subject-matter jurisdiction over CCS' claims:

> We agree with the consensus view of the parties and the district court that Lee cannot proceed with his claims against ANTEX in federal court. Lee's action against ANTEX stems from his right under [the UCL] to challenge the company's allegedly unfair business practices as a private attorney general even if he

> suffered no individualized injury as a result of the defendant's challenged conduct. Article III of the Constitution, however, limits the jurisdiction of the federal courts to "cases and controversies," a restriction that has been held to require a plaintiff to show, inter alia, that he has actually been injured by the defendant's challenged conduct. ***So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.*** And Lee cannot, because he did not buy any policy from ANTEX and so did not suffer any injury due to ANTEX's conduct.
>
> Even if Lee has a viable action against ANTEX in state court under the California Unfair Business Practices Act, then, he may not proceed with that cause of action in federal court.

*Lee v. American Nat'l Ins. Co.*, 260 F.3d at 1001-02 (emphasis added; footnote and citations omitted). *Accord Mortera*, 172 F. Supp. 2d at 1243-44 (collecting and analyzing California federal district court decisions remanding UCL cases to state court).

The same result obtains here. CCS brings its UCL claim as a representative and alleges no direct injury by Defendants. Though the claim is viable in state court, CCS lacks standing under Article III to assert this same claim in federal court. This Court thus is without jurisdiction over CCS' UCL claim, which must be remanded.

### C. CCS Has Not Engaged In "Artful Pleading" Because ERISA Does Not Preempt CCS' UCL Claim

Though lack of standing is alone reason to remand CCS' claims, there are other grounds as well. Defendants claim preemption as a defense, which does not itself create federal jurisdiction. *Caterpillar Inc.*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 12); *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 223 F. Supp. 2d 346, 353 n.10 (D. Mass. 2002); *State of Montana v. Abott Labs.*, Nos. 02-12084 – 86 PBS, 03-10069-PBS, 2003 U.S. Dist. Lexis 9890, at *9 (D. Mass. June 11, 2003) (citing *Merrell Dow Pharmaceuticals, Inc. v.*

*Thompson*, 478 U.S. 804, 808 (1986), and *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)). Jurisdiction under the "artful pleading" doctrine is found only in cases of ***complete*** preemption. *BIW Deceived*, 132 F.3d at 832; *see also Caterpillar, Inc.*, 482 U.S. at 393; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Danca*, 185 F.3d at 4. As this Court noted, where a state-law claim includes as a necessary element the violation of a federal statute, for federal-question jurisdiction to result, the federal statute must offer a private remedy for violation of that standard. *State of Montana*, 2003 U.S. Dist. Lexis 9890, at *14-15 (citing *Merrell Dow*; *PCS 2000 LP v. Romulus Telecomms.*, 148 F.3d 32, 25 (1st Cir. 1998); and *Nashoba Communications Ltd. Partnership No. 7 v. Danvers*, 893 F.2d 435, 439 (1st Cir. Mass. 1990)).

Accordingly, to establish complete preemption under ERISA, Defendants must not only demonstrate that ERISA preempts CCS' claim, but also that the claim falls within the scope of ERISA's enforcement provision, 29 U.S.C. § 1132(a). *Hotz v. Blue Cross & Blue Shield of Mass.*, 292 F.3d 57, 59 (1st Cir. 2002); *Danca*, 185 F.3d at 5; *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1215-16 (9th Cir. 2000). In such an instance, the plaintiff is considered to have engaged in "artful pleading" in an effort to avoid federal jurisdiction. The "artful pleading" doctrine thus operates to permit courts to re-characterize a plaintiff's state-law claim as a federal claim. *BIW Deceived*, 132 F.3d at 831-32; *Barbara Brawn*, 167 F. Supp. 2d at 149.

Defendants incorrectly assert that ERISA completely preempts CCS' UCL claim. Defendants assert that, because the number of California residents and California-based entities injured by Defendants' unlawful acts includes some small and unidentified percentage who are employer-funded health plans or individuals covered employer-sponsored health insurance plans, ERISA preempts CCS' UCL claim. Notice of Removal, ¶ 22.

But ERISA preemption is not nearly so broad. ERISA does not preempt a state-law claim where the statute relied on "has a tenuous, remote or peripheral connection with a covered benefit plan." *Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 123 (1st Cir. 1995). This is normally the case with respect to laws of general applicability. *See District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992); *Rosario-Cordero*, 46 F.3d at 123; *Combined Mgt., Inc. v. Superintendent of the Bureau of Ins.*, 22 F.3d 1, 3 (1st Cir. 1994).

