## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | FILED UNDER SEAL |

## AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

2003 JUL 28   A  ↑: 55
U.S. DISTRICT COURT
DISTRICT OF MASS.
FILED IN OFFICE

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................................1

II.   JURISDICTION AND VENUE .............................................................................7

III.  PARTIES ................................................................................................................8

      A.    Plaintiffs .......................................................................................................8

      B.    Defendants ..................................................................................................13

            1.    Abbott ..............................................................................................13

            2.    Amgen..............................................................................................14

            3.    AstraZeneca .....................................................................................14

            4.    The Aventis Group (Aventis, Pharma, Hoechst and Behring)...................15

            5.    Baxter................................................................................................16

            6.    Bayer.................................................................................................17

            7.    The Boehringer Group (Boehringer, Ben Venue, Bedford) ......................18

            8.    Braun.................................................................................................19

            9.    The BMS Group (Oncology Therapeutics; Apothecon)............................19

            10.   Dey, Inc. ...........................................................................................21

            11.   The Fujisawa Group (Fujisawa Healthcare, Fujisawa USA)....................22

            12.   The GSK Group (GlaxoSmithKline, SmithKline Beecham,
                  Glaxo Wellcome)................................................................................22

            13.   Hoffman-LaRoche, Inc. ...................................................................23

            14.   Immunex ...........................................................................................24

            15.   The Johnson & Johnson Group (J&J, Centocor, Janssen,
                  NcNeil, Ortho) .................................................................................25

            16.   Novartis.............................................................................................26

            17.   Pfizer, Inc..........................................................................................26

|      | 18. | The Pharmacia Group (Pharmacia and Pharmacia & Upjohn)..................27 |
|------|-----|----|
|      | 19. | The Schering-Plough Group (Schering Plough & Warrick).....................28 |
|      | 20. | The Sicor Group (Sicor and Gensia)........................................................29 |
|      | 21. | TAP...........................................................................................................30 |
|      | 22. | Watson .....................................................................................................30 |
|      | 23. | Together Rx ..............................................................................................31 |

IV.   GENERAL ALLEGATIONS APPLICABLE TO ALL DEFENDANTS.......................31

   A.   The AWP System...................................................................................................31

   B.   The Defendant Drug Manufacturers Commit AWP Fraud to Increase
        Market Share For Their Drugs Covered by Medicare Part B .................................33

        1.   The Medicare Insurance Program ..............................................................33

        2.   Congressional and Other Federal Investigations and Actions....................37

        3.   Certain of the Defendants Drug Manufacturers' Fraudulent
             Conduct Within the Medicare Part B Program...........................................38

   C.   The Defendant Drug Manufacturers' Use of AWP Fraud to Increase
        and Maintain the Price of Drugs Outside of the Medicare Part B Context............40

   D.   The Defendant Drug Manufacturers' Use of AWP Fraud to Increase
        and Maintain Volume and Market Share For Generic and Multi-Source
        Drugs.....................................................................................................................43

   E.   Defendants' Concealment of the Truth..................................................................49

   F.   Tolling of Applicable Statutes of Limitation .........................................................50

V.    EXAMPLES OF SPECIFIC UNLAWFUL CONDUCT .................................................50

   A.   Abbott ....................................................................................................................50

        1.   Abbott Has Been The Target of Government Investigations.....................52

        2.   Abbott Controls the Published AWP for Its Products ...............................53

        3.   Abbott's AWP Manipulation Benefited Providers at the Expense
             of the Class...............................................................................................53

        4.   Specific Abbott AWPs Documented by the DOJ ......................................54

        5.   Additional Evidence Concerning Vancomycin .........................................55

AMENDED MASTER CONSOLIDATED              - ii -
CLASS ACTION COMPLAINT

|  | 6. | Additional Evidence for Amikacin ............................................................56 |
|  | 7. | Inflated AWPs From Abbott Price Lists....................................................56 |
| B. | | Amgen.............................................................................................................58 |
|  | 1. | Amgen's Definition and Understanding of AWP.......................................59 |
|  | 2. | Amgen Controls the Published AWP for Its Products...............................59 |
|  | 3. | Amgen's AWP Manipulation Benefited Providers at the Expense of the Class................................................................................59 |
|  | 4. | Amgen Provided Free Goods and Other Incentives ...................................60 |
|  | 5. | Amgen Concealed Its AWP Manipulation .................................................61 |
| C. | | AstraZeneca ....................................................................................................62 |
|  | 1. | AstraZeneca Has Been the Target of a Government Investigation............63 |
|  | 2. | AstraZeneca's Definition and Understanding of AWP ..............................63 |
|  | 3. | AstraZeneca Controls the Published AWP for Its Products ......................64 |
|  | 4. | AstraZeneca's AWP Manipulation Benefited Providers at the Expense of the Class................................................................................64 |
| D. | | The Aventis Group (Aventis, Pharma, Hoechst and Behring)...............................70 |
|  | 1. | Aventis Has Been the Target of Government Investigations....................72 |
|  | 2. | Aventis' Definition and Understanding of AWP........................................72 |
|  | 3. | Aventis Controls the Published AWP for Its Products ..............................73 |
|  | 4. | Aventis' AWP Manipulation Benefited Providers at the Expense of the Class...............................................................................73 |
|  | 5. | Specific Aventis AWPs Documented by the DOJ......................................75 |
|  | 6. | Additional Evidence Concerning Anzemet ................................................76 |
|  | 7. | Additional Evidence Concerning Gammar................................................77 |
|  | 8. | Inflated AWPs From Aventis' Price Lists .................................................78 |
|  | 9. | Aventis Concealed its AWP Manipulation ................................................79 |

