**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** ) ) ) ) ) ) ) | **MDL NO. 1456**<br><br>**CIVIL ACTION: 01-CV-12257-PBS**<br><br>**Judge Patti B. Saris** |

**THIS DOCUMENT RELATES TO**
**ALL ACTIONS**

**REMAINING DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**ENTRY OF PROPOSED CASE MANAGEMENT ORDER NO. 7**

Pursuant to the Court's direction at the Status Conference of June 18, 2003, Remaining Defendants[1] submit this Memorandum in Support of their Proposed Case Management Order No. 7.  A copy of the Proposed Order is attached hereto at Tab 1.

### I. OVERVIEW OF THE DEFENDANTS' PROPOSED ORDER

Defendants' Proposed Order provides a commonsense framework for managing discovery, premised on the Court's earlier rulings and instructions, until the Court decides Defendants' Motions to Dismiss the Amended Master Consolidated Complaint (AMCC).  Key points of the Proposed Order include:

> Phasing discovery by focusing on "pending non-dismissed claims" surviving from the Master Consolidated Complaint (MCC) and which have been continued in the AMCC;
>
> Phasing discovery by limiting third party discovery to matters relevant to general aspects of Plaintiffs' claims and Defendants' defenses -- including matters relevant to the anticipated Motion for Class Certification -- and deferring product-specific discovery; and

---

[1]   This memorandum is submitted on behalf of those Defendants not dismissed from the Master Consolidated Complaint (MCC) explicitly or by operation of the rulings made by the Court in connection with Defendants' Motions to Dismiss.

1

Requiring Plaintiffs' anticipated Motion for Class Certification to be filed within six months of the Court's decision on the Motions to Dismiss.

Defendants' Proposed Order also clarifies "housekeeping" issues pertaining to discovery and motion practice.

Plaintiffs have objected to Defendants' proposal in two respects. Notwithstanding the Court's decision on Defendants' Motions to Dismiss (*In re Pharmaceutical Indus. Average Wholesale Price Litg.*, No. 1456, CIV.A. 01-12257-PBS, -- F. Supp. 2d --, 2003 WL 21108371 (D. Mass. May 13, 2003) (the "May 13th Order"), and the advice provided at the June 18, 2003 Status Conference, Plaintiffs maintain they are free to conduct discovery of Defendants based on their marketing of multiple-source drugs, and are also free to conduct discovery relating to drugs which no Plaintiff is alleged to have purchased.

Plaintiffs also reject the proposed sequencing of briefing and expert discovery associated with their anticipated Motion for Class Certification set forth in the Proposed Order. They favor pre-motion disclosure by Defendants of their experts and potentially simultaneous adjudication of the Motions to Dismiss the AMCC and the Motion for Class Certification based upon it. Defendants believe that such a process would lead to a confusing procedural morass in which certification issues would be subject to litigation before the parties knew what claims, if any, remain in the case against which Defendants. Plaintiffs' proposal thus would risk great prejudice to Defendants and is not consistent with the Federal Rules of Civil Procedure.

## II. THE SCOPE OF DISCOVERY

In the May 13th Order, the Court held that Plaintiffs must "clearly and concisely allege, with respect to each defendant: (1) the specific drug or drugs that were purchased from the defendant, (2) the allegedly fraudulent AWP for each drug, and (3) the name of the specific plaintiff(s) that purchased the drug." (May 13th Order at 45). The Court in the same Order held

that claims premised on the sale of multiple-source drugs failed since "multiple source drugs do not fit the paradigm described in the complaint." (*Id.* at 20, n. 11). Following dismissal of claims not conforming to the standards set out by the Court, the May 13th Order concluded with the instruction that discovery on those "pending non-dismissed claims" which survived the Court's analysis could proceed. (*Id.* at 47). On June 18th, the Court specifically stayed discovery on "new" claims appearing in the massive AMCC pending decision on Motions to Dismiss that pleading.

Defendants' Proposed Order is intended to incorporate these and other instructions from the Court into a workable Case Management Order. Defendants understand that the Court has indicated discovery should be pursued while Motions to Dismiss the AMCC are being drafted and considered, but that such discovery should be conducted in a logical, efficient and meaningful way. Defendants' Proposed Order accomplishes this task by phasing both opposing party and third party discovery in a way that allows minimum duplicative effort and maximum coordination.

