UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------- x
                           :

In Re: PHARMACEUTICAL INDUSTRY   :   **MDL NO. 1456**
**AVERAGE WHOLESALE PRICE**       :
**LITIGATION**                        :   **Master File No. 01-CV-12257-PBS**
                           :

**THIS DOCUMENT RELATES TO**    :   **Judge Patti B. Saris**
**ALL CLASS ACTIONS**                 :
---------------------------------- x

**CONSOLIDATED MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED
MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT OF THE CASE ..........................................................3
    A.  The Court's May 13, 2003 Memorandum
       and Order .........................................................................3
    B.  Amended Master Consolidated Class Action
       Complaint...........................................................................4

ARGUMENT ...................................................................................6
  I.  PLAINTIFFS' ATTEMPT TO EXPAND THIS CASE
     TO COVER HUNDREDS OF DRUGS FAILS TO
     SATISFY THE REQUIREMENTS OF RULE 9(B) .................6
    A.  The PBM Allegations Are
       Plainly Deficient ...............................................................7
    B.  Plaintiffs Fail to Allege a "Fraudulent
       AWP" for the Vast Majority of the
       Drugs Named in the AMCC ................................................8
    C.  The Allegations Pertaining To "Other"
       Alleged "Hidden and Improper Inducements"
       Are Also Devoid of Any Particulars................................10
 II.  PLAINTIFFS' RICO CLAIMS SHOULD BE
     DISMISSED.....................................................................10
    A.  Plaintiffs Do Not Allege a Viable RICO
       Enterprise ......................................................................12
       1.  The Manufacturer-Publisher Enterprises
          Are Deficient Because Plaintiffs Have
          Failed To Plead Facts Showing That They
          Constitute Ongoing Organizations Whose
          Members Function As Continuing Units
          And Share Common Purposes ...................................14
       2.  The Manufacturer-PBM Enterprises Are
          Deficient Because Plaintiffs Have Failed
          To Plead Facts Showing That They
          Constitute Ongoing Organizations Whose
          Members Function As Continuing Units
          And Share Common Purposes ...................................17
    B.  Plaintiffs Have Failed to Plead Facts Or
       Participation Showing That Defendants
       Conducted The Affairs Of The Alleged
       Enterprises.....................................................................19
    C.  Plaintiffs Lack Standing To Assert Their
       RICO Claims Because They Cannot Show
       That Defendants Directly Caused Their
       Alleged Injuries..............................................................20

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR
CIVIL CONSPIRACY ...........................................................................23
    A.  Plaintiffs' Conspiracy Claims Fail To Satisfy
the Pleading Requirements of Rule 9(b)........................................24
    B.  Plaintiffs Fail to Allege a Concerted Action
Civil Conspiracy .........................................................................26
    C.  Plaintiffs Fail to Allege a
Coercive Conspiracy ....................................................................27
    D.  Plaintiffs' Conspiracy Claims are Duplicative
of Their Other Claims ..................................................................28
IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER
THE STATE CONSUMER FRAUD STATUTES .....................................29
    A.  Plaintiffs Cannot Show That Defendants Directly
Caused Them to Pay Higher Prices ...............................................29
    B.  Plaintiffs Cannot Demonstrate That Defendants' Conduct
Was "Deceptive" or "Misleading"................................................31
    C.  Plaintiffs' Claims Falls Outside the Scope of
Certain of the State Consumer Protection Laws .............................33
        1.  Standing ...............................................................................33
        2.  Reliance................................................................................35
        3.  No Consumer-Oriented Conduct .............................................35
V. ALL CLAIMS RELATING TO MULTIPLE-SOURCE
DRUGS SHOULD AGAIN BE DISMISSED ..........................................36
    A.  Medicare Part B Claims Should be Dismissed as
to Multiple-Source Drugs .............................................................36
    B.  Plaintiffs' Conspiracy Allegation is Insufficient .............................37
    C.  The Non-Medicare Allegations Regarding
Multiple-Source Drugs Likewise Should be
Dismissed....................................................................................38

