UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | ) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) |

MDL NO. 1456

CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR A PROTECTIVE ORDER
TO MAINTAIN THE CONFIDENTIALITY OF PORTIONS OF THE
AMENDED MASTER CONSOLIDATED COMPLAINT, AND THE MONTANA
AND NEVADA II AMENDED COMPLAINTS (NOT OPPOSED)

Baxter Healthcare Corporation hereby moves on behalf of all affected

Defendants for a protective order to maintain the confidentiality of certain portions of

Plaintiffs' Amended Master Consolidated Complaint ("AMCC"), and the Montana and

Nevada II amended complaints (the "Complaints"). Many of the Defendants now agree

– without waiving the confidentiality designations of documents produced to Plaintiffs

– that the portions of the Complaints related to them may be released in unredacted

form. However, the Complaints contain some information related to certain

Defendants that is particularly sensitive and therefore, for the reasons described below,

the affected Defendants request that this information remain under seal.

I.        FACTUAL BACKGROUND

         A.    Case Management Order ("CMO") No. 5

         On October 28, 2002, this Court entered CMO No. 5, which, among other

things, ordered Defendants to produce documents they had previously produced in

certain government investigations. Defendants produced these documents and, in

accordance with the Protective Order in force in this case, designated certain documents "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL."

   B. <u>Protective Order</u>

   On December 13, 2002, the Court entered a Protective Order negotiated by the parties in this litigation.  The Protective Order allows the parties to designate certain information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."  "CONFIDENTIAL" information includes

> information that any producing party, including any third party, in good faith believes to contain (a) proprietary or commercially sensitive information; (b) personal financial information; or (c) information that should otherwise be subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure.

Protective Order, ¶ 3.  "HIGHLY CONFIDENTIAL" information encompasses:

> current and past pricing, marketing, and business planning information; trade secrets; company personnel or employee information; and, other 'CONFIDENTIAL' information. . . the disclosure of which is likely to cause competitive or commercial injury to the producing party.

Protective Order, ¶ 5.

   Under the Protective Order, access to "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information is restricted.  For example, in-house counsel seeking access to other Defendants' "HIGHLY CONFIDENTIAL" information must certify that he/she is not involved in any competitive decision-making and agree to certain conditions, including not reviewing competitors' "HIGHLY CONFIDENTIAL" information at his/her place of work.  Protective Order, ¶ 6(a)(i) & Exhibit B.

2

Material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" may only be disclosed to the Court "under seal." *See* Protective Order, ¶¶ 4(i), 6(h). Further, the Protective Order specifies that:

> Any documents or pleadings to be filed with the Court that contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, shall be filed under seal in an envelope marked "CONFIDENTIAL- - Filed Under Seal Pursuant to Court Order" or "HIGHLY CONFIDENTIAL - - Filed Under Seal Pursuant to Court Order" and bear the caption of the AWP Litigation and pleading or document title and such other description as will allow the Court to readily identify the documents or information or portions thereof so designated.

Protective Order, ¶ 15.

To the parties' Protective Order, the Court added the following paragraph, related to court filings:

> all pleadings, memoranda or other documents filed in court shall be treated as public regardless of the terms of this order unless the counsel for the party seeking protection certifies and explains why the material is confidential. To the extent that a brief or other document contains some confidential information, it shall be redacted in a public version.

Protective Order, ¶ 29.

C.   <u>Amended Master Consolidated Complaint ("AMCC")</u>

On June 12, 2003, Plaintiffs filed a Motion for Leave to File an Amended Complaint, together with the proposed AMCC. The AMCC, in the section entitled "EXAMPLES OF SPECIFIC UNLAWFUL CONDUCT," includes information (and in some instances, direct quotations) from documents Defendants designated "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL" in connection with their CMO No. 5 productions. In the AMCC, Plaintiffs specifically identified which material had been designated as "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL." For example, after Plaintiffs referenced one of Baxter's documents, they cited to the Bates

number and then indicated the confidentiality status in parentheses. *See, e.g.,* AMCC, ¶ 276 (citing a Baxter inter-office memorandum regarding certain non-public prices as "(BAXMDL 0004754) (Highly Confidential)").

