UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>D. Mont. Cause No. CV-02-09-H-DWM<br><br>*State of Nevada v. American Home Products Corp., et al.*,<br>D. Nev. Cause No. CV-N-02-0202-ECR | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' JOINT MOTION TO COMPEL DISCOVERY

### I. INTRODUCTION

This motion and memorandum urges the Court to permit plaintiffs State of Nevada and State of Montana to conduct discovery pending the outcome of motions to dismiss that defendants will file on September 15, 2003. In response to requests for production served by Nevada and Montana on all defendants, defendants have advised that they will not respond until the Court resolves the motions to dismiss – that *no* discovery should be permitted to occur until after that point. Given the briefing and hearing schedule set forth in the Court's August 12, 2003 Scheduling Order, no discovery would occur and the litigation would be at a standstill until after the New Year – *almost two years after Nevada and Montana first filed their cases*. Such a delay, while potentially prejudicial to the States, also makes no sense considering that the Court has already upheld the consumer protection claims of the private class action plaintiffs and

- 1 -

1534.15 0017 MTN.DOC

rejected many of defendants' defenses. A major portion of the States' cases also involves consumer protection claims. Thus, it is highly likely that some portion – if not all – of the States' claims will proceed. In the interests of resolving these cases in the most efficient manner possible, discovery should begin immediately and before the Court resolves motions to dismiss that have not yet been brought.

## II. STATEMENT OF FACTS

### A. The Montana And Nevada Actions

#### 1. Procedural History

On March 8, 2002, the State of Nevada, through Attorney General Frankie Sue Del Papa (who has since been succeeded by Attorney General Brian Sandoval), brought this law enforcement action in the Second Judicial District Court in and for Washoe County, Nevada, against ten pharmaceutical companies. Shortly thereafter, the State of Montana, through Attorney General Mike McGrath, brought is law enforcement action in the First Judicial District Court of the State of Montana for Lewis and Clark County on February 25, 2002. Defendants removed both cases to federal district court, after which the MDL Panel transferred them to this Court. On June 11, 2003, the Court denied the States' motions to remand.

#### 2. The State Claims

Nevada and Montana both filed amended complaints in this Court on August 1, 2003. Both complaints allege that defendants have undertaken a massive, coordinated scheme to inflate the Average Wholesale Price, or "AWP," and the "best price" paid for certain drugs manufactured by defendants. Montana and Nevada reimburse physicians and pharmacies for certain drugs based upon the AWP. Montana presently reimburses at AWP less 15% for most drugs (plus a dispensing fee generally ranging from $2.00 to $4.70 that is based on the pharmacy's average cost of filling a prescription), and reimburses for multi-source drugs based on the Federal Upper Limit ("FUL") set by HCFA which, in turn, is calculated based on reported

AWPs. Mont. ¶¶ 162, 188.[1] The Nevada Medicaid Program presently reimburses for outpatient drugs on the basis of AWP less 10% plus a $4.76 dispensing fee. For generics for which FULs have been set, the reimbursement amount is the FUL (which, again, is calculated by reference to AWP) plus the same dispensing fee. Nev. ¶¶ 126, 151.

Thus, when defendants intentionally inflate the AWP, the States provide a reimbursement for drugs covered under their Medicaid programs in excess of what the provider actually paid for the drug. This "spread" between the reimbursement amount and the actual cost – created by defendants' intentional scheme – provides an incentive for the provider to prescribe defendants' medications; this is why defendants inflate the AWP. Nev. ¶¶ 1-10; Mont. ¶¶ 1-10.

The damage to the Medicaid programs does not stop with defendants' AWP Inflation Scheme but continues "on the back end" with their Best Price Frauds. Pursuant to an agreement with the Center for Medicare and Medicaid Services, each manufacturer pays quarterly rebates to the States that are intended to afford Medicaid access to a manufacturer's "Best Price." For each drug, the rebate is equal to AMP less the Best Price. Both AMP and Best Price are reported each quarter by the manufacturers. AMP is to include cash discounts and all other price reductions (other than Medicaid rebates) that reduce the actual price paid. Best Price is generally defined as the lowest price at which the manufacturer sells the drug to any purchaser. Nev. ¶¶ 383-91; Mont. ¶¶ 603-11.

