# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** ) ) ) ) | |
| **THIS DOCUMENT RELATES TO:** ) ) | |
| *Rice v. Abbott Laboratories, et al.*, N.D. Cal., Case No. C 02-3925 MJJ ) ) ) | **MDL NO. 1456** |
| *Thompson v. Abbott Laboratories, et al.*, N.D. Cal. Case No. C 02-4450 MJJ ) ) ) | **CIVIL ACTION: 01-CV-12257-PBS** |
| *Turner v. Abbott Laboratories, et al.*, N.D. Cal. Case No. C 02-5006 MJJ ) ) ) | **Judge Patti B. Saris** |
| *Congress of California Seniors v. Abbott Laboratories, et al.*, N.D. Cal., Case No. C 02-8179 MJJ ) ) ) ) | |

## DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND

# TABLE OF CONTENTS

PROCEDURAL HISTORY................................................................................................ 2

    A.   Allegations of the Complaints.......................................................................... 2

    B.   Removal And Transfer of These Cases.......................................................... 4

ARGUMENT ................................................................................................................. 4

I.     PLAINTIFFS' STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY
ERISA ............................................................................................................................ 4

    A.   Plaintiffs' State Law Claims "Relate To" ERISA Plans ................................. 5

    B.   Plaintiff's State Law Claim Is "Within the Scope" of ERISA's Civil Enforcement
Provision....................................................................................................................... 10

II.    PLAINTIFFS HAVE ARTICLE III STANDING........................................................ 14

III.   THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL THE
QUESTION OF WHETHER PLAINTIFFS' CLAIMS PRESENT A SUBSTANTIAL
FEDERAL QUESTION............................................................................................. 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 96 F.3d 932
(7th Cir. 1996) ............................................................................................................ 17

*Allen v. Wright*, 468 U.S. 737 (1984) .................................................................................. 15

*Badon v. RJR Nabisco Inc.*, 236 F.3d 282 (5th Cir. 2000) .................................................. 17

*Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003 (9th Cir. 1998) .................................... 10

*Barker v. Ceridian Corp.*, 122 F.3d 628 (8th Cir. 1997) ..................................................... 7

*Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir. 1990) ...... 10, 12

*California Division of Labor Standards v. Dillingham*, 519 U.S. 316 (1997) .................... 5

*Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790 (1st Cir. 2995) .............................. 6-9

*Central States, Southeast & Southwest Areas Health & Welfare Fund v.
Comprehensive Care Corp.*, 864 F.Supp. 831 (N.D. Ill. 1994) ................................. 12

*Central States, Southeast & Southwest Areas Health & Welfare Fund v.
Neurobehavioral Associates*, 53 F.3d 172 (7th Cir. 1995) ........................................ 12

*Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d 792 (11th Cir. 1999) ................... 17

*Davis v. SmithKline Beecham Clinical Laboratories, Inc.*, 993 F. Supp. 897 (E.D.
Pa. 1998) ................................................................................................................ 8-9, 13

*Grant v. Chevron Chem. Co.*, 2001 WL 839010 (E.D. La. July 24, 2001) ...................... 17

*Guckenberger v. Boston University*, 957 F. Supp. 306 (D. Mass. 1997) ......................... 15

*Hampers v. W.R. Grace & Co.*, 202 F.3d 44 (1st Cir. 2000) ......................................... 5, 6

*Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274 (1st Cir. 2000) ..................... 8

*Health Care Service Corp. v. TAP Pharmaceutical Products, Inc.*, 2003 U.S.Dist.
LEXIS 13556 (E.D. Tex. Aug. 1, 2003) ................................................................. 13-14

*Hotz v. Blue Cross & Blue Shield of Massachusetts*, 292 F.3d 57 (1st Cir. 2002) ............ 5

*Kentucky Laborers District Council Health & Welfare Fund v. Hope*, 861 F.2d
1003 (6th Cir. 1988) ............................................................................................. 13

*Lee v. America National Insurance Co.*, 260 F.3d 997 (9th Cir. 2001) ............................ 15

*Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987) ........................................ 5

*Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996) ...................................... 16

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 263 F. Supp.
2d 172 (D. Mass 2003) ................................................................................ passim

*Rosmer v. Pfizer Inc.*, 263 F.3d 110 (4th Cir. 2001) ........................................................ 17

*Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043 (2d Cir. 1991) .............................. 17

*State of Montana v. Abbott Laboratories*, 266 F. Supp. 2d 250 ...................................... 16

*United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992) ............................................. 15

*West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 ........... 16

## FEDERAL STATUTES

42 C.F.R. § 405.517 ..................................................................................................... 2

28 U.S.C. § 1292 .............................................................................................. 2, 17-18

28 U.S.C. § 1407 ........................................................................................................... 4

28 U.S.C. § 1441(a) ...................................................................................................... 4

