UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL NO. 1456 ) ) ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) JUDGE PATTI B. SARIS |
| *State of Montana v. Abbott Labs, Inc., et al.*, D. Mont. Cause No. CV-02-09-H-DWM | ) ) ) ) |
| *State of Nevada v. American Home Products Corp., et al.*, D. Nev. Cause No. CV-N-02-0202-ECR | ) ) ) ) ) |

### MEMORANDUM OF BOEHRINGER INGELHEIM CORP., BEN VENUE LABORATORIES, INC. AND BEDFORD LABORATORIES IN SUPPORT OF MOTION TO DISMISS STATE OF MONTANA'S SECOND AMENDED COMPLAINT AND STATE OF NEVADA'S AMENDED COMPLAINT

#### INTRODUCTION

Defendants, Boehringer Ingelheim Corporation, Ben Venue Laboratories, Inc. and Bedford Laboratories (together "Defendants") through undersigned counsel, respectfully move this Court to dismiss the State of Montana's Second Amended Complaint and the State of Nevada's Amended Complaint for the reasons contained in the Consolidated Memorandum in Support of Defendants' Motion to Dismiss ("Consolidated Memorandum") incorporated herein by reference.

In addition, Defendants request to be dismissed on the grounds that neither Montana nor Nevada have pled fraud with particularity as required by Fed. Civ. R. 9(b). Finally, Boehringer Ingelheim Corporation ("Boehringer Ingelheim") requests to be dismissed as none of the drugs

ascribed to it in Appendix A to the Complaints are manufactured or distributed by Boehringer Ingelheim, and hence, do not state any injury fairly traceable to an act of Boehringer Ingelheim.

## ARGUMENT

### Neither Montana Nor Nevada Has Pled Fraud With Particularity As Required By Federal Rule Of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) requires that all claims in which fraud "lies at the core of the action" be pled with particularity. *Hayduk v. Lanna*, 775 F.2d 441, 443-44 (1st Cir. 1985). The District of Massachusetts has stated that the Rule 9(b) particularity requirement must be "strictly construed." *Curtis v. Duffy*, 742 F.Supp. 34, 38 (D.Mass. 1990). Merely "salt[ing] the complaint with the words 'falsely' and 'fraudulently'" is not sufficient to meet the particularity requirement of Rule 9(b). *Id.* at 38.

Both Nevada and Montana (together the "States") have liberally seasoned their Complaints with generalized allegations. They claim that Defendants "market[ed] the spread" between Average Wholesale Price ("AWP") and the price "apparently offered to wholesalers, providers, and other intermediaries." Mont. Compl. ¶¶ 342, 344; Nev. Compl. ¶¶ 251, 253. They allege that Defendants utilized unspecified "off-invoice" inducements as a means to conceal the "actual wholesale price." Mont. Compl. ¶ 344; Nev. Compl. ¶ 253. They jumble Defendants along with numerous other pharmaceutical companies, alleging all failed to properly report Best Price and/or Average Manufacturer Prices ("AMP"). Mont. Compl. ¶ 612; Nev. Compl. ¶ 392.

Montana alleges these acts constitute violations of its Deceptive Trade Practices Act,[1] its Medicaid Fraud Act,[2] and its False Claims Act.[3] Nevada alleges these acts violate its own

---

[1] Mont. Code Ann. § 30-14-101.
[2] Mont. Code Ann. § 53-6-160.
[3] Mont. Code Ann. § 17-8-231.

2

Deceptive Trade Practices Act,[4] Medicaid Fraud Act,[5] and the Nevada RICO Act.[6]  However, even aside from the fatal errors to these claims outlined in the Consolidated Memorandum, these claims also fail to allege fraud with the particularity demanded by Rule 9(b).

First, according to the States' own Complaints, Defendants Boehringer Ingelheim Corporation and Ben Venue Laboratories, Inc. are two separate corporate entities.  Mont. Compl. ¶¶ 53-57; Nev. Compl. ¶¶ 40-44.  Nevertheless, the States insist on making allegations about the purported fraudulent behavior of the "Boehringer Group," without identifying which particular corporate entity was supposed to have committed the specific act.  *See, e.g.*; Mont. Compl. ¶ 344 ("The Boehringer Group provided purchasers with substantial discounts meant to gain their patronage . . . ."); Nev. Compl. ¶ 241 ("The Boehringer Group has stated fraudulent AWPs for all or almost all of its drugs . . . .").  As between Boehringer Ingelheim Corporation and Ben Venue, the States do not consistently identify which entity was purported to have fraudulently reported an AWP, *see* Mont. Compl. ¶ 255; Nev. Compl. ¶ 346, and wholly fail to identify either corporation as having fraudulently concealed a Best Price or AMP.  *See* Mont. Compl. ¶¶ 603-634; Nev. Compl. ¶¶ 383-403.

