# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | M.D.L. No. 1456<br><br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Montana v. Abbott Labs, Inc., et al.*, D. Mont. Cause No. CV-02-09-H-DWM<br><br>*State of Nevada v. American Home Products Corp., et al.*, D. Nev. Cause No. CV-N-02-0202-ECR | |

## INDIVIDUAL MEMORANDUM OF PFIZER INC. IN SUPPORT OF ITS MOTION TO DISMISS THE STATE OF MONTANA'S SECOND AMENDED COMPLAINT AND STATE OF NEVADA'S AMENDED COMPLAINT

The schemes alleged by Montana and Nevada are even larger and more complex than those in the Amended Master Consolidated Class Action Complaint ("AMCC"), yet the specific fraud allegations related to Pfizer remain exceedingly sparse.[1] Both states' Complaints, which were filed by the same counsel, are identical as to Pfizer. Of the hundreds of paragraphs in each Complaint, only eight make any allegations as to Pfizer. Even these paragraphs allege nothing that would approach the particularity required by Rule 9(b) and this Court's May 13, 2003 Order, *In re Pharmaceutical Indus. AWP Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003) (the "May 13 Order").[2]

The Complaints appear to allege two types of fraud. First, the states assert, as *parens patriae*, claims arising from the impact of the alleged AWP scheme on Medicare reimbursement. These claims are nearly identical to, and subject to the same infirmities as, the claims made by the class plaintiffs' in the AMCC, because they fail to allege a fraudulent spread between published AWPs and alleged secret, discounted transaction prices. Moreover, they only allege the existence of a published AWP for some of Pfizer's drugs.[3] Second, both states allege that

---

[1] The AMCC is presently subject to a motion to dismiss for failing to meet the requirements of Fed. R. Civ. P. 9(b).

[2] Both Complaints contain an identical paragraph that alleges Pfizer's address and contains the statement, "Pfizer is one of the largest pharmaceutical companies in the United States, whether measured by number of prescriptions written, revenues, or market capitalization." Mont. Cplt. ¶ 91; Nev. Cplt. ¶ 63. Plaintiffs fail to explain what this has to do with anything, let alone what it has to do with a claim of fraud. More than any other allegation in the Complaints, this paragraph reveals the true reason why plaintiffs added Pfizer to this case.

[3] Pfizer joins in and incorporates by reference the Consolidated Memorandum in Support of Defendants' Motion to Dismiss the State of Montana's Second Amended Complaint and the State of Nevada's Amended Complaint (filed September 15, 2003) ("Consolidated Memorandum"). Pfizer writes separately to highlight the deficiencies of the specific allegations relating to Pfizer. Pfizer also joins in and incorporates by reference the arguments made in the briefs filed by the other defendants to the extent they apply to Pfizer.

Pfizer engaged in fraud with respect to the Medicaid program by fraudulently inflating its Best Price and Average Manufacturer's Price. The Complaints, however, fail to allege which drugs are reimbursed based on which formula. Moreover, these claims are economically irrational as to all multi-source drugs, because the alleged conduct would benefit the states at Pfizer's expense. Finally, plaintiffs' allegations of specific "Best Price" misconduct by Pfizer are too vague to support their vast claims. These claims must, therefore, be dismissed.

## I. MONTANA AND NEVADA FAIL TO ALLEGE WITH PARTICULARITY THAT PFIZER ENGAGED IN ANY FRAUDULENT CONDUCT RELATED TO AWP.

The gravamen of plaintiffs' AWP claims is that defendants committed fraud by inflating AWPs reported for their pharmaceutical products, Mont. Cplt. ¶¶ 6-10; Nev. Cplt. ¶¶ 6-10, while secretly charging lower prices to providers and others in the distribution chain. Mont. Cplt. ¶¶ 177-78; Nev. Cplt. ¶¶ 140-41. Montana's and Nevada's Complaints, however, contain no more detailed allegations than the AMCC and both fail to clearly and concisely allege a fraudulent AWP for any Pfizer drug. Instead, Montana and Nevada merely attach Appendices to their Complaints that restate the published AWP for some of Pfizer's products. For the reasons discussed in Pfizer's Individual Memorandum in Support of Defendants' Motion to Dismiss the AMCC, incorporated here by reference, this does not meet the requirements of the May 13 Order because it fails to show how or why the given AWP was fraudulent.[4]

---

4/ Montana and Nevada are represented by the same attorneys as the class, who were admonished at the hearing on defendants' motion to dismiss: "You've got to meet 9(b) requirements. You've got to *particularize* exactly what drugs, *exactly what the fraud is*, which plaintiffs paid for what drugs." See Transcript of Jan 13, 2003 Hearing on Motions to Dismiss, at 74 (emphasis added).

