York, which shall be designated by the NAMFCU Negotiating Team and which shall act as Escrow Agent and shall retain such funds until their release in accordance with the Escrow Agreement entered into between Bayer and the Medicaid Fraud Control Unit of the state of New York.

   C. The total portion of the Medicaid Settlement Amount paid by Bayer in settlement for alleged injury to the Medicaid Program for the state of Montana is $569,059.57, consisting of a portion paid to the state of Montana under this Agreement and another portion paid to the federal government as part of the Federal Settlement. The individual portion of the State Medicaid Settlement Amount allocable to the state of Montana is the sum of $190,088.67 ("Individual State Medicaid Settlement Amount").

   D. The state of Montana shall be entitled to disbursement of its Individual State Medicaid Settlement Amount from the escrow account pursuant to the terms of the Escrow Agreement, which is attached hereto as Exhibit A and is incorporated by reference herein.

   2. In consideration of this Agreement and payment set forth herein and subject to the exceptions from release set forth in Paragraph 3 below, the state of Montana on behalf of itself, its officers, agents, agencies and departments shall release and forever discharge Bayer, its current and former parents, affiliates, divisions, and subsidiaries, and their predecessors, successors and assigns, from any civil or administrative claims for damages or penalties that the state of Montana has or may have relating to the Covered Conduct. The payment of the Medicaid Settlement Amount fully discharges Bayer from any obligation to pay Medicaid-related restitution, damages, and/or any fine or penalty for the Covered Conduct.

   3. Notwithstanding any term of this Agreement, the state of Montana specifically does not herein release Bayer, its current and former parents, affiliates, divisions, and subsidiaries, and their predecessors, successors and assigns, and its current and former directors, officers, agents and employees from any and all of the following: (a) any potential criminal, civil or administrative claims arising under state of Montana revenue codes; (b) any criminal

6

liability not specifically released by this Agreement; (c) any civil or administrative liability that Bayer has or may have under any state statute, regulation, or rule not covered by the release; (d) any liability to the state of Montana (or its agencies) for any conduct other than the Covered Conduct; (e) any claims based upon such obligations as are created by this State Settlement Agreement.

4. In consideration of the obligations of Bayer set forth in this Agreement and payment set forth herein and except as reserved in Paragraph 3 above, the state of Montana agrees to release and refrain from instituting, directing, recommending or maintaining (a) any administrative claim; or (b) any action seeking exclusion from the state of Montana's Medicaid program; against Bayer, its current and former parents, affiliates, divisions, and subsidiaries, and their predecessors, successors and assigns, for the Covered Conduct or for Bayer's conviction in the Criminal Action. Nothing in this Agreement precludes the state of Montana from taking action against Bayer in the event that Bayer is excluded by the federal government, or for conduct and practices other than the Covered Conduct or the conviction in the Criminal Action. The Medicaid Fraud Control Unit for the state of Montana further agrees to refrain from recommending, causing or attempting to cause any administrative action or sanction, including debarment, by any other government agency of the state of Montana for the Covered Conduct or for the conviction in the Criminal Action. The state of Montana does not have the authority to release Bayer from any claims or actions which may be asserted by private payors or insurers, including those that are paid by a State's Medicaid program on a capitated basis, which are not a party to the Medicaid Rebate Program.

5. The making of this Agreement shall not be construed by the state of Montana as a basis for the exclusion of any of Bayer's products from the state of Montana's formulary or as a basis for a change in status regarding prior authorization.

6. The state of Montana agrees to dismiss with prejudice any lawsuit specifically as to Bayer, including any state qui tam "whistleblower" lawsuit, in which the state has intervened

7

and/or has the authority to dismiss, currently pending against Bayer in the courts of the state of Montana, relating to the Covered Conduct.

7. This Agreement is expressly conditioned upon acceptance of Bayer's plea of guilty in the Criminal Action. In consideration of the acceptance of Bayer's plea of guilty in the Criminal Action, the state of Montana agrees that it shall not investigate, prosecute, or refer for prosecution or investigation to any agency, Bayer, its current and former parents, affiliates, divisions, and subsidiaries, and their predecessors, successors and assigns, for the Covered Conduct.

