disfavored precisely because it can lead to double recovery, as well as because the necessary causal link between the actions of the primary violator and the party claiming injury is too remote." *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 204 (S.D.N.Y. 1996). For that reason, plaintiff's rebate claims should be dismissed.

### B. There Is No "Implied" Right of Action Under Either The Federal or State Best Price Statutes Or Regulations.

In Counts II through IV of the Amended Complaint, plaintiff asserts causes of action directly under federal and state statutes, 42 U.S.C. 1396r-8 (Count II), N.Y. Soc. Serv. Law § 367-a(7)(d) (Count III), and under New York Department of Health regulations, 18 N.Y.C.R.R. §§ 515.2(b)(4) and (5) (Count IV), for defendants' alleged misreporting of Medicaid drug prices. Because there is also no "implied" remedy under these laws in favor of Suffolk, Counts II, III and IV must be dismissed. Furthermore, the federal rebate statute, which expressly grants only the Secretary of HHS a remedy, preempts plaintiff's best price claims asserted under state law.

#### 1. Federal Law Precludes An Implied Remedy.

Federal statutes give rise to civil actions only where Congress has unambiguously provided for both a private right and a private remedy. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing cases).[23] "Unless [ ] congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134,

---

[23] The issue of whether a federal statute creates a private cause of action is distinct from the question of whether a claim presents a substantial federal question for purposes of federal jurisdiction.

145 (1985); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (remedy will not be implied absent clear congressional intent).

The federal statute on which the County relies (42 U.S.C. § 1396r-8) provides no remedy on behalf of the County. The statute contemplates a Rebate Agreement between the Secretary and a manufacturer.[24] The only other party mentioned is the State, which has the responsibility of providing to manufacturers the utilization data for drugs in the State's Medicaid program during the period in question. 42 U.S.C. § 1396r-8(b)(2)(b). The statute's plain language "focus[es] on the person regulated rather than the individuals protected [and therefore] create[s] no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289 (*citing California v. Sierra Club*, 451 U.S. 287, 294 (1981)). For this reason alone, plaintiff's 42 U.S.C. 1396r-8 claim should be dismissed.

Plaintiff's § 1396r-8 claim should also be dismissed because the Medicaid statute expressly incorporates an "interlocking, interrelated, and interdependent remedial scheme," with which an implied remedy cannot be reconciled. *See Mass. Mutual Life*, 473 U.S. at 146. The statute authorizes the Secretary to oversee and enforce a manufacturer's compliance with the terms of its Rebate Agreement.[25] Further, § 1396r-8 empowers the Secretary to terminate manufacturers that violate their Rebate Agreement. 42 U.S.C. § 1396r-8(b)(4)(B).

---

[24] 42 U.S.C. § 1396r-8(a)(1) states "In order for payment to be available under section 1396b(a) of this title for covered outpatient drugs of a manufacturer, the manufacturer must have entered into and have in effect a rebate agreement described in subsection (b) of this section with the Secretary, on behalf of States …."

[25] 42 U.S.C. § 1396r-8(b)(B), entitled "Verification surveys of average manufacturer price," states in relevant part: "The Secretary may impose a civil monetary penalty in an amount not to exceed $100,000 on a … manufacturer … if the manufacturer … refuses a request for information about charges or prices by the Secretary … or knowingly provides false information."

Significantly, the rebate statute, 42 U.S.C. § 1396r-8(b)(3)(c)(ii), specifically incorporates 42 U.S.C. § 1320a-7a by reference. In § 1320a-7a, Congress accords the Secretary a spectrum of enforcement powers that include not only administrative remedies, but also a complete set of civil litigation tools. For example, the Secretary may (1) impose monetary fines, including, under some circumstances, treble damages, (2) exclude a violator from participating in federal health care programs, and, when necessary (3) initiate civil proceedings. *See* 42 U.S.C. § 1320a-7a(a)(7) *and* 42 U.S.C. § 1320a-7a(c)(1). In addition, the Secretary may also issue subpoenas and seek injunctive relief. 42 U.S.C. 1320a-7a(j) *and* (k).

