# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

THIS DOCUMENT RELATES TO:

*Rice v. Abbott Laboratories, et al.*, N.D. Cal.
Case No. C 02-3925 MJJ

*Thompson v. Abbott Laboratories, et al.*, N.D.
Cal. Case No. C 02-4450 MJJ

*Turner v. Abbott Laboratories, et al.*, N.D. Cal.
Case No. C 02-5006 MJJ

*Congress of California Seniors v. Abbott
Laboratories, et al.*, N.D. Cal. Case No. C 02-
8179 MJJ

## PLAINTIFFS' CONSOLIDATED REPLY MEMORANDUM
## IN SUPPORT OF MOTIONS TO REMAND

1534.16 0028 MTN.DOC

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT......................................................................................................2

    A.    Remand Must Occur Because Plaintiffs Do Not Have Article III Standing.................2

        1.    Plaintiff CCS Does Not Have Article III Standing............................................3

        2.    Plaintiffs Rice, Thompson and Turner Do Not Have Article III Standing to
            Bring Private Attorneys General Actions Allowed under Section 17204 .........4

    B.    Remand Must Occur Because ERISA Does Not Preempt Plaintiffs' UCL Claims ......4

        1.    ERISA does not preempt Plaintiffs' claims......................................................5

            a.    Plaintiffs' claims do not "relate to" ERISA plans .................................5

            b.    Defendants' arguments are unavailing and ignore the law of the
               case established by *In re AWP Litigation* ..............................................7

        2.    Plaintiffs' claims do not fall "within the scope" of ERISA's civil
            enforcement provision ...................................................................................11

    C.    Certification for Interlocutory Appeal is Unwarranted for the Question of Whether
        Plaintiffs' Claims Present a Substantial Federal Question .........................................13

III.    CONCLUSION..................................................................................................16

# TABLE OF AUTHORITIES

## CASES

Page

*Airparts Co. v. Custom Benefit Servs.,*
    28 F.3d 1062 (10th Cir. 1994) ................................................................10

*In re Application of Rosenthal-Block China Corp.,*
    278 F.2d 713 (2d Cir. 1960).....................................................................15

*As You Sow v. Sherwin-Williams Co.,*
    1993 U.S. Dist. Lexis 18310 (N.D. Cal. Dec. 21, 1993) .......................3

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers,*
    132 F.3d 824 (1st Cir. 1997)....................................................................17

*Bank of the West v. Superior Court,*
    833 P.2d 545 (1992)...................................................................................2

*Blue Cross & Blue Shield of Alabama v. Weitz,*
    913 F.2d 1544 (11th Cir. 1990) ...............................................................12

*Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.,*
    187 F.3d 1045 (9th Cir. 1999)...................................................................8

*Boston Children's Heart Found. v. Nadal-Ginard,*
    73 F.3d 429 (1st Cir. 1996)......................................................................10

*Boston Reed Co. v. Pitney Bowes, Inc.,*
    2002 U.S. Dist. Lexis 11683 (N.D. Cal. June 20, 2002).........................2

*California Consumers v. BMG,*
    1997 U.S. Dist. Lexis 20658 (N.D. Cal. Dec. 22, 1997) ........................3

*California Div. of Labor Stds. Enforcement v. Dillingham Constr.,*
    519 U.S. 316 (1997)...................................................................................5

*Carlo v. Reed Rolled Thread Die Co.,*
    215 F.3d 136 (1st Cir. 2000)...................................................................8, 9

*Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.,*
    215 F.3d 136 (1st Cir. 2000)..............................................................5, 6, 7

*Central States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral
    Assocs. P.A.,*
    53 F.3d 172 (7th Cir. 1995) .....................................................................12

*Cromer Fin. Ltd. v. Berger,*
    2003 U.S. Dist. Lexis 10517 (S.D.N.Y. June 23, 2003).......................15

- ii -

*Cromwell v. Equicor-Equitable HCA Corp.,*
    944 F.2d 1272 (6th Cir. 1991) ...................................................................................7

*Danca v. Private Health Care Sys.,*
    185 F.3d 1 (1st Cir. 1999)..........................................................................4, 16, 17

*Davis v. SmithKline Beecham Clinical Labs.,*
    993 F. Supp. 897 (E.D. Pa. 1998) ...............................................................................9

*E.W. French & Sons v. General Portland,*
    885 F.2d 1392 (9th Cir. 1989) ...............................................................................2

*Everhart v. Allmerica Fin. Life Ins. Co.,*
    275 F.3d 751 (9th Cir. 2001), *cert. denied,* 536 U.S. 958 (2002)......................................11

*Giannetti v. Mahoney,*
    218 F. Supp. 2d 8 (D. Mass. 2002) ...............................................................................16

*Great-West Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002)..........................................................................................12

*Hamelin v. Allstate Ins. Co.,*
    2002 U.S. Dist. Lexis 5093 (C.D. Cal. Mar. 12, 2002) ......................................................3

*Hampers v. W.R. Grace & Co.,*
    202 F.3d 44 (1st Cir. 2000)..................................................................................8, 9

*Harris v. Harvard Pilgrim Health Care, Inc.,*
    208 F.3d 274 (1st Cir. 2000)..................................................................................9

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,*
    530 U.S. 238 (2000)..........................................................................................11

*Health Care Serv. Corp. v. TAP Pharm. Prods., Inc.,*
    2003 U.S. Dist. LEXIS 13556 (E.D. Tex. Aug. 1, 2003) ......................................12, 13, 14

*Heydon v. MediaOne of Southeast Mich., Inc.,*
    327 F.3d 466 (6th Cir. 2003) ...............................................................................15

*Home Health v. Prudential Ins. Co. of Am.,*
    101 F.3d 600 (8th Cir. 1996) ...............................................................................6

*Hospice of Metro Denver, Inc. v. Group Health Ins.,*
    944 F.2d 752 (10th Cir. 1991) ...............................................................................6

*Hotz v. Blue Cross & Blue Shield of Mass.,*
    292 F.3d 57 (1st Cir. 2002)..................................................................................4

