UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | M.D.L. No. 1456<br><br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |



### DEFENDANTS' MEMORANDUM IN OPPOSITION TO MONTANA AND NEVADA'S JOINT MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF CASE MANAGEMENT ORDER COORDINATING DISCOVERY.

The Montana and Nevada Joint Motion to Compel is an attempt to end run the sensible limitations that the Court has imposed on discovery at this stage of this multidistrict litigation. Despite Montana and Nevada's representations to the contrary, defendants[1] do not ask this Court for a flat stay of discovery and are prepared to make relevant discovery available to the states and the other government entity plaintiffs in a manner that fulfills one of the primary purposes for this MDL's creation – the coordination of discovery across multiple cases. However, discovery by the states should be subject to the same limitations that the Court has imposed on discovery by the private plaintiffs.

In CMO 5 and CMO 7, this Court struck a careful balance by allowing appropriate discovery to proceed while limiting the ability of plaintiffs to engage in a fishing expedition on questionable claims that have not been tested on a motion to dismiss. Defendants have already produced more than one million pages of documents

---

[1] This memorandum is filed on behalf of all defendants properly served with the Montana or Nevada complaints. All defendants in this multidistrict litigation, however, support entry of defendants' proposed Case Management Order 8, which provides procedures for coordinating discovery among the

pursuant to CMO 5 concerning the use of average wholesale price ("AWP") in the pricing and reimbursement of prescription drugs. Montana and Nevada have had access to these documents and have used information from them in their amended complaints. In addition, defendants have expressed a willingness to produce further discovery to Montana and Nevada consistent with the limitations the court imposed on discovery by the class plaintiffs in CMO 7.

Montana and Nevada, however, seek to upset the balance struck in the Court's previous discovery orders by arguing that they are entitled to unfettered discovery from defendants on claims that are at least as tenuous, if not more so, than those asserted by the class plaintiffs in the AMCC and for which discovery has been stayed pending resolution of motions to dismiss. None of the arguments that Montana and Nevada make in support of their motion to compel justifies treating these plaintiffs differently than the other MDL 1456 plaintiffs. Instead, the "just and efficient conduct" of this litigation demands that the Court deny Montana and Nevada's Joint Motion to Compel Discovery. *See* 28 U.S.C. • 1407.

The Montana and Nevada motion to compel demonstrates the need for parties to coordinate discovery in this MDL. The states contend that they should not be constrained by orders this Court has entered limiting the discovery that plaintiffs may take at this stage of the litigation and seek to relitigate discovery issues that the Court has already decided. Coordination is necessary to avoid duplicative discovery and to limit the possibility of inconsistent discovery rulings creating inconsistent discovery obligations. To that end, defendants respectfully request the Court to enter an order (a) requiring the MDL parties to coordinate discovery and (b) creating a procedure for coordinating

---

parties in this MDL and between this MDL and any related state court proceedings.

discovery between the MDL and any related actions proceeding in state courts. A proposed order is attached for the Court's consideration.[2/]

## BACKGROUND

In its April 30, 2002 order creating MDL 1456, the Judicial Panel on Multidistrict Litigation concluded that coordination of these actions is necessary in order to "ensure[] that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." Order, Docket Nos. 1453, 1454, 1455 & 1456, at 3 (JPML Apr. 30, 2002). Following consolidation, all of the private class action plaintiffs whose cases had been transferred to this Court filed a Master Consolidated Class Action Complaint. *See* Master Consolidated Class Action Complaint ("MCC") (filed Sept. 6, 2002). Defendants moved to dismiss the MCC on various grounds, including that the complaint failed to allege fraudulent conduct by the defendants with the particularity required by FRCP 9(b) and that plaintiffs lacked standing to pursue claims against certain defendants. While those motions to dismiss were pending, defendants produced to plaintiffs more than one million pages of documents that they had previously produced in response to government investigations concerning the use of AWP in the pricing or reimbursement of prescription drugs.

On May 13, 2003, the Court granted defendants' motions to dismiss in part and denied them in part. *In re Pharmaceutical Industry Avg. Wholesale Price Litig.*, 263 F.Supp.2d 172 (D. Mass. 2003) ("May 13 Order"). The May 13 Order dismissed all

---

[2/]   Defendants have provided copies of their proposed case management order to representatives of Connecticut, New York, Minnesota, Montana, Nevada, Suffolk County, Westchester County and the class plaintiffs. The parties that have responded to date have requested additional time to review the proposed case management order before taking a position supporting or opposing the proposed order.

claims brought by the class action plaintiffs against many of the defendants and limited the claims against other defendants to a few drugs. *Id.* at 195.

