regarding NPC is woefully absent.  For example, Suffolk alleges as RICO predicate acts the defendants' use of the mail and interstate wire facilities to disseminate "[w]ritten representations of the false and inflated AWPs for Covered Drugs *as set forth in Exhibit A* made to the *Redbook* and similar publications . . . " (Cplt. ¶342[b]; emphasis added).  Notably, there are *no* NPC drugs *"set forth in Exhibit A."*  Nor does the Complaint elsewhere identify any alleged false or inflated AWPs as to NPC.  Likewise, Suffolk contends that defendants conducted or participated in the conduct of the affairs of the identified RICO enterprises by having "directly controlled the false and inflated AWPs that are reported in the *Redbook as set forth in Exhibit A* and similar industry publications." *Id.* ¶343(b) (emphasis added).  Yet, Suffolk has not included any NPC drugs in *Exhibit A* or pled with particularity any other participation by NPC in the affairs of the so-called "Novartis Manufacturer-Publisher Enterprises" (*id.* ¶341[u]).

Suffolk also asserts "thousands of communications" by defendants in which they purportedly disseminated marketing materials, forwarded free samples of drugs, provided information or incentives to reduce or conceal prices paid for drugs, discussed financial inducements, misrepresented AWPS which induced payment for drugs in reliance on AWPs and received proceeds of the AWP Inflation Scheme. *Id.* ¶342.  But, Suffolk apparently concedes that it has no facts to support these allegations with respect to NPC, since it claims that "[t]he facts surrounding Novartis's discounting and rebate activities . . . will be revealed by discovery" (*id.* ¶266).  *See also id.* ¶265 (claiming that the "full impact" of NPC's alleged failure to report Best Price will be revealed through "discovery of Novartis's promotional, discounting and pricing practices").  Suffolk thus proposes that it first conduct a fishing expedition to find a cause of action and then satisfy Rule 9(b)'s pleading requirements as to such claim.  To the contrary, where, as here, fraud is claimed based on "information and belief," supporting facts must be pled even where these facts are alleged to be "'peculiarly within the perpetrator's knowledge.'"  *Walsh,* 98 F. Supp. 2d at 147 (citation omitted); *see also Wayne Investment, Inc.,* 739 F.2d at 14 (citations omitted).  Indeed, Suffolk itself claims it already has conducted an "investigation" in this area (Cplt. ¶¶7, 13; Ex. A) and reviewed "extensive and ongoing Congressional and federal investigations" (*id.* ¶7).  Having done so, Suffolk's failure to plead any facts on which to state a claim against NPC itself constitutes a compelling admission that such facts do not exist.  *Varney,* 118 F. Supp. 2d at 68 ("It is fair to expect a plaintiff to state the particulars and, if she does

not, to conclude that sufficient particulars do not exist."). Thus, Counts I-III, V, VII and VIII must be dismissed as to NPC. *See also* Def. Mem. at Point III.

## II.   COUNT VI FAILS TO STATE A CLAIM AS TO NPC.

In Count VI, Suffolk seeks damages based on defendants' alleged breaches of their individual rebate agreements with the Secretary of Health and Human Services (Cplt. ¶¶385-91). It is axiomatic that a complaint must be dismissed under Rule 12(b)(6) where it fails to meet Fed. R. Civ. P. 8(a)(2)'s mandate to include a "short and plain statement of the claim showing that the pleader is entitled to relief." A claim for breach of contract fails to meet this standard where "[t]he plaintiff does not state any facts regarding the alleged breach." *Wildfire Communications, Inc. v. Grapevine, Inc.*, Civ. No. 00-CV-12004-GAO, 2001 U.S. Dist. LEXIS 18238, at *6 (D. Mass. Sept. 28, 2001) (For the Court's convenience, a copy of this case is attached as Exhibit A).

Here, Suffolk merely states in conclusory fashion that defendants "did not report the actual '[B]est [P]rice'" for their drugs and "have therefore breached their rebate agreements" (Cplt. ¶390-91). *However, Suffolk fails to plead any facts regarding such alleged breach by NPC, including identifying the particular drug or Best Price allegedly involved in the breach.* As established above, the only NPC drug identified in the Complaint is Clozaril and there is no specific allegation of NPC's reporting of a fraudulent "Best Price" – or even any "actual" Best Price – for Clozaril. As the court held in *Wildfire Communications*, "[t]he mere legal conclusion that a breach has occurred does not satisfy the Rule 8 requirement of a short and plain statement of the claim." 2001 U.S. Dist. LEXIS 18238, at *6. Thus, Count VI must be dismissed as to NPC.

## CONCLUSION

For the reasons set forth above, in Defendants' Consolidated Memorandum and in individual defendants' memoranda, the Court should dismiss all claims with prejudice as to NPC.

Dated:  Boston, Massachusetts
         September 15, 2003

Of counsel:
Jane W. Parver
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Telephone:  (212) 836-8000

Karen F. Green (BBO# 209050)
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

*Attorneys for Novartis Pharmaceuticals Corp.*

# EXHIBIT A

WILDFIRE COMMUNICATIONS, INC., Plaintiff v. GRAPEVINE, INC.,
d/b/a WILDFIRE INTERNET SERVICES, Defendant

CIVIL ACTION NO. 00-CV-12004-GAO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS

2001 U.S. Dist. LEXIS 18238

September 28, 2001, Decided

DISPOSITION: [*1] Defendant's motion to dismiss complaint for lack of personal jurisdiction was granted.

