UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL NO. 1456<br><br>Master File No. 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENTS RELATES TO ALL ACTIONS ) ) ) ) ) | |

### THE TOGETHER RX DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS V, VI, VII, VIII, AND X OF THE AMENDED COMPLAINT

The core argument advanced by the Together Rx Defendants in support of the motion to dismiss is that plaintiffs allege a conspiracy that makes no economic sense.

In response, plaintiffs in their Opposition agree "that an antitrust conspiracy complaint must allege an economically plausible theory to avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6)." (Opp. at 10.) Plaintiffs themselves describe this as a "well-grounded proposition" of antitrust law. (Opp. at 10 n.9.)

Yet plaintiffs have not come forward with an economically plausible theory to explain the conspiracy they allege. To the contrary, in response to the Together Rx Defendants' arguments (Opening Mem. at 10-15) as to why the alleged conspiracy makes no economic sense, plaintiffs rely on a series of arguments that are clearly flawed and cannot serve as plausible explanations for the claimed conspiracy.

### A. Plaintiffs Do Not Identify a Motivation for the Conspiracy that Makes Economic Sense

Plaintiffs rely heavily on the conclusory assertion, which they repeat without explanation several times, that the supposed conspiracy was "an attempt to set and stabilize pharmaceutical prices" (Opp. at 1, 3, 11) and was meant to "raise, fix, maintain and/or stabilize the AWP spread" (Opp. at 4) or to "preserve [the] industry's lucrative pricing structure" (Opp. at 12). Elsewhere they assert, again without explanation, that the supposed conspiracy was meant to "fix, maintain and/or stabilize the AWP 'spread'" to create "'spread dollars' available to others in the distribution chain." (Opp. at 5, 13.) But those conclusory statements of the supposed motivation for the conspiracy are directly and fundamentally at odds with the balance of the Amended Complaint, in which plaintiffs allege that the defendant drug manufacturers compete with each other by offering spreads that are larger than their competitors. (*See* AMCC ¶¶ 2-5.) Plaintiffs cannot have it both ways -- their own factual allegations, which must be taken as true for purposes of the motion to dismiss, directly contradict their argument that the Together Rx Defendants had an economic incentive to agree on a uniform WAC-to-AWP spread. (*See* Opening Mem. at 13-15.)

It bears emphasis that Plaintiffs here are not simply pleading alternative legal theories; rather, they allege directly contradictory facts. For instance, the chart at Paragraph 591 of the Amended Complaint claims that the WAC-to-AWP spreads on a range of Together Rx drugs were maintained by an alleged agreement at a uniform level of 25%. Yet each drug listed on that chart is also identified earlier in the Amended Complaint as being among a larger group of drugs as to which individual defendants, on their own, allegedly engaged in fraudulent conduct to "inflate AWPs" above those of its competitors. (*See, e.g.*, AMCC ¶¶ 201 (Abbott's Biaxin), 231

2

(AstraZeneca's Prilosec), 250 (Aventis's Allegra), 327 (BMS's Tequin), 376 (GSK's Combivir), 436 (J&J's Risperdal), 446 (Novartis's Exelon)).[1]

Plaintiffs themselves effectively concede that their Together Rx allegations are contrary to the other allegations of the Amended Complaint. In the two-paragraph section where they address the point (Opp. at 14-15), they do not dispute that the allegations of an agreement to set a uniform WAC-to-AWP spread are at odds with the core allegations of the AMCC, but rather say that the Together Rx conspiracy "involves only the Together Card Drugs" and given the timing of alleged conspiracy "could only involve a small portion of Plaintiffs' Together Card Claims." But those are no answers at all; plaintiffs never explain why the Together Rx Defendants would conspire to set a "uniform spread" on certain drugs while allegedly their economic incentives on all other drugs are to set larger spreads than their rivals. (*See* Opening Mem. at 14-15.)

