UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

In Re:  PHARMACEUTICAL INDUSTRY    :   MDL NO. 1456
AVERAGE WHOLESALE PRICE        :
LITIGATION                       :   Master File No. 01-CV-12257-PBS
                                 :

THIS DOCUMENT RELATES     :   Judge Patti B. Saris
TO ALL ACTIONS              :
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEY, INC.'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897

Attorneys for Dey, Inc.

Of Counsel:

Paul F. Doyle
Neil Merkl
Philip D. Robben

## I.     INTRODUCTION

Defendant Dey, Inc. ("Dey") submits this reply memorandum in further support of its motion to dismiss all claims asserted against it in Plaintiffs' Amended Master Consolidated Class Action Complaint (the "AMCC").[1]

## II.    ALL CLAIMS AGAINST DEY IN THE AMCC CONCERN MULTIPLE-SOURCE DRUGS AND SHOULD BE DISMISSED

All claims asserted against Dey should be dismissed since, as Plaintiffs concede by not contending otherwise, these claims concern multiple-source drugs. As the Court previously held, the reimbursement scheme for multiple-source drugs under Medicare Part B does not fit Plaintiffs' own paradigm of fraud. *See In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 177, 195 (D. Mass 2003) [hereinafter "*AWP Litig.*"] ("plaintiffs have not framed their claims to include such drugs"). Despite several pages of their memorandum dedicated to an attempt to shoehorn multiple-source drugs into their fraud theory, Plaintiffs do not – because they cannot – address the regulatory provisions controlling payment for multiple-source drugs which render competition based on AWP "manipulation" impossible in the Medicare Part B context.[2]

Faced with these facts, Plaintiffs shift gears and argue that competition based on AWP is possible *outside* of the Medicare Part B context where reimbursement is made by private payors. This argument does not save Plaintiffs' claims since, as Plaintiffs have already conceded, they often reimburse at a fixed rate, *i.e.*, a maximum allowable cost or "MAC" (AMCC ¶ 181), which is akin to

---

[1]     Dey also joins in the Consolidated Reply Memorandum of Law In Support of Defendants' Motion To Dismiss the Amended Master Consolidated Class Action Complaint (the "Consolidated Reply"), which is incorporated herein by reference.

[2]     Plaintiffs have conceded, by not arguing otherwise, that their out-of-context references to Dey's action against First DataBank (the "FDB Action") cannot support the notion that Dey or any other Defendant competes on the basis of AWP manipulation in the Medicare Part B context. Bizarrely, however, Plaintiffs purport to rely upon the mere existence of the FDB Action to lend support to their RICO manufacturer-publisher enterprise allegations in that the FDB Action allegedly evidences the publishers' "knowledge" of inflated AWPs. (Pl. Mem. at 22-23.) Of course, Plaintiffs fail to reconcile these allegations concerning the FDB Action with the fact that it would be an odd RICO enterprise in which the members resorted to litigation to resolve disputes as to the enterprise's affairs. Naturally, RICO enterprises do not behave in such a fashion, undercutting Plaintiffs' reliance upon the FDB Action.

the flat rate provided for under the Medicare Part B regulations and the use of which would similarly render competition on the basis of AWP impossible. However, Plaintiffs have completely failed to allege anything concerning the mechanics of their reimbursement methodology, so that it is impossible to tell which multiple-source drugs Plaintiffs pay for based on AWP and which they pay for at a flat-rate MAC. This failure is particularly indefensible since these facts are certainly within Plaintiffs' knowledge; they simply chose not to provide them. Under Rules 8(a) and 9(b), neither the Defendants nor this Court should be required to guess which drugs fall into which category. All claims concerning multiple-source drugs should, therefore, be dismissed.

## III.   PLAINTIFFS IGNORE THEIR FAILURE TO SATISFY RULE 9(b) AS TO DEY

Plaintiffs hardly address the arguments in Dey's opening memorandum concerning Rule 9(b), which Plaintiffs cynically choose to ridicule rather than address on the merits. Rather, Plaintiffs merely put forth a summary of the AMCC's allegations as to Dey, which Dey already demonstrated are vague and conclusory. The failures Dey pointed out are not cured by Plaintiffs' senseless repetition of the same allegations. As such, all claims against Dey should be dismissed.

## IV.   PLAINTIFFS' RELIANCE UPON MANUFACTURED EVIDENCE SHOULD BE REJECTED

As Dey noted in its opening memorandum, Plaintiffs complaint contains a table which Plaintiffs allege is "excerpted" from a Dey document. (AMCC ¶ 360, Table 1.) In fact, as Dey demonstrated, the table is not a true excerpt but, rather, contains a fabricated column – titled "% Spread" – Plaintiffs use to give their fraud allegations a facade of credibility. Incredibly, caught manufacturing evidence, Plaintiffs resort to the argument that this type of conduct is of no moment since the math they used to create the fabrication is accurate. Plaintiffs' argument lacks merit.

Plaintiffs' claims in this action rely upon the notion that Defendants engage in competition based on the fraudulent manipulation of AWP to create a so-called "spread" and that Defendants then use the spread in the marketing of their drugs. The column Plaintiffs created and added to the table

- 2 -

in the AMCC was clearly designed to create the misimpression that Dey distributed the document as part of a "pricing proposal" which blatantly contained a column marketing the spread, lending apparent support to Plaintiffs' allegations.  This use of manufactured evidence should be rejected.

## V.   PLAINTIFFS DO NOT OPPOSE DISMISSAL OF CERTAIN OF THEIR CLAIMS AGAINST DEY

As Dey noted in its opening memorandum, Plaintiffs failed to comply with the clear instructions from the Court in that: (a) no Plaintiff alleges that it purchased Dey's drug metaproterenol sulfate, (b) Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund is not alleged to have purchased any drugs from Dey, and (c) none of the Association Plaintiffs alleges that they have purchased drugs manufactured by Dey.  All of these claims should be dismissed.  *See AWP Litig.*, 263 F. Supp. 2d at 194.  Indeed, Plaintiffs concede that these claims should be dismissed in that they fail to present any arguments in support of these claims.

## VI.   CONCLUSION

For the foregoing reasons, as well as those stated in the Consolidated Reply and the individual memoranda of other Defendants addressing common issues, the Court should dismiss the Amended Master Consolidated Class Action Complaint as to Dey with prejudice.

Respectfully submitted,

Dated:  September 30, 2003

KELLEY DRYE & WARREN LLP

By: _____
    Paul F. Doyle
    Neil Merkl
    Philip D. Robben

101 Park Avenue
New York, New York  10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897

Attorneys for Dey, Inc.