UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris |

## INDIVIDUAL REPLY MEMORANDUM OF FUJISAWA HEALTHCARE, INC. AND FUJISAWA USA, INC. IN SUPPORT OF THE MOTION TO DISMISS THE AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

Defendants Fujisawa Healthcare, Inc. and Fujisawa USA, Inc. (collectively referred to as "Fujisawa") submit this brief in response to Plaintiffs' Memorandum in Opposition to Defendant-Specific Memoranda ("Opposition"), and in further support of the Motion to Dismiss the Amended Master Consolidated Class Action Complaint ("AMCC").

**1. Plaintiffs Must Plead, At a Minimum, How Much They Paid For Fujisawa Drugs in Order to Satisfy Rule 9(b).** Plaintiffs argue that their allegations against Fujisawa are detailed enough to satisfy Rule 9(b). Opposition at 52. Plaintiffs maintain that merely alleging that they purchased the drugs and that they "overpaid" for those drugs states a fraud claim with particularity. *Id.* Moreover, Plaintiffs contend that it is impossible for them to identify a drug's "true" average wholesale price because they do not possess the requisite data. Opposition at 7-8.

The problem with the AMCC, however, is not that it fails to plead an *average* of all prices paid, but that it fails to plead how much *Plaintiffs* paid for drugs they claim they purchased. If, in fact, the Plaintiffs identified in Appendix B did buy the Fujisawa drugs listed in Appendix A, then they must know how much *they* paid. Plaintiffs cannot maintain an action for fraud --the essence of which is that they overpaid -- without alleging the prices they actually paid. Plaintiffs have this information and they must plead it in order to meet Rule 9(b).

**2. Rule 9(b) Is Designed Not Only To Ensure That Fujisawa Is Informed of the Claims Against It, But to Prevent Strike Suits and Fishing Expeditions as Well.** Plaintiffs argue that their vague allegations are specific enough so that "Fujisawa will not have to guess as to what is at issue in the case." Opposition at 52. Even if Fujisawa were able to discern the claims against it from the vague allegations of the AMCC, Rule 9(b) requires specificity for reasons other than merely informing defendants of claims against them.

As the First Circuit has held time and again, Rule 9(b) is not only intended to "place the defendants on notice and enable them to prepare meaningful responses;" but to "preclude the use of groundless fraud claims as a pretext to discovering a wrong or as a 'strike suit,'" and "to safeguard defendants from frivolous charges that might damage their reputations" as well. *Doyle v. Hasbro*, 103 F.3d 186, 194 (1st Cir. 1996). "The First Circuit has also recognized that Rule

9(b) was intended to discourage the filing of suits in the hope of 'turning up relevant information during discovery' or 'obtaining an increased settlement.'" *Driscoll v. Landmark Bank for Sav.*, 758 F.Supp. 48, 52 (D.Mass. 1991). As stated in Fujisawa's initial memorandum, Rule 9(b) requires the "who, what, when and where" of fraud allegations. The AMCC does not plead fundamental facts such as how much any plaintiff paid for any Fujisawa drug, when any transactions occurred, or which PBM was involved in those transactions.

### 3. Plaintiffs' Fabrication of Fujisawa AWPs Is Symptomatic of Their Lack of Legitimate Knowledge Regarding Any Fraudulent Behavior By Fujisawa.

The general theory of the AMCC is that all drug manufacturers inflated the AWPs of their drugs, which caused the Plaintiffs to overpay. When the Plaintiffs failed to find the basic facts it needed to support this claim against Fujisawa, *e.g.*, AWPs in the Red Book for drugs they claimed were sold by Fujisawa, they made them up.

The AMCC specifically identifies AWPs purportedly set by Fujisawa for certain multi-source generic drugs from 1999 to 2001. AMCC, Exhibit A. However, these alleged AWPs were fabricated. They do not appear in the Red Book or any other any published price compendium. In fact, had Plaintiffs merely examined their own records they would have known that they did not purchase any Fujisawa multi-source generic drugs after 1998 and discovery will show that Fujisawa did not sell those drugs after 1998. Fujisawa attached the relevant pages from the Red Book (the source cited by the AMCC) to its memorandum to demonstrate the blatant falsity of Plaintiffs' allegations.

When Plaintiffs were caught in this lie they responded by arguing that: (1) some companies other than Fujisawa did in fact report AWPs for the identified drugs from 1999 to 2001; (2) the AMCC alleges that the AWPs for those drugs were found in (unidentified) sources other than the Red Book, so providing only the Red Book pages does not disprove the AMCC's allegations; and (3) the government referred to AWPs published by Fujisawa for those drugs in a report issued on September 8, 2000, which should suffice to show Plaintiffs' good faith in making the allegations. Opposition at 53. Finally, Plaintiffs note that if only Fujisawa had told

Plaintiffs what they needed to know to draft an accurate complaint, counsel could have "resolved the issue." *Id.* at fn 19.

Plaintiffs' arguments are nonsensical. The fact that other companies sold the same multi-source drugs mentioned in the AMCC and published AWPs for them has no bearing on whether Fujisawa did, or whether it could be held liable for fraud during those time periods. Plaintiffs' veiled reference to other potential sources of AWPs is spurious. As Plaintiffs themselves acknowledge in the AMCC, the Red Book is an exhaustive list of published AWPs, and the absence of any reference to AWPs published by Fujisawa is dispositive. Finally, the government report provided by Plaintiffs makes no reference to dates of publication of any of the AWPs it lists, and even if it did, an error on the government's part does not excuse Plaintiffs' fabrication.

Attorneys have an affirmative duty under Rule 11 to conduct a "reasonable investigation" before signing a pleading. *Business Guides, Inc. v. Chromatic Communications Enter.*, 498 U.S. 533, 541 (1991) (factual investigation insufficient as to accuracy of directory where allegations and purported evidence were discounted after only a few telephone calls by court's clerk). *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (finding allegations "completely baseless" and pleading "grossly inadequate" where false allegation that exclusive agreements were made in every major city in the United States was backed only by telephoning salespersons in four eastern cities).

Apparently no such investigation was conducted in this case. Plaintiffs did not even review their own records to determine if they had paid for these drugs in the relevant years. Nor did they refer to the Red Book (cited countless times in the AMCC), which would have revealed that Fujisawa did not report any AWPs for the relevant drugs and years. This lack of investigation, and accompanying lack of detailed, legitimate allegations, is evident throughout the claims brought against Fujisawa. The Court should dismiss Plaintiffs' claims against Fujisawa with prejudice.

3

BINGHAM MCCUTCHEN LLP

By: *S. Elaine McChesney /MT*
S. Elaine McChesney
150 Federal Street
Boston MA 02110
(617) 951-8501
(617) 951-8736 (fax)

REED SMITH LLP

By: *Kathleen H. McGuan /MT*
Kathleen H. McGuan
Andrew L. Hurst
1301 K Street NW
Suite 1100 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)

*Michael Scott /MT*
Michael T. Scott
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100
(215) 851-1420 (fax)

Attorneys for Defendants Fujisawa USA, Inc. and Fujisawa Healthcare, Inc.

Dated: October 1, 2003

4