# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) ) ) ) | Judge Patti B. Saris |

## REPLY MEMORANDUM OF LAW OF NOVARTIS PHARMACEUTICALS CORPORATION IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

30724565.WPD

## INTRODUCTION

In its Memorandum of Law ("NPC Mem."), Novartis Pharmaceuticals Corporation ("NPC") established that: (1) four association plaintiffs lack standing as to NPC because they fail to plead that they or their member(s) purchased any NPC drug; (2) Count III must be dismissed because it is not pled as to NPC with the particularity mandated by Fed. R. Civ. P. 9(b); and (3) Count IV must be dismissed because plaintiffs do not meet threshold state law requirements. As demonstrated below, nothing in plaintiffs' opposing memoranda alters these conclusions.[1]

## ARGUMENT

### I. PLAINTIFFS CONCEDE FOUR ASSOCIATION PLAINTIFFS THAT DO NOT IDENTIFY MEMBERS WHO PURCHASED NPC DRUGS LACK ARTICLE III STANDING AS TO NPC.

This Court already has dismissed on standing grounds association plaintiffs that fail to allege "specific members who purchased a specific drug from a specific company." *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003); NPC Mem., Point I. Because plaintiffs Vermont Public Interest Research Group ("VPIRG"), Wisconsin Citizen Action ("WCA"), Citizen Action of New York ("CANY") and Citizens for Consumer Justice ("CCJ") do not identify any member who purchased NPC drugs, these plaintiffs' claims against NPC must be dismissed. Plaintiffs do not deny that these associations fail to allege the purchase of NPC drugs by any member and state only that "[NPC's] standing argument has been addressed elsewhere." Plaintiffs' Separate Memorandum in Opposition to Defendant-Specific Memoranda ("Pl. Sep. Opp.") at 60. "Elsewhere," plaintiffs acknowledge as to another defendant that association plaintiffs that do not identify a member who purchased a defendant's drugs lack standing as to that defendant (*id.* at 31). Accordingly, plaintiffs implicitly concede that VPIRG, WCA, CANY and CCJ lack standing as to NPC and all claims against NPC by these four plaintiffs must be dismissed.

### II. PLAINTIFFS DO NOT PLEAD SPECIFIC FACTS AS TO NPC THAT SATISFY F.R.C.P. 9(b).

NPC demonstrated (NPC Mem. at 2-3) that the allegations in the AMCC specific to NPC are scarce – NPC is named in its individual capacity solely in six paragraphs – and do not satisfy Fed. R. Civ. P. 9(b)'s mandate to plead fraud with particularity. In opposition (Pl. Sep. Opp. at 59), plaintiffs claim – *without citing to the AMCC or any other support* – that "several governmental investigations" confirm NPC's involvement in the alleged AWP inflation scheme.

---

[1] NPC joins in and incorporates by reference defendants' consolidated reply memorandum, the Together Rx reply memorandum and reply memoranda of individual defendants. In this regard, NPC joins the argument that all claims relating to multiple source drugs should be dismissed. NPC notes that Exhibit B to defendants' moving consolidated memorandum inadvertently identified as multiple source drugs three NPC drugs listed in Appendix A to the Amended Master Consolidated Class Complaint ("AMCC") – Estraderm, Ritalin LA and Vivelle DOT. These three drugs in fact are coded as single source drugs.

30724565.WPD

The AMCC, however, identifies only one investigation, supposedly relating to the NPC drug Aredia (¶447). Significantly, Aredia: (i) is *not* an NPC drug for which plaintiffs purport to seek relief, (ii) is *not* included in Appendix A, which purportedly identifies the fraudulent AWPs on which plaintiffs base their claims, and (iii) is *not* included in Appendix B, which purportedly identifies those plaintiffs that purchased the drugs at issue. Thus, there are no specific allegations or documentation of misconduct relating to NPC beyond a purported investigation of a drug which is not part of plaintiffs' claims.

