UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | M.D.L. No. 1456<br><br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*ALL CLASS ACTIONS* | |

**INDIVIDUAL REPLY MEMORANDUM OF PFIZER INC. IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

In its Individual Memorandum, Pfizer pointed out that, far from claiming a spread between AWP and secret, discounted transaction prices, the AMCC merely accuses Pfizer of maintaining a spread between AWP and WAC – prices that plaintiffs acknowledge are publicly posted.[1] In their response, plaintiffs fail to explain how a "spread" between publicly-posted prices could ever be fraudulent. In fact, plaintiffs do not address this issue at all. Instead, they hope that the Court will allow an avalanche of rote, conclusory allegations about the existence of an industry-wide scheme to excuse their utter failure to comply with Rule 9(b) in pleading Pfizer's alleged fraud. Plaintiffs' failure – after nearly two years of litigation, two chances to amend their complaint, and a self-professed "massive review of each Defendant"[2] – demonstrates that they lack any information about a supposed fraud by Pfizer and only hope that the Court will keep Pfizer in the case because it is a pharmaceutical company and, therefore, must be guilty by association.

## I. PLAINTIFFS FAIL TO ALLEGE FACTS THAT COULD POSSIBLY SHOW THAT PFIZER COMMITTED FRAUD.

Plaintiffs' fraud theory is that the defendants inflated the publicly-available AWP while charging providers secret, lower transaction prices. *See* AMCC ¶¶ 2-7. But plaintiffs' own Complaint alleges that Pfizer followed a different paradigm. Plaintiffs allege that Pfizer committed fraud by "secretly increas[ing] the AWP/WAC spread to 25% for all of its brand name drugs...." *See* AMCC, ¶ 453. To make this allegation, plaintiffs ignore their own, contradictory allegation that both Pfizer's AWP and WAC were publicly posted. *See* AMCC ¶ 451. Plaintiffs' response does not address, let alone explain, how or why a purported "spread"

---

[1]     *See* Individual Memorandum of Pfizer, Inc. in Support of Motion to Dismiss the AMCC ("Pfizer Memo"), p. 1.

[2]     *See* Plaintiffs' Separate Memorandum in Opposition to Defendant-Specific Memoranda on Motions to Dismiss ("Separate Memo"), p 4.

between two publicly-posted prices could ever be fraudulent. This concession alone defeats plaintiffs' claim that Pfizer's alleged changing of the spread was fraudulent. *See Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) (in deciding motion to dismiss, district court does not have to accept as true alleged facts that have been contradicted by plaintiff's complaint).

Rather than address this fundamental deficiency, plaintiffs seek to hide it behind references to Pfizer's alleged "illegal practices with respect to Lipitor." Separate Memo, p. 61. As noted in Pfizer's Individual Memorandum, however, plaintiffs simply do not explain how a settlement with the government related to Medicaid rebates for Lipitor – in which Pfizer did not admit liability – has any bearing on plaintiffs' AWP claims. Pfizer Memo, pp. 4-5. Moreover, plaintiffs do not explain their conclusory allegation that "the provision of education grants and rebates on Lipitor also had the effect of inflating the reported AWP." Separate Memo, p. 61. Indeed, this claim is flatly inconsistent with their allegation that the AWP was simply "fabricated" out of thin air. *See* AMCC ¶ 138.

Finally, plaintiffs state that, "[t]o the extent more is required, discovery of Pfizer should be permitted …." Separate Memo, p. 62. This request reveals the baselessness of plaintiffs' claims. As mentioned above, plaintiffs claim that they conducted "a massive review of each Defendant, its products and its pricing conduct," including consultations "with pharmaceutical industry experts and insiders." Separate Memo, p. 4. In filing the AMCC, plaintiffs certified that their claims "have evidentiary support." Fed. R. Civ. P. 11(b)(3); *see Rodriguez-O'Ferral v. Trebol Motors Corp.*, 1993 WL 261993 at * 4 (1st Cir. July 9, 1993) (unpub'd) ("Were these RICO plaintiffs licensed to launch a belated 'fishing expedition' on the brink of a dismissal, without having made at least one *manifest allegation* of actionable fraud, we would invite commonplace abuse of civil RICO and routine deferral of the particularized pleading required by

Rule 9(b)."). Pfizer should not be subjected to discovery in pursuit of claims that make no sense and never should have been brought in the first place.

## II. THREE ASSOCIATIONS LACK STANDING AGAINST PFIZER.

Plaintiffs apparently concede that three association plaintiffs[3] lack standing to pursue claims against Pfizer. Plaintiffs' only discussion of association standing concerns whether a party who purchased one or more drugs from a company can pursue claims relating to all of that company's drugs under the juridical linkage doctrine. *See* Separate Memo, pp. 13-17. This Court has already rejected the notion that juridical linkage allows an association to maintain claims against a defendant-manufacturer where, as here, none of its members have purchased any of that defendant's drugs. *See In re Pharmaceutical Industry AWP Litig.*, 263 F. Supp. 2d 172, 193 (D. Mass. 2003).[4] Because these association plaintiffs do not allege that they or their members purchased any Pfizer drugs, they lack standing and their claims should be dismissed.

## CONCLUSION

Other than the fact that Pfizer is a large, successful pharmaceutical company with deep pockets,[5] plaintiffs have provided no reason why Pfizer was named as a defendant, and certainly have provided no specific facts to support a claim of fraud. If Rule 9(b) means anything, Pfizer should again be dismissed from this action.

---

[3] Vermont Public Interest Research Group ("VPIRG"), New York StateWide Senior Action Council ("StateWide"), and Citizens for Consumer Justice ("CCJ").

[4] Plaintiffs' rote conspiracy allegations do not salvage a juridical linkage claim with respect to Pfizer because they fail to allege a single conspiratorial act by Pfizer and, therefore, lack the particularity required by Rule 9(b). *See* Defendants' Consolidated Memorandum, pp. 24-26.

[5] *See* AMCC, ¶ 450.

Respectfully submitted,

BY: /s/ Mark D. Smith

Mark D. Smith (BBO #542676)
Laredo & Smith LLP
15 Broad Street, Suite 600
Boston, MA 02109
(617) 367-7984 (telephone)
(617) 367-6475 (facsimile)

John C. Dodds, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000 (telephone)
(215) 963-5001 (facsimile)

Scott A. Stempel, Esq.
Gregory F. Wells, Esq.
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 (telephone)
(202) 739-3001 (facsimile)

Dated: September 30, 2003

*Attorneys for Defendant Pfizer Inc.*

- 4 -