

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

2003 OCT 17 P 5: 01

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| This Document Relates to ALL ACTIONS. | |

## PLAINTIFFS' SURREPLY BRIEF IN OPPOSITION TO THE TOGETHER RX DEFENDANTS' MOTION TO DISMISS COUNTS V, VI, VII, VIII AND X OF THE AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

### I.     INTRODUCTION

Nowhere in their Opening or Reply Briefs do the Together Rx Defendants deny the critical factual allegations surrounding the Together Rx conspiracy.[1]  Instead, the Together Rx Defendants reiterate their misguided arguments that such allegations contradict others within the AMCC – and, therefore, do not make economic sense.  Contrary to the Together Rx Defendants' arguments, however, the factual allegations surrounding the Together Rx conspiracy support an economically plausible theory of antitrust liability under 15 U.S.C. § 1.  Accordingly, the Together Rx Defendants' Motion to Dismiss should be denied.

---

[1] *See* Plaintiffs' Memorandum of Law in Opposition to the Together Rx Defendants' Motion to Dismiss ("Plaintiffs' Response") at p. 6 (bullet-point summary of facts which the Together Rx Defendants do not deny in their motion papers before this Court).

44165.1

I

## II.   ARGUMENT

**A.    The Economically Plausible Together Card Scheme Does Not Contradict the AWP Payor Scheme**

The Together Rx Defendants' core contention in support of their argument that the Together Card allegations make no economic sense is that such allegations purportedly conflict with others within the AMCC.  Specifically, the Together Rx Defendants contend that they could not conspire to stabilize AWP spreads (the "Together Card scheme") while simultaneously competing with each other (and other Defendant Drug Manufacturers) on the basis of AWP spreads (the "AWP Payor scheme"). The Together Rx Defendants' claimed contradiction, however, simply does not exist.

Plaintiffs allege that the Defendant Drug Manufacturers (including the Together Rx Defendants), as part of the AWP Payor scheme, inflated AWPs and manipulated AWP spreads as early as January of 1991 in an effort to incentivize providers to prescribe their drugs over those of the competition, thereby increasing market share.  *See* AMCC Sections IV, V, VI.  As a result, Plaintiffs and other third-party payors, who typically reimburse health care providers for pharmaceuticals based on AWP, were forced to pay fraudulently inflated prices for their drugs.  ¶ 541.  What resulted was an exorbitantly priced drug market.  ¶ 547.  In fact, the Defendant Drug Manufacturers were so successful in manipulating AWP spreads in this manner that they invoked the wrath of the market and the scrutiny of Congress and state governments, all of whom pay for drugs based on the AWP benchmark. *See* ¶¶ 549, 550.

Recognizing that regulatory and political pressures might curtail drug pricing abuses, the Together Rx Defendants joined forces to stave off market pressures and government reform.  ¶ 550.  In April 2002, the Together Rx Defendants announced their alliance, Together Rx, LLC, which purportedly offered drug discounts to seniors.  ¶ 562.  What followed was the near simultaneous increase in AWP/WAC spreads for Together Card drugs, and as a consequence, higher drug

reimbursement or end-payor prices for Plaintiffs and the Class. ¶ 588. Through the Together Rx alliance, the Together Rx Defendants increased and stabilized AWP spreads for hundreds of drugs utilized by Together Rx Card enrollees and non-enrollees alike. ¶ 590. The incentive, which the Together Rx Defendants ignore in their briefing, was to stabilize the market and thereby: (1) preserve the pharmaceutical industry's pricing structure in the face of price discounting and other competitive pressures; and (2) respond to widespread public and political outrage over escalating drug costs. *See* Plaintiffs' Response at p. 11.

Plaintiffs' allegations are entirely consistent with the law set forth in *United States v. Container Corp. of America*, 393 U.S. 333, 338 (1969), that "stabilizing prices as well as raising them is within the ban of § 1 of the Sherman Act." (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940)). Through the Together Card scheme, the Together Rx Defendants removed spread as a competitive factor amongst certain industry participants. In effect, the Together Rx Defendants stabilized competitive pressures on hundreds of widely prescribed pharmaceuticals and likely kept government reform at bay. The Together Rx Defendants' economic incentive to engage in such a conspiracy can likely be projected as billions of dollars.

The Together Rx Defendants correctly state in their Reply Brief that the AWPs of the Together Card drugs, whose spreads were securely stabilized as a result of the Together Card scheme, were once inflated and manipulated by the Together Rx Defendants as part of the AWP Payor scheme. *See* The Together Rx Defendants' Reply Brief in Support of Their Motion to Dismiss ("TRx Reply") at p. 2. Contrary to the Together Rx Defendants' contentions, however, the transition from one unlawful practice to another does not render either theory contradictory or economically implausible.

First, the Together Card scheme involves only the Together Card drugs – while the AWP Payor scheme involves the hundreds of drugs identified in Appendix B to the AMCC. ¶¶ 566-75. Plaintiffs have no doubt that the Together Rx Defendants, throughout the course of their ongoing and unrelated

Together Card scheme, continue to manipulate and/or increase AWPs to gain market share for their respective non-Together Card drugs. Second, any purported inconsistency between the AWP Payor scheme and the Together Card scheme could only involve a small portion of Plaintiffs' Together Card claims. Upon information and belief, the Together Rx Defendants began to conspire sometime in 2001 – a *full decade after* the start of the proposed Class Period for Plaintiffs' non-Together Card claims. ¶¶ 542, 596. Finally, as practical matter, there is nothing inherently inconsistent about the Together Rx Defendants competing for market share within the lucrative pricing structure they conspired to preserve.

Furthermore, with respect to Plaintiffs' assertion that the Together Card scheme allowed for the stabilization of drug discounts, the Together Rx Defendants erroneously contend that the AMCC fails to allege that such discounts are determined based on AWP. *See* TRx Reply at p. 4. In fact, the AMCC *specifically* alleges that Plaintiffs and the Class purchased Together Card drugs with purported discounts based on AWP.

For example, the AMCC quotes directly from an April 10, 2002 press release in which the Together Rx Defendants claim that Together Card enrollees will purportedly save "approximately 20-40% off the amount [they] *usually pay* for prescriptions and, in many cases, substantially more." ¶ 579 (emphasis added). The AMCC subsequently alleges that the Together Card enrollees – as end payors – pay prices at the pharmacy "*typically based on AWPs.*" ¶ 587 (emphasis added). *See also* ¶ 134 ("Use of the published AWPs to establish reimbursement rates for drugs is an industry-wide practice and exists with respect to all classes of drugs, brand name and generic and is used for Part B drugs and non-Part B drugs.").[2] Notwithstanding flat-fee discount arrangements, the Together Card scheme enabled the Together Rx Defendants to stabilize discounts by agreeing to discount from the same AWP

---

[2] Noticeably absent from the Together Rx Defendants' Reply Brief is any evidence that they provided discounts to Together Card enrollees based on *anything other than AWP*.

44165.1

4

pricing benchmark – even if they set the specific amount of the discount "independently." ¶ 579.  *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656 (7th Cir. 2002), *cert. denied, A.E. Stanley Mftg. Co. v. Dellwood Farms, Inc.*, 154 L.Ed.2d 1019 (2003) (finding that "[a]n agreement to fix list prices is . . . a per se violation of the Sherman Act even if most or for that matter all transactions occur at lower prices.  Anyway sellers would not bother to fix list prices if they thought there would be no effect on transaction prices.").

In short, Plaintiffs' allegations involving both the Together Rx scheme and the AWP Payor scheme are wholly compatible.  Consequently, because the factual allegations of the AMCC support an economically plausible theory of liability under 15 U.S.C. § 1, the Together Rx Defendants' Motion to Dismiss should denied.

### B.      The AMCC Adequately Alleges The Together Rx Defendants' Conspiracy

The Together Rx Defendants further claim that the AMCC's Together Card claims should be dismissed because Plaintiffs have not sufficiently alleged an antitrust conspiracy.[3]  As a preliminary matter, the Together Rx Defendants' argument should not be considered because it was raised for the first time in their Reply Brief.  *See Wortley v. Camplin*, 333 F.3d 284, 292 n.8 (1st Cir. 2003) ("The argument, made for the first time in a reply brief, comes too late.") (citation omitted).

Beyond the procedural impropriety, the Together Rx Defendants' argument fails because the AMCC alleges far more than parallel pricing.  The AMCC alleges that the Together Rx Defendants:

---

[3] The Together Rx Defendants also claim that the AMCC's Together Card claims should be dismissed because "there are clearly factors other than 'conspiracy' that could cause published AWPs to move in parallel." TRx Reply at 5, n.3.  However, the only other "factor" offered by the Together Rx Defendants is the alleged involvement of publishers in establishing AWPs. *Id.* As explained in Plaintiffs' Response, however, this purported factor is belied by the Together Rx Defendants' own documents. *See* Plaintiffs' Response at p. 1, n.3.  Furthermore, the alleged involvement of publishers in establishing AWPs only raises a question of fact inappropriate for resolution on a motion to dismiss. *See Hewlett-Packard Co. v. Boston Scientific Corp.*, 77 F. Supp. 2d 189, 195 (D. Mass. 1999).

- Designed the Together Card program to facilitate the sharing of price information amongst pharmaceutical companies. ¶ 546;

- Publicly urged seniors to enroll in the Together Card in order to obtain political cover for their conspiracy. ¶¶ 576-83;

- Encouraged other pharmaceutical companies to participate in the conspiracy to increase the efficacy of the conspiracy and to obtain political cover for it. ¶ 580;

- Fixed the purported discounts offered to Together Card enrollees. ¶¶ 584-94;

- Conspired to impose the burden of the cost of the Together Card program on Plaintiffs by raising reimbursement or end payor prices. ¶ 587; and

- Fixed and maintained the AWP spreads of nearly every one of more than 170 drugs in the Together Card program. ¶ 588.

- Used the Together Card scheme to raise, fix, maintain and/or stabilize the AWP spreads while claiming to provide drug savings to seniors. ¶ 584.[4]

The Together Rx Defendants' mischaracterization of Plaintiffs' Together Card allegations as a "follow the leader" parallel pricing scheme ignores the depth of these conspiracy allegations. For this reason, the cases relied on by the Together Rx Defendants, which analyze parallel pricing conspiracies in industries with identical products or otherwise address "simple" conspiracies where following prices was easily facilitated, do not apply.[5]   Accordingly, the AMCC adequately alleges the Together Rx Defendants' conspiracy.

---

[4] Many of these allegations also constitute court-recognized "plus factors" sufficient to support Plaintiffs' claim of conspiracy. *See, e.g., City of Tuscaloosa v. Harcros Chems, Inc.*, 158 F.3d 548, 571 (11th Cir. 1998). Importantly, the Court should not weigh conflicting evidence of any "plus factors" at this stage. *See In re High Fructose Corn Syrup.*, 295 F.3d at 655 (noting that the defendants improperly encouraged the court to wrongfully "weigh the conflicting evidence" of conspiracy upon a motion for summary judgment).

[5] *See, e.g., Wallace v. Bank of Bartlett*, 55 F.3d 1166 (6th Cir. 1995) (where NSF fees that defendant banks allegedly fixed were publicly disclosed), *cert. denied*, 516 U.S. 1047 (1996); *Clamp-All Corp. v. Cast Iron Soil Pipe Institute*, 851 F.2d 478, 484 (1st Cir. 1988) (noting that alleged conspirators sold "virtually identical products" where playing "follow-the-leader" from price lists could be easily facilitated), *cert. denied*, 488 U.S. 1007 (1989); *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 253 (2d Cir.) (where alleged scheme was described as "short-term and relatively simple in operation"), *cert. denied*, 484 U.S. 977 (1987).  Moreover, only two cases relied on by the Together Rx Defendants were decided on motions to dismiss.  Both of those cases, *Cayman Exploration Corp. v.*

44165.1

6

## III.   **CONCLUSION**

For the aforementioned reasons, the Together Rx Defendants' Motion to Dismiss should be

denied.

Respectfully submitted,

DATED:  October 17, 2003          By: _____

Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Brian Williams
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

---

*United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989) and *Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, 00 Civ. 5663 (MBM), 2001 U.S. Dist. LEXIS 18831 (S.D.N.Y. Nov. 14, 2001), were dismissed because the plaintiff could not even identify the participants in the alleged conspiracy. *Cayman*, 873 F.2d at 1361; *Yellow Page Solutions*, 2001 U.S. Dist. LEXIS at *42. Such is not the case here.

44165.1

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

**CHAIRS OF LEAD COUNSEL COMMITTEE**

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF EXECUTIVE COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA  19103
Tel:  (215) 814-6750
Fax:  (215) 814-6764

44165.1

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL  33134
Tel:  (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA  92101
Tel:  (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL  60601
Tel: (312) 641-2910
Fax: (312) 641-0781

G. Mark Albright
Albright, Stoddard, Warnick & Albright
Quail Park 1, Building D-4
801 South Rancho Drive
Las Vegas, NV  89106

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates

811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel:  (213) 895-6500
Fax:  (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA  19102
Tel:  (215) 790-7300
Fax:  (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Lee Squitieri
Squitieri & Fearon
521 Fifth Avenue, 26th floor
New York, NY  10175
Tel: (646) 487-3049
Fax: (646) 487-3095

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA  19103
Tel:  (215) 731-9004
Fax:  (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX  77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX  75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

44165.1

**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Edward Notargiacomo, an attorney, caused true and correct copies of the foregoing Plaintiffs' Surreply Brief In Opposition To The Together Rx Defendants' Motion To Dismiss Counts V, VI, VII, VIII And X Of The Amended Master Consolidated Class Action Complaint, to be served on all counsel of record electronically, pursuant to Section D of Case Management Order No. 2., this 17th day of October, 2003.

By:

Edward Notargiacomo, Esq.
HAGENS BERMAN LLP
225 Franklin Street, 26th floor
Boston, MA 02110
(617) 482-3700



HAGENS BERMAN LLP
*Attorneys at Law*

BOSTON  LOS ANGELES  PHOENIX  SEATTLE
**hagens-berman.com**
225 FRANKLIN STREET, 26ᵀᴴ FLOOR • BOSTON, MA  02110
(617) 482-3700 • FAX (617) 482-3003

EDWARD NOTARGIACOMO
(617) 531-5505
ed@hagens-berman.com

October 17, 2003

## *VIA HAND DELIVERY*

Clerk's Office
United States District Court
District of Massachusetts
One Courthouse Way, Suite 2300
Boston, MA  02210

   Re:   <u>In Re: Pharmaceutical Industry Average Wholesale Price Litigation MDL No.1456</u>

Dear Sir/Madam:

     Enclosed for filing in the above-captioned matter please find the following documents:

1. Plaintiffs' Sur-Reply in Opposition to Consolidated Motion to Dismiss the Amended Master Consolidated Class Action Complaint; and

2. Plaintiffs' Sur-Reply Brief in Opposition to the Together Rx Defendants' Motion to Dismiss Counts V, VI, VII, VIII and X of the Amended Master Consolidated Class Action Complaint

     Please note that the sur-reply brief related to the Together Rx Defendants' Motion to Dismiss (document number 2) is submitted subject to the Court granting the Joint Motion of Together Rx LLC and Plaintiffs for Leave to File Reply Memorandum, which was filed on September 30, 2003. The Court has not yet acted on that motion. However, Plaintiffs submit the sur-reply in a timely fashion should the Court act favorably upon that request.

     Please acknowledge this filing by date-stamping the enclosed copy of this letter and returning it to the waiting messenger. Thank you.

October 17, 2003
Page 2

Sincerely,

Edward Notargiacomo

Enclosure
cc:     All counsel of record (Via VeriLaw)