Defendant, may have regarding personal jurisdiction can be addressed at that time. There is no reason to address such theoretical concerns at the moment, other than to delay the proceedings.

### 7.   Braun Argues That the Court Has No Personal Jurisdiction Over it and That Service Against it Was Improper

Braun argues that it was not properly served with the AMCC. While Plaintiffs do not believe service against B. Braun of America is necessary, for the reasons stated in the Defendant-Specific Opposition, pages 43-45, Plaintiffs will resolve this issue by making personal service on Braun. Given the fact that B. Braun of America is wholly owned and controlled by its parent company, B. Braun Medical, Inc., which was named in the original MCC, the allegations of the AMCC should relate back to the MCC.

B. Braun of America also alleges that it is not the proper Defendant, or that there is no personal jurisdiction over it because it does not conduct business in Massachusetts. However the AMCC alleges that Braun, a Pennsylvania corporation, designs, manufactures and markets medical devices and certain intravenous solutions. ¶¶ 68-69. The AMCC also alleges that Braun acquired McGaw, Inc., in 1997, at which time McGaw then became "B. Braun McGaw," a wholly-owned subsidiary of Braun. ¶ 69. These facts, when coupled with the substantive allegations against Braun, make out a *prima facia* showing of personal jurisdiction. *See, e.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir.), *cert. denied*, 537 U.S. 1029 (2002).

Based on an affidavit from a Braun Senior Vice-president, Charles DiNardo, Braun argues that the Court does not have jurisdiction over Braun because, purportedly, Braun does not design, manufacture or sell drugs. But as Braun ignores, whether a corporate parent's connections to its subsidiary are sufficiently involved to lead to personal jurisdiction is "*highly fact-specific*" and warrants limited discovery into jurisdictional issues. *See, e.g., City of Bangor v. Citizens Communs. Co.*, 2003 U.S. Dist. Lexis 16667, at *18-25 (D. Me. Sept. 22, 2003) (emphasis added); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)

- 35 -

("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, ... courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" (citations omitted). Because the DiNardo affidavit is so intentionally oblique, it raises numerous questions that should be resolved through, at a minimum, limited discovery into corporate structure and jurisdictional contacts.

### 8.    BMS Improperly Argues That All of Plaintiffs' Claims Prior to 1997 Must be Dismissed

Bristol Myers Squibb ("BMS") continues to assert that all of Plaintiffs' claims prior to 1997, four years before the filing of the original complaint, must be dismissed on statute of limitations grounds. This is a common argument that should not even be entertained because it should have been asserted in the joint brief.

Initially, Plaintiffs again note that the Court addressed this issue in its May 13 Order, under the heading of "Fraudulent Concealment," and specifically held that because the issue of fraudulent concealment "only affects the amount of damages, I do not address it now." *AWP*, 263 F. Supp. 2d at 195. Having lost this issue once, BMS is effectively asking the Court to reconsider the May 13 Order. Of course, BMS filed no timely motion for reconsideration.

BMS alleges that the pre-1997 claims must be dismissed because the AMCC does not specifically state any AWP for any BMS drug in 1997 or before and because Plaintiffs do not adequately allege fraudulent concealment. The AMCC itself discusses several specific examples of BMS's fraudulent conduct well before 1997. At paragraphs 329 and 332, the AMCC quotes BMS documents from 1992 in which BMS expressly acknowledges its ability to manipulate the AWP. Detailed allegations about Defendants' fraudulent concealment of the truth appear at AMCC ¶¶ 191 through 199.

The issue of fraudulent concealment and the resolution of when a Plaintiff was put on inquiry notice is a question of fact which cannot be decided at this stage of the proceedings. *See Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990) ("it was for the jury to

- 36 -

determine when [plaintiffs] ... could be charged with having sufficient knowledge to trigger the statute of limitations").

Courts routinely refuse to resolve statutes of limitations issues under RICO on motions to dismiss. The statute of limitations should not be decided on a motion to dismiss because it is the "unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Wal-Mart Stores, Inc. v. Watson*, 94 F. Supp. 2d 1027, 1028 (W.D. Ark. 2000) (internal quotation marks and citations omitted). In *Wal-Mart*, the plaintiff brought civil RICO claims which the defendants moved to dismiss on the basis that the claims were time-barred. The court refused to resolve the issue at that juncture. "[C]onstrained as we are by the standard of review applicable to Rule 12(b)(6) motions," it was improper to decide on the "face of the complaint whether Wal-Mart ... had, or should have had, some type of accounting or review system in place that should have caused it to 'discover' the inferior quality of the apparel and/or the excessive quantity of apparel being purchased." *Id.* at 1034.

Further, general public awareness of an industry practice is insufficient – as a matter of law – to resolve issues concerning when a plaintiff should have discovered an injury resulting from the defendant's specific illegal conduct. *See Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 48-53 (S.D.N.Y. 2001) (rejecting twenty four articles published over a sixty year period describing alleged illegal conduct; a "Sixty Minutes" television show describing alleged illegal conduct; and two prior lawsuits against the defendant challenging the same conduct, as insufficient as a matter of law to find that plaintiffs should have discovered their injuries at a time outside the statute of limitations period).

Finally, there is nothing in the May 13 Order that requires Plaintiffs to identify all of the fraudulent AWPs throughout the class period, or to identify fraudulent AWPs at various points in the class period.

- 37 -

9.     **Fujisawa's Factual Assertions are Inappropriate at this Stage**

Fujisawa pursues its factual argument that certain of the AWPs for Fujisawa's drugs alleged in Exhibit A of the AMCC are inaccurate.  That this is a factual rebuttal of the allegations of the AMCC (which is inappropriate in the context of a motion to dismiss) is evidenced by: (i) Fujisawa's submission of *Redbook* pages with its Memorandum; and (ii) Fujisawa's statement that "discovery will show that Fujisawa did not sell those drugs...."  Fujisawa Reply at 2. Fujisawa's arguments about the inaccuracy of the AMCC are not appropriate in the context of a motion to dismiss.[15]

10.     **Sicor "Doesn't Know What Drugs it is Being Sued Over"**

Sicor points to an alleged ambiguity between AMCC ¶ 29 and Exhibit B to claim it is confused about which of its drugs are targeted.  Plaintiff UFCW is alleged to have purchased Sicor's tobramycin in Exhibit B and Sicor's leucovorin calcium in AMCC ¶ 29.  Sicor asks which one is correct.  The answer is that UFCW purchased both drugs.  AMCC paragraph 29 is not intended to be a complete list of UFCW's purchases; rather, it specifically says "UFCW has been billed for and paid charges for AWPIDs, *including ....*" (emphasis added).  That leucovorin calcium was not checked on Exhibit B is a typographical error.

In any event, Plaintiffs believe they have standing to sue over *all* of Sicor's drugs identified in AMCC Exhibit B, as long as one Plaintiff purchased at least one of the identified Sicor drugs.  *See* Plaintiffs' Opp., pages 13-16, discussing juridical linkage.  Thus, Sicor's professed "confusion" about what drugs for which it is being accused of manipulating AWPs is irrelevant.

### III.     CONCLUSION

Defendants repeatedly chastise Plaintiffs for overreaching, in essence, for making the case too big, rather than paring it back as they suggest the Court wanted.  Plaintiffs did carefully

---

[15] As Plaintiffs state in their Opposition at page 53, the AMCC does not claim that the *Redbook* was the sole source of all AWP information in Exhibit A.

- 38 -

trim back the number of drugs at issue.  The fact the case is big, and involves many Defendants and many different conspiracies, does not make it infirm.  Instead, it merely reflects the dramatic scope of the fraud.  It is not Plaintiffs' fault that Defendants all engaged in this "scandalous" behavior, and it is not Plaintiffs' fault that, as a result, there are dozens of conspiracies and enterprises.  Plaintiffs have satisfied the RICO and 9(b) pleading standards in this Circuit, and have stated valid consumer protection claims.  Defendants' motion to dismiss should be denied.

DATED:      October 17, 2003                    Respectfully submitted,

By: _____
        Thomas M. Sobol (BBO # 471770)
        Edward Notargiacomo (BBO #567636)
        Hagens Berman LLP
        225 Franklin Street, 26th Floor
        Boston, MA  02110
        Telephone: (617) 482-3700
        Facsimile: (617) 482-3003

        **LIAISON COUNSEL**

        Steve W. Berman
        Sean R. Matt
        Hagens Berman LLP
        1301 Fifth Avenue, Suite 2900
        Seattle, WA  98101
        Telephone: (206) 623-7292
        Facsimile: (206) 623-0594

        Samuel Heins
        Brian Williams
        Heins, Mills & Olson, P.C.
        3550 IDS Center
        80 South Eighth Street
        Minneapolis, MN  55402
        Telephone: (612) 338-4605
        Facsimile: (612) 338-4692

1534.16 0035 MTN.DOC

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

**CHAIRS OF LEAD COUNSEL
COMMITTEE**

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF EXECUTIVE
COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA  19103
Tel:  (215) 814-6750
Fax:  (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL  33134
Tel:  (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA  92101
Tel:  (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL  60601
Tel: (312) 641-2910
Fax: (312) 641-0781

- 41 -

G. Mark Albright
Albright, Stoddard, Warnick & Albright
Quail Park 1, Building D-4
801 South Rancho Drive
Las Vegas, NV  89106

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel:  (213) 895-6500
Fax:  (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA  19102
Tel:  (215) 790-7300
Fax:  (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Lee Squitieri
Squitieri & Fearon
521 Fifth Avenue, 26th floor
New York, NY  10175
Tel: (646) 487-3049
Fax: (646) 487-3095

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA  19103
Tel:  (215) 731-9004
Fax:  (215) 731-9044

- 42 -

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX  77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX  75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**

- 43 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Edward Notargiacomo, an attorney, caused true and correct copies of the foregoing Plaintiffs' Sur-Reply In Opposition To Consolidated Motion To Dismiss The Amended Master Consolidated Class Action Complaint, to be served on all counsel of record electronically, pursuant to Section D of Case Management Order No. 2., this 17th day of October, 2003.

By: _____
Edward Notargiacomo, Esq.
HAGENS BERMAN LLP
225 Franklin Street, 26th floor
Boston, MA 02110
(617) 482-3700

- 44 -

1534.16 0035 MTN.DOC

## **EXHIBIT A**

### **LISTING OF "DEFENDANT-SPECIFIC" REPLY MEMORANDA THAT ARE NOT "SPECIFIC" AND SHOULD BE DISREGARDED**

| Defendant | Section of Memoranda That Is Improper |
|---|---|
| Abbott | Section I, pages 1-2, address the common issue of brand name drugs in non-Part B context — there is nothing defendant-specific. |
| | Section II, page 2, raises flat rate issue identified in common brief or reimbursement issues that are common. |
| | The only portion of Abbott brief that is properly defendant-specific is Section III, p. 3. |
| Novartis | Section III, pp. 2-3, raises state law arguments common to all defendants that are not even remotely "defendant-specific." |
| Aventis | Filed a 5-page brief in violation of the Court order, and it should be rejected. |
| B. Braun | Section III, multiple source drugs do not fit paradigm, is a common argument. |
| BMS | Section I, pages 1-2:  statute of limitations arguments, which are common to all Defendants. |
| Dey | Section II, urging that all claims for multiple source drugs should be dismissed.  Again, this is a common issue. |
| Fujisawa | Section 1, 9(b) argument that Plaintiffs must allege the amount they "overpaid."  Section 2, a generic 9(b) argument. |
| Novartis | Section III, raising state law issues common to all Defendants. |
| Sicor | The brief is five pages in violation of the order limiting each defendant to three pages.  It should be rejected. |