

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*County of Suffolk v. Abbott Laboratories, Inc., et al.,*<br>E.D.N.Y. Case No. CV-03-229 | MDL. NO. 1456<br><br>Civil Action No. 01-CV-12257- PBS<br><br>Judge Patti Saris |

## SUFFOLK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS



# INTRODUCTION

Suffolk County filed this action to recover unlawful overcharges it paid for prescription drugs ("pharmacy costs") as a result of defendants' manipulation of Medicaid. For most drugs, Suffolk's Medicaid pharmacy costs are based on the Average Wholesale Price ("AWP"). New York Soc. Serv. L. § 367-a(9). Defendants report, or cause to be reported, the AWPs for their drugs. AC at ¶¶ 5, 13[1], *e.g.*. The AWP then is plugged into a formula on which Medicaid reimbursements are made. AC at ¶ 73; N.Y. Soc. Serv. L. § 367-7(a); 42 C.F.R. § 447.332(b). Suffolk alleges that the AWPs reported by the defendants named herein range as high as 69% above the true AWP for the Medicaid covered drug. *See* AC at Exhibit A. As a result, Suffolk has been overcharged with many millions of dollars. AC at ¶¶ 315-321.

Defendants attack Suffolk's claims essentially on two grounds. First, they say Suffolk has no standing to bring most of the claims asserted, and second, even if Suffolk did, it cannot claim reliance and has not been particular enough. The attacks are without merit. The Medicaid statutory scheme expressly contemplates, even depends, on enforcement and policing of all participants in Medicaid, including drug manufacturers, at every level of government. "Cooperative Federalism" it is called, where coordinated local, state and federal efforts "exist within a complimentary administrative framework, and in the pursuit of a common purposes . . . " *See Pharmaceutical Research & Mfrs. Of Am. v. Concannon*, 249 F.3d 66, 74-75 (1st Cir. 2001) Thus, the Federal Medicaid Act expressly authorizes States, "or local agencies administering" Medicaid, such as Suffolk to pursue "all reasonable measures" to preserve the integrity of the Medicaid system. 42 U.S.C. § 1396a(a)(25)(A). To that end, New York's Social Service's Law expressly authorizes local social services districts, such as Suffolk, to file suit for Medicaid benefits "incorrectly paid" (N.Y. Soc. Serv. L. §369) or to recover public funds paid as a result

---

[1]    Citations to Suffolk's Amended Complaint appear as " AC at ¶ ___."



of "false statements" (N.Y. Soc. Serv. L. §145-b).  Defendants expressly concede Suffolk's standing to

bring its 145-b claims.  Con. Mem.[2] at 30.  And, of course, New York's Medicaid Plan, including its

express authorization of Suffolk's right to sue, has been expressly approved by the federal government.[3]

In addition, standing typically is determined by (a) whether Suffolk has suffered injury as

a result of defendants' conduct; (b) whether that injury can be traced to the challenged conduct; and (c)

whether a favorable decision will redress Suffolk's injury.  *See* Point A, *infra*.  Suffolk obviously meets that

standard, seeking to recover monies it paid as a direct result of alleged wrongs.  AC at ¶¶ 315-321, *e.g.*

Suffolk is not suing for New York state's damages; it is suing for its own.  This is beyond controversy.  The

County is statutorily required to pay for 25% of the Medicaid pharmacy costs attributable to its Medicaid

recipients.  N.Y. Soc. Serv. L. § 368-a.  Suffolk's standing to assert its claims cannot reasonably be

disputed.

Particularity and reliance are required only for Suffolk's claims that sound in fraud.  Seven

of Suffolk's nine claims do not.  Suffolk's claims for violation of 42 U.S.C. § 1396r-8 (Count II), violation

of N.Y. Soc. Serv. L. § 367-a (Count III), violation of 18 N.Y.C.R.R. § 515.2(b)(4) and (5) (Count IV

); N.Y. Soc. Serv. L. 145-b (Count V);  violation of New York's Unfair and Deceptive Trade Practices

Act, General Business Law § 349 (Count VII) , breach of contract (Count VI) and unjust enrichment

(Count VIII) ) each have independent pleading requirements, which Suffolk has satisfied entirely.  *See*

Points II - VIII, *infra*.

---

[2]     Citations to Defendants' Consolidated Memorandum in Support of Their Motion to Dismiss
("Con. Mem.").

[3]     *See* 42 U.S.C. 1396a(a) and (b) (federal government must approve state Medicaid plan; state must
otherwise abide federal Medicaid act regulations). New York is approved, for example, at 42 C.F.R. § 433.32 (at 79-29);
42 C.F.R. § 433.33 (at 79-29; 80-84)



In the event, Suffolk's pleading completely satisfies Rule 9(b) and this Court's May 13, 2003 ruling respecting particularity. *See In re Average Wholesale Pharmaceutical Litigation*, 263 F.Supp. 2d 172 (D. Mass. 2003) ("*In re AWP Litig.*")  That ruling requires allegations of (1) the specific drug or drugs that were purchased from defendant; (2) the allegedly fraudulent AWP for each drug; and (3) the specific purchaser (Suffolk) of the drug. *In re AWP Litig.*, 263 F.Supp.2d. at 194.  Suffolk has complied.  It has alleged, defendant by defendant and drug by drug, what was purchased from whom and the allegedly fraudulent AWP.  AC at ¶¶ 119-311 and Exhibit A thereto.

Suffolk's reliance on AWPs was statutorily required (N.Y. Soc. Serv. L. § 367-a; AC at ¶ 8, 78), occurred regardless, was entirely  foreseeable by defendants,  and an essential ingredient in defendants' ability to perpetrate their fraud and  incentivise sales of their drugs.  AC at ¶¶ 63-66, 97-104.


In addition to the AWP claims, Suffolk alleges that defendants violate their obligations under the Rebate Agreements each defendant entered into with the federal government.  AC at ¶¶ 2, 8, 73-80-90, 385-391, *e.g.*  These agreements are statutorily required of all manufacturers of Medicaid covered drugs.  AC at ¶ 73-76 and Con. Mem. at 6-7.  They are meant to reduce Medicaid pharmacy costs and ensure that Medicaid payors, like Suffolk, pay the lowest possible price for their drugs. *Pharmaceutical Research and Mfrs. of America v. Walsh*, 123 S.Ct. 1855, 1860 (2003) ("In response to increasing Medicaid expenditures for prescription drugs, Congress enacted a cost-saving measure in 1990 that requires drug companies to pay rebates to States on their Medicaid purchases.  States have since enacted supplemental rebate programs to achieve additional cost savings on Medicaid purchases and purchases for other needy citizens.").  *See also* Con. Mem. at 6-7 (goal of rebate statute is to reduce Medicaid drug expenditures).  Defendants concede, as they must, that data surrounding Best Prices is



statutorily protected and confidential.  *See* Defendants' Motion To Dismiss Montana/Nevada[4] at 5 citing

42 U.S.C. § 1396r-8(b)(3)(A).[5]   Government investigations and settlements, including and involving

defendants named herein, now have revealed that drug companies routinely do not honor their rebate

agreement obligations.  *See* AC at ¶¶ 105-118, 126, 147, 160, 173, 176, *e.g.*.  As a result, Suffolk alleges

it does not receive the rebate dollars to which it is entitled under law.  AC at ¶¶ 364, 374.

Defendants say Suffolk's rebate claims are impliedly preempted.  Con. Mem. at 2.  Not

so.  There is no conflict between the federal rebate statute and those invoked by Suffolk.  The Federal

government has approved the New York Plan, *see* note 3, *supra* which includes state fraud statutes, such

as N.Y. Soc. Serv. L. § 369 and § 145-b, that defendants concede (Con. Mem. at 30) expressly

empower Suffolk's suit.  The doctrine of implied preemption simply does not apply.  This Court has already

ruled as much, albeit on consideration of the Medicare Act.  *In re AWP Litig.*, 263 F.Supp. 2d at

187-189.   The principles articulated in that ruling apply equally here.  Defendants rehearse the same

authorities this Court has already rejected.[6]

---

[4]        Citations to Defendants' Consolidated Motion to Dismiss the Montana and Nevada Complaints, which defendants incorporate herein, appear as "Montana/Nevada at ___."

          It must be noted that defendants' consolidated memorandum brazenly violates the 40-page page limit which the parties negotiated (Suffolk, in good faith), and which this Court "so ordered" on July 30, 2003. Defendants' consolidated memorandum itself is 40 pages.  However, without seeking leave of Court or Suffolk's consent, defendants unilaterally incorporated into their 40 page consolidated memorandum an additional thirty-four (34) pages of argument from other briefs they have filed in this MDL proceeding.  Specifically, defendants incorporated pages 12-17,  19-22 and 36-39 of their Brief in Support of the Motion to Dismiss the Amended Consolidated Class Complaint ("AMCC Br.") (*see* Con Mem. at 16, 18 and 20), and their entire 20 page brief in support of the motion to dismiss the Montana and Nevada Complaints.  *See* Con. Mem. at 30.  While Suffolk is constrained to respond to defendants' improperly incorporated arguments,  defendants' unauthorized additional thirty-four pages should be stricken.

[5]        Suffolk's Rebate allegations are sufficiently particular given that the facts surrounding defendants' best prices for their drugs are exclusively within defendants control.  AC at ¶16.  Regardless, Suffolk sets forth in detail the Best Price scheme.  *See, e.g.* AC ¶ at 81-93.

[6]        *Compare* Defendants' Motion to Dismiss Montana/Nevada at 6-11, with *In re AWP Litig.*, 263 F.Supp.2d at 186-189.



Defendants also argue that there is no implied private right of action for Suffolk to assert the federal and state rebate claims it alleges. As set forth at Points II.B and III.B, *infra*, Suffolk satisfies both and federal and state law criteria for when a right of action is implied. As a governmental payor in the Medicaid statutory scheme, Suffolk is within the class of governmental entities the Rebate Agreement requirements were designed to protect. *See Walsh*, 123 S. Ct. at 1868-1867. Suffolk's assertion of its claims further the purposes of the federal and state rebate statutes and is consistent with the legislative scheme. *Id.* Suffolk has the right to prosecute these claims. Moreover, Suffolk need not an "implied right of action" to file its state rebate claims. N.Y. Social Services Law expressly empowers Suffolk to file suit for Medicaid benefits "incorrectly paid" (N.Y. Soc. Serv. L. § 369) or to recover public funds paid as a result of "false statements" (N.Y. Soc. Serv. L. § 145-b).

Defendants try to make much of the fact that the New York Attorney General ("NYAG") has filed lawsuits concerning the same misconduct as that which undergirds Suffolk's complaint. The argument is a red herring. The NYAG has sued only three manufacturers,[7] and only one of the drugs at issue in the NYAG complaints appears in Suffolk's complaint (Taxotere, by Aventis). The NYAG cases do not implicate defendants' failures to comply with federal and state rebate statutes. Suffolk asserts that noncompliance substantially has increased its damages. AC at ¶¶ 364, 374. Thus, Suffolk asserts claims for violation of the Federal Rebate Statute, 42 U.S.C. § 1396r-8 (Count II), State Rebate Statute, N.Y.Soc. Serv. Law § 367-a (Count III), and for breach of contract as an intended third party beneficiary to the rebate agreements (Count VI). None of these claims or allegations appears in the NYAG's cases.

---

[7]         Specifically, the NYAG has filed. *People of the State of New York v. Aventis, Inc.* (03-CV-305); *People of the State of New York v. Glaxo Smithkline, PLC* (03-CV-299); and *People of the State of New York v. Pharmacia Corp.* (03-CV-295).



In sum, the NYAG's activities do not subsume, moot or in any way obviate Suffolk's right to pursue relief for its own damages.

Finally, defendants have the temerity to argue that, even though they misrepresented and submitted false statements regarding the AWPs and best prices for their drugs  in direct violation of federal and state law,  New York State had the means to detect their lies, and, thus, no liability attaches for the misconduct. Con. Mem. at 7, 18-20.  The argument is, not surprisingly, made with no authority whatever. Of course, there is no support for the proposition that a pharmaceutical company may violate federal and state law, so long as they elsewhere provide data that might reveal such violations.   This Court has already rejected a "government knowledge and approval argument" *In re AWP Litig.*, 263 F.Supp.2d at 187.

Defendants' argument also offers factual contradiction of Suffolk's allegations, controlling at this stage, that Suffolk did not know truth respecting the full amount of defendants' fraudulent reporting of AWPs and failures to report best prices due to defendants' fraudulent concealment. AC at ¶¶ 8, 322-331.  It ignores also that defendants themselves concede their best prices are not disclosed to states. Con. Mem. at 7.  Finally, the argument is, at its essence,  an affirmative defense raising disputed issued of fact, not properly resolved at this stage.



## SUFFOLK'S CLAIMS

New York's Medicaid Statute requires the Suffolk County, like all New York counties, to pay 25% of its Medicaid pharmacy costs. AC at ¶ 1. This case concerns the Medicaid pharmacy costs Suffolk has paid for prescription drugs that are reimbursed based on Average Wholesale Prices ("AWP"). AC at ¶¶ 4,73,74.

Under N.Y. Soc. Serv. Law § 367-a, Suffolk pays for most Medicaid outpatient prescription drugs on the basis of AWP less 12%, plus a dispensing fee.[8] If the drug is multi-source and a federal upper limit ("FUL") has been set, Suffolk pays the FUL, also is calculated by reference to AWP. 42 C.F.R. § 447.332(b) (2003).

Suffolk alleges that defendants have engaged in a scheme to inflate AWPs for certain drugs, which in turn causes Suffolk to overpay. AC at ¶¶ 4, 18, 81-83. Suffolk also is damaged by defendants' failures to report the best prices for their drugs and pay proper rebates. AC at ¶¶ 8, 84-93, 127, 143, *e.g.* Under 42 U.S.C. § 1396r-8, in order for a manufacturer of a drug to have its products reimbursed under Medicaid, the manufacturer must enter into a rebate agreement with the Secretary of Health and Human Services. AC at ¶ 76. Pursuant to that agreement, the manufacturer pays quarterly rebates to the States that are intended to provide Medicaid the manufacturer's "Best Price." *Id.* For brand name drugs, the rebate equals the greater of 15.1% of Average Manufacturers' Price ("AMP") plus an inflationary adjustment, or the difference between AMP and Best Price, 42 U.S.C. § 1396r-8(c).

Defendants report both AMP and Best Price each quarter. AC at ¶ 74(a),(b). The statute defines Best Price as "the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity or governmental entity."

---

[8]         Until May 15, 2003, the reimbursement formula was AWP-10%. *See* N.Y. Soc. Serv. Law 367-a(9)(b)(ii) as amended by Act of May 15, 2003.



AC at ¶ 76.  It also provides that calculation of Best Price must include "cash discounts, free goods that are contingent on any purchase requirement, volume discounts and rebates" and does not include "prices that are merely nominal in amount."   AC at ¶ 76.  Suffolk alleges that each defendant to advance their artificial price inflation scheme did not report the actual Best Price, but instead reported higher prices that excluded the substantial discounts and other inducements offered to intermediaries.  AC at ¶¶ 76-79, 360.

Suffolk alleges two federal causes and seven state causes seeking to recover the unlawful overcharges it has incurred as a direct result of defendants' misconduct, and to halt defendants' practices going forward.  Suffolk's federal causes are for violation of the Federal Medicaid Rebate Statute, 42 U.S.C. § 1396r-8 and RICO, 18 U.S.C. § 1962(c).  Its state claims are for violation of N.Y. Social Services Law § 367-a (the state rebate statute); N.Y. Social Services Law § 145-b (which prohibits obtaining or causing another to obtain public funds through false statements); New York's Unfair and Deceptive Trade Practices Statute, General Business Law § 349, breach of contract (with Suffolk as intended third party beneficiary), violation of 18 N.Y.C.R.R.  § 515.2(b)(4) and (5) (which provides that conversion of Medicaid payments for purposes other than what are intended is an "unacceptable practice"), common law fraud and unjust enrichment.



## LEGAL STANDARD ON A MOTION TO DISMISS

On a motion to dismiss the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff[s] every reasonable inference in [their] favor." *In re AWP Litig.* 263 F.Supp. 2d at 177, citing, *Coyne v. City of Somerville*, 972 F.2d 440-441 (1st Cir. 1992). A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless "'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Roeder v. Alpha Indus.*, Inc., 814 F.2d 22, 25 (1st Cir. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). For Suffolk's two claims that sound in fraud (RICO and common law fraud), this Court has made clear Suffolk must allege (1) the specific drug or drugs that were purchased from defendant; (2) the allegedly fraudulent AWP for each drug; and (3) the specific purchaser (Suffolk) of the drug. *In re AWP Litig.*, 265 F.Supp.2d. at 194.



E-SERVED
10/30/03
11:25 PM ET
AWP-MDL No.1456

**ARGUMENT**

**I.     SUFFOLK STATES A  RICO CAUSE.**

**A.     Suffolk Has RICO Standing**

Suffolk satisfies the three-prong RICO standing test set forth in *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 269-70 (1992), and cited by defendants.  *See* Con. Mem. at 14-16.

**One.**    There is no more appropriate plaintiff to right defendants' wrongs.  *Holmes,* 503 U.S. at 279.  Suffolk is required by statute to pay 25% of its own Medicaid costs.  N.Y. Soc. Serv. L. § 368a.  Suffolk Medicaid recipients use the drugs; Suffolk pays for 25% of their cost.  Suffolk  is statutorily empowered, at both the federal and state levels to file suit in connection with Medicaid overpayments, N.Y. Soc. Serv. L. §§145-b, 369a, and Suffolk routinely does so.[9]

*Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.*, 99 F. Supp. 2d 174 (D.R.I. 2000), cited by defendants (Con. Mem. at 14-16) is inapposite.  The RICO claim there was filed by <u>representatives</u> of the injured, rather than the injured themselves.  *Id.* at 178.  Suffolk is the injured.  New York statute says so.  N.Y.Soc. Serv. L. 367a.  So does defendants' own authority. *Rylewicz v. Beaton Servs., Ltd.*, 698 F.  Supp. 1391, 1395, & n.3 (N.D. Ill. 1988).  "The real party in interest is the one who by substantive law possesses the right sought to be enforced."  *Id*. at 1395.  Substantive law and New York statute give Suffolk the  rights to be enforced.  *See* Points V, VII, *infra, e.g.*

---

[9]        *See, for example, In the Matter of Frances Callahan*, 254 A.D.2d. 415, 416, 578 N.Y.S.2d 741 (2d Dep't 1998) (Upholding Suffolk County Department of Social Services' right to satisfy a Medicaid lien); *Link v. Town of Smithtown*, 267 A.D.2d 284, 700 N.Y.S.2d 52 (2d Dep't 1999) (same); *Gold v. United Health*, 261 A.D.2d 67, 701 N.Y.S.2d 123 (3d Dep't 1999) (same).



**Two.** There is no difficulty in ascertaining Suffolk's damages. *Holmes*, 503 U.S. at 263. The damages are 25% of the unlawful overcharge. AC at ¶¶ 315, 317. Defendants do not even argue the point. Con. Mem. at 14-16.

**Three.** There is no risk of duplicative recoveries or inconsistent judgements. *Holmes,* 503 U.S. at 269. Suffolk does not seek New York State's damages or the damage of other counties or parties in the MDL. Suffolk sees only to recover the overcharges it paid. AC at ¶¶315-321. The NYAG cases involve only one of Suffolk's Drugs [10] and do not address Defendants' failures to comply with state and federal rebate statutes, which Suffolk alleges further increases the improper overcharges and damages suffered. AC at ¶¶ 73-77. Moreover, should the State recover in any proceedings, it would be required by law to return to the county its 25% contribution. *See* § N. Y. Soc. Serv. L. 369 and 145-b(2).

The county's position is not analogous to that of the consumer plaintiffs in *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (U.S.Kan. 1990), which defendants cite. Plaintiffs there fell directly into the *Hanover Shoe / Illinois Brick* damage apportionment complexity trap. *Id.* at 208. There is no comparable complexity evaluating Suffolk's damages. Once the amount of defendants' unlawful overcharge per drug is established, 25% of that equals Suffolk's damage. AC at ¶ 315-321. There is no hypothetical "what might have been charged or paid." *Utilicorp*, 497 U.S. at 210.[11]

---

[10]        Taxotere, manufactured by Aventis. See *People of the State of New York v. Aventis, Inc.* (03-CV-305)

[11]        *Utilicorp* also presented timing problems. "Even if, at some point, a utility can pass on 100 percent of its costs to its customers, various factors may delay the passing on process." *Id.* (emphasis added). The Court was concerned that this delay could result in additional damage apportionment complexities. *Id.* No such complexity here. *Id.* at 211. Suffolk always pays 25% of its Medicaid Pharmacy costs. The consumer class in *Utilicorp* also suffered constitutional infirmities preventing them to adequately represent industrial or commercial consumers from other states. *Id.* at 213. Again, not Suffolk's case. Suffolk is the real party in interest seeking to recover its own expenditures. *Rylewicz*, 698 F.Supp. at 1395.



Defendants rely on *Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999).  That case reaffirms Suffolk's standing and its direct injury as a result of defendants' fraud.  As in *Rhode Island Laborers*, *supra*, plaintiff was a health and benefits fund seeking to recover for injuries inflicted on their members.  *Id.* at 232.  The 'but for' cause of the Fund's injury was the injury of a third party (the member).  *Id.* at 234.  Suffolk by contrast alleges injury directly as a result of defendants' mail and wire fraud.  AC at ¶¶ 342-343.  But for defendants' mail and wire fraud, Suffolk would not have been injured.  AC at ¶ 353.

**B.     Suffolk Adequately Pleads A Violation Of 18 U.S.C. § 1962(c)**

Section 1962(c) requires (i) conduct; (ii) of an enterprise whose activities affect interstate commerce; (iii) through a pattern; (iv) of racketeering activity and (v) that plaintiff has been injured in her business or property by this conduct.  *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Suffolk alleges each.

**1.     Conduct**

18 U.S.C. § 1962(c) requires a RICO defendant "to conduct or participate, directly or indirectly in the conduct of the enterprise's affairs."  The Supreme Court has interpreted this to mean that the defendant have some part in directing the enterprise's affairs.  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)  Known as the "operation or management test", this requires a "degree of direction" that can be direct or indirect.  *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d at 1546, 1559 (1st Cir. 1994).

Defendants satisfy *Reves*.  It is undisputed that defendants either provide the false and misleading AWPs to publishers, or the wholesale acquisition costs ("WACs") on which AWPs are based. AC at ¶¶ 5, 337-341.  Suffolk alleges "contractual relationships, financial ties, and continuing coordination of activities" including a "common communication network by which the defendants and the specific



publisher share information on a regular basis" by, typically, "a manufacturer . . . instructing a publisher to list a certain AWP."  AC at ¶ 338.  Suffolk also alleges that the Medicaid reimbursement system is dependent on the honesty of the drug manufacturers, and that "defendants knew they could directly control and fabricate the AWP for their drugs at any time by forwarding to the publishers a phony AWP or WAC on which AWP was based."  AC at ¶ 67.  Defendants concede that AWPs are false and inflated.  Con. Mem. at 21.   Suffolk also alleges that defendants knowingly and intentionally transmit flawed rebate data to avoid paying rebates to the states. AC at ¶ 8, 371.

Thus, this is not a scenario, as in many post-*Reves* decisions, where plaintiff seeks to assert a RICO cause against a party who merely provides suspect or deficient services to an enterprise engaged in alleged racketeering activity.  *See, e.g.*, *University of Maryland v. Peat Marwick*, 996 F.3d 1534 (3d Cir. 1993) (accounting firms' provision of materially deficient financial services insufficient to constitute participation in affairs) .  Rather, this case is more akin to *United States v. Oreto*, 37 F.3d 739 (1st Cir. 1994), where the court concluded that collectors in a loan sharking enterprise were "plainly integral to carrying out the collection process", knowingly made and implemented decisions and therefore participated in the "operation or management". *Id* at 750-751.   Defendants here knowingly conduct and direct the enterprise's transmission of the false data in violation of criminal mail and wire fraud statutes. AC at ¶ 348.

### 2.      Enterprise

The conduct prohibited in Section 1962 is unlawful if it occurs in connection with investment in, acquisition of, or operation of an "enterprise" in interstate commerce.  18 U.S.C. § 1962.  RICO enterprise is involved in "interstate commerce" when it is itself "directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce." *United States v. Robertson*, 514



U.S. 669, 672 (1995). The statute defines enterprise as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "the definition of enterprise under RICO is very broad." *See Alcorn County v. U.S. Interstate Supplies*, 731 F.2d 1160, 1168 (5th Cir. 1984) (an association of individual defendants and a corporation that sold supplies to a county government by bribing a county employee could constitute an enterprise).

"There must be some structure . . . but there need not be much." *Burdett v. Miller*, 957 F.2d 1375, 1379-80 (7th Cir. 1992), *accord United States v. Patrick*, 248 F.3d 11, 19 (1st Cir.), *cert. denied*, 122 S. Ct. 620 (2001). In an unpublished opinion, the Second Circuit ruled that "[t]he enterprise need not necessarily have a continuity continuing extending beyond the performance of the pattern of racketeering acts alleged, or a structural hierarchy, so long as it is in fact an enterprise as defined in the statute." *Pavlov v. Bank of New York, Co.*, No. 01-7434, 2002 WL 63576 at *1 (2d Cir. Jan. 14, 2002).

This expansive definition has been applied in this circuit to assert RICO claims against established business concerns as "persons" who allegedly have "associated" with other individual or corporate defendants to form a RICO "enterprise". *See, e.g., United States v. Owens,* 167 F.3d 739 (1st Cir. 1999), *cert. denied,* 528 U.S. 894 (1999) (an association-in-fact existed where there was evidence of "systematic linkages between" two subgroups that "depended on each other both financially and structurally); *Lemelson v. Wang Lab*, 874 F. Supp. 430, 433 (D. Mass. 1994) (a patent holder, his attorneys and agents, corporate entities under his control, and others associated for purpose of coercive patent enforcement through filing of frivolous patent lawsuits constitute a RICO enterprise).

Suffolk adequately pleads enterprise. The manufacturer-publisher enterprises are associations in fact engaged in interstate commerce and formed through contractual arrangements. AC at

14



¶ 337.  Each enterprise participant was engaged in the common purpose of routinely and systematically reporting false and inflated AWPs, and that this scheme was effectuated through interstate wires and U.S. mails.  AC at ¶ 348.  Defendants' argument on this motion confirms that the entire pharmaceutical industry and the publishers report false, misleading and inflated AWPs. Con. Mem. at 2, 8, 13, *e.g.*[12]  At minimum, Suffolk's allegations certainly raise an issue of fact whether the alleged association-in-fact constitutes an enterprise affecting interstate commerce under the statute.  *See Alcorn*, 731 F.2d at 1168.

### 3.    Pattern of Racketeering Activity

Suffolk alleges that defendants conducted the affairs of the various enterprises through a pattern of racketeering activity through the predicate acts of criminal mail fraud (18 U.S.C. 1341) and wire fraud 18 U.S.C. 1343.  AC at ¶ 342.  The elements of the predicate acts of mail or wire fraud are a scheme to defraud, and the use of mails or wires to further the scheme.  *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d. 1546, 1560 (1st Cir. 1994).

It is undisputed that defendants use U.S. mails and interstate wires to transmit inaccurate AWPs, Con. Mem. At 2, 8, 13, *e.g.,* and to transmit their "best prices" pursuant to the federal rebate statute.   42 U.S.C. 1396r-8(b)(3)(A)(I). Suffolk specifically alleges that defendants engaged in these transmissions with the intent to defraud.  AC at ¶ 348, 349, *e.g.*   Suffolk alleges that each transmission constituted a separate predicate act.  AC at ¶ 348.  Suffolk sets forth the allegedly fraudulent AWPS. AC at ¶¶ 125-314.  Each of these fraudulent AWPS resulted from independent predicate acts.   Thus, Defendants are incorrect to say that Suffolk fails to identify a single specific predicate act.  Con Mem. at

---

[12]     Indeed, defendants' consolidated brief and the argument therein that the entire industry reports false and inflated AWPs (Con. Mem. at 2, 8, 13, *e.g.*) **by itself** demonstrates the existence of three additional enterprises not previously pleaded by the County: (a) the pharmaceutical industry- First Data Bank enterprise; (b) the pharmaceutical industry- RedBook enterprise and (c) the pharmaceutical industry-BlueBook enterprise.  Suffolk formally may seek leave to amend its complaint, *inter alia*, to assert these additional enterprises.



E-SERVED
10/30/03
11:25 PM ET
AWP-MDL No. 1456

35-36.[13]   Finally, defendants argue that Suffolk has not set forth a common course of conduct, yet simultaneously accuse Suffolk of nearly uniform pleadings regarding the ways in which defendants fraudulently inflate AWPs. *Compare* Con. Mem. at 35 *with* 36.

Suffolk alleges that defendants either misrepresented the AWP as true, or omitted to disclose the AWP was false.  AC at ¶ 342. Mail and wire fraud claims based on fraudulent omissions require that the defendant had a duty to disclose the omitted facts.  In *Langford v. Rite Aid of Alabama, Inc,*. 231 F.3d 1308, 1314 (11th Cir. 2001), for example, the Eleventh Circuit held that failing to disclose pricing schedules for prescription medications was not a predicate at under RICO because pharmacies were under no duty to disclose their pricing schedules to customers.  Here, by sharp contrast, federal and state statute impose a duty on defendants to either report their best prices or pay fines and be ejected from coverage. 42 U.S.C. §1396r-8 (b)(3)(C); N.Y. Soc. Serv. L. § 367-a.

### 4.    Injury

Suffolk is statutorily obligated to pay pharmacy costs based on AWP, and is statutorily entitled to its *pro rata* share of Medicaid rebates. N.Y. Soc. Serv. L. §369. Suffolk certainly is a foreseeable victim of defendants' scheme to inflate AWPs and fail to report best price. AC at ¶¶ 348-350. *See Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.*, 985 F. 2d 102, 104-05 (2d Cir. 1993) (proximate cause found where plaintiffs were foreseeable target of fraudulent scheme).

That New York State, like the federal government, has chosen AWP as the standard of reimbursement does not break the chain of causation as defendants say.  Con. Mem. at 17-18.  To the

---

[13]    Defendants complain about concerted action, but 1962(c), on its face, does not require concerted action. *See* 18 U.S.C. § 1962(c) "It shall be unlawful for <u>any person</u> employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." (Emphasis added).



contrary, this statutory link is the *sine qua non* of defendants' capacity to effectuate their scheme.  AC at ¶¶ 351-352.  Defendants incorrectly say that the multi-source drugs are outside the alleged scheme. Con. Mem. at 17-18, 20.  If the drug is multi-source and a federal upper limit ("FUL") has been set, Suffolk pays the FUL, which is calculated by reference to AWP.  N.Y. Soc. Serv. Law § 368a; 42 C.F.R. § 447.332(b).  If no FUL has been set, Suffolk pays AWP-12%.  *Id.* Suffolk alleges that defendants' misconduct occurs in the arena of multi-source drugs, just as it does for brand drugs.  AC at ¶¶ 94-99. Suffolk alleges that defendants' motivations for marketing the spread  are even more pronounced in the multi-source arena (AC at ¶ 96), and cites federal government investigations and public data demonstrating that spreads between reported and true AWP are greatest where there is generic or multi-source competition.  AC at ¶ 98.

In the event, defendants' fact based *ipse dixit* respecting supposed breaks in the causation chain addresses contested facts not properly resolved (or raised) on a motion to dismiss. As Judge Wolf wrote on a motion to dismiss a RICO cause for lack of causation in *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998),

> It is for a jury [to] apply the law of proximate causation and decide whether the plaintiffs were in the zone of foreseeable plaintiffs and whether the defendants' actions were a substantial factor in causing the plaintiffs' harm.  *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (holding that questions of causation are "normally grist for the jury's mill"); *Swift v. United States*, 866 F.2d 507, 510 (1st Cir. 1989) ("Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by and peculiarly within the competence of, the factfinder."); W. Prosser & W. Keeton, *Prosser & Keeton on Torts* 321 (5th ed. 1984) ("'proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.'") (citations and footnotes omitted).



*Id.* at 85. Accordingly, Judge Wolf concluded that the Court could not "properly rule as a matter of law that plaintiffs were outside the zone of foreseeable plaintiffs of that the defendants' actions were not a substantial factor. "To the contrary, accepting the plaintiffs' allegations as true and drawing all reasonable inferences from them, it appears that both plaintiffs were among the intended victims of the alleged fraud. For purposes of these motions to dismiss, therefore, plaintiffs adequately plead causation and state a substantive RICO claim." *Id.* at 85. *Id.* The same conclusion applies *a fortiori* here because Suffolk's injury was inevitable given the Medicaid statutory scheme.

In sum, Suffolk adequately has pleaded a statutorily sanctioned and direct relationship between defendants' AWP scheme, the alleged mail and wire frauds necessary to effectuate it, and the millions of dollars of overpayments Suffolk has made as a result. AC at ¶ 353. As a result, the Court should not determine at this stage, and as a matter of law, that Suffolk was outside the zone of parties foreseeably injured by the alleged wrongdoing. Suffolk's RICO cause must stand.

## II.   SUFFOLK CAUSE FOR VIOLATION OF THE FEDERAL REBATE STATUTE, 42 U.S.C. § 1396r-8, SHOULD BE SUSTAINED

### A.   Suffolk Has Standing To Pursue Its Federal Rebate Claims

In *McInnis-Misenor v. Main Med. Ctr.*, 319 F. 3d 63, 68 (1st Cir. 2003), cited by defendants, the First Circuit wrote, " [t]he constitutional standing inquiry has three elements . . . the litigant bears the burden of showing 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.'" *Id.* at 67 citing, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Suffolk clearly satisfies all three. It has overpaid for its Medicaid pharmacy costs ( AC at ¶¶ 315-321) as result



of the allegedly illegal conduct of the defendants.  AC at ¶¶ 4, 18, 315-321.  Suffolk's injury can be traced

to defendants' failures to report an accurate AWP and Best Price for their drugs.  AC at page 1 and ¶¶ 17,

323-327.  A favorable decision here, return of the unlawful overcharges, would compensate Suffolk for

its injury.  AC at ¶¶ 317, 321.

        If Suffolk's allegations are correct, then as a matter of law it could be determined that

defendants' improper overcharges caused Suffolk to overpay for drugs used by its Medicaid recipients.

The legal right to recover for Suffolk's overcharge belongs to Suffolk.  Were the State to recover money

on Suffolk's behalf for a Best Price Claim, the State would be required by law to return to Suffolk its

proper share.  *See*, *e.g.*, N.Y. State Soc. Serv. L. § 145-b(2) ("amounts collected pursuant to a judgment

under [Medicaid] <u>shall be apportioned between the local social services district and the state</u>") (emphasis

added).  The State, in other words, would have no legal right to retain  Suffolk's overcharge.

**B.**        **Suffolk May Assert A Right of Action Under the**
                 **Federal Medicaid Rebate Statute 42 U.S.C. § 1396r-8.**

        **1.**        **42 U.S.C. § 1396 Does Not Provide**
                 **For Exclusive Federal Enforcement.**

        Without authority, Con. Mem at 25, defendants contend that 42 U.S.C. § 1396, et seq.

(the "Medicaid Act") provides for exclusive federal enforcement by the Secretary of Health & Human

Services.  Actually, the Medicaid Act specifically states that the Secretary's authority to impose penalties

for submission of false Best Price information is *not* exclusive.  "Such civil money penalties are *in addition*

*to* other penalties as may be prescribed by law."  42 U.S.C. § 1396r-8(b)(3)(C)(ii)(c) (emphasis added).

This language demonstrates Congress's clear intent to permit other methods of redress for Best Price

violations.  No provision in the Rebate Statute supports defendants' exclusivity argument.  Indeed, were



defendants' argument correct, every State's Medicaid fraud statute, including New York's, would be void *ab initio*. Of course, that is not the case.

The Medicaid program's success depends on "cooperative federalism" where "coordinated state and federal efforts exist within a complimentary administrative framework, and in the pursuit of a common purposes . . . " *Pharmaceutical Research & Mfrs. Of Am. v. Concannon*, 249 F.3d at 74-75. Thus, for example, states must maintain Medicaid Fraud Control Units responsible, *inter alia*, for investigation and prosecution of all State laws. 42 U.S.C. § 1396b(q)(3); 42 U.S.C. 1396(a)(61). 42 U.S.C. § 1396a(a)(25) provides:

> (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including health insurers, group health plans (as defined in section 1167(1) of Title 29), service benefit plans, and health maintenance organizations) to pay for care and services available under the plan. . . [and]

> (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability . . . (emphasis added)

Thus, defendants' argument respecting "exclusive enforcement" is incorrect.

**2.    Suffolk Has An Implied Private Right of Action Under the Federal Rebate Statute.**

As defendants state, the Medicaid statutes expressly incorporates an "interlocking, interrelated and interdependent remedial scheme" (Con. Mem at 26). That scheme makes plain Congressional intent for enforcement at federal, state and local levels. *See* Point II.B.1, supra. The existence of implicit private remedy depends on four factors, all present here. *Cort v. Ash*, 422 U.S. 66 (1975); *Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).



First, is the plaintiff "one of the class for whose especial benefit the statute was enacted." *Texas & Ry Co. v. Rigsby*, 241 U.S. 33, 39 (1916) (emphasis supplied)--that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? *See, e.g.,National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458 (1974). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? Finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort*, 422 U.S. at 78 (citations omitted); *Russell*, 473 U.S. at 145, n.2

### a. Suffolk Is Part Of The Class For Whose Especial Benefit The Rebate State Was Enacted

The federal Rebate Statutes intend to provide cost savings to the government bodies who pay for Medicaid *See, e.g. Walsh* 123 at S.Ct. at 1860. ("In response to increasing Medicaid expenditures for prescription drugs, Congress enacted a cost-saving measure in 1990 that requires drug companies to pay rebates to States on their Medicaid purchases. Over the last several years, state legislatures have enacted supplemental rebate programs to achieve additional cost savings on Medicaid purchases as well as for purchases made by other needy citizens."). "Congress imposed the rebate requirement for two overlapping reasons: to reduce the cost of Medicaid and to prevent pharmaceutical manufacturers from charging the government and taxpayers above-market prices for Medicaid drugs." *Pharmaceutical Research & Mfrs. of Am.v. Thompson*, 251 F.3d 219, 225 (D.C. Cir. 2001).

The County is one of those governmental bodies. Thus, defendants are wrong to state that "the [federal rebate] statute creates no implication of an intent to confer rights on particular class of



persons." Con. Mem. at 26-27 citing *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) and

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979).[14]

### b.       Legislative Intent Supports A Remedy For The County

The Medicaid Act is replete with examples of the need for enforcement at all levels of

government, *see* Point II.B.1. *supr*a, and Congress expressly acknowledged that the Secretary's

enforcement powers were <u>in addition to</u> other methods of redress for non-compliance.[15]   The express

purpose of the Rebate Act is to provide cost savings to government Medicaid payors. *Walsh*, 123 S.Ct.

at 1857.  This evidences clear legislative intent to permit Suffolk's action.

### c.       The Legislative Scheme Supports A Remedy For The County

As stated, Medicaid depends on cooperation and enforcement at all levels of government.

*Concannon*, 249. F.3d at 66, 75 (Medicaid utilizes "cooperative federalism", where coordinated

governmental efforts exist within a complementary administrative framework and in the pursuit of common

purposes").   It is entirely consistent with the Medicaid legislative scheme to permit Suffolk to go forward.

### d.       Suffolk's Causes Traditionally Are Relegated to State Law

The Federal Medicaid Act expressly contemplates that Medicaid is a federal-state-local

agency-program, dependent on interlocking governmental administration and enforcement   *See*

---

[14]       *Sandoval* is not this case.  It concerned Section 602 of Title VI.  That section enacted no rights,
explicit or implied.  Rather, it was a "directive to federal agencies engaged in the distribution of public funds,"
regarding disparate impact regulations. *Sandoval*, 532 U.S. at 289. Section 602 indisputably  proscribed activity
permitted under the related Section 601.  That section did imply private rights of action attached. *Id.* at 288-89.
*Transamerica* is likewise inapposite.  The statute there did not provide (as here) that the enforcement powers of the
SEC were in addition to all others available.  Rather, Congress expressly provided both judicial and administrative
means for enforcement, and made no reference whatever to possible other enforcement mechanisms. *Id.* at 20

[15]       "Such civil money penalties are ***in addition to*** other penalties as may be prescribed by law."  42
U.S.C. § 1396r-8(b)(3)(C)ii) (emphasis added).



*Pharmaceutical Research Mfs. of Am. v. Medows*, 184 F. Supp.2d 1186, 1194 (N.D. Fla. 2001)[16]. The states and (per N.Y. Soc. Serv. L. § 367-a), counties administer the program. Federal statute not only contemplates but depends upon enforcement at each level. *See*, 42 U.S.C. § 1396a(a)(25). To that end, N.Y. Soc. Serv. L. § 145-b (as defendant concede, Con. Mem. at 30) expressly provides for the county's suit. And, Suffolk routinely files suit to recover for Medicaid overcharges. *See,* note 9, *supra.* Thus, far from conflicting with the Medicaid Act, the County's claims implement the Act's mandate that all participants "prosecute violations of all applicable State laws regarding any and all aspects of fraud in connection with [the Medicaid Act]."  42 U.S.C. § 1396b (q)(3).

## III.  SUFFOLK'S CAUSE FOR VIOLATION OF THE NEW YORK STATE REBATE STATUTE, SOCIAL SERVICES LAW § 367-a(7)(d), SHOULD BE SUSTAINED

### A.  Suffolk's State Law Rebate Claims Are Not Preempted

Implied conflict preemption arises where the "state law interposes an obstacle to the achievement of Congress's discernable objectives" or where "compliance with both state and federal regulations is impossible." *Concannon*, 249 F.3d at 74-75 (1st Cir. 2001) quoting *Grant's Dairy-Me, LLC v. Commissioner of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8, 15 (1st Cir. 2000), *aff'd sub nom.* 123 S. Ct. 1855 (2003).

Defendants identify no conflict here, nor could they. New York State's Medicaid statutory scheme has been approved expressly by the federal government, including Suffolk's participation in it. *See* note 3, *supra*. Moreover, defendants do not even argue compliance with the federal and state rebate statutes is impossible.

---



*Concannon* is instructive.   There the Pharmaceutical Research and Manufacturers of America (PhRMA) challenged a Maine statute that applied prior authorization requirements within the State Medicaid program to manufacturers who failed to enter rebate agreements with the State in connection with a separate, non-Medicaid prescription drug program. Perceiving prior authorization as a competitive disadvantage, *Concannon*, 249 F.3d at 71-72, PhRMA contended that the Maine Act interfered with the delivery of Medicaid services and was therefore preempted by the Medicaid Act. *Id.* at 76.

The First Circuit disagreed, finding no conflict between the Maine Act and Medicaid's structure and purpose, especially since Medicaid permitted prior authorizations generally. *Id.*   The Court explained that federal preemption of state law within a jointly administered state-federal Medicaid program is disfavored:

> "[W]e assume 'that the historic police powers of the States [are] not to be superceded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress' . . . We also recognize that federal preemption of a state law is strong medicine,' and is 'not casually to be dispensed' . . . This is especially true when the federal statute creates a program, such as Medicaid, that utilizes 'cooperative federalism'; Where coordinated state and federal efforts exist within a complementary administrative framework, and in the pursuit of a common purposes, the case for federal preemption becomes a less persuasive one."

*Id.* at 75 (citations omitted).

Defendants authorities are not otherwise. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), was not decided under the Medicaid Act and does not apply. The Supreme Court there found a conflict between the FDA's power to punish and deter fraud and "fraud-on-the-FDA claims under state tort law." *Id.* at 348.   Plaintiffs' claims, if permitted, would have upset the relevant statute's flexibility in providing the FDA with enforcement options ranging from injunctive relief and civil penalties to seizing the device, as would compliance with 50 different state tort regimes. *Id.* at 349-50.   In short, Congress



expressly "intended that the [statute] be enforced exclusively by the Federal Government." *Id.* at 352. Here, Congress did not intend for exclusive federal enforcement, *see* Point II.B, *supra,* and defendants would not face the "specter of a patchwork of liability". *See* Montana/Nevada at 9. The Rebate Statute itself sets forth a single definition of "Best Price," see 42 U.S.C. § 1396r-8(c)(1)(C). That will be the benchmark for whether defendants have engaged in fraud. This Court already has recognized that "state courts frequently construe terms in federal laws in order to adjudicate causes of action based in state law, and the Supreme Court [remains] the ultimate decision-maker on federal questions arising out of state court." *In re AWP Litig.* at 188-89.

Defendants' other cases are likewise unpersuasive. In each, state law actually conflicted with a provision of the Rebate Statute that was passed to protect the actual level of reimbursements made to pharmacists. *See* Montana/Nevada at 10-11. Again and in contrast, no conflicts exist here between the Suffolk' Best Price claims and any provision of Medicaid Act, including the Rebate Statute.[17]

Indeed, no court ever has read the Federal Medicaid Act to prevent a Medicaid payor (state or local) from seeking a remedy for Medicaid fraud. Rather, the authorization for States to pursue "all available means" under 42 U.S.C. § 1396a(a)(25)(B) "furthers the ultimate goal of Medicaid -- that the program "be the payer of last resort." *See, e.g., Costello v. Geiser*, 647 N.E.2d 1261, 1262 (N.Y. 1995) quoting Sen. rep. No. 146, 99th Cong., 2d Sess., 312, reprinted in 1986 U.S. Code Cong. & Admin. News 279).

**B.      Suffolk Has An Implied Right of Action
Under New York Soc. Serv. L. § 367-(a)(7)(d)**

---

[17]      Nor will the Suffolk's Best Price claims result in substantial changes in federal Medicaid reimbursement structure as defendants claim. Montana/Nevada at 10. First, the federal government does not share in any rebates. Second, Suffolk seeks merely to enforce defendants' compliance with the federal statute, *de rigeur* in Federal Court, not to alter the statutory language.



Defendants acknowledge that Suffolk is not expressly prohibited from filing suit under New York Social Services Law § 367-a. Con. Mem. at 28.  Instead, defendants are left to argue that Suffolk has no implied right of action.  It does.  Suffolk satisfies the three prong test presented by defendants for when a private right of action can be implied under New York law.  *See* Con. Mem. at 28[18]

### a.        Suffolk Is Part Of The Class

Suffolk is part of the class for whose benefit the New York state rebate statutes were enacted.    It is not disputed that the purpose of the Rebate Statutes is provide cost savings to the government bodies who pay for Medicaid  *See, e.g., Walsh*, 123 S. Ct. at 1857; *and* Point II.B.2.a, *supra*.

### b.        Recognizing Suffolk's Right of Action Promotes the          Legislative Purpose of New York's State Rebate Statutes

Suffolk's claim furthers the purpose of the state rebate statutes.  *Walsh*, 123 S.Ct. at 1868 (Actions taken to "avoId. unnecessary costs in the administration of a State's Medicaid program obviously serve[] the interests of both the Federal Government and the States that pay the cost of providing the prescription drugs to Medicaid patients.").  What could be more unnecessary than fraudulent overcharges? Are defendants saying that fraudulent overcharges are necessary?

### c.        Suffolk's Right of Action Is Consistent With The State Legislative          Scheme

Recognizing an implied right of action for Suffolk under N.Y. Soc. Serv. L § 367-a is consistent with the state legislative scheme.  N.Y. Soc. Serv. L.§ 145-b, (which defendants concede contains an express right of action for Suffolk. Con. Mem. at 30) provides that "[i]t shall be unlawful for

---

[18]        Citing *Sheehy v. Big Flats Community Day, Inc.*, 73 N.Y.2d 629; 543 N.Y.S.2d 18, 20  (N.Y. 1989); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314;  464 N.Y.S.2d 712, 716  (N.Y. 1987); *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268; 519 N.Y.S.2d 804, 805-806 (N.Y. 1987).



any person, firm or corporation knowingly by means of false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for . . . supplies furnished to . . . the Medicaid program." The statute further provides that "amounts collected pursuant to a judgment under this section shall be apportioned between the local social services district and the state." N.Y. Soc. Serv. L. § 145-b(2) (emphasis added). N.Y. Soc. Serv. L. § 369 expressly authorizes Suffolk to bring suit to recover Medicaid "benefits incorrectly paid". Suffolk's case clearly is consistent with the state legislative scheme.

## IV.    SUFFOLK MAY ENFORCE 18 N.Y.C. R.R. § 515.2(b)(4) and (5)

Defendants cite nothing in 18 N.Y.C. R.R. § 515.2(b)(4) or (5) that bars Suffolk from filing this claim, nor grants exclusive enforcement power to the New York State Department of Social Services. They cite *Enrico v. Bane*, 213 A.D.2d 784, 623 N.Y.S.2d 25, 27 (3d Dep't 1995). That decision does not identify the New York State Department of Social Services as the sole agency "responsible for administering Medicaid or authorized to recoup overpayments," as defendants proclaim. Con. Mem. at 29. It could not. Federal law expressly provides that States must create local Medicaid fraud units to investigate and prosecute and collect for fraud, 42 U.S.C. § 1396b(q)(3), and that states and local governments are obligated to ascertain legal liability of third parties who owe monies to the Medicaid plan. 42 U.S.C. § 1396a(a)(25). Defendants concede that New York State Social Service Law expressly empowers local social services districts like Suffolk, to file suit for false statements made in any effort to obtain public funds, including *Medicaid*. *See* Con. Mem. at 30 citing N.Y. Soc. Serv. Law § 145-b.

Permitting the County to proceed with this claim would not be a singular event. In *Rand v. Perales*, 737 F. 2d 257, 258 (2d Cir. 1984), the Nassau County Local Social Services District

27



enforced 18 N.Y.C.R.R. § 515.2(b)(4) against a provider for numerous violations respecting billing practices.

## V.    DEFENDANTS CONCEDE SUFFOLK HAS STANDING TO PLEAD, AND PROPERLY PLEADS, A CLAIM UNDER NEW YORK SOCIAL SERVICES LAW § 145-b

Defendants concede that Suffolk has standing to assert its cause under N.Y. Soc. Serv. L. § 145-b.  Con. Mem. at 30.  Their only protest regarding the claim under is that, to the extent it depends on Suffolk's rebate claims, it is preempted.  As set forth above in Point III.A *supra,* the claim is not preempted.  In the event, Suffolk's § 145-b claim goes beyond defendants' failures to report and pay proper rebates.  It includes defendants' systematic reporting or causing to be reported false and inflated AWPs for Medicaid Covered Drugs, or WACs on which AWPs are based. (AC at ¶¶ 66-69, 81-83, *e.g.*).  "By engaging in such acts and practices, defendants have knowingly made false statements and representations or engaged in a fraudulent scheme on behalf of themselves and others resulting in the overpayment of public funds for defendants prescription drugs."  AC at ¶ 381.  Thus, even if this court should find that Suffolk's rebate claims are preempted, there is no circumstance in which the § 145-b claim should be dismissed entirely.

## VI.    SUFFOLK PLEADS THAT IT IS A THIRD PARTY BENEFICIARY OF THE MEDICAID REBATE AGREEMENTS

Defendants do not argue that Suffolk has failed to plead a breach of contract cause.  They claim, however, that Suffolk is not an intended third party beneficiary of the Rebate Agreement. Con. Mem. at 31-34.  The very language of their argument reveals it is not appropriate at the motion to dismiss stage. "Suffolk <u>must show that</u> . . . "  (Con. Mem. at 32), "a Plaintiff <u>must show that</u> . . . .," *Id.*, "<u>the standard of proof </u>for third party beneficiary statue requires . . . "  *Id.*, *citing Maniere v. United States*, 31 Fed. Cl. 41, 417 (1994).  Rule 12 does not require Suffolk to show or prove anything at this stage.



It is well settled under New York law that "a third party may be the beneficiary of a public as well as a private contract." *See Kornblut v. Chevron Oil Co.*, 62 A.D.2d 831, 407 N.Y.S. 2d 498, (2d Dep't 1978) "A party need not necessarily be specifically mentioned in a contract to be a third-party beneficiary." *Newman v. Schwartz*, 102 F.3d 660, 663 (2d Cir. 1996). To state a cause, a third party must allege (1) the existence of a valId. and binding contract between other parties, (2) that the contract was intended for his or her benefit, and (3) that the benefit to him or her is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the beneficiary if the benefit is lost. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 495 N.Y.S.2d 1, 5-6 (2d Dep't 1985); *see also Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 722-723 (2d Dep't 1983) *accord McNeill v. New York City Housing Authority*, 719 F.Supp.233, 248-249 (S.D.N.Y. 1989).[19] Defendants concede element one. Con. Mem. at 31-32. Suffolk pleads two and three. AC at ¶¶ 73-77.

Dispositively, defendants' cases either deal with proof at a summary judgment or trial stage, or are otherwise inapposite. The court denied third party beneficiary status in *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985), because permitting it would have disrupted the Rehabilitation Act's, 29 U.S.C. § 793, "emphasis on conciliation and informal resolution of complaints." *Id.* at 1482. As set forth extensively throughout this brief, the federal rebate Medicaid Act depends upon enforcement at all levels of government. *Roedler v. Dept. of Energy*, 255 F.3d 1347 (Fed. Cir. 2001), actually supports Suffolk's claim. It provides that a contract involving the United States is construed "by application of the

---

[19]   Suffolk conducts this analysis pursuant to both federal common law and New York state contract law given defendants' statement that the form Rebate Agreement expressly provides that its interpretation is governed by federal common law. *See* Con. Mem. at 31. Given the early stage of this litigation, Suffolk has not yet had the benefit of discovery and therefore cannot confirm whether the language of the form Rebate Agreement annexed to defendants' brief is representative. In any event, regardless which law applies, the result is the same. Suffolk properly pleads its third party beneficiary status and defendants' contractual breach.



same principles as if the contract were between private individuals." *Id.* at 1351-52, citing *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (applying general law of third party beneficiary claims to contract where United States was contracting party). What are those principles? "The intended beneficiary need not be specifically or individually identified in the contract but must fall within a class clearly intended to be benefitted thereby." *Montana*, 124 F.3d at 1273, *citing* Restatement (Second) of Contracts § 302(1)(b). As set forth at Point II.B.2.a, *supra*, the rebate statutes were enacted to provide cost saving to governmental bodies like Suffolk who pay for Medicaid Suffolk clearly is part of the class the rebate statutes intended to benefit. *5th Bedford Pines Apartments Ltd. v. Brandon*, 262 F.Supp. 2d 1369, 1379 (N.D.Ga. 2003), is no help to defendants either. The obligations the putative third party sought to enforce in that case did not exist in the contract. *Id.* at 1379. Here, Suffolk wants defendants to do precisely what they were required to do pursuant to their rebate agreements. AC at ¶¶ 34, 359. *E.I. Dupont de Ne Mous and Co. v. Phone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001), has no application here. The court required the putative third party to arbitrate the issue of its standing because of an arbitration clause is the contract at issue. *Id.* at 196. *McCarthey v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994), likewise affirms the propriety of Suffolk's cause. Third party status was denied there because the benefit of enforcement would not flow directly to the putative third party. *Id.* at 362. By contrast, Suffolk would receive direct benefit of defendants' compliance with the rebate agreements. It is Suffolk's money that would be rebated.

In an effort to argue Suffolk is, at best, an "incidental" third party beneficiary of the Rebate Agreements, defendants assert that "[t]he New York legislature can decide how much of the rebate it wishes to share with New York's various political subdivisions." Con. Mem. at 33. That is incorrect. Under New York's statutory scheme, Suffolk, like all New York counties, has paid 25% of its own



Medicaid costs and is legally entitled to its pro rata share of any rebate received related to such costs.  AC at ¶ 1, 315.  New York could not legally retain the entirety of the rebates it receives, to the extent the rebates pertain to drugs paid for by Suffolk.

Defendants' argument that "only the Secretary of HHS may remedy any violations of the Rebate Agreement" is also incorrect.  Con. Mem at 6.  The Federal Medicaid Act, New York's Medicaid statute, New York regulations and common law consistently contemplate that states and local social service districts will use "all means necessary" to prosecute violations of all applicable state laws regarding any and all aspects of fraud in connection with the Medicaid Act.  See Points II.A, III, *supra, e.g.*  Defendants' argument also is premature given that, as defendants admit, the Best Price program is by operated entirely under a cloak of confidentiality.  *See* Defendants' Motion to Dismiss Montana/Nevada at 5, citing 42 U.S.C. § 1396-r(8)(b)(3)(D).[20]

Sustaining Suffolk's third party beneficiary claim would not be a singular event.  New York courts have in several instances found contracts entered into by a governmental entity were created for the benefit of another governmental unit and that such unit had a right of claim. *See Town of Babylon v. Lizza Industries, Inc.*, 191 A.D.2d 425, 593 N.Y.S.2d 1001 (2nd Dep't 1993) (town as third party beneficiary to contract between county and contractor); *Town of Moriah v. Cole-Layer-Trumble Company*, 200 A.D.2d 879, 606 N.Y.S.2d 822 (3rd Dep't 1994) (town as beneficiary to contract made by county where town (like Suffolk here), was responsible for portion of service costs).

## VII.   SUFFOLK STATES A CAUSE UNDER NEW YORK'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, GBL § 349

---

[20]Defendants cite 42U.S.C. §1396-r(8)(b)(2)(A) for confidentiality.  This section discusses State reports to manufacturers.  Suffolk assumes defendants intended to refer to 42 U.S.C. §1396-r(8)(b)(3)(D) for this proposition.



To state a General Business Law ("GBL") § 349 claim a party must allege that the deceptive acts or practices are consumer-oriented. *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 238 (1st Dep't 1995).  Suffolk has done this.  AC at ¶¶ 394, 395.  A party must also allege: (1) that the act or practice was misleading in a material respect, and (2) that the plaintiff was injured.  *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20; 673 N.Y.S.2D 529, 533 (4th Dep't 1998), *Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314; 746 N.Y.S.2d 858, 863  (1st Dep't 2002); *Geismar v. Abraham & Strauss*, 109 Misc.2d 495, 439 N.Y.S. 2d 1005 (Dist.Ct. 1981).  Suffolk has done this as well.  Paragraph 399 of the complaint alleges the following deceptive acts:

> (a) Defendants have failed to disclose . . . that the AWP does not reflect the true average wholesale price . . . and that the "best prices" they report are not the actual "best prices.";

> (b) Defendants have made false or misleading statements of facts concerning the price of goods in that they have lied about the true AWP and "best prices"paid  for their medications . . .

> (c) Defendants have made knowingly false representations in a transaction by representing that the AWP is an accurate reflection of the average wholesale price  . . .  and that their reported "Best prices" are in fact the "best prices" offered to a commercial entity for their drugs;

As a result of defendants' misleading and deceptive conduct, including reporting  false and misleading AWPs, and false and misleading rebate data (AC at ¶¶ 4, 18, 312-315), Suffolk  has overpaid for its Medicaid pharmacy costs.  (AC at ¶¶ 18, 314).

Defendants demand reliance (Con. Mem. at 22), but the New York Court of Appeals repeatedly has held that reliance is not an element of a §349 claim. *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 896-847 (1st Dep't 2000) (citing *Small v. Lorillard Tobacco Co.*, 94



N.Y.2d 43, 698 N.Y.S.2d 615, (1st Dep't 2000).  In any event, Suffolk was statutorily required to rely

on defendants' misrepresentations and omissions respecting Medicaid Covered Drugs  N.Y. Soc. Serv.

L. § 367(a).  *Oswego*, 623 N.Y.S.2d at 533, and Suffolk has pled that.  AC at ¶ 118, 314.  Suffolk

specifically pleads that but for defendants' deceptive misconduct, Suffolk would not have incurred the

unlawful Medicaid overcharges; Suffolk would not have been injured. AC at ¶¶ 1, 4, 18, *e.g.*.

> Defendants' say that Suffolk's GBL § 349 claim must satisfy 9(b).  Con. Mem. at 37.  The

argument is frivolous and should be withdrawn.  Neither of defendants' "authorities" concerned the

application of 9(b) to GBL § 349.  *Varney v. R.J. Reynolds Tobacco Co.*, 118 F.Supp. 2d 63 (D. Mass.

2000), concerned the  Massachusetts consumer protection statute.  *NCC Sunday Inserts, Inc. v. World

Color Press, Inc.*, 692 F. Supp. 327, 330 (S.D.N.Y. 1988), concerned Connecticut. In fact, it is well

established "[a]ny allegation of fraud made in connection with [a GBL] 349 claim is surplusage and not

subject to review under Rule 9(b).  *Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 265

(S.D.N.Y. 2001) (*quoting Hedaya Bros., Inc. V. Fed. Ins. Co.*, 799 F. Supp. 13, 15 (E.D.N.Y. 1992).

> Defendants argue that application of New York state's consumer protection law is

"especially inappropriate" given that the pharmaceutical industry is "the subject of pervasive regulation."

Con. Mem. at 21, n.22.  But, as Judge Weinstein wrote, "[t]he text of the statute is expansive."  *Blue

Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris USA,* Inc., 178 F.Supp.2d 198 (E.D.N.Y.

2001).  The "New York Act parallels the most aggressive statutes enacted in the country," *id.* at 232, and

the Court of Appeals has recently emphasized that § 349 applies to virtually "all economic activity." *Id.,

citing Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 690 N.Y.S.2d 495 (2d Dep't 1999).  Moreover,

this court already has ruled that application of state consumer protection laws to the alleged misconduct

is proper. *In re AWP Litig.*, 263 F. Supp. 2d at 187.



Defendants argue that GBL § 349 cannot be enforced against them because Congress has sanctioned their unfair and deceptive practices. Con. Mem at 21-22. But this Court has already held otherwise. "The fact that Congress has failed to disturb the widespread practice on the part of pharmaceutical companies of grossly overstating their AWPs cannot be read as a clear and manifest intention to grant immunity from state regulation of such fraudulent practices." *In re AWP Litig.*, 263 F.Supp at 187.

Finally, defendants argue that Suffolk cannot assert a GBL § 349 cause because Suffolk is not a consumer. But G.B.L. § 349 empowers "any person", including governmental entities and competitors, to bring suit for actual damages. Suffolk pleads that defendants' acts were consumer oriented (AC at ¶¶ 394, 395), as required by *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 290 (1st Dep't 1995) (citing *Oswego* 623 N.Y.S.2d at 532-533. But, in any event,

> "a plaintiff need neither be a consumer nor. . . standing in the shoes of a consumer to have an actionable claim under Section 349." *Blue Cross,* 344 F.3d at 218 (2nd Cir. 2003) "[T]he critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer . . ." *Id.*

There is no doubt that defendants' alleged misconduct with respect to Medicaid is a matter of affecting public interest. N.Y. Social Services Law says so expressly. "Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare." *See* AC at ¶ 397, citing N.Y. Sec. Serv. L. § 363. Suffolk's GBL § 349 claims must be sustained.

## VIII.   SUFFOLK STATES A CAUSE FOR UNJUST ENRICHMENT



Suffolk has stated an unjust enrichment cause. The inquiry is (a) was a benefit conferred on the defendant under mistake of fact or law, (b) does the benefit remain with the defendant, (c) has there otherwise been change of position by the defendant, and (d) was defendant's conduct was tortious or fraudulent. *Paramount Film Distributing Corp. v. State*, 30 N.Y.2d 415, 334 N.Y.S.2d 388 (N.Y.1972), citing, Restatement, Restitution, §§ 1, 142 (Comment B) § 155 (Comment B).

Suffolk pleads that defendants reported false and inflated AWPs and failed to report best prices (a) to avoid paying rebates (AC at ¶ 8) and (b) to increase the volume of their drugs prescribed resulting from their efforts to market the spread. AC at ¶¶ 68, 105. Suffolk pleads that defendants have benefitted as a result and Suffolk has been injured. AC ¶¶ 8, 68, 105, 315-321. Suffolk pleads that this conduct was fraudulent and in violation of defendants' federal and state obligations. AC at ¶¶ 81-83, 392-406. Suffolk's claim should be sustained.

Broad principles of equity support the cause. *McGrath v. Hilding*, 41 N.Y.2d 625, 394 N.Y.S.2d 608 (1977) ("Unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction."); *Paramount*, 285 N.E.2d at 698 ("The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.").

Defendant argument *contra* seeks, in essence, to impose a inappropriately formal privity requirement on Suffolk's equitable claim. It suggests that the lack of a direct payment from Suffolk to the defendants is a bar to Suffolk's claim.[21] Con. Mem. at 23. Of course this is incorrect, the test is whether defendants have been unjust enriched as a result of their misconduct. Defendants' own authority makes plain that the enrichment may obtain or be quantified in a variety of ways, "either be the receipt of money

---

[21]*Citrin v. Columbia Broad. Sys., Inc.*, 29 A.D.2d 740, 286 N.Y.S.2d 706 (1st Dep't 1968), which defendants cite in support of this proposition, deals strictly with quantum meruit. It makes no mention of unjust enrichment.



or its equivalent or by being saved from expense or loss." *Barrata v. Kozlowski*, 94 A.D.2d 454, 464 N.Y.S.2d 803, 810 (2nd Dep't 1983).   *Heller v. Kurz*, cited by defendants, goes even further to posit that no benefit even is necessary in order to incur liability.  228 A.D.2d 263, 643 N.Y.S.2d 580, 581 (1st Dep't 1996).  Defendant must compensate the plaintiff for expenditures made in reliance upon defendant's misrepresentations. *Id.*  Suffolk was statutorily required to rely on defendants' misrepresentations here. *See* Point I.B.4, *supra*.

Defendants cite *Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*, 276 A.D.2d 673, 714 N.Y.S.2d 338 (2d Dep't 2000), in which the court denied an unjust enrichment claim against a bank foreclosing on a construction property to the detriment of contractors with subordinate liens.  The decision held that any benefit received by the bank from the contractors was incidental, as the "contractors performed at the behest of the [project's developer] rather than [the bank]. . ."  *Id.* at 342.  By contrast, Suffolk is statutorily required to pay Medicaid pharmacy costs based on the AWPs that defendants themselves provide. AC at ¶ 74.  Thus it was at the direct behest of the defendant manufacturers that the overpayments were made.  These overpayments were not incidental, but contemplated by the defendants in their strategy to "market the spread." AC at ¶¶ 100-107.

## IX.    SUFFOLK SATISFIES RULE 9(b)

Fed. R. Civ. P. 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of the alleged fraud.  *Gublo v. NovaCare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999).  In the context of the fraud that undergirds Suffolk's complaint, this Court's May 13, 2003 order makes plain a plaintiff must "clearly and concisely alleged with respect to each defendant: (1) the specific drug or drugs that was purchased from defendant (2) the allegedly fraudulent AWP for each drug, and (3) the name of the specific plaintiff(s) that purchased the drug."  *In re AWP Litig.*,  263 F. Supp. 2d at 194.



For defendant in its complaint, Suffolk has satisfied both this Court's directive and Rule 9(b). Suffolk has alleged, by name, the drug it purchased from each defendant and the allegedly fraudulent AWP for each drug. AC at ¶¶ 122-311 and Exhibit A thereto.

Defendants demand that Suffolk explain "why the reported AWP statement is fraudulent," Con. Mem. at 36, but that is beyond what either this court or 9(b) require. Even defendants' own authority confirm this. *Gublo v. NovaCare, Inc.*, does not state that plaintiff must allege "why" a statement is fraudulent. In fact, the *Gublo* Court specifically states that 9(b) requires that plaintiffs set forth the "who, what, when, where, and how" of the alleged fraud. 62 F.Supp.2d at 353.

The *Gublo* pleading failed 9(b) standards because "plaintiffs simply allege[d] three methods by which NovaCare is said. to have inflated its bills to the government, without citing a single instance of a false claim." *Id.* Second, "plaintiffs suggest a financial motive for NovaCare's overcharges for 'other services,' but failed to specify what those 'other services' were, and failed to identify a single false claim related to those services." *Id.* Finally, plaintiffs alleged that substantial discounts were given to its customers but "[plaintiffs] fail to point to any section of the regulations that requires NovaCare to factor discounts given to private insurers into the determination of its 'actual charges' for government billing purposes." *Id.*

Each of these is met by Suffolk's complaint. Suffolk has alleged the specific false claims made by each defendant for each drug. AC at ¶¶ 114-311. Suffolk has alleged defendants' motive for submitting false data to the government, i.e., to incentive providers to utilize their drugs and increase market share. AC at ¶¶ 97-104. Suffolk has pointed "to a section . . . that requires . . . [the factoring of] discounts given to private insurers into the determination of its actual charges for government billing purposes. AC at ¶¶ 8, 76.



*Suna v. Bailey Corp.*, 107 F.3d 64 (1st Cir. 1997), does not require that Suffolk "explain why the statements were fraudulent." *Id.* at 71-73. *Suna* involved pleading requirements in securities fraud matter.[22]  According to Wright and Miller, "Congress amended the Securities Exchange Act of 1934 to include unique pleading requirements for private class actions alleging securities fraud. If a complaint alleges that the defendant made misleading statements or omissions, it must specify each statement alleged to have been misleading and the reason or reasons *why* the statement is misleading." (emphasis added) 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1297 (2d ed. 1990).[23]

Finally, defendants *ipse dixit* that all of Suffolk's claims implicate 9(b) is unsupportable. Rule 9(b) applies only to Suffolk's two claims sounding in fraud, i.e. Counts I (RICO) and Count VIII (Common Law Fraud), Suffolk independently has satisfied the pleading requirements for its other causes, as set forth in Points II-VIII, *supra*.

## X.   SUFFOLK PLEADS SUFFICIENT BASIS TO TOLL APPLICABLE STATUTE OF LIMITATIONS

This Court already has ruled that it would not address whether fraudulent concealment tolls any applicable statutes of limitation because "the issue only affects the amount of damages." *See In re AWP Litig.* 263 F.Supp.2d at 195. Defendants nevertheless raise the issue on this motion.  Should the

---

[22]*Suna* stated that "We recently set forth guidelines intended to strike a balance between the pleadings required of plaintiffs in securities fraud litigation and the concern that defendants not be subject to strike suits intended to increase the amount of settlement awards rather than set forth a legitimate claim...In order to succeed on their claim, appellants must have complied with these pleading requirements by showing that the statements presented to the public were false or misleading at the time they were made and showing that it is reasonable to believe that the defendants knew they were false or misleading. In addition, appellants must show that statements made were more than tempered predictions about the future that later proved incorrect." *Suna*, 107 F.3d at 98-69.

[23]   In *La Corte v. Merck & Co, Inc.*, No. 99–3807 , slip op. at 6 (E.D. La. Aug 27, 2003),  the court acknowledged that, when the facts related to a fraud are uniquely within the perpetrators knowledge, Rule 9(b) is relaxed.  In *La Corte,* the facts were not within Merck's exclusive possession, but  known to the government.  Here, by contrast, defendant's concede their pricing data is not produced to Suffolk. Con. Mem. At 7.



Court consider it, Suffolk has met and exceeded 9(b)'s requirement that a plaintiff plead with particularity the facts giving rise to fraudulent concealment.

Fraudulent concealment requires that "(1) defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and (2) [plaintiffs] were not on actual or constructive notice[24] of that evidence, despite (3) their exercise of reasonable diligence." *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996)[25].

Suffolk alleges all three.  It alleges that each defendant "concealed its fraudulent conduct by controlling the process by which the AWPs for Covered Drugs were inflated and falsely reported to Publishers,"  AC at ¶ 322, and  that "defendants prevented Suffolk from knowing what the actual pricing structures for these drugs were." *Id.*  Defendants in response essentially claim that everyone knew AWPs were inflated, and Suffolk long has been on "constructive notice" to be "diligent" in pursuing its claims (Con. Mem at 37).  But this ignores Suffolk's allegations that it did not know, and  could not have known, of the extent of defendants' manipulation of AWP <u>and Suffolk's own damage as a result</u>, until the recent government investigations and settlements that, *inter alia*, exposed that defendants routinely were violating their rebate obligations. AC at ¶¶ 92, 130-131, *e.g.*    Defendants concede, as they must, that while rebate unit amounts are provided to state, prices are not.  *See* Defendant's Motion to Dismiss, Montana/Nevada at 5 citing 42 U.S.C. § 1396 r-8(b)(2)(A).

---

[24]    Constructive notice means "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved."  *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 quoting *Cook v. Avien*, 573 F.2d 685, 697 (1st Cir. 1978).  These "storm warnings" of the possibility of fraud trigger a duty to investigate in a reasonably diligent manner.  *Id.*

[25]    *See also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 192 (1992) (fraudulent concealment equitably tolls the running of the limitations period where the plaintiff shows that it neither knew nor reasonably could have known about the RICO violation).



It cannot be determined as a matter of law on this motion therefore when Suffolk was on constructive notice of defendants' misconduct.   This  Circuit adopts a two-step process for "handling a defendants' claim that [storm warnings] should have sufficed to put [a plaintiff] on inquiry notice." *Young v. Lepone* 305 F.3d 1, 8 (1st Cir. 2002) The first step is to determine "whether, when, and to what extent storm warnings actually existed in a given situation....this step necessarily entails a determination as to whether a harbinger, or series of harbingers, should have alerted a similarly situated [plaintiff] that fraud was in the wind." *Id*.  Only after the court determines that such "harbingers" exist, it then examines whether the plaintiff "probed the manner in a reasonably diligent manner." *Id*.  Dispositively on this motion, both steps present questions of fact.. *Id*.

Moreover, the very fact of the ongoing government investigations tolled any duty on Suffolk's part, even if it could be deemed to have been on constructive notice.  *Compare General Builders Supply Co. v. River Hill Coal Venture*, 796 F.2d 8, 11 (1st Cir. 1986)(where "actual knowledge of unauthorized conduct" was deemed sufficient storm warning) with *Bangor and Aroostook Railroad Co. v. Interstate Commerce Commission*, 578 F.2d 444, 446 (1st Cir 1978)(no storm warning where evidence was "equally indicative" of a "mere suspicion", as it was of actual knowledge).  As the First Circuit put it in *Young v. Lepone,*  plaintiff "hardly can be faulted, as a matter of law, for awaiting the result of that investigation before jumping to the conclusion that management was cooking the books."  *Young* 305 F.3d at 8.



## CONCLUSION

For all the foregoing reasons, defendants' consolidated motion to dismiss should be denied in its entirety.

Date:   October 30, 2003
        New York, New York

KIRBY McINERNEY & SQUIRE, LLP

By:  Signature on File with Court
       Roger W. Kirby
       Joanne M. Cicala (admitted pro hac vice)
       Aaron D. Hovan (admitted pro hac vice)

830 Third Avenue
New York, New York 10022
(212) 371-6600

COUNSEL FOR THE COUNTY OF SUFFOLK



# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUFFOLK'S CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LEGAL STANDARD ON A MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.      SUFFOLK STATES A  RICO CAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      Suffolk Has RICO Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      Suffolk Adequately Pleads A Violation Of 18 U.S.C. § 1962(c) . . . . . . . . . . . . . . 12

                1.      Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                2.      Enterprise  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                3.      Pattern of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                4.      Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.     SUFFOLK CAUSE FOR VIOLATION OF THE FEDERAL REBATE
        STATUTE, 42 U.S.C. § 1396r-8, SHOULD BE SUSTAINED  . . . . . . . . . . . . . . . . . . . 18

        A.      Suffolk Has Standing To Pursue Its Federal Rebate Claims . . . . . . . . . . . . . . . . . 18

        B.      Suffolk May Assert A Right of Action Under the
                Federal Medicaid Rebate Statute 42 U.S.C. § 1396r-8  . . . . . . . . . . . . . . . . . . . . 19

                1.      42 U.S.C. § 1396 Does Not Provide
                        For Exclusive Federal Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                2.      Suffolk Has An Implied Private Right of
                        Action Under the Federal Rebate Statute  . . . . . . . . . . . . . . . . . . . . . . . . . 20

                a.      Suffolk Is Part Of The Class For Whose
                        Especial Benefit The Rebate State Was Enacted . . . . . . . . . . . . . . . . . . . . . . 21

                b.      Legislative Intent Supports A Remedy

i



|  |  | For The County | 21 |

| | c. | The Legislative Scheme Supports A Remedy For The County | 22 |

| | d. | Suffolk's Causes Traditionally Are Relegated to State Law | 22 |

III. SUFFOLK'S CAUSE FOR VIOLATION OF THE NEW YORK STATE REBATE STATUTE, SOCIAL SERVICES LAW § 367-a(7)(d) ............ 23

A. Suffolk's State Law Rebate Claims Are Not Preempted ...................... 23

B. Suffolk Has An Implied Right of Action Under New York Soc. Serv. L. § 367-(a)(7)(d) ........................... 25

    a. Suffolk Is Part Of The Class ..................................... 25

    b. Recognizing Suffolk's Right of Action Promotes the Legislative Purpose of New York's State Rebate Statutes ........... 26

    c. Suffolk's Right of Action Is Consistent With The State Legislative Scheme ....................................... 26

IV. SUFFOLK MAY ENFORCE 18 N.Y.C. R.R. § 515.2(b)(4) and (5): COUNT IV SHOULD BE SUSTAINED ............................... 26

V. DEFENDANTS CONCEDE SUFFOLK HAS STANDING TO PLEAD, AND PROPERLY PLEADS A CLAIM UNDER NEW YORK SOCIAL SERVICES LAW § 145-b ........................................................... 27

VI. SUFFOLK PLEADS THAT IT IS A THIRD PARTY BENEFICIARY OF THE MEDICAID REBATE AGREEMENTS ...................................... 28

VII. SUFFOLK STATES A CAUSE UNDER NEW YORK'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, GBL § 349 ........................... 31

VIII. SUFFOLK STATES A CAUSE FOR UNJUST ENRICHMENT ................... 34

IX. SUFFOLK SATISFIES RULE 9(b) ........................................ 36

X. SUFFOLK PLEADS SUFFICIENT BASIS TOTAL APPLICABLE STATUTE



OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## TABLE OF AUTHORITIES

### CASES

*5th Bedford Pines Apartments Ltd. v. Brandon,*
 262 F.Supp. 2d 1369 (N.D.Ga. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Aetna Cas. Sur. Co. v. P&B Autobody,*
 43 F.3d at 1559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Aetna Cas. Svr. Co. v. P& B Autobody,*
 43 F3e 1546 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Alcorn County v. U.S. Interstate Supplies,*
 731 F.2d 1160 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Alexander v. Sandoval,*
 532 U.S. 275, 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bangor and Aroostook Railroad Co. v. Interstate Commerce Commission,*
 578 F.2d 444, 446 (1st Cir 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Barrata v. Kozlowski,*
 94 A.D.2d 454, 464 N.Y.S.2d 803, 810 (2nd Dep't 1983) . . . . . . . . . . . . . . . . . . . . 35

*Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris USA, Inc.,*
 344 F.3d 211, 218 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris USA,* Inc.,
 178 F.Supp.2d 198 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Buckman Co. v. Plaintiffs' Legal Comm.,*
 531 U.S. 341 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Burdett v. Miller,*
 957 F.2d 1375 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Burns Jackson Miller Summit & Spitzer v. Lindner,*



59 N.Y.2d 314, 464 N.Y.S.2d 712, 722-723 (2d Dep't 1983) . . . . . . . . . . . . . . . . . . 25, 29

*Conley v. Gibson*,
    355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cort v. Ash,*
    422 U.S. 66 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Costello v. Geiser*, 647
    N.E.2d 1261 (N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Coyne v. City of Somerville*,
    972 F.2d 440-441 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*D'Amato v. Wisconsin Gas Co.*,
    760 F.2d 1474 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*E.I. Dupont de Ne Mous and Co. v. Phone Poulenc Fiber and Resin Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Enrico v. Bane*,
    213 A.D.2d 784 (3d Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
    66 N.Y.2d 38, 495 N.Y.S.2d (2d Dep't 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Geismar v. Abraham & Strauss*,
    109 Misc.2d 495, 439 N.Y.S. 2d 1005 (Dist.Ct. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 31

*General Builders Supply Co. v. River Hill Coal Venture*,
    796 F.2d 8 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Gold v. United Health*,
    261 A.D.2d 67, 701 N.Y.S.2d 123 (3d Dep't 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Goshen v. Mutual Life Ins. Co.*,
    98 N.Y.2d 314, 774 N.E.2d 1190  (1st Dep't 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Gublo v. NovaCare, Inc.*,
    62 F. Supp. 2d 347 (D. Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

iv



*Hedaya Bros., Inc. V. Fed. Ins. Co.*,
    799 F. Supp. 13, 15 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Heller v. Kurz*,
    228 A.D.2d 263, 643 N.Y.S.2d 580, 581 (1st Dep't 1996) . . . . . . . . . . . . . . . . . . . . . . . 36

*Holmes v. Sec. Investor Protection Corp.*,
    503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*In re Average Wholesale Pharmaceutical Litigation*,
    263 F.Supp. 2d 172 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In the Matter of Frances Callahan*,
    254 A.D.2d. 415, 578 N.Y.S.2d 741 (2d Dep't 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
    76 F.3d 1245 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

*Kansas v. Utilicorp United, Inc.*,
    497 U.S. 199 (U.S.Kan. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179, 192 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Kornblut v. Chevron Oil Co.*,
    62 A.D.2d 831 N.Y.S. 2d 498, (2d Dep't 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*,
    276 A.D.2d 673 N.Y.S.2d 338 (2d Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*Langford v. Rite Aid of Alabama, Inc,.*
    231 F.3d 1308 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Lemelson v. Wang Lab*,
    874 F. Supp. 430 (D. Mass. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Link v. Town of Smithtown*,
    267 A.D.2d 284 (2d Dep't 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10



*Mass Mutual Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20 , 21

*McCarthey v. Azure*,
    22 F.3d 351 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

*McGrath v. Hilding*,
    41 N.Y.2d 625 N.E.2d 328 (N.Y.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*McInnis-Misenor v. Main Med. Ctr.*,
    319 F. 3d 63 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*McNeill v. New York City Housing Authority*,
    719 F.Supp.233 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,
    414 U.S. 453 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*NCC Sunday Inserts, Inc. v. World Color Press, Inc.*,
    692 F. Supp. 327 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*New York University v. Continental Ins. Co.*,
    87 N.Y.2d 308 N.Y.S.2d 238 (1st Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . .  31 , 33

*Newman v. Schwartz*,
    102 F.3d at 663 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20; 673 N.Y.S.2D 529, 533 (4th Dep't 1998) . . . . . . . . . . . . . . . . . . . . . . 31

*Paramount Film Distributing Corp. v. State*,
    30 N.Y.2d 415, 334 N.Y.S.2d 388 (N.Y.1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*Pavlov v. Bank of New York, Co.*,
    No. 01-7434, 2002 WL 63576 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Peckham v. Continental Cas. Ins. Co.*,
    895 F.2d 830 (1st Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*People of the State of New York v. Aventis, Inc.*
    (03-CV-305) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*People of the State of New York v. Glaxo Smithkline*,



*PLC* (03-CV-299) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People of the State of New York v. Pharmacia Corp.*
(03-CV-295). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Petitt v. Celebrity Cruises, Inc.,*
153 F. Supp. 2d 240, 265 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Pharmaceutical Research & Mfrs. Of Am. v. Concannon,*
249 F.3d 66 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Pharmaceutical Research & Mfrs. of Am.v. Thompson,*
251 F.3d 219 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pharmaceutical Research and Mfrs. of America v. Walsh,*
123 S.Ct. 1855 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 21, 22 ,25, 26

*Pharmaceutical Research Mfs. of Am. v. Medows,*
184 F. Supp.2d 1186 (N.D.Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rand v. Perales,*
737 F. 2d 257 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Reves v. Ernst & Young,*
507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rhode Island Laborers' Health & Welfare Fund v. Phillip Morris, Inc.,*
99 F. Supp. 2d 174 (D.R.I. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Roeder v. Alpha Indus.,* Inc.,
814 F.2d 22 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29

*Rylewicz v. Beaton Servs., Ltd.,*
698 F.  Supp. 1391 (N.D. Ill. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Sebago, Inc. v. Beazer East, Inc.,*
18 F. Supp. 2d 70 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sedima S.P.R.L. v. Imrex Co.,*
473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12



*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43, 698 N.Y.S.2d 615, (1st Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Standardbred Owners Ass'n v. Roosevelt Raceway Assocs.,
   985 F. 2d 102 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*State of Montana v. United States*,
   124 F.3d 1269 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Stutman v. Chemical Bank*,
   95 N.Y.2d 24, 709 N.Y.S.2d 892 (1st Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Suna v. Bailey Corp.*,
   107 F.3d 64 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Swift v. United States*,
   866 F.2d 507 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Texas & Ry Co. v. Rigsby*,
   241 U.S. 33 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Town of Moriah v. Cole-Layer-Trumble Company*,
   200 A.D.2d 879, 606 N.Y.S.2d 822 (3rd Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Oreto*,
   37 F.3d 739 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Owens*,
   167 F.3d 739 (1st Cir. 1999), *cert. denied*, 528 U.S. 894 (1999) . . . . . . . . . . . . . . . . . . . 14

*United States v. Patrick*,
   248 F.3d 11 (1st Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Robertson*,
   514 U.S. 669 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*University of Maryland v. Peat Marwick*,
   996 F.3d 1534 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13



*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Varney v. R.J. Reynolds Tobacco Co.*,
   118 F.Supp. 2d 63 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Young v. Lepone*
   305 F.3d 1, 8 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40



## STATUTES

18 N.Y.C.R.R. § 515.2(b)(4) and (5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 27

18 U.S.C. § 1961(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 13

29 U.S.C. § 793 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

42 U.S.C. 1396r8(b)(3)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19, 31, 39

42 U.S.C. § 1396a(a)(25)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 2, 20, 22, 27

42 U.S.C. § 1396b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

42 U.S.C. § 1396r-8(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 24, 25

N.Y. Soc. Serv. L. §145b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 10, 19, 22, 26, 27

New York Soc. Serv. L. § 3677(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7, 10, 16, 22, 25, 26

New York Soc. Serv. L. § 368-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 16

New York Soc. Serv. L. §369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 16, 26

U.S.C. § 1396r8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## MISCELLANEOUS

*People of the State of New York v. Aventis, Inc.* (03-CV-305) . . . . . . . . . . . . . . . . . . . . . . . . 5

*People of the State of New York v. Glaxo Smithkline,* PLC (03-CV-299) . . . . . . . . . . . . . . . . 5

*People of the State of New York v. Pharmacia Corp*. (03-CV-295). . . . . . . . . . . . . . . . . . . . . . 5

*W. Prosser & W. Keeton, Prosser & Keeton on Torts* 321 (5th ed. 1984) . . . . . . . . . . . . . . . . 17



I:\Files\JMC\AWP\SUFFOLK\Suffolk's 2 Mem of Law In Opp to Def Cons Mot to Dism - 10-29-03.wpd