# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
------------------------------------ x
                                     )
In re: PHARMACEUTICAL INDUSTRY       )
AVERAGE WHOLESALE PRICE              ) MDL NO. 1456
LITIGATION                           )
                                     )
                                     )
------------------------------------ x
                                     ) Civil Action No. 01-12257-PBS
                                     )
THIS DOCUMENT RELATES TO:            )
                                     ) Judge Patti B. Saris
                                     )
Swanston v. TAP Pharmaceutical Prods., Inc., et )
al., No. CV03-0062-PHX-SMM (D. Ariz.)           )
                                     )
                                     )
------------------------------------ x
```

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO MOTION FOR REMAND

At the October 9, 2003, hearing on Plaintiff's Motion for Remand, the Court invited the parties to submit briefs addressing the issue of whether all properly-served defendants consented to removal of this action. This brief addresses the issue identified by the Court, as well as the additional arguments raised by plaintiff in his two supplemental memoranda in support of remand.

## INTRODUCTION

Defendant GSK properly removed this case to federal court. First, as detailed in the chart set forth in the Appendix to this brief, all properly-served defendants consented to removal of this action. Plaintiff's argument that G.D. Searle and Michael Gendelman did not properly consent to removal is meritless because neither of these defendants were properly served with the Second Amended Complaint at the time the case was removed. It is well-established that only those defendants who have actually been served with process at the time of removal must consent to removal. *See Montana v. Abbott Laboratories, Inc.*, 266 F. Supp. 2d 250, 260 (D. Mass. 2003) ("As a general rule, in cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition.") (internal citation omitted) (emphasis added); *Hernandez-Lopez v. Commonwealth Of Puerto Rico*, 30 F. Supp. 2d 205, 208 (D. PR. 1998) (same); *Garside v. Osco Drug, Inc.*, 702 F. Supp. 19, 21 (D. Mass. 1988) (same). Plaintiff's argument that the individual defendants Scott and Amanda Hidalgo, David Jett, Christopher Coleman, and Eddy James Hack (together referred to as the "non-consenting defendants") were required to consent to removal is also meritless because these defendants have signed settlement agreements with plaintiff's counsel releasing them from liability in exchange for cooperation in prosecuting this action. It is well-established that GSK need not obtain the consent of such "nominal" or "fraudulently joined" defendants. Finally, plaintiff's claim that the ten original corporate defendants waived their right to consent to removal is unfounded.

Numerous courts -- including the majority of circuit courts that have addressed the issue -- have held that previously served defendants who have permitted the thirty-day removal window to pass may still consent to removal by a subsequently served defendant. *See, e.g., Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999); *Garside v. Osco Drug, Inc.*, 702 F. Supp. 19, 21-22 (D. Mass. 1988).

In addition, contrary to plaintiff's assertions, this Court has federal question jurisdiction over plaintiff's claims because they are completely preempted by ERISA. Finally, this court has diversity jurisdiction over this action because there is diversity between the parties and the amount in controversy far exceeds $75,000.

## ARGUMENT

### I. ALL PROPERLY-SERVED DEFENDANTS HAVE CONSENTED TO REMOVAL OF THIS ACTION

#### A. The Written Consent of G.D. Searle Is Not Required Because G.D. Searle Was Not Properly Served with Process Prior to Removal

Plaintiff asserts that defendant GSK's removal of this action was improper because defendant G.D. Searle & Co., Inc. ("Searle"), did not file a written consent to GSK's removal.[1] Plaintiff's argument is misguided. GSK removed the *Swanston* action to federal court on January 10, 2003. At the time of GSK's removal, Searle had not been served with process in the *Swanston* action. *See* October 17, 2003 Affidavit of Kathryn Kullman ("Kullman Affidavit") (Attached as Exhibit A). As the Supreme Court reiterated in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), "one becomes a party officially, and is required to take action in that capacity, <u>only upon service of a summons or other authority-asserting measure</u> . . ." *Id.* at 350 (emphasis added).

---

[1] Searle is the only corporate defendant that did not file a written consent to removal.

2

Thus, only those defendants who have actually been served with process at the time of removal must consent to removal. *See Montana v. Abbott Labs., Inc.*, 266 F. Supp. 2d 250, 260 (D. Mass. 2003) ("As a general rule, in cases involving multiple defendants, all defendants who <u>have been served</u> must join or assent in the removal petition.") (internal citation omitted) (emphasis added); *Garside v. Osco Drug, Inc.*, 702 F. Supp. 19, 21 (D. Mass. 1988) (same); *Hernandez-Lopez v. Commonwealth Of Puerto Rico*, 30 F. Supp. 2d 205, 208 (D. PR. 1998) (same). Plaintiffs concede as much in their Supplemental Memorandum. *See* Supplemental Memorandum at 2 ("In cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition...").

Searle has not to this day been properly served with process in this action. Plaintiff asserts that Searle was served on January 3, 2003. *See* Second Supplemental Brief, pp. 6-7. However, the summons delivered to Searle's offices on January 3, 2003 was directed not to Searle, but to Hoechst Marion Roussel, Inc., an entity that is not affiliated with Searle. *See* Summons Attached as Exhibit B.

Recognizing that Searle had yet to be properly served, plaintiff again attempted to serve Searle on February 25, 2003, some 45 days <u>after</u> GSK had already removed the case to federal court. *See* Kullman Affidavit, Ex. A. Here, plaintiff attempted to serve Searle by delivering a federal court summons -- this time actually directed to Searle -- and a copy of the Second Amended Complaint to a security guard not affiliated with Searle, and not authorized to receive service of process on Searle's behalf. *See id.* Such service is clearly defective under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(h) (authorizing service of process pursuant to the federal rules, or the law of the state in which the district court in which the action is pending is located, or the state in which service of process is effected). Even if the February

3

25 attempt at service had been effective, it would not have triggered any duty for Searle to consent to removal. At that point, plaintiff attempted to add Searle to a case that already was pending in federal court -- as plaintiff recognized in using a federal rather than a state subpoena. There clearly is no requirement that a party added to a case after it has been removed must consent to the removal. *Hernandez-Lopez*, 30 F. Supp. 2d at 208; *Cartwright v. Thomas Jefferson Univ. Hosp.*, 99 F. Supp. 2d 550, 552 n.6 (E.D. Pa. 2000) ("[D]efendants who have not been served at the time removal is filed . . . need not join in the removal or otherwise consent to it.").

### B. The Written Consent of Michael Gendelman Was Not Required Because Mr. Gendelman Was Not Properly Served with Process Prior to Removal

Plaintiff next contends that removal was defective because the individual defendant Michael Gendelman did not file a written consent to removal. As noted above, only those defendants who had been served with the Second Amended Complaint by January 10, 2003, the date GSK removed this action, were required to file written consents with the Court. Defendant Michael Gendelman was not served with the Second Am. Complaint until February 24, 2003. *See* Mot. to Dismiss Second Am. Complaint filed by Michael Gendelman on March 17, 2003 at 2. The fact that Mr. Gendelman was served after the case was removed is irrelevant.

### C. The Consent of the Individual Defendants Scott and Amanda Hidalgo, David Jett, Christopher Coleman, and Eddy James Hack Is Not Required Because These Defendants Have Been Fraudulently Joined to Prevent Removal

Plaintiff's argument that GSK was required to obtain the consent of the individual defendants Scott and Amanda Hidalgo, David Jett, Christopher Coleman, and Eddy James Hack

4

is meritless.[2] As plaintiff concedes, Second Supp. Brief at 10 n.21, the "rule of unanimity" does not apply to "nominal, unknown, or fraudulently joined parties." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (internal citation omitted); *In re Diet Drugs (Phentermine, Fenfluramine, Dexenfluramine)*, 220 F. Supp. 2d 414, 422 (E.D. Pa. 2002) (lack of consent of fraudulently joined defendants disregarded in determining the propriety of removal); *Hill v. City of Boston*, 706 F. Supp. 966, 968 (D. Mass. 1989) ("Exceptions [to the rule of unanimity] are made for nominal, unknown, and fraudulently joined defendants.") (citing 14A Charles A. Wright et al., *Federal Practice and Procedure* § 3731 at 504-10 (2d ed. 1985)). A defendant is fraudulently joined -- and thus is not required to consent to removal -- if plaintiff has "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Diet Drugs*, 220 F. Supp. 2d at 419 (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)); *see also Chicago, Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913) (defendant fraudulently joined if plaintiff does not have a "real intention to get a . . . judgment" against the defendant) (Holmes, J.); *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (internal citation omitted) (joinder is fraudulent if "without any purpose to prosecute the action in good faith against the [defendant]"). In analyzing a claim of fraudulent joinder, "a court is not held captive by the allegations in the complaint," but rather may consider extrinsic evidence bearing on the issue. *Mills*, 178 F. Supp. 2d at 5 (internal citation omitted).[3]

---

[2] Remarkably, plaintiff also contends that GSK was required to obtain the consent of the fictional defendants Jane Doe Jett, Jane Doe Coleman and Jane Doe Hack. This argument has been rejected by those courts that have considered it. *See Green v. Am. Online*, 318 F.3d 465, 470 (3d Cir. 2003) (consent of "John Doe" defendants to removal not required); *Bowen v. Home Depot*, 2001 WL 920263 (E.D.N.Y. Aug. 1, 2001) (same).

[3] Plaintiff contends that the fraudulent joinder doctrine applies "only in cases in which a diverse defendant seeks removal in spite of the presence of a named, non-diverse defendant based on the argument that the non-diverse (continued...)

5

Here, it is readily apparent that plaintiff does not have a good faith intention to "prosecute the action" against any of these non-consenting defendants, and that he fraudulently joined them in the Second Amended Complaint in an unsuccessful attempt to defeat removal. As set forth in Paragraphs 27 and 28 of GSK's Notice of Removal, the settlement agreements that each of the non-consenting defendants executed in *Stetser v. TAP Pharmaceutical Products, Inc.*, a parallel state court proceeding in North Carolina, gave these defendants broad releases from further liability, thus precluding plaintiff from claiming against them here.[4] Moreover, as set forth in the Notice of Removal, these settlement agreements explicitly require the non-consenting defendants to cooperate with plaintiff's counsel in the prosecution of this action, a fact that plaintiff does not deny.[5]

Plaintiff does not dispute that he has settled with these defendants, nor does he dispute that the terms of the settlement require them to cooperate with him in this action. Rather,

---

defendant was fraudulently joined specifically to prevent removal." Second Supp. Brief at 11 n. 22. The cases plaintiff cites for this proposition, however, do not hold that the fraudulent joinder doctrine only applies in the context of diversity jurisdiction and, indeed, courts that have addressed the issue have held that the fraudulent joinder doctrine is equally applicable in federal question cases. *See Commonwealth Edison Co. v. Int'l Bhd. of Elec. Workers Local Union No. 15*, 961 F. Supp. 1154, 1165 (N.D. Ill. 1996) (noting that courts have found fraudulent joinder equally appropriate in federal question cases; citing cases). Plaintiff has not provided any reason for not applying the fraudulent joinder doctrine in federal question cases. In fact, as the court in *Commonwealth Edison Co.* recognized, the rationale for applying the doctrine in federal question cases is perhaps even more compelling than in diversity cases. *Id.* at 1166. A plaintiff should not be permitted to defeat federal court jurisdiction under 28 U.S.C. § 1331 by fraudulently joining a party against whom it has no real intention of pursuing a claim.

[4] Plaintiff claims that the fraudulent joinder argument is inapplicable to non-consenting defendant Amanda Hidalgo because she did not sign a separate settlement agreement in *Stetser*. This argument ignores the fact that Scott Hidalgo's settlement agreement unambiguously releases both Scott and Amanda Hidalgo from any liability that might arise out of this (i.e., the *Swanston*) action. *See* GSK's Opp. to Pl.'s Mot. to Remand at 16.

[5] Certain defendants have propounded discovery upon plaintiff to determine the full extent to which the non-consenting defendants have cooperated with plaintiff in the prosecution of this action. In the event that the Court finds there is insufficient evidence to determine whether the non-consenting defendants were fraudulently joined, defendants respectfully request the Court to defer its ruling pending the completion of discovery on this issues. *See In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 40 (D.D.C. 2000) (defendant provided sufficient evidence of ongoing cooperation between non-consenting defendant and plaintiff to warrant additional discovery on the issue).

plaintiff goes on at length about the current status of the settlement agreements -- they have been preliminarily approved by the district court -- and stresses that they have not yet been finally approved by the court. Plaintiff's arguments are beside the point. The fact that these defendants are cooperating with the plaintiff in the prosecution of this action (and have been since before the filing of the Second Amended Complaint) is sufficient to render the rule of unanimity inapplicable with respect to them. *See In re Diet Drugs*, 220 F. Supp. 2d at 422 (where a defendant has engaged in a pattern of cooperating with plaintiff, the consent of that defendant to removal is not required); *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 40 (D.D.C. 2000).[6]

### D. The Ten Original Corporate Defendants Have Not Waived Their Ability to Consent to Removal

Finally, plaintiff contends that GSK's removal was defective because the ten original corporate defendants have waived their ability to consent to removal of this action by virtue of failing to remove the first two complaints. This argument is unfounded. Plaintiff continues to rely upon the so-called "first served" rule, under which the time to remove for all defendants runs from the date the first defendant is served. But the majority of circuits to have addressed the issue have expressly rejected the first-served rule in favor of the "last-served" rule, pursuant to which a later served defendant (like GSK here) has 30 days from the date it is served to seek removal. *See Marano Enters. v. Z-Teca Restaurants*, 254 F.3d 753, 757 (8th Cir. 2001); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999); *see also Orlick*

---

[6] Plaintiff mistakenly argues that the fraudulent joinder issue raised here -- namely whether defendants who are were in cooperation with plaintiff at the time of the filing of the complaint need to consent to removal -- was decided by the North Carolina district court in *Stetser*. This is not the case. In *Stetser*, the court only considered defendants' argument that the non-consenting defendant was fraudulently joined because no claim for relief could be stated against him. Moreover, unlike this case, the individual defendant in *Stetser* was not already a party to a settlement agreement at the time the suit was filed.

7

*v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 342-43 (D.N.J. 2001) (adopting last-served rule); *Griffith v. Am. Home Prods. Corp.*, 85 F. Supp. 2d 995, 1001 (E.D. Wash. 2000) (same); *Garside v. Osco Drug, Inc.*, 702 F. Supp. 19, 21-22 (D. Mass. 1988) (same); 14C Charles A. Wright et al., *Federal Practice and Procedure* § 3739, at 336-39 (3d ed. 1998) (recommending last-served rule). The First Circuit has not yet addressed whether the first-served or last-served rule is applicable in this circuit, although in *Garside* Judge Tauro applied the last-served rule. *Garside*, 702 F. Supp. at 21-22.[7]

Where the last-served rule applies, as should be the case here, previously served defendants remain free to consent to a later-served defendant's removal petition even if they themselves failed to seek removal; otherwise, the later-served defendants would lose their right to remove even though they had not yet been served, a result that the *Murphy Bros.* court rejected. *See Brierly*, 184 F.3d at 533 n.3 ("We conclude that a first-served defendant can consent to a later-served defendant's removal petition, despite having already failed in its own

---

[7] The plain language of 28 U.S.C. § 1446(b) clearly supports the last-served rule. Referring to § 1446(b)'s requirement that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant" of the complaint, the Sixth Circuit in *Brierly* emphasized that to hold "that the time for removal commences for all purposes upon service of the first defendant would require us to insert 'first' before 'defendant' into the language of the statute." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999).

In addition, the last-served rule is firmly supported by *Murphy Brothers Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). There, the Supreme Court considered "the time within which a defendant named in a state-court action may remove the action to a federal court" and expressly held that a defendant's 30 days to remove begin only upon actual, formal service of process. *Id.* at 347-48. In *Marano Enterprises*, the Eighth Circuit found that *Murphy Bros.* strongly "portended" that the Court would favor the last-served rule. *Marano Enters. of Kansas v. Z-Teca Restaurants*, 254 F.3d 753, 756 (8th Cir. 2001) ("We conclude that if faced with the issue before us today, the Court would allow each defendant thirty days after receiving service within which to file a notice of removal, regardless of when -- or if -- previously served defendants had filed such notices."). Other courts and commentators are in agreement. *See Orlick*, 144 F. Supp. 2d at 342-43 (citing *Murphy Bros.* in support of last-served rule); 16 James W. Moore, et al., *Moore's Federal Practice* § 107.30[3][a][i], at 107-163 (3d ed. 2000) ("[I]t is likely [after *Murphy Bros.*] that the Court may decide that the later served defendants may not have their removal right compromised before they are served, and that they ought to have the opportunity to persuade the earlier served defendants to join the notice of removal.").

8

efforts to remove . . . holding otherwise would vitiate the removal petition of the later-served defendants and thereby nullify our holding that later-served defendants are entitled to 30 days to remove the case"); *see also Marano Enters.*, 254 F.3d at 757 (previously served defendants could consent to removal even though they did not file a removal petition within 30 days of being served); *Garside*, 702 F. Supp. at 21-22 (previously served defendants who have permitted the thirty-day removal window to pass may still consent to removal by a subsequently served defendant). Accordingly, the ten original corporate defendants properly consented to GSK's removal petition.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

### A. Plaintiff's Claims Are Completely Preempted By ERISA

Despite plaintiff's assertions that his claims have nothing to do with ERISA and do not rely on ERISA, plaintiff never disputes that he is a participant in an ERISA plan or that he seeks to recover payments for prescription drugs that he made pursuant to the terms of an ERISA plan. Nor can plaintiff deny that he seeks to bring claims on behalf of countless ERISA plans, fiduciaries and beneficiaries to recover plan assets wrongfully paid. For the reasons set forth in our prior briefs, those claims are subject to ERISA complete preemption. *See, e.g., Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 52 (1st Cir. 2000) ("ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan.") (citing *Carlo v. Reed Rolling Thread Die Co.*, 49 F.3d 790, 794-95 (1st Cir. 1995)).[8]

---

[8] Plaintiff incorrectly argues that the question of whether a claim "relates to" an ERISA plan -- that is, whether ordinary preemption is present under 29 U.S.C. § 1144(a) -- is only considered on a motion to dismiss and not in the context of a motion to remand. Plaintiff fundamentally misunderstands the concept of ERISA "complete preemption" as a basis for removal. Under ERISA complete preemption, a cause of action arises under federal law -- and is thus removable -- if it (1) "relates to" an ERISA plan and thus falls within ERISA's broad preemption (continued...)

9

Plaintiff's argument that his claims do not fall within the scope of § 1132(a)(3) because he seeks legal relief in addition to equitable relief is meritless. Plaintiff plainly seeks equitable relief, *see* Second Am. Compl. Prayer for Relief, which is the type of relief covered by § 1132(a)(3), and the Court can exercise supplemental jurisdiction over plaintiff's claims for legal relief.

### B. Removal Was Proper On The Basis Of Diversity Jurisdiction

Contrary to plaintiff's assertion in his Second Supplemental Brief, defendants have not abandoned their argument that this case was properly removed on the basis of diversity jurisdiction. Defendants cited diversity jurisdiction as a basis for removal in their notice of removal and briefed this issue when plaintiff's motion to remand was pending before the Arizona district court. The mere fact that the issue was not raised at the October 9 hearing does not mean that defendants have abandoned it.

This case was properly removed on the basis of diversity jurisdiction. Plaintiff does not dispute that there is complete diversity in this case; the only issue is whether the amount in controversy exceeds $75,000.

Although plaintiff has disclaimed "all claims for individual damages" in excess of $74,999, Second Am. Compl. ¶ 40, plaintiff asserts a claim for unjust enrichment and asks the Court to force defendants to disgorge all of the profits derived from the allegedly fraudulent AWP scheme and to impose a "constructive trust upon the profits derived by Defendants" -- an amount that far exceeds $75,000 and that is unrelated to any individual damages allegedly

---

provision, 29 U.S.C. § 1144(a); and (2) falls "within the scope" of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987). Defendants have never argued that § 1144 preemption is itself sufficient for a cause of action to be removable, but have raised the issue in the context of the two-part test set forth by the Supreme Court.

10

suffered by any class members. *Id.* ¶ 290. Although the general rule is that claims of class action plaintiffs cannot be aggregated to meet the jurisdictional value, an exception exists when plaintiffs assert a "common and undivided" interest in a single res. *See, e.g., Snyder v. Harris,* 394 U.S. 332, 335 (1969); *Ciardi v. F. Hoffman- La Roche, Ltd.,* 2000 WL 159320, at *1 n.1 (D. Mass. Feb. 7, 2000) (aggregation is permissible when class members have a "common and undivided interest" in the claim). "If the complaint reveals a common and undivided claim that has a value beyond $75,000, then federal jurisdiction exists." *Williams v. Purdue Pharma Co.,* Civil Action No. 02-0556 (RMC) (D.D.C. Feb. 27, 2003), slip op. at 9 (Attached as Ex. C).

Plaintiff and each of the class members in this case have a common and undivided interest in the constructive trust comprising the disgorged ill-gotten profits. There are two defining traits of a "common and undivided" interest: (1) when the total amount of recovery does not depend upon individual plaintiffs' claims, but rather depends on a sum certain that is a collective right of the group, *Aetna U.S. Healthcare Inc. v. Hoechst Aktiengesellschaft,* 48 F. Supp. 2d 37, 40-43 (D.D.C. 1999); and (2) "if one plaintiff were to fail to collect his share, the remaining plaintiffs would collect a larger share." *Durant v. Servicemaster Co. Trugreen, Inc.,* 147 F. Supp. 2d 744, 749 (E.D. Mich. 2001) (citing *Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir. 1983)). Both of these factors are present here, as the amount of profits that defendants would be forced to disgorge (and over which a constructive trust would be imposed) would be unrelated to each plaintiff's individual damages. Moreover, if a particular class member failed to claim his share of the disgorged profits, the amount of the monies disgorged would remain unaffected and the remaining class members would receive a greater share. *See Durant,* 147 F. Supp. 2d at 750.

Thus, in circumstances nearly identical to those present here, numerous courts have held that the amount in controversy is met when class action plaintiffs seek the

11

disgorgement of wrongfully obtained profits in an amount exceeding $75,000 and the creation of a common fund (i.e. "constructive trust"), regardless of whether they disclaimed "individual damages" in excess of $75,000. *See, e.g., Williams*, Civ. Action No. 02-0556, Ex. C, at 10-11 (amount in controversy satisfied because complaint sought "a common and undivided remedy of 'all moneys acquired' by defendants through OxyContin sales in the District of Columbia"); *Durant*, 147 F. Supp. 2d at 750 (amount in controversy satisfied because "Plaintiffs seek to recover . . . from a common fund into which the Defendants would disgorge ill-gotten gains"); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 720 (D. Md. 2001) (amount in controversy met where plaintiff sought to force defendants to disgorge all ill-gotten profits); *Aetna*, 48 F. Supp. 2d at 42-43 (same); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 830 (E.D. Mich. 1999) (amount in controversy satisfied because plaintiff's claim for disgorgement far exceeded $75,000, even though plaintiff had expressly disclaimed damages in excess of $75,000).[9]

---

[9] The cases cited by plaintiff, Second Supp. Brief at 1 n.3, are clearly inapplicable because none of those cases involved a claim for disgorgement of profits, in which case courts have found an exception to the general rule against aggregation.

12

## CONCLUSION

For the foregoing reasons the Court should deny plaintiff's motion for remand.

ON BEHALF OF ALL DEFENDANTS IN THE
ABOVE-CAPTIONED ACTION

BY: _____
Mark D. Seltzer
BBO #556341
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850

Mark H. Lynch
Ethan M. Posner
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 662-5544
Fax: (202) 778-5544

Frederick G. Herold
Dechert LLP
975 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 813-4930

DATE: November 7, 2003

*Counsel for SmithKline Beecham Corp. d/b/a GlaxoSmithKline ("GSK")*

## CERTIFICATE OF SERVICE

I, Mark D. Seltzer, hereby certify that on November 7, 2003, I caused a true and correct copy of this Defendants' Supplemental Brief in Support of Opposition to Motion for Remand, and all Exhibits thereto, to be served on all counsel by Verilaw electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

_____
Mark D. Seltzer
BBO #556341

13

## APPENDIX

| Defendant | Not Served At All | Served After Removal | Fraudulently Joined | Filed Timely Consent |
|---|---|---|---|---|
| G.D. Searle | X | X* | | |
| Michael Gendelman | | X | | |
| David Jett | | | X | |
| Christopher Coleman | | | X | |
| Scott Hidalgo | | | X | |
| Amanda Hidalgo | | | X | |
| Eddy James Hack | | | X | |
| Ten original corporate defendants | | | | X |

\* - As discussed in Part I.A., *supra*, plaintiff's attempt to serve G.D. Searle on February 25, 2003, was defective under the Federal Rules.

# 1352158_v1

14