# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) | MDL NO. 1456 |
| | ) | C.A. No. 01-CV-12257 (PBS) |
| *THIS DOCUMENT RELATES TO:* | ) | |
| | ) | HON. PATTI B. SARIS |
| | ) | |
| COUNTY OF SUFFOLK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 03-CV-10643 (PBS) |
| ABBOTT LABORATORIES, INC., AGOURON PHARMACEUTICALS, INC., AMGEN, INC., ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENACA US, AVENTIS BEHRING, AVENTIS PHARMACEUTICALS INC., BARR LABORATORIES, INC., BAYER AG, BERLEX LABORATORIES, INC., BIOGEN, INC., BRISTOL MYERS SQUIBB COMPANY, ELI LILLY AND COMPANY, FUJISAWA PHARMACEUTICAL COMPANY, LTD., GENENTECH, INC., GLAXO WELLCOME, P.L.C., GLAXOSMITHKLINE PLC, IMMUNEX CORPORATION, IVAX CORPORATION, IVAX PHARMACEUTICALS INC., JANSSEN PHARMACEUTICAL, JOHNSON & JOHNSON, MEDIMMUNE, INC., MERCK & CO., INC., NOVARTIS PHARMACEUTICALS CORPORATION, ORTHO BIOTECH, ORTHO MCNEIL PHARMACEUTICALS, PFIZER INC., PHARMACIA CORPORATION, PURDUE PHARMA, L.P., RELIANT PHARMACEUTICALS, SANOFI-SYNTHELABO, INC., SCHERING-PLOUGH CORP., SMITHKLINEBEECHAM P.L.C., TAP PHARMACEUTICALS, WARRICK PHARMACEUTICALS, WYETH, AND DOES 1-100 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CONSOLIDATED REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

drugs to those pharmacists, who are the ones that capture the "spread" between AWP and actual acquisition cost. Am. Compl. ¶ 408. Thus, the requested relief "of an accounting and the establishment of a constructive trust consisting of all *overcharges paid* by Suffolk" cannot be obtained on a theory of unjust enrichment against defendants.[20] *See Rivkin v. Coleman*, 978 F. Supp. 539, 544 (S.D.N.Y. 1997) ("The issue of whether [defendant's] enrichment, if any, is unjust turns on the question of whether [defendant] is in possession of property which rightfully belongs to [plaintiff]"). The "payments" went to others.

<u>Conclusion</u>

For all the above reasons, defendants respectfully request that the County of Suffolk's Amended Complaint be dismissed in its entirety.

Dated:  November 14, 2003

Respectfully submitted,

ON BEHALF OF ALL SERVED DEFENDANTS

By:    _Lucy Fowler_
Nicholas C. Theodorou (BBO #496730)
Lucy Fowler (BBO #647929)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

---

[20] Finally, the remedies of "constructive trust" and "accounting" are not available absent some kind of fiduciary or confidential relationship not even alleged to be present here. *Hutton v. Klabal*, 726 F.Supp. 67, 73 (S.D.N.Y. 1989); *Sharp*, 40 N.Y.2d at 121; *Hilding*, 41 N.Y.2d at 629; *Caldwell v. Abkco Music*, 703 N.Y.S.2d 97; *Waldman v. Englishtown Sportswear, LTD.*, 460 N.Y.S.2d 552, 556 (1st Dep't 1983); *Sinclair v. Purdy*, 235 N.Y.245, 253, 139 N.E. 255 (1923) ("It is not the promise only, nor the breach only, but unjust enrichment under the cover of the relation of confidence, which puts the court in motion.").

## TABLE OF CONTENTS

Preliminary Statement...................................................................................................................1

Argument .......................................................................................................................................3

I.      SUFFOLK COUNTY DOES NOT HAVE STANDING OR A
RIGHT TO SUE ...............................................................................................................3

        A.      RICO (Count I) ....................................................................................................3

        B.      The Common Law Counts (Counts VI, VII and IX) ........................................5
                1.      Third Party Beneficiary.........................................................................5
                2.      Common Law Fraud ...............................................................................6
                3.      Unjust Enrichment ................................................................................7

        C.      The "Implied" Rights of Action (Counts II, III and IV)..................................8
                 1.      The Federal Rebate Statute:  42 U.S.C. § 1396r-8 ............................8
                 2.      N.Y. Soc. Serv. Law § 367-a(7)(d) and 18 N.Y.C.R.R.
                      §515.2(b)(4),(5)......................................................................................9

        D.      N.Y. Social Services Law § 145-b (Count V) ................................................11

II.     SUFFOLK'S CLAIMS FAIL UNDER F.R.C.P. 9(b) AND 12(b)(6).........................12

        A.      Rule 9(b) Applies To Suffolk Claims Besides RICO and
Common Law Fraud........................................................................................13

        B.      Suffolk's Claims Violate Rule 9(b) In Several Ways .....................................13
                1.      Failure to Particularize the Allegedly Fraudulent Rebate
Claims ...................................................................................................13
                2.      Failure to Particularize Among Defendants On Rebate
Claims ...................................................................................................14
                3.      Failure to Particularize AWPs For Multiple-source
Drugs.....................................................................................................14
                4.      Failure to Particularize How New York Was Deceived
About AWPs..........................................................................................15
                5.      Failure to Particularize Fraudulent Concealment .................................17

        C.      Suffolk Has Not Properly Alleged The Other Substantive
Elements Of Its Claims...................................................................................17
                1.      RICO......................................................................................................17
                2.      Consumer Fraud ....................................................................................19
                3.      Unjust Enrichment ................................................................................19

Conclusion .................................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*5th Bedford Pines Apartments, Ltd. v. Brandon,*
262 F. Supp.2d 1369 (N.D. Ga. 2003) ...... 5

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ...... 9

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,*
267 F.3d 30 (1st Cir. 2001) ...... 16

*Ass'd Gen. Contractors of California v. California State Council of Carpenters,*
459 U.S. 519 (1983) ...... 3, 6

*Ayres v. Beaver,*
48 F. Supp.2d 1335 (M.D.Fla. 1999) ...... 8

*Barrata v. Kozlowski,*
91 A.D.2d 454, 464 N.Y.S.2d 803 (2d Dep't 1983) ...... 8

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.,*
2003 N.Y. Slip Op. 17896, 2003 WL 22455503 (N.Y. Oct. 30, 2003) ...... 7, 19

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.,*
344 F.2d 211 (2d Cir. 2003) ...... 7, 19

*Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris USA, Inc.,*
178 F. Supp.2d 198 (E.D.N.Y. 2001) ...... 19

*Boateng v. Interamerican Univ., Inc.,*
210 F.3d 56 (1st Cir. 2000) ...... 16

*Brogdon v. Nat'l Healthcare Corp.,*
103 F. Supp.2d 1322 (N.D.Ga. 2000) ...... 8

*Burdett v. Miller,*
957 F.2d 1375 (7th Cir. 1992) ...... 18

*Caldwell v. Abkco Music,*
703 N.Y.S.2d 97 (NEED YEAR!!!) ...... 20

*Casas v. American Airlines, Inc.,*
304 F.3d 517 (5th Cir. 2002) ...... 9

*County of Oakland v. City of Detroit,*
  866 F.2d 839 (6th Cir. 1989) ................................................................................................ 3, 4

*Cronin v. U.S. Prof'l Consultants,*
  No. Civ.A. 00-5239, 2001 WL 256044 (E.D.Pa. Mar. 13, 2001) ................................................. 9

*E. Varney v. R.J. Tobacco Co.,*
  118 F. Supp. 2d 63 (D. Mass. 2000) ................................................................................... 13, 17

*E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin
Intermediates, S.A.S.,*
  269 F.3d 187 (3rd Cir. 2001) ................................................................................................. 5

*Goebel v. Schmid Bros.,*
  871 F. Supp. 68 (D. Mass. 1994) ........................................................................................... 14

*Gold v. United Health,*
  261 A.D.2d 67, 701 N.Y.S.2d 123 (3d Dep't 1999) .................................................................. 12

*Greebel v. FTP Software Inc.,*
  182 F.R.D. 370 (D. Mass. 1998) ...................................................................................... 14, 17

*Gross v. Summa Four, Inc.,*
  93 F.3d 987 (1st Cir. 1996) .................................................................................................... 13

*Harding v. Summit Med. Ctr.,*
  41 Fed. Appx. 83 (9th Cir. 2002) ............................................................................................. 8

*Hayduk v. Lanna,*
  775 F.2d at 441 (1st Cir. 1985) ............................................................................................... 17

*Heller v. Kurz,*
  228 A.D.2d 263, 643 N.Y.S.2d 580 (1st Dep't 1996) ................................................................ 7

*Holmes v. Sec. Investor Prot. Corp.,*
  503 U.S. 258 (1991) ............................................................................................................... 3

*Hutton v. Klabal,*
  726 F.Supp. 67 (S.D.N.Y. 1989) ............................................................................................ 20

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977) ............................................................................................................... 3

*In re Galileo Corp. S'holders Litig.,*
  127 F. Supp. 2d 251 (D. Mass. 2001) .................................................................................... 14

*In re Healthco Int'l, Sec. Litig.*,
   777 F. Supp. 109 (D. Mass. 1991).................................................................................................13

*In re Pharm. Indus. AWP Litig.*,
   263 F. Supp. 2d 172 (D. Mass. 2003) ....................................................................................... 5, 15

*In the Matter of Frances Callahan*,
   254 A.D.2d 415, 578 N.Y.S.2d 741 (2d Dep't 1998)..................................................................12

*Indyk v. Habib Bank Unlimited*,
   694 F.2d 54 (2d Cir. 1982)............................................................................................................. 8

*Kansas v. Utilicorp United, Inc.*,
   97 U.S. 199 (1990)..................................................................................................................... 3, 4

*Kuney Int'l, S.A. v, DiIanni*,
   746 F. Supp. 234 (D. Mass. 1990) ...............................................................................................14

*Lemelson v. Labs., Inc.*,
   874 F. Supp. 430, 433 (D. Mass. 1994) .......................................................................................19

*Link v. Town of Smithtown*,
   267 A.D.2d 284, 700 N.Y.S.2d 52 (2d Dep't 1999)....................................................................12

*Loan v. FDIC*,
   717 F. Supp. 964 (D. Mass. 1989) ...............................................................................................14

*Love v. Delta Air Lines*,
   310 F.3d 1347 (11th Cir. 2002) ..................................................................................................... 9

*McCarthy v. Recordex Serv., Inc.*,
   80 F.3d 842 (3d Cir. 1996)............................................................................................................. 3

*McGrath v. Hilding*,
   41 N.Y.2d 625 (1977) ............................................................................................................. 8, 20

*Olmsted v. Pruco Life Ins. Co. of New Jersey*,
   283 F.3d 429 (2d Cir. 2002).......................................................................................................... 9

*Oneida Indian Nation of New York v. State of New York*,
   691 F.2d 1070 (2nd Cir. 1982).....................................................................................................16

*Oxenhorn v. Fleet Trust Co.*,
   94 N.Y.2d 110, 700 N.Y.S.2d 413 (1999) ...................................................................................11

*Paramount Film Distributing Corp. v. State*,
30 N.Y.2d 415 (1972)........................................................................................................8

*Pavlov v. Bank of New York Co., Inc.*,
No. 01-7434, 2002 WL 63576 (2d Cir. Jan. 14, 2002)....................................................18

*Pelman v. McDonald's Corp.*,
237 F.Supp.2d 512 (S.D.N.Y. 2003)................................................................................16

*Poling v. K. Hovnanian Enters.*,
99 F. Supp. 2d 502 (D.N.J. 2000)......................................................................................6

*Rand v. Perales*,
737 F.2d 257 (2d Cir. 1984).......................................................................................10,11

*Rey-Willis v. Citibank, N.A.*,
No. 03 Civ. 2006 (SAS), 2003 WL 21714947 (S.D.N.Y. Jul. 23, 2003) ................ 13, 19

*Rivkin v. Coleman*,
978 F. Supp. 539 (S.D.N.Y. 1997) ..................................................................................20

*Roedler v. Dep't of Energy*,
255 F.3d 1347 (Fed. Cir. 2001)..........................................................................................6

*Salois v. Dime Savings Bank of New York*,
No. Civ. A. 95-11967-PBS, 1996 WL 33370626 (D. Mass. Nov. 13, 1996) ................17

*Sharp v. Kosmalski*,
40 N.Y.2d 119, 351 N.E.2d 721, 386 N.Y.S.2d 72 (1976)........................................8, 20

*Sichel v. Unum Provident Corp.*,
230 F. Supp. 2d 325 (S.D.N.Y. 2002)..............................................................................19

*Sinclair v. Purdy*,
235 N.Y. 245, 139 N.E. 255 (1923)..................................................................................20

*Solter v. Health Partners of Philadelphia, Inc.*,
215 F. Supp. 2d 533 (E.D. Pa. 2002)..................................................................................8

*Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*,
245 U.S. 531 (1918).........................................................................................................6, 7

*Suffolk County Water Auth. v. J.D. Posillico, Inc.*,
191 A.D.2d 422, 593 N.Y.S.2d 998 (2d Dep't 1993).........................................................6

*Toner v. Allstate,*
   821 F. Supp. 276, 283 (D. Del. 1993) ......................................................................................... 13

*Town of Babylon v. Lizza Indus., Inc.,*
   191 A.D.2d 425, 593 N.Y.S.2d 1001 (2d Dep't 1993).................................................................. 6

*Town of Moriah v. Cole-Layer-Trumble Co.,*
   191 A.D.2d 879, 606 N.Y.S.2d 822 (3d Dep't 1994).................................................................. 6

*United States v. Oreto*
   37 F.3d 739 (1st Cir. 1994)......................................................................................................... 18

*United States v. Owens,*
   167 F.3d 739 (1st Cir. 1989)................................................................................................. 18, 19

*United States v. Patrick,*
   248 F.3d 11 (1st Cir. 2001)......................................................................................................... 18

*Waldman v. Englishtown Sportswear, LTD.,*
   460 N.Y.S.2d 552 (1st Dep't 1983)............................................................................................. 20

*Woolen v. Lochbough,*
   951 F.2d 768 (7th Cir. 1991) ....................................................................................................... 7

## Statutes

18 U.S.C. § 1962.................................................................................................................................. 3
42 U.S.C. § 1396a(a)(25)..................................................................................................................... 9
42 U.S.C. § 1396b(q)(3) .................................................................................................................. 3, 9
42 U.S.C. § 1396r-8 .................................................................................................................... 7, 8, 9
Air Deregulation Act, 49 U.S.C. 40120 ............................................................................................ 11
Federal Rebate Statute, 42 U.S.C. § 1396r-8.................................................................................... 9
N.Y. Soc. Serv. Law § 104 ............................................................................................................... 13
N.Y. Soc. Serv. Law § 367-b ..................................................................................... 1, 4, 10, 11, 12
N.Y. Soc. Serv. Law § 369 .................................................................................................................. 2
N.Y. Soc. Serv. Law § 145-b ............................................................................................................ 12
N.Y. Soc. Serv. Law § 368 .................................................................................................................. 1
N.Y. Gen. Bus. Law § 349 .................................................................................................................. 7
N.Y. Soc. Serv. Law § 368 .................................................................................................................. 2

## Rules

Fed. R. Civ. P. 9(b) ..................................................................................................................... 2, 3, 7
Fed. R. Civ. P. 12(b)(6)................................................................................................................... 2, 3

**Regulations**

18 N.Y.C.R.R. § 515.2(b) ........................................................................................................ 10

18 N.Y.C.R.R. § 515.2(b)(4) ................................................................................................... 12

18 N.Y.C.R.R. §515.2(b)(4) .................................................................................................... 11

Medicaid Program; Drug Rebate Agreement, 56 Fed. Reg. 7049 (Feb. 21, 1991) ........................ 6

N.Y.C.R.R. § 515.2(b)(4) ........................................................................................................ 11

**Other**

Social Services Law §§ 83, 367-b,

N.Y. State Comptroller, Op. No. 80-294 (Sep. 12, 1980) ........................................................ 4, 12

Preliminary Statement

Suffolk County's response to defendants' challenge to its standing is based on a statutory construct that was superseded more than 25 years ago. Citing New York Social Services Law § 368-a, Suffolk repeatedly states that it "administers" Medicaid drug payments[1] or otherwise "pays" for Medicaid drugs. (Suffolk Mem. at 7.) In fact, in 1976, when the New York legislature adopted Social Services Law § 367-b, the State "assum[ed] payment responsibilities" from the local social service districts (*i.e.* the counties) and, thereafter, Medicaid providers' claims were "enforceable only against the state and [were] not . . . enforceable by such provider[s] against the social services district." N.Y. Soc. Serv. Law § 367-b(2). New York counties like Suffolk became responsible to the State for paying a "share of the *state's* expenditures for claims of [Medicaid] providers," which share was calculated on the hypothetical basis of the amount "such district *would have* borne . . . under section [368-a] . . . *had* the expenditure been made by such district . . . ." N.Y. Soc. Serv. Law § 367-b(6) (emphasis added). Suffolk simply ignores Section 367-b.

Under traditional standing principles, only the payor of the allegedly inflated Medicaid claim – the State – *arguably* has a cause of action against defendants in this case.[2] Suffolk's claim, based on its statutory duty to reimburse New York State for the *State's* Medicaid expenditures, is too attenuated to support this suit. Further, Suffolk's contention that this Court should "imply" statutory and regulatory causes of action in its favor must be rejected where, as here, those statutes and regulations speak only of federal or state entitlements or enforcement

---

[1] Suffolk's Memorandum of Law in Opposition to Defendants' Consolidated Motion to Dismiss ("Suffolk Mem.") at 1.

[2] While the State may have standing, it does not have a valid cause of action. There is no private right of action under the federal rebate statute, and state law claims to enforce the rebate statute or manufacturers' agreements with the federal government are preempted.

1

rights and there is no evidence whatsoever of a legislative intent to confer rights upon political subdivisions of states.  Indeed, in the discrete area of policing Medicaid rebates, it is clear that even the states are preempted from acting.

Suffolk's policy arguments that Medicaid is a "cooperative" federal and state program and that states are required by federal law to police Medicaid fraud are similarly misleading. First, state law and state Medicaid plans have no role in defining or enforcing obligations under the rebate program, which are defined exclusively by federal law and the federal contract and enforced by the federal government.  Second, the federal statutes to which Suffolk cites make clear that (a) state Medicaid fraud units are to apply only *state* law; and (b) the state unit is supposed to be a "*single* identifiable unit of the State government" which, among other things, "provides for the collection, or referral for collection to a *single* State agency, of [Medicaid] overpayments . . . ." 42 U.S.C. § 1396b(q)(3), (5) (emphasis added).  Thus, federal law does not provide for individual counties to prosecute even state law, let alone federal claims, under Medicaid.  Nor does the New York State statute to which Suffolk refers, Social Services Law § 369, so provide.

Furthermore, Suffolk fails to rescue its claims from the defects under Fed. R. Civ. P. 9(b) and 12(b)(6) that defendants pointed out in their opening papers.  Suffolk's claim that defendants engaged in "manipulation of Medicaid" (Suffolk Mem. at 1) or its New York consumer fraud claim that defendants "lied" about AWPs and best prices (Suffolk Mem. at 29) sound in fraud and call for, but do not satisfy, application of Rule 9(b).  In addition, Suffolk's "group" pleading with respect to (a) fraudulent AWPs for multiple-source drugs and (b) "best price" misreporting by all manufacturers based on government investigations of a few defendants violates the requirement that fraud be pled with specificity as to each individual defendant.

2

Finally, under Rules 9(b) and 12(b)(6) defendants and this Court are entitled to rely on the facts pled in the Amended Complaint itself and on matters of law and of public record which establish that Suffolk could not possibly have been defrauded and/or that Suffolk was long ago placed on inquiry notice of the nature of its claims. These sources are "fair game" on this motion to dismiss and they conclusively establish two things: (1) that New York State – in adopting AWP *minus* 12% as the basis for its Medicaid drug payments to pharmacists – knew that AWP does not represent Medicaid pharmacists' actual acquisition costs for drugs and (2) defendants did not in any way interfere with the State's determination of the percentage amount of the discount below AWP that it wanted to apply for Medicaid purposes.

Argument

## I. SUFFOLK COUNTY DOES NOT HAVE STANDING OR A RIGHT TO SUE

> A.     RICO (Count I)

It is well settled that indirect victims of alleged antitrust and RICO violations have no standing to sue.[3] Suffolk does not argue the point, but rather claims that it is a direct victim of defendants' alleged price misreporting because "Suffolk is required by statute to pay 25% of its own Medicaid costs" and "there is no more appropriate plaintiff to right defendants' wrongs" Suffolk Mem. at 10. Both arguments can be quickly rejected.

---

[3] *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 271-72 (1991) (holding that Congress "obviously" intended to incorporate the Clayton Act direct-injury limitation to the requirements of 18 U.S.C. § 1962); *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 208 (1990); *Associated Gen. Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 545-46 (1983); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736-739 (1977); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 849-50 (3d Cir. 1996) (holding that, even though direct purchaser acted as "middleman," the indirect purchaser who absorbed one hundred percent of the overcharge did not have standing in a RICO action); *County of Oakland v. City of Detroit*, 866 F.2d 839, 848 (6th Cir. 1989) (same).

Under New York Social Services Law § 367-b, the State pays all Medicaid costs and Suffolk, at most, reimburses the State a portion of those costs at some later time.[4] This is a classic example of an indirect victim barred from proceeding under RICO. In *County of Oakland*, for example, the Sixth Circuit held that the direct payor (there, a county) remained the real party in interest for RICO purposes even though it was entitled to pass on to its political subdivisions (there, municipalities) *one hundred percent* of the cost. 866 F.2d at 841-42.

For the same reason, plaintiff's attempt to distinguish the Supreme Court's *Utilicorp* decision is unavailing. Again, in *Utilicorp* the direct purchasers were able to pass on 100% of the defendant's overcharge to its customers. The Supreme Court held that the customers were indirect purchasers who could not sue. Suffolk contends that the Supreme Court's decision turned on the difficulty in segregating out direct from indirect damages (the "*Hanover Shoe/Illinois Brick* damage apportionment trap") (Suffolk Mem. at 11 & n.11.) That is wrong. The Supreme Court assumed that damages apportionment was not an insurmountable problem, but nevertheless applied the direct purchaser standing rule. *Utilicorp*, 497 U.S. at 208. In any event, because of the complex accounting between New York State and its counties, affecting not only Medicaid but all social services, *see* n. 4 *supra*, and RICO's lack of guidance on dividing treble damages among direct and indirect victims, all the same apportionment issues in *Utilicorp* exist here.

---

[4] We say "at most" because there is often no actual cash reimbursement transaction between the State and a county. Rather, as the New York State Comptroller has explained to one county, the State offsets from the county's usual receipt of "other social services" dollars (*i.e.* non-Medicaid assistance) an amount "which otherwise would be paid to the county if the county itself were paying [M]edicaid claims." *See* Social Services Law §§ 83, 367-b, N.Y. State Comptroller, Op. No. 80-294 (Sep. 12, 1980) (annexed hereto as Exhibit A). The State Comptroller manages various escrow accounts on behalf of the social service districts in which the Comptroller nets out monies owed between and among the State, counties, and federal government pursuant to a panoply of social welfare programs, including but not limited to, Medicaid. N.Y. SOC. SERV. LAW § 367-b (13) & (14).

Finally, New York State's suit against certain manufacturers shows that that there is a more appropriate "direct" purchaser prepared to assert claims. Suffolk's response that the State has sued only three manufacturers and on drugs different from those identified in Exhibit A to the Amended Complaint (Suffolk Mem. at 5) misses the point. The issue is not whether the State is *actually bringing* a suit identical to Suffolk's, but whether it has the power and *discretion to bring* (or not to bring) such suits. The State may choose whom it wishes to sue and on which drugs, and Suffolk should not be permitted to second-guess that judgment.[5]

B.     The Common Law Counts (Counts VI, VII and IX)

1.     *Third Party Beneficiary*

Because it cannot direct this Court's attention to anything in the Rebate Agreement, federal rebate statute, legislative history or agency record that would support its claim to third party beneficiary status, Suffolk is left to argue that the Amended Complaint's mere recitation of the words "third party beneficiary" is sufficient to withstand a motion to dismiss. (Suffolk Mem. at 28.) That is wrong. As defendants have shown, third-party beneficiary status is a matter of contract interpretation for the court to decide at the outset of the case. *See E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001); *5th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F. Supp. 2d 1369, 1378 (N.D. Ga. 2003). Suffolk's attempt to distinguish these cases on the facts is unpersuasive. What is important is the legal principle of when and how in a lawsuit the Court should determine whether

---

[5] Suffolk argues that "only one of the drugs at issue in the [State's] complaints appears in Suffolk's complaint." Suffolk Mem. at 5. For the reasons discussed above, this is irrelevant to the appropriate plaintiff analysis; however, defendants note that Suffolk argues elsewhere that the "Covered Drugs" under its complaint includes "all of Suffolk's Medicaid pharmacy costs," including drugs "as yet unidentified". (Suffolk County's Opposition to the Defendant-Specific Memoranda in Support of Motion to Dismiss ("Suffolk Def.–Specific Mem.") at 2 n.3.) This is inappropriate. This Court has previously ruled that plaintiffs may not proceed with respect to unidentified drugs. *In re Pharm. Indus. AWP Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003). Further, it is far too late in the game to allow for yet another amendment of Suffolk's complaint.

a plaintiff has a legitimate claim to third-party beneficiary status. A motion to dismiss is a proper procedural avenue for determining the issue of legal capacity to sue, as the cases hold.

Defendants' cases show that where, as here, the intent to benefit a third party is not expressly stated in the contract, the Court should inquire into the statute that gave rise to the contract, the statute's legislative history and relevant administrative agency interpretations. *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1352 (Fed. Cir. 2001). Suffolk's reliance (Suffolk Mem. at 31) on New York's Medicaid statute and a few New York cases in which towns were held to be third-party beneficiaries of county construction contracts is legally and factually misplaced.[6] Suffolk cannot point this Court to any publicly-available evidence of intent by Congress or the Secretary to create third-party rights in the Rebate Agreement at the county level. Accordingly, its contract claim must be rejected.

### 2. *Common Law Fraud*

The Clayton Act direct purchaser rule is simply an extension of common law principles of standing. *See Associated Gen. Contractors*, 459 U.S. at 532-33 & n.25; *see also Southern*

---

[6] First, even if the New York legislature had indicated an intent to allow counties to sue under Medicaid (which it has not), the issue for decision here is whether the Secretary of Health and Human Services (the "Secretary") and the manufacturers – the parties to the Rebate Agreement – intended such rights. Second, the Rebate Agreement, Section IX(e), expressly calls for the application of federal common law, not New York law. Third, the cases cited by Suffolk involve contracts that granted the third-party an "express right to enforce their provisions and a specific intent to benefit" the alleged third-party. *Town of Babylon v. Lizza Indus., Inc.*, 191 A.D.2d 425, 593 N.Y.S.2d 1001 (2d Dep't 1993) (incorporating decision of same date in *Suffolk County Water Auth. v. J.D. Posillico, Inc.*, 191 A.D.2d 422, 424, 593 N.Y.S.2d 998, 1000 (2d Dep't 1993)); *Town of Moriah v. Cole-Layer-Trumble Co.*, 191 A.D.2d 879, 880, 606 N.Y.S.2d 822, 824 (3d Dep't 1994) (question of fact as to whether town was third-party beneficiary of county contract where "contract stipulated that several services were to be provided directly to the towns"). These cases are the precise opposite of this case.

Suffolk contends that it "cannot confirm whether the language of the form Rebate Agreement annexed to defendants' brief is representative" because it has not yet had the benefit of discovery. Suffolk Mem. at 29 n.19. This ignores the Amended Complaint, which admits that the Rebate Agreement was drafted by the Secretary as required under 42 U.S.C. § 1396r-8. *See* Suffolk Am. Compl. ¶ 386 (citing the statute); *see also Medicaid Program; Drug Rebate Agreement*, 56 Fed. Reg. 7049 (Feb. 21, 1991). Permitting Suffolk to conduct discovery on whether the contracting parties intended Suffolk to be a third party beneficiary is neither warranted nor necessary because defendants had no power to amend, alter or modify the form Rebate Agreement.

*Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918) ("The general tendency of the law, in regard to damages at least, is to not go beyond the first step."). Basic common law principles restrict standing in tort actions to the first tier of injured parties. *Woolen v. Lochbough*, 951 F.2d 768, 770 (7th Cir. 1991) ("[I]n RICO as in antitrust and in tort and contract law generally, liability stops at the first victim."). Suffolk's common law fraud claim, therefore, fails for the same reason its RICO claim fails – indirect purchasers lack standing to bring actions based on an alleged fraud on the direct purchaser.[8]

3.     *Unjust Enrichment*

Suffolk contends that, "of course", an unjust enrichment plaintiff need not have directly conferred a benefit on the defendant to sue; "the test is whether defendants have been unjust (*sic*) enriched as a result of their misconduct." (Suffolk Mem. at 35.) Suffolk cites no authority for this proposition, but merely takes out of context a catch-phrase about the "broad principles of equity" from a case defendants cite – as if such an appeal would move this Court to allow Suffolk to slide by. The facts of the cases and the holdings themselves make clear that Suffolk is wrong. *McGrath v. Hilding*, 41 N.Y.2d 625, 631 (1977) (emphasizing the importance of the "reciprocal relation of trust and fidelity" to the unjust enrichment analysis); *Heller v. Kurz*, 228 A.D.2d 263, 643 N.Y.S.2d 580 (1st Dep't 1996) (holding that the plaintiff must show it performed at the direct behest of the defendant to have standing for unjust enrichment claim);

---

[8] Suffolk contends that indirect purchasers have standing to sue under New York's consumer fraud statute, New York General Business Law § 349. (Suffolk Mem. at 34.) The federal district court decision that Suffolk relies upon is no longer effective. On appeal, the Second Circuit ruled that the question should be decided by New York's highest court and thus certified the question to the New York Court of Appeals. On October 30, 2003, the Court of Appeals accepted the certification. *See Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 211, 219-20 (2d Cir. 2003), *certified question accepted by Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*, 2003 N.Y. Slip Op. 17896, 2003 WL 22455503 (N.Y. Oct. 30, 2003). Defendants suggest that this Court reserve decision on this issue for now. However, as demonstrated in Point II, *infra*, Suffolk's consumer fraud claim fails to state a cause of action on the merits and does not satisfy Fed. Rule Civ. P. 9(b). These bases for dismissal are ripe for determination at present.

*Barrata v. Kozlowski*, 91 A.D.2d 454, 464, 464 N.Y.S.2d 803 (2d Dep't 1983) ("Although performance of any wrongful act . . . is not required, there must be unjust enrichment as between *the parties to the transaction*.") (emphasis added).[9] There is no relationship between Suffolk and defendants to support an unjust enrichment cause of action.

     C.    The "Implied" Rights of Action (Counts II, III and IV)

         1.    *The Federal Rebate Statute: 42 U.S.C. § 1396r-8*

Suffolk claims a private right of action under 42 U.S.C. 1396r-8 (Suffolk Mem. at 19), but it does not cite any relevant section of the statute, legislative history or case law to support the claim. In fact, no court has ever implied such a right of action and virtually every court interpreting other provisions of the Medicaid and Medicare statutes has refused to imply a private right of action.[10]

The only portion of the rebate statute Suffolk cites, 42 U.S.C. § 1396r-8(b)(3)(C)(ii), merely states that the $100,000 "civil money *penalt[y]*" provided by that subsection is "in addition to other *penalties* as may be prescribed by law." (emphasis added). The fact that Congress gave the Secretary power to seek multiple "penalties" against manufacturers for false

---

[9] *See also Indyk v. Habib Bank Unlimited*, 694 F.2d 54 (2d Cir. 1982) (holding that an unjust enrichment claim may be maintained only if, as a result of the transaction, the enrichment was unjust *as between the two parties to the transaction*); *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 351 N.E.2d 721, 724, 386 N.Y.S.2d 72, 76 (1976) (holding that unjust enrichment claims are based on the "legal inference drawn from the circumstances surrounding . . . the relationships of the parties[ ]"). Finally, in the one unjust enrichment case that Suffolk cites on its own, *Paramount Film Distributing Corp. v. State*, 30 N.Y.2d 415 (1972), plaintiff paid tax at issue *directly* to the defendant government.

[10] *See Harding v. Summit Med. Ctr.*, 41 Fed. Appx. 83 (9th Cir. 2002) (applying *Cort* four-factor analysis and rejecting existence of private cause of action under Medicaid Act); *Solter v. Health Partners of Philadelphia, Inc.*, 215 F. Supp. 2d 533, 540 (E.D.Pa. 2002) (stating that *Cort* factors "compel[led] against finding an implied private right of action under the guidelines and waiver provisions of the Medicaid Act."); *Cronin v. U.S. Prof'l Consultants*, No. Civ.A. 00-5239, 2001 WL 256044, *2 (E.D.Pa. Mar. 13, 2001) ("Congress has not, statutorily, provided any private federal right of action or remedy under the Medicare or Medicaid Acts."); *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp.2d 1322, 1332 (N.D.Ga. 2000) ("The Court [] finds no indication that Congress intended to create a private cause of action under the Medicaid or Medicare Acts"); *Ayres v. Beaver*, 48 F. Supp.2d 1335, 1339 (M.D.Fla. 1999) ("Congress has not, statutorily, provided any private federal right of action or remedy under the Medicare or Medicaid Acts").

information does not – as Suffolk would have it – even remotely suggest that Congress intended to grant States or counties implied rights of action to sue the manufacturers.[11]

Suffolk's argument boils to a claim that (i) because it reimburses New York State for a portion of the State's Medicaid expenditures, it is part of the class for whose benefit the rebate statute was enacted and (ii) it is consistent with "cooperative federalism" to allow Suffolk to sue under the rebate statute. (Suffolk Mem. at 21-22.) This analysis is overly simplistic. One can agree that Suffolk would "benefit" from a recovery of more rebate dollars and that Medicaid contemplates counties' having some authority in discrete areas, but none of this comes close to meeting the Supreme Court's tests for implying a right of action under the rebate statute. There must be evidence that Congress intended to provide the cause of action itself. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (test is not whether Congress intended "to create . . . a private right but also a private remedy."). Here, there is no such evidence; indeed, there is evidence that Congress intended to preempt application of state law to Medicaid rebates.[12]

> 2. *N.Y. Soc. Serv. Law § 367-a(7)(d) and 18 N.Y.C.R.R. §515.2(b)(4),(5)*

Suffolk claims implied rights of action to pursue Medicaid rebates under N.Y. Soc. Serv. L. § 367-a(7)(d) and to pursue inflated "medical assistance payments" under N.Y.C.R.R. §

---

[11] The other aspects of the Medicaid statute that Suffolk cites are even further off the mark. As noted in the Preliminary Statement, *supra*, the provision in the Medicaid statute calling for the formation of state Medicaid fraud units (42 U.S.C. § 1396b(q)(3)) does not apply to political subdivisions of states, such as counties, and expressly restricts the units to enforcement of *state* law, not federal law. Further, the other statute that Suffolk selectively quotes (42 U.S.C. § 1396a(a)(25)) (Suffolk Mem. at 20)) has nothing to do with pursuing alleged tortfeasors. It simply requires that the state or local entity actually "administering" Medicaid -- *i.e.* in this case New York State -- make sure that "third parties" in the private insurance industry, like HMO's and group health plans, "pay for care and services" when appropriate so that Medicaid does not mistakenly pay when the program does not have to.

[12] Suffolk relegates *Sandoval* to a footnote and argues that the case is of limited precedential value because the statute there "enacted no rights, explicit or implied." (Suffolk Mem. at 22, n.14.) Numerous Courts of Appeals, however, have found *Sandoval* widely applicable. *See, e.g., Love v. Delta Air Lines*, 310 F.3d 1347 (11th Cir. 2002) (no implied private right of action under the Air Carrier Access Act, 49 U.S.C. 41705); *Casas v. American Airlines, Inc.*, 304 F.3d 517 (5th Cir. 2002) (no implied private right of action under Air Deregulation Act, 49 U.S.C. 40120); *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429 (2d Cir. 2002) (no implied private right of action under Investment Company Act of 1940).

515.2(b)(4) and (5). (Suffolk Mem. at 23, 27.) Even if Suffolk had rights under these provisions and the common law claims discussed above -- which it does not -- these state law claims would be preempted by the federal law insofar as the claims relate to the federal rebate program. Suffolk relies on the same authorities as do the Nevada and Montana Attorneys General to avoid preemption. Defendants herein incorporate the reply of defendants in those cases, which demonstrates why federal law is supreme when it comes to Medicaid rebates.[13]

In any event, Suffolk's state statutory and regulatory claims must also be dismissed because there are no implied rights of action under the statutes in question. First, New York Social Services Law § 367-a(7)(d) creates no rights in anybody – the State or the counties. Second, the fact that other state statutes are clear on when and where counties may sue under Medicaid (*see* Point I.D, *infra*), demonstrates that New York State intended no such right under New York Social Services Law § 367-a(7)(d) or 18 N.Y.C.R.R. § 515.2(b).

Finally, Suffolk relies on *Rand v. Perales*, 737 F.2d 257 (2d Cir. 1984), to suggest that allowing it to proceed with an implied claim under 18 N.Y.C.R.R. § 515.2(b)(4) would not be a "singular event." (Suffolk Mem. at 27-28.) *Rand* does not support Suffolk's position. There, a physician sued both the State and Nassau County under 42 U.S.C. § 1983 for denial of due process in rejecting Medicaid claims going back to 1973. The Court did not analyze whether a county had a right of action under 18 N.Y.C.R.R. § 515.2(b). More importantly, the Second Circuit noted that the county was being sued because it had "processed [the] Medicaid reimbursement claims . . . at issue in this lawsuit . . . but never paid." 737 F.2d at 258. In other words, the county was involved in *Rand* because the plaintiff doctor's Medicaid claims were administered by the county under the law *before* the change in New York Social Services Law §

---

[13] See Consolidated Memorandum in Support of Defendants' Motion to Dismiss The State of Montana's Second Amended Complaint and The State of Nevada's Amended Complaint at 3-8.

367-b took effect and the State assumed Medicaid administration responsibility from the counties. In short, *Rand* demonstrates why Suffolk lacks standing to sue over Medicaid claims: New York State has assumed the counties' prior responsibilities.

> D.     N.Y. Social Services Law § 145-b (Count V)

Defendants have shown that Section 145-b of New York's Social Services Law is not part of New York's Medicaid statute and, in any event, is preempted by federal law to the extent that Suffolk wishes to apply it to the federal scheme for Medicaid rebates. Suffolk responds by citing, for the first time, Section 369 of the New York Social Services Law (which is part of New York's Medicaid statute), and by contending that its claims are not limited to "rebate" claims, but also to "AWP" claims which are allegedly not preempted. (Suffolk Mem. at 28; *see also* Suffolk Mem. at 2, 4, 5, 10, 16, 27 (citing § 369).) These belated arguments are to no avail.

First, Section 369 does not, as Suffolk contends, generally empower counties to "file suit in connection with Medicaid overpayments." (Suffolk Mem. at 10.) Rather, it provides which liens may and may not be filed on the property of Medicaid beneficiaries (and their trusts or family members) and for certain very limited "recovery" actions by the county against these people. *See Oxenhorn v. Fleet Trust Co.*, 94 N.Y.2d 110, 114, 700 N.Y.S.2d 413, 415-16 (1999) (citing Section 369 as "defin[ing] the terms under which the State can recoup Medicaid payments from *recipients*") (emphasis added); *see also* N.Y. Soc. Serv. Law § 106-b (defining "overpayment" for which county may seek to recover as "payments made to *an eligible person* in excess of his needs and payments made to *ineligible persons*") (emphasis added). These provisions do not authorize a county to bring suit against third parties like drug manufacturers. [14]

---

[14] The cases Suffolk cites— *In the Matter of Frances Callahan*, 254 A.D.2d 415, 416, 578 N.Y.S.2d 741 (2d Dep't 1998), *Link v. Town of Smithtown*, 267 A.D.2d 284, 700 N.Y.S.2d 52 (2d Dep't 1999), *Gold v. United Health*, 261 A.D.2d 67, 701 N.Y.S.2d 123 (3d Dep't 1999) – are totally inapposite. They involve New York Social Services

Second, while Section 369(1) of New York's Medicaid statute incorporates by "[a]ll provisions of this chapter not inconsistent with this title" and Section 145-b is part of the same "chapter" as the Medicaid "title," Section 145-b is "inconsistent" with the Medicaid "title" if Suffolk reads it to allow the county to bring suit in this case. As noted, in 1976, Section 367-b made the State, not the County, the administrator of Medicaid. To quote the New York Comptroller, the new statute "preempt[ed]" the prior procedures under state law and such preemption is made explicit in Section 369(1). Social Services Law §§ 83, 367-b, N.Y. State Comptroller, Op. No. 80-294 (Sep. 12, 1980). Thus, Section 145-b does not give Suffolk a cause of action in this case.[15]

## II.   SUFFOLK'S CLAIMS FAIL UNDER F.R.C.P. 9(b) AND 12(b)(6)

Defendants' opening brief demonstrated that even if Suffolk had standing and could overcome federal preemption, its "rebate" or best price claims, as well as its "AWP" claims, fail under the federal rules' pleading requirements and the substantive law of the causes alleged. On the pleading issue, Suffolk responds that only its RICO and common law fraud claims are subject to Fed. R. Civ. P. 9(b) and that defendants cannot, at this juncture, point to public knowledge regarding AWPs to defeat plaintiff's pleading of fraud for the purposes of those claims. (Suffolk Mem. at 39.) On the substance of its claims, Suffolk contends that it has stated the necessary other elements of RICO (enterprise, conduct, pattern and injury), consumer fraud and unjust enrichment. Suffolk is wrong on both counts.

---

Law § 104-b(1) which allows a county welfare official to be subrogated to the personal injury recovery of people who obtain public assistance.

[15] Suffolk repeatedly insists that defendants have "concede[d]" that Section 145-b gives it standing. (E.g. Suffolk Mem. at 28.) This is wrong. Defendants have said that Section 145-b is a general false claims provision that permits counties to sue in areas not limited to Medicaid but which has no application in this case.

A.      Rule 9(b) Applies to Claims in Addition to RICO and Common Law Fraud

The requirements of Rule 9(b) apply where "the gravamen of the claim is fraud even though the theory supporting the claim is not technically fraud." *See Toner v. Allstate*, 821 F. Supp. 276, 283 (D. Del. 1993) (quoting *In re Healthco Int'l, Inc. Sec. Litig.*, 777 F. Supp. 109, 113 (D. Mass 1991)); *E. Varney v. R.J. Tobacco Co.*, 118 F. Supp. 2d 63, 68 (D. Mass. 2000). In addition to the RICO and common law fraud counts (Counts I and VIII), Counts II, III, V and VII allege that defendants knowingly made false statements, deliberately concealed material facts and "lied." *See* Am. Compl. at ¶¶ 361, 371, 380, 381, 396(b). These claims are all predicated on allegations of fraud – they sound in fraud – and therefore must meet the particularity requirements of Rule 9(b).[16]

B.      Suffolk's Claims Violate Rule 9(b) In Several Ways

1.      *Failure to Particularize the Allegedly Fraudulent Rebate Claims*

Suffolk fails to identify a single instance of a false best price report, let alone the date or content of any such report. That is completely unacceptable under Rule 9(b). *See Gross v. Summa Four, Inc.*, 93 F. 3d 987, 996 (1st Cir. 1996) (general allegations that business practices led to false reporting, without an explanation of how the reports were false, do not satisfy Rule 9(b)); *see also In re Galileo Corp. Shareholders Litig.*, 127 F. Supp. 2d 251, 268 (D. Mass. 2001) (same).

---

[16] Suffolk's argument that Rule 9(b) does not apply to New York's consumer fraud statute, N.Y. GBL § 349 is just plain wrong. Its cases hold that a consumer fraud plaintiff need not plead all the elements of common law fraud, such as scienter. While the New York statute, like Rule 9(b) itself, relieves a plaintiff from pleading that the defendant acted with a particular "state of mind," they do require the plaintiff to plead how the conduct was allegedly deceptive or misleading to the public. *See, e.g., Rey-Willis v. Citibank, N.A.*, No. 03 Civ. 2006 (SAS), 2003 WL 21714947 (S.D.N.Y. Jul. 23, 2003) ("claim for deceptive business practices [under N.Y. GBL § 349] must be pled in accordance with Rule 9(b)"); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003) (same); *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 331 (S.D.N.Y. 2002) (dismissing a §349 claim lacking specific factual allegations).

2.    *Failure to Particularize Among Defendants On Rebate Claims*

The heightened pleading standard of Rule 9(b) mandates that where multiple defendants are involved, each defendant's role in the alleged fraud must be particularized. *See Greebel v. FTP Software Inc.*, 182 F.R.D. 370, 374 (D. Mass. 1998); *Goebel v. Schmid Bros.*, 871 F. Supp. 68, 73 (D. Mass. 1994); *Kuney Int'l, S.A. v. DiIanni*, 746 F. Supp. 234, 237 (D. Mass. 1990); *Loan v. FDIC*, 717 F. Supp. 964, 968 (D. Mass. 1989).

Suffolk contends that it has sufficiently alleged "Best Price Manipulation" by eight defendants simply by citing to government investigations and by alleging general "forms" of "unreported discounting." (Suffolk Def-Specific Mem. at 5 n.8.) This is insufficient even as to those eight defendants. Moreover, Suffolk provides *no* basis to plead a claim against the remaining 28 defendants. Inadequate references to some defendant drug manufacturers certainly will not support Suffolk's overbroad generalization that *other* defendants "must [have participated] lockstep in the fraud." *See* Am. Compl. at ¶¶ 11 & 13.

3.    *Failure to Particularize AWPs for Multiple-source Drugs*

Suffolk argues because multiple-source drugs are reimbursed under New York's Medicaid with reference to AWP, this is sufficient to support its AWP fraud claims. (Suffolk Mem. at 16-17.) As defendants pointed out in their opening brief, this is *not* sufficient because the AWP upon which a Medicaid payment for multiple-source drug A is based is often provided not by the manufacturer of drug A, but by the manufacturer of another generic substitute, drug B, or the manufacturer of an even lower cost brand, drug C. (Def. Mem. at 17-18; *see also* Am. Compl. ¶ 95.) Because Suffolk has failed to particularize how or why one manufacturer-defendant could possibly be liable for the price reporting of others, its claims relating to multiple-source drugs must be dismissed.

Moreover, Suffolk's allegation of defendants' alleged incentive to misreport AWP and to create "spread" makes no sense in the context of multiple-source drugs. If New York Medicaid pays providers one amount for all forms of a multiple-source drug regardless of the manufacturer of the drug dispensed, then a manufacturer cannot increase its market share or the competitiveness of its product by an increase in its own AWP. Any increase in the payment will affect all manufacturers alike, with no market share advantage for the manufacturer that increased the AWP for its product. Competition based on AWP and spreads cannot occur when all forms of the drug are paid at a single rate not tied to an individual manufacturer's AWP. *See* AMCC Dismissal Brief at 36-39; *In re Pharm. Indus. AWP Litig.,* 263 F. Supp. 2d 172, 194 n.11 (D. Mass. 2003).

      4.    *Failure to Particularize How New York Was Deceived about AWPs*

Defendants have demonstrated that the State is well aware that AWP does not purport to reflect pharmacists' actual acquisition costs of drugs by citing to administrative and judicial pronouncements on the use of AWP in State Medicaid programs and, in particular, through an examination of the legislative history on New York's recent increase in the percentage discount to AWP that it pays Medicaid pharmacists. Suffolk responds that this material is outside of the Amended Complaint and therefore should not be considered on a motion to dismiss. Suffolk also contends that this Court has already rejected defendants' "government knowledge and approval argument." (Suffolk Mem. at 6 (quoting *In re Pharm. Indus. AWP Litig.,* 263 F.Supp.2d at 187)).

The answer to the first objection is that the Court may look at materials such as legislative history, judicial opinions and public records whose authenticity is not in doubt without converting the motion to one for summary judgment. *See Alternative Energy, Inc. v. St.*

*Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Boateng v. Interamerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000); *Oneida Indian Nation of New York v. State of New York*, 691 F.2d 1070, 1086 (2d Cir. 1982); *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000).

The answer to the second objection is that defendants' previous argument and this Court's prior opinion bear no relationship to the Rule 9(b) deficiencies in Suffolk's Amended Complaint. Defendants are not arguing here that government knowledge of AWP raises a "political question" or constitutes a "filed rate" that precludes private citizens from suing altogether; rather, defendants argue that because Suffolk's claims are based on fraud, Rule 9(b) requires it to plead with particularity how it (or really, New York State) was deceived by defendants' AWPs. Suffolk does not plead a single memo, article, writing or communication to suggest that New York was deceived about AWPs used in Medicaid. Indeed, the public record shows that the State well knew that AWP did *not* reflect Medicaid pharmacists' acquisition costs for drugs. *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003) (no deception where "consuming public is already aware of the 'concealed' characteristics" of fast food). In short, Suffolk had not adequately pled that the AWPs were "fraudulent," "deceptive" or "misleading" as its causes of action require.

### 5. *Failure to Particularize Fraudulent Concealment*

Finally, assuming that Suffolk has pled fraud, it still has not pled concealment sufficient to toll the statute of limitations -- at least as to its AWP claims.[17] Suffolk's brief merely restates the entirely conclusory assertion that defendants prevented "Suffolk from knowing what the

---

[17] Suffolk's rebate claims fail for many other reasons, but defendants presently assert statute of limitations only as to Suffolk's AWP claims, on which it was indisputably on notice by no later than the 1996 date of the Dow Jones article cited in the Amended Complaint.

16

actual pricing structures for the drugs were." (Suffolk Mem. at 39 (quoting Am. Compl. at ¶ 322).) The whole point of Rule 9(b) is to require Suffolk to articulate particular facts about *what* steps it took, *when* it took them and *how* defendants allegedly interfered with its search for the truth. *See Varney*, 118 F. Supp. 2d at 68 (pleadings which portray a conspiracy to defraud or conceal may not be painted in broad strokes); *Salois v. Dime Savings Bank of New York*, No. Civ. A. 95-11967-PBS, 1996 WL 33370626 at *7 (D. Mass. Nov. 13, 1996). Moreover, Suffolk does not make a single, individualized allegation as to any one defendant with respect to its fraudulent concealment/tolling claims. Rather, it treats all defendants as an undifferentiated group. This, too, violates Rule 9(b). *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985); *Greebel*, 182 F.R.D. at 374.

C.     <u>Suffolk Has Not Properly Alleged The Other Substantive Elements Of Its Claims</u>

    1.     *RICO*

As stated in defendants' opening memorandum, Suffolk's RICO claim essentially parrots the RICO claim alleged in Count I of the AMCC. As with the AMCC, Suffolk has failed to allege facts showing the existence of a viable RICO "enterprise," or that defendants "conducted or participated" in the affairs of any such enterprise.

These defects are addressed in the AMCC Dismissal Brief at 12-17, 19-20 and the Consolidated Reply Memorandum In Support of Defendants' Motion to Dismiss the AMCC at 6-13. Defendants incorporate those arguments; but, a few additional points bear mention.

Suffolk asserts that *United States v. Oreto* is "akin" to this case and supports its allegations that defendants conducted the affairs of the so-called Manufacturer-Publisher Enterprises. (Suffolk Mem. at 13.) In *Oreto*, the Court held that lower-level members of a criminal enterprise, who were under the direction of the leaders of the enterprise, could be found

to have participated in the affairs of the enterprise. 37 F.3d at 750-51. *Oreto* has no application here. In this case, Suffolk claims that defendants actually controlled the so-called Manufacturer-Publisher enterprises. However, Suffolk pleads no facts that, if true, would support this claim.

Suffolk cites *Burdett v. Miller*, 957 F.2d 1375, 1379-80 (7th Cir. 1992) and *United States v. Patrick*, 248 F.3d 11, 19 (1st Cir.), *cert. denied*, 122 S. Ct. 620 (2001) for the proposition that there "need not be much" structure to establish a RICO enterprise. Suffolk Mem. at 14. These cases do not support the "enterprise" allegations in this case. In *Burdett*, the Court ruled that an enterprise consisting of individuals involved in a fraudulent tax shelter scheme formed an "identifiable entity" that had sufficient structure to be a RICO enterprise. 957 F.2d at 1379. However, the court noted that such an enterprise "is at the limit of RICO's reach." *Id.* at 1380. Suffolk has failed to plead facts that establish even this much structure. *Patrick* concerned the appropriateness of jury instructions in a criminal case, not a plaintiff's pleading burden in a civil case. Further, the court merely held that, taken as a whole, a jury charge that almost directly tracked the language of *Turkette* was not defective for failing to include a separate instruction requiring an "ascertainable structure." 248 F.3d at 18-19. Thus, like *Burdett*, *Patrick* does nothing to support Suffolk's position. [18]

---

[18] Suffolk also relies on an unpublished Second Circuit opinion, *Pavlov v. Bank of New York Co.*, No. 01-7434, 2002 WL 63576 at * 1 (2d Cir. Jan. 14, 2002). That case involved an enterprise consisting of bankers from two different banks who colluded with members of Russian organized crime, to loot one of the banks and use an international network to launder the proceeds. This is a far cry from this case, where all that is alleged is that manufacturers provided prices to publishers, which the publishers then published. Suffolk's reliance on *United States v. Owens*, 167 F.3d 739 (1st Cir. 1989), is similarly misplaced. *Owens* involved the combination of two drug gangs that "regularly exchanged money for cocaine, coordinated in the transporting of cocaine to Boston, accompanied one another on cocaine buying trips, and assisted one another in acts of violence to protect their drug interests." 167 F.3d at 751. As with *Pavlov*, the enterprise in *Owens* bears no resemblance to the enterprise alleged in this case. Finally, Suffolk cites *Lemelson v. Labs., Inc.*, 874 F. Supp. 430, 433 (D. Mass. 1994). However, the *Lemelson* court upheld a RICO enterprise comprised of an individual, his attorneys and corporate entities under his control, without any significant discussion that would be relevant to this matter.

2.    *Consumer Fraud*

Defendants have already shown that Rule 9(b) applies to consumer fraud claims under Section 349 of New York's General Business Law and that Suffolk is unable to plead that manufacturers have "deceived" or "misled" New York State with respect to Medicaid drug prices.  Suffolk's N.Y. GBL § 349 claim also fails because this is not a "consumer" case. Suffolk responds that the statute applies to "all economic activity" and all that must be shown for a cause of action to lie is that the alleged fraud affected the "public interest."  Suffolk Mem. at 33-34.  Again, Suffolk misreads the statute.[19]

The key is whether the defendant's conduct was designed to mislead large numbers of consumers or whether the conduct was directed primarily at sophisticated entities who are not consumers.  *Rey-Willis*, 2003 WL 21714947 at *7; *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 331 (S.D.N.Y. 2002).  Here, defendants are alleged (albeit, in a totally conclusory fashion) to have misled New York State, acting in its sovereign capacity, in connection with its Medicaid program.  This is not the kind of case to which the consumer fraud statute is directed.

3.    *Unjust Enrichment*

Finally, in addition to its lack of standing, Suffolk cannot state an unjust enrichment claim because the benefit conferred by Suffolk bears no rational relationship to the benefit allegedly received by defendants.  The theory behind the claim is that defendants' inflated AWPs caused the State, and derivatively Suffolk, to overpay *pharmacists* for Medicaid drugs. Defendants are alleged to have benefited only incidentally, thorough "increased sale" of their

---

[19] As stated at note 8, *supra*, Suffolk also relies heavily on a federal district court case that has been set aside by the Second Circuit pending certification of question to the New York Court of Appeals. *See* Suffolk Mem. at 33 (citing *Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris USA, Inc.*, 178 F. Supp.2d 198 (E.D.N.Y. 2001), *rev'd in part and reserved in part, Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 211, 219-20 (2d cir. 2003), *certified question accepted by Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*, 2003 N.Y. Slip Op. 17896, 2003 WL 22455503 (2003)).

- and -

D. Scott Wise (admitted *pro hac vice*)
Kimberly Harris (admitted *pro hac vice*)
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

21

## CERTIFICATE OF SERVICE

I, James S. Zucker, certify that a true and correct copy of the Consolidated Reply Memorandum Of Law In Support Of Defendants' Motion To Dismiss County Of Suffolk's Amended Complaint was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 14, 2003, a copy to Verilaw Technologies for posting and notification to all parties.

James S. Zucker

DISTRICT S
OFFICE

2003 NOV 14  P 5: 54

COURT OF MASS.

September 12, 1980          Opn No. 80-294

SOCIAL SERVICES LAW, §§83, 367-b:  The usual procedures relating
to the approval and audit of claims against a county for medicaid
services do not apply when the county implements the Medicaid
Management Information System.  Since the county is not involved
in the payment of medicaid claims to providers of services, there
are no vouchers to be approved or audited by the county auditor.


Paul W. Elkan, Esq.
Otsego County Attorney
County Office Building
197 Main Street
Cooperstown, New York  13226

                              Re:  Otsego County


Dear Mr. Elkan:

     This is in reply to your letter in which you inquire whether,
upon implementation of the Medicaid Management Information System
(MMIS), the county auditor need continue to audit claims submitted
by providers of medical services.

     Very briefly, MMIS is a system mandated by statute (Social
Services Law, §367-b) for (among other things) the receiving and
processing by the N.Y. State Department of Social Services of all
claims for medical care, services and supplies, and for making pay-
ments for valid claims to providers thereof on behalf of social
services districts.  Under MMIS, the State assumes the responsiblity
for the payment of medicaid vouchers, which is presently a function of
each social service district (county).  The total amount of the
county's contribution to medicaid claims (fixed percentages thereof
are paid by the County, Federal government and the State) is paid
by the State and such amount is withheld from other social services
local assistance which otherwise would be paid to the county if the
county itself were paying medicaid claims.  Claims for payment
are made to the State rather than to the county.  Since the county
is not involved in the payment of medicaid claims to providers of
services, there are no vouchers to be approved or audited by the
county auditor.

-2-                                                  Opn No. 80-294

That procedure is a departure from the method of payment by a county of claims generally, and medicaid vouchers in particular, as prescribed by law (Social Services Law, §83; County Law, §§369, 600). Nevertheless, by necessary implication, the State Legislature has sanctioned the preemption by section 367-b of existing statutory procedures relating to the payment of medicaid claims inasmuch as the MMIS program (the implementation of which is mandatory) is inconsistent with such procedures. Indeed, Social Servies Law, §369(1) states, in part, that "All provisions of this chapter not inconsistent with this title (sections 363-369) shall be applicable to medical assistance for needy persons and the administration thereof by the public welfare districts." (emphasis added). And L 1976, ch 639 (adding section 367-b), §2 provides, in part, "that the provisions of this act shall be given full force and effect notwithstanding any inconsistent provisions of any local law, charter, ordinance or resolution".

We trust that the above will be of assistance to you.

                                        Sincerely,

                                        EDWARD V. REGAN
                                        State Comptroller

                                        By

                                        Kenneth F. Hartman
                                        Associate Counsel

Pirro/dk

This opinion represents the views of the Office of the State Comptroller at the time it was rendered. The opinion may no longer represent those views if, among other things, there have been subsequent court cases or statutory amendments that bear on the issues discussed in the opinion.



**FOLEY HOAG** LLP

ATTORNEYS AT LAW

... COURT
... OF MASS.

2003 NOV 14 P 5: 53

Lucy Fowler
Boston Office
617-832-3008
lfowler@foleyhoag.com

November 14, 2003

... FILED
... K'S OFFICE

**By Hand**

Clerk's Office, Civil
U.S. District Court for the District of Massachusetts
One Courthouse Way
Boston, MA 02210

Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*,
No. 01-CV-12257-PBS

Dear Sir or Madam:

Enclosed for filing in the above-entitled matter please find:

1. Consolidated Reply Memorandum of Law in Support of Defendants'
Motion to Dismiss the Amended Complaint.

Please date-stamp the enclosed copy of this document and return it to our
courier.

Thank you for your assistance with this matter.

Very truly yours,

Lucy Fowler

Lucy Fowler

LF
Enclosures
cc:    All Parties (by electronic service)

17/508567.1

BOSTON  /  155 Seaport Boulevard  /  Boston, Massachusetts 02210  /  TEL: 617.832.1000  /  FAX: 617.832.7000
WASHINGTON, DC / 1747 Pennsylvania Ave., NW / Suite 1200 / Washington, DC 20006 / TEL: 202.223.1200 / FAX: 202.785.6687
Foley Hoag LLP                                                                                    www.foleyhoag.com