UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL No. 1456<br>) Master File No. 01-12257-PBS<br>)<br>) Date: December 12, 2003<br>) Time: 2:00 P.M. |
| THIS DOCUMENT RELATES TO:<br>State of California, et al v. Abbott Laboratories et al<br>CASE #: 1:03-cv-11226-PBS | ) Judge: Hon. Patti B. Saris<br>)<br>)<br>) |

### THE STATE OF CALIFORNIA'S AND RELATOR'S REPLY BRIEF IN SUPPORT OF THE STATE OF CALIFORNIA'S AND RELATOR'S NOTICE OF ELECTION TO DISMISS REBATE CLAIMS FROM THE CASE AND AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND PURSUANT TO THE COURT'S RULING OF SEPTEMBER 18 2003

### INTRODUCTION & SUMMARY

At the hearing on September 18, 2003, this Court denied plaintiffs' motion to remand without prejudice and stated that the Court would seriously reconsider its ruling to remand the action if the State of California ("State") decided to dismiss the C.M.S. rebate fraud claims without prejudice in the sealed, *qui tam* First Amended Complaint. The State Attorney General has now elected to dismiss the C.M.S. rebate claims <u>without prejudice</u>, has indicated they will not be subsequently re-filed in this action, and requests remand to State Court.

In summary, Plaintiffs assert that the fraudulent pricing claims based on the Average Wholesale Price and Direct Price are separate and independent from the C.M.S. rebate fraud claims since they can be tried as separate matters. Once the federal rebate claims are dismissed, the State pricing fraud claims should be remanded pursuant to the Court's supplemental jurisdiction. Also, compelling considerations of comity favor remand due to the unique procedural posture of a false

1

claim, *qui tam* case. Defendants ignore this background and accuse Plaintiffs of manipulative tactics. Defendants' accusations are baseless since the law firmly supports the requested remand once the C.M.S. rebate claims are removed from the action.

I

## THE C.M.S. REBATE FRAUD ALLEGATIONS IN THE PLAINTIFFS' FIRST AMENDED COMPLAINT ARE "SEPARATE AND INDEPENDENT CLAIMS" FROM THE AWP AND DIRECT PRICE SPREAD ALLEGATIONS

28 U.S.C. 1367 entitled SUPPLEMENTAL JURISDICTION, provides in pertinent part as follows:

> (a) ...in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> (c) The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...
> (3) the district court has dismissed all claims over which it has original jurisdiction....

In the instant case, the C.M.S. rebate fraud allegations[1] in the First Amended Complaint are separate and independent claims from the Average Wholesale Price-Direct Price fraud allegations

---

[1] These allegations refer to compulsory rebate payments made by pharmaceutical companies to the federal government and the Medicaid states as a condition for participating in the Medicaid program. The amount of the rebates is determined by the Center for Medicare and Medicaid Systems ("C.M.S.") based upon Average Manufacturing Price ("AMP"), Best Price ("BP") and other data provided by the drug manufacturers to CMS on a quarterly basis. The rebate claims in the instant case turn on the fact that rebates are computed differently based on whether the drugs are being marketed pursuant to a New Drug Application with the Food and Drug Administration or an Abbreviated New Drug Application and that various defendants mislead the government with regard to the status of certain drugs. Clearly these claims are separate and distinct from the inflated, fraudulent pricing claims.

2

("pricing fraud")[2]. Though both the C.M.S. rebate fraud claims and the pricing fraud claims can be joined in one drug pricing case, they are factually and conceptually distinct claims which can be tried separately in two different cases. One deals with the contracts entered into with drug manufacturers by the federal government for rebates on the federal government's and the states' behalf, while the other relates to the inflated, fraudulent pricing of drugs indirectly paid for by the State through excessive reimbursement.[3]

The basis for remand of the pricing fraud claims, following dismissal of the C.M.S. rebate fraud claims, is found in the doctrine of "pendant jurisdiction." Once the federal rebate claims are removed, the Court has discretion under its "supplemental" or "pendant jurisdiction" to remand the case to California State Court.

Remand is particularly compelling in the instant case where there is a *qui tam*, false claims act case. In the typical case, the plaintiff chooses what claims to assert and chooses its forum. If plaintiff asserts federal claims, it opens itself up to the possibility of a removal. If plaintiff wants to avoid federal court, it can legitimately do so by not pleading federal claims. In the *qui tam* context, however, the State did not have the choice to determine what claims were initially asserted by the

---

[2] The substance of the Average Wholesale Price and Direct Price fraud allegations by the State is that the defendant pharmaceutical companies falsely reported inflated prices for their pharmaceutical products to various trade publications relied upon by California's Medi-Cal program for drug reimbursement of its Medi-Cal providers. The providers were able to purchase the pharmaceuticals for significantly less than the amount for which they were being reimbursed by Medi-Cal with the difference being called the "spread." As a result, the defendant pharmaceutical companies gained market share for their products by "marketing the spread" to Medi-Cal's providers and the Medi-Cal program sustained enormous financial losses.

[3] See discussion in State of Montana v. Abbott Laboratories, et al., 266 F.Supp. 2d at 253-254, American Fire & Casualty Co. v. Finn, 341 U.S. 6, 13-14, 95 L. Ed. 702, 71 S. Ct. 534 (1951).

3

Relator. Allowing the State to dismiss federal claims asserted by the Relator merely gives the State the right to select its claims and its forum just as any litigant normally could have done.

In its Opposition, Abbott cites several cases for the proposition that post-removal amendments to the complaint, in which the federal causes of action are removed, are to be viewed with disfavor. However, those cases are not persuasive. None of those cases holds that the federal court loses its discretion to remand the state claims once the federal claims are removed. In fact, two of the cases cited, Montana A.G. et. al., 266 F. Supp 2d 250 (2003) and Irma Williams-Ward vs. Pitts, Inc, 908 F. Supp. 48 (1995), previously authored by this Court, are instructive.

The Montana A.G. case *Id.* was a drug pricing case, similar to the one at bar, in which the State of Montana alleged AWP and C.M.S. rebate fraud claims. After being removed to federal court, Montana amended its complaint by deleting the C.M.S. rebate fraud allegations, but left in the complaint "tort claims based on allegations that defendants violated the 'best price' requirement contained in the Medicaid-rebate agreements between defendants and the federal government." 908 F. Supp. 258. Defendants cited Ching vs. Mitre Corp., 921 F. 2d 11, 13 (1st Cir. 1990), as authority that "an amendment to a complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction."

The Court in Montana A.G. *Id.* denied remand on the basis that the federal tort claims left in the amended complaint created federal question jurisdiction since they required interpretation of a contract with the federal government. Neither the fact that AWP pricing fraud claims were in the amended complaint, nor that there had been a post-removal amendment deleting the federal claims, were the basis for the Court's decision to deny remand. Rather, the Court "proceeded to determine whether there is an independent basis for federal jurisdiction over the remaining claims" and found

4

same with respect to the tort claims founded on the Medicaid rebate agreements. 266 F. Supp. 2d 250 at 257-258.

In <u>Imira Williams-Ward</u> *Id.*, plaintiff tenant alleged violations of lead-based paint pursuant to the Massachusetts Lead Poisoning Prevention and Control Act. Plaintiff also alleged violations of the implied warranty of habitability and quiet enjoyment pursuant to the plaintiff's lease with HUD, a federal agency. The defendant property manager removed the case to federal court, claiming federal law preemption. Following removal, plaintiff waived her habitability and quiet enjoyment claims conceding that federal question jurisdiction existed since these claims involved the rights and obligations of parties under the federal contract with HUD. While the court denied remand, the fact that plaintiff had amended her complaint post-removal to delete federal causes of action was not the determining factor. Rather, the Court determined that federal jurisdiction existed based on express federal preemption under the Federal Lead Paint Act. .

Thus, there is little doubt that with respect to the case at bar, the Court has discretion to remand the case to State Court notwithstanding the fact that Plaintiffs are electing to dismiss their C.M.S. rebate claims post-removal.

## II

## THE REMAINING STATE CLAIMS SHOULD BE REMANDED BASED ON JUDICIAL ECONOMY, CONVENIENCE, FAIRNESS, AND COMITY

"The factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon University vs. Cohill</u> *Id.*, 484 U.S. 343, 350 citing <u>Gibbs</u> *Id.* at 383 U.S. 726. With respect to the instant case, an analysis of these factors clearly

5

supports remand.

First, judicial economy is served because all of the rules, regulations, definitions, and terms involved in connection with the pricing fraud allegations are embodied in California law or regulations. This is particularly the case with respect to State regulations promulgated by California's Dept. of Health Services, tasked with administering California's Medi-Cal program. Also, as set forth in the Declaration of Thomas A. Temmerman (attached), California is perhaps the only state in the Union which utilizes Direct Price as a reimbursement methodology for pharmaceutical products. Hence, this aspect of the case is unique to California.

Second, the twin considerations of convenience and fairness favor California. Simply put, much of the anticipated evidence and many witnesses are located in California. It is anticipated that there will be multiple document requests and depositions from employees of California's Dept. of Health Services, located in Sacramento, California. Finally, California's budget problems are no secret, having been well-publicized in the media. Forcing the State to litigate this case across the country will further strain California's limited financial resources.

Third, considerations of fairness and comity overlap in several compelling respects in this case. California's False Claims Act provides that the State Attorney General can and should make a full investigation of underlying fraud claims before having to intervene. Once having made the intervention decision, it is on the claims and allegations of the Attorney General's choosing, on his timetable, and in a California state forum. In this case, defendants removed the case in its entirety based on sealed claims upon which the Attorney General had not yet intervened. The Court has made it clear that these sealed claims are actionable or "live" federal allegations for purposes of removal. Yet, the Court's inclination to allow the State to make an election of dismissal now, post-removal, was

presumably a recognition that *qui tam* cases are different and this election to dismiss merely provides the State with the opportunity to do what it would normally have had the right to do in the first place -- select the forum. To allow the State to select the forum is a legitimate factor for the Court to consider in the exercise of its discretion, and honoring the State's choice is consistent with principles of state sovereignty and limited federal jurisdiction.

## III

## THERE IS NO EXPRESS NOR IMPLIED FEDERAL PREEMPTION OF THE AWP-DP FRAUD CLAIMS TO CONFER FEDERAL JURISDICTION

At Pages 11-14 of its Opposition, Abbott launches into a lengthy discussion how the pricing fraud claims, by themselves, should confer independent, supplemental federal jurisdiction since allegedly "the price reporting claims are closely tied to questions of federal policy and involve complex questions of federal law." Abbott concedes that "even though these federal issues may not be sufficient to confer original federal questions jurisdiction, they nonetheless warrant the Court's exercise of supplemental juriisdiction." (Citations omitted) [4] Abbott cites all the usual, well-worn arguments the pharmaceutical companies have been making in pricing fraud cases that (1) Medicaid programs are jointly administered and funded by the federal and state governments, and (2) Federal law governs and should determine Estimated Acquisition Cost ("EAC"), AWP, DP, and the Federal Upper Limit ("FUL") of a drug, even though these same terms are also defined under State law regulations. Abbott concludes that, in general, "federal issues and federal policy permeate the Price Reporting Claims." [5]

---

[4] Pgs. 11-12, Abbott's Opposition.

[5] Pg. 14, Abbott's Opposition.

In essence, Abbott is making an implied federal preemption argument here without really saying it. Based on information and belief, no Court which has heard or decided a pricing fraud case has ever ruled that this subject matter has been either expressly or impliedly preempted by federal law. To the contrary, this Court had the opportunity to do so in deciding the Montana A.G. case *Id.* and declined to do so.

As this Court aptly stated in Imira Williams-Ward *Id.*, at 908 F. Supp. 48, 53, the standard for finding either express or implied federal preemption in any area of the law is a high one which clearly has not been met in the case at bar:

> Congressional intent to pre-empt state law may be expressed "explicitly in the language of the statute," or implicitly, "by passing an extensive statutory scheme that extensively covers the field of regulation." King, 983 F.2d at 1133 (citations omitted). "Implied preemption also occurs when a conflict between state and federal law makes compliance with both impossible, or when state law would frustrate the purpose and objectives of the federal law." Id. at 1133. Especially in areas involving the state's interest in public health and safety, **it is presumed that Congress did not intend to pre-empt state law**. Id.; Talbott v. C.R. Bard, Inc., 865 F. Supp. 37, 43 (D.Mass. 1994). Imira Williams-Ward *Id.*, Emphasis Added.

### IV

### DEFENDANT'S ARGUMENTS OF "MANIPULATIVE TACTICS" BY THE STATE AND THAT THE C.M.S. REBATE CLAIMS SHOULD BE DISMISSED <u>WITH</u> PREJUDICE LACK MERIT

In its Opposition, Abbott accuses the Plaintiffs of "manipulative tactics" and "jurisdictional gamesmanship" by electing to dismiss the C.M.S. rebate fraud claims without prejudice and seeking remand to California state court. This argument lacks merit for several reasons. First, in the September 18, 2003 hearing, the Court suggested the option of the State dismissing the C.M.S. rebate fraud claims without prejudice and seeking remand which plaintiffs are now doing. Secondly, the prompt dismissal by plaintiffs of federal claims in a state action following removal to federal court

8

is an acceptable tactical decision by which to seek remand.[6] Third, as discussed in the Declaration of Thomas A. Temmerman attached hereto, the issuance by the State of investigative subpoenas and the preservation of evidence letter in connection with the C.M.S. rebates were routine acts in the normal discharge of the Attorney General's law enforcement activities, which would have been done in any event, this case notwithstanding. Fourth, it was Abbott, and not Plaintiffs, which removed the instant case from the State to the federal forum. Plaintiffs now are simply seeking remand to the forum where they filed the case originally, which can hardly be construed as "manipulative tactics" by any stretch of the imagination.

Finally, Abbott makes the bald assertion that plaintiffs should somehow be punished for their allegedly "manipulative tactics" by having the C.M.S. rebate fraud claims dismissed **with** prejudice should the Court decline to exercise supplemental federal jurisdiction over the pricing fraud claims. Abbott offers the case of Pedraza vs. Holiday Housewares, Inc., 203 F.R.D. 40 (U.S.D.C. Mass. 2001) as support for this novel theory. However, Pedraza *Id.* misses the mark entirely since plaintiff therein litigated his case for thirty months in federal court, took twelve depositions, and waited for discovery to close before seeking dismissal of his federal claims and remand to state court.

The Court in Pedraza *Id.* denied remand and continued to retain federal jurisdiction over the case. In doing so, the Court cited Roche vs. John Hancock Mutual Life Ins. Co., 81 F. 3d 249 (1st Cir. 1996) as follows:

---

[6] Plaintiffs' Notice of Election and Amended Memorandum of Law to Remand Pursuant to the Court's Ruling of Sept. 18, 2003, Pgs. 4-5, citing Carnegie-Mellon vs. Cohill *Id.*, 484 U.S. at 357, Certilman vs. Becker, 807 F. Supp. 307, 309 (S.D.N.Y., 1992), Baddie et. al. vs. Berkeley Farms, et. al., 64 F. 3d 487, 490 (9th Cir., 1995).

TOTAL P.01

> The litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state claims were interconnected, and powerful interest in both judicial economy and fairness tugged in favor of retaining jurisdiction. Pedraza *Id.* 203 F.R.D. 40, 45 citing Roche *Id.* at 81 F. 3d 249, 256-257.

Pedraza *Id.* obviously has no applicability to the facts of the case at bar where Plaintiffs are seeking dismissal without prejudice of the C.M.S. rebate fraud allegations and remand at the earliest possible opportunity following the Court's ruling on September 18, 2003, despite the fact that the Court gave the State six (6) months to make its determination in this regard. No discovery has taken place and there is no prejudice to Defendants if the case is remanded.

## CONCLUSION

Based on the foregoing, Plaintiffs' election to dismiss the C.M.S. rebate claims without prejudice should be granted and the case remanded to the State of California Court in its entirety. This Reply is being jointly submitted on behalf of the State of California, Office of the Attorney General, and the Relator.

Dated: November 21, 2003

BILL LOCKYER, Attorney General
for the State of California

By: WILLIAM S. SCHNEIDER
Deputy Attorney General
1455 Frazee Road, Suite 315
San Diego, CA. 92108
(619) 688-6099 Telephone
(619) 688-4200 Fax

LAW OFFICES of JAMES J. BREEN
STERN, SHAPIRO, WEISSBERG &
GARRIN, L.L.P.

By: JAMES J. BREEN
90 Canal Street
Boston, MA. 02114-2018
(617) 742-5800 Ext. 115 Telephone
(617) 742-5858 Fax
Attorneys for Relator

Reply Brief Final 11-21-03.wpd                   10

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>DECLARATION OF THOMAS A. TEMMERMAN, SR. ASSISTANT ATTORNEY GENERAL, IN SUPPORT OF REPLY BRIEF FILED BY THE STATE OF CALIFORNIA TO DISMISS FEDERAL C.M.S. REBATE FRAUD ALLEGATIONS AND REMAND THE CASE TO STATE COURT<br><br>Date: December 12, 2003<br>Time: 2:00 p.m.<br>Judge: Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br>State of California, *et al.* v. Abbott Laboratories, *et al.*<br>CASE NO. 1:03-cv-11226-PBS | |

I, THOMAS A. TEMMERMAN, hereby declare and state as follows:

1. I am a Senior Assistant Attorney General assigned to the Bureau of Medi-Cal Fraud and Elder Abuse, Criminal Division, California Department of Justice. At all times since the above-captioned *qui tam* matter was filed I have had overall management and supervision of it on behalf of the California Attorney General. At the present time, Deputies Attorney General William S. Schneider, Timothy Foote, John Fisher, and Dennis Fenwick are all assigned to the active management of this case subject to my supervision and that of Supervising Deputy Attorney General Eliseo Sisneros.

2. In July 1998, the Ven-A-Care relators filed their initial complaint under seal and served it along with their disclosure statement on the California Attorney General. Thereafter, our office commenced our investigation of this matter, as mandated by California and federal law.

1

The complaint alleged a complicated and sophisticated scheme to defraud California's Medicaid program ("Medi-Cal") through excessive reimbursement of pharmaceutical products. The complaint further alleged that this conduct by the pharmaceutical industry had spanned over a decade and involved thousands of different pharmaceutical products by numerous different pharmaceutical companies.

3. Initially, we utilized our own internal sources to gather together data and other pricing information regarding the subject companies and their pharmaceutical products. Also, we obtained data from the relators. As the Bureau is primarily a criminal prosecution unit, I also assigned a criminal deputy in our office to investigate the documents and information we had obtained to determine if criminal prosecutions might be appropriate. During this time, we obtained court-ordered extensions of the seal to obtain additional time to conduct our various investigations and negotiated a multi-state settlement with one pharmaceutical manufacturer.

4. In October 2000, in furtherance of that investigation, our office issued California specific investigative subpoenas to the Defendants named in the *qui tam* complaint pursuant to California Government Code Section 11181 et. seq.

5. In August 2002, the Relators filed their First Amended Complaint which added more companies than their initial complaint and several times as many pharmaceutical products. The First Amended Complaint also contained allegations of rebate fraud by some but not all of the companies involving the federal Center for Medicare and Medicaid Services (C.M.S.) formerly the Health Care Finance Administration (H.C.F.A.).

6. By January of 2003, our office had acquired sufficient data and information about Defendants Abbott and Wyeth to institute an enforcement action against them. I further

determined that such action should be instituted under California's civil False Claims Act rather than criminal statutes. Accordingly, I instructed Mr. Schneider and our staff to prepare a complaint-in-intervention against Abbott and Wyeth based on California state law only. These two companies are reimbursed for their pharmaceutical products on the basis of Direct Price under California's Code of Regulations as opposed to Average Wholesale Price which is one of the national standards. To my knowledge, California is one of the only states in the Union, if not the only State, whose Medicaid program reimburses on the basis of Direct Price.

7. Furthermore, in the preparation of the Abbott-Wyeth complaint-in-intervention, I instructed my staff to deliberately omit any and all C.M.S. rebate fraud claims because our investigation into rebate fraud is not complete. We are required to investigate allegations of fraud primarily from a criminal standpoint. While it is true that the rebate fraud allegations appeared in the Relator's civil complaint it is not the only basis for our investigation.

8. The California Attorney General's investigative subpoenas in connection with C.M.S. rebate fraud are not linked exclusively to the underlying under-seal complaint in the case before the court. The Attorney General has already agreed to settle the issue with other manufacturers in pending settlements arising from investigations in other jurisdictions and with no relationship to the case before this court. These have included both criminal and civil components. Civil prosecutions for Medicaid fraud are but a small part of the overall duty of the Attorney General. The Attorney General is bound to and does primarily prosecute criminal fraud cases under state statutes pursuant to 42 USC Sec. 1396b(q) and 42CFR1007.7.

\ \ \

\ \ \

3

42 U.S.C. §1396b (q) provides in part and with emphasis added:

(q) "State medicaid fraud control unit" defined

For the purposes of this section, the term "State medicaid fraud control unit" means a single identifiable entity of the State government . . . as meeting the following requirements:

(1) The entity (A) is a unit of the office of the State Attorney General or of another department of State government which **possesses statewide authority to prosecute individuals for criminal violations**, . . .

(2) The entity is separate and distinct from the single State agency that administers or supervises the administration of the State plan under this subchapter.

(3) The entity's function is conducting a statewide program for the investigation and prosecution of violations of **all applicable State laws** regarding any and all aspects of fraud in connection with (A) any aspect of the provision of medical assistance and the activities of providers of such assistance under the State plan under this subchapter; . . .

Should facts be found to support such allegations California has its own applicable law the anti-kickback statute, Welfare and Institutions Code Section 14107.2, which is a general intent crime similar to but different from the federal statute 42 U.S.C. Section 1320a-7b(b).

9.  Thus, our investigation into rebate fraud is neither complete nor is it necessarily linked to this action only. Our rebate fraud investigation continues and may or may not be filed either as a criminal or civil enforcement action other than that which appeared in the Relator's First Amended Complaint and which was meant to be kept under seal pending our investigation.

10. It is my understanding that on September 18, 2003, this Court indicated that if California were to remove the C.M.S. rebate fraud allegations from the First Amended Complaint entirely by dismissing them without prejudice, the Court would reconsider its ruling and remand the remaining State claims to State Court. Even though California has not brought such allegations a dismissal with prejudice of the relators' allegations could be argued to prevent

4

California from filing a separate civil case and from joining in civil cases in other jurisdictions based on the C.M.S. rebate fraud allegations at any time should the evidence so warrant. However, a dismissal without prejudice will permit California to file a separate and distinct action for C.M.S. rebate fraud in some other court, state or federal, as would be appropriate. California needs to retain its right to file or join in some other CMS rebate fraud case if and when this office deems that action to be appropriate to protect and make whole the Medi-Cal program. However, I have directed that any such allegations will be filed in a case or cases separate from rather than amended back into this action should the Court grant California's motion to dismiss them without prejudice and remand the case to State Court.

11. At my direction, Deputy Attorney General Schneider sent a letter to Abbott dated September 30, 2003, asking Abbott to preserve Average Manufacturing Price ("A.M.P.") and Best Price ("B.P.") data which pertain to payment of their C.M.S. rebates. The reason for this was that on August 29, 2003, C.M.S. published 68 FR 51912 which was originally scheduled to take effect on October 1, 2003. Under this regulation, pharmaceutical companies were permitted to destroy all such records and data for all but the last three (3) years. The rule, were it to go into effect, would sanction the destruction of all records currently maintained by manufacturers reflecting the A.M.P. and B.P. reports on products paid for by Medicaid agencies, including Medi-Cal, throughout the 1990s.

12. I instructed Mr. Schneider to send the letter not only to Abbott but also to other pharmaceutical companies to preserve and maintain their C.M.S. rebate records and data due to pending investigations by our office. The letter was routine in nature and was not dependent upon, nor connected with, the Ven-A-Care case now pending before this Court.

5

13.    As part of the proposed regulation, C.M.S. invited comments or criticism of the new regulation from the states' attorneys general. Accordingly, on October 28, 2003, the California Attorney General and attorneys general from forty-four (44) other states sent a joint letter to C.M.S. objecting to the proposed regulation insofar as it sets a three-year time limitation on the preservation of C.M.S. rebate data by the pharmaceutical manufacturers. Subsequently, C.M.S. moved back the implementation date for 68 FR 51912 to be implemented to January 1, 2004.

That I have personal knowledge of the foregoing and that this Declaration was executed on November _21_, 2003 in Sacramento, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

THOMAS A. TEMMERMAN
Sr. Assistant Attorney General

6

# CERTIFICATE OF SERVICE

I hereby certify that I, William S. Schneider, Deputy Attorney General, Bureau of Medi-Cal Fraud and Elder Abuse, for the State of California, caused a true and correct copy of the foregoing:

1. The State of California's and Relator's Reply Brief in Support of the State of California's and Relator's Notice of Election to Dismiss Rebate Claims from the Case and Amended Memorandum of Law in Support of Motion to Remand Pursuant to the Court's Ruling of September 18 2003,

2. Declaration of Thomas A. Temmerman, Sr. Assistant Attorney General In Support of Reply Brief Filed By The State of California to Dismiss Federal C.M.S. Rebate Fraud Allegations and Remand The Case To State Court;

to be served electronically on counsel of record on the Master Service List, pursuant to Section E of the Case Management Order No. 2, this 21 day of November, 2003.

William S. Schneider
Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse
State of California




**BMFEA**
Bureau of Medi-Cal Fraud & Elder Abuse
State of California Department of Justice

Office of Attorney General
Bill Lockyer

Bureau of
Medi-Cal Fraud
and Elder Abuse

1455 Frazee Road, Ste. 315
San Diego, CA
92108

Information: (619) 688-6800
Facsimile: (619) 688-4200
Personal (619) 688-6099

November 21, 2003

**FILED VIA UPS**

**SERVED ON ALL PARTIES VIA VERILAW**

Robert Alba, Court Clerk
United States District Court, District of Massachusetts
John Moakley United States Courthouse
1 Courthouse Way
Boston, MASS 02210

RE:  MDL 1456 - In re Pharmaceutical Industry Average Wholesale Price Litigation,
**State of California et al. v. Abbott Laboratories, Inc. et al.**, Dist. Court Mass. No. 1:03-cv-11226-PBS

Dear Mr. Alba:

Please find enclosed the original and one copy of the Declaration of Thomas A. Temmerman, Sr. Assistant Attorney General In Support of Reply Brief Filed By The State of California to Dismiss Federal C.M.S. Rebate Fraud Allegations and Remand The Case To State Court and, The State of California's and Relator's Reply Brief in Support of the State of California's and The State of California's and Relator's Reply Brief in Support of the State of California's and Relator's Notice of Election to Dismiss Rebate Claims from the Case and Amended Memorandum of Law in Support of Motion to Remand Pursuant to the Court's Ruling of September 18 2003 as well as the Certificate of Service.

Please conform and return and extra copy stamped "copy" and return to us in the self-addressed UPS envelope. Thank you for your courtesy and attention to this request.

Sincerely,

WILLIAM S. SCHNEIDER
Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse

For   BILL LOCKYER
      Attorney General

WSS/agl
Enclosures