UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. NO. 1456 |
| THIS DOCUMENT RELATES TO: | Civil Action No. 01-CV-12257- PBS |
| *County of Suffolk v. Abbott Laboratories, Inc., et al.,* E.D.N.Y. Case No. CV-03-229 | Judge Patti Saris |

**SUFFOLK COUNTY'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    SUFFOLK'S FEDERAL REBATE CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Defendants Seemingly Have Abandoned Their Argument
            that Suffolk Lacks Standing to Assert A Federal Rebate Claim . . . . . . . . . . . 5

      B.    Suffolk's Implied Right Under the Federal Rebate Statute . . . . . . . . . . . . . . 5

II.   SUFFOLK'S CLAIM UNDER N.Y. SOC. SERV. LAW § 367 IS PROPER . . . . . . . . 7

      A.    Defendants Still Identify No Basis For Preemption . . . . . . . . . . . . . . . . . . . 7

      B.    Defendants Make No Contact With Suffolk's Satisfaction
            of Three Prong Test For An Implied Private Rights of
            Action Under N.Y. Soc. Serv. L. § 367 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  SUFFOLK'S CLAIM UNDER 18 N.Y.C.R.R. § 515.2(b)(4) AND (5) . . . . . . . . . . . . 8

IV.   DEFENDANTS' N.Y. SOCIAL SERVICES LAW § 145-b
      ARGUMENT IS PLAIN WRONG; SUFFOLK PROPERLY
      MAY ASSERT THIS CAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    DEFENDANTS MAKE NO CONTACT WITH SUFFOLK'S
      THIRD PARTY BENEFICIARY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.   SUFFOLK'S GENERAL BUSINESS LAW
      § 349 CLAIM IS PROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII.  SUFFOLK'S UNJUST ENRICHMENT
      CLAIM IS PROPER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      VIII.   SUFFOLK HAS SATISFIED RULE 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## Cases

*Barrata v. Kozlowski,*
  94 A.D. 2d 454 N.Y.S. 2d 803 (2d Dep't 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Binder v. National Life of Vermont,*
  2003 WL 21180417 (S.D.N.Y 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris U.S.A., Inc.,*
  344 F.2d. 211 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Brogdon v. National Healthcare Corp.,*
  103 F.Supp.2d 1322 (N.D.Ga.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Busby School of Northern Cheyenne Tribe v. United States,*
  8 Cl.Ct. 596 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Cort v. Ash,*
  422 U.S. 66 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cronin v. U.S. Professional Consultants,*
  2001 WL 256044 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Donlyn Distribution, Inc. v. BP Amoco Corp.,*
  2003 WL 22144403 (N.D.Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Estate of Ayres v. Beaver,*
  48 F.Supp.2d 1335 (M.D. Fl. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gaidon v. Guardian Life Insurance Company of America,*
  94 N.Y.2d 330 (N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harding v. Summit Medical Center,*
  41 Fed. Appx. 83 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Heller v. Kurz,*
  228 A.D.2d 263, 643 N.Y.S.2d 580 (1st Dep't 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Holbrook v. Pitt,*
  643 F.2d 1261 (7th Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
    263 F.Supp.2d 172 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15

*Matter of Estate of Burstein,*
    160 Misc.2d 900, 611 N.Y.S.2d 739 (N.Y. Sur. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McGrath v. Hilding,*
    41 N.Y.2d 625 (N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McInnis-Misenor v. Main Med. Ctr.,*
    319 F.2d 63 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McNeil v. NYC Housing Authority,*
    719 F.Supp. 233 (S.D.N.Y.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Oregon Ass. of Homes for the Aging, Inc. v. State of Oregon,*
    884 F.Supp. 382 (D. Or. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Petitt v. Celebrity Cruises, Inc.,*
    153 F.Supp.2d 240 (S.D.N.Y 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pharmaceutical Research & Mfrs. of Am. v. Concannon,*
    249 F.3d 66 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pharmaceutical Research Mfrs. of Am. v. Thompson,*
    251 F.3d 219 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*Pharmaceutical Research Mfrs. of Am. v. Walsh,*
    123 S.Ct. 1855 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rey Willis v. Citibank, N.A.,*
    2003 WL 21714947 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rivkin v. Coleman,*
    978 F.Supp.539 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roberson  v. Wood,*
    464 F.Supp.983 (E.D. Ill. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schauerman v. U.S.,*
    30 Fed.Cl. 420 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sichel v. Unum Provident Corp.*,
    230 F. Supp. 2d 325  (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Solter v. Health Partners of Philadelphia*
    215 F.Supp.2d 533 (E.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stutman v. Chemical Bank*,
    95 N.Y.2d 24 (N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Blue Cross and Blue Shield of Michigan*,
    726 F.Supp. 1517 (E.D. Mich. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States ex rel Franklin v. ParkeDavis*,
    147 F.Supp.2d 39 (D. Mass 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wilder v. Virginia Hosp. Ass'n*,
    496 U.S. 498, 110 S.Ct. 2510 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes**

N.Y. Soc. Serv. L. § 369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

N.Y. Soc. Serv. L. § 367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9

N.Y. Soc. Sen. Law § 367-b  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

N.Y. Soc. Sen. Law § 363-b  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.Y. Social Services Law § 145-b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9

**Federal Regulations**

42 C.F.R. 433.32  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 C.F.R. § 443.33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. 1396-b(q)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

42 U.S.C. § 1396-r8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. § 1396-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

**State Regulations**

18 N.Y.C.R.R. § 515(b)(4) and (5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## PRELIMINARY STATEMENT

Nothing in defendants' consolidated reply alters the fact that Suffolk County, like all New York counties, is statutorily required to pay for 25% of the Medicaid pharmacy costs attributable to its Medicaid recipients.  *See* N.Y. Soc. Serv. L. § 367-b ("Each social services district [i.e. Suffolk] shall be responsible for paying to the state a share of the state's expenditures for claims of providers of medical assistance attributable to such district, which shall be equal to the share of such district would have borne [or 25%] after reimbursement from state and federal funds in accordance with section [368-a] of this Chapter, had the expenditure been made by such district.") (emphasis added).  This county obligation appears throughout the New York Social Services Law.  *See, e.g.*, N.Y. Soc. Serv. L. § 363-b(2) ("Payments required to be made by the department [on behalf of the state] to the secretary of health, education and welfare [now Health and Human Services] for his services under such agreement shall be borne by and shared equally between the social services district [i.e. Suffolk] to which such payments are attributable and the state") (emphasis added).

Nothing in defendants' reply alters that the federal government reviewed and expressly approved New York's Medicaid Plan, including that portion which mandates that every New York county pay 25% of pharmacy costs attributable to the county's Medicaid recipients.  *See* 42 U.S.C. § 1396a(a) and (b); 42 C.F.R. 433.32 (at 79-29); 42 C.F.R. § 443.33 (at 79-29; 80-84).  Defendants ignore this point entirely.

Nothing in defendants' reply makes contact with the fact Suffolk has satisfied the tests for standing to assert its claims.  *See* Suffolk Opp. at 2 and 18-19.[1]  Indeed, defendants ignore Suffolk's standing argument entirely in their consolidated reply, concluding instead and without any authority that

---

[1]     References to Suffolk's Memorandum of Law In Opposition To Defendants' Consolidated Motion To Dismiss appear as "Suffolk Opp. at __."

Suffolk is "too attenuated to bring this action." Con. Reply at 1. The law says otherwise. Given that Suffolk has been injured by having to pay excessive Medicaid pharmacy costs as a result of defendants' misconduct, and that a favorable decision will redress Suffolk's injury, Suffolk's standing cannot reasonably be disputed. *See* Suffolk Opp. at 2, and 18-19.

Defendants also ignore entirely Suffolk's satisfaction of federal and state standards regarding when the court will recognize an implied right of action. Why? Because it is clear that Suffolk, as a Medicaid payor, is within the class of entities the federal rebate statute was designed to protect, and Suffolk's claims further the purpose of the legislative scheme. *See* Suffolk Opp. at 5, 20-22, 25-26. Defendants say "virtually every court" has refused to imply a private right of action within the Medicaid and Medicare statutes (Con. Reply at 8), but none of the cases they cite involve a government payor/participant in the relevant statutory scheme. *See* Point I (B), *infra*. In such cases, courts have in fact recognized a private right of action. *Id*. So should this court here.

Defendants endeavor to dismiss the concept of "cooperative federalism" (Con. Reply at 2) in the Medicaid context, but this (a) makes no contact with the fact that the federal rebate statute expressly authorizes "local agencies administering Medicaid," such as Suffolk, to pursue "all reasonable measures" to preserve the integrity of the Medicaid system, *see* 42 U.S.C. § 1396a(a)(25)(A); (b) ignores that the federal rebate statute no where provides for exclusive federal enforcement (*see* Suffolk Opp. at 19-20); and (c) disregards entirely that New York counties have an express right to bring this action under N.Y. Social Services Law § 145-b(2). *See* Suffolk Opp. at 27-28 and Point IV *infra*.

Defendants' implied preemption arguments fare no better to identify any conflict whatever between Suffolk's claims and the relevant federal Medicaid rebate statutes. To the contrary, Suffolk's

proactive filing of this litigation is entirely consistent and compatible with Congress's mandate that Medicaid payors at all levels of the "cooperative federalism" scheme vigilantly address "all aspects of fraud in connection with any aspect of the provision of Medicaid assistance." 42 U.S.C. § 1396b(q)(3) (emphasis added).

Defendants sidestep that Suffolk has satisfied the independent pleading requirements of its claims – trying instead the import the heightened pleading requirements of Rule 9(b) into each of Suffolk's Claims.   As set forth in Suffolk's opposition brief at 2, 27-36, *e.g.*, 9(b) does not implicate the majority of Suffolk's claims.  Even if it did, Suffolk has satisfied 9(b) and this court's May 13, 2003 directive by identifying the specific drugs paid for and the allegedly fraudulent AWP for each.[2]   *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, 263 F.Supp.2d 172, 194 (D.Mass. 2003), AC at ¶¶ 122-311, and Exhibit A.   Similarly, defendants' protests respecting the particularity of Suffolk's rebate claims continue to ignore well settled law that where the facts are exclusively within the defendants' possession (as Best Price data concededly is), a high degree of pleading precision is not required.  *See United States ex rel Franklin v. Parke-Davis*, 147 F.Supp.2d 39, 47 (D. Mass 2001). Rather, as this Court has made plain, Suffolk need only present a general outline of the general scheme to defraud and the "allege[d] circumstances of the fraud." *Id*. at 46.   This Suffolk has done.  *See* Suffolk's Specific Defendant Sur-Reply at I (D).  Suffolk also has noted that several defendants already have paid substantial sums to settle Best Price/rebate claims.  *Id*.

---

[2]        Suffolk has satisfied 9(b) for brand name or multi-source drugs.  *See* AC at ¶¶ 122-311.  That the alleged scheme implicates multi-source drugs as much as brand name drugs. Futher, this issue is discussed in Suffolk's Specific Defendant Sur-Reply at I (A) and I (E), *See also* AC at ¶¶ 94-99.

Defendants  assert that Suffolk's allegations respecting motive make no sense in the Medicaid context, but this ignores that Medicaid is not insulated from the motives that inspire the fraud elsewhere.  Whether or not there is an economic incentive to inflate AWP as it impacts Medicaid reimbursements (a fact disputed at this time), there undisputably is a motive to market the spread in the context of PBMs and Medicare Part B drugs.  *See In re AWP Litig.*, 263 F.Supp.2d at 179-180, ("[D]efendants market the same pricing and reporting "spread" to PBMs that they do to individual health care providers serving Medicare patients.")  In addition, it matters not -- particularly at this stage -- why defendants inflate (and defendants concede that they do, *see In re AWP Litigation*, 263 F.Supp.2d at 194, "Defendants concede that the 'national average wholesale price' figures ... are not the actual average of wholesale prices they charge for their drugs") the reported AWP.  It is enough that the AWPs are falsely inflated, and Suffolk is damaged as a result.

Finally, a word on causation and inquiry notice.  Defendants continue to insist that Suffolk's claims are barred because the state Medicaid reimbursement formula[3] reveals knowledge that AWP was inflated and this breaks the causation link between defendants' misconduct and Suffolk's injury.  The argument is inappropriate at this stage.  It contradicts Suffolk's allegations, and raises disputed issues of fact.  It fails also on the merits as defendants' own papers  acknowledge that the Medicaid reimbursement rate is a political compromise, Con. Mem. at 10, and Suffolk's allegations demonstrate a spread in excess of 12%.  AC at ¶¶ 122-311, Exhibit A.  Finally, the argument is irrelevant entirely to defendants' willful noncompliance with their statutory Medicaid obligations.

---

[3]      Now AWP - 12%; until May 15, 2003 AWP - 10%.  *See* N.Y. Soc. Serv. Law §367-a(a)(b)(ii).

**ARGUMENT**

## I. SUFFOLK'S FEDERAL REBATE CLAIM

### A. Defendants Seemingly Have Abandoned Their Argument that Suffolk Lacks Standing to Assert A Federal Rebate Claim

Defendants' consolidated reply is utterly silent on Suffolk's standing to assert a cause under the Federal Rebate Statute, 42 U.S.C. § 1396 r-8.  And so it should be.  As made plain in Suffolk's Opposition Brief, Suffolk satisfies the constitutional standing requirement that it suffered actual injury (overpayment for Medicaid pharmacy costs, AC at ¶¶ 315-321) as a result of the putatively illegal conduct of defendants (AC at ¶¶ 4, 18, 315-321), that the injury fairly can be traced to the challenged action (AC at ¶¶ 1, 17, 323-327) and is likely to be redressed by a favorable decision here (AC at ¶¶ 317, 321).  *See* Suffolk Opp. at 18-19, citing *McInnis-Misenor v. Main Med. Ctr.*, 319 F.2d 63, 68 (1st Cir. 2003).

### B. Suffolk's Implied Right Under the Federal Rebate Statute

Defendants' response to Suffolk's satisfaction of all criteria for when a private right of action should be implied falls short.  First, they say that no other court has implied such a right under the Federal Rebate Statute  42 U.S.C. § 1396r-8.  *See* Con. Reply at 8.  Even if true, it is besides the point. None of defendants authorities (Con. Reply at n.10) prohibit Suffolk's claim, nor does the express language of the statute.  Under such circumstance it is appropriate to consider the four-part test set forth in *Cort v. Ash*, 422 U.S. 66 (1975), regarding when it is appropriate to imply a private right of action under a federal statute.  Suffolk satisfies this test.  *See* Suffolk Opp. at 20-22.

Defendants say there is no evidence that Congress intended such a remedy, but this ignores that the statute nowhere limits enforcement of the Medicaid laws to the Secretary.  *Id*. at 19-20.  To the contrary, 42 U.S.C. § 1396r-8(b)(3)(C)(ii)(c) expressly says that the Secretary's powers are "in addition

to other penalties as prescribed by law" (emphasis added).  *See also* Suffolk Opp. at 19.  Defendants'
argument that this language refers only to the multiple penalties the secretary alone may pursue is belied by
the statute itself and made with no authority whatsoever.  Con. Reply at 8-9.

Defendants claim that "virtually every court interpreting other provisions of the Medicaid
and Medicare statutes has refused to imply a private right of action."  Con. Reply at 8,  but every case they
cite was brought not by a government entity like Suffolk, but by a private plaintiff.  *See Solter v. Health
Partners of Philadelphia* 215 F.Supp.2d 533 (E.D.Pa.2002) (dental patient); *Estate of Ayres v. Beaver*,
48 F.Supp.2d 1335 (M.D.Fl.1999) (nursing home residents); *Cronin v. U.S. Professional Consultants*,
2001 WL 256044 (E.D.Pa.2001) (podiatrists); *Brogdon v. National Healthcare Corp.*103 F.Supp.2d
1322 (N.D.Ga.2000) (nursing home residents); *Harding v. Summit Medical Center*, 41 Fed. Appx. 83
(9th Cir.2002) (medicaid beneficiary).

Defendants' own cases make plain that this distinction is significant.  *See, Harding*, 41 Fed.
Appx. at 84 (denying a private right of action because, "Medicaid legislation is primarily directed at the
participating states."); *Cronin* 2001 WL 256044 at *3 (private remedy denied, statute provides for
government enforcement.); *Solter*, 215 F.Supp.2d at 540 ("It is clear . . . that, rather than focusing on the
individual patient, the legislation is primarily directed at the role of participating *States* . . .")[4]

Defendants ignore entirely *U.S. v. Blue Cross and Blue Shield of Michigan*, 726 F.Supp.
1517, 1521 (E.D.Mich.1989), which recognized an implied right of a governmental entity to bring an action

---

[4]        Notably, in two of defendants' cases, it was defendants, not plaintiffs,  who sought to imply a private right of
action in order to remove to federal court. *See Solter v. Health Partners of Philadelphia*, 215 F.Supp.2d 533, 534
(E.D.Pa.2002); *Estate of Ayres v. Beaver*, 48 F.Supp.2d 1335, 1338 (M.D.Fl.1999).  The *Solter* court acknowledged that
participants in the Medicaid scheme may have a private right to sue but refused to imply such right then because of a
presumption against federal jurisdiction. *Solter* at 539.  This Court need not consider such presumption here, as its
jurisdiction over the current action is undisputed.

under a Medicaid or Medicare statute.  *Blue Cross* is not the only instance of a court implying such right.  *See*, *e.g.; Oregon Ass. of Homes for the Aging, Inc. v. State of Oregon*, 884 F.Supp. 382 (D.Or.1994) (implied right under Boren Amendment for providers to sue state for reimbursement); *Roberson v. Wood*, 464 F.Supp.983 (E.D.Ill.1979) (nursing home patients had implied right of action to prevent their transfer).  Indeed, the defendants' own *Brogdon* decision states, it is "clear that these programs [Medicaid and Medicare] may confer certain federal rights." *Id.* at 1330 (emphasis added) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510 (1990)).

## II.     SUFFOLK'S CLAIM UNDER N.Y. SOC. SERV. LAW § 367 IS PROPER

### A.     Defendants Still Identify No Basis For Preemption

Defendants still have identified no conflict whatsoever between Suffolk's claims and the federal rebate statute, nor could they.   In pursuing its rebate claims, Suffolk is merely carrying out the duty that Congress assigned for Medicaid participants to pursue "all aspects of fraud in connection with any aspect of the provision of Medical assistance. "  42 U.S.C. § 1396b(q)(3).  No court ever has read the Federal Medicaid Act as preventing a state or county (an equally obligated payor given New York's statutory scheme) from seeking a remedy for Medicaid fraud.  The Federal rebate statute was enacted expressly to "reduce the cost of Medicaid and . . . prevent pharmaceutical manufacturers from charging the government and taxpayers above-market prices for Medicaid drugs." *Pharmaceutical Research Mfrs. of Am. v. Thompson*, 251 F.3d 219, 225 (D.C.Cir. 2001).  Suffolk's claims are entirely consistent and compatible with this purpose. *See* Suffolk Opp. at 23-25.

### B.   Defendants Make No Contact With Suffolk's Satisfaction of Three Prong Test For An Implied Private Rights of Action Under N.Y. Soc. Serv. L. § 367

Defendants only other response to Suffolk's N.Y. Social Services Law § 367 claim is that the statute "creates no rights in anyone." Con. Reply at 10. But the statute establishes the Medicaid payment scheme, and places affirmative obligations on defendants respecting their Medicaid obligations. Suffolk alleges that defendants did not comply with those obligations. AC at ¶¶ 81-93, *e.g.*

The question then is whether Suffolk in particular has a right to state a cause. It does. Suffolk has satisfied the three prong test for when an implied right of action can be recognized, *see* Suffolk Opp. at 25-26. Defendants do not even respond to the point.

### III.   SUFFOLK'S CLAIM UNDER 18 N.Y.C.R.R. § 515.2(b)(4) AND (5)

Suffolk's claim under 18 N.Y.C.R.R. § 515(b)(4) and (5) is in no way affected by the passage of § 367-b because that same statute affirms Suffolk's obligation to pay 25% of its pharmacy costs. Department of Health Regulation 18 N.Y.C.R.R. § 515.2(b)(4) and (5) concerns the wrongful conversion of such payments and nowhere limits or excludes Suffolk's right of enforcement. § 367-b is silent on the point. Thus, defendants' argument that the regulation is somehow rendered unenforceable by the County is rank *ipse dixit*, and must fail.

### IV.   DEFENDANTS' N.Y. SOCIAL SERVICES LAW § 145-b ARGUMENT IS PLAIN WRONG; SUFFOLK PROPERLY MAY ASSERT THIS CAUSE.

Defendants contend that N.Y. Social Services Law § 145-b is a "general false claims provision" "not limited to Medicaid." Con Reply at 12. Nothing in the statute is so delimiting. To the contrary, §145-b provides that it is "unlawful for any person . . . knowingly by means of a false statement or representation . . . to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter." N.Y. Social Services Law § 145-b(1)(a).

The statute expressly states that it concerns fraudulent acts including those committed by the provider or supplier of services or supplies in the program of "<u>medical assistance</u>" . . . and "<u>title XIX of the federal social security act</u>."  N.Y. Social Services Law § 145-b. (Emphasis added).  The statute expressly states that "the <u>local social services districts</u> or the state shall have a right to recover civil damages." (N.Y. Social Services Law § 145-b(2)) (emphasis added).  Moreover, a review of the legislative history makes plain its <u>intended</u> application to Medicaid.

> "This bill provides for financial penalties in cases of fraud or misrepresentations relating to reimbursement to any person or business for services or supplies provided to <u>Medicaid recipients</u>."  Bill Jacket, S. 1975, c.659, Budget Report On Bills at 1. (emphasis added)

> "This bill, with its stiff financial deterrents, is a reaction to recent disclosures of fraud in connection with Medicaid over-reimbursement and could serve to underscore the State's commitment to the reduction of Medicaid costs."  *Id* at 2.

> The statute is to "provide a significant financial deterrent to the practice of <u>overstating or falsely stating figures in cost or rate setting forms</u> used for Medicaid reimbursement."   Bill Jacket, S. 1975, c.659, Governor's Program Bill at 1. (emphasis added).

> Thus, to say that § 145-b "has no application in this case" (Con Reply at 12) is wishful

thinking entirely, and *contra* to the express language of the statute and its legislative history.

> Defendants only response is that the provisions of N.Y. Soc. Serv. § 369 do "not authorize

a county to bring suit against third parties like drug manufacturers".  (Con Reply at 11).  But § 369 is irrelevant to Suffolk's § 145-b claim.  Rather, § 369 was passed in order to limit when counties may bring suit for the recoupment of Medicaid benefits incorrectly paid to the recipient.  "It is obvious that the dominant purpose of the statute [§ 369] is to protect a spouse or permanently disabled child from loss of support during recipient's lifetime and to allow the recipient to provide for them after death."  *Matter of*

*Estate of Burstein*, 160 Misc.2d 900, 611 N.Y.S.2d 739 (N.Y. Sur. 1994). If, as Defendants contend, the state did not intend for the counties to have a general right to prosecute Medicaid fraud, there would have been no reason to pass the limiting § 369.

Defendants attempt reliance on N.Y. State Comptroller, Op. No. 80-294 (Sep. 12, 1980), (Con. Reply at 12) for the proposition that N.Y. Soc. Serv. Law § 367-b "preempt[ed] the prior procedures under state law." Con. Reply at 12. Incorrect. N.Y. Soc. Serv. L. § 367-b centralized procedures for processing of Medicaid payments. It did not alter Suffolk's obligation to pay 25% of its pharmacy costs. To the contrary, it reinforced such county payment obligation. *See* § 367-b ("Each Social Service District shall . . . pay . . . a share of the state's claims attributable to such district"). Consistent with this, the opinion on its face explains that § 367-b has only "sanctioned the preemption" of "procedures relating to the payment of medicaid claims" which are inconsistent with the Medicaid Management Information System (MMIS). N.Y. State Comptroller, Op. No. 80-294 (Sep. 12, 1980). § 145-b is not implicated. § 145-b still provides for penalties where Medicaid payments are impacted by fraud, as Suffolk alleges here.

Finally, defendants make the conclusory claim to "have shown that Section 145-b ... is preempted by federal law." Con. Reply at 11. They have done no such thing. No federal statute has been cited for explicit preemption in this case, nor have defendants shown any evidence of implied preemption. The Supreme Court has made plain that it will not preempt Suffolk's claims under such circumstance. *See Pharmaceutical Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 75-77(1st Cir. 2001) (the "strong medicine" of preemption within the jointly administered state-federal Medicaid program is disfavored), *aff'd sub nom.,* 123 S.Ct. 1855 (2003).

## V.    DEFENDANTS MAKE NO CONTACT WITH SUFFOLK'S THIRD PARTY BENEFICIARY ARGUMENT.

Suffolk properly has alleged its third party beneficiary status under the rebate contracts. *See* Suffolk Opp. at 28-29.  Defendants do not argue otherwise, but state that Suffolk cannot "point this Court to any publicly available evidence of intent by Congress or the secretary to create third-party rights in the rebate agreement at the county level".  Con. Reply at 6.  Of course, this is not the time for evidence but, in any event, probative is (a) that Medicaid depends on "cooperative federalism" and "enforcement at every level" Suffolk at 2-4, 18-22, 23-26, *e.g.*; and (b) the rebate act does <u>not</u> provide for exclusive federal enforcement.  *See also* Suffolk Opp. at 28-31.  Moreover, the case law does not support the requirement defendants seek to impose.

For example, in *Schauerman v. U.S.*, 30 Fed. Cl. 420 (1994), the court expressly found that in determining third party beneficiary status, the only required element was whether the contracting parties intended the plaintiff to benefit thereby.  The statute governing the contracts at issue here is the Federal Rebate Act, undisputably enacted to provide cost savings to the government entities who pay for Medicaid.  *See Pharmaceutical Research and Mfrs. Of America v. Walsh*, 123 S.Ct. 1855, 1860 (2003).  The Rebate agreements clearly intend to benefit such entities.  The *Schauerman* court expressly rejected the notion that defendants advance here, *i.e.* that contract must reflect the intention of the parties to give the claimant the direct right to compensation or to enforce that right against the promisor.  Only when the contract was intended to benefit the public at large did such stringent requirement come into play. *Schauerman* at 430.  Clearly, Suffolk is not a member of the general public but a member of the very class the rebate statute was enacted to benefit.  *Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 596 (1985) is also instructive.  There, plaintiffs sued the federal government for breach of a

contract that required the government to make necessary repairs to a high school. The court found that the underlying purpose of the statute enabling the contract was to benefit Indian children with better education. *Id*. at 602. As such, the children were intended beneficiaries of the construction contract and entitled to sue. *Id.* Notably, as in this case, there was no particular language in the enabling statute at issue in *Busby School* that expressly showed such an intent. *Id.*

Similarly, in *McNeil v. NYC Housing Authority*, 719 F.Supp. 233 (S.D.N.Y.1989), plaintiffs sued the government (N.Y.C. Housing Authority) for revoking their landlord's eligibility to receive housing subsidies. The court limits its holding to the facts, but in footnote 13 says, "Even if the landlord and NYCHA could somehow close their eyes to [the fact that tenants would benefit], the tenant would still be in fact the intended third party beneficiary. 719 F.Supp. at 249. Indeed, as the court found, citing *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir.1981), "if tenants are not the primary beneficiaries of a program designed to provide housing assistance . . . the legitimacy of the multi-million dollar Section 8 program is in grave doubt." *Id.* at 261. Likewise here, if Suffolk, as a Medicaid payor, is not a primary beneficiary of a Federal Rebate Act designed to reduce Medicaid payor expenses, the legitimacy of the Rebate Act is grave doubt.

In any event**,** determining intent to benefit a third party is not properly resolved on a motion to dismiss. *See Donlyn Distribution, Inc. v. BP Amoco Corp.*, 2003 WL 22144403 at *3 (N.D.Ill. 2003). ("Summary judgment is the more appropriate motion to resolve this type of issue").

## VI.    SUFFOLK'S GENERAL BUSINESS LAW § 349 CLAIM IS PROPER

Even were defendants correct that Suffolk must satisfy Rule 9(b) in pleading its General Business Law ("GBL") § 349 claim (and they are not), dismissal would be improper because Suffolk has

satisfied 9(b) and this Court's May 13, 2003 directive.  *See* Suffolk Opp. at 36-38; AC at ¶¶ 122-311, and Exhibit A.

Defendants misrepresent *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325 (S.D.N.Y. 2002).   The case did not import the heightened pleading requirements of 9(b) to a GBL § 349 claim.  Rather, it dismissed plaintiff's § 349 claim because plaintiff did not allege that the public relied on the insurers' alleged misrepresentations, or that such misrepresentations were intended to induce the public to rely on them. *Id.* at 331.   Here, Suffolk expressly alleges reliance–statutorily required in fact- on defendants' misrepresentations on AWP, and that defendants intended such reliance. AC at ¶¶ 118, 314; Suffolk Opp. at 32..

Defendants' also cite *Rey Willis v. Citibank, N.A.*, 2003 WL 21714947 (S.D.N.Y. July 23, 2003), a recent decision from Judge Scheindlin of the  Southern District of New York.   The decision is a dramatic departure from well-settled New York law that GBL § 349 claims do not implicate 9(b).  *See* Suffolk Opp. at 32-33; *Gaidon v. Guardian Life Insurance Company of America*, 94 N.Y.2d 330, (N.Y. 1999) (GBL § 349 contemplates actionable conduct that does not rise to level of fraud); *Binder v. National Life of Vermont*, 2003 WL 21180417 at *5 (S.D.N.Y 2003) (GBL § 349 extends to misleading practices that would not rise to the level of common-law fraud"); *Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp.2d 240 (S.D.N.Y 2001), ("Because a § 349 claim may rest on conduct that does not constitute fraud, Fed.R.Civ.P. 9(b)'s requirement that the circumstances constituting fraud be pled with particularity does not apply"); *Stutman v. Chemical Bank*, 95 N.Y.2d 24 (N.Y. 2000), "A deceptive practice, however, need not reach the level of common-law fraud to be actionable under section 349.") In any event, Suffolk satisfied 9(b).  *See* Point VIII, *infra*.

Finally, there is no need to reserve decision on Suffolk's GBL § 349 claim as defendants suggest at note 8.  True, Suffolk cited *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris U.S.A., Inc.*, 344 F.2d. 211, 219-220 (2d Cir. 2003), in its opposition and the question of plaintiff's standing in that case now has been certified to the New York Court of Appeals, *see* 2003 N.Y. Slip Op. 17896, 2003 WL 22455503 (N.Y. Oct. 30, 2003), but Suffolk does not present a similar standing issue. Plaintiff's cause in *Blue Cross* was "derivative of injuries to third parties and . . . therefore, essentially indirect." *Id.* at 219.  Suffolk's injury is derivative to no one.  Suffolk has overpaid for Medicaid as a result of defendants' misconduct, such overpayment was entirely foreseeable and unavoidable, and the damages Suffolk seeks are its own.  AC at ¶¶ 315-318, *e.g.*

## VII.   SUFFOLK'S UNJUST ENRICHMENT CLAIM IS PROPER.

Defendants' argument respecting Suffolk's unjust enrichment cause ignores that Suffolk's allegations satisfy the pleading standards for an unjust enrichment cause and are controlling on this motion. *See* Suffolk Opp. at 34.  The argument also ignores the well settled principles (articulated even in defendants' own case law) that the manner of defendants' alleged unjust enrichment may be quantified in a number of ways, "either by receipt of money or its equivalent or by being saved from expense or loss." *Id.* at 35, *citing Barrata v. Kozlowski*, 94 A.D. 2d 454, 464 N.Y.S. 2d 803, 870 (2d Dep't 1983).  In this case, that defendants manipulated AWP already is beyond dispute; Suffolk's injury as a result is a focus of the complaint; and the many ways in which defendants' benefitted remain to be seen.  It is not an issue for this motion.

Defendants argue that Suffolk lacks standing for this cause.  Again, this ignores Suffolk's statutorily required Medicaid payment obligations and its statutorily required reliance on defendants reporting of AWP, and compliance with rebate statutes.  *See* AC at ¶¶ 314, 315, *e.g.*

None of defendants' authorities precludes Suffolk's claim.  *McGrath v. Hilding*, 41 N.Y.2d 625 (N.Y. 1977), (Con. Reply at 7) nowhere says a cause for unjust enrichment <u>requires</u> a reciprocal relation of trust and fidelity.  *Id.* at 631.  The cause requires instead that one party is enriched unjustly.  *Id.* at 629.  Suffolk alleges that defendants are.  AC at ¶¶ 407-408.  The cause in *Heller v. Kurz*, 228 A.D.2d 263, 643 N.Y.S.2d 580 (1st Dep't 1996) (Con. Reply at 7), was dismissed because the complaint there failed to allege that defendants were unjustly enriched.  "While the individual defendants have been enriched by the sale of shares they owned in the corporation.  The facts pleaded in the complaint are insufficient to support the conclusion that their enrichment was unjust." *Id.* at 581.  Suffolk, by contrast, alleges defendants unjust enrichment at Suffolk's expense.  AC at ¶¶ 407-408.  *Rivkin v. Coleman*, 978 F.Supp.539 (S.D.N.Y. 1997), carries no legal freight for defendants either, confirming merely that whether an enrichment is unjust is a question of fact not properly resolved on a motion to dismiss.  *Id.* at 544.

## VIII.   SUFFOLK HAS SATISFIED RULE 9(b)

Suffolk has identified the specific drugs it paid for (both brand and multi-source) and the allegedly fraudulent AWP for each.  AC at ¶¶ 122-311 and Exhibit A thereto.  This satisfies Rule 9(b) and this Court's May 13, 2003 directive.  *In re AWP Litig.* at 194.

Defendants' complaints regarding the particularity of Suffolk's rebate allegations are addressed in Suffolk's Sur-Reply in further opposition to the defendants' specific arguments.  *See* Suffolk Specific Sur-Reply at 7.  Suffolk's Specific Sur-Reply responds also to defendants' 9(b) comments

regarding government knowledge . *Id*. at 2-7. Finally, Suffolk's allegations respecting multiple source drugs are addressed in Suffolk's initial consolidated opposition brief.  *See* Suffolk Opp. at 7.

**CONCLUSION**

For all the foregoing reasons, defendants' consolidated motion to dismiss should be denied in its entirety.

Date:   December 1, 2003
        New York, New York

**KIRBY McINERNEY & SQUIRE, LLP**


By:     s/ Joanne M. Cicala
        Roger W. Kirby
        Joanne M. Cicala (admitted *pro hac vice*)
        Aaron D. Hovan (admitted *pro hac vice*)
        830 Third Avenue
        New York, New York 10022
        (212) 371-6600

        COUNSEL FOR THE COUNTY OF SUFFOLK