UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) CIVIL ACTION: 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) Judge Patti B. Saris ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE
ORDER REGARDING SUBPOENAS TO PUTATIVE CLASS MEMBERS**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND...................................................................................2

III.   ARGUMENT.............................................................................................................6

      A.     The Court Must Approve Discovery Of Absent Class Members ..................................6

      B.     Defendants Cannot Meet The Heavy Burden Of Demonstrating That The Discovery
            They Seek Of The Health Plans Should Be Permitted ..................................................7

            1.     Defendants Cannot Demonstrate that Discovery of the Health Plans is
                Absolutely Necessary and Cannot be Obtained from Other Sources ................9

            2.     Defendants Cannot Demonstrate that their Subpoenas are Not Overbroad
                and Oppressive.............................................................................................11

            3.     There are No Safeguards in Place with Regard to Defendants'
                Communications with These Absent Class Members ......................................13

IV.   CONCLUSION........................................................................................................15

## I.     INTRODUCTION

This motion requests that the Court remedy certain ongoing discovery violations by
defendants in this case.  Contrary to clear federal authority, defendants are seeking to conduct
document discovery of numerous absentee class members *as a matter of course* – that is, without
*first* seeking this Court's approval and being required to present cogent and compelling
justifications for their inquiries.  Almost all federal courts strictly forbid such a practice.
Moreover, defendants have also begun unilaterally scheduling depositions of absentee class
members as a matter of course, which constitutes an even more egregious violation of discovery
rules.

Defendants have served 29 subpoenas on Health Plans who are absent class members.
The subpoenas are invasive, seeking a dizzying array of information in 26 requests that will have
no bearing on the case and impose undue burdens on the Health Plans.  For example, Request
No. 11 in the subpoena to AARP Health Care Options demands "[a]ll communications [with]
providers or pharmacies relating to reimbursement, payment or prices of any subject drug,"
which would call for the production of every single reimbursement request received from, and
payment made to, all doctors and pharmacies over an eleven-year period for every employer,
fund and, conceivably, individual to whom this absent class member provides medical or health
insurance benefits.

Defendants' subpoenas to the Health Plans run afoul of class action concepts because
they require affirmative conduct on the part of companies that are absent and may never be
parties to the action.  The MANUAL FOR COMPLEX LITIGATION recognizes that discovery of
absent class members "should be permitted only to the extent necessary and should be carefully
limited to ensure that it serves a legitimate purpose and is not used to harass either the class
representatives or the class members."  MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 at
231 (1995) (hereafter "MANUAL").  Thus, discovery of putative class members is generally not

permitted without leave of court. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *Baldwin & Flynn v. National Safety Assocs.,* 149 F.R.D. 598, 600 (N.D. Cal. 1993). If any discovery is to be permitted at all, "*it should be sharply limited and allowed only on a strong showing of justification*." MANUAL, § 30.232 at 232 (quoting 8 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2171 (2d ed. 1994)) (emphasis added). Accordingly, courts generally require that the proposed discovery (i) be *absolutely necessary, see, e.g., Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); (ii) be *unavailable elsewhere, see, e.g., Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974), and (iii) will not subject absent class members to *undue harassment* or excessive taxing of their resources, *see, e.g., Robertson v. National Basketball Assoc.*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975). As detailed below, defendants cannot meet a single one of these requirements, let along do so with the "strong showing" that is required.

Plaintiffs now seek both retroactive and proscriptive relief and request that the Court issue an order that: (i) quashes all of defendants' currently pending subpoenas/subpoenas duces tecum addressed to, or served on, absent class members; (ii) requires defendants to make a full accounting of all communications that they have had with each putative class member in regard to these subpoenas (or any other matter related to the litigation); and (iii) declares that, before pursuing any further discovery of absent class members, defendants must in good faith meet and confer with plaintiffs' counsel and, failing agreement on the scope of any such discovery, present a proposal for the Court's consideration.

## II.   FACTUAL BACKGROUND

Defendants have recently served 43 subpoenas on "Third-Parties" in this action in approximately 19 different federal districts. These Third-Parties can be segregated into four categories: (i) Medical Plan Processors and Benefit Consultants; (ii) Claims Administrators; (iii) Medical Plan Auditors; and (iv) Health Plans. The names and addresses of each Third-Party are set forth in Exhibit A to the Declaration of Thomas Sobol in Support of Plaintiffs' Motion for a

Protective Order ("Sobol Declaration") hereto.  Exhibit B to the Sobol Declaration contains a copy of four subpoenas, one from each of the three categories.

The information that defendants seek from each category of subpoenaed Third-Party is summarized as follows:[1]

*Medical Plan Processors and Benefit Consultants*

- All contracts with Health Plans that relate to prescription drug benefits.
- Reports and recommendations provided to Health Plans and related to PBMs.
- All documents related to AWPs.
- Organizational charts.

*Claims Administrators*

- Contracts with Plans.
- All documents related to claims processing policies and procedures.
- Benefit interpretive guidelines.
- All documents related to AWPs.
- Organizational charts.

*Medical Plan Auditors*

- All documents relating to any PBM audit report conducted for any Health Plan.
- All correspondence with a Health Plan regarding reimbursement for pharmaceuticals.
- All promotional literature relating to PBM audits.
- All documents relating to AWPs.
- Organizational charts.

---

[1] Defendants' subpoenas are broader than this summary indicates, and plaintiffs' intent here is to highlight only the more salient categories of information that defendants seek.  Of course, the Court can review each individual demand for documents by reviewing the subpoenas attached at Exhibit B to the Sobol Declaration.

*Health Plans*

- All documents relating to AWPs; the setting of reimbursement and payment rates; costs and reimbursement to providers; and purported awareness of the difference between costs and reimbursement.

- All documents related to processing policies and procedures.

- All documents related to all payments made based in whole or in part on AWP and all communications relating to reimbursements.

- All documents related to the decision to rely on drug pricing information from a publisher.

- Documents from any publisher.

- All documents related to AWP's; the difference between AWP and payments made; and AMP, WAC, MAC, EAC, Best Price.

- All documents related to contractual relationships with PBMs, third-party administrators, consultants, and auditors.

- All documents related to subject drugs.

- All documents that identify persons involved in contractual relationships with PBMs.

- All documents regarding Plan profit analyses.

- All documents relating to internal and external investigations, studies, analyses or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug.

- All filings with any state or federal governmental entity and relating to AWP.

- All documents from CMS, HHS, or any other federal agency regarding the pricing of drugs.

- All documents produced in any litigation, government investigation, or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

- Organizational charts.

The majority of these subpoenas – 29 – have been directed to the Health Plans, who fall within the proposed class definition in this case:[2]

---

[2] Plaintiffs have reserved their right to modify the Class Definition based on class related discovery and/or merits discovery.

*AWP Payor Class:*

All persons or entities who, for purposes other than resale and during the Class Period, paid any portion of the purchase for a prescription drug manufactured by a Defendant Drug Manufacturer (as identified in Appendix A) at a price calculated by reference to the published AWP during the Class Period.

*Sub-Class:  The PBM Third-Party Payor Class:*

All Third-Party Payors that, during the Class Period, contracted with a PBM to provide to its participants a prescription drug manufactured by a Defendant Drug Manufacturer and identified in Appendix A.

AMCC ¶ 595. The Health Plans subpoenaed by defendants are members of this putative class, that is, they make drug purchases based on a price calculated by reference to the published AWP. And it is highly likely that they are also members of the putative sub-class because most Health Plans contract with a PBM to provide their participants with prescription drugs manufactured by a defendant.

Thus, defendants' Health Plan subpoenas seek discovery of absent class members. Shortly after defendants served their initial round of Third-Party subpoenas, plaintiffs' counsel contacted defendants with concerns about (i) the scope of the drugs covered by the subpoenas (given the Court's prior rulings limiting discovery to a handful of drugs); and (ii) the fact that much of the discovery sought was directed to absent class members and that defendants had chosen to seek the discovery without first obtaining approval of the Court, as required.  Sobol Declaration at Exhibit C.  In response, defendants alleviated the first concern by clarifying that, with respect to discovery related to specific drugs, the subpoenas covered only those drugs for which the Court had authorized discovery.  However, as to counsel's second concern, defendants denied, without explanation, that they were taking discovery of absent class members and, in any event, indicated that they would unilaterally proceed with the discovery without first providing the Court with an opportunity to consider whether discovery into absent class members was appropriate.  Sobol Declaration at Exhibit D.  Hence, the necessity of this motion.

- 5 -

## III.    ARGUMENT

### A.    The Court Must Approve Discovery Of Absent Class Members

Courts have rather uniformly held that absent class members are not amenable to discovery as a matter of course.  The Supreme Court has held that under the intent of CR 23, absent class members are "passive beneficiaries" to litigation, and are entitled to sit back and await results without undue involvement or bother. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-11 (1985) ("Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything.  He may sit back and allow the litigation to run its course, content in knowing there are safeguards provided for his protection.").

Not surprisingly, then, courts have recognized that "[t]he use of discovery devices against nonrepresentative class members raises the troublesome conflict between 'the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense.'" *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975) (citing Comment, *Making the Class Determination in Rule 23(b)(3) Class Actions*, 42 FORDHAM L. REV. 791, 811 (1974)).  Courts have recognized that the very nature of Rule 23 affords absent class members some protections from the burdensome aspects of the litigation:

> The class action . . . is designed to provide a fair and efficient
> procedure for handling claims . . . where it is fair to conclude that
> the representative parties will fairly and adequately protect the
> interests of the class.  It is not intended that members of the class
> should be treated as if they were parties plaintiffs subject to the
> normal discovery procedures, because if that were permitted, then
> the reason for the rule would fail.

*Fischer v. Wolfinbarger*, 55 F.R.D. 129, 132 (W. Ky. 1971); *see also Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D. Ga. 1972) ("The usefulness of Rule 23 would end if class members could be subjected to Rule 33 and forced to spend time, and perhaps engage legal counsel, to answer detailed interrogatories.").

As a result of these concerns, discovery of putative class members is generally not permitted without leave of court. *See Kamm v. California City Development Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *Baldwin & Flynn v. National Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) ("Defendants must have leave of court to take depositions of members of a putative class, other than the named class members – after first showing that discovery is both necessary and for a purpose other than taking undue advantage of class members."). The MANUAL FOR COMPLEX LITIGATION recognizes that discovery of absent class members "should be permitted only to the extent necessary and should be carefully limited to ensure that it serves a legitimate purpose and is not used to harass either the class representatives or the class members." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 at 231 (1995) (hereafter "MANUAL").

Indeed, there appears to be no controversy in the case law over whether the Court must approve *ex ante* discovery directed to absent class members, if any discovery is permitted at all. Nonetheless, defendants chose to flaunt this rule and brazenly proceed – over plaintiffs' objections – to prosecute discovery demands against the Health Plans without first obtaining leave of Court. As demonstrated in the following section, defendants chose to ignore the Court's authority over class discovery initiatives because defendants likely recognized that they would be unable to meet the stringent burden of demonstrating that the discovery sought is absolutely necessary, cannot be obtained from any other source, and is not harassing or oppressive. Thus, defendants made a calculated decision to simply bypass the Court and ram ahead, a decision that was grossly inappropriate under the law.

**B.     Defendants Cannot Meet The Heavy Burden Of Demonstrating That The Discovery They Seek Of The Health Plans Should Be Permitted**

As the MANUAL recognizes, pre-certification discovery should be "directed at the named plaintiffs," discovery from absent class members is susceptible as "being used . . . as a device to harass and embarrass," and that such discovery "should be necessary *only in unusual circumstances*." MANUAL, § 30.12 at 216 (emphasis added). The MANUAL further recognizes

- 7 -

that, "[i]f discovery from absent members of the class is permissible at all, ***it should be sharply limited and allowed only on a strong showing of justification***." MANUAL, § 30.232 at 232 (quoting 8 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2171 (2d ed. 1994)) (emphasis added).

The teaching of the MANUAL mirrors case law on the subject. First, courts should not permit parties to obtain discovery from absent class members unless they are able to "make a strong showing" of the reasons why the discovery was ***absolutely necessary***. *Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980). Second, courts allowing such discovery require that the party seeking discovery establish that the discovery sought is ***unavailable elsewhere***. *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974) ("The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions."). Third, the court must ensure that the discovery will not subject absent class members to ***undue harassment*** or excessive taxing of their resources. *Robertson*, 67 F.R.D. at 700; *see also United States v. Trucking Employers, Inc.*, 72 F.R.D. 101, 104 (D.D.C. 1976) (string citations omitted); *see also Clark*, 501 F.2d at 340 (there must be a "showing that the information . . . is not designed 'as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.'").

In *Krueger v. New York Tel. Co.*, 163 F.R.D. 446 (S.D.N.Y. 1995), the court adopted an even more restrictive standard for obtaining discovery from absent class members. It required parties seeking such discovery to first demonstrate: (i) that it was necessary for purposes of trial on issues common to the class; (ii) that it was not undertaken with the purpose or effect of harassment, or of altering the membership of the class; and (iii) that it was narrowly restricted to information directly relevant to issues to be tried "with respect to class action aspects of the case." *Id.* at 450; *see also Redmond v. Moody's Investor Serv.*, 1995 U.S. Dist. Lexis 6277, at *3 (S.D.N.Y. May 10, 1995) ("the burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy") (citations omitted).

- 8 -

Like defendants have done here, defendants in *In re Visa Check/MasterMoney Antitrust Litigation* served 23 subpoenas on absent class members (retailers) without prior court permission. Magistrate Mann granted the class plaintiffs' motion to quash, holding that defendants had failed to make the "requisite 'strong showing' to warrant subjecting the putative class members to the pretrial discovery at issue . . . ." Memorandum and Order at 2 (S.D.N.Y. May 7, 1999) (attached at Exhibit E to the Sobol Declaration). In doing so, the Magistrate rejected defendants' purported need for the discovery to test typicality, adequacy and the commonality of issues, commenting that "if such . . . conclusory claim[s] were sufficient to warrant discovery of absent class members, then discovery of putative class members would be routinely allowed in the pre-certification context. Such a result was clearly not contemplated by the case law in this Circuit." *Id.*

Under these rigorous standards, defendants are not entitled to the discovery that they seek.

### 1.    Defendants Cannot Demonstrate that Discovery of the Health Plans is Absolutely Necessary and Cannot be Obtained from Other Sources

Defendants have made *no* showing that the discovery they seek is absolutely necessary, let alone the "strong showing" required of them. *Bodman*, 85 F.R.D. at 327. To this end, defendants must demonstrate that their requests are "narrowly restricted to information directly relevant to issues to be tried "with respect to class action aspects of the case." *Krueger*, 163 F.R.D. at 450. Of course, because they have not applied for Court permission to conduct this discovery, defendants have not met this burden.

Furthermore, defendants have failed to demonstrate that the information they seek cannot be obtained from *other* parties without inconveniencing the absent class members. Indeed, defendants have *alternative* sources of obtaining most if not all of the information that they now seek from the Health Plans.

- 9 -

First, many of the documents requested in the subpoenas – almost half – overlap with the documents that defendants have requested from the named plaintiffs, thus demonstrating that much of what defendants seek will be provided by the named plaintiffs. *Compare* RFP[3] 1 *with* AARP[4] 18; RFP 2 *with* AARP 19; RFP 4 *with* AARP 16; RFP 5 *with* AARP 1; RFP 6 *with* AARP 17; RFP 7 *with* AARP 2; RFP 8 *with* AARP 13; RFP 9 *with* AARP 9; RFP 10 *with* AARP 23 and 24; RFP 11 *with* AARP 21; RFP 18 and 19 *with* AARP 4 and 6.[5]  Indeed, in some instances, the requests are identical.

Second, ***all*** of the PBM-related information that defendants seek in the subpoenas, *see* AARP 18 and 19, can be obtained by subpoenaing the four major PBMs identified in the AMCC, instead of the Health Plan putative class members.  Yet, despite issuing 43 supboenas in 19 district courts, defendants have ***not*** issued subpoenas to the four PBMs with whom defendants have formed association-in-fact RICO enterprises.  Perhaps defendants are loath to subpoena their co-conspirators, but this should not be a reason to burden absent class members.[6]

Third, defendants demand that these absent class members produce "all documents created by or received from CMS, United States Department of Health and Human Services, The Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office regarding the pricing of prescription drugs," *see* AARP 23, ***yet defendants themselves can obtain these documents from the listed federal agencies***.[7]

---

[3] "RFP" is used to designate Defendants' First Request for Production of Documents to Plaintiff Funds, a copy of which is attached as Exhibit F to the Sobol Declaration.

[4] "AARP" is used to designate the requests found in the subpoena that defendants served on AARP Health Options that appears in Exhibit B to the Sobol Declaration.

[5] Defendants have held meet-and-confers with plaintiffs' counsel with regard to the requests for production directed at the named plaintiffs, and these efforts have, in some instances, produced a narrowing of some of the RFPs.

[6] To assist defendants in this endeavor, plaintiffs will be serving subpoenas on the four major PBMs.

[7] Moreover, as part of their Rule 26(a) disclosures, plaintiffs initially produced thousands of pages of documents published by these governmental agencies.

Fourth, defendants can obtain much of the information sought in the Medical Plan subpoenas from the Medical Plan Processors and Benefit Consultants, Claims Administrators and the Medical Plan Auditors, third-parties whom defendants have *already* subpoenaed.[8]  These are not class members.

Because defendants cannot demonstrate that the highly invasive discovery that defendants seek from the Health Plans is both absolutely necessary and cannot be obtained from other sources, the Court should quash the Health Plan subpoenas.

### 2.    Defendants Cannot Demonstrate that their Subpoenas are Not Overbroad and Oppressive

As noted, defendants must ensure that their subpoenas will not subject absent class members to undue harassment or excessive taxing of their resources, *Robertson*, 67 F.R.D. at 700, yet defendants will not be able to meet this burden.  The subpoenas to the Health Plans are, in so many respects, breathlessly overbroad.  Applying to documents created over an eleven-year period and to every employer, fund and, conceivably, individual to whom these Third-Parties provided and currently provide medical or health insurance benefits, defendants' subpoenas demand, for instance, every shred of paper and data related to (i) AWPs and other drug pricing conventions such as AMP, WAC, MAC, EAC and Best Price, as well as "any other drug pricing, payment or reimbursement information for any subject drug" (*see, e.g.,* AARP 1, 17); (ii) "PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover subject drugs . . ." (*see, e.g.,* AARP 18); (iii) "any profit analysis you have performed or received relating to your reimbursement or payment for any subject drug" (*see, e.g.,* AARP 20); and (iv) "any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or

---

[8] Plaintiffs hasten to add that this statement should not be construed as a waiver of any objection that a named plaintiff or absent class member may have to the production of confidential information by these Third-Parties that has no relevance to the issues in this litigation like, for example, audits conducted of Health Plan assets generally.

audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug" (see, e.g., AARP 21).

Unfortunately, it gets worse.  Defendants also demand "[a]ll documents reflecting any payments made by you that were based in whole or in part on the AWP of any subject drug" (see, e.g., AARP 10).  This demand, alone, calls for the production of each and every drug reimbursement transaction that a Health Plan processed, where such transaction was based in whole or in part on AWP.  Moreover, it would require the production of every individual claim file.  And, perhaps most egregiously of all, defendants demand that each Health Plan produce "[a]ll communications [with] providers or pharmacies relating to reimbursement, payment or prices of any subject drug," see AARP 11, which would call for the production of every single reimbursement request received from, and payment made to, all doctors and pharmacies.  See also AARP 6 ("For the period 1991 to the present, all documents relating to or reflecting the amounts you reimburse providers for any subject drug.").  What could possibly justify such a ridiculously onerous demand?  Nothing does.  And these are only examples.

Compounding this already substantial burden on the absent class members, defendants have advised that the drug-specific discovery being pursued now is only the beginning, and that defendants may come back with additional subpoena demands later.  For instance, the cover letter accompanying the subpoena to AARP Health Care Options provides:

> These 11 drugs are part of a much larger group of drugs identified in plaintiffs' complaint. The longer list is reproduced as Exhibit A to the request. Depending upon the outcome of certain pending motions, it may be necessary to seek discovery on more of the drugs listed on Exhibit A at a future date.

See Exhibit B to the Sobol Declaration.

Defendants' subpoenas call for the production of literally mountains of documents and are therefore oppressive, providing yet another reason why the subpoenas should be quashed.

3.      **There are No Safeguards in Place with Regard to Defendants' Communications with These Absent Class Members**

Courts are aware of the potential abuse that could occur if defendants were allowed to freely communicate with putative class members. As a result, defendants are not given *carte blanche* to say whatever they like: "[c]lass actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). Hence, several types of communications with potential class members are inappropriate:

> Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation. Communications that misrepresent the status or effect of the pending action also have been found to have a potential for confusion and/or to adversely affect the administration of justice. . . . Courts have also condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel.

*Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (citing *Gulf Oil*, 452 U.S. at 101, n.12; *In re School Asbestos Litig.*, 842 F.2d 671, 682 n.23 (3rd Cir. 1988)).[9]

In *Babbitt v. Albertson's, Inc.*, counsel for defendant interviewed putative class members before certification in order to evaluate and defend against the lawsuit. 1993 U.S. Dist. Lexis 18801, at *21 (N.D. Cal. Jan. 28, 1993). Citing to *Gulf Oil*, the *Babbitt* court denied the plaintiff's motion for sanctions and a protective order, finding that defense counsel's

---

[9] *See also In re Winchell's Donut Houses, L.P. Sec. Litig.*, 1988 Del. Ch. Lexis 159, at *3 (Del. Ch. Dec. 12, 1988) ("Surely, a defendant may not, in its communications with class members prior to certification, deceive or mislead class members."); *Pollar v. Judson Steel Corp.*, 1984 U.S. Dist. Lexis 19765, at *1 (N.D. Cal. 1984) (where defendant placed an advertisement which was found to be in violation of the "intent and terms" of the federal class actions because the advertisements did not disclose the pendency of the class action, attempted to solicit information from potential class members, and threatened confusion regarding and prejudice of the potential class members' rights in the litigation); 3 NEWBERG ON CLASS ACTIONS § 15.14 (1992) ("When communications can be shown to be abusive, the defendants may be ordered to retract their statements and are subject to other sanctions. Solicitation of exclusions also poses ethical problems.").

communications were not inappropriate.  Key to the court's finding, however, was that ***defense counsel had provided specific disclosures in its communication***:

> [T]hese attorneys uniformly communicated the same information to employees before conducting interviews: (1) that he/she was an attorney retained to defend Albertson's in the pending action, (2) that he/she was investigating facts in order to evaluate and defend the action, (3) that the interviewee was under no obligation to talk to talk to him/her, (4) that no adverse action would be taken against any interviewee who chose not to talk, and (5) that no interviewee would benefit by choosing to talk to him/her.  [*Id.*, at *17]

Not only are the above disclosures missing from defendants' subpoenas, the subpoenas contain no disclosures at all.  Even though defendants will be gathering information from the Health Plans that may be used to defeat the claims of these absent class members, the subpoeanas provide absolutely ***no*** information to the class with respect to their rights in the litigation.  In addition, there are no safeguards in place under which the Court or plaintiffs' counsel can regulate or monitor further communications by defense counsel with absent class members in response to these subpoenas.  As is typically the case, a subpoenaed party contacts the attorney who issued the subpoenas to discuss the nature and scope of the requests, and how best to comply.  Indeed, defense counsel have already stated that they "expect to discuss these subpoenas directly with counsel for the various Third Parties, in an attempt to minimize the burden of our requests to the extent possible."  Nov. 14, 2003 Wise Letter, Exhibit D to the Sobol Declaration.  During the course of these conversations, which are inappropriate direct communications with absent class members, the potential is great for defense counsel to impart misinformation and otherwise engage in conversations and solicit information aimed at defeating the putative class member's claims.  Indeed, the potential for abuse is even greater at this stage in the proceedings, where the Court has yet to rule on class certification or approve the dissemination of an appropriate, Court-approved class notice that advises the class of the litigation and their rights therein.

In light of these points, the Court should require defendants to make a full accounting of all communications that they have had with each putative class member in regard to these subpoenas and any other matter related to the litigation. With regard to any discovery that defendants wish to obtain from absent class members in the future, the Court should require that defendants adhere to a procedure that safeguards the rights of absent class members and otherwise respects Rule 23 and abides by the guidelines for discovery of absent class members as set forth in the authorities cited above. To this end, plaintiffs suggest the following procedure: (i) defendants submit a proposal for plaintiffs' counsel's consideration; (ii) the parties meet and confer in good faith in an attempt to resolve or minimize any differences of opinion that may exist with respect to defendants' proposal;[10] and (iii) if no agreement is reached on all issues, defendants present the remaining issues by motion to the Court for the Court's evaluation, justifying the need for such discovery in accordance with the applicable legal standards set forth *infra*.

## IV.   CONCLUSION

"If discovery from absent members of the class is permissible at all, *it should be sharply limited and allowed only on a strong showing of justification*." MANUAL, § 30.232 at 232 (quoting 8 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2171 (2d ed. 1994)) (emphasis added). The subpoenas that defendants have served on the Health Plans are far from "sharply limited." Moreover, defendants have not demonstrated a "strong showing" justifying the discovery that they seek. The subpoenas are unnecessary; seek information that can be obtained from non-class members; are burdensome and harassing; and do not contain appropriate disclosures and information about this lawsuit. In addition to burdening absent class members, the needless discovery demanded by defendants will significantly hinder the effective prosecution of this class action by inserting extraneous, time- and resource-wasting issues, with

---

[10] Plaintiffs, of course, remain willing to work in good faith with defendants on this issue, as they did prior to being summarily rebuffed by defendants at the time that plaintiffs originally communicated their concerns about the service of subpoenas on absent class members.

- 15 -

no offsetting benefits. The Court should quash the subpoenas, order defendants to make a full and accurate accounting of all communications with these absent class members, and order defendants to present to plaintiffs' counsel any further proposals to conduct discovery of absent class members and, failing agreement on the scope of any such discovery, present a proposal for the Court's consideration.

DATED:        December 3, 2003                    By _____

Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Brian Williams
Heins Mills & Olson, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

**CHAIRS OF LEAD COUNSEL
COMMITTEE**

- 16 -

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF EXECUTIVE
COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA  19103
Tel:  (215) 814-6750
Fax:  (215) 814-6764

- 17 -

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel:  (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA 92101
Tel:  (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666

Tel:  (213) 895-6500
Fax:  (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA  19102
Tel:  (215) 790-7300
Fax:  (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA  19103
Tel:  (215) 731-9004
Fax:  (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX  77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX  75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**