UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action: 01-CV-12257-PBS<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>ROBERT J. SWANSTON, individually and<br>on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>TAP PHARMACEUTICAL PRODUCTS, INC., et al.<br><br>                Defendants. | |

FILED IN CLERK'S OFFICE
2003 DEC -5 A 11: 55
U.S. DISTRICT COURT
DISTRICT OF MASS.

### SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF
### MOTION FOR REMAND BY PLAINTIFF, ROBERT J. SWANSTON[1]

Dated: October 24, 2003

[FILED ELECTRONICALLY-VIA VERILAW]
Donald E. Haviland, Jr., Esquire
TerriAnne Benedetto, Esquire
**KLINE & SPECTER, P.C.**
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000 telephone
(215) 735-0957 facsimile

---

[1] Per the Court's instruction that specific reference be clearly provided as to all filings, the instant Brief relates to the Motion for Remand filed by plaintiff, Swanston, which was docketed at No. 64 in *Swanston, et al. v. TAP Pharmaceutical Products Inc., et al.*, No. 2:03-CV-00062 (D. Ariz.), but, which was not assigned a number under the docket of MDL 1456 since the Motion for Remand was filed on January 21, 2003, before this case was transferred to this Court by the JPMDL. *See* MDL 1456 Docket No. 332 for Conditional Transfer Order, dated February 10, 2003, regarding transfer of the *Swanston* case. Attached hereto as Exhibit "A," is a true and correct copy of the docket entries in *Swanston*, [hereinafter the "*Swanston* Docket"].

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................. 1

II.    SUMMARY OF PROCEDURAL AND FACTUAL BACKGROUND .............. 2

III.   ARGUMENT ....................................................................... 4

       A.   THE RULE OF UNANIMITY HAS BEEN VIOLATED, WARRANTING REMAND ...... 4

            1.   The Rule of Unanimity Is To Be Strictly Construed. ................. 4

            2.   The Failure of Twenty-One Defendants to File of Record Consents
                 to Removal Within Thirty (30) Days Is Fatal to GSK's Removal
                 Petition. .................................................................. 6

                 a.   Eleven Defendants Have Never Consented to Removal. ......... 6

                      (1)   *G.D. Searle* ..................................................... 6

                      (2)   *Michael Gendelman and His Wife* ............................ 9

                      (3)   *The Hidalgos, the Jetts, the Colemans and the Hacks* .... 9

                 b.   The Ten Original Corporate Defendants Have Waived the
                      Right to Consent to Removal. .................................... 14

            3.   Unanimity Is Required Whether Removal Is Based Upon Diversity
                 or Federal Question Jurisdiction. .................................... 14

       B.   ERISA PREEMPTION ............................................................ 15

            1.   ERISA Section 514 Does Not Provide a Basis for Federal Court
                 Jurisdiction in This Case. ............................................. 16

            2.   ERISA Section 502(2)(a)(3) Does Not Provide a Basis for Federal
                 Court Jurisdiction in This Case. ...................................... 20

IV.    CONCLUSION ................................................................... 26

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

## I. INTRODUCTION

At the hearing held on October 9, 2003 on the Plaintiff's Motion for Remand, the Court invited the parties to submit supplemental briefing within fifteen (15) days to address the issues raised at the hearing.

While the instant Brief supplements prior briefing on the remand issues present in this case,[2] it specifically addresses two issues raised at the October 9th hearing for which the Court invited additional briefing[3]: (1) the impact of the failure of certain defendants to file of record consents to the removal by GlaxoSmithKline Corporation ("GSK") within thirty (30) days, in violation of the "rule of unanimity,"[4] and (2) whether GSK's claim of ERISA preemption can support its removal petition.[5]

---

[2] The earlier briefs filed by plaintiff on this issue are: (1) Plaintiff's Motion for Remand, and for Costs and Expenses and Memorandum in Support Thereof (Expedited Oral Argument Requested) (*Swanston* Docket No. 64), (2) Plaintiff's Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Remand and in Further Opposition to Defendants' Motion To Stay (*Swanston* Docket No. 197), and (3) Supplemental Memorandum in Support of Motion for Remand (MDL 1456 Docket No. 569).

[3] At the hearing on plaintiff's Motion, the removing party, GlaxoSmithKline Corporation ("GSK"), did not present argument on, and appears to have abandoned, two issues raised in its original briefing: (1) alleged Medicare preemption, and (2) an alleged federal question on the basis of defendant Amgen's claim that its drug epoetin alfa ("Epogen®") is established at a certain rate by Congress, and not based upon AWP. Further, GSK's contention in its removal papers that this case may be removed on diversity grounds based on the aggregation of class members' damages to satisfy the $75,000 jurisdictional requirement also appears to have been abandoned. Such abandonment is prudent in light of the clear authority contrary to defendants' position on this issue. *See Zahn v. International Paper Co.*, 414 U.S. 291, 300-01 (1973) (classwide damages cannot be aggregated). *See also Spielman v. Genzyme Corp.*, 251 F.3d 1 (1st Cir. 2001); *Ciardi v. F. Hoffman-LaRoche, Ltd.*, No. 99-11936-GAO, 2000 WL 159320 (D. Mass. Feb. 7, 2000).

[4] The rule of unanimity is contained within the federal removal statute, 28 U.S.C. § 1441(a).

[5] The federal Employee Retirement Income Security Act ("ERISA") is set forth at 29 U.S.C. §§ 1144(a), 1132(a)(3).

In view of the fact that plaintiff's original Motion for Remand, filed on January 21, 2003, sought expedited consideration, and more than nine (9) months have elapsed awaiting a remand decision from this Court, plaintiff respectfully requests that this Honorable Court decide plaintiff's Motion for Remand expeditiously on the papers, without further oral argument.[6]

## II.  SUMMARY OF PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his class action lawsuit against thirty (30) defendants in Maricopa County, Arizona over eighteen (18) months ago, on March 18, 2002. Plaintiff initially sought to recover from the ten (10) pharmaceutical company defendants[7] and twenty (20) individual defendants[8] for overcharges paid by cancer patients, like Mr. Swanston, and others as a result of a massive fraudulent scheme and conspiracy[9] to unlawfully market, sell and distribute prescription drugs at inflated prices.

---

[6] Correspondence from the undersigned counsel for plaintiff to this Court further requesting expedited disposition of the instant Motion for Remand, and defendants' response thereto, are docketed at MDL 1456 Docket Nos. 412 and 431, respectively.

[7] The ten (10) original pharmaceutical defendants were: TAP Pharmaceutical Products Inc. ("TAP"), Abbott Laboratories ("Abbott"), Takeda Chemical Industries, Ltd. ("Takeda"), Astra Zeneca PLC, Pharmacia Corporation ("Pharmacia"), Pharmacia & Upjohn, Inc. ("P&U"), and Monsanto Company ("Monsanto") (collectively, the "Pharmacia Defendants"), and Johnson & Johnson ("J&J"), Ethicon Endo-Surgery, Inc. ("Ethicon") and Indigo Laser Corporation ("Indigo") (collectively the "J&J Defendants").

[8] The twenty (20) original individual defendants were: Scott Hidalgo and his wife Amanda, David Jett and his wife, Christopher Coleman and his wife, and Eddy James Hack and his wife (collectively, the "Individual Defendants"), as well as Kimberlee Chase and her husband, Janice M. Swirski and her husband, Donna Tom and her husband, David Guido and his wife, Henry Van Mourik and his wife, and Alan MacKenzie and his wife (collectively, the "TAP Employee Defendants"). Each of these individuals has either been indicted or pled guilty to violations of federal law in connection with certain aspects of the fraudulent scheme and conspiracy alleged in this case related to the drug Lupron® which is manufactured, marketed, sold and distributed by defendants TAP, Abbott and Takeda.

[9] It is noteworthy that, unlike any other case before this Court, *Swanston* has alleged one overall conspiracy *among* the many drug manufacturer defendants, as opposed to numerous separate conspiracies *between* the various defendants and third parties. Also, unlike any other case, these allegations have withstood seven (7) separate Motions To Dismiss and one (1) Motion for Summary

On June 28, 2002, plaintiff filed a First Amended Complaint which added seven (7) additional corporate defendants,[10] but contained virtually the same allegations. In September 2002, the defendants filed seven (7) Motions to Dismiss, one (1) Motion for Summary Judgment, and a Motion to Stay. Among the various issues raised in these motions, defendants argued Medicare preemption, the political question doctrine, and a lack of standing on the part of plaintiff. After full briefing and a hearing, the Maricopa County Court <u>denied all of the motions</u>. *See* Decision dated November 22, 2002, at Exhibit "B."

Defendants, led by counsel for AstraZeneca, then petitioned to have this case transferred to the newly-forming Complex Civil Litigation Program in Maricopa County ("Complex Court"). After the case was transferred, the Complex Court convened a conference on December 9, 2002 to discuss scheduling of various deadlines for pleadings, discovery, and plaintiff's motion for class certification, and issued a Minute Entry Order in connection therewith. *See* Exhibit "C."

Pursuant to leave of Court, plaintiff filed his Second Amended Complaint on December 20, 2002, naming GSK and twenty-nine (29) other corporate defendants.[11] As ordered by the Court,

---

Judgment by defendants.

[10] The new defendants contained in the First Amended Complaint were Zeneca, Inc., AstraZeneca Pharmaceuticals LP, AstraZeneca LP ( which along with AstraZeneca PLC are referred to herein as the "AstraZeneca Defendants"), Bayer Corporation ("Bayer"), Alza Corporation ("Alza"), and Michael Gendelman and his wife.

[11] The new defendants added in the Second Amended Complaint were the following: Amgen, Inc.; Apothecon, Inc.; Aventis Pharmaceuticals, Inc.; Aventis Behring L.L.C.; Baxter Healthcare Corporation; Baxter International Inc.; Bedford Laboratories; Ben Venue Laboratories, Inc.; Boehringer Ingelheim Corporation; Bristol-Myers Squibb Company; Centocor, Inc.; Dey, Inc.; Fujisawa USA, Inc.; Fujisawa Healthcare, Inc.; G.D. Searle; Gensia Sicor Pharmaceuticals, Inc.; Glaxo Wellcome, Inc.; GlaxoSmithKline, P.L.C.; Hoechst Marion Roussel, Inc.; Immunex Corporation; Oncology Therapeutics Network Corporation; Ortho Biotech; Roxane Laboratories, Inc.; Schering-Plough Corporation; Sicor, Inc.; SmithKline Beecham Corporation; Warrick Pharmaceuticals Corporation; Wyeth Pharmaceuticals; and Wyeth.

plaintiff also filed his Motion for Class Certification on December 20. Defendants then sought to have the Complex Court revisit its scheduling order by extending certain deadlines. On January 9, 2003, the Court granted the request for certain extensions, yet maintained its requirement that all existing defendants file Answers to the Complaint by January 10, 2003. *See* Exhibit "C." Several did,[12] but others did not[13]. On January 10, 2003, after more than nine (9) months of defendants' testing the waters of the Arizona state court, GSK, without prior notice or warning from any defendant, filed a Notice of Removal.

## III. ARGUMENT

### A. THE RULE OF UNANIMITY HAS BEEN VIOLATED, WARRANTING REMAND.

#### 1. The Rule of Unanimity Is To Be Strictly Construed.

In this Circuit and elsewhere, "removal statutes are strictly construed ... and defendants have the burden of showing the federal court's jurisdiction." *Danca v. Private Healthcare Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). *See also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Murphy v. Newell Operating Co.*, 245 F. Supp.2d 316, 318 (D. Mass. 2003).

> Most cases emphasize that the procedural requirements for removal from state to federal court, although not jurisdictional, are to be strictly construed and enforced in favor of state court jurisdiction.... There is nothing in the removal statute that suggests that a district court has "discretion" to overlook or excuse prescribed procedures. Defective removal procedure is a proper ground for remand.... When there is doubt as to the right of removal in the first instance, ambiguities are to be construed against removal.... "The district court, in a challenged case, may retain jurisdiction only where its authority to do so is clear." *Gorman v. Abbott Laboratories*, 629 F. Supp. 1196, 1203 (D.R.I. 1986). "The removing party bears the burden of showing that removal was proper." ... "This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute."

---

[12] Defendants TAP, Abbott, and the J&J Defendants all filed Answers.

[13] Defendants AstraZeneca, Bayer, Alza, the Pharmacia Defendants and Takeda failed to file Answers.

*Spillers v. Tillman*, 959 F. Supp. 364, 368 (S.D. Miss. 1997) (citations omitted). The requirement of unanimous consent to removal is also generally recognized by federal courts as subject to strict construction. *LaPoint v. Mid-Atlantic Settlement Serv., Inc.*, 256 F. Supp.2d 1, 2-3 (D.D.C. 2003) ("The court derives the requirement of unanimity from 28 U.S.C. § 1441(a), which provides that 'any civil action brought in a State court... may be removed by the defendant or defendants, to the district court of the United States....' Courts must strictly construe removal statutes.")

This Court previously has recognized the strict construction of the removal statute and the "bright line" limitation of the rule of unanimity.

> "[F]ederal courts have universally required unanimity of consent in removal cases involving multiple defendants. There are several such bright line limitations on federal removal jurisdiction ... that some might regard as arbitrary and unfair. Such limitations, however, are an inevitable feature of a court system of limited jurisdiction that strictly construes the right to remove."

*Montana v. Abbott Laboratories*, 266 F. Supp.2d 250, 261 (D. Mass. 2003) (quoting *Russell Corp. v. American Home Assurance*, 264 F.3d 1040, 1050 (11th Cir. 2001)). Recently, another federal court, citing *Russell, supra,* noted that "[t]he rules governing removal have been deliberately drawn up to favor the plaintiff's right to its chosen state forum, and these defendants may not be excused from complying with those rules simply because it is inconvenient or even impossible to comply with them." *GMFS, L.L.C. v. Bounds*, No. 03-0348-WS-M, 275 F. Supp.2d 1350, 2003 WL 21909158 (S.D. Ala. Aug. 8, 2003).

The bright line limitation on GSK's removal required all defendants to consent to GSK's removal, and required GSK to prove that the rule of unanimity has been satisfied. Since all defendants have not consented, remand is mandated.

2. **The Failure of Twenty-One Defendants to File of Record Consents to Removal Within Thirty (30) Days Is Fatal to GSK's Removal Petition.**

   a. <u>Eleven Defendants Have Never Consented to Removal.</u>

It is clear on the record before this Court that eleven (11) defendants have never consented to removal: G.D. Searle ("Searle"), Michael Gendelman and his wife, Scott and Amanda Hidalgo, Christopher Coleman and his wife, David Jett and his wife, and Eddy James Hack and his wife.

   (1) *G.D. Searle*

At the October 9th hearing, counsel for GSK urged two inconsistent positions with respect to Searle's failure to clearly manifest its consent to removal: (1) that Searle "is defunct," and therefore it need not consent, and (2) that Searle allegedly provided GSK with "verbal consent" to removal.[14] Oddly, counsel made these incongruous remarks only moments apart.[15] Clearly, if Searle is defunct then it could not have provided GSK with its verbal consent to removal. GSK cannot have it both ways, and either way, Searle's lack of consent is fatal to GSK's removal.

On the one hand, Searle is not "defunct," as claimed by GSK. Searle was served on January 3, 2003 with a copy of the *Swanston* Complaint at its corporate headquarters located at 5200 Old

---

[14] While GSK's Notice of Removal represented that Searle had consented, it does not differentiate Searle's consent as having been verbal as distinct from the clear written consents provided by the forty-two other corporate defendants. *See* Notice of Removal at ¶ 24 n.4. Thereafter, at the oral argument GSK attempted to contend that consent was verbal or not required. *See Zaini v. Shell Oil Co.*, 853 F. Supp. 960 (S.D. Tex. 1994) (holding that after the 30-year removal period expires, amendments to notice of removal to add new grounds for removal or to add missing allegations of jurisdiction are prohibited); *Hubbard v. Tripp*, 611 F. Supp. 895 (E.D. Va. 1985) (same).

[15] Plaintiff's counsel has contacted this Court's court reporter, Marie L. Cloonan, in an effort to obtain a transcript of the October 9th hearing, however, Ms. Cloonan has advised that the transcript will not be available until after October 24, 2003, the date this filing is due. Consequently, as plaintiff is unable to directly cite the record as to statements of GSK's counsel and other matters, plaintiff would ask leave of Court to supplement this brief once the transcript has been received.

Orchard Road in Skokie, Illinois. Senior Administrative Assistant, Cheryl L. Carr, accepted service on behalf of the company. *See* Affidavit of Service attached hereto as Exhibit "D."

Beyond having a physical corporate locale in the United States, Searle continues to manufacture and sell drug products under its corporate name, and has held itself out to the world as a manufacturer of prescription drugs, just like GSK. *See, e.g.*, Exhibit "E" (a package insert for Synarel®, a competitor drug to TAP's Lupron®).[16]

Searle continues to sue and be sued in its corporate name in courts across the country. *See, e.g., Robinson v. G.D. Searle & Co.*, No. 01-4195, 2003 WL 22345677 (N.D. Cal. Aug. 2003); *University of Rochester v. G.D. Searle & Co., Inc.*, 249 F. Supp.2d 216 (W.D.N.Y. 2003); *G.D. Searle & Co. v. Federal Express Corp.*, 248 F. Supp.2d 905 (N.D. Cal. 2003).[17]

Searle has even filed pleadings in this case. *See, e.g.*, Joinder of Defendant Pharmacia Corporation, Pharmacia & Upjohn, Inc., Monsanto Company and G.D. Searle Company in the Memorandum of Defendant GlaxoSmithKline in Opposition to Plaintiff's Motion To Vacate Conditional Transfer Order No. 7, attached hereto as Exhibit "F."

---

[16] The logo of "Searle" and the company name "G.D. Searle & Co." appear on both sides of the Synarel® package insert along with two addresses - one stating that G.D. Searle & Co. is located in Chicago, Illinois with no street address and the other indicating that it is located at 5200 Old Orchard Road in Skokie, Illinois, the location at which service was made in this case. *Id.*

[17] In the event GSK attempts to argue that consent from Searle is not required because Searle is a subsidiary of Pharmacia, such a position undermined by the fact that every other wholly-owned subsidiary and division sued in this case filed separate written consents to removal. For example, on January 10, 2003, the Notice of Consent to Removal of Defendants Johnson & Johnson, Ethicon Endo-Surgery, Inc., Indigo Medical, Inc., Alza Corporation, Centocor, Inc. and Ortho Biotech Products, L.P. was filed. *See* Exhibit "A," [*Swanston* Docket No. 11]. According to the Answer filed by the J&J Defendants [*Swanston* Docket No. 24, ¶ 2], Ethicon is a wholly-owned subsidiary of J&J, and Indigo was merged into Ethicon in January 2001. In addition, despite its merger with Monsanto in April of 2000 to form Pharmacia Corp., Pharmacia & Upjohn filed a written consent to removal. *Swanston* Docket No. 4.

All of this evidence belies GSK's unsupported charge that Searle is defunct and was not required to consent to removal.[18] Since it is GSK's burden, remand is warranted.

On the other hand, Searle's alleged "verbal consent" to removal, even if actually conveyed to GSK,[19] is insufficient as a matter of law under the strict requirements of the federal removal statute. Each defendant must independently notify the <u>Court</u> of its consent. *See, e.g., Sansone v. Morton Machine Works, Inc.*, 188 F. Supp.2d 182 (D.R.I. 2002) (holding that verbal consent by second corporation to first corporation's notice of removal was insufficient to notify court of consent as required for removal).[20]

Searle's failure to manifest its consent to removal on the record before this Court is an incurable procedural defect mandating remand. *See Montana v. Abbott Labs.*, 266 F. Supp.2d 250, 260 (D. Mass. 2003) (wherein this Court observed that procedural defects are incurable). "Subsection 1447(c) authorizes a remand on the basis of <u>any defect</u> in removal procedure or because the district court lacks subject matter jurisdiction." *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*,

---

[18] Should this evidence, or any other set forth in this Brief, prove insufficient to satisfy this Court that remand is warranted, plaintiff reserves the right to seek discovery of GSK and its co-defendants on jurisdictional issues, which leave should be given freely in light of the fact that GSK has been permitted to take discovery of plaintiff in an attempt to bolster its Removal Petition.

[19] The only indication of Searle's alleged "verbal consent" is the *ipse dixit* assertion of GSK in its Notice of Removal that "all corporate defendants consent." *See* Notice of Removal ¶ 24. GSK also specifically lists "G.D. Searle" in a footnote as one of the consenting entities. *Id.* at ¶ 24 n.4. However, Searle has never manifested its consent – verbal or otherwise – on the record in this Court in the 10 months that plaintiff's Motion to Remand has been pending.

[20] *See also Williams v. Howard Univ.*, 984 F. Supp. 27, 28 (D.D.C. 1997) (adopting the "Three Musketeers Rule" that "multiple defendants must unambiguously and independently show that in seeking to remove a case from state court to federal court they are 'all for one, one for all.'"); *Miller v. First Security Investments, Inc.*, 30 F. Supp.2d 347, 351 (E.D.N.Y. 1998) ("mandating written consent to remove 'is consistent with the notion that filing requirements are strictly construed and enforced in favor of remand.'"); *Urban v. Chrysler Motors Corp.*, No. 92 C 1678, 1992 WL 132853, at *2 (N.D. Ill. May 29, 1992) (holding that defendant's oral consent to another defendant of its consent to removal does not satisfy requirements of removal statute).

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

8

31 F.3d 70, 72 (2d Cir. 1994) (emphasis supplied). As stated previously, "[t]here is nothing in the removal statute that suggests that a district court has 'discretion' to overlook or excuse prescribed procedures. Defective removal procedure is a proper ground for remand." *Spillers*, 959 F. Supp. at 368.

### (2) *Michael Gendelman and His Wife*

In its Notice of Removal, GSK also represents that Michael Gendelman (but not his wife) consented to removal. *See* Notice of Removal, ¶ 24. However, neither Gendelman nor his wife, like Searle, ever filed any written consent on the record with the Court. The Gendelmans did, however file a Motion To Dismiss the Second Amended Complaint on March 17, 2003, demonstrating they are not nominal parties and that they could have consented to removal on the record if they chose to do so.

As with Searle, GSK's *ipse dixit* statement in its Notice of Removal that "defendant Michael Gendelman also consents" is insufficient as a matter of law, and is insufficient as a matter of fact since it fails to state that Gendelman's wife also consents. *See* Notice, ¶ 24.

### (3) *The Hidalgos, the Jetts, the Colemans and the Hacks*

Scott Hidalgo and his wife, Amanda, along with David Jett, Christopher Coleman and Eddy James Hack and their respective wives (collectively the "Individual Defendants") were all named defendants in the original Complaint filed in March, 2002, as well as the subsequent amended complaints filed in this case. Not one of these eight (8) Individual Defendants has ever consented to federal jurisdiction, and GSK admits the same. *See* Notice, ¶ 24.

GSK contends instead that five (5) of these eight (8) Individual Defendants were fraudulently joined, and thus an exception to the unanimity rule applies. *See* Notice of Removal, at ¶¶ 25-28.[21] GSK bases its allegation of "fraudulent joinder" upon the fact that plaintiffs in another class action case pending in North Carolina, *Stetser, et al. v. TAP Pharmaceutical Products, et al.*, have reached preliminary settlements with four (4) of the eight (8) Individual Defendants, and that those settlements allegedly affect the plaintiff's claims in this case against those same defendants.

The short answer to GSK's allegation is that the settlements in *Stetser* have no impact on the claims of the plaintiff Swanston because the *Swanston* claims are broader, involving many more drugs and many more drug defendants in an almost industry-wide fraudulent scheme and conspiracy. The *Stetser* case could not possibly release the claims of *Swanston*, and the settlements do not purport to do so. Accordingly, GSK's claim is both factually and legally unfounded at first glance.

But when this Court digs deeper into GSK's allegations about fraudulent joinder of the Individual Defendants in this case, it will quickly see that GSK can not and does not satisfy its "heavy" burden in this case. *See, e.g., Marshall v. Manville Sales Corp.*, 6F.3d 229, 232-33 (4th Cir. 1992). GSK's fraudulent joinder argument fails for each of the following reasons:

    (1)    the concept of fraudulent joinder applies only to non-diverse defendants, and none of the Individual Defendants (or any other defendant for that matter) is

---

[21] There are three recognized exceptions to the rule of unanimity:
    (1)    where a non-joining defendant is an unknown or nominal party;
    (2)    where a defendant has been fraudulently joined; or
    (3)    where a non-resident defendant has not been served at the time the removing defendants filed their petition.
*Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995). *See also GMFS, supra*; *Davidson v. National R.R. Passenger Corp.*, No. Civ. A. 00-1226, 2000 WL 795881, at *2 n.1 (E.D. Pa. June 9, 2000); *Scheall v. Ingram*, 930 F. Supp. 1448, 1449 n. 1 (D. Col. 1996). GSK only raised the second exception as to the Individual Defendants in its Notice of Removal. *See* Notice, ¶ 25.

(2) the Honorable Malcolm J. Howard of the United States District Court for the Eastern District of North Carolina already has rejected the same fraudulent joinder arguments GSK presents here in his decision remanding the *Stetser* case back to state court;[23]

(3) the settlements in the North Carolina case have not been finally approved by the North Carolina court;[24]

(4) even when the settlements are finally approved by the Court, the four covered

---

[22] "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the <u>nondiverse</u> defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993) (emphasis added). *See also Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992); *Ingemi v. Pelino & Lentz*, 886 F. Supp. 156, 160 (D.N.J. 1994). The concept of fraudulent joinder cannot be applied to diverse defendants, like all eight of the Individual Defendants here. This notion is so patently clear in the law that there is a dearth of cases discussing the proposition. However, as is clear from the explanations of the few courts that have faced the question, fraudulent joinder applies only in "cases in which a diverse defendant seeks removal in spite of the presence of a named, non-diverse defendant based on the argument that the non-diverse defendant was fraudulently joined specifically to prevent removal." *Lacy v. ABC Ins. Co.*, No. Civ. A. 95-3122, 1995 WL 688786, at *2 (E.D. La. Nov. 17, 1995). *See Auto Ins. Agency v. Interstate Agency, Inc.*, 525 F. Supp. 1104, 1107 (D.S.C.1981) ("Joinder is fraudulent when 'there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged ...'"). *See also Smallwood v. Illinois Central R.R. Co.*, 342 F.3d 400, 405 (5th Cir. 2003) ("Several district courts across the country have ... refus[ed] to find fraudulent joinder where the only basis for the claim is a defense equally applicable to all of the defendants, diverse and nondiverse.") (citing cases). Since none of the subject Individual Defendants are residents of Arizona, GSK cannot claim that any Individual Defendant has been fraudulently joined.

[23] *See* Judge Howard's Opinion at Exhibit "G," at 12-14.

[24] Approval of a class wide settlement, or partial settlement, with some of the defendants requires a two step process. First, the Court must find that the "preliminary approval" of the settlement is appropriate. After preliminary approval, the Court then directs the parties to submit the proposed settlement to the Class through an appropriate form of notice. Then, after a sufficient period of time for filing opt-outs and objections has passed, the Court then must conduct a second hearing – a fairness hearing – on the propriety of settlement approval. Only then is the settlement finally approved by the Court. *See generally*, N.C. R. CIV. P. 23(c). *See also* FED. R. CIV. P. 23(e). In the instant case, the North Carolina court in *Stetser* preliminarily approved the settlements with the four Individual Defendants on April 9, 2003, and ordered plaintiffs' counsel to disseminate notice of same beginning October 10, 2003. The opt-out period runs January 8, 2004, and the fairness hearing has been scheduled for March 8, 2004. (For detailed information about the settlements, including copies of the agreements, the Orders of the Court, and the Notice, this Court can access www.LUPRONLaw.com.)

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

11

Individual Defendants will not be dismissed from the *Stetser* action because, under the terms of the settlement agreements, they are required to cooperate with plaintiffs in the continued prosecution of the corporate defendants, including appearing at trial, or the settlements will become void;[25]

(5) the obligation of the Individual Defendants to cooperate in *Stetser* has not begun;[26]

(6) even when the four Individual Defendants are finally dismissed from the North Carolina case, neither the settlement nor such dismissals will affect the liability of these defendants in this case;[27] and

(7) even if these four Individual Defendants could be deemed to have been fraudulently joined, it would not excuse the failure of the remaining defendants, Amanda Hidalgo and the other wives, to consent to removal.

---

[25] GSK concedes that, under the specific terms of these settlement agreements, the four Individual Defendants will not be dismissed from these actions when the settlements are finally approved. *See* Notice of Removal, ¶ 28. The settlement agreements require that the Individual Defendants cooperate with plaintiffs in *Stetser* in providing information, testimony, and documents and generally in continuing to prosecute these actions against the corporate defendants, including appearing at trial. If they fail to cooperate, the settlement agreements become void. Thus, the Individual Defendants will be in these actions until they are finally concluded.

[26] Under the express terms of the settlement agreements with the Individual Defendants, cooperation is a condition of settlement, which settlement must be finally approved by the Court before it is binding. The obligation to cooperate does not even begin until final approval of the settlements. *See Rowe v. Johns-Manville Corp.*, Civ. A. No. 86-6044, 1987 WL 12266 (E.D. Pa. June 9, 1987) (noting that where settlement agreement is conditional and not unequivocal resolution of matter between parties, removal is not appropriate). *See also Thrapp v. Armstrong World Indus., Inc.*, 767 F. Supp. 822 (N.D. Tex. 1991) (holding that case should be remanded to state court since settlement agreement into which plaintiff had entered with nondiverse defendant required that said defendant was still party to suit since it could be required to pay additional $10,000 according to high-low agreement, depending upon jury verdict).

[27] GSK contends that the obligation of the Individual Defendants to cooperate in *Stetser* allegedly creates a non-adversarial relationship between the plaintiff and the Individual Defendants in this case, which serves to negate the requirement of consent from these Individual Defendants. *See* Notice of Removal, ¶ 28. There is no support for this contention. The one case to which removing defendants cite is not supportive of their argument. *See Chicago, Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184 (1913) (Holmes, J.). Indeed, this 90 year-old case actually affirmed the overruling of a petition for removal. The Supreme Court held that "the motive of the plaintiff, taken by itself, does not affect the right to remove. If there is joint liability, [plaintiff] has an absolute right to enforce it, whatever the reason which makes him want to assert the right.... Hence, the fact that the company is rich and [the individual defendant] is poor does not affect the case." *Id.* at 193.

Based on the stringent standards for proof of fraudulent joinder to excuse a party's failure to garner the consent of all defendants to removal, GSK has not satisfied its burden through its Notice of Removal. This Court need look no further than the decision of Judge Howard in the federal court in North Carolina to dispose of GSK's argument that the four Individual Defendants were fraudulently joined:

> ...The complaint suggests that Johnson & Johnson and its subsidiaries worked in concert with the other defendants to perpetuate the fraudulent marketing of Lupron. In particular, plaintiffs point to Coleman's guilty plea to a criminal information, which accused him of encouraging doctors to purchase excess quantities of Lupron in states where the cost of the drug to the doctor was low. These excess amounts would then be sold to doctors in other states, who would in turn charge patients the inflated national price for Lupron. This "diversion" scheme is alleged to have been an attempt to avoid the negative impacts of state legislation which favored competitors of Lupron. Plaintiffs contend that the profits available from diversion encouraged doctors to continue the fraudulent sale of Lupron to patients, rather than switching to less costly alternatives.
>
> In light of these allegations, the court finds that plaintiffs could establish a claim for relief against Coleman....
>
> ...Given the standard of review, the court finds that Coleman was not fraudulently joined in this action.

*See* Judge Howard's Opinion at 12-14, at Exhibit "G."

Further, the actions of GSK's co-defendant here, TAP (the removing party in *Stetser*), post-remand speaks volumes as to the true position of the manufacturer defendants on whether the Individual Defendants are proper parties to this case. Less than two months after Judge Howard's remand decision, TAP sought leave in the trial court to file an amended Answer to assert cross-claims <u>against</u> each of the four Individual Defendants. Remarkably, TAP has not sought leave to assert the same cross-claims here against the same Individual Defendants. Obviously, TAP is hiding behind its co-defendant GSK in an effort to duplicate its failed litigation strategy in *Stetser*.