b.    The Ten Original Corporate Defendants Have Waived the Right to Consent to Removal.

Plaintiff's Supplemental Memorandum filed with this Court on October 1, 2003 details the status of the law in this Circuit concerning the ability of a later-served defendant, like GSK, to satisfy the unanimity requirement where the thirty-day period for removal already has expired for previously served co-defendants, like the original defendants here, who elected not to remove the case and, in fact, "tested the state-court waters." *Brown v. Damco*, 792 F.2d 478, 482 (5th Cir. 1986); Memorandum in Support of Motion for Remand (MDL Docket No. 569). Briefly stated, plaintiff's position is that strict construction of the thirty day period for removal and the rule of unanimity prevents the ten original defendants from resurrecting the right to consent to removal once the right has been waived. "Where, as here, [the original defendants have] forfeited the right to remove, that waiver, in effect, binds all subsequently named defendants." *Gorman v. Abbott Labs.*, 629 F. Supp. 1196, 1202 (D.R.I. 1986). Because the original defendants forfeited the right to remove, as of January 2003 when GSK removed the case, they had no power to consent to GSK's removal because their waiver bound GSK.

3.    **Unanimity Is Required Whether Removal Is Based Upon Diversity or Federal Question Jurisdiction.**

The rule of unanimity must be followed whether the attempted removal is based upon diversity of citizenship or federal question jurisdiction. "In the context of federal question jurisdiction, ...there are two conditions precedent to a case being removed to federal court: (1) the existence of a federal question and (2) the consent of all defendants." *Parker v. County of Oxford*, 224 F. Supp.2d 292, 294 (D. Maine 2002). *See McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1342 (D. Kansas 1997) ("The unanimity rule applies to both diversity cases and federal question cases.").

> Application of the unanimity rule to federal question cases eliminates the risk of inconsistent state and federal adjudications; prevents one defendant from imposing

> his choice of forum upon other unwilling defendants and an unwilling plaintiff; and
> advances, as a matter of comity, the legislative and judicial policy that state courts
> are as competent as federal courts to hear federal questions that Congress has not
> committed to exclusively federal jurisdiction.

*Spillers*, 959 F. Supp. at 369 (citing *Hess v. Great Atlantic & Pac. Tea Co., Inc.*, 520 F. Supp. 373,

375 (N.D. Ill. 1981)).

### B.   ERISA PREEMPTION

Plaintiffs' well-pleaded state law claims <u>in this case</u>[28] are not preempted by ERISA.

Defendants cite two ERISA provisions that they contend "completely preempt" plaintiff's state law

claims: 29 U.S.C. § 1144(a) ("Section 514") and 29 U.S.C. § 1132(a)(3) ("Section 502"). *See*

Notice of Removal at ¶¶ 14-16; *see also* GlaxoSmithKline's Combined (i) Reply to Plaintiff's

Opposition to Motion to Stay and (ii) Opposition to Plaintiff's Motion to Remand ("Remand Opp.")

at 17-21 (*Swanston* Docket Nos. 144, 168-69). With respect to Section 514 preemption, GSK asserts

that plaintiff's claims necessarily "relate to" to an unknown number of ERISA-qualified benefit plans

that may be included among the members of the putative class, *i.e.* "all persons and entities in

Arizona who paid any portion of the cost of cancer drugs and other prescription drugs... which cost

was based, in whole or in part, upon the published AWPs for these drugs." Notice of Removal,

---

[28]     Plaintiff urges this Court to give the *Swanston* case, and the distinct causes of action under
Arizona state law stated herein, the separate consideration it is due.  It was obvious to the
undersigned counsel for plaintiff at the hearing on October 9th that the plaintiffs' counsel in MDL
1456 have different plaintiffs [*i.e.*, third party payors and associations], different claims [*i.e.*, federal
RICO and common law claims of conspiracy for 88 <u>separate</u> conspiracies] and different views of the
impact of ERISA on their case.  In contrast, the undersigned counsel, as co-lead counsel for the
national certified class in North Carolina state court Lupron® case, have successfully litigated remand
issues, motions to dismiss and class certification on behalf of individual consumers, like Mr.
Swanston, without ERISA standing either as a bar to the claims or as a basis for removal jurisdiction.
This reality should give this Court pause as it considers the scope and impact of ERISA on the claims
stated in *Swanston* because the state law claims in *Swanston* are no different from the state law
claims asserted in *Stetser*, wherein a national class has been certified, and *Walker v. TAP*, wherein
a New Jersey statewide class has been certified.  *See* www.LupronLaw.com (for more information
on these cases).

¶¶14-15; Second Amended Complaint, ¶ 102. With respect to Section 502 preemption, GSK claims that "participants, beneficiaries, or fiduciaries" of these same unknown absent putative class member ERISA-qualified benefit plans have exclusive redress for equitable relief under ERISA "for any act or practice which violates any provision of ERISA or the terms of the ERISA-qualified employee benefits plan." Notice of Removal, ¶17.

GSK's arguments fail for two simple reasons. First, it is well-settled that "conflict preemption" under Section 514 is only a federal law defense, which does not serve as a basis for federal court jurisdiction over a case alleging only state law claims. The question of whether plaintiff's state law claims "relate to" absent class member ERISA plans goes only to whether plaintiff's state law claims must be dismissed, not whether this Court has jurisdiction over those claims. Thus, the proper course is for this Court to remand this action to state court, where the question of Section 514 preemption may be determined.

Second, as for Section 502 "complete preemption," GSK has made no attempt to identify (i) the alleged practice that violated one or more ERISA provisions; (ii) the specific ERISA provisions that were violated; (iii) the alleged practice that violated the terms of one or more of the absent class member ERISA-qualified benefit plans; (iv) the specific Plans and terms that were violated; or (v) how this ERISA provision, which is limited to equitable claims, otherwise provides plaintiff with a federal cause of action or remedy against all defendants for the fraudulent scheme and conspiracy alleged to have violated Arizona law. As such, GSK has failed to meet its burden to prove that this Court has jurisdiction over this matter, and plaintiff's motion for remand should be granted.

## 1. ERISA Section 514 Does Not Provide a Basis for Federal Court Jurisdiction in This Case.

GSK claims that its removal was proper because plaintiff's state law claims are preempted by ERISA Section 514. Section 514 states as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a) (2003) (emphasis added).

For purposes of Section 514, a law "relates to" an ERISA-qualified benefit plan if it "(1) has a connection with, or (2) reference to, such a plan." *Calif. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997).[29] For "connection with" preemption to apply, the Court must determine that the state law interferes with the Congressional objective to regulate the administration (as opposed to the content) of ERISA plans. *Dillingham*, 519 U.S. at 325-37; *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985). For "reference to" preemption to apply, the law must specifically refer to ERISA plans, or otherwise make the presence of an ERISA plan necessary to the very operation of the law. *Dillingham*, 519 U.S. at 325; *Carpenters Local Union No. 26 v. United States Fid. & Guar. Co.*, 215 F.3d 136, 143 (1st Cir. 2000). Courts routinely find that "garden-variety" state law claims against non-fiduciary plan advisors are not preempted by Section 514. *See Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 324 (2d Cir. 2003), *cert. denied*, 2003 WL 22004991, 712 U.S.L.W. 3148 (Oct. 20, 2003) (citing cases).

Preemption under Section 514 does not justify removal to federal court. *See Danca v. Private Healthcare Sys., Inc.*, 185 F.3d 1, 4-5 (1st Cir. 1999) ("Standing alone, the likelihood or even certainty of defendants' raising a colorable ERISA § 514 preemption defense is no basis for federal jurisdiction."). *See also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987) ("ERISA preemption, without more, does not convert a state law claim into an action arising under federal

---

[29]     The United States Supreme Court and some Circuit Courts have criticized the words "relate to" in Section 514 as almost impossibly vague. *See Toumajian v. Frailey*, 135 F.3d 648, 654 n.3 (9th Cir. 1998) (citing cases).

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

law"); *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003) ("The fact that a state law claim is 'preempted' by ERISA – *i.e.*, that it conflicts with ERISA's exclusive regulation of employee welfare benefit plans – does not, however, provide a basis for removing the claim to federal court."); *Toumajian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998) ("The mere fact that ERISA preemption under § 1144(a) may be raised as a defense, or is in actuality a defense, does not confer jurisdiction or authorize removal."); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir.), *cert. denied*, 516 U.S. 1009 (1995) ("That the Supreme Court has recognized a limited exception to the well-pleaded complaint rule for state law claims which fit within the scope of § 502 by no means implies that all claims preempted by ERISA are subject to removal."); *Rice v. Panchal*, 65 F.3d 637, 640 (7th Cir. 1995) ("But state law claims that are merely subject to 'conflict preemption' under § 514(a) are not recharacterized as claims arising under federal law; in such a situation, the federal law serves as a defense to the state law claim, and therefore, under the well-pleaded complaint rule the state law claims do not confer federal question jurisdiction."); *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) ("Removal and preemption are two distinct concepts."); *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 272 (2d Cir. 1994) ("Metropolitan Life established an exception to the general rule that a state claim that is preempted by ERISA may not, without more, be considered a federal claim for purposes of the well-pleaded complaint rule."). Indeed, the First Circuit has gone so far as to say that "ERISA § 514 is <u>not</u> <u>relevant</u> to the complete preemption analysis; courts look instead <u>only</u> to ERISA § 502(a)". *Danca*, 185 F.3d at 5 (emphasis added) (citing cases).

GSK contends that plaintiff's claims were properly removed because they "relate to" ERISA plans, and are thus preempted by Section 514. GSK submits that plaintiff's claims "necessarily relate to" ERISA plans because plaintiff (an individual consumer) seeks to represent a putative class

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

of prescription drug purchasers that may include ERISA-qualified benefit plans, or the participants, beneficiaries, or fiduciaries of these plans. GSK further contends that plaintiff's claims "relate to" ERISA plans because plaintiff's claims on behalf of the absent class member plans "will involve the interpretation and analysis of the terms of thousands of ERISA plans." *See* Notice of Removal, ¶¶ 14-15.

Plaintiff does not accept GSK's characterization of plaintiff's claims or the class, or the notion that this case somehow "relates to" ERISA plans and payers for purposes of ERISA Section 514. Plaintiff's claims are brought exclusively under state laws of general applicability that make no reference to ERISA plans, and that make no attempt to regulate the administration of ERISA plans. Indeed, whether or not an absent class member is an ERISA-qualified benefit plan is irrelevant to whether or not the class member was overcharged for the prescription drugs at issue in this case. No class member needs to prove that he/she/it is (or is not) an ERISA plan, or a plan participant, to recover. No ERISA plan terms need to be interpreted or analyzed. Assuming plaintiff prevails on the merits, all that absent class members will be required to show is that they purchased the drugs at issue at inflated prices during the applicable time period.

But more importantly for purposes of plaintiff's remand motion, even assuming that GSK's assertions are correct, the mere fact that plaintiff's class definition may "relate to" ERISA plans under Section 514 does not justify removal of plaintiff's case to federal court. Section 514 preemption is to be decided in the context of a motion to dismiss or a motion for class certification, not a motion for remand.[30]  Thus, while defendants' contention that this case "relates to" ERISA

---

[30]     Thus, for example, this Court recently had occasion in the MDL litigation to determine whether the MDL plaintiffs' state law claims were preempted by ERISA Section 514 in the context of a motion to dismiss brought by defendants against third-party payors. *See generally* May 13, 2003 Memorandum and Order in this case ("May 13th Order") at 3, 33-38. *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 263 F. Supp.2d 172, 177, 189-92 (D. Mass. 2003). The Court will

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

plans might be relevant to whether plaintiff's state law claims should be dismissed, this has no bearing on whether plaintiff's state law claims were properly removed.[31] Unless there is some other basis for jurisdiction, this Court simply "lacks [the] power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *See Dukes*, 57 F.3d at 355.

> ### 2.   ERISA Section 502(2)(a)(3) Does Not Provide a Basis for Federal Court Jurisdiction in This Case.

GSK relies on ERISA Section 502 as an alternative basis for preemption. State law claims may be "completely preempted" by ERISA, and thus may be removable only if they fall within the scope of ERISA's civil enforcement provisions as embodied in Section 502. To fall within the scope

---

recall that it determined that the third-party payors' state law claims were not preempted. *Id.*

Moreover, the notion that a plaintiff's "consumer" status somehow diminishes his adequacy as a representative of a class of both consumers and ERISA-qualified benefit plans was recently rejected in *Stetser, et al. v. TAP Pharmaceutical Products Inc., et al.*, Case No. 1 CVS 5268 (In the General Court of Justice, Superior Court Division, New Hanover Cty, N.C.)), a case alleging that the defendants, *inter alia*, artificially inflated the AWP for Lupron®. The *Stetser* defendants claimed that the consumer plaintiffs could not adequately represent both individuals and third-party insurer entities. *See* Defendants TAP Pharmaceutical Products Inc. and Abbott Laboratories' Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, dated November 26, 2002, at 26-28, 69. Copies of the pertinent pages of this Memorandum are attached hereto as Exhibit "H." Rejecting this contention, Judge Paul L. Jones certified the *Stetser* plaintiffs as representatives of a nationwide class of all persons and entities who purchased Lupron®. *See* Order, Findings of Fact and Conclusions of Law regarding Class Certification in *Stetser*, dated April 24, 2003 (certifying a class of all "persons and entities... who paid any portion of the cost of Lupron® based upon, in whole or in part, the published AWP for Lupron® (and/or Zoladex® in LCA states)," thereby necessarily including third party payors which may or may not be ERISA plans and beneficiaries.) *See also Clark v. TAP Pharmaceutical Prods.*, ___ N.E.2d ___, No. 5-02-0316, 2003 WL 22273247 (Ill. App. 5 Dist. Oct. 1, 2003) (affirming state circuit court's certification of nationwide class that included third-party non-ERISA payors, with only one consumer as a class representative); NEWBERG ON CLASS ACTIONS, § 3.16, at 3-87 to 3-88 ("While some courts have suggested that differences in the amount of damages claimed will make a plaintiff's claim atypical, most courts have declined to even consider that argument, and nearly all of those that have ruled on it, have rejected it outright.").

[31]     It is noteworthy that in the seven (7) Motions to Dismiss that were filed in this case by defendants no issue of ERISA preemption was raised. As a result, since these motions were denied by the Complex Court, this issue has been waived by these defendants.

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

of Section 502, "the state law must be properly characterized as an 'alternative enforcement mechanism' of ERISA § 502(a) or of the terms of an ERISA plan." *Danca*, 185 F.3d at 5.

Although Section 502 provides "six carefully integrated civil enforcement provisions," *see Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985), GSK relies upon only one provision as a basis for removal.[32]  *See* Notice of Removal 16; Remand Opp. at 20.  This provision, Section 502(a)(3), provides:

> **§ 1132. Civil enforcement**
>     (a)    Persons empowered to bring a civil action
>              A civil action may be brought-
>              (3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...

29 U.S.C. § 1132(a)(3) (2003).  As the Supreme Court has held, "Section 502(a)(3) does not authorize appropriate equitable relief at large, but only for the purpose of redressing any violations or enforcing any provisions of ERISA or an ERISA plan...." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 239 (2000) (internal citations and quotations omitted) (emphasis in original).

GSK contends that because plaintiff seeks to represent a class that may include participants, beneficiaries, or fiduciaries of ERISA-qualified plans, and because he seeks equitable relief along with monetary damages, this case "falls squarely within" Section 502(a)(3).  *See* Remand Opp. at 20.  GSK, however, points to no ERISA provision, and no ERISA plan, that plaintiff is supposedly attempting to enforce with his purely state law claims.  Nor does GSK attempt to identify any ERISA

---

[32]    Thus, for example, GSK makes no assertion that plaintiff is bringing a claim for recovery of improperly-denied benefits under §502(a)(1)(B), or for improperly-processed benefits under §502(b)(2)(A).

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

21

violation at issue in this case. The fact is, plaintiff is seeking to recover for consumer fraud committed by pharmaceutical companies, not to redress an ERISA violation or to enforce the terms of an ERISA plan. As such, GSK has not met its burden to show that federal jurisdiction lies. *See Daniels v. Bursey*, No. 03C1550, 2003 WL 22053580, at * 7 (N.D. Ill. Sept. 3, 2003) (finding that plaintiffs' state law consumer fraud claims were not preempted by ERISA because "plaintiffs are entitled to pursue some cause of action for their alleged injuries, and defendants have given no indication of how ERISA addresses the particular wrong claimed here"); *Flint v. ABB, Inc.*, 229 F. Supp.2d 1338, 1344 (S.D. Fla. 2002), *aff'd*, 337 F.3d 1326 (11th Cir. 2003) (dismissing Section 502(a)(3) claim because "[p]laintiff has not adequately alleged that [the defendant] violated either a specific ERISA requirement or the terms of the [ERISA] Plan itself, such that the alleged violation would give rise to an equitable claim...").

Moreover, Mr. Swanston has no cause of action under Section 502(a)(3). No defendant contends that it is an ERISA fiduciary, and they all appear to be non-fiduciaries.[33] But ERISA Section 502(a)(3) only permits suits against non-fiduciaries who assisted or participated in a

---

[33]    Although defendants do not claim to be "ERISA fiduciaries" in this case, in *Healthcare Service Corp. v. TAP Pharmaceutical Prods.*, 274 F. Supp.2d 807, 813-14 (E.D. Tex. 2003), the court found the manufacturers of Lupron® to be "fiduciaries" within the meaning of 29 U.S.C. § 1002(21)(A), because they "kept and exercised control over plan assets" by selling Lupron® to ERISA plans for money. Thus, the court found the Lupron® manufacturers to be within the class of defendants contemplated by ERISA Section 502(a)(3). The *HCSC* Court also held that the Lupron® manufacturers were "parties in interest" within the meaning of 29 U.S.C. § 1002(14)(A)-(B) because by selling Lupron® (a product), the manufacturers were "providing services" to the plan. *Id.*  The court then assumed for purposes of the plaintiff's remand motion that the plaintiff (an administrator for an ERISA-regulated plan) had "caused the plan to engage in transactions which it knew, or should have known, constituted the improper transfer of assets to defendants, as parties in interest." *Id.* These "prohibited transactions," the court found, brought the case within Section 502(a)(3). The *HCSC* case is on appeal. *But see, Jarman v. TAP Pharmaceutical Products, Inc.*, No. 02-CV-0119-MJR (S.D. Ill.) (holding that TAP failed to demonstrate that consumer/plaintiff's cause of action fell within scope of any ERISA provision enforceable under § 502(a). However, when pressed by this Court at the hearing on October 9, counsel for GSK expressly denied that GSK or the other drug companies were "fiduciaries."

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

22

fiduciary's breach of duties. *See Harris Trust & Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238, 249-53 (2000); *Terry v. Bayer Corp.*, 145 F.3d 28, 36 (1st Cir. 1998); *Santana v. Deluxe Corporation*, 920 F. Supp. 249, 253 (D. Mass. 1996). Again, plaintiff makes no substantive allegation about ERISA plans whatsoever, much less an allegation that an ERISA fiduciary breached its duties, and that defendants assisted or participated in such breach. To the contrary, plaintiff alleges that consumers and ERISA-qualified benefit plans who were overcharged for prescription drugs were all victims of defendants' scheme, and were all equally blameless.[34] The economic harm to the class was caused solely by defendants and their co-conspirators, not ERISA plan fiduciaries or other ERISA participants.

Nor would plaintiff be a proper party to a Section 502(a)(3) action under the facts of this case. As GSK strenuously argues, plaintiff's proposed class seeks to recover payments made by participants in ERISA-qualified benefit plans to which plaintiff does not belong. *See* Remand Opp. at 21. But, "ERISA carefully enumerates the parties entitled to relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action..." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust of So. Calif.*, 463 U.S. 1, 27 (1983). Thus, actions under Section 502(a)(3) are limited to "a participant, beneficiary, or fiduciary" of an ERISA plan who seeks redress for violations of "the terms of the plan" to which he/she belongs. Plaintiff has uncovered no case in which a consumer successfully brought an ERISA action to redress a violation of the terms of a plan to which the plaintiff did not belong, or to obtain recovery for overcharges for products the plaintiff did not purchase. As such, it appears that plaintiff has no direct cause of action under Section 502(a)(3) for violations suffered by these plans, or for purchases

---

[34]    Indeed, in the *Swanston* Complaint, Mr. Swanston expressly disavowed any right to make a claim under federal law in this case, including under ERISA, even if such right existed.

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

23

of these other drugs.[35]

Moreover, even if plaintiff did have a cause of action under Section 502(a)(3), the remedy he seeks in this case is not available. ERISA does not permit a civil action for legal damages against a non-fiduciary charged with knowing participation in a fiduciary breach. *Reich v. Rowe*, 20 F.3d 25, 26, 28 (1st Cir.1994). Instead, Section 502(a)(3) is limited to equitable claims, and provides only equitable remedies. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2000) (limiting restitution under Section 502(a)(3) to "particular funds or property" that can actually be traced from plaintiff to defendant); *Honolulu Joint Apprenticeship & Training Cmte. of United Assoc. v. Local Union No. 675*, 332 F.2d 1234, 1237-38 (9th Cir. 2003) (holding that an equitable action for restitution is available under Section 502(a)(3) only if there is an identifiable res); *Gerosa*, 329 F.3d at 321 ("Classic compensatory and punitive damage awards are never included within 'other appropriate equitable relief'" in Section 502(a)(3)). Although plaintiff does allege a claim for unjust enrichment, plaintiff's request for relief seeks to impose general personal liability by requesting compensatory, treble, and punitive damages. These remedies are in the nature of legal (as opposed to equitable) restitution, and are not allowed under Section 502(a)(3). *See Local Union No. 675*, 332 F.2d at 1238.

---

[35]    Plaintiff does, however, have standing to bring these claims under state law. In the proceedings before the Arizona Superior Court, Defendant AstraZeneca Pharmaceuticals argued that "Plaintiff does not allege that he has ever paid all, or any portion of, the cost of any AstraZeneca drug. Accordingly, Plaintiff has no distinct and palpable injury caused by AstraZeneca and lacks standing to assert any claims against AstraZeneca." *See* Defendant AstraZeneca Pharmaceuticals L.P.'s Motion to Dismiss and Supporting Memorandum, filed on September 6, 2002, at 3 at Exhibit "I." The court rejected this argument and denied AstraZeneca's motion to dismiss, holding that "[t]he gravamen of Plaintiff's complaint is a conspiracy in which AstraZeneca participated. If it is proven that AstraZeneca was a co-conspirator with TAP and TAP is found liable, then AstraZeneca as a co-conspirator can be held liable." *See* Decision of Arizona state court at Exhibit "B," at 2. *See also* n. 30, supra (describing state court decisions certifying nationwide classes of all Lupron® purchasers, including ERISA and non-ERISA-qualified benefit plans).

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

24

The fact that plaintiff has no cause of action or remedy under 502(a)(3) brings this case within the principle enunciated in *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 814 (1986), and recently applied by this Court to other improperly-removed claims in the MDL litigation. *See State of Minnesota v. Pharmacia Corp.*, 2003 WL 21977227 (D. Mass. Aug. 20, 2003); *State of Montana v. Abbott Laboratories*, 266 F. Supp.2d 250, 256-57 (D. Mass. 2003). Because plaintiff has no private cause of action under the federal law which GSK asserts preempts plaintiff's state law claims, *Merrell Dow* instructs that this case must be remanded back to Arizona state court. *See State of Minnesota*, 2003 WL 21977227 at *4. And, absent a federal remedy of the nature sought by plaintiff under his state law claims, there is no federal preemption of these claims. *See Perry v. P\*I\*E Nationwide*, 872 F.2d 157, 162 (6th Cir. 1989), *cert. denied*, 493 U.S. 1093 (1990) (finding no ERISA preemption of state law fraud, misrepresentation and promissory estoppel claims, because Congress had not provided a remedy of the type sought by the plaintiffs for these claims).

Finally, even if plaintiff had a cause of action under ERISA Section 502(a)(3), the exclusive (albeit limited) remedies provided under <u>federal</u> law do not necessarily foreclose alternate remedies under <u>state</u> law. *Gerosa*, 329 F.3d at 324. As the *Gerosa* Court observed, "ERISA's principal goal is to protect the interests of participants in employee health benefit plans and their beneficiaries." 329 F.3d at 328. Unless the state law "affects relationships" among "the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself," courts are reluctant to find that Congress intended for the state law to be preempted. *Id. See also Dukes*, 57 F.3d at 358 (finding no preemption under ERISA Section 502, because "the plaintiffs are not attempting to define new 'rights under the terms of the plan'; instead, they are attempting to assert their already-existing rights under the generally-applicable state law of agency and tort").

In this case, plaintiff is relying on common and statutory laws of general application, to seek

class wide recovery against the defendant drug manufacturers for fraudulently inflating the prices of their drug products. The state laws in question have no effect on any of the relationships regulated by ERISA. Any involvement in this case by ERISA-qualified benefit plans has nothing to do with their status under ERISA, but only with their status as purchasers of the products at issue. Thus, there is little if anything within the objectives of ERISA to warrant finding that Arizona's common and statutory laws are preempted by ERISA in this case. Accordingly, this case should be remanded back to state court.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff, Robert Swanston, respectfully requests this Honorable Court to grant his Motion for Remand and return this case back to the Superior Court of Maricopa County, Arizona, where it belongs.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated: October 24, 2003 | [FILED ELECTRONICALLY-VIA VERILAW] |
| | Donald E. Haviland, Jr., Esquire |
| | TerriAnne Benedetto, Esquire |
| | **KLINE & SPECTER, P.C.** |
| | 1525 Locust Street, 19th Floor |
| | Philadelphia, PA  19102 |
| | (215) 772-1000 telephone |
| | (215) 735-0957 facsimile |
| | |
| Harry J. Miller, Esquire | Jonathan Shub, Esquire |
| **Harry J. Miller, P.L.L.C.** | **SHELLER, LUDWIG & BADEY** |
| Arizona Bar No.: 014556 | 1528 Walnut Street, 3rd Floor |
| 80 E. Columbus Avenue | Philadelphia, PA  19102 |
| Phoenix, AZ 85012 | (215) 790-7300 telephone |
| (602) 264-4965 telephone | (215) 546-0942 facsimile |
| (609) 277-0144 facsimile | |
| | Marvin K. Blount, Jr., Esquire |
| Kent Williams, Esquire | **THE BLOUNT LAW FIRM, P.L.L.C.** |
| **GIEBEL GILBERT WILLIAMS KOHL** | 400 West First Street |
| 2233 North Hamlin Avenue, Suite 620 | Greenville, NC 27834 |
| St. Paul, MN  55113 | (252) 752-6000 telephone |
| (651) 633-9000 telephone | (255) 752-2174 facsimile |
| (651) 639-1551 facsimile | |

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION

26

Lewis B. April, Esquire
**COOPERLEVENSONAPRILNIEDELMAN**
**WAGENHEIM**
1125 Atlantic Ave.-3RD Fl., P.O. Box 1125
Atlantic City, NJ 08404-1125
(609) 572-7338 telephone
(609) 344-0939 facsimile

### ATTORNEYS FOR PLAINTIFF AND THE CLASS

U:\DATA\LIPKON MARTIN\Lupron - AZ - (030204)\Pleadings\Second Supplemental Memo on Remand Motion - EXIBA and Unamimity.wpd

© 2003 KLINE & SPECTER
A PROFESSIONAL CORPORATION