UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

2003 DEC 29  P 4: 19

U.S. DISTRICT COURT
DISTRICT OF MASS.

)
IN RE PHARMACEUTICAL INDUSTRY   )   MDL NO. 1456
AVERAGE WHOLESALE PRICE         )
LITIGATION                      )   CIVIL ACTION NO. 01-CV-12257-PBS
                                )
                                )   Judge Patti B. Saris
THIS DOCUMENT RELATES           )
TO ALL ACTIONS                  )
                                )

# DEFENDANT HOFFMANN-LA ROCHE INC.'S
# REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
# MOTION FOR A CONTINUED STAY OF DISCOVERY

**I.     Introduction**

Plaintiffs' Opposition to Hoffmann-La Roche Inc.'s ("Roche") Motion for a Continued Stay of Discovery implicitly concedes that (1) plaintiffs will suffer no prejudice by a continued stay of discovery as to Roche until decision on Roche's motion to dismiss and (2) the AMCC does not contain particularized allegations of fraud as to Roche, but rather requires this Court to make a series of inferences regarding the effect of conduct by other manufacturers on Roche in order to meet the dictates of Fed. R. Civ. P. 9(b). Failing that, plaintiffs contend, they should be given yet another chance to find the evidence they need to pass 9(b) muster. Plaintiffs' arguments do nothing more than confirm the fact that they have failed to keep the promise they made to this Court during the January 13, 2003 hearing -- that the AMCC would cure the defects of the MCC as to Roche -- and confirm that this Court should not give them a third bite at the apple. The stay should be continued as to Roche.

## II. Argument

### A. Plaintiffs Do Not Dispute Lack Of Prejudice To Them And Substantial Burden On Roche Were Discovery To Proceed Prior To A Ruling On The AMCC

Plaintiffs do not dispute that a stay of discovery pending the Court's ruling on Roche's individual motion to dismiss the AMCC will not prejudice them or impede the overall progress of the case. They also do not dispute that unless a stay is ordered, Roche will be forced to undertake expensive and time-consuming efforts to comply with plaintiffs' discovery requests.

### B. Plaintiffs' "Inferences" Do Not Satisfy Rule 9(b) as to Roche, and the Motion to Dismiss is Likely to be Granted

Plaintiffs persist in asserting that they have satisfied the dictates of Rule 9(b) as to Roche in the AMCC by generally outlining the purported practices of the entire pharmaceutical industry, then re-stating the AWP of two Roche drugs, labeling them "fraudulent," and alleging purchasers for the drugs. As this Court has repeatedly noted, and as set forth in Roche's Motion for a Continued Stay as well as in Roche's Motion to Dismiss, this Court's prior opinions and Rule 9(b) require more. *See* Motion for a Continued Stay at 2-4; Roche Motion to Dismiss AMCC at 3-4. *See also* December 12, 2003 Tr. at 58 ("You have to have something from which you can reasonably infer that the price is fraudulent other than saying every pharmaceutical company must be doing it"). Apparently sensing their weakness in this position as to Roche, plaintiffs for the first time in their opposition propose a new argument as to Roche -- Roche, they argue, should be "inferred" to have acted fraudulently because it purchased one of the subject drugs (Kytril) from another defendant (SmithKline Beecham), and purportedly did not change the AWP for that drug.

That this is nothing more than a last second "Hail Mary" pass is evidenced by plaintiffs' failure to propound this argument in *any* of the earlier briefing as to the MCC or AMCC, and in

2

their response to this Court when asked pointedly about the basis for their claim against Roche during the January 13, 2003 hearing. Plaintiffs' counsel did not note any "inference" at that time, but rather conceded "there certainly is no allegation for those three defendants [Roche, Merck and Pfizer] relating to the spread that we've had for the other defendants. And with the right to replead, that will also be correct[ed]." January 13, 2003 Tr. at 103. The AMCC is silent as to this purported "inference," and does not cite a single Roche or SmithKline document from which such an inference can be reached. Just as plaintiffs cannot support a claim against Roche based upon generalized allegations regarding an industry, so they cannot impute the allegedly fraudulent motives of one defendant to another. Plaintiffs do not cite any case law supporting the propriety of such an inference, or the sufficiency of such an inference to meet the requirements of Rule 9(b).

Even if there were a direct allegation in the AMCC of a motive for Roche to commit fraud -- and there is not -- such an allegation would be insufficient to satisfy the particularity dictates of Rule 9(b). *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 14 (1st Cir. 1984) (affirming 9(b) dismissal, stating that although the plaintiffs' complaint "may help establish a motive for fraud, it does nothing to show that fraud was actually committed"); *Driscoll v. Landmark Bank for Savings*, 758 F.Supp. 48, 53 (D. Mass. 1991) (plaintiff's allegation of a motive to commit fraud is not sufficient to support inference that fraud was actually committed).

Plaintiffs' reliance on Judge Stearns' recent opinion denying defendants' motion to dismiss the *Lupron* complaint to support the sufficiency of their allegations as to Roche is similarly misplaced. As noted in Roche's Motion for a Continued Stay, the allegations in the *Lupron* complaint are of a far different quality than those in the AMCC as to Roche. *See* Motion for a Continued Stay at fn 1. For example, plaintiffs claim in their Opposition to have identified,

3

as plaintiffs did in *Lupron*, nine categories of documents used to further the alleged scheme. Opposition at 4-5. They fail to note that not a single Roche document within these categories (or even outside these categories) is identified or referenced in the AMCC:

| Documents plaintiffs allege support their allegations of fraud: | Roche documents identified or referenced in the AMCC: |
|---|---|
| (a) Marketing materials about the AWPs for brand name drugs and the available spread, which were sent by the Defendant Drug Manufacturers to PBMs (including Medco Health) located across the country; | None. |
| (b) Written representations of the AWPs made by the Defendant Drug Manufacturers to the Publishers, which were made at least annually and in many cases several times during a single year; | None. |
| (c) Thousands of written and oral communications discussing, negotiating and confirming the placement of a Defendant Drug Manufacturer's drugs on a particular PBM's formulary; | None. |
| (d) Documents providing information or incentives designed to lessen the prices that each of the PBMs paid for drugs, and/or to conceal those prices or the AWP Scheme; | None. |
| (e) Written communications, including checks, relating to rebates, kickbacks or other financial inducements paid to each of the PBMs to persuade them to advocate one Defendant Drug Manufacturers' drug over a drug manufactured by a competitor; | None. |

4

| | |
|---|---|
| (f) Written and oral communications with U.S. Government agencies and private insurers that fraudulently misrepresented what the AWPs were, or that were intended to deter investigations into the true nature of the AWPs or to forestall changes to reimbursement based on something other than AWPs; | None. |
| (g) Written and oral communications with health insurers and patients; | None. |
| (h) Receipts of money on tens of thousands of occasions through the U.S. mails and interstate wire facilities -- the wrongful proceeds of the Defendant Drug Manufacturers' AWP Scheme; and | None. |
| (i) In addition to the above-referenced RICO predicate acts, Defendants' corporate headquarters have communicated through use of the U.S. mails and by interstate wire facilities with their various local headquarters or divisions, in furtherance of the AWP Scheme. | None. |

As with the MCC, plaintiffs have failed to meet the dictates of Rule 9(b) as to Roche in the AMCC, and Roche's Motion to Dismiss is likely to be granted.

C.  Plaintiffs Are Not Entitled To *Becher* Discovery

Plaintiffs argue that failing the above, the Court should give them a third bite at the apple, and allow pre-dismissal discovery under *New England Data Services v. Becher*, 829 F.2d 286 (1st Cir. 1987). The dictates of *Becher*, however, are inapposite here. While *Becher* may permit plaintiffs to fill in *minor* gaps in a set of *detailed* allegations, it does not permit outright fishing expeditions to bolster guilt-by-association allegations of fraud, as plaintiffs attempt in this case.

5

See *Konstantinakos v. Fed'l Dep. Ins. Corp.*, 719 F. Supp. 35, 41 (D. Mass. 1989) (*Becher*'s narrow exception permits plaintiff only to fill in specifics of particular fraudulent communications, not to provide information that should have been alleged in initial complaint); *Gott v. Simpson*, 745 F. Supp. 765, 770 (D. Me. 1990) (*Becher* discovery not available to flesh out conclusory allegations of fraud); *accord Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (same).

## III.   Conclusion

For the reasons set forth herein and in Roche's opening brief, Roche respectfully requests that its motion be granted and that the Court stay discovery as to Roche pending the Court's ruling on Roche's individual motion to dismiss.

Dated:  December 29, 2003

Respectfully submitted,

Kevin R. Sullivan (*admitted pro hac vice*)
Grace Rodriguez (*admitted pro hac vice*)
John D. Shakow (*admitted pro hac vice*)
KING & SPALDING LLP
1730 Pennsylvania Avenue, N.W.
Washington, D.C. 20016
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

Colleen Hennessey
PEABODY & ARNOLD, LLP
50 Rowes Wharf
Boston, MA 02110
Telephone: (617) 951-2100
Facsimile: (617) 951-2125

Attorneys for Defendant Hoffmann-La Roche Inc.

## CERTIFICATE OF SERVICE

I, John D. Shakow, hereby certify that a true and correct copy of the foregoing Defendant Hoffmann-La Roche Inc.'s Reply Memorandum in Further Support of Its Motion for a Continued Stay of Discovery was served upon all counsel of record via Verilaw on December 29, 2003.

_____
John D. Shakow