UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————————— ) | |
| IN RE: PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | |
| ———————————————————— ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| ) | |
| Thompson v. Abbott Laboratories, et al. ) | **MDL NO. 1456** |
| Civ. Action No. 1:03-cv-11286-PBS ) | |
| ) | **CIVIL ACTION NO.** |
| Turner v. Abbott Laboratories, et al. ) | **01-12257-PBS** |
| Civ. Action No. 1:03-cv-10696-PBS ) | |
| ) | |
| Congress of California Seniors v. ) | |
| Abbott Laboratories, et al. ) | |
| Civ. Action No. 1:03-cv-10216-PBS ) | |
| ) | |
| ———————————————————— ) | |

**MEMORANDUM AND ORDER**

January 9, 2004

Saris, U.S.D.J.

**INTRODUCTION**

Plaintiffs Thompson and Turner bring the current actions on behalf of themselves, as private attorneys general representing the general public, and as class representatives under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 (1977). Plaintiff Congress of California Seniors brings its action on behalf of its members and the general public. Plaintiffs claim that Defendant pharmaceutical companies violated the UCL by misrepresenting the average

wholesale prices ("AWP") of their drugs, causing potentially millions of entities, including ERISA plans, participants, and beneficiaries, to overpay for prescription drugs.  They seek injunctive relief, restitution, and disgorgement of profits, and Thompson also seeks damages.[1]

Defendants have removed the suits from state court on the ground that the state law claims are completely preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  Plaintiffs seek remand on two grounds: first, that the state law claims do not create impermissible alternative enforcement mechanisms under ERISA Section 502(a), 29 U.S.C. § 1132(a), or otherwise "relate to" ERISA under Section 514(a), 29 U.S.C. § 1144(a); and second, that Plaintiffs lack Article III standing to bring these UCL claims in federal court.

After hearing, the Court **<u>DENIES</u>** the motions for remand of Thompson, of the Congress of California Seniors and of Turner.

---

[1]     The class action brought by Thompson is brought on behalf of "all persons or entities in the State of California who paid directly, made co-payments for, or became obligated to pay the costs of, pursuant to an insurance plan, Medicare Plan B pharmaceuticals manufactured and sold by defendants." (Thompson Compl. ¶ 62.)  Turner seeks to bring suit on behalf of "Plaintiff and all others who paid directly, made co-payments for, or became obligated to pay the costs of, pursuant to an insurance plan, Medicare Plan B pharmaceuticals manufactured and sold by Defendants . . . . Specifically excluded from the Class . . . are those persons who obtain prescription drugs pursuant to any plan subject to [ERISA]."  (Turner Compl. ¶ 52.)

**DISCUSSION**

## I.  California's Unfair Competition Law

An analysis of ERISA preemption necessitates an examination of California's Unfair Competition Law ("UCL").  The UCL forbids "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  UCL § 17200.  Actions to enforce these provisions may be brought by, *inter alia*, "any person acting for the interests of itself, its members or the general public."  UCL § 17204.  The UCL provides for injunctive relief as well as any "orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." § 17203.

The UCL grants relief in equity.  See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 181 (1999) ("'With respect to "unlawful" or "unfair" business practices, [former] section 3369 [today section 17200] undeniably

3

establishes only a wide standard to guide courts of equity'")
(citing Barquis v. Merchants Collection Ass'n, 7 Cal. 3d 94, 111-
112 (1972)); Olson v. Cohen, 131 Cal. Rptr. 2d 620, 624 (2003)
("A UCL action is equitable in nature, and the court may consider
equitable factors in deciding which, if any, remedies authorized
by the UCL should be awarded.") (citation omitted).

The court in which an action under the UCL is brought has
discretion to decide whether or not to allow representative
claims to proceed absent class certification.  Kraus v. Trinity
Mgmt. Servs., Inc., 23 Cal. 4th 116, 138 (2000) ("[B]ecause a UCL
action is one in equity, in any case in which a defendant can
demonstrate a potential for harm or show that the action is not
one brought by a competent plaintiff for the benefit of injured
parties, the court may decline to entertain the action as a
representative suit.") (citation omitted).

In order to ensure that due process is followed, the court
must establish protections for both the non-party represented
persons (to make sure their interests are protected) and the
defendants (to prevent double recoveries).  Bronco Wine Co. v.
Logoluso Farms, 214 Cal. App. 3d 699 (1989) (discussing due
process concerns implicated in procedure utilized with regard to
nonparty grower who received no notice or opportunity to be
heard); Prata v. Super. Ct., 91 Cal. App. 4th 1128, 1142 (2001)
("We are confident that the procedures suggested by the Supreme

Court in _Kraus_ will obviate the due process concerns raised by the court in _Bronco Wine Co. v. Frank A. Logoluso Farms_, supra, 214 Cal.App.3d at page 717."); _Stokes v. Saga Int'l Holidays, Ltd._, 218 F.R.D. 6, *11 (D. Mass. 2003) (Collings, U.S.M.J.) ("[B]oth the _Kraus_ and _Prata_ Courts have made it clear that any due process concerns alleged by the defendants may be resolved by the exercise of equitable discretion so as to provide for due process protections and allow a representative UCL action to proceed.").

## II. Removal

### A. The Well-Pleaded Complaint Rule

A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. _See_, _e.g._, _BIW Deceived v. Local S6_, 132 F.3d 824, 831 (1st Cir. 1997).  Furthermore, the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. _See, e.g._, _Danca v. Private Health Care Sys., Inc._, 185 F.3d 1, 4 (1st Cir. 1999).

Federal removal jurisdiction is normally ascertained by examining the face of the state court complaint that triggered the removal.  _Id._  Here, the parties do not dispute that the complaints present no federal questions on their faces. Normally, such a situation would compel the remand of the cases

to the state court.  See Danca, 185 F.3d at 4.  However, where a claim under state law implicates an area of federal law for which Congress intended "a particularly powerful preemptive sweep," the cause is deemed federal.  Id.  This exception to the well-pleaded complaint rule is a jurisdictional doctrine called complete preemption.  Id.

**B.   Complete Preemption under ERISA § 502(a)**

ERISA's civil enforcement provision, Section 502(a), 29 U.S.C. § 1132(a) (1974), is one area of federal law that triggers the complete preemption exception to the well-pleaded complaint rule.  See Danca, 185 F.3d at 4; Hotz v. Blue Cross & Blue Shield of Mass., 292 F.3d 57, 59 (1st Cir. 2002).  State law claims are properly removable to federal court if they are "completely preempted" by ERISA's civil enforcement provision, § 502(a).  See Danca, 185 F.3d at 4 (collecting cases); see also Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370 (4th Cir. 2003) ("The fact that a state law claim is preempted by ERISA -- i.e., that it conflicts with ERISA's exclusive regulation of employee benefit plans -- does not, however, provide a basis for removing the claim to federal court.  The only state law claims properly removable to federal court are those that are 'completely preempted' by ERISA's civil enforcement provision, § 502(a).") (citation omitted); Plumbing Ind. Board v. E.W. Howell Co., Inc., 126 F.3d 61, 65 (2d Cir. 1997) ("ERISA preemption

provides a valid basis for removal jurisdiction only if (1) the state law cause of action is preempted by ERISA, and (2) that cause of action is within the scope of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a).").

**C.   The Scope of Section 502(a)**

Section 502(a) provides in relevant part:

> A civil action may be brought . . .
>      (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).  This language authorizes (1) a "participant, beneficiary or fiduciary"; (2) to bring a civil action seeking "appropriate equitable relief"; (3) for the purpose of redressing any violations of ERISA or the terms of the plan or enforcing any provisions of ERISA or an ERISA plan.

Section 502(a) does not limit the range of possible defendants.  "[Section] 502(a)(3) itself imposes certain duties, and therefore . . . liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued."  Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 245 (2000) (involving action by ERISA fiduciaries against a third party seeking rescission, restitution and disgorgement on the ground that an ERISA plan entered into a per se prohibited transaction

with a non-fiduciary party in interest, a broker-dealer).  While Section 502 limits the persons who can seek relief to participants, beneficiaries, and fiduciaries, "§ 502(a)(3) admits of no limit (aside from the 'appropriate equitable relief' caveat . . . ) on the universe of possible defendants."  <u>Id.</u>  Instead, the focus is on redressing the act that violates ERISA.  <u>Id.</u> at 246.  A participant, beneficiary, or fiduciary may bring suit against an "other person" under subsection (a)(3) who "knowing[ly] participate(s) in a fiduciary's violation."  <u>Id.</u> at 248.

In <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), the Supreme Court held that ERISA only provides for traditional equitable relief, like certain types of restitution that were "typically available in equity."  <u>Id.</u> at 210 (holding that ERISA does not "in essence, impose personal liability on respondents for a contractual obligation to pay money – relief that was not typically available in equity").  The Ninth Circuit has noted that "Supreme Court cases interpreting § 1132(a)(3) mark a steadily shrinking field of 'appropriate equitable relief' available to plan fiduciaries."  <u>Honolulu Joint Apprenticeship and Training Comm. of United Ass'n Local Union No. 675 v. Foster</u>, 332 F.3d 1234, 1237 (9th Cir. 2003) (distinguishing legal from equitable restitution on the basis of whether plaintiffs seek to recover an identifiable *res*, as is required for equitable

restitution, or merely seek the imposition of personal liability in the form of monetary compensation on a contract claim). Circuits have disagreed on the meaning of "appropriate equitable relief."  See, e.g., Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, ___ F.3d ___, 2003 WL 22961221, n.43 (5th Cir. Dec. 17, 2003) (noting agreement with Seventh Circuit and disagreement with Ninth Circuit on issue of whether a plan administrator's suit to recoup benefits paid to a beneficiary upon the beneficiary's receipt of settlement funds from a third party tortfeasor was essentially legal in nature). Some courts have suggested that under Great-West, disgorgement and restitution claims to unidentifiable funds are not available under ERISA.  See Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 457 n.3 (3d Cir. 2003) (where plaintiff sought restitution and disgorgement of premiums allegedly overpaid as a result of fiduciary's failure to disclose information about physician incentives adversely impacting quality of care, noting that requests for restitution and disgorgement under § 502(a)(3) arguably constituted legal remedies for "there are no funds readily traceable to [plaintiff] over which a constructive trust or other equitable remedy may be imposed . . . [and] it is questionable whether it is even possible to identify an exact amount"); Trustees on Behalf of the Teamsters Benefit Trust v. Doctors Med. Center of Modesto, Inc., 286 F. Supp. 2d 1234, 1239

n.2 (N.D. Cal. 2003) ("The landscape of equitable relief under
ERISA has changed considerably since [a prior Northern District
case] was decided [in 1986].").

In order to establish complete preemption under § 502,
"defendants must show that the state cause of action falls within
the scope of ERISA § 502(a)." Danca, 185 F.3d at 5.  "The fact
that ERISA does not provide the remedy plaintiffs seek is not
relevant; all that matters is that the claim be within the scope
of § 502(a)." Id. at n.4; see also Ingersoll-Rand Co. v.
McClendon, 498 U.S. 133, 144 (1990) (holding that Congress
intended § 502(a) to be the "exclusive remedy" for rights
guaranteed under ERISA).  Preemption is implicated when the state
law at issue has a "real bearing on the intricate web of
relationships among the principal players in the ERISA scenario
(e.g., the plan, the administrators, the fiduciaries, the
beneficiaries, and the employer)." Carpenters Local Union No. 26
v. U.S. Fidelity & Guar. Co., 215 F.3d 136, 141 (1st Cir. 2000).

Two circuits (the Fourth and the Seventh) have "identified
three essential requirements for complete preemption: (1) the
plaintiff must have standing under § 502(a) to pursue its claim;
(2) its claim must 'fall[] within the scope of an ERISA provision
that [it] can enforce via § 502(a)'; and (3) the claim must not
be capable of a resolution 'without an interpretation of the
contract governed by federal law,' i.e., an ERISA-governed

10

employee benefit plan". <u>Sonoco Products Co. v. Physicians Health Plan, Inc.</u>, 338 F.3d 366, 372 (4th Cir. 2003) (citing <u>Jass v. Prudential Health Care Plan, Inc.</u>, 88 F.3d 1482, 1487 (7th Cir. 1996)).  While the First Circuit has not had occasion to address the <u>Jass-Sonoco</u> test, particularly the third prong, it provides a useful roadmap for evaluating complete preemption under Section 502.

### i. Standing

Under the <u>Jass-Sonoco</u> test, the Court must first determine whether plaintiffs have standing to sue under Section 502(a). The individual Plaintiffs (Turner and Thompson) allege they are suing on their own behalf, and they have not disputed that they are ERISA beneficiaries.  Thus, they have standing to sue in their individual capacity as beneficiaries.[2]

The Plaintiff Congress of California Seniors, an association, sues on behalf of its members.  Associations have standing to bring claims under ERISA, as long as the requirements for standing are met.  <u>See</u> <u>Penn Psychiatric Soc. v. Green Spring Health Serv., Inc.</u>, 280 F.3d 278, 281 (3d Cir. 2002) (denying motion to dismiss where association could show that it met

---

[2]    The Court has permitted discovery on the issue of standing and may revisit the issue in accordance with this ruling if necessary.  The Court addresses later the separate issue, not applicable to this jurisdictional discussion, of whether Plaintiffs may bring claims as class representatives and private attorneys general under § 502(a)(3).

standing requirements to bring claim on behalf of its members under ERISA and its members' third party claims on behalf of ERISA beneficiaries).

**ii. <u>Scope</u>**

The second issue is whether Plaintiffs' claim falls within the scope of an ERISA provision that Plaintiffs can enforce via § 502(a).  This issue turns out to be a complex one.  Defendants argue that claims brought by health plans and ERISA beneficiaries to recover ERISA plan assets wrongfully paid out to providers have routinely been found to fall within the scope of ERISA's civil enforcement provisions.  Several courts have asserted ERISA jurisdiction under Section 502 over actions by a fiduciary against providers to recoup overpayments in violation of plan terms.  <u>See</u> <u>Blue Cross & Blue Shield of Alabama v. Weitz</u>, 913 F.2d 1544, 1545 (11th Cir. 1990) (holding that the court had ERISA jurisdiction pursuant to 29 U.S.C. § 1132 over restitution action by fiduciary against psychologist who billed the plan for the services of a clinical social worker in violation of the term of the plan defining "physician"); <u>Central States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral Ass'n</u>, 53 F.3d 172, 173 (7th Cir. 1995) (holding that a federal court has jurisdiction over an action seeking restitution of wrongfully paid ERISA benefits under section 502(a)(2)); <u>Davis v. Smithkline Beecham Clinical Labs.</u>, 993 F. Supp. 897, 899-900 (E.D. Pa. 1998)

(holding that a class action on behalf of ERISA beneficiaries against medical laboratory in state court seeking restitution under state law is preempted under ERISA because the plan permitted payment only for medically necessary tests and the terms of the ERISA plan set forth the criteria for calculating overpayments); Health Care Serv. Corp. v. Tap Pharm. Prods., Inc., 2003 U.S. Dist. Lexis 13556 (E.D. Tex. Aug. 1, 2003) (holding that ERISA preempted fiduciary's state claims against a pharmaceutical company).

These cases have been premised, in part, on the concern that the plan could not pursue a restitution action for overpayment in state court because a state law claim would be preempted by Section 514(a) of ERISA.  See e.g., Central States, 53 F.3d at 173.  To ensure that ERISA plans facing overpayments to providers have a federal remedy, courts have also stretched the statutory language to ensure that non-ERISA parties fall within the scope of Section 502.  See e.g., Health Care Serv. Corp., 2003 at * 6 (holding that pharmaceutical companies are ERISA fiduciaries because they have "kept and exercised control over the disposition of plan assets that they are alleged to have wrongfully obtained"); Central States, 53 F.3d at 173 (holding that a medical care provider who receives "benefits" (that is, overpayments) from the fund at the behest of a participant is a beneficiary).

13

As noted previously, <u>Great-West</u>, decided after most of these cases, clarified that such actions are limited to the type of restitution that was typically available at equity.  534 U.S. at 210.  To the extent that these restitution cases did not examine whether the plaintiffs sought equitable restitution or mere legal restitution, they would probably not survive post-<u>Great-West</u> scrutiny.

However, since <u>New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 654 (1995), it is not clear that such gyrations are necessary.  Most post-<u>Travelers</u> courts have held that an ERISA plan can seek damages against a third party under generally applicable state law to protect the assets of a plan.  <u>See</u> <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 263 F. Supp. 2d 172, 190-91 (D. Mass. 2003) (Saris, J.) (permitting ERISA plans to seek damages for breach of contract against pharmaceutical companies for alleged overpayments based on fraudulent drug prices); <u>In re Lupron® Marketing and Sales Practices Litig.</u>, MDL 1430, __ F. Supp. 2d. ___, 2003 WL 22839966, *17 (D. Mass. Nov. 25, 2003) (Sterns, J.) ("Case law [] uniformly holds that ERISA preemption does not bar a plan from bringing a suit against a third party to protect the assets of the plan or the interests of its beneficiaries.").  Yet the fact that a fiduciary or beneficiary can now seek common law or statutory damages against a non-ERISA entity under state law

does not preclude a remedy under Section 502 for relief traditionally available in equity so long as such a suit seeks to enforce the plan terms or ERISA.

By definition, only equitable relief is available under the UCL.  While it is difficult to tell from the pleadings whether the claim for disgorgement and restitution for the overpayments to pharmaceutical companies in violation of plan terms seeks what is traditionally considered equitable restitution, such a determination is not necessary as Plaintiffs each seek injunctive relief to stop the alleged fraud.  Injunctive relief is an equitable remedy within the scope of section 502(a)(3).

### iii.  The Plan

The final question is whether Plaintiffs have established that their claims are not capable of resolution without interpretation of an ERISA plan.  Plaintiffs claim that Defendants misrepresent the AWP's of their products in violation of the UCL.  They do not allege that AWP is a plan term, which must be construed, or that Defendants have violated the provisions of an ERISA plan or ERISA itself.

Defendants underscore the Thompson complaint's allegations that the payments were made pursuant to an insurance plan (¶ 3) and argue that those allegations could be read to mean that the plan is necessary to determine the criteria for calculating overpayments.  Likewise, California Congress of Seniors states

that "consumers and Third-Party Payors are directly damaged by
fraudulent AWP pricing schemes for drugs *covered by employee
health and benefit plans* or by private insurance because
reimbursement is also typically based on the AWP" (¶ 294).
Plaintiff Turner's complaint is worded similarly to the others,
except that it explicitly excludes from its class definition
those "persons" who obtained drugs pursuant to an ERISA plan.
The complaints are unclear about the extent to which plan terms
must be construed to resolve the dispute.

Frustrated courts have pointed out the "impracticality of
requiring courts to predict solely on the pleadings, the level of
ERISA interpretation warranted in any particular case." <u>Central
States</u>, 43 F.3d at 174 (citing <u>Kentucky Dist. Laborers Council
Health and Welfare Fund v. Hope</u>, 861 F.2d 103, 1005 (6th Cir.
1988)).  While plaintiffs are typically masters and commanders of
their own complaint, the strong policies underpinning ERISA
preemption do not permit vague or artful pleading to omit facts
to defeat removal jurisdiction.  <u>Jass</u>, 88 F.3d at 1488-89.  The
court may look beyond the complaint to ensure that artful
pleading does not defeat a defendant's right to a federal forum.
One the other hand, the mere fact that a plan might have some
tangential or remote relationship to the litigation is not
sufficient to cause a state-law claim to morph into an ERISA one.
<u>Sonoco</u>, 338 F.3d at 374.

16

Plaintiffs rely heavily on this Court's earlier holding in In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d at 190-191. However, that case is distinguishable because plaintiffs alleged that the use of AWP was a term in the contract between the plans and the pharmacy benefit managers, not a term in a plan. Here, Plaintiffs have alleged that the drugs were purchased pursuant to an insurance plan (Thompson, Turner) or were covered by "health and benefit plans" (Congress). To complicate matters, this is a proposed class action, and therefore multiple ERISA plans are implicated. At this preliminary stage, in light of these pleadings, the Court concludes that it is likely that at least some of the claims are not capable of resolution without reference to an ERISA plan.[3] If it turns out after discovery that interpretation of ERISA plan terms is unnecessary, or only tangential, and there is no violation of ERISA, the Court will revisit the issue of remand.

In sum, in view of the facts that (1) Plaintiffs have standing as ERISA beneficiaries, (2) Plaintiffs seek equitable relief within the scope of ERISA, and (3) interpretation of ERISA plans is likely, this Court will assert removal jurisdiction.

**D. Section 514 preemption**

Section 514 provides that ERISA "shall supersede any and all

---

[3]     The Court has permitted discovery into the content of the ERISA plans.

State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144 (1974). In <u>Danca</u>, the First Circuit distinguished the application of the complete preemption doctrine under Section 502(a), which provides the basis for federal jurisdiction, from "conflict" preemption under Section 514, which does not. See <u>Danca</u>, 185 F.3d at 9. Other courts have taken a similar approach. See <u>Sonoco</u>, 338 F.3d at 371 (4th Cir. 2003) ("In the ERISA context, the doctrines of conflict preemption and complete preemption are important, and they are often confused."). Because conflict preemption constitutes a defense to a cause of action, the Supreme Court has recognized it generally "does not appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court." <u>Metro Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987).

Courts have divided the § 514 "conflict preemption" inquiry into two branches: a law "relates to" an ERISA plan if it (1) has a connection with or (2) makes reference to such a plan. <u>Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.</u>, 519 U.S. 316, 324 (1997). The "reference to" branch inquires whether the applicable statute, by its language, applies specifically to ERISA plans. <u>Travelers</u>, 514 U.S. at 656 ("The surcharges are imposed upon patients and HMO's regardless of whether the commercial coverage or membership, respectively, is

18

ultimately secured by an ERISA plan, private purchase, or
otherwise, with the consequence that the surcharge statutes
cannot be said to make 'reference to' ERISA plans in any
manner."); Carpenters, 215 F.3d at 143-45 (establishing multi-
part inquiry for "reference to" analysis: whether actual
operation of statute "imposes requirements on ERISA plans [or]
exempts such plans from otherwise applicable statutory provisions
[,] . . . dictate[s] the form that a covered plan must take,
specif[ies] the mode or manner of plan administration, or
jeopardize[s] the sort of uniformity that Congress aspired to
achieve"). The UCL does not. It makes no reference to ERISA,
and is a law of general application. The UCL "neither singles
out ERISA plans for special treatment nor depends on their
existence as an essential part of its operation." Id. at 145.

The "connection with" analysis is more involved, and the
Supreme Court has instructed that "here an uncritical literalism
is no more help than in trying to construe 'related to.'" Id.
"We simply must go beyond the unhelpful text and the frustrating
difficulty of defining its key term, and look instead to the
objectives of the ERISA statute as a guide to the scope of the
state law that Congress understood would survive." Id.

Courts have spelled out factors to consider in making this
analysis. ERISA does not preempt state regulation that has only
"an indirect economic effect" on purchases of ERISA plans.

19

Travelers, 514 U.S. at 660-62.  "[U]nless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states." Carpenters, 215 F.3d at 139-40.

The First Circuit has held that ERISA preempts three kinds of state laws as relating to ERISA plans under Section 514: (1) laws that amount to "alternative enforcement mechanisms" to those in ERISA § 502(a); (2) laws that mandate employee benefit structures or their administration; and (3) laws that bind plan administrators to a particular choice.  Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 51 (1st Cir. 2000) (citing Travelers, 514 U.S. at 658-59).  As an example, a state law claim that an ERISA plan was negligent in the training and supervision of employees was pre-empted because it indisputably created a threat of "conflicting and inconsistent state and local regulation of the administration of ERISA plans."  Danca, 185 F.3d at 16. Doctrinally, in the post-Travelers regime, the First Circuit has left "the question open" whether to treat "the alternative enforcement mechanism inquiry as a separate branch of ERISA preemption analysis" independent of § 514(a).  Carpenters, 215 F.3d at 140 n.4.

Now that the Court has removal jurisdiction, it must determine whether any provisions of the UCL are preempted.  The First Circuit has recently discussed the impact of Section 514

preemption on state law claims:

> [ERISA] brooks no interference; it contains
> an express preemption clause providing that
> it shall "supersede any and all state laws
> insofar as they may now or hereafter relate
> to any [covered] employee benefit plan."  29
> U.S.C. § 1144(a) (ERISA § 514).  Thus, when
> state-law claims "relate to" ERISA plans,
> those claims are transmuted into ERISA
> claims.  In that situation, "any civil
> complaint raising [such] a state law claim .
> . . is of necessity so federal in character
> that it arises under federal law for purposes
> of 28 U.S.C. § 1331 and permits removal to
> federal court.

Carpenter, 215 F.3d at 139 (citations omitted) (finding that a

state bond statute does not impermissibly supply an alternative

enforcement mechanism for ERISA plan benefits).

When Congress conceived the ERISA scheme, it made manifest

its intention to, among other things, "establish standards of

conduct, responsibility, and obligation for fiduciaries of

employee benefit plans, [and to] provid[e] for appropriate

remedies."  Carpenter, 215 F.3d at 140 (citing 29 U.S.C. §

1001(b)).  ERISA provides that plan trusts "shall have exclusive

authority and discretion to manage and control the assets of the

plan" with exceptions that appear not to be applicable here.  29

U.S.C. § 1103(a).  It sets forth the fiduciary responsibilities

of plan administrators.  29 U.S.C. § 1101-1114.  ERISA's goal is

"to avoid a multiplicity of regulation in order to permit the

nationally uniform administration of employee benefit plans."

<u>Travelers</u>, 514 U.S. at 657.  ERISA preempts state laws that mandate "employee benefit structures or their administration." <u>Id.</u> at 658.

Under ERISA, a person "is a fiduciary with respect to [an ERISA] plan to the extent . . . [that] he exercises any discretionary authority or discretionary control respecting management of [the] plan [or] has any discretionary authority or discretionary responsibility in the administration of [the] plan."  29 U.S.C. § 1002(21)(A).  There are no allegations that Plaintiffs meet this definition.  Several courts have rejected claims of representatives "to sue in the shoes" of an ERISA beneficiary.  <u>See</u> <u>Northeast Dep't ILGWU</u>, 764 F.2d at 153 (rejecting argument that the trustees of one fund can stand in the shoes of aggrieved beneficiaries of another fund under Section 1132(a)(1)(B)); <u>Pressroom Union-Printers League Income Security Fund v. Continental Ins. Co.</u>, 700 F.3d 889, 893 (2d Cir. 1983) (holding that only the entities mentioned in § 1132 have a cause of action under ERISA).

Here, Plaintiffs claim that they represent ERISA fiduciaries in seeking under the UCL disgorgement and restitution for ill-gotten plan assets.  This state-law claim implicates heartland ERISA issues of administration of plans and fiduciary responsibility.  Essentially, Plaintiffs seek to usurp the role of the ERISA fiduciary in protecting plan assets.  Fiduciaries,

whose mission under ERISA is to protect plan assets and to allocate benefits to the beneficiaries, may potentially be bound by litigation decisions made by a California representative on behalf of California ERISA and non-ERISA beneficiaries alike. Permitting a private attorney general to represent a fiduciary would pose a threat to the national administration of ERISA plans. Accordingly, I conclude that the California UCL is preempted under ERISA to the extent it seeks to give private attorneys general the right to stand in the shoes of ERISA fiduciaries in protecting or administering plan assets.

## III.   Conversion to Federal Claims

Because the litigation is at such a preliminary stage, the Court defers ruling on whether the UCL claims for equitable relief by Thompson and the Congress of California Seniors on behalf of the ERISA beneficiaries should be transformed into claims under Section 502.

## IV.   Standing

Plaintiffs also challenge the Court's jurisdiction, claiming they lack standing under Article III to sue in federal court as private attorneys general.

The case law cited by Plaintiffs does not support this proposition. In Lee v. Am. Nat'l Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001), the plaintiff sought remand of an entire case after it was established that he had no standing to sue one of

the defendants in federal court under the UCL because he could not show "that he has actually been injured by the defendant's challenged conduct."  The parties did not dispute that plaintiff could press his other claim against another defendant in federal court under the UCL, for the plaintiff pleaded individualized injury from that other defendant's conduct.  The Ninth Circuit held that the court had diversity jurisdiction over the action. The Lee court suggested that the trial court on remand might consider dismissing the non-federal claim or that the plaintiff consider dismissing it voluntarily and then refiling in state court.  Id. at 1006.

In any event, here, all of the Plaintiffs have alleged that they (or their members) have suffered individualized injury from Defendants' misconduct – none is suing purely as a representative under the UCL.  Therefore, Plaintiffs have Article III standing to bring this UCL claim in federal court on their own behalf, and the Court has supplemental jurisdiction over the non-ERISA claims under the UCL.

**ORDER**

The motions of Thompson, the Congress of California Seniors, and Turner to remand are **DENIED**.


        **S/PATTI B. SARIS**
        United States District Judge