## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE )  MDL NO. 1456
LITIGATION )  Civil Action No. 01-12257-PBS
)

### MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION FOR ENTRY OF
### PROPOSED CASE MANAGEMENT ORDER NO. 10

In anticipation of the March 8 case management conference, plaintiffs and

defendants have each submitted a proposed Case Management Order to govern the next phase of

this litigation. The parties' competing proposals agree on a number of critical points: In

particular, both sides agree that discovery shall commence against all defendants still in the case;

that the next phase of the case should focus on a subset of the 321 drugs allowed by this Court's

February 24, 2004 Memorandum Opinion and Order; and that fact discovery shall cut off early

next year, followed in short order by expert reports and summary judgment motions.

There are two principal points of disagreement between plaintiffs and defendants.

Specifically, the two sides disagree as to: (1) the drugs to be included during "Phase I" of the

litigation; and (2) the timing of class certification briefs and hearing. While the two sides have

scheduled an in-person meeting for the morning of March 8 at which they may narrow the range

of disagreement on these issues, defendants submit this Memorandum to explain the basis for

their position as it stands today.

## DISCUSSION OF THE PROPOSED CMOs

### 1.      Identification of "Phase I Drugs"

In their draft CMO, plaintiffs propose that the next phase of the litigation should consist of a "test case" in which plaintiffs obtain discovery on approximately 100 drugs marketed by the manufacturer defendants, plus all of the 170 drugs made available through defendant Together Rx.  Plaintiffs propose that they be permitted unilaterally to designate which drugs shall be the subject of Phase I.  The specific drugs they seek to include are set forth on Exhibit A to their Proposed CMO.  Notably, plaintiffs' list emphasizes so-called "blockbuster" drugs with large annual sales figures, rather than a representative cross-section of drugs that would give the Court the ability to address the issues raised in the Amended Master Consolidated Class Action Complaint ("AMCC").

Defendants propose a more streamlined Phase I which will focus on approximately 60 drugs.  Rather than allowing plaintiffs alone to designate the Phase I drugs, defendants propose that each side be allowed to designate one drug from each defendant manufacturer.[1]  Specifically, plaintiffs would designate one Phase I drug for each manufacturer; that manufacturer could then designate one or more of its drugs that would also be included in Phase I.[2]  Phase I Drugs could only be selected from the list of drugs identified in the AMCC.

In contrast to plaintiffs' proposal that all 170 Together Rx drugs be automatically included in Phase I, defendants propose that no special provisions need to be made for Together

---

[1] In some instances, the AMCC identifies a defendant group of related companies (such as the "BMS Group," the "J&J Group," or the "GSK Group").  Each of these groups would be treated as a single defendant for purposes of the selection of Phase I Drugs.

[2] Some defendants, particularly those with relatively few drugs at issue under the AMCC, may choose to include all their products in Phase I to avoid the potential for a second phase of litigation.

Rx drugs since defendants' proposed "one-and-one" selection process affords both sides ample opportunity to obtain an appropriate sampling of Together Rx drugs. Likewise, defendants' proposal will allow both sides to include an appropriate sampling of brand name drugs, generic drugs, drugs covered by Medicare Part B, and other categories of drugs they may desire to include.

Defendants submit that this procedure will have at least two significant advantages as compared to plaintiffs' proposal. *First*, it will result in a far more manageable number of drugs to deal with in Phase I. Plaintiffs' proposal puts over 200 drugs at issue in the first phase of the litigation. Defendants' proposal reduces this number to approximately 60 – easily enough to allow plaintiffs to test their principal theories of the case. *Second*, defendants' proposal would avoid the manifest unfairness of allowing plaintiffs to provide a skewed picture of the industry during Phase I.

Both sides agree that, during Phase I, there will be no product specific discovery relating to drugs other than those identified as Phase I drugs. However, the parties may obtain discovery from one another concerning industry-wide practices and policies.

### 2.    Timing of Class Certification Briefing and Hearing

The second point of disagreement between the parties concerns the timing of class certification proceedings. In the draft CMO submitted by plaintiffs to defendants, plaintiffs propose that their motion for class certification and supporting expert reports be filed by January, 2005 – at the same time as their expert reports on the merits and just prior to the due date for filing of summary judgment motions (February 15, 2005).

The schedule proposed by plaintiffs is neither workable nor fair to the members of the purported class. Defendants believe that the class certification process may substantially pare down the issues in the case, thus reducing the scope of expert reports and summary judgment motions. Furthermore, absent class members are entitled to have an opportunity to opt out or participate in the litigation before their claims are decided on the merits.

Defendants propose a more ambitious (yet less compressed) schedule in which plaintiffs file their class certification papers promptly and the issue of certifiability is briefed and heard by the fall of 2004. This will give defendants an opportunity to address certain key preliminary issues – including Article III standing – *before* the merits of the case are addressed. *See* Mem. and Order, Feb. 24, 2004, at 20. If the certifiability of any class is not adjudicated promptly, there will be no real opportunity for these issues to be sorted out prior to merits issues presented by motions for summary judgment.

There is no reason why plaintiffs should need to await the completion of their discovery to set forth their theories for class certification under Fed. R. Civ. P. 23. Rule 23(c)(1) calls for the certification decision to be made "at an early practicable time." Plaintiffs' proposal does not satisfy this requirement. Moreover, plaintiffs have been taking discovery of certain defendants and third parties for more than eight months, and should not require significant additional time or discovery to present their certification motion.

### 3.    Other Issues

In addition to the two issues discussed above, there are a number of other points of disagreement in the two sides' proposals. Defendants wish to call two of these, in particular, to the Court's attention prior to the March 8 hearing.

*First*, plaintiffs' proposal reaches beyond the pretrial phase of this case and includes proposed dates for trial.  Defendants view the establishment of trial dates as premature. The Judicial Panel on Multidistrict Litigation has referred these cases to this Court for "coordinated or consolidated *pretrial* proceedings" pursuant to 28 U.S.C. § 1407(a) (emphasis added).  Before trial dates can be established, the parties and the Court will need to consider issues relating not only to class certification and summary judgment, but also to the appropriate forum. *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998).

*Second*, plaintiffs' proposal provides insufficient time for the completion of discovery by defendants who were dismissed from the case by this Court's May 13, 2003 opinion.  Most of these defendants became subject to discovery for the first time by the Court's February 24, 2004 opinion on the motions to dismiss.  Furthermore, some defendants did not become subject to discovery until after the hearing on November 21, 2003,  when the Court stated from the bench that discovery should be expanded to include all Part B drugs for which plaintiffs had identified a purchaser.  Plaintiffs' proposal that all defendants complete their productions within 90 days is manifestly insufficient for those defendants who have only recently become subject to discovery for the first time.

## CONCLUSION

For the reasons stated above, defendants respectfully request that the Court enter

Defendants' Proposed Case Management Order 10.


Respectfully Submitted,

ON BEHALF OF THE DEFENDANTS

By: /s/ Lucy Fowler                                    DATED:  March 5, 2004

Nicholas C. Theodorou (BBO# 496730)
Lucy Fowler (BBO# 647929)
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

D. Scott Wise
Kimberley D. Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant AstraZeneca Pharmaceuticals LP*

Richard D. Raskin
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL  60603
(312) 853-2170

*Attorney for Defendant Bayer Corporation*

Michael L. Koon
James P. Muehlberger
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO  64108-2613

*Attorney for Aventis Pharmaceutical Inc.*

6

## CERTIFICATE OF SERVICE

I certify that on March 5, 2004, a true and correct copy of the foregoing Memorandum in Support of Motion for Entry of Case Management Order No. 10 was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.

/s/ Lucy Fowler
Lucy Fowler

7