# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) | ) ) ) ) |
| THIS DOCUMENT RELATIONS TO ALL ACTIONS | ) ) ) ) |

MDL NO. 1456
Civil Action No. 01-12257-PBS

Judge Patti B. Saris

## SUPPLEMENTAL MEMORANDUM OF DEFENDANT BRISTOL-MYERS SQUIBB CO. IN SUPPORT OF DEFENDANTS' PROPOSED CASE MANAGEMENT ORDER NO. 10

Defendants' proposed Case Management Order # 10 ("CMO # 10") points out that (i) plaintiffs have attempted to include more than five defendant companies in "Track 1" pre-trial proceedings by including subsidiaries or other corporate affiliates of certain defendants and that (ii) even if only one entity within a corporate group is included in Track 1, certain limits on the number of drugs subject to discovery and/or the scope of the discovery into those drugs will be necessary if compliance with the schedule outlined by the Court at the last conference is to have any chance of success.

Defendant Bristol-Myers Squibb Company ("BMS") submits this memorandum to highlight facts specific to it and to two of its subsidiaries, Oncology Therapeutics Network Corp. ("OTN") and Apothecon, Inc. ("Apothecon"), that are also defendants in this case, and to give the Court some perspective on the burden that BMS has incurred in producing documents on just six of the twenty drugs listed under the BMS "Group" in the Amended Master Consolidated Complaint ("AMCC").  BMS respectfully suggests that (i) only it, and not OTN or Apothecon, should be considered to be a Track 1 defendant and (ii) as suggested in proposed

CMO #10, plaintiffs be directed to meet and confer with BMS on appropriate limits to the pre-trial discovery.

BMS/OTN/Apothecon

BMS is the corporate parent of OTN and Apothecon, both of which are wholly-owned subsidiaries. BMS is a manufacturer of prescription drugs. OTN is not. It is merely a distributor of oncology products to one segment of the marketplace: office-based oncologists (as opposed to hospital-based oncologists). Most importantly, OTN is a distributor for numerous manufacturers besides BMS. OTN's product catalog has over 2700 line items from over 190 manufacturers. BMS' recent SEC Form 10-K for the year ending December 31, 2003 reveals that the Company made only 11% of its net sales through OTN in 2003 (10% for 2002 and 8% for 2001).

Apothecon manufactured generic drugs. While Apothecon still technically exists today, BMS sold most of that company's assets to another pharmaceutical manufacturer in 2001.

Burden of Discovery on BMS

To date in this litigation, BMS has produced documents on six of the twenty drugs listed in the AMCC -- Amikin, Blenoxane, Cytoxan, Fungizone, Vepesid and Taxol. (This does not include the productions relating to government investigations, which include even more drugs). By agreement with plaintiffs' counsel, BMS has thus far limited its search on those six drugs to 83 document "custodians" (current and former employees) likely to have responsive materials. As of December 31, 2003 BMS employed approximately 44,000 people.

We estimate that BMS has spent more than 5,500 attorney hours, at a total cost of at least $1,400,000, to meet its limited discovery obligations regarding only those six drugs for those 83 custodians. BMS has had to pay computer processing charges exceeding $735,000 to

2

cull from 44,000,000 pages of electronic documents those few that might be responsive to plaintiffs' discovery demands. More particularly, BMS employed a team of 14 attorneys who labored more than 4,500 hours to review a "subset" of 6,500,000 electronic pages -- only 130,000 pages of which were responsive to plaintiffs' demands. Additionally, a team of four attorneys and one paralegal also reviewed twenty-two boxes of hardcopy materials from BMS offices spanning New Jersey to Tokyo.

Conclusion

BMS respectfully suggests that it is unduly burdensome to expect it to produce not only for itself, but also for OTN and Apothecon, documents on all of its drugs listed in the AMCC on the accelerated "Track 1" discovery schedule. Plaintiffs should be required to limit their discovery to one of the alleged BMS "Group" companies -- presumably BMS itself -- and should be required to agree to further limit the number of BMS drugs involved in Track 1 and/or the scope of the document search for such drugs so that there is some reasonable chance of complying with the Track 1 timetables.

Respectfully submitted,

BRISTOL-MEYERS SQUIBB COMPANY,
  ONCOLOGY THERAPEUTICS
  NETWORK CORP. and
  APOTHECON, INCORPORATED

By their attorneys,

Thomas E. Dwyer, Jr. (BBO No. 139660)
Joseph E. Haviland(BBO No. 643814)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA 02210
(617) 371-1000
tdwyer@dwyercollora.com
jhaviland@dwyercollora.com

3

Steven M. Edwards (SE 2773)
Lyndon M. Tretter (LT 4031)
Admitted *pro hac vice*
**HOGAN & HARTSON L.L.P.**
875 Third Avenue, 26th Floor
New York, NY  10022
(212) 918-3000
SMEdwards@hhlaw.com
LMTretter@hhlaw.com

Dated: March 22, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2004, I caused a true and correct copy of the Supplemental
Memorandum of Defendant Bristol-Myers Squibb Co. In Support of Defendants' Proposed CMO
No. 10 to be served on all counsel of record by electronic service pursuant to Case Management
Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

John R. Therien

4