**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE            ) <br> LITIGATION                                              ) <br> _____ ) | MDL NO. 1456 <br> Civil Action No. 01-12257-PBS |

**SUPPLEMENTAL MEMORANDUM OF**
**DEFENDANT GLAXOSMITHKLINE IN SUPPORT OF ENTRY OF**
**PROPOSED CASE MANAGEMENT ORDER NO. 10**

As defendants argue in their consolidated memorandum, the unlimited and unstructured discovery of 136 drugs would be impossible to complete on the timetable requested by the Court and is unnecessary to the adjudication of class certification and summary judgment. Defendants have therefore proposed that this Court establish a brief negotiation period to allow plaintiffs and each Track 1 Defendant to reach individual company-by-company agreements narrowing the scope of discovery in a manner that would permit completion of discovery on the Court's "fast track" schedule. See Defendants' Proposed CMO No. 10, at III.2-3. To that end, and for the reasons set out below, defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") proposes that discovery of plaintiffs' PBM claims be limited to determining the threshold issue of whether the alleged fraudulent conduct between GSK and the PBMs and the PBMs and their customers actually occurred. GSK's proposal is supported by the Affidavit of William J. Leonard ("Leonard Aff.") (attached hereto as Exhibit 1), GSK's Vice President of the National PBM Segment.

## ARGUMENT

GSK's proposal for narrowing the scope of discovery is grounded in the Court's February 24, 2004 Order ("February 24 Order"). In that Order, the Court discusses "three primary paradigms" of allegedly fraudulent conduct -- the Medicare Part B AWP fraud paradigm, the Together Rx paradigm, and the PBM fraud paradigm. See slip op. at 4; see also Defendants' Mem. in Support of Proposed CMO No. 10, at 5-6 (discussing discovery with respect to the Court's three paradigms). This supplemental memorandum focuses on discovery limits within the context of the PBM fraud paradigm.

**I.   DISCOVERY OF THE PBM CLAIMS SHOULD BE LIMITED TO DETERMINING THE THRESHOLD ISSUE OF WHETHER THE ALLEGED FRAUDULENT CONDUCT BETWEEN GSK AND THE PBMS AND THE PBMS AND THEIR CUSTOMERS ACTUALLY OCCURRED.**

As the Court recognized in addressing the scope of discovery as to the Together Rx claims during the March 8, 2004 status conference, Tr. 31-39, the interests of judicial economy and efficiency are best served by focusing on and resolving threshold issues first. The threshold issue arising from the PBM claims against GSK -- certain to be subject to summary judgment motions in 2005 -- is whether the alleged fraudulent conduct between GSK and the PBMs actually took place. Discovery of GSK should therefore be limited to this core issue and need not be expanded to drug-specific practices and conduct having no bearing on the GSK-PBM relationship.

As discussed in defendants' consolidated memorandum (at 5-7), GSK's proposed limitation is consistent with the AMCC, the Court's treatment of Together Rx, and the Court's February 24 Order, where the Court identified (slip op. at 12-13) the scope of discovery that would be needed to test plaintiffs' PBM allegations and listed several types of communications between the PBMs and the manufacturers that plaintiffs

allege were used to carry out the allegedly fraudulent scheme.  GSK is willing to produce these communications, including their contracts with the four major PBMs identified in the enterprise allegations; their contracts with any other PBM that has been identified as contracting with one of the named plaintiffs; the documentation related to the negotiation and performance of those contracts, and records of communication between GSK and those PBMs.[1]  GSK also agrees to identify its account managers who are responsible for negotiating and contracting with PBMs, to collect and produce their documents on an expedited basis, and to offer to make them available for depositions.  The process and structure by which GSK contracts and communicates with PBMs are described in Mr. Leonard's affidavit, ¶¶ 2-13  (attached hereto as Exhibit 1).

In addition to discovery of communications between GSK and PBMs, discovery should also focus on the relationships between the PBMs and their customers -- the health plans and other third-party payors plaintiffs seek to represent.  This discovery, which would be directed to third-parties and plaintiffs, should reveal the extent to which third-party payors knew about the so-called "secret" rebates that were allegedly a part of the "hidden profit-making scheme" between the PBMs and GSK.[2]  Based on the limited number of PBM/health plan contracts that have been produced thus far -- which contain explicit disclosures of rebates and the sharing of rebates between PBMs and their

---

[1] Drug-specific discovery should be confined to the topics discussed above that relate directly to the GSK-PBM relationship with regard to each drug.  For example, if GSK wrote a letter to a PBM explaining why a designated drug should be included in that PBM's formulary, that letter would be produced, but if a similar letter was addressed to a physician extolling the virtues of that same drug, that letter would not be produced.

[2] Without discovery in this litigation, GSK has no specific knowledge of the contents of the contracts between PBMs and their respective plan sponsors, including whether the PBM is required to disclose the amounts of the rebates the PBM receives from GSK or how those rebates are shared with any particular plan sponsor.  See Leonard Aff. ¶ 6.

customers -- this discovery will be critical to showing the lack of merit to plaintiffs' claims.

Focusing discovery on the manufacturer-PBM and PBM-customer relationships will allow the Court to resolve the class certification issue at an early stage. Indeed, GSK believes that such discovery will demonstrate that there is no "typical" relationship, contract, rebate program or discount arrangement between manufacturers and PBMs. See Leonard Aff. ¶ 5 ("specific contract terms vary from PBM to PBM"). Similarly, discovery conducted thus far from plaintiffs has revealed a wide variety of arrangements negotiated between PBMs and plaintiff funds, each with a different combination of rebates, fee structures, and other features.

GSK's proposed limitation will also allow the Court to reach the merits at the earliest possible time and give GSK the opportunity to demonstrate that plaintiffs' PBM claims are baseless. The limited discovery taken to date reveals that, rather than being "secret" as alleged by plaintiffs, February 24 Order, slip op. at 11-12, the rebates sent to PBMs by the manufacturers were well known to third-party payor plaintiffs. Indeed, that discovery shows that the health plan plaintiffs frequently had agreements with PBMs that provided that they would get a specific percentage of those rebates. These agreements belie plaintiffs' core allegation that they were unaware that PBMs were receiving rebates.

## II. UNLIMITED DISCOVERY OF ALL GSK DRUGS WOULD BE EXTRAORDINARILY BURDENSOME, IMPOSSIBLE TO COMPLETE WITHIN THE COURT'S PROPOSED TIMEFRAME, AND IRRELEVANT TO THE THRESHOLD ISSUE.

As argued in defendants' consolidated memorandum, drug-specific discovery would be extraordinarily burdensome, costly, and impossible to complete within the timeframe contemplated by the Court. It took GSK many months to collect and produce the large number of pages of documents relating to only two drugs, Kytril and Zofran, and that production is still ongoing. Without the limitations proposed herein, it would take GSK several years and cost millions of dollars to produce all documents relating to the 33 additional GSK drugs now subject to discovery. As the Court recognized in the Together Rx context, such unlimited and far-ranging discovery "would just sink the litigation." See Tr. 24 (Mar. 8, 2004 status conference).

Drug-specific discovery relating to the marketing and sale of GSK's drugs would also be irrelevant to the threshold issue of whether the alleged fraudulent conduct between GSK and the PBMs occurred. Only a limited number of account managers have dealings with PBMs; the vast majority of GSK's sales representatives communicate with physicians and do not call on or otherwise communicate with PBMs at all. See Leonard Aff. ¶ 10. Accordingly, documents generated or received by GSK employees other than the limited number of account managers and other personnel identified by Mr. Leonard as having dealings with PBMs -- a massive amount of material -- are not likely to lead to the discovery of admissible evidence relevant to the PBM claims.

## **CONCLUSION**

For the reasons stated above, and those stated in defendants' consolidated memorandum, GSK respectfully requests that the Court enter Defendants' Proposed Case Management Order No. 10.

                                                Respectfully submitted,


                                                **BY:** /s/_Geoffrey E. Hobart_____
                                                Geoffrey E. Hobart (BBO# 547499)
                                                Holland & Knight LLP
                                                10 St. James Avenue
                                                Boston, MA  02116
                                                Tel: (617) 854-1419
                                                Fax: (617) 523-6850
                                                E-mail: ghobart@hklaw.com

                                                Mark H. Lynch
                                                Ethan M. Posner
                                                Covington & Burling
                                                1201 Pennsylvania Avenue, NW
                                                Washington, DC  20004
                                                Tel: (202) 662-5544
                                                Fax: (202) 778-5544
                                                E-mail: mlynch@cov.com

                                                Frederick G. Herold
                                                Dechert LLP
                                                975 Page Mill Road
                                                Palo Alto, CA  94304
                                                Tel: (650) 813-4930
                                                Fax: (650) 813-4848
                                                E-mail: Frederick.herold@dechert.com

DATE: March 22, 2004                    *Counsel for SmithKline Beecham Corp.*
                                                *d/b/a GlaxoSmithKline ("GSK")*