UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) |

MDL NO. 1456
Civil Action No. 01-12257-PBS

## AFFIDAVIT OF WILLIAM J. LEONARD

I, William J. Leonard, hereby depose and state as follows:

1. I am currently employed by SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") as the Vice President of the National PBM Segment. I have held this position since approximately January 1, 2001. I am submitting this affidavit in support of the Defendants' Motion For Entry of Proposed Case Management Order No. 10.

2. The National PBM Segment is currently responsible for contracting with five national pharmacy benefit managers ("PBMs"). Those companies are 1.) Express Scripts, Inc.; 2.) Medco Health Solutions, Inc.; 3.) AdvancePCS; 4.) Caremark Rx, Inc.; and 5.) MedImpact Healthcare Systems, Inc.[1] GSK has contracts with each of these five companies.

3. In general, PBMs are in the business of administering pharmacy benefit services to one or more various health plans, including health insurers, HMOs, third-party benefit managers, managed care organizations, preferred provider organizations, union and employee health and welfare

---

[1] On February 11, 2004, the Federal Trade Commission announced that it approved of the proposed merger of AdvancePCS and Caremark Rx, Inc. As of the date of this affidavit, GSK still maintains separate contracts with AdvancePCS and Caremark Rx, Inc.

funds, and self-insured groups and their employees and covered members. PBMs also contract with pharmacies which dispense pharmaceutical products to employees and covered members of the health plans and are then reimbursed by and through the PBMs.

4. GSK conducts separate negotiations with the five national PBMs, who negotiate with GSK on behalf of their plan sponsors. By negotiating and contracting with the five national PBMs, GSK is able to avoid conducting separate negotiations with literally thousands of different health plans across the country. In our negotiations with the five national PBMs, we strive to obtain equal formulary access for GSK's important products with the access afforded to the products of our competitors. To achieve equal availability of GSK's important products for members of the plan sponsors and their physicians, GSK offers the PBMs rebates for formulary access. To achieve eligibility for certain rebates, the PBMs must meet specifically negotiated performance criteria set out in the various contracts. GSK pays rebates to the PBMs which generally are calculated 60 to 90 days after the close of a particular quarter.

5. Each contract between GSK and a national PBM generally includes terms concerning the services provided by the PBM, the availability of GSK drugs on the formularies of the plan sponsors and the formularies of the PBM, and the details regarding the calculation and payment of rebates to

the PBM. While there is a certain amount of boilerplate language in GSK's PBM contracts, the specific contract terms vary from PBM to PBM.

6. GSK is not privy to the contracts that are negotiated between the PBMs and the plan sponsors. GSK does not participate in any way in the negotiations of those contracts. In some cases, GSK is expressly prohibited by its contract with a PBM from negotiating directly with the plan sponsors. Without access to PBM contracts with the plan sponsors, GSK has no knowledge whether, under its contract with a particular plan sponsor, the PBM is required to disclose the amounts of the rebates the PBM receives from GSK or how those rebates are shared with any particular plan sponsor.

7. As the Vice President of the National PBM Segment, I have eight direct reports. Six of my direct reports are national account managers. The national account managers are assigned to particular national PBMs. A national account manager serves as the principal point of contact in GSK's contract negotiations with his or her assigned PBM. A national account manager is also responsible for facilitating the exchange of clinical information about GSK's products with appropriate medical personnel. From time to time, a national account manager may arrange to have one of GSK's medical experts meet directly with a PBM's medical personnel. Meetings between GSK's medical experts and the medical personnel of a PBM are limited to the exchange of clinical information. GSK's medical

3

personnel play no role in the negotiation of rebates and/or discounts with a PBM and are not involved in contracting strategy in any way.

8. My two other direct reports provide support to the national account managers and myself. One of these individuals performs a variety of financial and strategic planning functions for my group. Among other tasks, this individual analyzes GSK's contracts with the five national PBMs and forecasts rebate levels for accrual purposes. The second individual attends negotiation sessions with the five national PBMs and assists the GSK legal department with the preparation of contracts.

9. With respect to contract negotiations with the five national PBMs, my group develops proposed levels of discounts and/or rebates for particular drugs. After my group finalizes its strategy, we present our proposed levels of discounts and/or rebates to the individual product marketing teams for their approval. Once approvals are obtained from the brand teams, we obtain approvals from senior managers in the managed care area.

10. Importantly, other than the members of my group, no other GSK sales personnel, including sales representatives, contact, communicate or negotiate in any way with the national PBMs.

11. I understand that GSK's relationship with the five national PBMs is one of the issues in this litigation. If the plaintiffs' wish to understand the full nature and extent of the communications between GSK and the five

national PBMs and the relevant contractual relationships that have resulted from those communications, they only need to obtain discovery from my group. To the extent that the plaintiffs wish to learn about the internal approvals that were solicited and obtained for any relevant contracts and amendments negotiated by my group with the national PBMs, the plaintiffs need only request discovery limited to the internal communications between members of my group and members of the various brand marketing teams and senior management.

12. In addition to the five national PBMs for which my group has responsibility, I am familiar with the way in which the company negotiates with smaller, regional PBMs. For those regional PBMs, regional account managers in the Integrated Health Management division perform the role of negotiators and principal points of contact. The regional account managers are supported by contract finance managers. The contract finance managers are responsible for producing contracts for the regional PBMs.

13. I understand that one or more of the named plaintiffs in this litigation may have had contracts with regional PBMs. To the extent that GSK has a contract with one of those PBMs, the plaintiffs could learn the nature and extent of GSK's relationship with that PBM by taking focused discovery from the regional account manager and the supporting contract

finance manager. Similar to the way in which GSK negotiates with the national PBMs, sales representatives do not call on regional PBMs.

Signed this the 22 day of March 2004 under the pains and penalties of perjury.

_____
William J. Leonard

# 1790259_v2