UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 ) ) ) ) | Judge Patti B. Saris |

**PLAINTIFFS' CORRECTED REPLY MEMORANDUM IN SUPPORT OF ENTRY OF PROPOSED CASE MANAGEMENT ORDER REGARDING PHASED DISCOVERY AND RELATED ISSUES**

Plaintiffs submit this reply memorandum to address issues raised by defendants for the first time in their case management submissions and to reply to defendants' proposal.

## I.   INTRODUCTION

Since the inception of this litigation, when filing briefs, answering discovery, and appearing before the Court, defendants have referred to themselves by group, *i.e.*, as the "BMS Group," the "GSK Group" and the "Johnson & Johnson Group." The AMCC so identifies the defendants by group, as did the Court in its order denying in part the motions to dismiss the AMCC. *See* AWP II at p. 1, note 1. Now, consistent with their ongoing efforts to delay or thwart discovery, defendants suddenly claim each operating unit must be treated as a separate company. Such an approach is at odds with the way this litigation has been conducted and at odds with the Court's suggested approach that the parties examine the practices of a defendant as a whole and hopefully resolve the different AWP schemes at issue for the first five defendants.

Rather than a clean proposal that would allow discovery to proceed at once, defendants make no suggestion as to which drugs should now be part of the "fast track" or "Track 1," as they call it. Instead, defendants seek more meet and confers despite the inability of the parties to agree over the last month on a case management order. Briefing before a Magistrate Judge would then follow this on case management issues, and a subsequent period for completing whatever production is ordered for the fast track or Track 1.[1] Under defendants' proposal, production of documents would not be completed until January 2005, yet defendants propose that the class motion to be filed by September 1, 2004, at a point in time when defendants' proposed document production would be incomplete and there will have been little opportunity to conduct depositions.

Defendants in reality do not offer a workable schedule and do not comply with the Court's directions at the status conference. As explained below, if all of defendants' suggestions are examined together, Track 1 would proceed on a narrower scope than was in effect before the Court denied the motions to dismiss in AWP II. What they offer instead is a guaranteed extended meet and confer with each defendant, followed by guaranteed motions as to the scope of discovery in "Track 1" and "Track 2" and further motions regarding the timing of discovery in each track. Indeed, with respect to Track 2, defendants would limit discovery to those drugs for which a plaintiff purchaser is alleged despite the fact this approach was expressly rejected in the Court's order of February 24, 2004. AWP II at 20. Simply put, defendants' proposal is a recipe for extended litigation just over the schedule. Finally, defendants ignore the specific case management rules suggested by plaintiffs, though they cannot deny that in the absence of specific case management rules plaintiffs have not been able to obtain <u>one</u> 30(b)(6) deposition in

---

[1] "Track 1" or "fast track" are used interchangeably in this memorandum.

six months. The specific rules suggested by plaintiffs and ignored by defendants are needed to make any schedule meaningful.

Plaintiffs address each of defendants' main suggestions below and in addition, have annotated defendants' CMO to allow the court to have easy access to plaintiffs' objections.

## II. DISCUSSION OF DEFENDANTS' CMO

### A. Selection of the Five "Track 1" Companies or the Fast Track

Throughout this litigation defendants have been identified by their corporate groups: GSK Group, BMS Group, Johnson & Johnson Group, and the Schering Plough Group.[2] Defendants filed briefs on behalf of each group, appeared for the group, the Court identified each as a group in its Order on the motions to dismiss (*see* AWP II at footnote 1), and defendants responded to discovery for each group. *See* Exhibits A and B attached hereto. Prior to their case management submission, defendants have never before sought to disaggregate issues or discovery based upon a theory that different subsidiaries have different legal issues. Thus, the group designation is consistent with how this litigation has been conducted to date. Defendants should not be permitted to now raise this corporate organization argument as a basis for limiting Track 1.

The group designation is also consistent with the Court's comments that the parties should identify five defendants and try to cover each of the paradigms at issue per defendant, and then close the chapter as to those defendants. By using the group approach plaintiffs are able to cover the types of AWP schemes at issue for a company as a whole. For example, if plaintiffs were limited to Centocor from the Johnson & Johnson Group as defendants suggest, then there

---

[2] *See* AMCC ¶¶ 71-78 identifying the BMS Group; ¶¶ 87-93 the GSK Group; ¶¶ 100-06 the Johnson & Johnson Group; and ¶¶ 116-18 the Schering Plough Group.

PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF ENTRY OF PROPOSED
CASE MANAGEMENT

- 3 -

1534.16 0048 MTN.DOC

would only be one Part B reimbursable drug as part of Johnson & Johnson's fast track. Left for another date would be the Johnson & Johnson group's non-Part B drugs, as well as generics. This narrow slice or the subsidiary-by-subsidiary approach would not accomplish the Court's objective.

A major premise of the Defendants' objection to Plaintiffs' proposal is their contention that Plaintiffs propose "unlimited discovery of . . . 136 drugs . . . " (Defendants' Memorandum, at. 3). Defendants call this "a truly massive undertaking" that would be "impossible" to achieve. Defendants' are wrong.

Plaintiffs do not seek "unlimited" discovery for any drugs - discovery under Track 1 will need to be within the permissible range under Fed. R. Civ. P. 26 for the five companies (BMS Group, GSK Group, Schering Group, J&J Group and AstraZeneca Group) and those of their drugs set forth in Appendix A to the AMCC (about 136 of the total 321). Furthermore, the scope of plaintiffs' discovery for many of these 136 drugs (about 78) will not require detailed, drug-specific marketing and promotional discovery (e.g., marketing and sales staff logs, drug-specific presentations to providers, etc.), but instead will largely be comprised of horizontal information about drug prices and agreements for the sale of the products. Thus, the kind of "unlimited discovery" the defendants bemoan is misplaced - under plaintiffs' proposal, company-wide practices of AWP inflation for five major defendant groups in this case will be explored vertically and in detail (but within Rule 26) through investigation into about 58 drugs, and through more general, horizontal investigation into about 78 drugs.

If the Court accepts defendants' subsidiary approach, perhaps a couple of dozen drugs at best will be part of Track 1, and a balkanized factual record of Defendants' practices will leave the record incomplete. Such a narrow scope would not provide an ability to resolve company-

wide practices under Track 1, and would provide no guidance for resolution of the Track 2. Plaintiffs do not believe that this is what the Court intended.

Indeed the narrow slice approach suggested by defendants would not accomplish much. For example, the Johnson & Johnson group claims in affidavits submitted in support of defendants' CMO that each subsidiary is different with respect to AWP-related practices. Therefore, if the parties proceeded to argue class certification as to one Johnson & Johnson subsidiary only, then Johnson & Johnson would claim that any class decision did not apply to its other subsidiary that was not part of the fast track because its AWP practices were different. Little would have been accomplished by this narrow approach. Finally, Johnson & Johnson's own documents treated the AWP issue as a group issue. In the attached e-mail, reference is made to the AWP issue affecting drugs made by each group, Centocor (Remicade), and Ortho (Procrit). Thus, despite defendants' claims to the contrary, they acted as a group with respect to AWP issues. *See* Exhibit C.

Further, plaintiffs in the class certification motion will want to demonstrate that the AWP scheme was a pervasive practice for all drugs within a given company. Defendants' suggested subsidiary-by-subsidiary approach, not spelled out as to which drugs should be part of the fast track, is inconsistent with the need to prove a company-wide practice.

Defendants' next claim in opposition to the plaintiffs' CMO that the work demanded by plaintiffs in the fast track is too excessive for the purpose of advancing the case to the class certification stage.[3] Again a major premise of this claim is that there are 136 drugs will require "unlimited discovery" when in fact that is not true, and it appears that only 58 drugs will be

---

[3] The state cases are not subject to class certification and there is no reason to delay discovery to see how the class issue turns out, as this discovery is still needed in those government cases.

PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF ENTRY OF PROPOSED
CASE MANAGEMENT
1534.16 0048 MTN.DOC

- 5 -

subject to vertical, marketing and promotional discovery under Track 1. Further, limiting discovery to a subsidiary-by-subsidiary approach will not advance the case as to class certification for each defendant group. The end result of defendants' proposal is that at the end of the fast track, rather than five companies ready for trial, we will have five subsidiaries ready for trial, with thirty-seven left, and no defendant completed.

**B.     Defendants Make No Commitment as to the Scope of Track 1**

Defendants offer no specific plan other than to meet and confer to work out guidelines for Track 1. This simply guarantees litigation over the scope of drugs, the scope of discovery and the timing of discovery. The parties will be months down the road before this issue is resolved. Thus, defendants simply duck the CMO issues for another day. The only specific proposal is that discovery should be limited to "what is necessary for class certification." And in open court at the March 8 conference, the Court rejected defendants' suggestion for additional meet and confers and directed the parties to respond with a specific proposal.

In a further effort to limit Track 1, defendants next claim that guidelines as to non-Part B drugs are needed. Defs. Mem. at 5. They now urge that no drug-specific information is needed on the PBM fraud claims. This is complete nonsense. First, the issue in the non-Part B context is that defendants were pushing AWP as a reimbursement benchmark. For example, assume that the drug Taxol, manufactured by the BMS Group, which is a Part B reimbursable drug, had a published AWP of $250 for a given dose. Let's also assume that the average actual selling price was $57, this is the real price after discounts, chargebacks and other secret cost reducers are included. The parties should be entitled to discover how Taxol's real price is inflated outside the Part B context. Discovery of the real price is relevant to the non-Part B claims to show the fact of AWP inflation and the existence of the AWP scheme for that drug. So, the fact that PBMs are

involved in the scheme does not mean no specific drug discovery is needed. The PBM interaction is simply just one aspect of the scheme and does not eliminate the need for drug-specific discovery.

Further, to the extent non-Part B covered drugs are sold outside the PBM context, those sales are covered by the consumer protection and conspiracy claims. These claims cover all of the paradigms at issue in the case, including Part B, non-Part B, generics and PBMs. There is no basis to limit discovery on these claims as defendants now suggest.

**Again, if one looks at defendants' proposal as a whole, with its subsidiary-by-subsidiary approach, combined with its claim that there should be no drug-specific discovery outside of the Part B context, defendants' proposal would limit Track 1 to such an extent that its scope would be less than that allowed prior to the Court's Order denying the motions to dismiss. This is not a good faith effort on their part.**

## C. The Track 1 Schedule

Defendants claim that the only "significant difference" in the Track 1 or fast track schedules is a slight acceleration of the class motion. This is simply not true. Defendants would delay the completion of document discovery until well after their proposed date for filing the class motion. Given the abysmal history to date in terms of the timeliness of production, it is a given that most of the documents will not be produced until the end of the proposed 120 day period for production of documents. And given defendants' proposals about individual meet and confers, and then litigating unresolved discovery issues before a Magistrate Judge, there is a real possibility productions will not start until July and will not be completed until January 2005, well after their proposed date for filing the class motion.

### D. Track 2

With respect to Track 2 defendants again suggest additional meet and confers, and make no commitment to produce anything or to suggest a real schedule. Indeed, they have the gall to now suggest that there be no discovery on drugs for which there is not a plaintiff purchaser, a suggestion rejected in AWP II. AWP II at 20.

### E. Track 3

In their Proposed CMO, filed on March 12, 2004, Plaintiffs contemplate that "discovery shall go forward on the Together Rx claims on [Plaintiffs' proposed] Phase 1 schedule." *See* Plaintiffs' Proposed CMO at 1. As the Court is aware, Plaintiffs' proposed Phase 1 schedule consists of a "fast track" in which five Defendants will "litigate all phases of the case through summary judgment." *Id.* Phase 2 consists of a "regular track." *Id.* Defendants offer no justification to support their proposal for a "separate Track 3 schedule for the Together Rx claims that is *90 days behind* the Track 1 schedule [.]" *See* Defendants' Mem. In Support of Entry of Proposed CMO No. 10 at 8 ("Def. Mem.") (emphasis added).

First, in advocating their Track 3 proposal, Defendants wholly fail to explain how a 90-day delay for the Together Rx discovery would benefit the parties or the present action. Defendants do not even suggest that the additional time to respond to Plaintiffs' Together Rx discovery requests would reduce their purported burden. In short, Defendants offer nothing to warrant *any* delay relating to the Together Rx discovery – much less the 90-day delay contemplated by their Track 3 proposal.

Second, Defendants' Track 3 proposal improperly attempts to limit the Court's intended scope of the Together Rx discovery. Defendants propose that Plaintiffs be allowed to conduct discovery relating only to their "allegations of horizontal conspiracy" and "general Together Rx

practices and policies, relating to their participation in Together Rx." *See* Def. Mem. at 8. In other words, *inter alia*, Defendants' Track 3 proposal seeks to preclude Plaintiffs from receiving *any* sales, discount, market share or pricing information (including AWP and WAC prices) relating to the Together Rx drugs. Considering the nature and substance of Plaintiffs' antitrust claims, Defendants' Track 3 discovery limitation is incomprehensible.

As set forth in their Proposed CMO, and consistent with the Court's March 8, 2004 instructions, Plaintiffs discovery efforts relating to their antitrust claims will primarily focus on the creation, existence, and maintenance of the Together Rx conspiracy. *See* Plaintiffs' Mem. In Support of CMO at 2-3. Although their Together Rx discovery requests will necessarily encompass all of the 170+ Together Card drugs, Plaintiffs will seek summary information easily retrieved (electronically) by the Together Rx Defendants[4] which goes to the heart of liability and class issues for their antitrust claims: (1) sales information, reflecting both volume and dollars; (2) pricing information, including AWP and WAC; (3) discount information; and (4) market share information. *Id.* These aforementioned requests, by definition and in practice, *do not* require Together Rx "product-specific" discovery.

Defendants note that it would not be "efficient or practical to litigate the scope of anticipated discovery in the abstract . . . [and therefore] reserve the right to object to specific discovery requests with respect to the Together Rx claims when they are made." Def. Mem. at 9. Plaintiffs, who fully understand the Court's March 8, 2004 directives, could not agree more.

---

[4] With the exception of the Schering-Plough Group (Schering-Plough Corp. and Warrick Pharmaceuticals Corp.) and Together Rx, LLC (the Together Rx alliance of companies), *all* of the Together Rx Defendants are also Phase 1 "fast track" Defendants. In other words, nearly all of the Together Rx Defendants will already be responding to Plaintiffs' Phase 1 discovery requests.

Accordingly, Plaintiffs should be afforded an opportunity to promptly serve their limited Together Rx discovery requests as part of their proposed Phase 1 "fast track" schedule.

### F. Additional Discovery Rules

#### 1. Government Investigations

This really should be simple: if a defendant has responded to a government investigation on AWP, the documents have already been collected and can easily be produced within 30 days. There is no reason to extend that deadline for such production for the Track 2 defendants. Indeed no reason is offered for such an extension of time. Nor is any reason offered for the provision that any defendant can seek relief from CMO 5 and this provision.

#### 2. NDCs

Defendants are misleading the Court. Plaintiffs' suggestion is not to expand the list of drugs, but rather to pick up all doses for a drug that is already in the case. Discovery has shown that the scheme being implemented for example, with respect to Taxol, was implemented for all doses of Taxol. Only certain doses are identified in the AMCC based on the information then available to plaintiffs. It would be patently unfair to ban plaintiffs' discovery of each dose of the drugs at issue or to not allow Track 1 to proceed on all doses. Again no new drugs are being added, just doses of the same drug.

#### 3. Redactions

Redactions are a big problem. If a defendant redacts information about drugs not in the fast track, and then produces the same document in unredacted form later, plaintiffs have to review and code the same document twice. This is unfair and wasteful.

### 4. Confidentiality Stamps

Plaintiffs' CMO seeks an order that in the <u>future</u> confidentiality stamps that obscure the substance of a document cannot be used on the face of the document. Defendants offer no explanation as to why that should not be the case.

### 5. Electronic Format

Defendants are hiding the ball here. They have gathered documents into electronic databases as part of their production process. For example, they have created databases from which one could calculate the real AWP taking into account discounts, rebates, chargebacks and free goods. But because these databases were not so maintained in the usual course of business they produce the information in hard copy. No one is asking for restoration or conversion, just a production in electronic format if it is available in that format.

### 6. Specific Rules Are Needed

Defendants have failed to produce <u>one</u> deposition witness despite repeated notices. Rather than inundate the Court with motions about such issues firm rules are needed now. Defendants cannot deny that they have missed every deadline imposed by the rules or by their own promises for the production of documents or witnesses.

### 7. Rolling Production

Defendants propose 30 days before production begins and then <u>after</u> the extended meet and confer process and motions before the Magistrate Judge are completed. Document production — this might not even begin until July. One hundred twenty days to complete production is too long if the class motions are due on September 1, as defendants propose.

### 8. Privilege Logs

The parties are close to agreement on this issue. However, despite now agreeing to produce a log within 14 days of a production, defendants have yet to produce a log for any production to date and often no explanation as to why they should not provide a log for documents withheld from the CMO 5 production. There is no valid reason for not doing so. Defendants suggest that they should not be required to provide an affidavit supporting the claim of privilege. However, they offer no reason as to why this provision would not provide a more meaningful approach to resolving privilege issues.

### III.   CONCLUSION

For the foregoing reasons, plaintiffs submit that defendants' proposal is inadequate and is a plan for more litigation just over the terms of a case management order.

DATED: March 23, 2004

By   Steve W. Berman, signature on file
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Kevin P. Roddy
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

Eugene A. Spector
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
**CHAIRS OF LEAD COUNSEL COMMITTEE**

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900
**MEMBERS OF EXECUTIVE COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard
Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street
Suite 1700
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel: (213) 895-6500
Fax: (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA 19102
Tel: (215) 790-7300
Fax: (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street,
Suite 200
Media, PA 19063
Tel: (610) 891-9880
Fax: (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX 75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098
**ADDITIONAL ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Edward Notargiacomo, an attorney, caused a true and correct copy of the foregoing Plaintiffs' Corrected Reply Memorandum in Support of Entry of Proposed Case Management Order Regarding Phased Discovery and Related Issues to be served on all counsel of record electronically on March 24, 2004, pursuant to Section D of Case Management Order No. 2.

/Edward Notargiacomo / signature on file
Edward Notargiacomo
**HAGENS BERMAN LLP**
225 Franklin Street
Boston, MA  02110
(617) 482-3700