UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL NO. 1456 ) ) ACTION: 01-CV-12257-PBS ) |
| THIS DOCUMENT RELATES TO: | ) JUDGE PATTI B. SARIS ) ) CHIEF MAGISTRATE JUDGE |
| THE MASTER CONSOLIDATED CLASS ACTION | ) MARIANNE B. BOWLER ) ) |

**MEMORANDUM OF BOEHRINGER INGELHEIM CORPORATION, BEN VENUE LABORATORIES INC., AND BEDFORD LABORATORIES IN OPPOSITION TO NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND'S MOTION TO INTERVENE**

**I.      INTRODUCTION**

On April 7, 2004, Boehringer Ingelheim Corporation ("BIC"), Ben Venue Laboratories, Inc. ("Ben Venue") and Bedford Laboratories ("Bedford") (collectively "Defendants")[1] filed a motion to dismiss on the grounds that the allegations in Plaintiffs' Amended Master Consolidated Class Action Complaint ("AMCC")[2] contain fatal jurisdictional and substantive defects.  Instead of filing a response grounded in the AMCC alone, on April 27, counsel for Plaintiffs (and the proposed intervenor) took the extraordinary step of filing both a motion to intervene and a companion motion to substitute parties in an effort to salvage the claims against the Defendants.  Counsel's maneuver all but concedes Defendants' point  --  that the AMCC, now in its fifth version, is **still** insufficient to keep BIC, Ben Venue, and Bedford as defendants in the class action.  Defendants' Motion to Dismiss must therefore be granted.

---

[1] BIC, Ben Venue and Bedford use this nomenclature solely for the convenience of this Court and deny that Plaintiffs' designation of them as a group is accurate or appropriate.
[2] As amended on December 5, 2003 and January 22, 2004.

In addition, counsels' motion to intervene should be rejected outright. The proposed intervenor, the National Automatic Sprinkler Industry Welfare Fund ("NASIWF"), is attempting to intervene in a case in which it is uncontested that there are no valid allegations against BIC, Ben Venue or Bedford. Worse, the terms of the Motion to Intervene and the attached affidavit do not limit their allegations to BIC, Ben Venue, and Bedford, but purport to apply to <u>every other defendant in this case</u>. NASIWF's effort to intervene is fruitless. First, there is simply no "case" against BIC, Ben Venue, or Bedford in which to intervene. Second, the proposed intervenor has not satisfied the most basic procedural requirement of intervention, attaching a proposed complaint to its motion, as required by Rule 24(c) of the Federal Rules of Civil Procedure. Finally, the proposed intervention is untimely, prejudicial, and disruptive.

This litigation is over three years old. Eleven case management orders have been issued by this Court. Discovery has already begun in earnest against not only against the class representatives and the other defendants to this litigation but also against third parties as well. Intervention at this stage threatens to throw this entire proceeding into chaos. Intervention now will only inject into this class action yet another plaintiff, raising yet another theory of recovery, with yet another series of allegations, against yet another new class of defendants, on potentially a further set of drugs.

The Motion to Intervene should be denied.

## II.    STANDARD OF REVIEW

In order to intervene as of right or with leave of court under Federal Rule 24 there must be a lawsuit in which to intervene.  *See Houston General Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999).

To intervene as of right under Rule 24(a)(2), a prospective intervenor must meet four conditions: (1) a timely motion, (2) an interest relating to the property or transaction which is the subject of the action, (3) a risk that the action may impair the intervenor's ability to protect its interest, and (4) lack of adequate representation by existing parties.  *Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 637 (1st Cir. 1989).

For permissive intervention under Rule 24(b), "(1) the application must be timely; (2) the applicant's claim or defense for intervention must share a common question of law or fact with the original action; and (3) there must be an independent jurisdictional ground for the applicant's claim or defense." *Pub. Serv. Co. of New Hampshire v. Patch* 173 F.R.D. 17, 29 (D.N.H. 1997). "However, even when each of these elements is satisfied, a court may nonetheless exercise its discretion to deny the motion to intervene," if the intervention will "unduly delay or prejudice the original parties" or if the proposed intervenors' interests are "adequately represent[ed]" by the existing litigants.  *Id.*

A party seeking to intervene must also comply with  Rule 24(c) and attach a copy of the pleading setting forth the claim or defense for which intervention is sought.  Failure to do so is grounds for dismissal.  *See Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205, n.6 (1st Cir. 1998).

III.    **ARGUMENT**

    A.    **Plaintiffs Nor Intervenors Have Refuted the Merits of Defendants' Motion to Dismiss; Therefore BIC, Ben Venue, and Bedford Are Not Proper Parties to This Action**

As pointed out in Defendants' April 7, 2004 Motion to Dismiss, the current AMCC contains fatal jurisdictional and substantive flaws. In particular, the sole basis of Plaintiffs' standing to sue BIC, Ben Venue, or Bedford rests on an allegation that an individual plaintiff purchased Atrovent from one of these Defendants. *See* AMCC, App. B at 10. However, this drug Atrovent by the terms of Plaintiffs' own complaint is not the subject of any of the allegations in this class action.

Plaintiffs state that Appendix A contains "a list of each of the specific drugs that are the subject of the claims herein." AMCC ¶ 11. This is a binding admission. *See Schott v. Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992). Atrovent, however, is listed nowhere in Appendix A as a drug subject of any claim in this suit. *See* AMCC App. A. Defendants pointed out this fact on page 4 of their April 7 Motion to Dismiss, a fact that Plaintiffs nor the proposed intervenors have challenged on the merits. Moreover, Plaintiffs' decision not to name Atrovent in the definitive list of drugs in Appendix A of the AMCC was the identical defect that Defendants raised last year with respect to Viramune, a drug that was ultimately dismissed from this case. *See* Defendant-Specific Mem. in Support of Motions to Dismiss (filed Aug. 1, 2003), at Tab 8, p. 2; Mem. and Order, at 21 (Feb. 24, 2004) (dismissing Viramune because it was apparently not manufactured by Defendants).

Plaintiffs' decision not to claim Atrovent as a drug that is "subject of the claims" in the AMCC is a fatal decision, as there are no other drugs identified as part of this case which any plaintiff has claimed to have purchased from either BIC, Ben Venue, or Bedford. *See* AMCC,

4

App. B, at 10.[3]  Further, notwithstanding Plaintiffs' decision not to name Atrovent as a drug subject to this complaint, even if purchase of this drug had been alleged in the AMCC, BIC, Ben Venue and Bedford do not manufacture or distribute Atrovent as affidavits attached to the April 7 Motion establish.  *See* Mot. to Dismiss (filed Apr. 7, 2004), at Ex. A & B.

None of the papers Plaintiffs and proposed intervenors have filed subsequent to Defendants' April 7 Motion to Dismiss dispute that, despite five opportunities get it right, Plaintiffs (1) still do not have a plaintiff with standing to sue BIC, Ben Venue, or Bedford; (2) still do not have a proper defendant; and (3) still do not have a properly identified drug manufactured by a BIC, Ben Venue or Bedford.  In fact, the Motion to Intervene specifically states that it does not "comment[] on the merits of the Boehringer Defendants' claims."  Mot. to Intervene, at 2.  For these reasons, there is no standing to sue BIC, Ben Venue, or Bedford, and they must be dismissed from the consolidated class action.

The proposed intervention cannot cure this jurisdictional defect.  "[I]ntervention presupposes pendency of an action in a court of competent jurisdiction." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999) (quoting *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974)).  Put another way, "intervention is ancillary to the underlying cause of action and 'will not be permitted to breathe life into a 'nonexistent lawsuit.'" *Id.* at 840 (quoting *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965)).  Plaintiffs have no standing to sue BIC, Ben Venue, or Bedford in the existing suit, because the only drug that would confer standing, Atrovent, is not identified in Appendix A as drug subject to this litigation (a point that remains uncontested); Plaintiffs' counsel cannot cure this deficiency by trolling for a plaintiff with standing.  *See McClune v. Shamah*, 593 F.2d 482, 486 (3rd Cir. 1979) ("A motion for

---

[3] Viramune was named in Appendix B as having been purchased, but that drug was dismissed by this Court on February 24, 2004.  Notwithstanding, Viramune, like Atrovent, is not listed as subject to the claims in this litigation

5

intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate."); *Jaffree v. Wallace,* 837 F.2d 1461, 1466 (11th Cir. 1988) ("Where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action."); *see also Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 95 (2d Cir. 1990) ("It is fundamental that an intervening claim cannot confer subject matter jurisdiction over the action it seeks to join."); *Applebaum v. State Farm Mut. Auto. Ins. Co.*, 109 F.R.D. 661, 664 (M.D. Penn. 1986) ("Manufacturing jurisdiction is not a proper place for permissive intervention.")

It stands uncontested that, because the only drug allegedly purchased by any plaintiff is, by Plaintiffs' own complaint, not a drug subject to this litigation, none of the current AMCC plaintiffs have standing to sue BIC, Ben Venue or Bedford. Amending the suit by adding parties through a motion to intervene cannot, therefore, breathe life into this defective lawsuit against them. As the court said in *Lans v. Gateway 2000, Inc*., 84 F.Supp.2d 112, 117 (D.D.C. 1999), if "a plaintiff lacks standing to be before the court from the time of the filing of the original complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction over the entire matter."[4] Here counsel for Plaintiffs and the proposed intervenor attempt to correct their current clients' lack of standing by amending the claims to add an entirely new plaintiff. However, with no valid action against BIC, Ben Venue or Bedford for counsel to amend or intervene, this Motion to Intervene should be denied.

---

by Appendix A.
[4] Although framed as a motion to intervene, the "allegations" in the motion would act as a substantive amendment to the AMCC.

### B.  This Court Should Also Deny the Motion to Intervene Due to NASIWF's Failure to Satisfy Rule 24

#### 1.  NASIWF did not attach a pleading

NASIWF's Motion to Intervene also fails to comply with Rule 24(c) of the Federal Rules of Civil Procedure.  Specifically, Rule 24(c) provides that a motion to intervene "shall state the grounds therefore and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c) (emphasis added).  The rule enables the Court and the parties to know precisely what allegations the intervenors would make and against whom.  Fairly construed, the Motion to Intervene and the Affidavit make allegations, not only against Defendants, but against every other defendant in this class action.  In paragraph 7 of the Jacobson Affidavit, for example, the proposed intervenors allege that NASIWF paid for drugs from "the following Defendant set forth below, (**and for additional Defendants as further investigation may demonstrate**).  This language is repeated in the Motion itself.  *See* Mot. to Intervene, at 2 (stating that NASIWF should intervene due to the allegedly unlawful acts of "Boehringer Defendants' (**among others**)" (emphasis added)); *see also* Mot. to Intervene, at caption (stating that the document relates to **ALL ACTIONS**) (emphasis added).  All of the defendants in the class action must simply guess what the allegations to respond to by parsing the Motion to Intervene and the Jacobson Affidavit.

Adding extra confusion to this case, the Motion to Intervene appears to contradict its own supporting affidavit.  Counsel for Plaintiffs and proposed intervenors incorrectly states on page 2 of the Motion to Intervene, "As set forth in the attached affidavit, the Sprinkler Fund paid for acyclovir sodium, leucovorin calcium and mitomycin, all drugs that are manufactured by Bedford Laboratories, Inc."  In fact, the **affidavit does not mention any of these drugs**. Moreover, even if the allegations in the Motion to Intervene could be taken at face value, the fact

7

that Bedford manufactures these products is irrelevant to NASIWF's standing, since other companies manufacture these multi-source products. Indeed, the fungibility of multi-source drugs was the very reason this Court originally required Plaintiffs to identify the manufacturer of the particular drug purchased. *See* May 13, 2003 Order, at 45. The Motion to Intervene simply ignores this requirement. The motion states only that the proposed intervenor purchased acyclovir sodium, leucovorin calcium and mitomycin, "all drugs that are manufactured by Bedford Laboratories, Inc." but cleverly omits any assertion that any of these purchases were actually of Bedford products. *See* Mot. to Intervene, at 2. In other words, by the terms of the Motion to Intervene it is completely unclear whether the proposed intervenor's purchases of acyclovir sodium, leucovorin calcium and mitomycin were Bedford products, or some other company's or companies' products. Such a defect, even if treated as an answerable allegation, does not state a claim of injury "fairly traceable" to any Defendant.

Since NASIWF does not attach any pleading, this Court should deny NASIWF's Motion to Intervene on this ground alone. As the First Circuit said in *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-84 (1st Cir.1988), "The language of [Rule 24(c)] is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to insure that claims for intervention are handled in an orderly fashion." *See also Patch*, 136 F.3d at 205, n.6 (where the proposed intervenors had failed to attach a complaint, the "parties were derelict in their Rule 24(c) duties, and … such dereliction ordinarily would warrant dismissal of their motions").[5]

---

[5] The motion to intervene ultimately was denied on other grounds.

### 2. The proposed intervention is untimely

Intervention, whether as of right or permissive, requires that the intervention be timely. The First Circuit has adopted a four-factor test to determine if a motion to intervene is timely. The court must consider: (1) the length of time the would-be intervenor knew or reasonably should have known that its interest was imperiled before it moved to intervene; (2) the foreseeable prejudice to the existing parties if intervention is granted; (3) the prejudice to the would-be intervenor if intervention is denied; and (4) exceptional circumstances which may militate against or in favor of allowing late intervention. *Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp.,* 120 F.3d 304, 321-22 (1st Cir.1997).

The proposed intervenor's motion is untimely. This consolidated class action is now in its third year, the complaint is in its fifth iteration. As early as December 2001, proposed intervenors, NASIWF, filed a law suit raising similar claims against Bristol Meyers in New Jersey.[6] During that litigation, NASIWF was represented by the same counsel now acting as lead counsel in the present litigation. And yet, NASIWF claims that their suit against, not only BIC, Ben Venue and Bedford, but the other defendants in this case, is "timely." It is not, and should not be allowed.

Further NASIWF should have been aware that their claims were imperiled when BIC, Ben Venue and Bedford had filed an earlier motion to dismiss the AMCC on the same grounds on which Defendants' current motion is now based, albeit in respect to a different drug, Viramune. In that circumstance, like the present one, Plaintiffs had decided also to omit a drug in Appendix A from the list of drugs subject to the suit.

It is clear that, for whatever reason, NASIWF has been content for years to sit on its hands and only now, when discovery for most of the defendants and against third parties has

9

already begun, has decided to come to the Court with a bevy of new accusations, <u>not only against BIC, Ben Venue and Bedford</u> but potentially against <u>all the other defendants in this action as well</u>. In sum, Plaintiffs' and proposed intervenor's counsel are seeking leave to file an entirely new lawsuit in the guise of a motion to intervene. This strategy should be rejected.

> 3.   <u>Denial of intervention would not harm the interests of NASIWF</u>

This Court should also deny intervention, because denial of intervention would not impair or impede the ability of NASIWF to protect its interests.[7] If BIC, Ben Venue and Bedford are dismissed from the AMCC, NASIWF would be free to file a separate suit against any of these entities. On the other hand, if this Court does not dismiss these defendants and certifies the class sought by existing plaintiffs, by definition the existing class representatives would protect the interests of NASIWF. Even if this Court did not dismiss the case against these defendants, but did not certify the class, NASIWF could file its own individual suit. In short, denial of intervention cannot harm the interests of NASIWF, so NASIWF does not satisfy the requirements of Rule 24 for intervention.

> 4.   <u>Permissive intervention would allow Plaintiffs to abuse the class action process, harm all of the defendants, and would disrupt the AMCC proceedings</u>

> a.   <u>Abuse of class action process</u>

NASIWF also moves to intervene "in order to protect the claims that … members of the class have against BIC, [Ben Venue] and Bedford for their manipulation of the AWP [average wholesale price]." Mot. to Intervene, at 2. This would appear to be an admission that the current named plaintiffs do not adequately represent the interests of the class. Putting that aside, counsel for NASIWF is the same counsel who has filed five previous complaints in this case over more

---

[6] *National Automatic Sprinkler Ind. v. Bristol-Meyers*, N.J. Sup. Ct. L0019002, Middlesex County.
[7] One of the requirements for intervention under Rule 24(a).

10

than four years, not a third party represented by different counsel who just learned of this case. Even if NASIWF would have standing, allowing the existing named plaintiffs now to correct the deficiency in standing through adding another party plaintiff "would be to sanction and encourage abuse of the class action provisions of federal law . . . . This would plainly be inappropriate." *Fleming v. Bank of Boston Corp.*, 127 FRD 30, 36-37 (D. Mass. 1989) *aff'd on other grounds*, 922 F.2d 20 (1st Cir. 1990).[8]

### b. Harm to defendants

Granting intervention would prejudice all the existing defendants and disrupt current case scheduling. Intervention is not being sought simply against BIC, Ben Venue and Bedford, but against other defendants. As noted above, paragraph 7 of NASIWF's affidavit states "During the Class Period, for the following Defendant as set forth below (**and for additional Defendants** as further investigation may demonstrate), NASIWF paid for purchases of name brand/generic pharmaceuticals based on AWP."[9] This is the proverbial "camel's nose under the tent" in relation to this litigation. If this Court granted NASIWF intervention, there would be a new plaintiff, and once NASIWF filed its pleading, additional claims, and possibly new drugs as well. Even if the new claims were similar to the claims in the December 5, 2003 Amended Complaint, or even identical except for the new plaintiff, defendants would have the right to challenge the newly-amended complaint. Further, granting of this motion to intervene sets up a web of new procedural problems that over eleven prior case management orders from this court were designed to address. Once NASIWF filed its complaint, defendants would be obliged to file responsive motions to dismiss and answers. Even if NASIWF changed its position and claimed

---

[8] "Not only would intervention circumvent the statute of limitations, it would also negate the preparation and time spent by the defendants on their motions for dismissal and/or summary judgment. We hold the definite impression that Breech's intervention motions were a 'last gasp' attempt by the intervenor and Fleming to erase the handwriting on the wall." 922 F.2d at 26.

it was only filing a claim against BIC, Ben Venue, and Bedford, that claim could not be representative of the claims of the other named plaintiffs or class members, who are alleging claims against all the manufacturers. Defendants would have to respond to the new discovery requests of NASIWF, perhaps reproducing much of what has already taken place. Presumably defendants will have to take the discovery of NASIWF, and such discovery would almost certainly delay the schedules for class certification and dispositive motions. Since NASIWF's counsel waited for more nearly three years after filing the original complaint in this case to ask to add NASIWF, that intervention would raise different statute of limitation issues than presented by the other defendants. In addition, the relevant period for product purchases by NASIWF would be different than for the other plaintiffs, adding unnecessary complexity to an already complex case.

The prejudice to BIC, Ben Venue and Bedford is obvious.[10] It includes both the cost of fighting the various deficient amended pleadings for the past three years, and the burdens imposed on them in having to prepare its defenses to a non-existent complaint and unspecific allegations. For over three years, BIC, Ben Venue and Bedford have spent significant time and resources fighting vague and unsupported allegations.[11] The proposed intervention creates a new fork in the road, broadening the allegations against them and (1) making it impossible for them to understand or have notice of the conspiracy alleged and (2) prejudicing their ability to prepare summary judgment motions and prepare for trial. *See North Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001) ("It is not enough for a plaintiff to file a RICO claim, chant the

---

[9] Emphasis added.
[10] The other defendants would presumably face similar, if not more severe, prejudice.
[11] Similarly, the Together Rx Defendants argued that "Plaintiffs' claims and theories have been a moving target since day one, and the motion to intervene is merely a disguised effort to amend the pleadings yet again." Together Rx Defendants' Opposition to Motion to Intervene In The *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, ( filed February 19, 2004), at 1.

statutory mantra, and leave the identification of predicate acts to the time of trial.") (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991)); *Formax, Inc. v. Hostert*, 841 F.2d 388, 391 (Fed.Cir. 1988) ("[A]llegations of RICO violations must be pled with sufficient specificity so as to place the party being sued on notice of the issues involved in the suit.").

Finally, the allegations (to the extent they can be construed as such) in the Motion to Intervene set up entirely new and conflicting theories of liability and recovery against the defendants -- theories that have not been tested in a motion to dismiss, and <u>are not the predicate for any of the current discovery requests</u>.  For example, in ¶171 of the December 12, 2003 AMCC, the current plaintiffs alleged that when they acquired generic products from pharmacy benefit managers ("PBMs") through the mail order pharmacies of PBMs, they were ignorant of the fact that AWP did not reflect the acquisition costs of mail order pharmacies. *See* AMCC ¶ 117 ( "PBMs also have **mail order services** in which case they act as the pharmacy.  In this situation, the **PBM keeps the spread between the AWP and the list price as there is no intermediary,** like a pharmacy dispensing the drug.  The PBMs keep this spread knowing that the AWPs are inflated and not the true AWP.") (emphasis added).  In its affidavit supporting intervention, however, NASIWF admits it knew that the mail order pharmacies acquired generic products at less than AWP, and took that into account when contracting with Caremark.[12]   *See* Jacobson Aff., at ¶ 6a (**"NASIWF pays for … all mail order generic prescription drug purchases at AWP less 55 percent.**")

The mischief the requested intervention would work in this case is significant.  BIC, Ben Venue and Bedford, like any other defendant to whom the intervenor's allegations are purported to apply, cannot effectively prepare their defenses if they do not know whether Plaintiffs are

13

alleging that: (1) that Plaintiffs were ignorant of the fact AWP did not reflect the acquisition costs of pharmacies, or (2) Plaintiffs knew AWP did not reflect the acquisition costs of the pharmacies.  That uncertainty cannot now be injected into this case without causing all present parties, and the Court, to engage in a wholesale recalibration of their respective litigation and discovery strategies.

## IV.   CONCLUSION

More than four months ago, in allowing a different amendment to the AMCC, the Court admonished the Plaintiffs to end the amendments to the pleadings.[13]  Subsequently, two individuals moved to intervene to correct standing deficiencies in the claims against the Together Rx Defendants.  The Together Rx Defendants opposed that motion to intervene, arguing, "If allowed, this motion will no doubt be the first of many in a line of motions to intervene that Plaintiffs will seek to file each time another flaw in their claims is exposed."[14]  The current Motion to Intervene by counsel for Plaintiffs confirms the truth of this prediction.

Five complaints are enough.  Three years of amendments are enough.  Plaintiffs and intervenors are not acting pro se.  This Court should not allow counsel for Plaintiffs a sixth bite at the apple (and maybe more) by allowing Plaintiffs (without standing to sue BIC, Ben Venue or Bedford) to enlist a newly named plaintiff to amend the pleadings another time with an improper Motion to Intervene.  For the reasons set forth above and in the Motion to Dismiss, BIC, Ben Venue and Bedford request that this Court grant the Motion to Dismiss and deny NASIWF's Motion to Intervene.

---

[12] *See, e.g.,* ¶170 of the December 5, 2003 AMCC.
[13] Transcript of November 21, 2003 hearing at ¶ 119.
[14] Together Rx Defendants' Opposition to Motion to Intervene In The *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (filed February 19, 2004), at 4.

Dated:  May 11, 2004 			Respectfully submitted,


			<u>/s/ Paul J. Coval [signature on file with Court]</u>
			Paul J. Coval
			Douglas L. Rogers
			Darrell A. H. Miller
			VORYS, SATER, SEYMOUR AND PEASE LLP
			52 East Gay Street
			P.O. Box 1008
			Columbus, Ohio 43216
			(614) 464-6400
			(614) 464-6350 FAX

			*Attorneys for Boehringer Ingelheim Corp., Ben Venue Laboratories, Inc./Bedford Laboratories*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served on all enrolled counsel via Verilaw on May 11, 2004 pursuant to this Court's Case Management Order 2.

/s/ Paul J. Coval [signature on file with Court]
Paul J. Coval