UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | Judge Patti B. Saris |

### DECLARATION OF STEVE W. BERMAN REGARDING SUFFOLK COUNTY'S ACCESS TO DISCOVERY

Steve W. Berman, being duly sworn, deposes and says:

1.      I am a partner at Hagens Berman LLP and have personal knowledge of the facts set forth herein.

2.      In response to CMO No. 5, defendants, subject to the terms of CMO No. 5, produced hundreds of boxes of documents.  Apparently, Suffolk did not ask to inspect those documents though to our knowledge Suffolk could have done so.  Plaintiffs' counsel did.  In some instances, *and on some occasions at our own expense,*[1] we copied the entire set.  This set was then assigned out for review and coding to various plaintiffs' counsel.  Its integrity was not necessarily retained as these documents were our own working set.  In other instances, we sent a team out to select from hundreds of boxes which documents were of interest.  Those selected were then sent to Hagens Berman ("HB"), or to the offices of other co-lead counsel.  These

---

[1] Suffolk claims that all defendants have produced documents without cost because they anticipated a depository would be created.  This is not true, the issue of production cost has varied.

1534.16 0061 MTN.DOC

documents were also subject to a sorting and coding process and have been distributed throughout the offices of plaintiffs' counsel.

3. Several months ago Suffolk's counsel asked for access to the set of documents at the offices of plaintiffs' counsel. We politely declined for a variety of reasons. One, Suffolk could more easily inspect and copy documents from defendants' own set. Second, this would allow Suffolk to make its own choice as to relevancy, rather than be bound by or rely on our decisions. Third, we did not want to halt or disrupt the sorting and selection process.

4. No defendant has suggested to us directly that a depository be created or negotiated for a depository. I have never been in a case where liaison counsel has had sole responsibility for establishing such a depository. When depositories are established all participants share in the creation and funding of such a depository. A copy of a typical depository order reflecting such participation is attached as Exhibit A.

5. Although Suffolk claims it will cost tens of thousands of dollars to purchase its own set of documents, this pales in comparison to the cost of a depository which will easily exceed $5 million. Based on information from defendant we estimate that at least 20,000 boxes will be produced and establishing a depository of these documents would cost at least $5 million. Then Suffolk would have to pay for its share of the depository and for the costs of its selected documents. Rather, it is far cheaper for Suffolk to select from defendants' set what it wishes to copy.

6. Further, creation of a depository is not efficient. Plaintiffs' counsel, rather than a wholesale coping of documents, is inspecting and selecting in the field. Only a small subject will be copied and retained at HB. If this selection set is what Suffolk wants, it is not entitled to the fruits of our labor and since it has its own claims, should not want to rely on such efforts.

1534.16 0061 MTN.DOC

7. The Dey production is a prime example of the error inherent in Suffolk's request. Dey will make available for inspection 600 boxes. Under Suffolk's request, HB would have to copy and store these for Suffolk's inspection. This would be a huge waste. Instead, plaintiffs' counsel will send a team to that warehouse and make a selection. Suffolk is free to either copy the 600 boxes or make its own selection, but the creation of a depository of these documents is not warranted.

8. No other party with AWP litigation — Pennsylvania, California, Minnesota — has asked for a depository.

9. Suffolk has the ability to inspect any of defendants' documents and liaison counsel will continue to notify Suffolk of productions. This ability to inspect places Suffolk on an equal footing.

10. There are certain defendants who do not want liaison counsel to turn over all documents to Suffolk, but instead want to respond to Suffolk with what they believe are documents responsive to Suffolk's case.

11. Since the stay was lifted, we have reported to Suffolk documents being produced. To my knowledge, Suffolk has not inspected any documents.

12. Where a defendant has produced a complete set directly to us, we have offered to Suffolk that they can inspect our set so long as the inspection does not interfere with our current. Suffolk has not requested such access.

1534.16 0061 MTN.DOC

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct and that this Declaration was prepared in the Commonwealth of Massachusetts on May 26, 2004.

                                            /s/   Steve W. Berman
                                            Steve W. Berman

1534.16 0061 MTN.DOC

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **DECLARATION OF STEVE W. BERMAN REGARDING SUFFOLK COUNTY'S ACCESS TO DISCOVERY** to be served on all counsel of record electronically on May 26, 2004, pursuant to Section D of Case Management Order No. 2.

      /s/   Steve W. Berman
Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

1534.16 0061 MTN.DOC