**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re Pharmaceutical Industry Average Wholesale Price Litigation | MDL Docket No. 1456 |
| THIS DOCUMENT RELATES TO: *County of Suffolk v. Abbott Laboratories, Inc., et al.,* E.D.N.Y. Case No. CV-03-0229 | Judge Patti B. Saris |

**PLAINTIFF SUFFOLK COUNTY'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The purported supplemental authority filed June 14, 2004 is a June 1, 2004 decision in the New York Attorney General's action styled *New York v. Pharmacia Corp., GlaxoSmithKline, PLC and Aventis Pharmaceuticals, Inc.*, Index Nos. 905-04, 905-03 and 1150-03 (the "decision". The case pends in the New York State Supreme Court (New York's lowest court), Albany County. The decision reinforces the viability of Suffolk's claims under New York's consumer protection statute, General Business Law ("GBL") §349 and for common law fraud. It also establishes the viability of Suffolk's claim under New York Social Service Law §145-b, holding unremarkably that the allegations there fail to satisfy §145-b's requirement that the wrong implicate public funds (p.10). Here, of course, no one even has asserted an allegation failure of that kind.

**A. The Decision Confirms That Suffolk's GBL §349 Claim Should Be Sustained**

The decision sustains the NYAG's claim that defendants' reporting of false and inflated AWPs violates GBL §349. Suffolk asserts the same cause. The state court rejected the defendants' arguments (a) that "plaintiff was not deceived by the AWP as evidence[d] by government reports, regulatory and

legislative history and public accounts, and plaintiff had the statutory right to request price information directly from defendant manufacturers"; and (b) that plaintiff' allegations "are not sufficiently specific and fail to establish a prima facie claim." Decision at 5. These are the precise arguments defendants here advance in seeking to dismiss the Suffolk GBL §349 cause. *See* consolidated memorandum of law in support of defendants' motion to dismiss the amended complaint, at 20-22 and 34-35; consolidated reply memorandum of law in support of defendants' motion to dismiss the amended complaint at 7, n.8, and 19.

> To these arguments, the state court held:
>
> if plaintiff can establish its allegation that defendant artificially inflated prices reported to price reporting agencies known to be relied upon by governmental agencies for reimbursement purposes and the spread achieved thereto created increased profits to defendants through increased sales, **such conduct would rise to the level of deception or misleading and, if established, this conduct would cause injury to plaintiff through increased reimbursements.**

Decision at 6 (emphasis added). The court did not require the NYAG to replead with greater specificity his §349 claims.

The decision's rulings on these points support entirely the arguments Suffolk advances in opposition to defendants' motions to dismiss its GBL §349 cause. *See, e.g.,* Suffolk's memorandum of law in opposition to defendants' consolidated motion to dismiss at 31-32 (defendants' failure to disclose that the reported AWP does not accurately reflect the true AWP caused Suffolk to overpay for its Medicaid pharmacy costs because of Suffolk's "statutorily required" reliance on defendants' reported AWPs); at 32-33 ("It is well-established that any allegation of fraud made in connection with a GBL §349 claim is surplusage and not subject to review under Rule 9(b)." *Petitt v. Celebrity Cruises, Inc.*, 153 F.

2

Supp. 2d 240, 265 (S.D.N.Y. 2001) *(quoting Hedaya Bros., Inc. v. Fed. Ins. Co.*, 799 F. Supp. 13, 15 (E.D.N.Y. 1992)).

### B. The Decision Confirms That Suffolk's Fraud Claims Should Be Sustained

The decision sustains the NYAG's fraud claim under Executive Law §63(12). While Suffolk has not (and could not) plead a claim under §63(12), Suffolk has plead a common law claim for fraud, and defendants have raised like protest to it. *See* County of Suffolk Amended Complaint at ¶¶ 127-128; consolidated memorandum of law in support of defendants' motion to dismiss Suffolk Amended Complaint at 18-20 and 35-37; consolidated reply memorandum of law at 6-7 and 12-17. In both the NYAG action and Suffolk actions, defendants have maintained that any AWP fraud claim must fail because "the inflation of AWPs was not deceptive or misleading because government administrators were aware of defendants' practices", and because of "plaintiff's lack of specificity" in pleading the cause. Decision at 6-7.

In rejecting defendants' arguments and sustaining the fraud claim, the state court wrote "plaintiff has adequately alleged a *prima facie* case for this cause of action inasmuch as plaintiff's allegations, if proven, establish a repeated misrepresentation by defendants in conducting its business and, thus, state a claim for relief." Decision at 7. A like outcome is required here.

### C. The Decision's Dismissal of the NYAG's §145-b Claim is Irrelevant in Important Respects; Its Authorities Helpful to Suffolk

The New York court dismissed the NYAG's §145-b claim on the basis that the New York complaint contained "no allegation that defendants received any public funds as a result of their actions, as required by the plain language of the statute." Decision at 10, *citing People v. Brooklyn Psychoservices Rehabilitation Institute*, 185 A.D.2d 230, 234, 585 N.Y.S.2d 776 (2d Dep't 1992) (hereinafter

"*BPRI*"). No defendant here has contended that Suffolk's complaint fails to allege or permit the inference that defendants received public funds. So much for the pertinence of this part of the New York decision.

Moreover, the decision relied upon by the Albany count court, *BPRI*, actually supports Suffolk (and the NYAG's) position. In *BPRI*, the defendant doctor was held liable for a §145-b violation even though he received no public funds at all, let alone public funds directly. *See id.* at 234-35 (stating that fraudulently obtained Medicaid funds were paid through multiple corporations before inuring to the individual defendant, Dr. Easton). Dr. Easton did not directly receive those unlawful public funds, an Easton-controlled entity (BPRI) did. *Id.* Nevertheless, the court found Dr. Easton liable for violating §145-b. Why? Not because BPRI received the public funds, but because Easton devised the fraudulent scheme (as defendants did here) and BPRI paid rent to two realty corporations controlled by the Easton family. *Id.* at 234-35. "Through Easton's *de facto* control of the two realty corporations, which were ostensibly owned by his children, the family was personally enriched when the fund collected from the Medicaid fraud were paid in the form of grossly inflated rents." *Id.* at 235.[1]

That is precisely the case at case at bar. Defendants are personally enriched when the participants in the drug distribution chain pay for defendants' drugs using the public funds such participants receive as a result of the AWP fraud defendants have devised. County of Suffolk Amended Complaint at ¶¶ 15, 18, 68, 98, 100-107.

The Albany county §145-b ruling is also flawed because the plain language of §145-b does not require that defendants themselves obtain or attempt to obtain public funds, but rather that defendants by

---

[1] Until this June 1 ruling by Justice Benza, neither *BPRI* nor any case prior or since has contradicted the plain read of the statute that §145-b is violated when the wrongful misconduct occurs on behalf of oneself *or others*.

means of false statements or concealment of material facts obtain or attempt to obtain public funds on behalf of themselves *or others*. The statute expressly states:

> It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, *on behalf of himself or others*, to attempt to obtain or to obtain payment from public funds or supplies furnished or purported furnished pursuant to this chapter.

New York Soc. Serv. L. 145-b(1)(a).

No New York case, including *BPRI,* has ever ruled that a defendant is not liable for violation of §145-b where it attempts to obtain payment of public funds *on behalf of others*. Nor could such a case hold. It is axiomatic that statutes must not be interpreted so as to void their plain meaning.[2] Had the legislature wished merely to impose liability only on those who defraud on their own direct behalf, it would have written the statute to say that.[3] The legislature did not.

Even were §145-b written to require direct benefit to defendants, which it is not, Suffolk's §145-b claim would stand. Suffolk specifically alleges that defendants were directly enriched when the providers

---

[2] "It is a long-held tenet of statutory interpretation that one section of a law should not be interpreted so as to render another section meaningless." *Princess Cruises, Inc. v. U.S.*, 201 F.3d 1352, 1362 (Fed. Cir. 2000). "Every part of a statute must be given meaning and effect..." *Heard v. Cuomo,* 94 N.Y.S.2d 675, 689 (N.Y. 1993). *See also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989) (stating that its interpretation of the relevant statute "begins where all such inquiries must begin: with the language of the statute itself"); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051 (1980) [*8] (outlining the "familiar canon of statutory interpretation" that the starting point is the plain language of the statute). In cases where the language of the statute is unambiguous, as here, "this first canon is also the last: 'judicial inquiry is complete.'" 503 U.S. at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 429, 66 L. Ed. 2d 633, 101 S. Ct. 698 (1981) (Burger, C.J.)).

[3] *See, e.g., Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S. Ct. 1146 (1992) (Thomas, J.)("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

paid for defendants' drugs using the public funds the providers received as a result of the AWP fraud defendants' devised. *See* County of Suffolk amended complaint at ¶¶ 380-384.

## CONCLUSION

The New York decision reinforces the validity of Suffolk's §349 and fraud claims, while bearing little pertinence to the §145-b claim.

Dated: June 18, 2004

Respectfully submitted,

**KIRBY McINERNEY & SQUIRE, LLP**

By: /s/ Joanne M. Cicala
Joanne M. Cicala, Esq.
Aaron D. Hovan, Esq.
830 Third Avenue
New York, NY 10022
(212) 371-6600

*Counsel for Plaintiff County of Suffolk*