UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) THIS DOCUMENT RELATES TO ) 01-CV-12257-PBS AND 01-CV-339 ) ) | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris<br><br>Chief Magistrate Judge Marianne B. Bowler |

**PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL
"PROPER ANSWERS" TO BMS' CONTENTION INTERROGATORIES**

Interrogatories were first served by plaintiffs in this case to parse out facts readily available to defendants. Rather than answer, defendants objected to each interrogatory and improperly referred plaintiffs to the millions of pages they had produced or will produce. A separate motion to compel will address this issue as to BMS.

With third-party discovery just underway and with their own documents slowly trickling out, defendant Bristol-Myers Squibb Group ("BMS"), now adopting a stricter standard for answering than it is willing to do, demands that plaintiff provide "proper answers" to what are plainly contention interrogatories. Courts disfavor such interrogatories at this early stage of litigation. Rather than simply object, plaintiffs answered each interrogatory in a fashion that is consistent with this stage of the litigation. And as demonstrated herein the answers are satisfactory at this stage of the litigation.

**I.    STATEMENT OF FACTS**

Pursuant to CMO No. 10, which was entered on March 25, 2004, the fast track defendants are subject to discovery with respect to all drugs at issue. Discovery is now

- 1 -

1534.16 0076 MTN.DOC

proceeding full bore but is still in the early stages. Defendants have issued roughly 53 subpoenas directed toward class members. Declaration of Steve W. Berman in Opp. to Mtn. to Compel "Proper Answer" to BMS' Contention Interrogatories ("Berman Decl."), Ex. A. In virtually each of these subpoenas, defendants seek documents relating to the meaning of AWP, it's use in the reimbursement process, and awareness of the spread between AWP and actual acquisition cost. *Id.* Defendants also have subpoenaed 51 CMS carriers and federal agencies. Berman Decl., Ex. B. Defendants have also served subpoenas on all major pharmacies and even small independent pharmacies. All told, 153 subpoenas have been issued. Each of these also goes to the issues addressed in defendants' interrogatories. It is clear that a substantial amount of discovery from third parties is directed at the same issues defendant BMS now demands answers to. In addition, plaintiffs have served discovery on defendants going to the exact same issues seeking their documents on these issues.

Thus, in the midst of this substantial discovery effort which is far from over, BMS demands that contention interrogatories be answered now.

## II. CONTENTION INTERROGATORIES ARE DISFAVORED AT THIS STAGE OF THE LITIGATION

In plaintiffs' responses to BMS' interrogatories, plaintiffs called to BMS' attention a series of cases holding that contention interrogatories "are more appropriate after a substantial amount of discovery has been conducted." *McCarthy v. PaineWebber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (citing *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992)). BMS did not respond to these cases or even acknowledge them in their moving papers.

Rule 33(c) expressly contemplates that "the court may order that such [a contention] interrogatory need not be answered until after designated discovery has been ***completed*** or until a pre-trial conference or other later time." (Emphasis added.) Indeed, the MANUAL FOR COMPLEX LITIGATION advises that "[b]efore contention interrogatories are filed, the court should consider whether they are likely to be useful at that stage of the proceeding and should ensure that they

will not be argumentative." MANUAL FOR COMPLEX LITIGATION, THIRD, § 21.461 at 91 (1995) (emphasis added).

Accordingly, courts have held that it is up to the party serving contention discovery to justify its use during the discovery period:

> A party filing contention interrogatories *early* in the pretrial period, before substantial documentary or testimonial discovery has been *completed*, has the burden of justification. It must present "specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure."

*Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (emphasis added) (citing *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 338-339 (N.D. Cal. 1985)). In this case, contention interrogatories are particularly premature given the early stage of discovery.

The Court in *In re Convergent Tech. Sec. Litig.* in a lengthy opinion addressing the use of contention interrogatories, held that a party that wants "early answers to contention interrogatories" must hand-craft limited questions and has the burden of showing that the answers to "well-tailored questions" will contribute meaningfully to clarifying the issues. *Id.* at 338-39. The Court also noted that it is unlikely that early answers are likely to produce "quality answers" due to the fact that research and investigation are usually in process at an early stage. *Id.* at 337-38.

These concerns are certainly present here. The questions are not "carefully crafted" but instead would require the sifting and analysis of evidence not yet produced, and the questions will not narrow or clarify the issues at this early stage. BMS cannot demonstrate that its contention interrogatories are proper at this early stage in the case. Nonetheless, plaintiffs made a good faith effort to respond, as highlighted below.

### III. PLAINTIFFS' ANSWERS ARE PROPER

Given this stage of the litigation, the answers are proper. Further, the answers in some cases are certainly proper given the ambiguity in the questions. With the legal standards in mind, plaintiffs address each of the allegedly improper answers below.

> <u>Interrogatory No. 1</u>: State what you <u>contend</u> is the proper definition of AWP …

By its express terms, this interrogatory seeks what plaintiffs' "contend" and thus is plainly a contention interrogatory. Thousands if not millions of documents are being produced that potentially bear on this issue. Defendants are themselves aggressively pursuing discovery on this issue and plaintiffs are asking defendants for discovery of what they intended AWP to mean when ***they*** used it to promote their ***own*** drugs. A prime example of the ongoing and nascent nature of discovery in this regard is a July 14, 2004 letter to Kaiser in which defendants indicate that the deposition will focus on:

> 2. The meaning of the term "AWP" or "Average Wholesale Price."[1]

Defendants also continue to serve subpoenas or health plans (*i.e.*, class members) demanding, among other things, "[a]ll documents relating to the definition, meaning, or significance of AWP.[2]

This issue is thus precisely in the early stage of factual development, and a premature answer will not clarify or aid the litigation. Rather than completely refuse to answer on the grounds of prematurity, plaintiffs' answer, which provides examples of several definitions of AWP that have been used by various entities, is adequate at this stage of the litigation. The answer provides defendant with some guidance as to what the definition(s) may be. Nothing further could be done at this stage of the litigation or should be required.

---

[1] Attached as Exhibit E to Berman Decl.

[2] *See*, *e.g.*, Exhibit F to Berman Decl. (July 14, 2004 Defense Subpoena to International Foundation of Employee Benefit Plans at 7).

> Interrogatory No. 2: State whether you contend that the existence of a "spread" … without more, violates the law …

The answer given is completely proper as this interrogatory is hopelessly vague. What does "without more" mean? Take for example a BMS drug for which plaintiffs can and will show a spread of 300% between the published AWP and the real AWP. A spread always has by definition "more." The "more" includes rebates, discounts, chargebacks or other devices that create the spread. There is thus always "more," and this interrogatory answer is thus proper given the vagueness of the question.

> Interrogatory No. 3: State whether a spread … of any size violates the law.

Again, at this stage of the litigation, it is premature to require an answer. Defendants' discovery efforts for example are heavily focused on the market's understanding of the size of spreads. *See* Berman Decl., Exs. A & D. Any answer at this stage would be premature and would not clarify the issues. However, plaintiffs did alert BMS in their answer that it may be our position, based on the Final OIG Guidance of April 23, that any spread done for the purpose of inducing customers to purchase product is illegal. This answer is proper at this stage of the case.

> Interrogatory No. 4: Explain what you mean by marketing the spread …

BMS claims that this does not require plaintiffs to sift through the evidence or to answer in light of what discovery reveals. If this is truly BMS' intent, then the answer provided is sufficient because it directs BMS to examples of marketing the spread set forth in the AMCC. If this answer is not sufficient, then what BMS seeks is a contention interrogatory answer that would require a sifting of evidence that has yet to be produced. Requiring such an effort is improper at this stage and would not produce a meaningful answer. The examples provided by plaintiffs suffice at this early stage in the litigation.

> Interrogatory No. 5: Identify each act that constitutes marketing the spread.

This is a pure contention interrogatory which would require plaintiffs to sift through all of BMS' evidence to "identify each act." It is thus premature. If it is not a contention interrogatory and "it is simply trying to understand the type of conduct" that constitutes marketing the spread, then the answer which points to the examples in the AMCC is adequate. *See, e.g.,* AMCC ¶¶ 256, 257, 228, 263, 265-66, 277-78, 298, 309-10, 320, 334, 340, 347, 368, 384, 387-400, 428, 442, etc. These examples will assist BMS in understanding the types of conduct at issue.

> Interrogatory No. 6: Explain what you mean by manipulating the spread as it is used in the AMCC.

This interrogatory, unlike the others, does not ask to "identify each act." Since it was not a pure contention interrogatory, plaintiffs answered the question. The answer, taken from the OIG Final Report, is certainly sufficient. If defendants want more, then in essence this is another premature contention interrogatory.

> Interrogatory No. 7: Identify each act that constitutes manipulating the spread.

By its face, this is a pure contention interrogatory which would require the identity of each such act and it is hence premature. Realizing that it is a pure contention interrogatory, BMS now claims that plaintiffs should set forth the Rule 11 basis for making this allegation. Nonsense. The AMCC has been tested by two exhaustive rounds of motions to dismiss. If BMS had Rule 11 motions, the time to bring such motions has long passed. BMS cannot use Rule 11 to cloak what is plainly a contention interrogatory.

## IV.   CONCLUSION

For the foregoing reasons, the motion to compel should be denied.

1534.16 0076 MTN.DOC

| | |
|---|---|
| DATED: July 15, 2004 | By    **/s/ Steve W. Berman**<br>Thomas M. Sobol (BBO#471770)<br>Edward Notargiacomo (BBO#567636)<br>Hagens Berman LLP<br>One Main Street, 4th Floor<br>Cambridge, MA  02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003<br>**LIAISON COUNSEL**<br><br>Steve W. Berman<br>Sean R. Matt<br>Hagens Berman LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA  98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br><br>Eugene A. Spector<br>Jeffrey Kodroff<br>Spector, Roseman & Kodroff, P.C.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA  19103<br>Telephone: (215) 496-0300<br>Facsimile: (215) 496-6611<br><br>Samuel Heins<br>Heins, Mills & Olson, P.C.<br>3550 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN  55402<br>Telephone: (612) 338-4605<br>Facsimile: (612) 338-4692<br>**CHAIRS OF LEAD COUNSEL COMMITTEE**<br><br>Marc H. Edelson<br>Hoffman & Edelson<br>45 West Court Street<br>Doylestown, PA  18901<br>Telephone: (215) 230-8043<br>Facsimile: (215) 230-8735 |

- 7 -

                                          Kenneth A. Wexler
                                        Elizabeth A. Fegan
                                        The Wexler Firm
                                        One North LaSalle Street, Suite 2000
                                        Chicago, IL  60602
                                        Telephone: (312) 346-2222
                                        Facsimile: (312) 346-0022
                                        **MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL "PROPER ANSWERS" TO BMS' CONTENTION INTERROGATORIES** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on July 15, 2004, a copy to Verilaw Technologies for Posting and notification to all parties

By    **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

- 9 -

1534.16 0076 MTN.DOC