## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) |
| | ) |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) ) ) |
| | ) |

MDL No. 1456

CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris

Chief Magistrate Judge Marianne B. Bowler

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
## TO COMPEL BMS TO ANSWER INTERROGATORIES

Plaintiffs served six interrogatories on the BMS Group.  These interrogatories, in part, sought information as to the financial data readily accessible by BMS as to each drug at issue. Rather than answer, BMS objected on the grounds that the information called for compilation of information that is of "public record" and claimed the information "can be found in documents previously provided."  Not only are BMS' pricing, average sales price, volume of sales and similar data not part of the public record but BMS' response, which is in effect directing plaintiffs to sort through the millions of pages it is producing, is completely improper under Fed. R. Civ. P. 33(d).

## I.      STATEMENT OF FACTS

The BMS Group has 17 drugs at issue in this litigation and perhaps over a 100 when all the NDC codes are counted.  Among of the key metrics that will help define and clarify this litigation with respect to each of these drugs is the following:

Reported AWP By Drug For Each Year

Average Sales Price Each Year

Number of Units Sold For Each Drug

These metrics will establish the "spread" for each drug.  Volume information is then essential to calculating damages.  To obtain this information, plaintiffs propounded Interrogatory No. 1.[1]  BMS in essence refused to answer and/or provided meaningless answers.

Interrogatory No. 1 was in effect served twice.  Once prior to CMO No. 1 which expanded the number of drugs subject to discovery, and once after.  The interrogatory and BMS' answer to each set are essentially the same.

INTERROGATORY NO. 1:

For the period beginning January 1, 1998, and for each subsequent calendar quarter, and with respect to each of the AWPIDs, identify the following information.

a.      the total volume of sales, indicating both the number of units and net revenue;

b.      the "average wholesale price" (AWP), as reported in Medical Economics *Red Book, First Data Bank* and/or *MediSpan*, and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of AWP, whether higher or lower, (ii) at more than five percent above AWP, and (iii) at more than five percent below AWP;

c.      the "average manufacturer price" ("AMP"), as reported to the Secretary of Health and Human Services, pursuant to the requirements of Social Security Act ("SSA") § 1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at AMP and up to and including 10% above AMP, and less than or equal to 10% below AMP (broken out separately), (ii) at greater than 10% above AMP but less than or equal to 20% above AMP, and at greater than 10% below AMP but less than or equal to 20% below AMP (broken or separately), (iii) at greater than 20% above AMP but less than or equal to 30% above AMP, and at greater than 20% below AMP but less than or equal to 30% below AMP (broken out separately, (iv) at greater than 3% above AMP but less than or equal to 40% above AMP, and at greater than 30% below AMP but less than or equal to 50% above AMP, and at greater than 40% below AMP but less than or equal to 50% below AMP (broken out separately);

d.      the "wholesale acquisition cost" ("WAC"), as reported by Medical Economics *Red Book, First Data Bank* and/or *MediSpan* or any other such entity that gathers and publishes "wholesale acquisition costs," and the volume of sales (in both

---

[1] The interrogatory and BMS' answers are attached as Exhibit A to the Declaration of Steve W. Berman.

units and net revenue) occurring (i) at or within five percent of
WAC, whether higher or lower, (ii) at more than five percent
above WAC, and (iii) at more than five percent below WAC;

     e.    the "best price," as reported to the Secretary of
Health and Human Services, pursuant to the requirements of SSA
§ 1927(b)(3), and the volume of sales (in both units and net
revenue) occurring (i) at or within five percent of the best price,
whether higher or lower, (ii) at more than five percent above best
price, and (iii) at more than five percent below best price (if
applicable);

     f.    the total volume of sales, in both the number of
units and net revenue, exempted from the calculation of the
Medicaid best price as "merely nominal in amount," pursuant to
the requirements of SSA § 1927(c)(1)(C)(ii)(III);

     g.    the average price of the "nominal" sales, referenced
in subsection (f), above; and

     h.    the total volume of the subject drug, in units,
distributed as free goods.

**ANSWER:**

BMS objects to Interrogatory No. 1 on the grounds that it is vague,
overly broad, unduly burdensome, and calls for the compilation of
information that is a matter of public record, is equally available to
Plaintiffs, or is already in their possession, custody or control.
BMS further objects on the ground that information responsive to
this interrogatory can be found in documents it has previously
produced and the documents it is producing pursuant to its
agreement with Plaintiffs.

## II.    BMS' ANSWER IS IMPROPER

BMS' answer is improper on a number of grounds.

Interrogatory No. 1(a) seeks information regarding the number of units sold for each

AWPID. That is not information in the "public record" as BMS asserts. So BMS must be

claiming that information can be found in documents it has previously produced. However,

BMS has produced hundreds of thousands, if not millions, of pages. To simply refer plaintiffs to

its material does not satisfy its obligations. The same holds true for virtually each of the

subparts.

A.    **BMS Fails to Comply with Rule 33(d)**

Rule 33(d) provides,

> [w]here the answer to an interrogatory may be derived or
> ascertained from the business records of the party upon whom the
> interrogatory has been served or from an examination, audit or
> inspection of such business records, including a compilation,
> abstract or summary thereof, and **the burden of deriving or
> ascertaining the answer is substantially the same for the party
> serving the interrogatory as for the party served**, it is a
> sufficient answer to such interrogatory to specify the records from
> which the answer may be derived or ascertained and to afford to
> the party serving the interrogatory reasonable opportunity to
> examine, audit or inspect such records and to make copies,
> compilations, abstracts or summaries.  A **specification shall be in
> sufficient detail to permit the interrogating party to locate and
> to identify, as readily as can the party served, the records from
> which the answer may be ascertained**.

If the responding party opts to produce business records in lieu of answering an
interrogatory, the responding party must specify the records in sufficient detail for the
propounding party to locate and identify the records that provide the answer to the interrogatory.
These records must be equally accessible to the propounding party as to the responding party.
Further, specificity as to the location of relevant information within the record is required.  The
responding party cannot direct the propounding party to a mass of undifferentiated records.
*Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir 1983)
(reference to "partnership books of account, banking accounts, records, computer printouts,
ledgers" was not proper use of option to produce business records).  *Colorado ex rel. Woodard v.
Schmidt-Tiago Constr. Co.*, 108 F.R.D. 731, 736 (D. Colo. 1985) (responding party must list the
document indicating the page or paragraphs that are responsive to the interrogatory).  Directing
plaintiffs to a mass of documents is exactly what BMS has done in plain violation of the Rule.

B.    **Rule 33(d) Does Not Apply Because the Burden Must Be Equal And It Is Not**

The use of the option of specifying from where documents can be obtained is limited to
situations in which the burden of deriving the answer is substantially the same for the
propounding and responding party.  In determining whether the burden of research is balanced

- 4 -

between the parties, the trial court may make factual findings by considering such matters as costs of research, nature of the records, and the familiarity of the responding party with its documents. *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir. 1979) (the party served is more familiar with their own books and records and the burden would be much greater on the party serving the interrogatory). *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304 (D.P.R. 1985) (if it is not feasible for the propounding party to do the research then the party most familiar with its records must do the research). *In Re Fine Paper Antitrust Litig.*, 685 F.2d 810, 823 (10th Cir. 1982) (upholding trial court's determination that propounding party would have had relatively higher burden if required to sift through documents).

Here there is no question BMS is in a superior position to answer the interrogatory and should do so. BMS cannot run its business without access to information on the number of units sold, the prices they are sold at and the discounts and rebates offered on each drug. As a matter of common sense, BMS has accountants and business managers who are in a far superior position than plaintiffs to answer this interrogatory. The burden is plainly not equal and BMS should be ordered to answer the interrogatory. At a minimum, for each drug and NDC that is part of this case, BMS should be required to answer each subpart by reference to the Bates number from where the answer can be derived.

### III.   CONCLUSION

Plaintiffs' motion to compel should be granted.

DATED:  July 15, 2004                     By____/s/ Steve W. Berman_____
                                                  Thomas M. Sobol (BBO#471770)
                                                  Edward Notargiacomo (BBO#567636)
                                                  Hagens Berman LLP
                                                  One Main Street, 4th Floor
                                                  Cambridge, MA  02142
                                                  Telephone: (617) 482-3700
                                                  Facsimile: (617) 482-3003
                                                  **LIAISON COUNSEL**

1534.16 0079 MTN.DOC

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Samuel Heins
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CHAIRS OF LEAD COUNSEL
COMMITTEE**

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

1534.16 0079 MTN.DOC

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL BMS TO ANSWER INTERROGATORIES** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on July 15, 2004, a copy to Verilaw Technologies for Posting and notification to all parties

By**       /s/ Steve W. Berman      **
Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

- 7 -

1534.16 0079 MTN.DOC