UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) | MDL No. 1456 Civil Action No. 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) ) ) | Judge Patti B. Saris REDACTED VERSION |

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO ENFORCE THE SUBPOENA FOR, AND
COMPEL, THE DEPOSITION OF PATRICIA KAY MORGAN

Defendants Novartis Pharmaceuticals Corporation ("Novartis") and Bristol-Myers Squibb Company ("BMS"), on behalf of Defendants in the captioned actions, submit this Memorandum In Support Of Defendants' Motion To Enforce The Subpoena For, And To Compel, The Deposition Of Patricia Kay Morgan, and to compel her to appear promptly to give testimony by deposition pursuant to the March 17, 2004 Subpoena to her.[1]

PRELIMINARY STATEMENT

Patricia Kay Morgan is an employee of First DataBank ("FDB"), a publisher of pharmaceutical prices. Central to plaintiffs' claim in this case that each of the Defendants – manufacturers of prescription drugs – has "inflated" the published reference prices (known as "AWPs") against which certain third party payors negotiate reimbursement rates for such drugs is the allegation that each Defendant controls the prices listed as AWPs by the publishers. In addition, the principal evidence alleged in support of the supposed conspiracy among Together

---

[1]  A true and correct copy of the Subpoena is annexed as Exhibit A to the Declaration of Saul P. Morgenstern, dated July 29, 2004 ("Morgenstern Dec."). Although Fed. R. Civ. P. 45 ordinarily requires a witness wishing to resist a subpoena to move to quash the subpoena, Defendants have agreed to accommodate Ms. Morgan's counsel's schedule by proceeding by motion to compel, and Ms. Morgan has agreed to submit to the jurisdiction of this Court (rather than proceed in the Northern District of California, where the Subpoena was issued) for the purpose of determining her obligation to comply with the Subpoena. See Robert J. Hawley Letter to Steven M. Edwards and Saul P. Morgenstern, July 16, 2004, Morgenstern Dec., Ex. B. This arrangement does not, however, affect Ms. Morgan's burden of proof on the motion. See pp. 8-10, below.

30920961.doc

Rx LLC and its member companies (collectively, the "Together Rx Defendants"),[2] is that in 2002 the AWPs published by FDB for these Defendants' products increased in unison. In response to Defendants' showing that these increases were solely the result of action by FDB in which Defendants played no part, the Court (Saris, J.) on March 8, 2004 opined that the first order of business should be a deposition of FDB. *See* Transcript of Hearing (March 8, 2004) at 22, Morgenstern Dec., Ex. C ("I imagine a deposition of that company would be a starting point."). Defendants took the Court's advice and served the Subpoena upon Ms. Morgan the following week.

Ms. Morgan and FDB objected to the Subpoena, and to a companion subpoena *duces tecum* to FDB which is not at issue here. Counsel for Defendants, Ms. Morgan and FDB held several "meet and confer" conference calls in an effort to resolve their differences over the subpoenas. Notwithstanding Defendants' efforts to accommodate Ms. Morgan, she has now – after four months – refused to appear *under any circumstances*. She does not claim to lack knowledge of the facts – indeed, she appears to be a critical witness in the case; rather, the only reason given for her refusal to appear has been offered by FDB, which claims that if it permits her to testify it will be unable to conduct its business because it is likely that she, or others at FDB, will be asked to testify again in one or more other cases.

While the convenience of a non-party witness is to be considered in determining the timing and scope of a deposition, it is not a basis on which a central witness to the events at issue in a case may simply refuse to testify under any circumstances. Yet that is precisely what Ms. Morgan – at the behest of FDB – has done here. The Court recognized that her deposition is

---

[2] The "Together Rx Defendants" are Together Rx LLC and its member companies, Abbott Laboratories; AstraZeneca Pharmaceuticals LP; Aventis Pharmaceuticals Inc.; Bristol-Myers Squibb Company; SmithKline Beecham Corporation d/b/a GlaxoSmithKline; Janssen Pharmaceutical Products, L.P. and McNeil-OPC, Inc. (both affiliates of Johnson & Johnson); and Novartis Pharmaceuticals Corporation. The AMCC alleges that TAP Pharmaceutical Products, Inc. is a member of Together Rx, but that allegation is wrong.

the first step toward the resolution of the principal factual issue underlying the claims against the Together Rx Defendants. Her testimony is also relevant to the role of the publications generally. Furthermore, as a multi-district litigation ("MDL") court, this Court is particularly well-suited to coordinate discovery of Ms. Morgan and FDB in the various pending Average Wholesale Price cases. Given the accelerated pretrial schedule in this case, there is no reason why the Court should not order Ms. Morgan to appear and testify promptly.

## STATEMENT OF FACTS

### A. Background

The Defendants in these consolidated actions manufacture and market prescription drugs. *See* Corrected Amended Consolidated Class Action Complaint With Amgen Amendments (Verilaw, July 16, 2004) ("AMCC") ¶¶ 39-130. Plaintiffs, entities or persons who pay for such drugs, allege that Defendants have each "inflated" the AWPs against which certain third party payors negotiate reimbursement rates for such drugs. *Id.* ¶¶ 1-7. FDB is one of the three major publishers of AWPs and undiscounted prices to wholesalers (variously referred to as Wholesale Acquisition Cost ("WAC"), "ex-factory cost", Wholesale List Price ("WLP") or similar formulations). Morgenstern Dec., ¶ 5. Plaintiffs allege that Defendants "control the prices listed as the AWPs" by the publishers. AMCC ¶ 136.

## REDACTED PURSUANT TO PROTECTIVE ORDER

3

**REDACTED PURSUANT TO PROTECTIVE ORDER**

# REDACTED PURSUANT TO PROTECTIVE ORDER

For obvious reasons, Defendants would like to depose Ms. Morgan so that her testimony will be admissible in this case, and they would like Ms. Morgan to clarify and elaborate upon certain aspects of that testimony.

In an entirely separate claim, plaintiffs allege that the Together Rx Defendants – participants in the Together Card program, which provides prescription drugs at deep discounts to needy patients – conspired in 2002 to "stabilize" the AWPs of their products at 1.25 times WAC and that plaintiffs were somehow harmed as a result. AMCC ¶¶ 542-45 (the "Together Rx Claims"). The Together Rx Claims rest entirely on the fact that it appears that, over several months during 2002, FDB reported price changes of Defendants' products and, with each price change, accurately reported the new WAC price (set by each Defendant)[3] but assigned to each product an AWP of 1.25 times the new WAC, even where FDB historically had assigned a 1.2 multiple or the individual company itself listed a suggested or reference AWP of 1.2 times its stated WAC. *See id.* ¶¶ 590-91. Thus, how FDB's process for determining and publishing prices was applied by Ms. Morgan and FDB in 2002 is particularly critical to the Together Rx claims. Although Ms. Morgan's testimony in the Texas proceeding demonstrates Ms. Morgan's obvious knowledge of FDB's processes, it does not specifically address the circumstances

---

[3] Plaintiffs do not - and could not - allege that the Together Rx Defendants or FDB conspired to set their individual WAC prices at any particular level.

surrounding FDB's reporting in 2002 of AWPs of the Together Rx Defendants' products that differ substantially from the AWPs reported by many of those Defendants during that period.[4] To Defendants' knowledge, Ms. Morgan has never testified about that.

Defendants moved to dismiss the Together Rx claims, arguing that the alleged conspiracy would, as a practical matter, earn no extra money for the Together Rx Defendants and, in at least some instances, cost them money.[5] *See* Together Rx Defendants' Motion to Dismiss Counts V, VI, VII, VIII and X of the Amended Complaint, August 1, 2003. While that motion was pending, Roberta Starks and Kimberly Hoover, Together Rx program participants, moved to intervene.[6] In their opposition to the motion to intervene, the Together Rx Defendants argued that the Proposed Intervenors' motion was futile on the ground that they could not

> include any factual allegations supporting the conclusory assertion of a conspiracy, because the alleged increase in the mark-up taken between WAC and AWP about which they complain was clearly the result of actions taken by First DataBank, an independent reporting agency, and *not by the Together Rx Defendants*.

*See* The Together Rx Defendants' Opposition to Motion to Intervene in the *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL NO. 1456 at 3. In support, the Together Rx Defendants submitted affidavits demonstrating that "any published changes in the WAC/AWP mark-up were made by [FDB] without direction or input from, and in many instance contrary to information provided to [FDB] by, each of the Together Rx member companies." *Id.* at 7-8; Affidavit of John Freeberry; Affidavit of John Cervione; Affidavit of Denise M. Kaszuba;

---

[4] As Ms. Morgan's testimony reflects, some Defendants did not report AWPs at all.

[5] This is because where the companies pay rebates to pharmacists or others (such as state entities) based on AWP, a higher AWP means a higher rebate, while the WAC price - which is what the Defendant gets paid - stays constant.

[6] In their motion to dismiss, the Together Rx Defendants had pointed out that no plaintiff was a Together Rx member, and, therefore, that no plaintiff could have overpaid for drugs provided through the program in any event. Roberta Starks' and Kimberly Hoover's motion to intervene was intended to cure that defect. The Together Rx Defendants' Motion to Dismiss was denied on February 26, 2004. The motion to intervene was ultimately granted on March 8, 2004.

Affidavit of David A. Moules; Affidavit of Wiliam Parks; Affidavit of Michael Conley. Thus, FDB's actions became a central issue in the Together Rx claims.

After seeing such evidence, the Court opined that the first order of business should be a deposition of FDB. *See* Transcript of Hearing (March 8, 2004) at 22, Morgenstern Dec., Ex. C ("I imagine a deposition of that company would be a starting point."). Indeed, Ms. Morgan's testimony is likely to be essential to the resolution of the Together Rx claims. Furthermore, how FDB determines the AWPs it publishes in its database will also be an important factual issue with respect to the other claims in these consolidated actions.

### B. Ms. Morgan's Refusal To Appear For Deposition

Defendants served the Subpoena upon Ms. Morgan on March 17, 2004. *See* Morgenstern Dec., Ex. A. Ms. Morgan was chosen because all of the available information suggests that she is uniquely suitable to explain what happened in 2002, as she was the person responsible for the very actions at issue. Neither she nor FDB have disputed that. Nonetheless, Ms. Morgan's and FDB's first response to the Subpoena was a blanket refusal to appear. *See* John P. Kern Letter to Saul P. Morgenstern (March 26, 2004) at 2, Morgenstern Dec., Ex. E. Promptly after receiving that response, Defendants' counsel initiated a "meet and confer" conference call on April 5, 2004 with Ms. Morgan's counsel, who explained that FDB was still producing documents in response to document subpoenas in this case. They expressed the view that any deposition should await completion of that production so that there would be no basis for any party to insist on another deposition based on later-produced documents. Based on their representation that the production would be complete by sometime in June, Defendants agreed to wait. Morgenstern Dec., ¶ 8.

In subsequent conference calls on April 14 and 28, 2004, FDB's counsel reported that FDB had received additional subpoenas from plaintiffs and that they were having discussions with plaintiffs regarding these subpoenas and the scope of any document production or potential deposition. *Id.*, ¶ 9. After FDB completed its production, in a conference call on July 12, 2004, FDB's counsel informed Defendants that Ms. Morgan would not testify unless ordered by the Court to do so. *Id.*, ¶ 10.

Thus, notwithstanding Defendants' efforts to accommodate Ms. Morgan and FDB by agreeing to delay the deposition until FDB could complete its document production and by offering to take the deposition at any time and location convenient to Ms. Morgan, she has now – after four months – refused to appear *under any circumstances*. She does not claim to lack knowledge of the facts Defendants need to develop; rather, she rests her refusal to appear solely on alleged burden upon her employer, FDB.

## ARGUMENT

### FDB'S CONCERN REGARDING POTENTIAL FUTURE DEPOSITIONS CANNOT JUSTIFY MS. MORGAN'S REFUSAL TO APPEAR FOR DEPOSITION UNDER ANY CIRCUMSTANCES

Ms. Morgan's refusal to appear for deposition is based on alleged inconvenience, but not her own. In fact, she has never asserted that she would be personally inconvenienced by appearing to testify for a day. Rather, she argues that her employer, FDB, will be inconvenienced. Thus, her only objection to the Subpoena appears to be that it "subjects a person to undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A)(iv).[7] As shown below, the alleged

---

[7] Although Defendants have agreed to proceed by motion to compel as an accommodation to Ms. Morgan's and FDB's counsel's schedules, Ms. Morgan's burden is to demonstrate why the Subpoena should be quashed pursuant to Fed. R. Civ. P. 45(c)(3)(A) or (B). *See Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425, n. 6 (1st Cir. 1961) (rejecting as "not relevant" non-party's argument that party seeking deposition was required to show "good cause" under Fed. R. Civ. P. 34).

8

inconvenience of complying with Defendants' Subpoena does not constitute undue burden, especially in light of the importance of Ms. Morgan's knowledge to this case.

### A. FDB's Alleged Inconvenience Does Not Satisfy The "Undue Burden" Requirement of Rule 45(c)(3)(A)(iv)

"[T]here is a particularly heavy burden upon a deponent to make a substantial showing in support of a motion to quash as contrasted to some more limited protection." *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961). "Inconvenience alone will not justify an order quashing the subpoenas. . . . 'A reasonable inconvenience must be borne to further the goals of discovery -- the making available to litigants all relevant and available information.'" *Croom v. Western Conn. State Univ.*, 218 F.R.D. 15, 17 (D. Conn. 2002) (internal citation omitted) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 243 U.S. App. D.C. 19, 751 F.2d 395, 407 (D.C. Cir. 1984)); *see also In re Ismail Yassai*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998) ("The burden is a heavy one. . . . Movant must meet the burden 'of establishing that compliance with the subpoena would be unreasonable and oppressive.'") (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tx. 1988) (internal quotations omitted)) (internal citations omitted); *Barnes Found. v. Township of Lower Merion*, No. 96-372, 1997 U.S. Dist. LEXIS 4444 (E.D. Pa. April 7, 1997) (court did not quash subpoena where third party witness' claim that she knew nothing about litigation did not sustain her "heavy burden" of establishing undue burden where her testimony was relevant).

In *Horizons Titanium*, the Court issued subpoenas for documents and testimony to Norton and its employee, in aid of Horizon's mandamus proceeding in the District of Columbia against the Commissioner of Patents and Secretary of Commerce. 290 F.2d at 422. Norton and its employee objected that the information sought constituted trade secrets, research and inventions and that they did not possess any information relevant to the underlying proceedings.

9

*Id.* This Court quashed the subpoenas, and Horizons appealed. *Id.* The First Circuit vacated, holding that, while "it is burdensome to give testimony and furnish documents relating to private or business matters, and the more so if the information redounds to the advantage of a legal or commercial opponent . . . this is not 'oppression' within the meaning of the rules." *Id.* at 426.

Ms. Morgan cannot claim that she will suffer undue burden by appearing for a single day to give testimony about how she and FDB determine the AWPs that FDB publishes in general, and how they determined them specifically in 2002. Moreover, FDB's speculative assertion that her appearance will somehow lead to it being unable to conduct its business hardly sustains the "heavy" burden Ms. Morgan bears in attempting to quash this Subpoena, especially in light of the fact that this Court – as the MDL Court – is uniquely capable of coordinating discovery of FDB in order to minimize any burden associated with discovery arising out of its prominent role as a publisher of pharmaceutical pricing. *See* MANUAL FOR COMPLEX LITIGATION (THIRD) §§21.455 (coordination with related federal litigation) and 31.31 (coordination with related state litigation). Her objections should be rejected and she should be ordered to appear forthwith to testify.

### B. Ms. Morgan Is The Best, And Likely The Only, <u>Source of The Factual Information The Court Wants</u>

FDB's alleged inconvenience also fails to constitute "undue burden" under Rule 45(c)(3)(A)(iv) in light of the demonstrable need for the evidence and the fact that Ms. Morgan is the best – and perhaps the only – witness who can provide it, as shown above.[8] *See Amicus Comms. v. Hewlett-Packard Co., Inc.*, No. 99-0284, 1999 U.S. Dist. LEXIS 20901 (D.D.C. Dec. 3, 1999); *Stacey v. Caterpillar, Inc.*, No. 93-241, 1995 U.S. Dist. LEXIS 16702 (E.D. Ky. Aug. 24, 1995). In *Amicus Comms.*, a non-party co-counsel for the plaintiff moved to quash a subpoena directed at him, arguing that the subpoena sought privileged communications without a showing of need. 1999 U.S. Dist. LEXIS 20901. In support of its motion to compel, the defendant showed that the co-counsel was "'a percipient witness, in some instances the sole percipient witness, to non-privileged pre-litigation facts and communications that are highly relevant' to the pending action." *Id.* at *2. The Court denied the motion to quash and granted the motion to compel "for the reasons offered by defendant." *Id.* at *5. The Court further noted that "the discovery sought by defendant from non-party Cahn is relevant, non-privileged and *not obtainable from other sources*." *Id.* at **8-9 (emphasis added).

In *Stacey*, the defendant subpoenaed for a deposition the individual in charge of the investigation of the car accident at issue, who was also present at the vehicle's inspection and

---

[8] As noted above, neither Ms. Morgan nor FDB has disputed that she is the right person to provide the information needed regarding the events of 2002. To the contrary, FDB has confirmed Ms. Morgan's knowledge by arguing, in discussions about the Subpoena, that Defendants should simply rely on her prior testimony in *The State of Texas ex. rel. Ven-A-Care of the Florida Keys, Inc.* (*see* pp. 3-5, above). That suggestion is not practical because the testimony does not explain FDB's process completely or in detail, and does not specifically answer the question posed by the Court in connection with the Together Rx claim – how FDB decided in 2002 to publish AWPs that differ significantly from the reference or suggested AWPs provided by many of the Together Rx Defendants. Nor would that deposition be admissible in this case unless plaintiffs stipulate to it – although that deposition can certainly be used to make her deposition in this case more efficient. *See* MANUAL FOR COMPLEX LITIGATION (THIRD) §21.455, *Coordination with Related Litigation* ("In other situations, such as those involving non-parties . . . a new deposition may be necessary but (with advance notice) the answers given at the earlier deposition may be adopted as the current testimony of the witness, subject to supplementation. . . .").

testing. 1995 U.S. Dist. LEXIS 16702. The inspector moved to quash the subpoena on the ground that the defendant was merely seeking free expert testimony and the testimony of one of several people hearing statements made by the plaintiff's expert. *Id.* at **4-5. The defendant contended that, because the truck was sold for scrap and had never been available for defendant's examination, the inspector's testimony was "critical" to its case and the evidence could not be obtained by other means. *Id.* The Court held that "fairness demands that [the defendant] be allowed to question [the inspector] to obtain important information not revealed in the agency's investigative report," and that "[c]learly, the information [the defendant] seeks by way of [the inspector's] deposition is highly 'relevant to the subject matter involved in the pending action.'" *Id.* at **8-9 (citation omitted).

Ms. Morgan's testimony in the Texas proceeding cited above demonstrates that she is uniquely qualified to provide testimony regarding FDB's role in publishing the AWPs at issue in this case. Furthermore, the affidavits submitted in conjunction with the Together Rx plaintiffs' motion to intervene demonstrate that she is the person who can specifically address the circumstances surrounding the increase in the mark-up factor that FDB unilaterally instituted in 2002. There is no reasonable substitute for her testimony.

To use the words of the *Stacey* court, Ms. Morgan's knowledge is undeniably "highly relevant to the subject matter involved in the pending action." In both *Amicus Comms.* and *Stacey*, witnesses who, like Ms. Morgan, were the best sources of information relevant to the case, offered reasons that were at least superficially legitimate bases for objection. And, in each case, the obvious need for their information overrode those objections. Here, there can be no doubt about the need for Ms. Morgan's testimony – the Court has itself noted that need. Thus, even if FDB's speculative argument rose to the level of burden that could support an objection,

the fact that Ms. Morgan is the best -- and perhaps only -- source of the needed information would override that objection.[9]

Nor may the fact that she has already testified in another matter to other facts – even related ones – preclude the discovery sought by Defendants' Subpoena. *See Seth Co. Inc. v. United States of America (Commissioner of the Internal Revenue Service)*, Nos. 3:01cv1584, 3:02cv1049, 2003 U.S. Dist. LEXIS 7982 (D. Conn. March 3, 2003) (plaintiff's motion for protective order and to quash subpoena *duces tecum* denied where subpoenaed witnesses had previously testified in related litigation but did not testify or did not do so in sufficient depth regarding specific areas identified by defendant in current litigation). Defendants are entitled to elicit those facts for purposes of this case and to seek elaboration and clarification of that testimony. In short, Ms. Morgan's testimony is essential to the claims and defenses in this case, as the Court has recognized, and her effort to avoid giving testimony should be rejected.

---

[9] Given the importance of Ms. Morgan's unique knowledge and the nature of the inconvenience articulated by FDB, at most FDB is entitled to be compensated for any of Ms. Morgan's time away from work to testify. *See Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329 (N.D. Cal. 1995) (court did not quash subpoenas of non-party witnesses, but instead held that non-party was entitled to compensation for its employees' time in producing documents and in sitting for deposition).

## CONCLUSION

"'[T]he public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." *United States v. Bryan*, 339 U.S. 323, 331 (1949). No person is exempt from the subpoena power of the Court. *See United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807) (enforcing subpoena directed at President Thomas Jefferson). Ms. Morgan and her employer are no exception. For the foregoing reasons, Defendants' motion to compel the deposition should be granted and Ms. Morgan ordered to appear and give testimony pursuant to the Subpoena forthwith.

Dated: Boston, Massachusetts
July 30, 2004

Respectfully submitted,

/s/ Thomas E. Dwyer
Thomas E. Dwyer Jr. (BBO # 139660)
DWYER & COLLORA, LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 371-1000

Steven M. Edwards (*admitted pro hac vice*)
Lyndon M. Tretter (*admitted pro hac vice*)
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Defendant
  Bristol-Myers Squibb Company
  and on behalf of all Defendants*

/s/ Karen F. Green
Karen F. Green (BBO #209050)
Benjamin M. Stern (BBO #646778)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
karen.green@wilmerhale.com

Jane W. Parver (*admitted pro hac vice*)
Saul P. Morgenstern (*admitted pro hac vice*)
Rachel H. Yarkon (*admitted pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Attorneys for Defendant
  Novartis Pharmaceuticals Corporation
  and on behalf of all Defendants*

## CERTIFICATE OF SERVICE

I, Benjamin M. Stern, on July 30, 2004, caused to be served the foregoing document by hand upon Robert J. Hawley, Esq., Office of General Counsel, The Hearst Corporation, 959 Eighth Avenue, New York, New York 10019, counsel for Patricia Kay Morgan and First DataBank, Inc., and by Verilaw upon all counsel of record.

/s/ Benjamin M. Stern
Benjamin M. Stern