UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL No. 1456 |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) Civil Action No. 01-CV-12257 PBS ) ) Judge Patti B. Saris ) Chief Magistrate Judge Marianne B. Bowler |

## DECLARATION OF ZOLTAN SZABO IN SUPPORT OF RESPONSE OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY TO PLAINTIFFS' MOTION TO COMPEL BMS TO ANSWER INTERROGATORIES

Zoltan Szabo, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the Senior Director of Pricing and Reimbursement for the U.S. Pharmaceuticals Group of Bristol-Myers Squibb Company ("BMS"). I, and the BMS employees who report to me have responsibility for maintaining data on the company's contracts with customers and rebates to managed care and institutional entities.

2. The Amended Master Consolidated Complaint ("AMCC") identifies 20 drugs manufactured by BMS and its former subsidiary Apothecon, Inc. Those 20 drugs are manufactured in different dosage forms, strengths and sizes, each of which under federal regulations has its own National Drug Code or "NDC." There are approximately 150 BMS and Apothecon NDCs at issue in this litigation.

3. I understand that plaintiffs in this case have issued Interrogatories to BMS that seek, for each of these NDCs, calculations of (i) "net revenue", (ii) percentile of sales by net revenue within various tranches of different price points such as "AWP", "AMP", "WAC" and "Best Price" and (iii) number of units within each percentile.

4.	I do not know what plaintiffs mean by "net revenue." I can state that BMS does not have any automatic way of matching its gross revenues from sales to wholesalers relating to a particular NDC with discounts and rebates provided to individual customers and pharmacy benefit managers for that same NDC. Indeed, in many cases, rebate information is not maintained by separate NDC at all. Accomplishing this would be a time consuming task with many manual steps.

5.	BMS maintains the bulk of its records of its drug sales, discounts and rebates in large computer systems. The "SHARP" system tracks BMS' direct sales to wholesalers; the "Prime Vendor" system tracks BMS' contracts with and discounts to particular customers; and the "CARS/IS" system tracks certain rebates to managed care organizations. In addition, BMS keeps manual records on rebates relating to institutional and other customers. These are the only sources that contain price and volume data at the NDC level that plaintiffs have sought. I believe that this information has already been provided to plaintiffs' counsel for the drugs at issue in this case.

6.	These data sources do not include AWPs. AWPs are established and published by publications such as Red Book, MediSpan and First DataBank. They are available to the public.

7.	It would require BMS a year to perform the types of calculations that plaintiffs request in the Interrogatories on 150 NDCs or require the company to excuse numerous employees entirely from their normal duties for months to comply with those demands. The latter option is not really feasible given the company's constant need for work product from these employees to satisfy its regular business and regulatory obligations. Either way, it would cost BMS hundreds of thousands of dollars in employee, computer and expert time. Indeed, on

the only occasion in which BMS has ever produced even remotely similar information, it was specially created in response to a request from the U.S. House of Representatives Energy and Commerce Committee. The effort for the six drugs involved required the labor of effectively five employees working full time for three months.

8. I believe that if plaintiffs were willing to devote the same amount of labor and financial resources that they are asking BMS to devote to the task of responding to their Interrogatories, they could develop the responses themselves. BMS has already informed plaintiffs of how the BMS data is formatted and we are prepared to answer specific questions that they or their experts may have. In sum, I believe that the overall burden to plaintiffs of doing the work themselves is substantially the same as the burden that it would impose upon BMS.

I declare under penalty of perjury that the foregoing is true.

Executed this the <u>28th</u> day of July, 2004 at Plainsboro, New Jersey.

/s/ Zoltan Szabo<br>
Zoltan Szabo

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2004, a true and correct copy of Declaration of Zoltan Szabo in Support of Response of Defendant Bristol-Myers Squibb Company to Plaintiffs' Motion to Compel BMS to Answer Interrogatories was served upon all counsel of record by electronic service pursuant to CMO No. 2, by causing a copy to be sent to Verilaw Technologies for posting and notification.

_____
Hoa T. T. Hoang