**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL No. 1456 ) ) ) CIVIL ACTION: 01-CV-12257 PBS ) |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) Judge Patti B. Saris ) ) ) Chief Mag. Judge Marianne B. Bowler |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM MCKESSON CORPORATION**

**I.   BACKGROUND**

Plaintiffs move to compel the response to a subpoena of third party wholesaler McKesson Corporation ("McKesson") requesting documents pursuant to Fed. Rule Civ. P. 34. The documents were originally subpoenaed on February 16, 2004 (*See* Exhibit A to Declaration of Scott A. George ("George Affidavit")). McKesson, as a pharmaceutical wholesaler maintains contractual relationships with both drug manufacturers and retailers, including PBMs and pharmacies. Two key questions in this litigation concern which entities control average wholesale prices ("AWPs"), the published rates at which Medicare Part B and third party payors generally reimburse providers and other intermediaries, and the method by which those AWPs are derived. Given McKesson's central position in the distribution chain, McKesson's documents will likely demonstrate the actual prices at which manufacturers sold drugs on a wholesale basis, as well as the prices charged to retailers who supplied the drugs to end-users. Indeed, certain industry compendia that publish AWPs contend that the reported values are

established by surveys of pharmaceutical wholesalers. Accordingly, the relevance of McKesson's documents and testimony on pricing issues is indisputable.

Despite the five (5) months that have passed since original service of the initial subpoena, McKesson has failed to produce any documents or to effectively respond to Plaintiffs' counsel's numerous attempts to "meet and confer" pursuant to Local Rule 37.1. The exchanges began on February 16, 2004, when plaintiffs served the original subpoena (the "Subpoena") to which McKesson objected on March 15, 2004 (*See* Exhibit B). The Subpoena was amended on May 5, 2004, only to add additional identified drugs in the appendix (the "Amended Subpoena"). (*See* Exhibit C). Plaintiffs have yet to receive any formal, written response to the Amended Subpoena, other than an objection to the method of service.[1]

McKesson has employed a tactic of delay from the outset of plaintiffs' efforts pursuant to Local Rule 37.1. Throughout June and July, plaintiffs' counsel exchanged communications with McKesson *via* phone and mail in an effort to seek clarification of fundamental matters, such as the absence of written responses to the Amended Subpoena and the identity of McKesson's counsel, as well as the status of document production. (*See* Exhibits D and E for a communications log and correspondence between counsel). Plaintiffs' counsel also attempted to obtain production of documents responsive to the Amended Subpoena. (*See id.*) Throughout, plaintiffs made McKesson aware of their need for timely production, as plaintiffs' briefing on

---

[1] Demonstrating the bad faith of McKesson's delay, McKesson has used its failure to serve written responses to the Amended Subpoena to question service of the Amended Subpoena. However, the Amended Subpoena was served in the same manner as the original Subpoena, to which McKesson drafted and served a written response, which response did not challenge service. (*See* Exhibits D and E). Indeed, whereas McKesson originally supposed that the Amended Subpoena "fell through the cracks," it subsequently defended its continuing failure to respond to the Amended Subpoena by declaring that it had not accepted service. McKesson cannot justify its failure under the Federal Rules of Civil Procedure by unilaterally refuting service.

class certification for the "fast track" defendants is due on September 3, 2004. Despite McKesson's repeated statements that it would immediately produce some of the documents that it agreed were covered by Categories 1, and 3-5 of the Amended Subpoena, not a single document has been produced.

## II.     THE REQUESTS

The documents requested are categorized into five topic areas, all of which are related to the critical role played by McKesson as a pharmaceutical wholesaler in the industry's distribution chain. (See Exhibit A). The categories are as follows:

**Category 1:  Pricing and Pricing-Related**

1. All documents evidencing the prices paid to You for Identified Drugs.
2. All documents evidencing the net transaction cost to Your customers for Your sales of Identified Drugs.
3. All documents sufficient to show the rebates, discounts, chargebacks and other adjustments provided to You by a Defendant, or administered by You on behalf of Defendant, for each of the Identified Drugs.
4. All documents relating to a Defendant's suggested price for any Identified Drug, including but not limited to prices that a Defendant has suggested for Sales that You make to a member of a group purchasing organization.

The Category 1 Requests directly seek documents relating to the price at which McKesson acquired drugs from the manufacturers, which may potentially thereafter be compared to the AWP listed in the industry compendia. The "spread" between these two figures lies at the heart of this litigation, and the information sought by these Requests is relevant to determining these values. Similarly, documents reflecting transaction costs to customers of wholesalers reflect how the manufacturers' gaming of the system makes its way to higher prices for end payors.

McKesson's response to the Category 1 Requests has been to offer merely two years of data, although plaintiffs are entitled to such documents back to 1991, the start of the class period.

Despite its agreement to produce this small range of documents, to date, McKesson has failed to produce a single document in response to this request.

### Category 2:  AWP, Publications and Pricing Surveys

5. All documents concerning AWP, including but not limited to (i) documents related to Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a Defendant concerning AWP; (vi) all communications between you and a Pharmacy Benefit Manager concerning AWP.
6. All documents relating to Your role, or a Defendant's role, in the publication, appearance, or advertisement of the AWP of each Identified Drug in Publications during the Relevant Time Period.
7. All documents concerning any pricing survey conducted by Publication.  This request includes but is not limited to any pricing data that You received or provided to a Publication.
8. All contracts with Publications and all communications with Publications regarding Identified Drugs.

In response to the Requests in Category 2, McKesson has stated that no unique communications exist, and that the only documents in its possession are standard industry bulletins.

### Category 3:  Relationships with Pharmacies and PBMs

9. All contracts between You and the five largest retail pharmacies.  "Five largest retail pharmacies" refers to the five pharmacies that represent Your largest retail pharmacy sales volume over the past three calendar years.
10. All contracts between You and Pharmacy Benefit Managers Caremark, Medco, Express Scripts, and AdvancePCS.

The Category 3 Requests seek relevant information regarding McKesson's relationships with customers down the distribution chain.  As a wholesaler, McKesson contracted directly with manufacturers, as well as pharmacies and PBMs.  The prices at which McKesson purchased drugs from manufacturers, as well as the actual prices at which the drugs were resold to end-

#3716577 (137444.002)                     4

providers, are the key elements in determining whether the reported AWPs reflected actual prices charged to any party in the distribution chain.

While McKesson has agreed to produce documents in response to the Category 3 Requests, not a single document has yet been produced to plaintiffs. Thus, this Court should order McKesson to produce the responsive documents sought by these Requests.

### Category 4: Investigations, Suits and Complaints

11. All documents produced by You, whether voluntarily or involuntary, in any Government Investigation or inquiry related to the use of AWP, Rebates or any other consideration provided to you by a Defendant.
12. All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a Party, regarding the use of AWP, Rebates or any other consideration provided to you by Defendant.
13. All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

The Requests in Category 4 seek documents previously produced in other litigation in which similar claims had been asserted. Because these Requests are limited to documents raising issues in the AMCC, they are, without question, relevant and should be produced. Moreover, as the documents sought have previously been produced in other litigation, any claim by McKesson of undue burden is certainly without merit.

While McKesson has agreed to produce documents in response to the Category 4 Requests, not a single document has yet been produced to plaintiffs. Accordingly, this Court should order McKesson to produce the responsive documents sought by these Requests.

### Category 5: Miscellaneous

14. All current and historical organizational charts for all of Your departments.
15. All documents sufficient to identify Your policy or practice of document retention, destruction, disposal or preservation for each year during the Relevant Time Period.

Finally, the Category 5 Requests seek documents sufficient to verify that McKesson's searches and production constitute the complete universe of documents responsive to all of plaintiffs' Requests.

While McKesson has agreed to produce documents in response to the Category 5 Requests, not a single document has yet been produced to plaintiffs.  Accordingly, this Court should order McKesson to produce the responsive documents sought by these Requests.

Defendant's failure to provide any of the requested documents or otherwise move this matter forward in any substantial way over the last six months requires an Order commanding production.  McKesson's tactics of delay also warrant an award of costs relating to the Motion.  Plaintiffs request an Order compelling production of all responsive documents within 10 days of the date of this motion and request that McKesson pay all costs associated with filing this Motion in the same time period.

### III.   ARGUMENT

McKesson cannot dispute that the discovery sought is within the scope of this litigation, as the scope of discovery under Fed. R. Civ. P. 26(b)(1) is "very broad."  *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001).  The federal rule makes clear that, "information is discoverable if there is any possibility it might be relevant to the subject matter of the motion."  *Id.* at 17, citing *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996).  *See also Schuurman v. The Town of North Reading*, 139 F.R.D. 276 (D. Mass. 1991) (Bowler J.); *Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428 (D. Mass. 1993) (Bowler J.); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984).  This liberal standard is easily satisfied in this matter.  Indeed, McKesson has agreed to produce core documents responsive to each of the Requests, but has continually failed to follow through with its responsibilities to do so.

The discovery requested in plaintiffs' February 16, 2004 Subpoena is relevant to class certification and liability in this matter.  As one of the nation's largest pharmaceutical wholesalers, McKesson stands squarely at the center of how average wholesale prices are determined.  Various publishers of AWP prices have taken the position in this litigation that they arrive at AWPs through wholesaler surveys that purportedly establish the Wholesale Acquisition Cost ("WAC") of drugs.  Whether or not such surveys exist (and counsel for the various wholesalers have indicated they do not) bears directly on the truth of this assertion.  Likewise, the presence of rebates, chargebacks and the like will help demonstrate what wholesalers actually pay for drugs they purchase, information not otherwise readily available to plaintiffs, much less others in the chain of distribution.

Furthermore, as middlemen in the distribution network, McKesson offers insight into the purchase of drugs directly from defendant pharmaceutical companies and the pricing at resale to retail pharmacies and other end-providers.  For purposes of class certification, it is imperative to ascertain at what price McKesson sold these drugs, after taking into account chargebacks, rebates, discounts and other types of credits.  Further, information on rebates, discounts or chargebacks defendants may have paid to McKesson or, through McKesson, to others in the distribution chain, are relevant to determining the extent to which the defendant manufacturers are gaming the system through the use of inflated AWPs.

Wholesalers such as McKesson are a conduit through which the fraudulent average wholesale price scheme is executed.  McKesson's position in the distribution chain allowed it to contract not only with defendants, but also with pharmacies and others down the chain of distribution.  Consequently, its contractual agreements and pricing data are relevant to the prices

at which wholesalers acquired drugs from pharmaceutical manufacturers, and also the degree to which plaintiffs were defrauded by defendants' scheme.

Indeed, due to McKesson's position in the pharmaceutical distribution chain, the inquiry sought through the Subpoenas is not merely relevant, but necessary for a complete understanding of the industry practices employed by the defendants.  Without discovery of McKesson's own awareness of the practices used by defendants (such as correspondence directly relating to AWP) or even its own, passive role in defendants' scheme as the middleman, plaintiffs would be prejudiced in presenting a complete proof of their claims, including establishing the common practices at the core of their class action allegations.

### III.  CONCLUSION

Because the information sought by plaintiffs is narrowly focused and highly relevant to this litigation, and McKesson has deliberately delayed responding to the Subpoenas, plaintiffs' respectfully request that this Court enter an Order:  (1) granting plaintiffs' Motion; (2) ordering McKesson to produce the requested documents within ten (10) days; and (3) granting plaintiffs' costs incurred in connection with the filing of this Motion.

DATED:  August 16, 2004                                  Respectfully submitted,

By   /s/ Thomas M. Sobol_____

Thomas M. Sobol
Edward Notargiacomo
HAGENS BERMAN LLP
One Main Street, 4th Floor
Cambridge, MA 02142

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Samuel Heins
Brian Williams
HEINS MILLS & OLSON, P.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN 55402

Jeff Kodroff
John Macoretta
SPECTOR, ROSEMAN &
KODROFF, P.C.
18181 Market Street, Suite 2500
Philadelphia, PA 19103

**CHAIRS OF LEAD COUNSEL COMMITTEE**

Kenneth A. Wexler
Elizabeth A. Fegan
THE WEXLER FIRM LLP
One North LaSalle
Suite 2000
Chicago, Illinois 60602

Marc H. Edelson
HOFFMAN & EDELSON
45 West Court Street
Doylestown, PA 18901

**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

Michael McShane
ALEXANDER, HAWES & AUDET LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104

Robert E. Piper, Jr.
PIPER & ASSOCIATES
624 Pierre Avenue
Shreveport, LA 71103

**MEMBERS OF EXECUTIVE COMMITEE**

Anthony Bolognese
BOLOGNESE & ASSOCIATES
One Penn Center
1617 JFK Boulevard
Suite 650
Philadelphia, PA 19103

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002

Neal Goldstein
Freedman & Lorry, P.C.
400 Market Street, Suite 900
Philadelphia, PA 19106

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 21700
San Diego, CA 92101

Jonathan D. Karmel
KARMEL & GILDEN
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Philadelphia, PA 19103

Diane M. Nast
RODA & NAST PC
801 Estelle Drive
Lancaster, PA 17601

Henry H. Rossbacher
ROSSBACHER & ASSOCIATES
811 Wilshire Boulevard
Suite 1650
Los Angeles, CA 90017-2666

Jonathan Shub
SHELLER, LUDWIG & BADEY
1528 Walnut Street
3rd Floor
Philadelphia, PA 19102

Ira Neil Richards
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
The Penthouse
226 West Ritten House Square
Philadelphia, PA 19103

Soctt R. Shepherd
SHEPHERD & FINKLEMAN, LLC
117 Gayley Street, Suite 200
Media, PA 19063

Mitchell A. Toups
WELLER, GREEN, TOUPS &
TERRELL L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704

Damon Young
Lance Lee
YOUNG, PICKETT & LEE

                4122 Texas Boulevard
                P.O. Box 1897
                Texarkana, AR/TX 75504

**ADDITIONAL ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I, Edward Notargiacomo, hereby certify that I am one of plaintiffs' attorneys and that, on August 16, 2004, I caused copies of the Memorandum in Support of Plaintiffs' Motion To Compel The Production Of Documents From Mckesson Corporation to be served on all counsel of record by causing same to be posted electronically via Verilaw and further caused a copy to be served upon counsel for McKesson via facsimile and first class mail.

Dated: August 16, 2004                __/s/ Edward Notargiacomo___
                                            Edward Notargiacomo