# EXHIBIT A

# United States District Court

NORTHERN DISTRICT OF CALIFORNIA

E-SERVED 02/16/04 05:39 PM E AWP-MDL No. 1456

In re: Pharmaceutical Industry Average Wholesale Price Litigation

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: MDL No. 1456
Master File No. 01-CV-12257-PBS
Pending in USDC District of Massachusetts
Judge Patti B. Saris

TO: McKesson Corp.
Attn: Ivan Meierson, General Counsel
One Post Street
San Francisco, CA 94104-5296

| I. | YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case. |
|---|---|

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

| II. | YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. |
|---|---|

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

| III. X | YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects): SEE Attached Schedule A |
|---|---|

| PLACE | DATE AND TIME |
|---|---|
| McKesson Corp. at the above address | February 27, 2004, 9:00 a.m. |

| IV. | YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. |
|---|---|

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiffs E Hartweg | 2/16/04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Elizabeth Fegan Hartweg, The Wexler Firm LLP, One North LaSalle Street, Suite 2000, Chicago, Illinois 60602, telephone 312-346-2222

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

E-SERVED 02/16/04 05:39 PM E AWP-MDL No.1456

A 88 (Rev. 11/91) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On a timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend a trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected materials and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specified events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance and production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

A 88 (Rev. 11/91) Subpoena In a Civil Case




SCHEDULE A

I. DEFINITIONS

1. "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings. Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

2. "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.




3. The term "Defendant" refers to the following companies: (i) Amgen Inc.; (ii) AstraZeneca Pharmaceuticals L.P., AstraZeneca US, and Zeneca, Inc. (collectively referred to as "AstraZeneca"); (iii) Aventis Pharmaceuticals, Inc., Aventis Behring L.L.C., Hoechst Marion Roussell, Inc., and Centon L.L.C. (collectively referred to as "Aventis"); (iv) Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., and Apothecon, Inc. (collectively referred to as the "BMS Group"); (v) GlaxoSmithKline, P.L.C., SmithKline Beecham Corporation, and Glaxo Wellcome, Inc. (collectively referred to as the "GSK Group"); (vi) Hoffman-LaRoche, Inc.; (vii) Immunex Corporation; (viii) Johnson & Johnson, Centocor, Inc, Janssen Pharmaceutica Products, L.P., McNeil-PPC, Inc., and Ortho Biotech (collectively referred to as the "Johnson & Johnson Group"); and (ix) Schering-Plough Corporation and Warrick Pharmaceuticals Corporation (collectively referred to as the "Schering-Plough Group").

4. "Plaintiff Funds" refers to (i) the Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund; (ii) Teamsters Health & Welfare Fund of Philadelphia and Vicinity; (iii) Twin Cities Bakery Workers Health and Welfare Fund; (iv) United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund; (v) Philadelphia Federation of Teachers Health and Welfare Fund; or (vi) Man-U Service Contract Trust Fund.

5. "You" or "Your" means McKesson Corp. and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.

6. "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (governmental or private), and any other form of business, governmental or juridical person or legal entity.

7. "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.




8. "Meeting" means any discussion between two or more persons either in person or telephonically.

9. "Communication" and "communications" are used in a comprehensive sense, and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more persons or entities including, but not limited to, writings, documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by computer or otherwise.

10. "Private Payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit plans.

11. "Provider" means any physician or entity that provides health care.

12. "AWP" means average wholesale price.

13. "WAC" means "wholesale acquisition cost" which is the actual selling price that a drug manufacturer charges to a wholesaler, before discounts.

14. "MAC" means maximum allowable charge or maximum allowable cost.

15. "Rebates" include access rebates for the placement of products on a formulary, rebates based upon the sales volumes for drugs, and market share rebates for garnering higher market share than established targets.

16. "Publication" means a publication identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes the *First DataBank*, *Red Book*, *Blue Book*, and *Medispan*.

17. "Government Investigation" refers to any ongoing or closed investigation or inquiry conducted by Congress, a committee or sub-committee of Congress (including but not limited to the Consumer, Energy and/or Ways and Means Committees), the United States Department of Justice, the United States General Accounting Office, the Federal Trade




Commission, the Office of the United States Inspector General, the United States Department of Health and Human Services, or any other federal, state or local governmental entity, and includes but is not limited to instances in which you have been served by such entities with Civil Investigative Demands, subpoenas, document requests or other requests.

18. "Identified Drugs" are the drugs included in Exhibit A hereto and include drugs that You have repackaged or relabeled.

## II. RULES OF CONSTRUCTION

1. All/Each - The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2. And/Or - The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3. The use of the singular form of any word shall include the plural and vice versa.

4. The masculine gender includes the feminine.

## III. INSTRUCTIONS

1. In producing documents and other materials, you must furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2. In producing documents, you must produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original (to the extent this is known).

3. Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to identify any file number, file name, or any other file




identification system utilized by the responding party, as well as the location and custodian of such records. These requests include Plaintiff's request to physically inspect any file drawer, filing cabinet or any other storage device where documents responsive to these requests are maintained at the time of the inspection of such documents.

4. Documents attached to each other should not be separated.

5. If any responsive document was, but is no longer in the possession or subject to your control, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding, and state the date or approximate date of, such disposition.

6. In the event that you object to any document request on the grounds of privilege or work product, a statement shall be provided as to each document which includes:

a. the name of the author of the document;

b. the name of the recipient of the document;

c. the names of the persons to whom copies were sent;

d. the job title of every individual named in (a), (b), and (c) above;

e. the date the document was created, sent, and received;

f. the location of the document;

g. the custodian of the document;

h. a brief description of the nature and subject matter of the document; and

i. a statement of the privilege asserted and each and every fact or basis upon which a privilege is claimed or on which the document is otherwise withheld.

7. Notwithstanding the assertion of any objection to production, if a document contains non-objectionable or non-privileged matter, please produce that document, redacting that portion for which the objection is asserted, provided that the identification requested in paragraphs (h) and (i) above are furnished.




## IV. RELEVANT TIME PERIOD

Unless otherwise stated, these requests call for the production of all documents identified in the requests that were generated and/or maintained during the period January 1, 1991 to the date of production (the "Relevant Time Period"), or refer or relate to the Relevant Time Period.

## V. DOCUMENTS TO BE PRODUCED

*Category 1: Pricing and Pricing-Related*

1. All documents evidencing the prices paid to You for Identified Drugs.

2. All documents evidencing the net transaction cost to Your customers for Your sales of Identified Drugs.

3. All documents sufficient to show the rebates, discounts, chargebacks and other adjustments provided to You by a Defendant, or administered by You on behalf of a Defendant, for each of the Identified Drugs.

4. All documents relating to a Defendant's suggested price for any Identified Drug, including but not limited to prices that a Defendant has suggested for sales that You make to a member of a group purchasing organization.

*Category 2: AWP, Publications and Pricing Surveys*

5. All documents concerning AWP, including but not limited to (i) documents related to Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a Defendant concerning AWP; (vi) all communications between you and a Publisher concerning AWP; and (vii) all communications between you and a Pharmacy Benefit Manager concerning AWP.

6. All documents relating to Your role, or a Defendant's role, in the publication, appearance, or advertisement of the AWP of each Identified Drug in Publications during the Relevant Time Period.




7. All documents concerning any pricing survey conducted by any Publication. This request includes but is not limited to any pricing data that You received or provided to a Publication.

8. All contracts with Publications and all communications with Publications regarding Identified Drugs.

*Category 3: Relationships with Pharmacies and PBMs*

9. All contracts between You and the five largest retail pharmacies. "Five largest retail pharmacies" refers to the five pharmacies that represent Your largest retail pharmacy sales volume over the past three calendar years.

10. All contracts between You and Pharmacy Benefit Managers Caremark, Medco, Express Scripts, and AdvancePCS.

*Category 4: Investigations, Suits and Complaints*

11. All documents produced by You, whether voluntarily or involuntary, in any Government Investigation or inquiry related to the use of AWP, Rebates or any other consideration provided to you by a Defendant.

12. All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party, regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

13. All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

*Category 5: Miscellaneous*

14. All current and historical organizational charts for all of Your departments.

15. All documents sufficient to identify Your policy or practice of document retention, destruction, disposal or preservation for each year during the Relevant Time Period.






# EXHIBIT A

| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| AMGEN | Aranesp | darbepoetin alfa albumi |
| | Neulasta | pegfilgrastim |
| | Neupogen | filgrastim |

| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| ASTRAZENECA | Zoladex | goserelin acetate |

| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| AVENTIS GROUP (Aventis, Pharma, Hoechst & Behring) | Anzemet* | dolasetron mesylate |






| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| BMS GROUP | Blenoxane | bleomycin sulfate |
| | Carboplatin | paraplatin |
| | Cytoxan | cyclopho-sphamide |
| | Etopophos | etoposide phosphate |
| | Taxol | paclitaxel |
| | Vepesid | etoposide |
| | Videx EC | didanosine |
| | | amikacin sulfate |
| | | amphotercin b |






| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| GSK GROUP (GlaxoSmithKline, | Agenerase* | amprenavir |
| SmithKline, Beecham, Glaxo | Combivir* | lamivudine-zidovudine |
| Wellcome) | Epivir* | lamivudine |
| | Kytril | granisetron hcl |
| | Purinethol* | mercaptopurine |
| | Retrovir* | zidovudine |
| | Trizivir* | abacavir sulfate-lamivudine-zidovudine |
| | Ziagen | abacavir sulfate |
| | Zofran* | ondansetron hcl |
| | Zofran ODT | ondansetron |
| | | thioguanine |






| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| HOFFMAN-LA ROCHE | Kytril | granisetron hcl |

| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| IMMUNEX | Novantrone | mitoxane hydrochloride |
| | Thioplex | lyophilized thiotepa |

| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| JOHNSON & JOHNSON GROUP (J&J, Ortho and | Procrit | epoetin alfa |
| Centocor) | Remicade | |

| Manufacturer | Brand Name (if applicable) | Generic Name |
|---|---|---|
| SCHERING-PLOUGH GROUP | Intron-A | interferon alfa-2b |
| (Schering-Plough and Warrick) | Temodar | temozolomide |