## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENTS RELATES TO 01-CV-12257-PBS | Judge Patti B. Saris |
| | Chief Mag. Judge Marianne B. Bowler |

## ASTRAZENECA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF CROSS-MOTION FOR A PROTECTIVE ORDER

AstraZeneca respectfully submits this memorandum of law in opposition to Plaintiffs'

Motion to Compel Against AstraZeneca and in support of AstraZeneca's Cross-Motion for a

Protective Order prohibiting Plaintiffs from requesting any additional Rule 30(b)(6) witnesses

pursuant to the Amended Notice of Rule 30(b)(6) Deposition served on April 2, 2004.

### INTRODUCTION

Once the half-truths and baseless aspersions in Plaintiffs' motion are stripped away, there

can be no dispute that AstraZeneca has complied, and continues to comply, with its obligations

under the Federal Rules of Civil Procedure, the Local Rules and the prior orders of the Court.  In

fact, in response to Plaintiffs' various discovery requests since the initiation of discovery,

AstraZeneca has produced close to 600,000 pages of documents, more than 16 million records of

transactional data, and two Rule 30(b)(6) witnesses for more than twelve hours of testimony on

all twenty of Plaintiffs' requested areas of inquiry.  In reality, Plaintiffs' motion, which seeks

additional Rule 30(b)(6) witnesses and an index of AstraZeneca's production, reflects little more

than Plaintiffs' apparent frustration at their inability to manage the large volume of discovery

that they demanded and are receiving as a result of their overbroad requests. But, having produced in good faith documents and witnesses responsive to Plaintiffs' requests, it is not AstraZeneca's obligation to conduct Plaintiffs' investigation for them – which is exactly the relief that Plaintiffs seek. Accordingly, Plaintiffs' Motion to Compel should be denied.

Moreover, AstraZeneca's Cross-Motion for a Protective Order prohibiting Plaintiffs from requesting any additional witnesses pursuant to the April 2, 2004 Notice should be granted. Plaintiffs' request for additional witnesses on twenty far-ranging areas of inquiry with respect to nearly half a dozen predecessor companies from more than ten years ago is unreasonably broad and unduly burdensome, particularly when Plaintiffs have demanded and received documents from that entire time frame. Accordingly, additional Rule 30(b)(6) depositions pursuant to the April 2, 2004 Notice would be an inappropriate method of further discovery and should be prohibited.

**BACKGROUND**

In light of the many misstatements and omissions in Plaintiffs' Motion to Compel and Memorandum in Support, AstraZeneca provides the following description of the history of the parties' communications on discovery issues.

**A.    Plaintiffs' Amended Notice of Rule 30(b)(6) Deposition**

On April 2, 2004 Plaintiffs served an Amended Notice of Rule 30(b)(6) Deposition (the "Amended Notice"), which purports to seek testimony on 20 wide-ranging topics over more than thirteen years, from the identity of documents and witnesses related to the process of setting prices to the nature of all computer and email systems. (Exhibit 1 to Plaintiffs' Memorandum ("Pl. Mem.").) Specifically, the Amended Notice requests testimony on pricing, rebating, discounting, contracting, profit, electronic data, computer databases, computer systems, email

2

systems, competition, communications and agreements with PBMs, communications with other manufacturers, government investigations, distribution, and document retention policies.  In addition, some of the requests can more accurately be described as contention interrogatories.  For example, Topic 15 asks for any information related to the "contention . . . that the government had knowledge of any pharmaceutical manufacturer's practices and methodologies" for setting the AWP.  Id.  Similarly, Topics 12 and 13 ask for testimony on the nature of documents which "market the Spread" and the identity of documents and witnesses relating to "your efforts to market, promote, or tout the Spread."

The Amended Notice requested a witness by May 17, 2004, 45 days from the date of service.  (Exhibit 1, Pl. Mem.)  In response, AstraZeneca offered two witnesses on May 13, 2004 and May 14, 2004.  (Exhibit A to AstraZeneca Memorandum ("AZ Mem."), Declaration of Kimberley Harris ("Harris Decl.") at ¶¶ 2-3.)  Although Plaintiffs' counsel had specifically requested those dates, he subsequently asked for the depositions to be rescheduled.  (Id. at ¶ 4.)  In an effort to be cooperative, AstraZeneca arranged to have witnesses available one week later, on May 20, 2004 and May 21, 2004.  (Id.)  Plaintiffs chose to proceed only with the first designee on May 20, 2004.  (Id. at ¶ 5.)  The second designee was rescheduled to June 29, 2004.  (Exhibit C to AZ Mem., Letter from Kimberley Harris to Elizabeth Fegan dated May 28, 2004.)[1]

As designees, AstraZeneca provided Plaintiffs with two senior long-term employees who have extensive, authoritative knowledge in the two core areas relating to Plaintiffs' claims,

---

[1] Despite two previous cancellations by Plaintiffs' counsel, Plaintiffs responded to the May 28 letter by asserting that AstraZeneca was in violation of the 45-day requirement of CMO No. 10.  (Exhibit C to AZ Mem., Letter from Elizabeth Fegan to Kimberley Harris dated June 2, 2004.)  After being reminded that any delay in the completion of the AstraZeneca Rule 30(b)(6) deposition was due solely to Plaintiffs' scheduling changes, Exhibit C to AZ Mem., Letter from Kimberley Harris to Elizabeth Fegan dated June 3, 2004, the deposition proceeded as scheduled on June 29, 2004.  Despite this uncontroverted history, plaintiffs again assert in their motion, without foundation, that AstraZeneca "flouted the 45-day compliance requirement in CMO 10."  Pl. Mem. at 4.

pricing and contracting, plus sufficient knowledge on the remaining topics to provide Plaintiffs with the answers to their questions on all twenty areas of inquiry. On May 20, 2004, AstraZeneca presented John Freeberry, its Director of Pricing Strategy, as its designee on the areas of inquiry relating to pricing, specifically those areas of inquiry relating to AWP and WAC. (Exhibit B to AZ Mem., Transcript of John Freeberry ("Freeberry") at 6, 75-78.) Freeberry has been the Pricing Strategy Director for AstraZeneca and certain of its predecessor companies[2] since approximately 1995. (Freeberry at 6-7.) His responsibilities are to recommend strategy and prices for new brands, recommend price increases, and monitor the pricing environment from a competitive perspective. (Freeberry at 8.) Freeberry is the most knowledgeable person regarding all issues relating to how the price is determined for AstraZeneca's products. (Freeberry at 81.) Freeberry was also able to identify every person who worked in the pricing strategy group since 1995. (Freeberry at 10-16.)

AstraZeneca's second designee on all remaining topics in the Amended Notice was Jeffrey Alverson, its Senior Director of Contract Strategy. (Exhibit D to AZ Mem., Transcript of Jeffrey Alverson "Alverson" at 39.) Alverson's individual knowledge dates back to October 1997 when he joined the firm. (Alverson at 16.) He is the most senior person in the Contract Strategy group, both in authority and longevity. (Alverson at 49-50.) Moreover, Alverson testified that he spoke to more than eight other AstraZeneca employees to educate himself on those topics on the Amended Notice for which he did not have personal knowledge. (Alverson at 6-9.) Although Plaintiffs questioned Mr. Alverson on a wide range of topics (including topics

---

[2] AstraZeneca Pharmaceuticals LP, the defendant named in this action, is the result of a merger between Astra AB and Zeneca Group PLC in 1999. The predecessor U.S. Astra entity was Astra Pharmaceuticals, Inc. Astra Pharmaceuticals, Inc. became a successor to two prior U.S. entities in 1998: AstraMerck Inc. and Astra USA. Astra Merck, in turn, was created as a joint venture between Astra AB and Merck in 1994. Similarly, the U.S. Zeneca entity had a series of corporate changes prior to the 1999 merger, and at one point was known as ICI Pharmaceuticals. (http://www.astrazenecaus.com/content/aboutus/history.)

beyond the scope of the Amended Notice) for close to six hours on June 29, 2004, AstraZeneca produced Alverson for a second day of testimony on August 18, 2004, to allow Plaintiffs to complete their questioning with respect to those areas of inquiry on the Amended Notice which they did not reach on the first day.

Despite the qualifications and extensive testimony provided by these witnesses, Plaintiffs assert that AstraZeneca has attempted to "withhold key information," Plaintiff Mem. at 1, and effectively "fail[ed] to appear" for its Rule 30(b)(6) deposition, since the witnesses could not provide information on each one of the twenty topics for each year over the last thirteen years for each one of AstraZeneca's nearly half-dozen predecessor companies, Plaintiffs' Mem. at 3-5.

**B.      Plaintiffs' Omnibus Requests for Production**

On March 31, 2004, Plaintiffs served all Defendants with Plaintiffs' Omnibus Requests for Production and Interrogatories . . . With Respect to Drugs That Were Not Previously Subject to Discovery (the "Omnibus Requests"). (Exhibit 5 to Plaintiffs' Mem.) True to their name, the Omnibus Requests to AstraZeneca include 82 separate requests for documents over a thirteen year period relating to sixteen drugs. Moreover, the Requests are extraordinarily broad, and include requests for: "all company, organizational and policy information in its entirety;" for each drug, "all documents concerning the product market;" data for every sale or transaction involving each drug; "all agreements for sale" of each drug; and all documents concerning "revenue and/or profits" for each drug; and that's just five of the 82 requests.

It is undisputed that AstraZeneca advised Plaintiffs that these requests, including the thirteen year timeframe, were extremely overbroad and tremendously burdensome. (Exhibit 6 to Plaintiffs' Mem.) The correspondence between counsel demonstrate that AstraZeneca: 1)

repeatedly urged Plaintiffs to narrow these requests and/or establish priorities for production; 2) repeatedly advised Plaintiffs that it would be impossible to collect, review and produce the documents within sixty days; 3) yet, committed, in good faith, to begin its production within sixty days and continue rolling productions every three weeks with the goal of substantially completing the production by July 31, 2004.  (Id.)  It is also undisputed that Plaintiffs: 1) refused to limit the time period of their requests to shorter than thirteen years; 2) continually expanded the scope of departments to be searched and documents to be produced; and 3) failed to establish any priorities for production.  (Id.)  This dispute regarding the appropriate scope of the Omnibus Requests continued from April through June 3, 2004.  (Id.; Exhibit E to AZ Mem., Letter from Kimberley Harris to Elizabeth Fegan dated June 3, 2004.)

Nonetheless, and in spite of the fact that CMO No. 10 only requires "undisputed documents" to be produced within sixty days of an initial document request, see CMO No. 10 at ¶II (4), on June 1, 2004 – the sixtieth day – AstraZeneca produced to plaintiffs by overnight courier 40,000 pages of documents and over 16 million electronic records of transactional sales and rebate data.  (Exhibit E to AZ Mem., Letters from Monica Lamb to Elizabeth Fegan dated June 1, 2004.)  Apparently not content to see what arrived in the mail, Plaintiffs' counsel wrote AstraZeneca's counsel an accusatory letter on June 1, asserting once again, without foundation, that AstraZeneca had failed to comply with CMO No. 10.  (Exhibit E to AZ Mem., Letter from Elizabeth Fegan to Scott Wise and Kimberley Harris dated June 1, 2004.)  A second accusatory letter was sent by Plaintiffs on June 10, 2004, asserting that AstraZeneca and several other defendants had produced "worthless or low priority documents," even though Plaintiffs had not yet reviewed AstraZeneca's first production.  (Exhibit E to AZ Mem., Letter from Steve Berman

to various counsel dated June 10, 2004; Response Letter from Scott Wise to Steve Berman dated June 14, 2004.)

Moreover, contrary to Plaintiffs' assertion that AstraZeneca has been withholding "key information" and "dumping completely irrelevant documents" on Plaintiffs, Plaintiffs' Mem. at 1, AstraZeneca's first production on June 1, 2004 included highly confidential transactional sales data for all sixteen drugs subject to the Omnibus Requests for all thirteen years (or the longest available timeframe), documents from the entire time frame for the Pricing Strategy Group, and current contracts and other documents relating to the four major PBMs that are alleged to be participants in the RICO enterprises and civil conspiracies alleged in the AMCC. (Exhibit E to AZ Mem., Letter from Scott Wise to Steve Berman dated June 14, 2004.) Curiously, this first production is nowhere mentioned in Plaintiffs' Motion to Compel.

True to its commitment to produce on a rolling basis every three weeks, AstraZeneca produced almost 20,000 additional pages to Plaintiffs on June 24, 2004 and more than 5000 additional pages, plus six years of pricing data on July 15, 2004. (Exhibit F to AZ Mem., Letter from Monica Lamb to Elizabeth Fegan dated June 24, 2004; Letter from Monica Lamb to Elizabeth Fegan dated July 15, 2004.)

In addition, at Plaintiffs' insistence, AstraZeneca made available for Plaintiffs' inspection an additional 78 boxes from AstraZeneca's archives on July 13, 2004. (Exhibit F to AZ Mem., Letter from Monica Lamb to Elizabeth Fegan dated June 29, 2004.) Counsel for AstraZeneca repeatedly warned counsel for Plaintiffs in various telephone conferences that any broad search of AstraZeneca's archives was unlikely to result in responsive information, given that AstraZeneca had already agreed to conduct targeted searches of the archives in order to produce documents from the entire requested timeframe. (Exhibit A to AZ Mem., Harris Decl. at ¶¶ 7-

10.) Nonetheless, counsel for Plaintiffs refused to agree to AstraZeneca's proposal regarding the scope of its production unless such a broad search was conducted and an index was provided of the boxes that would be available for inspection. (Id.) AstraZeneca ultimately agreed, see Exhibit E to AZ Mem., Letter from Kimberley Harris to Elizabeth Fegan dated June 3, 2004, but expressly disclaimed any representation that all of the material in the boxes retrieved from the archives would be responsive to the Omnibus Requests, see Exhibit F to AZ Mem., Letter from Monica Lamb to Elizabeth Fegan dated June 29, 2004.

Moreover, as agreed, AstraZeneca provided Plaintiffs with an excerpt from AstraZeneca's archive index reflecting the boxes that had been retrieved from storage and their contents, to aid plaintiffs in their review on July 13, 2004. (Exhibit F to AZ Mem., Letter from Elizabeth Fegan to Monica Lamb dated July 1, 2004; Fax from Kimberley Harris to Elizabeth Fegan and Anthony Sievert dated July 12, 2004.) Curiously, the production of this index to Plaintiffs is nowhere mentioned in Plaintiffs' Motion to Compel.

This is the only index that has ever been discussed by the parties and it is not, in any way, an index of material deemed to be responsive to the Omnibus Requests. (Exhibit A to AZ Mem., Harris Decl. at ¶¶ 10-13.) Rather, the index that exists, a portion of which has already been provided to Plaintiffs, is nothing more than the type of index that exists at every company – an index to boxes sent to storage by all departments and all employees in all business areas of the company. (Id.) There is no index, as Plaintiffs attempt to suggest, of AstraZeneca's production in response to the Omnibus Requests. (Id. at ¶ 13.) Moreover, despite Plaintiffs' assertion that the boxes provided for inspection were irrelevant, Plaintiffs requested copies of close to half of these boxes – amounting to approximately 60,000 pages. (Id. at ¶12.)

8

Accordingly, although Plaintiffs assert that AstraZeneca had produced virtually no responsive or relevant documents by July 23, 2003, Plaintiffs' Mem. at 6, AstraZeneca had, in fact, made available to Plaintiffs more than 120,000 pages of documents and reams of data from the entire thirteen year time period, including documents from the Pricing Strategy Group, contracts and related documents with the major PBMs, contracts and related documents with the major wholesalers, documents relating to discounting, rebating, and the competitive market for each product from each of the major Managed Markets business groups, and strategic plans for many of the drugs at issue.[3]  Moreover, AstraZeneca confirmed the scope of its search and production for Plaintiffs' counsel in a letter dated July 15, 2004 in response to Plaintiffs' inquiry. (Exhibit F to AZ Mem., Letter from Elizabeth Fegan to Kimberley Harris dated July 1, 2004; Response Letter from Kimberley Harris to Elizabeth Fegan dated July 15, 2004.)  In addition, in an attempt to provide Plaintiffs with as much information as possible by July 31, 2004 – as had been discussed since April 2004 – AstraZeneca produced an additional 50,000 pages to Plaintiffs on July 30, 2004 and continues to produce on almost a weekly basis.  (Exhibit F to AZ Mem., Letters from Monica Lamb to Elizabeth Fegan dated July 30, 2004 and August 5, 2004.)

**C.    Plaintiffs' Failure to Comply with Local Rule 37.1**

On Friday July 23, 2004, counsel for AstraZeneca  received a letter from counsel for Plaintiffs arguing that AstraZeneca had not fully complied with Plaintiffs' Rule 30(b)(6) notice. The letter demanded a response by the next business day -- Monday, July 26.  (Exhibit G to AZ Mem., Letter from Kenneth Wexler to Scott Wise dated June 23, 2004.)  A call was arranged for

---

[3] Of course, these productions are in addition to the approximately 500,000 pages that AstraZeneca previously produced to Plaintiffs relating to Zoladex, one of the AstraZeneca drugs at issue in this case, in response to their First Request for Production of Documents.  The vast majority of the Zoladex documents have been in Plaintiffs' possession for more than a year.

July 28, 2004 to discuss this issue. (Exhibit A to AZ Mem., Harris Decl. at ¶¶ 14-15.) No other topic was designated for discussion.

During the call there was a disagreement regarding AstraZeneca's obligations under Rule 30(b)(6) and whether those obligations had been satisfied by the witnesses provided. (Id. at ¶ 16.) Nonetheless, in an effort to be cooperative, Mr. Wise offered to contact a retired employee, Alan Milbauer, whom Plaintiffs had separately noticed as a fact witness, to determine if he could provide additional information from an earlier time frame regarding some of the topics. (Id. at ¶ 17.) Mr. Wise concluded the call by informing Mr. Wexler that he would get back to him once he had contacted Mr. Milbauer. (Id. at ¶ 18.) Mr. Wise also indicated that he would attempt to confirm dates for the additional seven facts witnesses plaintiffs had noticed on July 23, 2004. (Id.) Mr. Wexler reiterated this understanding in a letter dated July 29, 2004 (erroneously dated June 29, 2004), in which he confirmed that Mr. Wise would be providing dates for additional depositions. (Exhibit G to AZ Mem., Letter from Kenneth Wexler to Scott Wise dated July 29, 2004.)

As promised, Mr. Wise sent a letter on August 2, 2004 to Mr. Wexler scheduling an additional day of Rule 30(b)(6) testimony with Alverson, as plaintiffs had requested, as well as scheduling deposition dates for other fact witnesses noticed by plaintiffs.[4] (Exhibit G to AZ Mem., Letter from Scott Wise to Kenneth Wexler dated August 2, 2004.) In that letter, Mr. Wise again stated that that he was attempting to contact Mr. Milbauer.

Regardless, on August 4, 2004, Plaintiffs filed a motion to compel against AstraZeneca without further discussion regarding Mr. Milbauer or additional Rule 30(b)(6) depositions and without any discussion regarding AstraZeneca's document productions. In fact, AstraZeneca's

---

[4] Plaintiffs subsequently requested that all of these depositions be postponed until September.

letter to Plaintiffs' counsel dated July 15, 2004, which raised several substantive questions for discussion regarding the scope and timing of AstraZeneca's production, see Exhibit F to AZ Mem., has gone unanswered to this day.  Rather than work cooperatively to resolve the parties' discovery issues, Plaintiffs chose to file a motion to compel.[5]  As demonstrated above, that motion is filled with half-truths and ad hominem attacks instead of any facts establishing any true violation of the Federal Rules, the Local Rules or the Court's prior orders.

## ARGUMENT

**A.     ASTRAZENECA HAS COMPLIED WITH ITS OBLIGATIONS UNDER RULE 30(B)(6) AND A PROTECTIVE ORDER SHOULD BE ISSUED PROHIBITING FURTHER REQUESTS UNDER THE AMENDED NOTICE**

AstraZenca has sufficiently met its obligations under Federal Rule of Civil Procedure 30(b)(6).  Rule 30(b)(6) states that persons designated as 30(b)(6) witnesses "shall testify as to matters known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  As demonstrated above, AstraZeneca produced two senior employees, its Pricing Strategy Director and its Contract Strategy Director, who together were prepared to answer Plaintiffs' questions on all twenty designated topics on behalf of AstraZeneca.  (Exhibits B and D to AZ Mem.)  This testimony included extensive personal knowledge dating as far back as 1995 on the core issues in Plaintiffs' complaint.  (Id.)  AstraZeneca's good faith production of these witnesses satisfies AstraZeneca's obligations under Rule 30(b)(6).  See United States v. Mass. Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995) (holding that no additional Rule 30(b)(6) deposition was required where the defendant acted in good faith and made no attempts to obstruct discovery).

---

[5] For this reason alone, Plaintiffs' Motion to Compel should be denied for failure to comply with Local Rule 37.1.

Plaintiffs do not seriously challenge the fact that these witnesses were prepared to testify, and did testify, on all twenty areas of inquiry listed on the Amended Notice. At most, Plaintiffs argue that there were gaps in their testimony, since they could not testify as to each and every one of the twenty topics for the entire thirteen year period for all of AstraZeneca predecessor companies. See Plaintiffs' Mem. at 6. Contrary to Plaintiffs' suggestion, these gaps are not tantamount to nonappearance.[6] When an entity provides a qualified witness, that witness's testimony combined with other discovery, such as document production and fact-witness depositions, is sufficient to fulfill a corporation's obligations under Rule 30(b)(6). See Barron v. Caterpiller, Inc., 168 F.R.D. 175, 177 (E.D. Pa. 1996). Not only has AstraZeneca provided its most knowledgeable employees as Rule 30(b)(6) designees, it has produced, and continues to produce, extensive documentation dating back to 1991 and has promptly scheduled additional fact witnesses at Plaintiffs' request.

Moreover, while Rule 30(b)(6) deponents must be prepared and knowledgeable, they should not be subjected to a "memory contest." Alexander v. F.B.I., 186 F.R.D. 137, 143 (D. D.C. 1998) (citing Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, No. 94-CIV-1942, 1995 WL 686715 (S.D.N.Y. Nov. 17, 1995) (where a deponent lacked information regarding all entities on a certain list, the better course was to obtain production of document rather than depose another witness who would merely testify to the content of the list after reviewing it)).

---

[6] The cases cited by Plaintiffs in support of their motion are inapposite. In those cases, the party subject to the Rule 30(b)(6) notice refused to provide any helpful information to the opposing party. For example, in Big Top, the 30(b)(6) designee for the plaintiff refused to answer questions even after being ordered to do so by both the Magistrate and Judge Saris. Big Top USA, Inc. v. The Wittnern Group, 183 F.R.D. 331, 339 (D. Mass 1998) (Saris, J.). The plaintiff also refused to produce any documents related to the same topics and refused to provide the one witness with knowledge even though he was a current employee of the company. Id. Similarly, in Calzaturficio, the 30(b)(6) designee gave "evasive, unhelpful and often sarcastic answers" and the defending attorney often instructed the witnesses not to answer questions. Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc., 201 F.R.D. 33, 38-39 (D. Mass 2001 (Collings, J.)). There is no comparison between the behavior of these witnesses and AstraZeneca's provision of two senior employees who together testified on all twenty topics that Plaintiffs requested.

12

Requiring AstraZeneca to produce additional Rule 30(b)(6) designees to testify on all twenty

topics as they relate to AstraZeneca's predecessor companies from more than a decade ago

would be just that – a test of whether the designee could remember information gleaned from

reams of documents already in Plaintiffs' possession.  This is an oppressive use of the Rule

30(b)(6) mechanism that should not be sanctioned by this Court.  See Banana Distribs. Inc. v.

United Fruit Co., 19 F.R.D. 493, 495 (S.D.N.Y. 1956) (finding that requiring defendants to

describe the nature and content of hundreds or thousands of documents, where plaintiffs likely

had copies of all the documents, would be unduly oppressive); see also In re Indep. Serv. Orgs.

Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (finding that producing party "is not

required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to

testify on a given defense or counterclaim").

 Accordingly, a Protective Order should be issued pursuant to Rule 26 prohibiting

Plaintiffs from requesting additional Rule 30(b)(6) depositions pursuant to the Amended Notice.

 Rule 26(b)(2) allows the Court to limit discovery where it is (i) unreasonably cumulative,

duplicative, or is obtainable from another source that is more convenient, less burdensome, or

less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the

action to obtain the information sought; or (iii) the burden or expense of the proposed discovery

outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2); see also Ameristar Jet Charter, Inc., v.

Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) (district court has discretion to limit

discovery where it would be an "undue burden").  Plaintiffs' Motion to Compel clearly indicates

that Plaintiffs intend to put the entire burden of their investigation on AstraZeneca.

 This attempt to shift the burden of discovery is clearly inappropriate under the Federal

Rules, particularly when more efficient means of discovering the information exist.  See In re

Indep. Serv. Orgs. Antitrust Litig., 168 F.R.D. at 651 (plaintiff failed to convince the court that
facts sought through Rule 30(b)(6) deposition could not be discovered by less problematic
means, or are not already available in the voluminous discovery previously conducted in a prior
case). Here, the information sought is obtainable from less burdensome forms of discovery,
since Plaintiffs have already received voluminous documents from the entire time frame
requested and can notice appropriate fact witnesses. See Mass. Indus. Fin. Agency, 162 F.R.D.
at 412 (where there is no bad faith or attempt to obstruct discovery on the part of the deposed
party, a court will not order additional 30(b)(6) depositions, but rather, may consider alternative
methods of fulfilling discovery requests); Boland Marine & Mfg. Co. v. M/V Bright Field, Etc.,
No. CIV.A. 97-3097, 1999 WL 280451, at *3 (E.D. La. May 3, 1999) (holding that a court
should consider whether questions unanswered by a Rule 30(b)(6) deponent are better addressed
by individual fact witnesses). Under these circumstances, the burden of requiring an
AstraZeneca deponent to memorize the identity of documents and witnesses from a half-dozen
predecessor companies on twenty different topics far outweighs any benefit.

      Accordingly, Plaintiffs' Motion to Compel should be denied and AstraZeneca's Motion
for a Protective Order should be granted.

**B.**    **ASTRAZENECA HAS COMPLIED WITH ITS OBLIGATIONS TO PRODUCE
DOCUMENTS IN A TIMELY MANNER AND NO INDEX SHOULD BE
REQUIRED**

      Plaintiffs' Motion to Compel appears to argue all at once that AstraZeneca has produced
too few and too many documents. The real facts are demonstrated above: AstraZeneca has
consistently produced documents and data responsive to Plaintiffs' Omnibus requests, including
documents relating directly to Plaintiffs' core allegations, since June 1, 2004. Plaintiffs'
apparent frustration regarding the volume and content of the documents produced reflects

14

nothing more than the poorly crafted nature of their overbroad requests, their stubborn refusal to narrow the requests in a productive manner, and their failure to establish priorities for the order of production. More significantly, it is also a strong indication that Plaintiffs' claims simply have no merit. In any event, Plaintiffs have not demonstrated any grounds – in the facts or in the case law – for this Court to compel the creation and production of an index to AstraZeneca's production in response to the Omnibus Requests, simply because it is voluminous. See Renda Marine, Inc. v. United States, 58 Fed. Cl. 57, 64 (Fed. Cl. 2003) ("the volume [of produced documents] alone is insufficient to trigger relief from the court.").[7]

Moreover, the supposed prejudice to Plaintiffs from the timing and volume of AstraZeneca's production is illusory. There is no reason why discovery must be completed prior to Plaintiffs' motion for class certification. Indeed, CMO No. 10 provides a fact discovery deadline of January 30, 2005 – five months after the deadline for Plaintiffs' motion. CMO No. 10, ¶ III (9). Even if documents were essential to Plaintiffs' motion, Plaintiffs have had in their possession close to 500,000 pages of documents relating to Zoladex, one of the AstraZeneca drugs at issue in this case, since December 2002, and more than 60,000 pages and 16 million transactional sales records relating to the other 16 drugs for several months. Having chosen to bring such a massive case, it is Plaintiffs' burden – not AstraZeneca's – to be prepared to conduct the necessary investigation. See Fed. R. Civ. P. 34(b) Advisory Committee Note ("A party demanding discovery should anticipate what would happen if the requested party

---

[7] As noted in the Background section above, no index of AstraZeneca's production in response to the Omnibus Requests currently exists. Accordingly, the two cases Plaintiffs cite are inapposite, since they involve pre-existing indices. See Washington Bancorporation v. Said, 145 F.R.D. 274, 275 (D.D.C. 1992) (involving a pre-existing index of 2,400 boxes of relevant documents); Portis v. City of Chicago, 2004 U.S. Dist. LEXIS 12640, at *2 (involving pre-existing database compiling information on 20,000 arrest records relating to civil rights claim for improper impreisonment). Moreover, AstraZeneca has already provided to Plaintiffs the archive index for the boxes from storage that were made available for Plaintiffs' inspection and did so prior to Plaintiffs' inspection of those boxes.

responded fully and vigorously," and a party, in "[a]nalyzing large volumes of hard copy or electronic materials," is required to "have the tools and the experts to deal with the materials.").

Accordingly, Plaintiffs' Motion to Compel the creation and production of an index to AstraZeneca's production should be denied.[8]

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Compel Against AstraZeneca should be denied. In addition, AstraZeneca's Cross-Motion for a Protective Order prohibiting Plaintiffs from requesting any additional Rule 30(b)(6) witnesses pursuant to the April 2, 2004 Amended Notice should be granted.

Respectfully submitted,

By: /s/ Lucy Fowler_____
    Nicholas C. Theodorou (BBO # 96730)
    Lucy Fowler, Esq. (BBO# 647929)
    FOLEY HOAG LLP
    155 Seaport Boulevard
    Boston, MA 02110
    (617) 832-1000

    D. Scott Wise (admitted *pro hac vice*)
    Kimberley D. Harris (admitted *pro hac vice*)
    DAVIS POLK & WARDWELL
    450 Lexington Avenue
    New York, NY 10017
    (212) 450-4000

    Attorneys for AstraZeneca Pharmaceuticals LP

Dated: August 23, 2004

---

[8] As of the date of this opposition, AstraZeneca has not yet completed its production in response to the Omnibus Requests. AstraZeneca continues to produce responsive documents as quickly as possible on a rolling basis and anticipates completing its production in September.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on August 23, 2004, a copy to Verilaw Technologies for posting and notification to all parties.

/s/ Lucy Fowler
Lucy Fowler

17