The First Amendment privilege is designed in part to address the very situation confronting FDB, where a publisher has collected information relevant to a large number of litigants. The privilege is intended to prevent publishers from becoming "an investigative arm of the judicial system or . . . of a private party," and to avoid "burden[ing] journalists' time and resources." *Shoen v. Shoen* ("*Shoen II*"), 48 F.3d 412, 416 (9th Cir. 1995); *accord U.S. v. LaRouche Campaign*, 841 F.2d 1176, 1181-82 (1st Cir. 1988) (purpose of privilege is to avoid "the burden on journalists' time and resources in responding to subpoenas"). If publishers could easily be ordered to testify in proceedings to which they are not even a party, subpoenas to them would become a routine element of litigation. *Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 35 (2d Cir. 1999). Frequent subpoenas would "preempt the otherwise productive time of journalists and other employees." *LaRouche*, 841 F.2d at 1182; *Gonzales*, 194 F.3d at 35 (multiple subpoenas directed to publishers "would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties").

The constitutional privilege has repeatedly been held to apply to discovery sought from publishers of financial, technical and other specialized publications, such as FDB.[16] Courts have had no difficulty applying the First Amendment privilege to protect such publishers and their editorial staffs from the intrusive demands of litigants. For example, the privilege was applied in *In re Pan Am Corp.*, 161 B.R. at 579, to a company that "assesses, rates, and comments on the creditworthiness of [certain types of] debt instruments" and "publishes its rating and other

---

[16] *See, e.g., Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 680 (1994) (financial newsletter that "provides data and evaluations on more than 1,200 mutual funds" is entitled to entitled to assert full range of First Amendment protections); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980) (newsletter reporting on market policies of supermarket industry entitled to full First Amendment protection); *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 686 (7th Cir. 1998) (publications concerning commodities futures markets, including "Monthly Chart Supplements" giving historical price ranges for various markets, are fully protected); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 707-08 (4th Cir. 1991) (newsletter that provides information on pesticides and toxic chemicals entitled to full First Amendment protections).

financial instruments in periodicals." As long as the publisher gathers the information "with the intent to use the material to disseminate information to the public," the privilege will apply. *Id.* at 581; *accord Shoen I*, 5 F.3d 1289.

The constitutional privilege plainly extends to FDB, and obligates the parties to satisfy the higher standard to compel additional information from FDB.[17] *See In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5 (2d Cir. 1982) (applying constitutional privilege to oil industry trade publication); *Apicella v. McNeil Labs., Inc.*, 66 F.R.D. 78, 85 (E.D.N.Y. 1975) (applying privilege to testimony of chief executive of medical newsletter that "performs a public and professional service by providing information on various drugs"); *In re Scott Paper Co. Sec. Litig.*, 145 F.R.D. 366, 368 (E.D. Pa. 1992) (applying privilege to Standard & Poor's credit rating circular); *In re Photo Marketing Ass'n Int'l.*, 327 N.W.2d 515, 516 (Mich. App. 1982) (applying privilege to trade association "which gathers data concerning the operations and activities of its members and publishes trade news periodicals").

While the constitutional privilege is not absolute, the Ninth Circuit in *Shoen II* (on appeal after remand) laid out the test that a party seeking disclosure of non-confidential information from a publisher must satisfy to overcome the constitutional privilege. Beyond satisfying the standards in Rule 26(c), those seeking such information must demonstrate "that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; *and* (3) clearly relevant to an important issue in [this] case." 48 F.3d at 416 (emphasis added). Only in the "most exceptional cases" can a party make these showings.

---

[17] The qualified First Amendment privilege applies to non-confidential information and is not waived by FDB's prior disclosure of information. *See, e.g., Altemose Constr. Co. v. Bldg. & Constr. Trades Council*, 443 F. Supp. 489, 491-92 (E.D. Pa. 1977) (no waiver of First Amendment privilege with respect to subpoenaed affidavits even though reporter gave copies of affidavits to third parties and existence of affidavits was revealed on television); *Stephens v. Am. Home Assurance Co.*, No. 91 Civ 2898, 1995 WL 230333, at *10 (S.D.N.Y. Apr. 17, 1995) (qualified First Amendment privilege applied even though publisher had produced same information in prior proceeding).

*Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981).  The parties do not, and cannot, meet the heightened standard.

      1.    **The parties have not exhausted reasonable alternative sources.**  To the extent the parties seek information about the *actual* average wholesale price of specific drugs in the marketplace, FDB is clearly the wrong source.  FDB only publishes pricing data reported to it by the manufacturers and wholesalers.  This data does not include any information on discounts, rebates, chargebacks or anything else that may influence the end price being paid in the marketplace.[18]

      To the extent the parties seek information regarding AWP as *published* by FDB, they should go directly to the same *sources* of information used by FDB – the manufacturers and wholesalers for any additional information needed.  There is nothing mysterious or complex about what FDB does, and its procedures are fully disclosed.  The parties should be required to collect any data they need directly from the sources as a first step, and may properly compel additional testimony from FDB only as a last resort – where information is truly essential and not otherwise available.  *See Shoen I*, 5 F.3d at 1296-97 (holding that subpoenaing party must pursue other alternatives before burdening publisher with discovery demands).

      2.    **The additional testimony and documents sought are cumulative.**  As discussed above, (pp. 8-9, 12-14), FDB has offered a broad package of information that should satisfy the legitimate needs of the parties.  (Hawley Dec. ¶¶ 12-15.)

---

[18]

# REDACTED

3.     **The additional discovery sought from FDB is not "clearly relevant to an important issue in the case."**  The information on how FDB populates its pricing database is already in the hands of the parties. Any marginally relevant material that might be developed through compelled further disclosures is not sufficiently material to overcome the constitutional privilege. *See Shoen II*, 48 F.3d at 416; *see also Wright v. Fred Hutchinson Cancer Research Ctr.*, 206 F.R.D. 679, 682 (W.D. Wash. 2002) ("In order to overcome a claim of journalist's privilege, the party seeking discovery bears a far heavier burden in establishing relevance than is applicable in the normal discovery context.").

In short, all apart from the limitations imposed by Rule 26(c), the parties cannot make the required showing to overcome the qualified constitutional privilege that applies to FDB. For this reason, too, the Court should limit all of the outstanding subpoenas to the documents and testimony in the package offered by FDB.

## II.

## ANY PARTY SEEKING FURTHER DISCOVERY FROM FDB SHOULD BE REQUIRED TO MAKE A PARTICULARIZED SHOWING OF SPECIFIC NEED AND LACK OF ALTERNATIVE SOURCES

Any party seeking discovery beyond the package offered by FDB should be required, at a minimum, to identify with particularity the additional information requested and demonstrate that the additional disclosure is both essential to this case and not otherwise available.

## A.     The Motion to Compel Should Be Denied Because the Moving Defendants Do Not Identify What More They Actually Need or Why They Need It

In moving to compel further discovery, the only "clarification" defendants claim they need relates to changes during 2002 to the AWPs of the drugs involved in the Together Rx program. (Moving Mem. at 5-6.) The testimony and documents produced by FDB, however, establish that FDB always uses the *same* procedure in determining AWP, regardless of the drug,

24

the manufacturer or the wholesaler. (*See supra* at 13-14.) If a particular AWP changed in 2002, either some manufacturer changed its net wholesale price or some wholesaler changed its markup. What actually happened for a given product at a given time can be fully addressed from information in the possession of the manufacturers and the wholesalers.

Ms. Morgan has already testified about the types of changes in the marketplace that prompt FDB to re-survey wholesalers and revise a published AWP. As she explained:

# REDACTED

[19] In the relevant time period here, many changes occurred in the industry that would prompt wholesaler surveys. For example, in December 2000, GlaxoWellcome merged with SmithKlineBeecham (*see* Pharma MarketLetter, January 3, 2001); in March 2001, Abbott acquired Knoll (*see* Pharma MarketLetter, March 2, 2001); in June 2001, Johnson & Johnson acquired Alza (*see* Pharma MarketLetter, June 22, 2001); and in October 2001, Bristol-Myers Squibb acquired DuPont (*see* Pharma MarketLetter dated October 2, 2001). Mergers, acquisitions and divestitures can always impact AWP, and the relevant information for wholesalers' and manufacturers' price changes following such events is available directly from

---

[19] Of course, a published AWP could change in the event of an inadvertent mistake or other anomaly in receiving the data from the wholesalers and manufacturers, but any such case would be ascertained from the specific data available from others.

those parties. To the extent FDB has such pricing data, it is being provided. The parties do not need further testimony from Ms. Morgan to go over this territory again.

To the extent that defendants need additional information about a specific change in AWP, they should be required to go to the *sources* of that information: the manufacturers and the wholesalers. The manufacturers of the drugs at issue are defendants in this case, who undoubtedly have already been called upon to produce their own pricing information. There is no legitimate reason the parties should not obtain any additional pricing information they require from the wholesalers. *See Shoen I*, 5 F.3d at 1296-97 (constitutional privilege requires exhaustion of alternative sources); Fed. R. Civ. P. 26(b)(2) (discovery shall be limited by the court if it determines that the discovery "is obtainable from some other source that is more convenient, less burdensome, or less expensive").

**B.     The Court Should Limit All Subpoenas Served on FDB in the Same Manner**

For the same reasons, the Court should limit all subpoenas served on FDB to the extensive package of documents and testimony offered by FDB. As moving defendants note, this Court as the MDL court "is uniquely capable of coordinating discovery of FDB in order to minimize any burden associated with discovery." (Moving Mem. at 10, citing Manual for Complex Litigation.) It should do so by limiting the scope of all the outstanding subpoenas, and any new ones yet to be served. The Manual for Complex Litigation explains:

> [I]t is best to coordinate discovery plans to avoid conflicts and duplication. . . . *It may also be economical for the judges to afford parties in the present litigation access to depositions previously taken in other litigation* . . . . [In situations involving nonparties], *the answers given at the earlier deposition may be adopted as the current testimony of the witness.*

Manual for Complex Litigation (Fourth) § 11.455 (emphasis added). FDB has made available to the parties "depositions taken in other litigation," as well as thousands of pages of documents

and other materials. Nothing further should be required without a specific demonstration of need and the lack of alternative sources.

The package of information offered by FDB has been accepted by litigants in other cases, who had issued similarly broad subpoenas for documents and testimony. For example, in litigation involving the drug Lupron, defendant withdrew its motion to compel testimony upon receipt of the same extensive package of information FDB has offered to provide here. (Hawley Dec. ¶ 22.) Over the course of more than 20 meet and confer sessions, the various parties here have presented no sufficient reason why this package is not likewise sufficient to the needs of this case. Nor do the suggestions by plaintiffs of material yet to be produced warrant the imposition of additional discovery burdens on FDB. (Hawley Dec. ¶¶ 25-30.)

FDB has gone to extraordinary lengths to cooperate with the litigants in these cases, searching for and making thousands of pages of documents and testimony available. FDB faces a crushing toll of discovery demands, however, and the Court should properly limit the excessive and undue burden that the parties seek to impose on FDB.

27

## CONCLUSION

For all the foregoing reasons, the Court should deny the motion by Novartis and Bristol-Meyers Squibb to compel additional testimony, and enter a protective order limiting the scope of all outstanding subpoenas to the documents, testimony and an authenticating affidavit offered by FDB, or alternatively, limit any additional discovery to those facts specifically demonstrated to be essential to the case, not already disclosed, and not available from other sources.

DATED:      August 20, 2004

Respectfully submitted,

MURPHY & RILEY, P.C.

Richard Riley, BBO#420010
141 Tremont Street
Boston, MA 02111
Tel:  (617) 423-3700

David A. Schulz
Alia L. Smith
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
230 Park Avenue, Suite 1160
New York, NY  10169
Tel: (212) 850-6100

Counsel for Movants First DataBank, Inc. and
Patricia Kay Morgan

# APPENDIX

## State Attorney General Cases

| Case | Date Filed | Plaintiff(s) | Defendant(s) | Procedural Status |
|---|---|---|---|---|
| *Arkansas v. Dey*<br><br>No. CV04-634 | 01/04 | Arkansas Attorney General | Dey, Inc.<br>Warrick Pharms. Corp.<br>Schering-Plough Corp. | Pending. |
| *California v. Abbott Labs.*<br><br>Case No. 03-2239DDP<br><br>(C.D. Cal.) | 1/7/03 | California Attorney General | Abbott Labs.<br>Wyeth, Inc.<br>Wyeth Pharms. | Transferred to MDL case in Mass. (MDL No. 1456). Reconsideration on Motion to Remand pending. |
| 1. *Connecticut v. Aventis Pharm., Inc.*, No. 03-557<br><br>2. *Connecticut v. Dey, Inc.*, No. 03-572<br><br>3. *Connecticut v. Glaxo SmithKline P.L.C.*, No. 03-553<br><br>4. *Connecticut v. Pharmacia Corp.*, No. 03-553 | 3/12/03 | Connecticut Attorney General | Dey, Inc.<br>Warrick Pharms. Corp.<br>Schering-Plough Corp.<br>GlaxoSmithKline<br>Aventis<br>Roxane Labs. Inc.<br>Pharmacia Corp. | There are four separate cases brought by the Connecticut Attorney General currently pending. Plaintiffs initially were successful in getting these cases consolidated with the AWP/MDL in Boston, but Connecticut successfully got the cases severed and remanded. |
| N/A | N/A | Florida Attorney General | Dey, Inc.<br>Warrick Pharms. Corp.<br>Schering-Plough Corp.<br>Roxanne | Pending. |

| | | | | |
|---|---|---|---|---|
| 1. *Kentucky v. Abbott Labs.*<br><br>2. Kentucky v. Dey, Inc and Schering-Plough Corp.<br><br>(Franklin County Cir. Court) | 9/03 | Kentucky Attorney General | 1. Abbott Labs.<br><br>2. Dey, Inc., Schering Corp., Schering-Plough and Warrick Pharm. | Pending. |
| *St. John La Corte v. Merck & Co.*<br><br>No. 99-CV-3807<br><br>(E.D. La.) | 12/20/99 | Louisiana Attorney General | Merck & Co. | Pending. |
| *Massachusetts v. Mylan Labs.*<br><br>No. 03-CV-11865<br><br>(D. Mass.) | 9/25/03 | Massachusetts Attorney General | Mylan Laboratories<br>Barr Laboratories<br>Par Pharmaceuticals<br>Ivax Corporation<br>Warrick Pharms.<br>Watson Pharms.<br>Dey, Inc.<br>Teva Pharmaceuticals<br>Ethex Corp.<br>Purepac Pharm. Co.<br>Roxane Pharms. | This case is not part of the MDL, but it is filed as a related case to the MDL. Defendants' Motions to Dismiss are pending. |
| 1. *Minnesota v. Pharmacia*<br><br>No. 02-CV-1779<br><br>2. *Minnesota v. Dey,*<br><br>(Ramsey County Dist. Ct.) | 6/02 | Minnesota Attorney General | 1. Pharmacia Corp.<br><br>2. Dey, Inc., Roxane, Schering Corp., Schering-Plough and Warrick Pharm. | Removed to federal court; transferred to MDL case in Mass. (MDL No. 1456) |

A2

| | | | | |
|---|---|---|---|---|
| *Montana v. Abbott Labs.*<br><br>No. CV-02-09-H<br><br>(Montana Dist. Ct., Helena Div.) | 2/25/02 | Montana Attorney General | Abbott Labs.<br>American Home Prods.<br>Amgen Inc.<br>AstraZeneca<br>Aventis Pharma<br>Chiron<br>Baxter Pharm. Prods.<br>Bristol-Myers Squibb<br>Dey, Inc.<br>SmithKline Beecham<br>Pharmacia Corp.<br>Hoechst Marion Roussel<br>Immunex Corp.<br>Eli Lilly & Co.<br>Schering-Plough<br>Pharmacia & Upjohn<br>SmithKline Beecham<br>Warrick Pharms. | Transferred to MDL case in Mass. (MDL No. 1456) |
| *Nevada v. Abbott Labs.*<br><br>No. CV-N-02-0080 | 1/17/02 | Nevada Attorney General | Abbott Labs.<br>Amgen, Inc.<br>Baxter Pharm. Prods.<br>Bayer Corp.<br>Bristol-Meyer Squibb<br>Dey, Inc.<br>GlaxoSmithKline<br>Glaxo Wellcome<br>Pharmacia<br>Pharmacia & Upjohn<br>Smith Kline Beecham<br>Tap Holdings<br>Warrick Pharms. | Originally filed in State Court, removed to Federal Court; transferred to MDL case in Mass. (MDL No. 1456). |
| *New York v. Pharmacia Corp.*<br><br>No. 904-03<br><br>(N.Y. Supreme Ct.) | 2/13/03 | New York Attorney General | Pharmacia | Pending. |
| *New York v. GlaxoSmithKline, P.L.C.*<br><br>No. 905-03<br><br>(N.Y. Supreme Ct.) | 2/13/03 | New York Attorney General | GlaxoSmithKline<br>Glaxo Wellcome<br>SmithKline Beecham | Pending. |

A3

| | | | | |
|---|---|---|---|---|
| *New York v. Aventis, Inc.*<br><br>No. 1150-03<br><br>(N.Y. Supreme Ct.) | 2/13/03 | New York Attorney General | Aventis | Pending. |
| *Ohio v. Abbott*<br><br>(Hamilton County Common Pleas Ct.) | 3/9/04 | Ohio Attorney General | Abbott Labs.<br>Pharmacia Corp.<br>Schering –Plough Corp<br>Dey Corp.<br>Warrick Pharm. | Pending. Ohio is using private counsel to prosecute. |
| *Pennsylvania v. TAP, et al.*<br><br>(Commonwealth Court) | 3/10/04 | Pennsylvania Attorney General | TAP Pharm. Prods.<br>AstraZeneca<br>Bayer AG<br>GlaxoSmithKline, PLC.<br>Pfizer Inc.<br>Amgen Inc.<br>Schering-Plough Corp.<br>Bristol-Myers Squibb<br>Johnson & Johnson<br>Baxter Intern., Inc.<br>Aventis Pharms. Inc.<br>Boehringer Ingelheim<br>Dey, Inc. | Pending. Pennsylvania is using private counsel to prosecute. |
| *Texas v. Dey, Inc., and Ven-A-Care v. Dey L.P.*<br><br>No. GV002327<br><br>(Travis County Dist. Ct.) | 9/14/00 | Texas Attorney General;<br>Ven-A-Care (whistleblower) | Dey, Inc.<br>Warrick Pharm.<br>Roxane Labs.<br>Schering-Plough | Settlement with Dey for $18.5 Million; Case still pending against Roxanne and Warrick. |
| *West Virginia v. Dey, L.P. and Warrick Pharm.*<br><br>No. 03-CV-494 | 2001 | West Virginia Attorney General | Dey, Inc.<br>Warrick Pharm. | Unknown. |

| | | | | |
|---|---|---|---|---|
| *Wisconsin v. Abbott Labs.* | 06/03/04 | Wisconsin Attorney General | Abbott Labs. Pharmacia Corp. Schering –Plough Corp. Dey Corp. Warrick Pharm. TAP Pharm. Prods. AstraZeneca GlaxoSmithKline, PLC Pfizer Inc. Amgen Inc. Bristol-Myers Squibb Bayer Corporation Johnson & Johnson Baxter Intern., Inc. Aventis Pharms. Inc. Boehringer Ingelheim Gensia Sicor Pharmaceuticals, Inc. Fujisawa Healthcare Watson Pharmaceuticals | Pending. |

## Private Cases

| Case | Date Filed | Plaintiff(s) | Defendant(s) | Procedural Status |
|---|---|---|---|---|
| *Geller v. Abbott Labs.*<br><br>Cal. Sup. Ct., BC260549, removed to Federal Court, No. 02-CV-00553<br><br>(C.D. Cal.) | 10/26/01 | Geller (Class Action) | Abbott Labs. Baxter Intern. Baxter Healthcare Baxter Pharm. Prods. Bayer Corp. Bristol-Myers Squibb GlaxoSmithKline Glaxo Wellcome Pharmacia Pharmacia & Upjohn SmithKline Beecham TAP Holdings | Transferred to MDL case in Mass. (MDL No. 1456) |
| *AFSCME v. Advance PCS*<br><br>BC 292227<br><br>(Cal. Sup. Ct.) | 4/03 | Prescription Access Litigation project; American Federation of State, County and Municipal Employees | Advance PCS Express Scripts MedCo Health Solutions Caremark Rx | Pending. |

| | | | | |
|---|---|---|---|---|
| *Citizens for Consumer Justice v. Abbott Labs.*<br><br>No. 01-CV-12257<br><br>(D. Mass.) | 12/19/01 | (Class action on behalf of Medicare Part B participants) | Baxter Healthcare<br>Baxter Pharm. Prods.<br>Bristol-Myers Squibb<br>GlaxoSmithKline<br>Fujisawa Pharmacy<br>Fujisawa USA<br>Monsanto<br>Aventis S.A.<br>Aventis Behring<br>Hoechst Marion Roussel<br>Teamsters Health Fund<br>Tap Holdings<br>AstraZeneca<br>Allergan<br>Johnson & Johnson<br>Centocor<br>Boehringer Ingelheim<br>Ben Venue Labs<br>Ortho Biotech Prods.<br>Bedford Labs<br>Roxane Labs<br>Pfizer<br>Warrick Pharm.<br>Hoffman-La Roche<br>Abbott Labs | Consolidated with MDL No. 1456. |
| *In re Lupron Marketing & Sales Practices Litigation*<br><br>MDL No. 1430<br><br>(D. Mass.) | 3/14/02 | (Class action on behalf of Medicare Part B participants) | TAP Pharmaceuticals Corporation | Pending. |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation*<br><br>MDL No. 1456 | 4/02 | *Citizens for Consumer Justice* (lead case/plaintiff): MDL Consolidation of multiple class actions pending across the country. Class action plaintiffs include consumer groups, public and quasi-public entities. | Defendants include 42 drug manufacturers, among them:<br>Abbott Labs.<br>Amgen, Inc.<br>AstraZeneca<br>Aventis<br>Baxter<br>Boehringer<br>Bristol-Myers Squibb<br>Johnson & Johnson<br>Novartis<br>Pharmacia<br>Schering-Plough | Pending. |

| | | | | |
|---|---|---|---|---|
| *Montana v. Abbott Labs.*<br><br>No. 02-12084-PBS | | | Abbott<br>Wyeth<br>Amgen<br>AstraZeneca<br>Aventis<br>Chiron<br>Baxter<br>Bristol-Myers<br>Dey<br>SmithKline Beecham<br>Hoerscht Marion<br>Immunex<br>Eli Lilli<br>Schering-Plough<br>Pharmacia<br>Upjohn<br>Warrick | This case was originally filed in Montana state court, but was transferred to MDL case in Mass. (MDL No. 1456) |
| Nevada State Court Case No. CV-0208289 | | | Abbott<br>Baxter<br>Bristol-Myers<br>Dey<br>Glaxo SmithKline<br>Schering-Plough<br>Pharmacia<br>Upjohn<br>Warrick | Transferred to MDL case in Mass. (MDL No. 1456) |
| Case name unknown.<br><br>(New Jersey Sup. Ct., Middlesex County) | 4/12/02 | New Jersey Citizen Action (Consumer Group) | Johnson & Johnson<br>Centocor | |

A7