## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | : MDL 1456 |
| | : |
| | : |
| | : Master File No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : |
| | : |
| | : Judge Patti B. Saris |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF ROBERT J. HAWLEY IN SUPPORT OF FIRST DATABANK, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND IN SUPPORT OF ITS COUNTER-MOTION TO LIMIT ALL SUBPOENAS SEEKING ADDITIONAL TESTIMONY

I, Robert J. Hawley, declare:

1.     I am an attorney licensed to practice in the courts of the State of New York.  I am a lawyer in the Office of General Counsel for The Hearst Corporation ("Hearst").  In my capacity with Hearst, I act as counsel for First DataBank, Inc. ("FDB"), a subsidiary of Hearst and the subject of the discovery demands at issue in the parent motion to quash.

2.     I have personal knowledge of the following facts, except as noted otherwise herein, and could and would testify competently thereto if called as a witness.

**Plaintiffs' Original October 2003 Subpoenas to FDB**

3.     On or about October 15, 2003, liaison counsel for Plaintiffs in the above-captioned case served a subpoena on non-party FDB.  The first subpoena commanded the production of 30 broad categories of documents concerning, *inter alia*, FDB's drug price data collection and reporting and information concerning FDB's publication of average wholesale

price ("AWP") data for many drugs ("Plaintiffs' October 2003 Subpoena"). A true and correct copy of Plaintiffs' October 2003 subpoena to FDB is annexed as Exhibit A.

4.      Beyond this broad demand for documents, in October 2003 Plaintiffs also served a deposition "notice" on FDB, seeking testimony from a person with knowledge of FDB's pricing and data collection practices. No subpoena to compel testimony was served with this notice. A true and correct copy of the notice is annexed as Exhibit B.

**Subsequent Redundant, Duplicative Subpoenas to FDB**

5.      Five months later, after FDB's production of documents in response to Plaintiffs' October 2003 subpoena was well underway, Defendant Novartis Pharmaceuticals Corporation ("Novartis") served FDB with two new subpoenas, on or about March 17, 2004. The first subpoena commanded the production of documents consisting of a subset of those requested in Plaintiffs' October 2003 Subpoena; the second subpoena commanded the deposition of Patricia Kay Morgan, FDB's Director of Knowledge-Base Services (the "Novartis Subpoena(s)"). The documents and testimony sought under the Novartis Subpoenas were entirely redundant and duplicative of those commanded by Plaintiffs' October 2003 Subpoena (*i.e.*, related to FDB's drug price data collection and reporting practices, and AWPs of drugs and manufacturers at issue in this case). True and correct copies of Novartis's Subpoenas to FDB are annexed as Exhibit C.

6.      The documents requested under the Novartis Subpoena—if they exist at all and are within FDB's possession or control—either have been produced, or will be produced, in response to Plaintiffs' October 2003 Subpoena. Novartis, like all Defendants, has access to the documents produced by FDB through the defense liaison counsel, to whom First DataBank has produced a copy of all documents produced to Plaintiffs. In meet and confer calls prior to and following the service of the Novartis Subpoenas, I have made this point abundantly clear to counsel both for Novartis and for Bristol-Myers Squibb.

2

7.    On or about April 9, 2004, liaison counsel for Plaintiffs served FDB with two additional subpoenas (the "April 2004 Subpoena(s)"). These subpoenas were, literally, *identical in language and scope* to the Novartis Subpoenas—*which themselves had been duplicative and a subset of Plaintiffs' October 2003 Subpoena and deposition notice.* True and correct copies of Plaintiffs' April 2004 Subpoenas to FDB are annexed as Exhibit D.

8.    The documents requested under the April 2004 Subpoena—if they exist at all and are within FDB's possession or control—either have been produced, or will be produced, in response to Plaintiffs' own October 2003 Subpoena.

9.    Finally, on or about April 14, 2004, counsel for Suffolk County served FDB with two subpoenas (the "Suffolk County Subpoenas"). The Suffolk County Subpoenas were, literally, *identical in language and scope* to Plaintiffs' October 2003 Subpoenas (the original subpoenas served on FDB). True and correct copies of the Suffolk County Subpoenas are annexed as Exhibit E.

10.    In or around April 2004 (both prior to and following service of the Suffolk County Subpoenas), FDB met and conferred with Plaintiffs' counsel issuing the Suffolk County Subpoenas, and advised that their requests were duplicative and urged that they obtain a duplicate set of documents from Plaintiffs' liaison counsel. In or around June 2004, counsel for Suffolk County, *et al.*, informed me that their co-Plaintiffs (issuers of the October 2003 and April 2004 Subpoenas and recipients of over 25,000 pages of FDB documents) were unwilling to provide them with a duplicate set of FDB documents. Thus, on or about June 28, 2004, FDB copied and produced to counsel for Suffolk County, *et al.*, a complete set of all documents produced by FDB thus far in this action.

3

11.     To date, non-party FDB has been served with seven separate subpoenas and a deposition notice in this case—all but the original of which are duplicative and redundant. Within 10 days of the receipt of each of the discovery demands, FDB served objections, pursuant to Federal Rule of Civil Procedure 45. Annexed as Exhibit F are true and correct copies of FDB's objections to the discovery demands.

**The Package of Information FDB Has Offered in Response to the Subpoenas**

12.     On information and belief, in response to all the various subpoenas issued to it, FDB has offered an extensive package of information: (a) all relevant documents about the pricing of particular dugs, the pricing policies of drug manufacturers and wholesalers, and FDB's methodologies for calculating AWP; (b) sworn testimony explaining FDB's methods for collecting drug pricing information and developing AWPs, including detailed testimony about AWP given by Patricia Kay Morgan, FDB's director of Knowledge-Base Services, in a 10-hour deposition; and (c) an affidavit authenticating FDB's documents and testimony for use in court.

13.     In providing this package of information in this case, FDB has gathered, reviewed and produced, to date, more than 28,000 pages of documents, six CD-ROMS (each containing thousands of additional pages of current and historical drug data manuals and editorial policies) and several floppy disks. FDB's search for and review of documents is ongoing, and FDB intends to provide additional documents over the next several weeks. True and correct copies of FDB's correspondence with Plaintiffs (transmitting the responsive documents produced thus far) are annexed as Exhibit G. On each occasion that FDB has produced documents to Plaintiffs, as a courtesy and at the request of various counsel for Defendants, FDB also has produced a duplicate set of documents to defense liaison counsel, Mr. Merle Delancey of Dickstein Shapiro.

14.     In addition to the documents being produced as part of the package offered to litigants, FDB has produced at least 15 separate transcripts of sworn testimony regarding drug pricing and AWP provided by FDB employees and officers—*as non-parties*—in private lawsuits and government investigations since 1998. These transcripts contain testimony describing FDB's long-standing drug price collection and reporting practices, particularly as they relate to the publication of the pricing field known as BlueBook AWP. Included among these transcripts provided to Plaintiffs is a 10-hour deposition of Ms. Morgan. This deposition was conducted in November 2002, in a case brought by the Texas Attorney General against several drug manufacturers concerning AWP and drug pricing, in which FDB was subpoenaed as a non-party. The testimony in this transcript relates almost exclusively to AWP and drug pricing issues and to FDB's data collection and reporting practices—*the identical issues about which the Parties claim they needs testimony in this action.* (A copy of the transcript of the testimony taken in Texas is submitted herewith under seal, identified as Exhibit H to this declaration.)

15.     Finally, FDB has offered to provide a sworn affidavit from its Records Custodian, authenticating all of the documents it has produced in this case and/or an affidavit from Ms. Morgan confirming the accuracy of her sworn testimony that has been provided to the parties here. (A copy of the affidavit from Ms. Morgan that was proposed to the parties is attached hereto as Exhibit I.) These offers have been rejected. The parties insist on deposing Ms. Morgan yet again, and they refuse to withdraw their cumulative subpoenas.

**FDB's Response to Subpoenas and Investigative Demands Since 1998**

16.     Since 1998, FDB has been formally subpoenaed as a non-party to produce documents and/or testimony in at least 10 separate lawsuits and/or government investigations regarding AWP and drug pricing (in addition to this MDL), including the following

5

- Medicaid fraud investigation conducted by the Inspector General of the Department of Health and Human Services

- Medicaid fraud investigation conducted by the United States Attorney's Office in the District of Massachusetts

- Serostim AWP investigation conducted by the United States Attorney's Office in the District of Massachusetts

- *State of Texas ex rel Ven-A-Care v. Dey, Inc., et al.*, Texas District Court, Case No. GV002327

- Medicaid fraud investigation conducted by the Texas Attorney General

- Investigation of Average Wholesale Pricing Practices by the Minnesota Attorney General

- *In Re Lupron Marketing & Sales Practices Litigation* (MDL No. 1430)

- *Stetser v. TAP Pharmaceutical Products Inc.*, North Carolina Superior Court, Case No. 01 CVS 5268

- *Walker v. TAP Pharmaceutical Products Inc.*, New Jersey Superior Court, Case No. CPM-682-01

- *Benoit v. Takeda Chemical Industries*, Texas Superior Court (Docket No. B-166742)

17.     FDB also has been advised recently that it will be subpoenaed as a non-party for documents and testimony in at least four additional lawsuits involving AWP and drug pricing filed by the State of Connecticut. These are:

- *State of Connecticut v. Dey, Inc.*, Docket No. X07-CV03-0083296S

- *State of Connecticut v. GlaxoSmithKline, P.L.C.*, Docket No. X07-CV03-0083297S

- *State of Connecticut v. Pharmacia Corp.*, Docket No. X07-CV03-0083298S

- *State of Connecticut v. Aventis Pharmaceuticals, Inc.*, Docket No. X07-CV03-0083299S

18.     Since 1998—and increasingly in recent years—FDB has been bombarded with and has responded to dozens of additional *informal* inquiries regarding AWP and drug pricing. These inquiries originate from state and federal government agencies, including inquiries from state Attorneys General, the U.S. Department of Justice and the Center for Medicare and Medicaid Services (CMS).  FDB also has responded to dozens of inquiries from private party plaintiffs and defendants involved in AWP and drug pricing litigation.  (True and correct copies of certain of the discovery demands sent to FDB in other proceedings over the past few years are collectively annexed hereto as Exhibit J.)

19.     On information and belief, in response to these other demands, FDB has, since 1998, produced over 70,000 pages of documents and dozens of CD-ROMS and floppy disks (each containing thousands of pages of information on FDB's editorial practices and policies), and employees and officers of FDB have appeared for and provided deposition testimony concerning drug pricing and AWP on at least 15 separate occasions.

20.     Subpoenas and other requests for information from FDB are not likely to stop, as there are more than a dozen additional AWP cases pending around the country in which FDB likely will be subpoenaed.  These include:

- *State of Arkansas v. Dey*, No. CV 04-634

- Investigation of alleged Medicaid fraud by various manufacturers of asthma and respiratory products and drugs conducted by Florida Attorney General

- *Kentucky v. Abbott* (Franklin Co. Cir. Ct.)

- *Kentucky v. Dey, Inc. & Schering-Plough Corp.* (Franklin Co. Cir. Ct.)

- *St. John La Corte v. Merck & Co.*, No. 99-CV-3807 (E.D. La.)

- *Massachusetts v. Mylan Labs.*, No. 03-CV-11865 (D. Mass.)

- *New York v. Pharmacia Corp.*, No. 904-03 (N.Y. Supreme Court)

7

- *New York v. Glaxo SmithKline, P.L.C.*, No. 905-03 (N.Y. Supreme Court)

- *New York v. Aventis*, No. 1150-03 (N.Y. Supreme Court)

- *Ohio v. Abbott* (Hamilton Cty. Cm. Pl. Ct.)

- *Pensylvania v. TAP* (Cmwlth. Ct.)

- *Wisconsin v. Abbott*

- *AFSCME v. Advance PCS*, BC 292227 (Cal. Sup. Ct.)

21.    Now, when parties to any of the many litigations and investigations concerning drug pricing subpoena FDB, FDB offers the same "package" of information that it has offered to the parties here: (a) any and all documents concerning the pricing of any particular drug, the pricing policies of any drug manufacturer or wholesaler, and FDB's methodologies for calculating AWP; (b) the prior sworn testimony of FDB personnel concerning drug pricing and AWP; and (c) a method of authenticating the documents and testimony.

22.    One of the many cases in which FDB has been subpoenaed is *Walker v. TAP Pharmaceutical Products, Inc.*, which concerns pricing of the specific drug Lupron, and is pending in New Jersey.  FDB offered the defendant there the same package it offers the parties here: all documents concerning pricing of the drug at issue in the case (Lupron); copies of testimony from FDB personnel explaining how it calculates AWP (which would make plain how FDB calculates AWP for Lupron); and appropriate authentication of the documents and testimony.  Recognizing that this extensive package of information satisfied its needs, the defendant dropped its earlier-filed motion to compel, and accepted the package as satisfactory compliance with its subpoena.

8

**Availability of Less Intrusive And Burdensome Means to Collect the Evidence Sought**

23.     FDB has met and conferred more than 20 times with counsel for Plaintiffs and Defendants in this case to discuss the package it has offered, to respond the Parties' myriad substantive and technical questions relating to the documents produced thus far and to propose alternatives to proceeding with yet another, redundant deposition of an FDB representative (such as providing an authenticating records certification or other affidavit).

24.     The information the parties seek here is readily available to them.  FDB's data collection and reporting practices are not secret.  In fact, FDB publishes its drug price collection and reporting practices and policies to its customers and to the general public in a variety of media, including the electronic and printed manuals for FDB's *NDDF Plus* and FDB's *PricePoint* and *PriceProbe* publications—all available versions of which have been (or will be) produced to the subpoenaing Parties in this case.  Moreover, FDB's drug price collection and reporting practices/policies are described on FDB's publicly accessible Web site, located at: *http://www.firstdatabank.com*.  Moreover, to the extent that publicly-available information and the documents (including deposition transcripts) already produced (or soon to be produced) by FDB do not wholly satisfy the Parties, they may seek additional pricing information directly from the sources of the prices—the manufacturers and the wholesalers.

**FDB's Production of Documents to Plaintiffs**

25.     In response to the pending motion to compel filed by Defendants Novartis and Bristol-Myers Squibb, Plaintiffs have submitted papers to advise the Court of their position that they should have an independent right to depose Ms. Morgan at length.  In so doing, Plaintiffs attempt to portray FDB as less than diligent in producing documents, but nothing could be further from the truth.  Plaintiffs' initial request broadly demanded over 30 categories of documents, requiring at least a dozen FDB employees in two different states to search for, collect

and review the massive amount of material requested. Responsive documents have been

produced in waves as they become available. FDB has already produced more than 28,000

documents, in addition to several CD-ROMs, and is continuing its document collection efforts in

consultation with counsel for Plaintiffs.

26. In their August 13, 2004 submission, Plaintiffs nonetheless assert in the most

conclusory terms that FDB has not yet produced all "documents relating to 'surveys'" conducted

to develop AWPs, all of its "monthly publications," all of its "customer contracts," all documents

on "pricing policies" and the like. Plaintiffs' concerns have consistently been addressed in our

meet and confer sessions, and their current criticisms are completely out of bounds. For

example:

- Plaintiffs claim that FDB has not produced all of its "monthly publications" but many of these publications deal with the clinical effects of drugs, drug testing data, nutritional information, and other subjects having nothing to do with drug pricing. FDB is producing all information from its monthly publications about the pricing of responsive drugs and manufacturers that it can reasonably locate.

- Plaintiffs claim that FDB has not produced all documents relating to its "surveys" taken in developing AWPs, but FDB has produced detailed testimony about the conduct of these surveys, and sworn confirmation that no documentation exists other than what is reflected in the databases containing the actual data collected through the surveys—databases that FDB is producing.

- Plaintiffs claim that FDB has not produced all "problem ticket profiles," but FDB has turned over all such profiles it has located thus far. Plaintiffs know that FDB will be producing in the next wave of documents material obtained from its PACT System, a system for dealing with customer inquiries, and additional problem tickets may be located in those files. If so, any responsive tickets will be produced.

- Plaintiffs object that FDB has not produced all of the exhibits to Ms. Morgan's Texas deposition, but FDB was not originally provided copies of the exhibits. FDB has told counsel that it requested those exhibits from the parties to the Texas case, and they will be turned over as soon as they are received. FDB also will gladly assist Plaintiffs in obtaining the exhibits from Texas directly, if they so choose.

27.     There is, in short, no basis for any suggestion that FDB is not providing all that may appropriately be required of it. ***FDB has agreed to produce ALL documents that relate to the pricing of the specific drugs at issue and the pricing policies of the specific drug manufacturers of interest that can reasonably be located through a diligent search of its files.*** This is the same production FDB has offered to scores of other parties seeking drug pricing information from its files, and this is all that FDB can reasonably be required to produce here.

28.     Plaintiffs' contentions about the supposed failure to produce FDB's "full database of published prices" is particularly misdirected. FDB already has produced several CD-ROMs relating to its *NDDF Plus* file (*i.e.*, the "database")—each CD-ROM containing an extensive table of contents and a user manual with detailed information about the composition of the database for various years of data. The *NDDF Plus* file itself is huge, but FDB has nevertheless produced in hard copy form all of its available *Blue Book* publications (for the years 1990/91 to 1995), which contain the raw pricing data that FDB since 1995 has made available to its customers electronically in the NDDF Plus file. FDB also is in the process of preparing CD-ROMs that will contain the raw pricing data (for every drug at issue in this litigation) from the *NDDF Plus* file for every year since 1995. Collecting and storing this archived data, and preparing it for production to the Parties in this case, has been an expensive and time-consuming activity for First DataBank. I understand that the electronic data FDB will provide to the Parties can be opened and evaluated using Microsoft Access software, but Plaintiffs will need to construct a database out of the raw data in the format of their choosing, just as is done by FDB's paying subscribers. (A subscription for the raw data being demanded by Plaintiffs would cost about $18,000 for every year of data provided.) **FDB has no intention of charging the Parties in this case the commercial value of the data.**

11

29.     The pricing data is being produced in this manner because many of the Parties have insisted on receiving the raw data for their own inspection and analysis.

30.     Again, there is no question about FDB's diligent effort to provide the information reasonably required by the litigants, and there is equally no question about the excessive and improper burdens the parties seek to impose on FDB. For example, Plaintiffs complain about FDB's failure to produce all email, but we have advised counsel that it would require well over 400 hours just to retrieve and review the email for the past 60 days, which is all that FDB's system maintains. FDB has offered to search the email of certain employees most likely to have any responsive pricing information, and continues to search for a way to provide what Plaintiffs may reasonably seek without unduly burdening FDB.

WHEREFORE, FDB respectfully requests the Court to deny the motion by Novartis and Bristol-Myers Squibb to compel further discovery from FDB, and to enter an order limiting the scope of all outstanding subpoenas to the documents, testimony and authenticating affidavit already offered by FDB, or alternatively limit any additional discovery to facts specifically demonstrated by a party to be essential to the case, not already disclosed, and not available from other sources.

13

I declare under penalty of perjury that the foregoing is true and correct.


Robert J. Hawley


Sworn to and subscribed before me
this __18__ day of August, 2004


Notary Public


ALIA SMITH
Notary Public, State of New York
No. 02SM6100086
Qualified in New York County
Commission Expires Oct. 14, 2007