# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## (UNDER SEAL)

## PLAINTIFFS' SUPPLEMENT TO THEIR OPPOSITION TO B. BRAUN OF AMERICA'S MOTION TO DISMISS THE AMENDED MASTER CONSOLIDATED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL B. BRAUN OF AMERICA TO MAKE SUPPLEMENTAL 30(B)(6) DESIGNATION



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

### PLAINTIFFS' SUPPLEMENT TO THEIR OPPOSITION TO B. BRAUN OF AMERICA'S MOTION TO DISMISS THE AMENDED MASTER CONSOLIDATED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL B. BRAUN OF AMERICA TO MAKE SUPPLEMENTAL 30(B)(6) DESIGNATION

Plaintiffs, by their attorneys and pursuant to this Court's February 24, 2004 Order, respectfully submit the following Supplement to their opposition to B. Braun of America's ("BBA's") Motion to Dismiss the Amended Master Consolidated Complaint. In addition, because of BBA's complete failure to investigate certain areas of inquiry identified in plaintiffs' Amended Notice of Rule 30(b)(6) Deposition of B. Braun of America, Inc. Regarding Jurisdictional Issues, and because of BBA's improper refusal to respond to questions on the basis of the attorney-client privilege, plaintiffs also move this Court for an order compelling BBA to make a supplemental 30(b)(6) designation, and for that deposition to occur at BBA's expense.

### I.     Introduction

On February 24, 2004, this Court ordered plaintiffs to "respond to the issues of personal jurisdiction and whether the service of B. Braun of America relates back to the service of B. Braun Medical, Inc. ("BBM")" by August 24, 2004. In response to this Court's request, plaintiffs submit the following Supplement to their opposition to BBA's motion to dismiss the Amended Master Consolidated Complaint ("AMCC"), which establishes that the service of BBA

2

relates back to the service of B. Braun Medical, Inc. ("BBM"), as well as the basis upon which this Court may assert personal jurisdiction over BBA.

In addition, in order to gather further information on this Court's jurisdiction over BBA, and to inquire into BBA's claim that it is not the proper B. Braun party to this litigation, plaintiffs noticed the deposition of BBA pursuant to Fed. R. Civ. P. 30(b)(6) to inquire into "jurisdictional issues." That deposition was taken on August 17, 2004. Because BBA failed to conduct the due diligence necessary to testify as to matters known or reasonably available to BBA and because BBA, through its counsel, refused to answer questions regarding BBM simply because the BBA designee was also an attorney for BBM, plaintiffs were unable to discover the information they requested. Therefore, plaintiffs likewise move to compel BBA to make a supplemental 30(b)(6) designation for the areas of inquiry for which BBA either failed to inquire or refused to answer.

## II. Supplement to Plaintiffs' Opposition to BBA's Motion to Dismiss AMCC

In its motion to dismiss the AMCC (filed Aug. 1, 2003), BBA contended that (a) BBA had not been properly served and (b) this Court did not have personal jurisdiction over BBA. In their opposition, plaintiffs stated that BBA had been properly served because, under the identity of interest doctrine, BBA had notice of the MCC through its subsidiary, BBM (who was named in the MCC). Specifically, plaintiffs contended that, under the judicially-created identity-of-interest doctrine, "a new party may be added 'when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced.'" *Moses v. Joint Frost, M/V*, C.A. No. 91-11247-WF, 1993 U.S. Dist. LEXIS 5678, at *4 (D. Mass. Apr. 21, 1993) (Wolf, J.) (quoting *Jimenez v. Toledo*, 604 F.2d 99, 102 (1st Cir. 1979)) (holding doctrine was satisfied where

3

original party was alleged to have been "owned, operated, and controlled" by added party).[1] In addition, plaintiffs noted that "[t]he substitution of such [identity-of-interest] parties . . . is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based." *Young v. Lepone*, 305 F.3d 1, 15 (1st Cir. 2002) (citations omitted). Here, where the AMCC allegations against BBA are substantially similar to the MCC allegations against BBM, the assertion of the identity of interest doctrine is proper.

Moreover, this Court should extend personal jurisdiction over BBA as the parent corporation of BBM. Personal jurisdiction over a parent corporation is found based upon the acts of its subsidiary where there is "clear evidence that the parent in fact controls the activities of its subsidiary." *Cabot Safety Intermediate Corp. v. Arkon Safety Equip., Inc.*, 12 F. Supp. 2d 180, 181 (D. Mass. 1998) (citing *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)). Specifically, Massachusetts courts have employed a two-prong test two determine whether the corporate form should be disregarded for personal jurisdiction purposes, taking into account:

> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their representatives are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748, 752 (Mass. 1968). Under this test, "significant exercise of control by an out-of-State parent corporation over a subsidiary and significant intermingling of officers and directors between parent and subsidiary have served

---

[1] For the Court's convenience, plaintiffs have provided copies of all unreported decisions in an attached Appendix.

4

to establish jurisdiction in the State where the subsidiary is conducting its business operations." *Kleinerman v. Morse*, 533 N.E.2d 221, 225 (Mass. App. 1989). Accordingly, in *Cabot Safety*, the court pierced the corporate veil because the parent corporation owned all of the stock of its subsidiary, the companies' directors were identical and resided in the same place and the companies were involved in the same business. *See Cabot Safety*, 12 F. Supp. 2d at 181.

Likewise, this Court should find that it has personal jurisdiction over BBA because both prongs of the test are satisfied.

1. BBA is a holding company. *See* Ex. 1 (Dep. of Cathy Codrea ("Codrea Tr."), at 8:3-4; 22:15-23:8). Although it does not do any business itself, it operates through its subsidiaries. Ex. 2 (Ex. 7 to Codrea dep.); Ex. 1 (Codrea Tr., at 83:17-86:15). Its subsidiaries include BBM. Ex. 3 (*IVAX Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1311 n.1 (11th Cir. 2002)). BBM manufactures at least some of the AWPIDs.[2] Ex. 1 (Codrea Tr., at 50:4-14). BBA owns one hundred percent (100%) of BBM's stock. Ex. 1 (Codrea Tr., at 17:7-16; 26:15-27:10) and Ex. 4 (Exhibit 2 to Codrea deposition).

2. BBA provides financing to and invests in its subsidiaries, including BBM, which manufactures at least some of the AWPIDs. *See* Ex. 1 (Codrea Tr., at 83:17-86:15); Ex. 4 (Ex. 7 to Codrea dep, Dun & Bradstreet report).

3. BBA and BBM share the same principal place of business. *See* Ex. 1 (Codrea tr., at 15:21-16:15; 17:4-16) and Ex. 4 (Exhibit 2 to Codrea deposition).

4. BBA and BBM share officers and directors. BBA's directors are Ludwig George Braun, Caroll H. Neubauer, and Professor Doctor Doctor Doctor Ungethum. Ex. 1 (Codrea Tr., at 21:7-18). BBM's directors include at least Caroll H. Neubauer. *Id.* at 23:9-21.

    BBA's officers include Cathy Codrea (Assistant Secretary), Charles DiNardo, Peter Wood (Treasurer), Caroll Neubauer, and Bruce Hugel. Ex. 1 (Codrea Tr., at 21:20-22:14). BBM's officers include Cathy Codrea (Assistant Secretary);

---

[2] As defined in Plaintiffs' Amended First Request for Production of Documents to Astrazeneca, Aventis, Dey, Fujisawa, Abbott, Baxter, Boehringer, Braun, BMS, GSK, Immunex, Pharmacia, Schering-Plough and Watson dated June 19, 2003, AWPID is defined as "AWP Inflated Drugs," and describes the drugs set forth in Appendix A of the AMCC. *See* Ex. 5 (Plaintiffs' Amended First Request for Production of Documents to Astrazeneca, Aventis, Dey, Fujisawa, Abbott, Baxter, Boehringer, Braun, BMS, GSK, Immunex, Pharmacia, Schering-Plough and Watson, at 3).

5

   Charles DiNardo (Secretary), Caroll Neubauer, and Bruce Hugel. *Id.* at 23:9-25:2.

5. BBA receives financial reports from BBM. Ex. 1 (Codrea Tr., at 27:11-28:5).

6. As a shareholder in BBM, BBA in some manner receives revenues or profits from BBM. Ex. 1 (Codrea Tr., at 28:6-29:14).

7. There are employees of BBM who manage the day-to-day affairs of BBM who are likewise directors of BBA. Ex. 1 (Codrea Tr., at 29:16-34:22). One of these individuals includes Caroll H. Neubauer. *Id.* at 35:1-8.

8. Mr. Neubauer (a BBA officer, *see* #4, above) attends meetings at BBM. Ex. 1 (Codrea Tr., at 36:1-38:14). Mr. Hugel (a BBA office, *see* #4 above) attends meetings at BBM. Ex. 1 (Codrea Tr., at 38:16-39:9). Mr. DiNardo attends meetings at BBM. Ex. 1 (Codrea Tr., at 39:10-41:22).[3]

As set forth above, there is a confused intermingling of the two companies' activities. Not only does BBA own all of BBM's stock, the two companies share virtually all of the same directors and officers. Indeed, the two companies' principal places of business are located in the same building. In addition, BBA actively and directly participates, through its representatives, in the conduct of BBM's business. BBA's officers and directors are directly involved in the day-to-day affairs and management of BBM. Moreover, BBA finances BBM's operations and receives regular reports regarding its business, as well as revenue. As in *Cabot Safety*, these facts demonstrate both a "confused intermingling" of the corporate forms, as well as direct control by BBA over the activities of BBM. *See Cabot Safety*, 12 F. Supp. 2d at 181. These same facts establish that there is an identity of interest between BBA and BBM sufficient to establish that BBA was served with the AMCC under the identity of interest doctrine. *Young*, 305 F.3d at 15.

---

[3] Because of Ms. Codrea's gamesmanship, who claimed that she did not know what "regular meetings" were, plaintiffs do not know how often Messrs. Neubauer, Hugel, or DiNardo attended BBM meetings. *See* Ex. 1 (Codrea Tr., at 36:15-41:22).

### III. Motion to Compel

To the extent that plaintiffs lack information about the applicability of the identity of interest doctrine or the propriety of asserting personal jurisdiction over BBA, that lack of knowledge is directly attributable to BBA's failure to comply with plaintiffs' Rule 30(b)(6) Notice and BBA's improper assertion of the attorney-client privilege.

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is "very broad." *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001). Rule 30(b)(6) requires a designated person with knowledge of specified topics to testify on behalf of a corporation on matters within the corporation's knowledge. *McLellan Highway Corp. v. United States*, 95 F.Supp.2d 1, 10 (D. Mass. 2002) (Woodlock, J.). A party responding to a Rule 30(b)(6) Deposition Notice must identify knowledgeable individuals as corporate designees who must make a reasonable attempt to ascertain *information reasonably available* to the organization. *Big Top USA, Inc. v. The Wittnern Group*, 183 F.R.D. 331, 339 (D. Mass. 1998) (Saris, J.) "Producing an unprepared witness is tantamount to a failure to appear at a deposition" *Calzaturificio S.C.A.R.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 39 (D. Mass 2001) (Collings, J.).

Plaintiffs' Rule 30(b)(6) Notice to BBA, as amended, asked BBA to designate a representative to testify on six areas of inquiry:

1. The state of incorporation, principal place of business, formation of, and any persons or entities that have more than a 10% ownership in the following companies:

    (a) B. Braun of America, Inc.
    (b) B. Braun McGaw, Inc.
    (c) B. Braun Medical, Inc.

2. The relationship, if any, between and among any of the companies identified in Area of Inquiry #1.

3. All AWPIDs manufactured, distributed, marketed or sold by each of the companies identified in Area of Inquiry #1.

7

4. All contracts or agreements regarding the licensing, distribution, or marketing of any AWPID between any of the companies identified in Area of Inquiry #1.

5. Any and all sales, advertising, marketing, distribution, or manufacturing of AWPIDs in the State of Massachusetts by any of the companies identified in Area of Inquiry #1.

6. All documents relating to or reflecting any of the above Areas of Inquiry.

*See* Exs. 6 (Notice of Deposition) and 7 (Amended Notice). In response to plaintiffs' Notice, BBA designated Cathy L. Codrea, BBA's Assistant Secretary and Director (manager, not board member) as well as BBM's Assistant General Counsel, Assistant Secretary, and Corporate Compliance Officer. *See* Ex. 1 (Codrea Tr., at 7:8-20). Despite Ms. Codrea's roles at both BBA and BBM, Ms. Codrea refused to answer any questions regarding Area of Inquiry No. 3 – all AWPIDs manufactured, distributed, marketed or sold by the three B. Braun entities in plaintiffs' amended notice – with regard to BBM. At first, Ms. Codrea claimed that she could not determine whether AWPIDs were manufactured by BBM without having NDC codes in front of her. Thereafter, when plaintiffs' counsel provided her with a document showing the NDC codes, Ms. Codrea refused to provide this information on the basis that she gathered the responsive information in her role as an attorney and therefore *the underlying information* was protected by the attorney-client privilege. *See* Ex. 1 (Codrea Tr., at 46:16-48:16; 49:10-57:3). Ms. Codrea similarly, when it suited her, refused to provide other factual information about BBM (such as the identity of its distributors) on the basis of the attorney-client privilege. *See* Ex. 1 (Codrea Tr., at 64:10-66:14); *but see id.* at 67:9-70:1; 70:15-73:18 (testifying with regard to some factual questions about BBM). Both the refusal to answer on the basis that BBA did not have to inquire into BBM's business and the refusal to answer on the basis of the attorney-client privilege are improper.

8

### A. BBA Failed To Comply With Fed. R. Civ. P. 30(b)(6) and Designate A Witness With Knowledge About AWPIDs Manufactured by BBM

BBA failed to comply with Fed. R. Civ. P. 30(b)(6) and designate a witness who would testify regarding AWPIDs manufactured by BBM. Fed. R. Civ. P. 30(b)(6) provides that "the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf... The persons so designated shall testify as to matters known or reasonably available to the organization." Clearly BBA *could have* designated such a witness. For example, although Ms. Codrea spoke to David Pieringer, BBM's Controller, to prepare for her deposition, she only inquired about Areas of Inquiry 1 and 2 with him. Ex. 1 (Codrea Tr., at 12:2-7; 15:6-20). Ms. Codrea could have spoken to Mr. Pieringer, or any other employee of BBM, regarding the Area of Inquiry No. 3. BBA simply chose not to do so.[4]

"[T]he law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation." *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001) (holding that even though records were in possession of corporation's professional accountant, 30(b)(6) witness should have educated himself on those documents, because they were "reasonably available" to the corporation). Further, while acknowledging that there was no direct authority "addressing the specific question of whether a corporation receiving a Rule 30(b)(6) notice is obligated to prepare its witness with both the entity's own knowledge and the knowledge of its subsidiaries and affiliates," one federal court recently concluded that a corporation receiving a 30(b)(6) notice should question subsidiaries regarding the topics in the notice. *See Twentieth Century Fox Film*

---

[4] Similarly, although Dun and Bradstreet provides a report for an entitled called B. Braun McGaw, Inc., *see* Ex. 8 (Exhibit 3 to Codrea dep.), Ms. Codrea was not familiar with such an entity and had no knowledge of its existence. *See* Ex. 1 (Codrea Tr., at 18:22-21:6). She likewise could not testify whether *all* of the entity formerly known as McGaw, Inc. had been merged into B. Braun Medical, Inc. *Id.* at 79:10-82:18.

*Corp. v. Marvel Enters., Inc.*, 01 Civ. 3016 (AGS) (HBP), 2002 U.S. Dist. LEXIS 14682 (S.D.N.Y. Aug. 6, 2002). The Court reasoned that the duty of inquiry under Fed. R. Civ. P. 30(b)(6) was the same as the inquiry under Fed. R. Civ. P. 33 or 34, which require corporations to find information within their possession, custody, or control. In so holding, the Court explained that:

> I conclude that the same principle that is applied to interrogatories and document requests should also be applied to determine the scope of a party's obligation in responding to a Rule 30(b)(6) notice of deposition. There is no logical reason why the sources researched by a party in responding to a discovery request should be dependent on the particular discovery vehicle used; in all cases, the responding party should be obligated to produce the information under its control. Application of this principle to Rule 30(b)(6) discovery is not only consistent with the judicial interpretations of the other discovery provisions of the Federal Rules of Civil Procedure, it is also consistent with the purpose of Discovery – 'to make a trial less of a game of blind man's buff [*sic*] and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'

*Id.* at \*\*13-14 (citations omitted). *See also Green Constr. Co. v. Kansas Power & Light Co.*, Case No. 87-2070-S, 1990 U.S. Dist. LEXIS 10669, at \*\* 2-4 (D. Kan. July 6, 1990) (allowing 30(b)(6) deposition to go forward, even though it required obtaining information from noticed party's subsidiaries, in order to resolve alter ego issue).

Indeed, BBA's position at Ms. Codrea's deposition that BBM documents were not "reasonably available" to BBA is inconsistent with the position BBA has taken with regard to producing documents in this litigation. Namely, BBA has instructed BBM to make available and produce documents responsive to plaintiffs' document requests. *See* Ex. 9 (B. Braun of America, Inc.'s Supplemental Objections and Responses to Plaintiffs' Interrogatories, at 2) ("BBA has requested that its separately incorporated subsidiary, B. Braun Medical, Inc., ("BBM") make available and produce documents that information that would be responsive to the Document

Request and Interrogatories as if they had been property directed to and served upon BBM, without wavier of BBA's position that it is not properly served before this Court."). There is no reason why BBA could not have done similarly in educating Ms. Codrea about the areas of inquiry in plaintiffs' 30(b)(6) Notice. Indeed, under analogous decisions by this Court, BBA was obligated to do so. *Calzaturficio*, 201 F.R.D. at 38 (holding in a different factual context that 30(b)(6) standard was same as standard under F.R.C.P. 34, requiring parties to produce documents in their control).

### B. The Witness Designated by BBA Improperly Refused to Answer Questions On the Basis of the Attorney-Client Privilege

As explained above, Ms. Codrea (together with her counsel) also refused to provide factual information regarding BBM on the basis of the attorney-client privilege. In explaining her basis for refusing to testify, Ms. Codrea and her attorney stated as follows:

> Ms. Codrea: My sole capacity is legal counsel for B. Braun Medical, Inc. I always render legal advice for B. Braun Medical, Inc. That's my capacity. Everything I learn is with respect to being a lawyer at B. Braun Medical, Inc.
>
> Q: So, it's your testimony that everything you do in connection with B. Braun Medical is giving legal advice?
>
> Ms. Codrea: Everything --
>
> Mr. Attridge: Objection as to form.
>
> Ms. Codrea: Everything is in connection with my role as counsel and actually I'm here right now today as a representative for B. Braun of America Inc. not to answer questions of the attorney-client privilege with respect to B. Braun Medical, Inc. So, I would appreciate it if we would keep the questions related to my role as a representative for B. Braun America, Inc.

11

> Q: Actually, I'm going to ask you questions about B. Braun Medical, Inc. because that is what the notice provides and I need to establish a record of your refusal to respond.
>
> Mr. Attridge: No, she's not refusing to respond and that's an inappropriate statement on your part. She's here as a representative of B. Braun of America and if you have inquiries about that, you should make them. But you shouldn't assume that you can ask someone who is a B. Braun Medical lawyer questions that invade the attorney-client privilege.

Ex. 1 (Codrea Tr., at 65:6-66:14). Later on in the deposition, plaintiffs' counsel attempted to inquire how or if Ms. Codrea has prepared to respond to Area of Inquiry Number Three with regard to BBM. She answered the question that "With respect to my capacity as legal counsel for B. Braun Medical, Inc., I have a lot of knowledge in this area with respect to defending this MDL litigation and subject to the attorney-client privilege, I cannot answer those specific questions that I have educated myself on in order to help defend the company in this litigation." *Id.* at 78:5-12. Similarly, although she eventually agreed to identify this information with the agreement that her testimony would not constitute a waiver of the attorney-client privilege, Ms. Codrea contended for a good portion of the deposition that she could not identify by whom certain individuals were employed on the basis of the attorney-client privilege. *See* Ex. 1 (Codrea Tr., at 86:19-95:12; 96:6-18; 96:22-117:6). Ms. Codrea's attorney likewise claimed that:

> I think you have a narrower view of the privilege than one applies. The privilege can apply to work she's doing as a lawyer which is not restricted to legal advice. It can relate to an exchange of facts for the purposes of legal advice. It can relate to work product on connection with litigation, etc. It's not limited to directly giving legal advice.

*Id.* at 95:16-96:2.

Ms. Codrea's (and her attorney's) assertions of privilege were improper. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Savoy v. Richard A. Carrier Trucking, Inc.*, 176 F.R.D. 10, 13 (D. Mass. 1997). "For example, 'the client cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'" *Id.* (citations omitted). Specifically, although it is true that the attorney-client privilege applies in the corporate setting, "the attorney-client privilege attaches only when the attorney acts in that capacity. [Citation omitted.] It does not apply when in-house counsel is engaged in 'nonlegal work.'" *Borase v. M/A Com, Inc.*, 171 F.R.D. 10, 14 (D. Mass. 1997). While Ms. Codrea claimed that everything she did at BBM was rendering legal advice, such a claim is not credible. *See id.* ("Merely saying that he was so acting in a memorandum of law is patently insufficient to meet the burden. Neither can it be assumed."). In addition, "if an in house counsel has other nonlegal responsibilities, the party invoking the privilege has the burden of producing evidence in support of its contention that in-house counsel was engaged in giving legal advice and not in some other capacity at the time of the disputed conversations." *Id.* Because Ms. Codrea gave such evasive and often sarcastic answers to questions intended to establish the applicability of BBA's claimed privilege, BBA did not meet this burden.

Moreover, because BBA *chose* to designate a lawyer at its 30(b)(6) witness, BBA improperly hid information about BBM behind the attorney-client privilege. "When general counsel is designated by a party as one of its Rule 30(b)(6) witnesses, the witness is required to testify about the business operations of the corporation to the extent he is knowledgeable about

13

the operations, irrespective of the fact that he also serves as legal advisor for the corporation." *Sony Elec., Inc. v. Soundview Techns. Inc.*, 217 F.R.D. 104, 109-10 (D. Conn. 2002) (citing *Primetime 24 Joint Venture v. Echostar Communcs. Corp.*, 2000 U.S. Dist. LEXIS 779, at *6 n.2 (S.D.N.Y. Jan. 28, 2000)). "Questions posed which elicit purely factual information that is not in the possession of corporate officials and do not ask for the substance of communications between counsel and client are to be answered as they answers to these inquiries will not be disclosing legal advice of counsel." *Id.* at 110 (but holding that privilege was properly asserted because legal advice was sought). None of the questions posed by plaintiffs' counsel sought the contents of Ms. Codrea's legal advice; therefore, her refusals to answer were improper.

## IV.   Conclusion

Even the limited information plaintiffs have been able to obtain from BBA and BBM, and the authority set forth herein and in plaintiffs' original opposition to BBA's motion to dismiss, make clear both that BBA was properly served and that this Court has jurisdiction over BBA. To the extent that plaintiffs were unable to obtain this information, plaintiffs respectfully ask this Court to order BBA to designate a 30(b)(6) witness with full knowledge of the areas of inquiry in plaintiffs' 30(b)(6) Notice. *See Calzaturficio*, 201 F.R.D. at 41 ("Among the other remedies, the Court can require the corporate to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense.") (citations omitted). Plaintiffs also respectfully request leave to file a second supplement to their opposition to BBA's motion to dismiss the AMCC once plaintiffs have taken the deposition of BBA's supplemental 30(b)(6) designee.

WHEREFORE plaintiffs respectfully request that this Court enter an order (a) denying BBA's motion to dismiss and (b) granting plaintiffs' motion to compel; and (c) all other relief that this Court deems just and proper.

DATED this 24th day of August 2004.

By: *Steve W. Berman (rh)*
Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Kenneth A. Wexler
Elizabeth Anne Fegan
The Wexler Firm LLP
One N. LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel Heins
Brian Williams
Heins Mills & Olson, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

## **CERTIFICATE OF SERVICE**

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 24, 2004, I caused copies of PLAINTIFFS' SUPPLEMENT TO THEIR OPPOSITION TO B. BRAUN OF AMERICA'S MOTION TO DISMISS THE AMENDED MASTER CONSOLIDATED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL B. BRAUN OF AMERICA TO MAKE SUPPLEMENTAL 30(B)(6) DESIGNATION to be served by facsimile and Federal Express on:

> Daniel F. Attridge
> Kirkland & Ellis, LLP
> 655 Fifteenth Street, NW
> Washington, DC 20005
> Facsimile: (202) 879-5200

Dated: August 24, 2004

Steve W. Berman

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

***Counsel for Plaintiffs***

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

*Counsel for Plaintiffs*