# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | ) |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) ) |

MDL No. 146

CIVIL ACTION: 01-CV-12257 PBS

Judge Patti B. Saris

Chief Magistrate Judge
Marianne B. Bowler

## <u>DECLARATION OF STEPHEN D. KAUS IN SUPPORT OF OPPOSITION OF MCKESSON CORPORATION TO PLAINTIFFS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS</u>

Stephen D. Kaus declares:

1.      I am an attorney admitted into practice before the courts of the State of California and the four United States District Courts in California. I am a partner in the litigation department of Cooper, White & Cooper, L.L.P. I make the statements in this declaration of my own knowledge.

2.      I was first contacted by McKesson Corporation ("McKesson") with respect to this action on approximately June 15, 2004. I then researched the parties from the Court's internet site, and ran a conflict check. On June 18, 2004, there appearing to be no conflicts, I confirmed that our firm would represent McKesson. I reviewed the available documents and sent an introductory e-mail and attempted to telephone Scott George ("George"), the attorney who appeared to be the contact person with regard to the

1

subpoena issued by plaintiffs. I indicated in the e-mail that I would contact George by telephone the next workday, Monday, June 21, 2004.

3.      George and I spoke Tuesday, June 22, 2004. At that time, George and I discussed the fact that it was unclear whether McKesson had been served, but I agreed to accept service on behalf of McKesson as of that date. During that conversation, George acknowledged that he had agreed with Peter Huston that the previous objection letter would apply to the Amended Subpoena as well. Additionally, George acknowledged that the subpoena, as drafted, was extremely broad. George indicated that he would work with me to narrow the scope of the subpoena, so that he could obtain documents that were needed for the litigation without putting an undue burden on McKesson, a non-party. George briefly explained to me the various plaintiff groups and how the litigation was being managed by the Court. I agreed to cooperate to provide documents as soon as possible, but told George that it would take some time to determine which documents McKesson had and to agree to an appropriate scope for the subpoena. George seemed satisfied that I had contacted him on behalf of McKesson and, while he indicated that a class certification motion on five "fast track" defendants was due in September, he seemed willing to work with McKesson and me to arrive at a suitable document production.

4.      After this conversation with George, I commenced to work with Kimbir Tate of the McKesson law department to analyze the document request and what

2

documents McKesson might have that would be responsive.  I was surprised that three

days later, on Friday, June 18, 2004, George left me a voicemail at 8:15 a.m. EDT (5:15

a.m. PDT) and also sent the faxed letter attached hereto as Exhibit A.  I responded with a

letter that is attached hereto as Exhibit B, expressing my surprise at George's impatience,

given that the subpoena had only been served three days earlier and explaining the

difficulties in obtaining the type of historic information plaintiffs were seeking.

5.      I will not burden this Court with an account of every communication

between George and me, however, on June 28, 2004, I spoke with George at some length.

With regard to the transactional data, I explained that two years' worth of data was

readily available, but as I had previously indicated, data before that was extremely

difficult to retrieve.  George indicated that two years of data might be sufficient, but that

he needed to confer with co-counsel.  We discussed briefly how the data could be sorted.

Over a two year period there are approximately 11 billion transactions involved.  We

discussed that McKesson obtains information from First Databank and does not

knowingly participate in the setting of AWP.  We discussed the subpoena's request for

evidence McKesson had provided to other investigations.  I indicated that McKesson is

aware that the Congressional investigation was focussed on AWP, but otherwise does not

really know the extent to which AWP might have been involved in other investigations

with which McKesson cooperated.  I requested that George identify particular

investigations in which he was interested.  He indicated that California, Texas and

Arkansas did investigations into AWP also. Following my discussion with George of

June 28, McKesson identified the Texas investigation, located evidence that had been

given there, and provided it to me to review. As indicated below, these documents were

provided to plaintiffs.

6.      On June 30th, I spoke with George again and told him that McKesson was

working on the production. George said he was trying to gauge our good faith because the

"lead counsel" is "itching to make a motion." I told him to go ahead if he wanted, but as

far as I was concerned, we were served ten days previously and we were making progress.

7.      On July 11, 2004, I sent George the e-mail attached hereto as Exhibit C. In

that email, I discussed each of the categories of document requests, following up on my

telephone discussions with George. Most significantly, with regard to plaintiffs' category

1 request, I attempted to confirm that two years' of information would be satisfactory and

stated that the information could be sorted by drugs if George provided the NDC

identification numbers for each item. The e-mail also (1) offered to provide material that

had been produced to the Congressional investigation on AWP in 2003, (2) solicited

information about specific other investigations in which plaintiffs were interested, (3)

mentioned that McKesson does not have rebate or discount information, (4) said that

limited chargeback information is available electronically, and (5) repeated information I

had previously given to George over the telephone about McKesson's arrangements with

publisher First Databank.

4

8.      Following these communications, I worked with Ms. Tate and others at McKesson to assemble documents. I continued to communicate with George, generally requesting the NDC numbers so that the two years of transactional data could be obtained. George never responded in any comprehensive way to my email of July 11.

9.      Ten days later, on July 21, 2004, I sent a significant document production to George by overnight courier. This included (1) a compact disc containing contracts with several large pharmacy chains (Rite-Aid, Costco, Wal Mart, Target, Walgreens and Safeway); (2) an organizational chart of McKesson; and (3) a compact disc containing electronic copies of the materials McKesson supplied to the Congressional investigation into the 2003 congressional investigation into AWP. Attached as Exhibit D is my cover letter, again indicating that the two years of data would be forthcoming when George supplied the NDC numbers for the drugs at issue. Subsequently, we continued to talk and, among other things, I indicated that McKesson would provide the Texas documents.

10.     On August 16, 2004, although the documents indicated above had been supplied, and although George and I agreed that two years of transactional data would be supplied if plaintiffs provided the NDC numbers, plaintiffs filed this motion to compel. The memorandum repeatedly states that McKesson had provided no documents. Upon receiving the motion by facsimile, I called Anthony Sievert ("Sievert") of The Wexler Firm, who signed the cover letter sending it to me. I told Sievert that I was surprised to receive this motion and that the statements in it that McKesson had provided no

documents were false. Sievert replied that he "thought" that George had told him that McKesson had provided no documents. He promised to talk to George. I subsequently talked to George and asked that the motion be withdrawn, but George refused. Attached as Exhibit E is my August 16, 2004 letter to Mr. Sievert.

11.   George has refused to make arrangements to compensate McKesson for its efforts. Recently he told me that McKesson should undertake to provide documents, even if the expense ran into six figures, and then seek compensation through agreement or through the Court.

12.   I proceeded to gather further documentation, including, at George's request, the request for documents from the Congressional investigation, as well as the cover letter that accompanied McKesson's submission of documents to that investigation. I provided these documents on August 27, 2004, and also provided the transcripts of three day-long depositions that were taken of McKesson employees in the Texas a qui tam action, as well as approximately 2400 documents produced in that action. The cover letter from this production is attached as Exhibit F.

13.   I'm continuing to work to provide appropriate information. Specifically, McKesson will provide appropriate witnesses in response to a deposition subpoena plaintiffs issued under F.R. Civ. P. 30(B)(6). Additionally, since plaintiffs finally

supplied the majority of the NDC numbers on August 30, 2004, McKesson will provide two years of transactional data in electronic format.

I declare the foregoing to be true under penalty of perjury under the laws of the State of California, and that this declaration was signed at San Francisco, California on September 3, 2004.

Stephen D. Kaus

504233_1.DOC

7

Exhibit A

# SHELLER, LUDWIG & BADEY, P.C.

1528 WALNUT STREET
3RD FLOOR
PHILADELPHIA, PA. 19102

(215) 790-7300 • (800) 883-2299
FAX (215) 546-0942
WEB SITE WWW.SHELLER.COM

⊚ ⊙⊛⊜⊙ 202

STEPHEN A. SHELLER *
GEORGE J. BADEY, III **
BRUCE M. LUDWIG
SUSAN J. HERCZEG
NANCY G. RHOADS
JOHN P. KOPESKY**
JAMIE L. SHELLER†
ANNE E. PEDERSEN
JONATHAN SHUB
ALBERT J. BROOKS*•
MICHAEL H. DiGENOVA**
CHARLES E. MANGAN**
MARC B. AUERBACH
CAROLINE K. REEVES†
J. MARTIN FUTRELL††
SCOTT ALAN GEORGE**
LEANNE P. BROWN◊
BRIDGET CLARKE**
WILLIAM S. GORDON◊◊
AKIM F. CZMUS, M.D.

*ALSO MEMBER D.C. BAR
**ALSO MEMBER N.J BAR
†ALSO MEMBER D.C. & N.J. BAR
††ALSO MEMBER N.C., N.J. & N.Y. BAR
◊ALSO MEMBER FL. BAR
◊◊ALSO MEMBER N.J. & FL. BAR

WRITER'S DIRECT E-MAIL:

NEW JERSEY OFFICE
ONE GREENTREE CENTRE
SUITE 201
ROUTE 73 & GREENTREE ROAD
MARLTON, N.J. 08053
(856) 988-5590
FAX (856) 596-8359

OF COUNSEL
DAVID J. BERNEY

BARRY J. PALKOVITZ
McKEESPORT, PA 15132
(412) 678-9000

L. VINCENT RAMUNNO
WILMINGTON, DE. 19801
(302) 656-9400

DAVID M. ARBOGAST
BURLINGAME, CA 94010
(650) 344-7436

AFFILIATED
SCHMIDT, RONCA & KRAMER, P.C.
JAMES R. RONCA
209 STATE STREET
HARRISBURG, PA 17101
(215) 790-7303

June 25, 2004

**VIA FACSIMILE & REGULAR MAIL**

Stephen Kaus, Esquire
Cooper, White & Cooper, LLP
201 California Street, 17th Floor
San Francisco, CA 94111

RE:   **In re: Pharmaceutical Industry Average Wholesale Price Litigation
      (MDL No. 1456; USDC Dist Mass)**

Dear Stephen:

Failing to receive any response to my message today, I am writing to confirm the matters that have been resolved thus far in relation to the Amended Subpoena originally served on May 5, 2004 on your client, McKesson Corporation, in the above litigation.

As you may recall, I was engaged over the past month simply trying to begin a meaningful dialogue about your client's failure to comply with the Amended Subpoena. At our preliminary conversation earlier this week, we discussed a number of possible compromises relating to the scope of information sought under the Category 1 Requests, including limiting the clients covered by the search and focusing on information available electronically.

In light of the time that has passed since service of the Amended Subpoena, however, I urged your client to immediately begin collecting documents responsive to Categories 4 and 5, as these Requests were not controversial in scope, and the documents responsive to these requests

Stephen Kaus, Esquire
June 25, 2004
Page Two

should be readily organized and available.  Similarly, with the assumption that the universe of responsive documents was relatively limited, I urged your client to consider immediate production of documents responsive  to Category 3 Requests.

I reiterate my earlier statement that your client's production of documents in response to the Amended Subpoena is long delinquent.  My inability to close this week with any further agreement or progress further prejudices my clients.  To ensure that this matter moves forward, a Motion to Compel may follow shortly.

Very truly yours,

Scott A. George

SAG/hv

cc:     Ken Wexler, Esquire

Exhibit B

12.60 - 500C/

# COOPER, WHITE & COOPER LLP

A LIMITED LIABILITY
PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
FACSIMILE (415) 433-5530
WWW.CWCLAW.COM

ATTORNEYS AT LAW

201 CALIFORNIA STREET SEVENTEENTH FLOOR

SAN FRANCISCO CALIFORNIA 94111

(415) 433-1900

CONTRA COSTA OFFICE
1333 N CALIFORNIA BLVD
WALNUT CREEK
CALIFORNIA 94596
(925) 935-0700

June 28, 2004

By Facsimile (215-549-0942) and United States Mail

Scott A. George, Esq.
Sheller, Ludwig & Badey
1528 Walnut Street
Third Floor
Philadelphia, Pennsylvania 19102

Re:    In re:  Pharmaceutical Industry AWP Litigation (MDL No. 1456; USDC
       District of Massachusetts

Dear Mr. George:

       I am responding to your telephone message left at 5:15 a.m. Friday, our
time, and your follow up letter, decrying my lack of a response, that I received shortly
after 2 p.m..  For your information, in the interim, aside from eating breakfast, I was at a
hearing of the San Francisco Board of Supervisors representing the Bar Association of
San Francisco and was unable to call you back.  I received the voicemail that you left at
6:15 a.m. this morning, Pacific Daylight Time, and I appreciate its more conciliatory
tone, but I wanted to send this letter to clarify the situation.

       As I told you when we spoke on Tuesday June 22nd, McKesson will
endeavor to cooperate with your document subpoena.  As you acknowledged, the
subpoena is extremely broad.  Taken literally, it probably would encompass the majority
of McKesson pharmaceutical transactions for the past thirteen years.  You and I agreed to
try and determine which items could be responded to quickly and which would need to be
narrowed.  You shared your ideas for narrowing the subpoena with me and I indicated
that I would discuss the issues with my clients and get back to you.  I also told you that
my understanding was that McKesson was responding to a number of other inquiries on
various matters, some from state or federal government law enforcement agencies and
some from litigation pursuant to court order or subpoena, and that it could take an
extended period before the records could be accessed.

Scott A. George,
June 28, 2004
Page 2

As I indicated on your voicemail, if you can limit your request to the two years preceding the gathering of the data, you can have a response within a week or two. If that is not satisfactory, it may be difficult to provide you with information in advance of your September class motion deadline. Beyond two years, the historical information you seek would have to be farmed from the tapes at a single McKesson location ("Data Center") where all orders are received and then transmitted to regional distribution centers ("Distribution Centers"). There are approximately fifteen million line items a day. This information is not sorted in any way, so the limitations you suggested are not really helpful or practical. A computer program has to be written to search for whatever is sought, and then the program has to be run, which can take days or weeks, depending on the extent of the search. Even then, the information will not be complete, because it is set out by NDC numbers that change over time. McKesson has no historic information on previous NDC numbers, so you will have to provide them. I understand that some NDC numbers have been reused. Once the initial request is logged, McKesson uses numbers that refer to the location of the drug in the Distribution Center, not the NDC number. These numbers change even more rapidly, so the Data Center tapes are the only real source of the information you seek.

The data retrieval also is not particularly reliable. Although I believe the same program has been used over the years, the program and coding language have been updated periodically and older data may not be accessible. Prior to 1998, the last time that a major change occurred, there are significant validity problems. Additionally, all of the information is on a single set of tapes that is presently in use and needed for other requests that precede yours. The cost of historic data retrieval is considerable and McKesson expects to be compensated pursuant to the Federal Rules. To get a report on a single drug takes 60-80 hours including writing a search request, debugging and conducting the search. Several years ago, McKesson determined that its search cost was $50 per Distribution Center per month searched. It is higher now. What you are requesting would cost hundreds of thousand of dollars.

You are correct that the items in the latter categories of your subpoena, like contracts, are more easily obtained and McKesson is endeavoring to locate them for production. I will call you during next week to discuss what has been located.

Finally, I must take issue with the scolding tone of your letter and your assertion that McKesson is "long delinquent." As a courtesy, I accepted service of the Amended Subpoena on behalf of McKesson <u>as of our conversation last Tuesday, four days ago</u>. I spent several hours yesterday meeting with members of the McKesson legal

Scott A. George,
June 28, 2004
Page 3

department regarding the subpoena, your limiting suggestions and the logistics of a response.  I am happy to cooperate, but I cannot stand by while you write letters obviously intended as exhibits to a motion and that mischaracterize what has occurred.

Thank you for your consideration in this matter.

Sincerely yours,

Stephen Kaus

4995112

# COOPER, WHITE & COOPER LLP
### ATTORNEYS AT LAW
201 CALIFORNIA STREET SEVENTEENTH FLOOR
SAN FRANCISCO CALIFORNIA  94111
(415) 433-1900

A LIMITED LIABILITY
PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
FACSIMILE (415) 433-5530
WWW.CWCLAW.COM

CONTRA COSTA OFFICE
1333 N CALIFORNIA BLVD
WALNUT CREEK
CALIFORNIA  94596
(925) 935-0700

## TELECOPIER COVER SHEET

DATE:          June 28, 2004                    TIME:          10:16 AM

| TO: | COMPANY: | FAX NO.: |
|-----|----------|----------|
| Scott A. George, Esq. | Sheller, Ludwig & Bady, P.C. | 215-546-0942 |

RE:     **McKesson subpoena**

**FROM:**  Stephen Kaus

Total pages transmitted (including this page):          4

## MESSAGE/COMMENTS/INSTRUCTIONS

Please see following correspondence.

498846.1

[  ] IF THIS BOX IS CHECKED, THIS MESSAGE IS INTENDED ONLY FOR THE USE OF
THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN
INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM
DISCLOSURE.  If the reader of this message is not the intended recipient, you are hereby notified
that any dissemination, distribution, or copying of this communication is strictly prohibited.  If
you have received this communication in error, please notify us immediately by telephone and
return the original message to us by mail.  Thank you.

IF YOU DO NOT RECEIVE ALL OF THIS TRANSMISSION OR IF YOU ENCOUNTER ANY PROBLEMS
DURING THIS TRANSMISSION, PLEASE PROMPTLY CONTACT THE TELECOPIER OPERATOR AT
(415) 433-1900 FOR ASSISTANCE.

OPERATOR:

Exhibit C

## Stephen Kaus

**From:** Stephen Kaus
**Sent:** Sunday, July 11, 2004 8:24 PM
**To:** 'Scott George'
**Subject:** Your subpoena

Scott

The follows up on our discussion . Parenthetically, there is no need to chide me in each communication for allegedly being dilatory. Service was about three weeks ago, McKesson is doing its best to be cooperative and we are working to narrow your request, which taken at face value appears to call for over a billion documents. As long as we appear to be making a record, I categorically reject your characterization of our discussions as "exceedingly protracted."

**Category One:** On Request Nos. 1-4 which ask for prices, rebates and other transaction costs for the identified drugs, I have explained that data for the previous two years is relatively accessible (2-3 weeks) and prior data really is not accessible without time-consuming, expensive and less than accurate retrieval procedures. You indicated that the two years of information would be satisfactory.

I am informed that the output would be in a .txt file, which could be sorted by drugs if you provide the NDC numbers and would show the item, dosage, unit size, number of units sold, invoice number and date. I have not yet determined the cost.

On Request No. 2 for "net transaction cost", McKesson has no information on rebates and therefore cannot supply this information.

On request No. 3 for rebates, discounts, chargebacks and other adjustments, McKesson does not have rebate or discount information. Charge back information is electronic for about the last 1 to 2 years. However, the information is not very acessable it may take 6 weeks at a minimum to get information off of the system . Paper records are available in Carrollton Texas if you wish to review them.

**Category Two:** As we discussed, McKesson does not participate in the setting of AWP. McKesson contracts for daily information from First DataBank regarding pricing that it uses in preparing invoices. These updates are obtained electronically and are overwritten by each day's update. For approximately five years McKesson has not participated in any surveys of drug pricing and during the relevant period, McKesson has not known the AWP, but rather the price at which actual transactions occurred for each item. McKesson therefore does not believe that it has any documents responsive to Requests 5, 6 and 7 and the burden of locating any stray documents would far outweigh their relevance.

On Request No. 8 for all contracts with publications and communications with publications concerning the identified drugs . McKesson does not have any such contracts relating to

specific drugs.  There is a contract to purchase data from First DataBank.

**Category Three:** McKesson will provide the agreements that it can locate. You and I will need to work out how many agreements is appropriate along the lines of your previous proposal.

**Category Four:** McKesson will provide the material that it provided last year to a Congressional Investigation on AWP. If you are interested in other particular investigations, we will investigate further, but McKesson is unaware of any other investigations into AWP.

**Category Five:** McKesson will provide an organizational chart. I am informed that McKesson has no wide-reach document retention policy. McKesson complies with different governmental and business requirements for each type of data.

----------------------------------------------------

Stephen Kaus
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, California 94111
E-mail: skaus@cwclaw.com
Telephone: 415-433-1900; 415-765-0378 (inside)
Mobile:  415-606-5970
Facsimile:  415-433-5530
================================================

This message contains information which may be confidential and privileged.  Unless you are the addressee (or authorized to receive messages for the addressee),  you may not use, copy or disclose to anyone the message or any information contained in the message.  If you have received the message in error, please advise the sender by reply e-mail and delete the message.  Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document. Thank you very much.

Exhibit D

# COOPER, WHITE & COOPER LLP

ATTORNEYS AT LAW

201 CALIFORNIA STREET SEVENTEENTH FLOOR

SAN FRANCISCO CALIFORNIA 94111

(415) 433-1900

A LIMITED LIABILITY
PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
FACSIMILE (415) 433-5530
WWW.CWCLAW.COM

CONTRA COSTA OFFICE
1333 N CALIFORNIA BLVD
WALNUT CREEK
CALIFORNIA 94596
(925) 935-0700

July 21, 2004

By Federal Express

Scott A. George, Esq.
Sheller, Ludwig & Badey
1528 Walnut Street
Third Floor
Philadelphia, Pennsylvania 19102

Re:     In re:  Pharmaceutical Industry AWP Litigation (MDL No. 1456; USDC District of Massachusetts

Dear Scott:

Pursuant to our recent discussions, enclosed are several items responsive to your subpoena in the above listed litigation.

These include (1) a compact disc containing contracts with large retailers; (2) an organizational chart of McKesson; and (3) a compact disc containing the materials McKesson supplied to a Congressional investigation in 2003.

As indicated in my e-mail to you, McKesson will search for and supply two years of transactional data if you will provide the appropriate NDC numbers.

I would appreciate it if you would give me a call about the transactional data that we discussed.

Very truly yours,

Stephen Kaus

SDK/mcb
Enclosures
cc: Kimbir Tate
501130.1/11505.5052

Exhibit E

# COOPER, WHITE & COOPER LLP

ATTORNEYS AT LAW

201 CALIFORNIA STREET SEVENTEENTH FLOOR

SAN FRANCISCO CALIFORNIA 94111

(415) 433-1900

A LIMITED LIABILITY
PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
FACSIMILE (415) 433-5530
WWW.CWCLAW.COM

CONTRA COSTA OFFICE
1333 N CALIFORNIA BLVD
WALNUT CREEK
CALIFORNIA 94596
(925) 935-0700

August 16, 2004

By U.S. Mail and Facsimile

Anthony J. Sievert,
The Wexler Firm
One North LaSalle Street
Suite 2000
Chicago IL 60602

Re:   In re: Pharmaceutical Industry Average Wholesale Price Litigation,
      MDL No. 1456

Dear Mr. Sievert:

As I indicated in our conversation earlier this evening, I was shocked to be faxed what I assume are portions of a motion to compel production of documents that you apparently have filed in the Massachusetts District Court. I have been working on these issues with Scott George of Sheller, Ludwig & Badey in Philadelphia, who indicated that he had authority to represent the plaintiffs with regard to discovery.

The fax you sent does not include supporting affidavits, so I am not sure exactly what you are alleging, but what I have read is grossly misleading. With regard to the Category One information on drug transactions, Mr. George and I agreed that McKesson would provide two years of data for your immediate purposes. As Mr. George acknowledged in an e-mail dated July 30th, McKesson has been waiting for Mr. George to provide NDC numbers for the drugs in which you are interested, so a search can be run of the two years of data that are available

Additionally, your statements that no documents have been provided in the other categories is false. McKesson has provided the contracts with the five largest retail customers as well as the data that was provided to a congressional investigation of the AWP issue. As I told Mr. George, we are attempting to determine if other investigations also concerned AWP. To date, Mr. George has not accepted the suggestion I made in an August 6th e-mail that he identify specific investigations in which he is interested.

Last week, while I was on vacation, I e-mailed Mr. George that McKesson was assembling further documents and I would call him on my return. Instead I received this motion. As I previously explained to Mr. George, once McKesson has the NDC numbers, it can provide a response within a week or two. Beyond two years, the historical information you seek would

Anthony J. Sievert
August 16, 2004
Page 2

have to be farmed from the tapes at a single McKesson location ("Data Center") where all orders are received and then transmitted to regional distribution centers ("Distribution Centers"). There are approximately fifteen million line items a day. This information is not sorted in any way. A computer program has to be written to search for whatever is sought, and then the program has to be run, which can take days or weeks, depending on the extent of the search. Even then, the information will not be complete, because it is set out by NDC numbers that change over time. McKesson has no historic information on previous NDC numbers. I understand that some NDC numbers have been reused. Internally, McKesson uses numbers that refer to the location of the drug in the Distribution Center, not the NDC number. These location numbers change and are reused even more rapidly, so the Data Center tapes are the only real source of the information you seek.

The data retrieval also is not particularly reliable. Although I believe the same program has been used over the years, the program and coding language have been updated periodically and older data may not be accessible. Prior to 1998, the last time that a major change occurred, there are significant validity problems. Additionally, all of the information is on a single set of tapes that is presently in use and needed for other requests that precede yours. Finally, as I indicated to Mr. George, the cost of historic data retrieval is considerable and McKesson expects to be compensated pursuant to the Federal Rules. To obtain a report on a single drug takes 60-80 hours including writing a search request, debugging and conducting the search. Several years ago, McKesson determined that its search cost was $50 per Distribution Center per month searched. It is higher now. What you are requesting would cost hundreds of thousands of dollars. I have requested that Mr. George commit to paying this cost, but I have not yet received a response.

McKesson remains anxious to cooperate with all sides of this litigation. In my first conversation with Mr. George, I agreed to accept service of the document subpoena and I have been working with Mr. George ever since to provide what it is possible to provide. I hope that this motion is a case of the left hand not knowing what the right hand is doing, and that you will withdraw it immediately and continue to work cooperatively with McKesson to reach a practical solution to your needs.

Thank you very much for your consideration.

Very truly yours,

Stephen Kaus

cc:   Richard Ardoin
      Kimbir Tate
502961.1/13760.5000

# COOPER, WHITE & COOPER LLP

ATTORNEYS AT LAW
201 CALIFORNIA STREET SEVENTEENTH FLOOR
SAN FRANCISCO CALIFORNIA  94111
(415) 433-1900

A LIMITED LIABILITY
PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
FACSIMILE (415) 433-5530
WWW.CWCLAW.COM

CONTRA COSTA OFFICE
1333 N CALIFORNIA BLVD
WALNUT CREEK
CALIFORNIA  94596
(925) 935-0700

## TELECOPIER COVER SHEET

DATE:        August 16, 2004                    TIME:        7:17 PM

| TO: | COMPANY: | FAX NO.: |
|---|---|---|
| Tony Sievert, Esq. | The Wexler Firm. | 312-346-0022 |

RE:      **McKesson subpoena**

**FROM:**  Stephen Kaus

Total pages transmitted (including this page):            3

## MESSAGE/COMMENTS/INSTRUCTIONS

Please see following correspondence.

502964.1

[  ] IF THIS BOX IS CHECKED, THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail.  Thank you.

IF YOU DO NOT RECEIVE ALL OF THIS TRANSMISSION OR IF YOU ENCOUNTER ANY PROBLEMS DURING THIS TRANSMISSION, PLEASE PROMPTLY CONTACT THE TELECOPIER OPERATOR AT (415) 433-1900 FOR ASSISTANCE.

OPERATOR:

Exhibit F

# COOPER, WHITE & COOPER LLP

### ATTORNEYS AT LAW

201 CALIFORNIA STREET SEVENTEENTH FLOOR

SAN FRANCISCO CALIFORNIA 94111

**(415) 433-1900**

A LIMITED LIABILITY
PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
FACSIMILE (415) 433-5530
WWW.CWCLAW.COM

CONTRA COSTA OFFICE
1333 N CALIFORNIA BLVD
WALNUT CREEK
CALIFORNIA 94596
(925) 935-0700

August 27, 2004

By Federal Express

Scott A. George, Esq.
Sheller, Ludwig & Badey
1528 Walnut Street
Third Floor
Philadelphia, Pennsylvania 19102

Re:   In re:  Pharmaceutical Industry AWP Litigation (MDL No. 1456; USDC District
of Massachusetts

Dear Scott:

Accompanying this letter is a further production of documents by McKesson
Corporation ("McKesson") in response to the May 5, 2004 amended subpoena in the above-
captioned case.

McKesson has previously provided two CDs containing contracts with major
retail pharmacies, a CD of the information McKesson provided to a Congressional inquiry into
average wholesale price (AWP) and an organizational chart of McKesson.

As we have discussed on several occasions, McKesson is ready, willing and able
to provide you with two years of comprehensive data on the drugs in which you are interested, as
soon as you supply the corresponding NDC numbers for those items.

Additionally, with this letter, McKesson provides you with the following:

| Bates Number | Description |
| --- | --- |
| MCK 0000001 through MCK 000231 | Transcript of January 7, 2003 deposition of Scot Dyer in State of Texas ex rel Ven-a-care of the Florida Keys, Inc. v. Dey, Inc., et al. |
| MCK000232 through MCK000539 | Transcript of October 23, 2002 deposition of David Charles Silko in State of Texas ex rel Ven-a-care of the Florida Keys, Inc. v. Dey, |

Scott A. George,
August 27, 2004
Page 2

| | Inc., et al. |
|---|---|
| MCK 000540 through MCK 000735 | Transcript of January 10, 2003 deposition of Tyler Jones in State of Texas ex rel Ven-a-care of the Florida Keys, Inc. v. Dey, Inc., et al. |
| MCK 000736 through MCK 000738 | August 14, 2003 letter from Richard A. Ardoin, Associate General Counsel of McKesson, to the U.S. House Committee on Energy and Commerce |
| MCK 000739 through MCK 000744 | Press release that contains the text of a letter from the Chairman of the House Subcommittee on Oversight and Investigations |
| MCK 000745 through MCK 000760 | Standard license agreement with American Druggist Bluebook dated November 18, 1983 and amendment dated October 2, 1996 |
| MCK 000761 through MCK 000768 | Documents relating to the Licensing Agreement between McKesson and Medi-span Inc. |

Further, McKesson is providing you with documents that were provided to the Texas Attorney General in connection with the State of Texas ex rel Ven-a-care of the Florida Keys, Inc. v. Dey, Inc., et al. litigation. These documents were already Bates-stamped for that case and I am not restamping them with MCK numbers. The documents that are stamped "TXA," were "Attorneys Eyes Only" and McKesson is designating them "Highly Confidential" for the purpose of the AWP litigation. The documents Bates-stamped with numbers starting with "TX," were designated as "Confidential" in that litigation, but appear to be publicly available, so although they have a confidential stamp on them, McKesson is not designating them as confidential for the purpose of this production.

Although I do not believe that the transmittal letters are strictly covered by your document request, I am also enclosing, as documents MCK 000769 through MCK 000780 the transmittal letters that accompanied the documents to the Office of the Texas Attorney General. Those letters contain the Bates number and descriptions of documents that were provided and that are provided herewith.

Scott A. George,
August 27, 2004
Page 3


      I trust that you will find these documents to be in order.  Please call me if you have any questions.

                                       Very truly yours,

                                       Stephen Kaus

SDK/mcb
Enclosures
503842.1/11505.5052