# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) | MDL No. 146 |
| ) | CIVIL ACTION: 01-CV-12257 PBS |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS ) ) ) ) | Chief Magistrate Judge Marianne B. Bowler |

### DECLARATION OF KIMBIR TATE IN SUPPORT OF OPPOSITION OF MCKESSON CORPORATION TO PLAINTIFFS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Kimbir Tate declares:

1. I am a Manager of Litigation Support in the Law Department of McKesson Corporation ("McKesson"). A part of my job responsibilities includes locating, organizing and producing documents in response to discovery requests, government inquiries and subpoena requests. I have had this responsibility for 12 years and am familiar with McKesson Corporation as well as the documents maintained by McKesson and the effort required to locate and assemble them.

2. In connection with the Amended Subpoena which is the subject of this motion to compel, I have supervised the investigation into the extent that McKesson has responsive documents. McKesson is served with numerous investigation requests from the government and litigation discovery requests from private parties. McKesson treats

its legal obligations under these requests very seriously. In this matter, McKesson has received document requests from three groups of plaintiffs and from defendant. McKesson is doing its best to respond as set out below. The facts in this declaration are a result of my investigation and the knowledge that I have acquired during my tenure at McKesson.

3. Average Wholesale Price or "AWP" is not a reference that is used by McKesson in its business, but is a price that McKesson obtains from First Data Bank and supplies to its customers.. McKesson generally sells pharmaceuticals either at a contract price set by manufacturer or at a markup established by McKesson.

4. With respect to the items requested in the Amended Subpoena, I can make the following statements about each request:

### *Category 1: Pricing and Pricing Related*

**1. All documents evidencing prices paid to You for Identified Drugs.**

The historical information plaintiffs seek would have to be farmed from the sales history tapes housed at McKesson's Data Center. McKesson processes approximately 15 million transactions on a daily basis. Thus, allowing for an increase in business over time, during the Relevant Time Period set out in the deposition, there are in the magnitude of 50 billion transactions. This information is not sorted in any way and a computer program has to be written to search for whatever is sought reading every single

2

line item on the tape to get to the requested information. The program has to be run, which can take days or weeks, depending on the extent of the search.

Even then, the information will not be complete, because it is set out by NDC numbers, which are unique identifying numbers assigned to a particular drug in a particular quantity, form or packaging. McKesson tracks drugs by an Economost number. NDCs must be converted into Economost numbers and these numbers can change over time. McKesson does not have a way to track changes. In addition, many NDC and Economost numbers are reused over time. McKesson has no historic information on previous NDC numbers and does not keep historic information on Economost numbers.

The data retrieval also is not particularly reliable. Although I believe that the same software program has been used over the years in question, the program and coding language have been updated periodically and older data often not accessible. McKesson has experienced serious validity problems with searches for data for periods prior to 1998, the last time that a major change occurred. Additionally, all of the information is on a single set of tapes that is used for other requests that precede those of plaintiffs.

Finally, the cost of historic data retrieval is considerable. To obtain a report on a single drug can take in excess of 80 hours including writing a search request, converting NDCs to Economost numbers, debugging, validating data and conducting the search, including the time it actually takes to run the tapes. Several years ago, McKesson

determined that its search cost was $50 per Distribution Center per month searched. It is higher now. What plaintiffs are requesting would cost hundreds of thousands of dollars.

Two years of data are kept in easily accessible electronic form, but in order to effectively search for the Identified Drugs and organize the data, we need the NDC numbers. Now that the NDC numbers have been provided, I expect that we can provide plaintiffs with data in approximately two weeks.

**2. All documents evidencing the Net Transaction Cost to Your customers for Your Sales of Identified Drugs.**

McKesson does not have access to all discounts and therefore cannot know the "Net Transaction Cost" to its customers and does not have documents described by item 2.

**3. All documents sufficient to show the rebates, discounts, chargebacks and other adjustments provided to You by a Defendant, or administered by You on behalf of a Defendant, for each of the Identified Drugs.**

There are several difficulties with this request. First, although McKesson has sales history data through the Relevant Time Period from January 1,1991, those tapes do not contain rebate, discounts, chargeback or other adjustments. McKesson has a chargeback maintenance system which it began automating in July 2000. There are "electronic" records of chargebacks, but the data is captured by manufacturer and not by product, so the breakdown requested by plaintiffs is virtually impossible and certainly very time consuming. In addition, multiple requests for chargebacks are sent to a manufacturer on a

4

single Credit Memo. In order to get to line item information McKesson must manually review each item attached to every single Credit Memo sent to the manufactuer. It may take several months to get to the information requested. As for discounts, McKesson routinely receives a two percent (2%) discount for prompt payment, but does not amortize that amount for each product, so the documents sought do not exist.

**4. All documents relating to a Defendant's suggested price for Any identified Drug, including, but not limited to prices that a Defendant has suggested for sales that You make to a member of a group purchasing organization.**

Item 4 is inconsistent with the structure of drug wholesaling. McKesson sells drugs either at a contact price (a price negotiated and set by the manufacturer with McKesson's downstream customers) or at WAC plus or minus McKesson's markup. As for group purchasing organizations, McKesson provides products to its members at a price negotiated between the GPO and the manufacturer. McKesson receives the pricing from the manufacturer and the membership list and eligibility from the GPO. Thus there is a negotiated contractual price between the GPO and the manufacturer, not a "suggested" price. McKesson does not keep historical information other than the chargeback data discussed in connection with item 3, above.

### *Category 2: AWP, Publications and Pricing Surveys*

**5. All documents concerning AWP, including, but not limited to (i) documents related to your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a Defendant**

**concerning AWP; (vi) all communications between you and a Publisher concerning AWP; and (vii) all communications between you and a Pharmacy Benefit Manager concerning AWP.**

McKesson does not use AWP in its pricing or have any interest in it. Therefore McKesson is not aware of having any of the described documents. McKesson has explained to plaintiffs that it receives a report of the AWP from publisher First Databank and includes that on invoices and computer screen at the request of customers. McKesson does not keep a record of the data it receives from First Databank. Each set of data overwrites the previous data. McKesson also reports sales data to publishers, but not denominated an AWP. McKesson is not aware of the manner in which publishers use this sales data.

McKesson has a contract with First Databank for the exchange of information, which has been provided. McKesson receives the AWP from First Databank and includes it in its computer system for use by its customers, but does not itself use the AWP for any purpose.

**6. All documents relating to Your role, or a Defendant's role, in the publication, appearance, or advertisement of the AWP of each identified Drug in Publications during the Relevant Time Period.**

McKesson is not aware of having a role in the publication, appearance, or advertisement of the AWP and therefore believes that it has no such documents.

**7. All documents concerning any pricing survey conducted by any Publication. This request included but is not limited to any Pricing data that you provided to a Publication.**

As stated above, McKesson reports sales data to publishers through contractual

arrangements, but not any data denominated AWP. McKesson is not aware of the manner in which publishers use this sales data and whether it qualifies as a "survey".

**8. All contracts with Publications and all communications with Publications regarding Identified Drugs.**

On August 27, 2004, McKesson provided two such contracts with entities that became First Databank. McKesson is unaware of any other such contracts.

*Category 3: Relationships with Pharmacies and PBMs*

**9. All contracts between You and the five largest retail pharmacies. "Five largest retail pharmacies" refers to the five pharmacies that represent your largest retail sales volume over the past three calendar years.**

Contracts with the six largest retail pharmacies – Costco, Wal-Mart, Rite-Aid, Target, Walgreens and Safeway - were provided on July 21, 2004.

**10. All contracts between You and Pharmacy Benefit Managers Caremark, Medco, Express Scripts and AdvancePCS.**

I am attempting to locate contracts with these entities and will provide then as soon as I obtain them.

*Category 4: Investigations, Suits and Complaints*

**11. All documents produced by You, whether voluntarily or involuntarily, in any Government Investigation or inquiry related to the use of AWP, Rebates or any other consideration provided to you by a defendant.**

On July 21, 2004, McKesson provided plaintiffs with a CD containing the information that it provided to a 2003 Congressional investigation relating to AWP. McKesson provided this information in electronic, rather than paper form to assist plaintiffs in reviewing and sorting the data. Plaintiffs then requested the cover letter that

7

accompanied the submission and the document request. On August 27, 2004, McKesson provided the cover letter from Associate General Counsel Richard Ardoin and a press release that contained the text of the document request. McKesson does not appear ever to have received a document request from the committee.

After I understood that plaintiffs had expressed an interest in the *qui tam* litigation conducted by the Texas Attorney General, I located transcripts and other documents related to McKesson and supplied them to McKesson's counsel for production. McKesson remains willing to attempt to determine what was provided in other investigations if plaintiffs will identify the investigations in which they are interested.

**12. All documents relating to any legal proceeding (by country [sic], court, caption case number etc.) including but not limited to court hearings, legislative hearings, mediations, or arbitrations, in which you were a party, regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.**

McKesson is unaware of any such matters in which it was a party.

**13. All affidavits, declarations, or other written statements, including drafts, provided by you regarding the use of AWP, Rebates or any other consideration provided to you by a defendant.**

As with item No. 11, McKesson would research, within reason, any proceeding identified by plaintiffs, but is unaware of any McKesson employee having provided any such written statement.

### *Category 5: Miscellaneous*

**14. All current and historical organizational charts for all of Your departments.**

McKesson has provided a general organization chart and has identified witnesses that it will produce in response to the categories identified in plaintiffs' deposition subpoena to McKesson under F. R. Civ. P 30(b)(6).

**15. All documents sufficient to identify Your policy or practice of document retention, destruction, disposal or preservation for each year during the relevant Time Period.**

McKesson has no wide-reach document retention policy. McKesson complies with different governmental and business requirements for each type of data.

I declare the foregoing to be true under penalty of perjury under the laws of the State of California, and that this declaration was signed at San Francisco, California on September 3, 2004.

Kimbir Tate

504165_1.DOC