UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL No. 1456 ) Civil Action No. 01-CV-12257 PBS ) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) Judge Patti B. Saris ) ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO FIRST DATABANK, INC.'S COUNTER-MOTION TO
LIMIT *ALL* SUBPOENAS SEEKING ADDITIONAL TESTIMONY**

Defendants Novartis Pharmaceuticals Corporation ("Novartis") and Bristol-Myers Squibb Company ("BMS"), on behalf of Defendants in the captioned actions, submit this Memorandum in Opposition to First DataBank, Inc.'s Counter-Motion to Limit *All* Subpoenas Seeking Additional Testimony ("FDB Counter-Motion").

**PRELIMINARY STATEMENT**

In Defendants' Motion to Enforce the Subpoena for, and Compel, the Deposition of Patricia Kay Morgan (July 30, 2004) ("Defendant's Motion"), Novartis and BMS sought to compel Ms. Morgan to appear for a deposition that would last less than one day because:

1) She is uniquely capable of answering narrow questions about her employer's practices that are directly relevant to all of the claims in these consolidated actions;

2) She can explain specifically what happened in 2002, when First DataBank, Inc. ("FDB") unilaterally changed the markup factor it applied to Defendants' products across the board – testimony that is potentially dispositive of the Together Rx allegations in the Corrected Amended Consolidated Class Action Complaint With Amgen Amendments (Verilaw, July 16, 2004) ("AMCC")[1] (the "Together Rx claims"); and

---

[1] The "Together Rx Defendants" are Together Rx LLC and its member companies, Abbott Laboratories; AstraZeneca Pharmaceuticals LP; Aventis Pharmaceuticals Inc.; Bristol-Myers Squibb Company; SmithKline Beecham Corporation d/b/a GlaxoSmithKline; Janssen Pharmaceutical Products, L.P. and McNeil-OPC,

> 3) Neither prior discovery of Ms. Morgan or FDB in other litigations nor the documents produced by FDB in response to document subpoenas in these actions provide the answers to the questions Defendants need to ask.

(*See* Memorandum in Support of Defendants' Motion to Enforce the Subpoena for, and Compel, the Deposition of Patricia Kay Morgan ("Defendants' Memorandum") at 3-6, 11-13). In response to Defendants' Motion, Ms. Morgan offered nothing to dispute those central propositions. Indeed, Ms. Morgan herself offered nothing at all in response to Defendants' Motion – no affidavit declaring that she was unable to answer the questions for which Defendants' deposition subpoena sought answers or that she was physically unable to appear for a deposition for the few hours it would take her to answer them.

Instead, Ms. Morgan's employer, FDB, moved to preclude *all* future discovery relating to its collection and dissemination of pharmaceutical pricing information, including the limited deposition of Ms. Morgan sought by Defendants here. Tellingly, in support of that Counter-Motion, FDB does not dispute – because it cannot – that Ms. Morgan has never testified to the information Defendants seek; that she is the best, and perhaps only, person to do so; that the information is central to the case before the Court; and that the deposition would last less than a day. Instead, FDB argued against a host of *document subpoenas that Defendants do not seek to enforce based on FDB's previous representation that it has produced, or will shortly produce, all of the requested documents*,[2] and against possible future depositions not at issue on Defendants' Motion. In short, FDB's Counter-Motion is a classic diversionary tactic. Unable to oppose the substance of Defendants' narrow request for less than a day of Ms. Morgan's time

---

Inc. (both affiliates of Johnson & Johnson); and Novartis Pharmaceuticals Corporation. The AMCC alleges that TAP Pharmaceutical Products, Inc. is a member of Together Rx, but that allegation is wrong.

[2] As FDB knows, Novartis and BMS agreed that FDB's production in response to previous document subpoenas was sufficient as soon as FDB assured them that Defendants' document subpoena was subsumed within the prior ones.

and testimony, FDB seeks to cloud the issue by arguing about other requests not before the Court.  In light of these facts, FDB's effort to prevent the short deposition of Patricia Kay Morgan by its diversionary Counter-Motion should be rejected and Defendants' Motion should be granted.

## STATEMENT OF FACTS

Because the relevant facts are set forth in Defendants' Memorandum, only a brief summary is provided here.

There can be no question that how the price reporting agencies – including FDB – arrive at the AWP information they disseminate is an important factual question in this case. Plaintiffs' allegation that the Defendants control that process permeates the Complaint. *See e.g.,* AMCC ¶ 136.  In addition, the Together Rx claims appear to rest entirely on the fact that over several months during 2002, FDB – alone among the price reporting agencies – reported an Average Wholesale Price ("AWP") of 1.25 times the Wholesale Acquisition Cost ("WAC") of every one of the Together Rx Defendants' products, *see* AMCC ¶¶ 590-91.  Thus, how Ms. Morgan applied FDB's process for determining and publishing WAC prices and the corresponding AWPs in 2002 is particularly critical to the Together Rx claims.

Ms. Morgan's testimony in the Texas proceeding – which FDB appears to claim should serve as her only testimony in all cases relating to pricing – demonstrates Ms. Morgan's obvious knowledge of FDB's processes and asserts in general terms that she does not rely on manufacturers (the Defendants) to determine AWP.  However, she was not asked to, and did not, provide any detail about how she conducts pricing surveys, whom she surveys and what records she creates and keeps of such surveys.  Moreover, the Texas litigation involved reimbursement based not on AWP, but on "wholesale estimated acquisition cost" as calculated from a variety of

sources in addition to FDB.  1 Tex. Admin. Code § 355.8541.  Accordingly, the testimony elicited in Texas is simply not adequate in this case, where FDB's publication of AWP is directly at issue.

In addition, because Plaintiffs in the Together Rx claims allege that FDB's "harmonization" of the Defendants' AWPs was the result of a conspiracy by the *Defendants*, the Court recognized last March that a deposition of FDB would go a long way toward determining whether there is any merit to the claims.  *See* Transcript of Hearing (March 8, 2004) at 22 ("I imagine a deposition of that company would be a starting point.").  At the same hearing, Plaintiffs' counsel asserted that FDB harmonized the markups for these products "[b]ecause First Data Bank [sic] was responding to what these companies which control the industry wanted to accomplish.  This was part of the conspiracy."  *Id*. at 35.  The Court responded, "I will give you full discovery on that."  *Id*.  Plaintiffs' statement makes it clear that in order to defeat Plaintiffs' Together Rx conspiracy claim, Defendants will have to proffer more than Ms. Morgan's statement in another litigation that *in general*, FDB does not simply publish the AWPs provided by the manufacturers.  In the deposition FDB argues ought to suffice, Ms. Morgan was not asked, and did not testify, about why or how FDB in 2002 changed the AWPs of the Together Rx Defendants' products to a uniform markup of 1.25 times the Defendants' wholesale list prices, when previously those products had varying markups.  To Defendants' knowledge, Ms. Morgan has never testified about that and neither she nor FDB claim that she has.  Absent a deposition at which she answers such questions, Defendants have no way of obtaining that information and providing it to the Court.

Indeed, Ms. Morgan and FDB have been quite inconsistent on the question of how FDB came to harmonize the markups applied to Defendants' products.  In a telephone

conversation responding to Defendant GlaxoSmithKline's inquiry regarding the change, Ms. Morgan is reported to have said that FDB "wanted more uniformity with respect to the multiplier it was applying to each company's products, as well as for products by different manufacturers." *See* Affidavit of David A. Moules in support of The Together Rx Defendants' Opposition to Motion to Intervene in the *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL NO. 1456, ¶ 9.  If true, this statement is inconsistent with FDB's claim that Ms. Morgan's earlier testimony in Texas regarding FDB's general practices answers all of the relevant questions here.

## ARGUMENT

### FDB DOES NOT STATE A SUFFICIENT GROUND FOR MS. MORGAN'S REFUSAL TO APPEAR FOR A DEPOSITION UNDER ANY CIRCUMSTANCES

#### A. The Deposition that Defendants Request will be Neither Cumulative nor Unduly Burdensome for Ms. Morgan or FDB

In its memorandum, FDB spends very little time explaining how or why Defendants' subpoena is so burdensome to either Ms. Morgan or FDB.  That is because it is not burdensome to either one.  Indeed, FDB makes no argument that the subpoena would unduly burden Ms. Morgan, and it is telling that in the nearly two feet of affidavits and exhibits attached to the Counter-Motion, there is nothing from Ms. Morgan on that score or any other.  Instead, FDB complains of the numerous document subpoenas it has received in connection with this and other cases, informal requests for testimony from State government entities and deposition subpoenas it expects to get.  FDB claims that the cumulative effect of all of these subpoenas will disable it from conducting its business.  FDB's argument ignores entirely the fact that Defendants agreed on the very first meet-and-confer conference call regarding their subpoenas to accept FDB's document production in response to Plaintiffs' earlier subpoena as the response to

Defendants' document subpoena, and that Defendants have not moved to compel compliance with that subpoena.  Regardless of the merits of FDB's concern about other parties' *document subpoenas*, it should not affect Defendants' request for a short *deposition* of Ms. Morgan.

Relying on generalizations because specifics expose the lack of merit in its position, FDB attempts to belittle Defendants' need to "'clarify and elaborate upon certain aspects of [Ms. Morgan's] testimony'" (Memorandum of First DataBank, Inc. in Opposition to Motion to Compel Discovery and in Support of Counter-Motion to Limit *All* Subpoenas Seeking Additional Testimony from this Non-Party ("Counter Mem.") at 10).  FDB either fails to grasp or intentionally ignores the fact that the specific clarification Defendants seek regarding Ms. Morgan's 2002 actions may ultimately determine whether the conspiracy claim against the Together Rx Defendants is dismissed from this litigation.  In defense to Plaintiffs' allegations of a conspiracy to raise the markup of the Together Rx Defendants' products in 2002, those Defendants assert that FDB unilaterally decided to increase those markups, absent any influence from Defendants.  How exactly FDB came to harmonize the markups to the identical percentage for all of the Together Rx Defendants is a critical point for Plaintiffs' Together Rx claim and this defense.  That point cannot be clarified by anyone other than Ms. Morgan, who made the decision for FDB.

FDB argues that Ms. Morgan's testimony is not needed here because she explained during a 2002 deposition in a Texas state court proceeding how FDB calculates AWP. As shown above, her testimony there did not resolve questions about FDB's determination of AWPs and conduct of pricing surveys that are relevant here, because they were not critical to the Texas statute at issue there.  Nor did it come close to answering the questions arising out of her conduct in 2002, which gave rise to the Together Rx Claims in this case.  *See* pp. 3-4, above.

She has not been asked, and has not answered, those questions.  Thus, Defendants' need for Ms. Morgan's deposition outweighs any burden posed by her losing up to one day of work.  *See Amicus Comms. v. Hewlett-Packard Co., Inc.*, No. 99-0284, 1999 U.S. Dist. LEXIS 20901 (D.D.C. Dec. 3, 1999) (court denied non-party co-counsel's motion to quash subpoena where co-counsel was crucial witness); *Stacey v. Caterpillar, Inc.*, No. 93-241, 1995 U.S. Dist. LEXIS 16702, at **8-9 (E.D. Ky. Aug. 24, 1995) (where information sought was "highly relevant" and not obtainable from other sources, court would not quash subpoena for deposition testimony).

Nor are the answers to be found in the documents produced by FDB.  No internal FDB documents produced explain how or why it harmonized the markups of all of the Together Rx products in the space of less than a year.  No documents produced to date even record or report the actual responses to any surveys in 2002 regarding wholesaler prices of Together Rx Defendants' products, let alone explain how those responses yielded the harmonization of the markups FDB disseminated to the industry on all of the Defendants' products.  If the documents did answer the question, FDB would have trumpeted that fact and shown the Court the documents in its opposition or its Counter-Motion.  It did not do so.[3]

Moreover, Ms. Morgan's deposition in the Texas proceeding is not in the record in this case.  If the Texas deposition is not admissible in this case, it is of little use.  Given that Ms. Morgan is outside the subpoena power of this Court, and Defendants cannot compel her testimony at trial, any decision by this Court to deny Defendants the right to take her deposition would raise serious Due Process concerns.

The cases FDB cites for the proposition that intrusive document subpoenas may be quashed or limited do not support its argument that Defendants and the Court must accept

---

[3] If FDB now wishes to claim that such information is available in the documents it produced, Ms. Morgan – at a minimum – will have to explain how, because it is certainly not apparent from the documents themselves.

7

previous deposition testimony that does not adequately cover the relevant area of inquiry in lieu of a one-day deposition to obtain information that is clearly relevant to Defendants' case. *See, e.g.*, *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38 (1st Circ. 2003) (affirming ruling quashing burdensome subpoena for documents); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975) (affirming ruling quashing subpoena for documents); *Linder v. Calero-Portocarrero*, 183 F.R.D. 314 (D.D.C. 1998) (court modified plaintiffs' document requests); *High Tech Med. Instrumentation v. New Image Indus.*, 161 F.R.D. 86 (N.D. Cal. 1995) (granting motion for fees for non-party's compliance with unduly burdensome subpoena for documents); *In re Candor Diamond Corp.*, 26 B.R. 847 (S.D.N.Y. 1983) (protective order granted where subpoena sought thousands of documents that were relevant to only one affirmative defense). FDB has known from the very first "meet and confer" with Defendants' counsel that Defendants have not asked it to produce a single document beyond what it was already producing in response to Plaintiffs' document subpoena; its argument here is little more than an attempt to divert attention from the narrow deposition subpoena Defendants seek to enforce.[4]

FDB's argument that the burden of responding to the numerous subpoenas not issued to it by the Defendants is "not a mere inconvenience" is similarly irrelevant because it responds to an argument Defendants did not make. (Counter Mem. at 19). As Defendants pointed out in their motion to enforce the subpoena to Ms. Morgan, *her appearance for less than a day of deposition would be, at worst, a mere inconvenience.* If the burden of responding to the numerous document subpoenas, or future subpoenas for cumulative testimony – if they come – is

---

[4] Similarly unhelpful to FDB's argument is its citation to two other cases, including one that Defendants cited, for the non-controversial proposition that a non-party may be compensated for the costs of compliance with a subpoena, a proposition with which Defendants do not disagree. *See Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001); *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329 (N.D. Cal. 1995).

in fact as FDB predicts, it should move to address those subpoenas specifically and explain to the Court why they should be quashed or modified. Its attempt to hide behind those subpoenas to block the plainly necessary and indisputably short deposition of Ms. Morgan that Defendants' seek is disingenuous at best.

FDB's statement that it "is *not* seeking to quash the subpoenas in their entirety," (Counter Mem. at 19), is similarly disingenuous, as FDB in virtually the same breath asks the Court to quash Defendants' deposition subpoena to Ms. Morgan in its entirety – thus asking the Court to deny Defendants any opportunity to get the answer to the question the Court itself has posed: *What happened in 2002*?

The fact that Ms. Morgan has already testified in another matter to other facts – even related ones – should not preclude the discovery sought by Defendants. *See Seth Co. Inc. v. United States of America (Commissioner of the Internal Revenue Service)*, Nos. 3:01cv1584, 3:02cv1049, 2003 U.S. Dist. LEXIS 7982 (D. Conn. Mar. 3, 2003) (plaintiff's motion for protective order and to quash subpoena *duces tecum* denied where subpoenaed witnesses had previously testified in related litigation but did not testify or did not do so in sufficient depth regarding specific areas identified by defendant in current litigation). Defendants are entitled to elicit facts specific to their own case. Ms. Morgan's testimony is essential to a number of the claims and defenses in this case, and her effort to avoid giving testimony should be rejected.

### B.   FDB's Assertion of Privilege Does Not Prevent Ms. Morgan from Testifying

FDB argues in one breath that Ms. Morgan should not have to submit to the narrow deposition Defendants seek because FDB has already submitted responsive documents in this matter and because "Ms. Morgan and other employees of FDB have provided detailed, repetitive testimony on 15 different occasions." (Counter Mem. at 6). FDB's argument is,

9

essentially, "we have already told you about this, or something closely related to it, so we need not do it again." In the next breath, FDB argues that – despite its having chosen to provide related documents and testimony when it suited its purposes – Ms. Morgan may now refuse to appear altogether based on a newly asserted privilege.

FDB waived any applicable privilege when it submitted documents in the present litigation and when Ms. Morgan and other FDB employees submitted to depositions in prior litigations. *See Pinkard v. Johnson*, 118 F.R.D. 517, 523 (M.D. Ala. 1987) (holding that a reporter waived the journalist's privilege by submitting an affidavit to the court); *see also Wheeler v. Goulhart*, 593 A.2d 173, 175-78 (D.C. Cir. 1991) (holding that a reporter waived her privilege when she revealed the requested information to third parties); *In re Subpoena directed to Barnard*, No. MISC. 98-189, 1999 WL 38269, at *2 (E.D. Pa. Jan. 25, 1999) (stating that "[p]ublication or public disclosure of confidential information . . . constitutes a waiver of the [journalist's] privilege" under Pennsylvania law and holding that a journalist waived the privilege by revealing relevant information).

In *Pinkard*, a newspaper reporter initially disclosed information via conversation and by submitting an affidavit to the court, but then – before the same court to which he had already submitted the affidavit – asserted the journalist's privilege in order to prevent depositions seeking elaboration on the disclosed information. 118 F.R.D. at 522. Although the reporter was otherwise entitled to invoke the journalist's privilege, the court held that the reporter waived his privilege with respect to certain subjects by submitting the affidavit. *See id.* at 522-23. Accordingly, by producing documents in response to Plaintiffs' subpoena in this case and by submitting to numerous depositions regarding AWP in prior cases, FDB has waived the journalist's privilege with respect to Ms. Morgan's testimony about AWP.

10

Even if FDB had not waived its right to assert privilege, the qualified journalist's privilege which, in some cases, can prevent parties from obtaining discovery, *see Shoen v. Shoen (Shoen I)*, 5 F.3d 1289, 1292 (9th Cir. 1993); *but see In re Grand Jury Proceedings*, 810 F.2d 580, 584-85 (6th Cir. 1987) (holding that there is no journalist's privilege), does not preclude the deposition of Ms. Morgan here, and does not even apply to the testimony Defendants presently seek.

The party asserting the journalist's privilege – here Ms. Morgan – bears the burden of establishing that the privilege attaches. *See, e.g.*, *Shoen I*, 5 F.3d at 1296; *Von Bulow v. Vun Bulow*, 811 F.2d 136, 144 (2d Cir. 1987). Ms. Morgan faces a high burden because "testimonial exclusionary rules and privileges are not favored. . . . Such privileges should not be 'lightly created or expansively construed, for they are in derogation of the search for the truth.'" *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)). Courts recognizing a journalist's privilege have "stressed that the privilege is qualified, not absolute, and held that the process of deciding whether the privilege is overcome requires that 'the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts, and a balance struck to determine where lies the paramount interest.'" *Shoen I*, 5 F.3d at 1292-93 (quoting *Farr v. Pitchess*, 522 F.2d 464, 467 (9th Cir. 1975)).

As explained below, Ms. Morgan cannot meet the burden of establishing that the journalist's privilege extends to her. Even if she could meet this burden, however, Defendants' need for the information outweighs her assertion of a qualified privilege. Accordingly, no privilege prevents Defendants from deposing Ms. Morgan.

### 1. The Journalist's Privilege Does Not Apply to FDB

11

FDB cites numerous cases for the proposition that a "constitutional privilege has repeatedly been held to apply to discovery sought from publishers of financial, technical and other specialized publications, such as FDB." (Counter Mem. at 21). However, these cases simply stand for the irrelevant and uncontested proposition that publishers of technical publications are not exempt from general First Amendment protections; they do not establish that either FDB or every one of its employees is entitled in all cases to assert the journalist's privilege in order to thwart legitimate discovery requests. *See Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679 (7th Cir. 1998) (allowing a publisher to claim that a statute is facially overbroad under the First Amendment); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991) (allowing a newsletter to assert First Amendment defenses in a defamation action); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980) (allowing a newsletter to assert a First Amendment defense in a libel action); *Morningstar, Inc v. Superior Court*, 23 Cal. App. 4th 676, 680 (1994) (allowing a publisher to assert a First Amendment defense in a libel action).

The journalist's privilege exists primarily to protect confidential sources. *See, e.g.*, *United States v. Cutler*, 6 F.3d 67, 71-73 (2d Cir. 1993). The information that Defendants seek to obtain from Ms. Morgan does not implicate that principle. (*See* Counter Mem. at 12-14; 23-24). "[I]t is important to recognize that, where the protection of confidential sources is not involved, the nature of the press interest protected by the privilege is narrower." *Gonzales v. NBC*, 186 F.3d 102, 109 (2d Cir. 1998); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 715 (1st Cir. 1998) (declining to determine whether non-confidential information is entitled to any protection under the journalist's privilege and stating that "the level of confidentiality that characterizes a journalist's or researcher's confidential information may, in the end, affect the

12

degree of protection conferred on that information in a discovery dispute"); *Shoen v. Shoen (Shoen II)*, 48 F.3d 412, 416 (9th Cir. 1995) ("the lack of a confidential source may be an important element in balancing . . . the need for the material sought against the interest of the journalist in preventing production in a particular case") (quotations omitted); *cf. United States v. Smith*, 135 F.3d 963, 968-71 (5th Cir. 1993) (holding that no journalist's privilege attaches where non-confidential information is at issue). As noted above, FDB trumpets who its sources are – it claims to survey wholesalers. It has made no argument, and cannot, that disclosing the names of the particular wholesalers surveyed for a particular price listing change would expose those wholesalers to harm or that it would "chill" such wholesalers' willingness to provide information in the future. The information sought here does not constitute "confidential" information in a journalistic sense; it is merely business confidential information at most, which can be protected under the existing protective order.[5]

FDB publishes wholesale list price (the undiscounted list price at which manufacturers sell to wholesalers) information supplied to it by manufacturers of pharmaceuticals, and – it claims – average wholesale prices based on surveys of wholesalers. Based on FDB's and Ms. Morgan's description of its service and her functions, she does not rely on confidential sources or a proprietary methodology. In short, she engages in none of the journalistic activity the qualified First Amendment limitations on discovery of journalists are intended to protect: her "sources" need not be protected (indeed, FDB appears to list them in the documents it produced, although it provided no details about what information they provided or how it translated into an industry-wide harmonization of markup percentages). *See* Randall P. Bezanson, *The Developing Law of Editorial Judgment*, 78 NEB. L. REV. 754, 848-49 (1999).

---

[5] Indeed, although it appears thus far to have failed to do so, FDB claims that it has provided, or will provide, documents disclosing all such information. *See* Counter Mem. at 8-9. FDB thus concedes that such information is not protected from disclosure by First Amendment principles.

Moreover, Neither Ms. Morgan nor FDB is entitled to the narrow protection of the journalist's privilege in this instance. *See In re Fitch, Inc.*, 330 F.3d 104, 109-11 (2d Cir. 2003) (holding that the journalist's privilege did not apply to financial ratings agency that made its information available to the general public but determined what information to disseminate based on client needs); *see also In re Madden*, 151 F.3d at 130 (holding that the journalist's privilege does not attach to a self-proclaimed journalist); *Von Bulow v. Vun Bulow*, 811 F.2d at 138-47 (covering an event as a member of the press is not sufficient for the journalist's privilege to attach). FDB sells subscriptions to its data to private and government payors, providers and manufacturers so that they can use it as a reference for contractual reimbursement and rebate programs. FDB's suggestion that Ms. Morgan can simply refuse to explain and defend the sources and accuracy of FDB's data collection and publication while asking an entire industry to rely on it turns the First Amendment on its head.

Ms. Morgan was not engaged in journalism in any meaningful sense of the word when she took the actions at issue in this litigation and about which Defendants wish to question her. FDB's effort to cloak her actions in secrecy when those very actions are the principal basis for a conspiracy claim against the Defendants perverts the principles underlying the qualified privilege afforded real journalists under the First Amendment.

### 2. Assuming FDB is Able to Assert a Qualified Privilege, Defendants' Need to Depose Ms. Morgan Outweighs that Privilege

A party seeking discovery overcomes a journalist's privilege involving non-confidential (in the journalistic sense) information where the information is: (a) not available through a reasonable alternative source; (b) noncumulative; and (c) clearly relevant to an important issue in the case. *Shoen II*, 48 F.3d at 416. All three elements of the test are met here.

Again arguing a point not at issue, FDB argues that "[t]o the extent the parties seek information regarding AWP *as published* by FDB, they should go directly to the same *sources* of information used by FDB – the manufacturers and wholesalers for any additional information needed." (Counter Mem. at 23) (emphasis in original). As FDB knows, the Defendants are not trying to ascertain AWPs; rather, the Defendants need to know how Ms. Morgan determined to harmonize all of the Defendants' AWPs at 1.25 times wholesale list price in the course of 2002. As explained above, the wholesalers and manufacturers cannot answer that question. *See* pp. 1-9, above. Only Ms. Morgan can do so.

In *Crowe v. County of San Diego*, 242 F. Supp. 2d 740 (S.D. Ca. 2003), non-party CBS asserted the journalist's privilege to attempt to quash a subpoena for a videotaped interview of a party. CBS argued that the party had failed to exhaust reasonable alternative sources because, among other possibilities, the party "could take the depositions of other individuals, such as the cameraperson, who were present at the interview." *Id.* at 751, n.5. The court rejected this argument, noting that "these individuals are not reasonable alternative sources . . . given that any information they would provide . . . would be based on their memories, and, therefore, it is doubtful whether these individuals could provide the specificity of detail" needed by the party seeking to compel production. *Id.* If the people actually present at an interview are not reasonable alternative sources for the content of the interview, it is not possible that the depositions of unknown participants in surveys that were conducted at unknown times in an unknown manner could suffice as reasonable alternative sources for the information sought in this case. *See, e.g.*, *Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833, 838-39 (C.D. Ca. 1993) (holding that the journalist's privilege is not sufficient to protect an editor from revealing confidential sources used in an article, even though the party seeking discovery had failed to

15

depose the author of the article and "the Court [found] it troubling that Plaintiff failed to exploit such an obvious source").

FDB argues that the testimony of Ms. Morgan is "cumulative." (Counter Mem. at 23). As shown above, it is nothing of the sort. *See* pp. 1- 9, above. Moreover, courts have routinely compelled discovery of evidence that is far more cumulative than the deposition testimony requested by Defendants. *See, e.g.*, *SEC v. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D. 268, 269-72 (D. Conn. 1996) (compelling a journalist to appear at a deposition to verify facts already revealed in a published article). For example, in a case cited by FDB, the First Circuit compelled NBC to produce video outtakes of an interview even though the party seeking discovery already had access to the broadcast version of the interview, had reviewed testimony of the interviewee in a related matter, and would have an opportunity to examine the interviewee at trial. *United States v. La Rouche Campaign*, 841 F.2d 1176, 1178-82 (1st Cir. 1988).

FDB also asserts that Ms. Morgan's testimony "is not 'clearly relevant to an important issue in the case.'" (Counter Mem. at 24). In light of nothing more than the fact that Ms. Morgan's actions in 2002 form the basis of the Together Rx claims – a fact the Court itself has noted – this argument is laughable. *See* pp. 5-9, above. Courts have set aside the journalist's privilege where the requested discovery material was far less relevant than the deposition of Ms. Morgan is here. *See, e.g.*, *Crowe*, 242 F. Supp. 2d at 748-52 (holding that the qualified privilege did not prevent the disclosure of material that provided context for a specific defense even though other available material provided relevant information).

Even if an argument can be made that in some circumstances FDB and Ms. Morgan are entitled to rely on the journalist's privilege to limit discovery, they cannot rely on it here to block Defendants from obtaining less than one day of testimony from the only individual

16

who can explain a non-confidential procedure that is critical to the resolution of claims in this case. Accordingly, the Court should compel Ms. Morgan to submit to the one short deposition that Defendants need.

## **CONCLUSION**

For the foregoing reasons, FDB's Counter Motion should be denied, Defendants' motion to enforce the subpoena for, and compel, the deposition should be granted and Ms. Morgan should be ordered to appear and give testimony forthwith.

Dated:  Boston, Massachusetts
          September 7, 2004

Respectfully submitted,

| | |
|---|---|
| /s/ Thomas E. Dwyer | /s/ Karen F. Green |
| Thomas E. Dwyer Jr. (BBO # 139660) | Karen F. Green (BBO #209050) |
| DWYER & COLLORA, LLP | Benjamin M. Stern (BBO #646778) |
| Federal Reserve Plaza | WILMER CUTLER PICKERING |
| 600 Atlantic Avenue |     HALE AND DORR LLP |
| Boston, Massachusetts 02210 | 60 State Street |
| (617) 371-1000 | Boston, Massachusetts 02109 |
| | (617) 526-6000 |
| Steven M. Edwards (*admitted pro hac vice*) | karen.green@wilmerhale.com |
| Lyndon M. Tretter (*admitted pro hac vice*) | |
| HOGAN & HARTSON L.L.P. | Jane W. Parver (*admitted pro hac vice*) |
| 875 Third Avenue | Saul P. Morgenstern (*admitted pro hac vice*) |
| New York, New York 10022 | Rachel H. Yarkon (*admitted pro hac vice*) |
| (212) 918-3000 | KAYE SCHOLER LLP |
| | 425 Park Avenue |
| *Attorneys for Defendant* | New York, New York 10022 |
| *   Bristol-Myers Squibb Company* | (212) 836-8000 |
| *   and on behalf of all Defendants* | |
| | *Attorneys for Defendant* |
| | *   Novartis Pharmaceuticals Corporation* |
| | *   and on behalf of all Defendants* |

**CERTIFICATE OF SERVICE**

      I, Benjamin M. Stern, on September 7, 2004 caused to be served the foregoing document by hand upon counsel for Patricia Kay Morgan and First DataBank, Inc., and by Verilaw upon all counsel of record.

/s/ Benjamin M. Stern
Benjamin M. Stern
