UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | Judge Patti B. Saris |
| | Chief Magistrate Judge Marianne B. Bowler |

### DECLARATION OF SEAN R. MATT IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

Sean R. Matt, pursuant to 28 U.S.C. § 1746, declares as follows:

1.  I am a member of the firm Hagens Berman LLP, one of the attorneys for Plaintiffs and have been acting as third party deposition coordinator on behalf of Plaintiffs.

2.  To date, Defendants have served approximately 150 subpoenas on third parties in this litigation, including about 94 on absent class members, despite promising the Court during the March 8, 2004, Status Conference that Defendants would take discovery of only a limited number of Class members. In addition to requesting the production of documents, 98 of these subpoenas have demanded that the third party produce a witness for a deposition.

3.  In July, a situation arose highlighting the need for the parties to closely coordinate on the scheduling of third-party depositions. At a time when Plaintiffs were attempting to obtain Defendants' confirmation of the third-party deposition schedule, Plaintiffs received a letter indicating that Defendants had confirmed the deposition of Kaiser Health Plans for just one week hence. Plaintiffs subsequently learned that – over a month before – Defendants had obtained

Kaiser's agreement to produce the witness on the particular date, yet Defendants had waited a month before providing Plaintiffs with notice of the date. Plaintiffs agreed to cover the Kaiser deposition as set. However, Plaintiffs were concerned with the short notice and the delay in receiving it, and consequently wrote to Defendants and requested that they abide by Case Management Order No. ("CMO") No. 10's requirement that "[a] party shall provide a 'three week deposition notice' under which such party provides at least 21 days notice for a proposed deposition." We also requested that Defendants appoint a single scheduling coordinator. Attached at Exhibit 1 is a true and correct copy of my July 16, 2004, letter to Scott Wise reflecting the above.

4. Defendants agreed to appoint a coordinator but did not agree to abide by the 21-day deposition notice requirement. *See* Exhibit 2, a true and correct copy of a July 22, 2004, letter from Scott Wise to myself.

5. During the meet and confer dialogue that ensued, Defendants interpreted the 21-day notice requirement to (i) apply only to party discovery and not third-party discovery; and (ii) that, in any event, the three week notice requirement could be honored by serving a deposition subpoena, negotiating with the third party with regard to the specific date that a witness would ultimately appear, and then providing Plaintiffs' Counsel with mere days notice of the confirmation of the deposition, as long as that date was at least 21 days after the date of the initial subpoena. In sum, the parties "agreed to disagree" on this issue, and Plaintiffs decided to see how the scheduling played out.

6. Thereafter, the parties agreed to work from a master Third-Party Deposition Schedule that Defendants would update weekly and provide to me. In practice, Plaintiffs would then respond with any corrections that were needed based on the information they had, so that

both sides worked from the same schedule. A true and correct copy of my latest exchange with Mr. Winnick on this issue is attached as Exhibit 3.

7. This process worked without major disagreement or incident until the latest exchange. On September 2, 2004, the Schedule that Defendants forwarded confirmed six depositions for the week of September 13 and five for the week of September 20. In response, Plaintiffs requested that Defendants confirm no further depositions for those weeks and proposed reasonable limits on the number of depositions that can be confirmed in any given week and on any given day. As Plaintiffs explained:

> Plaintiffs have a several-member team put together to cover third-party depositions but are understandably limited in the number of depositions that we can cover in any given week. Accordingly, it is unreasonable for defendants to conduct more than five depositions a week, and we ask that defendants limit the number of confirmed depositions to that weekly maximum. We also ask that no more than two depositions be confirmed any given day.

*See* Exhibit 3.

8. On September 8, 2004, Defendants forwarded an updated Third-Party Deposition Schedule. Contrary to Plaintiffs' request, the schedule reflected the confirmation of *eight* depositions for the week of September 13, *seven* for the week of September 20, and listed 15 more as awaiting confirmation. Defendants ignored Plaintiffs' request not to schedule more than two depositions on a single day by confirming three depositions for September 14 and three for September 20. Furthermore, Defendants scheduled the John Deere deposition in this time period, again overriding Plaintiffs' request, and Defendants confirmed a deposition of Oxford Health Plans – a deposition that was not even forecast to occur during these two weeks. Plaintiffs have requested that Defendants move the Oxford and Deere depositions to the week of October 4. As of this filing, Defendants have not responded.

- 3 -

9. As Exhibit 3 reveals, Defendants have declined to agree to limit third-party depositions to the reasonable weekly and daily maximums proposed by Plaintiffs.

10. I believe that Plaintiffs have gone to great lengths to work with Defendants in good faith on the scheduling of these third party depositions. We originally proposed tight coordination, agreed in some instances to attend depositions that Defendants confirmed on less than three-weeks notice, agreed to two depositions in one day (coined "multi-track" depositions, which commonly occur in complex litigation), and have been as flexible as possible in working with Defendants on these issues.

11. Plaintiffs do not have the manpower to prepare for and attend eight third party depositions per week. Plaintiffs have designated a third party deposition team consisting of five attorneys. Even so, these attorneys are not available every day to cover third party depositions given the need to work on other projects in the litigation. Plaintiffs believe that they have made a good faith effort to accommodate Defendants' request for multi-track depositions but simply cannot handle Defendants' proposed volume of weekly depositions without ignoring other, important case obligations

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 10, 2004, at Seattle, Washington.

*[signature]*
SEAN R. MATT

1534.16 0099 MTN.DOC

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **DECLARATION OF SEAN R. MATT IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on September 10, 2004, a copy to Verilaw Technologies for Posting and notification to all parties

By  **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

1534.16 0099 MTN.DOC