## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————
IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE )
LITIGATION )
)
THIS DOCUMENT RELATES TO: )
)
ALL ACTIONS )
)
)
—————————————————————)

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

## B. BRAUN OF AMERICA INC.'S OPPOSITION TO
## PLAINTIFFS' MOTION TO ADD B. BRAUN MEDICAL INC. AS A DEFENDANT

In a last-ditch attempt to avoid dismissal of their claims against B. Braun of America Inc. ("BBA"), the plaintiffs now seek to bring B. Braun Medical Inc. ("BBM") back into this litigation, more than fifteen months after BBM was dismissed by Order of this Court. (Mem. and Order of May 13, 2003 at 46-47.)   The plaintiffs' motion – which is based on misrepresentations of fact, satisfies none of the prerequisites for allowing an amendment at this late date, and, significantly, relies on arguments previously rejected by this Court – must  be denied.

The Court previously considered and rejected the arguments put forth by the plaintiffs as grounds for their motion to add BBM to the AMCC, when it rejected both the plaintiffs' motion to substitute Boehringer Ingelheim Pharmaceuticals, Inc., the manufacturer of Atrovent, for the other related entities named in the AMCC, and the contemporaneously-filed motion to intervene – both of which were submitted in an attempt to cure defects in the plaintiffs' allegations. (Order of June 9, 2004).  Having denied these "untimely" motions, *see id.*, the Court then granted the Boehringer Defendants' pending motion to dismiss on the grounds that "it is undisputed that these companies did not manufacture Atrovent."   (Order of June 9, 2004).   The plaintiffs' reiteration of these rejected arguments as grounds to allow them to remedy the defects in their allegations against BBA by bringing BBM back into this litigation, is disingenuous and in complete disregard of the Court's previous rulings.

In addition, the plaintiffs have wholly failed to comply with Local Rule 15.1(b), which should preclude their motion to amend from being considered by the Court.[1]   To BBA's

---

[1]   Notably, the Boehringer Group opposed the AMCC on the grounds that the plaintiffs had failed to satisfy Local Rule 15.1, and the plaintiffs claimed that it had been done "inadvertently (and regrettably)."  (Pls.' Opp. to Def. Specific Mem. in Support of Motion to Dismiss AMCC at 41.)   The plaintiffs have no excuse for their

(Continued...)

1

knowledge, the motion to add BBM as a defendant to the AMCC has never been served on BBM, and the plaintiffs have not included the required certificate with their motion attesting that such service has been made. This fact alone justifies denying the plaintiffs' motion.

Tellingly, the plaintiffs fail to offer any basis to justify the adding of BBM as a defendant at this stage of the litigation. They pretend that their motion is based on supposedly recent discoveries -- namely, an "inadvertent" omission of BBM from the AMCC and a belated realization that BBM manufactures the drugs that form the basis of the plaintiffs' claims against BBA. (Pls.' Mot. at 1-2.) Neither of these assertions is true. The plaintiffs have long been aware both that BBM was excluded from the AMCC and that BBM is the manufacturer of the drugs at issue. Allowing the plaintiffs to bring BBM back into this litigation after it was dismissed more than fifteen months ago, with no credible explanation for the undue delay, is not justified under Fed. R. Civ. P. 15(a).

## ARGUMENT

### I.      The Court's Previous Decision Denying the Plaintiffs' Motion to Amend Their Allegations to Remedy Defective Pleadings Precludes the Plaintiffs' Motion.

On April 7, 2004, Boehringer Ingelheim Corporation, Ben Venue Laboratories, Inc., and Bedford Laboratories filed a motion to dismiss the AMCC on the grounds that the only relevant drug remaining in the case, Atrovent, is "not manufactured or distributed by any of the Boehringer Defendants named in this suit." (Mem. in Support of Mot. to Dismiss at 1.) In response to this motion, the plaintiffs filed a Motion to Substitute Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer Pharmaceuticals") for Boehringer Ingelheim Corporation and

---

continued disregard of Local Rule 15.1, which results in prejudice to each new defendant added in each new permutation of the plaintiffs' complaint.

a Motion to Intervene on behalf of the National Automatic Sprinkler Industry Welfare Fund, which alleged that it had purchased Atrovent.

As grounds for their motion to substitute Boehringer Pharmaceuticals, the plaintiffs cited Rule 21's provision to correct misjoinder and Rule 15(c)'s provision allowing for amendments to relate back to the original pleading.  (Pls.' Mot. to Substitute at 2-3.)  Further, the plaintiffs claimed that Boehringer Pharmaceuticals had notice of the plaintiffs' action and would not be prejudiced by the substitution of parties because "[t]he two companies are superficially indistinguishable," and "both companies maintain their offices at the same office in Ridgefield, Connecticut."  (*Id.* at 3.)  The plaintiffs defended their failure to move for the substitution of parties sooner on the grounds that the Boehringer Defendants failed to "previously advise the Court during briefing on the motions to dismiss that BIC is the wrong party."  (*Id.* at 2.)

In response to these motions, the Boehringer Defendants pointed out that the plaintiffs' reliance on motions to substitute parties "all but concedes Defendants' point – that the AMCC, now in its fifth version, is still insufficient to keep BIC, Ben Venue, and Bedford as defendants in the class action."  (Boehringer Opp. at 1) (emphasis omitted).  In addition, the Boehringer Defendants noted that "Plaintiffs have offered no reason whatsoever why they did not name BIPI in this suit despite five complaints over the past three years.  Indeed, their actions can only be ascribed ... either to a conscious strategic decision, or (as is more likely) to a consistent pattern of disregard for this Court's instructions and inexcusable negligence."  (*Id.* at 8-9.)  The Boehringer Defendants also argued that the plaintiffs had not satisfied their burden to establish that allowing the amendment would not be prejudicial to the remaining defendants and had not satisfied the prerequisites for relation back of an amendment under Rule 15(c), especially where there was nothing to indicate that the plaintiffs' failure to name BIPI was a "mistake."  (*Id.* at 10-14.)

3

In Orders issued on June 9, 2004, the Court denied the plaintiffs' motion to substitute parties, denied the motion to intervene as "untimely," and granted the Boehringer Defendants' motion to dismiss "on the ground that it is undisputed that these companies do not manufacture Atrovent." (Orders of June 9, 2004.) Hence, the Court rejected the plaintiffs' arguments that they should be allowed to remedy their defective pleadings – including substituting a related corporation that manufactured the product at issue for the improperly named defendant – and dismissed the Boehringer Defendants because, having not manufactured the drugs that are the subject of the plaintiffs' claims, they were not proper parties to the litigation.

Clearly, the Court's rulings should foreclose the plaintiffs' current motion to add BBM as a new party to this litigation in order to remedy their defective allegations against BBA. The plaintiffs have not offered any new arguments or presented any basis to distinguish the current situation from that of the Boehringer Defendants. In fact, the plaintiffs do not even acknowledge the Court's previous rejection of the arguments raised in support of their current motion. For the same reasons that the Court rejected the plaintiffs' motions to remedy their defective pleadings against the Boehringer Defendants, the plaintiffs' motion to add BBM should be denied. Indeed, given that the plaintiffs' attempts to remedy the blatant defects in their pleadings against the Boehringer Defendants were "untimely" when they were attempted in April 2004, there can be no doubt that the current motion – filed four months later – should be denied as untimely.

4

**II.     The Plaintiffs Have Long Been Aware That BBM Was Excluded From the AMCC.**

In September 2002, the plaintiffs filed their Master Consolidated Class Action Complaint ("MCC"), naming BBM as a defendant for the first time.[2]   Along with the other defendants, BBM moved for dismissal on November 4, 2002, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). (BBM Mot. to Dismiss at 1.)  As grounds for its motion, BBM asserted, among other things, that the plaintiffs (1) failed to allege any injury as no plaintiff had alleged making a Medicare co-payment based on the published AWP for a BBM product; (2) failed to allege that BBM made any actionable misrepresentations; and (3) failed to allege that BBM was part of any cognizable RICO enterprise.  (BBM Mem. in Support of Mot. to Dismiss MCC at 1.)

On May 13, 2003, the Court dismissed BBM from this litigation on the grounds that the plaintiffs had failed to plead cognizable RICO enterprises and had failed to satisfy the heightened pleading standards under Rule 9(b).  (May 13, 2003 Order at 45-47.)  The Court held that the plaintiffs had failed to state allegations demonstrating injuries caused by the defendants' conduct, especially where, as with BBM, the products at issue were multi-source generic drugs. (*Id.* at 46.)  The Court gave the plaintiffs thirty days to revise their allegations and to move to amend the MCC to reassert claims against the dismissed defendants.  (*Id.* at 47.)

When the plaintiffs were granted leave to file the AMCC on June 18, 2003,[3] they affirmatively *chose* not to reassert any claims against BBM.  Instead, the plaintiffs brought

---

[2]    The plaintiffs' first complaint, *Citizens for Consumer Justice, et al. v. Abbott Laboratories, Inc. et al.*, 01-CV-12257-PBS, was filed December 19, 2001.  Neither BBA nor BBA was named as a defendant in that complaint.

[3]    The plaintiffs claim in their Motion that, "[o]n December 5, 2003, plaintiffs filed the Amended Master Consolidated Complaint ("AMCC") and named B. Braun of America, Inc. ("BBA") as a defendant."  (Pls.' Mot. at 1.)  This statement is erroneous.  The proposed AMCC, excluding BBM and naming BBA, was filed on June 12, 2003, in response to the Court's Order of May 13, 2003, allowing the plaintiffs thirty days to file a motion to amend the MCC.  The Court granted the plaintiffs' motion allowing the filing of the AMCC on June
(Continued...)

5

allegations against a brand new defendant, BBA, and left BBM, a dismissed party, out of the case. The plaintiffs also altered their allegations, alleging RICO enterprises formed between the defendant manufacturers and pharmacy benefit managers ("PBMs") rather than the physician-manufacturer enterprises that had been dismissed from the MCC.[4] The plaintiffs have offered no evidence to dispute that these were conscious decisions by the plaintiffs to reframe their complaint on different grounds. Having made these decisions more than fifteen months ago, the plaintiffs cannot now seek to bring BBM back into this litigation as a new party based on the incredible assertion that the exclusion of BBM from the AMCC was "inadvertent."

Moreover, as was the case with the Boehringer Defendants, the plaintiffs can offer *no explanation* for their decision to wait until the eve of the dismissal of their claims against BBA to suddenly "discover" that BBM was no longer part of this case. BBA has put the plaintiffs on notice of this fact repeatedly over the last thirteen months, and the plaintiffs' own filings reveal their own knowledge of BBM's absence.

On August 1, 2003, BBA filed its Motion to Dismiss the AMCC and Memorandum in Support, stating:

> In the original Master Consolidated Class Action Complaint ("MCC"), the sole Braun-named entity included as a defendant was B. Braun Medical Inc. ("BBM"), which this Court dismissed in its May 13[th] Order. ***The Amended Master Consolidated Class Action Complaint ("AMCC") does not try to reinstate BBM.*** Rather, the AMCC omits BBM and names B. Braun of America Inc. as a new defendant.

---

18, 2003. Although the plaintiffs filed an amended AMCC on December 5, 2003, none of the allegations relating specifically to BBA were amended.

[4] In the AMCC, the plaintiffs reasserted their claims of RICO enterprises between the manufacturers and publishing companies, (AMCC ¶¶ 620-679), which had been dismissed by the Court's Order of May 13, 2003, (Order of May 13, 2003 at 46), but these claims were again dismissed by the Court (Order of Feb. 24, 2004 at 36).

(Mem. in Support of Mot. to Dismiss at 1).[5]

Hence, the plaintiffs clearly were on notice that BBM was not named in the AMCC at least by August 1, 2003, yet they made no effort at that time to make any new claims against BBM. And this was not the only time notice was given to the plaintiffs by BBA that BBM had not been included in the AMCC. In its Answer to the AMCC, dated April 9, 2004, BBA repeatedly noted that "B. Braun Medical Inc. [] has been dismissed as a defendant in this litigation." (Answer, ¶ ¶ 316 – 20, 322, 324-25.)

Even more significant, the plaintiffs' own filings with this Court demonstrate the falsity of their current position. In their Response to BBA's Motion to Dismiss, filed September 15, 2003, the plaintiffs asserted that, "[t]hese are precisely the same allegations Plaintiffs made regarding B. Braun Medical, Inc. – when Plaintiffs believed B. Braun Medical was the proper defendant to name. *See* MCC ¶ ¶ 79 and 80." (Pls.' Opp. to Defendant Specific Mem. at 45; *see also id.* at 43 (describing B. Braun Medical Inc. as "the original B. Braun defendant named by Plaintiffs"); Pls.' Sur-Reply to Defendant Specific Replies at 35 (noting that B. Braun Medical Inc. was "named in the original MCC").) Thus, the plaintiffs have long been aware that BBM was not a party to the AMCC, an exclusion that was a deliberate decision on their part. To assert to the Court now that they "inadvertently" omitted BBM *and were unaware of that fact* until recently, is nothing but a self-serving fabrication.

**III.    The Plaintiffs' Motion Should Not Be Allowed Pursuant to Fed. R. Civ. P. 15.**

While Fed. R. Civ. P. 15(a) states that leave to amend a complaint "shall be freely given when justice so requires," this "does not mean that leave will be granted in all cases." *Acosta-*

---

[5]   All emphasis added herein unless otherwise noted.

*Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1487, at 611 (2d ed. 1990)). "Among the adequate reasons for denying leave to amend are '*undue delay*' in filing the motion and '*undue prejudice* to the opposing party by virtue of allowance of the amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The denial of a motion to amend "will be upheld as long as the record evinces an arguably adequate basis for the court's decision (e.g., futility, bad faith, undue delay, or a dilatory motive on the movant's part)." *Hatch v. Dept. for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).

### A.    The Plaintiffs Unduly Delayed in Seeking to Add BBM In Direct Contravention of Local Rule 15.1(a).

Under Local Rule 15.1(a), "[a]mendments adding parties shall be sought *as soon as* an attorney reasonably can be expected to have become aware of the identity of the proposed new party." Local Rule 15.1(a) is "[c]onsistent with [the] policy" that undue delay, by itself, may warrant denial of a motion to add a new party. *Data General Corp. v. Grumman Sys. Support Corp.*, 825 F.Supp. 340, 345 (D. Mass. 1993). As the First Circuit has held, "especially where allowing the amendment will cause further delay in the proceedings, 'undue delay' in seeking the amendment may be sufficient basis for denying leave to amend." *Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 52 (1st Cir. 1998). Moreover, the First Circuit has long held that "[w]here, as here, considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" *Stepanischen v. Merchant's Despatch Trans. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983) (quoting *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19-20 (1st Cit. 1979) (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967))).

8

The plaintiffs clearly have been aware of the identity of BBM since the filing of the MCC on September 6, 2002. The MCC named BBM as a defendant, and this Court dismissed BBM as a defendant on May 13, 2003. The plaintiffs then *chose* to omit BBM from the AMCC filed on June 18, 2003, in favor of suing B. Braun of America Inc. Under Local Rule 15.1, the plaintiffs' deliberate decision to omit BBM, a party about whom they were clearly aware as far back as September 2002, precludes the plaintiffs from amending their complaint now to bring BBM into this litigation as a "new" party in September 2004. No one can say that such a two-year delay meets the "as soon as" aware requirement of Local Rule 15.1(a).

Despite their obvious awareness of BBM, the plaintiffs now claim that, "during the recent deposition of BBA's 30(b)(6) designee, it became clear that BBM is a proper party to this litigation as well. Namely, BBM manufactures at least some of the AWPIDs in the AMCC." (Plaintiffs' Mot. to Add BBM at 1-2.) But plaintiffs' own MCC, filed two years ago, likewise alleged that BBM manufactured some of the drugs that are the subject of this litigation. (MCC at 58.) And BBM did not dispute this allegation. *See* BBM's Mem. In Support of Mot. To Dismiss MCC at 2 (referring to "Braun's dextrose or dextrose sodium chloride"); *see id.* at 2-5.

Moreover, as soon as the plaintiffs chose to exclude BBM and to bring their claims against BBA, BBA objected on the grounds that it had not manufactured any of the drugs at issue in the AMCC. *See* BBA Mem. in Support of Mot. to Dismiss AMCC at 2 ("BBA has not manufactured any drugs referenced in the AMCC."). BBA has continued to assert this objection to date. For instance, in response to each of the plaintiffs' requests for the production of documents, BBA stated the following objections:

> As stated in its Motion to Dismiss, BBA is not a proper party to this litigation.
> This Court lacks jurisdiction and venue over BBA. Moreover, BBA neither
> manufactures nor sells any of the pharmaceuticals listed in Appendix A to the
> Amended Master Consolidated Class Action Complaint ("AMCC"). As a result,

9

> BBA has no reason to believe that it has responsive documents or information in
> its possession relating to the subject matter of this litigation.

(BBA's Obj. and Resp. to Plaintiffs' Omnibus Req. for Prod. and Interr. at 2 (Attached hereto as

Exhibit A); BBA's Obj. and Resp. to Plaintiffs' Req. for Prod. to Defendants Regarding HHS

ASPs at 2 (Attached hereto as Exhibit B); BBA's Obj. and Resp. to Plaintiffs' Third Set of Req.

for Prod. of Documents to All Defendants at 2 (Attached hereto as Exhibit C).)

To the extent that there could be any remaining doubt, BBA could not have been more

clear in its Answer, dated April 9, 2004 and filed pursuant to the Court's Order without waiver of

BBA's claims regarding the jurisdiction of this Court: "B. Braun Medical Inc. manufactures

dextrose, dextrose in lactated ringers, dextrose with sodium chloride, heparin sodium (porcine) in

d5w, sodium chloride, and sodium chloride (gu irrigant)." (Answer of BBA to AMCC ¶ 314.)

Nothing in the August 17, 2004 deposition of BBA's corporate representative provided

any further clarifications on these matters and certainly did not contradict these statements.

Hence, the plaintiffs have long been aware that BBM -- and not BBA -- manufactures some of

the drugs at issue in this litigation. Far from hiding this fact, BBA has repeatedly stated it as the

basis for its objection to being dragged into this litigation. Only now, when they are forced to

admit to the Court that they lack any direct basis for exerting jurisdiction over BBA,[6] have the

plaintiffs desperately tried to attempt to revive some claims against BBM, over fifteen months

after it was dismissed by this Court.

---

[6] In the Court's Order of February 24, 2004, granting in part and denying in part the defendants' motion to
dismiss the AMCC, the plaintiffs were given six months to engage in jurisdictional discovery relating to BBA
and ordered to "respond to the issues of personal jurisdiction and whether the service of B. Braun of America
relates back to the service of B. Braun Medical, Inc. by August 24, 2004." (Feb. 24, 2004 Order at 23.)

Indeed, the reality is that plaintiffs' attempt to assert new allegations against BBM now is woefully untimely. They have plainly disregarded the Court's May 13, 2003 Order giving them only thirty days to state new allegations against parties dismissed by that Order. (May 13, Order at 47.) They have also plainly disregarded Local Rule 15.1's requirement that leave to add a new party be sought "as soon as" counsel is aware of the identity of the proposed new party. Allowing the plaintiffs to amend their complaint to reassert claims against BBM more than two years after they initially brought claims against BBM, more than fifteen months after BBM was dismissed by this Court, and more than fourteen months after the plaintiffs deliberately chose to exclude BBM from their AMCC would make a mockery of the Federal and Local Rules, as well this Court's prior Orders and repeated admonitions to the plaintiffs that they will not be allowed to continue to amend their complaint to remedy its defective allegations. *See, e.g.*, Tr. of Nov. 21, 2003 Hearing at 46:8-9 ("I'm not allowing any amendments that add dramatically new claims"); 52:6-15 (stating that "I'm not going to allow any new claims," and, in response to the plaintiffs' suggestion that they would continue to develop new claims over time, stating that "It's not going to happen anymore because I need to get this case in some sort of manageable form"); 119:2-14 (allowing plaintiffs ten days to file amended complaint to address deficiencies in allegations of the AMCC but reiterating that "[t]his is it," and that there will be "no major new theories") (Attached hereto as Exhibit D).

## B.    The Plaintiffs' Reliance on Rule 15(c) is Misplaced.

Rather than making any attempt to justify their undue delay, the plaintiffs make the wholly irrelevant argument that the motion to add BBM should relate back to the filing of the AMCC pursuant to Fed. R. Civ. P. 15(c)(3), an argument that the Court rejected when it denied the motion to substitute Boehringer Pharmaceuticals. The argument is equally inapposite here.

11

Rule 15(c)(3) provides that an amendment to a pleading relates back to the date of the original pleading when:

> the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

At its heart, the purpose of Rule 15(c)(3) is to address situations where a plaintiff has incorrectly identified the defendant; it "enables plaintiffs to correct their pleadings and add defendants whom they would have named in the original complaint, if not for a mistake regarding identity or proper names." *In re Xchange Inc. Sec. Litig.*, No. 00-10322, 2002 WL 1969661, at *3 (D. Mass. Aug. 26, 2002). But "[i]t does not protect plaintiffs who *knew* of the late-named party at all times but failed to include that party in the original filing." *Id.* (emphasis in original). As the First Circuit has explained,

> Rule 15(c)(3) requires courts to ponder whether, in a counterfactual error-free world, the action would have been brought against the proper party, not whether the action should have been amended subsequently to include that party. Thus, what the plaintiff knew (or thought he knew) at the time of the original pleading generally is the relevant datum in respect to the question of whether a mistake concerning the identity actually took place. *See, e.g., Wells v. HBO & Co.*, 813 F.Supp. 1561, 1567 (N.D. Ga. 1992)("[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset.").

*Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir. 2000) (internal citation omitted).

Clearly, the plaintiffs' decision not to assert new allegations against BBM after it was dismissed on May 13, 2003 and instead to name BBA as a new party in the AMCC was not a "mistake," but a conscious choice. Such a decision cannot form the basis for a claim of relation back under Rule 15(c). *See also Wilson v. United States Gov't*, 23 F.3d 559, 563 (1st Cir. 1994)

12

(finding that Rule 15(c) does not apply where "there was no 'mistake concerning the identity of the proper party,'" but the plaintiff "merely lacked knowledge of the proper party"); *Broner v. Flynn*, 311 F.Supp.2d 227, 237 (D. Mass. 2004) (finding that the "plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)(3) was meant to address"); *Bamberg v. SG Cowen*, 236 F.Supp.2d 79, 86 (D. Mass. 2002) (finding that Rule 15(c) does not apply where the plaintiff's "failure to name SG Cowen as a defendant was not due to 'a mistake concerning the identity' of SG Cowen, but rather a perceived lack of sufficient evidence").

Even if there were some basis for applying Rule 15(c) to this situation (which there is not), the plaintiffs have not met the requirements for doing so. The plaintiffs claim that, in light of the relationship between BBA and BBM and because BBM previously was a party to this litigation, BBM should have been on notice of the claims in the AMCC. This is wrong. BBM was on notice only that it had been dismissed by this Court's May 13, 2003 Order, and that plaintiffs chose not to assert any new claims against it within the thirty-day period allowed for seeking leave to file the AMCC. Even if BBM were aware of the AMCC, that fact does not satisfy the requirements of Rule 15(c)(3)(B). Under these circumstances, it was entirely reasonable for BBM to assume that the plaintiffs had no further interest in pursuing claims against it.

As the Court held in *In re Xchange Inc. Sec. Litig.*, No. 00-10322, 2002 WL 1969661, at *4 (D. Mass. Aug. 26, 2002),

> Nothing prevented the plaintiffs from naming AA in the original complaint; they simply overlooked a rather obvious defendant. Under these circumstances, AA had insufficient notice of the claims against it because it might have reasonably concluded that plaintiffs deliberately chose to omit Xchange's auditors from the action for tactical reasons.

13

Similarly, BBM had no reason to believe that the plaintiffs meant to include it in the AMCC; all of the plaintiffs' conduct demonstrated precisely the opposite.

The other bases offered by the plaintiffs – Rule 21 and the identity-of-interest doctrine – are equally unavailing, and were also rejected by the Court when it granted the Boehringer Defendants' motion to dismiss. *First*, as the plaintiffs recognize, "[a] party may resort to Rule 21 to add a party who for *some innocent reason* has not been made a party to the action and whose presence is necessary and desirable." *Data Gen. Corp.*, 825 F.Supp. at 344. The plaintiffs have not offered, and cannot offer, any innocent reasons justifying both their failure to include BBM in the AMCC and their motion to bring BBM back into this litigation now. *Second*, the identity-of-interest doctrine does not provide a separate basis for allowing a motion to amend; it simply relates to a determination of whether the proposed new defendant has received sufficient notice of the action that bringing that defendant into the litigation would not be prejudicial. *See Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102 (1st Cir. 1979) (finding that "[t]he identity of interests concept, however, bears only on the requirement of Rule 15(c)(1)"); *see also Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002) (recognizing that Rule 15(c)(3) "allows some claims that otherwise might be dismissed on the basis of procedural technicalities to prosper while at the same time keeping the door closed to other claims that have been allowed to whither on the vine"). As a result, neither Rule 21 nor the identity-of-interests doctrine provides a basis upon which the plaintiffs should be allowed to amend their complaint yet again.[7]

---

[7] Moreover, the same arguments raised by the plaintiffs in this motion were rejected by the Court when it denied the plaintiffs' Motion to Substitute Proper Party Boehringer Inhelheim (sic) Pharmaceuticals, Inc. for Boehringer Ingelheim Corporation. *See id.* at 2-4 (basing their motion on Rules 21 and 15(c) and on the claim that they only recently learned which corporation actually manufactures Atrovent); Order of June 9, 2004 (denying motion to substitute parties).

14

## C.    The Plaintiffs' Motion Demonstrates Bad Faith
and Is Unfairly Prejudicial.

Although the plaintiffs' failure to justify their undue delay in seeking leave to add BBM to the AMCC, by itself, should result in the denial of their motion, there are other, equally compelling grounds for denying the motion, such as the fact that the plaintiffs clearly brought their motion in bad faith and that allowing their motion will unfairly prejudice BBA, BBM, and the remaining defendants in the AMCC.

As with the plaintiffs' motion to substitute Boehringer Pharmaceuticals, the plaintiffs' motion to add BBM has been brought solely to avoid dismissal of their claims against BBA, a motive which is demonstrated by the fact that the plaintiffs have offered no basis for asserting jurisdiction over BBA other than through its ownership of the stock in BBM. *See* Pls.' Supplement to their Opposition. Despite the plaintiffs' false representations to the Court that the omission of BBM from the AMCC was inadvertent and that they only learned of BBM's role as the manufacturer of the products at issue during the recent deposition of a BBA 30(b)(6) witness, the plaintiffs have offered no explanation for their failure to bring this motion within a reasonable period after they were expressly put on notice of the fact that BBM had been omitted from the AMCC, nor for their utter (and repeated) failure to comply with the requirements of Local Rule 15.1.

The only reasonable conclusion that may be drawn from these facts is that the plaintiffs' motion was brought in bad faith and as an attempt to circumvent the Court's ruling regarding the exercise of personal jurisdiction over BBA. The plaintiffs' blatant efforts to manipulate and to deceive the Court regarding the relevant facts cannot be condoned.

Further, allowing the plaintiffs to amend the AMCC to bring claims against BBM would be prejudicial to BBM, BBA, and the remaining defendants. BBM had no reason to believe it

15

would be dragged back into this litigation more than a year after being dismissed by this Court. Bringing BBM into this complex MDL litigation now would require it to "catch up" to the remaining defendants, who have been moving forward on developing their cases for well over a year. During that time, millions of pages of documents have been produced and dozens upon dozens of depositions have been taken, in none of which BBM participated because it was not party to this litigation. Despite the plaintiffs' assertion that the relationship between BBA and BBM precludes any prejudice to BBM, there is no significant reason why BBA would have been expected to have been involved in these developments on behalf of BBM. This is especially true in light of the fact that BBM was *already dismissed from this case*, and, as the plaintiffs have implicitly conceded, there is no basis for asserting jurisdiction over BBA in this litigation.

Bringing BBM into the litigation now would also be highly prejudicial to BBA. Having objected for more than a year to being pulled into this litigation, BBA has been forced to wait for the plaintiffs to develop the "jurisdictional discovery" that they claimed to need in order to address BBA's straightforward assertion that it is not a proper party. Now that their time has expired, the plaintiffs are trying to further delay BBA's dismissal by asserting that its relationship to BBM is sufficient to keep it in this litigation. It is not. *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992) ("Ordinarily, courts respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent."). The time has come -- not for more delays arising from the untimely assertion of allegations against a "new" party -- but for the plaintiffs to stand on their AMCC against BBA. BBA's dismissal from this litigation cannot fairly be deferred any longer.

16

The Court must also consider the potential prejudice to the remaining defendants in the AMCC, who have been moving forward with the development of their evidence and arguments for more than a year. After numerous amendments by the plaintiffs designed to remedy specifically-identified defects in the AMCC, the Court expressly told them that further amendments would not be allowed. *See, e.g.,* Tr. of Nov. 21, 2003 Hearing at 46:8-9 ("I'm not allowing any amendments that add dramatically new claims"); *see also id.* at 52:6-15, 119:2-14. Yet, when once again faced with clear and insurmountable defects in their pleadings, the plaintiffs' response is to seek leave to amend. The plaintiffs cannot be allowed to continue adding new parties in this MDL litigation as if they were exchanging players in some fantasy football league. This game-playing must stop. The time for them to add new parties reasonably expired when they were given leave to file their AMCC in June 2003.

### D.    Adding BBM to the AMCC would be Futile.

Finally, the plaintiffs' motion to add BBM to the AMCC should be denied because it is ultimately futile. The plaintiffs have not provided the text of their proposed amendments to the AMCC but have generally indicated that the allegations against BBM would be similar to those brought against BBM in the MCC and those brought against BBA in the AMCC. But, of course, the plaintiffs conveniently overlook the fact that all of those allegations are fatally defective.

Assuming that the plaintiffs will only insert BBM into the existing allegations in the AMCC, any such claims against BBM would have no basis. The MCC, which was dismissed as to BBM, asserted that the manufacturers had participated in two RICO enterprises, one with publishers and the other with physicians. The Court found that neither claim had any merit. In the AMCC, the plaintiffs "discovered" a third RICO enterprise, this one allegedly involving manufacturers and PBMs. But BBM, like BBA, has never had and does not have any

17

relationships with any PBMs. As a result, there is no basis for any RICO claims against BBM based on the plaintiffs' allegations.

Of course, as with the MCC, the plaintiffs have made no specific allegation that any plaintiff has purchased any product manufactured by BBM based upon the AWP published for that BBM product. As a result, the plaintiffs' amended allegations would fail to state a claim against BBM.

Because the claims against BBM would not withstand scrutiny under Fed. R. Civ. P. 9(b) and 12(b)(6), allowing the plaintiffs to amend the AMCC to allege such claims would be futile. This fact alone is sufficient to deny the plaintiffs' motion. *See, e.g.*, *Maine State Bldg. and Constr. Trades Council v. United States Dept. of Labor*, 359 F.3d 14, 18-19 (1st Cir. 2004); *Hatch v. Dept. of Children, Youth, and their Families*, 274 F.3d 12, 19 (1st Cir. 2001). Considered in conjunction with the plaintiffs' clearly improper motive in seeking to bring BBM back into this litigation and their failure to comply with any portion of Local Rule 15.1, there is no reasonable basis upon which to grant the plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion to Add B. Braun Medical Inc. as a Defendant should be denied.

Dated: September 10, 2004

Respectfully submitted,


_____ s/ Colin R. Kass _____
Daniel F. Attridge, P.C.
Colin R. Kass
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

**_Counsel for B. Braun of America Inc._**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | CIVIL ACTION: 01-CV-12257-PBS |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | Judge Patti B. Saris |
| ALL ACTIONS ) | |

## APPENDIX OF UNREPORTED AUTHORITY IN SUPPORT OF
## B. BRAUN OF AMERICA INC.'S OPPOSITION TO
## PLAINTIFFS' MOTION TO ADD B. BRAUN MEDICAL INC. AS A DEFENDANT

1.   *In re Xchange Inc. Sec. Litig.*, No. 00-10322, 2002 WL 1969661 (D. Mass. Aug. 26, 2002).



Not Reported in F.Supp.2d
2002 WL 1969661 (D.Mass.), Fed. Sec. L. Rep. P 92,260
(Cite as: 2002 WL 1969661 (D.Mass.))

Page 1

**C**

United States District Court, D. Massachusetts.

In re XCHANGE INC. SECURITIES LITIGATION

No. CIV.A.00-10322-RWZ.

Aug. 26, 2002.

MEMORANDUM OF DECISION

ZOBEL, D.J.

*1 Plaintiffs are investors who purchased stock in Xchange, Inc. ("Xchange"), a publicly traded software company, between December 9, 1998, and September 29, 2000. They allege that the company, its officers, and its auditors knowingly used an inappropriate revenue recognition model in order to manipulate and artificially inflate the company's reported earnings. Specifically, they claim that Xchange was required to use "contract accounting," which measures incremental revenue over time, because the company's software products often require substantial modification and installation over the course of many months; instead, they say Xchange fraudulently recorded revenue using "out-of-the-box accounting," which recognizes all revenue from one contract on the date of that contract.

Plaintiffs filed a class action complaint on February 21, 2001, against Xchange and four of its officers, Andrew J. Frawley, F. Daniel Haley, David F. McFarlane and Robin Green asserting two counts of securities fraud: (1) violation of 15 U.S.C.S. § 78j(b) ("Exchange Act § 10(b)"), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), and (2) violation of 15 U.S.C.S. § 78t(a) ( "Exchange Act § 20(a)"). The complaint described numerous misstatements by Xchange officers between July 24, 2000, and September 29, 2000, when an Xchange press release revealed that the company was switching to "contract accounting" for certain transactions. Six months later, on August 3, 2000, plaintiffs filed an amended complaint adding two new defendants (Xchange's auditors, Arthur Anderson ("AA"), and Xchange's Chief Financial Officer, John G. O'Brien) and three new claims. The amended complaint alleges: violation of Exchange Act § 10(b) and related Rule 10b-5 by Xchange and its five officers (Count I); violation of Exchange Act § 20(a) by the five individual officers (Count II); violation of Exchange Act § 10(b) and related Rule 10b-5 by Arthur Anderson (Count III); violation of 15 U.S.C.S. § 77k(a) ("1933 Act § 11") by Xchange, its five officers and Arthur Anderson (Count IV); and violation of 15 U.S.C.S. § 77o ("1933 Act § 15") by the five individual officers (Count V). The first two claims are identical to those in the original complaint, except that they add defendant O'Brien; the last three claims are newly raised in the amended complaint.

Defendants Xchange and AA have moved for dismissal on numerous grounds.

They argue initially that the statute of limitations bars all claims first raised in the amended complaint either against AA or under § 11 and § 15 of the 1933 Act. The parties agree that the applicable statute of limitations for actions under the Exchange Act and the 1933 Act is one year from the date when the plaintiffs knew or should have known of their injury. They disagree about the date the cause of action accrued: plaintiffs insist that the statute began to run on September 29, 2000 [FN1], when they received actual notice of the alleged fraud in the form of Xchange's announcement that it was switching to "contract accounting" for certain transactions, whereas defendants argue that the limitations period started to run by March or April of 2000, when plaintiffs had ample information to discover their claims.

> FN1. At various points in their briefs, plaintiffs refer to the date of actual notice as both September 29, 2000 (when Xchange announced that it *expected* low third quarter results, in part because it would be using the contract accounting method for some transactions) and October 2, 2000 (when Xchange announced its *actual* third quarter results, elaborating on its shift to contract accounting). I will continue to use the September 29, 2000, date for the sake of consistency, particularly as there is no difference between the dates for purposes of a statute of limitations analysis.

*2 The relevant question in determining the statute of limitations for a securities fraud action is not when plaintiffs actually learned of the fraud, but rather when they should have discovered it through reasonable diligence. " 'Storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner... and his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Cooperative de Ahorro Y Credito Aguada v. Kidder, Peabody & Co.,* 129 F.3d 222, 224 (1st Cir.1997) (citing *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987)).

The complaint describes a number of "storm warnings" which put the plaintiffs on inquiry notice of their claims long before September 29, 2000. Most notable is the widely-publicized accounting controversy that took place in early 2000 regarding the accounting for a contract between Xchange and its competitor, MicroStrategy. The contract,



Not Reported in F.Supp.2d
2002 WL 1969661 (D.Mass.), Fed. Sec. L. Rep. P 92,260
**(Cite as: 2002 WL 1969661 (D.Mass.))**

Page 2

dated December 28, 1999, was recorded by both companies in the fourth quarter of 1999 and made up a large percentage of both companies' revenue for that quarter. In early 2000, MicroStrategy announced that the contract had been improperly reported and should have been recorded in the first quarter of 2000; it restated its fourth quarter 1999 results, and announced that it would restate its revenue for the prior three years using "contract accounting" in order to properly recognize incremental revenue over time. MicroStrategy's stock subsequently plummeted from $226 per share to $74 per share in two days. Investors sued both MicroStrategy and its auditors, PricewaterhouseCoopers, based on the improper revenue recognition.

MicroStrategy's announcements prompted considerable press coverage regarding the contract between Xchange and MicroStrategy. Analysts publicly questioned whether Xchange, too, had misreported the contract revenue in order to manipulate quarterly earnings. Xchange stood by its revenue statements and did not restate its earnings for the MicroStrategy contract, emphasizing that its auditors had approved the accounting. Nevertheless, Xchange's stock also experienced a dramatic (albeit more gradual) drop in value from a high of $67.44 per share on March 28, 2000, to only $12.19 per share on April 28, 2000.

Each of these "storm warnings"--a public controversy over the accounting for one of Xchange's biggest contracts, Xchange's failure to restate revenue from the contract after MicroStrategy did so, and the subsequent sharp drop in Xchange's stock price--occurred by late April of 2000 and triggered the plaintiffs's duty to investigate the possibility of fraud. Since the facts underlying plaintiffs' fraud claims--that Xchange used "out-of-the-box accounting," that its software products were frequently modified and installed over long periods of time, and that accounting guidelines require such contracts to be recognized under the "contract accounting" method--were matters of public record, plaintiffs are charged with such knowledge. They thus should have known of their claims against Xchange and its auditors by April 2000 at the latest.

*3 Plaintiffs argue that, even if this is so, the statute of limitations was tolled until September 29, 2000, when they had actual notice of their claims, because Xchange fraudulently concealed its fraud by "fail[ing] to disclose that out-of-the-box accounting was an inappropriate method for recognizing Xchange's revenue." However, this Circuit has held that, "[i]rrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim." *Truck Drivers & Helpers Union v. National Labor Relations Board,* 993 F.2d 990, 998 (1st Cir.1993). Since Xchange's accounting method, the nature of its software products and contracts, and the relevant accounting guidelines were matters of public knowledge, plaintiffs did not exercise due diligence in investigating their claims. Accordingly, they may not claim fraudulent concealment, and the statute of limitations began to run in April 2000 when plaintiffs had sufficient knowledge to trigger a duty to investigate.

Plaintiffs filed their first complaint on February 21, 2001, well within the statute of limitations. The amended complaint, which added new claims and new defendants, was filed on August 3, 2001, after the one-year statute of limitations had run. Thus, the new claims are time-barred unless they relate back to the original complaint.

Under *Federal Rule of Civil Procedure 15(c)(3),* an amendment adding a new party relates back to the filing of the original complaint only if three requirements are met: (1) "the claim or defense asserted in the amended pleading arose out of the conduct, occurrence or transaction set forth or attempted to be set forth in the original pleading;" (2) the new party "has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits;" and (3) the new party 'knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [him]." ' *Rule 15(c)(3).*

With respect to AA, the first element is easily satisfied because the claims raised against AA in the amended complaint involve the same allegedly fraudulent revenue statements and earnings reports that served as the basis for the claims against Xchange and its officers in the original complaint. Plaintiffs maintain that the second element is also satisfied because, as Xchange's auditors, AA would necessarily have been informed of this class action as a contingency to be accounted for in the company's financial statements. Whether or not this is the case, it is clear that the third element of *Rule 15(c)(3)* is not satisfied--the plaintiffs' failure to name AA in the original complaint was not the result of a mistake in the identity of the proper party.

*Rule 15(c)(3)* enables plaintiffs to correct their pleadings and add defendants whom they would have named in the original complaint, if not for a mistake regarding identity or proper name. It does not protect plaintiffs who *knew* of the late-named party at all times but failed to include that party in the original filing. "What the plaintiff knew (or thought he knew) at the time of the original pleading generally is the relevant inquiry in respect to the question of whether a mistake concerning identity actually took place." *Leonard v. Parry,* 219 F.3d 25, 29 (1st Cir.2000).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2002 WL 1969661 (D.Mass.), Fed. Sec. L. Rep. P 92,260
(Cite as: 2002 WL 1969661 (D.Mass.))

**\*4** The amended complaint states that, before September 29, 2000, Xchange and its officers "repeatedly assured investors that [it had] appropriately accounted for the [MicroStrategy] transaction and Defendant AA had confirmed this." Thus, according to their own allegations, plaintiffs knew at the time they filed the original complaint, from statements by defendants, that AA had reviewed and approved Xchange's allegedly fraudulent revenue reports. Nothing prevented plaintiffs from naming AA in the original complaint; they simply overlooked a rather obvious defendant. Under these circumstances, AA had insufficient notice of the claims against it because it might have reasonably concluded that plaintiffs deliberately chose to omit Xchange's auditors from the action for tactical reasons. Accordingly, the claims against AA do not relate back and are time-barred.

The other new defendant, Mr. O'Brien, is in a different position. The claims against him satisfy all three requirements of Rule 15(c)(3): first, they involve the same conduct and transactions as those claims raised in the original complaint; second, as chief financial officer, O'Brien has an identity of interest with the company and is presumed to have received notice of this action as soon as it was brought, _Serrano v. Gonzalez,_ 909 F.2d 8, 12 (1st Cir.1990) (citing _Hernandez Jiminez v. Astol Calero Toledo,_ 604 F.2d 99, 102-03 (1st Cir.1979)); finally, given that the original complaint named Xchange's chief executive officer, chief strategy officer, chief operating officer and senior vice president, Mr. O'Brien should have known, as the only corporate officer not named in the original complaint, that he was omitted by mistake. Therefore, the claims against him do relate back.

Defendants also challenge for lateness the new claims under the 1933 Act. Counts IV and V allege that defendants filed false or misleading registration statements in connection with Xchange's IPO on December 9, 1998, and Second Offering on June 4, 1999. Since these claims were added after the one-year statute of limitations had passed, they, too, are time-barred unless they relate back to the original complaint.

A new claim relates back to the date of the original pleading if the claim "arose out of the conduct, transaction or occurrence set forth... in the original pleading." Rule 15(c)(2). By definition, plaintiffs' new claims under § 11 and § 15 the 1933 Act involve misstatements made in Xchange's registration statements. Yet, the original complaint made no reference to Xchange's December 1998 IPO or June 1999 Second Offering, nor did any allegations concern the registration statements for those offerings. Indeed, that complaint did not assert any fraud prior to July 24, 2000, but limited its allegations to various financial reports and public announcements made by defendants between July 24, 2000, and September 29, 2000. Based on these narrowly-drawn allegations, defendants could not have anticipated that this action would reach as far back in time as the IPO and Second Offering. Because the new claims are not supported by any conduct, transaction or occurrence alleged in the original complaint, they do not relate back and are dismissed as time-barred.

**\*5** Defendants have urged several other grounds for dismissal. They argue (1) that plaintiffs failed to satisfy the strict pleading requirements; (2) that they failed to identify any misstatement by defendants; (3) that the allegedly false and misleading statements were not material; (4) that the complaint is written in a "disjointed style" that violates pleading requirements; and (5) that plaintiffs lack standing to bring claims under the 1933 Act because they have not established that their stock can be traced back to the IPO or Second Offering. The amended complaint, read in the light most favorable to the plaintiffs, sufficiently alleges material misstatements on the part of the defendants and meets the relevant pleading requirements. Defendants' first four arguments are thus unavailing. I need not consider whether defendants' fifth argument (that plaintiff lack standing to bring claims under the 1933 Act) has merit, because Claims IV and V are dismissed as time-barred.

For the reasons stated above, defendants' motion to dismiss is ALLOWED as to Counts III, IV and V, and DENIED as to Counts I and II.

2002 WL 1969661 (D.Mass.), Fed. Sec. L. Rep. P 92,260

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

This is to certify that true and correct copies of the foregoing B. Braun of America Inc.'s Response to Plaintiffs' Motion to Add B. Braun Medical Inc. as a Defendant and Appendix of Unreported Authority in Support Thereof have been served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties on this 10th day of September, 2004.

s/ Colin R. Kass
Daniel F. Attridge, P.C.
Colin R. Kass
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
(202) 879-5000
Fax: (202) 879-5200

***Counsel for B. Braun of America Inc.***