**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 146 CIVIL ACTION: 01-CV-12257 PBS |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS ) ) ) | Chief Magistrate Judge Marianne B. Bowler |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM MCKESSON CORP.**

McKesson Corp. ("McKesson") seeks to oppose Plaintiffs' Motion to Compel by arguing it has partially complied with its obligations under the subpoena. Indeed, it seeks to have sanctions levied against Plaintiffs based on its purported compliance prior to the filing of the Motion. Having delayed fulfilling any of its obligations under the Subpoenas issued upon it by Plaintiffs for over five months, and only beginning a minor, piecemeal production just prior to the Motion with minor supplementation thereafter, McKesson's opposition must fail.

**I.    MCKESSON'S DELAY**

McKesson's explanations for its delay in complying with the Subpoenas are groundless excuses. To date, it has taken a tact of apparently deliberate delay even before identifying and producing the simplest and most innocuous of documents.

Apparently aware that the mere filing of formal written objections, no matter how broad, does not excuse failure to begin identification and production of responsive documents, McKesson seeks to excuse the overall course of its delay by stating that its outside counsel had not accepted service of the Amended Subpoena until June 22nd. *See* McKesson's Response to plaintiffs' Motion To Compel, at 4. However the Subpoena and Amended Subpoena were served directly on

McKesson which never challenged the adequacy of service at any time, not even in its formal written objections to the initial Subpoena.[1]

However, even after counsel "accepted" service of the Amended Subpoena, McKesson continued to drag its feet, despite its awareness of the tight schedule under which Plaintiffs were operating in regards to the five "fast track" defendants. Indeed, McKesson seems to believe that identification and production of documents responsive to a subpoena need not be completed in a timely and reasonable manner. Thus, for example, although Plaintiffs simply request "All contracts between You and Pharmacy Benefit Managers Caremark, Medco, Express Scripts, and AdvancePCS," a request for conspicuous documents, McKesson states in its Opposition, seven months after production was due, that it "is still searching for any such documents." *See id.*, at 14.

Further, rather than respond substantively, McKesson attempts to place the delay in whole or in part on Plaintiffs lap. However, Plaintiffs have made every effort to facilitate identification and production of documents, and alleviate significant burdens from McKesson. For example, Plaintiffs agreed to limit the pricing data requested to only a sampling of thirty of McKesson's hundreds of customers. *See* Declaration of Scott A. George ("George Decl."), at ¶ 3 (attached hereto as Exhibit A). Similarly, whereas at least one other wholesaler subject to an identical Subpoena has produced pricing data without an NDC list assembled and provided by Plaintiffs, Plaintiffs agreed to produce such a list to McKesson to reduce its burdens and move other discovery forward.[2] *See id.* at ¶ 5.

---

1   Contrary to McKesson's characterization in its Opposition, Plaintiffs did not aver in their moving papers that McKesson has served no formal written objections to date. Rather, Plaintiffs correctly stated that McKesson only served formal written objections to the initial Subpoena. McKesson has never served formal objections to the Amended Subpoena, but rather verbally adopted the initial objections one and one half months after service of the Amended Subpoena. Although untimely, Plaintiffs' counsel accepted that verbal adoption and has not argued that McKesson waived its objections.

2   The two years of data McKesson has agreed to produce is not the basis of the Motion, but may be relevant to the relief Plaintiff's seek. Plaintiffs provided the promised NDC list to McKesson on August 30th. As of this date, McKesson still has not produced the related pricing data for the undisputed two years. If, by the time of the hearing,

2

Most recently, on August 31st and in continuing efforts to move production forward, Plaintiffs counsel proposed additional limitations on the already reasonable scope of Requests Nos. 4 and 5. *See id.* at ¶ 4. To date, however, Plaintiffs counsel has heard nothing from McKesson -- no agreement, counter proposal or production of documents. *See Id.* Until the filing of the Motion, the nature of Plaintiffs engagement with McKesson was wholly in keeping with the spirit of cooperation to speed production and avoid any unreasonable burdens.[3] With this Motion, Plaintiffs seek to cease McKesson's on-going delays and require earnest production by a date certain.

## II.   MCKESSON'S COMPLIANCE TO DATE

Having failed to explain its delay throughout the first half of the year to begin production, McKesson seeks to convince this Court that it has adequately complied with its obligations under the Subpoenas, so much so, that Plaintiffs' Motion should not have been filed in the first place.

**A.** *McKesson's Production Of 27 Documents*. McKesson's so-called "significant document production" (*See* Opposition, p. 7) just prior to the filing of the Motion by Plaintiffs was little more than 27 documents, *including three duplicates* and a disc of data that was partially responsive to three of the fifteen Requests.   *See* George Decl. at ¶ 6. Even after the filing of the Motion, McKesson has produced few other documents relating to a Texas litigation that it admits are only of tangential relevance, while a sea of far more relevant documents remain apparently unidentified and not produced.

Indeed, in recent conversations with Plaintiffs' counsel, McKesson has taken the position that any further document production should wait until completion of the noticed 30(b)(6)

---

McKesson still has not produced the pricing data, Plaintiffs request that McKesson be ordered to produce such data within five (5) days.

3        If McKesson wishes to be reimbursed for the costs of production, it could have requested this through an appropriate Motion in the months that preceded the Motion to Compel. *See Britain v, Stroh Brewery Co.*, 136

3

deposition, in the apparent expectation that Plaintiffs would thereafter micromanage McKesson in its document review, and not seek to verify that McKesson has made a good-faith effort to fulfill its obligations under the Amended Subpoena. To date, McKesson has produced little more than the equivalent of a ledger box of what appears to be only the most readily available documents, along with a few discs of data related to governmental investigations. McKesson has not made the kind of effort necessary to begin "significant" compliance of its obligations under the Amended Subpoena.

**B.**  *Pricing data.*  Thus, for example, relating to the pricing data requested under the Category 1 Requests, McKesson claims that certain data is not available. However, it has not sought to identify or produce documents that may otherwise "evidence" such information, such as contracts, plan agreements, training materials, correspondence, or documents reflecting such standard pricing policies, programs or practices implemented by itself or on behalf of any of the Defendants in this action. Indeed, at least one other wholesaler has already identified and begun to produce pursuant to the same Subpoenas such documents without express direction from Plaintiffs or the Court. *See id.* at ¶ 5.

Moreover, McKesson claims that it can only produce two years of pricing data, stating that earlier data may require additional time and resources to retrieve.[4] However, retrieval of archived documents and data is commonplace in discovery, and no basis to withhold production. *Se, e.g., In re Brand Name Prescription Drug Antitrust Lit.*, 1995 WL 360526 (N.D. Ill. 1995); *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 1991 WL 111040 (E.D.Pa. 1991). Indeed, as McKesson claims the production will take time, it should have been preparing for its production weeks or months ago,

---

F.R.D. 408, 413 (M.D.N.C. 1991) (time for filing protective order is before production is due) (citing cases).
4    McKesson also claims that the older data may have some integrity issues. *See* Opposition, p. 11. While technical changes over time may effect the amount of data that may be effectively retrieved, McKesson itself admits to having no significant problems with retrieval of data from periods reaching as far back as 1998, yielding at least four additional years of data that is indisputably available.

4

prior to Plaintiffs seeking the intervention of this Court. However, McKesson seeks to oppose the Motion by claiming that some "older data *may* not be accessible," without producing the data and related documents that may be or are in fact accessible. *See* Opposition, p. 11 (emphasis added).

        **C.**    *Documents concerning AWP*.  Regarding the Category 2 Requests focusing on McKesson's role in and awareness of the use and creation of AWP, McKesson has only produced contracts with one publisher of AWP, First Data Bank. Despite McKesson's purported indifference to AWP (*See id.*, p. 13), it has failed to produce documents such as new product releases that may contain an AWP, including the source of this data, glossaries or training materials that may contain information about AWP in its own operations or the wider pharmaceutical industry, or any other responsive documents it could identify if it sought to do so.

        Indeed, although one request directly guides McKesson to review and produce "all communications between you and a Pharmacy Benefit Manager concerning AWP" (Request No. 5(vii)), McKesson appears to have begun no such document review, even though an automated search of e-mails for a single term, "AWP,"[5] would significantly move discovery forward. Similarly, McKesson essentially admits to the existence of documents responsive to Request No. 7, stating that it actually provides sales data to publishers, but shrugs off producing such responsive documents by stating that it does not know how these publishers utilize the data. *See id.*, p. 14. Once these documents are produced, Plaintiffs can complete such a review.

        **D.**    *Contracts*.  The Category 3 Requests have only been half satisfied. Although McKesson has appeared to produce one set of controlling agreements for five retailers and an apparently obsolete agreement with a sixth (Request No. 9), it has not produced all of the contracts for the entire period covered by the Amended Subpoena.  In addition, as mentioned above,

McKesson still has not produced any contracts with the four identified Pharmacy Benefits Managers (Request No. 10).

  **E.**  *Document Retention Policies and Organizational Charts*.  Finally, McKesson has failed to produce any documents that would identify its document retention policies (Request No. 15), stating in its Opposition that the policies are not reduced to one single document. *See id.*, p.17. Certainly in the intervening months, McKesson could easily collect the various documents that identify the retention policies under which it operates.  Again, its excuse that no one document embodies its policies does not prevent McKesson from producing those documents that identify its policies.[6]  Similarly, in response to Request No. 14, seeking "current and historical organization charts for all of Your departments," McKesson has only produced a one page summary of its over-arching structure. Without the intervention of the Court, such pettifogging may continue for another eight months.

## III. CONCLUSION

  Against such a track record, it is no surprise that McKesson attempts to seize on a minor misstatement as to the status of McKesson's production.  It is not true, as was stated in passing in the Motion, that at the time of filing McKesson had produced no documents, but it is as good as true. McKesson produced approximately twenty seven documents, including three duplicatees and a single organization chart, and some data that may have been provided to a legislative body without any accompanying and related explanatory documents such as transmittal letters. Because McKesson has produced *almost* no documents to date, continues to engage in a course of delay, and

---

5  Similarly, Request No. 5(vi) requests "all communications between You and a Publisher concerning AWP."
6  Assuming McKesson has completed production of the Category 4 Requests relating to Investigations, Suits and Complaints involving industry pricing practices, Plaintiffs withdraw the Motion only as to these Requests. However, Plaintiffs reserve the right to revisit the issue if further discovery discloses the existence of other investigations, suits or complaints.

otherwise has fallen far short of its obligations under the Subpoenas, plaintiffs respectfully request that their motion to compel be granted.

Dated: September 20, 2004                           By: ____/s/ Thomas M. Sobol_____
                                                            One of Plaintiffs' Counsel

                                                            Thomas M. Sobol
                                                            Edward Notargiacomo
                                                            One Main Street
                                                            4th Floor
                                                            Cambridge, MA 02142

                                                            **LIAISON COUNSEL**

                                                            Steve W. Berman
                                                            Sean R. Matt
                                                            HAGENS BERMAN LLP
                                                            1301 Fifth Avenue, Suite 2900
                                                            Seattle, WA 98101

                                                            Samuel Heins
                                                            Brian Williams
                                                            HEINS MILLS & OLSON, P.C.
                                                            3550 IDS Center
                                                            80 South Eighth Street
                                                            Minneapolis, MN 55402

                                                            Jeff Kodroff
                                                            John Macoretta
                                                            SPECTOR, ROSEMAN &
                                                            KODROFF, P.C.
                                                            18181 Market Street, Suite 2500
                                                            Philadelphia, PA 19103

                                                            **CHAIRS OF LEAD COUNSEL COMMITTEE**

                                                            Kenneth A. Wexler
                                                            Elizabeth A. Fegan
                                                            THE WEXLER FIRM LLP
                                                            One North LaSalle
                                                            Suite 2000
                                                            Chicago, Illinois 60602

Marc H. Edelson
HOFFMAN & EDELSON
45 West Court Street
Doylestown, PA 18901

**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

Michael McShane
ALEXANDER, HAWES & AUDET LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104

Robert E. Piper, Jr.
PIPER & ASSOCIATES
624 Pierre Avenue
Shreveport, LA 71103

**MEMBERS OF EXECUTIVE COMMITEE**

Anthony Bolognese
BOLOGNESE & ASSOCIATES
One Penn Center
1617 JFK Boulevard
Suite 650
Philadelphia, PA 19103

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002

Neal Goldstein
Freedman & Lorry, P.C.
400 Market Street, Suite 900
Philadelphia, PA 19106

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 21700
San Diego, CA 92101

Jonathan D. Karmel
KARMEL & GILDEN
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Philadelphia, PA 19103

Diane M. Nast
RODA & NAST PC
801 Estelle Drive
Lancaster, PA 17601

Henry H. Rossbacher
ROSSBACHER & ASSOCIATES
811 Wilshire Boulevard
Suite 1650
Los Angeles, CA 90017-2666
Jonathan Shub
SHELLER, LUDWIG & BADEY
1528 Walnut Street
3rd Floor
Philadelphia, PA 19102

Ira Neil Richards
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
The Penthouse
226 West Ritten House Square
Philadelphia, PA 19103

Lee Squitieri
SQUITIERI & FEARON
521 Fifth Avenue
26th Floor
New York, NY 10175

Scott R. Shepherd
SHEPHERD & FINKLEMAN, LLC
117 Gayley Street, Suite 200
Media, PA 19063

Mitchell A. Toups
WELLER, GREEN, TOUPS &
TERRELL L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704

Damon Young
Lance Lee
YOUNG, PICKETT & LEE
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX 75504

**ADDITIONAL ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE BY VERILAW

Docket No. MDL 1456

I, Thomas M. Sobol, hereby certify that I am one of plaintiffs' attorneys and that, on September 20, 2004, I caused copies of PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM MCKESSON CORP. to be served on all counsel of record by causing same to be posted electronically via Verilaw.

Dated: September 20, 2004             ___/s/ Thomas M. Sobol_____
                                          Thomas M. Sobol