UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
|  | CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENTS RELATES TO 01-CV-12257-PBS | Judge Patti B. Saris |
|  | Chief Mag. Judge Marianne B. Bowler |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A PROTECTIVE ORDER

The Fast Track Defendants[1] respectfully submit this memorandum of law in opposition to Plaintiffs' Emergency Motion for a Protective Order imposing certain limits on third party depositions.

## INTRODUCTION

Plaintiffs' motion effectively seeks to restrict significantly the number of third party depositions that defendants can take in the few short weeks remaining before the deadline for the Fast Track Defendants' opposition to plaintiffs' motion for class certification. As such, this "Emergency" motion is simply the latest in a series of maneuvers by plaintiffs aimed at preventing defendants from continuing to develop crucial discovery from third party payors (i.e. health plans), among others, in sufficient time to use this discovery in opposition to plaintiffs' motion for class certification. The Court properly denied plaintiffs' previous attempts to delay or prevent third party discovery, including their emergency request for a stay of discovery and their

---

[1] Pursuant to CMO 10, the "Fast Track" Defendants are AstraZeneca, the BMS "Group", the GSK "Group", the Johnson and Johnson "Group," and the Schering-Plough "Group".

previous Motion for a Protective Order.  Plaintiffs' current motion is similarly without merit.  As a preliminary matter, the compressed schedule in which these depositions must take place is a direct and foreseeable result of plaintiffs' previous efforts to stall discovery from these third parties, the "fast track" schedule established by Judge Saris in CMO 10, and the need to accommodate the schedules of the relevant third parties.  Moreover, plaintiffs have failed to demonstrate any real burden from proceeding with the depositions as scheduled.  Even if any burden could be established, that burden is clearly outweighed by the importance of the depositions that plaintiffs are attempting to limit.  As demonstrated below, these depositions are vitally important to a thorough analysis of the merits of plaintiffs' motion for class certification.  Accordingly, plaintiffs' motion should be denied.

## BACKGROUND

In CMO 7, Judge Saris authorized both class and merits discovery to proceed with respect to a limited group of drugs, pending her decision on defendants' motions to dismiss the Amended Master Consolidated Class Action Complaint ("AMCC").  Accordingly, beginning in November 2003, following completion of the briefing on defendants' motion to dismiss, defendants served approximately sixty subpoenas on a variety of third parties, including health care-related agencies of the federal government, pharmaceutical benefit consultants and a cross-section of health plans and other third party payors that were potential members of the purported class proposed by plaintiffs.[2]  Given plaintiffs' allegations that defendants defrauded the class by publishing AWPs that were not actual averages of wholesale prices, see, e.g., AMCC ¶¶ 681,

---

[2] The AMCC defined the proposed "AWP Payor Class" as "All persons or entities who . . . paid any portion of the purchase for a prescription drug manufactured by a Defendant Drug Manufacturer . . . at a price calculated by reference to the published AWP during the Class Period."  AMCC ¶ 595.

687, these subpoenas requested documents and deposition testimony related to, *inter alia*, each entity's understanding of the meaning of the term AWP.[3]

Almost immediately after these subpoenas were served, plaintiffs sent a letter to each third party payor who had been subpoenaed informing them that plaintiffs intended to file a motion for a Protective Order regarding the subpoenas and instructing each entity that it should not produce any documents in response to the subpoena until the Court ruled on the Motion for a Protective Order. See, e.g., Exhibit A to Defendants' Opposition (hereinafter "Opp.") (Letter from Steve W. Berman to Amerihealth dated November 26, 2003). Although defendants attempted to correct this misimpression by informing each third party that its obligation to produce documents was unaffected by plaintiffs' intended motion, see, e.g., Exhibit A to Opp. (Letter from Erik Haas to Amerihealth dated December 1, 2003), plaintiffs persisted in their efforts to prevent any document productions from these third party payors, see, e.g., Exhibit A to Opp. (Letter from Steve W. Berman to Amerihealth dated December 1, 2003). Plaintiffs also requested an emergency stay of discovery from the subpoenaed third parties by letter to Judge Saris dated December 3, 2003, see Exhibit A to Opp. (Letter from Steve W. Berman to Judge Saris dated December 3), but Judge Saris never acted on the request, effectively denying it.

Plaintiffs' Motion for a Protective Order relating to these third party payor subpoenas was also filed on December 3, 2003. In that motion, plaintiffs moved for an order quashing the subpoenas and sought the establishment of procedures that would require defendants to seek permission from either plaintiffs or the Court before proceeding with discovery directed to third party payors who were members of the proposed class. Defendants opposed the motion and

---

[3] Plaintiffs similarly served third party subpoenas on a variety of entities, including PBMs, publishers of pharmaceutical pricing information, pharmaceutical industry trade groups, defendants' auditors, and various pharmaceutical industry consultants.

Judge Saris denied it from the bench on March 8, 2004.  However, as a direct result of plaintiffs' conduct, none of the subpoenaed entities produced documents in response to defendants' subpoenas or engaged in meaningful negotiations regarding the scope of their productions during the four months before plaintiffs' motion was denied.  See Exhibit B to Opp. (Declaration of Adeel A. Mangi at ¶ 3 (hereinafter "Mangi Decl.")).  Plaintiffs themselves recognized this fact in their Reply Memorandum in Support of Plaintiffs' Motion for a Protective Order, remarking: "Thankfully, and as a result of this motion, it appears that none of the class members have yet begun to produce documents and are awaiting the Court's ruling before taking any further action."  See Reply filed January 23, 2004 at 2.

Although defendants promptly initiated discussion with these third party payors once plaintiffs' motion was denied in March 2004, document productions by the third party payors did not begin until May and June 2004, and many entities did not begin producing documents until even later.  See Exhibit B to Opp. (Mangi Decl. at ¶ 4).  Similar delays occurred in productions by other important third parties, such as the major benefit consultants used by many third party payors, despite the fact that the subpoenas had been issued months in advance.[4]  Id. at ¶ 5.  Nonetheless, defendants have attempted to schedule depositions promptly after productions have been made, id. at ¶ 4, keeping in mind the "fast track" schedule established by CMO 10 which requires the Fast Track Defendants to file their opposition to plaintiffs' motion for class certification, as well as any supporting expert reports, by October 25, 2004.

To date defendants have scheduled depositions with only a fraction of the subpoenaed third parties.  Id. at ¶ 6.  In each case, the depositions have been scheduled to accommodate the

---

[4] In addition to the third party subpoenas issued in November 2003, defendants have served subpoenas on additional third parties, including the third party payors who are named plaintiffs in the Lupron MDL, a cross-section of Blue Cross plans, a select group of PBMs used by many third party payors, and others.

needs of the third party witnesses, within a timeframe that will allow defendants to use the discovery in opposition to plaintiffs' motion for class certification.  Id.  Given the need to accommodate third party schedules, depositions are sometimes scheduled or cancelled on relatively short notice.  Id. at ¶ 7.  Defendants have made every effort to keep plaintiffs' counsel apprised of these scheduling changes.  Id.  Defendants began by promptly posting to Verilaw correspondence confirming firm depositions dates.  Id.  As plaintiffs concede, defendants then agreed to exchange a calendar of third party depositions with plaintiffs on at least a weekly basis, and often more frequently as scheduling changes arise.  Id.

**ARGUMENT**

**A.**      **Plaintiffs Have Failed to Demonstrate Any Burden from Proceeding with the Depositions as Scheduled**

The only basis offered for plaintiffs' motion is the alleged burden on plaintiffs' counsel of attending the scheduled third party depositions, while at the same time dealing with other litigation tasks.  See Plaintiffs' Memorandum at 6.  This assertion is simply not credible. Moreover, plaintiffs' claim that they are overburdened by the scope of this litigation is particularly inappropriate given that plaintiffs – not defendants – are responsible for the creation of this massive litigation, as well as the delays that have resulted in a compressed schedule for the third party depositions at issue.

Although this litigation originally focused on conduct relating to a select group of Medicare Part B drugs, plaintiffs have since expanded their claims exponentially to encompass more than 300 drugs and practically the entire private marketplace for pharmaceutical products in the United States.  In addition, by plaintiffs' own definition, "all persons or entities who . . . paid any portion of the purchase for a prescription drug manufactured by a Defendant Drug Manufacturer . . . at a price calculated by reference to the published AWP during the Class

5

Period" allegedly have been harmed by defendants' conduct. See AMCC ¶ 595. According to plaintiffs' class certification papers, this class includes at least 11,000 third party payors alone -- not to mention potentially millions of individuals. See Plaintiffs' Memorandum in Support of Motion for Class Certification at 18. After advocating for the creation of a litigation this massive in scope, plaintiffs can hardly now be heard to complain that it is too burdensome for defendants to take the depositions of fewer than 1% of the entities in the proposed class.[5]

Moreover, the compressed schedule is a direct result of Judge Saris's decision to proceed on a "fast track" schedule, plaintiffs' intentional delay of defendants' efforts to seek discovery from third party payors and the need to accommodate the schedules of the third party witnesses. As described above, plaintiffs made a concerted effort to prevent defendants from obtaining discovery from third party payors. Although their efforts were ultimately unsuccessful in front of Judge Saris, they did succeed in halting any discovery from third party payors for at least four months. Had defendants been able to proceed with the discovery originally initiated in November of 2003, there would be no need now to "double track" depositions in order to comply with Judge Saris's desire to proceed with the first phase of the litigation on a "fast track." Moreover, the scheduling of the third party depositions has been dictated by the needs of the third parties, and not by defendants. See Exhibit B to Opp. (Mangi Decl. at ¶ 6-7). Nonetheless, defendants have made every effort to keep plaintiffs promptly apprised of all scheduled depositions, as well as the frequent cancellations. Id.

---

[5] Plaintiffs assert without foundation that Judge Saris did not intend to authorize as many depositions of third party payors as defendants have scheduled. In fact, more than forty third party payor subpoenas had been issued at the time of Judge Saris's ruling, yet, to date, defendants have only taken or tentatively scheduled approximately half that amount.

Finally, plaintiffs' assertion that they lack the resources to cover the scheduled depositions is simply not credible. Although plaintiffs assert that they have created a team of five attorneys to cover third party depositions, plaintiffs' motion papers routinely indicate that plaintiffs have at their disposal more than twenty different law firms in ten states and the District of Columbia covering all major geographic regions of the United States. See, e.g., Exhibit C to Opp. (Plaintiffs' Consent Motion for an Extension of Time to Oppose AstraZeneca's Motion for a Protective Order Limiting the Scope of Certain Third Party Subpoenas (filed September 14, 2004)).[6] As class representatives, plaintiffs simply must assign sufficient resources to manage a complex litigation of this size appropriately. See Manual For Complex Litigation Third at ¶ 21.454 ("When depositions cannot be scheduled at times or places convenient to all counsel, attorneys should try to arrange for participation by others from their offices or counsel representing litigants with similar interests. Moreover, to meet discovery deadlines, it may be necessary to conduct depositions on a "multiple track" basis, with depositions of several different witnesses being taken at the same time in one or more locations.").[7]

## B.    The Third Party Discovery Plaintiffs Are Attempting to Restrict is Vital to Defendants' Ability to Oppose Plaintiffs' Motion for Class Certification

Even if plaintiffs could credibly establish any burden from the current deposition schedule, the importance of these third party depositions to defendants' ability to oppose plaintiffs' motion for class certification far outweighs any such burden. The few depositions that

---

[6] Curiously, the instant "Emergency" motion only lists five plaintiffs' law firms on the signature block, even though other motions filed by plaintiffs' counsel that same week include the entire list of twenty law firms. But surely even those five firms have more than one attorney each to devote to depositions.

[7] In fact, the burden of this "fast track" schedule falls disproportionately on defendants, not plaintiffs. The five Fast Track Defendants must simultaneously respond to plaintiffs' incredibly broad document demands and depositions requests, while conducting the third party discovery necessary to oppose plaintiffs' motion for class certification and preparing the appropriate papers in opposition to that motion.

have been taken so far indicate that a central premise of the class allegations in plaintiffs' complaint – that published AWPs were fraudulent misstatements injuring the class as a whole – is demonstrably false.  Moreover, plaintiffs have shifted their theory in their recently filed motion for class certification to a theory based on alleged "market expectations," which makes discovery of third party payors even more crucial to a thorough evaluation of plaintiffs' attempt to litigate this matter on a class-wide basis.  Since plaintiffs' proposed limitations on third party depositions would effectively prevent the scheduling of any additional third party depositions prior to the due date for defendants' opposition, and even require the cancellation of a number of depositions currently scheduled, plaintiffs' motion should be denied.

Plaintiffs' original theory of the fraud at issue in this case focused on the allegation that the defendant manufacturers made false statements to the public by causing AWPs to be published that were not actual averages of wholesale prices.  See, e.g., AMCC ¶ 681 ("Plaintiffs contend that setting stated reimbursement prices above the actual average wholesale price for AWPIDs[8] is unlawful.").  Indeed, the purported examples in the complaint of defendants' "specific unlawful conduct" included lists of "deliberately inflated" AWPs that were reported by manufacturers instead of "accurate" AWPs allegedly based on actual wholesaler price lists.  See, e.g., AMCC ¶¶ 208, 260, 280, 293, 311, 323, 343, 359, 371, 415, 431, 466, 487, 501, 534.  Simply put, until recently, plaintiffs argued that the alleged deception injuring the class as a whole was defendants' failure "to disclose that the published AWPs do not reflect the true average wholesale price of the drugs they sell."  See Plaintiffs' Memorandum in Opposition to Motion to Dismiss the AMCC at 45; see also Plaintiffs' Memorandum in Opposition to Motion to Dismiss the MCC at 14 (arguing that AWP should be "a real average of real prices.").

---

[8] AWPID is a term used by plaintiffs to describe what they allege are AWP Inflated Drugs.

8

The third party depositions taken to date have demonstrated that this theory of class-wide fraud is simply not supported by the evidence. For example, the Chief Pharmacy Officer of Coventry Health Care, a health plan that would be included within the proposed Third Party Payor class, testified repeatedly at his deposition that Coventry knew that AWP did not represent the price that pharmacies or other providers were paying for the drugs and that reimbursement based on AWP provided these entities with a margin above their acquisition cost. See Exhibit D to Opp. (Hailey Tr. at 87-88, 131-32, 158-59). In fact, this witness expressly denied that manufacturers have perpetuated any fraud on Coventry by publishing AWPs. Id. at 161. Similarly, the Director of Pharmacy Contracting at Kaiser Permanente, another health plan included within the class, also testified that Kaiser knew that AWP was a reimbursement benchmark that provided pharmacies and providers with a spread above their actual cost. See Exhibit E to Opp. (Kramer Tr. at 36-38).

Faced with such evidence, plaintiffs no longer contend in support of class certification that the public was defrauded by published AWPs because they did not represent actual averages of wholesale prices. Instead, plaintiffs have shifted their theory to a new one based on alleged "market expectations" of an appropriate spread between published AWPs and manufacturers' average selling prices. See Declaration of Raymond S. Hartman at 7. According to this new theory, published AWPs are fraudulent if the spread between the published AWP and the ASP exceeds the "market expectations" of a reasonable spread. Id. at 17-20.

Although plaintiffs argue that class-wide "market expectations" can be derived, id. at 20-24, defendants contend that any such "expectations", if they exist, would necessarily be based on individual knowledge of third party payors or their intermediaries, such as benefit consultants. Defendants need to take depositions to demonstrate the tremendous differences between third

9

party payors that affect plaintiffs' ability to try the claims in this case on a class-wide basis. The highly individualized knowledge questions presented by plaintiffs' new theory of liability cannot adequately be explored through documentary discovery. Accordingly, contrary to plaintiffs' blithe assertion that defendants' proposed third party discovery is unnecessary, Pl. Mem. at 7 n.2, this discovery is essential to a thorough evaluation of plaintiffs' attempt to litigate this massive case on a class-wide basis. Since plaintiffs' proposed limitations would severely restrict defendants' ability to develop this discovery in time to be included in defendants' opposition to class certification (which appears to be their point), plaintiffs' motion should be denied.

## C.      Plaintiffs' Proposed Limitations are Unworkable

Finally, plaintiffs' proposed limitations are simply unworkable. Artificial barriers to the number of depositions that can occur in one day or one week will effectively result in extreme limitations on the number of depositions that can be taken prior to defendants' opposition to plaintiffs' motion for class certification given the need to accommodate third party schedules. Moreover, plaintiffs' request for three weeks notice of the <u>confirmed</u> date for any third party deposition would necessarily result in a postponement of any deposition for at least three weeks anytime that a third party requests that a date be rescheduled – even if the request involves only a one or two day delay. Plaintiffs' interpretation of the twenty-one day rule would have the ironic effect of preventing depositions from being scheduled on the dates most convenient for subpoenaed third parties. That was clearly not the intention of CMO 10, and the limitations sought by plaintiffs are clearly inappropriate for a complex litigation like this one on a fast track schedule. <u>See</u> Manual for Complex Litigation Third, ¶ 21.454.[9]

_____

[9] In addition, the plain language of CMO 10 indicates that the three week notice rule applies only to <u>party</u> depositions and not to <u>non-party</u> depositions. <u>Cf.</u> CMO 7 ¶ II(4) (referring separately to "deposition of a party" and "deposition of . . . a third party witness . . . ." Even if the rule did apply to depositions of third party witnesses, (...continued)

10

## CONCLUSION

For the reasons set forth above, Plaintiffs' Emergency Motion for a Protective Order

should be denied.


Respectfully submitted on behalf of the Fast Track Defendants,

By: /s/ Lucy Fowler_____
    Nicholas C. Theodorou (BBO # 96730)
    Lucy Fowler, Esq. (BBO# 647929)
    FOLEY HOAG LLP
    155 Seaport Boulevard
    Boston, MA  02110
    (617) 832-1000

    D. Scott Wise (admitted *pro hac vice)*
    Kimberley D. Harris (admitted *pro hac vice)*
    DAVIS POLK & WARDWELL
    450 Lexington Avenue
    New York, NY  10017
    (212) 450-4000

    Attorneys for AstraZeneca Pharmaceuticals LP

Dated:  September 20, 2004


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on September 20, 2004, a copy to Verilaw Technologies for posting and notification to all parties.

    /s/ Lucy Fowler_____
    Lucy Fowler

---

(continued…)

plaintiffs' interpretation makes no sense, as discussed above.  Otherwise, the three-week clock would be re-set every time a deposition is rescheduled, regardless of when the deposition was formally noticed.

# EXHIBIT A





**HAGENS BERMAN LLP**
*Attorneys at Law*

BOSTON   LOS ANGELES   PHOENIX   SEATTLE

hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

November 26, 2003

Amerihealth
Administrators
1901 Market Street
Philadelphia, PA 19103

> Re: <u>In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 111456</u>
> Subpoena Served on Your Company

Dear Sir/Madam:

We, along with other firms, are proposed class counsel in the above-referenced class action that is presently pending before the Honorable Patti B. Saris in the United States District Court for the District of Massachusetts. The proposed classes are generally comprised of (i) all persons or entities who, for purposes other than resale and during the Class Period, paid any portion of the purchase for a prescription drug manufactured by a defendant at a price calculated by reference to the published AWP during the Class Period; and (ii) all third-party payors that, during the Class Period, contracted with a PBM to provide to its participants a prescription drug manufactured by a defendant.

Certain defendants in this action have served your company with a subpoena for the production of documents and testimony. Because we believe that your organization is a potential class member in this action, we believe that defendants should not have served that subpoena without first obtaining permission from the Court. <u>We brought this to the Court's attention, and the Court has indicated that, at this time, defendants should **not** be demanding from you the production of any of the documents identified in the subpoena.</u>

The Court has directed us to file a motion for a protective order with regard to these subpoenas on or before December 5, 2003. Until the Court decides the outcome of this motion, your company is under no obligation to produce the information requested in the subpoenas.

1534.16 0042 LTR.DOC

November 26, 2003
Page 2

We will advise you of the Court's decision once it weighs the motion for a protective order.  In the interim, please call if you have any questions or concerns.

Sincerely,

Steve W. Berman

cc:    All Counsel (via Verilaw)



# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Erik Haas

Direct Phone
(212) 336-2117

Email Address
ehaas@pbwt.com

December 1, 2003

Amerihealth
Administrators
1901 Market Street
Philadelphia, PA 19103

**Re:**   **Subpoenas served In re Pharmaceutical Industry Average Wholesale Price Litigation MDL No. 1456, Civil Action: 01-CV-12257-PBS**

Dear Sir/Madam:

We are writing on behalf of defendants in this litigation in response to plaintiffs' counsel Steve Berman's letter to you of November 26, 2003. In that letter, Mr. Berman asserts that "the Court has indicated that, at this time, defendants should not be demanding from you the production of any documents identified in the subpoena." That is not accurate.

At the conference last Friday, Judge Saris ruled from the bench that *depositions* should not proceed until she rules on the motion for a protective order plaintiffs represented they intended to make. She did not impose any restrictions on the pending document demands. To be precise, the Judge stated: "It's Thanksgiving. We all should enjoy our families. There shouldn't be any depositions.... A week after Thanksgiving you'll file the motion. You'll have the normal 14 days. There will be no depositions in the interim."

The fact that depositions are stayed temporarily pending the resolution of a motion plaintiffs may make does not alter your obligation to produce documents in the time frame demanded in the subpoena, or as otherwise agreed upon. As we have informed those subpoena recipients who have contacted us, we are not pressing for depositions until we have received the documents.

Please feel free to call me if you have any questions or concerns.

Sincerely,

Erik Haas

cc:  All Counsel (via Verilaw)





**HAGENS BERMAN LLP**
*Attorneys at Law*

BOSTON   LOS ANGELES   PHOENIX   SEATTLE

**hagens-berman.com**
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

December 1, 2003

Amerihealth
Administrators
1901 Market Street
Philadelphia, PA 19103

    Re:   <u>In re Pharmaceutical Industry Average Wholesale Price Litigation,</u>
            <u>MDL No. 111456</u>
            Subpoena Served on Your Company

Dear Sir/Madam:

As previously stated in our letter of November 26, 2003, we, along with other firms, are proposed class counsel in the above-referenced class action that is presently pending before the Honorable Patti B. Saris in the United States District Court for the District of Massachusetts. The proposed classes are generally comprised of (i) all persons or entities who, for purposes other than resale and during the Class Period, paid any portion of the purchase for a prescription drug manufactured by a defendant at a price calculated by reference to the published AWP during the Class Period; and (ii) all third-party payors that, during the Class Period, contracted with a PBM to provide to its participants a prescription drug manufactured by a defendant.

Since our letter, today counsel for one defendant wrote you suggesting that we have misrepresented what the Court has ordered. We believe that we have not done so. Although the Court used the word "depositions", it was in the context of our objecting to the subpoenas directed to you and which would require the production of documents. We believe it is clear that the Court does not want this discovery to proceed until she resolves the issue.

Furthermore, as counsel for this defendant knows, <u>the law is clear that discovery of class members cannot be propounded without Court order, which was not obtained.</u> Thus, these subpoenas violated the law and in our view are void until Judge Saris rules otherwise. We suggest you not incur the expense of responding until further order.

1534.16 0045 LTR.DOC



December 1, 2003
Page 2

   We will advise you of the Court's decision once it weighs the motion for a protective order. In the interim, please call if you have any questions or concerns.

        Sincerely,

        Steve W. Berman

cc:  All Counsel (via Verilaw)



BOSTON   LOS ANGELES   PHOENIX   SEATTLE

hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594



STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

December 2, 2003

**_Via Hand Delivery_**

The Honorable Patti B. Saris
United States District Court
District of Massachusetts
One Courthouse Way, Courtroom 13
Boston, MA  02210

     Re:    <u>In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL 1456</u>
              Discovery of Absent Class Members

Dear Judge Saris:

As the Court may recall, at the conclusion of the November 21, 2003, hearing on the motions to dismiss the Amended Consolidated Class Action Complaint in the above-referenced action, plaintiffs brought to the Court's attention over 40 "third-party" subpoenas that defendants had recently served in 19 different federal districts. Most of these subpoenas – which are very, very broad – were directed at Health Plans, who are absent members of the putative class. Furthermore, the burden imposed by these subpoenas will in many cases be substantial both as to time and expense.

More specifically, I advised the Court that plaintiffs would be filing a motion for a protective order and requested that the Court relieve these absent class members of the obligation of gathering documents in response to the subpoenas and providing deposition testimony pending the Court's evaluation of the forthcoming motion. The Court appeared to agree that no discovery of absent class members should proceed, including depositions, until the Court had an opportunity to decide the motion. Accordingly, the Court directed plaintiffs to file the motion on or before December 5th.

After the hearing, we sent a letter to the subpoenaed parties advising them of the Court's instruction. A copy of one of the letters, which was uniformly drafted for all of the third-parties who received subpoenas, is attached at Exhibit A. In response, yesterday defendants sent their own letters, advising that my letter was "not accurate," that the Court's limitation applied only to depositions, and that these absent class members were

1534.16 0044 LTR DOC

December 2, 2003
Page 2

still under an obligation to search for, gather and provide documents. A representative example of defendants' letters is attached hereto at Exhibit B.

Plaintiffs submit that the Court's instruction was crafted to protect these absent class members from having to respond to *any* discovery – including the gathering, review and production of a very substantial quantity of documents – pending the Court's timely evaluation of plaintiff's Motion for a Protective Order Regarding Subpoenas to Putative Class Members, which plaintiffs are filing today. This interpretation of the Court's comments is certainly consistent with the universally accepted view that courts must determine whether *any* discovery directed at absent class members will be permitted *before such discovery is pursued. See, e.g.,* MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 at 231 (1995) (discovery of absent class members "should be permitted only to the extent necessary and should be carefully limited to ensure that it serves a legitimate purpose and is not used to harass either the class representatives or the class members.").

In light of this rule, and in light of defendants' precipitous actions, plaintiffs respectfully request that the Court issue an emergency order staying all discovery into absent class members – including the subpoenas that defendants have served on the Health Plans – until the Court has had an opportunity to evaluate and rule on plaintiffs' Motion for a Protective Order. Although plaintiffs believe that defendants' subpoenas are unnecessary and overly broad, if the Court ultimately disagrees and permits some or all of the discovery to proceed, the short delay engendered by careful Court review of the issue will not in any way prejudice defendants. We are sorry to burden Your Honor with this request but believe that defendants' letter leaves us no alternative.

Respectfully,

*Steve W. Berman /DAB*

Steve W. Berman

cc:    All Counsel (via Verilaw)

1534 16 0044 LTR.DOC



# Exhibit A





BOSTON   LOS ANGELES   PHOENIX   SEATTLE
hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

November 26, 2003

Amerihealth
Administrators
1901 Market Street
Philadelphia, PA 19103

Re:   In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL
No. 111456
Subpoena Served on Your Company

Dear Sir/Madam:

We, along with other firms, are proposed class counsel in the above-referenced class action that is presently pending before the Honorable Patti B. Saris in the United States District Court for the District of Massachusetts. The proposed classes are generally comprised of (i) all persons or entities who, for purposes other than resale and during the Class Period, paid any portion of the purchase for a prescription drug manufactured by a defendant at a price calculated by reference to the published AWP during the Class Period; and (ii) all third-party payors that, during the Class Period, contracted with a PBM to provide to its participants a prescription drug manufactured by a defendant.

Certain defendants in this action have served your company with a subpoena for the production of documents and testimony. Because we believe that your organization is a potential class member in this action, we believe that defendants should not have served that subpoena without first obtaining permission from the Court. We brought this to the Court's attention, and the Court has indicated that, at this time, defendants should *not* be demanding from you the production of any of the documents identified in the subpoena.

The Court has directed us to file a motion for a protective order with regard to these subpoenas on or before December 5, 2003. Until the Court decides the outcome of this motion, your company is under no obligation to produce the information requested in the subpoenas.

1234.16 0042 LTR.DOC



November 26, 2003
Page 2

We will advise you of the Court's decision once it weighs the motion for a protective order. In the interim, please call if you have any questions or concerns.

Sincerely,

Steve W. Berman

cc:    All Counsel (via Verilaw)

1534.16 0043 LTR.DOC



# Exhibit B



# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Direct Phone
(212) 336-2117

Email Address
ehaas@pbwt.com

Erik Haas

December 1, 2003

Amerihealth
Administrators
1901 Market Street
Philadelphia, PA 19103

Re:   **Subpoenas served In re Pharmaceutical Industry Average Wholesale
Price Litigation MDL No. 1456, Civil Action: 01-CV-12257-PBS**

Dear Sir/Madam:

We are writing on behalf of defendants in this litigation in response to plaintiffs' counsel Steve Berman's letter to you of November 26, 2003. In that letter, Mr. Berman asserts that "the Court has indicated that, at this time, defendants should not be demanding from you the production of any documents identified in the subpoena." That is not accurate.

At the conference last Friday, Judge Saris ruled from the bench that *depositions* should not proceed until she rules on the motion for a protective order plaintiffs represented they intended to make. She did not impose any restrictions on the pending document demands. To be precise, the Judge stated: "It's Thanksgiving. We all should enjoy our families. There shouldn't be any depositions.... A week after Thanksgiving you'll file the motion. You'll have the normal 14 days. There will be no depositions in the interim."

The fact that depositions are stayed temporarily pending the resolution of a motion plaintiffs may make does not alter your obligation to produce documents in the time frame demanded in the subpoena, or as otherwise agreed upon. As we have informed those subpoena recipients who have contacted us, we are not pressing for depositions until we have received the documents.

Please feel free to call me if you have any questions or concerns.

Sincerely,

Erik Haas

cc:  All Counsel (via Verilaw)



# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Erik Haas
_____

Direct Phone
(212) 336-2117

Direct Fax
(212) 336-2386

Email Address
ehaas@pbwt.com

December 4, 2003

**By Hand**

The Honorable Patti B. Saris
United States District Court
District of Massachusetts
One Courthouse Way, Courtroom 13
Boston, MA 02210

> Re: **In re Pharmaceutical Industry Average Wholesale Price Litigation**
> **MDL No. 1456, Civil Action: 01-CV-12257-PBS**

Dear Judge Saris:

We are writing on behalf of defendants in response to Mr. Berman's letter to the Court dated December 2, 2003. Mr. Berman requests "an emergency order" staying all discovery from third parties that also may be absent class members until the Court rules on plaintiffs' motion for a protective order. Defendants respectfully oppose this request.

At the November 21, 2003 hearing, Your Honor responded to plaintiffs' last minute objection to defendants' subpoenas by advising plaintiffs' counsel that any objections should be raised in a properly noticed protective order motion.[1] Following plaintiffs' representation that a motion would be filed posthaste, Your Honor ruled that third party *depositions* should not proceed until the Court decides such motion. No restrictions were imposed on the pending document demands. To be precise, your Honor stated: "It's Thanksgiving. We all should enjoy our families. There shouldn't be any depositions.... A week after Thanksgiving you'll file the motion. You'll have the normal 14 days. There will be no depositions in the interim." (Tr. 116-117).

Limiting the stay to depositions was logical in view of the scheduled discovery cut-off date of March 1, 2004. It simply takes a lot of time to negotiate and obtain a document production that provides defendants with the discovery necessary to defend this case, and at the same time, is not unduly burdensome. We have been working in good faith to address the subpoenaed entities queries regarding the nature and scope of the production. Nevertheless, most of the third parties have represented that logistical realities make it unlikely that any production will be made by year-end, far after the noticed production dates. Halting all negotiations and the "gathering, review and production" efforts by third parties at this stage – as

---

[1] The relevant pages of the draft transcript of the November 21, 2003 hearing ("Tr.") are attached hereto.



plaintiffs propose – would derail the process and deprive defendants of the opportunity to secure the requisite discovery by the scheduled cut-off date.

Moreover, plaintiffs' position regarding the "absent class member" discovery has little merit. Mr. Berman cites to the Manual for Complex Litigation for the proposition that the "universally accepted view" is that court approval is required "before such discovery is pursued." The manual does not stand for the proposition. As this Court has held, the "overwhelming majority of courts" allow pending discovery of absent class members to proceed "where the information requested is relevant to the decision of common questions, when the interrogatories or document requests are tendered in good faith and are not unduly burdensome, and when the information is not available from the representative parties." *Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984). As our opposition to plaintiffs' motion will address in detail, defendants' subpoenas squarely meet that standard.

First, as Your Honor correctly advised plaintiffs' counsel, the subpoenaed entities are not individuals but large corporate entities: "This is a little different, this is industry wide.... I'm always worried about harassing individual people, but these people are huge third party payors." (Tr. 117). The subpoenaed entities are well represented by counsel and readily able to provide a reasonable response to the pending demands without undue burden.[2]

Second, the discovery sought under the subpoenas is required to respond to plaintiffs' class certification motion and claims, and cannot be secured from the representative plaintiffs in this action (*i.e.*, the named funds and associations). To disprove plaintiffs' central allegation that the mere reporting of an AWP constituted a fraud on the industry, defendants subpoenaed third parties that actually reimbursed drugs (or that have knowledge of that reimbursement) to show, *inter alia*, that (i) the industry understood fully that AWP did not equal the actual price doctors or pharmacies paid for drugs, (ii) myriad methodologies were used to reimburse for drugs, some based on AWP, some not, and (iii) those entities that elected to reimburse based on AWP formulae did so for a variety reasons, including administrative simplicity. The named plaintiffs cannot provide that requisite information.

Accordingly, defendants respectfully request that Your Honor deny plaintiffs' request for an emergency stay, and allow defendants to continue their negotiations with the subpoenaed entities. In those negotiations we have disclosed and will continue to disclose to the subpoenaed entities plaintiffs' opposition to the demanded discovery.

Respectfully yours,

Erik Haas

cc:     All Counsel (by Verilaw)

---

[2] *Accord, Laborers Local 17 Health and Benefit Fund et al. v. Philip Morris, Inc. et al.*, 1998 West Law 241279 at *3 (SDNY May 12, 1998) ("[S]ince the class members here are not the typical members of a plaintiff class – individuals with small claims and presumably limited means – but rather are organized entities . . . there is less concern that some controlled discovery will be unduly burdensome or imperil the maintenance of the class.")



0001

1                  UNITED STATES DISTRICT COURT

2                   DISTRICT OF MASSACHUSETTS

3

4    _____

5    CITIZENS FOR CONSUMER

     JUSTICE, et al,

6

                    Plaintiffs,     Civil Action No. 01-12257

7

     v.                             November 21, 2003, 2:05 p.m.

8

     ABBOTT LABORATORIES, et al,

9                   Defendants.

     _____

10

11

12

13                  TRANSCRIPT OF HEARING

14            BEFORE HONORABLE PATTI B. SARIS

15             UNITED STATES DISTRICT COURT

16            JOHN J. MOAKLEY U.S. COURTHOUSE

17                 ONE COURTHOUSE WAY

18                  BOSTON, MA  02210

19

20

21             DEBRA M. JOYCE, RPR, CRR

                Official Court Reporter

22          John J. Moakley U.S. Courthouse

             1 Courthouse Way, Room 5204

23               Boston, MA  02210

                   617-737-4410

24

25



0116

```
 1              I would suggest that we deal with this issue in
 2   another -- you know at another time after they file papers and
 3   we can explain why we served these subpoenas.
 4              THE COURT:  When is the first deposition supposed
 5   to happen?
 6              MR. BERMAN:  Well, the return dates are starting
 7   next week, and the reason I raise it --
 8              THE COURT:  Wait a minute.  So next week you're
 9   taking these depositions.
10              MR. BERMAN:  11/16 is the first return date.
11              THE COURT:  The Wednesday before Thanksgiving?  I
12   mean, I don't want to be here doing this on an emergency -- why
13   don't I say this:  'I'm not ruling -- when are you going to file
14   your motion for protective order?
15              MR. BERMAN:  I was going to ask you how you want us
16   to handle it.
17              THE COURT:  Motion for protective order, the way we
18   always handle it.  It's Thanksgiving.  We all should enjoy our
19   families.  They're shouldn't be any depositions.
20              MR. POSNER:  Your Honor, we'll obviously work out
21   dates.
22              THE COURT:  So file something, when, a week after
23   Thanksgiving?
24              MR. BERMAN:  That would be fine.
25              THE COURT:  Enjoy your family.  A week after
```



0117

1    Thanksgiving you'll file the motion.  You'll have the normal 14

2    days.  There will be no depositions in the interim.

3            Normally you don't subpoena class members.  This is

4    a little different, this is industry wide.  Maybe there's some

5    other ways of doing it.  I'm always worried about harassing

6    individual people, but these people are huge third-party

7    payors.

8            MR. BERMAN:  That's right.

9            THE COURT:  Also, discovery goes forward on all

10   drugs that are alleged with respect to Medicare Part B that are

11   alleged with specificity.  I'm hoping to get back to you very

12   soon on the multisource.  I wanted to hear argument.  I

13   actually in retrospect wished I heard you all first instead of

14   last.

15           MR. POSNER:  Those are part B drugs for which a

16   purchaser is alleged as well, I assume?

17           THE COURT:  Yes.  I'm assuming that's going to add

18   at least 30, 40 drugs, right?

19           MR. BERMAN:  I think it will be about 55 drugs.

20           THE COURT:  All right.  Then on multisource we're

21   going to hold off until I've ruled on it.  Okay?  I don't know

22   how many that means.

23           MR. BERMAN:  Okay.  I know you're trying to get out

24   of here.  We're going to have a huge fight about this.  When

25   you say discovery goes forward on non-multisource drugs that