UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1456<br><br>Master File No. 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| This Document Relates to ALL ACTIONS. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO ASTRAZENECA'S MOTION FOR A PROTECTIVE ORDER LIMITING THE SCOPE OF CERTAIN THIRD PARTY SUBPOENAS**

In its attempt to restrict the scope of plaintiffs' third party subpoenas, AstraZeneca's main critique is that the requests are overbroad. But here AstraZeneca would suffer no burden because it is not responding to any of the subpoenas. Moreover, considering the nature of the work performed by the subpoenaed companies and their relationships to AstraZeneca, each category of documents sought is directly relevant to the issues of marketing, distribution and pricing involved in this litigation. Given the liberal scope of discovery of the Federal Rules, AstraZeneca's attempts to restrict the scope of the subpoenas must fail.[1]

**INTRODUCTION**

Through several subpoenas, plaintiffs seek documents from a number of third parties related to consulting work performed on behalf of AstraZeneca during the Class Period. (*See*

---

[1] After consulting with defense counsel, plaintiffs have agreed to, at this time, eliminate AstraZeneca PLC, the foreign non-party parent corporation, from the definition in the subpoenas of AstraZeneca. Therefore, that portion of AstraZeneca's motion is now moot.

Exhibit A to AstraZeneca Motion). The subpoenaed parties, identified in deposition testimony and documents produced by AstraZeneca, provided three relevant categories of services: (1) pricing strategy advice, (2) marketing and advertising services and (3) distribution or reimbursement services. More specifically, the third parties performed consulting services as follows:

- State & Federal Associates (now Parexel, Inc.) provided a wide range of services to AstraZeneca, as illustrated in the documents produced by AstraZeneca. These services generally included the following:

    (1)   Market Analysis (payment and utilization planning, market research, payment advocacy, payer education),
    (2)   Call Center Services (data collection, reimbursement hotlines, patient assistance programs),
    (3)   Patient Partnerships (patient recruitment for clinical trials, cultivation of interest group support),
    (4)   Communications (marketing assistance, lobbying), and
          Health Economics (modeling, studies, planning).

    (*See* AZ0036740) (attached hereto as Group Exhibit A). Moreover, Parexel's website (www.parexel.com) discusses its "wide range" of services provided to pharmaceutical companies, including "clinical development, consulting, medical marketing, advanced technology and publications." As discovery is not complete, it may become clear that AstraZeneca used Parexel/S&FA for more of these services as well.

- National Specialty Services (now Cardinal Health 108, Inc.) was a distribution consultant that developed a managed acquisition program for AstraZeneca purportedly to create cost savings and efficiencies for physicians by consolidating orders and billing. (*See* Group Exhibit A, AZ0104604 and AZ0014853). The

2

> NSS website (nssonline.com) discusses the division's other services, which include "temperature-controlled and weather-monitored shipments, specialty-trained account representatives, online ordering and inventory-management tools, reimbursement assistance FLEXpay (an early-pay discount program), quick data retrieval and reporting and next-day nationwide delivery of pharmaceuticals."

- Migliara/Kaplan Associates is a market research firm that AstraZeneca retained to investigate consumer attitudes toward Zoladex and its competitors. (*See* Group Exhibit A, AZ0035883).  The firm's website (www.migkap.com) also describes it as a "global, full service, healthcare marketing research consulting firm."

- Sudler & Hennessey is another advertising firm retained by AstraZeneca to provide advertising and marketing services during the Class Period.  (*See* Group Exhibit A, AZ0031266 and AZ0031261).  Sudler's website (www.sudler.com), mentions its promotion, strategy, branding and medical education programs, among other things.

- Ruder Finn is an advertising agency that AstraZeneca engaged to prepare brochures and other materials related to the marketing of Zoladex, and perhaps other drugs.  (*See* Group Exhibit A, AZ0031022).  The firm's website describes its services as including "customer-focused web sites, intranets and extranets, supported by interactive marketing, advertising, and public relations campaigns for its U.S. and global clients." (www.rfinteractive.com).

- Eidetics, Accenture, The Benfield Group, Objective Insights, and Simon Kucher are consulting groups identified in deposition testimony as having provided

3

market research and pricing strategy services to AstraZeneca related to one or more of its drugs.  (*See* Deposition of John Freeberry ("Freeberry Dep."), at 148-153) (attached hereto as Exhibit B); Deposition of Jeffery Alverson ("Alverson Dep."), at 112-117) (attached hereto as Exhibit C).   Each of these third parties' websites demonstrates that they perform a variety of additional services for pharmaceutical companies.  For example, according to its website, Eidetics engages in strategic research and consulting.  (www.eidetics.com).  Likewise, Accenture performs a wide array of business consulting services. (www.accenture.com).  Similarly, The Benfield Group describes itself as "a Health Care Consulting firm that provides research, strategic planning and implementation support."  (www.thebenfieldgroup.com).  Objective Insights performs product forecasting, market assessment, business development deal analysis, pricing and reimbursement analysis, portfolio analysis and optimization, decision analysis and modeling and public policy analysis. (www.objectiveinsights.com).  Finally, Simon Kucher & Partners "specialize[s] in strategy and marketing and we are regarded as the world's leading pricing adviser. We employ a highly sophisticated methodology that combines quantitative and qualitative evidence, as well as leveraging our business experience." (www.simon-kucher.com).

The services provided by the third parties clearly relate to AstraZeneca's pricing, marketing and reimbursement practices with respect to the sale of its pharmaceutical products. Accordingly, the subpoenas seek discovery of information that is both relevant and likely to lead

to the discovery of admissible evidence in the case. Therefore, AstraZeneca's motion for a protective order should be denied.

## ARGUMENT

### A. The Definition of "AstraZeneca Drugs" Should Properly Include All Drugs Manufactured by AstraZeneca

AstraZeneca first attacks plaintiffs' requests because they seek documents relating to all drugs manufactured by the company, rather than simply those drugs identified in Appendix A to the AMCC. But AstraZeneca's position would place a restriction on discovery that is not required by either the Federal Rules or the Court's previous rulings in this case. Plaintiffs are entitled to any documents that might evidence a pattern or practice by which AstraZeneca prices and markets drugs – regardless of whether those drugs are named in the AMCC.

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is "very broad," and parties' requests need not be limited to information directly bearing upon a particular issue in the case. *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001). Indeed, Rule 26 makes clear that, "information is discoverable if there is any possibility it might be relevant to the subject matter of the motion." *Id.* at 17 (citing *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)); *see also In re: Aircrash near Roselawn, Indiana on October 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). Accordingly, the Court should find requested information relevant so long as it bears on, or could lead to other information that could bear on, any issue that may be pertinent to the case, without limitation to the issues raised by the pleadings. *See Roselawn*, 172 F.R.D. at 303. Moreover, at the discovery stage of the case, information sought need not be admissible and may be sought to help define or clarify the issues. *See Schuurman v. The Town of North Reading*, 139 F.R.D. 276, 278 (D. Mass. 1991) (Bowler J.); *DePaepe v. GMC*, 141 F.3d

715, 719 (7th Cir. 1998) (holding that "the use of discovery to winnow or refine [plaintiff's] theories of liability should not be discouraged").

For example, in one recent dispute, a defendant insurance broker sought discovery of a settlement agreement that plaintiff had entered into in a related case. *Atchison Casting Corp. v. Marsh, Inc*., 216 F.R.D. 225 (D. Mass. 2003). Plaintiff sought to quash the subpoena, contending that the settlement agreement did not relate directly to any particular issue in the instant case. Concluding that plaintiff "ought not be empowered to decide what may or may not be relevant for Defendant's purposes," the court noted that the documents could lead to the discovery of admissible evidence and were properly discoverable. *Id.* at 227. Other courts have concurred that discovery of related, similar products or circumstances is well within the broad scope of the Rules. *See, e.g., Briney v. Deere & Co.*, 150 F.R.D. 159, 164 (S.D. Iowa 1993) (granting in part plaintiffs' motion to compel discovery of related products not at issue in complaint); *Kramer v. Boeing Co*., 126 F.R.D. 690, 695 (D. Minn. 1989) (holding that "other similar incidents are often determined to be discoverable in products liability actions"); *Drabik v. Stanley-Bostitch, Inc.,* No. 90-0322-CV-W-6, 1991 U.S. Dist. LEXIS 8694, *5 (W.D. Mo. June 18, 1991) (attached hereto as Exhibit D) (noting that "it is clear from the case law that information concerning similar products is relevant and subject to discovery" in product liability case).

Likewise, plaintiffs' subpoenas in this case seek discovery of information related to AstraZeneca's generalized practices in pricing and marketing its pharmaceutical products. The AMCC's allegations implicate these practices. Specifically, plaintiffs allege that the defendants collectively "promote their drugs not based on lower prices, but by the use of reimbursement rates based on a fictitious and inflated AWP that allows purchasers and intermediaries (including

6

providers and PBMs) to make inflated profits – and the Defendant Drug Manufacturers to increase their market share – at the expense of Plaintiffs and the Class." AMCC ¶ 6.  Whether a particular drug manufactured by AstraZeneca is listed in the AMCC is immaterial to proving these allegations.  Plaintiffs do not seek information pertaining to non-AMCC drugs that have no relationship to price, sales, marketing and the other categories described in the subpoenas.  Because AstraZeneca's practices related to any of its drugs may yield probative information about the pricing and marketing of the drugs listed in the AMCC, AstraZeneca's proposed limitation is unsupportable.

AstraZeneca disputes this by pointing to a variety of unconnected decisions of this Court purportedly fashioning the limitation on discovery that AstraZeneca contends exists.  AstraZeneca, however, is wrong.  The Court's decision resolving defendants' motion to dismiss the Master Consolidated Complaint merely specified the drugs on which plaintiffs were seeking damages.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2003).  Case Management Order ("CMO") No. 7 only concerned discovery pending the outcome of motions to dismiss, which was eventually expanded to a full-blown status after the motions were decided.  Finally, plaintiffs' Omnibus Requests for Production to Defendants in no way limited the scope of additional discovery sought by plaintiffs with respect to either the defendants or third parties.  (*See* Exhibit B to AstraZeneca Motion).

**B.     AstraZeneca's Motion Inappropriately Seeks to Impose Vague and Overly Restrictive Substantive Limitations on Plaintiffs' Requests.**

Plaintiffs' subpoenas properly seek documents concerning the work that each of the third parties performed on AstraZeneca's behalf.  Without directly critiquing any particular request, AstraZeneca complains generally that the subpoenas are "remarkably broad."  (*See* AstraZeneca

Motion at 6). As a result, AstraZeneca's motion seeks to limit the requests to "documents relating to pricing and reimbursement." (*See id.* at 5). This formulation of the subject matter of this litigation fails to take into consideration matters that relate to these issues, including lobbying, marketing, distribution consulting, business management consulting, among others, which are services that the various third parties hold themselves out as providing on their respective websites. (*See infra,* pp. 2-4). The documents produced and limited testimony adduced thus far may identify a subset of these services that plaintiffs know were provided to AstraZeneca by these third parties, but the subpoenas will demonstrate exactly what other services were provided to AstraZeneca and its various departments. That plaintiffs cannot point to each specific service beforehand is the very reason third party discovery is permitted. *See Schuurman*, 139 F.R.D. at 278; *DePaepe*, 141 F.3d at 719. And again, plaintiffs are only seeking from these third parties information that relates to the allegations of the AMCC.

AstraZeneca's objections to relevance and overbreadth are insufficient to meet its burden of demonstrating the need for a protective order limiting plaintiffs' discovery of the subpoenaed third parties. Federal courts are in agreement that such boilerplate objections, such as those posited here, are not an appropriate basis on which to limit discovery. *See Blake Assocs., Inc. v. Omni Spectra, Inc.,* 118 F.R.D. 283, 289 (D. Mass. 1988) (requiring responses where "plaintiff does not even state, much less show, that providing further answers in the traditional manner would be a burden"); *Hobley v. Burge*, No. 03-3678, 2003 U.S. Dist. LEXIS 18363, *3 (N.D. Ill. Oct. 15, 2003) (citing *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa, 2000)). "The detail in the complaint defines the liberal guidelines for determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections."

*Omega Eng'g, Inc. v. Omega, S.A.,* No. 98-2464, 2001 U.S. Dist. LEXIS 2016, *7 (D. Conn. Feb. 6, 2001) (granting motion to compel) (attached hereto as Exhibit E).

In reviewing AstraZeneca's motion, even after a series of meet and confers, the documents it seeks to exclude from production remain unclear. As discussed above, each subpoenaed party has been identified in documents or deposition testimony as having provided one or more of these relevant services and possibly others, and plaintiffs' requests are therefore appropriately tailored to encompass any the information related to these services. AstraZeneca's failure to point to any particular category of documents sought that should be excluded demonstrates the lack of any reasonable basis for its motion. Moreover, having demonstrated that the services performed by each subpoenaed party are directly related to issues in this litigation, plaintiffs are also clearly entitled to all documents providing evidence of those services, including contracts, billing records, invoices notes and correspondence with AstraZeneca. (*See, e.g.*, Objective Insights Subpoena, Requests 1-6, attached as Exhibit B to AstraZeneca's Motion). Such documents are essential to verifying that the subpoenaed parties have in fact produced all relevant evidence concerning its services provided to AstraZeneca related to the pricing, marketing and distribution of its drugs.

For the foregoing reasons, plaintiffs respectfully request that this Court deny AstraZeneca's motion for a protective order.

Dated: September 21, 2004                             By:   /s/ Thomas M. Sobol
                                                                                     One of Plaintiffs' Counsel

                                                                                     Thomas M. Sobol
                                                                                     Edward Notargiacomo
                                                                                     HAGENS BERMAN LLP
                                                                                      One Main Street, 4th Floor
                                                                                      Cambridge, MA 02142

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Samuel Heins
Brian Williams
HEINS MILLS & OLSON, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Jeff Kodroff
John Macoretta
SPECTOR, ROSEMAN & KODROFF, P.C.
18181 Market Street, Suite 2500
Philadelphia, PA 19103

**CHAIRS OF LEAD COUNSEL COMMITTEE**

Kenneth A. Wexler
THE WEXLER FIRM LLP
One North LaSalle
Suite 2000
Chicago, Illinois 60602

Marc H. Edelson
HOFFMAN & EDELSON
45 West Court Street
Doylestown, PA 18901

**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

Michael McShane
ALEXANDER, HAWES & AUDET LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104

Robert E. Piper, Jr.
PIPER & ASSOCIATES
624 Pierre Avenue
Shreveport, LA 71103

**MEMBERS OF EXECUTIVE COMMITEE**

Anthony Bolognese
BOLOGNESE & ASSOCIATES
One Penn Center
1617 JFK Boulevard
Suite 650
Philadelphia, PA 19103

Jonathan W. Cuneo
THE CUNEO LAW GROUP
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002

Neal Goldstein
FREEDMAN & LORRY, P.C.
400 Market Street, Suite 900
Philadelphia, PA 19106

Michael E. Criden
HANZMAN & CRIDEN, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134

Blake M. Harper
Kirk B. Hulett
HULETT HARPER LLP
550 West C Street, Suite 21700
San Diego, CA 92101

Jonathan D. Karmel
KARMEL & GILDEN
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Philadelphia, PA 19103

Diane M. Nast
RODA & NAST PC
801 Estelle Drive
Lancaster, PA 17601

Henry H. Rossbacher
ROSSBACHER & ASSOCIATES
811 Wilshire Boulevard
Suite 1650
Los Angeles, CA 90017-2666

Jonathan Shub
SHELLER, LUDWIG & BADEY
1528 Walnut Street
3rd Floor
Philadelphia, PA 19102

Ira Neil Richards
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103

Scott R. Shepherd
SHEPHERD & FINKLEMAN, LLC
117 Gayley Street, Suite 200
Media, PA 19063

Mitchell A. Toups
WELLER, GREEN, TOUPS &
TERRELL L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704

Damon Young
Lance Lee
YOUNG, PICKETT & LEE
4122 Texas Boulevard

P.O. Box 1897
Texarkana, AR/TX 75504

**ADDITIONAL ATTORNEYS
FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE BY VERILAW**

Docket No. MDL 1456

    I, Thomas M. Sobol, hereby certify that I am one of plaintiffs' attorneys and that, on September 21, 2004, I caused copies of PLAINTIFFS' RESPONSE IN OPPOSITION TO ASTRAZENECA'S MOTION FOR A PROTECTIVE ORDER LIMITING THE SCOPE OF CERTAIN THIRD PARTY SUBPOENAS to be served on all counsel of record by causing same to be posted electronically via Verilaw.

Dated: September 21, 2004              /s/ Thomas M. Sobol
                                                        Thomas M. Sobol