UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | : : : : : | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | : : : : : : | Chief Magistrate Judge<br>Marianne B. Bowler |

## NON-PARTIES AETNA, INC., HUMANA INC., AND CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF JOINT MOTION TO QUASH SUBPOENAS AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

LOWEY DANNENBERG BEMPORAD
 & SELINGER, P.C.
Peter D. St. Phillip, Jr.
Todd S. Garber
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601-1714
Tel.: (914) 997-0500
Fax.: (914) 997-0035

*Counsel for Aetna, Inc., Humana Inc. &
Connecticut General Life Insurance
Company*

BALLARD SPAHR ANDREWS
 & INGERSOLL, P.C.
Eric W. Sitarchuk
Sally M. Williams
51st Floor
1735 Market Street
Philadelphia, PA 19103-7599
Tel: 215-665-8500
Fax: 215-864-8999

*Counsel for Connecticut General Life
Insurance Company*

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

      I.      The Subpoenas Do Not Conform to Fed. R. Civ. P. 30(b)(6) . . . . . . . . . . . 4

      II.     Defendants Cannot Overcome the Strong Presumption
           Against Allowing discovery of Health Plans . . . . . . . . . . . . . . . . . . . . . . . 5

           A.    Deposition Discovery Into the Collective Consciousness
                 of the Health Plans is Improper And Not Directed to
                 Common Questions Necessary for the Trial of Issues
                 Common to the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           B.    Defendants Have Failed to Show that Their Subpoenas
                 Are Not Unduly Burdensome, Overbroad and Oppressive . . . . . . . 9

           C.    Defendants are Seeking Discovery of Issues Already Known to
                 Defendant or More Easily Obtained From Other Sources . . . . . . . . 10

      III.    The Health Plans' Objections To Deposition Testimony Is Timely . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

*Abbott v. Kidder, Peabody & Co.*,
   No. 97 C. 3251, 1997 WL 337228 (N.D. Ill. Jun. 16, 1997) .......................................... 12

*Adkins v. Mid-America Growers, Inc.*,
   141 F.R.D. 466 (N.D. Ill. 1992) ................................................................................... 8

*Aetna Casualty and Surety Company v. Rodeo Autobody*,
   130 F.R.D. 2 (D. Mass. 1990) 12

*Baldwin & Flynn v. National Safety Assocs.*,
   149 F.R.D. 598 (N.D. Cal. 1993) ................................................................................ 6

*Clark v. Universal Builders*,
   501 F.2d 324 (7th Cir. 1974) ................................................................................... 6, 9

*Collins v. International Dairy Queen*,
   190 F.R.D. 629 (M.D. Ga. 1999) ........................................................................... 7, 10

*Dubin v. Hutton Group, Inc.*,
   No. 88 Civ. 0876 (PKL), 1992 WL 6164 (S.D.N.Y. Jan. 8, 1992) ................................. 6

*Enterprise Wall Paper*,
   85 F.R.D. 325 (S.D.N.Y. 1980) ................................................................................. 7

*Guckenberger v. Boston University*,
   957 F. Supp. 306 (D. Mass. 1997) ............................................................................ 8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   307 F. Supp. 2d 196 (D. Mass. 2004) ....................................................................... 9

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) ............................................................................... 8

*McCarthy v. Paine Webber Group*,
   164 F.R.D. 309 (D. Conn. 1995) ............................................................................... 6

*Nova Biomed. Corp. v. i-STAT Corp.*,
   182 F.R.D. 419 (S.D.N.Y. 1998) .............................................................................. 12

*On The House Syndication, Inc. v. Federal Express Corp.*,
   203 F.R.D. 452 (S.D. Cal. 2001) ............................................................................... 5

*Paparelli v. The Prudential Life Ins. Co. of Am.*,
   108 F.R.D. 727 (D. Mass. 1985) ............................................................................... 5

*Penk v. Oregon State Board of Higher Education,*
    99 F.R.D. 511 (D. Ore. 1983) .................................................................................... 8

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ................................................................................................. 6

*Redmond v. Moody's Investor Serv.,*
    92 Civ. 9161, 1995 WL 276150, (S.D.N.Y. May 10, 1995) .................................... 7

*Renovitch v. Stewardship Concepts, Inc.,*
    No. 84 C. 7727, 1987 WL 14688 (N.D. Ill. July 23, 1987) .................................... 7


## STATUTES

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 4

Fed. R. Civ. P. 45(c)(1) ........................................................................................................ 9


## MISCELLANEOUS

*Manual for Complex Litigation, Fourth* § 21.14 ............................................................... 6

*Manual on Complex Litigation, Third,* § 30.232 ............................................................... 8

Saint Louis University Law Journal Winter 1998, Health Law Symposium: The Changing
    Face Of Pharmacy Benefits Management: Information Technology
    Pursues A Grand Mission, A. Rosoff, 42 St. Louis U. L.J. 1, n.60 ...................... 10

Tax Lawyer Fall, 2000: Cash Method of Accounting For Professional Health Services
    Corporations: Osteopathic Medical Oncology And Hematology, P.C. v.
    Commissioner, L. DeMarchi Sleigh, 54 Tax Law. 223 ........................................ 10

A CBO STUDY: How Increased Competition From Generic Drugs Has Affected Prices and
returns in the Pharmaceutical Industry, available at
http://www.cbo.gov/ftpdocs/6xx/doc655/pharm.pdf ............................................ 10

New York University Annual Survey of American Law 2004: STATE PHARMACY DISCOUNT
PROGRAMS: A VIABLE MECHANISM FOR ADDRESSING PRESCRIPTION DRUG
AFFORDABILITY?, K. Fox, T. Trail, D. Frankford, S. Crystal,
60 N.Y.U. Ann. Surv. Am. L. 187 ........................................................................ 10

New York University Annual Survey of American Law 2004: REGULATING, GUIDING AND
ENFORCING HEALTH CARE FRAUD, J. Krause, 60 N.Y.U. Ann. Surv. Am. L. 241 ............ 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | Chief Magistrate Judge<br>Marianne B. Bowler |

## NON-PARTIES AETNA, INC., HUMANA INC., AND CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF JOINT MOTION TO QUASH SUBPOENAS AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Aetna, Inc. ("Aetna"), Humana Inc. ("Humana") and Connecticut General Life Insurance Company ("CIGNA") (collectively the "Health Plans"), pursuant to Rules 23, 26 and 45 of the Federal Rules of Civil Procedure, submit this memorandum of law in support of their Joint Motion To Quash Subpoenas and in opposition to Defendants' Motion To Compel [The Health Plans] To Comply With Deposition Subpoenas.

### PRELIMINARY STATEMENT

The Health Plans bring this motion to quash subpoenas issued by Defendants and oppose Defendants' motion to compel depositions. The subpoenas fail to identify any matters for examination and are, therefore, facially invalid.

Insofar as the subpoenas may be construed to include the identification of 25 subject matters for deposition made by Defendants on August 23, 2004, they are unduly burdensome. The Health Plans have worked diligently with counsel for Defendants in an effort to

1824 / MEMO / 00068929.WPD v1

accommodate their request for information necessary to create a record concerning Plaintiffs' Rule 23 motion for class certification. The Health Plans have produced voluminous data, documents, and testimony concerning their prescription drug businesses. The Health Plans have offered to authenticate whatever material Defendants need for use by their experts.

Notwithstanding this extraordinarily expensive, difficult and disruptive undertaking, Defendants want more. They now want to search the collective minds of the Health Plans' personnel for their "knowledge" of certain facts concerning the use of "Average Wholesale Prices" in their pharmacy business. If the Health Plans had filed suit against Defendants, this exercise might be justified. Probing what a stranger to this litigation knew or did not know about AWP, however, is both unneeded and improper. In effect, Defendants wish to treat the Health Plans as litigating entities, taking one-way discovery of their witnesses concerning facts they believe provide defenses against their unfiled lawsuits. There is no support in law for Defendants' creation of an individualized factual record of absent class members employees state of mind in class certification proceedings. Defendants' deposition requests are, therefore, unjustified and should be quashed.

## STATEMENT OF FACTS

On March 8, 2004 during a status conference, this Court denied Plaintiffs' Motion for a Protective Order Regarding Subpoenas to Putative Class Members allowing Defendants to seek limited discovery of absent class members as it related to typicality. *Mar. 8, 2004 Tr. of Status Conference* at 48-9, annexed to *Declaration of Peter St. Phillip ("St. Phillip Decl.")* as Exhibit "E". Acknowledging that discovery of absent class members was "rare," after hearing argument, the Court denied class plaintiffs' request for a blanket protective order, recognizing that health

plans were in a position to "protect themselves" from burdensome or improper requests through their individual counsel. *Id.*

On April 7, 2004, Defendants informed Aetna, CIGNA and Humana that Defendants reissued the subpoenas previously served. In addition to not identifying any topics for testimony, Defendants told the Health Plans that in some cases "a deposition might not be required." *Def. Ex. "E".* By agreement of counsel, Aetna served objections to the reissued subpoena on April 26, 2004, CIGNA served objections on April 27, 2004 and Humana served objections on April 30, 2004. *See St. Phillip Decl.* at Exs. A, B and C.

Beginning in May, and continuing through today, the Health Plans – non-parties – have devoted tremendous resources to producing documents, data and other information concerning their pharmaceutical businesses. Counsel for the Health Plans participated in several conferences with Defendants to negotiate the scope of the production. *St. Philip Decl.* at ¶¶ 3-6.

On August 18, 2004, the Health Plans renewed their objections to Defendants' requests for depositions and once again offered to cooperate with Defendants concerning authenticating documents that were produced.

Defendants responded by letter dated August 23, 2004, claiming that the need for depositions "plainly exists." Defendants <u>for the first time</u> attached an itemization of the 25 topics they plan to address if they are able to depose the Health Plans. *St. Phillip Decl.* at Ex. F. Defendants also admitted that they have already obtained the limited discovery to which they are entitled through the depositions of other "absent class members." *Id.*

The Health Plans responded on August 25, 2004, stating that (1) Defendants' blanket representation that the "need plainly exists" was insufficient to overcome its burden; (2) each of the Health Plans had served timely objections to the subpoenas and never agreed to produce

witnesses for depositions; (3) Defendants misrepresented the scope of this Court's Order which allowed only for limited discovery of absent class members; and (4) the Health Plans objected to producing designees covering 25 topics.

Defendants responded on August 26, 2004. Defendants for the first time stated their reasons for seeking depositions. Defendants claimed that they needed testimony: (1) to clarify the Health Plans' understanding of the term "AWP" or "average wholesale price" since 1991; (2) to show that the level of reimbursement for drugs, even when based on AWP, is not determined by the Health Plans' understanding of the average wholesale costs of the drugs; (3) to determine whether the reimbursement agreements produced have always been followed in practice; and (4) to assess to what degree the reimbursement agreements the Health Plans produced were, indeed, representative of the reimbursement methodologies employed.

On August 30, 2004, Defendants filed their motion to compel.

## ARGUMENT

### I.     The Subpoenas Do Not Conform To Fed. R. Civ. P. 30(b)(6)

The subpoenas identify the Health Plans by name, but do not specify *any* topics for deposition testimony, nor do they conform to the requirements of Fed. R. Civ. P. 30(b)(6) ("A party may in the party's notice and in a subpoena name as the deponent a . . . private corporation . . . and describe with reasonable particularity the matter on which examination is requested. . . . A subpoena shall advise a non-party organization of its duty to make . . . a designation [of persons who consent to testify on its behalf]. *Id.*; *see Def. Exs.* E, F & G. Defendants did not identify topics for testimony until August 23, 2004.[1]

---

[1] Perhaps recognizing that their list of topic areas is hopelessly overbroad, Defendants failed to provide it to the Court. *See Def. Ex.* J, p. 2 ("I have attached an itemization of the substantive issues defendants seek to address through deposition of your clients."). For this

The Court has ruled that "if a party opts to employ the procedures of Rule 30(b)(6), F.R.Civ.P., to depose the representative of a corporation, that party must confine the examination to the matters stated "with reasonable particularity" which are contained in the Notice of Deposition." *Paparelli v. The Prudential Life Ins. Co. of Am.*, 108 F.R.D. 727, 730 (D. Mass. 1985). Here, no topics were outlined in the subpoena. As a result, Defendants may not take testimony of the Health Plans on any topic, and the subpoenas, to the extent they can be construed as calling for testimony of the designees of Health Plans, are facially invalid and should be quashed.

## II. Defendants Cannot Overcome the Strong Presumption Against Allowing Discovery of Health Plans

Even if the subpoenas had been valid, Defendants' request for deposition testimony should be quashed.

The Health Plans are not parties to this class action, are absent class members, and consequently, have the right to be left alone unless their participation is necessary. *See, e.g., On The House Syndication, Inc. v. Federal Express Corp.*, 203 F.R.D. 452, 455 (S.D. Cal. 2001) ("[U]pon a survey of cases, it is safe to state that discovery of absent class members is disfavored") (citations omitted). The Supreme Court has noted that "an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course,

---

reason alone, Defendants' motion to compel should be denied. The Health Plans provide a copy of the exhibit to Defendants' August 23, 2004 letter at Exhibit "F" to *St. Phillip Decl.*

1824 / MEMO / 00068929.WPD v1                     - 5 -

content in knowing there are safeguards provided for his protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).[2]

Because discovery of absent class members is discouraged and disfavored, "a 'strong showing' must be made before discovery from absent class members will be permitted." *Dubin v. Hutton Group, Inc.*, No. 88 Civ. 0876 (PKL), 1992 WL 6164, at *3 (S.D.N.Y. Jan. 8, 1992) (citing *Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980)). This "strong showing" must demonstrate that the discovery sought (1) is not a tactic to take undue advantage of the class members and is limited to common questions necessary for the trial of issues common to the class; (2) is not unduly burdensome, overbroad and oppressive; and (3) seeks information the party does not know. *Clark v. Universal Builders*, 501 F.2d 324 (7th Cir. 1974); *see also McCarthy v. Paine Webber Group*, 164 F.R.D. 309, 313 (D. Conn. 1995).

Courts are unanimous in requiring even greater justification for deposition discovery of absent class members. *E.g., Baldwin & Flynn v. National Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) ("The burden is heavy to justify asking questions by interrogatories, even higher

---

[2]*See also Manual for Complex Litigation, Fourth* § 21.14 at p. 256 (hereafter the "Manual"):

> Discovery relevant to certification should generally be directed to the named parties. Discovery of unnamed members of a proposed class requires a demonstration of need.

and § 21.41 at p. 302:

> . . . discovery directed at individual class members (other than named plaintiffs) should be conditioned on a showing that it serves a legitimate purpose. One of the principle advantages of class actions over mass joinder or consolidation would be lost if all class members were routinely subjected to discovery.

to justify depositions."); *Redmond v. Moody's Investor Serv.*, 92 Civ. 9161, 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995) ("the burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy").

Applying this rigorous test, Defendants fail to overcome the presumption against discovery of absent class members as it applies to the Health Plans.

### A. Deposition Discovery Into the Collective Consciousness of the Health Plans is Improper And Not Directed to Common Questions Necessary for the Trial of Issues Common to the Class

Discovery of absent class member is not permissible unless the information sought is directly relevant to common questions and is necessary to the trial of common issues and has been shown to not be a tactic to take undue advantage of absent class members. *Collins v. International Dairy Queen*, 190 F.R.D. 629 (M.D. Ga. 1999).

Attached to their August 23 Letter, Defendants list "Deposition Subjects" which they claim are necessary to obtain from the Health Plans. A review of the 25 subjects shows that Defendants are not seeking testimony relevant to common issues, but rather the individual Health Plans' "rationale" (Subject No. 2, 5, 9, 18) and "knowledge and [or] understanding" (Subject No. 6, 11, 12, 13, 14, 17, 20, 21, 24) of various issues pertaining to the health insurance industry. *Ex.* "F" *to St. Phillip Decl.* This attempt to peer into the minds of individual employees of absent class members is unrelated to any class certification issues. *See Dubin,* 1992 WL 6164, at *3 (denying motion to compel absent class members to respond to interrogatories related to employees decisions); *Enterprise Wall Paper,* 85 F.R.D. at 327 (rejecting discovery of individual purchases and sales of shares); *Renovitch v. Stewardship Concepts, Inc.*, No. 84 C 7727, 1987 WL 14688, at *2 (N.D. Ill. July 23, 1987) (rejecting discovery on individual class member

employment history); *Penk v. Oregon State Board of Higher Education*, 99 F.R.D. 511 (D. Ore. 1983) (denying discovery of factual basis of individual discrimination claims). Were this type of discovery be allowed to proceed, it would undermine the efficiencies Rule 23 is designed to achieve. *See Manual on Complex Litigation, Third*, § 30.232 ("[o]ne of the principal advantages of class actions over massive joinder or consolidation would be lost if class members were routinely subjected to discovery"); *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992) ("...the ideas of a class action and individualized discovery do not fit together well .... If joinder of all parties is impracticable, propounding discovery like interrogatories, depositions, and requests to produce on an individual basis is even more impracticable").

Depositions to inquire into the minds of these absent class members are plainly unnecessary. What a non-party knew or did not know about reimbursement does not bear on any class certification issue. The typicality requirement of Rule 23(a)(3) is satisfied "when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims," and "when the plaintiff's claims and those of the class are based on the same legal theory." *Guckenberger v. Boston University*, 957 F. Supp. 306, 325 (D. Mass. 1997) (Saris, J.) (citation omitted); *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267 (D. Mass. 2004) ("... the claims of each of the end payor plaintiffs, including those of the proposed representatives for the class, arise from the same course of conduct: SmithKline's alleged efforts to delay generic competition. . . . Accordingly, the claims of the named plaintiffs are typical of those asserted by other members of the class").

Health Plans have provided Defendants with documents showing, in detail, how AWP factors in their pharmacy practices. What any absent class member's employee understood about AWP is not relevant. As the Court has held in this case:

> Defendants have conceded that AWP's represent only an 'undiscounted sticker price' that has no direct relation to the actual average price they charge for their drug and that this is a widespread pricing and reporting practice.

*In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 206 (D. Mass. 2004).

Hence, Defendants' stated reasons for overcoming the high hurdle justifying absent class member discovery – to see if the named plaintiffs are "typical" of members of the class – have already been met, and no testimony from the Health Plans is necessary.

### B. Defendants Have Failed to Show that Their Subpoenas Are Not Unduly Burdensome, Overbroad and Oppressive

Not only have Defendants failed to show that the deposition discovery they seek from the Health Plans is necessary, they have also failed to show that the subpoenas are not unduly burdensome, overbroad and oppressive. *See, Clark,* 501 F.2d at 340-41; Fed. R. Civ. P. 45(c)(1).

Much of the supposedly "needed" information set forth in Defendants' August 26 letter has been produced. For example, the deposition testimony of Aetna's pharmacy director Robert Jackson (taken in *In re Terazosin Hydrochloride Antitrust Litig.*, MDL No. 1317 (U.S.D.C. Florida) and designated for use in this litigation), explains in detail how AWP and MAC work in virtually every retail pharmacy transaction in which Aetna participates as a co-payer. *See Excerpted Jackson Testimony* at pp. 114-129, attached as Exhibit "G" to *St. Phillip Decl.* As Mr. Jackson testified, this payment mechanism is widely used throughout the industry. *Id.* at p. 123. Defendants know this from their review of the data concerning the millions of claims paid which were produced by CIGNA and Humana in response to the subpoenas. Defendants' need to know whether "the terms of reimbursement agreements . . . have been followed in practice" and "to what degree the reimbursement agreements . . . are representative of the reimbursement

methodologies employed" has been satisfied by the documentary evidence. If necessary, the Health Plans will cooperate in authenticating any records Defendants intend to proffer as evidence. As a result, depositions are unnecessary.

### C. Defendants are Seeking Discovery of Issues Already Known to Defendant or More Easily Obtained From Other Sources

Defendants must show that the discovery it requests is not already known and not more easily available from other sources. *Collins, supra*, 190 F.R.D. at 630-31.

Public data concerning AWP abounds in the pharmaceutical industry.[3] Each of the defendants have a wealth of private data from the Health Plans concerning AWP. This data is more than sufficient to establish a record of whether the named plaintiffs in this litigation are typical of the Health Plans.

---

[3] *See, e.g.*, A CBO STUDY: HOW INCREASED COMPETITION FROM GENERIC DRUGS HAS AFFECTED PRICES AND RETURNS IN THE PHARMACEUTICAL INDUSTRY, available at http://www.cbo.gov/ftpdocs/6xx/doc655/pharm.pdf (The list price or AWP "serves as an important signal since it is a published price observed by all buyers"); New York University Annual Survey of American Law 2004: STATE PHARMACY DISCOUNT PROGRAMS: A VIABLE MECHANISM FOR ADDRESSING PRESCRIPTION DRUG AFFORDABILITY?, K. Fox, T. Trail, D. Frankford, S. Crystal, 60 N.Y.U. Ann. Surv. Am. L. 187 ("average wholesale price (AWP)--the 'sticker' price or average list price that a manufacturer suggests wholesalers charge pharmacies"); New York University Annual Survey of American Law 2004: REGULATING, GUIDING AND ENFORCING HEALTH CARE FRAUD, J. Krause, 60 N.Y.U. Ann. Surv. Am. L. 241 ("Historically, AWP 'has generally been understood . . . to be the manufacturer's suggested list price for wholesalers to charge retail pharmacies for drugs'") (quoting Robert Fabrikant et al., Health Care Fraud: Enforcement and Compliance 10-3 (2002)); Tax Lawyer Fall, 2000: CASH METHOD OF ACCOUNTING FOR PROFESSIONAL HEALTH SERVICES CORPORATIONS: OSTEOPATHIC MEDICAL ONCOLOGY AND HEMATOLOGY, P.C. V. COMMISSIONER, L. DeMarchi Sleigh, 54 Tax Law. 223 ("Medicare and other insurance carriers typically reimburse the charges for the drugs according to the average wholesale price (AWP) of each unit of each drug"); Saint Louis University Law Journal Winter 1998, Health Law Symposium: THE CHANGING FACE OF PHARMACY BENEFITS MANAGEMENT: INFORMATION TECHNOLOGY PURSUES A GRAND MISSION, A. Rosoff, 42 St. Louis U. L.J. 1, n.60 ("The "average wholesale price" (AWP) of a drug is often used to peg the MAC or otherwise compute the economic incentives used").

Further, Defendants admit in both their August 23 and August 26 letters, that they have obtained the information they are requesting from the Health Plans from other sources. The August 23 Letter states "[t]he depositions of other 'absent class members' taken in this matter..." while, the August 26 Letter similarly states "as prior depositions have shown." *See Def. Ex. J & L*. Defendants have already been able to take discovery of "a few" health plans, more than enough to satisfy the "sample" that they requested. *St. Phillip Decl.* at Ex. E.

### III. The Health Plans' Objections To Deposition Testimony Is Timely

Defendants fault the Health Plans for raising objections to depositions "at the eleventh hour" and claim their objections are untimely. *Def. Brf.* at p. 7-9. This argument is meritless.

As explained in Point I, *supra*, no specifications of topics for deposition testimony were served on the Health Plans in the subpoenas. Each of the Health Plans timely objected to the subpoenas request for documents. *St. Phillip Decl.* at Exs. A, B and C.

It was not until Defendants' August 23, 2004 letter that such topics were identified. *St. Phillip Decl.* at Ex. F. Two days following this identification of topics, counsel for the Health Plans objected to producing witnesses, and promptly filed this motion to quash in response to Defendants' motion to compel.

Rule 45(c)(3)(A) governs motions to quash and/or modify subpoenas and states, in pertinent part:

> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:
>
> (iv) subjects a person to undue burden.

The term "timely" is neither explained in the Rule nor discussed in the Advisory Committee's Notes. The word "timely" was adopted in 1991 and replaced the previous formulation, "promptly and in any event at or before the time specified in the subpoena for

compliance therewith." *Nova Biomed. Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998). Consistent with the purposes of the 1991 amendment to Rule 45 – "to clarify and enlarge the protections afforded persons who are required to assist the Court by giving information or evidence" – "timely" has been interpreted to mean "at any point before the return date." *Nova, supra*, 182 F.R.D. at 422.

Here, no return date has been set following Defendants first specification of the topics for testimony on August 23, 2004. The motion to quash is, therefore, timely. *See Point I, supra.*

The situation was vastly different in *Aetna Casualty and Surety Company v. Rodeo Autobody*, 130 F.R.D. 2 (D. Mass. 1990) and *Abbott v. Kidder, Peabody & Co.*, No. 97 C. 3251, 1997 WL 337228 (N.D. Ill. Jun. 16, 1997). In both cases, the specific deponents were specifically named in the subpoena. Neither deponent attempted to negotiate compliance, rather, they simply did not show up at the appointed time. In this case, no witness was named nor was a date ever scheduled. At all times since receipt of the reissued subpoenas, counsel for the Health Plans has been in contact with counsel for Defendants attempting to resolve the discovery disputes in a mutually agreeable fashion. Following the first specification of topics on August 23, 2004, no future date for a deposition has proposed nor agreed to, and as such, Defendants' motion to quash is timely.[4]

---

[4] Defendants also contend that the Health Plans were "offered the opportunity to, but chose not to, join in plaintiffs' protective order motion." *Def. Brf.* at p. 8. This argument is disingenuous. Counsel for the Health Plans told Defendants that it made sense to await the determination of plaintiffs' motion for a blanket protective order before responding. In response, Defendants agreed and ***reissued*** the subpoenas on April 7, 2004. *See Def. Exs.* E, F & G. The Health Plans had no obligation to rush to Court to present their own individual arguments at that time, particularly since the District Court contemplated that third parties could "protect themselves," presumably through motions to quash made by their own counsel. *St. Phillip Decl.* at Ex. E

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoenas of the Health Plans to the extent they can be construed as calling for deposition testimony of their designees.

Dated: September 10, 2004
       White Plains, New York

LOWEY DANNENBERG BEMPORAD
& SELINGER, P.C.

By: _____
      Peter D. St. Phillip, Jr.
      Todd S. Garber
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601-1714
Tel.: (914) 997-0500
Fax.: (914) 997-0035

*Counsel for Aetna, Inc., Humana Inc. & Connecticut General Life Insurance Company*

BALLARD SPAHR ANDREWS
 & INGERSOLL, P.C.
      Eric W. Sitarchuk
      Sally M. Williams
51st Floor
1735 Market Street
Philadelphia, PA 19103-7599
Tel: 215-665-8500
Fax: 215-864-8999

*Counsel for Connecticut General Life Insurance Company*