## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | :  MDL 1456 :  Master File No. 01-CV-12257-PBS : |
| _____ | :  Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : :  **REDACTED VERSION** : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S RULING ON DEFENDANTS' MOTION TO COMPEL FURTHER DISCOVERY AND FIRST DATABANK, INC.'S MOTION TO LIMIT DISCOVERY

### Preliminary Statement

Pursuant to Fed. R. Civ. P. 72(a) and Rule 2(b) of the Rules of Magistrate Judges in the District of Massachusetts, non-parties First DataBank, Inc. and its employee Patricia Kay Morgan (collectively "FDB") respectfully submit the following objections to an order delivered from the bench by Magistrate Judge Bowler on September 27, 2004 (the "Order"). That Order requires Ms. Morgan to submit to two full days of deposition testimony on issues that have already been largely addressed in prior discovery by FDB.[1]

The Magistrate Judge correctly recognized that the parties face a heightened burden to obtain discovery from FDB, because a First Amendment privilege protects publishers from routine non-party discovery requests. The Order, however, misapplied the legal standard that governs such discovery. Rather than requiring a demonstration that the information sought from

---

[1] The transcript of the Magistrate's Order, although immediately requested, is not yet available. The discussion herein is based on counsel's notes and recollections of the hearing, and FDB requests permission to supplement or revise this memorandum when the transcript becomes available. *See* Affidavit of Alia Smith sworn to October 8, 2004 in support of request for extension of time (filed Oct. 8, 2004).

FDB is (1) clearly relevant to an important issue in the case, (2) noncumulative, and (3) not available from other sources,[2] the Magistrate Judge allowed the parties to overcome the privilege simply on a showing that information held by FDB was "central" to a claim in the case, and some of it is not yet in the possession of the parties. By so holding, the Order improperly removed from the parties *any* obligation to avoid cumulative discovery and *any* obligation to seek the information from other readily available sources. The Order stands the constitutional privilege on its head, turning a publisher into the *first* source of information for litigation rather than the last, and sanctioning entirely cumulative discovery.

Even under the ordinary standards of non-party discovery dictated by Fed. R. Civ. P. 26, the Order fails adequately to alleviate either the "cumulative and duplicative discovery" demanded or the "undue burden and expense" imposed on FDB. FDB is a small, specialty publisher of medical information that, among other things, collects and publishes drug pricing data. This data is relevant to scores of lawsuits now pending in state and federal courts around the country, of which these consolidated cases are only one piece. FDB has been subpoenaed as a non-party in case after case by litigants, as here, seeking specific pricing data and duplicative evidence about how FDB collects that data.

FDB has already produced to the parties in this case tens of thousands of documents and several days of sworn testimony from other proceedings, addressing virtually all of the issues they say they need to cover through another deposition by FDB. The evidence already produced explains in detail how FDB collects the data it publishes, where the data comes from, and how

---

[2] *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("*Shoen I*"); *Shoen v. Shoen*, 48 F.3d 412, 416 (1995) ("*Shoen II*"). Because FDB is a California corporation, and its subpoenas were issued out of the Northern District of California, Ninth Circuit law applies to the disposition of this motion, and any appeal would go to the Ninth Circuit. *See* 28 U.S.C. § 1407; *see also In re Corrugated Container Antitrust Litig.*, 655 F.2d 748, 750, n.2 (7th Cir. 1981) (accepting appeal of discovery matter emanating from MDL in Texas); *Pogue v. Diabetes Treatment Ctrs. of America*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002) ("appeal goes to the circuit of the district in which the deposition is being taken").

the data is compiled for publication.  There is no proper basis to repeat this information through further testimony, yet the Order sanctions precisely this.  The Magistrate Judge required no demonstration by the parties of the non-cumulative topics they needed to pursue, nor were the parties required to justify in any meaningful way the extensive time they demand from FDB.  This is a particularly acute concern given that FDB would face weeks of depositions across the country if similar discovery were required of it in the many other cases where subpoenas have been issued.

As demonstrated in greater detail in the Declarations of James Breen and Robert J. Hawley submitted to Magistrate Judge Bowler,[3] Kay Morgan, the FDB deponent, is one of only two employees trained to deal with manufacturers in collecting drug pricing information and the discovery demands threaten to impact severely FDB's business operations.  Ms. Morgan has already been deposed for ten hours in a Texas proceeding about the methods FDB uses to publish its drug pricing data, and that testimony has been made completely available to all the parties as part of a package of information disclosed by FDB.  Particularly given the extensive discovery already provided by FDB, a more finely calibrated order, at a minimum, is required to reduce the undue burden faced by FDB, especially since more narrow discovery would still satisfy fully any legitimate discovery needs of the parties.

If the Court determines that any further discovery from FDB is appropriate, it should at a minimum require the parties to proceed next by written questions.  Using written questions would compel the parties to focus on the scope of discovery they are seeking before burdening FDB, narrowing questions and avoiding duplication.  This approach would greatly minimize the impact on FDB's business.  More than 28,000 pages of documents have already been produced

---

[3] Courtesy copies of the Affidavits of Mr. Breen and Mr. Hawley, together with the brief submitted to the magistrate judge ("FDB Mem."), are submitted herewith for the Court's convenience.

by FDB in this case, and just the process of preparing a witness for oral examination in the face

of this huge amount of discovery imposes a significant and unnecessary burden on the witness.

In the unlikely event that FDB's responses to written questions failed to resolve the parties'

needs completely, any open issues would be dramatically narrowed, requiring only an extremely

limited deposition. Any oral examination then required should be conducted before the

Magistrate Judge, so that duplicative questioning and irrelevant inquires can promptly be cut off.

The Order as issued is contrary to law and clearly erroneous in requiring two full days of

additional testimony. Given the extraordinary burden confronting FDB in this and other cases,

both the constitutional privilege and Rule 26 compel reconsideration of the Order to ensure the

proper standards are applied and to limit the burden being unduly imposed upon FDB.

## BACKGROUND

Over the past several years, scores of lawsuits and investigations have sprung up around

the country, in a virtually unprecedented wave of litigation involving pharmaceutical pricing.

*See* FDB Mem. at 5-6. This wave of litigation has caused FDB, as a non-party publisher of drug

pricing information, to become inundated with discovery demands. (Hawley Dec. ¶¶ 16-20.) In

the past five years, FDB has been subpoenaed to produce documents, to provide testimony, or

both, in at least 10 separate lawsuits or investigations involving drug pricing, and additional

demands are on the way. (Hawley Dec. ¶ 16, *see* FDB Mem. at 6.) While each of cases seems to

involve a different drug (or drugs), the discovery sought from FDB is always the same: FDB's

historic information on pricing of a given set of drugs and its methods for obtaining the average

wholesale price ("AWP") of those drugs. In response to these discovery demands, FDB has

produced tens of thousands of pages of documents and provided dozens of hours of testimony in

just the past few years. (Hawley Dec. ¶ 19.)

4

The parties in *this* case have served FDB with *seven* subpoenas, seeking a broad array of documents going back more than 10 years, and demanding additional deposition testimony from Ms. Morgan, one of only two employees at FDB trained to collect drug pricing information. *See* FDB Mem. at 7-8. Although FDB objected to the breadth and scope of each of the subpoenas (Hawley Dec., Ex. F), it worked diligently with the parties in an effort to reasonably address their demands (Hawley Dec. ¶ 23; FDB Mem. at 8). FDB provided the parties here with the same extensive package of information it has provided litigants in other cases: (1) All relevant documents about the particular relevant drugs or drug manufacturers and all documents concerning FDB's methodologies for calculating average wholesale price; (2) Sworn testimony explaining FDB's methods for developing drug pricing information, including a 10-hour deposition of Ms. Morgan taken by the Texas Attorney General addressing in detail FDB's methods in publishing AWP; and (3) an affidavit authenticating FDB's documents and testimony for use in court.

Unsatisfied with this extensive package of information, Defendants Novartis and Bristol-Myers Squibb Company ("Moving Defendants") moved to compel further testimony from Ms. Morgan, a position joined by plaintiffs. The parties asserted the need for a lengthy deposition of Ms. Morgan to obtain information about how FDB calculates AWP, even though this information has been fully and repeatedly disclosed to them in the FDB package. FDB vigorously opposed the motion to compel further deposition testimony, and cross-moved to limit all further discovery directed to it, on the grounds that the additional information being sought was (1) cumulative of the information already provided, (2) unreasonably burdensome in light of all the demands placed on FDB in this and other proceedings, and (3) protected by a

constitutional privilege that imposed upon the parties the obligation to pursue other readily
available sources before coming after FDB.

At a hearing on a large number of discovery motions held September 27, 2004,
Magistrate Judge Bowler granted Defendants' motion to compel, denied FDB's motion to limit
discovery, and ordered that Ms. Morgan submit to two days of deposition. In ruling from the
bench, Judge Bowler acknowledged that the constitutional privilege applied to FDB, but failed to
apply the proper standard, ordering FDB to provide discovery that is readily available elsewhere.
The Order imposed no limitation against cumulative testimony and failed adequately to take into
account, under Rule 26, the serious burden imposed upon FDB by being forced to provide
testimony in response to these and myriad other, subpoenas.

**ARGUMENT**

I.    **THE STANDARD OF REVIEW**

Any party aggrieved by an order of a magistrate judge may file objections with the
district court challenging the order. Fed. R. Civ. P. 72(a). The district judge "shall consider such
objections and shall modify or set aside any portion of the magistrate judge's order found to be
clearly erroneous [when reviewing factual findings] or contrary to law [when reviewing legal
conclusions]." *Id.*; *see also Young v. Conductron Corp.*, 899 F. Supp. 39, 40 (D.N.H. 1995)
(sustaining objections to magistrate judge's order, finding that the magistrate judge's legal
conclusions were "contrary to law"). As will be demonstrated, Magistrate Judge Bowler's Order
is "contrary to law" because "it fails to apply or misapplies" the constitutional privilege that
governs discovery from FDB. *See Collens v. City of New York*, 222 F.R.D. 249, 251 (S.D.N.Y.
2004) (sustaining objections to magistrate judge's order); *Wolpin v. Philip Morris Inc.*, 189
F.R.D. 418, 422 (C.D. Cal. 1999) ("legal conclusions are freely reviewable de novo to determine

6

whether they are contrary to law"); 12 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3069 (2d ed. 1997) ("the language 'contrary to law' appears to invite plenary review"). The Order is also "clearly erroneous" because a review of the record leaves the "definite and firm conviction" that it fails properly to mitigate the overwhelming burden confronted by FDB. *Collens*, 222 F.R.D. at 251. For each of these reasons, this court should review and modify the Order.

## II.    THE ORDER COMPELLING ADDITIONAL DISCOVERY IS CONTRARY TO LAW AND CLEARLY ERRONEOUS

### A.    The Order Misapplies the Constitutional Privilege That Limits Discovery Sought From A Publisher Such As FDB.

Judge Bowler correctly concluded that FDB is entitled to assert a qualified First Amendment privilege against discovery aimed at publishers, and plainly it is. *See In re Pan Am Corp.*, 161 B.R. 577, 580 (S.D.N.Y. 1993); *see also Shoen I,* 5 F.3d at 1292 and n.5 (explaining that nine federal circuits recognize such a privilege in civil cases). The privilege exists to protect publishers such as FDB from being required to disclose information they obtain in connection with their publishing activities, because "[e]nsuring the free flow of information to the public . . . is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" *Shoen I,* 5 F.3d at 1292 (citations omitted). The qualified privilege is designed in part to address the very situation confronting FDB, by preventing publishers from becoming "'an investigative arm of the judicial system or . . . of a private party.'" *Shoen II*, 48 F.3d at 416 (citations omitted).

Indeed, the protection of publishers from the undue burden of discovery demands that might otherwise be deemed appropriate under the normal standards of Rule 26 was one of the main reasons for recognizing the privilege. *See id.* (purpose of privilege to avoid "burden[ing]

journalists' time and resources"); *U.S. v. LaRouche Campaign*, 841 F.2d 1176, 1181-82 (1st Cir. 1988) (same).[4]  The privilege serves to restrict litigation demands for information that a publisher independently collects for publication.

As Magistrate Judge Bowler correctly recognized, the constitutional privilege repeatedly has been held to apply to discovery sought from specialty publishers like FDB, including publishers of mutual fund data, data on commodities and securities transactions, and industry specific publications.[5]  Courts have had no difficulty applying the First Amendment privilege to protect publishers of trade data from the intrusive demands of litigants.  For example, the privilege was applied to data developed by the Standard & Poors rating service in *In re Pan Am Corp.*, 161 B.R. at 579.  The court found the privilege protected the collection of such specialty data, so long as the publisher gathers the information "with the intent to use the material to disseminate information to the public." *Id.* at 581; *accord Shoen I*, 5 F.3d 1289.  Courts from around the country have reached a similar conclusion. *See In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5 (2d Cir. 1982) (applying constitutional privilege to oil industry trade publication); *Apicella v. McNeil Labs., Inc.*, 66 F.R.D. 78, 85 (E.D.N.Y. 1975) (applying privilege to testimony of chief executive of medical newsletter that "performs a public and professional

---

[4] *See also Gonzales v. Nat'l B'casting Co.*, 194 F.3d 29, 35 (2d Cir. 1999) ("burden" of subpoena compliance would severely hinder publishers' ability to do their jobs); *accord Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (in a case applying the analogous academic's privilege, finding that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight") (citing, *inter alia, Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).

[5] *See, e.g., Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 680 (1994) (financial newsletter that "provides data and evaluations on more than 1,200 mutual funds" is entitled to entitled to assert full range of First Amendment protections); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980) (newsletter reporting on market policies of supermarket industry entitled to full First Amendment protection); *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 686 (7th Cir. 1998) (publications concerning commodities futures markets, including "Monthly Chart Supplements" giving historical price ranges for various markets, are fully protected); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 707-08 (4th Cir. 1991) (newsletter that provides information on pesticides and toxic chemicals entitled to full First Amendment protections).

service by providing information on various drugs"); *In re Scott Paper Co. Sec. Litig.*, 145

F.R.D. 366, 368 (E.D. Pa. 1992) (applying privilege to Standard & Poor's credit rating circular);

*In re Photo Marketing Ass'n Int'l.*, 327 N.W.2d 515, 516 (Mich. App. 1982) (applying privilege

to trade association "which gathers data concerning the operations and activities of its members

and publishes trade news periodicals").

While the constitutional privilege is not absolute, the Ninth Circuit in *Shoen II* (on appeal

after remand) laid out the governing test that a party seeking disclosure of non-confidential

information from FDB must satisfy.  Beyond meeting the requirements of Rule 26(c), the parties

seeking information from FDB bear the burden of demonstrating "that the requested material is:

(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; *and*

(3) clearly relevant to an important issue in [this] case."  48 F.3d at 416 (emphasis added).  This

is a heavy burden, and intentionally so.  Only in the "most exceptional cases" should a party

satisfy this standard.  *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981).

Judge Bowler properly accepted that the privilege governs the discovery sought from

FDB,[6] but then failed to apply two of the three prongs of the test.  Specifically, the Magistrate

Judge failed to limit any additional discovery to non-cumulative material and failed to require the

parties first to seek the information from non-privileged sources – they have not even *attempted*

to get it from readily available alternatives.  Because virtually all of the general categories of

information the parties say they need from FDB are already in their possession, we will turn first

to the Order's failure to ban cumulative discovery from FDB.

---

[6] The qualified First Amendment privilege applies to non-confidential information and has not been waived by
FDB's prior disclosure of information in an effort to accommodate the legitimate needs of the parties.  *See, e.g.,
Altemose Constr. Co. v. Bldg. & Constr. Trades Council*, 443 F. Supp. 489, 491-92 (E.D. Pa. 1977) (no waiver of
First Amendment privilege with respect to subpoenaed affidavits even though reporter gave copies of affidavits to
third parties and existence of affidavits was revealed on television); *Stephens v. Am. Home Assurance Co.*, No. 91
Civ 2898, 1995 WL 230333, at *10 (S.D.N.Y. Apr. 17, 1995) (qualified First Amendment privilege applied even
though publisher had produced same information in prior proceeding).

**1.    The Magistrate Judge Failed to Recognize That Most of the Additional Information Requested From FDB Is Cumulative.**

The parties here woefully failed to make the required showing that the information they seek from FDB is non-cumulative under the constitutional privilege.[7] The Magistrate Judge, in turn, failed to undertake any analysis of the parties' claimed need for additional information, to assess the adequacy of what has already been produced, or to make any fact-specific assessment of how much further disclosure to require. The conclusion that two full days of testimony should proceed with no restrictions on scope is clearly erroneous and should be reviewed to comport with the governing test.

Remarkably, the parties argued before the Magistrate Judge that the key information they needed to obtain through a deposition of FDB is "how FDB determines the AWP it publishes,"[8] how FDB "conducts pricing surveys"[9] to determine AWP, and why there are differences between the AWPs published by FDB and the suggested wholesale prices of the manufacturers.[10] All of this information is fully and completely disclosed in the package provided. The parties also claimed – as litigants do everywhere – a need to know the specific circumstances surrounding specific AWP increases for certain drugs, but this is disclosed in FDB's published data and, as

---

[7] Even if "cumulativeness" were not a factor in determining whether the constitutional privilege could be overcome, and even if the privilege did not apply, Federal Rule of Civil Procedure 26(b)(2) separately provides that a court may bar discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Rule 26(b)(2)(i) thus makes plain that "unreasonably cumulative" discovery is not to be tolerated.

[8] *See* Moving Def.'s Mem. of Law in Supp. of Mot. to Compel at 7.

[9] *See* Moving Def.'s Mem. of Law in Opp. to FDB's Cross-Motion to Limit Discovery at 3.

[10] *See* Pl.'s Opp. to FDB's Cross-Motion at 4.

discussed below, any further details needed about specific prices can readily be obtained from the same sources from whom FDB itself obtains this data from.[11]

REDACTED

First, FDB has provided extensive testimony and documents describing specifically and in great detail "how [it] determines the AWP it publishes." The sworn testimony and documentary evidence already provided explains that FDB calculates Blue Book AWP, by

REDACTED

[12] FDB then

[13] The evidence already provided to the parties establishes that FDB's BlueBook AWP is nothing more than the product of (a) the net wholesale price reported by *the manufacturer* and (b) the markup for a given drug or manufacturer reported by *the wholesalers*. All of the information used to generate AWP is provided to FDB by either the manufacturers or the wholesalers. (Breen Dec. ¶ 9-18.) *See also* www.firstdatabank.com/customer_support/faqs/ (explaining how AWP is calculated). FDB has provided detailed written descriptions of how it determines AWP that were published in 1991 and in 2000, as well as the description on its current website. Each is consistent, and each provides all the detail on this topic the parties could possibly require.

Second, FDB has already provided information about how it "conducts pricing surveys." Sworn testimony given to the parties explains that FDB conducts surveys of the three national wholesalers periodically by telephone to determine the markups for specific drugs or drug

---

[11] *See* Moving Def.'s Mem. of Law in Supp. of Mot. to Compel at 7; Pl.'s Opp. to FDB's Cross-Motion at 4.

[12] A copy of the transcript of Ms. Morgan's deposition is attached to the Hawley Declaration as Exhibit H.

[13]

REDACTED

11

manufacturers. There are no survey forms or other written documentation, but rather, new pricing data and mark ups are entered directly into FDB's database.

## REDACTED

The surveys are usually prompted by some change in the marketplace or a query from a subscriber, and they are conducted by manufacturer, not by individual drug.

## REDACTED

The database maintains historic prices and reflects the changes when they are made, and all of this data has been made available to the parties already.

Finally, Ms. Morgan has already been cross-examined about the specific role of manufacturers in setting AWP as reported by FDB. As calculated by FDB, AWP is based on wholesaler mark-ups. Ms. Morgan already has testified that a manufacturer may *suggest* an AWP, but its suggestion is meaningless to FDB unless the wholesalers independently report that they have adopted a manufacturer's suggested AWP, or in those instances where a drug is not sold through any wholesaler.

## REDACTED

12

For example,

FDB's website explains:

> FDB's Blue Book AWP is not intended to represent the wholesale
> price suggested by the manufacturer. Instead, FDB reports the
> manufacturers suggested wholesale prices in a separate data field
> known as "SWP." Thus, the Blue Book AWP field will be
> populated with a price determined by the wholesaler survey, even
> if it is different from the SWP.

www.firstdatabank.com/customer_support/faqs/.[14]

All of this information makes abundantly clear that the data on which AWP is based

comes from manufacturers and wholesalers. What more can the parties possibly need to know

that will require two days of testimony? They already have all the facts, and the prior testimony

in other cases on exactly the same points should be permitted to satisfy the demand for testimony

here. *See Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1131 (9th Cir. 2003) (even in a

non-privilege case, finding that "[a]llowing the fruits of one litigation to facilitate preparation in

other cases advances the interests of judicial economy by avoiding the wasteful duplication of

discovery"); *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 (7th Cir. 1980) (in large

litigation courts should avoid "the wastefulness of requiring [a party] to duplicate discovery

already made").

The exhaustive testimony concerning AWP provided in other lawsuits, as well as the

extensive document production, should preclude the efforts by the parties here to ask the

---

[14]

# REDACTED

questions all over again. FDB can contribute little, if anything, to resolving the issues under contention in this case, beyond explaining the basis of its published information, which is fully and completely disclosed in the information *already* provided to the parties. The Magistrate Judge failed to appreciate her obligation to avoid cumulative and unnecessary testimony from a publisher, and the Order plainly fails to satisfy the constitutional test.

The burden imposed on FDB by the failure to carefully apply the privilege is magnified exponentially by the many other cases around the country seeking essentially the same information. The process for determining AWP does not vary by drug or by manufacturer. The discovery about AWP sought in this case is no different in nature than that sought in every other case, just focusing on the specific AWPs for a different group of drugs. If two full days of additional testimony is required in this case alone, FDB could face weeks of testimony to satisfy other courts in similar cases across the country.

### 2. The Magistrate Judge Failed to Require the Parties to Seek Information from Alternative Sources Before Burdening FDB.

Even when information is clearly relevant and needed in a lawsuit, the constitutional privilege also requires the parties to exhaust alternative sources of the information before demanding that a publisher turn over information gathered for publication. *Shoen II,* 48 F.3d at 416; *see also Shoen I,* 5 F.3d at 1296-97 (subpoenaing party must pursue other alternatives before burdening publisher with discovery demands); *Zerilli,* 656 F.2d at 714 ("the obligation [to pursue alternative sources] is clearly very substantial"); *accord In re Petroleum Prods. Antitrust Litig.,* 680 F.2d 5, 8-9 (2d Cir. 1982); *United States v. Cuthbertson,* 630 F.2d 139, 148 (3d Cir. 1980); *see also Allen v. Howmedica Leibinger,* 190 F.R.D. 518, 525 (W.D. Tenn. 1999) (even in a case not involving the journalists' privilege, the court denied motion to compel information from non-party where such information available from other sources). Here, readily available

14

alternative sources for the information clearly exist, in particular: the manufacturers and the wholesalers. The parties made no showing at all that they have even asked for the additional information they seek from these alternative sources, much less met their burden to demonstrate that these sources cannot provide the information. They can. To the extent the parties need to know about specific AWP changes in 2002, as they assert, they can go to the very same sources used by FDB – drug manufacturers and wholesalers – and obtain the information directly. By allowing the parties to proceed first against the publisher, rather than using a publisher's data as a last resort, the Order is plainly contrary to law.

The parties bear the burden of establishing that the privilege is overcome (*Shoen II*, 48 F.3d at 416), yet they failed to make *any* record whatsoever showing that they have even sought pricing information from drug manufacturers or wholesalers. They failed to establish that they have sought a single document from a wholesaler or taken a single deposition. Without any such evidence in the record, it was wholly improper for the Magistrate Judge to conclude that the parties had adequately met their obligation to exhaust alternative sources. *See Wolpin*, 189 F.R.D. at 422 (finding that a magistrate judge's decision should be overturned where "'the record contains no evidence on which [she] rationally could have based that decision'") (citations omitted).

The privilege requires parties to go directly to *sources* of information rather than burden the gatherers and disseminators of that information. It was designed to prevent parties from forcing publishers to do their work for them. *See Shoen II*, 48 F.3d at 416. Allowing the parties here to depose FDB for two full days without first even trying to get information directly from the manufacturers and wholesalers is like authorizing a party to *begin* inquiry into an alleged corporate fraud by first requiring Standard & Poors to turn over all of the information on the

15

company it had previously collected for its financial publications. This is the very burden the privilege is intended to prevent.

**B.      The Magistrate Judge Failed to Mitigate the Burden on FDB as Required by Rule 26(b).**

All apart from the misapplication of the constitutional privilege, the Order requiring two full days of additional deposition failed properly to mitigate the burden on FDB as the Federal Rules require. Fed. R. Civ. P. 26(c) requires courts to avoid "undue burden or expense" on non-parties. *See also* Federal Judicial Center, Manual for Complex Litigation (Fourth) § 11.447 (2004) ("A party seeking such production [from a non-party] has a duty to take reasonable steps to avoid imposing undue burden or expense on the person subpoenaed."). The Order here cannot be squared with this requirement. At a minimum, proceeding by oral examination and requiring two full days of testimony is an unjustified imposition in light of the full disclosure already made, and especially given the other overwhelming demands being made on FDB by litigants across the country.

FDB faces seven separate subpoenas in this case, and has been inundated with numerous subpoenas and civil investigatory demands in other cases around the country. (Hawley Dec. at ¶¶ 16-18.) In response to the avalanche of non-party discovery demands, FDB has already searched for, reviewed, and produced more than 70,000 hard-copy pages of documents, and thousands more documents in electronic format, and it has provided live witnesses for at least 15 depositions or sworn interviews, all addressing AWP. (Hawley Dec. ¶ 19.) Responding to these demands has inflicted significant costs on FDB, both quantifiable and non-quantifiable. It has spent more than $50,000 just to satisfy plaintiffs' initial subpoena in this case, and – most importantly – has suffered the repeated loss of Ms. Morgan's time and attention to her critical responsibilities. Ms. Morgan is one of only two FDB employees trained to deal with drug

pricing information, and her efforts are needed to keep FDB's data collection and reporting

operation functioning for FDB's subscribers. (Breen Dec. ¶ 7.)

Moreover, the onslaught of subpoenas and other requests for information from FDB is

not likely to stop. FDB is aware of more than a dozen additional cases around the county

involving drug pricing – some private, some brought by state attorneys general – in which the

litigants are likely to want drug pricing information from FDB. (Hawley Dec. ¶ 20.) In the face

of such relentless demands, requiring two full days of deposition testimony from a crucial

employee is plainly inappropriate under Rule 26. *See U.S. v. Chevron U.S.A., Inc.*, 186 F.3d 644,

649 (5th Cir. 1999) (subpoena unreasonably burdensome if "compliance threatens to unduly

disrupt or seriously hinder normal operations of a business").

In deciding whether to enforce a particular subpoena, the court must balance "the

inquirer's right to know against the responder's right to be free from unwanted intrusions."

*Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989). When considering

whether a subpoena imposes an undue burden on a non-party, courts consider a variety of

factors, including: "the need of the party for the [information], whether the request is cumulative

and duplicative, [and] the time and expense required to comply with the subpoena (relative to the

responder's resources)." *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 319 (D.D.C. 1998).

Special weight" is to be given to the "unwanted burden thrust upon non-parties." *Heidelberg

Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38 (1st Cir. 2003); *High Tech Med.

Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D.Cal. 1995) ("nonparties subject to

discovery requests deserve extra protection from the courts").

Here, as explained above, the parties failed to establish any real need for additional

information beyond what FDB has already provided in the form of both documents and sworn

17

testimony. Any further testimony would largely be cumulative and duplicative of the information already in the parties' possession. Moreover, "the time and expense required to respond to the subpoena[s]," relative to FDB's resources, is astounding. The very same demand for additional testimony urged here is demanded in every case where the parties are interested in AWP. Every litigant makes the same claim that their lawsuit concerns a different drug or different manufacturer, even though FDB's practices for obtaining data and publishing AWPs do not vary by drug or manufacturer. (Breen Dec. ¶ 10.) The package provided by FDB sets forth all of the facts about the development of AWP, at length and in detail. Any further clarification needed can be obtained by going directly to the relevant manufacturers and wholesalers, who provide the information to FDB in the first place. FDB's use of that data is purely mechanical and fully disclosed.[15]

In *Linder,* the court confirmed that other demands facing non-parties are relevant in determining the scope of response required. In that case, the court refused to enforce a subpoena directed to the federal government for the production of documents because responding "would take an inordinate amount of time and resources" considering "the heavy workload which the [Department] is already facing in response to other cases, investigations, and Freedom of Information Act requests." *Id.* at 320. If a subpoena directed to the federal government -- which has far greater resources than a small operation like FDB – must be weighed in light of other competing disclosure demands, then surely a subpoena to FDB should at least be limited to the extensive package of relevant information, where FDB is likewise facing numerous requests for

---

[15] The parties sought to suggest to the Magistrate that this Court had already pre-judged the need for a deposition by FDB, citing statements made at a hearing on March 8, 2004 at which FDB was not represented. *See* Moving Def.'s Mem. in Supp. of Mot. to Compel at 2, 7. Of course, those statements were made without any disclosure of the extensive discovery already provided by FDB, without consideration of alternative sources, and without any discussion of the heightened burden that attaches to discovery sought from FDB as a publisher.

information on all fronts. *See also, e.g., Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511

F.2d 225, 229 (9th Cir. 1975) (quashing subpoena to non-party where compliance would have

involved substantial expenditure of time); *Buchanan v. American Motors Corp.*, 697 F.2d 151,

152 (6th Cir. 1983) (quashing subpoena to non-party witness where compliance would have

required many days of testimony and review of thousands of documents).

The Magistrate Judge plainly erred in failing to recognize the virtually unprecedented

burden placed on FDB as a non-party in light of the explosion of litigation involving drug

pricing, and to fashion her order accordingly. At a minimum, less burdensome alternatives

should have been pursued, such as requiring FDB to answer written questions as authorized by

Fed. R. Civ. P. 31, rather than oral testimony by a key employee. Deposition by written

questions would simultaneously lessen the burden on Ms. Morgan's time, while allowing the

parties to ask the non-cumulative questions they believe they need to ask to proceed with their

cases. Particularly given that some 28,000 documents have been produced, with no limits on the

scope of a deposition, the preparation time alone is a daunting, burdensome task. Courts have

sanctioned deposition by written question as a more closely calibrated alternative to oral

depositions where oral depositions would be unruly, burdensome or otherwise unjustified, and

this should have been required given the unique circumstances here. *See, e.g., Cox v.*

*Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1423 (11th Cir. 1994); *NEC Corp. v. Dep't*

*of Commerce*, 958 F. Supp. 624, 635 (Ct. Int'l Trade 1997).

Alternatively, any deposition should be limited to special topics the parties demonstrate

have not already been covered, and limited dramatically in time. Based on their claims before

the Magistrate Judge, everything the parties could possibly require could be thoroughly covered

in less than half a day of testimony. The parties have stressed that the additional information

19

they seek from FDB is extremely limited, and given all that FDB already has produced, a focused deposition is all that could possibly be justified under the governing standard.

## CONCLUSION

For the foregoing reasons, the Court should (1) sustain the objections of FDB to Magistrate Judge Bowler's Order of September 27, 2004, and (2) hold that the extensive package of information FDB has already agreed to provide is sufficient to satisfy the subpoenas served on FDB and Ms. Morgan. In the alternative, the Court should take additional steps to mitigate the substantial burden on FDB by requiring any further discovery to be taken by written questions, by limiting the scope and time of any subsequent oral examination, and by directing any further deposition to be conducted before the Magistrate Judge.

Dated: October 12, 2004

Respectfully submitted,

MURPHY & RILEY, L.L.P.

_____
Richard Riley
141 Tremont Street
Boston, MA 02111
Tel: (617) 423-3700

David A. Schulz
Alia L. Smith
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
230 Park Avenue, Suite 1160
New York, NY 10169
Tel: (212) 850-6100

*Counsel for Movants First DataBank, Inc. and
Patricia Kay Morgan*