# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
|  | ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) ) ) ) | |

## DEFENDANT GLAXOSMITHKLINE'S INDIVIDUAL
## MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION

As the Court has noted on at least two occasions, due to page limitations and the complexity of the other issues involved in this case, the parties have not had the opportunity to fully brief the state law issues.[1] Accordingly, GSK will use its individual brief to address choice-of-law issues relevant to class certification.

In summary, the choice-of-law rules applicable to this case would require the Court to apply the consumer protection and conspiracy laws of all fifty states in the nationwide class action plaintiffs propose. As several courts of appeal have held, the application of so many different states' law precludes a finding of either predominance or manageability under Fed. R. Civ. P. 23(b)(3).[2] This failure to satisfy the rule's requirements applies with equal force to plaintiffs' claims for drugs reimbursed by Medicare Part B (which arise only under state law) and their claims for drugs reimbursed by private insurers (which arise under state law and RICO).

A.   Plaintiffs' Position Is Inconsistent With
     Established Massachusetts Choice-of-Law Principles.

Plaintiffs attempt to simplify the choice-of-law issues by arguing that this Court should apply the law of each defendants' principal place of business to the entire class. Plaintiffs' effort to have a federal court sitting in Massachusetts apply the law of these few states to govern the claims of class members who reside in all the other states is inconsistent with Massachusetts choice-of-law rules and would impermissibly infringe on the rights and interests of other states to make their own determinations of the law governing commercial affairs within their own borders involving their own residents.

---

[1] *See In re Pharm. Indus. AWP Litig.*, 307 F. Supp. 2d 196, 211 (D. Mass. 2004) (noting that the issues relating to the state law consumer fraud claims were "briefed inadequately" and declining to address them); Transcript of Nov. 21, 2003 hearing at 30 (noting that because of page limitations, the briefing on state law claims was not as "thorough" as the Court felt was necessary to decide the issues).

[2] *See, e.g., In re Bridgestone/Firestone, Inc. Prods. Liab. Litig.*, 288 F.3d 1012, 1015-18 (7th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189, *amended by* 273 F.3d 1266 (9th Cir. 2001); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085-86 (6th Cir. 1996); *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276 (D. Mass. 2004) (acknowledging that "federal appellate courts have viewed class actions governed by the law of multiple states with serious skepticism").

In Massachusetts, choice-of-law is determined by considering the interests of the parties, the states involved and the interstate commerce system. *See Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 631 (Mass. 1985).[3] Factors considered by Massachusetts courts include those set out in the Restatement (Second) of Conflict of Laws. *See Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834-35 (Mass. 1994); *Tidemark Bank for Sav. v. Morris*, No. 91-13214-MA, 1993 U.S. Dist. Lexis 15307, at *11 (D. Mass. Oct. 21, 1993), *aff'd*, 57 F.3d 1061 (1st Cir. 1995). Significantly, as the United States Supreme Court has held, choice-of-law analysis is not altered by the fact that a class action is sought. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985). Thus, this Court may not reach a different choice-of-law result in this case than it would in a suit brought by an individual plaintiff against one defendant.

In actions for fraud or misrepresentation, the law of the state in which "the plaintiff acted in reliance upon the defendant's representations" by making the purchase at issue is favored, particularly if that also is the state where the "plaintiff received the representations" and is domiciled. *See* Restatement (Second) of Conflict of Laws § 148(2) & cmt. j (1971); *see also Tidemark Bank*, 1993 U.S. Dist. Lexis 15307, at *12-13. Under the Restatement approach, "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." Restatement (Second) of Conflict of Laws § 148, cmt. i (1971); *see also Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1368-69 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (1st Cir. 1984).

---

[3]  Because plaintiffs analyze the choice-of-law issue under Massachusetts law, GSK also addresses Massachusetts law. However, the choice-of-law question in this case is much more complicated. Generally, a federal court sitting in diversity should apply the conflict of law rules of the state where it sits. This MDL Court, however, should apply the same conflicts law that would have been applied by the transferor courts. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Because the cases at issue here were transferred from several different jurisdictions, multiple choice-of-law analyses would be required. *See In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141-42 (E.D. La. 2002) (holding that the filing of a master complaint was an administrative tool that did not alter an MDL court's obligation to apply the choice-of-law rules of the transferor courts).

Thus, in actions asserting claims based on consumer fraud, it is the consumer's state that has the most significant relationship to the transaction. As Judge Young has explained: "[T]he primary aim of . . . consumer protection laws . . . is compensating consumers, not policing corporate conduct. . . . States have a strong interest in protecting consumers with respect to sales within their borders, but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states." *In re Relafen Antitrust Litig.*, 221 F.R.D. at 277-78 (citations omitted).[4]  Indeed, plaintiffs' choice-of-law argument would produce the anomalous result of a federal court sitting in Massachusetts giving greater extra-territorial reach to the consumer protection statute of another state than courts in that state.[5]

B.  <u>Variations in State Law Are Extensive and Profound</u>

Contrary to plaintiffs' arguments, the conflicts among the fifty state consumer protection statutes that this Court would have to apply are not limited to reliance and scienter.  Additional material conflicts include differences regarding, for instance, actual deception, causation, prohibitions on class actions, standing, restrictions on causes of actions for businesses and organizations, and limits on suits brought by remote purchasers.  For example:

---

[4]  Other courts have also rejected the argument that the place of a defendant's business should be applied to statutory consumer fraud claims brought on behalf of a nationwide class. *See, e.g., Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,* 211 F.R.D. 228, 233 (S.D.N.Y. 2002); *In re Rezulin Prods. Liab. Litig.,* 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002); *Propulsid Prods. Liab. Litig.,* 208 F.R.D. at 147; *Lyon v. Caterpillar, Inc.,* 194 F.R.D. 206, 215 (E.D. Pa. 2000); *Kaczmarek v. Int'l Business Machs. Corp.,* 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999); *Chin v. Chrysler Corp.,* 192 F.R.D. 448, 457 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. 332, 348 (D.N.J. 1997). *In re Bendectin Litig.,* 857 F.2d 290 (6th Cir. 1988), on which plaintiffs rely (Pl. Mem. at 41) is inapposite. *Bendectin* was not a class action, but a consolidated products liability action. The Sixth Circuit held that objections to the law used for the jury instruction were waived. *See* 857 F.2d at 303. The court's observations rejecting application of the law of the plaintiffs' domicile were based on the unique facts of *Bendectin* litigation. *See Jones v. Brush Wellman, Inc.,* 2000 WL 33727733, at *5 (N.D. Ohio Sept. 13, 2000). Years later, in another products liability action, the Sixth Circuit emphasized the need for courts to consider state law variations before certifying a class. *See Am. Med. Sys., Inc.,* 75 F.3d at 1085.

[5]  *See, e.g., Fink v. Ricoh Corp.,* 839 A.2d 942, 987 (N.J. Super. Ct. Law Div. 2003) (refusing to apply New Jersey's consumer protection statute to a nationwide class).

- **_Deceptive Practice._**   Some statutes broadly declare any unfair or deceptive practice unlawful,[6] while others require falsity or misrepresentation.[7]   Other statutes contain exclusive[8] or nonexclusive laundry lists of prohibited acts.

- **_Reliance/Deception._**   While some state statutes do not require proof of reliance,[9] others (including Pennsylvania) do.[10]   Other states require proof of materiality[11] or evidence that the defendant's conduct induced the plaintiff to act or refrain from acting.[12]   Even in states where reliance is not required, courts in some states have held that a plaintiff has no action if he or she was not deceived.[13]   Similarly, some states have held that even though reliance is not required, the plaintiff must have heard or seen the alleged misrepresentation.[14]

- **_Standing/Consumer Nexus._**   State consumer statutes also differ with regard to who may assert a cause of action, pre-suit conditions, whether class actions are allowed, and whether a private right of action exists at all.[15]   Approximately half of state consumer protection laws do not extend protection to business entities, but instead limit standing to persons purchasing goods or services primarily for family or personal use.[16]   In some states where actions by businesses are

---

[6] _See, e.g._, Fla. Stat. Ann. § 501.204(1) (West 2004); La. Rev. Stat. Ann. § 51:1405(A) (West 2003); Wash. Rev. Code Ann. § 19.86.020 (West 2004).

[7] _See, e.g._, Del. Code. Ann. tit. 6, § 2513(a) (2003); _Griffin v. Universal Cas. Co._, 654 N.E.2d 694, 701 (Ill. App. Ct. 1995); Minn. Stat. Ann. § 325F.67 (West 2004); N.J. Stat. Ann. § 56:8-2 (West 2004).

[8] _See, e.g._, Tex. Bus. & Com. Code §§ 17.46(d) & 17.50(a)(1)(A) (limiting, for purpose of private cause of action, deceptive practices to specifically enumerated acts).

[9] _See, e.g._, _Izzarelli v. R.J. Reynolds Tobacco Co._, 117 F. Supp. 2d 167, 176 (D. Conn. 2000) ("Unlike a claim of fraud, CUTPA does not require reliance or a claim that the misrepresentation became part of the basis of the bargain."); _Oliveira v. Amoco Oil Co._, 776 N.E.2d 151, 164 (Ill. 2002) (holding that plaintiff is not required to demonstrate reliance under Illinois law, but must demonstrate actual deception).

[10] _See, e.g._, _Henry Schein, Inc. v. Stromboe_, 102 S.W.3d 675, 685-86 (Tex. 2002), _Weinberg v. Sun Co._, 777 A.2d 442, 446 (Pa. 2001).

[11] _See, e.g._, _Geismar v. Abraham & Strauss_, 439 N.Y.S.2d 1005, 1007 (Dist. Ct. 1981).

[12] _See, e.g._, _Wiginton v. Pac. Credit Corp._, 634 P.2d 111, 119 (Haw. Ct. App. 1981); _Smith v. Olympic Bank_, 693 P.2d 92, 96 (Wash. 1985).

[13] _See, e.g._, _Oliveira v. Amoco Oil Co._, 776 N.E.2d at 160.

[14] _See, e.g._, _Harvey v. Ford Motor Credit Co._, 8 S.W.3d 273, 276 (Tenn. Ct. App. 1999).

[15] _See, e.g._, Ala. Code. Ann. § 8-19-10(f)(4) (2004) (no class action); _Molo Oil Co. v. River City Ford Truck Sales, Inc._, 578 N.W.2d 222, 228 (Iowa 1998) (no private right of action); _A.B.C. Home & Real Estate Inspection, Inc. v. Plummer_, 500 N.E.2d 1257, 1262-63 (Ind. Ct. App. 1986) (requiring a pre-suit demand letter as a condition to bringing suit); Miss. Code Ann. § 75-24-15(2) (2004) (requiring a pre-suit alternative dispute resolution). Where actions are limited or class actions are prohibited under the very statutory provisions sought to be invoked by Plaintiffs, the prohibition is properly considered to be part of the substantive law and, thus, applies even in a foreign forum. _See Kalmich v. Bruno_, 553 F.2d 549, 553-54 (7th Cir. 1977).

[16] _See, e.g._, _Zine v. Chrysler Corp._, 600 N.W.2d 384, 393 (Mich. Ct. App. 1999) (consumer protection act does not cover items primarily purchased for business or commercial use); _Doll v. Major Muffler Ctrs., Inc._, 687

permitted, there may be additional restrictions, such as a consumer nexus, asset restrictions or other requirements.[17]   State law also varies regarding whether privity is required.[18]

- ***Scienter/Level of Culpability.***  State consumer protection acts also differ as to the requisite level of culpability required.  Some states do not require an intent to deceive, but only an intent that others rely upon the defendant's conduct.[19]  In some states, no scienter requirement exists for affirmative misrepresentations.[20]  Other states require a higher level of culpability for actual damages[21] or for multiple damages.[22]

- ***Causation.***  The standard for causation also differs materially from state to state.[23]  In some states where privity is not required, the indirect nature of the relationship between the parties may make it difficult for the plaintiff to demonstrate causation.[24]  In addition, even in states where reliance is not required, courts in

---

P.2d 48, 52 (Mont. 1984) (businesses not within the class of persons protected by consumer protection act); *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 745 (D.R.I. 1995) (Rhode Island consumer laws afford business entities no private right of action).

[17] *See, e.g., New York Univ. v. Con'l Ins. Co.*, 662 N.E.2d 763, 770-71 (N.Y. 1995) (holding that selling non-standard insurance policy to sophisticated party was not consumer oriented); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 520 (4th Cir. 1999) (holding that businesses are permitted to assert a claim against another business under North Carolina's statute "only when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other"); Tex. Bus. & Com. Code § 17.45(4) (Vernon 2004) (excluding business consumers with assets of $25 million or more or that are owned or controlled by an entity with assets of $25 million or more).

[18] *See generally Elkins v. Microsoft Corp.*, 817 A.2d 9, 19 (Vt. 2002) (noting division of authority and collecting cases).

[19] *See, e.g.,* Del. Code Ann. tit. 6, §§ 2513(a), 2533(a) (2003); *S&R Assocs., L.P., III v. Shell Oil Co.*, 725 A.2d 431, 440 (Del. Super. Ct. 1998); *Griffin v. Universal Cas. Co.*, 654 N.E.2d 694, 700-01 (Ill. App. Ct. 1995).

[20] *See, e.g., Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997); *Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. Ct. App. 1995).

[21] *See, e.g.,* Idaho Code § 48-603 (Michie 2004) (requiring actual or constructive knowledge); *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 47 (1st Cir. 2002) (requiring a showing of "rascality," under Massachusetts law); Or. Rev. Stat. § 646.638(1) (requiring willful use of an unlawful practice).

[22] *See, e.g.,* La. Rev. Stat. Ann. § 51:1409A; *Steed Realty v. Oveisi*, 823 S.W.2d 195, 201 (Tenn. Ct. App. 1991); Tex. Bus. & Com. Code § 17.50(b)(1).

[23] *Compare, e.g., Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821, 828-29 (Del. 1995) (defining proximate causation as "but for" causation), *with American Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1444 (E.D.N.C. 1986) (defining proximate cause as "substantial cause"); *accord Adas v. Ames Color-File*, 407 N.W.2d 640, 642 (Mich. Ct. App. 1987) (noting the "countless variations on the definition of proximate causation").

[24] *See, e.g., Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1064-65 (Conn. 2002) (holding that, although privity is not a requirement, an indirect purchaser may be too remote from the alleged conduct to satisfy causation); *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 650 (Tex. 1996) (holding that a "defendant's deceptive trade

some states have held that causation cannot be proven unless the plaintiff was deceived and changed his or her behavior as a result.[25]  Some states have expressly rejected the "fraud-on-the-market" theory of causation that Plaintiffs rely upon.[26]

- ***Damages/Remedies***.  State law also varies regarding requirements for proof of actual damage and the "methodologies" for calculating such damages.[27]  Statutes also vary regarding the availability of multiple or punitive damages.[28]

The choices made by the states in enacting and framing their consumer protection statutes reflect important policy decisions.  "Courts must respect these differences rather than apply one state's law to sales in other states with different rules."  *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d at 1017.[29]  *See Reicher v. Berkshire Life Ins. Co.*, 360 F.3d 1, 5-6 (1st Cir. 2004) (refusing to apply Massachusetts' consumer protection statute to a claim by a Maryland resident where to do so would undermine Maryland's regulatory scheme with respect to such claims).  If the Court were to certify the nationwide class plaintiffs seek, the Court would be required to sort out and apply all the myriad differences in the laws of the fifty states.  As numerous courts have held, such outcome-determinative variations in state law cause individual issues of law to predominate and render a nationwide class action completely unmanageable.[30]

---

act or practice is not actionable under the DTPA unless it was committed *in connection with* the plaintiff's transaction in goods or services.").

[25]  *See, e.g., Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002); *Fink*, 839 A.2d at 959.

[26]  *See, e.g., id.*

[27]  *See, e.g., Carpenter v. BMW of N. Am., Inc.*, No. CIV. A. 99-CV-214, 1999 WL 415390, at *4 (E.D. Pa. June 21, 1999).

[28]  *See, e.g.*, Fla. Stat. Ann. § 501.211(2) (West 1999) (no multiple damages); Del. Code Ann. tit. 6, 2533(c) (automatic trebling); 73 Pa. Cons. Stat. Ann. § 201-9.2(a) (West 2004) (trebling in court's discretion); Tex. Bus. & Com. Code § 17.50(b)(1) (Vernon 2004) (trebling for a knowing violation).

[29]  Plaintiffs' reliance upon *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998), Pl. Mem. at 41, is misplaced.  In *Hanlon*, the court was concerned with certification of a settlement class, not a trial class.  As a result, the need to apply varying state law did not present the same difficulties as in this case.  *See, e.g., In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 225 (E.D. La. 1998).

[30]  In addition to the cases cited in note 1, *supra*, *see, In re Paxil Litig.*, 212 F.R.D. 539, 544-45 (C.D. Cal. 2003); *Lewis Tree Serv., Inc.*, 211 F.R.D. at 228; *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 71; *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. at 147; *Block v. Abbott Labs.*, No. 99 C 7457, 20002 WL 485364, at *5 (N.D. Ill. Mar. 29, 2002); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 489-90 (D.N.J. 2000);

C.      Plaintiffs' Proposed Choice-of-Law is Unconstitutional

While the class action device may permit this Court to exercise jurisdiction over the claims of out-of-state class members, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-14 (1985), the Court "may not use this assumption of jurisdiction as an added weight in the scale when considering the permissible constitutional limits on choice of substantive law." *Id.* at 821. Thus, the Supreme Court has long recognized "constitutional limits on choice of substantive law." *Id.* Traditionally, these limitations have stemmed primarily from the Constitution's Due Process and Full Faith and Credit Clauses.

For example, in *Shutts*, the Supreme Court squarely held that a single state's law cannot be uniformly applied in a nationwide class action where the state does not have "'significant contact or significant aggregation of contacts' to the claims asserted by *each member* of the plaintiff class." *Id.* (emphasis added) (citation omitted). Here, as in *Shutts*, application of a single state's laws to every claim against a particular defendant "is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822.

The requirement that the Court respect the independent sovereignty of other states to make and enforce their own regulatory regimes finds it basis not only in the Due Process Clause and Full Faith and Credit Clause, but also in the Commerce Clause.  Recognizing the value of independent state autonomy, the Supreme Court has held that the Commerce Clause prevents one state from interfering with the "legitimate regulatory regimes of other States," *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989), from attempting "to control conduct beyond the boundaries of the State," *id.* (citation omitted), and from "project[ing its] regulatory regime into the jurisdiction of another State." *Id.* at 337.  These fundamental principles of independent state sovereignty also require that "no single State . . . impose its own policy choice on neighboring

---

*Lyon,* 194 F.R.D. at 219; *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 499-503 (S.D. Ill. 1999); *Kaczmarek,* 186 F.R.D. at 312; *Chin,* 192 F.R.D. at 457; *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,* 174 F.R.D. at 348.

States" and direct that state courts must be "constrained by the need to respect the interests of other States" in adjudicating matters that affect commerce outside their borders. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

One of the basic tenets underlying the nation's federal system of government is that each state should be permitted to make important substantive policy choices for residents living within its borders. This fundamental legal and democratic principle is embodied specifically within the Constitution,[31] as well as general notions of equity, comity, and federalism. *See, e.g., Younger v. Harris*, 401 U.S. 37, 44 (1971) ("[T]he notion of 'comity'" encompasses "a proper respect for state functions" and the belief that the government "fare[s] best if the States and their institutions are left free to perform their separate functions in their separate ways."). As discussed above, each state's consumer protection laws reflect the policy decisions of that state. Such state-specific legal and regulatory issues are best resolved by each state individually, not only as a matter of interstate comity and justifiable expectations, but also because the parties would be able to obtain "a surer-footed reading of applicable law" if each state were allowed to decide these important substantive legal issues on an individual basis. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

These constitutional hurdles cannot be overcome by the convenient expedient of applying the law of the state where the defendant's business is located. Significantly, *Shutts* held that a State's contacts must be measured with respect "to the claims asserted by each member of the plaintiff class," and the expectations of the parties. 472 U.S. at 821.[32] Here, the due process

---

[31] *See, e.g., BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) ("[I]t is clear that no single State [sh]ould . . . impose its own policy choice on neighboring States.").

[32] Similarly the Court in *Hague* looked at the "contact[s] with the parties *and the occurrence or transaction*." *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981) (emphasis added); *see also id.* at 310 (examining "[t]he relationship of the forum State to the parties *and the transaction*" (emphasis added)).

implications of plaintiffs' choice-of-law arguments are profound.  For example, New York's statute requires that "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002).[33]  North Carolina's statute only extends to non-residents who can demonstrate an "in-state, injurious effect on his business operations in North Carolina." *'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 501-02 (M.D.N.C. 1987).  Pennsylvania's statute provides a private right of action only to persons who purchased goods or services "primarily for personal, family or household purposes."[34]  As a result, plaintiffs' choice-of-law proposal would leave many class members without a state statutory action due to lack of an in-state nexus or consumer standing.  *See McLean v. Mut. Life Ins. Co. of N.Y.*, 295 F. Supp. 2d 140, 144-45 (D. Mass. 2003).  It is highly unlikely that Oklahoma residents or businesses expected that their consumer fraud claims for drug purchases or reimbursements made in Oklahoma were going to be limited by the law of another state.[35]

Nor would nationwide application of a state's consumer protection statute, based on defendants' principle places of business, comport with principles of federalism that underlie the Full Faith and Credit and Commerce clauses.  For example, in *FTC v. Travelers Health*

---

[33] Significantly, the high court of New York has held that "'hatching a scheme' or originating a marketing campaign in New York" is an insufficient nexus with New York. *See Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)

[34] 73 Pa. Stat. § 201-9.2(a).  Similarly, the only California consumer protection statute that provides for recovery of actual damages is limited to individuals "who seek[] or acquire[], by purchase or lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d) (West 2004).

[35] *See Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998); *see also Endo v. Albertine*, No. 88 C 1815, 1995 WL 170030, at *5 (N.D. Ill. Apr. 7, 1995) (nationwide application of Illinois law would be "arbitrary or unfair," where "[a]side from the fact that [defendant's] primary place of business is located in Illinois, there is no indication that when the non-Illinois class members in this case purchased their securities in various states across the country, they had any idea that Illinois law would control in any later suit"). *Randle v. Spectran*, 129 F.R.D. 386 (D. Mass. 1988), upon which plaintiffs rely, does not support a contrary conclusion.  Initially, the court in *Randle*, believing that choice-of-law could be postponed to a later date, conducted only a cursory analysis of choice-of-law issues (*see id.* at 393-94).  Subsequent appellate court decisions have made clear the need to fully confront choice of law at the certification stage.  Likewise, the Supreme Court's decisions in *BMW* and *Campbell*, decided after *Randle*, have emphasized the limits of a state's power to regulate transactions outside its borders.

*Association*, 362 U.S. 293 (1960), the Supreme Court held, notwithstanding the defendant's Nebraska citizenship, that "the applicability of the Nebraska statute to misrepresentations made to residents of other States" raised serious "constitutional questions." *Id.* at 302.[36]

Nonetheless, plaintiffs ask this Court to mandate that the *foreign*, substantive law of a handful of states govern transactions involving pharmaceutical sales and reimbursement throughout the nation.  This Court is not, however, positioned to invoke, for example, New Jersey's purported interests in regulating the conduct of a corporation whose principal place of business is within that state to trump the interests of every other state in the nation to regulate consumer transactions within their own state borders.  As the Supreme Court stated in *BMW*, no single state has the authority to "impose its own policy choice on neighboring States. . . . Similarly, one State's power to impose burdens on the interstate market . . . is not only subordinate to the federal power over interstate commerce, but is also constrained by the need to respect the interests of other States . . . ."  517 U.S. at 570-71.

Respectfully submitted,

Mark H. Lynch
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  (202) 662-5544

Frederick G. Herold
Dechert LLP
975 Page Mill Road
Palo Alto, CA  94304
Tel:  (650) 813-4930

---

[36] *See also Dean Foods Co. v. Brancel*, 187 F.3d 609, 617-19 (7th Cir. 1999) (holding that application of Wisconsin law to the sale of milk in Illinois violated the Commerce Clause, notwithstanding the fact that the milk was produced on Wisconsin farms).

Geoffrey E. Hobart
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116
Tel: (617) 854-1419
Fax: (617) 523-6850

DATE: October 25, 2004

*Counsel for SmithKline Beecham Corp.,
d/b/a GlaxoSmithKline*


### Certificate of Service

I hereby certify that on October 25, 2004, I caused a true and correct copy of Defendant GlaxoSmithKline's Individual Memorandum in Opposition to Class Certification to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2.


Jason R. Litow

11