UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: ALL ACTIONS | MDL No. 1456 <br><br> Civil Action No. 01-12257-PBS <br><br> Judge Patti B. Saris <br><br> Chief Magistrate Judge Marianne B. Bowler |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM PARMED PHARMACEUTICALS

Defendants Schering-Plough Corporation and Warrick Pharmaceuticals Corporation submit this Memorandum in Support of Defendants' Motion to Compel the Production of Documents From Parmed Pharmaceuticals pursuant to the July 6, 2004 Subpoena to it.[1]

### PRELIMINARY STATEMENT

Parmed Pharmaceuticals ("Parmed") is a wholesaler of branded drugs and a distributor of generic drugs. Plaintiffs' claims in this litigation implicate the prices at which branded and generic pharmaceuticals are bought and sold and the manner in which those prices are conveyed to the industry and its customers. Wholesalers and distributors are vital links in this distribution chain, and according to at least one pharmaceutical pricing publisher, wholesalers provide the basis for published AWPs.[2] Additionally, while wholesalers of branded drugs are generally few and large, distributors of generic drugs are more numerous and varied; Parmed -- being both a wholesaler of branded drugs and a distributor of generic drugs -- is positioned to provide

---

[1] A true and correct copy of the Subpoena is attached as Exhibit A to the Declaration of Eric P. Christofferson, dated November 2, 2004 ("Christofferson Decl.").

[2] As the Court is aware, First DataBank continues to represent -- in this Court and elsewhere -- that it conducts surveys of wholesalers and distributors to determine the AWPs that it publishes.

- 1 -

valuable information relating to both distribution chains.  Accordingly, the relevance of information and documents within Parmed's possession is indisputable.

Despite the more than three months that have passed since service of the Subpoena on Parmed, Parmed has failed to produce any documents.[3]  During that time, undersigned counsel has made repeated attempts to narrow the areas of disagreement with Parmed, pursuant to Local Rule 37.1, but Parmed has refused to produce even a single document.  Counsel for Parmed has made several representations that Parmed has documents that are responsive and otherwise ready for production.  As memorialized in a letter from Parmed's Counsel dated October 5, 2004 (attached as Exhibit C to Christofferson Decl.), however, Parmed demands that Defendants release Parmed from any continuing obligation under the Subpoena without providing Defendants the opportunity to inquire through testimony on the record that the production is complete.  As indicated in our letter of October 6, 2004 to Counsel for Parmed (attached as Exhibit D to Christofferson Decl.), Defendants do not object to narrowing the requests in the Subpoena so long as Defendants can confirm that Parmed has made a complete production within the narrowed scope.

## STATEMENT OF FACTS

Defendants in these actions manufacture and market pharmaceutical products.  *See* Corrected Amended Consolidated Class Action Complaint with Amgen Amendments (Verilaw, July 16, 2004) ("AMCC") ¶¶ 39-130.  Plaintiffs, entities or persons who pay for such drugs, allege that Defendants have "inflated" the AWPs against which certain third-party payors negotiate reimbursement rates for such drugs.  *Id.* ¶¶ 1-7.  The prices at which drugs are bought

---

[3] On July 21, 2004, Counsel for Parmed faxed a one-page letter in which he provided perfunctory objections to the subpoena, Ex. B to Christofferson Decl., which, for the reasons given below, are without merit.

and sold and how those prices are communicated, therefore, are central elements to the Plaintiffs claims. Because Parmed, a drug wholesaler and significant generic pharmaceuticals distributor, is an important participant in the industry, Defendants served a Subpoena on Parmed on July 14, 2004, wherein Defendants requested the production of documents bearing on pricing and the communication of pricing. *See* Ex. A to Christofferson Decl. Since then, Parmed has represented repeatedly that it possesses responsive documents and information. *See, e.g.,* Ex. C to Christofferson Decl.

After receiving the Subpoena, Mr. Fleder, Counsel for Parmed, contacted undersigned counsel, said that he would be filing a letter of objection, *see* Ex. B to Christofferson Decl., and asked Defendants' to narrow their requests. Christofferson Decl. ¶ 3. Undersigned counsel responded that, before doing so, Defendants would need to know more about the universe of available information at Parmed and the manner in which it is kept. *Id.* ¶ 4. Mr. Fleder agreed. *Id.*. After this conversation, undersigned counsel had a series of good-faith discussions with Ms. Katcher, an associate of Mr. Fleder, regarding Parmed's response. *Id.* ¶¶ 6-9. At times Ms. Katcher was delayed in contacting undersigned counsel. *See id.* ¶¶ 7, 9, 13. Parmed did not make any productions, despite the fact that Ms. Katcher confirmed on at least one occasion that she believed the narrowed requests were reasonable. *Id.* ¶ 8.

Having heard nothing from Parmed for more than a month, undersigned counsel again contacted Ms. Katcher on September 21, 2004. *Id.* ¶ 9. Ms. Katcher represented to undersigned counsel that Parmed had responsive information that it would be able to produce. *Id.* Ms. Katcher suggested, however, that her client was "uncomfortable" producing this information unless Defendants provided a prior assurance that production of this data would constitute full compliance with the Subpoena. *Id.* ¶ 10. Undersigned counsel stated that Defendants were not

in a position to provide such an assurance before obtaining and reviewing the proposed documents but did represent in good faith to Ms. Katcher that Defendants most likely would not require additional productions. *Id.* ¶ 11. The parties' positions have remained unchanged, despite further communications made -- including letters -- in an attempt to resolve the dispute. To date, Defendants have not received any documents from Parmed. Christofferson Decl. ¶ 16.

## ARGUMENT

Parmed cannot dispute that the discovery sought is within the scope of discovery in this litigation. The scope of discovery under Fed. R. Civ. P. 26(b)(1) is "very broad." *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001). Indeed, "information is discoverable if there is any possibility that it might be relevant to the subject matter of the motion." *Id.* at 17; *see also Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428 (D. Mass. 1993); *Schuurman v. The Town of North Reading,* 139 F.R.D. 276 (D. Mass. 1991). Indeed, Parmed has indicated repeatedly that it maintains at least some responsive documents.

Although the present dispute is relatively simple, Parmed's position is simply unreasonable. It is undisputed that Parmed has information that it believes is responsive. *See* Ex C to Christofferson Decl. It is also undisputed that undersigned counsel has repeatedly engaged Counsel for Parmed in good-faith attempts to narrow the issues presented by the Subpoena. *See* Exs. C and D to Christofferson Decl. Indeed, Parmed believes that undersigned counsel's approach has been reasonable. Christofferson Decl. ¶ 8; Exhibit C to Christofferson Decl. Parmed, however, now seeks to exploit the good-faith discussions between counsel by arguing that such conversations should somehow constitute formal concessions of Defendants' rights

under the Subpoena[4] and by asserting that Parmed will not produce any information whatsoever until Defendants provide Parmed with a formal release from its obligations. Moreover, Parmed seeks such a release before Defendants have the opportunity to inquire under oath whether Parmed's production is complete.

Defendants have stated several times in good faith that they do not believe further substantive productions will be necessary after Parmed produces the data in question. Indeed, that is still the understanding. Rather, Defendants simply maintain that they cannot reasonably provide Parmed with a formal release from the Subpoena until Defendants can confirm that Parmed's response is complete. To grant such a release would be at best imprudent; to request such a release is at best unreasonable.

The nominal objections raised by Parmed in its July 21, 2004 letter, attached as Ex. B to Christofferson Decl., are insufficient as bases on which to withhold the information in question. First, Parmed does not specify which particular requests for documents fall within the purview of the objections. For example, Parmed cannot reasonably maintain that a request for its organizational charts, as made in Request No. 16 of the Subpoena, "requires disclosure of privileged materials . . . ." The objections are boilerplate and insufficient. Moreover, after engaging in good-faith discussions to narrow the issues, Parmed did not continue to press the objections raised in the letter, which presents an additional reason to reject them. *See, e.g.*, *Addamax Corp. v. Opens Software Foundation, Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993). Defendants have been working with Parmed continually to narrow their requests so as to identify

---

[4] Ms. Katcher impliedly attempts to characterize these good-faith discussions as concessions by undersigned counsel by referring to the subject of those discussions as "documents [undersigned counsel] verbally requested." Ex. C to Christofferson Decl. Contrary to Ms. Katcher's description, the information presently at issue is indisputably responsive to the Subpoena and is not some independent verbal request.

specific, responsive documents, to resolve issues of confidentiality, and to ease the financial and other burdens this subpoena has purportedly placed on Parmed.  Indeed, in its last communication with undersigned counsel, Parmed once again acknowledged that Defendants' narrowing efforts have been "reasonable."  Ex. C to Christofferson Decl.  The objections of July 21, 2004, therefore, are without merit.

When distilled to its essence, the instant disagreement is entirely uncomplicated.  Parmed has an obligation to respond under the Subpoena.  Defendants have repeatedly engaged Parmed in good-faith attempts to narrow the issues and Parmed has identified responsive documents and information.  Parmed now refuses to produce anything unless Defendants provide formal assurance that Parmed has fully satisfied its obligations under Rule 45.  Defendants cannot reasonably provide such assurance, however, without having had the opportunity to analyze the information and to inquire formally on the record whether Parmed's production is complete, although Defendants expect that no further production will be necessary.  Notwithstanding Parmed's position, such prior assurances are not customary and, if requested in the normal course, clearly would create new and unnecessary impediments to the discovery process.  The most reasonable course would be for Parmed to produce the significantly narrowed information Defendants have agreed is acceptable in the first instance, allow Defendants the opportunity to review and analyze that data, and provide Defendants with the opportunity to inquire on the record as to whether the production is complete.  This process could be completed relatively easily and would most likely bring closure to the present dispute.

## **CONCLUSION**

Given Defendants' good-faith attempts continually to narrow the issues and Parmed's unreasonable request for a premature release from its obligations, the Court should grant Defendants' Motion to Compel the Production of Documents from Parmed within ten (10) days. Defendants further request a hearing on this motion.

By their attorneys,

/s/ John T. Montgomery
John T. Montgomery (BBO#352220)
 jmontgomery@ropesgray.com
Brien T. O'Connor (BBO#546767)
 boconnor@ropesgray.com
Steven A. Kaufman (BBO#262230)
 skaufman@ropesgray.com
Darcy W. Shearer (BBO#656503)
 dshearer@ropesgray.com
Eric P. Christofferson (BBO#654087)
 echristofferson@ropesgray.com
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: November 2, 2004

- 8 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 2, 2004, I caused a true and correct copy of the Memorandum in Support of Defendants' Motion to Compel the Production of Documents from Parmed Pharmaceuticals to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456 and further caused a copy of the same to be served upon counsel for Parmed via facsimile and first-class mail.

      /s/ Eric P. Christofferson

      Eric P. Christofferson