UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br>)<br>)<br>)<br>)<br>THIS DOCUMENT RELATES TO: )<br>ALL ACTIONS )<br>)<br>) | Civil Action No. 01-12257-PBS |

### DECLARATION OF ERIC P. CHRISTOFFERSON IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM PARMED PHARMACEUTICALS

Eric P. Christofferson declares as follows:

1. I am an associate of the firm of Ropes & Gray LLP, attorneys for Defendants Schering-Plough Corporation and Warrick Pharmaceuticals Corporation in the above-referenced actions, and I have been admitted to practice before this Court. I submit this declaration of my own personal knowledge in support of Defendants' Motion to Compel the Production of Documents from Parmed Pharmaceuticals.

Attached as Exhibit A is a true and correct copy of the Subpoena *duces tecum* to Parmed Pharmaceuticals, dated July 6, 2004 and served on July 14, 2004 (the "Subpoena"), as well as a copy of the Subpoena's cover letter.

Attached as Exhibit B is a true and correct copy of a July 21, 2004 letter of objection from John R. Fleder on behalf of Parmed to Eric P. Christofferson.

Attached as Exhibit C is a true and correct copy of an October 5, 2004 letter from Dara S. Katcher to Eric P. Christofferson.

-2-

Attached as Exhibit D is a true and correct copy of an October 6, 2004 letter from Eric P. Christofferson to Dara S. Katcher.

2. Defendants served the Subpoena for the production of documents on Parmed Pharmaceuticals ("Parmed") on July 14, 2004.

3. On July 20, 2004, John R. Fleder, Counsel for Parmed, contacted me. We spoke the next day and Mr. Fleder told me that Parmed had received the subpoena and would be filing a letter of objection. He also requested that Defendants narrow their requests.

4. In return, I requested from Mr. Fleder information about the form and scope of Parmed's available documents and data. Mr. Fleder agreed to speak with his client and inquire about such information.

5. On July 23, 2004, Mr. Fleder contacted me and asked me to coordinate with an associate in his firm, Ms. Katcher.

6. I contacted Ms. Katcher on July 26, 2004 and discussions continued concerning the form and scope of Parmed's production. Ms. Katcher told me that she would confer with her client and contact me after doing so.

7. On August 19, 2004, having not been contacted by Ms. Katcher, I contacted her. At that time, Ms. Katcher informed Defendants that Parmed was not ready to produce any documents. In good-faith, Defendants attempted to narrow the issues further by asking in the first instance for the following information: (a) a sampling of Parmed's contracts with its customers; (b) a sampling of pricing data; and (c) any communications in which Parmed conveyed or supplied pricing information to a pharmaceutical publisher such as First DataBank.

8. Ms. Katcher stated that she believed such narrowing to be reasonable. She said that she would confer with her client and get back to me.

9. On September 21, 2004, having heard nothing from Ms. Katcher, I contacted her. At that time, Ms. Katcher represented that (a) Parmed conducts its business verbally and does not have contracts with its customers; (b) Parmed has not had any communication with pharmaceutical publishers for at least the last ten years; and (c) Parmed maintains pricing data that is responsive and would be available for production.

10. Also during the conversation with Ms. Katcher on September 21, 2004, Ms. Katcher suggested for the first time that her client was "uncomfortable" producing any information unless Defendants could provide assurance prior to production that such production would completely satisfy Parmed's obligations under the Subpoena.

11. I responded that Defendants could not provide such assurance without having the opportunity to review and analyze the information. I also told her, however, that Defendants would most likely not require subsequent, additional information from Parmed.

12. In a subsequent conversation, on September 21, 2004, Ms. Katcher contacted me and stated that she was preparing a letter of assurance for Defendants to sign. I reiterated that Defendants would not be able to sign such a letter of assurance prior to reviewing Parmed's production but again stated that Defendants would likely not be seeking additional information.

13. Having heard nothing from Ms. Katcher, I contacted Mr. Fleder on September 30, 2004. I left Mr. Fleder a voice-mail message in which I requested the data that Ms. Katcher had referenced.

14. On October 1, 2004, Ms. Katcher contacted me and offered to allow Defendants to inspect the documents in question in her office. She further proposed to provide copies only if Defendants at that time would provide Parmed with a formal release of its obligations to respond to the Subpoena. I told Ms. Katcher that Defendants could not provide such a formal release

until Defendants could be certain that Parmed's production was complete, but I once again told her that Defendants had every reason to believe that no further productions would be necessary.

15.  Parmed refused to produce any documents at that time.

16.  To date, Parmed has not produced any documents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Eric P. Christofferson<br>Eric P. Christofferson

Dated:  November 2, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2004, I caused a true and correct copy of the Declaration of Eric P. Christofferson in Support of Defendants' Motion to Compel the Production of Documents from Parmed Pharmaceuticals to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456 and further caused a copy of the same to be served upon counsel for Parmed via facsimile and first-class mail.

/s/ Eric P. Christofferson
Eric P. Christofferson