# EXHIBIT A



ROPES & GRAY LLP

ONE INTERNATIONAL PLACE     BOSTON, MA 02110-2624     617-951-7000     F 617-951-7050

BOSTON     NEW YORK     SAN FRANCISCO     WASHINGTON, DC

July 7, 2004

Eric P. Christofferson
(617) 951-7976
echristofferson@ropesgray.com

Parmed Pharmaceuticals
4220 Hyde Park Blvd.
Niagara Falls, NY 14305-1789

Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*

Dear Sir/Madam:

Please find enclosed a corrected subpoena calling for the production of documents in this litigation. This subpoena is being served on behalf of all defendants to the Amended Master Consolidated Class Action Complaint and replaces and supercedes the subpoena dated July 6, 2004. Considering the expedited schedule ordered by the Court, we request that you make productions on a rolling basis as responsive documents are identified.

Please let me know if you have any questions. We look forward to working with you to make the response to this subpoena as efficient and equitable as possible.

Very truly yours,

Eric P. Christofferson

Enclosure

cc:    All Counsel of Record (by Verilaw)

Parmed Pharmaceuticals                    - 2 -                    July 7, 2004

## CERTIFICATE OF SERVICE

I, Eric P. Christofferson, certify that, on this 7th day of July, 2004, I served a copy of the foregoing document on all counsel of record by electronic service pursuant to Case Management Order No. 2, by causing a copy to be sent to Verilaw Technologies for posting and notification.

Eric P. Christofferson

9479325_1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | **SUBPOENA IN A CIVIL CASE** |
| : | MDL NO. 1456 |
| : | |
| : | Civil Action No. 01-12257-PBS |
| : | (case pending in D. Mass.) |
| : | |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris |
| : | |

TO:     Parmed Pharmaceuticals
        4220 Hyde Park Boulevard
        Niagara Falls, NY 14305-1798

 YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the documents set forth in and attached hereto as Schedule A at the place, date, and time specified below:
SEE SCHEDULE A, ATTACHED.

| PLACE | DATE AND TIME |
|---|---|
| Alexander Poole & Co., 11 North Pearl Street, Albany, NY 12207 | July 22, 2004 at 9:00AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

 Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*  Attorneys For Defendant Schering-Plough Corporation Warrick Pharmaceuticals Corporation | July 7, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Eric P. Christofferson, Esq.
Ropes & Gray, LLP
One International Place
Boston, MA 02115
(617) 951-7976

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)  fails to allow reasonable time for compliance;
(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly

transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

I.    **DEFINITIONS**

1.    "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, Photostatted, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof.  This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings.  Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail", electronically stored telephone messages and/or "voice-mail", questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or work processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

2.      "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.      The term "Defendant" refers to the following companies:  (i) Abbott Laboratories; (ii) Amgen Inc.; (iii) AstraZeneca Pharmaceuticals LP and Zeneca Inc. (collectively referred to as "AstraZeneca"); (iv) Aventis Pharmaceuticals, Inc., Aventis Behring L.L.C., Hoechst Marion Roussell, Inc., and Centon L.L.C. (collectively referred to as "Aventis"); (v) Bayer Corporation; (vi) Baxter International Inc.; (vii) Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., and Apothecon, Inc. (collectively referred to as "BMS"); (viii) Dey, Inc.; (ix) Fujisawa Healthcare, Inc.; (x) GlaxoSmithKline, P.L.C., SmithKline Beecham Corporation, and Glaxo Wellcome, Inc. (collectively referred to as "GSK"); (xi) Immunex Corporation; (xii) Johnson & Johnson, Centocor, Inc., Janssen Pharmaceutica Products, L.P., McNeil-PPC, Inc., and Ortho Biotech (collectively referred to as "Johnson & Johnson"); (xiii) Novartis Pharmaceuticals Corporation; (xiv) Pfizer, Inc.; (xv) Pharmacia Corporation; (xvi) Schering-Plough Corporation and Warrick Pharmaceuticals Corporation (collectively referred to as "Schering-Plough"); and (xvii) TAP Pharamaceuticals Products, Inc., and Watson Pharmaceuticals, Inc. (collectively referred to as "TAP").

4.      "You" or "Your" means Parmed Pharmaceuticals and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.

5.      "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (government or private), and any other form of business, governmental or juridical person or legal entity.

6.      "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

7.      "Meeting" means any discussion between two or more persons either in person or telephonically.

8.      "Communication" and "communications" are used in a comprehensive sense, and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more persons or entities including, but not limited to, writings, documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by computer or otherwise.

9.      "Private Payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit plans.

10.     "Provider" means any physician or entity that provides health care.

11.     "AWP" or "Average Wholesale Price" refers to the benchmark periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

12.     "Rebates" include access rebates for the placement of produces on a formulary, rebates based upon the sales volumes for drugs, and market-share rebates for garnering higher market share than established targets.

13.     "Publication" means a publication identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes the *First DataBank, Red Book, Blue Book,* and *Medispan.*

14.     "Government Investigation" refers to any ongoing or closed investigation or inquiry conducted by Congress, a committee or sub-committee of Congress (including but not limited to the Consumer, Energy and/or Ways and Means Committees), the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Human Services, or any other federal, state or local governmental entity, and includes but is not limited to instances in which you have been served by such entities with Civil Investigative Demands, subpoenas, document requests or other requests.

15.     "Identified Drugs" are the drugs included in Exhibit A hereto and include drugs that You have repackaged or relabeled.

16.     Direct Store Delivery" occurs when You take title and possession of Identified Drugs that You then sell to a purchaser.

17.     "Dock-to-Dock Delivery" occurs when You take title of Identified Drugs, but possession of such Identified Drugs is transferred directly from a Defendant to a purchaser.

18.     "Drop Shipment Delivery" occurs when You coordinate a purchase of Identified Drugs, but You take neither title nor possession of such Identified Drugs.

II.     **RULES OF CONSTRUCTION**

1.     All/Each – The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.     And/Or – The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.     The use of the singular form of any word shall include the plural and vice versa.

4.     The masculine gender includes the feminine.

III.     **INSTRUCTIONS**

1.     In producing documents and other materials, you must furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2.      In producing documents, you must produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original (to the extent this is known).

3.      Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to identify any file number, file name, or any other file identification system utilized by the responding party, as well as the location and custodian of such records. These requests include Defendants' request to inspect physically any file drawer, filing cabinet or any other storage device where documents responsive to these requests are maintained at the time of the inspection of such documents.

4.      Documents attached to each other should not be separated.

5.      If any responsive document was, but is no longer, in the possession or subject to your control, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding, and state the date or approximate date of, such disposition.

6.      In the event that you object to any document request on the grounds of privilege or work product, a statement shall be provided as to each document which includes:

    a.      the name of the other of the document;

    b.      the name of the recipient of the document;

c.      the names of the persons to whom copies were sent;

d.      the job title of every individual names in (a), (b), and (c) above;

e.      the date the document was created, sent, and received;

f.      the location of the document;

g.      the custodian of the document;

h.      a brief description of the nature and subject matter of the document; and

i.      a statement of the privilege asserted and each and every fact or basis upon which a privilege is claimed or on which the document is otherwise withheld.

7.      Notwithstanding the assertion of any objection to production, if a document contains non-objectionable or non-privileged matter, please produce that document, redacting that portion for which the objection is asserted, provided that the identification requested in paragraphs (h) and (i) above are furnished.

## IV.    RELEVANT TIME PERIOD

Unless otherwise stated, these requests call for the production of all documents identified in the requests that were generated and/or maintained during the period January 1, 1991, to the date of production (the "Relevant Time Period"), or refer or relate to the Relevant Time Period.

9483713_1                  -7-

V.       **DOCUMENTS TO BE PRODUCED**

*Category 1:  Pricing and Pricing-Related*

      1.       All documents evidencing the prices paid to You and Your subsidiaries, divisions, and affiliates for Identified Drugs, including but not limited to, documents evidencing the identity of Your customers and documents sufficient to identify whether the prices relate to Direct Store Delivery, Dock-to-Dock Delivery, or Drop Shipment Delivery.

      2.       All documents evidencing the net transaction cost to Your customers for Your sales of Identified Drugs.

      3.       All documents sufficient to show the rebates, discounts, chargebacks and other adjustments provided to You by a Defendant, or administered by You on behalf of a Defendant, for each of the Identified Drugs.

      4.       All documents relating to a Defendant's suggested price for any Identified Drug, including but not limited to prices that a Defendant has suggested for sales that You make to a member of a group purchasing organization.

*Category 2:  AWP, Publications and Pricing Surveys*

      5.       All documents concerning AWP, including but not limited to (i) documents related to Your use of AWP as a pricing term or pricing benchmark in any of Your contracts; (ii) documents discussing how You or others define AWP; (iii) documents discussing how AWP has been, or is currently, calculated; (iv) documents identifying the source that You use for determining AWPs; (v) all communications between you and a Defendant concerning AWP. (vi) all communications between you and a Publisher concerning AWP; and (vii) all communications between you and a Pharmacy Benefit Manager concerning AWP.

6.      All documents relating to Your role, or a Defendant's role, in the publication, appearance, or advertisement of the AWP of each Identified Drug in Publications during the Relevant Time Period.

7.      All documents concerning any pricing survey conducted by any Publication.  This request includes but is not limited to any pricing data that You received or provided to a Publication.

8.      All contracts with Publications and all communications with Publications regarding Identified Drugs.

### *Category 3:  Relationships with Pharmacies and PBMs*

9.      All contracts between You and the five largest retail pharmacies.  "Five largest retail pharmacies" refers to the five pharmacies that represent Your largest retail pharmacy sales volume over the past three calendar years.

10.      All contracts between You and the three largest independent pharmacies.  "Three largest independent pharmacies" refers to the three pharmacies that represent Your largest independent pharmacy sales volume over the past three calendar years.

11.      All contracts between You and the three smallest independent pharmacies.  "Three smallest independent pharmacies" refers to the three pharmacies that represent Your smallest independent pharmacy sales volume over the past three calendar years.

12.      All contracts between You and Pharmacy Benefit Managers Caremark, Medco, Express Scripts, and Advance PCS.

### Category 4: Investigations, Suits and Complaints

13.    All documents produced by You, whether voluntarily or involuntary, in any Government Investigation or inquiry related to the use of AWP, Rebates or any other consideration provided to you by a Defendant.

14.    All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party, regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

15.    All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding the use of AWP, Rebates or any other consideration provided to you by a Defendant.

### Category 5: Miscellaneous

16.    All current and historical organizational charts for all of Your departments.

17.    All documents sufficient to identify Your policy or practice of document retention, destruction, disposal or preservation for each year during the Relevant Time Period.

16.    All documents sufficient to identify all services offered by You to purchasers in connection with the sale of the Identified Drugs.

## EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| | |
|---|---|
| Abbott | Acetylcyst |
| Abbott | Acyclovir |
| Abbott | A-Methapred |
| Abbott | Amikacin |
| Abbott | Amikacin Sul |
| Abbott | Aminosyn |
| Abbott | Biaxin |
| Abbott | Calcijex |
| Abbott | Cimetidine |
| Abbott | Clindamycin |
| Abbott | Depakote |
| Abbott | Depakote SPR |
| Abbott | Dextrose |
| Abbott | Dextrose w/Sodium Chloride |
| Abbott | Diazepam |
| Abbott | Ery-Tab |
| Abbott | Erythromycin Cap |
| Abbott | Erythromycin Tab Bs |
| Abbott | Fentanyl Cit |
| Abbott | Furosemide |
| Abbott | Gentamicin |
| Abbott | Heparin Lock |
| Abbott | Leucovor CA |
| Abbott | Lorazepam |
| Abbott | Prevacid Cap |
| Abbott | Prevacid Gra |
| Abbott | Sod Chloride |
| Abbott | Sodium Chloride Sol |
| Abbott | Tobra/Nacl |
| Abbott | Tobramycin |
| Abbott | Vancomycin |
| | |
| Allen & Hanburys | Beconase AQ SPR |
| Allen & Hanburys | Flonase SPR |
| Allen & Hanburys | Serevent AER |
| Allen & Hanburys | Serevent DIS MIS |
| | |
| Amgen | Aranesp |
| Amgen | Enbrel |
| Amgen | Epogen |
| Amgen | Kineret |

| | |
|---|---|
| Amgen | Neulasta |
| Amgen | Neupogen |
| | |
| Astrazeneca | Accolate |
| Astrazeneca | Arimidex |
| Astrazeneca | Casodex |
| Astrazeneca | Diprivan |
| Astrazeneca | Nolvadex |
| Astrazeneca | Seroquel |
| Astrazeneca | Zestril |
| Astrazeneca | Zoladex |
| Astrazeneca | Zomig |
| Astrazeneca | Zomig ZMT |
| Astrazeneca | Atacand |
| Astrazeneca | Atacand HCT |
| Astrazeneca | Entocort EC |
| Astrazeneca | Nexium |
| Astrazeneca | Prilosec |
| Astrazeneca | Pulmicort |
| Astrazeneca | Rhinocort |
| Astrazeneca | Toprol XL |
| | |
| Aventis | Allegra |
| Aventis | Allegra-D |
| Aventis | Amaryl |
| Aventis | Anzemet |
| Aventis | Arava |
| Aventis | Azmacourt |
| Aventis | Calcimar |
| Aventis | Carafate |
| Aventis | Cardizem Cap |
| Aventis | Cardizem Inj |
| Aventis | Cardizem Tab |
| Aventis | Gammar |
| Aventis | Gammar P-IV |
| Aventis | Intal |
| Aventis | Intal INH |
| Aventis | Nasacort |
| Aventis | Nasacort AQ |
| Aventis | Taxotere |
| Aventis | Trental |
| | |
| B. Braun | Dextrose |
| B. Braun | Dextrose with sodium chloride |
| B. Braun | Dextrose with lactated ringers |

| | |
|---|---|
| B. Braun | Heparin with dextrose |
| B. Braun | Heparin with sodium chloride |
| B. Braun | Sodium chloride IV solution |
| B. Braun | Sodium chloride irrigation |
| | |
| Baxter | Aggrastat |
| Baxter | Ativan |
| Baxter | Bebulin VH |
| Baxter | Brevibloc |
| Baxter | Buminate |
| Baxter | Cisplatin |
| Baxter | Claforan/D5W |
| Baxter | Dextrose |
| Baxter | Doxorubicin |
| Baxter | Gammagard SD |
| Baxter | Gentam/NACL |
| Baxter | Gentran 40 |
| Baxter | Gentran 75 |
| Baxter | Gentran/Trav |
| Baxter | Heparin Lock |
| Baxter | Iveegam |
| Baxter | Iveegam EN |
| Baxter | Osmitrol |
| Baxter | Osmitrol VFX |
| Baxter | Recombinate |
| Baxter | Sod Chloride |
| Baxter | Sodium Chlor Sol |
| Baxter | Travasol |
| Baxter | Travasol w/Dextrose |
| Baxter | Vancocin HCL |
| Baxter | Vancocin/Dex |
| | |
| Bayer Pharmaceutical | Cipro |
| Bayer Pharmaceutical | Cipro Cystit Tab |
| Bayer Pharmaceutical | Cipro I.V. |
| Bayer Pharmaceutical | Cipro XR |
| Bayer Pharmaceutical | DTIC-DOME |
| Bayer Pharmaceutical | Gamimune N |
| Bayer Pharmaceutical | Koate-HP |
| Bayer Pharmaceutical | Kogenate FS |
| Bayer Pharmaceutical | Mithracin |
| | |
| B-M Squibb | Paraplatin Inj |
| B-M Squibb | Blenoxane |
| B-M Squibb | Cytoxan |

| | |
|---|---|
| B-M Squibb | Etopophos |
| B-M Squibb | Rubex |
| B-M Squibb | Taxol |
| B-M Squibb | Vepesid |
| B-M Squibb | Ividex EC |
| B-M Squibb | Avapro |
| B-M Squibb | Buspar |
| B-M Squibb | Cefzil |
| B-M Squibb | Glucophage) |
| B-M Squibb | Glucovance) |
| B-M Squibb | Monopril) |
| B-M Squibb | Plavix) |
| B-M Squibb | Serzone) |
| B-M Squibb | Tequin) |
| B-M Squibb | Coumadin |
| Apothecon | Amikin (amikacin sulfate) |
| Apothecon | Fungizone (amphotercin b) |
| | |
| Cerenex | Amerge |
| Cerenex | Imitrex |
| Cerenex | Zofran |
| | |
| Dey Labs | Acetylcysteine |
| Dey Labs | Albuterol |
| Dey Labs | Cromolyn Sodium |
| Dey Labs | Ipratropium |
| Dey Labs | Metaproteren Neb |
| | |
| Fujisawa | Aristocort |
| Fujisawa | Aristospan |
| Fujisawa | Cefizox |
| Fujisawa | Cefizox/D5W |
| Fujisawa | Cyclocort |
| Fujisawa | Lyphosin |
| Fujisawa | Nebupent or Pentam 300 |
| Fujisawa | Prograf |
| Fujisawa | Vinblastine Sulfate |
| | |
| Gensia | Amikacin Sulfate |
| Gensia | Amphotercin B |
| Gensia | Etoposide |
| Gensia | Leucovorin Calcium |
| | |
| GlaxoSmithKline | Advair Diskus |
| GlaxoSmithKline | Agenerase |

| | |
|---|---|
| GlaxoSmithKline | Agenerase SOL |
| GlaxoSmithKline | Alkeran |
| GlaxoSmithKline | Amerge |
| GlaxoSmithKline | Beconase |
| GlaxoSmithKline | Ceftin |
| GlaxoSmithKline | Combivir |
| GlaxoSmithKline | Daraprim |
| GlaxoSmithKline | Epivir |
| GlaxoSmithKline | Epivir HBV |
| GlaxoSmithKline | Flonase |
| GlaxoSmithKline | Flovent |
| GlaxoSmithKline | Flovent ROTA |
| GlaxoSmithKline | Imitrex |
| GlaxoSmithKline | Kytril |
| GlaxoSmithKline | Lamictal |
| GlaxoSmithKline | Lanoxin |
| GlaxoSmithKline | Lanoxin Ped |
| GlaxoSmithKline | Leukeran |
| GlaxoSmithKline | Mepron |
| GlaxoSmithKline | Myleran |
| GlaxoSmithKline | Navelbine |
| GlaxoSmithKline | Paxil |
| GlaxoSmithKline | Paxil CR |
| GlaxoSmithKline | Purinethol |
| GlaxoSmithKline | Relenza |
| GlaxoSmithKline | Retrovir |
| GlaxoSmithKline | Servent |
| GlaxoSmithKline | Thioguanine |
| GlaxoSmithKline | Trizivir |
| GlaxoSmithKline | Valtrex |
| GlaxoSmithKline | Ventolin HFA |
| GlaxoSmithKline | Wellbutrin |
| GlaxoSmithKline | Zantac |
| GlaxoSmithKline | Ziagen |
| GlaxoSmithKline | Zofran |
| GlaxoSmithKline | Zovirax |
| GlaxoSmithKline | Zyban |
| | |
| Immunex | Leucovorin Calcium |
| Immunex | Leukine |
| Immunex | Methotrexate Sodium |
| Immunex | Novantrone |
| Immunex | Thioplex |
| | |
| J&J Group (Centocor) | Remicade |

| | |
|---|---|
| J&J Group (Janssen Pharmaceutica) | Aciphex |
| J&J Group (Janssen Pharmaceutica) | Duragesic |
| J&J Group (Janssen Pharmaceutica) | Reminyl |
| J&J Group (Janssen Pharmaceutica) | Risperdal |
| J&J Group (Janssen Pharmaceutica) | Sporanox |
| J&J Group (Ortho McNeil Pharmaceutical) | Bicitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Elmiron |
| J&J Group (McNeil-PPC) | Flexeril |
| J&J Group (Ortho McNeil Pharmaceutical) | Floxin |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol Decan |
| J&J Group (Ortho McNeil Pharmaceutical) | Levaquin |
| J&J Group (Ortho McNeil Pharmaceutical) | Mycelex |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease MT |
| J&J Group (Ortho McNeil Pharmaceutical) | Parafon Fort |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-LC Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Regranex |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 3 |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 7 |
| J&J Group (Ortho McNeil Pharmaceutical) | Testoderm |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin DS |
| J&J Group (Ortho McNeil Pharmaceutical) | Topamax |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylenol/Cod |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylox |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultracet |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultram |
| J&J Group (Ortho McNeil Pharmaceutical) | Urispas |
| J&J Group (Ortho McNeil Pharmaceutical) | Vascor |
| J&J Group (Ortho Biotech Products) | Procrit |
| J&J Group (Ortho Neutrogena) | Erycette |
| J&J Group (Ortho Neutrogena) | Grifulvin V |
| J&J Group (Ortho Neutrogena) | Monistat |
| J&J Group (Ortho Neutrogena) | Renova |
| J&J Group (Ortho Neutrogena) | Retin-A |
| J&J Group (Ortho Neutrogena) | Retin-A Micr Gel |
| J&J Group (Ortho Neutrogena) | Spectazole Cream |
| | |
| Novartis | Clozaril |
| Novartis | Combipatch |
| Novartis | Comtan |

| | |
|---|---|
| Novartis | Estraderm |
| Novartis | Exelon |
| Novartis | Femara |
| Novartis | Lamisil |
| Novartis | Lamprene |
| Novartis | Lescol |
| Novartis | Lescol XL |
| Novartis | Lotensin |
| Novartis | Lotensin HCT |
| Novartis | Lotrel |
| Novartis | Miacalcin |
| Novartis | Parlodel |
| Novartis | Ritalin |
| Novartis | Ritalin LA |
| Novartis | Starlix |
| Novartis | Tegretol |
| Novartis | Tegretol XR |
| Novartis | Trileptal |
| Novartis | Vivelle |
| Novartis | Vivelle-DOT |
| | |
| Pfizer | Accupril |
| Pfizer | Accuretic |
| Pfizer | Cardura |
| Pfizer | Celontin |
| Pfizer | Dilantin |
| Pfizer | Dilantin-125 |
| Pfizer | Estrostep FE |
| Pfizer | Femhrt 1/5 |
| Pfizer | Lipitor |
| Pfizer | Lopid |
| Pfizer | Minizide |
| Pfizer | Nardil |
| Pfizer | Neurontin |
| Pfizer | Nitrostat |
| Pfizer | Renese |
| Pfizer | Rescriptor |
| Pfizer | Viracept |
| Pfizer | Zarontin |
| Pfizer | Zithromax |
| Pfizer | Zoloft |
| Pfizer | Zyrtec |
| | |
| Pharmacia | Adriamycin PFS |
| Pharmacia | Adriamycin RDF |

| | |
|---|---|
| Pharmacia | Adrucil |
| Pharmacia | Amphocin |
| Pharmacia | Amphotercin B |
| Pharmacia | Bleomycin Sulfate |
| Pharmacia | Celebrex |
| Pharmacia | Cleocin-T |
| Pharmacia | Cytarabine (Cytosar-U) |
| Pharmacia | Depo-Testosterone |
| Pharmacia | Etoposide |
| Pharmacia | Neosar |
| Pharmacia | Solu-Cortef |
| Pharmacia | Solu-Medrol |
| Pharmacia | Toposar |
| Pharmacia | Vincasar PFS |
| | |
| Schering | Clarinex |
| Schering | Claritin |
| Schering | Claritin-D |
| Schering | Diprolene |
| Schering | Diprolene AF |
| Schering | Diprosone |
| Schering | Elocon |
| Schering | Eulexin |
| Schering | Integrilin |
| Schering | Intron-A |
| Schering | Lotrisone |
| Schering | Nasonex |
| Schering | Peg-Intron |
| Schering | Proventil |
| Schering | Rebetol |
| Schering | Sebizon |
| Schering | Temodar |
| Schering | Trinalin Rep |
| Schering | Vanceril |
| | |
| Warrick | Albuterol |
| Warrick | Clotrimazole |
| Warrick | Griseofulvin, Ultramicrocry |
| Warrick | ISMN |
| Warrick | Oxaprozin |
| Warrick | Perphenazine |
| Warrick | Potassium Chloride |
| Warrick | Sodium Chloride |
| Warrick | Sulcrafate Tablets |
| Warrick | Theophylline |

| | |
|---|---|
| Sicor | Acyclovir Sodium |
| Sicor | Amikacin Sulfate |
| Sicor | Doxorubicin |
| Sicor | Etoposide |
| Sicor | Leucovorin Calcium |
| Sicor | Pentamidine Isethionate |
| Sicor | Tobramycin Sulfate |
| | |
| TAP | Prevacid |
| | |
| Watson | Dexamethasone Acetate8 |
| Watson | Dexamethasone Sodium Phosphate |
| Watson | Diazepam |
| Watson | Estradiol |
| Watson | Ferrlecit |
| Watson | Fluphenazine HCL |
| Watson | Gemfibrozil |
| Watson | Gentamicin Sulfate |
| Watson | Imipramine HCL |
| Watson | Infed |
| Watson | Lorazepam |
| Watson | Nadolol |
| Watson | Perphenazine2 |
| Watson | Propranolol |
| Watson | Ranitidine |
| Watson | Vancomycin HCL |
| Watson | Verapamil HCL |

| State of: New York | | Western District |
|---|---|---|
| Court: U.S. District | Index #:<br>Date Purchased: | 01-12257-PBS |

Plaintiff/Petitioner:

**In re: Pharmaceutical Industry Average Wholesale Price Litigation**

Defendant/Respondent:                          vs:

State of: NY
County of: Niagara

Thomas J Richau II, being duly sworn, deposes and says: that deponent is not a party to this action,
is over 18 years of age and resides at: Niagara Falls , NY
that on: **7/13/2004**  at: **3pm**  at: 4220 Hyde Park Boulevard, Niagara Falls, NY   14305
deponent  served  the within:

**Subpoena In A Civil Case**

\*
\*        Return Date if any:**7/22/2004**

ON:  **Parmed Pharmaceuticals**

CORPORATION        A  corporation, by delivering thereat a true copy of each to: Lisa Wert
☒                personally, deponent knew said corporation so served to be the corporation, described in same as Witness
                and knew said individual to be: Managing Agent   ,thereof an authorized person to accept service of process.

DESCRIPTION        SEX: Female,.        SKIN COLOR: White,        AGE: 36 - 50 Yrs.,        HEIGHT: 5'4" - 5'8",
☒                HAIR COLOR: Black,        WEIGHT:  100 - 130 Lbs.,
                Other identifying features:

WITNESS FEE        $        the authorizing traveling expenses and one day's witness fee was paid(tendered) to the
☐                Witness.

Sworn to before me on this: 7/14/2004

_Racquel Wadding_
Notary Public

**RACQUEL WADDING**
Notary Public, State of NY
Qualified in Niagara County
My Commission Expires
May 5, 2007

_Thomas J Richau II_
Print name below signature
Thomas J Richau II

Action#: 200412887                Client File#: 0414130

ALEXANDER POOLE & CO.
11 NORTH PEARL ST., P.O. BOX 69
ALBANY, NY  12201

# PROOF OF SERVICE

| SERVED | DATE 7/13/2004 | PLACE 4520 Hyde Park Blvd, Niagara Falls NY 14305 |
|---|---|---|
| Pasmed Pharmaceuticals | | |
| SERVED ON (PRINT NAME) Lisa West | MANNER OF SERVICE Corporation | |
| SERVED BY (PRINT NAME) Thomas J. Richau II | TITLE Managing Agent | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 7/14/2004
DATE

SIGNATURE OF SERVER

DESCRIPTION OF PERSON SERVED:  APPROX. AGE: 45

WEIGHT: 105 HEIGHT: 5'5 SEX: F COLOR OF SKIN: W

HAIR COLOR: Black OTHER: _____

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)  fails to allow reasonable time for compliance;
(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly

transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT B

LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. MCNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE

(202) 737-9329

www.hbm.com

JENNIFER B. DAVIS
OF COUNSEL

DAVID B. CLISSOI D
CASSANDRA A. SOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASNDRSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
MOLLY C. ANDRESEN
SHAWN M. BROWN*

*NOT ADMITTED IN DC

DIRECT DIAL (202) 737-4580

July 21, 2004

By Facsimile

Eric P. Christofferson, Esq.
Ropes & Gray, LLP
One International Place
Boston, Massachusetts 02115

Dear Mr. Christofferson:

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Parmed Pharmaceuticals objects to the Subpoena served on it on July 13, 2004 in In re: Pharmaceutical Industry Average Wholesale Price Litigation.

The Subpoena is unduly vague, overly broad and unduly burdensome. Among other things, the Subpoena fails to specify the documents sought with reasonable particularity, requires disclosure of privileged materials and confidential commercial information, and requires Parmed, a non-party in this litigation, to incur substantial expense.

Sincerely,

John R. Fleder

JRF/eam

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750

LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE

(202) 737-9329

www.hpm.com

JENNIFER B. DAVIS
OF COUNSEL

DAVID B. CLISSOLD
CASSANDRA A. SOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASSERSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
MOLLY C. ANDRESEN
SHAWN M. BROWN*

*NOT ADMITTED IN DC

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.:   (202) 737-5600                                    Fax No.:   (202) 737-9329

**FROM:**   John R. Fleder                     **DATE:**   July 21, 2004

**TO:**   Eric P. Christofferson               **FAX NO.:**   (617) 951-7050
          Ropes & Gray LLP

**NO. OF PAGES** (including this page):   **2**

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX (919) 313-4751

21-Jul-2004  06:28pm   From-HYMAN,PHELPS & McNAMARA, P.C.   2027378929   T-368   P.001/002   F-617

# EXHIBIT C

SYLN-U-"\
Wholesaler Corresp."

LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. MCNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE
(202) 737-9329

www.hpm.com

DIRECT DIAL
(202) 737-4286

JENNIFER B. DAVIS
OF COUNSEL

DAVID B. CLISSOLD
CASSANDRA A. SOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASSERSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA S KATCHER*
KURT R. KARST
MOLLY C. ANDRESEN
SHAWN M. BROWN*

*NOT ADMITTED IN DC

October 5, 2004

BY FACSIMILE

Eric P. Christofferson, Esq.
Ropes & Gray, LLP
One International Place
Boston, Massachusetts 02115

Dear Mr. Christofferson:

As we discussed on September 21, 2004, and again on October 1, 2004, this letter responds to your unwillingness to narrow the scope of the subpoena issued to non-party Parmed, our client, in In re: Pharmaceutical Industry Average Wholesale Price Litigation. After weeks of good faith efforts on our part to determine the documents you really need in this litigation, and substantial efforts on the part of Parmed to respond, we agreed on the documents that Parmed would produce. However, it is unfortunate that you will not provide any assurance that your client will deem the production of the documents you verbally requested to be full compliance with the subpoena. It is particularly troubling that, despite repeated claims by you that you must "see" the documents before you can give an assurance of Parmed's compliance, you have rejected our recent offer to have you view the documents in our possession before you commit that Parmed's production of those documents would end Parmed's obligations under the subpoena. Parmed must be assured that if it produces the documents we discussed, your client will not seek later production of other documents.

Parmed is not a party to In re: Pharmaceutical Industry Average Wholesale Price Litigation. The subpoena issued to them in July 2004 was unduly vague, overly broad, and unduly burdensome. Further, it required disclosure of privileged materials and confidential commercial information, and requires Parmed, a non-party in this litigation, to incur substantial expense. We responded as such in our letter dated July 21, 2004. This letter fully satisfied our obligations under Rule 45(c)(2)(B).

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

Eric P. Christofferson, Esq.
October 5, 2004
Page 2

HYMAN, PHELPS & MCNAMARA, P.C.

Despite this response, we have had continuing conversations to determine the specific information you needed, and have conveyed our intent to cooperate by providing that information that would not be privileged or overly burdensome to our client. During our conversation on September 21, 2004, we discussed production of aggregate pricing data, by subject drug, on a quarterly basis, for the past 5 years. I told you that so long as customer names were removed, I thought this request was reasonable and that we understood your need for this information quickly.

When I asked if you could agree that this production would bring Parmed within full compliance of the subpoena, you stated that you could provide no such assurance. Because you will not agree that this production will bring Parmed into full compliance with the subpoena, you are leaving open the possibility of future demands that may extend to the full scope of this overly broad, unduly vague and burdensome subpoena. This is unacceptable.

In our conversations on October 1, 2004, I explained that Parmed could not produce the documents you specifically requested without assurances that there would be no future demands for further document productions. After you stated, again, that you could not make any such assurances until you have "seen" the documents Parmed will produce, I offered you the opportunity to view the documents you requested. I stated that if, after seeing the documents, you could then assure me that the production completed Parmed's compliance with the subpoena, we would produce these documents to you. I further stated that if, after seeing the Parmed production, you decided you needed more documents, we could discuss the documents needed and make arrangements at that time. You refused this offer.

We have made substantial efforts to work with you to satisfy your request for Parmed documents. We understand that you may move to obtain an order from the court to enforce the subpoena issued in July. We are confident no court will issue such an order, as you have admitted to the broad nature of the request.

Please contact me should you have any questions, or should you wish to reconsider our proposal.

Sincerely,

Dara Katcher

Dara S. Katcher

DSK/sas

# EXHIBIT D



ROPES & GRAY LLP

ONE INTERNATIONAL PLACE    BOSTON, MA 02110-2624    617-951-7000    F 617 951-7050

BOSTON    NEW YORK    SAN FRANCISCO    WASHINGTON, DC

October 6, 2004

Eric P. Christofferson
(617) 951-7976
echristofferson@ropesgray.com

**BY FACSIMILE AND VIA FIRST CLASS MAIL**

Dara S. Katcher, Esq.
Hyman Phelps & McNamara, P.C.
700 Thirteenth St., N.W.
Suite 1200
Washington, D.C. 20005-5929

Re: In re Pharmaceutical Industry Average Wholesale Price Litigation

Dear Dara:

Thank you for your letter to me dated October 5, 2004.  It appears that we have reached an impasse with respect to the subpoena Defendants served on Parmed (the "Subpoena"), but hopefully we are merely experiencing a misunderstanding that we can remedy.

As you suggest in your letter, we had agreed in the first instance that -- in response to the Subpoena -- Parmed would produce an aggregate (on a quarterly basis) of its pricing data for the past five years.  You have represented that Parmed does not have contracts with its customers and does not participate in pricing surveys with pharmaceutical pricing publishers, e.g., First DataBank, Redbook, and Medispan, or otherwise provide pricing information to such publishers.

Given these representations, if you do provide us with the proposed set of pricing data, I have every reason to believe that we will need to obtain no further information from Parmed in response to the Subpoena.  Without having had the chance to review the production and without our experts having had the chance to analyze the data, however, we are not now in a position to release Parmed from any continuing obligations to produce pursuant to the Subpoena.

We very much appreciate your willingness to discuss these issues with us and we truly hope to resolve them without intervention of the Court.  The information within Parmed's possession, however, is of great consequence as we prepare our defense of this case and we will not hesitate to seek the appropriate relief if we cannot otherwise reach a resolution, which I trust will not be necessary.

I look forward to receiving your documents soon.

9554712_1.DOC

Dara S. Katcher, Esq.                          - 2 -                          October 6, 2004

Very truly yours,

Eric P. Christofferson

cc:    Steven A. Kaufman, Esq.