# Exhibit A



From: ECFnotice@mad.uscourts.gov
Sent: 11/2/2004 3:52:31 PM
To: CourtCopy@mad.uscourts.gov
CC:
BCC:
Subject: Activity in Case 1:01-cv-12257-PBS Citizens for Consume, et al v. Abbott Laboratories,, et al "Order on Motion to Compel"

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

United States District Court
District of Massachusetts

Notice of Electronic Filing
The following transaction was received from Bowler, Marianne entered on 11/2/2004 at 3:52 PM EST and filed on 11/2/2004

Case Name: Citizens for Consume, et al v. Abbott Laboratories,, et al
Case Number: 1:01-cv-12257 https://ecf.mad.uscourts.gov/cgi-bin/DktRpt.pl?7895

Document Number:
Copy the URL address on the line below into the location bar of your Web browser to view the document:

Docket Text:
Judge Marianne B. Bowler: Electronic ORDER entered granting in part and denying in part [996] Motion to Compel to the extent set forth in the rulung on Docket Entry # 1068. Electronic Order denying [1068] nonparties' Motion to Quash, consistent with the reasoning employed by the court at the March 8, 2004 status conference.  The nonparties are ordered to appear at the noticed depositions which, absent an agreement among all participating entities, shall be taken within the next 30 days.  The subject matter shall be item numbers 1-3, 5-7, 11-13, 16-17 and 20-21 as set forth in the list attached to the August 23, 2004 letter (Docket Entry # 170, Ex. F) which reiterates topics encompassed in the list of documents to be produced attached to the re-noticed deposition subpoenas (Docket Entry # 1018, Ex. E-G).  As agreed to in open court by defendants, they shall pay the reasonable costs of transportation and related expenses, reasonable attorney's fees and lost income incurred by !
witnesses. Electronic Order denying Motion to Compel [1090], in accordance with the prior ruling of Judge Saris on April 26, 2004 (Docket Entry # 818), inasmuch as the prior motion (Docket Entry # 632) requested an accounting of all communications between defendants and putative class members and that motion was denied. (Bowler, Marianne)

The following document(s) are associated with this transaction:


1:01-cv-12257 Notice will be electronically mailed to:
Daniel F. Attridge                                  dattridge@kirkland.com

Anita B. Bapooji                                    bapooji@tht.com

Jessica Vincent Barnett                             jbarnett@foleyhoag.com

Steve W. Berman                                     steve@hagens-berman.com

# Exhibit B

## Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Christopher C. Angell
Douglas E. Barzelay
Susan F. Bloom
Henry P. Bubel
Laura E. Butzel
William F. Cavanaugh, Jr.
Lisa E. Cleary
Edward F. Cox
John Delli Venneri
Gregory L. Diskant
David W. Dykhouse
Philip R. Forlenza
Hugh J. Freund
Paul G. Gardephe
Eugene M. Gelernter
Alan Gettner
David M. Glaser
Antonia M. Grumbach
Erik Haas
Andrew L. Herz
Dana W. Hiscock
Scott Horton
Scott B. Howard
Karen C. Hunter
Kenneth J. King
Rochelle Korman
Robin Krause
Jeffrey E. LaGueux
Kim J. Landsman

Robert W. Lehrburger
Jeffrey I.D. Lewis
Robert P. LoBue
Ellen M. Martin
Maureen W. McCarthy
Thomas C. Morrison
Bernard F. O'Hare
Gloria C. Phares
Thomas W. Pippert
Herman H. Raspé
Robert M. Safron
Karla G. Sanchez
Kenneth L. Sankin
John Sare
Peter J. Schaeffer
Andrew D. Schau
John E. Schmeltzer, III
John P. Schmitt
Arthur D. Sederbaum
Karl E. Seib, Jr.
Saul B. Shapiro
Michael J. Timmons
Peter W. Tomlinson
Richard R. Upton
Frederick B. Warder III
William W. Weisner
John D. Winter
Stephen P. Younger
Steven A. Zalesin

Of Counsel

Harold R. Tyler

Anthony P. Coles
David F. Dobbins
George S. Frazza
Robert M. Pennoyer
Stephen W. Schwarz
Robert B. Shea
Ira T. Wender, P.C.

Direct Phone
(212) 336-2117

Direct Fax
(212) 336-2386

Email Address
ehaas@pbwt.com

August 23, 2004

**By Email Attachment**

Peter D. St. Phillips, Jr.
Lowey Dannenberg Bemporad & Selinger, P.C.
1 North Lexington Avenue, 11th Floor
White Plains, NY 10601-1714

> Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*

Dear Peter:

I write in response to your letter dated August 18, 2004, wherein you take the position that a motion to compel the depositions of representatives of Humana and Aetna is not ripe. In our conversation two weeks ago you took the position that your clients (and Cigna) would not produce a witness for deposition to address the substantive issues encompassed by defendants' subpoena. In your August 18 letter you now assert that your clients "are also willing to consider providing testimony upon a demonstration of need, provided that it is sufficiently narrowly tailored to such need." The need plainly exists, and we have not been provided with any authority that would validate the late hour objection to the production of witnesses responsive to defendants' subpoenas.

Defendants' subpoenas were first served on your clients last Fall. As you know, plaintiffs thereafter moved to quash, raising the very same provision of the Manual for Complex Litigation cited in your August 18 letter (which on its face contemplates the deposition of absent class members). The Court allowed defendants to proceed with the demanded discovery, including the demands for documentation *and* depositions.

Peter D. St. Phillips, Jr.
August 23, 2004
Page 2

Since that decision was issued, defendants have worked with you to further narrow the documentation defendants will accept in response to the subpoenas served on your clients, with the understanding that the agreed production would be supplemented and clarified through deposition testimony. The depositions of other "absent class members" taken in this matter have confirmed the need for such supplemental testimony. The depositions have addressed many issues not encompassed by the production. And the depositions have shown, for example, that the terms of reimbursement agreements have not been followed in practice, and that representations concerning the adequacy of the third party's response were not entirely accurate.

Moreover, the only documentation Aetna has produced in this matter is production it made in other litigations. Without waiving the right to compel further documentation, defendants certainly have a pressing need to ascertain the extent that such production is representative of the documentation demanded in this matter.

To frame this issue as succinctly as possible, I have attached an itemization of the substantive issues defendants seek to address through the deposition of your clients. Please let me know by this Wednesday which of the issues your clients would be willing to appear to address. To the extent that we don't hear from you by Wednesday, we will file our motion to compel. Also, please let me know by Wednesday whether you consent to the adjudication of a motion to compel before Chief Magistrate Judge Bowler in the Massachusetts District Court where this litigation is pending.

Very truly yours,

Erik Haas

cc:   Sally M. Williams, Esq.
      Ballard Spahr Andrews & Ingersoll, LLP

1100250v1

## Deposition Subjects

1. All methodologies (*e.g.*, capitation, usual and customary charges, AWP-based formula) your clients utilized or considered utilizing to determine the amounts to pay or reimburse health care providers (*e.g.*, doctors, hospitals, clinics, home health care) and pharmacies (either directly or through PBMs) for drugs administered and dispensed.

2. All rationales, information, and factors your clients considered in deciding whether or not to adopt the reimbursement methodologies described in Subject 1.

3. The identity of each person who participated in or had knowledge of the decision to select the reimbursement methodologies described in Subject 1.

4. Any actions your clients have taken to reduce either your total expenditures on pharmaceutical benefits or the amount spent on any particular pharmaceutical product.

5. For all methodologies discussed in Subject 1, all rationales, information, and factors your clients considered in deciding whether or not to pay a separate administration fee or dispensing fee in addition to the price of the drug itself.

6. Your clients' knowledge and understanding of whether any administration or dispensing fees you reimbursed to providers or pharmacies were sufficient to cover the provider's or pharmacy's costs in administering or dispensing the corresponding drugs.

7. Whether and to what extent your clients set drug reimbursement for drugs administered and dispensed based on competitive negotiations with health care providers, pharmacies and PBMs.

8. Your clients' relationship(s), if any, with any PBM.

9. All rationales, information, and factors your clients' considered in deciding whether to do business with a PBM and in deciding which PBM, if any, to use.

10. The identity of each person who participated in or had knowledge of the decision whether or not to do business with a PBM.

11. Your clients' understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," or "WAC.

12. Your clients' understanding and knowledge of whether drug manufacturers provided health care providers or pharmacies with discounts, rebates and other incentives that were not reported in pricing compendia or otherwise disclosed to the public.

13. Your clients' understanding and knowledge of whether or not the published AWP was adjusted to account for the discounts, rebates and other incentives described in Subject 12.

14.     Your clients' knowledge of the margin wholesalers have earned on drugs over the last decade.

15.     For physician-administered drugs, whether and to what extent your clients' negotiations with providers about reimbursement expressly dealt with a distinction between (a) the reimbursement of the drug itself and (b) the reimbursement for the medical provider's administration service.

16.     Whether and to what extent your clients' negotiations over reimbursement rates with providers over drugs and drug-related services are influenced by Medicare's reimbursement rates.

17.     Your clients' understanding and knowledge of whether health care providers and pharmacies earn a margin on drugs administered and dispensed, including whether such a margin depends, in part, on the difference between the reimbursement your clients paid and the actual acquisition costs for the drugs, net of any incentives provided by the drug manufacturers.

18.     Whether and to what extent you provide different reimbursement rates for subject drugs when they are administered in providers' offices rather than in hospitals, including your clients' rationale for doing so or not doing so.

19.     Any studies or analysis your clients have made concerning the relatives costs of the administration of subject drugs in providers' offices rather than in hospitals.

20.     Your clients' knowledge and understanding of any agreement between any drug manufacturer and any PBM to inflate the amount you paid or reimbursed for pharmacy-dispensed drugs.

21.     Your clients' knowledge and understanding of any activity undertaken by any drug manufacturer to artificially inflate the AWPs for their drugs.

22.     Your clients' relationships with your insureds, including all methodologies by which you bill your insureds, directly or indirectly, for pharmaceuticals and pharmaceutical dispensing or administration services.

23.     All information sent to or received from federal, state, or local governments regarding pharmaceutical reimbursement.

24.     Your clients' knowledge of government studies, reports, and communications concerning actual acquisition costs for drugs.

25.     The authentication and knowledge of all documents produced in response to defendants' subpoena, and the extent to which such production is responsive to defendants' demands.

1100250v1