# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) CIVIL ACTION: 01-CV-12257-PBS ) |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) Judge Patti B. Saris ) ) ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO ORDER DENYING MOTION TO COMPEL DEFENDANTS' CORRESPONDENCE WITH PUTATIVE CLASS MEMBERS**

## I.   INTRODUCTION

Rule 26(b)(1) supports discovery reasonably calculated to lead to the discovery of admissible evidence, and Defendants' litigation-related communications with putative class members certainly meets this test. Here, Defendants refuse to produce their correspondence with putative class members, where such correspondence was made in connection with subpoenas issued in this litigation. This causes great concern, because Defendants have subpoenaed over 100 class members and are actively engaged in negotiating the scope of those subpoenas, as well as issues related to the deponents that most of the subpoena targets have been requested to produce. Court intervention is required so that Plaintiffs' are afforded the opportunity to determine how, if at all, Defendants are narrowing their subpoena requests.

Furthermore, Courts are duty bound to ensure that Defendants' communications with class members do not contain any misrepresentations or other statements that would serve to undermine the fair administration of justice. This is because, among other things, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without

1534.16 0111 MTN.DOC

opportunity for rebuttal.  The damage from misstatements could well be irreparable." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985).  Court intervention is thus also required so that Defendants' communications can be properly monitored by Plaintiffs' counsel to ensure that any representations made about this litigation are truthful and that Defendants are not discouraging insurers to cooperate with Plaintiffs or encouraging insurers to opt-out.

Chief Magistrate Judge Bowler denied Plaintiffs' motion to compel these important documents, citing this Court's March 8, 2004, Order denying Plaintiffs' Motion for a Protective Order that sought to protect putative class members from responding to Defendants' subpoenas. However, in denying that motion, the Court did not rule on the issue of whether Defendants would be required to produce correspondence related to those subpoenas.  That issue is now ripe for resolution in Plaintiffs' favor.

## II.     FACTUAL BACKGROUND

Defendants have served over 100 subpoenas on putative class members seeking a wide array of information from detailed claims data to agreements with providers and pharmacy benefit managers.  The majority of these subpoenas also demand that the class member produce one or more witnesses for a deposition.

In order to track the course of negotiations that Defendants have conducted and are conducting with regard to the scope of their subpoenas, and to monitor how Defendants are communicating with these putative class members, Plaintiffs served discovery requesting, among other things, that Defendants produce "[a]ll correspondence with any putative class member or with any attorney representing any putative class member." *See* Exhibit A (Plaintiffs' Third Set of Requests for Production of Documents to All Defendants, Request No. 2).  Each Defendant objected.  *See* Exhibit B (collecting Defendants' responses).  The typical objection asserted by each Defendant is as follows:

> Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to pricing, price reporting, AWP, the relationship between AWP and

>WAC, or any other issue in this litigation and on its face purports
>to require Defendant to search for and produce all correspondence
>with any putative class member – which, in light of plaintiffs'
>overly expansive purported class definition, includes entities or
>persons with which Defendant may have had commercial
>relationships since 1991, without regard for whether such
>correspondence has any relationship to any issue in this litigation.
>Defendant further objects to this Request on the ground that
>plaintiffs effectively sought similar relief from the Court in their
>Motion for a Protective Order Regarding Subpoenas to Putative
>Class Members and such Motion was denied by the Court.

*See, e.g.,* Defendant Aventis Pharmaceuticals Inc.'s Responses and Objections to Plaintiffs' Third Set of Requests for Production of Documents to All Defendants at 3 (which is included in Exhibit B hereto).

During the meet and confer process, Plaintiffs offered to limit Request No. 2 to "[a]ll correspondence with any putative class member or with any attorney representing any putative class member where such correspondence is related to the issues presented in this litigation." *See* Exhibit C. Defendants nonetheless have maintained their objections to producing this correspondence. *See* Exhibit D.[1]

On October 1, 2004, Plaintiffs moved to compel. Chief Magistrate Judge Bowler denied Plaintiffs' motion "inasmuch as the prior motion (Docket Entry #632) requested an accounting of all communications between defendants and putative class members and that motion was denied." November 2, 2004 Electronic Order denying Motion to Compel [1090] (the "Chief Magistrate Order"). Chief Magistrate Judge Bowler was referring to Plaintiffs' December 3, 2003, Motion for a Protective Order Regarding Subpoenas to Putative Class Members, in which Plaintiffs argued that, among other things, Defendants should not serve subpoenas on absent class members without Court approval and should account for all communications that they had with these putative class members through the date of the motion with regard to the subpoenas.

---

[1] The letters found at Exhibits C and D also reflect a dispute on another discovery issue – the production of documents that Defendants received from the United States Centers for Medicare and Medicaid Services ("CMS") – but that dispute is not the subject of this objection and motion. The parties are still attempting to work out an agreement related to the CMS documents.

- 3 -

The Court denied the motion "[f]or the reasons stated in open Court at the Status Conference on March 8, 2004." *See* Exhibit E (the "March 8 Order").  As highlighted in greater detail below, the Court did not discuss communications with class members at any point during the March 8 Status Conference; therefore, this aspect of Plaintiffs' prior motion was not resolved.

### III.    LEGAL ARGUMENT

#### A.    The Court Never Ruled On This Particular Issue

Defendants argue that the Court's March 8 Order permitting limited discovery of class members also denied an accounting of all communications with putative class members in regard to the subpoena, thereby permitting Defendants to cloak any communications related to that discovery.  *See* Exhibit D at 2.[2]  Chief Magistrate Judge Bowler agreed.

However, the Court did ***not*** specifically deny Plaintiffs' request for an accounting of such communications.  Instead, the Court denied Plaintiffs' motion "[f]or the reasons stated in open Court at the Status Conference on March 8, 2004."  *See* Exhibit E.  As the transcript of that hearing demonstrates, defense communications with putative class members was never discussed at the hearing, and the Court did not rule that Defendants were protected from producing these communications.  Rather, the Court only permitted some ***limited*** class member discovery to proceed, but only after explaining, "Normally, I'm not sympathetic to class discovery."  *See* Exhibit B (page 48 of transcript).[3]  Accordingly, the Chief Magistrate Order was entered on the

---

[2] Defendants also asserted that Plaintiffs' proposed limitation to Request No. 2 was overbroad "since it does not appear to be limited to communications made in connection with this litigation."  That is what Plaintiffs intended when proposing the limitation, and this should therefore no longer be an issue.  If the correspondence is (i) between a Defendant and a putative class member or an attorney representing a putative class member, and (ii) that correspondence was made in connection with this litigation, it should be produced under Plaintiffs' proposed narrowing.

[3] The Court's pause and caution in this regard is supported by the overwhelming weight of authority discouraging discovery of absent class members.  *See, e.g., Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975) ("The use of discovery devices against nonrepresentative class members raises the troublesome conflict between 'the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense.'"); *Kamm v. California City Development Co.*, 509 F.2d 205, 209 (9th Cir. 1975) (discovery of putative class members is generally not

mistaken presumption that the Court had already ruled on this issue, and the Chief Magistrate Order was consequently entered in error.  The Court did not previously rule on this aspect of Plaintiffs' original, December 3, 2003, motion.

**B.  It Is Axiomatic That Defendants' Litigation-Related Communications With Putative Class Members Are Relevant And Should Be Produced**

How and what Defendants communicate to putative class members strikes to the very heart of this litigation and is therefore relevant.  Plaintiffs are entitled to review these communications to determine what documents are being made available to Defendants in response to the subpoenas, and what documents Defendants decided not to select and copy.  Although Defendants are providing to Plaintiffs copies of the documents that Defendants selected for production, Plaintiffs cannot discern from the production what was made available yet not chosen by Defendants.[4]  Plaintiffs are also entitled to determine what Defendants are telling these class members about the case and what they intend to cover in depositions, among other things.  Defendants' half-hearted assertion that such communications are not relevant is simply incorrect.

**C.  Oversight Of Defendants' Litigation-Related Communications With Class Members Is Required As A Matter Of Course, And That Can Only Be Accomplished By Compelling Defendants To Produce Such Communications**

Cloaking Defendants' communications with putative class members or their counsel is ***unprecedented***, as well as illogical given the plain relevancy of the documents and the potential for abuse.  Courts recognize the potential abuse that could occur if defendants are permitted to freely communicate with putative class members; consequently, defendants are not given *carte blanche* to say whatever they like:  "[c]lass actions serve an important function in our system of civil justice.  They present, however, opportunities for abuse as well as problems for courts and

---

permitted without leave of court); MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 at 231 (1995) (discovery of absent class members "should be permitted only to the extent necessary and should be carefully limited to ensure that it serves a legitimate purpose and is not used to harass either the class representatives or the class members.").

[4] For instance, through happenstance Plaintiffs' Counsel learned that Defendants advised putative class member John Deere Health Plans ***not*** to produce any contracts that it had with Defendants (which are, of course, plainly relevant to the litigation).

- 5 -

counsel in the management of cases.  Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981).  The court also noted that "[u]napproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice."  *Id.* at 101 (quoting *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782, 790-91 (E.D. La. 1977)).

Other courts agree and provide examples of the types of communications with potential class members that are inappropriate:

> Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation.  Communications that misrepresent the status or effect of the pending action also have been found to have a potential for confusion and/or to adversely affect the administration of justice. . . .  Courts have also condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel.

*Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (citing *Gulf Oil*, 452 U.S. at 101, n.12; *In re School Asbestos Litig.*, 842 F.2d 671, 682 n.23 (3rd Cir. 1988)).  As the Eleventh Circuit has noted, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the fact[s], without opportunity for rebuttal.  The damage from misstatements could well be irreparable."  *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985).[5]

---

[5] *See also In re Winchell's Donut Houses, L.P. Sec. Litig.*, 1988 Del. Ch. Lexis 159, at *3 (Del. Ch. Dec. 12, 1988) ("Surely, a defendant may not, in its communications with class members prior to certification, deceive or mislead class members."); *Pollar v. Judson Steel Corp.*, 1984 U.S. Dist. Lexis 19765, at *1 (N.D. Cal. 1984) (where defendant placed an advertisement which was found to be in violation of the "intent and terms" of the federal class actions because the advertisements did not disclose the pendency of the class action, attempted to solicit information from potential class members, and threatened confusion regarding and prejudice of the potential class members' rights in the litigation); 3 NEWBERG ON CLASS ACTIONS § 15.14 (1992) ("When communications can be shown to be abusive, the defendants may be ordered to retract their statements and are subject to other sanctions.  Solicitation of exclusions also poses ethical problems.").

The concern regarding truthful communications is so great that courts "may consider a curative notice from the court, at the expense of those at fault, giving the correct information" if "the court finds that defendants have improperly communicated with [the class.]" *Great Rivers Coop. v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995).

Without Plaintiffs' Counsel's and/or the Court's review of Defendants' communications with putative class members, there can be no adequate supervision and therefore no assurance that Defendants are not misrepresenting the status of the pending litigation, encouraging class members not to participate, undermining cooperation with, or confidence in, proposed Class Counsel, or engaging in any other wrongful conduct – no matter how sophisticated Defendants believe those putative class members to be. ***Indeed, given that producing the information would not place undue burden on Defendants (and they have never argued that it would), Defendants' steadfast refusal to do so raises a significant "red flag."*** The production of Defendants' correspondence with the putative class should not be controversial in light of the above authorities, which makes Defendants' continued efforts to fight Plaintiffs on this issue very suspect indeed.

## IV.   CONCLUSION

The information sought is plainly relevant, and producing it will not in any way impede Defendants' discovery efforts or cause any undue burden. "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.33, at 300 (2004) (citing *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, 2001 WL 1035132, at *7 (S.D.N.Y. Sept. 7, 2001) (ordering curative notice for improper precertification communications)). The Court should institute safeguards to monitor communications by defense counsel with absent class members by overruling the Chief Magistrate Order (which was issued on the mistaken presumption that the Court's March 8 order pertained to communications between Defendants and putative class members regarding the subpoenas) and requiring Defendants to produce to Plaintiffs these highly

relevant communications.[6]  For the foregoing reasons, the Court should sustain Plaintiffs' objection to the Chief Magistrate Order and grant Plaintiffs' Motion to Compel.

DATED:  November 10, 2004                    By    /s/ **Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
    Hagens Berman LLP
    One Main Street, 4th Floor
    Cambridge, MA  02142
    Telephone: (617) 482-3700
    Facsimile: (617) 482-3003
    **LIAISON COUNSEL**

    Steve W. Berman
    Sean R. Matt
    Hagens Berman LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Jeffrey Kodroff
    John Macoretta
    Spector, Roseman & Kodroff, P.C.
    1818 Market Street, Suite 2500
    Philadelphia, PA  19103
    Telephone: (215) 496-0300
    Facsimile: (215) 496-6611
    **CHAIRS OF LEAD COUNSEL COMMITTEE**

    Samuel Heins
    Heins, Mills & Olson, P.C.
    3550 IDS Center
    80 South Eighth Street
    Minneapolis, MN  55402
    Telephone: (612) 338-4605
    Facsimile: (612) 338-4692

---

[6] Importantly, Plaintiffs' proposal does not restrict Defendants' speech and therefore does not implicate any of the concerns discussed in *Gulf Oil* with regard to restricting speech.

- 9 -

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO ORDER DENYING MOTION TO COMPEL DEFENDANTS' CORRESPONDENCE WITH PUTATIVE CLASS MEMBERS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 10, 2004, a copy to Verilaw Technologies for Posting and notification to all parties

      By  **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292