UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | ) MDL No. 1456 ) ) Civil Action: 01-CV-12257-PBS ) ) Judge Patti B. Saris ) |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS and 01-CV-339 ) ) ) | ) Chief Magistrate Judge ) Marianne B. Bowler ) |

## TRACK 1 DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO RESET CERTAIN SCHEDULING DATES[1]

Plaintiffs' motion is nothing more than transparent gamesmanship. It is premised primarily on the assertion that defendants have failed to turn over certain expert materials (e.g. workpapers) in a timely fashion when in fact the parties' had agreed in writing that no such materials would be exchanged. Plaintiffs' subsidiary arguments concerning the burden placed on them by the schedule are also unavailing. Numerous experienced law firms are listed in the plaintiffs' counsel group, they agreed to the briefing schedule with full awareness of defendants' vigorous opposition (indeed, they had already had a very similar experience in the class certification briefing for the Lupron MDL) and their claims of lack of access to defendants' filings and exhibits are grossly exaggerated. The motion should be denied.

---

[1] The Track 1 defendants are AstraZeneca Pharmaceuticals, Bristol Myers Squibb, GlaxoSmithKline, Johnson & Johnson and Schering-Warrick and certain related entities.

## Background

The first of these class actions was commenced by plaintiffs' counsel in October 2001. On April 30, 2002, the Judicial Panel on Multidistrict Litigation consolidated and transferred the cases to this district for pre-trial proceedings. 201 F.Supp.2d 1378 (J.P.M.L. 2002). Thereafter, plaintiffs – represented by more than 20 law firms – amended their complaint five times.

In Case Management Order ("CMO") 7, the Court established a discovery cutoff of March 1, 2004, and directed plaintiffs to file their class certification motion by July 1, 2004. When it appeared that the parties could not meet that schedule, the Court entered CMO 10, which divided the case into a "fast track" consisting of five defendants and a "regular track" for the remaining defendants. CMO 10 directed plaintiffs to file their class certification motion by September 3, 2004, defendants to file their opposition by October 25, 2004, plaintiffs to file their reply by December 1, 2004, and defendants to file any surreply by December 8, 2004.

When plaintiffs served their class certification motion on September 3, 2004, the parties agreed that the papers could be served by e-mail and CD, as opposed to providing them in hard copy form. (Declaration of Steven M. Edwards, sworn to November 15, 2004 ("Edwards Decl."), ¶ 3.) Shortly after they received plaintiffs' papers, defendants served subpoenas calling for the production of documents by plaintiffs' experts – Raymond S. Hartman ("Hartman") and Stephen W. Schondelmeyer ("Schondelmeyer") – who had filed declarations in support of plaintiffs' motion. (Id. Exh. A.) Paragraph 3 of the subpoenas called for the production of "[a]ll documents,

notes or memoranda relating to . . . consideration or evaluation of materials furnished to you (or developed by you) in connection with the Declarations." (Id.)

Plaintiffs objected to paragraph 3 of the subpoenas on the ground that it violated an agreement between the parties that neither side would seek production of draft expert reports. (Edwards Decl. ¶5 and Exh. B.) The parties then discussed the objection, and plaintiffs took the position that they "view any workpapers (e.g., documents that would show the calculations underlying a chart) as drafts that do not have to be produced". (Id. Exh. C.) Defendants agreed to accept that position, "conditioned on the understanding that the limitations agreed to with respect to Hartman and Schondelmeyer will also apply to defendants' experts". (Id. Exh. C.) As a result, plaintiffs did not produce, and defendants did not obtain, any of the documentation underlying Tables 2A, 2B, 2C, 3A and 3B of Hartman's declaration, which purported to depict, among other things, average sale prices ("ASPs"), average wholesale prices ("AWPs") and "reimbursement overcharges". (Id. ¶ 6 and Exh. D.)[2]

Thereafter, on September 27, 2004, the parties appeared before Chief Magistrate Judge Bowler in connection with a number of discovery motions. Among other things, plaintiffs were seeking an order limiting the number of depositions defendants could take in any given week. It was defendants' position that it was necessary to take those depositions in order to prepare their response to plaintiffs' class certification motion, but they offered to agree to certain limitations if plaintiffs would agree to a modest extension of the due date for defendants' class certification response. Plaintiffs rejected that offer. (Edwards Decl. ¶ 7.)

---

[2] At the end of the day, defendants only received four documents from plaintiffs, which were delivered the day before the first deposition. (Edwards Decl. ¶ 6 and Exhs. E and F.)

When defendants served their response to plaintiffs' class certification motion on October 25, 2004, they asked plaintiffs whether they could serve their papers by e-mail and CD, as plaintiffs had done. Plaintiffs agreed to this approach. (Edwards Decl. ¶ 8.) Defendants then heard nothing for almost ten days, when plaintiffs wrote them alleging that they were having problems finding certain documents on the CDs. (Id. Exh. G.) Defendants immediately produced hard copies of the materials on the CDs. (Id. ¶ 8.) Thereafter, plaintiffs complained that they could not find certain testimony and publications, as well as a database licensed from MediSpan that defendants' experts used as a source for AWPs. (Id. at ¶ 9.) Defendants promptly assisted plaintiffs in locating the testimony and publications, and they informed plaintiffs that their experts were prohibited by their license with MediSpan from producing the database, but they offered to assist them in obtaining a license and agreed to pay for it. (Id. ¶ 10.)

As of the afternoon of November 9, 2004, plaintiffs' counsel suggested that the problems with respect to expert documents appeared to have been solved, but shortly thereafter they raised "an additional item which requires immediate attention" – claims data and workpapers. (Edwards Decl. ¶ 11, Exh. H.) Defendants were puzzled by plaintiffs' complaint with respect to claims data since all of it had been produced to both sides in the litigation and some of it was plaintiffs' own claims data. (Id.) With respect to "workpapers", defendants pointed out that plaintiffs had agreed that workpapers do not have to be produced. (Id.)

This exchange resulted in a litany of complaints and threats to "ask judge (sic) to set class schedule back". (Edwards Decl. ¶ 11, Exh. I.) Even though defendants would have been well within their rights to decline to produce workpapers, in order to

avoid any slippage in the schedule, on November 10, 2004, they agreed to produce them within two days. (Id., Exh. J.)[3] Plaintiffs received the workpapers on the morning of November 12, 2004, but they filed their motion to extend the schedule nonetheless.

<u>Argument</u>

**<u>THE COURT SHOULD DENY THE MOTION.</u>**

Plaintiffs offer a variety of excuses for why, after defendants have filed their opposition on time, the schedule for further briefing on plaintiffs' class certification motion should be extended.

First, plaintiffs contend that they were surprised by the volume and content of defendants' submissions, and they note that "defendants are represented by dozens of high power and well-heeled law firms with squadrons of attorneys and staff on this case . . . ." (Pltfs' Mot. at 1-2.) Plaintiffs are experienced class action lawyers, at least some of whom are "well-heeled", and they recently responded to similar filings by the defendants in the Lupron MDL. Furthermore, if the papers are any indication, there are more plaintiffs' counsel working on this motion than defendants' counsel. Plaintiffs' claim of surprise and burden is completely without merit.

Second, plaintiffs complain that they served interrogatories on defendants asking them in advance of their opposition to identify the factual and legal bases for their position, and defendants failed to provide meaningful answers. (Pltfs' Mot. at 2.) Plaintiffs' interrogatories, which purported to require defendants to outline their brief and supporting papers in opposition before they were due (or, indeed, had been fully

---

[3] The workpapers are actually computer queries and programs. Defendants also re-produced a complete set of claims data even though plaintiffs have had those materials for months. (Id.)

formulated), were completely objectionable. Defendants duly objected, and plaintiffs did not see fit to move to compel. Plaintiffs can hardly complain about that now.

Third, plaintiffs complain about the difficulty they experienced printing out the documents on the CDs and organizing the exhibits. (Pltfs' Mot. at 2.) Plaintiffs requested that the materials be provided in electronic form, and when they claimed to be having problems dealing with them hard copies were promptly provided. Defendants are not aware of any corrupted disks or disks that could not be opened, and plaintiffs have never identified any. (Edwards Decl. ¶ 8.)

Fourth, plaintiffs complain about defendants' alleged failure to produce "key data relied upon by defendants' experts", claiming that "as of yesterday [November 11]", it had not been received. (Pltfs' Mot. at 2-3.) Plaintiffs fail to point out that as of the time they filed their emergency motion that data had been received. (Edwards Decl. ¶ 12.) Furthermore, they fail to inform the Court that they have had the claims data for months, and they had agreed that workpapers do not have to be produced. (Id. Exh. J.) Nor do they disclose that, taking advantage of this agreement, they did not produce any workpapers to defendants. (Id. ¶ 6.)

Fifth, plaintiffs complain that they have not been able to obtain a copy of the MediSpan database. (Pltfs' Mot. at 3.) As noted above, defendants have bent over backwards to assist plaintiffs in obtaining a license to the MediSpan database. They have attempted to get a sublicense for plaintiffs from MediSpan; they have put plaintiffs directly in touch with MediSpan so they can obtain their own license; and they have offered to pay for it. (Edwards Decl. ¶ 10.) At bottom, however, the key fact – which plaintiffs again do not mention in their papers – is that the MediSpan database is simply a

database of published AWPs. Similar databases are provided by Red Book and First DataBank, <u>and plaintiffs obviously have their own AWP database</u> as reflected in Exhibit A to the Amended Master Consolidated Complaint ("AMCC"). Indeed, most – if not all – of the AWPs in defendants' expert reports are identified in Exhibit A of the AMCC.[4]

        Finally, plaintiffs suggest that their experts are "hamstrung" because their "reply affidavits are due in a little over two weeks". (Pltfs' Mot. at 3.) The Court has not given plaintiffs leave to file expert reply affidavits. If this is an indication that plaintiffs intend to seek leave to file reply expert reports, defendants will address that application when it is made.[5] At the present time, however, the mere possibility that such an application may be made is not a justification for abandoning the schedule that has existed since March 25, 2004, when the Court entered CMO 10.

### Conclusion

        For the foregoing reasons, plaintiffs' emergency motion to change the schedule for the briefing of their class certification motion should be denied.

---

[4]    Plaintiffs' expert, Dr. Hartman, also appears to have his own AWP database as reflected in the tables annexed to his expert declaration. (Edwards Decl. Exh. D.)

[5]    Plaintiffs should be required to show good cause for this relief, and if the Court decides to grant it, defendants should be permitted to depose plaintiffs' experts on those reply reports and file surreply reports of their own.

Respectfully submitted,

THE TRACK 1 DEFENDANTS

By: _____

Nicholas C. Theodorou (BBO #496730)
Lucy Fowler (BBO #647929)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110

D. Scott Wise
Michael Flynn
Kimberley Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY  10017

*Attorneys for AstraZeneca Pharmaceuticals LP*

Steven M. Edwards
Lyndon M. Tretter
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, NY  10022

*Attorneys for the Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., Apothecon, Inc.*

Mark H. Lynch
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-7566

Frederick G. Herold
DECHERT LLP
975 Page Mill Road
Palo Alton, CA  94304-1013

Geoffrey E. Hobart
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116

*Attorneys for SmithKlineBeecham Corp. d/b/a GlaxoSmithKline*

William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710

*Attorneys for the Johnson and Johnson Defendants*

John T. Montgomery
Brien T. O'Connor
Steven A. Kaufman
Darcy W. Shearer
Eric P. Christofferson
ROPES & GRAY LLP
One International Place
Boston, MA  02110

*Attorneys for Schering-Plough Corp. and Warrick Pharmaceuticals Corp.*

Dated:  November 15, 2004

## CERTIFICATE OF SERVICE

I, Lyndon M. Tretter, certify that I caused to be served the foregoing document by to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 in the above-captioned proceeding by sending on November 15, 2004, a copy to Verilaw Technologies for posting and notification to all parties.

[Original signature on file with the Court]
s/s Lyndon M. Tretter
Lyndon M. Tretter
