UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | Chief Mag. Judge Marianne B. Bowler |

**DECLARATION OF STEVEN M. EDWARDS**

STEVEN M. EDWARDS, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a member of Hogan & Hartson L.L.P., attorneys for Defendants Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp. and Apothecon, Inc. ("BMS"). I submit this declaration of my own personal knowledge in opposition to Plaintiffs' Emergency Motion To Reset Various Scheduling Dates Pertaining To Class Certification.

2. On March 25, 2004, in Case Management Order ("CMO") 10, the Court established a schedule for briefing plaintiffs' class certification motion. CMO 10 provided that plaintiffs' motion would be due on September 3, 2004; defendants' opposition would be due on October 25, 2004; plaintiffs' reply would be due on December 1, 2004; and defendants' surreply would be due on December 8, 2004. The Court also established December 17, 2004, as the date for the hearing.

3. When plaintiffs filed their motion and supporting papers on September 3, 2004, defendants agreed to accept service by e-mail and CD, as opposed to hard copies.

4. On September 10, 2004, defendants served subpoenas calling for the production of documents by plaintiffs' experts, Raymond S. Hartman ("Hartman") and Stephen W. Schondelmeyer ("Schondelmeyer"). True and correct copies of these subpoenas are annexed as Exhibit A.

5. On September 17, 2004, plaintiffs' counsel sent me an e-mail complaining that the subpoenas violated an agreement that neither side would seek production of draft expert reports. On September 21, 2004, plaintiffs sent written objections, a true and correct copy of which is annexed as Exhibit B, stating that they objected to paragraph 3 of the subpoena, which called for the production of workpapers, among other things. On September 22, 2004, I discussed plaintiffs' objections with Tom Sobol and Steve Berman, and they took the position that workpapers were not subject to production. On September 25, 2004, I agreed with plaintiffs' position in a letter to Messrs. Sobol and Berman, a true and correct copy of which is annexed as Exhibit C. That agreement was explicitly conditioned on the understanding that such limitations would also apply to defendants' experts.

6. As a result of that agreement, we did not receive copies of any of the documentation underlying certain tables attached to Dr. Hartman's declaration, true and correct copies of which are annexed as Exhibit D. At the end of the day, we only received four documents from plaintiffs' experts, as reflected in the correspondence annexed as Exhibits E and F. Those documents were not produced until the day before Dr. Hartman's deposition.

7. On September 27, 2004, the parties appeared before Chief Magistrate Judge Bowler in connection with a number of discovery motions. Among other things, plaintiffs were seeking an order limiting the number of depositions defendants could take in any given week. It was defendants' position that it was necessary to take those depositions in order to

prepare their response to plaintiffs' class certification motion, but they offered to agree to certain limitations if plaintiffs would agree to a modest extension of the due date for defendants' class certification response. Plaintiffs rejected that offer.

8. When defendants served their response to plaintiffs' class certification motion on October 25, 2004, plaintiffs agreed that they could serve their papers by e-mail and CD. We heard nothing from plaintiffs until they sent us a letter on November 3, 2004, complaining about the exhibits to defendants' expert reports, which had been provided on CDs. A true and correct copy of that letter is annexed as Exhibit G. We immediately responded by producing hard copies of those exhibits. To this day, we have no reason to believe that the CDs were defective in any way, and plaintiffs have not identified any specific defects.

9. Thereafter, plaintiffs complained that they could not find certain testimony and publications of one of our experts, Dr. Gaier, as well as a database from MediSpan that he used as a source for AWPs. I promptly responded by assisting plaintiffs' counsel in locating some of the material they could not find, and I informed them that Dr. Gaier was prohibited by the license agreement from producing the MediSpan database. As of the afternoon of November 9, 2004, plaintiffs' counsel informed me that it was his belief that, with the exception of the MediSpan issue, all of the expert document problems had been resolved.

10. Dr. Gaier asked MediSpan for permission to sublicense the database to plaintiffs, but MediSpan responded that it would not permit a sublicense to an unaffiliated entity. I then put plaintiffs' counsel in touch with MediSpan, and called MediSpan's outside counsel in an effort to expedite matters. I also agreed to pay the license fee for the database, which is approximately $9,600.

3

11.     On November 9, 2004, plaintiffs' counsel raised a new issue: claims data and workpapers. A copy of the e-mail exchange of November 9, 2004, is annexed as Exhibit H. We were puzzled by the complaint with respect to claims data, since the data had been produced to all parties and included some of plaintiffs' own data. I also reminded plaintiffs' counsel of their agreement that workpapers would not be produced. That led to the threat to seek a delay of the schedule, as reflected in the e-mail annexed as Exhibit I.

12.     Notwithstanding plaintiffs' agreement that workpapers were not subject to production, we agreed to produce them in order to avoid any delay in the schedule. A true and correct copy of my letter to that effect, dated November 10, 2004, is annexed as Exhibit J. We also agreed to re-produce the claims data, even though we have no reason to believe that the claims data is defective in any way. Plaintiffs received those materials on Friday morning, November 12, 2004.

I declare the foregoing to be true under the penalty of perjury.

New York, New York
November 15, 2004

_____
Steven M. Edwards