



# HOGAN & HARTSON
### L.L.P.

STEVEN M. EDWARDS
PARTNER
(212) 918-3506
SMEDWARDS@HHLAW.COM

875 THIRD AVENUE
NEW YORK, NEW YORK 10022
TEL (212) 918-3000
FAX (212) 918-3100
WWW.HHLAW.COM

September 10, 2004

*VIA E-MAIL AND VERILAW*

Steve W. Berman, Esq.
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

**Re:** **In re Pharmaceutical Industry AWP MDL Litigation**
**MDL No. 1456**

Dear Steve:

Enclosed are document subpoenas for Hartman and Schondelmeyer. Please note that Instruction 2 reflects our agreement that neither side will seek production of draft expert reports or communications between a party and an expert retained by that party except to the extent that the expert relies on those communications in arriving at his or her conclusions. If you have any questions about these subpoenas, please do not hesitate to call.

Sincerely yours,

Steven M. Edwards

SME/cjl
Enclosures

WASHINGTON, DC

BERLIN   BRUSSELS   LONDON   PARIS   BUDAPEST   PRAGUE   WARSAW   MOSCOW   BEIJING   TOKYO
NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES



AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | : : : | **SUBPOENA IN A CIVIL CASE**<br>MDL NO. 1456 |
| **Plaintiff**<br><br>v.<br><br>THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION<br><br><br><br>**Defendants.** | : : : : : : : : : : : | Civil Action No. 01-12257-PBS<br>(case pending in D. Mass.)<br><br>Judge Patti B. Saris |

TO:    Steven W. Schondelmeyer
        c/o Steve W. Berman
        Hagens Berman LLP
        1301 Fifth Avenue, Suite 2900
        Seattle, WA 98101

☐  **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐  **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  **YOU ARE COMMANDED** to produce and permit inspection and copying of the documents set forth in and attached hereto as Exhibit A at the place, date, and time specified below:
**See Exhibit A, attached hereto.**

| PLACE:<br>Hogan & Hartson L.L.P.<br>875 Third Avenue<br>New York, NY 10022 | DATE AND TIME:<br>September 20, 2004 at 9:30 a.m. |
|---|---|

☐  **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>        Attorneys for Defendants Bristol-Myers Squibb Co.,<br>        Oncology Therapeutics Network Corp. and Apothecon, Inc. | DATE<br>September 10, 2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Steven M. Edwards, Esq.
Hogan & Hartson L.L.P.
875 Third Avenue
New York, NY 10022
(212) 918-3000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

\\NY - 58559/0059 - 854743 v1

E-SERVED
09/10/04
07:25 PM ET
AMP-MDL NO. 1456

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i)   fails to allow reasonable time for compliance;
    (ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly

transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv)  subjects a person to undue burden.

(B) If a subpoena

    (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii)  requires disclosure of an untrained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



## EXHIBIT A

### DEFINITION

1.　　"You" and "your" means Stephen W. Schondelmeyer, including your agents, employees and representatives.

2.　　"Declarations" means the Declaration of Stephen W. Schondelmeyer in Support of Plaintiffs' Motion for Class Certification, sworn to on September 2, 2004, filed in the matter In re Pharmaceutical Industry Average Wholesale Price Litigation, 01-CV-12257-PBS, MDL No. 1456 and any other expert declarations and reports in all cases involving average wholesale prices.

3.　　"Plaintiffs" means all Plaintiffs named in the Corrected Amended Consolidated Class Action Complaint Modified Per the Court's Instructions at the November 21, 2003 Hearing with Amgen Amendments (the "AMCC").

4.　　"Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks,



hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

## INSTRUCTIONS

1.      These requests are continuing requests, and to the extent that at any time after these requests are responded to the responding party becomes aware of or acquires additional documents or information responsive to these requests, such documents or information shall be produced promptly.

2.      Pursuant to agreement between the parties, unless otherwise indicated the documents to be produced shall be limited to your final report and documents and other materials relied upon by you in forming your opinions.  Draft reports and comments by counsel on draft reports need not be produced unless they are relied upon by you in the final report.

3.      A request for any document shall be deemed to include, in addition to the document itself, a request for any transmittal sheets and cover letters accompanying the requested document, exhibits and attachments to the document and enclosures sent with the document.

4.      In the event that you object to any document request on the grounds of privilege or work product, a statement shall be provided as to each document which includes:

                a.    the name of the author of the document;

                b.    the name of the recipient of the document;

                c.    the names of the persons to whom copies were sent;

                d.    the job title of every individual named in (a), (b), and (c) above;

                e.    the date the document was created, sent, and received;

                f.    the location of the document;

2



g.   the custodian of the document;

h.   a brief description of the nature and subject matter of the document; and

i.   a statement of the privilege asserted and each and every fact or basis upon which a privilege is claimed or on which the document is otherwise withheld.

5.   Notwithstanding the assertion of any objection to production, if a document contains non-objectionable or non-privileged matter, please produce that document, redacting that portion for which the objection is asserted, provided that the identification requested in paragraphs (h) and (i) above are furnished.

6.   If documents responsive to a particular request no longer exist but are known to have existed, state the circumstances under which the documents were lost or destroyed.

7.   To the extent documents requested herein have already been produced in this action, identification of the Bates numbers of such documents shall constitute satisfactory production.

## DOCUMENTS TO BE PRODUCED

1.   All documents or information furnished to you by Plaintiffs, Plaintiffs' counsel or any other person in connection with your work in this case.

2.   All other documents or information relied upon by you in connection with your work or your conclusions in this case.

3.   All documents, notes or memoranda relating to interviews of witnesses, or consideration or evaluation of materials furnished to you (or developed by you) in connection with the Declarations.

3



4.　　Citation to all reference works or treatises relied upon by you in the preparation of your opinions in this case.

5.　　All exhibits, charts or other demonstrative materials used or intended to be used or submitted in connection with the Declarations or your testimony in this case.

6.　　Copies of all publications including letters, notes, reviews, comments, and articles authored by you.

7.　　Copies of all speeches given by you.

8.　　Copies of all prior testimony, affidavits, declarations and reports given by you.

9.　　All letters of engagement concerning your retention by Plaintiffs and/or Plaintiffs' counsel in this action.

10.　　Documents sufficient to show payments by Plaintiffs and/or Plaintiffs' counsel in this action or any other action.

\\NY - 58559/0059 - 854743 v1



## CERTIFICATE OF SERVICE

I, Hoa T. T. Hoang, certify that a true and correct copy of the foregoing Subpoena in A

Civil Case was served on:

Steve W. Berman
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

by E-mail and on all counsel of record by electronic service pursuant to Paragraph 11 of the Case

Management Order No. 2 on September 10, 2004, by sending a copy to Verilaw Technologies for

posting and notification to all parties.

Hoa S. S. Hoang
Hoa T. T. Hoang



E-SERVED
09/10/04
07:25 PM ET
AWP-MDL No. 1456

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | : : : | **SUBPOENA IN A CIVIL CASE** MDL NO. 1456 |
| Plaintiff v. | : : : : | Civil Action No. 01-12257-PBS (case pending in D. Mass.) |
| THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION | : : : : | Judge Patti B. Saris |
| Defendants. | : | |

TO:     Raymond S.Hartman
        c/o Steve W. Berman
        Hagens Berman LLP
        1301 Fifth Avenue, Suite 2900
        Seattle, WA 98101

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the documents set forth in and attached hereto as Exhibit A at the place, date, and time specified below:
**See Exhibit A, attached hereto.**

| PLACE: Hogan & Hartson L.L.P. 875 Third Avenue New York, NY 10022 | DATE AND TIME: September 20, 2004 at 9:30 a.m. |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorneys for Defendants Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp. and Apothecon, Inc. | DATE September 10, 2004 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Steven M. Edwards, Esq.
Hogan & Hartson L.L.P.
875 Third Avenue
New York, NY  10022
(212)  918-3000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

\\NY - 58559/0059 - 854354 v1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)  fails to allow reasonable time for compliance;
(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly

transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



## EXHIBIT A

## DEFINITION

1.      "You" and "your" means Raymond S. Hartman, including your agents, employees and representatives.

2.      "Declarations" means the Declaration of Raymond S. Hartman in Support of Plaintiff's Motion for Class Certification, sworn to on September 3, 2004, filed in the matter In re Pharmaceutical Industry Average Wholesale Price Litigation, 01-CV-12257-PBS, MDL No. 1456, the Declaration of Raymond S. Hartman and Rebuttal Declaration of Raymond S. Hartman in Support of the Certification of the Class of End-Payer Purchasers of Lupron®, sworn to on July 26, 2004, filed in the matter In Re: Lupron® Marketing and Sales Practices Litigation, 01-CIV-10861, MDL No. 1430, and any other expert declarations and reports in all cases involving average wholesale price.

3.      "Plaintiffs" means all Plaintiffs named in the Corrected Amended Consolidated Class Action Complaint Modified Per the Court's Instructions at the November 21, 2003 Hearing with Amgen Amendments (the "AMCC").

4.      "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information



can be obtained (by translation, if necessary, by you through detection devices into usable form),

including, without limitation, electromagnetically sensitive storage media such as floppy disks,

hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any

of the foregoing, whether produced or authored by you or anyone else.

## INSTRUCTIONS

1.      These requests are continuing requests, and to the extent that at any time after
these requests are responded to the responding party becomes aware of or acquires additional
documents or information responsive to these requests, such documents or information shall be
produced promptly.

2.      Pursuant to agreement between the parties, unless otherwise indicated the
documents to be produced shall be limited to your final report and documents and other materials
relied upon by you in forming your opinions.  Draft reports and comments by counsel on draft
reports need not be produced unless they are relied upon by you in the final report.

3.      A request for any document shall be deemed to include, in addition to the
document itself, a request for any transmittal sheets and cover letters accompanying the requested
document, exhibits and attachments to the document and enclosures sent with the document.

4.      In the event that you object to any document request on the grounds of privilege or
work product, a statement shall be provided as to each document which includes:

  a.    the name of the author of the document;

  b.    the name of the recipient of the document;

  c.    the names of the persons to whom copies were sent;

  d.    the job title of every individual named in (a), (b), and (c) above;

  e.    the date the document was created, sent, and received;

2



f.   the location of the document;

g.   the custodian of the document;

h.   a brief description of the nature and subject matter of the document; and

i.   a statement of the privilege asserted and each and every fact or basis upon which a privilege is claimed or on which the document is otherwise withheld.

5.   Notwithstanding the assertion of any objection to production, if a document contains non-objectionable or non-privileged matter, please produce that document, redacting that portion for which the objection is asserted, provided that the identification requested in paragraphs (h) and (i) above are furnished.

6.   If documents responsive to a particular request no longer exist but are known to have existed, state the circumstances under which the documents were lost or destroyed.

7.   To the extent documents requested herein have already been produced in this action, identification of the Bates numbers of such documents shall constitute satisfactory production.

## DOCUMENTS TO BE PRODUCED

1.   All documents or information furnished to you by Plaintiffs, Plaintiffs' counsel or any other person in connection with your work in this case.

2.   All other documents or information relied upon by you in connection with your work or your conclusions in this case.

3



3.    All documents, notes or memoranda relating to interviews of witnesses, or consideration or evaluation of materials furnished to you (or developed by you) in connection with the Declarations.

4.    Citation to all reference works or treatises relied upon by you in the preparation of your opinions in this case.

5.    All exhibits, charts or other demonstrative materials used or intended to be used or submitted in connection with the Declarations or your testimony in this case.

6.    Copies of all publications including letters, notes, reviews, comments, and articles authored by you.

7.    Copies of all speeches given by you.

8.    Copies of all prior testimony, affidavits, declarations and reports given by you.

9.    All letters of engagement concerning your retention by Plaintiffs and/or Plaintiffs' counsel in this action.

10.    Documents sufficient to show payments by Plaintiffs and/or Plaintiffs' counsel in this action or any other action.

4



## CERTIFICATE OF SERVICE

I, Hoa T. T. Hoang, certify that a true and correct copy of the foregoing Subpoena in A

Civil Case was served on:

Steve W. Berman
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

by E-mail and on all counsel of record by electronic service pursuant to Paragraph 11 of the Case

Management Order No. 2 on September 10, 2004, by sending a copy to Verilaw Technologies for

posting and notification to all parties.

Hoa T. T. Hoang





**hagens-berman.com**
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

September 21, 2004

***Via Facsimile***

Mr. Steven M. Edwards
Hogan & Hartson, LLP
875 Third Avenue, Suite 2600
New York, NY  10022

      Re:    <u>AWP Litigation</u>

Dear Steven:

      In connection with the subpoena to Hartman and Schandelmeyer here are plaintiffs' responses and objections.

      1.    Our agreement does not require production of all documents furnished by plaintiffs' counsel. *See* Letter from Scott Wise.

      2.    Reliance documents are identified by Bates Number and you can readily obtain these.

      3.    Request No. 3 is beyond the scope of our agreement.

      4.    We have identified in the CV's major treatises let us know wich you wishto see and we will consider it.

Mr. Steven M. Edwards
September 21, 2004
Page 2

5.     We have not yet determined what charts or additional exhibits that
may be used on reply or at the hearing.

6.     Too broad.

7.     Too broad.

8.     Too broad, we have agreed to provide the Lupron testimony.

Mr. Steven M. Edwards
September 21, 2004
Page 3

      9.     We will produce letters of engagement.

      10.    We will produce bills generated in this case.  Going beyond that is burdensome and irrelevant to the class proceedings.

Sincerely,

Steve W. Berman

SWB:dld





# HOGAN & HARTSON
## L.L.P.

STEVEN M. EDWARDS
PARTNER
(212) 918-3506
SMEDWARDS@HHLAW.COM

875 THIRD AVENUE
NEW YORK, NEW YORK 10022
TEL (212) 918-3000
FAX (212) 918-3100
WWW.HHLAW.COM

September 25, 2004

*VIA E-MAIL AND VERILAW*

Steve W. Berman, Esq.
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Thomas M. Sobol, Esq.
Hagens Berman LLP
225 Franklin Street
Boston, MA 02110

> Re:  **In re Pharmaceutical Industry AWP MDL Litigation**
>      **MDL No. 1456**

Dear Steve and Tom:

I am writing to confirm our agreement with respect to the Hartman and Schondelmeyer subpoenas dated September 10, 2004. This agreement is conditioned on the understanding that the limitations agreed to with respect to Hartman and Schondelmeyer will also apply to defendants' experts.

With respect to paragraphs 1 and 2, you have represented that all documents and information relied upon by your experts are identified in their declarations, and you have agreed to provide us with copies to the extent that we are having difficulty obtaining them on our own. With respect to paragraph 3, you have represented that your experts have not interviewed any witnesses, and you view any workpapers (e.g., documents that would show the calculations underlying a chart) as drafts that do not have to be produced. With respect to paragraph 4, you have represented that all reference works or treatises relied on by your experts have been identified in their declarations, except for standard references that are not being used to support any specific point. With respect to paragraph 5, you have not yet determined what charts or additional exhibits may be used on reply or at

WASHINGTON, DC

BERLIN   BRUSSELS   LONDON   PARIS   BUDAPEST   PRAGUE   WARSAW   MOSCOW   BEIJING   TOKYO
NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES



HOGAN & HARTSON L.L.P.

Steve W. Berman, Esq.
Thomas M. Sobol, Esq.
September 25, 2004
Page 2

the hearing.  With respect to paragraphs 6 through 8, we will try to narrow the scope by checking off those publications, speeches, transcripts of prior testimony and prior reports identified in the declarations that we are interested in obtaining -- if you have access to those materials and no objection to producing them, you will produce them; if you cannot produce those materials because they are covered by protective orders or you otherwise object, we will discuss what to do next.  You will produce the engagement letters for this case, and with respect to paragraph 10, you will only produce the bills generated by your experts in connection with this case.

Enclosed is a copy of attachments A and B to Hartman's declaration with check marks next to the items that we are interested in obtaining.  Bill Cavanaugh will be sending you a similar list for Schondelmeyer.  As I mentioned the other day on the telephone, we are especially interested in obtaining a copy of Schondelmeyer's *Medicare and Medicaid Drug Pricing: Strategy to Determine Market Prices* dated June 21, 2004.

Sincerely yours,

Steven M. Edwards

SME/lj
Enclosures



## Table 2.A: Actual Spreads for Selected Manufacturers and Selected Drugs: AstraZeneca

| NDC | Product Name | Form | Spreads Based on AMP | | | Spreads Based on ASP | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVG | MIN | MAX | AVG | MIN | MAX |
| 00186-5020-31 | Nexium 20mg | Brand Oral | | | | | | |
| 00186-5020-54 | Nexium 20mg | Brand Oral | | | | | | |
| 00186-5020-82 | Nexium 20mg | Brand Oral | | | | | | |
| 00186-5022-28 | Nexium 20mg | Brand Oral | | | | | | |
| 00186-5040-31 | Nexium 40mg | Brand Oral | | | | | | |
| 00186-5040-54 | Nexium 40mg | Brand Oral | | | | | | |
| 00186-5040-82 | Nexium 40mg | Brand Oral | | | | | | |
| 00186-5042-28 | Nexium 40mg | Brand Oral | | | | | | |
| 00186-0606-28 | Prilosec 10mg 100x1CAP Hospital Unit Dose | Brand Oral | | | | | | |
| 00186-0606-31 | Prilosec 10mg 30x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0606-68 | Prilosec 10mg 100x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0606-82 | Prilosec 10mg 1000x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0742-28 | Prilosec 20mg 100x1CAP Hospital Unit Dose | Brand Oral | | | | | | |
| 00186-0742-31 | Prilosec 20mg 30x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0742-82 | Prilosec 20mg 1000x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0743-28 | Prilosec 40mg 100x1CAP Hospital Unit Dose | Brand Oral | | | | | | |
| 00186-0743-31 | Prilosec 40mg 30x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0743-68 | Prilosec 40mg 100x1CAP Bottle | Brand Oral | | | | | | |
| 00186-0743-82 | Prilosec 40mg 1000x1CAP Bottle | Brand Oral | | | | | | |
| 00186-1070-08 | Rhinocort Aqua 32mcg 1x8.6ml 120-metered spray | Nasal Inhaler | | | | | | |
| 00186-1075-09 | Rhinocort Nasal Inhaler 7g 200 dose 1x7GM Nasal Inhaler | Nasal Inhaler | | | | | | |
| 00310-0130-10 | Zestril 5mg 1x100TAB Bottle | Brand Oral | | | | | | |
| 00310-0130-34 | Zestril 5mg 1x1000TAB Bottle | Brand Oral | | | | | | |
| 00310-0130-39 | Zestril 5mg 1x100TAB Hospital Unit Dose | Brand Oral | | | | | | |
| 00310-0131-10 | Zestril 10mg 1x100TAB Bottle | Brand Oral | | | | | | |
| 00310-0131-39 | Zestril 10mg 1x100TAB Hospital Unit Dose | Brand Oral | | | | | | |
| 00310-0131-73 | Zestril 10mg 1x3000TAB Bottle | Brand Oral | | | | | | |
| 00310-0132-10 | Zestril 20mg 1x100TAB Bottle | Brand Oral | | | | | | |
| 00310-0132-39 | Zestril 20mg 1x100TAB Hospital Unit Dose | Brand Oral | | | | | | |
| 00310-0133-10 | Zestril 30mg 1x100TAB Bottle | Brand Oral | | | | | | |
| 00310-0134-10 | Zestril 40mg 1x100TAB Bottle | Brand Oral | | | | | | |
| 00310-0135-10 | Zestril 2.5mg 1x100TAB Bottle | Brand Oral | | | | | | |
| 00310-0961-30 | Zoladex 10.8mg 1x1EA Depot | Injection | | | | | | |
| 00310-0960-36 | Zoladex 3.6mg 1x1EA Depot | Injection | | | | | | |

Notes:

Sources: AWP: Red Book; Thomson Micromedex; AMP: AZ 0492927; ASP: AZ 0466413 and AZ 0466414.  Where an AWP price change occurs within a given time frame (quarter or year), the AWP accounting for the most time within the time frame is used.  NDCs shown are from Appendix A of the Complaint.

For Nexium NDC 00186-5022-28, until further data information is available, a single quarter with a negative spread was ignored.  This was due to chargebacks and rebates slightly exceeding gross sales.

Prilosec ASP data were combined based on the last six digits of the NDCs.

Until further Prilosec data information is available, a few quarters with negative spreads were ignored.  These spreads were primarily due to negative direct (gross) sales.

Zestril ASP data were combined based on the last six digits of the NDCs.  Due to chargeback fluctuations that are not in synch with sales, and until further data information is available, Zestril ASP spreads were calculated annually.  For the same reason, a few years with negative spreads were ignored.

Declaration of Raymond S. Hartman: AWP Litigation
Contains Confidential Information Subject to Court Order

Certification of the Class of End-Payer Purchasers
Table 2 Page 1

# Table 2.B: Actual Spreads for Selected Manufacturers and Selected Drugs: Bristol-Myers Squibb

| NDC | Product Name | Form | Spreads Based on AMP | | | Spreads Based on ASP | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVG | MIN | MAX | AVG | MIN | MAX |
| 00056-0168-7X | COUMADIN 4 MG | Tablet | | | | | | |
| 00056-0168-90 | COUMADIN 4 MG | Tablet | | | | | | |
| 00056-0169-7X | COUMADIN 1 MG | Tablet | | | | | | |
| 00056-0169-90 | COUMADIN 1 MG | Tablet | | | | | | |
| 00056-0170-7X | COUMADIN 2 MG | Tablet | | | | | | |
| 00056-0170-90 | COUMADIN 2 MG | Tablet | | | | | | |
| 00056-0172-7X | COUMADIN 5 MG | Tablet | | | | | | |
| 00056-0172-90 | COUMADIN 5 MG | Tablet | | | | | | |
| 00056-0173-7X | COUMADIN 7.5 MG | Tablet | | | | | | |
| 00056-0174-7X | COUMADIN 10 MG | Tablet | | | | | | |
| 00056-0176-7X | COUMADIN 2.5 MG | Tablet | | | | | | |
| 00056-0176-90 | COUMADIN 2.5 MG | Tablet | | | | | | |
| 00056-0188-7X | COUMADIN 3 MG | Tablet | | | | | | |
| 00056-0188-90 | COUMADIN 3 MG | Tablet | | | | | | |
| 00056-0189-7X | COUMADIN 6 MG | Tablet | | | | | | |
| 00056-0189-90 | COUMADIN 6 MG | Tablet | | | | | | |
| 00590-0324-35 | COUMADIN INJ 5MG VIAL | Injection | | | | | | |
| 00015-0503-01 | CYTOXAN 50 MG | Tablet | | | | | | |
| 00015-0503-02 | CYTOXAN 50 MG | Tablet | | | | | | |
| 00015-0504-01 | CYTOXAN 25 MG | Tablet | | | | | | |
| 00015-0539-41 | CYTOXAN LYOPHILIZED 100 MG | Powder for Solution | | | | | | |
| 00015-0546-41 | CYTOXAN LYOPHILIZED 200 MG | Powder for Solution | | | | | | |
| 00015-0547-41 | CYTOXAN LYOPHILIZED 500 MG | Powder for Solution | | | | | | |
| 00015-0548-41 | CYTOXAN LYOPHILIZED 1 GM | Powder for Solution | | | | | | |
| 00015-0549-41 | CYTOXAN LYOPHILIZED 2 GM | Powder for Solution | | | | | | |
| 00015-3061-20 | VEPESID 20 MG/ML | Solution | | | | | | |
| 00015-3062-20 | VEPESID 20 MG/ML | Solution | | | | | | |
| 00015-3084-20 | VEPESID 20 MG/ML | Solution | | | | | | |
| 00015-3091-45 | VEPESID 50 MG | Capsule, liquid filled | | | | | | |
| 00015-3095-20 | VEPESID 20 MG/ML | Solution | | | | | | |

Notes:

Sources: AWP: Red Book, Thomson Micromedex; AMP: BMS/AWP 00264671; ASP: BMS/AWP 00258327, BMS/AWP 00258329, BMS/AWP 00264670 and BMS/AWP 00264672.

Where an AWP price change occurs within a given time frame (quarter or year), the AWP accounting for the most time within the time frame is used.

VHA NDCs were excluded.

Due to incomplete data, Coumadin ASP spreads are for 2002 only.

For greater consistency in the ASP spread, Coumadin products, for each given strength (e.g. 4 mg), with NDCs ending in -70 or -75 were combined into one row, ending in -7X.

For the Coumadin AMP spreads, the AMPs for the products ending in -75 were taken.

For Cytoxan NDCs 00015-0539-41 and 00015-0546-41, spread calculations do not include 2002Q4 due to excessive chargebacks in that single quarter.

Due to widely fluctuating data, and until further data information is available, the ASP spreads for Vepesid have been calculated on an annual basis.

**Table 2.C: Actual Spreads for Selected Manufacturers and Selected Drugs: Schering-Plough (and Warrick)**

| NDC | Product Name | Form | Spreads Based on AMP AVG | MIN | MAX | Spreads Based on ASP AVG | MIN | MAX |
|---|---|---|---|---|---|---|---|---|
| 00085-0634-01 | DIPROLENE GEL 0.05% | Topical | | | | | | |
| 00085-0634-03 | DIPROLENE GEL 0.05% | Topical | | | | | | |
| 00085-0962-01 | DIPROLENE LOT 0.05% | Topical | | | | | | |
| 00085-0962-02 | DIPROLENE LOT 0.05% | Topical | | | | Not Provided | | |
| 00085-0575-02 | DIPROLENE OIN 0.05% | Topical | | | | | | |
| 00085-0575-05 | DIPROLENE OIN 0.05% | Topical | | | | | | |
| 00085-0517-01 | DIPROLENE AF CRE 0.05% | Topical | | | | | | |
| 00085-0517-04 | DIPROLENE AF CRE 0.05% | Topical | | | | | | |
| 59930-1560-01 | ALBUTEROL | Generic Inhalant | | | | | | |
| 59930-1560-02 | ALBUTEROL | Generic Inhalant | | | | Not Provided | | |
| 59930-1570-01 | CLOTRIMAZOLE | Generic Topical | | | | | | |
| 59930-1570-02 | CLOTRIMAZOLE | Generic Topical | | | | Not Provided | | |
| 59930-1570-03 | CLOTRIMAZOLE | Generic Topical | | | | | | |
| 59930-1570-09 | CLOTRIMAZOLE | Generic Topical | | | | | | |
| 59930-1620-01 | GRISEOFULVIN | Generic Oral | | | | | | |
| 59930-1621-01 | GRISEOFULVIN | Generic Oral | | | | Not Provided | | |
| 59930-1624-01 | GRISEOFULVIN | Generic Oral | | | | | | |
| 59930-1600-01 | PERPHENAZINE | Generic Oral | | | | | | |
| 59930-1603-01 | PERPHENAZINE | Generic Oral | | | | Not Provided | | |
| 59930-1605-01 | PERPHENAZINE | Generic Oral | | | | | | |
| 59930-1610-01 | PERPHENAZINE | Generic Oral | | | | | | |
| 59930-1714-01 | POTASSIUM CHLORIDE | Generic Oral | | | | | | |
| 59930-1714-02 | POTASSIUM CHLORIDE | Generic Oral | | | | Not Provided | | |
| 59930-1714-03 | POTASSIUM CHLORIDE | Generic Oral | | | | | | |
| 59930-1715-01 | POTASSIUM CHLORIDE | Generic Oral | | | | | | |
| 59930-1650-01 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1650-02 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1650-03 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1660-01 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1660-02 | THEOPHYLLINE | Generic Oral | | | | Not Provided | | |
| 59930-1660-03 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1670-01 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1670-02 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1670-03 | THEOPHYLLINE | Generic Oral | | | | | | |
| 59930-1680-01 | THEOPHYLLINE | Generic Oral | | | | | | |

Notes:
Sources: AWP: Red Book, Thomson Micromedex; AMP: SPW0032449.
Where an AWP price change occurs within a given time frame (quarter or year), the AWP accounting for the most time within the time frame is used.
NDCs shown are from Appendix A of the *Complaint*. Where AWP data were not available, spreads are not shown.
For Diprolene NDC 00085-0634-03, an apparent anomaly in the AMP data yielded a slightly negative spread. This spread was ignored pending fuller understanding of the data.

**Table 3: Illustrative Analysis of Injury and Calculation of Damages**
**3A: BMS's Vepesid 20 mg/mL, 7.5 mL (NDC 00015-3095-20)**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| | Actual Spread (Actual AWP - ASP)/ASP) | ASP ($/Pack) | But-For AWP[1] ($/Pack) (ASP * 1.33) | Actual AWP ($/Pack) | AWP Inflation: Unit Overcharges to Private Third-Party Payers (Actual AWP - But-For AWP) | Units Sold (Packs) | Reimbursement Overcharge:[2] Aggregate Damages to Private Third-Party Payers (1 - .15)*(AWP Inflation)*(Units Sold) | Percentage Overcharge (1 - .15)*(Actual AWP - But-For AWP)/ ((1 - .15)*Actual AWP + d))[3] |
| Quarter | | | | | | | | |
| 1997Q1 | | | | | | | | |
| 1997Q2 | | | | | | | | |
| 1997Q3 | | | | | | | | |
| 1997Q4 | | | | | | | | |
| 1998Q1 | | | | | | | | |
| 1998Q2 | | | | | | | | |
| 1998Q3 | | | | | | | | |
| 1998Q4 | | | | | | | | |
| 1999Q1 | | | | | | | | |
| 1999Q2 | | | | | | | | |
| 1999Q3 | | | | | | | | |
| 1999Q4 | | | | | | | | |
| 2000Q1 | | | | | | | | |
| 2000Q2 | | | | | | | | |
| 2000Q3 | | | | | | | | |
| 2000Q4 | | | | | | | | |
| 2001Q1 | | | | | | | | |
| 2001Q2 | | | | | | | | |
| 2001Q3 | | | | | | | | |
| 2001Q4 | | | | | | | | |
| 2002Q1 | | | | | | | | |
| 2002Q2 | | | | | | | | |
| 2002Q3 | | | | | | | | |
| 2002Q4 | | | | | | | | |
| Total | | | | | | | | |

Notes:
1. Note that this is the upper bound of the yardsticks.  See ¶ 33 in the Declaration.
2. See ¶ 25 in the Declaration.  Note that x is assumed = 15%.
3. Dispensing fee ("df") is assumed to be $2.00.

Table 3: Illustrative Analysis of Injury and Calculation of Damages
3B: Schering-Plough's Theophylline 200 mg (NDC 59930-1660-01)

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Quarter | Actual Spread ((Actual AWP - ASP)/ASP) | $ASP^1$ ($/Bottle) | But-For $AWP^2$ ($/Bottle) (ASP * 1.20) | Actual AWP ($/Bottle) | AWP Inflation: Unit Overcharges to Private Third-Party Payers (Actual AWP - But-For AWP) | Units $Sold^3$ (Bottles) | Reimbursement Overcharge.$^4$ Aggregate Damages to Private Third-Party Payers (1 - .50)*(AWP Inflation)*(Units Sold) | Percentage Overcharge (1 - .50)*(Actual AWP - But-For AWP)/ ((1 - .50)*Actual AWP + df)$^5$ |
| 1997Q1 | | | | | | | | |
| 1997Q2 | | | | | | | | |
| 1997Q3 | | | | | | | | |
| 1997Q4 | | | | | | | | |
| 1998Q1 | | | | | | | | |
| 1998Q2 | | | | | | | | |
| 1998Q3 | | | | | | | | |
| 1998Q4 | | | | | | | | |
| 1999Q1 | | | | | | | | |
| 1999Q2 | | | | | | | | |
| 1999Q3 | | | | | | | | |
| 1999Q4 | | | | | | | | |
| 2000Q1 | | | | | | | | |
| 2000Q2 | | | | | | | | |
| 2000Q3 | | | | | | | | |
| 2000Q4 | | | | | | | | |
| 2001Q1 | | | | | | | | |
| 2001Q2 | | | | | | | | |
| 2001Q3 | | | | | | | | |
| 2001Q4 | | | | | | | | |
| 2002Q1 | | | | | | | | |
| 2002Q2 | | | | | | | | |
| 2002Q3 | | | | | | | | |
| Total | | | | | | | | |

Notes:
1. Due to lack of data, we have used AMP as an approximation of ASP.
2. Note that this is the upper bound of the yardsticks. See ¶ 33 in the Declaration.
3. Due to lack of data and for illustrative purposes, we have assumed the following life cycle for this drug: 75,000 bottles sold per quarter from 1997Q1 through 2000Q4; 50,000 bottles sold per quarter from 2001Q1 through 2001Q3; and 25,000 bottles sold per quarter from 2001Q4 through 2002Q3.
4. See ¶ 25 in the Declaration. Note that x is assumed = 50%.
5. Dispensing fee ("df") is assumed to be $3.00.

Declaration of Raymond S. Hartman: AWP Litigation
Contains Confidential Information Subject to Court Order

Certification of the Class of End-Payer Purchasers
Table 3 Page 2





# HOGAN & HARTSON
### L.L.P.

STEVEN M. EDWARDS
PARTNER
(212) 918-3506
SMEDWARDS@HHLAW.COM

875 THIRD AVENUE
NEW YORK, NEW YORK 10022
TEL (212) 918-3000
FAX (212) 918-3100
WWW.HHLAW.COM

October 5, 2004

*VIA E-MAIL AND VERILAW*

Steve W. Berman, Esq.
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Thomas M. Sobol, Esq.
Hagens Berman LLP
225 Franklin Street
Boston, MA 02110

> **Re:  In re Pharmaceutical Industry AWP MDL Litigation**
> **MDL No. 1456**

Dear Steve and Tom:

On September 25, 2004, I wrote you identifying additional Hartman documents to be produced in accordance with our agreement in response to the subpoena. To date, two days before the deposition, I have received nothing. If you are proposing an additional limitation on expert discovery that excuses your failure to produce these documents, let me know what it is so we can ensure that it runs both ways. If that is not what you are doing, then I need those documents ASAP and must reserve our right to question Hartman on them after I have had a reasonable opportunity to review them.

Sincerely yours,

Steven M. Edwards

SME/cjl

WASHINGTON, DC

BERLIN   BRUSSELS   LONDON   PARIS   BUDAPEST   PRAGUE   WARSAW   MOSCOW   BEIJING   TOKYO
\\\NY - 58559/0059 - 859459.v1 NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES



10/06/2004 1Case:1:01-cv-12257-PBS Document 1168-3-BLPFiled 11/15/04 Page 33 of 50

# HAGENS BERMAN LLP
### *Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
ONE MAIN STREET • CAMBRIDGE, MASSACHUSETTS 02142
TELEPHONE: (617) 482-3700 • FACSIMILE: (617) 482-3003

## FACSIMILE COVER SHEET

Date: October 6, 2004
Pages: 4 (including this cover)
File No.: 1534.16

*FROM:*

Thomas M. Sobol

*TO:*

| Steven M. Edwards | Hogan & Hartson, LLP | Fax: (212) 918-3100 |

*MESSAGE*:

Please see attached.

Urgent! Deliver Immediately.

Please call Heather Ripley if you do not receive all of these pages or if there is a problem.

The information contained in this facsimile is confidential and may also be attorney-privileged. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by a collect telephone call to (617) 482-3700, and return the original message to us at the address above via the US Postal Service. Thank you.

A LIMITED LIABILITY PARTNERSHIP

HAGENS BERMAN LLP
*Attorneys at Law*

CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE

hagens-berman.com
ONE MAIN STREET · CAMBRIDGE, MA 02142
(617) 482-3700 · FAX (617) 482-3003

THOMAS M. SOBOL
(617) 482-3700
tom@hagens-berman.com

October 6, 2004

VIA FACSIMILE

Steven M. Edwards
Hogan & Hartson LLP
875 Third Avenue, 26th Floor
New York, NY 10022

      Re:    In Re: Pharmaceutical Industry Average Wholesale Price Litigation
              MDL No. 1456

Dear Steve:

I write in response to your letters of September 25 and October 5, 2004 concerning additional documents authored or relied upon by Dr. Hartman to be produced pursuant to subpoena in the above-referenced matter.

Attached is a breakdown of the documents requested by you in your September 25, 2004 letter. The documents are grouped according to the source from which they can be readily obtained by Defendants. The final category of documents on the list is materials maintained by Dr. Hartman and may not be publicly available. Pursuant to our agreement, I have therefore arranged to have .pdf versions of these documents e-mailed to you as soon as possible today.

Please do not hesitate to contact me if you have questions concerning the above.

Sincerely,

Thomas Sobol /HAR

Thomas M. Sobol

TMS/har
Enclosure

cc:    Steve Berman

# THE FOLLOWING SOURCES ARE AVAILABLE FROM THE DOCUMENT RETRIEVAL SERVICE USED BY GREYLOCK MCKINNON

## CONTACT THOMSON WEST AT (800) 874-4337 OR ONLINE AT http://west.thomson.com

### Hartman Articles:

"A Probability Model of Oligopoly Pricing," *Applied Economics*, 14(3), June 1982, pp. 219-234.

"Household Discount Rates Revisited," with M. Doane, *The Energy Journal*, 7(1), Winter 1986.

"The Use of Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints," with M. Doane, *The Journal of Law, Economics and Organization*, Fall 1987.

"An Empirical Model of Product Design and Pricing Strategy," *International Journal of Industrial Organization*, 7(4), December, 1989.

"Hedonic Methods for Evaluating Product Design and Pricing Strategies," *Journal of Economics and Business*, 41(3), August, 1989.

"Product Emulation Strategies in the Presence of Reputation Effects and Network Externalities: Some Evidence from the Minicomputer Industry," with D. Teece, Economics of Innovation and New Technology, Volume 1, 1990, pp. 157-182; also appearing in "Symposium on Compatibility," *Journal of Industrial Economics*, 40(1), March, 1992.

"A Monte Carlo Analysis of Alternative Estimators in Models Involving Selectivity," *Journal of Business and Economic Statistics*, 9(1), January, 1991, pp. 41-49.

"Predicting the Efficiency Effects of Mergers," *Journal of Forensic Economics*, 9(3), Fall, 1996.

"Price-Performance Competition and the Merger Guidelines," *Review of Industrial Organization*, 18, 2001.

### Other Articles:

Caves, Richard E., Michael D. Whinston and Mark A. Hurwitz, "Patent Expiration, Entry, and Competition in the U.S. Pharmaceutical Industry: An Exploratory Analysis," Brookings Papers on Economic Activity, 1991.

DiMasi, J.A., R.W. Hansen, H.G. Grabowski and L. Lasagna, "Research and Development Costs for New Drugs by Therapeutic Category: A Study of the US Pharmaceutical Industry," *PharmacoEconomics*, 7(2), February, 1995.

Lipton, Helene L., David H. Kreling, Ted Collins, Karen C. Hertz, "Pharmacy Benefit Management Companies: Dimensions of Performance," *Annual Review of Public Health*, Vol. 20, 1999.

Rozek, Richard P. and Ruth Berkowitz, "The Costs to the U.S. Health Care System of Extending Marketing Exclusivity for Taxol," *Journal of Research in Pharmaceutical Economics*, 9(4), 1999.

Schachtner, J.M., R. Guharoy, J.J. Medicis, N. Newman, R. Speizer, "Prevalence and Cost Savings of Therapeutic Interchange Among US Hospitals," *American Journal of Health-System Pharmacy* 59(6), 2002.

### THE FOLLOWING SOURCES ARE AVAILABLE ONLINE:

United States Congress, Office of Technology Assessment, Pharmaceutical R&D: Costs, Risks and Rewards, 1993, OTA-H-522.

(http://www.wws.princeton.cdu/cgi-bin/bytcserv.prl/~ota/disk1/1993/9336/9336.PDF)

Express Scripts, "1999 Drug Trend Report," June 2000.
(http://www.express-scripts.com/ourcompany/news/industryreports/drugtrendreport/1999/1999DrugTrend.pdf)

Knowledge Source, Specialty Pharmacies, November 2002.

(http://knowsource.ecnext.com/knowsource/samples/SpecialtyPharmacies.pdf)

Research and Markets, Specialty Pharmacies Market Overview, 2004.

(http://www.researchandmarkcts.com/rcports/5150/5150.htm)

### THE FOLLOWING IS A BOOK AVAILABLE AT RETAIL:

Beck, Donald F., Principles of Reimbursement in Health Care, Aspen Publication, Rockville, MD, 1984.

### WE HAVE INCLUDED COPIES OF THE FOLLOWING SOURCES:

Novartis, Pharmacy Benefit Report, 1999 Edition.

Schondelmeyer, Stephen W. and Marion V. Wrobel, "Medicaid and Medicare Drug Pricing: Strategy to Determine Market Prices, Final Report," Abt Associates Inc., Prepared for Center for Medicare and Medicaid Services, 2004.

Mulrhead, Greg, Champus Rx, *Drug Topics*, November 18, 1996.

CCH, Inc., "Medicare and Medicaid Guide," as cited in HHS Action Transmittal, HCFA-AT-77-113 (MMB), December 13, 1977.







CAMBRIDGE   CHICAGO   LOS ANGELES   PHOENIX [PLLC]   SEATTLE

hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 · SEATTLE, WA 98101
(206) 623-7292 · FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

November 3, 2004

*Via Facsimile*

Mr. D. Scott Wise
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

> Re: In re Pharmaceutical Industry AWP Litigation
> Class Certification Opposition Materials

Dear Scott:

We write in regard to the CDs that accompanied defendants' class certification opposition papers. We have been struggling to locate on the CDs various documents referenced in the Young Declaration and the exhibits thereto.

In some cases, we can only find incomplete documents. For example, Young cites to a Declaration of Thomas Gilson from Medco Health Solutions and to an Affidavit of Edward Ignaczak from Express Scripts, Inc. Both are incomplete. In other cases, we simply cannot locate the information. For example, Exhibit 15 to the Young Declaration references various "Supporting Discovery Materials" and "Other Materials Relied Upon." We cannot locate any of the information referenced except for the Humana documents that are bates numbered HUM00839-912, 01151-1214, and 0186-1921, and the Kytril, Remicade and Procrit information. Further, the search associated with Exhibit 15 alone took us 20 minutes. And these are just a few examples of the problems that have confronted us as a result of the balkanized manner in which defendants chose to "organize" the material. We have encountered similar problems with respect to the other declarations.

We have spent a week on this endeavor, and still cannot match all of the citations in the declarations to documents contained on the CDs. Enough is enough – it is simply unreasonable to place this burden onto the plaintiffs. Defendants have an obligation to provide plaintiffs with complete copies of *all* of the materials referenced in your expert declarations and to do so in such a manner that the material can be easily accessed. We demand that, within 24 hours, you provide complete copies of all materials referenced,

1534.16 0225 LTR.DOC



Mr. D. Scott Wise
November 3, 2004
Page 2

including all data, in an easy-to-identify manner. Given the shortness of time between
now and when the class certification reply papers are due, we will have to file an
emergency motion with Judge Saris if defendants do not comply with this request.

Sincerely,

Steve W. Berman



## Edwards, Steven M.

| | |
|---|---|
| **From:** | Steve Berman [steve@hagens-berman.com] |
| **Sent:** | Tuesday, November 09, 2004 7:34 PM |
| **To:** | Thomas Sobol; Edwards, Steven M.; Kimberly Harris (E-mail); Scott Wise (E-mail) |
| **Cc:** | Allan Hoffman (E-mail); Jennifer Sprengel (E-mail) |
| **Subject:** | RE: Gaier Deposition |

```
tom go for it this is really bull. we've spent countless hours trying to just reconstruct
their filing with a very short response time

-----Original Message-----
From: Thomas Sobol
Sent: Tuesday, November 09, 2004 3:56 PM
To: 'Edwards, Steven M.'; Kimberly Harris (E-mail); Scott Wise (E-mail)
Cc: Allan Hoffman (E-mail); Jennifer Sprengel (E-mail); Steve Berman
Subject: RE: Gaier Deposition


My email was perfectly clear.  Produce the data tapes or we need to go to Court.  As you
know (or your experts) know, (i) many to most of the data tapes you provided us were
password protected and had no password with them, and/or (ii) were not produced to us,
and/or (iii) were corrupted disks, and/or (iv) are buried in the production you have made.

To prodcue these materials, all your "experts" have to do is burn CDs that do not have
corruption or passwrds and hand deliver them to us; not a big deal but apparently there is
something to hide.

As to the work papers, Hartman provided the back up for the analyses he prepared; your
experts have not.  Our agreement was that drafts of reports need not be exchanged, and I
have not asked for that.

I will assume by your answer that the defendants refuse to produce this information unless
I hear from you to the contrary by noon tomorrow.  Please have someone from your group
available for a call with the Court if that can be arranged.

-----Original Message-----
From: Edwards, Steven M. [mailto:SMEdwards@HHLAW.com]
Sent: November 09, 2004 6:42 PM
To: Thomas Sobol; Kimberly Harris (E-mail); Scott Wise (E-mail)
Cc: Allan Hoffman (E-mail); Jennifer Sprengel (E-mail); Steve Berman
Subject: RE: Gaier Deposition


I am completely confused as to what you are seeking.  I thought our
agreement provided that workpapers are not subject to production, and it
is my understanding that you did not produce any Hartman workpapers as a
result.  If you think you produced Hartman workpapers (for example,
workpapers for the charts annexed to his declaration), please identify
the bates numbers so we can verify that claim.  With the respect to the
electronic claims data listed below, what are you asking us to do?  You
appear to have the bates numbers; are you saying that you can't find the
CDs and you want additional copies?    Finally, with respect to the
Medispan data, Bates White is trying to negotiate an addendum to its
license agreement so it can produce the database to you, but the person
they are dealing with has been slow in getting back to them.  Medispan
has also suggested that it might be necessary for you to deal directly
with them -- in other words, they don't like the idea of permitting a
licensee to sublicense the data to an unaffiliated third party.  We will
continue to press them as hard as we can, but it might be quicker for
you to deal with Medispan directly.

-----Original Message-----
From: Thomas Sobol [mailto:tom@hagens-berman.com]
```

1

Sent: Tuesday, November 09, 2004 5:36 PM
To: Thomas Sobol; Kimberly Harris (E-mail); Edwards, Steven M.; Scott
Wise (E-mail)
Cc: Allan Hoffman (E-mail); Jennifer Sprengel (E-mail); Steve Berman
Subject: RE: Gaier Deposition

Further to my email below, I provide the following chart of listed
claims data.  Please note that when the data is provdied, it SHOULD NOT
be apssword protected, or otherwise in an unuseable form.

Electronic Claims Data as Listed in Young and Gaier

        CMHV retail claim data
              ULL000094
        BCBS of Kansas City medical claim data
              KC0000045
              KC0005058
              KC0005069
              KC0005070.002
        BCBS of Kansas City retail claim data
              KC0000046
              KC0005059
              KC0005070
              KC0005070.001
        Coventry retail claim data
              CVH000185
        Gateway retail claim data
              GWY006137
        General Electric Life retail claim data
              No bates numbers exist
        Harvard Pilgrim retail claim data
              HPH000811
              HPH000812
        HIP of New York medical claim data
              No bates numbers exist
        HIP of New York retail claim data
              HIP0170
        Humana medical claim data
              HUM02392A
        Humana retail claim data
              HUM000913
        PreferredOne retail claim data
              No bates number given
        TCBW retail claim data
              TCBW 04390
        Teachers retail claim data
              PFTHW 0156
        Teamsters retail claim data
              THWF 1730
        UPMC retail claim data
              No bates number given

-----Original Message-----
From: Thomas Sobol
Sent: November 09, 2004 5:31 PM
To: Kimberly Harris (E-mail); 'Edwards, Steven M.'; Scott Wise (E-mail)
Cc: 'Allan Hoffman (E-mail)'; 'Jennifer Sprengel (E-mail)'; Steve Berman
Subject: RE: Gaier Deposition

I need to follow up with an additional item which requires immediate

attention.

My partner Steve Berman has requested from defendants the claims data
and work papers used by Young and by Gaier.  My understanding is that
the defendants answer to this request was that you will not provide it.
A part of the purported response is that copies were made available
during the course of discovery and so there was no obligation to produce
it now.

This is not an acceptable response.  first, the data as used by the
experts is required to be produced.  We did this for Hartman; it is
required of defendants.  Second, it imposes a completely unnecessary
burden on us and our experts to guess at what specific data set, or
subset of a data set, your experts used.  Moreover, the experts' work
papers of how they arrived at their conclusions is similarly required to
be produced.  All of this is all the more a requirement given the
document reliance dump made by defendants -- rather than provide the
documents in a coherent fashion, you produced CDs that were confusingly
formatted and required days of blowing back paper into more than three
DOZEN binders.

So, here is where we are: the defendants shall produce to my office by
the close of business tomorrow a COMPLETE set of ALL data sets in a
useable form along with all work papers of the defendants' experts.
This includes but is not limited to ALL data sets from which the
purported dispersion charts are based, and shall include the Medispan
data that Gaeir has testified he relied upon.

If you do not agree to this proposal by noon tomorrow, we will bring the
issue of the defendants' non-production of reliance material to the
attention of the court, including but not limited to the manner by which
this information was dumped on us.

Thank you.

Thomas M. Sobol
HAGENS BERMAN LLP
One Main Street
4th Floor
Cambridge, MA 02142
tom@hagens-berman.com
(617) 482-3700
(617) 482-3003 (Fax)

CONFIDENTIAL NOTE:  The information contained in and documents
accompanying this e-mail transmission are confidential and/or legally
privileged materials from the law firm of Hagens Berman LLP.  The
information is intended only for the use of the individual(s) or
entity(ies) addressed in this e-mail transmission.  If you are not the
intended recipient, you are hereby notified that any disclosure,
copying, distribution or the taking of any action in reliance of the
contents of this information is strictly prohibited, and that the
documents attached should be discarded immediately.


-----Original Message-----
From: Thomas Sobol
Sent: November 09, 2004 4:42 PM
To: 'Edwards, Steven M.'
Cc: Allan Hoffman (E-mail); Jennifer Sprengel (E-mail); Steve Berman
Subject: RE: Gaier Deposition


Thanks.

-----Original Message-----
From: Edwards, Steven M. [mailto:SMEdwards@HHLAW.com]

Sent: November 09, 2004 4:01 PM
To: Thomas Sobol
Subject: Gaier Deposition


Eric Gaier has determined that his report and deposition in Confre
Cellars are not subject to any confidentiality order so I attach them
herewith.  I am still working on the Medispan issue.


*********************************************************************
This electronic message transmission contains information from Bates
White, LLC which may be confidential or privileged.  The information is
intended to be for the use of the individual or entity named above.  If
you are not the intended recipient, be aware that any disclosure,
copying, distribution or use of the contents of this information is
prohibited.  If you have received this electronic transmission in error,
please notify us by telephone (202) 216-1142 or by electronic mail
eric.gaier@bateswhite.com immediately.
*********************************************************************


This electronic message transmission contains information from the
law firm of Hogan & Hartson L.L.P. which may be confidential or
privileged.  The information is intended to be for the use of the
individual or entity named above.  If you are not the intended
recipient, be aware that any disclosure, copying, distribution or
use of the contents of this information is prohibited.

If you have received this electronic transmission in error,
please notify us by telephone (1-202-637-5600) or by
electronic mail (PostMaster@HHLAW.COM) immediately.


This electronic message transmission contains information from the
law firm of Hogan & Hartson L.L.P. which may be confidential or
privileged.  The information is intended to be for the use of the
individual or entity named above.  If you are not the intended
recipient, be aware that any disclosure, copying, distribution or
use of the contents of this information is prohibited.

If you have received this electronic transmission in error,
please notify us by telephone (1-202-637-5600) or by
electronic mail (PostMaster@HHLAW.COM) immediately.



## Edwards, Steven M.

| | |
|---|---|
| **From:** | Steve Berman [steve@hagens-berman.com] |
| **Sent:** | Tuesday, November 09, 2004 8:36 AM |
| **To:** | Thomas Sobol; Michael S. Flynn |
| **Cc:** | Sean Matt; Scott Wise (E-mail); Kimberly Harris (E-mail); Edwards, Steven M. |
| **Subject:** | RE: Young Exhibit Volumes and Gaeir follow up |

this is fricking outrageous should we ask judge to set class schedule back

-----Original Message-----
From: Thomas Sobol
Sent: Tuesday, November 09, 2004 5:10 AM
To: 'Michael S. Flynn'
Cc: Steve Berman; Sean Matt; Scott Wise (E-mail); Kimberly Harris (E-mail); Steven M.
Edwards (E-mail)
Subject: RE: Young Exhibit Volumes and Gaeir follow up


As to your paragraph four, see the exhibits in the "public literature" section, starting
with he documents dated in 1968 going forward.  There are not legible.

Of course we will review what you have sent and get back to you regarding the balance.

I also note that I spoke to Steve Edwards yesterday (he called me and indicated that he
was the handler for Gaier).  Steve called me to address my concern regarding the omission
of the Medispan database in the Gaeir reliance materials the defendants produced.  Gaeir
testifies that he relied upon the Medispan database in formulating his opinions, and of
course need what he relied upon to cross examine him (this database is particularly
critical to the cross examination).  Edwards indicated that there are license restrictions
on the use of the database, but maybe it is only a financial issue that the vendor has.  I
indicated to Steve that the problem was the defendants' problem; the defendants' expert
relied on the material, testifies that he relied upon it, and so he needs to produce it in
the same form he had it available to himself. SE knows my position, and he is looking into
whether, and if so how, the defendants will be able to produce it.

Thanks.

Thomas M. Sobol
HAGENS BERMAN LLP
One Main Street
4th Floor
Cambridge, MA 02142
tom@hagens-berman.com
(617) 482-3700
(617) 482-3003 (Fax)

CONFIDENTIAL NOTE:  The information contained in and documents accompanying this e-mail
transmission are confidential and/or legally privileged materials from the law firm of
Hagens Berman LLP.  The information is intended only for the use of the individual(s) or
entity(ies) addressed in this e-mail transmission.  If you are not the intended recipient,
you are hereby notified that any disclosure, copying, distribution or the taking of any
action in reliance of the contents of this information is strictly prohibited, and that
the documents attached should be discarded immediately.


-----Original Message-----
From: Michael S. Flynn [mailto:mflynn@dpw.com]
Sent: November 08, 2004 8:23 PM
To: Thomas Sobol; Steve Berman; Sean Matt
Subject: Young Exhibit Volumes


I'm writing to address several issues you have raised with respect to the exhibits to the

1

Young Declaration.  As an initial matter, indices to Volumes II and III were inadvertently omitted from the exhibit volumes.  These indices are attached, and should solve many, if not all, of problems you are having in locating materials in Volumes II and III.  With respect to Volume I, as the Young Report itself indicates, Volume I does not contain the complete deposition transcript, discovery document or publicly available document cited, but just the specific page or pages cited.  There are 135 tabs in Volume I, Section A, which correspond to each footnote in the Young Report.  There are 18 tabs in Volume I, Section B, which correspond to each exhibit.

I think some of the issues you have raised reflect a misunderstanding as to the organization of the Young exhibit volumes.  Again, the attached indices for Volumes II and III should be of assistance in this regard.  As indicated in the Young Declaration itself, for ease of reference, Volume I contains only the specific material cited in each footnote and each exhibit of the Young Declaration.   Volumes II and III contain the full copy of cited material.  Volume II, Section A contains in alphabetical order the full copy of deposition transcripts; Volume II, Section B contains a full copy of documents produced in discovery cited in the Young Report (the tabs are 1-27); and Volume II, Section C contains a full copy of documents cited in exhibits to the Young Report (the tab numbers correspond to the exhibit numbers for ease of tracking).  Volume III, Section A contains a full copy of publicly available documents cited in the Young Report (the tabs are 1-27); Volume III, Section B contains a full copy of publicly available documents cited in exhibits to the Young Report (the tab numbers correspond to the exhibit numbers for ease of tracking).

Accordingly, in response to your question of earlier today regarding the Gilson and Ignaczak declarations, the complete declarations of Thomas Gilson and Edward Ignaczak are located in Volume II, Section B Tab 18 and Volume II Section B Tab 20, respectively.  The electronic version of volume II provided to you contains files bearing the names of Gilson and Ignaczak, so the complete copy can be located on the electronic version by opening the files bearing those two names.  If you cannot locate these documents in either the hard copy or electronic versions of Volume II, please let us know.  As indicated above and explained in the Young Report, the complete version of each declarations is not contained in Volume I, but is contained, as indicated, in Volume II.

To respond to Tom's e-mail from earlier today regarding difficult to read copies, we have endeavored to provide you with the most legible copies we have of the all the documents contained in the volumes.  To the extent there are nonetheless illegible copies of a particular document, we will work as quickly as we can to get you a more legible copy.  We are, however, having trouble determining exactly which documents appear to be unreadable due to "highlighting."  If you would identify the specific documents you are having difficulty reading by volume and tab number, we will try to get you another (and hopefully better copy) as quickly as possible.

Finally, regarding Steve's request for electronic data relied upon by Gaier and Young, all data relied upon in these declarations were produced by plaintiffs, defendants or third parties in this litigation.  Accordingly, plaintiffs already have the data.  In many cases, the specific bates number of the relevant CD is referenced in the declaration.  If you are having trouble locating specific CDs, we will endeavor to send you another copy, as we did with the Oxford CD that Tom requested.

Please let me know if you have any additional questions.



November 10, 2004

***VIA E-MAIL AND VERILAW***

Thomas M. Sobol, Esq.
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA 02110

Steve W. Berman, Esq.
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

> **Re:   In re Pharmaceutical Industry Average Wholesale Price
> Litigation, MDL No. 1456**

Dear Tom and Steve:

In our subpoenas to your experts we requested "[a]ll documents, notes
or memorandum relating to . . . consideration or evaluation of materials furnished
to you (or developed by you) in connection with the Declarations."  You objected to
producing these materials, and in my letter to you of September 25, 2004, I
confirmed that "you view any workpapers (e.g., documents that would show the
calculations underlying a chart) as drafts that do not have to be produced".  In that
letter, I agreed to that limitation and others "conditioned on the understanding that
the limitation agreed to with respect to Hartman and Schondelmeyer will also apply
to defendants' experts".

Notwithstanding that agreement, we have received a barrage of e-
mails from you in the last few days demanding that our experts produce such
documents "immediately".  In an effort to avoid having to go to the Court on this
issue, and based on the understanding that you will now produce similar materials
that have been prepared or used by your experts, we have agreed to produce (1)

Thomas M. Sobol, Esq.
Steve W. Berman, Esq.
November 10, 2004
Page 2

another copy of the raw data (which you already have, but appear to have problems locating or using); (2) a copy of the data as "scrubbed" by the experts to put it in a standard format; and (3) a copy of any programs written by the experts or queries used by the experts to produce the charts and graphs that appear in their reports. We have been informed by our experts that the hope to be in a position to send those materials out by federal express tomorrow evening so you receive them on Friday.

Sincerely yours,

Steven M. Edwards

SME/cjl

cc : All Counsel (via Verilaw)