## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) AVERAGE WHOLESALE PRICE ) LITIGATION ) | MDL NO. 1456 Civil Action No. 01-12257-PBS |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO THE ) AMENDED MASTER CONSOLIDATED ) CLASS ACTION ) | Chief Mag. Judge Marianne B. Bowler |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL THIRD PARTY HEALTH NET, INC. TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENA

## PRELIMINARY STATEMENT

Defendants to the Amended Master Consolidated Class Action Complaint ("defendants") bring this motion to compel third party health plan Health Net, Inc. ("Health Net") to produce documents responsive to defendants' subpoena, which was originally served in November 2003. To date, Health Net has produced only a selection of heavily redacted documents and has refused to produce other directly responsive documents.

Health Net's position is untenable. It has claimed that the protective orders issued by this Court will not safeguard its confidential information, but has suggested no amendments to the orders. Nor has it provided any explanation for why its documents deserve any greater protection than those of other third parties that have produced their documents without redaction subject to the same protective orders. And it has provided no reason for refusing to produce additional responsive documents that its own witnesses testified about at deposition.

Health Net's position is particularly egregious given that this discovery has already been specifically so-ordered by this Court. In December 2003, the plaintiffs moved to quash all subpoenas served by defendants on health plans. Defendants opposed the motion, emphasizing the relevance of the discovery sought to plaintiffs' allegations. In March 2004, this Court denied plaintiffs' motion and permitted defendants to pursue the requested documents and depositions. Health Net is aware of that ruling, but maintains its position. The Court recently reaffirmed that ruling when granting defendants' motion to compel against third parties Aetna, Cigna and Humana.

Defendants respectfully request that this Court hold Health Net to the same standard as the other third parties subpoenaed in this litigation, compelling it to produce an un-

redacted copy of its production and claims data, and all additional responsive documents identified by Health Net witnesses at their depositions.

## ARGUMENT

Under the multidistrict litigation statute, this Court has the authority to compel compliance with subpoenas relating to this matter. <u>See</u> 28 U.S.C. § 1407(b); <u>In re Corrugated Container Antitrust Litigation</u>, 644 F.2d 70, 74 n.6 (2d Cir. 1981); <u>In re Subpoena Issued to Boies, Schiller & Flexner LLP</u>, No. M8-85, 2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003); <u>United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.</u>, 238 F. Supp. 2d 270, 273 (D.D.C. 2002); <u>In re Factor VIII or IX Concentrate Blood Products Litigation</u>, 174 F.R.D. 412, 415 (N.D. Ill. 1997); <u>In re Sunrise Securities Litigation</u>, 130 F.R.D. 560, 586 (E.D. Pa. 1989); <u>In re San Juan DuPont Plaza Hotel Fire Litigation</u>, 117 F.R.D. 30, 32 (D.P.R. 1987).

1. **Health Net's Refusal to Produce Documents and Claims Data Without Redactions is Untenable**

Health Net has made three productions of documents to date in response to defendants subpoena.[1] The first was made on July 28, 2004; the second on September 2, 2004; and the third on October 8, 2004. All three productions were heavily redacted of information central to this litigation. For example, Health Net redacted all reimbursement methodologies from its contracts. This is particularly egregious because defendants only agreed to accept a sample of contracts rather than all contracts on condition that they be representative of all reimbursement methodologies employed by Health Net. <u>See</u> Ex. C. Health Net's only

---

[1] Defendants subpoena is attached as Ex. A That subpoena was originally served in November 2003. This revised subpoena at Ex. A was served in April 2004 expanding the list of drugs at issue in accordance with the court's decision expanding the list of drugs on which discovery was proceeding. The same subpoena was re-served with a new deposition date and deposition subjects in September 2004 once the deposition dates were finalized. Health Net served voluminous objections to the subpoena dated May 4, 2004 and then again on October 4, 2004. <u>See</u> Ex. B.

1122563v3

justification for this redaction was that the documents contained "Health Net's commercially

sensitive proprietary and financial information." See Ex. D.[2]

Upon receiving Health Net's first production, defendants emphasized by letter

that the production was deficient. See July 28, 2004 letter attached as Ex. E. On the issue of

redactions, that letter pointed out that:

> these contracts **do not reflect Health Net's reimbursement
> methodologies**. Rather, reimbursement methodologies, dispensing
> fees, payment amounts and all other relevant information have
> been redacted from the contracts produced, or in some cases –
> unclear due to Health Net's failure to stamp areas where redactions
> have been made – it appears that blank templates have been
> produced.

The letter also addressed Health Net's counsel's purported reasons for making those redactions:

> Mr. Selfridge contends that these redactions are necessary because
> "the financial information in Health Net's contracts will be shared
> among the various parties to this litigation, including companies
> with whom Health Net has negotiated differing reimbursement
> arrangements." This is incorrect, because as we have discussed on
> numerous occasions highly confidential information is limited to
> counsel pursuant to the terms of the protective order. You are in
> possession of that order. Furthermore, as you also know, neither
> pharmacies nor providers are parties to this litigation. And as we
> have discussed more than once, Judge Saris has already rejected a
> motion for a protective order regarding this subpoena and ordered
> discovery to proceed.

See also Protective Order dated December 13, 2002 attached as Ex. F.

Despite this letter, Health Net continued to refuse to produce un-redacted copies

of its production. Instead, it made similar redactions in its subsequent productions. Defendants

made painstaking efforts to resolve this issue before bringing it before the Court. Indeed,

defendants had communications with Health Net expressly detailing the reasons why redaction

---

[2] Health Net also claimed it was entitled to redact rebate contracts with manufacturers because the
defendants already have un-redacted copies of those. Id. However, as Health Net has long been aware,
defendants have narrowed their requests and are no longer seeking Health Net's rebate contracts with
manufacturers.

1122563v3

was unacceptable and why the information redacted went to the core of the litigation.

Defendants also pointed out that the Court had already stated in Case Management Order 10 that

no redactions from the parties would be allowed other than for privilege – logic that applies fully

to third parties equally safeguarded by the protective orders in place. See CMO 10 at ¶ 5,

attached as Ex. G.[3]   Health Net did not change its position, even when told that defendants

considered the issue ripe for adjudication. To date, Health Net has continued to refuse to produce

an un-redacted copy of its document production.

A related impasse has been reached with regards to Health Net's claims of

confidentiality in relation to claims data. Defendants' original subpoena included a demand for

claims data. Although the Court entered a HIPAA complaint protective order on June 8, 2004

Health Net insisted that its protections were insufficient. See HIPAA compliant order attached

as Exhibit J. Defendants sought to accommodate Health Net's concerns in their July 28, 2004

letter. While emphasizing that the HIPAA complaint protective order obviated the need for any

redaction, defendants nonetheless offering Health Net the accommodation of allowing the use of

a consistent scrambler algorithm to mask individual patient's identities. See Ex. E.   Health Net

did not respond.  It then equally failed to timely respond to numerous follow up letters on the

issue of claims data. See e.g., Ex. K and Ex. L.  Finally, on October 29, 2004 Health Net

responded, claiming it would also need to mask claims data revealing its reimbursement

methodologies. See Ex. M.  Defendants responded that this was unacceptable, and that this issue

---

[3] Health Net has also watermarked every page its production with the stamp "Highly Confidential MDL 1456 Litigation."  The stamp used covers the length of every production page and obscures text. Health Net has used this watermark despite being explicitly notified by defendants that the Court explicitly forbade the use of such stamps in CMO 10.  See email to counsel for Health Net attached as Ex. H; letter to counsel for Health Net dated November 3, 2004 attached as Ex. I.  See also CMO 10 ¶ 5, attached as Ex. G ("no stamps of 'confidential' or the like shall be on the text of a document.").

would also be raised with the court for adjudication as it is related to Health Net's redactions of other documents. <u>See</u> November 3, 2004 letter attached as Ex. I.

**2.      Health Net's Refusal to Produce Relevant**
**Documents Described by its Witnesses**

On October 8, defendants deposed two Health Net witnesses: Virginia E. White, Senior Vice President, Chief Clinical Officer, Health Net Pharmaceutical Services and Michael Baca, Director of Finance, Health Net Pharmaceutical Services. In the course of those depositions, the witnesses revealed the existence of numerous relevant and responsive documents that Health Net has not produced. Defendants sent Health Net a letter on October 15, 2004 listing the documents and seeking their production. <u>See</u> October 15, 2004 letter attached as Ex. L.

For example, defendants sought the production of a representative sample of pharmacy contracts, as Health Net's own witness had testified that the template produced was not representative of Health Net's contracts with pharmacies. Defendants had earlier cautioned Health Net that the representative nature of the sample of contracts produced would be tested at deposition. Similarly, the Health Net witnesses testified about numerous additional relevant documents including documents produced by Health Net in another AWP litigation; the existence of documents relating to Health Net's consideration of using alternative methodologies as a basis for reimbursement and their reasons for continuing to use AWP; and the existence of an additional mail order contract that had not been produced. The letter also pointed out that Health Net's original production had missing pages. Defendants sought production of these and additional categories of similarly responsive documents in that letter, detailing specific transcript references to facilitate production. Health Net's responsive letter of October 29, 2004 simply ignored all these requests. <u>See</u> Ex. M.

- 5 -

On November 3, 2004 defendants again wrote to Health Net, stating that in view of Health Net's failure to respond to the October 15, 2004 letter seeking documents, defendants understood that Health Net was refusing to produce the documents identified in that letter and saw the issue as ripe for adjudication.  Defendants asked Health Net to advise them immediately if that understanding was incorrect.  See Ex. I.  Health Net did not respond.

3.     **This Court has Already Ordered this Discovery to Proceed**

In December 2003, plaintiffs moved for a protective order to quash defendants' subpoenas.  See Ex. N.  Plaintiffs argued that the discovery was irrelevant and would burden absent putative class members.  Id.  Defendants opposed the motion, arguing, *inter alia*, that the discovery was required to show that Health Plans were not misled as to the meaning of AWP.  See Ex. O.  As to the issue of burden, defendants pointed out that the Health Plans were large, sophisticated corporate entities, which stood to earn millions of dollars in the event that plaintiffs prevailed on their claims.  Id.   Defendants disclosed to the health plans, including Health Net, plaintiffs' objections and motion for a protective order to afford them the opportunity to join plaintiffs' motion.  None of the subpoenaed health plans elected to join the motion, but all refused to comply with the defendants' demands while plaintiffs' motion was pending.  After weighing the arguments, the Court denied plaintiffs' motion and allowed defendants to proceed with their subpoenas for documents and depositions.  See Ex. P.

That decision was recently again before the Court as regards a motion to compel health plans Aetna, Cigna and Humana to produce deposition witnesses.  Defendants argued that the Court had already determined that defendants were entitled to this discovery in its April 26, 2004 order and the Court again agreed, reaffirming the previous order and ordering those health plans to produce deposition witnesses.  See Ex. Q.

- 6 -

## CONCLUSION

For the foregoing reasons, defendants' motion to compel should be granted. Health Net should be ordered to sent defendants a new copy of their entire production without redactions or watermarks and including missing pages, and to produce all additional responsive documents identified by their own witnesses as detailed in defendants' October 15, 2004 letter to Health Net.

Respectfully submitted,

Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

*Attorneys for Defendants Johnson &
Johnson, Centocor Inc. Ortho Biotech
Products L.P., Janssen Pharmaceutica L.P.
and McNeil-PPC on behalf of all defendants
to the Amended Master Consolidated Class
Action Complaint*

Dated:  November 17, 2004

1122563v1