# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456<br>) Civil Action N0. 01-12257-PBS<br>)<br>) Judge Patti B. Saris<br>)<br>) Chief Magistrate Judge Marianne  Bowler |
| THIS DOCUMENT RELATES TO THE AMENDED MASTER CONSOLIDATED CLASS ACTION | )<br>)<br>)<br>) |

# THIRD PARTY HEALTH NET, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA

Defendant Health Net, Inc. ("Health Net") submits this opposition to the motion filed by the Defendants to the Amended Master Consolidated Class Action Complaint seeking an order compelling Health Net to produce documents pursuant to the defendants' subpoena duces tecum dated April 30, 2004 which superceded a concededly overbroad albeit much narrower subpoenas duces tecum that had already been served.

## I.      REQUEST FOR ORAL ARGUMENT.

Pursuant to Local Rule 7.1(d), Health Net hereby requests oral argument on the issues presented by defendants' motion.

## II.     PRELIMINARY STATEMENT.

Health Net is a stranger to this action.   It is not a party in any capacity at this time. Defendants served Health Net with a subpoena duces tecum dated April 30, 2004 that can best be described as an "all documents" subpoena. (Moving papers, Ex. A.) The subpoena contains twenty-six individual requests, each one respecting 361 different pharmaceuticals, to which fifty-six fields of inquiry apply, as stated in the covering letter from defendants' counsel dated April 30, 2004. (Id.) The subpoena thus requests production of an astronomically large pool of responsive documentation. In addition, by requesting claims data, the subpoena implicates patient privacy rights provided by both federal law and California state law.   Finally, by requesting the production of Health Net's contracts with its pharmacy and physician vendors, the subpoena seeks confidential trade secrets described by one recent case as "the lifeblood of [a business entity's] financial well being." (In re Vitamins Antitrust Litigation, 267 F. Supp. 2d 738, 741-42 (S.D. Ohio 2003).)

1

After serving timely and appropriate objections to the subpoena, Health Net resumed a lengthy process of meeting and conferring to resolve its disputes with defendants by voluntarily answering certain informal questions formulated by defendants' counsel, by voluntarily producing its vendor contracts after redacting its confidential trade secrets, and by voluntarily producing three witnesses for deposition. (Calhoun Decl., ¶¶ 11-13, Ex.2.) At plaintiff's request, Health Net withheld production of its claims data, pending resolution of the scope of that particular production. (Calhoun Decl., ¶ 12.) However, despite Health Net's good faith efforts at compromise, defendants were never satisfied, and now, by means of their instant motion, they seek production of everything demanded by their "all documents" subpoena.

For the reasons stated below, the Court should deny defendants' motion outright or alternatively require that defendants: (1) Identify why they need the data they claim is essential so that Health Net can work with defendants' consultants to provide them with as much information as Health Net can lawfully disclose while at the same time minimizing the burden of production on Health Net; (2) move for and obtain protective orders in this Court and in California consistent with California statutory and case law protecting the privacy of confidential, personal medical information maintained by entities subject to California law, like Health Net; (3) notify each person whose records are sought by the subpoena duces tecum as required by California statutory and case law unless defendants agree to forego access to any personally identifying information and access to records involving treatment for certain illnesses for which California statutory and case law provides heightened protection, including but not limited to: Human Immuno Deficiency Virus ("HIV"); Acquired Immuno Deficiency Syndrome ("HIV"); Sexually Transmitted Diseases ("STD") and mental illness. The reason for requiring protective orders to be entered in California is to allow

2

subscribers to seek redress without having to travel across the country and retain local counsel in Massachusetts to enforce rights bestowed on them by the Constitution and public laws of the State of California.

## III.    STATEMENT OF FACTS.

As noted above, defendants served Health Net with the subpoena duces tecum at issue in this motion requesting production of twenty-six categories of documentation respecting 361 pharmaceuticals subject to fifty-six fields of inquiry. Health Net served its objections to defendants' subpoena on May 4, 2004, and in an effort to resolve those objections, it participated in a lengthy process of meeting and conferring with defendants, which continued until just recently. At Health Net's suggestion, that process of meeting and conferring included responses to informal questions, production in redacted format of some of the contracts sought by defendants' subpoena, and depositions of Health Net personnel, all voluntarily undertaken by Health Net. This is the same methodology that Health Net's counsel successfully employed to resolve another client's objections to a substantially identical subpoena served in this same action, and Health Net has advised defendants of that successful resolution. (Calhoun Decl., ¶¶ 10 & 14, Ex.3.)

On July 16, 2004, as a part of the process of meeting and conferring, Health Net sent a 22-page letter to defendants (the "7/16/04 Letter") setting forth in detail its positions respecting the production of its claims data and contracts. (Calhoun Decl., ¶11, Ex.2.) Defendants never addressed the positions Health Net carefully explained in that letter, and remarkably, defendants did not even attach that letter as an exhibit to their motion. Instead, defendants simply continued to insist that Health Net comply with their subpoena in all respects, without compromise. Not surprisingly, this

3

motion has now resulted.

**IV. THIS COURT SHOULD DEFER DECISION ON THIS MOTION TO THE APPROPRIATE CALIFORNIA COURT BECAUSE HIPAA AND THIS COURT'S PROTECTIVE ORDER ALLOW HEALTH NET TO WITHHOLD FROM PRODUCTION ANY INFORMATION DEEMED PRIVATE AND CONFIDENTIAL UNDER CALIFORNIA LAW THAT IS MORE PROTECTIVE OF MEDICAL PRIVACY THAN IS HIPAA AND TO ASSURE CONSISTENT ENFORCEMENT OF THOSE RIGHTS A COURT IN A CALIFORNIA VENUE SHOULD DECIDE THEM.**

Pursuant to FED. R. CIV. P. 45(a)(2), "a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made." Enforcement of subpoenas is controlled by FED. R. CIV. P. 37(a)(1), which provides in pertinent part that "[a]n application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or it to be, taken." Thus, if this action were normal litigation, the District of Massachusetts were unquestionably not have jurisdiction over Health Net.

In multidistrict litigation ("MDL"), 28 U.S.C. § 1407 also applies. Subsection (b) of § 1407 provides in pertinent part that "[t]he judge or judges to whom such actions are assigned ... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." In light of FED. R. CIV. P. 45(a)(2) and FED. R. CIV. P. 37(a)(1), however, "[i]t is not entirely a settled question whether an MDL court may enforce a subpoena duces tecum issued by another court under the grant of authority of § 1407 to act as a judge of the district from which the subpoena issued." United States ex rel.

4

Pogue v. Diabetes Treatment Centers of America, Inc., 238 F. Supp. 2d 270, 273 (D.D.C. 2002).

A number of cases, cited by defendants on page 2 their memorandum of law, hold that an MDL judge has the authority to enforce a subpoena duces tecum by virtue of 28 U.S.C. § 1407(b). None of those cases were decided by the District of Massachusetts. At least with respect to the issues raised by defendants' motion, the better reasoned authority, however, holds to the contrary. In VISX, Inc. v. Nidek Co., 208 F.R.D. 615 (N.D. Cal. 2002), the court holds that an MDL judge should not enforce a subpoena duces tecum, stating as follows:

> The flaw in VISX's argument is that 1407(b) expands a transferee court's discovery powers only to pretrial depositions. Had Congress wanted to expand these powers to document subpoenas, it would have said so. VISX has not produced, and the court has not found, any legislative history or commentary to suggest Congress meant something other than what it said.

Id. at 616 (footnote omitted). The cases holding that an MDL judge does have the authority to enforce a subpoena duces tecum simply assert without analysis that the term "depositions" as used in § 1407(b) include document subpoenas. E.g., United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc., supra, 238 F. Supp. 2d at 274; In re Factor VIII or IX Concentrate Blood Products Litigation, 174 F.R.D. 412, 415 (N.D. Ill. 1997). The rationale in VISX, Inc. v. Nidek Co., supra, is particularly compelling here where both HIPAA and this Court's protective order recognize that Health Net's obligations to produce documents, whether in electronic or tangible form, are governed not by federal substantive law, but rather, by a plethora of constitutional, statutory and common law generated as the result of initiatives passed by the California voters (e.g., Article 1 Sec.

1 of the California Constitution) the Legislature (*e.g.,*Cal. Ins. Code § 791.13) and the Courts (*e.g.,* Permanent General Assurance Corp. v. Superior Court, 122 Cal. App. 4th (2004).)

This Court should follow the approach suggested by the Court in VISX, Inc. v. Nidek Co., supra, particularly because both this Court's protective order and HIPAA expressly defer to more protective California law and on those bases decline to exercise jurisdiction over defendants' subpoena duces tecum to Health Net. Doing so will leave the enforcement of the subpoena in the hands of a district judge from the Central District of California, who would be better suited to decide the following issues of California law and the rights of California residents and others entitled to assert rights afforded them to protect confidential, personal medical information in the custody and control of a California domiciled Health Maintenance Organization, like Health Net. These issues were all presented by Health Net's objections to the subpoena.

## V.  HEALTH NET'S CLAIMS DATA IS PRIVILEGED FROM DISCOVERY UNDER CALIFORNIA LAW.

Health Net asserted the California law privacy rights of its member insureds in its objections to defendants' subpoena. These rights exist pursuant to Article I, Section 1 of the California Constitution and a variety of statutory law including, but not limited to, that set forth in the California Civil Code, the California Code of Civil Procedure, the California Health & Safety Code and the California Insurance Code. The existence of the HIPAA-sensitive protective order in this action dated June 8, 2004 which did not exist when the original subpoena or the April 30, 2004 Subpoena were issued does not suffice by itself to protect those state law rights. Indeed, as paragraph V.(C) of the HIPAA-sensitive protective order itself recognizes, "Notwithstanding any

6

provision of this Order to the contrary, in accordance with any applicable Federal, State, or local laws that afford heightened protection to certain categories of confidential health information, . . . the producing party may completely exclude from production any information afforded heightened protection by such Federal, State, or local laws."

Health Net has done precisely that which is authorized under this Court's protective order. It, as the "producing party" has withheld from production all confidential, personal, medical information pursuant to "State . . . laws that afford heightened protection to certain categories of confidential health information." Health Net has offered alternative narrower production of information about pharmaceutical reimbursement devoid of protected confidential, personal, medical information. It has suggested that defendants comply with California law by obtaining a California law compliant protective order and notifying the subscribers that defendants seek the subscriber's consent to disclosure to defendants of confidential, personal, medical information – a disclosure that can occur with each subscriber's written consent. But defendants will have none of this and refuse to explain why this massively intrusive data dump involving millions of subscribers' confidential, personal, medical information is warranted. No justification is offered as to why defendants need to know that on a date certain John Smith received a treatment for HIV, that the provider was paid an amount equal to the then current AWP for each drug involved minus a fixed percentage plus a dispensing fee and information contained in over fifty other date fields about Mr. Smith and his medical condition.

The California State laws that afford heightened protection for patient privacy are Art. 1, § 1 of the California Constitution, which provides in pertinent part that "[a]ll people ... have inalienable rights ... [including] privacy," and, among other codes, the CAL. INS. CODE § 791.13,

7

which provides in pertinent part that "[a]n insurance institution [such as Health Net] ... shall not disclose any personal or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure is ... with the written authorization of the individual...." Even if State laws such as those contradict HIPAA, they are not superceded by HIPAA. Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 924 (7th Cir. 2004). Instead, in cases of discovery disputes between those seeking production of confidential patient records and the health insurers or medical facilities who possess it, the test is to determine whether the state law patient privacy interests outweigh the probative value of the records. Id., 362 F.3d at 930.

Northwestern Memorial Hospital is the most current authority to apply this test. In that case, a hospital challenged a subpoena issued by the Department of Justice ("DOJ") seeking medical records of patients upon whom late term abortions had been performed, and it based its challenge upon provisions of Illinois state law that were more protective than HIPAA. Id., 362 F.3d at 924. The court found that the DOJ could not articulate what of probative value it hoped to learn from the hospital records. Id., 362 F.3d at 927. Specifically, "What [the DOJ] would like to prove at the trial in New York, to refute Dr. Hammond, is that D & E is always an adequate alternative, from the standpoint of a pregnant woman's health, to the D & X [late term abortion] procedure. But the government has failed to explain how the record of a D & X abortion would show this." Id., 362 F.3d at 930. Similarly, defendants in this action have not been able to articulate how Health Net's patient claims data would assist them in proving their defense. No such articulation appears in defendants' moving papers or in any of their letters which are attached as exhibits to their moving papers.

Northwestern Memorial Hospital strongly upholds the right of health insurers and medical

8

facilities to assert state law patient privacy rights in objecting to discovery. Even though the records at issue in the case were redacted to exclude the patients' names and identifying numbers, there still existed the possibility that "persons of their acquaintance, or skillful 'Googlers,' sifting the information contained in the medical records concerning each patient's medical and sex history, will put two and two together, 'out' the 45 women, and thereby expose them to threats, humiliation, and obloquy." Id., 362 F.3d at 929. That possibility was sufficient to uphold the hospital's objections to the DOJ's discovery.

Similarly, in this action, approximately half of the 361 pharmaceuticals at issue in defendants' subpoena are used to treat medical conditions which implicate it members' privacy rights to a truly extraordinary degree, including ADHD (attention deficit disorder), Alzheimer's disease, amenorrhea, angina, birth control, bladder control, cancer, cardiac conditions, Crohn's disease, depression, diabetes, dialysis, epilepsy, estrogen replacement, hemophilia, hepatitis, high blood pressure, HIV/AIDS, mental health, migraine headaches, muscle relaxation, pain, Parkinson's disease, prostate conditions, schizophrenia, sedation, smoking cessation, testosterone replacement, transplant rejection, and vaginal infections. Health Net made defendants aware of this matter on pages 6 through 17 of the 7/16/04 Letter. (Calhoun Decl., ¶ 11, Ex.2.) Patients have a legally protected privacy interest under California law with respect to the information contained in their medical records. Hill v. National Collegiate Athletic Ass'n, 7 Cal. 4th 1, 41, 26 Cal. Rptr. 2d 834, 860, 865 P.2d 633, 658 (1994).[1] Indeed, the privacy interests surrounding the HIV/AIDS condition are particularly strong. "There can be no doubt that disclosure of HIV positive status may under

---

[1]    See, also, Johnson v. Superior Court, 80 Cal. App. 4th 1050, 1068, 95 Cal. Rptr. 2d 854, 876 (2000) ("A person's medical history undoubtedly falls within the recognized zones of privacy.")

appropriate circumstances be entitled to protection under article 1, section 1 [of the California Constitution]." Urbaniak v. Newton, 226 Cal. App. 3d 1128, 1140, 277 Cal. Rptr. 354, 360 (1990). CAL. HEALTH & SAFETY CODE § 120975 provides that "no person shall be compelled in any state, county, city, or other local civil, criminal, administrative, legislative, or other proceedings to identify or provide identifying characteristics that would identify any individual who is the subject of a blood test to detect antibodies to the probable causative agent of AIDS." Health Net's objections to protect the privacy rights of its member patients who suffer from confidential medical conditions are therefore plainly meritorious under Northwestern Memorial Hospital.

Balancing defendants' inability to articulate any need for confidential patient information against the demonstrated merit of the privacy rights of Health Net's member patients should result in a finding upholding the privacy right objections Health Net has asserted to defendants' subpoena based on California law. Furthermore, even if discovery of private patient claims data were allowed, it could not be conducted under California law until every patient had authorized the release of his or her data. This is especially true following the decision in the recent case of Permanent General Assurance Corp. v. Superior Court, 122 Cal. App. 4th 1493, 19 Cal. Rptr. 3d 597 (2004). Previously, there had been some dispute among the commentators as to whether patients were entitled to receive prior notice that their medical records were being sought, because of the existence of statutory provisions such as CAL. INS. CODE § 791.13(g), which allows the disclosure of personal or privileged information about an insured if the disclosure is "[o]therwise permitted or required by

10

law.[2]  One commentator stated, "Ultimately, this issue may have to be decided by the courts."[3]

Permanent General Assurance has now decided this issue in favor of requiring notice and authorization.  In that case, the plaintiff moved to compel the defendant insurer to produce certain third party vehicle theft claim files.  The court held that the files were discoverable (after all, vehicle theft claims involve information of a far less personal nature than medical records), but it concluded that the plaintiff could discover the files "only after obtaining authorizations from all of the insureds whose claims files are to be produced." Id., 122 Cal. App. 4th at 1495, 19 Cal. Rptr. 3d at 597 (emphasis in original).[4]  Thus, even if defendants could discover Health Net's claims data, the discovery could not proceed prior to entry of a California compliant protective order requiring notice to and authorization from all individual patients from whom defendants sought records. Furthermore, any such order should be issued in California by a California court so that the persons affected by the order would not have to travel across the country to Massachusetts to enforce their rights.  Needless to say, this matter of the application of California privacy laws is a matter in which California courts have a stronger interest than courts located in Massachusetts.

---

[2]        A similar provision appears in CAL. CIV. CODE § 56.10(c)(14), which provides, "The information [i.e., medical information regarding a patient that is in the possession of a provider of health care] may be disclosed when the disclosure is otherwise specifically authorized by law...."

[3]        J. HUSTEAD, J. PRITTS, A. CHOY & J. GOLDMAN, IMPLEMENTING THE FEDERAL HEALTH PRIVACY RULE IN CALIFORNIA:  UPDATE AND SUPPLEMENT TO THE GUIDE FOR HEALTH CARE INSURERS AND HEALTH CARE SERVICE PLANS (Dec. 2002).  The cited publication was prepared for the California Healthcare Foundation.

[4]        The holding in Permanent General Assurance provides an example of a substantive application of the procedural rights provided by CAL. CIV. PROC. CODE § 1985.3, under which Health Net objected to defendants' subpoena.  Section 1985.3 provides that a subpoenaing party must give written notice to any third party consumer when it seeks personal records pertaining to that third party from a witness.

## VI.    IF DISCOVERY OF HEALTH NET'S PATIENT CLAIMS DATA IS PERMITTED, DEFENDANTS MUST PAY THE COSTS OF THAT DISCOVERY.

Much of the claims data defendants seek to discover from Health Net is maintained in electronic format.  The most recent cases to carefully analyze the cost issues presented by the discovery of electronic information are Rowe Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421 (S.D.N.Y. 2002), and Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003).  The two cases formulate similar but not identical tests for determining whether the costs of responding to electronic discovery should be shifted to the requesting party.

"Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests[.]" Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358, 98 S. Ct. 2380, 57 L.E.2d 253 (1978).  Zubulake formulates the more conservative test for cost shifting based on that rule.  However, FED. R. CIV. P. 26(c) provides that "the court . . . may make any order which justice requires to protect a party or person from . . . oppression, or undue burden or expense...."  Rowe's more liberal test for cost shifting is better reasoned, because it heeds the obvious Congressional intent, expressed in the plain language of Rule 26(c), to prevent undue expense as a result of discovery.  Nevertheless, under either test, the cost of defendants' proposed electronic discovery into Health Net's claims data should be shifted to defendants.

Under the Rowe test, the Court should consider the following factors:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data (5) the relative benefit

12

> to the parties of obtaining the information; (6) the total cost
> associated with production; (7) the relative ability of each party to
> control costs and its incentive to do so; and (8) the resources available
> to each party.

205 F.R.D. at 429. Those factors favor shifting to defendants the costs of any claims data discovery

to which defendants are found entitled. Defendants' subpoena is anything but specific because it

seeks a vast range of documentation; there is little likelihood that defendants will discover critical

information because they have not even been able to articulate how Health Net's claims data will

assist them in proving their defense; much of the claims data consists of vestigial patient prescription

data which is no longer current or easily accessible in Health Net's computer system; all benefit from

production of the claims data would accrue to defendants because Health Net is not a party to this

action and therefore has no interest in its outcome; the cost of production is very high because of the

expense of retrieving the electronic data[5]; and only defendants have any ability to control the costs

associated with responding to their subpoena, since they served the subpoena and Health Net is not

a party to the action. Factors 1, 2, 4, 5, 6 and 7 of the Rowe test therefore favor shifting the costs of

production to defendants. Factors 3 and 8 are neutral: Some of the evidence defendants seek might

be available from other witnesses, such as pharmacy benefit managers, and as successful corporate

entities, both defendants and Health Net enjoy substantial resources. So with six factors favoring

Health Net and two neutral factors, the costs of any claims data discovery to which defendants are

found entitled should be shifted to defendants under the Rowe test.

---

[5]     As noted in the 7/16/04 Letter, Health Net has estimated that it will take eight to ten
weeks to retrieve the data sought by defendants' subpoena duces tecum. (Calhoun Decl., ¶ 11, Ex.
2.)

13

The result is the same under the <u>Zubulake</u> test, although for somewhat different reasons. Under <u>Zubulake</u>, the Court should consider the following factors:

> 1. The extent to which the request is specifically tailored to discover relevant information;
>
> 2. The availability of such information from other sources;
>
> 3. The total cost of production, compared to the amount in controversy;
>
> 4. The total cost of production, compared to the resources available to each party;
>
> 5. The relative ability of each party to control costs and its incentive to do so;
>
> 6. The importance of the issues at stake in the litigation; and
>
> 7. The relative benefits to the parties of obtaining the information.

217 F.R.D. at 322. Those factors also favor shifting the costs of any claims data discovery to which defendants are found entitled to defendants themselves. Again, defendants' subpoena is anything but specific because it seeks a vast range of documentation; only defendants have any ability to control the costs associated with responding to their subpoena, since they served the subpoena and Health Net is not a party to the action; and all benefit from production of the claims data would accrue to defendants because Health Net is not a party to this action and therefore has no interest in its outcome. Factors 1, 5 and 7 of the <u>Zubulake</u> test therefore favor shifting the costs of production to defendants. The remaining factors, 2, 3, 4 and 6, are all neutral: Some of the evidence defendants seek might be available from other witnesses; both the cost of discovery of Health Net's claims data

14

and the amount in controversy in this action are high; as successful corporate entities, both defendants and Health Net enjoy substantial resources; and while the issues at stake in this action, being of public interest, are important, defendants have made no effort to conform their discovery to those issues, and cannot articulate a reason why Health Net's patient claims data would assist them in proving their defense. So with three factors favoring Health Net and four neutral factors, the costs of any claims data discovery to which defendants are found entitled should also be shifted to defendants under the Zubulake test.[6/]

Finally, under California law, even a patient must pay for copies of his or her medical records, at the rate of 25¢ per page for paper records and 50¢ per page for records copied from microfilm. CAL. HEALTH & SAFETY CODE § 123110(b). If patients, despite their paramount interest in their own medical records, must pay for copies of those records, then a private litigant who subpoenas such patient records must also pay for the costs of producing the records pursuant to the subpoena.

## VII.    HEALTH NET'S TRADE SECRETS ARE ENTITLED TO PROTECTION FROM DISCOVERY.

In the case of In re Vitamins Antitrust Litigation, supra, 267 F. Supp. 2d 738 (S.D. Ohio 2003), a manufacturer of vitamin products (Aventis) which had been sued in multidistrict antitrust

---

[6]    Zubulake noted that the sixth factor, the importance of the issues at stake in the litigation, "has the potential to predominate over the others." 217 F.R.D. at 323. Nevertheless, no such question of predominance is present in this action under the Zubulake test, because the sixth factor is neutral.

litigation served a subpoena upon a competitor (Akey) seeking records detailing the unit-by-unit composition of each vitamin product Akey sold, which of those units were purchased from the Aventis, Akey's costs relating to the units purchased from Aventis, and the prices Akey charged, calculated on a unit-by-unit basis, and taking into account any other factors that affected its pricing methodology, such as overhead costs and the like. Id., 267 F. Supp. 2d at 739-40. Akey moved to quash the subpoena, arguing that it required the disclosure of trade secrets for which Aventis had no need. Id. at 740. Akey's "primary concern regarding its trade secrets," like that of Health Net in this action, "[was] that they will fall into the hands of those defendants which are its direct competitors," but Aventis contended that Akey would "be fully protected by an existing protective order currently in effect in the antitrust litigation." Id., 267 F. Supp. 2d at 740-41. The protective order, like those on file in this action, allowed parties and non-parties to designate sensitive information as "confidential" and extremely sensitive information, such as trade secrets, as "confidential and lawyers only," in which case dissemination would be limited to counsel, the court, consulting and expert witnesses, and any other individual designated by the party or non-party producing the information. Id., 267 F. Supp. 2d at 741. The court granted Akey's motion to quash the subpoena, explaining as follows:

> First, it seems clear that what Aventis is requesting constitutes trade
> secrets, and that these trade secrets are the lifeblood of Akey's
> financial well being. Second, the fact that certain of the defendants in
> the antitrust litigation are Akey's direct competitors only heightens the
> Court's first concern.

Id., 267 F. Supp. 2d at 741-42.

16

Vitamins Antitrust Litigation is directly on point. Like all health insurers, Health Net negotiates the rates at which it reimburses pharmacies and physicians for pharmaceuticals on an arms-length basis. If those rates become a matter of common knowledge in the marketplace, Health Net will find itself at a competitive disadvantage vis-a-vis other health insurers. If defendants' subpoena is enforced, and Health Net is forced to disclose those rates, it is probable that Health Net's reimbursement rates will become a matter of common knowledge. The protective orders on file in this action cannot protect Health Net from that eventuality, any more than the protective order on file in Vitamins Antitrust Litigation could protect Akey. Information respecting Health Net's reimbursement rates is a trade secret which is the lifeblood of Health Net's financial well being, and the disclosure of that trade secret in this litigation, where various parties are Health Net's competitors, is prohibited under the principle of Vitamins Antitrust Litigation.

Defendants' position in this action, in fact, is even more extreme than Aventis' position in Vitamins Antitrust Litigation. In the 7/16/04 Letter, Health Net asked defendants to articulate why they needed information regarding Health Net's reimbursement rates, writing that defendants "have not yet articulated any compelling reason why [they] need to discover the intimate financial details of Health Net's reimbursement arrangements with the companies with which it contracts. Mr. Mangi's letter of July 2, 2004 is notably silent in that regard." (Calhoun Decl., ¶11, Ex. 2.) Defendants responded by saying, in terms so general as to be meaningless, that such information "go[es] to the core of this litigation." (Moving papers, Ex. E.) More ominously, defendants also said that they required that information in order "to conduct [an] analysis of the competitive dynamic in contracting, which will include studies of agreements produced by the different insurers." (Id.) That is exactly what Health Net seeks to avoid, and has the right to avoid under Vitamins Antitrust

17

Litigation.

Although defendants have never clearly articulated why they want information regarding Health Net's rates of reimbursement for pharmaceuticals, their theory of defense seems to be that the discount from average wholesale price ("AWP") that health insurers employ in setting their reimbursement rates is intended to cancel out the difference between their wholesale acquisition costs and reimbursement rates for the pharmaceuticals they purchase. (Calhoun Decl., ¶ 13.) If so, defendants only need to know the formula by which insurers such as Health Net set reimbursement rates, not the actual percentage discounts themselves. Health Net has already produced that information to defendants, in the form of its contracts showing the formula, with only the percentage discount redacted. (Calhoun Decl., ¶ 12.)[7] Revealing the actual percentage discount itself would deprive Health Net of its ability to compete in the marketplace, and as noted above, defendants have never articulated, either in their instant motion or in any of the correspondence attached as exhibits thereto, why they need to know the actual percentage discounts.[8]

Finally, defendants' attempt to secure information regarding Health Net's reimbursement rates is flatly anti-competitive. In light of the foregoing, defendants' only possible reason for wanting that information, especially at the present stage of this action, is to compromise Health Net's

---

[7]     Generally speaking, the contracts show reimbursement formulas in the format of AWP minus a redacted percentage.

[8]     Knowledge of Health Net's actual percentage discounts has no relevance to any issue of liability in this action. The only conceivable relevance it could have is to the issue of damages. At such time as the issue of damages becomes relevant in this action, information regarding Health Net's actual percentage discounts could be disclosed to a special master appointed for the purpose of determining damages. Such a procedure would safeguard Health Net's trade secrets, as well as those of countless other third parties, while still allowing damage computations to be accurately made.

18

ability to compete in the marketplace.  However, once Health Net's lowest reimbursement rate becomes a matter of public knowledge, all of its pharmacy and physician vendors will insist on receiving that same, low rate.  The end result of that process would be to increase the cost of pharmaceuticals to consumers.

## VIII.  CONCLUSION.

Health Net did not just object to defendants' subpoena and then attempt to stonewall defendants' discovery.  To the contrary, Health Net tried to work with defendants and to produce to them the documents they are entitled to receive while respecting both Health Net's rights and the rights of its member patients as described above.  To that end, upon its own proposal, Health Net answered informal questions formulated by defendants' counsel, voluntarily produced documents to defendants notwithstanding its objections, and produced three of its employees for voluntary depositions.  Indeed, this same methodology resulted in the resolution of the witness's objections to a substantially identical subpoena served on another one of the undersigned counsel's clients in this same litigation by the firm of Davis, Polk & Wardwell.  But defendants were never satisfied with Health Net's efforts to compromise the issues presented by its objections, and they have now tried to perform an end run around those issues by filing their mostly boilerplate motion, which by simply requesting that their subpoena be enforced seeks to abrogate the compromises the parties have reached to this point.  Defendants claim in so doing that Health Net's position is "particularly egregious" because the issues of this motion have already been decided in a prior motion to quash

brought by the plaintiffs in this action,[1] but that is of course untrue:  The motion of which

defendants speak was denied on standing grounds, upon the theory that health plans such as

Health Net are in a position to protect their own interests.  Health Net has of course done that by

asserting its objections to defendants' subpoena and by attempting to compromise the issues

presented by those objections.

Thus, for the reasons stated above, Health Net respectfully requests that defendants'

instant motion to compel it to produce documents be denied.  In the alternative, if the Court

decides to grant defendants' motion insofar as it seeks the production of Health Net's claims

data, Health Net respectfully requests that the costs of producing its claims data be shifted to

defendants.

DATED: December 6, 2004.

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
ELIZABETH B. BURNETT
KEVIN M. McGINTY

One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

By: /s/ Kevin M. McGinty
Kevin M. McGinty

Attorneys for Defendant Health Net, Inc.

---

[1]     See defendants memorandum of law, p. 1.

20