# Exhibit A



E. SERVED
09/02/03
04:56 PM ET
MDL NO. 1456

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris |

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO MAINTAIN THE CONFIDENTIALITY OF PORTIONS OF THE AMENDED MASTER CONSOLIDATED COMPLAINT, AND THE MONTANA AND NEVADA II AMENDED COMPLAINTS (NOT OPPOSED)

For the reasons set forth in the accompanying Memorandum, on behalf of all affected Defendants, Baxter Healthcare Corporation hereby moves this Court for a protective order to maintain the confidentiality of certain portions of Plaintiffs' Amended Master Consolidated Complaint ("AMCC"), as well as portions of the Montana and Nevada II amended complaints. Plaintiffs do not oppose this Motion, but preserve their right to challenge the Defendants' designation of certain material as



"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." A [Proposed] Order is attached

hereto.

Respectfully submitted,

| | |
|---|---|
| Merle M. DeLancey, Jr.<br>DICKSTEIN SHAPIRO MORIN &<br>OSHINSKY LLP<br>2101 L St. NW<br>Washington, DC 20037<br>Telephone: (202) 785-9700<br>Facsimile: (202) 887-0689<br><br>Counsel for Defendants<br>BAXTER HEALTHCARE<br>CORPORATION | Peter E. Gelhaar (BBO #188310)<br>DONNELLY, CONROY & GELHAAR, LLP<br>One Beacon Street<br>33rd Floor<br>Boston, MA  02108<br>Telephone: (617) 720-2880<br>Facsimile: (617) 720-3554 |



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
|  | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER TO MAINTAIN THE CONFIDENTIALITY OF PORTIONS OF THE AMENDED MASTER CONSOLIDATED COMPLAINT, AND THE MONTANA AND NEVADA II AMENDED COMPLAINTS (NOT OPPOSED)

Baxter Healthcare Corporation hereby moves on behalf of all affected Defendants for a protective order to maintain the confidentiality of certain portions of Plaintiffs' Amended Master Consolidated Complaint ("AMCC"), and the Montana and Nevada II amended complaints (the "Complaints"). Many of the Defendants now agree – without waiving the confidentiality designations of documents produced to Plaintiffs – that the portions of the Complaints related to them may be released in unredacted form. However, the Complaints contain some information related to certain Defendants that is particularly sensitive and therefore, for the reasons described below, the affected Defendants request that this information remain under seal.

## I.     FACTUAL BACKGROUND

### A.     Case Management Order ("CMO") No. 5

On October 28, 2002, this Court entered CMO No. 5, which, among other things, ordered Defendants to produce documents they had previously produced in certain government investigations. Defendants produced these documents and, in



accordance with the Protective Order in force in this case, designated certain documents

"CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL."

      B.   <u>Protective Order</u>

On December 13, 2002, the Court entered a Protective Order negotiated by the

parties in this litigation.  The Protective Order allows the parties to designate certain

information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

"CONFIDENTIAL" information includes

> information that any producing party, including any third party,
> in good faith believes to contain (a) proprietary or commercially
> sensitive information; (b) personal financial information; or (c)
> information that should otherwise be subject to confidential
> treatment under Rule 26(c)(7) of the Federal Rules of Civil
> Procedure.

Protective Order, ¶ 3.  "HIGHLY CONFIDENTIAL" information encompasses:

> current and past pricing, marketing, and business planning
> information; trade secrets; company personnel or employee
> information; and, other 'CONFIDENTIAL' information. . . the
> disclosure of which is likely to cause competitive or commercial
> injury to the producing party.

Protective Order, ¶ 5.

Under the Protective Order, access to "CONFIDENTIAL" and "HIGHLY

CONFIDENTIAL" information is restricted.  For example, in-house counsel seeking

access to other Defendants' "HIGHLY CONFIDENTIAL" information must certify that

he/she is not involved in any competitive decision-making and agree to certain

conditions, including not reviewing competitors' "HIGHLY CONFIDENTIAL"

information at his/her place of work.  Protective Order, ¶ 6(a)(i) & Exhibit B.



Material designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" may only be disclosed to the Court "under seal." *See* Protective Order, ¶¶ 4(i), 6(h). Further, the Protective Order specifies that:

> Any documents or pleadings to be filed with the Court that contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, shall be filed under seal in an envelope marked "CONFIDENTIAL - - Filed Under Seal Pursuant to Court Order" or "HIGHLY CONFIDENTIAL - - Filed Under Seal Pursuant to Court Order" and bear the caption of the AWP Litigation and pleading or document title and such other description as will allow the Court to readily identify the documents or information or portions thereof so designated.

Protective Order, ¶ 15.

To the parties' Protective Order, the Court added the following paragraph, related to court filings:

> all pleadings, memoranda or other documents filed in court shall be treated as public regardless of the terms of this order unless the counsel for the party seeking protection certifies and explains why the material is confidential. To the extent that a brief or other document contains some confidential information, it shall be redacted in a public version.

Protective Order, ¶ 29.

C.   <u>Amended Master Consolidated Complaint ("AMCC")</u>

On June 12, 2003, Plaintiffs filed a Motion for Leave to File an Amended Complaint, together with the proposed AMCC. The AMCC, in the section entitled "EXAMPLES OF SPECIFIC UNLAWFUL CONDUCT," includes information (and in some instances, direct quotations) from documents Defendants designated "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL" in connection with their CMO No. 5 productions. In the AMCC, Plaintiffs specifically identified which material had been designated as "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL." For example, after Plaintiffs referenced one of Baxter's documents, they cited to the Bates



number and then indicated the confidentiality status in parentheses. *See, e.g.*, AMCC, ¶ 276 (citing a Baxter inter-office memorandum regarding certain non-public prices as "(BAXMDL 0004754) (Highly Confidential)").

In the cover letter accompanying Plaintiffs' Motion for Leave to Amend, Plaintiffs stated, that, "Plaintiffs' Memorandum is filed under seal pursuant to Paragraph 15 of the applicable Protective Order and has been marked accordingly." Plaintiffs did not serve their Motion or the accompanying AMCC via Verilaw, because it contained "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" material.[1] Both outside and in-house counsel, some of whom are not able to execute the certification required to have access to "CONFIDENTIAL" and/or "HIGHLY CONFIDENTIAL" information, receive documents through Verilaw. Plaintiffs did not provide the Court or the Defendants with a redacted version of the AMCC.

    D.    <u>Publication of Unredacted AMCC</u>

On July 24, 2003, counsel for Defendant AstraZeneca Pharmaceuticals LP discovered that the AMCC had been placed on PACER, a publicly-available electronic filing system. On July 25, 2003, AstraZeneca filed an Assented-To Motion For Leave To File A Redacted Version Of The Amended Consolidated Class Action Complaint, together with a redacted copy of the AMCC. This redacted version of the AMCC has been made publicly available pending resolution of this motion for a protective order.[2]

---

[1] In CMO No. 2, the Court authorized the parties to use Verilaw for electronic service in lieu service by U.S. Mail.

[2] The fact that commercially-sensitive information was, for a short time, unsealed and released to the public does not render this Motion moot, nor alter the need for protection of commercially-sensitive information. See Protective Order ¶20 (noting that inadvertent disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information generally shall not constitute waiver).



On July 31, 2003 this Court granted Defendants' emergency motion and permitted Defendants to file a redacted copy of the AMCC until this issue could be resolved. The Court ordered: "Counsel shall submit an affidavit as well as a brief to demonstrate good cause to redact or seal."

     E.    <u>Montana and Nevada II Amended Complaints</u>

On August 1, 2003, Plaintiffs filed amended complaints in the Montana and Nevada II causes of action pending as part of this MDL. The Montana and Nevada II amended complaints make use of the same "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" material as the AMCC. At Defendants' request, Plaintiffs agreed to file the amended Montana and Nevada II complaints under seal, together with motions to keep the amended complaints under seal and to make only a redacted version public pending a ruling on Defendants' motion for a protective order.

Because of the overlapping issues with the Complaints, Defendants address all three complaints together herein.

**II.**    **ARGUMENT**

As this Court is aware, MDL 1456 is a large and complex case involving the sales, marketing, and pricing practices of virtually the entire pharmaceutical industry. Plaintiffs have alleged that the Defendants unlawfully manipulated the average wholesale prices of the drugs that they manufacture and engaged in other unlawful conduct. Pursuant to CMO No. 5, Defendants produced to Plaintiffs "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information that contained proprietary and commercially-sensitive information, including but not limited to "current and past pricing, marketing, and business planning information; trade secrets; [and] company personnel or employee information." This information should be



subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure.

As described below, upon review of the materials cited in the Complaints, certain Defendants have determined that, although the documents from which the material was extracted were properly designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," some of the excerpts contained in the Complaints may be released to the public. In so agreeing, these Defendants expressly preserve their assertions of confidentiality as concerns the underlying documents. In other instances, however, certain Defendants have determined that the information contained in the Complaints must remain under seal. As is described in the attached affidavits and declarations, it is extremely important to the affected Defendants that this information remain confidential. Moreover, continuing to permit the parties to designate material "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" will expedite the discovery process and conserve judicial resources.

A.   In Good Faith, Certain Defendants Have Now Determined That Portions Of The Complaints May Be Released In Un-Redacted Form.

Without waiving their assertions of confidentiality with respect to the underlying documents, some of the Defendants now agree that the information quoted in the Complaints may be released to the public. A list of the paragraphs of the Complaints that certain Defendants no longer require to remain under seal is included as Exhibit A hereto. Importantly, this re-evaluation on the Defendants' part is not an indicator that the underlying documents were improperly designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in the first instance. Rather, in order to expedite the discovery process, Defendants did not undertake the gargantuan task of redacting line-by-line their CMO No. 5 productions.

1643915 v2; Z8GB02!.DOC



B.   It is Appropriate That Certain of Defendants' Documents
     Remain Under Seal.

In order to protect commercially-sensitive information, certain of the

Defendants have identified those paragraphs, or portions of paragraphs, that should

remain under seal.  A list of the paragraphs of the Complaints that certain Defendants

seek to keep under seal is included as Exhibit B hereto.  Affidavits and declarations

describing why this information should remain sealed are included in Exhibit C.

As the central issue in this case is the propriety of Defendants' pricing

methodologies, the production, disclosure, and use of competitively-sensitive

information will be an important part of the litigation of this case.  However, given the

highly-competitive nature of the pharmaceutical industry, it is essential that such

information be disclosed only with certain restrictions.  *See GTE Prods. Corp. v. Gee*, 112

F.R.D. 169, 170-72 (D. Mass. 1986) (limiting disclosure of customer lists); *C.A. Muer Corp.

v. Big River Fish Co.*, CA No. 97-5402, CA No. 97-6073, CA No. 97-7154, 1998 U.S. Dist.

LEXIS 12639, at *10-11 (E.D. Pa. Aug. 10, 1998) (limiting disclosure of marketing and

financial information); *Pfeiffer v. K-Mart Corp.*, 106 F.R.D. 235 (S.D. Fl. 1985) (limiting

disclosure of trade secret, proprietary or commercially sensitive information).

Information redacted from the AMCC was identified "CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL" by Plaintiffs (pursuant to Defendants' original

designations) and is primarily competitively-sensitive commercial information

regarding the pricing and marketing practices of the Defendants and/or proprietary or

trade secret information regarding patented pharmaceutical compounds and customer

lists.  *See, e.g.,* AMCC ¶¶ 214-15, 257, 263, 269, 428.  The attached affidavits explain with

particularity the reasons why this information should remain under seal.  It is entirely

proper that this information remain inaccessible to the public and, particularly, that it



not be available to Defendants' competitors.  Disclosure to a competitor is generally viewed as more harmful than disclosure to a non-competitor.  *See Ares-Serono, Inc. v. Organon Int'l B.V.,* 151 F.R.D. 215, 219-20 (D. Mass. 1993); *Rywkin v. New York Blood Ctr.,* 95 Civ. 10008 (BSJ), 1998 U.S. Dist. LEXIS 13490, at *15 (S.D.N.Y. Aug. 31, 1998).

Although court records are generally available to the public, *see, e.g., Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 780 (1st Cir. 1988), *cert. denied,* 488 U.S. 1030 (1989), First Circuit precedent makes clear that protective orders to prevent the release of confidential information can be issued when "good cause" is demonstrated.  *See, e.g, Anderson v. Cryovac, Inc.,* 805 F.2d 1, 6 (1st Cir. 1986) ("Protective orders are subject to First Amendment scrutiny, but that scrutiny must be made within the framework of [Fed.R.Civ. P.] 26(c)'s requirement of good cause.").  Fed. R. Civ. P. 26(c) permits a court to issue protective orders in a number of instances and for a number of purposes. Among these, a party may request "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7).

"[B]lanket protective orders," those covering all discovery information exchanged in a litigation, "are not favored." *United States ex rel. Parke-Davis,* 210 F.R.D. 257, 261 (D. Mass. 2002), citing *Public Citizen* at 790; *but see In re "Agent Orange" Product Liability Litigation,* 821 F.2d 139, 148 (2d Cir.), *cert. denied sub nom Dow Chemical Co. v. Ryan,* 484 U.S. 953 (1987) (noting that "unusual scope" of litigation justified imposition of blanket protective order covering all documents produced in discovery); *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F. Supp. 232, 256 (D. Del. 1992) (permitting umbrella confidentiality order in RICO case as it would best serve interests of prompt resolution of case by expediting discovery process).  In *Parke-Davis,* this Court found



invalid terms in a protective order that barred non-litigatory use or disclosure to the public of all materials provided in discovery, regardless of their "confidential" status or lack thereof.

In marked contrast, Defendants here seek only to protect that information which, in accordance with the definitions provided in the protective order, they have designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." These definitions correspond with the "good cause" notion described in Fed. R. Civ. P. 26(c)(7).[3] *See, e.g., Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995) (distinguishing between "umbrella" protective orders that designate all discovery as protected and limited "blanket" protective orders that permit the parties "to protect documents that they in good faith believe contain trade secrets or other confidential commercial information" and noting that the latter "are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors.").

In *Wang Laboratories, Inc. v. CFR Assocs., Inc.*, 125 F.R.D. 10 (D. Mass. 1989), this Court issued a protective order to prevent disclosure of information produced in discovery for which Wang could establish competitive harm. That case involved the extent to which a potential witness, a former employee who worked for a competitor of Wang, could be given access to documents produced in response to discovery requests. This court ruled that the witness could not be shown "any documents marked confidential by Wang except those which [the witness] authored or received." *Id.* at 14;

---

[3] This is not a case where the information sought to be protected under seal is merely information that might generate adverse publicity or harm the Defendants' reputations. *See United States v. General Motors Corp.*, 99 F.R.D. 610 (D.D.C. 1983); *Reliance Ins. Co. v. Barron's*, 428 F. Supp. 200 (S.D.N.Y. 1977). In fact, in agreeing that all but a few paragraphs of the Complaints may be released, the Defendants are exposing themselves to adverse publicity.



*see also Ares-Serono*, 151 F.R.D. at 220 (ordering production of pharmaceutical company's product research and development documents and other documents containing trade secrets where protective order restricted disclosure to outside counsel and independent experts); *GTE Prods. Corp. v. Gee*, 112 F.R.D. 169 (D. Mass. 1986) (granting plaintiff's motion for a protective order prohibiting defendant's counsel from disclosing to the defendant information concerning prices, customers, and sales of other distributors of plaintiff's products); *Pfeiffer v. K-Mart Corp.*, 106 F.R.D. 235 (S.D. Fla. 1985) (limiting access to trade secrets, proprietary, and commercially-sensitive information - designated "confidential information" - to the court, counsel, and independent consultants, for use only in connection with the litigation).

As in these cases, for the reasons described in the accompanying affidavits, "good cause" exists to prevent disclosure of the redacted information in the Complaints at issue and to enter the attached protective order. Finally, keeping select paragraphs under seal also will not threaten the First Amendment. The particularities of a Defendant's pricing is not of interest to the public in the same way as are the generalized allegations of fraud in the remainder of the Complaints, which remain fully accessible by the public.

C.     <u>Judicial Efficiency Supports Entry Of The Protective Order.</u>

Entry of the proposed protective order preventing public disclosure of the Complaints, will cause no undue burden to the parties in this action. The Court, parties' outside counsel, and in-house counsel who have certified that they have no involvement in competitive decision-making have full access to the Complaints; expert witnesses also will be given access; and the information will be available for use in discovery. Narrowing the number of individuals who can see and review the



unredacted complaints will, however, reduce the risk that the sensitive information contained therein will fall into the hands of competitors and be used for purposes outside this litigation.

To date, Defendants have produced nearly a million pages of documents to Plaintiffs. Future discovery is expected to encompass additional document production and numerous depositions. The intention of the Protective Order was to allow any producing party to designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" any information that it in good faith believes satisfies the Protective Order's confidentiality requirements in order to facilitate discovery and reduce the burdens on the Court. The provisions permitting the filing of documents with the Court "under seal," Protective Order, ¶¶ 4(i), 6(h), and 15, were designed to allow the parties to use documents designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in their pleadings and motions, without imposing an undue burden on the parties making the original designation to separately file motions for protective orders every time opposing counsel references a document or deposition that has been designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in a court filing. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("Judges have found in many cases that effective discovery, with a minimum of disputes, is achieved by affording relatively generous protection to discovery material."); *see also Public Citizen*, 858 F.2d at 790 (suggesting that one rationale for a blanket protective order would be to expedite the document gathering process by eliminating the need to screen for confidentiality).

Redacted versions of the Complaints previously have been provided to the Court and made publicly available. Attached hereto, as Exhibits D, E, and F, are redacted versions of the AMCC, and Montana and Nevada II amended complaints,



respectively, reflecting the concessions made by Defendants in Exhibit A. If this motion is granted, Defendants ask the Court to make these amended redacted complaints publicly available.

## III.   CONCLUSION

For the reasons described above, Defendants respectfully request the issuance of a protective order to (1) maintain the unredacted versions of the AMCC and the Montana and Nevada II amended complaints under seal, and (2) permit the redacted versions of the AMCC and the Montana and Nevada II amended complaints – as found in Exhibits D, E, and F to this Motion -- to become the publicly-available versions of these documents, through PACER and otherwise.

Respectfully submitted,

| | |
|---|---|
| Merle M. DeLancey, Jr. <br> DICKSTEIN SHAPIRO MORIN & <br> OSHINSKY LLP <br> 2101 L St. NW <br> Washington, DC 20037 <br> Telephone: (202) 785-9700 <br> Facsimile: (202) 887-0689 <br><br> Counsel for Defendants <br> BAXTER HEALTHCARE <br> CORPORATION | Peter E. Gelhaar (BBO #188310) <br> DONNELLY, CONROY & GELHAAR, LLP <br> One Beacon Street <br> 33rd Floor <br> Boston, MA  02108 <br> Telephone: (617) 720-2880 <br> Facsimile: (617) 720-3554 |



**EXHIBIT A**



## PARAGRAPHS OF COMPLAINTS THAT NO LONGER NEED REMAIN UNDER SEAL

| DEFENDANT | AMCC | MONTANA | NEVADA |
|---|---|---|---|
| Abbott | 205-07 | 220-23, 226 | N/A |
| Amgen | N/A[1] | N/A | N/A |
| Astra Zeneca | 234-35, 236-241 | 251, 253-61, 263-65, 268 | 196, 198-201, 203-06, 208-10 |
| Aventis | 252-56, 258-59, 262, 265-66, 269, 271 | 276, 278-80, 282, 284-87, 289, 295 | 221, 223-25, 227, 229-32, 234, 240 |
| Baxter | 275-78, 281-84 | 298, 300-310 | N/A |
| Bayer | 290 | 315, 319, 321, 325 | N/A |
| Boehringer | 305-06, 308, 310 | 335-36, 338, 340, 343 | 244-45, 247-49, 251-52 |
| B. Braun | 316-320, 322, 325 | 349-50, 352-54, 356-59, 361 | 258-59, 261-63, 265-68, 270 |
| BMS | N/A | 375, 377 | N/A |
| Dey | 354 | 388, 392-94, 398-401, 403 | N/A |
| Fujisawa | 367-70, 373-75 | 412, 414-420 | 277-283 |
| GSK | 379-83, 393, 395, 398-400, 411 | 425, 427-29, 439, 441, 443-46, 458 | N/A |
| Hoffman-La Roche | N/A | N/A | N/A |
| Immunex | 424-27, 429-30, 435 | 467-68, 470-72, 474-76, 480 | 288-89, 291-93, 295-97, 301 |
| Johnson & Johnson | 438, 444 | 485, 489 | 306, 310, 316 |
| Novartis | N/A | N/A | N/A |
| Pfizer | N/A | N/A | N/A |
| Pharmacia | 460, 461, 472 | 516, 521-22 | N/A |
| Schering-Plough | 481-83, 486 | 534, 536-37, 540-41 | 335, 337-38, 341-42 |
| SICOR | 494-95, 499-500, 502-04 | 532-33, 558-63, 565 | 353-54, 359-64, 366 |
| TAP | N/A | N/A | N/A |
| Warrick | N/A | N/A | N/A |
| Watson | 528-29, 531-33, 540 | 591, 593-98, 602 | 371, 373-79, 382 |

---

[1] N/A means either that none of the defendant's confidential information was cited in the complaint, or that the defendant was not named as a party to the case.

EXHIBIT A



**EXHIBIT B**



## PARAGRAPHS OF COMPLAINTS THAT MUST REMAIN UNDER SEAL

| DEFENDANT | AMCC | MONTANA | NEVADA |
|---|---|---|---|
| Abbott | 214-15 | 224-25 | N/A |
| Amgen | N/A[1] | N/A | N/A |
| Astra Zeneca | NONE[2] | NONE | NONE |
| Aventis | 257, 263 | 281, 283 | 226, 228 |
| Baxter | NONE | NONE | N/A |
| Bayer | NONE | NONE | N/A |
| Boehringer | NONE | NONE | NONE |
| B. Braun | NONE | NONE | NONE |
| BMS | N/A | NONE | N/A |
| Dey | NONE | NONE | N/A |
| Fujisawa | NONE | NONE | NONE |
| GSK | NONE | NONE | N/A |
| Hoffman-La Roche | N/A | N/A | N/A |
| Immunex | 428 | 473 | 294 |
| Johnson & Johnson | NONE | NONE | NONE |
| Novartis | N/A | N/A | N/A |
| Pfizer | N/A | N/A | N/A |
| Pharmacia | NONE | NONE | N/A |
| Schering-Plough | NONE | NONE | NONE |
| SICOR | NONE | NONE | |
| TAP | N/A | N/A | N/A |
| Warrick | N/A | N/A | N/A |
| Watson | NONE | NONE | NONE |
| | | | |

---

[1] N/A means either that none of the defendant's confidential information was cited in the complaint, or that the defendant was not named as a party to the case.

[2] NONE means that although the complaint did contain information that was previously redacted, the defendant is no longer seeking to redact the information.



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL NO. 1456 <br> CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) ) ) | Judge Patti B. Saris |

## [PROPOSED] ORDER

Defendant Baxter Healthcare Corporation's MOTION FOR A PROTECTIVE ORDER TO MAINTAIN THE CONFIDENTIALITY OF PORTIONS OF THE AMENDED MASTER CONSOLIDATED COMPLAINT, AND THE MONTANA AND NEVADA II AMENDED COMPLAINTS is hereby granted. The Amended Master Consolidated Complaint and the Montana and Nevada II amended complaints filed in this case will remain under seal, and the redacted versions of the Amended Master Consolidated Complaint, attached to Defendants' Motion as Exhibits D, E, and F, shall become the publicly-available versions of these documents, through PACER and otherwise.

Entered: _____

_____
Patti B. Saris
United States District Judge



## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1</u>

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for defendants conferred with counsel for plaintiff on this motion, and that counsel for plaintiff does not object to the filing of this motion.

_____

Peter E. Gelhaar

## PROOF OF SERVICE

I, Peter E. Gelhaar, certify that on _____, 2003, I caused a true and correct copy of the foregoing MOTION FOR A PROTECTIVE ORDER TO MAINTAIN THE CONFIDENTIALITY OF PORTIONS OF THE AMENDED MASTER CONSOLIDATED COMPLAINT, AND THE MONTANA AND NEVADA II AMENDED COMPLAINTS and MEMORANDUM IN SUPPORT thereof to be served on all counsel of record by electronic service in accordance with Case Management Order No. 2. Confidential portions of this MOTION, specifically, the affidavits included as Exhibit C to the motion, were filed under seal with the Court and were not served via Verilaw.

_____

Peter E. Gelhaar

# Exhibit B



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In Re: **PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | : : : : : | |
| | | **MDL NO. 1456** |
| **THIS DOCUMENT RELATES TO** | : : | **Master File No. 01-CV-12257-PBS** |
| *State of Montana v. Abbott Labs., Inc., et al.*, 02-CV-12084-PBS | : : : | **Judge Patti B. Saris** |
| *State of Nevada v. American Home Prods. Corp., et al.*, 02-CV-12086-PBS | : : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUPPLEMENTAL JURISDICTION

At the December 12, 2003, hearing on the motions to dismiss the Nevada and Montana complaints, the Court asked the parties whether they would support the exercise of supplemental jurisdiction over the AWP-based claims should the Court rule that the Medicaid Best Price claims are preempted. Since that hearing, Nevada and Montana have stated that they would support the exercise of supplemental jurisdiction over the AWP-based state law claims. The defendants in the Nevada and Montana cases do as well, as the supplemental jurisdiction factors weigh strongly in favor of keeping the cases.

## ARGUMENT

As the Court recognized at the December 12 hearing, dismissal of the Medicaid Best Price claims would not necessarily divest this Court of jurisdiction over the non-federal AWP-based claims. Instead, in appropriate circumstances, "a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996). Applying



E-SERVED
01/05/04
05:55 PM ET
MDL NO.

this analysis here, considerations of "judicial economy," "fairness," and "convenience" strongly support keeping and coordinating these cases with other similar cases in MDL 1456. *See Roche*, 81 F.3d at 256-57. In addition, the Court should exercise supplemental jurisdiction over the state law claims because they are closely tied to questions of federal law and policy. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966).

### A.   Exercising Supplemental Jurisdiction Over the AWP-Based Claims Would Serve Judicial Economy, Convenience of the Parties, and Fairness to the Litigants

The very nature of a consolidated MDL proceeding is to further the interests of "judicial economy," "convenience," and "fairness" by having one court coordinate pre-trial matters and resolve common issues. *See* 28 U.S.C. § 1407. These same interests support supplemental jurisdiction in an MDL proceeding even when the foundational federal claims have been dismissed and all that remain are state law claims. *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 19 F. Supp. 2d 263, 269-70 (D.N.J. 1998) (exercising supplemental jurisdiction over state law claims in action transferred to multidistrict litigation even though all federal claims were dismissed); *see also In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practice Litig.*, 105 F. Supp. 2d 1037, 1043 (D. Minn. 2000) (exercising supplemental jurisdiction over state law claims in multidistrict litigation because they involved common issues with federal claims and remanding state law claims would lead to duplication of judicial resources and the possibility of inconsistent results).

The *Ford Motor Co.* case is particularly instructive. In that case, the court dismissed the federal claims in a consolidated action early in the proceedings, leaving only state law claims. 19 F. Supp. 2d at 269-70. The court nevertheless found that the values of economy, convenience and fairness -- the same factors that the JPML weighed in transferring the case to the district court -- "unquestionably" favored supplemental jurisdiction:



> It is a tautology that it is more convenient for the parties to conduct
> pretrial proceedings before one court, in which discovery can be
> coordinated, and issues common to each case can be resolved in a
> consolidated fashion.

*Id.*; *see also Williams-Ward*, 908 F. Supp. at 52 (interests of judicial economy, convenience, fairness and comity weighed in favor of retaining supplemental jurisdiction over state law claims, even where plaintiff voluntarily waived her federal claims).  Numerous other courts have retained supplemental jurisdiction over state law claims following dismissal of federal claims, especially where the Court was already familiar with the issues in the case.  *See, e.g., Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 44-45 (D. Mass. 2001) (allowing plaintiffs to amend complaint to eliminate federal claims, but retaining supplemental jurisdiction over state law claims where court was already familiar with the issues); *Allied Inv. Corp. v. KPMG Peat Marwick*, 872 F. Supp. 1076 (D. Me. 1995) (same).

As in *Ford Motor Co.*, the factors of economy, convenience, and fairness support supplemental jurisdiction in this case, even if the Medicaid Best Price are dismissed.  <u>First</u>, the AWP-based claims asserted under state law in the Nevada and Montana actions involve substantially similar facts and legal issues to the AWP-based claims in the private plaintiff cases currently before the Court.  Indeed, many of the allegations in the Nevada and Montana complaints are word-for-word identical to those made in the MDL AMCC.  *Compare* Nevada and Montana Cplts. ¶¶ 10 ("Thus, in a perversion of the type of competitive behavior expected in a market not subject to illegal manipulation, defendants often promote their drugs not based on lower prices, but by the use of reimbursement rates based on a fictitious and inflated AWP that allows purchasers and intermediaries to make inflated profits -- and defendants to increase their market share -- at the expense of various reimbursement programs and Patients") *with* AMCC ¶ 6 (same).  It would certainly undermine judicial economy to remand these cases after this Court

3



has already consolidated before it dozens of other AWP cases involving substantially similar issues and claims. <u>Second</u>, litigating these AWP claims in this Court reduces the risk of conflicting decisions on issues of national importance involving the meaning of "AWP". *See Irwin v. Calhoun*, 522 F. Supp. 576, 584 (D. Mass. 1981) (exercising supplemental jurisdiction over state law claims because, *inter alia*, conducting proceedings in both federal and state courts posed danger of conflicting outcomes). <u>Third</u>, retaining jurisdiction of these actions would reduce the overall commitment of judicial resources to the resolution of the AWP-based actions by having one court coordinating these cases. *See Kirton v. Summit Med Ctr.*, 982 F. Supp. 1381, 1389 (N.D. Cal. 1997) (exercising supplemental jurisdiction over state law claim despite dismissal of federal claims where judicial economy and convenience favored having all claims determined by one court). <u>Fourth</u>, the Court is already familiar with the facts and issues involved in the AWP-based claims. *See New York Trans., Inc. v. Naples Trans. Inc.*, 116 F. Supp. 2d 382, 390 (E.D.N.Y. 2000) (exercising supplemental jurisdiction over state law claims despite dismissal of sole federal claim given the court's familiarity with the issues involved). <u>Fifth</u>, retaining jurisdiction over these cases would serve the convenience of the parties by allowing for coordinated and consolidated pretrial discovery and motion practice. *See Ford Motor Co.*, 19 F. Supp. 2d at 270. Indeed, counsel for Nevada and Montana is also the lead counsel for the MDL plaintiffs, and all parties in the Nevada and Montana actions have expressed a desire to remain before this Court.

### B.   The AWP-Based Claims Are Closely Tied to Questions of Federal Policy And Involve Complex Questions of Federal Law

The Court should also retain jurisdiction over these cases because the state law AWP-based claims are closely tied to questions of federal policy. *Gibbs*, 383 U.S. at 727 (it is appropriate to exercise supplemental jurisdiction over state law claims when they are closely tied



to questions of federal policy).  Even absent the Medicaid Best Price claims, the remaining

AWP-based claims raise important issues of federal law and policy.  As the Court knows, the

system for both Medicare and Medicaid reimbursement is governed by a complex and

comprehensive federal regulatory scheme that is administered by a federal agency.  *See* 42

U.S.C. § 1395u(o) (1997); 42 C.F.R. § 405.517; *see also* 42 C.F.R. § 447.331 (federal Medicaid

drug reimbursement rules).  The AWP-based claims in these actions require the Court to

examine and interpret these complex federal reimbursement provisions and regulatory history.

Indeed, as the Court pointed out in addressing the State of Minnesota's motion to remand, an

"essential element" of the AWP-based claims is "proof of a discrepancy between the AWPs

reported by [defendants] and the meaning of AWP under the [federal] Medicare statute."

*Montana v. Abbott Laboratories, Inc.*, 266 F. Supp. 2d 250, 255 (D. Mass. 2003).

## CONCLUSION

For the foregoing reasons, the Court should exercise supplemental jurisdiction

over the AWP-based claims in the event that the Medicaid Best Price claims are dismissed.



Respectfully submitted,

**ON BEHALF OF DEFENDANTS
IN THE ABOVE-CAPTIONED ACTIONS,**

**BY:** [original signature on file with Court]
Geoffrey Hobart
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116
Tel: (617) 854-1419
Fax: (617) 523-6850

Mark H. Lynch
Ethan M. Posner
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 662-5544
Fax: (202) 778-5544

Frederick G. Herold
Dechert LLP
975 Page Mill Road
Palo Alto, CA  94304
Tel: (650) 813-4930
Fax: (650) 813-4848
(Member of Pennsylvania Bar; admission to
California Bar pending)

DATE: January 5, 2003                    *Counsel for SmithKline Beecham Corp.,
d/b/a GlaxoSmithKline*



## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2004, I caused a true and correct copy of this Supplemental Brief in Support of Supplemental Jurisdiction to be served on all counsel by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

[original signature on file with Court]
Geoffrey E. Hobart

7

# Exhibit C

FROM :301-774-6399                 FAX NO. :301 774 6399           Jan. 23 2004 11:01PM  P2



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 |
| | ) |
| PBS | ) CIVIL ACTION: 01-CV-12257- |
| | ) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) Judge Patti B. Saris |

## MOTION TO ALLOW WITHDRAWAL OF LOCAL COUNSEL ASSENTED TO

Now comes, Robert A. Griffith, local counsel to Hyman, Phelps & McNamara, P.C. representing Watson Pharmaceuticals, Inc. in the above-entitled matter and hereby moves this court to allow his withdrawal as local counsel. A Case Management Order was entered in this matter eliminating the need for local counsel. Douglas B. Farquhar of Hyman, Phelps & McNamara, P.C., will continue to represent Watson Pharmaceuticals, Inc.

Robert A. Griffith
66 Long Wharf, 4th floor
Boston, MA 02110
(617) 338-7277
(617) 523-7834 FAX

Assented to:

Douglas B. Farquhar
Hyman, Phelps & McNamara, P.C.
700 13th Street, N.W., Suite 1200
Washington, D.C. 20005
(202) 737-9624
(fax) (202) 737-9329
Attorneys for Watson Pharmaceuticals,
Inc.

FROM :301-774-6399          FAX NO. :301 774 6399          Jan. 23 2004 11:02PM  P3



1/23/2004

FROM :301-774-6399          FAX NO. :301 774 6399          Jan. 23 2004 11:02PM  P4



## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2003, I caused a true and correct copy of the foregoing Motion for Withdrawal of Appearance of Local Counsel to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2, by sending a copy of this document to Verilaw Technologies for posting and notification to all parties.

Douglas B. Farquhar



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENTS RELATES TO ALL ACTIONS | ) ) ) ) ) | Judge Patti B. Saris |

## NOTICE OF WITHDRAWAL OF APPEARANCE

I, Mary Kate Whalen, a member of this Court, hereby withdraw my appearance in the above-cited matter on behalf of Watson Pharmaceuticals, Inc. and its subsidiary, Schein Pharmaceutical, Inc. (now known as Watson Pharma, Inc.).   My co-counsel, Douglas Farquhar, has been admitted pro hac vice and will continue to represent the interests of our clients.

Respectfully submitted,

Douglas B. Farquhar
Mary Kate Whalen (BBO #557529)
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Date:  April 9, 2004



### Certificate of Service

I hereby certify that on April 9, 2004, a true and correct copy of the forgoing document was served upon all counsel of record by electronic service pursuant to CMO No. 2, by causing a copy to be sent to Verilaw Technologies for posting and notification.

Douglas B. Farquhar

# Exhibit D

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

JENNIFER B. DAVIS
OF COUNSEL

DAVID B. CLISSOLD
CASSANDRA A. SOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASSERSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA R. KATCHER*
KURT R. KARST
MOLLY C. ANDRESEN
SHAWN M. BROWN*

*NOT ADMITTED IN DC

DIRECT DIAL (202) 737-9624

May 14, 2004

**BY FEDERAL EXPRESS**

John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103

      Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL
               No. 1456, Civ. A. No. 01-12257-PBS

Dear Mr. Macoretta:

      Pursuant to Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants, including Watson Pharmaceuticals Inc. ("Watson") in these MDL proceedings, Watson produces the enclosed documents. In the interest of getting the documents to you in an expeditious manner, we will provide an index of the categories of documents at a later date.

      These documents are produced as "Highly Confidential" under the terms of the December 13, 2002 Protective Order agreed to by the parties and entered in this case, and Watson does not waive any of the protections provided by that Order or under the law.

      We look forward to speaking with you on Monday afternoon.

      Sincerely,

      Molly C. Andresen

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

LAW OFFICES
# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FAROUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-8600
FACSIMILE
(202) 737-9329
www.hpm.com

JENNIFER B. DAVIS
———
OF COUNSEL

DAVID B. CLISSOLD
CASSANDRA A. BOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASSERSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
MOLLY C. ANDRESEN
SHAWN N. BROWN*

*NOT ADMITTED IN DC

DIRECT DIAL (202) 737-7553

May 27, 2004

## BY FEDERAL EXPRESS

John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103

Re:     *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL
No. 1456, Civ. A. No. 01-12257-PBS

Dear Mr. Macoretta:

Pursuant to Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants, including Watson Pharmaceuticals Inc. ("Watson") in these MDL proceedings, Watson produces the enclosed documents as its third submission. In the interest of getting the documents to you in an expeditious manner, we will provide an index of the categories of documents at a later date.

These documents are produced as "Highly Confidential" under the terms of the December 13, 2002 Protective Order agreed to by the parties and entered in this case, and Watson does not waive any of the protections provided by that Order or under the law.

We look forward to speaking with you tomorrow morning.

Sincerely,

Molly C. Andresen

Molly C. Andresen

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

MARY KATE WHALEN
JENNIFER B. DAVIS
OF COUNSEL

DAVID B. CLISSOLD
CASSANDRA A. SOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASSERSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA K. KATCHER*
KURT R. KARST
MOLLY C. ANDERSEN

*NOT ADMITTED IN DC

DIRECT DIAL (202) 737-4912

April 27, 2004

## BY FEDERAL EXPRESS

Jeff Kodroff, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL
No. 1456, Civ. A. No. 01-12257-PBS

Dear Mr. Kodroff:

Pursuant to Case Management Order No. 10 in these MDL proceedings, Watson
Pharmaceuticals Inc. ("Watson") attaches copies of documents previously produced by Watson in
response to recent subpoenas issued by the House Energy and Commerce Committee, or any other
governmental body.

These documents are produced as "Highly Confidential" under the terms of the December
13, 2002 Protective Order agreed to by the parties and entered in this case, and Watson does not
waive any of the protections provided by that Order or under the law.

Sincerely,

Douglas B. Farquhar

DBF/MCA/cld
Enclosures

2803 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

# Exhibit E

LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
FRANCES K. WU

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

JENNIFER B. DAVIS
OF COUNSEL

DAVID B. CLISSOLD
CASSANDRA A. SOLTIS
JOSEPHINE M. TORRENTE
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
JEFFREY N. WASSERSTEIN
MICHAEL D. BERNSTEIN
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
MOLLY C. ANDRESEN
SHAWN N. BROWN*

*NOT ADMITTED IN DC

DIRECT DIAL (202) 737-7553

June 24, 2004

**BY FEDERAL EXPRESS**

John Macoretta, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103

     Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No.
1456, Civ. A. No. 01-12257-PBS; Revised 30(b)(6) Deposition Schedule

Dear Mr. Macoretta:

     This will confirm, as we agreed in phone calls earlier this week, that the dates that
Watson Pharmaceuticals Inc. ("Watson") will produce witnesses pursuant to Plaintiffs'
Amended Notice of Rule 30(b)(6) Deposition in the MDL proceedings have been changed
to July 14 and 15, 2004. The two witnesses will be Andrew Boyer, Vice President of Sales
and Marketing for Generics, and Tim Callahan, Vice President of Sales and Marketing for
the Nephrology Division. The depositions will take place at the law offices of Cohen and
Tauber, located at 420 Lexington Avenue, Suite 2400, New York, New York 10170. The
contact person at Cohen and Tauber is Caterina Medici. The depositions are scheduled to
begin at 9:30am on July 14 and July 15.

     Due to the new deposition dates, Watson will not file Objections and Answers to
Plaintiffs' Requests for Production and Interrogatories by July 9 as originally planned. If it
is necessary to file Objections and Answers, in light of the depositions on July 14 and 15,

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

489 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

John Macoretta, Esq.
June 24, 2004
Page 2

HYMAN, PHELPS & McNAMARA, P.C.

Watson will file them on or before July 30, 2004.  We had agreed that we would not be required to file these responses until a reasonable time after the depositions, and we assume, therefore, that you will not object to postponing the responses along the same time lines as the depositions.  If we have misunderstood our agreement, let me know immediately, please.

Thanks, and if you have any questions, please do not hesitate to call.

Sincerely,

*Molly C. Andresen*

Molly C. Andresen

MCA/cld

```
                                                                    1
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
 2    _____
                                     )
 3    IN RE PHARMACEUTICAL INDUSTRY  )  MDL No. 1456
      AVERAGE WHOLESALE PRICE        )
 4    LITIGATION                     )   ORIGINAL
                                     )
 5    ----------------------------*
                                     )
 6    This Document Relates To:      )  01-CV-12257-PBS
            ALL ACTIONS----------- )
 7                                   )
      ----------------------------*
 8              HIGHLY CONFIDENTIAL
 9
10              Wednesday, July 14, 2004
11              New York, New York
12              9:43 a.m.
13         Deposition of ANDREW BOYER, held at
14    the offices of Cohen, Tauber, Spievack &
15    Wagner, LLP, 420 Lexington Avenue, New York,
16    New York, pursuant to 30(b)(6) Notice, before
17    Josephine H. Fassett, a Certified Shorthand
18    Reporter and Notary Public of the State of New
19    York.
20
21
22
```

Andrew Boyer          Highly Confidential          July 14, 2004
                      New York, NY

```
                                                                 2
 1    A P P E A R A N C E S :

 2

 3    SPECTOR, ROSEMAN & KODROFF, P.C,

 4    Attorneys for Plaintiffs

 5          1818 Market Street

 6          Suite 2500

            Philadelphia, Pennsylvania  19103

 7    BY:  JOHN A. MACORETTA, ESQ.

            RACHEL E. KOPP, ESQ.

 8

 9    HYMAN, PHELPS & McNAMARA, P.C.

      Attorneys for Watson

10          700 Thirteenth Street, N.W.

            Suite 1200

11          Washington, D.C.  20005

      BY:  DOUGLAS B. FARQUHAR, ESQ.

12

13    SHOOK HARDY & BACON, LLP

      Attorneys for Aventis

14          2555 Grand Boulevard

            Kansas City, Missouri  64108-2613

15    BY:  JAMES P. MUEHLBERGER, ESQ.

16

      SONNENSCHEIN NATH & ROSENTHAL, LLP

17    Attorneys for Secor

            1221 Avenue of the Americas

18          New York, New York  10016

      BY TELEPHONE:  JACKIE FINNEGAN, ESQ.

19

20    ALSO PRESENT:

21    JOHN MARKOW, ESQ.

22    Watson Senior Corporate Counsel
```

Andrew Boyer         Highly Confidential         July 14, 2004
                      New York, NY

```
                                                          3
 1

 2

 3    ----------------- I N D E X -----------------

 4    WITNESS              EXAMINATION BY           PAGE

 5    ANDREW BOYER     MR. MACORETTA                 7

 6              AFTERNOON SESSION - 170

 7

 8    ----------------- EXHIBITS --------------------

 9    EXHIBIT                DESCRIPTION            PAGE

10

11    Exhibit Boyer 001    Amended Notice of Rule 30(b)(6)

12                         Deposition                7

13

14    Exhibit Boyer 002    Generic Description Document   43

15

16    Exhibit Boyer 003    INFOLERT Product Introduction

17                         Notification              90

18

19    Exhibit Boyer 004    Drug Report Document on Buspirone 145

20

21    Exhibit Boyer 005    Request for Quotation (RFQ)

22                         Document                 152
```

Andrew Boyer          Highly Confidential          July 14, 2004
                        New York, NY

```
                                                              4
1    ----------------- EXHIBITS -----------------

2    EXHIBIT                   DESCRIPTION                PAGE

3

4    Exhibit Boyer 006     Request to Meet the Competition

5                          Document                      165

6

7    Exhibit Boyer 007     June 24, 1994 Miles Internal

8                          Memorandum with attached Medco

9                          Proposal                      171

10

11   Exhibit Boyer 008     July 24, 1997 Schein Wholesaler

12                         Letter with attached July

13                         Product Status Report         188

14

15   Exhibit Boyer 009     AWP Check - Schein Labeled

16                         Injectables Red Book and Medispan

17                         Document                      258

18

19   Exhibit Boyer 010     Red Book Product Listing

20                         Verification Document          259

21

22
```

Andrew Boyer        Highly Confidential        July 14, 2004
                    New York, NY

```
                                                        5
1    ----------------- EXHIBITS --------------------

2    EXHIBIT                DESCRIPTION              PAGE

3

4    Exhibit Boyer 011     October 20, 1999 Letter from

5                          Schein to McKesson with attached

6                          1999/2000 Select Generic Agreement  262

7

8    Exhibit Boyer 012     Document titled Response to Terms

9                          and Conditions AmeriSource SELECT   271

10

11   Exhibit Boyer 013     Handwritten Notes                   282

12

13   Exhibit Boyer 014     January 29, 1998 Memorandum         284

14

15   Exhibit Boyer 015     Contract Name List Document         287

16

17   Exhibit Boyer 016     Price Inquiry History Document      288

18

19

20

21

22
```

6

```
 1                      STIPULATION

 2

 3          IT IS HEREBY STIPULATED AND AGREED by

 4    and between the attorneys for the respective

 5    parties herein that filing and sealing be and

 6    the same are hereby waived.

 7

 8          IT IS FURTHER STIPULATED AND AGREED

 9    that all objections, except as to the form of

10    the question, shall be reserved to the time of

11    the trial.

12

13          IT IS FURTHER STIPULATED AND AGREED

14    that the within deposition may be sworn to and

15    signed before any officer authorized to

16    administer an oath, with the same force and

17    effect as if signed and sworn to before the

18    Court.

19

20

21

22
```

Andrew Boyer          Highly Confidential          July 14, 2004
                      New York, NY

7

1               (Amended Notice of Rule 30(b)(6)

2          Deposition marked as Exhibit Boyer 001, as of

3          this date.)

4

5      A N D R E W      B O Y E R, the witness, having

6          been duly sworn, was examined and

7          testified under oath as follows:

8   EXAMINATION BY

9      MR. MACORETTA:

10        Q     Mr. Boyer, good morning.

11        A     Good morning.

12        Q     We met briefly.  I'm John

13   Macoretta.  I'm here on behalf of the plaintiffs

14   today.

15              Have you ever had your deposition

16   taken before?

17        A     No, I have not.

18        Q     Okay.  I'm sure your lawyers

19   talked about the procedure, let me just remind

20   you of a couple of things.

21              While I can see you nod your head,

22   the court reporter can't take that down, so you

Andrew Boyer          Highly Confidential          July 14, 2004
                       New York, NY

8

```
 1   have to say Yes or No or whatever it is you're
 2   going to say, all right?
 3        A    Sure.
 4        Q    If I don't understand your answer,
 5   I'm going to ask you to explain it.  So I'm
 6   going to ask you, if you don't understand the
 7   question I'm asking, just say so and I'll try to
 8   rephrase it; is that all right?
 9        A    That's fair.
10        Q    And, of course, if you feel like
11   you need to take a break at any time, you're
12   feel to do that.  It's not an inquisition.
13        A    Sure.
14        Q    You understand you've been
15   designated by Watson to testify on behalf of the
16   company for certain matters today?
17        A    Yes.
18        Q    Okay.  Let me show you what we've
19   marked as Exhibit Boyer 001.
20             And you can flip through the first
21   several pages.
22             Exhibit Boyer 001 is titled Amended Notice
```

Andrew Boyer          Highly Confidential          July 14, 2004
New York, NY

9

1    of Rule 30(b)(6) Deposition dated or E-served

2    4/02/04.  I'm going to talk to you about the

3    Areas of Inquiry which start on page 8.

4          A     Okay.

5          Q     Have you looked at this document

6    before today?

7          A     Yes, I have.

8          Q     Okay.  And of the 20 Areas of

9    Inquiry, are you able to testify at least as to

10   certain parts of Watson on all 20 of them?

11         A     I don't know if it was all 20, I

12   think most of them I was able to speak to

13   absolutely, yes.

14         Q     Okay.  Let's talk about -- let me

15   just --

16         A     As it pertains to generics I'd be

17   able to speak for sure.

18         Q     I understand.  You're here to talk

19   about the generic part of Watson's business; is

20   that fair?

21         A     Yes, for the most part.

22         Q     Okay.  I'd like to start by asking

1

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2     _____
                                  )
 3     IN RE PHARMACEUTICAL INDUSTRY )  MDL No. 1456
       AVERAGE WHOLESALE PRICE       )
 4     LITIGATION                    )
                                      )
 5     ----------------------------*
                                      )
 6     This Document Relates To:     )  01-CV-12257-PBS
              ALL ACTIONS----------- )
 7     ----------------------------*
 8              HIGHLY CONFIDENTIAL
 9
10              Wednesday, July 14, 2004
11              New York, New York
12              3:58 p.m.
13          Deposition of TIMOTHY CALLAHAN, held
14     at the offices of Cohen, Tauber, Spievack &
15     Wagner, LLP, 420 Lexington Avenue, New York,
16     New York, pursuant to 30(b)(6) Notice, before
17     Josephine H. Fassett, a Certified Shorthand
18     Reporter and Notary Public of the State of New
19     York.
20
21
22
```

Timothy Callahan          Highly Confidential          July 14, 2004
Volume I                  New York, NY

```
                                                                    2
 1    A P P E A R A N C E S :

 2

 3    SPECTOR, ROSEMAN & KODROFF, P.C,

 4    Attorneys for Plaintiffs

 5         1818 Market Street

 6         Suite 2500

           Philadelphia, Pennsylvania  19103

 7    BY:  RACHEL E. KOPP, ESQ.

           JOHN A. MACORETTA, ESQ.

 8

 9    HYMAN, PHELPS & McNAMARA, P.C.

      Attorneys for Watson

10         700 Thirteenth Street, N.W.

           Suite 1200

11         Washington, D.C.  20005

      BY:  DOUGLAS B. FARQUHAR, ESQ.

12

13    SHOOK HARDY & BACON, LLP

      Attorneys for Aventis

14         2555 Grand Boulevard

           Kansas City, Missouri  64108-2613

15    BY:  JAMES P. MUEHLBERGER, ESQ.

16

      SONNENSCHEIN NATH & ROSENTHAL, LLP

17    Attorneys for Secor

           1221 Avenue of the Americas

18         New York, New York  10016

      BY TELEPHONE:  JACKIE FINNEGAN, ESQ.

19

20    ALSO PRESENT:

21    JOHN MARKOW, ESQ.

22    Watson Senior Corporate Counsel
```

```
                                                        3
 1

 2

 3     ------------------- I N D E X -----------------

 4     WITNESS              EXAMINATION BY              PAGE

 5     TIMOTHY CALLAHAN   MS. KOPP                         5

 6

 7

 8

 9

10     ----------------- EXHIBITS --------------------

11     EXHIBIT  DESCRIPTION                            PAGE

12

13             (NO EXHIBITS MARKED.)

14

15

16

17

18

19

20

21

22
```

4

```
 1                    STIPULATION

 2

 3          IT IS HEREBY STIPULATED AND AGREED by

 4   and between the attorneys for the respective

 5   parties herein that filing and sealing be and

 6   the same are hereby waived.

 7

 8          IT IS FURTHER STIPULATED AND AGREED

 9   that all objections, except as to the form of

10   the question, shall be reserved to the time of

11   the trial.

12

13          IT IS FURTHER STIPULATED AND AGREED

14   that the within deposition may be sworn to and

15   signed before any officer authorized to

16   administer an oath, with the same force and

17   effect as if signed and sworn to before the

18   Court.

19

20

21

22
```

Timothy Callahan          Highly Confidential          July 14, 2004
Volume I                  New York, NY

5

1       T I M O T H Y   C A L L A H A N, the witness,

2              having been duly sworn, was examined and

3              testified under oath as follows:

4    EXAMINATION BY

5       MS. KOPP:

6       Q       Good afternoon, Mr. Callahan.

7       A       Good afternoon.

8       Q       Just before we start, I want to

9    just remind you that you're under oath and you

10   understand what that means?

11      A       Yes.

12      Q       And you understand also that

13   you're representing the company Watson and if I

14   say anything that you think is unclear, let me

15   know and I'll clarify it and I will do the same

16   for you.

17      A       Okay.

18      Q       And if you needed to take a break,

19   just let me know.

20      A       Okay.

21      Q       Okay?

22              And while I understand what you

6

```
 1    mean when you nod, the court reporter can't

 2    understand that, so we need a Yes or a No.

 3         A    Okay.

 4         Q    So, first, I would like to show

 5    you what we have marked here as Exhibit 1.

 6              If you could just take a look at

 7    that.  And that's the Notice that we're going to

 8    be talking about today that you're here in

 9    reference to.

10              Do you feel confident that you

11    can, at least to the best of your knowledge,

12    tell us about these Areas of Inquiry for the

13    brand drugs at Watson?

14         A    Yes.

15         Q    Okay.  First of all, can you just

16    tell us first the two brand drugs are

17    Ferrlecit --

18         A    Right.

19         Q    -- and INFeD, correct?

20         A    Yes.

21         Q    And does Watson have any other

22    brand drugs?
```

# Exhibit F



FILE COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In Re:  PHARMACEUTICAL INDUSTRY :
AVERAGE WHOLESALE PRICE :
LITIGATION :
                                                                :
THIS DOCUMENT RELATES TO:          : MDL NO. 1456
                                                                :
STATE OF MONTANA v. ABBOTT        : Master File No. 01-CV-12257-PBS
LABORATORIES, INC. et al., Civil        :
Action No. 02-12084-PBS,              : Judge Patti B. Saris
                                                                :
and                                                         :
                                                                :
STATE OF NEVADA v. AMERICAN HOME :
PRODUCTS CORP. et al., Civil Action No. :
02-12086-PBS                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## [▆▆▆▆▆▆] SCHEDULING ORDER

WHEREAS, plaintiffs Montana and Nevada each filed an action in their respective state

courts on February 25, 2002 and March 7, 2002, respectively;

WHEREAS, such actions were removed to federal court in April 2002;

WHEREAS, the above captioned actions were transferred to this Court by the Judicial

Panel on Multidistrict Litigation in October 2002;

WHEREAS, no responsive pleadings have been filed in the Montana action;

WHEREAS, plaintiffs intend to file amended complaints on or before August 1, 2003;

WHEREAS, defendants anticipate that they will move to dismiss the amended

complaints;

WHEREAS, judicial economy would be best served if defendants are relieved from their

obligation to answer the current Montana complaint;

IT IS HEREBY ORDERED as follows:



1.  Defendants are relieved from their obligation to respond to the current Montana complaint.

2.  Plaintiffs shall file amended complaints no later than August 1, 2003.

3.  Defendants shall file responsive pleadings or otherwise move against the amended complaints by September 15, 2003.

4.  In the event that defendants move to dismiss the amended complaints, defendants shall file one consolidated memorandum not to exceed ~~forty (40)~~ 20 pages in total, addressing issues common to all defendants. In addition to the consolidated memorandum, any defendant may file an individual supporting memorandum not to exceed five (5) pages addressing issues specific to that defendant.

5.  Plaintiffs shall file and serve their opposition to any responsive motion(s) by October 10, 2003 ~~October 30, 2003~~. Plaintiffs' opposition to all responsive motions shall not exceed ~~sixty (60)~~ 20 pages plus five pages per defendant pages in total.

6.  Defendants shall file and serve any replies by October 30 ~~November 14,~~ 2003. Any consolidated reply on issues common to all defendants shall not exceed twenty (20) pages, and any replies by individual defendants on issues specific to that defendant may not exceed three (3) pages.

7.  Plaintiffs shall file and serve any surreply by November 14, 2003 ~~December 1, 2003~~. Plaintiffs' surreply shall not exceed forty (40) pages in total.

Dated: ~~July~~ August 13, 2003

Patti B. Saris
United States District Judge

A HEARING ON MOTIONS TO DISMISS IS SET FOR DECEMBER 3, 2003, AT 2:00 P.M.



## CERTIFICATE OF SERVICE

I certify that on July 16, 2003, a true and correct copy of the foregoing Joint Motion for Entry of Scheduling Order was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.

Juliet S. Sorensen

FILED
IN CLERKS OFFICE
2003 AUG 12 P 4: 48
U.S. DISTRICT COURT
DISTRICT OF MASS.

# Exhibit G



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456<br>)<br>) CIVIL ACTION: 01-CV-12257-PBS<br>)<br>) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) Judge Patti B. Saris<br>) |

## NOTICE OF APPEARANCE FOR DEFENDANT WATSON PHARMACEUTICALS, INC.

PLEASE TAKE NOTICE, that Douglas B. Farquhar of Hyman, Phelps, & McNamara, P.C. hereby appears as counsel in this action for defendant, Watson Pharmaceuticals, Inc. ("Watson").

Pursuant to Paragraph 16 of Case Management Order No. 1, Watson will, along with this Notice of Appearance, pay the appropriate filing fee for admission *pro hac vice* of Douglas B. Farquhar to practice before this Court as Watson's attorney in this action.



Respectfully submitted

Douglas B. Farquhar
Hyman, Phelps & McNamara, P.C.
700 13th Street, N.W., Suite 1200
Washington, D.C.  20005
(202) 737-9624
(fax) (202) 737-9329
Attorneys for Watson Pharmaceuticals, Inc.