## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE ) | MDL NO. 1456 |
| LITIGATION ) | Civil Action No. 01-12257-PBS |
| _____) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO ) | |
| THE AMENDED MASTER ) | Chief Mag. Judge Marianne B. Bowler |
| CONSOLIDATED CLASS ACTION ) | |
| _____) | |

## DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY BRIEF

Pursuant to Local Rule 7.1(B)(3) Defendants hereby request leave to file a reply to Third Party Health Net, Inc.'s Opposition to Defendants' Motion to Compel the Production of Document Pursuant to Subpoena.  Defendants submit that this brief reply is necessary to correct misstatements of fact and misleading statements of law in the submission of Third Party Health Net, Inc. and will aid the Court in considering the issues raised by Defendants' motion.

Wherefore, Defendants respectfully request that the Court grant leave to file the attached reply memorandum.

Respectfully submitted,

_____/s/ Andrew D. Schau_____

Andrew D. Schau (admitted pro hac vice)
Erik Haas (admitted pro hac vice)
Adeel A. Mangi (admitted pro hac vice)
PATTERSON, BELKNAP, WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for the Johnson &
Johnson Defendants on behalf of all
Defendants to the Amended Master
Consolidated Class Action Complaint*

Dated:  December 13, 2004

1129726v1

**CERTIFICATE OF SERVICE**

I certify that on December 13, 2004, a true and correct copy of the forgoing

Defendants' Motion For Leave to File Reply Brief was served on all counsel of record by

electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy

to Verilaw Technologies for posting and notification to all parties.  I further certify that a copy

was served on December 13, 2004 on counsel for third party Health Net, Inc. by Federal Express.

        /s/ Andrew D. Schau

Andrew D. Schau (admitted pro hac vice)
Erik Haas (admitted pro hac vice)
Adeel A. Mangi (admitted pro hac vice)
PATTERSON, BELKNAP, WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for the Johnson &*
*Johnson Defendants on behalf of all*
*Defendants to the Amended Master*
*Consolidated Class Action Complaint*

1129726v1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                        )
IN RE PHARMACEUTICAL INDUSTRY   )
AVERAGE WHOLESALE PRICE              )     MDL NO. 1456
LITIGATION                                          )     Civil Action No. 01-12257-PBS
_____)
                                                        )   Hon. Patti B. Saris
THIS DOCUMENT RELATES TO THE    )
AMENDED MASTER CONSOLIDATED )     Chief Mag. Judge Marianne B. Bowler
CLASS ACTION                                    )
_____)


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO COMPEL THIRD PARTY HEALTH NET, INC. TO PRODUCE
DOCUMENTS PURSUANT TO SUBPOENA**

Defendants to the Amended Master Consolidated Class Complaint ("defendants)

respectfully submit this reply brief in further support of Defendants' Motion To Compel Third

Party Health Net, Inc. To Produce Documents Pursuant To Subpoena.[1]

## ARGUMENT

Third party Health Net Inc. ("Health Net") makes four arguments in opposition to

defendants' motion to compel.  First, that this Court lacks jurisdiction to decide this motion to

compel.  Second, that defendants' subpoena intrudes upon patients' privacy rights.  Third, that

defendants' subpoena impermissibly seeks confidential trade secrets.  Fourth, that defendants'

subpoena is overbroad and burdensome.  None of these arguments withstand scrutiny.

## 1.     This Court has Jurisdiction to Compel
##        Production Pursuant to the MDL Statute

Health Net accepts that numerous cases from around the country cited by

defendants recognize that this Court has jurisdiction to compel production pursuant to the MDL

statute.[2]  Health Net argues, however, that those cases should be ignored because they make

"assert[ions] without analysis."  *Id.*  Health Net asks the Court to follow instead a solitary ruling

from the Northern District of California.  *Id.*

Health Net's arguments are without merit.  As Health Net recognizes, the weight

of the case law holds that the MDL statute empowers MDL courts to rule upon subpoenas *duces*

*tecum* as well as deposition subpoenas.  Those rulings are logical, since the benefits of

consolidated pretrial proceedings in an MDL court would be defeated if parties had to litigate

---

[1] Consistent with its tardiness in responding to this subpoena, Health Net filed its opposition to this motion well outside the time period specified by the Local Rules.  Defendants' motion was filed on November 17, 2004.  Pursuant to Local Rule 7.1(B)(2), Health Net's opposition was due on December 1, 2004.  It was not filed until December 6, 2004.  Moreover, Health Net failed to serve a copy of its opposition on defendants.  Instead, defendants retrieved a copy from the Court docket and then served it electronically on all parties via Verilaw.

[2] *See* Third Party Health Net, Inc.'s Memorandum of Law in Opposition to Defendants' Motion to Compel Production of Documents Pursuant to Subpoena ("Health Net Opposition") at 5.

discovery motions all over the country.  Indeed, the cases cited by defendants explicitly detail

such reasoning.  *See e.g.*, *In re Subpoena Issued to Boies, Schiller & Flexner LLP*, No. M8-85,

2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003):

> Enforcing or quashing a subpoena duces tecum is inherent to the
> authority to supervise pretrial proceedings and "pretrial
> depositions" in "any district"…[and such a finding] furthers the
> goal of judicial economy, one of the underlying purposes of §
> 1407, as [the MDL Judge] is already familiar with this complex
> litigation, which has consolidated cases from districts throughout
> the country, including this one.… [R]eferral will [also] serve the
> interest of judicial consistency, also at the heart of § 1407.

Similar factors were discussed by another district court in *U.S. ex. Rel. Pogue v.*

*Diabetes Treatment Ctrs. of Am.,* 238 F. Supp. 2d 270 at 275:

> [C]ertainly the production, identification, and discussion of
> documents is an integral part of many depositions.  Further, it
> would make no sense for § 1407(b) to confer authority to conduct
> depositions, but not the authority to require productions of
> documents at a deposition.  (Internal citations and quotation marks
> omitted).

See *id.* citing *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 174 F.R.D. 412, 415 (N.D.

Ill. 1997*); In re Sunrise Secs. Litig.,* 130 F.R.D. 560, 586 (E.D. Pa. 1989); *In re San Juan*

*DuPont Plaza Hotel Fire Litigation,* 117 F.R.D. 30, 32 (D.P.R. 1987).[3]  *See also* 15 Charles Alan

Wright & Arthur R. Miller, Federal Practice And Procedure Jurisprudence  § 3866 ("[pursuant to

§ 1407] the transferee court appears to have control over all proceedings prior to trial.

Consequently, all discovery motions properly are to be determined by the transferee court since

they fall within this frame of reference.").

---

[3] Health Net selectively quotes the *U.S. ex. rel. Pogue* decision for the proposition: "[I]t is not entirely a
settled question whether an MDL court may enforce a subpoena *duces tecum* issued by another court
under the grant of authority of § 1407 to act as a judge of the district from which the subpoena issued."
Health Net Opposition at 4.  But Health Net omits the very next sentences of the court's opinion, which
state: "However, the weight of authority and effectuation of the purposes of multi-district litigation
support a finding of jurisdiction.  Therefore, this Court finds it has jurisdiction to [compel compliance
with] subpoenas *duces tecum*…."  *See U.S. ex. rel. Pogue*, 238 F. Supp. 2d at 273.

1129726v1

Against the combined weight of these authorities, Health Net cites one district court decision: *VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615 (N.D. Cal. 2002). The *VISX* decision, however, was expressly rejected in *U.S. ex. rel. Pogue*. *See U.S. ex. rel. Pogue*, 238 F. Supp. 2d at 275. Indeed, as best we can determine, the *VISX* court's reasoning has never been accepted by any court. Moreover, the *VISX* court itself expressly distinguished cases such as the present one, where the subpoena in questions calls for both documents and a deposition, limiting its holding to subpoenas for documents only. *See VISX*, 208 F.R.D. at 616. Accordingly, defendants respectfully submit that this Court should follow the clear weight of authority on this issue and find that it has jurisdiction to rule upon this motion to compel.

## 2.     Health Net's Patient Privacy Arguments are Irrelevant

Health Net claims that defendants' requests for claims data intrude upon patient privacy rights, citing to authorities such as the California State constitution and the California Code of Civil Procedure. *See* Health Net Opposition at 6. Health Net asks "why defendants need to know that on a date certain John Smith received a treatment for HIV" and asks the Court to require defendants to individually notify "millions of subscribers" of this subpoena. *Id*. at 7-8.

These arguments are a classic red herring. First, patient privacy issues are moot given this Court's entry of a HIPAA complaint protective order. *See* 45 C.F.R. § 164.512(e)(1)(v)). Second, in the few instances where health insurers have nonetheless asked for consent to obscure patient identifying information, defendants have agreed. Defendants have then proposed the use of a scrambler algorithm that masks patient identities, substituting consistent dummy numbers for patient identity numbers, which addresses the plans' concerns while still enabling defendants to carry out necessary statistical analysis. Defendants have agreed to this because defendants have no interest in patient identities – defendants' focus is on

insurers' reimbursements for drugs.  Other health insurers subpoenaed in this litigation have adopted this approach and produced claims data accordingly.

Here, defendants offered the use of such a scrambler algorithm to Health Net to address their patient privacy concerns in July 2004.[4]  Health Net then <u>agreed</u> that such an approach would resolve their patient privacy concerns, noting that the only remaining outstanding issue was whether it could redact its reimbursement methodologies as a trade secret. *See* October 29, 2004 letter from Counsel for Health Net to Defendants, attached as Ex. M to Defendants' Opening Brief:

> With respect to the claims data, you proposed the use of a scrambler algorithm to obscure data in the information fields that are impacted by the use of the various privacy concerns Health Net raised in its objections to the subpoenas.  You stated that the use of a scrambler algorithm would enable the defendants to perform the individual tracking analysis they require, while "dealing with" Health Net's confidentiality concerns to the extent that they are not covered by the HIPAA-compliant protective order.  Your proposal is acceptable to the extent Health Net's pharmacy files do not disclosure the formulae health Net employs to determine the amounts it will reimburse for the various drugs.

Health Net repeats this point in a letter that December 1, 2004 that it appends as Exhibit 3 to its opposition papers, stating "we seem to have reached agreement that a scrambler algorithm may be used to mask confidential patient information."[5]

---

[4] See July 28, 2004 letter from counsel for defendants to Health Net, attached at Exhibit E to the Memorandum of Law in Support of Defendants' Motion to Compel Third Party Health Net, Inc. To Produce Documents Pursuant to Subpoena ("Defendants' Opening Brief").  As stated in the first line, that letter was written in response to Health Net's letter of July 16, 2004, disproving Health Net's claims that "Defendants never addressed the positions Health Net carefully explained in that letter… Instead, defendants simply continued to insist that Health Net comply with their subpoena in all respects, without compromise."  *See* Health Net Opposition at 3.

[5] This letter, written after this motion to compel was filed, also seeks to manufacture other new complaints for purposes of litigating this motion e.g. raising for the first time Health Net's desire to mask in claims data the identity of vendors with which it contracts.  This letter is simply a post-motion attempt to skew the factual record.  Defendants' responsive letter is attached hereto as Exhibit A to ensure clarity of the record.

Clearly, therefore, Health Net's appeal to patient confidentiality in its opposition papers is nothing more than a smoke screen prompted by this motion to compel and designed to obscure its non-compliance with the subpoena. Indeed, while claims data has been produced by dozens of health insurers in this litigation, not a single health insurers other than Health Net has refused to produce this data on the grounds of patient privacy.[6]

**3.     Health Net's Confidentiality Interests
          are Safeguarded by Protective Orders**

Health Net continues to claim that it should be given special treatment and allowed to produce documents with redactions, in contrast to all other third party insurers that have produced documents in this litigation without redaction. Bizarrely, Health Net claims that "defendants' only possible reason for wanting that information, especially at the present stage of this action, is to compromise Health Net's ability to compete in the marketplace." Health Net Opposition at 18-19.

Health Net's arguments are built entirely on one case: *In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738 (S.D. Ohio 2003). *See* Health Net Opposition at 17 (emphasis added):

> Information respecting Health Net's reimbursement rates is a trade secret which is the lifeblood of Health Net's financial well being, and the disclosure of that trade secret in this litigation, ***where various parties are Health Net's competitors,*** is prohibited under the principle of Vitamins Antitrust Litigation.

---

[6] Health Net also exerts much energy in arguing defendants must be required to pay the costs of Health Net's data collection. This is a non-issue. Defendants offered to pay the specified costs months ago, provided Health Net provide a good faith estimate of the cost of data on current and older archived systems before proceeding with the data pull. *See* July 28, 2004 letter from Counsel for defendants to Health Net, attached at Exhibit E to Defendants' Opening Brief. Indeed, if very old claims data is no longer readily accessible and the costs of retrieving it would be prohibitive, defendants will not insist on retrieving such data, consistent with the position taken with other insurers.

Health Net's position is misleading as to law and fact.  The *In re Vitamins* court expressed concern over the fact that the parties to the litigation seeking production from a subpoenaed third party were its direct competitors.  Even in those circumstances, however, the fact that the subpoena sought trade secrets was not dispositive.  Rather, the court emphasized that the motion was premature (*In re Vitamins*, 267 F. Supp. 2d at 742):

> [G]iven that [the third parties] records will be irrelevant to the interests of [the subpoena issuing party], insofar as its defense…is concerned, should its motion to dismiss be granted, the Court believes that the wise course is to nip any potential economic harm to [the third party] in the bud, but not enforcing the subpoena *at this time*.  (Emphasis in original).

The Court then added that if the subpoena issuing party did not prevail in its motion to dismiss it would "be welcome to have a new subpoena issued on its behalf, seeking everything that it seeks in the one currently at issue" and that whereas its concerns over confidentiality were serious "they would not necessarily be independently dispositive."  *Id*. at 743.

Here, the defendant drug manufacturers are not competitors of Health Net, which is a health insurer.  Health Net is aware of this, though it continues to claim otherwise, because defendants communicated this to them in a letter quoted in defendants' opening brief.  *See* Defendants' Opening Brief at 3.  Furthermore, defendants' motions to dismiss here have already been decided and there is no claim that the discovery sought is premature.  Also unlike in *Vitamins*, the need for the discovery sought here is self evident.  Indeed, defendants have submitted expert reports containing detailed analysis of the reimbursement methodologies and claims data produced by other health plans in this case in their oppositions to class certification. As the Court will have seen from that analysis, the precise reimbursement methodologies employed by third party health plans are a critical component to disproving plaintiffs' claims in

6

this action, establishing that each reimbursement decision is the result of particular negotiations that result in many variations, showing knowledge in the industry regarding the relationship between AWP, WAC and acquisition costs, and enabling meaningful analysis of claims data. Contrary to Health Net's repeated claims, defendants have repeatedly explained to them why redaction is unacceptable, both by phone and by letter. *See e.g.,* Defendants' October 1, 2004 letter to Counsel for Health Net attached as Exhibit B.

Health Net's only remaining argument is that it resolved another subpoena in this case using the "same methodology." Health Net Opposition at 19. This argument is equally without merit. Health Net's counsel represented Pharmaceutical Care Networks ("PCN"), a very small and unrelated Pharmacy Benefits Manager, in relation to a different subpoena served upon it by defendants in this case. PCN was subpoenaed because of its relationship with a named plaintiff, the Teamsters Health & Welfare Fund of Philadelphia and Vicinity, and discovery was appropriately limited since that entity was not part of an industry sample as is Health Net here. Moreover, the documents produced by PCN pursuant to the subpoena regarding its relationship with the Teamsters were unredacted in relevant part. Accordingly, contentions regarding that subpoena, which focused on specific issues and resulted in the production of unredacted contracts, do not advance Health Net's arguments in regard to the issues before the Court.

## 4. Defendants Seek a Narrow and Focused Production

Health Net claims that defendants' subpoena seeks "an astronomically large pool of responsive documentation," that defendants now "seek production of everything demanded by their 'all documents' subpoena" and that defendants "have now tried to perform an end run… by filing their mostly boilerplate motion, which by simply requesting that their subpoena be

7

enforced seeks to abrogate the compromises the parties have reached to this point." *See* Health Net Opposition at 1-2, 19.

These claims are simply false. Defendants drastically narrowed the scope of the documents sought through a process of negotiation, including seeking samples of contracts representative of reimbursement methodologies employed rather than all contracts and offering to proceed in part through informal responses to questions and depositions rather than requiring document production on all issues. It was the defendants, not Health Net, who raised these and other options designed to facilitate production. The extent of the narrowing is self evident given that Health Net's entire production to date has constituted only about half a box of documents.

Defendants now seek only the production of those same documents without redactions or text obscuring watermarks and including missing pages, and the production of specific additional documents that Health Net's witnesses testified about at their depositions. For example, Health Net's own witnesses testified that the contracts produced did not constitute representative samples in some instances and defendants accordingly sought supplementation of that contract production. Similarly, all categories of additional documents sought by defendants in their October 15, 2004 letter are limited in scope and readily available as they were the subject of testimony from Health Net's own witnesses. Finally, the claim that defendants' motion is "boilerplate" is spurious on its face given the specific and individualized detail in defendants' motion papers regarding Health Net's continued failure to adequately respond to this subpoena, which has now been outstanding for over a year.

8

## CONCLUSION

For the foregoing reasons, defendants' motion to compel should be granted and Health Net should be ordered to produce the documents sought.

Respectfully submitted,

_____/s/ Andrew D. Schau_____

Andrew D. Schau (admitted pro hac vice)
Erik Haas (admitted pro hac vice)
Adeel A. Mangi (admitted pro hac vice)
PATTERSON, BELKNAP, WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for the Johnson &*
*Johnson Defendants on behalf of all*
*Defendants to the Amended Master*
*Consolidated Class Action Complaint*

Dated:  December 13, 2004

9

## CERTIFICATE OF SERVICE

I certify that on December 13, 2004, a true and correct copy of the forgoing Reply Memorandum Of Law In Further Support Of Defendants' Motion To Compel Third Party Health Net, Inc. To Produce Documents Pursuant To Subpoena was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.  I further certify that a copy was served on December 13, 2004 on counsel for third party Health Net, Inc. by Federal Express.

_____/s/ Andrew D. Schau_____

Andrew D. Schau (admitted pro hac vice)
Erik Haas (admitted pro hac vice)
Adeel A. Mangi (admitted pro hac vice)
PATTERSON, BELKNAP, WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for the Johnson &*
*Johnson Defendants on behalf of all*
*defendants to the Amended Master*
*Consolidated Class Action Complaint*

Dated:  December 13, 2004

1129726v1