**APPENDIX A**

**Table of Cases Rejecting Arguments That a Market Is Too Complex to Certify a Class**

- *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 92-93 (E.D. Pa. 2003) (rejecting defendant's argument that the microcrystalline cellulose market was so complicated that it did not behave as a typical economic model would predict, and stating that this common defense argument "is usually rejected where the conspiracy issue is the overriding one.").

- *In re Northwest Airlines Corp.*, 208 F.R.D. 174, 218 (E.D. Mich. 2002) (certifying class of airline ticket purchasers and rejecting defense assertion that "participants in a massive, nationwide industry are exempted from the purview of the civil antitrust laws ... because of their ability to portray the class as so large and the industry as so complex and complicated that an action to hold the participants accountable for the injuries they have caused cannot possibly be brought as a class action.").

- *DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551, 561-62 (M.D.N.C. 2002) (Certifying class of tobacco sellers notwithstanding the existence of a number of localized factors affecting price, commenting that "[d]efendants are not alone in their contention that their market is too diverse and complicated for classwide analysis....").

- *In re: Magnetic Audiotape Antitrust Litig.*, 2001 U.S. Dist. Lexis 7303, at *20 (S.D.N.Y. June 1, 2001) (finding common impact though defendants argued that there were significant differences between purchasers, and contract terms and prices varied).

- *Midwestern Mach. v. Northwest Airlines, Inc.*, 211 F.R.D. 562 (D. Minn. Jan. 18, 2001) (Certifying a class of consumers alleging that Northwest overcharged for airline tickets where plaintiffs submitted generalized evidence that all fare prices were determined or negotiated from a published base price, noting: "Courts ... have rejected the proposition that the purported complexity and largesse of a given industry are sufficient to preclude class certification. ... Simply because an industry involves an elaborate pricing system that results in a range of prices often individually negotiated is an insufficient reason for denying class certification.").

- *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484-85 (W.D. Pa. 1999) (rejecting defendants' contention that

A-1

diverse products, markets, and pricing would prevent proof of an overarching conspiracy).

• *In re Commercial Tissue Products*, 183 F.R.D. 589, 595 (N.D. Fla. 1998) (courts reject arguments that the complexity of an industry should defeat class certification; "even if there is considerable individual variety in pricing because of individual price negotiations, class plaintiffs may succeed in proving classwide impact by showing that the minimum baseline for beginning negotiations, or the range of prices which resulted from negotiation, was artificially raised (or slowed in its descent) by the collusive actions of the defendants").

The heart of defendants' argument is that the individual questions of fact and law predominate over the general questions of law and fat because the price paid by each distributor was determined through an elaborate system of individualized negotiations, contracts and rebates. To determine any class-wide impact, argue the defendants, you must first prove the impact, if any, on each of the class members. *Because pricing in the industry is allegedly so individualized, the plaintiffs will be unable to show any consistent class-wide relationship between the acts of the defendants and the prices paid by class members. Or at the very least, argue the defendants, proving such impact will require infinite mini-trials concerning the price actually paid by each class member. While defendant's argument is attractive at first blush, closer analysis reveals its flaws. First, many cases have held that even if there is considerable individual variety in pricing because of individual price negotiations, class plaintiffs may succeed in proving class-wide impact by showing that the minimum baseline for beginning negotiations, or the range of prices which resulted from negotiation, was artificially raised* (or slowed in its descent) by the collusive actions of the defendants. *See, e.g., In re Catfish Litig.*, 826 F. Supp. 1019 (N.D. Miss. 1993); *In re Infant Formula Antitrust Litig.*, 1992 WL 503465, at *5 (Jan. 13, 1992) ("Contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected. Courts have consistently found the conspiracy issue the overriding, predominant question"); *In re Domestic Air Transp.*, 137 F.R.D. 677, 689 (N.D. Ga. 1991) (inflated fares resulted in artificial "base" price which became benchmark for discounted or negotiated fares); *Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 475 (E.D. Pa. 1979) (despite negotiated or discounted prices, artificial minimum became "base" price). In the instant case, as in the *Corrugated Carton, NASDAQ, Plywood, Glassine* and *Small Bags* cases, the

A-2

plaintiffs allege that any individual price negotiations for commercial tissue products began from price lists or guidelines which plaintiffs allege were artificially and unlawfully inflated by the conspiracy. Thus defendants' argument that diversity of pricing destroys predominance is unavailing.

- *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 238 (E.D.N.Y. 1998) (allowing certification where defendant argued that proof of alleged conspiracy required the individual examination of defendant's interaction with approximately 1400 retailers).

- *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) (finding that Rule 23(b)(3) was satisfied where plaintiffs alleged antitrust conspiracy concerning thousands of sales of securities to "at least a million members").

- *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 377 (S.D.N.Y. 1996) (finding that proof of class-wide impact was possible, despite the facts that the defendants offered more than 8,000 distinct industrial diamond products, and that individual customers negotiated a variety of discounts, rebates, credits or special service arrangements).

- *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1038 (N.D. Miss. 1993) (class certified even though "defendants launch[ed] a well armed defensive strategy with the aim of convincing the court that the catfish processing industry is a highly diverse, fragmented industry which is totally incapable of price fixing, or producing any predominating result or consequence.").

- *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 685 (N.D. Ga. 1991) (class certified even when "Defendants present an exceedingly complex industry that goes through a mind-boggling number of fare changes each day.").

- *In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551, 559-60 (S.D. Fla. 2001) (Certifying class of direct purchasers of prescription drugs and holding "defendants' assertions concerning the complexity of their pricing practices and other data used in the pharmaceutical industry do not persuade the Court that 'individual damage calculations will overwhelm the proceedings .... Complex industries, practices, or data are often examined in the course of class actions.") (citing cases).

A-3

- The defendants' assertions concerning the complexity of their pricing practices and other data used in the pharmaceutical industry do not persuade the Court that "individual damage calculations will overwhelm the proceedings." (Defs.' Opp'n at 31; *see id.* at 33-38.) The plaintiffs have demonstrated that damages may be estimated with common proof and a common method. Indeed, the jury may be able to calculate damages on an aggregate, class-wide basis and allocate those funds to individual direct purchasers. Complex industries, practices, or data are often examined n the course of class actions.

- *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 345 (E.D. Mich. 2001), *leave to appeal denied*, No. 01-0109 (6th Cir. June 18, 2001) (the court certified the class even after finding that 'defendants' attempt to characterize the market as too complex for common proof of injury is not unique").

- Defendants' attempt to characterize the market as too complex for common proof of injury is not unique. The heart of defendants' argument is that the individual questions of fact and law predominate over the general questions of law and fact because the price paid by each [class member] was determined through an elaborate system of individualized negotiations, contract and rebates. To determine any class-wide impact, argue the defendants, you must first prove the impact, if any, on each of the class members. Because pricing in the industry is allegedly so individualized, the plaintiffs will be unable to show any consistent class-wide relationship between the acts of the defendants and the prices paid by class members. Or at the very least, argue the defendants, proving such impact will require infinite mini-trials concerning the price actually paid by each class member. *In re Commercial Tissue Products*, 183 F.R.D. 589, 595 (N.D. Fla. 1998). The courts have routinely rejected similar arguments, despite differences in prices paid by class members, where the plaintiffs show that the "minimum baseline for beginning negotiation, or the range of prices which resulted from negotiations, was artificially raised (or slowed in its descent) by the collusive actions of the defendants." *Id.* (citing *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019 (N.D. Miss. 1993)). *See also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 523; and *Hedges Enter., Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 475 (E.D. Pa. 1979).

- *In re Synthroid Mktg. Lit.*, 188 F.R.D. 295, 300 (N.D. Ill. 1999) (certifying RICO class and rejecting defendants' assertion that the pharmaceutical distribution chain was too

A-4

complex for class treatment, stating "The question of
liability, therefore, will turn on whether the defendants
engaged in the alleged conduct, consisting primarily of the
uniform suppression of material information, not on the
individual decisions and circumstances of countless people
along the chain of distribution of Synthroid.").

- *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219
F.R.D. 661, 678 (D. Kan. 2004) (certifying antitrust class
for persons who paid a Universal Service Fund ("USF")
surcharge as part of their payment for telephone service and
rejecting defendant's assertion that the "broad spectrum of
customers, services, and markets at issue render this case
unsuitable for class treatment," stating "defendants'
argument focuses on their long-distance products in
general. The allegedly conspiratorially overpriced product
in this case, however, is much more narrow: the USF
surcharge. That surcharge is a fungible, homogenous
product embodied in a flat percentage charge that is readily
susceptible to being segregated from any non-homogenous
aspects of defendants' products. In other words,
defendants' arguments regarding the variations in their
products, pricing, services, and markets focus on the sale of
defendants' products as a whole, whereas the USF
surcharge is the actual product at issue here … therefore
any deviations among those rates go to the issue of
individual damage calculations, not to the issue of
liability.").