# Exhibit 4

**Witness Statement**
**For**
**Oversight and Investigations Subcommittee Hearing**
**On**
**December 7, 2004**

Mister Chairman, Members of Congress,

My name is Edward Stratemeier. Until recently I was Senior Vice President of Aventis Pharmaceuticals. My responsibilities included legal matters, government relations and public policy in North America. Aventis is a global pharmaceutical company that has just been acquired by Sanofi-Synthelabo to form Sanofi-Aventis. As a result of the merger I left the company.

I am here today at the Committee's request as a private citizen. I understand that the purpose of today's hearing is to address issues relating to AWP-based reimbursement of prescription drugs under Medicaid. I have been asked to discuss with the Committee the policy position developed by Aventis during my tenure there with respect to AWP based reimbursement for prescription drugs.

I joined Marion Laboratories, one of the predecessor companies of Aventis in 1982. Over the past twenty years I have been actively engaged in the prescription pharmaceutical industry as an attorney and a senior executive. It was in my capacity as head of government relations and public policy that I oversaw the development of Aventis' position on reimbursement for pharmaceuticals under Medicare and Medicaid.

formulary.) They also forced pharmacies to compete on price by requiring pharmacists to sign contracts if they wanted to serve the population covered by the plan. I should point out that all of these agreements used AWP as the benchmark price.

While these trends were occurring, there was tremendous pressure to maintain AWP at a fixed markup from WAC. AWP had been codified as the benchmark price, by statute or regulation in the public sector and by contract in the private sector. As the difference between AWP and the real prices paid by pharmacists and providers began to increase, the difference was used to compensate for lack of payments for services. A change in the current, well-known relationship of AWP to WAC would have far reaching effects on the provision of health care services.

In 1990, Congress recognized that private sector payers were able to negotiate substantial discounts from pharmaceutical manufacturers. To take advantage of these negotiations for Medicaid, Congress included provisions in the Omnibus Budget Reconciliation Act requiring pharmaceutical manufacturers to pay a rebate on Medicaid purchases that was based on the "Best Price" negotiated by private sector payers.

In 2001, the Office of the Inspector General of the Department of Health and Human Services and the General Accounting Office both issued reports that found that Medicare providers were paying substantially less than AWP to obtain the drugs they dispensed to patients and recommended government reimbursements to providers for drugs be brought more in line with acquisition costs. As committee staffs were considering the question,