UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) ) | Judge Patti B. Saris |

**PLAINTIFFS' REPLY TO THE JOHNSON & JOHNSON GROUP'S
<u>MEMORANDUM OF LAW IN OPPOSITION TO CLASS CERTIFICATION</u>**

**[REDACTED VERSION]**

Plaintiffs respectfully submit this reply to defendant Johnson & Johnson Group's ("J&J") Memorandum of Law in Opposition to Class Certification.

The primary contention in J&J's "separate" memorandum is that each of its operating companies is "decentralized," and that, as a result, the pricing and marketing practices of the parent and seven operating companies are too highly individualized for class treatment. J&J Br. at 1-2.[1] However, the clear record and well-established law belie J&J's arguments. Plaintiffs can and will use common proof against J&J. It will include proof that each J&J entity published AWPs, the AWPs were artificially inflated, inflation was for the purpose of moving market shares, and as a result class members who paid for J&J drugs were injured. The fact J&J is decentralized does not detract from the core common conduct each J&J entity engaged in.

## I.   THE CORE ISSUES AS TO J&J'S MISCONDUCT CAN BE ESTABLISHED BY COMMON PROOF

Despite defendants' effort to overcomplicate class certification issues in this case, this is not a case where individualized facts swamp common issues. In its brief, J&J highlights the fact that the case involves thirty-four J&J drugs, manufactured by seven J&J entities, each of which has a different indication and is marketed and sold differently to a variety of customers. J&J Br. at 1, 8. However, the variations identified by J&J are red herrings. The core class-wide issues in this case – whether AWP was the basis for reimbursement, whether J&J deliberately inflated and controlled the AWPs that were published by industry compendia, whether J&J provided substantial undisclosed rebates and administrative fees to PBMs on their oral drugs, and whether the Class was harmed by J&J's misconduct – are present here and can be established by common proof. The

---

[1] J&J also contends that Dr. Hartman's analysis is illogical and that Plaintiffs' case is unmanageable. J&J Br. at 2, 9-10. Each of these contentions is a mere rehashing of arguments raised in defendants' opening brief and in their motion to strike the testimony of Dr. Hartman. In further response, Plaintiffs incorporate by way of reference the arguments set forth in their Reply Memorandum in Support of Class Certification and Plaintiffs' Opposition to the Motion To Strike.

existence of different business units cannot detract from the common issues created by each unit's adherence to the same AWP scheme.

Plaintiffs can establish through common proof that AWP was the basis for reimbursement for each class member. For the Part B Class, regulations required that drugs were priced and reimbursed based on AWP. As for self-administered and physician administered drugs, defendants' own documents prove beyond any doubt that AWP was the "industry standard," and that "payers use AWP as a basis for reimbursing retail pharmacy." Plaintiffs can prove this industry standard through the introduction of contracts at every level of the distribution chain that uniformly uses AWP as the basis for payment.[2] Plaintiffs also will introduce expert testimony, based on economic analysis, to show what the price would have been but for the AWP scheme, and the impact of the scheme on the Class on a drug-by-drug basis.

As to J&J, the record is replete with evidence that the J&J companies deliberately inflated the AWPs of their drugs, controlled the prices that were published by compendia, and provided rebates and administrative fees to PBMs.



Exhibit ("Ex.") 1[3]; ███ Ex. 2; ███ Ex. 3; ███ Ex. 4. ███ Ex. 5.

---

[2] *See* Summary charts of contracts produced in this case confirming the ubiquity of AWP, used in the tutorial attached as Exhibits 2-3 to Plaintiffs' Reply Memorandum in Support of Class Certification.

[3] All exhibits referenced in this memorandum are attached to the Declaration of Steve W. Berman In Support of Plaintiffs' Reply To Johnson & Johnson Group's Individual Memorandum In Opposition To Class Certification unless otherwise indicated.

Second, J&J knowingly dictated the AWP prices for J&J drugs published in industry compendia. [redacted] Ex. 6; [redacted] Ex. 5. [redacted] Ex. 5. [redacted] Ex. 1 [redacted] Ex. 2. [redacted] Ex. 7. [redacted] Ex. 8; [redacted] Ex. 2. [redacted] Ex. 7. [redacted] 



Ex. 1.

Ex. 9.

Ex. 10.

Ex. 11.

The designation of certain fees as "administrative fees" is further evidence of the PBMs and J&J conspiring to hide drug discounts from Class members. Both administrative fees and rebates are typically calculated based on a percentage of total purchases by a PBM's members. However, while a PBM may share some of the rebates it receives with its members, the PBMs never share their administrative fees with members. ███████████████████████████████████ Ex. 3. It is to the PBM's benefit to designate some of their payments as administrative fees, as opposed to rebates. ██████████████████████████████ Ex. 12.

Accordingly, Plaintiffs will be able to establish the core issues in its claims against J&J by common proof.

## II. THE J&J PARENT COMPANY CENTRALLY CONTROLS PRICING AND DRUG REBATE PAYMENTS

J&J contends that there is no evidence linking the pricing, marketing and sales activity of its operating companies. J&J Br. at p. 1, 8. J&J contends that each of the J&J companies operates independently from its "decentralized" parent company and makes its own decisions. J&J Br. at p. 8. Contrary to this contention, the record shows that the J&J drugs were priced, sold and marketed under company-wide policies and practices. [redacted] Ex. 1 [redacted] Ex. 2; [redacted] Ex. 3.

Second, it is clear that the parent company has been highly involved in overseeing the strategic pricing and marketing of its drugs. [redacted] Ex. 5 [redacted] Ex. 13. [redacted] Ex. 5 [redacted] Ex. 13. [redacted] Ex. 1 [redacted] Ex. 1.

Janssen's Director of Trade Relations, William Parks, also testified that J&J reviews Janssen's annual business plans and sales reports, and approves product price changes. *See* Parks (Janssen) Tr. at pp. 38-39, 58-59, Ex. 2.

[redacted] Ex. 13 [redacted] Ex. 13. [redacted] Ex. 13.

[redacted] Ex. 13 [redacted] Ex. 13. [redacted] Ex. 13.

[redacted]



Ex. 1. Thus, J&J's policy of manipulating AWPs is organization-wide and centrally controlled, and defendant's argument at this stage of the case is meritless.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that this Court grant their Motion for Class Certification.



Ex. 1. Thus, J&J's policy of manipulating AWPs is organization-wide and centrally controlled, and defendant's argument at this stage of the case is meritless.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that this Court grant their Motion for Class Certification.

| | |
|---|---|
| DATED:  December 17, 2004. | By     /s/ Steve W. Berman    <br>Thomas M. Sobol (BBO#471770)<br>Edward Notargiacomo (BBO#567636)<br>Hagens Berman LLP<br>One Main Street, 4th Floor<br>Cambridge, MA  02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003<br>**LIAISON COUNSEL**<br><br>Steve W. Berman<br>Sean R. Matt<br>Hagens Berman LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA  98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br><br>Elizabeth Hartweg Fegan<br>Hagens Berman LLP<br>60 W. Randolph Street, Suite 200<br>Chicago, IL  60601<br>Telephone: (312) 762-9235<br>Facsimile: (312) 762-9286<br><br>Jeffrey Kodroff<br>John Macoretta<br>Spector, Roseman & Kodroff, P.C.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA  19103<br>Telephone: (215) 496-0300<br>Facsimile: (215) 496-6611<br><br>Samuel D. Heins<br>Alan I. Gilbert<br>Brian L. Williams<br>Susan E. MacMenamin<br>Heins, Mills & Olson, P.C.<br>3550 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN  55402<br>Telephone: (612) 338-4605<br>Facsimile: (612) 338-4692 |

- 9 -

**CHAIRS OF LEAD COUNSEL COMMITTEE**

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' REPLY TO THE JOHNSON & JOHNSON GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO CLASS CERTIFICATION** to be electronically filed with the Court pursuant to the December 16, 2004 Order and to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on December 17, 2004 a copy to Verilaw Technologies for posting and notification to all parties.

    By    **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292