# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | CIVIL ACTION NO. |
| LITIGATION ) | 01-12257-PBS |

## CASE MANAGEMENT ORDER NO. 10

March 25, 2004

Saris, U.S.D.J.

### I.   PHASING OF DISCOVERY

1.   Discovery shall be permissible with respect to all parties, claims and issues not dismissed under the February 24, 2004 Memorandum and Order.  Discovery, motion practice and trial shall occur in two phases.

2.   Phase 1 shall consist of a "fast track" in which five Defendants will litigate all phases of the case through summary judgment.  The cases against those five companies shall proceed on the Phase 1 schedule set below.  Phase 2 shall consist of a "regular track."

3.   The case is referred to Chief Magistrate Judge Bowler for case management and all non-dispositive matters.

### II. ADDITIONAL DISCOVERY RULES

1.   To the extent they have not done so, all Defendants are directed to supplement their document productions under the order of this Court dated October 28, 2002 (relating to production of documents produced to governmental bodies concerning AWP matters)

by producing all documents relating to any drugs in Appendix A to the AMCC, and all non-privileged documents relating to any drugs, produced by any Defendant in response to recent subpoenas issued by the House Energy and Commerce Committee, or any other governmental body. Defendants shall make these documents available to counsel for the Plaintiffs for inspection and photocopying within 30 days.

2. The identification of a drug on the Phase 1 list includes all NDC's for that drug, including NDC's not in the AMCC.

3. Any documents available in an electronic format shall be so provided in that format, i.e., in an identical, usable electronic format. If issues regarding compatibility of computer systems and software arise, the producing parties shall confer to resolve the matters.

4. A responding party to an initial document request shall complete production of all documents within sixty (60) days of service of such request. Any dispute over the document request (i.e., overbreadth or burden) shall be presented to the magistrate judge within 30 days after service of the request after the parties have conferred. Even if there is a dispute over a document request, the undisputed documents shall be produced within 60 days.

5. Privilege logs shall be provided 14 days after a

production, and shall provide reasons for each document withheld from production, as well as for each redaction from a document produced.  There shall be no redaction of documents by any party on any basis other than a bona fide claim of a recognized lawful privilege.  No stamps of "confidential" or the like shall be on the text of a document.  All documents shall be produced in their original size.

6.  Each Defendant shall produce 30(b)(6) witnesses within 45 days of such a request.

7.  A party shall provide a "three week deposition notice" under which such party provides at least 21 days notice for a proposed deposition.  A responding party may suggest an alternative date no later than seven more working days from the original notice.  The parties shall confer in good faith.  Any motion for a protective order shall be filed at least five working days before the scheduled deposition; any response shall be filed within two working days.

8.  No deposition of a witness by a deposing party shall be longer than twenty-one hours unless agreed by the parties or permitted by court order.  The non-deposing party shall have seven hours for cross-examination.  There shall be two hours for re-direct and two hours for re-cross.

3

### III.  PHASE 1 SCHEDULE

The following five companies from the AMCC are subject to the Phase I fast track: AstraZeneca; the BMS Group (Bristol-Myers, OTN and Apothecon); the GSK Group (GlaxoSmithKline, SmithKline Beecham and Glaxo Wellcome); the Johnson and Johnson Group (J&J, Centocor and Ortho); and the Schering-Plough Group (Schering and Warrick).

The schedule shall be as follows for Phase I:

1.  Plaintiffs' Motion for Class Certification on Phase 1 shall be filed by September 3, 2004.

2.  Plaintiffs' Disclosure of Expert Reports in Support of Motion for Class Certification filed by September 3, 2004.

3.  Discovery of Plaintiffs' Experts on Class Certification completed by October 4, 2004.

4.  Defendants' Opposition to class certification to be filed by October 25, 2004, along with any expert reports.

5.  Discovery of Defendants' experts completed by November 23, 2004.

6.  Plaintiffs' Reply on Class Certification filed by December 1, 2004.

7.  Any surreply shall be filed by December 8, 2004.

8.  Hearing on Class Certification on December 17, 2004 at 2:00 p.m.

9.  Close of Phase 1 Fact Discovery on January 30, 2005.

4

10.  Plaintiffs serve liability expert reports on January 31, 2005.

11.  Defendants serve expert reports on liability on February 28, 2005.

12.  Close of Expert Discovery on March 30, 2005.

13.  Summary Judgment Motions filed no later than April 15, 2005.

14.  Oppositions due May 2, 2005.

15.  Replies due on May 16, 2005.

16.  Any surreply on May 30, 2005.

17.  Hearing on Motions for Summary Judgment on June 8, 2005 at 2:00 p.m.

## IV.  PHASE 2 SCHEDULE

1.  After the Court's ruling on the Phase 1 certification motion, the Court shall set a Phase 2 briefing schedule on class certification.  Plaintiffs shall be prepared to file the motion for class certification within sixty (60) days of the Court's ruling.

2.  Fact discovery on Phase 2 will close on October 3, 2005. Plaintiffs shall file expert reports on November 1, 2005. Defendant shall file expert reports on December 1, 2005.  Expert discovery shall be completed by January 16, 2006.  Any motion for summary judgment shall be filed by January 30, 2006.  Any opposition shall be filed by February 12, 2006.  Any reply by

5

February 27, 2006, and the sur-reply by March 13, 2006.

## V.   Together Rx

After some reflection, I have placed the Together Rx program on the regular track.  As I read the two proposals, creation of a third track seems unwieldy and confusing.  In particular, the issues involving product-specific discovery for 170 drugs involved in the Together Rx program seem too complex to resolve on a fast track.  Nothing in this order precludes Defendants from moving for summary judgment earlier.

## VI.   MISCELLANEOUS

To protect the integrity of the MDL process, Defendants shall notify the Plaintiffs and the Court in writing of any attempts to settle any of the claims before this Court in another jurisdiction upon commencement of such discussions.  Failure to do so may result in injunctive relief, contempt sanctions, and refusal to give any judgment preclusive effect.

## VII.   BRIEFING

No brief shall be longer than 20 pages, unless advance permission of the Court is obtained.

## VIII.   MEDIATION

Within 30 days, the fast track parties shall propose a process and schedule for mediation.

## IX.   CASE MANAGEMENT

The case management order is applicable to all related cases

6

brought by the state and county governmental entities.  When I

resolve the pending motions, I will enter a separate case

management order.

PATTI B. SARIS
United States District Judge

# EXHIBIT B

# Holland·Knight

Tel  617 523 2700
Fax  617 523 6850

Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
www.hklaw.com

October 18, 2004

Matthew J. O'Connor
617-619-9217
matthew.oconnor@hklaw.com

**VIA FACSIMILE**

David Nalven, Esq.
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, MA 02142

> Re:   In Re Pharmaceutical Industry Average Wholesale Price
>        Litigation, MDL No. 1456

Dear David:

I am writing to summarize the proposal we discussed in our phone call today.

GlaxoSmithKline will provide Plaintiffs with an index of the sources, which will include the disc number and beginning and ending bates numbers for each source, for the documents produced by GlaxoSmithKline in response to Plaintiffs' Omnibus requests dated March 31, 2004. GlaxoSmithKline shall not produce, and Plaintiffs shall not seek, documents in any format, including, but not limited to, electronic or searchable media, other than the format GlaxoSmithKline has used to-date (i.e. TIFF images on disk). If you agree with the proposal, we plan to have a substantially complete index to you no later than October 27, 2004. A sample page of the index is attached.

If possible, please let me know today if Plaintiffs will accept this proposal as I will be traveling for the remainder of the week. Thank you for your assistance in this matter.

Sincerely,

Matthew J. O'Connor

# 2329643_v1

| DISK | BEGIN BATES NUMBER | END BATES NUMBER | SOURCE |
|---|---|---|---|
| OMNI05-055 | GSK-MDL-PBM01-0000001 | GSK-MDL-PBM01-0028164 | |
| | GSK-MDL-PBM01-0028165 | GSK-MDL-PBM01-0029037 | |
| | GSK-MDL-PBM01-0029038 | GSK-MDL-PBM01-0038816 | |
| | GSK-MDL-PBM01-0038817 | GSK-MDL-PBM01-0043554 | |
| | GSK-MDL-PBM01-0043555 | GSK-MDL-PBM01-0046031 | |
| | GSK-MDL-PBM01-0046032 | GSK-MDL-PBM01-0047879 | |
| | GSK-MDL-PBM01-0047880 | GSK-MDL-PBM01-0062890 | |
| | GSK-MDL-PBM01-0062891 | GSK-MDL-PBM01-0064094 | |
| | GSK-MDL-PBM01-0064095 | GSK-MDL-PBM01-0064327 | |
| | GSK-MDL-PBM01-0064328 | GSK-MDL-PBM01-0064636 | |
| OMNI05-056 | GSK-MDL-PBM01-0064637 | GSK-MDL-PBM01-0065285 | |
| | GSK-MDL-PBM01-0065286 | GSK-MDL-PBM01-0066518 | |
| | GSK-MDL-PBM01-0066519 | GSK-MDL-PBM01-0074499 | |
| | GSK-MDL-PBM01-0074500 | GSK-MDL-PBM01-0074567 | |
| | GSK-MDL-PBM01-0074568 | GSK-MDL-PBM01-0075885 | |
| | GSK-MDL-PBM01-0075886 | GSK-MDL-PBM01-0083198 | |
| | GSK-MDL-PBM01-0083199 | GSK-MDL-PBM01-0086864 | |
| | GSK-MDL-PBM01-0086865 | GSK-MDL-PBM01-0087741 | |
| | GSK-MDL-PBM01-0087742 | GSK-MDL-PBM01-0091075 | |
| | GSK-MDL-PBM01-0091076 | GSK-MDL-PBM01-0173269 | |



BOSTON   LOS ANGELES   PHOENIX   SEATTLE

**hagens-berman.com**
ONE MAIN STREET • CAMBRIDGE, MA 02142
(617) 482-3700 • FAX (617) 482-3003

DAVID S. NALVEN
davidn@hagens-berman.com

October 18, 2004

**BY FAX – (617) 523-6850**

Matthew J. O'Connor, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

Re:     In Re: Pharmaceutical Industry Average Wholesale Price Litigation
        MDL No. 1456

Dear Matt:

I am writing to follow up on our conversation from earlier today and your letter from earlier today.

In our conversation, I had understood you to say that the only index of GSK documents that exists is one that lists the source of the documents and the bates nos. of the documents, and that you had no other mechanism for identifying categories such as date range, type of document, subject matter, etc.  Your letter, however, does not confirm this and asks plaintiffs to waive any right to seek any other database or "searchable media" in exchange for your production of the source index.

So that I am clear, please let me know whether there exist any indexes, lists, or databases, whether in hard copy or electronic form, that would allow or facilitate the identification of categories of documents or would tell us more about the substance of the documents you produced other than the person whose files they were produced from.

If you do not wish to tell me what exists or does not exist, then please let me know that.  I just want to be clear on what agreement I would be making on behalf of plaintiffs.

Thanks very much.

Very truly yours,

David S. Nalven

# Holland··Knight

Tel  617 523 2700
Fax  617 523 6850

Holland & Knight LLP
10 St. James Avenue. 11th Floor
Boston, MA 02116
www.hklaw.com

October 19, 2004

Matthew J. O'Connor
617-619-9217
matthew.oconnor@hklaw.com

**VIA FACSIMILE**

David Nalven, Esq.
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, MA 02142

Re:    In Re Pharmaceutical Industry Average Wholesale Price
       Litigation, MDL No. 1456

Dear David:

I am writing in response to your letter of October 18, 2004.

As I told you in our phone conversation yesterday, my letter was merely intended to be a brief recitation of our proposal as it related to the provision of document source information. It was not intended to represent a verbatim transcript of a thirty minute conversation.

GlaxoSmithKline will provide a source log for all of the documents it has produced to Plaintiffs. Although we do not believe we need to do so to comply with Rule 34, by so doing, GlaxoSmithKline will have unquestionably complied with its discovery obligations as it has throughout this case.

As always, thank you for your cooperation in this matter.

Sincerely,

*Matthew J. O'Connor*

Matthew J. O'Connor   (mavb)

MJO:mavb

# 2331896_v1

Annapolis • Atlanta • Bethesda • Boston • Bradenton • Chicago • Fort Lauderdale • Jacksonville • Lakeland • Los Angeles
Miami • New York • Northern Virginia • Orlando • Portland • Providence • Rancho Santa Fe • St. Petersburg • San Antonio
San Francisco • Seattle • Tallahassee • Tampa • Washington, D.C. • West Palm Beach
Beijing • Caracas° • Helsinki° • Mexico City • Rio de Janeiro • São Paulo • Tel Aviv° • Tokyo • °Representative Office



BOSTON   LOS ANGELES   PHOENIX   SEATTLE

**hagens-berman.com**
ONE MAIN STREET • CAMBRIDGE, MA 02142
(617) 482-3700 • FAX (617) 482-3003

DAVID S. NALVEN
davidn@hagens-berman.com

October 19, 2004

**BY FAX – (617) 523-6850**

Matthew J. O'Connor, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

     Re:    <u>In Re: Pharmaceutical Industry Average Wholesale Price Litigation</u>
              MDL No. 1456

Dear Matt:

     I am writing in response to your letter received earlier this afternoon.

     I understand that you are willing to supply a source log of the documents produced by GSK. What I am asking is whether there exist other indexes, lists, or databases, whether in hard copy or electronic form, that would allow or facilitate the identification of categories of documents or would tell us more about the documents produced by GSK other than their source. Please let me know.

     I understand GSK's position that it does not believe it is required to produce any indexes, including the source log. I disagree with that position, but if nothing else exists, I am sure that neither of us has any interest in pursuing this difference.

     Thanks very much.

                            Very truly yours,

                            David S. Nalven

# EXHIBIT C

BOSTON   LOS ANGELES   PHOENIX   SEATTLE

**hagens-berman.com**
ONE MAIN STREET • CAMBRIDGE, MA 02142
(617) 482-3700 • FAX (617) 482-3003

DAVID S. NALVEN
(617) 475-1953
davidn@hagens-berman.com

October 27, 2004

BY FAX

Frederick G. Herold, Esq.
Dechert LLP
975 Mill Page Road
Palo Alto, CA 94304-1013

Mark H. Lynch, Esq.
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004

Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

   Re:  In Re Pharmaceutical Industry AWP Litigation
      MDL No. 1456

Gentlemen:

   As you are aware, Judge Saris has denied an across-the-board request for an extension of discovery and the related time periods for filing for summary judgment. As a result, we are constrained to press forward on a variety of discovery matters. This letter is to review the status of production of discovery materials from GSK, request continued production, and identify next steps.

   <u>Transactional Data, First Phase GSK Drugs</u>

   In May we reached an agreement to have GSK produce documents, including transactional data, in phases. In the first phase, GSK produced transactional data for Flonase, Flovent, Imitrex, Kytril injection, Kytril tablet, Navelbine, Paxil, Serevent, Voltrex, Ventolin (all formulations), Wellbutrin, Zantac (all formulations), Zofran (all formulations), and Zyban. A part of that arrangement, without prejudice to any of the rights of the parties, was that GSK

Frederick G. Herold, Esq.
Mark H. Lynch, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
October 27, 2004
Page 2

would produce transactional data for a subset of the class, i.e., 1997 through 2002. As a result, the first phase transactional data provided by GSK was limited to 1997 through 2002.

We now need production of the transactional data for the balance of the class period (i.e., 1991 through 1997, 2003 and 2004). We are willing to make this offer: if GSK will produce transactional data for Flonase, Flovent, Paxil, Ventolin, Wellbutrin, Kytril (all formulations) and Zofran (all formulations) within the next 30 days, the MDL plaintiffs will waive requests for further transactional data regarding the other first phase GSK drugs. If GSK cannot accommodate this offer, we are constrained to press forward with a demand that transactional data be produced for all remaining first phase drugs for the entire class period.

Transactional Data, Second Phase GSK Drugs

We also need to press forward with production of transactional data for the remaining drugs. Relying on the gross sales sheet dated April 27, 2004 that you have provided to us, some triage may be possible. As a result, if GSK is willing to provide transactional data within the next 30 days, the MDL plaintiffs are willing to accept the production of transactional data only for the following additional drugs: Advair, Ceftin, Combivir, Epivir, Lamictal, Lanoxin, and Ziagen. We will require the production of this data for the entire class period, i.e., 1991 to the present. If GSK cannot accommodate this offer, we are constrained to press forward with a demand that transactional data be produced for all remaining second phase drugs for the entire class period.

Together Rx Production

When you discussed with Tom Sobol the production of Together Rx materials last April and May 2004, you requested an additional three months. Reviewing the notes and correspondence, I do not believe we agreed to that request, but we also did not press. But it is now almost November, and GSK has still made no production regarding Together Rx. We therefore demand complete production of the Together Rx materials within the next 30 days.

Sales Representative Field Notes

During the May 12, 2004 meet and confer, GSK agreed to produce for Kytril, Zofran, and Navelbine all field notes and reports of all sales representatives for those drugs during the class period. On the basis of our review of the documents thus far produced, I do not believe this has occurred. I understand from deposition testimony that GSK, in the ordinary course of its business, had a system of compiling and maintaining field representative sales notes and reports in electronic form. Accordingly, by this letter, we request that GSK produce within 30 days electronic versions of all field sales notes and reports for all sales representatives, district

Frederick G. Herold, Esq.
Mark H. Lynch, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
October 27, 2004
Page 3

managers, regional managers, and others for the Zofran, Kytril, Navelbine and all other physician administered drugs on the list.

Document Index

GSK has produced to plaintiffs several million pages of imaged documents on discs with no meaningful description as to the contents of the discs. In communications with Matthew O'Connor over the last few weeks, I had requested that GSK provide plaintiffs with information concerning the existence of indices, lists, or databases that would facilitate the identification of categories of documents or tell us more about the substance of GSK's production. Yesterday I received, without explanation, a paper document appearing to tie the documents produced to the person from whose files they were produced. GSK still has not said whether there is any other index or searchable medium although, based on the communications, I suspect there is.

Based on my review of the correspondence, it appears that at least as early as May 12, 2004, Tom Sobol reviewed with GSK's attorneys the possibility of sharing the objective information in an electronic database of all documents to be produced. Prior experience with GSK attorneys in other drug pricing litigation has proven the sharing of such document indices to be quite helpful to all parties. GSK has been able to save some money because the plaintiffs' lawyers contribute financially to the cost of creating the objective database, and the plaintiffs' lawyers (and the class they seek to represent) benefit by the fact that they do not have to recreate an objective database, searchable electronically, of millions of pages of records. Indeed, the sharing of such information has occurred recently with GSK in two other drug pricing cases. Such a database might prove useful in resolving what may be a dispute concerning the extent of GSK's production of sales representatives' filed notes.

I do not understand why GSK is evading my inquiries concerning the existence of a searchable database and apparently resists the notion of sharing with the plaintiffs in this lawsuit – a lawsuit involving many millions of more pages, complexity and burden to the parties – the electronic, objective database of documents that have been produced by GSK to date. We have no interest in obtaining information that would be set forth in fields such as "attorney notes" or other fields that would contain the subjective thoughts of attorneys or their agents. However, we do seek to have GSK produce to us the objective, searchable database of documents produced in this case. We are more than willing to share with GSK the cost of that database. Absent an agreement on this subject, we will be required to seek court intervention.

In any event, we request immediate production of the electronic version of the purported source log we received yesterday so that we may re-sort the list by person and review the files reflected on the index in a rational and efficient way and in the manner in which they were maintained by GSK prior to production.

Frederick G. Herold, Esq.
Mark H. Lynch, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
October 27, 2004
Page 4

<u>Rule 30(b)(6) Depositions Regarding Transactional Data</u>

We have had informal discussions with GSK's representatives regarding the transactional data that has been produced to date. We have agreed not to use that information for any purposes other than mediation without GSK's consent. As a result, we are constrained to press forward with Rule 30(b)(6) depositions on the existing transactional data you have produced, as well as the transactional data that you will produce. It is my understanding that we will need several witnesses to cover the current systems and the heritage systems for the entire class period. Please provide us dates in the month of December on which those Rule 30(b)(6) depositions may be conducted. Because of discovery deadlines, we cannot wait beyond December of 2004 to conduct these depositions. Please provide these dates by November 15.

<u>Remaining Documentary Discovery</u>

The phased discovery approach that we put into place in May 2004 contemplated GSK producing document discovery on a rolling basis. At some point, however, this must come to an end. Given Judge Saris's recent order, we must request that GSK complete its production on the first phase GSK drugs within the next 30 days and to certify that the production is complete.

As to the remaining GSK drugs, plaintiffs are willing to undertake the same kind of agreement as we offered with respect to the transactional data, i.e., if GSK can commit to producing documents regarding Advair, Ceftin, Combivir, Epivir, Lamictal, Lanoxin, and Ziagen within 30 days, then we can agree to waive production as to the remaining documents.

Finally, we need to schedule a meet and confer in person or by phone to review all of the objections set forth in your document responses, the adequacy of the privilege log, the timing of future privilege logs, the remainder of future productions, and any other discovery issues. If you would give me two times during the period November 8 through 10, we can move forward with that.

Very truly yours,

David S. Nalven

DSN/har

cc: Thomas M. Sobol

# EXHIBIT D

BOSTON    LOS ANGELES    PHOENIX    SEATTLE

**hagens-berman.com**
ONE MAIN STREET • CAMBRIDGE, MA 02142
(617) 482-3700 • FAX (617) 482-3003

DAVID S. NALVEN
(617) 475-1953
davidn@hagens-berman.com

November 16, 2004

<u>BY FAX</u>

Thomas H. Lee II, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793

Mark H. Lynch, Esq.
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004

Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

     Re:    In Re Pharmaceutical Industry AWP Litigation
           <u>MDL No. 1456</u>

Gentlemen:

    I am writing to follow up on our meet and confer conference on November 16, 2004.

    Let me say at the outset that (1) you reserved on multiple occasions any commitment in order to confer among yourselves and with your client, and (2) looking back at my notes, because there was a fair amount of equivocation and back and forth it is unclear to me in one case whether you actually made the commitment I thought you made on the telephone or not. I will set forth what I understand the agreement to be, and if you disagree or if after having conferred you have a different view please set that forth in your response. To keep this matter moving may I please have your response by the close of business on Friday, November 21, 2004.

Thomas H. Lee, II, Esq.
Mark H. Lynch, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
November 16, 2004
Page 2

Transactional Data, First and Second Phase GSK Drugs

We discussed GSK's production of transactional data. With respect to the first phase drugs, we limited our request to additional transactional data solely for Zofran, Kytril, and Flonase. You agreed to produce transactional data for these drugs for the pre-1998 period, and refused to produce the data for 2003 and 2004, on the grounds that those years are beyond the class period. We disagree with your position with respect to the post-2002 period. Please provide a date by which you will produce the pre-1998 transactional data.

With respect to the second phase drugs, we agreed that you may withhold production at this point provided you will not move for summary judgment on these drugs or otherwise make use of the absence of evidence on these drugs in a motion for summary judgment.

We agreed further that if later in the case the need arises for production of transactional data for drugs for which transactional data was not produced, we will move jointly for additional time for GSK to produce and for plaintiffs to review and process the data.

Together Rx Production

You have advised us that you produced approximately 12,000 pages of documents concerning Together Rx to other plaintiffs' counsel. We will revisit this production, if necessary, after we have had an opportunity to review what you produced.

Sales Representative Field Notes

We discussed production of the field notes for Kytril, Zofran, and Navelbine sales representatives and supervisors. We proposed that you may limit your production to the top 10 representatives for each drug for each quarter during the class period. You suggested that the better relevant period should be one year or longer. We proposed that if a period in excess of a quarter is used, that the number of representatives whose notes would be produced should be 20. You asked for the opportunity to confer among yourselves and suggest a solution.

Document Index

You represented that the only document index, list, or database possessed or controlled by GSK is the source list that you produced to us, first in hard copy and then in electronic form. Please confirm this representation.

Thomas H. Lee, II, Esq.
Mark H. Lynch, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
November 16, 2004
Page 3

### Rule 30(b)(6) Depositions Regarding Transactional Data

You suggested that depositions will be unnecessary and invited us to prepare proposed stipulations to facilitate the admissibility of the transactional data and analyses derived therefrom in lieu taking rule 30(b)(6) depositions. We are in the process of preparing the proposed stipulations and will have them to you shortly.

### Remaining Documentary Discovery

You represented that you intend to complete production of documents concerning the first phase drugs in response to our requests by the end of November 2004. Please confirm.

### Production of "Non-Objectionable" Documents

In virtually all of your responses to our requests for production of documents, you asserted general and specific objections, and asserted that you were producing "subject to and without waiving" these objections, but then limiting your production to "non-objectionable" documents. I asked whether you meant that you were producing documents you were objecting to or not. You said that in some cases you had produced objectionable documents, but in other cases not, and that you either could not or would not tell me which documents you had produced but had deemed objectionable, and why, or which documents you had withheld as objectionable, and why. With respect to the documents you withheld as privileged, you provided us with a privileged documents log. I would ask that with respect to the documents you withheld as objectionable you do the same. In the alternative, you may simply produce the documents you deem objectionable, subject to your assertion of whatever reservations and objections you deem appropriate.

Thanks very much.

Very truly yours,

David S. Nalven

cc: Thomas M. Sobol

# EXHIBIT E

HAGENS BERMAN LLP

BOSTON    LOS ANGELES    PHOENIX    SEATTLE

**hagens-berman.com**
ONE MAIN STREET • CAMBRIDGE, MA 02142
(617) 482-3700 • FAX (617) 482-3003

DAVID S. NALVEN
(617) 475-1953
davidn@hagens-berman.com

December 3, 2004

BY FAX

Mark H. Lynch, Esq.
Covington & Burling
1201 Pennsylvania Avenue, NW
Washington, DC 20004

Geoffrey E. Hobart, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

      Re:     In Re Pharmaceutical Industry AWP Litigation
               MDL No. 1456

Gentlemen:

     I am writing to follow up on our meet and confer conference on December 2, 2004. This session was a follow up to my letter to you dated October 26, 2004; a meet and confer session on November 12, 2004; my letter to you dated November 16, 2004; and my email to you dated November 22, 2004.

     Transactional Data, First and Second Phase GSK Drugs

     We discussed GSK's production of transactional data. GSK's position now is that it will produce transactional with respect to all GSK AWPIDs, first and second phases, for the period 1997 to 2002, but will not produce transactional data for the periods before or after those dates. GSK's position further is that irrespective of GSK's refusal to produce data for the pre-1997 and post-2002 periods, GSK reserves its right to move for summary judgment with respect to any drugs for the periods in which GSK will not produce transactional data.

     Plaintiffs' position is that GSK is required to produce transactional data for the entire class period. Notwithstanding that position, plaintiffs offered as a compromise to accept GSK transactional data for the pre-1997 period solely for Zofran, Kytril, Flonase, Flovent, Ventolin, Wellbutrin, and Paxil. That compromise was rejected. You have asked us to review the

Mark H. Lynch, Esq.
Geoffrey E. Hobart, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
December 3, 2004
Page 2

transactional data you produce before seeking additional data and documents. We will certainly try to do that, but given the impending close of discovery, we cannot stage the review as you have requested.

Plaintiffs will move to compel production of all records that have been requested that will reasonably lead to the discovery of admissible evidence based on the complaint. Plaintiffs' position is that GSK is precluded from moving for summary judgment or opposing claims at trial with respect to any drug and any period for which requested disclosure has not been made.

Sales Representative Field Notes

We discussed production of the field notes for Zofran and Navelbine sales representatives and supervisors. GSK will produce the field reports of its top 20 representatives by gross compensation for each year from 1999 through 2001. The reports will be produced in a searchable Microsoft Access database. You stated that field notes do not exist in electronic form for the period prior to 1999 and you reasonably believe they do not exist in paper form either.

You stated that you hope to have the field notes production complete before the end the December, but could not be certain at this point. Given the impending close of discovery, meeting the December deadline is critical. We agreed that Geoff and I would speak on December 10, 2004 to wrap up this issue.

You were not able to speak to production of Kytril sales representative field notes because you said that is being handled by cocounsel Tom Lee, who was unavailable for the call. I called and emailed Tom asking to for a call to resolve this issue before December 9, 2004.

Document Index

I had asked you previously whether the only document index, list, or database possessed or controlled by GSK was the source list that you produced to us, first in hard copy and then in electronic form. See correspondence between Matt O'Connor and me dated October 18, 2004 and October 19, 2004. See also my letter dated October 26, 2004. In our meet and confer session on November 12, 2004, you stated that the only document index, list, or database possessed or controlled by GSK was the source list that you produced to us, and in my letter to you dated November 16, 2004, I asked you to confirm this representation in writing. You did not respond to that letter. In our meet and confer session on December 2, 2004, you stated that GSK possesses documents in their native format and possesses other databases of documents that have been OCR'd.

I understand that it is GSK's position that GSK has discharged its discovery obligations through production of documents in the form they have been produced. I believe this position is

Mark H. Lynch, Esq.
Geoffrey E. Hobart, Esq.
Mark D. Seltzer, Esq.
Matthew J. O'Connor, Esq.
December 3, 2004
Page 3

not supported by the law, and as I stated in our meet and confer session, plaintiffs intend to raise this issue with the Court. In order to allow plaintiffs to frame the issue for the Court based on an accurate description of the form in which GSK's documents exist, please provide this information to me, in writing, by December 9, 2004.

### Stipulation In Lieu of Rule 30(b)(6) Depositions Regarding Transactional Data

On November 24, 2004, based on our discussion on November 12, 2004, I sent you proposed stipulations to facilitate the admissibility of the transactional data and analyses derived therefrom in lieu taking rule 30(b)(6) depositions. This matter is being handled by GSK Fred Herold. I spoke to Fred about the proposed stipulations on November 29, 2004 and he agreed that GSK would continue to work toward preparing the stipulations with plaintiffs and hoped to have a revision reflecting GSK's position in about two weeks.

### Remaining Documentary Discovery

You represented that GSK discovery will be substantially complete shortly. Plaintiffs await your additional production and written certification that GSK has completed discovery.

### Production of "Non-Objectionable" Documents

In virtually all of GSK's responses to plaintiffs' requests for production of documents, GSK asserted general and specific objections, and asserted that it was producing "subject to and without waiving" these objections, but then limiting production to "non-objectionable" documents. In our November 12, 2004 meet and confer session, I asked whether you meant that you were producing documents you were objecting to or not. You said that in some cases you had produced objectionable documents, but in other cases not, and that you either could not or would not tell me which documents you had produced but had deemed objectionable, and why, or which documents you had withheld as objectionable, and why. During our meet and confer session on December 2, 2004, you revised this explanation, and now state that GSK has produced objectionable documents, subject to reservation of rights, and has withheld privileged documents only.

Very truly yours,

David S. Nalven

cc:   Frederick G. Herold, Esq. (by fax)
      Thomas H. Lee, Esq. (by fax)

# EXHIBIT F

# David Nalven

**From:** geof.hobart@hklaw.com
**Sent:** Tuesday, December 14, 2004 6:36 AM
**To:** David Nalven
**Subject:** RE: Current Document Index

David,

Let's talk in the afternoon.  I have calls set up in the morning re your
two requests.  I'm around all day.

-----Original Message-----
From: David Nalven [mailto:davidn@hagens-berman.com]
Sent: Monday, December 13, 2004 6:32 PM
To: matthew.oconnor@hklaw.com
Cc: geof.hobart@hklaw.com; mark.seltzer@hklaw.com; mlynch@cov.com;
thomas.lee@dechert.com
Subject: RE: Current Document Index


matt -- thanks very much

geoff -- I will speak to you tomorrow morning about sales status of rep
field notes production and and existence of dcmts in
electronic/searchable form

-----Original Message-----
From: matthew.oconnor@hklaw.com [mailto:matthew.oconnor@hklaw.com]
Sent: Monday, December 13, 2004 5:48 PM
To: David Nalven
Cc: geof.hobart@hklaw.com; mark.seltzer@hklaw.com; mlynch@cov.com;
thomas.lee@dechert.com
Subject: Current Document Index


David-

Per your request, attached please find the latest document index, which
includes all documents produced by Holland & Knight since the last
index.  Please let me know if you have any questions.  Thanks.

<<MDL Production Index 2.xls>>

Matthew J. O'Connor
Holland + Knight LLP
10 St. James Avenue
Boston, MA  02116
matthew.oconnor@hklaw.com

(617) 619-9217 (direct)
(617) 523-6850 (fax)

www.hklaw.com

NOTICE:  This e-mail is from a law firm, Holland & Knight LLP ("H&K"),
and is intended solely for the use of the individual(s) to whom it is
addressed.  If you believe you received this e-mail in error, please
notify the sender immediately, delete the e-mail from your computer and
do not copy or disclose it to anyone else.  If you are not an existing
client of H&K, do not construe anything in this e-mail to make you a

1

client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.