UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 146<br><br>CIVIL ACTION: 01-CV-12257 PBS |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS ) ) ) | Chief Magistrate Judge Marianne B. Bowler |

**CLASS PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
OF CLASS PLAINTIFFS' MOTION TO STRIKE
PORTIONS OF THE DECLARATION OF ROBERT P. NAVARRO**

I.   **Introduction.**

In their Motion to Strike Portions of the Declaration of Robert P. Navarro ("Motion to Strike"), Plaintiffs asked this Court to strike four specific portions of the Navarro Declaration:

- Those that directly or indirectly opined that class impact and/or damages could not be established through common proof;

- Those that enumerated differences in non-price aspects of the PBM transactions in order to conclude that class impact and/or damages could not be proven through common evidence;

- Those that concluded whether certain allegations made in the AMCC were consistent with PBM practices of the four major PBMs; and

- Those that opined regarding the alleged collective knowledge of the meaning of AWP within the health care or pharmaceutical industry.

With regard to each of these four areas, Defendants' Opposition to the Motion to Strike ("Defs.' Opp.") either (a) admits that Mr. Navarro lacks the expertise necessary to render these opinions or (b) fails to establish how the Navarro Declaration can assist the Court in rendering its opinion. For these reasons, the Navarro Declaration should be stricken.

## II. Defendants Have Failed to Articulate How the Navarro Declaration May Assist The Court in Determining Whether the Class Should be Certified.

In response to Plaintiffs' claim that Mr. Navarro's Declaration will not be helpful to the Court, Defendants admit that Mr. Navarro was *not* proffered "as a legal expert on class certification issues or as an economic expert," and they concede the Navarro Declaration was submitted *only* to provide the Court with "background" information on the PBM industry. *See* Defs.' Opp., at 1.[1] *But see* Navarro Decl. ¶ 1 ("I understand that my report is submitted in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification."). Although Defendants now profess that Mr. Navarro's testimony is not germane to the class certification issues before this Court, the fact remains that his declaration purports to opine on the issues in this case even though Mr. Navarro remains completely ignorant of them. Indeed, Defendants provide no support for the contention that an expert can be proffered merely to provide background on an industry without providing that background in the context of the allegations in the underlying case. Generalities about how the PBM industry works is irrelevant if that information is not viewed in the context of the allegations, and evidence of wrongdoing, regarding PBMs. In short, though Defendants' Opposition is long on why Mr. Navarro possesses expertise in the abstract, it wholly fails to explain the relevance of that expertise *to this case*.

---

[1] As an initial matter, Defendants claim that "the rejection of expert testimony is the exception rather than the rule." *Id.* at 5. However, the Advisory Committee Notes to the 2000 amendments to Fed. R. Evid. 702 cited by Defendants do not *prescribe* that the rejection of expert testimony should be the exception rather than the rule; instead, they merely remark that this has been the case post-*Daubert*.

2

### III. Defendants Have Admitted That The Portions of the Navarro Declaration Plaintiffs Seek to Strike Would Not Assist the Court.

#### A. Defendants have admitted that Mr. Navarro lacks the expertise to opine that impact and/or damages cannot be proven on a classwide basis.

In their Opposition, Defendants admit that Mr. Navarro is not an economist and was not proffered for the purpose of opining that impact and/or damages could not be proven on a classwide basis. *See id.* at 3 ("Defendants are not offering Dr. Navarro as an economist."). Defendants claim that Mr. Navarro's lack of qualifications as an economist are irrelevant because class certification experts do not have to be economists, but Defendants miss the point that the Navarro Declaration specifically opines that impact cannot be proven on a classwide basis (*see* Navarro Decl. ¶¶ 16 and 56), a conclusion that necessarily requires economic testimony. Therefore, Mr. Navarro's lack of economic expertise is fatal to his ability to render those opinions.

#### B. Defendants have not explained why the Navarro Declaration would assist this Court in determining whether non-price aspects of PBM transactions would preclude class certification

Defendants have likewise provided no support for why the Navarro Declaration can be used to support their argument that non-price aspects of PBM negotiations would preclude class certification. First, Defendants have utterly failed to respond to Plaintiffs' argument that the Navarro Declaration is irrelevant as a matter of law. *See, e.g., In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 676 (D. Kan. 2004). Second, Defendants have not articulated why the portion of the Navarro Declaration discussing the other aspects of PBM contracts and the negotiations of those contracts is not self-evident and therefore does not require expert testimony. As explained in the Motion to Strike, no expert testimony is needed to point out immaterial non-price variations contained in documents that speak for themselves.

3

**C.   Defendants have admitted that Mr. Navarro cannot opine on whether the practices of the four major PBMs are consistent with the allegations of the AMCC because Mr. Navarro never read the AMCC or familiarized himself with its allegations.**

Defendants have also admitted that Mr. Navarro cannot opine on whether the practices of the four major PBMs are consistent with the allegations of the AMCC because they do not contest that Mr. Navarro *never read* the AMCC or *any* of Defendants' documents. Defendants even state in their opposition that "the majority of Dr. Navarro's Declaration does not concern the specific allegations in the AMCC." Defs.' Opp., at 7. Despite this admission, Defendants still contend that Mr. Navarro is "qualified to rebut the factual basis for Plaintiffs' claims." *Id.* What Defendants fail to explain is how, not having read the AMCC or any of Defendants' documents,[2] Mr. Navarro can possibly opine on whether the claims in the AMCC have a factual basis if he does not know what those claims are. Defendants' claim that Mr. Navarro's "experience" makes him qualified to opine in a case with which he has not bothered to familiarize himself must therefore be rejected.

**D.   Defendants admit that Mr. Navarro lacks the expertise necessary to opine on the industry understanding of the definition of AWP.**

In their Motion to Strike Plaintiffs explained how, though Mr. Navarro opines in his Declaration that the health care industry "understood" that AWP was set as a benchmark over WAC, his own texts indicated that the industry had no such understanding. In response, Defendants contend that Mr. Navarro has the expertise to opine on the industry understanding of the definition of AWP because the definitions of AWP in Mr. Navarro's texts that contradict his expert testimony were not written by Mr. Navarro but were instead "merely" provided in texts that bore his name. This assertion cannot be taken seriously: though Defendants would like this

---

[2] Defendants state in numerous places that Mr. Navarro has read "many" documents, but all of those documents were PBM contracts provided by Defendants' counsel.

4

Court to consider Mr. Navarro's "experience" in admitting his testimony, they cannot conversely argue that this Court should reject it in determining whether to strike that same testimony.

Stripped of their argument that Mr. Navarro can opine on the industry-wide meaning of AWP based on his "experience," Defendants also contend that Mr. Navarro is qualified to opine on the industry understanding of the definition of AWP based on "his review of documents obtained by the parties in discovery." Defs.' Opp. at 8. However, Defendants fail to explain how Mr. Navarro's review of documents, documents which are cherry-picked by Defendants' counsel, would constitute anything other than a regurgitation of the arguments of Defendants' counsel. For this reason, conclusions based on Mr. Navarro's carefully selected "review" must be rejected.

## IV. The Navarro Declaration Should Be Stricken Because It Was Substantially Drafted By Defendants' Counsel.

Finally, the Navarro Declaration should be stricken because it was substantially drafted by Defendants' counsel. Defendants do not deny that their attorneys prepared the first draft of the Navarro Declaration; instead, they claim it does not matter because Defendants' counsel only provided the "legal scaffolding" (Defs.' Opp., at 2) necessary to enable Mr. Navarro to prepare his Declaration and because Mr. Navarro revised the first draft.[3]

In addition, Defendants claim that attorneys may "assist" experts in preparing their reports. However, the authority cited by Defendants does not support the proposition that a party's attorneys may draft a report and attach an expert's signature to it. In this case, Defendants' counsel provided far more than mere assistance to Mr. Navarro. Indeed, every

---

[3] Defendants claim that the approach of Defendants with Mr. Navarro is the same approach Plaintiffs' counsel took with Dr. Schondelmeyer. However, when asked whether Plaintiffs' counsel wrote the first draft of his report Dr. Schondelmeyer (unlike Defendants here), denied that was the case. Schondelmeyer dep., at 20. Indeed, Dr. Schondelmeyer further explained that the extent of Plaintiffs' counsel's involvement was to take sections of a report Dr. Schondelmeyer had previously drafted for the Centers for Medicare and Medicaid and place it into his report submitted in this case. *Id.* at 20-23. Such a cut-and-paste role of counsel is clearly sanctioned by the authorities cited by Defendants, and is not what Defendants' counsel did with regard to the Navarro Declaration.

5

single case cited by Defendants for the proposition that counsel may assist an expert in drafting his or her report approved assistance such as (1) typing the report; (2) putting "pen to paper;" or (3) compiling exhibits. *See* Defs' Opp., at 10-11. Defendants have gone far beyond the scrivener role and instead largely wrote Mr. Navarro's Declaration. This degree of involvement should not be countenanced by this Court.

WHEREFORE Plaintiffs respectfully request that this Court strike the Navarro Declaration.

DATED: February 2, 2005                By_____
                                       Thomas M. Sobol (BBO#471770)
                                       Edward Notargiacomo (BBO#567636)
                                       Hagens Berman LLP
                                       One Main Street, 4th Floor
                                       Cambridge, MA 02142
                                       Telephone: (617) 482-3700
                                       Facsimile: (617) 482-3003

                                       **LIAISON COUNSEL**

                                       Steve W. Berman
                                       Sean R. Matt
                                       Hagens Berman LLP
                                       1301 Fifth Avenue, Suite 2900
                                       Seattle, WA 98101
                                       Telephone: (206) 623-7292
                                       Facsimile: (206) 623-0594

                                       Elizabeth Hartweg Fegan
                                       Hagens Berman LLP
                                       60 W. Randolph Street, Suite 200
                                       Chicago, IL 60601
                                       Telephone: (312) 762-9235
                                       Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Samuel D. Heins
Alan I. Gilbert
Brian L. Williams
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

**CHAIRS OF LEAD COUNSEL COMMITTEE**

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL COMMITTEE AND EXECUTIVE COMMITTEE**

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that I am one of plaintiffs' attorneys and that, on February 2, 2005, I caused copies of Class Plaintiffs' Reply Memorandum in Support of Class Plaintiffs' Motion to Strike Portions of the Declaration of Robert P. Navarro to be served on all counsel of record by causing same to be posted electronically via Verilaw.

Dated: February 2, 2005

_____
Thomas M. Sobol