**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 146 |
|  | CIVIL ACTION: 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | Judge Patti B. Saris |
|  | Chief Magistrate Judge Marianne B. Bowler |

**CLASS PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO STRIKE DECLARATION OF ERIC M. GAIER, PH.D.**

I.    <u>Introduction</u>

In their Motion to Strike the Declaration of Eric M. Gaier, Ph.D. ("Motion to Strike"),

Plaintiffs established that Dr. Gaier's Declaration ("Gaier Declaration") should be stricken

because (1) Dr. Gaier has no experience in the pharmaceutical industry, (2) Dr. Gaier's

dispersion charts that purported to show that there is no relationship between reimbursement and

AWP suffered from fundamental flaws and defects in methodology that reflected Dr. Gaier's

ignorance about the industry; (3) Dr. Gaier had done no independent research into payors'

negotiations of their reimbursement contracts; and (4) Dr. Gaier concluded that payors knew that

the spread between AWP and ASP was inflated to move market share without any evidentiary

support.

In their Opposition to the Motion to Strike ("Gaier Opposition"), the Track One

Defendants attempt to save Dr. Gaier's Declaration largely by claiming that Dr. Gaier did not

really mean what he concluded in his original Declaration.  They also submit a Sur-Reply

Declaration that, rather than bolstering Dr. Gaier's original opinions, instead further exposes why

Dr. Gaier was not qualified to render his opinions in the first instance.[1]  Defendants also attempt

to bring Dr. Gaier's opinions within his realm of expertise by recategorizing his conclusions

about whether damages can be determined on a classwide basis as conclusions regarding whether

the Class can be ascertained.  However, this linguistic slight of hand does not cure the defects in

Dr. Gaier's analysis either.

Throughout their Opposition, Defendants dismiss Plaintiffs' criticisms of Dr. Gaier by

claiming that Plaintiffs have set standards for expert testimony that no expert could meet.

However, Plaintiffs' criticisms of Dr. Gaier are valid in the context of the wide-ranging and

overbroad conclusions he proffers.  (An expert that lacks the background knowledge to question

reimbursements at eight times AWP cannot be considered an expert.)  Therefore, for all of the

reasons set forth herein and in the Motion to Strike, the Gaier Declaration should be stricken in

its entirety.[2]

## II.   <u>Dr. Gaier Is Not Qualified to Opine on the Pharmaceutical Industry</u>

Defendants claim that Dr. Gaier is, indeed, an expert on the pharmaceutical industry

because (1) healthcare was one of the fields Dr. Gaier studied in his industrial organization

---

[1]  Indeed, Dr. Gaier's Sur-Reply Declaration is focused primarily on attacking the damages model proposed by Plaintiffs' expert, Dr. Hartman.  This attempt is particularly ironic given Defendants' current position that Dr. Gaier is only being proffered as "an economic expert on the extent to which there are individual issues relating to causation," Gaier Opp., at 2, and not as a damages expert.  *But see* Gaier Sur-Reply Decl. ¶ 63 ("In fact, I have done an extensive analysis and have concluded that whether putative class members overpaid for prescription drugs cannot be determined on a class-wide basis.  As such, no formulaic damage methodology could be applied reliability to the determination of class-wide damages.").

[2]  Defendants repeat throughout their January 21, 2005 filings that plaintiffs have proposed a double standard for reviewing the opinions of the class certification experts in this case – a full *Daubert* review for Defendants' experts and a more lenient standard for Plaintiffs' experts.  On the contrary, Plaintiffs specifically stated in their Motion to Strike that "[t]his Court may strike Dr. Gaier's Declaration because, regardless of whether this Court does a full analysis under *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579 (1993) **or the abbreviated analysis for class certification purposes that Plaintiffs contend is appropriate** (*see In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 135 (2d. Cir. 2001), *cert. denied* 122 S. Ct. 2382 (2002) (holding court's function at class certification stage is to determine whether the proposed methodology is "fatally flawed.")), it cannot withstand either standard of review."  (Emphasis added).  Plaintiffs have therefore not proposed a double standard and the Gaier Declaration fails under either standard of review.

classes in graduate school and (2) Dr. Gaier attended "numerous ABA discussions and seminars concerning healthcare and pharmaceutical pricing matters." Gaier Opp., at 5. However, to accept such a meager showing of expertise in the pharmaceutical industry would eviscerate this Court's gatekeeping function. If attendance at ABA conferences made one an expert on pharmaceutical pricing, many of the counsel in this case could be considered experts.[3]

Apparently conceding that Dr. Gaier cannot under any standard be considered an expert in the pharmaceutical industry, Defendants claim that Dr. Gaier's expertise is irrelevant. While an expert with formal training could be considered an expert in a particular field without practical experience in that field, Dr. Gaier has neither formal training nor practical experience in the industry on which he seeks to opine. Moreover, as Plaintiffs made clear in their Motion to Strike, the significance of Dr. Gaier's lack of expertise is not merely significant in the abstract, but it is also grounds to strike his opinions because his lack of expertise led him to fail to question faulty assumptions in his analysis.[4]

## III.   The Defects in Dr. Gaier's Methodology Have Not Been and Cannot Be Cured

The defects in Dr. Gaier's methodology have not been and cannot be cured. Importantly, as made clear in Defendants' Opposition, by virtue of the type of analysis Dr. Gaier did in both his Declaration and his Sur-Reply Declaration, Dr. Gaier *never* could have concluded that the Class could be certified. Defendants state in their opposition that "Dr. Gaier's assignment was to

---

[3] Defendants also claim that Dr. Gaier has obtained expertise in the pharmaceutical industry by testifying as an expert for a government agency "in a pharmaceutical case." Gaier Opp., at 3. However, in that case (*District of Columbia v. CVS Corp.* (District of Columbia Superior Court)), Dr. Gaier merely opined on the relevant market and market power for a pharmacy merger. *See* Gaier Transcript I, at 18-19. That type of knowledge is not relevant to the type of expertise that would be necessary to perform the pricing analysis Dr. Gaier purports to have done in this case.

[4] Defendants also defend Dr. Gaier's reliance on Mr. Young by citing the cases Plaintiffs cited to say that experts can rely on other experts. However, as explained more fully in Plaintiffs' Motion to Strike, the federal rules "do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation." *In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003).

analyze plaintiffs' and the class members' conduct, not defendants' conduct." Gaier Opp., at 7. *See also* Gaier Sur-Reply Decl. ¶ 61 ("I did not need to investigate the merits of plaintiffs' allegations in order to reach the opinions I offer."). However, in determining whether there are common issues of law and fact, courts in this Circuit consider *defendants'* conduct towards the proposed class, not a plaintiff's conduct. *See, e.g., In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 39 (D. Mass. 1998) (finding commonality existed where claims of class members "are based on allegations of a common course of allegedly fraudulent conduct"). In essence, by ignoring Defendants' conduct and focusing solely on Plaintiffs' and class members' conduct, Defendants insured that Dr. Gaier's Declaration would support their arguments in their briefs.

With regard to Dr. Gaier's dispersion charts, Defendants claim that Dr. Gaier has *not* opined that reimbursement levels were not correlated to AWP, but instead has opined that "reimbursement levels vary substantially and 'in many instances' bear no relationship to the corresponding AWP in the sense that the pattern of reimbursements is different from the pattern exhibited by AWPs." Gaier Opp., at 3. *But see* Track One Defendants' Sur-Reply in Opp. to Class Cert., at 5 ("The initial declaration supplied by defendants' expert, Dr. Eric M. Gaier, demonstrated significant variability in net reimbursement among third-party payors in the proposed classes, and in may instances, the pattern of reimbursement bears no systematic relationship to AWP."). Regardless of whether the Court (or anyone else) could understand this hairline distinction, it does not save the defects in Dr. Gaier's analysis.

Even though Dr. Gaier admitted in his opening Declaration "there may be some question as to the consistency of the quantity field that underlies the physician-administered price data," Gaier Decl., at 12 n.6, Defendants now claim that those quantity errors are "insignificant"

because Dr. Gaier's analysis reflected in his Sur-Rebuttal Declaration shows that they are.  Gaier Opp., at 8.  However, nowhere in Dr. Gaier's Sur-Reply Declaration does Dr. Gaier state that he considered reasons that would be known by an expert in the pharmaceutical industry to explain the outliers in his dispersion charts.  Instead he asks "How does Dr. Hartman know that the data points are erroneous?"  *Id.* ¶ 45.  The answer to this question is, of course, that, unlike Dr. Gaier, Dr. Hartman did not check his industry knowledge at the door (because Dr. Gaier had no such knowledge) when performing his economic analysis.

## IV.   Dr. Gaier's Reliance on Third Party Sources He Has Failed To Analyze Regarding Negotiations of Reimbursement Contracts Cannot Be Supported

In their Motion to Strike, Plaintiffs set forth that, even though Dr. Gaier opined on various ways payors could have allegedly avoided the effects of Defendants' AWP inflation scheme, *see* Gaier Decl. at 28-44, Dr. Gaier did absolutely nothing to educate himself on how Defendants accomplished this scheme and whether Defendants themselves believed that the effects of their scheme could be averted in the way that Dr. Gaier opined they could.  For this reason, Plaintiffs established that Dr. Gaier's failure to analyze the third parties he relied upon for the opposite conclusion (that the effects of Defendants' AWP scheme could be averted) justified striking his Declaration.  Defendants attempt to belittle Plaintiffs' argument by implying Plaintiffs have set forth a position that an expert must independently analyze every publication cited within an expert report, but Plaintiffs have argued no such thing.  Instead, Plaintiffs have contended that Dr. Gaier's Declaration should be stricken because, rather than analyzing Defendants' documents and testimony to determine if payors could have, in reality, avoided the effects of Defendants' AWP inflation scheme, Dr. Gaier has concluded merely by referring to a

footnote in an FTC report that payors could have hypothetically avoided those effects.[5]  *See also* Gaier Sur-Reply Decl., at 13 (relying on same but adding additional studies).  It is one thing for Dr. Gaier to rely on third party publications to support his opinions, but it is another to adopt the conclusions in those publications as his own without doing any independent analysis of those conclusions.

## V.   Defendants Admit There is No Evidence That Class Members Knew of Defendants' Manipulation of AWP

Even though one of the sections of Dr. Gaier's Declaration concludes that there are individual issues "concerning payor knowledge about the alleged inflation of AWP," Gaier Decl., at 28-36, Defendants now claim that Dr. Gaier did not, in fact, mean that but instead meant that "many payors knew that AWP was not equal to the manufacturer's selling price and, in some instances, they knew the magnitude of difference between AWPs and ASPs."  Gaier Opp., at 10.  Of course, contrary to Defendants' assertions throughout their class certification opposition papers, Plaintiffs have never contended that all Class members expected to equal manufacturer's selling price.  Neither Defendants' legions of lawyers nor Dr. Gaier's team point to a single instance of Class member knowledge of a Defendants' manipulation of the AWP.  Therefore, and especially since Defendants have now abandoned them, the portions of the Gaier Declaration concerning payor knowledge about Defendants' inflation of AWP should be stricken.

---

[5]  Defendants rely on *In re Custom Distrib. Servs., Inc.*, 224 F.3d 235 (3d Cir. 2000) for the proposition that an expert may rely on the assertions in third party publications as the expert's own conclusions; however, this citation misses the point.  Dr. Gaier has not merely relied on third party publications to educate him in an area in which he has no expertise,  he has adopted the conclusions in those publications as his own.

**VI.     This Court Does Not Require Dr. Gaier to Determine Whether the Class is Ascertainable**

Finally, in their Gaier Opposition, Defendants argue for the first time that Dr. Gaier has been proffered to discuss "the issue of ascertainability – i.e. whether class members can be identified without examining individual transactions." Gaier Opp., at 2. Similarly, the Gaier Sur-Reply Declaration contains a new section entitled "Class Boundaries" in which Dr. Gaier opines that class members cannot be identified. *See id.* at 25-26. However, this Court can make this determination without expert opinion. Both Dr. Hartman and Dr. Gaier agree that the majority of PBM contracts provide for reimbursement at some level related to AWP. *See* Deposition Transcript of Eric M. Gaier, Ph.D. (Nov. 16, 2004) ("Gaier Tr. II"), at 315-16. That fact that Dr. Gaier believes that actual reimbursements are not correlated to AWP relates to damages (for which Defendants have not proffered Dr. Gaier), not class ascertainability.

WHEREFORE Plaintiffs respectfully request that this Court enter an order striking the Declaration of Dr. Eric M. Gaier and all other relief that this Court deems just and proper.

DATED:  February 2, 2005                    By

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Hartweg Fegan
Hagens Berman LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Samuel D. Heins
Alan I. Gilbert
Brian L. Williams
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

**CHAIRS OF LEAD COUNSEL
COMMITTEE**

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Sobol, hereby certify that I am one of plaintiffs' attorneys and that, on February 2, 2005, I caused copies of Class Plaintiffs' Reply Memorandum in Support of Class Plaintiffs' Motion to Strike Declaration of Eric M. Gaier, Ph.D. to be served on all counsel of record by causing same to be posted electronically via Verilaw.

Dated: February 2, 2005

_____
Thomas M. Sobol