## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>) MDL NO. 1456<br>)<br>) CIVIL ACTION: 01-CV-12257-PBS<br>) |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) Judge Patti B. Saris<br>)<br>) |

## PLAINTIFFS' MOTION TO COMPEL DEFENDANT GLAXOSMITHKLINE, INC. TO PRODUCE TRANSACTIONAL DATA

Plaintiffs hereby move to compel defendant GlaxoSmithKline, Inc. ("GSK") to produce sales, discount, rebate and chargeback data ("transactional data") for GSK's AWP Inflated Drugs ("AWPIDs") for the periods 1991 through 1996 and 2003 through 2004.

### INTRODUCTION

Since the inception of this litigation, the relevant time period at issue has been January 1, 1991 to the present.  This is the Class Period specified in the complaints and the time period on which the parties, including defendants themselves, have framed their discovery requests.  GSK now refuses to produce transactional data for the periods prior to 1997 or after 2002, despite consistent demands by defendants that all plaintiffs' health care funds and third parties produce documents from these periods.

Through a series of specific documents requests, plaintiffs requested production of cost and volume data reflecting sales of the drugs identified in the Amended Master Consolidated Complaint ("AMCC") as having inflated AWPs, i.e., the AWPIDs.  Plaintiffs requested this data for the period 1991 to the present, the Class Period alleged in the AMCC.  Plaintiffs require this data  (1) to prove the allegations set forth in the AMCC that GSK deliberately set the AWPs for

its drugs at levels well above the prices at which GSK actually sells it drugs, and (2) to calculate the damage amounts suffered by plaintiffs as a result of GSK's fraudulent scheme.

## PROCEDURAL HISTORY

GSK has produced transactional data for the period 1997 to 2002 for all 34 GSK drugs named in the complaint.  Expert analysis of this data demonstrates that in many cases, the AWPs for the AWPIDs, once rebates, chargebacks, and a host of on and off-invoice discounts are taken into account, greatly exceed GSK's actual wholesale prices for these products.

GSK claims it need not produce transactional data for the period 1991 to 1996 because recovery for the period is barred by the statute of limitations; and that it need not produce transactional data for the period 2003 to 2004 because the period post-dates the filing of the complaint. GSK also complains that production of the data is unduly burdensome.

In an effort to address GSK's purported burden concerns, plaintiffs offered to permit GSK to withhold production of the data except for three drugs provided GSK agreed not to move for summary judgment on the periods of non-production or otherwise make use of the absence of evidence on summary judgment with respect to the others.  Plaintiffs also offered to limit the production of transactional data for the 1991 to 1996 period to just seven of the 34 AWPIDs. Both offers were rejected.

## ARGUMENT

GSK should be compelled to produce transactional data for the contested periods because (a) the periods for which discovery is sought are alleged in the complaint, (b) the statute of limitations does not bar discovery before 1997 because plaintiffs have alleged that GSK fraudulently concealed its misconduct, (c) GSK's conduct from before 1997 and after 2002 is relevant to prove liability for the  period 1997 to 2002, (d) defendants demanded discovery of

plaintiffs' class representatives for the period prior to 1997, and (e) the requested data is essential to calculate damages for the alleged period of liability.

## I.   The Transactional Data Is Relevant to Plaintiffs' Case

A.   *The AMCC Alleges Liability and Seeks Recovery From 1991 to the Present.*  The AMCC, filed June 12, 2003, alleges liability during the class period January 1, 1991 to the present.  AMCC ¶ 595-96.  The Court has not limited this period.  The AMCC also cites to relevant evidence concerning GSK's improper activities dating from before 1997.  *See generally,* AMCC ¶¶ 380-409.   The AMCC alleges continuing illegal activities and seeks injunctive relief against these activities.  AMCC Prayer for Relief ¶ E.  The AMCC on its face makes the transactional data sought relevant for discovery purposes for the entire period alleged in the complaint.  For example, the AMCC alleges that GSK tried to maximize the spread on its products to generate greater profits for physicians than its competitors.  AMCC ¶¶ 384-85.  Examining the transactional data over the entire period set forth in the AMCC will illuminate AWP manipulation scheme.  *See, e.g.,  Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) (at the discovery stage of litigation, information is discoverable if there is any possibility that the information sought may be relevant to the subject matter of the action).  GSK moved to dismiss plaintiffs' causes of action on a variety of grounds and was unsuccessful.  There is no order staging discovery by time period or subject matter.  Thus, the period 1991 to the present is in the case, plaintiffs are obligated to undertake and complete their discovery concerning the case they pleaded, and GSK may not withhold discovery concerning any part of the period of liability alleged in the AMCC.

B.   *The Statute of Limitations Does Not Apply Because Plaintiffs Have Alleged Fraudulent Concealment.*  "The federal doctrine of fraudulent concealment operates to toll the

statute of limitations 'where a plaintiff has been injured by fraud' and 'remains in ignorance of it without any fault or want of diligence or care on his part.'"  *Saolis v. Dime Savings Bank of N.Y.*, 128 F.3d 20 (1st Cir. 1997), *quoting Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).  The statute of limitations does not begin to run until the plaintiff knew or should have known of the injury.  *See Rotella v. Wood*, 528 U.S. 549, 552-54 (2000).

Plaintiffs have adequately pleaded fraudulent concealment.  Plaintiffs have pleaded, among other things, that :

- GSK "concealed its fraudulent conduct from the Plaintiffs and the Class by controlling the process by which the AWPs for Covered Drugs and brand name drugs were set."  AMCC ¶ 191.

- GSK "closely guarded its pricing structures and sales for their Covered Drugs and brand name drug," thus prevent[ing] Plaintiffs and the Class Members from knowing what actual pricing structures for these drugs were . . . ."  AMCC ¶¶ 192-3.

- GSK concealed "that (i) its AWPs were highly-inflated (and were inflated solely to cause Plaintiffs and the Class to overpay for the AWPIDs), (ii) it was manipulating the AWPs of the AWPIDs, and (iii) the AWP bore no relationship to the prices paid for, or the price structure of, the AWPIDs as they were sold to providers and others," AMCC ¶¶ 195-96.

- GSK's concealment succeeded: "Through no fault of their own, [the Plaintiffs] did not receive inquiry notice nor learn of the factual basis for their claims and injuries suffered therefrom until [shortly before filing the Complaint]." AMCC ¶ 197.

Plaintiffs have fully alleged the fraudulent concealment of GSK's AWP inflation scheme.  *See Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984) (setting forth elements of fraudulent concealment).  Thus, the statute of limitations does not apply.  *Kilmartin v. H.C. Wainwright & Co.*, 580 F.Supp. 604, 606-07 (D. Mass.1984) (fraudulent concealment tolls limitations period until plaintiff actually knows facts giving rise to a cause of action).  Certainly it does apply for purposes of discovery.

Indeed, some of the most powerful allegations and evidence concerning GSK's unlawful conduct involves actions that took place and documents that were created during the period 1991

to 1997.  It is during this period that the competitive battle between Zofran and Kytril that

resulted in flagrant spread manipulation, specified with great particularity in 30 paragraphs in the

AMCC, took place.  *See* AMCC ¶¶ 385 to 414..

       *C.*     *GSK's Pre-1997 and Post-2002 Conduct Is Relevant To Prove Liability For Its*

*1997-2002 Conduct.*  Where discovery will aid the understanding of facts or theories alleged in a

cause of action, it may be allowed even if it is beyond the statute of limitations.  *Stitt Spark Plug*

*Co. v. Champion Spark Plug Co.*, 840 F.2d 1253 n.21 (1st Cir. 1988) (citation omitted)

("discovery may be allowed about events that occurred at a time when a claim based upon them

would be barred by limitations").  GSK's pricing patterns and practices prior to 1997 will

illuminate its post-1997 conduct.  For example, an increase in the spread on a particular drug

from pre-1997 to post-1997 will alert plaintiffs to investigate competitive changes in the

marketplace for that drug that resulted in increased spread marketing.  Similarly, GSK's post-

2002 pricing may illuminate its control over its pre-2002 AWP spreads, or the feasibility of

adjusting them.  *See* Fed. R. Evid. 407 (permitting admission of subsequent measures for the

purpose of proving control or feasibility).  Accordingly, even if the periods for which GSK

resists discovery are time-barred – they are not – discovery concerning GSK's pricing during

those periods should be permitted.

       *D.*     *Defendants' Own Relevant Time Period Is January 1, 1991 To The Present.*

Defendants *themselves* have sought documents created from 1991 to the present.  *See, e.g.*,

Defendants' First Request for Production of Documents to Plaintiff Funds at Request Nos. 4-11,

24 (seeking the production of a wide variety of documents "[f]or the period 1991 to the

present"); Defendants' First Request for Production of Documents to Plaintiff Associations at

Request Nos. 2-9 (same).   Moreover, defendants have served subpoenas on over 40 health plan

class members, which seek production of all documents identified in the requests that were generated and/or maintained during the period January 1, 1991 to the date of production.  In response to these requests, plaintiffs and class members have produced documents and data extending back to the early '90s and continue to search for relevant documents from this era.

Indeed, in this case defendants have sought information pre-dating 1991.  For example, defendants served subpoenas on 33 Medicare Part B carriers demanding documents dating all the way back to January 1, 1985.

Defendants have requested information created from 1991 to the present (and, in some instances, before 1991).  GSK cannot now take the position that it is entitled to information for the entire Class Period, but need not produce it.  GSK cannot have it both ways.

E..     *Production of Transactional Data For The Entire Period Is Necessary to Calculate Damages.*  Plaintiffs have pleaded GSK liability from 1991 to the present and will be required to calculate and prove damages.  Where the statute of limitations has been tolled by fraudulent concealment, damages are calculated from the point that concealment began, which in this case is 1991.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 460 (2d Cir. 1974). Plaintiffs require the transactional documents to determine damages, and their production should be required.  *See General Instrument Corp. v. General Diode Corp.*, 41 F.R.D. 1, 3 (D. Mass. 1966) (allowing discovery with respect to a plaintiff's damages).

## II.     Production of the Transactional Data Is Not Unduly Burdensome

Burden complaints should not excuse GSK's duty to produce the requested transactional data.  To begin with, GSK has already produced, in electronic form, the data for 34 AWPIDs for the period 1997 to 2002.  This is basic sales data maintained by GSK in electronic form.  All of the 1997 to 2002 data was produced to plaintiffs on a single hard-drive the size of a paperback

book.  To the extent there was any learning to be done in pulling the 1997 to 2002 together , GSK has already accomplished this.  This is not a complicated matter.

Moreover, plaintiffs have offered to simplify the matter in two significant ways.  First, plaintiffs offered to permit GSK to postpone production of the pre-1997 data, except for three drugs, if GSK agreed not to move for summary judgment with respect to plaintiffs' claims on the other drugs prior to 1997.  Alternatively, plaintiffs offered to limit GSK's required production to seven identified drugs.  GSK refused both of these offers.

GSK should not now be permitted to complain about the burden of being required to produce transactional data with respect to 34 AWPIDs when it rejected reasonable opportunities to minimize the burden.

**<u>CONCLUSION</u>**

For the foregoing reasons, plaintiffs hereby request that the Court order GSK to produce transactional data for all AWPIDs for the periods 1991 through 1996 and 2003 through 2004.

Respectfully submitted,


By **/s/ David Nalven**
        Thomas M. Sobol
        David S. Nalven
        Edward Notargiacomo
        Hagens Berman LLP
        One Main Street
        Cambridge, MA  02142
        Telephone: (617) 482-3700
        Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*LIAISON AND CO-LEAD COUNSEL*

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Kenneth A. Wexler & Associates
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel Heins
Brian Williams
Heins, Mills & Olson, P.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

CO-LEAD COUNSEL

Dated: February 3, 2005

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

Docket No. MDL 1456

I hereby certify that I have conferred and attempted in good faith to narrow the issues with opposing counsel on numerous occasions as is set forth herein.

<u>  /s/ David S. Nalven        </u>

Dated: February 3, 2005

## <u>CERTIFICATE OF SERVICE</u>

Docket No. MDL 1456

I, David S. Nalven, hereby certify that I am one of plaintiffs' attorneys and that, on December 30, 2004, I caused copies of Plaintiffs' Motion for Leave to Compel Defendant GlaxoSmithKline to Produce Transactional Data to be served via VeriLaw on all counsel of record.

                                                   /s/ David S. Nalven

Dated: February 3, 2005