UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | FILED UNDER SEAL |

## DEFENDANT BRISTOL-MYERS SQUIBB'S INDIVIDUAL SUR-REPLY MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION

Defendant Bristol-Myers Squibb Company ("BMS")[1] submits this sur-reply memorandum in opposition to plaintiffs' motion for class certification.

### Argument

Plaintiffs begin their reply memorandum by asserting that they can demonstrate a "constellation of common issues" to support class certification through "[d]efendants' conduct, in publishing artificially inflated AWPs" (Pls. Reply at 1.) <u>This is not true for BMS</u>. As demonstrated in our opening memorandum, BMS does not publish AWPs. BMS submits wholesale list prices ("WLPs") to the Publications.

Plaintiffs' fallback position is that the Publications mark-up BMS's WLPs to create AWPs and then send them to BMS for approval (Pls. BMS Reply at 7) -- <u>again, not true for BMS</u>. Patricia Kay Morgan of First DataBank testified at her recent deposition that   Confidential Information Redacted

---

[1]   The BMS defendants also include Oncology Therapeutics Network Corporation, until recently a wholly-owned subsidiary of BMS, and Apothecon Inc., a subsidiary whose assets were sold by BMS to Novartis in 2001.

Confidential Information Redacted (1/11/05 Morgan Dep. Tr. 229.)[2] She testified further that Confidential Information Redacted Confidential Information Redacted (Id. at 230.)

Before BMS can be held liable in this case, plaintiffs must be able to answer the question: what should BMS have done differently? Should it have informed the Publications that its WLPs did not reflect discounts, rebates and chargebacks? BMS sent a standard statement to the Publications with its price reports that said precisely that, and Ms. Morgan testified that Confidential Information Redacted (1/11/05 Morgan Dep. Tr. 227.)

What plaintiffs must be arguing is that BMS should have reported its discounts, not WLPs. But there is no authority for the proposition that a company cannot publish a list price and certainly no authority that it must publish its discounts. Nor can it be said that, by sending WLPs to the Publications, BMS somehow became legally responsible for the published AWPs. See, e.g., In re Cabletron Systems, Inc., 311 F.3d 11, 37-38 (1st Cir. 2002) ("[A]n entanglement claim will be rejected if it merely suggests or assumes that company insiders provided the information on which analysts or other outsiders based their reports."); United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994) (third party is not liable for enterprise's decisions where "they neither made those decisions nor carried them out").

Moreover, there is substantial evidence that class members understand the extent to which BMS discounts its drugs. In Dr. Hartman's rebuttal declaration, after complaining (with great fanfare) about allegedly excessive spreads between the AWPs and ASPs for certain BMS drugs, Hartman purports to analyze the reimbursement rates of several purported class

---

[2]  Excerpts from the Patricia Kay Morgan deposition transcript are annexed hereto as Exhibit A.

2

members. (Hartman Reb. Decl. Attach. D.) That analysis shows a much closer relationship between the contracted reimbursement rates and the Hartman-calculated ASPs than the contracted reimbursement rates and the Publications' AWPs. (Id. Attach. D.1.a at 11-17, D.1.b at 8-17.) Thus, Hartman's own analyses contradict his theory that class members are victimized by the "spread" between AWP and ASP.

Plaintiffs are relegated to arguing that BMS should be included in a multi-defendant class because (1) "it is commonplace – especially in cases involving market-wide pricing – for numerous defendants to be included within the same action and same class definition" and (2) the fact that BMS does not report AWP to industry trade publications is "a merits-based argument that should not be considered in evaluating Plaintiffs' class certification motion." (Pls. BMS Reply at 1.) The first argument is highly disingenuous, and the second deliberately misses the point of BMS's challenge to the class definition.

Almost all of the cases that plaintiffs cite involving "market-wide pricing" (Pls. BMS Reply at 3-4) are antitrust conspiracy cases in which the multiple defendants are alleged to have acted in concert. In these cases, the courts found that there was sufficient commonality supplied by the defendants' group conduct notwithstanding that each defendant may have transacted separately with each class member. In this case, however, not only is each class member's experience different from one another *but none of the defendants here is alleged to have acted in concert.*[3] It is precisely because BMS has acted unilaterally, and differently, from the other defendants in not reporting AWPs to industry publications that BMS has separately opposed plaintiffs' motion for class certification.

---

[3]   With the exception of the Together Rx antitrust allegations, which allegations have been expressly *excluded* from plaintiffs' instant motion for class certification, there is absolutely no allegation that BMS has acted in concert with any of the other "fast track" (or, for that matter, any) defendants.

3

Second, BMS's argument is not about the "merits" – it is a question of procedural due process that goes to the very heart of plaintiffs' motion for class certification. Due process requires that BMS have its unique defenses given appropriate consideration by the trier of fact and not lost in a class action with other differently-situated defendants joined only for the convenience of class counsel.[4] Plaintiffs' attempt to "distinguish" on inapposite or insignificant facts or to belittle as "hoary" (Pls. BMS Reply at 4-5) the several cases BMS cited to this effect is to no avail.

What plaintiffs really are arguing is that even though BMS does not report AWPs, this is not (in their view) a sufficiently meritorious defense so as to warrant treating BMS separately from the other defendants in the proposed class definition. See Pls. BMS Reply at 6-9. Ironically, therefore, it is plaintiffs – not BMS – who are asking the court to delve into the merits. Plaintiffs are free to contest BMS's position on the merits, but they should not be permitted to do it in a proceeding with other defendants whose practices are significantly different from BMS's.

Plaintiffs' position on its state law claims further underscores why, if the Court is inclined to grant class certification, it should establish defendant-specific classes. Plaintiffs claim that each defendant's home state consumer protection law applies to all class members. (Pls. Reply at 17.) By that logic, since BMS's home state (New York) is different from that of the other Track 1 defendants, the law that will be applied to the claims against BMS will be different as well.

As noted in defendants' joint memorandum, BMS does not believe that any class should be certified at all. If the Court is going to certify any of plaintiffs' proposed classes,

---

[4] The Court may recall that many of the constituent cases that ultimately were consolidated for pre-trial purposes under one master consolidated complaint (including cases against BMS) were cases against a single defendant.

4

however, there should be defendant-specific classes. That was the Court's initial reaction in March 2004, and the Court was right.

### Conclusion

In sum, there are such substantial questions for trial surrounding the fact that BMS does not report AWPs to the Publications that it would be a denial of due process for BMS to be lumped together with other defendants in plaintiffs' proposed class definition. Accordingly, plaintiffs' motion to certify a multi-defendant class (as well as their motion to certify any class), should be denied.

Dated: January 21, 2005

                                Respectfully submitted,

                                BRISTOL-MYERS SQUIBB COMPANY,
                                ONCOLOGY THERAPEUTICS NETWORK CORP.
                                and APOTHECON, INC.

                                By their attorneys,

                                Thomas E. Dwyer, Jr. (BBO No. 139660)
                                Joseph Haviland (BBO No.643814)
                                **DWYER & COLLORA, LLP**
                                600 Atlantic Avenue
                                Boston, MA  02210
                                (617) 371-1000
                                (617) 371-1037 (facsimile)

                                Steven M. Edwards (SE 2773)
                                Lyndon M. Tretter (LT 4031)
                                Admitted *pro hac vice*
                                **HOGAN & HARTSON L.L.P.**
                                875 Third Avenue, 26th Floor
                                New York, NY  10022
                                (212) 918-3000

# EXHIBIT A

Confidential Information Redacted

**CERTIFICATE OF SERVICE**

      I, Joseph E. Haviland, certify that on February 4, 2005, I caused a true and correct copy of the foregoing document to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2, in the above-captioned proceeding by sending a copy to Verilaw Technologies for posting and notification to all parties.

                                                          /s/ Joseph E. Haviland
                                                           Joseph E. Haviland