# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

THIS DOCUMENT RELATES TO
01-CV-12257-PBS AND 01-CV-339

## TRACK ONE DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF STEVEN J.
## YOUNG

## [REDACTED VERSION FOR PUBLIC FILING]

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    Young's Expertise ................................................................................................... 2

    Young's Preparation Of His Expert Affidavit ........................................................ 4

ARGUMENT ............................................................................................................... 6

I.    YOUNG IS EMINENTLY QUALIFIED AS AN EXPERT ON THE
     PRICING OF, AND REIMBURSEMENT FOR, SELF-ADMINISTERED
     DRUGS AND PHYSICIAN SERVICES, INCLUDING PHYSICIAN-
     ADMINISTERED DRUGS ...................................................................................... 6

II.   THE RECORD BELIES PLAINTIFFS' MISTAKEN ASSERTIONS
     ABOUT NONDISCLOSURE OF INFORMATION ................................................ 9

III.  PLAINTIFFS' ALLEGATIONS THAT YOUNG SUFFERS FROM A
     DISQUALIFYING LACK OF "INDEPENDENCE" ARE LEGALLY
     AND FACTUALLY WRONG ................................................................................ 13

IV.  PLAINTIFFS HAVE NOT PROVEN THAT YOUNG HAS A
     DISQUALIFYING CONFLICT OF INTEREST ...................................................... 14

V.   PLAINTIFFS' CONTENTIONS THAT YOUNG IGNORED
     RELEVANT "EVIDENCE" ARE DEMONSTRABLY INCORRECT .................... 15

CONCLUSION ........................................................................................................... 15

i

# TABLE OF AUTHORITIES

## Cases

Page

*Cherry Hill v. Healthcare Rehab Sys. Inc.*, 994 F. Supp. 244
(D.N.J. 1997)...................................................................................................................14

*City of Springfield v. Rexnord Corp.*, 111 F. Supp. 2d 71
(D. Mass. 2000)...............................................................................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311
(9th Cir. 1995)................................................................................................................ 7-8

*DenNorske Bank, A.S. v. First Na'l Bank of Boston*,
75 F.3d 49 (1st Cir. 1996)...............................................................................................13

*Fitz Inc. v. Ralph Wilson Plastics Co.,*, 184 F.R.D. 532
(D.N.J. 1999)...............................................................................................................12,13

*Flebotte v. Dow Jones & Co.*, Civ. A. No. 97-30117-FHF,
2000 U.S. Dist. LEXIS 19875 (D. Mass Dec. 6, 2000)....................................................12

*Kumho Tire Co . v. Carmichael*, 526 U.S. 137 (1999) .......................................................6

*In re Malden Mills*, 275 B.R. 670 (Bankr. D.Mass. 2002) ...............................................14

*Norris v. Murphy*, Civ. A. No. 00-12599,
2003 Lexis 10795 (D. Mass. June 26, 2003) .............................................................11,12

*Plywood Prop. Assocs., v. Nat'l Flood Ins. Program*,
928 F. Supp. 500 (D.N.J. 1996) .....................................................................................6,7

*Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014
(5th Cir. 1993)................................................................................................................13

*Tagatz v. Marquette Univ.*, 861 F.2d 1040
(7th Cir. 1988)................................................................................................................13

*Thomas J. Kline, Inc. v. Lorrilard, Inc.*, 878 F.2d 791
(4th Cir. 1989)..................................................................................................................8

*Tokio Marine & Fire Ins. Co., Ltd. v. Grove Mfg. Co.*,
958 F.2d 1169 (1st Cir. 1992)...........................................................................................6

*United States v. Paiva*, 892 F.2d 148 (1st Cir. 1989) .......................................................6

*Villalba v. Consol. Freightways Corp of Delaware*, Case No. 98 C 5347,
2000 U.S. Dist. LEXIS 11773 (N.D. Ill. Aug. 10, 2000)....................................................11

ii

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124
(2d Cir. 2001)...........................................................................................................................9

## **Statutes & Rules**

Fed R. Civ. P. 23 ..........................................................................................................7,8,9

Fed R. Civ. P. 26(a)(2)(b) ...........................................................................................9,10

Fed. R. Evid. 702 ......................................................................................................6,9,13

## INTRODUCTION

Plaintiffs move to strike the expert declaration of Steve Young on five grounds: (1) he is allegedly not sufficiently credentialed or knowledgeable to be an expert; (2) he has allegedly withheld information about his experience; (3) he allegedly relied on this specific experience to form the basis of his opinions; (4) he was allegedly improperly influenced by the Fast Track Five Defendants' attorneys; and (5) he allegedly suffers from a disqualifying conflict of interest. None of plaintiffs' objections has merit.[1]

Plaintiffs' "kitchen-sink" disqualification motion is entirely without merit. We show below that Mr. Young has ample background and experience to qualify as an industry expert in this case. Mr. Young has also disclosed the names of all entities for whom he has done work in the past and has also described in detail the nature of his work. Furthermore, while his experience generally is the product of twenty years working in the health care industry, his specific opinions in this matter are not based on any undisclosed information or materials. Indeed, as his declaration and supporting materials attest, Mr. Young's opinions in this matter are based on the extensive evidentiary record developed to date, as well as scores of publicly available materials, of which is set forth in detail in the materials submitted by Mr. Young to the plaintiffs and the Court. Plaintiffs' suggestion of undue influence by defendants' attorneys is baseless and belied by the record. Finally, the suggestion that Mr. Young is subject to a

---

[1] Throughout their memorandum, plaintiffs make incorrect page citations to the Young deposition transcript, which makes it extremely difficult for defendants to verify, contextualize, and respond to plaintiffs' allegations. Defendants' citations herein are to the certified copy of Young's deposition transcript, numbered consecutively 1-455 and covering two days of testimony on November 18 and 19, 2004.

disqualifying conflict of interest merely because he has, in other unrelated engagements, during his career, worked for third-party payors is without merit.

## STATEMENT OF FACTS

### Mr. Young's Expertise

Defendants have proffered Mr. Young as an industry expert, not as an economist or an econometrician. (Young Dep. at 49.) Over the last 20 years, Mr. Young has gained extensive expertise as a consultant in the health care field. Beginning in 1983, Mr. Young advanced from staff member to equity partner at the audit and consulting firm Arthur Andersen. (Young Dep. at 33.) Additionally, Mr. Young is a Certified Public Accountant. (Young Dep. at 13.) During Mr. Young's first few years at Arthur Andersen, he was engaged in financial analysis. (Young Dep. at 37.) From then on he was engaged in full-time consulting to several industries, including his practice in the health care field. (Young Dep. at 37-38.) Since the late 1980's, Mr. Young's consulting work has focused primarily in the health care field. (See, Young's Curriculum Vitae, attached as Exhibit 2a to his Declaration and attached hereto as Exhibit A.) Since 2002, he has been a managing director and the head of the health care payor and pharmaceutical group at Huron Consulting. (Young Dep. at 49-50.)

Over the course of his career, Mr. Young has gained extensive expertise in health care insurance, reimbursement, and claims systems. He has analyzed insurance companies' claims data and reimbursement schedules by analyzing large health insurer claims data sets to quantify the historic impact of certain system and process deficiencies related to compliance with Medicare Secondary Payment requirements. (Young Decl. ¶ 11.) He has assisted insurance and managed care companies with strategic assessments

2

relating to the various components of health care pricing and their administrative costs. (Young Decl. ¶ 12.)  He has analyzed large sets of claims data, containing a variety of contractual reimbursement structures, to determine if an insurance company or its subcontractor properly paid claims in accordance with particular contractual terms or regulatory requirements.  He has become familiar with the operating and cost structure of Medicare Fiscal Intermediaries and Medicare Carriers.  (Young Decl. ¶ 13.)  He has performed detailed analyses of pharmaceutical manufacturer pricing and discounting practices based on the analysis of large data sets, in order to assess compliance with Medicaid Best Price or Most Favored Customer Price requirements.  (Young Decl. ¶ 14.) He has assisted companies in preparing federal disclosures of commercial sales practices and pricing, by analyzing large volumes of data related to pricing, discounting, and rebates.  (Young Decl. ¶ 15.)  Mr. Young understands, and can provide assistance regarding, the complex, real-life steps that comprise the reimbursement for pharmaceutical products by private insurers or the government.

Mr. Young's extensive experience and detailed description of his work in the health care industry are set forth in his curriculum vitae.  (C.V., Exhibit A.)  In his deposition, Mr. Young described in detail the nature of his expertise and industry experiences, as well as the specific entities for whom he has performed services.  For example, Mr. Young clearly testified to the work that he has done for pharmaceutical manufacturers, stating that the work related to "downloading data to recompute the average manufacturer prices based on the guidance that has been provided by the government agency, determining the best prices, testing certain things that they have done, presenting that to the government, providing work papers to the government for

their review [and] allocation of cost down to a specific product line P & L for a

pharmaceutical company." (Young Dep. at 445.) Mr. Young also gave explanations of

the detail about the work he did for heath plans and insurers. For example, he fully

explained the work he did relating to the secondary pay requirements:

> Basically, those engagements involved the process of downloading
> various information from the claims processing system, analyzing the
> claims that could require coordination of benefits with Medicare, the
> identification of other claims that may be Medicare related but were not
> identified as such in the system. We then took those claims, did a 100
> percent repricing of the ones under $10,000 in charges, and did a statistical
> sample of the remaining portion of it. We then presented the results to the
> government and the company worked out an agreement.

(Young Dep. 446-47.)

## Mr. Young's Preparation Of His Expert Affidavit

Mr. Young prepared his expert affidavit by delving into the evidence and the

record in this case. Mr. Young, aided by his team at Huron Consulting Group, reviewed

and analyzed contracts, insurers' claims data, manufacturers' sales data, deposition

testimony, and other documents produced in discovery. He also reviewed data and

numerous documents produced by the named plaintiffs, published articles, and

government documents. The list of documents and data Mr. Young reviewed and relied

upon takes up fully 11 single-spaced pages. (*See* Exhibit 3 to Young Declaration.) Mr.

Young also reviewed documents attached to plaintiffs' affidavits, the AMCC. Plaintiffs'

suggestion that Mr. Young selectively reviewed data and documents is thus contrary to

the record.[2]  Plaintiffs also unjustifiably attack Mr. Young's use of deposition transcripts

---

[2] Class Plaintiffs' Memorandum in Support of Their Motion to Strike Declaration of Steven J. Young at 14-15. In fact, none of the pages from Young's deposition that plaintiffs cite in support of their contentions about Young's document review and research efforts are relevant to their contentions.

4

to support his conclusions. Mr. Young has extensive experience using information from interviews in conjunction with data sets to understand the reality and complexity of an insurer's claims administration. His testimony makes it clear that human interpretation of the claims process is just as important as the data or the contracts in understanding how reimbursement levels were arrived at. (Young Dep. at 157 (". . . information from the people that are involved in the process is a critical element of what we have to consider when we do our work"); Young Dep. at 257; Young Dep. at 301.)

Further, Mr. Young's testimony about his discussions and meetings with Defense attorneys during the course of the preparation of his declaration makes it clear that the attorneys did not improperly influence the content of his declaration. There is no support for plaintiffs' contention that Mr. Young drafted his declaration "together with defense attorneys." (Class Plaintiffs' Memorandum In Support of Their Motion to Strike Declaration of Steven J. Young at 14.) To the contrary, Mr. Young testified that he "drafted the initial cutting of the writing of the report, and then we had various meetings to discuss the draft." (Young Dep. at 415.) In fact, he stated that when he met with the attorneys about his report, they asked him questions, rather then telling him anything at all. (Young Dep. at 284.) The only testimony that he provided about attorney input into his report was to explain that the attorneys helped him manage the length of his report by helping to allocate relevant deposition testimony between his report and an exhibit to his report. (Young Dep. at 156.)

**ARGUMENT**

I.   **MR. YOUNG IS EMINENTLY QUALIFIED AS AN EXPERT ON THE
     PRICING OF, AND REIMBURSEMENT FOR, SELF-ADMINISTERED
     DRUGS AND PHYSICIAN SERVICES, INCLUDING PHYSICIAN-
     ADMINISTERED DRUGS**

Plaintiffs complain that Mr. Young does not have adequate experience or an

academic degree in economics or econometrics.  As an initial matter, as is clear from Mr.

Young's Declaration and his deposition testimony,[3] Mr. Young is not being offered as an

economist or an econometrician.  His lack of an economics degree is therefore irrelevant.

As plaintiffs well know, Federal Rule of Evidence 702 provides that a witness may be

"qualified as an expert by *knowledge, skill, experience, training, or education*" (emphasis

added); the rule thus "expressly contemplates that an expert may be qualified on the basis

of experience. . . ."  *Id.*, Advisory Committee Notes, 2000 Amendment.  That means an

expert may acquire expertise from experience, not just academics.[4]  And experience is

what Mr. Young brings to this case:  As set out above, Mr. Young has spent nearly

twenty years analyzing claims data and pricing data, and advising with respect to

reimbursement and pricing issues for health care industry clients.  Additionally, Mr.

Young is a Certified Public Accountant.  (C.V., Exhibit A at 4.)

---

[3] Young makes clear in his testimony that he is not an economist.  (Young deposition at 49 and 232.)

[4] *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Tokio Marine & Fire Ins. Co., Ltd. v. Grove Mfg. Co.*, 958 F.2d 1169, 1175 (1st Cir. 1992) (explaining that "Rule 702 does not require specific educational training in the area of expertise"); *United States v. Paiva*, 892 F.2d 148, 160 (1st Cir. 1989) ("A witness may qualify as an expert on any one of [Rule 702's] five listed grounds."); *Plywood Prop. Assocs., v. Nat'l Flood Ins. Program*, 928 F. Supp. 500, 508 (D.N.J. 1996) ("specialized degrees, licenses, publications in field, while all commendable, are not required to be possessed by every witness acting as an expert").

6

Mr. Young's dispersion charts demonstrate

**REDACTED**

Young

Decl. Exh. 15.)  Plaintiffs attack the chart because

**REDACTED**

Even if Plaintiffs are correct that Mr. Young "did nothing more than plot numbers on a graph," that would not be a ground to disqualify him.  Indeed, plotting numbers requires no particular expertise, and the fact that Mr. Young is not an economist does nothing to diminish the power or reliability of his chart.  Mr. Young simply used the chart to illustrate a point that he understands from his vast experience in pharmaceuticals reimbursement—                    **REDACTED**

Plaintiffs also argue that Mr. Young is not sufficiently experienced as an expert because he allegedly does not know enough about Rule 23 and class certification.  These contentions are meritless.  As an initial matter, just because Mr. Young has limited experience testifying in court does not make him unqualified; experts do not materialize from thin air.  *See Plywood Prop. Assocs.*, 928 F. Supp. at 508 (explaining that "[p]rior qualification as an expert witness" is "not required to be possessed by every witness acting as an expert").  *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d

---

[5] In fact, Young did normalize the data based on industry codes.

7

1311, 1317 (9th Cir. 1995) ("[I]n determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office."); *Thomas J. Kline, Inc. v. Lorrilard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) ("Although it would be incorrect to conclude that [a witness's] occupation as a professional expert alone requires exclusion of her testimony, it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying.").

In any event, Mr. Young is offered to help the Court understand insurance reimbursement and pharmaceutical pricing, not class actions -- the Court will be the ultimate expert on the interpretation and application of Rule 23.  And Mr. Young's nearly two decades of industry experience make him a qualified expert on the complicated reimbursement issues that underlie the class-action analysis.

Plaintiffs also argue Mr. Young should be disqualified because he allegedly lacks experience with respect to drug reimbursement.  They misleadingly quote Mr. Young's deposition testimony in an effort to support their argument that Mr. Young is not qualified to testify with respect to reimbursement issues.  *See Pl. Mot. Strike* at 11 (Plaintiffs cite to two question and answers regarding Mr. Young's experience with reimbursement for injectible products and drugs covered by Medicare Part B, but ignore his testimony regarding what he has done regarding reimbursements).  In fact, Mr. Young testified:

> Q. Have you ever been hired by a health plan to provide consulting in connection with their reimbursement for any other drug covered by Medicare Part B?
>
> . . .

8

> A. Again that is a little bit different than the previous question. I have done several engagements related to reimbursements. Under physician fee schedules and related to facility fee schedules and other types of providers, reimbursements for drugs are clearly part of that, both injectable and self administered. Therefore, the answer to that in connection with that is yes, a substantial amount of engagements related to that.

(Young Dep. at 65-66.)

The fact that Mr. Young did not advise health plans "how much a particular health plan should or should not be reimbursing," (Pl. Mem. at 11), does not diminish the substance of his experience consulting with respect to these reimbursements. More importantly for these purposes, the fact that his experience with respect to drug reimbursement comes not in negotiating reimbursement contracts, but in analyzing the myriad of different reimbursement structures negotiated by others, is not disqualifying. Mr. Young is, of course, not a lawyer, a career expert witness, or a Rule 23 expert; he is an industry expert. His experience is more than adequate to establish that he can assist the Court. While plaintiffs appear to argue that their expert's declaration should be stricken only if it is "fatally flawed", *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001), and defendants' experts should be subjected to a full Daubert review, it does not matter: plaintiffs have not come close to meeting such a standard.

## II.   THE RECORD BELIES PLAINTIFFS' MISTAKEN ASSERTIONS ABOUT NONDISCLOSURE OF INFORMATION.

Plaintiffs argue that Mr. Young should be disqualified for failure to comply with the disclosure requirements of Rule 26. Their arguments fundamentally misconstrue the nature of Rule 26's disclosure requirements, Mr. Young's opinions in this matter and the

9

basis of those opinions, and Mr. Young's testimony and disclosures with respect to his prior experience. Mr. Young has disclosed both the names of his former clients and provided detailed descriptions of the work that he has performed over the course of his career. (Exh. 2 to Young Declaration.) However, because of the confidentiality agreement he has declined to marry the two lists and match the client names with the descriptions of the work. This is no basis for striking his testimony. Because Mr. Young has provided extensive information regarding the work he has done, plaintiffs have suffered no prejudice whatsoever. Because Mr. Young has a contractual obligation not to disclose specific names of clients protected by confidentiality provisions, to discuss the confidential details of work performed under those agreements, or to produce a report he wrote in another case covered by another court's protective order, (Young Dep. at 17-21), his refusal to discuss these matters is justified.[6]

An expert is required by the Federal Rules to disclose the information he considered in forming the opinions about which he will testify. Likewise, he must provide his qualifications. Fed R. Civ. P. 26(a)(2)(b). In this case, Mr. Young's qualifications are dependent upon his experience, which Mr. Young discussed at length and in detail in his report and deposition. Plaintiffs attempt to confound the distinction between Mr. Young's "experience," gained through work for particular clients in the past under confidentiality agreements, and the information he relied upon in forming his opinions in this matter. As set forth above, Mr. Young provided an exhaustive list of the

---

[6] Plaintiffs' arguments concerning Mr. Young's expert reports in the *Walker* and *Stetser* litigations reflect the absurdity of their motion to strike. Plaintiffs argue that Mr. Young should be required to discuss the substance of those two reports and violate court orders to do so, even though the undisputed evidence in the record is that Mr. Young did not review or rely upon his work in those reports in connection with his drafting of his Declaration in this matter. (Young Dep. at 443.)

sources on which he relied in forming his opinions about *this purported class*. The names of the clients for whom he has performed specific projects under confidentiality agreements in the past is simply irrelevant here.

Plaintiffs attempt to compare Mr. Young's situation with that of the expert in *Norris v. Murphy*, Civ. A. No. 00-12599 2003 U.S. Dist. Lexis 10795 (D. Mass. June 26, 2003), which they cite for the proposition that exclusion is mandatory and automatic unless a violation of Rule 26's disclosure requirements was either justified or harmless. (Pl. Mot. at 20.) But *Norris* is easily distinguished. There, the defendant's expert was unable to remember the names of the state cases in which he had previously testified and could only provide a partial list of the federal cases. *Norris* at *6. And even when he could remember names, he was unable to provide any other information related to the name or location of the court or the date of the case. *Id.* at *7. In contrast, Mr. Young, consistent with his legal and ethical obligations and court orders, *is not permitted to* associate names of clients with specific projects. Unlike the expert in *Norris*, Mr. Young provided all the relevant substantive information about the other matters in which he has worked as an expert.

The court in the District of Massachusetts recently held that "neither the plain language of the rule nor its purpose compels disclosure of every calculation or test conducted by the expert during formation of the report." *Flebotte v. Dow Jones & Co., Civ.* A. No. 97-30117-FHF 2000 U.S. Dist. LEXIS 19875, *22 (D. Mass Dec. 6, 2000). *See also Villalba v. Consol. Freightways Corp of Delaware*, Case No. 98C5347 2000 U.S. Dist. LEXIS 11773, *32 (N.D. Ill. Aug. 10, 2000). Given this standard, the specific

calculations and tests performed in prior, unrelated engagements certainly need not be disclosed.

Furthermore, the omission of exactly *for whom* Mr. Young performed any particular work under confidentiality agreements or confidentiality orders in the past is both harmless and justified.  The lack of disclosure is harmless because "there is no prejudice to the party entitled to disclosure." *Fitz v. Ralph Wilson Plastics Co.*, 184 F.R.D. 532, 536 (D.N.J. 1999).  As in *Fitz*, "the information not disclosed is of marginal relevance." 184 F.R.D at 539.  Mr. Young has already provided information regarding the work he did previously and the identity of the parties he did it for.  The disclosure of information regarding which work he did for which particular client "will not provide any significant insights into the basis for [the expert's] opinions and conclusions regarding" the issues in this case.  *Id.*  Accordingly, there is no prejudice to plaintiffs, and any failure to disclose information was harmless.[7]

Furthermore, exclusion is hardly an appropriate remedy given the breadth and depth of Mr. Young's disclosures.  "[E]xclusion of evidence is a severe sanction and is therefore often inappropriate. . . ." *Fitz*, 184 F.R.D. at 536.

---

[7] Plaintiffs' citations have no application here.  In *Reed v. Binder*, most of the expert reports omitted "the basis and reasons for the opinions" which the court found to be harmful.  165 F.R.D. 424, 430 (D.N.J. 1996).  In *Laplace – Bayard v. Battle*, the court excluded a report from an expert witness whom plaintiffs failed to disclose to the defendants until "barely a week before trial." 295 F.3d 157, 162 (1st Cir. 2002).  Here, there is no suggestion that Young's identity was hidden, and the basis and reasons for his opinions, as well as all the support for his opinions, are set forth in the materials provided to plaintiffs.

### III.   PLAINTIFFS' ALLEGATIONS THAT MR. YOUNG SUFFERS FROM A DISQUALIFYING LACK OF "INDEPENDENCE" ARE LEGALLY AND FACTUALLY WRONG.

Plaintiffs next contend that Mr. Young must be excluded because he is not independent of the Defendants.  This is wrong on both the law and the facts.

To begin, there is simply no requirement, in Rule 702 or elsewhere, that a party's expert witness be "independent."  Any lack of "independence" goes not to admissibility of expert testimony, but to its appropriate weight.  In *DenNorske Bank, A.S. v. First Nat'l Bank of Boston*, the defendant argued that the expert testimony proffered by the plaintiff merely represented self-serving statements which would help their employer, since both experts were employees of the plaintiff.  75 F.3d 49, 58 (1st Cir. 1996).  The court, however, was "not persuaded" that the defendant

> has demonstrated that the expert qualifications of these affiants are
> undermined by their present and former association with [the plaintiff] so
> as to render their testimony inadmissible.  Of course, such matters may
> bear heavily on witness credibility, bias, and the weight of the evidence.
> But these matters are for the factfinder.

*Id.*; *see also Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993) (concluding that the Federal Rules of Evidence do not prohibit a party from serving as his own expert witness); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) (holding that a party may qualify as its own expert witness).

Plaintiffs allege that Mr. Young is not independent because Defendants exercised undue influence over the drafting process.  As set forth above, there is absolutely no evidence, on the pages cited by plaintiffs or anywhere else, that Defendants exercised undue influence over the drafting process.

## IV.   PLAINTIFFS HAVE NOT PROVEN THAT MR. YOUNG HAS A DISQUALIFYING CONFLICT OF INTEREST.

In a footnote plaintiffs also contend that Mr. Young suffers from a disqualifying "conflict of interest." (Pl. Mem. at 7 fn. 1). The party claiming that such a conflict exists—here plaintiffs—bears the burden of proving it. *City of Springfield v. Rexnord Corp.*, 111 F. Supp. 2d 71, 73 (D. Mass. 2000). To establish such a conflict, plaintiffs must show, for example, that Mr. Young either (1) was retained by one party to litigation and switched sides to consult for the opposing party, or (2) was affiliated with one party but employed as an expert by the other party. *Id.* at 74. Under either inquiry, the question is whether the expert is using confidential information of former or current clients obtained in other engagements. *Id.* at 74,75. Specifically, plaintiffs must prove confidential "discussion of the [retaining party's] strategies in the litigation, the kinds of expert [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses." *Cherry Hill v. Healthcare Rehab Sys. Inc.*, 994 F. Supp. 244, 250 (D.N.J. 1997); *see also In re Malden Mills*, 275 B.R. 670, 673 (Bankr. D. Mass. 2002).

There is no such evidence here. Plaintiffs allege that Mr. Young failed to disclose the names of his former clients. (*See* Pl. Mem. at 7 fn. 1.) As demonstrated above, that is inaccurate. (Exh. 2 to Young Decl.; Young Dep. at 44-46.) Moreover, it would not be a sufficient basis upon which to disqualify Mr. Young. In order to disqualify Mr. Young on the ground that he suffers from a conflict, plaintiffs must prove that Mr. Young's opinions here are based on confidential information provided to Mr. Young by plaintiffs. The record established to the contrary. *See supra* at 2-5; *See generally Cherry Hill*, 994

14

F. Supp. at 250-51 (noting the "distinction between confidential business and financial records and confidential communications related to a particular litigation," and that only the latter justifies disqualification).

## V.   PLAINTIFFS' CONTENTIONS THAT MR. YOUNG IGNORED RELEVANT "EVIDENCE" ARE DEMONSTRABLY INCORRECT.

Plaintiffs claim that Mr. Young "chose to ignore relevant ASP information that he could have used to compare against the AWP of a corresponding drug." (Pl. Mem. At 15). Mr. Young had no need to compare any ASP to any AWP, since the substance of his opinion related to the level of reimbursement and its relationship to AWP, and had nothing to do with ASP. (Young Decl.). Manufacturer sales prices were not central to Mr. Young's analysis.

## CONCLUSION

Plaintiffs' Motion to Strike the Declaration of Steven J. Young should be denied.

15

Respectfully submitted,

THE TRACK 1 DEFENDANTS

By: /s/ Jessica V. Barnett

Nicholas C. Theodorou (BBO # 496730)
Jessica V. Barnett (BBO # 650535)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110

D. Scott Wise
Michael Flynn
Kimberley Harris
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Attorneys for AstraZeneca Pharmaceuticals LP

Steven M. Edwards
Lyndon M. Tretter
Hogan & Hartson, LLP
875 Third Avenue, Suite 2600
New York, NY 10022

Attorneys for the Bristol-Myers Squibb Co., Oncology
Therapeutics Network Corp., and Apothecon, Inc.

Mark H. Lynch
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-7566

Frederick E. Herold
Dechert LLP
975 Page Mill Road
Palo Alto, CA 94304-1013

Geoffrey E. Hobart
Holland & Knight LLP
10 St. James Ave.
Boston, MA 02116

16

Attorneys for SmithKlineBeecham Corp.
d/b/a GlaxoSmithKline

William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036 6710

Attorneys for the Johnson and Johnson Defendants

John T. Montgomery
Brien T. O'Conor
Steven A. Kaufman
Darcy W. Shearer
Eric P. Christofferson
Ropes & Gray LLP
One International Place
Boston, MA 02110

Attorneys for Schering-Plough Corp. and
Warrick Pharmaceuticals Corp.

Dated: January 21, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2005, I caused a true and correct copy of the foregoing Track One Defendants' Memorandum in Opposition to Plaintiffs' Motion to Strike the Declaration of Steven J. Young [REDACTED VERSION FOR PUBLIC FILING] and the accompanying Declaration of Monica Lamb to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2.

/s/ Jessica V. Barnett
Jessica V. Barnett
