```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> **ALL ACTIONS** ) <br> ) <br> ) | MDL NO. 1456 <br> CIVIL ACTION NO. <br> 01-12257 |

## **MEMORANDUM AND ORDER**

February 4, 2005

Saris, U.S.D.J.

### **I.  Introduction**

Plaintiffs have moved to add B. Braun Medical, Inc. ("BBM") to the Amended Master Consolidated Complaint as a defendant in this action alleging fraudulent pricing schemes by pharmaceutical manufacturers, and oppose B. Braun of America, Inc.'s ("BBA") motion to dismiss on the ground of lack of personal jurisdiction. After review of the briefs, Plaintiffs' motion to add BBM is **ALLOWED**, and BBA's motion to dismiss is **ALLOWED**.

### **II.  Background**

#### A.  **Procedural Background**

On September 6, 2002, Plaintiffs named BBM as a defendant in the Master Consolidated Complaint ("MCC"). After this Court dismissed BBM as a party from the MCC on May 13, 2003 without prejudice, Plaintiffs filed the Amended Master Consolidated Complaint ("AMCC"), in which BBA was named as a defendant. The

AMCC alleges that "Braun," defined as BBA, B. Braun McGaw, and McGaw, Inc., is "in the business of manufacturing and distributing prescription pharmaceuticals." (7/8/2004 AMCC at ¶ 69.)

On August 4, 2003, BBA filed an individual memorandum in support of dismissing the AMCC in which it contested this Court's personal jurisdiction over it and claimed that service of the AMCC was faulty. BBA claimed that contrary to the allegations of the AMCC, it does not manufacture any drugs, and lacks minimum contacts with Massachusetts. In reply, Plaintiffs requested the opportunity for jurisdictional discovery to demonstrate the connections between BBA and BBM and to investigate BBA's claims. The Court allowed Plaintiffs jurisdictional discovery on February 24, 2004, instructing Plaintiffs to respond to BBA's claims by August 24, 2004. On April 14, 2004, BBA filed an Answer to the AMCC, denying that BBA was involved in the manufacture or sale of drugs but admitting that BBM manufactures six of the drugs named in the AMCC. (Ans. at 31.)

Unfortunately, discovery did not go smoothly. Plaintiffs did not file a notice of 30(b)(6) deposition with BBA until August 4, 2004, leaving insufficient time for the twenty-one days notice provided by this Court's Procedural Order No. 10. BBA designated Cathy L. Codrea, BBA's Assistant Secretary and Director and BBM's Assistant General Counsel, Assistant Secretary and Corporate Compliance Officer as its witness. At the August

17, 2004 deposition, Ms. Codrea was evasive, variously refusing to answer certain questions on the ground that the 30(b)(6) was directed only to BBA, not BBM, and that all of her knowledge of BBM came through her role as BBM's attorney and thus protected by attorney-client privilege.  Ms. Codrea refused to identify which Braun entity manufactured each of the drugs named by the AMCC, although she mentioned that BBM "does sell certain drug products[,] of which some may be listed [in the AMCC,] into the State of Massachusetts."  (Codrea Dep. at 63.)

Plaintiffs filed a motion to compel a further 30(b)(6) deposition along with their opposition to BBA's motion to dismiss.  Magistrate Judge Bowler denied the motion to compel in open court on October 13, 2004, orally noting the tardiness of Plaintiffs' discovery requests.  Plaintiffs have not objected to Judge Bowler's Order.

### B.  Corporate Entities

BBA does not manufacture or sell the drugs named in the AMCC.  At the formal, corporate level, BBA is a holding company, operating no business of its own, which provides financing to BBM.  BBM is a wholly-owned subsidiary of BBA and provides it with financial reports.  The two companies share a principal place of business, at least one director and at least four officers, some of whom operate the day-to-day business of BBM.

The companies' corporate relationship is unclear.  BBA has

filed an opposition to the motion to add BBM as a defendant on behalf of BBM, and BBA instructed BBM to make available and produce documents responsive to Plaintiffs' discovery requests. Dun and Bradstreet provided a report for an entity called B. Braun McGaw, Inc., which Ms. Codrea asserted does not, to her knowledge, exist.

### III.  Discussion

**A.  Motion to Add BBM**

Plaintiffs have moved to add BBM pursuant to Federal Rules of Civil Procedure 15 and 21.  Where a plaintiff has moved for leave of court, "the same basic standard for adding or dropping a party will apply whether the pleader moves under Rule 15(a) or Rule 21."  6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1474 (2d ed. 1990).  "[L]eave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); see also Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.").  Local Rule 15.1 additionally provides that "[a]mendments adding parties shall be brought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party."

"Among the adequate reasons for denying leave to amend are 'undue delay' in filing the motion and 'undue prejudice to the

opposing party by virtue of allowance of the amendment.'" Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 51 (1st Cir. 1998) (affirming district court refusal to allow amendment to add defendant where nearly all of the case's pre-trial work was complete and adding party would have delayed trial by at least an additional twelve months) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). When substantial time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing a valid reason for his delay. Id. at 52 (citations omitted). See also Stepanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) (affirming district court refusal to allow amendment to add claim after seventeen months of discovery and within one month of trial).[1]

Plaintiffs explain their delay in moving to add BBM as a mistake, claiming that they intended to name BBM in the AMCC. Plaintiffs claim that after the Court's ruling permitting them jurisdictional discovery, they elected to await the results of the discovery to determine whether BBM was a proper party. Plaintiffs also point out that it has been difficult to determine which Braun entity manufactured the drug, and unlike Johnson &

---

[1] The parties have cited caselaw concerning whether the requirements of Rule 15(c) have been met, but this provision, which deals with whether adding the party will relate back to the filing of the original complaint, is not before the Court at this time.

Johnson, which stipulated to the correct entity, Braun has done its best to obscure the actual manufacturer.

BBA points out that it stated in its August 4, 2003 memorandum that BBM was excluded from the AMCC, and claims that if the Plaintiffs had wished to name both BBA and BBM they should have moved to amend then.  BBA claims that BBM is prejudiced in that it will have to "catch up" with the discovery work that has been ongoing.  BBA also points out that the Court rejected Plaintiffs' attempts to add Boehringer Ingelheim Pharmaceuticals, Inc. when it appeared that none of the Boehringer Ingelheim companies named in the AMCC manufactured the one drug at issue.

The Court finds that Braun's continued attempts at obfuscation provide a valid excuse for Plaintiffs' delay.  While Plaintiffs should have moved to amend to add BBM in August of 2003 if they intended to sue both parties, the Court provided jurisdictional discovery to allow Plaintiffs to name the correct entity, so the delay after the Court's February 24, 2004 Order was not undue.  Plaintiffs were justified in waiting to ensure that they sued the correct entity.  Additionally, BBA's August 2003 attack on personal jurisdiction was extremely brief, so it cannot claim prejudice from having spent resources vetting the issue.  The Court has split the case into two tracks, with the Braun entities being in the slower, Track II phase, so the Court does not consider the discovery process sufficiently advanced such that adding BBM would delay the trial.  It also appears that

BBM has been participating in discovery through BBA, further lowering the danger of prejudice.  This situation is different from that of the Boehringer entities.  Plaintiffs also did not request jurisdictional discovery.

Finally, BBA's conduct in appointing BBM's general counsel as its 30(b)(6) witness, seemingly for the purpose of using attorney-client privilege to avoid providing relevant information, hurts its claim under a standard that requires "just" relief.  See Fed. R. Civ. P. 30(b)(6) ("The persons so designated shall testify as to matters known or reasonably available to the organization.") (emphasis added); Sony Elecs., Inc. v. Soundview Techs., Inc., 217 F.R.D. 104, 109-110 (D. Conn. 2002) ("When general counsel is designated by a party as one of its Rule 30(b)(6) witnesses the witness is required to testify about the business operations of the corporation to the extent he is knowledgeable about the operations, irrespective of the fact that he also serves as legal advisor for the corporation.") (citations omitted).

Plaintiffs shall file their amendment within twenty days of this Order.

### B.  Motion to Dismiss BBA

While Plaintiffs concede that BBA lacks sufficient contacts with Massachusetts for the Court to assert jurisdiction over it directly, they contend that the Court should pierce the corporate

veil between BBA and BBM to assert jurisdiction over BBA.

> The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary.  There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.

Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980) (applying Puerto Rico law) (citations omitted).

Although the parties do not address the issue, the initial question is choice of law.  The AMCC alleges federal question jurisdiction under RICO, 18 U.S.C. §§ 1961-68.  "In federal question cases, such as this one, we look to federal choice of law principles" to "determine whether state law or federal common law governs the veil-piercing inquiry."  Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 25-26 (1st Cir. 2000).  "If the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision."  Id. at 26; See George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 149 n.9 (D. Mass. 1998) (noting in dicta that "[a] stricter federal standard applies to [veil piercing under] civil RICO."); De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69 (2d Cir. 1996) (applying federal common law of veil piercing to RICO case).

While the federal common law of veil-piercing to some extent varies by the policies of the statute to be applied, common factor predominate. See United Elec., Radio & Mach. Workers of

Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091-92 (1st Cir. 1992); Springfield Terminal, 210 F.3d at 27, common factors predominate.  Generally, "litigants who insist that the corporate veil be brushed aside must first prove three things: lack of corporate independence, fraudulent intent, and manifest injustice."  163 Pleasant St., 960 F.2d at 1093 (setting forth the test in the ERISA context).  Another factor is "whether the related corporation is undercapitalized."  Springfield Terminal, 210 F.3d at 29 (setting forth test in Railway Labor Act context). However, "it is important to bear in mind that corporations which simply try to limit their overall liability by establishing, or acquiring, separately incorporated subsidiaries do not thereby transgress legal or ethical norms."  163 Pleasant St., 960 F.2d at 1093.  Neither a parent-subsidiary relationship "[n]or . . . a duplication of some or all of the directors or executive officers [is] fatal."  United States v. Bestfoods, 524 U.S. 51, 61-62 (1998) (addressing factors generally considered in veil-piercing cases and explicitly refusing to reach question of whether uniform federal law applies in CERCLA context).

    Here, Plaintiffs have failed to show either fraud or the type of control necessary to pierce the veil under federal law. Plaintiffs point primarily to four facts: (1) BBM is wholly-owned by BBA; (2) the two entities share some officers and directors; (3) BBA has filed papers on behalf of BBM in this litigation; and (4) BBA has purposefully impaired Plaintiffs' efforts to discover

which entity manufactures the drugs at issue, wrongly utilizing the corporate distinction between BBA and BBM to frustrate discovery ordered by the Court.  While the fourth fact gives the Court some pause, these facts alone do not sustain Plaintiffs' burden of proving any one of the factors set forth by the First Circuit in 163 Pleasant Street, much less all three.[2]  First, there is no evidence that corporate formalities are being ignored, or that BBA is acting in a way that strongly departs from what is permitted of sole shareholders.  Second, BBA's actions in this litigation, while questionable, do not reach the level of "fraudulent."  Finally, Plaintiffs to some degree created their own problem through their tardiness, so the Court cannot find that respecting the corporate form would work a "manifest injustice."

Even were the Court to apply the Massachusetts alter-ego test with respect to the state causes of action, the result would not change.  The seminal case in Massachusetts, My Bread Baking Co. v. Cumberland Farms, Inc. set forth the two-prong Massachusetts test:

> Although common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation or its employees, additional facts may be such as to

---

[2]  There is some variation in the caselaw as to the standard of the burden of proof.  Plaintiffs have not shown any of these factors even to a preponderance, so the Court need not undertake this analysis.

> permit the conclusion that an agency or similar
> relationship exists between the entities. Particularly
> is this true (a) when there is active and direct
> participation by the representatives of one
> corporation, apparently exercising some form of
> pervasive control, in the activities of another and
> there is some fraudulent or injurious consequence of
> the intercorporate relationship, or (b) when there is a
> confused interminingling [sic] of activity of two or
> more corporations engaged in a common enterprise with
> substantial disregard of the separate nature of the
> corporate entities, or serious ambiguity about the
> manner and capacity in which the various corporations
> and their respective representatives are acting.

233 N.E.2d at 751-52 (Mass. 1968). Later cases set forth factors to consider in applying this test. See George Hyman, 16 F. Supp. 2d at 149-60 (describing and applying twelve-part test).

The facts submitted by Plaintiffs are not enough to meet either of these tests. Plaintiffs have not demonstrated that "there is some fraudulent or injurious consequence of the intercorporate relationship," for the reasons given earlier. While BBA's conduct in this litigation demonstrates a tendency to mix the roles of the companies in an attempt to generate confusion, the extent of BBA's actions is not sufficient to disregard the corporate formalities. With respect to the second factor, there has been some ambiguity about the manner and capacity in which the various representatives are acting. However, "[u]nder Massachusetts common law, disregarding the corporate form is permissible only in rare situations," 163 Pleasant St., 960 F.2d at 1091, and these facts do not demonstrate sufficiently extensive ambiguity to justify

11

disregarding the corporate form.

### ORDER

Plaintiffs' motion to add B. Braun Medical, Inc. as a Defendant to the AMCC is **ALLOWED**.  B. Braun of America, Inc.'s motion to dismiss is **ALLOWED**.

                                            S/PATTI B. SARIS
                                          United States District Judge