matter.  While MDL Plaintiff Counsel seek to lay the problem at the defendants feet,[16] they cannot

avoid their burden of demonstrating adequacy of representation of the entirety of the proposed

plaintiff classes.  Since such burden requires adequate representation with respect to all subclasses

and all intra-class conflicts, including material variations in both the common law and statutory

consumer fraud laws of the various states with differing rights of recovery by consumers, *see*

*Relafen*, *supra*, adequate representatives must be proffered for each of these disparate interests.  At

a minimum, adequate representatives must be presented for the consumers in each of the States

where the Attorney General has sued in order for this Court to supplant the *parens patriae* or other

authority of the State Attorneys General to proceed on behalf of their citizens.

> 2.      There Are No Adequate Representatives of the States' Claims for Declaratory
>         and Injunctive Relief

In light of the MDL Plaintiffs' decision to drop equitable remedies in this Court, it is obvious

that there are no adequate representatives of the proposed classes to ensure that these States' claims

for declaratory and injunctive relief against the defendants will be adequately represented and

vigorously prosecuted.  In light of the clear design of the State Attorneys General to pursue such

equitable remedies, including injunctions under state consumer fraud laws and other laws against

the unlawful pricing, marketing and sales practices, this Court must consider the problem created

by the proposal of MDL Plaintiff Counsel to permit the coextensive representation of members of

the classes by the MDL Plaintiff Counsel in a case where they seek less than all the relief available

to members of the proposed classes.  The decision to drop equitable remedies relief should be fatal

---

[16]      MDL Plaintiff Counsel argue that, since it is by application of the Massachusetts choice of
law rules that the consumer protection laws of the fifty (50) states must be applied to the claims of
the consumer classes, therefore somehow their lack of adequate representation of the consumers in
most States should somehow be excused.

to any claim by MDL Plaintiff Counsel that they can adequately represent all the interests of the members of the proposed classes.

**D.    A CLASS ACTION IS NOT THE "SUPERIOR METHOD" FOR THE "FAIR AND EFFICIENT ADJUDICATION" OF THE CLAIMS OF THE PROPOSED CLASSES IN VIEW OF THE PENDING ACTIONS BY PENNSYLVANIA AND THE JOINDER STATES.**

"The final hurdle Plaintiff(s) must clear under Rule 23(b)(3) is the requirement that [they] demonstrate that a class action is a fair and efficient method for adjudicating the controversy and would be superior to other methods." *Mack v. Suffolk County*, 191 F.R.D. 16, 24 - 25 (D. Mass. 2000). A class action is a superior method <u>only if</u> no reasonable alternative exists. *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Here, the standard cannot be met because Pennsylvania and certain Joinder States already have sued the Track 1 Defendants in state court. Consequently, MDL Plaintiff Counsels' *ipse dixit* assertions that class certification is necessary to make class members' claims financially viable is completely belied by the fact that the interests of the proposed classes are being advanced by the Attorneys General of Pennsylvania and the Joinder States. Under the circumstances of this litigation, where the Attorneys General have initiated and are independently pursuing *parens patriae* actions that seek redress for harm caused to their citizens, an independent, overlapping MDL action that seeks certification of a massive, nationwide class of consumers and business entities involving the same conduct and harm being adjudicated by the Attorneys General is <u>not</u> the "superior method" for the "fair and efficient adjudication" of the controversy under Fed. R. Civ. P. 23(b)(3). Such "co-extensive" representation of private parties is unnecessary, imprudent and unwarranted under the law. *See, e.g.*, *Commonwealth of Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 186 (E.D. Pa.1988) (..."where the Attorney General has exercised his authority under [the law] and filed a *parens patriae* action,

17

there is simply no reason or authority for allowing *coextensive* representative by private parties.") (emphasis supplied).

This conclusion was acknowledged by this Court to be a proper result in the *McLaughlin* decision, *infra.*, and has been reached by numerous federal courts who have been faced with the question of class certification in the face of existing representation by Attorneys General. *See McLaughlin*, 224 F.R.D. at 312 (noting that "[s]ome federal courts have denied class certification where the state Attorney General had, in fact, brought a claim on behalf of the consumers in the state.").

The cases cited by the *McLaughlin* Court warrant closer scrutiny by this Court because this case involves the very situation that was lacking in *McLaughlin*: civil class plaintiffs seeking class certification in a case where the state Attorneys General have sued. *Id.* at 312 ("these cases, however, do not bear on whether a court should deny certification simply because the plaintiffs *could* petition the Attorney General to bring suit on behalf of all [plaintiffs] in the Commonwealth, but where the Attorney General has not actually brought suit.") (emphasis in original).[17] Since the more recent case, *Sage v. Appalachian Oil Co.,* 1994 W.L. 637 443 (E.D. Tenn. Sept. 7, 1994), appears to have relied exclusively upon the earlier case, *Commonwealth of Pennsylvania v. Budget Fuel Co., Inc.,* 122 F.R.D. 184 (E.D. Pa. 1988), the *Budget Fuel* case should be scrutinized. However, both cases involve applications by class action plaintiffs for certification of classes pursuant to Federal Rule 23 for federal antitrust claims brought on behalf of consumers. In both cases, the Attorneys General of the respective states in which the federal court resided had instituted prior *parens patriae*

---

[17]     It is noteworthy that in the AWP litigation the Attorney General of Massachusetts has "actually brought suit." *See* Appendix "B."

actions against some or all of the defendants for similar unlawful conduct. In granting the Attorney

General's Motion to Strike the class action allegations of the competing consumer complaint, the

*Budget Fuel* Court held:

> "A *parens patriae* action is superior to a class action as a means for
> adjudication of collective claims. The superiority of the *parens
> patriae* action over the class action is evidenced by the lack of any
> provision or requirement for court approval or certification of a
> *parens patriae* action....In addition, Rule 23(b)(3) of the Federal
> Rules of Civil Procedure permits class certification only where 'a
> class action is superior to all other available methods for the fair and
> efficient adjudication of the controversy.' In the case *sub judice*, the
> class action brought by [the consumer plaintiff] is not a superior
> alternative because the Plaintiffs in the [consumer plaintiff's] action
> are already ably represented by the Attorney General in the
> Commonwealth's *parens patriae* action. Although the Court is
> cognizant of the fact that the *parens patriae* provisions of § 4C of the
> Clayton Act were not intended to negate the Rule 23 class action,
> where the Attorney General has exercised his authority under § 4C
> and filed a *parens patriae* action, there is simply no reason or
> authority for allowing co-extensive representation by private parties.
>
> \* \* \*
>
> All the court is stating is that in the situation where a State Attorney
> General and a private class representative seek to represent the same
> class members, the *parens patriae* action is superior to that of the
> private class action.

*Budget Fuel*, 122 F.R.D. at 185-86.

As noted previously, this holding was directly followed and extended by the Tennessee

Eastern District Court in the *Sage* case, but in a slightly different context. In *Sage*, the District Court

had denied previously the civil plaintiffs' motion for class certification in light of the pending

Attorney Generals' *paren patriae* action. The Tennessee Attorney General then amended the State's

complaint to add a request for class certification under Rule 23 and to have itself designated the

"adequate representative" of the Class. The *Sage* Court wrote that, "[w]hile it is not clear that the

State has a superior right to bring a Rule 23 class action, the State, through the Attorney General, is clearly in a superior position to bring a *parens patriae* action against defendants on behalf of all natural persons in this state." *Sage*, 1994 WL 637443 at *1. The *Sage* Court went on to hold that, with respect to the Tennessee Attorney General's subsequent application to be appointed class representative of the same Rule 23 class that the consumer plaintiffs had sought previously, "[f]or many of the same reasons and for reasons of judicial economy, it appears that the State should be the preferred representative of a class of all persons, including non-natural persons such as business entities, that were effected by the alleged price fixing conspiracy." *Id.* at *2. Because the defendants had not had an opportunity to object to the State's request, the matter was continued to another day.

In *In re Montgomery County Real Estate Antitrust Litigation*, 1988 WL 125789 (D. Md. July 17, 1988), this primary right of Attorneys General to represent their citizens was extended to the settlement context. In the case, private plaintiffs who had settled the claims of a prior certified class of purchasers of real estate services of the defendants over a period of time from September 5, 1974 and to September 30, 1976, then sought to settle the claims of class members who purchased services from after September 30, 1976 to April 1, 1977. However, the claims of these people had been part of a pending *parens patriae* action being prosecuted by the Attorney General of Maryland. *Id.* at *1. In seeking essentially to roll in the Attorney General's claims to effectuate a complete settlement, the class plaintiffs simply agreed with defendants to settle all claims involving the defendants' conduct over the entire period of the alleged conspiracy, including all conduct that fell within the period implicated in the Attorney General's action, but without consultation with or the assent of the Attorney General. *Id.*

20

The precise issue before the court was "whether a full settlement of this litigation can take place in the absence of assent by the Attorney General." *Id.* The court held that such a settlement could not take place, and it refused to extend the class certification beyond the prior certified period, thereby preserving the Attorney General's sole representation of natural persons in its *parens patriae* action. *Id.* at *3. The court explained that to permit otherwise would "run afoul" of Rule 23(b)(3)'s superiority requirement. *Id.* at *2. The court ruled that the class action device was not a superior method of adjudication because of the Attorney General's existing representation of the claims. *Id.* In so ruling, the court stated:

> there is simply no reason or authority for allowing coextensive representation by private parties. The *parens patriae* action is plainly superior to the class action as a mode for adjudication of collective claims. A clear indication of this is the lack of any provision or requirement for court approval or certification of a *parens patriae* action.

*Id.* (citing 15 U.S.C. § 15(c)(b)(1)).

While the court in *In re Montgomery* dealt with this issue solely in the context of the Sherman Act, and expressly avoided the question of whether such "preemption" would be permissible outside of that context, *see id.* at n.5, the rationale supporting the court's decision applies equally here. Indeed, the court relied on the "analogous situation" presented in a non-antitrust case, *United States v. City of Chicago*, 411 F.Supp. 218, 243 (N.D. Ill. 1976), *aff'd in part, rev'd in part*, 549 F.2d 415 (7th Cir. 1977), wherein that court denied class certification for private plaintiffs in a civil rights case because the federal government already represented the proposed class members, thereby precluding satisfaction of Rule 23(b)(3)'s superiority requirement. *In re Montgomery* at *2. *See also Barcelo v. Brown*, 78 F.R.D. 531, 534 (1978) (relying on *City of Chicago* in ruling that class

21

action involving private plaintiffs would not be superior method for adjudication under Rule 23(b)(3) where "Commonwealth [of Puerto Rico] Plaintiffs" provided "viable alternative to coping with the difficulties inherent in the class action device.").

As an additional basis for its ruling, the court in *In re Montgomery* found that, even if it were proper as a matter of law to extend the class certification, it would have been improper to do so as a matter of fact. The court stated that the "overlapping representation... would create very serious problems" with respect to class notice and confusion of class members about their rights and options. *In re Montgomery* at *2.

This rationale of the court in *In re Montgomery* applies fully in the instant matter. The proposed class action on behalf of private plaintiffs is not the superior method of adjudication under Rule 23(b)(3) in light of the prior pending Attorney General actions. Moreover, given the pending Attorney General actions, certification of an overlapping class action is likely to cause significant confusion, whether or not the private plaintiff action, if certified, is settled or tried to verdict. Accordingly, this Court should refrain from granting nationwide class certification, and should defer to the Attorney General actions as the "superior" methods of adjudicating the claims of those who allege harm from the defendants' conduct. At a minimum, a carve out of the States is warranted.

While the States and Defendants surprisingly agree that the class action is not the "superior" litigation device, Defendants tip their hands as to their bias in wanting no case at all by arguing that there is a lack of superiority, but with no reasonable alternative. They fail to offer a reasonable alternative because the Defendants know full well that the millions of cases they say should be filed instead likely will never materialize because of the cost prohibitive nature of consumer claims. Instead, Defendants know that defeating nationwide class certification means the effective end of

22

the litigation against them.  Consequently, this Court should adopt the reasonable middle ground approach for the litigation offered by the Attorneys General, by deferring to the state-court cases either completely or in part (by carving out Pennsylvania and the other litigating States from the proposed Classes).

## III.   CONCLUSION

For the foregoing reasons, the Commonwealth of Pennsylvania, by and through its Office of the Attorney General, along with all of the States Attorneys General who have joined in this Memorandum, respectfully requests this Honorable Court to deny plaintiffs' Motion for Class Certification.

Respectfully submitted,

Dated: February 8, 2005

Donald E. Haviland, Jr., Esquire
**KLINE & SPECTER**
A PROFESSIONAL CORPORATION
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712
215-772-1000 telephone
215-735-0957 facsimile

Thomas Corbett, Attorney General
James Donahue, Chief Deputy Atty. Gen.
Christopher Abruzzo, Chief Deputy Atty. Gen.
**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF ATTORNEY GENERAL**
Commonwealth of Pennsylvania
16th Floor, Strawberry Square
Harrisburg, PA  17120
717-787-3391 telephone
717-783-1107 facsimile

**FOR THE COMMONWEALTH OF PENNSYLVANIA**

23

G:\DEH AWP MASTER - (200700)\MDL\Pleadings\States Memo in Opposition to Class Certification.wpd

## TABLE OF CONTENTS

I.      BACKGROUND OF ATTORNEY GENERAL INVESTIGATIONS
        AND PROSECUTIONS OF THE DRUG INDUSTRY. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Primary Rights of the State Attorneys General to Proceed
                *Parens Patriae* or Otherwise On Behalf of Their Citizens  . . . . . . . . . . . 6

                1.      The General Rights of the State Attorneys
                        General to Proceed *Parens Patriae*. . . . . . . . . . . . . . . . . . 6

                2.      The Specific Right of Pennsylvania to Proceed
                        *Parens Patriae* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.      The Legal Standards for Class Certification  . . . . . . . . . . . . . . . . . . . . . 10

        C.      The Lack of "Adequacy of Representation" for the
                Proffered Classes Should Lead This Court to Defer
                to the State Attorneys General.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1.      There are No Adequate Representative
                        Plaintiffs for the Part B Class.  . . . . . . . . . . . . . . . . . . . . . 14

                2.      There Are No Adequate Representatives of the
                        States' Claims for Declaratory and Injunctive Relief  . . . 16

        D.      A Class Action Is Not the "Superior Method" for the
                "Fair and Efficient Adjudication" of the Claims of the
                Proposed Classes in View of the Pending Actions By
                Pennsylvania and The Joinder States.  . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# EXHIBIT "A"



# Attorney General Case Map

# EXHIBIT "B"

SUMMARY OF STATE LITIGATIONS

| STATE | DATE FILED | AZ | BMS | GSK | J&J | Schering | Other Defendants | CASE NO./ COURT | CLAIMS | ATTORNEYS |
|-------|-----------|----|----|----|----|----|------------------|-----------------|--------|-----------|
| Alabama | 01/26/05 | X | X | X | X | | Abbott Laboratories; Agouron Parmaceuticals, Inc. Alcon Laboratories, Inc.; Allergan, Inc.; Alpharma, Inc.; Alza Corporation; Amgen, Inc.; Andrx Corporation; Andrx Pharmaceuticals, Inc.; Aventis Pharmaceuticals, Inc.; Aventis | | | |
| Arkansas | 1/20/04 | | | | | X | Dey, Inc. | CV04-634; Pulaski County Circuit Court, 5th Division | Only specific drug targeted at this point is Warrick's Albuterol 90 Mcg Aerosol Inhaler which had the highest medicaid utilization for all Warrick drugs in Arkansas | OFFICE OF THE ATTORNEY GENERAL: Teresa Marks, Jeannette Hamilton, Bradford Phelps. |
| California | 1/7/03 (originally filed under seal 7/28/98)* | | X | X | X | X | Abbott Laboratories; Wyeth, Inc.; and 1-200 John Does adv State of California on behalf of Relator, Ven-a-Care of the Florida Keys, Inc.  Abbott Laboratories; Alpha Therapeutic Corporation; Aventis Behring, LLC; Aventis Pharmaceuticals, Inc.; Baxter Healthcare Corporation; B. Braun McGaw; Bedford Laboratories; Dey; LP; Dey, Inc.; Lipha, SA; Merck; Elkins Sinn/Lederele; Geneva Pharmaceuticals, Inc.; Gensia Sicor Pharmaceuticals, Inc.; Immunex Corporation; Mylan Laboratories, Inc.; Mylan Pharmaceuticals, Inc.; Novartis Pharmaceuticals Corp.; Pharmacia, Inc.; Pharmacia & Upjohn, Inc.; Roxane Laboratories, Inc.; adv Peralta, by and through Ibarra | BC287198A/ Superior Court, L.A. County*  BC 259587/ Superior Court, L.A. County* | Filed under False Claims Act | CALIFORNIA ATTORNEY GENERAL: Eliseo Sisneros, John Fisher.  CALIFORNIA ATTORNEY GENERAL: Siobhan Franklin, Dennis Fenwick, Eliseo Sisneros, John Fisher, Timothy Foote, Suzanne Giorgi. |

CONFIDENTIAL: THIS MEMORANDUM CONTAINS INFORMATION PROTECTED BY THE WORK PRODUCT AND COMMON INTEREST PRIVILEGES

1/20/05

SUMMARY OF STATE LITIGATIONS

| STATE | DATE FILED | AZ | BMS | GSK | J&J | Schering | Other Defendants | CASE NO./ COURT | CLAIMS | ATTORNEYS |
|---|---|---|---|---|---|---|---|---|---|---|
| Connecticut* | 3/13/03 | | | X | X | X | Dey, Inc.; Roxane; Pharmacia Corp.; Pharmacia Corp.; Aventis Pharmaceuticals, Inc. | CV-03-0824416-S/ Hartford Superior Court CV-03-0824413-S/ Hartford Superior Court CV-03-0824414-S/ Hartford Superior Court CV-03-0824415-S/ Hartford Superior Court | | |
| Florida* | 7/9/03 | | | | | X | Boehringer Ingelheim; Ben Venue Laboratories; Bedford Laboratories; Roxane; adv. State of Florida on behalf of Relator, Ven-a-Care of the Florida Keys, Inc.; Dey, Inc.; adv. State of Florida on behalf of Relator, Ven-a-Care of the Florida Keys, Inc. | 98-3032-A/ Leon Circuit Court | | |

Page 2

CONFIDENTIAL: THIS MEMORANDUM CONTAINS INFORMATION PROTECTED BY THE WORK PRODUCT AND COMMON INTEREST PRIVILEGES    1/20/05

SUMMARY OF STATE LITIGATIONS

| STATE | DATE FILED | AZ | BMS | GSK | J&J | Schering | Other Defendants | CASE NO./ COURT | CLAIMS | ATTORNEYS |
|---|---|---|---|---|---|---|---|---|---|---|
| Kentucky | 9/15/2003<br>11/4/2004 | X | X | X | X | X | Abbott Laboratories, Inc.; Dey, Inc.; Alpharma, Inc.; Amgen, Inc.; Aventis Pharmaceuticals, Inc.; Aventis Behring, LLC.; B.Braun of America, Inc.; B.Braun McGaw; Barr Pharmaceuticals, Inc.; Baxter International, Inc.; Bayer Corporation; Ben Venue Laboratories, Inc.; Boehringer Ingelheim Corporation; Boehringer Ingelheim Pharmaceuticals, Inc.; Forest Laboratories, Inc.; Immunex Corporation; Ivax Corporation; Ivax Pharmaceuticals, Inc.; McNeil-PPC, Inc.; Merck & Company, Inc.; Mylan Laboratories, Inc.; Mylan Pharmaceuticals, Inc.; Novartis Pharmaceuticals Corporation; Novopharm USA, Inc.; Ortho-McNeil Pharmaceutical, Inc.; PAR Pharmaceutical Companies, Inc.; Pfizer, Inc.; Pharmacia; Purepac Pharmaceutical Co.; Roxane Laboratories, Inc.; Sandoz, Inc.; Sicor Pharmaceuticals, Inc.; TAP Pharmaceutical Products, Inc.; Teva Pharmaceutical Industries, Ltd.; Watson Pharma, Inc.; Watson Pharmaceuticals, Inc. | 03-CI-1134/ Franklin Circuit Court, Div II<br>03-CI-1135/ Franklin Circuit Court, Div II<br>04-CI-1487/ Franklin Circuit Court, Div I | Brought under parens patriae authority alleging violation of Consumer Protection Act, False Advertising statute, Medicaid fraud statute and common law fraud by defendants' inflating of AWP to increase "spread." Brought under parens patriae authority alleging violation of Consumer Protection Act, False Advertising statute, Medicaid fraud statute and common law fraud by defendants' inflating of AWP to increase "spread." | OFFICE OF THE ATTORNEY GENERAL: Janet Graham, Robert Jones, Todd Leatherman, Pamela Murphy, David Johnstone, Paula Holbrook, Connie Malone. Outside Counsel: Charles Barnhill, William Dixon, Elizabeth Eberle, MINER BARNHILL & GALLAND, Madison WI; George Galland, Judson Miner, Robert Libman, Marni Willenson, MINER BARNHILL & GALLAND, Chicago IL; Jeffrey Archibald, ARCHIBALD LAW OFFICES, Madison WI. |

CONFIDENTIAL:  THIS MEMORANDUM CONTAINS INFORMATION PROTECTED BY THE WORK PRODUCT AND COMMON INTEREST PRIVILEGES          1/20/05

SUMMARY OF STATE LITIGATIONS

| STATE | DATE FILED | AZ | BMS | GSK | J&J | Schering | Other Defendants | CASE NO./ COURT | CLAIMS | ATTORNEYS |
|---|---|---|---|---|---|---|---|---|---|---|
| Massachusett | 8/24/03 | | | | | X | Barr Laboratories, Inc.; Dey, Inc.; Duramed Pharmaceuticals, Inc.; Ethex Corporation; Ivax Corporation; Mylan Laboratories, Inc.; Par Pharmaceutical, Inc.; Purepac Pharmaceutical Co.; Roxane Laboratories, Inc.; Schein Pharmaceutical, Inc.; Teva Pharmaceuticals USA, Inc.; Watson Pharmaceuticals, Inc. | C.A. No. 03-11865 PBS (D.Mass.) | | OFFICE OF THE ATTORNEY GENERAL, Medicaid Fraud Control Unit: Nicholas Messuri, Robert Patten, Richard Heidlage. |
| Minnesota* | 9/26/03 | | | | X | X | | MC-02-009660/ Hennepin County District Court MC-03-14691/ Hennepin County District Court | | |
| Montana* | | | | | | | | USDC D.Mass. | | |
| Nevada* | 2/15/02 | | | | | | Abbott Laboratories, Inc., et al. | CV-00260/ Washoe County District Court | | |
| New York* | | | X | X | | | Aventis Pharmaceuticals, Inc. adv. National Asbestos Workers Med. Fund | 905-03/ Supreme Court of New York 1150-03/ Supreme Court of New York 101588/02/ Supreme Court of New York | | |

CONFIDENTIAL:  THIS MEMORANDUM CONTAINS INFORMATION PROTECTED BY THE WORK PRODUCT AND COMMON INTEREST PRIVILEGES                    1/20/05

SUMMARY OF STATE LITIGATIONS

| STATE | DATE FILED | AZ | BMS | GSK | J&J | Schering | Other Defendants | CASE NO./ COURT | CLAIMS | ATTORNEYS |
|-------|-----------|----|----|----|----|----|-----------------|-----------------|--------|-----------|
| Ohio | 3/9/04 11/17/04 | | | | | X | Abbott Laboratories, Inc.; Dey, Inc.; Pharmacia Corp.; Ben Venue Laboratories, Inc.; Boehringer Ingelheim Corp.; Boehringer Ingelheim Pharmaceuticals, Inc.; Roxane Laboratories, Inc. | Case No. A0402047 Case No. A0409296 | Filed under Consumer Sales Practices Act, Deceptive Trade Practices Act, Medicaid Fraud Statute, Anti-Kickback Statute* | OHIO ATTORNEY GENERAL, Health Care Fraud Section: Drew Duffy, John Guthrie. Outside Counsel: Stanley Chesley, Fay Stilz, Robert Heuck, WAITE, SCHNEIDER, BAYLESS & CHESLEY CO, Cincinnati OH; Michael Barrett, Stephanie Bowman, BARRETT & WEBER, Cincinnati OH; James Swaim, Richard Hempfling, FLANAGAN, LIEBERMAN, HOFFMAN & SWAIM, Dayton OH; David Ewing, GARDNER, EWING & SOUZA, Louisville KY; W.B. Markovitz, MARKOVITS & GREIWE Co, Cincinnati OH. |
| Pennsylvania* | 3/10/04 | X | X | X | X | X | Amgen; Aventis; Baxter; Bayer; Boehringer Ingelheim Corp.; Dey, Inc.; TAP Pharmaceuticals | | | |

CONFIDENTIAL:  THIS MEMORANDUM CONTAINS INFORMATION PROTECTED BY THE WORK PRODUCT AND COMMON INTEREST PRIVILEGES    1/20/05

SUMMARY OF STATE LITIGATIONS

| STATE | DATE FILED | AZ | BMS | GSK | J&J | Schering | Other Defendants | CASE NO./ COURT | CLAIMS | ATTORNEYS |
|---|---|---|---|---|---|---|---|---|---|---|
| Texas | 09/07/00 | X | X | X | X |  | Abbott Laboratories, Inc.; Baxter Healthcare Corporation; B. Braun Medical, Inc. (formerly McGaw, Inc.); Ben Venue Laboratories, Inc.; Boehringer Ingelheim Pharmaceuticals, Inc.; Roxane Laboratories, Inc.; Hospira, Inc. adv State of Texas on behalf of Relator, Ven-a-Care of the Florida Keys, Inc. | GV4-01286, District Court, Travis County, Texas GV3-03079, District Court, Travis County, Texas | Qui tam case brought on behalf of the State by Ven-A-Care of the Florida Keys, Inc., pursuant to the Texas Medicaid Fraud Prevention Act, Texas Human Resources Code, Chapter 36 | Texas Attorney General: Raymond Winter, Patrick O'Connell, Michael Winget-Hernandez. For the Relator: Jim Breen, John Clark, Jarrett Anderson. |
| West Virginia* |  |  |  |  |  | X |  | 01 c 3011/ Kanawha County Circuit Court |  |  |
| Wisconsin | 06/03/04 | X | X | X | X | X | Abbott Laboratories; Amgen Inc.; Aventis Behring, LLC; Aventis Pharmaceuticals, Inc.; Baxter International, Inc.; Bayer Corporation; Ben Venue Laboratories, Inc.; Boehringer Ingelheim Corporation; Boehringer Ingelheim Pharmaceuticals, Inc.; Dey, Inc.; Immunex Corporation; Ivax Corporation; Ivax Pharmaceuticals, Inc.; Janssen Pharmaceutical Products, LP; McNeil-PPC, Inc.; Merck & Company, Inc.; Mylan Laboratories, Inc.; Mylan Pharmaceuticals, Inc.; Novartis Pharmaceuticals Corporation; Ortho-McNeil Pharmaceutical, Inc.; Pharmacia; Pfizer, Inc.; Roxane Laboratories, Inc.; Sandoz, Inc.; Sicor Pharmaceuticals, Inc.; Sicor Pharmaceuticals, Inc.; TAP Pharmaceutical Products, Inc.; Teva Pharmaceutical Industries, Ltd.; Watson Pharma, Inc.; Watson Pharmaceuticals, Inc. | 04-CV-1709 (Cir. Ct. Wis.) |  | Wiscon Dept of Justice: Michael Bauer, Cynthia Hirsch, Frank Remington.  Outside Counsel: Charles Barnhill, William Dixon, Elizabeth Eberle, MINER BARNHILL & GALLAND, Madison WI; Jeff Archibald, ARCHIBALD CONSUMER LAW OFFICES, Madison WI. |

*Information obtained from NAAG or MDL case history websites.

# EXHIBIT "C"

Case 1:01-cv-12257-PBS   Document 1340-4   Filed 02/09/05   Page 21 of 24



*Politics & policy news, state by state*

© Copyright 2004 Stateline.org

**MONDAY, APRIL 2, 2001**

# SPECIAL REPORT: States Mull Suit Against Drug Companies

### *By Mary Guiden, Staff Writer, Stateline.org*

In an action modeled on their 1998 class action lawsuit against the tobacco industry, at least six states are poised to go to court to try to force pharmaceutical companies to lower prescription prices, law enforcement and health care officials tell Stateline.org.

"The goal is nothing less than changing the way the industry does business," says Mark Schlein, director of Florida's Medicaid Fraud Control Unit in the Attorney General's office.

Attorneys general in Florida, Georgia, Maine, Massachusetts, Nevada and Texas are among those considering legal action, officials from some of the offices said. Nevada's Tim Terry, director of the state's Medicaid Fraud Control Unit, says while he's "not at liberty to comment" on specifics, he expects "other developments [on this matter] in the next couple of months."

A state health official familiar with discussions about state action said there's a strong consensus across the country. "I really get the sense there's a lot of energy, mostly from attorney generals' offices. As soon as there's any kind of endorsement from the Health Care Financing Administration (HCFA), all 50 states are going to jump on it," said the official, who spoke on condition of anonymity.

HCFA, the federal agency that oversees Medicaid and Medicare, requires drug manufacturers to report their lowest drug prices, or "best price." "We've asked for their assistance to determine whether or not pharmaceutical manufacturers violated agreements with HCFA to provide states with the best price on drugs," says Martin Smith, spokesperson for Georgia's Department of Community Health.

A HCFA spokesperson declined comment on any potential problems.

State attorneys general aren't waiting for HCFA's permission to seek information from the drug companies. Bristol-Meyers Squibb says it and other manufacturers have responded to subpoenas from Massachusetts and several other states.

"We have cooperated fully with the subpoenas, and we're not aware we're the subject of any investigation. Bristol-Meyers is not the only company being investigated in an attorney general's office. We're confident that our practices are fully compliant with state and federal laws," says spokesperson Patrick Donahue.

The potential for litigation grows out of a three year-old Justice Department investigation of the Bayer Corporation that in January resulted in Bayer settling with the states and the federal government for $14 million.

In a Jan. 23 news release announcing the settlement, the Justice Department said the government's investigation "revealed that the pharmaceutical company beginning in the early 1990s falsely inflated the reported drug prices referred to by the industry as the Average Wholesale Price."

The AWP is the average price that wholesalers give to retailers for a given medication. Medicare and Medicaid programs use the AWP in calculating reimbursements to pharmacists and doctors.

"By setting an extremely high AWP and, subsequently, selling the product to doctors at a dramatic discount, Bayer induced physicians to purchase its products rather than those of competitors by enabling doctors to profit from reimbursement paid to them by the government," the Justice Department said. As part of the agreement, Bayer said it would "provide the state and federal governments with the average selling prices of its drugs ... and potentially prices for its competitors' products," the Justice Department said.

Meantime, Texas Attorney General John Cornyn brought a lawsuit against three drug companies seeking $79 million for alleged Medicaid fraud.The firms are Dey, Inc., Roxane Laboratories, Inc. and Warrick Pharmaceuticals Corp.

In court documents filed by the state in Travis County District Court on Sept. 7, the suit says that the firms "knowingly and intentionally made false representations of prices and costs for certain of their inhalation drugs directly and indirectly to the Texas Medicaid program."

The state also says the "Medicaid program relied on the false and deceptive inflated prices and costs reported by the [pharmaceutical companies] and thus was defrauded into paying amounts that substantially exceeded a true and correct price for the drugs in question." Justice Department spokesperson Jill Stillman and Barbara Zelner, a spokesperson for the National Association of Medicaid Fraud Control Units, refused to comment on inquiries into other manufacturers, citing an "ongoing investigation." The Pharmaceutical Research and Manufacturers of America (PhRMA)-- which drug companies defer to--also refused comment, citing the "ongoing" nature of the case.

A catalyst for state legal action is Florida businessman Zachary Bentley, who is going from state to state urging state attorneys general to sue drug manufacturers. It was Bentley who triggered the Bayer case. He says he alerted federal authorities years ago about "the corrupting influence" of pharmaceutical manufacturers after his healthcare company was "put out of business" by a competitor. Under whistleblower and federal False Claims laws, Bentley gets a portion of any settlement that results from what he's revealed.

Through his company, which delivered intravenous drugs for diseases like AIDS to a patient's home, Bentley says he discovered discrepancies between the published Average Wholesale Price (AWP) of prescription drugs and what the drug companies actually charged retailers for the same drugs. "Medicaid and Medicare reimburse certain drugs at ten times the cost. Providers, as a result, make a huge windfall profit," Bentley says.

Because of Bentley's efforts, the Justice Department last May released to states a list of 479 drugs that the department said had inflated AWPs. A partial copy of the list obtained by Stateline.org shows that:

Case 1:01-cv-12257-PBS Document 1340-4 Filed 02/09/05 Page 23 of 24

- Adriamycin, an antibiotic used in cancer treatment and manufactured by Pharmacia, had an AWP of $241.36 as of April 2000. DOJ said the real wholesale price was $33.43.

- Amikacin, used to treat an infection that HIV+ people get and manufactured by Abbott, had an AWP of $54.56. DOJ said the actual best price was $6.75.

- Toposar, also manufactured by Pharmacia, is used to treat testicular and lung cancer. Its AWP as of April 2000 was $28.38; DOJ found that retailers were buying it for $1.70.

- Vancomycin, an antibiotic used to treat intestinal infections and manufactured by Abbott, had an AWP of $68.77 as of April 2000. DOJ adjusted it to $8.14.

Bentley says that the AWP "is only part of" the price inflation controversy. "There's a whole area of questionable conduct and questionable areas manufacturers have used," he says.

Congressman Pete Stark (D-CA) wrote letters to PhRMA President Alan Holmer last fall and to Pharmacia Upjohn, Bristol-Meyers Squibb and Abbott on Feb. 27, alleging among other things, "the exploitation of America's seniors and disabled who are forced to pay inflated drug costs."

In a five-page letter to Bristol-Meyers Squibb president Peter Dolan, Stark alleges there is "compelling evidence that Bristol-Meyers Squibb ('Bristol') for many years deliberately overstated the prices of some of its prescription drugs in order to cause the Medicare and Medicaid programs to pay inflated amounts to Bristol's customers."

Stark's letter also contains a chart that details an alleged spread between the AWP and actual price to Florida oncologists for the drug Blenoxane. In 1995, the AWP was $276.29 but oncologists were charged $224.22, for a spread of $52.07. In 1998, the AWP was listed at $304.60; the price charged to doctors was $140 for a spread of $164.60.

Florida's Schlein says abuse is widespread. "The whole area of prescription drug fraud is incredibly important and involves virtually every manufacturer. It involves nothing less than a conspiracy among manufacturers, middlemen and doctors who prescribe [the drugs]. The bottom line is everyone is doing this with a nod and a wink and [taxpayers] are paying for it," he says.

Other state officials have voiced similar concerns. Georgia Department of Community Health director Russ Toal said at a Medicaid forum in February that his state has reason to believe that pharmaceutical manufacturers are overcharging Medicaid programs. "We've sent some evidence of that to both the Health Care Financing Administration and the Department of Justice, and I hope that other states are doing the same," he said.

Former Maine Attorney General Andrew Ketterer says "the area [of AWP] is fertile for attorneys general to look into. Pharmaceutical companies spend a fair amount of money on research and development for wells that don't have oil and they have to recover from those losses in some way. [A lawsuit] is not out of the range of possibilities that would come on to the radar screen. It's an area that is of great interest to a lot of people."

© Copyright 2004 Stateline.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Memorandum of the Attorney General of the Commonwealth of Pennsylvania in Opposition to Class Certification was served on all counsel of record by electronic service pursuant to Case Management Order No. 2.

Dated: February 8, 2005                              Respectfully submitted,

Louis C. Ricciardi, Esquire
**KLINE & SPECTER**
A PROFESSIONAL CORPORATION

1525 Locust Street, The Nineteenth Floor
Philadelphia, PA  19102
215-772-1000 telephone