FILED
IN CLERKS OFFICE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

2005 FEB -8 P 12: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>01-CV-12257-PBS and 01-CV-339 | Judge Patti B. Saris |

# MEMORANDUM OF THE ATTORNEY GENERAL
# OF THE COMMONWEALTH OF PENNSYLVANIA
# IN OPPOSITION TO CLASS CERTIFICATION

Thomas Corbett, Attorney General
James Donahue, Chief Deputy Atty. Gen.
Christopher Abruzzo, Chief Deputy Atty. Gen.
OFFICE OF ATTORNEY GENERAL
COMMONWEALTH OF PENNSYLVANIA
Commonwealth of Pennsylvania
16th Floor, Strawberry Square
Harrisburg, PA 17120
717-787-3391 telephone
717-783-1107 facsimile

## MEMORANDUM OF THE ATTORNEY GENERAL
## OF THE COMMONWEALTH OF PENNSYLVANIA
## IN OPPOSITION TO CLASS CERTIFICATION[1]

As the Defendants have pointed out in their opposition papers, MDL Plaintiff Counsel seek

certification of two massive classes and one subclass of more than 200 million persons and 10,000

corporate entities relating to 136 prescription drugs manufactured by the five Track 1 Defendants.[2]

These sprawling classes include patients located throughout the country, including Pennsylvania and

the Joinder States.  However, because Pennsylvania and certain Joinder States have instituted

lawsuits against Track 1 Defendants for themselves and their citizens,[3] the patient-consumers in

these states are more than adequately represented by the State Attorneys General and they have the

benefit of a superior litigation device for the adjudication of their claims – *i.e.* prosecution by the

State's highest judicial officer who is charged with the duty to protect consumer interests in

---

[1]    This Memorandum is filed by the Attorney General of the Commonwealth of Pennsylvania who presently has claims in state court against all of the Track 1 Defendants [hereinafter "Pennsylvania"].  Although the Court in Pennsylvania recently dismissed Pennsylvania's claims without prejudice for lack of specificity, Pennsylvania intends to file its amended pleading shortly after the hearing on MDL Plaintiffs' Motion for Class Certification.  Pennsylvania is joined in this Memorandum in Opposition by the Attorneys General of certain other States who either (1) have pending lawsuits against drug companies (including Track 1 Defendants) relating to fraudulent marketing and sales practices revolving around the inflation and promotion of Average Wholesale Price ("AWP"), and/or (2) have pending investigations relating to the same practices, and thus have an interest in assuring that their rights, and the rights of the citizens of their states, are fairly represented in litigation (even though litigation has not yet ensued) [these States are collectively referred to herein as the "Joinder States"].  These Joinder States have filed separately with the Court "Stipulations of Joinder" in the instant Memorandum.

[2]    The Track 1 Defendants consist of: the AstraZeneca Group, the BMS Group, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, the Johnson & Johnson Group, and the Schering-Plough Group.

[3]    Attached hereto as Exhibit "A" is demonstrative map of the States who have pending AWP lawsuits. A listing of the pending state court actions being prosecuted by the State Attorneys General and the defendants is attached hereto as Exhibit "B."

litigation. In view the prior pending and procedurally-advanced Attorney General cases, and to avoid "the unseemly prospect of two distinct representatives vying for members to join their respective groups,"[4] Pennsylvania respectfully submits this Memorandum in Opposition to ensure that this Court preserves and protects the rights of the State Attorneys General to proceed with their cases. The legal right of the Attorneys General to protect their citizens unimpeded by class action attorneys is manifest:

> ...in a situation such as the present here, where the Attorney General has exercised his authority under [the law] and filed a *parens patriae* action, there is simply no reason or authority for allowing coextensive representation by private parties. The *parens patriae* action is plainly superior to the class action as a mode for adjudication of collective claims. A clear indication of this is the lack of any provision or requirement for court approval or certification of a *parens patriae* action.

*Id.* (citations omitted); *see also McLaughlin v. Liberty Mutual Ins. Co.,* 224 F.R.D. 304, 312 (D. Mass. 2004) ("Some federal courts have denied class certification where the state Attorneys General had, in fact, brought a claim on behalf of the consumers in the state.") (citations omitted)).

The unexplained refusal of MDL Plaintiff Counsel to accede to the primary authority of the State Attorneys General to represent the citizens of their respective states unfortunately forces this Court to weigh in on the matter. MDL Plaintiff Counsel's desire to supplant the preferred representation by the Attorneys General seems to be driven, not by their clients' interests in adequately representing the members of the proposes classes who reside in either Pennsylvania or

---

[4]     *In Re Montgomery County Real Estate Antitrust Litig;* 1988 WL 125789 (D.Md. 1988) at *2.

the Joinder States (since no individual representative plaintiff resides in any such state), but by their desires to expand the geographic scope of their AWP litigation.[5]

Their desires notwithstanding, MDL Plaintiff Counsel's unwillingness to yield to the primary right and interest of the Attorneys General warrants this Court's closer scrutiny of two prerequisites to class certification: (1) the adequacy of the proffered representation of the Classes pursuant to Rules 23(a)(4) and 23(g), and (2) the overall superiority of the class action device pursuant to Rule 23(b)(3) in light of the pending Attorney General cases. As set forth more fully herein, Pennsylvania respectfully submits that the three (3) proposed nationwide classes should not be certified because the citizens of Pennsylvania and the Joinder States are already adequately represented by their respective Attorneys General who have brought superior *parens patriae* actions or other statutory claims on behalf of consumers in the state courts. For these reasons, Pennsylvania and the Joinder

---

[5] Such a conclusion can only be drawn from an objective view of the situation. First, MDL Plaintiff Counsel have determined to press forward will their goal to assert control over all consumer claims throughout the country, including those consumers who reside in Pennsylvania and Joinder States for which the Attorneys General already have acted to protect their citizens. Second, curiously absent from the class certification papers of MDL Plaintiff Counsel – some of which have been retained by two States, Nevada and Montana – is any proposal for a carve-out from the proposed classes for the *parens patriae* claims of the State Attorneys General, or any discussion of the unambiguous legal precedents cited herein which demonstrate that the State Attorneys General, suing *parens patriae* or otherwise for their citizens, are both the most "adequate" plaintiffs [under Rule 23(a)(4)] and provide the most "superior" avenue for the litigation [under Rule 23(b)(3)]. Third, MDL Plaintiff Counsel have simply chosen to abandon the claims for declaratory and injunctive relief on behalf of the consumers nationwide, which would provide widespread relief to all consumers, in favor of certification of only Rule 23(b)(3) damages classes. As the discussion below amply demonstrates, since one of the primary goals of the AWP lawsuits instituted by the Attorneys General is effectuating a complete cessation of and change in the unlawful marketing and sales practices of the drug companies, this distinguishing feature of the Attorney General cases now takes on heightened importance for this Court's determinations of both "adequacy" and "superiority." Lastly, MDL Plaintiff Counsel submitted to this Court a proposed form of Case Management Order, CMO No. 10, which precludes any defendant from even discussing settlement of consumer claims with the State Attorneys General unless and until prior notice is provided to them and the approval of this Court is obtained.

States respectfully submit that this Court should reject the application for nationwide class certification or, at a minimum, it should restrict the geographic scope of the proposed Classes to only those states which presently lack any Attorney General representation, reserving decision on any further modifications to the geographic scope of the proposed Classes until the States conclude their respective investigations.

## I.   BACKGROUND OF ATTORNEY GENERAL INVESTIGATIONS AND PROSECUTIONS OF THE DRUG INDUSTRY.

Long before there was this MDL 1456, or any civil litigation in state or federal court for that matter, Attorneys General throughout the country were actively engaged in both criminal and civil investigations into unlawful marketing and sales practices by the drug industry, including the unlawful inflation and promotion of Average Wholesale Price (or "AWP"). *See* "Special Report: States Mull Suit Against Drug Companies" attached hereto as Exhibit "C". By early 2001, members of the National Association of Attorneys General ("NAAG") had convened a special Pharmaceutical Pricing Task Force ("PPTF") to investigate unlawful marketing and sales practices in the drug industry, among other things. Pennsylvania joined as a co-convenor in PPTF. In fulfilling its mission, the members of the NAAG worked with the United States Department of Justice ("DOJ"), the United States Attorneys of several states, and the National Association of Medicaid Fraud Control Units ("NAMFCU") to complete the criminal and civil investigations of marketing and sales practices in the drug industry already underway, and to initiate new ones.

The first milestone in this effort was the consummation of a national civil settlement with Bayer Corporation in January 2001. While the Bayer settlement netted $14 million for the federal government and the states, more importantly, it obtained several concessions from Bayer, including

4

a model Corporate Integrity Agreement ("CIA"), as well as substantial documentary evidence of unlawful marketing and sales practices in the drug industry.  As evidenced by their complaints, both the Bayer settlement and the evidence developed by the investigation of Bayer became a predicate for the initial civil filings of AWP cases by MDL Plaintiff Counsel.

The Bayer settlement was followed by the criminal indictments of and guilty pleas and/or civil settlements between the federal and state governments and TAP Pharmaceutical Products, Inc. ("TAP"), GlaxoSmithKline, Pfizer, Inc., and AstraZeneca.  All of these investigations had an AWP component, even though they were resolved on other grounds.

Each of the fifty states – working by and through their Attorneys General in conjunction with their national organizations, NAAG and NAMFCU – have been involved in some measure in the investigations and prosecutions, and in full measure in the resolutions, with each of the States signing their own settlement agreements with these drug companies and sharing in the settlement proceeds.  Significantly, these agreements expressly reserved to the States (and their consumers) the right to bring and prosecute civil cases for further damages arising out of the fraudulent conduct that was the subject of the investigations and settlements, as well as other unlawful conduct.  The criminal and civil investigations of unlawful pricing, marketing and sales practices continue, both on the local scale (with individual States issuing Civil Investigative Demands, collecting evidence, and interviewing witnesses) and on the national level (by and through NAAG, NAMFCU, DOJ and the United States Attorneys).  Consequently, both Pennsylvania and the Joinder States (as well as States who have not yet sued) have a keen interest in ensuring that their investigations on behalf of their respective States and their citizens can be concluded without interference from the civil class action lawyers.

## II.   ARGUMENT

### A.   PRIMARY RIGHTS OF THE STATE ATTORNEYS GENERAL TO PROCEED *PARENS PATRIAE* OR OTHERWISE ON BEHALF OF THEIR CITIZENS

As noted previously, Pennsylvania and other States, by and through their Offices of the Attorney General, filed claims against the drug companies both in their proprietary capacities, as the exclusive judicial officer with the authority to represent state government agencies for their losses suffered as a result of the Defendants' conduct, and also in the *parens patriae* and/or statutorily authorized capacity to represent the citizens of their respective states in this litigation. While it appears that MDL Plaintiff Counsel are not seeking by their petition for class certification to represent state agencies, which would not be permissible,[6] they are seeking to exert coextensive control over the citizens of the states for whom the Attorneys General have already acted. Consequently, by their petition for nationwide class certification which includes states where Attorneys General have sued already, MDL Plaintiff Counsel are seeking to challenge the right to proceed on behalf of their citizens, unimpeded by class action litigation. Whether States are proceeding pursuant to *parens patriae* or statutory authority on behalf of their citizens, the law is clear that the class action litigation device must yield to the Attorney General lawsuits.

### 1.   The General Rights of the State Attorneys General to Proceed *Parens Patriae.*

The *parens patriae* rights of the State Attorneys General trace their roots to English common law wherein some of the King's royal powers were exercised in his capacity as "father of the

---

[6]      Both the Tenth Amendment to the United States Constitution and enabling state statutes throughout the country, expressly reserve to the states the power to proceed in litigation on behalf of their State and its agencies. For instance, in Pennsylvania, the Commonwealth Attorneys Act gives the Attorney General the exclusive authority to represent Commonwealth agencies.

country."[7] In the United States, the King's *parens patriae* authority passed to the state governments. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257 (1972). The United States Supreme Court recognized long ago that, to sue under *parens patriae*, the governmental body must have had some interest apart from those of its individual citizens. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 US, 592, 607 (1982);[8] *Pennsylvania v. West Virginia*, 262 U.S. 553, 564 (1923). This separate interest ensures that the suit will be prosecuted vigorously. Additionally, the governmental body must act to protect the "substantial portion" of its populace. *See id.* at 592; *see also, Louisiana v. Texas*, 176 U.S. 1, 28 (1900) (Brown, J. concurring) (dismissing case where state was not the proper party plaintiff). This requirement ensures that the public's resources are not squandered to aid only a discrete number of litigants. *See, e.g., State ex rel. Barker v. Chicago & A.R. Co.,* 178 S.W. 129, 138 (1915) (stating that public funds should not be used in private disputes). Consequently, in certain circumstances, the authority to sue *parens patriae* in federal court, such as to protect the state's populace from discrimination, is exclusively limited to the states,

---

[7]     *See West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2nd Cir. 1971) (noting that the words *parens patriae* literally mean "parent of the country").

[8]     As set forth in *Snapp*, the threshold requirements for bringing and maintaining an action *parens patriae* contemplate that "the State must articulate an interest apart from the interests of particular private parties, *i.e.,* the State must be more than a nominal party" and "the State must express a quasi-sovereign interest." *Id.* at 607. The Supreme Court recognizes that "the articulation of such interests is a matter for case-by-case development," but identifies "two general categories" of legitimate concern for the State: "First, a State has a quasi-sovereign interest in the health and well-being–both physical and economic – of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.* at 607. With regard to the former, "the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population." *Id.*

commonwealths and territories. *See, e.g., Estados Unidos Mexicanos v. Decoster*, 1991 WL 636438, at *3 (D. Me. Aug. 9, 1999).

Originally, while the States exercised their common law *parens patriae* authority essentially in a police capacity to protect the health, welfare, and safety of their citizens,[9] the States, through their respective Offices of the Attorneys General, have expanded their use of *parens patriae* authority to protect their citizens in all matters in which their citizens have been harmed, or threatened with harm. Courts have allowed such actions in recognition that the States, through their *parens patriae* authority, are in the best position to protect large numbers of citizens who may be either unwilling or unable to protect themselves, due to the legal complexity of pursuing a claim or the relatively small nature of their individual interests.[10]

Describing the peculiar nature of the State's interest in litigation on behalf of its consumers, the Supreme Court remarked in one case involving Pennsylvania:

> The private consumers in each State not only include most of the inhabitants of many urban communities but constitute a substantial portion of the State's population. Their health, comfort and welfare are seriously jeopardized by the threatened withdrawal of the gas from the interstate stream. This is a matter of great public concern in which the State, as the representative of the public, has an interest

---

[9]     *See, e.g., Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 238-9 (1907) (discussing action to enjoin air pollution); *Kansas v. Colorado*, 185 U.S. 125, 145-47 (1902) (discussing action to enjoin water diversion); *Missouri v. Illinois*, 180 U.S. 208, 248 (1901) (discussing action to enjoin sewerage discharges into a river); *Louisiana v. Texas*, 176 U.S. 1, 22 - 23 (1899) (allowing quarantine of imported goods assertedly to prevent spread of communicable disease).

[10]     *See, e.g. Tennessee Copper Co.*, 206 U.S. at 238-39 (declaring the state to be the appropriate plaintiff on behalf of citizens); *Kansas*, 185 U.S. at 142 ("that suits brought by individuals, each for personal injuries, threatened or received, would be wholly inadequate or disproportionate, receives no arguments"); *Missouri*, 180 U.S. at 241 (declaring that suits brought by individual plaintiffs would be "wholly inadequate"); *Louisiana*, 176 U.S. at 28 (stating that individual citizens are not proper plaintiffs).

> apart from that of the individuals effected. It is not merely a remote
> or ethical interest but one which is immediate and recognized by
> law."

*Pennsylvania v. West Virginia*, 262 U.S. 553, 592 (1923). Thus, the exclusive right of States, by and

through their Attorneys General, to proceed on behalf of consumers in areas in which their citizens'

health, comfort and welfare are seriously jeopardized or actually harmed – such as in the area of

health care whereby drug companies have taken advantage of the citizens through their unlawful

pricing, marketing and sales practices – is beyond doubt.

2.    The Specific Right of Pennsylvania to Proceed *Parens Patriae*

The Attorney General of Pennsylvania possesses the clear authority to assert claims *parens*

*patriae* on behalf of Pennsylvania citizens, and he has chosen to do so in "AWP litigation."

The Commonwealth of Pennsylvania has a long history of *parens patriae* authority which

has been recognized by the United States Supreme Court. *See Pennsylvania v. New Jersey*, 426 U.S.

660, 665, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (wherein the Court held that "a State has standing

to sue [under *parens patriae*]... when its sovereign or quasi-sovereign interests are implicated and

it is not merely litigating as a volunteer the personal claims of its citizens.") Most recently, in

*Broselow v. Fisher,* 319 F.3d 605 (3d Cir. 2003), the Court of Appeals for the Third Circuit

dismissed a case brought on behalf of a class of Pennsylvania Medicaid recipients against then-

Attorney General Mike Fisher and other state officers regarding the Tobacco Settlement. The federal

trial judge dismissed the case and, on appeal, the Third Circuit affirmed the lower court's dismissal

decision, upholding the Commonwealth's authority to bring claims *parens patriae.* In reaching that

dismissal, the Third Circuit looked to the Supreme Court's reasoning in the *Alfred L. Snapp* case,

*supra.*

9

In numerous instances both the federal and state courts have upheld the right of the Pennsylvania Attorney General to exercise his *parens patriae* authority to protect the rights of Pennsylvania citizens. *See, e.g., Pennsylvania v. Porter,* 659 F.2d 306, 314-6 (3d Cir. 1981); *Commonwealth v. Russell Stover Candies,* Civ.A.No. 93-1972, 1993 WL 145264, at *7 (E.D. Pa. May 6, 1993) ("A state can sue as *parens patriae* for the protection of its people or its general economy."); *Commonwealth ex rel. Fisher v. Phillip Morris, Inc.,*, 736 A.2d 693, 701-02 (Pa. Commw.Ct 1999); *In the Interest of K.B.,* 432 Pa. Super. 586, 591 n. 11, 639 A.2d 798, 801 n. 11 (1994); *Com. of Pennsylvania v. Budget Fuel Co.,* 122 F.R.D. 184 (E.D. Pa. 1988) (affirming the "superiority" of the Pennsylvania Attorney General's *parens patriae* authority *vis-a-vis* the rights of civil class action plaintiffs to proceed under Rule 23); *see also In re Lorazepam & Clorazpate Antitrust Litig.,* 205 F.R.D. 369, 397 (D.D.C. 2002) (wherein the court, in approving a final settlement, recognized the Commonwealth's *parens patriae* authority to represent consumers in litigation alleging state and federal antitrust violations).

## B.   THE LEGAL STANDARDS FOR CLASS CERTIFICATION

MDL Plaintiff Counsel bear the burden of demonstrating that the criteria set forth in Federal Rule of Civil Procedure 23 have been met. *See, e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-15 (1997); *Makuc v. American Honda Motor Co., Inc.,* 835 F.2d 389, 394 (1st Cir. 1987). First, plaintiffs must establish all four of the threshold requirements of Rule 23(a). *See* FED. R. CIV. P. 23(a). The 23(a) requirement directly implicated by Pennsylvania's challenge is "adequacy of representation" which, as recently modified by the proscriptions of new Federal Rule 23(g), now requires a heightened scrutiny by this Court of the qualifications of the lawyers who seek to be appointed the exclusive counsel for the proposes Classes. In addition, as this Court knows, plaintiffs

10

also must demonstrate that certification of each of their three (3) proposed classes is appropriate under the more demanding requirements of Rule 23(b)(3), which requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Amchem*, 521 U.S. at 614.  This "superiority" determination requires the Court to weigh the advantages and disadvantages of the class action litigation device against all other available alternatives, including *parens patriae* actions brought by State Attorneys General.[11]  *See, e.g., McLaughlin,* 224 F.R.D. at 311-312.

To decide whether class certification is appropriate, *i.e.* superior to all other reasonable litigation alternatives, this Court must examine "the claims, defenses, relevant facts, and applicable substantive law" and then consider how a trial on the merits would be conducted. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *accord Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) (citing *Castano*). In doing so, the Court cannot simply rely on plaintiffs' bald assertions of "superiority", it must probe beyond the pleadings in order to "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate...." *Mowbray*, 208 F.3d at 298. If significant elements of

---

[11]     Although MDL Plaintiff Counsel originally had sought certification of a Rule 23(b)(2) mandatory declaratory judgment class in their Amended Complaint, *see* AMCC ¶ 603, they appear to have abandoned that request in favor of Rule 23(b)(3) damages classes only. Accordingly, while there is no reason to examine the many reasons why a mandatory class would be inappropriate in this case in light of the pending Attorney General cases which continue to seek both declaratory and injunctive relief for consumers, it is important to note that now <u>only the Attorneys General</u> seek such equitable remedies against the drug companies for their unlawful pricing, marketing and sales practices.  This distinguishing characteristic is critical to this Court's determinations of both the adequacy of the proffered Class Counsel to protect and advance all the interests of the members of the proposed classes (including their interest in obtaining declaratory and injunctive relief) and the superiority of the class action device, now that equitable relief has been abandoned.

a claim or defense require individualized proof from each class member, class certification is inappropriate. *See Amchem*, 521 U.S. at 624.

Indeed, the First Circuit has made clear that the district court should "test disputed premises early on if and when the class action would be proper on one premise but not another." *Tardiff v. Knox County*, 365 F.3d 1, at 4-5 (1st Cir. 2004); *see also Gariety v. Grant Thornton LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (holding that district court's reliance on plaintiff's assertions did not satisfy requirement that it conduct a rigorous analysis of Rule 23 requirements). Although the Defendants have challenged the wisdom of employing the class action device in this case, they have not, in turn, provided this Court any reasonable alternative to managing the *bona fide* claims of the many class members, short of opening the litigation floodgates to millions of individual lawsuits. In other words, Defendants do not offer this Court a "superior" litigation alternative to either the unwieldy nationwide classes proposed by the MDL Plaintiff Counsel (on the one hand) or millions of separate individual lawsuits predicted by them (on the other).

In stark contrast to the Defendants' prognostications that the requisite "rigorous analysis" of plaintiffs' class certification petition "leads to the inescapable conclusion that [the claims] are not susceptible to class treatment", and therefore a legal dead-end for the consumers in this country, Pennsylvania suggests to this Court that a reasonable alternative path to judgment already lies in the state court litigation being prosecuted by the State Attorneys General. In the past, through its multiple remand decisions and otherwise, this Court has demonstrated its willingness to defer to the sovereign power of the States and state courts to properly adjudicate the claims of consumers being pursued by the Attorneys General. All Pennsylvania seeks by its opposition herein is an affirmance of that deference.

12

**C.    THE LACK OF "ADEQUACY OF REPRESENTATION" FOR THE PROFFERED CLASSES SHOULD LEAD THIS COURT TO DEFER TO THE STATE ATTORNEYS GENERAL.**

The touchstone for the due process treatment of absent class members is adequacy of representation. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Adequate representation is a fiduciary obligation that demands the protection of class members' interests through the class representative's vigorous advocacy.[12]

Adequate representation is also a constitutional requirement. "[It] is the foundation of all representative actions ...." *In re G.M. Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1121 (7th Cir. 1979), *citing Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct 115, 85 L.Ed. 22 (1940). *See Walker*, 175 F.R.D. at 231 ("[t]he bedrock consideration for the court in any certification decision is 'whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives'"). The federal courts have long recognized that adequate representation is mandated by due process. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 89-90 (7th Cir. 1977) ("due process requires that absent class members be adequately represented in order to be bound by a court's judgment"). *See also, Nat. Assoc. of Regional Medical Programs. v. Mathews*, 551 F.2d 340, 346 (D.C. Cir. 1977) ("adequacy of class representation has a constitutional dimension").

---

[12]    "A class representative, by assuming a representative role on behalf of the absent class members, accepts a fiduciary obligation toward the class that may not be abandoned at will or by agreement with the defendant if prejudice to the absent class members would inhere ...." *Blanchard v. Edgemark Financial Corp.*, 175 F.R.D. 293, 298 (N.D. Ill. 1997). *See also, Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949) (*emphasis added*). Indeed, the class representative must continue to satisfy those fiduciary obligations even after the resolution of the litigation. *Doe v. Heckler*, 580 F. Supp 1224, 1229 (D. Md. 1984) ("[T]he fiduciary responsibility undertaken by the class representatives and their counsel to assure that the rights of unnamed class members are adequately represented ... does not end on the day a judgment is handed down").

Before a class may be certified, Fed. R. Civ. P. 23(a)(4) requires that the district court find that "the representative parties will fairly and adequately protect the interests of the class." In order to be deemed adequate, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26, 117 S.Ct. at 2250-51. Similarly, the class representative's personal claim must not be inconsistent with the claims of other members of the class. *Id.*[13]

### 1.    There are No Adequate Representative Plaintiffs for the Part B Class.

There are two significant deficiencies in the representation of the proposed Part B Class: (1) there presently exist no representatives of the Part B Class, and (2) there are no Part B Class present or proposed representatives from either Pennsylvania or any of the Joinder States. Since it is the burden of the representative plaintiffs to satisfy this Court that they are adequate to represent the sprawling nationwide classes, their failure to do so is fatal to their application for class certification.

First, as defendants point out in their opposition papers, there exists a serious deficiency in the adequacy of the representation of the Medicare Part B Class because there are no Medicare Part B class representatives. While there used to be several putative Part B representatives in this MDL proceeding, for reasons unknown to Pennsylvania or the Joinder States, they were dismissed

---

[13]    A class representative's interest in the litigation cannot be hypothetical. Courts are charged with ensuring that the "'representative' in a class action is not a fictive concept," and that the "suit stems from real grievances of real persons ..." *Rand v. Monsanto Co., 926 F.2d 596, 599 (7th Cir. 1991)*. A class representative must have a real stake in the claims of the class. "A class representative must be part of the class and possess the same interests and suffer the same injury as the class members ..... Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class." *Davis v. Ball Mem. Hosp., 753 F.2d 1410, 1420 (7th Cir. 1985), citing East Texas Motor Freight Syst., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), and O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).*

voluntarily from the case by the MDL Plaintiff Counsel. Rather than account for this voluntary dismissal which has directly led to present deficiencies in the Part B Class representation, MDL Plaintiff Counsel simply brush aside such criticism with a nondescript offer to provide purported "substitute" Part B Class representatives, should the Court desire them. However, there are no existing Part B Class representatives for which to "substitute" new ones, since the MDL Plaintiff Counsel have chosen not to proffer any. Consequently, and respectfully, it is not an appropriate function for this Court to search for adequate Part B Class representatives; rather, the Court's task is to judge whether the representatives proposed by Class Plaintiffs meet the requirements of Rule 23(a)(4). Having failed to proffer *any* representatives of the Part B Class, let alone ones who pass muster as "adequate," MDL Plaintiff Counsel have failed to carry their burden on this class prerequisite.[14]

Second, there are no proffered Part B Class representatives from either Pennsylvania or any of the Joinder States. Such deficiency raises particular concerns for the Attorneys General about the willingness and ability of the named MDL Plaintiff Counsel to adequately represent the interests of consumers who reside in Pennsylvania and the Joinder States. The significant differences in the laws of the States, which led Judge Young of this Court to <u>deny</u> the nationwide class certification requested by the same counsel who seek it here,[15] warrants this Court's similar strict scrutiny of the

---

[14]     Obviously, there is a problem with the representation of the Part B Class. But a half-hearted offer, provided only at the eleventh-hour and after an appropriate criticism has been lodged by defendants, is not the appropriate answer for a glaring problem the MDL Plaintiff Counsel failed to catch themselves in their initial moving papers. The failure to provide this Court with a proper evidentiary record to find an adequacy of representation, when combined with the voluntary dismissal of the claims of Part B class representatives, simply raises more concerns about adequacy of representation of the proposed classes than it answers.

[15]     *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004).

matter.  While MDL Plaintiff Counsel seek to lay the problem at the defendants feet,[16] they cannot avoid their burden of demonstrating adequacy of representation of the entirety of the proposed plaintiff classes.  Since such burden requires adequate representation with respect to all subclasses and all intra-class conflicts, including material variations in both the common law and statutory consumer fraud laws of the various states with differing rights of recovery by consumers, *see Relafen, supra*, adequate representatives must be proffered for each of these disparate interests.  At a minimum, adequate representatives must be presented for the consumers in each of the States where the Attorney General has sued in order for this Court to supplant the *parens patriae* or other authority of the State Attorneys General to proceed on behalf of their citizens.

> 2.    There Are No Adequate Representatives of the States' Claims for Declaratory and Injunctive Relief

In light of the MDL Plaintiffs' decision to drop equitable remedies in this Court, it is obvious that there are no adequate representatives of the proposed classes to ensure that these States' claims for declaratory and injunctive relief against the defendants will be adequately represented and vigorously prosecuted.  In light of the clear design of the State Attorneys General to pursue such equitable remedies, including injunctions under state consumer fraud laws and other laws against the unlawful pricing, marketing and sales practices, this Court must consider the problem created by the proposal of MDL Plaintiff Counsel to permit the coextensive representation of members of the classes by the MDL Plaintiff Counsel in a case where they seek less than all the relief available to members of the proposed classes.  The decision to drop equitable remedies relief should be fatal

---

[16]    MDL Plaintiff Counsel argue that, since it is by application of the Massachusetts choice of law rules that the consumer protection laws of the fifty (50) states must be applied to the claims of the consumer classes, therefore somehow their lack of adequate representation of the consumers in most States should somehow be excused.

to any claim by MDL Plaintiff Counsel that they can adequately represent all the interests of the members of the proposed classes.

### D. A CLASS ACTION IS NOT THE "SUPERIOR METHOD" FOR THE "FAIR AND EFFICIENT ADJUDICATION" OF THE CLAIMS OF THE PROPOSED CLASSES IN VIEW OF THE PENDING ACTIONS BY PENNSYLVANIA AND THE JOINDER STATES.

"The final hurdle Plaintiff(s) must clear under Rule 23(b)(3) is the requirement that [they] demonstrate that a class action is a fair and efficient method for adjudicating the controversy and would be superior to other methods." *Mack v. Suffolk County*, 191 F.R.D. 16, 24 - 25 (D. Mass. 2000). A class action is a superior method only if no reasonable alternative exists. *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Here, the standard cannot be met because Pennsylvania and certain Joinder States already have sued the Track 1 Defendants in state court. Consequently, MDL Plaintiff Counsels' *ipse dixit* assertions that class certification is necessary to make class members' claims financially viable is completely belied by the fact that the interests of the proposed classes are being advanced by the Attorneys General of Pennsylvania and the Joinder States. Under the circumstances of this litigation, where the Attorneys General have initiated and are independently pursuing *parens patriae* actions that seek redress for harm caused to their citizens, an independent, overlapping MDL action that seeks certification of a massive, nationwide class of consumers and business entities involving the same conduct and harm being adjudicated by the Attorneys General is not the "superior method" for the "fair and efficient adjudication" of the controversy under Fed. R. Civ. P. 23(b)(3). Such "co-extensive" representation of private parties is unnecessary, imprudent and unwarranted under the law. *See, e.g., Commonwealth of Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 186 (E.D. Pa.1988) (..."where the Attorney General has exercised his authority under [the law] and filed a *parens patriae* action,

17

there is simply no reason or authority for allowing *coextensive* representative by private parties.")
(emphasis supplied).

This conclusion was acknowledged by this Court to be a proper result in the *McLaughlin*
decision, *infra*., and has been reached by numerous federal courts who have been faced with the
question of class certification in the face of existing representation by Attorneys General. *See*
*McLaughlin*, 224 F.R.D. at 312 (noting that "[s]ome federal courts have denied class certification
where the state Attorney General had, in fact, brought a claim on behalf of the consumers in the
state.").

The cases cited by the *McLaughlin* Court warrant closer scrutiny by this Court because this
case involves the very situation that was lacking in *McLaughlin*: civil class plaintiffs seeking class
certification in a case where the state Attorneys General have sued. *Id.* at 312 ("these cases,
however, do not bear on whether a court should deny certification simply because the plaintiffs *could*
petition the Attorney General to bring suit on behalf of all [plaintiffs] in the Commonwealth, but
where the Attorney General has not actually brought suit.") (emphasis in original).[17] Since the more
recent case, *Sage v. Appalachian Oil Co.,* 1994 W.L. 637 443 (E.D. Tenn. Sept. 7, 1994), appears
to have relied exclusively upon the earlier case, *Commonwealth of Pennsylvania v. Budget Fuel Co.,*
*Inc.,* 122 F.R.D. 184 (E.D. Pa. 1988), the *Budget Fuel* case should be scrutinized. However, both
cases involve applications by class action plaintiffs for certification of classes pursuant to Federal
Rule 23 for federal antitrust claims brought on behalf of consumers. In both cases, the Attorneys
General of the respective states in which the federal court resided had instituted prior *parens patriae*

---

[17]     It is noteworthy that in the AWP litigation the Attorney General of Massachusetts has
"actually brought suit." *See* Appendix "B."

actions against some or all of the defendants for similar unlawful conduct.  In granting the Attorney

General's Motion to Strike the class action allegations of the competing consumer complaint, the

*Budget Fuel* Court held:

> "A *parens patriae* action is superior to a class action as a means for
> adjudication of collective claims.  The superiority of the *parens
> patriae* action over the class action is evidenced by the lack of any
> provision or requirement for court approval or certification of a
> *parens patriae* action....In addition, Rule 23(b)(3) of the Federal
> Rules of Civil Procedure permits class certification only where 'a
> class action is superior to all other available methods for the fair and
> efficient adjudication of the controversy.'  In the case *sub judice*, the
> class action brought by [the consumer plaintiff] is not a superior
> alternative because the Plaintiffs in the [consumer plaintiff's] action
> are already ably represented by the Attorney General in the
> Commonwealth's *parens patriae* action.  Although the Court is
> cognizant of the fact that the *parens patriae* provisions of § 4C of the
> Clayton Act were not intended to negate the Rule 23 class action,
> where the Attorney General has exercised his authority under § 4C
> and filed a *parens patriae* action, there is simply no reason or
> authority for allowing co-extensive representation by private parties.
>
> * * *
>
> All the court is stating is that in the situation where a State Attorney
> General and a private class representative seek to represent the same
> class members, the *parens patriae* action is superior to that of the
> private class action.

*Budget Fuel*, 122 F.R.D. at 185-86.

As noted previously, this holding was directly followed and extended by the Tennessee

Eastern District Court in the *Sage* case, but in a slightly different context.  In *Sage*, the District Court

had denied previously the civil plaintiffs' motion for class certification in light of the pending

Attorney Generals' *paren patriae* action.  The Tennessee Attorney General then amended the State's

complaint to add a request for class certification under Rule 23 and to have itself designated the

"adequate representative" of the Class.  The *Sage* Court wrote that, "[w]hile it is not clear that the

State has a superior right to bring a Rule 23 class action, the State, through the Attorney General, is clearly in a superior position to bring a *parens patriae* action against defendants on behalf of all natural persons in this state." *Sage*, 1994 WL 637443 at *1. The *Sage* Court went on to hold that, with respect to the Tennessee Attorney General's subsequent application to be appointed class representative of the same Rule 23 class that the consumer plaintiffs had sought previously, "[f]or many of the same reasons and for reasons of judicial economy, it appears that the State should be the preferred representative of a class of all persons, including non-natural persons such as business entities, that were effected by the alleged price fixing conspiracy." *Id.* at *2. Because the defendants had not had an opportunity to object to the State's request, the matter was continued to another day.

In *In re Montgomery County Real Estate Antitrust Litigation*, 1988 WL 125789 (D. Md. July 17, 1988), this primary right of Attorneys General to represent their citizens was extended to the settlement context. In the case, private plaintiffs who had settled the claims of a prior certified class of purchasers of real estate services of the defendants over a period of time from September 5, 1974 and to September 30, 1976, then sought to settle the claims of class members who purchased services from after September 30, 1976 to April 1, 1977. However, the claims of these people had been part of a pending *parens patriae* action being prosecuted by the Attorney General of Maryland. *Id.* at *1. In seeking essentially to roll in the Attorney General's claims to effectuate a complete settlement, the class plaintiffs simply agreed with defendants to settle all claims involving the defendants' conduct over the entire period of the alleged conspiracy, including all conduct that fell within the period implicated in the Attorney General's action, but without consultation with or the assent of the Attorney General. *Id.*

20

The precise issue before the court was "whether a full settlement of this litigation can take place in the absence of assent by the Attorney General." *Id.* The court held that such a settlement could not take place, and it refused to extend the class certification beyond the prior certified period, thereby preserving the Attorney General's sole representation of natural persons in its *parens patriae* action. *Id.* at *3. The court explained that to permit otherwise would "run afoul" of Rule 23(b)(3)'s superiority requirement. *Id.* at *2. The court ruled that the class action device was not a superior method of adjudication because of the Attorney General's existing representation of the claims. *Id.* In so ruling, the court stated:

> there is simply no reason or authority for allowing coextensive representation by private parties. The *parens patriae* action is plainly superior to the class action as a mode for adjudication of collective claims. A clear indication of this is the lack of any provision or requirement for court approval or certification of a *parens patriae* action.

*Id.* (citing 15 U.S.C. § 15(c)(b)(1)).

While the court in *In re Montgomery* dealt with this issue solely in the context of the Sherman Act, and expressly avoided the question of whether such "preemption" would be permissible outside of that context, *see id.* at n.5, the rationale supporting the court's decision applies equally here. Indeed, the court relied on the "analogous situation" presented in a non-antitrust case, *United States v. City of Chicago*, 411 F.Supp. 218, 243 (N.D. Ill. 1976), *aff'd in part, rev'd in part*, 549 F.2d 415 (7th Cir. 1977), wherein that court denied class certification for private plaintiffs in a civil rights case because the federal government already represented the proposed class members, thereby precluding satisfaction of Rule 23(b)(3)'s superiority requirement. *In re Montgomery* at *2. *See also Barcelo v. Brown*, 78 F.R.D. 531, 534 (1978) (relying on *City of Chicago* in ruling that class

21

action involving private plaintiffs would not be superior method for adjudication under Rule 23(b)(3) where "Commonwealth [of Puerto Rico] Plaintiffs" provided "viable alternative to coping with the difficulties inherent in the class action device.").

As an additional basis for its ruling, the court in *In re Montgomery* found that, even if it were proper as a matter of law to extend the class certification, it would have been improper to do so as a matter of fact. The court stated that the "overlapping representation... would create very serious problems" with respect to class notice and confusion of class members about their rights and options. *In re Montgomery* at *2.

This rationale of the court in *In re Montgomery* applies fully in the instant matter. The proposed class action on behalf of private plaintiffs is not the superior method of adjudication under Rule 23(b)(3) in light of the prior pending Attorney General actions. Moreover, given the pending Attorney General actions, certification of an overlapping class action is likely to cause significant confusion, whether or not the private plaintiff action, if certified, is settled or tried to verdict. Accordingly, this Court should refrain from granting nationwide class certification, and should defer to the Attorney General actions as the "superior" methods of adjudicating the claims of those who allege harm from the defendants' conduct. At a minimum, a carve out of the States is warranted.

While the States and Defendants surprisingly agree that the class action is not the "superior" litigation device, Defendants tip their hands as to their bias in wanting no case at all by arguing that there is a lack of superiority, but with no reasonable alternative. They fail to offer a reasonable alternative because the Defendants know full well that the millions of cases they say should be filed instead likely will never materialize because of the cost prohibitive nature of consumer claims. Instead, Defendants know that defeating nationwide class certification means the effective end of

22

the litigation against them.  Consequently, this Court should adopt the reasonable middle ground approach for the litigation offered by the Attorneys General, by deferring to the state-court cases either completely or in part (by carving out Pennsylvania and the other litigating States from the proposed Classes).

## III.    CONCLUSION

For the foregoing reasons, the Commonwealth of Pennsylvania, by and through its Office of the Attorney General, along with all of the States Attorneys General who have joined in this Memorandum, respectfully requests this Honorable Court to deny plaintiffs' Motion for Class Certification.

Respectfully submitted,

Dated: February 8, 2005

Donald E. Haviland, Jr., Esquire
**KLINE & SPECTER**
A PROFESSIONAL CORPORATION
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712
215-772-1000 telephone
215-735-0957 facsimile

Thomas Corbett, Attorney General
James Donahue, Chief Deputy Atty. Gen.
Christopher Abruzzo, Chief Deputy Atty. Gen.
**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF ATTORNEY GENERAL**
Commonwealth of Pennsylvania
16th Floor, Strawberry Square
Harrisburg, PA  17120
717-787-3391 telephone
717-783-1107 facsimile

**FOR THE COMMONWEALTH OF PENNSYLVANIA**

23

G:\DEH\AWP MASTER - (200700)\MDL\Pleadings\States Memo in Opposition to Class Certification.wpd

## TABLE OF CONTENTS

I.   BACKGROUND OF ATTORNEY GENERAL INVESTIGATIONS
     AND PROSECUTIONS OF THE DRUG INDUSTRY. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   Primary Rights of the State Attorneys General to Proceed
          *Parens Patriae* or Otherwise On Behalf of Their Citizens  . . . . . . . . . . . 6

          1.   The General Rights of the State Attorneys
               General to Proceed *Parens Patriae*. . . . . . . . . . . . . . . . . . . 6

          2.   The Specific Right of Pennsylvania to Proceed
               *Parens Patriae* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.   The Legal Standards for Class Certification  . . . . . . . . . . . . . . . . . . . . . 10

     C.   The Lack of "Adequacy of Representation" for the
          Proffered Classes Should Lead This Court to Defer
          to the State Attorneys General.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          1.   There are No Adequate Representative
               Plaintiffs for the Part B Class. . . . . . . . . . . . . . . . . . . . . . 14

          2.   There Are No Adequate Representatives of the
               States' Claims for Declaratory and Injunctive Relief  . . . 16

     D.   A Class Action Is Not the "Superior Method" for the
          "Fair and Efficient Adjudication" of the Claims of the
          Proposed Classes in View of the Pending Actions By
          Pennsylvania and The Joinder States.  . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23