# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL NO. 1456 |
|  | ) | CIVIL ACTION NO. 01-CV-12257-PBS |
|  | ) ) | Judge Patti B. Saris |
| THIS DOCUMENTS RELATES TO 01-CV-12257-PBS | ) ) ) | Chief Mag. Judge Marianne B. Bowler |

## ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF ITS CROSS-MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. ii

ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN
SUPPORT OF ITS CROSS-MOTION FOR A PROTECTIVE ORDER ................... 1

FACTUAL BACKGROUND ..................................................................................... 2

ARGUMENT ............................................................................................................ 3

I.     Mr. Fullerton's Communications Regarding the Pricing,
      Marketing, and Sales of AstraZeneca Products Are Privileged ................... 3

          A.    Mr. Fullerton's Discussions With Mr. Freeberry
               Regarding the 2002 Decision Not to Include AWPs ................ 3

          B.    Mr. Fullerton's Discussions With Other AstraZeneca
               Employees Regarding Pricing, Marketing, and
               Sales of AstraZeneca Products ..................................................... 6

II.    Fullerton's Communications With Counsel for Other
      Defendants Are Protected by the Attorney-Client Privilege ....................... 7

III.   All Responsive External Presentations Have Been Produced ................... 8

IV.   The Crime-Fraud Exception to the Attorney-Client
      Privilege Does Not Apply to Fullerton's Communications ....................... 8

V.    AstraZeneca's Defenses Do Not Effect a Waiver
      of the Attorney-Client Privilege Of Communications
      With Stuart Fullerton ................................................................................ 12

CONCLUSION ...................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

PAGE

*Cavallaro v. United States*, 284 F.3d 236, (1st Cir. 2002) ...........................................8

*Clark v. United States,* 289 U.S. 1 (1933) ....................................................................9

*Coleman v. AmerBroadcasting Cos.*, 106 F.R.D. 201 (D.D.C. 1985) .........................5

*FDIC V. R.W. Beck*, U.S. Dist LEXIS 12128 (D. Mass. July 1, 2004) .....................14

*In re Ford Motor Co.*, 110 F.3d 954 (3d Cir. 1997) ......................................................5

*In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, (1st Cir. 1999) ................9,11

*In re Grand Jury Subpoena*, 220 F.R.D. 130, (D. Mass. 2004) ..............................9,11

*Greater Newburyport Clamshell Alliance v. Public Service Company*
    *of New Hampshire*, 838 F.2d 13 (1 Cir., 1988) ....................................................13

*Johnson v. Sea-Land Service, Inc.*, 2001 U.S. Dist. LEXIS 11447
    (S.D.N.Y. Aug. 9, 2001) ........................................................................................6

*In re Keeper of the Records (Grand Jury Subpoena Addressed*
    *to XYZ Corporation)*, 348 F.3d 16 (1st Cir. 2003) ...........................................9,13

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89
    (D. Mass. 2002) ......................................................................................................8

*McCarthy v. Phillipine Nat'l Bank*, 1984 U.S. Dist. LEXIS 17927
    (S.D.N.Y. Apr. 4, 1984) .........................................................................................5

*Paramount Communs. v. Donaghy*, 858 F. Supp. 391 (S.D.N.Y. 1994) ..................13

*Potter v. United States*, 2002 U.S. Dist. LEXIS 20031
    (S.D. Cal. July 26, 2002) ........................................................................................5

*SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners*, 1999 U.S. Dist.
    LEXIS 1553 (S.D.N.Y. Feb. 16, 1999) .................................................................5

*Sorenson v. H&R Block, Inc.*, 197 F.R.D. 206 (D. Mass. 2000) ...............................13

PAGE

*Standard Chartered Bank v. Ayala*, 111 F.R.D. 76 (S.D.N.Y. 1986)....................13,15

*United States v. Rakes*, 136 F.3d 1 (1st Cir. 1998) ......................................................9

*United States v. Zolin*, 491 U.S. 554 (1989) ..............................................................12

*Weeks v. Samsung Heavy Indus.*, 1996 U.S. Dist. LEXIS 7397
　　(N.D. Ill. May 30, 1996) ....................................................................................5,6

*Weizmann Inst. of Sci. v. Neschis*, 2004 U.S. Dist. LEXIS 4254
　　(S.D.N.Y.Mar. 16, 2004) ....................................................................................15

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this memorandum in opposition to plaintiffs' Motion to Compel and in support of AstraZeneca's cross-motion for a protective order prohibiting plaintiffs from deposing Stuart Fullerton and finding that the communications and documents plaintiffs seek to discover are privileged.

In a blunderbuss attack on AstraZeneca's attorney-client privilege, plaintiffs seek discovery of nearly all communications and documents of Stuart Fullerton, Senior Litigation Counsel for AstraZeneca, that relate in any way to the pricing, marketing, and sales of AstraZeneca's products, regardless of whether they relate to requests for, or the rendering of, legal advice. Plaintiffs' argument that these communications are not protected by the attorney-client privilege because they relate to business matters proves too much. Under plaintiffs' theory, any communication of legal advice would not be privileged if it relates in any way to a business matter. Contrary to plaintiffs' arguments, the law holds otherwise.

Plaintiffs also seek to vitiate the well-established protection afforded to joint defense communications by seeking to compel discovery of Mr. Fullerton's confidential and privileged communications with counsel for other defendants in the AWP litigation. They provide no basis for doing so.

Perhaps recognizing that the communications at issue are clearly privileged, plaintiffs take the additional step of grasping for an exception to the privilege. Indeed, plaintiffs go so far as to impugn Mr. Fullerton's integrity by arguing that the crime-fraud exception applies. This argument has no basis in law or fact.

Plaintiffs also make a last-ditch argument that AstraZeneca waived its privilege by putting the advice of Stuart Fullerton at issue, despite the fact that plaintiffs have failed to identify any statements of Mr. Fullerton relied upon by AstraZeneca in its defense and despite the fact that AstraZeneca has asserted no defense based on Mr. Fullerton's advice.

## FACTUAL BACKGROUND[1]

Mr. Fullerton is the member of the Litigation Section of AstraZeneca's Legal Department who is and has been responsible for handling, since their inceptions, the government investigation into Zoladex marketing and sales practices and the civil AWP litigations, including the multidistrict litigation pending before this Court. Fullerton Decl. ¶¶ 1, 7, 8.

As Senior Litigation Counsel to AstraZeneca, Mr. Fullerton is responsible for handling existing and prospective litigations and claims for and against AstraZeneca. Fullerton Decl. ¶ 4. Any interactions Mr. Fullerton has with product teams or business groups are in relation to specific claims or investigations, or in anticipation of such. *Id.* ¶ 9. In sum, Mr. Fullerton, unlike some in-house counsel, functions solely in a legal capacity.[2]

---

[1] As a procedural matter, plaintiffs' motion to compel is premature. Many of the issues implicated by this motion were raised in a letter dated January 27, 2005 from Kenneth Wexler, counsel for plaintiffs, to Scott Wise, counsel for AstraZeneca. That letter stated that "in order to have a productive meet and confer on any substantive issues, [plaintiffs] ask that [AstraZeneca] resolve the [outstanding issues] within 14 days." Accordingly, AstraZeneca understood that it had until February 10, 2005 to address the issues, after which point the parties would meet and confer. Instead of proceeding with the schedule set forth in Mr. Wexler's letter, plaintiffs filed their motion to compel without warning on February 3, 2005.

[2] With respect to the search of Mr. Fullerton's office for responsive, non-privileged documents, plaintiffs patently misrepresent AstraZeneca's position. *See* Pls. Mem. at 15. Contrary to plaintiffs' suggestion, Mr. Fullerton has conducted a search of his office and computer system for any non-privileged documents responsive to plaintiffs' document requests. All responsive, non-privileged documents –

Plaintiffs' motion seeks to compel testimony and the production of documents relating to all of Mr. Fullerton's privileged communications that relate in any way to the pricing, marketing, and sales of AstraZeneca products.  In particular, plaintiffs' motion focuses on Mr. Fullerton's privileged communications with John Freeberry, Director of Pricing Strategy for AstraZeneca, regarding AstraZeneca's 2002 decision not to include AWPs for its products on the pricing lists that it provides to various publishers.

## ARGUMENT

I. **Mr. Fullerton's Communications Regarding the Pricing, Marketing, and Sales of AstraZeneca Products Are Privileged.**

A. *Mr. Fullerton's Discussions With Mr. Freeberry*
*Regarding the 2002 Decision Not to Include AWPs*

The privileged nature of Mr. Fullerton's discussions with Mr. Freeberry regarding AstraZeneca's decision in 2002 to cease including AWPs on the price lists it provides to publishers was established during Mr. Freeberry's Rule 30(b)(6) deposition.  Mr. Freeberry made clear that AstraZeneca's decision not to include AWPs was informed by legal advice he sought and received from Mr. Fullerton. *See* Freeberry Dep. at 101-08. Accordingly, at that deposition, counsel for AstraZeneca directed Mr. Freeberry not to

---

including documents relating to external presentations made by Mr. Fullerton – have been produced. AstraZeneca never questioned its obligation to conduct such a search.

AstraZeneca objects only to plaintiffs' demand that it include on its privilege log every privileged document in Mr. Fullerton's possession.  Such a privilege log would be unduly burdensome given the exceptionally broad nature of plaintiffs' document requests, which seek documents relating to any investigation or litigation relating to AWP.  Given that Mr. Fullerton has represented AstraZeneca in the government's Zoladex investigation and the various related civil AWP litigations, he likely has thousands of responsive, but privileged, documents in his possession.

Entries relating to Mr. Fullerton on AstraZeneca's existing privilege log reflect privileged communications found in the possession of other individuals. The inclusion of these entries on the privilege log does not represent an "inconsistent" position on the part of AstraZeneca, *see* Pls. Memo at 15, n.10, but instead merely represents AstraZeneca's reasonable, good-faith effort to respond in full to plaintiffs' discovery requests in a way that does not subject it to undue burden.

3

divulge the substance of his communications with Mr. Fullerton because those communications are protected by attorney-client privilege. *See* Freeberry Dep. at 102-04. Likewise, counsel for AstraZeneca directed Mr. Freeberry not to answer questions regarding his communications with members of his business team to the extent that those communications would reveal the legal advice provided by Mr. Fullerton. *See* Freeberry Dep. at 105-07. In addition, the declaration of Mr. Fullerton demonstrates that his communications with Mr. Freeberry took place in the context of his provision of legal advice to AstraZeneca concerning the government investigation and the AWP litigation. *See* Fullerton Decl. ¶ 10.

In seeking to compel this clearly privileged material, plaintiffs' position appears to be that *any* communication regarding pricing, marketing, and sales – regardless of whether it relates to a request for legal advice or the rendering of such advice – is a business communication. *See* Pls. Mem. at 14-15 (asserting that "whether or not to report AWP or WAC to the publishers is a business decision," and arguing that any communications regarding such decisions cannot be privileged). Plaintiffs' position, however, makes no sense and has no support in the law.

First, plaintiffs' argument that AstraZeneca's decision not to include AWPs in the price lists it provides to publishers was solely a "pricing" or "business" decision is nonsensical. Pls. Mem. at 13, 14. AstraZeneca's decision not to provide AWPs to publishers is not akin to assigning particular prices to products in light of the business environment of those products. Rather, as Mr. Freeberry's testimony and Mr. Fullerton's declaration make clear, the decision was informed by legal considerations brought to the fore by, among other things, this litigation.

4

Second, when, as here, an attorney provides "legal advice relating to business matters," that advice "clearly is" protected by the attorney-client privilege. *Weeks v. Samsung Heavy Indus., Co.*, 1996 U.S. Dist. LEXIS 7397, at *5 (N.D. Ill. May 30, 1996). Recognizing that legal advice rendered to corporate entities frequently relates to business matters, courts have repeatedly held that communications with counsel relating to a business decision are privileged if the decision is "infused with legal concerns" and was reached only after the client sought legal advice. *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997); *see also Satcom Int'l Group PLC v. Orbcomm Int'l Partners*, 1999 U.S. Dist. LEXIS 1553, at *7 (S.D.N.Y. Feb. 16, 1999); *McCarthy v. Phillipine Nat'l Bank*, 1984 U.S. Dist. LEXIS 17927, at *1-2 (S.D.N.Y. Apr. 4, 1984). Indeed, even if business considerations were weighed in the rendering of the legal advice, the privilege is not impaired. *See Coleman v. AmerBroadcasting Cos.*, 106 F.R.D. 201, 206 (D.D.C. 1985); *Potter v. United States*, 2002 U.S. Dist. LEXIS 20031, at *14 (S.D. Cal. July 26, 2002).

The cases cited by plaintiffs are inapposite. *See* Pls. Mem. at 10-13 (citing cases). Each of the cases cited by plaintiffs involved discovery of communications by in-house counsel functioning in a non-legal role. Unlike the in-house counsel in those cases, Mr. Fullerton plays no non-legal role at AstraZeneca. *See* Fullerton Decl. ¶ 9. Furthermore, the particular communications at issue took place in the context of Mr. Fullerton's role as the in-house litigator responsible for handling the government's Zoladex investigation and the various civil AWP litigations. *Id.* ¶10. Thus, it is not surprising that plaintiffs have offered no reasonable basis for their assertion that Mr. Fullerton was "intricately

5

involved in non-legal discussions with non-legal employees and business teams." Pls. Memo. at 13-14.[3]

Third, to the extent that Mr. Freeberry communicated the substance of his privileged discussions with Mr. Fullerton to his team, those communications are protected. *See Weeks*, 1996 U.S. Dist. LEXIS 8554, at *11 ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation."); *see also Johnson v. Sea-Land Serv., Inc.*, 2001 U.S. Dist. LEXIS 11447, at *4 (S.D.N.Y. Aug. 9, 2001).

B.   *Mr. Fullerton's Discussions With Other AstraZeneca Employees Regarding Pricing, Marketing, and Sales of AstraZeneca Products*

Plaintiffs also seek to compel the broader category of Mr. Fullerton's privileged communications with any AstraZeneca employee relating to pricing, marketing, and sales of AstraZeneca's products. *See* Pls. Mem. at 9. As set forth above, legal advice given in relation to business matters is clearly privileged. *See, e.g., Weeks*, 1996 U.S. Dist. LEXIS 7397, at *5.

---

[3] Plaintiffs' suggestion that stylistic differences in the descriptions of documents listed on AstraZeneca's privilege log demonstrate that Mr. Fullerton played a non-legal role at AstraZeneca is puzzling and utterly unpersuasive. *See* Pls. Mem. at 14. Plaintiffs contend that AstraZeneca's differing characterizations of privileged communications as "advice of counsel" and "legal advice of counsel" indicate that AstraZeneca has attempted to assert the attorney-client privilege with respect to non-legal advice rendered by counsel. No communication with respect to which AstraZeneca has asserted the privilege relates to non-legal advice. AstraZeneca's privilege log contains hundreds of entries made by different attorneys, each of whom chose to phrase subject matter descriptions slightly differently. Clearly, both the terms "legal advice" and "advice of counsel" describe legal advice in a manner adequate to assert the privilege.

Mr. Fullerton's declaration makes clear that any communications that have taken place between himself and members of business or functional teams at AstraZeneca occurred "in relation to a specific claim or investigation, or in anticipation of the same." Fullerton Decl. ¶ 9. That declaration further clarifies that Mr. Fullerton's communications at issue in this motion "took place in the context of providing guidance and legal advice to [AstraZeneca] concerning the government investigation or the AWP litigation." Fullerton Decl. ¶ 10. Accordingly, these communications are protected by the attorney-client privilege.

II. **Fullerton's Communications With Counsel for Other Defendants Are Protected by the Attorney-Client Privilege.**

Plaintiffs also seek to compel discovery of communications and documents relating to discussions between Mr. Fullerton and representatives of other pharmaceutical manufacturers relating to "the pricing, sales, and marketing of pharmaceuticals and/or any government investigation with respect thereto."

As counsel for AstraZeneca has represented to plaintiffs, all such communications between Mr. Fullerton and representatives of other pharmaceutical manufacturers have occurred in the course of defending the present litigation and were made pursuant to a joint defense agreement. *See* Ex. 7 to Wexler Decl. Further, Mr. Fullerton's declaration states that "[a]ny discussions relating to AWP or pricing [Mr. Fullerton has] had took place in the context of defending [AstraZeneca] in the nationwide AWP litigation and were made pursuant to a joint defense agreement specifically protecting the communications as joint defense communications." Fullerton Decl. ¶ 11. The purpose of

such communications was to further the joint defense of AstraZeneca and the other
manufacturers.  *See id.*

In other words, the underlying documents and communications at issue are
privileged, and the fact that Mr. Fullerton may have had discussions with counsel for
other defendants does not effect a waiver of that privilege because such communications
were made pursuant to a joint defense agreement and in furtherance of the joint defense
effort.  *See, e.g.*, *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002); *Ken's
Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002).

III.  **All Responsive External Presentations Have Been Produced**

As noted above, in response to plaintiffs' Document Request Eight, AstraZeneca
searched for and produced all external presentations in Stuart Fullerton's possession.  *See
supra* n.2.  These presentations were produced to plaintiffs on January 22, 2005, more
than a week before plaintiffs filed their motion to compel.  AstraZeneca has never
asserted that such presentations are privileged.

IV.  **The Crime-Fraud Exception to the Attorney-Client Privilege Does Not Apply
to Fullerton's Communications**

Plaintiffs assert that, even if the communications at issue are privileged, they are
discoverable pursuant to the crime-fraud exception to the privilege.  Despite the
seriousness of this argument, plaintiffs fail to provide any support for their allegation that
Mr. Fullerton facilitated or concealed a crime or fraud by AstraZeneca, or even that a
crime or fraud occurred.

The party invoking the crime-fraud exception to the attorney-client privilege bears
the burden of making a prima facie case (1) that the client was engaged in (or was

8

planning) criminal or fraudulent activity when the attorney-client communications took

place; and (2) that the communications were intended by the client to facilitate or conceal

the criminal or fraudulent activity. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 151 (D.

Mass. 2004) (quoting *In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 75 (1st Cir.

1999)).  As the attorney-client privilege is "highly-valued," *In re Keeper of the Records*

*(Grand Jury Subpoena Addressed to XYZ Corporation)*, 348 F.3d 16, 22 (1st Cir. 2003),

the evidence required by the Supreme Court for the crime-fraud exception to apply is

"something to give colour to the charge … that has some foundation in fact." *In re*

*Grand Jury Proceedings (Violette)*, 183 F.3d 71 (1st Cir. 1999) (quoting *Clark v. United*

*States,* 289 U.S. 1 (1933)).  Accordingly, the attorney-client privilege is only forfeited on

a showing that "the client sought the services of the lawyer to enable or aid the client to

commit what the client knew or reasonably should have known to be a crime or a fraud."

*In re Grand Jury Subpoena*, 220 F.R.D. at 151 (quoting *United States v. Rakes*, 136 F.3d

1, 4  (1st Cir. 1998)).  Unless the party seeking to undo the privilege can demonstrate that

the client had "actual or constructive intent to engage in wrongful activity," the crime-

fraud exception does not apply, and attorney-client communications remain protected.

*Id.*

Here, plaintiffs have failed to satisfy either of the two tests necessary to invoke

the crime-fraud exception.  Instead, they make vague and conclusory allegations that Mr.

Fullerton was involved in "conduct that goes straight to the heart of the alleged fraud

perpetrated by AZ."  Pls. Mem. at 21.  Such allegations are a far cry from "something to

give colour to the charge … that has some foundation in fact."  Indeed, of the many

documents on AstraZeneca's privilege log pertaining to legal advice from Mr. Fullerton,

9

plaintiffs do not point to a single one that they believe falls into the crime-fraud exception.  Plaintiffs' conclusory argument that, "[t]o the extent that Fullerton, as in-house counsel for AZ, was involved in or relied upon by AZ in perpetrating this fraudulent conduct, whether by advising the company to change its reporting of AWPs to publishers or with respect to any aspect of the pricing, marketing and sales of AWPIDS, the crime-fraud exception applies," Pls. Memo at 21, simply does not amount to a prima facie showing that (i) a crime or a fraud was committed, (ii) the client intended to commit a crime or fraud, or (iii) the client sought the advice of his attorney to further any crime or fraud.

While plaintiffs assert that "evidence" of fraud is laid out in Plaintiff's Memorandum in Support of Class Certification and in Plaintiffs' Reply to AstraZeneca Pharmaceuticals LP's Individual Memorandum in Opposition to Motion for Class Certification, plaintiffs fail to explain how the documents cited in those briefs constitute evidence of fraud.  More importantly, plaintiffs fail to explain how the referenced documents could be interpreted as evidence that Mr. Fullerton's advice was relied upon to further or conceal a fraud, especially since Mr. Fullerton's name appears nowhere in those documents. *See* Pls. Memo. at 21 n.12.

As for Mr. Fullerton's communications with Mr. Freeberry, plaintiffs also provide no basis for asserting that the communications were intended to facilitate or conceal any criminal or fraudulent activity.  AstraZeneca's decision to stop including AWPs on its pricing communications does not in any way constitute a crime or fraud.  Indeed, plaintiffs' argument to the contrary is illogical given that the legal advice at issue relates to the *cessation* of AWP "reporting," as plaintiffs characterize it, when the basis of

10

plaintiffs' fraud allegations is the "reporting" of AWPs.[4]  Plaintiffs also fail to establish

that AstraZeneca intended that its communications (through Mr. Freeberry) with Mr.

Fullerton facilitate or conceal a crime or fraud.  *In re Grand Jury Subpoena*, 220 F.R.D.

130 at 151 (quoting *In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 75 (1st Cir.

1999)).  Despite the fact that plaintiffs have deposed Mr. Freeberry, they neglect to cite

any evidence that Mr. Freeberry was even aware, at the time of his communications with

Mr. Fullerton, that his actions regarding drug pricing could constitute a fraud, much less

that he had the affirmative intent to commit a fraud or violate any law.  In fact, in all

discovery taken to date, there has been no evidence that any AstraZeneca employee ever

had any intent to engage in fraud or to commit a crime.

Plaintiffs also claim that the crime-fraud exception entitles them to the discovery

of Mr. Fullerton's work product.  Plaintiffs concede that application of the crime-fraud

exception to protected attorney work product requires an evaluation of the *attorney's*

state of mind.  *See In re Grand Jury Subpoena*, 220 F.R.D. 130, 152 (D. Mass. 2004)

("[H]owever guilty the client may have been, an innocent attorney can still invoke the

work product doctrine.").  Here, plaintiffs have made no factual showing that Mr.

Fullerton had any intent to engage in, facilitate, or conceal a crime or fraud.  Thus, there

is no basis for disclosure of Mr. Fullerton's work product.

---

[4] The record is clear that AstraZeneca suggested AWPs to First Data Bank based upon the new
WAC prices for its products and the AWP markups which First Data Bank had established for
AstraZeneca's products. Freeberry Dep. at 109-11 ("Q: How was the suggested AWP determined that
would be reflected on the spreadsheets? A: It's based on the markup that First DataBank uses for our
brands."); Ex. 5 to Pls. Reply (at the launch of Atacand HCT, AstraZeneca sent the publications a price list
containing the WAC price and "suggested list price").  The evidence cited by plaintiffs does not support
their allegation that AstraZeneca set this spread.

Instead of presenting facts to justify piercing the attorney-client and work product privileges, plaintiffs, as a last resort, urge the court to conduct an *in camera* review of AstraZeneca's documents. But a "factual basis" for conducting the review must be evident before *in camera* review is permitted. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.") (internal quotations and citations omitted). Plaintiffs have failed to present a single fact warranting *in camera* review. Instead, they rely on speculative and conclusory allegations that, on their face, lack criminal or fraudulent character.

Plaintiffs' speculative and conclusory allegations are insufficient to substantiate their inflammatory argument that the crime-fraud exception applies to Mr. Fullerton's privileged communications. Courts have repeatedly held that such unsupported allegations provide no basis for the evisceration of the attorney-client or attorney work product privileges.

V. **AstraZeneca's Defenses Do Not Effect a
Waiver of the Attorney-Client Privilege
Of Communications With Stuart Fullerton**

In a last-ditch effort to gain access to clearly privileged communications, plaintiffs argue that certain affirmative defenses asserted by AstraZeneca put Mr. Fullerton's legal advice at issue and, therefore, effect a waiver of the attorney-client privilege. Plaintiffs make this argument despite the fact that AstraZeneca has *not* asserted an advice of counsel defense with respect to Mr. Fullerton's counsel, and despite

12

the fact that they have failed to identify a single piece of advice rendered by Mr. Fullerton allegedly relied upon by AstraZeneca as a defense in this litigation.

In considering a claim of waiver of the attorney-client privilege, a court begins with a presumption in favor of preserving the privilege. *See Sorenson v. H&R Block, Inc.*, 197 F.R.D. 206, 207 (D. Mass. 2000) (quoting *Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir. 1988)). Because privileged communications are to be "zealously protected . . . the burden is particularly high on one seeking to pierce the attorney-client privilege." *Standard Chartered Bank v. Ayala Int'l Holdings (U.S.), Inc.*, 111 F.R.D. 76, 84-85 (S.D.N.Y. 1986) (quotation omitted).  In order to find that a party has waived the privilege with respect to communications with its attorneys by putting the advice contained in those communications at issue, a court must find that "the attorney-client relationship was itself relied upon, in some fashion, affirmatively to support the asserting party's claims [or defenses], or [that] there was evidence that the attorneys themselves independently took actions or made decisions relevant to the case." *Paramount Communs. v. Donaghy*, 858 F. Supp. 391, 397 (S.D.N.Y. 1994).

Plaintiffs have failed to satisfy their "particularly high" burden in this case.  First, AstraZeneca has not asserted an advice of counsel defense with respect to Mr. Fullerton; thus, the situation at hand is distinguishable from cases where an "advice of counsel" defense is asserted, placing that advice "squarely in issue."[5]  *See In re Keeper of the*

_____

[5] Plaintiffs' suggestion that AstraZeneca's Ninth Defense, which states that "[a]ny and all actions taken by AstraZeneca with respect to any of the matters alleged in the AMCC were taken in good faith and in accordance with established industry practice," effects a waiver with respect to Mr. Fullerton's privileged communications is without any basis.  This defense relates in no way to advice rendered by Mr.

13

*Records of XYZ Corp v. United States*, 348 F.3d 16, 24 (1st Cir. 2003).  Indeed, none of

the affirmative defenses AstraZeneca has asserted relates in any way to advice rendered

by Mr. Fullerton.[6]  Thus, plaintiffs have failed to demonstrate that Mr. Fullerton's legal

advice to AstraZeneca was "relied upon, in some fashion, affirmatively to support" any

of its defenses.  Second, plaintiffs have pointed to no independent action by Mr. Fullerton

that is relevant to the case, nor could they, because Mr. Fullerton's involvement in the

matters at issue in this litigation began only after the government investigation and civil

litigations concerning AWP commenced, and have been limited to the provision of legal

advice.  Contrary to plaintiffs' theory, providing legal advice to business people who

subsequently take action is not the same as an attorney taking independent action, and it

cannot be the basis for waiver of the attorney-client privilege that attaches to such advice.

Under plaintiffs' theory, any legal advice that informs an action taken by a client would

never be protected by the attorney-client privilege, which is clearly not the case.[7]

---

Fullerton, who played no role with respect to the alleged conduct of AstraZeneca that forms the basis of the claims outlined in AMCC.

[6] The relevant defenses identified by plaintiffs are the following: Ninth Defense ("Any and all actions taken by AstraZeneca with respect to any of the matters alleged in the AMCC were taken in good faith and in accordance with established industry practice."); Fourteenth Defense ("Plaintiffs and the putative class seek to impose liability retroactively for conduct that was not actionable at the time it occurred."); Eighteenth Defense ("AstraZeneca had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading."); Thirty-seventh Defense ("Any alleged restraints complained of in the AMCC are ancillary to legitimate, procompetitive activity."); Thirty-eighth Defense ("AstraZeneca's conduct was not intended to have, did not have and was not likely to have had any adverse effects on competition in any relevant market."); Forty-eighth Defense ("Plaintiffs' and the putative class' claims are barred in whole or in part, because any injuries sustained by Plaintiffs or the putative class were the result of intervening or superceding conduct of third parties.").  *See* Pls. Mem. at 22.

[7] Furthermore, as plaintiffs recognize, "[a] waiver . . . is not automatic, but . . . subject to a balancing test" that takes into account the relevancy of the materials sought, the availability of other sources for the information, and whether the presumptively valid interest in maintaining the confidentiality of the communications outweighs any need for disclosure.  *FDIC v. R.W. Beck*, 2004 U.S. Dist. LEXIS 12128, at *3-4 (D. Mass. July 1, 2004).  Waiver of the privilege "should be found only when the benefit to

In contrast to the cases cited by plaintiffs, this is not a case where defendants will use the privilege to "disclose some selected communications for self-serving purposes," allowing "the attorney-client privilege to be used as both a sword and a shield, resulting in fundamental unfairness." *Weizmann Inst. of Sci. v. Neschis*, 2004 U.S. Dist. LEXIS 4254, at *10 (S.D.N.Y. Mar. 16, 2004) (citation omitted).  To the contrary, AstraZeneca seeks only to protect its privileged communications with Mr. Fullerton, and not to use them affirmatively in its defense.

---

be gained from disclosure outweighs the resulting injury to the attorney-client relationship." *Ayala*, 111 F.R.D. at 85 (citation omitted).

Even if AstraZeneca had asserted an advice of counsel defense, waiver should not be found where, as here, AstraZeneca's presumptively valid interest in preserving the confidentiality of its privileged communications outweighs any need for disclosure.  AstraZeneca's ability to defend itself should not require sacrificing its attorney-client privilege.  As the court noted in *Ayala*, addressing the question of whether a defendant impliedly waived attorney-client privilege by voluntary assertion of counterclaims:

> given that the counterclaims would most likely be viewed as compulsory, the "voluntariness" of asserting the counterclaims is questionable.  To hold that a waiver has been effected in such circumstances could give plaintiffs who are skillful at pleading their own claims the ability to force defendants to choose between voiding the privilege or never bringing a valid claim.

*Ayala*, 111 F.R.D. at 81 n.2.  The same reasoning applies here.  It would be unreasonable to force AstraZeneca to choose between not raising defenses of the type asserted here – defenses which do not place communications with Mr. Fullerton at issue – or sacrificing its attorney-client privilege.  *See id.* at 81-82 (holding that defendant did not impliedly waive privilege with assertion of counterclaims because the protected information was not placed in issue and was not vital to plaintiffs' case).

## CONCLUSION

For the reasons stated above, AstraZeneca respectfully requests the Court to deny

Plaintiffs' Motion to Compel and to grant its Cross-Motion for a Protective Order

prohibiting plaintiffs from taking the deposition of Mr. Fullerton and finding that the

communications at issue are privileged.


Dated:   Boston, Massachusetts
         February 24, 2005

                              Respectfully Submitted,


                              By:    /s/ Jessica V. Barnett
                                    Nicholas C. Theodorou (BBO # 496730)
                                    Jessica V. Barnett (BBO # 650535)
                                    FOLEY HOAG LLP
                                    155 Seaport Blvd.
                                    Boston, Massachusetts 02210
                                    Tel: (617) 832-1000

                                    D. Scott Wise
                                    Michael Flynn
                                    Florence Crisp
                                    DAVIS POLK & WARDWELL
                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Tel: (212) 450-4000

                                    Attorneys for AstraZeneca
                                    Pharmaceuticals LP

16

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on February 24, 2005, a copy to Verilaw Technologies for posting and notification to all parties.

_____/s/ Jessica V. Barnett_____
Jessica V. Barnett

17