# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | CIVIL ACTION: 01-CV-12257-PBS |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | Judge Patti B. Saris |
| ALL ACTIONS ) | |
| ) | |
| ) | |
| ) | |

## B. BRAUN MEDICAL INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

## INTRODUCTION

Nearly two years after this Court dismissed all claims brought against B. Braun Medical Inc. ("B. Braun Medical" or "BBM") in the plaintiffs' Master Consolidated Class Action Complaint ("MCC"), the plaintiffs have tried to draw back BBM into this litigation. But in their zeal to pull BBM back into this proceeding, the plaintiffs have overlooked the fact that their latest pleading, which they call the Second Amended Master Consolidated Class Action Complaint ("SAMCC"), fails to state a claim against BBM based on either a federal question or diversity of citizenship. Thus, the Court lacks subject matter jurisdiction over the plaintiffs' claims against BBM.[1]

Count II of the SAMCC is the only claim asserted against BBM that purports to establish jurisdiction based upon a federal question. However, this RICO claim – which is premised entirely on the existence of alleged "enterprises" between BBM and four named pharmacy benefit managers ("PBMs") – fails because BBM has had no contracts or relationships with any PBM relating to any of the BBM drugs referenced in the SAMCC. This simple, indisputable fact disposes of plaintiffs' PBM-based RICO claim for three separate reasons:

- ***First,*** plaintiffs have not alleged – and cannot establish – causation and injury-in-fact. Entirely missing from the SAMCC is any allegation that any plaintiff actually bought a B. Braun Medical drug through a contract or relationship with a PBM. Because this allegation is missing, the plaintiffs' federal RICO claim must be dismissed under Fed.R.Civ.P. 12(b)(6).

- ***Second,*** the alleged "Braun Manufacturer-PBM Enterprises" are a fiction. BBM has not had any contracts or relationships with any PBM relating to any of the

---

[1] For purposes of preserving its arguments for appeal, BBM hereby incorporates and reasserts the arguments this Court previously denied in BBM's and other defendants' motions to dismiss the Master Consolidated Class Action Complaint and in B. Braun of America Inc.'s and other defendants' motions to dismiss the Amended Master Consolidated Class Action Complaint.

Unless otherwise noted, all emphasis is added and internal citations and quotation marks are omitted.

BBM drugs referenced in the SAMCC. Because the existence of a "RICO enterprise" is a prerequisite to federal court jurisdiction, and there is no "Braun Manufacturer-PBM Enterprise," the plaintiffs' federal RICO claim must be dismissed under Fed.R.Civ.P. 12(b)(1).

- *Third*, plaintiffs are estopped from asserting a RICO claim against BBM because they have limited the scope of their RICO claim to *self-administered* drugs that are covered by PBM contracts. The BBM drugs referenced in the SAMCC are, as the plaintiffs admit, *physician-administered* drugs covered by Medicare Part B, which fall outside the scope of plaintiffs' federal RICO claim.

Because the only claim based upon a federal question fails as a matter of law, there must be an independent basis for subject matter jurisdiction for this Court to entertain any of the other claims asserted against B. Braun Medical. The SAMCC only asserts three other claims against BBM: (i) Declaratory Judgment (Count III); (ii) violations of *state* consumer protection statutes (Count IV); and (iii) *state* common-law civil conspiracy (Count IX). None of these claims gives the Court independent subject matter jurisdiction.[2]

*First*, the Declaratory Judgment Act does not provide an independent basis for federal subject matter jurisdiction. *See National Bank of Fairhaven v. United States*, 660 F. Supp. 125, 129 (D. Mass. 1987) ("Declaratory Judgment Act is not independent source of jurisdiction.").

*Second*, there is no diversity jurisdiction over plaintiffs' *state* consumer protection claims, because complete diversity of citizenship is lacking between all the plaintiffs and BBM, and the amount in controversy requirement has not been met. Indeed, three plaintiffs – the THWF, PFTHW, and CCJ – are domiciled in B. Braun Medical's home state of Pennsylvania. *See* SAMCC ¶¶ 27, 30, 36, 68.

---

[2] Counts V-VIII and Count X are expressly limited to defendant "Together Rx" and thus not applicable to BBM. *See* SAMCC ¶¶ 131, 692-725, 734-41. In addition, on February 24, 2004, this Court dismissed Count I of the Complaint – alleging RICO enterprise between drug manufacturers and *publishers* in violation of 28 U.S.C. § 1962(c). *See* Mem. & Order of Feb. 24, 2004 at 8-11.

*Third*, plaintiffs' *state* civil conspiracy claim fails, because the *sole* class representative for this claim – CMHV – has not alleged that it purchased *any* BBM drug and thus has no claim against BBM.  *See id.* ¶ 727.  The civil conspiracy claim also fails because the amount in controversy threshold is not satisfied and because, like the RICO claim, it too is falsely premised on the existence of a conspiracy between BBM and the four named PBMs.

Thus, as the following chart shows, plaintiffs have failed to properly assert any basis to support this Court's subject matter jurisdiction for claims against BBM:

| Count | Nature of Claim | Reason For Lack of Jurisdiction |
|---|---|---|
| I. | RICO (Publisher-Based Enterprise) | **Previously Dismissed** |
| II. | RICO (PBM-Based Enterprise) | **No Allegation of Injury or Causation**<br><br>**No BBM-PBM Contract or Relationship**<br><br>**Estopped From Asserting Against BBM** |
| III. | Declaratory Judgment | **Not an Independent Basis for Federal Court Jurisdiction** |
| IV. | State Consumer Protection Statutes | **No Diversity** |
| V. | Together RX Antitrust Conspiracy | BBM Not a Defendant |
| VI. | Together RX Antitrust Conspiracy | BBM Not a Defendant |
| VII. | Together RX Antitrust Conspiracy | BBM Not a Defendant |
| VIII. | Together RX RICO Enterprise | BBM Not a Defendant |
| IX. | State Civil Conspiracy Claim (PBM-Based) | **No Purchase of BBM Drug Alleged By Sole Named Plaintiff**<br><br>**Insufficient Amount in Controversy**<br><br>**No BBM-PBM  Contract or Relationship** |
| X. | State Civil Conspiracy (Together RX-based) | BBM Not a Defendant |

Accordingly, the claims against BBM must be dismissed.

## CORE FACTS

BBM was initially dragged into this MDL proceeding in September 2002, when it was named a defendant in the MCC, along with twenty-five other manufacturers, for allegedly

3

inflating AWPs in connection with Medicare Part B reimbursement.  BBM successfully moved to dismiss all claims made against it in the MCC, because plaintiffs failed to adequately allege a RICO enterprise (between BBM and the publishers of AWP information) and because BBM's products were multi-source drugs, whose Medicare Part B reimbursement rates were not influenced by individual AWPs (and thus failed to fit the alleged paradigm).  After BBM was dismissed, plaintiffs amended their complaint, dropping BBM as a party and adding (without leave of Court) B. Braun of America Inc. – a party over which this Court lacked personal jurisdiction and which had not manufactured or sold any of the BBM drugs referenced in the AMCC.  On February 4, 2005, this Court dismissed all claims against B. Braun of America, but allowed plaintiffs to file their SAMCC asserting another round of claims against BBM.

In their latest complaint, the plaintiffs allege that BBM is "in the business of manufacturing and distributing prescription pharmaceuticals for distribution by *Medicare Plan* [sic] *B providers*."  SAMCC ¶ 69.  The SAMCC identifies six BBM drugs as "intravenous solutions" covered by Medicare Part B that are the subject of plaintiffs' claims against BBM. SAMCC ¶¶ 70, 314 & Appendix A.  In asserting these claims against BBM, the SAMCC alleges that plaintiffs have been injured because they have been billed for and paid charges for these Medicare Part B drugs based on allegedly inflated AWPs.  *See, e.g.*, SAMCC ¶¶ 26-36.

The SAMCC posits two alleged mechanisms that causally link published AWP information to the prices that the plaintiffs paid.  *First*, plaintiffs allege a Medicare Part B-based scheme, which covers *physician-administered* drugs, including "injectables administered directly by a doctor."  *Id.* ¶ 144.  In this scheme, the doctor (or healthcare provider) "who purchased these drugs at a low cost would bill patients and their insurers at the inflated AWPs," thereby allegedly profiting from the spread.  *Id.* ¶ 161.

4

*Second*, for *self-administered drugs* purchased through a pharmacy (*e.g.*, pills, ointments, etc.), a different mechanism is required, since the physicians do not administer, purchase, or charge for these types of drugs.  Rather, plaintiffs' alternative theory is that the PBM enters into contractual relationships using inflated AWP prices and "pockets a 'spread' or differential between charges paid to pharmacies and collected from clients."  SAMCC ¶ 171. There is *no* allegation, however, that any physician-administered drug is the subject of plaintiffs' PBM-related claims.

To be clear, the SAMCC alleges that health plans "contract" with PBMs so that their "health plan's participants," *not doctors*, "can obtain ... drugs from pharmacies or, via mail order, *directly* from the PBMs."  SAMCC ¶ 169.  The SAMCC further alleges that PBMs carry out their function by entering into contracts with "*retail pharmacies*," not doctors' offices. *Id.* ¶ 174.  These allegations make clear that the PBM contracts being challenged involve self-administered, not physician-administered, drugs.  Not surprisingly, therefore, none of the plaintiffs alleges that it purchased *any* physician-administered drug through any PBM contract.

More importantly here, there is no allegation that any plaintiff purchased a BBM drug through any contract with a PBM.  Indeed, BBM has *never* had any contracts or relationships with any PBM relating to any of the BBM drugs referenced in the SAMCC.  *See* Decl. of Timothy Richards, ¶ 4 (Exhibit A).[3]

---

[3] Although not necessary for deciding this motion, the Richards declaration may be appropriately considered by the Court. "The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion. While the Court generally may not consider matters outside of the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). Moreover, under Rule 12(b)(1), "the court enjoys broad authority to ... consider extrinsic evidence ... in order to determine its own jurisdiction." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Only four named plaintiffs claim to have paid for a B. Braun Medical product – the UFCW, TCBW, THWF, and PFTHW – all of whom have allegedly purchased a sodium chloride solution. *See* SAMCC, Appendix B at 11. None of these plaintiffs has provided any specificity concerning when or through whom the drug was allegedly purchased, or how much they paid for this drug. None has claimed that its alleged payment was made pursuant to a contract or relationship with a PBM. In short, not one plaintiff alleges that it bought a BBM drug based on any PBM contract.

This omission is critical because the existence of a PBM contractual relationship is the necessary predicate for the plaintiffs' only federal claim. Notably, this Court previously has expressly dismissed all of plaintiffs' *non-PBM–related* RICO claims, when it rejected plaintiffs' assertion that a manufacturer-*publisher* enterprise existed. *See* Mem. & Order of Feb. 24, 2004 at 8-11. Such a publisher-based RICO claim would have arguably encompassed Medicare Part B, physician-administered drugs. Without this claim, plaintiffs' sole RICO claim depends on the allegation that PBMs entered into contractual relationships enabling them to "pocket[] secret spreads between actual drug costs and the prices charged to health plans and their members." SAMCC ¶ 654.

But where, as here, BBM has had no contract or relationship with any PBM relating to any of the BBM drugs referenced in the SAMCC, then the plaintiffs' PBM-related RICO claim does not apply against BBM. Tellingly, the plaintiffs previously acknowledged as much in their MCC. In particular, the plaintiffs' MCC asserted that B. Braun Medical was liable *solely* as a seller of Medicare Part B drugs, not as a seller of drugs distributed by PBMs outside of the Medicare Part B system. *See* MCC ¶ 79-81.

Similarly, in their Amended Motion for Class Certification, plaintiffs expressly limited their PBM-based claims (both RICO and civil conspiracy claims) to "self-administered and specialty drugs." *See* Pls.' Amended Mot. for Class Certification, at 4. In doing so, plaintiffs specifically distinguished "physician-administered (Part B and non-Part B) from self-administered drugs" in order to reflect the difference in the causal mechanism. *Id.* at 1. In admitting that the "re-groupings" were necessary to "more closely match the claims process," plaintiffs explained that the physician-administered class "is predicated on the use of inflated AWPs as an incentive to ***physicians***," while the self-administered class relates to "pharmacy drugs where the incentives of the scheme ... are directed toward incentivizing the ***PBMs*** and ***pharmacies*** to move market share." *Id.* at 2. Because the BBM drugs referenced in the SAMCC are physician-administered, and BBM has not entered into any contracts or relationships with any PBM relating to these drugs, B. Braun Medical is simply not a proper target of plaintiffs' remaining PBM-based RICO claim.

## ARGUMENT

Plaintiffs' sole independent basis for federal question jurisdiction is Count II – the PBM-based RICO claim. Because this claim is fatally defective under Rules 12(b)(6) and 12(b)(1), it cannot support this Court's subject matter jurisdiction. Because the remaining claims fail to establish diversity jurisdiction, they too should be dismissed.

## I.    THE PLAINTIFFS' ONLY INDEPENDENT FEDERAL CLAIM (COUNT II) IS FATALLY DEFECTIVE.

Count II of the SAMCC alleges that the defendant drug manufacturers engaged in a criminal enterprise with PBMs "to artificially inflate AWPs" in violation of 18 U.S.C. § 1962(c). SAMCC ¶¶ 647-79. But as to BBM, Count II fails under both Rules 12(b)(6) and 12(b)(1) because BBM has had no contracts or relationships with any PBM relating to any of the BBM

drugs referenced in the SAMCC, and plaintiffs have not alleged that they purchased a BBM product through a PBM contractual relationship.

**A.    Plaintiffs Have Not Alleged – And Cannot Establish – Causation And Injury-In-Fact In Support Of Their RICO Claim.**

It is axiomatic that, in order to state a claim, a plaintiff must allege facts showing that the alleged injury "fairly can be traced to the challenged action." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").[4]   In determining whether plaintiffs have adequately alleged causation and injury under Rule 12(b)(6), this Court need not "assume that plaintiff can prove facts different from those it has alleged." *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1091 n. 13 (C.D.Cal. 2002) (citing *Associated Gen. Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983)).   Nor is the Court required "to don blinders and to ignore commercial reality." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984).

Here, the SAMCC posits two alternative mechanisms by which the allegedly inflated published AWP causes patients and their insurers to overpay for the drugs they purchase: (1) for physician-administered drugs (*e.g.*, intravenous solutions), the **provider** purchases the drug from

---

[4]   Even in the context of a class action, the Court must determine whether the individual named plaintiffs have standing to pursue the asserted claims against the defendants. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  If the named plaintiffs lack standing to sue, the case must be dismissed. *See Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976) ("If none of the named plaintiffs may maintain this action on their own behalf, they may not seek such relief on behalf of a class.").  Standing may not be based upon speculative, hypothetical, or abstract assertions of injury.  *See O'Shea*, 414 U.S at 494.  Instead, to allege standing, "the plaintiff still must allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *United States v. AVX Corp.*, 962 F.2d 108, 114 (1st Cir. 1992) ("A mere interest in an event – no matter how passionate or sincere the interest and no matter how charged with public import the event – will not substitute for an actual injury.").

the manufacturer at discounted prices and then bills patients and their insurers at inflated AWP-based prices, *see* SAMCC ¶ 161, and (2) for self-administered drugs (*e.g.*, pills), the **PBM** enters into contractual relationships based on inflated AWP prices and then "pockets a spread" between charges paid to pharmacies and collected from clients. *See id.* ¶ 171.

While the SAMCC as a whole seeks to cover the waterfront by embracing both forms of causation, Count II is limited to the PBM-based scheme. (This Court previously dismissed Count I, relating to plaintiffs' non-PBM, physician-administered RICO claims.) For this PBM-based scheme to make sense, however, the plaintiff must have purchased the drug at issue through a PBM contractual relationship. Without this core allegation, plaintiffs simply cannot prove causation or injury-in-fact, rendering the claim defective. *Sedima,* 473 U.S. at 496 ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."); *Pujol v. Shearson/American Express*, 829 F.2d 1201, 1205 (1st Cir. 1987) (RICO plaintiff "must show that his injury was caused by the violation.").

At least as to the claims against BBM, this core allegation is missing. There is no allegation that any plaintiff purchased a BBM drug through a PBM contract. Therefore, the plaintiffs have failed to "allege[] facts sufficient to make out a cognizable claim." *Carroll v. Xerox Corp.*, 294 F.3d 231, 241 (1st Cir. 2002). Indeed, plaintiffs' allegations exclude the very possibility that plaintiffs could have been injured as a result of the alleged PBM enterprise. All of the BBM drugs referenced in the SAMCC are physician-administered, "intravenous solutions." SAMCC ¶ 70. Since injury for these types of drugs is premised on the claim "that the ***medical providers*** ... would bill patients and their insurers at the inflated AWPs," plaintiffs'

alleged injury as to BBM drugs does not fit within the alleged PBM paradigm of Count II.  *Id.* ¶ 161.

Thus, this Court should dismiss under Rule 12(b)(6) the PBM-related claims asserted against B. Braun Medical (Counts II and IX).

### B.   The Plaintiffs' Factual Allegations Underlying Count II Are False And Thus Insufficient To Support Subject Matter Jurisdiction.

Apart from the plaintiffs' failure to ***allege*** they purchased a BBM drug through a PBM contract, plaintiffs' claims should be dismissed because, as a factual matter, BBM does not have any contract or relationship with any PBM relating to any BBM drug referenced in the SAMMC. Thus, plaintiffs cannot establish the existence of a RICO enterprise, injury flowing from such an enterprise, or that the enterprise had an effect on interstate commerce.

The existence of a criminal enterprise is an essential predicate to this Court's subject matter jurisdiction under civil RICO.   As the First Circuit has noted, "RICO contains a ***jurisdictional element***" requiring proof that the defendant "participate ... in the conduct of [a RICO] enterprise's affairs."  *United States v. Marino*, 277 F.3d 11, 35 (1st Cir. 2002) (*quoting* 18 U.S.C. § 1962(c)).[5]  The existence of a valid RICO enterprise is a "jurisdictional fact" precisely because this is what distinguishes a RICO fraud claim from state common-law fraud (which does not give rise to federal court subject matter jurisdiction) and federal "mail and wire fraud"

---

[5]  *See also Calvert v. Midwest Restoration Servs., Inc.*, No. 01-5201, 2002 WL 1023659, at *3 (10th Cir. May 22, 2002) (conducting factual inquiry into whether defendant was an "integrated enterprise" for purposes of Title VII's fifteen employee threshold, because it is a "threshold jurisdictional issue that must be resolved under Fed.R.Civ.P. 12(b)(1) rather than under summary judgment").

(which does not give rise to a private right of action).[6]  Thus, the enterprise requirement goes straight to the core of this Court's power to entertain plaintiffs' RICO claim.

Here, although the plaintiffs purport to allege the existence of "Braun Manufacturer-PBM Enterprises," the allegation is wholly conclusory and completely fictional.  The plaintiffs make an identical, similarly conclusory allegation against every other defendant, regardless of whether these other defendants sell self-administered drugs or physician-administered drugs.  No thought was given to explaining – as plaintiffs were later forced to in the context of class certification – how it could be that physician-administered drugs, which are not the subject of plaintiffs' PBM-related claims, could possibly fall within the scope of Count II of the SAMCC.  Indeed, more telling is what the plaintiffs fail to allege regarding BBM.  They fail to identify any contract between B. Braun Medical and any PBM.  They fail to identify a single PBM contract or transaction involving a BBM drug.  And they fail to allege that any PBM was involved in the administration of any BBM drug allegedly purchased by any of the named plaintiffs.

Because plaintiffs' allegations are nothing more than mere "ritualistic averments," they are insufficient to meet their jurisdictional burden.  *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 n. 7 (1st Cir. 1991) (District court's dismissal based on complaint's mere "ritualistic averment" of an enterprise "seems unassailable.").  Indeed, it appears that the "Braun Manufacturer-PBM Enterprises" allegation was made "solely for the purpose of obtaining jurisdiction," and therefore, can be attacked under 12(b)(1).  *See Cowan v. Keystone Emp. Profit Sharing Fund*, 586 F.2d 888, 892 (1st Cir. 1978) (jurisdiction may be denied if the federal claim

---

[6] *See also United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir. 2002) ("RICO criminalizes the furthering of the enterprise, not the predicate acts."); Rep. No. 98-225, at 305, reprinted in 1984 U.S.C.C.A.N. 3182, 3484 ("The need for Federal jurisdiction [over violent acts committed by members of a RICO enterprise] is clear, in view of the Federal Government's strong interest, as recognized in existing statutes, in suppressing the activities of organized criminal enterprises.").

is "immaterial and made solely for the purpose of obtaining jurisdiction" or "is wholly insubstantial and frivolous") (*quoting Bell v. Hood*, 327 U.S. 678, 682-83 (1946)); *cf. Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984) (dismissing claim because it was "hard to ignore the suspicion that the facts have been forced into an antitrust mold to achieve federal jurisdiction.").[7]

In any event, "the plaintiff's jurisdictional averments are entitled to no presumptive weight." *Valentin*, 254 F.3d at 363. Rather, a defendant may contest the Court's subject matter jurisdiction by "controverting the ***accuracy*** (rather than the sufficiency) of the jurisdictional facts asserted." *Id.; see also Skwira v. United States*, 344 F.3d 64 (1st Cir. 2003) (under 12(b)(1), jurisdiction may be challenged by disputing "the predicate facts allegedly giving rise to the court's jurisdiction").[8]

---

[7] *See also Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) (it was "error … to accept mere allegations of complaint," rather, district court should have "looked outside the pleadings" to determine whether antitrust conspiracy had "an intended and substantial effect in the United States" under statute limiting jurisdictional reach of the Sherman Act); *Rivera de Leon v. Maxon Eng'g Servs., Inc.*, 283 F. Supp. 2d 550, 557 (D. P.R. 2003) (dismissing Miller Act claim under Rule 12(b)(1) for lack of subject matter jurisdiction because plaintiff could not establish jurisdictional threshold that "government contract" involved payment of a "bond," a requirement which "is inseparably linked to the statutory remedy").

[8] Nor is the rule that where the predicate jurisdictional facts are inseparable from the elements of the plaintiff's cause of action the court should "assume or find a sufficient basis for jurisdiction," *see Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996), applicable here. That rule applies when the defendants have failed to challenge the accuracy of the complaint, *see id.*, or when a plaintiff has – through the use of extrinsic evidence – established a prima facie case of federal subject matter jurisdiction. *See Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir. 1983) ("Upon reviewing the evidence before the district court, we find that [plaintiffs] met their burden of establishing a prima facie case of … subject matter jurisdiction with the court."); *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 782 (S.D.N.Y. 2005) (in response to Rule 12(b)(1) motion, "plaintiff must present evidence" supporting federal subject matter jurisdiction); *Starlight Intern., Inc. v. Herlihy*, 13 F. Supp. 2d 1178, 1183 (D. Kan. 1998) (plaintiff "advanced competent evidence sufficient to make out a prima facie case of subject-matter jurisdiction.").

The "standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed.R.Civ.P. 56(e)." *Serrano v. 900 5th Ave. Corp.*, 4 F. Supp. 2d 315, 316 (S.D.N.Y. 1998). Although the summary judgment standard applies, the Court's subject matter jurisdiction must be resolved at the outset before further proceedings (*e.g.*, class certification) take place. *See Donahue v. City of Boston*, 304 F.3d 110, 117 (1st Cir. 2002) ("Court must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (holding "Article III jurisdiction is always an antecedent (Continued…)

12

Here, it is indisputable that B. Braun Medical has *never* had any contracts or relationships with any PBM relating to any of the BBM drugs referenced in the SAMCC. *See* Decl. of Timothy Richards, ¶ 4 (Exhibit A). Because the plaintiffs cannot demonstrate the predicate facts supporting jurisdiction under Count II, this claim cannot support a predicate of subject matter jurisdiction.

### C.   The Plaintiffs Are Estopped From Asserting Their RICO Claim Because They Have Limited The Scope Of This Claim To Self-Administered Drugs.

In their Amended Motion for Class Certification, the plaintiffs abandoned their former RICO class definition (a class covering *all* drugs identified in the AMCC), and instead chose to seek certification of a narrower class (under Count II) covering only *self-administered* and *specialty drugs* distributed under a contract with PBMs "expressly us[ing] AWP as a pricing standard." *See* Pls.' Amended Mot. for Class Certification, at 3-4. Thus, the plaintiffs have elected to pursue Count II against only manufacturers of self-administered and specialty drugs. *See id.* at 4 (stating plaintiffs "seek certification of the RICO Subclass" under only Counts II and IX of the AMCC).

The SAMCC, however, does not allege that B. Braun Medical sells any self-administered or specialty drugs. Rather, the BBM drugs referenced in the SAMCC, as the plaintiffs acknowledge, are *physician-administered* "intravenous solutions." *See* SAMCC ¶¶ 69, 144; *see also* Decl. of Timothy Richards, ¶ 3 (Exhibit A). Similarly, the BBM drugs referenced in the SAMCC are multi-source (or generic), non-specialty drugs. *See* SAMCC ¶ 314.

---

question"). Here, the plaintiffs cannot establish a "prima facie" case because BBM lacks PBM relationships and plaintiffs have not even alleged that they purchased a BBM drug through a PBM contract. To the extent this Court disagrees that 12(b)(1) applies, BBM respectfully requests that the Court treat this issue as arising under Fed.R.Civ.P. 12(b)(6) or 56.

Given the plaintiffs' election to pursue Count II only against manufacturers of self-administered and specialty drugs, the plaintiffs are estopped from reasserting Count II – their only claim "arising under" federal law – against BBM. *See Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ("It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position ..."); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) (plaintiff in federal action estopped from contradicting statement in related action; judicial estoppel is employed to prevent a litigant from "playing fast and loose with the courts").

Thus, plaintiffs cannot now claim that Count II encompasses physician-administered drugs, such as the BBM drugs referenced in the SAMCC.

## II. THE PLAINTIFFS' REMAINING CLAIMS DO NOT PROVIDE ANY BASIS FOR SUBJECT MATTER JURISDICTION.

This Court does not have subject matter jurisdiction over the plaintiffs' remaining claims against B. Braun Medical.

*First*, there can be no subject matter jurisdiction based on Count III. Count III seeks a declaratory judgment under 28 U.S.C. § 2201 that B. Braun Medical has engaged in unlawful conduct. *See* SAMCC ¶¶ 680-683. But it is black letter law that "section [2201] does not afford an independent basis for jurisdiction." *O'Dea v. Massachusetts Bd. of Ed.*, 393 F. Supp. 202, 204 (D. Mass. 1975), *aff'd* 527 F.2d 642 (1st Cir. 1975). *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (holding the operation of §2201, and § 2202 is procedural only and "does not extend the jurisdiction of federal courts."); *National Bank of Fairhaven v. United States*, 660 F. Supp. 125, 129 (D. Mass. 1987) ("Declaratory Judgment Act is not independent source of jurisdiction.").

**Second**, there can be no diversity jurisdiction under Count IV.  Count IV alleges violations of various **state** consumer protection statutes.  *See* SAMCC ¶¶ 684-691.  There can be no diversity jurisdiction under Count IV because several plaintiffs are domiciled in Pennsylvania – B. Braun Medical's home state.  *Compare* SAMCC, at ¶ 68 (alleging BBM is a Pennsylvania corporation with its principal place of business in that state) *with* SAMCC, at ¶¶ 27, 30, 36 (identifying three named plaintiffs domiciled in Pennsylvania).

**Third**, there is no diversity jurisdiction under Count IX.  Recognizing the need for "complete diversity," plaintiffs purposefully limited Count IX – the only claim purportedly based on diversity jurisdiction – by claiming that it is brought **solely** by the **CMHV** on behalf of the Class.  *See* SAMCC ¶¶ 22, 727.  But the problem is that the CMHV has never alleged that it purchased a BBM drug.  *See* cases cited, *supra*, at pp. 8-9 & n. 4.  Thus, CMHV does not itself assert any claims against B. Braun Medical, let alone a claim satisfying the minimum amount in controversy threshold.  *See* SAMCC, Appendix B at 11 (identifying "purchases made by plaintiffs of drugs manufactured/distributed by Braun" and indicating CMHV has purchased *no* BBM drugs.)  Therefore, no diversity jurisdiction exists for this claim.  Count IX also independently fails to state a claim for relief because, like Count II, it is limited to self-administered drugs, and does not cover the physician-administered BBM drugs referenced in the SAMCC.

Nor can there be any "supplemental jurisdiction" over the plaintiffs' purely state law claims.  *See, e.g.*, *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ("[I]f the court dismisses for lack of subject matter jurisdiction, it has *no* discretion [under 28 U.S.C. § 1367] and must dismiss all claims."); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("If the court dismisses plaintiff's federal claims pursuant to

[Fed.R.Civ.P.] 12(b)(1) then supplemental jurisdiction can never exist."); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("[D]ismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims"); 16 MOORE'S FEDERAL PRACTICE § 106.66[1] (2nd ed. 1997) ("[I]f the federal claim [is] dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain supplemental claims for adjudication."); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 47 (1st Cir. 1991) ("Because count 1 of the complaint failed adequately to allege the essential elements of a [RICO] claim," it was "properly dismissed as to the appellees. Since federal question jurisdiction hinged on the viability of that count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state-law claims were properly dismissed.").[9]

## CONCLUSION

For the foregoing reasons, B. Braun Medical Inc. respectfully requests that its Motion to Dismiss the SAMCC be granted.

---

[9] Moreover, where a plaintiff's federal claims are dismissed pursuant to Fed.R.Civ.P. 12(b)(6) in advance of trial, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995) (affirming the dismissal state law claims when the district court determined "far in advance of trial that no legitimate federal question existed"); *Olin Corp. v. Fisons PLC*, 47 F. Supp. 2d 151, 155 (D. Mass. 1999) ("[I]t is the settled rule of the First Circuit that when a pendent state claim is joined with a federal cause of action that subsequently drops out of the case, a federal district court should dismiss the pendent state claim.").

Dated: March 21, 2005

Respectfully submitted,

Daniel F. Attridge, P.C.
Colin R. Kass
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200

**_Counsel for B. Braun Medical Inc._**

17