UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION THIS DOCUMENT RELATES TO: ALL ACTIONS | MDL No. 1456 CIVIL ACTION: 01-CV-12257-PBS Judge Patti B. Saris |

**B. BRAUN MEDICAL INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND
AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

In its motion to dismiss the Second Amended Master Consolidated Class Action Complaint ("SAMCC"), B. Braun Medical Inc. ("BBM") sought the dismissal of each of the four counts asserted against it on grounds that the SAMCC fails to state a claim against BBM based on either federal question or diversity-of-citizenship jurisdiction. In response, plaintiffs have conceded that two of the counts – Count II (federal RICO) and Count IX (state civil conspiracy) – are fatally defective and cannot support this Court's subject matter jurisdiction. Specifically, plaintiffs have admitted that Count IX "should be dismissed with regard to BBM." Pls.' Opp. at 1 n.1. Similarly, acknowledging that they "do not dispute" that the BBM drugs referenced in the SAMCC are all "physician-administered," plaintiffs have not challenged BBM's argument that Count II fails as a matter of law because BBM has had no contracts or relationships with any pharmacy benefit managers relating to any of those drugs. *Id.* at 1. Accordingly, it is undisputed that Counts II and IX should be dismissed as to BBM.

As to the remaining two counts of the SAMCC asserted against BBM, plaintiffs do not dispute that this Court lacks both federal question jurisdiction and traditional diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332(a) . Instead, in a last-ditch effort to salvage some part of their suit against BBM, plaintiffs argue that this Court should, *sua sponte*, assume subject matter jurisdiction over their declaratory judgment claim (Count III) and state law consumer protection claim (Count IV) based on the newly-enacted Class Action Fairness Act ("CAFA"). But this strategy, borne out of litigation desperation, cannot succeed. The CAFA plainly ***applies only to actions commenced on or after February 18, 2005*** -- not to long-pending cases like this one, which was commenced against BBM several years before the effective date of the CAFA. And in any event, the plaintiffs cannot satisfy the CAFA's $5 million amount-in-controversy threshold as to BBM. Thus, the CAFA does not provide the subject matter jurisdiction that the plaintiffs need to bring any claims against BBM. As such, the remaining two counts against BBM should also be dismissed.[1]

## I.   THE CAFA DOES NOT APPLY TO THIS LONG-PENDING CASE

The CAFA, by its own terms, does not apply to actions, like this one, that were "commenced" prior to February 18, 2005. *See* 28 U.S.C.A. § 1332; *see also* PL 109-2, § 9, Feb. 18, 2005, 119 Stat. 14 ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act."). Indeed, Judge Krieger in Colorado, after analyzing this provision and its legislative history in detail, has ruled that it is "clear that supporters and opponents of the bill in both houses understood that the Act would ***not apply to***

---

[1]   Notably, as BBM showed in its opening memorandum (BBM Mem. at 14) and as plaintiffs have conceded (Pls.' Opp. at 2 n.2), the Declaratory Judgment Act does not provide an independent basis for this Court's exercise of subject matter jurisdiction. Thus, it is clear that this Court has no subject matter jurisdiction over Count III unless the plaintiffs can establish that this Court has jurisdiction over Count IV (state consumer protection) under the CAFA. This they cannot do.

*pending cases.*" *Pritchett v. Office Depot, Inc.,* --- F. Supp. 2d ----, 2005 WL 563979, at *3 (D. Colo. Mar. 9, 2005).[2]

Here, the plaintiffs began this litigation in this Court by filing their complaint in *Citizens for Consumer Justice v. Abbott Laboratories,* Civ. No. 01-12257, in December 2001. Following the April 30, 2002 Order by the Judicial Panel on Multidistrict Litigation consolidating this and other related cases as MDL No. 1456, this Court ordered the plaintiffs to file a consolidated complaint. On September 6, 2002, plaintiffs filed their Master Consolidated Class Action Complaint ("MCC"), which brought BBM into this litigation as a defendant for the first time.[3]

Thus, as to BBM, this action commenced no later than September 6, 2002, which is well before the CAFA's effective date of February 18, 2005. Recognizing that the CAFA applies only to newly-filed cases, plaintiffs improperly take solace in the fact that they filed their *second amended* complaint on February 24, 2005. But plaintiffs cite no case supporting their assertion that the mere filing of an *amended* complaint against the same defendant "commences" a civil action.[4]

---

[2] Unless otherwise noted, all emphasis is added, and internal citations and quotation marks are omitted.

[3] On May 13, 2003, this Court dismissed BBM from the MCC as a defendant because, among other reasons, the plaintiffs failed to adequately allege a RICO enterprise and BBM's sale of multi-source drugs in the Medicare Part B context failed to fit the alleged paradigm. Plaintiffs then filed their Amended Master Consolidated Class Action Complaint ("AMCC"), not against BBM but its parent, B. Braun of America Inc. ("BBA"). On February 4, 2005, this Court granted BBA's motion to dismiss for lack of personal jurisdiction, but allowed the plaintiffs to add BBM back into this litigation as a defendant. Plaintiffs filed their SAMCC re-adding BBM as a defendant on February 24, 2005.

[4] Plaintiffs misleadingly cite to 28 U.S.C. § 1332(d)(7) for the proposition that a court may look to the service date of an amended complaint in determining when an action commences. But this provision does not purport to define when a civil action against a defendant commences. Nor does it purport to construe the entirely separate provision concerning the effective date of the Act. Indeed, nothing in § 1332(d)(7) speaks to whether the CAFA should be given retroactive effect in cases that were initiated prior to the enactment of the CAFA. Instead, this provision merely makes it clear that a court should look to the operative complaint – not an outmoded complaint – in determining the citizenship of the proposed class members.

3

Under well-settled federal law, cases are commenced when the *initial* complaint is filed, not when plaintiffs choose (or are forced) to amend their complaint. *See* Fed.R.Civ.P. 3 ("[a] civil action is commenced by filing a complaint with the court"); *see also Pritchett*, 2005 WL 563979, at *3 (looking to Fed.R.Civ.P. 3 in defining "commenced" for purposes of the CAFA; "the most common definition of [the] word 'commenced' refers to the *beginning of an undertaking*. This is the manner in which Fed.R.Civ.P. 3 uses the word, defining that 'a civil action is commenced by filing of a complaint with the court.'"); *Republic of Turkey v. Cent. Chem. Corp.*, 24 F.R.D. 132, 134 (D. Md. 1959) (rejecting argument that amended complaint governs diversity jurisdiction because the "amended complaint in the instant case does not set up an entirely new and distinct cause of action").[5]

Significantly, plaintiffs' argument is remarkably similar to the one rejected by Judge Coar in *Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1061-64 (N.D. Ill. 1995). In that case, the *NOW* plaintiffs initially filed suit against multiple defendants in 1986. In 1989, they added Vital-Med as a defendant, alleging both federal and state law claims. In 1995, the federal claims against Vital-Med were dismissed. The *NOW* plaintiffs argued that the court should exercise supplemental jurisdiction over their state claims against Vital-Med, despite the fact that the specific jurisdictional provision on which they relied, 28 U.S.C. §1367, by its terms applied only to civil actions commenced on or after December 1, 1990 (the date the provision was enacted). The *NOW* court rejected plaintiffs' argument that the date of the third amended

---

[5] Plaintiffs argue that "the SAMCC claims against BBM should be treated as a new complaint to which the CAFA amendments apply." Pls.' Opp. at 3. But this is exactly the opposite of the position plaintiffs took earlier. Previously, plaintiffs asserted that the allegations against BBM "relate back" to the initial MCC and AMCC because "the AMCC allegations against BBA are substantially similar to the MCC allegations against BBM," "the closely intertwined relationship between BBA and BBM, and the fact that BBM was named in the MCC." *See* Pls.' Mot. to Add B. Braun Medical Inc. as a Defendant at 2-3 (*citing* Fed.R.Civ.P. 15(c)(3) and collecting cases). Thus, plaintiffs' own litigation admissions establish that the SAMCC "does not set up an entirely new and distinct cause of action," *see Republic of Turkey*, 24 F.R.D. at 134, and therefore, the action must be deemed to have commenced prior to the enactment of the CAFA.

complaint – 1995 – governed. Instead, Judge Coar ruled that the action commenced prior to 1990, and thus, the court lacked subject matter jurisdiction. *See also Wallace v. Sys. & Computer Tech. Corp.*, 1997 WL 602808, at *1 & n.2 (E.D. Pa. 1997) (concluding that Private Securities Litigation Reform Act of 1995 did not apply where initial complaint was filed in October 1995 (2 months prior to the Act's effective date), even though the operative amended complaint was filed in 1996, since – as here – the Act expressly "does not apply to actions commenced before, and pending on, the date of the enactment of the Act").

Any contrary interpretation of the CAFA would make no sense. Under the plaintiffs' view, jurisdiction in federal court under the CAFA could be readily manufactured in virtually every class action no matter how long ago filed simply by filing an amended complaint. Any class action plaintiffs who became dissatisfied with their lot in state court would merely amend their complaint in order to **"re-commence"** the case in federal court. As Judge Krieger prudently observed, this "reading [of] the statute ... would have undesirable and unintended consequences" because it would permit federal jurisdiction in "nearly every presently-pending class action..., resulting in a sudden tidal wave of filings on an already burdened federal judiciary, rather than the gradual, incremental flow of newly-filed class actions that would result from a ***purely prospective application*** of the Act." *Pritchett*, 2005 WL 563979, at *4 (rejecting argument that CAFA would permit removal of pending state cases even though such actions would be "commenced" in federal court after the CAFA's enactment).

This Court should reject plaintiffs' argument that the CAFA applies to this case. By its terms, the CAFA applies only to actions commenced on or after February 18, 2005 – not to long-pending actions like this one that were commenced several years ago. Because the CAFA does not apply to the plaintiffs' claims against BBM – first brought in September 2002 – this Court

5

lacks subject matter jurisdiction as to those claims, and the SAMCC must be dismissed as to BBM. Indeed, because plaintiffs have not, and cannot, plead a claim arising under this Court's federal question or pre-CAFA diversity jurisdiction, this Court should dismiss the claims against BBM with prejudice. *See Demars v. Gen. Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir.1985) (motion to amend properly denied since amendment "would have been futile"); *see also Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 60 (D.Mass. 1995) ("Where plaintiffs have had ample opportunity to allege any facts of which they are aware, and their First Amended Complaint itself was a response to an earlier charge that the original complaint [was deficient], the amended complaint should be dismissed without leave to replead.").

## II. THE CLAIMS AGAINST BBM DO NOT QUALIFY FOR CLASS ACTION DIVERSITY JURISDICTION EVEN UNDER THE NEWLY-ENACTED CAFA.

Apart from the fact that the CAFA does not apply to this long-pending action, plaintiffs have also failed to properly *allege* jurisdiction under the CAFA. Because this Court cannot assume that it has subject matter jurisdiction, the CAFA's jurisdictional requirements must be specifically alleged in the complaint. *See, e.g.*, Wright & Miller, *Federal Practice & Procedure*, Vol. 5 § 1206 (3d ed. 2004) ("[T]he basis upon which the district court's jurisdiction depends must be alleged affirmatively and distinctly and cannot 'be established argumentatively or by mere inference.") (collecting cases).[6]

---

[6] *See, e.g., Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n. 2 (5th Cir. 1983) (same); *Soler v. Puerto Rico Tel. Co.*, 230 F. Supp. 2d 232, 234 (D.P.R. 2002) (dismissing complaint and noting that the "existence of diversity jurisdiction must be evident on the face of the complaint in order for a federal court to assume jurisdiction").

The cases cited by plaintiffs – *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) and *Stewart v. Tupperware Corp.*, 356 F.3d 335 (1st Cir. 2004) – are not to the contrary. Those cases involved challenges to the amounts in controversy *expressly* pled in the complaint. Where the complaint actually contains an allegation that the amount in controversy has been met, the burden shifts to defendants to prove to a legal certainty that the allegation is not true. Here, however, "[p]laintiffs acknowledge" – in their own words – "that they did not make these allegations in the SAMCC." Pls.' Opp. at 5 n.3. Thus, dismissal of the claims against BBM is required. In any event, as discussed below, it is clear to a legal certainty that – because of the

Here, the SAMCC on its face does not even seek to invoke the CAFA, let alone plead the CAFA's jurisdictional requirements. Rather, jurisdiction for Count IV of the SAMCC was based *solely* on supplemental jurisdiction under 28 U.S.C. § 1367. *See* SAMCC ¶ 23 ("The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367."). Previously, BBM showed that there is no supplemental jurisdiction over any of plaintiffs' state law claims, including Count IV. BBM Mem. at 15-16. Tellingly, plaintiffs did not contest that. As for Count III, the SAMCC does not allege any jurisdictional basis whatsoever for that declaratory judgment claim. There is no such basis, inasmuch as it is settled law that the Declaratory Judgment Act is not an independent source of jurisdiction. *See* BBM Mem. at 14.

Nor does the SAMCC allege the jurisdictional elements necessary to bring their claims under the CAFA. Most importantly, plaintiffs have failed to allege that, under applicable law, they are entitled to recover $5 million. *See* 28 U.S.C. § 1332(d)(2). This alone requires dismissal of plaintiffs' claims.

Plaintiffs' failure to allege satisfaction of CAFA's $5 million jurisdictional threshold cannot be cured. To determine the amount plaintiffs are entitled to recover, it must first be determined which state law applies. *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 274 n.3 (E.D. Pa. 2003) ("If the choice of law inquiry leads us to a choice of state law where there is a legal certainty that the jurisdictional threshold would not be met, then there is no jurisdiction."). Here, plaintiffs have made it clear that they believe the law applicable to their consumer protection claims against BBM is Pennsylvania's consumer protection statute, 73 Pa. Stat. § 201.-1, *et seq. See* Pls.' Mem. i/s/o Class Certification, at 38 (urging that "the Court should apply each Defendants' home state Consumer Protection Law as to all Class members,

---

limited scope of Pennsylvania's consumer protection statute – the proposed class is not entitled to recover $5 million from BBM.

7

because each state has the most significant relationship to the state law claims of all class members under Massachusetts choice of law rules").[7]

However, the Pennsylvania statute, formally known as the Unfair Trade Practices and Consumer Protection Law ("CPL"), does not apply to purchases made by health plans or insurers. It merely applies to goods purchased "primarily for personal, family or household purposes." 73 Pa. Stat. § 201-9.2; *see also Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3rd Cir. 1994) (healthcare provider, who was assigned patient's right to payment, was not entitled to maintain an action under Pennsylvania CPL). In addition, the Pennsylvania CPL requires proof that plaintiffs actually relied on some false statement made by the defendant. *Prime Meats, Inc. v. Yochim*, 422 Pa. Super. 460, 619 A.2d 769 (Pa. Super. 1993) (reliance a necessary element of Pennsylvania's CPL).

Here, the named plaintiffs alleged to have purchased BBM products are health plans that purchased the products for commercial purposes (*i.e.*, to satisfy their contractual obligations to their patients). *See* SAMCC ¶¶ 27-30 & Appendix B. Plaintiffs have also failed to allege that any patient plaintiff actually relied on published AWP information (whether truthful or not) in purchasing BBM's products, or that any alleged misstatement actually caused these patients, collectively, to suffer injuries totaling more than $5 million. Because plaintiffs cannot establish any entitlement to damages under Pennsylvania's CPL, they cannot meet the CAFA's $5 million threshold.

---

[7] Plaintiffs have not alleged claims arising under each of the 50 state consumer protection laws corresponding to where plaintiffs' injuries allegedly took place. Rather, plaintiffs brought claims based solely on the consumer protection statutes of the jurisdictions in which at least one defendant is headquartered or incorporated. Thus, this Court cannot aggregate the claims that unnamed class members may have against BBM under consumer protection statutes from jurisdictions other than Pennsylvania.

In addition, dismissal of plaintiffs' state law claims is required now that plaintiffs have abandoned their federal RICO claim because this Court will no longer have pendent personal jurisdiction over BBM, and so cannot adjudicate disputes about transactions occurring outside of Massachusetts. *See In re Lernout & Hauspie Sec. Litig.*, 337 F. Supp. 2d 298 (D.Mass. 2004) (Saris, J.).

## CONCLUSION

The time has come for this Court to call a halt, once and for all, to the plaintiffs' desperate efforts over the past three years to make up allegations against BBM in the hope that somehow or another they will survive a motion to dismiss. Plaintiffs have had multiple chances to bring claims against BBM, and they have failed time after time.

Plaintiffs began on September 6, 2002 by naming BBM as a defendant in their MCC. BBM moved to dismiss. On May 13, 2003, this Court dismissed all claims against BBM, but gave plaintiffs 30 days to replead any claims they wished to bring against BBM. The plaintiffs failed to do so. No claims were brought against BBM in the plaintiffs' AMCC. Trying another tactic, the plaintiffs' AMCC brought claims against BBM's parent, BBA, adding BBA as a new defendant. The result was the same. On February 4, 2005, this Court dismissed all claims against BBA.

At the same time, however, the Court gave the plaintiffs one last chance, allowing them to add BBM back into the case as a defendant. The plaintiffs did so by filing their SAMCC. In response to BBM's motion to dismiss, plaintiffs have conceded that two of the four counts that they brought against BBM should have never been filed. Plaintiffs were forced to acknowledge that they have no federal RICO claim against BBM, and no civil conspiracy claim against BBM. As to the other two counts, plaintiffs have admitted that their only argument for invoking this

Court's subject matter jurisdiction rests on the newly-enacted CAFA – which by its terms applies only to actions commenced on or after February 18, 2005, a date that is nearly three years after plaintiffs first sued BBM in this litigation. Plainly, this new statute cannot save the day for the plaintiffs.

The plaintiffs have had more than enough chances to bring round after round of claims against BBM. After three years, they have still have no viable claim. It is unfair and unjust to subject BBM to any more of plaintiffs' never-ending series of allegations, none of which have stated any claim upon which relief can properly be granted. The SAMCC should be dismissed with prejudice as to BBM.

Dated: April 11, 2005                                    Respectfully submitted,


                                                           /s/ Daniel F. Attridge, P.C.
                                                         Daniel F. Attridge, P.C.
                                                         Colin R. Kass
                                                         KIRKLAND & ELLIS LLP
                                                         655 Fifteenth Street, N.W., Suite 1200
                                                         Washington, D.C. 20005
                                                         Telephone: (202) 879-5000
                                                         Facsimile: (202) 879-5200

                                                         **Counsel for B. Braun Medical Inc.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing B. BRAUN MEDICAL INC.'S MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT, B. BRAUN MEDICAL INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT and PROPOSED FORM OF ORDER have been served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties on this 11th day of April, 2005.

/s/ Daniel F. Attridge, P.C.
Daniel F. Attridge, P.C.
Colin R. Kass
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
T: (202) 879-5000
F: (202) 879-5200

**Counsel for B. Braun Medical Inc.**