## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-CV-12257-PBS |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO: International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca PLC et al. Civil Action No. 04-11503-PBS | ) ) ) ) ) ) | Hon. Patti B. Saris |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND

# TABLE OF CONTENTS

PAGE

**STATEMENT OF THE CASE** ..................................................................................... 1

**ARGUMENT** ............................................................................................................. 6

I.    There Was No Procedural Defect in the Removal of This Action. ........................ 6

    A.    The Consent of the Individual Defendants Was Not Required Because
        They Were Not Properly Served Under New Jersey Law. ......................... 7

        1.    Drs. Antoun and Hopkins Were Not Personally Served ............... 8

        2.    The Constructive Service Exception Does Not Apply ................... 8

        3.    Counsel's Receipt of the Summons and Complaint Is Not
            Service............................................................................................ 10

    B.    Should the Court Determine that Dr. Antoun or Dr. Hopkins Was
        Properly Served as of the Date of Removal, Discovery Is Needed to
        Determine Whether Their Consent Is Required......................................... 12

    C.    AstraZeneca Has Not Waived the Right To Argue Fraudulent Joinder. .. 14

II.   Plaintiff's State Law Claims Are Completely Preempted by ERISA.................... 16

    A.    Plaintiff Has Standing to Sue Under Section 502(a). ............................... 17

    B.    Plaintiff's Claims Fall Within the Scope of ERISA. ................................ 17

    C.    Plaintiff's Claims Are Not Capable of Resolution Without
        Interpretation of an ERISA Plan. .............................................................. 18

**CONCLUSION** .......................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*A & S Mfg. Co. v. Wetzler,*
   266 A.2d 316 (N.J. Super. Ct. 1970) ............................................................................8

*B., Inc. v. Miller Brewing Co.,*
   663 F.2d 545 (5th Cir. 1981) ....................................................................................12

*Carey v. Bd. of Governors of the Kernwood Country Club,*
   337 F. Supp. 2d 339 (D. Mass. 2004) ......................................................................12

*Citibank, N.A. v. Russo,*
   759 A.2d 865 (N.J. Super. Ct. App. Div. 2000) ........................................................10

*City & County of San Francisco v. Manning,*
   No. C 00-2355, 2000 U.S. Dist. LEXIS 13544 (N.D. Cal. Sept. 7, 2000) ..................11

*County of Essex v. First Union Nat'l Bank,*
   862 A.2d 1168, 373 N.J. Super. 543 (Super. Ct. App. Div. 2004) ..............................17

*Cruz v. Melecio,*
   204 F.3d 14 (1st Cir. 2000) ......................................................................................15

*Davis v. SmithKline Beecham Clinical Labs., Inc.,*
   993 F. Supp. 897 (E.D. Pa. 1998) ............................................................................18

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab.
Litig.,*
   220 F. Supp. 2d 414 (E.D. Pa. 2002) .......................................................................13

*Hesni v. Williams & Boshea, L.L.C.,*
   No. Civ. A. 01-3745, 2002 U.S. Dist. LEXIS 4138 (E.D. La. Mar. 7, 2002)..............15

*Hess v. Great Atl. & Pac. Tea Co.,*
   520 F. Supp. 373 (N.D. Ill. 1981) ............................................................................11

*Hill v. City of Boston,*
   706 F. Supp. 966 (D. Mass. 1989) ...........................................................................12

*James v. Gardner,*
   No. 04 Civ. 1380, 2004 U.S. Dist. LEXIS 23174 (E.D.N.Y. Nov. 10, 2004) .............11

*Jass v. Prudential Health Care Plan, Inc.,*
　88 F.3d 1482 (7th Cir. 1996) .....................................................................................16

*Joe v. Minn. Life Ins. Co.,*
　257 F. Supp. 2d 845 (S.D. Miss. 2003)........................................................................14

*Karpowicz v. Blue Cross & Blue Shield of Mass., Inc.,*
　No. 96-10050, 1996 U.S. Dist. LEXIS 13541 (D. Mass. Aug. 19, 1996) ....................6

*Merrell Dow Pharm. Inc. v. Thompson,*
　478 U.S. 804 (1998)......................................................................................................4

*Montana v. Abbot Labs.,*
　266 F. Supp. 2d 250, 255-57 (2003) .............................................................................4

*Montanez v. Solstar Corp.,*
　46 F. Supp. 2d 101 (D.P.R. 1999)...............................................................................12

*Murphy Bros. v. Michetti Pipe Stringing, Inc.,*
　526 U.S. 344 (1999)....................................................................................................11

*In re Pharm. Indus. Average Wholesale Price Litig. (Thompson v. Abbott Labs.),*
　309 F. Supp. 2d 165 (D. Mass. 2004) ........................................................1, 16, 17, 18

*In re Pharm. Indus. Average Wholesale Price Litig. (Swanston v. TAP Pharm. Prods.),*
　307 F. Supp. 2d 190 (D. Mass. 2004) ..................................................................2, 6, 7

*Sablic v. Croatia Line,*
　719 A.2d 172 (N.J. Super. Ct. App. Div. 1998)............................................................9

*Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Indus. & Allied Indus. of Youngstown Ohio Metro. Area,*
　782 F.2d 577 (6th Cir. 1986) ......................................................................................17

*Sonoco Prods. Co. v. Physicians Health Plan, Inc.,*
　338 F.3d 366 (4th Cir. 2003) ......................................................................................16

*Soveral v. Franklin Trust,*
　No. 90-2052, 1991 WL 160339 (D.N.J. Aug. 12, 1991) ..............................................8

*Stetser v. TAP Pharm. Prods. Inc.,* ........................................................................5, 13

*U.S. Surgical Corp. v. Blackman,*
　No. 80 Civ. 5858, 1980 U.S. Dist. LEXIS 14907 (S.D.N.Y. Nov. 7, 1980) ...............15

*Watson v. Wyeth Co.*,
   No. Civ. A. 02-2548, 2003 WL 203096(E.D. La. Jan. 28, 2003)................................13

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001)........................................................................15

*Wohlegmuth v. 560 Ocean Club*,
   695 A.2d 345(N.J. Super. Ct. App. Div. 1997)..............................................10

*Wormley v. S. Pac. Transp. Co.*,
   863 F. Supp. 382 (E.D. Tex. 1994)..............................................................15

## STATUTES & RULES

28 U.S.C. § 1331................................................................................4, 15, 16

28 U.S.C. § 1441 (a)-(b) ...........................................................................4

28 U.S.C. § 1446..................................................................................14

28 U.S.C. § 1446(a) ...............................................................................4

28 U.S.C. § 1448..................................................................................5

29 U.S.C. § 1132(a)(3)............................................................................17

ERISA § 502(a)..............................................................................4, 16, 18

ERISA § 502(a)(3)................................................................................17

N.J. Ct. R. 4:4-3 ..................................................................................9

N.J. Ct. R. 4:4-4 ..................................................................................9

N.J. Ct. R. 4:4-4(a)...............................................................................7, 8

N.J. Ct. R. 4:4-4(b)(1)............................................................................8

N.J. Ct. R. 4:4-4(b)(1)(A)-(C)....................................................................7

N.J. Ct. R. 4:4-4(b)(1)(C)....................................................................8, 9, 10

N.J. Ct. R. 4:4-4(c).............................................................................7, 10

N.J. Ct. R. 4:4-5(c)(2) ...........................................................................9

N.J. Ct. R. 4:4-6 ..................................................................................................................7

## OTHER AUTHORITIES

14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper
*Federal Practice and Procedure* § 3731 (3d ed. 1998)..........................................11, 12

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this Supplemental Memorandum of Law in Opposition to Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund's ("IUOE") Motion to Remand.

In 2003, this case was properly removed to federal court and subsequently transferred to the AWP MDL for coordinated and consolidated pretrial proceedings with numerous other AWP-related class actions filed throughout the country. After nearly two years of silence, plaintiff now renews its motion to remand, arguing in its supplemental memorandum that AstraZeneca's removal of this action was procedurally defective because certain individual defendants failed to consent to removal. However, under controlling New Jersey law—which plaintiff largely ignores in its supplemental memorandum—these individual defendants had not been served at the time of removal and, therefore, their consent was not required. Furthermore, pursuant to this Court's prior ruling in *In re Pharmaceutical Industry Average Wholesale Price Litigation (Thompson v. Abbott Laboratories)*, 309 F. Supp. 2d 165 (D. Mass. 2004), plaintiff's claims for equitable relief on behalf of itself (an ERISA fiduciary) and its participants (ERISA plan participants) are completely preempted by the civil enforcement provision of ERISA. Accordingly, plaintiff's motion to remand should be denied.

## STATEMENT OF THE CASE

Plaintiff is a Taft-Hartley Welfare Fund subject to the requirements of ERISA. *See* Giblin Certification ¶ 2 ("Giblin Cert.") (Exhibit B to the Haviland Certification in Support of Order to Show Cause) (attached for the Court's convenience to the Declaration of Lucy Fowler ("Fowler Decl.") as Exhibit 1). Plaintiff filed this purported class action in New Jersey state court on June 30, 2003, on behalf of individuals and

entities who paid any portion of the cost of "cancer, inhalant, and miscellaneous other drugs," Complaint ("Cplt.") ¶ 16, where the cost was based in whole or in part on the published AWP for such drugs, *id.* ¶ 99.[1]

According to plaintiff, because it is a "self-insured welfare fund, any manipulation to the price of [prescription drugs] is borne directly by [the ERISA plan plaintiff] and the plan participants, who are required to make co-payments for drugs under the welfare plan." Giblin Cert. ¶ 4 (Fowler Decl. Exhibit 1). Plaintiff's complaint includes five counts: unjust enrichment, fraud, civil conspiracy, concert of action, and violation of the New Jersey Consumer Fraud Act. Cplt. ¶¶ 284-321. Plaintiff seeks injunctive relief, imposition of a constructive trust, damages, treble damages, punitive damages, and costs. *See id.* Prayer for Relief.

On June 30, 2003, plaintiff sent the complaint and summons via Federal Express to national counsel for AstraZeneca and to counsel for Dr. Saad Antoun. *See* Letters from Donald E. Haviland, Jr., Esq. to Defense Counsel of 6/30/03 (Ex. A Accompanying Reply Br. in Support of Pl.'s Motion for Remand ) (hereinafter "Reply Ex.") (Fowler Decl. Exhibit 2), Reply Ex. B. Plaintiff mailed the complaint and summons to national counsel for the other defendants via certified U.S. mail, return receipt requested. *See* Reply Exs. A (Fowler Decl. Exhibit 2), C. Upon receipt of the summons and complaint on July 1, 2003, national counsel for AstraZeneca determined that this action was

---

[1] This action was filed in New Jersey state court approximately two weeks after a virtually identical action filed in Arizona state court by plaintiff's counsel in this case, *In re Pharm. Indus. Average Wholesale Price Litig. (Swanston v. TAP Pharmaceutical Prods.)*, 307 F. Supp. 2d 190 (D. Mass. 2004) (the "Swanston Action"), was transferred to the AWP MDL.

removable and appropriate for transfer to the AWP MDL by the Joint Panel on
Multidistrict Litigation ("JPML").

Prior to filing a notice of removal, counsel for AstraZeneca conducted an inquiry
to determine whether any defendant had been properly served in accordance with New
Jersey law, thus requiring that defendant's consent to removal. *See* Affidavit of D. Scott
Wise, Esq. in Opposition to Plaintiff's Motion for Remand (hereinafter "Wise Aff.")
(Fowler Decl. Exhibit 3) ¶¶ 4-13. In particular, on July 3, 2003, counsel for AstraZeneca
submitted an email inquiry to counsel for the pharmaceutical companies that are
defendants in the AWP MDL (many of which are named as defendants in this action) to
ascertain whether they had been properly served. *Id.* ¶ 4. Numerous counsel responded
to that email during the day. *Id.* ¶ 5. Not one corporate defendant had, in fact, been
served. *Id.* Furthermore, AstraZeneca believed, based on past practice, that all of these
corporate defendants would nevertheless consent to removal if served. In addition, with
respect to certain corporate defendants named in this action that are not defendants in the
AWP MDL, counsel for AstraZeneca conducted research which indicated that those
entities had been acquired by other defendants in the AWP MDL. *Id.* ¶¶ 6-7.

Also on July 3, 2003, at or around 10:45 a.m., counsel for AstraZeneca
telephoned Jack Fernandez, Esq., whom plaintiff described as "national counsel" for Dr.
Hopkins. *Id.* ¶ 9. When AstraZeneca's counsel asked Mr. Fernandez whether his client
had been properly served, Mr. Fernandez responded that he did not believe he had been.
*Id.* Shortly after that, AstraZeneca counsel telephoned Terry Sherman, Esq., whom
plaintiff described as "national counsel" for Dr. Berkman. *Id.* ¶ 10. Like Mr. Fernandez,
when asked whether his client had been properly served with the complaint, Mr. Sherman

-3-

said that he did not believe so. *Id.* Indeed, Mr. Sherman did not seem aware of the complaint, asking AstraZeneca counsel several questions about it. *Id.* Finally, AstraZeneca counsel also attempted to reach counsel for Dr. Antoun, but learned that Dr. Antoun's attorney could not be reached because he was on trial. *Id.* ¶ 11.

AstraZeneca concluded from this inquiry that no defendant had been properly served under New Jersey law, and thus no consent to removal was required.[2] Accordingly, AstraZeneca timely filed a Notice of Removal on July 3, 2003, and removed this case to federal court under 28 U.S.C. § 1441 (a)-(b). In accordance with 28 U.S.C. § 1446(a), the Notice of Removal provided a short and plain statement of the grounds for removal, stating that federal question jurisdiction exists under 28 U.S.C. § 1331 because (1) plaintiff's state law claims are completely preempted by the civil enforcement provision contained in Section 502(a) of ERISA, and (2) plaintiff's claims, which require construction of the term "average wholesale price," involve a substantial federal question.[3] Notice of Removal ¶¶ 10-18 (Fowler Decl. Exhibit 4). The Notice of Removal also explained that the consent of the other named defendants was not required

---

[2] Although counsel for AstraZeneca was not able to reach Dr. Antoun's counsel prior to removal, AstraZeneca reasonably concluded (as plaintiff concedes) that plaintiff attempted service on Dr. Antoun (who, like AstraZeneca, was the subject of plaintiff's request for temporary restraints) in the same manner it had attempted service on AstraZeneca, i.e., by Federal Express overnight delivery. *See* Plaintiff's Supplemental Brief in Support of Motion for Remand ("Pl. Supp. Br.") at 9; Reply Exs. A (Fowler Decl. Exhibit 2), B.

[3] This Court has concluded that the Supreme Court's ruling in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 814 (1986), precludes the finding that construction of the term "average wholesale price" gives rise to a substantial federal question because the Medicare statute provides no private right of action. *See Montana v. Abbott Labs.*, 266 F. Supp. 2d 250, 255-57 (D. Mass. 2003). Accordingly, AstraZeneca does not reiterate its arguments in support of this ground for federal jurisdiction, but notes that it respectfully disagrees with the Court's ruling on the issue.

because, based on AstraZeneca's investigation, it believed that none of those defendants had been properly served as of the date of removal. *Id.* ¶ 19.

Following removal to the District of New Jersey, AstraZeneca moved to stay the action on July 7, 2003, pending transfer to the AWP MDL. Shortly thereafter, AstraZeneca filed a Notice of Related Action with the JPML, designating this case as a "tag-along" action to the AWP MDL. On July 9, 2003, plaintiff moved for remand.[4] Before the case was stayed by the District of New Jersey and conditionally transferred to the AWP MDL, Drs. Antoun and Hopkins made clear their intention to challenge removal by joining in plaintiff's motion to remand. *See* 7/18/2003 Joinder of Defendant Saad Antoun, M.D. in Plaintiff's Motion for Remand, or, in the Alternative, Motion to Remand Pursuant to 28 U.S.C. § 1448; 7/18/2003 Joinder of Defendant Stanley C. Hopkins, M.D. in Plaintiff's Motion for Remand, or, in the Alternative, Motion to Remand Pursuant to 28 U.S.C. § 1448.

When these individual defendants joined in plaintiff's motion for remand, AstraZeneca began to suspect that the individual defendants had been fraudulently joined to frustrate federal jurisdiction over this action. This suspicion was buttressed by the paucity of allegations supporting jurisdiction over the individual defendants and by the fact that, in other AWP-related cases filed by plaintiff's counsel, individuals initially named as defendants subsequently refused to consent to removal and then settled with plaintiff for no apparent consideration other than "cooperation" in the prosecution of the

---

[4] AstraZeneca filed a memorandum in opposition to plaintiff's motion for remand, as well as exhibits in support thereof. Copies of those documents have been provided to the Court, and AstraZeneca relies on the arguments raised in those filings in addition to this supplemental memorandum.

suit. *See Stetser v. TAP Pharm. Prods., Inc.*, No. 1-CV-5268 (N.C. Gen. Ct. of Justice Super. Ct. Div. filed Dec. 27, 2001). Accordingly, in an effort to investigate this potential fraud, AstraZeneca served subpoenas on counsel for the individual defendants on July 14 and 15, 2003. *See, e.g.,* Notice of Subpoena ad Testificandum and Duces Tecum, dated July 14, 2003 (Fowler Decl. Exhibit 5). Before this discovery could proceed, this action was stayed.

On December 3, 2003, the JPML transferred the case to this Court over plaintiff's objections. Approximately one month later, the *Swanston* Action, also filed by counsel to plaintiff in this action, was remanded to Arizona state court. Following remand to Arizona, substantial resources were expended by the litigants to conduct discovery and brief class certification. In March 2005, however, the Arizona court stayed the *Swanston* Action—at plaintiff's request. Around the same time, plaintiff IUOE suddenly brought its remand motion to the Court's attention, after nearly two years of allowing it to remain dormant.

## ARGUMENT

### I.      There Was No Procedural Defect in the Removal of This Action.

Plaintiff contends that AstraZeneca's Notice of Removal was procedurally defective because neither defendant Saad Antoun, M.D., nor defendant Stanley Hopkins, M.D., consented to removal. Plaintiff acknowledges however—as it must—that consent to removal is required only from defendants who were properly served at the time the case was removed. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig. (Swanston v. TAP Pharm. Prods.)*, 307 F. Supp. 2d 190, 193 (D. Mass. 2004) ("In cases involving multiple defendants, all defendants who have been *served* must join or assent in

-6-

the removal petition.") (emphasis added); *Karpowicz v. Blue Cross & Blue Shield of Mass., Inc.*, No. 96-10050, 1996 U.S. Dist. LEXIS 13541, at \*9 (D. Mass. Aug. 19, 1996) ("[D]efendants are not required to join in the petition if they have not yet been served with process at the time the petition is filed.").

Because neither Dr. Antoun nor Dr. Hopkins had been properly served under New Jersey law at the time AstraZeneca removed this action, their consent to removal was not required. Furthermore, should this Court determine that either of these defendants was properly served at the time of removal, AstraZeneca requests that it be permitted to conduct discovery regarding the possibility that they were fraudulently joined to preclude federal jurisdiction.

A.    *The Consent of the Individual Defendants Was Not Required Because They Were Not Properly Served Under New Jersey Law.*

This Court has made clear that the question of service preceding removal is controlled by the law of the state pursuant to which the service is alleged to have been made. *See In re Pharm. Indus. Average Wholesale Price Litig. (Swanston v. TAP Pharm. Prods.)*, 307 F. Supp. 2d at 195. Accordingly, whether Drs. Antoun and Hopkins were properly served at the time this action was removed is governed by New Jersey law. Under that law, neither of these individual defendants had been properly served on or before July 3, 2003, the date of removal.

New Jersey law generally requires personal service. *See* N.J. Ct. R. 4:4-4(a). Although there are exceptions to the personal service requirement, those exceptions all require a good faith attempt at personal service as a prerequisite. *See id.* 4:4-4(b)(1)(A)-(C). No such attempt was made here. Furthermore, even if the prerequisites for

-7-

constructive service had been met, counsel's mere receipt of a summons and complaint does not constitute effective constructive service. *See id.* 4:4-4(c), 4:4-6.

### 1.    Drs. Antoun and Hopkins Were Not Personally Served

New Jersey Court Rule 4:4-4(a) states that "[t]he primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State . . . ." *See also A & S Mfg. Co. v. Wetzler*, 266 A.2d 316 (N.J. Super. Ct. 1970) (noting that constructive service is an exception to the general rule).

Here, plaintiff made no attempt to serve any of the defendants personally. *See* Plaintiff's Supplemental Brief in Support of Motion for Remand ("Pl. Supp. Br.") at 6 (noting that plaintiff transmitted complaint and supporting papers to counsel for AstraZeneca and counsel for Dr. Antoun by Federal Express and to counsel for all other defendants by U.S. certified mail, return receipt requested); *see also* Reply Exs. A-C (transmittal letters, Federal Express tracking slips, and signed return receipt cards). Transmittal to counsel does not constitute personal service. *See* N.J. Ct. R. 4:4-4(a).

### 2.    The Constructive Service Exception Does Not Apply

Although New Jersey recognizes certain exceptions to the requirement of personal service, New Jersey courts have made clear that "[s]tatutes or rules of court providing for [substituted or constructive service] [i.e., mail service] must be strictly construed and fully carried out in order to confer jurisdiction." *Soveral v. Franklin Trust*, No. 90-2052, 1991 WL 160339, at *4 (D.N.J. Aug. 12, 1991) (third alteration added) (citing *A & S Mfg. Co.*, 266 A.2d at 317). None of those exceptions applies in this case.

-8-

New Jersey Court Rule 4:4-4(b)(1)(C) permits service by registered or certified mail in certain limited circumstances, but only "[i]f it appears . . . that despite diligent effort and inquiry personal service cannot be made." N.J. Ct. R. 4:4-4(b)(1). Furthermore, evidence of such an effort must be presented to the court by way of affidavit. *See id.*; *see also* Pressler, Current N.J. Court Rules, R. 4:4-3 cmt. at 1219 (Gann) ( "[M]ailed service may not be resorted to when personal service is required by R. 4:4-4 unless personal service, either by sheriff or other adult, cannot be effected after a reasonable and good faith attempt."). Only if these prerequisites are met may a plaintiff resort to constructive service, which, in the case of an individual, requires "mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode . . . ." N.J. Ct. R. 4:4-4(b)(1)(C).

In this case, the prerequisites for constructive service were not met, and the manner in which plaintiff attempted constructive service did not comport with the requirements of the statute. As noted above, plaintiff failed even to attempt personal service, much less make a diligent, good faith effort to effect such service. As a result, plaintiff has not submitted any affidavit or other proof suggesting that it did. Without such proof, constructive service cannot be effective. *See Sablic v. Croatia Line*, 719 A.2d 172, 175 (N.J. Super. Ct. App. Div. 1998) (noting that an affidavit meeting the requirements of R. 4:4-5(c)(2) must be submitted before constructive service is appropriate); *see also* N.J. Ct. R. 4:4-5(c)(2).

-9-

Furthermore, even had plaintiff satisfied these prerequisites, the manner of
attempted constructive service does not meet the requirements of New Jersey law.  First,
with respect to Dr. Antoun, plaintiff sent the summons and complaint via Federal
Express, a private mail service instead of the U.S. mail.  N.J. Ct. R. 4:4-4(b)(1)(C).
Similarly, in the case of all of the individual defendants, plaintiff (1) sent the summons
and complaint to their counsel as opposed to mailing them to their respective dwellings or
usual places of abode; and (2) failed to transmit additional copies simultaneously by
ordinary mail.  *See* Rule 4:4-4(b)(1)(C).

For all of these reasons, plaintiff failed to serve the individual defendants
constructively.

### 3.     Counsel's Receipt of the Summons and Complaint Is Not Service

Plaintiff's suggestion that service was effected on Dr. Antoun and Dr. Hopkins

pursuant to Rule 4:4-4(c) is without merit.  That provision reads as follows:

> Optional Mailed Service.  Where personal service is required to be made
> pursuant to paragraph (a) of this rule, service, in lieu of personal service,
> may be made by registered, certified or ordinary mail, provided however,
> that such service shall be effective for obtaining in personam jurisdiction
> only if the defendant answers the complaint or otherwise appears in
> response thereto . . . .

As the text of the rule makes clear, service is effected in this manner only if the defendant

answers the complaint or otherwise appears in response thereto.  *See Citibank, N.A. v.*

*Russo*, 759 A.2d 865, 868 (N.J. Super. Ct. App. Div. 2000) (holding that service pursuant

to Rule 4:4-4(c) is valid if "the defendant answers or otherwise appears in the action");

*see also Wohlegmuth v. 560 Ocean Club*, 695 A.2d 345, 347 (N.J. Super. Ct. App. Div.

1997) ("Since service on defendant by regular and certified mail under R. 4:4-4(c) did not

-10-

result in defendant's answer or otherwise appearing in the suit, such mail service was ineffective.").

Neither Dr. Antoun nor Dr. Hopkins answered or otherwise appeared in this action prior to July 3, 2003, the date of removal. Accordingly, as of the date of removal, those defendants were not properly served under New Jersey law and their consent to removal was not required. This conclusion is the only result consistent with *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999), in which the Supreme Court rejected the "receipt rule" and held that formal service is required before the 30-day time period to remove begins to run.[5]

---

[5] Plaintiff's assertion that AstraZeneca lacks standing to raise questions about effectiveness of service on the individual defendants is without merit. The relevant question for purposes of removal is whether any non-consenting co-defendant was properly served as of the time of removal, not whether any of those co-defendants might waive a defect in service at some later time. Accordingly, plaintiff's observation that "there was at least attempted service," Pl. Supp. Br. at 10, is irrelevant. Indeed, this issue was squarely addressed in *James v. Gardner*, No. 04 Civ. 1380, 2004 U.S. Dist. LEXIS 23174 (E.D.N.Y. Nov. 10, 2004). That court concluded that "merely attempting service on [a defendant] is not sufficient" for purposes of requiring that defendant's consent to removal. *Id.* at *8. As in *Gardner*, plaintiff's attempt to serve the individual defendants in this case did not meet the requirements for effective service under relevant state law. Thus, "neither this court nor the state court ha[d] acquired jurisdiction" over the non-consenting defendant, and, "[c]onsequently, the rule of unanimity requirement will not block . . . removal . . . to federal court." *Id.* at *8-*9.

Furthermore, plaintiff's reliance on *Hess v. Great Atlantic & Pacific Tea Co.*, 520 F. Supp. 373, 376 (N.D. Ill. 1981), *see* Pl. Supp. Br. at 7, is misplaced. *Hess* involved a situation where the state court had not ruled on a non-joining defendant's motion to quash service of process when defendant removed the case. 520 F. Supp. at 376. Thus, unlike the situation here, the question in Hess is whether consent was required from a defendant who was properly served as a procedural matter but contested the court's jurisdiction. As the Court in *City and County of San Francisco v. Manning*, No. C 00-2355, 2000 U.S. Dist. LEXIS 13544, at *6, n.1 (N.D. Cal. Sept. 7, 2000), held, in a situation such as the one in Hess, defendants upon whom service has been made must join in removal absent a state court determination that the defendant was not subject to such service of process. The court in *Manning* emphasized that "[t]he circumstances and holding of the *Hess* decision are wholly inapplicable to the instant action where [co-defendant] consistently argued he had not been served with process." *Id.* at *6.

B.     *Should the Court Determine that Dr. Antoun or Dr. Hopkins Was Properly Served as of the Date of Removal, Discovery Is Needed to Determine Whether Their Consent Is Required.*

If this Court were to find that plaintiff's service upon either of the non-consenting defendants was proper under New Jersey law, there is reason to believe that their consent is not required because they were fraudulently joined by plaintiff in an attempt to defeat removal of this action to federal court. It is well established that nominal or fraudulently joined parties may be disregarded for purposes of the unanimity rule. *See* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3731, at 269-70 (3d ed. 1998); *Carey v. Bd. of Governors of the Kernwood Country Club*, 337 F. Supp. 2d 339, 341 (D. Mass. 2004); *Hill v. City of Boston*, 706 F. Supp. 966, 968 (D. Mass. 1989); *Montanez v. Solstar Corp.*, 46 F. Supp. 2d 101, 103 (D.P.R. 1999).

Accordingly, AstraZeneca respectfully requests that, if the Court determines any of the individual non-consenting defendants was properly served at the time of removal, it be given the opportunity to pursue the discovery it originally propounded on counsel to those defendants.[6] *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 & n.9 (5th Cir. 1981).

Indeed, the circumstances surrounding the joinder of the individual defendants in this action and their subsequent refusal to consent to removal strongly suggests that they were fraudulently joined. First, there are no allegations in the complaint establishing personal jurisdiction over two of the three individual defendants in the State of New Jersey. Nonetheless, and despite the fact that it would seem to be against their interest,

---

[6] AstraZeneca is prepared to pursue this discovery expeditiously.

-12-

these individuals appear to be cooperating with plaintiff's counsel. *See* Affidavit of
Donald E. Haviland, Jr., Esq. in support of Plaintiff's Motion for Remand (Fowler Decl.
Exhibit 6) ¶¶ 4-10. Second, there were no allegations in the complaint even attempting to
establish plaintiff's standing to sue these individual defendants, despite the fact that such
information (relating to whether plaintiff or any of its members paid for any drug
prescribed by the individual defendants) is solely within plaintiff's control.

Moreover, the circumstances presented here suggest that plaintiff lacks a good
faith intention to proceed against the individual defendants to a joint judgment, based on
a pattern that has arisen in other AWP-related cases filed by plaintiff's counsel. *See*
*Stetser*, *supra*. In *Stetser*, for example, individual defendants refused to consent to
removal, and then settled with plaintiff's counsel for no apparent consideration other than
"cooperation" in the prosecution of the suit. *See* Settlement Agreement, filed on August
27, 2002, in *Stetser v. TAP Pharmaceutical Products, Inc.*, No. 1-CV-5268 (N.C. Gen.
Ct. of Justice Super. Ct. Div. filed Dec. 27, 2001) (Exhibit M to Declaration of Marielena
Piriz in Opposition to Plaintiff's Motion for Remand) (Fowler Decl. Exhibit 7).

Courts confronted with similar circumstances have determined that the non-
consenting defendants were fraudulently joined and, thus, that their consent to removal
was not required. For instance, the court in *In re Diet Drugs (Phentermine,*
*Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 220 F. Supp. 2d 414, 421-
22 (E.D. Pa. 2002), disregarded the lack of consent of the defendants who had entered
into agreements with plaintiff's counsel to withhold consent to removal, observing that:

> [w]hat has been transpiring can only be characterized as a sham, at the
> unfair expense not only of AHP but of many individuals and small

-13-

enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against AHP, the real target, in a federal forum.

*Id.* at 425; *see also Watson v. Wyeth Co.*, No. Civ. A. 02-2548, 2003 WL 203096, at *4 (E.D. La. Jan. 28, 2003) (denying motion to remand based on evidence of collusive agreements between certain defendants and plaintiffs on ground that doctor defendant and phentermine defendants were fraudulently joined and therefore need not have consented to removal).

Similar reasoning led the court in *Joe v. Minnesota Life Insurance Co.* to permit discovery on the issue of fraudulent joinder and, following the close of such discovery, to conclude that the joinder of certain defendants "constitute[d] a fraudulent attempt to defeat the Minnesota defendants' statutory right of removal." 257 F. Supp. 2d 845, 850 (S.D. Miss. 2003). The court in that case found circumstantial evidence of a collusive sham, and noted that "point[ing] to the conclusion that defendant Gulley is more aligned with the plaintiff than the Minnesota defendants" and, accordingly, that "the only effect of defendant Gulley's presence in this lawsuit is that of assistance to the plaintiffs." *Id.*

AstraZeneca believes that discovery in this case would lead to the same conclusion with respect to the non-consenting individual defendants.

C.    *AstraZeneca Has Not Waived the Right to Argue Fraudulent Joinder.*

Plaintiff contends that AstraZeneca waived its right to assert that the non-consenting individual defendants were fraudulently joined, because it did not assert such grounds in its Notice of Removal. This argument is without merit.

In all of the cases cited by plaintiff in support of this argument, *see* Pl. Supp. Br. at 8, removing defendants failed to allege fraudulent joinder in their notices of removal in

-14-

circumstances where non-diverse defendants were named and the basis for removal was diversity jurisdiction. Obviously, in a case where removal is premised on complete diversity of citizenship, assertions of fraudulent joinder go to heart of the basis for federal subject matter jurisdiction. Accordingly, in such cases, fraudulent joinder must be asserted in the notice of removal pursuant to 28 U.S.C. § 1446.

By contrast, where, as here, jurisdiction is based on the existence of a federal question (28 U.S.C. § 1331 jurisdiction), fraudulent joinder is not relevant to the basis for removal.[7] Accordingly, AstraZeneca was not required to allege fraudulent joinder in its Notice of Removal. *Cf. Wormley v. S. Pac. Transp. Co.*, 863 F. Supp. 382, 384 (E.D. Tex. 1994) (noting that "the 'short and plain' standard is not a burdensome one" and "does not require that the notice of removal allege, in excruciating detail, every conceivable fact which supports removal"). In this case, the issue of fraudulent joinder became relevant only after plaintiff argued in its motion for remand that the consent of the individual defendants was required. *Cf. Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001) (rejecting contention that an argument raised by removing defendant in response to plaintiff's remand motion was "time barred as not having been set forth, in the first instance, in the notice of removal"). As the *Whitaker* court held, a removing defendant's failure to anticipate plaintiff's remand argument in its notice of

---

[7] Similarly, plaintiff's assertion that the concept of fraudulent joinder applies only to cases involving diversity jurisdiction is without merit. *See, e.g., Hesni v. Williams & Boshea, L.L.C.,* No. Civ. A. 01-3745, 2002 U.S. Dist. LEXIS 4138, *2 (E.D. La. Mar. 7, 2002) (addressing fraudulent joinder in case where removal was premised on cause of action under Fair Labor Standards Act); *U.S. Surgical Corp. v. Blackman*, No. 80 Civ. 5858, 1980 U.S. Dist. LEXIS 14907, *5 (S.D.N.Y. Nov. 7, 1980) (addressing fraudulent joinder in case where removal was premised on cause of action under Lanham Act).

removal does not constitute a failure to comply with the removal statute's requirement to present a "short and plain statement of the grounds for removal."  *Id.*[8]

## II.   Plaintiff's State Law Claims Are Completely Preempted by ERISA.

This Court has federal jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiff's state law claims are completely preempted by ERISA.  In ruling upon the remand motions filed in *Thompson*, *Turner*, and *Congress of California Seniors* (the "California Actions"), this Court held that AWP-related state law claims seeking equitable relief are completely preempted by Section 502(a) of ERISA.  *See In re Pharm. Indus. Average Wholesale Price Litig. (Thompson v. Abbott Labs.)*, 309 F. Supp. 2d 165, 171-75 (D. Mass. 2004).  In its supplemental brief, plaintiff fails even to address the Court's ruling, perhaps in recognition of the fact that the reasoning of that decision requires the same result here.

In considering whether Section 502(a) of ERISA completely preempted the state law claims asserted in the California Actions, this Court applied the following three-part analysis:  (1) whether the plaintiff has standing under Section 502(a) to pursue its claim; (2) whether the plaintiff's claim falls within the scope of an ERISA provision that it can enforce via Section 502(a); and (3) whether the claim is not capable of resolution without an interpretation of an ERISA-governed employee benefit plan.  *Id.* at 172 (citing *Sonoco*

---

[8] Furthermore, to the extent that the Court finds any procedural defect in the removal, plaintiff should be deemed to have waived any such objection due to its failure to inform the Court as to the existence of its pending motion for almost two years.  Indeed, the procedural history of this motion raises doubt as to plaintiff's good faith in seeking remand to New Jersey state court.  Plaintiff's decision to press its motion now comes on the heels of the Arizona court's issuance of a stay in a virtually identical action filed in Arizona by counsel to plaintiff in this action.  This timing, which raises the "discomfiting specter of forum-shopping," *Cruz v. Melecio*, 204 F.3d 14, 24 (1st Cir. 2000), further counsels against granting plaintiff's motion, particularly given the complete preemption of the underlying claims by ERISA, *see* Section II, *infra*.

-16-

*Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003) and *Jass v.*
*Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)).  As in the
California Actions, each of those prongs is satisfied here.

      *A.*      *Plaintiff Has Standing to Sue Under Section 502(a).*

      Plaintiff does not dispute that it is a Taft-Hartley Welfare Fund subject to the
requirements of ERISA.  Indeed, Thomas P. Giblin, plaintiff's Administrative Manager,
certified that the Fund is subject to the requirements of ERISA.  *See* Giblin Cert. ¶ 2
(Fowler Decl. Exhibit 1).  As an ERISA fiduciary, plaintiff plainly satisfies the standing
requirements of Section 502(a).  *See* 29 U.S.C. § 1132(a)(3) (providing that "[a] civil
action may be brought . . . (3) by a participant, beneficiary or fiduciary"); *Saramar*
*Aluminum Co. v. Pension Plan for Employees of Aluminum Indus. & Allied Indus. of*
*Youngstown Ohio Metro. Area*, 782 F.2d 577, 581 (6th Cir. 1986).

      *B.*      *Plaintiff's Claims Fall Within the Scope of ERISA.*

      Plaintiff's claims fall squarely within the scope of ERISA's civil enforcement
provision.  Indeed, plaintiff expressly seeks injunctive relief.  In the California Actions,
this Court concluded that claims seeking injunctive relief are preempted because
"[i]njunctive relief is an equitable remedy within the scope of 502(a)(3)."  *In re Pharm.*
*Indus. Average Wholesale Price Litig. (Thompson v. Abbott Labs)*, 309 F. Supp. 2d at
174; *see also* 29 U.S.C. § 1132(a)(3).

      Here, there is no question that plaintiff seeks equitable relief, including an
injunction and, in connection with its equitable claim of unjust enrichment, a constructive
trust.  *See* Cplt., Prayer for Relief, at 93 (requesting the Court to "[e]njoin the defendants
from committing the acts complained of herein"); *id.* ¶ 288; *see also County of Essex v.*

*First Union Nat'l Bank*, 862 A.2d 1168, 1177 (Super. Ct. App. Div. 2004) ("Unjust

enrichment is an equitable remedy.") (citation omitted). Accordingly, plaintiff's claims

fall within the scope of section 502(a)(3).

### C. Plaintiff's Claims Are Not Capable of Resolution Without Interpretation of an ERISA Plan.

Finally, plaintiff's claims in this action—like the claims in the California

Actions—are not capable of resolution without interpretation of an ERISA-governed

plan. By plaintiff's own admission, the obligation to pay for pharmaceutical benefits and

the amount paid by its participants (whom it seeks to represent) are dictated by the terms

of the plan. *See* Giblin Cert. ¶ 4 (Fowler Decl. Exhibit 1) (stating that plan participants

are required to make co-payments "under the welfare plan").

Accordingly, any alleged liability to plaintiff and its participants (or other ERISA

plans and their participants within the purported class) can only be assessed by reference

to the plan. *Cf. Davis v. SmithKline Beecham Clinical Labs., Inc.*, 993 F. Supp. 897, 899

(E.D. Pa. 1998). There is, consequently, no ambiguity as to whether the terms of the plan

must be construed to resolve plaintiff's claims. Furthermore, even in a situation where it

is unclear whether plan terms must be consulted to resolve all of a plaintiff's claims,

courts, including this one, have asserted removal jurisdiction when "it [wa]s likely that at

least some of the claims [would] not [be] capable of resolution without reference to an

ERISA plan." *In re Pharm. Indus. Average Wholesale Price Litig. (Thompson v. Abbott

Labs.)*, 309 F. Supp 2d at 175.[9]

---

[9] Plaintiff's attempt to disavow any federal claims, *see, e.g.*, Cplt. ¶¶ 18-19, cannot trump the
preemptive force of ERISA. The "strong policies underpinning ERISA preemption do not permit vague or

In sum, because plaintiff has standing as an ERISA fiduciary, seeks equitable relief within the scope of ERISA, and states claims that cannot be adjudicated without reference to an ERISA plan, plaintiff's state law claims are completely preempted by Section 502(a) of ERISA. Thus, this Court has federal question jurisdiction over plaintiff's claims, and a valid basis for removal exists.

## CONCLUSION

For the reasons stated above, and in its original Memorandum of Law In Opposition to Plaintiff's Motion To Remand, AstraZeneca Pharmaceuticals LP respectfully requests that the Court deny plaintiff's motion to remand this action.

Respectfully Submitted,                    By:   /s/ Lucy Fowler


DATED:   May 6, 2005                    Nicholas C. Theodorou (BBO # 496730)
                                        Lucy Fowler (BBO# 647929)
                                        FOLEY HOAG LLP
                                        155 Seaport Boulevard
                                        Boston, MA 02110

                                        D. Scott Wise
                                        Michael Flynn
                                        Kimberley Harris
                                        DAVIS POLK & WARDWELL
                                        450 Lexington Avenue
                                        New York, NY 10017

---

artful pleading to omit facts to defeat removal jurisdiction." *In re Pharm. Indus. Average Wholesale Price Litig. (Thompson v. Abbott Labs.)*, 309 F. Supp. 2d at 175.

-19-

## CERTIFICATE OF SERVICE BY VERILAW

Docket No. MDL 1456

I, Lucy Fowler, hereby certify that I am one of defendant AstraZeneca's attorneys and that on  May 6, 2005, I caused Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Remand to be served on all counsel of record by causing same to be posted electronically via Verilaw.

Dated:  May 6, 2005                     /s/ Lucy Fowler
                                              **Lucy Fowler**