UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ) <br> ALL ACTIONS ) <br> ) <br> ) <br> _____) | MDL No. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS <br><br><br> Judge Patti B. Saris <br><br> Chief Magistrate Judge Marianne B. Bowler |

**B. BRAUN MEDICAL INC.'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY
<u>PENDING RESOLUTION OF ITS MOTION TO DISMISS</u>**

B. Braun Medical Inc. ("BBM") filed a motion for a protective order to stay discovery pending resolution of its motion to dismiss the plaintiffs' claims against it for lack of subject matter jurisdiction.[1] In their opposition to BBM's motion, plaintiffs misstate the law governing a request for a stay and misrepresent the facts giving rise to BBM's motion. Moreover, plaintiffs' assertion of prejudice resulting from issuance of a stay is based on an apparent misreading of this Court's Case Management Order ("CMO") No. 10. In short, none of plaintiffs' arguments in opposition to BBM's motion for a protective order have merit.

I.  **PLAINTIFFS MISSTATE THE LAW AND MISREPRESENT THE BASIS FOR BBM'S MOTION.**

Ignoring the weight of authority favoring a stay of discovery pending resolution of a dispositive motion – and in particular the numerous cases cited by BBM in support of its motion

---

[1] BBM's motion to dismiss has been fully briefed and was recently referred to Chief Magistrate Judge Bowler for report and recommendation.

– plaintiffs assert that "courts universally recognize that the imposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed" and that courts "routinely deny" such motions. (Pls.' Opp. Br. to BBM Mot. for Protective Order ("Pls.' Opp.") at 4, 5.) Plaintiffs, however, mischaracterize BBM's motion and misstate the law governing its adjudication.

BBM does not, as plaintiffs assert, argue that the mere filing of its motion to dismiss warrants a stay of discovery. Rather, in its Memorandum in support of its motion, BBM demonstrated that where – as here – a dispositive motion (potentially disposing of all claims) is premised on pure questions of law, issuance of a protective order staying discovery is appropriate and indeed necessary and consistent with the Federal Rules. *See* FED. R. CIV. P. 1 (Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."); *see also Kleinerman v. United States Postal Serv.*, 100 F.R.D. 66, 68 (D. Mass. 1983) ("This Court agrees with the principle that it is appropriate to defer discovery until preliminary questions that may dispose of the case are determined."); *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending."); *Hachette Distrib., Inc. Hudson County News Co., Inc.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) (discovery should be stayed when "the issues before the Court are purely questions of law that are potentially dispositive."); *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 675 (S.D. Cal. 2001) (observing "[c]ourts . . . routinely stay[] discovery on the merits altogether while challenges to jurisdiction are pending."). Because BBM's motion to dismiss would dispose of all claims against it and because it is based on questions of law, BBM's motion for a protective order

pending resolution of its motion to dismiss is consistent with the mandate of the Federal Rules as well as this Court's prior orders. (*See* Oct. 28, 2002 CMO No. 5, at ¶ 3 ("discovery shall be stayed as between the parties until such time as the Court has conducted the hearing on the Defendants' Motion to Dismiss."); *see also* Aug. 15, 2003 CMO No. 7, at ¶ II (1).)

Tellingly, the cases cited by the plaintiffs in support of their assertion that courts "routinely deny" motions for a protective order do not conflict with BBM's position. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) ("Courts in this District hold that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion appear[s] to have substantial grounds.") (internal quotation marks omitted). Instead, the authority cited by the plaintiffs stands for the unremarkable proposition that where a motion to dismiss merely attacks the sufficiency of the allegations of a complaint, a stay is generally unwarranted. *See, e.g., In re Lotus Dev. Corp. Securities Litig.*, 875 F. Supp. 48, 51 (D. Mass. 1995) (Saris, J.) (denying stay of Rule 26 automatic disclosures pending resolution of defendants' motion to dismiss attacking sufficiency of allegations based on Rule 9(b)); *Simpson v. Spec. Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) (denying stay because "defendants' motions mainly attack the alleged lack of specificity of the fraud allegations and even if granted, this defect could be corrected by amending the complaint."); *Coca-Cola Bottling Co. of the Lehigh Valley v. Grol*, Civ. No. 92-7061, 1993 WL 13139559, at *3 (E.D.Pa. Mar. 8, 1993) (denying stay because defendant's motion merely "challenge[d] the sufficiency of the allegations of the complaint"). BBM's motion, however, attacks not the sufficiency of the plaintiffs' allegations, but the very jurisdiction of the Court to adjudicate their claims.

Other authority cited by the plaintiffs is equally unavailing and, in fact, supports issuance of a protective order here. For example, in *Turner Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997), the court noted that "[c]ommon examples" of when a stay of discovery pending resolution of a motion to dismiss *is appropriate* include circumstances in which the pending motion raises preliminary issues such as "***jurisdiction***, venue, or immunity." (quoting *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989)) (emphasis added). Similarly, in *In re Currency Conversion Fee Antitrust Litig.*, the court – noting "the substantial cost of discovery typical of antitrust cases" – stayed certain discovery pending resolution of defendants' motion to dismiss. 2002 WL 88278, at *3. Indeed, the court observed "it would be wasteful to subject defendants' principals to wide-ranging depositions in the absence of a pleading that has withstood scrutiny under Rule 12(b)(6)." *Id*. In short, none of the authority on which the plaintiffs rely suggests that a protective order should not issue here.[2]

Recognizing the weakness in the authority on which they rely, plaintiffs attempt to characterize BBM's motion to dismiss as non-dispositive of their claims. Thus, in their opposition to BBM's motion for a protective order, plaintiffs blithely assume that they will either survive BBM's motion to dismiss or, alternatively, simply re-file identical claims against BBM "in another federal district court" and thus "be designated as related and [] returned to this action." (Pls.' Opp. at 5.) Plaintiffs, however, ignore their prior admissions conceding the merits of BBM's motion and misapprehend the import of BBM's motion.

---

[2] Other cases cited by the plaintiffs simply stand for the proposition that where discovery is necessary to defend against a pending motion, a stay is generally inappropriate. *See Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 216 (D. N.H. 2004) (denying defendants' request to stay initial disclosures and other discovery pending court's decision on the *summary judgment motion they intended* to file); *Feldman v. Flood*, 176 F.R.D. 651, 653 (M.D. Fla. 1997) (denying request for a stay because the court was "influenced by plaintiffs' arguments that some of the discovery they intend to undertake may be relevant to the motion to dismiss . . . "). Plaintiffs, however, do not assert that discovery is necessary to defend BBM's pending motion to dismiss.

In its Motion to Dismiss the Second Amended Master Consolidated Class Action Complaint ("SAMCC"), BBM demonstrated that the Court lacks subject matter jurisdiction over the plaintiffs' claims against BBM. In response to that motion, plaintiffs concede that their civil conspiracy claim (Count IX) "should be dismissed with regard to BBM." (Pls.' Opp. Br. to BBM Mot. to Dismiss SAMCC at 1 & n. 1.) Moreover, plaintiffs "do not dispute" that their federal fraud claim (Count II) fails as a matter of law because BBM has no contracts or relationships with any pharmacy benefits mangers -- the predicate conduct underlying their fraud claim. (*Id.*) Further, plaintiffs do not dispute that both federal question and traditional diversity-of-citizenship jurisdiction are lacking over their remaining two claims against BBM. (*Id.* at 2.) Therefore, plaintiffs' assumption that they will survive BBM's motion to dismiss is, at the very least, in discord with their own admissions in response to that motion.

Plaintiffs' assertion that they may simply re-file identical claims against BBM "in another federal district court" and thus "be designated as related and [] returned to this action," (Pls.' Opp. at 5), is similarly flawed. *First*, *no* federal forum has subject matter jurisdiction to entertain the plaintiffs' federal fraud (RICO) claim given that BBM – as the plaintiffs concede – has never engaged in the predicate conduct underlying the alleged RICO enterprise. (Pls.' Opp. Br. to BBM Mot. to Dismiss SAMCC, at 1 & n. 1.) *Second*, as plaintiffs apparently concede, complete diversity-of-citizenship is lacking because certain plaintiffs reside in BBM's home state. (*Id.* at 2; *see also* SAMCC ¶¶ 27, 30, 36, 68.) Thus, plaintiffs cannot rely on traditional federal diversity jurisdiction to re-file in another forum. *Third*, as set out fully in BBM's Reply Memorandum in Support of its Motion to Dismiss [Docket No. 1516], plaintiffs' (belated) reliance on the newly enacted Class Action Fairness Act ("CAFA") is without merit since the statute, by its own terms, does not apply to long-pending actions, such as this one, that were

"commenced" – against BBM and other defendants – before February 18, 2005.[3] *See* 28 U.S.C.A. § 1332; see also PL 109-2, § 9, Feb. 18, 2005, 119 Stat. 14 ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act."); *see also Pritchett v. Office Depot, Inc.*, 404 F.3d 1232, 1235 (10th Cir. 2005) (holding "commenced" as used in the CAFA means "a discrete moment in time: the filing of the ***original complaint*** in a court of competent jurisdiction") (emphasis added); *see also* FED. R. CIV. P. 3. *Finally*, even if the plaintiffs could file an entirely new complaint asserting diversity jurisdiction under the CAFA, the plaintiffs' only remaining cause of action (Count IV) – asserting violation of Pennsylvania's consumer protection law – is fatally defective.[4] That is, the very statute on which the plaintiffs base their claim does not apply to purchases made by health plans or insurers.[5] *See* 73 Pa. Stat. § 210-9.2; s*ee also Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto Ins. Co.*, 40 F.3d 63, 65 (3rd Cir. 1994) (healthcare provided who was assigned patient's right to payment, was not entitled to maintain a cause of action under Pennsylvania consumer protection statute, 73 Pa. Stat. § 201-1 *et seq.*). Therefore, plaintiffs' argument that "we're eventually going to get the discovery anyway" simply has no merit.

---

[3] Beyond the fact that the very terms of the statute preclude its application, the statute is unavailable to rescue plaintiffs' claims against BBM for a more practical reason: plaintiffs have failed to allege any of the jurisdictional elements necessary to bring their claims under the CAFA, including the requisite minimum amount in controversy.

[4] Notably, jurisdiction for Count IV of the SAMCC is based solely on supplemental jurisdiction. *See* SAMCC ¶ 23 ("The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.) Further, the plaintiffs' fourth claim against BBM (Count III) is based on the Declaratory Judgment Act. Thus, as plaintiffs concede, this claim cannot provide an independent basis for federal jurisdiction. (*See* Pls.' Opp. Br. to BBM Mot. to Dismiss SAMCC, at 2 & n. 2.)

[5] Plaintiffs made clear that only Pennsylvania's consumer protection statute, 73 Pa. Stat. § 201-1 *et seq.*, would apply to BBM. (*See* Pls.' Mem. i/s/o Class Certification, at 38 (urging the "Court should apply each Defendants' home state Consumer Protection Law as to all Class Members, because each state has the most significant relationship to the state law claims of all class members under Massachusetts choice of law rules.").)

## II. PLAINTIFFS' CLAIM OF PREJUDICE IS UNTENABLE.

Equally unavailing to the plaintiffs is their assertion of prejudice should a stay of discovery issue. Plaintiffs' sole ground for asserting prejudice is that plaintiffs "are severely limited in the amount of time they have to conduct all fact discovery against BBM." (Pls.' Opp. at 7.) As support for this assertion, plaintiffs point out that under CMO No. 14 fact discovery will close on December 3, 2005 and add that the so-called "45-day rule" contained in CMO No. 10 would prevent plaintiffs from completing 30(b)(6) deposition discovery prior to that date. (Pls.' Opp. 7-8.) Plaintiffs' claim of prejudice, however, is untenable.

As an initial matter, plaintiffs assert that they would be prejudiced if denied immediate discovery because "such discovery is necessary for establishing plaintiffs' fraud claims in the underlying action." (Pls.' Opp. at 7.) But the plaintiffs "do not dispute" that their federal RICO claim (Count II) – their only fraud claim – fails as a matter of law and thus should be dismissed. (Pls.' Opp. Br. to BBM Mot. to Dismiss SAMCC at 1 & n. 1.) Thus, plaintiffs assert they would be prejudiced if denied immediate discovery to support a claim that they "do not dispute" should be dismissed from the underlying action.[6]

Equally puzzling is plaintiffs' assertion that BBM has attempted to use the "45-day rule … to serve as a shield against plaintiffs' attempts to take discovery." (Pls.' Opp. at 8.) In an apparent misreading of CMO No. 10, plaintiffs argue that application of the so-called "45-day rule" would deny plaintiffs sufficient time to conduct 30(b)(6) discovery if a stay is granted. (*Id.*) But CMO No. 10 plainly requires defendants to produce 30(b)(6) witnesses "within," *i.e.,*

---

[6] Plaintiffs take a similarly self-contradictory position by proclaiming that "BBM has yet to produce a single document or witness in discovery." (Pls.' Opp. at 7.) Notwithstanding the unequivocal nature of this statement, in a footnote on the very page in which plaintiffs make this claim, plaintiffs concede that BBM "has produced a minimal number of documents" to the plaintiffs. (Pls.' Opp. at 7 & n. 2.) In fact, BBM has already produced nearly 20,000 pages of documents to the plaintiffs.

*no later than*, "45 days of such a request." (Mar. 25, 2004 CMO No. 10, at 3 ¶ 6.) Therefore, CMO No. 10 does not preclude plaintiffs from taking 30(b)(6) depositions any *sooner* than 45-days from the issuance of the notice of deposition.[7] Plaintiffs' reading of CMO No. 10 is thus plainly at odds with its express language.

Notably, plaintiffs ignore CMO No. 10's requirement that any opposition to a motion for a protective order be filed within two working days. (*See* Mar. 25, 2004 CMO No. 10 at 3, ¶ 7 ("Any motion for a protective order shall be filed at least five working days before the scheduled deposition; any response shall be filed within two working days.").) Because BBM's motion was filed on May 23, 2005 and plaintiffs' opposition thereto was not filed until June 6, 2005, plaintiffs' opposition is time-barred.

In any event, plaintiffs currently have approximately six months to conduct discovery. This is more than ample time to conduct discovery (of a single defendant) such that plaintiffs would not be prejudiced from the issuance of a stay. *See, e.g., Orchid Biosciences, Inc.*, 198 F.R.D. at 675 (finding no prejudice because plaintiff would "still have ample time and opportunity to conduct discovery on the merits."). In addition, nothing precludes plaintiffs from seeking additional time to conduct discovery from BBM pursuant to Federal Rule of Civil Procedure 6(b) in the event that BBM's motion to dismiss is denied. *See* FED. R. CIV. P. 6(b) (a "court for cause shown may at any time in its discretion [] with or without motion" enlarge the time periods specified in the Federal Rules or set forth in prior orders of the court). Thus,

---

[7]   CMO No. 10 does require parties to give a "three week deposition notice." (Mar. 25, 2004 CMO No. 10, at 3 ¶ 3.) Despite this notice requirement, in August 2004 plaintiffs issued a 30(b)(6) deposition notice to BBM's parent company, B. Braun of America Inc., demanding a deposition to be conducted only eight days notice after notice was served.

plaintiffs fail to demonstrate any credible basis to conclude that they would be prejudiced by issuance of a stay of discovery.

### III. THE BURDEN AND EXPENSE TO BBM OF RESPONDING TO PLAINTIFFS' DISCOVERY REQUESTS IS PLAIN.

Two related factors that the courts consider in deciding a motion for a stay of discovery are the breadth of the discovery sought and the burden of responding to it. *See, e.g., Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991). Despite plaintiffs' representations to the contrary, the exceptional breadth of discovery sought, and the substantial burden to BBM of responding to it, are plain.

In only their first Rule 30(b)(6) deposition notice, plaintiffs demand that BBM present for deposition corporate representatives with knowledge of a plethora of topics, covering the last fourteen years of BBM's business, from 1991 to present. (*See* Pls.' May 4, 2005 Rule 30(b)(6) Dep. Notice to BBM, at 8.) Moreover, many of plaintiffs' requests are not limited to either drugs produced by BBM or the drugs identified in plaintiffs' complaint. For example, plaintiffs demand BBM identify "competitive drugs with respect to *each* physician-administered AWPID," whether the "physician-administered AWPID" was produced by BBM or not. (*Id.* at 8-9, ¶ 4) (emphasis added.) Indeed, several of the plaintiffs' demands require BBM to undertake a search for (fourteen years worth of) documents unrelated either to the BBM products alleged by the plaintiffs to be at issue in the SAMCC, or BBM's products in general. (*Id.* at 8-9, ¶¶ 2, 7-9.)

The over-breadth of plaintiffs' discovery requests is also evident in their second Notice of Rule 30(b)(6) deposition. (*See* May 6, 2005 Rule 30(b)(6) Dep. Notice to BBM at 7.)[8] There,

---

[8] Plaintiffs' May 4 and 6, 2005 Rule 30(b)(6) Deposition Notices to BBM were attached as Exhibits A and C, respectively, to BBM's Memorandum [Docket No. 1542] in support of its motion for a protective order.

9

plaintiffs demand the deposition of corporate representatives with knowledge of "all aspects" of BBM's maintenance and retrieval of: "*[a]ll* sales transaction data," "*[a]ll* chargeback transactions," "*[a]ll* rebate transactions," "*[a]ll* administrative fee transactions," and "*[a]ny* other discounts." (*Id.*)

Notably, each of these depositions can last as long as three days, excluding additional time for cross examination, re-direct, and re-cross. (*See* Mar. 25, 2004 CMO No. 10 at 3 ¶ 8.) Thus, the burden and expense of preparing and presenting witnesses knowledgeable of the wide-ranging topics identified by only plaintiffs' *initial* discovery requests are considerable. Moreover, such discovery is entirely unrelated to plaintiffs' opposition to BBM's motion to dismiss. Therefore, "[t]he sole result of such discovery, pending the resolution of [BBM's] motion, would be cost and inconvenience, which would impose an undue burden on the time and resources of" BBM. *Sprague v. Brook*, 149 F.R.D. 575, 578 (N.D. Ill. 1993). Indeed, as the court in *In re Currency Conversion Fee Antitrust Litig.* found, "it would be wasteful" to subject a defendant "to wide-ranging depositions in the absence of a pleading that has withstood scrutiny under" a motion to dismiss. 2002 WL 88278, at *3. Accordingly, a stay of discovery pending resolution of BBM's motion to dismiss is warranted.

## IV. PLAINTIFFS' CLAIM OF A LACK OF GOOD FAITH ON THE PART OF BBM IS WITHOUT MERIT.

Plaintiffs assert that BBM demonstrated a "lack of good-faith in resolving" the parties discovery dispute. (Pls.' Opp. at 1 & n. 1.) But plaintiffs' attempt to cast BBM's conduct in a poor light is based entirely on a misrepresentation of the facts giving rise to BBM's motion.

Contrary to plaintiffs' telling of events, counsel for BBM first contacted plaintiffs' counsel to request a stay of discovery on May 6, 2005 -- two days after plaintiffs first notice of Rule 30(b)(6) deposition was served on BBM. At that time, counsel for the plaintiffs, Allan

Hoffman, informed counsel for BBM that he needed to confer with co-counsel before agreeing to a stay of discovery. Mr. Hoffman promised to get back to BBM's counsel, but never did.

Having received no response from plaintiffs' counsel for over two weeks, counsel for BBM again contacted Mr. Hoffman by telephone to reiterate BBM's request for a stay on May 23, 2005. At that time, Mr. Hoffman informed counsel for BBM that he still needed to confer with co-counsel and only tentatively offered to seek approval of a 30-day continuance of the noticed Rule 30(b)(6) depositions. Mr. Hoffman, however, refused to consider any stay or to withdraw the notices of deposition. Therefore, counsel for BBM informed Mr. Hoffman that the parties had reached an impasse in their negotiations, thus necessitating BBM's motion.

Mr. Hoffman never asserted a stay would prejudice plaintiffs' ability to complete discovery by December 3, 2005, nor did he ask that BBM waive the so-called "45-day rule." Therefore, plaintiffs' claim of a lack of good faith on the part of BBM is belied by the facts and merely a shallow attempt to divert attention from the merits of BBM's motion.

## CONCLUSION

For the foregoing reasons, B. Braun Medical Inc. respectfully requests that its Motion for a Protective Order Staying Discovery be granted.

Dated: June 10, 2005    Respectfully submitted,

   /s/ Daniel F. Attridge, P.C.
Daniel F. Attridge, P.C.
Colin R. Kass
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for B. Braun Medical Inc.*