## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | MDL No. 1456 |
| LITIGATION | ) | |
| _____ | ) | CIVIL ACTION: 01-CV-12257PBS |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | Judge Patti B. Saris |
| 01-CV-12257-PBS AND 01-CV-339 | ) | |
| | ) | Chief Magistrate Judge Marian B. Bowler |
| _____ | ) | |

## DEFENDANT SICOR INC. AND SICOR PHARMACEUTICALS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Sicor, Inc. and Sicor

Pharmaceuticals, Inc. (collectively, "Sicor" or "the Company") respectfully file this brief in

support of their Motion for a Protective Order to prevent undue burden and expense to Sicor

associated with the restoration of 300 (three-hundred) "backup tapes," which may contain

information responsive to Plaintiffs' Omnibus Requests for Requests for Production and

Interrogatories (the "Omnibus Discovery Requests") issued to all defendants on March 31, 2004.

### I.      INTRODUCTION

Back-up tapes are periodic "snap shots" of information residing on a given computer

system.  The 300 back-up tapes in question contain legacy information[1] from the four-year time

period of 1998 through February of 2002.[2]  Unless and until these tapes are restored, there is

simply no way of knowing whether the tapes contain responsive information.

---

[1]      Legacy information refers to information derived from a computer system that is no longer in use, either because hardware, software (or both) are obsolete and/or no longer in active use.

[2]      Based on Sicor's audit of its legacy information, it was determined that emails prior to 1998 are not reasonably accessible as these files are fragmented and damaged.  Even significant processing of these files at substantial expense is unlikely to result in the restoration of usable data.  *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 319 (2003)  (explaining that erased, fragmented and damaged data is the most difficult type of data to restore).

First and foremost, Sicor has <u>not</u> refused to produce any responsive non-privileged information that may reside on the backup tapes in question.  Rather, the sole focus of this dispute is who should pay the costs of restoring these tapes.  To date, Sicor has reviewed approximately 750,000 (seven-hundred and fifty thousand) pages of potentially responsive documents from its active electronic files, of which some 75,000 documents  -- approximately 10% -- were determined to be non-privileged and responsive and have been produced[3].  At an estimated cost of $40,000.00 (forty-thousand dollars), exclusive of attorney review time and associated costs, the cost of restoring the tapes at issue should be born by the Plaintiffs, especially in light of the fact that only 10% of the electronic data reviewed to date has been responsive to the Omnibus Discovery Requests.

## II.   <u>BACKGROUND OF THE DISPUTE</u>

Throughout the history of this litigation, Sicor has been both proactive and diligent in responding to Plaintiffs' discovery requests.  On March 25, 2004, Judge Saris issued Case Management Order No. 10 ("CMO 10"), allowing discovery "with respect to all parties, claims and issues not dismissed under the February 24, 2004 Memorandum and Order."  However, in an effort to bring structure to the pretrial process in this "massive proposed class action" (*In re AWP*, 307 F. Supp. 2d at 201), CMO 10 also set forth a two-tiered discovery plan that created two groups of defendants.  Sicor was designated as a "Phase Two" defendant.  CMO 10 at 4.  Under CMO 10, all phases of the case through summary judgment proceeded first with respect to Track One defendants.  CMO 10 at 1.

On March 31, 2004, in conflict with the timetable set forth in CMO 10, Plaintiffs served all Track One and Track Two defendants, including Sicor, with <u>eighty-two</u> "Omnibus" Requests

---

[3]       In addition, Sicor has recently produced comprehensive pricing, rebate, discount and chargeback information for its drugs at issue.  Hence, the only information at issue in this dispute are emails, which may or may not be responsive to the Omnibus Discovery Requests.

for Production of Documents as well as Interrogatories, requesting detailed information concerning all aspects of sales, marketing and pricing for each of the drugs at issue in this consolidated action. Sicor timely objected to the Plaintiffs' premature efforts to obtain discovery, but in the spirit of cooperation and to facilitate exposure of Plaintiffs' meritless claims, Sicor agreed to produce and has produced documents responsive to Plaintiffs' Omnibus Requests since June 16, 2004 and the Company has continued producing at least once per month since then. To date, Sicor has expended extensive resources to locate and review approximately 750,000 pages of electronic documents, of which approximately 75,000 were determined to be non-privileged and responsive and have been produced.

In early 2005, the 300 backup tapes for a four-year period were identified as a potential source of responsive information. However, because the information on the tapes was created and stored using computer hardware and/or software no longer in use by Sicor, much of the information contained on these tapes is unusable in its present form and must be "restored."

Upon learning of the existence of these tapes and the need for restoration, counsel for Sicor, Elizabeth Hack, tasked Sicor with obtaining estimates for cost of restoring the tapes. *See* Declaration of Clifford M. Cole, Exhibit A. The average estimate cost was approximately $40,000.00. *See id.* With estimates in hand, in late April of 2005, Ms. Hack, contacted Susan MacMenamin, co-counsel for Plaintiffs and informed her of the existence of the tapes and the cost of restoration. Ms. Hack further informed Ms. MacMenamin that it was Sicor's position that the cost of restoring the tapes placed an undue burden on Sicor and that Plaintiffs should bear the cost of restoration. *See* May 11, 2005 email from E. Hack to S. MacMenamin, Exhibit B. That email further reminded Plaintiffs' counsel that restoration and subsequent review by Sicor for responsiveness and privilege would take some time and invited Plaintiffs' counsel to advise counsel for Sicor whether Plaintiffs were amenable to paying for the cost of restoration.

3

After receiving no response to the May 11th email, on May 24, 2005, Ms. Hack again sent an email asking for Plaintiffs' position on the issue and reiterating that time was of the essence. *See* May 24, 2005 email from E. Hack to S. MacMenamin, Exhibit C.

On May 26, 2005, John Macoretta, co-counsel for Plaintiffs, and Ms. Hack conferred by phone to discuss the issue. During that phone call, Ms. Hack advised Mr. Macoretta that, per the estimates, restoration of the emails would take approximately eight weeks and that, based on its review and production pace thus far, once restored, Sicor's counsel would need time to review the tapes for responsiveness and privilege prior to production or before the December 3rd discovery cut-off. Mr. Macoretta informed Ms. Hack that Plaintiffs would not pay for the restoration of the tapes and took the position that Sicor's timetable for retrieving and producing the emails in question was "completely unacceptable." [4] *See* May 27, 2005 Letter from John Macoretta to Elizabeth Hack, Exhibit D.

## III.   ARGUMENT

Under Rule 26(c) of the Federal Rules of Civil Procedure, for good cause shown, a court may enter an order limiting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or *expense* . . . " Fed. R. Civ. P. 26(c) (emphasis added). A successful showing of good cause requires the proponent of a protective order to make a factual showing of potential harm, a opposed to mere conclusory statements. *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990). In adjudicating a motion under Rule 26(c), courts are required to balance the burden of proposed discovery against the likely benefit."

---

[4]       Mr. Macoretta's dissatisfaction with the timing of Sicor's production of any responsive information from the tapes at issue is puzzling. Sicor has been more than diligent in producing documents on an expedited basis. As discussed above, Sicor began its rolling production many months prior to the time specified in CMO 10 for Track Two Defendants and has at all times proceeded in good faith with its discovery obligations. Mr. Macoretta's suggestion that Sicor is somehow obliged to expedite restoration and abbreviate review of the information contained on the tapes in order to produce the tapes prior to the discovery cut-off is manifestly unreasonable.

*Gill v. Gulfstream Park Racing Association*, 399 F.3d 391, 400 (1st Cir. 2005). Upon a finding of good cause, courts have broad discretion to decide when a protective order is appropriate and what degree of protection is required. *See id.*

    A.    Standards Governing Electronic Discovery.

Recognizing the "exponentially greater volume that characterizes electronic data [and] which makes this form of discovery more burdensome, costly and time consuming," in November of 2004, the Committee on Rules of Practice Procedure of the Judicial Conference of the United States (the "Rules Committee) proposed amendments to the Federal Rules of Civil Procedure concerning electronic discovery. *See* Report of the Civil Rules Advisory Committee, May 17, 2004, revised, August 3, 2004 at 2.[5]

Rule 26 (b)(2), concerning the scope and limits of discovery, is highlighted for amendment. The proposed amendment to the Rule and its corresponding Committee Note make clear that, where, as here, electronically stored information is shown not to be readily accessible, courts may impose limits and specify the terms and conditions under which discovery of such information may be had. Specifically, the Rules Committee has proposed adding the following language to Rule 26(b)(2):

> *A party need not provide discovery of electronically stored information that the party identifies* as *not readily accessible.* On motion by the requesting party, the responding party must show that the information is not readily accessible. If that showing is made, the court may order discovery of the information for good cause and may specify the terms and conditions for such discovery.[6]

---

[5]    *See* http://www.uscourts.gov/rules/comment2005/CVAug04.pdf#page=24 (emphasis added). The comment period for the proposed amendments ended on February 15, 2005. The amendments are scheduled to take effect on December 1, 2006, pending Standing Committee approval.

[6]    The proposed framework for demonstrating that electronically stored information is not reasonably accessible applies equally to motions brought pursuant to Rule 26(c). The responding party must demonstrate that the discovery sought is inaccessible and therefore

The Committee Notes make clear that the proposed amendment is aimed at curbing the costs associated with retrieving and restoring legacy information:

> The amendment to Rule 26(b)(2) is designed to address some of the distinctive features of electronically stored information, including the volume of that information, the variety of locations in which it might be found, and the difficulty of locating, retrieving and producing certain electronically stored information . . . *Some information may be "legacy" data retained in obsolete systems; such data is no longer in use and may be costly and burdensome to restore and retrieve . . . Ordinarily, such information would not be considered reasonably accessible.*

Proposed Amendments to Federal Rules of Civil Procedure, Rule 26(b), Committee Note at 11 (emphasis added).

    B.    <u>Cost-Shifting is an Appropriate Remedy in Electronic Discovery Disputes.</u>

If adopted, the proposed Rules amendments would codify recent common law precedent addressing issues unique to electronic discovery. The seminal case addressing electronic discovery is *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003).[7] This decision is directly on point as to the very issue at the core of the instant dispute -- cost shifting. While acknowledging that, in the normal course of discovery, the responding party bears the associated burden of costs associated with production, the Court recognized that cost shifting in electronic discovery disputes is appropriate when such discovery places an undue burden or expense on the responding party. *See Zubulake I*, 217 F.R.D. at 318. The Court opined that whether production of electronic data may be deemed unduly expensive or burdensome turns on whether the information sought is accessible or inaccessible, which in turn depends upon the media in which it is stored. *See id.* After a thorough analysis of the various forms of electronic data and their

---

imposes an undue burden and hardship. *See* Proposed Amendments to Federal Rules of Civil Procedure, Rule 26(b), Committee Note at 13.

[7]    No fewer than five written opinions were issued in *Zubulake*, each of which dealt in some fashion with electronic discovery issues. The *Zubulake* opinion cited herein, is often referred to as "*Zubulake I*" and will hereinafter be referred to as such.

corresponding storage media (*see id*. at 318-319), the Court concluded that that data stored on ninety-four backup tapes was inaccessible because it was only usable through an intricate (and expensive) restoration process. *See id*. at 319-320.

Having determined that information on backup tapes was inaccessible and therefore subject to cost-shifting, the Court set forth a seven-part test for adjudicating cost-shifting disputes: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production compared to the amount in controversy; (4) the total cost of production, compared to the resources of each  party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. *See id*. at 322.   Applying this analysis, the Court held that restoration of a "small sample" (five) of the backup tapes at the responding party's expense was appropriate and that any ruling as to further restoration and costs was dependent upon the contents of the sample and the actual cost of restoration of the sample group.[8]

C.    The Cost-Shifting Analysis Set Forth In *Zubulake I* Applies Here and Supports Sicor's Motion for a Protective Order.

*Zubulake I* weighs in favor of requiring the Plaintiffs to pay for the cost of restoring the tapes.  In setting forth the seven-part test, the Court reasoned that the first two factors --the specificity of the discovery requests and the availability of the information sought from other sources -- are the most important.  These two factors are said to comprise a "marginal utility" test aimed at determining how likely it is the tapes will contain critical information. *See Zubulake I* at 316 n.34; *see also id*. at 323 (citing *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001)).

---

[8]    The Court required the defendant to submit an affidavit detailing the results of the sample search and the time and money spent restoring the sample group. *See id*. at 324.

In the instant dispute,  Plaintiffs eighty-two Omnibus Discovery Requests are broad both in time and subject-matter scope.  In fact, as the title suggests, the Omnibus Requests are not directed specifically to any one defendant, or group of defendants, but were issued identically to each  defendant, making it all but impossible to determine whether any of the information on these tapes is relevant and responsive, let alone available from some other source.  The tapes have been identified as potentially relevant *solely* because they contain electronic data from a four year period within the on-going 14 year class period identified in the Second Amended Master Consolidated Complaint.  As explained above, of the 750,000 pages of electronic documents reviewed thus far, only 75,000 have contained responsive non-privileged information. Given the global nature of Plaintiffs discovery requests, it would be manifestly unjust to force Sicor to pay the exorbitant costs of restoring the tapes.  *See id.* at 323 (explaining that the less likely it is for tapes to contain relevant information, the more unjust it would be to make the responding party bear the costs).

The next three factors are aimed at relative cost issues.  *See id.*  Regarding the total cost of production compared to the amount in controversy, of the three-hundred plus drugs at issue in this consolidated action, Sicor has been identified by the Plaintiffs as having manufactured eight of those drugs.  Moreover, because Plaintiffs have not (1) revealed their damages calculations, (2) identified a sum certain in damages, nor (3) ascribed to Sicor a percentage of alleged total damages, Sicor has no way of knowing the amount in controversy.   In short, uncertainty as to claimed damages is wholly attributable to the Plaintiffs and Sicor should not be forced to bear the costs associated with such uncertainty.

Furthermore, consideration of factors four and five--the resources available to each party and the ability of the parties to control their own costs also weighs in Sicor's favor.  Unlike

Laura Zubulake, a single private plaintiff in a gender-discrimination suit against one of the nations' largest investment banking firms, in the instant consolidated action, private plaintiffs are joined by a host of private and state-funded plans and are represented by a number of the nation's leading class-action law firms, whose business models are built on assuming certain costs and risks associated with large class actions. By contrast, since the inception of this lawsuit, Sicor has been at a distinct disadvantage in managing its own costs. Indeed, as a defendant in this massive consolidated class-action, Sicor has no choice but to comply with Plaintiffs' discovery requests to the best of its ability. The sheer size and breadth of this lawsuit and the large number of discovery requests at issue make cost control all but a winsome ideal.

Finally, with regard to the last two factors, the importance of the issues at stake in the litigation  and the relative benefits to the parties of obtaining the information, Sicor's acknowledgement of the importance of this litigation is evidenced by its exemplary cooperation with the Plaintiffs thus far. Sicor does not take lightly the allegations against it or the importance of full cooperation in the discovery process. For that reason, Sicor will produce any and all relevant, non-privileged information that may reside on the backup tapes, but asks only that Plaintiffs bear the costs associated with restoring those tapes.

## IV.    CONCLUSION

As the foregoing demonstrates, forcing Sicor to pay the costs associated with the restoration of 300 back-up tapes, which are only potentially responsive to Plaintiffs' Omnibus discovery requests issued to all defendants would place an undue burden and expense on Sicor. Accordingly, Sicor respectfully requests that the Court enter an order requiring Plaintiffs to pay the costs of restoring the tapes and afford such other relief as the Court deems just and proper.

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), the undersigned hereby certifies that I have conferred with counsel for plaintiff in a good faith effort and to resolve or narrow the issues presented in this motion.

Dated June 14, 2005                    Respectfully submitted:

Elizabeth I. Hack
Elizabeth S. Finberg
SONNENSCHEIN NATH & ROSENTHAL, LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
(202) 408-6400

*-- and--*

Robert J. Muldoon, Jr. (BBO # 359480)
James W. Matthews (BBO # 560560)
Pamela A. Zorn (BBO # 640800)
SHERIN AND LODGEN LLP
100 Summer Street
Boston, MA 02110
(617) 646-2000

*Counsel for Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc.*

10