# EXHIBIT A



Slip Copy

Page 1

2005 WL 1242349 (W.D.Va.)

**(Cite as: 2005 WL 1242349 (W.D.Va.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Virginia.
Letha HOLLAND, Plaintiff,
v.
COLE NATIONAL CORP., et al., Defendants.
**No. 7:04-CV-246.**

May 24, 2005.

Devon James Munro, John Palmer Fishwick, Jr., John Eric Lichtenstein, Lichtenstein, Fishwick & Johnson, PLC, Roanoke, VA, for Plaintiff.

Melissa Wolf Riley, McGuire Woods LLP, Charlottesville, VA, Earle Duncan Getchell, Jr., Richard Cullen, McGuirewoods LLP, Richmond, VA, for Defendants.

*REPORT AND RECOMMENDATION*

URBANSKI, Magistrate J.

*1 This matter is before the court on defendants Cole National Corp. and Cole National Group, Inc.'s (collectively "Cole National defendants" ') motion to dismiss for lack of personal jurisdiction and Cole Vision Corporation's ("Cole Vision's") motion to dismiss for failure to state a claim. This matter is before the undersigned by designation of the district court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In her amended, putative class action complaint, plaintiff Letha Holland ("Holland") alleges violations of the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, and common law fraud and fraud in the inducement.

Holland alleges that she was unwittingly sold a $35 extended warranty and lens care kit when she responded to a Sears Optical advertisement promising "50% Off of a Complete Pair of Eyeglasses." This purchase, according to Holland, was part of "a nationwide, internal policy requiring and encouraging all employees and managers to charge the customers and sell the eyeglasses in a manner that prevented--and in fact avoided and concealed--any notice to the customer of the additional charges for the extended warranty and kit." Am. Compl. ¶ 7.

After a thorough review of the allegations of the amended complaint and the case law, the undersigned concludes and recommends that this case be dismissed. While Holland's allegations appear sufficient to state a common law fraud claim and her claimed monetary loss provides her with standing, the scheme she has alleged otherwise is a square peg in RICO's round statutory hole. Holland's hidden charge claim in Count I is not of the criminal dimension and degree necessary to invoke RICO's stark remedies. *See, e.g., Al-Abood v. El-Shamari,* 217 F.3d 225 (4th Cir.2000); *Flip Mort. Corp. v. McElhone,* 841 F.2d 531 (4th Cir.1988); *HMK Corp. v. Walsey,* 828 F.2d 1071 (4th Cir.1987); *Int'l Data Bank, Ltd. v. Zepkin,* 812 F.2d 149 (4th Cir.1987). Holland's allegations also fail to meet the "continuity plus relationship" test required for a RICO pattern. *See H.J., Inc. v. Northwestern Bell Tel., Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Menasco, Inc. v. Wasserman,* 886 F.2d 681 (4th Cir.1989). Further, as to Count II, despite two opportunities, Holland has utterly failed to meet her burden of pleading Cole Vision's "operation and management" of Sears, the alleged enterprise. *See Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

Dismissal of the RICO claims requires dismissal of the remaining counts as well. There is no dispute

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)

(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 2

that the claim raised in this suit does not meet the threshold jurisdictional requirement for bringing a Magnusson-Moss Warranty Act claim in federal court. Likewise, absent a federal claim, the common law fraud claims should be dismissed as well as they do not provide any independent basis for subject matter jurisdiction. Accordingly, it is RECOMMENDED that this action be dismissed in its entirety and stricken from the docket of the court.

I. *Facts Alleged in the Amended Complaint*

*2 Holland alleges that she went to a Sears Optical retail store in Roanoke, Virginia in April, 2004 to purchase eyeglasses in response to a "coupon and sale" advertisement of "50% Off of the Price of a Complete Pair of Eyeglasses." Am. Compl. ¶ 10. Sears Optical retail stores are owned and operated by the Cole Vision and Cole National defendants under various contractual arrangements with Sears, Roebuck & Co. ("Sears"), which is not a party to this action. *Id.* ¶ 3. At the store, Holland picked out some frames and was told that the total price of her eyeglasses was $269.49. *Id.* ¶ 12. Holland claims that the $269.49 price secretly included a $35 charge for an extended warranty and lens care kit, which she had neither requested nor was offered. As such, she claims the total price exceeded 50% of the total cost of her glasses, rendering the advertisement false and misleading. Holland was not provided with an itemized receipt, nor was she told that the total price she paid was inflated by $35 to cover the lens care kit and extended warranty. *Id.* ¶¶ 13, 15. Holland claims that had she known she was being charged the extra $35, she would not have paid it or the allegedly fraudulent price of $269.49. Further, Holland alleges that she would not have come to the store but for the representations contained in the advertisement. *Id.* ¶ 16. Holland alleges that she picked up her eyeglasses at Sears Optical on May 7, 2004. Four days later, on May 11, 2004, Holland filed this class action, alleging on behalf of herself and other class action members that she was defrauded.

Unlike her original complaint, Holland's amended complaint includes similar allegations from other persons. After reading a "Buy One--Get One Free" advertisement in a local newspaper, Reba Sexton purchased glasses from a Roanoke, Virginia Sears store in September, 2002. *Id.* ¶¶ 17-21. Linda Smith responded to the same 50% off advertisement as Holland and purchased glasses in Roanoke in May, 2004. *Id.* ¶¶ 22-27. In April, 2004, Nancy Snodgrass responded to a 50% off internet coupon and sale advertisement in San Angelo, Texas and purchased a pair of glasses. *Id.* ¶¶ 28-34. Atlanta residents Hazel and James Weathers responded to the 50% off coupon and sale advertisement that they saw on a local television station and purchased glasses at a Sears store in Georgia in March, 2004. *Id.* ¶¶ 35-43. Holland alleges that all of these purchases surreptitiously included the $35 charge. *See generally id.* ¶¶ 44- 55. Consequently, the amended complaint alleges that the amount in controversy "has the potential of exceeding $75,000.00." *Id.* ¶ 1.

II. *Standard of Review*

Federal "notice" pleading standards require that a complaint be read liberally in favor of the plaintiff. Fed.R.Civ.P. 8; *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Anderson v. Found., for Advancement, Educ. and Employment of Am. Indians,* 155 F.3d 500, 505 (4th Cir.1998). When the court reads a complaint, it takes all allegations as true and draws all reasonable inferences in favor of the plaintiff. *DeSole v. United States,* 947 F.2d 1169, 1171 (4th 1991). Dismissal on the pleadings under Rule 12(b)(6) is proper only if it appears beyond a doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Id.; Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1133-34 (4th Cir.1993). In light of the standard of review, federal courts have traditionally viewed even poorly drafted complaints in a light most favorable to plaintiff. *Id.,* n. 4.

III. *Cole Vision's Motion to Dismiss the RICO Allegations*

*3 Cole Vision contends that Holland has not specified the fraud giving rise to the RICO claim with particularity as required by Fed.R.Civ.P. 9(b).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)

(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 3

While the substance of the alleged misrepresentation is adequately set forth in the amended complaint for Rule 9(b) purposes, Holland again fails to sufficiently plead predicate acts giving rise to a RICO violation.

Holland alleges that Cole Vision represented that the price of her glasses would be 50% off the retail price, but that she unknowingly was charged an extra $35 for an extended warranty and lens care kit. The fact that the advertisement offered 50% off, when in fact Holland was surreptitiously charged $35 for these two items is the gravamen of her complaint, and is set forth with sufficient particularity to meet the pleading requirements of Rule 9(b).

When Holland initially filed her complaint, defendants asserted that her claim was not particular enough because she did not provide a copy of the advertisement or coupon, quote its precise language, or provide the time and place of the offending advertisement. In her amended complaint, Holland still did not provide a copy of the advertisement or coupon, quote its precise language, or provide the time and place of the advertisement. [FN1] This said, as indicated in the previous Report and Recommendation, Holland's allegations clearly apprise defendants of the particular misrepresentation alleged here. [FN2]

> FN1. Additionally, plaintiff did not provide any of this information for the additional plaintiffs included in the complaint. See Amended Com pl. ¶¶ 17-18, 22-23, 28-29, 35-36 (discussing the advertisements to which the other members of plaintiff's putative class responded).

> FN2. In an October 22, 2004 Report and Recommendation, it was the opinion of the undersigned that the Complaint adequately alleged a claim for common law fraud. See Report and Recommendation at 12-17. Nothing provided by defendant Cole Vision suggests any change is necessary to this earlier conclusion. At the hearing, defendant Cole Vision tendered an exemplar advertisement which it asserts contains certain disclaimer language--"Exam and care materials not included"--rendering plaintiff's common law fraud claims ineffective. Review of this exemplar advertisement, however, reflects that the disclaimer language applies only to a daily contact lens offer not applicable here.

Nevertheless, plaintiff's allegations fail to state a RICO claim. In its motion to dismiss under Rule 12(b)(6), Cole Vision argues that plaintiff's RICO claims be dismissed for a number of reasons, including (A) the acts of wire and mail fraud are not pled with particularity; (B) plaintiff lacks standing to bring her complaint; (C) plaintiff's allegations are insufficient to constitute a pattern of racketeering activity; and (D) regarding Count II, plaintiff does not adequately allege control over Sears, the alleged "enterprise." Having reviewed the allegations, it appears that plaintiff barely clears the hurdle posed by Rule 9(b) and has standing to allege a violation of the RICO statute. Plaintiff does not, however, meet the other requirements for pleading a RICO claim. These arguments will be discussed in turn.

A. *Predicate Acts--Sufficiency of Wire and Mail Fraud Allegations*

The federal mail and wire fraud statutes prohibit the use of the mails or interstate wires in furtherance of schemes to defraud. 18 U.S.C. §§ 1341, 1343. For the government to obtain a conviction for mail or wire fraud, it must prove (1) a scheme disclosing an intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme. *See Chisolm v. Transouth Fin. Corp.,* 95 F.3d 331, 336 (4th Cir.1996). The "use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme." ' *United States v. Photogrammetric Data Servs., Inc.,* 259 F.3d 229, 253 (4th Cir.2001). As the Fourth Circuit has explained, the key is whether the communication occurred "for the purpose of executing the scheme." *Morley v. Cohen,* 888 F.2d 1006, 1009-10 (4th Cir.1989).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

*4 In the previous Report and Recommendation, the undersigned concluded that although the plaintiff had met her burden for pleading common-law fraud, plaintiff had failed to plead the involvement of the mail system excepting in the most conclusory of terms. *See* Report and Recommendation at 6. The court found that plaintiff had not indicated how the mail had been used to further defendants' alleged scheme. *Id.* It was then recommended that the court dismiss the two RICO counts for failure to plead a RICO predicate act with sufficient particularity.

Plaintiff has attempted to remedy these defects by claiming in the Amended Complaint that the 50% off ad must have been communicated by wire or mail between Cole Vision, its advertising agent, and/or the newspapers and other media who published the ads. *See* Amended Compl. ¶¶ 44-48. Plaintiff states that the advertisements which are the subject of this litigation are "each transmitted on a routine basis, through the wires and mail." *Id.* ¶ 45. Cole Vision produces the involved advertisements and either it or its marketing agent wires or mails them to distribution companies which use media to distribute them to customers. *Id.* ¶¶ 45-46. Plaintiff also alleges that some of the other putative class members receive ads through the internet, television commercials, or the mail. *Id.* ¶ 47. In making these allegations, plaintiff has provided greater specificity than in her initial complaint.

The standard for alleging use of the wires or mail for wire or mail fraud is relatively low. The mailing must be " 'for the purpose of executing' a scheme to defraud or attempting to do so." *Morley v. Cohen,* 888 F.2d 1006, 1009-10 (4th Cir.1989); *United States v. Tarnopol,* 561 F.2d 466, 471 (3d Cir.1977); *see also Kann v. United States,* 323 U.S. 88, 94, 65 S.Ct. 148, 89 L.Ed. 88 (1944). To bring a defendant's conduct within the ambit of the mail fraud statute, it must be shown that the "mailings were sufficiently related to the [allegedly fraudulent] scheme." *United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by the appropriate state law." *Kann,* 323 U.S. at 95. "It is not necessary that the scheme contemplate the use of the mails as an essential element." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Photogrammetric Data Servs., Inc.,* 259 F.3d 229, 253 (4th Cir.1989). The use of the mails must be "incident to an essential part of the scheme." *Pereira,* 347 U.S. at 8; *Photogrammetric Data Servs.,* 259 F.3d at 253. "It is sufficient if the mailing furthers the scheme or is incident to an essential part of it." *United States v. Otto,* 742 F.2d 104, 108 (3d Cir.1984).

Even though the use of the mail or wires in this case are tangential to the alleged scheme to defraud, plaintiff has alleged enough of a connection to the use of the mail or wires to satisfy her obligations at the pleading stage. Plaintiff alleges that she and others were lured to Cole Vision stores by the promise of "50% Off A Complete Pair of Eyeglasses" by an advertisement placed in a local newspaper. While decidedly thin, the use of advertisements transmitted through wires or mail to newspapers, or appearing via the internet or television, provides enough of a nexus to satisfy the statutory requirements at this stage of the proceeding. *See United States v. Buchanan,* 544 F.2d 1322, 1324-25 (5th Cir.1977).

B. *Plaintiff's Standing to Bring Suit under RICO*

*5 To recover civil RICO damages, an individual must allege that he was injured "by reason of" the pattern of racketeering activity. *Chisholm v. Transouth Fin. Corp.,* 95 F.3d 331, 337 (4th Cir.1996); *see also* 18 U.S.C. § 1964(c). To meet this burden with respect to mail and wire fraud, a plaintiff must "plausibly allege both that [he] detrimentally relied in some way on the fraudulent mailing [or wire] ... and that the mailing [or wire] was a proximate cause of the alleged injury to [his] business or property." *Chisholm,* 95 F.3d at 337. The alleged fraud "must be a 'classic' one[,] ... the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation." *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 5

Cole Vision contends Holland fails to allege any such injury to her property because (a) she has not suffered any financial injury because she received glasses and frames in exchange for her money; and (b) because she was aware of Sears' money-back return guarantee. Both of these arguments are without merit.

The first argument is that plaintiff was not injured because she actually received the glasses and the warranty kit. This argument fails, however, because Holland complains that she paid more for the glasses than 50% of the normal purchase price. Other courts have allowed suits in comparable circumstances. See *Todaro v. Orbit Int'l Travel, Ltd.*, 755 F.Supp. 1229, 1237 (S.D.N.Y.1991); *Perry v. Household Retail Servs.*, 953 F.Supp. 1370, 1373-74 (M.D.Ala.1996). As was concluded in the earlier Report and Recommendation on the same issue, "[t]here is no doubt that Holland has alleged that she has been injured by having to pay the extra $35." Report and Recommendation at 13. Indeed, "having to pay an additional amount because of the fraud of defendants is a long-recognized element of injury." *Id.*, citing *United States v. Sforza*, 326 F.3d 107, 113 (2d Cir.2003); *In re Managed Care Litig.*, 150 F.Supp.2d 1330, 1339 (S.D.Fla.2001).

The second argument, that Sears's money-back guarantee exempted Cole from being liable for violating RICO, also lacks merit. The argument that a money-back guarantee excuses fraud has been repeatedly rejected. See *F.T.C. v. Think Achievement Corp.*, 312 F.3d 259, 261 (7th Cir.2002) (holding that an advertisement containing a money-back guarantee could still be fraudulent); *F.T.C. v. SlimAmerica, Inc.*, 77 F.Supp.2d 1263, 1272-73 (S.D.Fla.1999) ("The existence of a money-back guarantee, such as the one for Super-Formula in this case, is neither a cure for deception nor a remedy for consumer injury."); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir.1994) (holding that "the existence of a money-back guarantee is insufficient reason as a matter of law to preclude a monetary remedy"); *Montgomery Ward v. F.T.C.*, 379 F.2d 666, 671 (7th Cir.1967) ("[Petitioner] cannot rely, as it attempts to do, upon a general company money back guarantee policy," as "[a]nything might then be falsely advertised as long as unsatisfied customers were returned their money").

*6 Cole Vision's attempt to limit these cases to situations involving the Federal Trade Commission is unavailing. Both the language and logic of these cases support the conclusion that in this context as well as an FTC enforcement action, the availability of a money-back guarantee does not absolve the defrauding party of the underlying misrepresentation. Plaintiff contends that each purchaser of glasses paid the hidden $35 charge. Under these circumstances, it is likely that there are many persons who unwittingly paid the hidden $35 charge who chose not to avail themselves of the guarantee. Regardless of the availability of the guarantee, these persons were victimized by having to pay $35 more than was advertised, which provides a sufficient basis for their standing to sue.

C. *Pattern of Racketeering Activity*

Defendants contend that the predicate acts alleged in this case--hiding the cost of a warranty and lens care kit--do not rise to the level of a RICO violation. In that regard, defendants contend that the alleged commercial activity is not of criminal dimension and degree nor does it constitute ongoing unlawful activities whose scope and persistence pose a special threat to social well-being. See *Int'l Data Bank, Inc., Ltd. v. Zepkin*, 812 F.2d 149, 155 (4 th Cir.1987); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir.1989). Defendants argue that the court should dismiss Holland's RICO claim which alleges nothing more than garden variety commercial fraud dressed up in the language of the RICO statute.

Bearing on Cole Vision's argument is the Supreme Court's opinion in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 244, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), where a five-justice majority of the Court broadly construed the RICO statute to include criminal activity beyond traditional organized crime. [FN3] "[T]he argument for reading an organized crime limitation into RICO's pattern concept, whatever the merits and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 6

2005 WL 1242349 (W.D.Va.)

**(Cite as: 2005 WL 1242349 (W.D.Va.))**

demerits of such a limitation as an initial legislative matter, finds no support in the Act's text, and is at odds with the tenor of its legislative history." *Id.*

> FN3. A four-justice concurrence appears to favor a reading more closely aligned with that favored by defendants. *See id.* at 255 (Scalia, J., concurring) ("[T]he word "pattern" in the phrase pattern of racketeering activity was meant to import some requirement beyond the mere existence of multiple predicate acts....But what that something more is, is beyond me.")

While traditional notions of "organized crime" are not required to state a RICO claim, nothing in the Supreme Court's *H.J., Inc.* ruling suggests any retreat from the requirement that the predicate acts be of criminal dimension and degree. As the Court noted, "Congress drafted RICO broadly enough to encompass a wide range of *criminal* activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways. *Id.* at 248-49 (emphasis added).

The Fourth Circuit consistently has resisted transforming ordinary commercial fraud of the sort alleged here into RICO claims. In *HMK Corp. v. Walsey*, 828 F.2d 1071 (4th Cir.1987), plaintiff alleged that defendant developer misled county and state officials thereby subverting the county's planning process, resulting in a windfall to defendants. Terming the dispute unlike any "other dogfight between developers," 828 F.2d at 1075, the Fourth Circuit declined to apply RICO's "strong incentives to civil enforcement" to the development squabble. The court reasoned:

*7 In enacting RICO, Congress did not intend to preempt and federalize the field of state business law. Since the federal cause of action does converge, however, with state actions that comprise predicate acts on which RICO is based, some overlap and displacement of state law is inevitable. To recognize a pattern of racketeering activity under these facts, however, would work a wholesale displacement of state authority that Congress never intended.

*Id.* at 1076. Likewise, in *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531 (4th Cir.1988), the Fourth Circuit, acknowledging a split in the circuits, refused to apply RICO to a mail fraud claim against the directors of a corporation engaged in the fraudulent conveyance of corporate assets during and after dissolution of the corporation, concluding as follows:

> In fact, a great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple individual instances of fraud, if one choses to do so. But to adopt such a characterization would transform "every such dispute ... [into] a cause of action under RICO." *HMK*, 828 F.2d at 1074. Our precedents have not adopted an interpretation of the statute producing such a result.

841 F.2d at 538.

In *Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir.2000), the Fourth Circuit held that it was "cautious about basing a RICO claim on predicate acts of mail and wire fraud because '[i]t will be the unusual fraud that does not enlist the mails and wires in its services at least twice," ' 217 F.3d at 238, (quoting *Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d at 506 (4th Cir.1998)); *Zepkin*, 812 F.2d at 154-55 (4th Cir.1987). The Fourth Circuit reasoned that "[t]his caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity.... We have reserved RICO liability for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." ' *Al-Abood*, 237 F.2d at 238, (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir.1989)).

The conduct of this case, including a hidden charge for a warranty and lens care kit, does not appear to rise to the level necessary to state a RICO violation. As the Fourth Circuit has noted, whether the alleged activity rises to a "criminal degree" that is "widespread" is an inquiry that must be decided on a case-by-case basis. *See Brandenburg v. Seidel,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 7

859 F.2d 1179, 1185 (4th Cir.1988), *overruled on other grounds by Quakenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). This case involves Cole Vision's alleged practice of not advising customers of a hidden $35 charge for a glasses warranty and lens care kit. Nothing about this case suggest that it is anything more than garden-variety fraud. As such, consistent with the Fourth Circuit's ruling in *Al-Abood,* the conclusion is inescapable "that this case is not sufficiently outside the heartland of fraud cases to warrant RICO treatment." *Al-Abood,* 217 F.2d at 238.

*8 To constitute a pattern of racketeering activity, not only must the alleged fraud be of sufficient criminal degree to pose a special threat to social well-being, it must also "pose a threat of continued criminal activity." *Al-Abood,* 217 F.3d at 238. In assessing allegations of a RICO pattern, the Supreme Court has employed a "continuity plus relationship" test. *H.J., Inc.,* 492 U.S. at 238. The pattern requirement is not a mechanical formula, *see Zepkin,* 812 F.2d at 155; rather, it is a common sense, fact-specific inquiry. *H.J., Inc.,* 492 U.S. at 237-38; *Anderson,* 155 F.2d at 506 ("[T]hese criteria are not always easily applied and depend on the facts of each particular case.").

Following *H.J., Inc.,* the Fourth Circuit noted that "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Menasco,* 886 F.2d at 683, (quoting *H.J., Inc.,* 492 U.S. at 237). The *Menasco* court explained further:
> Continuity, in turn, refers "either to a closed period of *repeated* conduct, or to past conduct that by its nature projects in the future with a threat of *repetition.* To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or ... otherwise constitute a threat of, *continuing* racketeering activity." Significantly, "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."

Thus, predicate acts must be part of a prolonged criminal endeavor. 886 F.2d at 683-84 (discussing *H.J., Inc.,* 492 U.S. at 238.) *Menasco* involved one perpetrator and two victims, and the transaction took place over approximately one year. The Fourth Circuit deemed the allegations to be insufficient to state a RICO claim, contrasting *H.J., Inc.* as follows:
> *H.J., Inc.* defendants' numerous predicate acts spanned at least six years. During that period, the defendants employed a variety of stratagems including cash payments to commissioners, offers of future employment, meals, parties, and airline, sporting and entertainment tickets. Thousands of Northwestern Bell customers suffered long term, multiple and repeated injuries. The scale on which racketeering is conducted may provide some indication of its ongoing nature. The number of victims, as well as the duration and magnitude of the scheme to defraud, plainly distinguish *H.J., Inc,* from the instant case. In the face of allegations of far more widespread racketeering than alleged here, we have held that no pattern of racketeering activity existed and that plaintiffs must seek recourse outside the RICO statute.

*Id.* at 684-85.

Likewise, in *Al-Abood,* the Fourth Circuit noted that "[t]he main predicate acts here were mail and wire fraud, and although they were related and involved three discrete schemes spanning several years, there was only one victim of the fraud." *Id.* The court noted that while there is no *per se* rule against a RICO claim involving only one victim, "the narrow focus of the scheme here-- essentially a dispute between formerly close family friends--combined with the commonplace predicate acts persuades us that the facts here do not satisfy the pattern requirement." *Id.*

*9 Plaintiffs seek to distinguish *Al-Abood* by relying on the fact that the focal point of the Fourth Circuit's reasoning--the existence of only one victim in that case--is lacking here as plaintiff alleges that the fraud which beset plaintiff Holland was visited upon many other consumers, including others in Virginia, Texas and Georgia, at the same time. That distinction is a valid one, but does not change the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 8

outcome. While there was only one victim in *Al-Abood,* that case involved a variety of financial scams carried out over a period of years. Here, in contrast, while the number of individual victims may be large, the scheme is both simple and short, and consists entirely of an eyeglass sale with a hidden $35 charge. Employing the analysis set forth in *Al-Abood,* the undersigned is convinced that the Fourth Circuit would reach the same conclusion--that the pattern requirement is not met because this case involves only a single predicate act of luring customers to purchase glasses while not revealing a hidden $35 charge for a warranty and lens care kit.

The Fourth Circuit's recent opinion in *American Chiropractic v. Trigon Healthcare,* 367 F.3d 212, 233-35 (4th Cir.2004), confirms this point. There a chiropractic association, individual chiropractic doctors and patients brought suit against Trigon, a health insurer, claiming antitrust, RICO and state tort violations, contending that Trigon used its reimbursement policies and treatment guidelines to limit severely the flow of insurance dollars to chiropractors and steer those monies toward medical doctors. *Id.* at 217-18. The complaint stated that Trigon committed mail fraud, wire fraud and extortion, and the Fourth Circuit affirmed dismissal of the RICO claim, ruling that the justifiable reliance element of fraud was lacking. The wire and mail fraud alleged by the chiropractors was that they were induced by representations in its Ancillary Professional Provider Agreement that Trigon would reimburse them according to a certain scale, when, in fact, Trigon did not so so. *Id.* at 233-34. After finding the reliance element of the wire and mail fraud claims lacking, the Fourth Circuit affirmed dismissal of the RICO claim on the basis of the pattern requirement, as follows:

> To withstand a motion to dismiss for failure to state a RICO claim, a plaintiff must plausibly allege at least two predicate acts of racketeering. As noted above, American Chiropractic's complaint alleged three predicate acts-- mail fraud, wire fraud, and extortion. Because we have held that American Chiropractic failed to state a claim for mail or wire fraud, it has failed to allege at least two predicate acts of racketeering, and we need not address whether it properly alleged a claim of extortion.

Id. at 235. Thus, even though plaintiff American Chiropractic Association claimed that many chiropractors were injured by Trigon's failure to reimburse them in accordance with the Provider Agreement, in rejecting extortion as the lone predicate act, the Fourth Circuit obviously did not consider each instance of reduced reimbursement to be a separate predicate act. Rather, it broadly construed the predicate act requirement, finding that as there was no wire or mail fraud, the extortion claim could not stand alone.

*10 The same logic applies here. In this case, Holland's claim concerns a single scheme whereby customers are lured by the promise of half price glasses without knowing that there was a hidden $35 charge. The fraud alleged comes from the text of the advertisements, whether transmitted by wire or mail. Following the logic of *American Chiropractic,* the predicate acts for RICO purposes consist of the advertisements, and there is no separate predicate act each time a pair of glasses is sold. Were that the case, the Fourth Circuit could have found a multiplicity of predicate acts in *American Chiropractic* based on the alleged multiple reduced reimbursements paid to chiropractors by Trigon. Instead, the Fourth Circuit dismissed the RICO claim as there was only one predicate act, extortion, remaining after dismissal of the mail and wire fraud claims.

As the Fourth Circuit held in *Menasco:*
> [T]his case presents a paradigm of one in which no pattern of racketeering activity is present." 886 F.2d at 685. If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim. *Flip Mortgage Corp. v. McElhone,* 841, F.2d 531, 538 (4th Cir.1988); *HMK Corp. v. Walsey,* 828 F.2d 1071, 1074 (4th Cir.1987). If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless. We refuse, as did *H.J., Inc.,* to read the statutory term as surplusage. *See also Sedima, R.P.R.L. v. Imrex Co., Inc.,* 473

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                   Page 9
2005 WL 1242349 (W.D.Va.)

**(Cite as: 2005 WL 1242349 (W.D.Va.))**

U.S. 479, 500, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (stating that RICO is "quite different from the original conception of its enactors" in part because of the failure of "courts to develop a meaningful concept of 'pattern' "). 886 F.2d at 685.

Earlier this year, the District Court of Maryland dismissed a RICO claim for failure to satisfy the pattern requirement. *Freidler v. Cole,* 2005 U.S. Dist. LEXIS 2994 (D.Md. Feb. 28, 2005). The opinion in that case synthesized the Fourth Circuit's analysis of the pattern requirement as follows:

> The Fourth Circuit has identified several factors to consider when determining whether a RICO pattern exists. These factors, including, the "number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries," should be considered along with "all the facts and circumstances of the particular case-with special attention to the context in which the predicate acts occurred." *Brandenburg v. Seidel,* 859 F.2d 1179, 1185 (4th Cir.1988), *overruled on other grounds by Quakenbush v. Allstate Ins. Co.,* 517 U.S. 706, 135 L.Ed.2d 1, 116 S.Ct. 1712, , 116, S.Ct. 1712 (1996). *See also Park, et al. v. Jack's Food System, Inc.,* 907 F.Supp. 914, 920 (D.Md.1995).

Using these factors to analyze whether Holland's claims are sufficiently "outside the heartland of fraud cases to warrant RICO treatment," *Al--Abood,* 217 F.3d at 238, it is apparent that this case does not present the sort of "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco,* 886 F.2d at 684. While it is likely that there were many purchasers of glasses who were charged the hidden $35, this fact alone is insufficient to impose RICO liability. All of the other factors weigh against finding a RICO pattern. This case involves a scheme by Cole Vision to lure customers to its stores by promising glasses at half off the price and secretly add a $35 charge. The predicate acts--the advertisements-- are neither varied nor numerous and comprise but a single scheme. Paying special attention to the context of this claim--commercial advertising--the undersigned is convinced that this is not the sort of claim Congress envisioned when it crafted the pattern requirement.

**\*11** Nor is the scheme of such duration to invoke RICO's strictures. Plaintiff alleges that she, Linda Smith, Nancy Snodgrass, and Hazel and James Weathers responded to the 50% off ads in March-May, 2004, (Amend.Compl.¶¶ 10, 22, 28, 35), and that Reba Sexton responded to a Buy One, Get One Free ad in September, 2002. (Amend.Compl.¶ 17.) There is no allegation that the 50% off or "Buy One, Get One" Free "sales" were ongoing or were of unlimited duration. Both common understanding of the concept of a "sale," and a plain reading of the amended complaint, is that these were limited time promotions. (*See, e.g.,* Amend. Compl. ¶ 40, alleging that the Weathers were concerned the sale had expired.) [FN4] As the Supreme Court noted in *H.J., Inc.,* claims such as this involving "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." 492 U.S. at 240. *See also GE Investment Private Placement Partners II v. Teddy Dale Parker,* 247 F.3d 543 (4th Cir.2001); *Eplus Technology, Inc. v. Aboud,* 313 F.3d 116, 182 (4th Cir.2002).

> FN4. Although not formally incorporated by reference in the Amended Complaint, the text of the exemplar advertisement proffered by Cole Vision at the hearing on its face reflects an expiration date of May 29, 2004. The fact further supports the limited duration of the alleged 50% off sale. Consideration of the expiration date on the exemplar ad does not require conversion of this motion to one under Rule 56. When plaintiff has actual notice of all documents referred to in movant's papers and has relied upon them in framing the complaint, the necessity of translating a motion under Rule 12(b)(6) into a motion for summary judgment under Rule 56 is largely dissipated. *See American Chiropractic,* 367 F.3d at 234; *Stewart v. Pension Trust of Bethlehem Steel Corp. &*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 10

*Subsidiary Cos.,* 12 Fed. Appx. 174, 176 (4th Cir.2001); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.,* 18 F.3d 1161, 1164 (4th Cir.1994); see also *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-78 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) (holding that although the court declined to consider a stock purchase agreement, offering memorandum and warrant on a Rule 12(b)(6) motion to dismiss, it could have viewed them without converting that motion into one for summary judgment where the non-moving party had notice of these documents because they were either in their possession or they had used them in bringing the action); *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."). Where the court considers only such materials in ruling on a motion to dismiss, it is not required to convert the motion into one for summary judgment.

Following this precedent, the scheme at issue in this case, use of the mail and wires to episodically publish a fraudulent advertisement, falls outside the scope of RICO's continuity requirement. Given the allegations of the Amended Complaint, the alleged wire and mail fraud in this case is appropriately viewed as having closed-end continuity given the limited duration of the 50% off sale. Viewed in this light, it is incumbent on Holland to allege a "series of related predicates extending over a substantial period of time." *H.J., Inc.,* 492 U.S. at 242. At most, Holland alleges one 50% off promotion in the spring of 2004 and a "Buy One, Get One Free" promotion in September, 2002. While it is possible that there may be more, the Amended Complaint does not allege that the mail and wire fraud associated with the publication of these allegedly deceptive advertising promotions extends beyond those periods. The requirement of a "prolonged criminal endeavor," *Eplus Technology,* 313 F.3d at 182, is wholly lacking here. For all of these reasons, this claim is squarely within "the heartland of fraud cases," *Al-Abood,* 217 F.3d at 238, and does not meet the standard for asserting a RICO claim.

D. *Cole Vision's "Operation or Management" of Sears, the Alleged RICO Enterprise.*

Count II of the Amended Complaint, brought under 18 U.S.C. § 1962(c), concerns infiltration of a legitimate business, Sears, through the mail and wire fraud of Cole Vision. Such a claim requires plaintiff to allege that Cole Vision operates or manages the affairs of a separate enterprise, Sears, through a pattern of racketeering activity. Section 1962(c) provides that "[i]t shall be unlawful for any person ... associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity." 18 U.S.C. § 1962(a)-(c).

*12 Considering this section of the RICO statute, in *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court held that to conduct or participate in the conduct of an enterprise's affairs under section 1962(c), a defendant "must participate in the operation or management of the enterprise itself."

Here, plaintiff contends that the requirement is met because Cole Vision's racketeering activity "implicates and mobilizes Sears and Sears' employees because each fraudulent sale creates obligations for Sears. Cole Vision's independent actions specifically bind Sears to stand behind every fraudulent transaction." Am. Compl. ¶ 95. Additionally, plaintiff alleges that contractually through its fraud, Cole Vision obligates Sears to stand by Cole Vision's scheme by use of Sears' receipts and through Sears' guarantee policy.

Defendant's major argument in opposition point relies on *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721 (7th Cir.1998). The court in *Goren* held that plaintiff failed meet the *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), "operation or management test" because the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 11

complaint did not contain any factual allegations that would lead to the conclusion that any of the defendants were involved in directing the affairs of the alleged enterprise. *Goren,* 156 F.3d at 728.

Holland counters this argument asserting that nothing in the amended complaint leads to a reasonable inference that Cole was "simply performing services for an enterprise." *See* 156 F.3d at 727-28. Holland claims that the amended complaint alleges that Sears performed services for Cole by virtue of Cole Vision's financial leverage and under the obligations spawned by Cole's fraud. As such, they argue that *Goren* is inapplicable.

Many courts have granted motions to dismiss in similar situations. *See Reves,* 507 U.S. at 185 (holding that liability under RICO is proper only where parties "participate in the operation or management of an enterprise"); *Goren,* 156 F.3d at 727-28 (holding that there was no 'operation or management' despite the fact that defendants automatically designated themselves "business partner" to entities that marketed the enterprise's products and took orders on behalf of the enterprise; instead "these defendants are best characterized as contractors hired by the enterprise to perform specific tasks.").

Holland urges that under the statute, as interpreted by *Reves,* sufficient participation is established if Cole Vision conducts may be confined to conducting "some part" of Sears's affairs at the level of "lower rung participants" on the in-store or management levels. *Reves,* 507 U.S. at 184. Plaintiff notes that examples of such participation or direction could come from an outsider through "bribery," as in *Reves,* or through "other methods of inducement." *See Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1559 (1st Cir.1994). In *Aetna,* the First Circuit held that defendants who submitted fraudulent insurance claims to employees of Aetna caused Aetna to pay out money in response, and thereby exerted sufficient control over the affairs of Aetna to satisfy the "operation and management test." *Id.* The court held that defendants' scheme "affected, in a material degree, the direction of Aetna's affairs by employees of Aetna." *Id.*

*13 The same is not true in this case. In *Aetna,* the alleged fraud of the defendants caused Aetna to make decisions as to how it conducted the core of its business, *i.e.,* whether it should pay certain insurance claims or not. Here, in contrast, nothing that Cole Vision did affected the operation and management of Sears, or put another way, caused it to make any business decisions in any respect. Holland alleges that Cole Vision had a trademark license, lease and other contractual agreements with Sears allowing Cole Vision to use the Sears Optical name, operate optical shops in Sears stores and use Sears receipts. At most, these allegations reflect the details of the contractual terms arranged between Sears and Cole Vision to operate the optical shops. What is lacking here is what was present in *Aetna.* Unlike in *Aetna,* where the fraud caused Aetna, albeit to its detriment, to approve certain fraudulent claims, there is no suggestion that Sears even knew of the hidden $35 charge, much less that it approved or condoned such a practice. Indeed, there is no allegation of any active involvement by Sears in the $35 hidden charge whatsoever. Moreover, there is no allegation that this charge impacted Sears' business in any respect or that Sears made any business decisions concerning it. Unlike in *Aetna,* there is no suggestion that this charge caused Sears to manage or conduct its operations in any way, or, for that matter, even whether the charge was known to Sears.

The other cases cited by Holland on this issue are similarly distinguishable. In *R.J Reynolds Tobacco Company v. SK Everhart, Inc.,* 2003 WL 21788858 (M.D.N.C. July 31, 2003), RJR alleged that various cigarette wholesalers and retailers fraudulently manipulated a RJR "Buy Down" promotional program, causing RJR to issue discounts or coupons to those participating in the fraud. RJR alleged two alternative enterprises, and defendants did not contest their legal sufficiency. The district court found § 1962(c) to be adequately pled because defendant was alleged to have "operated the scheme." As in *Aetna,* the alleged fraud in *RJR* directly impacted the operation or management of the alternative enterprises identified in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 12

2005 WL 1242349 (W.D.Va.)

**(Cite as: 2005 WL 1242349 (W.D.Va.))**

complaint, either by making or obtaining the fraudulent payments. Enterprise # 1 was an association in fact including RJR, and various wholesalers and retailers that participated in the promotional campaign, and enterprise # 2 was a wholesaler with whom each defendant "worked ... to operate a scheme to defraud R.J. Reynolds by submitting fraudulent Buy Down requests." *Id.* at 4. As in *Aetna,* the "operation and management" of each enterprise was impacted by the fraudulent payments, in a manner much less tenuous than using the Sears invoice or involving its money back guarantee.

*Burke v. Dowling,* 944 F.Supp. 1036 (E.D.N.Y.1995), also cited by Holland, involved an alleged Ponzi scheme to convert Irish castles into luxury hotels. The alleged enterprise was an association in fact between a number of participants in the scheme to syndicate the castles, and defendants did not challenge its existence at the pleading stage. Two defendants, Allied Irish Bank ("AIB"), and its attorneys, Wilde Sapte, contended that they were not closely enough involved with the affairs of the enterprise to have "conducted" its affairs under § 1962(c). The district court disagreed with AIB, considering allegations that AIB helped to initiate the scheme to syndicate Ashford Castle and exerted control over other defendants as a result of debts they owed the bank. 944 F.Supp. at 1055. As to the law firm, the court agreed and dismissed the allegations against it. As with *Aetna* and *RJR, Burke* presents a very different circumstance than the allegations in Count II. In all of these cases, by means of the predicate acts, the operation of the enterprise is affected, which contrasts starkly with the allegations of this case. Here, there is no suggestion whatsoever that the covert collection of the extra $35 impacted the "operation or management" of Sears in any manner, direct or indirect. On such allegations, the Amended Complaint utterly fails the *Reves* "operation and management" test and fails to state a claim under § 1962(c). As such, it is appropriate to dismiss Count II of the amended complaint.

IV. *Magnusson-Moss and Common Law Fraud Claims*

**\*14** As set forth above, it is recommended that the district court find that Holland's RICO allegations be dismissed for failure to state a claim. In addition to this recommendation, the court also recommends dismissing the remainder of plaintiff's claims as the dismissal of the RICO allegations has a domino effect on the remaining pillars of federal court jurisdiction. Without the RICO claim, the only possible bases for federal court jurisdiction in this case are federal question jurisdiction over the Magnusson-Moss Warranty Act claim or diversity jurisdiction over the state law fraud claim. By itself, plaintiff's Magnusson-Moss claim is of insufficient magnitude to confer federal jurisdiction.

The third count of Holland's complaint alleges a violation of the Magnusson-Moss Warranty Act of 1975. It is clear that Holland's claim does not meet the technical requirements of the Act required to support federal jurisdiction. 15 U.S.C. § 2310(d)(1), which sets forth the requirements of a federal court suit under the Act, provides that no suit may be brought in federal court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." See *Saval v. BL Ltd.,* 710 F.2d 1027, 1030 (4th Cir.1983). Thus, if Holland's claim is considered as a stand-alone claim, she has no ability to proceed in federal court as her individual claim does not exceed $50,000. [FN5] As Holland herself conceded at argument and on brief, she may not maintain this action as a class action under the Magnusson-Moss Warranty Act as she has brought this action in the name of less than one hundred persons. See 15 U.S.C. § 2310(d)(3)(C). Holland's Mem in Opp. to Mot. Dismiss at 29. Thus, the Magnusson-Moss Warranty Act affords Holland no independent basis for federal jurisdiction.

> FN5. Even considering the possibility of punitive damages, there is no reasonable likelihood that the five $35 claims contained in the amended complaint could support a damage award in excess of the $50,000 threshold set forth in 15 U.S.C. § 2310(d)(3)(B). See *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (holding that a $145 million dollar award of punitive damages was excessive when based on an underlying $1 million dollar claim, and that few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process).

Likewise, while diversity of citizenship exists, particularly given the recent changes to 28 U.S.C. § 1332(d) in the Class Action Fairness Act of 2005, plaintiff has not alleged the requisite amount in controversy to satisfy the appropriate jurisdictional amount. Holland pleads diverse citizenship with defendants Cole Vision and Cole National as she is a Virginia resident and the Cole entities are Delaware corporations having registered agents and principle places of business in Ohio. Am. Compl. ¶ ¶ 8-9. Other named members of plaintiff's putative class are residents of Virginia, Texas, and Georgia. *Id.* ¶ 9. Although this case is brought as a class action, diversity of citizenship for purposes of federal jurisdiction remains as "only the citizenship of the named parties is considered. Thus, if the citizenship of the named parties is diverse from that of all of the defendants, diversity of citizenship exists regardless of the citizenship of the remainder of the unnamed class members." Moore's Federal Practice 3d, § 23.63[2][a] (citing *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 365, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Gilman v. Wheat, First Sec.,* 896 F.Supp. 507, 509 (D.Md.1995). All of the persons named as plaintiffs in Holland's Amended Complaint are fully diverse from all of the defendants named in it.

*15 However, while Holland meets the citizenship requirement for diversity jurisdiction as described in 28 U.S.C. § 1332(a), she fails to meet the amount in controversy requirement contained in that subsection, which requires an amount in controversy exceeding $75,000. Even when one includes the possibility of other plaintiffs under the rule set forth in *Snyder v. Harris,* 394 U.S. 332, 336-37, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), class members may not aggregate separate and distinct claims to satisfy the amount in controversy requirement. In *Snyder,* the Court held that the diversity jurisdiction statute requires that separate and distinct claims not be aggregated in calculating whether plaintiffs satisfy the amount in controversy requirement unless plaintiffs share a "common and undivided interest."

In no sense can the claims of individual class members who were allegedly overcharged $35 be considered as "common and undivided" claims. *See Glover v. Johns Manville Corp.,* 662 F.2d 225, 231 (4th Cir.1981); *Herlihy v. Ply-Gem Indus., Inc.,* 752 F.Supp. 1282, 1288 (D.Md.1990). There is nothing about the individual claims of $35 in this case that suggests that one plaintiff's failure to collect would increase the recovery of the remaining plaintiffs, nor is there any indication that each member of the putative eyeglass purchase class asserts his or her share of a limited fund and any one claimant's recovery from that fund diminishes other claimants' recoveries. Moore's Federal Practice 3d (2004), § 23.63[2][b][ii] at 23-296-97. As a result, the amount in controversy requirement is not met even considered as a class action.

Similarly, if considered as a class action under recent amendments to the diversity statute contained in the Class Action Fairness Act of 2005, the amount in controversy requirement still bars the state law fraud claim from having subject matter jurisdiction. Although Holland meets the diversity requirements contained in the Act, it does not provide a basis for subject matter jurisdiction because Holland has failed to allege that more than $5 million is in controversy. The Class Action Fairness Act of 2005, Pub.L. No. 109-2, 119 Stat. 4, expands the subject matter jurisdiction of federal courts over class actions in which at least one plaintiff class member is diverse in citizenship from defendant and where the amount in controversy exceeds $5 million. Pub.L. No. 109-2, § 4, 119 Stat. 4, 9-12 (codified at 28 U.S.C. § 1332(d)). Plaintiffs and defendants are diverse as described in 28 U.S.C. § 1332(d). However, although Holland's allegations meet the requirement of diversity of citizenship, plaintiff fails to allege that more than $5 million is in controversy regarding her common law fraud claims.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 1242349 (W.D.Va.)
(Cite as: 2005 WL 1242349 (W.D.Va.))

Page 14

Although plaintiff alleges that there are "many thousands of class members located throughout the United States" and that defendant generates revenues of more than $50 million per fiscal year through the sale of extended warranties, she fails to allege that she, or other members of her putative class, have injuries resulting from defendant's fraud totaling more than $5 million. Neither the amount of revenue nor the recitation of the possibility of "many thousands" of plaintiffs is enough to meet the jurisdictional amount. As the sum claimed by plaintiff in her complaint determines the jurisdictional amount, and plaintiff has not alleged enough damages to meet the standards included in the recent amendments to 28 U.S.C. § 1332(d), plaintiff cannot establish subject matter jurisdiction under it. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also* Charles Alan Wright, Arthur R. Miller, and Edward Cooper, 14A Federal Practice and Procedure § 3702 ("Plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy.").

*16 Accordingly, the dismissal of the RICO claim eliminates subject matter jurisdiction over this matter. As a result, the court need not consider Cole National's personal jurisdiction arguments.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is recommended that this action be dismissed in its entirety. Holland's lawsuit meets neither the required elements of a RICO claim nor squares with its underlying legislative purpose. While Holland's common law fraud claim may be viable, it may not proceed in this court as a diversity claim for failure to satisfy the amount in controversy requirement and it may not lie as a pendant state claim because the Magnusson-Moss Warranty Act claim also lacks independent viability.

The Clerk is directed to immediately transmit the record in this case to the Honorable James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

2005 WL 1242349 (W.D.Va.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 317681 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendants Cole National Corp.'s and Cole National Group, Inc.'s Motion to Dimiss under Rule 12(b)(2) (Jan. 14, 2005)

• 2005 WL 317682 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant Cole Vision Corporations's Motion to Dismiss Plaintiff's Amended Complaint (Jan. 14, 2005)

• 2004 WL 3173785 (Trial Pleading) Amended Class Action Complaint (Dec. 13, 2004)

• 2004 WL 3173650 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Objections to Report and Recommendation of Magistrate (Nov. 18, 2004)

• 2004 WL 3173647 (Trial Motion, Memorandum and Affidavit) Plaintiff's Objections to Report and Recommendations of Magistrate and Memorandum in Support (Nov. 05, 2004)

• 2004 WL 3173644 (Trial Motion, Memorandum and Affidavit) Defendant Cole Vision Corporation's Objections to Magistrate Judge'S Report and Recommendation Dated October 22, 2004 (Nov.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

03, 2004)

• 2004 WL 3173640 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Submission in Support of Motions to Dismiss (Sep. 22, 2004)

• 2004 WL 3173637 (Trial Motion, Memorandum and Affidavit) Response to Motion to Compel Rule 26(f) Conference (Sep. 07, 2004)

• 2004 WL 3173634 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of Motion to Compel A Rule 26(f) Conference (Sep. 02, 2004)

• 2004 WL 3173631 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Cole Vision Corporation's Motion to Dismiss (Aug. 03, 2004)

• 2004 WL 3173632 (Trial Motion, Memorandum and Affidavit) Defendants Cole National Corp.'s and Cole National Group Inc.'s Reply to Plaintiff's Memorandum in Opposition to their Motion to Dismiss Under Rule 12(b)(2) (Aug. 03, 2004)

• 2004 WL 3173625 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendant Cole Vision Corporation's Motion to Dismiss Under Rule 12(b)(6) (Jul. 02, 2004)

• 2004 WL 3173627 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendants Cole National Corp.'s and Cole National Group, Inc.'s Motion to Dismiss under Rule 12(b)(2) (Jul. 02, 2004)

• 2004 WL 3173623 (Trial Motion, Memorandum and Affidavit) Amended Memorandum of Points and Authorities in Support of Defendant Cole Vision Corporation's%n1%n Motion to Dismiss (Jun. 16, 2004)

• 2004 WL 3173620 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant Cole Vision Corporation's%n1%n Motion to Dismiss (Jun. 14, 2004)

• 2004 WL 3173621 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendants Cole National Corp.'s and Cole National Group, Inc.'s Motion to Dismiss under Rule 12(b)(2) (Jun. 14, 2004)

• 2004 WL 1152305 (Trial Pleading) Class Action Complaint (May. 11, 2004)

• 2004 WL 3173618 (Trial Pleading) Class Action Complaint (May. 11, 2004)

• 7:04CV00246 (Docket)
(May. 11, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.