UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL No. 1456 ) ) CIVIL ACTION: 01-CV-12257PBS ) |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) Judge Patti B. Saris ) ) Chief Magistrate Judge Marianne B. ) Bowler |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT SICOR INC. AND SICOR PHARMACEUTICAL, INC.'S MOTION FOR PROTECTIVE ORDER**

Plaintiffs hereby submit this Memorandum in response to Defendants Sicor Inc. and Sicor Pharmaceutical, Inc.'s ("Sicor") Motion for Protective Order ("Motion"). Sicor acknowledges that the back-up tapes at issue may contain information responsive to Plaintiffs' discovery requests and therefore should be restored. Instead of restoring the tapes, however, Sicor claims that Plaintiffs should bear the cost of production. Sicor's assertion is contrary to the aims of the Federal Rules of Civil Procedure and case law. Therefore, Sicor should bear the expense of production of their own responsive data.

**I.    INTRODUCTION AND BACKGROUND**

On September 6, 2002, Plaintiffs filed the Master Consolidated Class Action Complaint ("Complaint"), which describes Defendants' fraudulent scheme to improperly inflate the average wholesale price for drugs used by Plaintiffs and Class Members as a basis for reimbursement and in order to increase their market share. Plaintiffs' Complaint requests specific forms of relief, including trebled and punitive damages. Clearly, the amount in controversy is significant.

Plaintiffs' lawsuit was not the first time Sicor was sued in conjunction with AWP litigation. In November 2001, Sicor was sued in the United States District Court for the Central

District of California by named representative plaintiff United Food and Commercial Workers Union. See United Food and Commercial Workers' Union and Employers' Midwest Health Benefits Fund v. Sicor, Inc., No. 8:01-cv-01099-GLT-AN (C.D. Cal. filed Nov. 19, 2001), a case that was subsequently consolidated into this MDL proceeding. The class in that suit consisted of all persons or entities that paid any portion of Medicare co-payments for any Sicor drug from 1993 through the present. Sicor admitted to being named as one of the two sole defendants in the UFCW case in its February 2002 MDL brief. Presumably then, Sicor has been on notice for upwards of three years that the information contained in the back-up tapes at issue should be preserved for the purposes of litigation.

On March 31, 2004, Plaintiffs served Defendants with Interrogatories and Requests for Production of Documents. In Case Management Order No. 10 ("CMO 10"), dated March 25, 2004, Judge Saris ordered that discovery shall be permissible with respect to all parties, claims and issues remaining in the case. CMO 10 at I.1. The Order further mandates that documents available in an electronic format shall be provided in that format. CMO 10 at II.3. Contrary to Sicor's insinuations, nothing in the CMO prevented Plaintiffs from seeking the discovery for which Sicor now objects to paying.

In its Motion, Sicor states that in "early 2005" 300 back-up tapes were identified as a potential source of responsive information. Def.'s Memo. in Supp. of Mot. for Protective Order ("Memo.") at 3. The information contained on the tapes encompasses the period of 1998 through February 2002; approximately 4 months after Sicor had been sued for conduct relating to AWP manipulation. Sicor further maintains that because the tapes were created with software no longer in use *by Sicor*, Sicor would incur costs in the amount of $40,000 to have the tapes restored. Sicor does not indicate whether the software is obsolete. Sicor also recounted that of

2

750,000 pages of electronic documents it has already reviewed, 75,000 pages were non-privileged and responsive. Again, Sicor fails to explain how these electronic documents were initially identified or alternatives in which the selection could have been made more narrowly in order to more easily identify responsive information. Instead, Sicor now claims that Plaintiffs should bear the costs associated with the retrieval of information on the back-up tapes. Yet, no other defendant has insisted that Plaintiffs pay for the costs associated with document retrieval.

## II.  ARGUMENT

The Federal Rules of Civil Procedure provide that a party "may obtain discovery on any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). A court may limit discovery if it finds it is "unduly burdensome or expensive." Id. Sicor does not dispute, however, that the discovery contained within the back-up tapes may be relevant. Sicor's Motion for a Protective Order is based on which party should incur the costs of retrieving the documents.

Yet Defendant Sicor has failed to demonstrate the requisite factual showing of potential harm that would warrant the issue of a protective order. A party seeking a protective order bears the burden of demonstrating good cause and must show a factual basis of potential harm that would result absent the order. Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 263-264 (D. Mass. 1991). Courts must balance the potential harm against the relevance of and necessity for the requested information. Id. at 264. Sicor's potential "harm" consists solely of the costs involved in the retrieval of information; Sicor does not deny the information may be relevant. Further, because Sicor was on notice in 2001 that this information should have been preserved, there should be *no* cost involved in the retrieval of information that should have been

3

readily accessible.[1] As such, Sicor has failed to demonstrate that the relevance of and necessity for the information is outweighed by the "harm" it would incur in paying for the retrieval of the information.

### A. Sicor Cannot Avoid the Expense of Production Simply Because Their Own Record-Keeping Scheme Makes Discovery Expensive.

When a party's own electronic record-keeping system makes discovery burdensome and expensive, the party must bear the costs of production. See, e.g., Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) (holding that producing party may not excuse itself from compliance with discovery requests when its own record-keeping system makes the production burdensome or costly); In re Brand Name Prescription Drugs Antitrust Litig., No. 94-C-897, MDL No. 997, 1995 U.S. Dist. LEXIS 8281 (N.D. Ill. June 13, 1995) (holding that producing party should bear $50-70,000 costs in retrieving data on back-up tapes); Toledo Fair Housing Ctr. V. Nationwide Mut. Ins. Co., 703 N.E.2d 340, 354 (C.C.P. Ohio 1996) (finding that "inconvenience and expense, by themselves, do not justify denying discovery"). In determining whether the retrieval of electronic information places an "undue burden" or expense on the producing party, the Prescription Drugs court held that the producing party's choice to store documents electronically creates an "ordinary and foreseeable risk" that a retrieval program or method will be required and therefore, the burden is not "undue." See Brand Name Prescription Drugs, 1995 U.S. Dist. LEXIS at *5; Linen v. A.H. Robins Co., 10 Mass L. Rep. 189, *18 (Super. Ct. Mass. 1999) (noting Prescription Drugs court's holding that a retrieval program is a foreseeable risk of computer storage). The court also noted that other producing parties did *not*

---

[1] The fact that this information would have been readily accessible if Sicor had complied with its duty to preserve potentially relevant information precludes Sicor's reliance on the proposed amendments to Rule 26(b)(2) requiring the requesting party to demonstrate good cause for requesting information that is *not* readily accessible.

4

request that Plaintiffs incur the costs of data retrieval. <u>Brand Name Prescription Drugs</u>, 1995 U.S. Dist. LEXIS at *6.

Unlike the other Defendants in the MDL, Sicor is claiming that Plaintiffs should pay for the costs associated with retrieving data from 300 back-up tapes. These retrieval costs are the result of Sicor's unilateral decision to change hardware and/or software in 2002. When Sicor made this change, it was on notice of the pending lawsuit in California regarding the same subject matter. The need to retrieve information on these back-ups was therefore foreseeable at the time of the software change. In keeping with established case law, Plaintiffs should not have to bear the expense of Sicor's choice of a particular record-keeping scheme.

**B.      Under the <u>*Zubulake*</u> <u>Analysis, Sicor Should Bear the Costs of Production.</u>**

Although the <u>Zubulake</u> case upon which Sicor relies is not binding upon this Court, even if applied, Plaintiffs should not bear the costs of the retrieval of information on Sicor's back-up tapes. The <u>Zubulake</u> court first acknowledged that "the presumption is that the responding party must bear the expense of complying with discovery requests." <u>See</u> <u>Zubulake v. UBS Warburg LLC</u>, 217 F.R.D. 309, 317 (S.D.N.Y. 2003). Further, any "close calls" should be resolved in favor of this presumption. <u>Id.</u> at 320. The court noted that that the central question must be whether the request imposes an undue burden or expense on the responding party. <u>Id.</u> at 322.[2] Further, as Sicor acknowledges, the <u>Zubulake</u> court ordered that the *producing party bear the costs* in producing some of the requested back-up tapes, after which a further determination would be made. <u>Id.</u> at 324.

The <u>Zubulake</u> opinion also delineates five types of electronic information in order of their accessibility: active data, near-line data, offline storage/archives, backup tapes and erased,

---

[2] <u>See also</u> Section II. A., <u>infra</u> (citing case law holding that when producing party's record keeping system creates the expense and burden, such expense is not undue).

5

fragmented or damaged data. Id. at 319. The latter two categories of information are deemed inaccessible and therefore subject to the seven-factor cost-shifting analysis. Id. at 320. Sicor presumably characterizes the 300 back-up tapes as "inaccessible." Yet this information should, in fact, be readily accessible because Sicor was on notice that the information was relevant to the UFCW case in which it was sued in November 2001. As a result, the seven factor test should not apply to this matter.

Yet even if this Court were to apply the Zubulake seven factor test, the costs of electronic data retrieval should be not be shifted to Plaintiffs. The first two factors, the extent to which the request is specifically tailored to discover relevant information and the availability of such information from other sources, are considered by the Zubulake court to be the most important. See id. at 323. Sicor itself identified these 300 back-up tapes as containing potentially responsive information that should be produced. Memo. at 3. The information available on these back-up tapes represents a small fraction of the class period and scope of discovery; Sicor claims that the electronic data from the years 1991-1998 is fragmented and damaged. Memo. at 1 n.2. As a result, the data on the back-up tapes is highly relevant and otherwise unavailable to Plaintiffs. Sicor disputes the potential relevance of this data because its previous efforts in reviewing 750,000 pages of electronic data have resulted in the production of only 75,000 pages. Plaintiffs, however, should not be held responsible for Sicor's methods of collection and review that may have been unnecessarily broad. Plaintiffs have worked with other defendants to narrow the focus of discovery searches, including email searches. Moreover, the fact that only 10% of Sicor's emails are deemed relevant (even using Sicor's own view of relevance) to the AWP litigation is not surprising, as the case does not challenge all aspects of Sicor's business.

It is beyond question that Sicor's emails are not available from any other source.

The Zubulake court next urges the consideration of three cost factors: the cost of production compared to the amount in controversy; the total cost of production compared to the resources available to each party; and the relative ability of each party to control costs and its incentive to do so. Id. at 322. Sicor claims it is unable to apply the first of these factors because it "has no way of knowing the amount in controversy." Memo. At 8. Yet Plaintiffs' Complaint makes clear that Plaintiffs, comprised of a class spanning from 1991 to the present, are seeking, inter alia, monetary damages that include trebled and punitive damages. Considering both the scope of the class and the number of the defendants, the damages at issue are clearly significant such that a $40,000 expenditure is but a small fraction of the amount in controversy. Sicor attempts to dispose of the latter two cost factors by noting that Plaintiffs are represented by class action firms that are more prepared to handle the costs of litigation, suggesting that these firms may be better able to bear the costs than it. Memo. at 9. Yet according to Teva Pharmaceutical Industries Limited's Form 6-K, the consideration for acquisition of Sicor, Inc. in January 2004 amounted to $3.46 billion, $2 billion of which was cash. See Form 6-K, Report of Private Issuer, Teva Pharm. Indus. Ltd., May 2004, avail. at. http://www.tevapharm.com/pdf/Q1_04_6k_final_all120504.pdf. In comparison to Sicor's baseless speculation about the relative abilities of Plaintiffs' lawyers to incur the costs associated with retrieving Sicor's information, Plaintiffs can definitively point to Sicor's ability to shoulder these costs themselves.

The last two factors, the importance of issues at stake in the litigation and the relative benefits to the parties of obtaining the information, likewise weigh in favor of Sicor shouldering the costs of information retrieval. See Zubulake, 217 F.R.D. at 322. Sicor does not appear to dispute the importance of issues at stake in the litigation and points to their "exemplary cooperation with the Plaintiffs" as evidence of this acknowledgement. Memo. at 9. Nor does

7

Sicor argue the relative benefits to the parties, as it acknowledges that the back-up tapes likely contain potentially responsive information. As such, the remaining two factors argue in favor of Sicor's bearing the costs of the retrieval of information on the back-up tapes.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Sicor's Motion for Protective Order.

Dated: June 28, 2005                    By     /s/
                                        Jeffrey Kodroff, Esquire
                                        John Macoretta, Esquire
                                        **Spector, Roseman & Kodroff, P.C.**
                                        1818 Market Street, Suite 2500
                                        Philadelphia, PA 19103

Marc H. Edelson
Allan Hoffman
**Hoffman & Edelson**
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
**Hagens Berman LLP**
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700

Steve W. Berman
Sean R. Matt
Robert Gaudet
**Hagens Berman LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

Samuel Heins
Susan McMennamin
**Heins, Mills & Olson, P.C.**
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605

Kenneth A. Wexler
**The Wexler Firm, LLP**
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2005, I served a true and correct copy of Plaintiffs' Memorandum in Response to Defendant Sicor Inc. and Sicor Pharmaceutical, Inc.'s Motion for Protective order via Verilaw on all counsel of record.

John A. Macoretta