UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> _____ ) <br> ) <br> THIS DOCUMENT RELATES TO ) <br> 01-CV-12257-PBS AND 01-CV-339 ) <br> ) <br> _____ ) | MDL No. 1456 <br><br> CIVIL ACTION: 01-CV-12257PBS <br><br> Judge Patti B. Saris <br><br> Chief Magistrate Judge Marian B. Bowler |

### DEFENDANT SICOR INC. AND SICOR PHARMACEUTICALS, INC.'S REPLY TO PLAINTIFFS' RESPONSE TO SICOR'S MOTION FOR PROTECTIVE ORDER

Pursuant to LR, D. Mass. 7.1(b)(3), Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc. (collectively, "Sicor" or "the Company") respectfully file this Reply to Plaintiffs' Response to Sicor's Motion for Protective Order ("Plaintiffs' Response").[1]

As set forth more fully below, Plaintiffs' Response evinces a fundamental misunderstanding of the legal framework governing a party's duty to preserve records and information in litigation. In addition, Plaintiffs' Response highlights the unreasonable nature of both the Plaintiffs' far reaching discovery demands and expectations concerning Sicor's compliance.

### ARGUMENT

The issue before this Court is who should pay the cost for restoring some three hundred back-up tapes, which in the course of fulfilling its discovery obligations, Sicor identified as potentially responsive to the Plaintiffs' <u>eighty-two</u> Omnibus Discovery Requests. Plaintiffs cannot credibly claim that Sicor failed to preserve its business records. Indeed, had Sicor failed to copy and store electronic records of information on its computer network, the back-up tapes at issue would not exist. Instead, Plaintiffs' Response is aimed at persuading the Court that Sicor

---

[1] Citations to Plaintiffs' Response hereinafter appear as ("Pls.' Resp. at __").

somehow acted improperly by preserving information on back-up tapes in the first place. (Pls.' Resp. at 5). The law does not support Plaintiffs' position.

    A.    <u>Sicor Acted Properly in Preserving Information on Back-Up Tapes.</u>

There is no dispute but that Sicor did, in fact, take reasonable measures to preserve its electronic records by storing information on back-up tapes--a procedure followed by many, if not most, businesses in the United States and elsewhere. As set forth more fully in Sicor's Memorandum in Support of Its Motion for Protective Order ("Mem. in Support"), the pending amendments[2] to the Federal Rules of Civil Procedure, are an outgrowth of the Rules Committee's express recognition of the practical realities of doing business in this digital age. *See* Mem. in Support at 5-6. In fact, the Rules Committee has expressly recognized that "many parties have significant quantities of electronically stored information that can be located, retrieved or reviewed only with substantial effort or expense [and]. . .[L]arge corporate computer networks create back-up data . . . ." Pending Amendments to Federal Rules of Civil Procedure, Rule 26(b), Committee Note at 11-12.

*All* of the cases cited by Plaintiffs in support of their contention that a party who stores documents electronically should bear the cost of retrieval (Pls.' Resp. at 4) precede the Rules Committee's proposed amendments by at least five, and as many as twenty, years. In fact, the Rules Committee's impetus for the proposed amendments was an express recognition that storage of data in electronic format is now the norm:

> *Over the past five years*, the Committee has examined whether the rules adequately accommodate discovery of information generated by, stored in, retrieved from and exchanged through computers. *During this period, electronic discovery has moved from an unusual activity encountered in large cases, to a frequently-seen*

---

[2] The proposed amendments to the Federal Rules of Civil Procedure, including those affecting Rule 26(b) and Rule 34, were approved by the Standing Committee at its June 15-16, 2005 conference meeting. *See* http://www.uscourts.gov/rules/#standing0605.

> *activity used in an increasing proportion of the litigation filed in federal courts.*

Report of the Civil Rules Advisory Committee at 2 (May 17, 2004, Revised August 3, 2004) (emphases added). Plaintiffs' Response ignores the evolution of the legal framework governing electronic discovery in favor of the outdated view that persons or entities who store data electronically are selecting an unusual method of record-keeping and should bear the risks associated with that "choice." (Pls.' Resp. at 4).

Moreover, Plaintiffs' suggestion that the initiation of the UFCW litigation in November of 2001 gave rise to a legal duty for all defendants to freeze their software and hardware technology and alter data storage methods is wholly without support in the law. (Pls.' Resp. at 2). Sicor had a duty to take reasonable measures to *preserve* its business records, which it has done.[3] Plaintiffs' argument on this point is simply a red herring. Nothing in the existing or pending Federal Rules of Civil Procedure or case law interpreting the Rules supports the notion that a party is required to alter its record storage methods by keeping paper copies of records that are normally stored electronically or, as Plaintiffs appear to suggest, by clogging its computer system by retaining all information in its active files. Nor, given the blistering pace of technology, can businesses be expected to forego upgrades to existing technology in anticipation of future discovery requests that may or may not require access to electronically stored data.

Finally, Plaintiffs' suggestion that the cost of restoring the back-up tapes is a function of

---

[3] Sicor's in-house counsel promptly issued a document and electronic records preservation memorandum for general distribution, advising personnel to preserve all documents and electronic records that relate in any way to the issues raised in the lawsuit. The initial preservation memo was followed by a memorandum to Sicor's IT Department which contained more detailed instructions regarding the preservation of electronic records in connection with the pending litigation. These memoranda are protected by the attorney-client privilege. *See, e.g., City of Springfield v. Rexnord Corp.* 196 F.R.D. 7, 9 (D. Mass. 2000) (where an in-house attorney communicates with corporate employees for the purpose of rendering legal advice, the corporation may invoke the attorney-client privilege). Should the Court wish to examine these documents, Sicor will submit them for *in camera* review.

Sicor's decision to change its software (Pls.' Resp. at 2) demonstrates Plaintiffs' fundamental misunderstanding of the driving force behind the high cost of restoring back-up tapes. While so-called legacy data (data created using obsolete hardware or software) can be *more* difficult to retrieve from back-up tapes, the restoration of back-up tapes is universally costly and burdensome, irrespective of the software in use at the time of the tapes' creation. As set forth in the Declaration of Clifford M. Cole (Mem. in Support, Ex. A.), it is not customary for data on back-up tapes to be organized for the retrieval of individual documents or files. Rather, back-up tapes are "sequential access" devices that require all data to be restored at substantial cost and expense. *See* Mem. in Support, Ex. A at ¶ 6. The use of sequential access devices and the costs associated with restoring them are not unique to Sicor. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 319-320 (S.D.N.Y. 2003) (finding that data stored back-up tapes is inaccessible because it is usable only through an intricate and expensive restoration process). Thus, Plaintiffs' contention that Sicor was acting outside the norm is baseless.

B.   Plaintiffs' Response Concedes that Plaintiffs' Discovery Requests are Overbroad.

As set forth in Sicor's opening brief, Sicor has located and reviewed approximately 750,000 pages of potentially responsive documents to Plaintiffs' Omnibus Requests, of which approximately 75,000 were produced to Plaintiffs. Plaintiffs now complain that Sicor is somehow culpable for taking Plaintiffs' discovery requests seriously. According to Plaintiffs, "Sicor's methods of collection and review …may have been unnecessarily broad." Pls.' Resp. at 6. Plaintiffs further state that they have "worked with other defendants to narrow the focus of discovery searched . . . ." *Id.* Such assertions amount to no more than a tacit admission that the eighty-two Omnibus Requests for Production, spanning a putative class period of some 14 years and counting, were overly broad and should not have been taken seriously by Sicor.

Furthermore, Plaintiffs' assertion that Sicor is somehow obliged to "explain how these [750,000] electronic documents were identified or alternatives in which the selection could have been made more narrowly in order to identify responsive information" (Pls.' Resp. at 3) lacks any legal (or logical) support. When stripped of its rhetoric, Plaintiffs' position on this issue amounts to the following: (1) although Plaintiffs propounded eighty-two Omnibus Requests for Production, Sicor was not expected to expend the time, effort and money necessary to respond meaningfully to each request; (2) instead, Sicor should have taken the initiative to "work with" Plaintiffs to narrow the scope of their overly broad discovery requests; and (3) having chosen to implement and manage its own discovery strategy, Sicor must now waive the protections afforded under the attorney-client privilege and work product doctrine and divulge how it conducted its search for potentially responsive documents, or else be forced to pay the exorbitant costs of restoring the back-up tapes. The absurdity of Plaintiffs' position is manifest.

C. *Zubulake I* Weighs in Favor of Requiring Plaintiffs to Pay for the Cost of Restoring the Tapes.

Addressing the factors set forth in *Zubulake I*, Plaintiffs contend that Sicor should pay the costs of restoring the back-up tapes. Yet, Plaintiffs' analysis of the *Zubulake I* factors is flawed in a number of important respects. With respect to the marginal utility test, which focuses on a co-extensive evaluation of the extent to which the request is specifically tailored to discover relevant information and the availability of such information from other sources (*See Zubulake*, 217 F.R.D. at 322), Plaintiffs focus their argument *exclusively* on the latter consideration, arguing that Sicor's e-mails are not obtainable from any other source. (Pls.' Resp. at 6). The fallacy of this approach is that Plaintiffs refuse to acknowledge the obvious. Sicor has identified these tapes as *potentially* responsive *solely* because they are believed to contain electronic data from a four year period within the on-going 14 year class period identified in the Second

Amended Master Consolidated Complaint. <u>Unless and until the back-up tapes are restored, Sicor has no way of knowing whether *any* responsive emails are contained on these back-up tapes</u>.

Next, Plaintiffs contend that consideration of the amount in controversy, as well as the total cost of production compared to the resources of each party and their respective ability to pay for such costs militates in favor of requiring Sicor to pay for restoration of the tapes. According to Plaintiffs, because they are seeking "monetary damages that include treble and punitive damages," (Pls.' Resp. at 7), Sicor necessarily knows *the amount* in controversy. This is akin to arguing that because one asks for "money," the person who is asked should know *how much money* the party making the request wants. Plaintiffs have yet to specify a sum certain in damages or to even explain their theory of damages. Accordingly, the risk of uncertainty in assessing the cost of production compared to the amount in controversy rests with the Plaintiffs.

In addition, Plaintiffs' use of financial information derived from SEC filings made by Sicor's parent corporation (Pls.' Resp. at 7) is puzzling. While a wholly owned subsidiary of Teva Pharmaceutical Industries Ltd., Sicor remains a separate and distinct legal entity, with its own operating budget.

With regard to the remaining factors, the issues at stake in the litigation and the relative importance to the parties of obtaining the information, Plaintiffs fundamentally misrepresent Sicor's position when they assert that "Sicor acknowledges that the back-up tapes likely contain potentially responsive information." (Pls.' Resp. at 8). Sicor has made no such acknowledgement. To be clear, unless and until the tapes are restored, Sicor has no way of knowing whether any of the tapes contain responsive information.

Finally, Plaintiffs' remaining argument, that "no other defendant has insisted that Plaintiffs pay for the costs associated with document retrieval," (Pls.' Resp. at 3) is completely irrelevant. There is simply no legal authority for the proposition that Sicor's ability to seek or

obtain relief for the costs associated with the burdensome discovery Plaintiffs have propounded is limited by the actions, or inactions, of its codefendants.

## CONCLUSION

As the foregoing demonstrates, Sicor has acted properly and reasonably in responding to Plaintiffs' overbroad discovery requests and should not be forced to incur undue burden and expense by paying the costs associated with the restoration of 300 back-up tapes, which are only potentially responsive to Plaintiffs' Omnibus discovery requests. Accordingly, Sicor respectfully requests that the Court enter an order requiring Plaintiffs to pay the costs of restoring the tapes and afford such other relief as the Court deems just and proper.

Dated: July 6, 2005                    Respectfully submitted:

_____
Elizabeth I. Hack
Elizabeth S. Finberg
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
(202) 408-6400

-- and --

Robert J. Muldoon, Jr. (BBO # 359480)
James W. Matthews (BBO # 560560)
Pamela A. Zorn (BBO # 640800)
SHERIN AND LODGEN LLP
100 Summer Street
Boston, MA 02110
(617) 646-2000

*Counsel for Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc.*