UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS. | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

## PLAINTIFFS' MOTION FOR LEAVE TO SET ASIDE THE TEN DEPOSITION LIMIT WITH RESPECT TO DEFENDANT ASTRAZENECA

Plaintiffs, by their counsel, respectfully request that this Court grant plaintiffs leave to set aside the ten-deposition limit and to take a total of fifty (50) depositions of AstraZeneca witnesses, not including depositions pursuant to Rule 30(b)(6). In support hereof, plaintiffs state as follows:

### I.   INTRODUCTION

This is not a case – and this is not a defendant – where the ten deposition limit provided for in Fed. R. Civ. P. 30(a)(2)(A) is reasonable. Plaintiffs have sued AstraZeneca for fraudulent pricing with respect to sixteen (16) different drugs. The class period spans thirteen (13) years, beginning in January 1991. AstraZeneca has existed in its present form since only 1999 and consists of portions of some ten (10) predecessor companies, mergers and spin-offs, including Stuart Pharmaceuticals, Merck, Astra AB, Astra USA, ICI Americas, Inc., Zeneca, Inc., ICI PLC, Zeneca Pharmaceuticals, Astra Merck, Inc., and Astra Pharmaceuticals LP. To date and on a continuing rolling basis, AstraZeneca has produced, in response to plaintiffs' discovery requests, nearly 800,000 pages of documents plus vast amounts of data. *See* Declaration of Kenneth A. Wexler ("Wexler Decl.") ¶ 2, Ex. 1.

Because of the number of mergers and predecessor companies to AstraZeneca, as well as the number of drugs at issue, it is simply impossible to identify witnesses who have knowledge of or responsibility for all relevant topics throughout the class period and for every AstraZeneca predecessor company. For example, with respect to Zoladex alone, one of AstraZeneca's drugs, there have been five (5) different Product Managers involved in strategic planning and pricing decisions over the class period. Although all of these individuals clearly possess relevant information, taking just those depositions alone would exhaust half of the allotted depositions under Rule 30. Particularly given AstraZeneca's corporate history and structure, and in a case of this magnitude and importance, with billions of dollars and multiple layers of deponents involved, a request for 50 depositions is neither unreasonable nor would result in cumulative depositions. Accordingly, plaintiffs' motion should be granted.

## II. DISCOVERY NEGOTIATIONS BETWEEN PLAINTIFFS AND ASTRAZENECA

As AstraZeneca has produced documents and data in this case, plaintiffs have, while mindful of the 10-deposition limit imposed by Rule 30(a)(2)(A), identified deponents that appear to have had responsibility for or input to pricing, marketing or internal strategic decision-making related to the AstraZeneca drugs at issue in this case. Wexler Decl. ¶ 3, Ex. 1. Indeed, in late January 2004, AstraZeneca advised plaintiffs that, although it felt it had no obligation to produce more than the ten deponents permitted by Rule 30, it might approve more depositions if plaintiffs demonstrated to AstraZeneca's satisfaction that the depositions plaintiffs sought were not cumulative and were necessary. *Id.* ¶ 4. Consistent with this agreement, the parties have engaged in discovery, taking depositions as noticed and scheduled by agreement until mid-June 2005. *Id.* ¶ 5.

However, as discovery progressed, AstraZeneca again began to suggest that it might attempt to enforce the 10-deposition limit -- or some other limit -- to the depositions plaintiffs desired to take. *Id.* ¶ 6. In an effort to break the deposition impasse, in or around May 2005, plaintiffs suggested that a limited number of depositions be scheduled relating to physician-administered drugs, thinking that Judge Saris' ruling on class certification would affect the scope of the case one way or the other, and that the scope of subsequent discovery would be necessarily affected as well. *Id.* However, discovery closes in two months and the class certification decision has not yet issued. Therefore, as plaintiffs had advised AstraZeneca might become the case if no class certification ruling was forthcoming, and with the August 31 discovery deadline looming, plaintiffs have no choice but to seek additional depositions relating to the remaining drugs. *Id.* ¶ 7.

On June 23, 2005, counsel for the parties conducted a meet and confer in which plaintiffs discussed with AstraZeneca their need to schedule more depositions. *Id.* ¶¶ 7-8. Counsel for defendant stated that it would agree to substitute deponents for those already scheduled, but in no event would permit more than the 18 depositions scheduled absent a Court ruling to the contrary. *Id.* ¶ 8.

### III.  ARGUMENT

Fed. R. Civ. P. 30(a)(2)(A) provides, in pertinent part, that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), ... if, without the written stipulation of the parties, (A) a proposed deposition would result in more than ten depositions being taken under this rule . . . ." Leave of court is warranted in this case because: (a) the knowledge of each AstraZeneca witness is limited to particular time periods, particular predecessor AstraZeneca companies, and particular drugs or classes of drugs;

(b) AstraZeneca's current corporate structure diversifies employees with knowledge across multiple parts of the company; (c) plaintiffs' request is consistent with Rule 26(b)(2); and (d) AstraZeneca as well as the remaining Track One Defendants have recognized the validity of points (a)-(c) by, in AstraZeneca's case, agreeing to schedule more than 10 depositions of witnesses with knowledge of just the physician-administered drug Zoladex and, in the remaining Track One Defendants' case, failing to object to plaintiffs' scheduling of more than ten (10) depositions for those defendants.

### A. Limitations on Witnesses' Knowledge With Respect to AstraZeneca's Various Predecessor Companies Warrants 50 Depositions

As discussed above, AstraZeneca is the product of a number of mergers between various pharmaceutical companies, which accelerated in the early to mid-1990s. In 1947, Astra USA, the United States subsidiary of Astra AB, was incorporated and began operations in Worcester, Massachusetts. (http://astrazeneca-us.com/content/aboutUs/history/1900to1949.asp). In 1992, ICI Americans Inc. became Zeneca Inc, which was owned by ICI PLC. (http://astrazeneca-us.com/content/aboutUs/history/1990to1999.asp). In 1993, Zeneca Inc. split from ICI PLC and became Zeneca Pharmaceuticals. (*Id.*) Merck and Astra AB jointly created Astra Merck, Inc. in 1994. (*Id.*) In 1998, Astra Merck Inc. and Astra USA merged and the resulting company was Astra Pharmaceuticals. (*Id.*) Finally, in 1999, the merger of Zeneca Group PLC and Astra AB was completed, and resulted in the formation of AstraZeneca, Inc. (*Id.*)

Given this corporate history, it is nearly impossible, within either a given area of inquiry or title or position, to identify a single person who can testify with regard to all of AstraZeneca's predecessor companies. This is not a problem of plaintiffs' making. For example, on May 20, 2004, AstraZeneca produced John Freeberry as its first Rule 30(b)(6) witness in response to a notice that identified twenty (20) topics for the relevant period (Jan. 1, 1991 to the present). At

4

the deposition however, two things became clear. First, Mr. Freeberry was only knowledgeable as to four full topics and two partial topics. Wexler Decl. ¶ 10. Second, Mr. Freeberry's knowledge of those topics only extended to the current company known as AstraZeneca and to the former company known as Astra Merck. *Id.* Mr. Freeberry was not knowledgeable about those topics for the company known as Zeneca before it merged with Astra Merck in 1999. *Id.*

On June 29, 2004, AstraZeneca thereafter produced Jeff Alverson as its second Rule 30(b)(6) witness "for the remainder of all topics in that 30(b)(6) notice." Wexler Decl. ¶ 11. During the course of that deposition, Mr. Alverson testified that he started with AstraMerck 6 ½ years ago, or approximately in January 1998. *Id.* He further testified that he conducted no research to inform himself of events prior to 1998 or for the entity known as Zeneca pre-merger. *Id.* Mr. Alverson also was not able to testify regarding one of the topics. *Id.* Finally, after plaintiffs filed a motion to compel, AstraZeneca produced a third witness to fill in the gaps as to the remaining companies, time periods and topics. *Id.* ¶ 12.

The same problem that existed with plaintiffs' original 30(b)(6) Notice will exist with any other area of inquiry. In short, any AstraZeneca employee will necessarily only have knowledge regarding the predecessor companies with which he or she was employed.

Moreover, on November 24, 2004, AstraZeneca responded to a set of plaintiffs' interrogatories by identifying **68** persons working for AstraZeneca and its predecessor companies who were involved with the "pricing, contracting, marketing and/or sales of" the 17 drugs at issue in the case. Wexler Decl. ¶ 14. Thus, as of that date, AstraZeneca itself identified 68 potential witnesses, far in excess of the number of depositions it is permitting without plaintiffs seeking leave of Court.

### B. AstraZeneca's Current Corporate Structure Warrants 50 Depositions

Moreover, this is not a case where all the witnesses come from a single department within the company. For example, the Managed Markets Business Group is comprised of all those persons responsible for pricing, sales and marketing in the private payor arena. That single Group is comprised of eight separate divisions, each of which is further broken down by, *inter alia,* (i) sales segments, organized by third party contacts such as PBMs, Healthplans, Trade Sales, the Federal Government, long-term care groups, and group purchasing organizations; (ii) contracting segments, organized by PBMs, healthplans, and institutional and chargebacks; (iii) geographic regions; and (iv) pharmaceutical products. *See* Organizational chart (AZ0587840-854 – HIGHLY CONFIDENTIAL) attached as exhibit C to the Wexler Decl. This one Organizational Chart for the Managed Markets Business Group alone, which is necessarily limited in time, is comprised of more than 350 people.

Further, the Managed Markets Business Group does not include the leadership teams that approved the AWP pricing recommendations for either the public or private payor arenas, including but not limited to the AZLT (the AstraZeneca Leadership Team) or OPMT (the Operations Portfolio Management Team) teams. Accordingly, in this context, a total of 50 non-30(b)(6) depositions is not an unreasonable request.

### C. Plaintiffs' Request is Consistent with Fed. R. Civ. P. 26(b)(2)

Rule 26(b)(2) provides, in applicable part, that discovery should only be limited if the Court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, the

importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Here, the discovery sought is consistent with the objective of Rule 26(b)(2) because, given the corporate history and structure of AstraZeneca, as well as the nature of this litigation, plaintiffs have only sought the number of depositions necessary to prosecute their case.

To date, plaintiffs have served notices of deposition or requested the depositions of 49 people, not including 30(b)(6) notices, who have been identified by AstraZeneca and other witnesses as having knowledge of facts relevant to the claims against AstraZeneca. Wexler Decl. ¶ 15. Even though plaintiffs have not taken depositions of all of those 49 employees, doing so would not be unreasonable with 17 drugs at issue.

In a case recently settled in this Court involving similar allegations regarding the marketing of *a single drug*, Lupron (which competes with AstraZeneca's Zoladex), the parties agreed to a total of fifty (50) depositions. *See* Case Management Order in *In re Lupron Sales & Marketing Litig.*, MDL No. 1430, Master File No. 01-CV-10861 (D. Mass) (Stearns, J.), ex. E to the Wexler Decl. At the time the *Lupron* case settled, the parties had taken only twenty-five (25) depositions and had yet to take a single deposition of the sales representatives responsible for marketing Lupron to physicians. *See* Wexler Decl. ¶ 16. It is clearly not unreasonable to assume that where, as here, plaintiffs' case against AstraZeneca involves **17** drugs, a total deposition limit of fifty (50) non-30(b)(6) witnesses would be reasonable and non-duplicative.

**D.   Defendants Have Recognized That the 10-Deposition Limit is Unrealistic**

Finally, by their own conduct, AstraZeneca and the other four Track One Defendants have acknowledged that the 10-deposition limit is untenable here. Those five defendants have collectively taken or noticed more than 100 depositions. Wexler Decl. ¶ 17. Of those 100, these

7

defendants have noticed or deposed more than 80 third parties, including health plans, PBMs and third party consultants. *Id.*

In addition, even though plaintiffs have exceeded or intend to exceed the 10-deposition limit with regard to the four remaining Track One Defendants, none of those defendants have insisted upon the limitation enforced by AstraZeneca here. With regard to GlaxoSmithKline ("GSK"), plaintiffs have taken approximately twenty (20) depositions, have noticed approximately twenty (20) more, and have advised GSK that there may be additional depositions, particularly of sales representatives, in addition to those depositions. *See* Wexler Decl. ¶ 18. With regard to Bristol Myers Squibb ("BMS"), plaintiffs have taken six (6) depositions, noticed over fifteen additional depositions, and have indicated to counsel for BMS that plaintiffs intend to notice additional depositions shortly. *Id.* ¶ 19. With regard to Johnson & Johnson ("J&J"), plaintiffs have taken sixteen (16) depositions and have noticed at least six (6) additional depositions. *Id.* ¶ 20. None of those defendants have objected to the number of those depositions, even though none of those defendants has the number of predecessor companies that AstraZeneca has. *Id.* ¶ 21.

Even AstraZeneca itself has already recognized that the ten deposition limit is unrealistic. By agreeing to schedule more than 10 depositions with respect to only *one* of the 17 drugs at issue, AstraZeneca has acknowledged that more than the normal number of depositions is warranted in the case against it. AstraZeneca has never contended that any of the depositions scheduled to date are cumulative or unnecessary. Plaintiffs do not intend to take unnecessary depositions, but merely to complete discovery on the remainder of the AWPIDs.

WHEREFORE, plaintiffs respectfully request that this Court grant their request to set aside the 10-deposition limit and for leave to take no more than 50 depositions, not including

depositions pursuant to Rule 30(b)(6), and for such further and other relief as this Court deems just and appropriate.

DATED: July 6, 2005

By: *Jennifer F. Connolly*

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
David Nalven (BBO#547220)
Hugh McNeely
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Ricardo Meza
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.L.C.
3550 IDS Center
80 S. Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE BY VERILAW

Docket No. MDL 1456

I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on July 6, 2005, I caused copies of Plaintiffs' Motion For Leave To Set Aside The Ten Deposition Limit With Respect To Defendant AstraZeneca to be served on all counsel of record by causing same to be posted electronically via Verilaw.

_____
Jennifer Fountain Connolly