# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | Judge Patti B. Saris |
| | Chief Magistrate Judge Marianne B. Bowler |

### DECLARATION OF KENNETH A. WEXLER

I, Kenneth A. Wexler, Esq., declare as follows:

1.      I am Co-Lead Counsel and one of plaintiffs' attorneys in this matter.  In a good faith attempt to resolve or narrow the issues raised in plaintiffs' Motion, I conferred with counsel for AstraZeneca, including Kim Harris, Trisha Lawson and Monica Lamb. Unfortunately, I have been unable to resolve this matter.

2.      To date and on a continuing rolling basis, AstraZeneca has produced, in response to plaintiffs' discovery requests, nearly 800,000 pages of documents plus vast amounts of data.

3.      As AstraZeneca has produced documents and data in this case, plaintiffs have identified scores of potential witnesses who appear to have had responsibility for or input to pricing, marketing or internal strategic decision-making related to the seventeen (17) AstraZeneca drugs at issue in this case.

4.      In late January 2005, however, AstraZeneca advised plaintiffs that it was going to limit the number of depositions plaintiffs could take of AstraZeneca employees based upon Federal Rule of Civil Procedure 30(a)(2) and Local Rule 26.1(C), which

prohibit the taking of more than ten (10) depositions without leave of Court. AstraZeneca took the position that it had no obligation to produce more than the ten deponents permitted by the rules, but said it would allow the scheduling of thirteen (13) fact depositions, and it *might* approve more fact depositions if plaintiffs demonstrated to AstraZeneca's satisfaction that the depositions plaintiffs sought were not cumulative and were necessary. (*See* Letter of Trisha Lawson dated January 27, attached as Exhibit A.)

5.      Plaintiffs disagreed with this position, pointing out the breadth of the case and the inappropriateness of permitting a defendant to approve or disapprove of plaintiffs' selection of potential deponents. (See Exhibit B.) The parties exchanged further correspondence and had more discussions on the subject, but reached an impasse.

6.      Despite their impasse, the parties proceeded with the limited number of depositions AstraZeneca agreed to schedule. When I reiterated to AstraZeneca plaintiffs' need for and intent to take more depositions, AstraZeneca continued to maintain its previous position. In an effort to break the logjam and potentially avoid motion practice, in or around May 2005, I suggested that a limited number of additional depositions be scheduled relating to physician-administered drugs. I expressed the belief that Judge Saris' impending ruling on class certification could well affect the scope of the case one way or the other, and that the scope of subsequent discovery could be consequently affected as well. AstraZeneca agreed to this approach, and we set out to schedule five (5) additional depositions, for a total of eighteen (18), limited in many respects to physician administered drugs.

7.      As time passed, it became clear that this approach would not work. Because discovery with respect to AstraZeneca closes on August 31, 2005, the class

certification decision has not yet issued, and more witnesses have been identified as depositions have been taken, I advised AstraZeneca's counsel on June 23, 2005 that plaintiffs have no choice but to seek additional depositions relating to more of the drugs in dispute.

8.      Counsel for defendant stated that it would only agree to substitute additional deponents for those already scheduled, but, absent a Court ruling to the contrary, would in no event permit more than the 18 depositions that have been taken or are presently scheduled or to be scheduled.   AstraZeneca has thus taken a more restrictive view of discovery than it did previously:  rather than "approve" more necessary and non-duplicative depositions, which it had  said it would do before, AstraZeneca will not consider scheduling more than 18 depositions at all.

9.      The breadth of this case alone demonstrates plaintiffs' need for at least fifty (50) fact depositions of AstraZeneca employees.   The case against AstraZeneca involves 17 drugs and spans a class period of at least thirteen (13) years.  In that time, AstraZeneca was the product of the formation, merger and spin-off of at least ten (10) separate corporate entities.  Each of these predecessor entities had their own structural nuances, and different employees were responsible for different drugs in different departments in the organizations.  Even with respect to a single responsibility for a single drug, there have been multiple employees over the class period, meaning there are multiple persons with knowledge from different points in time.  As just one example, if plaintiffs took the depositions of each of the product managers for one drug, Zoladex, during the class period, that alone would account for five of the ten depositions allowed by Rule 30(a)(2).

10.     The changes in AstraZeneca's corporate structure over the years also demonstrates the need for considerably more than 18 depositions.  For example, AstraZeneca produced John Freeberry as its Rule 30(b)(6) witness on May 20, 2004 in response to a notice that identified twenty (20) topics for the class period.  At the deposition, however, Mr. Freeberry was only knowledgeable as to four (4) full topics and two (2) partial topics of the 20,  and his knowledge of those topics only extended to the current company known as AstraZeneca and to the former company known as Astra Merck.  Mr. Freeberry was not knowledgeable about those topics for the company known as Zeneca or any of Zeneca's predecessors before it merged with Astra Merck in 1999.

11.     On June 29, 2004, AstraZeneca produced Jeff Alverson as a second Rule 30(b)(6) witness "for the remainder of all topics in that 30(b)(6) notice."  During the course of that deposition, Mr. Alverson testified that he started with AstraMerck 6 ½ years ago, or approximately in January 1998.  He further testified that he conducted no research to inform himself of events prior to 1998 or for Zeneca or its related entities pre-merger.  Mr. Alverson thus was not able to testify completely about all of the remaining topics, and there was one about which he could not give testimony at all.

12.     Finally, after plaintiffs filed a motion to compel, AstraZeneca produced a third witness to fill in the gaps as to the remaining companies, time periods and topics.

13.     A true and correct copy of an organizational chart produced by AstraZeneca for the Managed Markets Business Group (AZ0587840-854 – HIGHLY CONFIDENTIAL) is attached as exhibit C.  That single Group is comprised of eight (8) separate divisions, each of which is further broken down by, inter alia, (i) sales segments, organized by third party contacts such as PBMs, Healthplans, Trade Sales, the Federal

Government, long-term care groups, and group purchasing organizations; (ii) contracting

segments, organized by PBMs, healthplans, and institutional and chargebacks; (iii)

geographic regions; and (iv) pharmaceutical products. This one Organizational Chart for

the Managed Markets Business Group alone, which is necessarily limited in time, is

comprised of more than 350 people.

14.     Moreover, on November 24, 2004, AstraZeneca responded to a set of

plaintiffs' interrogatories by identifying 68 persons working for AstraZeneca and its

predecessor companies who were involved with the "pricing, contracting, marketing

and/or sales of" the 17 drugs at issue in the case. (Exhibit D.) Thus, on November 24,

2004, AstraZeneca itself identified 68 potential witnesses, far in excess of the number of

depositions it is permitting without plaintiffs seeking leave of Court.

15.     To date, plaintiffs have not sought 68 depositions, but have served notices

for the depositions of 49 AstraZeneca employees, not including 30(b)(6) notices, who

have been identified by AstraZeneca and other witnesses as having knowledge of facts

relevant to the claims against AstraZeneca. Plaintiffs have not taken depositions of all of

those 49 employees. Indeed, by the motion supported by this Declaration, plaintiffs are

seeking to take a total of fifty (50) depositions.

16.     In a case recently settled in this Court involving similar allegations

regarding the marketing of a single drug, Lupron (which competes with AstraZeneca's

Zoladex), the parties agreed to a total of fifty (50) depositions and the Court entered an

Order endorsing that agreement. A true and correct copy of the Case Management Order

in In re Lupron Sales & Marketing Litig., MDL No. 1430, Master File No. 01-CV-10861

(D. Mass) (Stearns, J.) is attached as Exhibit E. At the time the Lupron case settled, I

understand that the parties had taken only twenty-five (25) depositions and had yet to take a single deposition of the sales representatives responsible for marketing Lupron to physicians.

17.    AstraZeneca and the other four Track One Defendants have collectively taken or noticed more than 100 depositions.  Of those 100, these defendants have noticed or deposed more than 80 third parties, including health plans, PBMs and third party consultants.

18.    With regard to GlaxoSmithKline ("GSK"), plaintiffs have taken approximately twenty (20) depositions, have noticed approximately twenty (20) more, and have advised GSK that there may be additional depositions, particularly of sales representatives, in addition to those depositions.

19.    With regard to Bristol Myers Squibb ("BMS"), plaintiffs have taken six (6) depositions, noticed over fifteen additional depositions, and have indicated to counsel for BMS that plaintiffs intend to notice additional depositions shortly.

20.    With regard to Johnson & Johnson ("J&J"), plaintiffs have taken sixteen (16) depositions and have noticed at least six (6) additional depositions.

21.    None of the other defendants have objected to the number of depositions plaintiffs have noticed, even though none of those defendants has the number of predecessor companies that AstraZeneca has.

July 1, 2005

Kenneth A. Wexler
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

# Exhibit A

# DAVIS POLK & WARDWELL



1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 6083

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID ESPAÑA

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

January 27, 2005

Re:   **In re: Pharmaceutical Industry Average Wholesale Price Litigation**

Kenneth A. Wexler, Esq.
The Wexler Firm
One North La Salle Street
Suite 2000
Chicago, IL, 60602

Dear Ken:

As you requested during our telephone conversation yesterday, I write to advise you of AstraZeneca's position regarding plaintiffs' deposition notices to AstraZeneca dated December 22, 2004, December 23, 2004, and January 3, 2005.

As you know, plaintiffs' notices call for depositions of twenty-nine current or former AstraZeneca employees, as well as a fourth 30(b)(6) witness. In response, we have proposed dates for thirteen witnesses identified in the notices: Kathleen Zemanek (February 2); James Liebman (February 4); Nick Harsh (February 8); Jim Blessington (February 10); Ken Murtha (February 15); Steve Strand (February 15); Nancy Wilkinson (February 17); Paul Villa (February 22); Jack Cook (February 24); Erik Schultz (March 1); Charles Joseph (March 9); James Brady (March 10); and Michael Diggin (March 15). This group includes the seven witnesses whose depositions plaintiffs had previously noticed and whom AstraZeneca had previously agreed to produce. You have confirmed dates for eight of the proposed witnesses, but not Ms. Zemanek and Messrs. Strand, Schultz, Joseph, and Diggin. Yesterday, you told us that you would not be able to take Ms. Zemanek's deposition on February 2, 2004 as offered, but indicated that the dates proposed for Messrs. Strand, Schultz, Joseph, and Diggin probably would work. We are waiting for your confirmation of those dates, and we will propose another date for Ms. Zemanek's deposition shortly.

As I explained on the telephone, while our offer of thirteen fact witnesses illustrates that AstraZeneca is not insisting on the strict ten-deposition limit imposed by Fed. R. Civ. P. 30(a)(2) and by Local Rule 26.1(C), AstraZeneca will not agree to limitless depositions of additional witnesses whose testimony we believe would be either duplicative, cumulative or irrelevant. Nor will AstraZeneca agree to produce a fourth 30(b)(6) witness on its communications

Ken Wexler, Esq.                          2                        January 27, 2005

with retail pharmacies, unless you can give us some idea why such communications are relevant to the issues in this case.

As I also explained, we are open to the possibility of depositions beyond the thirteen for which we have proposed dates – in addition to the eighteen hours of testimony already taken from AstraZeneca's first three 30(b)(6) witnesses – provided there is some reasonable basis why additional depositions are warranted. To that end, I suggested on our call yesterday that we go forward with the thirteen depositions and then revisit whether plaintiffs continue to believe the other depositions are necessary. If, at that point, we cannot reach an agreement, plaintiffs can move the Court for further discovery. *See Whittingham v. Amherst College*, 163 F.R.D. 170, 171 (D. Mass 1995) (Local Rule 26.2(B)(2) requires that discovery available under Local Rule 26.1(C) be exhausted before a party seeks leave for additional discovery).

Lastly, our offer of dates for the thirteen witnesses identified above should not be construed as an attempt by us to select witnesses for plaintiffs. Rather, we simply offered the earliest dates available from witnesses in different areas. As I indicated on the telephone, we are open to substituting one or more of those witnesses with other witnesses identified in plaintiffs' notices.

I hope this serves to clarify the issues we discussed yesterday. Please let me know if you have any questions.

                                          Sincerely,

                                          Trisha Lawson

By Facsimile

# Exhibit B





CAMBRIDGE   CHICAGO   LOS ANGELES   PHOENIX [PLLC]   SEATTLE

hagens-berman.com
60 WEST RANDOLPH STREET, SUITE 200 · CHICAGO, IL 60601
(312) 762-9235 · FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hagens-berman.com

January 28, 2005

*Via Facsimile*

Mr. D. Scott Wise
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York  10017

Re:   In re AWP Litigation: AstraZeneca depositions

Dear Scott:

We completely disagree that plaintiffs should be limited to 10 depositions of AstraZeneca, particularly where AstraZeneca has produced 707,688 pages plus data in discovery and where the company is the result of a number of mergers and certain people only have knowledge regarding certain of the predecessor companies. Accordingly, we intend to bring this issue to the Court next week, unless AstraZeneca agrees to an extension of that limit to 25 deponents,[1] not including 30(b)(6) witnesses. If we do not have your agreement to that proposal by the close of business Tuesday, February 1, 2005, we will seek relief from the Court.

In the meantime, set forth below is the list of the first 10 witnesses to be scheduled for deposition:

1. Marion McCourt
2. Nick Harsh
3. Nancy Wilkinson
4. Charles Joseph
5. Jim Liebman
6. Don Sawyer
7. Joe Skupen

---

[1] Twenty-five depositions is intended to be a reasonable compromise. However, plaintiffs reserve the right to request additional depositions, particularly if a situation occurs as it did with John Freeberry, whereby his knowledge on particular topics only encompassed particular AZ companies and particular time periods.

1534 16 0707 LTR-JL DOC

Mr. D. Scott Wise
January 28, 2005
Page 2

8.   Esther Selvaggi
9.   Keith Patterson
10.  Erik Schultz

This list is not intended to nor does waive plaintiffs' right to seek additional depositions as set forth above, nor waives plaintiffs' right to depose Stuart Fullerton, for whom the parties have already agreed to take the issue of the proper scope of the privilege asserted by AZ to the Court.

Moreover, as Ken informed Monica, we will not agree to do these depositions at AstraZeneca, but instead at the law firm of Silverman & McDonald, 1010 N. Bancroft Parkway, Suite 22, Wilmington, DE 19805. They will have a break-out room available to you. These depositions should be scheduled on the dates already confirmed by Monica in February as follows: Feb. 9, 10, 15, 16, 17, 23, 24, and on an additional 3 dates as we agree. Please advise by the close of business Tuesday, February 1, 2005 which depositions will proceed on which dates.

Finally, AstraZeneca has asked that we justify the relevance of the January 3, 2005 30(b)(6) notice of deposition that set forth topics related to AWP and retailers. These topics are relevant for the same reasons that AZ decided it had an obligation to produce AZ0463135-39 and/or AZ0519018-20. Accordingly, please advise by the close of business Tuesday a date certain in February when this deposition will proceed, or we will seek the Court's intervention.

AstraZeneca has found numerous ways to forestall depositions in this case, including withholding documents and dumping thousands of pages just before depositions are scheduled to take place in order to delay them, and now refusing to produce witnesses unless the depositions are at AZ and objecting now for the first time to the number of depositions scheduled. AZ's delay must stop, because of the prejudice that any further delay will cause in light of the upcoming deadlines.

We look forward to hearing from you by Tuesday.

Sincerely,

Elizabeth A. Fegan

BF:bf

1534 16 0267 LTR. IL DOC

Mr. D. Scott Wise
January 28, 2005
Page 3


cc:    Steve Berman
       Kenneth A. Wexler
       Jennifer Fountain Connolly



CAMBRIDGE  CHICAGO  LOS ANGELES  PHOENIX (AZC)  SEATTLE
60 W. RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
TELEPHONE (312) 762-9237 • FACSIMILE (312) 762-9286

## FACSIMILE COVER SHEET

Date:  January 28, 2005
Pages: 4  (including this cover)
File No.: 1534.16

*FROM:*

Elizabeth A. Fegan

*TO:*

| | |
|---|---|
| D. Scott Wise | 212-450-3800 |
| Steve Berman | 206-623-0594 |
| Ken Wexler | 312-346-0022 |
| Jennifer Connolly | 312-346-0022 |

*MESSAGE:*

Urgent!  Deliver Immediately.

Please call the Support Center at (312) 762-9235 if you do not receive all of these pages or if there is a problem.

The information contained in this facsimile is confidential and may also be attorney-privileged.  The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited  If you have received this facsimile in error, please immediately notify us by a collect telephone call to (206) 623-7292, and return the original message to us at the address above via the US Postal Service.  Thank you

A LIMITED LIABILITY PARTNERSHIP

# Exhibit C

# FILED UNDER SEAL

# Exhibit D



# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS | ) ) ) ) | Civil Action No. 01-CV-12257 PBS Judge Patti B. Saris |

## RESPONSES AND OBJECTIONS OF ASTRAZENECA PHARMACEUTICALS LP TO PLAINTIFFS' INTERROGATORIES TO ASTRAZENECA

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, AstraZeneca Pharmaceuticals LP ("AstraZeneca"), hereby responds and objects to Plaintiffs' Interrogatories to AstraZeneca (the "Interrogatories") as follows:

### GENERAL OBJECTIONS

AstraZeneca expressly incorporates by reference all "General Objections" set forth in its Responses and Objections to Plaintiffs' Omnibus Requests for Production and Interrogatories, which apply to the Interrogatories in their entirety, including the Definitions, Instructions, Rules of Construction, and Relevant Time Period. Unless otherwise indicated, all capitalized defined terms shall have the same meaning ascribed in the General Objections. Any Specific Objections provided below are made in addition to these General Objections, and failure to reiterate a General Objection below does not constitute a waiver or limitation of that or any other objection.

### SPECIFIC ANSWERS AND OBJECTIONS TO INTERROGATORIES

Interrogatory No. 1:

Identify each individual listed on Schedule A to these Interrogatories who worked for any of the following entities in any capacity having to do with pricing, contracting, marketing and/or sales of any AstraZeneca AWPIDs:



(a)  Astra/Merck
(b)  Astra/USA
(c)  ICI Americas, Inc.
(d)  Zeneca, Inc.
(e)  ICI PLC
(f)  Zeneca Group PLC
(g)  Zeneca Pharmaceuticals
(h)  Astra Merck, Inc.
(i)  Zeneca Holdings
(j)  Stuart Disease Management Services
(k)  Salick Healthcare, Inc.
(l)  Astra Pharmaceuticals, LP
(m)  Astra AB

Answer:

AstraZeneca objects to Interrogatory No. 1 on the grounds that it is unduly burdensome and overly broad. Further, AstraZeneca objects to Interrogatory No. 1 to the extent that it seeks information not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence. AstraZeneca further objects to Interrogatory No. 1 to the extent it seeks information relating to foreign predecessor or parent companies of AstraZeneca. Subject to and without waiving the foregoing objections or the General Objections, and based on information reasonably available to AstraZeneca, the attached Schedule A sets forth the employment histories of the individuals listed on Schedule A to the interrogatories who worked in any capacity having to do with pricing, contracting, marketing and/or sales of the relevant products.

Interrogatory No. 2:

For each person identified in response to Interrogatory No. 1, identify the individual's employer(s), title(s), duties, relevant period(s) of service, and last known address if the person no longer works for any of the entities. Also identify the AWPIDs with which each individual worked.

Answer:

AstraZeneca objects to Interrogatory No. 2 on the grounds that it is unduly burdensome and overly broad. Further, AstraZeneca objects to Interrogatory No. 2 to the extent

2



that it seeks information not relevant to the subject matter of the pending action and not

reasonably calculated to lead to the discovery of admissible evidence.  AstraZeneca further

objects to Interrogatory No. 2 to the extent it seeks information relating to foreign predecessor or

parent companies of AstraZeneca.  AstraZenca further objects to Interrogatory No. 2 to the

extent that it seeks the last known addresses of former employees.  Subject to and without

waiving the foregoing objections or the General Objections, and based on information

reasonably available to AstraZeneca, the attached Schedule A sets forth the employment

histories of the individuals listed on Schedule A to the interrogatories who worked in any

capacity having to do with pricing, contracting, marketing and/or sales of the relevant products.


Interrogatory No. 3:

> For each of the entities listed in Interrogatory No. 1, identify each person
employed in the information technology or similar department of that entity and the employer(s),
title(s), duties, last known address if the person no longer works for any of the entities, and the
period of service for each person identified for each entity at which the person was employed.


Answer:

AstraZeneca objects to Interrogatory No. 3 on the grounds that it is unduly

burdensome and overly broad.  Further, AstraZeneca objects to Interrogatory No. 3 to the extent

that it seeks information not relevant to the subject matter of the pending action and not

reasonably calculated to lead to the discovery of admissible evidence.  AstraZeneca further

objects to Interrogatory No. 3 to the extent it seeks information relating to foreign predecessor or

parent companies of AstraZeneca.  Subject to and without waiving the foregoing objections or

the General Objections, and based on information reasonably available to AstraZeneca, the

attached Schedule A sets forth the employment histories of the individuals listed on Schedule A



to the interrogatories who worked in the information technology or similar department of

AstraZeneca or its predecessor entities.  AstraZeneca also will search for and produce

organizational charts of AstraZeneca's and its predecessor entities' information technology or

similar departments.

Dated: November 24, 2004

As To Objections:

By:  _____

D. Scott Wise, Esq.
Michael Flynn, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY  10017
(212) 450-4000

Nicholas C. Theodorou, Esq. (BBO# 496730)
Jessica V. Barnett, Esq. (BBO# 650535)
FOLEY HOAG, LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Attorneys for AstraZeneca Pharmaceuticals LP



## CERTIFICATION

I, Stuart Fullerton, Senior Litigation Counsel of Defendant AstraZeneca

Pharmaceuticals LP, state that I have read the foregoing Responses and Objections of

AstraZeneca Pharmaceuticals LP to Plaintiffs' Interrogatories to AstraZeneca and that the

answers contained therein are true to the best of my information, knowledge and belief.

Executed under the penalty of perjury on this __23__ day of November, 2004

_____

Stuart Fullerton



## SCHEDULE A

(1) <u>Adele Gulfo</u>

    (a) AstraZeneca Pharmaceuticals L.P.

        (i) Vice President Cardiovascular TA (August 4, 2000-December 31, 2001).

    (b) AstraZeneca L.P.

        (i) Vice President Cardiovascular TA (January 1, 2002-March 31, 2003)

        (ii) Vice President Primary Care Cardiovascular (April, 1, 2003-Present)

(2) <u>Anthony Zook</u>

    (a) Astra US

        (i) Vice President Marketing/Sales (May 30, 1997-June 30, 1998)

    (b) Astra Pharmaceuticals L.P.

        (i) Vice President Marketing/Sales (July 1, 1998-December 31, 1998)

        (ii) Vice President Sales (January 1, 1999-December 31, 1999)

    (c) AstraZeneca L.P.

        (i) Vice President Sales (January 1, 2000-June 30, 2001)

    (d) AstraZeneca Pharmaceuticals L.P.

        (i) Senior Vice President Commercial Operations (July 1, 2001-Present)

(3) <u>Barnabas Desta</u>

    (a) AstraZeneca L.P.

        (i) Pricing Strategist (April 24, 2000-July 31, 2001)

        (ii) Pricing Strategy Manager (August 1, 2001- Present)

(4) <u>Bruce Song</u>

    (a) Zeneca Inc.



(i)  Sr. Bus. Sys. Analyst (December 1, 1995 – March 31, 1999)

(ii) Busines Systems Specialist (April 1, 1999 – December 31, 1999)

(b) AstraZeneca Pharmaceuticals LP

(i) Contract Ops. Mgr. – Con. Mgt. Srvcs. (January 1, 2000 - March 31, 2000)

(ii) Sr. Contract Operations Manager (April 1, 2000 - March 31, 2004)

(iii) Mgr. Contract Dev. And Services (April 1, 2004 – Present)

(5) Cathy Carney

(a) AstraZeneca Pharmaceuticals L.P.

(i) Senior Director, Planning & Operations (March 1, 2001-February 29, 2004)

(ii) Senior Director, Human Resources Strat Plan Measure (March 1, 2004 - Present)

(6) Chris Iacono

(a) Zeneca Inc.

(i)  Vice President Marketing (December 11, 1996-December 31, 1999)

(b) AstraZeneca Pharmaceuticals L.P.

(i)  Head of Marketing Strategy & Planning (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

(i)  Head of Marketing Strategy & Planning (April 1, 2000-April 29, 2000)

(ii) Executive Director Marketing Strategy & Planning (April 30, 2000-June 1, 2001)



(7) <u>Connie Fogarty</u>

   (a) Astra Merck Inc.

      (i)  Manager, Finance and Planning & Reporting (September 18, 1995-August 12, 1997)

      (ii) Manager, Emerging Product Business Unit, Finance (August 13, 1997-June 30, 1998)

   (b) AstraZeneca Pharmaceuticals L.P.

      (i)  Manager, Emerging Product Business Unit, Finance (July 1, 1998-September 31, 1998)

      (ii) Business Unit Finance Support – Emerging Products (October, 1998-December 31, 1998)

      (iii) Business Unit Finance Leader, Emerging Products/Anti-Cog. (January 1, 1999-August 29, 1999)

   (c) AstraZeneca L.P.

      (i)  Business Unit Finance Leader, Emerging Products/Anti-Cog (August 30, 1999-December 31, 1999)

      (ii) Financial Leader (January 1, 2000-March 31, 2000)

   (d) AstraZeneca Pharmaceuticals L.P.

      (i)  Financial Leader (April 1, 2000-April 29, 2000)

      (ii) Financial Leader, Gastro-intestinal (April 30, 2000-October 31, 2001)

      (iii) Finance Leader Portfolio (November 1, 2001-March 31, 2002)

      (iv) Finance Leader Cardiovascular, Crestor (April 1, 2002-December 31, 2003)

      (iv) Brand Finance Leader, Crestor (January 1, 2004- Present)



(8) <u>David Brennan</u>

    (a)  Astra/Merck Group of Merck Co.

        (i)  Executive Director Marketing & Sales Pln. (April 2, 1994-October 31, 1994)

        (ii) Portfolio Leader, Pharm Solutions Mg (November 1, 1994-June 18, 1995)

    (b)  Astra Merck  Inc.

        (i)  Vice President Portfolio Management (June 19, 1995-January 31, 1997)

        (ii) Senior Vice President Business Operations & Leader, VCM (February 1, 1997-June 30, 1998)

    (c)  AstraZeneca Pharmaceuticals L.P.

        (i)  Senior Vice President Business Operations & Leader, VCM (July 1, 1998-December 31, 1999)

    (d)  AstraZeneca L.P.

        (i)  Senior Vice President, Commercial & Portfolio Management (January 1, 2000-March 31, 2000)

    (e)  AstraZeneca Pharmaceuticals L.P.

        (i)  Senior Vice President, Commercial & Portfolio Management (April 1, 2000-June 30, 2001)

        (ii) President & CEO (July 1, 2001-Present)

(9) <u>David Elkins</u>

    (a)  Zeneca Inc.

        (i)  AI Analyst (December 11, 1996-April 30, 1997)



(ii) UK Finance Manager – AAA Region (May 1, 1997-October 31, 1998)

(iii) Biotechnology Finance Manager (November 1, 1998-October 31, 1999)

(iv) Global Project Leader (November 1, 1999-December 31, 1999)

   (b) Zeneca Ag Products, Inc.

(i)  Global Project Leader (January 1, 2000-July 31, 2000)

(ii) Finance Manager, (August 1, 2000-September 30, 2000)

   (c) AstraZeneca Pharmaceuticals L.P.

(i)  Financial Leader, Gastro-intestinal (May 29, 2001-December 31, 2004)

(ii) Brand Financial Leader, Seroquel/SpcCare (January 1, 2004-Present)

(10)   <u>David Evans</u>

   (a) Zeneca Inc.

(i)  Director Internal Communications Systems (December 11, 1996-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.

(i)  Business Information Systems Leader, Operations (January 1, 2000-April 29, 2000)

(ii) Senior Director, Business Information Systems Operations (April 30, 2000-August 31, 2001)

(iii) Executive Director, Business Information Systems Operations & EF (September 1, 2001-December 31, 2002)

(iv) Executive Director, mySAP (January 1, 2003-Present)

(11)   <u>David Streck</u>



(a) Zeneca Inc.

    (i)  Distribution Analyst (December 11, 1996-September 31, 1997)

    (ii) Business Analyst (October 1, 1997-September 31, 1998)

    (iii) Senior Business Analyst (October 1, 1998-December 31, 1999)

(b) Zeneca Ag Products, Inc.

    (i)  Senior Business Analyst (January 1, 2000-July 31, 2000)

(c) AstraZeneca Pharmaceuticals L.P.

    (i)  Senior Financial Analyst (August 1, 2000-August 31, 2001)

    (ii) Senior Business Leader, Managed Care Finance (September 1, 2001-Present)

(12)   <u>Eric Q. Schultz</u>

   (a) Astra Merck Inc.

      (i)  Pharmaceutical Specialist (February 1, 1995-June 30, 1998)

   (b) AstraZeneca Pharmaceuticals L.P.

      (i)  Pharmaceutical Specialist (July 1, 1998-March 31, 2000)

      (ii) Pricing Strategy Partner (April 1, 1999-October 31, 1999)

   (c) AstraZeneca L.P.

      (i)  Pricing Strategy Partner (November 1, 1999-December 31, 1999)

      (ii) Pricing Strategist (January 1, 2000-July 31, 2001)

      (iii) Pricing Strategy Manager (August 1, 2001-Present)

(13)   <u>Frederic King</u>

   (a) AstraZeneca L.P.

      (i)  Pricing Strategist (November 6, 2000-July 31, 2001)

      (ii) Pricing Strategy Manager (August 1, 2001-February 28, 2002)



(iii) TA Managed Care Strategy Manager (March 1, 2002-March 31,

2003)

(iv) Brand Manager – Managed Markets – Nexium (April 1, 2003-

September 30, 2003)

(b) AstraZeneca Pharmaceuticals L.P.

(i) Pricing & Value Strategist (October 1, 2003-Present)

(14)   <u>Frederick K. Nicklas</u>

(a) Zeneca Inc.

(i)  District Business Manager (March 31, 1997-January 31, 1998)

(ii) District Sales Manager/Regional Sales Manager (February 1, 1998-

December 31, 1999)

(b) AstraZeneca Pharmaceuticals L.P.

(i)  Regional Sales Director – CNS (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

(i)  Regional Sales Director – CNS (April 1, 2000-April 29, 2000)

(ii) Regional Sales Director (April 30, 2000-May 31, 2001)

(iii) Iressa Field Readiness Leader (June 1, 2001-December 31, 2001)

(iv) Director Sales Force Strategy – Oncology (January 1, 2002-May 31,

2002)

(v) Director Sales Force Strategy (June 1, 2002-March 31, 2003)

(vi) Board Director Managed Markets – Nexium (April 1, 2003-March 31,

2004)

(vii) Brand Communications Director (April 1, 2004-Present)



(15)   <u>Gary Rowles</u>

  (a) Astra Merck Inc

    (i) Financial Analyst – Planning (November 3, 1997-June 30, 1998)

  (b) AstraZeneca Pharmaceuticals L.P.

    (i) Financial Analyst – Planning (July 1, 1998-November 30, 1998)

    (ii) Leader Central Planning & Report (December 1, 1998-June 30, 1999)

  (c) AstraZeneca L.P.

    (i) Leader Central Planning & Report (July 1, 1999-December 31, 1999)

    (ii) WV3 Leader, Management Planning & Reporting (January 1, 2000-March 31, 2000)

  (d) AstraZeneca Pharmaceuticals L.P.

    (i) WV3 Leader, Management Planning & Reporting (April 1, 2000-April 29, 2000)

    (ii) Director, Management Planning & Reporting (December 30, 2000-May 31, 2001)

    (iii) Financial Leader, CNS (June 1, 2001-December 31, 2001)

    (iv) Financial Leader, CNS, Pain & Infection (January 1, 2002-December 31, 2003)

    (v) Brand Financial Leader Nexium/Respiratory (January 1, 2004-Present)

(16)   <u>Gary M. Stapleton</u>

  (a) Astra US

    (i) [No position listed] (February 13, 1994-June 30, 1998)

  (b) AstraZeneca Pharmaceuticals L.P.

    (i) [No position listed] (July 1, 1998-December 31, 1998)



   (ii) Regional Account Leader (January 1, 1999-December 31, 1999)

  (c) AstraZeneca L.P.

   (i)  Regional Account Director (January 1, 2000-May 31, 2000)

   (ii) National Account Director, PBM (June 1, 2000-August 31, 2002)

   (iii) Senior Account Director – National (September 1, 2002-August 31, 2004)

   (iv) Executive Account Director – National (September 1, 2004-Present)

(17) <u>Gregory Bruxelles</u>

  (a) Zeneca Inc.

   (i)  Assistant Business Controller ( December 11, 1996-March 31, 1998)

   (ii) Controller (April 1, 1998-December 31, 1999)

  (b) AstraZeneca Pharmaceuticals L.P.

   (i)  Integration Job (January 1, 2000-April 29, 2000)

   (ii) Executive Director & Controller (April 30, 2000-March 31, 2003)

   (iii) Vice President Financial Operations (April 1, 2003-February 28, 2004)

   (iv)Vice President Finance (March 1, 2004-Present)

(18) <u>Heather Erms</u>

  (a)  Astra Merck Inc.

   (i)  Process/Systems Associate (May 12, 1997-June 30, 1998)

  (b)  Astra Pharmaceuticals L.P.

   (i)  Process/Systems Associate (July 1, 1998-December 31, 1998)

   (ii) Process/Systems Associate, Sales Force Auto CC&S (January 1, 1999-December 31, 1999)



(c)  AstraZeneca L.P.

    (i)  Business Information Systems Partner-Sales-Cardiovascular, Gastro-intestinal, Respiratory & Managed Care (January 1, 2000-March 31, 2000)

(d)  AstraZeneca Pharmaceuticals L.P.

    (i)  Business Information Systems Partner- Sales -Cardiovascular, Gastro-intestinal, Respiratory & Managed Care (April 1, 2000-April 29, 2000)

    (ii)  Senior Manager, Business Information Systems Sales-Cardiovascular, Gastro-intestinal, Respiratory, Managed Care (April 30, 2000-January 6, 2002)

    (iii)  Director, Business Information Systems Sales (January 7, 2002-January 31, 2004)

    (iv)  Senior Director Business Information Systems-Sales & Med Affairs (February 1, 2004-Present)

(19)  <u>J. R. Hildreth</u>

    (a) ICI Americas Inc.

        (i) Mgr. Prod. Mktg. Res. (February 16, 1987 – April 30, 1988)

        (ii) Mgr. Mktg. Res. B (May 1, 1988 – July 31, 1989)

        (iii) Grp. Mktg. Res. Mgr. (August 1, 1989 – August 30, 1990)

        (iv) Product Mgr. (September 1, 1990 – July 30, 1993)

(20)  <u>James K. Blessington</u>

    (a) Zeneca Inc.

        (i)  Senior Business Analyst (December 11, 1996-November 30, 1997)



      (ii) Manager, Commercial Finance (December 1, 1997-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.

      (i)  CNS Financial Leader (January 1, 2000-December 31, 2000)

   (c) AstraZeneca L.P.

      (i)  Marketing Director CNS (January 1, 2001-March 31, 2003)

      (ii) Senior Director Pricing & Managed Market Strategy (April 1, 2003-January 31, 2004)

   (d) AstraZeneca Pharmaceuticals L.P.

      (i)  Brand Financial Leader Seroquel/Special Care (February 1, 2004-Present)

(21)   James P. Colyer

   (a) AstraZeneca L.P.

      (i)  National Account Director, Emerging Markets (January 15, 2001-August 31, 2002)

      (ii) Senior Account Director – National (September 1, 2002-February 28, 2003)

      (iii) Contracting Director (March 1, 2003-Present)

(22)   James F. Liebman

   (a) Zeneca Inc

      (i)  Business Director, National Accounts (December 11, 1996-May 31, 1998)

      (ii) Sales Director/National Accounts (June 1, 1998-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.



(i)  Sales Director, Managed Care (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

(i)  Sales Director, Managed Care (April 1, 2000-Present)

(23)  James L. Thornton

(a) AstraZeneca L.P.

(i)  Regional Account Director (October 2, 2000-August 31, 2002)

(ii) Account Director II – Regional (September 1, 2002-March 31, 2003)

(iii) Contracting Director (April 1, 2003-August 31, 2004)

(iv) Senior Account Director – Regional (September 1, 2004-Present)

(24)  Jeffrey A. Alverson

(a) Astra Merck Inc.

(i)  Negotiator-Contractor, Pricing & Negotiations (September 30, 1997-

March 31, 1998)

(ii) National Contracting Leaders (April 1, 1998-June 30, 1998)

(b) Astra Pharmaceuticals L.P.

(i)  National Contracting Leaders (July 1, 1998-December 31, 1999)

(c) AstraZeneca L.P.

(i)  National Contracting Director (January 1, 2000-April 29, 2000)

(ii) Contracting Director (April 30, 2000-February 28, 2002)

(iii) Director Contract Strategy (March 1, 2002-Present)

(25)  Jeffrey Krol

(a) Astra/Merck Group of Merck Co.

(i)  [No position listed] (April 2, 1990-April 1, 1994)

(ii) Clinical Program Scientist (April 2, 1994-September 30, 1994)

12



(iii) Business Partner (October 1, 1994-January 31, 1995)

(b) Astra Merck Inc.

 (i) Business Partner (February 1, 1995-September 30, 1996)

 (ii) Business Manager (October 1, 1996-October 31, 1997)

 (iii) Customer Group Manager (November 1, 1997-June 30, 1998)

(c) Astra Pharmaceuticals L.P.

 (i) Customer Group Manager (July 1, 1998-December 31, 1998)

 (ii) Regional Contracting Leader (January 1, 1999-December 31, 1999)

(d) AstraZeneca L.P.

 (i) Regional Contracting Leader (January 1, 2000-April 29, 2000)

 (ii) Contracting Director (April 30, 2000-October 31, 2002)

 (iii) Regional Sales Director – Managed Care (November 1, 2002-Present)

(26) Jeffrey Walker

(a) Astra/Merck Group of Merck Co.

 (i) [No position listed] (July 26, 1993-April 1, 1994)

 (ii) Systems/Product Engineer (April 2, 1994-May 31, 1995)

(b) Astra Merck Inc.

 (i) Systems/Product Engineer (June 1, 1995-May 31, 1996)

 (ii) Process Area Architect (June 1, 1996-June 30, 1998)

(c) Astra Pharmaceuticals L.P.

 (i) Process Area Architect (July 1, 1998-December 31, 1998)

 (ii) Project Area Architect Leader, IS/IT (January 1, 1999-January 31, 1999)

(d) AstraZeneca L.P.



         (i) Business Integration & Enterprises Architect (January 1, 2000-March

            31, 2000)

     (e) AstraZeneca Pharmaceuticals L.P.

         (i) Business Integration & Enterprises Architect (April 1, 2000-April 29,

            2000)

         (ii) Director, Business Integration & Enterprises Architect (April 30,

            2000-October 31, 2003)

         (iii) Executive Director, TP&S (November 1, 2003-Present)

(27)   <u>Jim Helm</u>

     (a) AstraZeneca L.P.

         (i) Vice President, Phoenix/Mature Products Business Unit (March 4,

            2000-Present)

(28)   <u>Joann Moyer</u>

     (a) Astra/Merck Group of Merck Co.

         (i) [No position listed] (May 13, 1993-April 1, 1994)

         (ii) Coordinator – I/T (April 2, 1994-February 28, 1995)

     (b) Astra Merck Inc.

         (i) Coordinator – I/T (March 1, 1995-February 28, 1996)

         (ii) Administrative Coordinator – I/T (March 1, 1996-September 1, 1997)

         (iii) Administrative Coordinator Skill Center Coordinator I/T (September

            2, 1997-June 30, 1998)

     (c) Astra Pharmaceuticals L.P.

         (i) Administrative Coordinator Skill Center Coordinator I/T (July 1,

            1998-October 31, 1998)



(ii) Administrative Manager –IS/IT (November 1, 1998-December 31, 1999)

(d) AstraZeneca L.P.

(i) Administrative Manager (January 1, 2000-March 31, 2000)

(e) AstraZeneca Pharmaceuticals L.P.

(i) Administrative Manager (April 1, 2000-April 29, 2000)

(ii) IS Administrative Lead (April 30, 2000-Present)

(29)    Johan L. Hoegstedt

(a) Astra US

(i) [No position listed] (March 15, 1992-June 28, 1998)

(ii) Region Sales Manager – RX (June 29, 1998-June 30, 1998)

(a) Astra Pharmaceuticals L.P.

(i) Region Sales Manager – RX (July 1, 1998-December 31, 1998)

(ii) Customer Center Leader (January 1, 1999-June 30, 1999)

(a) AstraZeneca L.P.

(i) Customer Center Leader (July 1, 1999-December 31, 1999)

(ii) Director, Sales Training (January 1, 2000-April 29, 2000)

(iii) Executive Director, Sales Training (April 30, 2000-May 31, 2001)

(iv) Executive Director, Marketing & Pricing (June 1, 2001-March 31, 2003)

(v) Vice President Specialty Care (April 1, 2003-Present)

(30)    John Freeberry

(a) Astra Merck Inc.

(i) Pricing Program Manager (February 1, 1995-October 14, 1997)

15



(ii) Pricing Strategy Partner (October 15, 1997-May 31, 1998)

(iii) Pricing Strategy Leader (June 1, 1998-June 30, 1998)

  (b) Astra Pharmaceuticals L.P.

(i) Pricing Strategy Leader (July 1, 1998-December 31, 1999)

  (c) AstraZeneca L.P.

(i) Pricing Strategy Leader (January 1, 2000-July 31, 2001)

(ii) Pricing Strategy Director (August 1, 2001-Present)

(31)  John Goddard

  (a) Zeneca Inc.

(i) [No position listed] (May 1, 1985-July 31, 1998)

(ii) Vice President Finance (August 1, 1998-December 31, 1999)

  (b) AstraZeneca Pharmaceuticals L.P.

(i) CFO, Zeneca Inc. (January 1, 2000-June 30, 2000)

(ii) Senior Vice President & CFO (July 1, 2000-Present)

(32)  John K. Hennessy

  (a) Boston Research Conversion

(i) [No position listed] (March 4, 1996-October 31, 2001)

  (b) AstraZeneca Pharmaceuticals L.P.

(i) Director Finance (November 1, 2001-May 31, 2003)

(ii) Executive Director & General Manager – Waltham (June 1, 2003-
Present)

(33)  John Melvin

  (a) Astra, US

(i) [No position listed] (November 23, 1987-April 30, 1998)



(ii) Controller Marketing/Sales (May 1, 1998-December 31, 1998)

  (b)  Astra Pharmaceuticals L.P.

      (i)  Product Portfolio Finance Leader (January 1, 1999-December 31, 1999)

  (c)  AstraZeneca L.P.

      (i)  Financial Leader, Process/Systems Planning (January 1, 2000-April 29, 2000)

  (d)  AstraZeneca Pharmaceuticals L.P.

      (i)  Financial Leader Portfolio & Strategic Planning (April 30, 2000-February 28, 2002)

      (ii) Senior Director Finance Operations (March 1, 2002-Present)

(34)   <u>John V. O'Brien</u>

  (a)  Zeneca Inc.

      (i)  Manager Pharmacoeconomics (December 11, 1996-January 31, 1998)

      (ii) National Sales Director (February 1, 1998-December 31, 1999)

  (b)  AstraZeneca Pharmaceuticals L.P.

      (i)  National Sales Director, Oncology (January 1, 2000-March 31, 2000)

  (c)  AstraZeneca L.P.

      (i)  National Sales Director, Oncology (April 1, 2000-April 29, 2000)

      (ii) National Sales Director, Therapeutic (April 30, 2000-April 30, 2001)

      (iii) Vice President Oncology Therapeutic Area (May 1, 2001-March 31, 2003)

      (iv) Vice President Emerging Brands Commercial (April 1, 2003-Present)

(35)   <u>Joseph Michael Waldron</u>



   (a)  Astra/Merck Group of Merck Co.

       (i)  [No position listed] (October 11, 1993-April 1, 1994)

       (ii) Systems Analyst (April 2, 1994-June 30, 1994)

   (b)  Astra Merck Inc.

       (i)  Process/Systems Associate – Drug Development (July 1, 1994-December 31, 1996)

       (ii) Process/Systems Associate (January 1, 1997-March 23, 1998)

      (iii) Area Integrator – Drug Development (March 24, 1998-May 31, 1998)

      (iv) Area Integrator (June 1, 1998-April 30, 1999)

   (c)  Astra Pharmaceuticals L.P.

       (i)  Area Integrator (May 1, 1999-September 30, 1999)

   (d)  AstraZeneca L.P.

       (i)  Area Integrator (October 1, 1999-December 31, 1999)

       (ii) Business Information Systems Leader, Clinical Development (January 1, 2000-March 31, 2000)

   (e)  AstraZeneca Pharmaceuticals L.P.

       (i)  Business Information Systems Leader, Clinical Development (April 1, 2000-April 29, 2000)

       (ii) Senior Director, Business Information Systems CDMA (April 30, 2000-December 31, 2001)

      (iii) Senior Director, US Drug Development Information Systems (January 1, 2001-February 28, 2003)

      (iv) Executive Director Business Information Systems US Drug Development (March 1, 2003-March 31, 2003)



(v) Executive Director US Development Information Systems Appl (April 1, 2003-Present)

(36) <u>Karen O. Bradley</u>

  (a) Astra/Merck Group of Merck Co.

    (i) [No position listed] (August 1, 1993-April 1, 1994)

    (ii) Financial Analyst-A/P, P/O (April 2, 1994-December 31, 1994)

  (b) Astra Merck Inc.

    (i) Financial Analyst-G/L (January 1, 1995-August 6, 1995)

    (ii) Senior Financial Analyst (August 7, 1995-July 31, 1996)

    (iii) Manager Financial Reporting & Accounting (August 1, 1996-June 1998)

  (c) Astra Pharmaceuticals L.P.

    (i) Manager Financial Reporting & Accounting (July 1, 1998-December 31, 1998))

    (ii) Assist Controller Acct/Gl/Ctrl (January 1, 1999-June 30, 1999)

  (d) AstraZeneca L.P.

    (i) Assist Controller Acct/Gl/Ctrl (July 1, 1999-December 31, 1999)

    (ii) WV3 Leader, Financial Planning & Reporting/Astra (January 1, 2000-March 31, 2000)

  (e) AstraZeneca Pharmaceuticals L.P.

    (i) WV3 Leader, Financial Planning & Reporting/Astra (April 1, 2000-April 29, 2000)

    (ii) Director AZ Pharms Financial Planning & Reporting (April 30, 2000-June 30, 2001)



(iii) Senior Director, Financial Planning & Reporting(July 1, 2001-March 31, 2003)

(iv) Senior Director OPMT Support & Bus Perf (April 1, 2003-August 31, 2004)

(v) Executive Director OPMT Support & Bus Perf (September 1, 2004-Present)

(37)  Kathy L. Monday

  (a)  Astra/Merck Group of Merck Co.

    (i)  [No position listed] (July 8, 1985-December 31, 1986)

    (ii)  [No position listed] (January 1, 1987-June 30, 1987)

    (iii)[No position listed] (July 1, 1988-March 31, 1992)

    (iv)[No position listed] (April 1, 1992-April 1, 1994)

    (v)  Sourcing Partner (April 2, 1994-March 31, 1995)

  (b)  Astra Merck Inc.

    (i)  Director, Product Operations (April 1, 1995-June 30, 1998)

  (c)  Astra Pharmaceuticals L.P.

    (i)  Director, Product Operations (July 1, 1998-September 30, 1998)

    (ii)  Executive Director Product Operations (October 1, 1998-December 31, 1999)

  (d)  AstraZeneca L.P.

    (i)  Leader, Product Industrialization (January 1, 2000-March 31, 2000)

  (e)  AstraZeneca Pharmaceuticals L.P.

    (i)  Leader, Product Industrialization (April 1, 2000-April 29, 2000)



      (ii) Executive Director Product Industrialization (April 30, 2000-August

         31, 2001)

      (iii) Vice President Customer & Technical Operations (September 1,

         2001-Present)

(38)   <u>Kaylor P. Kowash</u>

  (a)  Zeneca, Inc.

     (i)  Clinical Research Manager (December 11, 1996-May 31, 1997)

     (ii) Associate Promotion Manager (June 1, 1997-January 31, 1998)

     (iii) Product Promotion Manager (February 1, 1998-December 31, 1999)

  (b)  AstraZeneca Pharmaceuticals L.P.

     (i)  Product Manager, Oncology (January 1, 2000-March 31, 2000)

  (c)  AstraZeneca L.P.

     (i)  Product Manager, Oncology (April 1, 2000-April 29, 2000)

     (ii) Product Manager (April 30, 2000-July 31, 2000)

     (iii) Senior Product Manager (August 1, 2000-November 30, 2001)

     (iv) Brand Director (December 1, 2001-March 31, 2003)

     (v) Brand Director – Health Prof-Iressa (April 1, 2003-Present)

(39)   <u>Kenneth Murtha</u>

  (a) Astra/Merck Group of Merck Co.

     (i)  [No position listed] (May 17, 1982-April 1, 1994)

     (ii) Director, Product Sourcing & Distribution (April 2, 1994-October 31,

        1994)

     (iii) Executive Director, Product & Customer Operations (November 1,

        1994-June 30, 1995)



(b) Astra Merck Inc.

    (i) Executive Director, Product & Customer Operations (July 1, 1995-June 30, 1998)

(c) Astra Pharmaceuticals L.P.

    (i) Executive Director, Product & Customer Operations (July 1, 1998-December 31, 1998)

    (ii) Vice President, Product & Customer Operations (January 1, 1999-June 30, 1999)

(d) AstraZeneca L.P.

    (i) Vice President, Product & Customer Operations (July 1, 1999-December 31, 1999)

(e) AstraZeneca L.P.

    (i) Leader, Supply Chain Operations & Strategy (January 1, 2000-March 31, 2000)

(f) AstraZeneca Pharmaceuticals L.P.

    (i) Leader, Supply Chain Operations & Strategy (April 1, 2000-April 29, 2000)

    (ii) Vice President SCOS (April 30, 2000-August 31, 2001)

    (iii) Vice President, Operations (September 1, 2001-June 30, 2003)

    (iii) Vice President Business Operations (July 1, 2003-Present)

(40)   <u>Kerby B. DeCarme</u>

  (a) Zeneca Inc.

    (i) Director of Diversity (December 11, 1996-December 31, 1999)

  (b) AstraZeneca Pharmaceuticals L.P.



(i)  WV3 Human Resources BP, Financial Legal & Public Affairs
(January 1, 2000-April 29, 2000)

(ii) Director/Human Resources Business Partner (April 30, 2000-
November 30, 2000)

(iii) Senior Director, Human Resources (December 1, 2000-May 31, 2003)

(v) Executive Director Talent Development (June 1, 2003-Present)

(41)  <u>Kevin Kinsella</u>

  (a)  Zeneca Inc.

    (i)  Revenue Program Auditor (May 5, 1997-March 31, 1998)

    (ii) Audit Supervisor – Rev Programs (April 1, 1998-December 31, 1999)

  (b)  AstraZeneca Pharmaceuticals L.P.

    (i)  Refund Program Audit Leader (January 1, 2000-January 31, 2000)

    (ii) Financial Analyst (February 1, 2000-April 29, 2000)

    (iii) Refund Program Audit Manager (April 30, 2000-June 30, 2000)

    (iv) Financial Lead, Managed Care (July 1, 2000-May 31, 2001)

    (v) Senior Business Leader, Managed Care Finance (June 1, 2001-August
31, 2002)

  (c)  AstraZeneca L.P.

    (i)  Contracting Director, Oncology (September 1, 2002-Present)

(42)  <u>Lisa A. Schoenberg</u>

  (a)  Astra/Merck Group of Merck Co.

    (i)  [No position listed] (June 1, 1992-August 28,1992)

    (ii) [No position listed] (August 23, 1993-April 1, 1994)

    (iv)Pharmaceutical Specialist (April 2, 1994-December 31, 1994)



(a) Astra Merck Inc.

    (i) Business Research Analyst (January 1, 1995-April 14, 1996)

    (ii) Healthcare Solutions Research Partner (April 15, 1996-October 31, 1996)

    (iii) Marketing Manager – Gastro-intestinal (November 1, 1996-March 10, 1998)

    (v) Marketing Partner – Gastro-intestinal (March 11, 1998-June 30, 1998)

(b) Astra Pharmaceuticals L.P.

    (i) Marketing Partner – Gastro-intestinal (July 1, 1998-November 30, 1998)

    (ii) Marketing Partner (December 1, 1998-March 31, 1999)

    (iii) Action Team Leader (April 1, 1999-August 31, 1999)

(c) AstraZeneca L.P.

    (i) Action Team Leader (September 1, 1999-December 31, 1999)

    (ii) Product Director H199 (January 1, 2000-April 29, 2000)

    (iii) Director Nexium Product Group (April 30, 2000-November 30, 2001)

    (iv) Group Director (December 1, 2001-January 31, 2003)

    (v) Vice President, Phoenix/Mature Products Business Unit (February 1, 2003-November 30, 2003)

    (vi) Vice President Marketing Operations (December 1, 2003-Present)

(43)  <u>Luanne Byers</u>

  (a) Zeneca Inc.

    (i) Director New Product Planning (December 11, 1996-December 31, 1999)



(b)   AstraZeneca Pharmaceuticals L.P.

   (i)   Head, Portfolio Planning (January 1, 2000-March 31, 2000)

(c)   AstraZeneca L.P.

   (i)   Head, Portfolio Planning (April 1, 2000-April 29, 2000)

   (ii)  Senior Director Portfolio Planning (April 30, 2000-February 28, 2001)

(d)   AstraZeneca Pharmaceuticals L.P.

   (i)   Executive Director, Corporate & Commercial Affairs (March 1, 2001-
         July 31, 2004)

   (ii)  Executive Director Strategic Intern Comm (July 1, 2004-Present)

(44)   <u>Marion McCourt</u>

   (a)  Stuart Disease Management Services

      (i)   Executive Director, Strategic Planning (December 11, 1996-January
            31, 1997)

      (ii)  Vice President Consulting (February 1, 1997-December 31, 1998)

   (b)  Zeneca Inc.

      (i)   SDMS Transfer (January 1, 1999-February 28, 1999)

      (ii)  Commercial Project Leader US (March 1, 1999-December 31, 1999)

   (c)  AstraZeneca Pharmaceuticals L.P.

      (i)   National Sales Director, Managed Care (January 1, 2000-March 31,
            2000)

   (d)  AstraZeneca L.P.

      (i)   National Sales Manager, Managed Care (April 1, 2000-April 29, 2000)

      (ii)  National Sales Director, Managed Care (April 30, 2000-December 31,
            2001)



(iii) Vice President Managed Care (January 1, 2002-February 28, 2004)

(e) AstraZeneca Pharmaceuticals L.P.

(i) Vice President Government Policy & Managed Markets (March 1, 2004-Present)

(45)   <u>Mark Mallon</u>

(a)  Astra/Merck Group of Merck Co.

(i)  IES Solutions Integrator-Pharm (June 6, 1994-December 31, 1994)

(b)· Astra Merk Inc.

(i)  IES Leader, CIES Team (January 1, 1995-December 31, 1996)

(ii) Field Sales Executive/Business Unit Director (January 1, 1997-March 31, 1997)

(iii) Customer Unit Director (April 1, 1997-December 31, 1997)

(iv) Action Team Leader – Prilosec (January 1, 1998-June 30, 1998)

(c)  Astra Pharmaceuticals L.P.

(i)  Action Team Leader – Prilosec (July 1, 1998-January 31, 1999)

(ii) Business Unit Commercial Leader (February 1, 1999-December 31, 1999)

(d)  Astra Zeneca L.P.

(i)  Marketing Leader TA – Gastro-intestinal (January 1, 2000-April 29, 2000)

(ii) Marketing Director Gastro-intestinal (April 30, 2000-June 30, 2000)

(iii)Vice President, Gastro-intestinal Therapeutic Area (July 1, 2000-March 31, 2003)



(iv) Vice President Primary Care Gastro-intestinal/Respiratory (April 1, 2003-Present)

(46)  <u>Mark Milby</u>

  (a)  Astra US

    (i)  [No position listed] (January 17, 1994-December 31, 1997)

    (ii)  Product Manager – Emla (January 17, 1994-June 1998)

  (b)  Astra Pharmaceuticals L.P.

    (i)  Product Manager – Emla (July 1998-December 31, 1998)

    (ii)  Action Team Leader (January 1, 1999-December 31, 1999)

  (b)  AstraZeneca L.P.

    (i)  Product Manager, Hosp. (January 1, 2000-April 29, 2000)

    (ii)  Product Manager (April 30, 2000-January 31, 2001)

    (iii)  Senior Product Manager (February 1, 2001-November 30, 2001)

    (iv)  Brand Director (December 1, 2001-March 31, 2003)

    (v)  Brand Director Phoenix (April 1, 2003-Present)

(47)  <u>Mark S. Uhle</u>

  (a)  Astra/Merck Group of Merck Co.

    (i)  [No position listed] (April 1, 1993-April 1, 1994)

    (ii)  Senior. Financial Analyst-Drug Development/Licensing (April 2, 1994-April 30, 1995)

  (b)  Astra Merck Inc.

    (i)  Senior Financial Analyst-Drug Development/Licensing (May 1, 1995-December 31, 1995)



(ii) Manager, Financial Services, Drug Development and Licensing (January 1, 1996-January 31, 1997)

(iii) Manager Financial Planning (February 1, 1997-August 12, 1997)

(iv) Manager, Gastro-intestinal Business Unit, Finance (August 13, 1997-June 30, 1998)

(c) Astra Pharmaceuticals L.P.

(i) Manager, Gastro-intestinal Business Unit, Finance (July 1, 1998-September 30, 1998)

(ii) Business Unit Financial Leader (October 1, 1998-December 31, 1999)

(d) AstraZeneca L.P.

(i) Business Unit Financial Leader (January 1, 2000-March 31, 2000)

(e) AstraZeneca Pharmaceuticals L.P.

(i) Business Unit Financial Leader (April 1, 2000-April 29, 2000)

(ii) Financial Leader, Licenses & Business Development Support (April 30, 2000-March 31, 2001)

(iii) Vice President, PS&L (April 1, 2001-Present)

(48) Mark White

(a) Zeneca Inc.

(i) Salary Analyst (December 11, 1996-September 30, 1997)

(ii) Salary Analyst A (October 1, 1997-August 31, 1998)

(iii) Benefits & Tax Lead (September 1, 1998-December 31, 1999)

(b) AstraZeneca Pharmaceuticals L.P.

(i) Tax & Benefits Lead (January 1, 2000-April 29, 2000)

(ii) Payroll Accounting Lead (April 30, 2000-August 31, 2001)

28



(iii) Business Lead, Managed Care Finance (September 1, 2001-December

31, 2002)

(iv) Senior Business Lead, Managed Care Finance (January 1, 2003-

Present)

(49)   Matthew R. Diggons

(a)   Zeneca Inc.

(i)   Staff Auditor (December 23, 1996-May 31, 1998)

(ii) Senior Auditor (June 1, 1998-December 31, 1999)

(b)   AstraZeneca Pharmaceuticals L.P.

(i)   Senior Auditor (January 1, 2000-February 29, 2000)

(ii) Refund Program Audit Leader (March 1, 2000-April 29, 2000)

(iii) Contract Incent Program Audit Manager (April 30, 2000-May 31,

2001)

(iv) Senior Business Leader,Cntct Incntvs Mgt (June 1, 2001-November

30, 2001)

(v) Senior Business Lead, Managed Care Finance (December 1, 2001-

October 31, 2003)

(vi) Director Management Planning & Analysis (November 1, 2003-

Present)

(50)   Michael Curnyn

(a)   Astra/Merck Group of Merck Co.

(i)   [No position listed] (September 27, 1993-April 1, 1994)

(ii) Systems Analyst – Infrastructure Systems (April 2, 1994-June 30,

1994)



     (iii) Process/Systems Associate – Infrastructure Systems (July 1, 1994-

        September 30, 1995)

  (b)  Astra Merck Inc.

     (i)  Process/Systems Associate – Infrastructure Systems (October 1, 1995-

        December 31, 1996)

     (ii) Process/Systems Associate (January 1, 1997-January 31, 1998)

     (iii) Area Integrator (February 1, 1998-June 30, 1998)

  (c)  Astra Pharmaceuticals L.P.

     (i)  Area Integrator (July 1, 1998-September 30, 1998)

     (ii) Area Integrator, Commercial (October 1, 1998-December 31, 1999)

  (d)  AstraZeneca L.P.

     (i)  Major Projects – Integration (January 1, 2000-March 31, 2000)

  (e)  AstraZeneca Pharmaceuticals L.P.

     (i)  Major Projects – Integration (April 1, 2000-April 29, 2000)

     (ii) Director, Business Information Systems Operations Integration Project

        (April 30, 2000-August 31, 2000)

     (iii) Director, eBusiness Program (September 1, 2000-January 31, 2002)

     (iv) Director Business Information Systems TA (February 1, 2002-January

        31, 2003)

     (v) Senior Director Business Information Systems-Brand Tm MO,

        Managed Care & PA (February 1, 2004-Present)

(51)  <u>Michael Diggin</u>

  (a)  Zeneca Inc.

     (i)  Manager, Logistics/Safety (December 11, 1996-July 31, 1997)



(ii) Manager, Contract Operations (August 1, 1997-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.

      (i)  Leader, Contract Operations (January 1, 2000-March 31, 2000)

   (c) AstraZeneca L.P.

      (i)  Leader, Contract Operations (April 1, 2000-April 29, 2000)

      (ii) Director, Contract Operations (April 30, 2000-October 31, 2003)

      (iii) Managed Care Business Director (November 1, 2003-Present)

(52)   Michael Hickey

   (a) Zeneca, Inc.

      (i)  Associate Marketing Director (December 11, 1996-March 31, 1997)

      (ii) Marketing Director (April 1, 1997-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.

      (i)  Therapy Area Leader – CNS (January 1, 2000-March 31, 2000)

   (c) AstraZeneca L.P.

      (i)  Therapy Area Leader – CNS (April 1, 2000-April 29, 2000)

      (ii) Vice President CNS Therapeutic Area (April 30, 2000-July 31, 2001)

      (iii) Vice President, Sales (August 1, 2001-Present)

(53)   Michael Orlowski

   (a) Astra US

      (i)  Associate Comp Auditor (April 7, 1994-January 31, 1998)

      (ii) Director of Procurement (February 1, 1998-June 30, 1998)

   (b) Astra Pharmaceuticals L.P.

      (i)  Director of Procurement (July 1, 1998-December 31, 1999)

   (c) AstraZeneca L.P.



    (i) WV4 Purchasing Leader, Marketing & Sales (January 1, 2000-March 31, 2000)

  (d) AstraZeneca Pharmaceuticals L.P.

    (i) WV4 Purchasing Leader, Marketing & Sales (April 1, 2000-April 29, 2000)

    (ii) Director, Purchasing Marketing & Sales (April 30, 2000-February 28, 2002)

    (iii) Director, Marketing & Sales Purchasing (March 1, 2002-December 31, 2002)

    (iv) Director, Supply Chain Operations & Planning (January 1, 2003-June 30, 2004)

    (v) Strategic Trade Project Leader (July 1, 2004-Present)

(54) <u>Nancy Moshel</u>

  (a) Zeneca Inc.

    (i) Pkg. Technical Services Group Leader (December 11, 1996-October 31, 1998)

    (ii) Insights Program Manager (November 11, 1998-December 31, 1999)

  (b) AstraZeneca Pharmaceuticals L.P.

    (i) Leader, Operations Capability Planning (January 1, 2000-April 29, 2000)

    (ii) Director, Operations Capability Planning (April 30, 2000-March 1, 2001)

    (iii) Senior Director, IS Business Office (March 1, 2001-November 30, 2003)



(iv) Executive Director SPKS (December 1, 2003-Present)

(55)    Nancy Wilkinson

    (a) AstraZeneca L.P.

        (i)  Contract Strategy & Operations Director (March 18, 2002-Present)

(56)    Paul Villa

    (a) Astra Merck Inc.

        (i)  Business Research Analyst – Customer Marketing (February 23, 1998-
March 17, 1998)

        (ii) Business Research Analyst (March 18, 1998-June 30, 1998)

    (b) Astra Pharmaceuticals L.P.

        (i)  Business Research Analyst (July 1, 1998-March 30, 1999)

        (ii) Marketing Partner (April 1, 1999-December 31, 1999)

    (c) AstraZeneca L.P.

        (i)  TA Focused Strategy Manager (January 1, 2000-February 28, 2001)

        (ii) TA Managed Care Strategy Manager (March 1, 2001-January 31,
2002)

        (iii) Contracting Director (February 1, 2002-Present)

(57)    Richard Fante

    (a) Astra US

        (i)  Manager, Market Research (February 1, 1995-June 30, 1998)

    (b) Astra Pharmaceuticals L.P.

        (i)  Manager, Market Research (July 1, 1998-September 30, 1998)

        (ii) Market Manager – Rhinocort (October 1, 1998-December 31, 1998)

        (iii) Business Unit Leader (January 1, 1999-June 30, 1999)



(c) AstraZeneca L.P.

  (i)  Business Unit Leader (July 1, 1999-December 31, 1999)

(d) AstraZeneca L.P.

  (i)  Therapy Area Leader – Respiratory (January 1, 2000-April 29, 2000)

  (ii) Vice President Respiratory Therapy Area (April 30, 2000-July 31,
       2001)

  (iii) Vice President, Marketing Operations (August 1, 2001-November 30,
       2003)

  (iv) Vice President Primary Care Gastro-intestinal/Respiratory (December
       1, 2003-Present)

(58)  Robert Cohen

  (a) Astra/Merck Group of Merck Co.

    (i)  [No position listed] (February 1, 1992-April 1, 1994)

    (ii) Vice President, Information Technology (April 2, 1994-December 31,
         1994)

  (b) Astra Merck Inc.

    (i)  Vice President, Information/Technology (January 1, 1995-January 31,
         1997)

    (ii) Vice President, Information/Technology & Capabilities (February 1,
         1997-June 30, 1998)

  (c) Astra Pharmaceuticals L.P.

    (i)  Vice President, Information/Technology & Capabilities (July 1, 1998-
         December 31, 1999)

  (d) AstraZeneca L.P.

34



(i) Vice President, IS & CIO (January 1, 2000-March 31, 2000)

(e) AstraZeneca Pharmaceuticals L.P.

(i) Vice President, IS & CIO (April 1, 2000-Present)

(59)  <u>Roger Lynn Hyde</u>

(a) Astra/Merck Group of Merck Co.

(i)  [No position listed] (January 1, 1981-April 1, 1994)

(ii) Field Sales Executive/Business Unit Director (April 2, 1994-October 31, 1994)

(iii) Project Leader – NASS (November 1, 1994-December 31, 1994)

(b) Astra Merck Inc.

(i)  Project Leader – NASS (January 1, 1995-July 31, 1995)

(ii) Director, Sales Force Strategy & Design (August 1, 1995-December 31, 1995)

(iii) Director, Customer Marketing (January 1, 1996-March 31, 1997)

(iv) Customer Center Leader (April 1, 1997-June 30, 1998)

(c) Astra Pharmaceuticals L.P.

(i)  Customer Center Leader (July 1, 1998-September 30, 1998)

(ii) National Sales Director (October 1, 1998-December 31, 1999)

(d) AstraZeneca L.P.

(i)  National Sales Director, Gastro-intestinal (January 1, 2000-April 29, 2000)

(ii) National Sales Director, Therapeutic (April 30, 2000-December 31, 2001)

(iii) Marketing Director – Crestor (January 1, 2002-August 31, 2002)

35



(iv) Group Director (September 1, 2002-March 31, 2003)

(v) Executive Director, Commerce Operations – Crestor (April 1, 2003-
May 31, 2004)

(vi) Vice President, Managed Care (June 1, 2004-Present)

(60)   Russell Gantt

(a) Astra Merck Inc.

(i)  Executive Director Licensing & Business Development (December 1,
1997-June 30, 1998)

(b) Astra Pharmaceuticals L.P.

(i)  Executive Director Licensing & Business Development (July 1, 1998-
December 31, 1999)

(c) AstraZeneca L.P.

(i)  WV3 Licensing (January 1, 2000-April 30, 2000)

(d) AstraZeneca Pharmaceuticals L.P.

(i)  WV3 Licensing (April 1, 2000-April 29, 2000)

(ii) Executive Director, Licensing (April 30, 2000-Present)

(61)   Steven Strand

(a) Zeneca Inc.

(i)  Mkt. Director Spec/Oncology Care (December 11, 1996-December 31,
1999)

(b) AstraZeneca Pharmaceuticals L.P.

(i)  Therapy Area Leader – Oncology (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

(i)  Therapy Area Leader – Oncology (April 1, 2000-April 29, 2000)



(ii) Vice President Oncology Therapeutic Area (April 30, 2000-April 31, 2001)

(d) AstraZeneca Pharmaceuticals L.P.

(i) Global Oncology Franchise Director (May 1, 2001-Present)

(62) <u>Sarah Harrison</u>

(a) Zeneca Inc.

(i) Director Market Strategy/Cont. Operations (December 11, 1996-April 31, 1998)

(ii) Vice President, Managed Healthcare & Nat. Acct. (May 1, 1998-December 31, 1999)

(b) AstraZeneca Pharmaceuticals L.P.

(i) Therapy Area Leader – HPI (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

(i) Therapy Area Leader – HPI (April 1, 2000-April 29, 2000)

(ii) Vice President, Pain, Anesthesia & Infection TA (April 30, 2000-July 31, 2001)

(iii) Vice President, Cost Strategy Public Affairs (August 1, 2001-Present)

(63) <u>Sean Dougherty</u>

(a) Astra Merck Inc.

(i) Project Accountant (August 12, 1996-August 12, 1997)

(ii) Financial Analyst – Infrastructure (August 13, 1997-February 28, 1998)

(iii) Skill Center Operations Partner (March 1, 1998-June 30, 1998)

(b) Astra Pharmaceuticals L.P.



      (i)  Skill Center Operations Partner (July 1, 1998-December 31, 1998)

      (ii) Marketing Operation Partner (January 1, 1999-October 31, 1999)

  (c) AstraZeneca L.P.

      (i)  Marketing Operation Partner (November 1, 1999-December 31, 1999)

  (d) AstraZeneca L.P.

      (i)  Liaison – Portfolio Planning – HOSP (January 1, 2000-April 29, 2000)

      (ii) Portfolio Planning Liaison (April 30, 2000-September 30, 2002)

      (iii) Director, Drug Assistance Program (October 1, 2002-January 31, 2004)

      (iv) Director, Drug Assistance & Medicare Programs (February 1, 2004-Present)

(64)  <u>Stephen Heying</u>

  (a) Stuart Disease Man. Services

      (i)  Financial Analyst (December 11, 1996-October 31, 1998)

  (b) Zeneca Inc.

      (i)  Senior Financial Analytics Manager (November 1, 1998-December 31, 1999)

  (c) AstraZeneca Pharmaceuticals L.P.

      (i)  Financial Analyst (January 1, 2000-April 29, 2000)

      (ii) Financial Leader, Managed Care (April 30, 2000-May 31, 2001)

      (iii) Senior Business Lead, Managed Care Finance (June 1, 2001-November 30, 2001)

      (iv) Business Lead Managed Care Finance (December 1, 2001-May 31, 2002)



(v) Senior Business Leader, Respiratory/Oncology (June 1, 2002-Present)

(65)    Stephanie Mohr

   (a) AstraZeneca L.P.

     (i)  Pharmaceuticals Sales Specialist (March 3, 2003-May 31, 2004)

     (ii) Sales Analyst – Incentives & Objectives (June 1, 2004-Present)

(66)    Steven Pitts

   (a) Zeneca Inc.

     (i)  Regional Accounts Manager (December 11, 1996-March 31, 1998)

     (ii) Sales Director/National Accounts (April 1, 1998-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.

     (i)  Regional Sales Director – Managed Care (January 1, 2000-March 31, 2000)

   (c) AstraZeneca L.P.

     (i)  Regional Sales Director – Managed Care (April 1, 2000-June 30, 2001)

     (ii) Crestor – Managed Care Leader (July 1, 2001-May 31, 2002)

     (iii) Contracting Director (June 1, 2002-Present)

(67)    Thomas A. Behan

   (a) Zeneca Inc.

     (i)  Strategy Manager Gov/Whs/Ret (December 11, 1996-March 31, 1997)

     (ii) Group Manager Market Strategy (April 1, 1997-May 31, 1998)

     (iii) Director Market Strategy/Contract Operations (June 1, 1998-December 31, 1999)

   (b) AstraZeneca Pharmaceuticals L.P.



    (i) Head, Healthcare Systems Marketing & Contracting (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

    (i) Head Healthcare Systems Marketing & Contracting (April 1, 2000-April 29, 2000)

    (ii) Senior Director Healthcare Systems Marketing & Contracting (April 30, 2000-December 31, 2000)

    (iii) Business Compliance Director (January 1, 2001-April 30, 2002)

(b) AstraZeneca Pharmaceuticals L.P.

    (i) Senior Director Corporate Compliance (May 1, 2002-July 31, 2004)

    (ii) Director Communications Compl & Ethics (August 1, 2004-Present)

(68) <u>Wayne Rosenkrans</u>

  (a) Zeneca Inc.

    (i) Sci. Competition Intelligence Analyst (April 6, 1998-December 31, 1999)

  (b) AstraZeneca Pharmaceuticals L.P.

    (i) Leader, CompIntel/KnowMgt. (January 1, 2000-March 31, 2000)

  (c) AstraZeneca L.P.

    (i) Leader, CompIntel/KnowMgt. (April 1, 2000-April 29, 2000)

    (ii) Director, Competitive Intelligence (April 30, 2000-March 31, 2001)

    (iii) Global Competitive Intelligence Director (April 1, 2001-December 31, 2003)

    (iv) Ext. Scientific Affairs Strategy Director (January 1, 2004-Present)

(69) <u>Zahir Ladhani</u>



(a) Zeneca Inc.

  (i)  Strategy Manager (December 11, 1996-January 31, 1998)

  (ii) Product Manager (February 1, 1998-March 31, 1999)

  (iii)Senior Product Manager (April 1, 1999-December 31, 1999)

(b) AstraZeneca Pharmaceuticals L.P.

  (i)  Marketing Leader TA – Hosp/Pain (January 1, 2000-March 31, 2000)

(c) AstraZeneca L.P.

  (i) Marketing Leader TA – Hosp/Pain (April 1, 2000-April 29, 2000)

  (ii) Marketing Director, Hospital/Pain (April 30, 2000-June 30, 2000)

  (iii) Marketing Director, Gastro-intestinal (July 1, 2000-March 31, 2003)

  (iv) Executive Director, Commercial Operations – RAQ/PR (April 1,

    2003-Present)

# Exhibit E

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: LUPRON® MARKETING | ) | |
| | ) | MDL NO. 1430 (RGS) |
| AND SALES PRACTICES LITIGATION | ) | |
| | ) | Master File No. 01-CV-10861 |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | Judge Richard G. Stearns |
| ALL ACTIONS. | ) | |

### STIPULATED [~~PROPOSED~~] CASE MANAGEMENT ORDER NO. 2

To promote efficiency and judicial economy, IT IS HEREBY ORDERED THAT:

## I.    RULES APPLICABLE TO DEPOSITIONS

### A.    GENERAL

1.    All provisions of this Court's February 13, 2002 Case Management Order, including those applicable to the conduct of depositions, remain in full force and effect.

2.    This Case Management Order Number 2 shall govern fact discovery conducted in these proceedings.  The Court will enter a separate Order with respect to expert discovery and trial.  Any order of this Court with respect to expert discovery and trial shall not be binding on a coordinated State Court Case; the schedule set by the state court shall control those subjects.

The limitations on the number of depositions, interrogatories, requests for admission and requests for production of documents set forth herein are based upon the parties' current reasonable estimates.  The limitation on these numbers, as well as the limitations on the duration of depositions, are also based upon the assumption that stipulations by and among the parties as to the authenticity and admissibility of most documents will obviate the need to use these discovery devices, including a significant portion of any given deposition, to establish the

authenticity and/or admissibility of documents. These limitations may be modified by written

stipulation of the parties or by the Court upon application of a party and for good cause shown.

3. Scheduling and conduct of depositions, including resolution of any disputes

among parties to cases pending in MDL No. 1430 arising during depositions, shall be in

accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. For

any related state case in which an order has been entered coordinating discovery with discovery

in this proceeding, scheduling and conduct of depositions shall also be in accordance with the

applicable state and local court rules, and disputes between Plaintiffs and Defendants regarding

scheduling and conduct may also be heard by the local state court. Counsel are expected to

cooperate with, and be courteous to, each other and to deponents.

**B.     DEPOSITION SCHEDULE**

1. The Court's objective is to avoid duplicative depositions of any person or party

and to avoid disputes about deposition logistics. Absent a written agreement by the parties to

the contrary, or for good cause shown, the parties will not be permitted to re-depose a witness or

party previously deposed in connection with the MDL or Coordinated State Court Case

identified on Exhibit A (the "State Court Case(s)") except to the extent that the witness or party

was produced for a limited purpose or on a limited basis, including witnesses noticed for

jurisdictional purposes only. No witness will be considered to have been produced for a limited

purpose absent the parties' written agreement to that effect.

2. Plaintiffs' Class Co-Lead Counsel, Liaison Counsel for the Private Non-Class

Cases, Plaintiffs' Co-Liaison Counsel for the Coordinated State Court Cases, and Counsel for

the Defendants shall attempt to establish by mutual agreement a schedule for depositions in this

proceeding that reflects a sequencing that is consistent with the objective of avoiding the need

2

to subject any person to repeated depositions. Plaintiffs' Co-Liaison Counsel for the Coordinated State Court Cases shall coordinate with counsel of record for the State Court Cases and is responsible for providing notice of any deposition of a defense witness in these proceedings to counsel for plaintiffs in all Coordinated State Court Cases. Disputes concerning the timing and scheduling of depositions may be presented to the Court if necessary. Cases listed on Exhibit A are subject to this Order. Cases listed on Exhibit B are not currently subject to this Order. Plaintiffs' Co-Liaison Counsel for the Coordinated State Court Cases and Counsel for Defendants shall endeavor to have the cases listed in Exhibit B coordinated with this proceeding and made subject to this Order. This proceeding shall not be delayed by a state court refusing, or any party to a state court case objecting, to coordinate a state court case with this proceeding.

3.     Consistent with the provisions of this Court's February 13, 2002 Case Management Order, Plaintiffs' Co-Lead Counsel, and Plaintiffs' Co-Liaison Counsel for the Coordinated State Court Cases are responsible for keeping all Plaintiffs' Counsel in these proceedings and in the State Court Cases fully apprised of the scheduling of any depositions in these proceedings.

## C.     NUMBER OF DEPOSITIONS

1.     Absent agreement of the parties, not more than one deposition of a current or former employee of any party in this Action shall be noticed for any given day. Plaintiffs in this Action will be permitted to conduct no more than fifty (50) depositions of the Defendants, in total, including depositions of current or former employees, depositions for jurisdictional or other limited purposes and depositions pursuant to Fed. R. Civ. Pro. 30(b)(6).

2.     Defendants will be permitted to conduct no more than the greater of (a)

twelve (12) depositions per Plaintiff Family, or (b) four (4) times the number of individual named Plaintiffs within the Plaintiff Family, including depositions of current or former employees, and depositions pursuant to Fed. R. Civ. P. 30(b)(6) of that Plaintiff Family, provided, however, that, with respect only to those Plaintiff Families that have more than one individual Plaintiff within the Plaintiff Family, the Defendants, upon motion and good cause shown, which will include a good faith determination by Defendants that the information needed about a particular Plaintiff within the Plaintiff Family has not been developed as a result of the aforesaid number of depositions, shall be permitted to conduct no more than an additional (3) depositions of witnesses on behalf of the Plaintiff Family. If a single witness is produced to provide deposition testimony about the claims of multiple Plaintiffs within the Plaintiff Family, Defendants shall be allowed a reasonable extension of the duration of the deposition. For purposes of this Paragraph C2 only, a Plaintiff Family includes all related corporate parents, subsidiaries and affiliates named as plaintiffs in this litigation.

     3.      Notwithstanding these limitations, a party will be permitted, subject to the terms of this Order, to depose any person not previously deposed who has been designated by an opposing party to testify at trial in these proceedings.

     4.      Notwithstanding the provisions of this Order regarding the number of depositions permitted, each party reserves the right to object to any deposition for any reason, including that it would be duplicative of other testimony.

     **D.**      **LOCATION OF DEPOSITIONS**

     Notwithstanding any other provision of this Order, the parties shall cooperate in good faith to hold depositions at a time and location convenient to the witness. Absent a written agreement by the parties, or Order of this Court for good cause shown, Plaintiffs, current and

4

former employees of any Plaintiff or Defendant, or any other witness, shall be made available for deposition, at the witness's discretion, in either: (a) Chicago, Illinois; (b) Boston, Massachusetts; (c) New York, New York; (d) within 25 miles of the City where the witness resides; or (e) within 25 miles of the City where the witness currently works. The party noticing the deposition shall make arrangements for and shall advise all parties of the facilities where the deposition will be hosted.

### E.    ATTENDANCE

1.    Unless otherwise ordered under Fed. R. Civ. P. 26(c), depositions may be attended by counsel of record in this Action and counsel in any State Court Case that receives notice of the deposition, members and employees of their firms, experts or consultants, and counsel for the deponent; provided, however, that no person will be permitted to attend absent the entry of a protective order in the case(s) in which he or she has appeared as counsel of record or the person has previously signed Exhibit A to the Stipulation and Protective Order entered by this Court.

2.    Each party wishing to attend a scheduled deposition shall so advise Plaintiffs' Liaison Counsel and counsel for the Defendants of (a) the number of people to attend from each identified law firm at least three (3) full business days before the deposition and (b) the names of attending counsel at least one (1) full business day before the deposition. Each party wishing to attend a previously scheduled deposition must serve a written notice of deposition upon Plaintiffs' Liaison Counsel and counsel for the Defendants at least five (5) full business days before the deposition.

F.    **DURATION OF EXAMINATIONS**

1.    Except by agreement of the parties, the deposition of any party witness shall be limited to eight (8) hours and completed in one day, excluding time taken for breaks, meals, and other reasons.  Any deposition which requires the use of a translator for all, or substantially all, of any witness' testimony shall be limited to eight (8) hours per day, not to exceed a total of (16) sixteen hours.  Any deposition which requires the use of a translator for a portion (but less than all, or substantially all) of a witness' testimony shall be limited to eight (8) hours per day, not to exceed a total of (12) twelve hours.  Counsel shall use their best efforts to limit breaks for meals to one hour.

2.    Time for examination of a witness at deposition shall be allocated as follows:  up to seven (7) hours of the deposition may be used for questions by the side of the party noticing the deposition, and no more than one (1) hour shall be reserved for the deponent's counsel and/or by counsel for any party opposing the party that noticed the deposition (and shall not be used to extend the noticing side's seven (7) hours).  A comparable allocation of time shall be made for depositions that, pursuant to this Order or agreement of the parties, exceed eight (8) hours.

3.    Motions for leave of Court to deviate from these time limitations are disfavored; they will be granted only for good cause.

G.    **CONDUCT OF DEPOSITIONS**

1.    Counsel for all parties are encouraged to limit the number of questioners per side in any deposition and to designate questioners to represent their interests.  Counsel for Plaintiffs and Defendants shall coordinate to avoid duplication of questions.  Plaintiffs shall be allowed at each deposition to examine witnesses subject to the terms of this Order with: 1) an attorney

6

asking questions on behalf of the MDL class plaintiffs; 2) an attorney asking questions on behalf of the MDL non-class plaintiffs. In addition, subject to the terms of this Order, each Coordinated State Court Case shall have a right to have an attorney participate and ask questions. Each Defendant shall be allowed to examine any deponent. Questioners shall divide their time by agreement, asking the Court to resolve any disputes in that regard sufficiently in advance of the deposition and only where absolutely necessary. Failure to resolve such issues in advance of the deposition will not be grounds for exceeding the allotted time limit or otherwise continuing the deposition.

2. Counsel shall comply with Fed. R. Civ. P. 30(d)(1) and the Local Rules of this Court concerning the posing of objections during a deposition. Speaking objections are not permitted. With respect to Coordinated State Court Cases, counsel will also comply with state and local court rules regarding the posing of objections during a deposition.

3. No counsel shall object to any question posed during a deposition on the basis that questioning counsel is not admitted to practice in a jurisdiction where a State Court Case is pending or has not filed an appearance in this case or any State Court Case.

**H.   SUPPLEMENTAL DEPOSITIONS**

If agreed upon, a supplemental deposition shall be treated as the resumption of the deposition originally noticed. Examination in any supplemental deposition shall not be repetitive of any prior interrogation.

**I.   STENOGRAPHIC RECORDING**

A certified court reporter shall stenographically record all deposition proceedings and testimony. The court reporter shall administer the oath or affirmation to the deponent. The parties agree that the court reporter shall be deemed to be qualified to administer oaths pursuant

7

to the rules or codes of any state in which a State Case is pending. A written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) (submission to the witness) and 30(f) (filing, exhibits) and any comparable applicable state court rules. Deponents shall retain their rights to read, change, and sign the deposition transcripts in accordance with Fed. R. Civ. P. 30(e) and any comparable applicable state court rules.

### J.    VIDEOTAPING

A party may record a deposition by videotape pursuant to Fed. R. Civ. P. 30(b)(2) and (3). The party's intention to record the deposition by videotape must be indicated in the written notice of the deposition. The following rules shall apply to the taking of any such deposition:

#### 1.    Simultaneous Stenographic Recording

All videotaped depositions shall be simultaneously stenographically recorded.

#### 2.    Cost of the Deposition

The party requesting videotaping of the deposition shall bear the expense of the videotaping. Copies of the videotapes can be purchased by any party at its own expense, subject to the terms of the Protective Order.

#### 3.    Videotape Operator

The operator(s) of the videotape recording equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c). At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

4. **Identification**

Each witness, attorney, and other person attending the deposition shall be identified on camera at the commencement of the deposition. Thereafter, only the deponent (and demonstrative materials used during the deposition) will be videotaped.

5. **Interruptions**

No attorney shall interrupt a deposition to direct instructions to the video operator as to the method of operating the equipment. The video camera operation will be suspended during the deposition only upon stipulation by counsel and during "off the record" discussions. The video operator shall record on camera the time of suspension and any subsequent reconvening of the deposition.

6. **Standards**

The deposition will be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record the voices of counsel and the deponent. Counsel for the deponent and other attending counsel may consult with the video operator to ensure that these standards have been met.

7. **Service**

After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a

9

stenographic court reporter, and serve a true copy of the videotape, the transcript, and certificate to the party noticing the deposition. All restrictions imposed by applicable protective orders (e.g., limiting access to certain discovery materials, such as deposition transcripts, to counsel) shall also apply to videotapes of depositions. No part of a videotaped deposition shall be released or made available to the public unless authorized by the Court.

### 8. Use in Litigation

Depositions, under the conditions prescribed in Fed. R. Civ. P. 32(a)(1)-(4) or as otherwise permitted by the Federal Rules of Evidence, may be used against any party to MDL 1430 (including all parties governed by this Order, parties later added, and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation).

### K. DEPOSITION DISPUTES

1. During depositions, disputes that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require a rescheduling of the deposition, may, in the Court's discretion, be presented to this Court by telephone or, as to such disputes relating to examination by counsel for any party to a State Court Case, to the judge or discovery master in such case consistent with applicable court rules. Counsel for any plaintiff in MDL 1430 shall present in the first instance to this Court any discovery dispute. The presentation of the issue and the ruling will be recorded as part of the deposition.

2. The undersigned will exercise by telephone the authority granted under 28 U.S.C. § 1407(b) to act as district judge in the district in which the deposition is taken.

## II. RULES APPLICABLE TO WRITTEN DISCOVERY

1. All MDL 1430 Plaintiffs (including all Class Plaintiffs and Non-Class Plaintiffs) may together serve on each Defendant: (a) no more than 60 general interrogatories total; (b) in addition, no more than 25 interrogatories directed solely to personal jurisdiction matters; (c) no

10

more than 60 general requests for admissions total; (d) no more than 100 requests for admission

directed solely to the authenticity of documents; and (e) no more than 130 requests for the

production of documents total.

     2.     All Defendants may together serve on each MDL 1430 Plaintiff: (a) no more than

60 general interrogatories total; (b) in addition, no more than 25 interrogatories directed solely

to personal jurisdiction matters; (c) no more than 60 general requests for admissions total;

(d) no more than 100 requests for admission directed solely to the authenticity of documents;

and (e) no more than 130 requests for the production of documents total.

     3.     Any written discovery served before May 14, 2003 shall not be subject to the

limitations of Paragraphs 1 and 2 above.

     4.     Notwithstanding these limitations, the parties shall confer in a good faith attempt

to resolve all disputes concerning the authenticity of documents.  The limitations or number of

requests to admit for authenticity purposes may be modified by written stipulation of the parties

or by the Court upon application of a party and for good cause shown.

**III.   ELECTRONIC SERVICE OF COURT FILED DOCUMENTS**

     When a party to this Action wishes to serve a pleading or other document filed

with the Court to counsel of record, that party shall effectuate service of the document by the

procedure set forth in this Order, subject to the exceptions outlined herein.  All references to

"document" in this Order shall include any exhibits or attachments to said document.

     1.     If it so agrees, Verilaw Technologies, Inc., shall make available to the Court and

to attorneys in this litigation a system for providing electronic service, storage, and delivery of

documents ("the system").  Upon implementation of the system described herein, on the day

any document is filed with the Court, a copy of that document shall be sent to Verilaw by one of

the following methods in accordance with the procedures set forth on the system: (1) electronic

11

transfer, via the Internet through the system, of the document (either a word-processing file or a scanned image of the document); (2) fax transmission; or (3) hard copy sent via overnight mail for next day delivery.  Regardless of transmission method, all document service must be initiated on the website by a registered user.  Verilaw will convert all documents into Adobe Portable Document Format and make them available to parties on an Internet web site maintained by Verilaw ("the Website").

    2.    Verilaw will post all documents to the Website according to the following timetable:

    (a)    electronic documents will be posted to the Website within one (1) hour of receipt of such document from a registered user;

    (b)    faxed documents will be posted to the Website within six (6) business hours of receipt from a registered user; and

    (c)    mailed hard copy documents will be posted to the Website within twenty-four (24) hours of receipt of the overnight mail package.

All users shall title documents clearly to identify the document and the party on whose behalf such document is submitted.

    3.    All documents on the system will be identified by (1) the name of the filing law firm, (2) the precise title of the document, and (3) the case-specific identifier(s) to which the document applies.  The system shall contain an index of all documents served in this litigation, which will be searchable and sortable according to methods that provide useful access to the documents.

    4.    Word-processing documents transferred to Verilaw via the Internet will not contain visual representations of the filing attorneys' signatures.  On word-processing files that they submit, attorneys shall, in place of a signature and where the signature would normally appear, place "Original Signature on File with the Court."

5.      Access to the system will be limited to registered users.  Registered users will be limited to authorized Court personnel and counsel of record within their law firms.  Verilaw will provide each registered user with a username and password to access the website.  Each counsel's password shall be treated as "Confidential" under the Protective Order entered in this Action.  Verilaw will also be bound by the terms of the Protective Order.

6.      Verilaw personnel will perform all administrative functions for the system, but original data, additions, deletions or changes to the service list for plaintiffs and defendants must be submitted to, and approved by, Plaintiffs' Co-Lead Counsel and Defendants' Counsel, respectively.  Verilaw requires specified data for each law firm to make the system operational and will provide a form to Liaison Counsel to provide to counsel of record in these cases (the "Law Firm Data Sheet").  All counsel of record shall provide (within 10 days of the date of this order) to Liaison Counsel a completed version of their respective Law Firm Data Sheet.

7.      Within one hour of posting the document to the Website, Verilaw shall, pursuant to the terms of the attached contract, send an email to all registered users, notifying them of the posting.  Verilaw provides an alternative daily digest notification option for those attorneys interested, which aggregates all the emails distributed in one day into a single email.  The email or digest shall contain hypertext link(s) to the document location(s) on the system.

8.      Any document electronically served pursuant to this Order shall be deemed served as of the date and time it is transmitted to Verilaw, provided, however, that any time period for response to any pleading served via Verilaw shall commence as of the date posted by Verilaw on the website (or on the date following posting by Verilaw on the website if posting is after 5:00 p.m. EST) rather than as of the date transmitted to Verilaw.  Any document

13

transmitted to the system shall certify in the Certificate of Service that a true and correct copy

was electronically served to Verilaw, to be distributed to counsel of record.

      9.     Each counsel of record in the Action shall pay an initial set-up fee of $500 per

firm no later than fourteen (14) days after entry of this Order.

      10.    Until further notice, no documents that are filed under seal ("sealed documents")

shall be served via the system. Rather, service of sealed documents shall be made as provided

in CMO 1 entered on February 13, 2002.

      11.    This Order relates only to the process by which documents are served. Nothing in

this Order shall have any effect on the process by which documents are filed in the Court.

## IV.    ORGANIZATION OF PLAINTIFFS' COUNSEL

      Case Management Order Number 1 is amended as follows: Paragraph III A.3.

designating Vincent Fitzpatrick or his designee from Dewey Ballantine as Plaintiffs' Lead

Counsel for the Private Non-Class Cases is hereby stricken and replaced with the following

language: "III A.3. Plaintiffs' Liaison Counsel for the Private Non-Class Cases shall be Michael

Hefter or his designee from Dewey Ballantine."


**SO ORDERED:**


_____
Richard G. Stearns
United States District Judge

Dated:    **5-15-03.**


14

## EXHIBIT A

## <u>COORDINATED STATE COURT ACTIONS</u>

*Clark v. TAP Pharmaceutical Products, Inc., TAP Pharmaceuticals, Inc. and Abbott Laboratories, Inc.*, No. 01-L-132 (Williamson County, Illinois)

*Brenda Campbell-Hubbard v. Abbott Laboratories, Inc., Takeda Chemical Industries, Ltd., TAP Pharmaceuticals, Inc., Doe Corporations 1-20, Does 1 to 100 Inclusive*, No. 322451 (San Francisco Superior Court, California)

*Farris v. Abbott Laboratories, Inc., Takeda Chemical Industries, Ltd., Takeda American Holdings, Inc., Takeda Pharmaceuticals America, Inc., and TAP Pharmaceutical Products, Inc., and Does 1-100*, No. 402591 (San Francisco Superior Court, California)

*Sullivan v. TAP Pharmaceutical Products, Inc. and Does 1-50, inclusive*, No. GIC 780991 (San Diego Superior Court, California)

**EXHIBIT B**

**OTHER STATE COURT ACTIONS**

*Jarman v. TAP Pharmaceuticals Products, Inc. and TAP Pharmaceuticals, Inc.*, No. 01-L-001019 (Madison County, Illinois)

*Walker v. TAP Pharmaceutical Products Inc., Abbott Laboratories and Takeda Chemical Industries, Ltd.*, No. CPML-682-01 (Cape May County, New Jersey)

*Stetser v. TAP Pharmaceutical Products, Inc.; Abbott Laboratories; Takeda Chemical Industries, Ltd.; Johnson & Johnson; Ethicon Endosurgery, Inc.; Indigo Laser Corporation; David Jett; Christopher Coleman; Scott Hidalgo; and Eddy James Hack,* No. 01-CVS-5268 (Superior Court, New Hannover County, North Carolina)

*Benoit v. Takeda Chemical Industries, Ltd., TAP Pharmaceutical Products, Inc., and Abbott Laboratories,* No. B166742 and *Health Care Service Corporation v. Takeda Chemical Industries Ltd., TAP Pharmaceutical Products Inc. and Abbott Laboratories,* B166742-A (District Court, Jefferson County, Texas) (removed and conditionally transferred to MDL 1430)

*Swanston, v. TAP Pharmaceutical Products Inc.; Abbott Laboratories; Takeda Chemical Industries, Ltd.; Astra Zeneca, PLC; Astra Zeneca Pharmaceuticals, LP; Pharmacia Corporation; Pharmacia & Upjohn, Inc; Endo-Surgery, Inc,; Indigo Laser Corporation; David Jett and Jane Doe Jett; Christopher Coleman and Jane Doe Coleman; Scott Hidalgo and Amanda Hidalgo; Eddy James Hack and Jane Doe Hack; Kimberlee Chase and John Doe Chase; Janice M. Swirski and John Doe Swirski; Donna Tom and John Doe Tom; David Guido and Jane Doe Guido; Henry Van Mourick and Jane Doe Van Mourick; and Alan Mackenzie and Jane Doe Mackenzie, Does 1-10; ABC Corporations 1-10; XYZ Partnerships and Associations 1-10,* No. CV2002-004988 (Superior Court, Maricopa County, Arizona) (removed and conditionally transferred to MDL 1456)