# EXHIBIT A

Westlaw.

125 S.Ct. 2363                                                                                                Page 1
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
**(Cite as: 125 S.Ct. 2363)**

**Briefs and Other Related Documents**

Supreme Court of the United States
GRABLE & SONS METAL PRODUCTS, INC.,
Petitioner,
v.
DARUE ENGINEERING & MANUFACTURING.
No. 04-603.

June 13, 2005.

**Background:** Former landowner brought quiet title action in state court against tax sale purchaser, alleging Internal Revenue Service (IRS) had given him inadequate notice of sale. Following removal, the United States District Court for the Western District of Michigan, McKeague, J., 207 F.Supp.2d 694, ruled for purchaser. Former owner appealed. The Court of Appeals, Boggs,
Circuit Judge, 377 F.3d 592, affirmed. Certiorari was granted.

**Holding:** The Supreme Court, Justice Souter, held that suit presented removable federal question.
Affirmed.

Justice Thomas concurred and filed opinion.

West Headnotes

**[1] Federal Courts ⇐241**
170Bk241
Federal court has federal question jurisdiction over state law claim if it necessarily states federal issue, actually disputed and substantial, which federal forum may entertain without disturbing congressionally approved balance of federal and state judicial responsibilities. 28 U.S.C.A. § 1331.

**[2] Removal of Cases ⇐19(10)**
334k19(10)

**[2] Removal of Cases ⇐25(1)**
334k25(1)
Former landowner's state law quiet title action against federal tax sale purchaser, alleging that Internal Revenue Service (IRS) had given him inadequate notice of sale, asserted removable federal question;

whether former owner received notice was essential element of his claim, meaning of federal notice statute was actually disputed, and its meaning was important federal tax
law issue that belonged in federal court. 28 U.S.C.A. §§ 1331, 1441(a).

*2364 *Syllabus* [FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

The Internal Revenue Service seized real property owned by petitioner (hereinafter Grable) to satisfy a federal tax delinquency, and gave Grable notice by certified mail before selling the property to respondent (hereinafter Darue). Grable subsequently brought a quiet title action in state court, claiming that Darue's title was invalid because 26 U.S.C. § 6335 required the IRS to give Grable notice of the sale by personal service, not certified mail. Darue removed the case to Federal District Court as presenting a federal question because the title claim depended on an interpretation of federal tax law. The District Court declined to remand the case, finding that it posed a significant federal-law question, and it granted Darue summary judgment on the merits. The Sixth Circuit affirmed, and this Court granted certiorari on the jurisdictional question.

*Held:* The national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal. Pp. 2366-2371.

(a) Darue was entitled to remove the quiet title action if Grable could have brought it in federal court originally, as a civil action "arising under the ... laws ... of the United States," 28 U.S.C. § 1331. Federal-question jurisdiction is usually invoked by plaintiffs pleading a cause of action created by federal law, but this Court has also long recognized that such jurisdiction will lie over some state-law claims that implicate significant federal issues, see, *e.g., Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577. Such federal jurisdiction demands not only a contested federal issue, but a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-12257-PBS   Document 1596-2   Filed 07/20/05   Page 3 of 9

125 S.Ct. 2363                                                                                          Page 2
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
(Cite as: 125 S.Ct. 2363)

substantial one. And the jurisdiction must be consistent with congressional judgment about the sound division of labor between state and federal courts governing § 1331's application. These considerations have kept the Court from adopting a single test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. Instead, the question is whether the state-law claim necessarily stated a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities. Pp. 2366-2368.

(b) This case warrants federal jurisdiction. Grable premised its superior title claim on the IRS's failure to give adequate notice, as defined by federal law. Whether Grable received notice is an essential element of its quiet title claim, and the federal statute's meaning is actually disputed. The meaning of a federal tax provision is an important federal-law issue that belongs in federal court. The Government has a strong interest in promptly collecting delinquent taxes, and the IRS's ability to satisfy its claims from delinquents' property requires clear terms of notice to assure buyers like Darue that the IRS has good title. Finally, because it will be the rare state title case that raises a *2365 federal-law issue, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor. This conclusion puts the Court in venerable company, quiet title actions having been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims. E.g., Hopkins v. Walker, 244 U.S. 486, 490-491, 37 S.Ct. 711, 61 L.Ed. 1270. Pp. 2368-2369.

(c) Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650, is not to the contrary. There, in finding federal jurisdiction unavailable for a state tort claim resting in part on an allegation that the defendant drug company had violated a federal branding law, the Court noted that Congress had not provided a private federal cause of action for such violations. Merrell Dow cannot be read to make a federal cause of action a necessary condition for federal-question jurisdiction. It disclaimed the adoption of any bright-line rule and expressly approved the exercise of jurisdiction in Smith, where there was no federal cause of action. Accordingly, Merrell Dow should be read in its entirety as treating the absence of such cause as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent," required by § 1331. Id., at 810, 106 S.Ct. 3229. In Merrell Dow, the principal significance of this absence was its bearing on the consequences to the federal system. If the federal labeling standard without a cause of action could get a state claim into federal court, so could any other federal standards without causes of action. And that would mean an enormous number of cases. A comparable analysis yields a different jurisdictional conclusion here, because state quiet title actions rarely involve contested federal-law issues. Pp. 2369-2371.

377 F.3d 592, affirmed.

SOUTER, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

Eric H. Zagrans, for petitioner.

Michael C. Walton, for respondent.

Irving L. Gornstein, for United States as amicus curiae, by special leave of the Court, supporting the respondent.

Charles E. McFarland, Counsel of Record, New Castle, KY, for Petitioner.

Michael C. Walton, Counsel of Record, John M. Lichtenberg, Gregory G. Timmer, Mary L. Tabin, Anthony A. Pearson, Matthew B. Van Dyk, Rhoades McKee, Grand Rapids, MI, for respondent.

Justice SOUTER delivered the opinion of the Court.

The question is whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with non-diverse parties raising a disputed issue of federal title law. We answer no, and hold that the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress.

*2366 I
In 1994, the Internal Revenue Service seized Michigan real property belonging to petitioner Grable & Sons Metal Products, Inc., to satisfy Grable's federal tax delinquency. Title 26 U.S.C. § 6335

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-12257-PBS   Document 1596-2   Filed 07/20/05   Page 4 of 9

125 S.Ct. 2363                                                                                                    Page 3
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
(Cite as: 125 S.Ct. 2363)

required the IRS to give notice of the seizure, and there is no dispute that Grable received actual notice by certified mail before the IRS sold the property to respondent Darue Engineering & Manufacturing. Although Grable also received notice of the sale itself, it did not exercise its statutory right to redeem the property within 180 days of the sale, § 6337(b)(1), and after that period had passed, the Government gave Darue a quitclaim deed. § 6339.

Five years later, Grable brought a quiet title action in state court, claiming that Darue's record title was invalid because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by § 6335(a), which provides that written notice must be "given by the Secretary to the owner of the property [or] left at his usual place of abode or business." Grable said that the statute required personal service, not service by certified mail.

Darue removed the case to Federal District Court as presenting a federal question, because the claim of title depended on the interpretation of the notice statute in the federal tax law. The District Court declined to remand the case at Grable's behest after finding that the "claim does pose a significant question of federal law," Tr. 17 (Apr. 2, 2001), and ruling that Grable's lack of a federal right of action to enforce its claim against Darue did not bar the exercise of federal jurisdiction. On the merits, the court granted summary judgment to Darue, holding that although § 6335 by its terms required personal service, substantial compliance with the statute was enough. 207 F.Supp.2d 694 (W.D.Mich.2002).

The Court of Appeals for the Sixth Circuit affirmed. 377 F.3d 592 (2004). On the jurisdictional question, the panel thought it sufficed that the title claim raised an issue of federal law that had to be resolved, and implicated a substantial federal interest (in construing federal tax law). The court went on to affirm the District Court's judgment on the merits. We granted certiorari on the jurisdictional question alone, [FN1] 543 U.S. ----, 125 S.Ct. 824, 160 L.Ed.2d 610 (2005) to resolve a split within the Courts of Appeals on whether Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), always requires a federal cause of action as a condition for exercising federal-question jurisdiction. [FN2] We now affirm.

> FN1. Accordingly, we have no occasion to pass upon the proper interpretation of the federal tax provision at issue here.

> FN2. Compare Seinfeld v. Austen, 39 F.3d 761, 764 (C.A.7 1994) (finding that federal-question jurisdiction over a state-law claim requires a parallel federal private right of action), with Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806 (C.A.4 1996) (finding that a federal private action is not required).

II

[1] Darue was entitled to remove the quiet title action if Grable could have brought it in federal district court originally, 28 U.S.C. § 1441(a), as a civil action "arising under the Constitution, laws, or treaties of the United States," § 1331. This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e.g., claims under 42 U.S.C. § 1983). There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, *2367 this Court having recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. E.g., Hopkins v. Walker, 244 U.S. 486, 490-491, 37 S.Ct. 711, 61 L.Ed. 1270 (1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues, see ALI, Study of the Division of Jurisdiction Between State and Federal Courts 164-166 (1968).

The classic example is Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds of the National Government because their issuance was unconstitutional. Although Missouri law provided the cause of action, the Court recognized federal-question jurisdiction because the principal issue in the case was the federal constitutionality of the bond issue. Smith thus held, in a somewhat generous statement of the scope of the doctrine, that a state-law claim could give rise to federal-question jurisdiction so long as it "appears from the [complaint] that the right to relief depends upon the construction or application of [federal law]." Id., at 199, 41 S.Ct. 243.

The Smith statement has been subject to some trimming to fit earlier and later cases recognizing the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-12257-PBS   Document 1596-2   Filed 07/20/05   Page 5 of 9

125 S.Ct. 2363                                                                                                    Page 4
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
(Cite as: 125 S.Ct. 2363)

vitality of the basic doctrine, but shying away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the "arising under" door. As early as 1912, this Court had confined federal-question jurisdiction over state-law claims to those that "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912). This limitation was the ancestor of Justice Cardozo's later explanation that a request to exercise federal-question jurisdiction over a state action calls for a "common-sense accommodation of judgment to [the] kaleidoscopic situations" that present a federal issue, in "a selective process which picks the substantial causes out of the web and lays the other ones aside." Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 117-118, 57 S.Ct. 96, 81 L.Ed. 70 (1936). It has in fact become a constant refrain in such cases that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. E.g., Chicago v. International College of Surgeons, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); Merrell Dow, supra, at 814, and n. 12, 106 S.Ct. 3229; Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. Thus, Franchise Tax Bd. explained that the appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the "welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." Id., at 8, 103 S.Ct. 2841. Because arising-under jurisdiction to hear *2368 a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction. See also Merrell Dow, supra, at 810, 106 S.Ct. 3229.

These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 821, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (STEVENS, J., concurring). We have not kept them out simply because they appeared in state raiment, as Justice Holmes would have done, see Smith, supra, at 214, 41 S.Ct. 243 (dissenting opinion), but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

III

A

[2] This case warrants federal jurisdiction. Grable's state complaint must specify "the facts establishing the superiority of [its] claim," Mich. Ct. Rule 3.411(B)(2)(c) (West 2005), and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes," United States v. Rodgers, 461 U.S. 677, 709, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor. See n. 3, infra.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

125 S.Ct. 2363 Page 5
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
(Cite as: 125 S.Ct. 2363)

This conclusion puts us in venerable company, quiet title actions having been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims. In Hopkins, 244 U.S., at 490-491, 37 S.Ct. 711, the question was federal jurisdiction over a quiet title action based on the plaintiffs' allegation that federal mining law gave them the superior claim. Just as in this case, "the facts showing the plaintiffs' title and the existence and invalidity of the instrument or record sought to be eliminated as a cloud upon the title are essential parts of the *2369 plaintiffs' cause of action." [FN3] Id., at 490, 37 S.Ct. 711. As in this case again, "it is plain that a controversy respecting the construction and effect of the [federal] laws is involved and is sufficiently real and substantial." Id., at 489, 37 S.Ct. 711. This Court therefore upheld federal jurisdiction in Hopkins, as well as in the similar quiet title matters of Northern Pacific R. Co. v. Soderberg, 188 U.S. 526, 528, 23 S.Ct. 365, 47 L.Ed. 575 (1903), and Wilson Cypress Co. v. Del Pozo Y Marcos, 236 U.S. 635, 643-644, 35 S.Ct. 446, 59 L.Ed. 758 (1915). Consistent with those cases, the recognition of federal jurisdiction is in order here.

> FN3. The quiet title cases also show the limiting effect of the requirement that the federal issue in a state-law claim must actually be in dispute to justify federal-question jurisdiction. In Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912), this Court found that there was no federal question jurisdiction to hear a plaintiff's quiet title claim in part because the federal statutes on which title depended were not subject to "any controversy respecting their validity, construction, or effect." Id., at 570, 32 S.Ct. 704. As the Court put it, the requirement of an actual dispute about federal law was "especially" important in "suit[s] involving rights to land acquired under a law of the United States," because otherwise "every suit to establish title to land in the central and western states would so arise [under federal law], as all titles in those States are traceable back to those laws." Id., at 569-570, 32 S.Ct. 704.

B

Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), on which Grable rests its position, is not to the contrary. Merrell Dow considered a state tort claim resting in part on the allegation that the defendant drug company had violated a federal misbranding prohibition, and was thus presumptively negligent under Ohio law. Id., at 806, 106 S.Ct. 3229. The Court assumed that federal law would have to be applied to resolve the claim, but after closely examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction unavailable. Congress had not provided a private federal cause of action for violation of the federal branding requirement, and the Court found "it would ... flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation ... is said to be a ... 'proximate cause' under state law." Id., at 812, 106 S.Ct. 3229.

Because federal law provides for no quiet title action that could be brought against Darue, [FN4] Grable argues that there can be no federal jurisdiction here, stressing some broad language in Merrell Dow (including the passage just quoted) that on its face supports Grable's position, see Note, Mr. Smith Goes to Federal Court: Federal Question Jurisdiction over State Law Claims Post-Merrell Dow, 115 Harv. L.Rev. 2272, 2280-2282 (2002) (discussing split in Circuit Courts over private right of action requirement after Merrell Dow ). But an opinion is to be read as a whole, and Merrell Dow cannot be read whole as overturning decades of precedent, as it would have done by effectively adopting the Holmes dissent in Smith, see supra, at 2368, and converting a federal cause of action from a sufficient condition for federal-*2370 question jurisdiction [FN5] into a necessary one.

> FN4. Federal law does provide a quiet title cause of action against the Federal Government. 28 U.S.C. § 2410. That right of action is not relevant here, however, because the federal government no longer has any interest in the property, having transferred its interest to Darue through the quitclaim deed.

> FN5. For an extremely rare exception to the sufficiency of a federal right of action, see Shoshone Mining Co. v. Rutter, 177 U.S. 505, 507, 20 S.Ct. 726, 44 L.Ed. 864 (1900).

In the first place, Merrell Dow disclaimed the adoption of any bright-line rule, as when the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-12257-PBS   Document 1596-2   Filed 07/20/05   Page 7 of 9

125 S.Ct. 2363                                                                                      Page 6
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
(Cite as: 125 S.Ct. 2363)

reiterated that "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." 478 U.S., at 810, 106 S.Ct. 3229. The opinion included a lengthy footnote explaining that questions of jurisdiction over state-law claims require "careful judgments," id., at 814, 106 S.Ct. 3229, about the "nature of the federal interest at stake," id., at 814, n. 12, 106 S.Ct. 3229 (emphasis deleted). And as a final indication that it did not mean to make a federal right of action mandatory, it expressly approved the exercise of jurisdiction sustained in Smith, despite the want of any federal cause of action available to Smith's shareholder plaintiff. 478 U.S., at 814, n. 12, 106 S.Ct. 3229. Merrell Dow then, did not toss out, but specifically retained the contextual enquiry that had been Smith's hallmark for over 60 years. At the end of Merrell Dow, Justice Holmes was still dissenting.

Accordingly, Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected Merrell Dow's result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

One only needed to consider the treatment of federal violations generally in garden variety state tort law. "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." [FN6] Restatement (Third) of Torts (proposed final draft) § 14, Comment a. See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts, § 36, p. 221, n. 9 (5th ed. 1984) ("[T]he breach of a federal statute may support a negligence per se claim as a matter of state law" (collecting authority)). A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally *2371 state cases into federal courts. Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," Merrell Dow thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] ... under state law." 478 U.S., at 811-812, 106 S.Ct. 3229 (internal quotation marks omitted). In this situation, no welcome mat meant keep out. Merrell Dow's analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.

> FN6. Other jurisdictions treat a violation of a federal statute as evidence of negligence or, like Ohio itself in Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), as creating a rebuttable presumption of negligence. Restatement (Third) of Torts (proposed final draft) § 14, Comment c. Either approach could still implicate issues of federal law.

As already indicated, however, a comparable analysis yields a different jurisdictional conclusion in this case. Although Congress also indicated ambivalence in this case by providing no private right of action to Grable, it is the rare state quiet title action that involves contested issues of federal law, see n. 3, supra. Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation. Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim. [FN7]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-12257-PBS   Document 1596-2   Filed 07/20/05   Page 8 of 9

125 S.Ct. 2363                                                                                                                  Page 7
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
(Cite as: 125 S.Ct. 2363)

FN7. At oral argument Grable's counsel espoused the position that after *Merrell Dow,* federal-question jurisdiction over state-law claims absent a federal right of action, could be recognized only where a constitutional issue was at stake. There is, however, no reason in text or otherwise to draw such a rough line. As *Merrell Dow* itself suggested, constitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction. 478 U.S., at 814, n. 12, 106 S.Ct. 3229. But a flat ban on statutory questions would mechanically exclude significant questions of federal law like the one this case presents.

IV

The judgment of the Court of Appeals, upholding federal jurisdiction over Grable's quiet title action, is affirmed.

*It is so ordered.*

Justice THOMAS, concurring.

The Court faithfully applies our precedents interpreting 28 U.S.C. § 1331 to authorize federal-court jurisdiction over some cases in which state law creates the cause of action but requires determination of an issue of federal law, *e.g., Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In this case, no one has asked us to overrule those precedents and adopt the rule Justice Holmes set forth in *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), limiting § 1331 jurisdiction to cases in which federal law creates the cause of action pleaded on the face of the plaintiff's complaint. *Id., at 260,* 36 S.Ct. 585. In an appropriate case, and perhaps with the benefit of better evidence as to the original meaning of § 1331's text, I would be willing to consider that course. [FN*]

FN* This Court has long construed the scope of the statutory grant of federal-question jurisdiction more narrowly than the scope of the constitutional grant of such jurisdiction. See *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 807-808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). I assume for present purposes that this distinction is proper--that is, that the language of 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all *civil actions arising under* the Constitution, laws, or treaties of the United States" (emphasis added), is narrower than the language of Art. III, § 2, cl. 1, of the Constitution, "[t]he judicial Power shall extend to all *Cases,* in Law and Equity, *arising under* this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ..." (emphases added).

*2372 Jurisdictional rules should be clear. Whatever the virtues of the *Smith* standard, it is anything but clear. *Ante,* at 2367 (the standard "calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside' " (quoting *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 117-118, 57 S.Ct. 96, 81 L.Ed. 70 (1936))); *ante,* at 2368 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"); *ante,* at 2370 (" '[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system' "; " the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires" (quoting *Merrell Dow, supra,* at 810, 106 S.Ct. 3229)).

Whatever the vices of the *American Well Works* rule, it is clear. Moreover, it accounts for the " 'vast majority' " of cases that come within § 1331 under our current case law, *Merrell Dow, supra,* at 808, 106 S.Ct. 3229 (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983))-- further indication that trying to sort out which cases fall within the smaller *Smith* category may not be worth the effort it entails. See R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 885-886 (5th ed.2003). Accordingly, I would be willing in appropriate circumstances to reconsider our interpretation of § 1331.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

125 S.Ct. 2363                                                                                                   Page 8
125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365
**(Cite as: 125 S.Ct. 2363)**

125 S.Ct. 2363, 73 USLW 4501, 95 A.F.T.R.2d 2005-2799, 2005 Daily Journal D.A.R. 6872, 18 Fla. L. Weekly Fed. S 365

**Briefs and Other Related Documents (Back to top)**

• 2005 WL 1656589 (Appellate Petition, Motion and Filing) Petition's Rule 44 Petition for Rehearing of June 13, 2005 Opinion (Jul. 08, 2005)

• 2005 WL 853909 (Appellate Brief) Reply Brief on the Merits%tc (Apr. 11, 2005)Original Image of this Document (PDF)

• 2005 WL 736815 (Appellate Brief) Brief for the United States as Amicus Curiae Supporting Respondent%tc (Mar. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 737002 (Appellate Brief) Brief for Respondent%tc (Mar. 28, 2005)Original Image of this Document (PDF)

• 2005 WL 1333265 (Appellate Brief) Motion for Leave to File Brief Amici Curiae and Brief of Amici Curiae Jerome R. Mikulski Et Ux. in Support of Petitioner%tc (Feb. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 482909 (Appellate Brief) Brief on the Merits%tc (Feb. 22, 2005)Original Image of this Document (PDF)

• 2004 WL 3008660 (Appellate Petition, Motion and Filing) Petition's Reply to Brief in Opposition to Petition for a Writ of Certiorari (Dec. 13, 2004)

• 2004 WL 2790632 (Appellate Petition, Motion and Filing) Brief in Opposition to Petition for Writ of Certiorari (Dec. 01, 2004)

• 04-603 (Docket) (Nov. 04, 2004)

• 2004 WL 3092472 (Appellate Petition, Motion and Filing) Petition for a Writ of Certiorari (Oct. 25, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.