UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 <br><br> CIVIL ACTION NO. 01-CV-12257-PBS <br><br> Judge Patti B. Saris |
| THIS DOCUMENTS RELATES TO ALL ACTIONS | Chief Mag. Judge Marianne B. Bowler |

## ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO SET ASIDE THE TEN DEPOSITION LIMIT WITH RESPECT TO DEFENDANT ASTRAZENECA

Defendant AstraZeneca Pharmaceuticals LP respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Set Aside the Ten Deposition Limit.

## INTRODUCTION

After years of litigation, now just six weeks away from the close of discovery, Plaintiffs seek permission to take 50 depositions of AstraZeneca. Plaintiffs' last-minute request should be denied.

Plaintiffs have had access to vast amounts of discovery from AstraZeneca for more than a year. Over the last eight months, AstraZeneca has consistently expressed a willingness to work out a reasonable deposition schedule with Plaintiffs, recognizing that the size and complexity of this case may warrant depositions in excess of the number—ten—provided for in the rules. Indeed, AstraZeneca has already agreed to permit more than *twenty* depositions. Now, on the eve of the close of discovery, and after having scheduled and then cancelled numerous depositions over the last year, Plaintiffs seek

Court permission to notice 50 depositions—which is five times the number permitted by the local rules and more than double the number AstraZeneca has agreed to schedule. Plaintiffs' motion is either a discovery tactic aimed at placing an undue burden on AstraZeneca or an effort to camouflage their own dilatory behavior and disorganization. In either case, the motion should be denied.

In addition, Plaintiffs have failed to demonstrate why such an excessive number of depositions are necessary. In fact, Plaintiffs do not identify the specific individuals whose depositions they seek or why. In essence, Plaintiffs seek permission to launch a fishing expedition in the last few weeks of discovery.

## BACKGROUND

In January 2003, pursuant to CMO 5, AstraZeneca produced over 350,000 pages of documents to Plaintiffs relating to Zoladex, the only physician-administered drug at issue for AstraZeneca. In June 2004, AstraZeneca began to produce additional documents and data relating to the remaining drugs at issue on a rolling basis. By the end of September 2004, the vast majority of the documents and data responsive to Plaintiffs' requests had been produced – a total of approximately 700,000 pages and millions of data points. Declaration of Trisha Lawson ("Lawson Decl.") ¶ 2. Shortly thereafter, AstraZeneca also answered interrogatories seeking the identity of employees involved in the pricing, marketing, or sale of the AstraZeneca drugs at issue.

Despite having access to extensive document discovery since as early as January 2003, Plaintiffs took only one Rule 30(b)(6) deposition of AstraZeneca prior to January of 2005. Although Plaintiffs identified other deponents in the interim, Plaintiffs did not schedule the depositions or repeatedly cancelled those that they did schedule. *See*

Lawson Decl. Exhibit 1 (Collection of Letters). Then, between December and January of 2005, Plaintiffs suddenly noticed 32 depositions, for a total of 47 outstanding noticed depositions, without seeking agreement from AstraZeneca or permission from the Court to exceed the ten-deposition limit. Lawson Decl. Exhibit 2.

In response to this flurry of activity, counsel for AstraZeneca told Plaintiffs that although AstraZeneca was willing to discuss exceeding the ten-deposition limit by agreement, it would not agree to an unlimited number of unidentified depositions. Lawson Decl. ¶ 7. Plaintiffs refused to commit to any sort of limitation on the number of depositions. *Id.* Nonetheless, AstraZeneca agreed to schedule numerous identified depositions, but informed Plaintiffs that if no agreement could be reached on an ultimate number, Plaintiffs would have to move the Court for permission to take additional depositions. *See* Lawson Decl. Exhibit 1, Letter dated February 1, 2005 from Trisha Lawson to Elizabeth Fegan.

The parties thereafter agreed on dates for the depositions of eight witnesses in February and March of 2005, some of them the same witnesses whose depositions had been scheduled and cancelled by Plaintiffs previously. However, Plaintiffs again cancelled all but two of the scheduled depositions. *See* Lawson Decl. Exhibit 1. Accordingly, by May 2005, eight months after AstraZeneca's production was substantially complete and more than two years after receiving an initial production of over 350,000 pages, Plaintiffs had only taken one Rule 30(b)(6) deposition and two fact depositions.

In May 2005, Plaintiffs finally requested that additional fact depositions be scheduled pursuant to the outstanding notices. Lawson Decl. ¶ 9. Counsel for

3

AstraZeneca reiterated its consistent position since February 2005 that it was willing to exceed the ten-deposition limit by agreement, but it would not agree to an unlimited number of depositions. Lawson Decl. ¶ 10. Plaintiffs again refused to agree to limit the number of depositions they could take. Lawson Decl. ¶ 11. Eventually, the parties met and conferred on this issue and Plaintiffs specifically identified eighteen additional current and former employees whom they wished to depose. Lawson Decl. ¶ 12. In an effort to make progress, AstraZeneca agreed to schedule these depositions, without waiving its right to object to any additional depositions. Lawson Decl. ¶ 13. Accordingly, to date, AstraZeneca has agreed to a total of 22 depositions, including 20 fact witnesses and two 30(b)(6) depositions, more than twice the number allowed under the rules. Thirteen of those depositions have occurred, and nine more are scheduled between July 20 and the close of discovery on August 31. Lawson Decl. ¶ 14.

In the last two weeks, Plaintiffs informed AstraZeneca that they intended to seek depositions of numerous additional witnesses. AstraZeneca made its position clear that it had already agreed to a reasonable number of depositions, that it would not agree to any more, and that it was Plaintiffs' responsibility to determine which witnesses to depose within those limits. Lawson Decl. ¶ 15. At no time did AstraZeneca agree that 18 depositions relating to one drug were warranted. Lawson Decl. ¶ 16. However, AstraZeneca did offer to substitute other witnesses selected by Plaintiffs for the ones that were scheduled. Lawson Decl. ¶ 17. Plaintiffs did indeed substitute several witnesses, but also filed this motion on July 6, 2005, seeking 30 additional depositions on top of the

4

nine AstraZeneca witnesses and four third-party depositions relating to AstraZeneca already scheduled, for a total of 43 depositions in less than 30 working days.[1]

## ARGUMENT

The Federal Rules of Civil Procedure require a party to obtain leave of court to take more than 10 depositions in a litigation. Fed. R. Civ. P. 30(a)(2)(A); Local Rule 26.1(c). A court should grant leave only to the extent that it is "consistent with the principles stated in Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2)(A). Rule 26(b)(2), in turn, permits the court to restrict the number of depositions if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass.) (Saris, J).

These rules were "promulgated to enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of 'wideranging discovery.'" *Whittingham v. Amherst College*, 163 F.R.D. 170, 171-172 (D. Mass. 1995) (internal

---

[1] Plaintiffs request is actually for 50 <u>fact</u> depositions. Thus, under Plaintiffs' interpretation, the two Rule 30(b)(6) depositions they have already taken of AstraZeneca do not count towards the 50 deposition request. In addition, Plaintiffs have recently noticed another three Rule 30(b)(6) depositions. To the extent Plaintiffs are assuming that Rule 30(b)(6) depositions do not count towards the ten-deposition limit, they are clearly incorrect. *See* Fed. R. Civ. P. 30(b)(2), Advisory Committee Notes; *U.S. v. Brooks*, 1995 U.S. Dist. Lexis 8965, *5 (D. Or.) (including three 30(b)(6) deposition notices in count of deposition notices for purposes of rule 30(a)(2)(A)).

citations omitted). Moreover, a District Court has the inherent discretion to limit discovery where it would be an undue burden. *See Ameristar Jet Charter, Inc., v. Signal Composites, Inc.,* 244 F.3d 189, 193 (1st Cir. 2001). In light of a discovery deadline just weeks away, Plaintiffs' untimely request for 50 depositions would unreasonably burden AstraZeneca and its employees. Moreover, Plaintiffs have failed to meet their burden under Rule 26 to establish that such a significant number of depositions are even warranted. Accordingly, Plaintiffs motion should be denied.

I. <u>Plaintiffs' Last-Minute Motion Should be Denied Because Fifty Depositions Would Place an Undue Burden on AstraZeneca and its Employees for No Valid Reason</u>

Plaintiffs have "had ample opportunity" to obtain the information they seek, Fed. R. Civ. P. 26(b)(2)(ii), but have nonetheless failed to take depositions in a timely manner. For example, the vast majority of the documents and data relating to Zoladex have been in Plaintiffs possession since January of 2003. Yet Plaintiffs failed to take a single deposition of a fact witness relating to Zoladex until June of 2005—more than two years later.[2] Similarly, AstraZeneca has been producing documents and data related to self-administered drugs to Plaintiffs on a rolling basis since June 2004, with that production substantially complete by September 2004. Although Plaintiffs noticed several depositions related to self-administered drugs in the Fall of 2004, they repeatedly cancelled those depositions or failed to schedule them, and took only two such

---

[2] Plaintiffs cannot credibly suggest that they were unable to identify appropriate witnesses until recently. Plaintiffs in fact noticed 13 depositions in February 2004, all of which related to Zoladex, but subsequently abandoned that notice and never sought to schedule any of the depositions. Lawson Decl. ¶ 4. Many of those same individuals were re-noticed in 2005.

depositions prior to May 2005. This delay is inexcusable, particularly since Plaintiffs have known since January 2005 that discovery would close on August 31, 2005.

Moreover, AstraZeneca has made its position clear since February 1, 2005 that it would not agree to an unlimited number of depositions. That position was reiterated again in May 2005, yet Plaintiffs failed to seek Court approval to exceed the ten deposition limit until July 2005. Such inordinate delay should not be rewarded by allowing Plaintiffs to make up for having squandered their time at AstraZeneca's expense.

The number of depositions Plaintiffs request would place an undue burden on AstraZeneca and its employees because of the short time left before the close of discovery. Plaintiffs seek a total of 50 fact depositions of AstraZeneca employees; 11 of these depositions have already occurred and nine more are scheduled by agreement. Plaintiffs now seek 30 additional fact depositions. In that same time period, four AstraZeneca-related third parties are being deposed, for a total of 43 depositions in less than 30 working days. Moreover, under CMO 10, each one of those depositions could last up to three days.[3] *See* CMO 10, ¶ 8.

In sum, Plaintiffs' request would be practically impossible for AstraZeneca to manage, given the time necessary to properly prepare and defend witnesses. In fact, the number of depositions Plaintiffs have requested in the short time remaining borders on the absurd and can only be viewed rationally as a *de facto* request for an extension of the discovery deadline. But such an extension is unwarranted; Plaintiffs have had "ample

---

[3] Plaintiffs have, in fact, spent multiple days with several witnesses.

opportunity" to develop discovery. Accordingly, whether viewed as a request for relief from the ten-deposition limit or as a request to extend the discovery deadline, Plaintiffs' motion should be denied.

II.  <u>Plaintiffs' Motion Should be Denied Because Plaintiffs Have Failed to Establish that Fifty Depositions are Warranted</u>

Discovery should be limited when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii). As such, in order to exceed the ten-deposition limit, the party's motion must be specific as to the identity of the deponents, in order to establish that the witnesses all need to be deposed. *Whittingham*, 163 F.R.D. at 171. Moreover, the party seeking to take additional depositions must not only establish the necessity of the additional depositions sought, but also the necessity of those already taken, to prevent it from circumventing the limits of the rule. *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482-483 (N.D. Tex. 2001). Plaintiffs' motion fails to satisfy this standard and should be denied.

First, Plaintiffs have failed to identify the additional witnesses that they seek by name. Second, having not identified their proposed witnesses, they have also failed to show why the depositions of these unidentified witnesses are necessary, are not unreasonably cumulative or duplicative, and meet the requirements of Local Rule 26.2(b)(2). Instead, Plaintiffs merely rely on generalized assertions that such a large number of depositions are necessary because of: 1) the extremely long class period that they have alleged; 2) the number of corporate predecessors resulting from this extremely long class period; and 3) the number of drugs they have asserted are at issue. None of these conditions—all of which Plaintiffs themselves created—justify taking almost 40

8

fact depositions in the next several weeks. Indeed, by voluntarily agreeing to more than double the number of depositions permitted under the rules, AstraZeneca has already taken more than reasonable steps to account for the fact that this case is large and sprawling. But enough is enough.

    A.    *AstraZeneca's Corporate History Does Not Justify 50 Depositions*

Plaintiffs first argue that they should be permitted more than 22 depositions of AstraZeneca because of historical mergers. However, AstraZeneca's corporate history is no more complex than that of many other companies of its size, and all of the products at issue in this litigation can be traced back up just two branches of the corporate family tree. Many current employees, including many already deposed by Plaintiffs, worked within one of those two branches for ten years or more. For example, John Freeberry, whom Plaintiffs deposed in June of 2004, worked in the Astra branch since 1994. Lawson Decl. Exhibit 3 (Freeberry Dep. at 23). Greg Looney, whom Plaintiffs deposed in May of 2005, worked in the Astra branch since 1992. Lawson Decl. Exhibit 4 (Looney Dep. at 5). Alan Milbauer, whom Plaintiffs deposed in October of 2004, and Jim Liebman, whom Plaintiffs deposed in February of 2005, both worked in the Zeneca branch since 1971. Lawson Decl. Exhibits 5 (Liebman Dep. at 7) and 6 (Milbauer Dep. at 13).

These witnesses' ability to testify to events that occurred at the predecessor companies is limited only by the fallibility of human memory – a challenge that all witnesses will face, and which will probably not be overcome by scheduling even more witnesses to ask them about things that happened nine, 12, or 14 years ago. AstraZeneca has provided documents and data for the entire time period at issue, and it is quite

9

common to have to rely on such documentary evidence, rather than human memory, when it concerns events in the distant past. Plaintiffs' problem stems not from AstraZeneca's corporate history, but rather from the sweeping time period covered by their complaint. Plaintiffs should not be permitted to evade the limits of Rule 26(b)(2) simply by expanding the time frame for которых they seek to recover damages.

### B. *The Number of Drugs Plaintiffs Have Alleged to be at Issue Does Not Justify 50 Depositions*

Plaintiffs next argue that because they have brought suit against AstraZeneca with respect to 17 of AstraZeneca's products, they should be permitted to depose witnesses in numbers that are many multiples of the ordinary limit. This argument has no merit. It is true that Plaintiffs have taken and plan to take a number of extensive fact depositions from AstraZeneca witnesses and third parties relating primarily to AstraZeneca's one physician-administered drug, Zoladex. However, the number of depositions taken on Zoladex does not establish that a similar number of depositions are warranted for each of the 16 other AstraZeneca drugs at issue. First, it was Plaintiffs' decision to focus a number of depositions on this one drug, not AstraZeneca's. AstraZeneca should not now be burdened by Plaintiffs' strategic decision.

Second, there are significant differences between physician-administered drugs, like Zoladex, and the remaining 16 self-administered drugs that justify differences in the number of depositions taken. Plaintiffs' complaint relating to self-administered drugs involves the pricing, marketing, and sale of those drugs to the managed markets sector, including PBMs and the third party payors who are purported members of the class. Responsibilities in the managed markets group are not, for the most part, broken down on

a drug-by-drug basis. Indeed, the very organizational charts cited by Plaintiffs illustrate that AstraZeneca's relationships with customers, PBMs, and other managed care organizations are not, for the most part, broken down on a product-by-product basis.[4] Given the substance of Plaintiffs' claims, it is AstraZeneca's relationships with these entities that they will need to explore, which will not require different depositions on a drug-by-drug basis.

The only positions within the entire managed markets area that have designated drug-specific responsibilities are the Contracting Directors and the Managed Markets Finance Senior Business Leads. *See* Wexler Declaration Exhibit C at AZ0587846 and AZ0587850. There are six Contracting Directors and four Finance Senior Business Leads. However, deposing each of the Contracting Directors would be unnecessarily duplicative, because Plaintiffs have already deposed their supervisor, Jeff Alverson.

Notably, among the 10 individuals with managed markets responsibilities specific to certain drugs, Plaintiffs have only seen fit to notice the deposition of one of them, Paul Villa (who is also one of the six who report to Jeff Alverson). In addition, when the parties scheduled Mr. Villa's deposition for February 23, 2005, Plaintiffs cancelled his deposition and did not make any effort to reschedule it until July 6, 2005, the same day they filed this motion with less than two months before the close of discovery.[5]

---

[4] Plaintiffs' reference to the number of individuals identified in interrogatories is similarly a red herring. Plaintiffs' request was for the identity, from a given list, of individuals with any responsibility for the pricing, marketing or sale of the 17 drugs at issue over the last 14 years. Given that AstraZeneca is in the business of selling drugs, it is not surprising that their broad request yielded a large number of individuals.

[5] Plaintiffs' citation of Judge Stearns's approval of the parties' *agreement* to permit 50 depositions in the Lupron litigation is completely inapposite. Plaintiffs' Memorandum at 7. First, those 50 depositions were of three different corporate defendants, TAP Pharmaceutical Products, Inc., Abbott Laboratories, and

11

In sum, Plaintiffs' generalized justifications for their motion, coupled with their failure to identify the specific depositions they seek and why, reflects the fact that they merely seek to conduct a fishing expedition. But Plaintiffs "ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atlantic and Pacific Tea Co.*, 871, F.2d 179, 187 (1st Cir. 1989), *overruled on other grounds as stated in Ciafrei v. Bentsen*, 877 F. Supp. 788 (D.R.I. 1994). Accordingly, Plaintiffs' motion should be denied.

III.     No Other Defendant Has Agreed to Permit 50 Depositions

Plaintiffs appear to make the argument that the Track 1 Defendants have collectively waived their objection to unnecessary or unduly burdensome depositions by entering into negotiations with Plaintiffs and agreeing to permit reasonable depositions beyond the 10-deposition limit, as envisioned by Rules 26 and 30. *See* Advisory Committee Notes (1993); Plaintiffs' Memorandum at 7-8. However, this is simply not the case. Each Track 1 Defendant has negotiated in good faith with Plaintiffs to ensure that depositions are not unduly burdensome. No other Defendant has agreed to an

---

Takeda Pharmaceutical Co. Ltd., and included their employees, jurisdictional or other limited depositions, and 30(b)(6) depositions. *See* Wexler Declaration Exhibit E, ¶C(1). Plaintiffs here are asking for 50 fact depositions from <u>one</u> corporate defendant, <u>not</u> including the six 30(b)(6) depositions they have noticed on ten different topics. Second, had Judge Stearns been called upon to apply his discretion to set the number of depositions, rather than to simply approve an agreement of the parties, there is nothing in either Plaintiffs' memorandum or the stipulated Lupron case management order to suggest that he would have permitted as many as 50 of a single defendant. Third, even if he would have, there is nothing to suggest that the circumstances justifying 50 depositions in that matter are duplicated here. *See* Exhibit E to the Wexler Declaration. Clearly, it would be improper to arbitrarily import the number of depositions allowed from that case into this one.

unlimited number of depositions or scheduled 50 depositions, which is what Plaintiffs seek here.[6]

---

[6] By contrast, Defendants have taken no more than one 30(b)(6) deposition and two fact depositions of each Plaintiff, and have taken no more than one 30(b)(6) deposition of each third party.

CONCLUSION

For the reasons set forth above, AstraZeneca respectfully requests that the Court deny Plaintiffs' motion.

Dated:   Boston, Massachusetts
        July 20, 2005

        Respectfully Submitted,

By:   /s/ Lucy Fowler

Nicholas C. Theodorou (BBO # 496730)
Lucy Fowler (BBO #647929)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Tel: (617) 832-1000

D. Scott Wise
Kimberley Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000

Attorneys for AstraZeneca
Pharmaceuticals LP

Certificate of Service

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on July 20, 2005, a copy to Verilaw Technologies for posting and notification to all parties.

/s/ Lucy Fowler
Lucy Fowler