UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | MDL NO. 1456 <br> Civil Action No. 01-12257-PBS <br><br> Judge Patti B. Saris |

**TRACK 1 DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO ANSWER TWO INTERROGATORIES WHICH SEEK THE IDENTITY OF THE DRUGS THAT PLAINTIFFS ALLEGE WERE "UNAFFECTED BY THE AWP SCHEME"**

The Track 1 defendants[1] respectfully request an order compelling plaintiffs to answer two single sentence interrogatories. In his report in support of class certification dated September 3, 2004, plaintiffs' expert opined that plaintiffs could establish liability, injury and causation on a class-wide basis for the drugs at issue in these MDL proceedings by comparing them to other drugs that were "unaffected by the AWP scheme". Track 1 defendant BMS propounded interrogatories asking plaintiffs to identify the "unaffected" drugs. Plaintiffs declined to identify them, responding that the interrogatories are "premature" and that defendants will have to wait until plaintiffs' expert submits his next report in October. *See* Plaintiffs' Objections to BMS' Second Set of Interrogatories, attached at Tab A.

This is a transparent effort to block fact discovery into an area that plaintiffs themselves have described as a key part of their affirmative liability case. Defendants need this information now, before fact discovery cuts off on August 31st, so that they can be in a position to take

---

[1] The Track 1 defendants are: AstraZeneca, the BMS Group, SmithKline Beecham Corporation d/b/a GlaxoSmithKline, the Johnson & Johnson Group, and the Schering-Plough Group.

discovery related to the "unaffected" drugs in question and so that their experts will have sufficient time to respond to this information.

## FACTUAL BACKGROUND AND ARGUMENT

Plaintiffs allege that causation, injury and liability can be determined for the drugs at issue in this case by comparing two numbers. The first number is the "actual spread" between the drug's average wholesale price ("AWP") and its average sales price ("ASP"). The second number is something that plaintiffs term the "but-for spread" between AWP and ASP. This "but-for spread" (which plaintiffs sometimes refer to as a "yardstick") represents what plaintiffs believe a drug's spread *would have been* absent the alleged fraudulent scheme. Plaintiffs' theory is that if the "actual spread" is larger than the "but-for spread" for a given drug, then the tests for causation, injury and liability are all satisfied.[2] Conversely, if the "actual spread" for a drug is the same or smaller than the "but-for spread," plaintiffs concede that there is no liability for that drug.[3]

The benchmarks that plaintiffs will use to arrive at their "but-for spread" are therefore a critical part of plaintiffs' affirmative case. Ten months ago, plaintiffs' expert Raymond Hartman

---

[2] As plaintiffs' expert witness explained:

> In order to evaluate whether spreads for particular drugs were excessively large, one must first calculate the actual spreads for the drugs allegedly subject to the AWP scheme and, second, compare those spreads to "but-for spreads," that is, spreads whose AWP and ASP are *unaffected by the AWP scheme and fraud*. If the actual spread exceeds the but-for spread, I can conclude that the AWP scheme led to reimbursement in excess of those reasonably expected by the market.

*Declaration of Raymond S. Hartman in Support of Plaintiffs' Motion for Class Certification* dated September 3, 2004 (hereinafter "Hartman Decl.") ¶ 20 (emphasis added). Cited excerpts from this document are attached at Tab B.

[3] Deposition of Raymond S. Hartman, Oct. 7-8, 2004 (hereinafter "Hartman Depo.") at 412, 504. Cited excerpts from this transcript are attached at Tab C.

2

explained that plaintiffs would calculate the "but-for spreads" by examining drugs that were "unaffected by the AWP scheme":

> But-for spreads can be calculated using industry-wide survey information concerning expectations regarding the relationship between AWP and ASP for *drugs unaffected by the AWP scheme* and/or by using actual AWP and ASP data from those manufacturers and their *drugs known to be unaffected by the AWP scheme*.

Tab B, Hartman Decl. ¶ 21 (emphasis added).  *See also* Tab C, Hartman Depo. at 174-79.

The two straightforward interrogatories at issue here seek to discover basic information about plaintiffs' liability theory.  They ask in their entirety:

> 1. Identify the drugs "known to be unaffected by the AWP scheme" that Dr. Hartman intends to use as benchmarks or "yardsticks" as described in paragraphs 11(c), 11(e) and 21 of the [September 3, 2004] Hartman Report.
>
> 2. Identify any other benchmarks or yardsticks that Dr. Hartman intends to use to express an opinion on liability, causation or damages in this case.

*See* Tab A, Plaintiffs' Objections.

Plaintiffs clearly have the information that defendants seek.  In her written submission, plaintiffs' tutorial expert, Dr. Meredith Rosenthal, stated that "for 99% of prescription drugs AWP works and is not being challenged."  Written Tutorial of Dr. Meredith Rosenthal at 3 n.2 (Dec. 3, 2004).  The Court's independent expert, Dr. Ernst Berndt, has also recognized the critical importance of identifying the benchmarks plaintiffs propose to use.  In his report on class issues, he wrote that:

> A critical component of [Hartman's] methodology is the comparison between the spreads achieved by . . . "artificially inflated" drugs with those achieved by drugs "not subject to this Litigation." The choice of comparator drugs, and time periods, is important and requires considerable care . . . .

3

Report of Independent Expert Professor Ernst R. Berndt to Judge Patti B. Saris at ¶ 213 (Feb. 9, 2005).

Nonetheless, plaintiffs refused to answer the two interrogatories seeking this critical information. In identical responses, they asserted that the interrogatories were "premature" because "Dr. Hartman's expert report is not due to be disclosed, pursuant to court order, until October 1, 2005." *See* Tab A, Plaintiffs' Objections. That is the *only* reason given for withholding this important information; plaintiffs do not contend that the two interrogatories are burdensome, or irrelevant, or objectionable on any other grounds. *Id.*

Plaintiffs' failure to assert any substantive objection confirms that the information sought in the two interrogatories is relevant to the claims and defenses in this case. The question raised in this motion, therefore, is not *whether* this information will be disclosed – but *when*. Defendants submit that plaintiffs should not be permitted to delay disclosing this relevant fact information until October for two reasons.

First, plaintiffs' delaying tactic threatens to deprive defendants of adequate time to prepare their defense regarding the important issue of the "but-for spread" liability benchmarks. Fact discovery closes as to Track 1 on August 31, 2005. *See* CMO 13 (March 10, 2005). If plaintiffs are permitted to postpone disclosing this information until they submit their expert reports on October 1, Track 1 defendants will be deprived of their right to test this part of plaintiffs' case through the fact discovery process. To take just one example, plaintiffs have asserted that some of the drugs that were "unaffected by the AWP scheme" were produced by *manufacturers that are not defendants in this lawsuit*. As plaintiffs' witness explained:

> I'm going to compare relationships between AWP and ASP . . . and compare those that actually occurred during the fraud to those

4

>that either occurred prior to or occurred during the period of the alleged scheme but were *drugs manufactured by nondefendants* or were drugs manufactured by defendants that lawyers -- that counsel indicates to me were not subject to the scheme.

Tab C, Hartman Depo. at 501-02 (emphasis added); *see also id*. at 125, 174-79 (drugs unaffected by the AWP scheme can include those manufactured by third parties). Even if plaintiffs use defendants' drugs as benchmarks, it may be necessary to take third-party discovery to determine payor expectations with respect to the "spreads" for those drugs.

If plaintiffs are successful in concealing the identity of the drugs "unaffected by the AWP scheme" until after fact discovery closes, then they will have succeeded, through the back door, in foreclosing defendants from taking discovery from any such non-party manufacturers or other third parties in order to test plaintiffs' allegations. Plaintiffs' hide-the-ball tactics are plainly unfair.

Second, defendants' expert reports are due on November 15, 2005. Analyzing the relevant data could be a very significant and time-consuming undertaking, particularly if plaintiffs nominate several different drugs as being "unaffected by the AWP scheme," and especially if any of those drugs are manufactured by non-parties. Given the critical importance of the "but-for spreads" under plaintiffs' liability theory, it is not reasonable to expect defendants' experts to analyze in six weeks data that plaintiffs have been assembling and analyzing for nearly a year.

In sum, there is no legitimate reason for delaying disclosure of this relevant factual information. Plaintiffs' expert stated almost a year ago that the plaintiffs would rely on data about drugs "unaffected by the AWP scheme" to build their liability case. Defendants' experts

are entitled to sufficient time to analyze and rebut plaintiffs' claims.  Plaintiffs have raised no other objection to the two interrogatories, and they should be answered now.

## CONCLUSION

For the foregoing reasons, the Track 1 defendants' motion to compel answers to two interrogatories should be granted.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(F) of this Court, the Track 1 Defendants believe that oral argument may assist the Court in deciding this motion and request an opportunity to present one.

Respectfully submitted,

THE TRACK 1 DEFENDANTS

By: /s/ Seth B. Kosto  _____

Mark D. Seltzer (BBO # 556341)
Seth Kosto (BBO # 641044)
Holland & Knight LLP
10 St. James Ave.
Boston, MA  02116

Mark H. Lynch
Geoffrey E. Hobart (BBO # 547499)
Ronald G. Dove, Jr.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004-7566

Frederick G. Herold
Dechert LLP
975 Page Mill Road
Palo Alto, CA  94304-1013

*Attorneys for SmithKlineBeecham Corp. d/b/a GlaxoSmithKline*

Nicholas C. Theodorou

Lucy Fowler
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02110

D. Scott Wise
Michael Flynn
Kimberley Harris
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

*Attorneys for AstraZeneca Pharmaceuticals LP*

Steven M. Edwards
Lyndon M. Tretter
Hogan & Hartson, LLP
875 Third Avenue, Suite 2600
New York, NY 10022

*Attorneys for the Bristol-Myers Squibb Co.,*
*Oncology Therapeutics Network Corp.,*
*Apothecon, Inc.*

William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036 6710

*Attorneys for the Johnson and Johnson Group*

John T. Montgomery
Steven Kaufman
Ropes & Gray LLP
One International Place
Boston, MA 02110

*Attorneys for Schering-Plough Corp. and Warrick*
*Pharmaceuticals Corp.*

Dated:   July 21, 2005

## CERTIFICATION PURSUANT TO LR 7.1(A)(2)

Pursuant to Local Rule 7.1(A)(2) of this Court, I hereby certify that counsel for the Track 1 Defendants conferred unsuccessfully with plaintiffs' counsel in an effort to resolve or narrow the issue presented by this motion.

/s/   Seth   B.   Kosto
Seth B. Kosto

July 21, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above Track 1 Defendants' Motion To Compel Plaintiffs To Answer Two Interrogatories Which Seek The Identity Of The Drugs That Plaintiffs Allege Were "Unaffected By The AWP Scheme", together with accompanying Exhibits, on all counsel of record by posting it on the Verilaw electronic service website.

/s/   Seth   B.   Kosto
Seth B. Kosto

July 21, 2005