**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY  ) <br> AVERAGE WHOLESALE PRICE         ) <br> LITIGATION                                       ) <br>                                                           ) <br> THIS DOCUMENT RELATES TO       ) <br> ALL CLASS ACTIONS                       ) <br>                                                           ) | MDL No. 1456 <br><br> CIVIL ACTION:  01-CV-12257-PBS <br><br> Judge Patti B. Saris |

**PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF ERIK Q. SCHULTZ
AND FOR ORDER ASSESSING FEES AND COSTS**

Plaintiffs, by their attorneys, respectfully request that this Court enter an order compelling Erik Q. Schultz to appear for deposition and assessing fees and costs incurred by plaintiffs in serving and attempting to serve him, in attempting to take his deposition, and in filing this motion. In support thereof, Plaintiffs state as follows:

**I.    INTRODUCTION**

Erik Q. Schultz ("Schultz"), a former Pricing Strategy Manager for AstraZeneca ("AZ"), has failed to appear for his deposition. Initially, from the time his deposition was noticed in January 2005 through the time that he left AZ's employ in March 2005, AZ's counsel rescheduled the deposition numerous times and finally cancelled it when Schultz left. Then, despite repeated requests, AZ's counsel avoided providing Schultz's last known address to plaintiffs' counsel for at least 30 days.

Despite service of two Subpoenas issued from April 2005 through the present compelling his appearance, Schultz has failed to appear for his deposition. Moreover, Schultz's wife

- 1 -

informed plaintiffs' Process Server that their attorney, Timothy Kolman, Esq., has instructed them to evade service. That instruction has required plaintiffs to hire three Process Servers, one of whom attempted to serve Schultz on nine occasions, and the other two of whom have spent more than 60 hours by Schultz's home in an attempt to serve him. Finally, in July 2005, Schultz did call plaintiffs' Process Server and requested that plaintiffs' attorneys contact his attorney to schedule the deposition. However, all letters and phone calls to Schultz's attorney have been ignored.

There is no reason to delay Schultz's deposition any longer. Plaintiffs' counsel has attempted to confer in good faith with Schultz's attorney, but he refuses to speak with them. Moreover, plaintiffs' counsel has requested AZ's counsel's aid in cooperatively scheduling this deposition, but was informed that Schultz's attorney refuses to return their calls either (although he does apparently leave them voicemail messages). Accordingly, plaintiffs request that Schultz be compelled to appear for his deposition immediately.

## II.  BACKGROUND FACTS

**A.  January 3, 2005 – March 30, 2005**

On January 3, 2005, plaintiffs served AZ with a Notice of Deposition for the deposition of Schultz, among others. *See* Letter dated January 3, 2005 to D. Scott Wise, Esq. and accompanying Notice of Deposition, Ex. A. Schultz clearly possesses information highly relevant to this lawsuit, because, as a Pricing Strategy Manager, he worked in the Pricing Strategy Department, analyzed and recommended AWPs for AWPIDs, and conducted competitive pricing and market research. Moreover, AZ has never contested that Schultz should be deposed.

Between January 7, 2005 and March 9, plaintiffs' counsel and AZ's counsel exchanged no less than three formal letters and 22 e-mails in an attempt to schedule Schultz's deposition, with defendant seeking to postpone his deposition to April and plaintiffs seeking to have his deposition scheduled in a timely manner.  *See* Group Ex. B (Letters dated January 7, 12 and 21, 2005, and e-mails ranging from January 14, 2005 to February 23, 2005).  Ultimately, AZ agreed to produce Schultz for deposition on March 15, 2005 in Wilmington, Delaware.

On March 10, 2005, plaintiffs' counsel received a telephone call from AZ's counsel canceling Schultz's deposition because he left the company.  However, AZ's counsel represented that AZ would nonetheless attempt to voluntarily produce Schultz for deposition and would either provide plaintiffs' counsel with a new date for his deposition or provide his last known address.  *See* e-mail from plaintiffs' counsel to defendant's counsel dated March 10, 2005 (confirming conversation), Ex. C.

Despite repeated requests, AZ failed for more than two weeks to either provide plaintiffs with either a new date for Schultz's deposition or his last known address.  In fact, it was not until March 25, 2005 that defendant's counsel finally stated that it would not be producing Schultz for deposition.  Yet they still failed to provide Schultz's last known address.  *See* Group Ex. D (e-mail correspondence with defendant's counsel).

B.      **March 25, 2005 – Present**

    1.      **The First Subpoena**

On March 25, 2005, plaintiffs' counsel located a potential address for Schultz, posted a Subpoena for his deposition on Verilaw and placed the Subpoena with a process server ("First Subpoena").  *See* First Subpoena, Ex. E.  The Subpoena was issued from the District of Delaware, because AZ is located in that district and Schultz lived just 19 miles from the district.

Thus, the First Subpoena fully complied with Fed. R. Civ. P. 45(b)(2) (allowing service of a subpoena outside a district within 100 miles of the place of the deposition). On that same date, Plaintiffs again wrote to AZ's counsel and requested confirmation that they had the correct last known address for Schultz. *See* Ex. F. Defendant's counsel did not respond until five days later. *See* Ex. G.

The First Subpoena was served on Schultz's wife on April 5, 2005. *See* Affidavit of Service, Ex. H. Pursuant to the First Subpoena, Schultz's deposition was scheduled for Tuesday, April 19, 2005. After the close of business the preceding Friday, AZ's counsel left a voicemail for plaintiffs' counsel, stating that Schultz's attorney had contacted them and cancelled the deposition, claiming that improper service was made. A follow-up e-mail from defendant's counsel claimed that the district from which the First Subpoena was issued was incorrect. *See* Group Ex. I (e-mail correspondence confirming voicemail message and explaining purported improper service). Plaintiffs' counsel did not receive any voicemail, correspondence or motion to quash from Schultz's attorney.

### 2. The Second Subpoena

While plaintiffs' counsel disagreed that service was improper, in an abundance of caution on April 19, 2005, plaintiffs caused a second Subpoena ("Second Subpoena) to be issued, this time from the Eastern District of Pennsylvania where Schultz resides. *See* Ex. J. Despite nine attempts to serve the Second Subpoena at times when someone was clearly inside Schultz's residence, the residents refused to answer the door. *See* Ex. K.

Thus, in an attempt to work this matter out amicably, plaintiffs' counsel sent a letter to Schultz's attorney (as referred to by AZ's counsel), Timothy Kolman, Esq., on May 4, 2005. *See*

Ex. L.  Mr. Kolman never responded.  Ultimately, the Second Subpoena expired without being served.

### 3. The Third Subpoena

On May 31, 2005, Plaintiffs issued the Third Subpoena to Schultz, again from the Eastern District of Pennsylvania, scheduling his deposition for June 30, 2005.  *See* Ex. M.  On June 7, 2005, Schultz's wife finally spoke to the Process Server.  She informed the Process Server that Schultz works in Arizona (but failed to advise where) and is only home every other weekend.  She further informed the Process Server that her "attorney instructed her not to accept any service."  *See* Ex. N.  However, she did accept service on June 7, 2005.  *See* Ex. O.

On June 22, 2005, plaintiffs' counsel sent a letter to Schultz's attorney to confirm the deposition, and requested that Schultz's attorney advise if they did not intend to appear.  *See* Ex. P.  Schultz's attorney did not respond.  Thus, plaintiffs' counsel prepared for and traveled to Philadelphia for the deposition.

On Tuesday, June 28, 2005, the secretary for Schultz's attorney called plaintiffs' counsel and requested confirmation of the start time of Schultz's June 30, 2005 deposition.  Thus, plaintiffs' counsel expected Schultz and his attorney to appear.  However, on Wednesday, June 29, 2005, during the course of another deposition, AZ's counsel, Kim Harris, informed plaintiffs' counsel that one of defendant's counsel, Scott Wise, had received a voicemail message canceling Schultz's deposition.  However, Ms. Harris did not have any further information.

Because proper service was made and plaintiffs' counsel had not received any correspondence or motion to quash from Schultz's attorney, plaintiffs' counsel appeared for his deposition.  Schultz failed to appear.

Subsequently, on Monday, July 18, 2005, Schultz contacted the Process Server by telephone and requested that someone contact his attorney to schedule his deposition. Accordingly, on Tuesday, July 19, 2005, plaintiffs' attorney contacted Schultz's attorney, told the receptionist who she was and why she wanted to speak with Mr. Kolman and was told she could leave Mr. Kolman a voicemail message. Thus, plaintiffs' counsel left a detailed voicemail message for Mr. Kolman, advising him that his client requested that she call and schedule the deposition. Plaintiffs' counsel further provided Mr. Kolman with her cell phone number, because of travel commitments. To date, plaintiffs' counsel has never heard back from him.

### III.   ARGUMENT

**A.   The Motion to Compel Should Be Determined by the Massachusetts Court That Is Handling the Multidistrict Litigation**

As an initial matter, courts routinely hold that the MDL judge should decide a discovery dispute even though the subpoena is issued in another district. *See In re Orthopedic Bone Screw Prods. Liab. Litig.,* 79 F.3d 46, 48 (7th Cir. 1996) (finding that motion for protective order should be referred to transferee court); *In re Subpoenas Served on Wilmer, Cutler & Pickering & Goodwin Proctor LLP*, 255 F. Supp. 2d 1, 2-3 (D.D.C. 2003) (remitting case to court handling multidistrict litigation); *In re Subpoenas Duces Tecum to: Schneider Nat'l Bulk Carriers, Inc.,* 918 F. Supp. 272, 273 (E.D. Wis. 1996) (quoting 9A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2463, at 79 (1995) ("'it is within the discretion of the court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending.'")); *Pactel Personal Communications v. JMB Realty Corp.*, 133 F.R.D. 137 (E.D. Mo. 1990). Other courts have reached a similar result through other procedural means. *See, e.g., Kearney v. Jandernoa*, 172 F.R.D. 381, 382-83 (N.D. Ill. 1997) (ordering

movant to re-file motion for protective order in court where underlying litigation was proceeding and explaining that thereafter it will adopt a ruling consistent with that decided by underlying court).

Indeed, to hold otherwise ignores a chief purpose of the MDL statute, which is to foster uniformity and judicial economy.  Under § 1407(b), pretrial proceedings in MDL cases "shall be conducted by a judge or judges to whom such actions are assigned."  That judge "may exercise the powers of a district judge in any district for the purpose of conducting pretrial [discovery] in such coordinated or consolidated pretrial proceedings."  *Id.*  Here, this Court is in the best position to prosecute a subpoena which seeks a deposition and documents from a witness with knowledge relevant to the claims in the SAMCC.  Magistrate Judge Bowler has ruled on numerous discovery motions to date, including motions to compel and/or motions to quash.  Thus, a resolution by this Court will foster uniformity and judicial economy.

**B.     This Court Should Compel Schultz to Appear for His Deposition**

Fed. R. Civ. P. 45(f) provides in pertinent part:  "Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court…"  Here, service was made of both the First and Third Subpoenas.  *See*  Exs. E, M.  "If the witnesses considered that they had grounds not to appear, they were required to file a motion for a protective order."  *Aetna Cas. & Sur. Co. v. Rodco Autobody*, 130 F.R.D. 2, 3 (D. Mass. 1990).  Neither Schultz nor his counsel has contacted plaintiffs' counsel or filed a motion for protective order or to excuse compliance.  Likewise, Schultz failed to file written objections to the request for documents in either Subpoena within 14 days as required by Fed. R. Civ. P. 45 (c)(2)(A).

Even if Schultz now comes before this Court to claim that service was improper, it is clear that Schultz violated both the First and Third Subpoenas.  First, he admittedly received both

subpoenas and had actual notice of it prior to both scheduled depositions, as evidenced by the alleged voicemails his attorney left for defense counsel.  Because no formal objection was made either time either to Plaintiffs' counsel or to the Court, Schultz waived any objections he might have had.  *Galella v Onassis*, 353 F. Supp 196 (S.D.N.Y. 1972), *aff'd in part and rev'd in part on other grounds,* 487 F.2d 986 (2d Cir. 1973).  Moreover, "[e]ven in the absence of waiver of defect in service, actual notice suffices." *Id.* at 239 (citing *Winn & Lovett Grocery Co. v. N.L.R.B.*, 213 F.2d 785, 786 (5th Cir. 1954)).  Thus, Schultz should be compelled to appear.

Finally, Fed. R. Civ. P. 37(a)(4) allows a party to recover "the costs, including reasonable attorney's fees, incurred in obtaining an order compelling a non-party-deponent to appear for a deposition when the non-party has failed to do so…." *Aetna Cas. & Sur. Co.*, 130 F.R.D. at 4 (citing *Pennwalt Corporation v. Durand-Wayland, Inc*., 708 F.2d 492, 494 n.4 (9th Cir. 1983)).  Thus, plaintiffs request that Schultz and his attorney be compelled to bear plaintiffs' costs for pursuing this deposition for the past seven months.  In the event the Court grants plaintiffs' motion, plaintiffs will submit an affidavit in support of their request for fees and costs within seven (7) days of entry of this Court's order.

## IV.     CONCLUSION

WHEREFORE, plaintiffs respectfully request that this Court grant Plaintiffs' Motion To Compel, order Erik Q. Schultz to appear for his deposition within 14 days, and award plaintiffs' costs and fees incurred in attempting to obtain Schultz's appearance for deposition.

1534.16 0203 MTN-IL.DOC

DATED:  July 29, 2005						By      /s/ Steve W. Berman
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF ERIK Q. SCHULTZ AND FOR ORDER ASSESSING FEES AND COSTS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on July 29, 2005, a copy to Verilaw Technologies for Posting and notification to all parties

      By    **/s/ Steve W. Berman**
        Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292