> If the involvement of individual members of an
> association is necessary, either because the
> substantive nature of the claim or the form of the
> relief sought requires their participation, we see no
> sound reason to allow the organization standing to
> press their claims, even where it seeks to do so as a
> putative class representative.

361 F.3d at 715.  While the associations may have standing to

press any class claims for non-monetary relief, plaintiffs have

not moved to certify under Fed. R. Civ. P. 23(b)(2).[18]  The

associations lack standing to serve as class representatives

under Rule 23(b)(3).

This leaves only the TPP as a named representative.  Some

courts have held that the claims of consumer and third-party

class representatives are typical of the claims of all class

members notwithstanding variations in the amount of damages.  See

Terazosin Hydrochloride, 220 F.R.D. at 688.  Here, plaintiffs

argue that the TPP is typical in that its claims arise from the

same course of conduct that gives rise to the claims of the

absent class members.  However, defendants assert that some TPPs

(like those that purchased the drugs themselves) had extensive

knowledge of AWP inflation and agreed to provide the insurance

with open eyes; further, there may be defenses unique to TPPs not

applicable to consumers (e.g., statute of limitations).  "While

it is settled that the mere existence of individualized factual

_____

[18]  The defendants have also argued that plaintiff
associations do not have standing to pursue a claim under
approximately half of the state consumer protection statutes.

questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (citation omitted) (holding that professional stock broker's superior knowledge and sophistication made her atypical representative for class of investors).

There is also concern about a possible conflict between TPPs and Medicare Part B beneficiaries with respect to possible settlements, given the different economic interests of the groups. Whether this concern is properly characterized as typicality or adequacy – the two inquiries frequently overlap – I am concerned that TPPs will not serve as adequate and typical representatives of Medicare beneficiaries, particularly those who do not have supplemental health insurance.

Because the requirement of Rule 23(a)(3) has not been met, the Court declines at this time to certify a class of Medicare Part B consumers. See generally Fed. R. Civ. P. 23 advisory committee's note to 2003 amendments ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").  The plaintiffs have identified individuals who could serve as

additional class representatives and request an opportunity to amend the SAMCC to name them.  Because this would further protect class interests, plaintiffs may move to amend in 60 days.  <u>See</u> <u>Manual for Complex Litigation</u> (Fourth) § 21.26 (2004) (where replacement of a class representative is necessary, "courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative").  Plaintiffs must establish that there is an individual class representative with standing to sue each defendant.

The Track One defendants have supplemented their submissions by showing that in <u>Swanston v. Tap Pharm. Prods., Inc.</u>, No. CV2002-004988 (Ariz. Super. Ct.), a parallel proposed class action this Court remanded to the Arizona state court, the named class representative made no payments based on AWP and was therefore not a member of the class he sought to represent. Defendants point to this as proof that extensive individual inquiry is necessary to determine class membership.  Arguably, class representatives who were fully reimbursed suffered no injury.  <u>See</u> <u>Relafen</u>, 221 F.R.D. at 270-71 (excluding from the class all end payors who were reimbursed in full for all drug purchases).  To address this issue, when plaintiffs amend the complaint to propose individual class representatives, they shall allege facts demonstrating typicality and adequacy of the class representatives and disclose the documents demonstrating that the

43

proposed class representatives made co-insurance payments (at

least in part) under Medicare Part B based on AWP.  Because

plaintiffs state that they have individuals waiting in the wings,

the Court will continue to address the other certification

requirements.

### 4.   Adequacy

"The adequacy inquiry under Rule 23(a)(4) serves to uncover

conflicts of interest between named parties and the class they

seek to represent."  Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 625 (1997).

> The [adequacy] rule has two parts.  The moving party
> must show first that the interests of the
> representative party will not conflict with the
> interests of any of the class members, and second, that
> counsel chosen by the representative party is
> qualified, experienced, and able to vigorously conduct
> the proposed litigation.

Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985).

"The conflict that will prevent a plaintiff from meeting the Rule

23(a)(4) prerequisite must be fundamental, and speculative

conflict should be disregarded at the class certification stage."

Visa Check, 280 F.3d at 145.

While the Court must defer ruling on individual

representatives, the Court is satisfied that counsel is

qualified.  Counsel has conducted numerous class actions, and

recently brought the Lupron suit, which raises similar drug-

pricing issues, to a settlement.  See In re Lupron Mktng. &

44

Sales Practices Litig., 228 F.R.D. 75 (D. Mass. 2004).

### 5.   **Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of antitrust laws." Id. at 625.   "Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain," for "[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)."   Smilow, 323 F.3d at 40; see also Tardiff, 365 F.3d at 6-7 (noting that individuals subject to allegedly illegal strip search may have individual damages from emotional distress, lost wages, and medical treatment, but that these damages issues do not defeat initial certification); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (affirming RICO class certification and suggesting procedural mechanisms available at later stage to cope with issues of whether particular members were defrauded and extent of individual damages).

Similarly, "where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative

45

defenses," for "[i]f . . . evidence later shows that an
affirmative defense is likely to bar claims against at least some
class members, then a court has available adequate procedural
mechanisms."  Smilow, 323 F.3d at 39-40; see also Mowbray, 208
F.3d at 296 ("Although a necessity for individualized statute-of-
limitations determinations invariably weighs against class
certification under Rule 23(b)(3), we reject any per se rule that
treats the presence of such issues as an automatic
disqualifier."); Tardiff, 365 F.3d at 5 (noting that potential
that some strip searches were legal would not defeat initial
class certification, since class members likely could be grouped
by likelihood that reason for arrest justified strip search);
Visa Check, 280 F.3d at 137-39 (holding that defense that
individual plaintiffs may have mitigated damages by urging
customers to use forms of payment other than defendants' cards
did not cause individual issues to predominate).

In cases involving fraudulent statements or
misrepresentations, courts generally favor certification where
the misrepresentations were materially uniform, but deny
certification where they varied from transaction to transaction.
See Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253-56 (2d Cir.
2002) (stating that Third, Fourth, Fifth, Sixth, and Seventh
Circuits follow this approach, with some variation); In re
LifeUSA Holding, Inc., 242 F.3d 136, 145-46 (3d Cir. 2001)

46

(decertifying class because the "plaintiffs assert claims arising
not out of one single event or misrepresentation, but claims
allegedly made to over 280,000 purchasers by over 30,000
independent agents where the District Court found that the sales
presentations (hence the alleged misrepresentations) were neither
uniform nor scripted").

Defendants have spent little time challenging the
predominance of factual issues with respect to consumers who co-
pay for physician-administered drugs under Medicare Part B.
Here, common factual issues predominate since a typical consumer
by statute simply pays a percentage of AWP as a co-pay.  There is
therefore no separate factual issue regarding the knowledge and
reliance of each class member.

Defendants' primary challenge to the physician-
administered drug class centers on the fact that each state
consumer protection law has different legal standards.
Differences in legal issues do not necessarily preclude class
certification under Rule 23(b)(3).  "As long as a sufficient
constellation of common issues binds class members together,
variations in the sources and application of [law] will not
automatically foreclose class certification under Rule 23(b)(3)."
Mowbray, 208 F.3d at 296; see also Hanlon, 150 F.3d at 1022-23
(holding that "the idiosyncratic differences between state
consumer protection laws [were] not sufficiently substantive to

47

predominate over the shared claims"). However, "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." Klay v. Humana, Inc., 382 F.3d 1241, 1261 (11th Cir. 2004); see also Amchem, 521 U.S. at 624 (observing that "[d]ifferences in state law . . . compound . . . the disparate questions undermining class cohesion in this case").

## Choice of Law

Plaintiffs argue that individual legal issues do not predominate because this Court need only apply the laws of the states where the Track One defendants have their principal places of business, where they made the misrepresentations as to drug prices.  To analyze the predominance challenge, this Court must first determine what law applies.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001).  The parties have agreed on the application of Massachusetts choice of law rules.[19]

Taking a functional approach, Massachusetts courts look to the Restatement (Second) of Conflict of Laws ("Restatement") in determining choice of law issues.  Bushkin Assoc., Inc. v.

---

[19]  Defendants note that it may be appropriate to apply the choice of law rules of each transferor court, see In re Propulside Prods. Liab. Litig., 208 F.R.D. 133, 141-42 (E.D. La. 2002); Larry Kramer, Choice of Law in Complex Litigation, 71 N.Y.U. L. Rev. 547 (1996), but neither party has pursued the issue.

Raytheon Co., 473 N.E.2d 662, 670 (Mass. 1985).  Restatement §
148, entitled "Fraud and Misrepresentation," most closely matches
the claim and will be applied here.[20]  Under that section, the
most significant factor is where the plaintiff acted in reliance
on a defendant's representation.  Restatement § 148 at cmt. g
("In weighing these factors, the place where a plaintiff acted in
reliance on defendant's representations is more important than
the place where the defendant made or the plaintiff received the
representations.").

_____

[20]  This section provides:
(2) When the plaintiff's action in reliance took place
in whole or in part in a state other than that where
the false representations were made, the forum will
consider such of the following contacts, among others,
as may be present in the particular case in determining
the state which, with respect to the particular issue,
has the most significant relationship to the occurrence
and the parties:
    (a) the place, or places, where the plaintiff
    acted in reliance upon the defendant's
    representations,
    (b) the place where the plaintiff received the
    representations,
    (c) the place where the defendant made the
    representations,
    (d) the domicil, residence, nationality, place of
    incorporation and place of business of the
    parties,
    (e) the place where a tangible thing which is the
    subject of the transaction between the parties was
    situated at the time, and
    (f) the place where the plaintiff is to render
    performance under a contract which he has been
    induced to enter by the false representations of
    the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

49

Even though the defendants made the alleged misrepresentations in the states of their principal places of business when sending the AWPs to publishers, the Restatement § 148 factors point to applying the laws of the home states of the class members.  The class members purchased physician-administered drugs in reliance on the published AWPs in states where they were receiving treatments from their physicians, typically their places of residence.  Three of the significant contacts in § 148 – the place of action in reliance, the place where misrepresentations were received, and the place of plaintiff's domicile – call for application of the law of the home state of each consumer.  The conclusion that the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant is in accordance with the principles of Restatement § 6,[21] since state

_____

[21]   Section 6, which is generally applicable, see Bushkin, 473 N.E.2d at 670, provides:
    the factors relevant to the choice of the applicable
    rule of law include
        (a) the needs of the interstate and international
            systems,
        (b) the relevant policies of the forum,
        (c) the relevant policies of other interested
            states and the relative interests of those
            states in the determination of the particular
            issue,
        (d) the protection of justified expectations,
        (e) the basic policies underlying the particular
            field of law,
        (f) certainty, predictability and uniformity of
            result, and
        (g) ease in the determination and application of
            the law to be applied.

consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct. See Relafen, 221 F.R.D. at 277 ("[T]he primary aim of . . . consumer protection laws generally . . . is compensating consumers, not policing corporate conduct."); Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 216 (E.D. Pa. 2000) ("[S]tate consumer protection acts are designed to protect the residents of the states in which the statutes are promulgated.").

Courts have generally rejected application of the law of a defendant's principal place of business to a nationwide class. See In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002) (applying Indiana lex loci delicti rule and stating that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules"); Relafen, 221 F.R.D. at 277-78 (holding in antitrust case that Massachusetts and Pennsylvania choice of law rules would require that court apply law of state where consumers' purchases were made, rather than law of defendant's principal place of business); Lyon, 194 F.R.D. at 211-21 (applying Pennsylvania choice of law rules and Restatement to reject plaintiffs' argument that one state's law applied to nationwide claims). Thus, while it is tempting to apply the consumer protection laws

---

Restatement (Second) of Conflict of Laws § 6 (1971).

of the states where defendants have their principal places of
business to promote uniform results and the ease of managing a
class, under the Restatement, the laws of the home states of the
consumers govern.

Having smelled victory on the choice-of-law issue,
defendants expect a knock-dead punch on their argument that the
differences among the state consumer laws are so significant that
they cause individual issues to predominate.  Indeed, in a
double-dare at oral argument, they waxed that no court in the
nation has successfully certified a nationwide consumer class for
litigation (as opposed to settlement) purposes.

Plaintiffs urge the court to deal with the differences among
the states' laws by grouping the claims of class members from
states with similar laws for trial.  The First Circuit has
approved of the use of grouping, as have numerous other circuits.
See Mowbray, 208 F.3d at 296-97; Relafen, 221 F.R.D. at 278-87;
Klay, 382 F.3d at 1262 ("[I]f the applicable state laws can be
sorted into a small number of groups, each containing materially
identical legal standards, then certification of subclasses
embracing each of the dominant legal standards can be
appropriate."); Hanlon, 150 F.3d at 1022-23; In re The Prudential
Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 315 (3d
Cir. 1998); Castano v. Am. Tobacco Co., 84 F.3d 734, 741-42 (5th
Cir. 1996) (accepting that grouping may be feasible but rejecting

52

its application in the case at hand).  It is true, however, that
"when dealing with variations in state laws, the same concerns
with regards to case manageability that arise with litigation
classes are not present with settlement classes, and thus those
variations are irrelevant to certification of a settlement
class."  Warfarin, 391 F.3d at 529 (but acknowledging grouping of
state laws as a method to make a litigation class manageable).

        Courts should look at how issues are likely to play out in
the context of the case to see what individual issues are likely
to arise, and what state law differences are irrelevant and may
be ignored.  See Mowbray, 208 F.3d at 296-97 ("Under either
[grouping's] rule, the factual proffer will be largely the same .
. . .");  Relafen, 221 F.R.D. at 279 n.17 ("Yet with the exception
of the variation discussed below, such differences [in state law]
prove largely irrelevant.").

        However, the burden is on plaintiffs to demonstrate "through
an extensive analysis" that grouping is feasible.  Castano, 84
F.3d at 742; see also Zinser, 253 F.3d at 1189-90 (stating that
plaintiff seeking certification of nationwide class to which the
law of forty-eight states potentially applies "bears the burden
of demonstrating 'a suitable and realistic plan for trial of the
class claims'" (citation omitted));  In re Paxil Litig., 212
F.R.D. 539, 545 (C.D. Cal. 2003) (holding that plaintiffs failed
to meet their burden of showing that variances within each

                                    53

grouping were nonmaterial because in some cases plaintiffs'
groupings were unsupported and the characterizations of others
were "simply and outright wrong"); Lyon, 194 F.R.D. at 218-21
(rejecting four-part grouping of consumer fraud acts due to
insufficient analysis, and reviewing caselaw rejecting similar
groupings).

Providing the Court with a detailed fifty-state survey,
which plaintiffs have not contested, defendants point to the
following differences among the state consumer protection laws.
Under Iowa law cited by plaintiffs, consumers may not bring
claims.  See Molo Oil Co. v River City Ford Truck Sales, Inc.,
578 N.W.2d 222, 228 (Iowa 1998).[22]  Under the laws of Alabama,
Alaska, Georgia, Kentucky, Louisiana, Mississippi, and Montana,
there is no right to bring a class action to enforce the consumer
protection statutes.  See Ala. Code § 8-19-10(f); Alaska Stat. §
45.50.531(b) (repealed provision that had allowed class actions);
Ga. Code Ann. § 10-1-399(a); Arnold v. Microsoft Corp., No.
00-CI-00123, 2001 WL 193765, at *6 (Ky. Cir. Ct. July 21, 2000);
La. Rev. Stat. Ann. § 51:1409(A); Miss. Code Ann. § 75-24-15(4);
Mont. Code Ann. § 30-14-133(1).  Consumers in these states may be
excluded out of hand.  The states of Kansas, Missouri, New

---

[22]   Defendants also urge that Puerto Rico does not allow
private actions.  However, Puerto Rico is not listed in
plaintiffs' appendix as one of the jurisdictions in which they
seek to bring a claim.

Jersey, Oregon, Washington, Alabama, Alaska, California, Georgia, Indiana, Maine, Massachusetts, Mississippi, Texas, and Wyoming possess special notice provisions for bringing consumer protection claims. <u>See</u> Kan. Stat. Ann. § 50-634(g); Miss. Code Ann. § 75-24-15(2); <u>Pointer v. Edward L. Kuhs Co.</u>, 678 S.W.2d 836, 842 (Mo. Ct. App. 1984); N.J. Stat. Ann. § 56:8-20; Or. Rev. Stat. § 646.638(2); Wash. Rev. Code Ann. § 19.86.095; Ala. Code § 8-19-10(e); Alaska Stat. § 45.50.535(b)(1); Cal. Civ. Code § 1782; Ga. Code Ann. § 10-1-399(b); Ind. Code Ann. § 24-5-0.5-5(a); Me. Rev. Stat. Ann. Tit. 5, § 213(1-A); Mass. Gen. Laws ch. 93A, § 9(3); Tex. Bus. & Com. Code Ann. §§ 17.505, 17.5051; Wyo. Stat. Ann. §§ 40-12-109, 40-12-102(a)(ix). Plaintiffs have not alleged that they have complied with any notice provisions. While most states allow a plaintiff to give notice subsequent to the case being filed, others require dismissal of the complaint. Unless plaintiffs give evidence of compliance with the notice provisions, these states will be excluded.

For the remaining states, defendants flag differences in requirements for establishing reliance, proximate cause, scienter, damages, and statutes of limitations, but in the context of the claims of consumer-patients under Medicare Part B, these variations in legal standards are unlikely to be material. Significantly, plaintiffs have wisely noted that they are

55

pressing only the theory that defendants intentionally made fraudulent misrepresentations of AWP.[23]   Therefore, different standards governing scienter do not present individual issues. Defendants point to no state where the intentional, fraudulent acts alleged would be permitted under the consumer protection statute.   States do have different definitions of reliance and proximate cause.   Compare Phillip Morris, Inc. v. Angeletti, 752 A.2d 200, 235 (Md. 2000) ("Reliance by consumers would also seem to be a necessary precondition to awarding restitution or damages pursuant to the statutory consumer protection provisions pleaded by Respondents.") with Izzarelli v. R.J. Reynolds Tobacco Co., 117 F. Supp. 2d 167, 176 (D. Conn. 2000) ("Under CUTPA, if the message is false, then it is a deceptive act without inquiry into whether the consumer actually believed the message or whether the consumer acted reasonably in relying on it.").   However, in this context, where consumers (elderly people with cancer or another serious disease) make a percentage co-payment based on the stated AWP, there is no indication that different definitions of reliance and causation will matter or cannot be resolved as a matter of law prior to trial.   Thus, the common legal and factual issues predominate over the individual ones.

_____

[23] (Corrected Plaintiffs' Reply Mem. in Support of Class Cert. at 23 n.71.)

56

### 6.  **Superiority**

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy."  "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Amchem, 521 U.S. at 615 (citation omitted).  "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative - no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied - to no litigation at all."  Carnegie, 376 F.3d at 661.

With respect to Medicare Part B consumer patients making co-payments, it is cost effective to focus the litigation in one forum, and one case will promote a uniformity of results appropriate for a nationwide reimbursement program.  However, from a manageability point of view, it is appropriate to have subclasses of consumers for the drugs of each manufacturer group. Therefore, there will be five subclasses, one for each Track One group.  The Court defers deciding whether to hold a separate trial with respect to each manufacturer group.

57

Plaintiffs provided the Court with a brief summary of the issues to be decided at each phase.  The Court is satisfied that as to the Medicare Part B beneficiary class, a class action is a superior method to resolve the dispute.  Defendants have not identified any plausible individual issues that will arise with regard to these class members other than their proofs of damages, which may entail reviewing documents to determine whether each patient was required to pay a percentage-based co-pay and whether each has supplemental insurance.  These damages calculations will be largely formulaic.  Even if some corroboration and individualized attention is necessary, it is unrealistic to expect millions of beneficiaries across the nation to repeatedly prove these claims.  The number of drugs at issue in the Medicare Part B context is limited to about seventeen, so even if deciding spreads by individual NDCs is necessary, it would not be unmanageable.

## B.   PHYSICIAN-ADMINISTERED CLASS OF THIRD-PARTY PAYORS THAT PAY MEDICARE PART B SUPPLEMENTAL INSURANCE

Plaintiffs seek to certify a class of TPPs that pay MediGap supplemental insurance for co-payments made by Medicare Part B beneficiaries.

Defendants do not challenge numerosity under Fed. R. Civ. P. 23(a), a requirement I find is met, but do challenge typicality. The issue is whether UFCW is a typical representative for the TPP class of payors that pay Medicare supplemental insurance.  While

58

defendants argue that UFCW does not pay the full 20% coinsurance payment in all cases, UFCW's underlying legal theory and its motivations are similar to those of the other TPP class members that make full payments.  Thus, I find that UFCW meets the typicality and adequacy requirements.

Again, the common factual issues (as outlined in the previous section) predominate, in that the TPPs are required by contract to supplement Medicare drug co-payments.  Some TPPs may have greater sophistication with respect to the existence of spreads because they purchase self-administered drugs, but there is no evidence that TPPs purchase physician-administered drugs or know of the mega-spreads that exist for these drugs.  In any event, the reimbursement rate is set by statute, not negotiation. Therefore, there appear to be no factual differences with respect to reliance or causation that predominate over the common issues. Defendants have not pressed an extensive predominance challenge in this context regarding factual issues.

Rather, defendants challenge class certification with respect to these TPPs primarily on the ground that the legal differences among the state consumer protection statutes predominate over the common legal questions.  Plaintiffs have not examined which state consumer protection statutes, if any, permit corporations, unions or other entities to bring such class actions.  It is apparent that many do not, and those that do have

59

widely varying requirements.  See, e.g., Scully Signal Co. v.
Joyal, 881 F. Supp. 727, 741 (D.R.I. 1995) (holding that
corporations may not bring suits); Zine v. Chrysler Corp., 600
N.W.2d 384, 392 (Mich. Ct. App. 1999) (allowing corporations to
bring claims only if they made purchase for their own use);
Nelson v. Lusterstone Surfacing Co., 605 N.W.2d 136, 141 (Neb.
2000) (limiting application to acts that affect public interest);
Tex. Bus & Com. Code § 17.45(4) (allowing only businesses with
assets of less than $25 million to bring suits).  Plaintiffs have
not proposed feasible groupings of these statutes, as would be
necessary to proceed.  Accordingly, the motion to certify a
nationwide class is denied without prejudice.

However, the Court will certify a statewide class of TPPs
that pay supplemental insurance covering Medicare Part B co-
payments under Mass. Gen. Laws ch. 93A.  Under Chapter 93A, no
notice is required prior to a corporate suit, see Nader v.
Citron, 360 N.E.2d 870, 874 (Mass. 1977), and corporations may
bring class action claims, see Mass. Gen. Laws Ann. ch. 93A, § 11
(West 2005).  Chapter 93A does not require a showing of reliance
to state a claim.  See id. (allowing claims by anyone who has
been injured "as a result of" unfair or deceptive business
practices); Heller Fin. v Ins. Co. of N. Am., 573 N.E.2d 8, 16
(Mass. 1991) ("[W]hile [the plaintiff] need not show actual
reliance on the misrepresentation, the evidence must warrant a

60