## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **IN RE PHARMACEUTICAL INDUSTRY** | ) | |
| **AVERAGE WHOLESALE PRICE** | ) | **MDL No. 1456** |
| **LITIGATION** | ) | |
| ——————————————————— | ) | **CIVIL ACTION:  01-CV-12257-PBS** |
| | ) | |
| **THIS DOCUMENT RELATES TO** | ) | **Chief Mag. Judge Marianne B. Bowler** |
| **ALL CLASS ACTIONS** | ) | |
| ——————————————————— | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE JOHNSON & JOHNSON GROUP TO PRODUCE DOCUMENTS AND FOR AN EXTENSION OF DISCOVERY

Plaintiffs hereby file this motion to compel defendant Ortho Biotech Products, LP ("OBI") to immediately produce all responsive documents and litigation materials that OBI has improperly concealed and withheld from plaintiffs during the discovery period and to request a sixty (60) day extension of discovery with respect to taking any necessary discovery in connection with such material.

## I.   INTRODUCTION

This motion arises as a result of Track I defendant OBI and Track II defendant Amgen, Inc.'s (collectively the "Defendants") intentional efforts to mislead, conceal and withhold from plaintiffs -- **for more than two and a half years** -- highly relevant documents from a series of confidential arbitrations and legal proceedings between OBI and Amgen over a period of more than twelve years (the "Proceedings").

Beginning in December 2003, plaintiffs propounded discovery requests upon OBI and Amgen seeking all documents relating to legal proceedings, in which they were a party, that referred or related to Average Wholesale Price ("AWP") or a Spread between reimbursement and acquisition cost.  On several occasions during the discovery period, OBI's current counsel,

Andrew Schau, Esq., who describes himself as having been "intimately involved" in the Proceedings, expressly represented to plaintiffs' counsel that the Proceedings were wholly irrelevant and had nothing to do with AWP or the Spread between reimbursement and acquisition cost. Plaintiffs relied on these representations. However, plaintiffs later learned that the representations were wrong.

Contrary to Mr. Schau's representations, as of 1995, Amgen's chief claim in the Proceedings was that OBI intentionally marketed and promoted Procrit to customers in the dialysis sector in breach of a Product License Agreement ("PLA") between OBI (Procrit®) and Amgen (Epogen®). As a result of OBI's conduct, Amgen sought to terminate the PLA. The apparent method that OBI used to steal market share in the dialysis sector was to offer rebates or other discounts in price to customers, thereby lowering customer acquisition cost. Because Procrit and Epogen are the same substance and both drugs are reimbursed at the identical rate, an offer to lower the purchaser's acquisition cost creates an overall increase in the Spread to customers. Moreover, OBI's documents and testimony show that in the dialysis sector, at least some Procrit is reimbursed based on AWP. Therefore, plaintiffs believe that OBI's marketing, sales and promotional documents or testimony relating to discounts, rebates and/or other incentives to customers to create an advantageous AWP-based spread should have been produced to plaintiffs.

However, it was not until July 5, 2005 – more than two and a half years after plaintiffs issued their initial document requests to the defendants – when Mr. Schau, for the first time, admitted that Amgen introduced evidence to show that OBI offered "incentives" to customers to take market share from Amgen in the dialysis sector. After numerous follow-up discussions

2

between counsel, OBI commenced a review of its complete files of the Proceedings (that OBI currently, and always has maintained), and in early August, 2005, Mr. Schau confirmed that the files do, in fact, contain material relevant to this action.  OBI did not begin to produce documents (in a rolling production format) until August 15, 2005.  Nonetheless, OBI refused to produce responsive documents unless such documents expressly refer to "AWP" or directly compare the amount of reimbursement to the actual acquisition cost of Procrit.  OBI's unilateral decision to limit its search and to delay production of responsive documents has and will continue to cause substantial prejudice to plaintiffs' ability to prosecute their case against OBI.

Plaintiffs seek the production of documents and materials introduced and/or used in any legal proceedings in which OBI was a party or witness to prove or demonstrate any oral or written assertions that either OBI or Amgen, their respective employees and/or any third-party acting on behalf of either of the Defendants promoted, sold or marketed Procrit® (OBI) or Epogen® (Amgen) into the other party's reserved U.S. market as defined by the parties' PLA. More specifically, plaintiffs seek responsive documents used or introduced in the Proceedings, including, but not limited to, any sales and/or marketing materials referring or relating to reimbursement, AWP, discounts, incentives, rebates, or other remuneration offered to customers or potential customers.  Plaintiffs also seek any affidavits, declarations, exhibit lists, expert reports, deposition testimony and accompanying exhibits or trial testimony and accompanying exhibits.   All of these materials are subject to confidentiality and are not in the public record. Thus, the only sources from which they are available are from the defendants, OBI and Amgen. Therefore, plaintiffs respectfully request that this Court grant their motion to produce all relevant documents within ten (10) days.

In addition, because defendants' efforts to conceal and purposefully withhold such relevant documents from plaintiffs throughout the discovery period (and well into the final month of discovery for Track I Defendants) will, at a minimum, result in an 11th hour production that has and will cause substantial prejudice to plaintiffs, plaintiffs also seek a sixty (60) day extension of discovery from the date plaintiffs receive all such documents from OBI so as to afford plaintiffs an opportunity to review the documents and take the depositions of parties, even those who have been previously deposed on other subjects, in connection with such documents and materials.  For reasons set forth more fully below, plaintiffs' motion should be granted.

II.   **BACKGROUND**

   A.   **The Proceedings Between OBI and Amgen.**

In September 1985, Amgen and OBI entered into the PLA relating to the U.S. sale of epoetin alfa ("EPO").  EPO is used to stimulate the production of red blood cells in the body. Amgen sells one brand of EPO known as Epogen® and OBI sells another brand known as Procrit®.  The substances are the same and both drugs are reimbursed at the same rate. Pursuant to the PLA, Amgen expressly reserved the right to sell EPO to dialysis patients and granted OBI the exclusive right to sell EPO to non-dialysis patients.

Beginning in 1989, Amgen and OBI commenced numerous legal proceedings and arbitrations against one another.  Many of the actions involved issues concerning the unintended sale of EPO by one party into the other's exclusively reserved market, which the Defendants refer to as "Spillover" sales and for devising a mechanism for compensating the parties for such Spillover sales.

However, in August 1995, Amgen accused OBI of breaching the PLA by intentionally promoting and selling Procrit into the dialysis market and filed a demand in the arbitration proceedings seeking damages and determination of Amgen's right to terminate the PLA (the "termination case").   See generally, *Amgen, Inc. v. Ortho Pharmaceutical Corp.,* 708 N.E.2d 385, 387-88 (Ill. Ct. App. 1999). Witness testimony and representations of OBI's counsel indicate that Amgen used or introduced evidence to show that (i) OBI sales representatives and (ii) at least one wholesaler, allegedly on behalf of OBI, offered greater discounts, rebates and/or lower prices to customers who used EPO for dialysis than Amgen.  The materials produced or used in these Proceedings, are marked confidential under the arbitration order, are not in the public record, and have been and are currently maintained separately by both OBI and Amgen.

B.      **Plaintiffs Propounded Document Requests That
        <u>Sought Relevant Documents From The "Proceedings."</u>**

On December 3, 2003, plaintiffs served their original Request for Production of Documents to Aventis, Abbott, Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough and Interrogatories to All Defendants Subject to Discovery.  A copy of Plaintiffs' Request for Production of Documents and Interrogatories is attached as Exhibit "A."   At Request No. 3, plaintiffs sought "[a]ll documents relating to any legal proceeding (by country, court, caption, case number, etc.) including, but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegation that you or any other pharmaceutical manufacturer overstated, misstated, or otherwise manipulated the AWP for any AWPID for the Relevant Time Period." At Request No. 5, plaintiffs sought "[a]ll affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegation that you overstated,

misstated or otherwise manipulated the AWP for any AWPID during the Relevant Time Period."
At Request No. 6, plaintiffs requested "[a]ll documents relating to any actual, proposed or
prospective price announcements, changes, discount programs, rebates, incentives, penalties or
price lists issued by you for each AWPID…during the Relevant Time period."

On January 20, 2004, OBI responded to Plaintiffs' Requests by agreeing to produce any
relevant, responsive, non-privileged and non-public documents and material.   For example, in its
response to Request No. 3, OBI stated that subject to certain general objections it "will produce
relevant, responsive, non-privileged and non-public documents relating to legal proceedings and
concerning the allegations in the Amended Complaint that [OBI] overstated, misstated, or
otherwise manipulated Procrit's AWP, if any exist."   A copy of OBI's Response is attached as
Exhibit "B."

Two weeks after serving the original document requests, plaintiffs, on December 19,
2003, propounded their Second Request for Production of Documents to Aventis, Abbott,
Amgen, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough.  A copy of
Plaintiffs' Second Request for Production of Documents is attached as Exhibit "C."  At Request
No. 22, plaintiffs sought "[a]ll documents produced by you in any litigation, government
investigation or inquiry related to the use of AWP in Medicare, Medicaid or private
reimbursement."

Notably, both sets of document requests sought responsive documents from January 1,
1991 through the present, and instructed OBI to search for responsive documents at OBI, the
parent, other J&J subsidiaries and OBI's representatives and agents.   See, e.g., Ex. C at 2 ¶ 4, 9
§ IV.

### C.     Plaintiffs' 30(B)(6) Notice Sought The Identity of Relevant Documents From The "Proceedings."

On April 1, 2004, plaintiffs issued an Amended Notice of Rule 30(B)(6) Deposition to all defendants (the "Notice"), including Amgen and the Johnson & Johnson Group.  A copy of the Notice is attached as Exhibit "D."  At page 8 of the Notice, plaintiffs define "Spread" as meaning "'the difference between AWP or any price upon which reimbursement for a drug is based, on the one hand, and the actual or net price paid for a drug on the other hand."

The Notice contained twenty (20) "Areas of Inquiry."  At Area of Inquiry No. 12, plaintiffs sought a representative knowledgeable as to "[t]he nature of Your documents discussing, analyzing or marketing the Spread on any of Your drugs."   At No. 13, plaintiffs sought "[t]he location of or identity of documents relating to the nature of Your efforts to market, promote or tout the Spread on any of Your drugs, and the names or job titles of all personnel involved in said efforts."   At No. 17, plaintiffs sought "[t]he identity of documents regarding communications between You and any other pharmaceutical manufacturer regarding…(c) rebates, charge backs, free samples or any other marketing practice that any pharmaceutical manufacturer contended was inappropriate, illegal, unethical, fraudulent, or otherwise should be ceased."   Significantly, although asked about these issues at his deposition, OBI's 30(b)(6) designee, Thomas Hiriak, did not identify any documents used or introduced in the Proceedings. Hiriak Dep. at pp. 119-20; 635-638.  Similarly, Amgen's 30(b)(6) designee did not identify any documents from the Proceedings at his deposition.

### D.     OBI's Extremely Limited Production of Pre-1999 Documents.

On May 28, 2004, OBI made its initial production of documents to plaintiffs.  Although all of plaintiffs' requests had sought responsive documents dating back to January 1, 1991, after

completing their initial review of OBI's production, plaintiffs were surprised to learn that OBI had failed to produce <u>any</u> OBI documents dated prior to 1998.  As a result, on July 22, 2004, plaintiffs' counsel immediately sent OBI's counsel a letter stating, that "although the relevant period of Plaintiffs' claims runs from 1991-present, OBI has produced very few documents created in 1998 and inexplicably has produced no documents created prior to 1998" and demanded that OBI immediately produce all responsive documents from 1991 to the present. (the "July 22 letter). A copy of the July 22 Letter is attached as Exhibit "E."

In response, defense counsel initially argued that plaintiffs had consented to OBI's limited production. Plaintiffs disputed that contention, and OBI, upon reconsideration, within two weeks produced an additional 794 pages that purportedly represented all "pre-1997 documents that were collected from OBP, as our collection did not exclude those [pre-1997] documents."  The majority of the documents were form contracts and sales representative reward incentive brochures.  Similarly, plaintiffs' counsel's review has determined that the production contains fewer than 300 documents for 1999.  By comparison, OBI's has produced over 58,000 pages of post-1999 documents, the majority of which were generated between the years 2000 and 2002.

OBI represented that the production of pre-1998 documents was limited because OBI had disposed of documents in compliance with its own record retention policies.  It is noteworthy that there have been government investigations into AWP in the late 1990s and lawsuits filed in connection with this case that were filed in 2000.

On July 18, 2005, Mr. Schau confirmed in an e-mail that although he was very familiar with the Proceedings, that he had never believed that it was necessary to search the files of the

Proceedings for relevant documents and that, in fact, no such search had been performed.   A copy of the July 18 Letter is attached as Exhibit "F."

**E.      Defense Counsel's  Misrepresentations Regarding The Proceedings.**

On more than one occasion, Mr. Schau represented to plaintiffs' counsel that the Proceedings were wholly irrelevant to plaintiffs' claims in the instant case.  For example, in July 2004, at the first day of the OBI 30(b)(6) deposition, Mr. Schau stated that he was intimately familiar with the litigation between OBI and Amgen, and represented to plaintiffs' counsel off the record that the litigation between Amgen and OBI was irrelevant to the instant case, had no connection whatsoever to AWP based reimbursement or to the Spread between reimbursement and acquisition cost.   Rather, according to Mr. Schau, the Proceedings dealt primarily with "Spillover issues" and the need to create a mechanism to compensate the parties for unintended Spillover sales.

On June 23, 2005, in light of the extremely limited pre-1998 production that has been received by plaintiffs to date, plaintiffs sent a letter to OBI's counsel, demanding the production of documents relating to any allegations in any action in which Amgen or OBI was a party or witness concerned AWP reimbursement or pricing and/or the marketing of the Spread (the "June 23 Letter").  A copy of the June 23 Letter is attached hereto as Exhibit G.  On June 24, 2005 (the "June 24 Letter"), Mr. Schau replied:

> I was intimately involved in that arbitration and I can assure you that Amgen's claim had nothing to do with AWP pricing or the "spread."   Indeed, because reimbursement for epoetin alfa under the ESRD program is fixed by statute, and is not based on AWP, neither Amgen nor OBI had an incentive to market their products to dialysis providers on the basis of AWP.

A copy of the June 24 Letter is attached hereto as Exhibit H.

On June 30, 2005, plaintiffs sent a letter to Mr. Schau requesting confirmation that Amgen has "made no allegations regarding the marketing, and/or promoting of Procrit based on a spread between acquisition cost and reimbursement in Amgen's reserved market in any litigation/arbitration/mediation or other legal proceeding from 1991 to the present."  (the "June 30 Letter").  A copy of the June 30 Letter is attached hereto as Exhibit I.  On July 1, 2005, Mr. Schau responded "Amgen did not make such allegations.  I contacted Amgen's counsel and was advised that Amgen also agrees that the above-quoted statement is accurate….Have a pleasant holiday weekend."  A copy of the July 1 Letter is attached hereto as Exhibit J.

### F.     Plaintiffs Simultaneously Seek The Same Documents And Materials From Amgen.

On March 31, 2004, plaintiffs propounded their Omnibus Discovery Requests on Track II defendant Amgen.  However, as with OBI, plaintiffs have not received responsive documents relating to the Proceedings.  On June 28, 2005, plaintiffs sent a letter to Amgen's counsel, Steven Barley, Esq., requesting that Amgen immediately produce:

> any and all documents, including, but not limited, to any affidavits, documents, deposition testimony and trial exhibits, produced and/or used by Amgen and/or Ortho Biotech ("OBI"), or any other third-party, in connection with any claims asserted in any legal proceeding including, but not limited to, court hearings, legislative hearings, mediations and/or arbitrations in which Amgen was a party or witness, regarding any allegations that OBI, or any party, intentionally promoted and/or marketed Procrit based on the spread between reimbursement and acquisition cost during the Relevant Time Period.

(the "June 28 Letter").  A copy of the June 28 Letter is attached hereto as Exhibit K.

Mr. Barley, in a letter dated June 29, 2005, replied that plaintiffs misunderstood Amgen's claim in its litigation with OBI and that the documents sought are not "relevant to this litigation.  Even if the documents were relevant and responsive, Amgen would not be in a position to produce the

10

documents you request in less than two weeks….Perhaps it would be best if you continue to deal with OBI's counsel on issues relating to OBI…"   A copy of the June 29 Letter is attached hereto as Exhibit L.

> **G.     On July 5, 2005, OBI's Counsel Reveals For The First Time**
> **That The Proceedings May Contain Relevant Documents.**

On July 5, 2005, during a conference call between plaintiffs' counsel – Allan Hoffman and Marc Edelson – and OBI's counsel – Andrew Schau, Erik Haas and Adeel Mangi – Mr. Schau, for the first time, confirmed that Amgen had "introduced evidence in legal proceedings to show that OBI promoted 'incentives' to customers to attract business away from Amgen." Plaintiffs memorialized this in a letter to Mr. Schau on July 6, 2005 ("July 6 Letter") and demanded that all responsive documents be produced from the proceedings.  A copy of the July 6 Letter is attached hereto as Exhibit M.  On July 8, 2005, Mr. Schau faxed his response to plaintiffs' counsel ("July 8 Letter"), which notably did not contest the accuracy of his admission nor attempt to correct it.  He did, however, refuse to produce any documents introduced or used in the Proceedings.  A copy of the July 8 Letter is attached hereto as Exhibit N.

> **G.     Plaintiffs Contact Amgen's Counsel on July 8th.**

After reviewing Mr. Schau's July 8 Letter, plaintiffs' counsel telephoned Amgen's counsel, Mr. Barley later that afternoon, and informed him of Mr. Schau's admission on the July 5th call and plaintiffs' intention to pursue OBI and Amgen for any documents introduced and/or used in those legal proceedings that are relevant to the instant case.  Mr. Barley responded that that he did not know whether that was true, that his firm had not represented Amgen in the Proceedings, and that he would have to look into it.   Amgen's counsel subsequently has

confirmed that Amgen has always maintained files of the Proceedings on site, but until recently had not searched the files for responsive documents.

**H.      OBI's Counsel Provides Further Confirmation On July 8th
            That The Amgen Proceedings Are Relevant To This Action.**

Later that day, Mr. Barley telephoned Mr. Schau, who then called to inform plaintiffs that he had either misspoken or had been misunderstood during the July 5th call.  Mr. Schau initially represented that there never were any "incentives" referenced in those matters.  However, when questioned as to whether it was now his position that that there was no evidence introduced by Amgen to show that OBI or its employees offered incentives such as rebates, discounts or any other remuneration to Amgen's customers to attract them to Procrit, he responded,  "What do you mean by incentives?…Are price lists evidence of incentives?"  Plaintiffs' counsel explained that they definitely could be incentives and asked whether Amgen believed they were and, if so, how Amgen tried to show that they were.

During that call, Mr. Schau further informed plaintiffs that Amgen asserted in the termination case that an OBI sales representative had promoted or offered Procrit based on rebates, discounts, etc. and that a wholesaler had been offering discounts and rebates to customers on behalf of OBI.

**I.      OBI Currently Is Reviewing Documents From The
            Amgen Proceedings But Continues To Cause Undue Delay.**

On July 12, 2005, plaintiffs noticed 30(b)(6) depositions of both Amgen and OBI seeking a designee most knowledgeable about the issues, claims and evidence used and/or introduced in the Proceedings.  Following the issuance of these Notices, OBI agreed to commence review of

the "enormous" Proceedings files for responsive documents, and the parties agreed to hold the 30(b)(6) deposition in abeyance pending production of responsive documents.

On July 18, 2005, Mr. Schau represented to plaintiffs that he had started "retrieving and reviewing OBI's documents and the hearing transcripts from the termination case."  See Exhibit F.  However, he also stated unilaterally, and in opposition to plaintiffs' demand, that he would only search for documents and testimony "relating to AWP or the marketing of the spread between AWP-based reimbursement and acquisition cost."    He added that his search under those terms was unlikely to be fruitful for plaintiffs and that he would not produce all marketing or sales materials.

In an e-mail dated July 22, 2005, plaintiffs formally responded that the search was unacceptably narrow and that plaintiffs have no choice but to file a motion to compel.  Mr. Schau responded that same day, stating, "Let's talk about it some more."  The e-mails of July 22, 2005 are attached hereto as Exhibit "O."

Independently, Mr. Schau represented to plaintiffs' counsel that at least one OBI witness, W. Thomas Amick, who was scheduled to be deposed on July 26, 2005, would be able to testify as to the issues and evidence that were introduced or raised in the termination case and other Proceedings.  In good faith, plaintiffs agreed to proceed with Mr. Amick's deposition in the absence of relevant documents from the Proceedings.  However, Mr. Amick, who admitted that he was deposed and testified in the Proceedings, did not recall specific details of the termination case, and therefore shed little light on the issue of relevant material used in the Proceedings.

As OBI continues its review of the Proceeding files, plaintiffs have sought numerous updates from OBI's counsel as to the status of the production.  On August 3, 2005, at the

deposition of Elaine Kling, Mr. Schau stated he would produce additional documents from the Proceedings during the week of August 8, 2005, but would not specify the volume of the production.  On August 15, 2005, OBI produced its first rolling production of 2084 pages and has failed to provide any assurance that plaintiffs will be allowed to take discovery beyond the current August 31, 2005 deadline in connection with the late production.

## III.   ARGUMENT

### A.   Plaintiffs Are Entitled To All Relevant Discovery Regarding The Sale And Marketing Of Procrit.

#### 1.   The Documents And Legal Materials That Plaintiffs Seek Are "Relevant."

OBI does not contend that any of the documents from the Proceedings are privileged. Rather, OBI refuses to produce promotional and marketing material that does not refer expressly to AWP or directly discuss reimbursement versus acquisition cost is based on the ground that any other documents are irrelevant to the instant action. OBI is mistaken.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for very liberal discovery, authorizing any party to "obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence" (emphasis added).   "A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."  *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658 (D. Kan. 2003).

Massachusetts district courts recognize the broad interpretation of this rule.  *See*, *Cabana v. Forcer*, 200 F.R.D. 9 (D.Mass. 2001) (quoting *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D.Mass. 1996) ("Under the liberal standard set forth in [26(b)(1)], 'information is discoverable if there is any possibility it might be relevant to the subject matter of the action.'") Moreover, courts routinely hold that documents produced or generated in prior legal proceedings and litigation are subject to the same broad discovery standards.  In *Snowden v. Connaught*, 137 F.R.D. 325 (D.Kan. 1991), plaintiffs in a products liability action concerning a vaccine, the court found that "it is possible that information which could be distilled from lawsuits instituted as long as 12 years ago, could prove highly relevant to issues in the instant case."  *Snowden* at 329-330.  *See also Poole v. Textron*, 192 F.R.D. 494 (D.Md. 2000) (imposing sanctions for defendants' failure to produce prior litigation materials involving same product.)

In the instant case, the documents that plaintiffs seek are relevant.  First, plaintiffs have requested documents from the Proceedings.  In December 2003, plaintiffs issued two sets of document requests that sought documents from any legal proceedings in which OBI was a party or witness that involved AWP reimbursement or a Spread between reimbursement and acquisition cost.  Plaintiffs also requested any legal materials that were used or introduced in those proceedings.  Indeed, OBI, in its January 20, 2004 response, agreed to produce relevant, responsive, non-privileged and non-public documents and material.   In April 2004, plaintiffs issued a 30(b)(6) Notice wherein plaintiffs further requested the identification of documents and materials from any legal proceedings regarding marketing or promoting a Spread between reimbursement and acquisition cost or whether other manufacturers believed OBI's conduct to be improper.

Second, marketing and sales materials used in the Proceedings are relevant.  The central issue in the instant litigation is defendants' use of inflated Average Wholesale Prices ("AWP") to market drugs to customers that are reimbursed based on AWP.  In the termination case, Amgen asserted that OBI was stealing market share in the dialysis sector.  The apparent method by which OBI achieved this was by offering rebates or price discounts to customers, thereby lowering customer acquisition cost.  Because Procrit and Epogen are the same substance and both drugs are reimbursed at the identical rate, an offer to lower the purchaser's acquisition cost would result in an overall increase in the Spread to customers.  Moreover, as OBI's documents and testimony show, at least some Procrit is reimbursed based on AWP in the dialysis sector.  Therefore, Procrit marketing and sales documents and accompanying testimony   is clearly relevant material.

Witness testimony and representations of OBI's counsel indicate that Amgen used or introduced evidence to show that OBI's sales representatives and at least one wholesaler (on behalf of or in cooperation with OBI)  offered greater discounts, rebates and/or lower prices to customers who used EPO for dialysis than Amgen.  For example, on August, 12, 2005, Carol Webb, OBI's President from 1994-2000, testified that her understanding of Amgen's claims were that OBI's sales representatives had improperly marketed Procrit to dialysis centers and hospitals with dialysis centers.   Any promotional, marketing and/or sales material used or introduced to support the assertions that OBI's sales representatives or third parties promoted Procrit based on lower acquisition costs via discounts or rebates or discounted price certainly falls within the liberal relevancy standards of Rule 26(b)(1) and should have been produced to plaintiffs.

16

Due to the importance of the proposed discovery in enabling plaintiffs to prosecute their case against OBI for the period 1991-1997, OBI cannot satisfy any of the exceptions under Rule 26.  Accordingly, plaintiffs' motion should be granted.

### 2.      OBI Purposefully Concealed And Withheld "Relevant" Material From Plaintiffs.

Throughout nearly the entire discovery period, OBI's counsel purposefully misled plaintiffs' counsel to believe that the Proceedings were irrelevant to plaintiffs' claims in the instant case.  In July 2004, at the first deposition of an OBI employee, OBI's counsel represented that the litigation between Amgen and OBI was irrelevant to the instant case, had no connection whatever to AWP based reimbursement nor to the Spread between reimbursement and acquisition cost.  According to Mr. Schau, the Proceedings involved an arbitration-ordered "Spillover Agreement" for allocating revenues between Amgen and OBI when the parties unintentionally sold EPO into each other's respective sector.  This representation was made on more than one occasion and was relied upon by plaintiffs' counsel during the course of discovery.  Unbeknownst to plaintiffs, OBI never even bothered to review the Proceeding files for relevant documents.

In the summer of 2005, after continually representing that the termination case had nothing to do with AWP or Spread between acquisition cost and reimbursement, Mr. Schau, more than two and a half years after propounding their document requests – and <u>only</u> seven weeks before the discovery period was scheduled to expire – unwittingly admitted during a conference call with plaintiffs' counsel that Amgen had asserted that OBI offered economic incentives to customers and potential customers in the dialysis sector.  In a subsequent phone conversation, Mr. Schau sought to take back what he had said on July 5th, but provided further

detail that Amgen accused OBI sales representatives and a wholesaler of offering rebates or other discounts to lower prices to customers and therefore a greater Spread between acquisition cost and reimbursement to customers.   Again, even though the majority of reimbursement in the dialysis sector is statutorily based, at least 5% of the reimbursement for Procrit in the dialysis sector is based on AWP.  Indeed, if not for Mr. Schau's admission of July 5, 2005, OBI would no doubt continue to deny the relevancy of every document and legal material used in the Proceedings.

**3.     By Withholding Documents Until The Final Weeks of Discovery, OBI Has Caused Substantial Prejudice To Plaintiffs.**

District courts routinely extend discovery deadlines where one party intentionally thwarts the other's ability to obtain clearly discoverable information.  For example, in *Castro v. New York*, 1995 WL 699730 (S.D.N.Y. 1995), the court extended the deadline to complete fact discovery "[i]n view of the delay in obtaining complete production of documents and the recent discovery that other [police] officers may have witnessed some of the events at issue in this case[.]"  *Id.* at *2.  *See also Koehler v. Bank of Bermuda, Ltd.*, 1997 WL 370791 (S.D.N.Y. 1997), *Beberaggi v. New York City Transit Authority*, 1994 WL 18556 (S.D.N.Y. 1994).

Here, the case for an extension is even more compelling than in *Castro*.  OBI's purposeful concealment and withholding of documents has severely prejudiced plaintiffs' ability to prosecute their case, particularly in light of OBI's paltry production of pre-1998 documents. More specifically, OBI has produced approximately 59,000 pages of documents for the period 1991 through the present.  The overwhelming number of documents that OBI produced to plaintiffs relate to the period between 2000 and 2002.  By comparison, OBI has merely produced 800 pages for the entire period of 1991-1997.

18

OBI's strategy of concealing and withholding relevant documents for two and a half years from plaintiffs, and not producing documents until the last two weeks of the discovery period causes severe prejudice to plaintiffs' ability to prosecute their case against OBI, particularly for the years 1991 through 1998.   The depositions of several members of OBI management involved in the termination case have already occurred prior to plaintiffs becoming aware of its significance.   In addition, any newly produced documents must be reviewed and then plaintiffs must determine whether there is a need for further depositions in connection with such documents.   Unlike the parties in *Castro*, who were engaged in good-faith discovery disputes, defendant's active misrepresentations are the direct cause of plaintiffs' inability to previously obtain the documents or seek court intervention at an earlier date.   Accordingly, plaintiffs' motion should be granted.

IV.      **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion To Compel The Johnson & Johnson Group To Produce Documents and for An Extension of Discovery should be granted.

Respectfully submitted,

Dated:  August 16, 2005           By:    /s/ Allan M. Hoffman
                                         Allan Hoffman
                                         Marc H. Edelson
                                         HOFFMAN & EDELSON, LLC
                                         45 West Court Street
                                         Doylestown, PA 18901
                                         Telephone: 215-230-8043
                                         Telecopier: 215-230-8735

                                         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I, Allan Hoffman, an attorney, caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE JOHNSON & JOHNSON GROUP TO PRODUCE DOCUMENTS AND FOR AN EXTENSION OF DISCOVERY** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 16, 2005, a copy to Verilaw Technologies for Posting and notification to all parties.

By:   /s/ Allan M. Hoffman
       Allan Hoffman
       HOFFMAN & EDELSON, LLC
       45 West Court Street
       Doylestown, PA 18901
       Telephone: 215-230-8043
       Telecopier: 215-230-8735

# EXHIBIT A



E-SERVED
12/03/03
06:17 PM ET
AWP-MDL No. 1456

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 |  |

### PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO AVENTIS, ABBOTT, AMGEN, BOEHRINGER, BMS, JOHNSON & JOHNSON, GSK, HOFFMAN, IMMUNEX AND SCHERING-PLOUGH AND INTERROGATORIES TO <u>ALL</u> DEFENDANTS SUBJECT TO DISCOVERY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the District Court for the District of Massachusetts, Plaintiffs hereby request that you produce the documents requested herein within thirty (30) days.

## I.    DEFINITIONS

1.    "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof.  This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any



non-conforming notes or other markings.  Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

  2.  "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

  3.  The term "Defendant" refers to any of the Defendants to whom this is directed, its officers, directors, affiliates, employees, representatives and agents (whether actual, apparent or otherwise).



4.      "You" or "Your" means the Defendant responding to these Requests and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.

5.      "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (governmental or private), and any other form of business, governmental or juridical person or legal entity.

6.      "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

7.      "Meeting" means any discussion between two or more persons either in person or telephonically.

8.      "Communication" and "communications" are used in a comprehensive sense, and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more persons or entities including, but not limited to, writings, documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by computer or otherwise.

9.      "AWP" means the Average Wholesale Price reported to and/or reported by an industry trade publication.

10.     "AWPID" means any of the drugs identified in Appendix A.

11.     "Covered Drugs" means pharmaceuticals that are reimbursed under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et. seq.*



12.     "PBM" refers to a Pharmacy Benefit Manager.

13.     "Medicare," "Medicare Program" or "Medicare Part B" means the government reimbursement system for prescription pharmaceuticals under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et. seq.*

14.     "Government Investigation" refers to any ongoing or closed investigation conducted by the Commerce, Energy and/or Ways and Means Committees of the United States Congress, the United States Department of Justice, the United States General Accounting Office, Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Home Services, or any other federal, state or local governmental entity without regard to time period.

## II.     RULES OF CONSTRUCTION

1.     All/Each – The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.     And/Or – The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.     The use of the singular form of any word shall include the plural and vice versa.

4.     The masculine gender includes the feminine.

## III.     INSTRUCTIONS

1.     A document shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or public or private entity having possession



or custody thereof. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, or has been lost, discarded or destroyed, said document shall be identified as completely as possible including, but not limited to, the following information:

    (a)    the date of disposal or disposition from your possession, custody or control;

    (b)    the manner of disposal or disposition from your possession, custody or control;

    (c)    the reason for disposal or disposition from your possession, custody or control;

    (d)    the person authorizing disposal or disposition from your possession, custody or control;

    (e)    the document's current or last known custodian;

    (f)    the circumstances surrounding the document's disposition from your possession, custody or control;

    (g)    the generic category of the document, *e.g.*, memo, letter, computer print-out, etc.;

    (h)    the type(s) of information contained in the document; and

    (i)    the identity of all persons having knowledge or who had knowledge of the contents of the document.

    2.    Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those which otherwise came into existence at anytime during the relevant period described herein.



3.    (a)    Where an objection is made to any document request under Fed. R. Civ. P. 34, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

(b)    Where a claim of privilege is asserted in objecting to any document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

(i)    the attorney asserting the privilege shall in the objection to the document demand, or sub-part thereof, identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

(ii)    the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A)    for documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; and, (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;

(B)    for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and, (3) the general subject matter of the communication.



4.      Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectional subject matter which is relevant and material to a request must be produced, but that portion of the document for which the objection is asserted may be withheld or redacted provided that the above-requested information is furnished.

5.      This request is continuing and all documents coming into your possession, custody or control which you would have been required to produce had they been available at an earlier time shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

6.      Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Redactions should be included on the privilege log described in Instruction 3.

7.      The fact that a document is produced by one defendant does not relieve any other defendant of the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

8.      In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

9.      All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.



10.     Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

11.     Documents attached to each other should not be separated.

12.     Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

### IV.     RELEVANT TIME PERIOD

The relevant period of these document requests, unless otherwise indicated, shall be from January 1, 1991, to the date of production and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

### V.     REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

All documents produced by you, whether voluntarily or involuntary, in any governmental investigation or inquiry related to the use of AWP in Medicare or Medicaid reimbursement.

RESPONSE:



REQUEST FOR PRODUCTION NO. 2:

All documents received from or provided to any trade association (such as the Pharmaceutical Research and Manufacturers of America), and any of its organizational subcommittees, including meeting agendas and minutes, related to (i) any Covered Drug; (ii) Medicare; (iii) the AWP for Covered Drugs; (iv) publications identified in Health Care Financing Administration Program Memorandum AB-99-63, including the *Red Book*, *Blue Book*, and *Medispan* ("pharmaceutical industry publications"); or (v) the Government Investigation, for the Relevant Time Period.

RESPONSE:

REQUEST FOR PRODUCTION NO. 3:

All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegation that you or any other pharmaceutical manufacturer overstated, misstated, or otherwise manipulated the AWP for any AWPID for the Relevant Time Period.

RESPONSE:



**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to any understanding or agreement between you and any other pharmaceutical company regarding the AWP, prices, pricing discounts, rebates, bids, incentives, penalties, or volumes for any AWPID during the Relevant Time Period.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 5:**

All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegation that you overstated, misstated or otherwise manipulated the AWP for any AWPID during the Relevant Time Period.

RESPONSE:

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to any actual, proposed, or prospective price announcements, price changes, discount programs, rebates, incentives, penalties, or price lists issued by you for each AWPID, including the methodology and procedures used by you in considering whether to increase or decrease prices during the Relevant Time Period.

RESPONSE:



REQUEST FOR PRODUCTION NO. 7:

All documents evidencing any "credit memos" or credit extended to hospitals, GPOs or other purchasers of AWPIDs, including but not limited to credit memos or credit issued via a wholesaler to a purchaser, and/or credit for the purpose of "returned goods."

RESPONSE:

REQUEST FOR PRODUCTION NO. 8:

All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or can be given to any hospital or purchaser of AWPIDs.

RESPONSE:

REQUEST FOR PRODUCTION NO. 9:

Any documents relating to the repackaging or relabeling of any AWPID including but not limited to:

(a)      documents indicating that any AWPID with a specific NDC has been repackaged and is being sold with a different NDC, but is the same drug; and



(b)      For any repackaged AWPID, documents evidencing the AWP of the original AWPID and of the repackaged AWPID, and documents evidencing the bases, methods and/or reasons for any change in the AWP.

RESPONSE:

REQUEST FOR PRODUCTION NO. 10:

Documents for the Relevant Time Period evidencing the price any AWPID sold to:

(a)      the VA;

(b)      any wholesaler;

(c)      your top ten purchasers/retailers of each AWPID; *e.g.*, Walgreens, RiteAid, etc.;

(d)      the highest price paid for any AWPID; and for the lowest price paid for any AWPID by any purchaser.

RESPONSE:

REQUEST FOR PRODUCTION NO. 11:

All documents discussing how your company or any other company defines AWP.

RESPONSE:



REQUEST FOR PRODUCTION NO. 12:

All documents discussing how AWP has been or is currently calculated for any AWPID.

RESPONSE:

REQUEST FOR PRODUCTION NO. 13:

All documents evidencing the names and addresses of employees with knowledge of:

(a)    the provision of free samples; unrestricted educational grants; rebates, and credit memos to providers, PBMs, wholesalers, distributors, or purchasers of AWPID;

(b)    the amount of profit a health care provider could achieve due to the spread on an AWPID; and

(c)    marketing the spread of any AWPID.

RESPONSE:

REQUEST FOR PRODUCTION NO. 14:

All documents relating to any actual, proposed, or prospective AWP announcements, changes, discount programs, rebates, incentives, penalties, or lists issued by you for each

PLAINTIFFS' REQUEST FOR PRODUCTION        - 13 -
OF DOCUMENTS AND INTERROGATORIES

1534.16 0011 DSC.DOC

AWPID or brand name drug, including the methodology and procedures used by you in considering whether to increase or decrease the AWP of each AWPID or brand name drug during the Relevant Time Period.

RESPONSE:

REQUEST FOR PRODUCTION NO. 15:

All documents relating to the use or provision of free samples, educational grants, marketing grants, volume discounts, rebates, credit memos, payment for specific data gathering, financial incentive, or other incentive to induce purchases of any AWPID during the Relevant Time Period.

RESPONSE:

REQUEST FOR PRODUCTION NO. 16:

All documents relating to your role in the publication, appearance, or advertisement of the AWP of each AWPID in pharmaceutical-related industry publications during the Relevant Time Period.

RESPONSE:



REQUEST FOR PRODUCTION NO. 17:

All documents, including organizational charts, that describe or list the individuals responsible for determining the AWP for each AWPID drug during the Relevant Time Period.

RESPONSE:

REQUEST FOR PRODUCTION NO. 18:

For each AWPID, documents sufficient to identify during the Relevant Time Period:

      (a)    The published AWP;

      (b)    AMP (average manufacturer price);

      (c)    ASP (Actual sales price, *i.e.*, the price after discounts);

      (d)    EAC (estimated acquisition cost);

      (e)    Earned margin (difference between AWP and actual product cost);

      (f)    All documents that relate to discussions of spreads or reimbursement profiles, using AWP as an incentive; and

      (g)    Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates, discounts, allowances, credits and any other incentives provided to third parties.

RESPONSE:



REQUEST FOR PRODUCTION NO. 19:

For each AWPID, sales representatives' field notes of the top ten sales representatives for each AWPID.

RESPONSE:

REQUEST FOR PRODUCTION NO. 20:

Any computer programs, printouts, or other documents provided to doctors which discuss using the spread or the benefits of the spread.

RESPONSE:

REQUEST FOR PRODUCTION NO. 21:

Any documents discussing the amount of profit a provider could achieve due to the spread on an AWPID.

RESPONSE:



REQUEST FOR PRODUCTION NO. 22:

Any sales and marketing materials comparing the costs and spread of an AWPID you manufactured with those of a competitive drug.

RESPONSE:

REQUEST FOR PRODUCTION NO. 23:

All documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool, on any AWPID was discussed.

RESPONSE:

REQUEST FOR PRODUCTION NO. 24:

All documents accounting for the free samples given for any AWPID.

RESPONSE:

REQUEST FOR PRODUCTION NO. 25:

All documents evidencing any grants or credits provided to any hospital or provider in return for use of an AWPID.



RESPONSE:

REQUEST FOR PRODUCTION NO. 26:

Complete contact information for all personnel with sales responsibility for AWPIDs.

Include Sales Representatives, District Managers, Regional Managers, and National Sales

Manager, and include home address and telephone number.

RESPONSE:

REQUEST FOR PRODUCTION NO. 27:

Complete contact information for all personnel with responsibility for marketing and

promotional activity for AWPIDs.  Include Marketing Department Product or Brand Managers,

and members of Marketing Advisory Boards, and include home address and telephone number.

RESPONSE:

REQUEST FOR PRODUCTION NO. 28:

A list of all national level sales awards available for each AWPID.



RESPONSE:


REQUEST FOR PRODUCTION NO. 29:

Quarterly, semi-annual and annual business plans for each winner of the top national

sales award winners and direct supervisors.

RESPONSE:


REQUEST FOR PRODUCTION NO. 30:

All Unrestricted Educational Grant Requests provided as a direct or indirect result of

purchases of an AWPID.

RESPONSE:


REQUEST FOR PRODUCTION NO. 31:

Copies of all Unrestricted Educational Grants provided to any purchasing customer of an

AWPID during the Relevant Time Period.



RESPONSE:

REQUEST FOR PRODUCTION NO. 32:

All documents relating to any communications, including meetings, between you and any other pharmaceutical company regarding:

        (a)     any actual, proposed or prospective price announcements, price changes, or price lists for any Covered Drug or brand name drug;

        (b)     any actual, proposed, or prospective pricing methods, practices, policies or strategies for any Covered Drug or brand name drug;

        (c)     any actual, proposed, or prospective marketing methods, practices, policies, or strategies for any Covered Drug or brand name drug;

        (d)     territories or markets for sales or potential sales for any Covered Drug or brand name drug;

        (e)     Medicare Part B and its policy of reimbursement for any Covered Drug;

        (f)     the AWP of any AWPID;

        (g)     pharmaceutical industry publications; and

        (h)     market conditions or market shares.

RESPONSE:



REQUEST FOR PRODUCTION NO. 33:

All data maintained in electronic form relating to the pricing, cost data and sales data, including the AWP, of each AWPID in the United States for the Relevant Time Period.  Produce such data in electronic form; Plaintiffs also request that you produce all documents or instructions necessary to access, process, read and use the electronic data.

RESPONSE:

REQUEST FOR PRODUCTION NO. 34:

All data maintained in electronic form relating to customer invoices for each AWPID, including, but not limited to, customer names and addresses, purchase volume, prices, and discounts for the Relevant Time Period.  Produce such data in electronic form and include all documents and/or instructions necessary to access, process, read and use the electronic data.

RESPONSE:

REQUEST FOR PRODUCTION NO. 35:

All documents sufficient to identify your distribution policies and procedures in the U.S. pharmaceuticals market for every AWPID during the Relevant Time Period.

RESPONSE:



REQUEST FOR PRODUCTION NO. 36:

All documents relating to all actual, proposed, or prospective marketing methods, practices, policies, or strategies for each AWPID during the Relevant Time Period.

RESPONSE:

REQUEST FOR PRODUCTION NO. 37:

All documents relating to any communication with doctors, other health care professionals, or any person or entity providing health care services to seek Medicare reimbursement or consumer co-payment for free samples of each Covered Drug or brand name drug you provided to them during the Relevant Time Period.

RESPONSE:

REQUEST FOR PRODUCTION NO. 38:

All marketing and sales materials which compare the AWP, price, market share, rebates, pricing discounts, incentives, or penalties for each AWPID with the AWP of any other pharmaceutical during the Relevant Time Period.



RESPONSE:

REQUEST FOR PRODUCTION NO. 39:

All documents sufficient to identify your policy or practice of document retention, destruction, disposal or preservation for the time period 1991 to the present.

RESPONSE:

## VI.    INTERROGATORIES

INTERROGATORY NO. 1:

For the period beginning January 1, 1998, and for each subsequent calendar quarter, and with respect to each of the AWPIDs, identify the following information:

        a.      the total volume of sales, indicating both the number of units and net revenue;

        b.      the "average wholesale price" (AWP), as reported in Medical Economics *Red Book*, *First Data Bank* and/or *MediSpan*, and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of AWP, whether higher or lower, (ii) at more than five percent above AWP, and (iii) at more than five percent below AWP;

        c.      the " average manufacturer price" ("AMP"), as reported to the Secretary of Health and Human Services, pursuant to the requirements of Social Security Act ("SSA")



§ 1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at AMP and up to and including 10% above AMP, and less than or equal to 10% below AMP (broken out separately), (ii) at greater than 10% above AMP but less than or equal to 20% above AMP, and at greater than 10% below AMP but less than or equal to 20% below AMP (broken out separately), (iii) at greater than 20% above AMP but less than or equal to 30% above AMP, and at greater than 20% below AMP but less than or equal to 30% below AMP (broken out separately), (iv) at greater than 30% above AMP but less than or equal to 40% above AMP, and at greater than 30% below AMP but less than or equal to 40% below AMP (broken out separately), and (v) at greater than 40% above AMP but less than or equal to 50% above AMP, and at greater than 40% below AMP but less than or equal to 50% below AMP (broken out separately);

      d.     the "wholesale acquisition cost" ("WAC"), as reported by Medical Economics *Red Book*, *First Data Bank* and/or *MediSpan* or any other such entity that gathers and publishes "wholesale acquisition costs," and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of WAC, whether higher or lower, (ii) at more than five percent above WAC, and (iii) at more than five percent below WAC;

      e.     the "best price," as reported to the Secretary of Health and Human Services, pursuant to the requirements of SSA § 1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of the best price, whether higher or lower, (ii) at more than five percent above best price, and (iii) at more than five percent below best price (if applicable);

      f.     the total volume of sales, in both the number of units and net revenue, exempted from the calculation of the Medicaid best price as "merely nominal in amount," pursuant to the requirements of SSA § 1927(c)(1)(C)(ii)(III);



Please also produce the contract or agreement governing your relationship with that purchaser for each relevant quarter.

ANSWER:

INTERROGATORY NO. 4:

For the period of January 1, 1998, to the present, and for each subject drug, please provide a list of all purchasers who received the subject drug at a price exempted from the calculation of the Medicaid "best price," pursuant to the requirements of SSA _1927(c)(1)(C)(ii)(III), and, for each such purchaser, indicate the volume of the AWPID received by calendar quarter, in units, and the range of prices at which such purchaser received the subject drug for that quarter.

ANSWER:

INTERROGATORY NO. 5:

With respect to each AWPID, please describe how you calculate the prices and/or data reported to Medical Economics *Red Book*, *First Data Bank* or *MediSpan* or any other such entity that gathers and publishes either "average wholesale prices" or "wholesale acquisition costs."



ANSWER:

DATED:  December 3, 2003

Respectfully submitted,

By _____
   Thomas M. Sobol
   Edward Notargiacomo
   Hagens Berman LLP
   225 Franklin Street, 26th Floor
   Boston, MA  02110
   Telephone: (617) 482-3700
   Facsimile: (617) 482-3003

   Steve W. Berman
   Sean R. Matt
   Hagens Berman LLP
   1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
   Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

   *LIAISON AND CO-LEAD COUNSEL*

   Eugene A. Spector
   Jeffrey Kodroff
   Spector, Roseman & Kodroff, P.C.
   1818 Market Street, Suite 2500
   Philadelphia, PA  19103
   Telephone: (215) 496-0300
   Facsimile: (215) 496-6611

   Marc H. Edelson
   Hoffman & Edelson
   45 West Court Street
   Doylestown, PA  18901
   Telephone: (215) 230-8043
   Facsimile: (215) 230-8735



Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel Heins
Brian Williams
Heins, Mills & Olson, P.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

CO-LEAD COUNSEL

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

PLAINTIFFS LEAD COUNSEL COMMITTEE

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Michael J. Flannery
Carey & Danis, LLC
676 North Michigan Ave., Suite 3110
Chicago, IL 60611
Tel: (312) 649-0100
Fax: (312) 664-7731



Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Ave. N.E., Suite 300
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL  33134
Tel:  (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA  92101
Tel:  (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL  60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard, Suite 1650
Los Angeles, CA 90017-2666
Tel:  (213) 895-6500
Fax:  (213) 895-6161



Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd Floor
Philadelphia, PA  19102
Tel:  (215) 790-7300
Fax:  (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez & Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA  19103
Tel:  (215) 731-9004
Fax:  (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
Beaumont, TX  77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
Texarkana, AR/TX  75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

Stephen C. Richman, Esq.
Markowitz & Richman
121 South Broad Street
1100 North America Building
Philadelphia, PA  19107
Telephone:  (215) 875-3100



## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing Plaintiffs' Request for Production of Documents to Aventis, Abott, Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough and Interrogatories to <u>All</u> Defendants Subject to Discovery to be served on all counsel of record electronically on December 3, 2003, pursuant to Section D of Case Management Order No. 2.

Steve W. Berman, Esq.
**HAGENS BERMAN LLP**
1301 5th Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

# EXHIBIT B

WILLIAM F. CAVANAUGH, JR.
ANDREW D. SCHAU
ERIK HAAS
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036-6710
(212) 336-2000
*ATTORNEYS FOR DEFENDANT ORTHO BIOTECH PRODUCTS, L.P.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris |

**ORTHO BIOTECH'S RESPONSES TO PLAINTIFFS' REQUESTS**
**FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the

Local Rules of the District Court for the District of Massachusetts, Defendant Ortho Biotech

Products, L.P. ("OBP"), by its attorneys Patterson, Belknap, Webb & Tyler LLP, makes the

following responses to Plaintiffs' Requests for Production of Documents to Aventis, Abbott,

Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough

dated December 3, 2003 (the "Requests").

**PRELIMINARY STATEMENT**

In accordance with Case Management Order ("CMO") Nos. 5 and 7 and the

Court's November 21, 2003 bench ruling, OBP states as follows:



999936v4

1.      Plaintiffs have addressed these Requests to Defendant "Johnson & Johnson." However, only two drugs currently subject to discovery are manufactured or distributed by the "Johnson & Johnson Group": Remicade, a Centocor drug, and Procrit, an OBP drug. See Letter to D. Scott Wise from Steve W. Berman dated November 25, 2003 available on drug. Veriaw. Pursuant to an agreement with Plaintiffs' counsel John Macoretta, Centocor is not required to respond to these requests, having already responded on September 9, 2003 to Plaintiffs' Request for Documents dated June 19, 2003. Accordingly, by agreement of the parties, this response is made on behalf of OBP only.

2.      By responding to these Requests, OBP does not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege or admissibility as evidence, for any purpose, of any documents or information produced in response to the Requests; (b) the right to object on any ground to the use of the documents or information produced in response to the Requests at any hearing or trial; or (c) the right to object on any ground at any time to a demand for further responses to the Requests.

3.      By responding that it will produce documents responsive to a particular Request, OBP does not assert that it has responsive materials or that such materials exist, only that it will conduct a reasonable search and produce responsive, non-privileged documents. No objection made herein, or lack thereof, is an admission by OBP as to the existence or non-existence of any documents.

4.      The responses made herein are based on OBP's investigation to date of those sources within its control where it reasonably believes responsive documents or



2

information may exist. OBP reserves the right to amend or supplement these responses in

accordance with the applicable rules and Court orders.

## GENERAL OBJECTIONS AND RESERVATIONS

1.      OBP objects to the definitions of "Document(s)," "All documents," "Defendant,"

"You," "Your," "Communication," and "Person" as set forth in Definition Nos. 1-5 and 8, and to

Instruction Nos. 1, 3-5, 8-12, and their various subsections, to the extent they seek to impose

discovery obligations that are broader than, or inconsistent with, OBP's obligations under the

Federal Rules of Civil Procedure and this Court's local rules. Moreover, OBP objects to these

Definitions and Instructions as overly broad, unduly burdensome, and vague because they seek

the production of documents not in the control or custody of OBP, require OBP to search the

files of third parties, and require OBP to speculate concerning the identities of individuals and

business entities included in these definitions. For the purposes of responding to the Requests,

OBP shall construe these terms to call for the production of documents within the possession,

custody and control of OBP headquarters.

2.      OBP objects to the definitions of "AWPID" and "Covered Drugs" as set forth in

Definition Nos. 10 and 11 to the extent they seek information regarding drugs other than Procrit.

Additionally, OBP objects to the use of the acronym "AWPID," which is defined in the

Amended Master Consolidated Class Action Complaint ("Amended Complaint") as "AWP

Inflated Drugs," and, therefore, lacks factual foundation and depends upon a legal conclusion.

See Amended Complaint ¶ 11.

3.      OBP objects to the definition of "Government Investigation" as set forth in

Definition No. 14 on the grounds that it is overly broad because it is unlimited in time frame.

This definition is also vague as to its reference to investigations by the "Department of Health

3

9593364v4



4.

and Home Services," and "Office of the United States Inspector General" because no such
governmental departments exist. Notwithstanding these objections, for purposes of these
Requests, OBP defines "government investigation" to include only those areas of inquiry by the
Commerce, Energy, and/or Ways and Means Committees of the United States House of
Representatives, or subcommittees thereof, the United States Department of Justice, the United
States General Accounting Office, the Federal Trade Commission, and the United States
Department of Health and Human Services, if any, relating to Procrit and the use of AWP in
Medicare (and/or Medicaid) reimbursement from January 1, 1997 to September 6, 2002.

4.      OBP objects to Instruction No. 2 to the extent it calls for documents generated or
assembled either prior to January 1, 1997 or after September 6, 2002 on the ground that such
documents are neither relevant to the subject matter of the pending action nor reasonably
calculated to lead to the discovery of admissible evidence.

5.      OBP objects to all requests that call for the production of documents protected
from disclosure by the attorney-client privilege, the work-product doctrine, or any other
applicable privilege or protection.

6.      OBP objects to Instruction No. 9 to the extent it demands that all documents be
produced in the original file folders, envelopes, or other containers in which the documents are
kept by OBP. OBP will use reasonable efforts to produce copies of all labels or other identifying
marks on such original file folders, envelopes or other containers.

7.      OBP objects to Instruction No. 12 to the extent it demands that OBP produce
documents that "explain" responsive documents on the ground that such demand is vague and
ambiguous, calls for a subjective determination and is unduly burdensome.



9593364

8.      OBP objects to the Requests to the extent that they are vague and ambiguous and necessarily require interpretation by OBP in providing responses thereto. Such interpretation by OBP may, in some or all cases, be different from that which Plaintiffs intended. OBP hereby puts Plaintiffs on notice that such interpretation by OBP has necessarily taken place in providing responses to the Requests herein as a result of Plaintiffs' imprecise and ambiguous Requests.

9.      The foregoing general objections apply to each of Plaintiffs' requests for documents, in addition to any specific objections described below.

**SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS**

**Request No. 1**      All documents produced by you, whether voluntarily or involuntary, in any governmental investigation or inquiry related to the use of AWP in Medicare or Medicaid reimbursement.

**Response to Request No. 1**

OBP objects to this request as overly broad and unduly burdensome to the extent that it calls for the production of documents that have not already been produced under CMO Nos. 5 and 7. OBP further objects to this request as vague and lacking definition as to "inquiry."

Subject to the foregoing, the Preliminary Statement, and the General Objections, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 2**      All documents received from or provided to any trade association (such as the Pharmaceutical Research and Manufacturers of America), and any of its organizational subcommittees, including meeting agendas and minutes, related to (i) any Covered Drug; (ii) Medicare; (iii) the AWP for Covered Drugs; (iv) publications identified in Health Care Financing Administration Program Memorandum AB-99-63, including the *Red Book, Blue Book,* and *Medispan* ("pharmaceutical industry publications"); or (v) the Government Investigation, for the Relevant Time Period.

**Response to Request No. 2**

OBP objects to this request as overly broad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant information to the extent it seeks "all documents" related to "any Covered Drug," "Medicare,"

5


E-SERVED
01/20/04
12:15 PM ET
MDL NO. 1456

13

**Response to Request No. 18**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "documents sufficient to identify ... [a]ll documents that relate to discussions" of "spreads" or reimbursement profiles, using AWP as an incentive. OBP further objects to this request as vague to the extent it seeks documents concerning "using AWP as an incentive."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine the specified prices for Procrit, and documents that discuss the "spread" as an incentive to purchase Procrit or that concern the use of AWP as an incentive, if any exist.

**Request No. 19**        For each AWPID, sales representatives' field notes of the top ten sales representatives for each AWPID.

**Response to Request No. 19**

OBP objects to this request as vague and ambiguous, overly broad and unduly burdensome to the extent it seeks "sales representatives' field notes of the top ten sales representatives." OBP further objects that the term "field notes" is vague and ambiguous, and the term "top ten sales representatives" is vague and ambiguous to the extent it does not state any criteria for defining "top ten."

**Request No. 20**        Any computer programs, printouts, or other documents provided to doctors which discuss using the spread or the benefits of the spread.

**Response to Request No. 20**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny ... documents provided to doctors which discuss using the spread or the benefits of the spread."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.



9

5593369v4

the "AWP for Covered Drugs," "pharmaceutical industry publications," and the "Government Investigation." OBP further objects this request as vague to the extent it seeks documents concerning any "trade association" and "the Government Investigation."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist, received from or provided to trade associations concerning Procrit's AWP, including documents regarding government investigations or the reporting of Procrit's AWP in pharmaceutical industry publications.

**Request No. 3**    All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegation that you or any other pharmaceutical manufacturer overstated, misstated, or otherwise manipulated the AWP for any AWPID for the Relevant Time Period.

**Response to Request No. 3**

OBP objects to this request as overly broad and unduly burdensome to the extent it seeks "[all documents]" relating to any legal proceeding. OBP further objects to this request to the extent it seeks documents concerning any proceeding transferred to this action, captioned *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, or to the extent it seeks publicly available documentation.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive, non-privileged documents relating to legal proceedings and concerning the allegations in the Amended Complaint that OBP overstated, misstated, or otherwise manipulated Procrit's AWP, if any exist.

**Request No. 4**    All documents relating to any understanding or agreement between you and any other pharmaceutical company regarding the AWP, prices, pricing



9593264

7

discounts, rebates, bids, incentives, penalties, or volumes for any AWPID during the Relevant Time Period.

**Response to Request No. 4**

OBP objects to this request for documents as vague, overly broad and unduly burdensome, and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant information to the extent it seeks "[a]ll documents" relating to "any understanding or agreement."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents relating to any understanding or agreement with other drug manufacturers pertaining to setting the AWP, the "spread" or any of the purported collusive arrangements alleged in the Amended Complaint, if any exist.

**Request No. 5**    All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegation that you overstated, misstated or otherwise manipulated the AWP for any AWPID during the Relevant Time Period.

**Response to Request No. 5**

OBP objects to this request as overly broad to the extent it seeks "[a]ll" specified affidavits, declarations, depositions, or other written statements. OBP further objects to this request to the extent it seeks documents covered by the attorney-client privilege, work-product doctrine or other applicable privilege or protection. OBP also objects to this request as duplicative of Request No. 3.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 6**    All documents relating to any actual, proposed, or prospective price announcements, changes, discount programs, rebates, incentives, penalties, or


SERVED
11/20/04
12:15 PM ET
MDL NO. 1456

9593360v4

price lists issued by you for each AWPID, including the methodology and procedures used by you in considering whether to increase or decrease prices during the Relevant Time Period.

**Response to Request No. 6**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent that it seeks "[a]ll documents" regarding "any actual, proposed, or prospective price

announcements, price change, discount programs, rebates, incentives, penalties, or price lists."

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist,

concerning changes in Procrit's AWP or WAC, and documents sufficient to determine any

discounts, rebates, incentives or penalties concerning Procrit.

**Request No. 7**    All documents evidencing any "credit memos" or credit

extended to hospitals, GPOs or other purchasers of AWPIDs, including but not limited to credit

memos or credit issued via a wholesale to a purchaser, and/or credit for the purpose of "returned

goods."

**Response to Request No. 7**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it calls for "[a]ll documents" related to "credit memos" or "credit extended."

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to

determine any credit extended by OBP to purchasers of Procrit.

**Request No. 8**    All documents setting forth the circumstances in which

credit against the purchase of AWPIDs was or can be given to any hospital or purchaser of

AWPIDs.

**Response to Request No. 8**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it calls for "[a]ll documents" setting forth the circumstances in which credit was or can be

given.


E-SERVED
10/20/04
12:15 PM ET
ANF-MDL NO. 1456

6

9593360v4

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to

show OBP's protocol for granting credit to purchasers of Procrit, if any exist.

**Request No. 9**        Any documents relating to the repackaging or relabeling of

any AWPID including but not limited to: (a) documents indicating that any AWPID with a

specific NDC has been repackaged and is being sold with a different NDC, but is the same drug;

and (b) For any repackaged AWPID, documents evidencing the AWP of the original AWPID

and of the repackaged AWPID, and documents evidencing the bases, methods and/or reasons for

any change in the AWP.

**Response to Request No. 9**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it seeks "[a]ny documents" relating to purported repackaging or relabeling. OBP further

objects to this request as calling for the production of documents that are not relevant and not

reasonably calculated to lead to the discovery of relevant information.

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 10**        Documents for the Relevant Time Period evidencing the

price of any AWPID sold to: (a) the VA; (b) any wholesaler; (c) your top ten purchasers/retailers

of each AWPID; e.g., Walgreens, RiteAid, etc.; (d) the highest price paid for that AWPID; and

for the lowest price paid for any AWPID by any purchaser.

**Response to Request No. 10**

OBP objects to this request as overly broad and unduly burdensome to the extent

it seeks all documents evidencing the price of Procrit.

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to

determine the price at which OBP sold Procrit.



9593369v4

10

**Request No. 11**    All documents discussing how your company or any other company defines AWP.

**Response to Request No. 11**

OBP objects to this request as overly broad and unduly burdensome to the extent it purports to require OBP to locate and produce documents relating to how "any other company" defines AWP."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 12**    All documents discussing how AWP has been or is currently calculated for any AWPID.

**Response to Request No. 12**

OBP objects to this request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents" discussing how AWP has been or is currently calculated.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 13**    All documents evidencing the names and addresses of employees with knowledge of: (a) the provision of free samples; unrestricted educational grants; rebates, and credit memos to providers, PBMs, wholesalers, distributors, or purchasers of AWPID; (b) the amount of profit a health care provider could achieve due to the spread on an AWPID; and (c) marketing the spread of any AWPID.

**Response to Request No. 13**

OBP objects to this request as vague, overly broad, unduly burdensome and calling for the production of documents that are neither relevant nor reasonably calculated to lead to the production of relevant information to the extent it calls for "[a]ll documents evidencing the names and addresses of employees" with knowledge of the enumerated categories.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts and



9593364

11

sales force rosters for employees with responsibilities concerning Procrit pricing, sales or

marketing.

**Request No. 14**   All documents relating to any actual, proposed, or prospective AWP announcements, changes, discount programs, rebates, incentives, penalties, or lists issued by you for each AWPID or brand name drug, including the methodology and procedures used by you in considering whether to increase or decrease the AWP of each AWPID or brand name drug during the Relevant Time Period.

**Response to Request No. 14**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent that it seeks "[a]ll documents" regarding "any actual, proposed, or prospective AWP

announcements, price changes, discount programs, rebates, incentives, penalties, or lists." OBP

further objects to this request as duplicative of Request No. 6.

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents, if any,

concerning any change in Procrit's AWP or WAC, and documents sufficient to determine any

discounts, rebates, incentives or penalties concerning Procrit.

**Request No. 15**   All documents relating to the use or provision of free samples, educational grants, marketing grants, volume discounts, rebates, credit memos, payment for specific data gathering, financial incentive, or other incentive to induce purchases of any AWPID during the Relevant Time Period.

**Response to Request No. 15**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it seeks "[a]ll documents" relating to the use or provision of incentives.

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to

determine:  the incentives OBP offered on Procrit, if any; free samples provided by OBP other



9593364v4

than free product provided to indigent patients through patient assistance programs; and the

educational grants or marketing grants OBP offered.

**Request No. 16** All documents relating to your role in the publication, appearance, or advertisement of the AWP of each AWPID in pharmaceutical-related industry publications during the Relevant Time Period.

**Response to Request No. 16**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it calls for "[a]ll documents" relating to "your role" in the publication, appearance or advertisements in "pharmaceutical-related industry publications."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 17** All documents, including organizational charts that describe or list the individuals responsible for determining the AWP for each AWPID drug during the Relevant Time Period.

**Response to Request No. 17**

OBP objects to this request as overly broad, lacking foundation, and unduly burdensome to the extent it seeks "[a]ll documents ... that describe or list the individuals" responsible for determining AWP.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts.

**Request No. 18** For each AWPID, documents sufficient to identify during the Relevant Time Period: (a) The published AWP; (b) AMP (average manufacturer price); (c) ASP (Actual sales price, i.e., the price after discounts); (d) EAC (estimated acquisition cost); (e) Earned margin (difference between AWP and actual product cost); (f) All documents that relate to discussions of spreads or reimbursement profiles, using AWP as an incentive; and (g) Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates, discounts, allowances, credits and any other incentives provided to third parties.



9593336v4

14

**Request No. 21**       Any documents discussing the amount of profit a provider could achieve due to the spread on an AWPID.

**Response to Request No. 21**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny documents" discussing the "amount of profit a provider could achieve" due to the "spread."

Subject to all foregoing general and specific objections and the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents discussing the amount of profit a provider could make resulting from the "spread" on Procrit, if any exist.

**Request No. 22**       Any sales and marketing materials comparing the costs and spread of an AWPID you manufactured with those of a competitive drug.

**Response to Request No. 22**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny sales and marketing materials" comparing drug costs and "spread[s]." OBP further states that it does not manufacture Procrit.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents comparing Procrit's costs and "spread" to the costs and "spread" of other drugs, if any exist.

**Request No. 23**       All documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool, on any AWPID was discussed.

**Response to Request No. 23**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ll documents" evidencing any meetings where raising the AWP, or "use of AWPID as a marketing tool" was discussed.



Subject to foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist,

evidencing meetings where raising Procrit's AWP or using the "spread" on Procrit as a marketing

tool were discussed.

**Request No. 24**    All documents accounting for the free samples given for any AWPID.

**Response to Request No. 24**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it seeks "[a]ll documents" accounting for free samples given for "any AWPID."

Subject to the foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to

determine the terms of any program, to the extent any exists, concerning the grant of free

samples of Procrit other than free product provided to indigent patients through patient assistance

programs.

**Request No. 25**    All documents evidencing any grants or credits provided to

any hospital or provider in return for use of an AWPID.

**Response to Request No. 25**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it seeks "[a]ll documents" evidencing any grants or credits. OBP further objects to this

request as duplicative of requests 7, 8, and 15.

Subject to the foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to

show the grants or credits provided to a provider in return for use of Procrit, if any exist.


RECEIVED
01/20/04
2:15 PM ET
AMP-MDL No. 1456

9593364

**Request No. 26**        Complete contact information for all personnel with sales responsibility for AWPIDs.  Include Sales Representatives, District Managers, Regional Managers, and National Sales Manager, and include home address and telephone number.

**Response to Request No. 26**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[c]omplete contact information for all personnel" with sales responsibilities.

OBP further objects to this request as unjustifiably seeking individuals' personal and confidential information.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts and sales rosters for personnel with sales responsibility for Procrit.

**Request No. 27**        Complete contact information for all personnel with responsibility for marketing and promotional activity for AWPIDs.  Include Marketing Department Product or Brand Managers, and members of Marketing Advisory Boards, and include home address and telephone number.

**Response to Request No. 27**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[c]omplete contact information for all personnel" with marketing and promotion activity responsibilities.  OBP further objects to this request as unjustifiably seeking individuals' personal and confidential information.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts for personnel with responsibility for marketing Procrit.



5993364

17

**Request No. 28**    A list of all national level sales awards available for each AWPID.

**Response to Request No. 28**

OBP objects to this request as overly broad to the extent it seeks a list of "all national level sales awards."

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any, sufficient to show the national level sales awards available for the sale of Procrit.

**Request No. 29**    Quarterly, semi-annual and annual business plans for each winner of the top national sales award winners and direct supervisors.

**Response to Request No. 29**

OBP objects to this request as vague, overly broad, and lacking foundation to the extent it seeks "business plans for each winner of the top national sales award winners and direct supervisors."

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce its relevant, responsive and non-privileged business plans that concern marketing the spread, if any exist.

**Request No. 30**    All Unrestricted Educational Grant Requests provided as a direct or indirect result of purchases of an AWPID.

**Response to Request No. 30**

OBP objects to this request as vague and ambiguous to the extent it seeks "educational grant requests" provided as a direct or indirect result of purchases of an AWPID." To the extent this request seeks "All Unrestricted Educational Grant Requests," OBP further objects to this request as overly broad and unduly burdensome.



# EXHIBIT C



E-SERVED
12/19/03
02:03 PM ET
AWP-MDL No. 1456

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

MDL No. 1456

CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris

THIS DOCUMENT RELATES TO
01-CV-12257-PBS AND 01-CV-339

## PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO AVENTIS, ABBOTT, AMGEN, BMS, JOHNSON & JOHNSON, GSK, HOFFMAN, IMMUNEX AND SCHERING-PLOUGH

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the District Court for the District of Massachusetts, Plaintiffs hereby request that you produce the documents requested herein within thirty (30) days.

## I.    DEFINITIONS

1.    "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof.  This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings.  Without limiting the generality of the foregoing,



"document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

2.      "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.      The term "Defendant" refers to any of the Defendants to whom this is directed, its officers, directors, affiliates, employees, representatives and agents (whether actual, apparent or otherwise).

4.      "You" or "Your" means the Defendant responding to these Requests and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.



5.    "Person" shall refer to natural persons, firms, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, departments or bureaus (governmental or private), and any other form of business, governmental or juridical person or legal entity.

6.    "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

7.    "Meeting" means any discussion between two or more persons either in person or telephonically.

8.    "Communication" and "communications" are used in a comprehensive sense, and shall mean and include every conceivable manner or means of disclosure, transfer or exchange of oral or written information (in the form of facts, ideas, inquiries or otherwise) between one or more persons or entities including, but not limited to, writings, documents, inter- and intra-office memoranda, correspondence, meetings, conferences, conversations, and/or agreements, whether face-to-face, by telephone, by mail, by telecopier, by telex, by computer or otherwise.

9.    "AMCC" means the Amended Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

10.    "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

11.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

12.    "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided by any health plan or health and welfare fund to any of its participants or beneficiaries.



13.     "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "*Red Book*"), American Druggist First Databank Annual Directory of Pharmaceuticals ("*First DataBank*"), Essential Directory of Pharmaceuticals (the "*Blue Book*") and Medi-Span's Master Drug Database ("*Medi-Span*").

14.     "Benefit Consultant" means any person or entity that provides information, counsel or advice to any health plan or health and welfare fund regarding any medical benefit or service provided by any health plan or health and welfare fund to any participant or beneficiary.

15.     "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

16.     "CMS" shall mean Centers for Medicare and Medicaid Services.

17.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

18.     "Government payor" means any federal or state government entity or program that reimburses Providers for drugs or health care services, including but not limited to CMS, Medicare, and Medicaid.

19.     "Independent Practice Association" means any organized group of providers whose members provide health care to any participant or beneficiary.

20.     "MAC" or "Maximum Allowable Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

21.     "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, subject drugs.

22.     "MCC" means the Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

23.     "PBM" means pharmacy benefit manager.



24.     The terms "Participant" and "Beneficiary" means a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

25.     "Person," as defined in Local Rule 26. 5(c)(6), means any natural person or any business, legal, or governmental entity or association.

26.     "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

27.     "Private payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit funds.

28.     "Provider" means any physician or entity that provides health care to any Participant or Beneficiary.

29.     "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

30.     "Subject drug" or "subject drugs" means any of the drugs on Exhibit A.

31.     "Third Party Administrator" means any entity that provides administrative services to any health plan or health and welfare fund relating to any medical benefit provided to any participant or beneficiary.

32.     "WAC" means wholesale acquisition cost or the list prices for sales by manufacturers to wholesalers.

33.     "Wholesaler" means any entity that purchase subject drugs from a manufacturer and resells such drugs to any other entity.

## II.     RULES OF CONSTRUCTION

1.     All/Each – The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.



2.    And/Or – The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.    The use of the singular form of any word shall include the plural and vice versa.

4.    The masculine gender includes the feminine.

## III.   INSTRUCTIONS

1.    A document shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or public or private entity having possession or custody thereof.  If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, or has been lost, discarded or destroyed, said document shall be identified as completely as possible including, but not limited to, the following information:

(a)    the date of disposal or disposition from your possession, custody or control;

(b)    the manner of disposal or disposition from your possession, custody or control;

(c)    the reason for disposal or disposition from your possession, custody or control;

(d)    the person authorizing disposal or disposition from your possession, custody or control;

(e)    the document's current or last known custodian;

(f)    the circumstances surrounding the document's disposition from your possession, custody or control;

(g)    the generic category of the document, *e.g.*, memo, letter, computer print-out, etc.;

(h)    the type(s) of information contained in the document; and



(i)     the identity of all persons having knowledge or who had knowledge of the contents of the document.

2.     Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those which otherwise came into existence at anytime during the relevant period described herein.

3.     (a)     Where an objection is made to any document request under Fed. R. Civ. P. 34, the objection shall state with specificity all grounds.  Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

(b)     Where a claim of privilege is asserted in objecting to any document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

(i)     the attorney asserting the privilege shall in the objection to the document demand, or sub-part thereof, identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

(ii)     the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A)     for documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; and, (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;

(B)     for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person



making the communication; (2) the date and the place of communication; and, (3) the general subject matter of the communication.

4.      Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectional subject matter which is relevant and material to a request must be produced, but that portion of the document for which the objection is asserted may be withheld or redacted provided that the above-requested information is furnished.

5.      This request is continuing and all documents coming into your possession, custody or control which you would have been required to produce had they been available at an earlier time shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

6.      Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Redactions should be included on the privilege log described in Instruction 3.

7.      The fact that a document is produced by one defendant does not relieve any other defendant of the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

8.      In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

9.      All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.



10.     Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

11.     Documents attached to each other should not be separated.

12.     Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

## IV.     RELEVANT TIME PERIOD

The relevant period of these document requests, unless otherwise indicated, shall be from January 1, 1991, to the date of production and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## V.     REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

For the period 1991 to the present, all documents relating to or reflecting any definition or meaning of AWP.

RESPONSE:

REQUEST FOR PRODUCTION NO. 2:

For the period 1991 to the present, all documents that reflect, discuss, memorialize, or otherwise relate to the setting of reimbursement or payment rates for any subject drug.



RESPONSE:


REQUEST FOR PRODUCTION NO. 3:

For the period 1991 to the present, all documents that you relied upon in setting the price for any subject drug.

RESPONSE:


REQUEST FOR PRODUCTION NO. 4:

For the period 1991 to the present, all minutes from meetings where reimbursement pricing or payment for subject drugs was discussed, including meetings where reimbursement or payment rates was discussed.

RESPONSE:


REQUEST FOR PRODUCTION NO. 5:

For the period 1991 to the present, all documents relating to or reflecting the costs to providers of any subject drug.

RESPONSE:


REQUEST FOR PRODUCTION NO. 6:

For the period 1991 to the present, all documents relating to or reflecting the amounts you reimburse providers for any subject drug.



RESPONSE:


REQUEST FOR PRODUCTION NO. 7:

For the period 1991 to the present, all documents relating to or reflecting any differences between the costs to providers of any subject drug and the amounts they receive for reimbursement for any subject drug.

RESPONSE:


REQUEST FOR PRODUCTION NO. 8:

All communications between you and providers or pharmacies relating to reimbursement, payment or prices of any subject drug.

RESPONSE:


REQUEST FOR PRODUCTION NO. 9:

For the period 1991 to the present, all documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug.

RESPONSE:


REQUEST FOR PRODUCTION NO. 10:

For the period 1991 to the present, all documents concerning the practice of using drug pricing information published by any publisher for any subject drug.


PLAINTIFFS' SECOND REQUEST FOR PRODUCTION
OF DOCUMENTS                                     - 11 -
1534.16 0013 DSC.DOC



RESPONSE:

REQUEST FOR PRODUCTION NO. 11:

For the period 1991 to the present, all documents created by or received from any publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between you and any publisher regarding any subject drug.

RESPONSE:

REQUEST FOR PRODUCTION NO. 12:

For the period 1991 to the present, all documents relating or referring to AWPs, including documents that relate or refer to the relationship between any price and AWP for any subject drug.

RESPONSE:

REQUEST FOR PRODUCTION NO. 13:

For the period 1991 to the present, all documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any subject drug.

RESPONSE:



**REQUEST FOR PRODUCTION NO. 14:**

For the period 1991 to the present, to the extent not otherwise produced, all documents concerning AWP, AMP, WAC, MAC, EAC, Best Price or any other drug pricing, payment or reimbursement information for any subject drug.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating or referring to your contractual relationships with PBMs, auditors, wholesalers, independent practice associations, pharmacies or providers insofar as they cover subject drugs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**

Documents sufficient to identify all persons involved in negotiation of contractual relationships with PBMs, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover any subject drug.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

For the period 1991 to the present, all documents relating to any profit analysis you have performed or received relating to your reimbursement or payment for any subject drug.



RESPONSE:

REQUEST FOR PRODUCTION NO. 18:

For the period 1991 to the present, all documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews, or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug.

RESPONSE:

REQUEST FOR PRODUCTION NO. 19:

For the period 1991 to the present, all filings with any state or federal government entity made by you or on your behalf that refer or relate to AWP.

RESPONSE:

REQUEST FOR PRODUCTION NO. 20:

For the period 1991 to the present, all documents created by or received from CMS, United States Department of Health and Human Services, the Health and Human Service Office of the Inspector General, the General Accounting Office, Congress or any other federal institution, agency, department, or office regarding the pricing of prescription drugs.

RESPONSE:



REQUEST FOR PRODUCTION NO. 21:

For the period 1991 to the present, all documents provided to CMS, United States Department of Health and Human Services, and Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office regarding the pricing of any subject drug.

RESPONSE:


REQUEST FOR PRODUCTION NO. 22:

All documents produced by you in any litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

RESPONSE:


REQUEST FOR PRODUCTION NO. 23:

All current and historical organizational charts for all of your departments.

RESPONSE:



DATED:  December 19, 2003

Respectfully submitted,

By _____

Thomas M. Sobol
Edward Notargiacomo
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*LIAISON AND CO-LEAD COUNSEL*

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022



Samuel Heins
Brian Williams
Heins, Mills & Olson, P.C.
700 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

CO-LEAD COUNSEL

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

PLAINTIFFS LEAD COUNSEL COMMITTEE

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA  19103
Tel:  (215) 814-6750
Fax:  (215) 814-6764

Michael J. Flannery
Carey & Danis, LLC
676 North Michigan Ave., Suite 3110
Chicago, IL  60611
Tel:  (312) 649-0100
Fax:  (312) 664-7731

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Ave. N.E., Suite 300
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813



Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard, Suite 1650
Los Angeles, CA 90017-2666
Tel: (213) 895-6500
Fax: (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
Fax: (215) 546-0942



Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez & Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA  19103
Tel:  (215) 731-9004
Fax:  (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
Beaumont, TX  77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
Texarkana, AR/TX  75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

Stephen C. Richman, Esq.
Markowitz & Richman
121 South Broad Street
1100 North America Building
Philadelphia, PA  19107
Telephone:  (215) 875-3100



## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing Plaintiffs' Second Request for Production of Documents to Aventis, Abbott, Amgen, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough to be served on all counsel of record electronically on December 19, 2003, pursuant to Section D of Case Management Order No. 2.

Steve W. Berman, Esq.
**HAGENS BERMAN LLP**
1301 5th Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

# EXHIBIT D



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

THIS DOCUMENT RELATES TO
01-CV-12257-PBS AND 01-CV-339

MDL No. 1456

CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris

## AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION

TO:    ALL COUNSEL ON ATTACHED SERVICE LIST:

PLEASE TAKE NOTICE that the undersigned attorneys for Plaintiffs shall take the

deposition upon oral examination of a representative of each Defendant in this action who is

knowledgeable regarding the matters designated on Exhibit "A," attached.  These depositions

will being taken pursuant to Federal Rule of Civil Procedure 30(b)(6) and will be recorded by

stenographic and/or sound and visual means.  The depositions will be take place as follows:

| Deponent | Date and Time | | Location |
|---|---|---|---|
| Abbott | 10:00 a.m. | Within 45 days or on May 10, 2004 | The Wexler Firm LLP One N. LaSalle Street, Suite 2000 Chicago, IL  60602 |
| Astra Zeneca | 10:00 a.m. | Within 45 days or on May 11, 2004 | The Wexler Firm LLP One N. LaSalle Street, Suite 2000 Chicago, IL  60602 |



| Amgen | 10:00 a.m. | Within 45 days or on May 12, 2004 | Hagens Berman LLP<br>225 Franklin Street, 26th Floor<br>Boston, MA 02110 |
|---|---|---|---|
| Bristol Myers Squibb | 10:00 a.m. | Within 45 days or on May 12, 2004[1] | Hagens Berman LLP<br>225 Franklin Street, 26th Floor<br>Boston, MA 02110 |
| Baxter | 10:00 a.m. | Within 45 days or on May 14, 2004 | Hagens Berman LLP<br>225 Franklin Street, 26th Floor<br>Boston, MA 02110 |
| Immunex | 10:00 a.m. | Within 45 days or on May 17, 2004 | Hagens Berman LLP<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101 |
| Schering Plough | 10:00 a.m. | Within 45 days or on May 17, 2004 | Spector, Roseman & Kodroff<br>1818 Market St., Ste 2500<br>Philadelphia, PA 19103 |
| Aventis | 10:00 a.m. | Within 45 days or on May 17, 2004 | Spector, Roseman & Kodroff<br>1818 Market St., Ste 2500<br>Philadelphia, PA 19103 |
| Dey | 10:00 a.m. | Within 45 days or on May 18, 2004 | Hagens Berman LLP<br>225 Franklin Street, 26th Floor<br>Boston, MA 02110 |
| Fujisawa | 10:00 a.m. | Within 45 days or on May 18, 2004 | Spector, Roseman & Kodroff<br>1818 Market St., Ste 2500<br>Philadelphia, PA 19103 |
| Pharmacia | 10:00 a.m. | Within 45 days or on May 18, 2004 | Spector, Roseman & Kodroff<br>1818 Market St., Ste 2500<br>Philadelphia, PA 19103 |
| Watson | 10:00 a.m. | Within 45 days or on May 12, 2004 | Spector, Roseman & Kodroff<br>1818 Market St., Ste 2500<br>Philadelphia, PA 19103 |
| Novartis | 10:00 a.m. | Within 45 days or on May 12, 2004 | Hagens Berman LLP<br>225 Franklin Street, 26th Floor<br>Boston, MA 02110 |
| Boehringer | 10:00 a.m. | Within 45 days or on May 12, 2004 | The Wexler Firm LLP<br>One N. LaSalle Street, Suite 2000<br>Chicago, IL  60602 |

---

[1] To the extent not covered by prior deposition.



| | | | |
|---|---|---|---|
| Johnson & Johnson | 10:00 a.m. | Within 45 days or on May 19, 2004 | Spector, Roseman & Kodroff 1818 Market St., Ste 2500 Philadelphia, PA 19103 |
| Pfizer | 10:00 a.m. | Within 45 days or on May 19, 2004 | Hagens Berman LLP 225 Franklin Street, 26th Floor Boston, MA 02110 |

You are invited to attend and participate.

DATED: April 1, 2004

By   Steve W. Berman, signature on file
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Kevin P. Roddy
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692



Eugene A. Spector
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
**CHAIRS OF LEAD COUNSEL
COMMITTEE**

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900
**MEMBERS OF EXECUTIVE
COMMITTEE**



Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard
Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street
Suite 1700
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139



Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL  60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel:  (213) 895-6500
Fax:  (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA  19102
Tel:  (215) 790-7300
Fax:  (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street,
Suite 200
Media, PA 19063
Tel:  (610) 891-9880
Fax:  (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA  19103
Tel:  (215) 731-9004
Fax:  (215) 731-9044



Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX 75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098
**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**



## EXHIBIT "A"

INSTRUCTIONS

All of the definitions from Plaintiffs' Omnibus Requests For Production of Documents Directed to All Defendants are incorporated herein by reference.

"AWPID" refers to all of the drugs identified Appendix A to the AMCC.

"Spread" refers to the difference between AWP or any price upon which reimbursement for a drug is based, on the one hand, and the actual or net price paid for a drug on the other hand.

Unless otherwise specifically stated, each of these Areas of Inquiry encompasses the years 1991 through the present.

AREAS OF INQUIRY

1.      The identity of documents describing the process by which You establish, state, change or are otherwise directly or indirectly involved in setting the AWP, List Price, WAC, Average Sales Price ("ASP"), actual sales price, contract price or any other price for each of Your AWPIDs, and the names or job titles of all personnel involved in said process.

2.      The identity of documents describing Your policies or practices concerning the calculation, determination, dissemination, communication or publication of the AWP, List Price, WAC, or any other price for all of Your drugs.

3.      The identity of documents containing any definition of AWP, ASP, List Price of WAC.

4.      The identity of documents describing the process by which You decide to offer any type of discount, rebate, incentive or penalty in connection with the purchase of any AWPID, and the names or job titles of all personnel involved in said process.



5.     The identity of documents identifying all management personnel or management committees responsible for directing, overseeing or coordinating any of the activities referenced in items 1, 2 and 3 above.

6.     The identity and nature of any regularly created documents which report, review, comment upon or analyze any price stated or charged for any of Your AWPIDs.

7.     The identity and nature of documents describing the method by which You calculate or determine the average sales price for Your AWPIDs, including any determination or rendering of actual transaction costs and/or revenues at any level of the distribution or processing chains.

8.     The identity and nature of any regularly created documents which report, review, comment upon or analyze the profit from any of Your AWPIDs.

9.     The identity and nature of any regularly created documents which report, review, comment upon or analyze the average sales price, or actual sales prices for any of Your AWPIDs.

10.     The nature of Your electronic data or computer databases which relate directly or indirectly to either:  (i) the amount of sales, sales prices, discounts or average sales prices for all of Your AWPIDs, and/or (ii) sales and marketing efforts and/or results.

11.     The nature of all computer and e-mail systems or networks used by You for internal communications among Your various offices, departments, sub-divisions and employees and the availability of the electronic data created and/or stored on such systems or networks.

12.     The nature of Your documents discussing, analyzing or marketing the Spread on any of Your drugs.



13. The location of or identity of documents relating to the nature of Your efforts to market, promote or tout the Spread on any of Your drugs, and the names or job titles of all personnel involved in said efforts.

14. The nature of all documents comparing any price, rebate or incentive for any of Your drugs with any price, rebate or incentive offered for a competing drug.

15. Any information related to any contention by You that the government had knowledge of any pharmaceutical manufacturer's practices and methodologies for setting the AWP for any drug, without regard to time period.

16. The identity of documents regarding communications and agreements between You and any PBM.

17. The identity of documents regarding communications between You and any other pharmaceutical manufacturer regarding: (a) definitions of AWP, ASP, List Price of WAC: (b) calculation, determination, dissemination, communication or publication of AWP, List Price, WAC or any other price; and (c) rebates, chargebacks, free samples or any other marketing practice that an pharmaceutical manufactures contended was inappropriate, illegal, unethical, fraudulent, or otherwise should be ceased.

18. The identity and nature of documents relating to any Government Investigation concerning You or any of Your drugs, including your response to any request for information in connection with any Government investigation and the identities or job titles of all personnel involved with any Government Investigation.

19. The identity of documentation describing Your distribution channels and methods and strategies for distributing each of Your AWPIDs.



20.     Your document and e-mail retention or destruction policies, and the steps you have taken to preserve documents since this litigation began.



## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANT-SPECIFIC MEMORANDA RELATED TO PROPOSED CASE MANAGEMENT ORDER NO. 10 to be served on all counsel of record electronically on 4\2_____, 2004, pursuant to Section D of Case Management Order No. 2.

Steve W. Berman
**HAGENS BERMAN LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

# EXHIBIT E

# HOFFMAN & EDELSON, LLC

ATTORNEYS AT LAW
45 WEST COURT STREET
DOYLESTOWN, PENNSYLVANIA 18901

215-230-8043
FAX 215-230-8735

July 22, 2004

JEROLD B. HOFFMAN*
MARC H. EDELSON* *

* MEMBER PA. & N.J. BARS
** MEMBER PA. & N.Y. BARS

ALAN V. KLEIN*
ADAM ARATEN*
ALLAN M. HOFFMAN*

**Via Facsimile (212) 336-2222**

Erik Haas, Esq.
Estella Schoen, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

RE:   *In re: Pharmaceutical Industry Average Wholesale Price
Litigation*, MDL No. 1456 and J&J Document Productions

Dear Erik and Estella:

After reviewing the initial document productions of OBI, Jannsen, Centocor and Ortho-McNeil, Plaintiffs believe that each of these J&J entities ("J&J") still has not complied with its discovery obligations in numerous areas. Yesterday, we conferred with Estella Schoen and Adeel Mangi as to the continued inadequacy of the J&J productions on the following issues:

First, although the relevant period of Plaintiffs' claims runs from 1991-present, OBI has produced very few documents created in 1998 and inexplicably has produced no documents created prior to 1998. This is particularly troubling because Procrit apparently was launched in 1991. Please confirm that OBI will immediately produce all responsive documents from 1991 to the present, including but not limited to, any pre-launch or launch materials regarding the pricing, marketing or sales materials for Procrit. Moreover, please confirm immediately that OBI's 30(b)(6) designee, Mr. Thomas Hiriak, will be able to testify on all areas of inquiry for the entire relevant period of 1991 through the present.

Second, OBI has produced very few documents reflecting its direct communications to and from the various publishers. Please produce all such communications to or from publishers for all J&J entities, including the parent company, immediately or confirm that no additional documents exist.

Third, J&J has produced very few documents reflecting or referring to communications between J&J entities and their parent company or other J&J entities

Mr. Erik Haas
July 22, 2004
Page 2 of 4

relating to the sales, marketing or pricing of any drugs at issue in the case. Please produce all such documents immediately or confirm that no additional documents exist.

Fourth, J&J has not produced aggregate information specifying and/or calculating, for each drug, the total amount of rebates, discounts, charge backs, credit memos, forgiveness of debt or any other manner of cost reduction to all customers, including, but not limited to, wholesalers, PBMs, GPOs, Managed Care Organizations, hospitals, clinics, providers and/or provider buying groups.

Fifth, OBI has not produced any contracts between providers and either (i) "physician supply houses" or (ii) "physician distributors".

Sixth, no J&J entity has produced any field notes from sales representatives.

Seventh, J&J has produced few documents reflecting or referring to communications between providers and any J&J entities, including, but not limited to, rebate checks or discussion of rebates.

Eighth, OBI has received a few documents referring to an OBI internal committee know as ICOM. Please produce any and all relevant documents referring or relating to ICOM, including but not limited to any meeting minutes, notes, agendas, materials, analyses created or reviewed by ICOM, approvals, recommendations, or any other documents relating to the pricing, sales or marketing of any J&J drugs at issue.

Ninth, J&J has produced very few, if any, meeting minutes, notes, agendas, materials, approvals, analyses created or reviewed by any Executive Board, Committee or Management Board of the parent company or any J&J entity regarding the pricing, sales or marketing of any drugs at issue in the case. Please produce this material immediately or confirm that no such documents exist.

Tenth, OBI has produced documents that refer to the "Pricing Calculator" but has not produced the "Pricing Calculator" itself or any documents or materials describing or relating to the purpose, function or use of the "Pricing Calculator." See, e.g., documents referring to "Pricing Calculator" at MDL-OBI00014091-94.

Eleventh, J&J has produced very few, if any, J&J organization charts from any J&J entity or the parent company identifying key personnel involved in the sales, marketing or pricing of J&J drugs at issue.

Twelfth, neither J&J nor the parent company has produced all policies and procedure manuals relating to the pricing, sales and/or marketing of J&J drugs at issue, including, but not limited to "Project Bright Lines" as identified by John Hoffman during his deposition.

Thirteenth, please confirm that J&J has produced all documents that have been produced to any federal or state government entity or committee that has investigated any

Mr. Erik Haas
July 22, 2004
Page 3 of 4
J&J entity or the parent company in connection with Average Wholesale Price.

Fourteenth, J&J has produced very few documents referring or reflecting to the definition of AWP, or how the AWP is or has been determined.  Please produce all such documents immediately or confirm that no additional documents exist.

Fifteenth, J&J has not produced documents reflecting the basis of how the AWP to WAC pricing spread was decided for each J&J drug at issue.  Please produce all such documents immediately or confirm that no additional documents exist.

Sixteenth, J&J appears to have produced some, though not all, price increase analyses for each drug.  Please produce all such documents immediately or confirm that no additional documents exist.

Seventeenth, J&J has failed to produce all internal approvals of price increases. Please produce all such documents immediately or confirm that no additional documents exist.

Eighteenth, J&J has not produced all of their business plans, strategic plans, pricing strategies, sales plans, and/or marketing plans for each drug during the relevant period.  Please produce all such documents immediately or confirm that no additional documents exist.

Nineteenth, J&J has not produced any and all Average Manufacturers Price ("AMPs") data for each drug during the relevant period.  During the call, Estella represented that J&J will either identify documents previously produced that contain the AMPs during the relevant period or will produce the AMP data during the relevant period.

Twentieth, J&J has not produced IMS Health data for each of the applicable J&J drugs during the relevant period.

Twenty-first, J&J has not produced all documents referring or relating to definitions and calculations of the Average Selling Price of each drug during the relevant period.  Please produce all such documents immediately or confirm that no additional documents exist.

Twenty-second, J&J has not produced aggregate data, by drug, of the amount of free samples, educational grants or marketing grants awarded each year during the relevant period.  Please produce all such documents immediately or confirm that no additional documents exist.

Twenty-third, J&J has not produced all correspondence and/or contracts between J&J entities and PBMs.  Please produce all such documents immediately or confirm that no additional documents exist.

Mr. Erik Haas
July 22, 2004
Page 4 of 4

Twenty-fourth, J&J has not produced all correspondence and/or contracts with wholesalers.  Please produce all such documents immediately or confirm that no additional documents exist.

Twenty-fifth, J&J has not yet produced a privilege log or a "redaction log" specifying the bases of the redactions of documents.

Twenty-sixth, Plaintiffs have not received the licensing agreement(s) between OBI and Amgen and/or all communications and amendments relating thereto.

Furthermore, we have encountered some technical problems in connection with the OBI production to date.  More specifically, documents Bates stamped MDL-OBI00009834-9895, OBI000042931-43350, OBI000051893-52004, OBI000042741-46 are not viewable.  Additionally, OBI000042865-52004 do not contain Bates numbers on the documents themselves.  Please provide corrected versions of each of these documents on another diskette.

Also, document Bates stamped OBI000042645-47 is marked "document not printed."  Plaintiffs would appreciate an explanation of the meaning of this designation.

During our call, Estella represented that all of the J&J entity productions would be substantially completed by July 31, 2004.  However, in light of the rapidly approaching 30(b)(6) depositions of OBI, Jannsen and OMP, it is of the utmost importance that we receive these documents immediately.

Sincerely,

Allan M. Hoffman

# Allan Hoffman

**From:**     Schau, Andrew D. (x2546) [ADSCHAU@PBWT.COM]
**Sent:**     Monday, July 18, 2005 11:16 AM
**To:**       'Allan Hoffman'
**Cc:**       Mangi, Adeel A. (x2563); Haas, Erik (x2117)
**Subject:** RE: AWP

Thanks, Allan. Letters that are not contentious are much more productive.

First, I can confirm that Ortho Biotech will not object to plaintiff's taking a 30(b)(6) witness or witnesses after August 31 regarding document authenticity issues that cannot be resolved by stipulation or a RFA. I don't think we would be able to give you a witness for some of the questions posed in the recent RFA (i.e., is something a "present sense impression" or not). But whether a document produced from OBP's files is an authentic business record should not be a problem.

Second, as a result of our prior discussions, we have already started the process of retrieving and reviewing OBP's documents and the hearing transcripts from the termination case in order to ascertain whether there is anything there relating to AWP or the marketing of the spread between AWP-based reimbursement and acquisition cost. Consistent with our prior objections, however, we cannot agree to produce every document having anything to do with the price of Procrit. That request is overly broad and burdensome as we have already produced documents and data sufficient to show Procrit pricing. As for Amgen's documents, I don't know that we have them and I don't believe I ever agreed to review or produce them. In any event, my recollection is that Amgen's documents were covered by a protective order that precludes me from producing them to you without Amgen's consent. If plaintiffs want documents from Amgen, they should ask Amgen to produce them.

Third, I have been advised that the OBP documents from the termination case were archived and have not been destroyed.

Fourth, as I previously advised you, in responding to plaintiffs' document requests in this case, we did not search archived files from closed cases, including the termination case. Given the fact that this issues in the termination case are very different, and given the fact that the vast bulk of reimbursement for epoetin alfa in dialysis is based on a statutory fixed rate rather than on AWP, we did not (and do not) believe that searching those documents was necessary. We are doing so now as an accomodation so that we can put this issue behind us. (By the way, am I correct in assuming that plaintiffs did not search through achived litigation files from closed cases in responding to defendants' document reqeusts?)

Finally, I will get back to you concerning the list of individuals. Bear in mind, however, that there is a local rule that precludes a party from deposing more than 10 witnesses without leave of court. We have not insisted on this limitation to date, but as you go forward we think you should at least be thinking about how to prioritize the depositions. You have told me that you are not deliberately trying to elicit cummulative testimomy, and I take you at your word. Nevertheless, we must reserve the right to object if we believe the number of requested depositions becomes excessive.

> -----Original Message-----
> **From:** Allan Hoffman [mailto:ahoffman@hofedlaw.com]
> **Sent:** Friday, July 15, 2005 6:10 PM
> **To:** Schau, Andrew D. (x2546)
> **Subject:** RE: AWP
>
> This is not a contentious letter. I will have to get back to you next week on the topics we discussed during our last phone conversation, but would like to have a clear statement of the parameters of your latest proposals.
>
> First, I want to confirm that J&J will not object to plaintiffs taking 30(b)(6) depostion(s) of a records

custodian(s) re: the authenticity of documents, whether they come from your files and/or are business records under the Federal Rules, etc. for any records that remain in dispute (on authenticity grounds, business record, etc) even if noticed to occur after the current, Aug. 31, 2005 discovery deadline.

Second, I want to make sure that I understand your proposal re: OBI's offer to review and produce relevant documents from any legal proceedings that contain relevant information during the class period. You have never put in writing what you are offering to do on this front and it would be helpful if you did so.

It is my understanding that you have confirmed the following:

1. All of the documents from the Amgen-OBI litigation produced by OBI have been archived off site and have not been destroyed. You are looking into whether you have the litigation materials (affidavits, declarations, deps and exhibits, trial exhibits, testimony, etc.) as well as the documents produced by Amgen.

2. OBI never searched any of these documents in responding to plaintiffs' prior document requests and follow-up discovery requests.

You have acknowledged that there may be responsive material in the "huge" production and have offered to do one of the following:

A. OBI will search the material for marketing, sales and/or pricing documents and/or testimony relating to Procrit, as well as for documents and/or testimony relating to the marketing, sales and/or pricing of Epogen. You have claimed that this shall be done at plaintiffs' sole expense. You warned that it would take a long time and would likely be expensive (unless you are able to search electronically). You said that you would refuse to produce price lists or promotional materials offering discounts, unless they expressly talk about reimbursement.

B. Alternatively, you have offered to review at your expense a narrower universe of documents and testimony relating to documents and/or testimony re:OBI's promotion of spread based on any incentives, rebates, discounts and reimbursement although you do not recall such documents or testimony. You also agreed to search for documents and/or testimony relating or referring to OBI's defense that Amgen marketed, promoted and/or sold Epogen to customers or potential customers who could use it in the non-ESRD setting.

You were going to look into the size of the production before discussing the issue of a discovery extension.

If you believe that I have not accurately described your proposal, please clarify the inaccuracies immediately.

Finally, per your request, here is a list of individuals. Please identify who is still with the company (J&J) and if no longer withthe company, then the last known address of the individual:

Richard Moran

Steven Hill

Tim Uhron

Dywayne Marlowe

Craig Phillips

James Scelfo

Joseph Cici

8/15/05

--------------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.


--------------------------------------------------------------------------

IRS Circular 230 disclosure: Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)
==========================================================================

8/15/05

# EXHIBIT F

## Allan Hoffman

**From:**   Schau, Andrew D. (x2546) [ADSCHAU@PBWT.COM]
**Sent:**   Monday, July 18, 2005 11:16 AM
**To:**   'Allan Hoffman'
**Cc:**   Mangi, Adeel A. (x2563); Haas, Erik (x2117)
**Subject:** RE: AWP

Thanks, Allan. Letters that are not contentious are much more productive.

First, I can confirm that Ortho Biotech will not object to plaintiff's taking a 30(b)(6) witness or witnesses after August 31 regarding document authenticity issues that cannot be resolved by stipulation or a RFA. I don't think we would be able to give you a witness for some of the questions posed in the recent RFA (i.e., is something a "present sense impression" or not). But whether a document produced from OBP's files is an authentic business record should not be a problem.

Second, as a result of our prior discussions, we have already started the process of retrieving and reviewing OBP's documents and the hearing transcripts from the termination case in order to ascertain whether there is anything there relating to AWP or the marketing of the spread between AWP-based reimbursment and acquisition cost. Consistent with our prior objections, however, we cannot agree to produce every document having anything to do with the price of Procrit. That request is overly broad and burdensome as we have already produced documents and data sufficient to show Procrit pricing. As for Amgen's documents, I don't know that we have them and I don't believe I ever agreed to review or produce them. In any event, my recollection is that Amgen's documents were covered by a protective order that precludes me from producing them to you without Amgen's consent. If plaintiffs want documents from Amgen, they should ask Amgen to produce them.

Third, I have been advised that the OBP documents from the termination case were archived and have not been destroyed.

Fourth, as I previously advised you, in responding to plaintiffs' document requests in this case, we did not search archived files from closed cases, including the termination case. Given the fact that this issues in the termination case are very different, and given the fact that the vast bulk of reimbursement for epoetin alfa in dialysis is based on a statutory fixed rate rather than on AWP, we did not (and do not) believe that searching those documents was necessary. We are doing so now as an accomodation so that we can put this issue behind us. (By the way, am I correct in assuming that plaintiffs did not search through achived litigation files from closed cases in responding to defendants' document reqeusts?)

Finally, I will get back to you concerning the list of individuals. Bear in mind, however, that there is a local rule that precludes a party from deposing more than 10 witnesses without leave of court. We have not insisted on this limitation to date, but as you go forward we think you should at least be thinking about how to prioritize the depositions. You have told me that you are not deliberately trying to elicit cummulative testimony, and I take you at your word. Nevertheless, we must reserve the right to object if we believe the number of requested depositions becomes excessive.

   -----Original Message-----
   **From:** Allan Hoffman [mailto:ahoffman@hofedlaw.com]
   **Sent:** Friday, July 15, 2005 6:10 PM
   **To:** Schau, Andrew D. (x2546)
   **Subject:** RE: AWP

   This is not a contentious letter. I will have to get back to you next week on the topics we discussed during our last phone conversation, but would like to have a clear statement of the parameters of your latest proposals.

   First, I want to confirm that J&J will not object to plaintiffs taking 30(b)(6) depostion(s) of a records

custodian(s) re: the authenticity of documents, whether they come from your files and/or are business records under the Federal Rules, etc. for any records that remain in dispute (on authenticity grounds, business record, etc) even if noticed to occur after the current, Aug. 31, 2005 discovery deadline.

Second, I want to make sure that I understand your proposal re: OBI's offer to review and produce relevant documents from any legal proceedings that contain relevant information during the class period. You have never put in writing what you are offering to do on this front and it would be helpful if you did so.

It is my understanding that you have confirmed the following:

1. All of the documents from the Amgen-OBI litigation produced by OBI have been archived off site and have not been destroyed. You are looking into whether you have the litigation materials (affidavits, declarations, deps and exhibits, trial exhibits, testimony, etc.) as well as the documents produced by Amgen.

2. OBI never searched any of these documents in responding to plaintiffs' prior document requests and follow-up discovery requests.

You have acknowledged that there may be responsive material in the "huge" production and have offered to do one of the following:

A. OBI will search the material for marketing, sales and/or pricing documents and/or testimony relating to Procrit, as well as for documents and/or testimony relating to the marketing, sales and/or pricing of Epogen. You have claimed that this shall be done at plaintiffs' sole expense. You warned that it would take a long time and would likely be expensive (unless you are able to search electronically). You said that you would refuse to produce price lists or promotional materials offering discounts, unless they expressly talk about reimbursement.

B. Alternatively, you have offered to review at your expense a narrower universe of documents and testimony relating to documents and/or testimony re:OBI's promotion of spread based on any incentives, rebates, discounts and reimbursement although you do not recall such documents or testimony. You also agreed to search for documents and/or testimony relating or referring to OBI's defense that Amgen marketed, promoted and/or sold Epogen to customers or potential customers who could use it in the non-ESRD setting.

You were going to look into the size of the production before discussing the issue of a discovery extension.

If you believe that I have not accurately described your proposal, please clarify the inaccuracies immediately.

Finally, per your request, here is a list of individuals. Please identify who is still with the company (J&J) and if no longer withthe company, then the last known address of the individual:

Richard Moran

Steven Hill

Tim Uhron

Dywayne Marlowe

Craig Phillips

James Scelfo

Joseph Cici

8/15/05

------------------------------------------------------------------------------

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.


------------------------------------------------------------------------------

IRS Circular 230 disclosure: Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)
================================================================================

# EXHIBIT G

# HOFFMAN & EDELSON, LLC

ATTORNEYS AT LAW
45 WEST COURT STREET
DOYLESTOWN, PENNSYLVANIA 18901

215-230-8043
FAX 215-230-8735

JEROLD B. HOFFMAN*
MARC H. EDELSON* *

* MEMBER PA. & N.J. BARS
** MEMBER PA. & N.Y. BARS

ALAN V. KLEIN*
ADAM ARATEN*
ALLAN M. HOFFMAN*

June 23, 2005

**Via Facsimile (212) 336-2222**

Andrew Schau, Esq.
Adeel Mangi, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

    RE:    *In re: Pharmaceutical Industry Average Wholesale Price*
           *Litigation*, MDL No. 1456 and OBI Document Production

Dear Andy and Adeel:

    I am writing to memorialize our discussions to date regarding Ortho Biotech, Inc.'s ("OBI") insufficient production of pre-1998 documents in this litigation. As you know, the Johnson & Johnson group ("J&J"), including OBI, was a named defendant in the Master Consolidated Class Action Complaint filed in 2002 and the subsequently filed AMCC. In both complaints, the Class Period was clearly identified as being from 1991 through the present. On June 17, 2003, plaintiffs propounded document requests and interrogatories seeking all responsive material from OBI and/or its agents relating to the entire Class Period.

    In completing its initial review of OBI's production last summer, plaintiffs were surprised to learn that J&J had failed to produce any pre-1998 documents relating to OBI. Despite defense counsel's incorrect contention that plaintiffs had agreed to such a limitation in the production, defense counsel agreed to produce all responsive material in OBI's possession, custody and control dating back to January 1, 1991. On August 5, 2004, OBI produced a supplemental CD-Rom containing 794 pages (Bates Nos. MDL-OBI00054661 through MDL-OBI00055455) that defense counsel represented comprised all of the responsive pre-1998 documents collected from OBI. The majority of these documents consisted of (i) various contracts and (ii) Product Specialist and Sales Incentive and Recognition Program packets. It also is noteworthy that some undated documents in the range reference the drug "Aranesp", which was not launched by Amgen until early 2001, and therefore appear to be documents generated long after 1997.

Andrew Schau, Esq.
Adeel Mangi, Esq.
Page 2
June 23, 2005

In subsequent phone calls, defense counsel repeatedly confirmed that it had produced all of OBI's pre-1998 documents and explained that the small size of the production was due to OBI's compliance with its own document retention policies. However, OBI's failure to produce any additional pre-1998 documents is particularly troubling because OBI's record retention policies indicate that certain documents, such as product files and policy documents should have been in existence in 2002. (*See* "1996 Ortho Biotech Records Retention Schedule," MDL-OBI00055393-MDL-OBI00055445.) With the sole exception of the 1996 records retention schedule, plaintiffs have not received any such pre-1998 documents.

Moreover, the absence of additional documents is puzzling in light of the fact that OBI and Amgen were in litigation and arbitrations against one another beginning in 1989 and continuing through the late 1990s. Indeed, in *Amgen, Inc. v. Ortho Pharmaceutical Corp.,* 708 N.E.2d 385 (Ill. Ct. App.1999), Justice Cousins expressly states that Amgen has alleged in litigation that OBI violated the Product Licensing Agreement between Amgen and OBI by intentionally promoting and marketing Procrit in Amgen's reserved market in the U.S. *Id.* at 373-74. To the extent any allegations or issues in any of those actions concerned or related to Procrit and AWP pricing, reimbursement, and/or OBI's marketing of the Spread to customers and/or potential customers, then any relevant documents, deposition and/or trial testimony and/or affidavits in the possession of OBI or its agents should have been produced.

However, OBI has not produced any such documents to date. Please confirm whether it is your position that no such documents exist. If such documents do exist, plaintiffs demand that OBI produce all documents in the possession or control of OBI, any J&J entity, or any agent thereof that have not yet been produced, relating to the marketing, selling or pricing of Procrit in relation to AWP and/or the Spread, including but not limited to, any documents, testimony and affidavits produced by Amgen and/or OBI/J&J in connection with any litigation or arbitration with Amgen that transpired, at least in part, during the Class Period. In light of the imminent discovery deadline, we expect that all such documents, to the extent they exist, be produced no later than July 5, 2005.

Andrew Schau, Esq.
Adeel Mangi, Esq.
Page 3
June 23, 2005

Please contact me by the end of this week to confirm whether such documents exist and if so, whether they will be timely produced.  Please note that nothing in this letter waives plaintiffs' right to demand additional discovery on any additional AWPID drugs.

Sincerely,

Allan M. Hoffman

cc:  John Macoretta, Esq.

# EXHIBIT H

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

Andrew D. Schau
Partner
(212) 336-2546
adschau@pbwt.com

June 24, 2005

Allan Hoffman, Esq.
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901

Re:    **In Re: Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Allan:

This letter responds to your letter of June 23, 2005, in which you express concerns relating to the document production by Ortho Biotech Products L.P.

First, we continue to disagree with your revisionist claim that we never had an agreement on pre-1998 documents.  Plaintiffs explicitly agreed to forgo pre-1998 documents in return for an expanded data production, and that agreement was memorialized on more than one occasion.  Nonetheless, when plaintiffs reneged on that agreement, we produced pre-1998 documents.  And as we have told you repeatedly, we did not limit our collection to post-1998 documents.

Second, we never represented to you that "all of OBI's pre-1998 documents" have been produced.  Rather, we represented that OBI diligently searched its hard copy and electronic files for pre-1998 documents that are responsive to your document requests, and that the fruits of that search have been produced.  In response to your previous complaints about the size of OBI's production (about 60,000 pages, plus data), we have revisited this issue with OBI on several occasions (including asking OBI to undertake additional searches).  We believe there is no point in going back to OBI yet again.

Third, your conclusion that there must be additional responsive documents because Amgen filed an arbitration claiming that OBI marketed Procrit for use in Amgen's reserved indication, i.e., dialysis, is based on a misunderstanding of Amgen's claim.  Amgen sought to terminate OBI's license on the grounds that OBI failed to take sufficient steps to ensure that Procrit was not administered to dialysis patients.  OBI disputed Amgen's claim and Amgen's request for termination was denied by the arbitrator.  I was intimately involved in that arbitration and I can assure you that Amgen's claim had nothing to do with AWP pricing or the "spread."  Indeed, because reimbursement for epoetin alfa under the ESRD program is fixed by statute, and is not based on AWP, neither Amgen nor OBI had an incentive to market their products to dialysis providers on the basis of AWP.

Allan Hoffman
June 24, 2005
Page 2

Finally, I note that we have done nothing to interfere with your discovery on OBI's marketing practices and pricing prior to 1998. Your deposition question have been answered and we have produced historic pricing data in electronic form.

Sincerely yours,

Andrew D. Schau

# EXHIBIT I

# HOFFMAN & EDELSON, LLC

ATTORNEYS AT LAW
45 WEST COURT STREET
DOYLESTOWN, PENNSYLVANIA 18901

215-230-8043
FAX 215-230-8735

JEROLD B. HOFFMAN*
MARC H. EDELSON* *

ALAN V. KLEIN*
ADAM ARATEN*
ALLAN M. HOFFMAN*

* MEMBER PA. & N.J. BARS
** MEMBER PA. & N.Y. BARS

June 30, 2005

**<u>Via Facsimile (212) 336-2222</u>**

Andrew Schau, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

RE:   *In re: Pharmaceutical Industry Average Wholesale Price*
      <u>*Litigation*, MDL No. 1456 and OBI Document Production</u>

Dear Andy:

I am writing in response to your letter dated June 24, 2005. While I appreciate the fact that you responded in a timely manner, I am concerned that your letter does not sufficiently clarify the record.

First, your self-serving contention that plaintiffs explicitly agreed to forego pre-1998 documents is incorrect and not supported by the record. Plaintiffs never agreed to permanently forego receiving documents on drugs that were marketed and sold prior to 1998. In fact, as soon as plaintiffs realized that pre-1998 documents had not been produced by OBI and other J&J entities, plaintiffs contacted your firm and requested the production of such material. Plaintiffs have consistently argued this position in all of our discussions of this issue.

Second, I agree that you have represented that OBI searched for and produced all responsive pre-1998 material from the hard copy and electronic files of OBI. Indeed, at the time when plaintiffs initially raised their concern regarding OBI's pre-1998 production, you agreed to look into the matter further, and both you and Mr. Mangi later confirmed that OBI's responsive pre-1998 documents had been pulled at the time of the initial search for responsive OBI material. As you know, at the time of your initial search, you were responding to discovery requests that instructed you to search for responsive documents at OBI, the parent, other J&J subsidiaries and OBI's representatives and agents. However, to the extent your response suggests that you are aware of specific files that have not been searched but which are likely to contain responsive documents, I request that you immediately identify those files. Furthermore, I do not recall your subsequently asking OBI to perform additional searches for any pre-1998 material other than relating to a list of sales representative winners of OBI's top

Andrew Schau
June 30, 2005
Page 2

sales award, which you only provided after previously refusing to produce any sales representative materials whatsoever.

Third, I agree that you have on more than one occasion represented that the Amgen arbitration had "nothing to do with AWP pricing or the 'spread.'" However, your articulation of your reasoning in your June 24 letter is concerning. First, your claim that reimbursement for epoetin alfa in the end stage renal disease (ESRD) is not based on AWP is puzzling because it is my understanding that the ESRD reimbursement amount for EPO and Procrit is 95% of the lower AWP price of the two drugs. (See Hiriak Dep. at p.496.) Moreover, your suggestion that the parties could not have an incentive to create a spread does not follow. As you well know, the spread, as plaintiffs have used the term throughout this litigation, is based on the difference between reimbursement and acquisition cost, and thus the existence of an identical reimbursement AWP does not prohibit one party from creating and promoting an advantageous spread. Therefore, please confirm that Amgen has made no allegations regarding the marketing, and/or promoting of Procrit based on a spread between acquisition cost and reimbursement in Amgen's reserved market in any litigation/arbitration/mediation or other legal proceeding from 1991 to the present.

I also disagree with your fourth point. The extremely limited pre-1998 production that OBI has made to date has shed no light on how Procrit was marketed or priced before 1997.

I am now in receipt of your letter of January 29, 2005 and will be responding shortly.

Sincerely,

Allan M. Hoffman.

# EXHIBIT J

**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas    New York, NY 10036 6710    212.336.2000    fax 212.336.2222    www.pbwt.com

Andrew D. Schau
Partner
(212) 336-2546
Direct Fax (212) 336-2160
adschau@pbwt.com

July 1, 2005

**By Fax**

Allan Hoffman
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA 18901

Re:      **In re Pharmaceutical Average Wholesale Price Litigation**

Dear Allan:

Thank you for your letter of June 30, 2005 in which you request confirmation that Amgen has "made no allegations regarding the marketing, and/or promoting of Procrit based on a spread between acquisition cost and reimbursement in Amgen's reserved market in any litigation/arbitration/mediation or other legal proceeding from 1991 to the present."

I believe that this characterization of Amgen's allegations is accurate, i.e. Amgen did not make such allegations. I contacted Amgen's counsel and was advised that Amgen also agrees that the above-quoted statement is accurate.

I don't believe that the balance of your letter requires a response. Have a pleasant Holiday weekend.

Sincerely yours,

Andrew D. Schau

cc: Steven F. Barley, Esq.

# EXHIBIT K

# HOFFMAN & EDELSON, LLC

ATTORNEYS AT LAW
45 WEST COURT STREET
DOYLESTOWN, PENNSYLVANIA 18901

215-230-8043
FAX 215-230-8735

June 28, 2005

JEROLD B. HOFFMAN*
MARC H. EDELSON* *

\* MEMBER PA. & N.J. BARS
\*\* MEMBER PA. & N.Y. BARS

ALAN V. KLEIN*
ADAM ARATEN*
ALLAN M. HOFFMAN*

**Via Facsimile (410) 539-6981 and US Mail**

Steven F. Barley, Esq.
Hogan & Hartson, LLP
111 S. Calvert St., Suite 1600
Baltimore, MD 21202

RE:   *In re: Pharmaceutical Industry Average Wholesale Price*
      *Litigation*, MDL No. 1456 and Amgen Document Production

Dear Mr. Barley:

As you are aware, on March 31, 2004, plaintiffs propounded their Omnibus Discovery Requests on, among others, defendant Amgen. Included among the requests, were plaintiffs' request for "[a]ll documents relating to any legal proceeding (by country, court, caption, case number, etc.), including, but not limited to, court hearings, legislative hearings, mediations and/or arbitrations in which [Amgen was] a party or witness, regarding any allegations relating to AWPs. See Request No. 10.   Plaintiffs also requested "[a]ll affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegations relating to the use of AWP, (See Request No. 11) and all communications with any other manufacturer regarding Medicare reimbursement, marketing practices, pricing rebates, discounts or incentives for any AWPID (See Request No. 81).

Although these document requests were propounded approximately fifteen months ago, and the deadline for producing all responsive documents has long since expired, it is my understanding that Amgen still has not produced <u>any</u> documents to plaintiffs.

Without waiving the right to seek discovery of all of Amgen's responsive documents, plaintiffs request that Amgen immediately produce any and all documents, including, but not limited, to any affidavits, documents, deposition testimony and trial exhibits, produced and/or used by Amgen and/or Ortho Biotech ("OBI"), or any other third-party, in connection with any claims asserted in any legal proceeding including, but not limited to, court hearings, legislative hearings, mediations and/or arbitrations in which Amgen was a party or witness, regarding any allegations that OBI, or any party,

Steven Barley
June 28, 2005
Page 2

intentionally promoted and/or marketed Procrit based on the spread between reimbursement and acquisition cost during the Relevant Time Period.

To the extent such documents exist, please confirm that all such documents will be produced to plaintiffs no later than July 12, 2005.  If you do not intend to timely produce such documents, please contact me immediately.

Sincerely,

Allan M. Hoffman

# EXHIBIT L

# HOGAN & HARTSON

### L.L.P.

STEVEN F. BARLEY
PARTNER
(410) 659-2724
SFBARLEY@HHLAW.COM

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981
WWW.HHLAW.COM

June 29, 2005

*BY FACSIMILE (215) 230-8735*

Allan M. Hoffman, Esquire
Hoffman & Edelson L.L.C.
45 West Court Street
Doylestown, P.A 18901

> Re:   **Pharmaceutical Industry Average Wholesale Price
> Litigation, MDL 1456**

Dear Mr. Hoffman:

I am in receipt of your letter of yesterday evening, to which I respond.

You are now the third lawyer on the plaintiffs' side from whom we have heard regarding Amgen's document production. Initially, we engaged in several meet-and-confer conferences with Mr. Notargiacomo. During those conferences, we discussed the scope and timing of the production of documents by Amgen to the plaintiffs. This Spring, we were advised that we should communicate with Steve Berman rather than continuing discussions with Mr. Notargiacomo concerning Amgen's document production. After being so advised, we held a meet-and-confer conference with Mr. Berman and have been in communication with him on a regular basis about Amgen's document production to the plaintiffs. For this reason, your letter– requesting documents from Amgen that had not been the subject of our discussions with Mr. Berman–came as a surprise.

Your contention that Amgen has not produced "any documents to plaintiffs" is incorrect. Amgen has provided data and documents to Mr. Berman. In addition, we have, through our communications with Mr. Berman, discussed the scope and timing of additional productions of documents to the plaintiffs.

Putting aside the incorrect assertions of your letter, we do not believe the documents you seek are either responsive to the plaintiffs' document production requests or relevant to this litigation. Even if the documents were relevant and

HOGAN & HARTSON L.L.P.

Allan M. Hoffman, Esquire
June 29, 2005
Page 2

responsive, Amgen would not be in a position to produce the documents you request in less than two weeks.

By way of background, Amgen filed an arbitration claiming that Ortho Biotech ("OBI") marketed Procrit for use in Amgen's reserved indication, *i.e.*, dialysis. Amgen sought to terminate OBI's license, in part, on the grounds that OBI failed to take sufficient steps to ensure that Procrit was not administered to dialysis patients. OBI disputed Amgen's claim and Amgen's request for termination was subsequently denied by the arbitrator. As I am sure you are aware, Amgen's claim had nothing to do with AWP pricing or the "spread." In fact, reimbursement for epoetin alfa under the ESRD program is fixed by statute and is not based on AWP.

I understand that OBI has already advised you that, like Amgen, it believes that material relating to the arbitration with Amgen is neither relevant nor responsive. Perhaps it would be best if you continue to deal with OBI's counsel on issues relating to OBI, and allow us to continue to deal with Mr. Berman on issues relating to Amgen. If we are now to be dealing with you regarding discovery directed to Amgen instead of Mr. Berman, please let me know. Otherwise, we believe it is more productive to deal with one attorney or a single firm rather than receiving multiple requests from different law firms concerning Amgen's document production.

Please call me if you wish to discuss this matter further.

Very truly yours,

Steven F. Barley

SFB:jvd

# EXHIBIT M

# HOFFMAN & EDELSON, LLC

ATTORNEYS AT LAW
45 WEST COURT STREET
DOYLESTOWN, PENNSYLVANIA 18901

———————
215-230-8043
FAX 215-230-8735

JEROLD B. HOFFMAN*
MARC H. EDELSON* *

* MEMBER PA. & N.J. BARS
** MEMBER PA. & N.Y. BARS

ALAN V. KLEIN*
ADAM ARATEN*
ALLAN M. HOFFMAN*

July 6, 2005

**<u>Via Facsimile (212) 336-2222</u>**

Andrew Schau, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

RE:   *In re: Pharmaceutical Industry Average Wholesale Price
Litigation*, MDL No. 1456 and OBI Document Production

Dear Andy:

I am writing in response to your letters dated July 5, 2005, and June 29, 2005. In your July 5th letter, you purport to memorialize our conversation during our July 5, 2005 phone call. In your June 29, 2005, letter you purport to memorialize our June 24, 2005 phone call. Unfortunately, your letters do not accurately recount our discussions nor do they incorporate our phone call of Friday July 1, 2005. This letter will serve to clarify our recent discussions regarding the status of OBI discovery.

As you are aware, to date, plaintiffs have taken depositions of only three OBI employees -- a 30(b)(6) deponent and two fact witnesses. On June 17, 2005, two and a half months before the close of discovery, I noticed five depositions – Elaine Kling, Ellen McDonald, Maggie Jahn, Joaquin Duato and Carol Webb. You told me that you Ms. McDonald, Ms. Jahn and Ms. Webb no longer work for J&J, that you will not accept service on their behalf and that I will have to subpoena them, even though, in a prior conversation, you told me that if Ms. Webb was deposed that your firm would represent her. You also told me that you would not produce Ms. Kling or Mr. Duato.

Andrew Schau
July 6, 2005
Page 2

A week later, on June 24, 2005, I noticed the depositions of Cathleen Dooley, John Dempsey, Dick Robbins and Jeff Stewart, all of whom appear to current employees of OBI. Initially, you refused to produce any of these witnesses, but later, on Friday July 1st, you intimated that OBI was going to produce Ms. Dooley. On July 5, 2005 you stated that you would get back to me with a date for Ms. Dooley. Per CMO No. 10, I expect to begin deposing Ms. Dooley on July 15, 2005 or within seven business days thereof. You still have not informed me as to whether you will agree to produce Mr. Dempsey, Mr. Robbins and/or Mr. Stewart.

The arguments that you have raised in your recent letters and telephone calls in opposition to my deposition notices are unpersuasive and obvious efforts to delay discovery. First, you have repeatedly argued that my noticing deponents two and a half months prior to the close of discovery is "too late." However, I am unaware of any law that suggests that discovery can be unilaterally cut off by OBI. Second, your contention that I am limited to three depositions on the marketing, pricing and sales of a drug that has been on the market for more than fourteen years and changed leadership on several occasions is meritless. It is noteworthy that you have never even attempted to object to a deposition question, much less an entire deposition, on the grounds that the testimony was previously covered in another deposition. A primary focus of the 30(b)(6) deposition was to identify relevant documents and witnesses that could speak to such issues. The fact that I took a 30(b)(6) deposition cannot be used as a shield against my taking the testimony of other OBI witnesses with direct, relevant knowledge of critical issues in this case.

Notwithstanding your efforts to delay plaintiffs from taking discovery of OBI witnesses before the discovery deadline expires, your June 29th and July 5th letters misstate many facts and do not accurately reflect our discussions regarding the witnesses that plaintiffs have noticed to date.

Specifically, as to Ms. Kling, who is noticed to be deposed on July 7, 2005, you state in your July 5th letter that you noted that the testimony was duplicative of the testimony of Mr. Hiriak and that I have not identified any new ground to cover. This is not correct. During our conversations, I explained that we are aware that Ms. Kling has had <u>direct contact</u> with publishers on behalf of OBI. She has direct knowledge of the information that she communicated to the publishers and the information communicated from the publishers. Ms. Kling also knows precisely which parties, other than publishers, receive a list of Procrit AWP prices at the time of a price change. Mr. Hiriak could not fully answer these questions and identified Ms. Kling as the most knowledgeable person at OBI to speak on these issues. In addition, Ms. Kling also has direct knowledge regarding contracts. We have seen her name on contracting strategy documents that indicate that she has relevant knowledge about contract terms offered to various customers and has more than an administrative role at the company.

Andrew Schau
July 6, 2005
Page 3

Furthermore, your July 5th letter fails to clarify that it was your firm that proposed providing an affidavit in lieu of plaintiffs taking the deposition of Ms. Kling. Although we agreed to explore whether we could reach an agreement, I have expressly stated that we are not withdrawing the notice of deposition of Ms. Kling unless and until we reach an agreement. Indeed, as of last Friday, you agreed to prepare the initial draft. However, yesterday, to advance the process more rapidly, I agreed to draft a proposed request for admissions in a good faith effort to see whether we can reach an agreement. In the meantime, I continue to await your confirmation of a date within seven business days of the noticed date of July 7, 2005 per the CMO No. 10 for Ms. Kling. I will move to compel Ms. Kling's deposition in the event that we are unable to reach an agreement by the end of this week.

Second, as to Mr. Duato, I have explained that I originally noticed Mr. Duato's deposition based on the testimony of two OBI witnesses who stated that he was the head of oncology and nephrology franchises during an unspecified period between 2000 and 2003. In your June 29 letter, you mistakenly contend that you asked me "to identify any relevant, non-duplicative subject matters that you believed Mr. Duato could testify about that were not already covered by OBI's other witnesses." That was not the discussion that we had. Rather, you represented that Mr. Duato worked in Europe before coming to OBI in 2002. On yesterday's call, you represented for the first time that Mr. Duato has had no involvement in the pricing, marketing or selling of Procrit in the U.S. prior to September 2002. You directed me to the company website for written confirmation of this claim. At the website I was able to find that as of 2001, Mr. Duato was the V.P. of market development, Europe. I was unable to find any additional information. Without waiving my right to take discovery post-filing the complaint in this action, please confirm, ideally by affidavit, that Mr. Duato has no direct knowledge of the pricing, sales and/or marketing of Procrit in the U.S. prior to September 2002. Upon receipt of such confirmation, I will withdraw the notice with respect to his deposition.

Third, as you know, I subpoenaed the deposition of W. Thomas Amick for July 25th and you told me that he had been served, that you were representing him and that he was available on July 26th. I have checked my calendar and I agree to begin his deposition on July 26th. Please confirm that he is also available to complete the deposition if necessary on the 27th and 28th per CMO No. 10. During our call, you said that you would let me know whether the deposition will take place in North Carolina or New York. Please let me know as soon as possible so that I can make the necessary arrangements.

Fourth, yesterday we discussed the reasons for my request of a 30(b)(6) witness regarding document search efforts and production. I explained that based on the language from the Illinois court, plaintiffs have a reasonable basis for believing that sales,

Andrew Schau
July 6, 2005
Page 4

marketing and/or pricing materials that were created during the class period were
introduced to demonstrate OBI's improper promotion of Procrit in the dialysis sector. In
fact, during our call yesterday, you, for the first time, confirmed that Amgen had
introduced documents in legal proceedings as evidence that OBI promoted "incentives"
to customers to attract business away from Amgen. It seems clear that those are
marketing materials that should have been produced to plaintiffs in this litigation and I
am still not clear why these documents have not been produced.   Based on your
representation, it appears that you read the word "allegation" in my June 30, 2005 letter
much more narrowly than it was intended.  One reason you gave for not producing the
material was that it was not "there" at OBI.  Therefore, I want to understand the efforts
that were made to locate responsive documents for the entire period, the efforts to retain
the documents that were utilized in legal proceedings, the efforts to preserve such
documents, where those documents are today and why they have not been produced to us.
The primary purpose is not to "explore document hold notices", although I would like to
understand OBI's document retention and preservation policies and practices regarding
materials used in litigation proceedings.

Fifth, your characterization of my reasons for deposing Mr. Dempsey, Mr.
Stewart, Mr. Amick, Mr. Robbins, Ms. Webb and Mr. Schultz also are incomplete and
inaccurate.  While I am unwilling to provide a roadmap of the areas that I want to explore
with these deponents, we both know that I provided much more detail than what you have
specified in your letter as to why the testimony of these individuals is relevant.  Your
suggestion that I offered nothing but generalities such as I seek their testimony on "sales
and promotion" and because their "names appear on documents" is an absurd
mischaracterization. As an initial matter, you specifically told me on our Friday call that
Mr. Amick and Ms. Webb were "key individuals" in the Procrit story.  Furthermore, for
each named deponent I identified areas of which they have direct, relevant knowledge.
For instance, I explained that Mr. Robbins was the Field Sales Director from 1999-2001,
and has knowledge as to how Procrit was specifically marketed and promoted by the
sales representatives, the materials used, as well as sales policies and practices that were
in place for the sales force at that time.  Mr. Dempsey had been the Director of Managed
Care and documents and testimony show that he has direct knowledge of pricing analyses
and OBI's communications with PBMs.  Jeff Stewart was the head of Strategic Accounts
and has played a significant role in pricing, promotion strategy and policy compliance
since at least 1997.  The names of each of these individuals appears on significant
documents that are relevant to plaintiffs' claims and plaintiffs have a right to take their
depositions.

Andrew Schau
July 6, 2005
Page 5

I also would like to address a few additional issues. First, in your June 29, 2005 letter you contend that all queries regarding documents have been fully answered. I disagree. Based on your recent representation on our call, it appears that OBI has not produced all relevant pre-1998 documents. Second, while Mr. Mangi informed me that Mr. Amick and Mr. Mario were not with the company, we did not discuss whether it would be necessary to subpoena their testimony at that time. Rather, we agreed that I would proceed with Mr. Pearson and Mr. Reedy and then I would determine whether to pursue Mr. Amick and Mr. Mario. In fact, it was only recently, on June 10, 2005, when I asked Adeel whether I would have to subpoena Mr. Amick that he confirmed that I would have to subpoena Mr. Amick and Mr. Mario.

Please let me know, by 12:00 noon July 7, 2005, which witnesses you are willing to produce so that I can determine whether I will need to file a motion to compel with the Court. I look forward to hearing from you shortly.

Sincerely,

Allan M. Hoffman.

# EXHIBIT N

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

Andrew D. Schau
Partner
(212) 336-2546
adschau@pbwt.com

July 8, 2005

**By Fax**

Allan Hoffman
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA 18901

## Re:   **In re Pharmaceutical Average Wholesale Price Litigation**

Dear Allan:

This responds to your letter of July 6, 2005. I will not respond to the inaccuracies in the narrative section of the letter, as I believe my own prior letters are accurate in every detail.

Here is our position with respect to the open discovery issues: First, we have not taken, and will not take, any steps designed to impair your ability to serve subpoenas on Messrs. Amick and Schultz. As we previously indicated, Mr. Amick is available for a deposition on July 26th. For the moment, you should assume that the deposition will take place in North Carolina. If that changes we will let you know. We cannot confirm that Mr. Amick will also be available on July 27th and 28th. We do not believe that the referenced language in CMO 10 was intended to apply to non-party witnesses. If you serve Mr. Schultz with a subpoena, please let us know promptly.

Second, we have not, and will not, take any steps designed to impair your ability to serve a subpoena on Ms. Webb. We complied fully with our legal obligation to provide you with Ms. Webb's last known address as listed in OBP's corporate records. We have made inquiries regarding your statement that she could not be found at her last known address. We will get back to you if we come up with any additional information concerning her present whereabouts. Again, if you serve Ms. Webb with a subpoena, please let us know promptly.

Third, as previously indicated, we will make Ms. Dooley available for a deposition. She is available July 19th in Washington, D.C. In addition, although we had hoped that you would have been willing to engage us in a productive dialogue about whether you intended to cover relevant, noncumulative subject areas with Messrs. Stewart, Robbins, and Dempsey, you have failed to identify any areas you intend to cover with them that have not already been the subject of testimony from previous witnesses. Nonetheless, in the interests of expeditiously completing discovery, we will tentatively agree to proceed on the assumption that you do intend to cover relevant, noncumulative subjects with these witnesses. Accordingly, we

Allan Hoffman
July 8, 2005
Page 2

will make Messrs. Stewart, Robbins, and Dempsey available for deposition and provide you with
proposed dates. We reserve the right to seek a protective order if we determine in the course of
the depositions that you are taking them for an improper purpose.

Fourth, with respect to Ms. Kling, we remain hopeful that we will be able to reach
an agreement that will obviate the deposition. We should try to make that work in good faith. In
that connection, we are waiting for your proposed request for admission. If that proves
unsuccessful, we can revisit the deposition issue at a later date.

Fifth, we are willing to give you a Rule 30(b)(6) witness on document production
and preservation issues, notwithstanding the fact that you have already deposed a Rule 30(b)(6)
witness on these same issues. We will provide dates shortly.

Sixth, if you do not withdraw the notice to depose Mr. Duato, we intend to seek a
protective order. There is no point debating this any further. Please let us know your intentions
as soon as possible. (I just got your email. Mr. Duato had no direct involvement in the pricing,
marketing and or sales of Procrit in the US prior to coming to OBP in September 2002.)

Finally, your most recent demand in your email and fax of July 7, 2005 is, in our
judgment, absurdly overreaching. As we have told you repeatedly, and as Amgen has confirmed,
the issues in that arbitration bore no relation to the issues in this litigation. Given this
fundamental dissimilarity, OBP has no obligation to search through archived and inactive
litigation files on the remote chance that they might contain documents that would be responsive
to your requests in this case. Indeed, we suspect that counsel for plaintiffs did not search through
unrelated litigation files from prior disputes involving the Board of Trustees of Carpenters and
Millwrights of Huston and Vicinity Welfare Fund, the Teamsters Health & Welfare Fund of
Philadelphia and Vicinity, the Twin Cities Bakery Workers Health and Welfare Fund, the United
Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, the
Philadelphia Federation of Teachers Health and Welfare Fund, the Man-U Service Contract and
Trust Fund, the Vermont Public Interest Research Group, the Wisconsin Citizen Action, the New
York StateWide Senior Action Council, the Citizen Action of New York, or the Citizens for
Consumer Justice.

Moreover, your request appears to assume that OBP is obliged to produce to you
every document that in any way "refer, concern or relate to" OBP's "discounts, rebates, credits
and/or any other remuneration offered and/or provided by J&J, OBI, OBI's sales representatives
and/or any third parties to customers and/or potential customers." That request is breathtakingly
overbroad, and vastly exceeds the scope of production that the parties agreed to. As you know,
and as reflected OBP's Responses to Plaintiffs' Requests for Production of Documents, OBP
agreed to produce documents and data "sufficient to determine" any discounts, rebates,
incentives or penalties concerning Procrit. OBP has complied with its discovery obligations in
good faith and will not agree now to your last-minute attempt to enlarge the scope of discovery.

1197830v1

Allan Hoffman
July 8, 2005
Page 3

Sincerely yours,

Andrew D. Schau

Enclosure

# EXHIBIT O

## Allan Hoffman

**From:**  Schau, Andrew D. (x2546) [ADSCHAU@PBWT.COM]

**Sent:**  Friday, July 22, 2005 5:33 PM

**To:**  'Allan Hoffman'

**Subject:** RE: Amick

Let's talk about it some more.  I really don't understand why the search I propose "would fail to incorporate any of OBI's sales or promotional efforts or materials offering incentives such as rebates, discounts, credits or other remuneration that lowers acquisition cost and creates a spread between acquisition cost and reimbursement based on AWP."

> ----Original Message-----
> **From:** Allan Hoffman [mailto:ahoffman@hofedlaw.com]
> **Sent:** Friday, July 22, 2005 5:23 PM
> **To:** Schau, Andrew D. (x2546)
> **Subject:** RE: Amick
>
> The deposition is Tuesday, correct?  As of now, I will be the only attorney for plaintiffs.
>
> In addition, Andy, I have had a chance to confer with my co-counsel regarding your most recent proposal regarding your production of documents from any legal proceeding involving any written or oral assertion by Amgen that OBI promoted Procrit to customers or potential customers in Amgen's dialysis market, and we do not believe that your current search will capture all relevant and responsive documents.
>
> It is clear that even in the ESRD market, at least some reimbursement is based on AWP pricing. Therefore, your current offer merely to retrieve and review OBI's documents and hearing transcripts to ascertain whether there is anything relating to "AWP or the marketing of the spread between AWP-based reimbursment and acquisition cost" is too narrow a search, as it would fail to incorporate any of OBI's sales or promotional efforts or materials offering incentives such as rebates, discounts, credits or other remuneration that lowers acquisition cost and creates a spread between acquisition cost and reimbursement based on AWP. Indeed, you have indicated that a search under your current proposal is unlikely to produce any responsive material. However, as we have discussed, relevant material can exist even if there is no express reference to AWP. Accordingly, your currrent offer is unacceptable to plaintiffs.
>
> As to Amgen's documents, to the extent you do possess such materials, I believe that the confidentiality order in place in this case would provide sufficient protection to both OBI and Amgen.
>
> As always Andy, I am willing to work with you to see if we can reach an acceptable agreement.  However, it is late in the discovery period and your failure to produce any material from a litigation that is relevant to this case and with which you are intimately familiar, especially in light of OBI's limited pre-1998 production to date, is extremely prejudicial to plaintiffs.  Unless you are willing to broaden your search to timely review and produce documents such as marketing and sales materials and/or communications that refer or relate to reimbursement or economic incentives such as discounts, rebates credits or other remuneration offered by OBI, its sales representatives and/or third-parties acting on its behalf, plaintiffs will have no choice but fto ile a motion to compel with the court.

---------------------------------------------------------------------------

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the

8/15/05

sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

--------------------------------------------------------------------------

IRS Circular 230 disclosure: Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)
========================================================================