UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE LITIGATION | ) | |
| | ) | |
| | ) | |
| | ) | MDL NO. 1456 |
| | ) | Civil Action No: 01-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saria |
| THIS DOCUMENT RELATES TO | ) | (case pending in D. Mass.) |
| ALL ACTIONS. | ) | |

## HEALTH ALLIANCE PLAN OF MICHIGAN'S
## OBJECTION AND RESPONSE TO SUBPOENA

NOW COMES Health Alliance Plan of Michigan (HAP) by way of response to a Subpoena dated July 5, 2005 requesting production of documents.  HAP serves the following objection and response.  The Subpoena, including Schedule A, Documents To Be Produced, fails to comply with the requirements of Federal Rule of Civil Procedure 45(C)(1) in that the party issuing the Subpoena failed to take reasonable steps to avoid imposing undue burden or expense on the person subject to the Subpoena.  The Subpoena is so broad that unless non-party respondent HAP invests thousands of dollars and many hours of employee and consultant time, it will not be able to even formulate an inclusive objection or fully comply with the requirement that it provide a complete description of the documents which may be protected and not subject to Subpoena.  The Subpoena requests documents in such a form that unless the respondent creates a special computer program to sort its data, it cannot locate the information requested in paragraphs 4, 5 or 6.

The overbroad nature of the request subjects non-party respondent to inadvertent

disclosure of privileged and protected health information; although, respondent has been advised that the Court has entered a Stipulated Protective Order governing Confidential Health Information. Paragraph V(c) excludes from the protection of that order and therefore permits exclusion from production of any information afforded heightened protection by federal, state and local laws including alcohol or substance abuse, sexually transmitted diseases, mental health or genetic testing. Both Michigan statutes and Federal statutes include such heightened protection in these areas. Without the creation of special computer programs to sort the claims information requested, non-party respondent HAP is unable to determine whether or not any of the claims information requested may relate to such heightened protected areas, and even then may require actual personal review of millions of member claims to permit HAP to "completely exclude from production any information afforded heightened protection by such federal, state or local laws."

While the Stipulated Protective Order Governing Confidential Health Information purports to relieve non-parties of the HIPAA prohibitions against disclosure of protected health information, the order does not expressly relieve non-party respondent HAP of the requirements under the Privacy of Individually Identifiable Health Information, 45 CFR parts 160 and 164 requirements to notify individuals whose health information is being disclosed. Please see 45 CFR 164.501 and 164.502(c)(2). As a result, any compliance with the Subpoena would require HAP to notify hundreds of thousands of individuals, allow them an opportunity to object to the proposed disclosure and review those objections in accordance with HIPAA. Such notification and review of potential member objections would subject non-party HAP to unreasonable undue expense and burden.

2

In addition, HIPAA requires a party disclosing protective health information to maintain a "disclosure log" such that HAP may be required to determine each person who receives the information through the litigation to include their identity on the required disclosure log for each member whose protected health information is disclosed in response to the subpoena.

The information requested is so broad that it is in essence company-wide involving many different departments and in many cases would require a complete search of all company e-mails, notes, memoranda and other documents from 1991 through 2005 in order to comply.

The party issuing the subpoena also failed to comply with the requirement of Federal Rule of Civil Procedure 45 to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena by failing to provide an identification of all counsel of record, thereby impeding non-party HAP's ability to obtain confidentiality protection under this Court's Protective Order.  Paragraph 22 of that Protective Order provides in order to obtain the protections afforded by the Order, HAP must not only sign a copy of the Order but serve "same on all counsel of record."

HAP incorporates the preceding global objections in its responses to Schedule A, Documents To Be Produced.

1.     HAP objects to the production of provider reimbursement contracts as proprietary, overly burdensome, posing undue and unreasonable expense whose disclosure would place HAP at a competitive disadvantage.  The provider contracts themselves state that they are confidential.  The subpoena requests the original and any non-identical copy of all provider contracts

3

reflecting reimbursement issued by HAP between 1991 and 2005. Please see definition 7 and instruction 1.   HAP contracts with approximately 40 hospitals, 8,000 physicians and 800 ancillary providers, including pharmacies, skilled nursing homes, etc. Its contracts have an average of 2 to 3 years in length. The contracts do not contain any uniform methodology or rate provided or reimbursement for administration of medications. HAP also enters into "at risk" contracts with capitated payments subject to adjustment at the end of a fiscal period which would include reimbursement for administration of medications. The terms of the cost-sharing or "at risk" contracts are also proprietary and confidential in addition to being voluminous. Disclosure of the information would provide competitors with confidential and sensitive trade information by way of insight into HAP's negotiations with providers. Disclosure of the requested information would also require release of very sensitive provider information which could create significant financial hardship to HAP by permitting providers to discover what terms have been offered to other providers.

2.   HAP does not maintain a fee schedule solely for the drugs listed on Exhibit A and it would be required to produce and generate documents not kept in the regular course of business in order to comply with this request.   In addition, fee schedules may not include a fee for each drug listed on Exhibit A, or for other drugs, in such cases providers would be reimbursed on some other methodology requiring investigation as to each drug. Furthermore such methodologies vary provider to provider and would require a manual review

4

of thousands of contracts, as well as fee schedules.

3.      HAP does not receive nor retain rebate reports on a drug-by-drug basis which would require it to generate additional documents not retained in the regular course of business if it were able to comply with the request. The request is unduly burdensome and voluminous requesting documents from 1991 through 2005.

4.      (a) HAP does not maintain a separate record of the information requested. To the extent such information may be in the possession of HAP it would be imbedded within numerous other sources which would require an unduly burdensome and expensive manual search. By way of example, information could be contained within rate appeals filed by providers from 1991 to the present time but would likely only be a very small component of such materials and is not likely to be reasonably identified even in a manual search. Further manual effort would be required to determine the existence of and then isolate, any materials which might be responsive to the drugs listed on Exhibit A.

(b) HAP does not maintain a separate record of the information requested. To the extent such information may be in the possession of HAP it would be imbedded within numerous other sources which would require an unduly burdensome and expenses manual search. By way of example, information could be contained within rate appeals filed by providers from 1991 to the present time but would likely only be a very small component of such materials and is not likely to be reasonably identified even in a manual

5

search.  Further manual effort would be required to determine the existence of and then isolate, any materials which might be responsive to the drugs listed on Exhibit A.

(c) Compliance would require review of virtually company-wide notes, e-mails and memoranda from 1991 through 2005 by manual review to determine whether or not the subject requested is addressed.  Such a request is unduly burdensome and would subject non-party HAP to undue expense.

5.   The information requested is unduly burdensome and would subject HAP to unreasonable expense in addition to requiring highly sensitive information concerning "all strategic plans and business plans."  It also requests "all documents * * * indicating * * * an incentive or preference to administer drugs in a provider's office rather than a hospital setting."  In order to comply with this request, HAP would be required to review all notes, memoranda and e-mails and other documents generated between 1991 and 2005 by manual review to determine whether or not the subject of the request is addressed. In addition, HAP does not maintain claims data in the form requested which would require HAP to create, or retain a consultant to create, a computer program to search various data sources in an attempt to isolate medical claims data for the drugs requested.  This would require a search of millions of claims if such a program could be created.  Disclosure of the information requested may also violate Michigan statutory confidentiality provisions, including MCL 333.17752.

6.   HAP does not maintain medical claims data in the form requested and it

6

would be required to create a costly computer program, if such a program can be created, to search millions of medical claims from 1991 through 2005.

Disclosure of the information requested may also violate Michigan statutory confidentiality provisions, including MCL 333.17752.    Furthermore, this request requires disclosure of "all data regarding reimbursements for <u>related</u> administration or service fees."  Definition 16 fails to define "related" in any meaningful way, but if read at its broadest would require any data in any way connected with the administration of such drugs, including the purpose for treatment which may involve separately protected information not subject to disclosure under this Court's Protective Order.  HAP may not be able to determine whether the related data requested should be excluded without hands on examination of each claim.  HAP's reimbursement rates and the methods by which they are determined are proprietary and confidential and involve trade sensitive information which should not be subject to disclosure. HAP does not maintain claim records separately for or by provider administration of any drug and certainly not for only those drugs listed on Exhibit A.

7.    So far as HAP has been reasonably able to determine, it has not produced any of the requested documents previously in "AWP" litigation. To the extent the request seeks copies of any document HAP may have disclosed in member billing disputes, lien, subrogation reimbursement matters or disputes with providers, HAP objects on the basis of undue burden and unreasonable expense as it is not readily able to determine even a record of such disputes,

let alone what may have been produced in the course of such disputes.

8.      HAP does maintain retail pharmacy MAC list which are updated quarterly but does not maintain such list solely for the drugs listed on Schedule A.   HAP objects to production of "all documents reflecting how those MACs were generated" for the reason that it is proprietary and contains trade sensitive information and is unduly burdensome, as it would require HAP to review notes, e-mails, memoranda and other materials company-wide from 1991 through 2005 in order to comply with the request.

Respectfully submitted,

FEIKENS, STEVENS, KENNEDY
 & GALBRAITH, P.C.

By:_____

LEE A. STEVENS P29285
Attorney for HEALTH ALLIANCE PLAN
660 Woodward Ave, Ste 700
Detroit, MI  48226-3516
313-962-5909/Fax: 313-962-3125

Dated: July _____, 2005

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| | | MDL NO. 1456<br>Civil Action No: 01-12257-PBS |
| ------------------------------------------------------- | )<br>) | |
| THIS DOCUMENT RELATES TO<br>ALL ACTIONS. | )<br>)<br>) | Judge Patti B. Saria<br>(case pending in D. Mass.) |

---

## PROOF OF SERVICE

### PROOF OF SERVICE

**Re:** **1.** **HEALTH ALLIANCE PLAN OF MICHIGAN'S OBJECTION AND RESPONSE TO SUBPOENA; and**

**2.** **PROOF OF SERVICE.**

The undersigned certifies that a copy of the foregoing instrument was served on **July 18, 2005**, upon all parties of record herein at their respective addresses disclosed on the pleadings.

By:  _X_  U.S. Mail
____  Hand Delivered
____  Federal Express
____  FAX

I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

Renée Barnes