UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | Judge Patti B. Saris |

### GLAXOSMITHKLINE'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PROHIBIT THE DEPOSITIONS OF ATTORNEYS URSULA BARTELS AND ADRIANNA CARTER

Pursuant to Local Rule 7.1(b)(3), defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") hereby respectfully submits this Reply to Plaintiffs' Opposition to GSK's Motion for a Protective Order to Prohibit the Depositions of Ursula Bartels and Adrianna Carter ("Plaintiffs' Opposition"). Plaintiffs' Opposition crudely mischaracterizes the record and misstates the law while failing to provide a single compelling reason why plaintiffs should be permitted to depose attorneys Ursula Bartels and Adrianna Carter. Rather than demonstrating why they need to invade the attorney-client and work product privileges, plaintiffs' submission unambiguously establishes their own failure to pursue from other sources the information they now purport to seek from counsel to GSK, and makes clear that the only reason they wish to depose Ms. Bartels and Ms. Carter is to obtain privileged communications or protected work product they are not entitled to in any event. Accordingly, this Court should grant the Motion for Protective Order and prohibit the depositions of Ursula Bartels and Adrianna Carter.

## ARGUMENT

A. **Plaintiffs Have Failed To Demonstrate That No Other Means Exist To Obtain The Information They Seek From Ms. Bartels and Ms. Carter.**

Since the mere request by plaintiffs to depose opposing counsel gives rise to "good cause" for a protective order, they bear the burden of demonstrating that the depositions of Ms. Bartels and Ms. Carter are necessary because they have no other way to obtain the information they seek than to depose opposing counsel. See Dunkin' Donuts, Inc. v. Mandorico, 181 F.R.D. 208, 211 (D.P.R. 1998) (citing Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)).[1] Plaintiffs' Opposition illustrates that they cannot meet their burden. Ms. Bartels and Ms. Carter clearly are not the "exclusive" sources of the information that plaintiffs seek. See, e.g., Boughton v. Cotter Corp., 65 F.3d 823, 830-31 (10th Cir. 1995); Stalling v. Union Pac. R.R. Co., 2004 U.S. Dist. LEXIS 863, *6-9 (N.D. Ill. Jan. 23, 2004). Plaintiffs received copies of the correspondence between Ms. Bartels and Ms. Carter well before they filed their complaint in 2002, and have since deposed numerous witnesses made available by GSK, many of whom had responsibility for Zofran sales and marketing during the relevant time period. Notwithstanding the alleged centrality of these letters to their claims, under the heading "Efforts to Discover the Underlying Facts," plaintiffs could identify only two witnesses, William DeVinney (deposed on March 16, 2005) and Ken Marshall (deposed on July 26, 2005), that they examined, and only within the last six months, about alleged "homemade" promotional materials

---

[1] Contrary to plaintiffs' claim, Dunkin' Donuts and Shelton apply here despite the fact that Ms. Bartels and Ms. Carter are former GSK attorneys. (Plaintiffs are incorrect in this assertion at least as to Ms. Carter, who presently serves as Vice President and Associate General Counsel at GSK.) The deposition of an opposing counsel is frowned upon not only for its potential for disruption, but also because it "merely embroils the parties and the court in controversies over the attorney-client privilege and more importantly, involves forays into the area most protected by the work product doctrine – that involving an attorney's mental impressions or opinions." N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D.N.C. 1987). These concerns, and the principles set forth in Dunkin' Donuts and Shelton, apply with equal force to the depositions of counsel to an opponent who are not attorneys of record or who are former counsel to an opponent. See, e.g., Massachusetts Mut. Life Ins. Co. v. Cerf, 177 F.R.D. 472, 481 (N.D. Cal. 1998) (prohibiting deposition of former counsel in underlying divorce cases); N.F.A. Corp., 117 F.R.D. at 86 (prohibiting deposition of plaintiff's patent counsel).

and company policies against marketing the reimbursement spread. See Plaintiffs' Opposition, at 5-6.

Plaintiffs could have examined every witness with knowledge of Zofran sales and marketing around the time of the correspondence between Ms. Bartels and Ms. Carter about alleged "homemade" promotional materials and company policies against marketing the reimbursement spread. In Boughton, plaintiffs seeking to depose opposing counsel argued that "they should not be required to question many witnesses who may not possess the necessary information and that, in any event, no one other than the lawyer himself can explain what he meant by what he said." 65 F.3d at 830. The Tenth Circuit squarely rejected this argument and affirmed the entry of a protective order barring the deposition, noting that "the plaintiffs did not even fully explore those matters upon which they wished to inquire of defendant's counsel with the witnesses they did depose. It is certainly not too much to expect the plaintiffs to seek information from the sources they chose to pursue." Id.; see also Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 67 (1st Cir. 2003) (affirming decision to quash subpoena against opposing counsel where after years of discovery, plaintiff "made no showing that she was unable to obtain the evidence from other sources," and the testimony sought "could have been obtained from any number of witnesses other than [opposing counsel]"); M&R Amusements Corp. v. Blair, 142 F.R.D. 304, 306 (N.D. Ill. 1992) ("The rule requires exhaustion of all other reasonable alternatives before a party should seek to depose his opponent's attorney.").

Plaintiffs' misleading description of their efforts to depose David Cory, a former GSK employee who served as a Zofran Product Manager in 1995, betrays their true intent in pursuing the depositions of Ms. Bartels and Ms. Carter. First, although they did not disclose it to the Court, plaintiffs are well aware that the only reason Mr. Cory may invoke his Fifth Amendment

privilege against self-incrimination if deposed is because he received a target letter in an unrelated grand jury investigation concerning his former employment with another company, not because of any testimony he would give concerning his former employment with GSK. See Ex. A (Letter from Brian K. French, Esq. to David S. Nalven, Esq., dated August 24, 2005). Perhaps what is even more telling is that plaintiffs have repeatedly represented that they wish to depose Mr. Cory for the primary purpose of authenticating certain documents, and at times have even expressed a willingness to withdraw their subpoena of Mr. Cory in exchange for a stipulation by GSK that those documents are authentic (a stipulation that GSK has offered to make). Id. This, paired with their failure to question other witnesses about alleged "homemade" promotional materials and policies against marketing the reimbursement spread, makes plaintiffs' claim that GSK somehow impeded their ability to obtain information seem particularly disingenuous.

That Ms. Bartels and Ms. Carter may possess some limited amount of non-privileged knowledge on these issues is beside the point, because any relevant non-privileged information they may have already has been made available to plaintiffs through other means.[2] For example, plaintiffs claim they must depose Ms. Bartels and Ms. Carter to get at "who prepared, received and reviewed the written communications, and what were the circumstances that gave rise to their exchange." See Plaintiffs' Opposition, at 7. However, to the extent it is not privileged or protected by attorney work product, this information is clearly disclosed in the correspondence that plaintiffs already possess. Plaintiffs are not entitled to depose counsel merely to "explore further" facts which they already have. Stalling v. Union Pac. R.R. Co., 2004 U.S. Dist.

---

[2] Many lawyers may possess *some* modicum of knowledge which is not privileged or protected by the attorney work product doctrine. That, of course, is not the standard that courts apply to determine whether counsel can and should be deposed. Even when the information sought is not privileged, the deposition of opposing counsel is warranted only if the information sought is "relevant to a major issue in the case," there are "no other means for obtaining the relevant information," and "the need for the information outweighs the inherent risks of deposing opposition counsel." M&R Amusements Corp., 142 F.R.D. at 306.

4

LEXIS 863, *6-9 (N.D. Ill. Jan. 23, 2004) (quashing deposition of opposing counsel where the information plaintiff sought "is available in materials already produced"). In fact, the letters themselves, and other related documents produced by GSK, are likely the best source of the information that plaintiffs seek. See Doubleday v. Ruh, 149 F.R.D. 601, 613-14 (E.D. Cal. 1993) (disallowing deposition of district attorney where the prosecutorial file was "not only a good alternate means, but may also be more complete and accurate," because a written record "may stand the test of time better than the individual attorney's memory of the case"). Ms. Bartels and Ms. Carter do not possess any relevant, discoverable information that the plaintiffs could not obtain from myriad other sources. Thus, they should not be deposed.

### B. Plaintiffs Are Not Entitled To Testimony Protected By The Attorney-Client Privilege And The Work Product Doctrine.

Since they already possess or have been given access to any relevant, non-privileged information surrounding the alleged "homemade" promotional materials and policies against marketing the reimbursement spread, it is readily apparent that what the plaintiffs truly seek from Ms. Bartels and Ms. Carter is information that is protected by the attorney-client privilege and the work product doctrine.[3] It is therefore no coincidence that most of Plaintiffs' Opposition is an uninspired attempt to convince this Court that the attorney-client privilege and work product doctrines do not apply to the mental impressions, conclusions, opinions and legal theories of GSK's lawyers, and the internal communications they had with their respective employees.

First, plaintiffs imply that the attorney-client privilege does not apply to Ms. Bartels and Ms. Carter, because the assertion of the privilege by in-house attorneys is automatically "subject to question" and "additional considerations are involved." See Plaintiffs Opposition, at 8-9. To

---

[3] After identifying only two witnesses that they examined on the subject, the plaintiffs ironically state that they "have not obtained the information sought" and "have not identified witnesses with the knowledge that would obviously be held by the authors of the letters." Plaintiffs' Opposition, at 11.

the contrary, the fact that an attorney is in-house, not counsel of record, "is not determinative." See, e.g., Epling v. UCB Films, Inc., 204 F.R.D. 691, 694 (D. Kan. 2001). While "the attorney client privilege attaches only when the attorney acts in that capacity" and "does not apply when in-house counsel is engaged in non-legal work," Borase v. M/A Com, Inc., 171 F.R.D. 10, 14 (D. Mass. 1997), there is nothing to suggest that Ms. Bartels and Ms. Carter were acting as anything other than legal advisors in this matter. They were not acting merely as administrators, see Epling, 204 F.R.D. at 694, nor were they business executives making operating decisions or commitments without prior approval from management, see Boughton, 65 F.3d at 829 (in-house counsel who served as an "intermediary" who was "not authorized to make commitments on behalf of the company without prior approval from management" was acting in his capacity as an attorney). Rather, Ms. Bartels and Ms. Carter were acting as lawyers investigating claims that their clients had allegedly engaged in certain sales and marketing practices that had the potential of exposing SKB and Glaxo to possible sanctions, and for the purpose of providing legal advice to their clients concerning legally permissible marketing practices. While Ms. Bartels and Ms. Carter may have exchanged business information with their respective employees during this process, that information was exchanged in the larger context of responding to requests for legal advice, for example, about whether the marketing practices in question were illegal or whether legal action should be taken. As this Court observed in Borase, the principal case cited by plaintiffs, "client communications intended to keep the attorney apprised of business matters may be privileged if they embody 'an implied request for legal advice based thereon.'" 171 F.R.D. at 14 (internal citation omitted).

Next, plaintiffs argue that the work product doctrine does not apply to the activities of Ms. Bartels and Ms. Carter because that doctrine "protects only those activities undertaken

6

'because of actual or impending litigation.'" As GSK noted in its principal brief, plaintiffs misinterpret the law of this Court and the First Circuit. In one case they cite, In re Lernout & Hauspie Securities Lit., this Court stated that for work product protection to apply, "litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." 222 F.R.D. 29, 36 (D. Mass. 2004) (quoting In re Grand Jury Subpoena, 220 F.R.D. 130, 148 (D. Mass. 2004) (internal citation omitted)). In the other case plaintiffs cite, State of Maine v. United States Dept. of the Interior, 298 F.3d 60 (1st Cir. 2003), the First Circuit expressly defined protected work product to include documents that "can fairly be said to have been prepared or obtained because of the prospect of litigation," including "documents which, although prepared because of expected litigation, are intended to inform a business decision influenced by the prospects of litigation." Id. at 68 (quoting United States v. Adlman, 134 F.3d 1194, 1197-1202 (2d Cir. 1998)). Ms. Bartels and Ms. Carter conducted their investigations and formed opinions concerning the use of alleged "homemade" promotional materials that were potentially violative of FDA regulations specifically because of the prospect of litigation or potential liability and to inform their clients' business decisions on marketing to avoid future litigation or potential liability, not in the ordinary course of business.

Third, plaintiffs claim that even if the attorney-client privilege and work product doctrine did apply, then either GSK waived those protections by "use of the investigation to defend against allegations of wrongdoing," see Plaintiffs Opposition, at 10, or Ms. Bartels and Ms. Carter waived those protections through their disclosure of certain facts in their letters to one another. First, GSK has not asserted the internal investigations conducted by Ms. Bartels and Ms. Carter as a defense to plaintiffs' allegations of wrongdoing; nowhere do plaintiffs describe the nature of this purported defense or the circumstances under which GSK is supposed to have

7

raised it. Moreover, the information Ms. Bartels and Ms. Carter disclosed in their letters was not privileged or protected by the work product doctrine – thus, its disclosure did not waive any privilege. See, e.g., Rupert v. United States, 225 F.R.D. 154 (E.D. Pa. 2004) (detailed factual memorandum of positions taken by the parties that was disclosed by the IRS was not privileged and did not effect a waiver). While plaintiffs argue that GSK wants to both "use its purportedly lawyer directed conduct as a sword" and "use privilege as a shield," nothing could be further from the truth. GSK disclosed to the plaintiffs precisely the same information that SKB and Glaxo exchanged, and has not attempted to use as a shield in this litigation what it may have used as a sword in the past.[4] It is well settled in this Court that the disclosure of attorney-client communications during the business negotiation of settlements "cannot work an implied waiver of all confidential communications on the same subject matter" if they are "not thereafter used by the client to gain adversarial advantage in judicial proceedings." In re Keeper of the Records of XYZ Corp. v. United States, 348 F.3d 16, 24 (1st Cir. 2003); Ken's Foods, Inc. v. Ken's Steak House, 213 F.R.D. 89, 97 (D. Mass. 2002) (disclosure of memorandum in context of settlement negotiations provided "no basis for extending the waiver beyond the document itself").

Plaintiffs have, or could have obtained, all of the relevant, non-privileged information on the subjects of alleged "homemade" promotional materials and policies against marketing the reimbursement spread from other sources. The information that plaintiffs want from Ms. Bartels and Ms. Carter is attorney-client privileged and protected by the work product doctrine, and beyond the scope of discovery in any event. Accordingly, the depositions should be prohibited.

---

[4] Thus, the case cited by plaintiffs, Permian Corp. v. United States, 665 F.2d 1214, 1221 (D.C. Cir. 1981), is inapposite. In Permian, the court found a waiver of attorney-client privilege when the plaintiff attempted to shield from production to the Department of Energy the same documents it had already produced to the SEC. Id.

## CONCLUSION

For the foregoing reasons, this Court should grant GSK's motion and issue a Protective Order precluding the depositions of Ursula Bartels and Adrianna Carter.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), GSK hereby requests oral argument on its Motion for a Protective Order to Prohibit the Depositions of Attorneys Ursula Bartels and Adrianna Carter.

|  | Respectfully submitted,<br><br>By: /s/ **Mona M. Patel**<br>    Mark D. Seltzer<br>    Mona M. Patel<br>    Seth B. Kosto<br>    Holland & Knight LLP<br>    10 St. James Avenue<br>    Boston, MA 02116<br>    Telephone: (617) 523-2700<br>    Facsimile: (617) 523-6850<br><br>    Mark Lynch<br>    Geoffrey Hobart<br>    Matthew J. O'Connor<br>    Covington & Burling<br>    1201 Pennsylvania Avenue<br>    Washington, DC 20004<br>    Telephone: (202) 662-6000<br>    Facsimile: (202) 662-6291<br><br>    Frederick G. Herold<br>    Dechert LLP<br>    975 Page Mill Road<br>    Palo Alto, CA 94304<br>    Telephone: (650) 813-4930<br>    Facsimile: (650) 813-4848<br><br>    Thomas H. Lee II<br>    Dechert LLP<br>    4000 Verizon Tower<br>    1717 Arch Street<br>    Philadelphia, PA 19103-2793<br>    Telephone:  (215) 994-2994<br>    Facsimile: (215) 994-2222 |
|---|---|

9

|  | *COUNSEL FOR*<br>*SMITHKLINE BEECHAM CORP.,*<br>*D/B/A GLAXOSMITHKLINE* |
|---|---|
| Dated: August 26, 2005 |  |

## CERTIFICATE OF SERVICE

Docket No. MDL 1456

    I, Mona M. Patel, hereby certify that I am one of GSK's attorneys and that, on August 26, 2005, I caused copies of the within Reply in Support of Motion For Protective Order to Prohibit the Depositions of Attorneys Ursula Bartels and Adrianna Carter to be served via Verilaw on all counsel of record.

                                                                    **/s/ Mona M. Patel**

Dated: August 26, 2005

\# 3170363_v3