# Exhibit C

THE | WEXLER | FIRM LLP

May 26, 2004

VIA FACSIMILE & E-MAIL

Ms. Kimberley Harris
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

RE: In *re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

Dear Kim:

Pursuant to your request during this morning's continued meet and confer, set forth below is plaintiffs' response to your May 21, 2004 proposal, corrections to the prior agreements we made, and the further scope proposals you requested. I have generally tried to follow the outline of your May 21 letter and this morning's meet and confer.

To sum up two undisputed issues, we agreed that you would provide me by Friday with the names, designations and availability of the persons who are responsive to the topics in the 30(b)(6) notice for which Mr. Freeberry was not the designee. We also agreed to defer a conversation on the privilege dispute until some time next week after the following document-related issues are resolved.

**Extension of Time to Respond to the Motion to Compel**

Plaintiffs will agree to a one-week extension of time to respond to the motion to compel as AstraZeneca's ("AZ") objection regarding the time period of documents to be produced relates to hard copy documents. The one-week time period will provide both parties with the opportunity to further discuss the issues set forth in your May 21 letter, my May 24 letter and today's letter.

However, as we discussed, plaintiffs will not agree to any extension as AZ's objection relates to transactional data.

Contact Information: Elizabeth Anne Fegan
312 261 6191 Direct Dial
eafegan@wexlerfirm.com

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
www.wexlerfirm.com

THE | WEXLER | FIRM LLP



situation -- which is that an index exists that would aid both parties in greatly narrowing the scope of production and thus the burden on AZ.

We obviously discussed all of above this morning. I asked at the end of that conversation whether we could agree to disagree on this subject and thus agree that we had conducted the meet and confer required by the local rules in order to bring this issue to the Court's attention. You said no, although I am unclear why. Unless AZ agrees by Friday to produce this index for the documents in storage, we will consider this issue to be a disputed one to be decided by the Court.

**E-Mail Search**

In my May 24 letter, we proposed that AZ conduct a search of its e-mails with plaintiffs' proposed search terms. You advised me that AZ has already conducted an e-mail search of just its Pricing Strategy Group with different search terms. I objected to limiting the e-mail search to just the Pricing Strategy Group and further requested that you provide me with a copy of the search terms that AZ chose so that we can have a meaningful discussion about the responsiveness of the search. You agreed to set out in writing the process by which the search was conducted and the department(s) for which AZ would conduct an e-mail search. As soon as we receive this, we can discuss this issue further.

**Requests 29 and 70**

As you know, Requests 29 and 70 generally request contracts for the sale of any AWPID, together with correspondence and related negotiation/RFP material. AZ proposed to limit AZ's response to just contracts with PBMs, retailers and wholesalers. As we discussed, plaintiffs cannot agree to this proposal because (i) it does not encompass every customer group with which AZ has contracts; and (ii) does not include the full scope of correspondence and other related material requested. You thus requested that plaintiffs formulate a proposal.

Plaintiffs propose as follows: For each customer category, provide documents related to the "top 50," "middle 50," and "bottom 50" customers in terms of aggregate annual sales dollars. Obviously, the companies that fit one of these profiles may differ by year; plaintiffs' proposal would require that the responsive documents be produced for all customers that fall within one of those categories in any relevant year. For the PBMs, contracts and all related documents as set forth in the requests with AdvancePCS, Caremark, Express Scripts, Medco and their predecessor entities would suffice. For wholesalers, contracts and all related documents as set forth in the requests with McKesson, AmerisourceBergen and Cardinal will suffice. This should be a fair initial

limitation that will ease the burden on scope of the documents that must be retrieved and produced and will provide a broader cross section of evidence.

Plaintiffs' proposal is not a waiver of our right to request additional responsive documents from any of these customer groups.

**Group/Department Files to be Searched**

We generally agreed that AZ's search for responsive documents would be limited to the Managed Markets/Pricing Strategy Group, subject to confirmation at the 30(b)(6) deposition. As we discussed this morning, we found at Mr. Freeberry's deposition last week (as stated in my May 24 letter) that this may not be sufficient because of line reporting and approval processes through which decisions are made.

You intimated that perhaps I was confused about the hierarchy at the company. I suggested that the simple production of the organizational charts (in response to Requests Nos. 2 and 20) that Mr. Freeberry testified exist on AZ's intranet under the Human Resources/Personnel Department would obviate your stated frustration with my purported lack of knowledge. Moreover, as defendants (and you specifically) requested in the meet and confers on plaintiffs' productions, production of these charts and identification of the persons who hold the relevant positions would, perhaps, allow for a more focused discussion and agreement among us. You balked at this suggestion, stating that I should know enough about the company by now from Mr. Freeberry's deposition and the production of the Zoladex documents. However, what both have taught me is that there are other groups/departments/teams/committees above the Managed Markets/Pricing Strategy Group that have information specifically responsive to plaintiffs' requests. Let's find a way to identify those from the organizational charts and move forward.

**Miscellaneous Requests**

- **Request 3:** We will agree to limit the response to this request to any company, organizational and policy information relevant to this litigation.
- **Request 4:** Plaintiffs will not agree to the limitation proposed. There certainly is no burden on AZ to produce documents **sufficient to identify** its electronic mail, document management and other automated information systems. Moreover, the standard only requires that the request identify documents that are likely to lead to the discovery of admissible evidence, which standard is certainly met here -- particularly where AZ's production to date has been in electronic form in its entirety.

THE | WEXLER | FIRM LLP



- **Request 28:** Contrary to your May 21 letter, I have never agreed to limit the production of documents in response to Request no. 28 to the WAC and AWP published in **First DataBank** only. Moreover, I never agreed to limit the production of documents related to ASP to those outside the new Medicare regulations. The only discussions we have had focused on which pricing terms you believed were actually used by AZ and which were not. Plaintiffs request for documents responsive to no. 28 stands as written.
- **Request 31:** You state that, with respect to Request 31, plaintiffs agreed to reserve our demand for these documents. To be clear, I agreed to reserve this demand based on your stated belief that the annual strategic plans for each of the AWPIDs would contain the information sought by these requests. If the plans do not, then AZ must otherwise produce documents responsive to this request.
- **Requests 32 and 34:** AZ has agreed to produce documents related to, *inter alia*, the cost, profit and revenue for its AWPIDs only if that information exists in the Managed Markets/Pricing Strategy Group's documents. Plaintiffs cannot agree to such a limitation. AZ cannot hide the ball if this information is kept/maintained elsewhere and should be produced regardless of which department maintains and tracks this core information.
- **Request 35:** We agreed that AZ agreed to produce documents relating to spread between any two price points for a single drug.
- **Requests 37 and 79:** I agreed that these two requests are duplicative with respect to PBMs only, but not with respect to wholesalers, retailers or any other customer that may receive the incentives outlined.
- **Requests 38, 39, and 40:** Requests 38, 39 and 40 request all documents related to credit memos. You propose to just produce the transactional data which will include "line-item credit information". This proposal is too narrow. Based on the allegations of the AMCC, the parties will need to explore, *inter alia*, the reasons behind why a credit memo is being issued, how it was calculated, how it is characterized (*e.g.*, rebate, administrative fee, chargeback, returned goods, etc.). Credit memos can be used for various reasons, some of which may or may not relate to inflated AWPs, *e.g.*, returned goods. Accordingly, it is important for both parties to know exactly what the credit memo represents to AZ and the customer. The data and the line item will not explore this background information. Accordingly, plaintiffs propose that AZ produce documents sufficient to demonstrate the background and purposes for each line item credit.

THE | WEXLER | FIRM LLP



As I advised you this morning, I am in California for a deposition, but will be available this evening by cell phone and, as always, by e-mail. Also, tomorrow morning, I have a 12:45 p.m. EDT flight home, so can be available early to speak again by cell phone if need be.

Sincerely,

Elizabeth Anne Fegan

EAF:lyr

cc. Scott Wise, Esq. (via facsimile & e-mail)
Plaintiffs' Co-Lead Counsel (via e-mail)

THE | WEXLER | FIRM
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602
T. (312) 346-2222 | F. (312) 346-0022 | www.wexlerfirm.com

# Facsimile Cover Sheet

To: Kimberley Harris
Scott D. Wise

Fax No.: (212) 450-3859

From: Elizabeth Fegan Hartweg

Date: May 26, 2004

Re: In re: Pharmaceutical Industry Average Wholesale Price Litigation
MDL No. 1456

Total Number of Pages Including Cover Page:

Remarks: Please see attached correspondence.

In case of difficulty in transmission, please call (312) 346-2222.

The information contained in this facsimile message is subject to the attorney-client privilege or is otherwise privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify The Wexler Firm by telephone and return the original message to the above address via the United States Mail. Thank You.

WEXLER FIRM Fax:13123460022

** Transmit Conf. Report **

P.1 May 26 2004 16:55

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 244#1075#012#12124503859# | NORMAL | 26,16:55 | 2'03" | 7 | # O K | |