# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: (All Actions) |  | Master File No. 01-CV-12257-PBS |
|  |  | Judge Patti B. Saris |

## DECLARATION OF ERIK HAAS

I, Erik Haas, declare as follows:

1.      I am a Member of Patterson Belknap Webb & Tyler LLP and represent Johnson & Johnson and Ortho Biotech Products, L.P. (collectively "OBP") in this litigation.  I offer this declaration in support of (i) OBP's opposition to plaintiffs' Motion to Compel the Johnson & Johnson Group to Produce Documents and for an Extension of Discovery (the "Motion to Compel and Adjourn") and (ii) OBP's cross motion for sanctions.

2.      I base this declaration on my (a) personal knowledge, (b) communications with plaintiffs' counsel Allan Hoffman of Hoffman & Edelson, LLC, and (c) review and discussion with members of my firm concerning the correspondence with Mr. Hoffman.

### Plaintiffs' Failure to Comply with Local Rules 7.1(a)(2) and 37.1(a)

3.      In advance of filing their Motion to Compel and Adjourn, plaintiffs made no attempt to arrange a meet and confer or advise OBP that they intended to make their motion. Indeed, OBP was surprised by the motion, given that OBP had already agreed to a targeted search scope of the electronic files that plaintiffs now seek to compel, and the production responsive to the search had commenced on a rolling basis.  As plaintiffs were aware, moreover,

in other instances in this litigation OBP and its affiliates have consistently shown flexibility when presented with a good faith basis for an extension.  For example, OBP's sister company Centocor has agreed to let plaintiffs' counsel take select depositions after the August 31, 2005 discovery cut-off where scheduling difficulties made that necessary.  Here, plaintiffs' actions preempted any possibility of negotiating a reasonable resolution before plaintiffs' filing of its Motion to Compel and Adjourn.

### OBP's Compliance with Local Rules 7.1(a)(2) and 37.1(a)

4.      In advance of filing our cross-motion for sanctions, we contacted plaintiffs' counsel Allan Hoffman to hold a meet and confer.  We explained the particular grounds for our cross motion for sanctions.  We then asked Mr. Hoffman to point to any instance that plaintiffs held a meet and confer or told counsel for OBP that plaintiffs planned to file their Motion to Compel and Adjourn.  Plaintiffs' counsel was unable to point to a single instance.  Mr. Hoffman referenced only multiple discussions about the relevance of the documents he now seeks to compel (the existence of these conversations is undisputed) and a passing conversation at a deposition where he complained about the speed of production of documents that OBP had already agreed to produce on a rolling basis.  *At no time did plaintiffs' counsel advise OBP that a motion to compel seeking the documents encompassed by their current motion was contemplated or that an extension of discovery would be sought.*

5.      In the course of this conference, we then made another attempt to resolve plaintiffs' pending motion and our potential cross motion without the need to bring the issue before the Court.  Among other things, we pointed out that we had already agreed to produce and had produced all documents regarding AWP or spread from the files Mr. Hoffman was asking OBP to search.  Nevertheless, seeking to resolve the dispute, we reiterated our long standing

offer to discuss the scope of searches, offering to (i) expand the query to include additional search terms reasonably tailored to retrieve documents relevant to plaintiffs' allegations of "marketing the spread," (ii) review the documents generated and to produce documents responsive to plaintiffs' allegations, and (iii) to the extent any responsive documents are located, provide plaintiffs with the opportunity to depose OBP witnesses concerning such documentation after the discovery cut off date.

6.      Mr. Hoffman initially agreed to our proposal, but the following day, provided a list of search terms that was not tailored to retrieve documents relevant to plaintiffs' allegations of marketing the spread.  Rather, like the Motion to Compel and Adjourn, plaintiffs demanded that OBP retrieve any documents containing terms specified on a list that included such terms as "incentive," "economic" or "reimbursement", which likely would generate thousand of pages of documents of irrelevant materials.

7.      We made a counterproposal that was consistent with our agreement to search for documents pertaining to the so-called "marketing the spread."  This included numerous search terms targeted at that issue such as "margin" or "profit."  And we sent to Mr. Hoffman a draft stipulation to withdraw the Motion to Compel and Adjourn in exchange for our agreement to conduct the supplemental searches.  See the Email String and Draft Stipulation attached as Exhibit 1 hereto.

8.      We then held numerous conversations with Mr. Hoffman throughout the day seeking to resolve this dispute.  We were unable to reach agreement as a consequence of Mr. Hoffman's insistence (1) on the inclusion of search terms such as "incentive," "reimburse" and "money" that are not tailored to retrieve documents relevant to plaintiffs' allegations of marketing the spread and are grossly overbroad, and (2) that the production encompass even

3

documents that did not reference any AWP-based spread, even though plaintiffs allegations and class definitions in this case are explicitly limited to AWP based spread and reimbursement.

9.      Notably, throughout all of these discussions, Mr. Hoffman was unable to offer any good faith basis whatsoever to support his assertion that (a) the files he demanded OBP produce contained any documents concerning plaintiffs' allegations of manipulating AWP or marketing the spread, or (b) OBP had ever manipulated AWP or marketed the spread.  Indeed, even though plaintiffs had retained a "consultant" with knowledge of the files that they sought to search (as discussed in the next section), Mr. Hoffman was not willing to even make a proffer of the basis for his assertion that the files contained relevant documentation.  In fact, all fourteen of the OBP current and former employees deposed by plaintiffs have testified that OBP always had a policy prohibiting marketing of the spread, and the depositions taken as recently as last week confirmed OBP's representation that the files would not contain relevant materials.

10.     The "consultant" retained by plaintiffs is a former OBP employee, Mark Duxbury. See the accompanying Declaration of Lyndon Tretter.  Mr. Duxbury is represented by plaintiffs' counsel in a previously filed suit against OBP for wrongful termination, alleging he was dismissed for selling into the dialysis sector though instructed to do so.  As part of that action, sought and received access to numerous documents and briefs from the arbitration and also submitted detailed affidavits about that litigation.

## Background Regarding the License Arbitration

11.     In their Motion to Compel and Adjourn, plaintiffs demand that OBP produce all submissions and all documents concerning incentives and rebates that were produced by OBP in a previous arbitration between OBP and Amgen Inc. ("Amgen").

12.     The arbitration in question stemmed from Amgen's efforts to terminate a license

4

agreement it had entered into with OBP, whereby Amgen retained the right to sell the drug

epoetin alfa for use in the dialysis sector (and did so under the brand name Epogen) and licensed

OBP to sell epoetin alfa to all other market sectors (which OBP did under the brand name

Procrit).  Amgen's claimed basis for terminating OBP's license was the assertion that OBP failed

to take sufficient steps to ensure that Procrit was not administered to dialysis patients.  ***Notably,***

***Amgen did not assert any claims in the course of that arbitration concerning AWP***

***manipulation or regarding any marketing of the "spread."***

13.     Indeed, as we advised plaintiffs before they filed their Motion to Compel and

Adjourn, OBP's search of the arbitration hearing transcripts found no references to AWP or

Average Wholesale Price whatsoever.  Moreover, because reimbursement for epoetin alfa in the

dialysis sector is fixed by statute at a specified dollar amount, and is not based on AWP, there

were no allegations concerning either Amgen or OBP marketing their products to dialysis

providers on the basis of AWP or spread.  Amgen's claims in the arbitration were simply that

OBP sales representatives promoted Procrit to dialysis centers.

14.     OBP disputed Amgen's claims and the case proceeded to arbitration.  Prior to the

actual hearing, millions of pages of documents were exchanged by the parties and extensive

discovery took place.  After the hearing, Amgen's request for termination of OBP's license was

denied by the arbitrator.

### OBP Responded to All Queries Regarding the Arbitration

15.     In an effort to adjourn the court-ordered discovery cut-off, plaintiffs posit a grand

conspiracy between OBP and Amgen to mislead plaintiffs about the license arbitration and

conceal highly relevant documents purportedly secreted therein.

16.     In fact, Mr. Hoffman asked OBP's counsel Andrew Schau about the arbitration at

the very first OBP deposition in July 2004 and was given a detailed and accurate account as to what that arbitration was about and why it was not relevant to this case.  Mr. Hoffman nonetheless elected not to explore the topic further with OBP's corporate representative who was under deposition.  Nor did plaintiffs explore the arbitration with OBP's second witness William Pearson, who testified that he had been deposed in connection with the arbitration.  For months thereafter plaintiffs' counsel took limited discovery without raising the arbitration.  Then, in the last two months before the discovery cut-off, plaintiffs noticed eleven more depositions.

17.     During that last moment flurry of depositions, plaintiffs' counsel freely explored the issues at stake in the arbitration.  Simultaneously, Mr. Hoffman questioned OBP's counsel as to whether documents produced in the arbitration could be relevant here.  Counsel for OBP responded immediately clarifying that this was not the case and again explaining what the arbitration was about.  See, e.g., letter attached as Exhibit 2 hereto.

18.     On June 30, 2005 counsel for plaintiffs wrote back to counsel for OBP requesting confirmation that "Amgen has made no allegations regarding the marketing, and/or promoting of Procrit based on a spread between acquisition cost and reimbursement in Amgen's reserved market in any litigation/arbitration/mediation or other legal proceeding from 1991 to present." See Exhibit 3.

19.     Counsel for OBP confirmed that by letter on July 1, 2005 using the exact language provided by plaintiffs.  See Exhibit 4.  OBP's counsel also advised Mr. Hoffman that OBP had contacted Amgen's counsel and confirmed that they agreed with OBP's position. Counsel for OBP then considered the issue resolved, since plaintiffs had sought and received a written confirmation regarding the irrelevance of the arbitration in the precise language sought.

**OBP has Already Produced All Relevant and Responsive Documents**

20.     Nonetheless, plaintiffs insisted that OBP search the arbitration files.  At that point, to avoid the expense of a protective order motion, OBP agreed to search the millions of pages produced in the arbitration for documents that referenced AWP, the spread or marketing of the spread.  OBP's counsel advised plaintiffs' counsel of the terms of the proposed search, sent plaintiffs' counsel an email explaining the search would capture any documents sought, and offered to discuss the issue further.  See Exhibit 5.  Plaintiffs' counsel did not direct counsel for OBP to forego the search and did not propose any alternative parameters.

21.     Plaintiffs did not respond at all, and instead stood by and awaited the results.  OBP then started reviewing the millions of pages of arbitration documents for "hits."  On August 10, 2005, OBP produced the first responsive documents and stated that additional documents would be produced as they were reviewed.  See Exhibit 6.  On August 16, 2005, with no warning, plaintiffs served this motion.  Nonetheless, OBP produced the remaining documents it had culled after a continuing review on August 19, 2005.  See Id.  As expected, only a tiny percentage of the millions of documents produced in the arbitration were found relevant and were similar in kind to documents already produced.  None of the documents produced indicated any marketing of the spread by OBP.

**OBP's Position Regarding Production of Duplicative Data is Long Standing**

22.     In the Motion to Compel and Adjourn, plaintiffs now claim that they are entitled to any document or submission from any OBP inactive litigation file that mentions any discounts or rebates offered to any customer. But plaintiffs have long been on notice about OBP's position regarding the production of duplicative rebate and discount data, and have waived any objection to the scope of OBP's production.

23.     Plaintiffs served their first document demands upon OBP in December 2003.

1211440v1

Those requests included a Request No. 14 seeking, among other things, "all documents relating to any actual, proposed or prospective…discount programs, rebates, incentives…" for Procrit. OBP responded on January 16, 2004 as follows:

> **Response to Request 14:** OBP objects to this request as vague, overly broad and <u>unduly burdensome to the extent that it seeks "[a]ll documents"</u> regarding "any actual, proposed, or prospective AWP announcements, price changes, discount programs, rebates, incentives, penalties, or lists." OBP further objects to this request as duplicative of Request No. 6.
> Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any, concerning any change in Procrit's AWP or WAC, <u>and documents sufficient to determine any discounts, rebates, incentives or penalties concerning Procrit</u>. [Emphasis Added].

<u>See</u> OBP Response Dated January 16, 2004 attached as Exhibit 7 hereto.

24.     Plaintiffs' counsel raised no objection to this limitation and indeed, the parameters of production as defined formed the basis for the collection and document production efforts that followed over the next year and a half. That production included reams of data produced electronically, which included all available data on every rebate or discount OBP has ever provided, as well as all contracts for rebates and discounts OBP has ever entered into. To the extent centralized electronic systems did not house data for earlier years, OBP searched hard copy files and also the arbitration files, and produced financial data for that earlier period including excel spreadsheets and Microsoft access databases. <u>See</u>, <u>e.g.</u>, letter attached as Exhibit 8 hereto.

25.     The first time plaintiffs' counsel took issue with OBP's approach was in the summer of 2005, when they suddenly claimed a right to every document mentioning any rebate or discount. OBP's counsel then reiterated its long standing position:

1211440v1

> Moreover, your request appears to assume that OBP is obliged to produce to you every document that in any way "refer, concern or relate to" OBP's "discounts, rebates, credits and/or any other remuneration offered and/or provided by J&J, OBP, OBP's sales representatives and/or any third parties to customers and/or potential customers." That request is breathtakingly overbroad, and vastly exceeds the scope of production that the parties agreed to. As you know, and as reflected OBP's Responses to Plaintiffs' Requests for Production of Documents, OBP agreed to produce documents and data "sufficient to determine" any discounts, rebates, incentives or penalties concerning Procrit. OBP has complied with its discovery obligations in good faith and will not agree now to your last-minute attempt to enlarge the scope of discovery.

See Exhibit 9.

26.     Plaintiffs did not respond to or dispute this assertion until they filed this motion seeking production of "all documents" regarding any discount or rebate ever given by OBP to any customer regardless of duplication.

I declare under penalty of perjury that the foregoing is true and correct.

/s/  Erik Haas
_____
Erik Haas

Executed on this 31st day of August 2005

# Exhibit 1

**Cheung, Lisa (x2123)**

| | |
|---|---|
| **From:** | Haas, Erik (x2117) |
| **Sent:** | Tuesday, August 30, 2005 4:06 PM |
| **To:** | 'ahoffman@hofedlaw.com' |
| **Cc:** | Mangi, Adeel A. (x2563) |
| **Subject:** | RE: Discovery Motions |



Draft Stipulation
Withdrawing ...

Allan:

I have a moment to provide you with a more complete response.  You agreed with Adeel to present a list of search terms for the termination documents (and transcripts) that would be targeted at eliciting any documents evidencing the so-called "marketing the spread" alleged in plaintiffs' submissions.  That is, the relevant and responsive documents are those concerning communications to physicians regarding the difference between the AWP-based reimbursement and the cost of Procrit, if any such documents exist.  The list of search terms you provided is not tailored to achieve that objective or obtain those documents, and indeed includes general terms such as "incentive" and "reimbursement" that likely will generate millions of pages of irrelevant documentation.

As to your particular offer, we would agree to search on the following terms and produce those documents (and transcripts) that evidence marketing the spread:

profit
margin
"economic benefit"
"net reimbursement"
"reimbursement revenue"
AWP
"Average wholesale price"
spread
"return on investment"
"return to practice"

If you agree to these terms, please execute the attached stipulation and return to me within the next half hour.


Best regards,

Erik Haas
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Tel:  (212) 336-2117
Fax:  (212) 336-2386
email:  ehaas@pbwt.com



-----Original Message-----
From: Haas, Erik (x2117)
Sent: Tuesday, August 30, 2005 2:52 PM
To: 'ahoffman@hofedlaw.com'; Mangi, Adeel A. (x2563)
Subject: Re: Discovery Motions

1

Allan, ask Adeel advised you yesterday, we are both occupied today responding to your deposition notices. In fact, I'm sitting across from John Macoretta in a deposition.  So I can only answer briefly.

If your point is that the list below will constitute a limitation on the searches we will conduct of all termination documents, the list is too broad is not reasonably targeted to catch the spread between AWP and cost (eg, incentives).  I can't respond further and object to John's questions at this time.

-------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Allan Hoffman <ahoffman@hofedlaw.com>
To: Mangi, Adeel A. (x2563) <AAMANGI@PBWT.COM>; Haas, Erik (x2117) <EHAAS@PBWT.COM>
Sent: Tue Aug 30 13:48:18 2005
Subject: RE: Discovery Motions


Erik and Adeel:

I left Erik a voice message.  If you wish to try to work out an agreement, I would appreciate your responding to the e-mail (below) that I sent you both earlier.

-----Original Message-----
From: Allan Hoffman [mailto:ahoffman@hofedlaw.com]
Sent: Tuesday, August 30, 2005 1:05 PM
To: Mangi, Adeel A. (x2563)
Cc: Haas, Erik (x2117)
Subject: RE: Discovery Motions


Adeel:

I understand that not all are expressly tied to marketing the spread but I thought that you had asked me also to come up with terms that would help identify promotional materials.

Is the request for testimony and exhibits agreeable?  If so, I am happy to talk to either of you about which terms are disagreeable on the list to see if we can reach an agreement. With regard to the spread, are there any disagreeable terms in the list below:

incentive
profit
margin
economic
benefit
reimburse
reimbursement
value
revenue
AWP
Average wholesale price
spread
dollars
income
cash
money
advantage
return on investment
return to practice
Medicare

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO THE AMENDED MASTER CONSOLIDATED CLASS ACTION | Hon. Patti B. Saris<br>Chief Mag. Judge Marianne B. Bowler |

## STIPULATION OF WITHDRAWAL OF MOTION TO COMPEL

WHEREAS Plaintiffs filed a Motion To Compel The Johnson & Johnson Group To Produce Documents And For An Extension Of Discovery on August 16, 2005;

WHEREAS the parties met and conferred on August 29, 2005 pursuant to the Local Rules in connection with defendants Johnson & Johnson and Ortho Biotech Product L.P.'s (OBP) proposed cross-motion for sanctions;

WHEREAS the parties have agreed upon terms to resolve this discovery dispute.

THEREFORE, it is hereby stipulated and agreed to that:

1.      Plaintiffs withdraw their Motion To Compel The Johnson & Johnson Group To Produce Documents And For An Extension Of Discovery dated August 16, 2005.

2.      OBP will search the database of documents it produced in the Amgen arbitration as well as all electronically available deposition and hearing transcripts for the terms:

> profit
> margin
> "economic benefit"
> "net reimbursement"
> "reimbursement revenue"
> AWP

- 1 -

1211087v1

"Average wholesale price"
spread
"return on investment"
"return to practice"

3.      Insofar as any documents are captured by this search that reflect OBP

marketing to physicians based on the difference between acquisition cost and AWP-based

reimbursement these documents will be produced to plaintiffs.

4.      If any such documents are discovered and produced, OBP will allow

plaintiffs to take a reasonable number of depositions after the August 31, 2005 discovery cut-off,

where questioning will be limited to the documents in question.

5.      Counsel for plaintiffs will make any such request for depositions to

counsel for OBP in writing within 14 days of receiving the results of a search pursuant to this

stipulation.


Dated: New York, New York
        August 30, 2005

**PATTERSON, BELKNAP,
WEBB & TYLER, LLP**


By: _____
        ERIK HAAS

1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
*Attorneys for Plaintiffs
Johnson & Johnson & Ortho
Biotech Products L.P.*

**HOFFMAN & EDELSON, LLC**


By: _____
        ALLAN HOFFMAN

45 West Court Street
Doylestown, PA 18901
(215) 230 8043
*Attorneys for Plaintiffs*

- 2 -

# Exhibit 2

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

Andrew D. Schau
Partner
(212) 336-2546
adschau@pbwt.com

June 24, 2005

Allan Hoffman, Esq.
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA 18901

Re:    **In Re: Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Allan:

This letter responds to your letter of June 23, 2005, in which you express concerns relating to the document production by Ortho Biotech Products L.P.

First, we continue to disagree with your revisionist claim that we never had an agreement on pre-1998 documents. Plaintiffs explicitly agreed to forgo pre-1998 documents in return for an expanded data production, and that agreement was memorialized on more than one occasion. Nonetheless, when plaintiffs reneged on that agreement, we produced pre-1998 documents. And as we have told you repeatedly, we did not limit our collection to post-1998 documents.

Second, we never represented to you that "all of OBI's pre-1998 documents" have been produced. Rather, we represented that OBI diligently searched its hard copy and electronic files for pre-1998 documents that are responsive to your document requests, and that the fruits of that search have been produced. In response to your previous complaints about the size of OBI's production (about 60,000 pages, plus data), we have revisited this issue with OBI on several occasions (including asking OBI to undertake additional searches). We believe there is no point in going back to OBI yet again.

Third, your conclusion that there must be additional responsive documents because Amgen filed an arbitration claiming that OBI marketed Procrit for use in Amgen's reserved indication, i.e., dialysis, is based on a misunderstanding of Amgen's claim. Amgen sought to terminate OBI's license on the grounds that OBI failed to take sufficient steps to ensure that Procrit was not administered to dialysis patients. OBI disputed Amgen's claim and Amgen's request for termination was denied by the arbitrator. I was intimately involved in that arbitration and I can assure you that Amgen's claim had nothing to do with AWP pricing or the "spread." Indeed, because reimbursement for epoetin alfa under the ESRD program is fixed by statute, and is not based on AWP, neither Amgen nor OBI had an incentive to market their products to dialysis providers on the basis of AWP.

Allan Hoffman
June 24, 2005
Page 2

     Finally, I note that we have done nothing to interfere with your discovery on OBI's marketing practices and pricing prior to 1998.  Your deposition question have been answered and we have produced historic pricing data in electronic form.

     Sincerely yours,

     Andrew D. Schau

1194827v2

# Exhibit 3

**HOFFMAN & EDELSON, LLC**
45 W. COURT STREET
DOYLESTOWN, PA 18901
(215) 230-8043
FAX (215) 230-8735

## FACSIMILE COVER SHEET

TO:     Andrew Schau

FAX NO.: 212-336-2222

FROM:   Allan Hoffman

DATE:   June 30, 2005

RE:     AWP

Number of Pages:  3

## CONFIDENTIALITY NOTICE

    The pages comprising this facsimile transmission contain confidential information. This information is intended solely for use by the individual or entity named as the recipient hereof. If you are not the intended recipient, please note that any disclosure, copying, distribution, or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone immediately so we may arrange to retrieve this facsimile transmission at no cost to you.



# HOFFMAN & EDELSON, LLC

ATTORNEYS AT LAW
45 WEST COURT STREET
DOYLESTOWN, PENNSYLVANIA 18901

---

215-230-8043
FAX 215-230-8735

JEROLD B. HOFFMAN*
MARC H. EDELSON* **

ALAN V. KLEIN*
ADAM ARATEN*
ALLAN M. HOFFMAN*

* MEMBER PA. & N.J. BARS
** MEMBER PA. & N.Y. BARS

June 30, 2005

**Via Facsimile (212) 336-2222**

Andrew Schau, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

RE:    *In re: Pharmaceutical Industry Average Wholesale Price
       Litigation*, MDL No. 1456 and OBI Document Production

Dear Andy:

I am writing in response to your letter dated June 24, 2005. While I appreciate the fact that you responded in a timely manner, I am concerned that your letter does not sufficiently clarify the record.

First, your self-serving contention that plaintiffs explicitly agreed to forego pre-1998 documents is incorrect and not supported by the record. Plaintiffs never agreed to permanently forego receiving documents on drugs that were marketed and sold prior to 1998. In fact, as soon as plaintiffs realized that pre-1998 documents had not been produced by OBI and other J&J entities, plaintiffs contacted your firm and requested the production of such material. Plaintiffs have consistently argued this position in all of our discussions of this issue.

Second, I agree that you have represented that OBI searched for and produced all responsive pre-1998 material from the hard copy and electronic files of OBI. Indeed, at the time when plaintiffs initially raised their concern regarding OBI's pre-1998 production, you agreed to look into the matter further, and both you and Mr. Mangi later confirmed that OBI's responsive pre-1998 documents had been pulled at the time of the initial search for responsive OBI material. As you know, at the time of your initial search, you were responding to discovery requests that instructed you to search for responsive documents at OBI, the parent, other J&J subsidiaries and OBI's representatives and agents. However, to the extent your response suggests that you are aware of specific files that have not been searched but which are likely to contain responsive documents, I request that you immediately identify those files. Furthermore, I do not recall your subsequently asking OBI to perform additional searches for any pre-1998 material other than relating to a list of sales representative winners of OBI's top

Andrew Schau
June 30, 2005
Page 2

sales award, which you only provided after previously refusing to produce any sales representative materials whatsoever.

Third, I agree that you have on more than one occasion represented that the Amgen arbitration had "nothing to do with AWP pricing or the 'spread.'" However, your articulation of your reasoning in your June 24 letter is concerning. First, your claim that reimbursement for epoetin alfa in the end stage renal disease (ESRD) is not based on AWP is puzzling because it is my understanding that the ESRD reimbursement amount for EPO and Procrit is 95% of the lower AWP price of the two drugs. (See Hiriak Dep. at p.496.) Moreover, your suggestion that the parties could not have an incentive to create a spread does not follow. As you well know, the spread, as plaintiffs have used the term throughout this litigation, is based on the difference between reimbursement and acquisition cost, and thus the existence of an identical reimbursement AWP does not prohibit one party from creating and promoting an advantageous spread. Therefore, please confirm that Amgen has made no allegations regarding the marketing, and/or promoting of Procrit based on a spread between acquisition cost and reimbursement in Amgen's reserved market in any litigation/arbitration/mediation or other legal proceeding from 1991 to the present.

I also disagree with your fourth point. The extremely limited pre-1998 production that OBI has made to date has shed no light on how Procrit was marketed or priced before 1997.

I am now in receipt of your letter of January 29, 2005 and will be responding shortly.

Sincerely,

Allan M. Hoffman.

# Exhibit 4

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

July 1, 2005

**By Fax**

Allan Hoffman
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901

Andrew D. Schau
Partner
(212) 336-2546
Direct Fax (212) 336-2160
adschau@pbwt.com

Re:    <u>In re Pharmaceutical Average Wholesale Price Litigation</u>

Dear Allan:

Thank you for your letter of June 30, 2005 in which you request confirmation that Amgen has "made no allegations regarding the marketing, and/or promoting of Procrit based on a spread between acquisition cost and reimbursement in Amgen's reserved market in any litigation/arbitration/mediation or other legal proceeding from 1991 to the present."

I believe that this characterization of Amgen's allegations is accurate, i.e, Amgen did not make such allegations. I contacted Amgen's counsel and was advised that Amgen also agrees that the above-quoted statement is accurate.

I don't believe that the balance of your letter requires a response. Have a pleasant Holiday weekend.

Sincerely yours,

Andrew D. Schau

cc:  Steven F. Barley, Esq.

# Exhibit 5



## Allan Hoffman

**From:** Schau, Andrew D. (x2546) [ADSCHAU@PBWT.COM]
**Sent:** Friday, July 22, 2005 5:33 PM
**To:** 'Allan Hoffman'
**Subject:** RE: Amick

Let's talk about it some more. I really don't understand why the search I propose "would fail to incorporate any of OBI's sales or promotional efforts or materials offering incentives such as rebates, discounts, credits or other remuneration that lowers acquisition cost and creates a spread between acquisition cost and reimbursement based on AWP."

> ----Original Message-----
> **From:** Allan Hoffman [mailto:ahoffman@hofedlaw.com]
> **Sent:** Friday, July 22, 2005 5:23 PM
> **To:** Schau, Andrew D. (x2546)
> **Subject:** RE: Amick
>
> The deposition is Tuesday, correct? As of now, I will be the only attorney for plaintiffs.
>
> In addition, Andy, I have had a chance to confer with my co-counsel regarding your most recent proposal regarding your production of documents from any legal proceeding involving any written or oral assertion by Amgen that OBI promoted Procrit to customers or potential customers in Amgen's dialysis market, and we do not believe that your current search will capture all relevant and responsive documents.
>
> It is clear that even in the ESRD market, at least some reimbursement is based on AWP pricing. Therefore, your current offer merely to retrieve and review OBI's documents and hearing transcripts to ascertain whether there is anything relating to "AWP or the marketing of the spread between AWP-based reimbursment and acquisition cost" is too narrow a search, as it would fail to incorporate any of OBI's sales or promotional efforts or materials offering incentives such as rebates, discounts, credits or other remuneration that lowers acquisition cost and creates a spread between acquisition cost and reimbursement based on AWP. Indeed, you have indicated that a search under your current proposal is unlikely to produce any responsive material. However, as we have discussed, relevant material can exist even if there is no express reference to AWP. Accordingly, your currrent offer is unacceptable to plaintiffs.
>
> As to Amgen's documents, to the extent you do possess such materials, I believe that the confidentiality order in place in this case would provide sufficient protection to both OBI and Amgen.
>
> As always Andy, I am willing to work with you to see if we can reach an acceptable agreement. However, it is late in the discovery period and your failure to produce any material from a litigation that is relevant to this case and with which you are intimately familiar, especially in light of OBI's limited pre-1998 production to date, is extremely prejudicial to plaintiffs. Unless you are willing to broaden your search to timely review and produce documents such as marketing and sales materials and/or communications that refer or relate to reimbursement or economic incentives such as discounts, rebates credits or other remuneration offered by OBI, its sales representatives and/or third-parties acting on its behalf, plaintiffs will have no choice but fto ile a motion to compel with the court.

---------------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the

sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

--------------------------------------------------------------------------

IRS Circular 230 disclosure: Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)
================================================================================

8/15/05

# Exhibit 6

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

Andrew D. Schau
Partner
(212) 336-2546
adschau@pbwt.com

August 10, 2005

**By FedEx**

Allan Hoffman
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901

Re:    **In re Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Allan:

As we have discussed, we volunteered to search the archived documents that Ortho Biotech produced in the license termination case with Amgen for materials relating to AWP-based reimbursement for Procrit®.  Enclosed is a CD containing documents numbered as MDL-OBI00058820- MDL-OBI00060904.  As we continue our review we may find additional documents and, if we do, we will produce them to you as soon as we are able.

Sincerely yours,

Andrew D. Schau

Enclosure

# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Lisa Cheung
Legal Assistant

Direct Phone
(212) 336-2123
Email Address:
lcheung@pbwt.com

August 19, 2005

**By FedEx**

Allan Hoffman
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901

Re:   **In re Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Mr. Hoffman:

Per Andrew Schau, please find enclosed two CDs containing documents numbered as MDL-OBI00060905- MDL-OBI00062462 and MDL-OBI00062463- MDL-OBI00062664.

Regards,

Lisa Cheung

Enclosures

# Exhibit 7

WILLIAM F. CAVANAUGH, JR.
ANDREW D. SCHAU
ERIK HAAS
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036-6710
(212) 336-2000
*ATTORNEYS FOR DEFENDANT ORTHO BIOTECH PRODUCTS, L.P.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) | MDL NO. 1456 |
| ) | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) ) ) | Judge Patti B. Saris |

## ORTHO BIOTECH'S RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the

Local Rules of the District Court for the District of Massachusetts, Defendant Ortho Biotech

Products, L.P. ("OBP"), by its attorneys Patterson, Belknap, Webb & Tyler LLP, makes the

following responses to Plaintiffs' Requests for Production of Documents to Aventis, Abbott,

Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough

dated December 3, 2003 (the "Requests").

## PRELIMINARY STATEMENT

In accordance with Case Management Order ("CMO") Nos. 5 and 7 and the

Court's November 21, 2003 bench ruling, OBP states as follows:

1.      Plaintiffs have addressed these Requests to Defendant "Johnson & Johnson." However, only two drugs currently subject to discovery are manufactured or distributed by the "Johnson & Johnson Group": Remicade, a Centocor drug, and Procrit, an OBP drug. See Letter to D. Scott Wise from Steve W. Berman dated November 25, 2003 available on Verilaw. Pursuant to an agreement with Plaintiffs' counsel John Macoretta, Centocor is not required to respond to these requests, having already responded on September 9, 2003 to Plaintiffs' Request for Documents dated June 19, 2003. Accordingly, by agreement of the parties, this response is made on behalf of OBP only.

2.      By responding to these Requests, OBP does not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege or admissibility as evidence, for any purpose, of any documents or information produced in response to the Requests; (b) the right to object on any ground to the use of the documents or information produced in response to the Requests at any hearing or trial; or (c) the right to object on any ground at any time to a demand for further responses to the Requests.

3.      By responding that it will produce documents responsive to a particular Request, OBP does not assert that it has responsive materials or that such materials exist, only that it will conduct a reasonable search and produce responsive, non-privileged documents. No objection made herein, or lack thereof, is an admission by OBP as to the existence or non-existence of any documents.

4.      The responses made herein are based on OBP's investigation to date of those sources within its control where it reasonably believes responsive documents or

information may exist.  OBP reserves the right to amend or supplement these responses in accordance with the applicable rules and Court orders.

## GENERAL OBJECTIONS AND RESERVATIONS

1.      OBP objects to the definitions of "Document(s)," "All documents," "Defendant," "You," "Your," "Communication," and "Person" as set forth in Definition Nos. 1-5 and 8, and to Instruction Nos. 1, 3-5, 8-12, and their various subsections, to the extent they seek to impose discovery obligations that are broader than, or inconsistent with, OBP's obligations under the Federal Rules of Civil Procedure and this Court's local rules.  Moreover, OBP objects to these Definitions and Instructions as overly broad, unduly burdensome, and vague because they seek the production of documents not in the control or custody of OBP, require OBP to search the files of third parties, and require OBP to speculate concerning the identities of individuals and business entities included in these definitions.  For the purposes of responding to the Requests, OBP shall construe these terms to call for the production of documents within the possession, custody and control of OBP headquarters.

2.      OBP objects to the definitions of "AWPID" and "Covered Drugs" as set forth in Definition Nos. 10 and 11 to the extent they seek information regarding drugs other than Procrit. Additionally, OBP objects to the use of the acronym "AWPID," which is defined in the Amended Master Consolidated Class Action Complaint ("Amended Complaint") as "AWP Inflated Drugs" and, therefore, lacks factual foundation and depends upon a legal conclusion. See Amended Complaint ¶ 11.

3.      OBP objects to the definition of "Government Investigation" as set forth in Definition No. 14 on the grounds that it is overly broad because it is unlimited in time frame. This definition is also vague as to its reference to investigations by the "Department of Health

3

and Home Services" and "Office of the United States Inspector General" because no such governmental departments exist. Notwithstanding these objections, for purposes of these Requests, OBP defines "government investigation" to include only those areas of inquiry by the Commerce, Energy, and/or Ways and Means Committees of the United States House of Representatives, or subcommittees thereof, the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, and the United States Department of Health and Human Services, if any, relating to Procrit and the use of AWP in Medicare (and/or Medicaid) reimbursement from January 1, 1997 to September 6, 2002.

4.      OBP objects to Instruction No. 2 to the extent it calls for documents generated or assembled either prior to January 1, 1997 or after September 6, 2002 on the ground that such documents are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

5.      OBP objects to all requests that call for the production of documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

6.      OBP objects to Instruction No. 9 to the extent it demands that all documents be produced in the original file folders, envelopes, or other containers in which the documents are kept by OBP. OBP will use reasonable efforts to produce copies of all labels or other identifying marks on such original file folders, envelopes or other containers.

7.      OBP objects to Instruction No. 12 to the extent it demands that OBP produce documents that "explain" responsive documents on the ground that such demand is vague and ambiguous, calls for a subjective determination and is unduly burdensome.

4

8.      OBP objects to the Requests to the extent that they are vague and ambiguous and necessarily require interpretation by OBP in providing responses thereto.  Such interpretation by OBP may, in some or all cases, be different from that which Plaintiffs intended.  OBP hereby puts Plaintiffs on notice that such interpretation by OBP has necessarily taken place in providing responses to the Requests herein as a result of Plaintiffs' imprecise and ambiguous Requests.

9.      The foregoing general objections apply to each of Plaintiffs' requests for documents, in addition to any specific objections described below.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**Request No. 1**      All documents produced by you, whether voluntarily or involuntary, in any governmental investigation or inquiry related to the use of AWP in Medicare or Medicaid reimbursement.

**Response to Request No. 1**

OBP objects to this request as overly broad and unduly burdensome to the extent that it calls for the production of documents that have not already been produced under CMO Nos. 5 and 7.  OBP further objects to this request as vague and lacking definition as to "inquiry."

Subject to the foregoing, the Preliminary Statement, and the General Objections, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 2**      All documents received from or provided to any trade association (such as the Pharmaceutical Research and Manufacturers of America), and any of its organizational subcommittees, including meeting agendas and minutes, related to (i) any Covered Drug; (ii) Medicare; (iii) the AWP for Covered Drugs; (iv) publications identified in Health Care Financing Administration Program Memorandum AB-99-63, including the *Red Book*, *Blue Book*, and *Medispan* ("pharmaceutical industry publications"); or (v) the Government Investigation, for the Relevant Time Period.

**Response to Request No. 2**

OBP objects to this request as overly broad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant information to the extent it seeks "all documents" related to "any Covered Drug," "Medicare,"

the "AWP for Covered Drugs," "pharmaceutical industry publications" and the "Government Investigation." OBP further objects this request as vague to the extent it seeks documents concerning any "trade association" and "the Government Investigation."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist, received from or provided to trade associations concerning Procrit's AWP, including documents regarding government investigations or the reporting of Procrit's AWP in pharmaceutical industry publications.

**Request No. 3**      All documents relating to any legal proceeding (by country, court, caption, case number, etc,), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegation that you or any other pharmaceutical manufacturer overstated, misstated, or otherwise manipulated the AWP for any AWPID for the Relevant Time Period.

**Response to Request No. 3**

OBP objects to this request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents" relating to any legal proceeding. OBP further objects to this request to the extent it seeks documents concerning any proceeding transferred to this action, captioned *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, or to the extent it seeks publicly available documentation.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive, non-privileged and non-public documents relating to legal proceedings and concerning the allegations in the Amended Complaint that OBP overstated, misstated, or otherwise manipulated Procrit's AWP, if any exist.

**Request No. 4**      All documents relating to any understanding or agreement between you and any other pharmaceutical company regarding the AWP, prices, pricing

959336v4

discounts, rebates, bids, incentives, penalties, or volumes for any AWPID during the Relevant Time Period.

**Response to Request No. 4**

OBP objects to this request for documents as vague, overly broad and unduly burdensome, and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant information to the extent it seeks "[a]ll documents" relating to "any understanding or agreement."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents relating to any understanding or agreement with other drug manufacturers pertaining to setting the AWP, the "spread" or any of the purported collusive arrangements alleged in the Amended Complaint, if any exist.

**Request No. 5**      All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegation that you overstated, misstated or otherwise manipulated the AWP for any AWPID during the Relevant Time Period.

**Response to Request No. 5**

OBP objects to this request as overly broad to the extent it seeks "[a]ll" specified affidavits, declarations, depositions, or other written statements. OBP further objects to this request to the extent it seeks documents covered by the attorney-client privilege, work-product doctrine or other applicable privilege or protection. OBP also objects to this request as duplicative of Request No. 3.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 6**      All documents relating to any actual, proposed, or prospective price announcements, changes, discount programs, rebates, incentives, penalties, or

959336v4

price lists issued by you for each AWPID, including the methodology and procedures used by you in considering whether to increase or decrease prices during the Relevant Time Period.

**Response to Request No. 6**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent that it seeks "[a]ll documents" regarding "any actual, proposed, or prospective price announcements, price changes, discount programs, rebates, incentives, penalties, or price lists."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist, concerning changes in Procrit's AWP or WAC, and documents sufficient to determine any discounts, rebates, incentives or penalties concerning Procrit.

**Request No. 7**      All documents evidencing any "credit memos" or credit extended to hospitals, GPOs or other purchasers of AWPIDs, including but not limited to credit memos or credit issued via a wholesale to a purchaser, and/or credit for the purpose of "returned goods."

**Response to Request No. 7**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it calls for "[a]ll documents" related to "credit memos" or "credit extended."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine any credit extended by OBP to purchasers of Procrit.

**Request No. 8**      All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or can be given to any hospital or purchaser of AWPIDs.

**Response to Request No. 8**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it calls for "[a]ll documents" setting forth the circumstances in which credit was or can be given.

959336v4

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to show OBP's protocol for granting credit to purchasers of Procrit, if any exist.

**Request No. 9**        Any documents relating to the repackaging or relabeling of any AWPID including but not limited to: (a) documents indicating that any AWPID with a specific NDC has been repackaged and is being sold with a different NDC, but is the same drug; and (b) For any repackaged AWPID, documents evidencing the AWP of the original AWPID and of the repackaged AWPID, and documents evidencing the bases, methods and/or reasons for any change in the AWP.

**Response to Request No. 9**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny documents" relating to purported repackaging or relabeling. OBP further objects to this request as calling for the production of documents that are not relevant and not reasonably calculated to lead to the discovery of relevant information.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 10**        Documents for the Relevant Time Period evidencing the price of any AWPID sold to: (a) the VA; (b) any wholesaler; (c) your top ten purchasers/retailers of each AWPID; e.g., Walgreens, RiteAid, etc.; (d) the highest price paid for that AWPID; and for the lowest price paid for any AWPID by any purchaser.

**Response to Request No. 10**

OBP objects to this request as overly broad and unduly burdensome to the extent it seeks all documents evidencing the price of Procrit.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine the price at which OBP sold Procrit.

959336v4

**Request No. 11**        All documents discussing how your company or any other company defines AWP.

**Response to Request No. 11**

OBP objects to this request as overly broad and unduly burdensome to the extent it purports to require OBP to locate and produce documents relating to how "any other company defines AWP."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 12**        All documents discussing how AWP has been or is currently calculated for any AWPID.

**Response to Request No. 12**

OBP objects to this request as overly broad and unduly burdensome to the extent it seeks "[a]ll documents" discussing how AWP has been or is currently calculated.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 13**        All documents evidencing the names and addresses of employees with knowledge of: (a) the provision of free samples; unrestricted educational grants; rebates, and credit memos to providers, PBMs, wholesalers, distributors, or purchasers of AWPID; (b) the amount of profit a health care provider could achieve due to the spread on an AWPID; and (c) marketing the spread of any AWPID.

**Response to Request No. 13**

OBP objects to this request as vague, overly broad, unduly burdensome and calling for the production of documents that are neither relevant nor reasonably calculated to lead to the production of relevant information to the extent it calls for "[a]ll documents evidencing the names and addresses of employees" with knowledge of the enumerated categories.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts and

10

sales force rosters for employees with responsibilities concerning Procrit pricing, sales or marketing.

**Request No. 14**      All documents relating to any actual, proposed, or prospective AWP announcements, changes, discount programs, rebates, incentives, penalties, or lists issued by you for each AWPID or brand name drug, including the methodology and procedures used by you in considering whether to increase or decrease the AWP of each AWPID or brand name drug during the Relevant Time Period.

**Response to Request No. 14**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent that it seeks "[a]ll documents" regarding "any actual, proposed, or prospective AWP announcements, price changes, discount programs, rebates, incentives, penalties, or lists." OBP further objects to this request as duplicative of Request No. 6.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any, concerning any change in Procrit's AWP or WAC, and documents sufficient to determine any discounts, rebates, incentives or penalties concerning Procrit.

**Request No. 15**      All documents relating to the use or provision of free samples, educational grants, marketing grants, volume discounts, rebates, credit memos, payment for specific data gathering, financial incentive, or other incentive to induce purchases of any AWPID during the Relevant Time Period.

**Response to Request No. 15**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ll documents" relating to the use or provision of incentives.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine: the incentives OBP offered on Procrit, if any; free samples provided by OBP other

than free product provided to indigent patients through patient assistance programs; and the
educational grants or marketing grants OBP offered.

**Request No. 16**      All documents relating to your role in the publication,
appearance, or advertisement of the AWP of each AWPID in pharmaceutical-related industry
publications during the Relevant Time Period.

**Response to Request No. 16**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it calls for "[a]ll documents" relating to "your role" in the publication, appearance or

advertisements in "pharmaceutical-related industry publications."

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

**Request No. 17**      All documents, including organizational charts that
describe or list the individuals responsible for determining the AWP for each AWPID drug
during the Relevant Time Period.

**Response to Request No. 17**

OBP objects to this request as overly broad, lacking foundation, and unduly

burdensome to the extent it seeks "[a]ll documents … that describe or list the individuals"

responsible for determining AWP.

Subject to all foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged organizational charts.

**Request No. 18**      For each AWPID, documents sufficient to identify during
the Relevant Time Period: (a) The published AWP; (b) AMP (average manufacturer price); (c)
ASP (Actual sales price, *i.e.*, the price after discounts); (d) EAC (estimated acquisition cost); (e)
Earned margin (difference between AWP and actual product cost); (f) All documents that relate
to discussions of spreads or reimbursement profiles, using AWP as an incentive; and (g)
Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates,
discounts, allowances, credits and any other incentives provided to third parties.

12

**Response to Request No. 18**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "documents sufficient to identify ... [a]ll documents that relate to discussions" of "spreads" or reimbursement profiles, using AWP as an incentive. OBP further objects to this request as vague to the extent it seeks documents concerning "using AWP as an incentive."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine the specified prices for Procrit, and documents that discuss the "spread" as an incentive to purchase Procrit or that concern the use of AWP as an incentive, if any exist.

**Request No. 19**      For each AWPID, sales representatives' field notes of the top ten sales representatives for each AWPID.

**Response to Request No. 19**

OBP objects to this request as vague and ambiguous, overly broad and unduly burdensome to the extent it seeks "sales representatives' field notes of the top ten sales representatives." OBP further objects that the term "field notes" is vague and ambiguous, and the term "top ten sales representatives" is vague and ambiguous to the extent it does not state any criteria for defining "top ten."

**Request No. 20**      Any computer programs, printouts, or other documents provided to doctors which discuss using the spread or the benefits of the spread.

**Response to Request No. 20**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny ... documents provided to doctors which discuss using the spread or the benefits of the spread."

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist.

959336v4

**Request No. 21**      Any documents discussing the amount of profit a provider could achieve due to the spread on an AWPID.

**Response to Request No. 21**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny documents" discussing the "amount of profit a provider could achieve" due to the "spread."

Subject to all foregoing general and specific objections and the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents discussing the amount of profit a provider could make resulting from the "spread" on Procrit, if any exist.

**Request No. 22**      Any sales and marketing materials comparing the costs and spread of an AWPID you manufactured with those of a competitive drug.

**Response to Request No. 22**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ny sales and marketing materials" comparing drug costs and "spread[s]."  OBP further states that it does not manufacture Procrit.

Subject to all foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents comparing Procrit's costs and "spread" to the costs and "spread" of other drugs, if any exist.

**Request No. 23**      All documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool, on any AWPID was discussed.

**Response to Request No. 23**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ll documents" evidencing any meetings where raising the AWP, or "use of AWPID as a marketing tool" was discussed.

959336v4

Subject to foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any exist, evidencing meetings where raising Procrit's AWP or using the "spread" on Procrit as a marketing tool were discussed.

**Request No. 24**     All documents accounting for the free samples given for any AWPID.

**Response to Request No. 24**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ll documents" accounting for free samples given for "any AWPID."

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine the terms of any program, to the extent any exists, concerning the grant of free samples of Procrit other than free product provided to indigent patients through patient assistance programs.

**Request No. 25**     All documents evidencing any grants or credits provided to any hospital or provider in return for use of an AWPID.

**Response to Request No. 25**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ll documents" evidencing any grants or credits.  OBP further objects to this request as duplicative of requests 7, 8, and 15.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to show the grants or credits provided to a provider in return for use of Procrit, if any exist.

959336v4

**Request No. 26**      Complete contact information for all personnel with sales responsibility for AWPIDs.   Include Sales Representatives, District Managers, Regional Managers, and National Sales Manager, and include home address and telephone number.

**Response to Request No. 26**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[c]omplete contact information for all personnel" with sales responsibilities. OBP further objects to this request as unjustifiably seeking individuals' personal and confidential information.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts and sales rosters for personnel with sales responsibility for Procrit.

**Request No. 27**      Complete contact information for all personnel with responsibility for marketing and promotional activity for AWPIDs.  Include Marketing Department Product or Brand Managers, and members of Marketing Advisory Boards, and include home address and telephone number.

**Response to Request No. 27**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[c]omplete contact information for all personnel" with marketing and promotion activity responsibilities.  OBP further objects to this request as unjustifiably seeking individuals' personal and confidential information.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged organizational charts for personnel with responsibility for marketing Procrit.

959336v4

**Request No. 28**        A list of all national level sales awards available for each AWPID.

**Response to Request No. 28**

OBP objects to this request as overly broad to the extent it seeks a list of "all national level sales awards."

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents, if any, sufficient to show the national level sales awards available for the sale of Procrit.

**Request No. 29**      Quarterly, semi-annual and annual business plans for each winner of the top national sales award winners and direct supervisors.

**Response to Request No. 29**

OBP objects to this request as vague, overly broad, and lacking foundation to the extent it seeks "business plans for each winner of the top national sales award winners and direct supervisors."

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce its relevant, responsive and non-privileged business plans that concern marketing the spread, if any exist.

**Request No. 30**      All Unrestricted Educational Grant Requests provided as a direct or indirect result of purchases of an AWPID.

**Response to Request No. 30**

OBP objects to this request as vague and ambiguous to the extent it seeks educational grant requests "provided as a direct or indirect result of purchases of an AWPID." To the extent this request seeks "All Unrestricted Educational Grant Requests," OBP further objects to this request as overly broad and unduly burdensome.

Subject to the foregoing general and specific objections and to the Preliminary Statement, and pursuant to an agreement with Plaintiffs' counsel, OBP will produce any available summaries of all unrestricted educational grant requests made within the relevant time period.

**Request No. 31**        Copies of all Unrestricted Educational Grants provided to any purchasing customer of an AWPID during the Relevant Time Period.

**Response to Request No. 31**

OBP objects to this request as overly broad and unduly burdensome.

Subject to the foregoing general and specific objections and to the Preliminary Statement, and pursuant to an agreement with Plaintiffs' counsel, OBP will produce a summary of unrestricted educational grants provided within the relevant time period.

**Request No. 32**        All documents relating to any communications, including meetings, between you and any other pharmaceutical company regarding: (a) any actual, proposed or prospective price announcements, price changes, or price lists for any Covered Drug or brand name drug; (b) any actual, proposed, or prospective pricing methods, practices, policies or strategies for any Covered Drug or brand name drug; (c) any actual, proposed, or prospective marketing methods, practices, policies, or strategies for any Covered Drug or brand name drug; (d) territories or markets for sales or potential sales for any Covered Drug or brand name drug; (e) Medicare Part B and its policy of reimbursement for any Covered Drug; (f) the AWP of any AWPID; (g) pharmaceutical industry publications; and (h) market conditions or market shares.

**Response to Request No. 32**

OBP objects to this request as vague, overly broad and unduly burdensome to the extent it seeks "[a]ll documents relating to any communications" with another drug company concerning the listed issues.

Subject to the foregoing general and specific objections and to the Preliminary Statement, and to the extent any such documents exist, OBP will produce relevant, responsive and non-privileged documents relating to any understanding or agreement with any other drug

manufacturer concerning setting of AWP, the "spread," or any of the purported collusive

arrangements alleged in the Amended Complaint, if any exist.

   **Request No. 33**  All data maintained in electronic form relating to the
pricing, cost data and sales data, including the AWP, of each AWPID in the United States for the
Relevant Time Period. Produce such data in electronic form; Plaintiffs also request that you
produce all documents or instructions necessary, to access, process, read and use the electronic
data.

**Response to Request No. 33**

   OBP objects to this request as vague, overly broad and unduly burdensome, and

seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of

relevant information to the extent its seeks "[a]ll data maintained in electronic form relating to

pricing, cost data and sales data."

   **Request No. 34**  All data maintained in electronic form relating to customer
invoices for each AWPID, including, but not limited to, customer names and addresses, purchase
volume, prices, and discounts for the Relevant Time Period. Produce such data in electronic
form and include all documents and/or instructions necessary to access, process, read and use the
electronic data.

**Response to Request No. 34**

   OBP objects to this request as vague, overly broad and unduly burdensome, and

seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of

relevant information to the extent its seeks "[a]ll data maintained in electronic form relating to

customer invoices."

   **Request No. 35**  All documents sufficient to identify your distribution
policies and procedures in the U.S. pharmaceuticals market for every AWPID during the
Relevant Time Period.

**Response to Request No. 35**

   OBP objects to this request as vague, overly broad and unduly burdensome, and

seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of

959336v4

relevant information to the extent its seeks "[a]ll documents sufficient to identify your

distribution policies and procedures."

**Request No. 36**      All documents relating to all actual, proposed, or prospective marketing methods, practices, policies, or strategies for each AWPID during the Relevant Time Period.

**Response to Request No. 36**

OBP objects to this request vague, overly broad and unduly burdensome to the

extent it seeks "[a]ll documents" relating to "all actual, proposed, or prospective marketing

methods, practices, policies or strategies."

Subject to the foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged documents, reflecting

spread-related marketing policies or strategies for Procrit, if any exist.

**Request No. 37**      All documents relating to any communication with doctors, other health care professionals, or any person or entity providing health care services to seek Medicare reimbursement or consumer co-payment for free samples of each Covered Drug or brand name drug you provided to them during the Relevant Time Period.

**Response to Request No. 37**

OBP objects to this request as vague, overly broad and unduly burdensome to the

extent it seeks "[a]ll documents relating to any communications ... to seek Medicare

reimbursement or consumer co-payment."

Subject to the foregoing general and specific objections and to the Preliminary

Statement, OBP will produce relevant, responsive and non-privileged communications with

providers concerning reimbursement for free samples of Procrit, if any exist.

20

959336v4

**Request No. 38**      All marketing and sales materials which compare the AWP, price, market share, rebates, pricing discounts, incentives, or penalties for each AWPID with the AWP of any other pharmaceutical during the Relevant Time Period.

**Response to Request No. 38**

OBP objects to this request to the extent it seeks "[a]ll marketing and sales materials" as vague, overly broad and unduly burdensome.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged marketing and sales materials comparing the Procrit AWP with the AWP of other pharmaceuticals, if any exist.

**Request No. 39**      All documents sufficient to identify your policy or practice of document retention, destruction, disposal or preservation for the time period 1991 to the present.

**Response to Request No. 39**

OBP objects to this request as vague to the extent it seeks "[a]ll documents sufficient to identify" its document retention, destruction, disposal or preservation policies or practices.

Subject to the foregoing general and specific objections and to the Preliminary Statement, OBP will produce relevant, responsive and non-privileged documents sufficient to determine its document retention policy.

January 16, 2004

William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

ATTORNEYS FOR ORTHO BIOTECH PRODUCTS, L.P.

21

# Exhibit 8

# Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Walter M. Luers

Direct Phone
(212) 336-2056

Direct Fax
(212) 336-7906

January 12, 2005

**VIA FEDERAL EXPRESS**

John A. Macoretta, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Re:     **In re: Pharmaceutical Industry AWP Litigation**

Dear Mr. Macoretta:

In response to plaintiffs' discovery demands, we enclosed the following additional CDs, described below.

The enclosed CDs contain the following electronic data for Centocor, Inc. ("Centocor"), Ortho Biotech Products L.P. ("OBP"), and Johnson & Johnson Health Care Services ("JJHCS"):

- The CD Bates-numbered MDL-CEN000103691 contains one text file that reflects pricing information that was available only from hard copy invoices. The transactions that these data relates to was produced on a CD Bates-numbered MDL-HCS00013638.

- The CD Bates-numbered MDL-HCS000275970 contains four Microsoft Excel spreadsheets and one text file. The Excel spreadsheets include transactional data for chargebacks for Retin-A, a key of class of trade descriptions, transactional data for chargebacks that were processed on July 1 and July 2, 1999, and a list of WAC price change dates. The text file is a key of customer identification numbers.

- The CD Bates-numbered MDL-OBI00056539 contains six Microsoft Access databases and nineteen Microsoft Excel spreadsheets reflecting transactional sales and rebate data regarding Procrit. Many of the file names describe the data they contain. Files that begin with "Y" or "NOCHG" describe free goods. "PROCRIT1.xls" describes direct sales for 1991.

Please note that the entire electronic data production has been designated as Highly Confidential pursuant to the Protective Order.

John A. Macoretta, Esq.
January 12, 2005
Page 2

Please let me know whether you have any difficulties reading the electronic data.

Very truly yours,

Walter M. Luers

Enclosures

1024749v1

# Exhibit 9

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

Andrew D. Schau
Partner
(212) 336-2546
adschau@pbwt.com

July8, 2005

**By Fax**

Allan Hoffman
Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA  18901

>    Re:    **In re Pharmaceutical Average Wholesale Price Litigation**

Dear Allan:

This responds to your letter of July 6, 2005.  I will not respond to the inaccuracies in the narrative section of the letter, as I believe my own prior letters are accurate in every detail.

Here is our position with respect to the open discovery issues:  First, we have not taken, and will not take, any steps designed to impair your ability to serve subpoenas on Messrs. Amick and Schultz.  As we previously indicated, Mr. Amick is available for a deposition on July 26th.  For the moment, you should assume that the deposition will take place in North Carolina. If that changes we will let you know.  We cannot confirm that Mr. Amick will also be available on July 27th and 28th.  We do not believe that the referenced language in CMO 10 was intended to apply to non-party witnesses.  If you serve Mr. Schultz with a subpoena, please let us know promptly.

Second, we have not, and will not, take any steps designed to impair your ability to serve a subpoena on Ms. Webb.  We complied fully with our legal obligation to provide you with Ms. Webb's last known address as listed in OBP's corporate records.  We have made inquiries regarding your statement that she could not be found at her last known address.  We will get back to you if we come up with any additional information concerning her present whereabouts.  Again, if you serve Ms. Webb with a subpoena, please let us know promptly.

Third, as previously indicated, we will make Ms. Dooley available for a deposition.  She is available July 19th in Washington, D.C.  In addition, although we had hoped that you would have been willing to engage us in a productive dialogue about whether you intended to cover relevant, noncumulative subject areas with Messrs. Stewart, Robbins, and Dempsey, you have failed to identify any areas you intend to cover with them that have not already been the subject of testimony from previous witnesses.  Nonetheless, in the interests of expeditiously completing discovery, we will tentatively agree to proceed on the assumption that you do intend to cover relevant, noncumulative subjects with these witnesses.  Accordingly, we

Allan Hoffman
July 8, 2005
Page 2

will make Messrs. Stewart, Robbins, and Dempsey available for deposition and provide you with proposed dates. We reserve the right to seek a protective order if we determine in the course of the depositions that you are taking them for an improper purpose.

Fourth, with respect to Ms. Kling, we remain hopeful that we will be able to reach an agreement that will obviate the deposition. We should try to make that work in good faith. In that connection, we are waiting for your proposed request for admission. If that proves unsuccessful, we can revisit the deposition issue at a later date.

Fifth, we are willing to give you a Rule 30(b)(6) witness on document production and preservation issues, notwithstanding the fact that you have already deposed a Rule 30(b)(6) witness on these same issues. We will provide dates shortly.

Sixth, if you do not withdraw the notice to depose Mr. Duato, we intend to seek a protective order. There is no point debating this any further. Please let us know your intentions as soon as possible. (I just got your email. Mr. Duato had no direct involvement in the pricing, marketing and or sales of Procrit in the US prior to coming to OBP in September 2002.)

Finally, your most recent demand in your email and fax of July 7, 2005 is, in our judgment, absurdly overreaching. As we have told you repeatedly, and as Amgen has confirmed, the issues in that arbitration bore no relation to the issues in this litigation. Given this fundamental dissimilarity, OBP had no obligation to search through archived and inactive litigation files on the remote chance that they might contain documents that would be responsive to your requests in this case. Indeed, we suspect that counsel for plaintiffs did not search through unrelated litigation files from prior disputes involving the Board of Trustees of Carpenters and Millwrights of Huston and Vicinity Welfare Fund, the Teamsters Health & Welfare Fund of Philadelphia and Vicinity, the Twin Cities Bakery Workers Health and Welfare Fund, the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, the Philadelphia Federation of Teachers Health and Welfare Fund, the Man-U Service Contract and Trust Fund, the Vermont Public Interest Research Group, the Wisconsin Citizen Action, the New York StateWide Senior Action Council, the Citizen Action of New York, or the Citizens for Consumer Justice.

Moreover, your request appears to assume that OBP is obliged to produce to you every document that in any way "refer, concern or relate to" OBP's "discounts, rebates, credits and/or any other remuneration offered and/or provided by J&J, OBI, OBI's sales representatives and/or any third parties to customers and/or potential customers." That request is breathtakingly overbroad, and vastly exceeds the scope of production that the parties agreed to. As you know, and as reflected OBP's Responses to Plaintiffs' Requests for Production of Documents, OBP agreed to produce documents and data "sufficient to determine" any discounts, rebates, incentives or penalties concerning Procrit. OBP has complied with its discovery obligations in good faith and will not agree now to your last-minute attempt to enlarge the scope of discovery.

1197830v1

Allan Hoffman
July 8, 2005
Page 3

Sincerely yours,

Andrew D. Schau

Enclosure

1197830v1