# Exhibit: A



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) MDL No. 1456 ) ) Civil Action: 01-CV-12257-PBS ) ) |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS and 01-CV-339 | ) Judge Patti B. Saris ) ) |

## RESPONSES OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY, ONCOLOGY THERAPEUTICS NETWORK CORPORATION AND APOTHECON, INCORPORATED TO PLAINTIFFS' OMNIBUS REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the District Court for the District of Massachusetts, and the case management orders of the Court, Defendants Bristol-Myers Squibb Company, Oncology Therapeutics Network Corporation, and Apothecon, Incorporated (collectively "BMS Group"), by their attorneys, submit the following responses and objections to Plaintiffs' Omnibus Request for Production of Documents and Interrogatories ("Omnibus Request").

### PRELIMINARY STATEMENT

1. These responses and objections are made solely for the purposes of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, and



not reasonably calculated to lead to the discovery of admissible evidence, and is outside the scope of its agreement with Plaintiffs.

## OBJECTIONS AND ANSWERS TO INTERROGATORIES

1. For the period beginning January 1, 1997, and for each subsequent calendar quarter, and with respect to each of the AWPIDs, identify the following information:

    a. the total volume of sales, indicating both the number of units and net revenue;

    b. the "average wholesale price" (AWP), as reported in Medical Economics Red Book, First Data Bank and/or MediSpan, and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of AWP, whether higher or lower, (ii) at more than five percent above AWP, and (iii) at more than five percent below AWP;

    c. the " average manufacturer price" ("AMP"), as reported to the Secretary of Health and Human Services, pursuant to the requirements of Social Security Act ("SSA") § 1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at ANT and up to and including 10% above AMP, and less than or equal to 10% below AMP (broken out separately), (ii) at greater than 10% above AMP but less than or equal to 20% above AMP, and at greater than 10% below AND but less than or equal to 20% below AMP (broken out separately), (iii) at greater than 20% above AMP but less than or equal to 30% above AMP, and at greater than 20% below AMP but less than or equal to 30% below AMP (broken out separately), (iv) at greater than 30% above AMP but less than or equal to 40% above AMP, and at greater than 30% below ANT but less than or equal to 40% below AMP (broken out separately), and (v) at greater than 40% above AMP but less than or equal to 50% above AMP, and at greater than 40% below AND but less than or equal to 50% below AND (broken out separately);

    d. the "wholesale acquisition cost" ("WAC"), as reported by Medical Economics Red Book, First Data Bank and/or MediSpan or any other such entity that gathers and publishes "wholesale acquisition costs," and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of WAC, whether higher or lower, (ii) at more than five percent above WAC, and (iii) at more than five percent below WAC;

    e. the "average sales price" (ASP), i.e., the price after reflecting discounts, rebates, chargebacks, to all classes except FSS;

    f. the total volume of the subject drug, in units, distributed as free goods.

**Answer:**

BMS objects to this interrogatory to the extent it is duplicative of Interrogatory No. 1 of Plaintiff's First Request, dated December 3, 2003 and BMS Group refers Plaintiffs to its objections and answers to the First Request. BMS Group further objects on the grounds that the

42



[interrogatory is vague, overly broad, unduly burdensome, and calls for the compilation of information that is a matter of public record, is equally available to Plaintiffs, or is already in Plaintiffs' possession, custody or control. BMS Group also objects on the ground that information responsive to this interrogatory can be found in documents it has previously produced as well as documents it is producing pursuant to its agreement with Plaintiffs.]

2. For the period beginning January 1, 1997, to the present, has the distribution, marketing, sales or promotion of any AWPID considered, incorporated, or been based upon, in any way, the difference between the cost to the provider and the amount that the provider receives for reimbursement or sale? If so, please describe the circumstances of such distribution, marketing, sales, or promotion, and provide all documents relating thereto, and identify all past and current employees with knowledge of the facts relating to such marketing, sales or promotion.

**Answer:**

BMS Group objects to this interrogatory to the extent it is duplicative of Interrogatory No. 2 of Plaintiff's First Request, dated December 3, 2003 and BMS Group refers Plaintiffs to its objections and answers to the First Request. BMS also objects on the grounds that it is vague, overly broad, unduly burdensome, and calls for the compilation of information that is equally available to Plaintiffs or already in Plaintiffs' possession, custody or control. BMS Group further objects on the ground that information responsive to this interrogatory can be found in documents it has previously produced as well as documents it is producing pursuant to its agreement with Plaintiffs.

3. For the period of January 1, 1997, to the present, please state for each calendar quarter the largest single purchaser, in terms of units, of each of the AWPIDs and the following:

   a. the total number of units of the AWPIDs received by that purchaser; and

   b. the total net revenue received for the AWPIDs by your company from that purchaser.

Please also produce the contract or agreement governing your relationship with that purchaser for each relevant quarter.

43



    (h)  Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates, chargebacks, discounts, allowances, credits, administrative fees, price/volume discounts and any other incentives provided to third parties.

    (i)  Documents summarizing all rebates, chargebacks, discounts, allowances, credits, administrative fees, price volume discounts or other incentives.

**Response:**

BMS Group objects to this request to the extent it is duplicative of Request No. 18 of Plaintiffs' First Request, dated December 3, 2003, and BMS Group refers Plaintiffs to its objections and responses to the First Request. BMS Group further objects to the terms "ASP," "earned margin," "actual product cost," "incentives," "price volume discounts," and "allowances" because they are vague, ambiguous and/or undefined. BMS Group also objects on the grounds that the request is overly broad and unduly burdensome. Subject to the foregoing Preliminary Statement and General Objections, BMS Group will produce transaction and rebate data in electronic form pursuant to its agreement with Plaintiffs.

    29.  For each of your AWPIDs, all agreements for sale of the AWPID, whether or not those contracts are with customers who purchased the AWPID directly, including drafts, correspondence, and supporting detail and data (in computerized form where available).

**Response:**

BMS Group objects to this request on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing Preliminary Statement and General Objections, BMS Group will produce transaction and rebate data in electronic form pursuant to its agreement with Plaintiffs.

    30.  All documents concerning communications between you and IMS Health (or any similar entity providing pharmaceutical database information) concerning or relating to any of your AWPIDs.

21



**Response:**

BMS Group objects to the terms "similar entity" and "pharmaceutical database information," because they are confusing, vague, ambiguous and undefined. Subject to the foregoing Preliminary Statement and General Objections, BMS Group will produce documents obtained from BMS Group personnel most likely to have information responsive to this request, if any, pursuant to its agreement with Plaintiffs.

31. For each of your AWPIDs, documents sufficient to estimate the number of patients taking the AWPID over each one year period.

**Response:**

BMS Group incorporates the foregoing Preliminary Statement and General Objections. In addition, BMS Group objects on the grounds that the request calls for documents not in the possession, custody or control of BMS Group and is outside the scope of its agreement with Plaintiffs.

32. For each of your AWPIDs, all documents concerning your actual, potential, or expected revenues and/or profits from the sale of that AWPID.

**Response:**

BMS Group objects to this request on the grounds that it is overly broad and unduly burdensome. Subject to the foregoing Preliminary Statement and General Objections, BMS Group will produce transaction and rebate data in electronic form pursuant to its agreement with Plaintiffs.

33. All documents concerning or relating to the actual or potential impact of the pricing or reimbursement of any drug on the quantity of any of your AWPIDs that have been or might be sold.

# Exhibit: B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | |

**PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS RELATING TO IMS DATA**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the District Court for the District of Massachusetts, Plaintiffs hereby request that you produce the documents requested herein within thirty (30) days.

## I.   DEFINITIONS

1.   "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings. Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters,

- 1 -

envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

2.  "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.  The term "Defendant" refers to any of the Defendants to whom this is directed, its officers, directors, affiliates, employees, representatives and agents (whether actual, apparent or otherwise).

4.  "You" or "Your" means the Defendant responding to these Requests and any of its subsidiaries, divisions, affiliates, officers, directors, employees or agents, including, but not limited to, attorneys and accountants.

1534.16 0156 DSC.DOC

## II. INSTRUCTIONS

1. A document shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or public or private entity having possession or custody thereof. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, or has been lost, discarded or destroyed, said document shall be identified as completely as possible including, but not limited to, the following information:

    (a) the date of disposal or disposition from your possession, custody or control;

    (b) the manner of disposal or disposition from your possession, custody or control;

    (c) the reason for disposal or disposition from your possession, custody or control;

    (d) the person authorizing disposal or disposition from your possession, custody or control;

    (e) the document's current or last known custodian;

    (f) the circumstances surrounding the document's disposition from your possession, custody or control;

    (g) the generic category of the document, *e.g.*, memo, letter, computer print-out, etc.;

    (h) the type(s) of information contained in the document; and

    (i) the identity of all persons having knowledge or who had knowledge of the contents of the document.

2. Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those which otherwise came into existence at anytime during the relevant period described herein.

3. (a) Where an objection is made to any document request under Fed. R. Civ. P. 34, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

(b) Where a claim of privilege is asserted in objecting to any document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

(i) the attorney asserting the privilege shall in the objection to the document demand, or sub-part thereof, identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

(ii) the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A) for documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; and, (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;

(B) for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and, (3) the general subject matter of the communication.

4. Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectional subject matter which is relevant and material to a request must be produced, but that portion of the document for which the objection

- 4 -

is asserted may be withheld or redacted provided that the above-requested information is furnished.

5.  This request is continuing and all documents coming into your possession, custody or control which you would have been required to produce had they been available at an earlier time shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

6.  Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Redactions should be included on the privilege log described in Instruction 3.

7.  The fact that a document is produced by one defendant does not relieve any other defendant of the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

8.  In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

9.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

### III.  RELEVANT TIME PERIOD

The relevant period of these document requests, unless otherwise indicated, shall be from the launch of the drugs you manufactured that are on Exhibit A, to the date of production and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

1534.16 0156 DSC.DOC

## IV. REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

With respect to the drugs on Exhibit A, the following IMS reports or data for each such drug:

- (a) National Prescription Audit (NPA, or NPA Plus):
  - Timeframe: Monthly
  - Data elements: TRX, Extended Units TRX, NRX, Dollars
  - By Form (*e.g.*, tablets, capsules, injectable, etc.)
  - By Strength (*e.g.*, 15 mg, 30 mg, etc.)

- (b) National Sales Perspective (previously the Retail and Provider Perspective):
  - Timeframe: Monthly
  - Data elements: Units, Extended Units, Dollars
  - By NDC or its equivalent
  - By Form
  - By Strength

- (c) Method of Payment Data (from the "MSA" product and/or the NPA NRX data):
  - Any reports or data

- (d) Generic Spectra
  - Any reports or data

- 6 -

Exhibit A
TRACK I Manufacturers by Drug

| DRUG | Manufacturer (Track I) |
|---|---|
| Aciphex | J&J |
| Albuterol | Schering-Plough/Warrick |
| Atacand | Astrazeneca |
| Augmentin | GSK |
| Avapro | BMS |
| Beclovent | GSK |
| Beconase | GSK |
| BuSpar | BMS |
| Capoten | BMS |
| Celexa | Astrazeneca |
| Clarinex | Schering-Plough |
| Claritin | Schering-Plough |
| Clotrimazole | Schering-Plough/Warrick |
| Flonase | GSK |
| Flovent | GSK |
| Griseofulvin, Ultramicrocrystalline | Schering-Plough/Warrick |
| Ismn | Schering-Plough/Warrick |
| Nasonex | Schering-Plough |
| Nexium | Astrazeneca |
| Oxaprozin | Schering-Plough/Warrick |
| Paxil | GSK |
| Perphenazine | Schering-Plough/Warrick |
| Potassium Chloride | Schering-Plough/Warrick |
| Pravachol | BMS |
| Prilosec | Astrazeneca |
| Pulmicort | Astrazeneca |
| Relafen | GSK |
| Rhinocort | Astrazeneca |
| Risperdal | J&J |
| Seroquel | Astrazeneca |
| Sodium Chloride | Schering-Plough/Warrick |
| Sulcralfate | Schering-Plough/Warrick |
| Taxol | BMS |
| Theophylline | Schering-Plough/Warrick |
| Vancenase | Schering-Plough |
| Zestril | Astrazeneca |
| Zofran | GSK |
| Zoladex | Astrazeneca |

- 7 -

DATED: July 19, 2005                By     /s/ Steve W. Berman
                                    Thomas M. Sobol (BBO#471770)
                                    Edward Notargiacomo (BBO#567636)
                                    Hagens Berman Sobol Shapiro LLP
                                    One Main Street, 4th Floor
                                    Cambridge, MA  02142
                                    Telephone: (617) 482-3700
                                    Facsimile: (617) 482-3003
                                    **LIAISON COUNSEL**

                                    Steve W. Berman
                                    Sean R. Matt
                                    Hagens Berman Sobol Shapiro LLP
                                    1301 Fifth Avenue, Suite 2900
                                    Seattle, WA  98101
                                    Telephone: (206) 623-7292
                                    Facsimile: (206) 623-0594

                                    Elizabeth Fegan
                                    Hagens Berman Sobol Shapiro LLP
                                    60 W. Randolph Street, Suite 200
                                    Chicago, IL  60601
                                    Telephone: (312) 762-9235
                                    Facsimile: (312) 762-9286

                                    Eugene A. Spector
                                    Jeffrey Kodroff
                                    Spector, Roseman & Kodroff, P.C.
                                    1818 Market Street, Suite 2500
                                    Philadelphia, PA  19103
                                    Telephone: (215) 496-0300
                                    Facsimile: (215) 496-6611

                                    Marc H. Edelson
                                    Allan Hoffman
                                    Hoffman & Edelson
                                    45 West Court Street
                                    Doylestown, PA  18901
                                    Telephone: (215) 230-8043
                                    Facsimile: (215) 230-8735

1534.16 0156 DSC.DOC

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Sean R. Matt, an attorney, caused a true and correct copy of the foregoing, **PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS RELATING TO IMS DATA** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on July 19, 2005, a copy to Verilaw Technologies for Posting and notification to all parties

By_____/s/ Steve W. Berman_____
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292