UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENTS RELATES TO ALL ACTIONS | Judge Patti B. Saris |
| | Chief Mag. Judge Marianne B. Bowler |

ASTRAZENECA PHARMACEUTICALS LP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF DAVID BRENNAN AND SUPPLEMENT TO PLAINTIFFS' MOTION FOR LEAVE TO SET ASIDE THE TEN DEPOSITION LIMIT WITH RESPECT TO DEFENDANT ASTRAZENECA REGARDING 30(B)(6) DEPOSITION RELATED TO SALES TRAINING

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "the Company") respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Deposition of David Brennan and Plaintiffs' Supplement to their Motion for Leave to Set Aside the Ten Deposition Limit Regarding 30(b)(6) Deposition Related to Sales Training. For the reasons set forth below, Plaintiffs' motions should be denied.

INTRODUCTION

These last-minute motions, filed literally on the last day of discovery, are not intended to procure legitimate additional discovery, but merely to harass AstraZeneca and its employees. Plaintiffs have had ample opportunity to take discovery of AstraZeneca over the last three years. Yet, Plaintiffs made no attempt to take fact depositions until January of this year, and even then, noticed, scheduled, and cancelled depositions in such a haphazard manner that they completed only two fact depositions prior to May 2005— knowing full well that the discovery deadline was only three months away. As

demonstrated in AstraZeneca's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Set Aside the Ten Deposition Limit ("AstraZeneca's Opposition"), Plaintiffs' dilatory approach to deposition discovery should not be rewarded by granting them a de facto extension of the discovery deadline to take unnecessary depositions.

Specifically, Plaintiffs' proposed post-discovery deposition of Mr. Brennan, current President and CEO of AstraZeneca Pharmaceuticals LP, would disrupt AstraZeneca's business at a critical time, when Mr. Brennan is preparing to assume the position of Chief Executive of AstraZeneca PLC in January 2006. Importantly, Mr. Brennan does not possess knowledge relevant to Plaintiffs' claims that could not have been sought from others in the Company. Given the number and tenor of the depositions that Plaintiffs have already taken on the topics purportedly known only to Mr. Brennan, Plaintiffs' motion to compel the deposition of Mr. Brennan should be denied.

Plaintiffs' blatant misuse of the discovery process is also reflected in their untimely demand that AstraZeneca produce a Rule 30(b)(6) witness on sales training. AstraZeneca has produced hundreds of thousands of documents, including sales training materials, and produced numerous deponents—including sales representatives and sales managers—who were examined about sales training they received. Evidently frustrated that the documentary and testimonial evidence produced does not support their claims, Plaintiffs now inappropriately attempt to shift the burden of their investigation to AstraZeneca, by demanding a Rule 30(b)(6) witness after the close of discovery. The Court should deny Plaintiffs' request.

## BACKGROUND

Plaintiffs have taken a total number of depositions far exceeding the number allowed under the Federal Rules of Civil Procedure and the Local Rules. *See* Fed. R. Civ. P. 30(a)(2)(A) (requiring a party to obtain leave of court to take more than ten depositions in a litigation); *accord* Local Rule 26.1(c). In fact, to date, Plaintiffs have deposed twenty-five current and former AstraZeneca employees—twenty fact witnesses and five 30(b)(6) witnesses. Declaration of Trisha Lawson ("Lawson Decl.") ¶ 2 (FILED UNDER SEAL).[1] In addition, at Plaintiffs' request, AstraZeneca has consented to having two more former employees deposed after the August 31, 2005, discovery deadline. Lawson Decl. ¶ 3. Separately, Plaintiffs have taken six depositions of third parties associated with AstraZeneca and, with AstraZeneca's consent, have scheduled (or are in the process of scheduling) two more third-party depositions to take place after the discovery deadline. Lawson Decl. ¶ 4.

Against this background, Plaintiffs inexplicably claim that AstraZeneca has taken the "arbitrary position that it will not produce more than eighteen (18) deponents, including deponents produced pursuant to depositions noticed pursuant to Fed. R. Civ. P. 30(b)(6)." *See* Plaintiffs' Motion to Compel Deposition of David Brennan ("Pl. Mem.") at 1. Moreover, Plaintiffs themselves acknowledged in their original motion to compel additional depositions that the list of deponents numbering eighteen was originally proposed by <u>Plaintiffs</u>, not AstraZeneca. *See* Plaintiffs' Motion for Leave to Set Aside the Ten Deposition Limit at 3; Declaration of Kenneth A. Wexler ¶ 6 ("[I]n or around

---

[1] Kathleen Zemanek was deposed as both a fact and a 30(b)(6) witness on June 1, 2005. For present purposes, she is counted as a fact witness.

May 2005, I suggested that a limited number of additional depositions be scheduled relating to physician-administered drugs."). Indeed, at that time, Plaintiffs advised AstraZeneca that they did not intend to seek additional depositions relating to physician-administered drugs, and it was on that basis that AstraZeneca consented to more than double the number of depositions allowed under the Local Rules. Lawson Decl. ¶ 6.

As Plaintiffs also acknowledged in their original motion, it was the uncertainty about the scope of the case—whether the class would relate only to physician-administered drugs or to both physician- and self-administered drugs—that prompted them to seek more than the agreed-upon depositions. Specifically, Plaintiffs stated:

> In an effort to break the deposition impasse, in or around May 2005, plaintiffs suggested that a limited number of depositions be scheduled relating to physician-administered drugs, thinking that Judge Saris' ruling on class certification would affect the scope of the case one way or the other, and that the scope of subsequent discovery would be necessarily affected as well. However, discovery closes in two months and the class certification decision has not yet issued. Therefore, as plaintiffs had advised AstraZeneca might become the case if no class certification ruling was forthcoming, and with the August 31 deadline looming, plaintiffs have no choice but to seek additional depositions relating to the remaining drugs.

Plaintiffs' Motion for Leave to Set Aside the Ten Deposition Limit at 3 (citations omitted). Now, even though the Court has limited the class to physician-administered drugs, Plaintiffs continue to press for depositions beyond the parties' agreement in what can only be described as harassment of AstraZeneca.

As set forth in the attached chart, Plaintiffs selected fifteen fact witnesses whose testimony almost exclusively concerned Zoladex. In particular, Plaintiffs deposed employees that held positions throughout the organizational structure from upper-level management—including Robert Black, who was President of Zeneca Inc. for the majority

4

of the class period—to sales representatives scattered across the United States. *See* Lawson Decl. Ex. 1. They also deposed oncology/urology therapeutic area leaders, as well as product and promotions managers responsible for Zoladex. On the sales side, in addition to sales representatives, Plaintiffs deposed regional and district sales managers and regional oncology account managers ("ROAMs").

Moreover, Plaintiffs had ample opportunity to take discovery from each of these deponents. Although on rare occasions they requested witnesses to appear on multiple days, Plaintiffs were more often able to obtain the discovery they sought from deponents within half a day. In fact, eight of these depositions lasted for fewer than four hours, thus requiring that counsel on numerous occasions spend more time traveling to the deposition than attending it. For instance, the deposition in Dallas, Texas of former Zoladex product manager Mark Rickards lasted just two hours, and the deposition in Sacramento, California of sales representative Matthew Metcalf lasted less than three hours.

Plaintiffs claim that they must depose Mr. Brennan because he serves on AZLT and "pricing proposals . . . the AZ Code of Conduct and marketing and/or sales policies are approved by AZLT"; Mr. Brennan was otherwise aware of AstraZeneca polices that "either encouraged or ignored the conduct at issue in this case"; and Mr. Brennan "was responsible for developing the [post-merger] pricing policies of AstraZeneca." Pl. Mem. at 2-3, 6. Significantly, however, Plaintiffs spent less than two hours on the record with the former president of Zeneca Inc., Robert Black. Mr. Black testified that he had approval authority over price (acquisition cost for wholesalers) increases. Tellingly, Plaintiffs did not focus on questions involving company policies that may have "encouraged or ignored the conduct at issue in this case," Pl. Mem. at 6, nor was Mr.

5

Black even asked about whether there *was* a code of conduct at the company during the 1990s. *See generally* Lawson Decl. Ex. 2.

As for Plaintiffs' request for a 30(b)(6) witness on sales training, Plaintiffs have already have access to a significant volume of documentary and testimonial evidence relating to sales training. Moreover, if Plaintiffs seriously believed they needed a 30(b)(6) witness to testify on this subject, they could easily have substituted in a sales-training witness in the place of one other the other deponents. During the discovery time period, Plaintiffs did not hesitate to take advantage of AstraZeneca's willingness to allow substitution of witnesses. Indeed, it was by substitution that Plaintiffs demanded to depose Messrs. Black and Brennan, proposing to exchange them for two sales representatives—Christopher Bowman and Randy Payne. Additionally, when the class certification decision was announced, Plaintiffs immediately cancelled the scheduled depositions of Michael Tilton (with less than one day's notice), Charles Joseph, and Nancy Wilkinson in exchange for sales representatives. Lawson Decl. ¶ 9. In light of the foregoing, and as articulated fully in the pages that follow, Plaintiffs' motion to compel the deposition of David Brennan and request for AstraZeneca to designate a 30(b)(6) witness on the topic of sales training should be denied.

ARGUMENT

I. Plaintiffs' Motion to Compel the Deposition of David Brennan Should Be Denied

Although the Federal Rules of Civil Procedure provide for liberal pretrial discovery, they do not grant a party unrestricted power to make discovery demands of its adversary. *See* Fed. R. Civ. P. 26(b). Pursuant to Rule 26(b)(2), a court has broad discretion to limit discovery requests where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

These considerations are particularly significant where plaintiffs seek to depose a high-level executive of a company. Courts have observed that "'the oral deposition of a high level corporate executive should not be freely granted when the subject of the deposition will only be remotely relevant to the issues of the case.'" *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518-19 (N.D. Okla. 2003) (quoting *Folwell v. Hernandez*, 210 F.R.D. 169, 174 (M.D.N.C. 2002)); *see also Cardenas v. Prudential Ins. Co.*, Nos. 99 Civ. 1422, 99 Civ. 1422, 99 Civ. 1736, 2003 WL 21293757, at *2 (D. Minn. May 16, 2003) (affirming denial of motion to compel depositions of senior executives). Rule 26(b)(2) confers judicial authority to "regulate harassing or burdensome depositions and . . . unless a high level executive has unique personal knowledge about the controversy, the court should regulate the discovery process to avoid oppression, inconvenience, and burden to the corporation and to the executive." *Evans*, 216 F.R.D. at 518-19 (quotation

7

marks and citation omitted); *see also Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) ("[A] court will often deny a request to depose a high ranking corporate official when lower ranking executives have access to the same information."). In particular, "a court must remain mindful that 'permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation.'" *Travel Ctr. of Fairfield County, Inc. v. Royal Cruise Line Ltd.*, No. 3: 96 Civ. 10125, 2000 WL 306934, at *3 (D. Conn. Jan. 24, 2000) (quoting *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y. 1997)).

Plaintiffs' motion to compel the deposition of Mr. Brennan should be denied. Their attempt to depose Mr. Brennan is clearly unreasonable, if not abusive, and will unnecessarily disrupt AstraZeneca's business.

### A. *Plaintiffs' Motion Is Untimely*

As an initial matter, Plaintiffs' argument that "this is the appropriate time to take Brennan's deposition," Pl. Mem. at 7, lacks merit. Without seeking leave of the court, Plaintiffs have already taken the depositions of twenty-five—soon to be twenty-seven—current and former employees. Plainly, Plaintiffs have run afoul of Rule 30(a)(2)(A) and Local Rule 26.1(c). Even under the most liberal discovery rules, Plaintiffs have stretched these principles beyond recognition in an apparent attempt to render Rule 26(b) meaningless for purposes of this litigation.

Although they noticed the depositions of Mr. Brennan and fourteen other witnesses on December 23, 2004, Plaintiffs waited until approximately one month before the close of discovery to seek the substitution of Messrs. Brennan and Black for the

scheduled depositions of Messrs. Bowman and Payne.[2]  Lawson Decl. ¶ 7.  Notably, Plaintiffs did not even mention Mr. Brennan in the intervening seven months, although they noticed more than forty other depositions.  *Id.*  Plaintiffs' present contention that Mr. Brennan possesses unique knowledge relevant to their claims simply is not credible given such delay and the fact that it is based largely on the June 2004 testimony of Jeffrey Alverson and documents that have been available to Plaintiffs for over a year, *see* Pl. Mem. at 2-3.

AstraZeneca unequivocally informed Plaintiffs during the first week in August that Mr. Brennan's deposition fell outside of the scope of reasonable discovery and accordingly, that AstraZeneca would not schedule the deposition.  Nonetheless, Plaintiffs inexplicably waited until August 31, 2005, to file their motion to compel.  Having delayed until the last day of discovery, and having far exceeded the parties' agreed-upon deposition limit, Plaintiffs' claim that it is the "appropriate time" to take Mr. Brennan's deposition is clearly in error.  *See Ridge Chrysler Jeep LLC v. Daimler Chrysler Servs N. Am., LLC*, No. 03 C 760, 2004 WL 3021842, at *6 (N.D. Ill. Dec. 30, 2004) (denying motion to compel deposition of President and CEO of defendant, noting, "Where a party has waited to bring a motion until the eve of a discovery deadline, the court is justified in denying the motion."); *see also Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45-46 (E.D.N.Y. 2001) (refusing to permit deposition of CEO of defendant company where "Plaintiff delayed deposition[] until the 'eleventh hour'—three days prior to the

---

[2] It should be noted that Plaintiffs ultimately deposed only four of the fifteen individuals listed on the December 23, 2004, notice, vacillating a number of times concerning the identity of those witnesses whom they wanted to depose.  Lawson Decl. ¶ 5; *see also id.* ¶¶ 9-11.

9

discovery completion deadline, which had twice been extended—and was not diligent in obtaining discovery within the period set by the court"); *Bamberg v. Lernout*, 225 F.R.D. 64 (D. Mass. 2004) (denying motion to compel deposition on the ground that plaintiffs had ample opportunity to procure the sought-after discovery).

B. *Plaintiffs' Motion Should Be Denied Because Mr. Brennan Does Not Possess Knowledge Directly Relevant to Plaintiffs' Claims*

Plaintiffs' motion to compel should be denied for the additional reason that Mr. Brennan does not possess information that is directly relevant to Plaintiffs' claims. Plaintiffs submit that Mr. Brennan must be deposed because of his membership on AZLT, his knowledge of company policies relating to permissible conduct, and his responsibility for or involvement in decisions concerning the Company's pricing policies. *See* Pl. Mem. at 2-3, 6. Plaintiffs' argument that Mr. Brennan possesses such knowledge is belied both by the facts of this case and by their own examination of Mr. Black— particularly since Plaintiffs themselves have acknowledged that they have narrowed their discovery to physician administered drugs in light Judge Saris's class certification ruling.

Plaintiffs have made no showing as to why any of these topics are relevant to the instant motion, or, more generally, to this litigation. Moreover, Mr. Brennan has only been President of AstraZeneca since the merger in 1999, and CEO since 2001. As Plaintiffs know, there were no price increases on Zoladex, AstraZeneca's only physician-administered drug, for several years after Mr. Brennan became President. Questions regarding ultimate approval for price changes are therefore properly addressed to Mr. Black, whom Plaintiffs have deposed. Second, the corporate "policies" now raised by Plaintiffs are, at best, ancillary to the allegations in the Second Amended Master

10

Consolidated Complaint. Surely, Plaintiffs are not suggesting that a company's liability for alleged fraudulent acts turns on its CEO's direct knowledge or endorsement of such acts. Finally, given their failure to ask Mr. Black any questions concerning a company code of conduct in the decade preceding the merger, Plaintiffs' contentions regarding the importance of policies that "encouraged or ignored the conduct at issue," Pl. Mem. at 6, such as those embodied in AstraZeneca's "Code of Conduct," defies logic. Mr. Black served as President of Zeneca Inc.—which manufactured and sold Zoladex—during the majority of the class period (and in the years when most of the complained-of behavior occurred), yet Plaintiffs spent less than two hours with him, without emphasis on the conduct they now imply is so integral to their case. The brevity and tenor of Mr. Black's deposition further favor denial of Plaintiffs' motion.

    C. *Plaintiffs' Motion Should Be Denied Because Any Arguably Relevant Knowledge that Mr. Brennan Possesses Was Available Through Other Witnesses*

Plaintiffs' motion to compel should also be denied on the ground that any knowledge that Plaintiffs argue Mr. Brennan has that is even arguably relevant to this litigation could have been obtained from any number of witnesses whom Plaintiffs have, and/or could have, deposed. Having received hundreds of thousands of pages of documents and deposed twenty-five current and former employees—of whom fifteen testified primarily on Zoladex alone, Plaintiffs have had ample opportunity to obtain the information they now claim to be lacking.

Plaintiffs' reliance on *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987), is misplaced. In that case, the issue before the court was the sufficiency of the executives' affidavits disclaiming any relevant knowledge regarding specific

11

company policies. Here, no such affidavit is at issue, nor should it be given the remote nature of any relevance to be attached to the "company policies" raised by Plaintiffs' motion. Moreover, in contrast to Plaintiffs' vague suggestions that Mr. Brennan has knowledge of AstraZeneca's "corporate policies" relating to the "fraud at issue in this case" and the "pricing strategies at issue in this case," Pl. Mem. at 5, the plaintiff in *Travelers Rental* provided very detailed information in support of its argument that it was entitled to depose four of Ford Motor Company's corporate officials. *See* 116 F.R.D. at 142-43 (citing documents and deposition testimony specifically identifying information not otherwise available from other sources).

Even accepting the overly broad categories of information Plaintiffs now claim to be missing, it is clear that any arguably relevant information sought from Mr. Brennan was available through other employees. Plaintiffs have deposed employees at all relevant levels of the organizational structure pertaining to Zoladex, including management both pre- and post-merger. Inasmuch as Plaintiffs, in support of their argument that they "should now be permitted to see what AZ's management has to say about the fraud at issue in this case," Pl. Mem. at 5, characterize the witnesses to date as "lower level employees," they are simply wrong. Mr. Black was the President of the Company and Mr. Iacono was the Vice President of Sales and Marketing.[3] These are hardly lower-level employees. *See* Lawson Decl. Ex. 3.

Moreover, to the extent that Plaintiffs seek information from Mr. Brennan regarding pricing proposals, marketing polices, and/or codes of conduct considered by

---

[3] Additionally, Mr. O'Shea, whom Plaintiffs will depose later this month, was Senior Vice President of Sales and Marketing.

AZLT, *see* Pl. Mem. at 2-3, Plaintiffs are aware that Mr. Brennan does not possess unique knowledge of AZLT meetings. Alan Milbauer, whom Plaintiffs have deposed, testified that he "always" attended AZLT meetings. Tellingly, although they inquired generally about pricing approvals, Plaintiffs did not ask Mr. Milbauer about the AZ Code of Conduct or marketing policies that came before the AZLT. *See* Milbauer Dep. Tr. at 178-93. Additionally, Plaintiffs noticed, but ultimately chose not to depose other members of AZLT, such as Marion McCourt, Anthony Zook, and Kenneth Murtha. Lawson Decl. ¶ 11.

II. <u>Plaintiffs' Request to Supplement Their Motion for Leave to Set Aside the Ten Deposition Limit Regarding 30(b)(6) Deposition Related to Sales Training Should Be Denied</u>

In support of their exhortation that the Court should set aside the ten deposition limit and enter an order requiring AstraZeneca to produce a Rule 30(b)(6) witness who can testify regarding the training of sales representatives, Plaintiffs repeat the false claim that AstraZeneca arbitrarily limited them to eighteen depositions. Plaintiffs further contend: (1) no AstraZeneca deponent has been able to testify fully regarding the type of training sales representatives received throughout the purported class period; and (2) AstraZeneca limited its search for responsive documents to documents found within the Managed Markets Business Group, resulting in the production of relatively few documents related to sales training. Each of Plaintiffs' arguments is without merit. Plaintiffs had full opportunity to obtain discovery regarding the training of sales representatives, and the statement that AstraZeneca limited its search for sales training documents to the Managed Markets Business Group is just false. Lawson Decl. ¶ 12. In addition, Plaintiffs' motion to compel a 30(b)(6) deposition related to sales training—

13

filed at the close of discovery—is untimely. Accordingly, the Court should deny Plaintiffs' motion.

### A. *Plaintiffs Have Already Obtained Discovery on Sales Training and Have Only Themselves to Blame for Any Perceived Deficiency*

As set forth above, Plaintiffs misstate that AstraZeneca arbitrarily limited them to eighteen depositions. It was Plaintiffs who determined in May 2005 that an additional eighteen depositions would be sufficient in the event that the class certified related only to physician-administered drugs.

Moreover, it is beyond dispute that AstraZeneca has complied with its obligations under the Federal Rules of Civil Procedure, Local Rules, and prior orders of this Court. Plaintiffs do not, and cannot, deny that AstraZeneca has produced documents and witnesses that provided information relevant to the topics in Plaintiffs' June 6, 2005, discovery notice. Rather, Plaintiffs merely claim that no deponent has been able to "testify fully" about training and that they should not have to obtain information piecemeal from deponents. Plaintiffs fail to cite a single authority for this proposition for the simple reason that neither the Federal Rules nor Local Rules require AstraZeneca to do Plaintiffs' investigation for them or to marshal information in the form preferred by Plaintiffs. Where, as here, the plaintiffs have had ample opportunity to obtain the information sought, leave for additional discovery on the topic should be denied. *See* Fed. R. Civ. P. 26(b)(2); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (Saris, J.).

In particular, although they were not offered as 30(b)(6) designees in response to Plaintiffs' June 6, 2005 notice, 30(b)(6) witnesses Greg Looney and Kathleen Zemanek,

both of whom were sales representatives and district sales managers, testified generally about the training of sales representatives for Zoladex. Lawson Exs. 4 and 5. Furthermore, numerous fact witnesses provided information about the training of sales representatives. For example, Nicholas Harsh, a National Sales Director from 2001 through the present, testified regarding training at the national level. Lawson Ex. 6. Keith Patterson, Zoladex product manager until 1997, testified regarding sales training at the national and regional level, and at sales meetings. Lawson Ex. 7. Plaintiffs also deposed Dean McAlister, who at various times was a district sales manager, an oncology account manager, and a regional sales trainer. They had ample opportunity but failed to ask Mr. McAlister detailed questions about training at the regional level and failed to ask any questions whatsoever about training at the national level. Lawson Ex. 8. Plaintiffs also deposed several current and former Zoladex sales representatives who testified about sales training. *See, e.g.*, Lawson Ex. 9. Having had more than sufficient opportunity to develop discovery relating to sales training, Plaintiffs' motion should be denied.

### B. *Plaintiffs' Motion is Untimely*

Though labeled a "supplement" to their motion to compel additional depositions, which itself was not filed until less than two months before the discovery deadline, in reality Plaintiffs' "supplement" is a new motion filed on the last day of the discovery period. As such, it is untimely. *See Ferranti Intern., Inc. v. Willard*, No. Civ. A. 02-CV-404, 2003 WL 21960716 (E.D. Pa. June 25, 2003) (denying motion to take deposition filed on the last day of the discovery period under Federal Rule 26(b)); *see also Bamberg v. Lernout*, 225 F.R.D. 64 (D. Mass. 2004) (denying motion to compel production of 30(b)(6) witness on independent grounds that the notice of deposition was untimely and that Plaintiffs had ample opportunity to obtain the discovery sought). Plaintiffs do not—because they cannot—offer any reasonable explanation for waiting until the last day of discovery to move to compel a deposition noticed months earlier. Instead, Plaintiffs' motion, filed at the eleventh hour, seeks to impermissibly extend the discovery period as defined by this Court. *See Gavenda v. Orleans County*, 182 F.R.D. 17, 20 (W.D.N.Y. 1997) (finding that discovery requests should be made sufficiently within the discovery period to allow for a response prior to the close of discovery); *Jones v. Hirschfeld*, No. 01 Civ. 7585, 2003 WL 21415323, at *4 n.13 (S.D.N.Y. June 19, 2003); *Lastre v. Leonard*, No. 89 C 1784, 1990 WL 37658 (N.D. Ill. Mar. 21, 1990).

Plaintiffs should not benefit from their failure to inquire about the topic of sales training in greater detail and with more witnesses. Having had sufficient opportunity to obtain discovery regarding the training of sales representatives and having failed to file a timely request, Plaintiffs' motion to exceed the ten-deposition limit and end run around the Track One discovery deadline should be denied.

16

## CONCLUSION

For the reasons set forth above, AstraZeneca respectfully requests that the Court deny Plaintiffs' motions to compel.

Dated:   Boston, Massachusetts
         September 15, 2005

                          Respectfully Submitted,

                        By:   /s/ Lucy Fowler

                            Nicholas C. Theodorou (BBO # 496730)
                            Lucy Fowler (BBO #647929)
                            FOLEY HOAG LLP
                            155 Seaport Blvd.
                            Boston, Massachusetts 02210
                            Tel: (617) 832-1000

                            D. Scott Wise
                            Kimberley Harris
                            DAVIS POLK & WARDWELL
                            450 Lexington Avenue
                            New York, New York 10017
                            Tel: (212) 450-4000

                            Attorneys for AstraZeneca
                            Pharmaceuticals LP

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on September 15, 2005, a copy to Verilaw Technologies for posting and notification to all parties.

/s/ Lucy Fowler
Lucy Fowler