Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com



# Morgan Lewis
COUNSELORS AT LAW

**J. Clayton Everett, Jr.**
202 739-5860
jeverett@morganlewis.com

July 22, 2004

Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA  02109

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*

Dear Tom and Todd:

I am writing to follow up on several outstanding issues relating to the document and deposition subpoenas issued to your clients (1) Empire BCBS; (2) BCBS of Florida; (3) BCBS of Nebraska; (4) BCBS of Lousiana; (5) BCBS of Tennessee; and (6) Horizon Healthcare.

## Lupron Productions.

We received last week 34 boxes of documents previously produced by your clients in the *Lupron* litigation. The following bates ranges were omitted from the documents you sent:

EMP001015
EMP009780-EMP009786
EMP009894
EMP0012549
EMP0013625-EMP0014815
NEB000443
NEB002299-NEB002328
TN000020-TN000032
TN000564-TN000565
TN000699-TN000707
TN000717-TN000719

TN001248-TN001262
TN001279
TN001718
LA0000630
LA0014816 – LA0015936
LA0017145
LA0018472
LA0019433 – LA0019447
LA0019909 – LA0019916
LA0019943
LA0021658

Morgan Lewis
COUNSELORS AT LAW

Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
July 22, 2004
Page 2

LA0022467                                    LA0023153 – LA0023165

If those documents were inadvertently omitted, please provide copies of the documents. If they were omitted on privilege grounds, please provide a privilege log identifying the information requested in the subpoena instructions. If they were omitted for some other reason, please let me know the reason.

**Other Requested Documents.**

You indicated in our last call that you have gathered an additional 9 boxes of documents responsive to the subpoenas but refused to number and produce those documents until defendants agreed to pay for an extra copy set of the documents to be maintained in your offices. We do not believe that your conditional refusal to produce the requested documents is justified. Nonetheless, in light of the time and expense associated with litigating this issue in a motion to compel, we are willing to offer the following compromise. Defendants will reimburse you for the cost of having the documents scanned and bates numbers applied electronically and for the costs associated with making two copies of the resulting CDs. One copy of the document CDs would be provided to you and one would be sent to us. Please let me know if you are amenable to this compromise as soon as possible to avoid further delay in the production of these documents. If it would be helpful, we are happy to make the relevant arrangements with a vendor in Boston.

Your June 14 letter indicated that your clients would also be producing "contracts between themselves and PBMs, specialty pharmacies and retail pharmacies" by July 9. To date, we have not received those contracts. Please produce them immediately.

In addition, we spoke months ago about a narrowed set of requests that would satisfy defendants' requests for documents pursuant to the subpoenas. Your clients have produced their *Lupron* productions and committed to producing their contracts with PBMs, pharmacies and specialty pharmacies.[1] We have also discussed electronic claims data. Your clients have not, however, committed to produce or even provided their position regarding the other documents we discussed. Those documents included:

---

[1]   As I explained in my June 23 letter, we also need to receive a representative sample of your clients' contracts with healthcare providers that deal with reimbursement for pharmaceutical products. Physician administered drugs are central to plaintiffs' claims in this case, and it is imperative that we receive information regarding your clients' reimbursements for physician-administered drugs. I understand that some provider contracts are included in your clients' *Lupron* productions. We will let you know whether we need additional provider contracts after reviewing the *Lupron* productions.



Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
July 22, 2004
Page 2

    1.    Contracts, communications and other documents relating to the Named Plaintiffs;

    2.    Analyses and discussions concerning whether servicing or administration fees paid to health care providers or retailers are sufficient to cover the costs associated with drug administration;

    3.    Analyses concerning whether the relative levels of reimbursement for drugs administered in hospitals versus drugs administered in doctors' offices, by other providers or in other outpatient settings such as homecare, and documents showing any changes in those relative reimbursement levels during the relevant time period;

    4.    Your clients' rationales for adopting the reimbursement methodologies they utilized during the relevant period for pharmaceutical products (including reports produced by benefits consultants);

    5.    Your clients' understandings of (a) the term "AWP" or "average wholesale price," including whether AWP equals the average of actual acquisition costs; and (b) whether health care providers, retailers and pharmacy benefits managers earn a margin on drugs administered and dispensed;

    6.    RFPs solicited from pharmacy benefits managers; and

    7.    Government reports, requests and communications relating to AWP.

Please let me know by July 27 whether your clients are willing to produce these documents, or whether we will need to move to compel their production.

### Claims Data.

As indicated in my e-mail to you earlier this week, our experts consider it essential to receive at least the following database fields in addition to the fields underlying your previous cost and time estimates:

Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
July 22, 2004
Page 3

| Field | Medical | Pharmacy | Comments |
|---|---|---|---|
| NDC (National Drug Code) | | X | For pharmacy claims this identifies the drug. Pricing compendia list AWPs based on NDC code. |
| HCPCS (J and Q codes) | X | | For medical claims this identifies the drug administered. Medicare reimburses on this basis. |
| CPT code (Procedure code) | X | | For medical claims, this would identify the procedure for which drug was administered |
| Product or drug name | X | X | For medical claims this can eliminate ambiguities associated with J-codes. In general, can be used for classifying drugs by name. |
| Date filled | | X | For pharmacy drugs, this would be the date the pharmacy filled the prescription. This is the date on which the transaction occurred for pricing purposes. |
| Date of service (or First service date) | X | | For medical claims, this is the date of the of the office visit during which the drug was administered. |
| Units | X | X | Generally only available for pharmacy claims, this field would allow price to be calculated. |
| Usual & Customary Charge | | X | Identifies the price that would be paid out-of-network, and is sometimes the price actually paid. |

Morgan Lewis
COUNSELORS AT LAW

Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
July 22, 2004
Page 4

| Field | Medical | Pharmacy | Comments |
|---|---|---|---|
| MAC (Maximum Allowable Cost) | | X | Generally only available for pharmacy claims, this field indicates the contractual price for the administered drug. For generic drugs this is usually the relevant price. |
| Allowed (contractual) charge | X | | Generally only available for medical claims, this field indicates the contractual price for the administered drug. This will be different from amount charged. |
| Medicare paid amount | X | | For medical claims, should identify whether, and to what extent Medicare covered the claim – required to identify portions of claim within class. |
| Claim, internal control, or sequence number | X | X | Allows unique identification of claims in order to account for duplicate or offsetting transactions. |
| Patient ID (non-revealing) | X | X | Allows an individual claimant to be tracked for purposes of understanding impact of meeting deductibles. Does not need to reveal identity, but should be consistent over time for each individual patient. |
| Provider type | X | X | Should indicate whether provider was hospital, clinic, or individual – relevant for identifying negotiating party with payor. |
| Plan type | X | X | Should indicate whether the plan is PPO, HMO etc. – relevant for identifying negotiating party with payor. |

Morgan Lewis
COUNSELORS AT LAW

Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
July 22, 2004
Page 5

| Field | Medical | Pharmacy | Comments |
|---|---|---|---|
| COB (Coordination of Benefits) amounts | X | | For medical claims, should clarify coordination of benefits amounts from other payors. |
| Amount not covered | X | | Identifies portion of claim not covered.. |
| Days supply | | X | Can be used to identify mail-order transactions. |
| Patient age | X | X | If no direct information on Medicare coverage is available, this could be used as a proxy |

The chart above indicates which fields are likely to be found in pharmacy claims databases and which are likely to be found in medical claims databases. Our experts believe that it will be more efficient to produce medical claims information (relating to physician administered drugs) separately from pharmacy claims information. The chart also explains, in part, the reasons that we need these fields. The bottom line is that we need the claims data in order to track variations in reimbursement for drugs based on various patient characteristics, over time and in different geographic areas. In order to assure that the claims data reflects the true net price paid for drugs, moreover, it is important that we also receive the rebate information, if any, relating to the claims data your clients are producing.

To ease the burden of searching for and producing the requested claims data, we are willing to accept claims data relating to the list of sample drugs I sent to you by e-mail earlier this week. There are roughly half as many NDCs and J codes in that list as in the list I sent to you a couple of months ago.

I hope and expect that reducing the number of NDCs and J codes will significantly shorten the time necessary to produce the requested claims data. It has taken other similarly-sized third party payors, including other Blue Cross Blue Shield entities, less than a month to download and produce the claims data we requested (for all of the drugs at issue in the litigation). The requested data is critical to class certification issues that will be briefed beginning on September 3. In order to be useful, we must receive claims data from your clients by the middle of September at the latest.



Thomas V. Urmy, Jr., Esq.
Todd S. Heyman, Esq.
July 22, 2004
Page 6

### Depositions.

We are still trying to figure out the logistics of coordinating depositions taken in the *Lupron* litigation. It would help the process if you would provide me (a) the dates of any scheduled depositions of your clients in the *Lupron* litigation and (b) the transcripts of any depositions that have already been taken.

I look forward to your prompt response to the issues and questions outlined above.

Very truly yours,

J. Clayton Everett, Jr.

c:  Erik Haas, Esq.
    Adeel Mangi, Esq.