## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| )<br>)<br>In Re: PHARMACEUTICAL  )<br>INDUSTRY AVERAGE WHOLESALE  )<br>PRICE LITIGATION  )<br>)<br>)<br>)<br>THIS DOCUMENT RELATES TO:  )<br>(All Actions)  )<br>_____ ) | MDL No. 1456<br><br>Master File No. 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

### DECLARATION OF ANDREW D. SCHAU

I, Andrew D. Schau, declare as follows:

1.    I am a Member of Patterson Belknap Webb & Tyler LLP and represent Johnson & Johnson, Johnson & Johnson Health Care Systems Inc., Centocor Inc., Ortho Biotech Products L.P., Janssen Pharmaceutica L.P., Ortho Neutrogena Inc., Ortho McNeil Pharmaceutical Inc. and McNeil-PPC (collectively, the "J&J defendants") in this litigation.  I offer this declaration in support of The Johnson & Johnson Defendants' Motion To Determine The Sufficiency Of Plaintiffs' Answers And Objections To (1) Requests For Admissions And Interrogatories Concerning Remicade, And (2) Requests For Admissions And Interrogatories Concerning Procrit.

2.    On August 1, 2005 the J&J defendants served upon plaintiffs Requests for Admissions and Interrogatories Concerning Procrit.  A copy of those requests is attached at Exhibit 1.

3.    Also on August 1, 2005 the J&J defendants served upon plaintiffs Requests for Admissions and Interrogatories Concerning Remicade.  A copy of those requests is attached at Exhibit 2.

4.      On August 31, 2005 plaintiffs served written responses to both sets of requests. Copies of plaintiffs' responses are attached as Exhibits 3 and 4 hereto.

5.      In their responses, plaintiffs admitted only the launch dates for Procrit and Remicade.  Plaintiffs responded to all other requests for admissions and interrogatories with objections only or not at all.

I declare under penalty of perjury that the foregoing is true and correct.


                                    /s/ Andrew D. Schau

Executed on this 21st day of September 2005

# EXHIBIT 1



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | Civil Action No. 01-12257-PBS |
| LITIGATION ) | |
| ) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO ) | |
| ALL CLASS ACTIONS ) | |
| ) | |

## THE J&J DEFENDANTS' REQUESTS FOR ADMISSION
## AND INTERROGATORIES CONCERNING PROCRIT®

PLEASE TAKE NOTICE that pursuant to Rules 26, 33 and 36 of the Federal Rules of Civil Procedure, plaintiffs are required to serve upon the undersigned attorneys for Johnson & Johnson, Centocor, Inc., Janssen Pharmaceutica Products, L.P., Ortho Biotech Products, L.P., Ortho McNeil Pharmaceuticals, Inc., McNeil Consumer & Specialty Pharmaceuticals, Ortho Neutragena, and Johnson & Johnson Healthcare Systems, Inc., answers in writing and under oath of the following requests to admit and interrogatories. Answers to these requests for admission and interrogatories are due within 30 days after service thereof. Where an interrogatory calls for the identification of a written document or a statement of the substance of a written document, plaintiff may attach to their answers a copy of such document in lieu of describing or stating the substance thereof.

PLEASE TAKE FURTHER NOTICE that this is a continuing set of interrogatories and that plaintiffs are required to provide additional answers as dictated by discovery of information or change of position up and until trial.



## DEFINITIONS

1.      *Document.* The term "document" means any handwritten, printed, typed, photographed, phone or tape recorded or graphic matter, however otherwise produced or reproduced, computer data, computer diskettes, and computer hard drive memory; and "document" means, without limitation, all communications, contracts, agreements, reports, correspondence, telegrams, memoranda, summaries or records of conversations in person or by telephone, meetings or contract negotiations, diaries, records, books, letters, marginal notations, photographs, ledgers or other records, drawings, sketches, plans, notes, drafts, receipts, canceled checks and other documents, recordings, or writings of whatever nature and description.  As used herein, "document" shall include originals, all non-identical copies (whether different from the original because of handwritten notes or underlining or otherwise), and any translation of any document.

2.      *Identify* (With Respect to Persons).  When referring to a person, "identify" means to give, to the extent known, the person's full name and present or last known address. When referring to a natural person, additionally, the present or last known place of employment must, to the extent known, be given.  When referring to any business or legal entity (which includes, without limitation, corporations, partnerships, associations, d/b/a's, and enterprises), "identify" also means to give, to the extent known, the entity's full name, state and country of incorporation or formation and name of principal place of business, corporate parent, subsidiaries and affiliates.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

3.      *Identify* (With Respect to Documents).  When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

4.      *Describe.*  The term "describe" means to state, to the extent known, all facts, documents and witnesses that support your description.

5.      *And/Or.*  The terms "and," "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

6.      *Including.*  The term "including" means including but not limited to.

7.      *AMCC.*  AMCC means the Amended Master Consolidated Class Action Complaint.

8.      *Procrit®.*  Procrit® refers to the biological product sold by Ortho Biotech Products LLP, including each NDC for that product.  Procrit® has the same meaning in these requests for admission and interrogatories as it does in the AMCC.

9.      *Net acquisition cost.*  Net acquisition cost means the cost that a dispenser, such as a pharmacy, a hospital, or physician's office, pays to acquire a drug or biological product, net of any rebates or other price adjustments.



10.     *Net reimbursement cost.*  Net reimbursement cost means the cost incurred by a payor, such as a patient, insurer or the government (or any combination of payors), for a drug or biological product, net of any rebates or other price adjustments.

11.     *Spread.*  Spread means the difference, if any, between the net acquisition cost and the net reimbursement cost.

12.     *WAC.*  WAC means the Wholesale Acquisition Cost for a drug or biological product as published in any of the pharmaceutical industry compendia listed in paragraph 135 of the AMCC.

13.     *AWP.*  AWP means the Average Wholesale Price for a drug or biological product as published in any of the pharmaceutical industry compendia listed in paragraph 135 of the AMCC.

14.     *ASP.*  ASP means the Average Selling Price as defined in the declarations of Raymond S. Hartman.

15.     *Ortho Biotech* means Ortho Biotech Products L.L.P and its predecessors.

16.     Terms in the plural include the singular and terms in the singular include the plural.



**REQUEST TO ADMIT NO. 1:**  Admit that Ortho Biotech began selling

Procrit® in 1991.

**RESPONSE TO REQUEST TO ADMIT NO. 1:**

**INTERROGATORY NO. 1**:  If your response to Request to Admit No. 1

contains a denial, in whole or in part, describe the basis for your denial, and identify all

documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY 1**:

1131399v1



**REQUEST TO ADMIT NO. 2:**  Admit that from 1991 to the present, the published AWP for Procrit ® has been 120% of the published WAC for Procrit®, except that, starting in 2004 and continuing to date, the AWP for Procrit® published by FirstData Bank and Medi-Span has been 125% of the published WAC for Procrit®.

**RESPONSE TO REQUEST TO ADMIT NO. 2:**

**INTERROGATORY NO. 2:**  If your response to Request to Admit No. 2 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 2:**

1131399v1



**INTERROGATORY NO. 3**:  From 1991 to the present, state each published WAC and each published AWP for Procrit®, and the effective date of each change in Procrit®'s WAC and AWP.

**RESPONSE TO INTERROGATORY NO. 3:**



**INTERROGATORY NO. 4**:  State the ASP for Procrit® for each of the time intervals between the changes in Procrit ®'s WAC and AWP identified in response to Interrogatory No. 3.

**RESPONSE TO INTERROGATORY NO. 4**:

1131399v1



**INTERROGATORY NO. 5**:  State the average net reimbursement cost and the average net acquisition cost for Procrit® for each of the time intervals identified in response to Interrogatory No. 3.

**RESPONSE TO INTERROGATORY NO. 5**:

1131399v1



**REQUEST TO ADMIT NO. 3:**  Admit that the difference between the average net reimbursement cost and the average net acquisition cost for Procrit® is less than the difference between the AWP and the ASP for Procrit® for each of the time intervals identified in response tin Interrogatory No. 3.

**RESPONSE TO REQUEST TO ADMIT NO. 3:**

**INTERROGATORY NO. 6:**  If your response to Request to Admit No. 3 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 6:**



Respectfully submitted,

/s/ Andrew D. Schau
William F. Cavanaugh, Jr. (admitted *pro hac vice*)
Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel:  (212) 336-2000
Fax:  (212) 336-2222
Attorneys for the Johnson & Johnson Group

Dated:  August 1, 2005



## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2005 I caused a true and correct copy of the J&J Defendants' Requests for Admission and Interrogatories Concerning Procrit® to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/Andrew D. Schau
Andrew D. Schau

# EXHIBIT 2



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE ) | Civil Action No. 01-12257-PBS |
| LITIGATION ) | |
| ) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO ) | |
| ALL CLASS ACTIONS ) | |
| ) | |

## THE J&J DEFENDANTS' REQUESTS FOR ADMISSION
## AND INTERROGATORIES CONCERNING REMICADE®

PLEASE TAKE NOTICE that pursuant to Rules 26, 33 and 36 of the Federal

Rules of Civil Procedure, plaintiffs are required to serve upon the undersigned attorneys for

Johnson & Johnson, Centocor, Inc., Janssen Pharmaceutica Products, L.P., Ortho Biotech

Products, L.P., Ortho McNeil Pharmaceuticals, Inc., McNeil Consumer & Specialty

Pharmaceuticals, Ortho Neutragena, and Johnson & Johnson Healthcare Systems, Inc., answers

in writing and under oath of the following requests to admit and interrogatories. Answers to

these requests for admission and interrogatories are due within 30 days after service thereof.

Where an interrogatory calls for the identification of a written document or a statement of the

substance of a written document, plaintiff may attach to their answers a copy of such document

in lieu of describing or stating the substance thereof.

PLEASE TAKE FURTHER NOTICE that this is a continuing set of

interrogatories and that plaintiffs are required to provide additional answers as dictated by

discovery of information or change of position up and until trial.



## DEFINITIONS

1.  *Document.* The term "document" means any handwritten, printed, typed, photographed, phone or tape recorded or graphic matter, however otherwise produced or reproduced, computer data, computer diskettes, and computer hard drive memory; and "document" means, without limitation, all communications, contracts, agreements, reports, correspondence, telegrams, memoranda, summaries or records of conversations in person or by telephone, meetings or contract negotiations, diaries, records, books, letters, marginal notations, photographs, ledgers or other records, drawings, sketches, plans, notes, drafts, receipts, canceled checks and other documents, recordings, or writings of whatever nature and description. As used herein, "document" shall include originals, all non-identical copies (whether different from the original because of handwritten notes or underlining or otherwise), and any translation of any document.

2.  *Identify* (With Respect to Persons). When referring to a person, "identify" means to give, to the extent known, the person's full name and present or last known address. When referring to a natural person, additionally, the present or last known place of employment must, to the extent known, be given. When referring to any business or legal entity (which includes, without limitation, corporations, partnerships, associations, d/b/a's, and enterprises), "identify" also means to give, to the extent known, the entity's full name, state and country of incorporation or formation and name of principal place of business, corporate parent, subsidiaries and affiliates. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

3.  *Identify* (With Respect to Documents). When referring to documents, "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

4.  *Describe.* The term "describe" means to state, to the extent known, all facts, documents and witnesses that support your description.

5.  *And/Or.* The terms "and," "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

6.  *Including.* The term "including" means including but not limited to.

7.  *AMCC.* AMCC means the Amended Master Consolidated Class Action Complaint.

8.  *Remicade®.* Remicade refers to the biological product sold by Centocor, Inc., including each NDC for that product. Remicade has the same meaning in these requests for admission and interrogatories as it does in the AMCC.

9.  *Net acquisition cost.* Net acquisition cost means the cost that a dispenser, such as a pharmacy, a hospital, or physician's office, pays to acquire a drug or biological product net of any rebates or other price adjustments.

-2-



10.     *Net reimbursement cost.*  Net reimbursement cost means the cost incurred by a payor, such as a patient, insurer or the government (or any combination of payors), for a drug or biological product, net of any rebates or other price adjustments.

11.     *Spread.*  Spread means the difference, if any, between the net acquisition cost and the net reimbursement cost.

12.     *WAC.*  WAC means the Wholesale Acquisition Cost for a drug or biological product as published in any of the pharmaceutical industry compendia listed in paragraph 135 of the AMCC.

13.     *AWP.*  AWP means the Average Wholesale Price for a drug or biological product as published in any of the pharmaceutical industry compendia listed in paragraph 135 of the AMCC.

14.     *ASP.*  ASP means the Average Selling Price as defined in the declarations of Raymond S. Hartman.

15.     Terms in the plural include the singular and terms in the singular include the plural.



**REQUEST TO ADMIT NO. 1:**  Admit that Centocor began selling Remicade®
in 1998.

**RESPONSE TO REQUEST TO ADMIT NO. 1:**

**INTERROGATORY NO. 1:**  If your response to Request to Admit No. 1
contains a denial, in whole or in part, describe the basis for your denial, and identify all
documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY 1:**

1131261v1



**REQUEST TO ADMIT NO. 2:**  Admit that from 1998 to the present, the published AWP for Remicade® has been 130% of the published WAC for Remicade®.

**RESPONSE TO REQUEST TO ADMIT NO. 2:**

**INTERROGATORY NO. 2**:  If your response to Request to Admit No. 2 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 2:**

1131261v1



**REQUEST TO ADMIT NO. 3:**  Admit that from 1998 to the present, Centocor, Inc. has not paid rebates on Remicade® to physicians who purchase or dispense Remicade®.

**RESPONSE TO REQUEST TO ADMIT NO. 3:**

**INTERROGATORY NO. 3:**  If your response to Request to Admit No. 3 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 3:**



**REQUEST TO ADMIT NO. 4:** Admit that from 1998 to the present, Centocor, Inc. has not paid rebates on Remicade® to pharmacy benefit managers.

**RESPONSE TO REQUEST TO ADMIT NO. 4:**

**INTERROGATORY NO. 4:** If your response to Request to Admit No. 4 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 4:**

1131261v1



**REQUEST TO ADMIT NO. 5:**  Admit that from 1998 to the present, the only rebates that Centocor, Inc. has paid on Remicade® have been rebates paid to persons or entities that reimburse for Remicade®, such as Health Maintenance Organizations and Preferred Provider Organizations.

**RESPONSE TO REQUEST TO ADMIT NO. 5:**

**INTERROGATORY NO. 5:**  If your response to Request to Admit No. 5 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 5:**

1131261v1



**REQUEST TO ADMIT NO. 6**:  Admit that from 1998 to the present, the rebates that Centocor, Inc. has paid on Remicade® have reduced the net reimbursement cost of Remicade® for those payors that have received rebates.

**RESPONSE TO REQUEST TO ADMIT NO. 6**:

**INTERROGATORY NO. 6**:  If your response to Request to Admit No. 6 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 6**:

1131261v1



**REQUEST TO ADMIT NO. 7**:  Admit that from 1998 to the present, the rebates that Centocor, Inc. has paid on Remicade® have reduced the spread.

**RESPONSE TO REQUEST TO ADMIT NO. 7**:

**INTERROGATORY NO. 7**:  If your response to Request to Admit No. 7 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 7**:

1131261v1



**REQUEST TO ADMIT NO. 8**:  Admit that from 1998 to the present, the spread on Remicade® has not exceeded the difference between its published WAC and its published AWP for all persons or entities that reimbursed Remicade at or below its AWP.

**RESPONSE TO REQUEST TO ADMIT NO. 8**:

**INTERROGATORY NO. 8**:  If your response to Request to Admit No. 8 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 8**:

-11-



**INTERROGATORY NO. 9**:  From 1998 to the present, state each published WAC and each published AWP for Remicade®, and the effective date of each change in Remicade®'s WAC and AWP.

**RESPONSE TO INTERROGATORY NO. 9:**



**INTERROGATORY NO. 10**:  State the ASP for Remicade® for each of the time intervals between the changes in Remicade®'s WAC and AWP identified in response to Interrogatory No. 9.

**RESPONSE TO INTERROGATORY NO. 10**:



**INTERROGATORY NO. 11**:  State the average net reimbursement cost and the average net acquisition cost for Remicade® for each of the time intervals between the changes in Remicade®'s WAC and AWP identified in response tin Interrogatory No. 9.

**RESPONSE TO INTERROGATORY NO. 11:**



Respectfully submitted,


/s/ Andrew D. Schau
William F. Cavanaugh, Jr. (admitted *pro hac vice*)
Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel:  (212) 336-2000
Fax:  (212) 336-2222
Attorneys for the Johnson & Johnson Group


Dated:  August 1, 2005

-15-



## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2005 I caused a true and correct copy of the J&J Defendants' Requests for Admission and Interrogatories Concerning Remicade® to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/Andrew D. Schau
Andrew D. Schau

# EXHIBIT 3



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> _____ ) <br> ) <br> THIS DOCUMENT RELATES TO ) <br> ALL CLASS ACTIONS ) <br> _____ ) | MDL NO. 1456 <br> Civil Action No. 01-12257-PBS <br> <br> Hon. Patti B. Saris |

### PLAINTIFFS' RESPONSE TO THE J&J DEFENDANTS' REQUESTS FOR
### ADMISSION AND INTERROGATORIES CONCERNING PROCRIT®

Plaintiffs hereby respond to the Johnson & Johnson Defendants' Requests for Admission

("RFAs") and Interrogatories as follows:

### OBJECTIONS

1.      Plaintiffs object to the J&J Defendants' "definitions" to the extent they are vague,

confusing and require the Plaintiffs to perform calculations or analyses based on formulas

created by the J&J Defendants.


2.      Plaintiffs object to the J&J Defendants' "definitions" to the extent they create obligations

broader than what is required by the Federal Rules of Civil Procedure.


3.      Plaintiffs object to the J&J Defendants' Requests and Interrogatories to the extent they

seek information that is the subject of expert analysis and opinion.  Plaintiffs' Expert Report on

liability is not required until October 1, 2005, pursuant to CMO 13.


4.      Plaintiffs object to the J&J Defendants' Interrogatories to the extent they seek the fact

basis for any denial, when such denial is based on the absence of facts or information.



**REQUEST TO ADMIT NO. 1:**  Admit that Ortho Biotech began selling Procrit® in 1991.

       **RESPONSE TO REQUEST TO ADMIT NO. 1:**

Admit.

       **INTERROGATORY NO. 1:**  If your response to Request to Admit No. 1 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

       **RESPONSE TO INTERROGATORY 1:**



**REQUEST TO ADMIT NO. 2:**  Admit that from 1991 to the present, the published AWP for Procrit® has been 120% of the published WAC for Procrit®, except that starting in 2004 and continuing to date, the AWP for Procrit® published by First Data Bank and Medi-Span has been 125% of the published WAC for Procrit®.

**RESPONSE TO REQUEST TO ADMIT NO. 2:**

Plaintiffs object to this contention interrogatory which would require the sorting of various publishers' databases and WAC information.  If defendant supplies data that backs up this RFA, plaintiffs will respond.

**INTERROGATORY NO. 2**:  If your response to Request to Admit No. 2 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 2:**



**INTERROGATORY NO. 3**:  From 1991 to the present, state each published WAC and each published AWP for Procrit®, and the effective date of each change in Procrit®'s WAC and AWP.

**RESPONSE TO INTERROGATORY NO. 3**:

Objection.  The information sought by this Interrogatory is within the J&J Defendants' possession.  If J&J wishes plaintiffs to consider such a request, J&J should include the exact data that would form the basis for such an RFA.



**INTERROGATORY NO. 4**:  State the ASP for Procrit® for each of the time intervals between the changes in Procrit®'s WAC and AWP identified in response to Interrogatory No. 3.

**RESPONSE TO INTERROGATORY NO. 4**:

Objection.  The plaintiffs sought to obtain ASP information from the J&J Defendants, and other defendants in this litigation, but all such requests were refused.  Thus plaintiffs do not have the requested information, but it is in the defendants' possession.  To the extent ASP is defined to mean any ASP figure used by Plaintiffs' expert Raymond S. Hartman, plaintiffs object to this Interrogatory as being premature.  CMO 13 requires Dr. Hartman to provide an expert report by October 1, 2005.  See also response to Interrogatory No. 3.



**INTERROGATORY NO. 5**:  State the average net reimbursement cost and the average net acquisition cost for Procrit® for each of the time intervals identified in response to Interrogatory No. 3.

**RESPONSE TO INTERROGATORY NO. 5**:

Objection.  This Interrogatory seeks information which is not relevant, nor calculated to lead to the discovery of admissible evidence.  Also, plaintiffs have objected to Interrogatory No. 3, which forms the basis for this Interrogatory.  Further, plaintiffs do not yet have all data necessary to calculate, and have not calculated any form of "average net reimbursement cost" or "average net acquisition cost" for Procrit.  To the extent this Interrogatory requires plaintiffs to perform calculations based on a formula created by the defendants, plaintiffs also object.  See also response to Interrogatory No. 3.



E-SERVED
08/31/05
03:46 PM ET
AWP-MDL No. 1456

**REQUEST TO ADMIT NO. 3:**  Admit that the difference between the average net reimbursement cost and the average net acquisition cost for Procrit® is less than the difference between the AWP and the ASP for Procrit® for each of the time intervals identified in response to Interrogatory No. 3.

**RESPONSE TO REQUEST TO ADMIT NO. 3:**

Plaintiffs object to this contention interrogatory that seeks information which is not relevant, nor calculated to lead to the discovery of admissible evidence.  Also, plaintiffs have objected to Interrogatory No. 3, which forms the basis for this Request.  Further, plaintiffs do not yet have all data necessary to calculate, and have not calculated any form of "average net reimbursement cost" or "average net acquisition cost" for Procrit.  To the extent this



Interrogatory requires plaintiffs to perform calculations based on a formula created by the

defendants, plaintiffs also object.  See also response to Interrogatory No. 3 and Interrogatory No.

4.

     **INTERROGATORY NO. 6**:

     If your response to Request to Admit No. 3 contains a denial, in whole or in part, describe

the basis for your denial, and identify all documents and testimony that you rely on to support

your denial.

DATED:  August 31, 2005

By    **/s/ Steve W. Berman**
     Thomas M. Sobol (BBO#471770)
     Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286



Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR
PLAINTIFFS**



## CERTIFICATE OF SERVICE

I, Allan M. Hoffman, hereby certify that on August 31, 2005, I caused a true and correct copy of Plaintiffs' Response to J&J Defendants' Requests for Admission and Interrogatories Concerning Procrit® to be served on all counsel of record by electronic service through Verilaw, pursuant to Case Management Order No. 2.

/s/ Allan M. Hoffman
Allan M. Hoffman

# EXHIBIT 4



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE ) | MDL NO. 1456 |
| LITIGATION ) | Civil Action No. 01-12257-PBS |
| ) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO ) | |
| ALL CLASS ACTIONS ) | |
| ) | |

### PLAINTIFFS' RESPONSE TO THE J&J DEFENDANTS' REQUESTS FOR ADMISSION AND INTERROGATORIES CONCERNING REMICADE®

Plaintiffs hereby respond to the Johnson & Johnson Defendants' Requests for Admission and Interrogatories as follows.

### OBJECTIONS

1.     Plaintiffs object to the J&J Defendants' "definitions" to the extent they are vague, confusing and require the Plaintiffs to perform calculations or analyses based on formulas created by the J&J Defendants.

2.     Plaintiffs object to the J&J Defendants' "definitions" to the extent they create obligations broader than what is required by the Federal Rules of Civil Procedure.

3.     Plaintiffs object to the J&J Defendants' Requests and Interrogatories to the extent they seek information which is the subject of expert analysis and opinion.  Plaintiffs' Expert Report on liability is not required until October 1, 2005, pursuant to CMO 13.

4.     Plaintiffs object to the J&J Defendants' Interrogatories to the extent they seek the fact basis for any denial, when such denial is based on the absence of facts or information.



**REQUEST TO ADMIT NO. 1**:  Admit that Centocor began selling Remicade®
in 1998.

**RESPONSE TO REQUEST TO ADMIT NO. 1**:

Admit.

**INTERROGATORY NO. 1**:  If your response to Request to Admit No. 1
contains a denial, in whole or in part, describe the basis for your denial, and identify all
documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY 1**:

Not Applicable.

1131261v1



**REQUEST TO ADMIT NO. 2:** Admit that from 1998 to the present, the published AWP for Remicade® has been 130% of the published WAC for Remicade®.

**RESPONSE TO REQUEST TO ADMIT NO. 2:**

Plaintiffs object to this contention interrogatory which would require the sorting of various publishers' databases and WAC information. If defendant supplies data that backs up this RFA, plaintiffs will respond.

**INTERROGATORY NO. 2:** If your response to Request to Admit No. 2 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs object to this contention interrogatory which would require the sorting of various publishers' databases and WAC information. If defendant supplies data that backs up this RFA, plaintiffs will respond.

-3-



**REQUEST TO ADMIT NO. 3:** Admit that from 1998 to the present, Centocor, Inc. has not paid rebates on Remicade® to physicians who purchase or dispense Remicade®.

**RESPONSE TO REQUEST TO ADMIT NO. 3:**

Objection. The term "rebates" is vague, ambiguous and undefined. Further, plaintiffs, after reasonable investigation, are unable to determine the exact amount of all payments made by Centocor to physicians, which could include "rebates".

**INTERROGATORY NO. 3:** If your response to Request to Admit No. 3 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection. Plaintiffs object to the term "rebates" as being vague and ambiguous. Further, plaintiffs, after reasonable investigation, are unable to determine the exact amount of all payments made by Centocor to physicians, which could include "rebates".

1131261v1



**REQUEST TO ADMIT NO. 4:**  Admit that from 1998 to the present, Centocor, Inc. has not paid rebates on Remicade® to pharmacy benefit managers.

**RESPONSE TO REQUEST TO ADMIT NO. 4:**

Objection.  The term "rebates" is vague, ambiguous and undefined.  Further, plaintiffs, after reasonable investigation, are unable to determine the amount of all payments, if any, made by Centocor to pharmacy benefit managers, which could include "rebates".

**INTERROGATORY NO. 4:**  If your response to Request to Admit No. 4 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object to the term "rebates" as being vague and ambiguous. Further, plaintiffs, after reasonable investigation, are unable to determine the amount of all payments, if any, made by Centocor to pharmacy benefit managers, which could include "rebates".

1131261v1



**REQUEST TO ADMIT NO. 5:** Admit that from 1998 to the present, the only rebates that Centocor, Inc. has paid on Remicade® have been rebates paid to persons or entities that reimburse for Remicade®, such as Health Maintenance Organizations and Preferred Provider Organizations.

### RESPONSE TO REQUEST TO ADMIT NO. 5:

Objection. The term "rebates" is vague, ambiguous and undefined. Plaintiffs do admit that Centocor has paid "rebates" to Health Maintenance Organizations and Preferred Provider Organizations. Plaintiffs, after reasonable investigation, are unable to determine whether the amount of all payments, if any, made by Centocor to any other entities, which could include "rebates".

**INTERROGATORY NO. 5:** If your response to Request to Admit No. 5 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

### RESPONSE TO INTERROGATORY NO. 5:

Plaintiffs object to the term "rebates" as being vague and ambiguous. Plaintiffs, after reasonable investigation, are unable to determine whether the amount of all payments, if any, made by Centocor to any other entities, which could include "rebates".

1131261v1



**REQUEST TO ADMIT NO. 6**:  Admit that from 1998 to the present, the rebates that Centocor, Inc. has paid on Remicade® have reduced the net reimbursement cost of Remicade® for those payors that have received rebates.

**RESPONSE TO REQUEST TO ADMIT NO. 6**:

Objection. The terms "rebates" and "net reimbursement costs" are vague and ambiguous. Further, the Request is objectionable to the extent it requires plaintiffs to analyze a formula created by the defendants.

**INTERROGATORY NO. 6**:  If your response to Request to Admit No. 6 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 6**:

Objection. The terms "rebates" and "net reimbursement costs" are vague and ambiguous. Furhter, this Interrogatory is premature, in that it seeks information which is the subject of expert reports and analysis.  Plaintiffs do not know the identities of all persons who may have received "rebates", and are thus unable to determine what portion of any payments by Centocor were ultimately received by payors.

1131261v1



**REQUEST TO ADMIT NO. 7**:  Admit that from 1998 to the present, the rebates that Centocor, Inc. has paid on Remicade® have reduced the spread.

**RESPONSE TO REQUEST TO ADMIT NO. 7**:

Objection. The terms "rebates" and  "spread" are vague and ambiguous.  Further, the Request is objectionable as a burdensome contention interrogatory that would require plaintiffs to research sources of documents in the possession of J&J, when J&J could just as easily collected this information and presented the basis for the RFA.

**INTERROGATORY NO. 7**:  If your response to Request to Admit No. 7 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 7**:

Objection. The terms "rebates" and  "spread" are vague and ambiguous. Further, this Interrogatory is premature, in that it seeks information which is the subject of expert reports and analysis.  Plaintiffs do not know the identities of all persons who may have received "rebates", and are thus unable to determine what portion of any payments by Centocor were ultimately received by payors.

1131261v1



**REQUEST TO ADMIT NO. 8**:  Admit that from 1998 to the present, the spread on Remicade® has not exceeded the difference between its published WAC and its published AWP for all persons or entities that reimbursed Remicade at or below its AWP.

**RESPONSE TO REQUEST TO ADMIT NO. 8:**

Objection.  This Request is vague and confusing.  Plaintiffs are unable to understand what they are being asked to admit or deny.  See also response to No. 7.

**INTERROGATORY NO. 8:**  If your response to Request to Admit No. 8 contains a denial, in whole or in part, describe the basis for your denial, and identify all documents and testimony that you rely on to support your denial.

**RESPONSE TO INTERROGATORY NO. 8:**

Objection, this Interrogatory and the corresponding Request are both vague and confusing.

1131261v1



**INTERROGATORY NO. 9**: From 1998 to the present, state each published WAC and each published AWP for Remicade®, and the effective date of each change in Remicade®'s WAC and AWP.

**RESPONSE TO INTERROGATORY NO. 9**:

Objection, the information sought by this Interrogatory is within the J&J Defendants' possession.  If J&J wishes plaintiffs to consider such request, J&J should include the exact data that would form the basis for such an RFA.



**INTERROGATORY NO. 10**:  State the ASP for Remicade® for each of the time intervals between the changes in Remicade®'s WAC and AWP identified in response to Interrogatory No. 9.

### RESPONSE TO INTERROGATORY NO. 10:

Objection.  The plaintiffs sought to obtain ASP information from the J&J Defendants, and other defendants in this litigation, but all such requests were refused.  Thus plaintiffs do not have the requested information, but it is in the defendants' possession.  To the extent ASP is defined to mean any ASP figure used by Plaintiffs' expert Raymond S. Hartman, plaintiffs object to this Interrogatory as being premature.  CMO 13 requires Dr. Hartman to provide an expert report by October 1, 2005.  See also response to No.9.

1131261v1



**INTERROGATORY NO. 11**: State the average net reimbursement cost and the average net acquisition cost for Remicade® for each of the time intervals between the changes in Remicade®'s WAC and AWP identified in response to Interrogatory No. 9.

**RESPONSE TO INTERROGATORY NO. 11**:

Objection. This Interrogatory seeks information which is not relevant, nor calculated to lead to the discovery of admissible evidence. Also, plaintiffs have objected to Interrogatory No. 9, which forms the basis for this Interrogatory. Further, plaintiffs do not yet have all data necessary to calculate, and have not calculated any form of "average net reimbursement cost" or "average net acquisition cost" for Remicade. To the extent this Interrogatory requires plaintiffs to perform calculations based on a formula created by the Defendants, Plaintiffs also object. See also response to No.9.

Dated:  August 31, 2005

By     /s/ Steve W. Berman
     Thomas M. Sobol (BBO#471770)
     Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

-12-



E-SERVED
08/31/05
04:37 PM ET
RWP-MDL No. 1456

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19130
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, Il 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR**
**PLAINTIFFS**



## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2005 I caused a true and correct copy of the Plaintiffs' Response to J&J Defendants' Requests for Admission and Interrogatories Concerning Remicade® to be served on all counsel of record by electronic service through Verilaw, pursuant to Case Management Order No. 2.

/s/John Macoretta
John Macoretta

1131261v1