UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *IN RE* PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 <br><br> Civil Action No. 01-12257-PBS <br><br> Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Chief Magistrate Judge Marianne B. Bowler |

**NON-PARTIES AND ABSENT CLASS MEMBERS BLUE CROSS AND BLUE SHIELD OF VERMONT, CAREFIRST BLUE CROSS BLUE SHIELD, HAWAII MEDICAL SERVICE ASSOCIATION, EXCELLUS BLUE CROSS BLUE SHIELD, MUTUAL OF OMAHA INSURANCE COMPANY AND BLUE CROSS BLUE CROSS OF MASSACHUSETTS' MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS <u>AND FOR A PROTECTIVE ORDER</u>**

INTRODUCTION

Non-parties and absent class members Blue Cross and Blue Shield of Vermont, CareFirst Blue Cross Blue Shield, Hawaii Medical Service Association, Excellus Blue Cross Blue Shield, Mutual of Omaha Insurance Company and Blue Cross and Blue Shield of Massachusetts (collectively, the "Third Party Health Plans"), by and through their attorneys Robins, Kaplan, Miller & Ciresi L.L.P. respectfully move this Court pursuant to Fed. R. Civ. P. 45(c) to quash subpoenas issued by defendants in this massive class action seeking documents and depositions from the above "Third Party Health Plans." These subpoenas are collectively attached as Exhibit A.

## SUMMARY OF ARGUMENT

Defendants have somehow contorted this Court's allowance for the discovery of "a few" absent class members into permission to conduct a seemingly never-ending series of depositions and ever-growing accumulation of documents that distort the limits this Court placed on discovery of absent class members and non-parties. Defendants ignore the Court's limitations, despite the completion of class certification briefing (the ostensible original purpose for obtaining absent class member discovery).[1] Defendants have largely prevailed on their class certification arguments, and yet still seek discovery from non-class members and non-parties. Absent class discovery has included health benefit plans from across the country - in the northeast (Empire BlueCross BlueShield, Harvard Pilgrim HealthCare, Horizon, UPMC Health Plan), south (Blue Cross & Blue Shield of Mississippi, Coventry Healthcare), midwest (BlueCross BlueShield of Illinois, Wellmark), west (BlueCross BlueShield Wyoming, Intermountain Healthcare) and west coast (HealthNet, Kaiser), and includes large national health benefit plans (Aetna, Anthem, Humana, Cigna) and small health benefit plans (BlueCross BlueShield of Montana) and everything in between. Not satisfied with the massive discovery already taken, Defendants want more. The subpoenas issued upon Third Party Health Benefit Plans should be quashed and a protective order entered.

As more fully explained below, given the Court's Order denying class certification of only a very limited class of Massachusetts third party payers, Defendants cannot meet the high burden they possess to undertake massive discovery from non-Massachusetts-based Third Party Health

---

[1] Excluding the depositions of actual class representatives and experts, Defendants have conducted over <u>forty</u> third-party depositions of everyone from pharmaceutical benefit management companies to consultants to hospitals to health benefit plans and presumably received documents and information from even more.

Plans. This Court's class certification Order radically altered the legal landscape that existed when Defendants issued their subpoenas. Accordingly, the subpoenas should be quashed, and a protective order entered.

Moreover, discovery closed on August 31, 2005. Given that briefing on class issues are complete, there is no justification for burdening additional absent class members. Even defendant AstraZeneca, has complained to the Court that the class Plaintiffs are improperly seeking to extend discovery beyond the August 31, 2005 deadline.[2] If discovery is not proper as to defendants' production, then it must be improper as against absent class members and non-parties. Defendants have had abundant discovery, and do not have justification to obtain more.

## BACKGROUND

### 1. Defendants obtain limited permission from the Court to conduct discovery upon "a few" absent class members.

On April 26, 2004, this Court stated that it was normally "not sympathetic" to discovery upon absent class members, but felt that it *may* be helpful to find out if the class representatives are "typical of other plans." The court authorized discovery of "a few" absent class members, and Defendants promised to conduct only enough discovery so that they can present a "sample." The issue presented to the Court and the purported motivation for discovery upon absent class members was to establish the types of plans that exist for class certification purposes.

### 2. Defendants serve subpoenas upon Third Party Health Plans.

That summer and fall, Defendants began issuing wave upon wave of subpoenas upon third-parties and absent class members across the country for information and depositions. The

---

[2] See AstraZeneca's Memorandum of Law that opposes Plaintiffs' motion to compel the deposition of David Brennan dated September 15, 2005.

chart below illustrates the vastness of the discovery of putative absent class members, including Blue Cross Blue Shield plans and national commercial insurers. The following chart represents <u>some</u> of the third party health plans in this country subpoenaed, representing well over half of all privately insured patients in the United States:

| Absent Class Member | Estimated Covered Lives |
|---|---|
| Kaiser | 8.2 million people |
| Coventry Healthcare | 2.5 million |
| UPMC Health Plan | .4 million |
| Intermountain Healthcare | .45 million |
| Blue Cross Blue Shield of Illinois | 6.5 million |
| Harvard Pilgrim Healthcare | .785 million |
| Beacon Vista | .330 million |
| Horizon Blue Cross Blue Shield | 3.1 million |
| Three Rivers Health Plans | .25 million |
| Blue Cross Blue Shield of Montana | .24 million |
| Independent Health | .375 million |
| Wellmark Blue Cross Blue Shield | 1.8 million |
| Empire Blue Cross Blue Shield | 4.8 million |
| Blue Cross Blue Shield of Wyoming | .1 million |
| Health Net | 6.5 million |
| Anthem | 28 million |
| Aetna | 14.435 million |
| Humana | 7 million |
| Blue Cross Blue Shield of Mississippi | 1 million |
| Anthem Blue Cross Blue Shield Virginia | 2 million |
| Anthem Blue Cross Blue Shield Ohio | 2 million |
| Anthem, Inc. | 9 million |
| CIGNA | 20 million |
| Arkansas Blue Cross Blue Shield | 1 million |
| Blue Cross Blue Shield Association | 4 million |
| United Health Group | 20 million |
| Blue Cross Blue Shield of Alabama | 1 million |
| Blue Cross Blue Shield of Florida | 4 million |
| Blue Cross Blue Shield of Kansas | .5 million |
| Blue Cross Blue Shield of Michigan | 4 million |
| Blue Cross Blue Shield of Nebraska | 1 million |
| Blue Cross Blue Shield of North Dakota | .3 million |
| Blue Cross Blue Shield of South Carolina | 1 million |

| Blue Cross Blue Shield of Tennessee | 3 million |
| Blue Shield of California | 2 million |
| Highmark Blue Cross Blue Shield | 4 million |
| Independence Blue Cross | 2 million |
| Pacificare Health Sytems | 4 million |
| Premera Blue Cross | 2 million |
| Regence Blue Cross Blue Shield | 4 million |

Upon receipt of these subpoenas, the Third Party Health Plans sent written objections to Defendants pursuant to Fed. R. Civ. P. 45(c)(2)(B) and agreed to attempt to narrow the scope of the subpoenas. As is the usual procedure with Rule 45 subpoenas, discussions ensued regarding objections and scope, including a proposal to "avoid duplication of other information that has been produced by the parties, health care experts, and other organizations." Defendants position then, as it is today, is that Defendants are in need of "industry knowledge" documents and information, that is, what did the industry know, and when did it know it, regarding any pricing spread. Subsequent to these discussions, Defendants lost interest in their discovery demands. Given the number of third party health plans that had apparently already produced documents and deponents, it was assumed Defendants had obtained what they needed to challenge class certification.

### 3. Six Months Passed before Defendants finally responded to the Third-Party Health Plan's offer to produce certain documents.

For over six months, Defendants did not make any contact with the Third Party Health Plans. All of the class certification briefing was submitted, and it appeared as though Defendants did not, after all, really need any of the information purportedly in the possession of the Third Party Health Plans.

Surprisingly, on June 1, 2005, Defendants renewed their demands for information and

discovery. The information now sought purportedly focused on "injected or infused drugs," but the requests continued to be extremely broad, including requests for extensive medical claims data. Defendants also demanded that the Third Party Health Plans immediately identify persons who would be deposed.

Additional discussions ensued, thereafter in June, and through August, 2005. After the Court's August 16, 2005 class certification order, in light of its outcome that radically changed the legal landscape on the make-up of the class, the Third Party Health Plans requested that Defendants withdraw their subpoenas. Defendants refused.

In a follow-up meet and confer discussion on September 20, 2005, counsel for the Third Party Health Plans conferred with Defendants' counsel and again requested that given the number of third party payers that have previously provided discovery, and the class certification decision, the subpoenas should be withdrawn. The Third Party Health Plans conveyed that they would agree that the withdrawal of the subpoenas would be without prejudice as to re-issuance (and without prejudice as to any objections). If there was to be a re-issuance, counsel would agree to accept service at that time. Finally, it was conveyed that in the event Defendants would not agree to the Third Party Health Plans' reasonable approach, a Motion to Quash and for Protective Order would be filed to obtain the Court's guidance. See September 22, 2005 Letter from counsel to the Third Party Health Plans to Defendants' counsel, attached as Exhibit B.

**ARGUMENT**

Defendants' ongoing pursuit of data and information from non-class members, non-parties or absent class members must stop. Third Party Health Plans seek a court order to protect them from undue burden and to quash Defendants' subpoenas. Ordinarily, the burden for

showing good cause for a protective order or to quash a subpoena is on the moving party, but the burden shifts when the discovery is directed toward absent class members. *See Clark v. Universal Builders*, 501 F. 2d 324, 340-341(7th Cir. 1974) (holding that party seeking the deposition or responses to interrogatories served upon absent class members "has the burden of showing necessity and absence of any motive to take undue advantage of the class members."); *In re Worlds of Wonder Securities Litig.*, No. C-87-5491, 1992 WL 330411 *2 (N.D. Cal. 1992) (the burden shifts to defendants to justify discovery of absent class members) (citing 3 *Newberg on Class Actions § 16.03*, at 278 & n. 57 (2d ed. 1985)).

Discovery upon absent class members is always "disfavored," and will not be allowed unless the defendant provides a "strong showing of necessity." *On The House Syndication, Inv. v. Federal Express Corp.*, 203 F.R.D. 452, 455 (S.D. Cal. 2001); *In re Worlds of Wonder Securities Litig.*, 1992 WL 330411 at *2.

Specifically, the majority of courts have held that the party seeking discovery of absent class members must establish: (1) the information requested is relevant to the decision of common questions, (2) the discovery requests are tendered in good faith and not unduly burdensome, and (3) the information is not available from the class representative parties. *See Transamerican Refining Corp.v. Dravo*, 139 F.R.D. 619, 621 (S.C. Tex. 1991); *Clark*, 501 F. 2d at 340-341. A fourth requirement may also be that the discovery sought is not already known. *Clark*, 501 F. 2d at 341 n24. Despite repeated requests for information that may satisfy these requirements, Defendants have not responded with any substantive information regarding their need for the information, the relevance of the information, how the information will be used, or why it is not duplicative of the massive amount of information already obtained. Since

Defendants cannot meet their burden, the Third Party Health Plan's motion should be granted pursuant to the Fed. R. Civ. P. 26(c).

### A. Given the Class Certification Ruling, The Information Sought By Defendants Is Not Relevant To The Decision of Common Questions.

The discovery sought by Defendants is improper and should not be permitted. While, under some circumstances, discovery upon absent class members may be allowed on *common* issues, discovery based upon individual issues or claims is prohibited. *Clark*, 501 F. 2d at 340-341. In this case, the class certification issues have already been briefed and decided. This renders moot many, if not all, of the original justifications presented by Defendants for discovery upon absent class members (particularly those absent class members that are not now members of the class). It is no longer necessary to determine if the class representatives satisfy the commonality and typicality requirements of Rule 23, since such discovery has been completed, the issues briefed, and decision made on class certification.

### B.     The Discovery Requests Are Unduly Burdensome.

Defendants have failed to meet their burden to establish that the subpoenas served upon Third Party Health Plans are not unduly burdensome, particularly where, as here, the proferred reason for issuance of the subpoenas was to obtain information to brief class certification. Whether a subpoena imposes upon a witness an "undue burden" depends upon such factors as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)(citing *United States v. International Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

In this case, it is hard to imagine a subpoena that is much broader than the one that was issued to Third Party Health Plans. Even the so-called narrowed list of document and data requests, including depositions, is extremely broad. Defendants seek all documents and information relating or referring to over 100 drugs, and any other document that refers to the pricing and payment of drug claims, rebates, as well as the individual claims data itself. There seems to be little point in having class representatives and class actions, if Defendants are allowed to continue such discovery without articulating any specific purpose or rationale. One can only assume that Defendants have no purpose, do not know how the information sought will be introduced at trial, and have taken no reasonable steps to ensure that their discovery is properly limited in scope. Defendants have not satisfied their burden; therefore, Defendants' subpoenas upon absent class members and non-parties should be quashed and a protective order issued.

### C. The Information Is Available From The Class Representative Parties or Is Already Known To The Defendants from Prior Abundant Discovery.

There is no reason for Defendants to conduct additional discovery upon absent class members because the information underlying their arguments is available from the class representatives. Information sought from absent class members should not be information available from the class representative parties or otherwise known to the defendant. *See Dravo*, 139 F.R.D. at 621; *Clark*, 501 F. 2d at 340-341. Although it is unclear what Defendants are specifically looking for, it is clear that the information sought can be or has already been obtained by the Defendants either from the class representatives or from the considerable discovery taken of other absent class members and non-parties, including third party depositions of health benefit plans, hospitals, insurers, consultants, and pharmaceutical benefit managers, as

well as the on-going discovery of class representatives and experts, it is difficult to imagine what is yet to be learned that has not already been learned.

It is sometimes a common defense tactic to use discovery upon absent class members to later preclude those persons from participating in a favorable judgment or settlement, and this alone is a reason to deny such discovery. Defendants in class actions often issue discovery upon absent class members that include burdensome discovery requests, and when the absent class members object, the defendant files motions to have those class members dismissed from the case under Fed. R. of Civ. P. 37 or otherwise use the information obtained to reduce the size of the class. This is also a "back door" way to create an improper "opt in" scheme. *See also On the House Syndication,* 203 F.R.D. at 456 ("[A] defendant who subjects class members to interrogatories requires those members to take some affirmative action to remain in the class....Thus, allowing defendants to subject absent class members to discovery may defeat the purpose of certifying the class in the first place.").

Defendants here appear to be using these very tactics to discourage non-parties or absent class members to pursue claims. With such extensive discovery of absent class members, one can only wonder if Defendants in this case are conducting such discovery to somehow preclude a significant portion of the market from participating in a later judgment or settlement. For example, in lieu of preparing for and participating in lengthy depositions, Defendants offered in a letter dated November 11, 2004 (attached hereto as Exhibit C) to forego the depositions if, among other things, Third Party Health Plans admitted that liability and damages did not exist.

By offering to waive a costly and disruptive deposition of an absent class member or non-party, Defendants were in a position to either get information that could be used to undermine

the class representatives' case or, at the very least, obtain information that could preclude absent class members or non-parties like the Third Party health Plans from asserting opt-out claims or recovering in the class in the future. This type of coercion placed on absent class members by committing resources and time to respond to discovery requests is exactly the type of conduct that courts have attempted to prevent, and is one reason discovery of absent class members is discouraged.

## CONCLUSION

For the reasons stated above, Defendants' cannot meet the high burden to conduct further discovery on non-parties and absent class members. The subpoena issued upon Third Party Health Plans should be quashed and a protective order should be issued to prevent further discovery. A proposed Order is attached.

## <u>CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1</u>

Pursuant to Local Rules 7.1(a)(2) and 37.1, the undersigned hereby certify that counsel for the Third Party Health Plans contacted counsel for Defendants regarding the issues that are addressed in this motion, but were unable to resolve or narrow the issues.

Date: September 26, 2005

                                              ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                                              By:   /s/ Anthony A. Froio
                                                       Christopher P. Sullivan (BBO #485120)
                                                       Anthony A. Froio (BBO #554708)
                                                       800 Boylston Street
                                                     25th Floor
                                                     Boston, MA 02199-2300
                                                     Telephone: (617) 267-2300
                                                     Facsimile: (617) 267-8288

W. Scott Simmer
Thomas J. Poulin
1801 K Street, N.W.
Suite 1200
Washington, D.C. 20006
Telephone: (202) 775-0725
Facsimile: (202) 223-8604

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2005, I caused a true and correct copy of the foregoing to be served on counsel for Defendants, Adeel Mangi, Esq., Patterson, Belknap, Webb and Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036-6710 via overnight mail.

/s/ Anthony A. Froio