# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
|  | MDL NO. 1456 |
|  | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) ) ) |
|  | Hon. Patti B. Saris |
|  | Chief Mag. Judge Marianne B. Bowler |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY JOHNSON & JOHNSON, CENTOCOR INC., KENNETH WEGNER, COLIN KONSCHAK, GRACE LEONE, TRINA GILLIES, JIM BIVONA AND BRETT BEITER TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER PROHIBITING PLAINTIFFS FROM TAKING DISCOVERY OF FORMER CENTOCOR EMPLOYEES SUBPOENAED <u>AFTER THE DISCOVERY CUT OFF</u>**

Johnson & Johnson, Centocor Inc., Kenneth Wegner, Colin Konschak, Grace Leone, Trina Gillies, Jim Bivona and Brett Beiter respectfully move this Court pursuant to Fed. R. Civ. P. Rules 26(c) and 45(c) and Case Management Orders ("CMOs") 10 and 13 to quash subpoenas and for a protective order prohibiting plaintiffs from taking discovery of former Centocor employees whom plaintiffs subpoenaed after the discovery cut-off specified by Judge Saris had expired.

## STATEMENT OF FACTS

Plaintiffs have been engaged in discovery from Johnson & Johnson and Centocor since October 2002. Since that time, they have analyzed tens of thousands of pages of documents, reams of data and have taken numerous depositions. On March 10, 2005 Judge Saris entered Case Management Order 13, which put plaintiffs on notice that they had to complete all discovery from Johnson & Johnson and Centocor by August 31, 2005. *See* Exhibit 1.[1] Pursuant to CMO 10, plaintiffs had to provide 21 days notice prior to taking any depositions. *See* Exhibit 2. Accordingly, the last day for plaintiffs to notice or subpoena any depositions of current or former Johnson & Johnson or Centocor employees was August 10, 2005.

Plaintiffs apparently understood this obligation, because after seeking no additional depositions from Centocor for weeks, plaintiffs suddenly served a new deposition notice on August 10, 2005 seeking the depositions of eight individuals, all of whom were noticed for August 31, 2005. *See* Exhibit 3. Of those eight employees, only two (Laura Glassco and Cheryl Cohen) were still employed by Centocor. Because plaintiffs already had two depositions scheduled for August 31, 2005, and for scheduling reasons, Centocor voluntarily allowed plaintiffs a limited exception to the discovery cut-off, allowing them to take these two

---

[1] All exhibits are appended to the supporting declaration of Erik Haas.

1216822v3

depositions in early September.  As to the six employees who were no longer with the company, the six individual movants here, Centocor responded to plaintiffs' request for last-known addresses on August 26, 2005, told plaintiffs Centocor would be contacting them to arrange representation, and told plaintiffs they would have to arrange personal service of any subpoenas they decided to issue.  Centocor also advised plaintiffs, however, that any effort to subpoena these former employees would be untimely.  (Haas Dec. ¶ 5).

Plaintiffs nonetheless decided to proceed with serving subpoenas on the six former employees.  Plaintiffs served notice of depositions and subpoenas on Centocor – but not on the witnesses – on August 30, 2005 specifying deposition dates between September 20, 2005 and September 26, 2005.  *See* Exhibit 4.  Plaintiffs served these subpoenas on the former employees on various dates in September, which we understand from the former employees were between September 9, 2005 and September 17, 2005.  (Haas Dec. ¶ 7).[2]  The subpoenas called for depositions testimony and the production of documents regarding the former employees' employment at Centocor.

## DISCUSSION

It is well settled that depositions must be noticed or subpoenaed and completed before discovery periods specified in scheduling orders expire:

> Courts impose discovery cutoffs with increasing frequency in
> scheduling orders pursuant to Rule 16(b); where such an order is in
> force, *a party may not notice a deposition to occur after the cutoff*
> unless granted leave of court pursuant to Rule 29.

*See* 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2111(2d ed. Supp.2005) (emphasis added).

---

[2] Plaintiffs have not served copies of these subpoenas containing certificates of service on defendants. However, the apparent dates of service raise lack of sufficient notice to the former employees as an additional basis for quashing these subpoenas.  For example, in the case of Trina Gillies, it appears she was given only 5 days notice of the purported deposition date.  *See* Fed. R. Civ. P. R. 45(c)(3)(A)(i).

3

Following this principle, numerous courts have prohibited parties from taking depositions where subpoenas were served on witnesses after the discovery cut-off or where the deposition date specified was outside the discovery period. *See e.g.*, *Four M Corp. v. Guiliano*, No. 89 Civ. 5275, 1991 WL 44840, at *1 (S.D.N.Y. March 27, 1991) (quashing deposition subpoena served after the discovery cut-off); *Bondpro Corp. v. Siemens Westinghouse Power Corp.*, No. 04-C-0026-C, 2005 WL 256488, at *1 (W.D. Wis. Jan. 31, 2005) (denying motion to take deposition where movant served deposition subpoena on witness after the discovery cut-off); *Sanofi-Synthelabo v. Apotex Inc.*, No. 02 Civ.2255(SHS) & 02 Civ.3672(SHS), 2005 WL 469594 (S.D.N.Y. Feb. 18, 2005) (denying application to take deposition of fact witness and finding deposition should have been conducted prior to the close of fact discovery); *Henkel v. XIM Products, Inc.*, 133 F.R.D. 556 (D. Minn. 1991) ("absent an agreement of the parties, or some compelling circumstance that would cause a miscarriage of justice if a late deposition is not allowed, all depositions must be completed… by the discovery termination date of the pretrial schedule"); *Integra Lifesciences I Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D.Cal. 1999) ("testimony should be procured during the time set by the court to conduct discovery absent exceptional circumstances.").[3]  Indeed, even failing to file a motion to compel sufficiently before the close of discovery to enable adjudication and the deposition to all take place before the discovery cut-off has been held to bar the deposition sought as untimely. *See Bethea v. Comcast*, 218 F.R.D. 328, 332 (D.D.C. 2003).

The same principle is applied to other forms of discovery, such as the document requests also included in the subpoenas at issue here, lending further foundation to the rule on

---

[3] Courts have differed as to whether "trial depositions" aimed at the preservation of evidence are different from "discovery depositions" and may be taken after the close of discovery. *Compare Henkel v. XIM Products, Inc.,* 133 F.R.D. 556 *with Estenfelder v. Gates Corp.*, 199 F.R.D. 351 (D. Col. 2001). That distinction is irrelevant here as there is no dispute that the depositions at issue are discovery depositions. *See* page 6 *infra*.

depositions. *See Thomas v. Pacificorp,* 324 F.3d 1176, 1179 (10th Cir. 2003) ("even if the requests had been served on [the discovery cutoff date] the requests still were not timely.  The Federal Rules of Civil Procedure allow parties thirty days to respond to interrogatories and requests for production. . . .  Therefore, requests must be served at least thirty days prior to a completion of discovery deadline"); *Jones v. Hirschfeld*, No. 01 Civ. 7585, 2003 WL 21415323, at *4 n.13 (S.D.N.Y. June 19, 2003) ("Both sides should be aware that the discovery deadline date is the date on which discovery should be complete; it is not the last date on which a party can serve discovery requests."); *Lastre v. Leonard*, No. 89 C 1784, 1990 WL 37658 (N.D. Ill. Mar. 21, 1990) ("Discovery requests not scheduled for completion before the discovery closing date do not comply with the court's standing pretrial order."); *Gavenda v. Orleans County*, 182 F.R.D. 17, 20 (W.D.N.Y. 1997) ("Generally, discovery requests are to be made sufficiently inside the discovery period to allow for a response prior to the discovery cut-off date…Allowing document demands to be served at the very end of the discovery period would impermissibly extend the discovery period as defined by [the] judge."); *Babcock v. CAE Link Corp.*, 878 F. Supp. 377, 387 (N.D.N.Y 1995) (denying plaintiff's motion to compel discovery where plaintiff "chose to wait until the last day of discovery to serve his requests"); *Williams v. Little Rock Mun. Water Works*, 155 F.R.D. 188, 189 (E.D. Ark. 1993) (denying plaintiff's motion to compel on grounds of timeliness where responses were not due until after discovery cutoff).

Here, plaintiffs' subpoenas on the six former Centocor employees are untimely on their face because they were served on the witnesses between September 9 and September 17 2005, well after the August 31, 2005 discovery cut-off had expired, and called for depositions approximately three to four weeks after the discovery period had expired.  When defendants pointed this out to plaintiffs in pre-motion discussions, plaintiffs made two counter arguments.

1216822v3

First, plaintiffs argued that they originally served a deposition notice naming these former employees on August 10, 2005.  Second, they argued that they served Centocor on August 30, 2005  (and dated their subpoenas to the third parties with the same date).

These arguments are unavailing.  Plaintiffs could have noticed these employees months or even years ago, timely discovered they are no longer employed by Centocor, timely sought last-known addresses, and timely served them with subpoenas calling for depositions within the discovery period.  By waiting until the very last day (August 10, 2005) when discovery notices or subpoenas could be served, plaintiffs chose to run the risk that these were former employees and that they would have insufficient time to obtain their last known addresses and subpoena them for depositions within the discovery period.

Furthermore, the fact that plaintiffs served Centocor with a copy of the subpoena on August 30 is neither here nor there.  It does not alter the facts that (1) the subpoenas call for depositions after the discovery cut-off; (2) the subpoenas were not served on the witnesses until well after the discovery cut-off; and (3) plaintiffs can provide no excuse for having failed to seek the last known addresses of these former employees months or years ago, which would have permitted them to take timely discovery.  In sum, having failed to act in a timely manner or seek an extension of the discovery period, "plaintiffs have slept on their rights and thus waived any deposition." *See Breffka v. M/V/ Glorious Success*, No. 01CIV10599JFKMHD 2002 WL 31415623 (S.D.N.Y. Oct. 28, 2002 ).

Finally, plaintiffs can make no showing of exceptional circumstances mandating these depositions.  In pre-motion conferences, counsel for Centocor asked counsel for plaintiffs what specific rationale they had for seeking these six depositions.  Plaintiffs provided no reason beyond wanting to explore the perspectives of sales-level Centocor employees.  Indeed, plaintiffs

6

represented that they might even be satisfied with two of the six subpoenaed depositions, but could only decide after taking the depositions and seeing how they went.  (Haas Dec. ¶ 8).  And plaintiffs adopted this position even though they have already deposed two Centocor sales-level employees.  This broad level of fact finding inquiry may be defensible within the discovery period; but falls far short of the exceptional circumstances required to mandate an extension of discovery.

## CONCLUSION

For the above stated reasons, movants respectfully request that the Court issue an order quashing the subpoenas served on Kenneth Wegner, Colin Konschak, Grace Leone, Trina Gillies, Jim Bivona and Brett Beiter and enter a protective order prohibiting plaintiffs from taking discovery of these former Centocor employees.

Dated:  September 27, 2005

Respectfully submitted,


_____/s/ Erik Haas_____
Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for Defendants Johnson &*
*Johnson, Centocor Inc., Kenneth Wegner,*
*Colin Konschak, Grace Leone, Trina Gillies,*
*Jim Bivona and Brett Beiter*

1216822v3

## CERTIFICATE OF SERVICE

I certify that on September 27, 2005, a true and correct copy of the forgoing Memorandum Of Law In Support Of Motion By Johnson & Johnson, Centocor Inc., Kenneth Wegner, Colin Konschak, Grace Leone, Trina Gillies, Jim Bivona and Brett Beiter To Quash Subpoenas And For A Protective Order Prohibiting Plaintiffs From Taking Discovery Of Former Centocor Employees Subpoenaed After The Discovery Cut Off was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.

                                        /s/ Erik Haas
                                        Erik Haas

1216822v3

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 44840 (S.D.N.Y.)
**(Cite as: 1991 WL 44840 (S.D.N.Y.))**
c

Page    1

Motions, Pleadings and Filings

. 1:89cv05275 (Docket)

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
FOUR M CORPORATION, Plaintiff and
Counterclaim-Defendant,
v.
Francis J. GUILIANO, Defendant and
Counterclaim-Plaintiff.
No. 89 Civ. 5275 (KTD).

March 27, 1991.

*MEMORANDUM AND ORDER*

NAOMI REICE BUCHWALD, United States
Magistrate Judge.

**\*1** Plaintiff has moved to quash a subpoena *duces
tecum* to the Keeper of the Records of Stone
Container Corporation and a deposition subpoena to
Roger Stone on the ground that both were served
after the discovery cut-off.    Defendant, however,
asserts that plaintiff should not be able to rely on an
untimeliness argument since plaintiff withheld
documents until after the discovery cut-off which
revealed for the first time the necessity for the
discovery now sought. While defendant maintains
that the "withheld information" was not previously
available, plaintiff's reply papers, and the exhibits
annexed thereto, reveal that there was sufficient
information available to defendant prior to the
discovery cut-off to demonstrate a basis for the
Stone discovery.    Thus, while the documents
produced more recently could be considered more
explicit, defendants were on notice as to the issue of
contact between Dennis Mehiel and Roger Stone of
the Stone Container Corporation well before the cut-
off. Accordingly, defendant's decision not to seek
third-party discovery from the Stone Container
Corporation during the discovery period will not be
disturbed.

IT IS SO ORDERED.

Not Reported in F.Supp., 1991 WL 44840
(S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 256488 (W.D.Wis.)
**(Cite as: 2005 WL 256488 (W.D.Wis.))**

Ħ

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
W.D. Wisconsin.
BONDPRO CORPORATION, Plaintiff,
v.
SIEMENS WESTINGHOUSE POWER
CORPORATION, Defendant.
No. 04-C-0026-C.

Jan. 31, 2005.
David T. Schultz, Attorney at Law, Minneapolis,
MN, for Defendant.

### ORDER

CRABB, J.

**\*1** Defendant Siemens Westinghouse Power
Corporation has requested an expedited hearing on
its motion for leave to take a trial preservation
deposition of Mechanical Dynamics & Analysis,
LLC, ("MDA") a witness who defendant asserts has
relevant evidence but is unavailable to testify at trial
because it is located more than 100 miles away. The
motion relates to a January 19, 2005 notice of
deposition that was served on MDA on January 20,
2005 and that was one of the subjects of an omnibus
order on discovery entered on January 25, 2005 by
Magistrate Judge Stephen Crocker. The deposition
of MDA was noticed for February 1, 2005. The
magistrate judge ruled that defendant's subpoena for
the taking of MDA's deposition was untimely
because it was beyond the discovery cutoff of
January 7, 2005, as set forth in the preliminary
pretrial conference order. In their motion, defendant
asks this court to reconsider that ruling and allow
the deposition to go forward as scheduled.
Defendant asserts that it seeks to take MDA's
deposition for the purpose of "trial preservation,"
not discovery, and therefore the matter falls outside
the scope of the January 7, 2005 discovery cutoff.

Defendant's motion will be denied. I agree with
those courts that have held that, absent exceptional
circumstances, a party who wishes to introduce
deposition testimony at trial should procure that
testimony during the time set by the court to conduct

discovery. *See, e.g., Integra Lifesciences I, Ltd., v.
Merck KgaA,* 190 F.R.D. 556, 559 (S.D.Cal.1999);
*Henkel v. XIM Products, Inc.,* 133 F.R.D. 556, 557
(D.Minn.1991). Otherwise, "nothing would keep
the parties from waiting until after the close of
discovery to take all these 'trial' depositions,"
meaning that there would be no motivation to
conduct discovery of "unavailable" witnesses during
the discovery period. *Integra Lifesciences,* 190
F.R.D. at 559.

No compelling circumstances exist to allow
defendant to depose MDA at this late juncture in
this case. Defendant has long known that MDA has
relevant information and that it is outside the
subpoena power of the court. In fact, it had
scheduled a deposition of MDA to occur before the
discovery cut-off, but cancelled that deposition in
exchange for a declaration from MDA that MDA
signed on the condition that no future deposition or
trial testimony would be sought. When defendant
abandoned its previous attempt to depose MDA, it
took the risk that it would not be able to procure its
appearance at trial and that it would not be able to
present MDA's testimony. If defendant was unsure
whether it would later be able to take MDA's trial
preservation depositions after the discovery cutoff
set forth in the pretrial conference order, it could
have sought guidance from the court before the
cutoff.

### ORDER

Accordingly, defendant's motion for leave to take a
trial preservation deposition of MDA and its request
for an expedited hearing on that motion are both
DENIED.

Not Reported in F.Supp.2d, 2005 WL 256488
(W.D.Wis.)

Motions, Pleadings and Filings (Back to top)

. 3:04CO0026 (Docket)
(Jan. 16, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                Page   1
Not Reported in F.Supp.2d, 2005 WL 469594 (S.D.N.Y.)
**(Cite as: 2005 WL 469594 (S.D.N.Y.))**
H

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
SANOFI-SYNTHELABO; Sanofi-Synthelabo, Inc.;
and Bristol-Myers Squibb Sanofi
Pharmaceuticals Holding Partnership, Plaintiffs,
v.
APOTEX INC.; and Apotex Corp., Defendants.
SANOFI-SYNTHELABO; Sanofi-Synthelabo, Inc.;
and Bristol-Myers Squibb Sanofi
Pharmaceuticals Holding Partnership, Plaintiffs,
v.
DR. REDDY'S LABORATORIES, LTD.; and Dr.
Reddy's Laboratories, Inc., Defendants.
No. 02 Civ.2255(SHS), 02 Civ.3672(SHS).

Feb. 18, 2005.

*ORDER*

STEIN, J.

 *1 By letter dated January 25, 2005 plaintiffs
Sanofi-Synthelabo, Sanofi-Synthelabo, Inc., and
Bristol-Myers Squibb Sanofi Pharmaceuticals
Holding Partnership (collectively "Sanofi") wrote
this Court seeking a conference in advance of
moving for a protective order enjoining the taking of
the deposition of Dr. Robert W. Colman scheduled
for March 4, 2005. Two days later--on January 27--
defendants Apotex Inc. and Apotex Corp.
(collectively "Apotex") applied to this Court for
leave to take the deposition of Dr. Colman.

 Apotex asserts that Colman is a fact witness, and
seeks to take his deposition de bene esse. However,
the Federal Rules of Civil Procedure make no
distinction between depositions taken for the
purpose of discovery and those taken de bene esse--
both types of depositions are governed by the
scheduling order. *Donk v. Miller,* 2000 WL 218400
at *4-5 (S.D.N.Y.2000). Pursuant to the Scheduling
Stipulation and Order in these consolidated cases,
fact discovery closed on October 15, 2003--17
months prior to the proposed deposition date. (*See*
Scheduling Stipulation and Order dated August 10,
2004).

 Additionally, Apotex has not shown good cause for
modifying the Scheduling Stipulation and Order. *See*
Fed.R.Civ.P. 16(b); *Donk,* 2000 WL 218400 at * 4-
5; *Integra Lifesciences I, Ltd. v. Merk KGaA,* 190
F.R.D. 556 (S.D.Ca.1999); *Henkel v. XIM Prod.,*
133 F.R.D. 556 (D.Minn.1991). Apotex has also
not provided any substantial reason why it needs to
preserve Dr. Colman's trial testimony by means of a
de bene esse deposition after the close of discovery.
Depositions of fact witnesses who reside beyond the
subpoena range of this Court were to have been
conducted prior to the close of fact discovery, not
long afterward. Accordingly, Apotex's application
to depose Dr. Robert W. Colman is denied.

 Not Reported in F.Supp.2d, 2005 WL 469594
(S.D.N.Y.)

  Motions, Pleadings and Filings (Back to top)

. 1:02cv03672 (Docket)
(May. 14, 2002)

. 1:02cv02255 (Docket)
(Mar. 21, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                            **Page    1**
Not Reported in F.Supp.2d, 2003 WL 21415323 (S.D.N.Y.)
**(Cite as: 2003 WL 21415323 (S.D.N.Y.))**
H

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Paula JONES a/k/a "Paula Corbin Jones," Plaintiff,
v.
Abraham HIRSCHFELD a/k/a "Abe Hirschfeld,"
Defendant.
No. 01 Civ. 7585(PKL).

June 19, 2003.

Female who settled her litigation against President Clinton brought suit against private individual for alleged breach of contract to pay her $1 million if litigation with President was settled. On plaintiff's motion for summary judgment, and private individual's cross-motions, the District Court, Leisure, J., held that: (1) summary judgment motions would be denied without prejudice to allow reopening of discovery, and (2) private individual was not entitled to consideration of untimely jury demand.

Motions granted in part and denied in part.

West Headnotes

[1] Federal Civil Procedure ⬡⇒ 2553
170Ak2553 Most Cited Cases
Defendant, who was imprisoned and proceeding pro se during much of discovery period, was entitled to reopening of discovery prior to consideration of cross-motions for summary judgment, particularly where reopening might also benefit plaintiff, as case appeared to contain fact issues that might be resolved by properly developed record, and both parties had made technical, procedural errors in connection with motions that might lead to denial unless corrected. Fed.Rule Civ.Proc.Rule 56(f), 28 U.S.C.A.

[2] Jury ⬡⇒ 25(6)
230k25(6) Most Cited Cases
Court could not exercise its discretion to grant defendant's untimely jury demand absent showing that failure to make timely request was based on anything more than mere inadvertence.  Fed.Rules

Civ.Proc. Rules 38, 39(b), 28 U.S.C.A.
Thomas F. Cohen, The Abramson Law Group, New York, for Plaintiff.

Abraham Hirschfeld, Walter S. Murray, New York, N.Y., for Defendant, pro se.

*OPINION AND ORDER*

LEISURE, J.

**\*1** This breach of contract action was commenced on August 15, 2001, by Paula Jones against Abraham Hirschfeld. Plaintiff contends that this is a simple contract case, while defendant believes it is much more complicated. The truth, not surprisingly, lies somewhere in the middle. [FN1] The litigation, and these motions in particular, have certainly become more complicated than they might have otherwise been because the record is thus far under developed, as discovery has been, for several reasons, paper-thin. [FN2]

> FN1. While in all probability this case ultimately will be resolved based on contract interpretation, it is complicated by the fact that the agreement at issue is casually drafted and, hence, subject to litigation pitfalls.

> FN2. Also contributing to the complications is defendant's penchant for constantly changing attorneys. In fact, two separate attorneys appear to have been involved in the briefing of these motions and, quite likely because of this fact, defendant's submissions appear to be inconsistent, and even at times contradictory, on some points. This litigation would no doubt be less complicated for plaintiff, the Court and especially defendant, if Hirschfeld would retain one competent attorney and remain with that attorney. Given, however, that the Court was recently informed that the last lawyer that entered an appearance no longer works for defendant, it appears that the revolving door of counsel continues unabated. Although the Court's suggestion is in hopes of bringing some semblance of order to the otherwise chaotic posture of this case, it is mindful that any decisions by Hirschfeld regarding his representation are personal to him and for him alone to make. The right to select one's own counsel is of a constitutional dimension.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21415323, *1 (S.D.N.Y.))

Plaintiff has moved for summary judgment. Before responding, defendant filed a motion to re-open discovery, to be granted a jury trial, and, possibly, to dismiss the case for failure to join an indispensable party. [FN3] Defendant then responded to plaintiff's motion with a cross-motion for summary judgment. Plaintiff's motion for summary judgment, defendant's motion to re-open discovery and seek other relief, and defendant's cross motion for summary judgment will each be disposed of in this Opinion. [FN4]

> FN3. Defendant also moved for "a stay of time and/ or additional time to oppose plaintiff's motion for summary judgment." However, before the motion was addressed by the Court, defendant responded to plaintiff's motion, so Hirschfeld's request for more time to respond is now moot.

> FN4. Both parties in this action originally neglected to file some of their submissions with the Clerk of Court. The parties are reminded that originals of all submissions in connection with any motions must be filed with the Clerk of Court, and courtesy copies should be delivered to Chambers.

## BACKGROUND

The factual background of this case is relatively straightforward. In 1994, plaintiff filed a sexual harassment lawsuit against then President of the United States, William Clinton. Suffice it to say, that lawsuit brought about an imbroglio of Brobdingnagian proportions, in which the entire country became embroiled. Some time in the fall of 1998, defendant publicly offered to pay plaintiff one million dollars to drop her lawsuit against President Clinton. The parties dispute whether this offer was made because of defendant's desire to act in the country's best interest or because of his desire for publicity. His motives, however, are not important for the purposes of these motions. An agreement was signed by both Jones and Hirschfeld on October 31, 1998, which called for defendant to wire one million dollars to plaintiff's lawyers on November 2, 1998. The money was not to be released to her unless and until the lawsuit against Clinton was discontinued by a competent court accepting a stipulation of settlement. On November 13, 1998, Jones settled her lawsuit with Clinton for approximately $850,000. The Court of Appeals for the Eight Circuit granted a motion to dismiss the same lawsuit on December 2, 1998. Defendant

never wired the one million dollars to plaintiff's lawyers.

Thereafter, plaintiff brought this action. On December 12, 2001, the Court signed a Civil Case Management Plan, submitted by the parties, which indicated that all discovery should be complete by June 14, 2002. At a conference on August 6, 2002, Magistrate Judge Gabriel W. Gorenstein asked Hirschfeld if he needed to conduct any discovery. Hirschfeld responded by saying "I don't think so. I think if we have a trial then I can bring my witnesses, whoever I will need. No sense doing it twice." Transcript of Aug. 6, 2002 Conference at 13. In a letter to plaintiff's counsel dated August 16, 2002, defendant stated that he did not intend to take any depositions and "therefore the case is ready to be put on calendar." Letter addressed to Thomas F. Cohen, Esq., from Abraham Hirschfeld dated Aug. 16, 2002. Hirschfeld was incarcerated from approximately July 2000 until July 27, 2002. It appears that defendant has undertaken no discovery and has not responded to any of plaintiff's discovery requests.

## DISCUSSION

*2 The Court will first discuss the cross-motions for summary judgment in connection with the motion to re-open discovery and then will consider defendant's other requests.

### I. Summary Judgment Motions and the Motion to Re-Open Discovery

[1] While not styled as such, the Court finds it prudent to consider Hirschfeld's motion to re-open discovery as a Rule 56(f) response to plaintiff's summary judgment motion. Therefore, the Court will treat defendant's motion and cross-motion as a Rule 56(f) response, and a motion, in the alternative, for summary judgment. Cf. Negron v.. Macomber, No. 95 Civ. 4151, 1999 WL 608777, at *5 n. 6 (S.D.N.Y. Aug.11, 1999).

Rule 56(f) provides:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



may make such other order as is just.

Fed.R.Civ.P. 56(f). The Second Circuit has stated that a "denial of access to relevant information weighs in favor of the party opposing a motion for summary judgment." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 925 (2d Cir.1985); *see also B.F. Goodrich v. Betkoski,* 99 F.3d 505, 523 (2d Cir.1996) ("Rule 56(f) allows a party faced with a motion for summary judgment to request additional discovery, and the Supreme Court has suggested that such a request be granted when 'the nonmoving party has not had an opportunity to make full discovery." ' (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Because of the general policy in favor of liberal discovery, *see Roebuck v. Hudson Valley Farms, Inc.,* 208 F.R.D. 34, 36 n. 5 (N.D.N.Y.2002), and because it is "a safeguard against an improvident or premature grant of summary judgment," *Carter v. AT & T Communications,* 759 F.Supp. 155, 160 (S.D.N.Y.1991), Rule 56(f) "should be applied with a spirit of liberality." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 945 F.Supp. 693, 706 (S.D.N.Y.1996) (internal quotations omitted); *Carter,* 759 F.Supp. at 160.

A proper Rule 56(f) affidavit explains "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dept. of Navy,* 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory,* 769 F.2d at 926. The failure to include the third and fourth requirements in the affidavit, however, "is not automatically fatal to a Rule 56(f) affidavit." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1139 (2d Cir.1994); *John Hancock Property & Casualty Ins. Co. v. Universale Reinsurance Co., Ltd.,* 147 F.R.D. 40, 47 n. 15 (S.D.N.Y.1993).

*3 Defendant's affidavit submitted in connection with his motion to re-open discovery certainly satisfies the first two requirements of a proper Rule 56(f) affidavit. *See* Affidavit of Abraham Hirschfeld sworn to on Sept. 30, 2002 ("Hirschfeld Aff."), ¶¶ 3, 4, 5, 6, 7 & 10. It is not at all surprising that he is easily able to satisfy these requirements given the almost complete lack of discovery that seems to have

taken place in this case.

Hirschfeld's affidavit, however, does little to address the third and fourth requirement of a Rule 56(f) affidavit. He only notes that he was imprisoned from July 2000 until July 27, 2002. Hirschfeld Aff. ¶ 11. Surely, that cannot be a sufficient explanation. If it were, any imprisoned litigant could neglect discovery and then delay a proceeding by claiming he was unable to conduct discovery due to his captivity. In this case, however, the Court finds compelling reasons to excuse defendant's noncompliance and allow more discovery.

First, Hirschfeld, was not only imprisoned during almost all of the time allotted for discovery in this matter, he was also proceeding *pro se* for much of that time. [FN5] Second, this case is hardly trial-ready, which would be the next step if the merits of the summary judgment motions were considered and denied. The Court is loath even to give the appearance of rewarding a litigant for continually changing attorneys and delaying discovery. However, the Court is also loath to try a case that is far from ready for trial. A trial in a case as underdeveloped as this one would be inefficient and not in the interests of justice. The fact that the discovery that has proceeded thus far in this case can only be characterized as underdeveloped, coupled with the fact that Hirschfeld was imprisoned during all of the discovery phase of this case and was often representing himself, militates strongly toward allowing more discovery to take place in this action.

FN5. He was *pro se* at the time he indicated to plaintiff's counsel and Magistrate Judge Gorenstein that he did not need any further discovery.

Additionally, more discovery also may be in the interests of the plaintiff. This case might well be appropriate for resolution at the summary judgment stage on a fully developed record. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir.2001) ("Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." (internal quotations omitted)). A review of the parties' submissions, however, leads the Court to believe that if the merits of the summary judgment motions were addressed at this juncture, neither party would be entitled to judgment. There are currently several

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21415323, *3 (S.D.N.Y.))

Page  4

issues of fact that likely would have necessitated a trial, but that now may be resolved in further discovery. For example, plaintiff argues that any ambiguity in the agreement between Jones and Hirschfeld must be construed against defendant because it was drafted by his attorney. To support this factual contention, plaintiff cites the deposition of Harvard Hollenberg, Esq., Hirschfeld's counsel during the relevant time period. It is not clear from the transcript of that deposition, however, that Mr. Hollenberg did draft the entire agreement. [FN6] *See* Deposition of Harvard Hollenberg, Esq., dated Apr. 1, 2002, at 38 ("I don't have a present recollection of whether I inserted that language or whether it was the language somehow agreed to with Ms. Jones' attorneys."); *id.* at 59 ("Q. Was that language that you drafted, Mr. Hollenberg? A. It was language that was agreed on, on the telephone with somebody from [plaintiff's counsel]."). There is also some question regarding the meaning of the word "underwrite" in the agreement, with respect to whether the one million dollars was intended to be the only settlement money received by Jones. [FN7]

> FN6. This is especially true given that on plaintiff's motion for summary judgment, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the defendant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> FN7. These issues are only examples of areas that appear to need further development. It is not appropriate on the present record for the Court to endeavor to list each of the factual issues that remain in dispute.

*4 Finally, denying the summary judgment motions without prejudice now will allow both parties to correct several technical errors made in connection with those motions that otherwise may have lead to denial on procedural grounds. First, plaintiff failed to comply with Local Civil Rule 56.2, which provides that a represented party moving for summary judgment against a *pro se* party must file and serve a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." The notice warns a *pro se* party about the possible effects of a successful summary judgment motion and details steps that the unrepresented party should take to oppose the motion. Failure to provide such notice to a *pro se* party can be grounds for denial of a motion

for summary judgment. *See Dais v. Lane Bryant, Inc.,* No. 97 Civ.2011, 2000 WL 869489, at *2 (S.D.N.Y. June 29, 2000) (Leisure, J.); *cf. Vital v. Interfaith Med. Ctr.,* 168 F.3d 615 (2d Cir.1999) (discussing the importance of ensuring that a *pro se* party understands the significance of a summary judgment motion). Defendant in this action was *pro se* on September 13, 2002, the date of plaintiff's notice of summary judgment motion. Therefore, a 56.2 notice should have been filed and served along with plaintiff's moving papers. [FN8]

> FN8. This omission, however, would more than likely not have been fatal to plaintiff's motion, because it is clear from defendant's opposition and cross-motion that he had a sufficient understanding of Rule 56, the possible consequences of plaintiff's motion, and what he needed to do to oppose the motion. *Cf. Pena v. Recore,* No. 95 Civ. 5307, 2001 WL 262986, at *3 (E.D.N.Y. Mar.14, 2001) (addressing merits of summary judgment motion despite lack of Rule 56.2 notice because respondent understood his burden under Rule 56); *Moon v. Silver,* No. 96 Civ. 8108, 2000 WL 1041666, at *2 n. 2 (S.D.N.Y. July 27, 2000) (addressing merits of summary judgment motion despite lack of Rule 56.2 notice because respondent was not prejudiced by the lack of notice); *see also Sawyer v. American Fed'n of Gov't Employees,* 180 F.3d 31, 35 (2d Cir.1999) (Newman, J.) (stating that "the issue [is] whether from all of the circumstances, including the papers filed by the pro se litigant, it is reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it"). Regardless, the more prudent course for plaintiff's counsel would have been to include a Rule 56.2 statement.

Second, both litigants failed to comply fully with Local Civil Rule 56.1, which requires the moving party to file a statement setting forth the material facts that are allegedly undisputed. Local Civil Rule 56.1(a). The non-moving party then must file a statement setting forth the material facts that it contends are in dispute. *Id.* 56.1(b). "Each statement of material fact by a movant or opponent must be followed by a citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." *Id.* 56.1(d). Jones filed a 56.1 statement along with her summary judgment motion, and Hirschfeld filed a counter

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: 2003 WL 21415323, \*4 (S.D.N.Y.))**

56.1 statement and his own 56.1 statement in connection with his cross-motion. Both parties, however, failed to include any citations to admissible evidence. [FN9] Assertions of alleged facts in a 56.1 statement that are not supported by citations to admissible evidence cannot serve as a substitute for admissible evidence. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73-74 (2d Cir.2001). As a result of the parties' failure to cite to admissible evidence such as affidavits, depositions and documents, several facts that one or the other party contends are conclusively established are actually unsubstantiated by the current record. [FN10] Both Jones and Hirschfeld should adhere strictly to the local rules in any future summary judgment motions. [FN11]

> FN9. Plaintiff also failed to file a counter 56.1 statement in response to the cross-motion.

> FN10. Again, this circumstance is no doubt the natural result of the lack of discovery. For example, plaintiff alleges that defendant's counterclaim for defamation should be dismissed because defendant is libel-proof due to his convictions for conspiring to murder a business partner and tax evasion. There is, however, no admissible evidence in any of plaintiff's submissions substantiating these allegations.

> FN11. There is another problem. Rule 56(e) requires summary judgment to be based on admissible evidence. Fed.R.Civ.P. 56(e). The only substantive affidavit submitted by plaintiff in connection with her summary judgment motion was her own affidavit. (Her counsel also submitted an affidavit but it was included only to supply the Court with accompanying documents.) Her affidavit is replete with hearsay and speculation, and therefore several of her assertions are inadmissible. *See* Affidavit of Paula Jones, sworn to on August 2, 2002, ¶ 4 (*"On information and belief,* defendant could not have otherwise received such attention through conventional means.... *I am advised by my counsel* that defendant ultimately had to plead guilty to filing false corporate and personal income tax returns ...." (emphasis added)); *id.* ¶ 6 (" *I am advised by my Counsel* that, by Order filed December 2, 1998, the Court of Appeals granted said joint motion." (emphasis added)); *id.* ¶ 10.

In light of all of these considerations, the Court will re-open discovery to allow both parties to develop the record further. [FN12] The Court will set a firm deadline of three months from the date of this Opinion for the close of this additional discovery and will not be as forgiving if either party is dilatory in its efforts. [FN13] In fact, no extension of this deadline will be granted for either party absent extraordinary circumstances. [FN14] Also, defendant should be aware that by re-opening discovery, the Court is also permitting plaintiff to request more information. Plaintiff's counsel has indicated that defendant did not answer any discovery requests propounded on him. Future failure to do so will not be countenanced by this Court and sanctions, especially for continuing misconduct, can be severe. [FN15]

> FN12. Based on the submissions thus far, there may be a discovery dispute brewing over production of the Clinton/Jones settlement agreement. Plaintiff supplied the Court with two computer printouts from news websites (cnn.com and washingtonpost.com) that allegedly contain the text of the agreement. They are not, however, the actual agreement. In fact, they are nothing but hearsay-they are what the websites say the settlement contains, offered for the truth of the matters asserted. If defendant requests a copy of the Clinton/Jones agreement in discovery or if plaintiff expects the Court to base any future rulings on that settlement (to which she was a party and therefore should certainly have access to), website printouts or similar hearsay will not suffice. Defendant also attempted to rely on website printouts from news organizations that are inadmissible hearsay.

> FN13. Both sides should be aware that the discovery deadline date is the date on which discovery should be complete; it is not the last date on which a party can serve discovery requests. "Generally, discovery requests are to be made sufficiently inside the discovery period to allow for a response prior to the discovery cut-off date. Discovery requests which are served too late in the discovery period to allow for a timely response, have been disallowed." *Gavenda v. Orleans County,* 182 F.R.D. 17, 20 (W.D.N.Y.1997) (citing *Fitzgibbon v. Sanyo Sec. America,* No. 92 Civ. 2818, 1994 WL 281928 (S.D.N.Y. June 22, 1994)); *see also Harris v. Computer Assocs. Int'l, Inc.,* 204 F.R.D. 44, 45 (E.D.N.Y.2001); *Babcock v. CAE-Link Corp.,* 878 F.Supp. 377, 388 (N.D.N.Y.1995).

> FN14. When the parties were briefing the instant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



motions, both sides requested several extensions. As a result, the Court set a final schedule and indicated that no extensions would be granted absent extraordinary circumstances. *See* Order dated Nov. 27, 2002. On the day in which plaintiff's reply brief was due, plaintiff's counsel hand-delivered a letter to Chambers requesting an extension for reasons that were less than extraordinary. Before the Court considered his request, plaintiff, perhaps in anticipation of an unfavorable response, served his brief in a timely fashion.

FN15. Of course, such conduct has to be brought to the Court's attention for it to act. Plaintiff only indicated defendant's failure to respond in connection with the present motions. No motions to compel were filed by plaintiff during the course of discovery.

*5 Plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment are denied without prejudice and may be brought again at the close of the additional discovery period. Discovery is re-opened but must be completed by September 19, 2003.

## II. Defendant's Motion for Other Relief

### A. Motion for a Jury Trial

[2] Defendant has also moved for a jury trial, while plaintiff contends that Hirschfeld has waived that right. Rules 38 and 39 (and possibly Rule 6) of the Federal Rules of Civil Procedure govern this question.

The Seventh Amendment guarantees litigants the right to a trial by jury and "[t]he federal policy favoring jury trials is of historic and continuing strength." [FN16] *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). That right, however, is not self-enforcing and can be waived. 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2318, at 133 (1995). Unlike other Constitutional rights, the right to a jury trial can be waived absent "intentional relinquishment or abandonment of a known right or privilege." *Bellmore,* 783 F.2d at 306 (internal quotations omitted).

FN16. The right to a jury trial is a fundamental right. *Bellmore v.. Mobil Oil Corp.,* 783 F.2d 300,

306 (2d Cir.1986). It is
> [p]erhaps the principal contribution of the Common Law to the fact-finding process.... It is a right not to be trifled with, witness the Declaration of Independence and its denunciation of King George III: "For depriving us in many cases, of the benefits of Trial by Jury." It is one of the few procedural rights in civil cases that is enshrined in the Constitution. *Tray-Wrap, Inc. v. Six L's Packing Co., Inc.,* 984 F.2d 65, 66 (2d Cir.1993) (McLaughlin, J.); *see also Paper Stylists, Inc. v. Fitchburg Paper Co.,* 9 F.R.D. 4, 5 (S.D.N.Y.1949) ("Blackstone said that trial by jury is the glory of the law.").

Rule 38 requires that a demand for a jury trial be served and filed not later than ten days after the service of the last pleading directed to such issue. Fed.R.Civ.P. 38(b). Failure to do so "constitutes a waiver by the party of trial by jury." [FN17] Fed.R.Civ.P. 38(d). There is no dispute that Hirschfeld failed to file a jury trial demand in a timely fashion.

FN17. Numerous Courts in this Circuit have noted the importance for both the parties and the Court to know at an early stage in the litigation who the fact finder will be. *See, e.g., Rosen v.. Dick,* 639 F.2d 82, 87 (2d Cir.1980) ("Undoubtedly, Rule 38 embodies the equitable principles of reasonable reliance ... and adequate notice...."); *Berisford Capital Corp. v. Syncom Corp.,* 650 F.Supp. 999, 1001 (S.D.N.Y.1987) ("The parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint."); *Landau v. Nat'l R.R. Passenger Corp.,* 97 F.R.D. 723, 725 (S.D.N.Y.1983) ("There is much to be said in favor of rigid adherence to deadlines. If such rules are too lightly set aside, they fail to serve their intended purposes. A line down the middle of a highway must be clearly and certainly identifiable."); *Mason v. British Overseas Airways Corp.,* 20 F.R.D. 213, 214 (S.D.N.Y.1957) ("The requirement of the rules with respect to jury trials facilitates the efficient administration of court business...."). "The Draftsman of the Civil Rules regarded this as one of the central provisions of the rules." 9 Wright & Miller, Federal Practice and Procedure § 2321, at 165-66.

When a party fails to comply with Rule 38, Rule 39 gives a court discretion to order a jury trial.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                          Page   7
(Cite as: 2003 WL 21415323, *5 (S.D.N.Y.))

Fed.R.Civ.P. 39(b). *But see Budeiri v. Lever Bros. Co.*, No. 92 Civ. 4293, 1994 WL 494869, at *2 (S.D.N.Y. Sept.9, 1994) ("Rule 39 is by no means intended to offer an alternative to Rule 38."). That discretion, however, has been strictly limited by the Second Circuit. [FN18] In *Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 70 (2d Cir.1967) (Friendly, J.), the Circuit Court held that mere inadvertence in failing to make a timely jury demand is not sufficient for the Court to exercise its Rule 39(b) discretion. [FN19] *See also Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389, 392 (2d Cir.1983); *Byrd v. City of New York*, 75 F.Supp.2d 232, 234 (S.D.N.Y.1999) (Sprizzo, J.); *Sait Elecs., S.A. v. Schiebel*, 846 F.Supp. 17, 18 (S.D.N.Y.1994); *Richards v. Procter & Gamble Mfg. Co. .*, 753 F.Supp. 71, 74 (E.D.N.Y.1991) ("It is well settled in this Circuit that mere inadvertence is not a sufficient ground for the exercise of the Court's discretion under Rule 39(b) ."); *Lund v. Chemical Bank*, 126 F.R.D. 481, 482 (S.D.N.Y.1989); *Alvarado v. Santana-Lopez*, 101 F.R.D. 367, 368 (S.D.N.Y.1984) ("The rule in this circuit for deciding Rule 39(b) motions in cases originating in federal court is quite clear and strict: something beyond the mere inadvertence of counsel is required to relieve a party from its waiver."). In this matter, Hirschfeld has made no showing whatsoever that his failure to demand timely a jury trial was the result of anything more than mere inadvertence. [FN20] *Cf. Byrd*, 75 F.Supp.2d at 233 . In fact, there is some indication that a conscious decision was made by one of his prior attorneys not to make such a demand. *Cf. Washington*, 709 F.2d at 798; *Sait Elec., S.A. v. Schiebel*, 846 F.Supp. 17, 18 (S.D.N.Y.1994); *Davidson Pipe Co., Inc. v. Laventhol & Horwath*, 125 F.R.D. 363, 371 (S.D.N.Y.1989) ("[C]ourts have frequently rejected late jury demands that seem to be based merely on a change in litigation strategy."); *see also Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.R.D. 15, 18 (N.D.N.Y.1995) ( "[T]here is simply no 'new counsel' exception to the *Noonan* test."). Therefore, this Court must deny his Rule 39(b) request. [FN21]

FN18. There is somewhat more leeway when a case was originally filed in state court and subsequently removed to federal court. *See Higgins v. Boeing Co.*, 526 F.2d 1004 (2d Cir.1975). That is not the situation in the action at bar.

FN19. The *Noonan* panel was merely recognizing

the overwhelming trend of the district courts limiting Rule 39(b). *See Noonan*, 375 F.2d at 70 ("The effect of such a continued and consistent course of decision is to narrow the allowable scope of discretion; the area open to the judge's discretion has shrunk to determining whether the moving party's showing beyond mere inadvertence is sufficient to justify relief."); *see also Cataldo v. E.I. Du Pont De Nemours & Co.*, 39 F.R.D. 305, 308 (S.D.N.Y.1966) ("It is well settled in this district that the mere fact that the waiver of a jury trial was inadvertent is insufficient as a ground for the court to exercise its discretion and relieve a party from that waiver.").

FN20. Indeed, he makes no attempt to explain the delay. Instead, defendant cites cases stating that waiver should not be lightly inferred. *See Tray-Wrap*, 984 F.2d at 68; *Lovelace v. Dall*, 820 F.2d 223, 227- 29 (1987); *Fields Eng'g & Equip., Inc. v.. Cargill, Inc.*, 651 F.2d 589, 592 (8th Cir.1981). What Hirschfeld fails to recognize is that these cases are based on Rule 39(a), which only takes effect when the parties have made a timely jury demand and then there is a subsequent alleged waiver of that right. *See* Fed.R.Civ.P. 39(a); *see also Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 797 (2d Cir.1983) (Kearse, J.) (rejecting a similar argument because the jury demand was untimely and therefore inadvertently waived); 9 Wright & Miller, Federal Practice and Procedure § 2321, at 163-64. Defendant also argues, without citation, there are several issues of fact that can only be decided by a jury. This proposition is of course not so if defendant has waived his right to a jury trial, as is the case here. The Court will be the trier of fact. Hirschfeld further contends that granting a jury trial at this stage would not prejudice the plaintiff. The Court agrees that plaintiff's protestations of prejudice ring hollow in this particular case, especially given the decision to allow more discovery. *See Liriano v. Hobart Corp.*, 162 F.R.D. 453, 456 n. 4 (S.D.N.Y.1995); *Sichel v. Nat'l R.R. Passenger Corp.*, No. 91 Civ. 1753, 1993 WL 15459, at *3 (S.D.N.Y. Jan.8, 1993); *Elgarhi v. Dreis & Krump Mfg. Co.*, 131 F.R.D. 429, 430 (S.D.N.Y.1990) (stating that more than conclusory claims of prejudice are necessary); *Unger v. Cunard Line, Inc.*, 100 F.R.D. 472, 473-74 (S.D.N.Y.1984) ("[A party's] mere asseveration of this shibboleth, however, without any substantiation of how it has done anything differently or how it will be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



prejudiced does not move this Court...."). However, that does not excuse defendant's failure to show more than mere inadvertence.

FN21. It is of no import to this decision that defendant was at times a *pro se* litigant. *See Washington,* 709 F.2d at 798 ("The operation of the Rule imposes no greater burden on pro se litigants than on represented litigants, as the unintentional or unknowing failures of all litigants to comply with Rule 38 are dealt with equally."); *Byrd,* 75 F.Supp.2d at 233 (stating that "the liberal standard for *pro se* pleadings does not extend to requests for jury trials"); *Kahn v. Gen. Motors Corp.,* 865 F.Supp. 210, 213 (S.D.N.Y.1994) (stating that "*pro se* litigants are not treated differently with regard to waiver of jury trial"). *But see Washington,* 709 F.2d at 799 (Oakes, J., dissenting) (arguing that *pro se* litigants should not be found to have waived their jury trial right absent some notification). Even so, it is worth noting that defendant was not *pro se* at the time he waived his jury trial right.

*6 Hirschfeld could have also brought this motion under Rule 6(b)(2), which gives the Court discretion to enlarge the time in which a party is required to do something upon a showing of excusable neglect. Fed.R.Civ.P. 6(b)(2). In *Raymond v. Int'l Bus. Mach.,* 148 F.3d 63 (2d Cir.1998), the Second Circuit affirmed the district court's decision to allow a litigant to serve an untimely jury demand. The Circuit Court said such a decision is based on excusable neglect and not the more stringent *Noonan* test. *Id.* at 66. Even if defendant had moved under Rule 6(b)(2), however, the Court would have denied the motion because he has provided no reason whatsoever for his failure to make a timely demand. [FN22] *See Garcia v. United States Postal Serv.,* No. 98 Civ. 9152, 2001 WL 102349, at *1 (S.D.N.Y. Feb.7, 2001) (stating that "the absence of any reason for [defendant's] failure to demand a jury in a timely manner weigh[s] against exercising Rule 6(b) discretion; *Byrd,* 75 F.Supp.2d at 234 ("At a minimum, even under Rule 6(b)'s more liberal test, [defendant] must proffer some reason for [his] failure to file a timely demand."). Doing so "here would be tantamount to ignoring the time limits set forth in Rule 38(b) in their entirety." *Garcia,* 2001 WL 102349, at *1.

FN22. Perhaps Hirschfeld might have argued that his imprisonment was the reason for his failure, but that

is not sufficient for a finding of excusable neglect, especially given that he was represented by counsel during the time he should have made his jury demand.

It would certainly be the Court's preference to try this case to a jury if *Noonan* and its progeny had not limited the exercise of discretion. [FN23] However, "[j]udicial power is never exercised for the purposes of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or, in other words, to the will of law." *Paper Stylists,* 9 F.R.D. at 6. Defendant's request for a jury trial is denied. [FN24]

FN23. Some courts and commentators have argued that Rule 39(b) should not be as limited as it is in this Circuit. *See, e.g., Lund,* 126 F.R.D. at 482 (S.D.N.Y.1989) (and cases cited therein); 9 Wright & Miller, Federal Practice and Procedure § 2334, at 189.

FN24. In her opposition, plaintiff contends that defendant would turn any jury trial into a circus. Since her concern appears to be based on Hirschfeld's alleged desire for free publicity, the Court fails to see how a bench trial would make any difference in this regard. In any event, the Court is quite confident in its ability to maintain order and the proper decorum during any trial of this case.

B. Motion to Dismiss for Failure to Join an Indispensable Party

Defendant may have also moved to dismiss the complaint for failure to join an indispensable party. It is unclear to the Court because it appears to be unclear to the defendant. The Notice of Motion states that he is moving "to be granted, and/or be given permission to move for: ... dismissal pursuant to Rule 12(b)(7), for failure to join a Rule 19 (indispensable) party(ies)." His memorandum of law in support of the motion is silent on the issue. In his supporting affidavit, as part of his request for more discovery, Hirschfeld states that he needs "to ascertain what [plaintiff's former lawyers'] interests are and determine whether they should be involved in this case." Hirschfeld Aff. ¶ 4(b). In the same affidavit, he later states, "In the event this Court allows me to re-open discovery and upon the completion of such discovery, as I have requested, I would like to move to dismiss pursuant to Fed. R.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: 2003 WL 21415323, \*6 (S.D.N.Y.))**

Civ. Pro., Rule 12(b)(7), for failure to join a Rule 19 (indispensable) party(ies)...." *Id.* ¶ 26. In opposition to defendant's motion, plaintiff includes a discussion of why the action should not be dismissed for Rule 12(b)(7) reasons. Finally, in his reply memorandum of law, defendant writes at length about why the action should be dismissed for failure to join an indispensable party. [FN25]

> FN25. Two different attorneys wrote the moving memorandum of law and the reply brief, which likely explains their incongruent nature.

\*7 Because of this confusion, to the extent that there is a Rule 12(b)(7) motion, it is denied without prejudice. To the extent that defendant is moving for permission to bring a Rule 12(b)(7) motion, that permission, while not required, is granted.

CONCLUSION
Based on the foregoing, plaintiff's motion for summary judgment is denied without prejudice, defendant's cross-motion for summary judgment is denied without prejudice, defendant's motion to re-open discovery is considered a Rule 56(f) application and is granted, defendant's motion for a jury trial is denied, and defendant may move for dismissal under Rule 12(b)(7). All discovery must be completed by September 19, 2003. The parties are ordered to appear for a status conference on July 24, 2003, at 11:00 A.M.

SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 21415323 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

. 1:01CV07585 (Docket)
(Aug. 15, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 37658 (N.D.Ill.)
**(Cite as: 1990 WL 37658 (N.D.Ill.))**
c

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
Leopoldo LASTRE, Plaintiff,
v.
Officer D. LEONARD, Defendant.
No. 89 C 1784.

March 21, 1990.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

**\*1** Leopoldo Lastre sues Officer D. Leonard
pursuant to 42 U.S.C. § 1983 for injuries he
suffered arising out of an exchange between Lastre
and several Chicago police officers, including
Leonard.    Trial is set for April 2, 1990. Both
parties filed numerous motions *in limine* with the
final pretrial order.   [FN1]   A motion *in limine*
serves to prevent the jury from hearing evidence that
is inadmissible.   Motions *in limine* should refer to
the Federal Rule of Evidence under which the
movant seeks to preclude evidence.

Both parties abused the pretrial motion process.
Plaintiff presents twenty-four motions in limine,
seventeen of which cite only state law, and the rest
cite no governing law.   Plaintiff's first seventeen
motions are stricken. The remaining seven will be
addressed to the extent they implicitly rely on the
federal rules.   Defendant presents twelve motions,
the final three of which are requests for jury
instructions and a motion to dismiss in disguise.
The time for filing dispositive motions has passed.
The time for arguing for jury instructions has not
yet come.   Defendant's final three motions are
stricken.   Defendant's first nine motions will be
considered to the extent they are properly brought.

Lastre's Motions *in Limine*

# 18: Leonard joins Lastre in moving to exclude all
non-party witnesses from the courtroom while other
witnesses are testifying.   The motion is granted.
Each party is responsible for witness compliance.

# 19: Lastre moves to prevent Leonard from asking

questions as to whether Lastre's attorneys suggested
that Lastre be treated by a physician of the
attorney's choice.     A trial court has broad
discretion to determine the relevance of proffered
evidence.   *United States v. Laughlin,* 772 F.2d
1382, 1392 (7th Cir.1985).   It is inappropriate to
exclude evidence as irrelevant without the context of
trial, especially where neither party argues how such
evidence may or may not be relevant.   The motion
is denied.

# 20: Lastre moves to exclude evidence of his
previous arrests.   Evidence of felony convictions or
of a crime involving dishonesty or false statement is
admissible in a civil action.   Fed.R.Civ.P. 609(a);
*Green v. Bock Laundry Mach.,* 109 S.Ct. 1981
(1989).    However, the court cannot determine
whether specific convictions meet the criteria for use
under Rule 609 until trial.   The motion is denied
without prejudice.

# 21: Lastre moves to exclude defense witnesses
from testifying about Lastre's physical condition
because Leonard failed to disclose three experts
prior to the final pretrial order.   Lastre submitted
his interrogatories to discover Leonard's experts on
November 17, 1989.    The discovery deadline was
November 22, 1989.    Discovery requests not
scheduled for completion before the discovery
closing date, do not comply with the court's
standing pretrial order.   N.D.Ill.Gen.R.  5.00,
Standing Order ¶ 3.   Lastre's interrogatories were
untimely and Leonard had no responsibility to
disclose his experts.   Minute order of December 19,
1989.   The motion is denied.

**\*2** # 22: Lastre moves to exclude the testimony of
Officer Gaski because he failed to respond and
appear pursuant to a subpoena.    The motion to
compel his appearance was denied as untimely.
Minute order of December 19, 1989.   The motion
is denied.

# 23: Lastre moves to exclude all witnesses not
identified in discovery.   This motion is stricken as
insufficiently specific.     Objections to individuals
not named in the final pretrial order may be made at
trial.

# 24: Lastre moves to exclude all persons identified

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

as "keeper of the records" in the final pretrial order. Leonard seeks to call these witnesses to lay a foundation for certain documents. The motion is denied.

### Leonard's Motions *in Limine*

# 1: Leonard moves to preclude Lastre from making any reference to the claims of municipal liability contained in Count IV of Lastre's amended complaint or to any liability of the City of Chicago. Lastre makes no objection to this motion. The motion is granted.

# 2 & # 3: Leonard moves to exclude the existence of other civilian complaints against Leonard and the disciplinary record of Leonard, arguing that such evidence is inadmissible under Fed.R.Evid. 402, 403, and 802. Lastre seeks to admit this testimony as direct evidence of Leonard's state of mind and the circumstances of Lastre's arrest. Use of past conduct evidence is inadmissible except for narrow exceptions. Fed.R.Evid. 404(b). At issue here is only Leonard's conduct in connection with Lastre. Evidence of other civilian complaints against Leonard and Leonard's disciplinary record is excluded. The motions are granted.

# 4: Leonard moves to exclude the testimony of Dr. Paul Jones and Dr. Marsha Horwitz to the extent Lastre seeks to call them as expert witnesses. Leonard argues that the identity of Drs. Jones and Horwitz should have been disclosed in response to discovery requests for expert witnesses. Parties have a continuing obligation to identify expert trial witnesses under Rule 26(e) in order to carry out the provisions of Rule 26(b)(4). Fed.R.Civ.P. 26(e) advisory committee's notes to 1970 amendments, *reprinted at* 48 F.R.D. 487, 508. Expert witnesses under Rule 26(b)(4) are witnesses whose information is acquired in preparation for trial. Fed.R.Civ.P. 26(b)(4) advisory committee's notes to 1970 amendment, *reprinted at* 48 F.R.D. 487, 503. Drs. Jones and Horwitz are Lastre's treating physicians and were not retained only for trial purposes. Moreover, Lastre claims he timely disclosed the identity of Drs. Jones and Horwitz and Leonard deposed them. Consequently, Lastre is not barred from calling Drs. Jones and Horwitz as expert witnesses. The motion is denied.

# 5: Leonard moves to exclude any reference to

defendant's attorneys as Assistant Corporation Counsel of the City of Chicago as unduly prejudicial. Leonard does not explain what is prejudicial about this reference. Lastre contends that the reference is a fact. Leonard's motion is denied, but Lastre's counsel is advised that the office affiliation of the parties' counsel should not be made an issue at trial. The motion is denied.

*3 # 6 & # 7: Leonard moves to exclude plaintiff's exhibits numbers 1, 4, and 5 as irrelevant and all other photographs of scenes or incidents not relevant to Lastre's claims. Leonard also moves to exclude the written statements of Joseph Masibay and Barbara Gannon as hearsay. Neither party submits the photographs or written statements at issue. A trial court has broad discretion to determine the relevance of proffered evidence. *United States v. Laughlin,* 772 F.2d 1382, 1392 (7th Cir.1985). It is inappropriate to exclude evidence as irrelevant without the context of trial, especially where neither party has submitted the evidence at issue and suggested how such evidence may or may not be relevant and properly authenticated. Leonard's motions to exclude photographs and written statements are denied without prejudice.

# 8: Leonard moves to exclude the complaint filed in *Henderson v. Leonard, et al.,* 88 C 10736 (N.D.Ill.1989). Use of past conduct evidence is inadmissible except for narrow exceptions. Fed.R.Evid. 404(b). Moreover, a complaint is not evidence but merely unproven allegations. At issue here is only Leonard's conduct in connection with Lastre. Use of other civilian complaints against Leonard, including the complaint in *Henderson v. Leonard,* is excluded. The motion is granted.

# 9: Leonard moves to exclude the testimony of Gillian Henderson. Lastre contends that Henderson was an occurrence witness and was previously disclosed to Leonard. The motion is denied.

### CONCLUSION

Leopoldo Lastre's motions # 1 to # 17, and # 23 are stricken. Leopoldo Lastre's motion # 18 is granted; non-party witnesses will be excluded from the courtroom while other witnesses testify. Leopoldo Lastre's motions # 19 to # 22, and # 24 are denied.

Officer D. Leonard's motions # 1 to # 3, and # 8

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
**(Cite as: 1990 WL 37658, \*3 (N.D.Ill.))**

are granted.    Evidence of municipal liability, prior complaints and the disciplinary record of Officer D. Leonard, and the complaint in *Henderson v. Leonard* are excluded.    Officer D. Leonard's motions # 4 to # 7, and # 9 are denied.   Officer D. Leonard's motions # 10 to # 12 are stricken.

> FN1. Only Lastre's original motion and Leonard's amended motion will be considered here. Leonard's amended motion includes all of his original motion.

Not Reported in F.Supp., 1990 WL 37658 (N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    **Page   1**
Not Reported in F.Supp.2d, 2002 WL 31415624 (S.D.N.Y.)
**(Cite as: 2002 WL 31415624 (S.D.N.Y.))**
H

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
BREFFKA & HEHNKE GMBH & CO., as
underwriters of Stemcor USA, Inc. and/or Fetasa
Tijuana SA DE C.V., as subrogees, Plaintiffs,
v.
M/V/ GLORIOUS SUCCESS, her engines, boilers,
tackle etc.; Pan Ocean Shipping
Co. Ltd.; Hanseatic Maritime Phillipines Corp. and
Mitsui O.S.K. Lines Ltd.,
Defendants.
No. 01CIV10599JFKMHD.

Oct. 28, 2002.

Plaintiff in cargo case moved to compel further document production, interrogatory answers and depositions from defendants. The District Court, Michael H. Dolinger, United States Magistrate Judge, held that: (1) defendants did not have to produce vessel's ventilation log or survey report; (2) where defendants did not produce temperature records for hold, pursuant to plaintiffs' discovery request, defendants had to provide affidavit by person with personal knowledge of facts attesting to lack of equipment on vessel that would provide temperature readings for hold; (3) although defendants allegedly failed to produce requested temperature records for hold to plaintiffs in cargo case, order precluding defendants from offering any evidence of temperatures in hold and imposing an adverse inference with respect to temperatures was not warranted; (4) defendants had to produce documents, including vessel's engine log, records of other cargo claims from voyage, correspondence and notes pertaining to voyage, and classification society file for vessel within three weeks or serve and file affidavit by representative with knowledge of facts attesting that documents were not available to defendants; (5) defendants did not have to answer untimely fact interrogatories, but they needed to respond to contention interrogatories; (6) since captain of vessel was no longer employed by defendants, no basis existed for compelling defendants to produce him for deposition; and (7) plaintiffs waived right to require production of

vessel's chief mate for deposition.

Motion granted in part, and denied in part.

West Headnotes

[1] Federal Civil Procedure ⟨⟩ 1581
170Ak1581 Most Cited Cases
Ventilation log of vessel did not have to be produced to plaintiffs in cargo case, in light of defendants' representation that they had produced all documentation available to them that was responsive to request; if plaintiffs had doubts about completeness of production, they could have deposed knowledgeable employee concerning defendant's document retention practices and search for document before close of discovery.

[2] Federal Civil Procedure ⟨⟩ 1594
170Ak1594 Most Cited Cases
Survey report did not need to be produced to plaintiffs in cargo case following completion of fact discovery, in light of defendant's representation that such document did not exist.

[3] Federal Civil Procedure ⟨⟩ 1636.1
170Ak1636.1 Most Cited Cases
In cargo case, where defendants did not produce temperature records for vessel's hold, pursuant to plaintiffs' discovery request, defendants had to provide affidavit by person with personal knowledge of facts attesting to lack of equipment on vessel that would provide temperature readings for hold.

[4] Federal Civil Procedure ⟨⟩ 1636.1
170Ak1636.1 Most Cited Cases
Although defendants allegedly failed to produce requested temperature records for hold to plaintiffs in cargo case, order precluding defendants from offering any evidence of temperatures in hold and imposing an adverse inference with respect to temperatures was not warranted.

[5] Federal Civil Procedure ⟨⟩ 1581
170Ak1581 Most Cited Cases
Defendants in cargo case were required to produce requested documents to plaintiff, including vessel's engine log, records of other cargo claims from voyage, correspondence and notes pertaining to voyage, and classification society file for vessel

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

(Cite as: 2002 WL 31415624 (S.D.N.Y.))

within three weeks or serve and file affidavit by representative with knowledge of facts attesting that documents were not available to defendants.

[6] Federal Civil Procedure 1506
170Ak1506 Most Cited Cases

[6] Federal Civil Procedure 1512
170Ak1512 Most Cited Cases
Defendants in cargo case did not have to answer set of interrogatories that sought list of individuals with knowledge of facts, but they did need to respond to plaintiffs' contention interrogatories; fact interrogatories, which were served only two and one-half weeks before end of fact discovery, were untimely, and it was too late to depose any individuals identified in list.

[7] Federal Civil Procedure 1323.1
170Ak1323.1 Most Cited Cases
Since captain of vessel involved in cargo case was no longer employed by defendants, no basis existed for compelling defendants to produce him for deposition.

[8] Federal Civil Procedure 1342.1
170Ak1342.1 Most Cited Cases
Plaintiffs in cargo case waived right to compel deposition of vessel's chief mate, by not taking any steps to depose him during fact discovery period despite being made aware of his schedule on two occasions.

*MEMORANDUM & ORDER*

DOLINGER, Magistrate J.

**\*1** Five days after the close of fact discovery, plaintiffs have moved to compel further document production, interrogatory answers and depositions from defendants. For the reasons that follow, the motion is granted in part and denied in part.

The court has conducted a number of conferences, both in person and by telephone, to address a series of problems encountered by the parties-- principally defendants--in obtaining discovery in this cargo case. The deadline for completion of fact discovery throughout remained September 27, 2002, despite extensive delays in production by plaintiffs. During this process, we have also called upon plaintiffs' counsel to indicate the posture of his clients'

discovery efforts, to ensure that any lingering disputes that plaintiffs may have had with respect to defendants' performance be addressed. (*See, e.g.,* Aug. 21, 2002 Tr. at 13).

Although counsel alluded on one occasion in the vaguest of terms to the need to complete production of documents and depose a witness (*id.*), he waited until a telephone conference on September 30, 2002 to indicate for the first time that he was still seeking document production and had not taken depositions of the defendants, assertedly because of derelictions on the part of his adversaries. In response we authorized him to file a motion to compel, which he did two days later. Plaintiffs now complain that they have been denied several categories of documents and have not been afforded depositions of certain individuals connected to the vessel at issue in the case. They also note a recently served set of interrogatories, to which defendants have objected.

Defendants have opposed the motion. They contend that they have produced all of the pertinent documents in their possession, that the interrogatories are untimely and that plaintiffs never pursued depositions despite early notification of the location and schedules of the one available crew member in whom they had expressed interest.

Plaintiffs' motion is plainly deficient in that their counsel does not represent that he sought to resolve his current disputes with defendants in a timely fashion, or indeed at all. In fact, we view the timing and substance of this motion as of a piece with plaintiffs' prior performance in discovery, the deficiencies of which we have previously noted. ( *See, e.g.,* Endorsed Order dated Sept. 19, 2002; Aug. 21, 2002 Tr. at 13-14). Nonetheless, there are a few items of information that defendants can presumably supply even at this late stage that may be helpful to plaintiffs and will not unduly disrupt the current schedule, which calls for the close of expert discovery by November 15, 2002 and submission of a joint pre-trial order by December 2, 2002.

[1] We first address documents. Plaintiffs ask for production of a ventilation log. Defendants represent, as they have long before, that they have produced all documentation available to them that is responsive to this request. (Affidavit of Edward A. Keane, Esq., sworn to Oct. 15, 2002, at ¶¶ 18- 19

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

(Cite as: 2002 WL 31415624, *1 (S.D.N.Y.))

& Ex. J). Nothing further is required at this point. We also note that if plaintiffs had some doubts about the completeness of this production, they were free to depose a knowledgeable employee of Hanseatic concerning document retention practices and the search for this specific document.

*2 Plaintiffs also demand the general arrangement plan for the vessel. Hanseatic has offered this document to plaintiffs (*id.* at ¶ 20), and there is accordingly no basis for further relief. Defendant has also made available the ventilation plan and the capacity plan, thus mooting other current demands of the plaintiffs. (*Id.*).

Additional documents now sought by plaintiffs were apparently made available as long ago as July 2002. (*Id.* at ¶ 21). Again, there is no occasion for ordering additional relief with respect to such items.

[2] Plaintiffs also seek production of an Anchorage survey report, despite being told that none existed. (*See id.* at ¶ 22 & Ex. K). Hanseatic reiterates that representation in response to the motion (*id.* at ¶¶ 22, 24; *see also* Affidavit of Christopher H. Mansuy, Esq., sworn to Oct. 15, 2002, at ¶ 8), and under the circumstances no further relief is warranted.

[3] Plaintiffs further complain about the non-production of temperature records for the hold during the journey from Anchorage to Ensenada. Their attorney claims that a surveyor had the specific temperatures listed on a sheet of paper, which counsel now proffers on his motion, and on that basis he disputes Hanseatic's contention that there was no equipment on board that would provide such readings. (*Compare* Declaration of Steven P. Caulkins, Esq., executed Oct. 1, 2002, at ¶ 12 & Ex. 13 *with* Keane Aff. at ¶ 25).

[4] Had plaintiffs mentioned this contention before September 30, 2002, the matter could presumably have been resolved in an orderly fashion. In any event, we will direct that Hanseatic provide an affidavit by a person with personal knowledge of the facts attesting to the lack of such equipment on the vessel, if that be the case, as their attorney represents. This is to be done within two weeks. At the same time we deny plaintiffs' unwarranted request for an order precluding defendants from offering any evidence of temperatures in the hold

and imposing an adverse inference with respect to temperatures. (*See* Reply Declaration of Steven P. Caulkins, Esq., executed Oct. 22, 2002, at ¶ 5).

[5] The balance of plaintiffs' requests for documents seek the engine log, records of other cargo claims from this voyage, correspondence and notes pertaining to this voyage, and the classification society file for the vessel. (*Id.* at ¶ 4). Since defendants have not specifically addressed these items, we direct that they produce these documents within three weeks or serve and file an affidavit by a representative with knowledge of the facts attesting that the documents are not available to defendants.

[6] Plaintiffs also seek an order compelling answers to a set of interrogatories that they served on or after September 9, 2002. The interrogatories seek *inter alia* a list of all individuals with knowledge of the facts. (Caulkins Decl., Ex. 14). They also pose contention interrogatories concerning the affirmative defenses asserted by defendants. (*Id.*).

*3 The fact interrogatories are untimely since they were served only two and one-half weeks before the end of fact discovery. Also, insofar as they seek identification of people with knowledge, we can only infer that plaintiffs are well aware by now of the identity of such individuals. In any event, it is too late to depose them now. Insofar as plaintiffs' counsel suggests that he is simply seeking a list of potential trial witnesses, that information will have to be conveyed by defendants in the course of the preparation of the joint pre-trial order. Finally, we direct that defendants respond within thirty days to plaintiffs' contention interrogatories.

[7][8] Plaintiffs also complain now about the purported failure of Hanseatic to provide a deposition of the captain and the chief mate of the vessel. In fact, defendant advised plaintiff last Spring that the master was no longer employed (Keane Aff., Ex. C), and then by letter dated June 19, 2002 also provided the sailing schedule for the chief mate, who was on the high seas constantly except for a limited number of days in specified overseas ports. (*Id.,* Ex. E). Although defendant offered at the time to arrange a deposition at the vessel, plaintiffs' counsel never responded. Significantly, when defendant's counsel mentioned at the August 21, 2002 conference that plaintiff had

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
**(Cite as: 2002 WL 31415624, \*3 (S.D.N.Y.))**

Page   4

not sought to schedule such a deposition, plaintiff's attorney professed not to have seen the letter (*see* Keane Aff., Ex. G), [FN1] but after defendant again sent him the mate's schedule on August 23 (*id.,* Ex. G), he still took no action to arrange for a deposition.

> FN1. Counsel admitted that his partner had seen the document, but had apparently lost it. (*Id.*).

 Since the captain is not employed by defendant, there is no basis for compelling a deposition of him. As for the chief mate, plaintiffs have slept on their rights and thus waived any deposition.

 Having reviewed the balance of the motion papers, we see no other discovery that plaintiffs have timely pursued and are entitled to at this stage. Accordingly, the balance of their motion is denied.

   Motions, Pleadings and Filings (Back to top)

.1:01CV10599(Docket)
(Nov. 21, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

