# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | |
| *International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca Pharmaceuticals, L.P., et al.; C.A. No. 04-11503-PBS* | Judge Patti B. Saris |

### MOTION BY PLAINTIFF, INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND, FOR IMMEDIATE REMAND BASED UPON DECLARATIONS OF DEFENSE COUNSEL OR, IN THE ALTERNATIVE, MOTION TO RECONSIDER MEMORANDUM AND ORDER OF AUGUST 19, 2005 THAT PERMITTED DISCOVERY ON ISSUE OF ALLEGED FRAUDULENT JOINDER

International Union of Operating Engineers, Local No. 68 Welfare Fund (hereinafter "Plaintiff" or "Local 68") hereby moves this Court for immediate disposition and granting of Plaintiff's Motion for Remand based upon the Response of AstraZeneca Pharmaceuticals LP to Court Order dated August 19, 2005, with supporting Declarations of D. Scott Wise, Eric D. Gill and John C. Dodds ("Response of AstraZeneca"). In the alternative, Plaintiff respectfully requests that this Court reconsider its Memorandum and Order of August 19, 2005, permitting AstraZeneca Pharmaceuticals LP ("AstraZeneca") to conduct discovery concerning its contention that the defendant doctors were fraudulently joined, and grant remand without awaiting the completion of the 60-day discovery period.

This Court's Memorandum and Order of August 19, 2005 provides:

> It appears that the investigation undertaken by AstraZeneca's attorneys before filing the notice of removal either revealed nothing about the

> consent of the doctors or revealed that the doctors explicitly did not consent. Within 30 days, AstraZeneca shall submit an affidavit **explaining the factual basis for its statement in the notice that "all defendants will consent to this removal and join herein following the service of process."** Counsel shall also inform the Court whether he disputes the statements made by the doctors' lawyers.

*See* Memorandum and Order of August 19, 2005 at 4 (emphasis added). Counsel executing the required Declarations on behalf of AstraZeneca ignore this directive from the court. Instead, they "inform the Court" about mistaken beliefs, unfounded assumptions and innuendo centered largely around issues of service upon numerous defendants which, they claim, somehow supports their affirmative representations to this Court about consent to removal.[1] Counsel's effort to retrench from their unambiguous representation to the Federal District Court on July 3, 2003 that "all defendants will consent to this removal" is unavailing, and as a result, their failure to "explain() the factual basis for [their] statement" in support of removal should be dispositive of the matter at this juncture – now some twenty-seven (27) long months since this case was improperly removed to federal court.

---

[1] *See* Declaration of D. Scott Wise (hereinafter "Wise Declaration") at ¶ 5(a) ("we did not believe that delivery of the summons and complaint in this manner would be effective service under New Jersey law"), at ¶ 5(b) ("the purpose of my inquiry was to determine whether any defendant had been served (and thus whether their consent was required)"), at ¶ 5(d) ("we concluded, on July 3, 2003, that we did not need Dr. Berkman's or Dr. Hopkins' consent"), at ¶ 5(g) ("we were advised by New Jersey counsel that [the method used for service] was not proper service under New Jersey law"), at ¶ 7 ("we did not believe that the consent of the individual defendants was required for removal of this action on July 3, 2003, because they had not been properly served under New Jersey law"); and *see* Declaration of Eric D. Gill ("Gill Declaration") at ¶ 3 ("I asked Mr. Fernandez whether his client had been properly served"), at ¶ 4 ("[a]lthough Dr. Hopkins' consent to removal was not required under prevailing case law because he had not been served"), at ¶ 5 ("I asked Mr. Sherman whether his client had been properly served"), at ¶ 6 ("[a]lthough Dr. Berkman's consent to removal was not required under prevailing case law because he had not been served"), at ¶ 7 ("I did not believe that either Dr. Hopkins or Dr. Berkman had been properly served with the complaint").

2

Further, this Court appears to have determined that there may be Rule 11 consequences resulting from AstraZeneca's unequivocal statement that "all defendants will consent to this removal and join herein following the service of process" in the face of the doctors' counsel having explicitly advised AstraZeneca counsel that they <u>did not consent</u> after having accepted service of the Complaint. Certainly, a prudent investigation, as is required by Rule 11, should have sought to ascertain whether the doctors consented to removal and whether or not they had been served (or accepted service as was the case here). *See* Memorandum and Order of August 19, 2005 at 4 ("It appears that the investigation undertaken by AstraZeneca's attorneys before filing the notice of removal **either revealed nothing about the consent of the doctors** or revealed that the doctors explicitly did not consent.") (emphasis added).[2]

According to the Declarations of AstraZeneca's counsel, Mr. Wise did not speak to or receive communications from any of the counsel for the doctors. *See* Wise Declaration at ¶¶ 5(d), 5(f), 5(I) and 6 (respecting the fact that Mr. Gill spoke with Mr. Sherman and Mr. Fernandez and that Mr. Dodds spoke with Mr. Mustokoff). Mr. Gill fails to explain in his Declaration whether he asked Mr. Sherman if Dr. Berkman would consent to removal. As for Dr. Hopkins, Mr. Gill specifically states that he "**did not ask** Mr. Fernandez for Dr. Hopkins' consent." *See* Gill Declaration at ¶ 11 (emphasis added). According to Mr. Dodds, he "**first called** counsel for Dr. Antoun regarding this matter on July 8, 2003, several days **after** the notice of removal was filed." *See* Declaration of John

---

[2] As set forth below, counsel for AstraZeneca did not even have a good faith basis for believing that all corporate defendants would consent. Beyond the fact that none of the individual defendant doctors consented to removal after accepting service of the Complaint, the Declarations reveal that certain corporate defendants also did not affirmatively consent. Instead, AstraZeneca admits that it simply presumed consent based on the prior conduct of these parties *in other cases*. Presumed consent is not consent.

3

C. Dodds ("Dodds Declaration") at ¶ 5 (emphasis added). Thus, at the very least, the Declarations of counsel demonstrate a failure on their part to reasonably inquire of counsel for the doctors in advance of removal (and in advance of making an affirmative representation about the consent of all defendants) whether any of the doctors consented to removal of the case. Further, AstraZeneca's assumption that proper service had not been effectuated on Dr. Antoun, based solely upon AstraZeneca's inability to "locate any evidence that Mr. Mustokoff had appeared in any way on behalf of Dr. Antoun by July 3, 2003" falls far short of satisfying the prerequisite under Rule 11 for an affirmative statement that "all defendants [would] consent to this removal and join herein following the service of process".[3]

As previously-noted in Plaintiff's submissions, if defense counsel had timely contacted the doctors' attorneys about not only service but also consent, they would have discovered the lack of proper grounds for the removal. Neither Dr. Antoun nor Dr. Hopkins has challenged the service of the Complaint upon them and, more importantly, both have expressly refused to consent to removal. *See* Joinder of Defendant, Saad Antoun M.D., in Plaintiff's Motion for Remand, or, in the Alternative, Motion to Remand Pursuant to 28 U.S.C. § 1448, at ¶¶ 5-7; Joinder of Defendant, Stanley C. Hopkins, M.D., in Plaintiff's Motion for Remand, or, in the Alternative, Motion to Remand Pursuant to 28 U.S.C. § 1448. at ¶¶ 6-8.

---

[3]   AstraZeneca chose to rush to remove this case to federal court on July 3, 2003, it was not compelled to do so. Under 28 U.S.C. § 1446(b), pursuant to the first-served rule, AstraZeneca arguably had until July 31, 2003 to remove the case, as the first defendants were served on July 1, 2003. Thus, there was no excuse, other than its own haste and lack of reasonable diligence under Rule 11, for AstraZeneca's failure to conduct a good faith investigation in connection with seeking the requisite unanimity of consent and making affirmative representations about the sane to a federal court.

4

Additionally, the fact that certain corporate defendants may have consented to removal in other cases involving some, but not all, of the same defendants (but certainly not the same plaintiff) is not a valid basis upon which to represent to a federal court that these corporate parties would consent to removal in this case. *See* Wise Declaration at ¶ 5(c) ("[t]hose corporate defendants that did not expressly indicate their consent to removal of this case in response to my e-mail had previously consented to removal in virtually identical AWP-related cases. Accordingly, on July 3, 2003, I believed, based on these e-mail communications and the prior practice of these same corporate defendants in virtually identical cases, that all corporate defendants would consent to removal and join in the Notice of Removal once served."). No case is cited to this Court where "assumed consent" based on prior practice has been deemed sufficient to satisfy the rule of unanimity.

Whether Rule 11 sanctions are warranted is a matter for this Court to determine. Plaintiff's interest is in seeing that the substantial prejudice, which a more than two-year delay in the prosecution of its case has caused, finally comes to an end. By virtue of AstraZeneca's failure to support its statement in its Notice of Removal that "all defendants will consent to this removal and join herein following the service of process," through Affidavits as requested by this Court, demonstrates that the rule of unanimity was not satisfied at the time of removal. *See In re Pharmaceutical Industry Average Wholesale Price Litig. (Swanston)*, 307 F. Supp.2d 190 (D. Mass. 2004). Therefore, immediate remand is warranted.

While the undersigned respectfully submits that the record now before the Court makes clear that remand is warranted – and no amount of discovery of the individual defendants can change the fact that AstraZeneca did not have the consent of certain corporate defendants at the time it removed the case – Plaintiff respectfully submits that the Court's leave to conduct discovery on the "fraudulent

5

joinder" issue should be reconsidered and rescinded, in light of the inappropriate discovery AstraZeneca has propounded. *See* Notices of Subpoenas Ad Testificandum and Duces Tecum issued to Messrs. Mustokoff, Sherman and Fernandez and the First[4] Requests for Production of Documents to Plaintiff, and Drs. Antoun, Berkman and Hopkins served last week, attached as Exhibits "A" through "G," respectively. In reviewing what a removing party must demonstrate in order to support a determination that a party was fraudulently joined, this Court has looked to the Second Circuit, which articulated the following test:

> "In order to show that naming a non-diverse defendant[5] is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, *or* that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court."

*Mills v. Allegiance Healthcare Corp.*, 178 F. Supp.2d 1, 5 (D. Mass. 2001)(Saris, J.) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001))(emphasis in original). From a look at the discovery being sought, AstraZeneca does not appear to be alleging that Local 68, and the class it seeks to represent, does not state a cause of action against defendant doctors; rather, AstraZeneca's discovery is directed at communications among counsel for the Plaintiff and the

---

[4] As AstraZeneca waited so long to issue its discovery, it is clear that there will not be time within the sixty (60) days allotted by the Court for discovery, for their to be a "Second," or subsequent requests for production.

[5] As a threshold matter, since <u>two of the defendant doctors which AstraZeneca claims were fraudulently joined are diverse</u> – Dr. Berkman is from Ohio and Dr. Hopkins is from Florida – they clearly were not fraudulently joined to defeat diversity. These defendants <u>created diversity</u>. Moreover, as the subject removal by AstraZeneca was based on federal question jurisdiction, the doctrine of fraudulent joinder to defeat diversity is wholly inapplicable.

defendant doctors about the possibility of settlement, and Plaintiff's motivation for suing the doctors.[6] *See* Response of AstraZeneca at Wise Declaration at ¶ 5(j) (referencing "two other AWP-related cases filed by Plaintiffs' counsel [in which] certain individual defendants refused to consent to removal and then settled with Plaintiffs' counsel for no apparent consideration other than cooperation" and referencing that "[i]t was not until after Plaintiff[] filed [its] Motion to Remand on July 9, 2003, which was based in part on the denial of consent by Drs. Antoun, Berkman and Hopkins, that AstraZeneca began to suspect that these individuals or their counsel may have had settlement discussion[s] with Plaintiff['s] counsel and that they may have been named in a gambit to defeat removal"). *See also* Exhibits "A" through "G." The sole area of inquiry by AstraZeneca in its discovery is whether confidential settlement negotiations took place between counsel for the doctors and Plaintiff's counsel. The fact of settlement discussions – if they occurred – would not bolster AstraZeneca's claim of fraudulent joinder, it would undermine it. The fact of settlement discussions would provide objective proof of the *bona fides* of the claims against doctors, not the opposite.

As for discovery concerning plaintiff counsel's motivations, a similar allegation was lodged by the defendants in *Mills*, which this Court rejected. This Court stated:

> First, Defendants challenge Plaintiffs' motive in adding Claflin as a non-diverse party, claiming that Plaintiffs' counsel did not truly intend to secure a judgement. This argument misses the mark. **So long as the plaintiffs have an objectively valid basis for joining Claflin in the complaint, their subjective motivations are largely irrelevant....** Moreover, Defendants rest on Plaintiff counsel's statement that he only joined Claflin to facilitate discovery. Plaintiffs' counsel does not recall making that precise statement and denies that he did not intend to secure judgment against Claflin. Regardless, this off-hand comment

---

[6] AstraZeneca essentially claims that Plaintiff only joined the defendant doctors because Plaintiff allegedly anticipated that it could defeat federal question jurisdiction by naming these doctors as defendants and persuading them to not consent to, or to actively oppose removal, through offers of settlement or otherwise. *See* Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Remand, filed on May 6, 2005, at pp. 5-6, 12-14.

7

> is not tantamount to clear and convincing evidence that Plaintiffs have a bad faith motivation or fraudulent intent to defeat removal jurisdiction.

*Mills*, 178 F. Supp.2d at 6-7 (citations omitted) (emphasis added).[7] In the instant case, AstraZeneca's and the defendant doctors' guilty pleas in the sale of free samples of Zoladex® is an objective basis for naming them as defendants. Plaintiff's allegations against the defendant doctors are based, in part, upon their own affirmative representations that they committed criminal acts. AstraZeneca cannot meet its clear and convincing burden and the discovery it seeks will not assist it on this issue.

Further, AstraZeneca is not entitled to inquire about the details concerning any settlement discussions, as the same would be privileged and confidential. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). Thus, there is no reason to allow this discovery to go forward or to further delay the ruling upon remand based thereon.

---

[7] Although this Court denied remand in *Mills*, it was based upon defendants' argument that there was no possibility of success on the merits of plaintiff's claims against the non-diverse defendant. Here, AstraZeneca has not argued, nor has it sought discovery, in that regard. For example, AstraZeneca has not sought discovery whether Dr. Antoun actually committed the unlawful acts to which he pled guilty respecting a conspiracy with AstraZeneca.

8

WHEREFORE, Plaintiff respectfully requests that this Honorable Court rule immediately upon Plaintiff's Motion for Remand, without awaiting for AstraZeneca to conduct further discovery, and grant Plaintiff's Motion for Remand, sending this case, which has been awaiting a ruling on remand for over two years, back to the Superior Court of New Jersey, Monmouth County, where it belongs.

Respectfully submitted,

Date: *September 28, 2005*

Ronald J. Ranta, Esquire
**FISETTE & RANTA**
B.B.O. No. 411880
100 Cummings Center, Suite 221B
Beverly, MA 01915
978-927-8766 telephone
978-927-7082 facsimile

John E. Keefe, Jr., Esquire
Stephen T. Sullivan, Jr., Esquire
**LYNCH KEEFE BARTELS**
830 Broad Street
Shrewsbury, NJ 07702
732-224-9400 telephone
732-224-9494 facsimile

Donald E. Haviland, Jr., Esquire
TerriAnne Benedetto, Esquire
**KLINE & SPECTER**
1800 Chapel Avenue, Suite 302
Cherry Hill, NJ 08002
856-662-1180 telephone
856-662-1184 facsimile

Raymond A. Gill, Jr., Esquire
**GILL & CHAMAS**
655 Florida Grove Road
P.O. Box 760
Woodbridge, NJ 07095
732-324-7600 telephone
732-324-7606 facsimile
ATTORNEYS FOR PLAINTIFF AND THE CLASS

@PFDesktop\::ODMA/WORLDOX/W:/WDOX/DOCS/CLIENTS/001182/05175/LM066759.WPD