# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) |
| | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris |

### PLAINTIFFS' RESPONSE TO JOHNSON & JOHNSON'S MOTION TO DETERMINE THE SUFFICIENCY OF RESPONSES TO REQUEST FOR ADMISSIONS AND INTERROGATORIES CONCERNING REMICADE AND PROCRIT

Plaintiffs respectfully submit this Memorandum in response to the Johnson & Johnson Defendants' ("J&J") Motion to compel the Plaintiffs to respond to J&J's Request for Admissions ("RFAs") and Interrogatories ("Irogs") concerning various cost and pricing issues of the J&J drugs Remicade and Procrit.

As detailed below, J&J's RFAs and Irogs are not good faith attempts to "narrow the issues" as J&J describes, but rather are attempts to require Plaintiffs to compute vague, complicated formulas for which the plaintiffs do not have responsive information. Other requests seek data which may be provided in Plaintiffs' expert reports. To the extent they are relevant, the RFAs and Irogs are premature if the subject matter is addressed in Plaintiffs' forthcoming expert report. As such, Plaintiffs' objections to the RFAs and Interrogatories are appropriate, and J&J's motion must be denied.

Initially, Plaintiffs note that J&J's disingenuous claims that its discovery requests are "designed to narrow the issues" and that "the time for gamesmanship is ended" are belied by J&J and the other defendants' own conduct. In response to the Plaintiffs' various Requests For

Admission relating solely to the authenticity and admissibility of documents, J&J filed objections to **every one** of Plaintiffs' Requests concerning 305 Procrit documents and **every one** of Plaintiffs' Requests concerning 112 Remicade documents.[1] Thus, J&J's most recent efforts have sought only to frustrate and delay Plaintiffs' attempts to prosecute their case.

### 1. Plaintiffs Cannot Be Compelled to Perform Complex Calculations Requested by J&J.

J&J served RFAs and Irogs requiring Plaintiffs to calculate the "average net reimbursement cost" and "average net acquisition cost" for both Procrit and Remicade throughout the class period. (Remicade Irog 11, Procrit Irog 5). Such terms are not within the Complaint, and have never been used by Plaintiffs for any purpose in this litigation. J&J defines these novel terms in the definition section of the RFAs for both Procrit and Remicade. To the extent Plaintiffs' experts employ terms or calculations similar to "average net reimbursement cost" or "average net acquisition cost" the reports of such experts will provide details on such calculations.

Both terms are difficult, if not impossible, for Plaintiffs to calculate. One of Plaintiffs' valid objections was that both terms were vague and ambiguous. The term "net acquisition cost" asks for the amount, net of any rebates or other price adjustments, anyone, including pharmacies, hospitals or physicians, pay to acquire to Procrit or Remicade. To make this calculation, Plaintiffs would have to gather 7 years of Remicade actual sales data and 14 years of Procrit data from physicians, pharmacies and other across the country. Given that J&J witnesses have repeatedly stated that they did not know what price people were paying to acquire their products,

---

[1] See J&J Responses dated August 29, 2005 (Procrit) and September 30, 2005 (Remicade).

it is unreasonable to believe Plaintiffs could readily obtain such information. Indeed, Plaintiffs have found they cannot.

Similarly, the term "net reimbursement cost" asks for the amount, net of rebates or other price adjustments, paid by a third party payor or patient for Procrit or Remicade. To obtain this information Plaintiffs would need to gather a comprehensive set of data revealing actual reimbursement payments, confidential rebate payments and other data from insurers across America. Again, such data would need to extend back to 1998 for Remicade or 1991 for Procrit. The Defendants have repeatedly argued that third-party payors reimburse for drugs through a variety of formulas and mechanisms, and are not therefore susceptible to class treatment. Plaintiffs assert that a reasonable estimate of overall reimbursement is possible, and plaintiffs' expert report will address this issue. It is disingenuous for J&J to now demand that Plaintiffs calculate, outside of their expert analysis, nationwide net reimbursement costs, a figure which the defense and their experts have claimed is not capable of being ascertained.

After determining net acquisition cost and net reimbursement cost, J&J would then require Plaintiffs to calculate the difference between the two figures for both Procrit and Remicade to determine J&J's version of the spread. However this is not the spread that is at issue in the AMCC. Plaintiffs are then asked to admit or deny that the J&J definition of spread was at all times less than a different AWP-based spread for Procrit and Remicade at all times throughout the class period. (Remicade RFA 8, Irog. 8; Procrit RFA 3, Irog 6).

The calculation and analysis of complex, multi-part formulas is not appropriate for interrogatories or requests for admissions. It is well established that the purpose of requests for admissions is to remove from debate uncontested facts. *See United States v. Chevron U.S. Inc.*, 1989 WL 100927, *4 (E.D.Pa.)(attached hereto as Exhibit "A") ("a request should be stated in

simple and concise terms so that it can be admitted or denied with a minimum of an explanation or qualification."). Requests should not involve compilations of data or seek multiple conclusions. *Id.* at *5 and *Caruso v. Coleman Co.* 1995 WL 347003, *5 (E.D. PA)(attached to J&J's Memorandum).

J&J's RFAs are not fashioned in simple or concise terms. For Plaintiffs to admit or deny Remicade RFA 8 and Procrit RFA 3, and to answer the corresponding interrogatories, would require plaintiffs to perform complex calculations involving data which is not readily available. As such, those RFAs and Irogs are properly objected to.

### 2. Plaintiffs Do Not Have The Information Necessary To Answer J&J's RFAs and Interrogatories.

J&J demands that Plaintiffs respond to RFAs concerning the amount and nature of rebates paid on Remicade (Remicade RFAs 3-7); and interrogatories seeking the Average Sales Price ("ASP") of both Remicade and Procrit (Remicade Irog 10, Procrit Irog 4). However, as Plaintiffs clearly state in their objections, much of the information necessary to answer such discovery is not available or is in the possession of J&J. *See Chevron, supra*, at *4.

When Plaintiffs sought information concerning the ASP for Remicade and Procrit, Defendants, including J&J, objected, and their objections were upheld by this Court.[2] Thus, for J&J to now demand that Plaintiffs answer Interrogatories based on ASPs is patently unreasonable. To the extent Plaintiffs' expert, Dr. Hartman, uses ASP figures as the basis of his calculations, Plaintiffs will of course identify the basis of Dr. Hartman's calculations, and have indicated such in the Responses. Plaintiffs' objections are appropriate and should be upheld.

---

[2] See Order of September 27, 2004, denying Plaintiffs' motion to compel ASP data.

Remicade RFA and Irogs 3,4,5,6 and 7 all seek admissions or information about which customers received rebates for Remicade and the impact of such rebates. While plaintiffs have obtained data and testimony concerning rebates, that testimony and data is conflicting and plaintiffs have no way of knowing whether it is complete. For example, even though Centocor Rule 30(b)(6) designee John Hoffman testified that some type of payments or rebates of either 6 or 8 percent were, in some years, paid to certain Managed Care Organizations, the very next day Laura Glassco, a senior Centocor sales executive, testified that she was aware of higher rebates to at least one customer.

Concerning Procrit, J&J seeks answers from Plaintiffs about the pricing of Procrit from 1991 through the present (Procrit RFA 2, Irogs 2-4). However J&J has failed to produce the data necessary to make such calculations. For example, Plaintiffs have electronic data concerning Procrit sales extending back only to the end of 1994. Plaintiffs are unable to determine if paper data they received provides complete Procrit sales and rebate data to the beginning of the class period in 1991. A reasonable attempt to track AWP and WAC price changes throughout the class period from OBI's more than 60,000 pages of documents proved too difficult and burdensome for plaintiffs to complete. Thus, the information available to plaintiffs is insufficient to allow plaintiffs to definitively answer J&J's RFAs and Irogs.

### 3. The RFAs and Interrogatories Improperly Seek Information Within J&J's Possession.

J&J also asked the Defendants to respond to Interrogatories asking for the published WAC and AWP prices for Remicade and Procrit throughout the class period (Procrit Irog 3, Remicade Irog 9) and to indicate the nature of certain AWP based spreads (Remicade RFA2,8

and Irogs 2,8; Procrit RFAs 2,3 and Irogs2,6). Of course it was J&J who controlled the creation and publication of WAC and AWP information for Procrit and Remicade, and such information is within J&J's possession. J&J is essentially asking plaintiffs to compile data from its own documents. As such, discovery seeking an analysis of J&J's own documents is inappropriate and properly objected to. *Espinal v. Coughlin*, 2000 WL 245879 (S.D.NY)(attached as Exhibit "B"). To the extent certain RFAs seek admissions based on J&J's improper interrogatories, plaintiffs' objections to the RFAs are appropriate. *See* Plaintiffs' Response to Procrit RFA3.

### 4. The RFAs and Interrogatories Seek Irrelevant Information.

The formulas J&J wants the Plaintiffs to calculate are not only complex; they are also irrelevant. Plaintiffs' theory of the case does not involve a calculation of net reimbursement cost or net acquisition cost. Rather, as has been stated many times, Plaintiffs' theory is that AWP has been fraudulently manipulated and overstated by the Defendants to their benefit, and to the detriment of the class. Plaintiffs have alleged that providers, including physicians, have charged for and been reimbursed at prices based on AWP.[3]

Plaintiffs also note the inconsistency in J&J's purported defenses. For Remicade, J&J wants to assert that it is not liable because the J&J "spread" between acquisition cost and reimbursement cost is less than the spread between AWP and WAC (Remicade RFA 8). However for Procrit J&J wants to compare its "spread" to the spread between AWP and ASP (which is certainly larger than the spread between AWP and WAC) (Procrit RFA 3). Presumably a similar comparison of AWP to WAC spread for Procrit will not generate the result

---

[3] Plaintiffs' objections to the RFAs and Interrogatories do not specifically raise the grounds of irrelevance. Plaintiffs did not understand until the meet-and-confer session that J&J was seeking calculations of its own spread, and its various components, to support some type of defense.

J&J wants, so that approach is abandoned. This manipulation of their own self-serving formulas highlights the irrelevance of J&J's demand for plaintiffs to provide detailed calculations of items not part of plaintiffs' theories.

As noted above, this Court has already held that ASP data is irrelevant to Plaintiffs claims[4]. Thus such data, outside of use in an expert's report, would also be irrelevant to J&J's defenses.

**Conclusion**

For all the reasons set forth above, Plaintiffs' objections and responses to J&J's RFAs and Interrogatories are appropriate. Therefore J&J's Motion should be denied in all respects.

Date: October 7, 2005

/s/ John Macoretta
Jeffrey L. Kodroff
John A. Macoretta
**SPECTOR ROSEMAN & KODROFF**
1818 Market Street
Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

Marc H. Edelson
Allan Hoffman
**Hoffman & Edelson**
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
**Hagens Berman Sobol Shapiro LLP**
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700

---

[4] See p.4, note 2, above.

Steve W. Berman
Sean R. Matt
Robert Gaudet
**Hagens Berman Sobol Shapiro LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

Samuel Heins
**Heins, Mills & Olson, P.C.**
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605

Kenneth A. Wexler
**The Wexler Firm, LLP**
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2005, I served true and correct copies of the foregoing Plaintiffs' Response to Johnson & Johnson's Motion to Determine The Sufficiency of Responses to Request For Admissions And Interrogatories Concerning Remicade And Procrit via Verilaw on all counsel of record.

                                                                /s/ John Macoretta
                                                                 John Macoretta

# EXHIBIT " A "



1989 WL 100927                                                                                          Page 1
Not Reported in F.Supp., 1989 WL 100927 (E.D.Pa.)
**(Cite as: 1989 WL 100927 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
UNITED STATES of America
v.
CHEVRON U.S.A. INC.
**CIV. A. No. 88-6681.**

Aug. 30, 1989.
Thomas H. Lee, II, Acting United States Attorney, James G. Sheehan, Robert J. Smolski, Asst. U.S. Attys., Philadelphia, Pa., Patricia K. Casano, Environmental Enforcement Section, Land and Natural Resources Division, United States Department of Justice, Thomas E. Hookano, Deputy Assistant Attorney General, United States Department of Justice, Land and Natural Resources Division, Washington, D.C., James M. Baker, Senior Assistant Regional Counsel, U.S. Environmental Protection Agency, Region III, Philadelphia, Pa., for plaintiff.

Philip J. Katauskas, Baskin, Flaherty, Elliott & Mannino, P.C., Philadelphia, Pa., for defendant.

*MEMORANDUM AND ORDER*

EDWIN E. NAYTHONS, United States Magistrate.

*1 The plaintiff initiated this action to recover civil penalties under the Clean Air Act for violations of the National Emission Standards for Hazardous Air Pollutants ("NESHAP") allegedly occurring at the Philadelphia Refinery of Chevron U.S.A. Inc. ("Chevron"). The case involves interpretations and applications of detailed regulations pertaining to fugitive emissions of benzene, a volatile hazardous air pollutant.

Presently before this Court is the plaintiff's motion to compel the defendant to serve full and complete answers to certain interrogatories and requests for admissions upon defendant pursuant to Rules 37 and 26 of the Federal Rules of Civil Procedure. In the alternative, this Court is asked to determine the sufficiency of defendant's answers to interrogatories and admissions requests, pursuant to Rules 36 and 37.

On May 16, 1989, plaintiff served upon defendant Plaintiff's First Set of Requests for Admissions and Second Set of Interrogatories. On June 16, 1989 defendant submitted objections and answers to these discovery requests. Plaintiff served upon defendant Plaintiff's Second Set of Requests for Admissions and Third Set of Interrogatories on May 24, 1989. Defendant submitted objections and answers to these discovery requests on June 23, 1989. In accordance with the Court's April 21, 1989 Revised Scheduling Order, June 23, 1989 was the final date for discovery in this case.

Plaintiff now seeks full and complete answers to Interrogatories 4-7 of Plaintiff's Second Set of Interrogatories, Interrogatories 1 and 2 of Plaintiff's Third Set of Interrogatories, Admission Requests 2 and 6 of Plaintiff's First Request for Admissions, and Admission Requests 33, 36-44, 47, and 49-52 of Plaintiff's Second Request for Admissions.

*PLAINTIFF'S REQUESTS FOR ADMISSIONS*
Admission 2 of Plaintiff's First Set of Requests for Admissions requested that defendant admit that "each piece of 'equipment' intended to operate 'in benzene service' at the Refinery at any time from June 6, 1984 to the present is or was an existing source for purposes of 40 C.F.R. § 61.05(c), § 61.10(a), § 61.111, and § 61.24 (with respect to the definition of 'semiannual'), and § 61.247(a)." *See,* Government Exhibit 1. In its Answer, Chevron argues that the matter is irrelevant. Additionally, in its Memorandum of Law in support of Chevron's Response, Chevron argues that it cannot respond to Request No. 2 in a simple and concise fashion, and therefore, that the request is improper pursuant to Rule 36.

Defendant's objection on the grounds of irrelevancy is overruled. Request for Admission No. 2 concerns the existence of equipment at the Chevron refinery which was intended to operate in benzene service and thus is relevant.

However, the defendant's objection that Request No. 2 cannot be answered in a simple and concise fashion and is improper pursuant to Rule 36 is sustained. When passing on a motion to determine the sufficiency of answers or objections, the court obviously must consider the phraseology of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1989 WL 100927
Not Reported in F.Supp., 1989 WL 100927 (E.D.Pa.)
**(Cite as: 1989 WL 100927 (E.D.Pa.))**

Page 2

requests as carefully as that of the answers or objections. *See, Thalheim v. Eberheim,* 124 F.R.D. 34, 35 (D.Conn.1988). Generally, with respect to requests, "(t)he facts should be stated singly, so that the party called upon to make answers need not write an essay in reply." 4A J. Moore, *Federal Practice* ¶ 36.05(2) at 51 (1987). *See also Thalheim, supra* at 35.

*2 Federal Rule of Civil Procedure 36(a), which authorizes the service of requests for admissions, provides as follows with respect to the form of response to such requests:

The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

The purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested. *See, United Coal Companies v. Powell Const. Co.,* 839 F.2d 958, 967 (3rd Cir.1988); *Webb v. Westinghouse Elec. Corp.,* 81 F.R.D. 431, 436 (E.D.Pa.1978). Regardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification. *United Coal Companies, supra, citing Havenfield Corp. v. H & R Block, Inc.,* 67 F.R.D. 93, 96 (W.D.Mo.1973). As this Court stated in *Johnstone v. Cronlund,* 25 F.R.D. 42 (E.D.Pa.1960), a request for an admission, except in a most unusual circumstance, should be such that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why the party cannot answer, such as in the case of privilege. *Id.* at 46; *United Coal Companies, supra. See also Havenfield Corporation, supra.* Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation. *Johnstone, supra,* at 45; *United Coal Companies, supra.*

In the present matter, Request for Admission No. 2 is not stated in simple and concise terms so that it can be denied or admitted with an absolute minimum of explanation or qualification. *See, United Coal Companies, supra; Havenfield Corporation, supra.* A good faith answer to the request cannot be given in a simple and concise fashion because the answer depends on the interpretation of the term "existing sources" as defined by the benzene NESHAP. Although Chevron generally denies that "each" piece of equipment in benzene service at the refinery is or was an "existing source," *see, Defendant's Memorandum of Law In Support of Chevron's Response to Plaintiff's Second Motion to Compel Discovery,* p. 6, Chevron and the plaintiff are at odds over the precise legal scope of the definition of the term "existing source". Thus, Request for Admission No. 2 is not a proper request because Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation. *Johnstone, supra* at 45; *United Coal Companies, supra.*

Admission 6 of Plaintiff's First Set of Requests for Admissions requested that defendant admit that "(t)he pieces of equipment listed on the December 5, 1984 Master List were not monitored by detection instrument for purposes of the benzene NESHAP during the period from September 5, 1984 through February 28, 1985. Chevron denied the request.

*3 Plaintiff asks this Court to compel Chevron to identify those pieces of equipment on the December 5, 1984 list that have not been monitored as part of Chevron's benzene program pursuant to Rule 33. Chevron responds that its answer with a general denial is entirely appropriate because at least some of the equipment on the subject list had in fact been inspected and monitored for purposes of the benzene NESHAP during the relevant time period.

This Magistrate finds that Chevron's answer to Request for Admission No. 6 is an appropriate answer pursuant to Federal Rule of Civil Procedure 36. Plaintiff's Request asks Chevron to admit that all pieces listed on the December 5, 1984 master list were not monitored by a detection instrument for purposes of the benzene NESHAP during a certain period of time. Chevron denies the request on the grounds that "Furmanite, Inc. had by that date begun to inspect and repair equipment subject to the benzene NESHAP." *See,* Government Exhibit 2, pg. 6.

When a request is denied, the court must consider: (1) whether the denial fairly meets the substance of the request; (2) whether good faith requires that the denial be qualified; and (3) whether any "qualification" which has been supplied is a good faith qualification. *See, Thalheim, supra* at 35. Chevron's answer to Request No. 6 is sufficient.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1989 WL 100927
Not Reported in F.Supp., 1989 WL 100927 (E.D.Pa.)
**(Cite as: 1989 WL 100927 (E.D.Pa.))**

Page 3

Although the plaintiff seeks to have Chevron identify which pieces of equipment on the December 5, 1984 had not been monitored, that is not consistent with the purpose of Rule 36. As previously stated, a request for an admission, except in a most unusual circumstance, should be such that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why the party cannot answer. *Johnstone, supra* at 46. Rule 36 should not be used, however, unless the statement can be admitted or denied without explanation. *Johnstone, supra* at 45. To require Chevron to set forth in detail all pieces of equipment that were inspected and monitored during the specified time period would be unduly burdensome and inconsistent with the purposes of Rule 36. *See, United Coal Companies, supra; Johnstone, supra; Haverfield Corporation, supra.*

Request for Admission No. 33 of Plaintiff's Second Set of Requests for Admissions concerns a May 28, 1987 General Release which was executed in Chevron's favor by the City of Philadelphia. On September 28, 1987, four months after the General Release was executed, the City sent a letter to Chevron about the settlement.

Admission 33 requests that Chevron admit that "(f)ollowing counsel for Chevron U.S.A. Inc.'s receipt of the City of Philadelphia's September 28, 1987 letter, Chevron U.S.A. Inc. did not object, in writing or otherwise, to the City's indication that the $185,000 was only in settlement for all past violations of the City's sulfur dioxide regulation." Chevron answers that the matter addressed is irrelevant.

*4 Chevron's objection to this Request for Admission on the grounds of irrelevancy is overruled. Federal Rule of Civil Procedure 26(b)(1) states that "(p)arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ..." In construing the scope of Rule 26(b)(1), the Court in *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 124 (M.D.N.C.1989), stated that:

Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978). Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded broad and liberal construction. (emphasis added)

Chevron has raised the issue of the May 28 1987 General Release between Philadelphia and Chevron in the Defendant's affirmative defenses to the Plaintiff's Complaint. Plaintiff's Request for Admission 33 concerns this General Release between Philadelphia and Chevron. Therefore, because the discovery rules are to be accorded broad and liberal construction, *see, Marker, supra,* Request for Admission 33 in Plaintiff's Second Set of Requests for Admissions is relevant, and Chevron must answer the request.

Admission requests 36-44 and 49-52 of Plaintiff's Second Set of Requests for Admissions asked defendant to admit that pieces of equipment in benzene service listed on Chevron's February 5, 1989 master list had not been marked or monitored as part of defendant's benzene program as required by the benzene NESHAP. Chevron responds that these Requests are inappropriate under Rule 36 because they are phrased in such a manner as to prevent any simple or concise response. Chevron further argues that plaintiff's Requests were unreasonably burdensome because the responding party would have the burden of determining which portions of the incorporated material contain relevant matters of fact which must be admitted or denied.

As previously noted, a request should be stated in simple and concise terms so that it can be admitted or denied with a minimum of explanation or qualification. *United Coal Companies, supra.* Ordinarily the facts admitted in an answer to a request for admission should be ascertainable merely by examination of the request and of the answer. *See, United States v. Watchmakers of Switzerland Inf. Ctr.,* 25 F.R.D. 197, 200 (S.D.N.Y.1959). *See also Securities & Exchange Com'n v. Micro-Moisture Con.,* 21 F.R.D. 164 (S.D.N.Y.1957).

Admission Requests 36-44 and 49-52 concern a compilation of information prepared by the plaintiff, allegedly listing equipment which was inadequately marked and monitored pursuant to the benzene NESHAP. Requests for Admissions 36-44 and 49-52 are not stated in simple and concise terms so that they can be admitted or denied without a minimum of explanation or qualification. *See, United Coal*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1989 WL 100927
Not Reported in F.Supp., 1989 WL 100927 (E.D.Pa.)
**(Cite as: 1989 WL 100927 (E.D.Pa.))**

Page 4

*Companies, supra.* Additionally, the facts asked to be admitted in answering these Requests are not ascertainable by mere examination of the requests and answers. *See, Watchmakers of Switzerland Inf. Ctr., supra.* Instead, the Requests refer to a complicated sixty (60) page document which incorporates other numerous documents. Chevron's objections to Request for Admissions 36-44 and 49-52 are therefore sustained.

**\*5** Admission request No. 47 of Plaintiff's Second Set of Requests for Admissions concerns a document which contains a list of alleged equipment leaks not repaired after 15 days as required under the benzene NESHAP. Plaintiff asked defendant to admit that the leaks were not "repaired" as defined at 40 C.F.R. § 61.241, within 15 calendar days after the date of leak detection and that none of the exceptions provided in 40 C.F.R. § 61.242-10 were applicable. Chevron argues that Request for Admission No. 47 is inappropriate because it was not drafted so as to permit a simple and concise response with a minimum of explanation.

Chevron's objection is sustained. Request for Admission No. 47 refers to a compilation of information prepared by the plaintiff in a twenty-eight (28) page document which incorporates other numerous documents. This Request is not stated in simple and concise terms so that it can be admitted or denied with a minimum of explanation or qualification. *See, United Coal Companies, supra.* The Request concerns numerous pieces of equipment and the applicability of technical leak exceptions listed in 40 C.F.R. § 61.242-10. Furthermore, the facts asked to be admitted in answering this request are not ascertainable by examination of the request and answer. *See, Watchmakers of Switzerland Inf. Ctr., supra.* Request for Admission No. 47, therefore, is not a proper Request pursuant to Rule 36.

### PLAINTIFF'S INTERROGATORIES

Plaintiff's Interrogatories 4-7 of Plaintiff's Second Set of Interrogatories requested that defendant identify the dates that pieces of equipment in benzene service at the Philadelphia refinery were first marked and monitored as part of Chevron's benzene NESHAP program, the pieces of equipment which were not repaired within 15 days after discovery of leaks, and the documents which explain why leaks were unrepaired beyond 15 days. Chevron's answer to plaintiff's Interrogatories 4-7 is that the Interrogatories are "unreasonably burdensome, repetitive, and designed merely to annoy and harass Chevron in the last closing month before the June 23, 1989 close of discovery." *See,* Government Exhibit 2, pg. 6-9. Chevron alleges that documents responsive to these Interrogatories have already been produced pursuant to Federal Rule of Civil Procedure 33(c), and witnesses knowledgeable about the documents have been deposed pursuant to Federal Rule of Civil Procedure 30(b)(6) and individually. *See,* Government Exhibit 2, pg. 6-9.

In appropriate situations, Rule 33(c) gives a party served with an interrogatory the option, within certain limitations, to respond by specifying records from which the answer may be derived and providing the discovering party with an opportunity to inspect those records. *Willemijn Houdstermaatschaapij BV v. Apollo Computer,* 707 F.Supp. 1429 (D.Del.1989). To be a proper response under Rule 33(c), such a specification must be sufficiently detailed "to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answers may be obtained." Fed.R.Civ.P. 33(c); *Apollo Computer, supra* at 1440. The party served has a duty to specify the category and location of those records which contain the responses to the interrogatory. Fed.R.Civ.P. 33(c), *Notes of Advisory Committee on Rules,* 1980 Amendments. *See also Apollo Computer, supra* at 1440.

**\*6** Chevron states that in responding to Plaintiff's Interrogatories 14-18 of the First Set of Interrogatories, it has produced documentation detailing the Philadelphia Refinery's efforts to comply with benzene NESHAP. Chevron claims that those interrogatories largely duplicate Interrogatories 4-7 of Plaintiff's Second Set of Interrogatories.

Chevron has not demonstrated to this Court, however, that its response to Plaintiff's First Set of Interrogatories directing Defendant to certain documents, is a sufficient response to Plaintiff's Second Set of Interrogatories. To be a proper response under Rule 33(c), Chevron must specify the category and location of the records which contain the responses to the interrogatory. *See,* Fed.R.Civ.P. 33(c), *Notes of Advisory Committee on Rules,* 1980 Amendments. *See also Apollo Computer, supra* at 1440. Contrary to what Chevron claims, the fact that plaintiff alleges that Government Exhibits 5 and 6 contain lists of equipment in benzene service at the Philadelphia refinery which leaks or was not appropriately marked for purposes of benzene NESHAP does not demonstrate to this Court that all of the information sought by Interrogatories 4-7 has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1989 WL 100927                                                                                     Page 5
Not Reported in F.Supp., 1989 WL 100927 (E.D.Pa.)
**(Cite as: 1989 WL 100927 (E.D.Pa.))**

already been supplied and sufficiently identified by Chevron. Therefore, Chevron must provide the plaintiff with a more detailed answer to Interrogatories 4-7 identifying the documents from which plaintiff can ascertain answers.

Plaintiff's Interrogatory 1 of Plaintiff's Third Set of Interrogatories requests that defendant state certain information in response to any of plaintiff's second requests for admissions to which defendant responded by other than an unqualified admission. Interrogatory 2 of Plaintiff's Third Set of Interrogatories requests that defendant identify all pieces of replacement equipment in benzene service at the Philadelphia refinery since September 4, 1984. Defendant responds that it has already produced such records to plaintiff. Plaintiff alleges that this response is insufficient within the meaning of Rule 33(c) and asks this Court to compel a more complete response.

As previously stated, to be a proper response under Rule 33(c), when a party is specifying records from which the answers may be derived, such a specification must be sufficiently detailed "to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answers may be obtained." Fed.R.Civ.P. 33(c); *Apollo Computer, supra* at 1440. Chevron has a duty to specify the category and location of the records which contain the responses to the interrogatories. *See,* Fed.R.Civ.P. 33(c), *Notes of Advisory Committee on Rules,* 1980 Amendments. *See also Apollo Computer, supra at 1440.* Therefore, Chevron must provide plaintiff with more detailed answers to Interrogatories 1 and 2 of Plaintiff's Third Set of Interrogatories identifying the documents from which plaintiff can readily ascertain answers.

*7 An appropriate Order follows.

### ORDER

AND NOW, this 29th day of August, 1989, upon consideration of plaintiff's second motion to compel discovery, or in the alternative to determine the sufficiency of answers, it is hereby ORDERED that:

1. Said motion is DENIED with respect to admission nos. 2 and 6 of plaintiff's first set of requests for admissions. and admission nos. 36-44, 47, and 49-52 of plaintiff's second set of requests for admissions.

2. Defendant is directed to serve responsive answers to admission no. 33 of plaintiff's second set of requests for admissions within twenty (20) days of the date of this Order.

3. Defendant is directed to serve full and complete answers to interrogatory nos. 4--7 of plaintiff's second set of interrogatories upon plaintiff, within twenty (20) days of the date of this Order.

**Motions, Pleadings and Filings (Back to top)**

• 2:88cv06681 (Docket) (Aug. 29, 1988)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT "B"



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 245879 (S.D.N.Y.)  
**(Cite as: 2000 WL 245879 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Cesar A. ESPINAL, Plaintiff,
v.
Thomas COUGHLIN III, et al., Defendant.
**No. 98 CIV. 2579(RPP).**

March 3, 2000.

Cesar A. Espinal, Greenhaven Correctional Facility, Stormville.

Eliot L. Spitzer, Attorney General, State of New York, Department of Law, Attn: Tiffany M. Foo, Assistant Attorney General, New York, Counsel for Defendants.

OPINION AND ORDER

PATTERSON, D.J.

*1 Plaintiff Cesar Espinal, pro se, moves to compel the defendants Lester S. Silver, M.D. ("Silver"), and Donna Zaken ("Zaken"), physician's assistant, of Greenhaven Correctional Facility to respond to certain questions in three sets of interrogatories he has served on defendants.

The plaintiff's request in Interrogatory # 2 of Plaintiff's First Set of Interrogatories for the addresses where Silver and Zaken have been employed for the last ten years is granted. Such information appears reasonably calculated to lead to discovery of relevant evidence. See Rule 26(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

Plaintiff's request in Interrogatory # 12 of Plaintiff's First Set of Interrogatories for the date and state in which defendants received their medical licenses is denied in part. Defendants provided that information for Dr. Silver (Response to Interrogatories 12, 22), but no date is provided as regards defendant Zaken.

Plaintiff's request in Interrogatory # 22(e) of Plaintiff's First Set of Interrogatories for a response as to the time, place and nature of any restrictions placed on the defendants' licenses is granted. That information is reasonably calculated to lead to the discovery of relevant evidence. See Fed.R.Civ.P. 26(b)(1).

Interrogatory # 1 of Plaintiff's Second Set of Interrogatories requests the names of twenty-seven John Does named in plaintiff's complaint. The request is denied. Plaintiff has been provided with his complete hospital records and has records of his disciplinary charges and grievances. He also has access to his medical records at Greenhaven Correctional Facility. Defendants should not have to conduct a review of records in the possession of plaintiff or to which he has access and make determinations that plaintiff can do for himself. *Cf. Konczakowski v. Paramount Pictures,* 20 F.R.D. 588, 593 (S.D.N.Y.1957) ("With respect to those interrogatories which request information and data obtainable from available documents, the general rule is that a party should not be permitted to compel his opponent to make compilations or perform research and investigations with respect to statistical information which he might make for himself by obtaining the production of books and documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, or by doing a little footwork, as the case may be.").

Interrogatory # 2(f) of Plaintiff's Third Set of Interrogatories, asking for information about complaints lodged against the defendants and restrictions on their licenses by the New York State Department of Health, is granted. Such information is reasonably calculated to lead to the discovery of relevant evidence. See Fed.R.Civ.P. 26(b)(1). The Court could not find in the Responses to the Interrogatories that defendants have advised plaintiff that there have been no restrictions on their licenses as stated in Defendants' Memorandum In Opposition to Plaintiff's Motion to Compel at page seven.

*2 With respect to plaintiff's request for index numbers to lawsuits brought against the defendants, that information has been provided in defendants' response to the First Set of Interrogatories dated September 17, 1999 (Interrogatory # 8) and the defendants' Supplemental Response to Plaintiff's First Set of Interrogatories (Interrogatory # 8) except for *Twesten v. Silver,* for which defendants give no index number. Defendants are to provide that index number.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 245879 (S.D.N.Y.)
**(Cite as: 2000 WL 245879 (S.D.N.Y.))**

Defendants are to comply with this order and provide the aforesaid information to plaintiff by March 21, 2000.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2000 WL 245879 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

- 1:98cv02579                (Docket) (Apr. 10, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.