UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | Judge Patti B. Saris |

**PLAINTIFFS' RESPONSE TO MOTION TO QUASH SUBPOENAS
AND FOR PROTECTIVE ORDER CONCERNING DISCOVERY
OF FORMER CENTOCOR EMPLOYEES**

Plaintiffs hereby respond to the motion of Johnson & Johnson, Centocor Inc. and former Centocor sales representatives Kenneth Wegner, Colin Konschak, Grace Leone, Trina Gillies, Jim Bivona and Brett Beiter (collectively the "Former Representatives"), seeking to prevent Plaintiffs from taking the depositions of all six Former Representatives. As detailed below, the Former Representatives are not entitled to avoid providing testimony, as Plaintiffs made more than reasonable efforts to conduct their depositions promptly, and Plaintiffs are entitled to preserve their testimony for trial.

BACKGROUND

Plaintiffs allege that the defendants, including Centocor, fraudulently manipulated the AWP and marketed the resulting spread to providers, to the detriment of Plaintiffs and the Class. As part of their case in support of liability Plaintiffs intend to show direct evidence of Centocor's sales pitch, or what sales representatives actually told physicians about the profits that could be made from billing for Remicade at inflated AWP- based prices. All six of the Former

Representatives have been involved in discussions with doctors about the amount of profit doctors could receive from buying Remicade and billing providers for it at AWP-based prices. Centocor documents indicate that the Former Representatives were among the top sales people in the company, winning national sales awards. Other documents detail specific conversations some of the Former Representatives had with doctors about profiting from Remicade This is why these representatives were selected for deposition.

On August 10, 2005 Plaintiffs served notices of deposition on eight Centocor representatives, including the six Former Representatives.[1] However it was not until August 23, 2005 that Centocor advised Plaintiffs that the six Former Representatives no longer worked for Centocor. *See* e-mail from A. Mangi to J. Macoretta attached as Exhibit A. Plaintiffs promptly asked for the last know addresses of the six Former Representatives. It was not until late in the afternoon of Friday August 26, 2005 that Centocor provided last known addresses for the six Former Representatives. *See* e-mail from A. Mangi to J. Macoretta attached as Exhibit B. Plaintiffs then promptly subpoenaed all six of the Former Representatives, with subpoenas dated August 30, 2005, one day before the August 31 discovery cut-off date. The Former Representatives, who are scattered across America, were served with the deposition subpoenas between September 7 and September 17, 2005. *See* Returns of Service attached as Exhibit C. To the extent there was any delay in serving the Former Representatives, it was caused by Centocor's 16 day delay in providing addresses.

---

[1]The remaining two Centocor representatives, Laura Glassco and Cheryl Cohen, both still work for Centocor and have been deposed.

<u>PLAINTIFFS' SUBPOENAS WERE TIMELY</u>

Centocor and the Former Representatives cite numerous cases in support of their argument that all discovery must be completed prior to the discovery cutoff. However, none of those cases are from this District, and most of Centocor's cases involve a situation where the deposition notice was issued after the discovery deadline.[2] Unquestionably, Plaintiffs' deposition subpoenas to the Former Representatives were issued before the discovery cut-off.

The Former Representatives's timeliness objection must be resolved based on the wording of the Court's order on the discovery. CMO 13 simply states: "August 31, 2005 - Close of Fact Discovery." The Court's order does not say that discovery would have to be undertaken such that the return date would fall on or before August 31, 2005. An example of an order in the First Circuit that does address the return date can be found in *In re Selected Somerworth Bank Cases*, 148 F.R.D. 1, (D. Me. 1993). There, the order specifically provided as follows: "Counsel are hereby advised that absent some excusable circumstance, discovery initiatives must be initiated sufficiently in advance of the discovery deadline to permit the opposing party to file in advance of the discovery deadline its appropriate response within the period allowed by the Civil Rules for such purpose." 148 F.R.D. at 2 n.3. The Former Representatives offer no basis as to why such a further restriction on discovery should be read into CMO 13.

In *Sheppard v. River Valley Fitness One, L. P.*, 203 F.R.D. 56, (D.N.H. 2001), the court rejected a challenge to timeliness under circumstances similar to those at present. The court

---

[2] *See, Four M Corp. v. Guiliano*, No. 89 Civ. 5275, 1991 WL 44840, at *1 (S.D.N.Y March 27, 1991); *Bondpro Corp. v. Siemens Westinghouse Power Corp.*, No. 04-C-0026-C, 2005 WL 256488, at *1 (W.D. Wis. Jan. 31, 2005); *Sanofi-Synthelabo v. Apotex Inc.*, No. 02 Civ. 2255 (SHS) & 02 Civ. 3672 (SHS), 2005 WL 469594 (S.D.N.Y. Feb. 18, 2005); *Integra Lifesciences I Ltd. v. Merck KGaA*, 190 F.R.D. 556, 559 (S.D. Cal. 1999).

granted plaintiffs' motion to compel production of documents that were sought in document requests issued before the discovery cut-off, but had a return date after the cut-off. *Id.* at 60.

The plain language of CMO 13 does not allow the Former Representatives to avoid their depositions. This is especially true in light of the Plaintiffs' reasonable efforts to conduct the depositions and Centocor's delay in providing Plaintiffs with contact information for the Former Representatives.

## THE SUBPOENAS APPROPRIATELY SEEK TRIAL DEPOSITIONS

As none of the Former Representatives are in or near the District of Massachusetts they cannot be compelled to appear at trial. Fed.R.Civ.P. 45(c)(3)(A). Thus their depositions will serve as their trial testimony. Numerous courts have recognized the appropriateness of conducting trial depositions after a discovery cut-off date. *Charles v. Wade*, 665 F.2d 661, 664 (5th Cir. 1982)(it was error for the trail court to refuse to allow plaintiffs to conduct a trial deposition on the basis that the discovery deadline had passed). *See also, RLS Assoc. V. United Bank of Kuwait*, 2005 WL 578917 (S.D.N.Y.)(attached as Exhibit D); *Estenfelder v. Gates Corp.*, 199 F.R.D. 351 (D.Colo. 2001); *Mines v. City of Philadelphia*, 1994 WL 376914, *2 (E.D.Pa.) (Attached as Exhibit E); *Spangler v. Sears, Roebuck*, 138 F.R.D. 122, 125-126 (S.D.Ind. 1991), all allowing trial depositions to occur after the discovery deadline.

The Former Representatives have provided no reason why their testimony should not be used at trial, nor any reason why trial testimony must occur within the discovery period. Thus, their Motion to Quash the subpoenas must be denied.

4

## THE FORMER REPRESENTATIVES HAVE SHOWN NO HARM
## TO JUSTIFY A PROTECTIVE ORDER

Centocor and the Former Representatives seek a protective order, yet they cite no basis for the granting of such an order beyond the Plaintiffs' alleged failure to comply with CMO 13. The standard for issuing a Protective Order is much higher, and requires the moving party to demonstrate, with specific facts, that it will suffer substantial harm if the order is not granted. *Anderson v. Cryovac*, 805 F.2d 1,7-8 (1stCir. 1986). The movants here completely fail to identify any harm they will suffer if the Former Representatives are deposed. In the absence of a particularized showing of harm the Motion for a Protective Order must be denied.

## CENTOCOR'S MANIPULATION OF THE DISCOVERY PROCESS

Finally, it is important to note that after being advised that the Former Representatives were no longer employed by Centocor, Plaintiffs asked Centocor's counsel if they intended to represent the Former Representatives and would accept service of the subpoenas. Centocor's counsel advised that they did not represent any of the Former Representatives at that time.[3] Plaintiffs then attempted to contact the Former Representatives, to determine the basis of their knowledge and to schedule their depositions. Indeed, at least two of the Former Representatives called Plaintiffs' counsel on their own after being served.

Centocor's counsel, upon learning of such contacts, expressed outrage that Plaintiffs would contact former employees. When reminded that Centocor's counsel had previously advised that they did not represent former employees, Centocor's counsel stated that as of that

---

[3] Presumably, Centocor's reluctance to accept service on behalf of the Former Representatives was done to establish the argument that the subpoenas should be quashed because they were served after the discovery cut-off.

minute they did in fact represent all six Former Representatives. *See* September 13, 2005 e-mail from A. Mangi, attached as Exhibit F . The blanket statement that all six of the former employees were being represented effectively cut off Plaintiffs' counsel communication with such employees, as they now, allegedly, had counsel. It is difficult to believe that Centocor had in fact contacted the Former Representatives and secured their representation as of the date of Mr. Mangi's September 13, 2005 e-mail. Rather, Mr. Mangi's e-mail, combined with Centocor's initial delay in providing addresses for the Former Representatives and initial refusal to accept service, can be seen as a deliberate attempt to frustrate Plaintiffs' efforts to conduct discovery and obtain information from the former employees. Such tactics, now manifested in the form of the pending Motion, must not be permitted by the Court.

CONCLUSION

For all the reasons set forth above, Centocor and former employees Kenneth Wegner, Colin Konschak, Grace Leone, Trina Gillies Jim Bivona and Brett Beiter are not entitled to a protective order, or to quash Plaintiffs' subpoenas. Therefore the Motion to Quash Subpoenas and for a Protective Order must be denied.

Date: October 11, 2005

     /s/ John Macoretta
Jeffrey L. Kodroff
John A. Macoretta
**SPECTOR ROSEMAN & KODROFF**
1818 Market Street
Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

6

Marc H. Edelson
Allan Hoffman
**Hoffman & Edelson**
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043


Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
**Hagens Berman Sobol Shapiro, LLP**
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700

Steve W. Berman
Sean R. Matt
Robert Gaudet
**Hagens Berman Sobol Shapiro, LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292


Samuel Heins
**Heins, Mills & Olson, P.C.**
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605

Kenneth A. Wexler
**The Wexler Firm, LLP**
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2005, I served true and correct copies of the

foregoing Plaintiffs' Response to Johnson & Johnson's Motion to Quash Subpoenas and for

Protective Order Concerning Discovery of Former Centocor Employees via electronic service

on all counsel of record.


        /s/ John Macoretta____

        John Macoretta

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | MDL No. 1456 |
| LITIGATION | ) | |
| | ) | |
| | ) | CIVIL ACTION 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | ) | |
| ALL ACTIONS | ) | Judge Patti B. Saris |
| | ) | |

## DECLARATION OF JOHN A. MACORETTA

1.     I am a partner with the firm of Spector, Roseman & Kodroff, representing the Plaintiffs in this matter.

2.     Attached as Exhibits A, B and F are true and correct copies of electronic mail communications between myself and counsel for Johnson & Johnson and Centocor.

3.     Attached as Exhibit C are true and correct copies of executed Returns of Service, for subpoenas served on each of the six individual movants.

4.     During a phone call I specifically asked J&J's counsel, Adeel Mangi, if he was going to be representing the former employee deponents.  Mr. Mangi's response was "we will deal with that after you serve them" or something very similar.  I interpreted that to mean that J&J's counsel did not then represent any of the six former employees.

5.     After the subpoenas were issued, Plaintiffs' counsel spoke on the phone with Ken Wegner and Brett Beiter.  Counsel also received phone messages from Colin Konschak and Trina Gilles.  Ms. Gilles left a phone message for me on September 20, 2005, which I did not return.

I declare under penalty of perjury that the foregoing is true and correct.

October 11, 2005

John Macoretta

# EXHIBIT A

| | |
|---|---|
| **From:** | "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> |
| **To:** | <JMacoretta@srk-law.com> |
| **Date:** | 8/23/2005 4:56:29 PM |
| **Subject:** | Centocor Depositions |

John:  With regards to your deposition notice for Centocor sales reps, only two from that list are still with the company: Laura Glassco and Cheryl Cohen.  I am working on scheduling for both of them and will let you know asap when they are available.


Adeel Abdullah Mangi
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Ph: (212) 336 2563
Fax: (212) 336 7947
aamangi@pbwt.com


-------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone.  In such case, you should destroy this message and kindly notify the sender by reply email.  Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.


-------------------------------------------------------------------
IRS Circular 230 disclosure:  Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)
==================================================================================

# EXHIBIT B

**From:**      "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM>
**To:**        "John Macoretta" <JMacoretta@srk-law.com>
**Date:**      8/26/2005 1:05:12 PM
**Subject:**   Last known addresses

John:  Here are the last known addresses for the Centocor employees on your
deposition notice that are no longer with the company.  As discussed, please
let me know if you intend to subpoena any of them.  We can then discuss our
position as to the discovery cut-off.

Kenneth Wegner
3815 Garden Highway
Sacramento, CA 95834

Colin Konschak
9705 Dolphin Run
Norfold, VA 23518

Grace Leone
1070 Washington Avenue
Pelham Manor, NY 10803

Trina Gillies
7974 Rossman Gulch Road
Morrison, CO 80465

Jim Bivona
33 Armands Way
Dunbarton, NH 03046

Brett Beiter
547 Copper Lakes Blvd.
Wildwood, MO 63040

Adeel Abdullah Mangi
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Ph: (212) 336 2563
Fax: (212) 336 7947
aamangi@pbwt.com

--------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you
are not the addressee indicated in this message (or responsible for delivery
of the message to such person), you may not copy or deliver this message to
anyone.  In such case, you should destroy this message and kindly notify the
sender by reply email.  Please advise immediately if you or your employer do
not consent to Internet email for messages of this kind.


--------------------------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication
(including any attachments or enclosures) was not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding penalties under the

# EXHIBIT C

Best Legal Services, Inc.
1617 John F. Kennedy Blvd, Suite 1045
Philadelphia, PA 19103
Ph: (215) 567–7777
Fax: (215) 561–4546

S.S. [ ] Chk: #:
Orig. on File [ ]
Check w. Orig. [ ] Chk. #
Serv. Fee
Other Fees

Other Service:

# DEADLINE: 09/14/2005

Received: 08/31/2005 @ 8:57 AM

## Job #: 7713

Recipient:
**TRINA GILLIES**
**7974 ROSSMAN GULCH ROAD**
**MORRISON, CO, 80465**

Server: * *

Court Date:

Type of Service: **Subpoena**

Docket #:
**01–CV–12257–PBS**

Court: **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Cust. Ref#:

Plaintiff: **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Defendant:

Person Served:  _Trina Gillies_          Relationship/Title:  _Self_

Date of Service:  _9-17-05_          Time of Service:  _3:10 pm_

Sex: _F_   Skin Color: _White_  Hair Color: _Blonde_  Age: _36_  Height: _5'7"_  Weight: _146_

Other: _____

Attempts:        Date: _____ Time: _____        Person Spoken To:  _____

                 Date: _____ Time: _____

                 Date: _____ Time: _____

Remarks: _____

Our Client: **SPECTOR, ROSEMAN, &KODROFF**
**1818 MARKET STREET, 25TH FLOOR**
**PHILA. PA 19103**
Ph: 215–496–0300 –– Fax: 215–496–6611
Occupation: LawFirm/Client

I ACKNOWLEDGE RECEIPT OF THE LEGAL DOCUMENTS LISTED
ABOVE AND CONFIRM THAT THE NAMED PARTY IS NOT CURRENTLY
IN ACTIVE MILITARY SERVICE. I FURTHER STATE I AM AUTHORIZED
TO ACCEPT ALL LEGAL PROCESS ON BEHALF OF THE INTENDED
RECIPIENT.

Rec'd By  X _____

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT
**District of Colorado**

**SUBPOENA IN A CIVIL CASE**

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

Case Number: 01-CV012257-PBS
MDL No. 1456 Pending in the District
of Massachusetts

**TO**:   Trina Gillies
7974 Rossman Gulch Road
Morrison, CO  80465

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION:   To Be Determined | DATE AND TIME: Sept. 22, 2005 9:00 A.M. |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attached Schedule A

| PLACE:   To Be Determined | DATE AND TIME Sept. 22, 2005 9:00 A.M. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE August 30, 2005 |
|---|---|
| Attorney for Plaintiff | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jennifer L. Enck
Spector Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. (215)496-0300
Fax (215) 496-6611

(See Rule 45, Federal Rules of Civil Procedure, Parts C& D on next page)

If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE 9-17-2005  3:10Am | PLACE 7974 Rossman Gulch Rd. Morrison, Co. 80465 |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) TRINA GILLIES | MANNER OF SERVICE Personal at Residence |
|---|---|

| SERVED BY (PRINT NAME) Lynne Grimes | TITLE Process Server |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on     9-17-2005
DATE

Lynne A. Grimes
SIGNATURE OF SERVER

1685 S. Colorado Blvd.
ADDRESS OF SERVER   Suite S236
Denver, Co. 80222

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSON SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Best Legal Services, Inc.
1617 John F. Kennedy Blvd, Suite 1045
Philadelphia, PA 19103
Ph: (215) 567–7777
Fax: (215) 561–4546

S.S. [ ] Chk: #:
Orig. on File [ ]
Check w. Orig. [ ] Chk. #
Serv. Fee
Other Fees

Other Service:

## DEADLINE: 09/14/2005

Received: 08/31/2005 @ 8:57 AM

**Job #: 7712**

Recipient:
**GRACE LEONE
1070 WASHINGTON AVE.
PELHAM MANOR, NY, 10803**

Server: **\* \***

Court Date:

Type of Service: **Subpoena**

Docket #:
**01–CV–12257–PBS**

Court: **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Cust. Ref#:

Plaintiff: **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Defendant:

Person Served: _Personally_         Relationship/Title: _____

Date of Service: _09/15/05_          Time of Service: _1:15 PM_

Sex: _F_   Skin Color: _W_   Hair Color: _Blonde_ Age: _36_ Height: _5-5_ Weight: _155_
Other: _____

Attempts:     Date: _____ Time: _____ Person Spoken To: _____

             Date: _____ Time: _____

             Date: _____ Time: _____

Remarks: _____

Our Client: **SPECTOR, ROSEMAN, &KODROFF**
**1818 MARKET STREET, 25TH FLOOR**
**PHILA. PA 19103**
Ph: 215–496–0300 — Fax: 215–496–6611
Occupation: LawFirm/Client

I ACKNOWLEDGE RECEIPT OF THE LEGAL DOCUMENTS LISTED
ABOVE AND CONFIRM THAT THE NAMED PARTY IS NOT CURRENTLY
IN ACTIVE MILITARY SERVICE. I FURTHER STATE I AM AUTHORIZED
TO ACCEPT ALL LEGAL PROCESS ON BEHALF OF THE INTENDED
RECIPIENT.

Rec'd By  **X** ..............................................................

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE PHARMACEUTICAL INDUSTRY                          Case No. 01-CV012257-PBS
AVERAGE WHOLESALE PRICE LITIGATION,                    MDL No. 1456  Dist. Of Mass.

                                                       AFFIDAVIT OF SERVICE

------------------------------------------------------------------X

STATE OF NEW YORK    )
                          S.S.:
COUNTY OF ROCKLAND    )

   DAVID KSIAZEK, being duly sworn, deposes and says that he is over the age of eighteen

years, is an agent for the attorney service, Best Legal Services, Inc., and is not a party to this action.

   That on the 15th day of September, 2005, at approximately 1:50 PM, deponent served a

true copy of the SUBPOENA WITH COVER LETTER AND NOTICE OF DEPOSITION upon GRACE

LEONE at 1070 Washington Avenue, Pelham Manor, New York 10803, by personally delivering and

leaving the same with GRACE LEONE at that address.  At the time of service, a witness fee of $40.00

was tendered.

   GRACE LEONE is a white female, approximately 36 years of age, stands approximately 5

feet 5 inches tall, weighs approximately 155 pounds with blonde hair and brown eyes.

DAVID KSIAZEK #0974523

Sworn to before me this
15th day of September, 2005

NOTARY PUBLIC

**ALAN DEMOVSKY**
**Notary Public, State of New York**
**Qualified in Rockland County**
**No. 31-4612156**
**Cert. Filed in New York County**
**Commission Expires Oct. 31 2** *[illegible]*

Best Legal Services, Inc.
1617 John F. Kennedy Blvd, Suite 1045
Philadelphia, PA 19103
Ph: (215) 567-7777
Fax: (215) 561-4546

S.S. [ ] Chk: #:
Orig. on File [ ]
Check w. Orig. [ ] Chk. #
Serv. Fee
Other Fees

Other Service:

# DEADLINE: 09/14/2005

Received: 08/31/2005 @ 8:57 AM

## Job #: 7716

Recipient:
**BRETT BEITER**
**547 COPPER LAKES BLVD.**
**WILDWOOD, MO, 63040**

Server: * *

Court Date:

Type of Service: **Subpoena**

Docket #:
**01-CV-12257-PBS**

Court: **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Cust. Ref#:

Plaintiff: **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Defendant:

Person Served: _Brett Beiter_       Relationship/Title: _Personal_

Date of Service: _9/11/05_       Time of Service: _9:00 pm_

Sex: _M_  Skin Color: _White_  Hair Color: _Brown_  Age: _38_  Height: _5'10"_  Weight: _178_

Other: _____

Attempts:     Date: _____ Time: _____     Person Spoken To: _____

              Date: _____ Time: _____

              Date: _____ Time: _____

Remarks: _____

Our Client: **SPECTOR, ROSEMAN, &KODROFF**
**1818 MARKET STREET, 25TH FLOOR**
**PHILA. PA 19103**
Ph: 215-496-0300 — Fax: 215-496-6611
Occupation: **LawFirm/Client**

I ACKNOWLEDGE RECEIPT OF THE LEGAL DOCUMENTS LISTED
ABOVE AND CONFIRM THAT THE NAMED PARTY IS NOT CURRENTLY
IN ACTIVE MILITARY SERVICE. I FURTHER STATE I AM AUTHORIZED
TO ACCEPT ALL LEGAL PROCESS ON BEHALF OF THE INTENDED
RECIPIENT

Rec'd By  **X** ..................................................

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

**Eastern District of Missouri**

**SUBPOENA IN A CIVIL CASE**

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

Case Number: 01-CV012257-PBS
MDL No. 1456 Pending in the District
of Massachusetts

**TO**:  Brett Beiter
547 Copper Lakes Blvd.
Wildwood, MO 63040

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above case.

| PLACE OF DEPOSITION:   To Be Determined | DATE AND TIME:<br>Sept. 26, 2005<br>9:00 A.M. |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
the place, date, and time specified below (list documents or objects): See Attached Schedule A

| PLACE:   To Be Determined | DATE AND TIME<br>Sept. 26, 2005<br>9:00 A.M. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>August 30, 2005 |
|---|---|
| Attorney for Plaintiff | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jennifer L. Enck
Spector Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. (215)496-0300
Fax (215) 496-6611

(See Rule 45, Federal Rules of Civil Procedure, Parts C& D on next page)

If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE | Grover MO 63040 |
|---|---|---|---|
| SERVED | 9/11/05 | 547 Copper Lakes Blvd | |

SERVED ON (PRINT NAME)   Brett Beiter        MANNER OF SERVICE   Personally

SERVED BY (PRINT NAME)   Maryben Raymond      TITLE   Process Server

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____9/8/05_____          X _____
                    DATE                    SIGNATURE OF SERVER

ADDRESS OF SERVER
BEST LEGAL SERVICES, INC.
1617 J.F.K. BLVD. S. #1045
PHILADELPHIA, PA 19103

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSON SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Best Legal Services, Inc.
1617 John F. Kennedy Blvd, Suite 1045
Philadelphia, PA 19103
Ph: (215) 567–7777
Fax: (215) 561–4546

S.S. [ ] Chk: #:
Orig. on File [ ]
Check w. Orig. [ ] Chk. #
Serv. Fee
Other Fees

Other Service:

## DEADLINE: 09/14/2005

Received: 08/31/2005 @ 8:57 AM

**Job #: 7717**

Recipient:
**KENNETH WEGNER**
**3815 GARDEN HIGHWAY**
**SACRAMENTO, CA, 95834**

Server: * *

Court Date:

Type of Service: **Subpoena**

Docket #:
**01–CV–12257–PBS**

Court: **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Cust. Ref#:

Plaintiff: **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Defendant:

Person Served: _personaly_

Relationship/Title: _____

Date of Service: _09/12/05_

Time of Service: _5:27 pm_

Sex: _M_  Skin Color: _W_   Hair Color: _Brown_ Age: _42_ Height: _6-0_ Weight: _180_

Other: _____

Attempts:     Date: _____ Time: _____

Person Spoken To: _____

              Date: _____ Time: _____

              Date: _____ Time: _____

Remarks: _____

Our Client: **SPECTOR, ROSEMAN, &KODROFF**
**1818 MARKET STREET, 25TH FLOOR**
**PHILA. PA 19103**
Ph: 215-496-0300 — Fax: 215-496-6611
Occupation: LawFirm/Client

I ACKNOWLEDGE RECEIPT OF THE LEGAL DOCUMENTS LISTED
ABOVE AND CONFIRM THAT THE NAMED PARTY IS NOT CURRENTLY
IN ACTIVE MILITARY SERVICE. I FURTHER STATE I AM AUTHORIZED
TO ACCEPT ALL LEGAL PROCESS ON BEHALF OF THE INTENDED
RECIPIENT.

Rec'd By **X** .................................................................

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | | | |
|---|---|---|---|
| | DATE 9/12/05 | PLACE | 3815 GARDEN HWY SACRAMENTO, CA 95834 |

SERVED

| SERVED ON (PRINT NAME) KENNETH WEGNER | MANNER OF SERVICE PERSONAL SERVICE |
|---|---|

| SERVED BY (PRINT NAME) ROBIN WORMGOOR | TITLE REGISTERED PROCESS SERVER |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____9/13/05_____
DATE

SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSON SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Best Legal Services, Inc.
1617 John F. Kennedy Blvd. Suite 1045
Philadelphia, PA 19103
Ph: (215) 567-7777
Fax: (215) 561-4546

S.S. [ ] Chk: #:
Orig. on File [ ]
Check w. Orig. [ ] Chk. #
Serv. Fee
Other Fees

Other Service:

# DEADLINE: 09/14/2005

Received: 08/31/2005 @ 8:57 AM

**Job #: 7714**

Recipient:
**JIM BIVONA**
**33 ARMANDS WAY**
**DUNBARTON, NH, 03046**

Server: * *

Court Date:

Type of Service: **Subpoena**

Docket #:
**01-CV-12257-PBS**

Court: **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Cust. Ref#:

Plaintiff: **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Defendant:

Person Served: _____Jim Bivona_____   Relationship/Title: _____

Date of Service: _____9/12/05_____   Time of Service: _____10:45 A.M._____

Sex: __M__   Skin Color: __Wh__   Hair Color: _Blk_   Age: __50__   Height: 5'10"   Weight: __225__
Other:_____

Attempts:   Date: _____ Time: _____   Person Spoken To: _____

Date: _____ Time: _____

Date: _____ Time: _____

Remarks: _____

Our Client: **SPECTOR, ROSEMAN, &KODROFF**
**1818 MARKET STREET, 25TH FLOOR**
**PHILA. PA 19103**
Ph: 215-496-0300 — Fax: 215-496-6611
Occupation: **LawFirm/Client**

I ACKNOWLEDGE RECEIPT OF THE LEGAL DOCUMENTS LISTED ABOVE AND CONFIRM THAT THE NAMED PARTY IS NOT CURRENTLY IN ACTIVE MILITARY SERVICE. I FURTHER STATE I AM AUTHORIZED TO ACCEPT ALL LEGAL PROCESS ON BEHALF OF THE INTENDED RECIPIENT.

Rec'd By **X** ......................................................................

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**
# UNITED STATES DISTRICT COURT
**District of New Hampshire**

**SUBPOENA IN A CIVIL CASE**

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

Case Number: 01-CV012257-PBS
MDL No. 1456 Pending in the District
of Massachusetts

**TO**:  Jim Bivona
33 Armands Way
Dunbarton, NH 03046

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION:   To Be Determined | DATE AND TIME: Sept. 26, 2005 9:00 A.M. |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attached Schedule A

| PLACE:   To Be Determined | DATE AND TIME Sept. 26, 2005 9:00 A.M. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiff | DATE August 30, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jennifer L. Enck
Spector Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. (215)496-0300
Fax (215) 496-6611

(See Rule 45, Federal Rules of Civil Procedure, Parts C& D on next page)

If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| | 9/12/05 10:45 A.M. | | 33 Armands Way Dunbarton, NH 03046 | |
| SERVED | | | | |

| SERVED ON (PRINT NAME) | Jim Bivona | MANNER OF SERVICE | In Hand |
|---|---|---|---|
| SERVED BY (PRINT NAME) | Loren N. Magee | TITLE | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___September 12, 2005___
            DATE

_____
SIGNATURE OF SERVER

___7 Brodeur Street___
ADDRESS OF SERVER

___Penacook, New Hampshire 03303___

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSON SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Best Legal Services, Inc.
1617 John F. Kennedy Blvd, Suite 1045
Philadelphia, PA 19103
Ph: (215) 567–7777
Fax: (215) 561–4546

S.S. [ ] Chk: #:
Orig. on File [ ]
Check w. Orig. [ ] Chk. #
Serv. Fee
Other Fees

Other Service:

# DEADLINE: 09/14/2005

Received: 08/31/2005 @ 8:57 AM

**Job #: 7715**

Recipient:
**COLIN KONSCHAK**
**9705 DOLPHIN RUN**
**NORFOLK, VA, 23518**

Server: * *

Court Date:

Type of Service: **Subpoena**

Docket #:
**01–CV–12257–PBS**

Court: **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Cust. Ref#:

Plaintiff: **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Defendant:

Person Served: _Personally_          Relationship/Title: _____

Date of Service: _09/01/05_          Time of Service: _2:09 PM_

Sex: _M_   Skin Color: _W_   Hair Color: _Brown_  Age: _140_  Height: _6-2_  Weight: _185_

Other:_____

Attempts:     Date: _____ Time: _____     Person Spoken To: _____

              Date: _____ Time: _____

              Date: _____ Time: _____

Remarks: _____

Our Client: **SPECTOR, ROSEMAN, &KODROFF**
**1818 MARKET STREET, 25TH FLOOR**
**PHILA. PA 19103**
Ph: **215–496–0300 –– Fax: 215–496–6611**
Occupation: **LawFirm/Client**

I ACKNOWLEDGE RECEIPT OF THE LEGAL DOCUMENTS LISTED ABOVE AND CONFIRM THAT THE NAMED PARTY IS NOT CURRENTLY IN ACTIVE MILITARY SERVICE. I FURTHER STATE I AM AUTHORIZED TO ACCEPT ALL LEGAL PROCESS ON BEHALF OF THE INTENDED RECIPIENT.

Rec'd By **X** ........................................................

AO88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**
# UNITED STATES DISTRICT COURT
**Eastern District of Virginia**

### SUBPOENA IN A CIVIL CASE

Case Number: 01-CV012257-PBS
MDL No. 1456 Pending in the District
of Massachusetts

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

**TO**: Colin Konschak
9705 Dolphin Run
Norfolk, VA 23518

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION:   To Be Determined | DATE AND TIME: Sept. 21, 2005 9:00 A.M. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attached Schedule A

| PLACE:   To Be Determined | DATE AND TIME Sept. 21, 2005 9:00 A.M. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiff | DATE August 30, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jennifer L. Enck
Spector Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. (215)496-0300
Fax (215) 496-6611

(See Rule 45, Federal Rules of Civil Procedure, Parts C& D on next page)

If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 9-7-05 | 9705 Dolphin Run, Norfolk VA |

| SERVED ON (PRINT NAME) Colin Kinschak | MANNER OF SERVICE Personal |
|---|---|
| SERVED BY (PRINT NAME) Louann Adair | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

BEST LEGAL SERVICES, INC
1617 J.F.K. BLVD  S. #1045
PHILADELPHIA, PA  19103

ADDRESS OF SERVER

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D:**

(c) PROTECTION OF PERSON SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# AFFIDAVIT OF SERVICE

COMMONWEALTH OF VIRGINIA                                    SERVICE OTHER THAN BY VIRGINIA SHERIFF

in the:

**US DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

STATE/COMMONWEALTH OF:        91437 - 1
MD

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | } CASE NO: |
| In re / v. | } **01-CV-12257-PBS** |

---

**MR COLIN KINSCHAK**

**9705 DOLPHIN RUN, NORFOLK, VA  23518**

is the name and address of the person upon whom service of the following is to be made.

**Document(s) Served:**   **SUBPOENA IN A CIVIL CASE**

I, the undersigned swear/affirm that I am a private process server, I am not a party to, or otherwise interested in the subject matter in controversy in this case, I am 18 years of age or older, and I served as shown below, the above named person upon whom service of process was to be made with copies described above.

Date and time of service:        **9/7/2005**    @    **2:09 PM**

METHOD OF SERVICE:

*PERSONAL SERVICE*

SERVER'S NOTES:   W/M/40/6'2"/185/BRN HAIR

Dated: 9/8/2005              Signature

Name:  LOUANN  ADAIR

COMMONWEALTH OF VIRGINIA
CITY OF POQUOSON                                   4 Norman Drive, Poquoson, VA

Subscribed and sworn to/affirmed before me this day by

LOUANN  ADAIR

who is personally known to me.

Date:  9/8/2005

My commission expires: 10/31/2008        Signature of Notary Public:   A. MORGAN JENNINGS

BEST LEGAL SERVICES INC 1617 JOHN F KENNEDY BLVD PHILADELPHIA, PA 19103  (ph)212-567-7777

MICHEAL   7715                                                                91437 - 1

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**(Cite as: 2005 WL 578917 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
RLS ASSOCIATES, LLC, Plaintiff,
v.
THE UNITED BANK OF KUWAIT PLC,
Defendant.
**No. 01 Civ. 1290(CSH).**

March 11, 2005.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, Senior J.

**\*1** RLS Associates, LLC ("RLS") brings suit against United Bank of Kuwait PLC ("UBK" or "the Bank") for breach of a contractual agreement to pay a post-termination fee and for unjust enrichment. Presently before me are two motions, both by the Bank. The first is for an order requiring RLS to file an original bond to secure costs and attorneys' fees, pursuant to Local Civil Rule 54.2. I consider that motion in Part I of this opinion. The Bank's second motion is a request to depose Bruno Martorano by videoconference for the purpose of securing his testimony for trial. This motion is considered in Part II. For reasons stated below, defendant's first motion is denied, and its second motion is granted.

I

UBK seeks an order from this court directing RLS to post a bond to secure the costs of the Bank. In this district, such orders are governed by Local Civil Rule 54.2, which provides:

> The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount

and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to non-compliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the non-complying party.

While there are no set guidelines for applying Rule 54.2, courts generally consider the following factors in determining whether to require a party to file a bond in pursuant to the rule: "(1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders." *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,* 207 F.R.D. 23, 24 (E.D.N.Y.2001), *citing Johnson v. Kassovitz,* No. 97 Civ. 5789, 1998 WL 655534, *1 (S.D.N.Y. Sept. 24, 1998); *see also Selletti v. Carey,* 173 F.R.D. 96, 100-101 (S.D.N.Y.1997); *Bressler v. Liebman,* No. 96 Civ. 9310, 1997 WL 466553, at *3 (S.D.N.Y. Aug. 14, 1997); *Livnat v. Lavi,* No. 96 Civ. 4967, 1997 WL 563799, at *3 (S.D.N.Y. Sept. 9, 1997); *Beverly Hills Design Studio v. Morris,* 126 F.R.D. 33, 36 (S.D.N.Y.1989).

At the outset, three of these factors appear to militate *against* requiring a bond. Plaintiff is not a non-resident or foreign corporation, there is no history of noncompliance with prior orders, and the extent and scope of discovery in this case, while perhaps extensive, is not particularly unusual in its magnitude. The Bank does not dispute any of these factors. I now consider what remains.

*A. Plaintiff's ability to pay*

According to defendant's counsel, Loren F.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

(Cite as: 2005 WL 578917 (S.D.N.Y.))

Selznick, Esq., during a telephone exchange with plaintiff's counsel, Michael H. Smith, Esq ., Smith represented that he could "see no downside" for his client to continue this litigation. Allegedly, Smith informed Selznick that if UBK ultimately prevailed in this case, and consequently moved for attorneys' fees and costs (which UBK alleges to be substantial), UBK would never be able to recover due to RLS's lack of funds. [FN1]

> FN1. A partial exchange outlined in Selznick's declaration reads as follows:
> Smith: You will never recover any amount from RLS.
> Selznick: Why?
> Smith: Doesn't have it. Your recovery against him is worthless.
> Declaration of Loren F. Selznick, Oct. 26, 2004, at ¶ 4.

**\*2** Attorneys' fees are of particular concern in this case, since both parties agree that the Consultancy Agreements which form the subject matter of this action contain a choice of law provision that they "shall be governed by and construed in accordance with the laws of England," an incorporation which includes the general rule under English law "that fees are awarded to the prevailing party." *See RLS Assocs., LLC v. The United Bank of Kuwait PLC,* No. 01 Civ. 1290(CSH), 2003 WL 22801918, at \*1 (S.D.N.Y. Nov. 24, 2003). I shall revisit this issue in Part I.C of this opinion, *infra,* and assume for now that attorneys' fees must play a role in the bond analysis.

Concern arising from this telephone conversation led Selznick to commission two firms, Dun & Bradstreet and C.F. Anderson, to investigate the financial condition of RLS. Both firms reported an inability to locate any assets belonging to RLS. *See* Declaration of Loren F. Selznick, Oct. 26, 2004, Exs. 2 & 3.

Smith denies making the statements Selznick attributes to him. According to Smith, when told that UBK's legal fees at the time were approximately $450,000, he answered, "RLS' fees did not come close to that," and that plaintiff "does

not have that kind of money." Affidavit of Michael H. Smith, Nov. 19, 2004, at ¶ 25. He also disputes Selznick's claim that UBK could recover attorneys' fees connected to its appellate litigation and its motion for summary judgment. *Id.* Finally, Smith submits that Selznick's disclosure of their telephone exchange was improper based on Fed.R.Evid. Rule 408, which makes inadmissible, in certain contexts, evidence of settlement negotiations.

I do not find that Rule 408 makes Selznick's disclosure improper. Rule 408 makes evidence of settlement negotiations inadmissible "to prove liability for or invalidity of the claim or its amount." However, the rule does not exclude evidence offered "for another purpose, such as proving bias or prejudice of a witness," etc. Though it is true that demonstrating inability to pay "does not appear on the short list of permissible other purposes within Rule 408, that list is merely suggestive, and is not intended to be exclusive." *EMI Catalogue P'ship v. CBS/Fox Co.,* No. 86 Civ. 1149(PLK), 1996 U.S. Dist. Lexis 7240, at \*6 (S.D.N.Y. May 24, 1996). I find Selznick's admission of her conversation with Smith to be within the confines of acceptable "other purposes" in Rule 408. And even accepting Smith's version of what had been said, he did assert, when faced with potential legal costs of $450,000, that his client "does not have that kind of money."

Moreover, it is telling that RLS offers nothing to refute the findings of UBK's two investigatory firms, which reported that RLS has no assets that could be located.

In light of these circumstances, I find that UBK has an understandable concern regarding RLS's real ability to pay any eventual attorneys' fees or costs, should UBK prevail in this case. [FN2] In the ordinary instance, this weighs in favor of an order for a bond. *See e.g., Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 251 (2d Cir.1987) (upholding lower court bond order based, in part, on plaintiff's status as "debtor in bankruptcy" and a perceived "high risk" that plaintiff would be "unable to pay the defendant's costs should defendant prevail"); *Selletti v. Carey,* 173 F.R.D. 96, 101 (S.D.N.Y.1997), *aff'd,* 173 F.3d 104 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**(Cite as: 2005 WL 578917 (S.D.N.Y.))**

Cir.1999) (holding, based in part upon a finding that plaintiff's "only identifiable asset is a small parcel of land valued at $500," that "there is a serious risk that [plaintiff] will be unable to pay the reasonable costs to which the defendants may be entitled should they prevail"); *Bressler,* 1997 WL 466553, at *4 (ordering bond upon assertion of plaintiff's counsel that plaintiff "didn't have a dime," an assertion "whether flippant or serious," which justified "the imposition of a bond requirement against Marino as well as Bressler on the basis of his professed inability to satisfy any sanctions that might be ordered").

> FN2. However, I also note that nothing in this opinion should be construed as an indication of my ultimate opinion on the merits of underlying case itself. *See* Part I.B, *infra.*

*B. Merits claims*

*3 RLS opposes UBK's request for a bond order on the grounds that UBK has not shown that RLS's claims are of "dubious merit." *Pfizer, Inc.,* 207 F.R.D. at 25. Indeed, UBK did not attempt a merits-based argument in its initial memorandum in support of a bond order, and its terse argument in its reply brief is inconclusive. There are substantive issues in the underlying action that have not yet been resolved, and to which I currently intimate no opinion. For instance, on the issue of whether RLS's principal, Richard Swomley, made statements which the Bank reasonably believed were prejudicial to its interests, I reiterate my prior holding that "this issue is a fact-intensive question appropriate for jury resolution." *RLS Assocs., LLC v. The United Bank of Kuwait PLC,* No. 01 Civ. 1290(CSH), 2003 WL 22251332, at *7 (S.D.N.Y. Sept. 30, 2003). Defendant has not established that plaintiff's claims are of dubious merit. This weighs against a bond order.

*C. Legal Costs Expected to be Incurred*

Finally, the parties dispute the amount of the bond RLS would be required to post. In its notice of motion, UBK requests the amount be set at

$569,000, based upon the $489,000 it has already expended, and $80,000 more it expects it will cost to bring the case to trial.

RLS makes several arguments in opposition. It contends, first, that attorneys' fees under UK law should not be considered part of "costs" under Rule 54.2, and second, that UBK's failure to break down or analyze its attorneys' fee claims in any fashion requires the Court to make premature findings in a complex area of UK law. *See generally, Bensen v. Am. Ultramar Ltd.,* No. 92 Civ. 4420, 1997 WL 317343 (S.D.N.Y. June 12, 1997). Third, RLS asserts that most of the amount UBK has already expended in this case is attributable to UBK's own "scorched earth" litigation tactics.

While Rule 54.2 speaks only of "costs," costs in this context may include attorneys' fees when recoverable by a statute. *See, e.g., Selletti,* 173 F.3d at 106 (holding that defendants' costs and attorneys' fees are potentially recoverable under the Copyright Act). Underlying the question whether Rule 54.2 allows recovery of attorneys' fees based on UK law is whether the English rule is of any moment at all in an American court--a question which I chose not to address in my most recent opinion. *See* 2003 WL 22801918, at *2 ("[A]ssuming without deciding that defendant's contentions about the applicability and effect of English law are correct ...").

Other courts have ruled in circumstances similar to the present case, that under New York choice of law principles, English laws allowing recovery of attorneys' fees by the prevailing party are applicable. *See Katz v. Berisford Int'l PLC,* No. 96 Civ. 8695(JGK), 2000 WL 959721 (S.D.N.Y. July 10, 2000); *Csaky v. Meyer,* No. 94 Civ. 8117, 1995 WL 494574 (S.D.N.Y. Aug. 18, 1994); *Browne v. Prentice Dry Goods, Inc.,* No. 84 Civ. 8081(PKL), 1986 WL 6496 (S.D.N.Y. June 5, 1986), at *3 ("While it is true that under the so-called 'American Rule' attorneys' fees are not awarded to the successful litigant, this does not mean that an award of attorneys' fees under the 'English Rule,' followed by Argentina, is repugnant to the policy of New York State.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**(Cite as: 2005 WL 578917 (S.D.N.Y.))**

*4 Having found that the English rule on attorneys' fees is consistent with New York choice of law principles and prior precedent, I see no reason why the English rule cannot be applied under Local Rule 54.2. *Accord J. Barbour & Sons, Ltd. v. Tafico, Inc.,* Civ. A. No. 87-2609, 1989 WL 49518 (E.D.Pa. May 8, 1989).

On the other hand, RLS is correct to point out that it would be much too simplistic to assume that UBK is entitled to all of its attorneys' fees as a matter of UK law. Regardless of the final outcome of this case, attorneys fees will have to be carefully determined in accordance with British law.

A balancing of the relevant factors persuades the Court that in this case, UBK has shown that in principle it is entitled to the protection of a bond to be posted by RLS. As noted, on the present record UBK has a justified concern about RLS's financial ability to pay UBK's costs if UBK prevails after trial. Moreover, since the English Rule applies, attorney's fees are included in the recoverable costs, and so the amount which is potentially significant. Nor can it be said that UBK's denials of contractual liability to RLS are frivolous.

Contrary to RLS's argument, there is authority for the proposition that a party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond under Rule 54.2. Judge Leisure reached that conclusion in *Knight v. H.E. Yerkes and Assocs., Inc.,* 675 F.Supp. 139 (S.D.N.Y.1987), the first case UBK's brief cites on the point, which RLS's brief does not criticize or distinguish. In *Knight,* the record demonstrated that the ability of a plaintiff resident in Thailand to pay the defendant's anticipated recoverable costs in taking depositions abroad was problematic. Without discussing the merits of the case or any other factor, Judge Leisure ordered that the plaintiff post a cost bond under Local Rule 39, the precursor to Rule 54.2, stating succinctly that "[a]gainst this background, the Court believes that there is a substantial risk that plaintiff would be unable to pay defendant's costs should defendant prevail, and that plaintiff should therefore be required to file a bond for costs." *Id.* at 142. I

reach the same conclusion in this case.

While UBK's entitlement in principle to a cost bond is thus established, it remains to consider what the amount should be in practice. UBK prays for a bond in the amount of $569,000, that being the total of $489,000 in legal fees and expenses UBK says has been incurred in the litigation to date, plus "at least $80,000" to cover the anticipated expenses of the trial. But I am not prepared to accept this amount automatically as the amount that would be recoverable as costs under the English Rule, and consequently determinative of the amount of the cost bond.

Judge Buchwald's thoughtful and thorough discussion of the English Rule in *Bensen,* 1997 WL 317343, at *7, is instructive. Citing and quoting several law journal articles, Judge Buchwald observed that

*5 the rule is not just a simple fee-shifting provision.... While the English rule is typically described as a "loser pays" system, the application of the cost-shifting principle is much more complicated than the simple phrase "loser pays" implies.... [E]ven if the losing party has the wherewithal to pay, there is a significant difference between the costs incurred and the recovery assessed by the "taxing master." The loser should not be expected to pay more than the minimum expenses necessarily incurred by the winner, whereas the prevailing counsel can charge his client the maximum fee.

(citations and internal quotation marks omitted). This discussion quite strongly suggests that the invoices for legal services and expenses rendered by its counsel to UBK might not be, indeed probably would not be, assessed in their full amounts against RLS by an English "taxing master" (a title with Dickensian resonance), unless the taxing master was satisfied that those charges constituted "the minimum expenses necessarily incurred by" UBK, the prospective winner.

In these circumstances, if UBK wishes to press its application for a cost bond, it must demonstrate that under the contractually governing United Kingdom law and practice, an English taxing master (or other

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**(Cite as: 2005 WL 578917 (S.D.N.Y.))**

competent authority) would probably award UBK as the prevailing party its attorney's fees and expenses in the amount specified in the cost bond to be posted in this Court. Neither this Court not American counsel for the parties are competent to express a view on that subject. UBK must support its suggested bond amount by an affidavit or affidavits from English solicitors or barristers. If such submissions are filed and served, RLS will be given a reasonable opportunity to file and serve opposing affidavits by English experts, if so advised.

It follows that UBK's motion for an order pursuant to Local Rule 54.2 is denied on the present record, without prejudice to renewal upon presentation of the further proof described *infra*. [FN3]

> FN3. I note in passing that there is apparently an alternative basis upon which UBK could have sought a cost bond. In *J. Barbour & Sons, Ltd. v. Taftco, Inc.*, No. Civ.A. 87-2609, 1989 WL 49518 (E.D .Pa. May 8, 1989), the clothing distribution contract between the parties provided that the contract would be governed by English law. The court granted plaintiff's motion for an order directing the financially stressed defendant to post a cost bond because "[a]n English statute provides that a plaintiff or counterclaiming defendant should post a security bond when it appears that the party would be unable to pay the other party's costs (including attorney's fees)." *Id.*, at *3. In the case at bar, RLS and UBK having contractually selected UK law as the governing law, it would seem that UBK could have relied upon the English statute to which the district court referred in *Barbour*. But I need not pursue that possibility further because Local Rule 54.2 is equally available to UBK and is not in derogation of UK law.

II

Defendant's second motion concerns the testimony of Bruno Martorano, formerly a senior officer of Ahli United Bank B.S.C., the parent company of UBK, and a Director of the IIBU Fund II PLC. Defendant alleges that as the former Deputy Chief Officer of the Bank, Martorano was witness to key information concerning plaintiff's cause of action, and therefore would be a critical witness in its defense. Martorano is no longer employed by the bank or its parent company. He now works and resides in Dubai, United Arab Emirates. According to UBK, Martorano is unwilling to travel to New York in order to provide live testimony under oath. However, he has agreed to be deposed by way of videoconference in order to secure his trial testimony.

During the October telephone conference, it became clear that prior to taking Martorano's video testimony, the Bank would have to establish by what authority under the rules I could direct such deposition to take place. That authority, as the Bank notes in its motion papers, is found in Fed.R.Civ.P. 32, which states in pertinent part:

*6 (a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

...

(B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or

...

(D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 6

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**(Cite as: 2005 WL 578917 (S.D.N.Y.))**

testimony of witnesses orally in open court, to allow the deposition to be used.

Ostensibly, Rule 32 is a discovery rule, which has its roots in Fed.R.Civ.P. 26(d). *See United States v. Int'l Bus. Machs. Corp .,* 90 F.R.D. 377, 381 n. 7 (S.D.N.Y.1981). One could argue, therefore, that UBK's requested deposition is barred by the expiration of the discovery deadline. Indeed, some courts have held as much. *See e.g., Henkel v. XIM Products, Inc.,* 133 F.R.D. 556 (D.Minn.1991); and *Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556 (S.D.Cal.1999). However, the majority of courts considering this issue have made what can only be described as a federal common law distinction between "discovery depositions" and "trial depositions" (or alternatively, "preservation depositions"), and have held the latter category permissible even after the discovery deadline had passed.

For instance, in *Estenfelder v. Gates Corp.,* 199 F.R.D. 351 (D.Colo.2001), a highly instructive and useful opinion on this subject, defendant sought to take preservation depositions of four of its former employees who resided in Europe. Like Martorano in the present case, each of the would-be deponents in that case no longer worked at the defendant corporation, each resided in a foreign continent, and none could be compelled through subpoena to attend trial. Like the present case, the deadline for discovery had passed by the time defendant made its motion. Noting that "courts cannot ignore a party's need to *preserve* testimony for trial, as opposed to the need to *discover* evidence, simply because the period for discovery has expired," *id.* at 355 (emphasis in original), the court granted defendant's motion. It even went so far as to note, "some discovery may occur during a deposition which is conducted for purposes of preserving the testimony of a witness, but if the primary purpose of the deposition is to preserve testimony for trial, the deposition should not be disallowed simply because of that potential eventuality." *Id.*

**\*7** There is also precedent in this circuit for the taking of preservation depositions. In *Manley v. Ambase Corp.,* 337 F.3d 237, 247 (2d Cir.2003),

the Second Circuit permitted parties to depose defendant's former chairman "once as part of the discovery process and again pursuant to a *de bene esse* proceeding ordered by the court when it appeared that the eighty-year old California resident would not travel to New York for trial," the latter deposition being one taken "in anticipation of a future need." *See* Black's Law Dictionary 408 (7th ed.1999).

In this case, it is clear that defendant's proposed deposition of Martorano would serve the purpose of testimony preservation rather than discovery. Martorano was in senior management at UBK's parent company prior to his departure. While he was still an employee, there was no reason for the Bank to depose Martorano, as it knew the substance of his testimony, and intended to present him as a live witness at trial. Defendant attests that Martorano has key information regarding the circumstances of plaintiff's case, and remains a critical witness. The only reason it seeks to depose him is that he has now left the Bank and works in Dubai, and is unwilling to travel to New York for live in-court testimony.

Plaintiff's position is that Rule 32 has been, in effect, superceded by a 1996 amendment to Fed.R.Civ.P. Rule 43(a) which provides that "[t]he court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location." [FN1] Prior to 1996, the rules did not provide for a witness to testify via live video.

> FN1. More accurately, RLS's position is that Martorano should *only* testify by personal appearance a trial. However, plaintiffs' further position is that should the Court allow Martorano to testify by anything other than personal appearance, it should only be by way of live video testimony.

Certainly, there are policy reasons why live, in court testimony would be preferred over prerecorded testimony. *See Int'l Bus. Machs. Corp.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**(Cite as: 2005 WL 578917 (S.D.N.Y.))**

90 F.R.D. at 381 ("There is a strong preference for live testimony being recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness ."). However, it is clear that Rules 43(a) and 32(a) are meant to compliment each other; and depending on the nature of the case and the circumstances involved, one procedure may be preferred over another. In fact, the Advisory Committee Notes to the 1996 Amendment of Rule 43(a) states that "[o]rdinarily depositions, including video depositions, *provide a superior means of securing the testimony of a witness* who is beyond the reach of a trial subpoena" (emphasis added); superior, that is, to a contemporaneous transmission of a witness's testimony.

In the present case, a contemporaneous transmission of Martorano's testimony would be highly inconvenient, due to the large time difference between New York and Dubai. The greater distance between court and witness also leads to a greater likelihood of technical problems arising, which would interfere with the flow of the trial and cause unnecessary delays--problems which might better be handled in a deposition rather than during trial.

**\*8** Under these circumstances, I grant defendant's motion to obtain the deposition testimony of Martorano by way of videoconference. Counsel for both parties are directed to confer with each other and make arrangements with regard to an appropriate time and place within which to conduct the deposition, as well as proper administration and procedure by which the deposition shall ensue. I do not doubt that they will make such arrangements in good faith.

Counsel are directed to advise the Court by letter, not later than April 15, 2005, with respect to the present status of the case, with particular emphasis on its readiness for trial.

It is SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 578917 (S.D.N.Y.), 66 Fed. R. Evid. Serv. 924

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23671533 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Application for Attorneys Fees (Oct. 20, 2003)

• 2003 WL 23671531 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Jul. 02, 2003)

• 2003 WL 23671530 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for Summary Judgment (May. 16, 2003)

• 2003 WL 23671532 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment as to Liability (May. 16, 2003)

• 2002 WL 32595510 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Motion to Reargue (Aug. 14, 2002)

• 2002 WL 32595508 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for Reconsideration and Partial Stay (Jul. 31, 2002)

• 2002 WL 32595506 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Application for Fees and Costs (Mar. 26, 2002)

• 2001 WL 34611464 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Motion to Vacate Default Judgment (Aug. 03, 2001)

• 2001 WL 34611462 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for Relief from Default and Stay of Inquest (Jul. 20, 2001)

• 1:01cv01290 (Docket)
                              (Feb. 21, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E



Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1994 WL 376914 (E.D.Pa.)

**(Cite as: 1994 WL 376914 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Deborah MINES, Administrator of the Estate of
Darian Mines, Deceased, et al.
v.
CITY OF PHILADELPHIA, et al.
**Civ. A. No. 93-3052.**

July 18, 1994.
Alan E. Denenberg and David A. Soltz, Abramson
and Denenberg, P.C., Philadelphia, PA, for
plaintiffs.

Jeffrey M. Scott, Asst. City Sol., Philadelphia, PA,
for defendants.

MEMORANDUM AND ORDER

HUTTON, District Judge.

**\*1** Presently before the Court is the plaintiffs'
Motion for a Thirty (30) Day Extension of
Discovery Deadline, the defendants' response, the
defendants' Motion to Quash and for a Protective
Order, the defendants' Second Motion for a
Protective Order, the defendants' Third Motion for a
Protective Order and the plaintiffs' response.

I. BACKGROUND

The plaintiffs, in this civil rights action, claim that
Philadelphia Police Officer, Walker Stevenson,
used excessive force when he shot and killed the
plaintiffs' decedent, Darian Mines, on June 8, 1993.
Pursuant to § 1983 and pendent state law causes of
action, the plaintiffs seek to recover damages from
the City of Philadelphia, Officer Stevenson and
others.

The plaintiffs complaint was filed on June 8, 1993.
On September 7, 1993, the Court issued its first
Scheduling Order. Pursuant to the Scheduling
Order, all discovery was to be completed by
January 14, 1994. Prior to January 14, 1994, the
plaintiffs did not take any depositions, but they did
propound interrogatories, requests for admissions
and requests for production of documents upon the
defendants.

On January 27, 1994, the plaintiffs filed a Motion
to Extend Discovery, which the Court granted.
Pursuant to the Amended Scheduling Order, all
discovery was to be completed by April 14, 1994
and all dispositive motions were to be filed no later
than two weeks before the close of discovery. In
accordance with the Amended Scheduling Order,
the defendants filed their Motion for Summary
Judgment on March 31, 1994 and completed
discovery prior to April 14, 1994.

On March 29, 1994, the plaintiffs noticed the
depositions of Officer Stevenson, Lieutenant Hilly
and Detective Pyree for April 11, 1994. The
plaintiffs also noticed the depositions of Lieutenant
Mlyzarski, Police Officer Overton and Lieutenant
Sterling for April 4, 1994. Due to the short period
of notice and the pendency of the Easter holiday,
the plaintiffs acceded to the defendants' request to
reschedule the depositions for April 12, 1994. By
April 12, 1994, all of the depositions which had
been noticed by the plaintiffs were completed,
except the deposition of Detective Kerwyn. His
deposition commenced on April 12, 1994, but was
not completed on that date. According to the
plaintiffs, the deposition was not completed because
of defense counsel's objections concerning the
scope of the questions and his advice that the
deponent need not answer further questions.
Detective Kerwyn's deposition was adjourned and
rescheduled for April 21, 1994, after the discovery
deadline.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 2

Not Reported in F.Supp., 1994 WL 376914 (E.D.Pa.)

**(Cite as: 1994 WL 376914 (E.D.Pa.))**

On April 13 and 14, 1994, the plaintiffs issued ten subpoenas to numerous parties and potential witnesses. On April 14, 1994, the plaintiffs also filed the present motion for an extension of time in which to conduct discovery. The defendants then filed the instant motion to quash the subpoenas.

Even though the discovery deadline had expired, the plaintiffs continued to forward discovery requests to the defendants. On May 10, 1994, the plaintiffs served a subpoena upon the Custodian of Records of the Philadelphia Medical Examiner's Office, which required documents to be produced on May 19, 1994. On May 16, 1994, the defendants filed their second motion to quash the subpoena. On May 24, 1994, the plaintiffs served thirty requests for admissions and thirty interrogatories upon the defendants. On May 27, 1994, the defendants filed their third motion to quash or, alternatively, for a protective order.

## II.DISCUSSION
### A. *The Pre-April 15, 1994 Subpoenas*

*\*2* The defendants object to the April 13 and 14, 1994 subpoenas on the ground that their response to the subpoenas would necessarily have to be after the April 14, 1994 discovery deadline. They argue that the plaintiffs utilized subpoenas rather than conventional discovery in order to circumvent the April 14, 1994 discovery deadline. They further argue that the plaintiffs' attempt to obtain such discovery contravenes the Court's Amended Scheduling Order and would prejudice the defendants in that they had already submitted their Motion for Summary Judgment.

Although the Amended Scheduling Order does not specify whether discovery requests are to be filed before the deadline or whether responses must be received by the deadline, it is clear that the former is the approach contemplated by the Court. The approach advocated by the defendants would enable litigants to withhold discovery until after the expiration of the deadline and then claim that the discovery was untimely. Since the April 13 and 14, 1994 subpoenas were timely, they must be complied with unless there is some alternative basis for

quashing the subpoenas.

The defendants argue, alternatively, that the subpoenas should be quashed or a protective order issued because compliance would pose an "undue burden". Rule 26(c) of the Federal Rules of Civil Procedure provides in pertinent part that "upon motion by a party ... the court ... may make any order which justice requires to protect a party from ... undue burden and expense ..., including ... that the disclosure or discovery not be had." Fed.R.Civ.P. 26(c). The burden of persuasion is clearly on the party seeking the protective order, which must demonstrate a particular need for protection, not a broad allegation of harm unsubstantiated by specific examples. *Cipollone v. Liggett Group,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976 (1987); *J.T. Baker, Inc. v. Aetna Casualty & Surety Co.,* 135 F.R.D. 86, 90 (D.N.J.1989). Further, the harm must be significant. *Cipollone,* 785 F.2d at 1121; *J.T. Baker,* 135 F.R.D. at 90.

The defendants have not made the requisite particularized showing of harm to justify the entry of a protective order. Indeed, the only potential harm alleged is that compliance would result in their having to "cease ... preparation for trial." Other than that, the defendants merely allege, broadly, that to permit the [p]laintiffs to issue the subpoenas ... would create an undue expense and burden on the [d]efendants and their [c]ounsel. Such broad allegations fall well short of the required particularized showing of "significant" harm. Accordingly, the subpoenas issued by the plaintiffs on April 13 and 14, 1994 shall be complied with.

### B. *The Kerwyn Deposition and the Post-April 14, 1994 Discovery Requests and Subpoenas*

The plaintiffs seek an extension of the discovery deadline to permit them to complete the deposition of Detective Kerwyn, which was commenced on April 12, 1994. Under Federal Rule of Civil Procedure 16(b), except in actions exempted by the Local Rules which are not applicable in this matter, the Court must issue a scheduling order which limits

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 3

Not Reported in F.Supp., 1994 WL 376914 (E.D.Pa.)

**(Cite as: 1994 WL 376914 (E.D.Pa.))**

the time, *inter alia,* to complete discovery. Fed.R.Civ.Pro. 16(b)(3). The purpose of a scheduling order is "to advance the case in an orderly and prompt manner in order to secure the just, speedy and inexpensive disposition of the case as soon as possible under the circumstances." *Fox v. S.P. Parks, Inc.,* No. 85-3371, 1986 WL 1907, at *2 (E.D.Pa. Feb. 12, 1986). Under Rule 16(b), the Court may only modify the Scheduling Order upon a showing of good cause. Fed.R.Civ.P. 16(b). The Advisory Committee Notes to Rule 16 provide that "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."
In order to establish good cause, the plaintiffs should demonstrate that a more diligent pursuit of discovery was impossible. *McElyea v. Navistar International Transportation Corporation,* 788 F.Supp. 1366, 1371 (E.D.Pa.1991), *aff'd without opinion,* 950 F.2d 723 (3d Cir.1991).

*3 The plaintiffs have sustained their burden as to the Kerwyn deposition, but have failed to sustain their burden as to the subpoenas and discovery requests filed after the April 14, 1994 discovery deadline. The plaintiffs attempted to take Kerwyn's deposition sufficiently in advance of the discovery deadline to permit them to reasonably believe that the deposition would be completed before the deadline. It was at the defendants' request that the deposition was postponed until April 12, 1994. It also appears that the deposition would have been completed on April 12, 1994, but for a bona fide disagreement between the plaintiffs' attorney and counsel for the defendants as to the propriety of certain questions posed at the deposition. Under such circumstances, the Court finds that the plaintiffs are entitled to complete the deposition of Detective Kerwyn.

In contrast, the plaintiffs have offered absolutely no explanation for their failure to complete all other discovery in this matter by the April 14, 1994 deadline established by this Court in its Amended Scheduling Order. Accordingly, the Court shall deny the plaintiffs' request for a thirty-day extension of the discovery deadline and shall grant the defendants' Third Motion for a Protective Order, to

the extent that the defendants seek to be shielded from responding to the post-April 15, 1994 discovery requests. [FN1]

An appropriate Order follows.

ORDER
AND NOW, this 13th day of July, 1994, upon consideration of the Plaintiffs' Motion for a Thirty (30) Day Extension of Discovery Deadline and the Defendants' response, IT IS HEREBY ORDERED that the Plaintiffs' Motion is DENIED.

IT IS FURTHER ORDERED that:

(1) the Defendant's Motion to Quash or for a Protective Order (docket no. 19) is DENIED;

(2) the Defendants' Third Motion to Quash or for a Protective Order is GRANTED IN PART and DENIED IN PART;

(3) the Defendants shall permit the Plaintiffs to take the deposition of Detective Kerwyn within twenty (20) days from the date of this Order;

(4) the Defendants shall comply with all subpoenas and other discovery requests served upon them on or before April 14, 1994. The Defendants shall serve their responses upon the Plaintiffs within twenty (20) days from the date of this Order;

(5) the Defendants shall not be required to respond to discovery requests served after April 14, 1994;

(6) the Defendants' Second Motion for a Protective Order (docket no. 28) is DENIED as moot; and

(7) This civil action shall be removed from the trial pool in order to permit the completion of discovery in accordance with this Order. The case shall be placed in the trial pool on August 8, 1994.

> FN1. This disposition renders the Defendants' Second Motion for a Protective Order moot.

Not Reported in F.Supp., 1994 WL 376914

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 4

Not Reported in F.Supp., 1994 WL 376914 (E.D.Pa.)

**(Cite as: 1994 WL 376914 (E.D.Pa.))**

(E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

- 2:93cv03052  (Docket)
                         (Jun. 08, 1993)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

**From:**        John Macoretta
**To:**          Mangi, Adeel A. (x2563)
**Date:**        9/13/2005 2:54:06 PM
**Subject:**     RE: Centocor deposition subpoenas

Adeel:  The only thing improper is your false depiction of our prior conversations.  I have done nothing
unethical.  If you think otherwise I am happy to provide you with the address of the Pa. Disciplinary Board.

   At depositions I will ask each of these witnesses when they first spoke to anyone from J&J about the
subpoenas, and if the answer is that it was after 2:45 today then your statement that you are representing
these people will be the subject of further investigation.  JOHN

John A. Macoretta
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 9/13/2005 2:44:13 PM >>>
John:  We told you we were in the process of contacting them and would
arrange representation.  You committed to telling us as soon as you had
served them.  Given those communications, for you to try and talk to them in
the moments after you serve them (without telling us you have done so -
which you committed to doing) and before we can reach them, is flatly
improper and unethical.  Moreover, and in any event, I am telling you now
that we do represent them with one exception and we expect to reach that one
person presently.  So there is a barrier to you contacting them and we
expect you to abide by your obligations as an officer of the court.


-----Original Message-----
From: John Macoretta [mailto:JMacoretta@srk-law.com]
Sent: Tuesday, September 13, 2005 2:39 PM
To: AAMANGI@PBWT.COM
Cc: ADSCHAU@PBWT.COM
Subject: Re: Centocor deposition subpoenas


Adeel:  There was no oversight.   I asked specifically if you
represented the former Centocor sales representatives, and you said that
you would contact them after they were served, as you state below.
Therefore you did not represent those persons.  Therefore there is no
barrier to us contacting them.  JOHN

John A. Macoretta
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 9/13/2005 2:02:41 PM
>>>

John:  At our last meet and confer regarding Centocor sales rep
depositions,

you agreed to apprise us after you had attempted to serve the six
former
Centocor sales representatives.  We agreed to defer a protective order
discussion until that time.  We also told you we would contact them to
offer
representation as soon as you determined which of the six you wanted to
and
were able to subpoena.  We learned today that one of your colleagues,
Jay
Cohen, called one of those reps (Wegner) and sought to engage him in
conversation about substantive issues regarding this case.  Mr. Wegner
is
represented by counsel (us) and the others are or are expected to
shortly be
as well, so ex parte conversation are improper..  We trust this was
oversight and will not happen again.  We expect you to let us know once
you
have sorted out the logistics of service so we can meet and confer
again
before filing our protective order motion.

Adeel Abdullah Mangi
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Ph: (212) 336 2563
Fax: (212) 336 7947
aamangi@pbwt.com


-------------------------------------------------------------------------
--
Privileged/Confidential Information may be contained in this message.
If you
are not the addressee indicated in this message (or responsible for
delivery
of the message to such person), you may not copy or deliver this
message to
anyone.  In such case, you should destroy this message and kindly
notify the
sender by reply email.  Please advise immediately if you or your
employer do
not consent to Internet email for messages of this kind.


-------------------------------------------------------------------------
--

IRS Circular 230 disclosure:  Any tax advice contained in this
communication
(including any attachments or enclosures) was not intended or written
to be
used, and cannot be used, for the purpose of (i) avoiding penalties
under the
Internal Revenue Code or (ii) promoting, marketing or recommending to
another
party any transaction or matter addressed in this communication.  (The

Case 1:01-cv-12257-PBS   Document 1765   Filed 10/11/05   Page 48 of 48

foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations
governing tax practitioners.)
======================================================================
==


---------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you
are not the addressee indicated in this message (or responsible for delivery
of the message to such person), you may not copy or deliver this message to
anyone.  In such case, you should destroy this message and kindly notify the
sender by reply email.  Please advise immediately if you or your employer do
not consent to Internet email for messages of this kind.


---------------------------------------------------------------------
IRS Circular 230 disclosure:  Any tax advice contained in this communication
(including any attachments or enclosures) was not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed in this communication.  (The
foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations
governing tax practitioners.)
======================================================================


**CC:**        Schau, Andrew D. (x2546)