# EXHIBIT 10



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | MDL No. 1456 |
| | ) | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | ) ) | Judge Patti B. Saris |
| ALL CIVIL ACTIONS | ) ) | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING SUBPOENAS TO PUTATIVE CLASS MEMBERS

- i -



E-SERVED
01/23/04
04:21 PM ET
AWP-MDL No. 1456

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    ARGUMENT ......................................................................................................1

       A.   Defendants Have Failed To Demonstrate That Discovery Of The Health Plans Is
            Absolutely Necessary And Cannot Be Obtained From Other Sources.................3

            1.   Much of the Information Defendants Seek is Irrelevant, Let Alone
                 Absolutely Necessary....................................................................................3

            2.   Alternative Sources Can be, and in Some Instances, Have Been
                 Subpoenaed ...................................................................................................5

       B.   Defendants Have Failed To Demonstrate That Their Subpoenas Are Not
            Burdensome ..............................................................................................................7

       C.   The Case Law Supports Plaintiffs' Motion .......................................................10

III.   CONCLUSION.................................................................................................13

- ii -



## I.    INTRODUCTION

Defendants attempt to portray plaintiffs as unreasonably interfering with their discovery efforts, but that is not the case.  Persuasive authorities provide that class members are not subject to discovery as a matter of course, yet defendants have proceeded as if the absent class members are parties.  Plaintiffs have acted, as duty calls, in order to protect these absent class members from undue harassment.  Furthermore, and far from seeking to impede all of defendants' discovery efforts in this arena, plaintiffs have proposed a reasonable procedure that safeguards the rights of absent class members yet contemplates the possibility of narrowly-targeted, limited discovery of a small sampling of class members.  In response, defendants reject out-of-hand the cogent procedure proposed by plaintiffs.  However, defendants have failed to meet the heavy burden that is upon them to justify the subpoenas, which demonstrates the need for Court intervention.

## II.    ARGUMENT

Since the filing of this motion, defendants have expanded their efforts to take discovery of class members, having served new subpoenas on three more Health Plans.[1]  Defendants also confirm that they have had communications with 37 of the 40 Health Plans subpoenaed, Defs. Br. at 7, yet defendants have made no effort to demonstrate that these Health Plans have been advised of their rights in this litigation and of the fact that defendants are seeking information from them that defendants hope will be used to defeat those rights.  *See Babbitt v. Albertson's, Inc.*, 1993 U.S. Dist. Lexis 18801, at *21 (N.D. Cal. Jan. 28, 1993) (citing the need for appropriate disclosures to be made to absent class members from whom a defendant seeks

---

[1] Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Inc., and G.E. Financial Company.  These subpoenas largely duplicate the information sought in the original subpoenas.



discovery). Thankfully, and as a result of this motion, it appears that none of these class members have yet begun to produce documents and are awaiting the Court's ruling before taking any further action.

As plaintiffs' opening memorandum explained, defendants' subpoenas to the Health Plans run afoul of class action concepts because they require affirmative conduct on the part of companies that are absent and may never be parties to the action. No less authority than the MANUAL FOR COMPLEX LITIGATION recognizes that discovery of absent class members "should be permitted only to the extent necessary and should be *carefully limited* to ensure that it serves a legitimate purpose and is not used to harass either the class representatives or the class members." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 at 231 (1995) (hereafter "MANUAL") (emphasis added). Thus, discovery of putative class members is generally not permitted without leave of court. *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *Baldwin & Flynn v. National Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). If any discovery is to be permitted at all, "*it should be sharply limited and allowed only on a strong showing of justification*." MANUAL, § 30.232 at 232 (quoting 8 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2171 (2d ed. 1994)) (emphasis added). Accordingly, courts generally require that the proposed discovery (i) be *absolutely necessary, see, e.g., Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); (ii) be *unavailable elsewhere, see, e.g., Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974), and (iii) will not subject absent class members to *undue harassment* or excessive taxing of their resources, *see, e.g., Robertson v. National Basketball Assoc.*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975).

- 2 -



Defendants do not overtly dispute these precepts of law.  Instead, defendants attempt to marginalize them and thereby minimize defendants' burden by (i) citing to cases that have permitted discovery of class members under certain circumstances, and (ii) making conclusory statements regarding the purported relevancy of the information sought, defendants' good faith and the alleged (and unsupported) limited burden imposed by the subpoenas.  Defendants' response falls far short of the *strong* justification required by the authorities cited by plaintiffs.  Defendants have failed to demonstrate that the discovery of the Health Plans is absolutely necessary and cannot be obtained from other sources.  Nor do defendants present a convincing argument that the subpoenas are not unduly burdensome.  Finally, the cases that defendants rely on do not help their cause here.

**A.      Defendants Have Failed To Demonstrate That Discovery Of The Health Plans Is Absolutely Necessary And Cannot Be Obtained From Other Sources**

**1.      Much of the Information Defendants Seek is Irrelevant, Let Alone Absolutely Necessary**

Defendants' attempt to establish the import of the information that they seek from the Health Plans falls short.  First, defendants claim that the documents sought in the subpoenas are necessary to assess whether AWP is used as a reimbursement benchmark, Defs. Br. at 10, yet, *defendants know it is.*  If a Health Plan does not use AWP, it is not considered a class member because the class is defined as "[a]ll persons or entities who . . . paid any portion of the purchase for a prescription drug manufactured by a Defendant . . . at a price calculated by reference to the published AWP during the Class Period."  In any event, defendants fail to explain how the prevalence of AWP-based reimbursement in the private insurance market is more efficiently presented through documents obtained via blunderbuss subpoenas to class members instead of through expert testimony.

- 3 -



Another purported need for the information sought by defendants is to test whether defendants engaged in a pattern and practice that caused the class members to make inflated payments, Defs. Br. at 10, yet reliance is not an element of plaintiffs' claims. *See Gunter v. Ridgewood Energy Corp.*, 1996 U.S. Dist. Lexis 22298, at *12 (D.N.J. Oct. 16, 1996) (denying discovery of class members because reliance was not a common issue). Defendants also claim that the discovery is relevant to damages, Defs. Br. at 10, yet discovery into damages suffered by class members, if permitted at all, is not allowed until after common questions of liability have been determined. *See Enterprise Wall Paper*, 85 F.R.D. at 327; *In re Visa Check/MasterMoney Antitrust Litig.*, Memorandum and Order at 2 (S.D.N.Y. May 7, 1999) (attached at Exhibit E to the Sobol Declaration accompanying plaintiffs' opening brief).

Defendants also fail to explain why other inquiries are relevant despite portraying their subpoenas as reasonable and seeking only information that is at the heart of the case. *See generally* Defs. Br. at 8-11. For instance, defendants fail to explain how each and every "communication[] [with] providers or pharmacies relating to reimbursement, payment or prices of any subject drug" is relevant. *See* AARP Subpoena at 11 (attached as Exhibit B to the Sobol Declaration accompanying plaintiffs' opening brief). Nor do defendants explain the relevance of their quest for all documents relating to "third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover subject drugs." AARP Subpoena 18. Defendants also fail to defend requests for *all* processing policies and procedures, *all* Plan profit analyses, and *all* studies or analyses or audits regarding drug pricing or reimbursement generally. Not only is this type of information

- 4 -



irrelevant, it can hardly be characterized as absolutely necessary to defendants' purported defenses. *Enterprise Wall Paper*, 85 F.R.D. at 327.

Defendants also fail to explain how "all documents relating to or reflecting the amounts [each class member] reimburse providers for any subject drug" (*see* AARP Subpoena at 6) – notwithstanding the undue burden associated with actually responding to the request – are relevant. Perhaps such documents would pertain to individual damages, but, again, damages are not presently at issue. *See Enterprise Wall Paper*, 85 F.R.D. at 327 (damages discovery, if permitted at all, should ordinarily be postponed until resolution of common issues).

In sum, defendants have failed to shoulder the heavy burden of establishing the relevancy – let alone the absolute necessity – of the information that they seek.

### 2.   Alternative Sources Can be, and in Some Instances, Have Been Subpoenaed

Since plaintiffs' filed the instant motion, defendants have subpoenaed several third-parties that will possess much of the information that defendants seek from the Health Plans. Defendants served 85 requests on the Department of Health and Human Services ("HHS") (*see* Declaration of Edward Notargiacomo in Support of Plaintiffs' Motion for a Protective Order ("Notargiacomo Decl.") at Ex. A) and 34 requests each on 30 Medicare Part B Carriers located throughout the country (*see* Notargiacomo Decl. at Ex. B). Defendants have also served a sweeping subpoena on the Records Management and Services Officer for the Comptroller General of the United States, seeking the production of 32 categories of documents on all topics related to AWP and drug pricing from multiple federal agencies, including HHS, the General Accounting Office, the Office of Inspector General and the Centers for Medicare and Medicaid Services ("CMS"). *See* Notargiacomo Decl. at Ex. C. They also served a similar subpoena on the Department of Veterans Affairs. *See* Notargiacomo Decl. at Ex. D. These subpoenas obviate

- 5 -



the need for absent class members to produce many documents that defendants have requested them to provide, such as all documents from CMS, HHS or any other federal agency regarding the pricing of drugs.  Nonetheless, defendants continue to insist that the Health Plans produce this same information.  *See, e.g.* Defs. Br. at 7 (citing Document requests 22, 23 and 24).

Notwithstanding their robust subpoena efforts, defendants have still failed to serve subpoenas on their PBM co-conspirators.  These PBMs, who are not class members, will possess much of the information that defendants have subpoenaed from the Health Plans.  As defendants admit in their response, they seek documents concerning

> the PBMs with which Health Plans have contractual relationships
> and, with respect to those PBMs, the methodologies used by the
> PBM to calculate amounts due to pharmacies and from the Plans
> for drugs provided to Plan beneficiaries (Document requests 2, 10,
> 16, 18).

Defs. Br. at 7.  This information is clearly available from the PBMs, yet defendants choose to burden class members instead of going to the PBMs.[2]

As noted in plaintiffs' opening memorandum, defendants have also subpoenaed Medical Plan Processors and Benefit Consultants, Claims Administrators and Medical Plan Auditors.  These organizations, which are not class members, will have documents related to reimbursement methodologies, servicing fees and contractual relationships.  Defendants have no valid response to this assertion.

Defendants also gloss over the fact that they will receive from the named plaintiffs documents on many of the topics raised by defendants in their opposition brief.  Although defendants characterize plaintiffs' productions as "paltry" and accuse plaintiffs of failing to

---

[2] Plaintiffs have served subpoenas on the four major PBMs.



produce "documentation concerning the issues central to their claims," Defs. Br. at 6, this is simply untrue. The plaintiff funds have produced or are in the process of producing, *inter alia*, relevant drug payment information, all benefit plans relating to drug reimbursement, all contracts and communications with PBMs including any negotiations concerning drug reimbursement issues, all global communications with plan beneficiaries concerning drug benefits and drug reimbursement, and all communications with any benefit consultants regarding the pricing of pharmaceuticals.

At a minimum, before burdening absent, putative class members with discovery, defendants should be required to review the information that is produced in response to their various governmental and plan processing/auditing subpoenas, plaintiffs' PBM subpoenas and plaintiffs' complete production before asserting that such parties do not have the information that defendants seek. Thus, as a closer look at these issues reveals, defendants have failed to demonstrate that the information sought in the class member subpoenas is unavailable elsewhere. *See Clark*, 501 F.2d at 340-41.

**B.    Defendants Have Failed To Demonstrate That Their Subpoenas Are Not Burdensome**

Tellingly, defendants do not deny that their subpoenas request a huge number of documents, and defendants admit that their subpoenas are indeed broad. Defs. Br. at 6-7. For instance, defendants do not deny that Request No. 11 in the subpoena to AARP Health Care Options (which appears in all of the subpoenas) demands "[a]ll communications [with] providers or pharmacies relating to reimbursement, payment or prices of any subject drug," which would call for the production of every single reimbursement request received from, and payment made to, all doctors and pharmacies over an eleven-year period for every employer, fund and,

- 7 -



conceivably, individual to whom this absent class member provides medical or health insurance

benefits.  Nor do defendants deny that they seek all documents related to *all* processing policies

and procedures, *all* Plan profit analyses, *all* payments made based in whole or in part on AWP

and *all* studies or analyses or audits regarding drug pricing or reimbursement generally.  As

plaintiffs' pointed out in their opening brief, the scope of defendants' subpoenas is truly

breathtaking.

Defendants seek to assuage any potential concern with such breadth by assuring the

Court that "they would negotiate with each respondent to address their individual concerns . . ."

Defs. Br. at 7.  This explanation provides putative class members with little solace, as the

subpoenas themselves seek to impose burdensome *legal* requirements of response that

defendants can use as leverage in such "negotiations."  In other words, by serving overbroad

subpoenas on the Health Plans, defendants are in a position to press the class members unfairly:

"agree to give us a subset of what we want or we will seek to enforce all of the requests

contained in the subpoena to their full scope." *This is precisely what the authorities set forth in*

*plaintiffs' opening brief and above prohibit*.

And in contrast to the sanguine picture that defendants present – claiming, incredibly,

that a number of the plans appreciate defendants' efforts (*see* Defs. Br. at 8) – not a single class

member has stepped forward to support defendants' response.  Indeed, class member PacifiCare

Health Systems ("PacifiCare") issued objections to the subpoena through outside counsel,

referring to each request as "overbroad, unduly burdensome [and] oppressive." *See*

Notargiacomo Decl. at Ex. E.  So, too, have other Health Plans.  AARP Health Care Options,

- 8 -

1534.16 0042 MTN.DOC



responding through United HealthCare Insurance Company,[3] has generally objected to the

subpoena because "compliance would subject them to undue burden including, but not limited

to, the expenditure of unreasonable time and expense without compensation;" the subpoena "is

facially over broad;" and "[d]efendants may be able to obtain any relevant information on the

common issues raised in the class action from the named class representatives." *See*

Notargiacomo Decl. at Ex. F at General Objections 2, 3 and 5.  AARP also referred to each

individual request as "over broad, unduly burdensome, and oppressive." *Id.*  In addition, AARP

also expressed concerns that the subpoena may seek information protected from disclosure by

the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160

and 164 (the HIPAA Privacy Regulations). *Id.* at General Objection 8.  Putative class members

AmeriChoice Health Services, Inc. and United HealthCare, Inc. have tendered objections similar

or identical to those made by AARP. *See* Notargiacomo Decl. at Exhs. G and H.

Defendants assert that because the class members at issue here are companies and not

individual persons, defendants' burden should be lowered. Defs. Br. at 12.  However, defendants

overlook *In re Visa Check/MasterMoney Antitrust Litigation*, cited by plaintiffs, which involved

23 subpoenas served on retail merchants.  Memorandum and Order at 2 (S.D.N.Y. May 7, 1999)

(attached at Exhibit E to the Sobol Declaration).  The merchants' status as businesses did not

dissuade Magistrate Mann from granting the motion to quash.  Tellingly, defendants failed to

address this directly analogous decision.

Defendants should not have put these absent class members in the position of having to

hire outside counsel, interpose objections and then hope that the good graces of defendants will

---

[3] United HealthCare is the underwriter and claims administrator of the AARP supplemental group health insurance program.



prevail in so-called "narrowing" negotiations even though defendants are seeking to poison these, and the other, class members' claims. Defendants' conclusory statements that absent class members will not be burdened by the subpoenas does not satisfy defendants' obligation to demonstrate that the discovery sought will not subject absent class members to undue harassment or excessive taxing of their resources. *See Robertson*, 67 F.R.D. at 700.

## C.    The Case Law Supports Plaintiffs' Motion

Even defendants' authorities favor plaintiffs and not defendants. Defendants cite *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635 (D. Mass. 1984), yet that case differs markedly from the instant one. *Berenson* involved a class of Faneuil Hall tenants numbering less than 227 members. Furthermore, counterclaims based on the lease contracts between defendant and each class member were at issue, necessitating the discovery sought. *Id.* at 636. Importantly, the court noted that discovery against absentee class members could not be had "as a matter of course" and only if the discovery sought was (i) relevant to common issues, (ii) tendered in good faith, (iii) not unduly burdensome, and (iv) not available elsewhere. *Id.* at 637.

*Easton & Co. v. Mutual Ben. Life Ins. Co.*, 1994 U.S. Dist. Lexis 12308 (D.N.J. May 18, 1994), also cited by defendants (*see* Defs. Br. at 8), does not support the unfettered discovery that defendants pursue here. Defendants failed to explain that the court in *Easton* acknowledged the limitations on discovery of absent class members (citing several of the cases relied on by plaintiffs here, including *Clark v. Universal Builders*) and ordered the defendants to re-draft the requests to be less burdensome and to eliminate requests for information already in defendants' possession. *Id.*, at *12-16. Moreover, as Judge Pisano explained in a later decision **denying** class discovery, *Easton* had a small class totaling just 160 members, making the discovery

- 10 -



sought more meaningful (which the court found would not be the case in a class involving

thousands). *See In re Lucent Techs., Inc. Sec. Litig.*, 2002 U.S. Dist. Lexis 24973, at *7-8

(D.N.J. July 15, 2002).  Judge Pisano again denied class discovery in *Gunter, supra.  See* 1996

U.S. Dist. Lexis 22298, at *12.

Defendants also cite to *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,

1998 U.S. Dist. Lexis 6749 (S.D.N.Y. May 12, 1998), Defs. Br. at 11-12, but defendants omitted

some important details from that opinion.  First, the court noted that class discovery is "generally

disfavored" and "will therefore not be permitted unless (1) the defendant demonstrates a clear

need for the information for trial of those aspects pertinent to the class claims, (2) the court is

satisfied that the discovery requests are narrowly tailored to their purpose and (3) the discovery

is not intended to, and will not, impose undue burdens on the absent class members." *Id.*, at *4-

5.  Thus, the court required defendants to meet the appropriately high burden discussed in other

cases cited here by plaintiffs.

Second, the court explained that "as defined by plaintiffs, the common issues on which

they rely for certification are almost all concerned with the activities of the defendants rather

than of the plaintiffs," and this militated against authorizing the discovery sought.  *Id.*, at *6.  As

the AMCC reveals, the focus here is also on ***defendants' own actions*** in reporting fraudulently

inflated AWPs.  Thus, the central common issues will be whether:  defendants artificially

inflated the AWPs for these drugs; it was defendants' policy and practice to prepare marketing

and sales materials that contained comparisons of the published AWPs and the spreads available;

defendants provided free samples of the drugs to providers and instructed them to bill for those

free samples; defendants paid financial inducements to providers and other intermediaries, with

the effect of lowering their costs for the drugs; and defendants engaged in a pattern and practice

- 11 -



of paying illegal kickbacks, disguised as free goods, rebates, consulting fees, junkets and

education grants to providers and other intermediaries.  AMCC, ¶ 601.  Defendants' fishing

expedition into class members' documents will not provide any insight into these issues.

Third, the court *rejected* defendants' request for broad discovery, using pointed language

that applies directly to the instant case:

> [D]efendants assert that the nine plaintiffs do not constitute a
> sufficiently large universe to develop the necessary data.
> Moreover, they may also be heard to argue that the extent of the
> difference in reliance among class members will be relevant in
> assessing both the appropriateness of class certification and the
> choice of the current class representatives as typical of the class.
>
> Defendants' argument about the need for a larger universe for
> discovery purposes is made in conclusory terms and without any
> specifics or evidentiary grounding.  Moreover, defendants seek
> both written discovery . . . and a deposition campaign that, by
> defendants' terms, would yield as many as fifty depositions of
> absent class members . . ., in addition to their planned discovery of
> the nine class representatives and others, . . . and they do so
> without concrete explanation for the size of this proposed
> expedition.

*Id.*, at *7 (footnotes omitted).  The court also noted that defendants' arguments about typicality,

like those raised by the pharmaceutical companies here, "could be made in any case, and thus

could be viewed as proving too much, since it would justify discovery of class members in

virtually all cases."  *Id.*, at *9.

Finally, defendants failed to disclose that the *Laborers* court authorized the defendants to

conduct only very limited discovery, to wit, narrow document requests served on only ten class

- 12 -



members. *Id.*, at *10. Depositions, if any, would be permitted only if defendants later demonstrated to the court the need for specific further inquiry. *Id.*, at *10-11.[4]

Importantly not one of the cases cited by defendants involved discovery requests of the breadth of those served by defendants here. Furthermore, not one of the cases or, indeed any case that plaintiffs could identify, abrogates the general guidelines set forth by plaintiffs' authorities, including the heavy burden placed on defendants to justify the discovery.

### III.   CONCLUSION

The burden of satisfying all of the elements necessary to take discovery of absent class members remains on the defendants, that burden is high, and defendants have failed to shoulder that burden here. Accordingly, for the reasons set forth above and in plaintiffs' opening brief, the Court should grant plaintiffs' motion for a protective order.


DATED:       January 23, 2004                    By

Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

---

[4] Defendants' subpoenas here also seek depositions of the class members in addition to the production of documents.

- 13 -



Samuel Heins
Brian Williams
Heins Mills & Olson, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

**CHAIRS OF LEAD COUNSEL
COMMITTEE**

Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

- 14 -



Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF EXECUTIVE COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden

- 15 -



221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel: (213) 895-6500
Fax: (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA 19102
Tel: (215) 790-7300
Fax: (215) 546-0942

Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel: (610) 891-9880
Fax: (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704
Tel: (409) 838-0101
Fax: 409-838-6780

- 16 -



Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX  75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**

- 17 -



## CERTIFICATE OF SERVICE

I hereby certify that I, Edward Notargiacomo, an attorney, caused true and correct copies of the foregoing Reply Memorandum in Support of Plaintiffs' Motion for a Protective Order Regarding Subpoenas to Putative Class Members to be served on all counsel of record electronically, pursuant to Section D of Case Management Order No. 2., this 23rd day of January, 2004.

By
Edward Notargiacomo, Esq.
HAGENS BERMAN LLP
225 Franklin Street, 26th floor
Boston, MA 02110
(617) 482-3700

# EXHIBIT 11

1

1           UNITED STATES DISTRICT COURT
            DISTRICT OF MASSACHUSETTS
2                 MDL NO. 1456
              CA NO. 01-12257-PBS
3

4

5      _____

6                   IN RE:
            AVERAGE WHOLESALE PRICE
7          PHARMACEUTICAL LITIGATION

8      _____

9

10     BEFORE:  The Honorable Patti B. Saris

11

12                STATUS CONFERENCE

13

14

15     John Joseph Moakley United States Courthouse
                 Courtroom No. 13
16               One Courthouse Way
                 Boston, MA 02210
17            Monday, March 8, 2004
                    3:07 P.M.
18

19

                 Cheryl Dahlstrom
20             Official Court Reporter
             United States District Court
21           595 Main Street, Room 514
               Worcester, MA 01608-2076
22       Mechanical Steno - Transcript by Computer

23

24

25

2

```
 1    APPEARANCES:

 2         HAGENS BERMAN, LLP
           By: Thomas M. Sobol, Esq.
 3         225 Franklin Street, 26th Floor
           Boston, Massachusetts 02110
 4         - and -
           HAGENS BERMAN, LLP
 5         By: Steve W. Berman, Esq.
           1301 Fifth Avenue, Suite 2900
 6         Seattle, Washington 98101
           On Behalf of the Plaintiff Board of Trustees of the
 7         Carpenters & Millwrights of Houston; Shirley Geller.

 8         SPECTOR, ROSEMAN & KODROFF, PC
           By: Jeffrey Kodroff, Esq.
 9         1818 Market Street, Suite 2500
           Philadelphia, Pennsylvania 19103
10         On Behalf of the Plaintiff Teamsters Health & Welfare
           Fund of Philadelphia & Vicinity.
11
           HEINS, MILLS & OLSON, PLC
12         By: Samuel D. Heins, Esq.
           700 Northstar East
13         608 Second Avenue South
           Minneapolis, Minnesota 55402
14         On Behalf of the Plaintiff Twin Cities Bakery Workers
           Health & Welfare Fund.
15
           DAVIS, POLK & WARDWELL
16         By: D. Scott Wise, Esq., and
               Kimberley D. Harris, Esq.
17         450 Lexington Avenue
           New York, New York 10017
18         On Behalf of AstraZeneca Pharmaceuticals.

19         SHOOK, HARDY & BACON, LLP
           By: Michael L. Koon, Esq.
20         1200 Main Street
           Kansas City, Missouri 64105-2118
21         On Behalf of the Defendant Aventis Pharmaceuticals.

22         ROPES & GRAY
           By: John T. Montgomery, Esq.
23         One International Place
           Boston, Massachusetts 02110
24         On behalf of the Defendants Schering-Plough Corporation
           and Warrick Pharmaceuticals.
25
```

3

```
 1     APPEARANCES:  (Cont'd)

 2          PATTERSON, BELKNAP, WEBB & TYLER, LLP
            By: Erik Haas, Esq.
 3          1133 Avenue of the Americas
            New York, New York 10036-6710
 4          On Behalf of the Defendants Allergan, Inc., and
            Johnson & Johnson.
 5
            BINGHAM McCUTCHEN LLP
 6          By: Joseph L. Kociubes, Esq.
            150 Federal Street
 7          Boston, Massachusetts 02110
            On behalf of the Defendants Together Rx.
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            You had some mini-rules you wanted to talk to me
 2       about.
 3            MR. BERMAN:  I do.  Do you mind taking some time
 4       because I think they're important?
 5            THE COURT:  We'll start with your important mini-rule
 6       and go down.
 7            MR. BERMAN:  Well, I guess the most important
 8       mini-rule is, we think in whatever case management order you
 9       enter there has to be what we call an automatic deposition
10       rule, meaning that if we send the deposition notice out,
11       you've got to produce a witness within 21 days if we can't
12       reach agreement.

13            THE COURT:  For deposition or for designation?
14            MR. BERMAN:  Both.  It's a problem with both.  The
15       plaintiffs have yet to be able to take a 30(b)(6) deposition
16       in six months.  We think there needs to be a rule, if we send
17       out a 30(b)(6) notice, you have to produce a witness in 45
18       days.  If we send out a deposition notice --
19            THE COURT:  You said 45 days?
20            MR. BERMAN:  Yes, because sometimes it takes a long
21       time to find the right person on a 30(b)(6).  We understand
22       that.  We send out a deposition notice on a fact witness --
23       we've now gone through the documents, we've identified some
24       people -- you've got to give us a date within 21 days unless
25       we agree otherwise.
```

48

1          Otherwise, whatever schedule you set, we're going to

2     be where we are now.  We just really haven't gotten very far,

3     I hate to report to the Court, because of a time lapse.  It

4     works both ways.  They're not happy with our responsiveness.

5     The rule applies to us as well.  I have a few other things

6     like this.

7          THE COURT:  I'm glad you reminded me of that.  I do

8     think -- one of the concerns I've had is on this issue of

9     ERISA preemption, not really knowing what's out there, what

10    the plans are, how much the plans will affect damages.  What

11    are the different kinds of plans?  Are they hinged on AWP?

12    Aren't they?

13         Normally, I'm not sympathetic to class discovery.  In

14    this case it may be critical to understanding not just

15    preemption issues but also what's typical.  And so I do think

16    you need to be responsive to producing plans at the very least

17    or a few -- I don't even know if there are different kinds of

18    ERISA plans even among the plaintiffs.

19         MR. BERMAN:  All our plans are plans to -- almost all

20    of them have been deposed and are producing documents already.

21         THE COURT:  All right.  If there are a few -- I don't

22    know.  I assume you're not going to take a deposition of every

23    ERISA plan in America.

24         MR. WISE:  No.  I can answer that question no.

25         THE COURT:  I'm just simply saying it may be helpful

1      to find out if these plans are typical of other plans.  That's

2      different from -- I'm not authorizing discovery of the people

3      who have cancer who are getting the drugs.  I think that's a

4      different situation, and I don't believe that defendants are

5      looking for that.  But I think the different -- while it's

6      rare, I think this wouldn't be a bad case for it.

7           MR. BERMAN:  We agree that this is a case where there

8      has to be some discovery, a fair amount of discovery, before

9      the class motion is ripe, both sides.

10          THE COURT:  Right.  All I'm saying is you had a

11     motion to preclude class discovery.  While I certainly will

12     grant that with respect to anybody who's sick and receiving

13     drugs directly as part of a Medicare Part B, I think the plans

14     themselves are able to protect themselves.  And they're

15     usually not confidential, right?  Aren't they usually

16     distributed to their members?  There's nothing that I can

17     imagine that would be a problem with that.

18          MR. WISE:  It's not in our interest to be burdensome

19     to that community.  What we want to do is just develop enough

20     information so we can present a sample of what --

21          THE COURT:  I think that's appropriate because I

22     remember looking at the case law on it.  To some extent I was

23     not sure what the plans would provide.  I think no one here

24     really probably was at that time other than the named

25     plaintiffs.  What's out there?

1           MR. WISE:  And whether anything is typical of

2    anything.  That's exactly going to be the issue.

3           THE COURT:  There was a motion to intervene.  I don't

4    see why I wouldn't allow that for the --

5           MR. WISE:  Together Rx.

6           MR. KOCIUBES:  It will change the scope again.  As

7    your Honor noted -- well, there are two things.  We've already

8    addressed -- unless your Honor wants me to, I won't, which is

9    the futility.  But the first issue is we had understood from

10   your Honor that you didn't want the scope of the case to

11   expand again.  And what at least --

12          THE COURT:  They asserted on behalf of both classes,

13   and then you brought up standing.  So no big surprise that

14   they found somebody.

15          MR. KOCIUBES:  For sure.  But at the same time what

16   you're doing now is you're expanding the scope of that.

17   There's no question about that.  What this really is is a

18   substantive amendment to the complaint again.

19          THE COURT:  Not really.  Did you change any of the

20   allegations in the complaint?

21          MR. BERMAN:  The class is exactly the same.  There's

22   just a different plaintiff for the standing issues.

23          THE COURT:  I allow the motion to intervene.  I allow

24   your motion for discovery into the different kinds of ERISA

25   plans for typicality.

55

```
 1                    C E R T I F I C A T E

 2

 3

 4            I, Cheryl Dahlstrom, Official Reporter of the United

 5    States District Court, do hereby certify that the foregoing

 6    transcript, from Page 1 to Page 54, constitutes, to the best

 7    of my skill and ability, a true and accurate transcription of

 8    my stenotype notes taken in the matter of In Re Average

 9    Wholesale Price Pharmaceutical Litigation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 12



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
IN RE PHARMACEUTICAL INDUSTRY )    MDL NO. 1456
AVERAGE WHOLESALE PRICE       )    CIVIL ACTION NO.
LITIGATION                    )    01-12257-PBS
                              )
```

## CASE MANAGEMENT ORDER NO. 13

March 10, 2005

Saris, U.S.D.J.

After review of the submissions, I order the following revised schedule for track one defendants:

1. Regardless of the status of the motion for class certification:

| | |
|---|---|
| August 31, 2005 | - Close of Fact Discovery |
| October 1, 2005 | - Plaintiffs file their expert reports on liability |
| November 15, 2005 | - Defendants file expert reports on liability |
| January 15, 2006 | - Completion of expert depositions |

2. If this Court's order on class certification is unappealed, the parties shall propose a schedule for summary judgment briefing within 15 days of the Court's order.

3. If this Court's order on class certification is appealed:

| | |
|---|---|
| 30 days after the Court of Appeals' decision on appeal from class certification ("Appeals Decision") | - Defendants' motion for summary judgment |
| 60 days after the Appeals Decision | - Plaintiffs' opposition |



75 days after the Appeals          - The Reply
Decision

90 days after the Appeals          - The Surreply
Decision


 **S/PATTI B. SARIS**
United States District Judge