Document Number Case Number
05–C–0408–C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
09/29/2005 12:56:33 PM CDT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN,

                  Plaintiff,

      v.

ABBOTT LABORATORIES, AMGEN, INC.,
ASTRAZENECA PHARMACEUTICALS, LP,
ASTRAZENECA, LP, AVENTIS PHARMACEUTICALS, INC.,
AVENTIS BEHRING, LLC., BAXTER INTERNATIONAL, INC.,
BAYER CORPORATION, BOEHRINGER INGELHEIM
CORPORATION, BRISTOL-MYERS SQUIBB CO.,
DEY, INC., GENSIA SICOR PHARMACEUTICALS, INC.,
GLAXOSMITHKLINE, INC., JOHNSON &
JOHNSON, INC., PFIZER, INC., PHARMACIA,
SCHERING-PLOUGH CORPORATION, TAP
PHARMACEUTICAL PRODUCTS, INC., WATSON
PHARMACEUTICALS, INC., BEN VENUE
LABORATORIES, INC., BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC., IMMUNEX CORPORATION,
IVAX CORPORATION, IVAX PHARMACEUTICALS, INC.,
JANSSEN PHARMACEUTICAL PRODUCTS, LP,
McNEIL-PPC, INC.,MERCK & COMPANY, INC.,
MYLAN LABORATORIES, INC., MYLAN PHARMACEUTICALS
CORPORATION, NOVARTIS PHARMACEUTICALS
CORPORATION, ORTHO BIOTECH PRODUCTS, LP,
ORTHO-McNEIL PHARMACEUTICAL, INC.,
ROXANE LABORATORIES, INC., SANDOZ, INC.,
GENEVA PHARMACEUTICALS, INC., SMITHKLINE
BEECHAM CORPORATION, TEVA PHARMACEUTICAL
INDUSTRIES, LTD., WARRICK PHARMACEUTICALS

**OPINION and ORDER**

05-C-408-C

CORPORATION and WATSON PHARMA, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil action for monetary and injunctive relief appears for the second time in this court.  It is one of a number of lawsuits pending in state and federal courts across the country against pharmaceutical manufacturers.  The gravamen of the complaint filed by plaintiff State of Wisconsin is that defendant pharmaceutical companies inflated the average wholesale prices of their drugs, thereby violating several provisions of Wisconsin law.

This action was commenced in the Circuit Court for Dane County in June 2004. Defendants removed it to this court in July 2004, arguing that subject matter jurisdiction existed under the diversity statute, 28 U.S.C. § 1332.  I disagreed and granted plaintiff's motion to remand.  State of Wisconsin v. Abbott Laboratories, et al., No. 04-C-477-C, Op. & Order dated Oct. 5, 2004.  Defendants have removed the case to this court a second time, arguing that a recent Supreme Court decision, Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S. Ct. 2363 (2005), demonstrates that this court has jurisdiction under the federal question statute, 28 U.S.C. § 1331.

Presently before the court are three motions filed by plaintiff:  a motion to remand, a motion to supplement the record and a motion to file supplemental authority in support of the motion to remand.  Plaintiff's motion to supplement the record and motion to file

supplemental authority will be granted. Plaintiff's motion to remand will be granted as well. Although this case involves a substantial and disputed question of federal law, it does not involve a federal interest substantial enough to justify the exercise of federal jurisdiction. In addition, defendants' second notice of removal was not filed timely under 28 U.S.C. § 1446(b). Finally, I will grant plaintiff's request for costs and attorney fees.

According to the notice of removal, plaintiff filed an amended complaint in this case on or about November 1, 2004. Defendants attached a copy of the amended complaint to the notice of removal. Notice of Removal, dkt. #2, Exh. C. For the sole purpose of deciding this motion, I draw the following facts from the amended complaint.

## ALLEGATIONS OF FACT

The market for prescription drugs operates roughly as follows. Defendants manufacture drugs and sell them to hospitals, physicians and pharmacies, collectively known as "providers," who in essence resell the drugs to patients when the drugs are administered or prescribed. Providers pay manufacturers directly for the drugs; after a patient receives a drug, the provider is reimbursed by the patient, his insurance company or a government program such as Medicare or Medicaid, collectively known as "payers."

Insurance companies and government payers calculate the rates at which providers are reimbursed on the basis of a drug's "average wholesale price." Defendants set average

wholesale prices for each of their drugs.  These prices are compiled and published in medical compendiums and are the only prices made available to providers and the public.  If the price paid by a provider to the manufacturer is less than the reimbursement the provider receives from the payer, the provider retains the  difference, or "spread," as profit.  Because providers have substantial influence in deciding which drugs they will prescribe or administer, drug manufacturers are eager to court them.  One of the ways defendants market their drugs to providers is by generating large spreads.  Defendants have attempted to maximize the spread by publishing false and inflated average wholesale prices for their drugs.

Defendants have succeeded in their unlawful pricing by concealing their scheme from plaintiff and other payers.  They sell their drugs to providers in a manner that hides the true price of their drugs, designate sales agreements with providers as trade secrets, charge different prices to different providers for the same drug and hide the true prices of their drugs by providing free drugs and phony grants to providers as a means of discounting the prices.

By publishing false and inflated average wholesale prices and keeping their actual prices secret, defendants have harmed plaintiff, its citizens and private payers in Wisconsin. Plaintiff is a payer under Medicaid, a joint state and federal health care entitlement program. Reimbursements to pharmacies and physicians for drugs covered by Medicaid are calculated by subtracting a fixed percentage from the average wholesale prices.  Thus, publication of

inflated prices has caused the state to overpay for the drugs it purchases through its Medicaid program.

In addition, many Wisconsin citizens participate in Medicare, a health insurance program funded by the federal government.  Medicare consists primarily of two major components, Part A and Part B.  Part B is an optional program that provides coverage for some healthcare services not covered by Part A.  It is supported by government funds and by premiums paid by individuals who choose to participate.  Part B has a limited drug benefit.  The federal government pays 80% of the allowable cost of a drug and participants are responsible for the remaining 20%.  Because the allowable costs under Part B are calculated on the basis of defendants' inflated average wholesale prices, participants in Wisconsin have paid higher co-payments for their prescription drugs.

Finally, private, Wisconsin-based organizations that pay the prescription drug costs of their members have overpaid for prescription drugs.  Because of the complexity of the prescription drug market, these organizations contract with Pharmacy Benefit Managers to handle their prescription drug reimbursements.  Pharmacy Benefit Managers assert that they have the bargaining power needed to negotiate the price of drugs with drug manufacturers.  However, plaintiff alleges that they have used their power to obtain benefits for themselves in the form of fees and rebates paid by manufacturers.  In addition, Pharmacy Benefit Managers benefit from inflated average wholesale prices because they use them to set the

5

reimbursement rates for the private payers they represent.

Plaintiff brings suit on its own behalf and in *parens patriae* capacity on behalf of the citizens of Wisconsin against defendant pharmaceutical companies. The amended complaint consists of five counts, all arising under Wisconsin law. Counts I and II allege violations of Wis. Stat. §§ 100.18(1) and 100.18(10)(b), which prohibit making false representations with the intent to sell merchandise. Count III alleges a violation of the Wisconsin Trust and Monopolies Act, Wis. Stat. § 133.05. Count IV alleges a claim for fraud on the Wisconsin Medicaid Program, Wis. Stat. § 49.49(4m)(a)(2). Count V states a common law claim for unjust enrichment.

## DISCUSSION

### A.  Jurisdiction

The Judicial Panel on Multidistrict Litigation has transferred many of the average wholesale price lawsuits filed across the country to the United States District Court for the District of Massachusetts for consolidated pre-trial proceedings. In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456. Defendants seek to have this action transferred to that court. On August 12, 2005, this court received a copy of a Conditional Transfer Order transferring this case to the District of Massachusetts pursuant to 28 U.S.C. § 1407. However, Rule 1.5 of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation states that the existence of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."  See also Illinois Municipal Retirement Fund v. Citigroup, Inc., 391 F.3d 844, 851-852 (7th Cir. 2004) (district courts should consider motion to remand even though conditional transfer order has been issued).  Thus, this court retains jurisdiction to decide plaintiff's motions.

## B.  Motion to Stay Decision

In their brief in opposition to the motion to remand, defendants argue that the court should stay a decision on the motion to remand until the Judicial Panel on Multidistrict Litigation determines whether this case should be transferred to the District of Massachusetts.  Apparently, defendants are under the impression that their motion to stay a decision on plaintiff's motion to remand remains undecided.  However, Magistrate Judge Crocker denied their motion in an order dated August 4, 2005.  Although Judge Crocker characterized defendants' motion as a motion to stay *briefing* on the motion to remand, he wrote that if "this court has the time to address the remand dispute before the MDL panel acts, it would be more efficient for the parties and the judicial system as a whole for this court to rule on the state's motion."  Order, dkt. #49, at 2.  Given that defendants never filed a motion to stay *briefing* and that Judge Crocker referred to their motion to stay a

7

decision in his order, defendants should have known that his order was addressing their motion to stay a decision.  Regardless of its caption, the motion was and remains denied.


C.  Motion to Supplement the Record and Motion to File Supplemental Authority

On August 22, 2005, defendants filed a request for leave to supplement their brief in opposition to the motion to remand with supplemental authority in the form of recent decisions from courts in Illinois and Alabama addressing motions to remand in cases against pharmaceutical companies.  Dkt. #55.  In response, plaintiff filed an opposition to defendants' request.  Dkt. #56.  Two days later, however, plaintiff filed its own motion to supplement the record.  Dkt. #57.  Approximately two weeks after that, plaintiff filed a motion to file supplemental authority.  Dkt. #58.  Plaintiff's motion to supplement the record and its motion to file supplemental authority will be granted.  In ruling on the motion to remand, I have considered all of the decisions brought to the court's attention by the parties after the close of briefing on the motion to remand.


D.  Motion to Remand

Although plaintiff has requested remand, defendants bear the burden of proving that this court has subject matter jurisdiction because they removed the case to federal court. Tykla v. Gerber Products Co., 211 F.3d 445, 448 (7th Cir. 2000).  In determining whether

8

removal was proper, a district court must construe the removal statute, 28 U.S.C. § 1441, narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); People of the State of Illinois v. Kerr-McGee Corp., 677 F.2d 571, 576 (7th Cir. 1982).

Plaintiff's motion to remand raises two issues:  whether federal jurisdiction exists in this case under the federal question statute, 28 U.S.C. § 1331, and, if so, whether defendants removed this case timely under 28 U.S.C. § 1446(b).

1.  Propriety of removal

Federal law provides that a civil action begun in state court may be removed if a district court would have original jurisdiction over the action.  28 U.S.C. § 1441(a).  As noted above, defendants contend that this court has original jurisdiction over this case because it contains a federal question.  The federal question statute, 28 U.S.C. § 1331, extends federal jurisdiction to "all civil actions arising under the Constitution, laws, or treaties of the United States."  In the vast majority of cases, a claim arises under federal law because federal law creates the cause of action.  However, claims grounded in state law may invoke "arising under" jurisdiction when they present a substantial and disputed question of federal law.  Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 13 (1985); Commercial National Bank

9

of Chicago v. Demos, 18 F.3d 485, 488 (7th Cir. 1994). Defendants argue that the present case falls into this latter category. Although the amended complaint invokes Wisconsin law only, defendants contend that "the State of Wisconsin's claim to recover Medicare Part B co-payments raises a substantial federal question in that it requires the resolution of issues of federal law relating to the federal Medicare program, namely the meaning of [average wholesale price] in the federal Medicare statute and regulations." Notice of Removal, dkt. #2, at 2.

Defendants' argument relies on a recent Supreme Court decision, Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S. Ct. 2363 (2005), but the proper starting point for analysis is a case decided twenty years earlier. In Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), the Supreme Court held that a complaint alleging a violation of a federal statute as an element of a state law claim was not sufficient to invoke the jurisdiction of the federal courts under 28 U.S.C. § 1331 because the federal statute did not confer a private right of action. The case involved state law negligence claims against a drug manufacturer. The plaintiffs alleged that the manufacturer provided an inadequate warning in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301-395, a regulatory statute that did not contain a private right of action. The plaintiffs argued that violation of the federal statute erected a rebuttable presumption of negligence and that it "directly and proximately" caused the alleged injuries. Id. at 806.

10

The Court began its analysis by noting that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810. It considered the lack of a private cause of action in the federal statute particularly probative of congressional intent and concluded that it would undermine that intent to extend federal question jurisdiction to redress a violation of the statute solely because the violation was an element of a state law claim. Id. at 814 ("the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.").

In the wake of Merrell Dow, when federal courts had to determine whether federal question jurisdiction existed over state law claims alleging the violation of federal statutes, they looked to whether those statutes provided private rights of action. E.g., Seinfeld v. Austen, 39 F.3d 761, 764 (7th Cir. 1994); Montana v. Abbott Laboratories, 266 F. Supp. 2d 250, 256 (D. Mass. 2003) (citing cases). Recently, in Grable, the Court backed away from this approach and implied that the absence of a private right of action would not shut the federal courthouse door in every case. Grable involved a quiet title action brought in state court concerning property that had been seized by the IRS. Resolution of the case hinged on the interpretation of a notice provision in a federal tax statute. The Court held

11

that removal of the case to federal court was proper even though the tax statute lacked a

private right of action.  <u>Grable</u>, 125 S. Ct. at 2365.  In doing so, the Court emphasized that

federalism concerns should guide lower courts considering whether to shift litigation from

state to federal court:

> [E]ven when the state action discloses a contested and substantial federal
> question, the exercise of federal jurisdiction is subject to a possible veto.  For
> the federal issue will ultimately qualify for a federal forum only if federal
> jurisdiction is consistent with congressional judgment about the sound
> division of labor between state and federal courts governing the application of
> § 1331. . . . Because arising-under jurisdiction to hear a state-law claim always
> raises the possibility of upsetting the state-federal line drawn (or at least
> assumed) by Congress, the presence of a disputed federal issue and the
> ostensible importance of a federal forum are never necessarily dispositive;
> there must always be an assessment of any disruptive portent in exercising
> federal jurisdiction.

<u>Id.</u> at 2367-68.

Applying this language, the Court concluded that the quiet title action involved a

substantial and disputed federal issue:  interpretation of the notice provision in the federal

tax statute.  In addition, the Court highlighted the federal government's strong interest in

"the availability of a federal forum to vindicate its own administrative action" and the

greater degree of familiarity of federal courts with tax matters.  <u>Id.</u> at 2368.  Finally, the

Court concluded that removal of the case would not upset the balance between federal and

state courts because quiet title actions rarely raise disputed issues of federal law.  <u>Id.</u>

The Court stated further that its holding did not overrule the decision in <u>Merrell</u>

Dow.  Rather, it characterized Merrell Dow as consistent with the framework set out in

Grable.  In Merrell Dow, the absence of a federal cause of action suggested the lack of a

"substantial" federal question and, when combined with the fact that state remedies for

mislabeling had not been preempted, provided "an important clue to Congress's conception

of the scope of jurisdiction to be exercised under § 1331."  Grable, 125 S. Ct. at 2370.

Moreover, federal statutes and regulations are involved often in state tort actions, as was the

case in Merrell Dow.  By contrast, quiet title actions rarely raise questions of federal law.

By refusing to extend jurisdiction over the tort claims in Merrell Dow, the Court avoided

opening the floodgates for a massive shift in litigation.  Id. at 2370-71 ("A general rule of

exercising federal jurisdiction over state claims resting on federal mislabeling and other

statutory violations would thus have heralded a potentially enormous shift of traditionally

state cases into federal courts.").

In sum, Grable holds that a state law claim is removable if it presents a disputed and

substantial question of federal law that a federal court may decide without disturbing "any

congressionally approved balance of federal and state judicial responsibilities."  Id. at 2368.

In the present case, plaintiff asserts five claims, all grounded in Wisconsin law:  unjust

enrichment, antitrust, fraud on the Wisconsin Medicaid program and two claims of false

advertising.  Each claim is rooted in defendants' alleged publication of inflated average

wholesale prices for their drugs, which caused Wisconsin, its citizens, insurance companies

13

and other private organizations to overpay for the drugs.  The Medicare statute does not contain a private right of action to recover overpayments made on the basis of inflated average wholesale prices.  Nonetheless, defendants argue that removal is proper because the meaning of "average wholesale price" in the Medicare statute is a disputed and substantial element of plaintiff's claims, specifically the claims "to recover Medicare Part B co-payments for [plaintiff's] Medicaid program and on behalf of its Medicare beneficiaries."  Dfts.' Br., dkt. #52, at 25; see also Montana, 266 F. Supp. 2d at 255 (Minnesota's *parens patriae* claims on behalf of Medicare beneficiaries present substantial federal question).  Moreover, defendants contend that there is a substantial federal interest in having a single interpretation of "average wholesale price" in the Medicare statute.  Finally, they argue that the exercise of federal jurisdiction in this case will not disrupt the division of labor between the federal and state courts because the district court handling the multidistrict litigation concerning average wholesale prices has already exercised jurisdiction over claims similar to those brought by plaintiff.

In response, plaintiff distinguishes Grable as an anomaly, a specific exception to Merrell Dow in which federal jurisdiction was appropriate because (1) a federal agency, the IRS, had an interest in the interpretation of the notice provision; (2) the meaning of the notice provision was the only disputed issue; and (3) removal of the case would not herald a massive shift in litigation from state to federal court because quiet title actions rarely raise

14

contested issues of federal law.  Plaintiff contends that the present case, like <u>Merrell Dow</u>, presents garden variety tort claims that only tangentially involve federal questions.  It cites the Court's admonition that lower courts should refrain from exercising jurisdiction in such cases because doing so would "herald[] a potentially enormous shift of traditionally state cases into federal courts."  <u>Grable</u>, 125 S.Ct. at 2370.

To date, only one published decision has considered these arguments in a suit concerning average wholesale price manipulation.  <u>Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc.</u>, No. Civ.A. 2:05-CV-03604, 2005 WL 2242913 (E.D. Pa. Sept. 9, 2005).  In that case, Pennsylvania asserted claims of fraud, misrepresentation and unjust enrichment similar to those asserted by plaintiff in the present case.  The pharmaceutical companies sought to transfer the case to the multidistrict proceeding in Massachusetts and the state filed a motion to remand.  The court concluded that the term "average wholesale price" was not disputed because "the Commonwealth does not premise its *parens patriae* claim on the construction of these words as they appear in the applicable Medicare statute and regulations."  <u>Id.</u> at *6.  In fact, neither Congress nor the Medicare program provided a definition for the term in the statute or regulations.  Therefore, a particular construction of the phrase under federal law was not necessary for the state to prevail.  <u>Id.</u>  As with the labeling provision at issue in <u>Merrell Dow</u>, the court concluded that the phrase supplied a federal standard against which the prices reported by the

15

pharmaceutical companies were to be judged.

In addition, the court concluded that the meaning of "average wholesale price" in the Medicare statute was not a substantial question of federal law.  According to the court, "the administration of Medicare would be unaffected by a state-court adjudication" of Pennsylvania's claims because Medicare no longer calculates reimbursements on the basis of average wholesale prices and, even if it did, adjudication of the state claims would not alter the method of reimbursement.  Id. at *7.  In a footnote, the court noted further that, as in Merrell Dow, there was no evidence that Congress intended to preempt state regulation of fraudulent medical billing practices.  Id. at *7 n.6.

In the present case, I agree with defendants that plaintiff's claims present a substantial and disputed question of federal law.  Plaintiff seeks recoupment of alleged overpayments it made under Medicaid as well as alleged overpayments made by Medicare Part B participants in Wisconsin.  In determining whether plaintiff and Wisconsin citizens have overpaid for prescription drugs (and therefore whether defendants have violated Wisconsin law), a court will have to determine the meaning of the phrase "average wholesale price" as it appears in the Medicare statute and its implementing regulations.  Then, the court will have to determine whether a discrepancy exists between the average wholesale price and the prices reported by defendants.  Montana, 266 F. Supp. 2d at 255 ("an essential element of Minnesota's *parens patriae* claims is proof of a discrepancy between the [average wholesale

16

prices] reported by Pharmacia and the meaning of [average wholesale price] under the Medicare statute.).

That is not the end of the inquiry, however.  Although plaintiff's claims present a substantial and disputed question of federal law, removal of the present case is proper only if it will not disturb the balance struck by Congress between the federal and state courts. Grable, 125 S.Ct. at 2367.  At this point, differences between the present case and the quiet title action in Grable begin to appear.  For one, there is no strong federal interest in the present case comparable to the federal interest in tax collection implicated in Grable.  The federal question raised in Grable was of critical importance to the IRS's efforts to satisfy tax liabilities from the property of delinquent taxpayers.  Although a federal agency administers the Medicare program, states play the primary role in apportioning Medicaid benefits within the broad parameters set by federal law.  Montana, 266 F. Supp. 2d at 253.  States and the federal government have an interest in securing an interpretation of the Medicare statute and regulations.  At best, the federal and state interests are equivalent.  Moreover, the fact that Congress has not preempted the states' use of consumer protection statutes to police medical billing practices indicates the absence of a dominant federal interest.  Merrell Dow, 478 U.S. at 516.

Second, in Grable, the Court was willing to extend federal jurisdiction because quiet title actions under state law rarely raise issues of federal law.  By contrast, the present case

is one of many that have been filed by states across the country concerning pharmaceutical companies' alleged fraud in price-setting.  Shifting all of these cases (not to mention other state-law claims grounded in alleged violations of federal law) into federal court would work a significant disruption in the division of labor between federal and state courts.  (I am aware that many average wholesale price cases have been removed to federal court.  However, most of these cases were transferred before the Court emphasized the importance of preserving the balance between the state and federal systems in <u>Grable</u>.).  Finally, the nature of the present case is more analogous to <u>Merrell Dow</u> than <u>Grable</u>.  Plaintiff has asserted statutory and common law tort claims that, like the negligence claims in <u>Merrell Dow</u>, rest on alleged violations of federal law.  Because this case does not implicate an overriding federal interest and because removal would disturb the balance of judicial responsibilities between state and federal courts, I conclude that removal of this action was improper.

2.  <u>Timeliness of removal</u>

Even if I concluded that removal of this case was proper, plaintiff would be entitled to remand because defendants failed to file their notice of removal timely.  Because the parties devote substantial portions of their briefs to this question, I will address their arguments briefly.

Ordinarily, a notice of removal must be filed within thirty days after defendant

18

receives a copy of the initial pleading in a case.  28 U.S.C. § 1446(b).  Because plaintiff filed

this case  in June 2004, defendants's latest attempt at removal would be untimely.  However,

§ 1446(b) includes an exception to the thirty-day limit:

> If the case stated by the initial pleading is not removable, a notice of removal
> may be filed within thirty days after receipt by the defendant, through service
> or otherwise, of a copy of an amended pleading, motion, order or other paper
> from which it may first be ascertained that the case is one which is or has
> become removable, except that a case may not be removed on the basis of
> jurisdiction conferred by section 1332 of this title more than 1 year after
> commencement of the action.

Defendant seizes on this provision, arguing that this case was not removable on the basis of

federal question jurisdiction when it was filed but that the Grable decision constitutes an

"other paper" which indicates that the case has become removable.  Because defendants filed

their notice of removal within thirty days of the issuance of the Grable decision, removal was

timely.

The courts are split on the question whether a decision in an unrelated case qualifies

as an "order or other paper" under § 1446(b).  Green v. R.J. Reynolds Tobacco Co., 274 F.3d

263, 266-67 (5th Cir. 2001) (reviewing cases).  As plaintiff notes, the majority of courts to

address the question have concluded that a decision in a case unrelated to the action for

which removal is sought does not qualify as an "other paper" indicating that the action has

become removable for the purpose of § 1446(b).  E.g., Morsani v. Major League Baseball, 79

F. Supp. 2d 1331, 1333-34 (M.D. Fla. 1999).  These courts have limited the phrase "other

19

paper" to include only documents filed in the case for which removal is sought. Defendants argue that this limiting construction is improper because it does not appear in the plain language of the statute. Although correct as a technical matter, defendants' argument ignores the well established principle that statutory language draws its meaning from the context in which it is used. Barmes v. United States, 199 F.3d 386, 389 (7th Cir. 1999). Section § 1446(b) refers to "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper." Inclusion of the concept of receipt through service and the words "pleading" and "motion" suggest that it is reasonable to limit the phrase "other paper" to documents generated in the case for which removal is sought. Kocaj v. Chrysler Corp., 794 F. Supp. 234, 236-37 (E.D. Mich. 1992).

Defendants cite two appellate decisions, Doe v. American Red Cross, 14 F.3d 196 (3d Cir. 1993) and Green v. R.J. Reynolds, 274 F.3d 263 (5th Cir. 2001), but neither is applicable to the present case. Both cases stand for the narrow proposition that a decision in an unrelated case that involves the same defendant, concerns a similar factual situation and expressly authorizes removal qualifies as an "order" under § 1446(b). Green, 274 F.3d at 267-68. They are inapplicable because defendants do not contend that Grable constitutes an "order" but rather an "other paper." Moreover, Green and Doe are distinguishable on their facts. Defendants in the present case were not parties in Grable. Grable did not involve a fact situation similar to the present case. Finally, although Grable did address the

question of removal, it did not authorize removal of state law actions against pharmaceutical companies.

Because the <u>Grable</u> decision does not constitute an "other paper from which it may first be ascertained that the case is one which is or has become removable," defendants' removal of this case was untimely.

### E. <u>Sanctions, Fees and Costs</u>

Plaintiff requests the court to consider sanctioning defendants for attempting to remove this case a second time. Although I have concluded that removal was improper, I do not believe that the arguments put forth by defendants were so frivolous and unjustified as to warrant sanctions. Therefore, I will deny this request.

In addition to its request for sanctions, plaintiff requests an award of costs and fees. In this circuit, a party that succeeds in showing that removal is improper is presumptively entitled to an award of fees. <u>Garbie v. DaimlerChrysler Corp.</u>, 211 F.3d 407, 410 (7th Cir. 2000) ("§ 1447 is not a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party."); <u>see</u> <u>also</u> <u>Wisconsin v. Hotline Industries, Inc.</u>, 236 F.3d 363, 367-68 (7th Cir. 2000); <u>Citizens for a Better Environment v. Steel Co.</u>, 230 F.3d 923, 927 (7th Cir. 2000). Plaintiff need not show that removal was undertaken in bad faith. <u>Sirotsky v. New York Stock Exchange</u>, 347 F.3d 985, 987 (7th Cir. 2003). Rather, an award

is proper when "[r]emoval [is] unjustified under settled law."  <u>Garbie</u>, 211 F.3d at 410.

Although defendants' arguments were not frivolous, removal of this case was improper on

at least two grounds.  In light of the presumption that plaintiff is to be made whole, I

conclude that plaintiff is entitled to reimbursement for its reasonable fees and costs.


                                    ORDER

    IT IS ORDERED that

    1.  Plaintiff's motion to remand is GRANTED and this case is REMANDED to the

Circuit Court for Dane County, Wisconsin;

    2.  Plaintiff's request sanctions is DENIED;

    3.  Plaintiff's request for reimbursement of costs and attorney fees under 28 U.S.C.

§ 1447(c) is GRANTED;

    4.  Plaintiff may have until October 10, 2005, in which to submit an itemization of

the actual expenses, including costs and attorney fees, it incurred in responding to

defendants' removal;

    5.  Defendants may have until October 17, 2004, to file an objection to any itemized

costs and fees;

    6.  The clerk of court is directed to return the record in case number 05-C-408-C to

the Circuit Court for Dane County, Wisconsin.

Entered this 29th day of September, 2005.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge