## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY ) 
AVERAGE WHOLESALE PRICE )   MDL No. 1456
LITIGATION )
————————————————————— )   CIVIL ACTION:  01-CV-12257-PBS
 )
THIS DOCUMENT RELATES TO )   Judge Patti B. Saris
ALL CLASS ACTIONS )
————————————————————— )


## THIRD AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

## AMENDED TO COMPLY WITH COURT'S CLASS CERTIFICATION ORDER


## REDACTED VERSION

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.    JURISDICTION AND VENUE ..................................................................................4

III.   PARTIES .......................................................................................................................5

     A.    PLAINTIFFS ....................................................................................................5

           1.    Proposed Class 1 Representatives (Medicare Part B Beneficiaries)................5

           2.    Proposed Class 2 Representatives (MediGap Payors) .....................................10

           3.    Proposed Class 3 Representatives (TPPs and Consumers for AWP-Based Charges on Physician Administered Drugs Outside of Medicare)..................................................................................................13

           4.    Public Interest Group Plaintiffs .......................................................................23

     B.    DEFENDANTS .................................................................................................25

           1.    Abbott ...............................................................................................................26

           2.    Amgen................................................................................................................26

           3.    AstraZeneca .......................................................................................................27

           4.    The Aventis Group (Aventis, Pharma, Hoechst and Behring)..........................27

           5.    Baxter ................................................................................................................29

           6.    Bayer..................................................................................................................29

           7.    The Boehringer Group (Boehringer, Ben Venue, Bedford) .............................30

           8.    Braun..................................................................................................................31

           9.    The BMS Group (Oncology Therapeutics; Apothecon)...................................32

           10.   Dey, Inc.............................................................................................................33

           11.   The Fujisawa Group (Fujisawa Healthcare, Fujisawa USA)...........................34

           12.   The GSK Group (GlaxoSmithKline, SmithKline Beecham, Glaxo Wellcome)..........................................................................................................35

13.  Immunex ...................................................................................36

14.  The Johnson & Johnson Group (J&J, Centocor, Janssen, McNeil, Ortho) ......36

15.  Pfizer, Inc. ...............................................................................38

16.  The Pharmacia Group (Pharmacia and Pharmacia & Upjohn).......................38

17.  The Schering-Plough Group (Schering Plough & Warrick)............................39

18.  The Sicor Group (Sicor and Gensia).................................................40

19.  TAP ......................................................................................41

20.  Watson ...................................................................................42

IV.  GENERAL ALLEGATIONS APPLICABLE TO ALL DEFENDANTS............................42

A.  THE AWP SYSTEM .......................................................................42

B.  THE DEFENDANT DRUG MANUFACTURERS COMMIT AWP
     FRAUD TO INCREASE MARKET SHARE FOR THEIR DRUGS
     COVERED BY MEDICARE PART B ........................................................44

     1.  The Medicare Insurance Program.................................................44

     2.  Congressional and Other Federal Investigations and Actions .........................48

     3.  Certain of the Defendants Drug Manufacturers' Fraudulent Conduct
          Within the Medicare Part B Program.................................................49

C.  THE DEFENDANT DRUG MANUFACTURERS' USE OF AWP FRAUD
     TO INCREASE AND MAINTAIN THE PRICE OF DRUGS OUTSIDE
     OF THE MEDICARE PART B CONTEXT ..................................................51

D.  THE DEFENDANT DRUG MANUFACTURERS' USE OF AWP
     FRAUD TO INCREASE AND MAINTAIN VOLUME AND MARKET
     SHARE FOR GENERIC AND MULTI-SOURCE DRUGS ....................................54

E.  DEFENDANTS' CONCEALMENT OF THE TRUTH .......................................60

F.  TOLLING OF APPLICABLE STATUTES OF LIMITATION ..................................61

V.  EXAMPLES OF SPECIFIC UNLAWFUL CONDUCT .........................................61

A.  ABBOTT......................................................................................61

     1.  Abbott Has Been The Target of Government Investigations............................63

     2.  Abbott Controls the Published AWP for Its Products .......................64

|  | 3. | Abbott's AWP Manipulation Benefited Providers at the Expense of the Class | 64 |
|---|---|---|---|
|  | 4. | Specific Abbott AWPs Documented by the DOJ | 65 |
|  | 5. | Additional Evidence Concerning Vancomycin | 66 |
|  | 6. | Additional Evidence for Amikacin | 67 |
|  | 7. | Inflated AWPs From Abbott Price Lists | 67 |
| B. | | AMGEN | 69 |
|  | 1. | The Drugs at Issue and Their Competitive Environment | 69 |
|  | 2. | Amgen's Definition and Understanding of AWP | 71 |
|  | 3. | Amgen Controls the Published AWP for Its Products | 72 |
|  | 4. | Amgen Understands the Importance of Reimbursement Rates | 72 |
|  | 5. | Specific Examples of AWP Abuse | 74 |
|  | 6. | Amgen Rebates on Epogen | 77 |
|  | 7. | Amgen Concealed Its AWP Manipulation | 78 |
| C. | | ASTRAZENECA | 78 |
|  | 1. | AstraZeneca Has Been the Target of a Government Investigation | 80 |
|  | 2. | AstraZeneca's Definition and Understanding of AWP | 80 |
|  | 3. | AstraZeneca Controls the Published AWP for Its Products | 81 |
|  | 4. | AstraZeneca's AWP Manipulation Benefited Providers at the Expense of the Class | 81 |
|  | 5. | AstraZeneca Manipulated and Marketed the AWP for Zoladex | 82 |
| D. | | THE AVENTIS GROUP (AVENTIS, PHARMA, HOECHST AND BEHRING) | 87 |
|  | 1. | Aventis Has Been the Target of Government Investigations | 89 |
|  | 2. | Aventis' Definition and Understanding of AWP | 89 |
|  | 3. | Aventis Controls the Published AWP for Its Products | 90 |
|  | 4. | Aventis' AWP Manipulation Benefited Providers at the Expense of the Class | 90 |

|  | 5. | Specific Aventis AWPs Documented by the DOJ | 92 |
|  | 6. | Additional Evidence Concerning Anzemet | 93 |
|  | 7. | Additional Evidence Concerning Gammar | 94 |
|  | 8. | Inflated AWPs From Aventis' Price Lists | 95 |
|  | 9. | Aventis Concealed its AWP Manipulation | 96 |
| E. |  | BAXTER | 96 |
|  | 1. | Baxter Has Been the Target of Government Investigations | 98 |
|  | 2. | Baxter's Definition and Understanding of AWP | 98 |
|  | 3. | Baxter Controls the Published AWP for its Products | 99 |
|  | 4. | Baxter's AWP Manipulation Benefited Providers at the Expense of the Class | 99 |
|  | 5. | Specific Baxter AWPs Documented by the DOJ | 100 |
|  | 6. | Evidence Concerning Gammagard S/D (immune globulin solution) | 101 |
|  | 7. | Inflated AWPs From Baxter's Price Lists | 101 |
|  | 8. | Baxter Provided Free Goods and Other Incentives | 103 |
| F. |  | BAYER | 103 |
|  | 1. | Bayer Has Been the Target of Government Investigations | 104 |
|  | 2. | Bayer Controls the Published AWP for Its Products | 105 |
|  | 3. | Bayer's AWP Manipulation Benefited Providers at the Expense of the Class | 105 |
|  | 4. | Specific Bayer AWPs Documented by the DOJ | 106 |
|  | 5. | Inflated AWPs From Bayer's Price Lists | 107 |
|  | 6. | Bayer Provided Free Goods and Other Incentives | 107 |
|  | 7. | Bayer Concealed Its AWP Manipulation | 108 |
| G. |  | THE BOEHRINGER GROUP | 108 |
|  | 1. | The Boehringer Group Has Been the Target of Government Investigations | 109 |

|   | 2. | The Boehringer Group Controls the Published AWP for Its Products ..........109 |
|---|----|---|
|   | 3. | Specific Boehringer AWPs Documented by the DOJ ..................................112 |
|   | 4. | Inflated Boehringer Group AWPs From Bedford's Price Lists.....................113 |
| H. | | B. BRAUN...................................................................................................113 |
|   | 1. | B. Braun Has Been the Target of Government Investigations......................114 |
|   | 2. | B. Braun's Understanding of AWP ...........................................................114 |
|   | 3. | B. Braun Controls the Published AWP for Its Products ...............................115 |
|   | 4. | B. Braun's AWP Manipulation Benefited Providers at the Expense of the Class.......................................................................116 |
|   | 5. | Specific B. Braun AWPs Documented by the DOJ.......................................117 |
|   | 6. | Inflated AWPs From B. Braun Price Lists......................................................118 |
| I. | | THE BMS GROUP (BRISTOL-MYERS, OTN AND APOTHECON) ..................119 |
|   | 1. | The BMS Group Has Been the Target of Government Investigations ..........120 |
|   | 2. | The BMS Group Controls the Published AWP for Its Products....................121 |
|   | 3. | BMS's AWP Manipulation Benefited Providers at the Expense of the Class.......................................................................122 |
|   | 4. | Specific BMS AWPs Documented by the DOJ ............................................122 |
|   | 5. | Other AWPs Related to VEPESID (etoposide) .............................................123 |
|   | 6. | Other AWPs Related to Blenoxane................................................................123 |
|   | 7. | The BMS Group Provided Free Goods and Other Incentives ......................124 |
| J. | | DEY .............................................................................................................126 |
|   | 1. | Dey Has Been the Target of Government Investigations .............................126 |
|   | 2. | Dey Controls the Published AWP for Its Products.........................................128 |
|   | 3. | Dey's AWP Manipulation Benefited Providers at the Expense of the Class.......................................................................129 |
|   | 4. | Specific Dey AWPs Documented by the DOJ...............................................130 |
|   | 5. | Inflated Dey AWPs From Dey's Price Lists...................................................130 |

6.   Dey Provided Free Goods and Other Incentives..............................................131

7.   Dey Has Concealed Its AWP Manipulation ....................................................132

K.   THE FUJISAWA GROUP (FUJISAWA PHARMACEUTICAL,
     FUJISAWA HEALTHCARE,  FUJISAWA USA)......................................................132

1.   Fujisawa Has Been the Target of Government Investigations.......................134

2.   Fujisawa Controls the Published AWP for Its Products .................................134

3.   Fujisawa's AWP Manipulation Benefited Providers at the
     Expense of the Class ......................................................................................134

4.   Specific Fujisawa AWPs Documented by the DOJ........................................135

5.   Inflated AWPs From Fujisawa Price Lists......................................................136

L.   THE GSK GROUP (GLAXOSMITHKLINE, SMITHKLINE BEECHAM,
     GLAXO WELLCOME)...........................................................................................138

1.   The GSK Group Has Been the Target of Government
     Investigations ...............................................................................................140

2.   The GSK Group's Definition and Understanding of AWP ...........................141

3.   The GSK Group Controls the Published AWP for Its Products ....................141

4.   The GSK Group's AWP Manipulation Benefited Providers at
     the Expense  of Plaintiffs and the Class.........................................................142

5.   Glaxo's Zofran® ...........................................................................................143

6.   SKB's Kytril ..................................................................................................148

7.   General Counsel Correspondence Between Glaxo and SKB .........................149

8.   Other Improper Incentives .............................................................................151

9.   Specific GSK Group AWPs Documented by the DOJ ..................................152

M.   IMMUNEX .............................................................................................................153

1.   Immunex Has Been the Target of Government Investigations.......................153

2.   Immunex Definition and Understanding of AWP ..........................................154

3.   Immunex Controls the Published AWP for its Products ................................154

4.   Immunex's AWP Manipulation Benefited Providers at the
     Expense of the Class ......................................................................................155

5.   Specific Immunex AWPs Documented by the DOJ ......................................156

6.   Inflated AWPs From Immunex Price Lists...................................................157

7.   Immunex Concealed Its AWP Manipulation.................................................158

N.   THE JOHNSON & JOHNSON GROUP (J&J, CENTOCOR AND ORTHO).........158

1.   The Johnson & Johnson Group Has Been the Target of Government
     Investigations ...........................................................................................161

2.   J&J Concealed Its AWP Manipulation.........................................................163

O.   NOVARTIS ..........................................................................................................163

1.   Novartis Has Been the Target of Government Investigations ......................165

2.   Inflated Novartis AWPs From Novartis Price Lists ......................................165

P.   PFIZER .................................................................................................................165

Q.   THE PHARMACIA GROUP (PHARMACIA AND P&U)....................................167

1.   The Pharmacia Group Has Been the Target of Government
     Investigations ...........................................................................................168

2.   Pharmacia's Definition and Understanding of AWP.....................................169

3.   The Pharmacia Group Controls the Published AWP for Its Products ...........169

4.   The Pharmacia Group's AWP Manipulation Benefited Providers
     at the Expense of the Class .........................................................................170

5.   Specific Pharmacia AWPs Documented by the DOJ .....................................173

6.   Inflated Pharmacia AWPs From Pharmacia's Price Lists .............................175

7.   The Pharmacia Group Provided Free Goods and Other Incentives...............175

R.   THE SCHERING-PLOUGH GROUP (SCHERING-PLOUGH
     AND WARRICK)..................................................................................................176

1.   The Schering Plough Group Has Been the Target of Government
     Investigations ...........................................................................................178

2.   The Schering Plough Group Controls the Published AWP
     for Its Products...........................................................................................180

3.   The Schering Plough Group's AWP Manipulation Benefited
     Providers at the Expense of the Class..........................................................180

4. The DOJ Specifically Documented AWP Inflation for Albuterol Sulfate ..................................................................182

5. The Schering Plough Group Provided Free Goods and Other Incentives ...............................................................183

S. THE SICOR GROUP (SICOR, GENSIA AND GENSIA SICOR) ..........................184

1. The Sicor Group Has Been the Target of Government Investigations ..........185

2. The Sicor Group Controls the Published AWP for Its Products...................185

3. The Sicor Group's AWP Manipulation Benefited Providers at the Expense of the Class ...........................................................186

4. Specific Sicor Group AWPs Documented by the DOJ..................187

5. Inflated Sicor Group AWPs From the Sicor Group's Price Lists.................188

6. The Sicor Group Provided Free Goods and Other Incentives ......................189

T. TAP ..............................................................................................189

1. TAP Has Been the Target of Government Investigations ..............................190

2. TAP Controls the Published AWP for Its Products...................................191

3. TAP's AWP Manipulation Benefited Providers at the Expense of the Class ...............................................................191

4. TAP Provided Free Goods and Other Incentives...........................................192

5. TAP Concealed Its AWP Manipulation..........................................................193

U. WARRICK.........................................................................................194

V. WATSON ..........................................................................................194

1. Watson Has Been the Target of Government Investigations.........................196

2. Watson's Definition and Understanding of AWP ..........................................196

3. Watson Controls the Published AWP for Its Products ...................................196

4. Watson's AWP Manipulation Benefited Providers at the Expense of the Class ...............................................................196

5. Specific Watson AWPs Documented by the DOJ ..........................................197

6. Inflated Watson AWPs From Watson's Price Lists........................................197

       7.    Watson Provided Free Goods and Other Incentives ......................................198

       8.    Watson Concealed Its AWP Manipulation ....................................................199

VI.    DIRECT DAMAGE SUSTAINED BY PLAINTIFFS AND THE
MEMBERS OF THE AWP CLASS...........................................................................199

VII.   CLASS ACTION ALLEGATIONS FOR THE AWP PAYOR SCHEME ...........................199

COUNT I_VIOLATIONS OF 18 U.S.C. § 1962(C)  (AGAINST DEFENDANT
     DRUG MANUFACTURERS IDENTIFIED  HEREIN FOR UNLAWFUL
     CONDUCT ASSOCIATED WITH  AWPID DRUGS)............................................204

COUNT II_VIOLATIONS OF 18 U.S.C. § 1962(C)  (AGAINST DEFENDANT
     DRUG MANUFACTURERS IDENTIFIED HEREIN)............................................235

COUNT III_DECLARATORY AND OTHER RELIEF PURSUANT TO
     28 U.S.C. §§ 2201, 2002  (AGAINST DEFENDANT DRUG
     MANUFACTURERS FOR UNLAWFUL CONDUCT ASSOCIATED
     WITH PHYSICIAN-ADMINISTERED AND MEDICARE
     PART B COVERED DRUGS)..............................................................................265

COUNT IV_VIOLATIONS OF CONSUMER PROTECTION STATUTES ......................266

COUNT V  VIOLATION OF CONSUMER PROTECTION LAWS – MEDICARE
     PART B CO-PAY SUB-CLASS ..........................................................................268

COUNT VI...................................................................................................................274

(VIOLATIONS OF CONSUMER PROTECTION LAWS – THIRD-PARTY
     PAYORS PART B MEDIGAP CLASS)..................................................................274

COUNT VII ................................................................................................................278

(VIOLATIONS OF CONSUMER PROTECTION LAWS –
     PHYSICIAN-ADMINISTERED CLASS FOR CONSUMERS AND TPPS)..........278

COUNT IX  CIVIL CONSPIRACY  (AGAINST ALL DEFENDANTS
     IDENTIFIED  HEREIN FOR CONSPIRING WITH PBMS) ................................287

VIII.  PRAYER FOR RELIEF .............................................................................................298

IX.    DEMAND FOR JURY TRIAL ...................................................................................299

Plaintiffs, by and through their counsel, upon personal knowledge as to their own acts and beliefs, and upon information and belief as to all other matters based upon the investigations of counsel, allege as follows:

## I.    INTRODUCTION

1.      This case is brought by Plaintiffs as a proposed class action on behalf of consumers, self-insured employers, health and welfare plans, health insurers and other end payors for prescription drugs (the "Class") against certain pharmaceutical companies (referred to as the "Defendant Drug Manufacturers").

2.      For the last decade, the Defendant Drug Manufacturers have conspired with others in the pharmaceutical distribution chain, including but not limited to physicians and hospitals (hereafter "medical providers" or "providers"), pharmacy benefit managers ("PBMs") and various publishing entities, to collect inflated prescription drug payments from Plaintiffs and the Class.

3.      More specifically, the Defendant Drug Manufacturers report to trade publications a drug price – the Average Wholesale Price (or "AWP") – that for many drugs is deliberately set far above the prices that these drugs are available in the marketplace.  The AWPs for these drugs are deliberately false and fictitious and created solely to cause Plaintiffs and the Class members to overpay for drugs.  Because all drugs administered under Medicare Part B are priced based on the published AWPs, the Defendant Drug Manufacturers inflate AWP reimbursement rates to enable providers and others to make secret profits through overcharges to patients, their insurers and other end payors.  This, in turn, motivates the providers to sell and administer the drugs with the most inflated AWPs, resulting in increased market share and profit for the Defendant Drug Manufacturers and inflated payments for drugs by individual patients (through co-pays or direct payments), health plans and insurers.

THIRD AMENDED MASTER CONSOLIDATED            - 1 -
CLASS ACTION COMPLAINT
1534.16 0301 BSC.DOC

4.      For drugs reimbursed by Medicare Part B (which generally, but not always, require administration in a provider's office), the health care providers administer the drugs and are reimbursed by Medicare based on the inflated AWP.  Thus, the providers benefit by pocketing the "spread" between the AWP and the actual cost that they pay for the drugs, and the Defendant Drug Manufacturers benefit by increasing the sales of their drugs that are covered by Medicare Part B ("Covered Drugs") and by increasing their market share.  In some cases, the Defendant Drug Manufacturers also provide chargebacks, rebates, hidden price discounts and/or other unlawful financial inducements, including free samples, to further increase the provider's spread and, therefore, their incentive to prescribe a particular Defendant Drug Manufacturer's product.  Those discounts are not used by the Defendant Drug Manufacturers in calculating the published AWPs, resulting in their inflation.

5.      The use of AWP is not limited to Medicare reimbursement.  Rather, AWP is a benchmark from which hundreds of drug prices are derived in transactions throughout the pharmaceutical distribution chain.  For "Part B covered drugs" administered outside of the Medicare Part B context, non-Medicare patients and health plans pay for these drugs based on the inflated AWP with an intermediary (for example, a pharmacy benefit manager) pocketing the "spread" between the AWP and the actual cost that the intermediaries pay for these drugs.  And similar to the benefit that the Defendant Drug Manufacturers obtain through the AWP scheme for Part B drugs, the Defendant Drug Manufacturers also benefit from the AWP scheme with respect to these drugs by increasing the sales of their particular AWP-inflated drugs and their market share for those drugs.  The use of AWP as a benchmark for reimbursement is also not limited to Part B drugs being administered outside of Medicare, but extends to thousands of other drugs as well.  And again, with respect to these non-Part B drugs, it is the end payor, be it a health plan or private insurer, that pays the inflated amount.  All others in the distribution chain,

be they wholesalers, pharmacies or pharmacy benefit manufacturers, benefit from the spread between AWP and actual costs.

6.      Thus, in a perversion of the type of competitive behavior expected in a market not subject to illegal manipulation, the Defendant Drug Manufacturers often promote their drugs not based on lower prices, but by the use of reimbursement rates based on a fictitious and inflated AWP that allows purchasers and intermediaries (including providers and PBMs) to make inflated profits – and the Defendant Drug Manufacturers to increase their market share – at the expense of Plaintiffs and the Class. The Class, as further defined below, consists of all purchasers of drugs whose AWPs were inflated ("AWP End Payor Class").

7.      The Defendant Drug Manufacturers also caution providers and other intermediaries that the success of the high profit scheme will be jeopardized if anyone discloses the significantly lower prices actually paid for the drugs (allowing the scheme to be concealed and to continue). All Defendants actively conceal, and caused others to conceal, information about the true pricing structure for the prescription drugs, including the fact that the AWPs for the drugs are deliberately overstated. And, all those in the distribution chain also conceal the rebates, free samples, educational grants and other economic rewards which they receive, but which are not reflected in calculating AWP.

8.      In response to the Court's Order on the motion to dismiss, plaintiffs have prepared a list of each of the specific drugs that are the subject of the claims herein. This list is attached as Exhibit A to the Complaint. The drugs identified in Exhibit A will be referred to herein as the AWP Inflated Drugs ("AWPID" or "AWPIDs"). And, in Appendix A, plaintiffs identify the AWP that is the subject of this Complaint for each drug currently at issue pursuant to this Court's Order. Appendix B details which AWPIDs were purchased by each plaintiff.

## II.    JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, 18 U.S.C. § 1964(c), and because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The Court also has diversity jurisdiction on Counts IX and X pursuant to 28 U.S.C. § 1332(a) as there is diversity between plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund and each Defendant, and the amount in controversy exceeds $75,000. Those claims are asserted only on behalf of this plaintiff as the named plaintiff.

10.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. To the extent necessary, the District Court should retain jurisdiction over all parties pursuant to 28 U.S.C. § 1367 as the claims against all parties are related to the claims upon which original jurisdiction is based.

11.     A substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial District, and Defendants may be found within this judicial District. Venue is proper in this jurisdiction under 28 U.S.C. § 1391 and 18 U.S.C. § 1965. Defendants implemented their fraudulent marketing scheme in this District, as well as nationwide, through providers and sales representatives who reside or transact business in this District and thereby affected Class Members, who similarly reside or transact business in this District.

12.     The Judicial Panel on Multidistrict Litigation has, by Order dated April 30, 2002, ordered all related cases in the *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL Docket Number 1456, transferred to the District of Massachusetts for coordinated or consolidated pre-trial proceedings.

## III.   PARTIES

### A.   Plaintiffs

13.     With the exception of the Public Interest Group Plaintiffs, each of the Plaintiffs identified below have, upon information and belief, were charged for the drugs noted based on a formula incorporating AWP.

### 1.   Proposed Class 1 Representatives (Medicare Part B Beneficiaries)

14.     Plaintiff Leroy Townsend is a resident of Naples, Florida.  During the time period relevant to this Complaint, he was a Medicare recipient who took Zoladex and paid a 20% co-payment.

15.     Plaintiff Susan Aaronson resides in Matthews, North Carolina.  Mrs. Aaronson, the wife of a local minister, is a Medicare beneficiary with supplemental insurance coverage through her church.  Mrs. Aaronson lives with breast cancer and is currently being treated for ovarian cancer.  During the applicable time period, Ms. Aaronson was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP: albumin (manufactured by co-conspirators Aventis Group and Baxter), albuterol sulfate (the Boehringer Group, Dey, the GSK Group, and the Schering-Plough Group), baciracin (Pfizer), bupivacaine (Abbott), carboplatin injectible (Baxter, the BMS Group), cefazolin sodium (Baxter, B. Braun, and the GSK Group), cisplatin (Baxter, the Boehringer Group, the BMS Group, and the Sicor Group), darbepoetin alfa (Amgen), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dextrose injectible (Abbott, AstraZeneca, Baxter, and B. Braun), dextrose sodium chloride (Abbott), diltiazem hydrochloride injectible (Abbott, Baxter, the Boehringer Group, and the Sicor Group), diphenhydramine injectible (Baxter, Pfizer, and the Pharmacia Group), enoxaparin sodium (the Aventis Group), epinephrine (Abbott, Dey and the Sicor Group), epoetin alfa (the Johnson & Johnson Group and Amgen), famotidine (Abbott, Baxter, and the Boehringer Group), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), furosemide (Abbott, the Aventis Group, and Baxter),

glycopyrrolate injectible (Abbott, Baxter, the Sicor Group, and the Wyeth Group), heparin sodium (Abbott, Baxter, B. Braun, Pfizer, and the Pharmacia Group), hetastarch sodium chloride injectible (Baxter, the BMS Group, and B. Braun), hydromorphone injectible (Abbott, AstraZeneca and Baxter), ipratopium bromide (the Boehringer Group and Dey), lidocaine hydrochloride injectible (Abbott, AstraZeneca, Baxter, and B. Braun), magnesium sulfate injectible (Abbott and the Sicor Group), midazolam hydrochloride (Abbott, Baxter, the Boehringer Group, and Hoffman-La Roche), morphine sulfate injectible (Abbott, AstraZeneca, the BMS Group, and the Boehringer Group), neostigmine methylsulfate (Abbott, Baxter, and the Sicor Group), odansetron (the GSK Group), paclitaxel, (the BMS Group and the Boehringer Group), pegfilgrastim (Amgen), phenylephrine (Baxter and the Sicor Group), plicamycin (Bayer and the Boehringer Group), potassium chloride (Abbott, Baxter, and B. Braun), promethazine injectible (Abbott, Baxter, the Sicor Group, and Watson), ringers lactated with dextrose injectible (Abbott, Baxter, and B. Braun), propofol injectible (Abbott, AstraZeneca, Baxter, Pfizer, and the Sicor Group), sodium chloride (Abbott, the Aventis Group, Baxter, the Boehringer Group, B. Braun, the Schering-Plough Group, and the Sicor Group), succinylcholine chloride injectible (Abbott and Novartis), and vercuronium bromide injectible (Abbott, Baxter, the Boehringer Group, and the Sicor Group).  To date, Mrs. Aaronson has paid several thousands of dollars for these and other prescription drug medications.  Although Mrs. Aaronson had supplemental insurance coverage, the coverage required her to make percentage co-payments.  Mrs. Aaronson is a proposed class representative for, among other defendants, BMS, GSK and J&J.

16.     Plaintiff David E. Clark resides in Tonto Basin, Arizona, and is a 69 year-old Medicare beneficiary with secondary insurance through the Operating Engineers American Benefit Plan.  Mr. Clark has been treated for prostate cancer and now suffers from inoperative brain cancer.  During the applicable time period, Mr. Clark was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP:

cefazolin (Baxter, B. Braun, the BMS Group, and GSK), cafotetan disodium (the BMS Group),

ciprofloxacin hydrochloride (Abbott, Baxter, Bayer, and the Schering-Plough Group), cisplatin

(Baxter, the Boehringer Group, the BMS Group, and the Sicor Group), dexamethasone sodium

phosphate (Baxter, Fujisawa, the Sicor Group, and Watson), dextrose injectible (Abbott,

AstraZeneca, Baxter, and B. Braun), enalaprilat injectible (Abbott, Baxter, the Boehringer

Group, and the Sicor Group), epoetin alfa (Amgen and the Johnson & Johnson Group),

famotidine (Abbott, Baxter, and the Boehringer Group), fentanyl citrate (Abbott, AstraZeneca,

Baxter, and the Johnson & Johnson Group), granisetron (the GSK Group and Hoffman-

LaRoche), hetastarch sodium chloride injectible (Baxter, the BMS Group, and B. Braun),

hydromorphone injectible (Abbott, AstraZeneca and Baxter), labetalol injectible (Abbott, Baxter,

and the Boehringer Group), lidocaine hydrochloride injectible (Abbott, AstraZeneca, Baxter, and

B. Braun), methylsulfate (the Fujisawa Group), midazolam hydrochloride (Abbott, Baxter, the

Boehringer Group, and Hoffman-La Roche), morphine sulfate injectible (Abbott, AstraZeneca,

the Boehringer Group, and the BMS Group), potassium chloride (Abbott, Baxter, B. Braun, and

Pfizer), ranitidine (the GSK Group), and sodium chloride (Abbott, the Aventis Group, Baxter,

the Boehringer Group, B. Braun, the Schering-Plough Group, and the Sicor Group).  Mr. Clark

has made payments for the foregoing drugs totaling nearly $10,000.00 to date.  Although Mr.

Clark had supplemental insurance coverage, the coverage required him to make percentage co-

payments.  Mr. Clark is a proposed class representative for, among other defendants, GSK and

J&J.

17.     Plaintiff Robert Howe resides in Mapleton, Oregon, and is a 79 year-old Medicare

beneficiary, with supplemental insurance coverage through United Health Care of Utah.  Mr.

Howe is living with prostate cancer.  During the applicable time period, Mr. Howe was

prescribed, and was charged for, the following physician-administered drugs, based in whole or

in part on AWP:  dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor

Group, and Watson), docetaxel (the Aventis Group), gentamicicin sulfate (Abbott, Baxter, B. Braun, the Fujisawa Group, and Watson), goserelin acetate (AstraZeneca), granisetron (the GSK Group and Hoffman-LaRoche), and pegfilgrastim (Amgen). Mr. Howe has made payments for the foregoing drugs. Although Mr. Howe had supplemental insurance coverage, the coverage required him to make percentage co-payments. Mr. Howe is a proposed class representative for, among other defendants, AstraZeneca and GSK.

18.     Plaintiff James Shepley resides in Reno, Nevada, and is an 85 year-old Medicare beneficiary, with secondary insurance coverage through United American. Mr. Shepley is living with prostate cancer. During the applicable time period, Mr. Shepley was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP:  epoetin alfa (Amgen and the Johnson & Johnson Group), goserelin acetate (AstraZeneca), and prednisone (the Boehringer Group). Mr. Shepley has made payments for the foregoing drugs. Although Mr. Shepley had supplemental insurance coverage, the coverage required him to make percentage co-payments. Mr. Shepley is a proposed class representative for, among other defendants, AstraZeneca and J&J.

19.     Plaintiff the Estate of Patricia K. Young is represented by Larry Young, Mrs. Young's husband. Before she died, Mrs. Young resided in Enid, Oklahoma where her husband still resides. She was a Medicare beneficiary as a result of a longstanding disability, with supplemental insurance through United Healthcare that covered only a portion of her co-insurance obligation for prescription drugs under Medicare Part B. She received medication for rheumatoid arthritis, Hepatitis C, and lymphoma, the disease that ultimately caused her death. During the applicable time period, Mrs. Young was prescribed, and was charged for, the following physician-administered prescription drugs manufactured and sold by the defendant companies, based in whole or in part on AWP:  azathioprine sodium (the Boehringer Group), cytoxan (the BMS Group, Pfizer, and the Pharmacia Group), dexamethasone acetate (Abbott,

Bayer, the Wyeth Group, and Watson), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dolasetron mesylate (the Aventis Group), dopamine hydrochloride (Abbott, B. Braun, Baxter, and the BMS Group), epirubicin (Pfizer and the Pharmacia Group), epoetin alfa (Amgen and the Johnson & Johnson Group), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), filgrastim (Amgen), folic acid injectible (the Boehringer Group), heparin sodium (Abbott, Baxter, B. Braun, Pfizer, and the Pharmacia Group), hydrocortisone sodium succinate (Pfizer and the Pharmacia Group), infliximab (the Johnson & Johnson Group), levofloxacin (Abbott and the Johnson & Johnson Group), lidocaine hydrochloride injectible (Abbott, AstraZeneca, Baxter, and B. Braun), lorazepam injectible (Abbott, Baxter, and Watson), methotrexate sodium injectible (Baxter, the Boehringer Group, Immunex, and the Wyeth Group), midazolam (Abbott, Baxter, Boehringer, and Hoffman-LaRoche), moxifloxacin injectible (Bayer and the Schering-Plough Group), oprelvekin (the Wyeth Group), prednisone (the Boehringer Group), promethazine (Abbott, Baxter, the Sicor Group, and Watson), protonix injectible (the Wyeth Group), triamcinolone acetonide (the BMS Group), vancomycin sulfate (Abbott, Baxter, and Watson), vincristine sulfate (the Pharmacia Group and the Sicor Group), and warfarin sodium injectible (the BMS Group). At various times throughout the course of Mrs. Young's treatment, the Youngs' made payments via credit card to meet their payment obligations to their various medical providers. The Youngs made payments for the foregoing drugs. Although Mrs. Young had supplemental insurance coverage, the coverage required her to make percentage co-payments. The Estate of Patricia Young is a proposed class representative for, among other defendants, BMS and J&J.

20.    Plaintiff the Estate of William Newell is represented by Mr. Newell's wife, Virginia Newell. Mr. Newell was a resident of Mooresville, North Carolina, where his wife still resides, and was a Medicare beneficiary with supplemental insurance coverage through AARP. Mr. Newell took prescription drug medications for diabetes, osteoparothis and cancer. During

the applicable time period, Mr. Newell was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP: azithromycin (Pfizer), clindamycin phosphate (Abbott, Pfizer, and the Pharmacia Group), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), diltiazem hydrochloride injectible (Abbott, Baxter, the Boehringer Group, and the Sicor Group), docetaxel (Novartis), epoetin alfa (Amgen and the Johnson & Johnson Group), fentanyl citrate (Abbott, AstraZeneca, and Baxter), furosemide (Abbott, the Aventis Group, and Baxter), goserelin acetate (AstraZeneca), heparin sodium (Abbott, Baxter, B. Braun, Pfizer, and the Pharmacia Group), granisetron (the GSK Group and Hoffman-LaRoche), hydromorphone hydrochloride injectible (Abbott, AstraZeneca, and Baxter),  levofloxacin (Abbott and the Johnson & Johnson Group), methylprednisolone (Abbott, Pfizer, and the Pharmacia Group), metoclopramide (Baxter and Wyeth), moxifloxacin injectible (Bayer and the Schering-Plough Group), promethazine (Abbott, Baxter, the Sicor Group, and Watson), sodium chloride (Abbott, the Aventis Group, Baxter, the Boehringer Group, B. Braun, the Schering-Plough Group, and the Sicor Group), triamcinolone acetonide (the Aventis Group), vinorelbine tartrate (the GSK Group), and warfarin sodium injectible (the BMS Group).  The Newells have made payments for the foregoing drugs. Although Mr. Newell had supplemental insurance coverage, the coverage required him to make deductible payments for his treatment before his insurance coverage paid for his care.  The Estate of William Newell is a proposed class representative for, among other defendants, AstraZeneca, BMS, J&J and Aventis.

## 2.     Proposed Class 2 Representatives (MediGap Payors)

21.     Plaintiff United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW") is an employee welfare benefit plan and employee benefit plan maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to

eligible participants and beneficiaries. UFCW maintains its principal place of business in Cook County, Illinois. During the Class Period, UFCW has been billed for and paid charges for AWPIDs, including: Abbott's sodium chloride, gentamicin sulfate, furosemide, heparin lock flush and dextrose; Baxter's sodium chloride and dextrose; Bedford's leucovorin calcium; Sicor's leucovorin calcium; Pharmacia's methylprednisolone sodium; Braun's sodium chloride; Aventis' Furosemide; Immunex' leucovorin calcium and Johnson & Johnson's Remicade. UFCW also made payments for drugs outside of the Medicare Part B context based on published AWPs. All of UFCW drugs that are at issue in the Complaint are identified in Appendix B. From December 2000 to the present, UFCW has contracted with a PBM to administer its prescription drug benefit for its beneficiaries. For brand name drugs its contract expressly provides that reimbursement is at "AWP less 13%." For generic drugs its reimbursement is also based on AWP. Prior to December 2000, UFCW contracted with pharmacies for the payment of purchases of pharmaceutical drugs by its members and beneficiaries at an estimated acquisition cost based on the AWPs (less a specified percentage) published by the manufacturers in Medispan.

22.    UFCW's beneficiaries began to and have continued to be reimbursed for their purchases of physician-administered drugs pursuant to UFCW's comprehensive medical expense benefit, its major medical plan. *See* United Food and Commercial Workers Unions and Employers Midwest Health Benefits Plan, P001294-1417. UFCW made payments for physician-administered drugs based on published AWPs. Since November 1, 1994, UFCW's comprehensive medical expense benefit has been administered by Blue Cross Blue Shield of Illinois ("BCBS"). Until January 1, 2005, when BCBS' payments for physician-administered drugs began to be established considering ASP, BCBS' payments were based on a negotiated allowance which was established considering a percentage above AWP. For physician-administered drugs not covered by Medicare Part B, UFCW paid 80% or 85% of BCBS'

payments, and the UFCW member paid the remainder. Further, UFCW has made co-payments under Medicare Part B throughout the Class Period. A member's 20 percent co-payment under Medicare Part B is, and has been, an eligible expense under UFCW's plans during the Class Period. If Medicare pays a portion of a Fund member's claim under Medicare Part B, UFCW reimburses the remainder of the claim.

23.     For transactions that occurred after October 31, 2004, Plaintiff UFCW is able to determine for which drugs it reimbursed and by how much it reimbursed by performing a computer search of its claims files. Such files also show which of its covered members had an amount due and owing after UFCW made its reimbursement of the claim.

24.     Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("PMBT") is a voluntary employee benefits association maintained pursuant to the federal Employee Retirement Security Act, 29 U.S.C. § 1132, *et seq.*, and to the settlement of a federal court action (Case No. 3:94-0573) brought in the United States District Court for the Middle District of Tennessee against Pirelli Armstrong Tire Corp. ("Pirelli") in the early 1990's by many Pirelli retirees, for the purpose of providing health and medical bnefits to eligible participants and beneficiaries. PMBT maintains its principal place of business in Goodlettsville, Sumner County, Tennessee.

25.     During the Class Period, PMBT also reimbursed its members for portions of pharmaceutical bills (including physician-administered drugs) that were covered in the first instance by Medicare Part B. The plan expressly states that it pays 20 percent of all covered Medicare Part B claims. The fund notified that Medicare Part B has covered a given drug or procedure and has paid 80 percent of the cost. The fund then pays the identified "coinsurance" amount, or 20 percent of the total cost Medicare has paid. Numerous drugs fall into this category. Based on a recent review of a small number of our files, PMBT has determined that, with respect to drugs manufactured by the Track 1 Defendants (Astra-Zeneca, Bristol-Myers-

Squibb, Glaxo-Smith-Kline and Johnson & Johnson), PMBT made Medicare co-payments with respect to at least the following drugs: Zovirax (Glaxo Smith Kiline), Zoladex (Astra-Zeneca), Cytoxan (Bristol-Myers-Squibb), and Procrit (Johnson & Johnson). Because the fund is composed of retirees, about two-thirds of whom are eligible for Medicare, and because the search was only of a relatively small number of files, plaintiffs are confident that further investigation will show that other drugs were paid for in the Medicare Part B context with respect to the various companies known in this case as "Track 1" and "Track 2" Defendants. Our investigation is continuing.

25a. Plaintiff Sheet Metal Workers National Health Fund ("SMW Health Fund") is a Taft-Hartley trust administered pursuant to the requirements of 29 U.S.C. § 186 by an equal number of trustees appointed by labor representatives and union representatives. Its Fund Office is in Goodlettsville, Tennessee. The SMW Health Fund is also a multiemployer welfare fund subject to ERISA. The SMW Heath Fund provides a Supplemental Medicare Wraparound Plus ("SMW+") program that covers the Medicare Part B co-payments of its beneficiaries. There are over 15,000 retirees and covered beneficiaries who receive benefits under the SMW+ program. During the Class Period, the SMW Health Fund has paid for portions of pharmaceutical bills that were covered in the first instance by Medicare Part B. The drugs for which payments were made include Cytoxan (BMS), Etopophos (BMS), Kytril (GSK), Levaquin (J&J), Nevelbine (GSK), Paraplatin (BMS), Procrit (J&J), Remicade (J&J), Rubex (BMS), Taxol (BMS), Vepesid (BMS) and Zoladex (AstraZeneca).

### 3. Proposed Class 3 Representatives (TPPs and Consumers for AWP-Based Charges on Physician Administered Drugs Outside of Medicare)

26. UFCW is also a proposed representative for this Class.

27. Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund ("CMHV") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations

Act ("LMRA"), 29 U.S.C. § 186(c)(5), and as defined by §§ 1002(1) and (3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for the purpose of

providing health benefits to eligible participants and beneficiaries. As such, CMHV is a legal

entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d). CMHV maintains

its principal place of business at 9555 West Sam Houston Parkway South, Suite 400, Houston,

Texas. During the Class Period, Carpenters Welfare Trust Fund has been billed for and paid

charges for Covered Drugs and otherwise made payments for drugs outside of the Medicare Part

B context based on published AWPs. These drugs are identified in Appendix B. During the

period relevant to the complaint, CMHV used an administrator to provide medical and drug

benefits to its members. CMHV's administrator contracted directly with a PBM to provide

pharmacy services to CMHV participants. By contract, all of CMHV's drug purchases were

directly and expressly tied to AWP. CMHV paid for brand named drugs in both the retail and

mail order context based on AWP minus a fixed percentage. For generic drugs in the retail

context CMHV paid based upon MAC, which itself was tied to AWP and in the mail order

context CMHV's generic purchases were made at either MAC or AWP minus a fixed

percentage. By contract, the AWP used to determine prices was based on that published by

"First Databank Blue Book."

     28.    Plaintiff Teamsters Health & Welfare Fund of Philadelphia and Vicinity

("THWF") is an employee welfare benefit plan and employee benefit plan established and

maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan

established and maintained pursuant to §§ 1002(1) and (3) of ERISA, for the purpose of

providing health benefits to eligible participants and beneficiaries. As such, THWF is a legal

entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d). THWF maintains its

principal place of business at Fourth & Cherry Streets, Philadelphia, Pennsylvania 19106. It

provides comprehensive health coverage for over 28,000 participants and beneficiaries in parts

of Pennsylvania, New Jersey and Delaware.  During the Class Period, THWF has been billed for and paid charges for AWPIDs.  THWF also made payments for drugs outside of the Medicare Part B context based on published AWPs.  All drugs covered by this Complaint purchased by this plaintiff are identified in Appendix B.  THWF uses the services of a PBM to administer its prescription drug program.  Based upon its contracts it pays for brand name drugs at AWP minus a fixed percentage, and pays for generics based on MAC, which is itself based on AWP.  It also pays for certain drugs outside the PBM context and does so based on AWP.

29.    Plaintiff Twin Cities Bakery Workers Health and Welfare Fund ("TCBW") is a jointly administered Taft-Hartley Fund established and maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries.  TCBW maintains its principal place of business in Eagan, Minnesota.  As such, TCBW is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d).  TCBW provides health benefits, including prescription drug benefits, to approximately 2000 active participants, and their spouses and dependants.  During the Class Period, TCBW has been billed for and paid charges for AWPIDs.  TCBW also made payments for drugs outside of the Medicare Part B context based on published AWPs.  The drugs purchased by TCBW at issue in this litigation are identified in Appendix B.  TCBW contracts with a third-party administrator for administration of its pharmacy and medical benefits programs.  This administrator in turn contracts with pharmacies and reimburses the pharmacies based upon published AWPs.  For example, a typical agreement with a pharmacy providing services to TCBW members provides that reimbursement is at "AWP minus 10%."  It further provides that the AWP is determined by Medispan.  As for generics, reimbursement is based on MAC, which in turn is derived from AWP.

30.    Plaintiff Philadelphia Federation of Teachers Health and Welfare Fund ("PFTHW") is a voluntary employee benefits plan organized pursuant to § 501(c) of the Internal

Revenue Code for the purpose of providing health benefits to eligible participants and beneficiaries. PFTHW maintains its principal place of business in Philadelphia, Pennsylvania. PFTHW provides health benefits, including prescription drug benefits, to approximately 20,000 active participants, and their spouses and dependents. During the class period, PFTHW has been billed for and paid charges for covered drugs and otherwise made payments for drugs outside of the Medicare Part B context based on published AWPs. These drugs are identified in Appendix B. During the period relevant to this Complaint PFTHW used a PBM to provide prescription services for its members. At all times its payment formula for both brand name and generic drugs was expressly tied to AWP.

31.     Plaintiff Man-U Service Contract Trust Fund ("Man-U Service Fund") is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and is an employee benefit plan established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, for the purpose of providing health benefits, including prescription drug coverage, to eligible participants and beneficiaries. The Man-U Service Fund maintains its principal place of business at 4600 Powder Mill Road, Suite 100, Beltsville, Maryland 20705. The Manu-U Service Fund provides comprehensive health coverage, including prescription drug coverage, for approximately 1,200 participants and beneficiaries located in Maryland, Delaware, Virginia, North Carolina, Pennsylvania and Washington, D.C. All of Man-U Service Fund's drugs at issue in the Complaint are identified in Appendix B. Plaintiff Man-U Service Fund utilizes the services of a PBM and all of its contracts provide that its drug purchases are directly based on AWP. For example, for drugs purchased through the pharmacy, its contract provides for payment at "AWP – 16%," and for mail-order drugs, "AWP – 23%."

32.     In addition, from 2002 through 2003, plaintiff William Barnewolt paid out-of-pocket amounts for Procrit (J&J), Arenesp (Amgen), Furosemide (Abbott), and Infed (Watson).

Plaintiff William Barnewolt is represented in this action by plaintiff Bonnie Barnewolt, as a successor in interest to William Barnewolt. The amounts Mr. Barnewolt paid were based on AWP. Mr. Barnewolt was a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

33.     Plaintiff Cheryl Barreca is a resident of Schaumburg, Illinois. In 1997, 1998, and 2001, Ms. Barreca paid out-of-pocket amounts for Procrit (J&J), Rubex (BMS), Cytoxan (BMS), Kytril (GSK), and Dexamethasone Sodium. Kytril (granisetron HCL) is a physician administered injectable drug marketed by GSK, which is used to relieve suffering from nausea and vomiting as a result of chemotherapy and radiation therapy. The amounts she paid were based on AWP. Ms. Barreca is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

34.     Plaintiff Cynthia Byrski is a resident of Chicago Heights, Illinois. In 2002, Ms. Byrski paid out-of-pocket amounts for Rubex (BMS), Kytril (GSK), Cytoxan (BMS), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Byrski is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

35.     Plaintiff Mary Cauble is a resident of Granite City, Illinois. In 2004, Ms. Cauble paid out-of-pocket amounts for Rubex (BMS), Dextrose, Dexamethasone Sodium, and Heparin Sodium. The amounts she paid were based on AWP. Ms. Cauble is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

36.     Plaintiff Anna Choice is a resident of Chicago, Illinois. From 2000 through 2005, Ms. Choice paid out-of-pocket amounts for Rubex (BMS), Zofran (GSK), Cytoxan (BMS), Heparin, Dexamethasone Sodium, and Taxotere (Aventis). Taxotere (docetaxel) is a physician administered injectable drug marketed by Aventis, which is used to treat locally advanced cancers following the failure of chemotherapy. The amounts she paid were based on AWP. Ms. Choice is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting co-insurance amounts paid by plan participants, are based on AWP.

37.     Plaintiff Joyce Dison is a resident of Toulon, Illinois. In 2000 and 2001, Ms. Dison paid out-of-pocket amounts for Rubex (BMS), Cytoxan (BMS), Dexamethasone Sodium, and Anzemet (Aventis). The amounts she paid were based on AWP. Ms. Dison is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

38.     Plaintiff Tracy Garcia is a resident of Oak Lawn, Illinois. In 2004 and 2005, Ms. Garcia paid out-of-pocket amounts for Rubex (BMS), Cytoxan (BMS), Albuterol (Schering-Plough), Neulasta (Amgen), Heparin, Sodium Chloride, Anzemet (Aventis), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Garcia is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

39.     Plaintiff Donna Kendall is a resident of Decatur, Illinois. From 2002 to 2004, Ms. Kendall paid out-of-pocket amounts for Cytoxan (BMS), Kytril (GSK), Rubex (BMS), Procrit (J&J), Lidocaine (B. Braun), Dexamethasone Sodium, Sodium Chloride, Lorazepam (Abbott), and Taxotere (Aventis). The amounts she paid were based on AWP. Ms. Kendall is a

beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

40.     Plaintiff Sandra Leef is a resident of Chicago, Illinois. In 2001, Ms. Leef paid out-of-pocket amounts for Cytoxan (BMS), Dexamethasone Sodium, Anzemet (Aventis), Lorazepam (Abbott), and Fluorouracil (Fujisawa). The amounts she paid were based on AWP. Ms. Leef is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

41.     Plaintiff Gerald Miller is a resident of Peoria, Illinois. In 2004 and 2005, Mr. Miller paid out-of-pocket amounts for Paraplatin and Dexamethasone Sodium manufactured by BMS. The amounts he paid were based on AWP. Mr. Miller is a beneficiary of the UFCW Fund, which is administered by Blue Cross/Blue Shield of Illinois, which charges for physician-administered drugs based on AWP, and any co-payments are based upon AWP.

42.     Plaintiff Joseph Miller is a resident of Merrillville, Indiana. In 1997 and 1998, Mr. Miller paid out-of-pocket amounts for Zofran (GSK), Heparin Sodium, Cisplatin (Baxter), Furosemide (Abbott), and Dexamethasone Sodium. The amounts he paid were based on AWP. Mr. Miller is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

43.     Plaintiff Constance Nelson is a resident of McHenry, Illinois. In 2000 and 2002, Ms. Nelson paid out-of-pocket amounts for Rubex (BMS), Zofran (GSK), Cytoxan (GSK), Heparin, Procrit and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Nelson is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue

Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

44.     Plaintiff Andrea Palenica is a resident of Oak Lawn, Illinois. In 2000 and 2005, Ms. Palenica paid out-of-pocket amounts for Cytoxan (BMS), Kytril (GSK), Sodium Chloride (B. Braun McGaw), Dexamethasone Sodium (Watson), Leucovorin Calcium (Sicor), Heparin Sodium (B. Braun McGaw), and Dextrose (Baxter). Upon information and belief, the amounts Ms. Palenica paid were based on AWP. Ms. Palenica is a beneficiary of the UCFW Fund, which is administered by Blue Cross/Blue Shield of Illinois, which has previously testified that its charges for physician-administered drugs, and the resulting co-insurance amounts paid by plan participants, are based on AWP.

45.     Plaintiff Regina Shoemaker is a resident of Crown Point, Indiana. In 1996 and 1997, Ms. Shoemaker paid out-of-pocket amounts for Cytoxan (BMS) and Dextrose. The amounts she paid were based on AWP. Ms. Shoemaker is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

46.     Plaintiff Scott Tell is a resident of Freeport, Illinois. In 1999, 2000 and 2004, Mr. Tell paid out-of-pocket amounts for his wife Rhonda's medications, including Kytril (GSK), Paraplatin (BMS), Heparin and Dexamethasone Sodium. The amounts he paid were based on AWP. Mr. Tell is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

47.     Plaintiff Kenneth Vanderwal is a resident of Dyer, Indiana. In 2003 and 2004, Mr. Vanderwal paid out-of-pocket amounts for Remicade (J&J). The amounts he paid were based on AWP. Mr. Vanderwal is a beneficiary of the UFCW Fund. The UFCW Fund is

administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

48.     Plaintiff Pauline Vernick is a resident of Buffalo Grove, Illinois. In 2002, Ms. Vernick paid out-of-pocket amounts for Cytoxan (BMS), Rubex (BMS), Sodium Chloride, Heparin, Anzemet (Aventis), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Vernick is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

49.     Plaintiff Mardolyn Vescovi is a resident of Shorewood, Illinois. In 2002, Ms. Vescovi paid out-of-pocket amounts for Cytoxan (BMS), Rubex (BMS), Procrit (J&J), Heparin, Dexamethasone Sodium and Anzemet (Aventis). The amounts she paid were based on AWP. Ms. Vescovi is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

50.     Plaintiff Susan Wessels is a resident of Rock Falls, Illinois. In 2004 and 2005, Ms. Wessels paid out-of-pocket amounts for Zoladex (AstraZeneca). The amounts she paid were based on AWP. Ms. Wessels is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

51.     Plaintiff Kathleen Weaver-Zech is a resident of Chicago, Illinois. In 2003, Mrs. Weaver-Zech paid out-of-pocket amounts for Remicade. The amounts she paid were based on AWP. Mrs. Weaver-Zech was a beneficiary of the UFCW Fund, which is administered by Blue Cross Blue Shield of Illinois, whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

52.     Rebecca Hopkins resides in North East, Pennsylvania, and is a 49 year-old who

has been privately insured through Blue Cross/Blue Shield of Pennsylvania for most of the

applicable time period. However, for a portion of her medical care and treatment, Mrs. Hopkins

had no insurance coverage and had to pay 100% of the cost of her care, amounting to thousands

of dollars, which care included physician-administered drugs for which she paid out of pocket.

Mrs. Hopkins received medication for ovarian cancer. During the applicable time period, Mrs.

Hopkins was prescribed, and was charged for, the following physician-administered drugs, based

in whole or in part on AWP: azithromycin (Pfizer), bleomycin sulfate (the BMS Group and the

Pharmacia Group), carboplatin injectible (the BMS Group and Baxter), cefuroxime (Baxter and

B. Braun), cisplatin (Baxter, the Boehringer Group, the BMS Group, and the Sicor Group),

doxycycline (the Boehringer Group and Pfizer), etoposide phosphate (the Boehringer Group, the

BMS Group, the Pharmacia Group, and the Sicor Group), minocycline (the Wyeth Group),

paclitaxel (the Boehringer Group and the BMS Group), tamoxifen (AstraZeneca), and

vancomycin sulfate (Abbott, Baxter, and Watson). Mrs. Hopkins has made payments for the

foregoing drugs. Mrs. Hopkins is a proposed class representative for, among other defendants,

BMS.

53.     George Baker Thomson resides in Gulfport, Florida, and is a 78 year-old who is

privately insured through Wellcare. Mr. Thomson is living with prostate cancer. During the

applicable time period, Mr. Thomson was prescribed, and was charged for, the following

physician-administered drugs, based in whole or in part on AWP: goserelin acetate

(AstraZeneca) and triptorelin pamoate (Pfizer and the Pharmacia Group). Mr. Thomson has

made payments for the foregoing drugs. Although Mr. Thomson had insurance coverage, the

coverage required him to make percentage co-payments. Mr. Thomson is a proposed class

representative for, among other defendants, AstraZeneca.

54.     Each of the plaintiffs is either producing complete documentation or is in the process of obtaining medical records.

### 4.     Public Interest Group Plaintiffs

55.     Plaintiff Vermont Public Interest Research Group ("VPIRG") has been Vermont's leading watchdog and advocacy group since 1972. It is located at 141 Main Street, Ste. 6, Montpelier, Vermont. During the Class Period, VPIRG's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers and made inflated payments or co-payments based in whole or in part on published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Elizebeth Ryan Cole of Thetford, Vermont, an active VPIRG member, purchased the Johnson & Johnson Group's drug Retin-A based in whole or in part upon the published AWP and Ms. Dawn Taylor of Hinesburg, Vermont, an active VPIRG member, purchased BMS's drug Plavix in whole or in part based upon Defendants' published AWP. As an unincorporated association, VPIRG has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). VPIRG appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, § 16 of the Clayton Act and any other applicable statute.

56.     Plaintiff Wisconsin Citizen Action ("WCA") is the state's premiere public interest organization with 53,000 individual members and 250 affiliate organizations. It is located at 1202 Williamson St., Suite B, Madison, Wisconsin. During the Class Period, Plaintiff's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers and made inflated payments or co-payments based in whole or in part upon the published AWP, and were injured by the illegal conduct alleged herein. For example, Ms. Ida Johnson of Oconomowoc, Wisconsin, and active WCA member, purchased Pfizer's drug Lipitor in whole or in part based upon Defendants' published AWP. As an unincorporated association, WCA has standing to pursue this action under Fed. R. Civ. P.

17(b)(1). WCA appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, §16 of the Clayton Act and any other applicable statute.

57. Plaintiff New York StateWide Senior Action Council ("StateWide") is a grassroots membership organization made up of individual senior citizens and senior citizen clubs from all parts of New York State. It is located at 275 State Street, Albany, New York. During the Class Period, StateWide's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments based in whole or in part upon published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Mary Jane Snyder of Clifton Park, New York, an active StateWide member, purchased AstraZenaca's drugs Prilosec and Nexium, Boehringer's drug Atrovent, BMS's drug Tequin, Novartis' drug Starlix and Schering's drugs Clarinex and K-Dur based in whole or in part on Defendants' published AWPs. As an unincorporated association, StateWide has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). StateWide appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, §16 of the Clayton Act and any other applicable statute.

58. Plaintiff Citizen Action of New York ("CANY") is a coalition of labor, senior citizen, women's, student, tenant and community organizations that works with community activists for social and economic justice. It is located at 94 Central Avenue, Albany, New York. During the Class Period, CANY's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or co-payments therefore based in whole or in part on published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Marilyn Gourley of Binghamton, New York, an active CANY member, purchased Pfizer's drug Zoloft based in whole or in part upon

Defendants' published AWPs. As an unincorporated association, CANY has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). CANY appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, §16 of the Clayton Act and any other applicable statute.

59.     Plaintiff Citizens for Consumer Justice ("CCJ") is a Pennsylvania nonprofit umbrella organization that promotes affordable, quality health care. It is located at Architects Building, 117 South 17th Street, Suite 311, Philadelphia, Pennsylvania. During the Class Period, CCJ's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers, made inflated payments or copayments based in whole or in part on published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Patricia Pudyk of Aliquippa, Pennsylvania, an active CCJ member, purchased AZ's drug Nexium in whole or in part based upon Defendants' published AWP. As an unincorporated association, CCJ has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). CCJ appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, § 16 of the Clayton Act and any other applicable statute.

**B.     Defendants**

60.     The acts charged in this Complaint as having been done by the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of the Defendants' business or affairs.

61.     Various other individuals, partnerships, sole proprietors, business entities, companies and corporations, presently unknown to Plaintiffs and not named as Defendants in this Complaint, participated as co-conspirators in the violations alleged in this Complaint and performed acts and made statements in furtherance thereof. Such unknown persons or entities acted as co-conspirators and aided, abetted or participated with Defendants in the commission of the wrongful acts alleged in this Complaint.

1.    **Abbott**

62.    Defendant Abbott Laboratories ("Abbott") is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois. Abbott is a diversified health care company that discovers, develops, manufactures, and markets health care products and pharmaceuticals. Abbott's principal businesses are global pharmaceuticals, nutritionals, and medical products. Abbott reported revenues for the year 2000 of approximately $13.7 billion and net earnings of $2.8 billion.

63.    Abbott, one of the world's largest pharmaceutical companies, is in the business of manufacturing prescription medications for clinical distribution by Medicare Plan B providers nationwide. The drugs manufactured by Abbott and covered by Medicare Part B include, but may not be limited to: acetylcysteine, acyclovir, amikacin sulfate, calcitriol, cimetidine hydrochloride, clindamycin phosphate, dextrose, dextrose sodium chloride, diazepam, furosemide, gentamicin sulfate, heparin lock flush, metholprednisolone sodium succinate, sodium chloride, tobramycin sulfate, vancomycin, and zemplar.

64.    Abbott is also sued herein in its capacity as a participant in the Together Rx conspiracy.

2.    **Amgen**

65.    Defendant Amgen Inc. ("Amgen") is a Delaware corporation with its principal place of business at One Amgen Drive, Thousand Oaks, California. Amgen is a biotechnology corporation that focuses its research and development efforts on drugs related to nephrology, cancer, inflammation, neurology and metabolism. In 2000, Amgen's revenues exceeded $3.6 billion.

66.    Amgen is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide. Pharmaceuticals that are manufactured by Amgen and covered by Medicare Part B include, but may not be limited to: Epogen® (epoetin alfa) and Neupogen® (filgrastim).

### 3.    AstraZeneca

67.    Defendant Zeneca, Inc. ("Zeneca") is a Delaware corporation with its principal place of business at Malvern, Pennsylvania. Zeneca is a wholly owned subsidiary of AstraZeneca, PLC, a limited liability company domiciled in the United Kingdom.

68.    Defendant AstraZeneca US is a Delaware corporation with its principal place of business at 1800 Concord Pike, Wilmington, Delaware.

69.    Defendant AstraZeneca Pharmaceuticals L.P. is a Delaware corporation, with its principal place of business located at 1800 Concord Pike, Wilmington, Delaware. AstraZeneca Pharmaceuticals L.P. is owned and controlled by AstraZeneca PLC, a public limited liability company domiciled in the United Kingdom.

70.    AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P. and AstraZeneca U.S. are collectively referred to as "AstraZeneca."

71.    AstraZeneca maintains research and development and manufacturing facilities worldwide, including in the United States. AstraZeneca reported annual sales of $16.5 billion in 2001, with an operating profit of $4.2 billion.

72.    AstraZeneca manufactures and markets several drugs covered by Medicare Part B including, but not limited to: Zoladex® (goserilin acetate implant), Nolvadex® (tamoxifen citrate), Tomudex® (raltitrexed), and Diprivan® (propofol).

73.    AstraZeneca is also sued herein in its capacity as a participant in the Together Rx conspiracy.

### 4.    The Aventis Group (Aventis, Pharma, Hoechst and Behring)

74.    Defendant Aventis Pharmaceuticals, Inc. ("Pharma") is a Delaware corporation with its principal place of business located at 300-400 Somerset Corporate Blvd., Bridgewater, New Jersey. Pharma is a wholly owned subsidiary of Aventis, S.A., a company domiciled in France. Pharma is comprised of the U.S. commercial operations of predecessor companies Rhone-Poulenc Rorer, S.A. and Defendant Hoechst Marion Roussel, Inc. ("Hoechst"). Prior to

its acquisition by Pharma, Hoechst was a Delaware corporation with its principal place of business located at 10236 Marion Park Drive, Kansas City, Missouri.

75.     Pharma's principal business activities are the discovery, development, manufacture and sale of prescription pharmaceuticals in the areas of cardiology, oncology, infectious diseases, arthritis, allergies and respiratory disorders, diabetes and central nervous system disorders. Pharma reported U.S. net sales of approximately $5.8 billion in 2001.

76.     Defendant Aventis Behring L.L.C. ("Behring"), located at 1020 First Avenue, King of Prussia, Pennsylvania, formerly did business as Centeon L.L.C., a 50/50 joint venture between Hoechst and Rhone-Poulenc Rorer, S.A. When Centeon L.L.C.'s parent companies merged to create Aventis in 1996, Behring became its wholly-owned subsidiary.

77.     Behring is the plasma protein business of Pharma, producing a line of therapies including coagulation therapies for the treatment of hemophilia, wound healing agents used during major surgical procedures, inhibitor treatments that inhibit the formation of blood clots, immunoglobulins for the prevention and treatment of immune disorders, and plasma expanders for the treatment of a variety of conditions such as shock, burns and circulatory disorders. In 2000, Behring held assets estimated at $1.5 billion.

78.     The drugs manufactured by Pharma, Hoechst and Behring (collectively referred to as "The Aventis Group") and covered by Medicare Part B include, but may not be limited to: Anzemet® (dolasteron mesylate), Bioclate® (antihemo factor viii), Gammar® (immune globulin), Helixate® (antihemo factor viii), Humate-P® (antihemo factor viii), Mononine® (antihemo factor ix complex), Monoclate-P® (antihemo factor viii), and Taxotere® (docetaxel).

79.     Aventis is also sued in its capacity as a participant in the Together Card Rx conspiracy.

### 5.      Baxter

80.      Defendant Baxter International Inc. ("Baxter") is a Delaware corporation with its principal place of business at One Baxter Parkway, Deerfield, Illinois. Baxter manufactures and distributes prescription drugs to clinical administrators. Baxter's annual sales from January 1, 2000 through December 31, 2000 were over $6.8 billion.

81.      Defendant Baxter Healthcare Corporation is the principal domestic operating subsidiary of Baxter International. Baxter International and Baxter Healthcare Corporation are collectively referred to as "Baxter."

82.      Baxter is a global medical products company that, *inter alia*, develops, manufactures, markets and/or distributes drugs to treat cancer, trauma, hemophilia, immune deficiencies, infectious diseases, kidney disease and other disorders. Baxter reported a year 2000 sales of $6.9 billion.

83.      The drugs developed, manufactured, marketed, sold and/or distributed by Baxter that are covered by Medicare Part B include, but may not be not limited to:  albumin, Bebulin® (factor ix complex), Buminat® (human albumin), dextrose, dextrose sodium chloride, Gammagard® (immune globulin), Iveegam® (immune globulin), Holoxan® (ifosfanide), Uromitexan® (mesna), Endoxan® (cyclophosphamide), Hemofil M® (antihemo factor viii), Proplex T® (factor ix complex), Recombinate® (antihemo factor viii), cisplatin, sodium chloride, and diazepam.

### 6.      Bayer

84.      Defendant Bayer Corporation ("Bayer") is an Indiana corporation with its principal place of business located at 100 Bayer Road, Pittsburgh, Pennsylvania. Bayer is a wholly owned United States subsidiary of a German corporation, Bayer AG. Bayer's pharmaceutical division is located at 400 Morgan Lane, West Haven, Connecticut.

85.      Bayer is a highly diversified health care company whose principal business includes the development, manufacture, marketing, sale and/or distribution of healthcare

products and services, including pharmaceuticals. Bayer reported sales in the United States of
$10.1 billion in 2001 and $8.9 billion in 1999.

86.     Bayer is in the business of manufacturing and distributing prescription
pharmaceuticals for distribution by Medicare Plan B providers nationwide. The pharmaceutical
drugs manufactured by Bayer and covered by Medicare Part B include, but may not be limited
to: Kogenate® (antihemo factor viii), FS/Kogenate® (antihemo factor viii), and Koate-DVI®
(antihemo factor viii) and Gamimune® (immune globulin), all used to treat hemophilia, and
Gamimune® which is used in the treatment of immunodeficiency and autoimmune disorders.

### 7.     The Boehringer Group (Boehringer, Ben Venue, Bedford)

87.     Defendant Boehringer Ingelheim Corp. ("Boehringer") is a Nevada corporation
with its principal place of business located at 900 Ridgefield Road, Ridgefield, Connecticut.
Boehringer is a United States subsidiary of Pharma Investment Ltd., of Burlington, Canada,
which in turn is a division of C.H. Boehringer Sohn Gurdstucksverwaltung GmbH & Co. KG of
Ingelheim, Germany. Boehringer designs, manufactures and markets pharmaceuticals.
Boehringer is in the business of manufacturing and distributing prescription pharmaceuticals for
distribution by Medicare Plan B providers nationwide.

88.     Defendant Ben Venue Laboratories Inc. ("Ben Venue") is a Delaware corporation
with its principal place of business located at 300 Northfield Road, Bedford, Ohio. Ben Venue is
a wholly owned subsidiary of Defendant Boehringer. Ben Venue is in the business of
manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B
providers nationwide.

89.     Defendant Bedford Laboratories ("Bedford") is a division of Ben Venue with its
principal place of business located at 300 Northfield Road, Bedford, Ohio. Bedford
manufactures and markets injectable pharmaceuticals. Bedford is in the business of
manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B

providers nationwide. (Boehringer, Ben Venue, and Bedford are collectively referred to herein as the "Boehringer Group.")

90.     The pharmaceuticals manufactured by the Boehringer Group and covered by Medicare Part B include, but may not be limited to injectable forms of: acyclovir, bleomycin, cisplatin, cyclosporine, cytarabine, doxorubicin hydrochloride, doxorubicin hydrochloride, doxycycline, etoposide, leucovorin calcium, leucovorin calcium, methotrexate, mitomycin, paclitaxel, pamidronate disodium, and vinblastine sulfate.

    **8.**    **Braun**

91.     Defendant B. Braun Medical, Inc. is a Pennsylvania corporation with its principal place of business located at 824 Twelfth Avenue, Bethlehem, Pennsylvania. B. Braun Medical, Inc. is a wholly-owned subsidiary of B. Braun America, Inc.

92.     In 1997, B. Braun of America acquired McGaw, Inc. ("McGaw"), a Delaware corporation with a principal place of business in Irvine, California. Until its acquisition by B. Braun of America, McGaw was in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Part B providers nationwide. Upon information and belief, McGaw ceased to maintain a separate corporate entity upon the acquisition of McGaw by B. Braun of America, Inc. Further upon information and belief, after the McGaw acquisition, B. Braun Medical, Inc. became the Braun entity engaged in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Part B providers nationwide. (McGaw and B. Braun Medical are collectively referred to herein as "Braun"). Braun designs, manufactures, and markets medical devices and certain intravenous solutions. Braun is in the business of manufacturing and distributing prescription pharmaceuticals for distribution by Medicare Plan B providers nationwide.

93.     The pharmaceuticals manufactured by Braun and covered by Medicare Part B include, but may not be limited to intravenous solutions of dextrose, dextrose, sodium chloride, and sodium chloride.

### 9.     The BMS Group (Oncology Therapeutics; Apothecon)

94.     Defendant Bristol-Myers Squibb Co. ("Bristol-Myers") is a Delaware corporation with its principal place of business located at 345 Park Avenue, New York, New York. Bristol-Myers is a multi-national health care company specializing in the manufacturing, marketing and sale of pharmaceuticals and medical devices. For the year 2000, Bristol-Meyers reported revenues of approximately $20 billion and net earnings of $4.7 billion.

95.     Defendant Oncology Therapeutics Network Corp. ("OTN") is a Delaware corporation with its principal place of business located at 395 Oyster Point Boulevard, Suite 405, South San Francisco, California. OTN has been a wholly-owned subsidiary of Bristol-Myers since its acquisition in 1996. Prior to 1996, OTN was an independent company. In 2001, OTN reported revenues of over $1.4 billion.

96.     OTN is a healthcare services and distribution firm that directly sells Bristol-Myers' infusion oncology drugs and related products to approximately 2,300 office-based oncology practices in the United States. At the time of its acquisition by Bristol-Myers, OTN was the leading distributor of chemotherapeutic drugs and related products for the treatment of cancer. Bristol-Myers paid OTN a commission for marketing and selling its drugs. Both prior to and after Bristol-Myers acquired OTN, Bristol-Myers marketed and sold its drugs directly to medical providers across the country, and thus Bristol-Myers and OTN employed and maintained extensive marketing and sales departments.

97.     Defendant Apothecon, Inc. ("Apothecon") is a Delaware corporation with its principal place of business located in Princeton, New Jersey. It is a subsidiary of Bristol-Myers specializing in small to mid-size niche brand and generic products.

98.     Bristol-Myers, OTN and Apothecon are collectively referred to herein as the "BMS Group."

99.     The BMS Group manufactures and distributes prescription drugs that are clinically distributed by Medicare Plan B providers nationwide.  The drugs manufactured by the BMS Group and covered by Medicare Part B include, but may not be not limited to: Blenoxane® (bleomycin sulfate), Paraplatin® (carboplatin), Cytoxan® (cyclophospamide), Rubex® (doxorubicin hydrochloride), Etopophos® (etoposide), Vepesid® (etoposide), TaxolV (paclitaxel), and Fungizone® (amphotericin B).

100.    Bristol-Myers is also sued herein in its capacity as a participant in the Together Rx conspiracy.

101.    The BMS Group engages in an organization-wide and deliberate scheme to inflate AWPs.  The BMS Group has stated fraudulent AWPs for all or almost all of its drugs including Amikacin Sulfate, Amphotercin B, Bleomycin Sulfate, Cyclophospamide, Vespid (Etoposide), Carboplatin (Paraplatin), Taxol (paclitaxel), and Blenoxane.   The specific drugs of the BMS Group for which relief is sought in this case are set forth in Appendix A.

**10.     Dey, Inc.**

102.    Defendant Dey, Inc. ("Dey") is a Delaware corporation with its principal place of business at 2751 Napa Valley Corporate Drive, Napa, California.  Dey is a unit of Merck KGaA, a German pharmaceutical conglomerate.

103.    Dey is a specialty pharmaceutical company that primarily develops, manufactures and markets generic drugs used in the treatment of selected respiratory diseases and allergies. Dey, one of the largest U.S. manufacturers of such pharmaceuticals, had net sales of $266 million in 1998.