UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF IMS DATA AND REPORTS**

**I.      INTRODUCTION**

Plaintiffs move for an order compelling all Track I defendants ("the defendants") to produce IMS Health Incorporated ("IMS" or "IMS Health") data and reports in response to requests for production that were served on them in August 2005.  The material requested is not controversial or unusual; rather, it is factual material that is part of the nuts and bolts of plaintiffs' damages assessments.  Receipt of it will greatly aid the plaintiffs and their consultants as they prepare their factual evidence and expert analyses for trial.

With regard to the August 2005 request for production, defendants have raised, and are standing on, objections as to timeliness.  Notwithstanding these objections, in reality all of the material sought in the August 2005 requests was first requested years ago.  The August 2005 requests for production are merely more specific refinements of requests for production served on the defendants in June 2003, December 2003, and March 2004.  Furthermore, some of the material requested in the August 2005 requests for production was specifically requested in July 2005.  To the extent necessary to secure production in response to their August 2005 requests for production, plaintiffs move to compel on these prior requests as well.  The result should be that

- 1 -

1534.16 0227 MTN.DOC

the Court orders defendants to produce the material specifically requested in plaintiffs' most recent requests for production.

## II.     STATEMENT OF FACTS

Plaintiffs' motion to compel concerns IMS data and reports. According to IMS itself:

> IMS is the one global source for pharmaceutical market intelligence, providing critical information, analysis and services that drive decisions and shape strategies.
>
> Just about every major pharmaceutical and biotech company in the world is a customer of IMS. Our unique mix of experience and expertise makes us the right choice for help in optimizing portfolios . . . ensuring successful launches . . . managing brands . . . and improving the effectiveness of sales teams.
>
> * * *
>
> Our business begins with the data we gather on an unmatched scale. It's the raw material we collect from 29,000 data suppliers at 225,000 supplier sites worldwide. We monitor 75 percent of prescription drug sales in over 100 countries, and 90 percent of U.S. sales. We track 1 million+ products from more than 3,000 active drug manufacturers. We conduct medical audits in over 45 countries. We process 1 billion transactions a month. And the 60+ terabytes of information in our databases are accessible to customers around the clock.

(Declaration of Robert F. Lopez in Support of Motion to Compel ("Lopez Decl.") Ex. A (excerpt from IMS Health web site) (ellipses in original).)

**A.     July and August 2005 Requests for Production**

In July 2005 plaintiffs served the defendants with requests for production asking for IMS data and reports. Specifically, the requests stated:

With respect to the drugs on Exhibit A, the following IMS reports or data for each such drug:

> (a)     National Prescription Audit (NPA, or NPA Plus):
> - Timeframe: Monthly
> - Data elements: TRX, Extended Units TRX, NRX, Dollars
> - By Form (*e.g.*, tablets, capsules, injectable, etc.)
> - By Strength (*e.g.*, 15 mg, 30 mg, etc.)

- 2 -

(b) National Sales Perspective (previously the Retail and Provider Perspective):
- Timeframe: Monthly
- Data elements: Units, Extended Units, Dollars
- By NDC or its equivalent
- By Form
- By Strength

(c) Method of Payment Data (from the "MSA" product and/or the NPA NRX data):
- Any reports or data

(d) Generic Spectra
- Any reports or data

(Lopez Decl. Ex. B at p. 6.)

Exhibit A, the drug list attached to the July 2004 requests for production, read as follows:

## Exhibit A
## TRACK I Manufacturers by Drug

| DRUG | Manufacturer (Track I) |
|---|---|
| Aciphex | J&J |
| Albuterol | Schering-Plough/Warrick |
| Atacand | Astrazeneca |
| Augmentin | GSK |
| Avapro | BMS |
| Beclovent | GSK |
| Beconase | GSK |
| BuSpar | BMS |
| Capoten | BMS |
| Celexa | Astrazeneca |
| Clarinex | Schering-Plough |
| Claritin | Schering-Plough |
| Clotrimazole | Schering-Plough/Warrick |
| Flonase | GSK |
| Flovent | GSK |
| Griseofulvin, Ultramicrocrystalline | Schering-Plough/Warrick |
| Ismn | Schering-Plough/Warrick |
| Nasonex | Schering-Plough |
| Nexium | Astrazeneca |
| Oxaprozin | Schering-Plough/Warrick |
| Paxil | GSK |
| Perphenazine | Schering-Plough/Warrick |
| Potassium Chloride | Schering-Plough/Warrick |
| Pravachol | BMS |
| Prilosec | Astrazeneca |
| Pulmicort | Astrazeneca |

- 3 -

| | |
|---|---|
| Relafen | GSK |
| Rhinocort | Astrazeneca |
| Risperdal | J&J |
| Seroquel | Astrazeneca |
| Sodium Chloride | Schering-Plough/Warrick |
| Sulcralfate | Schering-Plough/Warrick |
| Taxol | BMS |
| Theophylline | Schering-Plough/Warrick |
| Vancenase | Schering-Plough |
| Zestril | Astrazeneca |
| Zofran | GSK |
| Zoladex | Astrazeneca |

(*Id.*)

Then on August 30, 2005, following issuance of the Court's August 16, 2005 order on class certification, plaintiffs propounded amended and/or supplemental requests to the defendants for IMS data. Part of these requests, for so-called "NSP" data, is a reiteration of the request for NSP data made in the July 2003 requests. The drug lists were somewhat different, however, and the August 2005 requests made an additional request for "by channel" NSP data. The August 2005 requests also sought so-called "NDTI" data.

The August 2005 requests read:

> With respect to the drugs on Exhibit A, the following IMS reports or data for each such drug that you manufactured:
>
> (a)    IMS National Disease and Therapeutic Index (NDTI) Data
>
> For each drug that is physician administered and/or covered by Medicare Part B, please provide NDTI data including the following:
>
> - Timeframe: Monthly, from 1991 to the present
> - Method of payment
> - In terms of TRXs and/or dollars if possible, or in terms of office visits (or "drug uses" or "appearances") if not
> - By manufacturer
> - By form (e.g., injectable, tablets, etc.)
> - By strength (e.g. 15 mg, 30 mg, etc.)
>
> (b)    IMS National Sales Perspective (NSP) (previously the Retail and Provider Perspective)

- 4 -

For each drug that is physician administered and/or covered by Medicare Part B, please provide NSP (or RPP) data including the following:

- Timeframe: Monthly, from 1991 to the present
- Data elements: Units, Extended Units, Dollars
- By channel (e.g. clinic, non-federal hospital, chain, etc.)
- By NDC or its equivalent
- By form
- By strength

(Lopez Decl. Ex. C at p. 6.)

The drug list attached to this amended/supplemental request for production read:

## EXHIBIT A

**Track 1 Summary of Classification of Drugs by Physician Administered and Part B (8/29/05)**

| *Manufacturer* | *Drug Name* |
|---|---|
| **Astra Zeneca** | Diprivan |
| | Pulmicort |
| | Zoladex |
| | |
| **BMS** | Amikin |
| | Amphotericin B |
| | Blenoxane |
| | Coumadin |
| | Cytoxan |
| | Etopophos |
| | Fungizone |
| | Paraplatin |
| | Rubex |
| | Taxol |
| | Tequin IV |
| | Vepesid |
| | |
| **GSK** | Imitrex |
| | Kytril |
| | Navelbine |
| | Zofran |
| | Alkeran |
| | Zovirax |
| | Retrovir |

- 5 -

|  |  |
|---|---|
|  | Ventolin |
|  | Zantac |
|  | Myleran |
| **J&J** | Floxin (Injection only) |
|  | Haldol (Injection only) |
|  | Levaquin (IV only) |
|  | Procrit |
|  | Remicade |
| **Schering Plough and Warrick** | Albuterol |
|  | Integrilin |
|  | Intron-A |
|  | Proventil |
|  | Temodar |

(*Id.*)

The very next day, August 31, 2005, realizing that two drugs had been inadvertently left off of the August 30, 2005 drug list, plaintiffs propounded their second amended/supplemental IMS discovery requests.  (Lopez Decl. Ex. D.)  The only change from the set propounded on August 30, 2005 was the addition of the drug Lanoxin to the GSK drug list and the addition of Risperdal to the J&J drug list.   (*Id.*)

**B.     Previous Requests for Production**

Plaintiffs' July and August 2005 requests for production were not the first requests for production that called for the IMS materials at issue.  Rather, plaintiffs first propounded discovery requests broad enough to elicit production of the materials in mid-2003.

First, on June 17, 2003, plaintiffs propounded their First Request for Production of Documents to All Defendants. (Lopez Decl. Ex. E.)  These included:

> RFP No. 27, which sought: All data maintained in electronic form relating to the pricing, cost data and sales data, including the AWP, of each AWPID in the United States for the Relevant Time Period [defined in relevant part as: "January 1, 1991 to the date of production . . . ."].  Produce such data in electronic form[;] Plaintiff also requests that you produce all documents or instructions necessary to access, process, read and use the electronic data.

>RFP No. 28, which sought: All data maintained in electronic form relating to customer invoices for each AWPID, including, but not limited to, customer names and addresses, purchase volume, prices, and discounts for the Relevant Time Period.  Produce such data in electronic form and include all documents and/or instructions necessary to access, process, read and use the electronic data.
>
>RFP No. 33, which sought: All marketing and sales materials which compare the AWP, price, market share, rebates, pricing discounts, incentives, or penalties for each AWPID with the AWP of any other pharmaceutical during the Relevant Time Period.

(*Id*.)

Next, on December 3, 2003, plaintiffs propounded their Request for Production of Documents to Aventis, Abbott, Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough and Interrogatories to *All* Defendants Subject to Discovery. (Lopez Decl. Ex. F (emphasis in original).)  Of this set of discovery requests, requests for production numbers 33, 34, and 38 were substantively identical to requests for production numbers 27, 28, and 33, respectively, of the June 2003 requests for production.  (*Cf. id.* to Lopez Decl. Ex. E.)

Finally, on March 31, 2004, plaintiffs propounded their Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to all other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery.  (Lopez Decl. Ex. G.)  The relevant time period was the same as set forth in the June and December 2003 requests for production.  (*Id.* at p. 9.)  This set of requests asked specifically for "[a]ll documents concerning communications between you and IMS Health (or any similar entity providing pharmaceutical database information) concerning or relating to any of your AWPIDs."  (*Id.* at p. 14, No. 30.)

1534.16 0227 MTN.DOC

## C.     The Discovery Dispute and Plaintiffs' Substantial, Yet Unsuccessful, Efforts To Resolve It Voluntarily

Rather than making any sort of substantive production in response to the July or August 2005 requests for production, defendants served objections to each set of requests in August and September 2005, respectively. Plaintiffs' counsel first made contact with defendants' various counsel beginning in August 2005 in order to see about securing production voluntarily. (Lopez Decl., ¶ 2.)

In the many telephone conferences, letters, and e-mail conversations that would follow, defendants, or some of them, raised the following objections with varying degrees of strenuousness: plaintiffs had already propounded all of the requests for production they were permitted to serve; plaintiffs should have served subpoenas on IMS for the requested materials rather than requesting the materials from the defendants; to produce the requested information would require defendants to violate confidentiality and other agreements with IMS; defendants did not possess or control, and may never have possessed or controlled, some of the requested materials; the time-scope was too long; there were too many drugs on the drug lists; some drugs on the drug lists were out of the case; defendants failed to see the relevance of the material requested; and the August 2005 requests were untimely in that they were propounded such that the response date did not fall on or before the discovery cutoff of August 31, 2005, among other objections. (Lopez Decl., ¶ 3.) Plaintiffs' counsel addressed each of these objections as they were raised. (*Id.*)

Ultimately, after weeks of negotiation or other effort, with some defendants taking much longer to agree than others, all defendants agreed to produce certain materials in response to

- 8 -

plaintiffs' July 2005 requests for production.[1]  (Lopez Decl., ¶ 4.)  Unfortunately, defendants have opted to stand on their objections to the August 2005 requests for production in spite of plaintiffs' best efforts to reach voluntary agreement with them.  (Lopez Decl., ¶ 5.)

As to the August 2005 requests, plaintiffs made every effort to accommodate defendants' requests and concerns.  Some defendants, for example, had urged a shorter drug list, and where plaintiffs, after careful deliberation, could reasonably accede, plaintiffs offered to remove certain drugs from the list for certain manufacturers.  (*Id.*)  But that was not enough to persuade defendants to produce the requested materials.  (*Id.*)  Indeed, it was not enough even when plaintiffs offered recently as a further gesture of good faith to stand down on their July 2005 discovery requests in exchange for the defendants' agreements to comply with the August 2005 requests.  (*Id.*)  Defendants began advising as of October 14, 2005, some six weeks after service of the August 2005 requests, that they all had decided to reject plaintiffs' offer and to stand on their objections to those August 2005 requests for good.  (*Id.*)  Their decision to refuse to produce in response to the August 2005 requests for production, which, upon information and belief, was taken jointly, necessitated this motion.  (*Id.*)

### III.   LAW & ARGUMENT

Notwithstanding defendants' other stated objections, which can be addressed to defendants' satisfaction as illustrated by the defendants' ultimate agreement to produce material in response to plaintiffs' July 2005 requests for production, defendants are refusing to comply with plaintiffs' August 2005 requests based on defendants' contention that these requests are

---

[1] Plaintiffs are not presently moving to compel with regard to their July 2005 requests for production.  This decision is based upon defendants' representations that they will produce data and reports in response to those requests pursuant to their agreements with the plaintiffs.  One defendant, J&J (meaning the J&J group), has yet to be specific in what exactly it has agreed to produce.  Plaintiffs reserve the right to move to compel production in response to their July 2005 requests for production if and as circumstances dictate.

- 9 -

1534.16 0227 MTN.DOC

untimely.  Specifically, defendants are of the opinion that plaintiffs should have propounded these requests such that responses and objections would be due under the civil rules on or before the discovery cutoff of August 31, 2005.  Defendants' refusal on this basis to produce materials that are plainly discoverable under Fed. R. Civ. P. 26 is not justified either technically or otherwise.

This Court's Case Management Order No. 13, on which defendants rely, provides: "August 31, 2005—Close of Fact Discovery."  (Lopez Decl. Ex. H.)  It does *not* provide what the defendants wish to read into it: that discovery must be propounded with a return date no later than August 31, 2005.  An example of an order which does address the return date is cited in *In re Selected Somerworth Bank Cases*, 148 F.R.D. 1 (D. Me. 1993).  There, the order specifically provided: "Counsel are hereby advised that absent some excusable circumstance, discovery initiatives must be initiated sufficiently in advance of the discovery deadline to permit the opposing party to file in advance of the discovery deadline its appropriate response within the period allowed by the Civil Rules for such purpose." *Id.* at 2.  Given that such language is absent from this Court's CMO No. 13, plaintiffs reasonably complied with that order by propounding their discovery at the end of August 2005.  Their discovery requests should be enforced. *See Sheppard v. River Valley Fitness One, L.P.*, 203 F.R.D. 56, 60 (D.N.H. 2001) (granting plaintiffs' motion to compel production of documents that were sought in document requests issued before the discovery cutoff but with a return date falling after the discovery cutoff).

Furthermore, as this Court has recognized, a district court enjoys a broad measure of discretion in managing pretrial affairs, including discovery.  *Digital Equipment Corp. v. Currie Enterprises*, 1992 U.S. Dist. LEXIS 17718, *1-*2 (D. Mass. 1992) (Bowler, U.S.M.J.) (citations omitted); *see also, e.g.*, *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38,

- 10 -

1534.16 0227 MTN.DOC

41 (1st Cir. 2003) ("District courts exercise broad discretion to manage discovery matters."). If the Court does not agree with plaintiffs' interpretation of its discovery order, then plaintiffs respectfully urge that this is an instance where the Court should exercise its discretion to permit discovery notwithstanding.

As defendants have recently written in a brief to this Court, "[t]he scope of permissible pre-trial discovery is 'very broad.'" (Memorandum of Law in Support of Defendants' Motion To Compel Third Party United Healthcare To Produce Documents and Witnesses for Deposition Pursuant to Subpoena at p. 4 (citations omitted).) """Relevance is to be broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action."""  (*Id.* (First Circuit and D. Mass. citations omitted).)  Here, the material requested by way of plaintiffs' August 2005 (and July 2005) discovery requests is not extraordinary in any way. Rather, the material is simply the stuff of damages analyses and factual evidence in a pharmaceuticals case.

To use defendants' phraseology, the material requested "focuses on the central issues in this litigation." (*Id.*)  Defendants have recognized this in agreeing to make production in response to plaintiffs' July 2005 requests.

What is more, it is plaintiffs' understanding that some if not all defendants can make *ad hoc* calls upon the IMS databases to which they variously subscribe, such that they can procure the requested data without having to make the normal searches of whatever responsive materials they may otherwise possess or control. (Lopez Decl., ¶ 6.)  In other words, subscribing defendants can call up the material with simple directives to IMS, which has shown its willingness to cooperate if only defendants will give the word.  (*Id.*)  This should diminish even

- 11 -

the normally acceptable burden significantly, which is yet one more reason why defendants' objections to production should be overruled.  Simply put, defendants can show no extraordinary burden occasioned by having to respond to plaintiffs' very ordinary discovery requests.

Nor can defendants show that any sort of prejudice has accrued to them by way of the timing of plaintiffs' requests.  None can claim that plaintiffs' service of their requests in August 2005 has caused them any sort of harm, *especially given that all of the material recently requested also is responsive to requests for production made in 2003 and 2004*.

Defendants should be ordered to produce the material requested immediately, so as not to delay further the plaintiffs' preparation for trial, including preparation of their expert reports.  Defendants' objections should be rejected as the tactical maneuver to withhold evidence that they are.

## IV.  CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully ask that their motion to compel be granted.  Whether based on earlier requests encompassing the IMS materials requested more recently, or whether on the basis of the requests made more recently themselves, the Court should order the defendants to produce all materials responsive to plaintiffs' August 2005 requests for production as promptly as possible.

DATED:  October 21, 2005                    By    /s/ Steve W. Berman
                                                          Thomas M. Sobol (BBO#471770)
                                                          Edward Notargiacomo (BBO#567636)
                                          Hagens Berman Sobol Shapiro LLP
                                          One Main Street, 4th Floor
                                          Cambridge, MA  02142
                                          Telephone: (617) 482-3700
                                          Facsimile: (617) 482-3003
                                          **LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

- 14 -

Samuel D. Heins  
Alan I. Gilbert  
Susan E. MacMenamin  
Heins, Mills & Olson, P.C.  
3550 IDS Center  
80 South Eighth Street  
Minneapolis, MN  55402  
Telephone: (612) 338-4605  
Facsimile: (612) 338-4692  
**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 15 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF IMS DATA AND REPORTS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on October 21, 2005, a copy to LexisNexis File & Serve for Posting and notification to all parties

                                    By  **/s/ Steve W. Berman**
                                          Steve W. Berman
                                          **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                          1301 Fifth Avenue, Suite 2900
                                          Seattle, WA  98101
                                          (206) 623-7292