UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>CIVIL ACTION: 01-CV-12257-PBS<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

**DECLARATION OF ROBERT F. LOPEZ IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF IMS DATA AND REPORTS**

Robert F. Lopez duly declares as follows:

1. I am one of the attorneys representing the plaintiffs in this matter.

2. Steve Berman, one of the lead trial attorneys in this case, began consulting, or attempting to consult with, all Phase I defendants' lawyers in August 2005 in an attempt to secure voluntary production of the materials requested in plaintiffs' July 2005 IMS discovery requests. Later that month he asked me to work with defendants' counsel towards the same end. Beginning in late August 2005 and continuing through to the week of October 17, 2005, I made numerous contacts with counsel for all Phase I defendants not only with regard to plaintiffs' July 2005 IMS discovery requests but also with regard to plaintiffs' August 2005 IMS discovery requests, after those were served.

3. During my numerous telephone conferences with the Phase I defendants' counsel, and by way of e-mail exchanges and correspondence, defendants, or some of them, raised the following objections, or some of them, with varying degrees of strenuousness, in regard either to plaintiffs' July 2005 requests for production, to plaintiffs' August 2005 requests for production,

- 1 -

1534.16 0226 MTN.DOC

or to both: plaintiffs had already propounded all of the requests for production they were permitted to serve; plaintiffs should have served subpoenas on IMS for the requested materials rather than requesting the materials from the defendants; to produce the requested information would require defendants to violate confidentiality and other agreements with IMS; defendants did not possess or control, and may never have possessed or controlled, some of the requested materials; the time-scope was too long; there were too many drugs on the drug lists; some drugs on the drug lists were out of the case; defendants failed to see the relevance of the material requested; and the August 2005 requests were untimely in that they were propounded such that the response date did not fall on or before the discovery cutoff of August 31, 2005, among other objections.  I, and in an instance with counsel for J&J, co-counsel for plaintiffs, did our best to answer each and every objection and question raised by each defendants' counsel.  On some occasions this required me to confer with others among plaintiffs' attorneys and with plaintiffs' expert consultants.  I took great care to answer each and every objection and question raised by opposing counsel substantively and thoughtfully, up to the point where I would be divulging case and trial strategy if I went further.

4.     Ultimately, all defendants agreed after negotiation to produce certain materials in response to plaintiffs' July 2005 requests for production.  With some plaintiffs it took much longer to secure a commitment to produce than with others.  For example, J&J only committed to produce documents on October 19, 2005, some three months after the July 2005 requests for production were propounded to it.  Even now J&J has not been specific about what it intends to produce in response to the July 2005 requests. (On September 30, 2005 and again on October 3, 2005, counsel for J&J e-mailed counsel for plaintiffs and indicated a desire to hold off until October 17, 2005, the day when plaintiffs' third amended master consolidated complaint was

1534.16 0226 MTN.DOC

due, to take further action on plaintiffs' requests for production.  This was ostensibly because J&J would then know what drugs were in the case—even though plaintiffs' counsel had previously explained that plaintiffs had legitimate analytical and evidentiary uses for the material requested even if a given drug on the drug list was ultimately one as to which the plaintiffs would not pursue damages at trial.  Counsel for J&J had expressed this desire for delay in at least one previous telephone discussion with counsel for plaintiffs.)

5. Unfortunately, defendants have opted to stand on their objections to the August 2005 requests for production in spite of plaintiffs' best efforts to reach voluntary agreement with them.  As to the August 2005 requests, plaintiffs made every effort to accommodate defendants' requests and concerns.  Some defendants, for example, had urged a shorter drug list, and where plaintiffs, after careful deliberation, could reasonably accede, plaintiffs offered to remove certain drugs from the list for certain manufacturers.  But that was not enough to persuade defendants to produce the requested materials.  Indeed, it was not enough even when plaintiffs offered at the end of the week of October 10, 2005 as a further gesture of good faith to stand down on their July 2005 discovery requests in exchange for the defendants' agreements to comply with the August 2005 requests.  Defendants began advising as of October 17, 2005 that they all had decided to reject plaintiffs' offer and to stand on their objections to those August 2005 requests for good.  Their decision to refuse to produce in response to the August 2005 requests for production, which, upon information and belief (two of defendants' counsel told me by phone that all defendants had opted to stand on their objections to the August 2005 requests), was taken jointly, necessitated plaintiffs' motion to compel.

6. Based on my discussions with defendants' counsel and other research, it is my understanding that subscribers to IMS data services can make *ad hoc*, or special, calls on IMS

- 3 -

databases and services to which they subscribe for data and reports within their subscriptions. This means that subscribing defendants can procure some or all of the requested data without having to make the normal searches of whatever responsive materials they may otherwise possess or control.  In other words, subscribing defendants can call up IMS material with simple directives to IMS, which has shown its willingness to cooperate if only defendants will give the word.  (As to IMS's confidentiality concerns, IMS has agreed that plaintiffs can address those via pledges from plaintiffs to abide by parameters expressed by way of letter or agreement.) This is illustrated by BMS's agreement to produce material in response to the July 2005 request for production.  BMS, as we understand it, prepared a directive to IMS to call up the material which BMS agreed to produce.  In fact, as plaintiffs' counsel further understands it, under normal circumstances a BMS employee can call up IMS data to which BMS subscribes via remote access from a BMS computer.  All of this should diminish even the normally acceptable burden significantly, which is yet one more reason why defendants' objections to production should be overruled.  Simply put, defendants can show no extraordinary burden occasioned by having to respond to plaintiffs' very ordinary discovery requests.

7. Attached as Exhibit A are true and correct copies of pages pulled from IMS Health's web site.

8. Attached as Exhibit B is a true and correct copy of plaintiffs' July 2005 requests for production of IMS data and reports.

9. Attached as Exhibit C is a true and correct copy of plaintiffs' August 30, 2005 requests for production of IMS data and reports.

10. Attached as Exhibit D is a true and correct copy of plaintiffs' August 31, 2005 requests for production of IMS data and reports.

1534.16 0226 MTN.DOC

11. Attached as Exhibit E is a true and correct copy of plaintiffs' June 17, 2003 requests for production to all defendants on to all defendants.

12. Attached as Exhibit F is a true and correct copy of plaintiffs' Request for Production of Documents to Aventis, Abbott, Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough and Interrogatories to *All* Defendants Subject to Discovery.

13. Attached as Exhibit G is a true and correct copy of plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to all other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of October, 2005.

                                                    **/s/ Robert F. Lopez**
                                                    ROBERT F. LOPEZ

## CERTIFICATE OF SERVICE

      I hereby certify that I, Robert F. Lopez, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF ROBERT F. LOPEZ IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF IMS DATA AND REPORTS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on October 21, 2005, a copy to LexisNexis File & Serve for posting and notification to all parties.

      By      **/s/ Robert F. Lopez**

      Robert F. Lopez
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292