# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY | ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | Master File No. 01-CV-12257-PBS |
| _____ | ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | Chief Mag. Judge Marianne B. Bowler |
| ALL ACTIONS | ) | |
| | ) | |
| _____ | ) | |

## UNITEDHEALTHCARE, INC. AND UNITED HEALTHCARE INSURANCE COMPANY'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Julie B. Brennan (BBO # 564101)
MANCHEL & BRENNAN, P.C.
199 Wells Avenue, Suite 301
Newton, Massachusetts 02459
Tel:  (617) 796-8920
Fax: (617) 796-8921

Thomas F. Fitzgerald
Michael J. Prame
Lars C. Golumbic
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC  20006-5893
Tel:  (202) 857-0620
Fax:  (202) 659-4503

**Attorneys for UnitedHealthcare, Inc. and United HealthCare Insurance Company**

# TABLE OF CONTENTS

BACKGROUND...................................................................................................................2

    A. United's Prior Production in Response to the Subpoenas ....................................2

    B. Discovery Defendants Failed to Pursue ...............................................................5

    C. Defendants' Escalated Demands in May 2005 .....................................................6

ARGUMENT .......................................................................................................................9

    A. Legal Standard .....................................................................................................9

    B. Defendants' Demands for the Production of Fee Schedules, Medical
       Claims Data and Depositions Are Unduly Burdensome and
       Unreasonably Cumulative ....................................................................................9

         1. Fee Schedules ...........................................................................................10

         2. Medical Claims Data for One East Coast and One West Coast
           Market ......................................................................................................10

         3. Depositions ...............................................................................................12

    C. Defendants' Document Requests Are Overbroad and/or Unreasonably
       Cumulative ..........................................................................................................13

    D. Defendants Have Unduly Delayed Seeking Discovery from United................15

REQUEST FOR ORAL ARGUMENT ..............................................................................17

CONCLUSION ..................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alper v. U.S.,* 190 F.R.D. 281 (D. Mass. 2000) ...................................................15

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 244 F.3d 189 (1st Cir.
    2001) ..............................................................................................................13, 14

*Anderson v. Bungee Int'l Mfg. Corp.,* No. 96 Civ. 0186, 1999 WL 219904
    (S.D.N.Y. Apr. 14, 1999)...............................................................................15

*Cusumano v. Microsoft Corp.,* 162 F.3d 708 (1st Cir. 1998) ...............................9

*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38 (1st Cir.
    2003) .............................................................................................................12

*In re Health Mgmt., Inc.,* No. CV 96-0889 (ADS), 1999 WL 33594132 (E.D.N.Y.
    Sept. 25, 1999) ..............................................................................................16

*In re Pharmaceutical Indus. Average Wholesale Price Litig.,* 230 F.R.D. 61 (D.
    Mass. Aug. 16, 2005)......................................................................................14

*Modern Cont'l/Obayashi v. Occupational Safety and Health Review Comm'n,*
    196 F.3d 274 (1st Cir. 1999)..........................................................................16

*Walker v. TAP Pharmaceutical Products Inc., et al.,* Superior Court of New Jersey,
    Law Division (Cape May County), Docket No. CPM-L-682-01 .........................3, 5

**Other Authorities**

Rule 26(b)(1), Fed.R.Civ.P ....................................................................................9

Rule 26(b)(2), Fed.R.Civ.P ....................................................................................9

Rule 45, Fed.R.Civ.P..................................................................................2, 9, 15

UnitedHealthcare, Inc. and United HealthCare Insurance Company[1] (collectively "United") respectfully submit this memorandum of law in opposition to Defendants' Motion to Compel Third Party United Healthcare to Produce Documents and Witnesses for Deposition Pursuant to Subpoena (the "Motion to Compel"). Defendants' Motion to Compel should be denied for three reasons.

First, Defendants' May 27, 2005 demands for the production of fee schedules, claims data and depositions are unduly burdensome and unreasonably cumulative. Pursuant to an agreement United and Defendants reached in August 2004 regarding the documents that United would produce in response to Defendants' subpoenas, United expended substantial resources (approximately 250 staff hours over a four month period) producing over 25,000 pages of documents. The further discovery of fee schedules, claims data and depositions would take thousands of additional hours over a three to six month period to complete. And, much of the discovery now being sought by Defendants is cumulative of discovery that Defendants previously obtained from United and other national insurers.

Second, Defendants' discovery demands are overbroad. Defendants have failed to tailor the discovery to the Massachusetts payor and Medicare Part B classes that the

---

[1] "AARP Health Care Options." was identified as the entity to be served with the third-party subpoena. AARP Health Care Options is not a legal entity. United HealthCare Insurance Company is the manager of the AARP Pharmacy Services program and underwriter and claims administrator of the AARP supplemental group health insurance program. United HealthCare Insurance Company responded to the subpoena on behalf of these programs.

Court certified. Similarly, a number of Defendants' demands do not seek information related to the reimbursement of physician-administered drugs, but rather seek information relating to United's retail pharmacy program for self-administered drugs.

Third, Defendants have failed to timely pursue the discovery from United. Defendants did not seek the discovery from United between November 1, 2004 and May 27, 2005. And, Defendants failed to file their Motion to Compel prior to the August 31, 2005 discovery cut-off.

## BACKGROUND

### A.     United's Prior Production in Response to the Subpoenas

United is not a named plaintiff or defendant in this lawsuit. Nonetheless, United has spent the last two years responding to Defendants' ever-escalating demands for production of documents and deposition testimony in connection with this matter.

Defendants first served subpoenas on United in November 2003. In accordance with Rule 45, Fed.R.Civ.P., United timely served objections to the subpoenas on December 2 and 3, 2003. *See* Declaration of Michael J. Prame ("Prame Decl.") ¶ 3, concurrently filed herewith.

After the Court established an expedited discovery schedule for the "Track 1" Defendants (Case Management Order No. 10 ("CMO 10")), Defendants issued new subpoenas on United on April 5, 2004. Prame Decl. ¶ 4 and Exs. A and B. On April 22, 2004, United timely submitted objections to Defendants' second set of subpoenas on the grounds that, among other things, Defendants' demands were overbroad, unduly burdensome, and oppressive. Prame Decl. ¶ 5 and Exs. C and D.

- 2 -

Immediately after serving these objections, United began conferring with

Defendants' counsel in good faith in an attempt to resolve the objections.  Prame Decl.

¶ 6.  Over the course of the next three months (May – July 2004), United and Defendants

conferred extensively regarding Defendants' subpoenas.  Prame Decl. ¶ 6.[2]  In August

2004, United and Defendants agreed that, in response to Defendants' subpoenas, United

would produce the following documents for the period January 1, 1997 through

December 31, 2003:

1.    **Provider Contracts** - a geographically diverse sample of over 75 contracts between United and physicians, physician groups and hospitals.

2.    **Certificates of Coverage** - UnitedHealthcare, Inc.'s template Certificates of Coverage and prescription drug riders for each of the years.  In addition, in connection with the AARP programs, United HealthCare Insurance Company agreed to produce a random sample of five certificates of coverage from each of the six general categories of health care plans that were in force and provided drug benefits during some or all of the period 1997 through 2003.

3.    **Group Contracts -** a geographically diverse sample of ten group insurance contracts entered into each year (i.e., a total of 70).

4.    **Lupron Production** - the affidavits and documents that UnitedHealthcare of New Jersey, Inc. produced in *Walker v. TAP Pharmaceutical Products Inc., et al.*, Superior Court of New Jersey, Law Division (Cape May County), Docket No. CPM-L-682-01, in response to a subpoena served by TAP Pharmaceutical Products Inc.

5.    **PBM Agreements** -- UnitedHealthcare, Inc. and United HealthCare Insurance Company's pharmacy benefit management agreements

---

[2]    Because of the breadth of Defendants' subpoenas, a number of business units within each United affiliate had to be consulted in connection with the negotiations regarding the scope of the subpoenas.  Prame Decl. ¶ 6.

> with  Diversified Pharmaceutical Services, Inc., Medco Health Solutions, Inc. (f/k/a Merck-Medco Managed Care, L.L.C.) and Express Scripts, Inc.[3]

*See* Prame Decl. ¶ 7 and Exs. E and F.

During August through October 2004, United expended significant internal resources identifying, collecting, and producing the above described documents. The production of the provider contracts was particularly burdensome because Defendants (1) refused to allow United to produce the unsigned computer generated versions of the contracts and, instead, insisted that copies of the actual signed contracts be produced; (2) insisted that the production include examples of contracts with three different types of providers (physicians, physician groups and hospitals); and (3) insisted that the production of provider contracts include examples describing how Medicare/Medicaid providers were reimbursed for physician-administered drugs. Prame Decl. ¶ 8.  The originals of the signed provider contracts are not centrally stored, but rather are maintained at United's local health plans around the country. Prame Decl. ¶ 8. Accordingly, to complete the production,  United employees nationwide were required to set aside their normal business functions to identify provider contracts dating back to

---

[3]     United had proposed in August 2004 to produce the redacted copies of the agreements with DPS, Medco and ESI that were filed with various state departments of insurance or the SEC.  United agreed in October 2004 to produce unredacted copies of the agreements.

1997 (many of which were archived offsite) that satisfied the criteria dictated by

Defendants.[4]  Prame Decl. ¶ 8.

All told, between August and November 2004, United personnel spent more than

250 hours identifying, collecting and producing the above described documents to

Defendants.  Prame Decl. ¶ 10.[5]  In producing over 25,000 pages of materials to

Defendants, United produced all of the documents that Defendants and United had agreed

upon in August 2004.  Prame Decl. ¶ 10.

**B.      Discovery Defendants Failed to Pursue**

In the fall of 2004, United also discussed with Defendants their requests for

(1) medical and pharmacy claims data from January 1, 1997 through December 31, 2003

for the drugs at issue in this case; and (2) deposition testimony on a variety of issues.

Prame Decl. ¶ 11.  As to claims data, United informed Defendants on October 13, 2004

that it would take United personnel approximately 900 hours over a three to six month

---

[4]      In the Motion to Compel, Defendants suggest that the United inappropriately
redacted the names of the providers from the contracts it produced.  Motion to Compel
p. 2.  That is simply not the case.

As discussed above, in addition to the provider contracts, United agreed to
produce to Defendants copies of the materials that United had produced in the *Walker*
case (which involved the drug Lupron).  Included within the materials produced in
*Walker* were copies of documents, including certain provider contracts, that had been
redacted in accordance with the terms of the protective order entered in the *Walker* case.
The redacted documents from the *Walker* production are the only documents that United
produced in this case that are redacted.  Prame Decl. ¶ 9.

[5]      This does not include the time spent by counsel negotiating with Defendants
regarding the scope of the subpoenas or reviewing documents for privilege prior to the
production to Defendants.

period to produce the medical and pharmacy claims data requested.   Prame Decl. ¶ 11

and Ex. 6.  Defendants never responded to United's October 13, 2004 letter regarding the

possible production of claims data.

Similarly, as to Defendants' request for testimonial evidence, United informed

Defendants in August 2004 that, because of the breadth of the topics on which testimony

was sought for the period 1997 through 2003, as many as ten different people may need

to provide testimony.  Prame Decl. ¶ 12 and Ex. H.  On October 19, 2004, Defendants

wrote United regarding the possibility of United providing a declaration in lieu of the

depositions and, on November 1, 2004, the parties exchanged correspondence regarding

the declaration.  Prame Decl. ¶ 13 and Ex. I.  Defendants failed to pursue the depositions

or the declaration after November 1, 2004.  Prame Decl. ¶ 13.

## C.   Defendants' Escalated Demands in May 2005

After completing its production of documents in November 2004, United did not

hear from Defendants for over seven months.  Prame Decl. ¶ 14.  On May 27, 2005,

Defendants' counsel, Ms. Jessica Golden Cortes, wrote to United's counsel requesting

additional documents from United as well as depositions.  Prame Decl. ¶ 14 and Ex. J.

Specifically, in the May 27, 2005 letter, Defendants sought production of the following

for the period 1997 through 2002:

> 1.   **Fee Schedules** - all fee schedules disclosing the amounts to be paid
> to physicians for services rendered (including the administration of
> drugs).
>
> 2.   **Medical Claims Data** - data for medical claims submitted by
> physicians and hospitals in one east coast and one west coast market
> for the drugs at issue in the lawsuit.

- 6 -

3. **Rebate Reports** – reports showing the rebates paid to United by pharmacy benefit managers or pharmaceutical manufacturers.

4. **MAC Lists** - lists of the maximum allowable cost pertaining to retail pharmacy reimbursement for generic drugs.

5. **Other Documents** –

   a. Documents addressing:

      1. whether United understood that healthcare providers earned a margin on the drugs that the providers administered; or

      2. the reimbursement or cost for drugs administered in a hospital compared to drugs administered in a physician's office.

   b. Claims processing manuals corresponding to the medical claims data produced.

   c. Documents produced by United in other litigation, government investigation or inquiry related to AWP.

6. **Depositions** – depositions regarding the documents and data requested by Defendants on May 27, 2005.

*Id.*[6]

Even though Defendants had failed to timely pursue discovery from United between November 2004 and May 27, 2005, United conferred extensively with Defendants after it received the May 27 letter in an attempt to determine whether an agreement could be reached as to any further discovery from United. Prame Decl. ¶ 15. During the course of these discussions, Defendants' counsel, Ms. Cortes, advised on

---

[6] The May 27, 2005 letter also included a request for copies of provider contracts. Defendants withdrew that request on July 7, 2005.   Prame Decl. ¶ 14.

multiple occasions that the discovery period for fact discovery from United was scheduled to close on August 31, 2005. Prame Decl. ¶ 16. *See also* Case Management Order 13.

On July 22, 2005, United informed Defendants that, while United remained willing to continue discussions, it did not appear that an agreement would be reached regarding the scope of the additional document and testimonial discovery sought by Defendants. As such, United advised Defendants that it would not be producing any additional materials and that United stood by its previously asserted objections to the subpoenas. Prame Decl. ¶ 17 and Ex. K.

United did not hear again from Defendants prior to the close of discovery on August 31, 2005. Prame Decl. ¶ 18. It was not until September 13, 2005 that United learned from Defendants' counsel, Mr. Adeel Mangi, that Defendants were preparing a motion to compel against United. Because Mr. Mangi was not involved in United's discussions with Ms. Cortes in June and July, United was required, in satisfying the "meet and confer" requirement for motions, to start over at square one with Mr. Mangi regarding Defendants' May 27, 2005 requests. Prame Decl. ¶ 18. After participating in the meet and confer, United concluded that, despite their good faith efforts, United and Defendants would not be able to reach an agreement regarding additional discovery from United because Defendants' May 27, 2005 requests were unduly burdensome, unreasonably cumulative, overbroad and untimely. Prame Decl. ¶ 18.

## ARGUMENT

### A.    Legal Standard

Discovery sought from third-parties via subpoenas issued under Rule 45,

Fed.R.Civ.P., is subject to the limitations for discovery set forth in Rule 26(b)(1) and (2),

Fed.R.Civ.P. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998).  In this

regard, third-party discovery should not be permitted if it is determined that:

> (a)    the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
>
> (b)    the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
> (c)    the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*See id.* at 714.  Specifically, in connection with third-party discovery,  "concern for the

unwanted burden thrust upon non-parties is a factor entitled to special weight in

evaluating the balance of competing needs."  *Id*. at 717.  *See also* Rule 45(c)(3)(A)(iv) (a

court "shall" quash or modify a subpoena that "subjects a person to undue burden").

### B.    Defendants' Demands for the Production of Fee Schedules, Medical Claims Data and Depositions Are Unduly Burdensome and Unreasonably Cumulative.

As discussed above, over a four month period in the fall of 2004, United personnel

spent more than 250 hours identifying, collecting and producing over 25,000 pages of

materials in response to the discovery demands that Defendants made in April 2004.

Now, Defendants seek United personnel to spend thousands of additional hours responding to the further demands that Defendants made on May 27, 2005. Defendants' May 27, 2005 demands are especially unreasonable given the discovery Defendants have previously obtained from United and other national insurers.

### 1. Fee Schedules

Responding to Defendants' demand for production of United's fee schedules would be unduly burdensome in that it would significantly disrupt United's business operations. United estimates that, between 1997 and 2003, it had approximately 70,000 separate fee schedules in place. The fee schedules reflect not only the amounts to be paid to healthcare providers for drug administration, but also the terms of payment for any service to be provided by the healthcare provider. Accordingly, the fee schedules comprise billions of rows of computer code in United's computer systems. It may not even be possible to produce the fee schedules as United personnel are not able to assure that United's computer systems have sufficient bandwidth to export that amount of computer code. Even if sufficient computer bandwidth exists, United estimates that it would take 20 full time employees 4 months to complete a production of provider fee schedules. Prame Decl. ¶ 19.

### 2. Medical Claims Data for One East Coast and One West Coast Market

Defendants' demand for medical claims data from sample markets for the period 1997 through 2003 is unduly burdensome. On July 12, 2005, United provided Defendants with the following time and cost estimates to produce medical claims data for Arizona and Massachusetts members:

1.    **Medical claims data for the period May 1, 2002 through December 31, 2003** – This medical claims data is stored on United's live computer system. United estimates that it would take approximately 115 staff hours over three to eight weeks, plus an estimated $2,500 in computer resource/data center utilization fees (CPU, short-term disk storage, tape mounts) to identify, extract and produce the claims data for the two markets for the period May 1, 2002 through December 31, 2003.

2.    **Medical claims data for the period August 1998 through April 30, 2002**. Medical claims data for claims adjudicated between August 1, 1998 and April 30, 2002 has been removed from the live computer system and is now archived on tapes. United estimates that it would take approximately 170 staff hours over three to eight weeks, plus an estimated $5,000 in computer resource/data center utilization fees to identify, extract and produce the claims data for the two markets for the period August 1, 1998 through April 30, 2002.

3.    **Medical claims data for the period January 1, 1997 through July 30, 1998**. Medical claims data for claims adjudicated between January 1, 1997 through July 31, 1998 is separately archived and past experiences in trying to identify, extract and produce claims data from these archives is limited. United estimates that it would take approximately 160 staff hours over three to eight weeks, plus an estimated $2,500 in computer resource/data center utilization fees to identify, extract and produce the claims data for the period January 1, 1997 through July 30, 1998.[7]

Prame Decl. ¶ 20 and Ex. L.

As shown, the production of medical claims data would require United personnel to spend approximately 450 hours over the course of three to six months. United submits that even requiring it to spend three to eight weeks producing medical claims data for one of the three periods outlined above would be unduly burdensome given (1) the hundreds

---

[7]    These estimates apply to the production of medical claims data by UnitedHealthCare, Inc. Defendants have not pursued the production of claims data from United HealthCare Insurance Company in connection with the AARP programs.

of hours United already has expended responding to the subpoenas, (2) Defendants have

obtained claims data from other insurers nationwide, and (3) Defendants completely

failed to establish in its discussions with United or in its Motion to Compel why such

claims data is important to the class certification issues or the merits of claims in the

lawsuit.

### 3.    Depositions

Defendants' demand for deposition testimony also is unduly burdensome and

unreasonably cumulative. Defendants presently are seeking testimony on 11 broad topics

(e.g., United's understanding, use and knowledge of AWP and WAC; the substance of

United's negotiation with health care providers; United's knowledge of government

studies, reports and communications regarding actual acquisition costs for drugs; all

documents produce by United in response to the subpoena). Prame Decl. ¶ 21 and Ex. M.

The time period to be covered during the depositions (1997-2003) is also extremely broad.

United is a large, national insurer. To provide accurate testimony on that number

of topics over that period of time, United estimates that it could have to identify eight or

more employees or former employees to testify. Prame Decl. ¶ 21. Defendants have not

and cannot establish that the likely benefits of the depositions would outweigh the heavy

burden United would have to bear in identifying, preparing and participating in eight or

more depositions. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333

F.3d 38, 42 (1st Cir. 2003) (quashing subpoena that sought nearly a decade's worth of

materials).

And, Defendants own motion establishes that this set of United depositions would be just one in a series of depositions of insurers nationwide. Although Defendants unabashedly admit that they already have taken the depositions of representatives of CIGNA, Aetna, Humana (and have taken or are seeking to take deposition testimony from Blue Cross/Blue Shield plans across the country),[8] Defendants have refused to explain why, in light of the prior testimony from other national insurers, Defendants still need deposition testimony from United. Defendants' demand for deposition testimony, therefore, is both unduly burdensome and unreasonably cumulative. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (third-party discovery not permitted because movant had failed to establish that the information to be gained would be anything but cumulative or duplicative of prior testimony from other witnesses).

## C. Defendants' Document Requests Are Overbroad and/or Unreasonably Cumulative.

On August 16, 2005, the Court certified: (1) a class of Massachusetts third-party payors providing supplemental insurance coverage for Medicare copayments for physician-administered drugs; and (2) a class of Massachusetts third-party payors and consumers who paid for physician-administered drugs based on a percentage of AWP (outside the context of Medicare Part B). United understands that a nationwide class of Medicare Part B beneficiaries also may be certified after an amended complaint is filed

---

[8]     *See* Motion to Compel p. 3.

identifying new individual class representatives for this class. *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 66 (D. Mass. Aug. 16, 2005).

Defendants' discovery demands are overbroad in that they are not tailored to the classes certified by the Court. Not one of Defendants' discovery demands (including their demands for production of fee schedules, medical claims data, and witnesses for depositions) is restricted in scope to either (1) United's Massachusetts business or (2) Medicare Part B beneficiaries.

Moreover, United understands that this lawsuit no longer involves drugs dispensed at a retail pharmacy, but rather is limited to physician administered drugs. Prame Decl. ¶ 23. Accordingly, Defendants' demand for documents related to United's retail pharmacy programs (*i.e.*, rebate reports of amounts paid to United by pharmacy benefit managers and MAC lists pertaining to retail pharmacy reimbursement for generic drugs) are overbroad. Defendants' demand for MAC lists also is unreasonably cumulative in that United understands that Defendants already have obtained a sample of the MAC lists maintained by pharmacy benefit managers nationwide (including those with whom United has contracted). Prame Decl. ¶ 23. *See Ameristar*, 244 F.3d at 193 (quashing subpoena seeking discovery that was cumulative or duplicative of prior discovery).

Defendants' demand for "claims processing manuals" is similarly overbroad in that it is not limited to information relating to the processing of claims for physician-administered drugs for either United's Massachusetts business or Medicare Part B.

Moreover, as has been repeatedly explained to Defendants' counsel, United does not have a single manual that describes how medical claims are processed.[9]  Prame Decl. 22.

Defendants also demand production of (1) business plans, memoranda or other documents addressing (a) whether United understood that providers earned a margin on the drugs that providers administered, and (b) the reimbursement or cost for drugs administered in a hospital compared to drugs administered in a physician's office.  Again, given United's extensive document production in 2004, as well as the discovery Defendants have obtained from other insurers across the nation, United should not be made to expend additional resources searching for and producing these materials at this time.

**D.      Defendants Have Unduly Delayed Seeking Discovery from United.**

A subpoena issued on a third-party is subject to the discovery deadlines set by the Court.  *Alper v. U.S.*, 190 F.R.D. 281, 283 (D. Mass. 2000) (Rule 45 subpoena "constitutes 'discovery' within the meaning of Rules 26 and 34 and, as a result, comes up against the court's discovery schedule"); *Anderson v. Bungee Int'l Mfg. Corp.*, No. 96 Civ. 0186, 1999 WL 219904, at *2 (S.D.N.Y. Apr. 14, 1999) ("Discovery of information in a lawsuit, whether from parties or non-parties, is still 'discovery,' and it is subject to this Court's supervision, discovery orders and deadlines") (Prame Decl. Ex. N).  As such, it is well within the Court's discretion to deny a party's motion to compel when it is not

---

[9]      Defendants' demand, at minimum, would require United to look back over its records from 1997 through 2003 for written policies that describe how claims for physician administered drugs are to be paid.  Prame Decl. 22.

timely brought. *Modern Cont'l/Obayashi v. Occupational Safety and Health Review Comm'n*, 196 F.3d 274, 280 (1st Cir. 1999) (denying motion to compel subpoena filed after discovery deadline); *In re Health Mgmt., Inc.*, No. CV 96-0889 (ADS), 1999 WL 33594132, at *5-6 (E.D.N.Y. Sept. 25, 1999) (same) (Prame Decl. Ex. C).

Case Management Order 13 called for fact discovery to be completed by August 31, 2005. During the discussions among counsel this summer regarding Defendants' May 27, 2005 letter, Defendants' counsel, Ms. Cortes, represented on multiple occasions that the discovery period for fact discovery from United was scheduled to close on August 31, 2005. Prame Decl. ¶ 16. Moreover, in papers Defendants' recently filed with the Court, Defendants have asserted that third party subpoenas should be quashed because, among other things, the "fail[ure] to file a motion to compel [third party discovery] sufficiently before . . . the discovery cut-off has been held to bar the [discovery] sought as untimely"). Memorandum of Law in Support of Motion by Defendants to Quash Subpoenas of Former Centocor Employees, Docket 1739, at 2.[10] Accordingly, Defendants have themselves recognized the need to complete discovery from United or file a motion to compel before the August 31 discovery cut-off.

---

[10]     Defendants have suggested that CMO 13 does not apply because the subpoenas seek information of behalf of Track 2 Defendants. However, the subpoenas on United were served by Track 1 Defendants. No Track 2 Defendant has served a subpoena on United. *See* Prame Decl. Exs. A and B. By suggesting that Track 1 Defendants may seek discovery for the benefit of Track 2 Defendants, the Track 1 Defendants are seeking, in effect, to piggy back on the Track 2 discovery schedule. Any such attempt to circumvent the discovery deadlines established by the Court is inappropriate and should not be permitted.

Defendants do not and cannot offer any excuse for failing to timely pursue and complete the discovery from United or file its Motion to Compel by August 31. As discussed above, Defendants unduly delayed seeking additional discovery from United. After United completed its production of documents in accordance with its agreement with Defendants last year, Defendants did nothing for seven months (November 1, 2004 to May 27, 2005) in pursuit of additional documents or deposition testimony. Accordingly, when Defendants finally contacted United at then end of May, there was only three months left to complete the substantial discovery that Defendants demanded.

Nonetheless, despite Defendants' delay in seeking further discovery, United conferred in good faith to determine whether an agreement could be reached regarding an additional production from United within the time frames established by the Court. These negotiations broke down in mid-July and, on July 22, 2005, nearly six weeks before the August 31, 2005 discovery cut-off, United informed Defendants that it would not be producing any further information. Prame Decl. ¶ 17. Accordingly, when negotiations over further discovery ended in July 2005, Defendants still had ample opportunity to file a motion to compel prior to the August 31 discovery deadline. There is simply no excuse for Defendants' failure to file its motion to compel before the discovery deadline. As such, Defendants' Motion to Compel should be denied on the grounds that it is untimely.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), United respectfully requests a hearing on this matter at a date and time to be determined by the Court.

## <u>CONCLUSION</u>

The Court should deny Defendants' Motion to Compel and award United

attorneys' fees and costs.

Dated:  October 26, 2005           Respectfully submitted,

MANCHEL & BRENNAN, P.C.


_____/s/ Julie B. Brennan_____
Julie B. Brennan (BBO # 564101)
199 Wells Avenue, Suite 301
Newton, Massachusetts 02459
Tel:  (617) 796-8920
Fax: (617) 796-8921

Thomas F. Fitzgerald
Michael J. Prame
Lars C. Golumbic
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Tel: (202) 857-0620
Fax: (202) 659-4503

Attorneys for UnitedHealthcare, Inc. and United
HealthCare Insurance Company