# EXHIBIT

# I

**Patterson, Belknap, Webb & Tyler** LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Jessica Golden Cortes

Direct Phone
(212) 336-2017

October 19, 2004

**By Fax**

Michael Prame, Esq.
The Groom Law Group
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Re: **In re Pharmaceutical Industry Average Wholesale Price Litigation
MDL No. 1456 Civil Action: 01-CV-12257-PBS**

Dear Michael:

During recent conversations, you queried whether it might be possible for your client United HealthCare ("United") to provide defendants with a declaration in lieu of producing a witness for deposition. As discussed, defendants are willing to consider this possibility, subject to analysis of the terms of such declaration.

At your request, we are providing here a list detailing the core assertions relevant to this litigation that defendants would seek to establish through discovery from United. In each case, the relevant time frame is 1990 to the present.

1. United understands "AWP" or "Average Wholesale Price" to be a reimbursement benchmark set at a markup over "WAC" or the "Wholesale Acquisition Cost." United further understands that AWP does not represent the average of actual acquisition costs or the cost paid by any market participant to acquire drugs.

2. United is aware that providers and pharmacies acquire drugs at or close to their WAC prices.

3. United further understands that some drug manufacturers provide health care providers with discounts, rebates and other incentives that are not reported in pricing compendia or otherwise disclosed to the public and which lower the providers' effective acquisition price to amounts below WAC. United also understands that the published AWPs are not adjusted to account for such discounts, rebates and other incentives.

4. United is aware that providers and pharmacies make a margin on profit on the differential between the prices at which they acquire drugs and the amounts that United reimburses them for those drugs.

5. United recognizes that this drug margin to providers and pharmacies is necessary to cover their overhead costs and provide a measure of profit. This is true in part because the

Michael Pramo, Esq.
October 19, 2004
Page 2

administration and dispensing fees paid to providers and pharmacies are not sufficient, in and of themselves, to cover their costs. The existence of margin also gives providers and pharmacies an incentive to participate in United's networks and ensures sufficient coverage for United's members.

6. United sets its reimbursement rates to providers and pharmacies through a process of competitive negotiations. United seeks to get the best deal it can in every instance. The dollar amounts would not change if United's reimbursement formulae were tied to a benchmark other than AWP.

7. United understands that PBMs with which it contracts have earned margins on the difference between what they charge United for drugs and what they reimburse pharmacies for those drugs.

8. In cases where a drug can be administered in physicians' offices or in hospitals, United prefers that the drug be administered in physicians' offices. This is because United would have to pay a higher amount in reimbursement if the drug were administered in hospitals.

9. United does not take the position that drug manufacturers have colluded with pharmacy benefit managers ("PBMs") to inflate the amounts United paid or reimbursed for pharmacy-dispensed drugs.

10. United does not take the position that drug manufacturers engaged in a pattern of fraudulent conduct to artificially inflate the AWPs for their drugs that caused United to substantially overpay for drugs.

Please let us know by October 25, 2004 whether United is able to provide a declaration attesting to these facts. If you have any questions regarding the above, please call to discuss.

Very truly yours,

*Jessica Golden Cortes*

Jessica Golden Cortes

1114045v1