# EXHIBIT

# L



# GROOM
## LAW GROUP
*www.groom.com*

Michael J. Prame
(202) 857-0620
mjp@groom.com

July 12, 2005

**<u>Via Facsimile</u>**

Jessica Golden Cortes, Esq.
Patterson, Belknap, Webb & Tyler
1133 Avenue of the Americas
New York, New York  10036-6710

  Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
     MDL No. 1456, Civ. No. 01-12257-PBS (U.S.D.C. D. Mass.)

Dear Jessica:

   I am writing in response to your May 27, 2005 letter, as modified during our discussions with you on June 16 and 20, 2005. Because of the breadth of the Defendants' most recent document requests, since we last spoke with you, we have had to identify, contact, and confer on multiple occasions with a number of representatives of UnitedHealthcare, Inc. and United HealthCare Insurance Company (collectively "United") to determine (1) whether United may have documents responsive to the latest requests; and (2) if so, how long and at what cost it would take United to gather these materials.

   Set forth below are United's initial responses to Defendants' latest requests. However, as you know, United already produced between August and November 2004 approximately 24,000 pages of documents in response to Defendants' subpoenas. United's document production last Fall followed substantial discussions between our firms regarding the scope of the subpoenas. Last August, Defendants specifically agreed



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 2


to the document production that United proposed to provide in response to the subpoenas. And, as you acknowledged during our June 16, 2005 telephone conference, United produced every document that, in August, Defendants agreed United was to produce in response to the subpoenas.

United's voluminous document production last Fall required expenditure of significant internal and external resources. Defendants now seek to impose additional burdens on United by requiring it not only to devote substantial time and financial resources responding to their latest discovery requests, but to do so before the August 31, 2005 close of fact discovery. As we discussed, after United completed its production of documents last November, Defendants allowed more than seven months to elapse before Defendants sought additional discovery from United. This despite knowing since at least entry of the March 10 scheduling order that fact discovery was to close on August 31, 2005.

Nevertheless, as we discussed during our conversations, United desires to bring closure to the third-party discovery sought by Defendants. To that end, United has and remains willing to discuss Defendants' requests to determine whether an agreement can be reached regarding an additional production within the remaining discovery period. As with United's prior production, United's responses are limited to the period January 1, 1997 through December 31, 2003.

<u>**Requests for Documents**</u>

**1.    Margin/Comparative Reimbursement Levels**

During our June 20, 2005 telephone conference, you advised that Defendants would like United to make a "good faith search" for business plans, memos or other documents addressing either:

a.  whether United understood that providers earned a margin on the drugs that the providers administered; or



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 3


b.  the reimbursement or cost for drugs administered in a hospital compared to drugs administered in a physicians office.

United has identified documents that may be responsive to Defendants' requests. We believe that it will be possible to produce these documents to you by Friday, July 22, 2005.

## 2.      MAC Lists

During our June 16, 2005 telephone conference, you advised that Defendants would like United to produce the MAC lists that it maintains. Please be advised that United utilized the MAC lists maintained by Diversified Pharmaceutical Services, Inc. ("DPS") and Medco Health Solutions, Inc. (f/k/a Merck-Medco Managed Care, L.L.C.) ("Medco") during the applicable period. We understand that Defendants have separately subpoenaed DPS (now part of Express Scripts, Inc.) and Medco. We suggest that Defendants seek production of the MAC lists directly from those companies.

## 3.      "Claims Processing Manuals"

During both of our telephone conversations, we asked that you clarify what Defendants are seeking in requesting "claims processing manuals." You simply advised that we should ask our clients for "claims processing manuals," asserting that they will know what you mean. We have done as you asked. We believe that it will be possible to produce documents responsive to your request, as United understands such request, by Friday, July 22, 2005.

## 4.      Provider Contracts and Fee Schedules

On July 7th, you advised that Defendants are not seeking further production of contracts between United and healthcare providers. We understand from your e-mail, however, that Defendants would like United to produce additional fee schedules from the 1997 through 2003 period. We are consulting with our clients about your request and will get back to you shortly regarding the feasibility of producing a sample of fee schedules for physician administered drugs.



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 4

As to the cost for items 1 though 4 above, please be advised that, as with its prior production, United would expect to charge $135/hour for each man hour spent identifying, collecting and copying the requested documents.

### Request for Depositions

We were surprised to learn in your July 7th e-mail that Defendants are continuing to seek depositions from United personnel. During our June 16, 2005 telephone conference, we specifically advised you that United may be willing to produce additional documents, but only with the understanding that Defendants would not seek any further discovery from United. You said you understood that. Accordingly, it was our understanding that there would be no depositions.

Nor do we see the need for depositions of United personnel. Defendants already have deposed a series of witnesses from a number of insurance companies, including some of the largest insurance companies in the nation (*e.g.*, Aetna, Humana and CIGNA). Accordingly, depositions of United representatives would be cumulative and unduly burdensome.

Moreover, as we explained last Fall, Defendants' requests for depositions would require a substantial expenditure of resources.. You will recall that United estimated that 10 or more United personnel would likely need to testify to address the deposition topics that you had identified at that time. It is unreasonable and unduly burdensome to ask United to have that many people set aside their business in order to prepare for and attend depositions by the end of August.

If Defendants, nonetheless, desire to proceed with depositions, we request that Defendants (1) explain why the discovery they seek (a) is not cumulative of its prior discovery from the other insurers; and (b) could not have been previously sought and obtained from the prior deponents; and (2) identify the topics on which Defendants truly believe they still need deposition testimony from United personnel.



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 5

## Request for Claims Data

On October 13, 2004, we provided you with an estimate of the man hours and expenses that United anticipated that it would incur in producing the claims fields that Mr. Haas identified in his letter dated April 7, 2004. It is our understanding from our recent discussions that Defendants have limited the data request to medical (not pharmaceutical) claims data from one east coast market and one west coast market.

Based on our discussions, United has prepared time and cost estimates discussed below for producing medical claims data from 1997 through 2003 from Arizona and Massachusetts. As before, this in no way means that United is agreeing to produce the claims data at this time. The specifics of any production of claims data would remain subject to further negotiation.

1.      Claims data from Live Galaxy for claims adjudicated during the period May 1, 2002 through December 31, 2003.  Galaxy is a data warehouse that contains adjudicated claim and associated data from two transaction processing system platforms (known as UNET and Cosmos).  Galaxy is one of the largest computer databases in the world.  Medical claims data for claims adjudicated from May 1, 2002 forward is currently maintained on the live Galaxy database.  United estimates that it would take approximately 115 staff hours at $150/hour, plus an estimated $2,500 in computer resource/data center utilization fees (CPU, short-term disk storage, tape mounts) to identify, extract and produce the claims data for the two markets for the period May 1, 2002 through December 31, 2003.  Accordingly, the total cost for this component is approximately $19,750.

2.      Claims data from Archived Galaxy for claims adjudicated during the period August 1998 through April 30, 2002.  Medical claims data for claims adjudicated between August 1, 1998 and April 30, 2002 has been removed from the live Galaxy database and is now archived on tapes.  United estimates that it would take approximately 170 staff hours at $150/hour, plus an estimated $5,000 in computer resource/data center utilization fees to identify, extract and produce the claims data for the period August 1, 1998 through April 30, 2002.  Accordingly, the total cost for this component is approximately $30,500.



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 6

 3. Pre-Galaxy data for claims adjudicated during the period January 1, 1997 through July 30, 1998. Medical claims data for claims adjudicated between January 1, 1997 through July 30, 1998 was housed in a data warehouse known as "DSS." The information is now archived on tapes. Past experience (among current employees) in trying to identify, extract and produce claims data from the archived tapes for the DSS warehouses is limited.

 As to the DSS warehouse, United estimates that it would take approximately 160 staff hours at $150/hour, plus an estimated $2,500 in computer resource/data center utilization fees to identify, extract and produce the claims data for the period January 1, 1997 through July 30, 1998. Accordingly, the total cost for this component is approximately $26,500 (24,000 + 2,500).

 While the limitations Defendants have placed on the data request results in a reduction in the fees charged for computer resource/data center work, there is not a substantial difference in the time and effort to be expended by United. Thus, it is still the case that the project can not be completed in a day, due to, among other things, the time associated with identification and loading of tapes, computer processing time, formatting, quality control, and other matters requiring use of the computer systems. United estimates that it would take between three to eight weeks contingent on programmer and analyst availability to complete the process of identifying, extracting and producing the claims data from any one of the three components described above. It, of course, would take additional time to complete the task if United produced data for more than one component. We would be happy to provide an estimate of the time it would take to produce data from all three components or some combination thereof.

 Finally, we believe that the above-described production of claims data would be representative of the experience in Arizona and Massachusetts between 1997 and 2003. As such, we did not obtain time and cost estimates for the production of claims data related to the AARP Pharmacy Services program and AARP supplemental group health insurance program. The claims data for these programs is separately warehoused. Please let us know if you would like time and cost estimates for the AARP programs' claims data.



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 7


Again, please be advised that by providing this information to you at this time, UnitedHealthcare, Inc. and United HealthCare Insurance Company do not intend to waive any of their objections to the subpoenas, all of which are incorporated herein.

Very truly yours,

Michael J. Prame

cc:    Thomas Fitzgerald



**GROOM**
**LAW GROUP**
*www.groom.com*

Jessica Golden Cortes
July 12, 2005
Page 8


bcc:    Mamie Segall
        Dave Abrams
        Paul Kallmeyer