# EXHIBIT

# M

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

September 30, 2005

By Email Attachment

Adeel A. Mangi
(212) 336-2563
Direct Fax (212) 336-7947
aamangi@pbwt.com

Michael Prame, Esq.
Groom Law Group
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006-5811

Re:   **In Re AWP Litigation**

Dear Mike:

We are writing further to our conversation of September 23, 2005 to provide some of the additional information you requested.

**(1) MAC Lists**

You asked us to check whether defendants' have already obtained United's MAC lists through discovery from PBMs. We checked with counsel coordinating that discovery, who informs us that United's MAC lists were not produced.

**(2) Claims Data**

In your July 12, 2005 letter you represented that United's claims data is housed on the "Galaxy" system and provided the following estimates for collection:

- For data from May 1, 2002 to December 31, 2003 - $19,750 (current system)
- For data from August 1998 to April 30, 2002: $30,500 (data archived on tape)
- For data from January 1, 1997 to July 30, 1998: $26,500 (archived on older system)

Based on these estimates, defendants will seek production of the data for the period August 1998 to April 30, 2002 only. Please provide us with a list of data fields available for pre-collection analysis to ensure that all relevant data is collected and produced in an efficient manner. Please also clarify whether the "Galaxy" system incorporates data from "Inginex" and if not, what data is available from Inginex.

**(3) Deposition Topics**

You stated that United has no objection in principle to the production of a deposition witness but were concerned that the list of deposition topics would require the production of too many witnesses. You asked that defendants again try to focus the list of topics

Michael Prame, Esq.
September 30, 2005
Page 2

on which deposition testimony is sought to facilitate the production of witnesses. To that end, we have revised and further focused the list of deposition topics originally sent to you by Jessica Cortes. We will reissue the deposition subpoena listing these topics if you request, otherwise these are incorporated by reference as issued at your request.

As I stated during our call, the vast majority of subpoenaed health plans have previously responded to a much broader list of areas of inquiry through the production of one or two witnesses and the court has found that the production of witnesses on even that broader list of topics is not burdensome. The appropriate witness on the medical side is generally a senior executive with responsibility for contracting negotiations with providers. Defendants reserve the right to seek witnesses to testify on issues pertaining to self administered drugs should an appeal change the current case posture.

**(4) Golden Rule**

Finally, as to Golden Rule Insurance Co., you represented during our call that Golden Rule had no responsive documents to the subpoena and agreed to state Golden Rule's position in writing with reference to each specific document production category. We look forward to receiving that letter, after which we can decide how to proceed with regard to Golden Rule on the document requests and deposition subpoena.

\* \* \*

As discussed during our call, defendants continue to call for the collection of all other documents identified in our letter of May 27, 2005. I understand you will confirm that production and a schedule after conferring with your client. We look forward to hearing from you.

Sincerely,

Adeel A. Mangi

1218254v1

Michael Prame, Esq.
September 30, 2005
Page 3

## AREAS OF INQUIRY

### Benchmarks and Reimbursement

1. Your understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," or "WAC."

2. All methodologies (e.g., capitation, usual and customary charges, AWP-based formula, or use of specialty pharmacies) you utilized or considered utilizing to determine the amounts to pay or reimburse health care providers (e.g., doctors, hospitals, clinics) for drugs administered in physician's offices or hospitals, including the extent to which any reimbursements are tied to the AWPs of specific drugs.

3. All rationales, information, and factors considered by you in deciding whether or not to pay a separate administration fee in addition to the price of the drug itself.

4. Whether and to what extent you provide different reimbursement rates for subject drugs when they are administered in providers' offices rather than in hospitals, including your rationale for doing so or not doing so, and including any studies or analysis you have made concerning the relatives costs of the administration of subject drugs in providers' offices rather than in hospitals.

### Negotiations with Providers

5. Whether and to what extent you set drug reimbursement for drugs administered and dispensed based on competitive negotiations with health care providers.

6. The substance of such negotiations, including whether and to what extent they expressly dealt with a distinction between the reimbursement of the drug itself and the reimbursement for the medical provider's administration services, or referenced Medicare reimbursement rates.

### Information Regarding Margins

7. Your understanding, knowledge and expectations (if any) of whether health care providers earn a margin on drugs administered, including whether such a margin depended, in part, on the difference between the reimbursement you paid and the actual acquisition costs for the drugs, net of any incentives provided by the drug manufacturers, and the effect (if any) of such knowledge on the setting of reimbursement rates.

8. Your knowledge and understanding of whether any administration fees you reimbursed to providers were sufficient to cover the provider's costs in administering the corresponding drugs.

9. Your understanding and knowledge of whether drug manufacturers provided health care providers with discounts, rebates and other incentives that were not reported in pricing compendia or otherwise disclosed to the public, including whether or not the published AWP was adjusted to account for these discounts, rebates and other incentives.

1218254v1

Michael Prame, Esq.
September 30, 2005
Page 4

10. Your knowledge of government studies, reports, and communications concerning actual acquisition costs for drugs.

**Documents Produced**

11. All documents produced in response to defendants' subpoena, including whether such documents are authentic within the meaning of Rule 901 of the Federal Rules of Evidence, and Records of Regularly Conducted Activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

1218254v1