# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION:  01-CV-12257-PBS<br><br>Magistrate Judge Marianne Bowler |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

## PLAINTIFFS' RESPONSE TO DEFENDANT AVENTIS' MOTION FOR ENTRY OF PROTECTIVE ORDER

Plaintiffs hereby respond to Defendant Aventis Pharmaceutical Inc.'s ("Aventis") October 27, 2005 Motion for Entry of Protective Order.  Aventis seeks to have the Court grant as unopposed  its October 19, 2005 Motion for Protective Order limiting the number of depositions that can be conducted in this matter (the "October 19 Motion").  The present motion is a blatant and improper game of "gotcha" by Aventis, and must be denied.  As discussed below, the ten deposition limit of the Massachusetts Local Rules is not applicable to this litigation, as this Court has already recognized.

Plaintiffs strenuously contest the October 19 Motion, and will respond fully by November 2, the date a Response is due.  As will be detailed in Plaintiffs' Response, the ten deposition limit of Local Rule 26.1 should not apply in this complex, multi-party, multi-district litigation.  Application of the ten deposition limit now would ignore the history of this litigation and would effectively halt all discovery by all sides, as approximately 280 depositions have been taken to date, over 100 of which have been conducted by the defendants.

Moreover, this Court addressed the issue of the number of depositions allowed in its September 19, 2005 ruling preventing Astrazeneca from limiting the number of depositions plaintiffs could conduct. This Court allowed plaintiffs to conduct an additional 12 depositions relating to AstraZeneca beyond the 25 that had already been taken. *See* September 19, 2005 hearing transcript, pp 1-21, attached as Exhibit 1. The clear implication of the Court's earlier ruling is that the ten deposition limit does not apply to this complex litigation.

**The Language of CMO 10 is Not Applicable**

The language Aventis relies on in filing the Instant Motion is contained in CMO 10, Section II, paragraph 7, last sentence.[1] Paragraph 7 provides rules for the production of individual deponents and the filing of any protective orders concerning individual depositions.  Paragraph 7 was designed to allow for the prompt resolution of disputes over individual depositions. Such is not the subject matter of Aventis' October 19, 2005 Motion, which seeks to limit **all** future depositions by the Plaintiffs against Aventis, not just the individual depositions that have been noticed.  As such, the time limits of CMO 10 paragraph 7 do not apply to the October 19 Motion, regardless of how the motion is titled.

Obviously, Aventis' October 19, 2005 Motion involves a very serious issue which could impact the entire litigation.  Aventis' suggestion that the October 19 Motion be determined on the basis of an inapplicable section of CMO 10 designed for individual deposition disputes, and not on its substantive merits, is outrageous.

---

[1] A copy of CMO 10 is attached as Exhibit 2.

**Aventis' Gamesmanship**

The conduct of Aventis' counsel prior to the filing of the instant motion is evidence of Aventis' attempt to catch the Plaintiffs in a technical procedural trap, while avoiding the important issues raised by the October 19 Motion.  Initially, Plaintiffs note that Aventis failed to discuss the subject matter of its instant motion before filing, as required by Local Rule 7.1(a)(2).  The first time Plaintiffs learned of Aventis' position was when its motion was served earlier today (October 27).  The only reason for Aventis' failure to comply with the Local Rule is to attempt to catch the Plaintiffs off-guard.  This is exactly the type of tactic the meet-and-confer requirement is designed to avoid.

The conduct of Aventis' counsel during discovery also indicates that Aventis did not intend for the provisions of CMO 10 paragraph 7 to apply to any response to the October 19 Motion.  Just yesterday Aventis' counsel exchanged emails and agree to the deposition of John Dupont (one of the deponents referenced in the instant motion) on November 21.  At no time did Aventis' counsel suggest that the Dupont deposition would not proceed because of the October 19 Motion, or that plaintiffs' response to the October 19 motion was overdue.  *See* Certification of Patrick Howard and email exchange between P. Howard and R. McCully of October 26, attached as Exhibit 4.  Similarly, at the deposition of former Aventis employee Mike Leach on October 20, Aventis' counsel agreed to produce former employee G.R.Green (who was also included in the Deposition Notice that triggered the October 19 motion) for deposition on November 2.  *See* Howard Certification and October 21 email attached as Exhibit 3.  Thus, Aventis' counsel gave every indication that they would produce all of the deponents at issue, and never indicted that plaintiffs had failed to timely respond to the October 19 Motion.

For all these reasons, Aventis' Motion for Entry of a Protective Order, based on Plaintiffs' failure to comply with the provision of CMO 10, must be denied.

Dated:        October 27, 2005

John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Tom Sobol
Edward Notargiacomo
Hagens Berman LLP
One Main Street, 4th Floor
Cambridge, MA 02110

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Samuel Heins
Brian Williams
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL 60602

## CERTIFICATE OF SERVICE

I, John A. Macoretta, hereby certify that on October 27, 2005, I served true and correct copies of the foregoing Plaintiffs' Response to Defendant Aventis' Motion for Entry of Protective Order  via Lexis/Nexis on all counsel of record.

By:      /s/ John Macoretta
         John Macoretta, Esquire
         Spector, Roseman & Kodroff, P.C.
         1818 Market Street
         Suite 2500
         Philadelphia, PA 19103

G:\CLIENTS\AWP Omnibus\Aventis\Pleadings\Pltf Resp to Aventis MFEntryofOrder.wpd

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE           )     MDL No. 1456
LITIGATION                                      )
_____ )
                                                      )     CIVIL ACTION 01-CV-12257-PBS
THIS DOCUMENT RELATES TO         )
ALL ACTIONS                                  )     Judge Patti B. Saris
_____ )

## DECLARATION OF PATRICK HOWARD

1.      I am an associate at the law firm of Spector, Roseman and Kodroff, in Philadelphia, PA,

representing the Plaintiffs.

2.      On October 27, 2005, I attended the deposition of former Aventis employee, Michael J.

Leach in Kansas City, MO.

3.      At the conclusion of Mr. Leach's deposition, Aventis' counsel agreed to produce former

Aventis employee G.R. Green on November 11, 2005, at the offices of Shook, Hardy and Bacon,

L.L.P. in Washington, D.C.

4.      On October 21, 2005, by way of electronic correspondence to Aventis' counsel, I

confirmed the date, time and location of Mr. Green's deposition. (A true and correct copy of the

October 21, 2005, email attached as Exhibit 3). Aventis' counsel did not object to the

confirmation, nor did he reference the pending protective order motion.

5.      On October 26, 2005, by way of electronic correspondence to Aventis' counsel, I

inquired as to the status of Aventis employee John DuPont's deposition. (A true and correct

copy of the October 26, 2005, email is attached as Exhibit 4).

6.      On October 26, 2005, Aventis' counsel responded to my correspondence by offering

alternative dates for Mr. DuPont's deposition. Aventis' counsel referenced a delinquent

document production of Mr. DuPont's electronic files as the reason for the alternate dates.  At no time did Aventis' counsel object to my request or reference the pending protective order motion.

7.      On October 26, 2005, I confirmed with Aventis' counsel the date, time and location of Mr. DuPont's deposition as November 21, 2005, 10:00 a.m. in New York City.

8.      Attached as Exhibit 1 is a true and correct of pages 1-21 of the transcript of the September 19, 2005, motion hearing before Magistrate Judge Bowler.

9.      Attached as Exhibit 2 is a true and correct of CMO 10.

        I declare under penalty of perjury that the foregoing is true and correct.


October 27, 2005                          _____

                                          PATRICK HOWARD

EXHIBIT 1

Hearing Transcript (00029026).TXT

1              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
2                     BOSTON DIVISION

3

4   IN RE:  PHARMACEUTICAL
    AVERAGE WHOLESALE PRICE          .
5   LITIGATION                       .
                                     .    01-CV-12257-PBS
6                                    .
                                     .    Monday, September 19, 2005
7                                    .    Courtroom 25
                                     .    1 Courthouse Way
8                                    .    Boston, MA. 02210

9

10                 TRANSCRIPT OF MOTIONS

11

12      BEFORE THE HONORABLE MARIANNE B. BOWLER
         UNITED STATES DISTRICT MAGISTRATE JUDGE
13

14

15

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFFS:
       THE WEXLER FIRM, LLP
18     BY:  Jennifer Fountain Connolly, Atty.
       One North Lasalle Street, Suite 20000
19     Chicago IL. 60602

20   FOR THE PLAINTIFFS:
       HAGENS BERMAN SOBOL SHAPIRO, LLP
21     BY:  David S. Nalven, Esq.
       One Main Street, Fourth Floor
22     Cambridge, MA. 02142

23   FOR THE DEFENDANT GLAXOSMITHKLINE:
       COVINGTON & BURLING
24     BY: Geoffrey E. Hobart, Esq.
       1201 Pennsylvania Avenue, N.W.
25     Washington, D.C.


1   FOR THE DEFENDANT ASTRAZENECA:
      DAVIS POLK & WARDWELL
2     BY:  Kimberley D. Harris, Atty. and
      Kristi T. Prinzo, Atty.
3     450 Lexington Avenue
      New York, NY. 10017
                       Page 1

Hearing Transcript (00029026).TXT

```
 4

 5

 6    Court Reporter:                Niles Jon Fowlkes, RMR
                                     20 Malverna Road
 7                                   Roslindale, MA. 02131-4512
                                     Tel.  617-469-0756
 8

 9    Proceedings Reported by Stenotype, Transcript Produced By
                     Computer-Aided Transcription.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                                    3

```
 1                        I N D E X

 2

 3      Hearing re docket:

 4

 5      No. 1581 -    4

 6      No. 1597 -   33

 7      No. 1601 -   34

 8      No. 1621 -   40
```

Hearing Transcript (00029026).TXT

9      No. 1623 -   41

10     No. 1634 -   53

11

12

13

14

15

16

17

18                              *  *  *

19

20

21

22

23

24

25

☐

                                                    4


1                      Monday, September 19, 2005

2

3

4           THE CLERK:  Today is Monday, September 19, 2005.

5    The case of In Re Pharmaceutical Industry Average Wholesale

6    Price Litigation, Civil Action No. 01-12257 will now be

7    heard before this Court.

8           Will counsel please identify themselves for the

9    record.

10          MR NALVEN:  Good morning, your Honor.  David

Hearing Transcript (00029026).TXT
11   Nalven, N-A-L-V-E-N, for the plaintiffs.

12          MS. CONNOLLY:  Good morning, your Honor.  Jennifer

13   Connolly for the plaintiffs.

14          MR. HOBART:  Good morning, your Honor.  Geoffrey

15   Hobart on behalf of GlaxoSmithKline, and I will also argue

16   some of the joint defense motions.

17          MS. PRIZO:  Good morning, your Honor.  Kristi

18   Prinzo, Davis, Polk & Wardwell, for AstraZeneca

19   Pharmaceuticals.

20          MS. HARRIS:  Good morning, your Honor.  Kim Harris

21   for AstraZeneca Pharmaceuticals.

22          THE COURT:  Thank you.  Any one else?  All right.

23          I will take these motions in the order in which

24   they have been filed, starting with docket entry No. 1581,

25   which is the motion to set aside -- motion for leave to set

5

1    aside the ten deposition limit with respect to AstraZeneca.

2           MS. CONNOLLY:  Good morning, your Honor.  I'll be

3    arguing that.

4           First of all, before I start, your Honor, if I

5    could approach?  I have a copy of the documents I'm going

6    to be referring to while I'm speaking.

7           THE COURT:  All right.  Have you given them to --

8           MS. CONNOLLY:  Yes, I will.

9           THE COURT:  You will or have?

10          MS. CONNOLLY:  I will.

11          THE COURT:  You know, we really like to see

12   everything ahead of time so the presentation --

Page 4

Hearing Transcript (00029026).TXT

13       MS. CONNOLLY:  They are copies of things that have

14   been attached to motions.  I figured it would be easier to

15   work at it this way.  It's correspondence between the

16   parties.

17   [Documents exhibited to the Court.]

18           First of all, your Honor, I wanted to mention

19   since the filing of our motion on July 6, obviously, Judge

20   Saris has issued her classification opinion.  Therefore,

21   for that reason, plaintiffs are no longer seeking a total

22   of 50 depositions that were in our original motion.

23           THE COURT:  What do you want now?

24           MS. CONNOLLY:  What we want now are in the letter

25   I have just handed up, the packet.  There is a letter there

6

1    that is dated September 7th, 2005, which is a copy of a

2    letter we sent to opposing counsel delineating the

3    depositions we still want.

4           There is one deposition on that letter, Mr.

5    Kaplan, we no longer want, and there are three --

6           THE COURT:  These things are not tabbed or

7    anything.  So tell me how many depositions do you want.

8           MS. CONNOLLY:  Thirteen depositions.

9           I'll explain briefly why we need those 13

10   depositions.

11          The limit that is set forth in Rule 30(a)(2)(A) is

12   not appropriate for this defendant or for this case, but

13   despite AstraZeneca's original January 24th offer to the

14   plaintiffs to evaluate on a case-by-case basis whether they

Hearing Transcript (00029026).TXT

15 would give us depositions --

16 [Phone rings.]

17       THE COURT: That phone never rings.

18 [Phone stops ringing.]

19       Someone realized that.

20 [Laughter.]

21       MS. CONNOLLY: Sorry, your Honor.

22       Despite -- despite AstraZeneca's original offer to

23 evaluate our request for depositions on a

24 request-by-request basis, they abandoned that approach and

25 instead imposed an arbitrary limit on the depositions we

7

1 sought from them.

2       There are several reasons that the deposition

3 limits are not appropriate in this case. The first are

4 just a series of general reasons which are the existence of

5 a 13-year class period. Now, there is only one

6 physician-administered drug left over for AstraZeneca, and

7 that is Zoladex. Zoladex has been on the market long

8 enough to be in four entirely different class periods from

9 1991 to present.

10       In addition to the length of the class period,

11 AstraZeneca has produced now over 800,000 pages of

12 documents. About 350,000 of those documents were produced

13 pursuant to CMO No. 5, which is the CMO that governs the

14 government production, which only related to Zoladex. In

15 addition, the documents that came over CMO No. 5, a great

16 deal of those related to Zoladex. So we're dealing with

Hearing Transcript (00029026).TXT

17   more than 500,000 pages of documents that related to

18   Zoladex.

19        Further, AstraZeneca has only existed in its

20   current corporate form since 1999.  Prior to that time, it

21   was the product of numerous mergers and so we've had ten

22   predecessor companies in addition to the current

23   AstraZeneca that we've had to deal with.

24        So the additional 12 -- it's 12 depositions that

25   we're looking for -- is clearly reasonable.  Indeed, in a

                                                    8

1   case involving competitors of Lupron before Judge Stearns,

2   the parties agreed to a total of 50 depositions.  If we are

3   granted leave to take the additional 12 we're seeking, it

4   will be a total of 30 depositions.  So we're clearly

5   seeking far less than the depositions that were allowed in

6   the Lupron case.

7        THE COURT:  How long do you anticipate it will

8   take you to take all 13?

9        MS. CONNOLLY:  I will -- we could possibly do it

10   on a tight schedule in two or three weeks, depending on how

11   many were scheduled per day.  AstraZeneca pointed out in its

12   opposition many of plaintiffs' depositions have not gone

13   anywhere close to the seven-hour limit permitted by the

14   federal rules, and in many cases I think that may be the

15   case with these specific depositions, that they would not go

16   anywhere near seven hours.  So they could --

17        THE COURT:  And the deponents are located where?

18        MS. CONNOLLY:  I believe the majority of them will

Page 7

Hearing Transcript (00029026).TXT

19   be in Wilmington, Delaware, which is where AstraZeneca is

20   located.  Counsel can correct me if I'm wrong on some of

21   these on the list.  I'm not sure if some of these are former

22   employees or current employees.  I believe the majority of

23   them could be conducted in Wilmington, Delaware.

24          If we look at the list that's in the letter, can

25    go through and explain specifically why we need the

9

1    depositions of those individual people.

2          Cyndee Davies, the first person on that

3    September 7th letter --

4          THE COURT:  This is the first document in your

5    packet?

6          MS. CONNOLLY:  Yes, your Honor, that is.

7          -- is an associate -- was an associate promotions

8    manager for oncology and endocrinology from 1994 to 1998,

9    and worked in sales beginning in late 1998.

10          Importantly, she was the person who educated Keith

11   Patterson, who was one of their product managers, on how

12   the marketing of Zoladex was to occur.  Mr. Patterson has

13   been deposed in this case, but did not remember a lot of

14   the details about what Ms. Davies told him, and said that

15   it would be better to ask Ms. Davies for that information.

16   So that is the reason that we are seeking her deposition.

17          Mr. Simpson, Bill Simpson, the second person on

18   this list, was the marketing director for oncology from

19   1994 to 1995, and was actually the first person who held

20   that position, and later became a national sales director.

Page 8

Hearing Transcript (00029026).TXT

21      THE COURT:  The years again?

22      MS. CONNOLLY:  1994 to 1995.

23          And that is the key period that is at issue in

24  this case where AstraZeneca was most active in marketing

25  the spread and return to practice that we've alleged in

10

1   our complaint.

2          Tom Chen, the third person on the list, was the

3   author of documents explaining to management in AstraZeneca

4   that doctors want to hire AWP.  So, obviously, it's

5   important to be able to attribute that knowledge of what

6   AstraZeneca thought doctors were looking for in the market

7   back to AstraZeneca management.  So we need to take Mr.

8   Chen's deposition for that reason.

9          Chris Bowman, the fourth person on the list,

10  invented a Buy Group Program that was in place at

11  AstraZeneca, and this was basically a program that

12  AstraZeneca started that put physicians into groups so that

13  they could obtain volume discounts for Zoladex.

14      THE COURT:  In what year was that?

15      MS. CONNOLLY:  I am not exactly sure when the

16  program started.  I believe it was in the late '90s.

17      Now, we have taken the depositions of sales

18  representatives who have talked about the pre-existing buy

19  group; in other words, they said that they put physicians

20  in the buy groups that were already in existence; but they

21  had no idea how the Buy Group Program had developed, and

22  they had no idea how they had been set up in the first

Page 9

Hearing Transcript (00029026).TXT

23    place, which is why we need to take Mr. Bowman's

24    deposition.

25            Mark Reisnauer, the next name, was a major player

11

1     in the marketing section of AstraZeneca, and specifically

2     was a contact with Ray Painter who was a reimbursement

3     consultant to AstraZeneca, a third-party reimbursement

4     consultant.  We've taken Mr. Painter's deposition, and he

5     has said that Mr. Reisnauer was his contact at AstraZeneca.

6            Howard Kaplan is the next name on the list, and we

7     are no longer seeking his deposition.

8            The next depositions are Scott Robbins, Debbie

9     Wilson and Jennifer Judy, and those are three people who

10    have been identified in previous depositions as being the

11    people who actively conducted sales training at

12    AstraZeneca.

13            Although we have had testimony from people about

14    the fact that sales training occurred, we have not gotten

15    the depositions of anyone who actually conducted that sales

16    training, and these are the people that we have been told

17    by AstraZeneca deponents conducted the sales training

18    during the relevant time period.  So, obviously, your

19    Honor, given the subject matter of those, assuming all

20    three of those people are in Wilmington, those would be

21    depositions that could possibly be taken one day

22    collectively.

23            The last bullet on this letter is our 30(b)(6) on

24    sales training, which, as we recently explained in our

Page 10

Hearing Transcript (00029026).TXT
25  supplement that we submitted in support of this motion, is

12

1   a deposition we require because even though we've had

2   testimony from people at AstraZeneca that sales training

3   was conducted, we have never had testimony from someone

4   from the company's viewpoint talking about how sales

5   training should have occurred, what AstraZeneca policies

6   were about the sales training, and clearly it is essential

7   to plaintiffs' case to be able to understand whether

8   doctors were instructed not to market return to practice or

9   market the spread, or whether they were told that they

10  could, indeed, do that.  And that's going to come from a

11  company representative, which is why we need the 30(b)(6).

12          AstraZeneca has basically given two reasons why we

13  shouldn't get that 30(b)(6).  The first is that they claim

14  that we have all these sales training documents which

15  simply isn't the case.  AstraZeneca didn't even look in the

16  department where sales training is contained to give us

17  responsive documents.  And in addition -- in addition, we

18  just got a CD-ROM from AstraZeneca on Friday actually that

19  said, "This is the completion of our sales training

20  production."  We looked on the CD.  There are 130 pages of

21  documents on that CD, and about seven documents, they are

22  all federal supply schedule pricing lists which have

23  nothing to do with sales training.  So even to date, after

24  the close of Track One discovery, we haven't gotten any

25  sales training documents.  So that's certainly not a reason

Hearing Transcript (00029026).TXT

13

1    not to have a 30(b)(6) on sales training.

2            AstraZeneca has also said that we've gotten

3    information about sales training from other deponents, and

4    that's about a quarter true.  We have had other testimony

5    from deponents that sales training was given.  We've also

6    taken deposition testimony from sales representatives

7    themselves who were at the sales training that occurred;

8    but we've only gotten four sales representatives who are

9    only sales representatives for Zoladex during certain time

10   periods, and they were only in certain parts of the

11   country.  Obviously, in a company of thousands of sales

12   representatives, it would be impossible to establish how

13   sales training occurred by taking thousands of depositions.

14   We think this is the more efficient way to go by having a

15   30(b)(6) sales training individual.

16           And then I told you, your Honor, that in addition

17   to this bulleted list that there were three other

18   depositions that we wanted.

19           THE COURT:  You said 13.  There are nine here.

20           MS. CONNOLLY:  I believe I misspoke.  I believe

21   it's 12, your Honor.

22           THE COURT:  All right.

23           MS. CONNOLLY:  My math.

24           There are three additional people, and those

25   people I do not have their names because they are people

Hearing Transcript (00029026).TXT

14

1    that we were informed of at the end of the class period who

2    were the people responsible for communicating with

3    publishers at AstraZeneca.

4           Now, we have testimony from John Freeberry, who is

5    the pricing --

6           THE COURT:  But you have been unable to identify

7    them by name?

8           MS. CONNOLLY:  No, your Honor, we haven't been.

9    We asked them -- we asked for the names from AstraZeneca at

10   the close of the period, and I've been told that there was

11   an e-mail where these names were disclosed, but no one has

12   been able to find it.  So AstraZeneca knows who these people

13   are but we do not.

14          THE COURT:  An e-mail from who to who, do you

15   know?

16          MS. CONNOLLY:  From one of AstraZeneca's attorneys

17   to one of plaintiffs' attorneys.

18          THE COURT:  And neither person has any

19   recollection of this, or --

20          MS. CONNOLLY:  I imagine that AstraZeneca has an

21   idea who those three people are.  They have just told us

22   there are three people throughout the class period.

23          THE COURT:  Can you help us, Mr. Hobart?

24          MS. HARRIS:  Actually, your Honor, I'm counsel for

25   AstraZeneca.

☐

15

1          THE COURT:  All right.
                        Page 13

Hearing Transcript (00029026).TXT

2          MS. HARRIS:  I believe that counsel for plaintiffs

3    is actually mistaken on this point.  We gave them the names

4    over the phone in a conversation with counsel for the

5    plaintiffs, Kenneth Wexler, and what is important to note

6    there, your Honor, is one of those three names is John

7    Freeberry, the pricing strategy director who plaintiffs have

8    already deposed.  The other two names are his secretaries

9    who would have been responsible for just sending out faxes

10   on his behalf in his absence.  We don't believe they have

11   any substantive knowledge regarding communications with

12   publishers that Mr. Freeberry doesn't have.

13         THE COURT:  Has he been deposed on this subject?

14         MS. HARRIS:  Yes, he has, your Honor.  He was

15   deposed as a 30(b)(6) witness.

16         MS. CONNOLLY:  As a --

17         THE COURT:  One person a time, Counsel.

18         MS. CONNOLLY:  Sorry.

19         THE COURT:  The court reporter is the most

20   important person in the courtroom, and if he can't hear, the

21   transcript won't be accurate.

22         MS. HARRIS:  He was deposed as a Rule 30(b)(6)

23   witness on pricing issues, but AstraZeneca did not object to

24   any questions by plaintiffs outside the scope of that

25   30(b)(6) notice.

▢                                                              16

1          THE COURT:  But was there any question about

2    communications with publishers?

3          MS. HARRIS:  Yes, there were, your Honor.
                         Page 14

Hearing Transcript (00029026).TXT

4        THE COURT:  And you're not satisfied what you got

5    from him?

6        MS. CONNOLLY:  No, your Honor.

7        And the reason for that is this.  We have asked

8    AstraZeneca for a complete set of the actual transmittal

9    papers that went to publishers, and we don't have a

10   complete set.  So our answer to that lack of having a

11   complete set -- and AstraZeneca said that those papers

12   don't exist.  So because we don't have that complete set,

13   we said, "Well, that's fine."  We don't have the documents,

14   but we would still like to depose the people who actually

15   had the communications with publishers in addition to, as

16   they're saying now, Mr. Freeberry, who was taken very early

17   on in the case and only in a 30(b)(6) deposition.  His

18   deposition itself has not been taken.

19       So that's the reason that we wanted the

20   individuals who actually had the communications with

21   publishers, because we don't have a complete set of

22   documents, and, therefore, can't construct the entire story

23   of how the communications occurred.

24       THE COURT:  Did you suspend his deposition, or did

25   you conclude it?

                                                    17

1        MS. CONNOLLY:  I believe we concluded it, your

2    Honor.  But the 30(b)(6) wouldn't necessarily have covered

3    the actual transmittals that occurred, and that was also a

4    30(b)(6) that was taken before we realized we didn't have a

5    complete set of these transmittal documents from the

                              Page 15

Hearing Transcript (00029026).TXT

6   defendant, because there were communications that were

7   ongoing when we were asking AstraZeneca, "We don't think we

8   have all these.  Can you try to find them?"  They said,

9   "Sure.  We'll try to find them."

10          And so it was only very recently that we learned

11   they were not going to be able to find the detailed lists

12   of the transmittals themselves, and, therefore, we would

13   need these depositions, which is why this issue came up in

14   the last two weeks of the class period.

15          THE COURT:  All right.  Anything else on these 12?

16          MS. CONNOLLY:  That's it for those 12, your Honor.

17          THE COURT:  All right.

18          I'll hear you, Counsel.

19          MS. HARRIS:  Good morning, your Honor.

20          Plaintiffs have had ample opportunity to develop

21   discovery with respect to Zoladex.

22          THE COURT:  Well, let's go through each one of

23   these people.  This is the way I want to deal with it.

24          MS. HARRIS:  Okay.  All right.  It might be

25   helpful if I let you know the number of deponents they have

☐                                                        18

1   already taken on Zoladex, many of which cover the same

2   business areas that these people, which she has listed this

3   morning, work with.

4          They have taken 25 current and former employees,

5   including the Marketing Department, five marketing product

6   managers for Zoladex, as well as marketing managers

7   responsible for oncology which included Zoladex.

Page 16

Hearing Transcript (00029026).TXT

8       They have also taken four current sales

9    representatives in addition to other witnesses who were

10   former sales representatives.  They've taken sales

11   management people, including regional sales managers and

12   district sales managers, all of whom have responsibility

13   for Zoladex.

14      They have also taken the pricing strategy manager,

15   as we've just discussed, and, in addition, they've taken

16   executives responsible for market, uh, for Zoladex,

17   including a vice-president of sales and marketing, soon to

18   be a senior vice-president of sales and marketing, as well

19   as the president of Zeneca, which is the predecessor

20   company to AstraZeneca, which is the unit that launched,

21   marketed and sold Zoladex for a decade of the 13-year class

22   period.

23      We believe, your Honor, that has been more than

24   enough opportunity for plaintiffs to develop the discovery

25   they need with respect... .

19

1       For example, they point to Chris Bowman as being

2    someone who could speak about contracts with doctors, but

3    they have already deposed two individuals who served as

4    regional oncology account managers, which are the people

5    directly involved in placing doctors into contractor

6    arrangements with AstraZeneca.

7       THE COURT:  All right.  Counsel, what makes you

8    think that Mr. Bowman has additional information?

9       MS. CONNOLLY:  Because he was the one, your Honor,

Page 17

Hearing Transcript (00029026).TXT

10   who was responsible for developing the Buy Program itself.

11   There has been no one thus who has testified that they could

12   talk about what motivated the formation of that program,

13   what considerations the company looked at in making that

14   program.  These were only people -- people who have been

15   deposed are people responsible for implementing what

16   Mr. Bowman did.  So we want to talk to Mr. Bowman who was

17   responsible for starting the program in the first instance.

18            THE COURT:  All right.

19            MS. HARRIS:  Your Honor, I respectfully disagree

20   with plaintiffs on this point.  They have had the

21   opportunity to ask executives responsible for these programs

22   those questions, and they have not done so.  They have done

23   so in a superficial way, but they had plenty of opportunity

24   to ask all the questions they needed.

25            Mr. Bowman was merely a sales representative at

                                                          20

1    AstraZeneca.  He is not an executive or a manager in any

2    way.

3            THE COURT:  Well, is it true that he invented the

4    Buy Group Program?

5            MS. HARRIS:  I'm not aware that that is true, your

6    Honor.  One witness thought -- said that he thought Chris

7    Bowman may have been responsible for that program.  I don't

8    know whether Mr. Bowman would say that is accurate.  Again,

9    he's a sales representative.  He is not a marketing manager

10   or a marketing executive, nor is he in charge of sales and

11   marketing for AstraZeneca, and I don't believe he ever has

Hearing Transcript (00029026).TXT

12   been.

13          The testimony that the witnesses plaintiffs have

14   deposed pursuant to an agreement between the parties to

15   allow the plaintiffs to take more than double the limit

16   allowed under the rules, has provided over a hundred hours

17   of testimony relating to all aspects of the sales,

18   marketing and pricing of Zoladex.  It's covered the entire

19   time period of the class, uh, class the plaintiffs are

20   seeking to certify here, or is, uh, certified according to

21   Judge Saris' opinion.  So again, your Honor, we believe

22   they've had ample opportunity.

23          Importantly, 400 out of the 500,000 pages that

24   were produced relating to Zoladex were produced in January

25   of 2003, almost three years ago at this point, and that

☐                                                            21

1    production was substantially complete in June of 2004.

2    Over a year later, plaintiffs took their first deposition

3    relating to Zoladex.  Again, they've had plenty of

4    opportunity to take all of the depositions they believed

5    they needed, and they have not taken that opportunity.

6          So we believe --

7          THE COURT:  All right.  I'm going to allow them to

8    take the depositions of Davies, Simpson, Chen, Bowman and

9    Reisnauer.  The depositions of Robbins, Wilson and Judy must

10   all be done on one day.  So you're limited.  I'm not going

11   to permit another 30(b)(6).

12          I'll allow you to do the deposition of Freeberry

13   limited to three hours on direct, and I'm not going to

Page 19

EXHIBIT 2



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

)
)
)
)
)

MDL NO. 1456
CIVIL ACTION NO.
01-12257-PBS

---

## CASE MANAGEMENT ORDER NO. 10

March 25, 2004

Saris, U.S.D.J.

### I.   PHASING OF DISCOVERY

1.  Discovery shall be permissible with respect to all
parties, claims and issues not dismissed under the February 24,
2004 Memorandum and Order.  Discovery, motion practice and trial
shall occur in two phases.

2.  Phase 1 shall consist of a "fast track" in which five
Defendants will litigate all phases of the case through summary
judgment.  The cases against those five companies shall proceed
on the Phase 1 schedule set below.  Phase 2 shall consist of a
"regular track."

3.  The case is referred to Chief Magistrate Judge Bowler
for case management and all non-dispositive matters.

### II. ADDITIONAL DISCOVERY RULES

1.  To the extent they have not done so, all Defendants are
directed to supplement their document productions under the order
of this Court dated October 28, 2002 (relating to production of



documents produced to governmental bodies concerning AWP matters)
by producing all documents relating to any drugs in Appendix A to
the AMCC, and all non-privileged documents relating to any drugs,
produced by any Defendant in response to recent subpoenas issued
by the House Energy and Commerce Committee, or any other
governmental body.  Defendants shall make these documents
available to counsel for the Plaintiffs for inspection and
photocopying within 30 days.

2.   The identification of a drug on the Phase 1 list
includes all NDC's for that drug, including NDC's not in the
AMCC.

3.   Any documents available in an electronic format shall be
so provided in that format, i.e., in an identical, usable
electronic format.  If issues regarding compatibility of computer
systems and software arise, the producing parties shall confer to
resolve the matters.

4.   A responding party to an initial document request shall
complete production of all documents within sixty (60) days of
service of such request.  Any dispute over the document request
(i.e., overbreadth or burden) shall be presented to the
magistrate judge within 30 days after service of the request
after the parties have conferred.  Even if there is a dispute
over a document request, the undisputed documents shall be
produced within 60 days.

2



5.  Privilege logs shall be provided 14 days after a production, and shall provide reasons for each document withheld from production, as well as for each redaction from a document produced.  There shall be no redaction of documents by any party on any basis other than a bona fide claim of a recognized lawful privilege.  No stamps of "confidential" or the like shall be on the text of a document.  All documents shall be produced in their original size.

6.  Each Defendant shall produce 30(b)(6) witnesses within 45 days of such a request.

7.  A party shall provide a "three week deposition notice" under which such party provides at least 21 days notice for a proposed deposition.  A responding party may suggest an alternative date no later than seven more working days from the original notice.  The parties shall confer in good faith.  Any motion for a protective order shall be filed at least five working days before the scheduled deposition; any response shall be filed within two working days.

8.  No deposition of a witness by a deposing party shall be longer than twenty-one hours unless agreed by the parties or permitted by court order.  The non-deposing party shall have seven hours for cross-examination.  There shall be two hours for re-direct and two hours for re-cross.



### III.   PHASE 1 SCHEDULE

The following five companies from the AMCC are subject to the Phase I fast track: AstraZeneca; the BMS Group (Bristol-Myers, OTN and Apothecon); the GSK Group (GlaxoSmithKline, SmithKline Beecham and Glaxo Wellcome); the Johnson and Johnson Group (J&J, Centocor and Ortho); and the Schering-Plough Group (Schering and Warrick).

The schedule shall be as follows for Phase I:

1.   Plaintiffs' Motion for Class Certification on Phase 1 shall be filed by September 3, 2004.

2.   Plaintiffs' Disclosure of Expert Reports in Support of Motion for Class Certification filed by September 3, 2004.

3.   Discovery of Plaintiffs' Experts on Class Certification completed by October 4, 2004.

4.   Defendants' Opposition to class certification to be filed by October 25, 2004, along with any expert reports.

5.   Discovery of Defendants' experts completed by November 23, 2004.

6.   Plaintiffs' Reply on Class Certification filed by December 1, 2004.

7.   Any surreply shall be filed by December 8, 2004.

8.   Hearing on Class Certification on December 17, 2004 at 2:00 p.m.

9.   Close of Phase 1 Fact Discovery on January 30, 2005.



E-SERVED
03/25/04
03:34 PM ET
MDL No.1456

10.   Plaintiffs serve liability expert reports on January 31, 2005.

11.   Defendants serve expert reports on liability on February 28, 2005.

12.   Close of Expert Discovery on March 30, 2005.

13.   Summary Judgment Motions filed no later than April 15, 2005.

14.   Oppositions due May 2, 2005.

15.   Replies due on May 16, 2005.

16.   Any surreply on May 30, 2005.

17.   Hearing on Motions for Summary Judgment on June 8 , 2005 at 2:00 p.m.

### IV.   PHASE 2 SCHEDULE

1.   After the Court's ruling on the Phase 1 certification motion, the Court shall set a Phase 2 briefing schedule on class certification.  Plaintiffs shall be prepared to file the motion for class certification within sixty (60) days of the Court's ruling.

2.   Fact discovery on Phase 2 will close on October 3, 2005. Plaintiffs shall file expert reports on November 1, 2005. Defendant shall file expert reports on December 1, 2005.  Expert discovery shall be completed by January 16, 2006.  Any motion for summary judgment shall be filed by January 30, 2006.  Any opposition shall be filed by February 12, 2006.  Any reply by



February 27, 2006, and the sur-reply by March 13, 2006.

### V.  <u>Together Rx</u>

After some reflection, I have placed the Together Rx program on the regular track.  As I read the two proposals, creation of a third track seems unwieldy and confusing.  In particular, the issues involving product-specific discovery for 170 drugs involved in the Together Rx program seem too complex to resolve on a fast track.  Nothing in this order precludes Defendants from moving for summary judgment earlier.

### VI.  <u>MISCELLANEOUS</u>

To protect the integrity of the MDL process, Defendants shall notify the Plaintiffs and the Court in writing of any attempts to settle any of the claims before this Court in another jurisdiction upon commencement of such discussions.  Failure to do so may result in injunctive relief, contempt sanctions, and refusal to give any judgment preclusive effect.

### VII.  <u>BRIEFING</u>

No brief shall be longer than 20 pages, unless advance permission of the Court is obtained.

### VIII.  <u>MEDIATION</u>

Within 30 days, the fast track parties shall propose a process and schedule for mediation.

### IX.  <u>CASE MANAGEMENT</u>

The case management order is applicable to all related cases



brought by the state and county governmental entities.  When I resolve the pending motions, I will enter a separate case management order.

<u>S/PATTI B. SARIS</u>
United States District Judge

# EXHIBIT 3

**From:**      Patrick Howard
**To:**        Muehlberger, James P. (SHB)
**Date:**      10/21/2005 12:26:01 PM
**Subject:**   G.R. Green.

Jim,

Pursuant to our conversation, just want to confirm that you will be producing G.R. Green at your D.C. office on Nov. 11. Should we start at 10:00 a.m.?


Thanks,
Pat.

Patrick Howard, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street
Suite 2500
Philadelphia, PA 19103
(T) 215.496.0300
(F) 215.496-6611
phoward@srk-law.com


**CC:**        Alicia Sandoval;  smacmenamin@heinsmills.com

# EXHIBIT 4

**From:**      Patrick Howard
**To:**        McCully, Robert J. (SHB)
**Date:**      10/26/2005 3:29:35 PM
**Subject:**   Re: FW: John DuPont

November 21 works for me Rob,  thank you.
I figured we would be in NYC.
Start the dep. at 10?


Patrick Howard, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street
Suite 2500
Philadelphia, PA 19103
(T) 215.496.0300
(F) 215.496-6611
phoward@srk-law.com

>>> "McCully, Robert J. (SHB)" <RMCCULLY@shb.com> 10/26/2005 3:00:39 PM >>>
Pat,

It may make sense to re-schedule Mr. DuPont's deposition for later in the month of November.  We've only recently been able to secure a copy of his electronic files pursuant to your document request, and it will be at least 10 days from now before a review and production of any responsive documents can occur.

I've spoken with Mr. DuPont regarding alternative dates in November.  He has the following dates available for us to work with:  November 21-22, and November 28-29.  November 11 is also possible, but that may be pushing it as far as production of any electronic files go.  Since Mr. DuPont resides on Long Island, we'd also suggest changing the place of the deposition to NYC once again (bring the sunscreen for the bright room).

Please let me know if any of these alternative dates will work with your schedule.


-----Original Message-----
From: Muehlberger, James P. (SHB)
Sent: Wednesday, October 26, 2005 8:54 AM
To: McCully, Robert J. (SHB)
Cc: Koon, Michael L. (SHB)
Subject: Fw: John DuPont


FYI
---------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Patrick Howard <PHoward@srk-law.com>
To: Muehlberger, James P. (SHB) <JMUEHLBERGER@shb.com>
Sent: Wed Oct 26 08:54:02 2005
Subject: John DuPont

Jim,

His depo. was noticed for Nov. 8.  Do you know where we stand?

Can you let me know when you have a chance.

Thanks,
Pat.

Patrick Howard, Esq.
Spector, Roseman & Kodroff, P.C.
1818 Market Street
Suite 2500
Philadelphia, PA 19103
(T) 215.496.0300
(F) 215.496-6611
phoward@srk-law.com


"MMS <shb.com>" made the following
 annotations on 10/26/05 14:00:50

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.


CC:          Muehlberger, James P. (SHB);  smacmenamin@heinsmills.com