# Exhibit E

# HOGAN & HARTSON
L.L.P.

JUN 2 4 2005

JOSEPH H. YOUNG
PARTNER
(410) 659-2775
JHYOUNG@HHLAW.COM

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981
WWW.HHLAW.COM

June 23, 2005

*CONTAINS HIGHLY CONFIDENTIAL
INFORMATION; SUBJECT TO
PROTECTIVE ORDER ENTERED
IN MDL NO. 1456*

*BY FEDERAL EXPRESS*

Steve W. Berman, Esquire
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

   Re: Amgen Inc. Data Production – Average Wholesale
     Pricing Litigation, MDL No. 1456

Dear Steve:

  As discussed previously, I am forwarding herewith sales and related data responsive to the plaintiffs' requests for production of documents in the MDL proceedings in Boston. I am also enclosing related documentation in connection with each of the separate data disks to be used in interpreting the data. For ease of reference, the materials being produced herewith have been labeled, "AMGN_AWP_09000001 through AMGN_AWP_09000050."

  In an effort to assist your review of this information, and based on our understanding of the Company's systems, I am providing the following description of the materials bering produced with this letter:

  1. <u>JDE-Sales</u>. The JDE-Sales data contains records from Amgen's J. D. Edwards System related to sales and returns for certain of Amgen's commercial products. JDE records transactions with direct customers, including wholesalers and health care providers. The date range for this data production is

HOGAN & HARTSON L.L.P.

*CONTAINS HIGHLY CONFIDENTIAL
INFORMATION; SUBJECT TO PROTECTIVE
ORDER ENTERED IN MDL NO. 1456*

Steve W. Berman, Esquire
June 23, 2005
Page 2

8/13/93 (beginning of system) through 12/31/01.[1] Each of the following products is included in this data set: Aranesp, Epogen, Kineret, Neupogen, and Neulasta.

    2.    <u>JDE-Credits</u>. The JDE-Credits data contains records from Amgen's JDE System related to credits for a variety of payments to direct customers. Invoices tracked by this data are dated from 8/13/93 (beginning of system) through 12/31/01, and include credits related to chargebacks, wholesaler rebates, and contractual payments related to sales of Aranesp, Epogen, Kineret, Neupogen, and Neulasta.

    3.    <u>CCS-Chargebacks</u>. The CCS Chargebacks data contains records from Amgen's Contract and Chargeback System. This system tracks requests from wholesalers for reimbursement of the difference between the contracted price at which a product is sold to Amgen customers and the price that the wholesaler paid for that product. Transactions tracked in this data set cover the time frame from 4/1/94 through 12/31/01, and include sales of Aranesp, Epogen, Kineret, Neupogen, and Neulasta.

    4.    <u>CCSCR-Check Register</u>. The CCS Check Register data contains data from Amgen's CCS System tracking checks issued for payments under Amgen's sales contracts. The data relates to payments made from 1/4/94 (beginning of the system) through 12/31/01, and relates to contract sales of Aranesp, Epogen, Kineret, Neupogen, and Neulasta.

    5.    <u>Excel Check Register</u>. The Excel Check Register contains data in Excel file format from 1/91 through 12/01, and records contractual payments made to customers. There is some overlap or duplication of payments between the Excel Check Register and the CCS-Check Register.

    6.    <u>Payment Statement Calculations</u>. The Payment Statement Calculations contain image files of Amgen's Payment Statement Calculations related to payments made to Amgen customers pursuant to sales contracts for certain Amgen commercial products. The reports cover the time frame from Q1

---

[1] All data in this production is being provided without waiver of any objections that Amgen has made regarding scope and time frame of plaintiffs' requests.

HOGAN & HARTSON L.L.P.

*CONTAINS HIGHLY CONFIDENTIAL
INFORMATION; SUBJECT TO PROTECTIVE
ORDER ENTERED IN MDL NO. 1456*

Steve W. Berman, Esquire
June 23, 2005
Page 3

1998 (when reports became available electronically) through Q4 2001 and relate to sales of Aranesp, Epogen, Kineret, Neupogen, and Neulasta.

      7.    <u>CCS Nominal</u>. The CCS Nominal data set contains records from Amgen's CCS System describing customers and contracts. It contains tables identifying contracts, contracted product pricing, contractual rebates, customer information, and related information to facilitate linking of data between different systems. The information contained in the production set covers customer relationships from 1/1/91 through 12/31/01. Although the CCS System did not come online until 1994, certain descriptive information relating to contacts and customer relationships prior to that time has been entered into the system.

In addition, and as noted, we are also producing entity relationship diagrams and tables relating to field names and field descriptions for each of the data sets, to assist you in reviewing and interpreting the data. As you, Steve Barley, and I discussed during our telephone conference several weeks ago, we would be happy to arrange for an informal discussion between consultants and/or information systems analysts or technicians should you or your consultants have questions relating to this production.

The information set forth in this letter and in the accompanying CDs and related documents have been designated "Highly Confidential" pursuant to the terms of the Protective Order entered in MDL No. 1456 and should be handled accordingly. If you have any questions in this regard, please let me know.

As always, should you have any questions regarding this production or any aspect of the case, please feel free to call Steve Barley me.

                              Very truly yours,

                              Joseph H. Young

JHY/ct
Enclosures
cc:    Steven F. Barley, Esquire



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hbsslaw.com

May 13, 2005

***Via Facsimile***

Mr. Frank A. Libby
Kelly Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, MA  02110

    Re:    <u>AWP Litigation</u>

Dear Mr. Libby:

    We are awaiting your response to my letter of April 21, 2005 regarding a meet and confer.

                              Sincerely,

                              Steve W. Berman

SWB:hw

1534.16 0310 LTR.DOC



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hbsslaw.com

May 13, 2005

***Via Facsimile***

Mr. Frank A. Libby
Kelly Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, MA  02110

    Re:    AWP Litigation

Dear Mr. Libby:

    We are awaiting your response to my letter of April 21, 2005 regarding a meet and confer.

    Sincerely,

    Steve W. Berman

SWB:hw

1524.16 0310 LTR.DOC



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Steve W. Berman
(206) 224-9320
steve@hbsslaw.com

May 13, 2005

***Via Facsimile***

Mr. Frank A. Libby
Kelly Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, MA 02110

    Re:   AWP Litigation

Dear Mr. Libby:

    Please get back to me on when we can receive the data referred to in my letter of April 20, 2005, as well as dates for the 30(b)(6) we noticed.

                  Sincerely,

                  Steve W. Berman

SWB:hw

1534.16 0305 LTR.DOC



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hbsslaw.com

April 21, 2005

*Via Facsimile*

Mr. Frank A. Libby
Kelly Libby & Hoopes
175 Federal Street
Boston, MA 02110

Re: AWP

Dear Mr. Libby:

Plaintiffs wish to have a meet and confer regarding Amgen's responses to plaintiffs' Omnibus requests. Your response was dated June 4, 2004.

In addition to discussing logistics of the production we want to discuss responses to RFP Nos. 8, 10, 11, 13, 19 (which seems to limit the response), 22, 28 (there is nothing ambiguous in the industry with respect to "rebates, chargebacks, discounts, allowances, credits, price/volume discounts"), 36, 38, 39, 42 (don't agree to time cutoff), 49 (spread is not an ambiguous term), 52, 62 (should read the "use of AWP by any participant ..."), 70-72 (please propose a sampling method), 75-76 (a sampling won't suffice, we want financial information on fees paid to PBMs), 78-79 (same) (the notion that terms such as "administrative fees" are vague is frivolous) and Interrogatory No. 6.

Sincerely,

Steve W. Berman

SWB:dld

1534.16 0294 LTR.DOC



HAGENS BERMAN
SOBOL SHAPIRO LLP

hbsslaw.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hbsslaw.com

April 20, 2005

**Via Facsimile**

Mr. Frank A. Libby, Jr.
Kelly, Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, MA 02110

    Re:   <u>In re Pharmaceutical Industry AWP Litigation</u>

Dear Frank:

    As you are aware, the Court has issued CMO No. 14, which sets forth various pre-trial deadlines for the Phase II defendants, including a discovery cut-off of December 3, 2005. Plaintiffs have served your client, Amgen, with multiple requests for production and interrogatories that seek, among other things, financial data relating to the sales of drugs that are the subject of the AMCC (the "Subject Drugs"). Indeed, Plaintiffs' requests that Amgen produce financial information date back to June 2003.[1]

    Based on experience gained by working with the Phase I defendants, Plaintiffs have refined their requests for sales-related data. For each of the Subject Drugs (by NDC), please provide the following information in ASCII text file or similar electronic format for the relevant time period:

    (a)    All sales transaction data (as well as any discounts or any other price adjustments or offsets contained in the transaction data), including (i) price, (ii) number of units sold, (iii) transaction date, (iv) information sufficient to identify the type of transaction (*e.g.*, a sale, a return, etc.), (v) information sufficient to identify the product (*e.g.*, NDC, product description, form, strength, etc.), (vi) information sufficient to identify the customer,

---

[1] Plaintiffs' prior requests for financial data can be found in discovery sets served on your client on June 17, 2003 (Request Nos. 27-28); June 19, 2003 (Request Nos. 19, 34 and 35); December 3, 2003 (Request Nos. 18, 33-34; Interog. No. 1); and March 31, 2004 (Request Nos. 25-28; Interog. No. 1).

Mr. Frank A. Libby, Jr.
April 20, 2005
Page 2

      (vii) class of trade designations, and (viii) information sufficient to identify whether the units sold were intended for repackaging, along with the name of the repackager to which the units were sold.

(b) All chargeback transactions, including (i) amount, (ii) date of credit, and (iii) information sufficient to identify the customer, class of trade designations (if any), and wholesaler to which the chargeback was paid, and (iv) the underlying contract price paid by the ultimate customer.

(c) All rebate transactions, including (i) amount, (ii) date of rebate, (iii) information sufficient to identify the type of rebate, (iv) information sufficient to identify the customer, and (v) class of trade designations (if any).

(d) All administrative fee transactions, including (i) amount, (ii) date of payment, (iii) information sufficient to identify the type of administrative fee (if applicable), (iv) information sufficient to identify the customer, and (v) class of trade designations (if any).

(e) Any other discounts not reflected in the above (a through d), including but not limited to discounts achieved through bundling one product with another.

(f) Include complete documentation for all items above (a through e) such as lists of fields, descriptions of information contained in those fields (*e.g.*, field lengths, formats, etc.), and descriptions of any codes used in any fields (such as class of trade designations).

Exclude all sales to government entities (*e.g.*, State Agencies, Veteran's Administration Facilities, Military, Federal Government Programs, Public Health Service, etc.). Sales to all other entities should be included, including sales to hospitals.

    Plaintiffs request that Amgen produce this data in the above-requested format within 30 days. If you will be unable to provide this information within 30 days for all of the Subject Drugs, Plaintiffs ask that Amgen first produce the requested data for all physician-administered drugs within 30 days, followed by a supplemental production of data for the remaining drugs 30 days thereafter.

Mr. Frank A. Libby, Jr.
April 20, 2005
Page 3

    We have also enclosed Rule 30(b)(6) deposition notices on this topic so that Plaintiffs can learn about the manner in which Amgen maintains sales data for its Subject Drugs.

                                     Sincerely,

                                     Steve W. Berman



# HOGAN & HARTSON
L.L.P.

JOSEPH H. YOUNG
PARTNER
(410) 659-2775
JHYOUNG@HHLAW.COM

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981
WWW.HHLAW.COM

September 2, 2004

**VIA VERILAW**

Steve W. Berman, Esquire
Hagens Berman, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Re: In re Average Wholesale Pricing Litigation, MDL No. 1456

Dear Steve:

In response to your letter, and as I mentioned in my voicemail message to you yesterday evening, you are correct that Amgen agreed that it would not object to your filing of a surreply, should plaintiffs elect to do so. That remains the case. In the event plaintiffs decide to file a surreply, you are obviously authorized to represent in your motion for leave to file that Amgen has assented to the filing of the memorandum.

Please feel free to call me if you have any questions.

Very truly yours,

Joseph H. Young

JHY:jvd

WASHINGTON, DC
BERLIN   BRUSSELS   LONDON   PARIS   BUDAPEST   PRAGUE   WARSAW   MOSCOW   BEIJING   TOKYO
\\\BA - 58360/0066 - 178853v1 NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES



CAMBRIDGE   LOS ANGELES   PHOENIX [PLLC]   SEATTLE

hagens-berman.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

STEVE W. BERMAN
(206) 224-9320
steve@hagens-berman.com

September 1, 2004

**VIA VERILAW**

Joseph H. Young
HOGAN & HARTSON LLP
111 South Calvert Street, Suite 1600
Baltimore, MD 21202

  Re: In re Pharmaceutical Industry Average Wholesale Price Litigation
     MDL No. 1456

Dear Mr. Young:

  In your recent filing, you represent that plaintiffs assented to the reply. That is partially correct — plaintiffs, per my voicemail, agreed so long as Amgen agrees to allow a surreply. This was not mentioned in the papers which I assume was an oversight.

  Can you please correct this?

           Sincerely,

           Steve W. Berman

SWB:taw

1534.16 0196 LTR.DOC



# HOGAN & HARTSON
L.L.P.

JOSEPH H. YOUNG
PARTNER
(410) 659-2775
JHYOUNG@HHLAW.COM

December 3, 2003

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981
WWW.HHLAW.COM

Steve W. Berman, Esq.
Hagens Berman, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

      Re:    In re Average Wholesale Pricing Litigation, MDL No. 1456

Dear Steve:

      I am writing in response to your letter of November 25, 2003, regarding the scope of discovery to which you believe plaintiffs are now entitled following Judge Saris' comments from the bench during the November 21, 2003 hearing. You identify six Amgen products as to which you contend discovery can now proceed: Epogen, Enbrel, Kineret, Aranesp, Neulasta, and Neupogen.

      The first three of these products—Epogen, Enbrel and Kineret—fall outside the Court's comments regarding drugs subject to discovery. As plaintiffs concede in the Amended Master Consolidated Complaint, Epogen is not reimbursed in the Medicare Part B context based upon AWP. *See* AMCC ¶ 217 n. 1. Moreover, Enbrel and Kineret are self-administered drugs and thus are not reimbursed under Medicare Part B. Accordingly, under no circumstances should discovery proceed as to these three products at this time.

      As to the remaining three Amgen products, we believe that no discovery should be pursued until Judge Saris has ruled on Amgen's pending motion for a continued limited stay of discovery.

      Please let me know if you disagree with Amgen's position as set forth herein.

Very truly yours,

Joseph H. Young

JHY/ct
cc:    John B. Moriarty, Esquire
        Steven F. Barley, Esquire

WASHINGTON, DC
BRUSSELS   LONDON   PARIS*   BUDAPEST*   PRAGUE*   WARSAW   MOSCOW   TOKYO
NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES
WASHINGTON OFFICE: 555 THIRTEENTH STREET NW. WASHINGTON DC 20004-1109   TEL: (202) 637-5600   FAX: (202) 637-5910
*Affiliated Office*



**BOSTON   LOS ANGELES   PHOENIX   SEATTLE**

hagens-berman.com
225 FRANKLIN STREET, 26TH FLOOR • BOSTON, MA 02110
(617) 482-3700 • FAX (617) 482-3003



THOMAS M. SOBOL
(617) 217-2082
tom@hagens-berman.com

November 6, 2002

**VIA FACSIMILE**

Steven F. Barley
Joseph H. Young
Hogan & Hartson, LLP
111 South Calvert Street
Suite 1600
Baltimore, MD 21202

Frank A. Libby, Jr.
Douglas S. Brooks
Kelly, Libby & Hoopes
175 Federal Street
Boston, MA 02110

      Re:    In Re: Pharmaceutical Industry Average Wholesale Price Litigation
              MDL No. 1456
              *Attorneys for Amgen, Inc.*

Dear Counsel:

      This letter is to discuss the implementation of Case Management Order No. 5.

      As you are aware, on October 28, 2002 the Court entered an order requiring each Defendant to produce, on or before December 16, 2002, two specified categories of documents relating to (i) existing or previous investigations, and (ii) other legal proceedings. To make sure that the production occurs smoothly, I think it makes sense for us to discuss the method for document production by your clients.

      Accordingly, you should expect a telephone call from one of Plaintiffs' co-lead counsel in the next couple of days to discuss the document production. It would be helpful if you had available for our discussion certain basic information relating to the documents, including: (i) whether documents responsive to the Order exist, and if so, a basic description of the existing or previous investigations and/or other legal proceedings in which the documents were previously

Counsel
November 6, 2002
Page 2



produced; (ii) an estimate of the magnitude of the prior production or productions (whether in boxes, documents or pages); (iii) whether the documents exist in hardcopy and/or electronic format; (iv) whether any existing document indices exist with respect to the documents, and (v) the location of the documents to be produced.

I addressed previously the issue of the protective order. My office has heard from the sub-committee for the Defendants, and my hope is that we are able to resolve those issues in the meanwhile as well.

Very truly yours,

*Thomas M. Sobol* (aa)

Thomas M. Sobol

TMS:aa

cc:   All Counsel