# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | Judge Patti B. Saris |

### DECLARATION OF STEVEN M. EDWARDS

STEVEN M. EDWARDS, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a member of Hogan & Hartson L.L.P., attorneys for defendants Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp. and Apothecon, Inc. ("BMS"). I make this declaration in response to plaintiffs' motion to compel production of IMS data and reports. I have personal knowledge of the facts stated herein.

2. Plaintiffs' contention that BMS failed to produce IMS information in response to requests served in June 2003, December 2003 and March 2004 is simply incorrect. Even though IMS is mentioned only once in those requests (in a request for communications with IMS), BMS produced more than 250,000 pages of documents referring to IMS -- many of which were pricing reports or market share estimates that incorporated data from IMS. Prior to this most recent motion, plaintiffs have never suggested that BMS failed to produce documents in response to those requests because it did not produce the IMS data they now seek.

3. Plaintiffs' experts have also been well aware of IMS data for more than a year. One of plaintiffs' class certification experts, Stephen Schondelmeyer, wrote a paper in

\\NY - 58559/0059 - 917355 v1

June 2004 stating that IMS data "may be a good way to estimate acquisition costs for Medicare Part B drugs provided by clinics and physicians offices or by hospital outpatient facilities". (Schondelmeyer & Wrobel, Medicaid and Medicare Drug Pricing at 27 (June 2004.)) Plaintiffs' other class certification expert, Raymond Hartman, testified at length about IMS data at his deposition in October 2004. (Hartman Dep. Tr. 118-21, 261, 392-95.) Defendants' expert, Eric Gaier, discussed IMS data in his class certification report (Gaier Report 10/25/04 ¶ 55), and plaintiffs' counsel, Thomas Sobol, then questioned him about IMS data in November 2004 (Gaier Dep. Tr. 251-52).

4. When plaintiffs served their first request explicitly calling for IMS data in July 2005, BMS responded by agreeing to produce that data, provided plaintiffs would agree to sign a standard IMS Third-Party Access Agreement, which IMS requires for all productions of documents in connection with litigations. BMS then made a BMS employee who deals with IMS available to plaintiffs' counsel and their expert for an interview so they could clarify their requests. In addition, since the IMS data to which BMS has access only goes back six years, BMS agreed to ask IMS to retrieve additional data from its archives (at BMS's expense) going back to product launch.

5. Needless to say, we were surprised when we received on August 30, 2005, the day before the discovery cut-off, a new request seeking IMS data for 11 completely different drugs. I inquired whether plaintiffs were still requesting production of the IMS data requested in July and was informed that they were. BMS then served objections to the new request and took the necessary steps to produce documents in response to the first one.

6. In mid-October, plaintiffs' counsel called me and offered to drop the first request in its entirety if BMS would agree to produce IMS data in response to the second one.

This offer, of course, was of no benefit to BMS because it had already taken the steps, and spent the money, to produce documents in response to the first request. Indeed, if I had called my client in mid-October and told it to forget about the first request because plaintiffs now had a new request, it would have been highly annoyed, to say the least.

7. BMS has now produced all data called for by the first IMS request. Even if there were no discovery cut-off, plaintiffs' request for additional IMS data -- which it could have included in the July request -- would be objectionable. That the new request would effect a unilateral extension of the discovery cut-off for the benefit of plaintiffs only -- without prior leave of Court and without good cause shown -- makes it completely inappropriate.

8. The suggestion that defendants' alleged refusal to produce IMS data has somehow delayed plaintiffs' expert reports is particularly disingenuous. There is nothing that would have prevented plaintiffs from seeking the IMS data they now say they need months and even years ago. There is nothing that would have prevented plaintiffs from obtaining IMS data directly from IMS. If it is true that plaintiffs' failure to comply with the Court's order regarding the deadline for serving plaintiffs' expert reports is due to their inability to obtain IMS data (a dubious excuse at best), that failure is entirely of plaintiffs' own making.

I declare the foregoing to be true under the penalty of perjury.

New York, New York
November 4, 2005

Steven M. Edwards