UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil No.: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO THE AMENDED MASTER CONSOLIDATED CLASS ACTION | Hon. Patti B. Saris |

AMGEN INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION

INTRODUCTION

Plaintiffs' motion to compel production of documents from Amgen Inc. ("Amgen") rests on a series of demonstrably incorrect statements. Plaintiffs' motions papers ignore not only express agreements with Amgen, but also Amgen's independent and well-documented – but unfortunately unreciprocated – efforts to engage in meaningful discussions with plaintiffs regarding both the scope and timing of discovery. Among others, plaintiffs incorrectly state that:

➤ Amgen failed to timely serve written responses and objections. In fact, however, the record unequivocally demonstrates that plaintiffs expressly *agreed* to extend those deadlines;

➤ Amgen "manipulated" the discovery process, and mislead counsel in a related state court proceeding in Arizona regarding the status of discovery in this case. In fact, however, the record unequivocally demonstrates that Amgen specifically advised plaintiffs' counsel in that action of its desire to coordinate discovery with this case, and specifically apprised plaintiffs in the state case that Amgen had not yet made a production of documents in the MDL proceeding, which plaintiffs' counsel acknowledged;

> ➢ Plaintiffs pushed to meet and confer regarding Amgen's responses. In fact, however, the record unequivocally demonstrates that it was Amgen that repeatedly requested to meet with plaintiffs, only to be rebuffed time and again by plaintiffs, who repeatedly delayed in responding to those repeated requests, slowing Amgen's ability to begin reviewing and producing documents in this case.

Plaintiffs' motion should be seen for what it is: an effort to recast plaintiffs' own delay in meeting and conferring with Amgen as a basis for seeking an extension of discovery deadlines as to the Track 2 defendants. Contrary to plaintiffs' counsels' assertions, there has been no waiver of objections based on untimely responses nor any effort by Amgen to delay responses. Instead, once the long-sought discussion with plaintiffs finally did occur, Amgen promptly undertook extensive efforts to collect, review and produce documents. Plaintiffs' suggestion that Amgen simply sat back and "did nothing" could not be further from the truth.

## ARGUMENT

I.  **Plaintiffs' Assertion that Amgen Waived Its Objections By Failing to Timely Respond to Discovery Requests is Flatly and Demonstrably False.**

   A.  **Timeliness of Amgen's written objections.**

The crux of plaintiffs' motion is that Amgen waived any and all objections and assertions of privilege because, according to counsel, Amgen failed to timely submit written responses to plaintiffs' Omnibus Requests for Production. Plaintiffs' Memorandum at 7. Nothing could be less true, nor easier to disprove. By letter to Thomas Sobol dated May 3, 2004, Amgen confirmed plaintiffs' agreement that, as a result of continuing discussions with plaintiffs, Amgen would not need to submit its written responses by the otherwise applicable deadline. *See*

2

Supplemental Declaration of Joseph H. Young ("Supp. Young Decl.") at ¶ 3 (attached hereto as Exhibit A) and attached Letter dated May 3, 2004 from Joseph H. Young to Thomas M. Sobol.  On May 24, 2004, Amgen confirmed that it would file written responses on or before June 3, 2004.  Exh. A, Supp. Young Decl. ¶ 4 and attached Letter dated May 24, 2004 from Joseph H. Young to Thomas M. Sobol. That deadline subsequently was extended by an additional day, *id.*, and Amgen filed its written responses and objections, on time and as agreed, on June 4, 2004. Exh. A, Supp. Young Decl. ¶ 5.  Plaintiffs' claim that Amgen's objections to the Omnibus Requests for Production were late is just plain – and provably – wrong.

B.   **Amgen's production is not untimely.**

Plaintiffs' assertion that strict compliance with Case Management Order No. 10 is required and that Amgen violated that order is also flatly inconsistent with the parties' prior discussions and agreements, the course of the parties' dealings in this case, and the plaintiffs' own conduct.  At the outset, and in the same letter memorializing the extended response time for serving written responses to plaintiffs' omnibus request, Amgen expressly advised plaintiffs, consistent with their prior discussions, that Amgen "will proceed with a **rolling production** of hardcopy documents" following further refinement of plaintiffs' requests.  Exh. A, Supp. Young Decl., Attachment 1.[1]  It was thus always

---

[1]   Amgen's May 3, 2004 letter to Thomas Sobol similarly memorializes the parties' agreement that, notwithstanding CMO No. 10, "neither side need present to the Magistrate Judge any apparent dispute regarding the discovery," given ongoing efforts to resolve such disputes through the meet and confer process.  *Id.*

3

understood that Amgen's production would be made on a rolling basis, subject to further meet-and-confers regarding scope. *Id.*

Indeed, plaintiffs' own course of conduct following Amgen's initial production of documents and data in June 2005 belies any suggestion that plaintiffs themselves expected or relied on Amgen to complete its production within a 60-day window, and shows it to be nothing more than a post-hoc game of "gotcha." First, Amgen's efforts to contact plaintiffs' counsel in late June were disregarded. Exh. A, Supp. Young Decl. ¶ 10. Perhaps even more telling, plaintiffs did not both to contact Amgen even after the passage of 60 days from the date that plaintiffs provided Amgen with their narrowed list of requests or from the date of Amgen's initial production to discuss the status of Amgen's production efforts. Plaintiffs' silence continued after 90 days. Indeed, it was only after Amgen had the temerity to correct patently inaccurate factual assertions made by plaintiffs in support of their motion to modify the Track 2 schedule in this case that plaintiffs thought to make such a claim.[2]

Plaintiffs' demand that Amgen should be bound to a 60-day turnaround time to complete its production similarly ignores plaintiffs' own course of dealing with virtually every other defendant in this litigation, including each of the so-called "fast-track five." As set forth in the attached correspondence dated

---

[2] Plaintiffs' failure to meet and confer with Amgen before filing its motion alone should serve as a basis for its denial. Indeed, the first that Amgen heard of plaintiffs' newly-minted position was when it read the Motion to Compel. Had plaintiffs contacted Amgen, as the rules contemplate, they would have learned that, consistent with Amgen's representations to the Court on October 6, 2005, Amgen was prepared to make an initial rolling production of approximately 14,000 documents, and anticipated continuing productions on a rolling basis through November. Thus, to the extent plaintiffs' motion seeks to compel production of documents within 30 days, as Amgen advised plaintiffs in early October, Amgen is on track to make that happen.

June 10, 2004 between Steve W. Berman and each of the national counsel representing a "fast-track" defendant, plaintiffs agreed – as they did with Amgen – to "relax" the otherwise applicable 60-day requirement under Case Management Order No. 10 for those defendants. *See* Letter dated June 10, 2004 from Steve W. Berman to John T. Montgomery, Steven M. Edwards, D. Scott Wise, Erik Haas and Frederick G. Herold (attached hereto as Exhibit B).

Third, plaintiffs' sudden demand for precise adherence to deadlines ignores their own repeated failure to abide by deadlines established by the Court, including recent deadlines relating to the submission of expert reports; deadlines for identifying and making available class representatives for discovery; and deadlines for the production of documents relating to recently-identified proposed class representatives. Plaintiffs have not, for example, submitted expert reports by the October 1, 2005 deadline imposed by the Court. Similarly, and despite the passage of an October 16, 2005 deadline imposed by Judge Saris' in her August 16, 2005 decision on plaintiffs' motion for class certification, as of November 4, and despite other fast-approaching deadlines, plaintiffs had yet to complete their own production of documents in support of proposed amendments identifying individual class members. As such, plaintiffs can hardly be heard to complain about the timeliness of other parties' good faith efforts to respond to discovery.

    C.    **Amgen's well-documented good faith efforts to respond.**

Plaintiffs' lack of entitlement to any relief is perhaps most clear in light of Amgen's lengthy and well-documented efforts to meet and confer with

5

plaintiffs (a necessary first step before a meaningful review can begin) regarding the scope and timing of discovery over the course of this litigation.[3] Contrary to plaintiffs' self-serving and unsupported claims regarding their own supposed efforts "to persuade Amgen to meet its discovery obligations," *see* Plaintiffs' Memorandum at 5, the record quite plainly establishes that *Amgen* – and not plaintiffs – was the driving force behind those efforts. As set forth more fully in the defendants' opposition to plaintiffs' motion to modify the Track 2 discovery schedule, Amgen repeatedly tried to keep discovery on track in late 2004 and early 2005. Had Amgen been able to bring plaintiffs to the table as it had hoped, plaintiffs would not be in the fix in which they now find themselves.

First, it is important to bear in mind that unlike virtually any other defendant in this case, Amgen has been repeatedly dismissed from plaintiffs' original and amended complaints. Indeed, it was not until the Court's final order in February 2005 that it was clear that Amgen would remain in the case. As a result, Amgen specifically advised plaintiffs in June 2004 that it did not intend to respond to discovery until its status in the litigation was determined. *See* Exh. A, Supp. Young Decl., Attachment 3 at ¶ 4. Plaintiffs did not object or even respond.

Thereafter, it was Amgen – not plaintiffs – that ultimately sought to reinitiate discussions regarding discovery in December 2004, largely out of concern

---

[3] Amgen chronicled its efforts to set up a meet and confer, and thereafter, to obtain from plaintiffs a promised list of "narrowed" areas for production in response to Plaintiffs' Motion to Modify the Track Two Discovery Schedule. *See* Track Two Defendants' Opposition at 8, and attached Declaration of Joseph H. Young. For the convenience of the Court, a copy of that Declaration, together with exhibits, is included as Attachment 3 to the Supplemental Declaration of Joseph H. Young, Exhibit A hereto.

6

over the impact that further delay might have on Amgen's ability to complete discovery by the December 3, 2005, in the event that its then-pending motion to dismiss was denied. *Id.* at ¶ 5. Plaintiffs, however, failed to return phone calls, delayed meeting with Amgen for well over two months, and did not provide for more than five months – until May 26, 2005 – a promised "short list" of requests that Amgen had specifically advised plaintiffs in March it needed in order to *begin* its review of potentially responsive documents. *Id.* at ¶¶ 7-9.[4] As a direct result, Amgen was hobbled in its efforts to begin the time-consuming task of reviewing potential responsive documents until mid-June 2005. Since receiving the guidance it had for so long sought from plaintiffs, Amgen has devoted literally thousands of hours and millions of dollars in attorney, contract attorney, legal assistant and production costs, in an effort to expeditiously review and produce documents responsive to plaintiffs' requests, as modified. Had Amgen been able to begin that process in January 2005, its production would have been largely completed by the summer of 2005, well within the timeframe necessary for plaintiffs to complete

---

[4] In fact, Amgen's expectation and reliance on a further meet and confer before being able to undertake a review of documents was made clear to plaintiffs' counsel nearly a year earlier. In a May 24, 2004 letter to Thomas Sobol, (Exh. A, Supp. Young Decl., Attachment 2), Amgen noted the parties' understanding:

> Based on our discussions, it is my further understanding that we will proceed with a rolling production and what I anticipate will be a further meet-and-confer following your receipt and review of Amgen's answers and objections. We agreed that there may be ways to limit the requests to particular time frames, particular products, particular customers, particular sales representatives or Amgen employees, etc., based in part on our discussions and your review of the pricing and sales information contained in the electronic data. In addition, we discussed, but have yet to agree upon, ways in which requests involving other electronic databases (Word documents, emails, etc.) might be limited by using key search terms, identifying particular employees as authors and/or recipients, etc.

7

discovery by December 3, 2005. Simply put, plaintiffs' problem is of their own making – not Amgen's.

## II. Plaintiffs' Assertion that Amgen has "Manipulated the Discovery Process" Is Demonstrably False.

Despite its lack of relevance to the motion to compel here, plaintiffs assert that Amgen somehow misled counsel in an Arizona state court proceeding regarding the status of discovery in the MDL. Specifically, plaintiffs conjure up a claim that Amgen led them to believe that Amgen had produced documents in this litigation when, in fact, it had not. Again, plaintiffs' assertions do not square with the truth. Instead, the record clearly demonstrates repeated efforts (conveniently omitted from plaintiffs' papers) by Amgen's counsel to engage in a meet-and-confer in an effort to coordinate ongoing discovery negotiations regarding scope and timing in the MDL proceeding, as more fully described above.

Far from misleading counsel in *Swanston*, Amgen expressly advised them of precisely what it was trying to do: coordinate discovery in the Arizona case with ongoing negotiations regarding scope and timing of a production in the MDL. More to the point, by letters dated January 31, 2005, February 2, 2005, and February 16, 2005 (appended hereto as a group exhibit to the Declaration of Steven F. Barley, attached as Exhibit C), Amgen not only made clear that it was willing to produce documents to plaintiffs, subject to a further meet and confer, but also that 1) Amgen had *not yet produced* documents in the MDL (as a result of pending and repeatedly successful motions to dismiss Amgen from that proceeding) and 2) the anticipated production in the Arizona case, consistent with the Arizona court's

8

designation of the *Swanston* case as a "coordinated case," would be "of a scope and at a pace consistent with any production in the MDL." *See* Exh. C, Barley Decl. at ¶ 5 and Attachment 1 (Letter dated February 2, 2005, from Steven F. Barley to TerriAnne Benedetto). Plaintiffs are, however, correct about one thing: to date, Amgen has yet to make a production in that case. The reason? Because, at plaintiffs' request, the case was stayed in its entirety only weeks after Amgen's last communication with plaintiffs' counsel in that case (on February 16, 2005) reiterating Amgen's request for a further meet and confer in that case, consistent with its designation as a coordinated proceeding. *Id.* at ¶ 7. Mention of this fact also is conspicuously absent from plaintiffs' motion and supporting papers.

### III. Plaintiffs Are Not Entitled to the Relief Requested.

The relief requested, unwarranted under almost any set of circumstances, is particularly unwarranted where, as here, plaintiffs' factual assertions in support of its motion are flatly contradicted by the written record in this case, which makes clear that the deadlines for Amgen's production were agreed upon by the parties every step of the way, and that any delay in Amgen's ability to respond is uniquely of plaintiffs' own making.

Waiver is a particularly harsh sanction in the context of a discovery dispute. *See, e.g., Heavin v. Owens-Corning Fiberglass*, 2004 WL 316072,*1 (D. Kan. 2004). Courts have been particularly "circumspect in finding a waiver of a privilege objection," *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361-63 (D. Kan. 1995) (collecting cases), and generally reserve waiver to those cases

9

where a party engages in "inexcusable conduct," "bad faith," or other "flagrant violations." *Rivera*, 190 F.R.D. at 300; *see also* MOORE'S FED.PRAC. & P. § 26.90[1] ("waiver of privilege is the most extreme sanction that a court can impose for failure to follow required procedure," and courts should reserve it for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests). Cases involving "good faith attempts at complying, and some notice to the opposing party of the privilege objections . . . do not result in waiver of the privilege." *Rivera*, 190 F.R.D. at 300 (internal quotation marks and citations omitted); *see also First Sav. Bank, F.S.B.*, 902 F. Supp. at 1361-63 (collecting cases); *Scaturro v. Warren and Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995) ("Rule 34 does not by its terms provide that objections will be deemed waived; rather, a waiver appears to be more in the nature of a sanction for more egregious conduct.").

With that standard in mind, the facts of this case plainly do not warrant *any* relief, let alone the particular relief requested. Amgen made repeated efforts to meet with plaintiffs during the late winter of 2004 and early spring of 2005, and repeatedly requested that plaintiffs provide the more specific list of requests that they had agreed to provide. What is more, Amgen made clear that, without the list, it was unable to begin the process. Once it obtained plaintiffs' proposal, it promptly initiated its review and has begun a rolling production of documents that it expects will continue through November. To this extent, plaintiffs' motion – which seeks production of responsive documents within 30 days – is moot.

The cases relied upon by plaintiffs in support of their motion stand in stark contrast to the facts of this case. In *Demary v. Yamaha Motor Corp.*, 125 F.R.D. 20, 22 (D. Mass. 1989), for example, before finding that a party had waived objections, the court recounted an almost total failure to participate in the discovery process, including not only a failure to timely file written responses and objections, but also the defendant's clear violation of a discovery order entered in response to an earlier motion to compel.

Far from ignoring discovery obligations, the record in this case makes clear that Amgen sought to work with plaintiffs' counsel to devise a discovery timeline and process that, had plaintiffs responded in timely fashion, would have accommodated plaintiffs within the timeframe envisioned by the Court for Track Two discovery. *See* Fed. R. Civ. P. 29 (allowing the parties to modify discovery procedures without leave of the court provided that court-ordered deadlines and schedules remain unaffected). In accordance with these agreements with opposing counsel, Amgen has 1) provided responses and objections to plaintiffs' discovery requests; 2) made Rule 30(b)(6) representatives available for deposition over the course of two days in May 2004; 3) produced transactional data and related documents; and 4) begun a rolling production of documents responsive to plaintiffs' modified requests.[5]

---

[5] Plaintiffs also argue that Amgen's failure to produce a privilege log somehow waives its ability to assert privilege. This is nonsense. First, Amgen can hardly provide a log relating to productions it is still in the process of making. Second, CMO No. 10, on its face, does not require a party to provide a privilege log until 14 days *after* a production is complete. CMO No. 10 at ¶ 5.

11

Lastly, plaintiffs ask the Court to exercise its inherent authority to manage the judicial process and sanction Amgen for "its outrageous refusal to produce documentary evidence." (Pls.' Mem. at 8.) Plaintiffs invoke the Court's inherent power to sanction misconduct in order to secure both a waiver of Amgen's discovery objections and a monetary penalty in the amount of $100,000. While it is unquestionably true that the Court has the inherent power to manage the judicial process, plaintiffs have failed to marshal supportable facts sufficient to show any kind of misconduct on Amgen's part that might even arguably be deserving of sanctions.[6] The cases relied upon by plaintiffs as support are not to the contrary. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (district court did not abuse its discretion in dismissing the plaintiff's action as a result of plaintiffs' fraud on the court as a result of its submission of a falsified complaint); *Petroleum Ins. Agency, Inc. v. Hartford Acc. and Indem. Co.*, 106 F.R.D. 59, 63 (D.C. Mass. 1985) (imposing sanctions in the form of a continuance and attorney's fees incurred in connection with the motion as a result of plaintiff's and plaintiff's attorney's

---

Plaintiffs' reliance on *Marx v. Kelly, Hart & Hallman, P.C.* 929 F.2d 8, 12-13 (1st Cir. 1991), for the proposition that Amgen's supposed failure to provide a privilege log constructively waives objections as to privilege, is similarly misplaced. In contrast to Amgen's efforts in this case, the plaintiff in *Marx* "did nothing" in response to the defendant's discovery requests. 929 F.2d at 9. "He neither produced the requested documents, objected to the request, nor sought an extension of time from the district court." *Id.* The course of dealing between Amgen and plaintiffs described above belies any contention that Amgen "did nothing" in response to plaintiffs' discovery requests, and Amgen has offered to provide plaintiffs with a privilege log, either on a rolling basis or at the end of the production, at plaintiffs' option.

[6]   Sanctions would not, in any event, be payable to plaintiffs. Although the facts of this case do not, as discussed above, warrant the more traditional relief, let alone sanctions, requsted in plaintiffs' motion, in those instances in which sanctions are determined appropriate, under either Rule 37 or Rule 16, they are to be paid into the registry of the district court – and not to a party. *See, e.g., Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 n.10. (1st Cir. 1993).

failure to verify the collection of responsive files or to inventory the files actually produced).

## CONCLUSION

For the reasons set forth herein, Amgen respectfully submits that plaintiffs' motion to compel production and for sanctions is without merit and should be denied.

Respectfully submitted,

/s/ Frank A. Libby, Jr.
Frank A. Libby, Jr.
Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, Massachusetts 02110
Telephone: (617) 338-9300
Facsimile: (617) 338-9911

Joseph H. Young
Steven F. Barley
Hogan & Hartson L.L.P.
111 S. Calvert St., Suite 1600
Baltimore, Maryland 21202
Telephone: (410) 659-2700
Facsimile: (410) 539-6981

Dated: November 7, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Amgen Inc.'s Opposition to Plaintiffs' Motion to Compel Production was, this __7__ day of November, 2005, served electronically via Lexis/Nexis on all counsel of record in this matter.

_____