# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | Judge Patti B. Saris<br>Magistrate Judge Marianne B. Bowler |

## DECLARATION OF JENNIFER FOUNTAIN CONNOLLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER EXEMPTING DEFENDANT ABBOTT LABORATORIES FROM ANY ORDER DECLINING TO EXTEND DEADLINE FOR TRACK TWO DISCOVERY

I, Jennifer Fountain Connolly, declare as follows:

1.      I am one of plaintiffs' attorneys in this matter and have been negotiating with defendant Abbott Laboratories ("Abbott") regarding discovery issues in this case.  I submit the following Declaration in support of Plaintiffs' Motion for Order Exempting Defendant Abbott Laboratories From Any Order Declining to Extend Deadline for Track Two Discovery.

2.      Attached as Exhibit A to this Declaration is a true and correct copy of a letter to Elizabeth F. Hartweg from Jeremy P. Cole dated December 20, 2002.  Attached as Exhibit B to this Declaration is a true and correct copy of a letter to Elizabeth F. Hartweg from Jeremy P. Cole dated January 2, 2002.  Even though the letter is dated January 2, 2002, the letter arrived at my office on January 2, 2003.  Further, attached as Exhibit C to this Declaration is a true and correct copy of a letter to Elizabeth Hartweg from R. Christopher Cook, dated April 26, 2004.

3.      Attached as Exhibit D is a true and correct copy of Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, Tap, and Watson and To

All Other Defendants With Respect to Drugs That Were Previously Subject To Discovery ("Omnibus Requests.").

4.　　Attached as Exhibit E is a true and correct copy of a letter to Christopher Cook from Elizabeth Fegan Hartweg dated May 3, 2004.  Attached as Exhibit F is a true and correct copy of a letter to Elizabeth Hartweg from Christopher Cook dated May 6, 2004.

5.　　Attached as Exhibit G is a true and correct copy of a letter to Elizabeth Hartweg from R. Christopher Cook dated June 1, 2004.  Further attached as Exhibit H is a true and correct copy of Defendant Abbott Laboratories' Responses to Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, Tap, and Watson and To All Other Defendants With Respect to Drugs That Were Previously Subject To Discovery.

6.　　On May 18, 2005, I sent a lengthy letter to Abbott setting forth the deficiencies in its responses to the Omnibus Requests.  A true and correct copy that letter, addressed to Toni-Ann Citera, is attached as Exhibit I to this Declaration.  After sending Exhibit I, I had exchanged numerous letters with Abbott's counsel regarding its document production.  Attached as Exhibit J to this Declaration is a true and correct copy of a letter to Toni-Ann Citera and Beth A. O'Connor from me dated May 26, 2005.  Attached as Exhibit K to this Declaration is a true and correct copy of a letter to me from Beth A. O'Connor dated May 27, 2005.  Attached as Exhibit L to this Declaration is a letter to Beth A. O'Connor from me dated May 31, 2005.  Attached as Exhibit M to this Declaration is a true and correct copy of a letter to me from Beth A. O'Connor dated June 6, 2005.

7.　　Attached as Exhibits N, O, and P to this Declaration are letters reflecting Abbott's June 2005 further "government productions."  Exhibit N is a true and correct copy of a letter to

me from Beth A. O'Connor dated June 8, 2005.  Exhibit O is a letter to me from Beth A. O'Connor dated June 10, 2005.  Exhibit P is a letter to me from Beth A. O'Connor dated June 13, 2005.

8.      On July 15, 2005, I had a meet and confer with Beth O'Connor, one of Abbott's attorneys.  I memorialized that meet and confer in a letter to Ms. O'Connor, attached hereto at Exhibit Q, which is a true and correct copy of a letter to Beth A. O'Connor from me dated July 19, 2005.

9.      After sending Exhibit Q, I never received a letter from Abbott regarding its document production and never received a subsequent document production from Abbott until several days ago when, in response to a notice of deposition plaintiffs served, Abbott began producing documents again.  Exhibit R is a true and correct copy of a letter to me from Beth A. O'Connor dated November 4, 2005 enclosing those documents.

10.     Exhibit S is a true and correct copy of a Notice of Rule 30(b)(6) Deposition served by plaintiffs on April 20, 2005.  Abbott did not comply with CMO No. 10 and did not designate an appropriate individual within 45 days of the Notice.  Attached to this Declaration are Exhibits T and U, which are true and correct copies of letters reflecting Abbott's late designation.  Exhibit T is a letter to Beth A. O'Connor from me dated July 8, 2005.  Exhibit U is a letter to me from Beth A. O'Connor dated August 3, 2005.

11.     Attached as Exhibit V is a true and correct copy of a letter to Tina M. Tabacchi and Beth A. O'Connor from me dated August 17, 2005 requesting new dates for the 30(b)(6) deposition of Abbott.  I never received a response to that letter.

12.     Attached as Exhibit W is a true and correct copy of a letter to Tina M. Tabacchi and Beth A. O'Connor dated October 6, 2005 from me again requesting deposition dates.  I did not receive a response to that letter either.

13.     Attached as Exhibit X is a Notice of Rule 30(b)(6) Deposition plaintiffs served on May 16, 2005 regarding Abbott's electronic sales data.  Abbott produced three designees pursuant to that Notice for an informal telephone interview.

14.     Attached as Exhibit Y to this Declaration is a letter to Beth A. O'Connor from me dated August 16, 2005 asking Abbott to supplement its production of electronic sales data.  I never received any documents or data in response to this letter.


November 9, 2005                                  /s/ Jennifer Fountain Connolly
                                               Jennifer Fountain Connolly
                                               The Wexler Firm LLP
                                               One North LaSalle Street, Suite 2000
                                               Chicago, IL  60602
                                               Telephone: (312) 346-2222
                                               Facsimile: (312) 346-0022

# Exhibit A

## JONES, DAY, REAVIS & POGUE

77 WEST WACKER

CHICAGO, ILLINOIS 60601-1692

TELEPHONE: 312-782-3939 · FACSIMILE: 312-782-8585

jpcole@jonesday.com
(312) 269-4093

JP813144
080024-024270

December 20, 2002

**VIA FACSIMILE 312-346-0022**

Elizabeth F. Hartweg
Kenneth A. Wexler and Associates
One North LaSalle - Suite 2000
Chicago, Illinois 60602

          Re:     MDL No. 1456

Dear Beth,

        We have approximately twenty boxes of documents (ABT AWP/MDL 000091-036900)
that are ready to be picked up by your copier at Jones Day's Chicago office. These documents
were flagged by your reviewers for copying from the set of documents made available to you by
Abbott pursuant to CMO 5. Please call me at (312) 269-4093 to make arrangements to have
your copier pick up these documents and sign Exhibit A of the protective order. In addition to
these twenty boxes, there are documents in approximately five other boxes that were flagged by
your reviewers. We are in the process of designating those documents and hope to make them
available to you for copying on Monday, December 23, 2002.

        As you know, Abbott made 50 boxes of documents available to you pursuant to CMO 5.
These boxes, consecutively labeled 1 through 50, contained the following bates ranges:  ABT
000001-006661; ABT 200001-201911; ABT 202712-249242; ABT 275861-283118; TX ABT
00001-06345; CA ABT 00001-07283; AB 0000001-0020134; and ABT/PER 0001-1328.

        Your firm sent three representatives to Jones Day's offices to review these documents.
Per their instructions, we are producing the following documents for copying:  (1) documents in
boxes numbered 1-4, 6, 8, 22-24, 29, 31, 37-38, 40-43, and 49; and (2) certain, but not all, of the
documents in boxes numbered 7 (ABT 207665-208421), 10 (ABT 214464-214474), 13
(ABT228997-229150), 14 (ABT 235585-236159), 16 (ABT240583-240678), 17 (ABT 241912-
241932), 20 (ABT 247920-247944), 25 (TX ABT 00084-00149; 01147-01176; 01535-01708;
05756-05793; 05840-05853; 06222-06345), 28 (ABT 005539, 0066661), 34 (CA ABT 00001-
00198; 00964-01488), 36 (CA ABT 04554-05797), 45 (AB 0002823-0003405), and 46 (AB
0019258-0020134). Further to their instructions, we are not producing boxes numbered 5, 9, 19,
21, 26, 27, 30, 32-33, 35, 39, 44, 47, 48, and 50. Nor are we producing documents in boxes

ATLANTA · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON · IRVINE · LONDON · LOS ANGELES · MADRID
MENLO PARK · MILAN · MUMBAI · NEW DELHI · NEW YORK · PARIS · PITTSBURGH · SHANGHAI · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON
*ASSOCIATE FIRM

Elizabeth F. Hartweg                                  JONES, DAY, REAVIS & POGUE
December 18, 2002
Page 2

numbered 11, 12, 15, and 18, which your representatives instructed were not needed at this time, but may be requested later.

In addition to the documents we are making available to your copier, we produced to your representatives documents bearing control numbers ABT AWP/MDL 000001-000090, which constitute the various subpoenas pursuant to which Abbott produced the documents made available to you under CMO 5.

Finally, we recently were made aware of five additional boxes of documents responsive to CMO 5 that were not in Jones Day's possession. They have been transferred to Jones Day's Chicago office and are ready for review. Please call me to set up a time to review them. Due to the holidays, they will be available for your review on either December 23rd, 26th, or 27th or during the week of December 30th.

Please call me or Chris Cook if you have any questions.

Sincerely,

Jeremy P. Cole

# Exhibit B

## JONES, DAY, REAVIS & POGUE

77 WEST WACKER

CHICAGO, ILLINOIS 60601-1692

TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

jpcole@jonesday.com
(312) 269-4093

JP813144
080024-024270

January 2, 2002

**VIA FACSIMILE  312-346-0022**

Elizabeth F. Hartweg
Kenneth A. Wexler and Associates
One North LaSalle - Suite 2000
Chicago, Illinois  60602

Re:    MDL No. 1456

Dear Beth,

This letter memorializes that on December 23 and December 30, 2002, your copy vendor, The Medleh Group, took from Jones Day's offices documents bearing control numbers ABT AWP/MDL 000091 through 059171. These are the documents that you asked to be copied from the documents made available by Abbott pursuant to CMO 5. In response to your letter dated December 23, 2002, to the extent you would like copies of any of the remaining documents made available by Abbott, you may obtain such copies at your expense, provided that you give us an appropriate amount of time to control number any such documents and to designate them pursuant to the protective order.

On a related note, Dave Collier from The Medleh Group called my assistant in the afternoon of December 31, 2002, and indicated that your office instructed him to transfer the last five boxes of documents that Abbott made available pursuant to CMO 5 (ABT AWP/MDL 046222-059171) to The Copy Box for duplication. Before we released the documents to The Medleh Group, we had them sign a certification as required by the protective order. We have not received such a certification from anyone at The Copy Box as required by the protective order. Nor did we authorize your firm or The Medleh Group to release Abbott's documents to The Copy Box. To the extent you had the documents transferred to The Copy Box without obtaining a certification from them, you have violated the protective order.

Elizabeth F. Hartweg                          JONES, DAY, REAVIS & POGUE
December 18, 2002
Page 2


        Accordingly, we demand that you immediately produce a certification from The Copy
Box or, if you have not obtained such certification in violation of the protective order, that you
immediately retrieve the documents from The Copy Box or any other copy vendor that received
the documents in violation of the protective order.

                              Sincerely,


                              Jeremy P. Cole
                              Counsel for Abbott Laboratories

cc:   R. Christopher Cook, Esq.
      Kenneth Wexler, Esq.
      Thomas Sobol, Esq.
      Dave Collier, The Medieh Group

# Exhibit C

# JONES DAY

51 LOUISIANA AVENUE, N.W.

WASHINGTON, D.C. 20001-2113

TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

WRITER'S DIRECT NUMBER:
(202) 879-3734
christophercook@jonesday.com

April 26, 2004

**VIA FACSIMILE**

Elizabeth Hartweg
Kenneth A. Wexler and Associates
One North LaSalle - Suite 2000
Chicago, Illinois  60602

Re:   *In re Average Wholesale Pricing Litigation*, MDL No. 1456

Dear Ms. Hartweg:

Pursuant to CMO 10 entered in the above-captioned action, approximately six boxes of documents produced by Abbott Laboratories and covered by Judge Saris' orders are available for inspection and photocopying at the offices of Jones Day, 77 West Wacker Driver, Chicago, Illinois  60601.  Please call me to arrange a time for you to review the documents.

Very truly yours,

R. Christopher Cook

NYI-2129046v1

ATLANTA • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK
MILAN • MUMBAI• • MUNICH • NEW DELHI• • NEW YORK • PARIS • PITTSBURGH • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON
•ASSOCIATE FIRM

# Exhibit D



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) ) ) ) |
| | Judge Patti B. Saris |

## PLAINTIFFS' OMNIBUS REQUESTS FOR PRODUCTION AND INTERROGATORIES TO DEFENDANTS ABBOTT, AMGEN, AVENTIS, BAXTER, BAYER, BOEHRINGER, BRAUN, DEY, FUJISAWA, NOVARTIS, PFIZER, PHARMACIA, SICOR, TAP AND WATSON AND TO ALL OTHER DEFENDANTS WITH RESPECT TO DRUGS THAT WERE NOT PREVIOUSLY SUBJECT TO DISCOVERY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and LR D. Mass. 26.5 and 34.1, and pursuant to case management orders of this Court including the March 25, 2004 Order, the plaintiffs hereby request that each defendant produce the documents requested herein in compliance with the March 25, 2004 Order.

Prior to the Court's March 25, 2004 Order, several defendants commenced production for specific drugs pursuant to prior document requests. This Omnibus Request does not seek production of documents to the extent that such documents were both previously requested and actually produced by a defendant.

## I.    DEFINITIONS

1.    "Agreement" means a contract, arrangement or understanding, formal or informal, oral or written, between two or more persons.

2.    "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of a defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.    "AMCC" means the Amended Master Consolidated Complaint.

4.    "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

5.    "Any" means one or more.

6.    "ASP" means average sales price.



7.    "AWP" means the average wholesale price reported to and/or reported by an industry trade publication.

8.    "AWPID" means any of the drugs identified in Appendix A to the AMCC and, pursuant to Case Management Order No. 10 dated March 25, 2004, includes all NDC's for that drug, including NDC's not in the AMCC.

9.    "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

10.    "CMS" means the Centers for Medicare and Medicaid Services.

11.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

12.    "Concerning" means referring to, describing, evidencing, or constituting.

13.    "Covered Drugs" means pharmaceuticals that are reimbursed under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*

14.    "Defendant" refers to any of the defendants in the AMCC, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

15.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a). A draft or non-idential copy is a separate document within the meaning of this term. The term is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings. Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.



16.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

17.     "Government Investigation" refers to any ongoing or closed investigation conducted by the Commerce, Energy and/or Ways and Means Committees of the United States Congress, the United States Department of Justice, the United States General Accounting Office, Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Home Services, or any other federal, state or local governmental entity without regard to time period.

18.     "Government payor" means any federal or state government entity or program that reimburses Providers for drugs or health care services, including but not limited to CMS, Medicare, and Medicaid.

19.     "Identify":  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

20.     "Identify":  When referring to documents, "to identify" means to give, to the extent known, the

    (a)     type of document;

    (b)     general subject matter;

    (c)     date of the document; and

    (d)     author(s), addressee(s), and recipients(s).

21.     "Independent Practice Association" means any organized group of providers whose members provide health care to any participant, beneficiary or patient.

22.     "MAC" means the maximum allowable cost, and includes the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

23.     "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, AWPIDs.

24.     "Medicare," "Medicare Program" or "Medicare Part B" means the government reimbursement system for prescription pharmaceuticals under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*



25.   "Meeting" means any discussion between two or more persons either in person or telephonically.

26.   "Participant" and "Beneficiary" means a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

27.   "PBM" means a pharmacy benefit manager.

28.   "Person" means any natural person or any business, legal, or governmental entity or association.

29.   "Price" means any measure for the charging, payment or reimbursement of a drug, including but not limited to actual wholesale price, AMP, ASP, AWP, Best Price, direct price, estimated acquisition cost, list price, net wholesale price or other measure, comparison, estimate, benchmark or computation of price, and includes prices both with or without discounts, rebates or other incentives affecting the cost of the drug.

30.   "Private payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit funds.

31.   "Provider" means any physician or entity that provides health care to any Participant or Beneficiary.

32.   "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes *First DataBank*, *Red Book*, *Blue Book* and *Medispan*.

33.   "Relating" means concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

34.   "State the Basis." When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall:

(a)   identify each and every document, (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b)   identify each and every communication which forms any party of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c)   state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal



conclusions referred to in the interrogatory; and

     (d)     state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

     35.     "Third Party Administrator" means any entity that provides administrative services to any health plan or health and welfare fund relating to any medical benefit provided to any participant or beneficiary.

     36.     "WAC" means wholesale acquisition cost or the list prices for sales by manufacturers to wholesalers.

     37.     "Wholesaler" means any entity that purchase AWPIDs from a manufacturer and resells such drugs to any other entity.

     38.     "You" or "Your" means the Defendant responding to these requests.

## II.     RULES OF CONSTRUCTION

     1.     All/Each – The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

     2.     And/Or – The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

     3.     The use of the singular form of any word shall include the plural and vice versa.

     4.     The masculine gender includes the feminine.

## III.     INSTRUCTIONS

     1.     <u>Control</u>. A document shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or public or private entity having possession or custody thereof. If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, or has been lost, discarded or destroyed, said document shall be identified as completely as possible including, but not limited to, the following information:

     (a)     the date of disposal or disposition from your possession, custody or control;

     (b)     the manner of disposal or disposition from your possession, custody or control;

     (c)     the reason for disposal or disposition from your possession, custody or control;



(d)    the person authorizing disposal or disposition from your possession, custody or control;

(e)    the document's current or last known custodian;

(f)    the circumstances surrounding the document's disposition from your possession, custody or control;

(g)    the generic category of the document, *e.g.*, memo, letter, computer print-out, etc.;

(h)    the type(s) of information contained in the document; and

(i)    the identity of all persons having knowledge or who had knowledge of the contents of the document.

2.    <u>All Documents</u>.  Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those which otherwise came into existence at anytime during the relevant period described herein.

3.    <u>Objections</u>.

(a)    Where an objection is made to any document request under Fed. R. Civ. P. 34, the objection shall state with specificity all grounds.  Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

(b)    Where a claim of privilege is asserted in objecting to any document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

(i)    the attorney asserting the privilege shall in the objection to the document demand, or sub-part thereof, identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

(ii)    the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A)    for documents:  (1) the type of document; (2) general subject matter of the document; (3) the date of the document; and, (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;



(B)     for oral communications:  (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and, (3) the general subject matter of the communication.

4.     <u>Non-Objected Sub-Parts</u>.  Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectional subject matter which is relevant and material to a request must be produced, but that portion of the document for which the objection is asserted may be withheld or redacted provided that the above-requested information is furnished.

5.     <u>Continuing Duty</u>.  This request is continuing and all documents coming into your possession, custody or control which you would have been required to produce had they been available at an earlier time shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

6.     <u>Entire Document</u>.  Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests.  If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Redactions should be included on the privilege log described in Instruction 3.

7.     <u>Each Defendant Separate</u>.  The fact that a document is produced by one defendant does not relieve any other defendant of the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

8.     <u>Originals and Non-Identical Copies</u>.  In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

9.     <u>Container Intact</u>.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you.  If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

10.     <u>Source Identifiable</u>.  Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

11.     <u>Don't Separate Attachments</u>.  Documents attached to each other should not be separated.



12.     Electronic Availability.   Any documents available in an electronic format shall be so provided in that format, i.e., in an identical, usable electronic format.  If issues regarding compatibility of computer systems and software arise, the producing parties shall confer to resolve the matters.  In producing documents consisting of electronically stored data in machine readable form in response to any document request, provide such data in a form that does not require specialized or proprietary hardware or software.  Data files typically should be in sequential format, also known as ASCII files or flat files, with the data fields in fixed-column positions. For each data file provided, the following information should be included: a record layout, a short narrative description of the contents of the file, translation of any coded fields, the number of records in the file, and a printout of the first 100 records in report format. A record layout must contain the following pieces of information: name of the field, starting and ending position in the record, length of the field, and characteristics of the field (e.g., packed decimal, zoned decimal, alphanumeric).  The magnetic media should be in the most efficient, transferable form.  Data typically can be accepted in either ASCII or EBCDIC format.  Do not convert the data between ASCII and EBCDIC formats. The record length, blocksize and tape density must be provided. The tapes should be written with generic copy utilities rather than backup programs from a specific operating system. Where multiple magnetic media are necessary, recreation of the entire data must be enabled.  For example, where PC files are too large for one diskette, DOS BACKUP disk sets will be acceptable so long as they are accompanied by backup listings. Backup listings may be hard copy or ASCII files on non-backup diskettes. A backup listing must provide the path name necessary to individually restore each file in the backup. Compression utilities are acceptable so long as the utility is provided and such provision does not violate licensing or copyright laws.

13.     Don't Alter Contents.  No watermarks, stamps of "confidential" or the like shall be on the text or other contents of a document and (if the parties agree to production of photocopies in lieu of originals as requested by this pleading) no reduction of the size of an original document shall be made.

14.     Reference Documents.  Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

## IV.    DRUGS AT ISSUE

1.     "Class A drugs" means all physician or other provider-administered AWPIDs and all other AWPIDs that are, or at any time during the relevant period were, coverable under Medicare Part B.

2.     "Class B drugs" are all other AWPIDs.

3.     "All Classes" or "All Drugs" means all drugs identified in the AMCC.



## V.   RELEVANT TIME PERIOD

The relevant period of these document requests, unless otherwise indicated, shall be from January 1, 1991, to the date of production and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## VI.   REQUESTS FOR PRODUCTION

### *Category 1:  General Corporate*

1.      All documents sufficient to identify your policy or practice of document retention, destruction, disposal or preservation during the relevant time period.

2.      All current and historical organizational charts for all of your sales, marketing and pricing departments or divisions.

3.      Any and all company, organizational and policy information in its entirety, including but not limited to corporate policy and procedure manuals, and policy memoranda.

4.      Documents sufficient to identify your electronic mail, document management and other automated information systems.

5.      Documents sufficient to identify your electronic mail retention policies.

6.      Documents evidencing steps were taken by you (if any) from January 1, 2001 to the present to insure that discoverable information with respect to average wholesale price litigation is not destroyed or otherwise made unavailable.

7.      Documents sufficient to identify your policies and procedures concerning the back-up of data for your financial and your marketing, sales and promotion divisions, including but not limited to, the frequency of back-ups, all software and hardware used to perform back-ups, and all media onto which data is backed-up.

### *Category 2:  Trade Associations*

8.      All documents received from or provided to any trade association (such as the Pharmaceutical Research and Manufacturers of America), and any of its organizational subcommittees, including meeting agendas and minutes, concerning (i) Medicare reimbursement for drugs and/or the use of AWP in the reimbursement process; (ii) publications identified in Health Care Financing Administration Program Memorandum AB-99-63, including the *Red Book*, *Blue Book*, and *Medispan* ("pharmaceutical industry publications"); or (iii) a Government Investigation or inquiry as to the use of AWP in the reimbursement process.



***Category 3:  Governmental Investigations; Litigation***

9.      All documents produced by you, whether voluntarily or involuntary, in any governmental investigation or inquiry concerning the use of AWP.

10.     All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegations relating to AWPs.

11.     All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegations relating to the use of AWP.

***Category 4:  Communications With Governmental Entities***

12.     All documents created by or received from CMS, the United States Department of Health and Human Services, the Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal institution, agency, department, or office concerning prices for prescription drugs.

13.     All documents provided to CMS, the United States Department of Health and Human Services, and Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office concerning the price of any AWPID.

***Category 5:  AWPs and Pricing Related***

14.     All documents concerning any definition or meaning of AWP, including documents discussing how you or others define AWP.

15.     All documents discussing how the AWP has been or is currently determined for any AWPID.

16.     As to each of your AWPIDs, all documents concerning any actual, proposed, or prospective AWP announcements, changes or price lists, including the methodology and procedures used by you in considering whether to increase or decrease the AWP of each AWPID.

17.     As to each of your AWPIDs, all documents concerning any actual, proposed or prospective price announcement, price change or price list, including the methodology and procedures used by you in considering whether to increase or decrease the price for each AWPID.

18.     As to Class A drugs only, all sales-level detailing reports where AWPs, reimbursement based on AWPs, or the prices for AWPIDs was discussed.  (Class A Drugs)

19.     As to Class A drugs only, all sales-level detailing reports where price, discounts,



rebates, price concessions, forgiveness of debt, free samples, educational grants or other remuneration were discussed with a purchaser or potential purchaser of any of your AWPIDs.

20.     All documents, including organizational charts, that describe or list the individuals responsible for determining the price for each AWPID.

21.     All documents, including organizational charts, that describe or list the individuals responsible for determining the price for each AWPID.

22.     For each of your AWPIDs, all documents concerning the "product market," as defined in the 1992 Department of Justice and Federal Trade Commission Horizontal Merger Guidelines, in which each AWPID competes including, but not limited to, all documents that: (a) discuss, address, concern, regard, or reflect products that have a significant cross-elasticity of demand, or that are reasonably substitutable for, interchangeable with, or close therapeutic equivalents and/or (b) discuss, address, concern, regard, or reflect whether, and to what extent, the marketing, pricing, and/or sale of a drug other than your AWPID has caused, or could or might cause, physicians, consumers, and other individuals or entities to terminate or reduce their purchase or use of your AWPID.

23.     For each of your AWPIDs, all documents concerning the "geographic market" or markets in which the AWPID competes including, but not limited to, all documents that (a) discuss, concern, regard, or reflect the geographic area within which the AWPID is marketed, and (b) discuss, concern, regard or reflect the area within which you and your competitors view themselves as competing with respect to the AWPID.

24.     For each of your AWPIDs, all documents concerning your strategic and marketing plans including, but not limited to all pricing, reimbursement, brand switching, and consumer segmentation studies and/or surveys.

25.     For each of your AWPIDs, all documents (in digital, computerized form where available) that identify each customer who purchased the AWPID.  For each of these purchasers, all documents that reflect:

(a)     Each sale or other transaction involving the AWPID including the date thereof;

(b)     The number or units of the AWPID sold by dosage strength and package size for each sale or other transaction;

(c)     The invoice amount in dollars for each sale or other transaction concerning the AWPID;

(d)     Discounts, rebates, chargebacks, and other price adjustments relating to each sale, transaction, or set of transactions involving or relating to the AWPID;

(e)     The net amount in dollars for each sale or transaction concerning the AWPID;

(f)     Any other price or unit adjustments – whether monthly, quarterly or on any other basis – involving or relating to sales or transaction involving the AWPID;



(g)     The full name and address of each entity purchasing the AWPID (and, in addition, the full name and address of the parent company where the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse).

26.     For each of your AWPIDs, all documents that reflect the prices charged to, or terms of conditions of sale for, purchasers of the AWPID including, but not limited, to:

(a)     The wholesale acquisition price or other published price of the AWPID or any generic equivalent;

(b)     Payment terms;

(c)     discounts, rebates, chargebacks or other adjustments offered to any class of purchaser;

(d)     Prices and terms of sales for wholesale purchasers;

(e)     Prices and/or discounts and/or rebates or other adjustments for chain pharmacy purchasers;

(f)     Prices and/or discounts and/or rebates or other adjustments for hospital purchasers;

(g)     Prices and/or discounts and/or rebates or other adjustments for managed care purchasers;

(h)     Prices and/or discounts and/or rebates or other adjustments for pharmacy benefit managers;

(i)     Prices and/or discounts and/or rebates or other adjustments for internet pharmacies;

(j)     Prices and/or discounts and/or rebates or other adjustments for mail order purchasers; and

(k)     Prices and/or discounts and/or rebates or other adjustments for any other purchaser class or subgroup.

27.     For each of your AWPIDs, documents sufficient to show, in digital or computerized form, in chronological order:

(a)     The date of each sales transaction;

(b)     Every discount, rebate, and/or any other adjustment that any customer of D has received;



(c)    The date each discount, rebate, and/or any other adjustment was given;

(d)    The time period covered by each discount, rebate, and/or any other adjustment;

(e)    Sales in units by National Drug Code sold, shipped, and/or returned by dosage form, strength, and package size;

(f)    Sales in dollars by National Drug Code sold, shipped, and/or returned by dosage form, strength, and package size;

(g)    Net sales in dollars for each sale;

(h)    The name, address, account number, and all other identifying numbers or codes for the person or entity billed, invoices, and/or credited for the transaction; and

(i)    The name, address, account number, and all other identifying numbers or codes for the person or entity to whom the product was shipped or from whom product returns were received.

28.    For each of your AWPIDs, documents sufficient to identify:

(a)    The published AWP;

(b)    AMP;

(c)    ASP;

(d)    EAC;

(e)    WAC;

(f)    MAC;

(g)    Earned margin (difference between AWP and actual product cost);

(h)    Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates, chargebacks, discounts, allowances, credits, administrative fees, price/volume discounts and any other incentives provided to third parties.

(i)    Documents summarizing all rebates, chargebacks, discounts, allowances, credits, administrative fees, price volume discounts or other incentives.

29.    For each of your AWPIDs, all agreements for sale of the AWPID, whether or not those contracts are with customers who purchased the AWPID directly, including drafts, correspondence, and supporting detail and data (in computerized form where available).



30.     All documents concerning communications between you and IMS Health (or any similar entity providing pharmaceutical database information) concerning or relating to any of your AWPIDs.

31.     For each of your AWPIDs, documents sufficient to estimate the number of patients taking the AWPID over each one year period.

32.     For each of your AWPIDs, all documents concerning your actual, potential, or expected revenues and/or profits from the sale of that AWPID.

33.     All documents concerning or relating to the actual or potential impact of the pricing or reimbursement of any drug on the quantity of any of your AWPIDs that have been or might be sold.

34.     Documents sufficient to show your per-unit average total cost for each of your AWPIDs, and the components that make up that figure, including but not limited to raw materials, manufacturing, marketing, sales and packaging costs.

35.     All documents concerning or relating to the difference between an AWP and any other price for any AWPID.

### Category 6:  Inducements

36.     All documents describing any discount programs (including but not limited to volume discounts), rebates, incentives, or penalties for each AWPID.

37.     All documents relating to the use or provision of free samples, educational grants, marketing grants, and payments for specific data gathering or other incentives relating to any AWPID.

38.     All documents evidencing any "credit memos" or credit extended to hospitals, GPOs or other purchasers of AWPIDs, including but not limited to credit memos or credit issued via a wholesaler to a purchaser, and/or credit for the purpose of "returned goods."

39.     All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or could be given to any hospital, GPO, HMO, physician, wholesaler or other purchaser of AWPIDs.

40.     All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or could be given to any hospital, GPO, HMO, physician, wholesaler or other purchaser of AWPIDs.

41.     All documents relating to or reflecting any payments you gave to providers relating to any AWPID.  (Class A Only)



42.    All documents evidencing any chargebacks with respect to the sale of an AWPID.

### *Category 7:  Marketing Plans and Sales Representatives*

43.    Documents sufficient to determine complete contact information for all personnel with responsibility for marketing and promotional activity for AWPIDs.  Include Marketing Department Product or Brand Managers, and members of Marketing Advisory Boards, and include home address and telephone number.  (Class A Drugs)

44.    A list of all national level sales awards available for each AWPID.  (Class A Drugs)

45.    Quarterly, semi-annual and annual business plans for each winner of the top national sales award winners and direct supervisors.  (Class A Drugs)

46.    Any summaries or reports made by a sales representative that evidence a discussion between that sales representative and a provider regarding AWPs for AWPIDs, reimbursements based on AWPs for AWPIDs, and any difference between what the provider is reimbursed for AWPIDs and what the provider pays for the AWPID.  (Class A Drugs)

47.    For each AWPID, sales representatives' field notes for the top 50 sales representatives for each year.  (Class A Drugs)

48.    Documents sufficient to describe any computer programs that you employ or have employed to manage your sales force, including but not limited to programs that collect data on the number of provider contacts and summarize the nature of the discussions between your sales representatives and providers.  Examples of such programs include programs marketed by Siebel Systems and ImpactRx, as well as any programs developed by you.  (Class A Drugs)

49.    All documents relating to discussions between sales managers and sales representatives after field visits where AWPs, reimbursements rates, or the spread was discussed. (Class A Drugs)

50.    All documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool, on any AWPID was discussed.  (Class A Drugs)

51.    All communications between you and any party in the reimbursement cycle or pharmacies relating to reimbursement and AWP.  (Class A Drugs)

52.    All documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug.  (Class A Drugs)

53.    All documents relating to all actual, proposed, or prospective marketing methods, practices, policies, or strategies for each AWPID to the extent such documents refer to AWP, the spread, or to discounts of any type.



54.     All documents relating to any communication with doctors, other health care professionals, or any person or entity providing health care services to seek Medicare reimbursement or consumer co-payment for free samples of each AWPID you provided to them. (Class A Drugs)

55.     All marketing and sales materials which compare the AWP, price, market share, rebates, pricing discounts, incentives, or penalties for each AWPID with the AWP of any other pharmaceutical.  (Class A Drugs)

### *Category 8:  Publishers*

56.     All documents concerning communications between you and any publisher concerning measures of price for pharmaceuticals, including ASP, AWP, WAC or other measures of price.

57.     For each of your AWPIDs, separately produce all documents concerning communications between you and a publisher regarding the price(s) for that AWPID.

58.     All documents concerning your role in the publication, appearance and/or advertisement of the AWP, WAC or other price measure for your AWPIDs in any publication of a publisher.

59.     All documents concerning the role of the publisher in the publication, appearance and/or advertisement of the AWP, WAC or other price measure for each of your AWPIDs in a publication of a publisher.

60.     All documents relating to the role of some person other than yourself and the publisher in the publication, appearance and/or advertisement of the AWP, WAC and/or other price measure for each of your AWPIDs in any publication of a publisher.

61.     All documents relating to your role in the publication, appearance, or advertisement of the AWP, WAC or other pricing information in any pharmaceutical-related industry publications, including publications of the publishers.

62.     All documents concerning the use by any participant in the drug distribution/sales channels (e.g., wholesalers, retailers, pharmacies, pharmacy benefit managers, insurers, etc.).

63.     All documents concerning agreements between you and any publisher.

64.     All documents concerning any payments made by you to a publisher, where such payments related in any way to drug pricing.

65.     All documents relating to any investments or loans that you have made in or to a publisher.

66.     All notes or minutes of any meetings between you and a publisher where drug



pricing was discussed.

67.     All documents concerning communications between you and a publisher about litigation involving AWP or drug pricing.

68.     All documents regarding any pricing surveys that publishers have done for AWPIDs.  (All Drugs)

69.     All documents regarding communications between you and a publisher about drug reimbursement systems, including Medicare, Medicaid and private insurance.  (All Drugs)

### *Category 9:  PBMs; Wholesalers*

70.     All documents concerning your contractual relationships with wholesalers, independent practice associations, pharmacies or providers insofar as they cover AWPIDs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

71.     Documents sufficient to identify all persons involved in negotiation of contractual relationships with wholesalers, manufacturers, independent practice associations, pharmacies, PBMs or providers insofar as they cover any AWPID.

72.     All documents relating or referring to your contractual relationships with PBMs insofar as they cover AWPIDs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

73.     Documents sufficient to identify all persons involved in negotiation of contractual relationships with PBMs insofar as they cover any AWPID.

74.     All documents relating to marketing materials that you have provided PBMs for any AWPID.

75.     All documents relating to any communications between you and PBM regarding AWP, or to any fees or monies paid to or retained by a PBM.

76.     All documents relating to any communications between you and any PBM regarding the revenue, profit, spread or other consideration that a PBM would earn based on any difference between your price for any AWPID and the compensation that the PBM receives for the AWPID.

77.     All documents relating to the pricing of any of your AWPIDs sold to or through any PBM.

78.     All documents relating to any rebates that you have provided PBMs for any AWPID.



79.     Excluding Rebates, all documents referring or relating to your provision of any other consideration to a PBM for AWPIDs, including but not limited to:

    a.   Administrative fees for assembling data to verify market share results;

    b.   Fees for selling other data;

    c.   Fees for encouraging physicians to change prescribing patterns;

    d.   Prompt payment discounts;

    e.   Free drugs;

    f.   Drug samples;

    g.   Credit memos or credit extended to any PBM, including but not limited to credit memos or credit issued for the purported reason of "returned goods;"

    h.   Other discounts, fees or grants.

80.     All documents relating to the placement of any of your AWPIDs on a PBM formulary.

### *Category 10:  Communications With Other Manufacturers*

81.     All documents relating to any communications, including meetings, between you and any other pharmaceutical company regarding:

    (a)     any actual, proposed or prospective price, price announcements, price changes, or price lists for any AWPID;

    (b)     any actual, proposed, or prospective pricing methods, practices, policies or strategies for any AWPID;

    (c)     any actual, proposed, or prospective marketing methods, practices, policies, or strategies for any AWPID;



(d)    any actual, proposed, or prospective pricing discounts, rebates, bids, or incentives for any AWPID;

(e)    territories or markets for sales or potential sales for any AWPID;

(f)    Medicare Part B and its policy of reimbursement for any AWPID;

(g)    the AWP of any AWPID;

(h)    pharmaceutical industry publications; and

(i)    market conditions or market shares.

### *Category 11:  Miscellaneous*

82.    Any documents relating to the repackaging or relabeling of any AWPID including but not limited to:  (a) documents indicating that any AWPID with a specific NDC has been repackaged and is being sold with a different NDC, but is the same drug; and (b) for any repackaged AWPID, documents evidencing the AWP of the original AWPID and of the repackaged AWPID, and documents evidencing the bases, methods and/or reasons for any change in the AWP.

## VII.    INTERROGATORIES

1.    For the period beginning January 1, 1997, and for each subsequent calendar quarter, and with respect to each of the AWPIDs, identify the following information:

a.    the total volume of sales, indicating both the number of units and net revenue;

b.    the "average wholesale price" (AWP), as reported in Medical Economics *Red Book, First Data Bank* and/or *MediSpan*, and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of AWP, whether higher or lower, (ii) at more than five percent above AWP, and (iii) at more than five percent below AWP;

c.    the " average manufacturer price" ("AMP"), as reported to the Secretary of Health and Human Services, pursuant to the requirements of Social Security Act ("SSA") § 1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at AMP and up to and including 10% above AMP, and less than or equal to 10% below AMP (broken out separately), (ii) at greater than 10% above AMP but less than or equal to 20% above AMP, and at greater than 10% below AMP but less than or equal to 20% below AMP (broken out separately), (iii) at greater than 20% above AMP but less than or equal to 30% above AMP, and at greater than 20% below AMP but less than or equal to 30% below AMP (broken out separately), (iv) at greater than 30% above AMP but less than or equal to 40% above AMP, and at greater than 30% below AMP but less than or equal to 40% below AMP (broken out separately), and (v) at greater than 40% above AMP but less than or equal to 50% above AMP,



and at greater than 40% below AMP but less than or equal to 50% below AMP (broken out separately);

        d.     the "wholesale acquisition cost" ("WAC"), as reported by Medical Economics *Red Book*, *First Data Bank* and/or *MediSpan* or any other such entity that gathers and publishes "wholesale acquisition costs," and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of WAC, whether higher or lower, (ii) at more than five percent above WAC, and (iii) at more than five percent below WAC;

        e.     the "average sales price" (ASP), *i.e.*, the price after reflecting discounts, rebates, chargebacks, to all classes except FSS;

        f.     the total volume of the subject drug, in units, distributed as free goods.

2.     For the period beginning January 1, 1997, to the present, has the distribution, marketing, sales or promotion of any AWPID considered, incorporated, or been based upon, in any way, the difference between the cost to the provider and the amount that the provider receives for reimbursement or sale? If so, please describe the circumstances of such distribution, marketing, sales, or promotion, and provide all documents relating thereto, and identify all past and current employees with knowledge of the facts relating to such marketing, sales or promotion.

3.     For the period of January 1, 1997, to the present, please state for each calendar quarter the largest single purchaser, in terms of units, of each of the AWPIDs and the following:

        a.     the total number of units of the AWPIDs received by that purchaser; and

        b.     the total net revenue received for the AWPIDs by your company from that purchaser.

Please also produce the contract or agreement governing your relationship with that purchaser for each relevant quarter.

4.     For the period of January 1, 1997, to the present, and for each subject drug, please provide a list of all purchasers who received the subject drug at a price exempted from the calculation of the Medicaid "best price," pursuant to the requirements of SSA _1927(c)(1)(C)(ii)(III), and, for each such purchaser, indicate the volume of the AWPID received by calendar quarter, in units, and the range of prices at which such purchaser received the subject drug for that quarter.

5.     With respect to each AWPID, please describe how you calculate the prices and/or data reported to Medical Economics *Red Book*, *First Data Bank* or *MediSpan* or any other such entity that gathers and publishes either "average wholesale prices," "list prices," or "wholesale acquisition costs." And for each drug identify the persons responsible for doing so. (All Drugs)



6.     Identify the source of each of the documents produced in response to plaintiffs' requests for the production of documents throughout this litigation by identifying the person(s) who possessed those documents, the job position of any such individuals, and the division and department where such documents were located.  If you are unable to determine the individual(s) who possessed the documents, identify the department and division where they were/are located when produced.

DATED:      March 31, 2004

By

Thomas M. Sobol (BBO # 471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Samuel Heins
Brian Williams
Heins Mills & Olson, P.L.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

Jeff Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

**CHAIRS OF LEAD COUNSEL COMMITTEE**



Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF EXECUTIVE
COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813



Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL  33134
Tel:  (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA  92101
Tel:  (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL  60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel:  (213) 895-6500
Fax:  (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA  19102
Tel:  (215) 790-7300
Fax:  (215) 546-0942



Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel: (610) 891-9880
Fax: (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX 75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Thomas M. Sobol, an attorney, caused a true and correct copy of the foregoing Plaintiffs' Omnibus Requests For Production And Interrogatories To Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, Tap And Watson And To All Other Defendants With Respect To Drugs That Were Not Previously Subject To Discovery to be served on all counsel of record electronically on March 31, 2004, pursuant to Section D of Case Management Order No. 2.

Thomas M. Sobol, Esq.
**HAGENS BERMAN LLP**
225 Franklin Street, 26th Floor
Boston, MA 02110
Telephone: (617) 482-3700

# Exhibit E

# T H E │ W E X L E R │ F I R M <sup>LLP</sup>

May 3, 2004

<u>VIA E-MAIL & U.S. MAIL</u>
Mr. Christopher Cook
Jones, Day, Reavis & Pogue
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

      Re:    *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL
            No.1456

Dear Chris:

I am writing to follow-up on the non-Together Card aspects of the meet and confer we
held on April 29, 2004 related to Abbott's discovery responses.

1.    **Suffolk County and other non-Class plaintiffs.** As we discussed, Class
plaintiffs' discovery to defendants is different, in scope and substance, than other
plaintiffs. Accordingly, while we intend to continue to advise the non-Class
plaintiffs when defendants produce documents and the dates of depositions, we do
not believe that it is appropriate to include them in meet and confers on discovery
issued by Class plaintiffs.

2.    **Government Investigation documents.** You have advised that Abbott has a 6-
box supplement for this production, which we intend to review tomorrow at your
Jones Day Chicago office.

3.    **Transactional Data.** We discussed generally defendant's view that plaintiffs
may not ultimately be interested in discovery on all Abbott drugs in the AMCC,
because, for example, for some of the multi-source drugs, 85% of the sales are to
hospitals for in-patient use and are not separately marketed. We discussed that
plaintiffs also may want to make some "triage" decisions based on which drugs to
pursue in discovery (without prejudice) at the outset.

     a.    **Substance.** In order for us to make any triage decisions we need for each
drug: (i) the "WAC/MASP" data, and (ii) the annual sales figures
(disaggregated at least for us to determine how much is inpatient, and how
much is government [i.e., Medicaid, VA other FSS sales]). If you can get
us this ASAP (and at the very least within the 60-day time frame required
by CMO 10) we can make a helpful triage decision for discovery
purposes. If we don't have that information we cannot agree to defer
discovery. Please understand that in our discussions that will follow we
will still need to agree how and when to address the balance of the drugs.
In addition, please understand that this triage is for discovery purposes

Contact Information:    **Elizabeth Fegan Hartweg**    One North LaSalle Street    312 346 2222
                                      **312 261 6191 Direct Dial**    Suite 2000    312 346 0022 fax
                                      efhartweg@wexlerfirm.com    Chicago, Illinois 60602    www.wexlerfirm.com

T H E │ W E X L E R │ F I R M LLP

Mr. Christopher Cook
May 3, 2004
Page 2 of 3

only. For example, the MDL plaintiffs' mediation proposal requires production of actual invoice level data for all AWPIDs.

b.   **Relevant Period.** You stated that you thought the production of transactional data for the entire Relevant Period was overbroad and suggested a very short time frame, such as a one-year period. We objected stating that this would not provide plaintiffs with a sufficient picture for making any kinds of conclusions or cuts. Moreover, to date not one other defendant (of which we are aware) has objected to the production of transactional data for at least the time period January 1, 1997 to September 2002. Further, whether defendants must produce data dating back to the beginning of the Relevant Period (as they have required plaintiffs and third parties to do) will be the subject of a motion to compel.

4.   **Categories 1-4.** We discussed that Abbott does not generally have an objection to the production of documents requested in Categories 1-4 of the Requests to Produce, but would look at these requests again to confirm.

5.   **Remaining Categories.** We discussed various ways to refine the scope of which files should be searched at Abbott. We agreed that some of this may depend on the outcome of the "triage" of transactional data. We further discussed that Abbott may want to determine which "groups" or departments would be the most likely to possess relevant information, such as a managed markets group or pricing strategy group. You stated that you would speak with your client regarding this and get back to us. We also discussed that plaintiffs were not interested in groups that market to consumers or physicians on the non-physician-administered drugs only.

6.   **Written Responses and Objections.** You suggested that Abbott will be in a better position to provide more meaningful and targeted responses to the discovery requests if more time were provided to craft such responses. Based on this representation, and given Abbott's status as a Track 2 defendant, we agree to provide Abbott with a 30-day extension. This would make the responses due on or before June 1st. However, we discussed that, if Abbott is aware of *any* requests to which it will absolutely refuse to produce documents without a court order, you advise us of these categories immediately so that we can bring these requests to the Court's attention.

7.   **Timing of Production.** CMO No. 10 requires that Abbott complete its production within 60 days. In light of Abbott's status as a Track 2 defendant, plaintiffs will agree to an extension provided that: (i) the transactional data requested by plaintiffs is produced within the 60-day time period; and (ii) Abbott produces on a rolling basis, works in good faith to produce the documents as soon as possible and, in any event, completes its production by September 1, 2004.

# THE │ WEXLER │ FIRM LLP

Mr. Christopher Cook
May 3, 2004
Page 3 of 3

Please let me know when you are available this week for a follow-up discussion on these issues.

Very truly yours,

Elizabeth Fegan Hartweg

EFH:lyr

cc: All Counsel ~~of Record~~ plaintiffs Co-lead (via facsimile)

# Exhibit F

# JONES DAY

51 LOUISIANA AVENUE, N.W.

WASHINGTON, D.C. 20001-2113

TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

WRITER'S DIRECT NUMBER:
202-879-3734

christophercook@jonesday.com

May 6, 2004

## VIA FACSIMILE AND U.S. MAIL

Elizabeth Hartweg
Kenneth A. Wexler and Associates
One North LaSalle - Suite 2000
Chicago, Illinois 60602

Re:    *In re Average Wholesale Pricing Litigation*, MDL No. 1456

Dear Ms. Hartweg:

This letter responds to your e-mail dated May 3, 2004 and follows up on our April 29, 2004 meet and confer. We enjoyed speaking with you and hope that we can continue to work together to resolve any discovery issues.

**Coordination:** We continue to believe that as liaison plaintiffs' counsel, you have an obligation under CMOs 9, 10 and 11 to coordinate discovery with other plaintiffs in the MDL, including Suffolk County. Nevertheless, we are willing to continue to work with you in connection with discovery issues raised by your requests. Consistent with the Court's orders, however, we view any agreements we reach with liaison counsel regarding the scope of the omnibus requests as binding on other plaintiffs.

**Government Investigations Documents:** Yesterday, you reviewed the documents we produced pursuant to CMO 10. You requested copies of all of the documents produced. We are marking them in accordance with the protective order and expect to have them ready to be copied by the vendor of your choice by tomorrow morning, May 7, 2004. Please let Laura Dahl know which vendor you would like to use. Laura's telephone number is (312) 269-4265.

**Relevant Time Frame:** We believe that your motion to compel is premature in light of our discussions last week. We did not refuse to provide documents and information prior to 1997, but rather suggested that a time frame beginning in 1997 would be a good starting point. Given that we have seventeen months to complete discovery, I believe this proposal is more than reasonable. As we discuss production of individual categories of documents, we may find that shorter or longer time periods are consistent with a reasonable search, depending on such factors as the relevance of older documents and the difficulty of retrieving such information. For

Elizabeth Hartweg, Esq.
May 6, 2004
Page 2

example, we are currently attempting to determine whether any technical barriers exist to your request that our initial production of electronic data (discussed below) extend back to 1991.

**Electronic Sales Data:** We are working with our client to gather the electronic data you requested, and we will endeavor to provide it to you within 60 days of the service of your request. We ask, however, that you clarify what you mean by "WAC/MASP" data. We can provide the published WAC for each of the Abbott products listed in Appendix A to the AMCC, but we are not aware of any "MASP" price. Also, you should note that our client does not track Medicare and Medicaid sales. Information regarding the identity of any third party payor is not generally available to Abbott as a manufacturer. As to the time period for our data production, we will contact you shortly to discuss the results of our discussions regarding the feasibility and cost of producing data back to 1991 as you have requested.

**Requests for which Abbott refuses to provide any documents:** Per your request, we have reviewed plaintiffs' omnibus discovery requests. We have not identified any requests for which we categorically refuse to produce documents without a court order. I am not, of course, waiving any objections we have to your document requests, and we intend to continue negotiating with you about reasonable limitations on the omnibus discovery requests.

**Categories 1 through 4:** We will gather documents responsive to these requests. Upon review of these requests, we believe that requests 2 and 3 should be narrowed so as to include only those divisions at Abbott that market or sell the drugs identified in Exhibit A of the AMCC. In addition, request 3, which seeks "[a]ny and all company, organizational and policy information in its entirety, including but not limited to corporate policy and procedure manuals, and policy memoranda," is broad enough to include policies that are wholly irrelevant to this litigation (*e.g.* sexual harassment policies). Accordingly, we will produce policies or manuals that relate to pricing, marketing and sales for the drugs identified in the AMCC. Finally, request 4 seeks documents sufficient to identify any "automated information systems." This request also is broad enough to include information systems that are irrelevant to this litigation. I assume you are seeking only those systems that may contain documents responsive to your other requests, such as electronic mail, document management and sales data. Please let me know if you disagree with any of the limitations I have suggested in this paragraph.

**Scope of search:** We are preparing a list of the groups or departments at Abbott who most likely will have relevant information. At a high level, the Abbott drugs identified in Exhibit A of the AMCC were marketed and sold by two different divisions. The Pharmaceutical Products Division ("PPD") marketed and sold Biaxin, Depakote, Erythromycin and Ery-Tab. The Hospital Products Division ("HPD") marketed and sold the remaining Abbott drugs listed in Appendix A of the AMCC. As you know, Prevacid is a TAP drug. We will provide this list to you as soon as practicable.

**Timing of Production:** We will, as noted above, endeavor to provide you with the electronic data within 60 days of plaintiffs' request. Of course, we may encounter issues or

JONES DAY

Elizabeth Hartweg, Esq.
May 6, 2004
Page 2

difficulties that preclude us from meeting that deadline.  If that occurs, we will notify you
promptly.  Regardless of this near term deadline, we will begin a rolling production as soon as
possible.  Whether we can complete our production by early September is of course dependent
on what you require from Abbott, but we agree with you that September is a good aspirational
goal.

　　　　**Written Response to Discovery Requests:**  We will produce our written discovery
responses to your discovery requests on or before June 1, 2004.  In the meantime, we will work
with you to focus our objections.

　　　　　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　　　　　R. Christopher Cook

cc:  Toni-Ann Citera, Esq.

# Exhibit G

# JONES DAY

51 LOUISIANA AVENUE, N.W

WASHINGTON D.C 20001-2113

TELEPHONE 202-879-3939 • FACSIMILE 202-626-1700

WRITER'S DIRECT NUMBER
202-879-3734
christophercook@jonesday.com

June 1, 2004

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

Elizabeth Hartweg
Kenneth A. Wexler and Associates
One North LaSalle - Suite 2000
Chicago, Illinois 60602

Re:   *In re Average Wholesale Pricing Litigation*, MDL No. 1456

Dear Beth:

In response to Plaintiffs' Omnibus Discovery Requests and in accordance with our discussions to date, a limited set of Abbott documents are available for your review at Jones Day's offices, 77 West Wacker Drive, Chicago, Illinois. Of course, we will be making a rolling production and will continue to supplement our production as we gather more documents from our client. Please call Laura Dahl (312-269-4265) to arrange a time to review the documents.

Very truly yours,

R. Christopher Cook

cc: Toni-Ann Citera, Esq.
     Laura Dahl, Esq.

ATLANTA · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON · IRVINE · LONDON · LOS ANGELES · MADRID · MENLO PARK
MILAN · MUMBAI · MUNICH · NEW DELHI · NEW YORK · PARIS · PITTSBURGH · SHANGHAI · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON