UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Magistrate Judge Marianne Bowler |

## AVENTIS PHARMACEUTICALS INC.'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO CONDUCT MORE THAN TEN DEPOSITIONS

The Court should deny Plaintiffs' belated Cross-Motion to Conduct More Than Ten Depositions ("Cross-Motion") because Local Rule 26.1(C) clearly applies in this case, and Plaintiffs have failed to demonstrate good cause in support of their request to exceed the presumptive ten deposition limit.

### I.   Fed. R. Civ. P. 30(a)(2)(A) and Local Rule 26.1 (C) Apply in This Case

Plaintiffs' argument that Fed. R. Civ. P. 30(a)(2)(A) and Local Rule 26.1(C) do not apply to a complex, multi-party case is incorrect. (Cross-Motion, at 2.) No such exception is found in the plain language of the rules, nor do Plaintiffs cite to any case law to support their contention. In fact, several courts have noted that "[c]onformity with the rules is especially important in a complex, multi-district" case. *In re Sulphuric Acid Antitrust Litig.*, 2005 WL 1994105, at 6 (N.D. Ill. Aug. 19, 2005). *See also Bituminous Fire and Marine Ins. Co. v. Dawson Land Dev. Co.*, 2003 WL 22012201, at *1 (M.D. Fla. Feb. 13, 2003). As Plaintiffs are aware, "[t]he court has broad authority to limit depositions." *Manual for Complex Litigation, Fourth* § 11.451 (2004).

- 1 -

1804120v7

While Plaintiffs assert that courts in the First Circuit have "routinely" allowed parties to exceed the ten deposition limit, tellingly, *none* of the cases cited by Plaintiffs involved motions to exceed the limits of Local Rule 26.1 and/or Fed. R. Civ. P. 30(a)(2)(A)[1]. In fact, of the published decisions directly addressing motions to exceed the limits of Fed. R. Civ. P. 30(a)(2)(A), the majority of courts have denied such motions[2]. In particular, this district has denied motions to exceed the limits of Fed. R. Civ. P. 30(a)(2)(A). *See Advanced Sterilization Prods. v. Jacob*, 190 F.R.D. 284 (D. Mass. 2000) (motion denied); *Whittingham v. Amherst College*, 163 F.R.D. 170 (D. Mass. 1995) (motion denied).

Conspicuously absent from Plaintiffs' cross-motion is any reference to the fact that the same Plaintiffs' counsel represents the State of Connecticut in a similar suit against Aventis pending in Connecticut state court, and that the Aventis depositions noticed by Plaintiffs

---

[1] *See in re Relafen Antitrust Litigation*, 231 F.R.D. 52, 60-61 (D. Mass. 2005); *In re Lupron Marketing and Sales Practices Litigation*, 228 F.R.D. 75, 98 (D. Mass. 2005); *City of Springfield v. Rexnord Corp.*, 2003 WL 1622356, *5 (D. Mass. Mar. 28, 2003); *In re Allied-Signal*, 891 F.2d 967, 969 (1st Cir. 1989).

[2] *See Andrews v. Fowler*, 93 F.3d 1069, 1080 (8th Cir. 1996) (affirming denial of motion); *Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (affirming denial of motion); *R. David Boyer v. Christopher Gildea*, C.A. No. 1:05-CV-129, 2005 U.S. Dist. LEXIS 10726, at *2-3 (N.D. Ind. June 2, 2005) (motion denied); *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865TJHMCX, 2004 WL 2601178, at *1 (C.D. Cal. Oct. 25, 2004) (motion denied); *Bituminous Fire and Marine Ins. Corp. v. Dawson Land Development Co., Inc.*, No. 3:02-CV-793-J-21TEM, 2003 WL 22012201, at *1 (M.D. Fla. Feb. 13, 2003) (motion denied); *National Union Fire Ins. Co. v. Hicks*, No. 02 CIV 1334 (SAS), 2002 WL 1822738, at *2 (S.D.N.Y. Aug. 8, 2002) (motion denied); *Barrow v. Greenville Independent Sch. Dist.*, 202 F.R.D. 480, 482-84 (N.D. Tex. 2001) (affirming magistrate judge's denial of motion); *Sherif v. Astrazenica, L.P.*, Civ. A. 00-CV-3285, 2001 WL 45468917, at *1 (E.D. Pa. Nov. 15, 2001) (motion denied); *Murphy v. Board of Educ.*, No. 00-CV-6038, 2000 WL 33945849, at *4 n. 2 (W.D.N.Y. Sept. 11, 2000) (admonishing counsel for failing to comply with Fed. R. Civ. P. 30(a)(2)(A) and quashing outstanding deposition notices); *Advanced Sterilization Prod. v. Jacob*, 190 F.R.D. 284, 286 (D. Mass. 2000) (allowing emergency motion for a protective order limiting discovery to ten depositions, as set forth in FRCP 30(a)(2)(3)); *Dixon v. Certainteed Corp.*, 164 F.RD. 685, 692 (D. Kan. 1996) (motion denied); *Whittingham v. Amherst College*, 163 F.R.D. 170 (D. Mass. 1995) (motion denied); *Louis A. Siegel v. Truett-McConnell College, Inc.*, 13 F. Supp.2d 1335, 1137-38 (N.D. Ga. 1994) (motion denied).

1804120v7

in the MDL have also been noticed by the Plaintiffs in the Connecticut case. The Connecticut rules do not impose a limit on the number of depositions, and Plaintiffs are proceeding with the depositions of their eleventh and twelfth witness depositions (of Mr. Colvin and Mr. DuPont) in that case. Moreover, counsel for Aventis has agreed that depositions taken in the Connecticut case may be used in the MDL proceeding, as if taken here. The present situation is similar to *National Union Fire Ins. Co. v. Hicks, Muse, Tate & Furst, Inc.*, No. 02 Civ. 1334 (SAS), 2002 WL 1822738 (S.D.N.Y. Aug. 8, 2002), where the court, noting the existence of a parallel proceeding in another jurisdiction where the parties could and had conducted many depositions involving the same pool of witnesses, denied a motion to exceed the limits of Fed. R. Civ. P. 30(a)(2)(A).

Plaintiffs' doomsday scenario of discovery coming to a halt if the rules are enforced is without merit. Aventis' motion for protective order is limited in nature and seeks to enforce the rule only *as to Plaintiffs' depositions of Aventis' current and former employees*, not as to either party's right to depose third parties. Plaintiffs would remain free to take depositions of other Defendants and third parties. As noted above, discovery in the parallel state litigation would also continue unabated.

## II.   Contrary to Plaintiffs' Assertion, the Court Has Not Yet Considered The Application of Local Rule 26.1

Plaintiffs' assertion that the Court "has already rejected Aventis' position" (Cross-Motion, at 4) is incorrect. Although the Court on September 19, 2005, allowed Plaintiffs to schedule certain specific additional depositions of Defendant AstraZeneca, the Court did *not* rule that unlimited depositions were universally permissible against all parties nor did the Court hold that Local Rule 26.1 is inapplicable in this case. To the contrary, the issue of Local Rule 26.1(C)

was not raised at the hearing; the Court merely indicated that it wanted to consider each additional requested deposition separately. *See* September 19, 2005 hearing transcript (attached as Ex. A) at 17: 22-23.[3]

Plaintiffs also point to the portion of the August 17, 2005 ruling on class certification which allows Defendants 30 days to depose newly identified Plaintiffs, to support Plaintiffs' proposition that this Court has rejected Local Rule 26.1. Permitting limited depositions of newly added parties has no bearing on permitting unlimited depositions of long-standing litigants who have been engaged in massive and extensive discovery for the past eighteen months. If anything, the fact that the Court allowed only a 30-day period for completing the depositions of an unlimited number of new Plaintiffs argues in favor of enforcing the rules and placing restrictions on the number of permissible depositions here.

### III. Plaintiffs' Vague Assertions As to the Responsiveness of One or Two of The Eight Individuals Designated By Aventis to Address Plaintiffs' Multiple Rule 30(b)(6) Notices Are Irrelevant to the Ten Deposition Limit.

Plaintiffs' primary argument in support of their contention that they should be allowed to take at least 26[4] depositions of Aventis consists of vague and groundless assertions as to alleged deficiencies in Aventis' designation of 30(b)(6) witnesses. It is respectfully submitted that this is a make weight argument: if Plaintiffs had a legitimate issue with Aventis'

---

[3] AstraZeneca's situation is distinguishable because it waited until Plaintiffs had already taken in excess of ten depositions before seeking protection. Aventis, by seeking protection as soon as it received notice for the additional depositions, foreclosed any suggestion that Aventis acceded to ignoring the limitations on depositions.

[4] Remarkably, and entirely consistent with Plaintiffs' flagrant disregard for this Court's rules, during the pendency of its motion to conduct additional depositions, Plaintiffs have unilaterally granted their own motion and recently noticed an additional 13 fact witnesses (the "November 9, 2005 Notice"). In light of Plaintiffs' November 9 shotgun Notice of Deposition for 13 additional former employees of Aventis, the latest number of depositions as to Aventis sought by Plaintiffs has apparently grown to 30 (it should be noted that one of the individuals listed on the November 9 Notice has been deceased for several years).

1804120v7

designations, the proper approach would have been to file a motion to compel, after complying with Local Rule 37.1 (A), so that the Court could properly decide the issue(s). The fact that Plaintiffs have chosen not to file a motion to compel speaks volumes as to the merits (or lack thereof) of Plaintiffs' contentions.

The issue of the responsiveness of Rule 30(b)(6) designees is also a red herring. Designees produced in response to a Rule 30(b)(6) Notice are counted as a single deposition for purposes of calculating the ten deposition limit. The Advisory Committee Notes to the 1993 Amendments to the Federal Rules expressly state that for the purposes of the ten deponent limit, "a 30(b)(6) deposition is separately counted as a single deposition, regardless of the number of witnesses designated." *Quality Aero Tech., Inc. v. Telemetric Elektronik, GMBH,* 212 F.R.D. 313, 319 (E.D.N.C. May 3, 2002); *In re Sulfuric Acid Antitrust Litigation,* No. 03-C-4576, MDL No. 1536, 2005 WL 1994105, at *3 (N.D. Ill. Aug. 19, 2005). Accordingly, for purposes of the ten deposition limit, Aventis has counted the eight individuals designated by Aventis to respond to Plaintiffs' April 20 and May 13, 2005 Rule 30(b)(6) Notices as just two depositions. Even if one of Aventis' eight designees were non-responsive (which they weren't), this issue has no bearing on the ten deposition limit.[5]

## IV.  Plaintiffs Have Failed to Demonstrate Good Cause Justifying Their Alleged Need for Additional Depositions

Plaintiffs should not be allowed to take additional depositions due solely to Plaintiffs' shotgun approach to discovery. This is, admittedly, a large, complex case; however, the complexity of the case does not, by itself, provide a sufficient basis for Plaintiffs taking

---

[5]  In this same vein, Plaintiffs try to evade the ten deposition limit by stating "it is important to note that Aventis did not come into existence until December 2000…Thus, discovery is necessary against Aventis and both of its predecessor companies…". Once again Plaintiffs ignore the fact that all 30(b)(6) designees who testify as to the activities of Rhone-Poulenc Rohrer or Hoechst Marion Roussel count as a single deposition.

unlimited discovery of Aventis and its employees. Despite the complexity of this litigation, the issue for the Court is a simple one: will the Court enforce the plain language of the rule limiting the Plaintiffs to ten depositions as to Aventis?

In determining whether to allow a motion to exceed the ten deposition limit of Fed. R. Civ. P. 30(a)(2)(A) and Local Rule 26.1(C), courts require the movant to demonstrate good cause pursuant to the principles of Fed. R. Civ. P. 26(b)(2). *Whittingham v. Amherst College*, 163 F.R.D. 170, 171 (D. Mass. 1995). Specifically, Fed. R. Civ. P. 26(b)(2) directs courts to limit discovery where:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Factors (i) and (ii) can be addressed in tandem. Plaintiffs have already taken six depositions pursuant to two separate Rule 30(b)(6) depositions as well as depositions of eight additional individual Aventis current and former employees. Any additional depositions would be unreasonably duplicative, and Plaintiffs have had ample opportunity to obtain information sought.

Plaintiffs fail to advise the Court that the Rule 30(b)(6) Notice referenced in their Cross-Motion is but one of three overlapping corporate-designee notices served within a 23-day period in this and the related Connecticut AG proceeding. The three notices seek witnesses

- 6 -

1804120v7

knowledgeable on all aspects of the maintenance and retrieval of sales transaction data, chargebacks, rebates, administrative fees, and discounts; witnesses as to eight expansive areas of inquiry -- over a period of twelve years as to a dizzying array of issues[6] related to the pricing and marketing of thirteen drugs, including Anzemet and Taxotere (as well as Lovenox)[7] by Aventis and its predecessor companies. (Notices attached as Ex. B). Aventis designated and Plaintiffs have deposed six witnesses pursuant to the MDL and Connecticut Notices at issue here (Ms. Brunken, Mr. Cervione, Mr. Gisserot[8], Mr. Hoppenot, Mr. Bianchi[9], and Mr. Pickhardt), all of whom were or are senior directors and/or vice presidents and were members of Aventis' Pricing Board.

### A. Ms. Brunken Fully Responded to Her Designated Inquiry Areas.

Plaintiffs' Cross-Motion complains that Ms. Brunken was "uninformed and unknowledgeable" about the areas for which she was designated. Plaintiffs fail to advise the Court that Ms. Brunken was the head of finance for the United States division of Rhone-Poulenc Rorer ("RPR") (a corporation that merged with Hoechst Marion Roussel ("HMR") to form Aventis in December 1999) and the Senior Director of Contracting for Aventis through 2004. In support of Plaintiffs' broad allegation, Plaintiffs cite only to testimony indicating that Ms. Brunken was unaware of how the *initial* price at launch was set for Anzemet, Taxotere, and

---

[6] Although the Rule 30(b)(6) notice denominates eight inquiry areas, each of these inquiry areas encompasses a wide range of activities by Aventis and its predecessor companies, including internal processes and strategies as to price setting, contracting, communications with government agencies, wholesalers, and pricing publications, accounting, sales, and marketing, as well as documents associated with those processes and strategies.
[7] The drug Lovenox is not at issue in this litigation. Nevertheless, Plaintiffs have chosen to reference in their Cross-Motion (at 3) a witness (Mr. Gisserot) who was designated by Aventis for Lovenox issues only in the related Connecticut AG action.
[8] Aventis designated and Plaintiffs deposed Mr. Gisserot in the Connecticut AG litigation on issues related to Lovenox only.
[9] Aventis designated and Plaintiffs deposed Christophe Bianchi in the Connecticut AG litigation on issues related to the launch of Lovenox.

1804120v7

Lovenox. In fact, the "subject area" about which Plaintiffs now complain does not appear in either of the Notices pursuant to which Ms. Brunken appeared. Indeed, Plaintiffs seek to ascribe – well after the fact – a degree of evidentiary specificity that is lacking in the language of the Notices themselves. *See Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727, 729-30 (D. Mass. 1985) (subject matters not listed in the 30(b)(6) notice are beyond the scope of the deposition).

As a member both of Aventis' Pricing Board during 2000 – 2004, and a member of Aventis' corporate predecessor's (RPR) pricing committee from 1995-1999, Ms. Brunken was prepared to fully address the process by which Aventis established the prices for its drugs. Instead of asking that question, however, Plaintiffs repeatedly asked her how the initial price was determined for various drugs. As Plaintiffs were certainly aware before beginning Ms. Brunken's deposition, the launch dates of many of the drugs at issue in Plaintiffs' Notice made such testimony impracticable: Calcimar, for example, was launched more than a quarter century ago, in 1978. Intal was launched in 1982, Cardizem and Carafate were launched in 1983, Azmacort was launched in 1984, and Trental was launched in 1985.

Moreover, even in those instances in which Ms. Brunken indicated she *was* involved in initial price setting (for Nasacort, for example) there was remarkably little questioning during the deposition considering the importance which Plaintiffs are now ascribing to such testimony. *See generally* July 22, 2005 Brunken Depo. Tr. (attached as Ex. C) at 25-28. Accordingly, this would appear to be a make weight argument.

Ms. Brunken testified extensively as to *the process for establishing and changing prices* for drugs at both Aventis and RPR. (*Id.* at 22, 25-39, 42-47, 50, 61-89). As to Aventis,

Ms. Brunken offered testimony regarding *the process for obtaining approvals* from the Pricing Board on price increases, the names and positions of other Pricing Board members, and the frequency of Aventis Pricing Board meetings (*Id.* at 28-33); and as to RPR, she *outlined the process* by which RPR considered and approved WAC price changes. (*Id.* at 54-58, 61-67). She also offered testimony regarding *the process* by which Aventis *approved and communicated* price increases (*Id.* at 67-71); and she described in detail the types of information that would be included in presentations to the Aventis Pricing Board, how the Pricing Board set pricing guidelines, and the methodologies employed by the Pricing Board when changing and approving contract pricing. (*Id.* at 77-89). A review of the Ms. Brunken's deposition unequivocally demonstrates that Ms. Brunken's testimony was fully responsive and knowledgeable as to the Areas of Inquiry for which she was designated.

**B.     Mr. Cervione Fully Responded to the Narrow Areas For Which He Was Designated – the Subjects Addressed in His Affidavit and Aventis' Pricing to Wholesalers and Direct Purchasers.**

Plaintiffs also complain about Mr. Cervione's testimony. Mr. Cervione is currently a vice president and a member of Aventis' Pricing Board. He was previously Aventis' Senior Director, Trade Development and Direct Sales. Mr. Cervione is the most senior person currently employed by Aventis with knowledge of trade administration issues relevant to this litigation. Plaintiffs neglect to advise the Court that Plaintiffs initially noticed Mr. Cervione for deposition in his individual capacity (Depo. Notice attached as Ex. D). Only thereafter did Aventis also designate Mr. Cervione as one of its 30(b)(6) witnesses to address Area of Inquiry No. 2 as to the subjects addressed in his February 18, 2004 affidavit filed in the MDL proceedings (Cervione Affidavit attached as Ex. E), and Area of Inquiry Nos. 3 and 4 as they relate to Aventis' pricing to wholesalers and direct purchasers. *See* Ex. B. Plaintiffs make no

complaint as to Mr. Cervione's testimony on the latter issues, and instead focus on Mr. Cervione's affidavit.

Mr. Cervione's affidavit generally addresses "the reporting of prices and price changes for Aventis products to direct purchase customers and to various pricing publications, including First DataBank and Redbook." (Affidavit, ¶ 1). The affidavit was submitted to demonstrate the lack of factual basis for Plaintiffs' claims as to the Together Rx Program, claims which Plaintiffs withdrew in their October 17 Third Amended Master Consolidated Complaint. As such, the affidavit focuses on First DataBank's unilateral decision in March 2002 to increase the spread between Wholesale List Prices ("WAC") and Average Wholesale Price ("AWP") to 25%. (Affidavit, ¶ 3). Plaintiffs do not complain about Mr. Cervione's ability to address this issue either.[10]

Plaintiffs' Cross-Motion incorrectly asserts that Mr. Cervione did "no investigation or research to prepare for" his deposition. Plaintiffs ignore Mr. Cervione's testimony where when asked by Plaintiffs' counsel "in preparing for today's deposition did you review any documents," Mr. Cervione replied "[y]es." *See generally* August 9, 2005 Cervione Depo. Tr. (attached as Ex. F) at 11. Mr. Cervione had personal knowledge of *the subjects addressed in his February 18, 2004 Together Rx affidavit filed in this proceeding, and as to Aventis' pricing to wholesalers and direct purchasers*, the narrow areas for which he was designated. Mr. Cervione had conversations with lawyers about the subject matter of the affidavit, the affidavit was then sent to him, he reviewed it for accuracy, and he signed it. (*Id.* at

---

[10]   In fact, based on the numerous questions Plaintiffs asked Mr. Cervione as to First DataBank, Plaintiffs appeared to be more interested in taking Mr. Cervione's deposition to bolster their separate lawsuit against First DataBank. *See generally* August 9, 2005 Cervione Depo. Tr. (attached as Ex. F) at 28-29, 31-38, and 41-43.

1804120v7

14-16). Plaintiffs' voluntary dismissal of all Together Rx claims further demonstrates the veracity of Mr. Cervione's affidavit.

Aventis also designated Mr. Cervione to discuss communications between Aventis and third parties regarding reporting of prices and price changes, and Mr. Cervione did just that – testifying as to Aventis' communications with third parties on these issues, including Aventis' communications with industry pricing compendia such as First DataBank. (*Id.* at 23-26). He explained his role in notifying direct purchase customers of price changes for Aventis products and the process for communicating such price changes or other types of information to customers. (*Id.* at 23-26, 109-112). Thus, a review of the deposition transcript unequivocally demonstrates that Mr. Cervione's testimony was fully responsive and that he was knowledgeable as to the Areas of Inquiry for which he was designated.

Plaintiffs also suggest that Mr. Cervione gave inaccurate testimony, which caused them to depose Ms. Chrenko. (Cross-Motion, at 4). Mr. Cervione testified that, to his knowledge, Ms. Chrenko was the only person "still at Aventis" who would know the process by which the policy was developed and approved, *how it was communicated, and to whom.* (*Id.* at 165-166). Plaintiffs fail to advise the Court, however, that Plaintiffs were aware before her deposition that Ms. Chrenko was a mere analyst, who had no policy-making duties or responsibilities. Indeed, it appears that Plaintiffs were interested in deposing Ms. Chrenko to discover information for use in Plaintiffs' suit against First DataBank, based upon her telephone conversation with her counterpart at First DataBank, discussing First DataBank's March 2002 decision to increase published AWPs for all drugs (which forms the basis of Plaintiffs' suit against First DataBank). *See generally* September 14, 2005 Chrenko Depo. Tr. (attached as Ex. G) at 159-160.

1804120v7

### C. Mr. Gisserot and Mr. Hoppenot Fully Responded to The Issues For Which They Were Designated.

Plaintiffs make the unsupported assertion that Mr. Gisserot and Mr. Hoppenot "were strikingly uninformed and unknowledgeable" and that they "admitted they did no investigation or research to prepare for their depositions". (Cross-Motion, at 4). Plaintiffs' assertion as to Mr. Gisserot is not only without factual basis, but disingenuous. Mr. Gisserot was not even designated as a witness in the MDL -- and his testimony was limited to Lovenox, a drug not at issue in the MDL.[11]

While it is difficult to respond to Plaintiffs' bald assertions that Mr. Hoppenot was "strikingly uninformed and unknowledgeable" and that he had done "no investigation or research to prepare for [his] deposition",[12] Mr. Hoppenot testified extensively regarding the Taxotere launch and both Aventis' and RPR's marketing and sales efforts related to Taxotere and Anzemet. He testified as to names and responsibilities of the members of the Taxotere launch team (*See generally* August 29, 2005 Hoppenot Depo. Tr. attached as Ex. I at 32-34, 94-96); its initial launch strategy (*Id.* at 18-21, 65-69); the process for developing the launch plan for

---

[11] During his August 12, 2005 deposition, Mr. Gisserot testified extensively as to the *nature of Aventis' efforts to market, promote or sell* Lovenox from 2001 through 2004 (*See generally* August 12, 2005 Gisserot Depo. Tr. attached as Ex. H at 19-20, 25-29, 38-44, 48-52, 60-61, 66-67, 69-70, 74, 78-81, 102, 109-115, 128-129), and he provided detailed information on the organization of the sales force that was responsible for marketing Lovenox (*Id.* at 53-58, 60-61). Mr. Gisserot, a member of the Pricing Board, also testified extensively regarding *the process by which Aventis establishes and changes prices* for Lovenox (*Id.* at 88-94, 96-101, 104, 126-127, 134, 139-140). Finally, Mr. Gisserot responded at length to questions about *discounts and rebates* offered in connection with Lovenox. (*Id.* at 95, 116-121).

[12] Plaintiffs' complaint appears to be that Aventis' Senior Vice Presidents do not possess an encyclopedic knowledge as to document custodial issues, such as the names of documents generated 10 years ago. (*See generally* August 29, 2005 Hoppenot Depo. Tr. attached as Ex. I at 21-32).

1804120v7

Taxotere (*Id.* at 71-73, 84-91); and the process for setting the initial price for Taxotere and for taking price increases. (*Id.* at 41-49).

## CONCLUSION

Considering the number of witnesses designated by Aventis, the number of depositions that have already occurred, and the number of depositions that are currently scheduled, there is no question that Aventis has acted diligently and in good faith in responding to Plaintiffs' barrage of deposition requests. Plaintiffs' shotgun listing of an additional dozen potential deponents (Ex. J to Cross-Motion), which includes one deponent who has been deceased for several years, is patently insufficient to carry Plaintiffs' burden of establishing that Plaintiffs are entitled to additional depositions. Because Plaintiffs have failed to demonstrate good cause under Fed. R. Civ. P. 26(b)(2)(i) or Fed. R. Civ. P. 26(b)(2)(ii) to exceed the discovery limits in Case Management Order 10, Fed. R. Civ. P. 30(a)(2)(A) and Local Rule 26.1(C), Plaintiffs' Cross-Motion should be denied.

Dated: November 16, 2005

Respectfully submitted,

/s/ Michael DeMarco
**Michael DeMarco (BBO #119960)**
    mdemarco@klng.com
**Jeffrey S. King (BBO #559000)**
    jking@klng.com
**David M. Glynn (BBO #650964)**
    dglynn@klng.com
**Cara E. Corbett (BBO #654852)**
    ecorbett@klng.com

1804120v7

KIRKPATRICK&LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109-1808
(617) 261-3100

Mike Koon
Jim Muehlberger
SHOOK HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

*Attorneys for Defendants Aventis*
*Pharmaceuticals Inc.*

1804120v7

## CERTIFICATE OF SERVICE

   I, Michael DeMarco, hereby certify that a true and correct copy of this document was served via Verilaw on all enrolled counsel on November _16_, 2005.

                /s/ Michael DeMarco
                Michael DeMarco