# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

_____
)
)
IN RE:  PHARMACEUTICAL INDUSTRY)
AVERAGE WHOLESALE PRICE         )
LITIGATION                                        )        MDL NO. 1456
                                                       )
_____)        CIVIL ACTION:  1:01-CV-12257-PBS
                                                       )
                                                       )        Judge Patti B. Saris
THIS DOCUMENT RELATES TO        )        Magistrate Judge Marianne B. Bowler
ALL ACTIONS                                   )
                                                       )
_____)

## DEFENDANT ABBOTT LABORATORIES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER EXEMPTING ABBOTT LABORATORIES FROM ANY ORDER DECLINING TO EXTEND DEADLINE FOR TRACK TWO DISCOVERY

On November 22, 2005, this Court denied Plaintiffs' Motion to Modify the Track Two Schedule.  While Abbott believes the Court's Order moots Plaintiffs' Motion for Order Exempting Abbott Laboratories From Any Order Declining to Extend Deadline for Track Two Discovery ("Plaintiffs' Motion"), to the extent the Court determines that Plaintiffs' Motion is not moot, Abbott hereby files this Opposition.

## INTRODUCTION

Due in large part to their own lack of diligence, Plaintiffs now request that the Court set a third track for discovery and other deadlines specifically for Abbott Laboratories ("Abbott").  As an initial matter, Plaintiffs have failed to confer with Abbott before filing their Motion in violation of Local Rule 7.1.  On that basis alone, the Court should not entertain Plaintiffs' Motion.

Should the Court nevertheless choose to consider Plaintiffs' Motion, the Court should deny it.  After taking a break from discovery of Track 2 Defendants for nearly a year, Plaintiffs attempt in their Motion to place the blame on Abbott for time lost.  Plaintiffs have demonstrated no reason, however, why Abbott should be put on its own track separate from the other twenty Track 2 codefendants.[1]  Indeed, Abbott already has been diligent and cooperative in the discovery process, having produced over 100,000 pages of documents and electronic sales data spanning 327 National Drug Codes ("NDCs") from two divisions at Abbott.  Abbott also has allowed Plaintiffs to interview Abbott witnesses about Abbott's sales transaction data; has twice provided and scheduled dates for a 30(b)(6) deposition; has scheduled dates for individual employee depositions; and has produced deposition transcripts of many witnesses who have previously been deposed in other AWP litigation.  In sum, Abbott has complied and continues to comply with its discovery obligations.  That Plaintiffs are not where they hoped to be given the impending close of discovery is their own fault.

Finally, Plaintiffs fail to acknowledge let alone address the implications of what they are really asking for -- that the Court at this late date establish yet a third track for these cases. Neither this Court nor Abbott should have to endure three discovery schedules, three sets of class certification motions, three sets of expert reports, and three sets of summary judgment motions.

---

[1] Plaintiffs also appear to have asked for an additional six months of discovery for Track 2 Defendants Amgen and Baxter in Plaintiffs' motions to compel filed against those Defendants.  *See* Motion to Compel Production of Amgen; Motion to Compel Production of Baxter.  Plaintiffs and Baxter filed an agreed motion on November 22, 2005 to extend the schedule as to Baxter in exchange for withdrawal of the Motion to Compel Baxter. *See* Plaintiffs' and Defendant Baxter's Joint Agreed Motion for Extension of Track II Discovery Schedule with Respect to Baxter.

**ARGUMENT**

**I.      The Court Should Not Entertain Plaintiffs' Motion Because Plaintiffs Failed to Confer with Abbott Before They Filed Their Motion**

Plaintiffs failed to confer with Abbott before filing their Motion.  Local Rule 7.1 provides that "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  Plaintiffs make no such certification.  Plaintiffs' failure to confer is particularly egregious in this instance, given that counsel for Plaintiffs spoke with Abbott's counsel regarding depositions the evening before Plaintiffs filed their Motion. Declaration of Toni-Ann Citera ("Citera Decl.") at ¶ 10 (attached as Exhibit 1).  Plaintiffs never suggested during that call or at any time that they would be filing such a motion.  *Id.* at ¶ 14. Instead, in a clear effort to sandbag Abbott, Plaintiffs chose to file and serve their Motion approximately forty-five minutes before Magistrate Bowler was scheduled to hear Plaintiffs' related Motion to Modify the Track 2 Schedule, when counsel for Abbott was already present in the Courthouse for the hearing.[2]  *Id.*  Had Plaintiffs informed Abbott of their intent to file a motion as the rules contemplate, Abbott could have corrected the false premises upon which Plaintiffs purport to base their Motion.[3]

**II.   Should the Court Choose to Entertain Plaintiffs' Motion, the Motion Should be Denied.**

Any delay in discovery of Abbott (or any other Track 2 Defendant for that matter) is the result of Plaintiffs' own doing.  Plaintiffs admit as much in their Motion to Modify the Track 2 Schedule:  "the work necessary for Plaintiffs to react to the Court's Track One Class Order, prepare the Track One expert disclosures, and brief the Track One Defendants' petition to

---

[2] At the hearing, Magistrate Bowler informed the parties that there had been a scheduling error and that she would not decide Plaintiffs' Motion to Modify the Track 2 Schedule, deferring decision to this Court.

[3] This is not Plaintiffs' first offense.  In Amgen's Opposition to Plaintiffs' Motion to Compel, Amgen argued that Plaintiffs' failure to confer before filing its motion "alone should serve as a basis for denial." Amgen's Opposition to Plaintiffs' Motion to Compel at 4, n.2.  Given Plaintiffs' repeated failure to comply with the rules, the Court should not entertain Plaintiffs' Motion.

appeal, *have made it difficult to substantially advance the discovery against the Track Two Defendants.*"  Plaintiffs' Motion to Modify the Track Two Schedule at 6 (emphasis added). Indeed, Abbott's situation is no different than that of Track 2 Defendants Pharmacia and Amgen, as explained in the Track 2 Defendants' Opposition to Plaintiffs' Motion to Modify the Schedule (*See* Track Two Defendants' Opposition to Plaintiffs' Motion to Modify the Track 2 Discovery Schedule and Cross Motion for Entry of Case Management Order 16 at 7-8) -- Plaintiffs let almost a year pass while Abbott waited for a narrowed list of drugs from Plaintiffs (a list that Abbott has yet to receive).  Citera Decl. at ¶¶ 7-8.  Now Plaintiffs, at the eleventh hour and in a transparent attempt to cover up their own lack of diligence, accuse Abbott of delay and in effect ask this Court to create a new discovery schedule, a new class certification schedule, a new expert schedule and a new summary judgment schedule, separating Abbott from the other twenty Track 2 Defendants.

### A.  Abbott's Document and Data Production Has Not Been Untimely

Abbott made its initial production in 2002 pursuant to Case Management Order 5 ("CMO 5").  Citera Decl. at ¶ 2, Exhibit A.  On March 31, 2004, Plaintiffs served their Omnibus Discovery Requests on all Defendants.  *Id.* at ¶ 3, Exhibit B.  The Omnibus Discovery Requests contained 82 separate requests (not including sub-parts).  *Id.*  The requests sought discovery of 23 Abbott drugs, 227 Abbott NDCs, from two distinct divisions of Abbott.  *Id.*  Shortly thereafter, the parties engaged in a meet and confer in an attempt to narrow the scope of the requests.  *Id.* at ¶ 4, Exhibit C.  During the meet and confer, Abbott's counsel suggested to Plaintiffs that they might not be interested in discovery of all of the Abbott drugs named in the AMCC, given the minimal sales of many of the named drugs to non-hospitals.  *Id.*  To save both Abbott and Plaintiffs from having to engage in what ultimately might be wasteful discovery,

Abbott agreed to produce sales transaction data for the named drugs to enable Plaintiffs to select those drugs for which they wanted to pursue additional discovery.  *Id.*  Plaintiffs agreed to inform Abbott of its "triage decisions" after they had reviewed and analyzed the data.  *Id.*

Abbott produced sales transaction data for the Abbott drugs named in the AMCC on July 16, 2004 and July 23, 2004.[4]  *Id.* at ¶ 6, Exhibit E.  Abbott did not hear back from Plaintiffs until almost a year later and to this date has not been informed of any "triage decisions" that Plaintiffs have made with respect to the drugs at issue in discovery.  *Id.* at ¶¶ 7-8; Declaration of Beth O'Connor ("O'Connor Decl.") at ¶ 3 (attached as Exhibit 2).

Indeed, Plaintiffs did not pursue discovery against Abbott again until May 2005.  O'Connor Decl. at ¶ 3, Exhibit A.  Since that time, Abbott has produced approximately 50,000 pages of documents (in addition to thousands of documents previously produced pursuant to CMOs 5 and 10); has provided requested information about its sales staff and sales data; has allowed Plaintiffs' counsel to interview three witnesses regarding Abbott's sales transaction data; has produced a privilege log (which Abbott later revised at Plaintiffs' request); and has scheduled several depositions of Abbott witnesses as well as Abbott's corporate designee.  *Id.* at ¶¶ 10, 14-17, 22 and 24; Citera Decl. ¶ 16.[5]  In total, Abbott has expended significant resources responding to Plaintiffs' discovery requests in this case.

---

[4]  In addition to transaction data, Abbott made additional documents available to Plaintiffs in June 2004. Citera Decl. at ¶ 5, Exhibit D.  Plaintiffs never made arrangements to review the documents.  *Id.*  Ultimately, Abbott simply produced the documents electronically.  O'Connor Decl. at ¶¶ 8, 10-12, Exhibits E, G, H and I.

[5]  In support of their argument for an extension as to Abbott, Plaintiffs contend that Abbott failed to make a production between July 2005 and November 4, 2005.  Plaintiffs' Motion at ¶ 8.  This is simply not true.  Abbott produced thousands of responsive pages on August 29, 2005.  O'Connor Decl. at ¶ 15, Exhibit K.

Plaintiffs' contention that Abbott has failed to produce responsive e-mails similarly rings hollow.  *See* Plaintiffs' Motion at ¶¶ 7-8.  Abbott has produced numerous e-mails from its employees.  O'Connor Decl. at ¶ 4. Plaintiffs have demanded and Abbott has agreed to also do an electronic search for e-mails once Plaintiffs provide Abbott with a list of persons and terms to search.  *Id.*  Plaintiffs, however, never provided Abbott with the list of persons needed for the search.  *Id.* at ¶¶. 8-9

Finally, unable to take issue with the scores of documents Abbott has produced, Plaintiffs complain that many of the Abbott documents were documents produced pursuant to CMOs 5 and 10 and "[t]hus, . . . were not directly responsive to plaintiffs' Omnibus Requests."  Plaintiffs' Motion at ¶ 6.  Many of these same documents,

**B.       Abbott Has Made Its Employees Available for Interviews And Depositions**

In Spring 2005, Plaintiffs noticed two sets of depositions -- one related to the sales

transaction data Abbott produced (the "Sales Data 30(b)(6) Notice") and the other related to the

identification of documents Abbott maintained (the "Identification of Documents 30(b)(6)

Notice"). O'Connor Decl. at ¶ 19, Exhibits M, N. As to the Sales Data 30(b)(6) Notice, the

parties agreed that Plaintiffs would interview Abbott's data witnesses rather than take a formal

deposition. *Id.* at ¶ 20. This practice was similarly done for many of the Track 1 Defendants.

Abbott made its data witnesses available on July 15, 2005. *Id.* at ¶ 20, Exhibit O. Plaintiffs

cancelled two days before the interview, because their experts had not yet processed Abbott's

data. *Id.* at ¶ 21, Exhibit P. Plaintiffs ultimately interviewed three Abbott data witnesses on

August 11, 2005. *Id.* at ¶ 22.

As to the Identification of Documents 30(b)(6) Notice, Abbott's counsel, following

receipt of the Notice, had several conversations with Plaintiffs' counsel about Abbott's designee

and scheduling of the deposition. *Id.* at ¶¶ 23-25, Exhibits Q-S. Abbott followed up its

discussions regarding the Notice with a letter on August 3, 2005 formally designating a witness

and setting forth Abbott's objections to the Notice. *Id.* at ¶ 26, Exhibit T. The parties promptly

scheduled the deposition for August 17, 2005. *Id.* at ¶ 25, Exhibit S. The day before the

deposition was scheduled to occur, the Court issued its class certification opinion related to

Track 1 Defendants. As a result of that ruling and the fact that Plaintiffs indicated that they

intended to serve yet another Rule 30(b)(6) notice on Abbott, which would require testimony

from the same corporate designee, the parties agreed, at Plaintiffs' initiation, to postpone the

---

(continued…)

however, are responsive to Plaintiffs' Omnibus Requests. O'Connor Decl. at ¶ 13. That they happened to be
produced pursuant to CMOs 5 and 10 is irrelevant.

deposition.  Declaration of Tina M. Tabacchi ("Tabacchi Decl.") at ¶¶ 3-4 (attached as Exhibit 3).  Plaintiffs also agreed to provide Abbott's counsel with additional information concerning the competitive information they were seeking in connection with the 30(b)(6) deposition (which Abbott has yet to receive).  *Id.* at ¶ 4.

Plaintiffs subsequently expanded the Identification of Documents 30(b)(6) Notice on August 17, 2005.  O'Connor Decl. at ¶ 27, Exhibit U.  Following the revised notice -- and contrary to Plaintiffs' claim that they "*never* received a response" to their revised notice (*see* Plaintiffs' Motion at ¶¶ 10-11 (emphasis in original)) -- the parties had discussions regarding the notice and scheduling in September 2005 after Plaintiffs expressed an intention to extend the discovery schedule as to all Track 2 Defendants, including Abbott.  Tabacchi Decl. at ¶ 6.  Abbott followed up its discussions with a formal letter designating its witness and setting forth its objections to the notice on November 7, 2005 and the parties subsequently scheduled the deposition.  O'Connor Decl. at ¶ 28, Exhibit V; Tabacchi Decl. at ¶ 8, Exhibit D.

Plaintiffs have since noticed the depositions of seventeen current and former Abbott employees.  Citera Decl. at ¶ 9, Exhibit G.  It is clear that Plaintiffs' notice -- sent shortly before the hearing in front of Magistrate Bowler -- was nothing more than an attempt to make a record prior to the hearing.  Upon receipt of the notice, Abbott's counsel telephoned Plaintiffs regarding scheduling.  *Id.* at ¶ 10.  Plaintiffs, on the other hand, appeared content to simply let the dates in the notice pass.  Following the parties' conversation, Abbott produced transcripts of depositions of some of the noticed witnesses and provided proposed deposition dates for the current

employees noticed.[6]  *Id.* at ¶¶ 13, 15, Exhibits I, J.  Those depositions are scheduled to go

forward in the next few weeks.[7]  *Id.* at ¶ 16, Exhibit K.

### C.  Plaintiffs Have Failed to Show Why The Court Should Create A Separate Track for Class Plaintiffs' Litigation Against Abbott

Plaintiffs have made no showing as to why Abbott deserves different treatment than its

Track 2 codefendants.  Indeed, Abbott was not among the Defendants Plaintiffs accused of being

dilatory in Plaintiffs' Motion to Modify the Track Two Schedule.  *See* Plaintiffs' Motion for To

Modify the Track Two Schedule at 5-6.  Nor, as evidenced by the flurry of recent motions,

deposition notices, and discovery requests, is Abbott the *only* defendant from whom Plaintiffs

contend they still need discovery.  In just the last month, Plaintiffs have served at least nine

deposition notices (most with multiple deponents), two motions to compel, and four discovery

requests (one directed to *all* Track 2 Defendants) on *other* Track 2 Defendants.

In their Motion, Plaintiffs ignore the fact that what they are really seeking is an entirely

separate track for Abbott.  More importantly, Plaintiffs gloss over all that a separate track entails.

Were Plaintiffs' Motion granted, the Court would have no choice but to have a third set of class

certification motions, a third set of expert reports and expert discovery, and a third set of

summary judgment motions.  Two tracks are more than enough.

### CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court deny Plaintiffs

Motion For Order Exempting Defendant Abbott Laboratories From Any Order Refusing to

Extend Deadline For Track Two Discovery.

---

[6]Abbott's former employees are represented by separate counsel.  *Id.* at ¶ 11, Exhibit H.  Abbott provided the necessary contact information to Plaintiffs in their discussion on November 9, 2005 and in a letter to Plaintiffs dated November 16, 2005.  *Id.*

[7] Without waiving its objection to Plaintiffs' requested extension of six months, Abbott has agreed to allow some depositions to go past the December 3, 2005 cut-off date.

Dated: November 23, 2005                    Respectfully submitted,


/s/ Toni-Ann Citera
James R. Daly
Tara A. Fumerton
JONES DAY
77 West Wacker Drive
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7306

**CERTIFICATE OF SERVICE**

I, Toni-Ann Citera, hereby certify that I am one of Abbott Laboratories' attorneys, and that on November 23 2005, I caused a true and correct copy of the foregoing Defendant Abbott Laboratories' Opposition to Plaintiffs' Motion for Order Exempting Abbott Laboratories from Any Order Declining to Extend Deadline for Track Two Discovery and the accompanying Declarations of Toni-Ann Citera, Beth A. O'Connor and Tina M. Tabacchi to be served on all counsel of record electronically by causing same to be posted via LexisNexis.

Dated: November 23, 2005

/s/ Toni-Ann Citera
_____
Toni-Ann Citera