UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 CIVIL ACTION: 01-CV-12257-PBS |
| ) THIS DOCUMENT RELATES TO ) ALL ACTIONS ) ) | Judge Patti B. Saris |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE BOWLER'S RULING ON JOHNSON & JOHNSON'S MOTION TO DETERMINE THE SUFFICIENCY OF PLAINTIFFS' RESPONSES TO REQUEST FOR ADMISSIONS AND INTERROGATORIES CONCERNING REMICADE AND PROCRIT**

Plaintiffs respectfully submit this Objection to Magistrate Judge Bowler's ruling of November 9, 2005, in which Magistrate Bowler overruled Plaintiffs' objections to many of the Johnson & Johnson Defendants' ("J&J") Request for Admissions ("RFAs") and Interrogatories concerning various cost and pricing issues of the J&J drugs Remicade and Procrit.

**Procedural Background**

Magistrate Bowler considered J&J's Motion to Determine the Sufficiency of Plaintiffs' Responses to Request for Admissions and Interrogatories Concerning Remicade and Procrit, docket # 1725, at a hearing on November 9, 2005. Magistrate Bowler ruled from the Bench that Plaintiffs should provide answers to most of the RFAs and Interrogatories, without further explanation. To date, no written Order or Memorandum has been issued. A copy of the November 9, 2005 Hearing Transcript is attached as Exhibit A. Copies of J&J's RFAs and Interrogatories are attached as Exhibits B and C. The Plaintiffs' Responses are attached as Exhibits D and E.

J&J's RFAs and Interrogatories require the Plaintiffs to perform complicated calculations and analyze voluminous data from both J&J and third parties.  J&J's discovery is objectionable because it goes well beyond seeking factual information, and instead impermissibly seeks data and analysis that, if proper at all, is the subject of expert opinion.  J&J's discovery also impermissibly seeks to have Plaintiffs review J&J's data and state what J&J's own prices and financial information are.  As such, J&J's RFAs and Interrogatories are objectionable.

1. **Plaintiffs Cannot Be Compelled to Perform Complex Calculations with Formulas Created by J&J**.

J&J served RFAs and Interrogatories requiring Plaintiffs to calculate the "average net reimbursement cost" and "average net acquisition cost" for both Procrit and Remicade throughout the class period. (Remicade Irog 11, Procrit Irog 5).  Such terms are not within the Complaint, and have never been used by Plaintiffs for any purpose in this litigation.  J&J generally attempts to define these novel terms in the definition section of the RFAs for both Procrit and Remicade, see Exhibits B and C, p. 2-3.  To the extent Plaintiffs' experts employ terms or calculations similar to "average net reimbursement cost" or "average net acquisition cost" the reports of Plaintiffs' experts will provide details on such calculations.[1]  If J&J believes these calculations are relevant, it should have its own experts perform the calculations.

Both terms are difficult, if not impossible, for Plaintiffs to calculate and would require Plaintiffs to seek additional data.  For example, the J&J term "net acquisition cost" asks for the amount, net of any rebates or other price adjustments, anyone, including pharmacies, hospitals or

---

[1] This Court has just ordered that Plaintiffs' Expert Reports be filed by December 15, 2005, *See* Case Management Order #17, November 21, 2005.

physicians, pay to acquire Procrit or Remicade. To make this calculation, Plaintiffs would have to gather 7 years of actual sales data for Remicade and 14 years of Procrit data from physicians, pharmacies and others across the country. Given that J&J witnesses have repeatedly stated that they did not know what price people were paying to acquire their products, it is unreasonable to demand, as part of merits discovery, that Plaintiffs produce such information. As to net acquisition cost, Magistrate Bowler has already recognized the impossibility of this task and ruled that Plaintiffs did not have to calculate "net acquisition cost" see Transcript p. 15.

Similarly, the term "net reimbursement cost" as vaguely defined by J&J, appears to ask for the amount, net of rebates or other price adjustments, paid by a third party payor or patient for Procrit or Remicade. To obtain this information Plaintiffs would need to gather a comprehensive set of data revealing actual reimbursement payments, confidential rebate payments and other data from insurers across America. Such data would need to extend back to 1998 for Remicade or 1991 for Procrit. The Defendants have repeatedly argued that third-party payors reimburse for drugs through a variety of formulas and mechanisms, and therefore are not susceptible to class treatment. Plaintiffs assert that a reasonable estimate of overall reimbursement is possible, and Plaintiffs' expert report will address this issue. It is improper for J&J to now demand that Plaintiffs calculate, outside of their expert analysis, nationwide net reimbursement costs based on J&J's assumptions.

The calculation and analysis of complex, multi-part formulas is not appropriate for interrogatories or requests for admissions. It is well established that the purpose of requests for admissions is to remove from debate uncontested facts. *See United States v. Chevron U.S. Inc.*, 1989 WL 100927, *4 (E.D.Pa.)(attached as Exhibit F) ("a request should be stated in

simple and concise terms so that it can be admitted or denied with a minimum of an explanation or qualification."). Requests should not involve compilations of data or seek multiple conclusions. *Id.* at *5 and *Caruso v. Coleman Co.,* 1995 WL 347003, *5 (E.D. PA)(attached as Exhibit G).

J&J's RFAs are not fashioned in simple or concise terms, nor do they seek to adduce uncomplicated facts. For Plaintiffs to admit or deny Remicade RFA 8 and Procrit RFA 3, and to answer the corresponding Interrogatories, would require Plaintiffs to perform complex calculations that are within the province of experts. As such, those RFAs and Interrogatories are properly objected to.

### 1.    J&J's Formulas are Irrelevant

A calculation of "net acquisition cost" is not relevant to Plaintiffs' theory. As has been stated many times, Plaintiffs' theory is that AWP has been fraudulently manipulated and overstated by the Defendants to their benefit, and to the detriment of the class. Plaintiffs have alleged that providers, including physicians, have charged for and been reimbursed at prices based on AWP.[2]

Similarly irrelevant is J&J's demand that Plaintiffs, after determining net acquisition cost and net reimbursement cost, then calculate the difference between those two figures for both Procrit and Remicade to determine J&J's version of the spread. However this is not the spread

---

[2] Plaintiffs' objections to the RFAs and Interrogatories do not specifically raise the grounds of irrelevance. Plaintiffs did not understand until the meet-and-confer session that J&J was seeking calculations of its own spread, and its various components, to support some type of defense.

that is at issue in the AMCC.[3] Plaintiffs are then improperly asked to admit or deny that the J&J definition of spread was at all times less than a different AWP-based spread for Procrit and Remicade throughout the class period. (Remicade RFA 8, Irog 8; Procrit RFA 3, Irog 6). To the extent any of the information J&J seeks is part of the basis of the opinions of Plaintiffs' experts, such data will be produced with the expert reports on December 15, 2005.

    **2.    Plaintiffs Should Not be Required to Provide Average Sale Price (ASP) Data in Discovery**

J&J seeks to have Plaintiffs state the Average Sales Price ("ASP") for J&J products Remicade and Procrit throughout the Class Period (Remicade Irog 10, Procrit Irog 4). Of course all of the information necessary to calculate ASPs, such as the actual sales prices, discounts, rebates and other factors, is in J&J's possession.

Initially, Plaintiffs note that the Court has already refused to allow discovery on ASPs. When Plaintiffs sought information concerning the ASP for Remicade and Procrit, Defendants, including J&J, objected, and their objections were upheld by this Court.[4] Thus, for J&J to now demand that Plaintiffs answer Interrogatories based on ASPs is patently unreasonable. Magistrate Bowler did not explain the apparent inconsistencies between her ruling of September 27, 2004 and her current ruling. *See* Nov. 9 transcript at p. 21.

---

[3] Plaintiffs also note the inconsistency in J&J's "spreads". For Remicade, J&J wants to assert that it is not liable because the J&J "spread" between acquisition cost and reimbursement cost is less than the spread between AWP and WAC (Remicade RFA 8). However for Procrit J&J wants to compare its "spread" to the spread between AWP and ASP (which is certainly larger than the spread between AWP and WAC) (Procrit RFA 3). Presumably a similar comparison of AWP to WAC spread for Procrit will not generate the result J&J wants, so that approach is abandoned. This manipulation of their own self-serving formulas highlights the unreasonableness of J&J's demand that Plaintiffs provide detailed calculations of items not part of Plaintiffs' theories.

[4] See Order of September 27, 2004, denying Plaintiffs' motion to compel ASP data.

5

It is also likely that Plaintiffs' experts will perform their own ASP calculations as part of their damage analysis.  Indeed J&J's discovery defines ASPs as the "Average Selling Price as defined in the declarations of Raymond S. Hartman."  Thus J&J recognizes that calculation of ASPs is the subject of expert analysis.  Nevertheless, J&J demands that Plaintiffs provide ASP data in discovery.  However, as Plaintiffs clearly state in their objections, much of the information necessary to answer such discovery is not available or is in the possession of J&J.  *See Chevron, supra*, at *4.  The ASP related data used by Plaintiffs will be referenced in Plaintiffs' expert reports on December 15, 2005.

### 3. Plaintiffs Should Not Be Forced to Tell J&J What Rebates J&J Paid

Remicade RFA and Interrogatories 3,4,5,6 and 7 all seek admissions or information about which customers received rebates for Remicade and the impact of such rebates.  While Plaintiffs have obtained data and testimony concerning rebates, that testimony and data is conflicting and Plaintiffs have no way of knowing whether it is complete.  For example, even though Centocor Rule 30(b)(6) designee John Hoffman testified that some type of payments or rebates of either 6 or 8 percent were, in some years, paid to certain Managed Care Organizations the very next day Laura Glassco, a senior Centocor sales executive, testified that she was aware of higher rebates to at least one customer.

As noted above, all of the information necessary to determine the amount of rebates paid by J&J, and to whom, comes from J&J and is in J&J's possession.  It is not a reasonable use of discovery to require Plaintiffs to review and analyze J&J's own data to tell J&J what rebates it paid.  To the extent rebate information from J&J is used in Plaintiffs' expert reports, such information will be provided on December 15, 2005.

### 4. Plaintiffs Should Not Be Forced to Tell J&J What J&J's Prices Were

J&J also wants Plaintiffs to respond to Interrogatories asking for the published WAC and AWP prices for Remicade and Procrit throughout the class period (Procrit Irog 3, Remicade Irog 9) and to indicate the nature of certain AWP based spreads (Remicade RFA 2,8 and Interrogatories 2,8; Procrit RFAs 2,3 and Interrogatories 2,6). Of course it was J&J who controlled the creation and publication of WAC and AWP information for Procrit and Remicade, and such information is within J&J's possession. J&J is essentially asking Plaintiffs to compile data from its own documents. As such, discovery seeking an analysis of J&J's own documents is inappropriate and properly objected to. *Espinal v. Coughlin*, 2000 WL 245879 (S.D.NY). To the extent certain RFAs seek admissions based on J&J's improper Interrogatories, Plaintiffs' objections to the RFAs are appropriate. *See* Plaintiffs' Response to Procrit RFA3.

**Conclusion**

For all the reasons set forth above, Plaintiffs' objections and responses to J&J's RFAs and Interrogatories are appropriate. Therefore Magistrate Bowler's ruling requiring substantive answers to such discovery should be overruled and J&J's Motion to Determine the Sufficiency of Plaintiffs' Responses should be denied in all respects.

Date: November 23, 2005         /s/ John Macoretta
                                Jeffrey L. Kodroff
                                John A. Macoretta
                                **SPECTOR ROSEMAN & KODROFF**
                                1818 Market Street
                                Suite 2500
                                Philadelphia, PA 19103
                                Telephone: (215) 496-0300

Marc H. Edelson
Allan Hoffman
**Hoffman & Edelson**
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
**Hagens Berman Sobol Shapiro LLP**
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700

Steve W. Berman
Sean R. Matt
Robert Gaudet
**Hagens Berman Sobol Shapiro LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292

Samuel Heins
**Heins, Mills & Olson, P.C.**
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605

Kenneth A. Wexler
**The Wexler Firm, LLP**
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222