# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) <br> ) MDL No. 1456 <br> ) <br> ) <br> ) CIVIL ACTION: 01-CV-12257 PBS <br> ) |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) <br> ) Judge Patti B. Saris <br> ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER CONCERNING SUBPOENAS ISSUED BY DEY, INC. TO TUFTS ASSOCIATED HEALTH PLANS, INC. AND NEIGHBORHOOD HEALTH PLAN, INC.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................- 1 -

II.     FACTUAL BACKGROUND..............................................................................- 2 -

III.    ARGUMENT .......................................................................................................- 6 -

        A.      Discovery of Absent Class Members Must Be Supported By Specific Need ..........- 6 -

        B.      The Use By Defendants Of Track II Defendant Dey To Serve This Subpoena Is A
                Subterfuge And The Request Is Untimely Under the Track I Discovery Cutoff......- 9 -

IV.     CONCLUSION ...................................................................................................- 10 -

# I.   INTRODUCTION

This motion requests that the Court call to an end the defendants' unremitting and improper campaign to impose duplicative and burdensome discovery demands on absent members of the plaintiff class in this proceeding.

During the Track I discovery phase of this case, defendants subpoenaed *over 40* health plans, covering *more than 50 percent* of all persons in the United States who have health insurance.  On November 9, 2005, based on defendants' representation that they needed discovery of an additional health plans to complete what they called a representative industry sample of health insurers, the Court granted defendants leave to obtain documents and deposition testimony from *six more* health plans.

On the very day they were petitioning the Court to depose the additional six health plans, defendants issued identical subpoenas to *two more* health plans, Tufts Associated Health Plans, Inc. ("Tufts Health") and Neighborhood Health Plan, Inc. ("Neighborhood Health").  With Track I discovery closed, the subpoenas were purportedly issued on behalf of Track II defendant Dey, Inc. ("Dey").  But the subpoenas sought discovery concerning *only five* drugs manufactured by Dey -- and *147 drugs* manufactured by the Track I defendants.

The subpoenas are invasive and extraordinarily burdensome, seeking a dizzying array of demands for 38 categories of documents and 28 categories of testimony including many for information that has no bearing on the case as currently framed, e.g., documents concerning the health plans' dealings with PBMs.

Defendants' subpoenas to Tufts Health and Neighborhood Health run afoul of class action concepts because they require affirmative conduct on the part of companies that are absent class members and may never be parties to the action.  The MANUAL FOR COMPLEX LITIGATION recognizes that discovery of absent class members "should be permitted only to the extent necessary and should be carefully limited to ensure that it serves a legitimate purpose and is not

used to harass either the class representatives or the class members." Manual for Complex Litigation, Third, § 30.232 at 231 (1995) (hereafter "Manual").  Defendants' discovery campaign far exceeds what the defendants themselves have represented they need.  There is no compelling need for the additional discovery defendants now demand.

Defendants' subpoenas to Tufts Health and Neighborhood Health also represent an improper attempt to end run the Track I discovery cut-off.  All defendants' prior health plan subpoenas included requests for information concerning Dey products.  Dey, like all other defendants, has had the opportunity to attend and cross-examine at all health plan depositions, and has had the benefit of that discovery.  These subpoenas are not in furtherance of a specialized discovery need of Dey.  The discovery is for the benefit of all defendants – and particularly, given the number of drugs listed, the Track I defendants -- but advanced through the subterfuge of Track II defendant service.

For these reasons and others and set forth herein, defendants should be barred from taking the additional discovery of Tufts Health and Neighborhood Health.

## II.     FACTUAL BACKGROUND

On November 9, 2005, Track II defendant Dey issued subpoenas to two Massachusetts absent class member health plans, Tufts Health and Neighborhood Health.

The information that defendants seek from Tufts Health and Neighborhood Health is summarized as follows:[1]

- All documents relating to AWPs; the setting of reimbursement and payment rates; costs and reimbursement to providers; and purported awareness of the difference between costs and reimbursement.

- All documents related to processing policies and procedures.

- All documents related to all payments made based in whole or in part on AWP and all communications relating to reimbursements.

---

[1] Defendants' subpoenas are broader than this summary indicates, and plaintiffs' intent here is to highlight only the more salient categories of information that defendants seek.  The Court can review each individual demand for documents by reviewing the subpoenas attached as exhibits A and B to this memorandum.

- All documents related to the decision to rely on drug pricing information from a publisher.

- Documents from any publisher.

- All documents related to AWP's; the difference between AWP and payments made; and AMP, WAC, MAC, EAC, Best Price.

- All documents related to contractual relationships with PBMs, third-party administrators, consultants, and auditors.

- All documents related to almost 400 "subject drugs."

- All documents that identify persons involved in contractual relationships with PBMs.

- All documents regarding Plan profit analyses.

- All documents relating to internal and external investigations, studies, analyses or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug.

- All filings with any state or federal governmental entity and relating to AWP.

- All documents from CMS, HHS, or any other federal agency regarding the pricing of drugs.

- All documents produced in any litigation, government investigation, or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

- Organizational charts.

Defendants have already subpoenaed and sought depositions and documents concerning precisely these categories of information from *over 40 health plans*, including the following:

| Absent Class Member | Estimated Covered Lives |
|---|---|
| Kaiser | 8.2 million people |
| Coventry Healthcare | 2.5 million |
| UPMC Health Plan | .4 million |
| Intermountain Healthcare | .45 million |
| Blue Cross Blue Shield of Illinois | 6.5 million |
| Harvard Pilgrim Healthcare | .785 million |
| Beacon Vista | .330 million |
| Horizon Blue Cross Blue Shield | 3.1 million |
| Three Rivers Health Plans | .25 million |
| Blue Cross Blue Shield of Montana | .24 million |
| Independent Health | .375 million |
| Wellmark  Blue Cross Blue Shield | 1.8 million |

| Empire Blue Cross Blue Shield | 4.8 million |
|---|---|
| Blue Cross Blue Shield of Wyoming | .1 million |
| Health Net | 6.5 million |
| Anthem | 28 million |
| Aetna | 14.435 million |
| Humana | 7 million |
| Blue Cross Blue Shield of Mississippi | 1 million |
| Anthem Blue Cross Blue Shield Virginia | 2 million |
| Anthem Blue Cross Blue Shield Ohio | 2 million |
| Anthem, Inc. | 9 million |
| CIGNA | 20 million |
| Arkansas Blue Cross Blue Shield | 1 million |
| Blue Cross Blue Shied Association | 4 million |
| United Health Group | 20 million |
| Blue Cross Blue Shield of Alabama | 1 million |
| Blue Cross Blue Shield of Florida | 4 million |
| Blue Cross Blue Shield of Kansas | .5 million |
| Blue Cross Blue Shield of Michigan | 4 million |
| Blue Cross Blue Shield of Nebraska | 1 million |
| Blue Cross Blue Shield of North Dakota | .3 million |
| Blue Cross Blue Shield of South Carolina | 1 million |
| Blue Cross Blue Shield of Tennessee | 3 million |
| Blue Shield of California | 2 million |
| Highmark Blue Cross Blue Shield | 4 million |
| Independence Blue Cross | 2 million |
| Pacificare Health Systems | 4 million |
| Premera Blue Cross | 2 million |
| Regence Blue Cross Blue Shield | 4 million |

These health plans represent more than *50 percent* of the individuals covered by private health insurance in the United States.  In addition, defendants have subpoenaed and are in the process of obtaining discovery from six more health plans: Blue Cross Blue Shield of Vermont, Carefirst Blue Cross Blue Shield, Hawaii Medical Service Association, Excellus Blue Cross Blue Shield, Mutual of Omaha Insurance Company, and Blue Cross Blue Shield of Massachusetts.  These plans represent coverage for an additional *more than 10 million* covered lives.

The issue of the scope of permissible discovery of absent class members has been raised in this proceeding before.  At each turn, the defendants have represented to the Court that each health plan from which they sought discovery was needed because it was a *critical part of a representative sample*, and that its discovery was limited to the sample group.  For example:

- In their opposition to a motion by plaintiffs in December 2003 to limit non-party health plan discovery, the defendants represented that they had "compiled a list of forty Health Plans from among thousands of plans operating around the United States.  The targeted Health Plans were intended to represent a cross-section of the industry, in terms of geographic diversity, size and type of plan." *Defendants' Memorandum in Opposition to Plaintiffs' Motion for a Protective Order,* dated January 9, 2004, at 6.

- At a status conference before Judge Saris at which this motion was raised, on March 8, 2004, defendants again represented that they were seeking discovery only of the health plans that comprised their sample, stating: "It's not in our interest to be burdensome to that community.  What we want to do is just develop enough information so we can present a sample . . . ." *Transcript of Status Conference,* at 49.

- Similarly, at a hearing before Magistrate Judge Bowler on a motion by health plan Health Net, Inc. for relief from defendants' subpoena, defendants again represented that their health plan discovery was limited to the sample they had devised: "As your Honor is aware, Judge Saris allowed the defendants to proceed with discovery of a sample of health insurers in the industry.  Health Net is a key part of that industry sample." *Transcript of Hearing* dated January 27, 2005, at 7.

- In their written opposition to the recent motion of a group of six non-party health plans, including Blue Cross Blue Shield of Massachusetts, defendants justified their need for discovery because "The Plans were a critical part of the industry sample identified by defendants." *Defendants' Memorandum of Law in Opposition to Motion to Quash Subpoenas,* dated October 11, 2005, at 10.

- At the hearing before Magistrate Judge Bowler on the motion by the six non-party health plans, Defendants underscored their position that they were merely seeking to round out their representative sample, stating that the subpoenas "were part of the initial industry sample that defendants touted and were a particularly critical part of that sample because of their status as Blues plans.  It's a survey of precisely such plans that have been studied that the plaintiffs in this case rely on for many of the assumptions that underlie their theories of liability and damages." *Transcript of Hearing,* dated November 9, 2005, at

Defendants consistently have represented that that their discovery of the absent class member health plans was limited to a necessary, targeted, representative sample they had devised.  Based on these representations, the Court has permitted defendants to proceed.

Defendants previously have included in their representative sample Blue Cross Blue Shield of Massachusetts and Harvard Pilgrim Health Plan. These are the two largest

Massachusetts absent class member health plans, with a combined membership of well over 50 percent of Massachusetts covered lives. Defendants have obtained, or are in the process of obtaining, discovery from these health plans.  Harvard Pilgrim Health Care, against whom discovery appears to have been completed, required four depositions in addition to document and production.  Tufts Health and Neighborhood Health, however, were never held out by defendants as part of the necessary, targeted representative sample.

The subpoenas to Tufts Health and Neighborhood Health also were served long after the cutoff for Track I discovery.  In fact, on the very day defendants were representing to the Court that their discovery was limited to the previously devised industry sample, they served the subpoenas on Tufts Health and Neighborhood Health.  Instead of issuing the discovery through the Track I defendants, however, as had consistently been done before, the subpoenas were issued through Track II defendant Dey.

The subpoenas to Tufts Health and Neighborhood Health, however, are carbon copies of the subpoenas previously issued by the Track I defendants.  Moreover, the subpoenas seek information concerning only five Dey drugs.  The number of drugs manufactured by the Track I defendants about which the subpoenas seek discovery is 147.

## III.     ARGUMENT

### A.     Discovery of Absent Class Members Must Be Supported By Specific Need

Tufts Health and Neighborhood Health are absent class members.  Absent class members generally are not amenable to discovery as a matter of course.  As the Supreme Court has reasoned, under the intent of Fed. R. Civ. P. 23, absent class members are "passive beneficiaries" to litigation, and are entitled to sit back and await results without undue involvement or bother. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552 (1974); *see also Phillips Petroleum Co.*

*v. Shutts*, 472 U.S. 797, 810-11 (1985) ("Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything.  He may sit back and allow the litigation to run its course, content in knowing there are safeguards provided for his protection."). For this reason, the MANUAL FOR COMPLEX LITIGATION recognizes that discovery of absent class members "should be permitted only to the extent necessary and should be carefully limited to ensure that it serves a legitimate purpose and is not used to harass either the class representatives or the class members."  MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.232 at 231 (1995) (hereafter "MANUAL").

The teaching of the MANUAL mirrors case law on the subject.  First, courts should not permit parties to obtain discovery from absent class members unless they are able to "make a strong showing" of the reasons why the discovery was *absolutely necessary*.  *Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980).  Second, courts allowing such discovery require that the party seeking discovery establish that the discovery sought is *unavailable elsewhere*.  *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974) ("The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions.").  Third, the court must ensure that the discovery will not subject absent class members to *undue harassment* or excessive taxing of their resources.  *Robertson*, 67 F.R.D. at 700; *see also United States v. Trucking Employers, Inc.*, 72 F.R.D. 101, 104 (D.D.C. 1976) (string citations omitted); *see also Clark,* 501 F.2d at 340 (there must be a "showing that the information . . . is not designed 'as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.'").

Defendants can make no showing that the discovery they seek is necessary at this stage. *Bodman*, 85 F.R.D. at 327.  Defendants previously have subpoenaed more than 40 health plans covering more than 50 percent of the covered lives in the United States.  To secure discovery from these absent class members, defendants argued that discovery from each of the targeted health plans was necessary to round out the representative sample they had devised.  But

defendants have never before included Tufts Health and Neighborhood Health in their purported sample. Moreover, having subpoenaed Blue Cross Blue Shield of Massachusetts and Harvard Pilgrim Health Plan, the Commonwealth's two largest health plans together representing *nearly 60 %* of the Commonwealth's covered lives, there is no basis to claim now that the sample of absent Massachusetts health plan class members requires enriching. By their own representations and actions, defendants have proven that discovery of Tufts Health and Neighborhood Health is not necessary.

Furthermore, defendants have failed to demonstrate that the information they seek has not been obtained from other sources. Indeed, because the requests to Tufts Health and Neighborhood Health are identical to requests sent to the representative group previously subpoenaed, including Massachusetts absent class members Blue Cross Blue Shield of Massachusetts and Harvard Pilgrim Health Care, defendants have already obtained the information sought or like information from other absent class members.

Finally, it is manifest that the discovery demands, seeking 38 categories of documents and 28 categories of testimony, are unduly burdensome. In its objection to the subpoena, after noting that the subpoena was served on November 11, 2005, Veteran's Day, and called for production of documents 12 days later, Tufts Health stated:

> Given the Subpoena's spectacular sweep and breadth, Tufts HP will not even have had the time to collect, much less review the documents that are potentially responsive to your client's request by November 23, 2005. Indeed, in the short time that Tufts HP has had to analyze the subpoena, it estimates that it could take *six months* of a full time equivalents' work just to search for, sort through, retrieve, and organize responsive documents. [2]

Because defendants cannot demonstrate that the discovery they seek from Tufts Health and Neighborhood Health is necessary, has not already been obtained elsewhere, and is not unduly invasive and burdensome, the Court should quash the health plan subpoenas.

---

[2] A copy of the Tufts Health's Objection subpoena is annexed hereto as Exhibit C.

**B.   The Use By Defendants Of Track II Defendant Dey To Serve This Subpoena Is A Subterfuge And The Request Is Untimely Under the Track I Discovery Cutoff**

Pursuant to CMO no. 13, issued by the Court on March 10, 2005, Track I discovery was required to be completed by August 31, 2005.  During the period for Track I discovery, defendants crafted and undertook discovery of a representative sample of absent class member health plans.  That discovery sought documents and testimony concerning drugs manufactured and marketed by both Track I and Track II defendants.  In addition, Track I and Track II defendants' counsel had access to all documents, and were invited to attend and cross-examine at all depositions.

Defendants' now seek to continue their extraordinary campaign of discovery undertaken during the Track I phase of discovery against absent class members.  To avoid the bar of the Track I discovery cutoff, however, they are proceeding through Track II defendant Dey.

The proof of defendants' subterfuge is ample.  First, the subpoenas issued to Tufts Health and Neighborhood Health are virtual carbon copies of subpoenas issued to the health plans by the Track I defendants.  There is nothing in the subpoenas reflecting unique discovery needs of Dey.

Second, the subpoenas issued to these two absent class member health plans mark the first health plan subpoenas issued by any defendant other than a Track I defendant.  This campaign has been orchestrated entirely by the Track I defendants.

Third, the subpoenas seek extensive discovery with respect to Track I defendant drugs. Indeed, nearly half of the drugs about which inquiry is made – 147 drugs – are Track I defendant products.  There are only five Dey drugs on the list.

The Court should not abide the efforts by Track I defendants to end-run the deadlines set forth in CMO no. 13 by permitting them to continue to conduct their discovery through a Track II defendant.  Accordingly, the subpoenas should be quashed.

## IV.    CONCLUSION

"If discovery from absent members of the class is permissible at all, *it should be sharply limited and allowed only on a strong showing of justification.*" MANUAL, § 30.232 at 232 (quoting 8 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2171 (2d ed. 1994)) (emphasis added).  The subpoenas that defendants have served on the Tufts Health and Neighborhood Health are far from "sharply limited."  Moreover, defendants have not demonstrated a "strong showing" justifying the discovery that they seek.  The subpoenas are unnecessary; seek information that defendants already have obtained – they already have their representative sample, *both nationally and from Massachusetts*; and are burdensome and harassing.  In addition, the discovery is untimely because it is clearly undertaken at the behest of Track I defendants in order to avoid the Track I discovery cutoff.

Respectfully submitted,

By **/s/ David Nalven**_____
Thomas M. Sobol
David S. Nalven
Edward Notargiacomo
Hagens Berman Sobol Shapiro LLP
One Main Street
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*LIAISON AND CO-LEAD COUNSEL*

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
Kenneth A. Wexler & Associates
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

*CO-LEAD COUNSEL*

Dated: November 23, 2005

## CERTIFICATE OF SERVICE

Docket No. MDL 1456

I, David S. Nalven, hereby certify that I am one of plaintiffs' attorneys and that, on November 23, 2005, I caused copies of the Memorandum in Support of Plaintiffs' Motion for a Protective Order Concerning Subpoenas Issued By Dey, Inc. to Tufts Associated Health Plans, Inc. and Neighborhood Health Plan, Inc. to be served via Lexis/Nexis File Serve on all counsel of record.

**/s/ David S. Nalven**

Dated: November 23, 2005

# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case



Nov  9 2005
12:44PM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

In re: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

THIS DOCUMENT RELATES TO THE MASTER
CONSOLIDATED CLASS ACTION

:
:
:
:
:
:
:
:
:
:
:
:
:
:

## SUBPOENA IN A CIVIL CASE
MDL NO. 1456

Civil Action No. 01-12257-PBS

Judge Patti B. Saris
(case pending in D. Mass.)

TO:   Tufts Associated Health Plans, Inc.
      333 Wyman Street
      Waltham, Massachusetts 02454-9112

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   See deposition topics at Schedule B, attached hereto.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Foley Hoag LLP Seaport World Trade Center West 155 Seaport Boulevard Boston, Massachusetts 02210-2600 | December 2, 2005 at 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Foley Hoag LLP Seaport World Trade Center West 155 Seaport Boulevard Boston, Massachusetts 02210-2600 | November 23, 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Paul F. Doyle*  Attorney for Defendant Dey, Inc. | November 9, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:

Paul F. Doyle (BBO # 133460), Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178.  (212) 808-7800.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

NY01/KIMS/1057674.4

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|--------|------|--|-------|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                          DATE                                    SIGNATURE OF SERVER

                                                  _____
                                                  ADDRESS OF SERVER

                                                  _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)   fails to allow reasonable time for compliance;
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITION

1.      "Tufts Health Plan," "You," or "Your" means Tufts Associated Health Plans, Inc. and any of its past or present officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2.      "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

3.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

4.      "ASP" or "Average Sales Price" shall have the meaning set forth in 42 U.S.C. § 1395w-3a.

5.      "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided by any health plan or health and welfare fund to any Participant or Beneficiary.

6.      "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

7.     "Benefit Consultant" means any person or entity that provides information, counsel or advice to any health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity regarding any medical benefit or service provided by any health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity to any Participant or Beneficiary.

8.     "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

9.     "CMS" shall mean Centers for Medicare and Medicaid Services.

10.    "Communication," as defined in Local Rule 26.5(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

11.    "Concerning," as defined in Local Rule 26.5(c)(7), means referring to, describing, evidencing, or constituting.

12.    "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

13.    "Defendant" or "Defendants" means the list of defendants shown on Exhibit A annexed hereto and any of their past or present officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all

other persons or entities acting or purporting to act on their behalf or under their control.

14.     "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

15.     "Drug Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

16.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

17.     "FSS" or "Federal Supply Schedule" means the schedule of prices for pharmaceutical drugs administered by the Department of Veterans Affairs, including revision(s) to any such schedule.

18.     "Independent Practice Association" means any organized group of Providers whose members provide health care to any Participant or Beneficiary.

19.     "NDC" means the National Drug Code product identifier for a particular drug as listed in the National Drug Code Directory.

20.     "PBM" means pharmacy benefit manager.

3

21.     The terms "Participant" and "Beneficiary" mean a person for whom a health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity provides any medical or health insurance benefit.

22.     "Person," as defined in Local Rule 26. 5(c)(6), means any natural person or any business, legal, or governmental entity or association.

23.     "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

24.     "Profit Analysis" means any research, study, report or analysis comparing, measuring or evaluating revenue or sales against costs or other expenses.

25.     "Provider" means any physician, physician group, pharmacy, Specialty Pharmacy, hospital, clinic or any other entity that provides health care or pharmaceuticals to any Participant or Beneficiary.

26.     "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes First DataBank, Red Book, Blue Book and Medi-Span.

27.     "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

28.     "Specialty Pharmacy" means a full service pharmacy that, among other things, dispenses and/or administers Subject Drugs directly to patients, and provides services including but not limited to contracting with Drug Manufacturers, prior authorization, patient

education and follow up, case management, and home delivery.

29.     "Staff-Model HMO" means a health maintenance organization ("HMO") providing health services from a group of physicians who are either staff employees of a professional group practice which is an integral part of the HMO plan or are direct employees of the HMO itself.

30.     "Subject Drug" or "Subject Drugs" means one or more of the drugs listed on Exhibit A annexed hereto.

31.     "TAMCC" means the Third Amended Master Consolidated Class Action Complaint Amended to Comply with Court's Certification Order, filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

32.     "Third Party Administrator" means any entity that provides administrative services to any health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity relating to any medical benefit provided to any Participant or Beneficiary.

33.     "WAC" means wholesale acquisition cost or the list prices for sales by Drug Manufacturers to Wholesalers.

34.     "Wholesaler" means any entity that purchases Subject Drugs from a Drug Manufacturer and resells such drugs to any other entity.

## INSTRUCTIONS

1.      Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.      The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your custody, or if it is in the custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.      Provide the following information for each document withheld on the

grounds of privilege:

        (a)     its date;

        (b)     its title;

        (c)     its author;

        (d)     its addressee;

        (e)     the specific privilege under which it is withheld;

        (f)     its general subject matter; and

        (g)     a description of it that you contend is adequate to support your contention that it is privileged.

6.     These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

7.     The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

8.     To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

# SCHEDULE A

## DOCUMENTS TO BE PRODUCED

1.      All documents relating to or reflecting any definition or meaning of AWP.

2.      All documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any Subject Drug.

3.      All documents reflecting maximum allowable costs or MACs for the Subject Drugs.

4.      All documents reflecting or referring to the process you used or use to develop maximum allowable costs or MACs used for reimbursing Providers for the Subject Drugs.

5.      All documents concerning FSS, ASP, AMP, Best Price, EAC or any other pricing benchmark for any Subject Drug.

6.      All documents concerning the number of patients referred to hospitals by the Tufts Health Plan during the relevant time period.

7.      All documents concerning the methodology used to determine reimbursement or payment rates (*e.g.*, fee schedule amounts) for any Subject Drug.

8.      All documents that concerning your reimbursement or payment to Providers for any Subject Drug, including, without limitation, all fee schedules.

9.      All documents that you or someone acting on your behalf relied upon in

setting reimbursement or payment rates for any Subject Drug.

10.     All minutes from meetings where reimbursement or payment for Subject Drugs was discussed, including meetings where the setting of reimbursement or payment rates was discussed.

11.     All documents reflecting or referring to all formularies utilized by you which provide coverage for the Subject Drugs.

12.     All documents concerning the factors considered in developing the formularies utilized by you which provide coverage for the Subject Drugs.

13.     All data concerning Provider or PBM claims for reimbursement for Subject Drugs administered to any Participant or Beneficiary, including the following data: (1) the NDC; (2) units billed; (3) amount billed; (4) the date the claim was submitted; (5) the date the claim was paid; (6) the amount paid; (7) the dispensing fee; (8) the basis for reimbursement (*e.g.,* AWP, WAC, MAC, FUL, FSS, ASP or usual and customary charge); (9) HCPCS/J Code; (10) identification number for the Provider; (11) identification number for the Participant or Beneficiary; (12) identification number of the claim; (13) date of birth of the Participant or Beneficiary; (14) Medicare payment amount; (15) amount not covered by plan; (16) name of the group for which the Participant or Beneficiary is a member; (17) date of service; (18) claims status (*e.g.,* denied, accepted, pending); and (19) the state in which service was provided.

14.     All documents relating to your claims processing policies and procedures for any Subject Drug.

15.     A list of all Providers participating in Tufts Health Plan, along with their Provider identification numbers.

16.     Electronic transaction records concerning any discounts, rebates, service charges, or other payments you added or subtracted from Provider or PBM claims on account of the Subject Drugs.

17.     All documents, including electronic transaction records, concerning your purchase of the Subject Drugs from Defendants, Wholesalers, PBMs, or any other person or entity.

18.     All documents concerning your contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Defendants, Independent Practice Associations, Specialty Pharmacies, or Providers insofar as they cover any Subject Drug, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, and responses to requests for proposal.

19.     Documents sufficient to identify all persons involved in negotiations of contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Drug Manufacturers, Independent Practice Associations, Specialty Pharmacies, or Providers insofar as they cover any Subject Drug.

20.     All documents concerning the costs to Providers of any Subject Drug, including, without limitation, invoices and other documents reflecting rebates, chargebacks, and other discounts issued by Drug Manufacturers, Wholesalers, or PBMs to Providers.

21.     All documents concerning your awareness that the costs to Providers of Subject Drugs are different from the amounts you reimburse Providers for Subject Drugs, including, without limitation, documents reflecting any differences between the costs to Providers of any Subject Drug and the amounts you reimburse Providers for any Subject Drug.

22.     All communications between you and Providers relating to reimbursement or payment rates of any Subject Drug.

23.     All documents concerning your ownership or control of any Provider.

24.     All documents concerning the acquisition of Subject Drugs by you on behalf of any Provider, university, or other organization.

25.     All documents concerning any incentives provided to any Provider in connection with the purchase or sale of any Subject Drug.

26.     All contracts, agreements, and other documents concerning your arrangements with any Provider concerning risk-sharing, capitation, withholdings, or fee schedules.

27.     All documents concerning to your right to audit Providers.

28.     All documents concerning any audits of Providers and changes to your policy as a result of such audits.

29.     All contracts, agreements, and other documents concerning arrangements between you and Defendants regarding formulary placement of the Subject Drugs, discounts,

rebates and any other compensation received by you in connection with your purchase of the Subject Drugs from Defendants.

30.    All contracts, agreements, and other documents concerning arrangements between you and PBMs regarding formulary placement of the Subject Drugs, discounts, rebates, and any other compensation received by you in connection with your purchase of the Subject Drugs from PBMs.

31.    All documents concerning your decision to rely on, reliance on, or use of drug pricing information published by any Publisher for any Subject Drug.

32.    All documents created by or received from any Publisher, including but not limited to drug pricing information, communications, memoranda, and contracts or agreements between you and any Publisher regarding any Subject Drug.

33.    All documents created by or received from CMS, United States Department of Health and Human Services, Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, the Commonwealth of Massachusetts, any state Medicaid program, or any other federal or state institution, agency, department, or office regarding the pricing of prescription drugs.

34.    All documents provided to CMS, United States Department of Health and Human Services, the Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, the Commonwealth of Massachusetts, any state Medicaid program, or any other federal or state institution, agency, department, or office regarding the pricing of any Subject Drug.

35.     All documents concerning any Profit Analysis you have performed or received relating to your reimbursement or payment for any Subject Drug.

36.     All documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing, reimbursement, payment amounts, or rates for any Subject Drug.

37.     All documents produced by you in any litigation or government investigation or inquiry related to the use of AWP in Medicare, Medicaid, or private reimbursement.

38.     All current and historical organizational charts for all of your departments.

## SCHEDULE B

## DEPOSITION TOPICS

1.      All methodologies you utilized or considered utilizing to determine the amounts to pay or reimburse Providers for drugs administered or dispensed to Participants and Beneficiaries.

2.      All rationales, information, and factors considered by you in deciding whether or not to adopt the reimbursement methodologies described in Subject 1.

3.      The identity of each person at your company who participated in or had knowledge of the decision to select the reimbursement methodologies described in Subject 1.

4.      Any actions that you have taken to reduce either your total expenditures on pharmaceutical benefits or the amount spent on any particular pharmaceutical product.

5.      For all methodologies discussed in Subject 1, all rationales, information, and factors considered by you in deciding whether or not to pay a separate administration fee or dispensing fee in addition to the price of the drug itself.

6.      Your knowledge and understanding of whether any administration or dispensing fees you reimbursed to Providers were sufficient to cover the Provider's costs in administering or dispensing the corresponding drugs.

7.      Your understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," "WAC," "Maximum Allowable Cost," "MAC," "Federal Supply Schedule," "FSS," "Average Sales Price," "ASP," "Average Manufacturer

Price," "AMP," "Best Price," "Estimated Acquisition Cost," or "EAC."

8.    Your understanding and knowledge of whether Drug Manufacturers provided Providers with discounts, rebates, and other incentives that were not reported in pricing compendia or otherwise disclosed to the public.

9.    For physician-administered drugs, whether and to what extent your negotiations with Providers about reimbursement expressly dealt with a distinction between (a) the reimbursement of the drug itself, and (b) the reimbursement for the Provider's administration service.

10.    Whether and to what extent your negotiations over reimbursement rates with Providers over drugs and drug-related services are influenced by Medicare's reimbursement rates.

11.    Your understanding and knowledge of whether Providers would earn a margin on drugs administered and dispensed, including whether such a margin depended, in part, on the difference between the reimbursement you paid and the actual acquisition costs for the drugs, net of any incentives provided by the Drug Manufacturers.

12.    Whether and to what extent you provide different reimbursement rates based upon the type of Providers and/or the method of the administration of the drugs.

13.    Any studies or analysis you have made concerning the relatives costs of the administration of Subject Drugs in physicians' offices rather than in hospitals.

14.    Whether and to what extent you own any Provider and if so, whether you

15

purchased drugs on behalf of any Provider.

15.     Whether and to what extent a Staff-Model HMO was implemented by your plan and if so, your knowledge as to the period in which the Staff-Model HMO operated, its purchasing practices, and the terms of its contracts with Drug Manufacturers, Wholesalers, or any other person or entity.

16.     Whether and to what extent you have ever been affiliated with a hospital or university and if so, your knowledge as to the period of affiliation with a hospital or university and the terms of the arrangement.

17.     Whether and to what extent you participate in government programs that reimburse under the FSS and if so, your knowledge as to the period of participation in the government program and terms of your participation in the program.

18.     Fee schedules for physician-administered drugs, including the methodologies used to develop the fee schedules, the rationales for such methodologies, and whether the fee schedules were communicated to the physicians.

19.     Whether and to what extent you have transitioned to a Medicare's ASP-based reimbursement system and if so, the date of implementation or change to an ASP-based reimbursement as well as your rationale for doing so or not doing so.

20.     Whether and to what extent you use a capitation reimbursement program, including withholds, for the reimbursement of physician-administered drugs and if so, the start and end dates of these programs, and your knowledge and understanding of how these programs

work.

21.    Your knowledge and understanding of how the formularies and the drugs to be included on the formularies are determined, including any rationales and factors considered in that determination.

22.    Your relationship(s), if any, with any PBM.

23.    All rationales, information, and factors considered by you in deciding whether to do business with a PBM and in deciding which PBM, if any, to use.

24.    The identity of each person at your company who participated in or had knowledge of the decision whether or not to do business with a PBM.

25.    Your knowledge of the margin Wholesalers have earned on drugs over the last decade.

26.    All information sent to or received from federal, state, or local governments regarding pharmaceutical reimbursement.

27.    Your knowledge of government studies, reports, and communications concerning actual acquisition costs for drugs.

28.    Your knowledge and understanding of the allegations in the TAMCC.

29.    Tufts Health Plan's document retention policy.

30.    The types and scope of coverage offered by Tufts Health Plan.

31.    Tufts Health Plan's organizational structure.

32.    All documents produced in response to Defendants' subpoena, including whether such documents are authentic within the meaning of Rule 901 of the Federal Rules of Evidence, and Records of Regularly Conducted Activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

## EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| | |
|---|---|
| Abbott | Acetylcyst |
| Abbott | Acyclovir |
| Abbott | A-Methapred |
| Abbott | Amikacin |
| Abbott | Amikacin Sul |
| Abbott | Aminosyn |
| Abbott | Biaxin |
| Abbott | Calcijex |
| Abbott | Cimetidine |
| Abbott | Clindamycin |
| Abbott | Depakote |
| Abbott | Depakote SPR |
| Abbott | Dextrose |
| Abbott | Dextrose w/Sodium Chloride |
| Abbott | Diazepam |
| Abbott | Ery-Tab |
| Abbott | Erythromycin Cap |
| Abbott | Erythromycin Tab Bs |
| Abbott | Fentanyl Cit |
| Abbott | Furosemide |
| Abbott | Gentamicin |
| Abbott | Heparin Lock |
| Abbott | Leucovor CA |
| Abbott | Lorazepam |
| Abbott | Prevacid Cap |
| Abbott | Prevacid Gra |
| Abbott | Sod Chloride |
| Abbott | Sodium Chloride Sol |
| Abbott | Tobra/Nacl |
| Abbott | Tobramycin |
| Abbott | Vancomycin |
| | |
| Allen & Hanburys | Beconase AQ SPR |
| Allen & Hanburys | Flonase SPR |
| Allen & Hanburys | Serevent AER |
| Allen & Hanburys | Serevent DIS MIS |
| | |

| | |
|---|---|
| Amgen | Aranesp |
| Amgen | Enbrel |
| Amgen | Epogen |
| Amgen | Kineret |
| Amgen | Neulasta |
| Amgen | Neupogen |
| | |
| Astrazeneca | Accolate |
| Astrazeneca | Arimidex |
| Astrazeneca | Casodex |
| Astrazeneca | Diprivan |
| Astrazeneca | Nolvadex |
| Astrazeneca | Seroquel |
| Astrazeneca | Zestril |
| Astrazeneca | Zoladex |
| Astrazeneca | Zomig |
| Astrazeneca | Zomig ZMT |
| Astrazeneca | Atacand |
| Astrazeneca | Atacand HCT |
| Astrazeneca | Entocort EC |
| Astrazeneca | Nexium |
| Astrazeneca | Prilosec |
| Astrazeneca | Pulmicourt |
| Astrazeneca | Rhinocourt |
| Astrazeneca | Toprol XL |
| | |
| Aventis | Allegra |
| Aventis | Allegra-D |
| Aventis | Amaryl |
| Aventis | Anzemet |
| Aventis | Arava |
| Aventis | Azmacourt |
| Aventis | Calcimar |
| Aventis | Carafate |
| Aventis | Cardizem Cap |
| Aventis | Cardizem Inj |
| Aventis | Cardizem Tab |
| Aventis | Gammar |
| Aventis | Gammar P-IV |
| Aventis | Intal |
| Aventis | Intal INH |
| Aventis | Nasacort |

| Aventis | Nasacort AQ |
| Aventis | Taxotere |
| Aventis | Trental |
| | |
| B. Braun | Dextrose |
| B. Braun | HEP Sod/D5W |
| B. Braun | HEP Sod/NACL |
| B. Braun | Sod Chloride |
| B. Braun | Sodium Chloride Sol |
| | |
| Baxter | Aggrastat |
| Baxter | Ativan |
| Baxter | Bebulin VH |
| Baxter | Brevibloc |
| Baxter | Buminate |
| Baxter | Cisplatin |
| Baxter | Claforan/D5W |
| Baxter | Dextrose |
| Baxter | Doxorubicin |
| Baxter | Gammagard SD |
| Baxter | Gentam/NACL |
| Baxter | Gentran 40 |
| Baxter | Gentran 75 |
| Baxter | Gentran/Trav |
| Baxter | Heparin Lock |
| Baxter | Iveegam |
| Baxter | Iveegam EN |
| Baxter | Osmitrol |
| Baxter | Osmitrol VFX |
| Baxter | Recombinate |
| Baxter | Sod Chloride |
| Baxter | Sodium Chlor Sol |
| Baxter | Travasol |
| Baxter | Travasol w/Dextrose |
| Baxter | Vancocin HCL |
| Baxter | Vancocin/Dex |
| | |
| Bayer Pharmaceutical | Cipro |
| Bayer Pharmaceutical | Cipro Cystit Tab |
| Bayer Pharmaceutical | Cipro I.V. |
| Bayer Pharmaceutical | Cipro XR |
| Bayer Pharmaceutical | DTIC-DOME |

| | |
|---|---|
| Bayer Pharmaceutical | Gamimune N |
| Bayer Pharmaceutical | Koate-HP |
| Bayer Pharmaceutical | Kogenate FS |
| Bayer Pharmaceutical | Mithracin |
| | |
| Bedford | Acyclovir Sodium |
| Bedford | Amikacin Sulfate |
| Bedford | Cytarabine |
| Bedford | Etoposide |
| Bedford | Leucovorin Calcium |
| | |
| B-M Squibb | Paraplatin Inj |
| B-M Squibb | Blenoxane |
| B-M Squibb | Cytoxan |
| B-M Squibb | Etopophos |
| B-M Squibb | Rubex |
| B-M Squibb | Taxol |
| B-M Squibb | Vepesid |
| B-M Squibb | Ividex EC |
| B-M Squibb | Avapro |
| B-M Squibb | Buspar |
| B-M Squibb | Cefzil |
| B-M Squibb | Glucophage) |
| B-M Squibb | Glucovance) |
| B-M Squibb | Monopril) |
| B-M Squibb | Plavix) |
| B-M Squibb | Serzone) |
| B-M Squibb | Tequin) |
| B-M Squibb | Coumadin |
| Apothecon | Amikin (amikacin sulfate) |
| Apothecon | Fungizone (amphotercin b) |
| | |
| Boehringer Ingelheim | Acyclovir Sodium |
| Boehringer Ingelheim | Amikacin Sulfate |
| Boehringer Ingelheim | Cytarabine |
| Boehringer Ingelheim | Doxorubicin |
| Boehringer Ingelheim | Etoposide |
| Boehringer Ingelheim | Leucovor CA |
| Boehringer Ingelheim | Leucovorin Calcium |
| Boehringer Ingelheim | Methotrexate |
| Boehringer Ingelheim | Methotrexate Sodium |
| Boehringer Ingelheim | Mitomycin |

| | |
|---|---|
| Boehringer Ingelheim | Vinblastine Sulfate |
| | |
| Cerenex | Amerge |
| Cerenex | Imitrex |
| Cerenex | Zofran |
| | |
| Dey Labs | Acetylcysteine |
| Dey Labs | Albuterol |
| Dey Labs | Cromolyn Sodium |
| Dey Labs | Ipratropium |
| Dey Labs | Metaproteren Neb |
| | |
| Fujisawa | Aristocort |
| Fujisawa | Aristospan |
| Fujisawa | Cefizox |
| Fujisawa | Cefizox/D5W |
| Fujisawa | Cyclocort |
| Fujisawa | Lyphosin |
| Fujisawa | Nebupent or Pentam 300 |
| Fujisawa | Prograf |
| Fujisawa | Vinblastine Sulfate |
| | |
| Gensia | Amikacin Sulfate |
| Gensia | Amphotercin B |
| Gensia | Etoposide |
| Gensia | Leucovorin Calcium |
| | |
| GlaxoSmithKline | Advair Disku Mis |
| GlaxoSmithKline | Agenerase |
| GlaxoSmithKline | Agenerase SDL |
| GlaxoSmithKline | Alkeran |
| GlaxoSmithKline | Ceftin |
| GlaxoSmithKline | Combivir |
| GlaxoSmithKline | Daraprim |
| GlaxoSmithKline | Epivir |
| GlaxoSmithKline | Epivir HBV |
| GlaxoSmithKline | Flovent |
| GlaxoSmithKline | Flovent ROTA |
| GlaxoSmithKline | Kytril |
| GlaxoSmithKline | Lamictal |
| GlaxoSmithKline | Lanoxin |
| GlaxoSmithKline | Lanoxin Ped |

| | |
|---|---|
| GlaxoSmithKline | Leukeran |
| GlaxoSmithKline | Mepron |
| GlaxoSmithKline | Myleran |
| GlaxoSmithKline | Navelbine |
| GlaxoSmithKline | Paxil |
| GlaxoSmithKline | Paxil CR |
| GlaxoSmithKline | Purinethol |
| GlaxoSmithKline | Relenza |
| GlaxoSmithKline | Retrovir |
| GlaxoSmithKline | Thioguanine |
| GlaxoSmithKline | Trizivir |
| GlaxoSmithKline | Valtrex |
| GlaxoSmithKline | Ventolin HFA |
| GlaxoSmithKline | Wellbutrin |
| GlaxoSmithKline | Zantac |
| GlaxoSmithKline | Ziagen |
| GlaxoSmithKline | Zofran |
| GlaxoSmithKline | Zovirax |
| GlaxoSmithKline | Zyban |
| | |
| Immunex | Leucovorin Calcium |
| Immunex | Leukine |
| Immunex | Methotrexate Sodium |
| Immunex | Novantrone |
| Immunex | Thioplex |
| | |
| J&J Group (Centocor) | Remicade |
| J&J Group (Janssen) | Aciphex |
| J&J Group (Janssen) | Duragesic |
| J&J Group (Janssen) | Reminyl |
| J&J Group (Janssen) | Risperdal |
| J&J Group (Janssen) | Sporanox |
| J&J Group (McNeil) | Bicitra |
| J&J Group (McNeil) | Elmiron |
| J&J Group (McNeil) | Flexeril |
| J&J Group (McNeil) | Floxin |
| J&J Group (McNeil) | Haldol |
| J&J Group (McNeil) | Haldol Decan |
| J&J Group (McNeil) | Levaquin |
| J&J Group (McNeil) | Mycelex |
| J&J Group (McNeil) | Pancrease |
| J&J Group (McNeil) | Pancrease MT |

| | |
|---|---|
| J&J Group (McNeil) | Parafon Fort |
| J&J Group (McNeil) | Polycitra |
| J&J Group (McNeil) | Polycitra-K |
| J&J Group (McNeil) | Polycitra-K Sol |
| J&J Group (McNeil) | Polycitra-LC Sol |
| J&J Group (McNeil) | Regranex |
| J&J Group (McNeil) | Terazol 3 |
| J&J Group (McNeil) | Terazol 7 |
| J&J Group (McNeil) | Testoderm |
| J&J Group (McNeil) | Tolectin |
| J&J Group (McNeil) | Tolectin DS |
| J&J Group (McNeil) | Topamax |
| J&J Group (McNeil) | Tylenol/Cod |
| J&J Group (McNeil) | Tylox |
| J&J Group (McNeil) | Ultracet |
| J&J Group (McNeil) | Ultram |
| J&J Group (McNeil) | Urispas |
| J&J Group (McNeil) | Vascor |
| J&J Group (Ortho Biotech) | Procrit |
| J&J Group (Ortho Derm) | Erycette |
| J&J Group (Ortho Derm) | Grifulvin V |
| J&J Group (Ortho Derm) | Monistat |
| J&J Group (Ortho Derm) | Renova |
| J&J Group (Ortho Derm) | Retin-A |
| J&J Group (Ortho Derm) | Retin-A Micr Gel |
| J&J Group (Ortho Derm) | Spectazole Cream |
| | |
| Novartis | Clozaril |
| Novartis | Combipatch |
| Novartis | Comtan |
| Novartis | Estraderm |
| Novartis | Exelon |
| Novartis | Femara |
| Novartis | Lamisil |
| Novartis | Lamprene |
| Novartis | Lescol |
| Novartis | Lescol XL |
| Novartis | Lotensin |
| Novartis | Lotensin HCT |
| Novartis | Lotrel |
| Novartis | Miacalcin |
| Novartis | Parlodel |

| Novartis | Ritalin |
|---|---|
| Novartis | Ritalin LA |
| Novartis | Starlix |
| Novartis | Tegretol |
| Novartis | Tegretol XR |
| Novartis | Trileptal |
| Novartis | Vivelle |
| Novartis | Vivelle-DOT |
| | |
| Pfizer | Accupril |
| Pfizer | Accuretic Tab |
| Pfizer | Cardura |
| Pfizer | Celontin |
| Pfizer | Dilantin |
| Pfizer | Dilantin-125 |
| Pfizer | Estrostep FE |
| Pfizer | Femhrt 1/5 |
| Pfizer | Lipitor |
| Pfizer | Lopid |
| Pfizer | Minizide |
| Pfizer | Nardil |
| Pfizer | Neurontin |
| Pfizer | Nitrostat |
| Pfizer | Renese |
| Pfizer | Rescriptor |
| Pfizer | Viracept |
| Pfizer | Zarontin |
| Pfizer | Zithromax |
| Pfizer | Zoloft |
| Pfizer | Zyrtec |
| | |
| Pharmacia | Adriamyc PFS |
| Pharmacia | Adriamyc RDF |
| Pharmacia | Adrucil |
| Pharmacia | Amphocin |
| Pharmacia | Amphotercin B |
| Pharmacia | Bleomycin Sulfate |
| Pharmacia | Celebrex |
| Pharmacia | Cleocin-T |
| Pharmacia | Cytarabine |
| Pharmacia | Depo-Testost |
| Pharmacia | Etoposide |

| | |
|---|---|
| Pharmacia | Neosar |
| Pharmacia | Solu-Cortef |
| Pharmacia | Solu-Medrol |
| Pharmacia | Toposar |
| Pharmacia | Vincasar PFS |
| | |
| Roche | Cellcept |
| Roche | Kytril |
| | |
| Schering | Clarinex |
| Schering | Claritin |
| Schering | Claritin-D |
| Schering | Diprolene |
| Schering | Diprolene AF |
| Schering | Diprosone |
| Schering | Elocon |
| Schering | Eulexin |
| Schering | Integrilin |
| Schering | Intron-A |
| Schering | Lotrisone |
| Schering | Nasonex |
| Schering | Peg-Intron |
| Schering | Proventil |
| Schering | Rebetol |
| Schering | Temodar |
| Schering | Trinalin Rep |
| Schering | Clotrimazole |
| Schering | Griseofulvin, Ultramicrocry |
| Schering | ISMN |
| Schering | Oxaprozin |
| Schering | Perphenazine |
| Schering | Potassium Chloride |
| Schering | Sodium Chloride |
| Schering | Sulcrafate Tablets |
| Schering | Theophylline |
| | |
| Sicor | Acyclovir Sodium |
| Sicor | Amikacin Sulfate |
| Sicor | Doxorubicin |
| Sicor | Etoposide |
| Sicor | Leucovorin Calcium |
| Sicor | Pentamidine Isethionate |

| Sicor | Tobramycin Sulfate |
|-------|--------------------|
|       |                    |
| TAP   | Prevacid           |
|       |                    |
| Watson | Dexamethasone Acetate8 |
| Watson | Dexamethasone Sodium Phosphate |
| Watson | Diazepam |
| Watson | Estradiol |
| Watson | Ferrlecit |
| Watson | Fluphenazine HCL |
| Watson | Gemfibrozil |
| Watson | Gentamicin Sulfate |
| Watson | Imipramine HCL |
| Watson | Infed |
| Watson | Lorazepam |
| Watson | Nadolol |
| Watson | Perphenazine2 |
| Watson | Propranolol |
| Watson | Ranitidine |
| Watson | Vancomycin HCL |
| Watson | Verapamil HCL |

# EXHIBIT B



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

7396464

Nov 9 2005
12:45PM

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION<br><br><br><br><br>THIS DOCUMENT RELATES TO THE MASTER<br>CONSOLIDATED CLASS ACTION | : **SUBPOENA IN A CIVIL CASE**<br>: MDL NO. 1456<br>:<br>: Civil Action No. 01-12257-PBS<br>:<br>:<br>: Judge Patti B. Saris<br>: (case pending in D. Mass.)<br>:<br>:<br>:<br>:<br>: |

TO:    Neighborhood Health Plan, Inc.
       253 Summer Street
       Boston, Massachusetts 02210

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   See deposition topics at Schedule B, attached hereto.

| PLACE OF DEPOSITION<br>Foley Hoag LLP<br>Seaport World Trade Center West<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210-2600 | DATE AND TIME<br>December 2, 2005 at 9:30 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   See Schedule A, attached hereto.

| PLACE<br>Foley Hoag LLP<br>Seaport World Trade Center West<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210-2600 | DATE AND TIME<br>November 23, 2005 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>_(signature)_      Attorney for Defendant Dey, Inc. | DATE<br><br>November 9, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:

Paul F. Doyle (BBO # 133460), Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178.  (212) 808-7800.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
DATE                                         SIGNATURE OF SERVER

ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)    fails to allow reasonable time for compliance;
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B)  If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITION

1.     "Neighborhood Health Plan," "You," or "Your" means Neighborhood Health Plan, Inc. and any of its past or present officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2.     "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

3.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

4.     "ASP" or "Average Sales Price" shall have the meaning set forth in 42 U.S.C. § 1395w-3a.

5.     "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided by any health plan or health and welfare fund to any Participant or Beneficiary.

6.     "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

7.      "Benefit Consultant" means any person or entity that provides information, counsel or advice to any health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity regarding any medical benefit or service provided by any health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity to any Participant or Beneficiary.

8.      "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

9.      "CMS" shall mean Centers for Medicare and Medicaid Services.

10.      "Communication," as defined in Local Rule 26.5(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

11.      "Concerning," as defined in Local Rule 26.5(c)(7), means referring to, describing, evidencing, or constituting.

12.      "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

13.      "Defendant" or "Defendants" means the list of defendants shown on Exhibit A annexed hereto and any of their past or present officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all

other persons or entities acting or purporting to act on their behalf or under their control.

14.    "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

15.    "Drug Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

16.    "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

17.    "FSS" or "Federal Supply Schedule" means the schedule of prices for pharmaceutical drugs administered by the Department of Veterans Affairs, including revision(s) to any such schedule.

18.    "Independent Practice Association" means any organized group of Providers whose members provide health care to any Participant or Beneficiary.

19.    "NDC" means the National Drug Code product identifier for a particular drug as listed in the National Drug Code Directory.

20.    "PBM" means pharmacy benefit manager.

21.     The terms "Participant" and "Beneficiary" mean a person for whom a health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity provides any medical or health insurance benefit.

22.     "Person," as defined in Local Rule 26. 5(c)(6), means any natural person or any business, legal, or governmental entity or association.

23.     "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

24.     "Profit Analysis" means any research, study, report or analysis comparing, measuring or evaluating revenue or sales against costs or other expenses.

25.     "Provider" means any physician, physician group, pharmacy, Specialty Pharmacy, hospital, clinic or any other entity that provides health care or pharmaceuticals to any Participant or Beneficiary.

26.     "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes First DataBank, Red Book, Blue Book and Medi-Span.

27.     "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

28.     "Specialty Pharmacy" means a full service pharmacy that, among other things, dispenses and/or administers Subject Drugs directly to patients, and provides services including but not limited to contracting with Drug Manufacturers, prior authorization, patient

education and follow up, case management, and home delivery.

29.    "Staff-Model HMO" means a health maintenance organization ("HMO") providing health services from a group of physicians who are either staff employees of a professional group practice which is an integral part of the HMO plan or are direct employees of the HMO itself.

30.    "Subject Drug" or "Subject Drugs" means one or more of the drugs listed on Exhibit A annexed hereto.

31.    "TAMCC" means the Third Amended Master Consolidated Class Action Complaint Amended to Comply with Court's Certification Order, filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

32.    "Third Party Administrator" means any entity that provides administrative services to any health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity relating to any medical benefit provided to any Participant or Beneficiary.

33.    "WAC" means wholesale acquisition cost or the list prices for sales by Drug Manufacturers to Wholesalers.

34.    "Wholesaler" means any entity that purchases Subject Drugs from a Drug Manufacturer and resells such drugs to any other entity.

## INSTRUCTIONS

1.     Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.     The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.     Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your custody, or if it is in the custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.     If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.     Provide the following information for each document withheld on the

grounds of privilege:

       (a)    its date;

       (b)    its title;

       (c)    its author;

       (d)    its addressee;

       (e)    the specific privilege under which it is withheld;

       (f)    its general subject matter; and

       (g)    a description of it that you contend is adequate to support your contention that it is privileged.

6.     These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

7.     The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

8.     To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

## SCHEDULE A

## DOCUMENTS TO BE PRODUCED

1.      All documents relating to or reflecting any definition or meaning of AWP.

2.      All documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any Subject Drug.

3.      All documents reflecting maximum allowable costs or MACs for the Subject Drugs.

4.      All documents reflecting or referring to the process you used or use to develop maximum allowable costs or MACs used for reimbursing Providers for the Subject Drugs.

5.      All documents concerning FSS, ASP, AMP, Best Price, EAC or any other pricing benchmark for any Subject Drug.

6.      All documents concerning the number of patients referred to hospitals by the Neighborhood Health Plan during the relevant time period.

7.      All documents concerning the methodology used to determine reimbursement or payment rates (*e.g.*, fee schedule amounts) for any Subject Drug.

8.      All documents that concerning your reimbursement or payment to Providers for any Subject Drug, including, without limitation, all fee schedules.

9.      All documents that you or someone acting on your behalf relied upon in

setting reimbursement or payment rates for any Subject Drug.

10.     All minutes from meetings where reimbursement or payment for Subject Drugs was discussed, including meetings where the setting of reimbursement or payment rates was discussed.

11.     All documents reflecting or referring to all formularies utilized by you which provide coverage for the Subject Drugs.

12.     All documents concerning the factors considered in developing the formularies utilized by you which provide coverage for the Subject Drugs.

13.     All data concerning Provider or PBM claims for reimbursement for Subject Drugs administered to any Participant or Beneficiary, including the following data: (1) the NDC; (2) units billed; (3) amount billed; (4) the date the claim was submitted; (5) the date the claim was paid; (6) the amount paid; (7) the dispensing fee; (8) the basis for reimbursement (*e.g.,* AWP, WAC, MAC, FUL, FSS, ASP or usual and customary charge); (9) HCPCS/J Code; (10) identification number for the Provider; (11) identification number for the Participant or Beneficiary; (12) identification number of the claim; (13) date of birth of the Participant or Beneficiary; (14) Medicare payment amount; (15) amount not covered by plan; (16) name of the group for which the Participant or Beneficiary is a member; (17) date of service; (18) claims status (*e.g.,* denied, accepted, pending); and (19) the state in which service was provided.

14.     All documents relating to your claims processing policies and procedures for any Subject Drug.

15.     A list of all Providers participating in Neighborhood Health Plan, along with their Provider identification numbers.

16.     Electronic transaction records concerning any discounts, rebates, service charges, or other payments you added or subtracted from Provider or PBM claims on account of the Subject Drugs.

17.     All documents, including electronic transaction records, concerning your purchase of the Subject Drugs from Defendants, Wholesalers, PBMs, or any other person or entity.

18.     All documents concerning your contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Defendants, Independent Practice Associations, Specialty Pharmacies, or Providers insofar as they cover any Subject Drug, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, and responses to requests for proposal.

19.     Documents sufficient to identify all persons involved in negotiations of contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Drug Manufacturers, Independent Practice Associations, Specialty Pharmacies, or Providers insofar as they cover any Subject Drug.

20.     All documents concerning the costs to Providers of any Subject Drug, including, without limitation, invoices and other documents reflecting rebates, chargebacks, and other discounts issued by Drug Manufacturers, Wholesalers, or PBMs to Providers.

21.     All documents concerning your awareness that the costs to Providers of Subject Drugs are different from the amounts you reimburse Providers for Subject Drugs, including, without limitation, documents reflecting any differences between the costs to Providers of any Subject Drug and the amounts you reimburse Providers for any Subject Drug.

22.     All communications between you and Providers relating to reimbursement or payment rates of any Subject Drug.

23.     All documents concerning your ownership or control of any Provider.

24.     All documents concerning the acquisition of Subject Drugs by you on behalf of any Provider, university, or other organization.

25.     All documents concerning any incentives provided to any Provider in connection with the purchase or sale of any Subject Drug.

26.     All contracts, agreements, and other documents concerning your arrangements with any Provider concerning risk-sharing, capitation, withholdings, or fee schedules.

27.     All documents concerning to your right to audit Providers.

28.     All documents concerning any audits of Providers and changes to your policy as a result of such audits.

29.     All contracts, agreements, and other documents concerning arrangements between you and Defendants regarding formulary placement of the Subject Drugs, discounts,

rebates and any other compensation received by you in connection with your purchase of the Subject Drugs from Defendants.

30.     All contracts, agreements, and other documents concerning arrangements between you and PBMs regarding formulary placement of the Subject Drugs, discounts, rebates, and any other compensation received by you in connection with your purchase of the Subject Drugs from PBMs.

31.     All documents concerning your decision to rely on, reliance on, or use of drug pricing information published by any Publisher for any Subject Drug.

32.     All documents created by or received from any Publisher, including but not limited to drug pricing information, communications, memoranda, and contracts or agreements between you and any Publisher regarding any Subject Drug.

33.     All documents created by or received from CMS, United States Department of Health and Human Services, Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, the Commonwealth of Massachusetts, any state Medicaid program, or any other federal or state institution, agency, department, or office regarding the pricing of prescription drugs.

34.     All documents provided to CMS, United States Department of Health and Human Services, the Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, the Commonwealth of Massachusetts, any state Medicaid program, or any other federal or state institution, agency, department, or office regarding the pricing of any Subject Drug.

35.     All documents concerning any Profit Analysis you have performed or received relating to your reimbursement or payment for any Subject Drug.

36.     All documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing, reimbursement, payment amounts, or rates for any Subject Drug.

37.     All documents produced by you in any litigation or government investigation or inquiry related to the use of AWP in Medicare, Medicaid, or private reimbursement.

38.     All current and historical organizational charts for all of your departments.

## SCHEDULE B

## <u>DEPOSITION TOPICS</u>

1.      All methodologies you utilized or considered utilizing to determine the amounts to pay or reimburse Providers for drugs administered or dispensed to Participants and Beneficiaries.

2.      All rationales, information, and factors considered by you in deciding whether or not to adopt the reimbursement methodologies described in Subject 1.

3.      The identity of each person at your company who participated in or had knowledge of the decision to select the reimbursement methodologies described in Subject 1.

4.      Any actions that you have taken to reduce either your total expenditures on pharmaceutical benefits or the amount spent on any particular pharmaceutical product.

5.      For all methodologies discussed in Subject 1, all rationales, information, and factors considered by you in deciding whether or not to pay a separate administration fee or dispensing fee in addition to the price of the drug itself.

6.      Your knowledge and understanding of whether any administration or dispensing fees you reimbursed to Providers were sufficient to cover the Provider's costs in administering or dispensing the corresponding drugs.

7.      Your understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," "WAC," "Maximum Allowable Cost," "MAC," "Federal Supply Schedule," "FSS," "Average Sales Price," "ASP," "Average Manufacturer

Price," "AMP," "Best Price," "Estimated Acquisition Cost," or "EAC."

8.      Your understanding and knowledge of whether Drug Manufacturers provided Providers with discounts, rebates, and other incentives that were not reported in pricing compendia or otherwise disclosed to the public.

9.      For physician-administered drugs, whether and to what extent your negotiations with Providers about reimbursement expressly dealt with a distinction between (a) the reimbursement of the drug itself, and (b) the reimbursement for the Provider's administration service.

10.      Whether and to what extent your negotiations over reimbursement rates with Providers over drugs and drug-related services are influenced by Medicare's reimbursement rates.

11.      Your understanding and knowledge of whether Providers would earn a margin on drugs administered and dispensed, including whether such a margin depended, in part, on the difference between the reimbursement you paid and the actual acquisition costs for the drugs, net of any incentives provided by the Drug Manufacturers.

12.      Whether and to what extent you provide different reimbursement rates based upon the type of Providers and/or the method of the administration of the drugs.

13.      Any studies or analysis you have made concerning the relatives costs of the administration of Subject Drugs in physicians' offices rather than in hospitals.

14.      Whether and to what extent you own any Provider and if so, whether you

purchased drugs on behalf of any Provider.

15.     Whether and to what extent a Staff-Model HMO was implemented by your plan and if so, your knowledge as to the period in which the Staff-Model HMO operated, its purchasing practices, and the terms of its contracts with Drug Manufacturers, Wholesalers, or any other person or entity.

16.     Whether and to what extent you have ever been affiliated with a hospital or university and if so, your knowledge as to the period of affiliation with a hospital or university and the terms of the arrangement.

17.     Whether and to what extent you participate in government programs that reimburse under the FSS and if so, your knowledge as to the period of participation in the government program and terms of your participation in the program.

18.     Fee schedules for physician-administered drugs, including the methodologies used to develop the fee schedules, the rationales for such methodologies, and whether the fee schedules were communicated to the physicians.

19.     Whether and to what extent you have transitioned to a Medicare's ASP-based reimbursement system and if so, the date of implementation or change to an ASP-based reimbursement as well as your rationale for doing so or not doing so.

20.     Whether and to what extent you use a capitation reimbursement program, including withholds, for the reimbursement of physician-administered drugs and if so, the start and end dates of these programs, and your knowledge and understanding of how these programs

work.

21.     Your knowledge and understanding of how the formularies and the drugs to be included on the formularies are determined, including any rationales and factors considered in that determination.

22.     Your relationship(s), if any, with any PBM.

23.     All rationales, information, and factors considered by you in deciding whether to do business with a PBM and in deciding which PBM, if any, to use.

24.     The identity of each person at your company who participated in or had knowledge of the decision whether or not to do business with a PBM.

25.     Your knowledge of the margin Wholesalers have earned on drugs over the last decade.

26.     All information sent to or received from federal, state, or local governments regarding pharmaceutical reimbursement.

27.     Your knowledge of government studies, reports, and communications concerning actual acquisition costs for drugs.

28.     Your knowledge and understanding of the allegations in the TAMCC.

29.     Neighborhood Health Plan's document retention policy.

30.     The types and scope of coverage offered by Neighborhood Health Plan.

31.     Neighborhood Health Plan's organizational structure.

32.     All documents produced in response to Defendants' subpoena, including whether such documents are authentic within the meaning of Rule 901 of the Federal Rules of Evidence, and Records of Regularly Conducted Activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

## EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| | |
|---|---|
| Abbott | Acetylcyst |
| Abbott | Acyclovir |
| Abbott | A-Methapred |
| Abbott | Amikacin |
| Abbott | Amikacin Sul |
| Abbott | Aminosyn |
| Abbott | Biaxin |
| Abbott | Calcijex |
| Abbott | Cimetidine |
| Abbott | Clindamycin |
| Abbott | Depakote |
| Abbott | Depakote SPR |
| Abbott | Dextrose |
| Abbott | Dextrose w/Sodium Chloride |
| Abbott | Diazepam |
| Abbott | Ery-Tab |
| Abbott | Erythromycin Cap |
| Abbott | Erythromycin Tab Bs |
| Abbott | Fentanyl Cit |
| Abbott | Furosemide |
| Abbott | Gentamicin |
| Abbott | Heparin Lock |
| Abbott | Leucovor CA |
| Abbott | Lorazepam |
| Abbott | Prevacid Cap |
| Abbott | Prevacid Gra |
| Abbott | Sod Chloride |
| Abbott | Sodium Chloride Sol |
| Abbott | Tobra/Nacl |
| Abbott | Tobramycin |
| Abbott | Vancomycin |
| | |
| Allen & Hanburys | Beconase AQ SPR |
| Allen & Hanburys | Flonase SPR |
| Allen & Hanburys | Serevent AER |
| Allen & Hanburys | Serevent DIS MIS |
| | |

| | |
|---|---|
| Amgen | Aranesp |
| Amgen | Enbrel |
| Amgen | Epogen |
| Amgen | Kineret |
| Amgen | Neulasta |
| Amgen | Neupogen |
| | |
| Astrazeneca | Accolate |
| Astrazeneca | Arimidex |
| Astrazeneca | Casodex |
| Astrazeneca | Diprivan |
| Astrazeneca | Nolvadex |
| Astrazeneca | Seroquel |
| Astrazeneca | Zestril |
| Astrazeneca | Zoladex |
| Astrazeneca | Zomig |
| Astrazeneca | Zomig ZMT |
| Astrazeneca | Atacand |
| Astrazeneca | Atacand HCT |
| Astrazeneca | Entocort EC |
| Astrazeneca | Nexium |
| Astrazeneca | Prilosec |
| Astrazeneca | Pulmicourt |
| Astrazeneca | Rhinocourt |
| Astrazeneca | Toprol XL |
| | |
| Aventis | Allegra |
| Aventis | Allegra-D |
| Aventis | Amaryl |
| Aventis | Anzemet |
| Aventis | Arava |
| Aventis | Azmacourt |
| Aventis | Calcimar |
| Aventis | Carafate |
| Aventis | Cardizem Cap |
| Aventis | Cardizem Inj |
| Aventis | Cardizem Tab |
| Aventis | Gammar |
| Aventis | Gammar P-IV |
| Aventis | Intal |
| Aventis | Intal INH |
| Aventis | Nasacort |

| | |
|---|---|
| Aventis | Nasacort AQ |
| Aventis | Taxotere |
| Aventis | Trental |
| | |
| B. Braun | Dextrose |
| B. Braun | HEP Sod/D5W |
| B. Braun | HEP Sod/NACL |
| B. Braun | Sod Chloride |
| B. Braun | Sodium Chloride Sol |
| | |
| Baxter | Aggrastat |
| Baxter | Ativan |
| Baxter | Bebulin VH |
| Baxter | Brevibloc |
| Baxter | Buminate |
| Baxter | Cisplatin |
| Baxter | Claforan/D5W |
| Baxter | Dextrose |
| Baxter | Doxorubicin |
| Baxter | Gammagard SD |
| Baxter | Gentam/NACL |
| Baxter | Gentran 40 |
| Baxter | Gentran 75 |
| Baxter | Gentran/Trav |
| Baxter | Heparin Lock |
| Baxter | Iveegam |
| Baxter | Iveegam EN |
| Baxter | Osmitrol |
| Baxter | Osmitrol VFX |
| Baxter | Recombinate |
| Baxter | Sod Chloride |
| Baxter | Sodium Chlor Sol |
| Baxter | Travasol |
| Baxter | Travasol w/Dextrose |
| Baxter | Vancocin HCL |
| Baxter | Vancocin/Dex |
| | |
| Bayer Pharmaceutical | Cipro |
| Bayer Pharmaceutical | Cipro Cystit Tab |
| Bayer Pharmaceutical | Cipro I.V. |
| Bayer Pharmaceutical | Cipro XR |
| Bayer Pharmaceutical | DTIC-DOME |

| | |
|---|---|
| Bayer Pharmaceutical | Gamimune N |
| Bayer Pharmaceutical | Koate-HP |
| Bayer Pharmaceutical | Kogenate FS |
| Bayer Pharmaceutical | Mithracin |
| | |
| Bedford | Acyclovir Sodium |
| Bedford | Amikacin Sulfate |
| Bedford | Cytarabine |
| Bedford | Etoposide |
| Bedford | Leucovorin Calcium |
| | |
| B-M Squibb | Paraplatin Inj |
| B-M Squibb | Blenoxane |
| B-M Squibb | Cytoxan |
| B-M Squibb | Etopophos |
| B-M Squibb | Rubex |
| B-M Squibb | Taxol |
| B-M Squibb | Vepesid |
| B-M Squibb | Ividex EC |
| B-M Squibb | Avapro |
| B-M Squibb | Buspar |
| B-M Squibb | Cefzil |
| B-M Squibb | Glucophage) |
| B-M Squibb | Glucovance) |
| B-M Squibb | Monopril) |
| B-M Squibb | Plavix) |
| B-M Squibb | Serzone) |
| B-M Squibb | Tequin) |
| B-M Squibb | Coumadin |
| Apothecon | Amikin (amikacin sulfate) |
| Apothecon | Fungizone (amphotercin b) |
| | |
| Boehringer Ingelheim | Acyclovir Sodium |
| Boehringer Ingelheim | Amikacin Sulfate |
| Boehringer Ingelheim | Cytarabine |
| Boehringer Ingelheim | Doxorubicin |
| Boehringer Ingelheim | Etoposide |
| Boehringer Ingelheim | Leucovor CA |
| Boehringer Ingelheim | Leucovorin Calcium |
| Boehringer Ingelheim | Methotrexate |
| Boehringer Ingelheim | Methotrexate Sodium |
| Boehringer Ingelheim | Mitomycin |

| | |
|---|---|
| Boehringer Ingelheim | Vinblastine Sulfate |
| | |
| Cerenex | Amerge |
| Cerenex | Imitrex |
| Cerenex | Zofran |
| | |
| Dey Labs | Acetylcysteine |
| Dey Labs | Albuterol |
| Dey Labs | Cromolyn Sodium |
| Dey Labs | Ipratropium |
| Dey Labs | Metaproteren Neb |
| | |
| Fujisawa | Aristocort |
| Fujisawa | Aristospan |
| Fujisawa | Cefizox |
| Fujisawa | Cefizox/D5W |
| Fujisawa | Cyclocort |
| Fujisawa | Lyphosin |
| Fujisawa | Nebupent or Pentam 300 |
| Fujisawa | Prograf |
| Fujisawa | Vinblastine Sulfate |
| | |
| Gensia | Amikacin Sulfate |
| Gensia | Amphotercin B |
| Gensia | Etoposide |
| Gensia | Leucovorin Calcium |
| | |
| GlaxoSmithKline | Advair Disku Mis |
| GlaxoSmithKline | Agenerase |
| GlaxoSmithKline | Agenerase SDL |
| GlaxoSmithKline | Alkeran |
| GlaxoSmithKline | Ceftin |
| GlaxoSmithKline | Combivir |
| GlaxoSmithKline | Daraprim |
| GlaxoSmithKline | Epivir |
| GlaxoSmithKline | Epivir HBV |
| GlaxoSmithKline | Flovent |
| GlaxoSmithKline | Flovent ROTA |
| GlaxoSmithKline | Kytril |
| GlaxoSmithKline | Lamictal |
| GlaxoSmithKline | Lanoxin |
| GlaxoSmithKline | Lanoxin Ped |

| | |
|---|---|
| GlaxoSmithKline | Leukeran |
| GlaxoSmithKline | Mepron |
| GlaxoSmithKline | Myleran |
| GlaxoSmithKline | Navelbine |
| GlaxoSmithKline | Paxil |
| GlaxoSmithKline | Paxil CR |
| GlaxoSmithKline | Purinethol |
| GlaxoSmithKline | Relenza |
| GlaxoSmithKline | Retrovir |
| GlaxoSmithKline | Thioguanine |
| GlaxoSmithKline | Trizivir |
| GlaxoSmithKline | Valtrex |
| GlaxoSmithKline | Ventolin HFA |
| GlaxoSmithKline | Wellbutrin |
| GlaxoSmithKline | Zantac |
| GlaxoSmithKline | Ziagen |
| GlaxoSmithKline | Zofran |
| GlaxoSmithKline | Zovirax |
| GlaxoSmithKline | Zyban |
| | |
| Immunex | Leucovorin Calcium |
| Immunex | Leukine |
| Immunex | Methotrexate Sodium |
| Immunex | Novantrone |
| Immunex | Thioplex |
| | |
| J&J Group (Centocor) | Remicade |
| J&J Group (Janssen) | Aciphex |
| J&J Group (Janssen) | Duragesic |
| J&J Group (Janssen) | Reminyl |
| J&J Group (Janssen) | Risperdal |
| J&J Group (Janssen) | Sporanox |
| J&J Group (McNeil) | Bicitra |
| J&J Group (McNeil) | Elmiron |
| J&J Group (McNeil) | Flexeril |
| J&J Group (McNeil) | Floxin |
| J&J Group (McNeil) | Haldol |
| J&J Group (McNeil) | Haldol Decan |
| J&J Group (McNeil) | Levaquin |
| J&J Group (McNeil) | Mycelex |
| J&J Group (McNeil) | Pancrease |
| J&J Group (McNeil) | Pancrease MT |

| | |
|---|---|
| J&J Group (McNeil) | Parafon Fort |
| J&J Group (McNeil) | Polycitra |
| J&J Group (McNeil) | Polycitra-K |
| J&J Group (McNeil) | Polycitra-K Sol |
| J&J Group (McNeil) | Polycitra-LC Sol |
| J&J Group (McNeil) | Regranex |
| J&J Group (McNeil) | Terazol 3 |
| J&J Group (McNeil) | Terazol 7 |
| J&J Group (McNeil) | Testoderm |
| J&J Group (McNeil) | Tolectin |
| J&J Group (McNeil) | Tolectin DS |
| J&J Group (McNeil) | Topamax |
| J&J Group (McNeil) | Tylenol/Cod |
| J&J Group (McNeil) | Tylox |
| J&J Group (McNeil) | Ultracet |
| J&J Group (McNeil) | Ultram |
| J&J Group (McNeil) | Urispas |
| J&J Group (McNeil) | Vascor |
| J&J Group (Ortho Biotech) | Procrit |
| J&J Group (Ortho Derm) | Erycette |
| J&J Group (Ortho Derm) | Grifulvin V |
| J&J Group (Ortho Derm) | Monistat |
| J&J Group (Ortho Derm) | Renova |
| J&J Group (Ortho Derm) | Retin-A |
| J&J Group (Ortho Derm) | Retin-A Micr Gel |
| J&J Group (Ortho Derm) | Spectazole Cream |
| | |
| Novartis | Clozaril |
| Novartis | Combipatch |
| Novartis | Comtan |
| Novartis | Estraderm |
| Novartis | Exelon |
| Novartis | Femara |
| Novartis | Lamisil |
| Novartis | Lamprene |
| Novartis | Lescol |
| Novartis | Lescol XL |
| Novartis | Lotensin |
| Novartis | Lotensin HCT |
| Novartis | Lotrel |
| Novartis | Miacalcin |
| Novartis | Parlodel |

| | |
|---|---|
| Novartis | Ritalin |
| Novartis | Ritalin LA |
| Novartis | Starlix |
| Novartis | Tegretol |
| Novartis | Tegretol XR |
| Novartis | Trileptal |
| Novartis | Vivelle |
| Novartis | Vivelle-DOT |
| | |
| Pfizer | Accupril |
| Pfizer | Accuretic Tab |
| Pfizer | Cardura |
| Pfizer | Celontin |
| Pfizer | Dilantin |
| Pfizer | Dilantin-125 |
| Pfizer | Estrostep FE |
| Pfizer | Femhrt 1/5 |
| Pfizer | Lipitor |
| Pfizer | Lopid |
| Pfizer | Minizide |
| Pfizer | Nardil |
| Pfizer | Neurontin |
| Pfizer | Nitrostat |
| Pfizer | Renese |
| Pfizer | Rescriptor |
| Pfizer | Viracept |
| Pfizer | Zarontin |
| Pfizer | Zithromax |
| Pfizer | Zoloft |
| Pfizer | Zyrtec |
| | |
| Pharmacia | Adriamyc PFS |
| Pharmacia | Adriamyc RDF |
| Pharmacia | Adrucil |
| Pharmacia | Amphocin |
| Pharmacia | Amphotercin B |
| Pharmacia | Bleomycin Sulfate |
| Pharmacia | Celebrex |
| Pharmacia | Cleocin-T |
| Pharmacia | Cytarabine |
| Pharmacia | Depo-Testost |
| Pharmacia | Etoposide |

| | |
|---|---|
| Pharmacia | Neosar |
| Pharmacia | Solu-Cortef |
| Pharmacia | Solu-Medrol |
| Pharmacia | Toposar |
| Pharmacia | Vincasar PFS |
| | |
| Roche | Cellcept |
| Roche | Kytril |
| | |
| Schering | Clarinex |
| Schering | Claritin |
| Schering | Claritin-D |
| Schering | Diprolene |
| Schering | Diprolene AF |
| Schering | Diprosone |
| Schering | Elocon |
| Schering | Eulexin |
| Schering | Integrilin |
| Schering | Intron-A |
| Schering | Lotrisone |
| Schering | Nasonex |
| Schering | Peg-Intron |
| Schering | Proventil |
| Schering | Rebetol |
| Schering | Temodar |
| Schering | Trinalin Rep |
| Schering | Clotrimazole |
| Schering | Griseofulvin, Ultramicrocry |
| Schering | ISMN |
| Schering | Oxaprozin |
| Schering | Perphenazine |
| Schering | Potassium Chloride |
| Schering | Sodium Chloride |
| Schering | Sulcrafate Tablets |
| Schering | Theophylline |
| | |
| Sicor | Acyclovir Sodium |
| Sicor | Amikacin Sulfate |
| Sicor | Doxorubicin |
| Sicor | Etoposide |
| Sicor | Leucovorin Calcium |
| Sicor | Pentamidine Isethionate |

| Sicor | Tobramycin Sulfate |
|---|---|
| | |
| TAP | Prevacid |
| | |
| Watson | Dexamethasone Acetate8 |
| Watson | Dexamethasone Sodium Phosphate |
| Watson | Diazepam |
| Watson | Estradiol |
| Watson | Ferrlecit |
| Watson | Fluphenazine HCL |
| Watson | Gemfibrozil |
| Watson | Gentamicin Sulfate |
| Watson | Imipramine HCL |
| Watson | Infed |
| Watson | Lorazepam |
| Watson | Nadolol |
| Watson | Perphenazine2 |
| Watson | Propranolol |
| Watson | Ranitidine |
| Watson | Vancomycin HCL |
| Watson | Verapamil HCL |

# EXHIBIT C



LEXISNEXIS® FILE & SERVE
7499093
E-SERVICE
Nov 22 2005
10:50PM

One Bowdoin Square
Boston, Massachusetts 02114-2919

Telephone:    617-227-7031
Facsimile:    617 367-2968
TTY:    617 720-3558

**Kotin, Crabtree & Strong, LLP**



# Fax

| **To:** | Paul F. Doyle, Esq. | **From:** | Anne L. Josephson, Esq. |
|---|---|---|---|
| **Fax:** | 212-808-7897 | **Pages:** | 12 |
| **Phone:** | | **Date:** | November 22, 2005 |
| **Re:** | Tufts/Class Action Subpoena | **CC:** | |

☐ **Urgent**    x **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

THIS TRANSMITTAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. THIS TRANSMITTAL MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS TRANSMITTAL IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMITTAL TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL AT THE ABOVE ADDRESS, THANK YOU.

# KOTIN, CRABTREE & STRONG, LLP

ATTORNEYS AT LAW

ONE BOWDOIN SQUARE

BOSTON, MASSACHUSETTS 02114-2925

LAWRENCE KOTIN
ROBERT K. CRABTREE
WILLIAM S. STRONG*
DOLPH J. VANDERPOL
ABBOTT L. REICHLIN
ANNE L. JOSEPHSON
JOSEPH B. GREEN
MARIE F. MERCIER
ELIZABETH J. BAILEY
NICHOLAS M. KELLEY
RENÉ D. VARRIN
SHAREN LITWIN
EILEEN M. HAGERTY
DANIEL T. S. HEFFERNAN

*ALSO ADMITTED IN NH

AMY H. WEINSTEIN
LAUREL H. SIEGEL
SHERRY L. RUSCHIONI
AMY C. MAINELLI**

**ALSO ADMITTED IN RI

TELEPHONE (617) 227-7031

FACSIMILE (617) 367-2988

EMAIL KCS@KCSLEGAL.COM

WWW.KCSLEGAL.COM

November 22, 2005

**BY FAX AND REGULAR MAIL**
Paul F. Doyle, Esq.
Kelley, Drye & Warren, LLP
101 Park Avenue
New York, New York   10178

> *In re* **Pharmaceutical Industry Average Wholesale Price**
> **Litigation, MDL No. 1456**
> **Master File No. 01-12257-PBS**

Dear Mr. Doyle:

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Tufts Associated Health Plans, Inc. ("Tufts HP") objects to production of the documents demanded in the subpoena issued on behalf of Dey, Inc. dated November 9, 2005 ("the Subpoena"). The Subpoena was received by Tufts HP on Veteran's Day, November 11, 2005, and calls for production of documents by November 23, 2005.

Given the Subpoena's spectacular sweep and breadth, Tufts HP will not even have had the time to collect, much less to review the documents that are potentially responsive to your client's request by November 23, 2005. Indeed, in the short time that Tufts HP has had to analyze the Subpoena, it estimates that it could take more than six *months* of a full time equivalent's work just to search for, sort through, retrieve, and organize responsive documents. Moreover, given Tufts HP's status as an absent member of a class from which the defendants have already sought or obtained significant discovery, it is not clear that a subpoena directed to Tufts HP is appropriate at all.

In the event that the Court ultimately determines (or the parties agree) that it is appropriate to proceed with some form of document discovery from Tufts HP, my client reserves its right to supplement its objections once the task of gathering responsive

Paul F. Doyle, Esq.
November 22, 2005
Page 2 of 11

documents becomes clearer, and once Tufts HP and counsel have had an adequate opportunity to review such documents.

In the meantime, Tufts HP's objections are set forth below. Please let me know if, in light of Tufts HP's objections, you intend to proceed with the deposition of Tufts HP on December 2, 2005.

## General Objections

1. Tufts HP objects to the Subpoena on grounds that it is directed to an absent member of a class of Massachusetts third party payors, where the defendants have already undertaken discovery of the two largest health insurer members of that class, and where the defendants have made no showing of need. *See,* MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.4 (2004) (and authorities cited).

2. Tufts HP objects to the Subpoena as exceeding the permissible scope of discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, various Orders entered in the above-referenced action, as well as various federal laws.

For example and without limitation,

a. Tufts HP objects to the Subpoena because, as noted above, it fails to allow reasonable time for compliance, as is required by Rule 45(c) of the Federal Rules of Civil Procedure;

b. Tufts HP objects to the Subpoena because, as noted above, it imposes undue burden and expense, in violation of Rule 45(c) of the Federal Rules of Civil Procedure;

c. Tufts HP objects to the Subpoena because it seeks documents that touch upon major aspects of Tufts HP's business operations over a fourteen year period of time. As such, the Subpoena is, on its face, overbroad, excessive, and not reasonably calculated to lead to the discovery of admissible evidence;

d. Tufts HP objects to the Subpoena insofar as it demands production of highly confidential and competitively sensitive information about Tufts HP, including, for example, its reimbursement rates for drug products, its contracts, and its profits. Disclosure of such information not only would cause irreparable harm to Tufts HP, but may also have the potential adverse effect of influencing the price of drug products in Massachusetts, contrary to the public interest and federal antitrust statutes;

Paul F. Doyle, Esq.
November 22, 2005
Page 3 of 11

  e. Tufts HP objects to the Subpoena insofar as it demands production of
patient information. Disclosure of such information is not only unduly
intrusive and unnecessary, but is also contrary to Tufts HP's
confidentiality obligations under state and federal law, including the
Health Insurance Portability and Accountability Act of 1996 ("HIPAA");

  f. Tufts HP objects to the Subpoena insofar as it requests information
concerning drug products of defendants for whom discovery has closed;

  g. Tufts HP objects to the Subpoena insofar as it requests information
concerning products other than the physician administered drugs that are
the subject of the class action lawsuit;

  h. Tufts HP objects to the Subpoena insofar as its requests are vague,
ambiguous, and not susceptible to framing a meaningful response.

  3. Tufts HP objects to the Subpoena to the extent that it seeks information
protected from discovery by the attorney-client privilege, the work product doctrine, and
other privileges recognized by law.

## Objections to the Subpoena's "Definitions"

  1. Tufts HP objects to the definition of "Tufts Health Plan," "You," or "Your,"
which purports to include within the Subpoena's reach all "present and past officials,
officers, fiduciaries, representatives, agents, assigns, attorneys, employees...affiliates,
and all other persons or entities acting or purporting to act on its behalf or under its
control." This is one feature of the Subpoena that renders it entirely overbroad and
unduly burdensome.

  2. Tufts HP objects to the definition of "Defendants" insofar as it includes
defendants for whom discovery has closed in the above-referenced action.

  3. Tufts HP objects to the definition and use of "Relating to," as it renders
document requests vague and not susceptible to framing a meaningful response.

  4. Tufts HP objects to the definition of "Subject Drug" or "Subject Drugs" to the
extent that it refers to products other than the physician administered drugs that are the
subject of this class action litigation.

## Objections to the Subpoena's "Instructions"

  1. For the reasons set forth above, Tufts HP objects to the specified timeframe of
the document request, 1991 to the present.

Paul F. Doyle, Esq.
November 22, 2005
Page 4 of 11

2. Tufts HP objects to the instruction concerning documents "deemed" to be in Tufts HP's possession, custody, or control, on grounds that it exceeds the permissible scope of discovery and purports to extend the reach of the Subpoena to individuals and entities outside of Tufts HP.

3. Tufts HP objects to the Instructions to the extent they impose requirements beyond those contained in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, and/or any relevant Case Management Order entered in this action.

## Preliminary Objections To the Subpoena's Specific Requests

Please consider the Objections set forth above to apply to each of the Subpoena's specific requests. Please be advised that, while Tufts HP expects that it has many thousands of documents responsive to the Subpoena as a whole, it has not yet made a definitive determination about whether it has documents responsive to each and every request. Subject to the foregoing, Tufts HP objects as follows:

**Request 1:** All documents relating to or reflecting any definition or meaning of AWP.

**Response 1:** Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 2:** All documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any Subject Drug.

**Response 2:** Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 3:** All documents reflecting maximum allowable costs or MACs for the Subject Drugs.

**Response 3:** Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 4:** All documents reflecting or referring to the process you used or use to develop maximum allowable costs or MACs used for reimbursing Providers for the Subject Drugs.

Paul F. Doyle, Esq.
November 22, 2005
Page 5 of 11

**Response 4**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 5**: All documents concerning FSS, ASP, AMP, Best Price, EAC or any other pricing benchmark for any Subject Drug.

**Response 5**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 6**: All documents concerning the number of patients referred to hospitals by the Tufts Health Plan during the relevant time period.

**Response 6**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 7**: All documents concerning the methodology used to determine reimbursement or payment rates (*e.g.*, fee schedule amounts) for any Subject Drug.

**Response 7**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 8**: All documents that concerning [sic] your reimbursement or payment to Providers for any Subject Drug, including, without limitation, all fee schedules.

**Response 8**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 9**: All documents that you or someone acting on your behalf relied upon in setting reimbursement or payment rates for any Subject Drug.

**Response 9**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 10**: All minutes from meetings where reimbursement or payments for Subject Drugs was discussed, including meetings where the setting of reimbursement or payment rates was discussed.

Paul F. Doyle, Esq.
November 22, 2005
Page 6 of 11

**Response 10**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 11**: All documents reflecting or referring to all formularies utilized by you which provide coverage for the Subject Drugs.

**Response 11**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 12**: All documents concerning the factors considered in developing the formularies utilized by you which provide coverage for the Subject Drugs.

**Response 12**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 13**: All data concerning Provider or PBM claims for reimbursement for Subject Drugs administered to any Participant or Beneficiary, including the following data: (1) the NDC; (2) units billed; (3) amount billed; (4) the date the claim was submitted; (5) the date the claim was paid; (6) the amount paid; (7) the dispensing fee; (8) the basis for reimbursement (*e.g.*, AWP, WAC, MAC, FUL, FSS, ASP or usual and customary charge); (9) HCPCS/J Code; (10) identification number for the Provider; (11) identification number for the Participant or Beneficiary; (12) identification number of the claim; (13) date of birth of the Participant or Beneficiary; (14) Medicare payment amount; (15) amount not covered by plan; (16) name of the group for which the Participant or Beneficiary is a member; (17) date of service; (18) claims status (*e.g.*, denied, accepted, pending); and (19) the state in which service was provided.

**Response 13**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 14**: All documents relating to your claims processing policies and procedures for any Subject Drug.

**Response 14**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 15**: A list of all Providers participating in Tufts Health Plan, along with their Provider identification numbers.

Paul F. Doyle, Esq.
November 22, 2005
Page 7 of 11

**Response 15**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 16**: Electronic transaction records concerning any discounts, rebates, service charges, or other payments you added or subtracted from Provider or PBM claims on account of the Subject Drugs.

**Response 16**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 17**: All documents, including electronic transaction records, concerning your purchase of the Subject Drugs from Defendants, Wholesalers, PBMs, or any other person or entity.

**Response 17**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 18**: All documents concerning your contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Defendants, Independent Practice Associations, Specialty Pharmacies, or Providers insofar as they cover any Subject Drug, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, and responses to requests for proposal.

**Response 18**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 19**: Documents sufficient to identify all persons involved in negotiations of contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Drug Manufacturers, Independent Practice Associations, Specialty Pharmacies, or Providers insofar as they cover any Subject Drug.

**Response 19**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 20**: All documents concerning the costs to Providers of any Subject Drug, including, without limitation, invoices and other documents reflecting rebates,

Paul F. Doyle, Esq.
November 22, 2005
Page 8 of 11

chargebacks, and other discounts issued by Drug Manufacturers, Wholesalers, or PBMs to Providers.

**Response 20**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 21**: All documents concerning your awareness that the costs to Providers of Subject Drugs are different from the amounts you reimburse Providers for Subject Drugs, including, without limitation, documents reflecting any differences between the costs to Providers of any Subject Drug and the amounts you reimburse Providers for any Subject Drug.

**Response 21**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 22**: All communications between you and Providers relating to reimbursement or payment rates of any Subject Drug.

**Response 22**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 23**: All documents concerning your ownership or control of any Provider.

**Response 23**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 24**: All documents concerning the acquisition of Subject Drugs by you on behalf of any Provider, university, or other organization.

**Response 24**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 25**: All documents concerning any incentives provided to any Provider in connection with the purchase of sale of any Subject Drug.

Paul F. Doyle, Esq.
November 22, 2005
Page 9 of 11

**Response 25:** Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 26:** All contracts, agreements, and other documents concerning your arrangements with any Provider concerning risk-sharing, capitation, withholdings, or fee schedules.

**Response 26:** Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 27:** All documents concerning to your right to audit Providers.

**Response 27:** Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 28:** All documents concerning any audits of Providers and changes to your policy as a result of such audits.

**Response 28:** Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 29:** All contracts, agreements, and other documents concerning arrangements between you and Defendants regarding formulary placement of the Subject Drugs, discounts, rebates and any other compensation received by you in connection with your purchase of the Subject Drugs from Defendants.

**Response 29:** Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 30:** All contracts, agreements, and other documents concerning arrangements between you and PBMs regarding formulary placement of the Subject Drugs, discounts, rebates, and any other compensation received by you in connection with your purchase of the Subject Drugs from PBMs.

**Response 30:** Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

Paul F. Doyle, Esq.
November 22, 2005
Page 10 of 11


**Request 31**: All documents concerning your decision to rely on, reliance on, or use of drug pricing information published by any Publisher for any Subject Drug.

**Response 31**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, vague, ambiguous, and phrased in a manner not susceptible of framing a meaningful response. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 32**: All documents created by or received from any Publisher, including but not limited to drug pricing information, communications, memoranda, and contracts or agreements between you and any Publisher regarding any Subject Drug.

**Response 32**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Requests 33**: All documents created by or received from CMS, United States Department of Health and Human Services, Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, the Commonwealth of Massachusetts, any state Medicaid program, or any other federal or state institution, agency, department, or office regarding the pricing of prescription drugs.

**Response 33**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Request 34**: All documents provided to CMS, United States Department of Health and Human Services, the Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, the Commonwealth of Massachusetts, any state Medicaid program, or any other federal or state institution, agency, department, or office regarding the pricing of any Subject Drug.

**Response 34**: Tufts HP objects to this Request on grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Request 35**: All documents concerning any Profit Analysis you have performed or received relating to your reimbursement or payment for any Subject Drug.

**Response 35**: Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome. In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

Paul F. Doyle, Esq.
November 22, 2005
Page 11 of 11

**Request 36**:  All documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing, reimbursement, payment amounts, or rates for any Subject Drug.

**Response 36**:  Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome.  In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 37**:  All documents produced by you in any litigation or government investigation or inquiry related to the use of AWP in Medicare, Medicaid, or private reimbursement.

**Response 37**:  Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome.  In addition, Tufts HP objects to the extent that this Request seeks confidential, privileged, and proprietary information.

**Request 38**:  All current and historical organizational charts for all of your departments.

**Response 38**:  Tufts HP objects to this Request on grounds that it is overbroad and unduly burdensome.  In addition, Tufts HP objects to the extent that this Request seeks confidential and proprietary information.

Please contact me if you wish to discuss Tufts HP's objections.  Thank you for your attention to this matter.

Very truly yours,

Anne L. Josephson

cc:     David Abelman, Esq.
        David Nalven, Esq.
        Philip Robbens, Esq.

11