UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY )<br>AVERAGE WHOLESALE PRICE )<br>LITIGATION )<br> )<br> )<br> )<br>THIS DOCUMENT RELATES TO THE )<br>MASTER CONSOLIDATED CLASS ACTION ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |

### NON-PARTY TUFTS ASSOCIATED HEALTH PLANS, INC.'S
### MEMORANDUM IN SUPPORT
### OF ITS MOTION FOR PROTECTIVE ORDER

Pursuant to Local Rule 37.1, non-party Tufts Associated Health Plans, Inc. submits the following in support of its Motion For Protective Order:

**Introduction and Factual Background**

Tufts Associated Health Plans, Inc. is the sole corporate member of Tufts Associated Health Maintenance Organization, Inc. ("TAHMO"), a not-for-profit corporation organized and licensed as a health maintenance organization under the laws of the Commonwealth of Massachusetts. By agreement, Tufts Associated Health Plans, Inc. serves as the operations arm for TAHMO and its subsidiaries, including Tufts Insurance Company, Inc. By virtue of their status as Massachusetts third party payors who provide MediGap-type supplemental insurance and/or who pay for physician administered drugs outside the Medicare Part B context, TAHMO and Tufts Insurance Company, Inc. are members of a class certified by this Court in a Memorandum and Order dated August 16, 2005.

On Friday, November 11, 2005, the Veterans Day holiday, defendant Dey, Inc. served a subpoena upon Tufts Associated Health Plans, Inc. which called for production of a vast array of documents by Wednesday, November 23, 2005, and for production of deposition witnesses on December 2, 2005. The subpoena seeks thirty-eight different categories of documents, as well as deposition testimony on thirty-two broadly defined subjects. The timeframe specified in the subpoena is from 1991 to the present, a period of fourteen years. The subpoena seeks information concerning 369 drug products. It also seeks information that is highly confidential, highly competitively sensitive, and intrusive into TAHMO's relationships with its members, providers, and others. *See*, Motion For Protective Order, Exhibit A.

Consistent with its arrangements with TAHMO and TAHMO's subsidiaries, Tufts Associated Health Plans, Inc. has responded to the subpoena not only on its behalf, but on behalf of class members TAHMO and Tufts Insurance Company, Inc. For ease of reference, the entities are collectively referred to herein as "Tufts Health Plans" or "Tufts HP."

Counsel for Dey, Inc., Philip Robbens and Lorianne Trewick, and the undersigned counsel for Tufts HP conferred by telephone on November 21 (approximately 40 minutes), November 22 (approximately 15 minutes), and November 23 (approximately 10 minutes) to discuss the rationale for and scope of the subpoena. Counsel also discussed the timeframe designated for compliance.

In summary, Dey, Inc.'s counsel took the position that discovery from Tufts HP was appropriate given prior Court rulings in this action. Dey, Inc. took the position that it would only agree to extend time for compliance with the subpoena if Tufts HP would

agree to complete document production during the month of December, and to produce deposition witnesses in early January. Given the breadth and scope of the subpoena, this is, as a practical matter, impossible. *See*, Affidavit of Miriam Sullivan.

Dey, Inc. agreed to narrow the list of drugs about which the defendants sought information from Tufts HP, and transmitted an amended list on November 21, 2005. *See*, Affidavit of Miriam Sullivan, Exhibit A. Dey, Inc.'s counsel also generally described (by telephone) a subset of documents that the defendants deemed particularly pertinent. Tufts HP has not yet received a written list of this subset of documents, and has not yet been able to clarify whether the subset represents, in defendants' view, a wholesale revision of the subpoena, or whether it represents what defendants would view merely as a first phase in the production of all of the documents Dey, Inc originally requested.

Assuming *arguendo* that discovery from Tufts HP is appropriate at all, Tufts HP declined to agree in advance to a revised discovery schedule, where the nature and scope of its obligation to produce documents still remained undefined. In the meantime, having reached no understanding as to defendants' intention to narrow the subject matters of the subpoena, and having obtained no extension of time to respond, Tufts HP had no choice but to serve its objections to the subpoena by November 23, 2005 and to file its Motion For Protective Order today.

## Argument

### I. Dey, Inc. Has Not Met Its Burden To Show A Legitimate Need For Discovery From Tufts HP

According to the Federal Judicial Center's MANUAL FOR COMPLEX LITIGATION ( hereinafter, "MANUAL"), "[p]ost certification discovery directed at individual class members (other than named plaintiffs) should be conditioned on a

showing that it serves a legitimate purpose." MANUAL at §21.4 (2004). "One of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subjected to discovery." *Id.*

The narrow circumstances in which a Court may permit discovery of non-party class members is fully described in Plaintiffs' Memorandum In Support Of its Motion For Protective Order, and will not be repeated here. Briefly stated, before discovery of a non-party class member may proceed, the Court must be satisfied that the requests are absolutely necessary, *see, Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); that the information sought is not available elsewhere, *see, Clark v. Universal Builders, Inc.* 501 F. 2d 324, 340-41 (7th Cir. 1974); that the discovery will not subject absent class members to undue burden or excessive taxing of resources; and that it is not a tactic designed to harass absent class members or reduce the number of potential claimants. *Id.* The defendant's burden is even higher where, as here, the proposed discovery involves the taking of a deposition. *See, e.g., Baldwin & Flynn v. National Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).

Defendant Dey, Inc. has made no showing of need for the massive amount of information it has sought from non-party Tufts HP. Given the amount of discovery that has already taken place in this case, it is difficult to imagine how further discovery could be justified.

Prior to issuing its subpoena to Tufts HP, the defendants had already obtained discovery from third party payors insuring over half of the population of the United States who have health insurance. The defendants had already issued discovery to and obtained information from the two largest health insurers in the Commonwealth of

Massachusetts—Blue Cross Blue Shield of Massachusetts, with a reported membership of 2.8 million, and Harvard Pilgrim Health Care, with a reported membership of 889,000.[1]

Nevertheless, facing a discovery cut-off date of December 2, 2005, the defendants have sought more. Dey, Inc. saw fit to issue sweeping subpoenas on November 9, 2005, to Tufts HP, with a current membership of approximately 650,000, and to Neighborhood Health Plan, with a reported enrollment of approximately 120,000.[2] On November 21, 2005, defendant Dey, Inc. issued yet another subpoena to Fallon Community Health Plan, a Massachusetts health insurer with a reported enrollment of approximately 200,000.[3] Having already been able to discover information from Massachusetts health insurers covering more than 3.5 million insureds, further discovery is simply cumulative, and undermines the very efficiencies that the class action mechanism was designed to achieve.

### 2. Dey Inc.'s Subpoena Is Overbroad, Unduly Burdensome, Oppressive In Scope, and Calls For the Production of Highly Confidential and Competitively Sensitive Information

Rather than making an effort to narrowly tailor its subpoena to call for the production of only the most essential documents from an absent class member, Dey, Inc. has issued a discovery request of remarkably broad scope, covering a period of fourteen years and 369 drug products.[4] While the Court's class certification order appears to focus only on purchasers of physician administered drugs, the discovery that Dey, Inc. issued to

---

[1] These enrollment figures are reported on the health insurers' respective websites, www.bcbsma.com and www.hphc.com.
[2] Tufts HP's current membership has declined since it posted its membership figures on its website. The enrollment figures for Neighborhood Health Plan are those reported on its website, www.nhp.org.
[3] This membership figure is found on Fallon Community Health Plan's website, www.fchp.org.
[4] The proposed "narrower" list of Subject Drugs includes 113 drug products. See, Exhibit A to the Affidavit of Miriam Sullivan.

Tufts HP seeks information not just about physician administered drugs, but also about drug products obtained by consumers at pharmacies.

The task of searching for, sorting through, and organizing responsive documents alone will take in excess of 1500 hours (more than six months) of a full time equivalent job. *See*, Affidavit of Miriam Sullivan. Once the documents are located, sorted, and organized, they must be reviewed for content so that privileged, confidential, and competitively sensitive information can be segregated, labeled, redacted and/or withheld as necessary to prevent inadvertent and harmful disclosure of privileged, confidential, and/or competitively sensitive information. It is significant to Tufts HP that Dey, Inc.'s subpoena not only seeks patient information that must be kept confidential as a matter of law, but that it also requests competitively sensitive identifying information about providers and others upon whom Tufts HP's business operations depend. Some of Dey, Inc.'s requests seek information that is among the most competitively sensitive in the organization—information about the way in which Tufts HP establishes and negotiates its reimbursement rates. *See*, Affidavit of Miriam Sullivan. Given the scope of this litigation as well as the number and nature of parties involved, production of such information could work irreparable harm to Tufts HP.

Tufts HP's specific objections to the subpoena are set forth in its letter of November 22, 2005, attached to the Motion For Protective Order at Exhibit B. These objections, incorporated herein, fully describe the manner in which the subpoena is unreasonable and excessive, imposing extreme and undue burden upon a non-party class member.

## Conclusion

For the reasons set forth herein, in the Motion For Protective Order, and in the Affidavit of Miriam Sullivan, Tufts HP requests that this Court quash the subpoena issued by Dey, Inc. Alternatively, in the event that Dey, Inc. satisfies the Court that some narrowly tailored form of discovery is still necessary in this case, Tufts HP requests that the Court grant it leave, after examining the narrowed requests, to propose terms that will provide it with appropriate protections for confidential and competitively sensitive information, that will allow adequate time for compliance, and that will protect it against undue burden and expense.

Respectfully submitted,

TUFTS ASSOCIATED HEALTH PLANS, INC.

By its attorney,

/s/ Anne L. Josephson
Anne L. Josephson, Esq.
BBO #254680
Kotin Crabtree & Strong
One Bowdoin Square
Boston, MA 02114
(617) 227-7031

## Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorney of record for Dey, Inc. with a copy to David Nalven, Liaison and Co-Lead Counsel for plaintiffs, via email and regular mail on November 25, 2005.

/s/ Anne L. Josephson