UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Chief Magistrate Judge Marianne B. Bowler |

**DEY, INC. AND ABBOTT LABORATORIES' MEMORANDUM OF
LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR A
PROTECTIVE ORDER CONCERNING SUBPOENAS ISSUED
TO CERTAIN ABSENT CLASS MEMBER THIRD-PARTY PAYORS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT ..................................................................................................................... 4

I.      DEFENDANTS ARE ENTITLED TO ABSENT CLASS  MEMBER THIRD-
PARTY PAYOR DISCOVERY ........................................................................... 4

      A.    Defendants' Subpoenas Go To Common Questions ............................. 5

      B.    The Subpoenas Were Tendered In Good Faith ...................................... 7

      C.    The Demanded Disclosures Are Not Unduly Burdensome ................... 8

      D.    Defendants Cannot Obtain the Required Discovery From Other Sources ............ 9

II.     TRACK 2 DEFENDANTS ARE ENTITLED TO TAKE DISCOVERY  IN THIS
ACTION ............................................................................................................ 10

III.    THE SUBPOENAS TO FALLON AND HARVARD PILGRIM PROVIDE
SUFFICIENT NOTICE ..................................................................................... 12

IV.    THE SUBPOENA ISSUED TO HARVARD PILGRIM IS NOT DUPLICATIVE ....... 12

CONCLUSION ................................................................................................................ 14

Dey, Inc. ("Dey") and Abbott Laboratories ("Abbott"), submit this memorandum of law in opposition to Plaintiffs' motions for a protective order concerning subpoenas issued by Dey and Abbott to four absent class member third-party payors.[1]

## PRELIMINARY STATEMENT

Plaintiffs' motions present no new issues.  Indeed, as this Court has recognized on numerous prior occasions, Defendants are entitled to discovery from absent class member health plans.  Such discovery, which Defendants cannot obtain from the representative Plaintiffs, is necessary to defend against Plaintiffs' claim.  In recognition of the value of this type of evidence, the Court has ordered other absent class member health plans to produce documents and data.  The Court has also ordered other absent class member health plans to produce witnesses for depositions.

Plaintiffs, impervious to this reality, once again seek to prevent Defendants from obtaining critical evidence.  Last time, Plaintiffs tried to convince the Court that Defendants simply could not take discovery of absent class members because it was too burdensome.  Modifying their argument slightly, Plaintiffs now contend that Defendants' discovery effort is "unremitting" and excessive.  Nevertheless, the central premise upon which Plaintiffs' motions hinge – that the subpoenas "run afoul of class action concepts because they require affirmative conduct on the part of companies that are absent class members and may never be parties to this action," (Def. Mem., at 1) – is the same as before and still false.  None of the arguments Plaintiffs make call for a contrary conclusion.  Plaintiffs' motions should be denied.

---

[1]    This memorandum responds to Plaintiffs' Motion for a Protective Order Re Subpoenas Issued By Dey, Inc. to Tufts Associated Health Plans, Inc. and Neighborhood Health Plan, Inc. (Docket No. 1907), filed November 23, 2005, and Plaintiffs' Motion for a Protective Order Concerning Notices of Deposition and Subpoenas issued by Dey, Inc. to Fallon Community Health Plan and Abbott Laboratories to Harvard Community Health Care, (Docket No. 1909), filed on November 25, 2005 (collectively, the "motions").

## STATEMENT OF FACTS

On August 16, 2005, the Court certified, among other classes, a class of Massachusetts third-party payors and consumers who paid for physician-administered drugs where reimbursement was based explicitly on average wholesale price ("AWP").  *In re Pharmaceutical Indus. Average Whole Price Litig.*, 250 F.R.D. 61 (D. Mass. 2005).  Plaintiffs sought, but were denied, certification of a nationwide class of third-party payors who reimbursed for both physician-administered and self-administered drugs.  Thus, for the first time on August 16, the focus of the Plaintiffs' third-party payor case was clear:  it only concerned third-party payors doing business in Massachusetts.  The Court's class certification order gave Plaintiffs 60 days to amend their complaint to name suitable class representatives.

Plaintiffs concede, as they must, that the bulk of the absent class member health plan discovery to date concerned third-party payors *outside* of Massachusetts and concerned payments made for all types of drugs, with an emphasis on self-administered drugs, which were formerly the bulk of Plaintiffs' case.

On October 17, 2005, Plaintiffs filed an amended complaint which purported to name additional class representatives.  Significantly, although several large third-party payors do business in Massachusetts, and are potential members of the class of third-party payors certified by the Court, Plaintiffs did not name one Massachusetts third-party payor as a class representative.  Rather, Plaintiffs purport to have their several union benefit fund plaintiffs – none of which is based in Massachusetts or provides services to Massachusetts residents – serve as the third-party payor class representatives for the Massachusetts-only class.  Thus, although the Court certified a Massachusetts-only class of third-party payors, there are, in fact, no Massachusetts third-party payor class representatives.

Recognizing the need to obtain discovery from the absent Massachusetts class members, the Track 2 Defendants took steps to secure discovery from these entities. As Plaintiffs note, these efforts included the issuance of a subpoena to Blue Cross Blue Shield of Massachusetts ("BCBS MA"). Then, subpoenas were issued by Dey to Tufts Associated Health Plans, Inc. ("Tufts"), Neighborhood Health Plan, Inc. ("Neighborhood") and Fallon Community Health Plan ("Fallon"). Similarly, Abbott issued a subpoena to Harvard Pilgrim Healthcare ("Harvard Pilgrim").

With the exception of Harvard Pilgrim, none of the newly subpoenaed third-party payors had produced any discovery in connection with this action. While Harvard Pilgrim had produced discovery in this action previously, the subpoena issued to Harvard Pilgrim was tailored to be non-duplicative of discovery already obtained from Harvard Pilgrim. (*See, infra,* Point IV.) Moreover, the selection of these entities was not without logic: BCBS MA is the largest third-party payor in Massachusetts (over 2 million members), Tufts and Harvard Pilgrim are smaller plans (700-800,000 members), and Fallon and Neighborhood represent plans with the smallest enrollment (less than 200,000 members). Thus, discovery from these plans was meant to provide a cross-section of the potential members of the Massachusetts third-party payor class.

Defendants' subpoenas seek a variety of information. However, Defendants primarily seek an understanding of the methodology these Massachusetts third-party payors employ for reimbursement of physician-administered drugs and the methodology used to set reimbursement for physician-administered drugs. Understanding the methodology these plans employ for reimbursement of physician-administered drugs includes obtaining an understanding of their Plans' knowledge and understanding of AWP, whether AWP played any role in the

reimbursement methodology, and how the amount paid for physician-administered drugs was arrived at.  The subpoenas at issue here seek this information.

Where Plans have contacted Dey and Abbott in response to the subpoenas, Dey and Abbott have attempted to reach a compromise which would avoid undue burden but provide Defendants with the documents they seek.  Thus far, Defendants have engaged in negotiations with Tufts and Harvard Pilgrim, and intend to commence negotiations immediately with Neighborhood.  Fallon has yet to respond to the subpoena issued to it.  For example, Abbott has already engaged in negotiations with Harvard Pilgrim aimed at reaching agreement on a compromise, narrowed response.  (*See* Exhibit A, which is a letter from Harvard Pilgrim's in-house counsel which reviews the history of the negotiations and is cooperating in order to provide a response.)[2]

Dey and Abbott now submit this memorandum of law in opposition to Plaintiffs' motion.

## ARGUMENT

## I.  DEFENDANTS ARE ENTITLED TO ABSENT CLASS MEMBER THIRD-PARTY PAYOR DISCOVERY

As this Court has recognized on several prior occasions, (*see* Exhibits B to D), Defendants are entitled to proceed with their discovery of the subpoenaed plans, even though they are absent class members.  Indeed, Rule 26 of the Federal Rules of Civil Procedure requires "the scope of discovery [to] be liberally construed so as to provide both parties with information essential to proper litigation of all the facts."  *M. Berenson Co. v. Faneuil Hall Marketplace,Inc.,* 103 F.R.D. 635, 637 (D. Mass. 1984).  The discovery of the subpoenaed plans is necessary to

---

[2]    All exhibits referenced herein are annexed to the accompanying Declaration of Philip D. Robben, dated November 29, 2005.

respond to Plaintiffs' allegations that defendants perpetrated a fraud on Massachusetts Third-Party Payors, and therefore "essential" to the proper defense of this litigation. *See Easton & Co. v. Mutual Benefit Life Ins.*, Civ. Nos. 9 -4012, 92-2095, 1994 WL 248172, at *4 (D.N.J. May 18, 1994) (allowing discovery of absent class members where it "would tend to prove that the market was not defrauded, and thus the benefit of the 'fraud on the market' presumption would be unavailable").

Moreover, contrary to Plaintiffs' continued assumption, the subpoenaed plans' status as absent class members does not exempt them from discovery. Rather, this Court has held that discovery of absent class members is entirely appropriate if certain conditions are met:

> [T]he overwhelming majority of courts which have considered the scope of discovery against absentees have concluded that such discovery is available, at least when the information requested is relevant to the decision of common questions, when the interrogatories or document requests are tendered in good faith and are not unduly burdensome, and when the information is not available from the representative parties.

*M. Berenson Co.*, 103 F.R.D. at 637 (citing *Dellums v. Powell,* 566 F.2d 167, 187 (D.C. Cir. 1977)).[3] Defendants' subpoenas satisfy each of those conditions:  The demands (i) seek information relevant to the resolution of common questions, (ii) were tendered in good faith, (iii) are not unduly burdensome, and (iv) seek disclosure of information that is not available from other sources.

### A.     Defendants' Subpoenas Go To Common Questions

By their subpoenas, Defendants seek disclosures concerning some of the fundamental questions at issue in this litigation – the methodologies used by third-party payors to

---

[3]     *Accord, Brennan v. Midwestern United Life Ins. Co.,* 450 F.2d 999, 1005 (7th Cir. 1971); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc*, No. 97 Civ. 4550, 97 Civ. 4676, 1998 WL 241279, at *2 (S.D.N.Y. May 12, 1998); *Easton & Co. v. Mutual Benefit Life Ins. Co,* Civ. Nos. 9 - 4012, 92-2095, 1994 WL 248172, at *3 (D.N.J. May 18, 1994).

reimburse for physician-administered drugs and whether payors who based reimbursement on AWP knew that AWP was not an average of wholesalers' prices.  Indeed, the subpoenas squarely seek evidence relevant to the common questions alleged in the Third Amended Master Consolidated Class Action Complaint ("TAMCC"):

- Whether AWPs are used as a benchmark for negotiating payments by Third-Party Payors for subject drugs (TAMCC ¶ 560(h));

- Whether Defendants engaged in a pattern and practice that caused Plaintiffs and Class Members to make inflated payments for subject drugs (TAMCC ¶ 560 (i));

- Whether Defendants engaged in a pattern of deceptive and/or fraudulent activity intended to defraud Plaintiffs and the Class members (TAMCC ¶ 560 (j));

- Whether Defendants are liable to Plaintiffs and the Class members for damages for conduct actionable under Massachusetts' consumer protection statute (TAMCC ¶ 560(n)).

Defendants fully expect the disclosures to establish that the subpoenaed plans were not deceived by the reporting of AWP.  In fact, consistent with testimony obtained from other plans, Defendants expect disclosure to show that the plans knew full well that AWP did not equal actual acquisition cost and negotiated with providers for reimbursement of physician-administered drugs based not on the AWP of individual drugs but on the lowest total dollar amount of reimbursement – for all drugs dispensed – that providers would accept in a competitive market.

Accordingly, the discovery is relevant to, and likely dispositive of, Plaintiffs' fraud theory. *Easton & Co.*, 1994 WL 248172 at *4 ("these issues of individual reliance are relevant to the ultimate determination of liability under the 'fraud on the market' theory . . . [and therefore] the requested discovery is relevant to the determination of common questions"). *See also Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 451 (S.D.N.Y. 1995) ("the issues of liability

on which Defendants seek to depose the [absent class members] is a class-wide issue going to the heart of the Plaintiffs' claim . . . and therefore properly the subject of Defendants' discovery").

**B.      The Subpoenas Were Tendered In Good Faith**

There is no legitimate dispute that the subpoenas at issue were tendered in good faith.  Seeking only those disclosures necessary to defend Plaintiffs' allegations, Dey and Abbott made targeted demands and, thereafter, took reasonable measures to ensure that the recipients were not unduly burdened.

Moreover, although Plaintiffs attempt to argue otherwise, the subpoenas were issued at a limited number of representative plans currently operating in Massachusetts. Defendants tailored the individual demands to the central issues of this case.  Where the subpoenaed plans have objected to the subpoenas, Dey and Abbott have tried to reach agreement on reasonable extensions of time and narrowed responses to avoid being burdensome. Defendants' conduct belies any assertion that Defendants sought to harass or dissuade absent class members from joining the litigation.  As such, the requested discovery should be allowed. *Brennan*, 450 F.2d at 1005 (allowing discovery after concluding that "there is nothing in the record to suggest that the discovery procedures were used as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants").

Plaintiffs spend a great deal of time arguing that the subpoenas at issue are excessive because Defendants already took discovery from other third-party payors at prior points in this action.  Indeed, given that the Court has endorsed much broader absent class member discovery in the past, this is Plaintiffs' primary argument.  Plaintiffs' argument is meritless.  Defendants' prior third-party payor discovery efforts were directed at a sample of plans operating across the country, which was then the scope of the putative class.  The prior

discovery did not focus on a sample of Massachusetts third-party payors, which is now one of
the classes at issue.

### C.      The Demanded Disclosures Are Not Unduly Burdensome

Plaintiffs complain that Defendants' requests are "extraordinarily burdensome"
and impose an undue burden on the health plans. This is simply not the case.

Plaintiffs correctly note that, in assessing the propriety of absent class member
discovery, courts normally seek to limit absent class member discovery to protect absent class
members from discovery burdensome or harassing to ordinary individuals.  Those concerns do
not exist where, as here, the absent class members are sophisticated corporate entities with their
own legal representation.  As one court explained when it permitted discovery of absent class
members that were funds:

> [S]ince the class members here are not the typical members of a
> plaintiff class – individuals with small claims and presumably
> limited means – but rather are organized entities providing
> financial and other benefits to members of their constituencies
> under pre-existing collective bargaining agreements, *there is less
> concern that some controlled discovery will be unduly burdensome
> or imperil the maintenance of the class.*

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, No. 97 Civ. 4550, 97 Civ. 4676,
1998 WL 241279, at *3 (May 12, 1998) (emphasis added).  None of the cases Plaintiffs cite call
for a contrary conclusion.  *See, e.g., Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325,
327 (S.D.N.Y. 1980) (holding that "ordinary shareholders" were not properly subject to absent
class member discovery); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974)
(reversing dismissal of the claims of absent class members for failure to provide discovery where
the discovery sought was technical in nature and would have required the individual class
members – individuals asserting civil rights claims – to obtain individual legal counsel).
Moreover, *American Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974) and *Phillips Petroleum*

*Co. v. Shutts*, 472 U.S. 797 (1985), do not even address the issue of discovery from absent class members.

Those courts that have not permitted discovery against absent class members have often been concerned that the burden would outweigh the small monetary recovery that each individual class member stands to gain, and that such a situation would be unfair to the selected few and would tend to undercut the purpose of Rule 23 to provide an efficient remedy where individual action would not be cost-justified.  That concern hardly applies here, where the subpoenaed plans stand to recover millions of dollars if Plaintiffs are successful in this action.[4]

### D.      Defendants Cannot Obtain the Required Discovery From Other Sources

Completely absent from Plaintiffs' motion is any recognition that the discovery sought from the subpoenaed plans is not available elsewhere.  Indeed, despite the Court's certification of a Massachusetts-only third-party payor class, there is inexplicably no Massachusetts third-party payor among the Plaintiffs' class representatives.  Moreover, although Plaintiffs go on at length about how purportedly similar discovery was sought before from other third-party payors, Plaintiffs cannot contend that Defendants have ever taken the discovery sought from a sample of Massachusetts third-party payors.

---

[4]      In one of the motions, Plaintiffs cite to the written objections of Tufts, which objections claimed that the subpoena issued to Tufts was burdensome because it was served on Veterans Day and did not allow sufficient time for a response.  First the subpoena to Tufts was served on November 9, 2005, not Veterans Day, which was November 11, 2005.  (*See* Exhibit E.)  Second, Tufts' objections fail to account for the fact that Dey and Tufts were engaged in negotiations aimed at securing a mutually agreeable response from Tufts.  Recognizing Tufts' need for additional time to respond, with the December 2, 2005 discovery cut-off and other milestone dates approaching, Dey asked Tufts to commit to making some production of readily available documents in exchange for Dey's agreement to a rolling production extending to January 2006.  Given that discovery from third-party payors had been affirmed by the Court on several occasions, Dey felt this was a reasonable compromise.  Tufts apparently did not and served objections.

II.     **TRACK 2 DEFENDANTS ARE ENTITLED TO TAKE DISCOVERY
        IN THIS ACTION**

            Grasping for some basis to stymie Dey's and Abbott's efforts to take discovery

from the subpoenaed plans, Plaintiffs contend that the discovery should be quashed because

Defendants are engaged in a "subterfuge" to avoid the Track 1 discovery cut-off. Plaintiffs'

arguments are meritless and should be rejected.

            Plaintiffs cannot seriously contend that because the Track 1 defendants engaged

in much of the discovery to date, Track 2 defendants such as Dey and Abbott are not permitted to

similarly engage in discovery. Moreover, Plaintiffs are mistaken: although prior subpoenas may

have been issued by Track 1 defendants, Track 2 defendants were involved in obtaining

compliance with those subpoenas. In addition, Dey and Abbott – not Plaintiffs – are in the best

position to determine what discovery best serves their "discovery needs."

            Furthermore, Plaintiffs take an overly narrow view of the drugs for which Track 2

defendants may properly take discovery. Seeking discovery on Track 2 drugs alone would

unnecessarily limit Track 2 defendants' discovery efforts since Track 1 and Track 2 defendants'

drugs cannot be viewed in isolation from each other. As a general matter, a number of third

party payors have testified that they negotiate drug reimbursement at the fee schedule level. That

is, payors often seek to manage the aggregate reimbursement paid to a physician rather than any

line item or drug in particular. In order to demonstrate this fee schedule perspective it is

important for defendants to obtain information that goes beyond claims data for a particular

reimbursement. Therefore, if discovery were, inappropriately, limited to Track 2 drugs, the

Track 2 defendants would be unable to determine how this fee schedule level negotiation

impacted reimbursement for Track 2 drugs and whether or how reimbursement for other drugs

and services were affected by the reimbursement of a particular drug or service.

Track 2 defendants seek this discovery for several additional reasons. First, defendants are seeking claims data and physician fee schedules in an effort to understand how cross-subsidization among drugs occurs, especially cross-subsidization between branded and generic drugs. In order to examine the extent to which this methodology is employed by third party payors, Track 2 defendants seek reimbursement data and physician fee schedules for all physician-administered drugs. Track 2 defendants, however, have limited their discovery requests to physician-administered drugs actually named in this litigation. Additionally, Track 2 defendants seek to understand how a total patient procedure is reimbursed, *i.e.*, all drugs and services associated with the treatment of the patient for a particular disease. Many of the drugs named in this litigation and sold by Track 1 defendants are administered in tandem with drugs named in this litigation and sold by Track 2 defendants. For example, treatment for a particular form of cancer may include administration of numerous chemotherapy agents as well as other physician-administered drugs. Therefore, Track 2 defendants must seek discovery which inevitably includes both Track 1 and Track 2 drugs. Finally, physician-administered drugs are reimbursed by third party payors under the Medicare HCPCS J Code system. A single J Code can apply to drugs manufactured by multiple defendants, *e.g.*, estoposide is manufactured by BMS (a Track 1 defendant), Boehringer Ingelheim, Genesia, Pharmacia and Sicor (Track 2 defendants); sodium chloride is manufactured by Schering (Track 1 defendant), Abbott, Baxter and B. Braun (Track 2 defendants). Third party payors cannot provide reimbursement data for a particular J Code and limit that data to Track 2 defendants' drugs because it is impossible for the payor to determine, based on the J Code, which manufacturer's drug was reimbursed.

III.   **THE SUBPOENAS TO FALLON AND HARVARD PILGRIM PROVIDE SUFFICIENT NOTICE**

Testament to the meritless nature of Plaintiffs' arguments, they resort to an utter technicality in an attempt to obtain an order quashing subpoenas issued to Fallon and Harvard Pilgrim. As to these plans, Plaintiffs argue that Defendants failed to provide the 21 days notice purportedly called for by Case Management Order No. 10. Plaintiffs are wrong.

First, Plaintiffs fail to mention that they previously litigated this issue and lost. Indeed, on September 27, 2004, the Court ruled that Defendants could notice third-party payor depositions on seven days notice provided that Defendants did not notice more than ten depositions in any one week. (Exhibit F, at 117; 2-129:7. The Court's seven day order is at 128:21.) As Plaintiffs concede, both the Fallon and Harvard Pilgrim depositions were scheduled in excess of seven days notice. Second, Plaintiffs' argument completely ignores the fact that Plaintiffs previously sought to enforce the seven day rule in communications with Defendants. (*See* Exhibits G and H.) Finally, Plaintiffs' argument disregards months of the parties' course of dealing during which third-party payor depositions have routinely been scheduled with no more than seven days notice without objection from Plaintiffs.

IV.   **THE SUBPOENA ISSUED TO HARVARD PILGRIM IS NOT DUPLICATIVE**

Plaintiffs suggest that the subpoena of Harvard Pilgrim is duplicative of a subpoena previously served on this entity. The narrowly tailored subpoena served on November 23, 2005 focuses on certain documents and data related to the physician-administered drugs at issue in this litigation. Specifically, Track 2 defendants seek fee schedules, contracts and claims data related to these drugs. The documents and data produced by Harvard Pilgrim as a result of the initial subpoena focused on pharmacy reimbursement of self-administered drugs which are now less relevant given the scope of the class considered by this Court. Furthermore, the

production by Harvard Pilgrim on June 17, 2004 consisted of 810 pages of documents, many of which were sample contracts between Harvard Pilgrim and providers.  Hardly the voluminous production that Plaintiffs describe.  The claims data produced by Harvard Pilgrim covered the period January 1999 to June 2004 and consisted of pharmacy reimbursements for self-administered drugs, reimbursements which are now not as relevant in light of the August 16, 2005 class certification decision.  Discussions with Harvard Pilgrim suggest that additional documentation will be available.  The current subpoena seeks specific documents relating to the reimbursement of physician-administered drugs, documents not previously produced by Harvard Pilgrim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions should be denied.


Respectfully submitted,


KELLEY DRYE & WARREN LLP


By:   /s Philip D. Robben
    Paul F. Doyle (BBO # 133460)
    Christopher C. Palermo (*pro hac vice*)
    Philip D. Robben (*pro hac vice*)

101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7786
Facsimile:  (212) 808-7897

Attorneys for Dey, Inc.


JONES DAY

By:   /s Toni-Ann Citera

James R. Daly
Tara A. Fumerton
77 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile:  (212) 755-7306

Attorneys for Abbott Laboratories


Dated:  November 29, 2005

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on November 29, 2005, a copy to LexisNexis File & Serve for posting and notification to all parties.

_____/s Philip D. Robben_____