# Exhibit E

© 1988 JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

UNITED STATES DISTRICT COURT
COURT      DISTRICT OF MASSACHUSETTS

COUNTY OF

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | Civil Action<br>~~Index~~ No.  01-12257-PBS<br>MDL NO. 1456 |
| ~~XXXXXX~~ | *AFFIDAVIT OF* |
| THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION | *SERVICE OF SUBPOENA*<br>IN A CIVIL CASE |
| ~~XXXXXXXX~~ | |

MASSACHUSETTS
STATE OF ~~NEW YORK~~, COUNTY OF      NORFOLK      SS:   The undersigned, being duly sworn, deposes and says; deponent is not a
party herein, is over 18 years of age and resides at      STOUGHTON, MASSACHUSETTS
That on  11-9-05                at 3:60 PM., at  833 Wyman Street Waltham, MA 02454
deponent served the within subpoena on      TUFTS ASSOCIATED HEALTH PLANS, INC.                witness therein named,
IN A CIVIL CASE

INDIVIDUAL
1. ☐ by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said subpoena.

CORPORATION
2. ☒ a      DOMESTIC          corporation, by delivering thereat a true copy to  Holly Hartnett
personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be
MANAGING AGENT          thereof.

SUITABLE AGE PERSON
3. ☐ by delivering thereat a true copy to                                                         a person of suitable age
and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

AFFIXING TO DOOR, ETC.
4. ☐ by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place
of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion
thereat, having called there

MAILING TO RESIDENCE
USE WITH 3 OR 4
5A. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness
at witness' last known residence, at                                                         and deposited
said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

MAILING TO BUSINESS
USE WITH 3 OR 4
5B. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly
addressed to witness at witness' actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore
the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the
communication was from an attorney or concerned an action against the witness.

DESCRIPTION
USE WITH
1, 2, OR 3
☒

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☒ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $ 55.00          the authorized traveling expenses and one day's witness fee.

Sworn to before me on
NOVEMBER 10, 2005

MARIA BARROS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 21, 2010

PRINT.....Bernardino Lopes..........
.....Bernardino Lopes..........
License No. ...............................

Exhibit F

```
 1            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
 2
     * * * * * * * * * * * * * *
 3   CITIZENS FOR CONSUMER    *
     JUSTICE, et al          *
 4       Plaintiffs,      *
                      *
 5       vs.        *    CIVIL ACTION
                      *    No. 01-12257-PBS
 6   ABBOTT LABORATORIES,     *
     et al              *
 7       Defendants.     *
     * * * * * * * * * * * * * *
 8
         BEFORE THE HONORABLE MARIANNE B. BOWLER
 9           UNITED STATES MAGISTRATE JUDGE
                MOTION HEARING
10
     A P P E A R A N C E S
11
         HAGENS BERMAN LLP
12        One Main Street, 4th Floor
         Cambridge, Massachusetts 02142
13        for the plaintiffs
         By:  Thomas M. Sobol, Esq.
14

15        SPECTOR, ROSEMAN & KODROFF, P.C.
         1818 Market Street, Suite 2500
16        Philadelphia, Pennsylvania 19103
         for the plaintiffs
17        By:  Jeffrey L. Kodroff, Esq.

18

19

20

21               Courtroom No. 17
                John J. Moakley Courthouse
22               1 Courthouse Way
                Boston, Massachusetts 02210
23               September 27, 2004
```

10:30 a.m.

24

25

2

1   APPEARANCES, CONTINUED

2

3

        THE WEXLER FIRM LLP
4        One North LaSalle Street, Suite 2000
         Chicago, Illinois 60602
5        for the plaintiffs
         By: Kenneth A. Wexler, Esq.
6

7        LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
         230 Park Avenue, Suite 1160
8        New York, New York 10169
         for the defendants
9        By:  David A. Schulz, Esq.

10       MURPHY & RILEY, P.C.
         141 Tremont Street
11       Boston, Massachusetts 02111
         for the defendants
12       By: Richard J. Riley, Esq.

13       KELLEY DRYE & WARREN LLP
         101 Park Avenue
14       New York, New York 10178
         for the defendants
15       By: Christopher C. Palermo, Esq.

16

        THE HEARST CORPORATION
17       959 Eighth Avenue
         New York, New York 10019

2

18      for the defendants
        By: Eve Burton, Esq.
19

20

21

22

23

24

25



                                    3


1    APPEARANCES, CONTINUED

2         KAYE SCHOLER LLP
          425 Park Avenue
3         New York, New York 100022-3598
          for the defendants
4         By: Saul P. Morgenstern, Esq.

5

          WILMER CUTLER PICKERING HALE and DORR LLP
6          60 State Street
          Boston, Massachusetts 02109
7          for the defendants
          By: Karen F. Green, Esq.
8

9         HOGAN & HARTSON LLP
          875 Third Avenue
10         New York, New York 10022
          for the defendants
11         By: Lyndon M. Tretter, Esq.
             Steven M. Edwards, Esq.
12

```
13        DAVIS POLK & WARDWELL
           450 Lexington Avenue
14          New York, New York 10017
           for the defendants
15          By: Kimberly D. Harris, Esq.

16
           HOLLAND & KNIGHT, LLP
17          10 St. James Avenue
           Boston, Massachusetts 02116
18          for the defendants
           By: Geoffrey E. Hobart, Esq.
19
           FOLEY HOAG LLP
20          155 Seaport Boulevard
           Boston, Massachusetts 02210
21          for the defendants
           By: Nicholas C. Theodorou, Esq.
22

23

24

25
```

4

```
1   APPEARANCES, CONTINUED

2        SHOOK, HARDY & BACON LLP
          2555 Grand Boulevard
3         Kansas City, Missouri 64108-2613
          for the defendants
4         By: James P. Muehlberger, Esq.

5

6        NIXON PEABODY LLP
          101 Federal Street
```

```
7       Boston, Massachusetts 02110
        for the defendants
8       By: Robert P. Sherman, Esq.

9
        SHERIN AND LODGEN LLP
10        101 Federal Street
        Boston, Massachusetts 02110
11        for the defendants
        By: James W. Matthews, Esq.
12

13        BINGHAM McCUTCHEN
        150 Federal Street
14        Boston, Massachusetts 02110-1726
        for the defendants
15        By: Joseph L. Kociubes, Esq.

16
        LAREDO & SMITH, LLP
17        15 Broad Street, Suite 600
        Boston, Massachusetts 02109
18        for the defendants
        By: Mark D. Smith, Esq.
19

20        ROPES & GRAY
        One International Place
21        Boston, Massachusetts 02110
        for the defendants
22        By: Eric P. Christofferson, Esq.
            John T. Montgomery, Esq.
23

24

25
```

5

1   APPEARANCES, CONTINUED

5

2

3        BONNER KIERNAN TREBACH & CROCIATA
          One Liberty Square
4          Boston, Massachusetts 02109
          for the defendants
5          By: John A. Kiernan, Esq.

6

7        COVINGTON & BURLING
          1201 Pennsylvania Avenue NW
8          Washington, D.C. 20004-2401
          for the defendants
9          By: Mark H. Lynch, Esq.

10

        SONNENSCHEIN NATH & ROSENTHAL LLP
11        1301 K Street N.W., Suite 600
        East Tower
12        Washington, D.C. 20005
        for the defendants
13        By: Elizabeth I. Hack, Esq.

14

        DWYER & COLLORA, LLP
15        600 Atlantic Avenue
        Boston, Massachusetts 02210-2211
16        for the defendants
        By: Joseph E. Haviland, Esq.
17

18

        PATTERSON, BELKNAP, WEBB & TYLER LLP
19        1133 Avenue of the Americas
        New York, New York 10036
20        for the defendants
        By: Andrew D. Schau, Esq.
21

22

23

24

6

25

6

1   APPEARANCES, CONTINUED

2
            KIRKPATRICK & LOCKHART LLP
3            75 State Street
            Boston, Massachusetts 02109
4            for the defendants
            By: Michael DeMarco, Esq.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

7

19

20

21          CAROL LYNN SCOTT, CSR, RMR
            Official Court Reporter
22          One Courthouse Way, Suite 7204
            Boston, Massachusetts 02210
23              (617) 330-1377

24

25

7

1                P R O C E E D I N G S

2          THE COURT:  Please be seated.

3          THE CLERK:  Today is Monday, September 27,

4    2004.  The case of Citizens for Consumer Justice, et al

5    versus AbbotT Laboratories, et al.  Civil action No.

6    01-12257 will now be heard before this Court.

7          Would counsel please identify themselves for the

8    record.

9          MR. SOBOL:  Good morning, Your Honor.  Tom

10   Sobol, Hagens Berman, for the plaintiffs.

11         THE COURT:  Thank you.

12         MR. KODROFF:  Jeffrey Kodroff, Spector,

13   Roseman & Kodroff, also for the plaintiffs.

8

12          THE COURT: And when was that filed?

13          MR. SOBOL: That was filed on September 10.

14    And the defendants filed a response --

15          MS. HARRIS: September 20th.

16          MR. SOBOL: -- September 20th.

17          THE COURT: So do we have everyone here?

18          MR. SOBOL: We have everybody here. And I

19    think we are ready to argue. We did try to resolve it. We

20    are not in a position to resolve it. Because it is an

21    emergency motion and involves depositions that are scheduled

22    this week, next week, the week after, the plaintiffs would

23    like to go forward with it. It's docket entry 1015.

24          THE COURT: All right. I have it before me.

25          When was opposition filed?


117

1          MR. SCHAU: September 20th, Your Honor.

2          THE COURT: Okay. Docket entry 1062. All

3    right. I will hear you.

4          MR. SOBOL: Thank you, Your Honor.

5          Just to make sure the record is clear, so the

6    motion is 1015. And there is a memo of law regarding it at

144

7    1016 and a declaration of my partner Mr. Matt, 1017.

8         The relief that we seek is --

9         THE COURT:  I am not familiar, okay.  These

10   papers I have not read.

11        MR. SOBOL:  You have not read.  Okay.

12        The motion seeks protection to limit the amount of

13   third party depositions that can be taken each day and

14   during a week and the amount of notice that needs to be

15   given.

16        The specific relief is that the Court enter an

17   order saying that no more than five third party -- I think

18   it should be nonparty.  They're not parties, not third

19   parties.

20        No more than five nonparty depositions can occur in

21   a single week and that no more than two nonparty depositions

22   occur in any one day.

23        And, three, that the Court enforce the 21-day

24   notice requirement for depositions as is set forth in

25   CMR 10.

118

1       Now, the basis for the motion arises out of

2   essentially the following background.

3       The defendants, as I understand it, have served

4   approximately 150 subpoenas to nonparties in this case.

5   Those nonparties include unnamed class members, wholesalers,

6   pharmacies, multiple different kinds of entities.

7       With respect to depositions -- excuse me -- on

8   absent class members, meaning health plans, that kind of

9   thing, our numbers -- but we're not even sure exactly how

10   many -- about 94 deposition subpoenas have been served on

11   unnamed class members.

12       Now, many of these deposition subpoenas were served

13   months ago but have not been pressed until recently.  And as

14   we understand it, and my partner who has been in charge for

15   most of these efforts has set these forth in his

16   declaration, has indicated that there are as many as seven

17   depositions scheduled in a week or something like that.

18   Sometimes more than even two in a day, though I think that's

19   occurred more recently.

20       And that the defendants appear to articulate a need

21   that they need to undertake all of these nonparty

22   depositions before the time that they filed their opposition

23   to the motion for class certification.

24        Now, our position on this is essentially the

25   following:


119

1        This court -- it is us one thing to allow robust

2   discovery obviously by a defendant or a group of defendants.

3   But here the number of nonparty subpoenas that these

4   defendants have served shows no conscience whatsoever about

5   how many non-litigants to this litigation they will have to

6   serve with subpoenas in order to obtain what they have to

7   acknowledge is going to be completely cumulative evidence at

8   some point.

9        Now, it is not just these depositions, of course,

10   that are available for the defendants between now and the

11   time the class certification opposition is due.

12        What we have -- we have proffered no restriction

13   with respect to depositions of the parties in the case.  The

14   defendants have already scheduled four deposition days with

15   two experts in the case as well that they will get the

16   opportunity to do.  You have already heard, you know, other

17   discovery matters and the information that they would have.

18        And so the notion here essentially is to put some

147

19    kind of limit -- and we are not even asking for a total

20    limit, you know.  What we are simply saying is asking to

21    marshal things through, that there has to be some kind of

22    regard to the fact that people have to have an idea about

23    what depositions are going to occur sufficiently in advance.

24    People would ask how many would occur in a day and how many

25    in a week, that kind of thing.


120


1         Now, we do have a team of people, it's not as if we

2    have just one person handling it.  My partner has

3    administrative responsibility but we have designated five

4    lawyers to help defend depositions or work with absent class

5    members.

6         They're entitled to be educated about the case

7    beforehand.  They're entitled to have their own counsel

8    beforehand.  And they're entitled to be able to schedule, to

9    have an idea about when these things need to be undertaken.

10        Now, it could be under our proposed limits -- if

11   they're even called "limits" because they're really pretty

12   broad -- that between now and the time the class


148

13    certification opposition is due --

14           THE COURT:  That date being?

15           MR. SOBOL:  I think it's October 28th.

16           MS. HARRIS:  25th.

17           MR. SOBOL:  25th, that there could be about

18    three or four weeks of depositions of nonparties.  And under

19    our "limits" they would have about fifteen or twenty

20    depositions under their belt because if they did the maximum

21    of five per week.

22           Now, in addition to that, of course, they'd also be

23    able to take the depositions of our expert and the

24    depositions of the plaintiffs as well.

25           THE COURT:  Well, five a week, I mean, are


                              121


1     they complicated depositions?  Sometimes depositions, you

2     can do two in a day.

3            MR. SOBOL:  Well, we've also suggested doing

4     two in a day as well.  But --

5            THE COURT:  But that would be ten a week.

6            MR. SOBOL:  Right.  I mean, at some point, you

7     know, it becomes almost a mechanistic thing, at least from

                              149

8    the defendants' point of view.  They have a series of

9    questions they want to ask about how it is that they have

10   reimbursed, they've spent the money on drugs or what they

11   did or didn't meet (ph.).  That's what they're trying to do.

12        It's not as if, in other words, that there is going

13   to be a difference if they took frankly, you know, eight of

14   these depositions or eighty of these depositions.  They're

15   going to have certain points that they think are ultimately

16   different.

17        It really is, when all is said and done, because

18   they have the power of numbers to be able to do this and to

19   be able to essentially go after a huge number of health

20   plans in the case, they're going to be able to do it,

21   they're essentially trying to pad the argument they're going

22   to make, putting a very significant burden on our time.

23        And each of the specific limits that we have

24   outlined are, you know, intended to, you know, be

25   reasonable.  Again, so five depositions, you know, in a


122


1    week, no more than two in a day helps marshal resources.


150

2          And then the notice requirement is something that

3     Judge Saris had in her order about 21 days ahead of time.

4     It's not just for lawyers to be able to fiddle with their

5     schedule, that kind of thing, but it's also to be able to

6     provide people a reasonable time to educate themselves

7     regarding the issues in the case.  Because the defendants'

8     effort obviously is to get certification denied, that would

9     affect the material rights of these deponents, even though

10    they're nonparties.

11         So for those reasons we think that -- we feel that

12    some reasonable restraints on the fact that such a huge

13    number of subpoenas have been sent out without, again, there

14    is no real careful effort to try to say, well, here are

15    really the ten we need or the fifteen that we need.

16         THE COURT:  All right.  Why shouldn't I allow

17    this motion.

18         MR. SCHAU:  Your Honor, my name is Andrew D.

19    Schau.  I represent the Johnson & Johnson defendants.

20         And because we weren't originally scheduled, I

21    didn't enter an appearance before so I apologize for that.

22         Your Honor, it is certainly true that we are taking

23    a lot of discovery --

24         THE COURT:  You have an appearance in now I

151

25    take it?


123


1            MR. SCHAU:  I believe that was my intention.

2    Andy Schau, S-C-H-A-U --

3            THE COURT:  We have a form that you have to

4    fill out.

5            MR. SCHAU:  I will take care of that.  I'm

6    sorry.

7        It is certainly true that we are taking a lot of

8    discovery.  And it is absolutely essential that we take that

9    discovery.  And it is absolutely false that we are taking

10    more than we need.

11            THE COURT:  How many do you need to do between

12    now and the 30th of October?

13            MR. SCHAU:  Well, I can assure you that we are

14    not going to be able to get all that we want in.

15            THE COURT:  Okay.  Let's compromise on a

16    reasonable number here now.

17            MR. SCHAU:  Your Honor, it seems to me that if

18    we could take ten a week, that would include some days when

19    we double up, it might even include some days when we have

152

20   to triple up, because these things are being set at the

21   behest of the third party --

22          THE COURT:  I mean, are they short

23   depositions?

24          MR. SCHAU:  They sometimes last a day.  They

25   sometimes last considerably less than a day.


124

1          The problem, Your Honor, if I could give you a

2    little bit of history here, is we began the process of

3    subpoenaing third parties last October.  As soon as we did

4    so, the plaintiffs wrote a letter to the recipients of our

5    subpoenas saying don't respond.  We plan to make a motion to

6    protect you from any discovery because you're absent class

7    members.

8          They then made a motion in December before Judge

9    Saris.  She didn't decide it until March of 2004 in which

10   case she denied that motion in its entirety and allowed us

11   to go forward.

12          So for four months we pooled arguments.  Not only

13   could we not get documents from them because they wrote to

153

14    these parties and said don't produce them, but we couldn't

15    even begin the process of trying to get those documents

16    until Judge Saris ruled.  So they put us in a huge hole.

17        We now have tried to get documents from third

18    parties, large health plans, people they say are part of

19    their class, people they say are injured.

20        And let's keep in mind the scope of this case, Your

21    Honor.  There are dozens of companies who have been sued on

22    hundreds of drugs involving allegedly millions of victims.

23    And they're claiming billions and billions in damages.

24        So I make no apology for the effort we are

25    undertaking to try to defend ourselves in this case.


125


1        But I do blame plaintiffs for that four-month

2    delay.  And unfortunately Judge Saris set a schedule which

3    is very, very tough on five of us, including the Johnson &

4    Johnson entities.  Those track one or fast track defendants

5    have to respond to a class certification motion on

6    October 25th, which if granted will make this case

7    exponentially larger than it would otherwise be.

8        We are willing to work with the plaintiffs and have

154

9    worked very hard with the plaintiffs to coordinate this.  We

10   exchanged with them each week, and sometimes more often

11   that, a list of the depositions that are coming up.  And,

12   Your Honor, they have twenty law firms dedicated to this

13   case.

14        They have decided by themselves to put a much

15   smaller team of lawyers into the defense of this discovery.

16   And when they made this particular motion for protective

17   order, unlike every other motion they filed, they only

18   listed five counsel as being part of representing the

19   plaintiffs' class.  They normally list all twenty.  I think

20   that was intentional.

21        We have a lot to do.  We are working very hard to

22   make it possible and feasible for them to attend every

23   deposition.  Sometimes they have attended by telephone.

24   Sometimes they have come in person.  But this is a --

25             THE COURT:  Where are these depositions being


                          126


1    conducted?

2             MR. SCHAU:  They are being conducted at

                          155

3   whatever location of business the third party is at.  We are

4   scheduling them at the convenience of the third parties.

5   Not our own and not the plaintiffs.

6          But the plaintiffs' firms reside all over the

7   country.  And they have, you know, so some trips are shorter

8   than others.  But we are all undergoing the burden of taking

9   these depositions where the third parties are located.

10          THE COURT:  So tell me your plan.

11          MR. SCHAU:  Your Honor, you're asking me to

12   unilaterally limit the amount of discovery we can take.  And

13   I understand that that's what you're asking.

14          THE COURT:  I am.

15          MR. SCHAU:  That said --

16          THE COURT:  Bare bones.

17          MR. SCHAU:  It seems to me that ten a week

18   between now and October 25th is not unreasonable.  And we

19   will do our best, as we have in the past, to continue to

20   coordinate and provide ample information in advance to the

21   plaintiffs of when those depositions are and where they will

22   take place.

23          THE COURT:  And you have no objection to the

24   opposing side appearing by telephone?

25          MR. SCHAU:  Absolutely none.

156

127

1          THE COURT:  That makes it easier.

2          MR. SOBOL:  Well, it makes it -- so far what

3     has occurred, of course, is sometimes it might be necessary

4     because you're only given several days' notice and people

5     can't get there is part of the problem.

6          I will say this.  I will make a countersuggestion,

7     okay, which I think is reasonable.  But as Your Honor can

8     tell, the defendants have essentially just now conceded that

9     this has been an issue that they have been able to go

10    full-bore on since last March.

11         And having waited the spring and waited the summer,

12    and now that we're into the fall, saying we have to do all

13    this all at once is sort of suspect as to whether or not

14    they really need this ten that they say.  Because if they

15    really needed it, it's something that would have been done

16    back in March and April and May, June, July and all the rest

17    of that.  So you don't know that they really need it.

18         Now, I think that there are, again, there are three

19    issues that are out there.  There is how many in the week,

20    how many in the day and how much notice do we get because

157

21   they can mark up a deposition at the convenience of the

22   deponent and themselves and then we're just told to be

23   there.

24          THE COURT:  Okay.  Let's talk about notice.

25          MR. SOBOL:  Judge Saris has issued an order


128


1    saying 21 days.  If they have shown good cause why that CMO

2    should not be changed --

3          THE COURT:  I mean, that 21 days obviously

4    creates a problem at this point.

5          MR. SCHAU:  Sure.

6          The other answer to that, Your Honor, is that the

7    21 day rule applies to, you know, we've given them more than

8    21 days notice of all of these depositions.  It's just then

9    you have to actually schedule it.  So they know what --

10          THE COURT:  Okay.  Well, we are down to the

11   wire now.  What can you live with?

12          MR. SOBOL:  Okay.  Ten is way too many for our

13   firm to be able to deal with.  If it's something like six a

14   week and we were doing two in a day, we need at least a week

15    and a half notice because, again, we have to coordinate with

16    these people.

17         It's not a matter of getting people on planes.

18    It's a matter of speaking to their counsel, making sure that

19    they have counsel and making sure that they know what the

20    consequences are of their testimony.

21         THE COURT:  Ten a week, seven days' notice.

22         MR. SCHAU:  Your Honor, one clarifying

23    question.  Does that include the depositions that were

24    scheduled for this week, which would then have to be put

25    off?  We would essentially lose a week.


                                   129

1         THE COURT:  How many are scheduled for this

2    week?

3         MR. SCHAU:  I'm not certain of this but I

4    believe it's in the neighborhood of five or six.

5         THE COURT:  I am going to let them go forward.

6    Let's make some progress here.

7         MR. SCHAU:  Thank you, Your Honor.

8         THE COURT:  All right.

9         Now, that leaves us with a hearing date for

                                   159

Exhibit G

**Jared R. Winnick**

| | |
|---|---|
| **From:** | Sean Matt [sean@hagens-berman.com] |
| **Sent:** | Monday, November 15, 2004 1:36 PM |
| **To:** | Jared R. Winnick; John Macoretta (E-mail) |
| **Cc:** | AAMANGI@PBWT.COM |
| **Subject:** | RE: Health Net: location change |
| **Importance:** | High |

Jared:

This is the first word that we have received that this deposition is confirmed (it was marked as not confirmed in your chart Friday).  Given that this comes on well less than the seven days' notice ordered by the Chief Magistrate Judge, plaintiffs must object to its tardy confirmation.  Please advise of the re-scheduled date when it is confirmed.

Thanks.

Sean.

-----Original Message-----
From: Jared R. Winnick [mailto:winnick@dpw.com]
Sent: Monday, November 15, 2004 10:31 AM
To: Sean Matt; John Macoretta (E-mail)
Cc: AAMANGI@PBWT.COM
Subject: Health Net: location change


FYI -- The Health Net deposition scheduled for November 18, 2004 will take place at:

Lewis Brisbois Bisgaard & Smith LLP
100 Wall Street, Suite 900
New York, NY 10005-3701
T: (212) 232-1300.

The deposition will start at 10 30 am.

1

# Exhibit H

**Jared R. Winnick**

| | |
|---|---|
| **From:** | John Macoretta [JMacoretta@srk-law.com] |
| **Sent:** | Thursday, February 10, 2005 10:00 AM |
| **To:** | winnick@dpw.com; sean@hagens-berman.com |
| **Cc:** | JSZucker@HHLAW.com |
| **Subject:** | Re: Schaller Anderson Deposition |

of course noticing a depo on the 16th, less than 7 days, is in violation of the court ordered depo protocol as well.   JOHN

John A. Macoretta
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

>>> "Jared R. Winnick" <winnick@dpw.com> 2/10/2005 9:54:00 AM >>>
I just wanted to ensure that you were aware of Schaller Anderson's continued deposition, which is scheduled for February 16, 2005.  My understanding is that a letter has been (or will shortly be) posted to Verilaw.

Best,
Jared