# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL No. 1456 <br> ) <br> ) <br> ) CIVIL ACTION: 01-CV-12257-PBS <br> ) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) <br> ) <br> ) Judge Patti B. Saris <br> ) |

## DECLARATION OF RONALD G. DOVE, JR. IN SUPPORT OF TRACK 1 DEFENDANTS' OPPOSITION TO PLAINTIFFS' PROPOSED ADDITION OF CLASS REPRESENTATIVES AND PROPOSED CONSOLIDATED ORDER RE: MOTION FOR CLASS CERTIFICATION

Ronald G. Dove, Jr., pursuant to 28 U.S.C. § 1746, declares as follows:

1.  I am an attorney with Covington & Burling, counsel for SmithKline Beecham Corporation dba GlaxoSmithKline ("GSK"), one of the defendants in this action. I make this declaration in support of Track 1 Defendants' Opposition to Plaintiffs' Proposed Addition of Class Representatives And Proposed Consolidated Order Re: Motion For Class Certification.

2.  Plaintiffs have failed to produce documents sufficient to show that the proposed class representatives have made payments based on AWP for physician-administered drugs ("PADs") manufactured by the Track 1 defendants. Set forth below are some of the deficiencies for each proposed Class 1, 2, and 3 representative.

## CLASS 1

### Leroy Townsend

3.  Mr. Townsend alleges that he was a Medicare recipient who made a 20% co-payment for the drug Zoladex. See TAMCC ¶ 14.

4.     Mr. Townsend had supplemental health insurance during the period 1991–present. See Townsend R. Tr. at 21–22.[1] Mr. Townsend has documents regarding his supplemental health insurance at his home. Id. at 35–38, 133–35.  However, Mr. Townsend did not produce any documents regarding the terms of his supplemental health insurance policy or documents reflecting payments made by his supplemental insurer.

5.     Defendants explicitly requested that plaintiffs produce additional documents, including documents regarding Mr. Townsend's supplemental health insurance.  See Letters from James J. Duffy to John A. Macoretta (Nov. 10 and Nov. 17, 2005) (Exhs. 1 & 2). Documents regarding the terms of Mr. Townsend's supplemental health insurance are necessary to determine whether Mr. Townsend was reimbursed for the alleged co-insurance payments he made for Zoladex.  Plaintiffs have indicated, however, that they will not produce such documents.  See Letter from John A. Macoretta to James J. Duffy (Nov. 21, 2005) (Exh. 3).

**Susan Aaronson**

6.     Ms. Aaronson alleges that she is a Medicare beneficiary who made payments for numerous drugs based on AWP.  See TAMCC ¶ 15.  Ms. Aaronson also indicates that she has supplemental insurance coverage through her church.  Id.

7.     Ms. Aaronson produced only minimal documentation regarding her supplemental health insurance coverage and nothing indicating the amount or basis of any payments Ms. Aaronson's supplemental insurer made for the drugs she was allegedly administered.

8.     Ms. Aaronson was unavailable for deposition; however, her husband, Rev. David Aaronson, was deposed on November 17, 2005.  Plaintiffs continued to produce documents

---

[1] All transcript pages cited in this Declaration are included as exhibits to the separately-filed Declaration of Kristi T. Prinzo.

regarding Ms. Aaronson's medical treatment after Rev. Aaronson's deposition and after the close of discovery for the newly proposed class representatives. <u>See</u> AARON 0046-152.

9.      The documents produced by plaintiffs reflect that the only drugs for which Medicare "may" have been billed are carboplatin and paclitaxel. <u>Id.</u> Both of these drugs, however, are generics. Plaintiffs have not produced documents that reflect which company manufactured the drugs allegedly administered to Ms. Aaronson. Without such documents, plaintiffs are unable to show that Ms. Aaronson took the brand version of these drugs manufactured by BMS.

10.     Ms. Aaronson also did not produce any documents that reflect payments for drugs manufactured by a Track 1 defendant based on AWP. Counsel for defendants explicitly requested that plaintiffs produce such documents. <u>See</u> Letter from E. Christofferson to TerriAnne Benedetto (Nov. 9, 2005) (Exh. 4).

**<u>David E. Clark</u>**

11.     Mr. Clark alleges that he is a Medicare beneficiary who made payments for numerous drugs based on AWP. <u>See</u> TAMCC ¶ 16. Mr. Clark also indicates that he has secondary health insurance through the Operating Engineers American Benefit Plan. <u>Id.</u>

12.     Mr. Clark did not produce any documents, however, regarding his supplemental health insurance.

13.     Mr. Clark also did not produce documents reflecting payments based on AWP made by him for medication manufactured by a Track 1 defendant.

14.     Defendants were unable to obtain testimonial evidence from Mr. Clark regarding these or other issues because he passed away before he was deposed, and plaintiffs took no steps

during the authorized discovery period to substitute his estate or provide anyone who could knowledgably testify about his claims.

**Robert Howe**

15.     Mr. Howe alleges that he is a Medicare beneficiary who made payments for several drugs based on AWP.  See TAMCC ¶ 17.  Mr. Howe also indicates that he has supplemental insurance through United Health Care of Utah.  Id.  Mr. Howe has documents regarding his supplemental health insurance at his home.  See Howe Tr. at 70–73.

16.     Mr. Howe did not produce any documents, however, regarding the terms of his supplemental health insurance.

17.     Although Mr. Howe did produce some of the Medicare Explanation of Benefits ("EOBs") that he possesses and some canceled checks, the canceled checks do not correspond to the EOBs produced in a manner that reflects how much or on what basis Mr. Howe paid for certain medication.

18.     Mr. Howe did not produce any documents that reflect he was administered the drug Kytril during the time period that the drug was manufactured by GSK.

19.     Counsel for defendants requested that plaintiffs produce additional documents for Mr. Howe.  See Letter from Carlos M. Pelayo to TerriAnne Benedetto (Nov. 8, 2005) (Exh. 5); Letter from Carlos M. Pelayo to Kent M. Williams (Nov. 18, 2005) (Exh. 6).  Plaintiffs did not produce documents that reflect payments by Mr. Howe for PADs based on AWP.  Plaintiffs have indicated that they are still trying to obtain additional documents for Mr. Howe.  See Letter from TerriAnne Benedetto to Carlos M. Pelayo (Nov. 9, 2005) (Exh. 7).

**James Shepley**

20.     Mr. Shepley alleges that he is a Medicare beneficiary who made payments based

4

on AWP for several drugs.  See TAMCC ¶ 18.  Mr. Shepley also indicates that he has secondary

health insurance through United American.  Id.

      21.     Although Mr. Shepley produced a few documents regarding his supplemental

health insurance, these documents do not reflect payments based on AWP.  See SHEPLEY 0028-

0036.  Rather, these documents suggest that Mr. Shepley made a flat co-payment.  Id.

      22.     Defendants requested that plaintiffs produce documents reflecting payments made

by Mr. Shepley for PADs based on AWP.  See Letter from Trisha Lawson to TerriAnne

Benedetto (Nov. 17, 2005) (Exh. 8).  Plaintiffs have not produced additional documents for Mr.

Shepley, but indicated that they are still trying to obtain additional documents from Mr.

Shepley's medical providers and Medicare.  See Letter from Donald E. Haviland, Jr. to Trisha

Lawson (Nov. 21, 2005) (Exh. 9).

**Estate of Patricia K. Young**

      23.     Mr. Larry Young, Ms. Young's husband, alleges that she was a Medicare

beneficiary who made percentage co-payments for numerous drugs based on AWP.  See

TAMCC ¶ 19.  Mr. Young also alleges that his wife had supplemental insurance through United

Healthcare that paid a percentage of Ms. Young's co-payment.  Id.

      24.     Although Mr. Young testified that he and his wife kept documents that describe

the terms of the medical benefits that she received, including her supplemental insurance, see

Young Dep. at 32-34, Mr. Young produced no documents that describe the terms of her medical

benefits.

      25.     Plaintiffs also did not produce any documents reflecting payments for PADs

manufactured by BMS.

**Estate of William Newell**

26.     Plaintiffs have withdrawn the Estate of William Newell as a class representative. See Letter from Donald Haviland, Jr. to Eric Christofferson (Nov. 29, 2005) (Exh. 10).

## CLASS 2

**Pirelli Tire**

27.     Pirelli Tire alleges that it has made payments for several drugs based on AWP. See TAMCC ¶ 24.

28.     The records produced by Pirelli Tire do not indicate that it paid Medicare co-payments based on AWP for drugs manufactured by each of the Track 1 defendants.  None of the records produced indicate that Pirelli Tire made any payment for any drug at issue in this litigation manufactured by Schering or GSK.  And, no documents indicate whether any drug purportedly prescribed and administered to the funds' beneficiaries was actually manufactured by any of the defendants in this case.

29.     Counsel for defendants requested that plaintiffs produce additional documents for Pirelli Tire.  See Letters from Eric Christofferson to Jennifer Fountain Connolly (Nov. 9 and Nov. 10, 2005) (Exhs. 11 & 12 ).  Plaintiffs did not produce additional documents.

30.     In addition, despite repeated requests, plaintiffs did not make Pirelli Tire available for deposition within the discovery period allotted by the Court.  See Letter from Eric Christofferson to Jennifer Fountain Connolly (Nov. 8, 2005) (Exh. 13).  Rather, on the day of the discovery deadline, plaintiffs offered to make a representative for Pirelli Tire available for deposition the day before Thanksgiving or December 1, 2005 (i.e., the same day defendants' response to plaintiffs' proposed class certification order is due).

**Sheet Metal Workers**

31.     Sheet Metal Workers alleges that it has made payments for several drugs based on

AWP.  See TAMCC ¶ 25a.

32.     The records produced by Sheet Metal Workers do not indicate that it paid

Medicare co-payments based on AWP for drugs manufactured by each of the Track 1

defendants.  Few records indicate that Sheet Metal Workers made any actual payment for the

drugs and services purportedly offered to its beneficiaries.  No documents indicate whether any

drug purportedly prescribed and administered to the funds' beneficiaries was actually

manufactured by any of the defendants in this case.

33.     Counsel for defendants requested that plaintiffs produce additional documents for

Sheet Metal Workers.  See Letters from Eric Christofferson to Jennifer Fountain Connolly (Nov.

9 and Nov. 10, 2005) (Exhs. 11 & 12).  Plaintiffs did not produce additional documents.

**CLASS 3**

**UFCW Fund Beneficiaries**

34.     Plaintiffs identified 20 individuals in the TAMCC who are beneficiaries of the

UFCW Fund.  See TAMCC ¶¶ 32–54.  Plaintiffs proposed these individuals as Class 3

representatives and as "alternate" Class 1 representatives.

35.     In letters dated November 3 and 15, 2005 (Exhs. 14 & 15) counsel for BMS on

behalf of all Track 1 defendants itemized several deficiencies in the document productions of the

newly-proposed Class 3 representatives who were members of the UFCW.  In essence, plaintiffs'

counsel have largely limited "discovery" to counsel's own prepared-for-litigation spreadsheets

containing select information about these individuals' responsibility for a co-payment on "J-

Code" drugs not specified by manufacturer, rather than the underlying claims and billing

7

documents necessary to evaluate the typicality and adequacy of the individuals as proposed class representatives.

36.     In addition to these general deficiencies that are applicable to the proposed class representatives who are UFCW beneficiaries, defendants also identified specific deficiencies for each individual.

**Estate of William Barnewolt**

37.     Ms. Bonnie Barnewolt, representing the estate of her late husband William Barnewolt, alleges that Mr. Barnewolt paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 32.

38.     Plaintiffs failed, however, to produce documents that reflect Mr. Barnewolt's payment for such medication or the basis for any payments that may have been made.

39.     In addition, defendants attempted to depose Ms. Barnewolt during the discovery period prescribed by the Court.  See Letter from Niraj Parekh to Jennifer Fountain Connolly (Nov. 18, 2005) (Exh. 16).  However, plaintiffs did not make Ms. Barnewolt available during that time period.

40.     Although plaintiffs produced additional documents for Mr. Barnewolt on November 29, 2005 (after the allotted discovery period ended), these documents do not cure the foregoing deficiencies.

41.     The documents produced by plaintiffs also do not reflect which company manufactured the generic drugs allegedly administered to Mr. Barnewolt.

**Cheryl Barreca**

42.     Ms. Barreca alleges that she paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 33.

43.     Ms. Barreca did not produce documents that reflect her paying out-of-pocket amounts for the PADs listed in paragraph 33 of the TAMCC.

44.     In fact, Ms. Barreca did not produce documents that even reflect her being administered those drugs.

45.     Ms. Barreca testified that she has documents regarding the terms of her medical insurance, but these documents were not produced.  See Barreca Tr. at 14–16.

46.     Ms. Barreca authorized her attorneys to obtain records from her bank that allegedly reflect payments for the PADs listed in paragraph 33 of the TAMCC.  Id. at 120.  No such documents were produced to defendants, however.

**Cynthia Byrski**

47.     Plaintiffs have withdrawn Ms. Byrski as a proposed class representative.  See Letter from Jennifer Fountain Connolly to H.B. Roback (Nov. 2, 2005) (Exh. 17).

**Mary Cauble**

48.     Ms. Cauble alleges that she paid out-of-pocket amounts for several drugs based on AWP.  See TAMCC ¶ 35.

49.     Ms. Cauble did not produce any documents that reflect her being administered the medication listed in paragraph 35 of the TAMCC.

50.     Ms. Cauble also failed to produce documents reflecting any payments for these drugs or any documents reflecting that such payments would have been based on AWP.

51.     Plaintiffs also failed to make Ms. Cauble available for deposition during the discovery period prescribed by the Court, even though defendants offered to take the deposition by telephone.  See Letter from Lyndon Tretter to Jennifer Fountain Connolly (Nov. 15, 2005) (Exh. 15).

**Anna Choice**

52.     Ms. Choice alleges that she paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 36.

53.     Ms. Choice, however, did not produce documents sufficient to show that she made payments based on AWP for the drugs listed in paragraph 36 of the TAMCC.

54.     In fact, Ms. Choice testified that several of her medical bills were sent "to collections" as a result of nonpayment.  See Choice Tr. at 68–69.

55.     Ms. Choice further testified that, although she has begun paying the overdue bills, she is not certain that such payments were for medication or were instead for medical services that she received.  Id. at 42, 65–66, 68–70.

56.     Ms. Choice also did not produce documents that reflect her being administered all the drugs listed in paragraph 36 of the TAMCC.  See Choice Tr. at 56–57.

57.     Defendants requested additional documents from Ms. Choice.  See Letter from H.B. Roback to Elizabeth Fegan (Nov. 16, 2005) (Exh. 18).  However, no additional documents for Ms. Choice have been produced.  See Letter from Jennifer Fountain Connolly to H.B. Roback (Nov. 18, 2005) (Exh. 19).

**Joyce Dison**

58.     Ms. Dison alleges that she paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 37.

59.     Although Ms. Dison did produce some documents regarding her allegations in paragraph 37 of the TAMCC, these documents do not demonstrate that she paid for drugs based on AWP.

60.     The documents Ms. Dison produced also fail to identify the manufacturers of the multi-source drugs she actually took.

61.     Ms. Dison testified that she has additional documents relevant to this action, but did not produce them to defendants.  See Dison Tr. at 51.

**Tracy Garcia**

62.     Ms. Garcia alleges that she has made payments for several drugs based on AWP. See TAMCC ¶ 38.

63.     The documents produced by plaintiffs relating to Ms. Garcia do not indicate how much and on what basis Ms. Garcia paid for the drugs she was allegedly administered.  The documents also do not indicate which manufacturer's version of the drugs Ms. Garcia was administered.  Although Ms. Garcia produced a few additional documents the morning of her deposition (November 15, 2005) and one additional document after the close of discovery, these additional documents did not cure these deficiencies.  See GARCIA 0063-93.

64.     Counsel for defendants explicitly requested that plaintiffs produce such documents.  See Letter from E. Christofferson to J. Fountain Connolly (Nov. 9, 2005) (Exh. 11).

**Donna Kendall**

65.     Ms. Kendall alleges that she paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 39.

66.     Ms. Kendall has failed, however, to produce documents sufficient to show that she made payments for the drugs listed in paragraph 39 of the TAMCC based on AWP.

67.     Although she does not mention having supplemental insurance in the TAMCC, Ms. Kendall testified that she has additional insurance coverage through Mutual of Omaha.  See Kendall Tr. at 21.  Ms. Kendall described this supplemental insurance as a "cancer policy."  Id.

11

at 21–26.  Ms. Kendall did not produce any documents regarding this supplemental insurance, even though she testified that she has documents regarding the policy at her home.  Id. at 25–26. Defendants explicitly requested that such documents be produced.  Id. at 26.

68.     Ms. Kendall did produce a chart that purported to reflect payments for her medical treatment.  See KENDALL 0034–0038.  However, this chart does not reflect payments for specific medication.  See Kendall Tr. at 81.  The chart also does not reflect charges for medical treatment being based on AWP.  Id. at 82.

69.     In addition, this chart was created by Ms. Kendall's husband.  Id. at 106.  Ms. Kendall did not produce the underlying documents.

70.     Ms. Kendall also did not produce documents that reflect she was even administered all the drugs listed in paragraph 39 of the TAMCC.  Id. at 62–72.

**Sandra Leef**

71.     Ms. Leef alleges that she paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 40.

72.     Although Ms. Leef produced some documents regarding her claims, these documents do not reflect that she made payments based on AWP for the drugs listed in paragraph 40 of the TAMCC.

73.     The documents produced by Ms. Leef also do not identify the manufacturers of the multi-source drugs that were actually administered to her.

**Gerald Miller**

74.     Mr. Miller alleges that he paid out-of-pocket amounts based on AWP for several drugs.  See TAMCC ¶ 41.

75.     Mr. Miller failed to produce documents, however, that reflect his payment for the

drugs listed in paragraph 41 of the TAMCC or that any such alleged payments were based on AWP.

76.     Mr. Miller also did not produce documents that identify the manufacturers of the multi-source drugs that he was actually administered.

77.     Defendants were unable to obtain testimonial evidence from Mr. Miller because he was too ill to appear for a deposition.

**Joseph Miller**

78.     Mr. Miller alleges that he paid out-of-pocket amounts based on AWP for several drugs. See TAMCC ¶ 42.

79.     Mr. Miller failed, however, to produce any documents that reflect which drugs were administered to him, payments for the medication, or the basis for any such payments.

80.     Plaintiffs represented that they have tried to obtain medical and billing records for Mr. Miller. Yet, no such documents have been produced. See Letter from H.B. Roback to Elizabeth Fegan (Nov. 15, 2005) (Exh. 20).

**Constance Nelson**

81.     Ms. Nelson alleges that she paid out-of-pocket amounts based on AWP for several drugs. See TAMCC ¶ 43.

82.     Ms. Nelson did not produce documents, however, sufficient to show that she made payments for the drugs listed in paragraph 43 of the TAMCC based on AWP.

83.     In fact, Ms. Nelson did not produce documents that reflect she was even administered all of the drugs listed in paragraph 43 of the TAMCC. See Nelson Tr. at 44.

84.     The documents produced by Ms. Nelson also do not indicate which company manufactured the generic drugs that were apparently administered to Ms. Nelson. Id. at 46–47.

**Andrea Palenica**

85.     Ms. Palenica alleges that she paid out-of-pocket amounts based on AWP for several drugs. See TAMCC ¶ 44.

86.     Ms. Palenica, however, did not produce documents that reflect she made payments for the drugs listed in paragraph 44 of the TAMCC based on AWP.

87.     In fact, Ms. Palenica testified that she has numerous documents, including canceled checks and bank statements, at her home regarding the medical treatment that she received. See Palenica Tr. at 9–11.  These documents, however, have not been produced to defendants.

88.     Defendants explicitly requested that plaintiffs produce additional documents for Ms. Palenica. See Letter from H.B. Roback to Elizabeth Fegan (Nov. 7, 2005) (Exh. 21). Plaintiffs produced one additional document. See Letter from Jennifer Fountain Connolly to H.B. Roback (Nov. 14, 2005) (Exh. 22).  The document is an affidavit signed by Ms. Palenica that lists different medications on it than a previously produced affidavit.

**Regina Shoemaker**

89.     Ms. Shoemaker alleges that she paid out-of-pocket amounts based on AWP for several drugs. See TAMCC ¶ 45.

90.     Ms. Shoemaker did not produce any documents that reflect her being administered the medication listed in paragraph 45 of the TAMCC.

91.     Ms. Shoemaker also failed to produce documents reflecting any payments for those drugs or any documents reflecting that such payments would have been based on AWP.

92.     Plaintiffs also failed to make Ms. Shoemaker available for deposition during the discovery period prescribed by the Court, even though defendants offered to take her deposition

by telephone.  See Letter from Lyndon Tretter to Jeffifer Fountain Connolly (Nov. 15, 2005) (Exh. 15).

**Scott Tell**

93.     Mr. Tell alleges that he made out-of-pocket payments based on AWP for several drugs administered to his late wife, Rhonda Tell.  See TAMCC ¶ 46.

94.     Mr. Tell failed, however, to produce any documents that reflect which drugs were administered to his wife, payments for the medication, or the basis for any such payments.

95.     Plaintiffs represented that they have tried to obtain medical and billing records for Ms. Tell.  Yet, no such documents have been produced.  See Letter from H.B. Roback to Elizabeth Fegan (Nov. 15, 2005) (Exh. 20).

**Kenneth Vanderwal**

96.     Mr. Vanderwal alleges that he made out-of-pocket payments based on AWP for the drug Remicade.  See TAMCC ¶ 47.

97.     The documents Mr. Vanderwal produced, however, do not demonstrate that the amounts he paid for Remicade were calculated with reference to AWP.

**Pauline Vernick**

98.     Ms. Vernick alleges that she made out-of-pocket payments based on AWP for several drugs.  See TAMCC ¶ 48.

99.     Although Ms. Vernick did produce some documents regarding her claims, these documents do not demonstrate that Ms. Vernick made any payments for the drugs listed in paragraph 48 of the TAMCC based on AWP.

100.    The documents Ms. Vernick produced also do not identify the manufacturers of the multi-source drugs that she actually took.

101.    Ms. Vernick testified that she has additional documents, such as statements from her doctor's office, but those documents have not been produced.  See Vernick Tr. at 12.

**Mardolyn Vescovi**

102.    Plaintiffs have withdrawn Ms. Vescovi as a proposed class representative.  See Letter from Jennifer Fountain Connolly to Niraj Parekh (Nov. 16, 2005) (Exh. 23).

**Susan Wessels**

103.    Ms. Wessels alleges that she made out-of-pocket payments based on AWP for the drug Zoladex.  See TAMCC ¶ 50.

104.    Ms. Wessels failed, however, to produce documents proving that she made payments for Zoladex.  Rather, the payment records she produced reflect lump-sum amounts that may or may not relate to Zoladex.  See e.g., WESSELS 0010, 0012, 0014.

105.    In addition, defendants explicitly requested that plaintiffs produce documents concerning the terms of the preferred provider agreements between BCBS and Ms. Wessels' medical provider.  See Wessels Tr. at 77-78.  These documents are important because her medical provider's charges for Zoladex fluctuated over time (apparently depending upon the outcome of negotiations between her provider and BCBS).  See id. at 81-83; WESSELS 0039, 0052, 0057, and 0082.

**Kathleen Weaver-Zech**

106.    Plaintiffs have withdrawn Ms. Weaver-Zech as a proposed class representative.  See Letter from Niraj Parekh to Alan Hoffman (Nov. 11, 2005) (Exh. 24).

**Rebecca Hopkins**

107.    Ms. Hopkins alleges that she made out-of-pocket payments based on AWP for several drugs.  See TAMCC ¶ 52.

108.    Ms. Hopkins is not a UFCW beneficiary.  Id.

109.    Although Ms. Hopkins has produced some documents relevant to her claims, these documents do not establish whether any payments she made were based on AWP.

**George Baker Thomson**

110.    Mr. Thomson, who is not a UFCW beneficiary, alleges that he made out-of-pocket payments based on AWP for Zoladex and triporelin pamoate.  See TAMCC ¶ 53.

111.    Mr. Thomson alleges that he had private insurance coverage through Wellcare that required him to make percentage co-payments for the foregoing medication.  Id.

112.    Mr. Thomson did not produce documents reflecting the terms of his insurance coverage.  See THOMSON 0001-0008 (entire Thomson production).

113.    Mr. Thomson also did not produce documents demonstrating that he made out-of-pocket payments for Zoladex.

114.    Defendants were unable to obtain testimonial evidence from Mr. Thomson with respect to these and other issues because he was unavailable for deposition due to health problems.

115.    Defendants explicitly requested that plaintiffs produce proof of payment for Zoladex injections ostensibly prescribed and administered to Mr. Thomson, as well as documentation concerning the terms and conditions of Mr. Thomson's insurance coverage.  <u>See</u> Letter from James Duffy to TerriAnne Benedetto (Nov. 10, 2005) (Exh. 25).  Plaintiffs did not produce such documents.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Washington, D.C.
December 1, 2005

_____
Ronald G. Dove, Jr.

# EXHIBIT 1

# DAVIS POLK & WARDWELL

1300 I STREET. N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15. AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 4803

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

November 10, 2005

Re:   **In re Pharmaceutical Industry Average Wholesale Price Litigation
(MDL No. 1456), Leroy Townsend Deposition and Document
Production**

**Via E-mail and Electronic Service**

John A. Macoretta, Esq.
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Dear John:

I am writing to confirm the deposition of Leroy Townsend.  The
deposition will take place on November 15, 2005, commencing at 10:30 a.m.
(Eastern) at Donovan Reporting, 2315 Stanford Court, #301, Naples, Florida
34112.

In addition, I am writing concerning plaintiffs' document production for
Mr. Townsend.  To date, the documents produced for Mr. Townsend include
several cancelled checks and various Medicare Explanation of Benefits ("EOBs").

In plaintiffs' letter of October 26, 2005, you advised us that we would be
"shortly receiving additional pages from Dr. Greico which will show that Mr.
Townsend received Zolodex injections, that they were covered by Medicare, and
that Mr. Townsend paid the full 20% co-payment."  October 26, 2005 Letter from
Steve W. Berman to D. Scott Wise at 1.  To date, we have not received these
documents.  We ask that you provide these documents to us immediately, in
advance of the scheduled deposition on November 15 so that it will not be
necessary to continue the deposition on a subsequent date, causing an

John A. Macoretta, Esq.               2               November 10, 2005

inconvenience to all parties involved.

Sincerely,

James J. Duffy

cc:  All counsel of record via File & Serve

# EXHIBIT 2

# DAVIS POLK & WARDWELL

<table>
<tr><td>1300 I STREET, N.W.<br>WASHINGTON, D.C. 20005<br>━━━<br>1600 EL CAMINO REAL<br>MENLO PARK, CA 94025<br>━━━<br>99 GRESHAM STREET<br>LONDON EC2V 7NG<br>━━━<br>15, AVENUE MATIGNON<br>75008 PARIS</td><td>450 LEXINGTON AVENUE<br>NEW YORK, N.Y. 10017<br>212 450 4000<br>FAX 212 450 3600<br><br>WRITER'S DIRECT<br><br>212 450 4803</td><td>MESSETURM<br>60308 FRANKFURT AM MAIN<br>━━━<br>MARQUÉS DE LA ENSENADA, 2<br>28004 MADRID<br>━━━<br>1-6-1 ROPPONGI<br>MINATO-KU, TOKYO 106-6033<br>━━━<br>3A CHATER ROAD<br>HONG KONG</td></tr>
</table>

November 17, 2005

Re:     **In re Pharmaceutical Industry Average Wholesale Price Litigation
(MDL No. 1456), Leroy Townsend Document Production**

**Via E-mail and Electronic Service**

John A. Macoretta, Esq.
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Dear John:

I am writing to document and follow up on our requests for the production of additional documents by Leroy Townsend. As you know, these requests were initially communicated to you during the deposition of Mr. Townsend on November 15, 2005.

At his deposition, Mr. Townsend testified that, because he was instructed by counsel to search his personal files only for documents relating to payments for Zoladex®, he did not produce other documents from his files that are relevant to the issues in this litigation. Accordingly, we request that Mr. Townsend produce all documents in his possession relevant to the contention that he is a proper class representative in this action. In particular, Mr. Townsend testified that he possessed the following categories of documents in his files: (1) brochures or other documents describing the coverage of his Aetna and United Healthcare supplemental health insurance polices, (2) documents received from his former employers concerning his supplemental health insurance coverage, and (3) a list of payments made by Mr. Townsend for Zoladex® injections, which includes information on his supplemental health insurance carrier at the time of the injections.

John A. Macoretta, Esq.                    2                    November 17, 2005

      Such documents are clearly relevant to the issues in question in this litigation and should be produced.  Given the briefing schedule established by the Court, we request that you produce the documents described above immediately.


Sincerely,

James J. Duffy


cc:  All counsel of record via Lexis/Nexis® File & Serve

# EXHIBIT 3

**SRK** **SPECTOR ROSEMAN & KODROFF**

A PROFESSIONAL CORPORATION

1818 Market Street, Suite 2500, Philadelphia, Pennsylvania 19103 • (215) 496-0300 • Fax (215) 496-6611
www.srk-law.com • email: classaction@srk-law.com



Nov 21 2005
4:36PM

Direct E-Mail:
jmacoretta@srk-law.com

November 21, 2005

*Via Electronic Service*
James J. Duffy, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re:   In Re Pharmaceutical Industry Average Wholesale Price Litigation
      MDL 1456

Dear Jim:

This is in response to your letter of November 17, 2005, again requesting documents that were referenced in the deposition of Plaintiff Leroy Townsend.

Plaintiffs disagree with your analysis concerning the documents indicated at numbers (1) and (2) of your letter, relating to Mr. Townsend's supplemental insurance coverage, including coverage with Aetna or United Healthcare. Whether Mr. Townsend had any type of supplemental insurance, and what that insurance might have paid for, is simply irrelevant. Mr. Townsend has presented clear, uncontroverted evidence that he paid at least six of his Zolodex injections at prices based on AWP, as a Medicare Part B beneficiary. Thus Plaintiffs will not produce documents relating to any supplemental insurance coverage Mr. Townsend may have had.

Plaintiffs will produce Mr. Townsend's handwritten list of payments he made for Zolodex injections, item number 3 in your letter. We will forward a copy of that document to you as soon as we receive it from Mr. Townsend, which should be in the next few days.

As always, feel free to contact my office if you wish to discuss these matters further.

Sincerely,

John A. Macoretta

JAM/mac

# EXHIBIT 4



**ROPES & GRAY**

ROPES & GRAY LLP
ONE INTERNATIONAL PLACE    BOSTON, MA 02110-2624    617-951-7000    F 617-951-7050
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

7395327
Nov 9 2005
11:42AM

November 9, 2005

Eric P. Christofferson
(617) 951-7976
eric.christofferson@ropesgray.com

## BY FACSIMILE AND FIRST CLASS MAIL

TerriAnne Benedetto, Esq.
Kline & Specter
1525 Locust Street, Nineteenth Floor
Philadelphia, PA 19102

Re:  In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL 1456

Dear TerriAnne:

In advance of the deposition of Susan Aaronson next week, I bring to your attention deficiencies in Plaintiffs' document productions for Ms. Aaronson.

Defendants have already informed Plaintiffs of the general deficiencies in the production of documents through correspondence from Scott Wise of Davis Polk.[1]  With respect to Ms. Aaronson, the production made consists of a single spreadsheet, apparently from Ms. Aaronson's provider, showing certain charges incurred as a result of certain services provided to her.  *See* AARON 0001-27.  While some of the entries appear to refer to prescription drugs administered to Ms. Aaronson and the spreadsheet contains a column entitled "charge amount," there is no way to discern who paid what amount for those services and on what basis.  There is no document indicating that Medicare paid any amount for any of these charges, nor is there any document indicating that Ms. Aaronson is a Medicare beneficiary or even eligible for Medicare. There is simply no way to tell what Ms. Aaronson paid or on what basis, and these facts are critical to determining whether she is an adequate class representative for the proposed Medicare beneficiary class (Class 1).  Moreover, where an entry lists a generic or multi-source drug, there is no way to tell which manufacturer's version of the drug was used, and thus, whether Ms. Aaronson used a drug manufactured by Defendants.

As Defendants have explained previously, to comply with Judge Saris's August 16, 2005 Order, Plaintiffs must produce documentation demonstrating not only that chargers were incurred and charges were paid by the newly added class representatives, but that those charges were based on AWP.  Defendants are entitled to all necessary documentation to verify the adequacy of the proposed representatives, including at a minimum: copies of any and all of Ms. Aaronson's

---

[1] *See, e.g.,* Letter from Scott Wise to Steve Berman dated November 7, 2005.

9860577_1.DOC

ROPES & GRAY LLP

TerriAnne Benedetto, Esq.                    - 2 -                    November 9, 2005

supplemental insurance policies; complete and accurate copies of all relevant Explanations of Benefits ("EOBs") provided to Ms. Aaronson by Medicare and any of her supplemental insurers; copies of all relevant HCFA Forms 1500 for Ms. Aaronson's medical providers; copies of all fee schedules for Ms. Aaronson's relevant providers; and records of payment, such as cancelled checks or credit-card statements, showing amounts Ms. Aaronson paid for the prescription drugs at issue. In addition, with respect to generic and multi-source drugs, Plaintiffs must establish that the medications prescribed and administered to Ms. Aaronson were, in fact, manufactured by a Track 1 Defendant.

Plaintiffs have thus far failed to produce information for Ms. Aaronson required by the Court's August 16, 2005 Order. Additional information is critical to Defendants' ability to prepare adequately for the upcoming depositions. I look forward to hearing from you soon regarding the foregoing deficiencies.

Very truly yours,

Eric P. Christofferson

cc:    Steven A. Kaufman
       All Counsel of Record (via Lexis File & Serve)

9860577_1.DOC