**U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES**

**Centers for Medicare & Medicaid Services**
7500 Security Boulevard
Baltimore, Maryland 21244-1850

Official Business
Penalty for Private Use, $300

CMS Pub. No. 02110
Revised July 2005



To get a free copy of the "2005 Choosing A Medigap
Policy: A Guide to Health Insurance for People With
Medicare" in Spanish, on Audiotape (English), in Braille,
or in large print English, call 1-800-MEDICARE
(1-800-633-4227). TTY users should call 1-877-486-2048.

¿Necesita usted una copia de esta guía en Español?
Llame gratis al 1-800-MEDICARE (1-800-633-4227).
Los usuarios de TTY deberán llamar al 1-877-486-2048.

# EXHIBIT 5

**FILED UNDER SEAL**

# EXHIBIT 6

 **SPECTOR ROSEMAN & KODROFF**

A PROFESSIONAL CORPORATION

1818 Market Street, Suite 2500, Philadelphia, Pennsylvania 19103 • (215) 496-0300 • Fax (215) 496-6611
www.srk-law.com • email: classaction@srk-law.com



Nov 21 2005
4:36PM

Direct E-Mail:
jmacoretta@srk-law.com

November 21, 2005

*Via Electronic Service*
James J. Duffy, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Re:    In Re Pharmaceutical Industry Average Wholesale Price Litigation
       MDL 1456

Dear Jim:

This is in response to your letter of November 17, 2005, again requesting documents that
were referenced in the deposition of Plaintiff Leroy Townsend.

Plaintiffs disagree with your analysis concerning the documents indicated at numbers (1)
and (2) of your letter, relating to Mr. Townsend's supplemental insurance coverage, including
coverage with Aetna or United Healthcare. Whether Mr. Townsend had any type of
supplemental insurance, and what that insurance might have paid for, is simply irrelevant. Mr.
Townsend has presented clear, uncontroverted evidence that he paid at least six of his Zolodex
injections at prices based on AWP, as a Medicare Part B beneficiary. Thus Plaintiffs will not
produce documents relating to any supplemental insurance coverage Mr. Townsend may have
had.

Plaintiffs will produce Mr. Townsend's handwritten list of payments he made for
Zolodex injections, item number 3 in your letter. We will forward a copy of that document to
you as soon as we receive it from Mr. Townsend, which should be in the next few days.

As always, feel free to contact my office if you wish to discuss these matters further.

Sincerely,

John A. Macoretta

JAM/mac

# **EXHIBIT 7**




Oct 26 2005
8:44PM

STEVE W. BERMAN
DIRECT • (206) 224-9320
STEVE@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

October 26, 2005

*Via E-Mail*

Mr. D. Scott Wise
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

      Re:   AWP

Dear Scott:

We write in response to your October 25 e-mail in which you purport to identify "serious deficiencies" with plaintiffs' supplemental class representative production.

Our response comes within 24 hours of your request so that we can keep the schedule intact. For the reasons set forth below, no such deficiencies exist. In the future, please check your facts before sending such a letter.

## I.    Proposed Class 1 Representatives (Medicare Part B Beneficiaries)

### A.    Leroy Townsend (TAMCC ¶ 14)

As explained in an October 25 e-mail from John Macoretta, plaintiffs have produced nearly 500 pages of documents, TOWN 0001-499, which relate to Mr. Townsend's use of Zoladex. That production included Medicare billing statements and cancelled checks from Mr. Townsend to his doctor (Emil Greico) which represent Part B co-payments for his Zoladex injections. You have also been advised that you will be shortly receiving additional pages from Dr. Greico which will show that Mr. Townsend received Zolodex injections, that they were covered by Medicare, and that Mr. Townsend paid the full 20% co-payment. There is sufficient documentation to satisfy the Court's limited areas of concern.

ATTORNEYS AT LAW           SEATTLE   LOS ANGELES   CAMBRIDGE   PHOEN

T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE  SUITE 2900  SEATTLE, WASHINGTON 98101
www.hagens-berman.com

Mr. D. Scott Wise
October 26, 2005
Page 2

### B.     Susan Aaronson (TAMCC ¶ 15)

Plaintiffs have voluntarily produced billing records from the Presbyterian Hospital
(AARON 0001-27) demonstrating Mrs. Aaronson was prescribed and administered all of
the prescription medications described in the TAMCC. These records clearly show the
dates the medications were administered and the amounts she was charged for these
medications.

As set forth in the TAMCC, Mrs. Aaronson is a Medicare beneficiary with
supplemental insurance coverage through her church's Blue Cross and Blue Shield plan.
Because she was covered under Medicare, all charges for her prescription medications
were based on AWP, and, as such, all payments made by Mrs. Aaronson were based on
AWP.

As Mrs. Aaronson is currently undergoing chemotherapy, and she and her husband
are in the process of moving, they do not have the resources to undergo a thorough
review of their records for copies of checks or other proofs of payment for Mrs.
Aaronson's prescription medications. We have requested EOBs from Mrs. Aaronson's
Medicare provider, and will produce these documents as soon as they are made available
to us. But what she has produced to date satisfies the inquiry the Court is focused on.

### C.     David E. Clark (TAMCC ¶ 16)

Plaintiffs have voluntarily produced diagnosis documents from Michael K.
Gornet, M.D. (CLARK 0002-5), billing records from the Mayo Clinic of Scottsdale
(CLARK 0006-14, CLARK 0016-24, CLARK 0026-55), billing records from the Mayo
Medical Center (CLARK 0015, CLARK 0025, CLARK 0056-73, CLARK 0077-78,
CLARK 0081, CLARK 0085-86, CLARK 0090-91, CLARK 0094-95, CLARK 0098,
CLARK 0102-103, CLARK 0106-107, CLARK 0110-111, CLARK 0114, CLARK 0117,
CLARK 0120), and billing records from the Mayo Clinic (CLARK 00074-76, CLARK
0079-80, CLARK 0082-84, CLARK 0087-89, CLARK 0092-93, CLARK 0096-97,
CLARK 0099-101, CLARK 0104-105, CLARK 0108-109, CLARK 0112-113, CLARK
0115-116, CLARK 0118-119), demonstrating Mr. Clark was prescribed and administered
all of the prescription medications described in the TAMCC. These records clearly show
the dates the medications were administered on and show the amounts he was charged for
these drugs, and the amounts he paid out-of-pocket, again satisfying the inquiry the Court
focused on.

Mr. D. Scott Wise
October 26, 2005
Page 3

As set forth in the TAMCC, Mr. Clark is a Medicare beneficiary with supplemental insurance coverage through the Operating Engineers American Benefit Plan. Because he was covered under Medicare, all charges for his prescription medications were based on AWP, and, as such, all payments made by Mr. Clark were based on AWP.

Plaintiffs have been working with Mr. Clark around his chemotherapy schedule regarding the production of proof of payment documentation, which will be produced to defendants as soon as it is made available to us. Moreover, plaintiffs have requested EOBs from Mr. Clark's Medicare Provider, and will produce these documents as soon as they are made available as well.

**D.     Robert Howe** (TAMCC ¶ 17)

Plaintiffs have voluntarily produced proofs of payment in the form of checks from Mr. Howe to Oregon Urology (HOWE 0001-13), Medicare EOBs from CMS (HOWE 0014-25), medical records from Peace Harbor Hospital (HOWE 0026-33), billing records from Oncology Associates of Oregon (HOWE 0034-51), and billing records from Oregon Urology Specialists (HOWE 0052-57) demonstrating Mr. Howe was prescribed and administered all of the prescription medications described in the TAMCC. Moreover, these records clearly show the dates these medications were administered, the amounts charged for these medications, and the amounts he paid out of pocket for these medications.

As set forth in the TAMCC, Mr. Howe is a Medicare beneficiary with supplemental insurance coverage through United Healthcare of Utah. Because he was covered under Medicare, all charges for his prescription medications were based on AWP, and, as such, all payments made by Mr. Howe were based on AWP, and as such has provided documentation showing he is an adequate class representative.

**E.     James Shepley** (TAMCC ¶ 18)

Plaintiffs have voluntarily produced proof of payment in the form of a check from Mr. Shepley to Alpine Hematology-Oncology (SHEPLEY 0001), billing records from Alpine Hematology-Oncology (SHEPLEY 0002-16), and medical records from Urologic Surgeons, Ltd. (SHEPLEY 0017-27), demonstrating Mr. Shepley was prescribed and

Mr. D. Scott Wise
October 26, 2005
Page 4

administered all of the prescription medications described in the TAMCC. Moreover, these records clearly show the dates these medications were administered, the amounts charged for these medications, and the amounts Mr. Shepley paid out of pocket for these medications, and as such has provided documentation showing he is an adequate class representative.

As set forth in the TAMCC, Mr. Shepley is a Medicare beneficiary with supplemental insurance coverage through United American. Because he was covered under Medicare, all charges for his prescription medications were based on AWP, and, as such, all payments made by Mr. Shepley were based on AWP.

Plaintiffs are providing a substitute for page SHEPLEY 0001 which defendants found illegible, and have requested EOBs of Mr. Shepley's Medicare carrier.

### F.    Estate of Patricia K. Young (TAMCC ¶ 19)

Plaintiffs have voluntarily produced proofs of payment in the form of checks from Mrs. Young to OK Arthritis Center, Citibank, and Dr. Carson (YOUNG 0001-11), proof of payment in the form of a credit card receipt from the Oklahoma Arthritis Center (YOUNG0053), Medicare EOBs from CMS (YOUNG 0012-15, YOUNG 0037-52), United Healthcare EOBs from Greenboro Service Center (YOUNG 0031, YOUNG 0034-36), medical and billing records from Oklahoma Arthritis Center (YOUNG 0016-30, YOUNG 0032-33, YOUNG 0054-69, YOUNG 0086-87), medical records from Dexeus Oncology (YOUNG 0070-72), medical records from Integris Bass Baptist Health Center (YOUNG 0073-85, YOUNG 0091-105), and  medical records from St. Mary's Regional Medical Center (YOUNG 0088-90),  demonstrating Mrs. Young was prescribed and administered all of the prescription medications described in the TAMCC.  Moreover, these records clearly show the dates these medications were administered, the amounts charged for the majority of these medications, and the amounts Mrs. Young paid out of pocket for these medications, and as such has provided documentation showing he is an adequate class representative.

As set forth in the TAMCC, Mrs. Young was a Medicare beneficiary with supplemental insurance coverage through United Healthcare. Because she was covered under Medicare, all charges for her prescription medications were based on AWP, and, as such, all payments made by Mrs. Young were based on AWP.

Mr. D. Scott Wise
October 26, 2005
Page 5

Plaintiffs are providing substitutes for pages YOUNG 0016-36 has pending a
request for the release of Mrs. Young's billing records to the Integriss Bass Baptist
Health Center, as well as a request for EOBs from Mrs. Young's Medicare carrier. These
documents will be produced as soon as they are made available to us.

   **G.    Estate of William Newell** (TAMCC ¶ 20)

Plaintiffs have voluntarily produced proof of payment in the form of a check from
Mrs. Newell to Lake Norman Hematology-Oncology Specialists (NEWELL 0001),
billing records from Lake Norman Hematology-Oncology Specialists (NEWELL 0002-
22), and billing records from Urology Specialists (NEWELL 0023-34), demonstrating
Mr. Newell was prescribed and administered all of the medications described in the
TAMCC. Moreover, these records clearly show the dates these medications were
administered on and the amounts charged for these medications, and the amounts Mr.
Newell actually paid out of pocket for these medications, and as such has provided
documentation showing he is an adequate class representative.

As set forth in the TAMCC, Mr. Newell was a Medicare beneficiary with
supplemental insurance coverage through AARP. Because he was covered under
Medicare, all charges for his prescription medications were based on AWP, and, as such,
all payments made by Mr. Newell were based on AWP.

Plaintiffs are in the processing of obtaining EOBs from Mr. Newell's Medicare
Carrier, and will produce them as soon as they are made available to us.

Based on the detailed production set forth above, plaintiffs believe the documents
voluntarily produced relating to proposed Class 1 representatives fully comply with
Judge Saris' Class Certification Order.

**II.    Proposed Class 2 Representatives (MediGap Payors)**

Judge Saris' Order did not require documentation beyond the individual Class 1
representatives. *See* Order at 43-44, 80. Nonetheless, for the Sheet Metal Workers
National Health Fund ("Sheet Metals") and Pirelli Armstrong Tire Corporation Retiree

Mr. D. Scott Wise
October 26, 2005
Page 6

Medical Benefits Trust ("Pirelli") funds, [1] as you acknowledge, we have provided you
with affidavits and copies of the summary plan descriptions which make clear 20% co-
payments made under Medicare Part B are covered under both plans. *See* SMW 0001-
0033 and Pirelli 0001-0059. We do not need to provide you with additional information
showing that the funds' co-payments were based on AWP because AWP-based
reimbursement under Medicare is, as you know, provided for by statute.

Despite the fact that nothing in Judge Saris' Order authorizes such an inquiry, you
have also asked for invoices and other types of billing information. As Jennifer Connolly
advised you by letter on October 24 and your colleague, Carlos Pelayo, by telephone on
October 25, that information is forthcoming and should be produced to you by the end of
the week.

Finally, you have asked for documents related to the PBMs used by these plans.
However, since Judge Saris did not certify the self-administered class, there is no need
for plaintiffs to produce these documents.

### III.   Proposed Class 3 Representatives (TPPs and Consumers for AWP-Based Charges on Physician-Administered Drugs Outside of Medicare) - Consumers

Before addressing your specific concerns about the UFCW consumer class
representative production, we need to clear up some apparent misunderstandings on your
part. Other than documents that were produced by UFCW long ago, plaintiffs do not
need to produce additional documents reflecting that UFCW consumer plaintiffs'
payments were based on AWP. As set forth in the TAMCC, UFCW made payments for
physician-administered drugs outside of Medicare. *Id.* ¶ 22. As likewise set forth in the
TAMCC, those payments were based on AWP because UFCW made a percentage
payment of BCBS' allowed amount which was based on AWP. *Id.* Therefore, any
remaining amounts paid by the UFCW member were likewise based on AWP. Because
this is the case, there are no documents – other than those UFCW has already provided or

---

[1]      In addition, you imply throughout your e-mail that plaintiffs need to provide you with
supplemental documentation for UFCW; however, Judge Saris already ruled that UFCW is an adequate
representative for the physician-administered TPP Medicare Part B co-pay Class. *See In re Pharm. Indus.
Average Wholesale Price Litig.*, 230 F.R.D. 61, 86 (D. Mass. 2005). Therefore, such additional
documentation is not required. *See also id.* at 80 ("Plaintiffs must establish that here is an *individual* class
representative with standing to sue each defendant.") (emphasis added).

Mr. D. Scott Wise
October 26, 2005
Page 7

deposition testimony that has already been taken – that plaintiffs need to provide to establish that UFCW consumer plaintiff payments were based on AWP. Nor do these plaintiffs need to produce "insurance coverage documents" you have requested because those documents have already been produced in this litigation.

Despite the above, to ensure that we complied fully with Judge Saris' order, in addition to the voluminous documents UFCW has already produced in this litigation, plaintiffs supplemented UFCW's production by, for each proposed UFCW class representative, providing spreadsheets that show, *inter alia*: (1) the drug administered and the date it was administered; (2) the amount the Fund paid; (3) whether the member had other insurance; and (4) the amount the proposed class member paid. *See* UFCW 0022496-520. In addition, to the extent we have not been able to produce all billing information from all of the UFCW proposed class representatives, we have provided defendants with affidavits from those proposed class representatives stating that they paid the amounts that UFCW did not cover under its major medical plan. *See* chart below.

Furthermore, since the filing of the TAMCC, plaintiffs have provided you, on a rolling basis, copies of billing records for the UFCW plaintiffs. Although we have requested these records from every health care provider who administered AWPIDs to these proposed class representatives, Illinois law gives health care providers thirty (30) days to respond to requests for medical records. *See* 735 ILCS 5/8-2001 and 735 ILCS 5/8-2003 (2005). In addition, as is inevitable with such a process, some providers have produced incorrect information that has required follow-up on our end which has caused some delay in producing all responsive billing records. However, we have been producing documents to you on a rolling and daily basis since the filing of the TAMCC and intend to continue to do so as we receive additional billing records from our clients.

You have also asked for further "proof" that these consumers did indeed make the payments indicated in their billing records, in UFCW's own records, and affirmed in sworn affidavits. Initially, you will find that some of the documents already produced should assist defendants in this regard. Perhaps you or the dozens of defense lawyers working on the case should examine the documents they demanded and which were previously produced. For example, Joyce Dison's records indicate whether a check was received from an insurance carrier or from the patient. *See* DISON 0033-0042.

In some cases too much time has past for consumers to continue to maintain records of payment; therefore, defendants will need to establish that payment was made

Mr. D. Scott Wise
October 26, 2005
Page 8

during those representatives' depositions. For the remainder, where proposed class
representatives have not maintained proof of payment (canceled checks, credit card
statements, etc.) at their residence, we have had to obtain that information from their
financial institutions. Unfortunately, under Illinois law there is no statutory deadline for
the production of these documents from banks. *See* 205 ILCS 5/48.1 Nor does federal
law provide a deadline for the production of these documents from other financial
institutions such as credit card companies. 15 U.S.C. § 6802 (2005). Nonetheless, we
are diligently pursuing these documents and will produce them as they are received.

Regarding your specific concerns about the UFCW consumer plaintiffs, the
following chart will explain the status of plaintiffs' production. This chart also makes
clear that, contrary to your e-mail, we have indeed produced supporting documents from
Andrea Palencia, Scott Tell, and Joseph Miller.

| Name | Billing Records Produced | Affidavit Produced | UFCW spreadsheet produced |
|---|---|---|---|
| William Barnewolt (¶ 32) (rep'd by estate) | Requests pending with medical providers. | | UFCW 0022497-498 |
| Cheryl Barreca (¶ 33) | BARRECA 0003-0037 | BARRECA 0001-0002 | UFCW 0022496 |
| Cynthia Byrski (¶ 34) | BYRSKI 0002-0020 | BYRSKI 0001 | UFCW 0022499 |
| Mary Cauble (¶ 35) | Requests pending with medical providers. | Records were lost in mail and are being resent. | UFCW 0022510 |
| Anna Choice (¶ 36) | CHOICE 0001-0005[2] | CHOICE 0006-0007 | UFCW 0022511 |
| Joyce Dison (¶ 37) | DISON 0003-0042 | DISON 0001 | UFCW 0022500 |
| Tracy Garcia (¶ 38) | GARCIA 0003-00062 | GARCIA 0001-0002 | UFCW 0022501 |
| Donna Kendall (¶ 39) | KENDALL 0003-0032 | KENDALL 0001-0002 | UFCW 0022502-503 |

---

[2]   You have indicated that you are missing certain pages of this production. Please let us know
which pages you are missing and we will produce them again.

Mr. D. Scott Wise
October 26, 2005
Page 9

| Name | Billing Records Produced | Affidavit Produced | UFCW spreadsheet produced |
|---|---|---|---|
| Sandra Leef (¶ 40) | LEEF 0002-0012 | LEEF 0001 | UFCW 0022504 |
| Gerald Miller (¶ 41) | GMILLER 0001-0024 | | UFCW 0022505 |
| Joseph Miller (¶ 42) | Requests pending with medical providers. | JMILLER 0001-0002 | UFCW 0022506-507 |
| Constance Nelson (¶ 43) | NELSON 0002-0005 | NELSON 0001 | UFCW 0022508 |
| Andrea Palencia (¶ 44) | PALENCIA 0001-0019 | | UFCW 0022512-514 |
| Regina Shoemaker (¶ 45) | Requests pending with medical providers. | | UFCW 0022515 |
| Scott Tell (¶ 46) | Requests pending with medical providers. | TELL 0001 | UFCW 0022520 |
| Kenneth Vanderwal (¶ 47) | VANDER 0001-0009 | | UFCW 0022516 |
| Pauline Vernick (¶ 48) | Requests pending with medical providers. | | UFCW 0022517 |
| Mardolyn Vescovi (¶ 49) | Requests pending with medical providers. | | UFCW 0022518 |
| Susan Wessels (¶ 50) | WESSELS 0001-0008 | | UFCW 0022509 |
| Kathleen Weaver-Zech (¶ 51) | Requests pending with medical providers. | | UFCW 0022519 |

Because these difficulties are due to no fault of plaintiffs, and because we have produced records for the vast majority of UFCW class representatives, the tone of your letter regarding plaintiffs' production to date is not justified.

Mr. D. Scott Wise
October 26, 2005
Page 10

Regarding your concerns about non-UFCW plaintiffs, Rebecca Hopkins (TAMCC
¶ 52) and George Baker Thomson (TAMCC ¶ 53), we have the following information:[3]

*   *Hopkins, Rebecca.* Plaintiffs have voluntarily produced a summary of Mrs.
    Hopkins' medical care written by her husband (HOPKINS 0001-3), billing
    records from the Hamot Health Foundation (HOPKINS 0004), invoices
    seeking payment for prescription medications administered from Credit Bureau
    of Erie, Inc. and Medical Management Services, Inc. (HOPKINS 0005-6,
    HOPKINS 0015), billing records from Buffalo Pharmacy Inst. (HOPKINS
    0007-8), EOBs from Blue Cross and Blue Shield (HOPKINS 0009-14), and
    medical records from Cleveland Clinic Foundation (HOPKINS 0016-46),
    demonstrating Mrs. Hopkins was prescribed and administered the prescription
    medications described in the TAMCC. Moreover, these records clearly show
    the dates these medications were administered on and the amount(s) Mrs.
    Hopkins was responsible to pay.

    As set forth in the TAMCC, Mrs. Hopkins was privately insured through Blue
    Cross and Blue Shield and Keystone. Because these private payor is believed
    to have reimbursed prescription medications based on AWP, it is believed that
    all payments made by Mrs. Hopkins were also based on AWP.

    Plaintiffs are working with Mrs. Hopkins regarding the production of proof of
    payment documentation, which will be produced as soon as it is made
    available to counsel. Plaintiffs' are producing substitutes for pages HOPKINS
    0004 and HOPKINS 0007-8 which defendants found to be illegible.
    Moreover, plaintiffs' have outstanding requests with the Cleveland Clinic for
    billing records relating to Mrs. Hopkins' care, a process which has proven
    difficult because of the time frame the records cover. Plaintiffs will produce
    relevant billing records as soon as they are made available to us.

*   *Thomson, George.* Plaintiffs have voluntarily produced billing records from
    Pinellas Hematology & Oncology (THOMSON 0001-2), invoices and billing
    records from Trelles Pharmacy (THOMSON 0003-4), and billing records from

---

[3]   You have also asked us to provide you information regarding which generic these proposed class
representatives took. Since plaintiffs have provided you with the names and addresses of the providers
utilized by these representatives, this information is as easily obtainable from defendants as it is from
plaintiffs.

Mr. D. Scott Wise
October 26, 2005
Page 11

Infusion Technologies (THOMSON 0005), demonstrating Mr. Thomson was prescribed and administered the prescription medications described in the TAMCC. Moreover, these records clearly show the dates these medications were administered, the amounts charged for these medications, and the amounts paid by Mr. Thompson.

As set forth in the TAMCC, Mr. Thomson was privately insured through Wellcare. Because this private payor is believed to have reimbursed prescription medications based on AWP, it is believed that all payments made by Mr. Thompson were also based on AWP.

Plaintiffs are working with Mr. Thomson regarding the production of additional proof of payment documentation, which will be produced as soon as it is made available to us. Otherwise, plaintiffs believe the documents voluntarily produced relating to Mr. Thompson fully comply with Judge Saris' Class Certification Order.

We trust that this answers your concerns about plaintiffs' document production.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/

Steve W. Berman

SWB:CF
cc:   All Counsel (via lexis/nexis file & serve)

# EXHIBIT 8

**FILED UNDER SEAL**

# EXHIBIT 9

**FILED UNDER SEAL**

# EXHIBIT 10

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-o0o-

CERTIFIED COPY

IN RE PHARMACEUTICAL      MDL No. 1456

INDUSTRY AVERAGE PRICE

LITIGATION                CIVIL ACTION: 01-CV-12257-PBS

                          Judge Patti B. Saris

_____

DEPOSITION OF

JAMES E. SHEPLEY

Friday, November 11, 2005

Reno, Nevada

Reported by:  Lesley A. Clarkson, CCR #182

James E. Shepley

November 11, 2005

Reno, NV

26

1    A    No.

2    Q    Okay.  We are narrowing now.  What about

3  say six months ago, in May, June, did you know about

4  this lawsuit then?

5    A    I don't know.

6    Q    Okay.  That's okay.

7    A    My dates are lousy.

8    Q    That's okay.  What do you understand your

9  role in this lawsuit?  Again when I say this

10  lawsuit, I mean the AWP litigation.  What do you

11  understand your role in this lawsuit to be?

12    A    Well, I understand that I have been

13  overpaid, I mean overcharged, I should say,

14  overcharged for prescriptions, and I'm trying to

15  help other people that are in the same fix as I am,

16  overcharged.

17    Q    What prescription medication are you

18  claiming you were overcharged for?

19    A    Lupron.

20    Q    Anything else?

21    A    I don't know.

22    Q    Who are you asserting claims against in

James E. Shepley                                     November 11, 2005

Reno, NV

27

1    this litigation?

2         A    Would you repeat that?

3         Q    Sure.  Who are you asserting claims

4    against?  Who are you saying overcharged you for

5    Lupron?

6         A    I don't know.

7         Q    Are you asserting claims against any of

8    your doctors in this case?

9         A    No.

10        Q    Did you ever pay for Lupron?

11        A    Yes.

12        Q    Okay.  Who did you pay for the Lupron?

13        A    I don't know.

14        Q    Do you want to take a break?

15             MR. HAVILAND:  How are you feeling?

16             THE WITNESS:  I'm all right.  I'm just

17    trying to remember.

18    BY MS. LAWSON:

19        Q    Sure.

20        A    The doctor's office, I think.  I don't

21    know.

22        Q    So you think you paid a doctor's office

James E. Shepley                                    November 11, 2005
Reno, NV

51

    Q      In the last five years, leaving aside

Mr. Williams and Mr. Haviland, have you spoken with

any other lawyer?  I'm not asking what you spoke

about, just whether you have spoken with another

lawyer.

    A    No.

    Q    Do you know whether in the last five years

your wife has spoken with a lawyer other than

Mr. Williams or Mr. Haviland on your behalf?

    A    No.

    Q    No, you don't know, or no, she has not?

    A    She has not, and I don't know.

    Q    If your wife had contacted a lawyer on

your behalf, do you think she would tell you about

it?

         MR. HAVILAND:  Object to the form of the

question.

         THE WITNESS:  Yes.

BY MS. LAWSON:

    Q    In this case are you bringing, asserting

claims -- withdraw.  Strike that.

         In this lawsuit are you claiming that you

James E. Shepley                          November 11, 2005

Reno, NV

52

1    were overcharged for a drug called Procrit?

2         A    No.

3         Q    In this lawsuit are you claiming that you

4    were overcharged for Zoladex?

5         A    No.

6              MR. HAVILAND:  Do you understand her

7    questions?  Do you understand what she's asking you?

8              THE WITNESS:  Yes.

9              MR. HAVILAND:  Okay.

10   BY MS. LAWSON:

11        Q    You were sitting here before when Mr.

12   Haviland said that his law firm had, that you were a

13   client of his law firm in connection with another

14   litigation, right?

15        A    I don't know.

16             MS. LAWSON:  Can you read back the portion

17   of the record where Mr. Haviland was cautioning

18   Mr. Shepley not to reveal privileged communi --

19   conversations between him and Mr. Shepley and his

20   wife that reveal discussions with lawyers.

21             (Record read as follows:

22             "Mr. Haviland:  Now, Mr. Shepley, I want

James E. Shepley                          November 11, 2005

Reno, NV

69

```
 1        Q      Are you one of the people this lawsuit is

 2   being brought on behalf of?

 3        A      Yes.

 4        Q      Do you know what makes you part of the

 5   group that this lawsuit is being brought on behalf

 6   of?

 7        A      No, I -- no.

 8        Q      Are you familiar with the term "class

 9   representative"?

10        A      No.

11        Q      Are you familiar with the term

12   "representative plaintiff"?

13        A      No.

14        Q      What do you -- withdraw.

15               Do you know the names of any of the

16   defendants in this case?

17        A      No.

18        Q      Do you know whether retail pharmacies are

19   defendants in this case?

20        A      No.

21        Q      Do you know whether wholesalers that sell

22   prescription drugs are defendants in this case?
```

James E. Shepley

November 11, 2005

Reno, NV

70

1          A    I don't know.

2          Q    **Do you know whether doctors are defendants**

3    **in this case?**

4               MR. HAVILAND:  Asked and answered.

5               THE WITNESS:  I don't know.

6    BY MS. LAWSON:

7          Q    **Do you know whether companies that**

8    **manufacture prescription drugs are defendant in this**

9    **case?**

10         A    Repeat that, please.

11         Q    **Do you know whether companies, do you know**

12   **if companies that manufacture prescription drugs are**

13   **defendants?**

14         A    I don't know.

15         Q    **Do you know who the plaintiffs are in this**

16   **case?**

17         A    No.

18         Q    **Are you a plaintiff in this case?**

19              MR. HAVILAND:  Asked and answered.

20              THE WITNESS:  Yes.

21   BY MS. LAWSON:

22         Q    **Are you a class representative in this**

James E. Shepley                                     November 11, 2005
                              Reno, NV

                                                                    71

1    case?

2        A    I don't know.

3        Q    As a plaintiff in this case, what do you

4    understand your -- withdraw.

5             As a plaintiff in this case, do you have

6    any responsibilities?

7        A    I don't know.

8        Q    Do you know whether you have a

9    responsibility to provide documents?

10       A    No.

11       Q    You don't know, or no, you don't have any?

12       A    I don't know.

13       Q    Do you know whether you have a

14   responsibility to testify in a trial if there is

15   one?

16       A    I don't know.

17       Q    If asked to in connection with this case,

18   would you be willing to travel to Boston,

19   Massachusetts?

20       A    Not really.

21            MR. HAVILAND:  He will consult with his

22   counsel about that when the time comes.

James E. Shepley                                    November 11, 2005
                              Reno, NV

72

BY MS. LAWSON:

    Q    But your answer to my question was that
you are not really willing to travel to Boston?

    A    No.

    Q    I'm sorry, I have too many papers here.
It will be just one minute.

        When you were treated with, you are
currently being treated with Lupron, correct?

    A    Yes.

    Q    Who pays for the Lupron that you are being
treated with?

    A    I don't know.

        MR. HAVILAND:  Currently?

        MS. LAWSON:  Yes.

BY MS. LAWSON:

    Q    When you were given Zoladex -- withdraw
that.

        I apologize if I have asked this already,
but do you remember approximately what year you were
given Zoladex?

    A    No.

    Q    But it would have been sometime between

Henderson Legal Services
(202) 220-4158

James E. Shepley                                    November 11, 2005
Reno, NV

76

1    whether people from the state of Massachusetts are

2    included?

3         A    I don't know.

4         Q    It's a slightly different topic.  Do you

5    know whether insurance companies are included as

6    plaintiffs in this lawsuit?

7         A    I don't know.

8         Q    Does Medicare -- withdrawn.

9              When you receive a drug in a physician's

10   office, so when the physician administers it, as

11   opposed to getting a prescription and buying it in a

12   retail pharmacy, when you receive a drug in a

13   physician's office, does Medicare pay the physician

14   for that?

15        A    I don't know.

16        Q    So I'll assume -- if we -- withdraw that.

17             Do you know how it is that Medicare

18   determines what it will pay your doctors?

19        A    No, I don't.

20        Q    What about United American, do you know

21   how it determines what it will pay your doctors?

22        A    No.

James E. Shepley

November 11, 2005

Reno, NV

79

1    remember whether you paid anything out of pocket for

2    Lupron, and I think now you are saying you do

3    remember paying out of pocket for Lupron; is that

4    right?

5         A    Yes.

6         Q    Did you pay -- withdraw.

7              Do you currently pay anything out of

8    pocket for Lupron?

9         A    I don't know.

10        Q    Okay.  So you remember that in 1991 -- in

11   or around 1991 you paid something out of pocket for

12   Lupron; is that right?

13        A    I don't know.  I don't remember.

14        Q    What about for Zoladex, do you remember

15   ever paying anything out of pocket for Zoladex?

16        A    No, I don't remember.

17        Q    Assuming that you did pay something out of

18   pocket for Lupron in or around 1991, why do you

19   think that you were overcharged?

20             MR. HAVILAND:  Asked and answered.

21             THE WITNESS:  Because they sent me a bill,

22   that's why.