# EXHIBIT 11

1

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MASSACHUSETTS

3

4   IN RE PHARMACEUTICAL INDUSTRY

5   AVERAGE WHOLESALE PRICE

6   LITIGATION

7   _____   MDL No. 1456

8   THIS DOCUMENT RELATES   CIVIL ACTION: 01-CV-12257-PBS

9   TO ALL CLASS ACTIONS.   Judge Patti B. Saris

10  ----------------------------------------------------

11

12            DEPOSITION OF ROBERT A. HOWE

13            TAKEN ON BEHALF OF DEFENDANTS

14               NOVEMBER 16, 2005

15                  - - -

16  BE IT REMEMBERED THAT, pursuant to the Federal Rules

17  of Civil Procedure, the deposition of ROBERT A. HOWE

18  was taken before Laurie A. Volker, Registered

19  Professional Reporter, on November 16, 2005,

20  commencing at the hour of 10:21 a.m., the proceedings

21  being reported at 66 East Sixth Avenue, Eugene,

22  Oregon.

1          Mr. Howe, do you receive any documents from

2   your supplemental insurance provider that would

3   explain the details of that coverage from them?

4          A.    Yes, sir, I do.

5          Q.    What kind of documents do you receive?

6          A.    Similar to the Medicare documents.

7          Q.    So you have a document that describes the

8   plan details?

9               MR. WILLIAMS:   I'll object to that as

10  vague.

11              MR. PELAYO:   I'll ask it again.

12  BY MR. PELAYO:

13         Q.    Have you ever received a document from

14  United Health Care that describes the details of your

15  plan?

16         A.    No.

17         Q.    So you don't have such a document in your

18  possession at home?

19         A.    Not from United Health Care.

20         Q.    From whom do you have it?

21         A.    From Wells Fargo.

22         Q.    Okay.  So you received a document from

1    Wells Fargo that relates to United Health Care?

2         A.    Yes.

3         Q.    Okay.  And it describes the details of the

4    plan?

5         A.    Yes.

6         Q.    Okay.  And you have that at home?

7         A.    Yes.

8         Q.    Okay.

9              Do you receive documents -- which I'll call

10   explanations of benefits, like the CMS documents that

11   we talked about earlier -- do you receive such

12   explanations of benefits with respect to United

13   Health Care?

14        A.    Yes, I do.

15        Q.    And do you have those at home?

16        A.    Yes.

17        Q.    And would those be in the same cabinet

18   where you keep the Medicare CMS documents?

19        A.    I keep -- yes.

20        Q.    Okay.

21             And would you say that you have

22   approximately the same level of recordkeeping for

1  United Health Care that you do for Medicare?

2     A.   Yes.

3     Q.   Okay.  So -- and this is a compliment --

4  you've pretty much kept most of these records?

5     A.   Yes.

6     Q.   Okay.

7          Have you -- in connection with this

8  litigation, have you given any of these documents

9  we've just been describing with respect to United

10  Health Care to your lawyers?

11     A.   I believe I have.

12     Q.   Okay.  And this is not a question for you,

13  this is just a statement for the record.

14     MR. PELAYO:  Mr. Williams, we will request

15  formally that we receive all the documents relating

16  to Mr. Howe's supplemental insurance coverage which

17  he has testified he has in his possession and he has

18  given to counsel.  We'd like those produced

19  immediately, and we've documented this request in

20  several letters to counsel.

21          We believe that these documents are urgent

22  to our ability to prepare for the upcoming class cert

1   submission as they bear directly upon his coinsurance

2   payment, and whether or not it's related to AWP.

3          MR. WILLIAMS:  I'll note the request, and I

4   have no response other than we'll take it under

5   advisement.

6          As you know, this is a broader issue that

7   covers other deponents, other documents, and we're

8   not going to resolve it today, but you've stated your

9   request on the record, and I've noted it.

10          MR. PELAYO:  Okay.

11   BY MR. PELAYO:

12      Q.   Mr. Howe, did -- I think I know the answer

13   to my own question.

14          Your wife has been a home -- let me

15   withdraw it.

16          Your wife has not worked since at least

17   1990; correct?

18      A.   Correct.

19      Q.   So does she have any insurance coverage of

20   her own?

21      A.   She has Medicare A and B.

22      Q.   Okay.  Does she have a supplemental

1  only producing checks relating to cancer treatments?

2  Let me strike that.

3         So is the only reason you've seen doctors

4  at Oregon Urology for your cancer treatment?

5      A.   No.

6      Q.   What else have you been seeing them for?

7      A.   A bladder condition.

8      Q.   Okay.  Do you receive any medications for

9  that condition that are administered by a physician?

10     A.   Just a prescription for a pill.

11     Q.   A pill.  Okay.

12         Mr. Howe -- and here I really am asking for

13 your help.

14         Let's just take, as an example, the

15 document that was marked as Exhibit Howe 002, the set

16 of documents, the explanations of benefits?

17     A.   Yeah.

18     Q.   Let's take the top one, which is marked

19 Howe 0014.

20     A.   Correct.

21     Q.   And there was a date of service on

22 December 2nd, 2003.

192

1          A.    That's what it says.

2          Q.    Can you look now at Exhibit Howe 003 which

3    I gave you, which are the set of cancelled checks,

4    and show me which check reflects your payment for

5    that service?

6          A.    I cannot.

7          Q.    That's fine.  Have you produced the

8    cancelled check that would reflect your payment for

9    that service on December 2nd, 2003?

10              MR. WILLIAMS:  Objection to form.

11         A.    I don't know, because I don't get billed

12   from Oregon Urology Specialists with any specific

13   numbers that tie to this.

14   BY MR. PELAYO:

15         Q.    I see.  So when you think of your payments,

16   you think of what your payment looks like, your

17   invoice looks like, from Oregon Urology?

18         A.    Correct.

19         Q.    And do you have all of those invoices?

20   Have you kept those?

21         A.    I believe I have.

22         Q.    And have you provided -- have you given

1   those to your lawyers in connection with this

2   litigation?

3          A.    I'm not sure.

4          Q.    Okay.

5          MR. PELAYO:   I'll just make a statement on

6   the record, Kent.   These are invoices from his

7   medical provider that reflect billing for

8   physician-administered drugs, and we ask that you

9   provide those as soon as possible.

10          MR. WILLIAMS:   Duly noted.

11   BY MR. PELAYO:

12          Q.    So just going back to this -- and we won't

13   go through the chore of it, because I think I know

14   what your answer's going to be -- but is it safe to

15   say that to ask you to try to match up the cancelled

16   checks with these explanation of benefits, it would

17   not be possible for you because you don't think of

18   them in this way, you think of them in terms of the

19   invoices you receive from Oregon Urology?

20          A.    Right.   Correct.

21          Q.    Okay.   That's helpful.

22                I'm going to give you now a document that's

1   "Lupron Depot"?

2       A.   Yes.

3       Q.   But then going back down, it says, "June 3,

4   '03, Zolodex"?

5       A.   Yes.

6       Q.   So what I'm wondering is, earlier you

7   said that -- and it was based on your memory, the

8   first time you remember taking Zolodex was 2004.

9   Could it be that it was earlier?  Could this be the

10  first time?

11      A.   I think so, yes.

12      Q.   Okay.  All I'm asking is, does June 3rd,

13  2003, generally comport to when you took Zolodex?

14      A.   According to this, it has to be.

15      Q.   Okay.  And I just want to make sure I

16  understand what you said about the switch to Zolodex.

17           Did you say it was recommended by your

18  doctor?

19      A.   Yes.

20      Q.   Which doctor was that?

21      A.   Dr. Bergreen.

22      Q.   Bergreen.

# EXHIBIT 12

**FILED UNDER SEAL**

# EXHIBIT 13

**FILED UNDER SEAL**

# EXHIBIT 14

**FILED UNDER SEAL**

# EXHIBIT 15

# KLINE & SPECTER

A PROFESSIONAL CORPORATION



Nov 23 2005
2:54PM

Direct Fax: 215-735-0957
Respond to: Philadelphia Office

terrianne.benedetto@klinespecter.com

November 23, 2005

**VIA LEXISNEXIS**

Mark G. Young, Esquire
**PATTERSON BELKNAP WEBB & TYLER**
1133 Avenue of the Americas
New York, NY 10036-6710

      Re:    *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*; MDL No. 1456

Dear Mr. Young:

      As you know, David Clark passed away on November 5, 2005. His son, Roger Clark, is in the process of having an estate raised and is going to replace his father as the class representative on behalf of his father's estate. Please provide me with at least two dates in the coming two weeks on which you or another defense counsel are available to conduct the deposition of Roger Clark in Show Low, Arizona.

                          Very truly yours,

                          **TERRIANNE BENEDETTO**

TAB/jn
cc:     All Counsel of Record (via LexisNexis)

PHILADELPHIA: 1525 LOCUST STREET • THE NINETEENTH FLOOR • PHILADELPHIA, PA 19102 • 215-772-1000 TELEPHONE • 800-597-9585 TOLL FREE TELEPHONE • 215-735-0957 FACSIMILE

NEW JERSEY: KLINE & SPECTER • 1800 CHAPEL AVENUE, SUITE 302 • CHERRY HILL, NJ 08002 • 856-662-1180 TELEPHONE • 856-662-1184 FACSIMILE
CO-MANAGING ATTORNEYS: ROBERT ROSS AND DONALD E. HAVILAND, JR.

NEW YORK: 230 PARK AVENUE, SUITE 2525 • NEW YORK, NY 10169 • 212-986-6200 X241 TELEPHONE • 800-916-8716 TOLL FREE TELEPHONE

# EXHIBIT 16

**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Monday, November 14, 2005 10:16 AM
**To:** Lynch, Mark
**Subject:** RE: Proposed Class Reps

**1. We are making no representation that the class 3 representatives have "some nexus with Mass law".There is nothing in the pleading that suggests that and we identified the their residency in the complaint. If you read the complaint you can see that and if your reason for deposing these folks was to establish that you have wasted your clients money due to our own actions. We would have answered any questions regarding contacts with Massachusetts by letter or stipulation if that was the main objective of the deposition or the reason for its being taken.**

**2. Our listing of alternate individuals makes no representation that they are Medicare beneficiaries, and indeed the fact they are listed in class 3 makes it clear from the outset that we**

were arguing they were sufficient if the court finds the other reps offered not sufficient even though they were not Medicare beneficiaries . Again a reading of the proposed order and the complaint makes that obvious and if there was any ambiguity you could have sought clarification before taking depositions. You chose not to and cannot therefore fault us for your actions.

To "summarize" we stand on all of the class representatives offered. if you simply wish to challenge whether they are Medicare beneficiaries or their nexus to Massachusetts short of deposition you can do so w/o taking a deposition.

---

**From:** Lynch, Mark [mailto:mlynch@cov.com]
**Sent:** Saturday, November 12, 2005 1:04 PM
**To:** Steve Berman
**Subject:** RE: Proposed Class Reps

Your designation of individuals as Class 3 representatives is a representation that they have some nexus with Massachusetts that would enable them to bring a claim under Massachusetts law. Our depositions are demonstrating that representation to be false, and you should withdraw any additional such proposed class representatives before we are put to the needless burden of deposing them to establish that they have no nexus with Massachusetts.

With respect to Class1, your response indicates that you are not sufficiently familiar with your own papers. Plaintiffs' "Proposed Consolidated Order Re: Motion for Class Certification" lists some 22 individuals as both Class 1 and Class 3 representatives. See id. at p. 2. Your listing of these individuals as Class 1 representatives in your proposed order is a representation that they are Medicare beneficiaries, and our depositions are demonstrating that representation to be false.

To summarize: if there are individuals who are not Medicare beneficiaries or do not have any nexus with Massachusetts that would enable them to assert a claim under Massachusetts law, you should withdraw them as proposed class representatives promptly.

---

**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Friday, November 11, 2005 2:25 PM
**To:** Lynch, Mark
**Subject:** RE: Proposed Class Reps

**The complaint identifies the status and residence of each of**

the class representatives. **You can see from its face that the Class 3 reps you have deposed are not Massachusetts residents. Therefore if you believe this is a defect in their being class reps, you have no reason to depose them and have undertaken to do so with full knowledge of their position before you took the dpes. On your theory there is no need to depose such reps who have not been deposed yet, so I don't see how we are increasing your costs.**

**The Class 1 reps are Medicare beneficiaries so we don't know what you refer to in your mail.**

---

**From:** Lynch, Mark [mailto:mlynch@cov.com]
**Sent:** Thursday, November 10, 2005 3:11 PM
**To:** Steve Berman
**Subject:** Proposed Class Reps

Dear Steve:

We have taken the depositions of six of your proposed class representatives -- Ms. Palenica, Mr. Vanderwal, Ms. Vernick, Ms. Leef, Ms. Dison and Ms. Choice -- and none of them are Medicare beneficiaries or have any connection with Massachusetts that would give them standing to assert a claim under Massachusetts law. Because such individuals cannot conceivably be representatives of either Class 1 or Class 3, you are vexatiously wasting defendants' time and money by listing such individuals as potential class representatives and requiring defendants to depose them within the short time allowed by the Court's August 16 order.

The Court's August 16 decision is clear that Class 1 is limited to Medicare beneficiaries who personally made payments for all or part of co-payments that were based on AWPs. The decision is also clear that Class 3 -- third-party payers and consumers that pay for physician-administered drugs outside the Medicare Part B context -- is limited to "a statewide class in Massachusetts." Slip. op. at 4. We understand that you hope to persuade Judge Saris to certify classes of third-party payers and individuals who pay for PADs outside of Medicare Part B under state laws in addition to Massachusetts'. That goal, however, must be the subject of additional motions practice. The August 16 order does not provide for such classes, and purported representatives of such classes are completely irrelevant to the proceedings required by the August 16 order.

We ask you to promptly eliminate from your list of proposed class representatives all individuals who are not Medicare beneficiaries or lack any nexus with Massachusetts that

would give them standing to assert a claim under Massachusetts law as a representative of Class 3.  If you fail to do so and require us to conduct additional depositions of such individuals, we will ask the Court to reimburse defendants for the fees and costs incurred in preparing for and conducting such depositions.

Sincerely,

Mark

# EXHIBIT 17

**FILED UNDER SEAL**

# EXHIBIT 18

Anna Choice

November 10, 2005

Chicago, IL

1

1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MASSACHUSETTS

3

4                                    **CERTIFIED COPY**

5    IN RE PHARMACEUTICAL INDUSTRY

6    AVERAGE WHOLESALE PRICE        MDL No. 1456

7    LITIGATION

8                                ) CIVIL ACTION:

9    THIS DOCUMENT RELATES TO      01-CV-12257-PBS

10   ALL CLASS ACTIONS

11                                )

12

13                  The discovery deposition of

14   ANNA CHOICE, taken in the above-entitled case,

15   before Karyn Chalem, CSR, RPR, on the 10th day of

16   November, 2005, at 1:35 o'clock p.m. at the offices

17   of Hagens, Berman, Sobol & Shapiro, 60 West

18   Randolph Street, Suite 200, Chicago, Illinois,

19   pursuant to agreement of counsel.

20

21   Reported by:  Karyn H. Chalem

22   License No.:  084-004167

Anna Choice

November 10, 2005

Chicago, IL

15

1    insurance that covers your medical expenses?

2         A    No, I don't.

3         Q    Are you eligible for Medicare?

4         A    No, I'm not.

5         Q    Are you eligible for Medicaid?

6         A    No, I'm not.

7         Q    Do you receive Social Security

8    benefits?

9         A    No.  No, I don't.

10        Q    Do you have disability insurance?

11        A    Yes, I do.

12        Q    Do you receive disability insurance

13   benefits?

14        A    Not right now.  You know, if I need

15   any, I know I can get it.

16        Q    Have you received any disability

17   insurance benefits during the time of your medical

18   treatment in this case?

19        A    Yes, I did.

20        Q    And during what time period did you

21   receive those benefits?

22        A    Okay.  I got sick in 2000.  So I got

Anna Choice                                    November 10, 2005
                      Chicago, IL

                                                              42

1           A     These were on the bills that were

2    sent to me.

3           Q     So I understand they were on the

4    bills that were sent to you.  What is the basis for

5    your assertion that you paid out-of-pocket amounts

6    for those drugs?

7               MS. FEGAN:  Objection, asked and

8    answered, but you can answer again.

9               THE WITNESS:  As far as I know, I

10   did, from the bills that were sent to me.

11   BY MR. DOVE:

12          Q     And you paid those bills?

13          A     Not all of them I've paid.  I'm

14   still paying on them.

15          Q     Do you know for which drugs you have

16   paid and for which drugs you're still paying on?

17          A     No, I really don't.

18          Q     Ms. Choice, when were you diagnosed

19   with cancer?

20          A     2000.

21          Q     What type of cancer were you

22   diagnosed with?

Anna Choice                                    November 10, 2005
                        Chicago, IL

                                                              45

1    three months for a checkup, and I still have the

2    port in my chest and he cleans that out.

3             Q    Just so I understand it, as I

4    understand it, you received -- you were diagnosed

5    with breast cancer, you received this initial round

6    of chemotherapy and radiation in 2000, early 2001,

7    and since that time, you go every three months for

8    a checkup, but you're basically cancer-free, is

9    that correct?

10            A    Hopefully, thank God.

11            Q    Great.

12                 Do you believe that Dr. Thomas is

13   doing his best to help you get well?

14            A    Yes, I do.

15            Q    Do you believe that Dr. Thomas has

16   your best interests at heart?

17            A    I hope he does.

18            Q    Do you believe that he does?

19            A    Yes, I do.

20            Q    Do you believe that Dr. Thomas has

21   conspired with the drug companies to defraud you?

22                 MS. FEGAN:   Objection, calls for a

Anna Choice                                    November 10, 2005
                          Chicago, IL

                                                              46

1    legal conclusion, but you can answer.

2                  THE WITNESS:  I really don't know

3    about that.  They think everything is a business

4    anyway, so...

5    BY MR. DOVE:

6         Q    You say you don't know, but do you

7    think that he has conspired with drug companies to

8    defraud you?

9                  MS. FEGAN:  Same objection.

10                 THE WITNESS:  No, I don't think so.

11   BY MR. DOVE:

12        Q    Do you believe that Dr. Thomas makes

13   a profit on the drugs that are -- that were

14   administered to you?

15        A    I really don't know.

16        Q    Do you think that that would be

17   okay, if Dr. Thomas did make a profit on the drugs

18   that he administered to you?

19        A    No, I don't think it's okay.

20        Q    Did you receive your chemotherapy

21   treatments from Dr. Thomas at an outpatient clinic

22   or in a hospital?

Anna Choice                                November 10, 2005
                        Chicago, IL

56

1          Q    And based on that representation, do

2    these records reflect your being prescribed

3    Cytoxan?

4          A    Yes, it does.

5          Q    Do these records reflect your being

6    billed for Cytoxan?

7          A    Yes, it does.

8          Q    Do these records reflect anyone else

9    being billed for Cytoxan?

10         A    Blue Cross/Blue Shield.

11         Q    Do these records reflect the charges

12   made for Cytoxan?

13         A    Yes, it does.

14         Q    Do these records reflect any charges

15   being based on AWP?

16         A    I really couldn't tell you that

17   because I don't know.

18         Q    Do you recall personally being

19   billed for Cytoxan?

20         A    No, I don't remember.

21         Q    Do these records reflect your being

22   prescribed Rubex?  And I can represent to you that

Anna Choice                                    November 10, 2005
                          Chicago, IL

57

1    we were not able to find any entries for Rubex, but

2    the reason we're asking is that Rubex was mentioned

3    in your affidavit as a drug that you -- you took.

4              A    I really don't remember.

5              Q    Ms. Choice, do these records reflect

6    your being prescribed Dexamethasone Sodium?  And to

7    help you out here, I can direct your attention to

8    page four.

9                   Two lines under the Cyclophosphadide

10   entry, there's an entry for dexameth.  Do you see

11   that?

12             A    Yes, I do.

13             Q    I can represent to you that that's

14   an entry for Dexamethasone Sodium.

15                  Do you know the purpose of this

16   medication?

17             A    No, I don't.

18             Q    Do these records reflect who

19   manufactured the Dexamethasone Sodium?

20             A    Not as I know it.

21             Q    Do you know who manufactures

22   Dexamethasone Sodium?

Anna Choice                              November 10, 2005

Chicago, IL

58

1          A     No, I don't.

2          Q     So is it correct that you have no

3    way of knowing from these records whether the

4    Dexamethasone Sodium you were prescribed was

5    manufactured by a specific company?

6          A     No, I don't.

7          Q     Do you know whether the charges for

8    the Dexamethasone Sodium was based on AWP?

9          A     No, I don't.

10         Q     Ms. Choice, do these records reflect

11   your being prescribed Heparin?  And again I will

12   direct your attention to this page four.  About

13   nine lines down from the dexameth entry, there's an

14   entry that says Heparin.  Do you see that?

15         A     Yes, I do.

16         Q     So in light of that, do these

17   records reflect your being prescribed Heparin?

18         A     Yes, it does.

19         Q     Do you know the purpose of this

20   medication?

21         A     No, I don't.

22         Q     Do these records reflect who