# EXHIBIT 1

**Schau, Andrew D. (x2546)**

**From:** Schau, Andrew D. (x2546)
**Sent:** Monday, November 28, 2005 12:45 PM
**To:** 'John Macoretta'
**Subject:** RE: Objections

John:

You are correct, she did not give you a due date. But I assume you don't intend to grant yourself a de facto stay simply because she didn't specify a date by when you must comply with her order. So please let me know whether plaintiffs intend to respond as ordered (because there is no stay), or whether they intend not to respond as ordered (because you have filed objections). If you intend to respond as ordered, please let me know when you expect to do so.


-----Original Message-----
From: John Macoretta [mailto:JMacoretta@srk-law.com]
Sent: Wednesday, November 23, 2005 8:10 PM
To: Schau, Andrew D. (x2546)
Subject: Re: Objections


of course Bowler did not give a date when Plaintiffs' responses were due.  JOHN

John A. Macoretta
Spector, Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300
>>> "Schau, Andrew D. (x2546)" <ADSCHAU@PBWT.COM> 11/23/05 4:31 PM >>>
John:

John:

Just a heads up. The local rules provide that the filing of objections does not operate as a stay, so we will still be expecting plaintiffs to respond to the RFAs and Interrogatories as ordered, certainly before December 15.

We will, of course, also file a response to the objections, but I just wanted to be clear about our position with respect to plaintiffs' current obligation to comply with the existing order.

I've reproduced the rule below:

 Rule 2 - NON-DISPOSITIVE PRE-TRIAL MATTERS

 (a) A magistrate judge may hear and determine any pretrial motion or other pretrial matter, in accordance with 28 U.S.C. Section 636(b)(1)(A), other than those motions specified in Rule 3 of these Rules.

 (b) A party may not assign as error any aspect of the magistrate judge's order made under subsection (a) hereof , unless a timely objection is made. A party must serve and file any objections to the magistrate judge's order within 10 days of being served with a copy of that order unless a different time is prescribed by the magistrate judge or a district judge. The district judge to whom the case is assigned will consider such objections and will modify or set aside any portion of the magistrate judge's order determined to be clearly erroneous or contrary to law.

 (c) The ruling or order of a magistrate judge in a matter that is heard and determined under subsection (a) hereof is the ruling of the Court and is final unless reversed, vacated or modified by a district judge as provided in Fed. R. Civ. P. 72(a) and

1

subsection (b) hereof . The filing of objections under subsection (b) hereof does not operate as a stay of a magistrate judge's ruling or order unless so ordered by the magistrate judge or a district judge, and then only to the extent specifically ordered by the magistrate judge or district judge. Any party desiring a stay of a magistrate judge's ruling or order, or any part thereof, pending ruling on objections filed under subsection (b) hereof, must first apply therefor to the magistrate judge from whose ruling the objection is taken. If the magistrate judge denies a stay, written application therefor may then be made to the district judge to whom the case is assigned. Any application to the district judge for a stay must have appended to it the certificate of counsel that application for the stay sought has been made to the magistrate judge and denied by the magistrate judge, together with a copy of the magistrate judge's denial.

_____

Andrew D. Schau
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036-6710
T  212-336-2546
F  212-336-2222

-------------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone.  In such case, you should destroy this message and kindly notify the sender by reply email.  Please advise immediately if you or your employer do not consent to Internet email for messages of this kind.

-------------------------------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (including any attachments or enclosures) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
============================================================================

# EXHIBIT 2



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO<br>01-CV-12257-PBS AND 01-CV-339 | |

### Declaration of John Hoffman

John Hoffman declares as follows:

1. I am Vice President, Strategic Customer Franchise for Centocor, Inc. Centocor was acquired by Johnson & Johnson in 1999. Before being acquired by Johnson & Johnson, Centocor was an independent company.

2. Centocor markets and sells Remicade®, one of the medications at issue in this case. Remicade is used to treat rheumatoid arthritis and Crohn's disease. Remicade was launched in 1998 when Centocor was still an independent company.

3. Remicade is administered to patients via infusion. Remicade infusions typically take place in a physician's office, but Remicade may also be administered in hospitals. Remicade is covered by Medicare Part B.

4. Although Remicade is administered by physicians, Centocor does not sell Remicade to physicians and it does not contract with physicians. Rather, physicians who wish to administer Remicade to their patients must purchase the product from a specialty distributor. Hospitals typically purchase Remicade from a wholesaler.



5.      I understand that on December 7, 2004, during the cross examination of defendants' tutorial expert, Gregory K. Bell, Ph.D., plaintiffs' counsel asked Dr. Bell if he was aware that Centocor offered physicians a discount on Remicade of more than 40%. I also understand that Dr. Bell responded by saying that he had not heard that Centocor offered discounts to physicians.

6.      Counsel's question to Dr. Bell was unfounded. As I testified during my deposition in March and May of 2004, Centocor has never offered discounts, rebates or other price incentives to physicians. In fact, Centocor does not offer discounts, rebates or other price incentives to anyone who administers or dispenses the drug, or to anyone who receives reimbursement for the drug. Accordingly, I am not surprised that Dr. Bell had never heard of such a thing.

7.      Centocor does negotiate discounts or rebates with certain payors, such as health plans and managed care organizations. These entities in turn provide reimbursement to physicians and hospitals. The discounts and rebates they receive have the effect of *reducing* their net reimbursement cost. Centocor does not offer discounts, rebates or administration fees to PBMs.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 19, 2005

_____
John Hoffman