Exhibit F

```
1            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
2
   * * * * * * * * * * * * * *
3  CITIZENS FOR CONSUMER       *
   JUSTICE, et al              *
4       Plaintiffs,            *
                               *
5          vs.                 *    CIVIL ACTION
                               *    No. 01-12257-PBS
6  ABBOTT LABORATORIES,        *
   et al                       *
7       Defendants.            *
   * * * * * * * * * * * * * *
8
          BEFORE THE HONORABLE MARIANNE B. BOWLER
9            UNITED STATES MAGISTRATE JUDGE
                    MOTION HEARING
10
   A P P E A R A N C E S
11
        HAGENS BERMAN LLP
12        One Main Street, 4th Floor
        Cambridge, Massachusetts 02142
13        for the plaintiffs
        By: Thomas M. Sobol, Esq.
14

15        SPECTOR, ROSEMAN & KODROFF, P.C.
        1818 Market Street, Suite 2500
16        Philadelphia, Pennsylvania 19103
        for the plaintiffs
17        By: Jeffrey L. Kodroff, Esq.

18

19

20

21                  Courtroom No. 17
                  John J. Moakley Courthouse
22                  1 Courthouse Way
                  Boston, Massachusetts 02210
23                  September 27, 2004
```

10:30 a.m.

24

25

2

1    APPEARANCES, CONTINUED

2

3
        THE WEXLER FIRM LLP
4         One North LaSalle Street, Suite 2000
        Chicago, Illinois 60602
5         for the plaintiffs
        By: Kenneth A. Wexler, Esq.
6

7         LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
        230 Park Avenue, Suite 1160
8         New York, New York 10169
        for the defendants
9         By:  David A. Schulz, Esq.

10       MURPHY & RILEY, P.C.
        141 Tremont Street
11        Boston, Massachusetts 02111
        for the defendants
12        By: Richard J. Riley, Esq.

13       KELLEY DRYE & WARREN LLP
        101 Park Avenue
14        New York, New York 10178
        for the defendants
15        By: Christopher C. Palermo, Esq.

16

        THE HEARST CORPORATION
17        959 Eighth Avenue
        New York, New York 10019

2

18      for the defendants
        By: Eve Burton, Esq.
19

20

21

22

23

24

25

3

1   APPEARANCES, CONTINUED

2       KAYE SCHOLER LLP
        425 Park Avenue
3       New York, New York 100022-3598
        for the defendants
4       By: Saul P. Morgenstern, Esq.

5

        WILMER CUTLER PICKERING HALE and DORR LLP
6       60 State Street
        Boston, Massachusetts 02109
7       for the defendants
        By: Karen F. Green, Esq.

8

9       HOGAN & HARTSON LLP
        875 Third Avenue
10      New York, New York 10022
        for the defendants
11      By: Lyndon M. Tretter, Esq.
        Steven M. Edwards, Esq.

12

3

```
13        DAVIS POLK & WARDWELL
          450 Lexington Avenue
14        New York, New York 10017
          for the defendants
15        By: Kimberly D. Harris, Esq.

16
          HOLLAND & KNIGHT, LLP
17        10 St. James Avenue
          Boston, Massachusetts 02116
18        for the defendants
          By: Geoffrey E. Hobart, Esq.
19
          FOLEY HOAG LLP
20        155 Seaport Boulevard
          Boston, Massachusetts 02210
21        for the defendants
          By: Nicholas C. Theodorou, Esq.
22

23

24

25
```

4

```
1    APPEARANCES, CONTINUED

2        SHOOK, HARDY & BACON LLP
         2555 Grand Boulevard
3        Kansas City, Missouri 64108-2613
         for the defendants
4        By: James P. Muehlberger, Esq.

5

6        NIXON PEABODY LLP
         101 Federal Street
```

4

```
 7       Boston, Massachusetts 02110
         for the defendants
 8       By: Robert P. Sherman, Esq.

 9
         SHERIN AND LODGEN LLP
10        101 Federal Street
         Boston, Massachusetts 02110
11        for the defendants
         By: James W. Matthews, Esq.
12

13        BINGHAM McCUTCHEN
         150 Federal Street
14        Boston, Massachusetts 02110-1726
         for the defendants
15        By: Joseph L. Kociubes, Esq.

16
         LAREDO & SMITH, LLP
17        15 Broad Street, Suite 600
         Boston, Massachusetts 02109
18        for the defendants
         By: Mark D. Smith, Esq.
19

20        ROPES & GRAY
         One International Place
21        Boston, Massachusetts 02110
         for the defendants
22        By: Eric P. Christofferson, Esq.
            John T. Montgomery, Esq.
23

24

25
```

5

 1   APPEARANCES, CONTINUED

2

3      BONNER KIERNAN TREBACH & CROCIATA
       One Liberty Square
4      Boston, Massachusetts 02109
       for the defendants
5      By: John A. Kiernan, Esq.

6

7      COVINGTON & BURLING
       1201 Pennsylvania Avenue NW
8      Washington, D.C. 20004-2401
       for the defendants
9      By: Mark H. Lynch, Esq.

10

       SONNENSCHEIN NATH & ROSENTHAL LLP
11      1301 K Street N.W., Suite 600
       East Tower
12      Washington, D.C. 20005
       for the defendants
13      By: Elizabeth I. Hack, Esq.

14

       DWYER & COLLORA, LLP
15      600 Atlantic Avenue
       Boston, Massachusetts 02210-2211
16      for the defendants
       By: Joseph E. Haviland, Esq.
17

18

       PATTERSON, BELKNAP, WEBB & TYLER LLP
19      1133 Avenue of the Americas
       New York, New York 10036
20      for the defendants
       By: Andrew D. Schau, Esq.
21

22

23

24

6

25

6

1    APPEARANCES, CONTINUED

2
         KIRKPATRICK & LOCKHART LLP
3         75 State Street
         Boston, Massachusetts 02109
4          for the defendants
         By: Michael DeMarco, Esq.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

7

19

20

21          CAROL LYNN SCOTT, CSR, RMR
           Official Court Reporter

22          One Courthouse Way, Suite 7204
           Boston, Massachusetts 02210

23           (617) 330-1377

24

25

7

1          P R O C E E D I N G S

2          THE COURT:  Please be seated.

3          THE CLERK:  Today is Monday, September 27,

4  2004.  The case of Citizens for Consumer Justice, et al

5  versus AbbotT Laboratories, et al.  Civil action No.

6  01-12257 will now be heard before this Court.

7          Would counsel please identify themselves for the

8  record.

9          MR. SOBOL:  Good morning, Your Honor.  Tom

10  Sobol, Hagens Berman, for the plaintiffs.

11         THE COURT:  Thank you.

12         MR. KODROFF:  Jeffrey Kodroff, Spector,

13  Roseman & Kodroff, also for the plaintiffs.

8

12          THE COURT: And when was that filed?

13          MR. SOBOL: That was filed on September 10.

14    And the defendants filed a response --

15          MS. HARRIS: September 20th.

16          MR. SOBOL: -- September 20th.

17          THE COURT: So do we have everyone here?

18          MR. SOBOL: We have everybody here. And I

19    think we are ready to argue. We did try to resolve it. We

20    are not in a position to resolve it. Because it is an

21    emergency motion and involves depositions that are scheduled

22    this week, next week, the week after, the plaintiffs would

23    like to go forward with it. It's docket entry 1015.

24          THE COURT: All right. I have it before me.

25    When was opposition filed?


117

1          MR. SCHAU: September 20th, Your Honor.

2          THE COURT: Okay. Docket entry 1062. All

3    right. I will hear you.

4          MR. SOBOL: Thank you, Your Honor.

5          Just to make sure the record is clear, so the

6    motion is 1015. And there is a memo of law regarding it at

7    1016 and a declaration of my partner Mr. Matt, 1017.

8         The relief that we seek is --

9         THE COURT:  I am not familiar, okay.  These

10   papers I have not read.

11        MR. SOBOL:  You have not read.  Okay.

12        The motion seeks protection to limit the amount of

13   third party depositions that can be taken each day and

14   during a week and the amount of notice that needs to be

15   given.

16        The specific relief is that the Court enter an

17   order saying that no more than five third party -- I think

18   it should be nonparty.  They're not parties, not third

19   parties.

20        No more than five nonparty depositions can occur in

21   a single week and that no more than two nonparty depositions

22   occur in any one day.

23        And, three, that the Court enforce the 21-day

24   notice requirement for depositions as is set forth in

25   CMR 10.

118

145

1       Now, the basis for the motion arises out of

2    essentially the following background.

3       The defendants, as I understand it, have served

4    approximately 150 subpoenas to nonparties in this case.

5    Those nonparties include unnamed class members, wholesalers,

6    pharmacies, multiple different kinds of entities.

7       With respect to depositions -- excuse me -- on

8    absent class members, meaning health plans, that kind of

9    thing, our numbers -- but we're not even sure exactly how

10    many -- about 94 deposition subpoenas have been served on

11    unnamed class members.

12       Now, many of these deposition subpoenas were served

13    months ago but have not been pressed until recently.  And as

14    we understand it, and my partner who has been in charge for

15    most of these efforts has set these forth in his

16    declaration, has indicated that there are as many as seven

17    depositions scheduled in a week or something like that.

18    Sometimes more than even two in a day, though I think that's

19    occurred more recently.

20       And that the defendants appear to articulate a need

21    that they need to undertake all of these nonparty

22    depositions before the time that they filed their opposition

23    to the motion for class certification.

146

24        Now, our position on this is essentially the

25   following:


119

1         This court -- it is us one thing to allow robust

2    discovery obviously by a defendant or a group of defendants.

3    But here the number of nonparty subpoenas that these

4    defendants have served shows no conscience whatsoever about

5    how many non-litigants to this litigation they will have to

6    serve with subpoenas in order to obtain what they have to

7    acknowledge is going to be completely cumulative evidence at

8    some point.

9         Now, it is not just these depositions, of course,

10   that are available for the defendants between now and the

11   time the class certification opposition is due.

12        What we have -- we have proffered no restriction

13   with respect to depositions of the parties in the case.  The

14   defendants have already scheduled four deposition days with

15   two experts in the case as well that they will get the

16   opportunity to do.  You have already heard, you know, other

17   discovery matters and the information that they would have.

18        And so the notion here essentially is to put some

147

19    kind of limit -- and we are not even asking for a total

20    limit, you know.  What we are simply saying is asking to

21    marshal things through, that there has to be some kind of

22    regard to the fact that people have to have an idea about

23    what depositions are going to occur sufficiently in advance.

24    People would ask how many would occur in a day and how many

25    in a week, that kind of thing.


120

1         Now, we do have a team of people, it's not as if we

2    have just one person handling it.  My partner has

3    administrative responsibility but we have designated five

4    lawyers to help defend depositions or work with absent class

5    members.

6         They're entitled to be educated about the case

7    beforehand.  They're entitled to have their own counsel

8    beforehand.  And they're entitled to be able to schedule, to

9    have an idea about when these things need to be undertaken.

10        Now, it could be under our proposed limits -- if

11    they're even called "limits" because they're really pretty

12    broad -- that between now and the time the class

13   certification opposition is due --

14          THE COURT:  That date being?

15          MR. SOBOL:  I think it's October 28th.

16          MS. HARRIS:  25th.

17          MR. SOBOL:  25th, that there could be about

18   three or four weeks of depositions of nonparties.  And under

19   our "limits" they would have about fifteen or twenty

20   depositions under their belt because if they did the maximum

21   of five per week.

22       Now, in addition to that, of course, they'd also be

23   able to take the depositions of our expert and the

24   depositions of the plaintiffs as well.

25          THE COURT:  Well, five a week, I mean, are


121


1    they complicated depositions?  Sometimes depositions, you

2    can do two in a day.

3           MR. SOBOL:  Well, we've also suggested doing

4    two in a day as well.  But --

5           THE COURT:  But that would be ten a week.

6           MR. SOBOL:  Right.  I mean, at some point, you

7    know, it becomes almost a mechanistic thing, at least from

149

8    the defendants' point of view. They have a series of

9    questions they want to ask about how it is that they have

10   reimbursed, they've spent the money on drugs or what they

11   did or didn't meet (ph.). That's what they're trying to do.

12       It's not as if, in other words, that there is going

13   to be a difference if they took frankly, you know, eight of

14   these depositions or eighty of these depositions. They're

15   going to have certain points that they think are ultimately

16   different.

17       It really is, when all is said and done, because

18   they have the power of numbers to be able to do this and to

19   be able to essentially go after a huge number of health

20   plans in the case, they're going to be able to do it,

21   they're essentially trying to pad the argument they're going

22   to make, putting a very significant burden on our time.

23       And each of the specific limits that we have

24   outlined are, you know, intended to, you know, be

25   reasonable. Again, so five depositions, you know, in a

122

1    week, no more than two in a day helps marshal resources.

150

2      And then the notice requirement is something that

3   Judge Saris had in her order about 21 days ahead of time.

4   It's not just for lawyers to be able to fiddle with their

5   schedule, that kind of thing, but it's also to be able to

6   provide people a reasonable time to educate themselves

7   regarding the issues in the case.  Because the defendants'

8   effort obviously is to get certification denied, that would

9   affect the material rights of these deponents, even though

10  they're nonparties.

11     So for those reasons we think that -- we feel that

12  some reasonable restraints on the fact that such a huge

13  number of subpoenas have been sent out without, again, there

14  is no real careful effort to try to say, well, here are

15  really the ten we need or the fifteen that we need.

16     THE COURT:  All right.  Why shouldn't I allow

17  this motion.

18     MR. SCHAU:  Your Honor, my name is Andrew D.

19  Schau.  I represent the Johnson & Johnson defendants.

20     And because we weren't originally scheduled, I

21  didn't enter an appearance before so I apologize for that.

22     Your Honor, it is certainly true that we are taking

23  a lot of discovery --

24     THE COURT:  You have an appearance in now I

151

25    take it?

123

1       MR. SCHAU: I believe that was my intention.

2    Andy Schau, S-C-H-A-U --

3       THE COURT: We have a form that you have to

4    fill out.

5       MR. SCHAU: I will take care of that. I'm

6    sorry.

7       It is certainly true that we are taking a lot of

8    discovery. And it is absolutely essential that we take that

9    discovery. And it is absolutely false that we are taking

10   more than we need.

11      THE COURT: How many do you need to do between

12   now and the 30th of October?

13      MR. SCHAU: Well, I can assure you that we are

14   not going to be able to get all that we want in.

15      THE COURT: Okay. Let's compromise on a

16   reasonable number here now.

17      MR. SCHAU: Your Honor, it seems to me that if

18   we could take ten a week, that would include some days when

19   we double up, it might even include some days when we have

152

20   to triple up, because these things are being set at the

21   behest of the third party --

22            THE COURT:  I mean, are they short

23   depositions?

24            MR. SCHAU:  They sometimes last a day.  They

25   sometimes last considerably less than a day.


124

1            The problem, Your Honor, if I could give you a

2   little bit of history here, is we began the process of

3   subpoenaing third parties last October.  As soon as we did

4   so, the plaintiffs wrote a letter to the recipients of our

5   subpoenas saying don't respond.  We plan to make a motion to

6   protect you from any discovery because you're absent class

7   members.

8            They then made a motion in December before Judge

9   Saris.  She didn't decide it until March of 2004 in which

10   case she denied that motion in its entirety and allowed us

11   to go forward.

12            So for four months we pooled arguments.  Not only

13   could we not get documents from them because they wrote to

153

14  these parties and said don't produce them, but we couldn't

15  even begin the process of trying to get those documents

16  until Judge Saris ruled. So they put us in a huge hole.

17      We now have tried to get documents from third

18  parties, large health plans, people they say are part of

19  their class, people they say are injured.

20      And let's keep in mind the scope of this case, Your

21  Honor. There are dozens of companies who have been sued on

22  hundreds of drugs involving allegedly millions of victims.

23  And they're claiming billions and billions in damages.

24      So I make no apology for the effort we are

25  undertaking to try to defend ourselves in this case.


125


1      But I do blame plaintiffs for that four-month

2  delay. And unfortunately Judge Saris set a schedule which

3  is very, very tough on five of us, including the Johnson &

4  Johnson entities. Those track one or fast track defendants

5  have to respond to a class certification motion on

6  October 25th, which if granted will make this case

7  exponentially larger than it would otherwise be.

8      We are willing to work with the plaintiffs and have

154

9   worked very hard with the plaintiffs to coordinate this. We

10   exchanged with them each week, and sometimes more often

11   that, a list of the depositions that are coming up. And,

12   Your Honor, they have twenty law firms dedicated to this

13   case.

14        They have decided by themselves to put a much

15   smaller team of lawyers into the defense of this discovery.

16   And when they made this particular motion for protective

17   order, unlike every other motion they filed, they only

18   listed five counsel as being part of representing the

19   plaintiffs' class. They normally list all twenty. I think

20   that was intentional.

21        We have a lot to do. We are working very hard to

22   make it possible and feasible for them to attend every

23   deposition. Sometimes they have attended by telephone.

24   Sometimes they have come in person. But this is a --

25        THE COURT: Where are these depositions being

126

1   conducted?

2        MR. SCHAU: They are being conducted at

155

3      whatever location of business the third party is at. We are

4      scheduling them at the convenience of the third parties.

5      Not our own and not the plaintiffs.

6           But the plaintiffs' firms reside all over the

7      country. And they have, you know, so some trips are shorter

8      than others. But we are all undergoing the burden of taking

9      these depositions where the third parties are located.

10          THE COURT: So tell me your plan.

11          MR. SCHAU: Your Honor, you're asking me to

12     unilaterally limit the amount of discovery we can take. And

13     I understand that that's what you're asking.

14          THE COURT: I am.

15          MR. SCHAU: That said --

16          THE COURT: Bare bones.

17          MR. SCHAU: It seems to me that ten a week

18     between now and October 25th is not unreasonable. And we

19     will do our best, as we have in the past, to continue to

20     coordinate and provide ample information in advance to the

21     plaintiffs of when those depositions are and where they will

22     take place.

23          THE COURT: And you have no objection to the

24     opposing side appearing by telephone?

25          MR. SCHAU: Absolutely none.

156

127

1          THE COURT:  That makes it easier.

2          MR. SOBOL:  Well, it makes it -- so far what

3    has occurred, of course, is sometimes it might be necessary

4    because you're only given several days' notice and people

5    can't get there is part of the problem.

6          I will say this.  I will make a countersuggestion,

7    okay, which I think is reasonable.  But as Your Honor can

8    tell, the defendants have essentially just now conceded that

9    this has been an issue that they have been able to go

10   full-bore on since last March.

11         And having waited the spring and waited the summer,

12   and now that we're into the fall, saying we have to do all

13   this all at once is sort of suspect as to whether or not

14   they really need this ten that they say.  Because if they

15   really needed it, it's something that would have been done

16   back in March and April and May, June, July and all the rest

17   of that.  So you don't know that they really need it.

18         Now, I think that there are, again, there are three

19   issues that are out there.  There is how many in the week,

20   how many in the day and how much notice do we get because

157

21   they can mark up a deposition at the convenience of the

22   deponent and themselves and then we're just told to be

23   there.

24        THE COURT:  Okay.  Let's talk about notice.

25        MR. SOBOL:  Judge Saris has issued an order


128


1    saying 21 days.  If they have shown good cause why that CMO

2    should not be changed --

3        THE COURT:  I mean, that 21 days obviously

4    creates a problem at this point.

5        MR. SCHAU:  Sure.

6        The other answer to that, Your Honor, is that the

7    21 day rule applies to, you know, we've given them more than

8    21 days notice of all of these depositions.  It's just then

9    you have to actually schedule it.  So they know what --

10       THE COURT:  Okay.  Well, we are down to the

11   wire now.  What can you live with?

12       MR. SOBOL:  Okay.  Ten is way too many for our

13   firm to be able to deal with.  If it's something like six a

14   week and we were doing two in a day, we need at least a week


158

15    and a half notice because, again, we have to coordinate with

16    these people.

17        It's not a matter of getting people on planes.

18    It's a matter of speaking to their counsel, making sure that

19    they have counsel and making sure that they know what the

20    consequences are of their testimony.

21        THE COURT: Ten a week, seven days' notice.

22        MR. SCHAU: Your Honor, one clarifying

23    question. Does that include the depositions that were

24    scheduled for this week, which would then have to be put

25    off? We would essentially lose a week.


129


1        THE COURT: How many are scheduled for this

2    week?

3        MR. SCHAU: I'm not certain of this but I

4    believe it's in the neighborhood of five or six.

5        THE COURT: I am going to let them go forward.

6    Let's make some progress here.

7        MR. SCHAU: Thank you, Your Honor.

8        THE COURT: All right.

9        Now, that leaves us with a hearing date for

159