# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO<br>*State of Nevada v. Abbott Labs., Inc. et al.*,<br>    Case No. CV02-00260 (Nevada I), | Chief Magistrate Judge Marianne B. Bowler |
| *State of Nevada v. American Home Products, et al.*,<br>    CA No. 02-CV-12086-PBS (Nevada II), and | |
| | **ORAL ARGUMENT REQUESTED** |
| *State of Montana v. Abbott Labs., Inc., et al.*<br>    CA No. 02-CV-12084-PBS | |

**DEFENDANTS' EMERGENCY MOTION FOR AN ORDER HOLDING PLAINTIFFS IN CONTEMPT, FOR PRESERVATION OF POTENTIALLY RELEVANT DOCUMENTS, AND FOR AN ACCOUNTING OF SPOLIATED DOCUMENTS**

In depositions conducted on November 15-17, 2005, Defendants learned for the first time that Plaintiffs have not taken any steps to prevent the destruction of potentially relevant documents in these cases. Plaintiffs subsequently have refused to take any steps to rectify this situation. The failure to preserve potentially relevant documents is a grave breach of a specific Court order in this case and of Plaintiffs' general responsibilities under the law, and must be remedied immediately. Defendants therefore ask the Court to issue an order requiring Plaintiffs to comply with their legal duty to preserve potentially relevant documents. This motion seeks a finding that Plaintiffs are in contempt and a court order requiring Plaintiffs to institute document

holds and make an accounting of the relevant material that has been lost so that the parties and the Court can address appropriate sanctions.

## I.  FACTUAL BACKGROUND

**A.    Procedural History**

On January 17, 2002, Plaintiff State of Nevada filed its initial complaint in *Nevada v. Abbott Laboratories, et al.,* Case No. CV02-00260 (2d Jud. Dist. Ct.) (*"Nevada I"*).  On February 25, 2002, Plaintiff State of Montana filed its initial complaint in *Montana v. Abbott Laboratories, et al*.  Plaintiffs allege that Defendants reported inflated AWP and other pricing information to the detriment of the Plaintiffs' Medicaid programs and their citizens, who make payments based on AWP either as part of the federal Medicare program or under third-party health insurance contracts.  Plaintiffs seek to recover for these AWP claims on their own behalf and acting as *parens patriae* on behalf of their citizens.[1]

On July 23, 2002, Judge Saris issued Case Management Order No. 2 ("CMO No. 2"), which provided that "[a]ll parties acknowledge their responsibilities to take reasonable steps to comply with the law regarding preservation of documents."  CMO No. 2 ¶ 9.  On May 3, 2005, Defendants served their First Set of Interrogatories and Requests for Production of Documents to the Plaintiffs States of Nevada and Montana.  *See* Exs. 1 & 2.

**B.    Plaintiffs' Failure to Preserve Documents**

    **1.    The State of Nevada's Failure to Preserve Documents**

Pursuant to Defendants' request for documents, Nevada produced a records retention policy for the Division of Health Care Financing and Policy ("DHCFP"), the agency that

---

[1]  On or about March 7, 2002, Plaintiff filed its complaint in *Nevada v. American Home Products*, CA No. 02-CV-12086-PBS (D. Mass.) (*"Nevada II"*).  Plaintiffs have since filed multiple amended complaints in the Nevada and Montana actions but the core AWP allegations have remained the same.

manages the State's Medicaid program. *See* Ex. 3 ("Nevada Retention Policy"). The Retention Policy states that "[c]ertain events (*i.e.,* Disposition Holds) may occur that will require a stop to disposition procedures." *Id*. at NV 03761. It further explains that "Disposition Holds include . . . Litigation" and provides guidance on how an agency should proceed under such circumstances:

> When an agency receives notification that a lawsuit has been filed against (or on behalf of) them, they should immediately consult their legal counsel and/or the Attorney General's Office. All records pertaining to the litigation should be identified, separated from other files and protected. All destruction of records pertaining to the lawsuit must be stopped until the legal action has been resolved.

*Id*. The remainder of the document establishes a retention schedule for various categories of documents based on their subject matter. Most categories of documents, including several pertaining to the subject matter of this litigation, need not be retained for more than three or six years.[2]

On November 15-17, 2005, Defendants deposed three Nevada employees: (i) Charles Duarte, the Administrator of DHCFP, who was deposed as a Rule 30(b)(6) witness on behalf of the State; (ii) Mel Rosenberg, an information systems manager; and (iii) John Liveratti, DHCFP's chief of compliance.

As the Administrator of DHCFP, Charles Duarte is responsible for overall policy and administration. *See* Ex. 4 (Excerpts from Rough Transcript of Duarte Deposition) at 63.[3] Mr. Duarte testified that DHCFP had not issued a "disposition hold" as provided for in the Nevada

---

[2] Examples of document categories pertaining to this litigation include: (i) "Medicaid Recipient Files" (retained for six calendar years); (ii) "Medicaid Reimbursements" (retained for six fiscal years); and (iii) "Post Payment Review of Payment Accuracy for Medications covered by Title XIX" (retained for three fiscal years). Ex. 3 at NV 03778; NV 03782.

[3] The attached excerpts from the Duarte and Rosenberg depositions are from the rough drafts of those transcripts, as Defendants have not yet received the final versions.

Retention Policy. *Id*. at 103. Specifically, he stated that DHCFP had not issued any notice to personnel regarding this litigation and their responsibility to retain documents while it is pending. *Id*. at 104. Regarding electronic documents, Mr. Duarte testified that since he arrived at DHCFP in 2000, the State has not had any retention policy for such documents. *Id*. at 110. He further testified that DHCFP personnel had not been instructed to retain electronic documents responsive to discovery requests. *Id*. at 111.

Since 2003, Mel Rosenberg has been the head of DHCFP's information technology unit, which is responsible for the support and maintenance of DHCFP's computing infrastructure. *See* Ex. 5 (Excerpts from Rough Transcript of Rosenberg Deposition) at 16. His testimony confirmed that the State's retention policy does not require the retention of documents in electronic form, including electronic mail. *Id*. at 21. Mr. Rosenberg further stated that he is unaware of any efforts since the initiation of this litigation to preserve potentially relevant electronic documents. *Id.* at 24-25, 43-44, 61. Additionally, Mr. Rosenberg noted that he is personally unaware of any disposition hold that has been effected with regards to this litigation since his arrival at DHCFP in February 2003. *Id*. at 24.

John Liveratti's responsibilities as compliance chief include, among other things, ensuring internal compliance with DHCFP policies, *see* Ex. 6 (Transcript of Liveratti Deposition) at 41, conducting public hearings on state plan amendments regarding reimbursement rates, *id.* at 42-43, and reviewing provider and beneficiary complaints, *id.* at 28-29, 41. Mr. Liveratti was partially responsible for organizing the search for documents responsive to Defendants' requests. *Id.* at 59-69; *see also* Ex. 4 (Duarte Dep.) at 109. Like Messrs. Duarte and Rosenberg, however, he stated that he was unaware of any disposition hold that had been effected with regards to this litigation. *Id*. at 53-54. He confirmed that he

personally had not received any instructions to preserve documents related to this litigation. *Id*. at 54. Indeed, Mr. Liveratti stated that he first learned of this litigation in approximately May 2005. *Id.* at 17-18. In response to questions about preservation efforts, Mr. Liveratti added that "we found out about this about five months ago." *Id.* at 54. Mr. Liveratti testified that he was unaware of any efforts, between 2002 and when he first learned of the case, to preserve potentially relevant documents. *Id.* at 55. Additionally, he could not guarantee that relevant documents had not been destroyed after Defendants had served their document requests. *Id.* at 54. Like Mr. Rosenberg, Mr. Liveratti stated that he was unaware of any efforts to preserve emails, or the files of departing DHCFP employees, to ensure that relevant documents were not destroyed. *Id.* at 55.

Following the depositions, counsel for Defendant GSK wrote to counsel for the State of Nevada expressing Defendants' concerns about Nevada's failure to preserve documents and giving Nevada until December 2, 2005, to take appropriate document retention measures. *See* November 23, 2005, letter from Jason Litow to Jeniphr Breckenridge and L. Timothy Terry (attached as Ex. 7). The State has failed to respond to that letter, thus necessitating this motion.

    **2.**    **The State of Montana's Failure to Preserve Documents**

Pursuant to Defendants' request for documents, Montana produced a General Records Retention Schedule issued by Montana's Records Management Bureau. The document establishes a retention schedule for various categories of documents based on their subject matter. Many categories of documents need not be retained for more than three or six years. Montana also produced various documents related to Montana's records retention policy. For example, Montana produced a document from the Montana Secretary of State website labeled "Managing Public Records." *See* Ex. 8. In a section of this document entitled "Disposing of and

5

Destroying Records," the Secretary of State provided the following instruction to other offices within the State of Montana:

> In the event of a **lawsuit** against your office, agency, or department, it is very important that you stop the destruction of records that might be pertinent to the suit, even if the records have met their scheduled retention period. If a judge thinks you intentionally destroyed pertinent records, your agency could be sanctioned.

Ex. 8 at MT 03365 (emphasis in original).

After Defendants discovered, at the November 15-17 depositions, that Nevada had not instituted a hold order to preserve relevant documents, counsel for Defendant Immunex Corporation requested a meet and confer with counsel for the State of Montana. The meet and confer occurred on November 23, 2005. During the telephonic conference, counsel for Defendant Immunex Corporation asked whether the State of Montana had issued a litigation hold to halt the destruction of documents relevant to this action, which the State commenced over three years ago. Montana's counsel could not confirm that such a litigation hold had been issued and also stated that, as to electronic documents, the State was recycling or destroying documents "every 30 days." On November 23, during the meet and confer, Montana's counsel agreed to confirm whether and if any hold order has been implemented in Montana to preserve relevant documents.

On December 1, counsel for Defendant Immunex Corporation wrote to counsel for the State of Montana, repeating its request for confirmation regarding the litigation hold and giving the State of Montana until December 5 to confirm the date any such hold order was implemented and to confirm that its scope covered all State employees, file holders, and documents potentially responsive to defendants' discovery requests or otherwise relevant to this action. *See* Ex. 9 at 4.

6

As of the filing of this motion, Defendants still have not heard an answer regarding the question of whether the State of Montana ever initiated a proper litigation document hold.

## II.  ARGUMENT

### A.  Duty To Preserve Documents

Plaintiffs' failure to preserve documents violates CMO No. 2 and is contrary to well-established law and Plaintiffs' own retention policies.  Parties to a litigation are under a duty to preserve potentially relevant documents.  *See McGuire v. Acufex Microsurgical, Inc.*, 175 F.R.D. 149, 153 (D. Mass. 1997) (holding that the parties had incurred obligations "to preserve evidence relevant to the plaintiff's claims"); *Townsend v. Am. Insulated Panel Co.,* 174 F.R.D. 1, 5 (D. Mass. 1997) (acknowledging that "[a] litigant has a duty to preserve evidence") (quoting *Vazquez Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 11-12 (D.P.R. 1997)) (alteration in original).[4]  This duty of preservation requires parties not only to refrain from the intentional destruction of documents, but also to suspend routine document destruction policies.  *See Kelley v. United Airlines, Inc.*, 176 F.R.D. 422, 427-428 (D. Mass. 1997) (sanctioning defendants for failure to search for and preserve relevant documents that may have been destroyed pursuant to a document retention policy).[5]

Plaintiffs' duty to preserve documents arose at least when they filed their complaints in January 2002 (for Nevada) and February 2002 (for Montana), *see McGuire*, 175 F.R.D. at 153, and that duty was reinforced by a specific order of this Court, entered in July 2002.  Yet, as of November 2005, Plaintiffs have not made any efforts to preserve potentially relevant documents.

---

[4]  *See also Fire Ins. Exchange v. Zenith Radio Corp.*, 747 P.2d 911, 914 (Nev. 1987) (holding that a litigant "is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action").

[5]  *See also Reingold v. Wet 'n Wild Nevada, Inc.*, 944 P.2d 800, 802 (Nev. 1997) (sanctioning defendant for destruction of records pursuant to a routine records retention policy).

**B.      Plaintiffs' Disregard of Their Obligation to Preserve Documents**

As discussed above, as of November 2005, the State of Nevada, in contravention of this Court's order, relevant case law and its own retention policy, had not issued a disposition hold on DHCFP documents.  Neither had the State provided any other formal notification to DHCFP employees to prevent the destruction of potentially relevant documents.  Indeed, Mr. Liveratti, whose job responsibilities are directly related to matters involving reimbursement for prescription drugs and internal compliance with DHCFP policies, stated that he was unaware of the litigation until approximately May 2005.  In addressing efforts to preserve and produce documents, he added that "we found out about this" just five months ago, suggesting there were not even *informal* efforts to preserve DHCFP documents prior to Defendants' document requests being served in May 2005 – more than three years after the commencement of litigation.

Plaintiff's duty of preservation extends not only to paper documents, but to documents maintained in electronic form as well.[6]  Yet the testimony of Messrs. Duarte, Rosenberg, and Liveratti indicate that, as of November 2005, Nevada had made *no* efforts to preserve electronic documents.

Nevada's disregard for its preservation obligations has almost certainly led to the destruction of documents central to the claims of the case.  Most documents covered by DHCFP's retention schedule, including various documents directly pertaining to this litigation, need only be retained for either three or six years.  Meanwhile, documents not subject to the

---

[6] *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (holding that once a party reasonably anticipates litigation, it must effect a "litigation hold" that suspends the routine destruction of electronic files); *New York State NOW v. Cuomo*,  No. 93 Civ. 7146(RLC)JCF, 1998 WL 395320, at *1-2 (S.D.N.Y. July 14, 1998) (applying the duty of preservation to computer databases); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166, 168 (D. Colo. 1990) (applying the duty of preservation to computer source codes); *Thompson v. Gen. Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D. Cal. 1984) (applying the duty of preservation to "electronically readable tapes, discs and/or cards").

retention schedule, including *all* electronic documents and electronic mail, may be destroyed at will. Given that the State's claims date to 1991, it is quite probable that the State has spoliated numerous potentially relevant documents. Indeed, Mr. Liveratti could not guarantee that relevant documents were not destroyed in the past five months alone. Thus, the State's failure to institute a document hold has significantly frustrated efforts to investigate claims and defenses.

Similarly, the State of Montana has failed to confirm that it has taken any steps to prevent the destruction or deletion of potentially relevant documents since it filed this action over three years ago. Defendants' counsel asked Montana's counsel nearly two weeks ago to answer the simple question of whether Montana had implemented a litigation hold to halt the destruction of relevant documents. As of the filing of this brief, the State of Montana has failed to answer this question, so Defendants can only assume that no such hold exists. Given that the State of Montana's claims also date to 1991, it is probable that the State has spoliated numerous potentially relevant documents.

The State of Montana's reckless conduct in failing to implement a proper document hold also violates the directives of Montana's Secretary of State as to how state agencies should implement the State's records retention policy: "[I]t is very important that you stop the destruction of records that might be pertinent to the suit, even if the records have met their scheduled retention period." Ex. 8 at MT 03365. At a minimum, the State has failed to explain to the Defendants how it has complied with CMO No. 2, the general duty of preservation, and Montana's own document retention policy. At worst – which Defendants fear – the State has spoliated numerous potentially relevant documents.

**C.    The Need for An Emergency Preservation Order And An Accounting of Lost Material**

Plaintiffs' ongoing failure to preserve documents in defiance of this Court's order needs

to be rectified immediately. Although CMO No. 2 and well-established case law require Plaintiffs to preserve documents, their disregard for these obligations necessitates a more specific and direct order to ensure compliance.

The Court has the authority to remedy failures to preserve evidence on the basis of its power to remedy contempt of its orders and its inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *McGuire*, 175 F.R.D. at 153 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also Landmark Legal Found. v. Envt'l Protection Agency*, 272 F. Supp. 2d 70, 89 (D.D.C. 2003) (finding party in contempt for violating order to prevent the destruction of responsive materials). The Court may also rely on its inherent powers to issue specific preservation orders. *See, e.g.*, *Williams v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 144, 146-47 (D. Mass. 2005) (ordering defendants to preserve certain documents, hard drives and e-mail boxes); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-36, 141-43 (2004) (relying on its inherent power to order Defendant to take reasonable steps to preserve all documents and data that are relevant or may lead to the discovery of relevant information).

Accordingly, Defendants respectfully request the Court find that Plaintiffs are in contempt of court for violating CMO No. 2 and order Plaintiffs to: (i) instruct all State personnel not to destroy or delete potentially relevant documents and electronic records; (ii) take affirmative measures to prevent the inadvertent destruction and/or deletion of potentially relevant paper and electronic documents; and (iii) interview employees to determine the relevant documents that have been spoliated and make an accounting to the Court of the relevant documents that have been lost so that the parties and the Court can consider appropriate

sanctions.  Any additional discovery of the spoliation issue that may be necessary should be conducted at Plaintiffs' expense.

### III.  CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court find that Plaintiffs are in contempt of court and order Plaintiffs to: (i) instruct all State personnel not to destroy or delete documents and electronic records that are potentially relevant to these actions; (ii) take affirmative measures to prevent the inadvertent destruction and/or deletion of documents and electronic records that are potentially relevant to these actions; and  (iii) interview state employees to determine the extent of the loss of relevant records and make an accounting to the Court.

### Certification Pursuant to Local Rules 7.1 and 37.1

Pursuant to Local Rules 7.1(a)(2) and 37.1 of this Court, the undersigned counsel certifies that counsel for Defendants conferred unsuccessfully with Plaintiffs' counsel in an effort to narrow or resolve the issues presented by this motion.

### Request for Oral Argument Pursuant to Local Rule 7.1(d)

As stated in the separate motion filed simultaneously with this one, Defendants hereby request an expedited hearing on this motion.

Respectfully submitted on behalf of all
Defendants in the Nevada and Montana actions,

   /s/ Geoffrey E. Hobart
Geoffrey E. Hobart (BBO # 547499)
Mark H. Lynch
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.

        Washington, D.C.  20004
        Telephone:  (202) 662-6000
        Facsimile:  (202) 662-6291

        Mark D. Seltzer (BBO #556341)
        HOLLAND & KNIGHT LLP
        10 St. James Avenue
        Boston, MA  02116
        Telephone:  (617) 523-2700
        Facsimile:  (617) 523-6850

        Frederick G. Herold
        DECHERT LLP
        1117 California Avenue
        Palo Alto, CA  94304
        Telephone:  (650) 813-4930
        Facsimile:  (650) 813-4848

        Thomas H. Lee II
        DECHERT LLP
        4000 Bell Atlantic Tower
        1717 Arch Street
        Philadelphia, PA  19103-2793
        Telephone:  (215) 994-2994
        Facsimile:  (215) 994-2222

        *Attorneys for Defendant SmithKline Beecham*
          *Corporation d/b/a GlaxoSmithKline*

December 7, 2005

## Certificate of Service

I hereby certify that on December 7, 2005, I caused a true and correct copy of Defendants' Emergency Motion For An Order Holding Plaintiffs In Contempt, For Preservation Of Potentially Relevant Documents, And For An Accounting Of Spoliated Documents, together with accompanying exhibits, to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.

/s/ Jason R. Litow