# EXHIBIT 2



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

THIS DOCUMENT RELATES TO
STATE OF MONTANA V. ABBOTT
LABORATORIES, ET. AL.
CA NO. 02-12084-PBS

Judge Patti B. Saris

## DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO THE STATE OF MONTANA

Pursuant to Federal Rules of Civil Procedure 26, 33 and 34, Defendants request that the State of Montana ("Plaintiff") respond to the following Interrogatories and Requests for Production (the "Discovery Requests") no later than thirty days from date of service:

## DEFINITIONS

The terms used in these Interrogatories, whether or not capitalized, are defined as follows:

1.    "Amended Complaint" means the Second Amended Complaint filed by You on August 1, 2003.

2.    "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided to any Participant or Beneficiary.

3.    "AMP" means "Average Manufacturer Price" and shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

SL051080.091.DOC



4.     "AWP" or "Average Wholesale Price" means any figures so categorized and periodically published by a Publisher.

5.     "Benefits Consultant" means any Person that provides information, counsel, or advice regarding any medical benefit or service.

6.     "Best Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(c)(1)(C).

7.     "CMS" means the Centers for Medicare and Medicaid Services and all its agents, employees, commissioners, and anyone else acting on its behalf and its sub-agencies and departments, any of its predecessors, including the Health Care Finance Administration and the Social Rehabilitative Service,.

8.     "Communication" means any form of written or oral Communication, including, without limitation, letters, memoranda, electronic mail, voicemail, telegrams, invoices, telephone conversations, face-to-face meetings and other similar forms of Communication or correspondence.

9.     "Concern" and "Concerning" mean directly or indirectly referring to, relating to, regarding, constituting, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, analyzing, evidencing, discussing, or evaluating.

10.     "Defendants" means the Defendants identified in the Second Amended Complaint.

11.     "Document" shall be defined to the broadest extent permitted by Rule 34 and shall mean any kind of tangible material, whether written, recorded, microfilmed, microfiched, photographed, computerized, reduced to an electronic or magnetic impulse, or otherwise preserved or rendered, and including, but not limited to, papers, agreements, contracts, notes, memoranda, electronic or computer-transmitted messages viewed via monitor,



correspondence, letters, e-mails, facsimile transmissions, statements, invoices, record

books, reports, studies, analyses, minutes, working papers, charts, graphs, drawings,

calendars, appointment books, diaries, indices, tapes, summaries and/or notes regarding

telephone conversations, personal conversations, interviews, and meetings, and any and

all other written, printed, recorded, taped, typed, duplicated, reproduced or other tangible

matter in Your possession, custody or control, including, all copies which are not

identical to the originals, such as those bearing marginal comments, alterations, notes, or

other notations not present on the original Document as originally typed, written, or

otherwise prepared.

12.    "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term

pursuant to 42 C.F.R. § 447.301.

13.    "Federal Agencies" means each or any of CMS, HCFA, or HHS.

14.    "FUL" means "Federal Upper Limit" and shall have the meaning ascribed to that term

pursuant to 42 C.F.R. § 447.332.

15.    "HCFA" means the Health Care Financing Administration and all its agents, employees,

commissioners, and anyone else acting on its behalf.

16.    "HHS" means the United States Department of Health and Human Services, including all

its agents, employees, commissioners, and anyone else acting on its behalf.

17.    "Identify" means, with respect to a Document, to state all of the following information

except, if you simultaneously produce the Document, any category of information

apparent on the face of the Document:

      (a)     The date the Document was prepared;

      (b)     Any Identifying or descriptive code numbers, file number, Bates
number, title or label of the Document;



E-SERVED
05/03/05
05:09 PM ET
AWP-MDL No. 1456

    (c)      The full name, business address, job title, and responsibilities of the author and each Person who made any notation on the Document, or who has signed or initialed the Document, or, if it was not signed, the Person who prepared it;

    (d)      The full name, business address, job title, and responsibility of the Person to whom the Document was addressed and the name of each Person other than such addressee to whom a copy of the Document was given or sent;

    (e)      The location(s) where the Document and any copies have been stored and the identity of the Person having possession, custody or control of the Document and copies;

    (f)      Whether any draft, copy, or reproduction of the Document contains any postscript, notation, change, revision, addition, deletion or addendum not appearing on the Document itself and, if so, the substance of such additional material;

    (g)      Whether it is claimed that the Document is privileged or attorney work-product, and if so, the type of privilege claimed, whether the information contained or referred to in such Document is in the possession of any other Person(s), and if so, the identity of such Person(s) and a statement addressing how the information came into their possession, and a statement of all of the circumstances upon which You will rely to support such claim of privilege; and

    (h)      If any such Document was, but is no longer, in Your possession, custody or control or in existence, state whether it (1) is missing or lost, (2) has been destroyed, (3) has been transferred, voluntarily or involuntarily, to others, or (4) was otherwise disposed of, and in each instance, explain the facts and circumstances surrounding such disposition, Identify the Person(s) who authorized such disposition, and state the date or approximate date of such disposition.

18.    "Identify" means, with respect to a natural Person, to state all of the following information:

    (a)      His or her full name, any nickname or alias; and

    (b)      His or her present residence and business address, and if not known, his or her last known addresses and the last known dates thereof.



19. "Identify" means, with respect to any entity other than a natural Person, to state all of the following information:

     (a) The full name or title thereof, any d/b/a, and its state of incorporation (where applicable);

     (b) The principal place of business thereof;

     (c) The nature or type of entity, if known; and

     (d) The principal business thereof.

20. "Independent Practice Association" means any organized group of Providers whose members provide health care to any Participant and/or Beneficiary.

21. "Mail Order Pharmacy" means an entity that resells drugs including, without limitation, Subject Drugs, exclusively by mail to any Participant and/or Beneficiary.

22. "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

23. "MAC" or "Maximum Allowable Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 50.504 or any analogous state statute or regulation.

24. "Medicaid Rebate" means any rebate paid pursuant to 42 U.S.C. § 1396r-8 or an agreement there under

25. "NDC" means national drug code.

26. "Participant" or "Beneficiary" means a Person for whom You provide health insurance coverage, including policyholders and dependents, or any other health care or health benefits via any program.

27. "Person" means any natural person or any business, corporation, partnership, proprietorship, association, organization, governmental entity, group of Persons, or other entity of whatever nature.



28.    "PBM" means pharmacy benefits manager.

29.    "P & T" or "Pharmaceutical and Therapeutic" means any entity and/or committee responsible for making decisions regarding drugs to be included or excluded from a formulary.

30.    "Provider" means any Person that provides health care to any Participant or Beneficiary, or any person to whom Plaintiff provides reimbursement for drugs dispensed to a Participant or Beneficiary.

31.    "Publisher" means any pharmaceutical data publishing service, including but not limited to the Drug Topics Red Book ("Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First Data Bank"), Essential Directory of Pharmaceuticals ("Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

32.    "Subject Drugs" means drugs as to which Plaintiff seeks damages or discovery from Defendants.

33.    "Third Party Administrator" means any entity that provides administrative services to You concerning any medical benefit provided to any Participant or Beneficiary.

34.    "340B Provider" means any Provider described in Section 340B of the Public Health Act, 42 U.S.C. § 256(b).

35.    "Wholesaler" means any entity that purchases Subject Drugs from a Manufacturer and resells such drugs to any other Person.

36.    "True-up" means the process by which projected and actual expenditures, overpayments and underpayments, and adjustments to costs reflecting rebates (supplemental or otherwise) are settled between You and any Defendant.



37.    "You," "Your," "State," or "Plaintiff" refer collectively to Plaintiff State of Montana, any

state office, agency, or body, including but not limited to the Office of the Attorney

General, Medicaid Fraud Control Unit, the Office of the Inspector General, the

Department of Public Health and Human Services, the Medicaid Program, the state

legislature, legislative committees, all successors and predecessors, and officials, agents,

employees, commissions, boards, divisions, departments, agencies, instrumentalities,

administrators and other Persons or entities acting on their behalf and/or involved in

administering, overseeing, or monitoring any State program, including Medicaid, that

provides reimbursement for pharmaceutical products.

38.    The terms "and" and "or" have both conjunctive and disjunctive meanings, and the terms

"each," "any," and "all" mean "each and every."

39.    The singular is meant to include the plural, and vice versa.

## GENERAL INSTRUCTIONS

1.    The responses, under oath, to each Discovery Request shall include such information as

is within Your custody, possession, or control, or that of Your attorneys, investigators,

agents, employees, experts retained by You or Your attorneys or other representatives.

2.    Each Discovery Request shall be answered separately.

3.    To the extent that the answer to any Discovery Request varies for any of the agencies

defined as the "State," each agency should answer separately.

4.    Unless otherwise specified, provide all of the requested information for the period of

January 1, 1997, until the present.  If it is necessary to refer to a prior time to fully answer

a Discovery Request, please do so.



5.    If You cannot answer a Discovery Request after exercising due diligence to secure the information to do so:  (a) answer to the extent possible; (b) state the basis for Your inability to answer the remainder; (c) state whatever information or knowledge You have concerning the unanswered portion; and (d) specify the type of information that You contend is not available, the reason the information is not available to You, and what You have done to locate such information.

6.    If You decline to answer all or part of a Discovery Request based on a claim of privilege or immunity: (a) answer to the extent possible, and (b) state the specific grounds for not answering in full and the facts You contend support Your assertion of a privilege or immunity, providing sufficient information to enable the claim of privilege or immunity to be adjudicated.

7.    Provide the following information for each Document withheld on the grounds of privilege:

       (a)    its date;

       (b)    its title;

       (c)    its author;

       (d)    its addressee;

       (e)    the specific privilege under which it is withheld;

       (f)    its general subject matter; and

       (g)    a description of it that You contend is adequate to support Your contention that it is privileged.

8.    If You claim that any specific Discovery Request is objectionable, then: (a) Identify the portion of such Request claimed to be objectionable and state the nature and basis of the objection; (b) Identify any information withheld pursuant to such objections with



sufficient particularity and in sufficient detail to permit the court to determine whether information falls within the scope of such objections; and (c) answer any portion of such Request that is not claimed to be objectionable.

9.    Each Discovery Request extends to all Documents in the possession, custody, or control of You or anyone acting on Your behalf.  A Document is to be deemed in Your possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other Person and You (a) own such Document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such Document on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such Document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such Document when You sought to do so.

10.    If production is requested of a Document that is no longer in Your possession, custody, or control, Your response should state when the Document was most recently in Your possession, custody, or control, how the Document was disposed of, and the identity of the Person, if any, presently in possession, custody, or control of such Document.  If the Document has been destroyed, state the reason for its destruction.

11.    When an Interrogatory asks You to "state the basis" of or for a particular claim, assertion, allegation, or contention, please

      (a)    Identify each and every Document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the Interrogatory;

      (b)    Identify each and every Communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the Interrogatory;



(c)   state separately the acts or omissions to act on the part of any Person (Identifying the acts or omissions to act by stating their nature, time, and place and Identifying the Persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the Interrogatory; and

(d)   state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the Interrogatory.

12.   These Discovery Requests are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

## **INTERROGATORIES**

1.   Identify all Persons currently or formerly employed by or serving as a contractor to You with any knowledge of, responsibility for, involvement in, or influence on:

(a)   any claim or allegation asserted in the Amended Complaint;

(b)   the methodology the State uses to determine the amount it pays Providers as reimbursement under Medicaid or any other State program for Subject Drugs;

(c)   the negotiating, authoring, executing or otherwise contributing to, any contract, memorandum of understanding or agreement, between You and any Provider relating to AWPs for Subject Drugs or the reimbursement for Subject Drugs;

(d)   the reimbursement for any Subject Drug which exceeded Provider acquisition costs;

(e)   the processing of payments for Providers' claims for reimbursement regarding Subject Drugs;

(f)   the adoption, rejection, amendment to, consideration, or negotiation of any State supplemental rebate program;

(g)   establishing, considering, determining, calculating, or setting of the dispensing fees or fees for other professional services payable in



connection with the supply or administration of Subject Drugs by
You; and

(h)    the AWP, AMP, MAC, WAC, EAC, Best Price, or other prices,
costs, reimbursement rates, or other benchmarks for any Subject
Drug.

And for each such Person, state the subject of information that Person is likely to have.

**ANSWER:**


2.    Identify all cabinets, departments, agencies, boards, commissions, organizations,

consultants, accountants, task forces, or any other entity, including the members of such

entities, that have reviewed or analyzed, at any time, Your reimbursement of or

expenditures for pharmaceutical products or dispensing fees, including but not limited to

any State "medical care advisory committee" (42 C.F.R. § 431.12(b)).

**ANSWER:**


3.    Identify the time period and State program in which You have used AWPs recommended

by the United States Department of Justice or National Association of Medicaid Fraud

Control Units, as noted in the September 2001, HHS-OIG report, entitled "Medicaid's

Use of Revised Average Wholesale Prices" (OEI-03-01-00010), and Identify why you

have not used such AWPs during any other time period.

**ANSWER:**


4.    Identify the pharmaceutical product reimbursement methodology employed by any State

agencies or departments that have or participate in any way in a pharmaceutical benefit,

including but not limited to State Pharmaceutical Assistance Programs, Supplemental



Rebate Programs, Medicaid Rebate Programs, prison health programs, employee benefit programs, psychiatric health programs, or Veterans Health Care Act/FSS Contracting.

**ANSWER:**

5.     Identify all Persons currently or formerly employed by or representing You who have testified in any legal, legislative, or administrative forum about Your reimbursement of pharmaceutical products, costs or reimbursement rates for pharmaceutical products, pharmacy dispensing fees, or other fees for the supply or administration of pharmaceutical products, and state the legal or legislative forum and date of testimony.

**ANSWER:**

6.     For each Subject Drug, Identify each instance in which a Defendant "marketed the spread" to one or more Providers as alleged in the Amended Complaint, and for each such instance:

  (a)     Identify the Manufacturer employee who marketed the spread;

  (b)     Identify the Provider to whom the spread was marketed;

  (c)     Identify the drug that was marketed;

  (d)     Identify the place and time of the alleged marketing; and

  (e)     State the manner in which the "spread" was marketed.

**ANSWER:**

7.     For each Defendant, Identify every instance in which You allege such Defendant used discounts, rebates, free goods, charge-backs, and other financial incentives to induce



providers to purchase or administer its drugs, as alleged the Amended Complaint, and for each such instance:

    (a)    Identify the Defendant employee(s) who engaged in such acts;

    (b)    Identify the Provider to whom the alleged inducements were directed;

    (c)    Identify the drug that was marketed;

    (d)    Identify the discounts, rebates, free goods, charge-backs, or other financial incentives that were offered; and

    (e)    Identify the place and time of the alleged inducement.

**ANSWER:**

8.    For each Defendant, Identify every instance in which You allege such Defendant has ever made a representation to You concerning the meaning of the term AWP, and every instance where you allege a Defendant has knowingly, willfully, and intentionally concealed its drugs' actual average price from You as alleged in the Amended Complaint, and for each such instance:

    (a)    Identify what the "actual average price" was;

    (b)    Identify the actions of each Defendant that constituted a knowing, willful, and intentional concealment; and

    (c)    Identify whether that representation was made directly to You.

**ANSWER:**

9.    Separately as to each Subject Drug, Identify each Provider that submitted a claim for reimbursement and indicate whether the Provider is or is not a 340B Provider.

**ANSWER:**

- 13 -



10.     State, by State program, by year and by NDC, (a) the number of units and the dollar amount You paid for reimbursement to Providers for each Subject Drug, (b) the amount that You contend You overpaid for such drugs as a result of each Defendant's alleged misconduct, and (c) any true-ups that were contemplated, negotiated, initiated, completed, or transacted between You and any Defendant.

        **ANSWER:**


11.     Describe Your understanding of the Federal Supply Schedule and how, if at all, You used it and, if not, why not.

        **ANSWER:**


12.     Identify any State formulary and any State supplemental rebate program, and the scope of such program.

        **ANSWER:**


13.     Identify all periodicals, listservs, publications, associations, or other media or group to which You subscribe or belong and that publishes or distributes information concerning health care benefits, prices, costs, and reimbursement or state or federal health care benefit programs.

        **ANSWER:**


14.     Identify, by year, the amount actually paid by beneficiaries to their Providers for each of the Subject Drugs, as co-payment or otherwise, and for each instance:



(a) Identify the yearly dollar amounts requested as an aggregate figure, by beneficiary (if possible);

(b) Identify the yearly dollar amounts requested as an aggregate figure, by Defendant (if possible); and

(c) Identify what portion of the amounts paid by Beneficiaries was impacted by or depended on AWP for each Subject Drug.

**ANSWER:**

15. Identify the State program and the methods You used to determine reimbursement amounts for each NDC of each Subject Drug and how those methods changed over time. Answer separately as to claims submitted by 340B Providers versus claims submitted by other Providers.

**ANSWER:**

16. Identify any internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on behalf of You (whether or not performed by You) regarding the possible effect various reimbursement amounts or methodologies could potentially have, or were having, on beneficiary access to medicine or medical treatment; and all Persons who were involved in such internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on behalf of You (whether or not performed by You).

**ANSWER:**

17. If reimbursement for any Subject Drug was ever based on a percentage adjustment from a benchmark, explain the policy or other reasons for the percentage adjustment.



**ANSWER:**

18.  Identify any "state plan for medical assistance" (42 C.F.R. 430.0 et seq.), and any
     proposed or adopted amendments thereto.  For each "state plan for medical assistance," or
     amendment thereto, Identify each Person who participated in the creation, consideration,
     or adoption of such plan, and proposed or adopted amendment thereto, to the extent the
     Person's activity concerns AMP, MAC, EAC, FUL, Best Price, or other drug pricing
     information.

     **ANSWER:**

19.  State whether, at any time, You made any effort to ascertain or estimate any Provider's
     acquisition cost for any of the Subject Drugs and, if so, describe those efforts in detail,
     and Identify each Provider who actually received alleged "inflated amounts" of
     reimbursement from You at any time on account of any alleged fraud, scheme,
     misrepresentation, negligence, or other culpable conduct by any Defendant.

     **ANSWER:**

20.  State whether You have, by action, administrative proceeding, or otherwise, sought to
     recover alleged overpayments from the Providers who allegedly received excessive
     amounts of reimbursement as a direct or indirect result of alleged inflated AWPs and, if
     so, Identify each such action, proceeding or other recovery effort; and if not, state the
     basis for your failure to do so.

     **ANSWER:**



21.   Identify all requests by You for supplemental or additional rebates from any
      Manufacturer, including the identity of each Person making such request, whether the
      request was written or oral, the date on which each such request was made, the identity of
      each Person to whom each request was made, all drugs that any such request concerned,
      whether an agreement to provide the requested supplemental or additional rebates was a
      condition to the continued reimbursement by You of any such drugs, and whether an
      agreement to provide the requested supplemental or additional rebates was a condition to
      the continued presence of any of Defendant's products on any formulary or list of
      approved drugs.

      **ANSWER:**


22.   Identify each Third Party Administrator, Benefits Consultant, other consultant, or PBM
      contacted, considered, retained, or hired by You concerning pharmaceutical product
      prices, costs, reimbursement, utilization, or benefits.

      **ANSWER:**


23.   If You contend that Defendants are liable solely by virtue of the existence of a so-called
      "spread" between the amount reimbursed by You for a Subject Drug and the price paid by
      Providers to acquire such Subject Drug then set forth how large You contend the spread
      must be (as a percentage of Provider acquisition cost) to constitute grounds for liability.
      If you do not seek to recover the entire difference between the amount reimbursed by
      You for a Subject Drug and the price paid by Providers to acquire such Subject Drug,



State the basis or bases for such a "spread" that you accept as lawful and what

distinguishes such basis from those that you contend are unlawful.

**ANSWER:**


24.    Identify all communications between You and any other state or federal government,

including but not limited to its officials, agents employees, commissions, boards,

divisions, departments agencies, instrumentalities, administrators, and other Persons or

entities acting on their behalf, concerning usual and customary, AWP, AMP, MAC,

WAC, EAC, Best Price, or other prices, costs, reimbursement rates, or other benchmarks.

**ANSWER:**


25.    State the basis for and the specific amount of damages that You have suffered with

respect to each count against each Defendant as stated in the Amended Complaint.  In

answering this Interrogatory,

(a)    describe the methodology You employed in calculating such
damages and all assumptions made when calculating such
damages; and

(b)    Identify all Documents supporting such damages and state all
factors on which You rely in claiming such damages.

**ANSWER:**


## REQUEST FOR DOCUMENTS TO BE PRODUCED

1.    All Documents referred to or used in responding to the above interrogatories.

2.    All Documents and data concerning utilization, reimbursement, and rebate information

for any of the Subject Drugs.



3.      All Documents created, maintained, or received by You under, or which relate to your compliance with, 42 U.S.C. 1396a(a)(30), 42 U.S.C. 1396a(a)(54), 42 C.F.R. 447.201 et seq., or 42 C.F.R. 447.333.

4.      All Documents concerning any evaluations, audits, analyses, or reviews of any aspect of Your Medicaid program by the Federal Agencies or any state department or office, including but not limited to the HHS audit report Number A-07-03-0402 and the July 1996 "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under The Medicaid Drug Program of the Montana Department of Public Health and Human Services."

5.      All Documents from January 1985 to the present concerning any internal or external assessments, studies, analyses, reviews, or audits conducted by or on behalf of You or received or reviewed by You concerning pharmacy benefit costs or practices, pharmacy dispensing costs or practices, or utilization, reimbursement, or cost of pharmaceutical products.

6.      All Documents (including methodologies or protocols for databases, systems, or programs) concerning the calculation, monitoring, processing, or payment of claims for the Subject Drugs, including but not limited to examples of all Provider claim forms used during any period for which you claim damages, and communications with Providers concerning reimbursement.

7.      All Documents reflecting the most reliable data on numbers of Medicare and Medicaid dual-eligibles, pharmaceutical reimbursements for Medicare co-pays, and Medicaid rebates collected by the State with respect to such individuals.



8.    All Documents concerning the Montana Drug Rebate Program, including but not limited to any other Medicaid or State rebate programs including State Medicaid Manuals, State Medicaid Plans, State Medicaid findings concerning the operation of the Drug Rebate Analysis and Management System, and all correspondence between the State and HCFA/CMS concerning reimbursement or rebates of Subject Drugs.

9.    All Documents including or concerning Federal Supply Schedule or VA pricing for pharmaceuticals.

10.   All Documents from January 1985 to present, concerning usual and customary, AWP, MAC, WAC, AMP, EAC, Best Price, or any other possible price, cost, or reimbursement amount or benchmark or methodology for Subject Drugs, including but not limited to all communications between You and any state or federal institution, agency, department, or office.

11.   All Documents concerning all analyses or discussions of potential or actual supplemental rebate programs.

12.   All Documents concerning the State's hearing mechanism for rebate disputes.

13.   All Documents concerning Your potential or actual contractual relationships with PBMs, Third Party Administrators, Benefit Consultants, Auditors, Wholesalers, Manufacturers, Insurers, Independent Practice Associations, Retailers, Mail Order Pharmacies, Providers, Trade Associations, or Lobbyists, insofar as they cover reimbursement, purchasing, or expenditures concerning Subject Drugs, including but not limited to, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal, invoices, evidence of payments, performance reports, presentations, rebates, audit reports, drug cost models, annual client reviews, correspondence, and comments



submitted in response to public notices or proposed changes in reimbursement methodologies.

14. All Documents from January 1985 to the present concerning any requests by You for any information concerning the prices, costs, or reimbursement for Subject Drugs, including but not limited to contracts, memoranda of understanding, agreements, Provider contracts, or communications concerning the calculation, monitoring, tracking, processing, or payment of claims for Subject Drugs.

15. All Documents concerning Your decision to rely on, Your reliance on, or Your use of drug pricing information published by any Publisher.

16. All Documents created by or received from any Publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between You and any Publisher.

17. All Documents from January 1985 to present, created by or received from the Federal Agencies (including but not limited to the HHS Offices of the Inspector General, Evaluation, or Audit Services), the General Accounting Office, Congress, or any other federal institution, agency, department, or office concerning prices, costs, or reimbursement for pharmaceutical products.

18. All Documents from January 1985 to the present created by or submitted on behalf of the State concerning any Document produced in response to the prior request.

19. All Documents between You and any Participants or Beneficiaries insofar as they cover Subject Drugs, including, without limitation, summary plan Documents, detailed plan Documents, adoption agreements and/or all amendments thereto, summaries of material modifications, riders, addenda, co-payment schedules, invoices from Providers, payments



to Providers, claims materials, marketing materials, coverage materials, benefit evaluations, benefit decisions, reimbursements, discounts, medigap coverage, or correspondence.

20.   All Documents from January 1985 to present, concerning Your calculation of reimbursement amounts for the Subject Drugs, including but not limited to guidelines, instructions, manuals and the like.

21.   All data, reports, testimony, analyses, information or audits, from January 1985 to present, that You considered or that formed the basis of any decisions to discount AWP in any part of Your reimbursement formula.

22.   All Documents from January 1985 to the present concerning any internal or external assessments, studies, analyses, review or audits conducted by or on behalf of You regarding drug pricing or reimbursement amounts or rates, of Subject Drugs, including but not limited to audits of You, vendors, pharmacies, Providers or third party administrators, as well as any Documents related to any consideration of the effect of such reimbursement amounts or rates on beneficiary access.

23.   All Documents from January 1985 to present, concerning any complaint or inquiry You considered or actually made to any Defendant concerning the pricing of pharmaceutical products.

24.   All Documents concerning any Defendant's alleged use of free goods, samples, educational grants, off-invoice price inducements, or any other incentives to induce providers to purchase their drugs.



25. All Documents concerning any action, administrative or otherwise, considered or taken to recover the alleged "overpayments" from Providers who actually received the alleged "overpaid" amounts for drug reimbursement.

26. All Documents concerning any effort or plan considered or undertaken to reduce or otherwise limit Your expenditures for drugs, including but not limited to prior authorization requirements, development of formularies, use of generics, group purchasing efforts, and the like.

27. All Documents from January 1985 to present, concerning any cooperative efforts with any state considered or implemented to reduce the cost of pharmaceutical products.

28. All Documents concerning any application You made for federal funds in connection with Your Medicaid program.

29. All reports made by You or on Your behalf to any federal or state institution, agency, department, or office, regarding pharmaceutical product utilization, reimbursement, or pricing.

30. All Documents, from January 1985 to present concerning any proceedings, including but not limited to lawsuits, administrative or legislative proceedings, or criminal or civil investigations, in which Your employees or agents have testified, provided statements, or been interviewed concerning the pricing, reimbursement of pharmaceutical products, or access to care.

31. All Documents from January 1985 to the present concerning the difference between AWP and acquisition cost for any drug, including but not limited to reports issued by any government entity or agency, publications by Plaintiff or any other State, correspondence sent or addressed to Plaintiff's employees or agents, legislative materials, newspaper and



magazine articles, television and radio broadcasts, and transcripts of Congressional testimony.

32. All Documents which reflect, discuss, memorialize, or otherwise relate to the setting of reimbursement rates generally or for any Subject Drug.

33. All Documents reflecting the losses, damages, or alleged overpayments made by You as a result of Defendants' alleged conduct.

34. All Documents, from January 1985 to present concerning any alleged misrepresentation or omission by any of the Defendants which You claim You relied upon with respect to any Subject Drug.

35. All Documents, from January 1985 to present concerning each Defendants' alleged promotion, marketing, or manipulation of the alleged "spread" between the reported AWP and the actual cost of the Subject Drugs.

36. Documents sufficient to Identify the name and address of each Provider eligible to submit claims to You concerning the Subject Drugs during the relevant time period.

37. All Documents concerning any purchase of or payment or reimbursement for any of the Subject Drugs by any 340B Providers.

38. All Communications, including but not limited to e-mails, between Your employees themselves or with other parties, including but not limited to Providers, Medicaid fiscal agents and contractors, consultants, pharmaceutical companies, pharmacy associations, professional groups, and lobbyists concerning drug pricing, drug reimbursement, or dispensing fees.

39. All Documents concerning the consideration or setting of product reimbursement or dispensing fees as required by 42 C.F.R. § 447.331-333, including but not limited to all



correspondence, memoranda, analysis, agenda, meeting minutes, e-mails, costs surveys and testimony.

40. All Documents concerning any "medical care advisory committee" (42 C.F.R. § 431.12(b)) concerning utilization, reimbursement, or costs of pharmaceutical products, or dispensing fees.

41. All Documents concerning any effort or plan considered or undertaken to reduce or otherwise limit Your expenditures for drugs, including but not limited to prior authorization requirements, development of formularies, use of generics, group purchasing efforts, and the like.

42. All Documents concerning any direct purchasing agreements, collective purchasing arrangements, or other purchasing programs concerning any pharmaceutical products.

43. All Documents, from January 1985 to present concerning all Communications by the National Association of Medicaid Fraud Control Units, the National Association of Attorneys General, PAL, or any other Person concerning the prices or costs of pharmaceutical products or the calculation of reimbursement amounts or rates for such products.

44. Organizational charts or similar Document(s) that Identify Your employees involved or in any way responsible for the administration or oversight of Your Medicaid program, including but not limited to all directors or similar officials.

45. All Documents, from January 1985 to present concerning any actions taken or considered by You in response to or following any federal or state assessment, study, analysis, review, or audit concerning reimbursement of pharmaceutical products, definitions or methods of determining EAC, use of AWP, or dispensing fees.



46.   All Documents, from January 1985 to present concerning the difference between AWP
      and acquisition cost for any drug, including but not limited to reports issued by any
      government entity or agency publications by State or any other state, correspondence sent
      or addressed to State employees or agents, legislative materials, newspaper and magazine
      articles, television and radio broadcasts, and transcripts of Congressional testimony.

47.   All Documents, from January 1985 to present that compare or relate to utilization, cost,
      or reimbursement of drugs by You to utilization, cost or reimbursement of drugs by any
      other entity, including but not limited to any other state Medicaid program.

48.   Documents concerning Document retention, destruction, or public disclosure policies,
      including any changes to such policies.

49.   All Documents concerning Medicaid Rebates for the Subject Drugs, including but not
      limited to:  unit rebate amount; transactional data for all Defendants; all communications
      between You and the federal government concerning utilization and "per-unit" rebate
      data; all communications between You and any Defendant; and all memoranda, analyses
      or other Documents in Your possession concerning Medicaid Rebates for the Subject
      Drugs.

50.   Invoices for Medicaid Rebates sent to Defendant for the Subject Drugs and all
      Documents concerning such invoices.

51.   All Documents, from January 1985 to present concerning the use of AWP as a means of
      subsidizing other medical services, procedures, costs, or equipment.

52.   All Documents concerning any efforts by You to encourage use of generic
      pharmaceuticals.



53. All Documents concerning any negotiations by or on behalf of You with any Manufacturer concerning reimbursement of pharmaceutical products.

54. All Documents concerning Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"), including but not limited to Documents concerning Ven-A-Care's presentation to the National Association of Medicaid Fraud Control Units in or about March 1998.

55. All Documents compiled during the process of determining whether to file litigation.

56. All drug cost models, pricing models, drug utilization reviews, experience and actuarial analyses, assessments, studies, analyses, reviews and reports relating or referring to the Subject Drugs.


DATED: May 3, 2005.                    **PERKINS COIE LLP**


                                       By _____
                                          David J. Burman
                                          Kathleen M. O'Sullivan
                                          Zoe Philippides
                                       Attorneys for Defendant Immunex
                                       Corporation
                                       On behalf of all Defendants



## <u>CERTIFICATION</u>

I have read the foregoing responses and objections to these discovery requests and certify that to the best of my knowledge, information and belief, formed after a reasonable inquiry, they comply with the requirements of CR 26(g).

DATED this _____ day of _____, 2005.

**HAGENS BERMAN LLP**


By _____
      Steve W. Berman, WSBA #_____
Attorneys for Plaintiff



## VERIFICATION

STATE OF _____ )
                              ) ss:
COUNTY OF _____ )
I am the _____ for _____ and as such am authorized to verify on its behalf the responses to discovery requests set forth above. I certify that I have read the foregoing discovery requests and the responses thereto and believe them to be true and correct.

_____

SUBSCRIBED AND SWORN to before me this _____ day of _____, 20____.

_____
(Signature of Notary)

_____
(Print or stamp name of Notary)

NOTARY PUBLIC in and for the State
of Washington, residing at _____.
My Appointment Expires: _____.

- 29 -