# EXHIBIT 6

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


-o0o-                          CERTIFIED COPY


In re:  PHARMACEUTICAL              MDL DOCKET NO.

INDUSTRY AVERAGE WHOLESALE          CIVIL ACTION

PRICE LITIGATION                    01CV12257-PBS


THIS DOCUMENT RELATES TO:

ALL ACTIONS


DEPOSITION OF

JOHN LIVERATTI

November 17, 2005

Carson City, Nevada


REPORTED BY: CONSTANCE S. EISENBERG, NV CCR #142, RMR

John Liveratti                                          November 17, 2005

Carson City, NV

2

```
1                A P P E A R A N C E S

2   For the Plaintiff:      OFFICE OF THE ATTORNEY GENERAL

3                           BY:  L. TIMOTHY TERRY, ESQ.

4                           Chief Deputy Attorney General,

5                           Medicaid Fraud Unit

6                           198 N. Carson Street

7                           Carson City, Nevada  89701

8                           775-684-1185 / Fax 775-684-1192

9

10                          JENIPHR BRECKENRIDGE, ESQ.

11                          HAGENS BERMAN, LLP

12                          1301 Fifth Avenue

13                          Seattle, Washington  98101

14

15  For GlaxoSmithKline:    COVINGTON & BURLING

16                          BY:  JASON R. LITOW, ESQ.

17                          AND RONALD G. DOVE, JR., ESQ.

18                          1201 Pennsylvania Avenue NW

19                          Washington, DC  2004-2401

20                          202-662-5404/202-662-5685

21                          Fax 202-778-5404/202-778-5685

22                          jlitow@cov.com; rdove@cov.com
```

John Liveratti                                      November 17, 2005

Carson City, NV

3

1        A P P E A R A N C E S   ( C O N T I N U E D )

2

3    The following attorneys appeared telephonically:

4

5              CHRIS PALERMO, ESQ.

6              KELLEY, DRYE, WARREN

7              101 Park Avenue

8              New York, New York   10178

9              212-808-7789

10

11             TARA FUMERTON, ESQ.

12             JONES DAY

13             77 W. Wacker Drive

14             Chicago, Illinois   60601

15             312-269-4335

16

17             SHELLI CALLAND, ESQ.

18             SONNENSCHEIN, KNATH & ROSENTHAL

19             1303 K Street NW 600

20             Washington, DC   20005

21             202-408-6400

22

John Liveratti                                    November 17, 2005
                    Carson City, NV

4

```
   1      A P P E A R A N C E S   ( C O N T I N U E D )

   2

   3                   KEN COHEN, ESQ.

   4                   KAYE SCHOLER

   5                   425 Park Avenue

   6                   New York, New York  10022

   7                   212-836-7569

   8

   9

  10

  11

  12

  13

  14

  15

  16

  17

  18

  19

  20

  21

  22
```

John Liveratti                                     November 17, 2005

Carson City, NV

5

1                          I N D E X

2     EXAMINATION:                              PAGE

3

4     By Mr. Litow.....................................7

5

6                        E X H I B I T S

7     NUMBER                    DESCRIPTION          PAGE

8     Exhibit Liveratti 001     NV03728..................45

9     Exhibit Liveratti 002     NV03760 to 03793..........50

10    Exhibit Liveratti 003     Agency Specific Records

11                              Retention Schedule,

12                              March 8, 2004.............57

13    Exhibit Liveratti 004     Committee to Approve

14                              Schedules for the

15                              Retention/Disposition of

16                              Official State Records,

17                              Agency Specific Records

18                              Retention Schedule........58

19    Exhibit Liveratti 005     Defendant's Set of

20                              Interrogatories and

21                              Requests For Production

22                              to the State Of Nevada....59

John Liveratti                                    November 17, 2005
Carson City, NV

6

```
1    Exhibit Liveratti 006    NV 04001 to 04031.........70

2    Exhibit Liveratti 007    NV 03883.................76

3    Exhibit Liveratti 008    NV 03884 to 03885........78

4    Exhibit Liveratti 009    NV 00187 to 00228........85
```

John Liveratti                                                          November 17, 2005

Carson City, NV

7

```
 1           BE IT REMEMBERED that on Thursday, November

 2    17, 2005, at the hour of 9:15 a.m. of said day, at

 3    the offices of The Nevada Attorney General, 195 North

 4    Carson Street, Carson City, Nevada, before me,

 5    CONSTANCE S. EISENBERG, a notary public, personally

 6    appeared JOHN LIVERATTI, who was by me first duly

 7    sworn, and was examined as a witness in said cause.

 8

 9    JOHN LIVERATTI called as a witness, having been duly

10    sworn, testified as follows:

11           EXAMINATION BY MR. LITOW:

12        Q    Good morning, Mr. Liveratti.

13        A    Hi.

14        Q    My name is Jason Litow.  I'm with the law

15    firm of Covington & Burling in Washington, D.C.;

16    along with my cocounsel, Ron Dove, who represents the

17    pharmaceutical company GlaxoSmithKline, which is one

18    of the defendants in this action.

19           Will you please state and spell your name

20    for the record.

21        A    John Liveratti, L-i-v-e-r-a-t-t-i.

22        Q    What is your current business address?
```

John Liveratti                                November 17, 2005
Carson City, NV

17

1      Q      Have you ever heard of the term "AWP"?

2      A      Yes.

3      Q      And what's your understanding of what that

4   term means?

5      A      Average wholesale price.

6      Q      What's your understanding of what average

7   wholesale price is?

8      A      It's a figure established of what the

9   industry sells a product for.

10     Q      But you haven't read any articles about

11  AWP?

12     A      No.

13     Q      When did you first learn about this

14  litigation?

15     A      This -- earlier this year.

16     Q      Would you be more specific?

17     A      I don't remember the day.  The day we came

18  in for the meeting, there was probably two weeks

19  notice about the meeting, and I really don't know

20  when that was.

21     Q      So it was about roughly four or five months

22  ago, I believe you testified?

John Liveratti                                    November 17, 2005
                        Carson City, NV

                                                              18

1        A     I think so, yeah.

2              Let's see.  Four or five months ago,

3    that's May.  That's still during -- the legislative

4    session is in play.  This is late, the bottom of my

5    concern.  I'm trying to wrap up stuff in the

6    legislature.  I just don't remember.

7        Q     **Have you prepared any notes in preparation**

8    **for this deposition?**

9        A     No.

10       Q     **Since you haven't been deposed before, I'm**

11   **just going to go through the process of a deposition,**

12   **which I could have done in the beginning.**

13             **But I'll ask the questions.  You, as the**

14   **deponent, will respond.  You need to respond verbally**

15   **so that the court reporter can take down an answer.**

16   **So you can't shake your head or say "uh-huh."**

17             **At times, your attorneys may object.**

18   **Unless instructed by him or her not to answer, you**

19   **are still required to answer the question posed, even**

20   **though there's an objection.**

21             **If you don't understand a question, just**

22   **ask me to clarify it, and I'll be happy to do so.  If**

John Liveratti                                     November 17, 2005

Carson City, NV

28

1    did you become the compliance chief?

2        A    July 2003.

3        Q    What is the SURS unit that you referred to?

4        A    SURS reviews utilization and fraud and

5    abuse for the Division.  They review complaints from

6    providers, review complaints from recipients.  They

7    do statistical analysis of claims paid.

8        Q    What type of complaints from providers

9    would you generally get?

10       A    Usually when they -- we have had a couple

11   of complaints where providers would, basically, rat

12   each other out about competition stuff or they are

13   not providing the care that they are claiming to.

14           What happens is, a worker in a certain

15   provider area would be there and would see things

16   that were not acceptable practices.  They would

17   leave, and then as they would leave and go to another

18   business, same type of provider oftentimes, they

19   would send us an anonymous letter or a signed letter

20   of practices going on in that provider that they just

21   left.

22           And, you know, it's sour grapes sometimes, you

John Liveratti                                      November 17, 2005
                        Carson City, NV

29

1    know. They don't like the people and sometimes they

2    are doing stuff that's wrong.  So our staff would go

3    in and make some inquiries and review the information

4    that they have.  If they found anything, you know,

5    they would contact them and talk to them.

6         Q    Were these complaints generally in writing?

7         A    Yeah, either from an email or in a letter.

8         Q    Did you ever receive complaints from

9    providers that the reimbursement level they were

10   receiving was too low?

11        A    We would receive that -- I received that in

12   transportation.  I received that in dental.  Yes.

13        Q    And where would these provider complaints

14   be kept?

15        A    Well, I had a file for those kind of issues

16   in my -- you know, in my office.

17        Q    And how long would you retain these

18   complaints?

19        A    Well, I normally keep them for about three

20   years.

21        Q    Do you know whether this file of provider

22   complaints has been searched for documents responsive

John Liveratti                                    November 17, 2005
                        Carson City, NV

                                                              50

1            MR. LITOW:  Yes, set it aside.  Thank

2      you.

3            At this time, I would like the court

4      reporter to mark as Exhibit Liveratti 002, a document

5      bearing the Bates numbers NV 03760 through NV 03793,

6      which is titled "Authorized Record Retention and

7      Disposition Schedules," dated June 9, 2004.

8                   (Exhibit Liveratti 002 marked for

9                   identification.)

10     BY MR. LITOW:

11         Q      **Take a moment to review the document.**

12         A      I haven't reviewed it ever, so I know it's

13     not going to make any difference.

14         Q      **Can you identify this document?**

15         A      Yeah, I provided this to Tim.  It's the

16     retention policy that the Division has, is operating

17     under.

18         Q      **It's dated June 9, 2004.  Do you know**

19     **whether this is the document policy that is currently**

20     **in effect?**

21         A      Yes.

22         Q      **It is?**

                Henderson Legal Services
                    (202) 220-4158

John Liveratti                                    November 17, 2005
                        Carson City, NV

                                                              51

1        A     Yes, it is.

2        Q     **Were there prior retention policies?**

3        A     Not that I'm aware of, no.

4        Q     **So there were no -- there was no retention**

5   **policy prior to June 9, 2004?**

6        A     I'm not aware of an official one.  What I

7   do know that happened was state archives wanted to

8   meet with various organizations of the state, bodies

9   of the state, to tell them what their retention

10  policy was, or what the State's was.  And they worked

11  with Department of Human Resources in establishing a

12  records retention policy, and out of that came this.

13            And so our staff worked on it -- and when

14  I say "our staff," I'm including the entire staff.

15  And pretty much, it would have been Rhedith Mackie

16  and Pat Manning that were involved in this part of

17  it.  They are the administrative assistants for the

18  deputy and the administrator.

19       Q     **Does the document retention policy cover**

20  **electronic documents such as email?**

21       A     I don't know.

22       Q     **Who is primarily responsible for**

1    **administering the retention policy?**

2        A     Rhedith pretty much handles it, Rhedith

3    Mackie. Basically, what happens is it's -- you know,

4    we're kind of an agency that doesn't have a whole

5    bunch of space.  And so when we exceed our file

6    cabinets, it's pretty much when we file.  Okay. Those

7    are our personal files.

8             We also have Medicaid record files on

9    recipients, which we keep.  And when that -- we have

10   a bunch of files over there. When that gets to a

11   point where we have to make room for the next coming

12   year's files, she goes -- she has a process where she

13   goes through -- goes through and pulls a certain

14   number of years or a certain number of files and

15   archives them, and she follows this policy when she

16   does that.

17            So when somebody comes to her about their

18   own records or files or documents, then she tells

19   them how and what they need to do on meeting this

20   criteria.  So everybody sends their needs to Rhedith,

21   and she instructs them what they need to do and she

22   helps them do it.

John Liveratti                                    November 17, 2005

Carson City, NV

53

1      Q      Has this policy been distributed to all the

2   employees in the Division?

3      A      I think it has.

4      Q      Have you seen it before?

5      A      Yeah, I have seen it before.

6      Q      You said you were the one that gave it to

7   Mr. Terry; is that right?

8      A      Yes.

9      Q      Turn to the second page of this document,

10  number 3761, and direct your -- about the middle of

11  the page, the section on "Disposition Holds,

12  Litigation." Do you see that?  Just take a moment

13  just to look that over to yourself, please.

14          Can you please describe to me what that

15  section of the policy requires.

16     A      Well, we should discuss with our AG before

17  we would destroy anything to see if there's anything

18  pertinent in an ongoing lawsuit.

19     Q      And it also requires that records

20  pertaining to litigation be identified, separated

21  from other files, and protected; is that correct?

22     A      Yes.

John Liveratti                                    November 17, 2005

Carson City, NV

54

1       Q      And that all destruction of records

2    pertaining to the lawsuit must be stopped until the

3    legal action has been resolved; is that correct?

4       A      Yes, it does.

5       Q      Are you aware of whether any such hold is

6    in effect as a result of this case?

7       A      No, I'm not.

8       Q      Who would issue such a hold?

9       A      I don't know.

10      Q      So you never received any instructions from

11   anyone to preserve documents that might be related to

12   this case; is that correct?

13      A      That's correct.  What -- you know, we found

14   out about this about five months ago.

15      Q      I understand.

16      A      Okay.  So there's not a whole bunch that

17   has been destroyed in five months.  I can probably,

18   you know, give you my best assurance that when we

19   first heard about this, you know, we went out and

20   looked for everything that we could and we provided

21   it.  So I don't really think that anything has been

22   destroyed, although I can't say that it hasn't.

John Liveratti                                        November 17, 2005

Carson City, NV

55

1        Q    This case was first initiated in January of

2   2002.  Are you aware of whether any action was taken

3   between January 2002 and the time when you first

4   learned of this lawsuit about four or five months

5   ago, to preserve documents?

6        A    No, I'm not.

7        Q    Are you aware of any efforts that were made

8   to ensure the preservation of emails that might

9   pertain to this litigation?

10       A    No, I'm not.

11       Q    Are you aware of any efforts to preserve

12  the files of employees who left the Medicaid division

13  to ensure that any of their relevant documents were

14  not destroyed?

15       A    No, I'm not.

16            MR. LITOW:  Take about a five-minute

17  break.

18            MR. DOVE:  Ten-minute break.

19

20            (A recess was taken.)

21            MR. LITOW:  Back on the record.

22  BY MR. LITOW:

John Liveratti                                November 17, 2005
                      Carson City, NV

                                                              56

1        Q     Mr. Liveratti, I think you testified that

2    you had produced that Exhibit Liveratti 002, the

3    document retention policy, to counsel; is that

4    correct?

5        A     That's correct.

6        Q     Did you conduct a search for document

7    retention policies at somebody's request?

8        A     Actually, I thought -- I knew we had an

9    administrative manual, and a large portion of the

10   administrative portion hasn't been finaled.  And I

11   didn't think that our retention policy had been

12   finaled.  So I went to see if it was still in draft

13   form, and the draft form would still have had

14   language of the welfare division because that's where

15   I stole it from.

16            But I didn't find it in there.  And so, I

17   thought okay, I know we have some kind of policy.  So

18   I went and talked to Rhedith, and she says -- you

19   know, she gave me this.  Oh, okay.

20       Q     Do you know if there are -- strike that.

21            At this time, I would like to ask the

22   court reporter to mark as the next exhibit, Exhibit

John Liveratti                                            November 17, 2005
                        Carson City, NV

57

1    Liveratti 003, a document entitled "Agency-Specific

2    Records Retention Schedule" with a date stamp on the

3    bottom of March 8th, 2004.

4                        (Exhibit Liveratti 003 marked for

5                        identification.)

6    BY MR. LITOW:

7        Q    Mr. Liveratti, do you recognize this

8    document?

9        A    No.  But it looks like it was the precursor

10   to this one.

11       Q    When you say "precursor to this one," you

12   mean the precursor to Exhibit Liveratti 002; is that

13   correct?

14       A    Yes, that's what it looks like.

15       Q    Is this a draft of the June 9th, 2004

16   document, retention policy?

17       A    I have no idea.  Based on the title, I

18   would imagine that it would have been a draft, yes,

19   but I don't know that.

20       Q    And do you know who would know that?

21       A    Rhedith Mackie might.

22       Q    It says "Rita's copy" on the top right.

John Liveratti                                   November 17, 2005

Carson City, NV

58

1    **It's Rita Mackie?**

2         A    It's R-h-e-d-i-t-h.

3              MR. LITOW:  I would like to ask the court

4    reporter to mark as Exhibit Liveratti 004, a document

5    entitled "Committee to Approve Schedules For the

6    Retention/Disposition of Official State Records,

7    Agency Specific Records Retention Schedule."

8              Could we go off the record for a minute.

9              MS. BRECKENRIDGE:  Sure.

10                  (A discussion was held off the

11                  record.)

12                  (Exhibit Liveratti 004 marked for

13                  identification.)

14   BY MR. LITOW:

15        Q    **Mr. Liveratti, just take a moment to look**

16   **at that document as well.**

17              **Have you ever seen that document before?**

18        A    No, I haven't.

19        Q    **Can you identify what it is.**

20        A    It says the committee to approve schedules

21   for the retention and disposition of official state

22   records.

John Liveratti                                    November 17, 2005
                    Carson City, NV

                                                            59

1        Q    Do you know whether it's -- it's a draft of

2   Exhibit Liveratti 002 that we looked at before?

3        A    I don't know that.

4        Q    Do you know who would know that?

5        A    I don't.

6             MR. LITOW:  At this time, I would like to

7   ask the court reporter to mark as Exhibit Liveratti

8   005, a document entitled "Defendant's First Set of

9   Interrogatories and Requests For Production to the

10  State of Nevada."

11                 (Exhibit Liveratti 005 marked for

12                 identification.)

13  BY MR. LITOW:

14       Q    Mr. Liveratti, have you ever seen this

15  document before?

16       A    Yes, I have.

17       Q    When was that?

18       A    Sometime this summer.

19       Q    And who gave it to you?

20       A    I think Mr. Terry gave it to me.  I think

21  it was sent over to our agency, maybe to Chuck,

22  Charles Duarte.  He gave me a copy of it.  If it -- I

John Liveratti                                    November 17, 2005
                        Carson City, NV

                                                              60

1    think that's how I got it.

2        Q     Can you please describe the steps that you

3    took to search for and produce documents responsive

4    to the requests in that exhibit.

5        A     Sure.  I went through the exhibit, and I

6    looked at every question or request in here.  And I

7    tried to mark on it who might have this, if I had

8    this, or if I had no idea, I put like a question

9    mark, "no clue" or something like that.  But I think

10   that's what I did.

11            And what happened was, I believe I

12   produced everything I could for our first meeting --

13   took you by surprise and the other guy that we had

14   everything.

15            MR. TERRY:  The State.

16            THE WITNESS:  That we produced everything

17   that I had.

18   BY MR. LITOW:

19       Q     So you are talking about you produced

20   everything that you had had in your files; is that

21   correct?

22       A     Everything that I could find that related

John Liveratti                                    November 17, 2005
                          Carson City, NV

                                                                    61

1    to this that I had, I brought copies of over.  And --

2        Q    And you mentioned that you also identified

3    those requests for which others might have

4    information; is that correct?

5        A    That's correct.

6        Q    And then did you, then, ask those

7    individuals to search for documents?

8        A    No, I did not.  I think what I did was, we

9    had this meeting, and because I don't know how many

10   other people would have had this, but if Chuck would

11   have given it out, he'd have probably given it out to

12   the deputy administrator, the fiscal officer and

13   Colleen and maybe to the rates chief.  So I would

14   have expected that they would have done what I did,

15   but I don't know that.

16           But what I do know, what I did was, when

17   I came over to that meeting, I think we discussed

18   some of these things and who might else know, you

19   know, these responses.  So I think I told Tim and --

20   I don't remember, is the gentleman's name Dennis?  Is

21   that the guy's name?

22           MR. TERRY:  Steve Berman.

John Liveratti                                    November 17, 2005

Carson City, NV

1              THE WITNESS:  Steve.

2          I think I may have said to them what I

3    knew.

4    BY MR. LITOW:

5          Q    So that I understand, your involvement was,

6    one, going through the document requests and

7    searching your files for any documents that you might

8    have to respond; is that right?

9          A    That's correct.

10         Q    And two, identify those requests where

11   others might have documents and then inform counsel

12   of who those individuals might be; is that correct?

13         A    That's correct.  And then I did produce

14   what I had.

15         Q    Right.

16              Could you please describe for me the

17   search that you undertook of your own files.  And by

18   that, I mean which of your files did you search

19   through?

20         A    I searched them all.  I don't have a whole

21   bunch, and I went through all my files.

22         Q    Did you search through your emails?

Henderson Legal Services
(202) 220-4158

John Liveratti                                    November 17, 2005

Carson City, NV

63

1        A     No.   But I don't believe I would have had

2    any relevant to that.   I would have had things about,

3    you know, setting up the hearings for a state plan

4    change, but it would have only been to set the date

5    and stuff like that.

6        **Q     I guess I would just ask that you search**

7    **through your emails and confirm that there are --**

8    **whether or not there are responsive documents in your**

9    **emails.**

10              MS. BRECKENRIDGE:   We'll be getting you a

11   proposal for how to handle the emails.   I don't mind

12   asking Mr. Liveratti to do that either, but I have

13   talked to him about that in the past.   But we'll also

14   be doing something as well.

15              THE WITNESS:   You expect me to find this

16   in archives? Let me tell you --

17              MS. BRECKENRIDGE:   We'll talk.   That's

18   why I'm saying it has to be a more methodical

19   approach, I think.

20   BY MR. LITOW:

21       **Q     Did you instruct the employees that work**

22   **under you in the compliance unit to search through**

John Liveratti                                    November 17, 2005

Carson City, NV

64

1    their files for responsive documents?

2         A    Yes.

3         Q    And how did you communicate this

4    instruction to them? Was it in writing or verbally?

5         A    Picked the phone up and said either come to

6    my office or go look.

7         Q    And so did all of your employees search

8    through their files?

9         A    Yes.

10        Q    Any documents they had found were given to

11   you, is that correct, and then you would pass those

12   on to counsel?

13        A    That's correct.

14        Q    Were records that are in storage or

15   archives searched for responsive documents?

16        A    No.

17             One second.  Can I clarify it?

18             MS. BRECKENRIDGE: Yes, he'll be happy to

19   have you clarify.

20   BY MR. LITOW:

21        Q    Go ahead.

22        A    We didn't search, but what I did was, I

John Liveratti                                      November 17, 2005
                          Carson City, NV

                                                                      65

 1    produced a ledger of other -- of what was contained

 2    in the archive documents, so to speak.

 3         Q    When you say "produce," you mean you gave

 4    that to counsel?

 5         A    Yes.  And, you know, when I brought the

 6    first packet of documents over in that meeting, I

 7    left with the impression --

 8              MS. BRECKENRIDGE:  Wait.  I'm going to

 9    stop you right there.  Anything that happened in that

10    meeting, because Mr. Terry and Mr. Berman were

11    present, that's considered attorney-client privilege.

12    So in terms of impressions you got from the meeting

13    or anything that took place in the meeting is not

14    something that counsel -- the defense counsel are

15    entitled to.

16              THE WITNESS:  Okay.

17              MS. BRECKENRIDGE:  We could talk about it

18    outside of their hearing.  If there's something you

19    want to share, we can determine -- it may be that

20    it's innocuous.

21              MR. DOVE:  Let's go off the record.

22              (A discussion was held off the

John Liveratti                                          November 17, 2005
Carson City, NV

66

1                        record.)

2                MR. LITOW:  Back on the record.

3     BY MR. LITOW:

4          **Q     Mr. Liveratti, you mentioned that you had a**

5     **ledger of documents that were in archives; is that**

6     **correct?**

7          A     That's correct.

8          **Q     Does this ledger contain all the documents**

9     **that are archived, or did you identify specific**

10    **documents that might be related to this case?**

11         A     That ledger involved the documents that our

12    prior fiscal agent and the Blue Cross, we have in

13    storage at Iron Mountain. And it was just a

14    description of what was in those -- inventory.

15         **Q     Iron Mountain, is that --**

16         A     I think that's the storage facility's name.

17    Yeah, Iron Mountain.

18         **Q     You also mentioned that you spoke to your**

19    **employees about the document requests.  Who exactly**

20    **did you speak to?**

21         A     It would have been Nancy Davis because she

22    does all the public hearings establishment.  She

John Liveratti                                    November 17, 2005
                        Carson City, NV

                                                              67

1    would hold all those.  She would know where to find

2    them.

3         Q    Did you instruct any of your other

4    employees regarding document requests?

5         A    No.  They wouldn't have had anything.

6         Q    Did you give Nancy a copy of the document

7    requests?

8         A    This?

9         Q    Yes.  Did you give her a copy of Exhibit

10   Liveratti 005?

11        A    No, I did not.

12        Q    What documents did you tell her to look

13   for?

14        A    Any minutes, agendas that involved MCAC

15   public hearings or state plan amendments on the

16   pharmacy chapter or rates dealing with pharmacy.

17        Q    Did you ask her to search through her

18   emails for responsive documents?

19        A    No, I did not.

20        Q    Does the State have any records of which

21   documents have been destroyed pursuant to the

22   retention policy?

John Liveratti                                November 17, 2005
                     Carson City, NV

68

1        A    I believe the state archives library would

2    have that.

3        Q    And where is that library, physically?

4        A    Oh.  Well, actually, you --

5             MR. TERRY:  Carson.

6             THE WITNESS:  Carson Street -- on Stewart

7    Street.  You go down two blocks, turn right, and you

8    are there.

9             MR. TERRY:  You can go there at

10   lunchtime.

11   BY MR. LITOW:

12       Q    Do you know whether these records were

13   searched in connection with defendant's document

14   requests?

15       A    No, I don't.

16       Q    Has the State searched the files of

17   legislative staff for responsive documents?

18       A    We don't have access to that.

19       Q    When you say "we," you mean the compliance

20   unit?

21       A    The state administrative staff do not have

22   access to legislative staff records.  It's like two

John Liveratti                                        November 17, 2005
                            Carson City, NV

69

1    bodies of government. They ain't giving us that.

2              You know, they have minutes and stuff on

3    their website that you might be able to access during

4    -- you know, like session minutes of the thing.

5    Those would be available.  But other things, we don't

6    have access to that.

7         Q     **Do you know whether they were asked to look**

8    **for --**

9         A     I do not.

10        Q     **I refer you back to Exhibit Liveratti 005**

11   **there for a minute, Mr. Liveratti.  Pages 10 through**

12   **-- 10 through 18 of that document refer to**

13   **interrogatories that defendants have propounded upon**

14   **the State.  Do you see those interrogatories?**

15        A     Yes.

16        Q     **Were you involved in providing answers to**

17   **any of these interrogatories?**

18        A     Well, I went through this whole list, and

19   if I knew something, I wrote it down, and then I

20   shared it with counsel at that meeting.

21        Q     **And when was that meeting again?**

22        A     This summer.