# EXHIBIT 9



Kathleen M. O'Sullivan
PHONE  206.359.6375
FAX    206.359.7375
EMAIL  kosullivan@perkinscoie.com

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

December 1, 2005

**VIA E-MAIL AND ELECTRONIC SERVICE**

Jeniphr A.E. Breckenridge
Hagens Berman Sobol Shapiro LLP
Suite 2900
1301 Fifth Avenue
Seattle, WA  98101

Re:   **Montana AWP Action**

Dear Jeniphr:

This letter summarizes the agreements reached and the action items identified in our telephonic meet and confer on Wednesday, November 23, regarding the status of Montana's document production.  We discussed various general issues and then heard your response to the outstanding items identified in our letter to you of November 11.

**A.   General Issues**

**1.   Scope of Montana's Claims**

We asked you whether Montana asserts claims on behalf of any state agencies or entities other than Medicaid.  You agreed to provide us with a final answer to this question.  We stated, however, that a limitation of Montana's claims to Medicaid does not necessarily eliminate our need for discovery from the other Montana state agencies that  purchased prescription drugs.  As I previously explained, discovery from other state agencies is relevant to the issue of Montana's knowledge regarding AWP, and defendants' discovery continues to encompass requests for that information.

[06735-0059/SL053270.140]

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · HONG KONG · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Jeniphr Breckenridge
December 1, 2005
Page 2

### 2.   Time Period

You raised the issue of the relevant time period for the production of documents by
Montana. We discussed, but did not resolve, the issue of whether or not Montana
would produce documents, including data, dating back to 1991. From your letter of
November 29, we now understand that Montana is taking the position that it will not
produce any responsive documents or data prior to 1997 or after 2001. Your letter
acknowledged that you are "withhold[ing] State documents for the 1991 to 1997 and
2001 [to present] time periods." Montana's newest position regarding the scope of the
State's production is untenable for at least four reasons.

First, it is inconsistent with the position taken by the State over three months ago in
Court. In their brief in opposition to defendants' motion to compel, the States of
Montana and Nevada stated that "[t]he States likewise agreed to produce from 1991 to
the present, but would not agree to search for 1985 to 1990 unless defendants agree to
do so as well." Until your recent communication, we understood that the States of
Montana and Nevada were objecting to the production of pre-1991 documents absent
a court order, but we had had no such understanding regarding the production of
documents from 1991-1997 and from 2001-present. Your change in position, two
months from the discovery cut-off, is troubling. Second, Montana's current position is
inconsistent with the position that Montana took over two years ago in a subpoena to
National Pharmaceutical Council, in which Montana defined the "**RELEVANT
TIME PERIOD**" as "January 1, 1991 to the date of production." Third, your current
position that Montana will not produce claims data from its fiscal agent dating back to
1991 (or after 2001) is inconsistent with your position in Nevada, where the State has
already produced claims data from 1991-2003. It's even inconsistent with the limited
production of data by Montana, which included data from 1997-2005.

Finally, and most importantly, your position that the State may unilaterally withhold
responsive documents unless "all defendants agree to produce documents for the same
period" is contrary to established law. "Parties to a lawsuit cannot, without seeking
some sort of relief from the Court, refuse to provide discovery to another party on the
basis that the other party has not provided discovery to them." *Mahoney v. Kempton*,
142 F.R.D. 32, 33 (D. Mass. 1992). As you know, some companies, including our
client, Immunex Corporation, have produced documents dating back to 1991, but that
is not the issue here. If the State believes that certain defendants' document
productions are inadequate, the solution is for you or other plaintiffs' counsel to meet

Jeniphr Breckenridge
December 1, 2005
Page 3

and confer and, if necessary, file a motion compelling their production.  At bottom, your letter of November 29 acknowledges the "fact that the State's claims extend to 1991."  Accordingly, the State of Montana and its fiscal agent, ACS, must produce responsive documents, including but not limited to electronic data, dating back to 1991 and after 2001 so that the defendants may have the opportunity to defend themselves against the State's claims.[1]

In particular, we repeat our demand that Montana produce its pharmacy and medical claims data back to 1991.  As we learned in the September 23 call with ACS, which we confirmed in our September 27 letter, ACS has used the same database with the same fields for Montana Medicaid claims since 1985; there is no issue regarding the availability of the data.  The relevant data is in the State's possession, it is responsive, and it must be produced.  We will seek relief from the Court if Montana persists in its refusal to provide the responsive documents, including electronic data.

### 3.    Files Searched for Responsive Documents

We discussed the scope of documents and files searched to date in response to our discovery requests.  It appears, both from the documents produced thus far and the information you relayed on our call, that searching has so far been limited to specific file holders within Montana Medicaid.  For example, you confirmed that no searches have taken place of files maintained by the legislature or executive related to prescription drug pricing, drug reimbursement, or drug rebates.  The failure to search additional files, including the files of all State employees who may have relevant documents, constitutes a disregard of Montana's discovery obligations.

---

[1] As you know, defendants' position regarding documents from 1985-1991 is that the States' knowledge – that AWP was not an average of actual acquisition cost – prior to the date on which the States' claims begin goes to the heart of whether the States were actually defrauded.  Such documents are uniquely in the possession of the States, not defendants.  Accordingly, although temporal parity in discovery may make sense with respect to issues that apply to both sides (e.g., damages calculations and utilization information), we cannot defend ourselves if the States are permitted to draw down the curtain on everything it learned prior to the date on which the States' claims purportedly begin.

Jeniphr Breckenridge
December 1, 2005
Page 4

You agreed to confirm whether or not any State archives had been searched for
documents responsive to Defendants' requests. We also ask that you confirm that
Montana's searches for responsive documents encompass all State employees and file
holders who may have such documents.

### 4.    Litigation Hold on Destruction of Documents

We were dismayed to learn that neither you nor Joe Mazurek could confirm that a
litigation hold has been issued to halt the destruction of documents by Montana
relevant to this action, which the State commenced over three years ago. Mr.
Mazurek indicated that the state recycles or destroys documents "every 30 days," and
was not aware of any instruction given to the State to suspend this process. Both you
and Mr. Mazurek agreed to confirm whether and if any hold order had been
implemented in Montana to preserve relevant documents. We ask that you confirm
the date any such hold order was implemented, and to confirm that its scope covers all
State employees, file holders, and documents potentially responsive to defendants'
discovery requests or otherwise relevant to this action.

If no such hold order is in place, we demand that Montana take immediate steps to
preserve potentially relevant documents in the possession of all State employees. As
outlined in Jason Litow's November 23, 2005 letter to you and Timothy Terry
regarding spoliation by Nevada, both the Federal Rules and Judge Saris' Case
Management Order No. 2 place an affirmative obligation on Montana to preserve all
records pertaining to this litigation. Please confirm no later than the close of business
on Monday, December 5, the status of any hold order already in place, or if there is
none, confirm that you have taken steps to put such an order in place. Defendants
reserve the right to seek sanctions against the State for failure to initiate a proper
litigation document hold and for any destruction of documents relevant to this action.

### B.    Documents Identified in Our November 11, 2005 Letter

Many of the documents or categories of documents identified in our November 11
letter were those that Montana's Rule 30(b)(6) designee, Jeff Buska, had specifically
identified during his deposition. You indicated that you had not yet received Mr.
Buska's deposition transcript and we provided that transcript to you during our call.
You agreed that you would review Mr. Buska's deposition testimony with him in an
effort to expedite the production of these documents.

Jeniphr Breckenridge
December 1, 2005
Page 5

Listed below are the agreements we reached with respect to specific documents or categories of documents, numbered to correspond with the numbers set forth in our November 11 letter.

1.  Email. You confirmed that no email searches have been done to date, other than what may have been produced in hard copy files. You agreed that, subject to your client's approval, Montana would search its email based on search terms to be provided by the defendants. You also agreed that we would work in collaboration to determine the persons whose email accounts would be searched. At a minimum, we expect those persons would include all State employees Mr. Buska identified during his deposition. Once we receive confirmation from you that your client is willing to proceed with these searches, we will provide you a list of our requested search terms.

2.  Other electronic documents and files. Again, you confirmed that to date, the State has failed to conduct any search for electronic documents or files. You agreed to search based on search terms provided by the Defendants, subject to your client's agreement and confirmation that such searches were technologically feasible. In the interim, however, you said that you believe that Mr. Buska's folder labeled "AWP" has been collected and would be produced within the week.

3.  Legislative testimony and related documents. Mr. Buska testified at his deposition regarding legislative testimony that he had provided and for which he had prepared other State employees. You indicated that you had reviewed Mr. Buska's files for this information. Of course, we imagine that there were additional legislative hearings and committee meetings regarding prescription drug pricing, reimbursement, or rebates in which Mr. Buska was not involved. You agreed to search additional files for these documents, and produce any responsive documents you locate.

4.  Conference materials and related documents. You agreed to search additional files for these documents, including files of individuals other than Mr. Buska, and produce any responsive documents you locate.

5.  Montana Medicaid organization charts. You stated that you have produced the only organizational charts you are aware of.

Jeniphr Breckenridge
December 1, 2005
Page 6

6.    Advisory councils and coalitions.  You were not prepared to discuss documents
related to this topic.  You agreed to discuss these documents with Mr. Buska
and report back to us regarding additional responsive documents.

7.    Documents from Montana's Drug Utilization Review Board.  You said that
Montana would be producing many documents from the Drug Utilization
Review Board, and that we would receive those documents within the week.

8.    Drug purchases by the State other than by Medicaid.  We agreed to revisit this
issue once we have your final answer regarding the scope of the State's claims,
and we reiterated that defendants have no intention of waiving their request for
discovery from other State agencies that purchased prescription drugs.

9.    Comments relating to amendments.  You stated that many comments were
made orally at public meetings.  We stated that we assumed that at least some
comments were submitted in writing.  We do not believe that any written
comments have been produced, except for documents summarizing the
comments received (e.g., MT 00030-38, a document we noted in our letter of
November 11).  The summaries are responsive, but of limited use, as they do
not contain the identity of those who provided the comments.  You agreed to
search additional files for these documents, and produce any responsive
documents you locate.  Our understanding is that these documents are
maintained by Montana's Office of Legal Affairs.  We would like you to
confirm that you have searched that Office's files and the archives for that
Office's files.

10.   Minutes from meetings and hearings.  You agreed to search additional files for
these documents, and produce any responsive documents you locate.

11.   State requested or conducted studies.  You reiterated that the State has
produced all audits from the Legislative Audit Division relating to prescription
drugs.  We noted that our request was not so limited, but, as noted in our
November 11 letter, we also were seeking documents relating to the State's
effort to determine compliance with Federal MAC pricing and the tri-annual
report submitted by Montana to CMS, as well as any external studies or
analyses of drug pricing commissioned or requested by Montana.  Mr. Buska
testified that Duane Preshinger might have knowledge regarding those studies
and related documents.  Mr. Buska further testified that the Quality Assurance

Jeniphr Breckenridge
December 1, 2005
Page 7

Division working under Mary Dalton's supervision would have oversight regarding these audits and would possess related documents. You agreed that you would confer with Mr. Buska and follow up with us. Mr. Mazurek also agreed to confer with Duane Preshinger regarding any responsive documents related to studies or audits. You agreed to produce any additional responsive documents you identify.

12.    Documents related to budgeting and analysis of Montana's Medicaid expenditures. You were not prepared to discuss documents related to this topic. You agreed to discuss these documents with Mr. Buska and report back to us regarding additional responsive documents.

13.    Documents related to competitive bidding and requests for proposals for administrative services. You were not prepared to discuss documents related to this topic. You agreed to discuss these documents with Mr. Buska and report back to us regarding additional responsive documents.

14.    Documents related to third-party administrators or consultants actually engaged by Montana Medicaid. You stated that you have additional documents responsive to this request, and that they would be produced within the week.

15.    Reports and correspondence from the National Association of Medicaid Fraud Control Unit related to pricing and reimbursement. You agreed to produce these documents, subject to our acknowledgment that doing so would not constitute a waiver of privilege. We agreed to the production of these documents on that condition.

16.    June 13, 2000, document sent to "Pharmacy Providers" regarding "AWP Wholesale Pricing." You indicated that you believe you have seen this document recently, and that it may already be prepared for production, and if so would be produced within the week. If not, you agreed to locate and produce this document.

Finally, we agreed to schedule a time this week to discuss the status of collection of the ACS claims data outlined in my November 4, 2005 letter to you. Your co-counsel, Joe Mazurek, said that he had recently learned that it might take up to three weeks to collect that data. It remains unclear what, if anything, has been done since

Jeniphr Breckenridge
December 1, 2005
Page 8

our November 4 letter regarding ACS data to begin compiling this data.  In light of
the three weeks that have already lapsed since my letter was sent, we ask that you
immediately begin whatever process is necessary to collect this data.  On November
29, I asked for your assistance in scheduling a call regarding the ACS data issues, but
you responded that "A [call] on the 1991 to 1997 data would be premature before we
resolve the issue of certain defendants' failure to produce information for the same
period."  As set forth above, we believe that your position regarding the time period
is invalid and will be flatly rejected by the Court.  But it is no reason to delay this call.
We again ask that you agree to a call later this week or early next week so that we can
clarify for you and ACS exactly what defendants are asking for, and so that you and
ACS can clarify for us and our data expert what any difficulties in producing the data
are.

We look forward to the production of documents this week and prompt resolution of
the remaining discovery matters that are outstanding.

Very truly yours,

Kathleen M. O'Sullivan

cc:     P. Joseph Mazurek (via e-mail)
        Counsel of record (by electronic service)