UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Nevada v. Abbott Labs., Inc. et al.*, Case No. CV02-00260<br><br>*State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS<br><br>*State of Montana v. Abbott Labs., Inc., et al.* D. Mont. Cause No. CV-02-09-H-DWM | |

### DECLARATION OF JENIPHR BRECKENRIDGE IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR EXPEDITED BRIEFING SCHEDULE AND ORAL ARGUMENT

I, Jeniphr Breckenridge, declare:

1. I am a partner in the law firm of Hagens Berman Sobol Shapiro LLP and I am one of the lawyers representing the States of Nevada and Montana in these cases.

2. I represented the State of Nevada and three state witnesses at depositions taken by the defendants in Carson City on November 15th – 17th. L. Timothy Terry, Chief Deputy Attorney General, was also present. At the end of the November 17, 2005 deposition, Mr. Terry and I met informally with GSK counsel Ronald Dove and Jason Litow. The primary issues discussed were the case deposition schedule for December and January and discovery from Mr. Terry's files. Mr. Dove and Mr. Litow mentioned in passing the question of whether a

preservation hold order had been issued when the case was filed. The discussion was limited to the Nevada case.

3. On November 23, 2005, Mr. Litow wrote a letter regarding the State's efforts to preserve documents. The letter is attached to Defendants' Motion as Exhibit 7. The letter arrived in the afternoon. It was the Wednesday before the Thanksgiving break. We did not receive the letter until Monday, November 28, 2005. Because I received the letter on a Monday, when I read the statement that the State was to provide documentation to defendants "by the end of next week," I took that to mean the end of the week of December 5, 2005. It was an honest mistake – one that could have been readily cleared up by a meet and confer or a simple telephone inquiry from defendants. As described below, we received neither.

4. Earlier in the day on November 23, 2005, I participated in a conference call with Katie O'Sullivan of Perkins Coie (Seattle), representing Immunex. The topic of the call was discovery in the Montana case. Ms. O'Sullivan has never contacted me with any substantive issues regarding the Nevada case, I am not even sure if she is counsel in that case; this call was no different. She mentioned her understanding that the question of document preservation had come up in Nevada and indicated that in Montana they would "kinda tag along with whatever Nevada did." She may have asked whether a document preservation order was issued in Montana, I do not recall. She did not ask me any specific questions regarding measures that had been taken in Montana to preserve documents.

5. The next time I heard from Ms. O'Sullivan on any topic was her December 1, 2005 letter in which she formally raised the question of document preservation in connection with the Montana case for the first time, among numerous other issues.

6. At or around the same time Mr. Litow sent the November 23, 2005 letter, defendants made several other demands on the State of Nevada. We informed Mr. Litow by letter dated December 1, 2005 that we would respond to each in writing.

7.   By the time we received Mr. Litow's letter, we had already acted. The day after the question of document preservation was raised in Nevada on November 17, we began interviewing employees to determine what had been done to preserve documents in the State. We have found no evidence that any documents were destroyed – willfully or otherwise. Our investigation continues.

8.   The week after the question of document preservation was raised in Nevada on November 17, I drafted a confirmation memorandum to be circulated to affected Nevada Medicaid employees. The purpose of the memorandum was to confirm that employees had not destroyed documents and that they were aware of this case, their document management obligations to this case and were following them.

9.   We determined that Charles Duarte, Administrator, DHCFP, would be the proper person to circulate the memorandum. Mr. Duarte and I communicated via e-mail.

10.   This was all done before we received the November 23, 2005 Litow letter.

11.   Also, before the November 23, 2005 letter, on August 15, 2005, at a deposition taken by GSK lawyers, Nevada Pharmacy Director, Colleen Lawrence, testified that she has been "instructed by my counsel in the very beginning not to destroy any documents" and she gave her staff the same instruction. A copy of the excerpted page from the Deposition of Colleen Lawrence taken on August 15, 2005 is attached hereto as Exhibit A.

12.   On November 30, 2005, Mr. Duarte circulated the e-mail. The e-mail contained an attachment which was Defendants' discovery to the State. A true and accurate copy of the e-mail is attached to this Declaration as Exhibit B. Exhibit B does not include the attachment to Mr. Duarte's original e-mail.

13.   Since the e-mail was sent, I have interviewed additional employees regarding the preservation of documents since the lawsuit was filed. I have discovered no evidence that documents were destroyed – willfully or otherwise. Again, our investigation continued.

14. The State of Montana is undertaking similar measures. Because we did not receive a formal request regarding the steps taken in Montana until December 1, 2005, just one week ago, Montana has not completed the confirmatory steps. I am not aware of any document destruction in Montana – willful or otherwise.

15. We will be able to brief the Court and the Defendants more fully on all of these efforts at the time we submit full briefing on Defendants' motion.

16. It is very significant to both the States of Nevada and Montana that no Defendant approached us to hold a meet and confer or even a courtesy inquiry regarding the issues raised by the motion. If we had been approached, we would have provided them with the information contained in this memorandum, including copies of any e-mails sent to State employees.

I swear under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

                                                                    _____
                                                                    Jeniphr Breckenridge (WSBA 21410)
                                                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                                                    1301 Fifth Avenue, Suite 2900
                                                                    Seattle, WA 98101

<u>December 8, 2005, Seattle, Washington</u>
    Date and Place of Execution

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF JENIPHR BRECKENRIDGE IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR EXPEDITED BRIEFING SCHEDULE AND ORAL ARGUMENT** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on December 8, 2005, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

# Exhibit A

```
                                                                     1

 1                   UNITED STATES DISTRICT COURT

 2                     DISTRICT OF MASSACHUSETTS

 3                             -oOo-

 4    In Re: Pharmaceutical

 5    Industry Average Wholesale

 6    Price Litigation                    MDL No. 1456

 7                                         Civil Action No.

 8                                         01-CV-12257-PBS

 9    This Document Relates to State of   CA No. 02-CV-00260-ECR

10    Nevada v. Abbott Laboratories, et al.,

11     (Nevada I), and

12    State of Nevada v. American Home

13    Products, et al.,                   CA No.02-CV-12086-PBS (Nevada II)

14

15              VOLUME 1 OF THE DEPOSITION OF

16                     COLEEN LAWRENCE

17                    August 15, 2005

18                   Carson City, Nevada

19

20

21

22    REPORTED BY:  DEBORAH MIDDLETON GRECO, CCR #113, RDR, CRR
```

ORIGINAL

1  electronic records such as email?

2      A    I do not know.  That would not be underneath my scope.

3      Q    Do you know who would know the answer to that
4  question?

5      A    Our administrator, Charles Duarte.

6      Q    In connection with this litigation, has -- have you
7  sent, you or anyone in the agency, sent around an email or some
8  other communication instructing employees to retain all
9  documents that might be relevant to the subject matter of this
10 litigation?

11          MS. BRECKENRIDGE:  Objection.

12          THE WITNESS:  I am unaware.

13 BY MR. DOVE:

14     Q    But you don't recall seeing any such communication?

15     A    Not a formal communication, no.  I was instructed by
16 my counsel in the very beginning not to destroy any type of
17 documents, to retain all documents regarding any of this
18 information.

19     Q    And did you -- have you instructed your staff to
20 comply with that instruction, as well?

21     A    Yes.

22     Q    Does the Division of Healthcare Financing and Policy

# Exhibit B

### Jeniphr Breckenridge

| | |
|---|---|
| **From:** | Chuck Duarte [cduarte@dhcfp.state.nv.us] |
| **Sent:** | Wednesday, November 30, 2005 8:59 AM |
| **To:** | Everyone (DHCFP) |
| **Cc:** | TIM TERRY; Jeniphr Breckenridge; CINDY PYZEL; Darrell Faircloth ; Mike Willden; Mary Liveratti |

**Importance:** High

To:     Division of Health Care Financing and Policy staff

From:   Charles Duarte, Administrator

Re:     In re: Average Wholesale Price Litigation
        Ongoing Litigation / Document Request

As many, of you are aware, the State of Nevada is involved in litigation entitled *State of Nevada v. American Home Products Corp., et al.;* this lawsuit is also known as the Average Wholesale Price Litigation or "AWP Litigation. This lawsuit was brought by the State of Nevada in 2002 through its Attorney General on behalf of the State of Nevada and persons residing in Nevada who have paid inflated charges for medications based in whole or in part on the defendant pharmaceutical companies use of the Average Wholesale Price for pricing of drugs for which the State reimburses.

The purpose of this e-mail is to confirm the proper handling and preservation of documents which might be relevant to the lawsuit. In this instance, the term "documents" is interpreted broadly to encompass paper, electronic and any other recorded forms of information that might be related to the lawsuit. **It is extremely important that any documents pertaining to the litigation are identified, separated from other files and protected. All destruction of records pertaining to the lawsuit must be stopped until the legal action has been resolved. Although the relevant time period for the lawsuit extends back to 1991, it is important that all documents which might be relevant are preserved and maintained regardless of their date. A description of documents that might be relevant is included below.**

This handling is consistent with the State's Authorized Records Retention and Disposition Schedules section relating to "Disposition Holds - Litigation."

In most cases, these steps have already been taken. We are issuing this e.mail as a reminder.

This request relates to your files, both electronic and paper, as well as division files and the files for any other individuals for whom you have responsibility.

To help you determine whether information might be covered by this communication, we have attached a copy of the questions and requests for documents that defendants have served upon the State. The title of this list of questions and requests is Defendants' First Set of Interrogatories and Requests for Production to the State of Nevada. Again, most of you have seen this document before as you have been involved in searching for and producing documents responsive to the questions and requests from your department's files, your files or the files of others.

A summary of the types of information - in both electronic and paper form - which would be covered follows. This is a summary only and is no substitute for the description in the attached document.

Generally all documents related to the division's prescription drug program should be separated from other files and preserved. More specifically, these documents might included documents containing information on the following list as well as others like them.

- The State's reimbursement of or expenditures for pharmaceutical products or dispensing fees;
- Pricing for the reimbursements or expenditures: AWP, MAP, MAC, WAC, EAC, Best Price, or other prices - from any source
- The methodologies for pricing and/or setting of reimbursement rates
- The cost of drugs
- Legislative testimony and preparation for legislative testimony involving any topic related to pharmaceutical products
- Public hearings, preparation for public hearings and any public comment involving any topic related to pharmaceutical products
- Communications with the federal government (including, but not limited to, HHS Offices of the Inspector General, HCFA, General Accounting Office), state governments or pharmaceutical manufacturers and/or their employees related to pharmaceutical products, including - but not limited to - studies and reports
- Pharmaceutical company information regarding drug pricing
- NDC Codes
- J-Codes
- The Federal Supply Schedule
- Rebate and Supplemental Rebate programs related to pharmaceutical drugs, including the programs themselves and any hearing mechanism for rebate disputes
- Provider comments regarding the State's reimbursement or expenditures for drugs and dispensing fees
- Documents related to Third Party Administrators, Benefits Consultants, or PBMs working for the State - whether or not actually retained
- Reviews or evaluations or studies of the State Medicaid program
- Dual eligible
- Provider payments
- cost containment efforts related to State expenditure for drugs
- Communications with National Association of Medicaid Fraud Control Units, the National Association of Attorneys General, PAL
- Responses to federal or state assessment, study, analysis, review or audit concerning reimbursement of pharmaceutical products, definitions or methods of determining EAC, use of AWP or dispensing fees.
- Ven-A-Care of the Florida Keys


If you have any questions about his request or believe that you are aware of circumstances under which these steps have not been followed for this litigation, please contact Deputy Attorney General L. Timothy Terry at 775.684.1185 **LTTERRY@ag.state.nv.us**  or the State's outside counsel, Jeniphr Breckenridge of Hagens Berman Sobol Shapiro at 206.224.9325 or jeniphr@hbsslaw.com .


**Charles Duarte**
Administrator
Division of Health Care Financing & Policy
1100 E. Williams St. Suite 101
Carson City, Nevada 89701
PH:  (775) 684-3677
Fax: (775) 687-3893

12/8/2005