# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION: 1:01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Judge Patti B. Saris<br>Magistrate Judge Marianne B. Bowler |

## DEFENDANT ABBOTT LABORATORIES' MEMORANDUM REGARDING TRACK TWO DISCOVERY SCHEDULE

In their Motion for Clarification of CMO 16 (the "Motion"), Plaintiffs yet again complain to the Court about alleged discovery delays that are either false or are now moot. As more fully described in Abbott's Opposition to Plaintiffs' Motion for Order Exempting Abbott Laboratories From Any Order Declining to Extend Deadline for Track Two Discovery ("Opposition"), Abbott has been diligent and cooperative in the discovery process, having now produced among other things more than 120,000 pages of documents and electronic sales data for 327 Abbott National Drug Codes. [1] *See* Opposition, Ex. 1 at ¶ 6. Moreover, most of the outstanding depositions of Abbott's employees as well as its 30(b)(6) witness will occur before the end of the year. Thus, a 90-day discovery extension as proposed by Track 2 Defendants is more than adequate for Plaintiffs and Abbott to complete any outstanding discovery. [2]

---

[1] Abbott incorporates herein its Opposition and the attached Declarations filed on November 23, 2005.

[2] Plaintiffs emphasize to the Court that Abbott did not join Defendants' opposition to Plaintiffs' earlier motion seeking to extend discovery and that somehow Abbott has reversed its position. *See* Motion at 3. Abbott did not reverse its position. Abbott did not join in the opposition because it believes, and still believes, that a modest

B1

In an effort to support their request for a six month discovery extension, Plaintiffs repeatedly mischaracterize Abbott's document production and deposition scheduling.  For example, Plaintiffs assert in the Motion that Abbott did not make a production between June and November 9, 2005, when Plaintiffs filed their Motion to Exempt Abbott.  Motion at 3.  This was incorrect the first time Plaintiffs suggested it in their Motion to Exempt Abbott (*see* Motion to Exempt Abbott at 5) and it is still incorrect.  As evidenced in Abbott's Opposition, Abbott has made countless productions to Plaintiffs, including sizeable productions on August 29, 2005 and November 4, 2005.[3]  *See* Opposition, Ex. 2 at ¶¶ 15-16.

Plaintiffs also suggest that Abbott delayed scheduling a 30(b)(6) deposition.  *See* Motion at 3.  To the contrary, Abbott produced three witnesses for voluntary interviews in August in response to a 30(b)(6) notice.  *See* Opposition, Ex. 2 at ¶ 22.  In addition, Abbott scheduled a deposition of another 30(b)(6) witness for August 17, 2005.  *See* Opposition, Ex. 2 at ¶ 25.  However, the day before the deposition was scheduled to go forward, the parties agreed, at Plaintiffs' initiation, to postpone the deposition after receiving this Court's ruling on class certification and so that Plaintiffs could expand the topics for the deposition.  *See* Opposition, Ex. 2 at ¶ 27.  This 30(b)(6) deposition has now been scheduled for December 20, 2005 -- thus rendering Plaintiffs' complaint moot.  *See* Opposition, Ex. 3 at ¶ 8.

Finally, while Plaintiffs' chart provides a so-called description of Abbott's "delay", conspicuously absent is any mention of Abbott's substantial discovery efforts:

---

(continued…)

modification to the discovery schedule for all Track Two Defendants is appropriate, which is precisely what the Track 2 defendants are now seeking in their Submission Regarding Discovery Schedule.  Abbott opposes, on the other hand, Plaintiffs' recent attempt to carve Abbott out from the Track Two schedule and be subjected to a separate six month discovery extension.

[3] Plaintiffs cannot seem to keep their assertions straight.  In their Motion to Exempt Abbott, Plaintiffs alleged that Abbott had not made a substantial production between June and October 28, 2005, when Plaintiffs served a Notice of Deposition.  Now, Plaintiffs claim that Abbott did not make a production between June and

B1

- In 2002, Abbott made its initial document production of approximately 50,000 pages pursuant to Case Management Order 5 ("CMO 5"). *See* Opposition, Ex. 1 at ¶ 2.

- Abbott produced sales transaction data for the Abbott drugs named in the AMCC on July 16, 2004 and July 23, 2004. *See* Opposition, Ex. 1 at ¶ 6.

- Plaintiffs did not pursue discovery against Abbott again until May 2005. *See* Opposition, Ex. 2 at ¶ 3.

- On June 6, June 8, June 10, and June 13, 2005, Abbott produced organizational charts and several CD-ROM of documents pursuant to CMOs 5 and 10 as well a codes table to help Plaintiffs' experts understand Abbott's electronic sales data. *See* Opposition, Ex. 2 at ¶¶ 8, 10-12.

- On August 29, 2005, Abbott produced several thousand pages of documents, contrary to Ms. Connolly's assertion in her November 9, 2005 declaration and Plaintiffs' "description of delay" chart in their Motion. *See* Opposition, Ex. 2 at ¶ 15.

- Abbott made additional document productions to Plaintiffs on November 4, November 11, November 18, November 23, and December 2, 2005. *See* Opposition, Ex. 2 at ¶ 16 and letters dated November 23, 2005 and December 2, 2005 attached hereto.

- To date, Abbott has produced over 120,000 pages of documents (in addition to thousands of documents previously produced pursuant to CMOs 5 and 10) and continues to make weekly productions to Plaintiffs.

- In addition, Abbott has provided requested information about its sales staff and sales data; has allowed Plaintiffs' counsel to interview three witnesses regarding Abbott's sales data; has produced a privilege log (which Abbott later revised at Plaintiffs' request); has produced several deposition transcripts and exhibits from other AWP cases; and has scheduled several depositions of Abbott witnesses as well as Abbott's corporate designee. *See* Opposition, Ex. 1 at ¶16; Ex. 2 at ¶¶ 10, 14-17, 22 and 24.

Given the sizeable production that Abbott has made and the fact that most of the outstanding depositions are scheduled for this month, a 90-day extension will be more than sufficient for the parties to complete discovery. Accordingly, Abbott requests that the Court grant a 90-day extension of Track Two discovery as requested by defendants.

---

(continued...)

November 9, 2005 when Plaintiffs filed their Motion to Exempt Abbott. As described above, neither assertion is true.

Dated: December 9, 2005

Respectfully submitted,

/s/ Toni-Ann Citera
James R. Daly
Tara A. Fumerton
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

B1

# JONES DAY

77 WEST WACKER · CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 · FACSIMILE: 312-782-8585

Direct Number: 312/269-1529
baoconnor@jonesday.com

November 23, 2005

**VIA MESSENGER**

Jennifer Fountain Connolly, Esq.
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Re:   In Re Pharmaceutical Industry Average Wholesale
      Price Litigation, MDL 1456 (D. Mass.)

Dear Jennifer:

I am sending you one enclosed CD-ROM that contains additional Abbott production documents.  The documents contained therein are labeled ABT AWP/MDL 108957 - ABT AWP/MDL 116722 and have been designated confidential as appropriate.

Please contact me if you have any questions.

Sincerely,

*Beth O'Connor*
/aa

Beth A. O'Connor

cc:  Toni-Ann Citera

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MENLO PARK · MILAN · MUMBAI · MUNICH · NEW DELHI · NEW YORK
PARIS · PITTSBURGH · SAN FRANCISCO · SHANGHAI · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

B1

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number: 312/269-1529
baoconnor@jonesday.com

December 2, 2005

<u>VIA MESSENGER</u>

Jennifer Fountain Connolly, Esq.
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Re:    In Re Pharmaceutical Industry Average Wholesale Price Litigation,
       MDL 1456 (D. Mass.)

Dear Jennifer:

    I am sending you the enclosed CD-ROM that contains additional Abbott production documents. The documents contained therein are labeled ABT AWP/MDL 116723 - ABT AWP/MDL 122283 and have been designated confidential as appropriate.

    Please contact me if you have any questions.

Sincerely,

Beth A. O'Connor

cc: Toni-Ann Citera

CHI-1509071v1

B1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 Civil No.: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO THE AMENDED MASTER CONSOLIDATED CLASS ACTION | Hon. Patti B. Saris |

## AMGEN INC.'S INDIVIDUAL RESPONSE
## REGARDING TRACK TWO DISCOVERY SCHEDULING

Plaintiffs' continuing assertion that Amgen Inc. has dragged its feet in completing document discovery is baseless and squarely inconsistent with the demonstrable record in this case. As Amgen's prior responses to plaintiffs' original motion to modify that Track Two discovery schedule and separate motion to compel make plain, Amgen repeatedly sought to meet and confer with plaintiffs *over the course of nearly six months* between December 2004 and May 2005, only to be rebuffed by plaintiffs, who indicated they were too busy to meet.[1] These meetings were intended to pare down plaintiffs' requests and to avoid what plaintiffs characterized as a massive and unwanted "data dump." More to the point, Amgen

---

[1]   Amgen respectfully refers the Court to the separate Declarations and accompanying exhibits attached to Amgen's prior submissions, which lay out in detail Amgen's efforts to meet and confer with plaintiffs. Plaintiffs have not, nor can they, refute these facts.

Oddly, plaintiffs' original motion to modify the Track Two schedule sought a 90 day extension, based on supposed delays in defendants' productions. These same complaints served as a basis only weeks later for plaintiffs' request for a six-month extension, in connection with plaintiffs' motion to compel. Now, precisely the same (albeit demonstrably incorrect) assertions are the basis for what amounts to an eight-month extension of discovery.

made clear in its exchanges with counsel that it was unable to undertake a review of potentially responsive documents until obtaining such guidance from plaintiffs.

Simply put, any delay in Amgen's ability to complete production is thus of plaintiffs' – and not Amgen's – making.   Once Amgen received plaintiffs' long-promised "short list" on May 26, it began a comprehensive search for responsive documents and, since June 27, has made five separate productions of both sales data and documents comprising more than 27,000 pages.[2] Amgen currently expects to substantially complete its production in response to plaintiffs' modified requests by the end of this month.  A 90-day extension will thus provide the parties with more than adequate opportunity to complete discovery.

Respectfully submitted,

Frank A. Libby, Jr.
Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, Massachusetts  02110
Telephone:  (617) 338-9300

Joseph H. Young
Steven F. Barley
Hogan & Hartson L.L.P.
111 S. Calvert St., Suite 1600
Baltimore, Maryland  21202
Telephone:  (410) 659-2700

December 9, 2005

---

[2]    Unlike most other defendants, Amgen did not have a ready-made production pursuant to CMO No. 5 because it had not previously produced documents relating to alleged manipulation of AWP as part of a government investigation.  In addition to its ongoing production, Amgen also made three corporate representatives available for Rule 30(b)(6) depositions at plaintiffs' request in 2004.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:   PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br><br>CIVIL ACTION NO. 01-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>**ALL CLASS ACTIONS** | |

## DEFENDANT AVENTIS PHARMACEUTICALS INC.'S STATEMENT
## REGARDING TRACK TWO DISCOVERY SCHEDULE

As set forth in their December 1, 2005, Stipulation and Proposed Order regarding Aventis Pharmaceuticals Inc.'s Motion for Protective Order/Plaintiffs' Cross-Motion to Conduct More Than Ten Deposition, Aventis and Plaintiffs are in agreement as to the remaining fact discovery to be conducted.  Aventis and Plaintiffs anticipate that such fact discovery will be concluded on or about January 15, 2006.  Accordingly, the deadlines proposed in the Track Two Defendants' Submission Regarding Discovery Schedule will, for all practical purposes, apply to Aventis with respect to the proposed expert deadlines only .

Dated: December 9, 2005

Respectfully submitted,

/s/ Michael DeMarco
**Michael DeMarco (BBO #119960)**
**mdemarco@klng.com**
**Jeffrey S. King (BBO #559000)**
**jking@klng.com**
**David M. Glynn (BBO #650964)**
**dglynn@klng.com**
**Cara E. Corbett (BBO #654852)**
**ecorbett@klng.com**

KIRKPATRICK&LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109-1808
(617) 261-3100

Michael L. Koon
James P. Muehlberger
SHOOK HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

*Attorneys for Defendants Aventis*
*Pharmaceuticals Inc.*

1831108v1

B3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL NO. 1456 |
| | ) | CIVIL ACTION NO. 01-CV-12257-PBS |
| THIS DOCUMENTS RELATES TO: *All Class Actions* | ) ) ) ) | Judge Patti B. Saris |

## BAYER CORPORATION'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE TRACK TWO DEFENDANTS' SUBMISSION REGARDING DISCOVERY SCHEDULE

Defendant Bayer Corporation ("Bayer") makes this supplemental submission to correct errors in Plaintiffs' recent Motion For Clarification (Doc. 1912) concerning discovery of Bayer. Plaintiffs' have relied on these erroneous statements to support their request for a substantial extension of the discovery schedule provided in CMO 14.

Contrary to Plaintiffs' assertions, Bayer has not been tardy in its responses to discovery. Any deadline pressure Plaintiffs now face is entirely the result of their own decision to delay reviewing and following up on documents and information that have been available to Plaintiffs for months and in some cases years.

**Document Production.**  Bayer long ago produced the vast majority of documents requested in discovery.  For example, in May 2004, Bayer produced approximately 100 boxes of hard-copy documents to Plaintiffs, by informing Plaintiffs that these documents were available for review and copying.  Declaration of Michael Doss (Doss Dec.), ¶ 3 (attached).  Several months later, when Plaintiffs still had not come to review the initial production, Bayer informed Plaintiffs that approximately 400 boxes of documents were available for review. *Id.*  Plaintiffs first reviewed a subset of this production (approximately 200 boxes of hard-copy documents) on

B4

October 20-21, 2004, but did not return to review the remainder of this production until over 8 months later, on July 6-8, 2005. *Id.* Plaintiffs then waited until October 7, 2005 to tender payment for scanning charges for the subset of boxes they wished delivered to them. *Id.* As of that date, Plaintiffs had not yet taken their first Bayer deposition – despite the facts that (i) Bayer had made its witnesses available since shortly after they were noticed in May 2004, and (ii) Plaintiffs faced a December 3, 2005 discovery cut-off date.

In addition to the hard-copy documents, Bayer also produced over 190,000 pages of electronic sales transaction data to plaintiffs in August 2004. *Id.* Bayer produced this data in response to plaintiffs' request that sales transaction data be provided prior to additional productions of electronic information. In July 2005, in response to Plaintiffs' request for additional sales transaction data, Bayer supplemented this production. *Id.*

Plaintiffs' comment in the Clarification Motion that Bayer made a "supplemental production of approximately 181,000 pages on November 2, 2005," is false and misleading. Bayer produced these documents in 2004, when Plaintiffs were invited to review them on site or have them copied and delivered. The delay in physically delivering these documents to Plaintiffs was entirely based on Plaintiffs' own conduct.

As more fully set forth in a November 2, 2005 letter from Bayer's counsel to Plaintiffs' counsel (Exhibit A to Doss Dec.), Bayer has promptly complied with its discovery obligations from the outset of this case. Plaintiffs' accusations of delay on the part of Bayer are meritless. They represent nothing more than an attempt to shift the blame for Plaintiffs' own lack of diligence.

**Depositions.** Bayer also has promptly made witnesses available for depositions as requested by Plaintiffs. The Plaintiffs, not Bayer, have postponed and delayed taking such depositions. Plaintiffs first noticed depositions of Bayer representatives in May 2004, when they served Rule 30(b)(6) deposition notices. Bayer repeatedly asked Plaintiffs to schedule dates for these 30(b)(6) depositions. Plaintiffs did not first attempt to schedule these depositions until this past summer. While Plaintiffs' statement in their Clarification Motion that Bayer "[p]ostponed

B4

Rule 30(b)(6) depositions in September" is literally true, it is fundamentally misleading. Bayer had offered dates for this witness in June, July, August, and September. After Plaintiffs agreed to a September date, a conflict arose for the witness, who was required to be overseas on the agreed-on date. Bayer requested a new date, and Plaintiffs rescheduled the deposition for November 10. On that date, less than a month before the scheduled the discovery cut off, Plaintiffs took their first Bayer deposition.

On November 16, 2005, Plaintiffs noticed six additional Bayer depositions. Although Bayer has agreed to produce those witnesses for deposition, it has at no time conceded, as Plaintiffs' assert, "that discovery cannot be completed by December 3." Clarification Motion (Doc. 1912), at 4. Instead, it is Bayer's view that Plaintiffs could have easily completed all discovery well in advance of December 3, 2005. Bayer agreed to produce witnesses after December 3, 2005 that were notice before December 3, 2005 both as reasonable accommodation to Plaintiffs' counsel and because Bayer does not wish to engage in discovery motion practice on this particular topic.

For these reasons, and those articulated in the Track Two defendants' joint motion, Bayer requests that the discovery scheduled proposed by defendants be entered by the Court.

Dated: December 9, 2005                    Respectfully submitted,

                                           /s/ Michael Doss
                                           Richard D. Raskin
                                           Michael P. Doss
                                           SIDLEY AUSTIN BROWN & WOOD, LLP
                                           1 S. Dearborn Street
                                           Chicago, Illinois 60603
                                           312-853-7000 (tel.)
                                           312-853-7036 (facsimile)
                                           *Attorneys for Defendant Bayer Corporation*

B4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )))) | MDL NO. 1456 |
|  | CIVIL ACTION NO. 01-CV-12257-PBS |
| ) | Judge Patti B. Saris |
| THIS DOCUMENTS RELATES TO: *All Class Actions* ))) |  |

### DECLARATION OF MICHAEL DOSS

I, Michael Doss, hereby declare and state as follows:

1.     I am an attorney admitted to practice in the State of Illinois and am a partner with the law firm of Sidley Austin Brown & Wood.  I have been admitted pro hac vice to practice before this Court in the above-captioned action as one of the counsel for defendant Bayer Corporation ("Bayer").   I submit this declaration in connection with Bayer's Supplemental Memorandum In Support Of The Track Two Defendants' Submission Regarding Discovery Schedule.   I have knowledge of the facts stated below based on my personal knowledge and my review of materials in this and related proceedings.

2.     Attached hereto as Exhibit A is a true and correct copy of a letter dated November 2, 2005 from Richard Raskin, counsel for Bayer, to Jennifer Fountain Connolly, counsel for Plaintiffs, in the above-captioned action.  This letter sets forth the discovery history in this action as it concerns Bayer.

3.     As reflected in Exhibit A, Bayer has engaged in the following document production in this action:

- December 16, 2002  - Bayer produces 8000 pages of documents in response to CMO 5.

-1-

B4

- May 28, 2004 - Bayer produces 100 boxes of documents in Chicago, Illinois by advising Plaintiffs of their availability for review and copying. Plaintiffs do not seek to review these documents until October 2005.

- August 25, 2004 – Bayer ships compact discs to Plaintiffs containing over 190,000 pages of electronic sales transaction data. Plaintiffs had previously requested that Bayer produce such sales transaction data in advance of other document or other electronic productions.

- Oct.-Dec. 2004 – Bayer informs Plaintiffs that approximately 400 boxes of hard-copy documents are available for review in Chicago.

- October 20-21, 2004 – Plaintiffs first review about 191 boxes of hard-copy documents in Chicago (out of the approximately 400 boxes described above). Plaintiffs do not then request that any of these documents be copied or scanned.

- On July 6-8, 2005 – Plaintiffs return to review the remaining hard-copy documents in Chicago (approximately 200 boxes). Plaintiffs do not request that any of these documents be copied or scanned at that time.

- On July 18, 2005 – Bayer produces a compact disk to Plaintiffs containing additional sales transaction data in response to a request from Plaintiffs for information in addition to what had been produced in August 2004.

- August 18, 2005 – Plaintiffs request that approximately 43 boxes out of the approximately 400 boxes reviewed in Chicago in October 2004 and July 2005 be scanned and delivered to them. Plaintiffs agree to tender payment for scanning of these documents under a shared-expense arrangement previously agreed upon in 2004.

- October 7, 2005 – Defense counsel first receive a check from Plaintiffs for scanning expenses for the 43 boxes previously identified in August.

- November 2, 2005 – Bayer ships the documents referenced above to Plaintiffs.

4.      I informed counsel for Plaintiffs' repeatedly in 2004 that Bayer's production would include a significant volume of electronic material, in addition to the hard-copy documents produced in 2004 and the specific sales transaction data that Plaintiffs' counsel requested be provided first. Until last week, Plaintiffs never followed up. While they eventually reviewed hard copy documents and asked for copies of some of them, they never inquired further about electronic materials other than sales transaction data until December 2, 2005 – the day before the scheduled cut off.

B4

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on December 8, 2005 at Chicago, Illinois.


        /s/ Michael Doss
        Michael Doss

B4

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | **BANK ONE PLAZA** | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| | www.sidley.com | |
| HONG KONG | FOUNDED 1866 | TOKYO |
| LONDON | | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-2170

WRITER'S E-MAIL ADDRESS
rraskin@sidley.com

November 2, 2005

**BY MESSENGER**

Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street
Suite 2000
Chicago, IL 60602

Re:   In re Pharmaceutical Industry Average Wholesale Price Litigation,
       MDL No. 1456

Dear Jennifer:

   Enclosed with this letter are 6 disks containing Bayer documents BAYAWP00000001 - BAYAWP00181644. This production supplements the documents previously produced or made available by Bayer to plaintiffs.

   In light of the length of time that has passed since Bayer first made documents available, we think it appropriate to recount here the prior productions made by Bayer. Bayer's first production to plaintiffs occurred in 2002 pursuant to Case Management Order No. 5. That production included over 8000 pages of documents previously produced in connection with governmental investigations related to AWP. (BAY 1-6393; BAYM 1-635, 874-1531, 1654-1668, 1712-2036, 2090-2114, 2118-4755, 6763-6785A, 7673-12066, 12069-12088). Those documents were shipped to Thomas Sobol and Ed Notargiacomo of Hagens Berman LLP on December 16, 2002.

   The next round of production occurred following service of plaintiffs' omnibus requests for production on March 31, 2004. In response to those requests, we conferred with Allan Hoffman of Hoffman & Edelson, LLC. On May 28, 2004, we informed plaintiffs that approximately 100 boxes of hard-copy documents were available for review at Sidley's Chicago offices and that additional documents would soon be available for review in electronic form. Plaintiffs requested that Bayer initially produce certain sales transactional data electronically. Pursuant to that request, on August 25, 2004 we shipped several compact discs to your office

SIDLEY AUSTIN BROWN & WOOD LLP IS A LIMITED LIABILITY PARTNERSHIP
PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

Exhibit A

B4

S IDLEY  A USTIN  B ROWN  &  W OOD  LLP                                       C HICAGO

Jennifer Fountain Connolly
November 2, 2005
Page 2


containing sales transaction and chargeback data for the Bayer AWPIDs.  (BAY-E90000001 –
BAY-E90190451).

        Plaintiffs initiated their first on-site review of Bayer documents in the fall of
2004.  On October 20-21, 2004, Mr. Hoffman, along with two other individuals, came to our
Chicago offices and examined approximately 200 boxes of documents.  No electronic files were
reviewed at that time.  From these 200 or so boxes, plaintiffs designated 72 boxes to be copied
for production and identified an additional 87 boxes as possible candidates for copying and
production.  We presented a cost-sharing proposal to plaintiffs regarding these hard-copy
documents, whereby plaintiffs would share in some of the expense of having these documents
scanned and converted into electronic form for production.  Plaintiffs took this cost-sharing
proposal under advisement, and directed us to postpone the physical copying and prooduction of
the designated documents documents until this issue was resolved.

        On April 20, 2005, Sean Matt of Hagens Berman wrote to us indicating that
plaintiffs had "refined their requests for sales-related data" based on experience with the Track
One defendants.  Following this letter, we conferred again with Mr. Hoffman. On July 18, 2005,
we produced a compact disk to Mr. Hoffman containing files that reflected additional
transactional sales and chargeback data for the Bayer AWPIDs.  Specifically, the files produced
on this compact disc contained sales and chargeback data from January 1, 1997 through February
28, 2001 for Bayer's ethical and biological AWPIDs.  This data was retrieved from a legacy
system at Bayer that has not been used since 2001.  Because the products described in the files
were tracked in the legacy system according to internal product codes that do not necessarily
correlate with NDCs, we also enclosed an NDC/product code crosswalk.

        On July 6-8, 2005, plaintiffs' counsel returned to our Chicago offices to review
additional boxes of hard-copy Bayer documents and to re-examine the boxes previously
reviewed in October 2004.  Following the review, you initially designated a total of 110 boxes
for production.  You subsequently limited your production request to 48 boxes, which represents
the material contained on the enclosed disks.

        Please let me know if you have any questions concerning the enclosed documents,
this letter, or the status of Bayer's production.

                              Very truly yours,

                              /s/ Richard D. Raskin

                              Richard D. Raskin


Enclosures

cc:    Michael P. Doss

                                                                              B4

                                                                  Exhibit A

CH1 3364016v.1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION _____ THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) ) ) ) ) ) | MDL NO. 1456 CIVIL ACTION: 01-CV-12257-PBS JUDGE PATTI B. SARIS |

## DEFENDANT B. BRAUN MEDICAL INC.'S MEMORANDUM REGARDING TRACK TWO DISCOVERY SCHEDULE

Defendant B. Braun Medical Inc. ("BBM") joins in the submission made jointly on behalf of Track Two Defendants regarding the discovery schedule.  BBM is compelled to write separately to rebut the erroneous premise of plaintiffs' own alternative schedule that "most Track Two Defendants [including BBM], to varying degrees, have significantly delayed producing information and, consequently, have prejudiced Plaintiffs' ability to complete discovery."  (*See* 11/28/2005 Pls.' Mot. For Clarification of Case Management Order #16 at 2.)  The reality is that the plaintiffs have wholly failed to timely undertake and complete discovery from BBM, and that it is BBM alone that continues to be prejudiced by plaintiffs' improper litigation tactics.  BBM cannot be blamed for the fact that the plaintiffs have utterly disregarded this Court's December 3, 2005 discovery cut-off.  Nor can BBM be chastised for the fact that its motion to dismiss for lack of subject matter jurisdiction – promptly filed on March 21, 2005 and argued on July 14, 2005 – remains pending.  The record shows plainly that at all times throughout this litigation, both BBM

B5

and its parent B. Braun of America Inc. ("BBA"), have fully honored whatever discovery obligations they may have had.

In September 2002, BBM was dragged into this litigation as a defendant in this MDL proceeding as part of the plaintiffs' Master Consolidated Class Action Complaint. As required by this Court, BBM produced to the plaintiffs all documents it had previously produced to other government entities relating to AWP issues. (*See* 10/28/2002 Case Management Order No. 5.) In May 2003, this Court ruled favorably on BBM's motion to dismiss and BBM was dismissed from the litigation. (*See* 5/13/2003 Order on Motions to Dismiss at 45-47.) From that point until February 2005, BBM was not a defendant in this litigation and remained a non-party.

Following this Court's ruling, the plaintiffs filed their Amended Master Consolidated Class Action Complaint ("AMCC") in June 2003. There, plaintiffs chose not to reallege any claims against BBM and instead added BBA as a new defendant. BBA promptly moved to dismiss based on the lack of personal jurisdiction over it. But, per this Court's directive as to the other remaining defendants, BBA fully participated in discovery sought by the plaintiffs.

On March 31, 2004, the plaintiffs served BBA with their Omnibus Requests for Production and Interrogatories. In response, BBA explained that it neither manufactured nor sold any of the drugs identified in the AMCC. Nonetheless, on June 1, 2004, BBA made available for inspection and copying documents that would be responsive to the plaintiffs' Omnibus Requests. (*See* 6/01/2004 Ltr. from C. Kass to J. Kodroff et al.) Plaintiffs' counsel neither inspected nor requested a copy of any of those documents.

BBA continued to participate in discovery until it was dismissed for lack of personal jurisdiction in February 2005. The plaintiffs filed a second request for production of documents on May 26, 2004 (*see* Pls.' Req. for Prod. to Defs. Regarding HHS ASPs), to which BBA

B5

responded on June 28, 2004, and a third request for the production of documents on July 14, 2004 (*see* Pls.' Third Set of Req. for Prod. of Docs. to All Defs.), to which BBA responded on August 16, 2004.   On August 4, 2004, the plaintiffs served BBA with a notice of 30(b)(6) deposition relating to BBA's claim of lack of personal jurisdiction.   Despite the untimeliness of this notice,[1] BBA offered a witness for deposition on August 17, 2004.

When the plaintiffs could find no basis to support their claims of personal jurisdiction over BBA, they moved for leave to bring BBM back into the case as a defendant.   On February 4, 2005, this Court allowed the plaintiffs to file their Second Amended Master Consolidated Class Action Complaint ("SAMCC") realleging claims against BBM.

On March 21, 2005, BBM promptly filed a motion to dismiss the SAMCC.   As explained fully therein, BBM must be dismissed because the Court lacks subject matter jurisdiction over the plaintiffs' claims against BBM.   The plaintiffs have admitted that two of their claims – Counts II and IX – are fatally defective and cannot support this Court's subject matter jurisdiction.   BBM has showed that there is likewise no subject matter jurisdiction over the remaining two claims – Counts III and IV – on the basis of any federal question, diversity of citizenship, the Declaratory Judgment Act, or the newly enacted Class Action Fairness Act. After BBM's motion to dismiss was fully briefed, it was referred to Judge Bowler, who heard argument on it on July 14, 2005.

Despite BBM's pending motion to dismiss, and this Court's previous Orders staying discovery during the pendency of such motions (*see* 10/28/2002 CMO No. 5 at ¶ 3; 8/15/2003 CMO No. 7 at ¶ II(1)), the plaintiffs served two notices of 30(b)(6) depositions on BBM in May

---

[1]   When the plaintiffs moved to compel additional testimony relating to this Notice, Judge Bowler denied their motion on the grounds that the plaintiffs failed to comply with this Court's Order requiring 21 days' notice of depositions (*see* 10/14/2004 Order (reasons cited on record)).

2005.  BBM promptly moved for a protective order "staying discovery pending resolution of BBM's motion to dismiss the plaintiffs' claims against it."  (*See* 5/23/05 BBM Mem. In Support of Mot. for Prot. Order at 1.)  That motion also remains pending before Judge Bowler.

On November 3, 2005, plaintiffs purported to serve BBM with additional discovery demands – namely, Requests for Production of Documents and Interrogatories.  This discovery was untimely.  Under Case Management Order No. 10, BBM is not required to produce any documents until 60 days after service of document requests.  Thus, the return date for producing documents is not until January 5, 2006 – which is well after this Court's December 3, 2005 cut-off for Track Two discovery.  In addition, under the applicable schedule, BBM is not required to answer any interrogatories until at least 30 days after service – a date which is also after the December 3, 2005 discovery cut-off.  As a result, this discovery is improper, and BBM has correctly objected to it.  Again ignoring this Court's December 3, 2005 discovery cut-off, on November 15, 2005, plaintiffs served new document requests on Track Two defendants, including BBM, even though such discovery would not be due until after the close of discovery. (*See* Pls.' Am. and/or Supp. Req. for Prod. of Docs. to Phase 2 Defs. Relating to IMS Data.)[2]

Clearly, any inability of the plaintiffs to complete discovery of BBM within the time period prescribed by the Court is the result of their own lack of diligence.  It was plaintiffs' decision not to include BBM in their AMCC, a choice that resulted in BBM not being a party to this litigation from May 2003 to February 2005.  It was the plaintiffs who requested that BBA produce documents in June 2004, but then never bothered to inspect or copy them.  It was the plaintiffs who improperly sought to take depositions of BBM in May 2005, before its motion to

---

[2]   The plaintiffs sought IMS data from the Track One defendants almost four months earlier.  If the plaintiffs had wanted similar data from the Track Two defendants, they could and should have requested it at that time.  BBM will respond to the plaintiffs' latest request for discovery in due course.

dismiss for lack of subject matter jurisdiction was even argued. It was plaintiffs who waited until it was too late to comply with this Court's December 3, 2005 discovery cut-off before seeking any other discovery from BBM. In short, plaintiffs cannot blame BBM for plaintiffs' own failure to properly and timely seek discovery from BBM.

BBM, by contrast, has fulfilled its responsibilities. When it was initially a defendant in the litigation, it timely produced the documents required by Case Management Order No. 2. After it was returned to the litigation in February 2005, it promptly moved to dismiss the SAMCC for lack of subject matter jurisdiction. When plaintiffs improperly sought to take depositions while the dispositive motion was pending, BBM moved for a protective order. And, finally, when plaintiffs sought to take discovery outside of this Court's December 3, 2005 discovery cut-off, BBM properly objected.

Dated: December 9, 2005

Respectfully submitted,

  /s/ Daniel F. Attridge
Daniel F. Attridge, P.C.
Colin R. Kass
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Tel:   (202) 879-5000
Fax:  (202) 879-5200

Attorneys for B. Braun Medical Inc.

B5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | CIVIL ACTION NO. 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**DEFENDANT IMMUNEX CORPORATION'S MEMORANDUM
REGARDING TRACK TWO DISCOVERY SCHEDULE**

Defendant Immunex Corporation joins in the submission made jointly on behalf of Track Two Defendants regarding the discovery schedule. Although Plaintiffs' Motion for Clarification of Case Management Order #16 did not single out Immunex for any alleged delays in discovery, Immunex writes separately to rebut the implication in Plaintiffs' motion that Immunex might be included in the category of "most Track Two Defendants" that allegedly and "to varying degrees, have significantly delayed producing information and, consequently, have prejudiced Plaintiffs' ability to complete discovery." Pls.' Mot. at 2. As to Immunex, that is simply untrue.

Immunex began producing documents to plaintiffs over three years ago. In response to CMO 5, in December 2002, Immunex produced to Plaintiffs over 100 boxes of documents

1

and various electronic files, including sales data, which Immunex had previously produced to various governmental entities.  Starting in December 2003, Immunex made nine more supplemental productions to plaintiffs.  Many of the supplemental productions included categories of documents and electronic sales data specifically requested by the Plaintiffs.  Immunex's final supplemental production was on September 14, 2005.  Immunex has produced over 150,000 pages of documents and voluminous electronic files of sales data on all of the five Immunex drugs at issue in this case.  Immunex has no outstanding document issues with Plaintiffs.

As to depositions, plaintiffs scheduled and then canceled three Immunex Rule 30(b)(6) witnesses set for May 25-27, 2004.  Plaintiffs then scheduled and deposed two Immunex Rule 30(b)(6) witnesses in September 2005.  Plaintiffs noted depositions of five Immunex fact witnesses before December 3, 2005, one of which occurred prior to December 3.  As to the remaining four depositions, counsel for Immunex and counsel for Plaintiffs have agreed to schedule them at the convenience of the witnesses and counsel for both sides.  At this point, it appears that they are likely to occur in January.  In sum, Immunex believes that Plaintiffs have had ample opportunity for discovery of Immunex and the only remaining discovery of Immunex to which Plaintiffs are entitled are the four depositions that Plaintiffs noted prior to December 3.

Plaintiffs have had every opportunity to complete discovery of Immunex within the time period established by the Court at Plaintiffs' request.  No further extension – other than to complete the four depositions noted by Plaintiffs – is warranted.

[06735-0051-000000/SL053420 076]

DATED:  December 9, 2005.


Thomas J. Sartory
GOULSTON & STORRS LLP
400 Atlantic Avenue
Boston, MA 02110-3333
Telephone:  (617) 482-1776
Facsimile:  (617) 574-4112


/s/ Kathleen M. O'Sullivan
David J. Burman
Kathleen M. O'Sullivan
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000

Attorneys for Defendant Immunex Corporation

[06735-0051-000000/SL053420 076]

B6