# Exhibit A

KDW LLP

| | DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | STATUS |
|---|---|---|---|---|---|---|---|
| 001 | 12/08 | 1:44P | 16172270781 | EC--S | 05' 24" | 042 | OK |

# KELLEY
## DRYE

*KELLEY DRYE*
*& WARREN LLP*
*2005 DEC -8*

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Susan Hughes Banning, Esq. |
| **FIRM** | Hemenway & Barnes |
| **CITY** | Boston |
| **FAX** | 617-227-0781 |
| **PHONE** | 617-557-9701 |
| **NO. OF PAGES** | 42 (including this page) |
| **DATE** | December 8, 2005 |

**KELLEY DRYE & WARREN LLP**
**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**
**(212) 808-7800**
**FAX (212) 808-7897**

**MESSAGE:**

| | |
|---|---|
| **FROM** | Lorianne K. Trewick |
| **PHONE** | (212) 808-7740 |
| **E-MAIL** | ltrewick@kelleydrye.com |
| **TIMEKEEPER ID** | 03844 |
| **CLIENT NO.** | 015136.0001 |

**NEW YORK, NY**
**WASHINGTON, DC**
**TYSONS CORNER, VA**
**CHICAGO, IL**
**STAMFORD, CT**
**PARSIPPANY, NJ**
**BRUSSELS**

**AFFILIATE OFFICES**
**JAKARTA**
**MUMBAI**

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (212) 808-5035.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

NY01/TREWL/1068857.1

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

IOI PARK AVENUE

NEW YORK, NEW YORK IOI78

———

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-7740

EMAIL: ltrewick@kelleydrye.com

December 8, 2005

**VIA FACSIMILE AND MAIL**

Susan Hughes Banning
Hemenway & Barnes
60 State Street
Boston, Massachusetts 02109-1899

Re:   <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>

Dear Ms. Banning:

As you know, this firm represents Dey, Inc. in this action. I write regarding the subpoena served on Neighborhood Health Plan, Inc. ("Neighborhood"), dated November 9, 2005 (the "Subpoena") and to follow-up on our telephone conversation last Friday, December 2, 2005.

We are in receipt of Neighborhood's objections, dated November 21, 2005, to the Subpoena. As I explained in a November 28, 2005 voicemail to you, and in more detail during our conversation on December 2, we did not contact you prior to November 28 because your objections were addressed to a "Paul Boyle" and there is no such attorney at Kelley Drye. As a result, we only became aware of Neighborhood's objections from the reference to them in your letter dated November 28, 2005, received by facsimile. We also have Neighborhood's motion for a protective order, served and filed on November 29, 2005. Between its objections and its motion for a protective order, Neighborhood raises three primary arguments: that the discovery sought is not proper since Neighborhood is an absent class member and defendants have taken discovery from other absent class members, that confidentiality concerns prevent a response, and that responding to the Subpoena would be burdensome. None of these arguments provides a basis for refusing to comply with the subpoena, and we request that Neighborhood immediately withdraw its objections and motion for a protective order.

As you may know, every time the issue of absent class member discovery has been before the Court, the Court has affirmed defendants' right to take such discovery. In light of this record, we believe Neighborhood's objection to the Subpoena as outside the scope of proper discovery is unfounded. Indeed, although Neighborhood contends that discovery taken of

KELLEY DRYE & WARREN LLP

other absent class members somehow relieves it of the obligation to comply with the Subpoena, Neighborhood offers absolutely no support for that notion.

As to confidentiality, there are two protective orders in this action entered by the Court to address confidentiality concerns, including a HIPPA-compliant order. Copies of these orders are enclosed. We trust that these orders resolve any confidentiality concerns Neighborhood may have.

Neighborhood's burden objections similarly carry little weight, particularly in light of Dey's willingness to narrow the scope of the Subpoena and to propose an accommodation as to the timing of disclosure. We recognize that Neighborhood is a not-for-profit health maintenance organization. Notwithstanding, Neighborhood cannot be relieved of its obligations to respond to the Subpoena simply based on its status as a not-for-profit. Moreover, the Court has previously rejected similar burden objections by other plans on several occasions. We are willing to work towards an agreement that would allow Neighborhood to respond to the Subpoena, and produce a 30(b)(6) witness, on a mutually agreed schedule. As such, we propose to narrow the scope of the Subpoena with: (a) the enclosed copy of a narrowed list of subject drugs representing the physician administered drugs named in the litigation; and (b) the enclosed schedule of a significantly narrowed set of document requests. As to reasonable time to respond to the Subpoena, we propose a rolling production of documents throughout December and into January.

Please review the attached, narrowed requests and subject drug list, and let us know at your earliest convenience whether further discussions regarding those requests would be productive.

We believe that a mutually acceptable agreement regarding the Subpoena is still possible although motion practice is now a reality in light of Neighborhood's motion for protective order. However, should we be forced to respond to Neighborhood's motion for a protective order, or need to make a motion to overrule Neighborhood's objections, we reserve all of our rights in that event.

Very truly yours,

Lorianne K. Trewick

# PROTECTIVE ORDER



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF:        Case: 1:01-cv-12257

                        --------------------------------
                        Judge Patti B. Saris - pre

        Citizens for Consume - plaintiff

        v.

        Abbott Laboratories, - defendant

----------------------------------------------------------
                NOTICE OF ACTION BY THE COURT

        Notice To:

                Edward Notargiacomo,Esq.
                Hagens Berman
                225 Franklin St.
                26th FLoor
                Boston, MA  02110

  **

        The following ruling was made on 12/13/02 and entered on the docket:

        Judge Patti B. Saris. Endorsed Order entered granting
        [275-1] joint motion for protective order. Allowed, subject
        to the courts modification. cc/cl [EOD Date 12/16/02]



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456 ) ) CIVIL ACTION: 01-CV-12257-PBS ) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) Judge Patti B. Saris ) ) ) |

## PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby stipulated and agreed, by and between the parties, through their respective counsel, as follows:

**IT IS HEREBY STIPULATED AND ORDERED AS FOLLOWS:**

1.     This Protective Order shall apply to the actions that have been consolidated for pretrial proceedings as *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS and all future actions that are transferred to MDL No. 1456 for coordinated or consolidated pretrial proceedings (collectively referred to herein as "the AWP Litigation").

2.     The terms and conditions of this Order shall govern initial disclosures, the production and handling of documents, answers to interrogatories, responses to requests for admissions, depositions, pleadings, exhibits, other discovery taken pursuant to the Federal Rules of Civil Procedure, and all other information exchanged by the parties or by any third party in response to discovery requests or subpoenas.

3.     The designation "CONFIDENTIAL" shall be limited to information that any producing party, including any third party, in good faith, believes to contain (a) proprietary or commercially sensitive information; (b) personal financial information; or (c) information that should otherwise be subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure.





4.      Information designated "CONFIDENTIAL" may be disclosed only to the following persons:

(a)     a named "Individual Patient Plaintiff" (*e.g.*, persons identified in Paragraphs 13 through 21 of the September 6, 2002, Master Consolidated Class Action Complaint in the AWP Litigation ("Complaint")) who have executed a Certification attached hereto as Exhibit A;

(b)     in-house counsel of a named party or, for a "Third-Party Payor" or "Non-Profit Association," as those terms are used in the Complaint, that does not have in-house counsel, one officer or employee of that party who is responsible for the AWP Litigation for that party and who has executed a Certification attached hereto as Exhibit A;

(c)     outside counsel representing a named party in the AWP Litigation, including all paralegal assistants, and stenographic and clerical employees working under the supervision of such counsel;

(d)     court reporters, interpreters, translators, copy services, graphic support services, document imaging services, and database/coding services retained by counsel, provided these individuals or an appropriate company official with authority to do so on behalf of the company executes a Certification attached hereto as Exhibit A;

(e)     an expert or consultant who (i) is retained by any attorney described in Paragraphs 4(b) and (c) to assist with the AWP Litigation, (ii) is not a current employee of a party or subsidiary or affiliate of a party, and (iii) such expert or consultant executes a Certification attached hereto as Exhibit A;

(f)     a person who prepared, received, or reviewed the "CONFIDENTIAL" information prior to its production in the AWP Litigation;

(g)     during depositions and preparation for depositions, a deposition witness who is a current employee of the party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have knowledge of the contents of the document designated "CONFIDENTIAL" or the specific events, transactions, discussions, or date reflected in the document, provided such witness executes a Certification attached hereto as Exhibit A;

(h)     any private mediators utilized in the AWP Litigation, provided such person executes a Certification attached hereto as Exhibit A; and

(i)     the Court, and any Special Masters and/or Mediators appointed by the Court, under seal.



5.      The designation "HIGHLY CONFIDENTIAL" or "ATTORNEY EYES ONLY" (collectively referred to herein as "HIGHLY CONFIDENTIAL") shall be limited to information that any producing party, including third parties, in good faith, believes to contain (a) current and past (to the extent they reflect on current) methods, procedures, and processes relating to the pricing of pharmaceuticals; (b) current and past (to the extent they reflect on current) marketing plans and methods; (c) current and past (to the extent they reflect on current) business planning and financial information; (d) trade secrets; (e) past or current company personnel or employee information; and (f) other "CONFIDENTIAL" information (as defined in Paragraph 3) the disclosure of which is likely to cause competitive or commercial injury to the producing party.

6.      Information designated "HIGHLY CONFIDENTIAL" may be disclosed only to the following persons:

(a)      (i) in-house counsel of a named party who have executed a Certification attached hereto as Exhibit B may have access to all "HIGHLY CONFIDENTIAL" information; or (ii) in-house counsel of a named party who cannot satisfy the requirements of Exhibit B may have access only to "HIGHLY CONFIDENTIAL" information that identifies the company, employees, or drugs of the named party of the in-house counsel;

(b)      outside counsel representing a named party in the AWP Litigation, including all paralegal assistants, and stenographic and clerical employees working under the supervision of such counsel;

(c)      court reporters, interpreters, translators, copy services, graphic support services, document imaging services, and database/coding services retained by counsel, provided these individuals or an appropriate company official with authority to do so on behalf of the company executes a Certification attached hereto as Exhibit A;

(d)      an expert or consultant who (i) is retained by any attorney described in Paragraphs 6(a) and (b) to assist with of the AWP Litigation, (ii) is not a current employee of a party or subsidiary or affiliate of a party; and (iii) such expert or consultant executes a Certification attached hereto as Exhibit A;

(e)      a person who prepared, received, or reviewed the "HIGHLY CONFIDENTIAL" information prior to its production in the AWP Litigation;

3



(f)     during depositions and preparation for depositions, a deposition witness who is a current employee of the party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have knowledge of the contents of the document designated "HIGHLY CONFIDENTIAL" or the specific events, transactions, discussions, or date reflected in the document, provided such witness executes a Certification attached hereto as Exhibit A;

(g)     any private mediators utilized in the AWP Litigation, provided such person executes a Certification attached hereto as Exhibit A; and

(h)     the Court, and any Special Masters and/or Mediators appointed by the Court, under seal.

7.    This Order does not apply to any information or documents:

(a)     already in the possession of a receiving party and not subject to any obligation of confidentiality; and

(b)     acquired by a receiving party from a third party without being designated confidential or similar material unless the third party received the information or documents subject to any form of confidentiality protection.

8.    All information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the terms of this Order and produced or exchanged in the course of the AWP Litigation shall be used or disclosed solely for the purpose of the AWP Litigation and in accordance with the provisions of this Order.  Such "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information shall not be used for any business purpose, or in any other litigation or other proceeding ,or for any other purpose, except by Court Order or otherwise required by law.

9.    Any person or party receiving "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information that receives a request or subpoena for production or disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall promptly give notice by facsimile to the producing party identifying the information sought and enclosing a copy of the subpoena or request.  Provided that the producing party makes a timely motion or other application for relief from the subpoena or other request in the appropriate forum, the person or party subject to the subpoena or other request shall not produce or disclose the requested

4



information without consent of the producing party or until ordered by a court of competent jurisdiction.

10.     Counsel shall inform each person to whom they disclose or give access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information the terms of this Order, as well as the obligation to comply with those terms. Persons receiving "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information are prohibited from disclosing it to any person except in conformance with this Order. The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information agrees to subject himself/herself to the jurisdiction of the Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Order. The parties agree, and agree to inform each person to whom they disclose or give access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, that damages for violation of this Order are not an adequate remedy and that the appropriate remedy is injunctive relief. Counsel agrees to maintain a file of all Certifications (Exhibits A and B) required by this Order.

11.     The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall maintain such information in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to his or her own confidential or proprietary information.

12.     "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information may include or be included in any document, physical object, tangible thing, transcript or oral testimony or recorded statement of counsel, such as by way of example and not limitation, transcripts, answers to interrogatories and other responses to discovery requests, pleadings, briefs, summaries, notes, abstracts, motions, drawings, illustrations, diagrams, blueprints, journal entries, logbooks, compositions, devices, test reports, programs, code, commands, electronic media, databases, and any other records and reports which comprise, embody or summarize information about the producing party's business, products, practices and procedures.

1545322 v1; X4DM01!.DOC



13.     In designating information "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the producing or testifying party or person, including third parties, will make such designation only as to that information that it in good faith believes is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." All or any part of a document, tangible item, discovery response or pleading disclosed, produced, or filed by any party or person in the AWP Litigation may be designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by the producing or disclosing party or person by marking the appropriate legend on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by delivering at the time of disclosure, production or filing to the party to which disclosure is made, written notice that such tangible item is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

14.     The parties may designate the deposition testimony and exhibits (or portions thereof) of any witness in the AWP Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at the time of the deposition by advising the reporter and all parties of such fact during the deposition. If any portion of a videotaped deposition is designated pursuant to this Paragraph, the videocassette or other videotape or CD-ROM container shall be labeled with the appropriate legend. Unless a shortened time period is requested as set forth below, within thirty (30) days of receipt of a transcript, the deponent, his/her counsel, or any other party may redesignate all or portions of the transcript "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." The deponent, his/her counsel or any other party shall list on a separate piece of paper the numbers of the pages of the deposition transcript containing "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information and serve the same on opposing counsel. Pending such designation, the entire deposition transcript, including exhibits, shall be deemed "HIGHLY CONFIDENTIAL" information. If no designation is made within thirty (30) days after receipt of the transcript, the transcript shall be considered not to contain any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

(a)     a party may reasonably request a shortening of the time period within which a confidentiality designation for a deposition transcript must be made for the purpose of conducting effective discovery, and consent to such a request shall not be unreasonably withheld.

6



In the event of a dispute as to a request for a shortened time period, the parties shall first try to dispose of such dispute in good faith on an informal basis. If the dispute cannot be resolved within five (5) business days, the party requesting the shortened time period may request appropriate relief from the Court. The parties agree, subject to Court approval, that such relief sought can be in the form of a telephone conference to be scheduled at the Court's earliest convenience with the objective of obtaining an immediate resolution of the dispute;

15.     Any documents or pleadings to be filed with the Court that contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, shall be filed under seal in an envelope marked "CONFIDENTIAL -- Filed Under Seal Pursuant to Court Order" or "HIGHLY CONFIDENTIAL -- Filed Under Seal Pursuant to Court Order" and bear the caption of the AWP Litigation and pleading or document title and such other description as will allow the Court to readily identify the documents or information or portions thereof so designated.

16.     At the request of a producing party, the Court may limit or restrict person(s) not permitted access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information from attending any hearing or deposition at which such information is revealed.

17.     Nothing in this Order shall be construed in any way as a finding that information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" actually is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information. Any party may object, in writing, to the designation by another party by specifying the information in issue and its grounds for questioning the designation. A party shall not be obligated to challenge the propriety of a designation at the time made, and a failure to do so shall not preclude any subsequent challenge. In the event that any party to the AWP Litigation disagrees at any point in these proceedings with the designation by the producing party, the parties shall try first to dispose of such dispute in good faith on an informal basis. If the parties' cannot resolve the dispute within twenty-one (21) days of service of a written objection, the party challenging the designation may file a motion to compel within twenty-one (21) days after the parties' informal attempts at resolution have concluded. The information, documents or materials shall continue to receive the protection of their designation until the Court rules on the motion. The party that designated the information

7



"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall have the burden of demonstrating the propriety of its designation.

18.     Nothing herein shall be construed to be an admission of relevance or to affect, in any way, the admissibility of any documents, testimony or other evidence in the AWP Litigation. This Order is without prejudice to the right of any party to bring before the Court at any time the question of whether any particular information is or is not discoverable or admissible.

19.     Nothing in this Order shall bar or otherwise restrict any attorney herein from rendering advice to clients with respect to the AWP Litigation and in the course thereof, referring to or relying upon the attorney's examination of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information so long as the attorney does not disclose "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

20.     The inadvertent or mistaken disclosure by a producing party of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall not constitute a waiver of any claim of confidentiality except where: (a) the producing party notifies a receiving party in writing of such inadvertent or mistaken disclosure within ten (10) business days of becoming aware of such disclosure and, (b) within thirty (30) days of such notice, the producing party fails to provide properly redesignated documents to the receiving party.  During the thirty (30) day period after notice, the materials shall be treated as designated in the producing party's notice. Upon receipt of properly redesignated documents, the receiving party shall return all unmarked or incorrectly designated documents and other materials to the producing party within five (5) business days.  The receiving party shall not retain copies thereof and shall treat information contained in said documents and materials and any summaries or notes thereof as appropriately marked pursuant to the producing party's notice.

21.     Should any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information be disclosed, through inadvertence or otherwise, by a receiving party to any person or party not authorized under this Order, then the receiving party shall:  (a) use its best efforts to obtain the return of any such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information and to

8



bind such person or party to the terms of this Order; (b) within seven (7) business days of the discovery of such disclosure, inform such person of all provisions of this Order and identify such person or party to the producing party; and (c) request such person or party to sign the Certification attached hereto as Exhibit A or B. The executed Certification shall be served upon counsel for the producing party within ten (10) business days of its execution by the party to whom the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information was inadvertently disclosed. Nothing in this Paragraph is intended to limit the remedies that the producing party may pursue for breach of this Order.

22.     A producing person or entity who is not a party in the AWP Litigation shall be entitled to the protections afforded herein by signing a copy of this Order and serving same on all counsel of record. Thereafter, a producing person or entity may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" only testimony, information, documents or things that such producing person or entity has produced or provided in the action.

23.     This Order shall survive the termination of this litigation and the transferred actions and shall continue in full force and effect thereafter.

24.     After final termination of this action, the outside counsel for a named party may each retain one copy of deposition transcripts and exhibits, Court transcripts and exhibits, and documents and other materials submitted to the Court. Nothing herein shall require the return or destruction of attorney work product. Such material shall continue to be treated as designated under this Order. Within sixty (60) days after final termination of the AWP Litigation, at the request of the producing party, counsel for the receiving party either shall (a) return all additional "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information in his/her possession, custody or control or in the custody of any authorized agents, outside experts and consultants retained or utilized by counsel for the receiving party to counsel for the party who has provided such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information in discovery or (b) certify destruction thereof to the producing party's counsel. As to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information reflected in computer databases or backup tapes or

9



any other electronic form, the receiving party shall erase all such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

25.     Pursuant to Local Rule 7.2, within thirty (30) days after final termination of the AWP Litigation, outside counsel for a named party shall retrieve from the Court all "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information that it filed with the Court during the AWP Litigation and return or dispose of such information in accordance with Paragraph 24.

26.     If information subject to a claim of attorney-client privilege or work product immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information. If a party has inadvertently or mistakenly produced information subject to a claim of immunity or privilege, upon written request made by the producing party within twenty-one (21) days of discovery of such inadvertent or mistaken production, the information for which a claim of inadvertent production is made, including all copies, shall be returned within seven (7) business days of such request unless the receiving party intends to challenge the producing party's assertion of privilege or immunity. All copies of inadvertently or mistakenly produced documents shall be destroyed, and any document or material information reflecting the contents of the inadvertently produced information shall be expunged. If a receiving party objects to the return of such information within the seven (7) business day period described above, the producing party may move the Court for an order compelling the return of such information.   Pending the Court's ruling, a receiving party may retain the inadvertently or mistakenly produced documents in a sealed envelope and shall not make any use of such information.

27.     Provided a party has followed the procedures set forth herein, the Court deems that the party has complied with the requirements of Local Rule 7.2, Impounded and Confidential Materials.

1545322 v1; X4DM011.DOC



28.      Nothing in this Order shall prevent any party from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders or modification of this Order.

29.      It is further ordered that all pleadings, memoranda or other documents filed in court shall be treated as public regardless of the terms of this order unless the counsel for the party seeking protection certifies and explains why the material is confidential. To the extent that a brief or other document contains some confidential information, it shall be redacted in a public version.

Dated: __12/13__ , 2002

Patti B. Saris
United States District Judge

11

1546322 v1; X4DM011.DOC



## CERTIFICATION – EXHIBIT A

I hereby certify that I have read the attached Protective Order in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS, dated _____, 2002 (the "Order"), and I agree that I will not reveal "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information to, or discuss such with, any person who is not entitled to receive "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information in accordance with the Order, I will use "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information only for the purposes of facilitating the prosecution or defense of the action and not for any business or other purpose. I will otherwise keep all "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information confidential in accordance with this Order. I agree that the United States District Court for the District of Massachusetts has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

Dated: _____    _____

 

_____

[Print Name]

_____

[Company]

[Address]

12



## IN-HOUSE COUNSEL CERTIFICATION – EXHIBIT B

I hereby certify that I have read the attached Protective Order in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS, dated _____, 2002 (the "Order"), and I agree that I will not reveal "HIGHLY CONFIDENTIAL" information to, or discuss such with, any person who is not entitled to receive "HIGHLY CONFIDENTIAL" information in accordance with the Order. I will use "HIGHLY CONFIDENTIAL" information only for the purposes of facilitating the prosecution or defense of the action and not for any business or other purpose. I will otherwise keep all "HIGHLY CONFIDENTIAL" information confidential in accordance with this Order.

I agree that I will only review "HIGHLY CONFIDENTIAL" information in the offices of outside counsel or other location designated by outside counsel. I will not remove such information from outside counsel's office or other location designated by outside counsel, nor make copies of or maintain any "HIGHLY CONFIDENTIAL" information at the offices at which I work.

My professional relationship with the party I represent and its personnel is strictly one of legal counsel. Although I may attend meetings where others discuss competitive decision-making, I am not involved in competitive decision-making (as discussed in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) and *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577 (Fed. Cir. 1991)), for or on behalf of the party I represent or any other party that might gain a competitive advantage from access to the material disclosed under the Order. Other than legal advice, I do not provide advice or participate in any decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, other than providing legal advice, for example, provide advice concerning decisions about pricing, marketing or advertising strategies, product research and development, product design or

13



competitive structuring and compositions of bids, offers, or proposals, with respect to which the use of "HIGHLY CONFIDENTIAL" information could provide a competitive advantage.

I have attached a detailed narrative providing the following information: (a) my position and responsibilities as in-house counsel; and (b) the person(s) to whom I report, and their position(s) and responsibilities.

I further agree that the United States District Court for the District of Massachusetts has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

Dated: _____    _____

                                    _____
                                    [Print Name]

                                    _____
                                    [Company]

                                    _____
                                    [Address]

14



## CERTIFICATE OF SERVICE

I certify that on December 13, 2002, I caused a true and correct copy of the foregoing JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER and proposed PROTECTIVE ORDER to be served on all counsel of record by electronic service in accordance with Case Management Order No. 2.

_Juliet S. Sore_
Juliet S. Sorensen

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for defendants conferred with counsel for plaintiff on this motion, and that counsel for plaintiff joined in the motion.

_Juliet S. S_
Juliet S. Sorensen

15

# HIPPA-COMPLIANT ORDER



E-SERVED
06/09/04
08:09 PM ET
AWP-MDL NO.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) |

MDL NO. 1456

CIVIL ACTION: 01-12257-PBS

THIS DOCUMENT RELATES TO ALL ACTIONS

Judge Patti B. Saris

## STIPULATED PROTECTIVE ORDER GOVERNING CONFIDENTIAL HEALTH INFORMATION

To adequately protect individually identifiable health information entitled to be kept confidential, it is, pursuant to the Court's authority under Rule 26(c) of the Federal Rules of Civil Procedure, and with consent of the parties, ORDERED:

1.    **Definitions** :

    (A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned Multi-District Litigation (MDL), including any named party added or joined to any complaint in this action, as well as named parties to tag-along actions added to this litigation by the Judicial Panel on Multi-District Litigation.

    (B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency, specifically including the United States Department of Health and Human Services.

    (C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Rule 34 of the Federal Rules of Civil Procedure, and shall include all written, oral, recorded, or graphic



material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

(D) As used in this Order, the term "confidential health information" means any document or information supplied in any form, or any portion thereof, that identifies an individual or subscriber in any manner and relates to the past, present, or future care, services, or supplies relating to the physical or mental health or condition of such individual, the provision of health care to such individual, or the past, present, or future payment for the provision of health care to such individual. These terms specifically include "protected health information" as such term is defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996. See 45 C.F.R. § 164.501("protected health information") and 160.103 ("individually identifiable health information"). "Confidential health information" includes, but is not limited to, medical bills, claims forms, charge sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks, notices, and requests. "Confidential health information" also includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from confidential health information.

2.   **General Provisions:**

(A) Production of Health Information That May Be Subject To The Privacy Act, 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other



Privacy Protections.  Several subpoenas duces tecum have been served and will be served in the future in the above-captioned Multi-District Litigation (MDL) which may seek information and documents subject to the provisions of the Privacy Act, 5 U.S.C. § 552a, to the provisions of 45 C.F.R. §§ 164.102-164.534, or to the provisions of 42 U.S.C. § 1306, or there may be no waiver by the patient to produce the records to any entity outside of the subpoenaed party.  In order to facilitate the production of these records and to protect their confidentiality, the subpoenaed parties are permitted to produce these documents to any party to the MDL in an unredacted form.  Upon producing these documents, the producing party shall designate them as "confidential" in the manner set forth in paragraph II. B. below.  All parties receiving these documents may use such designated records only for purposes of the above-captioned Multi-District Litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the nonparty signs the form of acknowledgment attached to this Order as set forth below.

      (B)    **Designation of Material Subject to this Protective Order.**  To designate "confidential health information" material covered by this Protective Order, the producing party shall so designate, on the material itself, in an accompanying cover letter, or on a diskette cover by using the following designation: "CONFIDENTIAL HEALTH INFORMATION- SUBJECT TO PROTECTIVE ORDER."

      (C)    **Scope of Order.**  The terms and conditions of this Order shall govern all documents designated as confidential as set forth in section II. B.  Should a document or record contain information that is protected under the terms and conditions of this Order

3



as well as the terms and conditions of any other Protective Order entered in the above-captioned MDL, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

III.   **Provisions Governing Use and Disclosure of Confidential Health Information:**

(A)   The parties may not use or disclose confidential health information for any purpose other than use in the above-captioned MDL.

(B)   Subject to Paragraph III.C., confidential health information may be disclosed only to:

1.   This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.   Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.   Persons other than consultants or experts who are retained to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.   Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness, provided that counsel first comply with the requirements of Paragraph III. C. of this Order;

4



5.      And other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and,

6.      The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)     No confidential health information may be disclosed to any person pursuant to the provision of Paragraph III.B. of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential.    No confidential health information may be disclosed to any person identified in subparagraphs III.B.2 through III.B.6 of this Order unless such person first is given a copy of this Order and advised that the information contained in the document is confidential health information and informed that an unauthorized disclosure of the information in the document may constitute a contempt of this Court.  Each person to whom confidential health information is disclosed pursuant to Subparagraph III.B. of this Order shall execute a Certification in the form attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any confidential health information. Copies of the executed Certifications, and a current log of the materials disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.  Copies of all Certifications executed pursuant to this Paragraph shall be disclosed to the party or third-party who produced or supplied the confidential health information a) within thirty (30) days after the final resolution of this action (including resolution of all appellate proceedings), b) within thirty (30) days after settlement of this action, or c) on good cause shown.

5



(D)    No person, firm, corporation, or other entity subject to this order shall give, show, disclose, make available, or communicate confidential health information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such confidential health information.

(E)    **Confidential Health Information in Depositions.** Parties may show deponents designated confidential documents. However, efforts should first be made, if practicable, to conceal the identity of the subject of the record by coding the documents to substitute a numerical or other designation for the patient's name or other identifying information. The parties shall, within 30 business days after receiving a deposition, designate those pages of the transcript (and exhibits thereto) as confidential which contain any references to, or discussions confidential health information or individually identifiable health information. Until expiration of the 30-day period, the entire deposition will be treated as subject to protection against disclosure under this Protective Order. Confidential health information within the deposition transcript must be designated by underlining the portions of the pages that are confidential and marking such pages with the following legend: "CONFIDENTIAL HEALTH INFORMATION SUBJECT TO PROTECTIVE ORDER." When such designation is made, the confidential portions and exhibits shall be filed under seal separate from the portions and exhibits not so marked. The terms and conditions of this Order shall apply to all such designated portions of any deposition transcript.

(F)    **Use of Confidential Health Information in Court Filings.** In the event any party wishes to use confidential health information in any affidavits, briefs, memoranda of law, exhibits to motions, or other papers filed in Court in this action, such party shall take appropriate steps to safeguard such confidential health information in

6



documents filed with the Court, which steps may include redaction. In the event this Court wishes to review the redacted material, this Court may review the redacted material *in camera* or order that the documents containing confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, memoranda of law, exhibits to motions, or other papers under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(G)    **Confidential Health Information in Open Court.** The procedures for use of documents designated as containing confidential health information during any hearing or the trial of this matter shall be determined by the parties and the Court in advance of the hearing or trial. The parties shall consider redacting confidential documents to remove individual patient identifiers, request the Court to submit such documents under seal, code the documents to substitute a numerical or other designation for the patient's name or other identifying information, request that any exhibit be placed under seal, introduce summary evidence where practicable which may be more easily redacted, and assure that all Social Security and HIC numbers associated with the names of individual patients have been removed. No party shall disclose designated documents containing confidential health information in open Court without a prior court order.

IV.    **Destruction of Confidential Health Information At Completion of Litigation:**

(A).    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents produced or supplied pursuant to a third-party subpoena which are designated

7



as containing confidential health information, as well as all notes, memoranda, and summaries taken or made of such documents that contain confidential health information, shall be either returned to the producing party or destroyed.

(B)   All counsel of record who received documents shall certify compliance herewith and shall deliver the same to the producing party not more than sixty (60) days after the final resolution of this action.   The return of documents or certifications of destruction relating to documents produced by the United States shall be provided to the U.S. Department of Health and Human Services, Office of General Counsel, Centers for Medicare & Medicaid Division.

V.   **Miscellaneous Provisions:**

(A)   **No Waiver.**   The failure to designate any materials as provided in paragraph II.B shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)   **Third-Party Request or Demand for Disclosure.**   Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of confidential health information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any.   Notice shall be made within ten (10) days of the request for production and shall be in writing.   Notice to the United States shall take the form of written notification to U.S. Department of Health and Human Services, Office of General Counsel, Centers for Medicare & Medicaid Division. No person bound by this Order who receives a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring the disclosure of confidential health information shall produce or disclose such documents or

8



information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

(C) **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable Federal, State, or local laws that afford heightened protection to certain categories of confidential health information, including, but not limited to, records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such Federal, State, or local laws.

(D) Nothing in this Order shall affect the rights of the parties or third-parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief or protective orders from this Court as may be appropriate under the Federal Rules of Civil Procedure.

(E) Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(F). The provisions of this Order shall survive the conclusion of this action.

SO ORDERED, this _8_ day of ___June___ 2004.

Patti B. Saris United States District Judge

9





## CERTIFICATION - EXHIBIT A

I certify that I have read the attached Stipulated Protective Order Governing Confidential Health Information in *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS, dated _____, 2004 (the Order), and I agree that I will not use or disclose Confidential Health Information or Individually Identifiable Health Information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all Confidential Health Information to the United States or destroy such Confidential Health Information. I will otherwise keep all Confidential Health Information in accordance with this Order. I agree that the United States District Court for the District of Massachusetts has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound the strictures of the Order.

Dated:_____  _____

      [Print Name]
      [Company]
      [Address]

11

# NARROWED DRUG LIST

# REVISED EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| Drug Name | J Code |
|---|---|
| ALBUTEROL | J3535 |
| | J7613 |
| | J7619 |
| ALKERAN | J8600 |
| | J9245 |
| BLENOXANE | J9040 |
| CYTOXAN | J8530 |
| | J9090 |
| | J9091 |
| | J9093 |
| | J9094 |
| | J9095 |
| | J9096 |
| | J9097 |
| ETOPOPHOS | J9181 |
| | J9182 |
| HALDOL | J1630 |
| | J1631 |
| IMITREX | J3030 |
| INTEGRILIN | J1327 |
| INTRON A | J9214 |
| KYTRIL | J1625 |
| | J1626 |
| | Q0166 |
| LEVAQUIN | J1956 |
| MYLERAN | J8510 |
| NAVELBINE | J9390 |
| PARAPLATIN | J9045 |
| PERPHENAZINE | Q0175 |
| | Q0176 |
| PROCRIT | Q0136 |
| | Q4055 |
| | Q9920 |
| | Q9921 |
| | Q9922 |
| | Q9923 |
| | Q9924 |
| | Q9925 |
| | Q9926 |
| | Q9927 |
| | Q9928 |
| | Q9929 |
| | Q9930 |

| Drug Name | J Code |
|---|---|
| PROCRIT (cont.) | Q9931 |
|  | Q9932 |
|  | Q9933 |
|  | Q9934 |
|  | Q9935 |
|  | Q9936 |
|  | Q9937 |
|  | Q9938 |
|  | Q9939 |
|  | Q9940 |
| PROVENTIL | J7613 |
|  | J7618 |
| PULMICORT | J7626 |
| REMICADE | J1745 |
| RETROVIR | J3485 |
| SODIUM CHLORIDE | J2912 |
|  | J7030 |
|  | J7040 |
|  | J7050 |
|  | J7051 |
|  | J7130 |
| SPORANOX | J1835 |
| TAXOL | J9265 |
| TEMODAR | J8700 |
| VENTOLIN | J7620 |
|  | J7625 |
| VEPESID | J8560 |
|  | J9181 |
|  | J9182 |
| ZANTAC | J2780 |
| ZOFRAN | J2405 |
|  | Q0179 |
| ZOLADEX | J9202 |
| ZOVIRAX | Q4075 |
| ACETYLCYSTEINE | J7608 |
|  | J7610 |
|  | J7615 |
| ACYCLOVIR | Q4075 |
| ADRIAMYCIN | J9001 |
| ADRUCIL | J9190 |
| AGGRASTAT | J3245 |
|  | J3246 |
| ALBUTEROL | J3535 |
|  | J7613 |
|  | J7619 |
| A-METHAPRED | J2920 |
| AMPHOCIN | J0285 |
|  | J0287 |

| Drug Name | J Code |
|---|---|
| AMPHOCIN (cont.) | J0289 |
| AMPHOTERICIN B | J0285 |
| AMPHOTERICIN B (cont.) | J0287 |
| | J0289 |
| ANZEMET | J1260 |
| | Q0180 |
| ARANESP | J0880 |
| | Q0137 |
| | Q4054 |
| ARISTOCORT | J3302 |
| ARISTOSPAN | J3303 |
| ATIVAN | J2060 |
| AZMACORT | J7684 |
| BACTERIOSTATIC SODIUM CHLORIDE | J2912 |
| | J7130 |
| BEBULIN VH | J7194 |
| BREVIBLOC | J7799 |
| BUMINATE | P9041 |
| | P9042 |
| | P9045 |
| | P9046 |
| | P9047 |
| CALCIJEX | J0635 |
| | J0636 |
| CEFIZOX | J0715 |
| CIPRO | J0706 |
| | J0744 |
| CISPLATIN | J9060 |
| | J9062 |
| CLAFORAN | J0698 |
| CROMOLYN SODIUM | J7631 |
| CYTARABINE | J9098 |
| | J9100 |
| | J9110 |
| | J9111 |
| | J9112 |
| | J9113 |
| DEPO TESTOSTERONE CYPIONATE | J1060 |
| | J1070 |
| | J1080 |
| | J1081 |
| | J1082 |
| DEXAMETHASONE | J1100 |
| | J7637 |
| | J7638 |
| DEXTROSE | J7042 |
| | J7060 |
| | J7070 |

| Drug Name | J Code |
|---|---|
| DIAZEPAM | J3360 |
| DILANTIN | J1165 |
| DOXORUBICIN HCL | J9000 |
|  | J9001 |
| DTIC-DOME | J9130 |
|  | J9140 |
| ENBREL | J1438 |
| EPOGEN | Q0136 |
|  | Q4055 |
|  | Q9920 |
|  | Q9921 |
|  | Q9922 |
|  | Q9923 |
|  | Q9924 |
|  | Q9925 |
|  | Q9926 |
|  | Q9927 |
|  | Q9928 |
|  | Q9929 |
|  | Q9930 |
|  | Q9931 |
|  | Q9932 |
|  | Q9933 |
|  | Q9934 |
|  | Q9935 |
|  | Q9936 |
|  | Q9937 |
|  | Q9938 |
|  | Q9939 |
|  | Q9940 |
| ETOPOSIDE | J9181 |
|  | J9182 |
| FENTANYL CITRATE | J3010 |
| FERRLECIT | J2916 |
| FUROSEMIDE | J1940 |
| GAMIMUNE N | J1563 |
|  | J1564 |
|  | Q9943 |
|  | Q9944 |
| GAMMAGARD SD | J1561 |
|  | J1563 |
|  | J1564 |
|  | Q9941 |
|  | Q9942 |
| GAMMAR P | J1561 |
|  | J1563 |
|  | J1564 |
|  | Q9941 |

| Drug Name | J Code |
| --- | --- |
| | Q9942 |
| GENTAMICIN | J1580 |
| GENTRAN | J7100 |
| | J7110 |
| HEPARIN | J1642 |
| | J1644 |
| INFED | J1750 |
| INTAL | J7631 |
| IPRATROPIUM BROMIDE | J7644 |
| IVEEGAM | J1561 |
| | J1562 |
| | J1563 |
| | J1564 |
| | Q9941 |
| | Q9942 |
| KOATE-HP | J7190 |
| KOGENATE | J7192 |
| LEUCOVOR | J0640 |
| LEUCOVORIN CALCIUM | J0640 |
| | J8999 |
| LEUKINE | J2820 |
| LORAZEPAM | J2060 |
| METAPROTERENOL SULFATE | J7669 |
| METHOTREXATE | J9250 |
| | J9260 |
| MIACALCIN | J0630 |
| MITHRACIN | J9270 |
| MITOMYCIN | J9280 |
| | J9290 |
| | J9291 |
| NEOSAR | J9070 |
| | J9080 |
| | J9090 |
| | J9091 |
| | J9092 |
| | J9095 |
| | J9096 |
| NEULASTA | J2505 |
| | Q4053 |
| NEUPOGEN | J1440 |
| | J1441 |
| NOVANTRONE | J9293 |
| OSMITROL | J2150 |
| PROGRAF | J7507 |
| | J7508 |
| | J7525 |
| RECOMBINATE | J7192 |
| SODIUM CHLORIDE | J2912 |

| Drug Name | J Code |
|---|---|
| SODIUM CHLORIDE (cont.) | J7030 |
|  | J7040 |
|  | J7050 |
|  | J7051 |
|  | J7130 |
| SOLU-CORTEF | J1700 |
|  | J1710 |
|  | J1720 |
| SOLU-MEDROL | J1020 |
|  | J1030 |
|  | J1040 |
|  | J2920 |
|  | J2930 |
|  | J7509 |
| TAXOTERE | J9170 |
| THIOPLEX | J9340 |
| TOBRAMYCIN SULFATE | J3260 |
| TOPOSAR | J9181 |
|  | J9182 |
| VANCOCIN HCL | J3370 |
| VANCOMYCIN HCL | J3370 |
| VINBLASTINE | J9360 |
| VINCASAR PFS | J9370 |
|  | J9375 |
|  | J9380 |
| ZITHROMAX | J0456 |

6

**NARROWED REQUESTS**

## NEIGHBORHOOD SCHEDULE A

## DOCUMENTS TO BE PRODUCED

1.     All documents concerning the methodology used to determine reimbursement or payment rates (*e.g.* fee schedule amounts) for any of the drugs listed on revised Exhibit A ("revised Exhibit A").

2.     All manuals that set forth policies by which Provider or PBM claims for reimbursement are determined for any of the drugs listed on revised Exhibit A.

3.     All schedules disclosing the amounts reimbursed to physicians for services rendered and drugs administered (*i.e.*, physician "fee schedules") and documents detailing how those schedules were calculated or derived.  To the extent the fee schedules differ from the electronic schedules or tables used to generate the actual reimbursement amounts paid to physicians, produce all such schedules and tables.

4.     All documents concerning your contractual relationships with Providers or PBMs insofar as they cover reimbursement for the administration of any of the drugs listed on revised Exhibit A, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, and responses to requests for proposal.

5.     Electronic medical claims data regarding Provider or PBM claims for reimbursement for any of the drugs listed on revised Exhibit A, including all data regarding reimbursements for related administration or service fees, and all claims processing manuals corresponding to the electronic medical claims data produced.

6.     All contracts, agreements, and other documents concerning arrangements between you and PBMs regarding formulary placement for any of the drugs listed on revised Exhibit A, discounts, rebates, and any other compensation received by you in connection with your purchase of the Subject Drugs from PBMs.

7.     All documents concerning advisory boards conducted by You, or on Your behalf, involving physicians or pharmacists, that reflect concerns from Providers or PBMs regarding reimbursement for any of the drugs listed on revised Exhibit A, including final reports or other documents reflecting concerns from Providers regarding reimbursement, documents reflecting all entities participating in such advisory boards, and documents reflecting the conclusions of such advisory boards.

8.     All documents regarding or reflecting any consideration of or actual changes to Your reimbursements for drugs or services based on, or by reference to, changes in Medicare's reimbursement rates for drugs or services since 2003.

9.     All documents, including electronic transaction records and contracts, concerning Your direct purchases of drugs from Drug Manufacturers, Wholesalers, PBMs, Specialty Pharmacies or any other person or entity.

10.     All documents, including communications between You, and Providers or PBMs, regarding:

      (a)    The costs of acquiring physician-administered drugs, including, but not limited to, the drugs on the revised Exhibit A;

      (b)    Any differences between the costs of acquiring physician-administered drugs and the amounts You reimburse for such physician-administered drugs;

      (c)    Your understanding that the costs of acquiring or administering physician-administered drugs are different from the amounts You reimburse in relation to such physician-administered drugs;

      (d)    Your intention or the fact that drug reimbursement acted as a cross-subsidy for service fees or administration reimbursements that were inadequate or were perceived by physicians to be inadequate.

11.     All documents regarding the process whereby Neighborhood determines drug formularies, including but not limited to, documents concerning the factors considered in developing such formularies, and documents concerning analysis of the economic merits of selecting or placing on a higher tier certain drugs as compared to others.

12.     Summary reports regarding rebates received by You from Drug Manufacturers or PBMs.

13.     All documents reflecting any controls, measures, studies or benchmark comparisons considered or implemented by You to manage the costs of reimbursements for physician-administered drugs.