UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**WATSON PHARMACEUTICALS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS RESPONSE TO COURT ORDER REGARDING DISCOVERY SCHEDULE**

Plaintiffs, in their Reply to Watson Pharmaceuticals, Inc.'s Response to Court Order Regarding Discovery Schedule, have once again grossly misrepresented, either directly or through omission, discovery provided to date by Watson Pharmaceuticals, Inc. ("Watson").

Plaintiffs state that Watson misinformed them about the reimbursement of Watson's two branded subject drugs, Ferrlecit® and INFeD®. These drugs may be reimbursed under both Medicare Part A and Part B, as Mr. Callahan testified in his November 29, 2005 deposition. But the dialysis centers process their claims almost entirely through Medicare Part A, as Mr. Callahan testified in the second day of his first deposition (see Exhibit A to this Memorandum, Callahan 7/15/04 Dep. at p. 126-7, a portion of the deposition transcript that Plaintiffs chose not to share with the Court). Moreover, at that point, Mr. Callahan was testifying in response to a Rule 30(b)(6) deposition notice that indicated that the subject of his testimony would be the location and types of documents maintained by Watson, so Mr. Callahan was not prepared to answer questions about Medicare reimbursement. When Plaintiffs' counsel asked for elaboration in Mr. Callahan's more recent deposition, he testified correctly again. Mr. Callahan informed the

Plaintiffs, when they inquired further, that nearly all sales of these drugs are to dialysis clinics, which bill for their use through Medicare Part A, although there may be limited sales, especially of INFeD, to other clinics that would bill through Medicare Part B.

Plaintiffs also complain that Watson does not believe it must provide discovery on lorazepam at this point, because the drug listed on Appendix A to the Third Amended Master Consolidated Class Action Complaint, lorazepam tablets, is not a physician-administered drug. Lorazepam tablets are different drugs from injectable lorazepam, and the Court has recognized this distinction in its prior Orders, as we explained in our December 9, 2005 pleading. (Docket 1951)  Additionally, as we explained in that pleading (at footnote 2), the Food and Drug Administration has repeatedly stated that the oral and injectable forms of drugs with the same active ingredient are different drug products.

Plaintiffs have been told, but choose not to inform the Court, that the only significant documents they are due on physician-administered drugs are e-mails, which could not be reviewed until recently because Plaintiffs waited nearly a year (until November 2005) to respond to Watson's invitation to discuss and agree upon search terms.  Although Watson will not be able to produce those documents by December 16, 2005, we will give Plaintiffs four weeks to digest them after they are produced to take their remaining deposition (even if that results in depositions being taken after the suggested discovery deadline for physician-administered drugs).  Moreover, we have not stated that we have 9,000 pages of e-mails and other documents left to produce.  We have stated that we have approximately 9,000 e-mails to review, not all of which will necessarily be responsive to Plaintiffs' discovery requests.

Plaintiffs also complain that Watson's initial production related "mainly" to three drugs that are not subject drugs in this case. This is not true. Many of the documents produced relate to Ferrlecit and INFeD, and, in fact, Plaintiffs used such documents repeatedly in the depositions they took in November 2005. It is also not true that Watson has not produced a single memorandum outside of the government production. Productions made to Plaintiffs, including productions on November 17, 2005, contain interoffice memoranda. Moreover, Plaintiffs do not deny that they have taken a total of six depositions of five witnesses, four of which were scheduled on extremely short notice, and that they did not notice any additional depositions other than Lynne Amato before the longstanding discovery deadline of December 3, 2005, set by the Court.

Plaintiffs also state that because documents were "dropped" on them in November 2005, they were unable to timely serve subpoenas on ex-employees of Watson. However, these individuals were named in many of the documents contained in Watson's initial production in December 2002, and Plaintiffs' new-found interest in deposing them is occurring at least a couple of years too late.

Plaintiffs dragged their feet on discovery matters until early November 2005 and should not now be permitted to hammer Watson with further discovery requests that they should have filed months – or even years – ago.

- 4 -

Dated:  December 16, 2005                          Respectfully submitted,


                          **/s/ Douglas B. Farquhar**
Douglas B. Farquhar (admitted *pro hac vice*)
HYMAN, PHELPS, & McNAMARA, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C.  20005
(202) 737-5600
(202) 737-9329 (facsimile)

- 5 -

## CERTIFICATE OF SERVICE

      I hereby certify that on December 16, 2005, I caused a true and correct copy of the foregoing Motion for Leave to File Reply and Reply Memorandum to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2, by sending a copy of this document to Lexis/Nexis File and Serve (formerly Verilaw Technologies) for posting and notification to all parties.

                                      **/s/ Douglas B. Farquhar**
                                      Douglas B. Farquhar