IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>*International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca Pharmaceuticals, L.P., et al.; C.A. No. 04-11503-PBS* | Judge Patti B. Saris |

**MEMORANDUM OF LAW IN OPPOSITION TO
ASTRAZENECA'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
BY PLAINTIFF, INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND**

**I.   STATEMENT OF PROCEDURAL HISTORY AND FACTS**

International Union of Operating Engineers, Local No. 68 Welfare Fund (hereinafter "Plaintiff" or "Local 68") filed its Class Action Complaint two and one-half years ago, on June 30, 2003, in Superior Court of New Jersey, Monmouth County, naming as defendants numerous pharmaceutical corporations, including the movant, AstraZeneca, as well as three doctors who pleaded guilty to federal conspiracy charges respecting an admitted conspiracy between them and AstraZeneca. Although both sets of parties in the conspiracy – *i.e.*, AstraZeneca and the doctors – pleaded guilty to conspiracy and paid fines and civil penalties to the federal government,[1] both have refused to pay any monies back to the victims of their crimes, like Plaintiff and the Class of

---

[1]   AstraZeneca pled guilty to conspiracy and paid $355 million in federal fines and civil penalties. *See* Class Action Complaint at ¶ 31. Additionally, the three doctor defendants, Saad Antoun, M.D. of New Jersey, Stanley C. Hopkins, M.D. of Florida and Robert A. Berkman, M.D. of Ohio, pled guilty to federal conspiracy charges in connection with billing for free samples of Zoladex® received from AstraZeneca *Id.* at ¶¶ 94-96. The third doctor, Dr. Berkman, pled guilty after the filing of Plaintiff's Complaint.

purchasers it seeks to represent. Consequently, this case was filed against, *inter alia*, all guilty parties in the "AstraZeneca conspiracy" to force payment of the ill-gotten gains of these criminal parties to their victims.

Rather than litigate this case on its merits, AstraZeneca orchestrated a campaign amongst the defendants to remove the case to federal court, and did so on July 3, 2003. Unfortunately for AstraZeneca, however, it was unable to garner the necessary consent of its co-conspirator defendants, the three doctors. Indeed, as the Affidavits of record reveal, AstraZeneca's counsel claims to have conspicuously avoided the issue altogether.[2]

A timely motion for remand was filed on July 9, 2003. Briefing on the issue of remand was completed before the United States District Court for the District of New Jersey – long before the case arrived in Boston by virtue of the transfer of the case to the this Court by the Judicial Panel on Multidistrict Litigation at the end of 2003. And here in MDL 1456 this case has languished *for more than 2 ½ years*. A new round of briefing on remand, which was ordered by this Court at the hearing held in April 2005, has been concluded since May 2005.[3]

On August 19, 2005, this Honorable Court allowed AstraZeneca to conduct discovery on the narrow issue of fraudulent joinder and ordered that all discovery be completed within sixty (60) days. The Court did not give AstraZeneca *carte blanche* to pervade privileged and confidential

---

[2] Because it was AstraZeneca's burden to demonstrate that the rule of unanimity was satisfied, its failure to seek and obtain the consent to removal of the doctors is dispositive.

[3] Defendants' characterization in their memorandum of the Plaintiff allegedly having "renewed its motion to remand," *see* Memorandum of Law in support of AstraZeneca's Motion To Compel the Production of Documents by Plaintiff, at 3, is flat-out false. To the contrary, after having raised the issue of its outstanding motion for remand in open court in February 2005, Plaintiff submitted a supplemental brief in support of remand as *directed by* this Court in April 2005.

2

communications simply to seek to create a *post hoc* justification for its improper removal to Federal Court of this case back in July 2003. Even so, defendants waited until September 16, 2005 to serve the discovery requests. Defendants then waited an additional thirty (30) days after Plaintiff responded to the discovery requests, until November 17, 2005, to file the instant motion to compel.

The discovery served upon Plaintiff, *see* Exhibit 1 to Fowler Declaration, and that which was served upon the defendant doctors, minimally addresses the issue of service and acceptance of service of the Complaint on behalf of the doctors; but it focuses upon communications between Plaintiff or its counsel and the defendant doctors or their counsel. *See* Exhibits A, B, and C, attached hereto, Notices of Subpoena Ad Testificandum and Duces Tecum directed to Michael M. Mustakov, Esquire, counsel for Dr. Antoun, Jack Fernandez, Esquire, counsel for Dr. Hopkins and Terry Sherman, Esquire, counsel for Dr. Berkman, respectively and Exhibits D, E, and F, attached hereto,[4] Defendant AstraZeneca's First Request for Production of Documents directed to Dr. Saad Antoun, to Dr. Stanley C. Hopkins, and to Dr. Robert A. Berkman, respectively. No inquiry at all is made respecting the substantive nature of the claims made by Plaintiff against the doctors or the *bona fides* of such claims – which is the proper focus of any inquiry into allegations of "fraudulent joinder," as discussed *infra*.

Plaintiff submits that AstraZeneca's quest for discovery of confidential settlement negotiations is merely a fishing expedition into perilous and unchartered waters,[5] and is more likely simply a ruse to divert this Court's attention from the real issue at bar – the improper removal of this case and

---

[4] Defendants thereafter abandoned their efforts to depose the doctors' counsel.

[5] The press by counsel for AstraZeneca for a log of confidential and privileged communications during the pendency of this litigation, if found to be meritorious, would certainly require that a similar log be produced by all counsel in this case respecting their daily communications allegedly covered by the attorney-client, work-product and joint defense privileges.

3

defense counsel's unfounded statements in support thereof, for which this Court has indicated Rule 11 may be implicated. *See* Memorandum and Order dated August 19, 2005. Having failed to even attempt to make the requisite showing for discovery of the confidential and privileged matter defendants seek, defendants should be barred from taking any further discovery on the remand issues before the Court.[6] Instead, this Court should pass on the merits of the remand motion at bar and promptly remand this case back to Monmouth County, New Jersey, where it belongs, without further delay.

## II.  ARGUMENT

### A.  DISCOVERY ON THE ISSUE OF FRAUDULENT JOINDER IS PROPERLY FOCUSED UPON WHETHER A PLAINTIFF HAS A COLORABLE CLAIM AGAINST THOSE ALLEGEDLY "FRAUDULENTLY JOINED" – NOT UPON SETTLEMENT DISCUSSIONS WHICH MAY HAVEN TAKEN PLACE BETWEEN THE PARTIES *AFTER* THE COMPLAINT WAS FILED.

In their memorandum of law, defendants seem to imply that their discovery into settlement negotiations, if any took place, between the counsel for the plaintiff and the doctor defendants has been specifically authorized by this Court.[7] Nowhere in the Court's Order granting the narrow leave for discovery within 60 days does such a blanket authorization exist. Instead, this Court clearly authorized discovery respecting defendants' contention that the doctor defendants were "fraudulently joined." This Honorable Court did not rule upon the defendants' quest for discovery concerning confidential settlement negotiations as between counsel for the parties.

---

[6] The 60-day discovery period passed on October 18, 2005.

[7] Regarding the narrow discovery sought by the defendants respecting communications as to service of process, Plaintiff has provided documents in response to the discovery requests, so that issue is not addressed herein.

4

In *Fabiano Shoe Co., Inc. v. Black Diamond Equip., Ltd.*, 41 F. Supp.2d 70 (D. Mass. 1999), this Court stated:

> Joinder is considered fraudulent when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant. . . . The burden of establishing that joinder is fraudulent is on the party seeking removal to federal court, and the burden is a heavy one. . . . The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate. . . . Moreover, in determining whether the plaintiff has the possibility of stating a valid cause of action, the court is to resolve all disputed questions of fact, and any ambiguities in the controlling state law, in favor of the non-removing party.

*Id.* at 71-72 (internal citations omitted)

Rather than using the opportunity to conduct discovery which this Court afforded defendants to seek to determine whether Plaintiff has colorable claims against any of the defendant doctors, defendants instead chose to focus their discovery requests upon trying to create a bogus record of collusion by attempting to obtain from the doctor defendants and Plaintiff information concerning potential settlement discussions which may have taken place after the Complaint was filed. Such inquiry is inappropriate. If such discovery were allowed in civil litigation to create some post-removal justification for the improper removal itself, it would become a standard chapter in the hand book of defense counsel – *i.e.*, to remove the case, then argue collusion between non-consenting parties and the plaintiff, seeking *carte blanche* discovery of counsel's notes and files. Moreover, it would set an onerous standard in civil litigation for all practitioners – to log every daily communication covered by privilege or confidentiality.[8]

---

[8]  This standard would be applicable to all practitioners. For instance, throughout this litigation and related AWP cases, these same defendants and their counsel have maintained that they have a purported joint defense privilege and that communications between and among counsel for the

5

Respecting that actual contention that there was "fraudulent joinder" of the doctor defendants in this case, *i.e.,* whether there is a possibility that Plaintiff could prove a cause of action against the defendant doctors, it is clear that more than a mere possibility exists – these doctors all pled guilty to the conspiracy charged in the Complaint. Drs. Antoun, Hopkins and Berkman have pleaded guilty to conspiring with AstraZeneca (which also pleaded guilty) to engage in free sample fraud in violation of 18 U.S.C. § 371 (the federal conspiracy statute), illegal conduct that underlies Plaintiff's claims under the New Jersey Consumer Fraud Act.[9] There can be no question that Plaintiff has stated a valid cause of action. Indeed, AstraZeneca's own as-yet-unproven claim of some post-filing settlement discussions between Plaintiff and one or more of these doctor defendants itself constitutes a judicial admission of the *bona fides* of the suit against the doctors: if the claims were truly frivolous, no defense counsel worth his salt would entertain settlement. Defendants cannot meet their heavy burden of proof, *see Fabiano, infra,* and they have squandered their opportunity to conduct reasonable discovery which might have enabled them to at least try to meet their burden. It is time to close the book on the ordeal of this case's journey through the federal court system by resolving the meritorious remand motion in favor of Plaintiff.

---

various pharmaceutical companies are privileged and not discoverable. Yet, defendants have never produced any logs concerning these communications. If such "joint defense" communications between defendants – all of whom are alleged to have conspired to secrete the fraudulent marketing tactics and inflation of AWP – are privileged, then the failure of the defense counsel to produce logs of these communications in response to plaintiffs' discovery requests would be deemed a waiver under AstraZeneca's interpretation of the law. If Plaintiff were required to produce a log of all post-filing privileged and confidential communications, then so too must defendants.

[9]  The activities of Drs. Antoun and Hopkins, detailed in the Class Action Complaint and evidenced by the guilty pleas and the federal criminal informations filed against them, underlie Plaintiff's claims for consumer fraud and conspiracy. *See Complaint,* ¶¶ 94-98.

6

Case 1:01-cv-12257-PBS   Document 1971   Filed 12/16/05   Page 7 of 12


**B.     SETTLEMENT NEGOTIATIONS ARE PRIVILEGED, CONFIDENTIAL AND NOT DISCOVERABLE.**

"When the requested discovery concerns a confidential settlement agreement, the majority of courts considering the issue have required the requesting party to meet a heightened standard, in deference to Federal Rule of Evidence 408, and the public policy to encourage settlements and to uphold confidentiality provisions." *Young v. State Farm Mut. Auto Ins. Co.*, 169 F.R.D. 72, 76 (S.D. W. Va. 1996). *See also Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 226-27 (D. Mass. 2003).

> Discovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponents' strategy, and it was not required in this case.... Such discovery is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive....

*Mars Steel Corp. v. Continental Illinois Nat'l Bank*, 834 F.2d 677, 684 (7th Cir. 1987). *See also In re Lupron Marketing and Sales Practices Litig.*, MDL No. 1430, 2005 WL 613492, at *2 (D. Mass. March 16, 2005). Defendants claim that Plaintiff's reliance upon these cases is misplaced because they say these cases only deal with the attempts of intervenors in class action cases to discover information concerning settlement agreements to which intervenors intend to object, not cases wherein discovery respecting fraudulent joinder is sought. While Plaintiff disagrees that these cases are legally inapposite, the defendants' use of the concept of fraudulent joinder in a non-traditional manner certainly makes these cases analogous. Ordinarily, the concept of fraudulent joinder involves a plaintiff allegedly suing a *non-diverse defendant* for the sole purpose of avoiding federal jurisdiction by defeating diversity. In the case at bar, however, two of the three defendants allegedly fraudulently joined are *diverse* parties to the Plaintiff. Here, defendants' implication that there is some type of

7

collusion between Plaintiff and these non-diverse defendant doctors to defeat removal makes absolutely no sense given that the addition of these parties *creates* diversity jurisdiction. Thus, the above-cited cases – which deal with attempts at discovery of allegedly collusive settlement negotiations between class plaintiffs and defendants – are analogous. Consequently, the stringent standard set forth in those cases applies here.

Further, defendants have not proffered any support in the case law for their attempts to discover settlement negotiations in the context of an allegation of fraudulent joinder. The one case from this District upon which defendants rely in support discovery of settlement negotiations, *Atchison Casting Corp., supra*, is easily distinguishable on the facts. In *Atchison*, the defendant insurance broker sought the settlement agreement as between the plaintiff insured and the insurance company, wherein plaintiff's claim was grounded in the contention that the broker had failed to secure adequate coverage for the loss. The court's decision to allow discovery of the settlement agreement was based upon the fact that the settlement agreement in that case went to the heart of the matter by virtue of "[p]laintiff's own description of its lawsuit." 216 F.R.D. at 227.[10] What defendants seek here is discovery of settlement negotiations in ongoing litigation, which the *Mars* Court recognized is unusual because it could give the pharmaceutical defendants, against whom Plaintiff is continuing to litigate, critical information about Plaintiff's strategy. If AstraZeneca truly wanted to find out about the *bona fides* of Plaintiff's claims it could have taken the opportunity to depose the doctors.

---

[10] The plaintiff in *Atchison* described its claims as follows: "'Because Kemper refused to cover the entire property and business interruption losses, [plaintiff] seeks the difference in coverage from [defendant/broker] by this action, which alleges, among other things, professional malpractice an breach of contract." *Atchison*, 216 F.R.D. at 227. The *Atchison* Court concluded that "[i]n essence, Plaintiff seeks what Kemper has refused to pay and, thereby, effectively concedes the relevancy of the settlement agreement to the instant matter." *Id.* Here, any settlement with the defendant doctors is not relevant to or at the heart of this case.

8

AstraZeneca elected not to do so, and curiously fails to include any citation to the transcripts of the earlier depositions of these doctors taken in MDL 1456. *See, e.g.*, excerpt from Transcript of Deposition of Robert A. Berkman, M.D. (reflecting the appearance of Michael S. Flynn and Monica Lamb of Davis Polk for AstraZeneca) at Exh. "G".

The defendants have proffered no independent evidence of collusion respecting settlement negotiations, if any there be, and the doctors' lack of consent to removal. Defendants cannot meet their heavy burden and their Motion To Compel should be denied.

### C. A PRIVILEGE LOG IS NOT REQUIRED.

Because the settlement negotiations are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, Plaintiff submits that it should not have to produce a privilege log of any post-filing confidential or privileged communications. If, however, this Court is inclined to order Plaintiff to produce such a log, Plaintiff demands that such a log be produced by defense counsel to chronicle all of their alleged confidential and privileged communications respecting the subject matter covered by pending plaintiffs' discovery in MDL 1456, including but not limited to communications sought to be protected under the guise of the "joint defense privilege."

### III. CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Court deny defendants' Motion To Compel, grant Plaintiff's Motion for Remand and return this matter to the Superior Court of New Jersey, Monmouth County. Plaintiff submits that, if this Honorable Court is inclined to grant

AstraZeneca elected not to do so, and curiously fails to include any citation to the transcripts of the earlier depositions of these doctors taken in MDL 1456. *See, e.g.*, excerpt from Transcript of Deposition of Robert A. Berkman, M.D. (reflecting the appearance of Michael S. Flynn and Monica Lamb of Davis Polk for AstraZeneca) at Exh. "G".

The defendants have proffered no independent evidence of collusion respecting settlement negotiations, if any there be, and the doctors' lack of consent to removal. Defendants cannot meet their heavy burden and their Motion To Compel should be denied.

### C.   A PRIVILEGE LOG IS NOT REQUIRED.

Because the settlement negotiations are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, Plaintiff submits that it should not have to produce a privilege log of any post-filing confidential or privileged communications. If, however, this Court is inclined to order Plaintiff to produce such a log, Plaintiff demands that such a log be produced by defense counsel to chronicle all of their alleged confidential and privileged communications respecting the subject matter covered by pending plaintiffs' discovery in MDL 1456, including but not limited to communications sought to be protected under the guise of the "joint defense privilege."

### III.   CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Court deny defendants' Motion To Compel, grant Plaintiff's Motion for Remand and return this matter to the Superior Court of New Jersey, Monmouth County. Plaintiff submits that, if this Honorable Court is inclined to grant

defendants' motion to compel, that the Court should first examine the documents *in camera* before turning them over to defendants.[11]

                                                    Respectfully submitted,

Date: December 16, 2005

                                                    Shanin Specter, Esquire

Ronald J. Ranta, Esquire                   Donald E. Haviland, Jr., Esquire
**FISETTE & RANTA**                           TerriAnne Benedetto, Esquire
B.B.O. No. 411880                              **KLINE & SPECTER**
100 Cummings Center, Suite 221B        1800 Chapel Avenue, Suite 302
Beverly, MA 01915                             Cherry Hill, NJ 08002
978-927-8766 telephone                      856-662-1180 telephone
978-927-7082 facsimile                       856-662-1184 facsimile

                                                  John E. Keefe, Jr., Esquire
                                                  Stephen T. Sullivan, Jr., Esquire
                                                  **LYNCH ♦ MARTIN**
                                                  830 Broad Street
                                                  Shrewsbury, NJ 07702
                                                  732-224-9400 telephone
                                                  732-224-9494 facsimile

                                                  Raymond A. Gill, Jr., Esquire
                                                  **GILL & CHAMAS**
                                                  655 Florida Grove Road
                                                  P.O. Box 760
                                                  Woodbridge, NJ 07095
                                                  732-324-7600 telephone
                                                  732-324-7606 facsimile
                                                  ATTORNEYS FOR PLAINTIFF AND THE CLASS

---

[11]     This procedure will also afford Plaintiff the time necessary to take an appeal as of right from any determination by this Court that privileged and/or confidential communications should be turned over.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Memorandum of Law in Opposition to AstraZeneca's Motion to Compel the Production of Documents by Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, was served on all counsel via LexisNexis pursuant to Case Management Order No. 2.

Dated: <u>December 16, 2005</u>                    Respectfully submitted,

TerriAnne Benedetto, Esquire
**KLINE & SPECTER**
1800 Chapel Avenue, Suite 302
Cherry Hill, NJ 08002
856-662-1180 telephone
856-662-1184 facsimile