**1. This case does not "relate to" an ERISA plan**

Defendants' primary contention is that ERISA preempts CCS' UCL claim because the claim "relates to" an ERISA plan. Notice of Removal, ¶ 22. But a state law "relates to" an ERISA plan only if it has a "reference to" or "connection with" an ERISA plan. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138-39 (1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983); *California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 324 (1997) ("*Dillingham*"); *Andrews-Clarke v. Travelers Ins. Co.*, 984 F. Supp. 49, 57 (D. Mass. 1997). The "reference to" variety of preemption clearly does not apply. "Reference to" preemption applies only to laws that ***specifically refer to*** ERISA plans or ***make the presence of an ERISA plan necessary*** to the law's operation. *Dillingham*, 519 U.S. at 325; *Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 143 (1st Cir. 2000). The UCL, however, operates completely independently of whether there is any ERISA plan at issue.

The UCL claim also lacks the requisite "connection with" any ERISA plan, the other preemption factor under § 1144(a). To determine whether a state law has the requisite "connection," courts look both to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," as well as to the nature of the effect of the state

law on ERISA plans. *Dillingham*, 519 U.S. at 325; *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Importantly, Congress designed ERISA to regulate benefit-plan ***administration***, not ***content***. According to *Dillingham*, ERISA's object and purpose is to deter mismanagement of plan benefits:

> In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator. [519 U.S. at 326-37 (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)).]

ERISA thus "establishes various uniform procedural standards" for employee benefit plans, but "[i]t does not regulate the substantive content of welfare-benefit plans." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985). Courts hence must consider whether the state law at issue requires particular benefit structures and/or imposes administrative burdens on a plan. *Travelers*, 514 U.S. at 658.

The Supreme Court's preemption analysis thus carefully distinguishes between state laws that affect an ERISA ***plan*** and its administration from laws (like the UCL at issue here) that regulate products that a plan might choose to purchase. Laws that regulate only an insurance company, for example, or the way in which it may sell insurance, do not "relate to" benefit plans. *Metropolitan Life*, 471 U.S. at 741.

Moreover, a generally applicable state law that does not specifically target ERISA plans is preempted ***only*** if it produces such acute economic effects "as to ***force*** an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers ...." *Travelers*, 514 U.S. at 668 (emphasis added); *Carpenters Local Union No. 26*, 215 F.3d at 144;

*Washington Physicians Serv. Ass'n v. Gregoire*, 147 F.3d 1039, 1043 (9th Cir. 1998), *cited with approval in Carpenters Local Union No. 26*, 215 F.3d at 144. But state laws that merely have the effect on ERISA plans of higher costs or changing coverage for beneficiaries do not trigger preemption. *See De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 816 & n.16 (1997). *Travelers* thus rejected the argument that "all laws affecting ERISA plans through their impact on insurance policies 'relate to' such plans and are preempted unless expressly saved by the statute." 514 U.S. at 663.

Moreover, the law at issue here – the California UCL – is a law of general applicability with at most a peripheral connection to ERISA plans, and this is not enough to establish complete preemption and, hence, removal jurisdiction. A state law that applies to a wide variety of situations, including an appreciable number that have no specific linkage to ERISA plans, constitutes a law of general application for purposes of 29 U.S.C. § 1144(a). *Carpenters Local Union No. 26*, 215 F.3d at 144-45. The UCL, which broadly applies in numerous different contexts wholly unrelated to ERISA plans, is just such a law. *See District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. at 130 n.1; *Rosario-Cordero*, 46 F.3d at 123; *Combined Mgt., Inc.*, 22 F.3d at 3. Just like the bond statute at issue in *Carpenters Local Union No. 26*, the UCL,

> ranks as a law of general application for ERISA preemption purposes because it applies to a sufficiently broad, sufficiently generalized universe of situations ... without mentioning ERISA and without regard to whether any affected person is (or is not) involved with a covered plan. [*Carpenters Local Union No. 26*, 215 F.3d at 145.]

Rather, the UCL is "indifferent to ... ERISA coverage." *Id.* (quoting *Dillingham*, 519

U.S. at 328). It is properly classified, therefore, as "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute." *Id.* (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 815 (1997)). It hence is not preempted. *Id.* (citing *Travelers*, 514 U.S. at 656).

**2. The existence of plan documents does not change this conclusion**

Defendants urge that CCS' claim "relates to" ERISA because Defendants believe that CCS' suit, if successful, would require an analysis of ERISA plan documents. Notice of Removal, ¶ 23. They do not indicate why that would be necessary. The calculation of restitution to an individual would have nothing to do with the amount or type of insurance coverage an individual might receive or had received under an ERISA plan.

Moreover, the Ninth Circuit has considered and rejected an argument similar to that made by Defendants here. In *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999), four medical providers who participated in the Blue Cross Prudent Buyer Plan sued Blue Cross for violation of California's laws of good faith and fair dealing, seeking to recover fees that Blue Cross was allegedly contracted to pay. Among other arguments in support of preemption, Blue Cross claimed that (i) some subset of the providers' patients were ERISA plan participants, and therefore (ii) determining the amount that the providers were entitled to would require "construction of the terms in ERISA plans." *Id.* at 1050, 1053. The Ninth Circuit disagreed, noting that the medical provider's cause of action was based on a relationship between the providers and Blue Cross, which operated independently of ERISA plans. *Id.* at 1051, 1053. In other words, "[t]he dispute [was] not over the ***right*** to payment, but the ***amount***, or level of

payment," which was determined without reference to an ERISA plan's terms. *Id.* at 1051 (emphasis in original).

This Court likewise rejected a similar argument by the same defendants in a related case – though, unlike here, the plaintiffs asserting state-law claims were health-benefit plans. *See In Re Pharm. Indus. Average Wholesale Price Litig.*, M.D.L. No. 1456, Civil Action No. 01-12257-PBS, 2003 U.S. Dist. Lexis 8279, at *62-63 (D. Mass. May 13, 2003). But ERISA did not preempt the state claims even under those circumstances because "the consumer protection statutes do not have a sufficient 'connection to' the employee benefit plans and do not refer to ERISA plans." *Id.* at *63.

Similarly, in this case the issue is not whether any ERISA plan participant was or is entitled to benefits, but whether the amount any of the affected consumers paid for drugs was excessive as a result of Defendants' unlawful acts. Defendants set the unlawful price of their drugs without reference to an ERISA plan's terms, and did not use any ERISA plan as a tool in their fraud. To the extent that CCS seeks restitution on behalf of ERISA plans or participants, they are simply a few of the many thousands of Defendants' victims who paid inflated drug prices because of Defendants' unlawful acts. The plans and participants are in the same position as any other consumer harmed by Defendants' conduct and are entitled to the same remedy. This case has, at most, a tenuous connection to ERISA. As such, CCS' California UCL claim is not preempted.

### 3. This representative action does not seek to enforce the terms of an ERISA plan

Defendants alternatively contend that Plaintiff is seeking to redress an "act or practice" that may violate the "terms" of an ERISA plan and therefore must bring its cause of action under

29 U.S.C. § 1132(a)(3). Notice of Removal, ¶ 24. CCS is not, however, alleging that Defendants violated any terms of an ERISA plan. CCS alleges that Defendants violated the California UCL by inflating the AWP of their drugs, which increased the price that consumers paid for those drugs. CCS does not claim that Defendants violated the terms of any ERISA plan.

Further, § 1132(a) can completely preempt CCS' claims only if CCS could state those claims under § 1132(a). *See, e.g., State of Montana*, 2003 U.S. Dist. Lexis 9890, at *14. As this Court recognized, the Supreme Court has directed that "where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain." *Id.* (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 (1986), and other authorities). Defendants apparently believe that CCS, if it so chose, could sue them for their unlawful acts under 29 U.S.C. § 1132(a)(3), but CCS could not. Section 1132(a)(3) permits suits at most only against ERISA plans, plan fiduciaries, and non-fiduciaries that assisted or participated in a fiduciary's breach of duties. *See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 249-53 (2000); *Terry v. Bayer Corp.*, 145 F.3d 28, 36 (1st Cir. 1998) ("the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan"); *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 756 (9th Cir. 2001), *cert. denied*, 536 U.S. 958 (2002). Defendants are not, at least for the purposes of this representative action, plans or plan fiduciaries; nor is CCS alleging that Defendants are liable because they assisted a plan fiduciary in the breach of its duties. CCS is suing Defendants for their own acts, which were not conducted in the role of a plan administrator or plan fiduciary. Section 1132(a)(3) does not allow a suit against a non-fiduciary for acts that are completely unrelated to an ERISA plan.

In addition, the Supreme Court has recently made it clear that § 1132(a)(3) does not allow suits to recover monetary damages such as those sought in this case. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-20 (2002). While the statute allows certain actions for "equitable relief," actions for restitution or disgorgement are not included within its scope to the extent they simply seek restitution or disgorgement of a sum of money. *Id.* at 212-15.

If Section 1132(a)(3) preempted CCS' UCL claim, then Defendants would be completely immune from state law, and also immune from ERISA liability, whenever they committed a fraud that included among its victims at least one ERISA plan or ERISA plan participant. They are not immune, however, because § 1132(a)(3) does not provide a cause of action to CCS and therefore does not preempt CCS' UCL claim.

**D. CCS' Suit Does Not Otherwise Arise Under Federal Law**

Defendants claim that CCS' Complaint arises under federal law because "the key issue in Plaintiff's claim is the meaning of AWP under federal regulations governing reimbursement for Medicare Part B drugs." Notice of Removal, at 11. Defendants ignore the fact that a significant portion of CCS' Complaint does not even pertain to Medicare reimbursement. Nonetheless, the portions of CCS' Complaint that do relate to Medicare co-payments hardly "arise under" federal law under the test articulated by the First Circuit.

The federal question jurisdiction statute, 28 U.S.C. § 1331, states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As already established, to determine whether a case arises under federal law, the First Circuit looks at the plaintiff's well-pleaded complaint. *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d at 23; *State of Montana*, 2003 U.S. Dist. Lexis 9890, at *9. Ordinarily, a claim arises under federal law within the meaning of § 1331 if a

federal cause of action appears on the face of a well-pleaded complaint. *E.g.*, *American Policyholders Ins. Co. v. Nyacol Prods.*, 989 F.2d 1256, 1261 (1st Cir. 1993). Absent an explicit federal claim, a federal question can arise where the state-law claims requires resolution of a substantial question of federal law. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997); *State of Montana*, 2003 U.S. Dist. Lexis 9890, at *10.

This Court rejected Defendants' expansive view of "arising under" jurisdiction in *State of Montana* by recognizing that the Supreme Court has directed that "where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute ***must*** provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain." *Id.* at *13-17 (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. at 814, and other authorities; emphasis added). But as already established, ERISA provides no such remedy. Neither does Medicare. As this Court ruled regarding the analogous state-law claims asserted by the State of Minnesota there, defendants here make "no argument that the Medicare statute provides a private right of action for AWP misreporting." *Id.* at *17. Defendants here cannot seriously contend that CCS' UCL claim arises under federal law. Defendants have not even alleged, and clearly cannot establish, that federal law is an essential element of CCS' UCL claim, let alone that any substantial question of federal law is presented. CCS is ***not*** required to prove a violation of ***federal*** law in order to prove that Defendants violated the UCL. Not a single element of the UCL claim is based on federal law. Rather, CCS' complaint attacks Defendants' misrepresentations regarding the pricing of its drugs, which caused California residents to pay excessive prices for Defendants' drugs. Under similar facts and circumstances, California federal district courts have uniformly remanded cases asserting UCL claims. *See, e.g.*, *Klussman v. Cross-Country Bank,* 2002 U.S. Dist. Lexis 9387, at *8-10 (N.D. Cal. May 10, 2002);

*Schwartz v. Visa Int'l Corp.*, 2001 U.S. Dist. Lexis 105, at *6-8 (N.D. Cal. Jan. 8, 2001); *Castro v. Providian Nat'l Bank,* 2000 U.S. Dist. Lexis 19062, at *7-9 (N.D. Cal. Dec. 29, 2000).

And as this Court concluded, "*Merrell Dow* requires a finding that the federal issue is not substantial enough to create federal jurisdiction." *State of Montana*, 2003 U.S. Dist. Lexis 9890, at *17 (citing 478 U.S. at 814). The first court to rule on a motion to remand in a similar case likewise agreed. In *State of Minnesota v. Pharmacia Corp.*, No. 02-1779 (MJD/JGL), Report and Recommendation (D. Minn. Sept. 27, 2002) (the "Report"),[5] in which the State of Minnesota challenges AWP-inflation for certain drugs sold by Pharmacia and covered by Medicare, the magistrate judge held:

> Although Plaintiff's claims may touch on questions of federal law, the central issues in the case, and the rights Plaintiff seeks to protect, are all founded in state law.
>
> In short, the Court finds that a federal question is only presented in the defenses in this case. Plaintiff's claims present straight forward fraud and false advertising claims which can be decided without resort to federal law. Although the federally created Medicare and Medicaid programs provide the factual backdrop for this action, the fact that a federal question "may be lurking in the background," or that the case may touch on issues of federal law, does not give rise to federal jurisdiction.

Exhibit A, at 14. (citations omitted).

Accordingly, CCS' claim does not arise under federal law based on general "arising under" principles.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand should be granted, and this case should be promptly remanded to the Los Angeles Superior Court.

---

[5] A copy of this decision is attached hereto as Exhibit A.

DATED: July 22, 2003

By ______________________

Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO # 567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

***LIAISON COUNSEL***

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Heins, Mills & Olson, P.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

Eugene A. Spector
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

***CHAIRS OF PLAINTIFF LEAD COUNSEL COMMITTEE***

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043

Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
Kenneth A. Wexler & Associates
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF PLAINTIFF CO-LEAD COMMITTEE AND EXECUTIVE COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF PLAINTIFF EXECUTIVE COMMITTEE**

Kevin P. Roddy
700 South Flower Street, Suite 2940
Los Angeles, CA 90017-4101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152