E.  Baxter ......................................................................................................79

    1.  Baxter Has Been the Target of Government Investigations .....................81

    2.  Baxter's Definition and Understanding of AWP .......................................81

    3.  Baxter Controls the Published AWP for its Products ................................82

    4.  Baxter's AWP Manipulation Benefited Providers at the Expense
        of the Class.........................................................................................82

    5.  Specific Baxter AWPs Documented by the DOJ.......................................83

    6.  Evidence Concerning Gammagard S/D (immune globulin solution)........84

    7.  Inflated AWPs From Baxter's Price Lists .................................................84

    8.  Baxter Provided Free Goods and Other Incentives...................................86

F.  Bayer .......................................................................................................86

    1.  Bayer Has Been the Target of Government Investigations .......................87

    2.  Bayer Controls the Published AWP for Its Products ................................88

    3.  Bayer's AWP Manipulation Benefited Providers at the Expense
        of the Class.........................................................................................88

    4.  Specific Bayer AWPs Documented by the DOJ.......................................89

    5.  Inflated AWPs From Bayer's Price Lists...................................................90

    6.  Bayer Provided Free Goods and Other Incentives....................................90

    7.  Bayer Concealed Its AWP Manipulation...................................................91

G.  The Boehringer Group ............................................................................91

    1.  The Boehringer Group Has Been the Target of Government
        Investigations .....................................................................................92

    2.  The Boehringer Group Controls the Published AWP for Its Products ......92

    3.  Specific Boehringer AWPs Documented by the DOJ ...............................95

    4.  Inflated Boehringer Group AWPs From Bedford's Price Lists.................96

H.  B. Braun ..................................................................................................96

    1.  B. Braun Has Been the Target of Government Investigations...................97

|   | 2. | B. Braun's Understanding of AWP | 97 |
|---|----|---|---|
|   | 3. | B. Braun Controls the Published AWP for Its Products | 98 |
|   | 4. | B. Braun's AWP Manipulation Benefited Providers at the Expense of the Class | 99 |
|   | 5. | Specific B. Braun AWPs Documented by the DOJ | 100 |
|   | 6. | Inflated AWPs From B. Braun Price Lists | 101 |
| I. | | The BMS Group (Bristol-Myers, OTN and Apothecon) | 102 |
|   | 1. | The BMS Group Has Been the Target of Government Investigations | 103 |
|   | 2. | The BMS Group Controls the Published AWP for Its Products | 104 |
|   | 3. | BMS's AWP Manipulation Benefited Providers at the Expense of the Class | 105 |
|   | 4. | Specific BMS AWPs Documented by the DOJ | 105 |
|   | 5. | Other AWPs Related to VEPESID (etoposide) | 106 |
|   | 6. | Other AWPs Related to Blenoxane | 106 |
|   | 7. | The BMS Group Provided Free Goods and Other Incentives | 107 |
| J. | | Dey | 109 |
|   | 1. | Dey Has Been the Target of Government Investigations | 109 |
|   | 2. | Dey Controls the Published AWP for Its Products | 111 |
|   | 3. | Dey's AWP Manipulation Benefited Providers at the Expense of the Class | 112 |
|   | 4. | Specific Dey AWPs Documented by the DOJ | 113 |
|   | 5. | Inflated Dey AWPs From Dey's Price Lists | 113 |
|   | 6. | Dey Provided Free Goods and Other Incentives | 114 |
|   | 7. | Dey Has Concealed Its AWP Manipulation | 115 |
| K. | | The Fujisawa Group (Fujisawa Pharmaceutical, Fujisawa Healthcare, Fujisawa USA) | 115 |
|   | 1. | Fujisawa Has Been the Target of Government Investigations | 117 |

AMENDED MASTER CONSOLIDATED
CLASS ACTION COMPLAINT

1534.16 0046 BSC.DOC

|  | 2. | Fujisawa Controls the Published AWP for Its Products | 117 |
|  | 3. | Fujisawa's AWP Manipulation Benefited Providers at the Expense of the Class | 117 |
|  | 4. | Specific Fujisawa AWPs Documented by the DOJ | 118 |
|  | 5. | Inflated AWPs From Fujisawa Price Lists | 119 |
| L. | | The GSK Group (GlaxoSmithKline, SmithKline Beecham, Glaxo Wellcome) | 121 |
|  | 1. | The GSK Group Has Been the Target of Government Investigations | 123 |
|  | 2. | The GSK Group's Definition and Understanding of AWP | 124 |
|  | 3. | The GSK Group Controls the Published AWP for Its Products | 124 |
|  | 4. | The GSK Group's AWP Manipulation Benefited Providers at the Expense of Plaintiffs and the Class | 125 |
|  | 5. | Glaxo's Zofran® | 126 |
|  | 6. | SKB's Kytril | 131 |
|  | 7. | General Counsel Correspondence Between Glaxo and SKB | 132 |
|  | 8. | Other Improper Incentives | 134 |
|  | 9. | Specific GSK Group AWPs Documented by the DOJ | 135 |
| M. | | Hoffman-LaRoche | 136 |
|  | 1. | Hoffman-LaRoche Controls the Published AWP for Its Products | 136 |
|  | 2. | Inflated Hoffman-LaRoche AWPs From Hoffman LaRoche Price Lists | 137 |
|  | 3. | Hoffman-LaRoche Provided Free Goods and Other Incentives | 137 |
| N. | | Immunex | 137 |
|  | 1. | Immunex Has Been the Target of Government Investigations | 138 |
|  | 2. | Immunex Definition and Understanding of AWP | 138 |
|  | 3. | Immunex Controls the Published AWP for its Products | 138 |
|  | 4. | Immunex's AWP Manipulation Benefited Providers at the Expense of the Class | 139 |

| | | |
|---|---|---|
| 5. | Specific Immunex AWPs Documented by the DOJ | 141 |
| 6. | Inflated AWPs From Immunex Price Lists | 142 |
| 7. | Immunex Concealed Its AWP Manipulation | 142 |

O.     The Johnson & Johnson Group (J&J, Centocor and Ortho) ................................142

      1.       The Johnson & Johnson Group Has Been the Target of
             Government Investigations ........................................................................145

      2.       J&J Concealed Its AWP Manipulation ....................................................147

P.      Novartis .................................................................................................................148

      1.       Novartis Has Been the Target of Government Investigations .................149

      2.       Inflated Novartis AWPs From Novartis Price Lists .................................149

Q.     Pfizer ....................................................................................................................150

R.     The Pharmacia Group (Pharmacia and P&U) ......................................................152

      1.       The Pharmacia Group Has Been the Target of Government
             Investigations ..........................................................................................153

      2.       Pharmacia's Definition and Understanding of AWP ...............................153

      3.       The Pharmacia Group Controls the Published AWP for
             Its Products ...............................................................................................154

      4.       The Pharmacia Group's AWP Manipulation Benefited
             Providers at the Expense of the Class .......................................................154

      5.       Specific Pharmacia AWPs Documented by the DOJ ..............................157

      6.       Inflated Pharmacia AWPs From Pharmacia's Price Lists .......................159

      7.       The Pharmacia Group Provided Free Goods and Other Incentives .........160

S.      The Schering-Plough Group (Schering-Plough and Warrick) .............................161

      1.       The Schering Plough Group Has Been the Target of Government
             Investigations ..........................................................................................163

      2.       The Schering Plough Group Controls the Published AWP for
             Its Products ...............................................................................................164

      3.       The Schering Plough Group's AWP Manipulation Benefited
             Providers at the Expense of the Class .......................................................165

      4.       The DOJ Specifically Documented AWP Inflation for
             Albuterol Sulfate .....................................................................................167

      5.       The Schering Plough Group Provided Free Goods and Other
             Incentives .................................................................................................168

T.    The Sicor Group (Sicor, Gensia and Gensia Sicor) ...........................................168

    1.    The Sicor Group Has Been the Target of Government Investigations ...............................................................................169

    2.    The Sicor Group Controls the Published AWP for Its Products..............169

    3.    The Sicor Group's AWP Manipulation Benefited Providers at the Expense of the Class ...........................................................170

    4.    Specific Sicor Group AWPs Documented by the DOJ.............................172

    5.    Inflated Sicor Group AWPs From the Sicor Group's Price Lists.............172

    6.    The Sicor Group Provided Free Goods and Other Incentives .................173

U.    TAP ...................................................................................................174

    1.    TAP Has Been the Target of Government Investigations .......................174

    2.    TAP Controls the Published AWP for Its Products..................................176

    3.    TAP's AWP Manipulation Benefited Providers at the Expense of the Class.............................................................................176

    4.    TAP Provided Free Goods and Other Incentives....................................176

    5.    TAP Concealed Its AWP Manipulation...................................................178

V.    Warrick .............................................................................................178

W.    Watson ..............................................................................................179

    1.    Watson Has Been the Target of Government Investigations...................180

    2.    Watson's Definition and Understanding of AWP ...................................180

    3.    Watson Controls the Published AWP for Its Products ............................180

    4.    Watson's AWP Manipulation Benefited Providers at the Expense of the Class ...........................................................................181

    5.    Specific Watson AWPs Documented by the DOJ ...................................181

    6.    Inflated Watson AWPs From Watson's Price Lists..................................182

    7.    Watson Provided Free Goods and Other Incentives ...............................183

    8.    Watson Concealed Its AWP Manipulation ..............................................183

VI.    DIRECT DAMAGE SUSTAINED BY PLAINTIFFS AND THE MEMBERS
       OF THE AWP CLASS ............................................................................................183

VII.   CERTAIN DEFENDANTS USE AWP TO ENGAGE IN A SCHEME TO
       FIX PRICES – THE TOGETHER CARD SCHEME .......................................................184

       A.    The Formation of the Together Card Conspiracy ..................................................184

       B.    The Drug Discount Card Response to the Lack of Medicare Drug
             Coverage and the Underpinnings of the Together Card Scheme..........................185

             1.    GSK Orange Card................................................................................186

             2.    Novartis Care Card ...............................................................................188

       C.    Implementation of the Together Rx Card Program ...............................................189

       D.    Marketing of the Together Card Program..............................................................192

       E.    The Together Card Defendants' Conspiracy to Fix the AWP Spread
             of the Together Card Drugs ..................................................................................195

VIII.  CLASS ACTION ALLEGATIONS FOR THE AWP PAYOR SCHEME.....................200

IX.    CLASS ACTION ALLEGATIONS FOR THE TOGETHER CARD SCHEME ...........203

COUNT I  VIOLATIONS OF 18 U.S.C. § 1962(c)  (AGAINST DEFENDANT DRUG
       MANUFACTURERS IDENTIFIED HEREIN FOR UNLAWFUL CONDUCT
       ASSOCIATED WITH  MEDICARE PART B COVERED DRUGS)............................208

COUNT II  VIOLATIONS OF 18 U.S.C. § 1962(c)  (AGAINST DEFENDANT
       DRUG MANUFACTURERS IDENTIFIED HEREIN).................................................239

COUNT III  DECLARATORY AND OTHER RELIEF PURSUANT TO
       28 U.S.C. §§ 2201, 2002..........................................................................................269

COUNT IV  VIOLATIONS OF CONSUMER PROTECTION STATUTES ............................270

COUNT V  CLAIM FOR INJUNCTIVE RELIEF UNDER SECTION 16 OF
       THE CLAYTON ACT ARISING FROM THE TOGETHER CARD
       CONSPIRACY ........................................................................................................272

COUNT VI  CLAIM FOR VIOLATION OF SHERMAN ACT, 15 U.S.C. § 1
       ON BEHALF OF NATIONWIDE END PAYOR TOGETHER CARD CLASS...........273

COUNT VII  CLAIM FOR VIOLATION OF THE ANTITRUST STATUTES OF
       THE INDIRECT PURCHASER STATES ON BEHALF OF INDIRECT
       PURCHASER STATES END PAYOR TOGETHER CARD CLASS............................275

COUNT VIII  VIOLATIONS OF 18 U.S.C. § 1962(c)-(d) (AGAINST THE
     TOGETHER CARD DEFENDANTS FOR UNLAWFUL CONDUCT
     ASSOCIATED WITH TOGETHER RX) ...................................................................279

COUNT IX  CIVIL CONSPIRACY  (AGAINST ALL DEFENDANTS IDENTIFIED
     HEREIN FOR CONSPIRING WITH PBMs) ...............................................................284

COUNT X  CIVIL CONSPIRACY  (AGAINST THE TOGETHER CARD
     DEFENDANTS).........................................................................................................295

X.     PRAYER FOR RELIEF ..................................................................................................296

XI.     DEMAND FOR JURY TRIAL ......................................................................................297

Plaintiffs, by and through their counsel, upon personal knowledge as to their own acts and beliefs, and upon information and belief as to all other matters based upon the investigations of counsel, allege as follows:

## I.   INTRODUCTION

1.      This case is brought by Plaintiffs as a proposed class action on behalf of consumers, self-insured employers, health and welfare plans, health insurers and other end payors for prescription drugs (the "Class") against certain pharmaceutical companies (referred to as the "Defendant Drug Manufacturers").

2.      For the last decade, the Defendant Drug Manufacturers have conspired with others in the pharmaceutical distribution chain, including but not limited to physicians and hospitals (hereafter "medical providers" or "providers"), pharmacy benefit managers ("PBMs") and various publishing entities, to collect inflated prescription drug payments from Plaintiffs and the Class.

3.      More specifically, the Defendant Drug Manufacturers report to trade publications a drug price – the Average Wholesale Price (or "AWP") – that for many drugs is deliberately set far above the prices that these drugs are available in the marketplace. The AWPs for these drugs are deliberately false and fictitious and created solely to cause Plaintiffs and the Class members to overpay for drugs. Because all drugs administered under Medicare Part B are priced based on the published AWPs, the Defendant Drug Manufacturers inflate AWP reimbursement rates to enable providers and others to make secret profits through overcharges to patients, their insurers and other end payors. This, in turn, motivates the providers to sell and administer the drugs with the most inflated AWPs, resulting in increased market share and profit for the Defendant Drug Manufacturers and inflated payments for drugs by individual patients (through co-pays or direct payments), health plans and insurers.

4.      For drugs reimbursed by Medicare Part B (which generally, but not always, require administration in a provider's office), the health care providers administer the drugs and are reimbursed by Medicare based on the inflated AWP. Thus, the providers benefit by pocketing the "spread" between the AWP and the actual cost that they pay for the drugs, and the Defendant Drug Manufacturers benefit by increasing the sales of their drugs that are covered by Medicare Part B ("Covered Drugs") and by increasing their market share. In some cases, the Defendant Drug Manufacturers also provide chargebacks, rebates, hidden price discounts and/or other unlawful financial inducements, including free samples, to further increase the provider's spread and, therefore, their incentive to prescribe a particular Defendant Drug Manufacturer's product. Those discounts are not used by the Defendant Drug Manufacturers in calculating the published AWPs, resulting in their inflation.

5.      The use of AWP is not limited to Medicare reimbursement. Rather, AWP is a benchmark from which hundreds of drug prices are derived in transactions throughout the pharmaceutical distribution chain. For "Part B covered drugs" administered outside of the Medicare Part B context, non-Medicare patients and health plans pay for these drugs based on the inflated AWP with an intermediary (for example, a pharmacy benefit manager) pocketing the "spread" between the AWP and the actual cost that the intermediaries pay for these drugs. And similar to the benefit that the Defendant Drug Manufacturers obtain through the AWP scheme for Part B drugs, the Defendant Drug Manufacturers also benefit from the AWP scheme with respect to these drugs by increasing the sales of their particular AWP-inflated drugs and their market share for those drugs. The use of AWP as a benchmark for reimbursement is also not limited to Part B drugs being administered outside of Medicare, but extends to other drugs as well. And again, with respect to these non-Part B drugs, it is the end payor, be it a health plan or private insurer, that pays the inflated amount. All others in the distribution chain, be they

wholesalers, pharmacies or pharmacy benefit manufacturers, benefit from the spread between AWP and actual costs.

6.     Thus, in a perversion of the type of competitive behavior expected in a market not subject to illegal manipulation, the Defendant Drug Manufacturers often promote their drugs not based on lower prices, but by the use of reimbursement rates based on a fictitious and inflated AWP that allows purchasers and intermediaries (including providers and PBMs) to make inflated profits – and the Defendant Drug Manufacturers to increase their market share – at the expense of Plaintiffs and the Class. The Class, as further defined below, consists of all purchasers of drugs whose AWPs were inflated ("AWP End Payor Class").

7.     The Defendant Drug Manufacturers also caution providers and other intermediaries that the success of the high profit scheme will be jeopardized if anyone discloses the significantly lower prices actually paid for the drugs (allowing the scheme to be concealed and to continue). All Defendants actively conceal, and caused others to conceal, information about the true pricing structure for the prescription drugs, including the fact that the AWPs for the drugs are deliberately overstated. And, all those in the distribution chain also conceal the rebates, free samples, educational grants and other economic rewards which they receive, but which are not reflected in calculating AWP.

8.     The harm flowing from the misuse of the AWP does not stop with the aforementioned scheme. As detailed herein, in a new section of the Complaint, certain of the Defendants used these AWPs for an additional purpose, as part of a scheme and unlawful agreement to fix the AWP spread of drug prices under the guise of offering seniors a discount on their drugs. Thus, in new sections of the Complaint, plaintiffs charge certain pharmaceutical manufacturers with price fixing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and in violation of applicable state antitrust and consumer protection laws. These certain defendant manufacturers (identified below as the "Together Card Defendants") participate in the "Together

AMENDED MASTER CONSOLIDATED           - 3 -
CLASS ACTION COMPLAINT

1534.16 0046 BSC.DOC

Rx Card Program" ("Together Rx"), a drug discount card program commenced in 2002 that ostensibly makes available a single drug discount card to elderly poor Americans to enable them to obtain substantial discounts for approximately 170 brand name and generic drugs.

9.     In fact, the Together Card Defendants have not offered *bona fide* discounts off of *bona fide* prices, but instead used the Together Rx Card Program to raise, fix and maintain the end payor reimbursement rates, costs and margins for scores of their popular drugs. The Together Card Defendants conspired and agreed to restrain trade both by agreeing to increase the AWP for scores of drugs that were part of the Together Rx Card Program, and by increasing the related "spread," between the AWP and the posted wholesale acquisition cost or "WAC" for those drugs.

10.     The Together Card Defendants have caused widespread damage. As to about one-half million Together Rx Card enrollees, the Together Card Defendants gave with one hand but secretly took with another, duping them with the belief that they were receiving real discounts off real prices when in fact they had agreed to raise their AWPs prior to commencement of the Together Rx Card Program. Thus the actual prices paid by these consumers is higher than what they would have paid but for this conspiracy. As to the broader public of prescription drug end payors (such as self-insured employers, health plans and consumers who reimburse or pay for their drugs based upon the average wholesale price), and who were purchasing drugs covered by the Together Rx Card outside of that program, by agreeing to raise AWPs, the Together Card Defendants caused hundreds of millions of dollars of unlawfully imposed expenditures.

11.     In response to the Court's Order on the motion to dismiss, plaintiffs have prepared a list of each of the specific drugs that are the subject of the claims herein. This list is attached as Exhibit A to the Complaint. The drugs identified in Exhibit A will be referred to herein as the AWP Inflated Drugs ("AWPID" or "AWPIDs"). And, in Appendix A, plaintiffs identify the

AMENDED MASTER CONSOLIDATED          - 4 -
CLASS ACTION COMPLAINT

1534.16 0046 BSC.DOC

AWP that is the subject of this Complaint for each drug currently at issue pursuant to this Court's Order. Appendix B details which AWPIDs were purchased by each plaintiff.

12.     Count I of the Complaint is asserted on behalf of a class of all persons or entities who purchased or were reimbursed for an AWPID during the class period ("the AWP Payor Class") and asserts claims under 18 U.S.C. § 1962(c) for violating RICO. In this Count, plaintiffs claim that the Defendant Drug Manufacturers engaged in an illegal pattern of racketeering wherein each manufacturer formed a separate association-in-fact enterprise with each of the companies that published their inflated AWPs, and that each manufacturer conducted the affairs of each such enterprise. *Infra* at 208.

13.     In Count II of the Complaint, plaintiffs on behalf of the AWP End Payor Class assert claims under 18 U.S.C. § 1962(c) against the Defendant Drug Manufacturers alleging that they engaged in a pattern of racketeering via each manufacturer's separate association-in-fact enterprise with each of the four major pharmacy benefit manufacturers ("PBMs"), and that each manufacturer conducted the affairs of its PBM enterprises. *Infra* at 239.

14.     Count III is asserted by the AWP End Payor Class and seeks declaratory relief declaring the AWP practices described herein to be illegal. *Infra* at 269.

15.     Count IV is brought by the AWP End Payor Class on behalf of consumers alleging that the AWP inflation scheme violates the consumer protection laws of various states. *Infra* at 267.

16.     Count V is brought on behalf of a Nationwide End Payor Together Card Class (further defined below) and seeks declaratory and injunctive relief under Section 16 of the Clayton Act. Count V seeks, among other things, a judgment: (i) adjudicating and declaring that the Together Card Defendants have violated Section 1 of the Sherman Act by unlawfully raising and maintaining the applicable reimbursement price, or average wholesale price, in relation to the wholesale acquisition cost to create an increased "spread," (ii) enjoining the Together Card

Defendants from failing to reverse the increased rates and spread margins imposed by them during the conspiracy period, (iii) enjoining them from failing to disclose fully and accurately the true Together Rx Card discounts available to Together Rx Card enrollees; and (iv) otherwise requiring the Together Card Defendants to cease and desist from further violations of the applicable laws. *Infra* at 272.

17.     Count VI is brought by the Nationwide End Payor Together Card Class pursuant to Section 1 of the Sherman Act, and seeks damages for the artificial inflation in the AWP of Together Card Drugs as a result of the Together Card Defendants restraint of trade. *Infra* at 273.

18.     Count VII is brought by the Indirect Purchaser States End Payor Together Card Class for payors in states that have "indirect purchaser statutes," and is brought as an alternative count to Count V, on behalf of those who paid inflated prices for Together Card Drugs whose prices were artificially inflated as a result of the Together Card Defendants restraint of trade. *Infra* at 275.

19.     Count VIII is brought by the Nationwide End Payor Together Card Class under RICO, alleging that the Together Card Defendants conducted the affairs of an enterprise they created and controlled, Together Rx, LLC, through a pattern of racketeering. The effect of this conduct was to injure all those who purchased drugs that were part of the Together Rx Card program. *Infra* at 279.

20.     Count IX is brought by the AWP End Payor Class against various Defendant Drug Manufacturers for engaging in a series of separate civil conspiracies with each of the pharmacy benefit manufacturers to artificially inflate AWPs. *Infra* at 284.

21.     Count X is brought by the Nationwide End Payor Together Card Class asserting a civil conspiracy claim against the Together Card Defendants. *Infra* at 295.

## II.    JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, 18 U.S.C. § 1964(c), and because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. This Court also has subject matter jurisdiction under 15 U.S.C. § 1. The Court also has diversity jurisdiction on Counts IX and X pursuant to 28 U.S.C. § 1332(a) as there is diversity between plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund and each Defendant, and the amount in controversy exceeds $75,000. Those claims are asserted only on behalf of this plaintiff as the named plaintiff.

23.    The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. To the extent necessary, the District Court should retain jurisdiction over all parties pursuant to 28 U.S.C. § 1367 as the claims against all parties are related to the claims upon which original jurisdiction is based.

24.    A substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial District, and Defendants may be found within this judicial District. Venue is proper in this jurisdiction under 28 U.S.C. § 1391 and 18 U.S.C. § 1965. Defendants implemented their fraudulent marketing scheme in this District, as well as nationwide, through providers and sales representatives who reside or transact business in this District and thereby affected Class Members, who similarly reside or transact business in this District.

25.    The Judicial Panel on Multidistrict Litigation has, by Order dated April 30, 2002, ordered all related cases in the *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL Docket Number 1456, transferred to the District of Massachusetts for coordinated or consolidated pre-trial proceedings.

### III.   PARTIES

#### A.   Plaintiffs

26.   Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund ("CMHV") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), and as defined by §§ 1002(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for the purpose of providing health benefits to eligible participants and beneficiaries.  As such, CMHV is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d).  CMHV maintains its principal place of business at 9555 West Sam Houston Parkway South, Suite 400, Houston, Texas.  During the Class Period, Carpenters Welfare Trust Fund has been billed for and paid charges for Covered Drugs and otherwise made payments for drugs outside of the Medicare Part B context based on published AWPs.  These drugs are identified in Appendix B.

27.   Plaintiff Teamsters Health & Welfare Fund of Philadelphia and Vicinity ("THWF") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to §§ 1002(1) and (3) of ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries.  As such, THWF is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d).  THWF maintains its principal place of business at Fourth & Cherry Streets, Philadelphia, Pennsylvania 19106.  It provides comprehensive health coverage for over 28,000 participants and beneficiaries in parts of Pennsylvania, New Jersey and Delaware.  During the Class Period, THWF has been billed for and paid charges for AWPIDs.  THWF also made payments for drugs outside of the Medicare Part B context based on published AWPs.  All drugs covered by this Complaint purchased by this plaintiff are identified in Appendix B.

28.    Plaintiff Twin Cities Bakery Workers Health and Welfare Fund ("TCBW") is a jointly administered Taft-Hartley Fund established and maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries. TCBW maintains its principal place of business in Eagan, Minnesota. As such, TCBW is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d). TCBW provides health benefits, including prescription drug benefits, to approximately 2000 active participants, and their spouses and dependants. During the Class Period, TCBW has been billed for and paid charges for AWPIDs. TCBW also made payments for drugs outside of the Medicare Part B context based on published AWPs. The drugs purchased by TCBW at issue in this litigation are identified in Appendix B.

29.    Plaintiff United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW") is an employee welfare benefit plan and employee benefit plan maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries. UFCW maintains its principal place of business in Cook County, Illinois. During the Class Period, UFCW has been billed for and paid charges for AWPIDs, including: Abbott's sodium chloride, gentamicin sulfate, furosemide, heparin lock flush and dextrose; Baxter's sodium chloride and dextrose; Bedford's leucovorin calcium; Sicor's leucovorin calcium; Pharmacia's methylprednisolone sodium; Braun's sodium chloride; Aventis' Furosemide; Immunex' leucovorin calcium and Johnson & Johnson's Remicade. UFCW also made payments for drugs outside of the Medicare Part B context based on published AWPs. All of UFCW drugs that are at issue in the Complaint are identified in Appendix B.

30.    Plaintiff Philadelphia Federation of Teachers Health and Welfare Fund ("PFTHW") is a voluntary employee benefits plan organized pursuant to § 501(c) of the Internal

Revenue Code for the purpose of providing health benefits to eligible participants and beneficiaries. PFTHW maintains its principal place of business in Philadelphia, Pennsylvania. PFTHW provides health benefits, including prescription drug benefits, to approximately 20,000 active participants, and their spouses and dependents. During the class period, PFTHW has been billed for and paid charges for covered drugs and otherwise made payments for drugs outside of the Medicare Part B context based on published AWPs. These drugs are identified in Appendix B.

      31.    Plaintiff Man-U Service Contract Trust Fund ("Man-U Service Fund") is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and is an employee benefit plan established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, for the purpose of providing health benefits, including prescription drug coverage, to eligible participants and beneficiaries. The Man-U Service Fund maintains its principal place of business at 4600 Powder Mill Road, Suite 100, Beltsville, Maryland 20705. The Manu-U Service Fund provides comprehensive health coverage, including prescription drug coverage, for approximately 1,200 participants and beneficiaries located in Maryland, Delaware, Virginia, North Carolina, Pennsylvania and Washington, D.C. All of Man-U Service Fund's drugs at issue in the Complaint are identified in Appendix B.

      32.    Plaintiff Vermont Public Interest Research Group ("VPIRG") has been Vermont's leading watchdog and advocacy group since 1972. It is located at 141 Main Street, Ste. 6, Montpelier, Vermont. During the Class Period, VPIRG's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers and made inflated payments or co-payments based in whole or in part on published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Elizabeth Ryan Cole of Thetford, Vermont, an active VPIRG member, purchased the Johnson & Johnson Group's drug

AMENDED MASTER CONSOLIDATED        - 10 -
CLASS ACTION COMPLAINT

Retin-A based in whole or in part upon the published AWP and Ms. Dawn Taylor of Hinesburg, Vermont, an active VPIRG member, purchased BMS's drug Plavix in whole or in part based upon Defendants' published AWP. As an unincorporated association, VPIRG has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). VPIRG appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, §16 of the Clayton Act and any other applicable statute.

33. Plaintiff Wisconsin Citizen Action ("WCA") is the state's premiere public interest organization with 53,000 individual members and 250 affiliate organizations. It is located at 1202 Williamson St., Suite B, Madison, Wisconsin. During the Class Period, Plaintiff's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers and made inflated payments or co-payments based in whole or in part upon the published AWP, and were injured by the illegal conduct alleged herein. For example, Ms. Ida Johnson of Oconomowoc, Wisconsin, and active WCA member, purchased Pfizer's drug Lipitor in whole or in part based upon Defendants' published AWP. As an unincorporated association, WCA has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). WCA appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, §16 of the Clayton Act and any other applicable statute.

34. Plaintiff New York StateWide Senior Action Council ("StateWide") is a grassroots membership organization made up of individual senior citizens and senior citizen clubs from all parts of New York State. It is located at 275 State Street, Albany, New York. During the Class Period, StateWide's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments based in whole or in part upon published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Mary Jane Snyder of Clifton Park, New York, an

active StateWide member, purchased AstraZenaca's drugs Prilosec and Nexium, Boehringer's
drug Atrovent, BMS's drug Tequin, Novartis' drug Starlix and Schering's drugs Clarinex and K-
Dur based in whole or in part on Defendants' published AWPs. As an unincorporated
association, StateWide has standing to pursue this action under Fed. R. Civ. P. 17(b)(1).
StateWide appears in this action for purposes of seeking declaratory, injunctive and other non-
monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, § 16 of the Clayton Act and any other
applicable statute.

35.     Plaintiff Citizen Action of New York ("CANY") is a coalition of labor, senior
citizen, women's, student, tenant and community organizations that works with community
activists for social and economic justice. It is located at 94 Central Avenue, Albany, New York.
During the Class Period, CANY's members purchased prescription pharmaceuticals
manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments
or co-payments therefore based in whole or in part on published AWPs, and were injured by the
illegal conduct alleged herein. For example, Ms. Marilyn Gourley of Binghamton, New York,
an active CANY member, purchased Pfizer's drug Zoloft based in whole or in part upon
Defendants' published AWPs. As an unincorporated association, CANY has standing to pursue
this action under Fed. R. Civ. P. 17(b)(1). CANY appears in this action for purposes of seeking
declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, § 16
of the Clayton Act and any other applicable statute.

36.     Plaintiff Citizens for Consumer Justice ("CCJ") is a Pennsylvania nonprofit
umbrella organization that promotes affordable, quality health care. It is located at Architects
Building, 117 South 17th Street, Suite 311, Philadelphia, Pennsylvania. During the Class Period,
CCJ's members purchased prescription pharmaceuticals manufactured and/or distributed by the
Defendant Drug Manufacturers, made inflated payments or copayments based in whole or in part
on published AWPs, and were injured by the illegal conduct alleged herein. For example,

AMENDED MASTER CONSOLIDATED                    - 12 -
CLASS ACTION COMPLAINT

1534.16 0046 BSC.DOC

Ms. Patricia Pudyk of Aliquippa, Pennsylvania, an active CCJ member, purchased AZ's drug Nexium in whole or in part based upon Defendants' published AWP. As an unincorporated association, CCJ has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). CCJ appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, § 16 of the Clayton Act and any other applicable statute.

**B.      Defendants**

37.      The acts charged in this Complaint as having been done by the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of the Defendants' business or affairs.

38.      Various other individuals, partnerships, sole proprietors, business entities, companies and corporations, presently unknown to Plaintiffs and not named as Defendants in this Complaint, participated as co-conspirators in the violations alleged in this Complaint and performed acts and made statements in furtherance thereof. Such unknown persons or entities acted as co-conspirators and aided, abetted or participated with Defendants in the commission of the wrongful acts alleged in this Complaint.

**1.      Abbott**

39.      Defendant Abbott Laboratories ("Abbott") is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois. Abbott is a diversified health care company that discovers, develops, manufactures, and markets health care products and pharmaceuticals. Abbott's principal businesses are global pharmaceuticals, nutritionals, and medical products. Abbott reported revenues for the year 2000 of approximately $13.7 billion and net earnings of $2.8 billion.

40.      Abbott, one of the world's largest pharmaceutical companies, is in the business of manufacturing prescription medications for clinical distribution by Medicare Plan B providers nationwide. The drugs manufactured by Abbott and covered by Medicare Part B include, but

AMENDED MASTER CONSOLIDATED               - 13 -
CLASS ACTION COMPLAINT

1534.16 0046 BSC.DOC