Under Defendants' proposal, opposing party discovery is limited during the pendency of the Motions to Dismiss the AMCC as follows:

> 1.    Consistent with the Court's prior Order on the Motions to Dismiss the MCC and directions given the parties during the June 18, 2003 status conference, the Court will allow phased discovery by Plaintiffs against Defendants on those claims which survived the Motions to Dismiss and which Plaintiffs continue to pursue. Accordingly, unless otherwise agreed by the parties, the Court will permit discovery by Plaintiffs premised on non-dismissed claims set forth against a Defendant named in the MCC and which have been repleaded against that same Defendant in the AMCC. In order to be subject to discovery pursuant to this paragraph, a non-dismissed claim must relate to non-multiple source drugs which: a) were identified in the Defendant-specific allegations of the MCC (pp. 44-85); *and* b) were identified in the Defendant-specific allegations of the AMCC (pp. 50-183); *and* c) which were described as having been purchased by a specific Plaintiff in Appendix B to the AMCC.

> . . .

3

4.    Discovery shall not be permitted by Plaintiffs at this time as to: a) Defendants specifically dismissed by name from the Master Consolidated Complaint (MCC); b) multiple-source drugs; or c) any other claims specifically dismissed from the MCC.

(Proposed Order, at II.B.1 and 4.)

Plaintiffs' objections to this proposal ignore the Court's May 13th Order and the instructions given the parties on discovery. Plaintiffs apparently do not believe the Court was serious about enforcing either the standards for claim viability set out in the May 13th Order, or the decision to stay discovery on new matters raised in the AMCC. In response to objections by Defendants to discovery requests reaching well beyond the claims surviving from the MCC, Plaintiffs blithely state that "we believe that plaintiffs can convince Judge Saris that we have solved in the AMCC the technical plaintiff arguments that some of you have raised in objecting to discovery." July 3, 2003 correspondence from S. Berman to "All Counsel," attached at Tab 2. The "technical plaintiff arguments" to which counsel referred were, in fact, the underlying predicate for the Court's finding in the May 13th Order that the MCC failed to state a viable claim against Defendants; specifically, the failure to allege a fraudulent AWP and a purchase of the drug involved by a viable plaintiff. Plaintiffs' counsel went on to say that "[w]e also believe that [Judge Saris] will quickly see that we have explained our theory of multi-source drugs and generics so that she can readily conclude that there are claims involving these drugs that can and should go forward." *Id.*

In both statements, counsel seeks to have Defendants assume that Plaintiffs' positions on standing and multiple-source drug claims will prevail when the AMCC is tested by the Motions to Dismiss. This is an advocacy position, however; it is not the law of the case. Plaintiffs' position seeks to assume away these substantive issues which will be briefed in depth by Defendants in their Motions to Dismiss the AMCC. Should the Court alter its prior rulings on

4

these issues in adjudicating those Motions, the current limits on discovery, presumably, will change. Until that time, however, the May 13th Order precludes discovery on claims found to be lacking in the MCC, and concerning drugs no Plaintiff alleges it purchased.

Defendants' Proposed Order also seeks to phase third party discovery, by focusing on non-product specific issues. Defendants propose that such discovery be limited to general issues which will inform the record about such matters as the nature of the distribution system for prescription drugs, the pricing structure, the development and use of the AWP concept and the competitive environment in which the Defendants and others involved in the chain of distribution function. This limitation is proposed as a matter of practicality and convenience for the third parties involved. Given the current dispute between the parties concerning which Defendants, drugs and claims remain in the case, any discovery done of third parties should be undertaken so as to minimize unnecessarily burdensome demands which may be made of those parties. If product-specific discovery is propounded to third parties at this time, it will likely place the third parties involved in the middle of contentious disputes as to what Defendants, claims and drug products are currently involved in the litigation. Moreover, if full-scale product specific discovery is propounded at this time and Defendants or drugs are later eliminated from this case, these third parties would have been subjected to unnecessarily burdensome demands. Once the contours of this litigation are resolved, coordinated, product-specific discovery can be pursued against third parties to the extent necessary.

## III. TIMING OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendants' Proposed Order sets forth a prompt, specific and orderly sequence for briefing, expert disclosure and expert discovery in connection with Plaintiffs' anticipated Motion for Class Certification. This proposed sequencing begins with the Court's decision on the

pending Motions to Dismiss, and provides that their Motion for Class Certification, together with initial expert disclosures, should be filed within six months thereafter.

Plaintiffs argue that the parties should be briefing the class certification question before the Court decides whether their third attempt to state a viable claim has succeeded. *See*, June 26, 2003 correspondence from S. Berman to defense counsel, p. 2, attached at Tab 3. They also want the Court to require disclosure of defense experts even before Plaintiffs file their Motion. Plaintiffs also suggest that those Defendants previously dismissed nevertheless be forced to participate in discovery or risk being summarily pushed into class certification proceedings "already in progress" when the Court rules on the Motions to Dismiss. The motivation for Plaintiffs' positions is apparent; the logic and supporting precedent, however, are notably absent.

Defendants who have been dismissed from the MCC should not be forced to give up that hard won relief merely because Plaintiffs are in a hurry to put pressure on other parties. Should the Court decide that Plaintiffs' revamped AMCC can proceed to discovery, it would be odd indeed if meaningful discovery opportunities to test that Complaint were foreclosed because the class certification motion was already submitted. Similarly, Plaintiffs' demand that Defendants' potential experts be disclosed before they file their Motion turns accepted case management and proof burdens upside down. Defendants' obligation to come forward with experts is responsive; if Plaintiffs fail to mount a legitimate case, Defendants can elect not to use an expert. The notion that Plaintiffs should be given an opportunity to screen the defense experts before drafting their Motion is overreaching at best.

Defendants' proposal is also consistent with the revisions to Rule 23 of the Federal Rules of Civil Procedure which the Supreme Court transmitted to Congress on March

6

27, 2003, and which will take effect on December 1, 2003 (unless altered by Congress, which is not anticipated). Specifically, the current requirement in Rule 23(c) that a court determine whether to certify a class "as soon as practicable after commencement of an action" is replaced by requiring class determination "at an early practicable date." The Advisory Committee Notes explain that the current language "neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision." The Notes go on to point out the "[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification . . . ." This is one of several "considerations that may affect the timing of the certification decision."

Plaintiffs will argue that their proposal serves the goal of expediency. But even that is not correct. Their proposal would raise the risk that class discovery would be incomplete or would have to be redone to accommodate added parties or claims. It makes no sense to proceed with such discovery while so many parties are unsure of their status and the scope of the claims remain unresolved. Instead, sound MDL practice requires the Court to sequence and coordinate discovery and motion practice so that the parties' and the Court's resources are allocated appropriately. If discovery becomes more onerous and complicated because it was conducted in piecemeal fashion, effective coordination is lacking. Coordination is also absent where parties who have proved they are entitled to dismissal as a matter of law are nevertheless required to defend complex litigation. And, where Defendants must disclose their experts to Plaintiffs before a valid Complaint against them has been lodged, not only coordination, but common sense, has been lost. Defendants urge the Court to continue its efforts to phase discovery and motion practice, and to coordinate motion practice in a rational and orderly way.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants ask that the Court enter their Proposed Case Management Order No. 7, and for such other and further relief as the Court believe Defendants are entitled.

Respectfully submitted,

ON BEHALF OF THE REMAINING DEFENDANTS

By: _Juliet S. B_____          July 31, 2003

Nicholas C. Theodorou, Esq. (BBO # 496730)
Juliet S. Sorensen, Esq. (BBO # 647255)
**FOLEY HOAG, LLP**
155 Seaport Boulevard
Boston, MA 02210

D. Scott Wise, Esq. (admitted *pro hac vice*)
Kimberley Harris, Esq. (admitted *pro hac vice*)
**DAVIS POLK & WARDWELL**
450 Lexington Avenue
New York, NY 10017

Attorneys for AstraZeneca Pharmaceuticals L.P.

## CERTIFICATE OF SERVICE

I certify that on July 31, 2003, a true and correct copy of the foregoing was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting a notification to all parties.

Juliet S. Sorensen

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )  MDL NO. 1456 ) )  CIVIL ACTION: 01-CV-12257-PBS ) )  Judge Patti B. Saris ) ) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) |

## CASE MANAGEMENT ORDER NO. 7

To promote efficiency and judicial economy, IT IS HEREBY ORDERED:

I. **BRIEFING AND DISPOSITION OF MOTIONS TO DISMISS THE AMENDED MASTER CONSOLIDATED COMPLAINT**

Consistent with the Court's directions to the parties during the June 18, 2003 status conference:

A.  Defendants named in the Amended Master Consolidated Complaint (AMCC) shall file their Motions to Dismiss the AMCC by August 1, 2003.

B.  Defendants may file one 40-page consolidated brief in support of their Motion to Dismiss the AMCC, and a separate 20-page consolidated brief in support of their Motion to Dismiss the Together Rx claims raised therein.  Individual briefs submitted by Defendants in addition to the foregoing shall not exceed five pages per Defendant.

C.  Plaintiffs' brief(s) in opposition to Defendants' Motions to Dismiss shall be filed by September 15, 2003, and shall not exceed a total of 80 pages.

D.  Defendants' reply pleadings in further support of their Motions to Dismiss shall be filed by September 30, 2003.  The consolidated reply briefs of Defendants shall not exceed a

1

total of 30 pages, and individual reply briefs submitted by Defendants shall not exceed three pages per Defendant.

E.    Plaintiffs' sur-reply briefs shall be due by October 15, 2003, and shall not exceed a total of 45 pages.

F.    The Court will conduct a hearing on the Motions to Dismiss on November 12, 2003 at 3:00 p.m.

G.    The briefing and hearing schedule set forth above shall not disturb such schedules and case management orders as may be entered by the Court involving matters other than the AMCC transferred to MDL 1456 by the Judicial Panel on Multidistrict Litigation.

## II.    ALLOWED DISCOVERY PENDING DECISION ON MOTIONS TO DISMISS

### A.    GENERAL

1.    This Case Management Order shall govern discovery conducted in MDL 1456 pending decision by the Court on all Motions for dispositive relief filed on or after July 18, 2003. The Court anticipates that the parties will pursue appropriate discovery during the pendency of these motions, subject to the limitations set forth herein.

2.    Unless specified otherwise herein, discovery shall be in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. The parties shall use their best efforts to coordinate the scheduling and completion of the discovery allowed by the Court pursuant to this Order. Counsel are expected to cooperate with, and be courteous to, each other and to third parties involved in discovery

### B.    DISCOVERY BY PLAINTIFFS OF DEFENDANTS

1.    Consistent with the Court's prior Order on the Motions to Dismiss the MCC and directions given the parties during the June 18, 2003 status conference, the Court will

allow phased discovery by Plaintiffs against Defendants on those claims which survived the Motions to Dismiss and which Plaintiffs continue to pursue. Accordingly, unless otherwise agreed by the parties, the Court will permit discovery by Plaintiffs premised on claims set forth against a Defendant named in the MCC and which have been repleaded against that same Defendant in the AMCC concerning non-multiple source drugs which: a) were identified in the Defendant-specific allegations of the MCC (pp. 44-85); *and* b) were identified in the Defendant-specific allegations of the AMCC (pp. 50-183); *and* c) which were described as having been purchased by a specific Plaintiff in Appendix B to the AMCC.

2.     Discovery by Plaintiffs of Defendants as set forth above shall be further limited to document production pursuant to Fed. R. Civ. P. 34, and to testimony taken pursuant to Fed. R. Civ. P. 30(b)(6) intended to assist in identifying additional documents and information sources. The Court anticipates that additional limitations or protocols will be necessary to appropriately phase discovery authorized under paragraph II.B.1, herein, based on the unique factual scenarios presented by each of the various Defendants involved in such discovery. Such additional limitations and protocols shall be promptly negotiated directly by Plaintiffs and such individual Defendants consistent with prior instructions given by the Court to the parties.

3.     Discovery requests served by Plaintiffs on Defendants prior to the entry of this Case Management Order shall be deemed amended by this Order to incorporate the substantive limitations set forth above. The parties shall promptly meet and confer regarding issues raised by specific requests, as well as specific production and deposition schedules. No document production or 30(b)(6) deposition undertaken pursuant to this Case Management Order shall be construed as, or understood to be, a waiver of or limitation on any objections any

Defendant may have to discovery requests propounded by Plaintiffs. The parties shall agree on a timetable for Defendants to make written responses to discovery served on them by Plaintiffs.

4.     Discovery shall not be permitted by Plaintiffs at this time as to: a) Defendants specifically dismissed by name from the Master Consolidated Complaint (MCC); b) multiple-source drugs; or c) any other claims specifically dismissed from the MCC.

C.     **DISCOVERY BY DEFENDANTS OF PLAINTIFFS**

1.     The Court will allow those Defendants subject to discovery by Plaintiffs pursuant to paragraph II.B.1. of this Case Management Order to pursue discovery against Plaintiffs consistent with the Court's prior Order on the Motions to Dismiss the MCC and directions given the parties during the June 18, 2003 status conference.

2.     The parties shall promptly meet and confer regarding issues raised by specific requests directed to Plaintiffs, and specific production and deposition schedules. No document production or 30(b)(6) deposition undertaken pursuant to this Case Management Order shall be construed as, or understood to be, a waiver of or limitation on any objections any Plaintiff may have to discovery requests propounded by Defendants. The parties shall agree on a timetable for Plaintiffs to make written responses to discovery served on them by Defendants.

D.     **THIRD PARTY DISCOVERY**

1.     Consistent with the phased approach to discovery outlined above, the Court will allow the parties to pursue third party discovery relevant to the claims surviving from the MCC and repleaded in the AMCC, as well as defenses thereto. Third party discovery taken pursuant to this Case Management Order shall, to the extent practicable, be focused on matters of general relevance to the various lawsuits currently pending within MDL 1456; third party discovery on product-specific issues shall be stayed pending resolution of the Motions to

4

Dismiss.  The Court shall further limit third party discovery to the production of documents pending its decision on the Motions to Dismiss.

## III.   GENERAL DISCOVERY RULES

### A.   DEPOSITION SCHEDULE

1.     The Court's objective is to avoid duplicative depositions of any person or party and to avoid disputes about deposition logistics. Absent a written agreement by the parties to the contrary, or for good cause shown, the parties will not be permitted to re-depose a witness or party previously deposed in MDL 1456 except to the extent that the witness or party was produced for a limited purpose or on a limited basis, including witnesses noticed for jurisdictional purposes only.  No witness will be considered to have been produced for a limited purpose absent the parties' written agreement to that effect.

2.     Liaison Counsel for the parties shall attempt to establish by mutual agreement a schedule for depositions that reflects a sequencing consistent with the objective of avoiding the need to subject any person to repeated depositions.  Plaintiff Liaison Counsel shall be responsible for providing notice of any deposition of a defense witness in these proceedings to counsel for all Plaintiffs in all actions transferred to MDL 1456, and shall be responsible for keeping all Plaintiffs' counsel fully apprised of the scheduling of any depositions in these proceedings.

### B.   LOCATION OF DEPOSITIONS

1.     The parties shall cooperate in good faith to hold depositions at times and locations convenient to the witnesses. Absent a written agreement by the parties, or Order of this Court for good cause shown, Plaintiffs, current and former employees of any Plaintiff or Defendant, or any other witness, shall be made available for deposition, at the witness's

discretion, in either: (a) Chicago, Illinois; (b) Boston, Massachusetts; (c) New York, New York; (d) within 25 miles of the City where the witness resides; or (e) within 25 miles of the City where the witness currently works. The party noticing the deposition shall make arrangements for and shall advise all parties of the facilities where the deposition will be hosted.

C.    **ATTENDANCE**

1.    Unless otherwise ordered under Fed. R. Civ. P. 26(c), depositions may be attended by counsel of record in this MDL, members and employees of their firms, in-house counsel employed by Defendants, experts or consultants, and counsel for the deponent; provided, however, that no person otherwise authorized to attend will be permitted to do so in the absence of his or her prior agreement to be bound by the Protective Order of Confidentiality previously entered by the Court in MDL 1456.

2.    Each party wishing to attend a scheduled deposition shall so advise Liaison Counsel for the parties of: (a) the number of people to attend from each identified law firm at least three (3) full business days before the deposition; and (b) the names of attending counsel at least one (1) full business day before the deposition.

D.    **CONDUCT OF DEPOSITIONS**

1.    Counsel for all parties are encouraged to limit the number of questioners per side in any deposition and to designate questioners to represent their interests. Counsel for the parties shall coordinate to avoid duplication of questions. Questioners shall divide their time by agreement, asking the Court to resolve any disputes in that regard sufficiently in advance of the deposition and only where absolutely necessary. Failure to resolve such issues in advance of the deposition will not be grounds for exceeding the allotted time limit or otherwise continuing the deposition.

2.     No counsel shall object to any question posed during a deposition on the basis that questioning counsel is not admitted to practice in the relevant jurisdiction, provided the questioning counsel, or the firm of which he or she is a part, has made an appearance of record in MDL 1456, or in any case which has been transferred to MDL 1456.

3.     If agreed in writing, a supplemental deposition shall be treated as the resumption of the deposition originally noticed.  Examination in any supplemental deposition shall not be repetitive of any prior interrogation.

E.     **STENOGRAPHIC RECORDING**

1.     A certified court reporter shall stenographically record all deposition proceedings and testimony.  The court reporter shall administer the oath or affirmation to the deponent. The parties shall agree in writing in advance of the deposition on the qualifications of the court reporter to administer oaths.  A written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) (submission to the witness) and 30(f) (filing, exhibits).  Deponents shall retain their rights to read, change, and sign the deposition transcripts in accordance with Fed. R. Civ. P. 30(e).

F.     **VIDEOTAPING**

A party may record a deposition by videotape pursuant to Fed. R. Civ. P. 30(b)(2) and (3). The party's intention to record the deposition by videotape must be indicated in the written notice of the deposition. The following rules shall apply to the taking of any such deposition:

1.     **Simultaneous Stenographic Recording**

All videotaped depositions shall be simultaneously stenographically recorded.

### 2.   Cost of the Deposition

The party requesting videotaping of the deposition shall bear the expense of the videotaping. Copies of the videotapes can be purchased by any party at its own expense, subject to the terms of the Protective Order.

### 3.   Videotape Operator

The operator(s) of the videotape recording equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c). At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

### 4.   Identification

Each witness, attorney, and other person attending the deposition shall be identified on camera at the commencement of the deposition. Thereafter, only the deponent (and demonstrative materials used during the deposition) will be videotaped.

### 5.   Interruptions

No attorney shall interrupt a deposition to direct instructions to the video operator as to the method of operating the equipment. The video camera operation will be suspended during the deposition only upon stipulation by counsel and during "off the record" discussions. The video operator shall record on camera the time of suspension and any subsequent reconvening of the deposition.

### 6.   Standards

The deposition will be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral

setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition.  Sound levels will be altered only as necessary to record the voices of counsel and the deponent.  Counsel for the deponent and other attending counsel may consult with the video operator to ensure that these standards have been met.

    7.    **Service**

        After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic court reporter, and serve a true copy of the videotape, the transcript, and certificate to the party noticing the deposition.  All restrictions imposed by applicable protective orders (e.g., limiting access to certain discovery materials, such as deposition transcripts, to counsel) shall also apply to videotapes of depositions.  No part of a videotaped deposition shall be released or made available to the public unless authorized by the Court.

    8.    **Use in Litigation**

        No depositions taken pursuant to the provisions of this Case Management Order shall be deemed unusable against parties who may be added after the effective date of this Order solely on the basis of their becoming parties in MDL 1456 at such later date.

## IV.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

    A.    Should the Court overrule any part of Defendants' Motions to Dismiss the AMCC, the parties shall submit, within 21 days of such decision, a revised Case Management Order governing the remaining discovery to be completed in anticipation of the Court's consideration of Plaintiffs' Motion for Class Certification.

B.      Plaintiffs shall file their Motion for Class Certification on the surviving claims, if any, within 180 days following the Court's decision on the Motions.  Plaintiff's Motion for Class Certification shall, if supported by the testimony of witnesses proferred as experts, be accompanied by: (1) full expert disclosures for each such proffered expert pursuant to F. R. Civ. P. 26(a)(2); and, (2) by dates during the following 45 days on which each such proffered expert is available for deposition by Defendants.

C.      Defendants shall file their opposition to the Motion for Class Certification within 90 days following Plaintiffs' service of their Motion and expert disclosures.  Defendants' opposition shall, if supported by the testimony of witnesses proffered as experts, be accompanied by: (1) full expert disclosures for each such proffered expert pursuant to F. R. Civ. P. 26(a)(2); and, (2) by dates during the following 45 days on which each such proffered expert is available for deposition by Plaintiffs.

D.      Plaintiffs shall file any reply pleadings in further support of their Motion within 60 days following Defendants' service of their opposition to the Motion.  Plaintiffs' reply pleadings shall not include additional testimony of witnesses proffered as experts unless responding to new matter raised by the Defendants' opposition.

E.      Defendants' shall file any sur-reply pleadings in further support of their opposition to plaintiffs' Motion within 45 days following Plaintiffs' service of their reply pleadings.  Defendants' sur-reply pleadings shall not include additional testimony of witnesses proffered as experts unless responding to new matter raised by plaintiffs' reply pleadings.

F.      Any *Daubert* challenges the parties wish to raise shall be heard as soon as the Court's docket permits.

Done this _____ day of July, 2003.

                              _____

                              PATTI B. SARIS
                              United States District Court Judge





BOSTON   LOS ANGELES   PHOENIX   SEATTLE

hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

July 3, 2003

*__Via Verilaw__*

All Counsel

      Re:   <u>In re: Pharmaceutical Industry Average Wholesale Price Litigation</u>
               MDL No. 1456

Dear Counsel:

      We have had many discussions with various defendants regarding the proper scope of discovery and we appreciate those of you who seemed willing to forge a resolution of the scope of discovery. Many of you agreed that there was ambiguity or technical arguments as to why your client might not be subject to discovery, but nonetheless were willing to try to seek a middle ground. Those who did so seemed to acknowledge, in our view, that Judge Saris wants discovery to move forward. Others are taking a more strident position that they are not subject to any discovery at this stage.

      After a week of discussions with some, but not all defendants, we have heard enough to believe we have heard all of the arguments that can be made regarding who is subject to discovery and who is not.

      We will ask in our proposed CMO, and by way of motion, for the judge to order discovery to proceed against all defendants who received discovery requests.

      As we have stated in our global conference call and in our discussions with some of you, we believe that plaintiffs can convince Judge Saris that we have solved in the AMCC the technical plaintiff arguments that some of you have raised in objecting to discovery. We also believe that she will quickly see that we have explained our theory of multi-source drugs and generics so that she can readily conclude that there are claims involving these drugs that can and should go forward. And on multi-source drugs, at pages 6-7 of her order, she identifies such drugs in setting forth the practices at issue in



July 3, 2003
Page 2

this case and, which provide the basis as to which the court sustains various counts of the MCC. We believe that when we point this out to her, she will see that discovery should proceed on such drugs. Further, there is strong First Circuit case law, that allows in these circumstances discovery in aid of a complaint or response to anticipated motions. *See, e.g., New England Data Servs. Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987); *Ahmed v. Rosenblatt*, 118 F.3d 886, 889-90 (1st Cir. 1997).

Based on our discussions, we offer the following narrowing of the scope of our requests:

1.      The AWPIDs that define the current scope of party and third party discovery, unless agreed otherwise on a defendant by defendant basis, shall be any AWPIDS identified in the defendant specific sections of the MCC and AMCC, pages 44-85 and 50-183, and which are drugs also listed in Appendix A. In these sections of the MCC and AMCC, we set forth specific examples of AWP manipulation and we believe Judge Saris intended for discovery to go forward on these claims where there has been such specification. Objections as to plaintiff identification issues will be waived just for this purpose without prejudice to your arguments on a motion to dismiss.

2.      Relevant documents reflecting company wide policy that are responsive to the RFP's will be produced.

3.      All documents produced pursuant to any government investigation, as defined in the RFPs, shall be produced.

4.      30(b)(6) depositions shall go forward on the AWPIDs identified above.

5.      Meet and confers on specific requests for productions within the scope set forth above will still be conducted and the time of productions can be negotiated.

6.      Documents that are produced will not be redacted to delete the names of other AWPIDs not subject to this discovery.

7.      For defendants objecting to any discovery, we will not require a written response to discovery requests until the court rules. For other defendants, we will discuss the timing of such responses.

For those defendants who we have been having productive discussions with, we intend to continue those discussions and no motions will be directed toward these defendants and our CMO proposal will address any such agreements. For those of you who take the position that you are not subject to discovery, we respectfully disagree and we do not see the need for additional letter-writing or meet and confers. We cannot, of

July 3, 2003
Page 3



course, stop letter-writing.  We will cooperate in conducting further meet and confers.
My partner, Tom Sobol, will take over the point position for plaintiffs next week.

Sincerely,

Steve W. Berman

SWB:dls





E-SERVED
06/26/03
03:57 PM ET
MDL No. 1456

BOSTON   LOS ANGELES   PHOENIX   SEATTLE

hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

June 26, 2003

**VIA VERILAW**

Defense Counsel

Re:   Pharmaceutical Industry Average Wholesale Price Litigation
      MDL No. 1456

Dear Counsel:

At the conclusion of our call, you asked that we circulate our initial scheduling proposal. Set forth below is an outline of what we proposed today. Let us explain two concepts that underlie our proposal.

It is our belief, and we may be proven wrong, and some of you disagree, that the Court wants us to move forward with discovery, and not just third-party discovery.

We also do not believe we should await rulings on the motions to dismiss before planning class certification and putting ourselves in a position to be able to present the class issue to the Court shortly after rulings on the motions to dismiss. Set forth below is our outline:

1.   Who Is Subject to Discovery

All defendants who received discovery requests shall notify plaintiffs of their position on whether they are subject to discovery at this point in the case by the close of business tomorrow. We want to know who is taking a flat-out position that they are not subject to discovery. As to Abbott, Braun, Dey, Aventis, Baxter and Fujisawa, it appears these defendants are firmly in the position they are not subject to discovery and the matter appears ripe for resolution. If there are others in this category please let us know. Other defendants have indicated a desire to discuss this topic further, and as indicated in our earlier letter, we are willing to do so.



June 26, 2003
Page 2

   2.   Document Production

   *Phase 1.* There are certain documents that should be capable of being gathered easily and produced quickly. Defendants shall identify these categories by Request for Production number by July 25 and begin production by August 1. We can discuss further timing issues on the completion date for production of these documents.

   *Phase 2.* These are documents that defendants believe may take more time to produce and with respect to their production there are scope issues that you believe need to be negotiated. These will be identified by July 25 by category in a written response to Requests for Production and meet and confers will be completed by August 25, with production to begin on September 1 with completion by November 1.

   3.   Plaintiffs

   You asked if we would agree to discovery directed to the named plaintiffs. The answer is yes.

   4.   30(b)(6) Depositions

   Shall proceed to be scheduled. We believe they will assist us in more meaningful meet and confers on document productions.

   5.   Third-Party Discovery

   Documents only until January 1, 2004.

   6.   Depositions

   The parties will work on cooperatively scheduling depositions once notices are issued.

   7.   Class Certification

   Any fact discovery the parties feel they need on this issue should be done by December 1. The identity of any experts to be used on the motion shall be disclosed by December 1. Additional disclosures of experts, January 1, 2004. Expert opinions shall be disclosed by plaintiffs by January 1, 2004. February 15, 2004, defendants disclosure. Motion due on March 1, 2004. Opposition, May 1. Reply, June 1.



June 26, 2003
Page 3

We look forward to a constructive response.

Sincerely,

Steve W. Berman

SWB:tw