CONCLUSION..................................................................................................39

## TABLE OF AUTHORITIES

### Cases

**Page**

*ARC Networks, Inc. v. Gold Phone Card Co.*,
756 A.2d 636 (N.J. Super. Ct. Law Div. 2000) ...............................................32

*Aetna Cas. Sur. Co. v. P & B Autobody*,
43 F.3d 1546 (1st Cir. 1994)..........................................................................26, 27

*American Buying Ins. Servs., Inc. v.
S. Kornreich & Sons, Inc.*, 944 F. Supp. 240
(S.D.N.Y. 1996)...............................................................................................14

*Arrandt v. Steiner Corp.*, No. 00 C 2317,
2001 WL 893807 (N.D. Ill. Aug. 6, 2001) ....................................................19, 20

*Association of Wash. Pub. Hosp. Dists.
v. Philip Morris, Inc.*, 241 F.3d 696 (9th Cir. 2001)......................................29

*Barr Labs., Inc. v. Quantum Pharmics, Inc.*,
827 F. Supp. 111 (E.D.N.Y. 1993) ................................................................21

*Bartlett v. Schmidt*, 33 S.W.3d 35
(Tex. Ct. App. 2000)........................................................................................31

*Blewett v. Abbott Labs.*, 938 P.2d 842
(Wash. Ct. App. 1997).....................................................................................34

*Blue Cross of Cal. v. SmithKline Beecham
Clinical Labs, Inc.*, 62 F. Supp. 2d 544
(D. Conn. 1998) ...............................................................................................16

*Bowdoin Constr. Corp. v. Rhode Island Hosp.
Trust Nat'l Bank, N.A.*, 869 F. Supp. 1004
(D. Mass. 1994), *aff'd, sub nom., Schultz v.
Rhode Island Hosp. Trust Nat'l Bank, N.A.*,
94 F.3d 721(1st Cir. 1996)...............................................................................10, 11

*Brooks v. Bank of Boulder*,
891 F. Supp. 1469 (D. Colo. 1995)................................................................13

**Page**

*Carmelio v. American Fed'n*, 137 F.3d 666
(1st Cir. 1998) ................................................................................................21

*Cashman Equip. Corp. v. Acadian Shipyard, Inc.*,
Civ. A. No. 01-2411 Section "J" (4),
2002 U.S. Dist. LEXIS 12243 (E.D. La. June 28, 2002),
*aff'd*, No. 02-30798, 2003 U.S. App. LEXIS 8927
(5th Cir. Apr. 11, 2003) ............................................................................33

*Center Cadillac, Inc. v. Bank Leumi Trust Co.*,
808 F. Supp. 213 (S.D.N.Y. 1992) ........................................................8, 10

*Chicken Unlimited, Inc. v. Bockover*, 374 So. 2d 96
(Fla. Dist. Ct. App. 1979) ...........................................................................30

*City Check Cashing, Inc. v. Nat'l State Bank*,
582 A.2d 8094 (N.J. Super. Ct. 1990) ......................................................34

*Cox v. Sears, Roebuck & Co.*,
647 A.2d 454 (N.J. 1994) ...........................................................................32

*Daaleman v. Elizabethtown Gas Co.*,
390 A.2d 566 (N.J. 1978)........................................................................31,32

*Davis v. Powertel, Inc.*, 776 So. 2d 971
(Fla. Dist. Ct. App. 2000) ...........................................................................32

*Debbs v. Chrysler Corp.*, 810 A.2d 137
(Pa. Super. Ct. 2002)....................................................................................35

*Desiano v. Warner-Lambert Co.*, 326 F.3d 339
(2nd Cir. 2003).............................................................................................34

*Divot Golf Corp. v. Citizens Bank of Mass.*,
No. Civ. A. 02-CV-10654-PBS, 2002 WL 31741472
(D. Mass. Nov. 26, 2002)..........................................................................11

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995)......................................................................32

*Doyle v. Hasbro, Inc.*, 103 F.3d 186 (1st Cir. 1996) ...............................26, 38

*Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12
(1st Cir. 2000) ...............................................................................................9

iv

**Page**

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460
(D.N.J. 1998)..............................................................................21

*Farlow v. Peat, Marwick, Mitchell & Co.*,
956 F.2d 982 (10th Cir. 1992) ....................................................11

*Federal Paper Bd. Co. v. Amata*, 693 F. Supp. 1376
(D. Conn. 1988) .........................................................................14

*Feinberg v. Red Bank Volvo, Inc.*, 752 A.2d 720
(N.J. Super. Ct. App. Div. 2000) ................................................29

*Feinstein v. Resolution Trust Corp.*, 942 F.2d 34
(1st Cir. 1991) ..........................................................6, 14, 17, 18

*First Nationwide Bank v. Gelt Funding Corp.*,
820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d
763 (2d Cir. 1994).......................................................................16

*Fleming v. Dane*, 22 N.E.2d 609 (Mass. 1939) .............................27

*Foval v. First Nat'l Bank of Commerce In New
Orleans*, 841 F.2d 126 (5th Cir. 1988).......................................17

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721
(7th Cir. 1998)......................................................................11, 18

*Grant v. John Hancock Mut. Life Ins. Co.*,
183 F. Supp. 2d 344 (D. Mass. 2002) ...............................26, 27, 28

*Hangman Ridge Training Stables, Inc. v.
Safeco Title Ins. Co.*, 719 P.2d 531
(Wash. 1986)..............................................................................32

*Hayduk v. Lanna*, 775 F.2d 441 (1st Cir. 1985) .................6, 25, 29, 38

*Heinrich v. Sweet*, 49 F. Supp. 2d 27
(D. Mass. 1999)..........................................................................25

*Herring v. Vadala*, 670 F. Supp. 1082
(D. Mass. 1987)....................................................................26, 38

*Holmes v. Securities Investor Prot. Corp.*,
503 U.S. 258 (1992)....................................................................21

v

**Page**

*Jennings, D.C. v. Emry*, 910 F.2d 1434 (7th Cir. 1990) ......................................................11

*Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1995) ...............................................................16

*Lifschultz Fast Freight, Inc. v. Consol.*
*Freightways Corp.*, 805 F. Supp. 1277
(D.S.C. 1992), *aff'd*, 998 F.2d 1009
(4th Cir.), *cert. denied*, 510 U.S. 993 (1993) ....................................................................21

*Lingle v. Ziola*, 701 F. Supp. 158 (N.D. Ill. 1988) ...........................................................14

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ....................................................................8

*Manhattan Telecomms. Corp. v. DialAmerica Mktg. Inc.*,
156 F. Supp. 2d 376 (S.D.N.Y. 2001) ...............................................................................15

*Marshall v. Citicorp Mortg., Inc.*, 601 So. 2d 669
(La. Ct. App. 1992) ............................................................................................................32

*Massachusetts Laborers' Health & Welfare Fund v.*
*Philip Morris, Inc.*, 62 F. Supp. 2d 236 (D. Mass. 1999) .....................................24, 27, 28

*McGill v. General Motors Corp.*, 231 A.D.2d 449
(N.Y. App. Div. 1996) ..................................................................................................30, 35

*Miller Hydro Group v. Popovitch*,
793 F. Supp. 24 (D. Me. 1992) ..........................................................................................13

*Moss v. Camp Pemigewassett, Inc.*, 312 F.3d 503
(1st Cir. 2002) ....................................................................................................................24

*New York Univ. v. Continental Ins. Co.*,
662 N.E.2d 763 (N.Y. 1995) ..............................................................................................35

*Northern Kentucky Bank & Trust v. Rhein*, 1984 WL 23248
(E.D. Ky. Sept. 18, 1984) ...................................................................................................14

*O&G Carriers, Inc. v. Smith*,
799 F. Supp. 1528 (S.D.N.Y. 1992) ...................................................................................13

*OCE Printing Sys. USA, Inc. v. Mailers Data*
*Servs., Inc.*, 760 So.2d 1037 (Fla. Dist. Ct. App. 2000) ....................................................33

*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 (2002) ................................................29, 30, 32

vi

**Page**

*Oswego Laborers' Local 214 Pension Fund v. Marine*
*Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) ............................................................32

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*,
263 F. Supp. 2d 172 (D. Mass. 2003) ................................................3,6,7,8,12,13,14,17,36

*Plount v. Am. Home Assurance Co.*,
668 F. Supp. 204 (S.D.N.Y. 1987) ...................................................................... 13-14

*Prudential Ins. Co. of Am. v. Jefferson*
*Assocs., Ltd.*, 896 S.W.2d 156 (Tex. 1995) ...................................................................31

*S&R Assocs., L.P., III v. Shell Oil Co.*,
725 A.2d 431 (Del. Super. Ct. 1998) .........................................................................33

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ....................................................11, 21

*Slattery v. Costello*, 586 F.Supp. 162 (D.D.C. 1983) ........................................................14

*Spiro v. Nick*, 876 F. Supp. 553 (S.D.N.Y. 1995) ............................................................14

*Sponaugle v. First Union Mortg. Corp.*,
No. 01-3325, 2002 WL 1723894
(3rd Cir. July 25, 2002) .........................................................................................35

*State ex rel. Humphrey v. Directory Publ'g Servs., Inc.*,
No. Cl-95-1470, 1996 Minn. App. LEXIS 62
(Minn. Jan. 9, 1996) .............................................................................................32

*Stutman v. Chem. Bank*, 731 N.E.2d 608
(N.Y. 2000) .................................................................................................... 29-30

*Tennaro v. Ryder Sys., Inc.*, 832 F. Supp. 494
(D. Mass. 1993) ..................................................................................................28

*United States v. Turkette*, 452 U.S. 576 (1981) ........................................13, 16, 17,18, 19

*VanDenBroeck v. CommonPoint Mortg. Co.*,
210 F.3d 696 (6th Cir. 2000) ......................................................................... 15-16, 17

*Van Schaick v. Church of Scientology of Cal., Inc.*,
535 F. Supp. 1125 (D. Mass. 1982) ..................................................................24, 25, 38

*Waldo v. North Am. Van Lines, Inc.*,
669 F. Supp. 722 (W.D. Pa. 1987) ..........................................................................34

vii

**Page**

*Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001) ............................................................29, 35

*Willis v. Lipton*, 947 F.2d 998 (1st Cir. 1991) ....................................................................21

## Statutes & Rules

18 U.S.C. § 1962(c) ..............................................................................................11,19, 20

18 U.S.C. § 1964(c) ..................................................................................................11, 21

42 C.F.R. § 405.517 .....................................................................................................22, 36

42 C.F.R. § 405.517 (1992) .............................................................................................22

Fed. R. Civ. P. 9(b) ................................................................................................. passim

6 Del. Code § 2513(a) ......................................................................................................32

6 Del. Code § 2533 ...........................................................................................................33

Fla. Stat.Ann. §501.204 (2002) ....................................................................................30, 33

La. Rev. Stat. Ann. § 51:1405 (1987) .............................................................................33

La. Rev. Stat. Ann. § 51:1409 (1987) .............................................................................30

N.J. Stat. Ann. 56:8-1, *et seq.* (1999) ..............................................................................34

N.Y. Gen. Bus. L. § 349 (McKinney 1988) ................................................................... 35

N.Y. Gen. Bus. L. § 350 (McKinney 1988) ....................................................................35

73 Pa. Stat. § 201-9.2 (1993) .......................................................................................34, 35

Tex. Bus. & Com. Code 17.45(13) ..................................................................................30

## Other Authorities

*The Oxford English Dictionary* 543 (2d ed. 1989) ...........................................................37

Defying the Court's efforts to narrow the case and to eliminate unfounded, improperly pleaded claims, the Amended Master Consolidated Complaint ("AMCC") substantially expands the scope of this already sweeping litigation by including an array of new claims involving hundreds of new drugs.  In effect, plaintiffs have launched the broadest possible attack on virtually the entire pharmaceutical industry in an attempt to challenge the manner in which prescription drugs are priced in this country.

The focus of this attack is once again the term "average wholesale price" ("AWP") – a pricing benchmark, according to plaintiffs, "from which hundreds of drug prices are derived in transactions throughout the pharmaceutical distribution chain." AMCC ¶ 5.  The claims asserted in the AMCC now extend far beyond the realm of Medicare Part B to practically the entire marketplace for prescription drugs.  Plaintiffs bring their claims on behalf of a class of individuals and entities who paid for any portion of the purchase price of a prescription drug where that price was based in any way on AWP.  AMCC ¶ 595.  In fact, this case primarily involves private institutional end-payors that paid for prescription drugs at some (perhaps substantial) discount off AWP through privately negotiated arm's-length transactions with intermediaries such as pharmacy benefit managers ("PBMs").  This dramatic shift in focus is reflected by the identity of the named plaintiffs:  no individual Medicare Part B participant is named as a plaintiff in the AMCC.

Plaintiffs continue to contend that by reporting to third-party publishers AWPs that were not equal to providers' or intermediaries' average acquisition costs, defendants have violated the federal racketeering statute and the consumer fraud statutes of eleven states.  In addition, they assert for the first time that defendants engaged in a multitude of civil conspiracies.  These claims fail for several reasons.

First, despite clear instructions by the Court that they must plead their allegations of fraud with the particularity required by Rule 9(b), plaintiffs fail to do so. There are no specific allegations in the AMCC supporting plaintiffs' PBM claims. Moreover, although plaintiffs now attempt to catalog the specific drugs they contend are at issue in this case, along with the published AWPs for most -- but not all -- of these drugs from 1997 to 2002, they still do not explain how these published AWPs are "fraudulent." Instead, in most cases they simply allege that there is a difference between the published AWP and the prices paid by providers and PBMs. Despite the fact that plaintiffs themselves are third-party payors, they do not even allege what they paid -- much less whether they paid the published AWPs or anything close to them. In addition, the AMCC still fails to allege purchasers for certain of the drugs that plaintiffs contend are included in the case.

Second, plaintiffs again fail to allege a viable RICO claim. In the hope of finding an enterprise that might withstand the Court's scrutiny, plaintiffs engage in a pleading game that results in 154 mini-enterprises, all of which fail as a matter of law. Plaintiffs also fail to allege that defendants conducted the affairs of the purported enterprises, and the AMCC includes no allegations showing that plaintiffs' injuries were proximately caused by defendants. Accordingly, the RICO claims must again be dismissed.

Third, plaintiffs' civil conspiracy claims must be dismissed because plaintiffs have failed to allege facts supporting such a conspiracy under Massachusetts law. Fourth, plaintiffs' state law consumer fraud claims must be dismissed because, among other things, the AMCC fails to allege adequately proximate cause. Finally, plaintiffs' renewed claims relating to multiple-

2

source drugs must be dismissed for the same reasons that the Court dismissed the same claims as alleged in the MCC – these claims simply do not fit the paradigm described in the complaint.

## STATEMENT OF THE CASE

**A.      The Court's May 13, 2003 Memorandum and Order**

On May 13, 2003, this Court granted in part, and denied in part, defendants' motion to dismiss the MCC. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003) (hereinafter "*AWP Litigation*").  The Court dismissed plaintiffs' claims under RICO because plaintiffs had failed to allege a single viable RICO enterprise.  *Id.* at 181-86. Because the defects in plaintiffs' enterprise allegations alone were fatal to plaintiffs' RICO claims, the Court did not reach defendants' arguments that the RICO claims should be dismissed because plaintiffs had failed to allege fraud or causation. *Id.* at 181 n.9.  The Court also dismissed the association plaintiffs with respect to all claims for lack of standing.  *Id.* at 194.

In addition, the Court dismissed a number of the claims alleged in the MCC for failure to satisfy the pleading standards for fraud set forth in Rule 9(b).  In particular, the Court expressly ruled that any amended complaint must identify, for each defendant: "(1) the specific drug or drugs that were purchased from the defendant, (2) the allegedly fraudulent AWP for each drug, and (3) the name of the specific plaintiff(s) that purchased the drug." *Id.* at 194.  The Court also ruled, *inter alia*, that plaintiffs' claims relating to multiple-source (including generic) drugs were dismissed, reasoning that such drugs "do not fit the paradigm described in the complaint." *Id.* at 194 & n.11.

3

**B.     Amended Master Consolidated Class Action Complaint**

The AMCC is brought by eleven plaintiffs, including five ERISA-qualified employee benefit plans, a voluntary employee benefit plan, and five associations. AMCC ¶¶ 26-36.  In contrast to the MCC, no individuals are included as named plaintiffs in the AMCC.  The named plaintiffs purport to represent "consumers, self-insured employers, health and welfare funds, health insurers and other end payors for prescription drugs."  AMCC ¶ 1.

Plaintiffs allege that defendants have engaged in a pattern of fraudulent conduct by "artificially inflating the AWPs for their drugs," which defendants allegedly knew were used not only by Medicare but also by "virtually all end payors" as the basis for prescription drug reimbursement.  AMCC ¶¶ 134, 137-38, 140.  While plaintiffs allege that, in the Medicare context, reimbursement for covered drugs is based on AWP by law, AMCC ¶ 145, they allege that, for private payors, reimbursement is set by contracts between health plans and PBMs that typically use AWP "less a certain percentage 'discount,'" AMCC ¶ 169.

Plaintiffs assert that defendants inflated the AWPs for their drugs so they could market the resulting "spread" between the published AWPs and actual acquisition costs for their products to providers and intermediaries, such as PBMs, in an effort to increase their respective sales and market shares.  AMCC ¶¶ 4-6.  As a result of this alleged conduct, defendants purportedly "directly caused Plaintiffs and the members of the Class to substantially overpay" for prescription drugs.  AMCC ¶ 140.  Plaintiffs' overpayment allegedly occurred in two contexts: (1) for drugs covered by Medicare Part B, and (2) for other drugs where reimbursement is based in some part on AWP.  AMCC ¶¶ 141, 144, 148.  Plaintiffs purport to capture this universe of drugs, referred to as AWPIDs, in their Appendix A, which catalogs over 300

4

different drugs and a combined total of over 1,500 different dosages of those drugs. Appendix A also simply recites the published AWPs for most – but not all – of these drugs and dosages, from 1997 through 2002.

Plaintiffs seek to represent all persons or entities that paid any portion of the purchase price of any drug manufactured by a defendant and identified in Appendix A at a price calculated by reference to the drug's published AWP (the "AWP Payor Class"), as well as a sub-class of the AWP Payor Class consisting of "[a]ll Third-Party Payors that . . . contracted with a PBM to provide to [their] participants a prescription drug manufactured by a Defendant Drug Manufacturer and identified in Appendix A [to the AMCC]" (the "Third-Party Payor Class"), regardless of the prices actually paid by these third-party payors. AMCC ¶ 595. Appendix B identifies each plaintiff that allegedly purchased certain of the drugs identified in Appendix A. No purchasers are identified for approximately one-third of the drugs listed in Appendix A.

Plaintiffs seek to recover under RICO (Counts I and II), and allege over 150 association-in-fact enterprises.[1] These enterprises include 66 bilateral associations-in-fact involving each of 22 defendant drug manufacturers and each publisher of pharmaceutical pricing compendia, *see* AMCC ¶¶ 624, 628, as well as an even greater number of bilateral associations-in-fact involving each of 22 defendant drug manufacturers and each of the four major PBMs, *see id.* ¶¶ 651, 661. These enterprises are, in essence, merely subparts of the Publisher and PBM enterprises that this Court previously found were not viable enterprises.

---

[1] Defendant Novartis Pharmaceuticals Corporation ("Novartis") is not named as a defendant in Counts I and II (RICO) or Count IX (civil conspiracy). Accordingly, any reference to "defendant" or "defendants" with respect to those Counts does not include Novartis.

5

Plaintiffs also seek to recover under the consumer protection statutes of eleven states (Count IV). In addition, they seek a declaratory judgment that "setting stated reimbursement prices above the actual average wholesale price for AWPIDs is unlawful, and that each Defendant Drug Manufacturer does so in violation of applicable law" (Count III). AMCC ¶ 681. Finally, plaintiffs allege that each of 22 defendants engaged in separate civil conspiracies with each of the four major PBMs in violation of state consumer protection laws, common law fraud, Medicare anti-fraud kickback statutes, and mail and wire fraud statutes (Count IX). Plaintiffs' remaining claims are alleged against the Together Rx Card defendants (Counts V-VIII, X).[2]

## ARGUMENT

### I. PLAINTIFFS' ATTEMPT TO EXPAND THIS CASE TO COVER HUNDREDS OF DRUGS FAILS TO SATISFY THE REQUIREMENTS OF RULE 9(B).

Rule 9(b)'s command to particularize fraud applies to each of plaintiffs' claims – whether under RICO or state consumer statutes or civil conspiracy laws – as they all sound in fraud. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991) (RICO); *Hayduk v. Lanna*, 775 F.2d 441, 443-44 (1st Cir. 1985) (state law fraud claims alleged in federal court, including conspiracy claims, must satisfy Rule 9(b)). Moreover, in its May 13, 2003 Order, the Court held that plaintiffs would be required in the AMCC to comply with Rule 9(b). *See AWP Litigation*, 263 F. Supp. 2d at 194; *see also* Oral Arg. Tr. at 74. Indeed, the Court's order specifically stated that any amendment must allege "(1) the specific drug or drugs that were purchased from

---

[2] Plaintiffs' claims relating to the Together Rx Card are addressed in the separate memorandum of law filed by the Together Rx Card defendants.

6

defendant; (2) the allegedly fraudulent AWP for each drug, and (3) the name of specific

plaintiff(s) that purchased the drug."[3] *AWP Litigation*, 263 F. Supp. 2d at 194.

Rather than heed the Court's admonition, plaintiffs have proffered a hefty complaint that

substitutes bulk for substance and rote conclusory allegations for specific facts.  In fact, plaintiffs

seek to expand substantially the scope of this already sweeping litigation to cover hundreds of

new drugs.  Yet, they have not "particularize[d] exactly what the fraud is" or alleged a

"fraudulent AWP" for the vast majority of the drugs named in the AMCC.  This failure requires

dismissal of all claims in the AMCC relating to these drugs.

### A.      The PBM Allegations Are Plainly Deficient.

In less than three pages of the 301-page AMCC, plaintiffs seek to widen this case "well

beyond Medicare Part B," AMCC ¶ 168, to include "the drug benefits of 210 million people in

the United States, or 70 percent of the nation's population."  AMCC ¶ 170.  Under plaintiffs'

PBM theory, which involves hundreds of drugs outside of Medicare Part B: (1) the plaintiff

benefit plans contract with PBMs so that their participants can obtain prescription drugs from

retail pharmacies or via mail order directly from the PBM, AMCC ¶ 169; (2) the contracts that

benefit plans typically negotiate with PBMs price drugs at a discount off AWP, *id.*; (3)

defendants inflate the AWPs for their products so that they can market the spread between

acquisition cost and AWP in order to "help manipulate the PBMs' profits from Plaintiffs and the

classes," AMCC ¶ 172; and (4) defendants benefit from this scheme "by increasing the sales of

---

[3] *See also* Tr. of Oral Argument at 74 (Jan. 13, 2003) ("We're going to go drug by drug, if we go anywhere, because I can't be the supervisor of the entire pharmaceutical industry.  You've got to meet 9(b) requirements. You've got to particularize exactly what drugs, exactly what the fraud is, which plaintiffs paid for what drugs.").