In the cover letter accompanying Plaintiffs' Motion for Leave to Amend, Plaintiffs stated, that, "Plaintiffs' Memorandum is filed under seal pursuant to Paragraph 15 of the applicable Protective Order and has been marked accordingly." Plaintiffs did not serve their Motion or the accompanying AMCC via Verilaw, because it contained "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" material.[1]  Both outside and in-house counsel, some of whom are not able to execute the certification required to have access to "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL" information, receive documents through Verilaw.  Plaintiffs did not provide the Court or the Defendants with a redacted version of the AMCC.

D.    Publication of Unredacted AMCC

On July 24, 2003, counsel for Defendant AstraZeneca Pharmaceuticals LP discovered that the AMCC had been placed on PACER, a publicly-available electronic filing system.  On July 25, 2003, AstraZeneca filed an Assented-To Motion For Leave To File A Redacted Version Of The Amended Consolidated Class Action Complaint, together with a redacted copy of the AMCC.  This redacted version of the AMCC has been made publicly available pending resolution of this motion for a protective order.[2]

---

[1] In CMO No. 2, the Court authorized the parties to use Verilaw for electronic service in lieu service by U.S. Mail.

[2] The fact that commercially-sensitive information was, for a short time, unsealed and released to the public does not render this Motion moot, nor alter the need for protection of commercially-sensitive information.  See Protective Order ¶20 (noting that inadvertent disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information generally shall not constitute waiver).

On July 31, 2003 this Court granted Defendants' emergency motion and permitted Defendants to file a redacted copy of the AMCC until this issue could be resolved.  The Court ordered:  "Counsel shall submit an affidavit as well as a brief to demonstrate good cause to redact or seal."

      E.    <u>Montana and Nevada II Amended Complaints</u>

On August 1, 2003, Plaintiffs filed amended complaints in the Montana and Nevada II causes of action pending as part of this MDL.  The Montana and Nevada II amended complaints make use of the same "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" material as the AMCC.  At Defendants' request, Plaintiffs agreed to file the amended Montana and Nevada II complaints under seal, together with motions to keep the amended complaints under seal and to make only a redacted version public pending a ruling on Defendants' motion for a protective order.

Because of the overlapping issues with the Complaints, Defendants address all three complaints together herein.

## II.    ARGUMENT

As this Court is aware, MDL 1456 is a large and complex case involving the sales, marketing, and pricing practices of virtually the entire pharmaceutical industry.  Plaintiffs have alleged that the Defendants unlawfully manipulated the average wholesale prices of the drugs that they manufacture and engaged in other unlawful conduct.  Pursuant to CMO No. 5, Defendants produced to Plaintiffs "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information that contained proprietary and commercially-sensitive information, including but not limited to "current and past pricing, marketing, and business planning information; trade secrets; [and] company personnel or employee information."  This information should be

subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure.

As described below, upon review of the materials cited in the Complaints, certain Defendants have determined that, although the documents from which the material was extracted were properly designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," some of the excerpts contained in the Complaints may be released to the public.  In so agreeing, these Defendants expressly preserve their assertions of confidentiality as concerns the underlying documents.  In other instances, however, certain Defendants have determined that the information contained in the Complaints must remain under seal.  As is described in the attached affidavits and declarations, it is extremely important to the affected Defendants that this information remain confidential.  Moreover, continuing to permit the parties to designate material "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" will expedite the discovery process and conserve judicial resources.

> A.   In Good Faith, Certain Defendants Have Now Determined That Portions Of The Complaints May Be Released In Un-Redacted Form.

Without waiving their assertions of confidentiality with respect to the underlying documents, some of the Defendants now agree that the information quoted in the Complaints may be released to the public.  A list of the paragraphs of the Complaints that certain Defendants no longer require to remain under seal is included as Exhibit A hereto.  Importantly, this re-evaluation on the Defendants' part is not an indicator that the underlying documents were improperly designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in the first instance.  Rather, in order to expedite the discovery process, Defendants did not undertake the gargantuan task of redacting line-by-line their CMO No. 5 productions.

B.  It is Appropriate That Certain of Defendants' Documents
     Remain Under Seal.

In order to protect commercially-sensitive information, certain of the
Defendants have identified those paragraphs, or portions of paragraphs, that should
remain under seal.  A list of the paragraphs of the Complaints that certain Defendants
seek to keep under seal is included as Exhibit B hereto.  Affidavits and declarations
describing why this information should remain sealed are included in Exhibit C.

As the central issue in this case is the propriety of Defendants' pricing
methodologies, the production, disclosure, and use of competitively-sensitive
information will be an important part of the litigation of this case.  However, given the
highly-competitive nature of the pharmaceutical industry, it is essential that such
information be disclosed only with certain restrictions.  *See GTE Prods. Corp. v. Gee*, 112
F.R.D. 169, 170-72 (D. Mass. 1986) (limiting disclosure of customer lists); *C.A. Muer Corp.
v. Big River Fish Co.*, CA No. 97-5402, CA No. 97-6073, CA No. 97-7154, 1998 U.S. Dist.
LEXIS 12639, at *10-11 (E.D. Pa. Aug. 10, 1998) (limiting disclosure of marketing and
financial information); *Pfeiffer v. K-Mart Corp.*, 106 F.R.D. 235 (S.D. Fl. 1985) (limiting
disclosure of trade secret, proprietary or commercially sensitive information).

Information redacted from the AMCC was identified "CONFIDENTIAL" or
"HIGHLY CONFIDENTIAL" by Plaintiffs (pursuant to Defendants' original
designations) and is primarily competitively-sensitive commercial information
regarding the pricing and marketing practices of the Defendants and/or proprietary or
trade secret information regarding patented pharmaceutical compounds and customer
lists.  *See, e.g.*, AMCC ¶¶ 214-15, 257, 263, 269, 428.  The attached affidavits explain with
particularity the reasons why this information should remain under seal.  It is entirely
proper that this information remain inaccessible to the public and, particularly, that it

not be available to Defendants' competitors.  Disclosure to a competitor is generally viewed as more harmful than disclosure to a non-competitor.  *See Ares-Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219-20 (D. Mass. 1993); *Rywkin v. New York Blood Ctr.*, 95 Civ. 10008 (BSJ), 1998 U.S. Dist. LEXIS 13490, at *15 (S.D.N.Y. Aug. 31, 1998).

Although court records are generally available to the public, *see, e.g., Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030 (1989), First Circuit precedent makes clear that protective orders to prevent the release of confidential information can be issued when "good cause" is demonstrated.  *See, e.g, Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6 (1st Cir. 1986) ("Protective orders are subject to First Amendment scrutiny, but that scrutiny must be made within the framework of [Fed.R.Civ. P.] 26(c)'s requirement of good cause.").  Fed. R. Civ. P. 26(c) permits a court to issue protective orders in a number of instances and for a number of purposes. Among these, a party may request "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."  Fed. R. Civ. P. 26(c)(7).

"[B]lanket protective orders," those covering all discovery information exchanged in a litigation, "are not favored."  *United States ex rel. Parke-Davis*, 210 F.R.D. 257, 261 (D. Mass. 2002), citing *Public Citizen* at 790; *but see In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 148 (2d Cir.), *cert. denied sub nom Dow Chemical Co. v. Ryan*, 484 U.S. 953 (1987) (noting that "unusual scope" of litigation justified imposition of blanket protective order covering all documents produced in discovery); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 256 (D. Del. 1992) (permitting umbrella confidentiality order in RICO case as it would best serve interests of prompt resolution of case by expediting discovery process).  In *Parke-Davis*, this Court found

8

invalid terms in a protective order that barred non-litigatory use or disclosure to the public of all materials provided in discovery, regardless of their "confidential" status or lack thereof.

In marked contrast, Defendants here seek only to protect that information which, in accordance with the definitions provided in the protective order, they have designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." These definitions correspond with the "good cause" notion described in Fed. R. Civ. P. 26(c)(7).[3] *See, e.g., Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995) (distinguishing between "umbrella" protective orders that designate all discovery as protected and limited "blanket" protective orders that permit the parties "to protect documents that they in good faith believe contain trade secrets or other confidential commercial information" and noting that the latter "are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors.").

In *Wang Laboratories, Inc. v. CFR Assocs., Inc.*, 125 F.R.D. 10 (D. Mass. 1989), this Court issued a protective order to prevent disclosure of information produced in discovery for which Wang could establish competitive harm. That case involved the extent to which a potential witness, a former employee who worked for a competitor of Wang, could be given access to documents produced in response to discovery requests. This court ruled that the witness could not be shown "any documents marked confidential by Wang except those which [the witness] authored or received." *Id.* at 14;

---

[3] This is not a case where the information sought to be protected under seal is merely information that might generate adverse publicity or harm the Defendants' reputations. *See United States v. General Motors Corp.*, 99 F.R.D. 610 (D.D.C. 1983); *Reliance Ins. Co. v. Barron's*, 428 F. Supp. 200 (S.D.N.Y. 1977). In fact, in agreeing that all but a few paragraphs of the Complaints may be released, the Defendants are exposing themselves to adverse publicity.

*see also Ares-Serono,* 151 F.R.D. at 220 (ordering production of pharmaceutical company's product research and development documents and other documents containing trade secrets where protective order restricted disclosure to outside counsel and independent experts); *GTE Prods. Corp. v. Gee,* 112 F.R.D. 169 (D. Mass. 1986) (granting plaintiff's motion for a protective order prohibiting defendant's counsel from disclosing to the defendant information concerning prices, customers, and sales of other distributors of plaintiff's products); *Pfeiffer v. K-Mart Corp.,* 106 F.R.D. 235 (S.D. Fla. 1985) (limiting access to trade secrets, proprietary, and commercially-sensitive information - designated "confidential information" - to the court, counsel, and independent consultants, for use only in connection with the litigation).

As in these cases, for the reasons described in the accompanying affidavits, "good cause" exists to prevent disclosure of the redacted information in the Complaints at issue and to enter the attached protective order. Finally, keeping select paragraphs under seal also will not threaten the First Amendment. The particularities of a Defendant's pricing is not of interest to the public in the same way as are the generalized allegations of fraud in the remainder of the Complaints, which remain fully accessible by the public.

C.     Judicial Efficiency Supports Entry Of The Protective Order.

Entry of the proposed protective order preventing public disclosure of the Complaints, will cause no undue burden to the parties in this action. The Court, parties' outside counsel, and in-house counsel who have certified that they have no involvement in competitive decision-making have full access to the Complaints; expert witnesses also will be given access; and the information will be available for use in discovery. Narrowing the number of individuals who can see and review the

unredacted complaints will, however, reduce the risk that the sensitive information contained therein will fall into the hands of competitors and be used for purposes outside this litigation.

To date, Defendants have produced nearly a million pages of documents to Plaintiffs. Future discovery is expected to encompass additional document production and numerous depositions. The intention of the Protective Order was to allow any producing party to designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" any information that it in good faith believes satisfies the Protective Order's confidentiality requirements in order to facilitate discovery and reduce the burdens on the Court. The provisions permitting the filing of documents with the Court "under seal," Protective Order, ¶¶ 4(i), 6(h), and 15, were designed to allow the parties to use documents designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in their pleadings and motions, without imposing an undue burden on the parties making the original designation to separately file motions for protective orders every time opposing counsel references a document or deposition that has been designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in a court filing. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("Judges have found in many cases that effective discovery, with a minimum of disputes, is achieved by affording relatively generous protection to discovery material."); *see also Public Citizen*, 858 F.2d at 790 (suggesting that one rationale for a blanket protective order would be to expedite the document gathering process by eliminating the need to screen for confidentiality).

Redacted versions of the Complaints previously have been provided to the Court and made publicly available. Attached hereto, as Exhibits D, E, and F, are redacted versions of the AMCC, and Montana and Nevada II amended complaints,

respectively, reflecting the concessions made by Defendants in Exhibit A.  If this motion is granted, Defendants ask the Court to make these amended redacted complaints publicly available.

### III.      CONCLUSION

For the reasons described above, Defendants respectfully request the issuance of a protective order to (1) maintain the unredacted versions of the AMCC and the Montana and Nevada II amended complaints under seal, and (2) permit the redacted versions of the AMCC and the Montana and Nevada II amended complaints – as found in Exhibits D, E, and F to this Motion --  to become the publicly-available versions of these documents, through PACER and otherwise.

Respectfully submitted,

| | |
|---|---|
| *Merle M. DeLancey, Jr. (PEO)* | *[signature]* |
| Merle M. DeLancey, Jr. | Peter E. Gelhaar (BBO #188310) |
| DICKSTEIN SHAPIRO MORIN & | DONNELLY, CONROY & GELHAAR, LLP |
| OSHINSKY LLP | One Beacon Street |
| 2101 L St. NW | 33rd Floor |
| Washington, DC 20037 | Boston, MA  02108 |
| Telephone:  (202) 785-9700 | Telephone:  (617) 720-2880 |
| Facsimile:  (202) 887-0689 | Facsimile:  (617) 720-3554 |
| | |
| Counsel for Defendants | |
| BAXTER HEALTHCARE | |
| CORPORATION | |