In keeping with their artificial price inflation scheme, each defendant did not report the actual Best Price or AMP, but instead (i) reported higher prices and (ii) excluded discounts and other inducements offered to physicians, such as free goods, volume discounts, rebates, educational grants and other programs that lower the providers' actual cost of the drugs, that resulted in lower prices than the prices reported to the Medicaid Program. Consequently,

---

[1] "Mont. ¶" references paragraphs in the State of Montana's Second Amended Complaint. "Nev. ¶" references paragraphs in the State of Nevada' Amended Complaint.

defendants paid rebates lower than those actually due had defendants accurately reported AMPs and Best Prices. Nev. ¶ 392; Mont. ¶ 612.

Nevada asserts six causes of action under Nevada law in order to stop and remedy defendants' unlawful conduct: (i) three separate claims for violations of the Nevada Deceptive Trade Practices Act (NRS 598.0903, *et seq.*) on behalf of the State of Nevada and its residents, with the second of these claims brought to remedy deceptive trade practices directed at elderly Nevada residents (Nev. ¶¶ 423-43); (ii) a claim for treble damages and various forms of equitable relief, including civil forfeiture and restitution, under Nevada's civil RICO statute, NRS 207.470, *et seq.* (Nev. ¶¶ 444-66); (iii) a claim for cost recovery and civil penalties pursuant to Nevada's Medicaid fraud statutes found at NRS 422.540, *et seq.* (Nev. ¶¶ 467-77); and (iv) a claim for punitive damages (¶¶ Nev. 478-79).

Similarly, Montana asserts five causes of action under Montana law in order to stop and remedy defendants' unlawful conduct: (i) two separate claims for deceptive trade practices in violation of the Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. § 30-14-101, *et seq.*) on behalf of the State of Montana and its residents (Mont. ¶¶ 654-67); (ii) a claim for cost recovery pursuant to Montana's Medicaid fraud statutes found at Mont. Code Ann. §§ 53-6-160 and 53-6-143(4) (Mont. ¶¶ 668-79); (iii) a claim for forfeiture, civil penalties, double damages and legal costs under Montana's false claims statute, Mont. Code Ann. § 17-8-231 (Mont. ¶¶ 680-91); and (iv) a claim for punitive damages (Mont. ¶¶ 692-93).

**B.    Discovery**

With the jurisdictional issues finally resolved after the passage of over 14 months since the cases were filed, Montana and Nevada – eager to finally begin discovery – each served their First Request for the Production of Documents to All Defendants (the "RFPs").[2] Both States

---

[2] Each set of RFPs is attached to the Declaration of Steve W. Berman in Support of Joint Motion to Compel Discovery ("Berman Decl.") at, respectively, Exhibits 1 and 2.

have also served subpoenas on two separate industry trade associations, the Pharmaceutical Research and Manufacturers of America and the National Pharmaceutical Council.

Each set of RFPs contain 56 total separate requests for documents that are organized into nine categories as follows:

| Category | Requests | Documents Sought (Generally) |
|---|---|---|
| Investigations, Suits and Complaints | 1-8 | Documents related to investigations, suits and complaints regarding AWPs, Best Price and drug pricing issues. |
| AWPs | 9-16 | Documents related to the calculation and reporting of AWPs for the drugs identified in the complaint ("Identified Drugs"). |
| Spreads and Incentives | 17-24 | Documents related to marketing the spread and the provision of incentives (*e.g.*, rebates, free drugs, credit memos, etc.) that have the effect of lowering the acquisition price of Identified Drugs. |
| Pricing Related | 25-37 | Documents related to pricing issues, various pricing metrics for Identified Drugs (*e.g.*, AWP, AMP, WAC, etc.), data providing actual sales prices for Identified Drugs, market shares, revenues and profits and communications with PBMs. |
| Sales Personnel and Award Winners | 38-41 | Documents related to the identification of sales, trade relations and marketing managers, and the business plans created by various sales awards winners. |
| General Distribution and Marketing Practices | 42-44 | Documents related to marketing plans and communications with doctors and others with respect to Identified Drugs. |
| Communications with Competitors and Trade Associations | 45-48 | Documents related to defendants' communications with trade associations regarding AWP and drug pricing issues, government investigations, markets and market shares and joint marketing. |
| Best Price | 49-51 | Documents related to defendants' calculations of the Best Price and Average Manufacturer Price reported each quarter to the Medicaid Program. |
| Miscellaneous | 52-56 | Documents related to repackaging of drugs, organizational charts, and document retention policies. |

Defendants have advised that they will not provide discovery until the Court rules on defendants' motions to dismiss. Berman Decl. at Exhibit 3 (attaching copy of letter from D. Scott Wise on behalf of all defendants). Further, defendants do not intend to respond to the RFPs. Berman Decl. at ¶ 5. Hence, this motion is necessary.[3]

### III. LEGAL ARGUMENT

Fed. R. Civ. P. 26 provides the Court with wide discretion to govern the course of discovery in a case, and the Court should exercise that discretion to permit long-awaited discovery to proceed in the Nevada and Montana litigation. The discovery sought is relevant to the claims and defenses of the parties and is reasonably calculated to lead to the discovery of admissible evidence. For the reasons set forth below, opening the door to discovery should not await the Court's rulings on motions to dismiss that have not yet been filed and that will take several more months to resolve.

#### A.   Based On Prior Orders In The Private Class Actions, It Is Very Unlikely That The Court Will Simply Dismiss The States' Cases

Defendants object to discovery proceeding because they claim that the "complaints are deficient" and therefore are likely to be dismissed. Berman Decl., Exhibit 3. However, defendants overlook the Court's May 13, 2003 Memorandum and Order ("Order") in the class actions *sustaining* consumer protection claims and *rejecting* defenses based on preemption, the filed rate doctrine and the government action doctrine. *See* Order at 39-41, 46. In addition, the Court has already rejected defendants' Rule 9(b) defenses for drugs identified in the Master Consolidated Class Action Complaint ("MCC"). *Id.* at 45. Although the States do not boldly assume that the Court will automatically deny defendants' motions to dismiss here, it is nonetheless illogical for defendants to assume, as they do, that the Court will suddenly reverse

---

[3] Plaintiffs have conferred with defendants pursuant to Local Rules 7.1(a)(2) and 37.1 in a good faith attempt to narrow the areas of disagreement and have been unable to do so. *See* Berman Decl. ¶ 5.

1534.15 0017 MTN.DOC

course and rule against the States on the very same issues that were recently decided in favor of the private class action plaintiffs.

Moreover, the infirmities that the Court found in the MCC regarding standing and a failure to identify specific drugs at issue, *see, e.g.,* Order at 43, 45, should not concern the Court here for two reasons. First, the States are each "a different kind of plaintiff" from the plaintiffs in the private class actions. The scope and coverage of the Nevada and Montana Medicaid Programs are very broad. Both programs provide prescription drug coverage to all categorically needy eligible individuals (generally defined as AFDC-related, aged, blind, disabled), and Montana goes even a step further, extending the prescription drug benefit to "medically needy" eligible individuals and certain low-income families coping with serious and chronic mental illness. Nev. ¶ 125; Mont. ¶ 160. And both programs reimburse for all prescription drug expenditures incurred by their respective participants (minus a co-pay). Nev. ¶ 124; Mont. ¶ 159. In 2000 the Nevada Medicaid Program spent $50,370,705 for prescription drugs, Nev. ¶ 121, while Montana spent $60,174,213. Mont. ¶ 158. Indeed, the Montana Medicaid Program accounts for approximately 15% of all prescriptions written in the State of Montana. Mont. ¶ 161. Thus, Montana and Nevada have made reimbursements based on misrepresented AWPs for all of the drugs identified in the State complaints; so, too, have Nevada and Montana citizens, on whose behalf the State pursues claims in *parens patriae.*

Second, each drug for which relief is sought is identified in either (i) the body of the State complaints, or (ii) Appendix A attached to those complaints. So, for instance, Appendix A to the Montana Second Amended Complaint identifies approximately 327 drugs by manufacturer, name, generic name (if applicable), National Drug Code ("NDC") number.[4] Appendix A also sets forth the fraudulent AWPs for each drug, usually over multiple years. The Nevada

---

[4] The approximate 327 number is derived by counting the drugs, by name only, appearing for all manufacturers listed in Appendix A. It does not account for different dosages and packaging.

Amended Complaint sets forth the exact same information, but for a smaller group of defendants.[5]

## B. Prior Discovery Orders In The Private Class Actions Militate In Favor Of The Immediate Pursuit Of Discovery In The State Cases

Not only do these factors make it unlikely that the Court will find the Nevada and Montana complaints "deficient," they weigh in favor of permitting discovery to proceed immediately and without further delay. First, the Court permitted at least some discovery to move ahead in the private class actions even while the initial motions to dismiss were pending there. In Case Management Order No. 5, the Court ordered defendants to produce documents previously produced to any federal or state executive or legislative agency or entity in connection with any investigation into the use of AWP. CMO 5 at 1. The Court also ordered defendants to produce all documents previously produced in connection with any other legal proceeding in which the defendant was alleged to have "overstated the AWP, misstated the AWP, manipulated the AWP or otherwise failed to account for certain costs (e.g., the costs of free samples, purported educational grants, gifts, rebates, offsets, etc.) in the AWP . . . ." *Id.*

Second, the Court very recently permitted limited discovery to proceed in the class actions as to (i) drugs identified in the MCC, where (ii) it was alleged that a plaintiff had actually purchased the drug. CMO 7 at Part II.1. Thus, a fair extrapolation of CMO 7 is that discovery should be permitted to proceed with respect to all drugs identified in the Nevada and Montana complaints, because each State reimbursed for all of those drugs. Further, the state citizens on whose behalf the States seek relief, in addition to relief related to the State's own drug expenditures, also paid for all of the drugs listed. And each State has standing to bring claims on behalf of its citizens.

Notwithstanding these points, defendants take the position that CMO 7, which narrowly limits discovery in the consolidated private class actions, precludes *any* discovery by the States.

---

[5] Nevada is pursuing the remaining defendants in Nevada state court pursuant to the Court's remand order in "*Nevada I.*"

1534.15 0017 MTN.DOC

*See* Berman Decl., Exhibit 3. Although a fair extrapolation of CMO 7 can be made to authorize discovery here, the *limits* of CMO 7 clearly do *not* apply beyond the class actions. CMO 7 applies to briefing on motions to dismiss the Amended Master Consolidated *Class Action* Complaint and outlines the discovery permitted in the *class* cases by reference to the MCC. *See, e.g.*, CMO 7 at ¶ II.1 ("Plaintiffs shall conduct discovery on claims set forth against a defendant named in the MCC that was not dismissed as to both Class 1 and Class 2 claims. The specific drugs subject to discovery are those identified in the defendant-specific allegations of the MCC if the MCC identified a specific plaintiff who purchased the drug."). Thus, the very terms of the CMO 7 limit its application to the private class actions, and it does not contemplate application to the States. Furthermore, the States were not involved in the process that led to the entry of CMO 7; therefore, its limits should not in fairness bind the States.

## C.  Discovery Is Long Overdue

The long passage of time since these cases were first filed also militates strongly in favor of authorizing discovery to proceed immediately in the Nevada and Montana actions. As the Court is aware, a substantial amount of time elapsed while the federal court system determined the threshold jurisdictional issues. The initial removal of these cases, the MDL Panel's decision to transfer and consolidate, and the Court's own consideration of the motions to remand, which led to the Court's June 11, 2003, Memorandum and Order, collectively took over 14 months to play out. During this lengthy period, no discovery was permitted.

Defendants now advocate further delay. If defendants' position prevails, they will not begin producing documents until well into the next year, as the hearing on the motions to dismiss will not be held until December 3rd pursuant to the Court's August 12, 2003 Scheduling Order. The ultimate result of this delay, if permitted to occur, will be a nearly *two-year period* without any discovery. Nevada and Montana respectfully submit that a delay of this magnitude is unfair and potentially prejudicial in cases that invoke such important law enforcement and consumer

protection interests. Delaying discovery any further only serves to delay the ultimate resolution of these important issues on the merits.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the States' joint Motion to Compel.

By _____

Steve W. Berman
Sean R. Matt
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

DATED: September 3, 2003.

COUNSEL FOR PLAINTIFFS
STATE OF MONTANA AND
STATE OF NEVADA


Brian Sandoval
Attorney General of the State of Nevada
L. Timothy Terry
Assistant Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

ADDITIONAL COUNSEL FOR PLAINTIFF
STATE OF NEVADA

Mike McGrath
Attorney General of Montana
Kathy Seeley
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT 56920-1402
(406) 444-2026

1534.15 0017 MTN.DOC

Joseph P. Mazurek
CROWLEY, HAUGHEY, HANSON,
 TOOLE & DIETRICH PLLP
100 North Park Avenue, Suite 300
P.O. Box 797
Helena, MT  59601-6263
(406) 449-4165

ADDITIONAL COUNSEL FOR PLAINTIFF
STATE OF MONTANA

1534.15 0017 MTN.DOC