28 U.S.C. § 1447 ......................................................................................................... 17

29 C.F.R. 2520.102-3(j)(3) (2003) ............................................................................... 7

29 U.S.C. § 1022 ........................................................................................................... 7

29 U.S.C. § 1132 ......................................................................................... 5, 10, 12, 14

29 U.S.C. § 1144 ........................................................................................................... 5

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 *et seq* ...................................................................... 4, 9

## MISCELLANEOUS

15A Charles A. Wright at al, *Federal Practice and Procedure* § 3914.11 (2d ed. Supp. 1992)............................................................................................................17

16A Charles A. Wright at al, *Federal Practice and Procedure* § 3931 (2d ed. Supp. 1996)............................................................................................................17

All of the defendants in these four actions respectfully submit this consolidated memorandum of law in opposition to the plaintiffs' motions to remand.

In 2002, four separate lawsuits were filed in state court in California against the Defendant pharmaceutical companies.  Each of the complaints alleged that Defendants fraudulently and deceptively misrepresented the average wholesale prices ("AWP") of their drugs, causing potentially millions of individuals and entities, including ERISA plans, ERISA participants and beneficiaries, and Medicare beneficiaries, to overpay for prescription drugs. Defendants removed these cases on two grounds – (1) the state law claims were completely preempted by ERISA because resolution of the claims would require a court to evaluate the terms of numerous ERISA plan documents; and (2) the state law claims asserted on behalf of Medicare beneficiaries present a substantial federal question because they depend entirely on the interpretation of federal Medicare law.

In their motions to remand, Plaintiffs never dispute that these complaints are brought on behalf of ERISA plans, participants, and beneficiaries.[1]  Nor do Plaintiffs dispute that these ERISA parties seek to recover monies expended on prescription drugs, or that the terms under which these ERISA parties may or may not have made prescription drug payments were set forth in the governing ERISA plans.  In these cases, therefore, the governing ERISA plans will be a critical factor in establishing any potential liability or possible damages.  Indeed, to the extent an ERISA plan reveals that prescription drug benefits or payments were not based upon AWP, the plan and its participants would have no claims at all against Defendants.  Thus, even if

---

[1] Although Plaintiff Turner purports to exclude from his class definition "those persons who obtain prescription drugs pursuant to any plan subject to [ERISA]," Turner Cplt. ¶ 52, he does not exclude ERISA plans themselves and fiduciaries to ERISA plans that are otherwise included within the broad class definition.

Plaintiffs prevailed on all their other issues, the Court cannot determine any possible liability or damages without examining the ERISA plan documents.  Under First Circuit law, this is enough for Plaintiffs' state law claims to be completely preempted by ERISA, creating the federal question necessary for removal.

Contrary to Plaintiffs' contention, in ruling on the consolidated motion to dismiss the Master Consolidated Class Action Complaint ("MCC"), *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 263 F. Supp. 2d 172 (D. Mass. 2003), this Court did not rule that all state law claims were not preempted by ERISA.  The Court did not even address complete preemption or removal, and the Court's finding that "there may be some damage theories that are preempted" by ERISA further supports a finding of preemption.  *Id.* at 192. Moreover, the Court held that in the context of the MCC that it "need not determine that issue [the extent of ERISA preemption] at this early stage of the proceedings."  *Id.*

With respect to the second basis on which these cases were removed, Defendants acknowledge that this Court has previously remanded Medicare-based AWP claims because the Medicare statute does not include a private right of action.  Defendants respectfully submit, however, that the question of whether Plaintiffs' claims on behalf of Medicare beneficiaries arise under federal law should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## PROCEDURAL HISTORY

### A.    Allegations of the Complaints

Like the Amended Master Consolidated Class Action Complaint, these Complaints allege that Defendants reported inflated AWPs for certain prescription drugs covered by "Medicare Plan B" to private third party publications.  Rice Cplt. ¶ 71; Thompson Cplt. ¶ 71; Turner Cplt. ¶ 63; CCS Cplt. ¶ 3.  According to Plaintiffs, the federal Medicare program

(pursuant to a federal regulation, 42 C.F.R. § 405.517 (2003)), the California Medicaid program, and thousands of unnamed private insurers and self-insured employers all rely on the published AWPs to establish reimbursement rates for prescription drugs. Rice Cplt. ¶ 60; Thompson Cplt. ¶ 60; Turner Cplt. ¶¶ 2-3; CCS Cplt. ¶ 3. Plaintiffs allege that Medicare beneficiaries have made inflated co-payments as a result of Medicare's reliance on the published AWPs, as have millions of other non-Medicare patients, private insurers, self-insured employers, and other "Third Party Payors" throughout the State of California that also rely upon the AWPs to set reimbursement rates for pharmaceuticals. Rice Cplt. ¶¶ 2, 3, 60; Thompson Cplt. ¶¶ 2, 3, 60; Turner Cplt. ¶¶ 2-3; CCS Cplt. ¶ 3.

Plaintiffs have brought these suits on behalf of themselves (the action by the Congress of California Seniors ("CCS") is brought on behalf of its members), and as representative and class actions on behalf of "all persons or entities in the State of California who paid directly, made co-payments for, or became obligated to pay the costs of pursuant to an insurance plan, Medicare Plan B pharmaceuticals manufactured and sold by defendants . . ." Rice Cplt. ¶ 62; Thompson Cplt. ¶ 62; *see also* Turner Cplt. ¶ 52. Plaintiffs include within the purported class "Patients" who have "paid for drugs manufactured and/or sold by Defendants which were subject" to AWP-based reimbursement and "those who were prescribed such drugs and either made co-payments or were obligated to reimburse for payment for such drugs, under any insurance policy or program by which the amount of co-payment was based on the total reimbursement by the government or private insurers." Rice Cplt. ¶ 2 n.1; Thompson Cplt. ¶ 2 n.1. Plaintiffs also include within the alleged class "Third-Party Payors," self-insured employers, and "insurers who have paid for others' prescription drugs." Rice Cplt. ¶¶ 2 n.2, 60; Thompson Cplt. ¶¶ 2 n.2, 60.

Plaintiffs claim that Defendants' alleged "AWP Scheme" violates Cal. Bus. and Prof. Code § 17200 *et seq.* Plaintiffs seek damages, injunctive relief, restitution, disgorgement of profits, and punitive damages.

### B.   Removal And Transfer of These Cases

Pursuant to 28 U.S.C. § 1441(a) – (b), Defendants removed the Rice Action in August 2002, the Thompson Action in September 2002, and the Turner and CCS actions in October 2002. On December 19, 2002, the CCS action was transferred to this Court pursuant to 28 U.S.C. § 1407 by the Judicial Panel on Multidistrict Litigation. The Rice and Thompson cases were both transferred to this Court by the Panel on February 20, 2003, and the Turner Action was transferred on April 11, 2003. Of these four actions, only the Rice Action had a motion to remand pending at the time of transfer to this Court.

### ARGUMENT

### I.   PLAINTIFFS' STATE LAW CLAIMS ARE COMPLETELY PREEMPTED BY ERISA

Plaintiffs never dispute that they seek to represent countless numbers of ERISA plans, participants, and beneficiaries. Plaintiffs seek to represent "all persons or entities in the State of California who paid directly, made co-payments for, or became obligated to pay the costs of pursuant to an insurance plan, Medicare Plan B pharmaceuticals manufactured and sold by defendants . . ." Rice Cplt. ¶ 62; Thompson Cplt. ¶ 62; *see also* Turner Cplt. ¶ 52. Plaintiffs further define "entities" to include various "Third-Party Payors," self-insured employers and "insurers." Rice Cplt. ¶ 2 n.2; Thompson Cplt. ¶ 2 n.2. Plaintiffs do not dispute that most of these insurers incurred obligations for co-payments under private insurance plans that are operated for ERISA-qualified benefit plans.

4

Plaintiffs also do not dispute that state law claims may create removable federal questions if they are completely preempted by ERISA. Nor do Plaintiffs dispute that a state law claim is completely preempted by ERISA – and therefore removable to federal court – if it (1) "relates to" an ERISA plan and thus falls within ERISA's broad preemption provision, 29 U.S.C. § 1144(a); and (2) falls "within the scope" of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Hotz v. Blue Cross & Blue Shield of Massachusetts*, 292 F.3d 57, 59 (1st Cir. 2002). This two-part test is satisfied in each of these AWP cases.[2]

## A.   Plaintiffs' State Law Claims "Relate To" ERISA Plans

ERISA has a very broad preemption clause, providing that ERISA "supersedes any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The words "relate to" are intended to apply in their broadest sense. *See California Div. of Labor Standards v. Dillingham*, 519 U.S. 316, 324 (1997) (noting that "relate to" has a "broad scope," "expansive sweep," and is "broadly worded," "deliberately expansive," and "conspicuous for its breadth"); *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 49 (1st Cir. 2000) (internal citations omitted).

Here, the state law claims "relate to" ERISA for two reasons. First, contrary to Plaintiffs' position, state law claims may be preempted if the Court must consult the plan documents to determine any applicable damages. This Court has already found that "there may be some damage theories that are preempted [by ERISA] (for example, whether the plans cover

---

[2] Plaintiffs' first argument, that the removal notices violated the "well-pleaded complaint rule," is a non-starter – one of the exceptions to the well-pleaded complaint rule is ERISA complete preemption. *See Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999) (ERISA complete preemption is an "exception" to the well-pleaded complaint rule).

co-payments)." *In re Pharm. Indus. AWP Litig.*, 263 F. Supp. 2d at 192.  The First Circuit has

held that "ERISA preempts state law causes of action for *damages* where the *damages* must be

calculated using the terms of an ERISA plan." *Hampers*, 202 F.3d at 52 (citing *Carlo v. Reed*

*Rolled Thread Die Co.*, 49 F.3d 790, 794-95 (1st Cir. 1995) (emphasis added)).  In *Carlo*, the

First Circuit found that plaintiff's state law claims were preempted by ERISA because a

calculation of damages was dependent, at least in part, on an analysis of an early retirement

program ("ERP") – an ERISA qualified plan:

> [W]e find that the Carlos' claims are preempted because they have
> "a connection with or reference to" [employer's] ERP.  If the
> Carlos were successful in their suit, the damages would consist in
> part of the extra pension benefits which [employer] allegedly
> promised him.  *To compute these damages would require the court
> to refer to the ERP as well as the misrepresentations made by
> [employer].  Thus, part of the damages to which the Carlos claim
> entitlement ultimately depends on an analysis of the ERP.*  To
> disregard this as a measurement of their damages would force the
> court to speculate on the amount of damages.  *Consequently,
> because the "court's inquiry must be directed to the plan," the
> Carlos' claims are preempted under the first test set forth in
> Ingersoll Rand.*

*Carlo*, 49 F.3d at 794 (emphasis added).

Second, many of the state law claims are also preempted because the underlying

ERISA plan documents will be critical in determining several key liability issues.  As this Court

recognized in its May 13 Opinion, "[a] state law claim is preempted when 'the Court's inquiry

must be directed to the plan' to resolve the claim." *In re Pharm. Indus.*, 263 F. Supp. 2d at 191

(quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990)).  This is the rule in the

First Circuit.  *See, e.g., Hampers* 202 F.3d at 52 (internal citations omitted) ("We have

consistently held  that a cause of action 'relates to' an ERISA plan when a court must evaluate or

interpret the terms of the ERISA regulated plan to determine liability under the state law cause of

action."); *Carlo*, 49 F.3d at 794 ("[B]ecause the court's inquiry must be directed to the plan, [plaintiffs'] claims are preempted" by ERISA). This test is satisfied here.

Under federal law, each ERISA-qualified plan must issue a "summary plan description," which "shall be furnished to participants and beneficiaries of the plan." 29 U.S.C. § 1022(a). The summary plan description is considered part of the ERISA plan, *Barker v. Ceridian Corp.*, 122 F.3d 628 (8th Cir. 1997), and is required to contain information about "eligibility for participation and benefits." 29 U.S.C. § 1022(b). Department of Labor regulations further provide that the summary plan description "shall include a description of: any cost-sharing provisions, including premiums, deductibles, coinsurance, and copayment amounts for which the participant or beneficiary will be responsible . . . [and] whether, *and under what circumstances, existing and new drugs are covered under the plan*[.]" 29 C.F.R. 2520.102-3(j)(3) (2003) (emphasis added).

Therefore, the plan documents of the thousands of ERISA plans included in Plaintiffs' proposed classes must include provisions about the conditions under which prescription drugs may be covered and the extent to which co-payments and deductibles may apply for such coverage. These documents, for example, will determine if reimbursement for prescription drugs for a particular employer is based upon AWP, provider acquisition cost, or some other formulation entirely, such as a negotiated discount for the particular product, which is common in the industry. Alternatively, some of these plans may provide that a participant need pay only a flat fee for a particular product, rather than a percentage of some calculated rate,

whether based on AWP or not.  In sum, these plan documents will determine which drugs are

covered and the circumstances of coverage and payment.[3]

In fact, the ERISA plan documents will be critical in determining the threshold

question of whether particular ERISA plans and beneficiaries have a claim *at all*.  If, for

example, an ERISA plan or its insurer does not utilize an AWP-based system of reimbursement

for prescription drugs, then the participants and beneficiaries of that particular plan would not

have any claim whatsoever.  Likewise, if a particular ERISA plan does not cover any drugs

manufactured by a particular defendant, then the participants and beneficiaries for that plan

would not have a claim against that defendant.  Under these circumstances, where the plan itself

is critical to determining the scope of liability or the amount of damages, state law claims "relate

to" an ERISA plan and are preempted.  *See, e.g., Harris v. Harvard Pilgrim Health Care, Inc.*,

208 F.3d 274, 281 (1st Cir. 2000) ("ERISA will be found to preempt state-law claims if the trier

of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's

claims."); *Hampers*, 202 F.3d at 52 ("ERISA preempts state law causes of action for damages

where the damages must be calculated using the terms of an ERISA plan."); *see also Carlo*, 49

F.3d at 794 (finding that ERISA preempted state law claims because court needed to consult

ERISA plan to calculate amount of damages).

*Davis v. SmithKline Beecham Clinical Labs., Inc.*, 993 F. Supp. 897, 899 (E.D.

Pa. 1998), is particularly relevant.  There, a class of patients and third-party payors who paid for

clinical laboratory tests sued to recover their payments because they thought the tests had been

---

[3] Certain Defendants have propounded jurisdictional discovery upon the Plaintiffs to confirm that payments were made pursuant to the terms of ERISA plans and that the relevant ERISA plan documents contain provisions about prescription drug reimbursement that are critical to the evaluation of Plaintiffs' claims.

billed incorrectly. Like these cases, the putative class encompassed ERISA plans, participants, and beneficiaries. Also, like these cases, the plaintiff argued that none of the state law statutes involved benefit plans so ERISA preemption should not apply. *Davis*, 993 F. Supp. at 898. The court rejected that claim, however, concluding that the state law claims were completely preempted. The court found that the "determination of the amounts of overpayments to [SmithKline] by ERISA plans and ERISA-covered class members like [plaintiff] will require the examination and interpretation of ERISA plans setting forth the criteria for calculating such payments." *Id.* at 899 (internal citation omitted). The same is true here, only more so. Here, the ERISA plans must be examined not only to determine the extent or amounts of the payments in question, but to determine, based on the coverage provisions in the plan documents, whether any claim for liability could exist at all.

Finally, Plaintiffs contend that this Court, in ruling on the motion to dismiss the MCC, has already decided that claims brought under California's unfair and deceptive practices statute, § 17200, are not preempted by ERISA because § 17200 is a law of "general applicability." But the question of whether the statute involved is of "general applicability" is but one of several tests used to determine whether a state law claim is preempted. As this Court recognized, a state law claim is *also* preempted if "the Court's inquiry must be directed to the plan to resolve the claim." *In re Pharm. Indus. AWP Litig.*, 263 F. Supp. 2d at 191 (internal quotation marks omitted). If the only question was whether general state deceptive practices statutes related to ERISA, then no such claims (or those under common law fraud, for example) would ever be preempted by ERISA. But several courts have concluded that claims under state deceptive practices statutes and common law fraud were preempted because the claims could not be resolved without reference to the ERISA plan documents. *See Carlo*, 49 F.3d at 795 (claim

for negligent misrepresentation preempted by ERISA); *Davis*, 993 F. Supp. at 898 (claim under Pennsylvania Unfair Trade Practices and Consumer Protection Act preempted by ERISA). The test is not whether the state laws themselves relate to ERISA or benefit plans – obviously they do not – but whether the underlying claims can be resolved without an examination of thousands of ERISA plan documents. *Davis*, 993 F. Supp. at 898; *see also Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1010 (9th Cir. 1998) (holding plaintiffs' state law tort claims, breach of contract claim and claim under the Washington Consumer Protection Act, none of which specifically related to ERISA plans, were preempted by ERISA). Here, they cannot, and so the state law claims are preempted by ERISA.

### B.   Plaintiff's State Law Claim Is "Within the Scope" of ERISA's Civil Enforcement Provision

The second step in the complete preemption analysis is determining whether Plaintiffs' state law claims fall "within the scope" of 29 U.S.C. § 1132(a), ERISA's civil enforcement provision. Section 1132(a) provides, in pertinent part, that a civil action may be brought

> (3) by a *participant, beneficiary or fiduciary* (A) to *enjoin* any act of practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) enforce any provisions of this subchapter of the terms of the plan. (emphasis added).

Thus, a claim falls within the scope of § 1132(a) – and is completely preempted and therefore removable – if (1) it is brought by a participant in, a beneficiary of, or a fiduciary to an ERISA plan, and (2) it seeks equitable relief to redress violation of or to enforce the terms of ERISA or an ERISA plan. *See* § 1132(a)(3); *see also Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir. 1990).

10

First, Plaintiffs concede that their claims are brought on behalf of potentially millions of ERISA participants, beneficiaries, and fiduciaries. *See* Rice Cplt. ¶ 62 (claim brought on behalf of "all persons or entities in the State of California" who made a payment for a "Medicare Plan B pharmaceutical" based, in whole or in part, on AWP, "pursuant to an insurance plan"); Thompson Cplt. ¶ 62 (same); Turner Cplt. ¶ 52 (same). Second, Plaintiffs clearly seek injunctive relief as well as other "equitable" relief – restitution of alleged overpayments and disgorgement of alleged "wrongful" profits – which are the forms of relief provided for in ERISA § 1132(a)(3). *See* Rice Cplt. ¶ 91 (seeking "restitution on behalf of individual Patients for the wrongful overcharges they were forced to pay as a result of the AWP scheme, and disgorgement of the wrongful profits earned by the defendants"); Thompson Cplt. ¶ 91 (same); Turner Cplt. ¶ 77 (same); CCS Cplt. ¶ 300 (seeking "injunctive relief, including restitution and/or disgorgement"). Although Plaintiffs assert that their claims do not seek redress under § 1132(a)(3), their claims and those of the putative classes seek recoupment of plan funds that Plaintiffs claim were improperly expended. Rice Cplt. ¶ 91 (seeking restitution for "wrongful overcharges they were forced to pay as a result of the AWP scheme"); Thompson Cplt. ¶ 91 (same); Turner Cplt. ¶ 77 (same). In this regard, these Plaintiffs are using the state law claims as "alternative state-law mechanisms for the enforcement of their rights" under the governing ERISA plan documents. *In re Pharm. Indus. AWP Litig.*, 263 F. Supp. 2d at 191; *see also Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 141 (1st Cir. 2000). As set forth below, claims brought by health plans and ERISA beneficiaries to recover ERISA plan assets wrongfully paid out have routinely been found to fall within the scope of ERISA's civil enforcement provisions.

11

In fact, Plaintiffs' claims are very similar to those brought in other cases under ERISA. Those cases involved claims, like those alleged here, for recovery of allegedly mistaken payments to medical service providers. For example, in *Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir. 1990), the Eleventh Circuit held that an ERISA plan fiduciary could sue under ERISA § 1132(a)(3) to recover money paid to a physician who did not actually provide services to plan members, as required to obtain payment under the applicable ERISA plan. 913 F.2d at 1549. The court rejected the physician's argument that "because he is a non-fiduciary, non-party to the plan . . . § 1132(a)(3) should not apply to this case." *Id.* at 1547. Instead, the court reasoned that ERISA § 1132(a)(3) placed "no limitation on the types of defendants properly subject to an enforcement suit by a fiduciary" and that allowing an ERISA cause of action would "preserve the integrity of ERISA-governed funds." *Id.* at 1548. Accordingly, the court affirmed the district court's holding that "[a]n equitable action to recover benefits erroneously paid . . . falls within the clear grant of jurisdiction contained in 29 U.S.C. § 1132(a)(3)." *Id.* at 1546 (internal quotations omitted).

Likewise, in *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral Associates*, 53 F.3d 172 (7th Cir. 1995), the Seventh Circuit held that an ERISA plan fiduciary could sue under ERISA § 1132(a)(3) to recover a mistaken overpayment to a third-party health care provider, because the suit sought "both to redress a violation of the plan and to enforce the recovery of the overpayments portion of its plan." 53 F.3d at 173.[4] In addition, in *Central States, Southeast & Southwest Areas Health & Welfare Fund v.*

---

[4] The *Neurobehavioral* court also noted that the plaintiff could not pursue such claims in state court because state law claims seeking such reimbursement would be preempted. 53 F.3d at 174-75.

*Comprehensive Care Corp.*, 864 F. Supp. 831, 834 (N.D. Ill. 1994), the court held that an ERISA fiduciary could recover an erroneously paid benefit from a health care provider because "Congress intended to empower fiduciaries, beneficiaries and participants to redress plan violations generally without regard to how or under what particular circumstances the Plan was violated." *See also Kentucky Laborers Dist. Council Health & Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir. 1988) (holding that action for restitution of ERISA funds must be resolved in a federal forum); *Davis*, 993 F. Supp. at 899 (finding complete preemption where plaintiff sought restitution of alleged overpayments made by ERISA plans and ERISA insureds).

*Health Care Service Corp. v. TAP Pharmaceutical Products, Inc.*, 2003 U.S. Dist. LEXIS 13556 (E.D. Tex. Aug. 1, 2003), is also instructive. In that AWP case, HCSC, an administrator of an employer-sponsored benefit plan, brought suit in state court against several pharmaceutical companies, alleging that the companies improperly inflated the AWP of the drug Lupron, causing this third-party payor to pay for allegedly inflated patient claims. *Id.* at *2-3. Thus, like this case, HCSC was seeking to recover plan funds that had been wrongly expended as a result of the alleged AWP scheme. Defendants removed the case to federal court, arguing that HCSC's claims were completely preempted by ERISA because HCSC was seeking to recover plan assets that had been wrongfully paid. The court found that plaintiffs sought injunctive relief for recovery of plan assets. *Id.* at 6. Next, the court found that the claim for relief sought to redress a violation of ERISA – the "disposition of plan assets that are alleged to have wrongfully [been] obtained" – even though the state law itself had nothing to do with ERISA. The court

thus denied plaintiff's motion to remand, holding that HCSC's claims were "within the scope of 29 U.S.C. § 1132 and [therefore] complete preemption jurisdiction applies." *Id.*[5]

Just like these cases, these Plaintiffs seek to recoup payments and plan assets that ERISA plans and beneficiaries allegedly wrongfully paid out under the ERISA plan's prescription drug benefit provisions. These claims for restitution and injunctive relief by these ERISA plans and beneficiaries fall "within the scope" of ERISA's civil enforcement provisions.

## II.    PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs also argue that these cases should be remanded because they lack Article III standing to bring suit in federal court. They claim that their suits under Cal. Bus. & Prof. Code § 17200 *et seq.* are merely representative actions on behalf of the general public, and that they lack standing because they do not allege that they have suffered any injury themselves. Plaintiffs' argument is without merit. Each of the Plaintiffs has alleged an injury sufficient to confer Article III standing.[6]

Each of the individual Plaintiffs have brought suit *on their own behalf*, as well as on behalf of the general public and as a representative of a class of similarly situated persons. Rice Cplt. ¶ 1; Thompson Cplt. ¶ 1; Turner Cplt. ¶ 1. Significantly, each of the individual Plaintiffs alleges that he or she "has been administered certain of the drugs which are part of the AWP scheme, *and has made payments for these drugs pursuant to his insurance plan.*" Rice Cplt. ¶ 16; Thompson Cplt. ¶ 16; Turner Cplt. ¶ 12 (emphasis added). Each individual has thus alleged a personal injury arising from his or her alleged overpayment for at least one prescription

---

[5] The court also held in the alternative that the defendant companies were ERISA fiduciaries, a finding that this Court need not (and should not) make.

[6] Revealingly, Plaintiff John Rice did not raise this argument in his initial motion to remand filed in the Northern District of California.

drug. Therefore, Plaintiffs' effort to seek redress for this injury creates a justiciable case or controversy. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege injury fairly traceable to the defendant's allegedly unlawful conduct[.]").[7]

The association Plaintiff, CCS, likewise has sufficiently alleged Article III standing. To have Article III standing, an association must establish that "at least one of [its] members possesses standing to sue in his or her own right." *United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir. 1992); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 320-21 (D. Mass. 1997) (same). CCS has brought suit on behalf of itself and its members, as well as the general public. CCS Cplt. ¶ 1. Moreover, CCS has alleged that its "members purchase, and have purchased, prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers *and were injured by the illegal conduct alleged herein*." CCS Cplt. ¶ 13 (emphasis added). Finally, CCS's claim that it lacks Article III standing is particularly puzzling in light of the fact that CCS was a named plaintiff in the original AWP complaint filed in this Court, in which CCS specifically alleged that it had standing. *Citizens for Consumer Justice, et al. v. Abbott Laboratories, Inc., et al.*, Civ. No. 01-12257-PBS, ¶ 7 (D. Mass., filed Dec. 19, 2001). CCS has alleged that its members have suffered injury traceable to the Defendants' allegedly unlawful conduct. This is enough to satisfy the Article III standing requirements.

---

[7] This is not to suggest that Plaintiffs have standing to bring a suit against each Defendant. As the Court held in its May 13 Opinion, to bring an AWP claim against a particular defendant, a Plaintiff must specifically allege that it purchased a specific drug from that defendant. *In re Pharm. Indus.*, 263 F. Supp. 2d at 192-94. Rather, in this particular situation, each of the Plaintiffs has standing to sue at least one Defendant because each Plaintiff claims to have purchased at least one covered drug. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002-03 (9th Cir. 2001) ("presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide.").

III.   **THE COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL THE QUESTION OF WHETHER PLAINTIFFS' CLAIMS PRESENT A SUBSTANTIAL FEDERAL QUESTION**

The second basis on which Defendants removed these cases is that Plaintiffs' state law claims raise a substantial federal question in that they require interpretation of Medicare law. Although this Court has ruled that "an essential element" of state law claims similar to the ones brought here "is proof of a discrepancy between the AWPs reported by [defendants] and the meaning of AWP under the Medicare statute," *State of Montana v. Abbott Labs.*, 266 F. Supp. 2d 250, 255 (D. Mass. June 11, 2003), the Court remanded the Minnesota case because the Medicare statute does not contain a private right of action. *Id.* at 256. *See also State of Minnesota v. Pharmacia Corp.*, Civil Action No. 03-10069-PBS, slip op. at 4-5 (D. Mass. Aug. 20, 2003) (denying motion for reconsideration).

In light of those decisions, Defendants in these cases do not seek to relitigate in this Court the federal question issue decided in those rulings.  Defendants respectfully submit, however, that this issue is appropriate for appellate review.  This Court has recognized that other circuits have found federal jurisdiction under statutes that do not include a private cause of action. *State of Minnesota*, slip op. at 3.[8]  Furthermore, no First Circuit case directly addresses this point.  Moreover, the issue is an important one that will have a profound effect on the extent to which AWP litigation can be centralized in this Court or fragmented among several states.

---

[8] *See, e.g., Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (federal question jurisdiction existed because resolution of plaintiff's claims required the court to construe Title IV of the Clean Air Act, even though that statute did not provide for a private right of action); *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) (federal question jurisdiction existed over plaintiff's state law claims because the claims required interpretation of the Condominium and Cooperative Conversion Protection and Abuse Relief Act, which does not provide a private cause of action).

In order to permit appellate review of this issue, this Court should deny Plaintiffs' motions to remand and certify the federal question issue for interlocutory appeal. This procedure is required because 28 U.S.C. § 1447(d) makes orders granting motions to remand non-appealable. On the other hand, orders denying motions to remand are regularly certified and accepted for immediate interlocutory appeal under 28 U.S.C. § 1292(b).[9] This procedure has been approved by leading commentators: "A court faced with a close question of removability may be inclined to deny remand and certify an interlocutory appeal in order to provide the opportunity for appellate review that would be lost if remand were granted . . ." 15A Charles A. Wright at al, *Federal Practice and Procedure* § 3914.11 (2d ed. 1992). These authors further state that "[s]o long as the question is reasonably close, it does not subvert § 1447(d) to make this use of § 1292(b)." 16A Charles A. Wright at al, *Federal Practice and Procedure* § 3931 (2d ed. Supp. 1996). For example, in *Grant v. Chevron Chem. Co.*, 2001 WL 839010, at *3 (E.D. La. July 24, 2001), *aff'd*, 309 F.3d 864 (5th Cir. 2002), the district court denied a motion to remand solely "[t]o allow the Fifth Circuit to address the split among the district judges on this [jurisdictional] issue." In view of the circuit split on the issue of whether a federal cause of action is a prerequisite for federal jurisdiction, the issue is undeniably a close one. The court therefore should deny the remand motion in order to make an interlocutory appeal possible.

Under § 1292(b), a district judge may certify for interlocutory appeal an order not otherwise appealable that involves "a controlling question of law as to which there is substantial ground for difference of opinion," and where an immediate appeal "may materially advance the

---

[9] *See, e.g.*, *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 113 (4th Cir. 2001); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1000 (9th Cir. 2001); *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 284 (5th Cir. 2000); *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d 792, 794 (11th Cir. 1999); *In re Air Crash Disaster Near Roselawn, Indiana on Oct. 31, 1994*, 96 F.3d 932, 937 (7th Cir. 1996); *Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1045 (2d Cir. 1991).

ultimate termination of the litigation." Given the impact that this Court's decision will have on the future of this litigation and the fact that numerous other courts have decided the federal question issue differently than this Court has, the jurisdictional question involved in this case warrants interlocutory appeal under § 1292(b).

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiffs' motions for remand.

**ON BEHALF OF ALL DEFENDANTS IN THE ABOVE-CAPTIONED ACTIONS**

BY: _____

Geoffrey E. Hobart
BBO #547499
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 854-1419
Fax: (617) 523-6850

Mark H. Lynch
Ethan M. Posner
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 662-5544
Fax: (202) 778-5544

Frederick G. Herold
Dechert LLP
975 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 813-4930
Fax: (650) 813-4848

DATE: September 5, 2003

*Counsel for SmithKline Beecham Corp. d/b/a
GlaxoSmithKline ("GSK")*

## Certificate of Service

I hereby certify that on September 5, 2003, I caused a true and correct copy of this Motion to be served on all counsel by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

Geoffrey E. Hobart

# HOLLAND & KNIGHT LLP

| | |
|---|---|
| Annapolis | San Francisco |
| Atlanta | Seattle |
| Bethesda | Tallahassee |
| Boston | Tampa |
| Bradenton | Washington, D.C. |
| Chicago * | West Palm Beach |
| Fort Lauderdale | |
| Jacksonville | International Offices: |
| Lakeland | Caracas** |
| Los Angeles | Helsinki |
| Miami | Mexico City |
| New York | Rio de Janeiro |
| Northern Virginia | São Paulo |
| Orlando | Tel Aviv** |
| Portland | Tokyo |
| Providence | |
| St. Petersburg | *Holland & Knight LLC |
| San Antonio | **Representative Office |

10 St. James Avenue
Boston, Massachusetts 02116

617-523-2700
617-523-6850 Fax
www.hklaw.com

September 5, 2003

**GEOFFREY E. HOBART**
617-854-1419
geof.hobart@hklaw.com

<u>VIA HAND DELIVERY</u>

Tony Anastas
Clerk of Courts
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

      Re:   In re: Pharmaceutical Industry Average Wholesale Price Litigation,
             <u>MDL No. 1456, Civil Action: 01-CV-12257-PBS</u>

Dear Mr. Anastas:

    Enclosed for filing please find Defendants' Consolidated Memorandum Of
Law In Opposition To Plaintiffs' Motions To Remand.

    Thank you for your attention to this matter.

                    Very truly yours,

                    Geoffrey E. Hobart

enc.

cc:  All Counsel of Record (via Verilaw)