Second, all of the drugs identified in Appendix A to the Nevada Complaint and Appendix A to the Montana Complaint are multi-source drugs.  This Court has already dismissed such broad allegations of fraud with respect to multi-source drugs for which no specific defendant, allegedly fraudulent price, and purchaser is identified.  *See In re Pharm. Indus. Ave. Wholesale Price Litig.*, 263 F.Supp.2d 172, 194 & n.11 (D.Mass. 2003) [hereinafter *In re AWP Litig.*].  The fact that Montana and Nevada allege that they bring this suit in a *parens patriae* representative capacity does not relieve them of the duty under Rule 9(b) that they specify *which* Medicare

---

[4] Nev. Rev. Stat. § 598.0903 et seq.
[5] Nev. Rev. Stat. § 422.540.

3

beneficiaries and *which* private health plans were allegedly defrauded by the acts of *which* Defendants. *See In re Tobacco/Governmental Health Care Costs Litig.*, 83 F.Supp.2d 125, 135 n.8 (D.D.C. 1999) (noting that the country of Guatemala's RICO complaint could be dismissed for failure to plead fraud with particularity).

Third, the States allege that Defendants utilized "off-invoice inducements" and "provided purchasers with substantial discounts meant to gain their patronage while maintaining the fiction of a higher wholesale price." Mont. Compl. ¶ 344; Nev. Compl. ¶ 253. However, the States fail to identify when these off-invoice inducements were to have occurred, what these off-invoice inducements were, what purchasers were purportedly lured with such discounts, or even how these inducements allegedly contributed to the injury of any particular party. Such vague allegations of fraud are precisely what Rule 9(b) is intended to prevent.

Because the States have failed to plead their claims of fraud with particularity as required by federal law, their claims must be dismissed.

**Boehringer Ingelheim Corporation Should Be Dismissed As It Does Not Manufacture, Distribute, Market, or Sell Any Drug Ascribed to It In Appendix A to the Complaints**

As sworn in the attached declaration, Boehringer Ingelheim does not manufacture, distribute, market, or sell any of the drugs described in Appendix A to the Complaints. *See* Ex. A. Consequently, the States have failed to ascribe any injury "fairly traceable" to the behavior of Boehringer based on its relationship to these drugs. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (injury must be "fairly . . . trace[able] to the challenged action of the defendant"). Having alleged no injury that is fairly traceable to the acts of Boehringer

---

[6] Nev. Rev. Stat. § 207.400 et seq.

4

Ingelheim, the States do not have standing to sue Boehringer Ingelheim for the injuries based on its purported manufacture or distribution of these drugs. *See Allen v. Wright*, 468 U.S. 737, 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct . . . ."); *In re AWP Litig.*, 263 F.Supp.2d at 193 (citing same). Boehringer Ingelheim should thus be dismissed from the Complaints.

## CONCLUSION

For the foregoing reasons, as well as the reasons contained in the Consolidated Memorandum, the States' Complaints should be dismissed.

Respectfully submitted,

Randal C. Teague (493800)
VORYS, SATER, SEYMOUR AND PEASE LLP
1828 L Street N.W., 11th Floor
Washington, D.C. 20036-5109
Tel: 202-467-8800
Fax: 202-467-8900

*Attorney for Defendants
Boehringer Ingelheim Corp., Ben Venue
Laboratories, Inc. and Bedford Laboratories*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on all enrolled counsel via Verilaw pursuant to this Court's Case Management Order 2 on September 15, 2003.

Randal C. Teague

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) MDL NO. 1456 <br> ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) JUDGE PATTI B. SARIS |
| *State of Montana v. Abbott Labs, Inc., et al.*, D. Mont. Cause No. CV-02-09-H-DWM | ) ) ) |
| *State of Nevada v. American Home Products Corp., et al.*, D. Nev. Cause No. CV-N-02-0202-ECR | ) ) ) ) |

## DECLARATION OF HERMANN TETZNER

1. My name is Hermann Tetzner and I am Vice President of Finance, Treasurer and Chief Financial Officer of the Boehringer Ingelheim Corporation.

2. I am aware of the activities and functions of the Boehringer Ingelheim Corporation;

3. I am aware that the Boehringer Ingelheim Corporation has been named as a defendant in the State of Nevada's Amended Complaint in the matter styled: State of Nevada v. American Home Products Corp., et al. D. Nev. Cause No. CV-N-02-0202-ECR and in the State of Montana's Second Amended Complaint in the case styled: State of Montana v. Abbott Labs., Inc., et al., D. of Montana Cause No. CV-02-09-H-DWM, both of which are presently before Judge Patti B. Saris of the United States District Court for the District of Massachusetts in the matter styled: In Re Pharmaceutical Industry Average Wholesale Price Litigation MDL No. 1456, Civil Action: 01-CV-12257-PBS;

4. The Boehringer Ingelheim Corporation does not manufacture, market, distribute or sell any of the pharmaceutical products ascribed to it as a manufacturer in Appendix A of the Nevada and Montana Complaints described above.

I declare, pursuant to 28 USC §1746, under penalty of perjury that the foregoing is true and correct based on my own knowledge and after reasonable inquiry of available sources of information at the Boehringer Ingelheim Corporation.

Executed this 12th day of September, 2003.

HERMANN TETZNER