## II. ALL CLAIMS RELATING TO MEDICAID REBATES MUST BE DISMISSED.

Montana's and Nevada's allegations about Pfizer's multi-source drugs run contrary to the paradigm established by the Complaints and are, in fact, economically irrational. The rebates for non-innovator, multi-source drugs are not related to the "Best Prices" that the states perfunctorily allege Pfizer inflated. Instead, the rebate is 11% of the Average Manufacturer Price ("AMP"). Mont. Cplt. ¶ 606, Nev. Cplt. ¶ 386. The Complaints also allege that defendant's fraudulently inflated their AMPs. Mont. Cplt. ¶ 612, Nev. Cplt. ¶ 396. But this claim is economically irrational. It is a matter of simple mathematics that if the AMP increases, then 11% of the AMP (i.e., the states' rebates) would necessarily increase. Inflating the AMP, therefore, would have the opposite effect of that alleged in the Complaints, because a manufacturer that inflates its AMP obligates itself to pay a <u>larger</u> rebate to the states.

The states' allegations mandate dismissal of all of the Medicaid rebate claims. While the Complaints discuss hundreds of drugs in general, they fail to identify which rebates are based on "Best Price" and which rebates are based on AMP. Instead, the states only suggest that some drugs are reimbursed on the basis of allegedly inflated Best Prices. *See* Mont Cplt. ¶¶ 612-13; Nev. Cplt. ¶¶ 392-93. Rules 8(a) and 9(b) charge plaintiffs with identifying with particularity which drugs are subject to their fraud claims; it is not Pfizer's or the Court's responsibility to guess. Because these claims are insufficiently particular, all rebate claims should be dismissed.

## III. MONTANA AND NEVADA FAIL TO ALLEGE "BEST PRICE" CLAIMS WITH SUFFICIENT PARTICULARITY.

The Best Price claims must be dismissed for failing to plead fraud with particularity. Under the reasoning of the May 13 Order, any "Best Price" claims must require, on a drug-by-drug basis, allegations of either (1) purchases at a lower price than the best price used to calculate the rebates to the states or (2) specific sales improperly excluded from calculation of

- 3 -

the Average Manufacturer Price (AMP). *See also LaCorte v. Merck & Co., Inc.*, No. 99-3807, slip op. at 6 (E.D. La. Aug. 27, 2003) (attached as Exh. 10 to Consolidated Memorandum) (best price allegations sufficient to meet Rule 9(b) must include dates of best price report submissions, name of company that submitted the report, and description of why the submission was false).

While there are general allegations that the defendants failed to account for free goods and other inducements when calculating their best prices, there are no specific, drug-by-drug allegations of the "best prices" that Pfizer provided to CMS, or of "better prices" on which the rebates should have been based. Plaintiffs do not allege any conduct specific to any drug.[5] Rule 9(b) does not permit Montana and Nevada to assert claims against Pfizer arising from drugs about which there have been no specific fraud allegations. *See, e.g., In re Newbridge Networks Secs. Litig.*, 962 F. Supp. 166, 170-80 (D.D.C. 1997) (holding that allegations regarding certain claims must be dismissed because they did not satisfy Rule 9(b) but permitting other claims to proceed because they had been pleaded with particularity); *Hunt v. Schotz, Simon, Miller & Co.*, No. 87-2520, 1988 WL 188292, * 2-4 (D. N.J. Aug. 17, 1988) (permitting action to proceed only with respect to those fraud allegations that were pleaded with particularity under Rule 9(b)); *Ohman v. Kahn*, 685 F. Supp. 1302, 1307-09 (S.D.N.Y. 1988) (same).

## IV.   CONCLUSION.

In their zeal to challenge the entire U.S. pharmaceutical industry, plaintiffs' indiscriminate attack on Pfizer treats the pleading requirement of Rule 9(b) as a luxury, not a necessity. Montana and Nevada allege no fraudulent conduct by Pfizer with respect to AWPs. In addition, the states' claims about multi-source drugs do not fit the paradigm of the Complaint

---

[5]   The only reference to a specific Pfizer drug is a general reference to an instance where Pfizer settled allegations related to Lipitor without admitting to any wrongdoing, Even in this instance, plaintiffs do not allege any conduct specific to that drug sufficient to meet Rule 9(b).

and are economically irrational. Moreover, Montana and Nevada allege no conduct whatsoever – let alone the specific allegations of fraud required by Rule 9(b) – for the drugs for which they assert Best Price claims. These claims against Pfizer should, therefore, be dismissed.

Respectfully submitted,

BY: _____/s/ Mark Smith_____

Mark D. Smith (BBO #542676)
Laredo & Smith LLP
15 Broad Street, Suite 600
Boston, MA 02109
(617) 367-7984 (telephone)
(617) 367-6475 (facsimile)

John C. Dodds, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000 (telephone)
(215) 963-5001 (facsimile)

Scott A. Stempel, Esq.
Gregory F. Wells, Esq.
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 (telephone)
(202) 739-3001 (facsimile)

Dated: September 15, 2003

*Attorneys for Defendant Pfizer Inc.*