8. Bayer fully and finally releases the state of Montana, its agencies, employees, servants, and agents from any claims (including attorneys fees, costs, and expenses of every kind and however denominated) which Bayer has asserted, could have asserted, or may assert in the future against the state of Montana, its agencies, employees, servants, and agents, related to or arising from the investigation and prosecution of the Covered Conduct up to the effective date of this Settlement Agreement.

9. Nothing in this agreement shall preclude either Bayer or the state of Montana from pursuing any rights they have pursuant to the Medicaid Rebate Program as to adjustments to Rebate Payments, except to the extent that no adjustment shall be made to Best Price based upon Covered Conduct, which this agreement settles.

10. Bayer waives and will not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment of the Constitution or Excessive Fines Clause of the Eighth Amendment of the Constitution, this Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action. Provided, however, that nothing in this paragraph is intended to, or will operate to, limit the scope of Paragraph 7, in which the state of Montana agrees not to prosecute or investigate Bayer for certain conduct.

8

11. Except as otherwise specified herein, this Agreement is intended to be for the benefit of the Parties only, and by this instrument the Parties do not release any claims against any other person or entity, including but not limited to any individual or entity that purchased Cipro and Adalat from Bayer.

12. Nothing in any provision of this Agreement constitutes an agreement by the state of Montana concerning the characterization of the Medicaid Settlement Amount for purposes of the state internal revenue laws.

13. In addition to all other payment and responsibilities under this Agreement, Bayer agrees to pay all reasonable travel costs and expenses of the NAMFCU Negotiating Team. Bayer will pay this amount by separate check or wire transfer made payable to the National Association of Medicaid Fraud Control Units after the Participating States execute this Agreement.

14. Bayer covenants to cooperate fully and truthfully with the state of Montana in any ongoing investigation or investigation commenced within five years of the effective date of this Agreement of individuals and entities not specifically released by this Agreement (including any parties with whom Bayer has or has had a business or professional relationship, including but not limited to vendors, contractors, partners, joint venturers, physicians, and referral sources) relating to the Covered Conduct.

15. Notwithstanding any provision of this Agreement, Bayer is not required to (1) request of its present or former officers, directors, employees or agents that they forego seeking the advice of an attorney nor that they act contrary to that advice; (2) take any action against its directors, employees or agents for following their attorney's advice or for failing to submit to an interview or otherwise cooperate with the state of Montana; or (3) waive any privilege or claim of work product. The failure of any individual to submit to an interview or otherwise to refuse to cooperate with the state of Montana shall not constitute a breach of this Agreement by Bayer.

9

16. Bayer shall enter into an Addendum to its existing Corporate Integrity Agreement with HHS-OIG in connection with this matter.

17. Bayer represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

18. The undersigned Bayer signatory represents and warrants authorization by the Board of Directors to execute this Agreement. The undersigned state of Montana signatories represent that they are signing this Agreement in their official capacities and they are authorized to execute this Agreement on behalf of the state of Montana through their respective agencies and departments.

19. This Agreement is governed by the laws of the state of Montana.

20. This Agreement is effective on the date of signature of the last signatory to the Agreement.

21. This Agreement shall be binding on all successors, transferees, heirs and assigns of the Parties; provided, however, this Agreement shall not apply to the products of an acquiring company or a company merging with Bayer except to the extent such company, as a result of the acquisition of or merger with Bayer, becomes involved in the sales, marketing or pricing of, or Medicaid Drug Rebate program obligations associated with, drug and biologic products for which the Federal health care programs provide reimbursement ("Government Reimbursed Products") originally manufactured by Bayer prior to the merger or acquisition, in which case the obligations of this agreement shall apply only to those products which had been Government Reimbursed Products when they were manufactured by Bayer.

22. This Agreement constitutes the complete agreement between the Parties with regard to the Covered Conduct. This Agreement may not be amended except by written consent of the Parties.

23. Each party agrees to perform any further acts and to execute and deliver any further documents reasonably necessary to carry out this Agreement. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement.

**For the state of Montana:**

By: _Jordan Hage_  Dated: _4-17-03_

Title: _Director - MT MFCU_

**For the state of Montana Medicaid Program:**

By: _John Chappuis_  Dated: _5/15/03_

Title: _Deputy Director - DPHHS_

**BAYER CORPORATION**

By: _____  Dated: _____
JON R. WYNE
Senior Vice President and Treasurer
Bayer Corporation


By: _____  Dated: _____
PAUL E. KALB
JAMES C. STANSEL
Sidley Austin Brown & Wood, LLP
1501 K Street, NW
Washington, DC 20005
Counsel to Bayer Corporation

11

# WRITTEN INSTRUCTIONS FOR THE TRANSFER OF SETTLEMENT FUNDS

## ESCROW AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Medicaid Fraud Control Unit of the State of New York and the Bayer Corporation ("Bayer") hereby agree as follows:

1. The Escrow Agent agrees to hold the State Settlement Amount of $108,956,961 plus pre-transfer interest (in the amount of $10,448 per day beginning on March 25, 2003 and continuing until and including the day before transfer is completed into the Escrow Account) paid to the States by Bayer pursuant to the Federal Settlement Agreement and the Model State Settlement Agreement in an account maintained by the Medicaid Fraud Control Unit of the State of New York and acting as the Escrow Agent.

2. The Escrow Agent agrees to dispose of the monies held in the Escrow Account pursuant to directions to be provided by the NAMFCU Negotiating Team upon the receipt of fully executed settlement agreements between Bayer and the participating states and the District of Columbia (except Arizona). Any state or the District of Columbia that has executed a settlement agreement that has also been executed by Bayer shall be a "Participating State."

3. The parties shall make best efforts to complete the settlement in a timely manner.

4. Any monies attributable to a state or the District of Columbia which, by the date of distribution, determines not to participate ("Non-Participating State(s)") shall be disbursed to Bayer with the appropriate interest (both pre-transfer and pending distribution for said Non-Participating State that has accrued to the date of distribution, if any). Said distribution of a Non-Participating State share back to Bayer shall occur within 30 days of the distribution to Participating States or by further agreement of the parties.

The undersigned Bayer signatory represents and warranties that he is authorized to execute this Agreement. The undersigned representative of the Medicaid Fraud Control Unit of the State of New York represents and warranties that he is signing this Agreement in his official capacity.

_[signature]_                                              4/9/03
PATRICK LUPINETTI                                          Date
Director, Special Projects
Medicaid Fraud Control Unit of the State of New York


_____                             _____
JON R. WYNE                                                Date
Senior Vice President and Treasurer
Bayer Corporation

Exhibit A

# STATE OF MONTANA

## DISPOSITION OF PROCEEDS FROM

## BAYER CORPORATION

### TOTAL MEDICAID SETTLEMENT (STATE/FEDERAL) IS $ 569,059.57

| | | | |
|---|---|---|---|
| 1. | State Share of Medicaid Restitution | $ | 102,957.99 |
| 2. | State Share of Medicaid Penalties | $ | 87,130.68 |
| 3. | Total Medicaid State Settlement | $ | 190,088.67 * |

***THESE ARE STATE MONIES ONLY; DO NOT SEND OR CREDIT ANY AMOUNT TO THE FEDERAL GOVERNMENT.**

IF ANY MFCU STATES HAVE QUESTIONS ON HOW TO REPORT THESE MONIES AND/OR PROPERLY USE THE PENALTY PLEASE DIRECT QUESTIONS TO:

JOHN BETTAC, DIRECTOR
MEDICAID OVERSIGHT STAFF
OFFICE OF THE INSPECTOR GENERAL
(202) 619-3557

DISTRIBUTION



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

Main Reception: (617) 748-3100

United States Courthouse, Suite 9200
1 Courthouse Way
Boston, Massachusetts 02210

April 7, 2003

I. Scott Bass, Esq.
Paul E. Kalb, Esq.
Nathan C. Sheers, Esq.
Sidley Austin Brown & Wood LLP
1501 K Street NW
Washington, DC 20005

Re:   Bayer Corporation

Dear Messrs. Bass, Kalb and Sheers:

This letter sets forth the Agreement between the United States Department of Justice and the United States Attorney for the District of Massachusetts (the "U.S. Attorney")(collectively, the United States Department of Justice and the U.S. Attorney shall be referred to as the "United States") and your client, Bayer Corporation ("Bayer"), an Indiana Corporation, (collectively referred to as "the Parties") as follows:

1.   Guilty Plea

On or before April 16, 2003, or such other date as the Court may set, Bayer shall waive indictment and plead guilty to the Information attached hereto as Exhibit A, charging a felony violation of Title 21, United States Code, Sections 331(p), 333(a)(2) and 360(j), by failing to provide notice to the FDA of the introduction of private label Cipro for commercial distribution to Kaiser Permanente, which drug had not been included in any list previously filed by Bayer with the FDA. Bayer expressly waives any statute of limitations defense that it may have in connection with this crime. Bayer expressly and unequivocally admits that it committed the crime charged in the attached Information with the intent to defraud or mislead.

1

2.  Sentencing Guidelines

The United States and Bayer agree that the following provisions of the United States Sentencing Guidelines ("U.S.S.G.") apply to sentencing of Bayer with respect to the Information:

   (a) pursuant to U.S.S.G. § 8C2.4(a) and 18 U.S.C. § 3571(d), the pecuniary loss intended by Bayer from the offense for criminal sentencing purposes is $4,659,000;

   (b) pursuant to U.S.S.G. § 8C2.5, the culpability score is 6 as follows:

       (i) base score of 5 pursuant to § 8C2.5(a);

       (ii) add three points pursuant to § 8C2.5(b)(3)(B)(i) and/or (ii);

       (iii) deduct 2 points pursuant to § 8C2.5(g)(2).

   (c) pursuant to § 8C2.6, the appropriate range for a multiplier is 1.2 to 2.4, and the appropriate multiplier to be applied to Bayer is 1.2.

   (d) the parties agree that there is no basis for a departure under the U.S.S.G., either upwards or downwards.

3.  Agreed Disposition

The United States and Bayer agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of the Information:

   (a) a criminal fine in the amount of five million five hundred ninety thousand eight hundred dollars ($5,590,800) to be paid within one week of the date of sentencing;

   (b) a mandatory special assessment of $400 pursuant to 18 U.S.C. § 3013, which shall be paid to the Clerk of Court on or before the date of sentencing;

In light of the pending civil action, United States ex rel. George Couto v. Bayer Corporation, Civil Action 00-10339-PBS (D. Mass.) and the Civil Settlement Agreement between Bayer and others and the United States relating to the civil action which is being signed contemporaneously with this plea agreement, and attached hereto as Exhibit B, the parties agree that the complication and prolongation of the sentencing process that would result from an attempt to fashion a proper restitution order outweighs the need to provide restitution to the victims in this case, where, as here, the loss suffered by the victims of this crime will be

2

recompensed fully from amounts paid as part of the Civil Settlement Agreement. See, 18 U.S.C. § 3663(a)(1)(B)(ii). Therefore, the United States agrees that it will not seek a separate restitution order as to Bayer as part of the resolution of the Information and the Parties agree that the appropriate disposition of this case does not include a restitution order.

The United States may, at its sole option, be released from its commitments under this Agreement, including, but not limited to, its agreement in this paragraph regarding the appropriate disposition of this case, if at any time between its execution of this Agreement and sentencing, Bayer:

(a)  Fails to admit a complete factual basis for the plea;

(b)  Fails to truthfully admit its conduct in the offense of conviction;

(c)  Falsely denies, or frivolously contests, relevant conduct for which Bayer is accountable under U.S.S.G. § 1B1.3;

(d)  Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Bayer is accountable under U.S.S.G. § 1B1.3;

(e)  Engages in acts which form a basis for finding that Bayer has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1; and/or

(f)  Attempts to withdraw its plea.

Bayer expressly understands that it may not withdraw its plea of guilty, unless the Court rejects this Agreement under Fed. R. Crim. P. 11(c)(5).

4.   No Further Prosecution of Bayer

Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States agrees that, other than the charge in the attached Information, it shall not further prosecute Bayer for conduct which (a) falls within the scope of the Information; (b) was the subject of the investigation by the grand jury; or (c) was known to the U.S. Attorney prior to the date of execution of this letter.

The U.S. Attorney expressly reserves the right to prosecute any individual, including but not limited to present and former officers, directors, employees, and agents of Bayer, in connection with the conduct encompassed by this plea agreement, within the scope of the grand jury investigation, or known to the U.S. Attorney.

This declination is contingent on (1) the guilty plea of Bayer being accepted by the Court and not withdrawn, and (2) Bayer's performance of all of its obligations as set forth in this Agreement and the attached Civil Settlement Agreement. A breach of the Corporate Integrity Agreement and Addendum thereto (collectively "CIA"), incorporated by reference in the Civil Settlement Agreement, does not constitute a breach of this Plea Agreement, and any disputes arising under the CIA shall be resolved exclusively through the dispute resolution provisions of the CIA. If Bayer's guilty plea is not accepted by the court or is withdrawn for any reason, or if Bayer should fail to perform an obligation under this Agreement or the Civil Settlement Agreement, this declination of prosecution shall be null and void.

5. <u>Payment of Mandatory Special Assessment</u>

Bayer agrees to pay the mandatory special assessment to the Clerk of Court on or before the date of sentencing.

6. <u>Cooperation</u>

Bayer agrees to cooperate completely and truthfully with the U.S. Attorney in connection with his on-going investigation and prosecution of others for alleged violations of federal criminal law arising out of his investigation. Bayer understands and agrees that such cooperation shall include the following, if requested by the U.S. Attorney:

(a) prompt production to the U.S. Attorney of any document or record in the possession, custody or control of Bayer relating to the subject matters of the investigation;

(b) taking all reasonable measures available to Bayer to ensure that present and former officers, directors, agents and employees of Bayer cooperate truthfully and completely with the U.S. Attorney in connection with his on-going investigations and prosecutions

(c) taking all reasonable measures available to Bayer to make all present and former officers and employees of Bayer available for interviews by law enforcement personnel, on reasonable notice.

Provided, however, that notwithstanding any provision of this Agreement, (1) Bayer is not required to request of its present or former officers, directors, employees or agents that they forego seeking the advice of an attorney nor that they act contrary to that advice; (2) Bayer is not required to take any action against its officers, directors, employees or agents for following their attorney's advice; and (3) Bayer is not required to waive any privilege or claim of work product, except to the extent previously agreed by letters dated August 4, 2000 between AUSA Susan Winkler and Paul Kalb, Esq.; and dated June 11, 2002 between AUSA Susan Winkler and Paul Kalb, Esq. and Scott Bass, Esq.

4

### 7. Probation Department Not Bound By Agreement

The sentencing disposition agreed upon by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the United States Probation Office.

### 8. Fed. R. Crim. P. 11(c)(1)(C) Agreement

Bayer's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). Bayer cannot withdraw its plea of guilty unless the sentencing judge rejects this Agreement or fails to impose a sentence consistent herewith. If the sentencing judge rejects this Agreement or fails to impose a sentence consistent herewith, this Agreement shall be null and void at the option of either the United States or Bayer.

Bayer may seek sentencing by the District Court immediately following the Rule 11 plea hearing. The United States does not object to the Court proceeding to sentence Bayer immediately following the Rule 11 plea hearing or in the absence of a Presentence Report in this case. Bayer understands that the decision whether to proceed immediately following the plea hearing with the sentencing proceeding, and to do so without a Presentence Report, is exclusively that of the United States District Court.

### 9. Civil and Administrative Liability

By entering into this Agreement, the United States does not compromise any civil or administrative liability, including but not limited to any False Claims Act or tax liability which Bayer may have incurred or may incur as a result of its conduct and its plea of guilty to the attached Information.

Bayer's civil liability to the United States in connection with certain of the matters under investigation by the United States is resolved in the Civil Settlement Agreement, attached as Exhibit B, according to the terms set forth in that Agreement.

Contemporaneously with the execution of this Agreement, Bayer shall enter into the CIA with the Office of Inspector General for the United States Department of Health and Human Services, attached as Exhibit C.

### 10. Waiver of Defenses

If Bayer's guilty plea is not accepted by the Court for whatever reason, or is later withdrawn for whatever reason, Bayer hereby waives, and agrees it will not interpose, if charges are filed within 30 days of the date on which such guilty plea is rejected or withdrawn, any defense to any charges brought against it which it might otherwise have under any statute of limitations or the Speedy Trial Act, except any such defense that Bayer may already have for conduct occurring before May 8, 1997.

5

11. **Breach of Agreement**

If the U.S. Attorney determines that Bayer has failed to comply with any material provision of this Agreement, the United States may, at its sole option, be released from its commitments under this Agreement in its entirety by notifying Bayer, through counsel or otherwise, in writing. The United States may also pursue all remedies available under the law, even if it elects not to be released from its commitments under this Agreement. Bayer recognizes that no such breach by Bayer of an obligation under this Agreement shall be grounds for withdrawal of its guilty plea. Bayer understands that should it breach any material provision of this Agreement, the U.S. Attorney will have the right to use against Bayer before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by Bayer, and any information, materials, documents or objects which may be provided by it to the government subsequent to this Agreement, without any limitation.

Bayer understands and agrees that this 11(c)(1)(C) plea agreement and its agreed upon criminal disposition:

(1) are wholly dependent upon Bayer's timely compliance with the provisions of the attached Civil Settlement Agreement, including the requirement in the agreement that Bayer pay to the United States and to the various state Medicaid Programs the amount of two hundred forty two million one hundred twenty six thousand five hundred eighty dollars ($242,126,580), and that Bayer pay to the PHS entities the amount of no less than nine million four hundred eighty two thousand six hundred twenty dollars ($9,482,620) in accord with the terms of the Civil Settlement Agreement; and that

(2) failure by Bayer to comply fully with the terms of this Agreement or the attached Civil Settlement Agreement will constitute a breach of this Agreement.

In the event Bayer at any time hereafter breaches any material provision of this Agreement, Bayer understands that (1) the United States will as of the date of that breach be relieved of any obligations it may have in this Agreement and the attached Civil Settlement Agreement, including but not limited to the promise not to further prosecute Bayer as set forth in paragraph 4 of this Agreement; and (2) Bayer will not be relieved of its obligation to make the payments set forth in this Agreement and the attached Civil Settlement Agreement, nor will it be entitled to return of any monies already paid.

12. **Corporate Authorization**

Bayer's acknowledgment of this Agreement and execution of this Agreement on behalf of the corporation is attached as Exhibit D. Bayer shall provide to the U.S. Attorney and the Court a certified copy of a resolution of the Board of Directors of Bayer Corporation, affirming that the Board of Directors has authority to enter into the Plea Agreement and has (1) reviewed the Information in this case and the proposed Plea Agreement; (2) consulted with legal counsel in

6

connection with the matter; (3) voted to enter into the proposed Plea Agreement; (4) voted to authorize Bayer to plead guilty to the charge specified in the Information; and (5) voted to authorize the corporate officer identified below to execute the Plea Agreement and all other documents necessary to carry out the provisions of the Plea Agreement. A copy of the resolution is attached as Exhibit E. Bayer agrees that either a duly authorized corporate officer or a duly authorized attorney for Bayer, at the discretion of the Court, shall appear on behalf of Bayer and enter the guilty plea and will also appear for the imposition of sentence.

13. **Who Is Bound By Agreement**

This Agreement is binding upon Bayer and the Attorney General of the United States, the United States Department of Justice, and all United States Attorneys on the matters set forth above in Paragraph 4, but does not bind the Tax Division of the U.S. Department of Justice or the Internal Revenue Service of the U.S. Department of the Treasury. A copy of the letter to United States Attorney Michael Sullivan from Michael Chertoff, Assistant Attorney General, Criminal Division, Department of Justice, authorizing this Agreement is attached as Exhibit F. Bayer understands that this Agreement does not bind any state or local prosecutive authorities.

14. **Complete Agreement**

This Agreement, together with the Civil Settlement Agreement, set forth the complete and only agreement between the Parties relating to the disposition of this matter. No promises, representations, agreements or conditions have been entered into other than those set forth in this letter and its attachments A through F. This agreement supersedes prior understandings, if any, of the parties, whether written or oral. This agreement can be modified or supplemented only in a written memorandum signed by the Parties or as agreed by the Parties on the record in court.

If this letter accurately reflects the Agreement entered into between the United States and your client Bayer Corporation, please have Bayer sign the Acknowledgment of Agreement below. Please also sign as Witness. Return the original of this letter to Assistant U.S. Attorney Susan G. Winkler of the United States Attorney's Office of the District of Massachusetts.

Very truly yours,

By: *[signature]*
MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

By: *[signatures: Susan Winkler / George Vien]*
SUSAN G. WINKLER
Deputy Chief, Health Care Fraud
GEORGE W. VIEN
Assistant U.S. Attorney

7