The remedies granted to the Secretary under 42 U.S.C. 1396r-8 and 42 U.S.C. 1320a-7a(j) and (k) compare favorably with the extensive network of remedies that the Supreme Court found precluded any implication of private remedies in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). There, the Court examined a statute that, like the Medicaid statute at issue here, "provided both judicial and administrative means for enforcing compliance." *Transamerica Mortgage*, 444 U.S. at 20. The *Transamerica* court found that no private remedy should be implied where Congress had authorized the Securities and Exchange Commission to bring civil actions in federal courts to achieve compliance and was further empowered to impose various administrative sanctions. *Id.* at 20-21.

---

42 U.S.C. § 1396r-8(b)(3)(C)(i), entitled "Failure to provide timely information", states in relevant part: "In the case of a manufacturer with an agreement under this section that fails to provide information [to the Secretary] required under subparagraph (A) on a timely basis, the amount of the penalty shall be increased by $10,000 for each day in which such information has not been provided . . . ." The statute also calls for suspension of the Rebate Agreement after 90 days of non-compliance.

42 U.S.C. § 1396r-8(b)(3)(C)(ii), entitled "False information" assesses a penalty of $100,000 on any manufacturer that "knowingly provides false information" and further states "[s]uch civil

Here, as in *Transamerica*, Congress has unambiguously provided the Secretary with extensive enforcement powers. This Court should not imply a remedy not contemplated by Congress.

### 2. N.Y. Soc. Serv. Law § 367-a(7)(d) Does Not Support An Implied Private Right Of Action.

Under New York law, a plaintiff must satisfy a three-prong test to demonstrate that a private right of action can be implied from a New York state statute.[26] Specifically, the plaintiff must show that (1) it is part of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) creation of an implied private right of action would be consistent with the legislative scheme. *See Sheehy v. Big Flats Cmty. Day, Inc.*, 541 N.E.2d 18, 20 (N.Y. 1989); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 463-66 (N.Y. 1983); *CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116, 118-19 (N.Y. 1987). None of these tests are met here.

Social Services Law § 367-a(7)(d), does not aim to benefit counties; rather, it merely declares that the State will do what is necessary to comply with section 1927 of the federal Social Security Act, 42 U.S.C. § 1396r-8.[27] Section 367-a(7)(d) does not purport to

---

money penalties are in addition to other penalties as may be prescribed by law and expressly incorporates the provisions of 1320a-7a of this title."

[26] Federal courts apply the state-law decisional test when considering whether a right of action is implied in a state statute. *See Grenier v. Kennebec County*, 748 F. Supp. 908, 913 (D. Me. 1990) (applying Maine law to conclude that Maine statute did not provide implied private right of action).

[27] N.Y. Soc. Serv. Law § 367-a(7)(d) states in relevant part that: "Notwithstanding any inconsistent provision of law, if a manufacturer . . . has entered into a rebate agreement with the department or with the federal secretary of health and human services on behalf of the department under section 1927 of the federal social security act, the department shall reimburse for covered outpatient drugs which are dispensed under the medical assistance program to all persons . . . only pursuant to the terms of the rebate agreement between the department and such

confer any benefit on the counties; it was not intended to supplant the federal enforcement scheme with a right of action in individual social services districts (*i.e.*, counties); and the creation of a private cause of action under state law could create conflicts with the federal scheme. For the same reasons discussed above in connection with the federal statute, therefore, Count III of the Amended Complaint should be dismissed.

### 3. 18 N.Y.C.R.R. §§ 515.2(b)(4) and (5) Contain No Indicia That Support An Implied Private Right Of Action.

In asserting claims under New York State Medicaid regulations, 18 N.Y.C.R.R. § 515.2(b)(4) and (5), the County fails to note that companion regulations grant enforcement power exclusively to the New York Department of Social Services (the "Department"). *See also Enrico v. Bane*, 623 N.Y.S.2d 25, 27 (N.Y. App. Div. 1995) (stating New York Department of Social Services is "the agency responsible for administering Medicaid [and] the Department is authorized to recoup overpayments as a result of mistake [or] fraud ...").

Specifically, section 515.9, entitled "Overpayments", provides that overpayments "identified pursuant to any investigation under this Part" may be recovered "in accordance with Parts 518 and 520 of this Title" (emphasis added). Section 518.5(c), in turn, states that the Department "reserves the right to initiate or participate in civil proceedings, including actions at law or in equity to recover any overpayment." The individual social service districts are not mentioned.[28] Thus, Suffolk is not part of "the class for whose particular benefit" the regulation

---

manufacturer .... The department in providing utilization data to a manufacturer (as provided for under section 1927(4)(b)(1)(A) of the federal social security act) shall provide such data by zip code, if requested, for drugs covered under a rebate agreement."

[28] The language and structure of 18 N.Y.C.R.R. § 515 make clear that the regulations limit the power to police and enforce violations of New York's Medicaid program to the Department of Social Services. *See* 18 N.Y.C.R.R. § 515.3(a) "the department may impose ... sanctions"; 18

was adopted. *Sheehy*, 541 N.E.2d at 20. Further, implying a private right and remedy on behalf of every political subdivision in New York would not "promote the [apparent] legislative purpose" to centralize oversight and enforcement by expressly assigning that role to the Department. *Id.* Rather, implying rights in favor of each individual county raises the specter of competing and inconsistent outcomes, which cannot be "consistent with [any] legislative scheme." *Id.* Accordingly, Count IV of the Amended Complaint should also be dismissed.

### C. Plaintiff's State Law Claims Are Preempted.

In contrast to N.Y. Soc. Serv. Law § 367-a(7)(d), upon which Count III is based, and 18 N.Y.C.R.R. § 500, *et seq.*, upon which Count IV is based, N.Y. Soc. Serv. Law § 145-b, upon which Count V is based, *does* expressly provide a civil remedy for the "local social service district" (*i.e.* a county). Social Services Law § 145-b is a general statute that applies to any false statement made in connection with an attempt to obtain public funds, not just those limited to Medicaid. *See New York v. Britt*, 529 N.Y.S.2d 228, 229 (N.Y. App. Div. 1988) (assessing damages against transcription service for state health department's Office of Disability Determinations which submitted false claims for amount of transcription work provided). Plaintiff's efforts to apply that statute to defendants' reporting under provisions of the federal rebate statute and their Rebate Agreements with HHS are preempted by federal law. *See* Defendants' Motions to Dismiss the Montana Attorney General's and Nevada Attorney General's actions, which are incorporated by reference herein.[29]

---

N.Y.C.R.R. § 515.3(b); "the department may ... require the repayment of overpayments ..."; 18 N.Y.C.R.R. § 515.4(a) "[a] sanction may be imposed at the discretion of the department".

[29] For the same reasons, if this Court were to find that Suffolk did have implied rights of action under the other state statutes and regulations on which Counts III and IV were based, those Counts should nevertheless be dismissed on preemption grounds.

### D. Suffolk County Is Not The Intended Beneficiary Of The Best Price Rebate Agreements With Manufacturers And In Any Event, Its Breach of Contract Claim is Preempted.

Plaintiff's breach of contract claim (Count VI) is based on the theory that Suffolk County is a third-party beneficiary of the Rebate Agreements between the Secretary of HHS and the defendants. (Am. Compl. ¶¶ 386-88.) The form Rebate Agreement expressly provides that its interpretation is governed by federal common law.[30] As with state contract law, federal common law provides that a third party to a contract may sue for breach only if he is the "intended beneficiary" of the contract. *Pharm. Research & Mfrs. of America v. Walsh*, 123 S. Ct. 1855, 1878 (2003) (Thomas, J., concurring in judgment); *Mortise v. United States*, 102 F.3d 693, 697 (2d Cir. 1996). Both federal courts applying federal law and New York courts applying state law have adopted the Restatement (Second) of Contracts approach in determining whether a third party is an intended beneficiary. *Klamath Water Users Protective Ass'n. v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1479 (7th Cir. 1985); *Falzarano v. United States*, 607 F.2d 506, 511 (1st Cir. 1979); *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985).

Under the Restatement, (1) "[u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties" and (2) either (a) "the performance of this promise will satisfy an obligation of the promisee to pay

---

[30] Section IX(e) provides that: "The rebate agreement shall be construed in accordance with Federal common law and ambiguities shall be interpreted in the manner which best effectuates the statutory scheme."

31

money to the beneficiary" or (b) "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." RESTATEMENT (SECOND) OF CONTRACTS, § 302(1) (1981). "[T]he standard of proof for third-party beneficiary status requires satisfaction of [these] elements as to *both* parties to the contract." *Maniere v. United States*, 31 Fed. Cl. 410, 417 (1994) (emphasis in original). Thus, Suffolk must show that both the Secretary and the manufacturers intended to confer rights on the County when they entered into the Rebate Agreements.

These two tests for intended beneficiary status are further qualified in the context of contracts with a government or governmental agency by the provision that such status will be denied "to the extent that application would contravene the policy of that law authorizing the contract or prescribing for its breach." RESTATEMENT (SECOND) OF CONTRACTS, § 313(1) (1981); *D'Amato*, 760 F.2d at 1479. Suffolk is not an "intended beneficiary" of the Rebate Agreements between the defendant drug manufactures (the promisors) and HHS (the promisee), and it would contravene the rebate statute to allow counties to sue for breach of the Rebate Agreements.

To allege third-party beneficiary status, a plaintiff must show that the contract not only reflects an intention to benefit the party, but that it reflects intent to benefit the party *directly*. *Chancellor Manor v. United States*, 331 F.3d 891, 901 (Fed. Cir. 2003) (citations omitted) (emphasis added). "This direct benefit requirement reflects the reality that third-party beneficiary status is an 'exceptional privilege.'" *Id.* Typically, this is accomplished by an explicit reference to the intended beneficiary in the contract. RESTATEMENT (SECOND) OF CONTRACTS, § 304 cmt. b (1981).

There is no reference to Suffolk -- or any similar political subdivision -- in the Rebate Agreement. The lack of "direct" benefit to Suffolk in the Rebate Agreements also demonstrates that the County is not an "implied" intended beneficiary of the Rebate Agreement. *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994) ("Because third-party beneficiary status constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories . . . a person aspiring to such status must show with special clarity that the contracting parties intended to confer a benefit on him."). *Mutuel Ticket Agents, Local 23293 v. Roosevelt Raceway Assocs.*, 586 N.Y.S.2d 420, 421 (N.Y. App. Div. 1991) ("[T]he intent to benefit a third party must be shown . . . and the benefit must not be merely incidental but immediate to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost . . . .").

In New York and every other state, manufacturers pay the rebates to the states. The New York Legislature can decide how much of the rebate it wishes to share with New York's various political subdivisions. This means that Suffolk -- at best -- is an "incidental," not an "intended" beneficiary of the Rebate Agreements. RESTATEMENT (SECOND) OF CONTRACTS, § 302, cmt.b, illus. 3 (1981) (If promisor is to pay money to promisee so that promisee is in a position to pay others, the others are at most incidental beneficiaries). The demarcation between intended and incidental beneficiaries is especially strict in the context of government contracts, where the law provides that third-parties who benefit are generally assumed to be incidental beneficiaries and may not enforce the contract absent a clear intent to the contrary. *Klamath Water Users*, 204 F.3d at 1211-12; *see also Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001) (third party not expressly identified in a contract as a beneficiary of its

performance must point to contract provision showing the intention of the contracting parties to provide a benefit to that person).

Finally, even if Suffolk could be deemed to be an "intended beneficiary" of the Rebate Agreements, its breach of contract claim should be dismissed because the contract itself and the rebate statutes preclude such a claim.[31] A third-party beneficiary is bound by contract terms where its claim arises out of the underlying contract to which it is an intended beneficiary. *E.I. DuPont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195-96 (3d Cir. 2001); *5th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F. Supp. 2d 1369, 1379 (N.D. Ga. 2003) ("A third-party beneficiary can enforce a contract only as written."). Here, the Rebate Agreement's confidentiality terms, which prevent states from seeing the price data that manufacturers report to HHS, and the penalty provisions of the rebate statute provide that only the Secretary of HHS may remedy any violations of the Rebate Agreement. It would be inconsistent with that scheme to imply a right on the part of Suffolk to sue for breach of the Rebate Agreement.

### E. The New York Consumer Fraud Statute is Inapplicable.

The arguments made in Point I.E above -- which demonstrate that the New York consumer fraud statute cannot be stretched to encompass Suffolk's AWP claims -- apply with equal force to Suffolk's attempts to shoehorn its rebate claims into that statute (Count VII). In sum, plaintiff has not, and cannot, show that: (1) defendants' rebate activities were "consumer

---

[31] Where a contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose when determining the contractual and beneficial intent of the parties. *Roedler*, 255 F.3d at 1352.

oriented;" (2) that defendants' conduct was "misleading in a material way;" or (3) that plaintiff suffered an injury "as a result of" any deceptive act.

### III. PLAINTIFF'S FRAUD-BASED CLAIMS ARE NOT PLED WITH THE REQUISITE PARTICULARITY.

Rule 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of the alleged fraud. *Gublo v. NovaCare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999). The Rule is applied to all claims sounding in fraud -- including those contained in Counts I, II, III, IV, V, VII and VIII of the Amended Complaint, because they are all based on averments of fraud. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 193-94 (1st Cir. 1996) (applying Rule 9(b) to RICO claims); *M&I Heat Transfer Products, Ltd. v. Willke*, 131 F. Supp. 2d 256, 261 (D. Mass. 2001); *Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63 (D. Mass. 2000) (applying Rule 9(b) to consumer fraud acts); *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 692 F. Supp. 327, 330 (S.D.N.Y. 1988) (applying Rule 9(b) to state unfair trade practices statute).

Moreover, *each* defendant is entitled to know the specific facts that constitute its purported fraud. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (RICO complaint dismissed where it "lumped together multiple defendants" and did not "inform each defendant of the nature of his alleged participation in the fraud."). In this multidistrict litigation, the Court has required plaintiffs to specify as to each defendant (1) the specific drug involved in the alleged fraud, (2) the allegedly fraudulent price for the drug, and (3) the identity of specific purchasers of the drug. *In re Pharm. Indus. AWP Litig.*, 263 F. Supp. 2d at 194. Suffolk has not pleaded any of its fraud-based claims in accordance with these requirements.

The AWP claims against defendants are nearly uniform, and consist of boilerplate allegations of purported wrongdoing in connection with the pricing of their drugs. Counts II, III,

35

IV and V essentially allege that defendants made false statements in violation of various statutes and regulations. In "Exhibit A" to the Amended Complaint, plaintiff provides "Suffolk's Estimated True AWP" in alleging that certain (but not all) defendants overcharged for their drugs. However, the Amended Complaint provides no explanation as to how that number was determined, or why it is different than the "Reported Average Wholesale Price" also provided in the exhibit. As to its RICO claims, plaintiff fails to identify a single specific predicate act on the part of any defendant, much less the specific concerted actions required to plead a RICO claim with particularity under Rule 9(b). Plaintiff alleges that there was a "common course of conduct with a similar pattern and purpose" between defendants (Am. Compl. ¶ 352), but fails entirely to describe in detail any conduct by individual defendants or explain how such conduct is related. Absent these allegations, the RICO claim must fail.

The rebate claims fare no better. There is no allegation in the Amended Complaint identifying who, if anyone, failed to report accurate AMPs and BPs to the federal government. Nor is there any indication of what the fraudulent statements were, why they were fraudulent, where they were made or when they were made. Plaintiff simply cites to settlements between the federal government and a handful of defendants over unspecified conduct that was neither admitted nor denied (Am. Compl. ¶ 11), and it states that its "initial research" indicates that an alleged failure to report best prices is "pervasive". (*Id.* ¶ 13.) That is plainly insufficient to satisfy Rule 9(b). In a case involving a specific product, at least one court has found "best prices" claims to be insufficiently pled under Rule 9(b). *See LaCorte v. Merck & Co., Inc.*, No. 99-3807, slip op. at 6 (E.D. La. Aug. 27, 2003) (dismissing claims for failure to identify dates or authors, and explain why the data was false) (Defs. App. Ex. R).

Counts V and VII bring claims under New York's False Statements and Unfair Trade Practices statutes, and also fail to satisfy Rule 9(b). These claims are premised on allegations of "false statements and representations and deliberate concealment of material facts" by the defendants, yet Suffolk fails to identify with specificity any of those false statements or material facts which were concealed. In order to satisfy Rule 9(b), more is required under these statutes than vague reference to purportedly "fraudulent" prices. Count VIII, which brings a claim for civil fraud, fails for the same reasons.

## IV.  PLAINTIFF HAS NOT ESTABLISHED A BASIS FOR TOLLING THE STATUTES OF LIMITATION.

Suffolk alleges that the relevant statutes of limitation were tolled because defendants fraudulently concealed the conduct that gave rise to plaintiff's alleged injuries. Plaintiff's fraudulent concealment allegations must also be pled with the particularity required by Rule 9(b). *See J. Giels Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F. 3d 1245, 1255 (5th Cir. 1996). The fraudulent concealment allegations in the Amended Complaint are totally devoid of detail (Am. Compl. ¶¶ 85-87) and, indeed, other sections of the pleading are entirely inconsistent with even the naked allegation of concealment.

Again, Suffolk claims that Exhibit A to its Amended Complaint is the result of an investigation into the difference between reported AWPs and "true" AWPs (Am. Compl. ¶¶ 4, 7, 13), but it does not explain how it conducted its investigation *or why it could not have discovered the alleged fraud any earlier than it did*, especially in light of the extensive public record showing that AWP greatly exceeded market prices. Since Suffolk has the burden of demonstrating due diligence, its reliance on fraudulent concealment to toll the statutes of limitation fails as a matter of law. *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55-57 (1st Cir. 1984). Furthermore, the Amended Complaint references "governmental studies" regarding AWP

and there is an explicit reference to a 1996 Dow Jones news article which describes AWP as "Ain't What's Paid". *See* Bill Albert, "Hooked on Drugs: Why Do Insurers Pay Such Outrageous Prices for Pharmaceuticals", BARRON'S, June 10, 1996, at 15. Under the circumstances, there is no basis for a claim of fraudulent concealment.

Because there was no concealment and because the facts were publicly known, Suffolk cannot contend that any of the relevant statutes of limitations applicable to its causes of action have been tolled. Thus, to the extent any of Suffolk's claims are not dismissed, those claims must be limited in time to their respective limitations period counted backward from the date of the Complaint or Amended Complaint.

## Conclusion

For all the above reasons, Suffolk's complaint should be dismissed in its entirety.

Dated: New York, New York
September 15, 2003

>
> Respectfully submitted,
> ON BEHALF OF ALL SERVED DEFENDANTS
>
> By: _/s/ Lucy Fowler_
> Nicholas C. Theodorou (BBO #496730)
> Lucy Fowler (BBO #647929)
> FOLEY HOAG LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> (617) 832-1000
>
> D. Scott Wise (admitted *pro hac vice*)
> Kimberly Harris (admitted *pro hac vice*)
> DAVIS POLK & WARDWELL
> 450 Lexington Avenue
> New York, NY 10017
> (212) 450-4000

## CERTIFICATE OF SERVICE

I certify that on September 15, 2003, a true and correct copy of the foregoing Motion to Dismiss the Amended Complaint, the Consolidated Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, and the accompanying Appendix of Exhibits hereto, were served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.

*Lucy Fowler*
Lucy Fowler

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for defendants conferred with counsel for plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

*/s/ Lucy Fowler*
Lucy Fowler