*Industrial Indem. Co. v. Superior Court,*
    209 Cal. App. 3d 1093, 257 Cal. Rptr. 655 (6th Dist. 1989)..............................................2

1534.16 0028 MTN.DOC

*Kingsley v. Lania,*
    221 F. Supp. 2d 93 (D. Mass. 2002) ..................................................................16

*LeBlanc v. Cahill,*
    153 F.3d 134 (4th Cir. 1998) ....................................................................6, 10

*Lee v. American Nat'l Ins. Co.,*
    260 F.3d 997 (9th Cir. 2001), *cert. denied,* 535 U.S. 928 (2002).......................3

*Levy v. Dial Corp.,*
    1997 U.S. Dist. Lexis 21398 (N.D. Cal. Sept. 10, 1997)....................................2

*Lordmann Enters., v. Equicor, Inc.,*
    32 F.3d 1529 (11th Cir. 1994) ........................................................................6

*MAI Sys. Corp. v. UIPS,*
    856 F. Supp. 538 (N.D. Cal. 1994) ..................................................................3

*Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Main Dep't. of Human
    Serv.,*
    876 F.2d 1051 (1st Cir. 1989)...........................................................................4

*Mangini v. R.J. Reynolds Tobacco Co.,*
    793 F. Supp. 925 (N.D. Cal. 1992) ..................................................................3

*McGillicuddy v. Clements,*
    746 F.2d 76 (1st Cir. 1984)...........................................................................14

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,*
    904 F.2d 236 (5th Cir. 1990) ..........................................................................7

*Merrell Dow Pharm., Inc. v. Thompson,*
    478 U.S. 804 (1986)...............................................................................11, 15

*Mortera v. North Am. Mortg. Co.,*
    172 F. Supp. 2d 1240 (N.D. Cal. 2001) ............................................................3

*NLRB v. Goodless Bros. Elec. Co., Inc.,*
    285 F.3d 102 (1st Cir. 2002)...........................................................................7

*Nashoba Communications Ltd. Partnership No. 7 v. Danvers,*
    893 F.2d 435 (1st Cir. 1990)..........................................................................15

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,*
    514 U.S. 645 (1995)....................................................................................5

*Nicodemus v. Union Pac. Corp.,*
    318 F.3d 1231 (10th Cir. 2003) .....................................................................16

*PCS 2000 LP v. Romulus Telecomms.,*
    148 F.3d 32 (1st Cir. 1998)...........................................................................15

1534.16 0028 MTN.DOC

*Palandjian v. Pahlavi,*
    782 F.2d 313 (1st Cir. 1986) ................................................................................14

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    263 F. Supp. 2d 172 (D. Mass. 2003) ...........................................1, 7, 8, 13

*Rogers v. Platt,*
    814 F.2d 683 (D.C. Cir. 1987) ............................................................................16

*Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,*
    201 F.3d 1212 (9th Cir.), *cert. denied,* 531 U.S. 992 (2000) ...............................4

*Sandler v. Eastern Airlines, Inc.,*
    649 F.2d 19 (1st Cir. 1981) ................................................................................14

*Seinfeld v. Austen,*
    39 F.3d 761 (7th Cir. 1994) ................................................................................16

*Shamrock Oil & Gas Corp. v. Sheets,*
    313 U.S. 100 (1941) .............................................................................................16

*Sparta Surgical Corp. v. NASD,*
    159 F.3d 1209 (9th Cir. 1998) ............................................................................16

*State of Montana v. Abbott Labs.,*
    2003 U.S. Dist. Lexis 9890 (D. Mass. June 11, 2003)........................1, 11, 14, 15

*Stetson v. PFL Ins. Co.,*
    16 F. Supp. 2d 28 (D. Me. 1998) ..........................................................................8

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
    950 P.2d 1086 (1998)..............................................................................................2

*TCG Detroit v. City of Dearborn,*
    206 F.3d 618 (6th Cir.), *reh'g and reh'g en banc denied,*
    2000 U.S. App. Lexis 8826 (6th Cir. May 1, 2000) ...........................................15

*Terry v. Bayer Corp.,*
    145 F.3d 28 (1st Cir. 1998)..................................................................................11

*The Meadows v. Employers Health Ins.,*
    47 F.3d 1006 (9th Cir. 1995) .................................................................................6

*Toxic Injuries Corp. v. Safety-Kleen Corp.,*
    57 F. Supp. 2d 947 (C.D. Cal. 1999) ................................................................2, 4

*Trustees of the AFTRA Health Fund v. Biondi,*
    303 F.3d 765 (7th Cir. 2002) .................................................................................6

- v -

*United States v. Rice,*
    327 U.S. 742 (1946)................................................................................................15

*Utley v. Varian Assocs., Inc.,*
    811 F.2d 1279 (9th Cir. 1987) ..............................................................................16

*Willy v. Coastal Corp.,*
    855 F.2d 1160 (5th Cir. 1988) ..............................................................................15

*Zubi v. AT&T Corp.,*
    219 F.3d 220 (3d Cir. 2000)..................................................................................15

## STATUTES

28 U.S.C. § 1292(b) ................................................................................................1, 14, 16

28 U.S.C. § 1447(d) ....................................................................................................15, 16

28 U.S.C. §§ 2201..............................................................................................................3

28 U.S.C. §§ 2202..............................................................................................................3

29 U.S.C. § 1002(21)(A).............................................................................................12, 13

29 U.S.C. § 1132(a) .......................................................................................4, 11, 12, 13

29 U.S.C. § 1144(a) ...........................................................................................................5

Cal. Bus. & Prof. Code § 17200, *et seq* ................................................................ *passim*

18 U.S.C. §§ 1962(c) .........................................................................................................3

18 U.S.C. §§ 1962(d) .........................................................................................................3

15 U.S.C. § 1......................................................................................................................3

15 U.S.C. § 2......................................................................................................................3

## I.      INTRODUCTION

Defendants fail to present any cogent rationale for why the Court should depart from its holding in *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003), rejecting ERISA preemption as a defense.  The Court's rejection of ERISA preemption there is particularly salient in the instant case, where Defendants must demonstrate **complete** preemption in order for federal subject matter jurisdiction to obtain.  It is clear that Plaintiffs' claims under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, do not "relate to" employee benefit plans for purposes of ERISA preemption. Plaintiffs' claims also do not fall within the scope of any ERISA enforcement provision, providing yet another fatal blow to Defendants attempt to demonstrate ERISA preemption.

Defendants are also unable to carry their heavy burden of demonstrating that Plaintiffs have Article III standing under the U.S. Constitution to pursue their claims under the UCL in federal court, particularly when California courts uniformly agree that plaintiffs suing in a representative capacity under the UCL do ***not*** have Article III standing.

Finally, the Court should deny Defendants' request to certify the federal question issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Section  1292(b) authorizes the Court to certify for appeal an order "not otherwise appealable" if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation."  There simply is no "substantial difference of opinion" here that supports § 1292(b) certification given that the Court's remand decision in *State of Montana v. Abbott Labs.*, 2003 U.S. Dist. Lexis 9890, at *14 (D. Mass. June 11, 2003), is consistent with eight out of twelve circuits, including the First Circuit, that have considered the rationale employed by the Court.

Accordingly, the Court should grant Plaintiffs' motions for remand without further delay.

- 1 -

## II.    ARGUMENT

### A.    Remand Must Occur Because Plaintiffs Do Not Have Article III Standing

Plaintiffs have standing to bring a representative action under the UCL, Cal. Bus. & Prof. Code § 17204.  The UCL provides that an action challenging wrongful business conduct may be brought "by any person acting for the interests of itself, is members of the general public." *Id*; *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 950 P.2d 1086, 1090 (1998) (holding that a "person" suing under the UCL does not have to prove that he, she, or it was directly injured by defendants' wrongful business practices).  Private litigants have *no* independent cause of action for damages under Section 17200.  *See Industrial Indem. Co. v. Superior Court*, 209 Cal. App. 3d 1093, 1096, 257 Cal. Rptr. 655 (6th Dist. 1989).  Instead, their remedies are limited to injunctive relief and restitution, which may include disgorgement of illicit profits to injured parties.  *See, e.g., E.W. French & Sons v. General Portland*, 885 F.2d 1392, 1401 (9th Cir. 1989); *Bank of the West v. Superior Court*, 833 P.2d 545, 553-54 (1992).

A long line of cases from state and federal courts in California have held that UCL plaintiffs, as "representatives," do *not* allege injury-in-fact sufficient to meet the standing requirements of Article III of the U.S. Constitution.  *See, e.g., Boston Reed Co. v. Pitney Bowes, Inc.*, 2002 U.S. Dist. Lexis 11683, at *21 (N.D. Cal. June 20, 2002).  Thus, in *Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947, 952-55 (C.D. Cal. 1999), the district court remanded a Section 17200 action, holding that the plaintiff did not have federal court standing because it alleged only generalized injuries as a result of exposure to defendant's chemicals, not that the plaintiff or any of its directors suffered individual injuries.  Similarly, in *Levy v. Dial Corp.*, 1997 U.S. Dist. Lexis 21398, at *11-13 (N.D. Cal. Sept. 10, 1997), the district court remanded a Section 17200 action involving misleading product packaging where the complaint did not allege that the plaintiff ever bought the product.  Under these authorities, it is clear that Plaintiffs do not have Article III standing and that the Court should remand.

- 2 -

### 1.      Plaintiff CCS Does Not Have Article III Standing

Defendants continue to insist that Plaintiff Congress of California Seniors ("CCS") has Article III standing (Defs. Mem. at 15), yet Defendants fail to cite a *single* case in which a court held that a non-profit association bringing claims for UCL violations has Article III standing when – like here – the plaintiff fails to allege damage to itself.  Not surprisingly, then, all of the courts that have considered the standing issue where a plaintiff sues in the capacity of a "private attorney general" under the UCL, as CCS does here, have found an absence of Article III standing.  *See also Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001), *cert. denied*, 535 U.S. 928 (2002); *Hamelin v. Allstate Ins. Co.*, 2002 U.S. Dist. Lexis 5093, at *10 (C.D. Cal. Mar. 12, 2002); *Mortera v. North Am. Mortg. Co.*, 172 F. Supp. 2d 1240, 1243 (N.D. Cal. 2001); *California Consumers v. BMG*, 1997 U.S. Dist. Lexis 20658, at *3-11 (N.D. Cal. Dec. 22, 1997); *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 540-42 (N.D. Cal. 1994); *As You Sow v. Sherwin-Williams Co.*, 1993 U.S. Dist. Lexis 18310, *5-6 (N.D. Cal. Dec. 21, 1993); *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992).  Defendants fail to cite, let alone attempt to distinguish, any of these cases.

CCS brings its UCL claim as a representative and alleges no direct injury by Defendants.  Though the claim is viable in state court, CCS lacks standing under Article III to assert this same claim in federal court.  The Court thus is without jurisdiction over CCS' UCL claim, which must be remanded.[1]

---

[1] Defendants state that CCS, in a complaint filed with the Court in December 2001, specifically alleged that it "has standing to pursue this action under Federal Rule of Civil Procedure 17(b)(1)."  However, that allegation was necessary because the complaint brought claims solely under federal law:  (i) declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202; (ii) two claims for violation of the Sherman Act, 15 U.S.C. §§ 1 and 2; and (iii) three claims for violation of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d).  In that case, CCS did *not* bring a claim for violation of the UCL and therefore its allegation about standing under the federal rules cannot be used as an admission that CCS has standing under the UCL for purposes of Article III jurisdiction.

- 3 -

2.  **Plaintiffs Rice, Thompson and Turner Do Not Have Article III Standing to Bring Private Attorneys General Actions Allowed under Section 17204**

Defendants do not and cannot dispute that this Court lacks original jurisdiction over UCL claims brought by the individual Plaintiffs – Rice, Thompson and Turner – acting as private attorneys general under Section 17204 on behalf of California citizens. As discussed above, these private attorney general claims are not based on a direct injury inflicted on the individual Plaintiffs, so they lack the required standing under Article III to raise the claims in federal court. *See, e.g., Toxic Injuries Corp., supra,* 57 F. Supp. 2d at 952-55. These private attorneys general claims include all Defendants who participated in the AWP scheme, including those who manufactured drugs used by the individual Plaintiffs and those who did not. These representational UCL claims must be remanded to California state court based solely for lack of Article III standing. *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Main Dep't. of Human Servs.,* 876 F.2d 1051, 1053-1054 (1st Cir. 1989), *citing* 28 U.S.C. §1447(c).

B.  **Remand Must Occur Because ERISA Does Not Preempt Plaintiffs' UCL Claims**

To establish complete preemption under ERISA, Defendants must not only demonstrate that ERISA preempts Plaintiffs' claims, but also that those claims fall within the scope of ERISA's enforcement provision, 29 U.S.C. § 1132(a). *Hotz v. Blue Cross & Blue Shield of Mass.,* 292 F.3d 57, 59 (1st Cir. 2002); *Danca v. Private Health Care Sys.,* 185 F.3d 1, 5 (1st Cir. 1999); *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1215-16 (9th Cir.), *cert. denied,* 531 U.S. 992 (2000). Defendants have failed to do either.[2]

---

[2] Defendants also do not adequately address the undisputed fact that Turner's complaint expressly excludes California consumers who obtained drugs under an ERISA plan, which necessarily excludes ERISA plans and ERISA fiduciaries. Defs. Mem. at 1 n.1.

- 4 -

1534.16 0028 MTN.DOC

1.    **ERISA does not preempt Plaintiffs' claims**

    a.    **Plaintiffs' claims do not "relate to" ERISA plans**

Defendants contend that ERISA preempts Plaintiffs' UCL claims because, ostensibly, these state law claims "relate to" employee benefit plans. Defs. Mem. at 5-10. Defendants misconstrue ERISA preemption law.

ERISA expressly preempts state laws that ***relate to*** any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). Although courts have liberally interpreted the phrase "relate to" as meaning having a "connection with" or "reference to" an employee benefit plan (*see, e.g., California Div. of Labor Stds. Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324 (1997)), "ERISA preemption is not inexorable." *Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 139 (1st Cir. 2000). In fact, the United States Supreme Court recognized that "relate to" was being interpreted well beyond that intended by Congress and consequently held that state laws that only ***indirectly*** relate to ERISA plans are not preempted: "*pre-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.*" *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. at 130, n.1) (emphasis added).[3]

The First Circuit's recent decision in *Carpenters Local* demonstrates the controlling distinction. The employees of a subcontractor (and their union) brought a state court action against a general contractor's surety to recover on a bond. 215 F.3d at 138. The claim arose because the subcontractor failed to make fringe benefit payments as required under Massachusetts' bond statute. *Id.*[4] The court reviewed several factors used to determine whether

---

    [3] At issue was whether a state statute regulating hospital rates for inpatient care was preempted. The court found that "cost uniformity was almost certainly not an object of pre-emption, just as laws with only an indirect economic effect on the relative costs of various health insurance packages in a given State are a far cry from those 'conflicting directives' from which Congress meant to insulate ERISA plans." *Id.* at 662.

    [4] The bond statute required the general contractor to post a bond covering labor and materials, including any indebtedness incurred by subcontractors for wages and fringe benefits. *Id.* at 139.

the law had a meaningful "connection with" with ERISA, namely whether the law (i) interferes with the administration of covered employee benefit plans; (ii) purports to regulate plan benefits; (iii) purports to impose additional reporting requirements; or (iv) regulates an area of the law traditionally thought to be the states' preserve. *Id.* at 141. Applying these factors, the court held that the bond statute did not have a meaningful "connection with" ERISA because the law had "no real bearing on the intricate web of relationships among the principal players in the ERISA scenario (*e.g.*, the plan, the administrators, the fiduciaries, the beneficiaries, and the employer)." *Id.* at 141. Furthermore, the statute did not "refer to" ERISA because the state law did not single out ERISA plans for special treatment and did not depend "on their existence as an essential part of its operation." *Id.* at 145.

Applying *Carpenters Local* here demonstrates that Plaintiffs' California UCL claims do not have a "connection with" an employee benefit plan. With respect to the first three inquires in the *Carpenters Local* test, the UCL claims do *not* interfere with the administration of any employee benefit plan, regulate plan benefits or impose additional reporting requirements. Plaintiffs do *not* dispute the terms or scope of any benefit plan, seek to enforce benefits under ERISA plans, or claim that Defendants failed to provide benefits. To the contrary, Plaintiffs seek restitution and disgorgement of payments fraudulently inflated by Defendants' AWP scheme in violation of the UCL. Any damages would come from Defendants and not from the plan itself. Thus, Plaintiffs' claims would not impact the structure of the plan nor have a demonstrable economic impact on the plan. Turning to the fourth prong, state consumer protection laws against fraud and deception – like the UCL – regulate "an area traditionally thought to be the states' preserve." *See, e.g., Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002); *LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998).[5]

---

[5] Indeed, courts consistently permit state law claims by service providers against plans and insurers who pay plan benefits of plans who misrepresent coverage or the amount of benefits, wrongfully inducing health care providers to provide services. *See, e.g., Home Health v. Prudential Ins. Co. of Am.*, 101 F.3d 600 (8th Cir. 1996); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995); *Lordmann Enters., v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994); *Hospice of Metro Denver, Inc. v. Group Health Ins.*, 944 F.2d 752 (10th Cir. 1991);

- 6 -

Nor do Plaintiffs' claims "refer to" ERISA per *Carpenters Local*. The UCL does not single out ERISA plans for special treatment but applies generally to all fraudulent acts that harm consumers. Furthermore, the UCL does not depend on the existence of the ERISA plans as an essential part of their operation.

Accordingly, ERISA does not preempt Plaintiffs' state law claims. As the Court wrote in rejecting the ERISA preemption defense in *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003):

> Plaintiffs here do not seek an alternative state-law mechanism for the enforcement of their rights with respect to the terms of their ERISA plans. Nor does this dispute require the Court to determine whether plan fiduciaries behaved fraudulently with respect to the plans. . . . The consumer protection statutes at issue here [including the UCL] are laws of general application and do not single out ERISA plans by reference or for special treatment.

*Id.* at 191 (cited as "*In re AWP Litig.*"). The Court's conclusion applies with equal vigor here.

> **b.   Defendants' arguments are unavailing and ignore the law of the case established by *In re AWP Litigation***

Remarkably, Defendants fail to acknowledge the Court's holding that "[b]ecause the consumer protection statutes [including the UCL] do not have a sufficient 'connection to' the employee benefit plans and do not refer to ERISA plans, there is no ERISA preemption." *Id.* at 192. Further, Defendants rely on a string of inapposite cases. This holding is the law of the case and binds Defendants. *NLRB v. Goodless Bros. Elec. Co., Inc.*, 285 F.3d 102, 107 (1st Cir. 2002), *citing Arizona v. California*, 460 U.S. 605, 618 (1983). Rather than accepting the Court's holding, Defendants attempt to sidestep the law of the case.

First, Defendants cite *In re AWP Litig.* for legal authority on ERISA preemption, but then ignore the Court's application of that law to the identical UCL claims subject to Plaintiffs' remand motions. Defs. Mem. at 6. Second, Defendants claim that the Court applied only one of many "tests" – the "general applicability" test – for preemption. Defs. Mem. at 9. However, the

---

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990); *but see Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991).

Court actually engaged in an in-depth preemption analysis of Plaintiffs' state law consumer protections claims, relying on controlling precedent that includes *Carpenters Local.* 263 F. Supp. 2d at 189-191.

Third, Defendants seize on the Court's offhand speculation that "there may be some damage theories that are preempted," without acknowledging that the Court expressly did not "reach that issue at this early stage of the proceedings." *Id.* at 192; Defs. Mem. at 5-6. Not only is there is no authority for preemption of "theories" as opposed to claims, Defendants mis-cite authority that preemption occurs simply because the court's inquiry is directed at an ERISA plan in order to compute damages. Defs. Mem. at 6, *citing Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir. 1995), and *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 49 (1st Cir. 2000). As discussed below, neither of these cases found preemption merely because the court had to look at an ERISA plan's terms to calculate damages, rather than to determine liability.

Rather than explaining how remand is not mandatory under *In re AWP Litig.*, Defendants rely on a string of inapposite cases. Defendants' argument that Plaintiffs' claims are preempted because the Court must consult the terms of the ERISA plans to determine "whether particular ERISA plans and beneficiaries have a claim *at all*" is baseless. Defs. Mem. at 8. Many courts have rejected this view, including this Court. *See, e.g., In re AWP Litig.*, 263 F. Supp. 2d at 191-92 ("The complaint . . . does not appear to be asking for amounts that can only be reimbursed by interpreting the plan documents."); *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) (medical provider's cause of action was based on a relationship between the providers and Blue Cross, which operated independently of ERISA plans; "[t]he dispute [was] not over the *right* to payment, . . . but the *amount*, or level, of payment," which was determined without reference to an ERISA plan's terms. (Emphasis in original); *Stetson v. PFL Ins. Co.*, 16 F. Supp. 2d 28 (D. Me. 1998) (rejecting defendant's argument that fraud claim is preempted because determining the claim's validity required reference to the terms of employee benefit plan).

- 8 -

1534.16 0028 MTN.DOC

Defendants cite *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274 (1st Cir. 2000), for the proposition that ERISA preempts state law claims where the court must consult the terms of the ERISA plans to resolve plaintiffs' claims. Defs. Mem. at 8. *Harris*, however, is inapposite because the court preempted a state action that could have interfered with the enforcement of the plan as against a participant. By contrast, no such "core" purpose is compromised here, where Defendants are not ERISA plans. *Harris* does not help revive Defendants' claim to ERISA preemption.

Defendants also rely on *Hampers*, *Carlo*, and *Davis v. SmithKline Beecham Clinical Labs.*, 993 F. Supp. 897, 899 (E.D. Pa. 1998), but these cases are also inapposite. Defs. Mem. at 6-9. *Hampers* was a suit by a plan participant against a plan sponsor, with the court noting that "[t]his appeal requires us to decide whether [ERISA] preempts a common law cause of action for lump sum contract damages where the alleged breach involves the failure of a former employer to enroll the plaintiff in an ERISA-regulated employee pension benefit plan;" in short, the plaintiff was seeking benefits under the plan. 202 F.3d at 45. Similarly, the plaintiff in *Carlo* was also seeking the award of retirement benefits from the plan sponsor, his former employer, based on claims for breach of contract and negligent misrepresentation. 49 F.3d at 794. The *Carlo* court had to investigate the ERISA plan's terms in order to determine liability for misrepresentation, not simply to calculate damages.[6] *Id.* In contrast, Plaintiffs here are not suing plan sponsors to obtain plan benefits, and no court will have to review any ERISA plan to determine whether the AWP scam violates the UCL. *Davis* is distinguished on the basis that, unlike here, the plaintiff in *Davis* was an ERISA plan participant and beneficiary and specifically sought relief "for violations of the 'terms of the plan.'" 993 F. Supp. at 899.

In this case, the issue is not whether any ERISA plan participant was or is entitled to benefits, but whether the amount any of the affected consumers paid for drugs was excessive as a

---

[6] Indeed, if ERISA § 514 preemption occurred simply because a court had to look at an ERISA plan to calculate damages, then no ERISA beneficiary could ever bring a state law claim in state court. Even Defendants do not advocate such an expansive view of ERISA.

- 9 -

result of Defendants' unlawful acts.  Defendants – who are most certainly not plan sponsors or trustees – set the unlawful price of their drugs *without* reference to an ERISA plan's terms, and did not use any ERISA plan as a tool in their fraud.  To the extent that Plaintiffs seeks restitution on behalf of ERISA plans or participants, they are simply a few of the many thousands of Defendants' victims who paid inflated drug prices because of Defendants' unlawful acts.  The plans and participants are in the same position as any other consumer harmed by Defendants' conduct and are entitled to the same remedy.  This case has, at most, a tenuous connection to ERISA.

In addition, ERISA preemption does not apply where, as here, Plaintiffs' state claims are against third-party non-fiduciaries to remedy fraud.  Indeed, courts routinely allow common law fraud claims by ERISA plans or their trustees against non-fiduciaries to proceed without ERISA preemption.  *See, e.g., LeBlanc v. Cahill*, 153 F.3d at 148 (holding that Trustees' common law fraud claim was not preempted by ERISA because "[t]he fact that the Pension Fund is subject to ERISA is of no consequence to its common law fraud claim against the Appellees.  With respect to this claim, the Pension Fund is simply in the role of an investor allegedly wronged."); *Airparts Co. v. Custom Benefit Servs.*, 28 F.3d 1062, 1066 (10th Cir. 1994) (holding that claims for malpractice and fraud against a nonfiduciary consultant were laws of general application and were not preempted by ERISA).  Here, Plaintiffs are not suing the plan's trustees or fiduciaries – they are suing non-fiduciary drug companies for deceptive conduct and these claims cannot be preempted by ERISA.

Furthermore, the Court does not need to evaluate or interpret the terms of the ERISA Plan to determine liability.  Not only does the UCL not refer to any ERISA plan, the legal determination of whether Defendants' conduct constitutes fraudulent practices does not require any resolution of any dispute or administration of the plan.  *See Boston Children's Heart Found. v. Nadal-Ginard*, 73 F.3d 429, 440 (1st Cir. 1996).  Nor are Plaintiffs required to prove the existence of or specific terms of the ERISA plan to establish their claims.  Again, in this case the

- 10 -

issue is not whether any ERISA plan participant was or is entitled to benefits, but whether the amount any of the affected consumers paid for drugs was excessive as a result of Defendants' unlawful acts. Defendants set the unlawful price of their drugs without reference to an ERISA plan's terms, and did not use any ERISA plan as a tool in their fraud.

In short, because the Court's inquiry need not be directed to the ERISA Plan, Plaintiffs' state law claims are not preempted under ERISA.

### 2.    Plaintiffs' claims do not fall "within the scope" of ERISA's civil enforcement provision

Defendants' strain in a vain effort to demonstrate that Plaintiffs' claims fall within 29 U.S.C. § 1132(a), but the claims most certainly do not. As Plaintiffs detailed in their opening memoranda, § 1132(a) can completely preempt Plaintiffs' claims only if Plaintiffs could state those claims under § 1132(a). *See, e.g., State of Montana v. Abbott Labs.*, 2003 U.S. Dist. Lexis 9890, at *14 (D. Mass. June 11, 2003). As this Court recognized, the Supreme Court has directed that "where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute must provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain." *Id.* (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986), and other authorities). Plaintiffs could not sue Defendants for their unlawful acts under § 1132(a)(3), because the section permits suits only against ERISA plans, plan fiduciaries, and non-fiduciaries that assisted or participated in a fiduciary's breach of duties. *See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 249-53 (2000); *Terry v. Bayer Corp.*, 145 F.3d 28, 36 (1st Cir. 1998) ("the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan"); *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 756 (9th Cir. 2001), *cert. denied*, 536 U.S. 958 (2002). Defendants are not, at least for the purposes of this representative action, plans or plan fiduciaries; nor do Plaintiffs allege that Defendants are liable because they assisted a plan fiduciary in the breach of its duties. Plaintiffs sue Defendants for their own acts, which were not

- 11 -

conducted in the role of a plan administrator or plan fiduciary.  Section 1132(a)(3) does not
allow a suit against a non-fiduciary for acts that are completely unrelated to an ERISA plan.

Furthermore, § 1132(a)(3) does not allow suits to recover monetary damages such as
those sought in this case.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-20
(2002).  While the statute allows certain actions for "equitable relief," actions for restitution or
disgorgement are not included within its scope to the extent they simply seek restitution or
disgorgement of a sum of money.  *Id.* at 212-15.

Defendants fail to address these cases, which Plaintiff CCS cited in its opening brief.
Instead, Defendants claim that "Plaintiffs' claims are very similar to those brought in other cases
under ERISA," citing *Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir.
1990) and *Central States, Southeast & Southwest Areas Health & Welfare Fund v.
Neurobehavioral Assocs. P.A.*, 53 F.3d 172 (7th Cir. 1995).  Defs. Mem. at 12-13.  Defendants'
assertion is patently incorrect.  In each of those cases, the plaintiffs were plan *fiduciaries* suing
to recover amounts that were wrongfully expended *in violation of the ERISA plan* at issue.  *See
Weitz*, 913 F.2d at 1545-46; *Neurobehavioral Assocs.*, 53 F.3d at 173.  In contrast, Plaintiffs here
are not fiduciaries and do not allege (nor could they) that Defendants violated the terms of any
ERISA plan.

Defendants also rely on the recent decision in *Health Care Serv. Corp. v. TAP Pharm.
Prods., Inc.*, 2003 U.S. Dist. Lexis 13556 (E.D. Tex. Aug. 1, 2003), where an ERISA *fiduciary*
sued TAP Pharmaceuticals for inflating prices and encouraging the over-prescription of Lupron.
*Id.* at *1.  The court found that ERISA completely preempted the plaintiff's claims.  *Id.* at *1-2.
*Health Care Serv. Corp.* is inapposite because, unlike here, the plaintiff was an ERISA plan
fiduciary.  Furthermore, the court's conclusion that TAP – a pharmaceutical company with no
connection to the ERISA plan at issue – was a plan fiduciary is just plain wrong.  29 U.S.C. §
1002(21)(A) defines a fiduciary as "a person [who] exercises any discretionary authority or
discretionary control respecting management of such plan or exercise any authority or control

- 12 -

respecting management or disposition of its assets . . . ." The court found that TAP exercised control over the disposition of plan assets within the meaning of § 1002(21)(A). However, the district court did not cite any cases – nor can Plaintiffs locate any – finding that a third-party who did not even contract or have direct dealings with the ERISA plan was a fiduciary. This is not surprising, because the notion that a drug company completely unaffiliated with an ERISA plan is a plan fiduciary is counterintuitive. Indeed, this Court has already recognized that Defendants are not plan fiduciaries. *In re AWP Litig.*, 263 F. Supp. 2d at 191 ("Nor does this dispute require the Court to determine whether plan fiduciaries behaved fraudulently with respect to the plans."). Incredibly, even *Defendants* agree that they are *not* fiduciaries, Defs. Mem. at 14 n.5, yet they waive *Health Care Serv. Corp.* like a talisman.[7]

If Section 1132(a)(3) preempted Plaintiffs' UCL claims, then Defendants would be completely immune from state law, and *also* immune from ERISA liability, whenever they committed a fraud that included among its victims at least one ERISA plan or ERISA plan participant. They are not immune, however, because § 1132(a)(3) does not provide a cause of action to Plaintiffs against these Defendants and therefore does not preempt Plaintiffs' UCL claims.

**C.    Certification for Interlocutory Appeal is Unwarranted for the Question of Whether Plaintiffs' Claims Present a Substantial Federal Question**

Defendants' removal petition also asserted that Plaintiffs' claims arose under federal law because the Court would be required to interpret the meaning of AWP under federal regulations governing reimbursement for Medicare Part B. In Plaintiffs' opening memorandum, they exposed the fallacy of this assertion. *See, e.g.*, CCS Br. at 18-20. Defendants fail to address this issue in their opposition memorandum, and their retreat is wise considering the Court's remand

---

[7] Defendants claim that the district court's finding that TAP was a plan fiduciary was merely an "alternative" holding, Defs. Mem. at 14 n.5, yet careful scrutiny of the decision reveals otherwise. The opening paragraph of the opinion clearly predicates the district court's entire preemption decision on its errant finding that TAP was a plan fiduciary: "If [plaintiff's] allegations are correct, defendants are deemed to be fiduciaries of the plans from which they improperly obtained funds and are equitably required to disgorge these funds. *Accordingly*, this is a case of complete preemption of a suit to obtain equitable redress for an alleged prohibited practice under ERISA." *Health Care Serv. Corp.*, 2003 U.S. Dist. Lexis 13556, at *1-2 (emphasis added).

- 13 -

1534.16 0028 MTN.DOC

decision in *State of Montana. See Health Care Serv. Corp.*, 2003 U.S. Dist. Lexis 9890, at *14 (rejecting Defendants' expansive view of "arising under" jurisdiction by recognizing that the Supreme Court has directed that "where a state-law claim includes as a necessary element the violation of a federal statute, the federal statute ***must*** provide a private remedy for violation of that standard, for federal-question jurisdiction to obtain.")  (Emphasis added).

Nonetheless, Defendants urge that the Court deny Plaintiffs' motions to remand and then "certify the federal question issue for interlocutory appeal." Defs. Mem. at 17.  But there is no basis for such certification here.

28 U.S.C. § 1292(b) authorizes the Court to certify for appeal an order "not otherwise appealable" if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation."  The First Circuit has provided a very narrow standard for accepting interlocutory appeals under § 1292(b):

> [I]nterlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.

*Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986) (per curiam) (vacating order allowing interlocutory appeal); *see also McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984); *Sandler v. Eastern Airlines, Inc.*, 649 F.2d 19, 20 (1ˢᵗ Cir. 1981) (*per curiam*) (dismissing interlocutory appeal without addressing its merits).

One district court recently summarized the great burden that a party must overcome to obtain § 1292(b) certification as follows:

> This statute is to be strictly construed, as the power to grant an interlocutory appeal "must be strictly limited to the precise conditions stated in the law," *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)), which is why "it continues to be true that only 'exceptional circumstances'" warrant certification, *id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 57 L. Ed. 2d 351, 98 S. Ct. 2454 (1978)). *See also*

- 14 -

*O'Bert v. Vargo*, 2003 U.S. App. LEXIS 10857, 2003 WL
21257933 (2d Cir. June 2, 2003); *Westwood Pharmaceuticals, Inc.
v. National Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)
(district courts should "exercise great care in making a § 1292(b)
certification").

*Cromer Fin. Ltd. v. Berger*, 2003 U.S. Dist. Lexis 10517, at *9 (S.D.N.Y. June 23, 2003).

The burden is even heavier with respect to orders of remand given that a remand order "is

not reviewable on appeal or otherwise . . . ." 28 U.S.C. § 1447(d). The Supreme Court has

explained that the policy underpinning § 1447(d) is one "of not permitting interruption of the

litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of

the district court to which the cause is removed." *United States v. Rice*, 327 U.S. 742, 751

(1946). As one court has observed, "[t]his policy has been furthered not only by the refusal of

the appellate courts to hear appeals from orders of remand, . . . but also by their refusal to

entertain a petition for mandamus to review such an order, . . . or to allow appeal under the

interlocutory appeals statute, 28 U.S.C. § 1292(b), from such an order." *In re Application of

Rosenthal-Block China Corp.*, 278 F.2d 713, 714 (2d Cir. 1960).

There simply is no "substantial difference of opinion" here that supports § 1292(b)

certification. Defendants take issue with this Court's conclusion in *State of Montana* that

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986), negates federal jurisdiction unless

federal law provides a federal remedy. However, the clear majority of circuits that have

considered this issue, including the First Circuit, have interpreted *Merrell Dow* exactly as this

Court did in its June 11, 2003 Order in *State of Montana*. The First, Third, Fifth, Sixth, Seventh,

Ninth, Tenth, and D.C. Circuits have all construed *Merrell Dow* to preclude federal jurisdiction

where the federal statute at issue does not provide a private remedy. *See PCS 2000 LP v.

Romulus Telecomms.*, 148 F.3d 32, 35 (1st Cir. 1998); *Nashoba Communications Ltd.

Partnership No. 7 v. Danvers*, 893 F.2d 435, 438-39 (1st Cir. 1990); *Zubi v. AT&T Corp.*, 219

F.3d 220, 223 n.5 (3d Cir. 2000); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169 (5th Cir. 1988);

*Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 472 (6th Cir. 2003); *TCG Detroit v.*

- 15 -

*City of Dearborn*, 206 F.3d 618, 622 n. 2 (6th Cir.), *reh'g and reh'g en banc denied*, 2000 U.S. App. Lexis 8826 (6th Cir. May 1, 2000); *Seinfeld v. Austen*, 39 F.3d 761, 764 (7th Cir. 1994); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1212 (9th Cir. 1998); *Utley v. Varian Assocs., Inc.*, 811 F.2d 1279, 1283 (9th Cir. 1987); *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1238 (10th Cir. 2003); *Rogers v. Platt*, 814 F.2d 683, 688-89 (D.C. Cir. 1987).

These eight circuits constitute a clear majority of the twelve circuits that have considered the issue. Consequently, the issue can hardly be characterized as "a close one" as Defendants incredulously strain to do. Defs. Mem. at 17. For these same reasons, no "exceptional circumstances" exist supporting interlocutory appeal.

Plaintiffs also note that this Court very recently denied Defendants' request for certification of an interlocutory appeal with respect to similar issues in the *State of Minnesota* and *State of Nevada* cases.

In light of these arguments, the strong presumption against removal, and Defendants' desire for interminable delay so they can pursue a dubious appeal where the weight of authority is against them, Defendants' motion should be denied. The Court's Order is not suitable for interlocutory appeal under 28 U.S.C. § 1292(b), and Defendants should not be permitted to use § 1292(b) to circumvent Congress's command that remand rulings are not appealable. *See* 28 U.S.C. § 1447(d).

## III.   CONCLUSION

Courts strictly construe the removal and jurisdictional statutes against finding jurisdiction and in favor of remand in determining whether they have subject-matter jurisdiction, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Danca*, 185 F.3d at 4, and every doubt concerning whether removal was proper should therefore be resolved in favor of remand. *Id.*; *Kingsley v. Lania*, 221 F. Supp. 2d 93, 95 (D. Mass. 2002); *Giannetti v. Mahoney*, 218 F. Supp. 2d 8, 10 (D. Mass. 2002). Defendants here, as the parties invoking federal jurisdiction and seeking removal, have the heavy burden of proving that removal was proper and

- 16 -

that this Court has subject-matter jurisdiction. *See, e.g., BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831 (1st Cir. 1997); *Danca*, 185 F.3d at 4. Defendants have failed to carry this burden. For the reasons set forth above and in the memoranda supporting Plaintiffs' motions to remand, the Court should remind these actions back to California state court where they belong.

By_____

DATED:      September 15, 2003.

Thomas M. Sobol
Edward Notargiacomo
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Brian Williams
Heins, Mills & Olson, P.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

- 17 -

Jeffrey L. Kodroff
John A. Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

## CHAIRS OF LEAD COUNSEL COMMITTEE

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

## MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

## MEMBERS OF EXECUTIVE COMMITTEE

- 18 -

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E., Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West "C" Street, Suite 1700
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street, Suite 1414
Chicago, IL 60601
Tel: (312) 641-2910
Fax: (312) 641-0781

- 19 -

1534.16 0028 MTN.DOC

T. David Copley
Lynn Lincoln Sarko
Mark A. Griffin
Keller Rohrback L.L.P.
1201 3rd Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384

G. Mark Albright
Albright, Stoddard, Warnick & Albright
Quail Park 1, Building D-4
801 South Rancho Drive
Las Vegas, NV 89106

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard, Suite 1650
Los Angeles, CA 90017-2666
Tel: (213) 895-6500
Fax: (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA 19102
Tel: (215) 790-7300
Fax: (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel: (610) 891-9880
Fax: (610) 891-9883

- 20 -

Lee Squitieri
Squitieri & Fearon
420 Fifth Avenue, 28th Floor
New York, NY 10018
Tel: (212) 575-2092
Fax: (212) 575-2184

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, TX 75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

## ADDITIONAL ATTORNEYS FOR PLAINTIFF CONGRESS OF CALIFORNIA SENIORS

James A. Quadra
Robert D. Sanford
Rebecca Bedwell-Coll
Moscone, Emblidge & Quadra LLP
180 Montgomery Street, Suite 1240
San Francisco, CA 94104
Tel: (415) 362-3599
Fax: (415) 362-7332

- 21 -

**ATTORNEYS FOR PLANTIFFS JOHN RICE AND CONSTANCE THOMPSON**

Gilmur R. Murray
Derek G. Howard
Murray & Howard LLP
436 14th Street, Suite 1413
Oakland, CA 94102
Tel: (510)44-2660

**ATTORNEYS FOR PLAINTIFF RONALD E. TURNER**

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Edward Notargiacomo, an attorney, caused true and correct copies of the foregoing Plaintiffs' Consolidated Reply Memorandum in Support of Motions to Remand to be served on all counsel of record electronically, pursuant to Section D of Case Management Order No. 2., this 15th day of September, 2003.

By: _____
    Edward Notargiacomo, Esq.
    HAGENS BERMAN LLP
    225 Franklin Street, 26th floor
    Boston, MA 02110
    (617) 482-3700

HAGENS BERMAN LLP
*Attorneys at Law*

BOSTON   LOS ANGELES   PHOENIX   SEATTLE
**hagens-berman.com**
225 FRANKLIN STREET, 26TH FLOOR • BOSTON, MA 02110
(617) 482-3700 • FAX (617) 482-3003

EDWARD NOTARGIACOMO
(617) 482-3700
Ed@hagens-berman.com

September 15, 2003

***Via Hand Delivery***

Clerk's Office
United District Court
District of Massachusetts
One Courthouse Way, Suite 2300
Boston, Massachusetts 02210

Re:   In Re: Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456
      Congress of California Seniors v. Abbott Laboratories, et al.

Dear Sir/Madam:

      Enclosed for filing in the above-captioned matters please find the following document:

    1.  Plaintiffs' Consolidated Reply Memorandum in Support of Motions to Remand.

      Please acknowledge this filing by date-stamping the enclosed copy of this letter and returning it to the waiting messenger.  Thank you.

                Very truly yours,

                Edward Notargiacomo

Enclosure
cc:     All Counsel of Record