### 1. Limitations Imposed by the Court on Discovery From Defendants.

Pursuant to the Court's order granting their motion to amend, the class action plaintiffs filed an Amended Master Consolidated Class Action Complaint ("AMCC") on June 18, 2003. At about the same time, plaintiffs served several defendants with discovery requests seeking information on a wide variety of subjects. After negotiations failed to result in agreement about the appropriate scope of discovery, plaintiffs and defendants submitted competing proposed case management orders to the Court.

In their brief in support of their proposed CMO, plaintiffs argued that the AMCC "cured" many of the problems identified by the Court in its May 13 Order and that they should be permitted to take discovery regarding claims that had been dismissed but that were now, according to plaintiffs, "cured." *See* Plaintiffs' Memorandum in Support of Motion to Compel Discovery and In Support of Plaintiffs' Proposed CMO No. 7 at 8 (July 31, 2003). The Court rejected plaintiffs' argument and limited the discovery that plaintiffs could take from defendants to the few claims that the Court had not dismissed in its May 13 Order. *See* CMO 7 at • II, 1.

### 2. The State Actions.

In the wake of the class action lawsuits, attorneys general from several states filed actions in state courts alleging, like the class plaintiffs in MDL 1456, that various pharmaceutical companies reported fraudulent AWPs.[3] Defendants removed these actions to federal court, and they were eventually transferred by the JPML to this Court

---

[3] A chart showing the status of all AWP cases transferred to this Court as part of MDL 1456 is attached for the Court's convenience as Exhibit A.

as related actions. Several of the states—including Montana and Nevada—moved for an order remanding their complaints to state court. The court granted motions to remand the complaint brought by Minnesota and one of the complaints brought by Nevada but denied motions to remand the complaint brought by Montana and a second complaint brought by Nevada.

Montana and Nevada filed amended complaints with this Court on August 1, 2003 filled with information taken from the voluminous documents produced by defendants pursuant to CMO 5. Shortly after filing their amended complaints, the states served defendants with broad discovery requests, seeking documents relating to all aspects of defendants' businesses. The states' requests overlap substantially with the discovery requests previously served by the class plaintiffs. In fact, a substantial number of the states' requests are, with the exception of the term used to identify relevant pharmaceutical products, word-for-word identical to the class plaintiffs' requests. Many of the rest relate to "Best Price" claims that are facially deficient.

Defendants offered to discuss providing Montana and Nevada with the discovery that they produced pursuant to CMO 7 but argued that all other discovery was premature pending resolution of motions to dismiss the amended Montana and Nevada complaints that defendants anticipated filing. *See* Letter from D. Scott Wise to S. Berman, dated Aug. 14, 2003 (Ex. B). The states refused to discuss limiting their discovery requests and instead filed the instant Motion to Compel.

At the same time, the remanded Nevada and Minnesota actions are proceeding in state court. Plaintiffs in both remanded cases either have or plan to seek discovery from defendants in those cases.

## ARGUMENT

### I. THE DISCOVERY LIMITATIONS IN CMO 7 SHOULD APPLY TO MONTANA AND NEVADA.

#### A. There is No Reason to Exempt Montana and Nevada from Limitations Applicable to the Other Plaintiffs.

In CMO 7, the Court limited the discovery that plaintiffs could take pending resolution of defendants' motions to dismiss. Montana and Nevada now seek all of the discovery that the class plaintiffs previously sought from defendants but were denied in CMO 7. The Montana and Nevada motion to compel begs the question: why should Montana and Nevada be permitted to take discovery that the court has already denied to other plaintiffs in this litigation?

The states make four arguments to support their motion to compel. None of these arguments distinguishes Montana and Nevada from the other plaintiffs in this MDL nor justifies exempting them from the sensible limitations this Court has imposed on discovery at this stage of the litigation.

First, the states argue that they should be permitted broader discovery than the other plaintiffs because they have brought claims pursuant to state consumer protection statutes and the Court's May 13 Order did not dismiss the consumer protection claims in the MCC. *See* Plaintiffs' Memorandum in Support of Plaintiffs' Join Motion to Compel Discovery at 6 ("Pls. Mem."). That argument, however, is based on a misreading of the May 13 Order. That order dismissed all of the claims in the MCC—including the consumer protection claims—except for claims against a few defendants relating to a few drugs identified specifically in the MCC. CMO 7 limits the discovery that plaintiffs can take from defendants to the claims that survived the initial motions to dismiss.

Second, the states argue that CMO 7 should not be binding because their complaints "solve" many of the problems that led the Court to dismiss certain MCC claims and that their claims are therefore not likely to be dismissed. Pls. Mem. at 7. The class plaintiffs, however, made precisely the same argument to support their contention that they should be permitted broader discovery than defendants' proposed CMO 7 would allow. Plaintiffs' Memorandum in Support of Motion to Compel Discovery and in Support of Plaintiffs' Proposed CMO No. 7, at 8. The Court rejected that argument when the class plaintiffs made it and there is no reason for the Court to depart from that decision now.

Third, Montana and Nevada argue that CMO 7 should not bind them because the discovery permitted of defendants pursuant to CMO 7 is defined by reference to the Court's order dismissing the class plaintiffs' claims in the MCC and the states "were not involved in the process that led to the entry of CMO 7." Pls. Mem. at 9. There are several problems with this argument. First, CMO 7 applies by its terms to "All Actions" and refers generally to "plaintiffs," not to the class plaintiffs. *See* CMO 7. Second, it is somewhat disingenuous for Montana and Nevada to argue that their interests were not represented in the process of creating CMO 7, given that their counsel is also lead counsel for the class plaintiffs. Third, the reason that CMO 7 defines the scope of permissible discovery in terms of certain limited claims asserted in the MCC is because those claims have already been tested by and survived defendants' motions to dismiss. The Court has not yet had an opportunity to determine whether any of Montana or Nevada's claims are legally sufficient to survive a motion to dismiss (defendants believe that they are not). Federal Rule of Civil Procedure 9(b), which applies both to the states

claims relating to AWP and their claims relating to "best price" reporting for the purposes of Medicaid reimbursement, is designed precisely to prevent discovery fishing expeditions in support of questionable claims. *See, e.g., United States v. Parke-Davis, Division of Warner-Lambert Co.*, 147 F.Supp.2d 39, 46 (D. Mass. 2001). As defendants explain in their motions to dismiss, the Montana and Nevada amended complaints fall woefully short of the 9(b) standard.

Fourth, the states argue that they should be permitted unfettered discovery because they filed their initial complaints more than one year ago. Pls. Mem. at 9-10. Again, however, this argument does not distinguish these plaintiffs from the other plaintiffs in the MDL nor justify exempting them from the discovery limitations imposed by CMO 7. In addition, Montana and Nevada's claims of prejudice from delay assume that the Court will deny defendants' motions to dismiss. Defendants believe that they have compelling arguments that the claims asserted in the Montana and Nevada amended complaints are legally insufficient and should be dismissed.

The states' claim of prejudice rings particularly hollow in light of the fact that they have already received from defendants more than one million pages of documents that defendants previously produced to government entities investigating reported AWPs. The amended complaints filed by Montana and Nevada are rife with information taken from these documents. Defendants have offered, moreover, to provide the states with additional discovery that they produce pursuant to CMO 7. The states' contention that denying their motion for unfettered discovery will result in a "nearly two-year period without any discovery"(Pls. Mem. at 9) is therefore demonstrably false.

### B. A Limited Stay of Discovery Pending Resolution of Defendants' Motions to Dismiss is Efficient and Justified.

Contrary to the states' suggestion, defendants do not seek a blanket discovery stay. *See* Pls. Mem. at 1. Rather, they simply seek to apply the sensible limits this Court has already imposed on discovery in order to ensure that discovery proceeds in a coordinated fashion across the various cases that are included within MDL 1456. Granting the states' motion to compel would effectively abrogate the limitations imposed by this Court's previous discovery orders and severely undermine the fundamental purpose of this MDL—to promote the just and efficient resolution of this litigation.

"A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). In this case, the Court should exercise its discretion to stay any discovery by the Montana and Nevada defendants that is not permitted by CMO 7. "A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous v. District of Columbia Fin. Responsibility and Management Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979); *see also LaFleur v. Teen Help*, __ F.3d ___, 2003 WL 22052834 at *5 (10th Cir. Sept. 3, 2003); *Anderson*, 1992 WL 159186 at *1.

The courts in these cases completely stayed discovery pending resolution of defendants' motions to dismiss, but the same rationale surely supports the more limited relief that defendants seek here. Montana and Nevada already have access to the voluminous documents that defendants previously produced to governmental authorities

investigating the use of AWP in the pricing and reimbursement of prescription drugs, and they have made use of those documents in their amended complaints. In addition, defendants will produce additional discovery pursuant to CMO 7 relating to those claims that have already survived a motion to dismiss. The remaining discovery sought by Montana and Nevada relates to claims that have not survived a motion to dismiss.

Defendants believe that they have very strong arguments that the claims asserted in the Montana and Nevada complaints are legally deficient and should be dismissed. Thus, defendants have filed motions to dismiss that will, if granted, render the discovery that Montana and Nevada seek to compel entirely unnecessary. Defendants should not be put to the significant burden of producing potentially unnecessary discovery. When faced with essentially the same question previously in the context of the private plaintiffs' claims, the Court struck a careful balance by allowing certain discovery while limiting discovery on tenuous claims that had not been tested on a motion to dismiss. Efficiency and fairness demand that the same rules apply to the discovery sought by the states.

## II.  DISCOVERY IN THE MDL SHOULD BE COORDINATED.

The benefits of coordinating discovery are obvious. Coordination reduces the likelihood that parties will serve or be subjected to overlapping and duplicative discovery. In addition, coordination reduces the likelihood that different parties will separately present the same or similar discovery issues to the Court for resolution. If parties don't serve duplicative discovery serially, they won't have duplicative discovery disputes to present to the Court serially. As the Montana and Nevada motion to compel amply demonstrates, however, explicit and binding coordination is necessary in order to avoid discovery duplication and potential inconsistency. Thus, defendants respectfully

request the Court to enter the attached proposed order requiring the MDL 1456 parties to coordinate their discovery efforts.

Ordering the parties to this litigation to coordinate their discovery efforts is well within the Court's discretion. *See Meeder v. Superior Tube Co.*, 72 F.R.D. 633, 636 (W.D. Pa. 1976) ("In multidistrict cases the transferee judge has broad discretion to design a pretrial program to obtain maximum efficiency for counsel and economy of judicial time.") (citations omitted); *see also In re Petroleum Prods. Antitrust Litig.*, 419 F.Supp. 712, 718 (JPML 1976)(MDL transferee judge has wide discretion to fashion a discovery program). In fact, the purpose of consolidating multidistrict litigation for pretrial proceedings is to "eliminate the possibilities of duplicative discovery and inconsistent pretrial rulings, and thereby conserve the efforts of the parties and the judiciary." *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1297 n. 3 (7th Cir. 1981) (*quoting In re Amerada Hess Corporation Antitrust Litig.*, 395 F.Supp. 1404 (JPML 1975)).

Defendants' proposed Case Management Order 8 provides various requirements designed to increase coordination and decrease inefficient duplication and waste. In particular, the proposed order:

    1.    Requires Liaison Counsel for the Class Plaintiffs to coordinate the discovery permitted by CMO 7 with counsel for other plaintiffs with claims pending before this Court;

    2.    With the exception of the discovery contemplated by CMO 7, prevents parties from serving discovery in an action until the defendant subject to or serving the discovery has answered the complaint in that action;

    3.    Requires defendants to provide discovery produced pursuant to CMO 7 and CMO 5 to all plaintiffs in MDL 1456 who have asserted claims relating to that discovery;

      4.    Requires the parties to provide notice of any scheduled deposition to all MDL 1456 parties; and

      5.    Prevents parties from taking deposition discovery that exceeds the scope of discovery permitted by this Court in the action in which the deposition was noticed.

Any administrative hassles or minor delays in discovery that might result from coordination are far outweighed by the potential to avoid waste and duplication. *See generally In re U.S. Financial Litig.*, 64 F.R.D. 76 (S.D. Cal. 1974) (benefits of coordinating discovery outweighed harm of potential delay from coordination); *see also generally* Manual for Complex Litigation (Third), •• 21.421, 31.14 (recommending most of these requirements as means of coordinating discovery and avoiding unnecessary waste and duplication). Each of the requirements included in Part I of defendants' proposed order seeks to prevent unnecessary duplication of discovery among the MDL 1456 parties while still permitting "discovery on any unique issues to proceed concurrently with discovery on common issues." *Stirling Homex Corp. Securities Litig.*, 442 F.Supp. 547, 550 (JPML 1977).

## III. COORDINATION WITH THE STATE COURT ACTIONS IS NECESSARY TO LIMIT DUPLICATIVE DISCOVERY.

The second portion of defendants' proposed order, which borrows liberally from Judge Stearns' Case Management Order in the Lupron MDL, was prompted by the Court's comments expressing a willingness to organize informal coordination regarding discovery issues with the state courts presiding over other actions involving claims that fall within the subject matter definition of this MDL proceeding. Defendants believe that coordination of discovery taken in the MDL and the related state court proceedings has the potential greatly to reduce inefficient and duplicative discovery and inconsistent

discovery rulings. In light of the Court's decision remanding the Minnesota and Nevada v. Abbott Labs, et al. cases, this concurrent state and federal litigation is now a reality.

The potential benefits of coordination, and the concomitant dangers of non-coordination, between the MDL and the related state court cases are at least as substantial as the benefits of coordination among the MDL parties. Defendants face the possibility of having to produce witnesses for deposition on multiple occasions in multiple forums. Likewise, absent some form of coordination, defendants are likely to face duplicative interrogatories, document requests and requests for admission from plaintiffs pursuing claims in multiple forums throughout the country.

"The cost and delay generated by [the] proliferation [of related parallel cases in federal and state courts] has led judges to undertake innovative efforts to bring about coordination of parallel or related litigation." Manual for Complex Litigation (Third), • 31.31. In fact, there is ample precedent for coordinating discovery proceedings between related state and federal cases. *See, e.g., In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.*, 205 F.R.D. 535 (S.D. Ind. 2002) (discussing coordinated depositions cross-noticed in related state and federal actions); *In re Compact Disc Minimum Advertised Price Litig.*, No. 1361, 2001 WL 492407 (D. Me. May 8, 2001) (ordering coordination of discovery between related state and federal actions); Pretrial Order No. 467, *In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liability Litig.*, MDL Docket No. 1203 (E.D. Pa. Feb. 10, 1999) (creating procedures for coordinating discovery between related state and federal actions) (Ex. C); William W. Schwarzer, *Judicial Federalism in Action: Coordination of Litig. in State and Federal*

*Courts*, 78 Va.L.Rev. 1689 (1992) (discussing various instances of federal-state cooperation to coordinate discovery).

The same considerations recommend coordination of the related state and federal litigation in this case. Recognizing that coordinating discovery with related state court actions will require the willing cooperation of the state courts presiding over the related cases, however, the second portion of defendants' proposed order focuses on several general principles to govern coordination instead of specific concrete obligations. The provisions of this portion of proposed CMO 8 are intentionally flexible to permit the affected courts to deal effectively with any unexpected exigencies.

## CONCLUSION

For the foregoing reasons, defendants respectfully request the Court to deny the Montana and Nevada Joint Motion to Compel and to enter an order (a) requiring coordination of discovery among the MDL 1456 parties and (b) providing a structure for coordinating discovery between MDL 1456 and any state court actions falling with the subject matter of the cases consolidated in MDL 1456.

                Respectfully submitted,
ON BEHALF OF ALL PROPERLY SERVED DEFENDANTS
IN *Montana v. Abbott Labs, Inc., et al.* and *Nevada v. American Home Products Corp., et al.*

BY: _____

Mark D. Smith (BBO #542676)
Laredo & Smith LLP
15 Broad Street, Suite 600
Boston, MA 02109
(617) 367-7984 (telephone)
(617) 367-6475 (facsimile)

John C. Dodds, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000 (telephone)
(215) 963-5001 (facsimile)

Scott A. Stempel, Esq.
J. Clayton Everett, Jr., Esq.
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 (telephone)
(202) 739-3001 (facsimile)

Dated:  September 15, 2003

*Attorneys for Defendants Pfizer, Inc., Pharmacia Corp. and Pharmacia & Upjohn, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2003, I caused a true and correct copy of the aforementioned DEFENDANTS' MEMORANDUM IN OPPOSITION TO MONTANA AND NEVADA'S JOINT MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF CASE MANAGEMENT ORDER COORDINATING DISCOVERY to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ Mark D. Smith

Mark D. Smith