## CASE SUMMARY

PROCEDURAL POSTURE: Plaintiff Massachusetts company brought an action against defendant Illinois company alleging trademark infringement under 15 U.S.C.S. §§ 1114(1), 1125(a), (c), (d), Mass. Gen. Laws ch. 110B, § 12, ch. 93A §§ 2, 11, unfair competition, and breach of contract. The Illinois company moved to dismiss the breach of contract claim under Fed. R. Civ. P. 12(b)(6) and to dismiss the case, or to transfer venue for lack of personal jurisdiction.

OVERVIEW: The complaint alleged the Illinois company breached one or more provisions of the contract, and incorporated the contract, without stating any facts as to the alleged breach. It was insufficient under Fed. R. Civ. P. 8. The court found the Massachusetts company failed to prove sufficient minimum contacts by the Illinois company for personal jurisdiction. The Illinois company had (1) three web pages accessible from Massachusetts, (2) a contract with a Massachusetts company for the sale of a domain name, governed by Massachusetts law but not containing a forum-selection clause; and (3) a one-time, unsuccessful solicitation of a Massachusetts company for an internet advertisement. There was no evidence of Massachusetts customers or regular solicitation of business in Massachusetts. The Illinois company could only provide internet service to customers in an Illinois area code. While Massachusetts residents could purchase the Illinois company's services off of one web page or utilize free services of another page, the existence of the pages alone, without any evidence of actual purchases by Massachusetts customers or direct solicitation of Massachusetts customers, was insufficient.

OUTCOME: The Illinois company's motion to dismiss the contract claim for failure to state a claim was granted. The Illinois company's motion to dismiss the complaint for lack of personal jurisdiction was granted.

CORE TERMS: wildfire, internet, personal jurisdiction, motion to dismiss, customers, domain, forum state, purposeful, availment, prong, area code, software, com, principal place of business, exercise of jurisdiction, common law, foreseeable, trademark, haled, breach of contract, business card, web, solicitation, supplemental, accessible, discovery, tortious, websites, solicit, site

LexisNexis (TM) HEADNOTES - Core Concepts - Hide Concepts

Civil Procedure: Pleading & Practice: Pleadings: Interpretation
Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers:
Motions to Dismiss

[HN1] In evaluating a motion to dismiss, the court must take as true all

well-pleaded facts and draw all reasonable inferences favorable to the complainant. However, the standard that the complaint include a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), is not toothless.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

[HN2] Fed. R. Civ. P. 12(b)(6) allows the plaintiff a highly deferential reading of the complaint, however, the rule does not entitle a plaintiff to rest on subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

[HN3] The mere legal conclusion that a breach of contract has occurred does not satisfy the Fed. R. Civ. P. 8 requirement of a short and plain statement of the claim.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Personal Jurisdiction

[HN4] A plaintiff bears the burden of demonstrating that defendant's conduct satisfies the state's long-arm statute and that the exercise of personal jurisdiction in the case comports with the strictures of the United States Constitution.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Personal Jurisdiction

[HN5] A court will use the prima facie standard for analyzing a motion to dismiss for want of personal jurisdiction. Under this standard, the court will consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. The plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Personal Jurisdiction

[HN6] See Mass. Gen. Laws ch. 223A, a 3.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Constitutional Limits

[HN7] Constitutional due process requires that a defendant have certain

minimum contacts with the forum state before personal jurisdiction may be recognized so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The three requirements of this minimum contacts test are: (1) relatedness; (2) purposeful availment; and (3) reasonableness. A plaintiff must satisfy all three prongs of this test to meet the due process requirements.

Civil Procedure: Jurisdiction: Personal Jurisdiction & In Rem Actions: Constitutional Limits

[HN8] Under the three-part minimum contacts analysis for personal jurisdiction, (1) the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities; (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) the exercise of jurisdiction must, in light of several factors, be reasonable. The purposeful availment prong of the test focuses on the deliberateness of the defendant's contacts with the forum state and requires that the contracts be voluntary, and foreseeable such that the defendant could reasonably be able to anticipate being haled into court in the forum state.

COUNSEL: For WILDFIRE COMMUNICATIONS, INC., Plaintiff: Paul J. Hayes, Paul J. Cronin, Kevin Gannon, Eugene A. Feher, Weingarten, Schurgin, Gagnebin & Hayes, Robert R. Gilman, Weingarten, Schurgin, Gagnebin & Hayes LLP, Boston, MA.

For GRAPEVINE, INC., Defendant: Anthony A. Froio, Robins, Kaplan, Miller & Ciresi, Boston, MA.

For GRAPEVINE, INC., Defendant: Todd Hendrickson, Hendrickson & Glover, L.C., Clayton, MI.

JUDGES: George A. O'Toole, Jr., DISTRICT JUDGE.

OPINIONBY: George A. O'Toole, Jr.

OPINION: MEMORANDUM AND ORDER

September 28, 2001

O'TOOLE, D.J.

The plaintiff, Wildfire Communications, Inc. ("Wildfire"), a Delaware corporation with its principal place of business in Lexington, Massachusetts, originally brought this action in September 2000 alleging that the defendant, Grapevine, Inc., d/b/a/ Wildfire Internet Services ("Grapevine"), an Illinois corporation with its principal place of business in Granite City, Illinois, infringed upon plaintiff's trademark in violation of 15 U.S.C. a 1114(1), 15 U.S.C. aa 1125(a), (c), (d), [*2] Mass. Gen. Laws ch.110B, a 12, Mass. Gen. Laws ch. 93A aa 2 and 11, and the common law. The plaintiff further alleged that the defendant engaged in unfair competition under the common law. Grapevine

30715944.WPD                              3

moved to dismiss the Complaint, or in the alternative to transfer venue, on the ground that this Court does not have personal jurisdiction.

In February 2001, the plaintiff filed an Amended Complaint adding a claim for breach of a contract between the plaintiff and the defendant for the sale of the domain name "wildfire.net," which the parties signed in 1996. Grapevine moved to dismiss the breach of contract claim under Fed. R. Civ. P. 12(b)(6). This motion is GRANTED. Grapevine's motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is also GRANTED. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - - -

n1 The defendant's motion for leave to file a reply brief to plaintiff's opposition to defendant's motion to dismiss is GRANTED. The plaintiff's motion to strike the supplemental affidavit of George H. Sykes, Jr. is DENIED.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*3] I. Background

Wildfire develops, manufactures, markets and sells telecommunications, telephony, Internet and computer-related goods and services, including computer hardware and software for use in communications management and control. The plaintiff markets and sells its goods and services under its trademark "Wildfire," as well as the name "Wildfire Communications, Inc." in connection with its company and its goods and services. The plaintiff has used both names since at least as early as 1994. Am. Compl. PP 4, 5.

Grapevine markets and sells Internet services such as World Wide Web site developing and hosting, and Internet applications, products, and services. Grapevine markets these services on the Internet under the domain names "wildfire.net" and "wildfireinternet.com." Am. Compl. P 13. Grapevine operates as an Internet Service Provider ("ISP") under the name Wildfire, providing local ISP services exclusively to the 618 area code in southern Illinois. Grapevine cannot provide this service outside of the 618 area code. Sykes Aff. PP 4-6. In August 1995, Grapevine contacted Wildfire via e-mail in an effort to market defendant's internet "business card" product to the plaintiff[*4] for $ 14.95/month. Plaintiff did not purchase the business card product. Sykes Dep. at 109-12.

In 1996 the plaintiff offered to purchase the domain name "wildfire.net" from the defendant for $ 10,000. The parties signed a contract to that effect on or about October 17, 1996. Compl. Ex. D.

Grapevine owns and operates three websites, which are accessible to anyone with Internet access anywhere in the world. The three websites are: Wildfire Internet, WakeUpMoney, and GolfTracker. The services provided at the Wildfire Internet site are described above. WakeUpMoney is a software development and Internet implementation product that facilitates e-commerce for Grapevine customers. GolfTracker is free, server-based software, which Grapevine placed in

the public domain and which allows golfers to track their handicaps and scores.
Supplemental Affidavit of George H. Sykes, President and CEO of Grapevine PP 3,
4, 7, 9.

II. Motion to Dismiss under Fed.R.Civ.P. 12(b)(6)

   A. Standard of Review


            [HN1] In evaluating a motion to dismiss, the Court must take as true
all well-pleaded facts and draw all reasonable inferences favorable to the
complainant. See  Papasan v. Allain, 478 U.S. 265, 283, 92 L. Ed. 2d 209,
106 S. Ct. 2932 (1986),[*5] Correa-Martinez v. Arrillaga-Belendez, 903 F.2d
49, 52 (1st Cir. 1990). However, the standard that the complaint include a
"short and plain statement of the claim showing that the pleader is entitled to
relief," Fed. R. Civ. P. 8(a)(2), is not toothless. See  Burnett v.
Grattan, 468 U.S. 42, 50-51 n.13, 82 L. Ed 36, 104 S. Ct. 2924 (1984)
(stating that an injured person "must look ahead to the responsibilities that
immediately follow filing a complaint . . . [and] be prepared to withstand
various responses, such as a motion to dismiss," and noting that "although the
pleading and amendment of pleadings rules in federal court are to be liberally
construed, the administration of justice is not well served by the filing of

premature, hastily drawn complaints").            [HN2] Rule 12(b)(6) allows the
plaintiff a highly deferential reading of the complaint, however, the rule "does
not entitle a plaintiff to rest on 'subjective characterizations' or conclusory
descriptions of 'a general scenario which could be dominated by unpleaded
facts.'" Correa-Martinez, 903 F.2d at 53 (quoting Dewey v. University of
New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982),[*6]

   B. Discussion

   In this case, the plaintiff has not met the burden required by the rules of
notice pleading, and accordingly the motion to dismiss Count IX of the Amended
Complaint is granted. The breach of contract claim alleges that defendant "has
breached one or more provisions" of the contract, and simply incorporates the
contract into the Amended Complaint as Exhibit D. The plaintiff does not state

any facts regarding the alleged breach.            [HN3] The mere legal conclusion
that a breach has occurred does not satisfy the Rule 8 requirement of a short
and plain statement of the claim.

III. Motion to Dismiss under Fed. R. Civ. P. 12(b)(2): Specific Personal
Jurisdiction

   A. Standard of Review


            [HN4] The plaintiff bears the burden of demonstrating that

defendant's conduct satisfies the Massachusetts Long-Arm statute and that the exercise of personal jurisdiction in this case "comports with the strictures of the Constitution." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144-45 (1st Cir. 1995) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st

Cir. 1994)) (other citations omitted).          [HN5] The Court will use the prima facie standard for analyzing[*7] a motion to dismiss for want of personal jurisdiction as outlined by the First Circuit. Under this standard, the Court will "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." The plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce "evidence of specific facts." Foster-Miller, 46 F.3d at 145 (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). While Section 3(c) of the Massachusetts Long-Arm statute n2 arguably reaches the defendant, plaintiff fails to meet the burden of proving the due process requirements for establishing personal jurisdiction over a non-resident defendant.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n2          [HN6] Section 3 of the Massachusetts Long-Arm statute reads in pertinent part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth. . . ." Mass. Gen. Laws ch. 223A, @ 3. The Court assumes that defendant's alleged trademark infringement would constitute a tortious injury in the Commonwealth despite the fact that the Complaint does not clearly plead the specifics of any injury.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - - -

[*8]          [HN7]

    Constitutional due process requires that a defendant have certain "minimum contacts" with the forum state before personal jurisdiction may be recognized so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). The three requirements of this "minimum contacts" test are: (1) relatedness; (2) purposeful availment; and (3) reasonableness. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). A plaintiff must satisfy all three prongs of this test to meet the due process requirements. The First Circuit illuminated these prongs with a three-part analysis:
          [HN8]
First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state

contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's[*9] courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Foster-Miller, 46 F.3d at 144 (citing United Elec. Radio and Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).

The purposeful availment prong of the test focuses on the deliberateness of the defendant's contacts with the forum state and requires that the contracts be voluntary, see Burger King, 471, U.S. at 474-75, and foreseeable such that the defendant could reasonably be able to anticipate "being haled into court" in the forum state. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).

### B. Discussion

The plaintiff does not satisfy the second prong of the "minimum contacts" test because it has failed to allege sufficiently the defendant's purposeful availment of the laws and privileges of the Commonwealth. The sum of defendant's contacts with Massachusetts include three web pages that are accessible from Massachusetts; a contract with a Massachusetts corporation for the sale of a domain name, which is governed by a Massachusetts choice-of-law[*10] provision but which does not contain a forum-selection clause; and a one-time, unsuccessful solicitation of a Massachusetts corporation for an internet advertisement at a price of $ 14.95/month. The plaintiff has proffered no evidence that the defendant has any Massachusetts customers or that it regularly solicits business in Massachusetts. n3 Wildfire solicited the purchase of the defendant's domain name, which resulted in the 1996 contract. Grapevine's web-pages do not directly solicit Massachusetts customers, and in fact, so far as appears from the record, Grapevine can only provide internet service to customers in the 618 area code, which is located in southern Illinois. Massachusetts residents could theoretically purchase defendant's services off of its WakeUpMoney.com web page or utilize the free services of GolfTracker.com, but the existence of the pages alone, without any evidence of actual purchases by Massachusetts customers or direct solicitation of Massachusetts customers, is not sufficient to satisfy the "minimum contacts" required.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Though Wildfire argues that its efforts at discovery addressed to Grapevine's Massachusetts contacts have been stymied, it rather appears that Wildfire has been quiescent in seeking to pursue any further discovery.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*11]

Under these facts, the Court finds that defendant has not purposefully availed itself of the laws and privileges of the Commonwealth such that it could reasonably foresee being haled into a Massachusetts courtroom. The

constitutional requirements for personal jurisdiction are not satisfied, and the defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction is granted.

It is SO ORDERED.

September 28, 2001
DATE

George A. O'Toole, Jr.

DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## hFOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> ) <br> _____ ) <br> THIS DOCUMENT RELATES TO:  ) <br> ) <br> *County of Suffolk v. Abbot Laboratories,* ) <br> *Inc., et al.* ) <br> _____ ) | MDL No. 1456 <br><br> CIVIL ACTION: 01-CV-12257 PBS <br><br><br> Judge Patti B. Saris |

## <u>ORDER</u>

For the reasons set forth in the Memorandum of Law of Novartis Pharmaceuticals Corporation

in Support of Its Motion to Dismiss the County of Suffolk's Amended Complaint, IT IS HEREBY

ORDERED as follows: The Court ALLOWS the motion to dismiss and dismisses with prejudice as

to Novartis Pharmaceuticals Corporation all claims in the County of Suffolk's Amended Complaint.

Dated: _____, 2003

_____
PATTI B. SARIS, USDJ

30715944.WPD

**#12**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | M.D.L. No. 1456 |
|  | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *County of Suffolk v. Abbott Labs., Inc., et al.*, Civil Action No. 03-01643-PBS | |

## INDIVIDUAL MEMORANDUM OF PFIZER, INC. AND AGOURON PHARMACEUTICALS, INC. IN SUPPORT OF MOTION TO DISMISS SUFFOLK COUNTY'S AMENDED COMPLAINT

The Suffolk County Amended Complaint fails to meet the requirements for pleading fraud established by Rule 9(b) as articulated by this Court. *See In re Pharmaceutical Indus. AWP Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003) (the "May 13 Order").[1]  With respect to the AWP claims, Suffolk County alleges a "spread" between published AWPs and what it calls "Estimated True AWPs" for certain drugs.  Suffolk does not allege sufficient conduct by Pfizer to make this "spread" fraudulent.  Suffolk's claims related to all other, unspecified Pfizer drugs – for which there is nothing even approaching specific fraud allegations – are too limited and, therefore, must be dismissed.  Moreover, plaintiff's allegations of specific "Best Price" misconduct are too sparse to support its vast claims.  Each of these claims must be dismissed.

## I.   SUFFOLK COUNTY FAILS TO SPECIFICALLY ALLEGE THAT PFIZER ENGAGED IN ANY FRAUD RELATED TO AWP.

The Suffolk Complaint contains a chart that purports to show an AWP "spread" for ten drugs manufactured by Pfizer.[2]  Compl. ▯ 268.  Other than alleging that the chart is based on Suffolk's unspecified "investigation," the Complaint does not allege the source of the materials, how they were developed, or how they evidence fraudulent conduct by Pfizer.  Federal Rule of Civil Procedure 9(b) requires allegations of fraudulent conduct to be stated with particularity. "This Circuit takes very seriously the pleading requirements set forth by Rule 9(b) . . ." *Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 284 (D. Mass. 1998) (citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991)).

---

1/    Pfizer, Inc. and its wholly-owned subsidiary, Agouron Pharmaceuticals, Inc., (hereinafter, collectively, "Pfizer") join in and incorporate by reference the Consolidated Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint, filed September 15, 2003 ("Consolidated Memorandum").  This memorandum addresses those issues specific to Pfizer.  Pfizer also joins in and incorporates by reference the arguments made in the briefs filed by the other defendants to the extent they apply to Pfizer.

> To survive a motion to dismiss, a complaint alleging fraud must specify (1) the statements that the plaintiff contends were fraudulent, (2) the identity of the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent.

*Id.* (citing *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997).

For an allegation concerning an AWP "spread" to be sufficient, therefore, it must include an allegation that Pfizer made specific representations that the AWP represented something that it did not. The complaint fails to meet this burden, because it fails to specify the time, place, or manner of any specific statements about the AWP, other than the mere fact that they were published. *See Feinstein*, 942 F.2d 34, 42 (1st Cir. 1991) (RICO claims relying on mail and wire fraud as predicate acts must "state the time, place and content of the alleged mail and wire communications perpetrating the fraud."). Nowhere is there any claim that Pfizer represented anything to anyone about any aspect of its prices. For this reason, the AWP claims against Pfizer should be dismissed.

Moreover, based on these thinly-pleaded facts, Suffolk seeks to implicate nearly every Pfizer drug, by adding a conclusory allegation that Pfizer "engaged in similar inflationary practices" for "all covered drugs." Compl. ⁋ 269. This type of general allegation does not, however, satisfy the heightened pleading standard of Rule 9(b). "Mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)); *see also Curtis v. Duffy*, 742 F. Supp. 34, 38 (D. Mass. 1990) ("salt[ing] the complaint with the words 'falsely' and 'fraudulently' is not sufficient to meet the specificity requirement of Rule 9(b).").

---

2/    Exhibit A also references an "Estimated Actual AWP" for Viracept, manufactured by Agouron, Pfizer's wholly-owned subsidiary.

- 2 -

Likewise, it is impermissible for Suffolk County to seek to expand its flawed allegations about certain Pfizer products to summarily cover the entire Pfizer product portfolio. Rather than repeat arguments set forth in Pfizer's Individual Memorandum in Support of the Motion to Dismiss the AMCC, Pfizer incorporates those arguments by reference here. In sum, Rule 9(b) does not permit Suffolk to assert claims arising from drugs about which there has been no specific allegation of fraud.

## II.   SUFFOLK COUNTY FAILS TO ALLEGE "BEST PRICE" FRAUD CLAIMS WITH SUFFICIENT PARTICULARITY.

The allegations related to Pfizer's participation in the alleged "Best Price" scheme are even more sparse. Under the reasoning of the May 13 Order, any "Best Price" claims must require, on a drug-by-drug basis, allegations of either (1) purchases at a lower price than the best price used to calculate the rebates to the states or (2) specific sales improperly excluded from calculation of the Average Manufacturer Price (AMP). *See also LaCorte v. Merck & Co., Inc.*, No. 99-3807, slip op. at 6 (E.D. La. Aug. 27, 2003) (attached as Exh. R to Consolidated Memorandum) (best price allegations sufficient to meet Rule 9(b) must include dates of best price report submissions, name of company that submitted the report, and description of why the submission was false).

While there are general allegations of "Pfizer's failures to report Best Price as required by federal and state rebate statutes," Compl. ⏐ 270, there are no specific, drug-by-drug allegations of the "best prices" that Pfizer provided to CMS, or of "better prices" on which the rebates should have been based. To the contrary, Suffolk County admits that the only specific, drug-by-drug allegations in the Complaint – those collected in Exhibit A and excerpted throughout – do not account for any alleged Best Price conduct. Compl., ⏐ 124. Suffolk County does not allege any

- 3 -

conduct specific to any drug.[3]  Rule 9(b) does not permit Suffolk County to assert claims against Pfizer arising from drugs about which there have been no specific fraud allegations.  *See, e.g., In re Newbridge Networks Secs. Litig.*, 962 F. Supp. 166, 170-80 (D.D.C. 1997) (holding that allegations regarding certain claims must be dismissed because they did not satisfy Rule 9(b) but permitting other claims to proceed because they had been pleaded with particularity); *Hunt v. Schotz, Simon, Miller & Co.*, No. 87-2520, 1988 WL 188292, * 2-4 (D. N.J. Aug. 17, 1988) (permitting action to proceed only with respect to those fraud allegations that were pleaded with particularity under Rule 9(b)); *Ohman v. Kahn*, 685 F. Supp. 1302, 1307-09 (S.D.N.Y. 1988) (same).  These claims must, therefore, be dismissed.

## III.   CONCLUSION.

In its zeal to challenge the entire U.S. pharmaceutical industry, plaintiff's indiscriminate attack on Pfizer treats the pleading requirement of Rule 9(b) as a luxury, not a necessity.  Suffolk County's allegations of fraudulent conduct by Pfizer with respect to AWPs are too vague as to the drugs mentioned by name and too limited as to the remaining "covered drugs," which are subject to no specific fraud allegations.  Moreover, Suffolk County alleges no conduct whatsoever – let alone the specific allegations of fraud required by Rule 9(b) – to support its Best Price claims.  These claims must, therefore, be dismissed.

---

[3]   The only reference to a specific Pfizer drug is a general reference to an instance where Pfizer settled allegations related to Lipitor without admitting to any wrongdoing,  Even in this case, plaintiffs do not allege any drug-specific conduct sufficient to meet Rule 9(b).

Respectfully submitted,


BY: _____

      Mark D. Smith (BBO #542676)
      Laredo & Smith LLP
      15 Broad Street, Suite 600
      Boston, MA 02109
      (617) 367-7984 (telephone)
      (617) 367-6475 (facsimile)   .

      John C. Dodds, Esq.
      Morgan Lewis & Bockius LLP
      1701 Market Street
      Philadelphia, PA 19103
      (215) 963-5000 (telephone)
      (215) 963-5001 (facsimile)

      Scott A. Stempel, Esq.
      Gregory F. Wells, Esq.
      Morgan Lewis & Bockius LLP
      1111 Pennsylvania Avenue, N.W.
      Washington, D.C. 20004
      (202) 739-3000 (telephone)
      (202) 739-3001 (facsimile)

Dated: September 15, 2003        *Attorneys for Defendant Pfizer Inc.*

- 5 -

**#13**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | M.D.L. No. 1456<br><br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO<br><br>*County of Suffolk v. Abbott Labs., Inc., et al.*, Civil Action No. 03-01643-PBS | Judge Patti B. Saris |

## INDIVIDUAL MEMORANDUM OF PHARMACIA CORPORATION AND PHARMACIA & UPJOHN, INC. IN SUPPORT OF MOTION TO DISMISS SUFFOLK COUNTY'S AMENDED COMPLAINT

The Suffolk County Amended Complaint fails to meet the requirements for pleading fraud established by Rule 9(b) as articulated by this Court. *See In re Pharmaceutical Indus. AWP Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003) (the "May 13 Order").[1]  With respect to the AWP claims, Suffolk County alleges a "spread" between published AWPs and its vague "Estimated True AWP" for a fraction of the drugs for which it ultimately seeks relief.  Suffolk does not allege sufficient conduct by Pharmacia to make this "spread" fraudulent.  Suffolk's claims related to all other, unnamed drugs – none of which are subject to specific fraud allegations – are too limited and, therefore, must be dismissed.  Moreover, plaintiff's allegations of specific "Best Price" misconduct are too sparse to support its vast claims.  Each of these claims must be dismissed.

## I.   SUFFOLK COUNTY FAILS TO SPECIFICALLY ALLEGE THAT PHARMACIA ENGAGED IN ANY FRAUD RELATED TO AWP.

The Suffolk Complaint contains a chart that purports to show an AWP "spread" for ten drugs manufactured by "Pfizer" (only two of which were manufactured by Pharmacia).[2]  Compl. �II 268.  Other than alleging that the chart is based on Suffolk's unspecified "investigation," the Complaint does not allege the source of the materials, how they were developed, or how they

---

[1]   Pharmacia Corp. and Pharmacia & Upjohn, Inc. join in and incorporate by reference the Consolidated Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint, filed September 15, 2003 ("Consolidated Memorandum").  This memorandum addresses those issues specific to Pharmacia.  Pharmacia also joins in and incorporates by reference the arguments made in the briefs filed by the other defendants to the extent they apply to Pharmacia.

[2]   Suffolk County also lumps Sanofi-Synthelabo, Inc. into its allegations concerning "Pfizer." Sanofi-Synthelabo, Inc is an independent entity that was neither owned nor controlled by Pfizer or Pharmacia during the relevant time period. Sanofi-Synthelabo, Inc manufactured Ambien, to which Pharmacia had the exclusive North American marketing rights for a portion of the relevant time period.  To the extent that Suffolk County seeks relief for Pharmacia's marketing of Ambien, those allegations should be dismissed for the same reasons discussed herein.

evidence fraudulent conduct by Pharmacia. Federal Rule of Civil Procedure 9(b) requires

allegations of fraudulent conduct to be stated with particularity. "This Circuit takes very

seriously the pleading requirements set forth by Rule 9(b) . . ." *Lirette v. Shiva Corp.*, 27 F.

Supp. 2d 268, 284 (D. Mass. 1998) (citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875,

878 (1st Cir. 1991)).

> To survive a motion to dismiss, a complaint alleging fraud must specify (1) the
> statements that the plaintiff contends were fraudulent, (2) the identity of the
> speaker, (3) where and when the statements were made, and (4) why the
> statements were fraudulent.

*Id.* (citing *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997).

For an allegation concerning an AWP "spread" to be sufficient, therefore, it must include

an allegation that Pharmacia made specific representations that the AWP represented something

that it did not. The complaint fails to meet this burden, because it fails to specify the time, place,

or manner of any specific statements about the AWP, other than the mere fact that they were

published. *See Feinstein*, 942 F.2d 34, 42 (1st Cir. 1991) (RICO claims relying on mail and wire

fraud as predicate acts must "state the time, place and content of the alleged mail and wire

communications perpetrating the fraud."). Nowhere is there any claim that Pharmacia

represented anything to anyone about any aspect of its prices. For this reason, the AWP claims

against Pharmacia should be dismissed.

Moreover, based on these thinly-pleaded facts, Suffolk seeks to implicate nearly every

Pharmacia drug, by adding a conclusory allegation that Pharmacia "engaged in similar

inflationary practices" for "all covered drugs." Compl. ⬜ 269. This type of general allegation

does not, however, satisfy the heightened pleading standard of Rule 9(b). "Mere allegations of

fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and

schemes are too conclusional to satisfy the particularity requirement." *Doyle v. Hasbro, Inc.*,

-2-

103 F.3d 186, 194 (1st Cir. 1996) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985));
*see also Curtis v. Duffy*, 742 F. Supp. 34, 38 (D. Mass. 1990) ("salt[ing] the complaint with the
words 'falsely' and 'fraudulently' is not sufficient to meet the specificity requirement of Rule
9(b).").

Likewise, it is not sufficient that Suffolk County makes more specific allegations with
regard to other drugs sold by Pharmacia.  Rather than repeat arguments set forth in Pharmacia's
Individual Memorandum in Support of the Motion to Dismiss the AMCC, Pharmacia
incorporates those arguments by reference here.  In sum, Rule 9(b) does not permit Suffolk to
assert claims arising from drugs about which there has been no specific allegation of fraud.

## II.     SUFFOLK COUNTY FAILS TO ALLEGE "BEST PRICE" FRAUD CLAIMS
WITH SUFFICIENT PARTICULARITY.

The allegations related to Pharmacia's participation in the alleged "Best Price" scheme
are even more sparse.  Under the reasoning of the May 13 Order, any "Best Price" claims must
require, on a drug-by-drug basis, allegations of either (1) purchases at a lower price than the best
price used to calculate the rebates to the states or (2) specific sales improperly excluded from
calculation of the Average Manufacturer Price (AMP). *See also LaCorte v. Merck & Co., Inc.*,
No. 99-3807, slip op. at 6 (E.D. La. Aug. 27, 2003) (attached as Exh. R to Consolidated
Memorandum) (best price allegations sufficient to meet Rule 9(b) must include dates of best
price report submissions, name of company that submitted the report, and description of why the
submission was false).

While there are general allegations of "Pharmacia's failures to report Best Price as
required by federal and state rebate statutes," Compl. [] 270, there are no specific, drug-by-drug
allegations of the "best prices" that Pharmacia provided to CMS, or of "better prices" on which
the rebates should have been based.  To the contrary, Suffolk County admits that the only

- 3 -

specific, drug-by-drug allegations in the Complaint – those collected in Exhibit A and excerpted throughout – do not account for any alleged Best Price conduct. Compl., ⧠ 124. Suffolk County does not allege any conduct specific to any Pharmacia drug. Rule 9(b) does not permit Suffolk County to assert claims against Pharmacia arising from drugs about which there have been no specific fraud allegations. *See, e.g., In re Newbridge Networks Secs. Litig.*, 962 F. Supp. 166, 170-80 (D.D.C. 1997) (holding that allegations regarding certain claims must be dismissed because they did not satisfy Rule 9(b) but permitting other claims to proceed because they had been pleaded with particularity); *Hunt v. Schotz, Simon, Miller & Co.*, No. 87-2520, 1988 WL 188292, * 2-4 (D. N.J. Aug. 17, 1988) (permitting action to proceed only with respect to those fraud allegations that were pleaded with particularity under Rule 9(b)); *Ohman v. Kahn*, 685 F. Supp. 1302, 1307-09 (S.D.N.Y. 1988) (same). These claims must, therefore, be dismissed.

## III.   CONCLUSION.

In its zeal to challenge the entire U.S. pharmaceutical industry, plaintiff's indiscriminate attack on Pharmacia treats the pleading requirement of Rule 9(b) as a luxury, not a necessity. Suffolk County's allegations of fraudulent conduct by Pharmacia with respect to AWPs are too vague as to the drugs mentioned by name and too limited as to the remaining "covered drugs," which are subject to no specific fraud allegations. Moreover, Suffolk County alleges no conduct whatsoever – let alone the specific allegations of fraud required by Rule 9(b) – to support its Best Price claims. These claims must, therefore, be dismissed.

Respectfully submitted,

BY: _____

Mark D. Smith (BBO #542676)
Laredo & Smith LLP
15 Broad Street, Suite 600
Boston, MA 02109
(617) 367-7984 (telephone)
(617) 367-6475 (facsimile)

John C. Dodds, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000 (telephone)
(215) 963-5001 (facsimile)

Scott A. Stempel, Esq.
Gregory F. Wells, Esq.
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 (telephone)
(202) 739-3001 (facsimile)

Dated:  September 15, 2003                    *Attorneys for Defendant Pharmacia Inc.*

# #14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | CIVIL ACTION NO. 01-12257-PBS |
| ) | |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| COUNTY OF SUFFOLK ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ABBOTT LABORATORIES, INC. *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF SANOFI-SYNTHELABO INC.
IN SUPPORT OF ITS MOTION TO DISMISS**

## INTRODUCTION

Despite its purported "investigation" and ample opportunity to draft an amended complaint that complies with this Court's May 13, 2003 Order ("Order"), plaintiff's allegations against Sanofi-Synthelabo Inc. ("Sanofi") are cursory, confusing, and wholly inadequate to support the claims of fraud that form the basis of this action. The Complaint is unclear on even the most basic facts, including who Sanofi is and whether plaintiff purchased any drug manufactured or sold by Sanofi, and fails to allege with any degree of particularity any tortious act, omission, or fact attributable to Sanofi. That plaintiff cannot identify a basis for its claim is not surprising given that no government entity -- including New York -- has named Sanofi in any action. Sanofi is not even a defendant in the AMCC. Plaintiff's claims against Sanofi should be dismissed with prejudice pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## BACKGROUND

A total of three paragraphs of the entire 419-paragraph Complaint relate to Sanofi. Of the three paragraphs, not a single one pleads facts which, if proved, would constitute a fraud.[2] The first paragraph provides Sanofi's name and address (never alleging any affiliation with any defendant, including Pfizer), and conclusorily states, "Sanofi manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Suffolk County, including such medications as Plavix® and Ambien®." Compl. ¶49.

The second paragraph in the Complaint referencing Sanofi seemingly contradicts the first, by incorrectly identifying Sanofi only as a subsidiary of Pfizer and including Sanofi in the definition

---

[1] Sanofi fully adopts and incorporates by reference the arguments set forth in the Consolidated Motion to Dismiss the Amended Complaint and Supporting Memorandum of Law.

[2] For ease of reference, the three paragraphs that relate to Sanofi are set forth in their entirety at Exhibit A.

of "Pfizer Defendants" (a term that is used, with one exception discussed below, *only* in this paragraph), and by conclusorily stating that the Pfizer Defendants "routinely has [sic] reported or caused to be reported, inflated AWPs, resulting in overcharges to Suffolk" and then listing the seventeen drugs for which the "Pfizer defendants reported false and inflated AWPs." Compl. ¶268.[3] The Complaint does not include any allegations regarding "Sanofi Defendants." In the list of "Pfizer Defendant" drugs, none are ever clearly alleged to be manufactured by Sanofi, and only one -- Ambien -- is even remotely connected in the Complaint to Sanofi. Whereas plaintiff states in ¶49 of the Complaint that Ambien is manufactured and/or sold by Sanofi, it states in Appendix B that Ambien is manufactured by "Pfizer (or Sanofi)." Sanofi is not referenced at all in Appendix B with regard to any of the other sixteen "Pfizer Defendant" drugs -- only Pfizer is listed as their manufacturer. To further obfuscate matters, Plavix is identified in ¶49 as a Sanofi drug, but plaintiff later lists Plavix as solely a Bristol Myers Squibb drug, and alleges that Bristol Myers Squibb (and not Sanofi) improperly inflated Plavix's AWP. Compl. ¶¶32, 194.[4] The internal inconsistency in the Complaint about such fundamental facts as to which company manufactures or sells Ambien or Plavix, which company sets their AWPs or reports their "best prices," or which (if any) other drugs form the basis for plaintiff's claim against Sanofi (and not Pfizer or Bristol Myers Squibb), illustrates the unspecific and perplexing nature of plaintiff's allegations against Sanofi.

The last paragraph in the Complaint that conceivably could relate to Sanofi is the only paragraph in the Complaint (other than ¶268) that refers to the "Pfizer Defendants." Compl. ¶341(v). This paragraph does not mention Sanofi at all, and merely parrots the language of the Manufacturer-

---

[3] The rest of Section VI of the Complaint refers only to other defendants and to "Pfizer" and therefore by plaintiff's own definitions do not relate to Sanofi. Compl. ¶¶269-79.

[4] Appendix B lists Plavix as manufactured by "Bristol Myers Squibb (or Sanofi)." Plaintiff does not appear to be alleging any claims against Sanofi based on Plavix. Sanofi is not included as a Bristol Myers Squibb defendant nor mentioned in any discussion within the Complaint regarding Plavix. To the extent plaintiff is asserting such a claim against Sanofi, it too must be dismissed for the reasons stated in this motion.

Publisher Enterprise count employed for every other defendant in the Complaint, inserting without explanation or limitation, the term "Pfizer Defendants." *Id.* Even assuming that plaintiff has satisfactorily alleged that Sanofi manufactured or sold Ambien or Plavix or played any role in setting their AWPs or "best prices" (which plaintiff has not), not one of the three paragraphs regarding Sanofi in the Complaint contains anything other than bald, nonspecific allegations, which do nothing more than underscore the absence of any specific facts as to Sanofi.

## ARGUMENT

### I.    Plaintiff's Claims Must Be Dismissed For Lack Of Particularity

#### A.    Plaintiff Fails To Provide Any Examples Of Unlawful Conduct Involving Sanofi.

Contrary to the requirement that plaintiff make allegations specific to each defendant,[5] nowhere in the 193-paragraph section regarding specific allegations against defendants (Section VI of the Complaint) does plaintiff ascribe any allegedly tortious conduct to Sanofi. Not a single paragraph in this section is dedicated to Sanofi. Instead, Sanofi is haphazardly lumped into one paragraph related to the "Pfizer defendants" that only conclusorily alleges that the "Pfizer defendants" reported or caused to be reported false and inflated AWPs for a list of drugs, to only one of which Sanofi is alleged to have had any connection. Compl. at ¶268. The Complaint does not include a single example of unlawful conduct involving Sanofi. For this reason alone, all of plaintiff's claims against Sanofi should be dismissed.

---

[5] Where, as here, there is no allegation of conspiracy or other concerted action among the defendants, it is critical that the Complaint make its allegations with specificity as to each defendant. As Judge Keeton held in dismissing *Goebel v. Schmid Bros., Inc.*, "when multiple defendants are involved in cases arising in this circuit, Rule 9(b) requires that fraud be alleged particularly *as to each defendant.*" 871 F.Supp 68, 73 (D. Mass. 1994) (emphasis added). *Accord Sebago, Inc. v. Beazer East, Inc.*, 18 F.Supp.2d 70, 79 (D. Mass. 1998) ("Where, as here, the complaint involves multiple defendants, then '*each defendants' role must be particularized* with respect to their alleged involvement in the fraud'") (*quoting Kuney Int'l SA v. DiIanni*, 746 F.Supp. 234, 237) (D. Mass. 1990) (emphasis added).