Plaintiffs' own allegations of the economic motivations of the drug manufacturers, taken as true, thus contradict the allegation that there is a rational economic motivation for the Together Rx Defendants to agree on a uniform WAC-to-AWP spread. When plaintiffs claim (Opp. at 12) that this conspiracy was intended to "quell rampant AWP inflation," their own position is squarely foreclosed by the directly contrary factual allegations found throughout the Amended Complaint that defendants constantly inflated AWPs to increase market share. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 46 n.12 (1st Cir. 1991) ("when pleaded facts are effectively contradicted by the pleader's submissions or concessions, such facts need not be

---

[1] Indeed, virtually every Together Rx Drug is identified earlier in the Amended Complaint as among those for which individual defendants have allegedly sought to "inflate AWPs" above those of competitors. *Compare* AMCC ¶ 568 with ¶ 201, ¶ 569 with ¶ 231, ¶ 570 with ¶ 250, ¶ 571 with ¶ 327, ¶ 572 with ¶ 376, ¶ 573 with ¶ 436, and ¶ 574 with ¶ 446.

3

credited for purposes of Rule 12(b)(6)"); *In re Livent, Inc. Noteholders Sec. Lit.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (same) (citing cases).

Plaintiffs further assert (without any citation to their complaint) that the supposed agreement "allowed the Together Rx Defendants to stabilize discounts on their Together Card Drugs -- in that all of the Together Rx Defendants could begin to discount from the same pricing benchmark." (Opp. at 12.) However, there is no allegation in the Amended Complaint that discounts under the Together Rx program are determined based on AWP or the WAC-to-AWP spread, nor is there any allegation of a common "pricing benchmark" for Together Rx transactions.[2] To the contrary, the Amended Complaint alleges that each Together Rx member company "sets its own levels of savings independently." (AMCC ¶ 579) (quoting www.together-rx.com). In the sole specific example cited in the Amended Complaint, Novartis is alleged to offer its drugs under the Together Rx program to certain customers at "$12 flat fee per prescription" and to others at a specific-dollar subsidy. Under those Novartis examples or more broadly under the two types of transactions described in the Amended Complaint -- a flat fee or fixed-dollar subsidy (*see* Opening Mem. at 10-11) -- the level of AWP or the WAC-to-AWP spread will not affect the amounts paid by the Together Rx member company. Plaintiffs' suggestion that this conspiracy can be explained as setting "the same pricing benchmark" is again contrary to the allegations of the Amended Complaint.

---

[2] The Opening Memorandum in fact stressed that "there is no allegation in the Amended Complaint that retail pharmacies uniformly, routinely, or even ever set their prices to cash-paying customers on the basis of AWP." (Opening Mem. at 11.) Plaintiffs do not dispute this point in their Opposition.

4

### B. Data on Changes In AWP Levels Do Not Overcome the Lack of an Economic Rationale for the Alleged Conspiracy

Plaintiffs assert that the public data on percentage differences between published WACs and AWPs is by itself sufficient to avoid the motion to dismiss. (Opp. at 6-7.) But plaintiffs themselves acknowledge, only a few pages later in their brief, that they "must allege an economically plausible theory to avoid dismissal." (Opp. at 10.) Put differently, under the governing law that plaintiffs themselves acknowledge, these observations of changes in published AWPs (even accepting them as true) are simply not sufficient to permit the conspiracy allegations to continue unless plaintiffs also can come forward with an economically rational explanation as to why the claimed conspiracy makes sense. (*See* Opening Mem. at 7-9.) Otherwise, a conspiracy could be inferred in virtually any industry where prices move in tandem -- often for reasons having nothing to do with any conspiracy.[3] The governing test, as plaintiffs themselves acknowledge, must be whether they can advance a factual theory that makes economic sense.

In any event, even taking plaintiffs' data on WAC-to-AWP spreads at face value, this is not sufficient to support their alleged conspiracy. First of all, the suggestion that these comparisons show an increase in "prices" is contrary to the general thrust of the Amended Complaint, which asserts that AWPs are not real prices. (*See, e.g.*, AMCC ¶ 3.)

---

[3] For instance, there are clearly factors other than "conspiracy" that could cause published AWPs to move in parallel. As noted in defendants' Opening Memorandum (p. 4 n.4), publishers determine AWP by multiplying WAC by a factor of their choosing. Thus, a publisher's choice of a different multiplier could cause the WAC-to-AWP spread to change from one period to the next in a way that would be "uniform" for a whole range of drugs. For purposes of this motion, the factual point need not be resolved or addressed. It suffices to note simply that there are other factors that can lead to changes in the published "spread," which reinforces the wisdom of the case law emphasizing that conspiracy allegations should be supported by an economically rational factual theory rather than speculation drawn from mere observations of published "prices."

5

But even assuming, contrary to the Amended Complaint, that these "spreads" reflect "prices" set by the manufacturers, this is not a sufficient basis to support an antitrust conspiracy claim. Courts have long recognized that observations of parallel price movements are not by themselves sufficient to establish a conspiracy. *See Clamp-All Corp v. Cast Iron Soil Pipe Institute*, 851 F.2d 478, 484 (1st Cir. 1988) (evidence of "identical price lists . . . would not permit a finding of more than such individual, interdependent, price setting"); *see also In re Citric Acid Litigation*, 191 F.3d 1090, 1102 (9th Cir. 1999) ("A section 1 violation cannot, however, be inferred from parallel pricing alone."); *Wallace v. Bank of Bartlett*, 55 F.3d 1166 (6th Cir. 1995) ("parallel pricing, without more, does not itself establish a violation of the Sherman Act"); *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 253 (2d Cir. 1987) ("parallel conduct alone will not suffice as evidence of . . . a conspiracy, even if the defendants knew the other defendant companies were doing likewise") (quotation omitted); *United States v. Chas. Pfizer & Co.*, 367 F. Supp. 91, 101 (S.D.N.Y. 1973) ("parallel pricing . . . standing alone, does not indicate price fixing"). Courts have granted motions to dismiss under Rule 12(b)(6) on the same basis. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989); *Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, 2001 WL 1468168, at *13 (S.D.N.Y. Nov. 19, 2001).

These cases, rejecting inferences of conspiracy based merely on parallel prices, reflect the more general principle that an antitrust conspiracy cannot properly be inferred merely from an observation of supposedly parallel events in the marketplace. This is particularly so where, as here, the observed parallel conduct is inconsistent with the defendants' economic interests. *See Illinois Corporate Travel, Inc. v. American Airlines*, 806 F.2d 722, 726 (7th Cir. 1985) (plaintiff must allege that defendant "acted in a way that, but for a hypothesis of joint action, would not be

6

in its own interest"). Thus, the allegations of parallelism do not overcome the fundamental flaw of the AMCC: It does not allege a conspiracy that makes economic sense.[4]

## CONCLUSION

The parties agree that the Together Rx conspiracy allegations must be dismissed if they do not make economic sense. The Together Rx Defendants respectfully submit that plaintiffs have not come forward with a plausible economic explanation for the supposed conspiracy, and accordingly that the Together Rx claims should be dismissed.

Respectfully Submitted,

Joseph L. Kociubes, BBO # 276360
Charles L. Solomont, BBO # 557190
Mary B. Murrane, BBO # 644448
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

September 30, 2003

---

[4] To avoid burdening the Court with repetitive briefing, we will not repeat here the arguments related to plaintiffs' RICO claims that are set out in the reply filed separately on behalf of all defendants. The arguments in that reply on RICO standing and causation are equally applicable to plaintiffs' contentions in their Opposition to the Together Rx motion. The Together Rx Defendants incorporate those RICO arguments here by reference.

7

## CERTIFICATE OF SERVICE

I certify that on September 30, 2003, a true and correct copy of the foregoing Reply Memorandum in Support of the Together Rx Defendants' Motion to Dismiss Counts V, VI, VII, VIII and X of the Amended Complaint was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.

Mary B. Murrane