Plaintiffs' apparent premise is that they need allege merely that NPC is a pharmaceutical company to meet Fed. R. Civ. P. 9(b) requirements. But, having allegedly undertaken a "massive review of each Defendant, its products and its pricing conduct with respect to those products" prior to filing the AMCC (Pl. Sep. Opp. at 4), plaintiffs' abject failure to plead any facts on which to state a claim against NPC constitutes a compelling admission that such facts do not exist. *See Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 68 (D. Mass. 2000) ("It is fair to expect a plaintiff to state the particulars and, if she does not, to conclude that sufficient particulars do not exist.").

## III. PLAINTIFFS DO NOT DENY THAT THEY FAIL TO PLEAD THRESHOLD STATE LAW STATUTORY REQUIREMENTS.

NPC demonstrated (NPC Mem. at 3-5) that (i) some of the state laws invoked do not provide plaintiffs a private right of action and (ii) other state law claims can not be maintained because the named plaintiffs do not reside in and the alleged misconduct does not have a connection to the state. Plaintiffs do not respond directly to NPC's arguments but refer the Court (*see* Pl. Sep. Opp. at 60) to Point VII of plaintiffs' memorandum in opposition to the defendants' consolidated memorandum in which, *inter alia*, plaintiffs implicitly concede that: (i) Delaware's Deceptive Trade Practices Act does not permit a private cause of action (and plaintiffs apparently waive any claim under this Act); and (ii) Louisiana's Unfair Trade Practices and Consumer Protection Law does not provide a private right of action to bring a representative suit. Plaintiffs also do not dispute that non-resident plaintiffs lack standing under certain state laws.[2] Instead, plaintiffs argue that this Court should postpone to some "later date" (Pl. Sep. Opp. at 60-61) consideration of their standing to pursue these state law claims. However, standing is a "'threshold question'" to be

---

[2] Plaintiffs improperly rely on *Millennium Comms. & Fulfillment, Inc. v. Fla.*, 761 So.2d 1256 (Fla. Dist. Ct. App. 3rd Dist. 2000), which is brought by the Florida Attorney General and not by private plaintiffs as here. Moreover, *Millennium* states only that the provisions of the Florida Trade and Unfair Practices Act can apply to non-residents where the allegations are of "offending conduct occurring inside Florida" (*id.* at 1262-63). There is no allegation that any conduct relating to claims against NPC took place in Florida.

decided before consideration of class certification issues or the merits. *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (citation omitted); *Adair v. Sorenson*, 134 F.R.D. 13, 16 n.3 (D. Mass 1991).

Moreover, "[a] court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members." *Adair*, 134 F.R.D. at 16, *citing Warth v. Seldin*, 422 U.S. 490, 502 (1975). Where, as here, named plaintiffs lack standing to pursue claims on their own behalf, they likewise cannot seek relief on behalf of a class. *O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974); *Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976). Plaintiffs thus lack standing to assert class claims under laws of states in which they do not reside or allege their injury occurred. *See, e.g., Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (N.Y. 2002) (dismissing N.Y. Gen. Bus. L. §349 claims of out-of-state plaintiffs who allege no injury in New York); *Association for Disabled Americans, Inc. v. 7-Eleven, Inc.*, 2002 U.S. Dist. LEXIS 6163, at *14-16 (N.D. Tex. Apr. 10, 2002) (dismissing state law claims except as based on the law of the state in which plaintiffs reside), Ex. A.

Plaintiffs also wrongly argue that because other *defendants* may be based in a particular state, "a nationwide class is appropriate under [that state's] law and that law applies to all" (Pl. Sep. Opp. at 60). In fact, it would be *unconstitutional* to apply the law of a state to non-resident defendants for conduct outside of the state affecting non-resident plaintiffs. *E.g., Healy v. Beer Inst.*, 491 U.S. 324, 336-37 (1989) (Connecticut beer pricing statute affecting conduct beyond state boundaries is unconstitutional); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (applying Kansas law to every claim in a class action is unconstitutional where Kansas does not have significant contact to the claims asserted by each class member).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the moving memoranda, defendants' consolidated reply memorandum and reply memoranda of Together Rx and individual defendants, the Court should dismiss as to NPC: (1) all claims by plaintiffs VPIRG, WCA, CANY, and CCJ; (2) Count III; and (3) Count IV.

Dated: Boston, Massachusetts
September 30, 2003

Of counsel:
Jane W. Parver
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-7153

Karen F. Green (BBO# 209050)
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Novartis Pharmaceuticals Corp.*

# EXHIBIT A

ASSOCIATION FOR DISABLED AMERICANS, INC., DANIEL RUIZ and
JORGE LUIS RODRIGUEZ, On Their Own A behalf and On Behalf of
All Other Individuals Similarly Situated, Plaintiffs, v.
7-ELEVEN, INC., Defendant.

Civil No. 3:01-CV-0230-H

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
TEXAS, DALLAS DIVISION

2002 U.S. Dist. LEXIS 6163

April 10, 2002, Decided
April 10, 2002, Filed, Entered

DISPOSITION:   [*1]   Class certification DENIED on the merits, proposed consent decree DISAPPROVED and, to the extent plaintiffs assert state accessibility claims beyond the applicable Florida law, such claims DISMISSED.

CORE TERMS: disability, mobility, disabled, impairment, blind, visual, standing to assert, accessibility, adjudicate, state law, settlement, class certification, class action, membership, consent decree, qualify, personal stake, lack standing, failed to demonstrate, case-or-controversy, threshold, visited, standing to raise, certification, putative, discriminatory treatment, federal jurisdiction, broad discretion, office building, standing issue

COUNSEL: For ASSOCIATION FOR DISABLED AMERICANS INC, DANIEL RUIZ, JORGE LUIS RODRIGUEZ, plaintiffs: Steven G Palmer, Attorney at Law, Palmer Allen & McTaggart, Dallas, TX USA.

For ASSOCIATION FOR DISABLED AMERICANS INC, DANIEL RUIZ, JORGE LUIS RODRIGUEZ, plaintiffs: William N Charouhis, Attorney at Law, William N Charouhis & Associates, Miami, FL USA.

For ASSOCIATION FOR DISABLED AMERICANS INC, plaintiff: Elaine B Feingold, Attorney at Law, Law Office of Elaine B Feingold, Berkeley, CA USA.
For 7-ELEVEN INC, defendant: David N Kitner, Attorney at Law, Strasburger & Price, Bank of America, Dallas, TX USA.

JUDGES: BAREFOOT SANDERS, SENIOR JUDGE, UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF TEXAS.

OPINIONBY: BAREFOOT SANDERS

OPINION: MEMORANDUM OPINION AND ORDER

This matter is before the Court for final certification of a class and approval of a consent decree. The Court preliminarily approved the settlement class definition and proposed consent decree by its Order of August 28, 2001. The Court conducted a fairness hearing on December 17 & 18, 2001, and the issue of final certification is now ripe for decision. n1

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 The following individuals and groups filed objections to the class definition and proposed consent decree: (1) the American Council of the Blind,

California Council of the Blind, Don Brown, Kathy Martinez, Kelly Pierce, and Lillian Scaife ("Council of the Blind"); (2) Twelve State Protection and Advocacy Agencies ("Twelve State Agencies"); and (3) Class Member Carrie Ann Lucas. In response to these objections, the parties filed their Joint Consolidated Response; the Council of the Blind and the Twelve State Agencies have each filed Replies in Support of their Objections. Since the fairness hearing, the Court has received a Notice of Recent Supplement Authority from the plaintiffs, filed February 21, 2002, and a Response to that Supplemental Authority by Ms. Elaine Feingold, Counsel for the Council of the Blind, filed February 28, 2002.

The objections, taken as a whole, argue that the proposed consent decree is unfair to members of the class, inconsistent with the ADA and the regulations promulgated thereunder, and that the notice to class members was defective or lacking. With regard to this last point, the Council of the Blind stresses that notice was defective as to many members of the putative class.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*2]

I. BACKGROUND

The present suit was filed by the Association for Disabled Americans, Inc. ("the Association"), Daniel Ruiz and Jorge Luis Rodriguez, on their own behalf and behalf of all those similarly situated, against 7-Eleven, Inc. ("7-11"). Plaintiffs seek injunctive relief based on 7-11's alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, et seq. The Association and the two individual plaintiffs are Florida residents. See Complaint, filed February 2, 2001, PP 2-3. The defendant, 7-11, is based in Dallas. The evidence, meager though it is, indicates that the Association's membership includes those with visual, hearing, and mobility impairments. See Dec. 17, 2001 Transcript ("TR. 1"), at 87. The evidence also indicates that Plaintiff Ruiz is a paraplegic and that Plaintiff Rodriguez is a quadriplegic. See id. at 99-100. The plaintiffs seek class certification pursuant to FED. R. CIV. P. 23(b)(2) to adjudicate all disabled persons' Title III claims against 7-11. See Unopposed Motion for Order Granting Approval of Proposed Consent Decree, filed July 24, 2001. The Court preliminarily [*3] certified a class consisting of:

All persons who have or claim they have, or will have or will claim they have, been denied full and equal access to or been discriminated against under Title III of the ADA or regulations promulgated thereunder, or under similar federal or state statutory, administrative, regulatory or common law relating to accessibility, at or in connection with one or more 7-Eleven stores and gas station facilities in the United States, because they have an impairment that substantially limits a major life function including but not limited to individuals with mobility disabilities, dexterity, vision, or hearing disabilities.

Order, filed August 28, 2001, at 2.

The size of this huge putative class is estimated to be between 43 and 53 million persons. See Complaint P 6(i); Objections by Twelve State Agencies, filed October 22, 2001, at 4.

The Council of the Blind challenges the plaintiffs' standing to assert the accessibility claims of all individuals that qualify as "disabled" under

federal and state law. See Dec. 18, 2001 Transcript ("TR. 2"), at 35-38. The Court agrees with the Council of the Blind on this point, and, for the reasons outlined [*4] in this opinion, final certification of the class is DENIED.

III. STANDING

The plaintiffs' standing presents a threshold challenge which the Court must address before determining the propriety of class certification. See 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS aa 2.05-.07 (3d ed. 1992) [hereinafter NEWBERG] (stating that the threshold standing issue is distinct from the capacity to represent a class under FED. R. CIV. P. 23). Federal jurisdiction is limited by Article III, a 2, of the U.S. Constitution to actual cases and controversies. U.S. CONST. art. III, a 2, cl. 1; United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395, 63 L. Ed. 2d 479, 100 S. Ct. 1202 (1980). The case-or-controversy requirement serves to limit the business of federal courts to "questions presented in the adversary context and in a form historically viewed as capable of resolution through the judicial process." Geraghty, 445 U.S. at 396, 63 L. Ed. 2d 479, 100 S. Ct. 1202 (quoting Flast v. Cohen, 392 U.S. 83, 95, 20 L. Ed. 2d 947, 88 S. Ct. 1942( 1968)); Dallas Gay Alliance v. Dallas County Hosp. Dist., 719 F. Supp. 1380, 1383 (N.D. Tex. 1989) [*5] (Sanders, J.).

The case-or-controversy limitation of Article III requires that a party invoking federal jurisdiction have standing--that is, a personal stake in the outcome. See, e.g., Baker v. Carr, 369 U.S. 186, 204, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962). In order to satisfy this requirement and demonstrate Article III standing, a plaintiff has the burden of proving the following three requirements: (1) that he or she suffered an "injury in fact;" (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); see also Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 48 L. Ed. 2d 450, 96 S. Ct. 1917 (1976); Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001). The standing question focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. [*6] " Simon, 426 U.S. at 38 (quoting Warth v. Seldin, 422 U.S. 490, 498-99,

45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975)) (emphasis in original). At a minimum, Article III requires a party invoking federal jurisdiction to show that he has personally suffered some actual injury or is in immediate danger of sustaining some direct injury in fact as a result of the allegedly illegal conduct of the defendant. Lujan, 504 U.S. at 560-61; O'Shea v. Littleton, 414 U.S.4 88, 494, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974).

Even though standing principles were developed outside the class action context, the limitations of Article III apply to class actions. Dallas Gay Alliance, 719 F. Supp. at 1384; see also 1 NEWBERG a 2.06. If none of the requisite case-or-controversy with the defendant, then none may seek relief on behalf of himself or any other member of the purported class. O'Shea, 414U .S. at 494; see also 1 NEWBERG a 2.06. In the context of an ADA class action, a plaintiff qualifying as "disabled" under the ADA only has [*7] standing to assert those claims related to his disability. See Lujan, 504 U.S. at 560 n.1 (noting that "particularized injury" means an injury that affects the plaintiff in an individual and personal way); Bomer, 274 F.3d at 218-19 (noting the same); Steger v. Franco, 228 F.3d 889, 893 (8th Cir. 2000) (stating that to allow a blind plaintiff standing to assert claims on behalf of

all individuals that qualify as disabled under the ADA would expand the standing doctrine beyond the limits of Article III). Because standing is determined at the lawsuit's commencement, the Court's standing inquiry must be guided by the facts of the case as they existed at the time the suit was filed. Lujan, 5 04 U.S. at 570-71 n.5 (plurality opinion).

With these standing requirements in mind, the Court now turns to consider the plaintiffs' standing to raise the claims of the class defined by the Court's August 28 Order.

1. Standing Under the ADA

The plaintiffs are seeking to represent a class made up of all persons who have, claim they have, or will claim they have a claim of discrimination against 7-11 under Title III of the ADA. [*8] Stated another way, the plaintiffs seek to adjudicate all of the Title III claims that disabled persons have against 7-11.

As previously stated, the plaintiffs are two individuals and one organization. Though the plaintiffs bear the burden of demonstrating their standing to seek relief on their asserted claims, the plaintiffs have presented few factual allegations, and even less evidence, on the standing issue. Turning first to the two individual plaintiffs, the Complaint lacks any statement of their disabilities; instead, it includes only conclusory allegations such as "[the individual plaintiffs] are individuals with disabilities under and as defined by the ADA." Complaint P 3; see generally Complaint. There was testimony at the fairness hearing that Mr. Ruiz is a paraplegic and that Mr. Rodriguez is a quadriplegic, yet that testimony was elicited by the Court, not by the plaintiffs. See TR. 1, at 99-100. Nonetheless, as that testimony was not challenged or contradicted, the Court finds that both Ruiz and Rodriguez qualify as mobility impaired under the ADA, and were so qualified at the time this suit was filed.

Similar to the individual plaintiffs' disabilities, the [*9] record largely lacks factual allegations and supporting evidence of the Association members' disabilities. In order to have standing to assert Title III claims in this Court, the Association must demonstrate, inter alia, that its individual members could raise these claims on their own behalf. Hunt v. Wash. StateA pple Adver. Comm'n, 432 U.S. 333, 343, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977); Bomer, 274 F.3d at 219 n.5. The Complaint alleges that the Association's membership includes individuals with mobility, vision, and hearing impairments, and testimony at the fairness hearing supported these allegations. See Complaint P 10; TR. 1, at 87. The Complaint also alleges that the Association's members include those with "other physical and mental disabilities." Complaint P 10. However, the only evidence in the record of the Association members' disabilities is that the membership includes those with hearing, visual, and mobility impairments. See TR. 1, at 87. n2 The bold allegation of "other physical and mental disabilities" is far too general to demonstrate that the Association's members have a personal stake in the outcome of the Title III [*10] claims of every person that qualifies as disabled under the ADA. See, e.g., Simon, 426 U.S. at 38.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Despite the Association counsel's claim that the Association includes individuals "with all sorts of disabilities," the only evidence of the memberships' disabilities points to members with hearing, visual, and mobility impairments. See TR. 2, at 19; TR. 1, at 87. In this regard, the

Court notes that the record largely lacks any evidence related to the Association and its membership. The same lack of evidence applies to the individual plaintiffs as well.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Taken together, the two individual plaintiffs and the Association have demonstrated the requisite standing to pursue Title III claims against 7-11 related to mobility, visual, and hearing impairments and satisfied the case-in-controversy requirements of Article III with regard to these disabilities. See _Geraghty, 445 U.S. at 396; Simon, 426 U.S. at 38_. The plaintiffs also have standing to pursue Title III [*11] claims on behalf of others with discrimination claims against 7-11 related to the plaintiffs' own disabilities. See _Lujan, 504 U.S. at 560 n.1; Bomer, 274 F.3d at 218-19; Steger, 228 F.3d at 893;_ 1 NEWBERG a 2.06.

While the plaintiffs have standing to pursue Title III claims related to their disabilities, the Court must reject plaintiffs' claim that this limited standing confers carte blanche standing to pursue the Title III claims that every disabled person may have against 7-11. In this regard, the Court finds the Eighth Circuit's opinion in Steger v. Franco, Inc. persuasive. In that case, five plaintiffs sued to bring an office building into ADA compliance; all of the plaintiffs qualified as disabled under the ADA. After affirming the dismissal of four plaintiffs who lacked standing because they failed to demonstrate an injury in fact, the court focused its discussion on the final plaintiff, Patrick Burch, who was blind. _Steger, 228 F.3d at 891-93._ After finding that Burch had demonstrated an injury in fact and standing to sue under the ADA, the court addressed the scope of Burch's standing under the ADA. [*12] Id. Burch argued that since he was a qualified individual with a disability under the ADA, he had standing to seek relief for all ADA violations in the office building at issue. Id. The court, however, disagreed. It noted that in order to satisfy the injury in fact requirement, the party seeking relief must be himself among the injured. _Id. at 893._ With regard to ADA violations related to blindness, Burch was clearly among the injured; however, Burch was not among the injured with regard to ADA violations unrelated to blindness. Id. Granting Burch standing to seek relief for every ADA violation on behalf of all disabled individuals "would expand the standing doctrine beyond the limits of Article III." Id.

As with the plaintiffs in Steger, the present plaintiffs request that the Court grant them standing to pursue claims beyond the scope of Article III. As noted, the plaintiffs have, at most, standing to pursue claims related to visual, hearing, and mobility impairments. However, it is undisputed that disabilities beyond these three categories are recognized and protected by the ADA. To allow these plaintiffs to adjudicate all discrimination claims [*13] against 7-11 arising under Title III exceeds the limitations imposed on this Court by Article III. This is true because these plaintiffs have only barely demonstrated an injury in fact with regard to ADA violations related to hearing, visual, and mobility impairments. In other words, plaintiffs are only among the injured for ADA violations related to their own disabilities. While other members of the putative class may have standing to pursue ADA claims related to disabilities beyond those held by the plaintiffs, a named plaintiff cannot acquire standing to assert a claim by bringing a claim on behalf of others who would have standing by virtue of their injury in fact if they were named plaintiffs. See 1 NEWBERG a 2.06. In short, "standing cannot be acquired through the back door of a class action." Id. Thus, the plaintiffs lack standing to pursue the Title III claims of all persons that qualify as disabled under the ADA. The plaintiffs lack standing to assert any ADA claims beyond those related

30724565.WPD                                5

to hearing, visual, and mobility impairments. To the extent plaintiffs assert Title III claims for disabilities beyond these three categories, such claims are DISMISSED.

2. Standing [*14] to Bring State Law Claims

Even if the Court were to assume, arguendo, that the plaintiffs had standing to assert the Title III claims of all disabled persons, the plaintiffs would still lack standing to assert all of the state law claims held by members of the class.

The proposed class definition includes claims that arise under state laws that are analogous to Title III of the ADA. Again, as a threshold matter, the plaintiffs must demonstrate their standing to assert these claims in their own right; absent such a showing, the plaintiffs cannot assert the state claims on behalf of others. See O'Shea, 414 U.S. at 494. However, the plaintiffs have presented absolutely no evidence of their standing to assert a claim under the laws of any state other than Florida. It is undisputed that the two individual plaintiffs and the Association are Florida residents. Yet, these plaintiffs seek to adjudicate any and all claims arising under the accessibility laws of every other state and the District of Columbia. For instance, plaintiffs seek to adjudicate all claims that may arise under TEX. HUM. RES. CODE ANN. § 121.001 et seq., the Texas state accessibility statute. [*15] However, the plaintiffs have presented no evidence that any of them suffered an injury in fact under Texas law at the time this suit was filed. There is no allegation or evidence that either the individual plaintiffs or the Association's members have ever visited Texas, or suffered any discriminatory treatment at a 7-11 located in Texas. In fact, there is no evidence that the plaintiffs, including the Association's members, have ever been to a 7-11 outside the state of Florida. n3 Thus, plaintiffs have failed to demonstrate any injury in fact under the laws of any state other than Florida. As such, plaintiffs lack a personal stake in the outcome of the various state law claims they seek to adjudicate. See, e.g., Simon, 426 U.S. at 38. As plaintiffs have failed to demonstrate they have standing to raise a claim under the laws of any state other than Florida, they cannot raise state claims other than those from Florida on behalf of others. See O'Shea, 414 U.S. at 494. The plaintiffs lack standing to assert state law accessibility claims apart from those based on Florida law. To the extent plaintiffs assert state accessibility claims beyond the applicable [*16] Florida law, such claims are DISMISSED. n4

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 The Complaint and evidence before the Court raise only an inference, at best, that the named plaintiffs visited a 7-11 in the state of Florida prior to filing this suit. However, the Court assumes, for purposes of this opinion only, that the plaintiffs have visited 7-11s in Florida and suffered discriminatory treatment at those 7-11 stores in violation of Title III of the ADA and similar Florida statutes.

n4 This holding is consistent with the general rule that federal class action settlements may release state law claims. See, e.g., In re Corrugated Container Antitrust Litig., 643 F.2d 195, 221 (5th Cir. 1981) (noting that "a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint."). Courts have broad discretion in releasing potential claims in the context of a class action settlement. For instance, even if the Court lacks the

power to adjudicate a claim, the Court may approve the release of that claim as a condition of settlement. See Matsushita Elec. Industrial Co. v. Epstein, 516 U.S. 367, 376-77, 134 L. Ed. 2d 6, 116 S. Ct. 873 (1996); Corrugated Container, 643 F.2d at 221. However, even with this broad discretion, the referenced authorities do not authorize this Court to release claims by way of a settlement that the plaintiffs would have no standing to raise in any court. See id. This is consistent with the general rule that class actions are not to be used as back doors to gain standing. See 1 NEWBERG @ 2.06. To hold otherwise would essentially allow the parties to adjudicate claims through the release clause of a class settlement that Article III precludes them from adjudicating before the Court.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*17]
IV. CLASS CERTIFICATION

The Court finds that the named plaintiffs have not satisfied the class certification requirements of Rule 23. Standing principles are related to the typicality, commonality, and adequacy of representation requirements under Rule 23. See 1 NEWBERG @ 2.05. Rule 23(a)(2) requires that the class share common issues of law and fact. Rule 23(a)(3) requires that the named plaintiffs' claims be typical of the class claims. Rule 23 requirements "limit the class claims to those fairly encompassed by the named plaintiff's claims." Vuyanich v. Republic Nat. Bank of Dallas, 723 F.2d 1195, 1199 (5th Cir. 1984) (quoting General Telephone Co. v. Falcon, 457 U.S. 147, 156, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982)). "In addition, a class representative must 'possess the same interest and suffer the same injury' as the class members." Id. (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216, 41 L. Ed. 2d 706, 94 S. Ct. 2925 (1974)).

As discussed with regard to standing, the named plaintiffs share neither the same interest nor the same injury as all members of the class. With regard hearing, visual, and mobility impairments do not fairly encompass Title III claims based on other disabilities. To use the parlance of Rule 23, plaintiffs' claims are neither common nor typical of claimants that may assert Title III claims based on disabilities other than the plaintiffs'. As for the state law accessibility claims, the plaintiffs have not suffered an injury in fact under the laws of any state other than Florida; therefore, the plaintiffs do not possess claims typical of those who may claim they have suffered injuries under the accessibility laws of states other than Florida.

V. CONCLUSION

For the foregoing reasons, class certification is DENIED on the merits and the proposed consent decree is DISAPPROVED.

SO ORDERED.

DATED: April 10, 2002.

BAREFOOT SANDERS, SENIOR JUDGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS