UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: Pharmaceutical Industry Average Wholesale Price Litigation | ) ) ) ) ) | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| This Document Relates to: | ) ) ) | The Honorable Patti B. Saris |
| *The People of the State of Illinois v. Alpharma Inc., et al.*, C.A. No. 1:05-4056 (N.D.Ill.); | ) ) ) | |
| *Commonwealth of Kentucky v. Alpharma Inc., et al.*, C.A. No. 3:05-47 (E.D.Ky); | ) ) ) | |
| *Commonwealth of Kentucky v. Abbott Laboratories, Inc.*, C.A. No. 3:05-48 (E.D.Ky.); | ) ) ) | |
| *Commonwealth of Kentucky v. Warrick Pharmaceuticals Corp., et al.*, C.A. No. 3:05-49 (E.D.Ky.). | ) ) ) ) | |

## JOINT MOTION OF THE ATTORNEYS GENERAL OF ILLINOIS AND KENTUCKY FOR A HEARING REGARDING THEIR MOTIONS TO REMAND

Lisa Madigan, Attorney General of the State of Illinois; and Gregory D. Stumbo, Attorney General of the Commonwealth of Kentucky, respectfully request that this Court schedule a hearing to consider their fully-briefed and pending motions to remand which were filed in their respective district courts more than four months before the Judicial Panel on Multidistrict Litigation transferred the above-captioned cases to this Court on December 5, 2005.

Federal courts disfavor depriving litigants, particularly sovereigns such as the States of Illinois and Kentucky, of their choice of forum within which to litigate purely state-law claims. Yet this is precisely what defendants seek to do through their removal of the state-court actions filed by these State Attorneys General. As demonstrated in the remand motions, defendants' removal of these actions was untimely and, in any event, federal jurisdiction over each action is lacking.

While these remand motions are pending, the States are powerless to compel defendants to produce relevant documents and information in response to discovery requests that were served early in the litigation or otherwise advance the litigation without running the risk of consenting to federal jurisdiction which, as demonstrated below, has been found to be lacking by all five courts which have considered and ruled on identical remand motions. And the removals and jurisdictional disputes have interrupted briefing and resolution of important motions that were filed in the state courts. In order to avoid further delay and prejudice, Illinois and Kentucky respectfully request that this Court schedule a hearing and promptly grant the motions to remand.

Factual background.

State-court proceedings.[1]

The Illinois action.

On February 7, 2005, the State of Illinois filed a civil action in the Circuit Court of Cook County, Illinois, *The People of the State of Illinois v. Abbott Laboratories, Inc., et al.*, No. 05 CH 2747. No federal claims are asserted. Rather, the complaint asserts causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§505/2 and 505/2-CC; the Illinois Public Assistance Fraud Act, 305 ILCS § 5/8A-7(b); and the Illinois Whistleblower Reward and Protection Act, 740 ILCS §175/1, *et seq.*, arising from, *inter alia*, defendants' scheme to prevent the state's Medicaid program from learning the true prices of their pharmaceutical products, including the reporting of phony and inflated average wholesale prices ("AWPs").

---

[1] Copies of the complaints filed by the Illinois and Kentucky Attorneys General are attached to their respective remand motions.

The Kentucky actions.

The Commonwealth of Kentucky filed a civil action in the Circuit Court of Franklin County on September 15, 2003 and an amended complaint on October 14, 2003, *Commonwealth of Kentucky v. Abbott Laboratories, Inc.*, No. 03-CI-1134.

The Commonwealth of Kentucky filed a separate civil action in the Circuit Court of Franklin County on September 15, 2003 and an amended complaint on October 14, 2003, *Commonwealth of Kentucky v. Warrick Pharmaceuticals Corporation, et al.*, No. 03-CI-1135.

The Commonwealth of Kentucky filed a third civil action in the Circuit Court of Franklin County on November 4, 2004 and an amended complaint on May 12, 2005, *Commonwealth of Kentucky v. Alpharma, Inc., et al.*, No. 04-CI-1487.

No federal claims are asserted in the Kentucky actions. Rather, each action asserts claims under the Kentucky Consumer Protection Act, KRS 367.170, *et seq.*; the Kentucky Medicaid Fraud Act, KRS 205.8463, *et seq.*; the Kentucky False Advertising Statute, KRS 517.030, *et seq.*; common-law fraud; and negligent misrepresentation arising from, *inter alia*, defendants' scheme to prevent the state's Medicaid program from learning the true prices of their pharmaceutical products, including the reporting of phony and inflated AWPs.

Removal and proceedings in federal court.

On or about July 13, 2005, defendants removed the Illinois and Kentucky state-court actions to federal court. The sole basis for removal was that *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005), which the United States Supreme Court decided on June 13, 2005, constituted an "order or other paper" from which the defendants "first ascertained" that the state-court actions were removable within the meaning of

the federal removal statute, 28 U.S.C. §1446(b).  Defendants asserted that *Grable* for the first time made clear that each state-court action presented a federal question.[2]

Simultaneously, and on the same basis, defendants removed state-court actions filed by the Attorneys General of Alabama, Minnesota, New York, Pennsylvania, and Wisconsin, and one action filed by the Attorney General of Florida.

However, defendants did not remove similar state-court actions filed by the Attorneys General for the States of Arkansas, Connecticut, Missouri, Nevada, Ohio, West Virginia, and Texas, as well as a separate action filed by the Florida Attorney General, although the Texas action was subsequently removed following the filing of an amended complaint.

Each Attorney General whose state-court action was removed filed a motion to remand in the respective federal district court.  At the time of the JPML's final transfer order (described below), five of the nine district court judges to whom the removed cases were assigned had ruled on the remand motions.  All five courts granted the motions to remand.  *See* August 11, 2005 order in *State of Alabama v. Abbott Laboratories, Inc. et al.*, No. 2:05cv647 (M.D.Ala.); September 9, 2005 order in *Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc., et al.*, No. 2:05-cv-03604 (E.D.Pa.); September 29, 2005 order in *State of Wisconsin v. Amgen Inc., et al.*, No. 05-C-408 (W.D.Wis.) (awarding attorneys' fees and costs to the State of Wisconsin); October 24, 2005 order in *State of Minnesota v. Pharmacia Corporation*, No. 05-1394 (D.Minn.); and December 5, 2005 order in *The State of Texas, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*, No. A-05-CA-897-LY.[3]  Each court concluded that federal jurisdiction was lacking.  And those that reached the timeliness question found that the removals were untimely.

---

[2] The Supreme Court's decision in *Grable* affirmed a decision from the U.S. Court of Appeals for the Sixth Circuit, which includes Kentucky.  Accordingly, the Supreme Court's *Grable* decision did not change the law in the Sixth Circuit and the defendants' removal of the Kentucky actions was untimely.

[3] Copies of these five orders are contained in Illinois and Kentucky case files.  For the Court's convenience, they are also attached to this brief as Exhs. 1-5.

4

<u>Proceedings before the Judicial Panel on Multidistrict Litigation</u>.

At or shortly after the time that defendants removed the state-court actions to federal court, defendants filed notices of related actions before the Judicial Panel on Multidistrict Litigation ("JPML") and requested that the removed actions be transferred to this court as tag-along actions to MDL No. 1456. The JPML issued Conditional Transfer Order 25, to which all of the removed states filed notices of opposition and motions to vacate. On December 5, 2005, the JPML entered an order denying the motions to vacate and transferring to this Court the cases that had not been remanded, *i.e.*, those brought by Illinois, Kentucky, and New York.

<u>Illinois and Kentucky request that this Court promptly rule on the motions to remand</u>.

The Illinois and Kentucky motions to remand are fully briefed and have been pending for more than four months. While the motions are pending, the States are powerless to compel defendants to produce long-requested documents and information and to otherwise prosecute their lawsuits without running the risk of consenting to federal jurisdiction. This is because one of the State's objections to removal is procedural, *i.e.*, that the removals were untimely. Procedural objections to removal may be waived if a plaintiff participates in the federal-court proceeding. *Harris v. Edward Hyman Company*, 664 F.2d 943 (5th Cir. 1981); 32 Am. Jur.2d Federal Courts §1719 ("[e]ven if there are irregularities in the removal proceeding, if a Federal District Court otherwise has jurisdiction and a plaintiff acquiesces in that jurisdiction by affirmative act, such as participating in federal discovery and attending federal status conferences, or vigorously prosecuting the case after removal, the plaintiff's motion to remand may be denied on theories of waiver or estoppel").

Moreover, the removals and pendency of the remand motions have significantly interfered with the orderly progression of the litigation. For example, at the time of removal, briefing had been completed on defendants' motions to dismiss and oral argument had been scheduled in the Kentucky litigation. In Illinois, briefing on defendants' motions to dismiss was

interrupted, as was briefing on plaintiff's motion for a protective order regarding confidential information produced by defendants.

Accordingly, to avoid further delay and prejudice, Illinois and Kentucky respectfully request that this Court promptly consider and grant their motions to remand and award them attorneys' fees and costs.

Dated:  December 16, 2005

Respectfully submitted,

LISA MADIGAN
Attorney General of the State of Illinois

GREGORY D. STUMBO
Attorney General of the Commonwealth of
Kentucky

By:

ROBERT S. LIBMAN
Special Assistant Attorney General for
the States of Illinois and Kentucky

Miner, Barnhill & Galland
14 W. Erie St.
Chicago, IL 60610
(312) 751-1170
(312) 751-0438 (telefax)

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

STATE OF ALABAMA, in its      )
capacity as sovereign and     )
on behalf of the Alabama      )
Medicaid Agency,              )
                              )
    Plaintiff,                )
                              )     CIVIL ACTION NO.
    v.                        )       2:05cv647-T
                              )
ABBOTT LABORATORIES,          )
INC., et al.,                 )
                              )
    Defendants.               )

### ORDER

After careful consideration of the state-law claims

presented in this case, the court does not believe that the

claims "necessarily raise a stated federal issue, actually

disputed and substantial, which a federal forum may entertain

without disturbing any congressionally approved balance of

federal and state judicial responsibilities." _Grable & Sons

Metal Prods., Inc. v. Darue Eng'g. & Mfr._, 545 U.S. ___, ___,

125 S. Ct. 2363, 2368 (2005); _see also Caterpillar, Inc. v.

Williams_, 482 U.S. 386, 107 S.Ct. 2425 (1987); _Metropolitan

Life Ins. Co. v. Taylor_, 481 U.S. 58, 107 S.Ct. 1542 (1987);



Case 2:01-cv-12257-PBS   Document 1491   Filed 12/27/2005   Page 8 of 65
Case 2:05-cv-24947-PBS   Document 1491   Filed 12/27/2005   Page 8 of 65
Case 2:05-cv-00647-MHT-VPM   Document 162   Filed 08/11/2005   Page 2 of 2

<u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, 478 U.S. 804, 106 S.Ct. 3229 (1986); <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 103 S.Ct. 2841 (1983); <u>Gully v. First National Bank of Meridian</u>, 299 U.S. 109, 57 S.Ct. 96 (1936).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motion to remand (Doc. no. 69) is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Montgomery County, Alabama, for want of subject-matter jurisdiction.

It is further ORDERED that plaintiff's and defendants' motions to stay (Doc. nos. 71 & 109) and plaintiff's motion for expedited ruling (Doc. no. 73) are denied.

It is further ORDERED that all other substantive motions are left for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 11th day of August, 2005.


___/s/ Myron H. Thompson___
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF | : | |
| PENNSYLVANIA | : | CIVIL ACTION |
| | : | |
| v. | : | 2:05-cv-03604 |
| | : | |
| TAP PHARMACEUTICAL | : | |
| PRODUCTS, INC., et al. | : | |

**OPINION**

**JUAN R. SÁNCHEZ, J.**                                      September 9, 2005

The Commonwealth of Pennsylvania is suing thirty-eight pharmaceutical companies, alleging price-setting fraud. The pharmaceutical companies would like to remove the case to federal court. Because I find the lawsuit sounds solely in state law, I will grant the Commonwealth's motion to remand.

In their unified notice of removal, the Defendants assert the Commonwealth's lawsuit arises under federal law because recovery is predicated on the meaning of "average wholesale price," a term, which until recently, governed reimbursement for certain prescription drugs under Medicare. The Commonwealth argues its pleading raises purely state-law causes of action not dependent on the meaning of "average wholesale price" as the term was used in the Medicare statute. Alternatively, the Commonwealth argues even if federal-question jurisdiction exists, the Defendants failed to remove this case in a timely manner. The Defendants also ask this Court to stay its consideration of the motion to remand because they have sought transfer of this lawsuit to multi-district litigation underway in the District of Massachusetts, a request I will deny.

1



EXHIBIT
2
Blumberg No. 5119

## BACKGROUND

In March, 2004, the Commonwealth of Pennsylvania filed a lawsuit against thirteen pharmaceutical companies in Commonwealth Court of Pennsylvania, alleging violations of state law. The Commonwealth Court dismissed the complaint without prejudice on February 1, 2005 based upon the pharmaceutical companies' preliminary objections. Undeterred, on March 10, 2005, the Commonwealth, through its Attorney General, filed a Corrected Amended Civil Action Complaint ("Amended Complaint") that names thirty-eight pharmaceutical companies as defendants. Many of the thirty-eight entities identified in the caption are subsidiaries or affiliates of one another, so the allegations in the Amended Complaint are essentially directed against fourteen pharmaceutical defendants.    Specifically, each Defendant faces a count for unjust enrichment, misrepresentation/fraud, and violations of the Commonwealth's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). There is also a count against the Defendants collectively for civil conspiracy, and the Commonwealth invokes its ability to proceed *parens patriae* (as "parent of the state") for those citizens who were adversely affected by Defendants' allegedly wrongful conduct.

The Commonwealth complains the pharmaceutical companies have engaged in an unlawful sales and marketing scheme to artificially inflate the average wholesale price ("AWP") of drugs since 1991. Accordingly, the Amended Complaint prays for compensatory and punitive damages, as well as injunctive relief.

The AWP for a prescription drug is a number generated by the pharmaceutical company that manufactures the drug. AWP is the standard for reimbursement under many of the Commonwealth's

2

social welfare programs.[1] Simply stated, the Commonwealth reimburses beneficiaries of various social welfare programs, such as Medicaid, for their purchase of prescription drugs. The price at which these beneficiaries purchase and receive reimbursement is based upon AWP data promulgated by the Defendants. Until recently, Medicare reimbursed health-care providers in the Commonwealth up to eighty percent of the AWP for prescriber-dispensed drugs used to treat Medicare beneficiaries.

A substantial portion of the Amended Complaint is devoted to the recovery the Commonwealth seeks for itself, and the Defendants do not assert the meaning of AWP as it pertains to reimbursement at the state level implicates a federal issue. The Defendants also do not claim the Commonwealth's *parens patriae* claim to recover inflated copayments or direct purchases made by its citizens gives rise to federal-question jurisdiction. The only claim the Defendants assert confers federal-question jurisdiction is the Commonwealth's *parens patriae* claim to recover Medicare copayments based on allegedly inflated AWPs. The Defendants argue the Commonwealth must prove a discrepancy between reported AWPs and the meaning of AWP as it was once used in the Medicare statute.

When Medicare based reimbursement for prescriber-dispensed drugs on AWP, there were no federal regulations for calculating a drug's "average wholesale price." Additionally, neither Medicare nor the Department of Health and Human Services established a process whereby AWPs

---

[1]The three largest programs through which the Commonwealth reimburses its citizens for prescription drugs are Medicaid, the Pharmaceutical Contract with the Elderly Program ("PACE"), and the Pennsylvania Employees Benefit Trust Fund ("PEBTF"). Reimbursement is determined by statute for Medicaid, 55 Pa. Code §§ 1121.55-56, and PACE beneficiaries, 72 P.S. § 3761-509(6) (relying on the "average wholesale cost of the prescription drug dispensed"). The starting point for computation of benefits under both provisions is based on a drug's AWP. Pharmacy benefit managers administer reimbursement under the PEBTF program, and the contracts with these firms require the Commonwealth to provide reimbursement for prescription medication using a figure derived from AWP.

3

could be accurately ascertained for federal Medicare purposes. Medicare beneficiaries in the Commonwealth who received prescriber-dispensed drugs paid the remaining twenty-percent of the drug's cost in the form of a copayment. These copayments were based on the AWP figures generated by the pharmaceutical manufacturers.

Pharmaceutical companies do not report AWP information directly to Medicare or the Commonwealth. Instead, drug manufacturers report AWP data to independent publishers of pharmaceutical-trade compendia designed to disseminate this information. The independent publishers do not verify the accuracy of AWP data. The Commonwealth claims the Defendants used the lack of government and private oversight of AWP data to their advantage by creating a "spread" between the price at which they sold prescription drugs to providers (e.g., physicians, pharmacies, and pharmacy benefit managers) and the AWP figure reported to the independent publishers. Defendants allegedly made their respective drug products more attractive to these providers because they could profit from reimbursements the Commonwealth and federal government paid on the spread. According to the Commonwealth, Medicare beneficiaries in Pennsylvania paid more for prescriber-dispensed prescription drugs as a result of inflated AWPs. To recover these overpayments, the Commonwealth's Attorney General is proceeding *parens patriae* against the Defendants. Defendants assert the definition of AWP raises a substantial question of federal law.

On July 13, 2005, Defendants filed a unified notice of removal with this Court pursuant to 28 U.S.C. § 1441(b), which permits cases to be removed to federal court if the plaintiff's cause of action arises under federal law. Two days later, Defendants submitted a Notice of Related Action (otherwise known as a "Tag-Along Notice") to the Joint Panel for Multi-district Litigation ("JPML") requesting this case, as well as ten others brought by Attorneys General from Alabama, Illinois,

4

Kentucky, Minnesota, New York, and Wisconsin against many of the same defendants here, be transferred to MDL 1456, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, underway in the District of Massachusetts. The JPML issued a conditional transfer order as a matter of course on August 9, 2005, to which the Commonwealth filed a notice of opposition. As a result, the conditional transfer order is stayed until further order from the JPML pursuant to Rule 7.4(c).

**DISCUSSION**

Defendants' motion to stay is a request to have the jurisdictional issue decided in MDL 1456. They argue it would be an inefficient use of judicial resources for this Court to consider the motion to remand. As Defendants' brief states, "this lawsuit raises many of the same legal and factual issues that are present in dozens of average wholesale price ("AWP") actions that have already been transferred to the Honorable Judge Patti B. Saris in Boston for consolidated and coordinated pretrial proceedings." Def.'s Br. Stay 1. They argue the conservation of judicial resources and consistency of decision at the federal level outweigh any potential prejudice to the Commonwealth because Judge Saris, given her experience dealing with AWP litigation thus far, is uniquely qualified to rule on the motion to remand. In response, the Commonwealth insists this Court should (and must) decide the threshold issue of jurisdiction. This Court agrees with the Commonwealth's position and concludes the power to grant a stay is subject to an important limitation: the existence of subject matter jurisdiction.[2]

If this Court is to adjudicate any pretrial matters, it must satisfy itself that it has the power to do so. The reasons for this are straightforward: determinations of subject matter jurisdiction

---

[2] A federal court has the inherent power to stay a proceeding, but this opinion does not actually adjudicate the Defendants' motion to stay (by balancing competing interests) because subject matter jurisdiction is lacking.

should be made on an individualized basis. *Illinois Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844,

851 (7th Cir. 2004). Even when a final transfer order is pending, as is the case here, "Congress has

indicated a preference for remands based on such individualized jurisdictional evaluations and a

tolerance for inconsistency." *Id.* (holding district court had unfettered power to remand case while

final transfer order was pending). A conditional transfer order from the JPML "does not affect or

suspend orders and pretrial proceedings in the district court in which the action is pending and does

not in any way limit the pretrial jurisdiction of that court." JPML Rule 1.5. Therefore, granting a

stay solely based on the existence of a factually-related MDL proceeding, without undertaking an

individualized analysis of subject matter jurisdiction, would run counter to established case law,

congressional intent, and JPML Rule 1.5, all of which contemplate a district court will act to resolve

threshold jurisdictional concerns.[3]

Defendants' judicial efficiency and uniformity arguments overlook this critical point. Here,

either this Court or Judge Saris must make an *independent* review of the notice of removal, the

Amended Complaint, and the motion to remand to determine whether a federal question is present.

The same degree of judicial resources must be expended here or in the District of Massachusetts to

---

[3]Defendants recognize the existence of subject matter jurisdiction is fundamental to a district court's ability to act. In support of their motion to stay, they request this Court to make a "preliminary assessment" of jurisdiction, determine if there are similar issues between this and other cases about to be (or already) transferred to MDL 1456, and then balance the competing interests to determine if a stay is appropriate. This was the approach developed in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001). While the *Meyers* three-step approach is facially appealing, its application is not as clear as the methodology may appear at first glance. For example, there are no guidelines on what constitutes a "preliminary analysis" of jurisdiction, and the task of determining similarities between the case before the court and others awaiting transfer (or already transferred) is collateral to the issue of subject matter jurisdiction. Moreover, a faithful undertaking to determine such similarities would undermine any notion of judicial efficiency. Accordingly, this Court declines Defendants' invitation to follow *Meyers*.

6

make an assessment of which party should prevail. Therefore, the existence of subject matter jurisdiction cannot be resolved more efficiently or uniformly in MDL 1456 because it is undisputed that one federal court must make an individualized assessment of the jurisdictional issues in this case. Multi-district litigation undoubtedly conserves judicial resources in many respects, but, in determining the threshold issue of jurisdiction, this Court concludes such an inquiry is fundamental to its purpose.

Removal of a case to federal court is permitted if there is a basis for subject matter jurisdiction. The removal statute also sets forth procedural requirements, including timeliness. 28 U.S.C. § 1446(b). Failure to satisfy either of these prerequisites renders removal ineffective.

Here, the parties disagree sharply on the substantive basis for removal, as well as whether Defendants filed their notice in a timely manner. Therefore, this opinion discusses both aspects, and the analysis tracks the order in which the governing provisions are set forth in the removal statute. Specifically, the first issue to resolve is whether, as Defendants assert, a federal question is present permitting removal under 28 U.S.C. § 1441(b).[4] Secondly, because the parties devoted substantial portions of their briefs to the timeliness issue, this opinion evaluates whether the removal comports with 28 U.S.C. § 1446(b).

The statutory right to remove extends to cases pending in state court that could have originally been brought in federal court. Defendants' unified notice of removal predicates subject matter jurisdiction solely on the theory that the Commonwealth's *parens patriae* claim "to recover

---

[4]This subsection of the removal statute states, in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

7

Medicare Part B co-payments raises a substantial federal question in that it requires the resolution of issues of federal law relating to the federal Medicare program." Defs.' Not. Rmvl. ¶ 9. More specifically, Defendants maintain the Commonwealth's claim requires "proof of a discrepancy between the AWPs reported by [Defendants] and the meaning of AWP under the Medicare statute." Defs.' Mot. Stay (quoting *Montana v. Abbot Labs.*, 266 F. Supp. 2d 250, 255 (D. Mass. 2003)). Defendants rely heavily on the language in *Abbot Laboratories*, an opinion dealing, in part, with Minnesota's attempt to recover Medicare co-payments using its *parens patriae* authority. The district court in *Abbot Laboratories* would have permitted removal, concluding the meaning of AWP presents a federal-question, however, First Circuit precedent required it to remand the case because no private remedy exists to seek redress for inflated AWPs. Here, Defendants contend a Supreme Court case from last term, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363 (2005) ("*Grable*"), removes this prerequisite, making this case removable in light of the reasoning in *Abbot Laboratories*. Therefore, "the propriety of removal [here] turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 (1983). As Justice Brennan's opinion in *Franchise Tax Board* indicates, there is no "single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Id.*

The threshold question of federal jurisdiction begins with application of the "well-pleaded complaint rule." According to this rule, "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 309 (3d Cir. 1994). Equally settled is the principle that

8

"federal jurisdiction cannot be created by anticipating a defense based on federal law." *United Jersey Banks v. Parell*, 783 F.2d 360, 365 (3d Cir. 1986) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908)). For example, in *Goepel*, the Third Circuit concluded the plaintiffs' complaint did not raise a federal question merely because it alluded to a federal contract. *Goepel*, 36 F.3d at 310. Similarly, in *United Jersey Banks*, the plaintiff's reliance on state-law causes of action signified the claim is not one arising under federal law. *United Jersey Banks*, 783 F.2d at 366. Both opinions appropriately noted, however, the issue of federal-question jurisdiction does not end with a facial review of the complaint.

The most recent guidance in completing this endeavor comes from the Supreme Court's opinion last term in *Grable*, which refines the approach a district court should follow to ascertain whether a removed case is within its original federal-question jurisdiction. In fact, the opinion does not refer to the well-pleaded complaint rule at all, but instead, is directed at those "less frequently encountered" situations where "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 125 S. Ct. at 2367. Additionally, the opinion in *Grable* reveals the Court granted certiorari "to resolve a split within the Courts of Appeals on whether *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Id.* at 2366 (footnote omitted). Thus, the Court was only concerned with the propriety of removal.

*Grable* brought a quiet title action in state court against Darue Engineering over real property the latter acquired from the IRS, which seized Grable's property to satisfy a tax deficiency. Grable's theory for invalidating Darue's title was based on the IRS's failure to provide notification of the seizure "in the exact manner required by [Internal Revenue Code] § 6335(a), which provides that

9

written notice must be 'given by the Secretary to the owner of the property [or] left at his usual place

of abode.'" *Id.* Grable insisted this provision necessitates personal service; not notification by

certified mail. "Darue removed the case to federal court as presenting a federal issue, because the

claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.* Grable

argued the lack of a federal right to enforce IRC § 6335(a) rendered removal improvident.

In affirming the propriety of removal, the Supreme Court held the absence of a federal cause

of action was not a bar to the existence of federal-question jurisdiction. The Court emphasized,

though, its holding in *Merrell Dow* was not to the contrary because the absence of a federal right of

action is "relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that

§ 1331 requires." *Id.* at 2369.  To summarize, the Court in *Merrell Dow* held that a negligence

action, which was based upon an alleged violation of a federal labeling standard contained in the

Food, Drug, and Cosmetics Act, did not raise an issue of federal law.  Considering the intersection

of congressional intent, judicial power, and federalism, the Court concluded the mere presence of

a federal standard embedded in a state-law cause of action was not enough to warrant federal-

question jurisdiction. *Merrell Dow*, 478 U.S. at 810-12. Thus, granting federal-question jurisdiction

over the plaintiff's state-law claim in *Merrell Dow*, without an accompanying  federal cause of

action, would have clearly upset the balance between the federal and state judicial spheres of

responsibility because any state-law claim that referred to a federal standard would confer subject

matter jurisdiction—a result the Supreme Court deemed untenable. *Grable* recognizes the need to

maintain this balance by emphasizing the appropriate test centers on whether "*a state-law claim*

*necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum*

*may entertain without disturbing any congressionally approved balance of federal and state judicial*

10

*responsibilities.*" *Grable*, 125 S. Ct. at 2368 (emphasis added).

As applied, the Court reasoned there was an actual dispute over the meaning of the Internal Revenue Code provision upon which Grable premised its claim to superior title. The dispute was substantial in that "the meaning of the federal tax provision" directly impacted the IRS's ability to fulfill its mission in collecting tax deficiencies because proper notice plays a critical role in seizing property from delinquents. *Id.* The opinion also directs district courts to proceed with caution in determining the propriety of removal because "even when a state action discloses a contested and substantial federal question, the exercise of jurisdiction is subject to a possible veto" after appropriate consideration of the "sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 2367. Upon consideration of this factor, the Court concluded "it will be the rare state quiet title case that raises a contested matter of federal law, [so] federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.* at 2368. The *Grable* analysis is completely consistent with the notion expressed by Justice Brennan in *Franchise Tax Board*: there are no bright-line rules to ascertain the existence of federal-question jurisdiction.

Here, the Amended Complaint sets forth exclusively state-law causes of action against the Defendants for unjust enrichment, misrepresentation/fraud, violations of Pennsylvania's UTPCPL, as well as civil conspiracy. A facial assessment of the Commonwealth's Amended Complaint precludes removal based on federal-question jurisdiction because there is no suggestion anywhere in the pleading the Commonwealth is suing to vindicate a federal right or seek redress for a violation of federal law. Defendants, though, argue this case fits within the *Grable* framework as one where federal-question jurisdiction exists because the Commonwealth's state-law claims implicate

11

significant federal issues. Although I agree with Defendants' proposition that *Grable* controls, its application here leads me to conclude the Commonwealth's *parens patriae* claim does not present an issue arising under federal law.

The first step under *Grable* is to assess whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial." *Id.* To reiterate, plaintiff Grable premised its quiet title action on the meaning of IRC § 6335(a), and to prevail, Grable needed to demonstrate this provision required the IRS to provide personal notification of the seizure, not service by certified mail. An alternative construction of the statute would defeat Grable's state-law claim. Here, the term "average wholesale price" is not "actually disputed" because the Commonwealth does not premise its *parens patriae* claim on the construction of these words as they appear in the applicable Medicare statute and regulations. Neither Congress nor Medicare ever defined "average wholesale price," and there were no regulations in place to approve AWP or verify the accuracy of the reported figures. Faithful adherence to the plain language of these words does not reveal an aspect of federal law that is "actually disputed." More importantly, a court (be it federal or state) does not need to ascribe any meaning to the words "average wholesale price" for the Commonwealth to prevail. Instead, the Commonwealth must prove the Defendants' conduct was in derogation of state law. Provided the Commonwealth adduces evidence to support its allegations, Defendants must counter by marshaling facts to suggest their conduct did not violate state law. Like the federal labeling provision at issue in *Merrell Dow*, AWP was no more than a federal standard.[5] AWP governed the

---

[5]In *Merrell Dow*, the plaintiff, to prevail, would have to demonstrate the federal labeling standard was violated. Here, though, the Commonwealth is not even alleging Defendants violated the Medicare reimbursement provision, so the relation of a federal law to the Commonwealth's claim is even more tangential than the situation in *Merrell Dow*.

12

amount a health-care professional would be paid for prescriber-dispensed prescription drugs. That is the only purpose it served and its meaning in that regard is not in dispute.

As part of their contention that subject matter jurisdiction exists, Defendants maintain the interpretation of the federal Medicare statute presents a substantial question of federal law. Under *Grable*, though, only federal issues that are "actually disputed and substantial" can give rise to federal-question jurisdiction. (The word "substantial" in *Grable* is linked, by the conjunction "and," to the language requiring the federal issue be "actually disputed.") Thus, the absence of an "actually disputed" issue of federal law, as is the case here, renders any discussion of substantiality superfluous. Rather than dismiss Defendants' argument on grammatical construction, this opinion briefly analyzes whether a substantial issue of federal law exists.

In *Grable*, the meaning of the IRC provision directly impacted the ability of the IRS to fulfill its mission. Federal court adjudication served the national interest because of the need for uniform interpretation of the tax law provision at issue. *Grable*, 125 S. Ct. at 2368. Here, the administration of Medicare would be unaffected by a state-court adjudication of this matter for two reasons. First, AWP is no longer the standard for reimbursement under Medicare. Secondly, even if it were, a court would not need to construe the term "average wholesale price" beyond its plain meaning. Simply put, the method for reimbursement would be unaltered. At oral arguments, defense counsel posited a federal interest exists in retrospective claims to recover inflated co-payments because a state-court judgment finding the Defendants artificially raised AWP would mean the federal government also overpaid for Defendants' products. Counsel suggested this figure would be enormous. This argument, though, focuses on Defendants' conduct, not how the meaning of AWP in the Medicare statute affects that conduct. Furthermore, the amount of potential damages, if the federal

13

government were to seek restitution, is collateral to the assessment of federal jurisdiction here because, as previously indicated, the result of this lawsuit would have no impact on Medicare's ability to perform its mission.[6] Therefore, the Commonwealth's *parens patriae* claim to recover Medicare co-payments does not present a substantial issue of federal law.

Given the absence of an "actually disputed and substantial" issue of federal law, the need to assess the balance between federal and state spheres of judicial responsibilities is obviated. In closing, the general concern expressed in both *Grable* and *Merrell Dow* over the extent to which federal-state judicial roles could be disrupted if federal-question jurisdiction could be triggered with mere reference to federal law applies here. Opening this Court to the Commonwealth's state-law *parens patriae* claim would be improvident because the reference to AWP is ancillary to the recovery sought. As the previous analysis demonstrates, removal under 28 U.S.C. § 1441(b) requires at a minimum, that the plaintiff's cause of action rely on a particular construction of federal law. Moreover, federal court adjudication of the disputed issue must serve the national interest in a

---

[6]Medicare does not preempt a state's ability to regulate fraudulent billing practices under state consumer protection statutes. *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 188 (D. Mass. 2003) (noting "there was no legislative intent to preempt supervision of the compensation of a person providing health services"); *see also* 42 U.S.C. § 1395 (precluding the exercise of federal control over administration of medical services or compensation to health-care providers). Thus, Congress anticipated states would be free to regulate and police conduct that causes detriment to its citizens without substantially affecting the administration of Medicare benefits. *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d at 187 (explaining there is no "evidence of a clear and manifest intent to preempt the entire field of state regulation of fraudulent medical billing practices"); *see also Hofler v. Aetna US Healthcare of Cal., Inc.*, 296 F.3d 764, 768 (9th Cir. 2002) (remanding, in part, "[b]ecause Congress clearly did not manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions"). Here, the Commonwealth is proceeding *parens patriae* on its state-law causes of action, one of which is a violation of Pennsylvania's consumer protection law. This claim does not implicate a substantial federal interest because the Medicare statute, as structured and construed, authorizes states to supervise conduct that adversely affects Medicare beneficiaries without federal oversight.

14

substantial manner, without serious impact to our federalist system. To conclude, this Court is without jurisdiction.

The parties also differ sharply on the timeliness of removal and devoted a substantial portion of their briefs to the issue. Although the lack of federal-question jurisdiction is dispositive, this Court wishes to succinctly indicate the reasons for which it concludes the removal did not comport with 28 U.S.C. § 1446(b).

Defendants argue the removal was timely because the Supreme Court's *Grable* opinion constitutes an "order or other paper" under section 1446(b) from which it first could be ascertained this case was removable. Not until the Supreme Court issued its *Grable* opinion, Defendants assert, could they have removed this case in good faith because Third Circuit precedent[7] and the holding in *Abbot Laboratories* required a private right of action for the existence of federal-question jurisdiction.[8] To assess Defendants' argument requires applying existing case law to the language in the second paragraph of section 1446(b), which reads as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, *order or other paper* from which it may be first ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b) (emphasis added).

---

[7] *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90 (3d Cir. 1992) (holding a private right of action is a prerequisite to federal-question jurisdiction).

[8] Defendants offer a second basis upon which they claim removal was timely. Specifically, they argue the complete lack of service upon ZLB Behring, one of the defendants named in the Amended Complaint, tolls the thirty day period for removal under section 1446(b) for all defendants. Under this theory, the thirty day period has not even begun to run for any defendant in this case. The Court, though, dismisses this argument as without adequate support.

15

To begin, the *Grable* opinion cannot be considered an "order" upon evaluation of Third Circuit precedent in *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993). In *American Red Cross*, the panel affirmed removal based on federal-question jurisdiction because the defendant, the Red Cross, was also a party to a factually-related Supreme Court case that resulted in an opinion expressly permitting the Red Cross to remove the case it was defending in state court.[9] The Third Circuit explained its holding in *American Red Cross* was a narrow one, and set forth the following test for a district court to determine if a subsequent court opinion is an "order":

> An order is sufficiently related when, as here, the order in the case came from a court superior in the same judicial hierarchy, was directed at a particular defendant and expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues.

*Id.* at 203. Application of this test here readily reveals only the first element is satisfied. The Supreme Court did not direct its *Grable* opinion at the Defendants in this case, and the factual issues here are completely unrelated to those in *Grable*. Accordingly, *Grable* is not an order for purposes of section 1446(b). Although the Third Circuit has not considered whether a subsequent Supreme Court opinion constitutes an "other paper" under section 1446(b), the majority rule from other district courts is that unrelated opinions fall outside this language.[10] "The plain language of the statute, referring to the 'receipt by the defendant, though service or otherwise,' implies the

---

[9]The Supreme Court's subsequent opinion was "not simply an order emanating from an unrelated action but rather . . . an unequivocal order directed to a party to the pending litigation, explicitly authorizing it to remove any cases it is defending." *American Red Cross*, 14 F.3d at 202.

[10]*See Metropolitan Dade County v. TCI TKR of S. Fla.*, 936 F. Supp. 958 (S.D. Fla. 1996) (holding Federal Communications opinion was not "other paper" to trigger thirty-day period); *Kojac v. Chrysler Corp.*, 794 F. Supp. 234 (E.D. Mich. 1992) (holding Sixth Circuit opinion on ERISA preemption was not "other paper"); *Holiday v. Travelers Ins. Co.*, 666 F. Supp. 1286 (W.D. Ark. 1987) (holding recent Supreme Court decisions were not "other paper[s]" under removal statute).

16

occurrence of an event within the proceeding itself; defendants do not ordinarily 'receive' decisions entered in unrelated cases." *Morsani v. Major League Baseball*, 79 F. Supp.2d 1331, 1333 (M.D. Fla. 1999) (holding Supreme Court opinion was not an "order or other paper" for purposes of 1446(b)). This rationale for this rule is to preclude potentially disruptive effects at both the state and federal level.

    For the foregoing reasons, removal in this case was not timely.  I will enter an order consistent with this opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : | CIVIL ACTION |
| v. | : : | 2:05-cv-03604 |
| TAP PHARMACEUTICAL PRODUCTS, INC., et al. | : : | |

## ORDER

AND NOW, this 9th day of September, 2005, it is hereby ORDERED Plaintiff's Motion to Remand (Document 17) is GRANTED, Defendants' Motion to Stay Consideration of the Motion to Remand (Document 19) is DENIED; and Plaintiff's Motion for an Award of Fees and Costs (Document 17) is DENIED. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).

BY THE COURT:

_____
Juan R. Sánchez, J

18

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN,

                     Plaintiff,

     v.

ABBOTT LABORATORIES, AMGEN, INC.,
ASTRAZENECA PHARMACEUTICALS, LP,
ASTRAZENECA, LP, AVENTIS PHARMACEUTICALS, INC.,
AVENTIS BEHRING, LLC., BAXTER INTERNATIONAL, INC.,
BAYER CORPORATION, BOEHRINGER INGELHEIM
CORPORATION, BRISTOL-MYERS SQUIBB CO.,
DEY, INC., GENSIA SICOR PHARMACEUTICALS, INC.,
GLAXOSMITHKLINE, INC., JOHNSON &
JOHNSON, INC., PFIZER, INC., PHARMACIA,
SCHERING-PLOUGH CORPORATION, TAP
PHARMACEUTICAL PRODUCTS, INC., WATSON
PHARMACEUTICALS, INC., BEN VENUE
LABORATORIES, INC., BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC., IMMUNEX CORPORATION,
IVAX CORPORATION, IVAX PHARMACEUTICALS, INC.,
JANSSEN PHARMACEUTICAL PRODUCTS, LP,
McNEIL-PPC, INC.,MERCK & COMPANY, INC.,
MYLAN LABORATORIES, INC., MYLAN PHARMACEUTICALS
CORPORATION, NOVARTIS PHARMACEUTICALS
CORPORATION, ORTHO BIOTECH PRODUCTS, LP,
ORTHO-McNEIL PHARMACEUTICAL, INC.,
ROXANE LABORATORIES, INC., SANDOZ, INC.,
GENEVA PHARMACEUTICALS, INC., SMITHKLINE
BEECHAM CORPORATION, TEVA PHARMACEUTICAL
INDUSTRIES, LTD., WARRICK PHARMACEUTICALS

OPINION and ORDER

05-C-408-C

1



Copy of this document has been
pro...
EXHIBIT
3
this
by
Judge Barbara B. Crabb

CORPORATION and WATSON PHARMA, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil action for monetary and injunctive relief appears for the second time in this court.  It is one of a number of lawsuits pending in state and federal courts across the country against pharmaceutical manufacturers.  The gravamen of the complaint filed by plaintiff State of Wisconsin is that defendant pharmaceutical companies inflated the average wholesale prices of their drugs, thereby violating several provisions of Wisconsin law.

This action was commenced in the Circuit Court for Dane County in June 2004.  Defendants removed it to this court in July 2004, arguing that subject matter jurisdiction existed under the diversity statute, 28 U.S.C. § 1332.  I disagreed and granted plaintiff's motion to remand.  State of Wisconsin v. Abbott Laboratories, et al., No. 04-C-477-C, Op. & Order dated Oct. 5, 2004.  Defendants have removed the case to this court a second time, arguing that a recent Supreme Court decision, Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S. Ct. 2363 (2005), demonstrates that this court has jurisdiction under the federal question statute, 28 U.S.C. § 1331.

Presently before the court are three motions filed by plaintiff:  a motion to remand, a motion to supplement the record and a motion to file supplemental authority in support of the motion to remand.  Plaintiff's motion to supplement the record and motion to file

2

supplemental authority will be granted.  Plaintiff's motion to remand will be granted as well.

Although this case involves a substantial and disputed question of federal law, it does not

involve a federal interest substantial enough to justify the exercise of federal jurisdiction.  In

addition, defendants' second notice of removal was not filed timely under 28 U.S.C. §

1446(b).  Finally, I will grant plaintiff's request for costs and attorney fees.

According to the notice of removal, plaintiff filed an amended complaint in this case

on or about November 1, 2004.  Defendants attached a copy of the amended complaint to

the notice of removal.  Notice of Removal, dkt. #2, Exh. C.  For the sole purpose of deciding

this motion, I draw the following facts from the amended complaint.


## ALLEGATIONS OF FACT

The market for prescription drugs operates roughly as follows.  Defendants

manufacture drugs and sell them to hospitals, physicians and pharmacies, collectively known

as "providers," who in essence resell the drugs to patients when the drugs are administered

or prescribed.  Providers pay manufacturers directly for the drugs; after a patient receives a

drug, the provider is reimbursed by the patient, his insurance company or a government

program such as Medicare or Medicaid, collectively known as "payers."

Insurance companies and government payers calculate the rates at which providers

are reimbursed on the basis of a drug's "average wholesale price."  Defendants set average

3

wholesale prices for each of their drugs. These prices are compiled and published in medical compendiums and are the only prices made available to providers and the public. If the price paid by a provider to the manufacturer is less than the reimbursement the provider receives from the payer, the provider retains the difference, or "spread," as profit. Because providers have substantial influence in deciding which drugs they will prescribe or administer, drug manufacturers are eager to court them. One of the ways defendants market their drugs to providers is by generating large spreads. Defendants have attempted to maximize the spread by publishing false and inflated average wholesale prices for their drugs.

Defendants have succeeded in their unlawful pricing by concealing their scheme from plaintiff and other payers. They sell their drugs to providers in a manner that hides the true price of their drugs, designate sales agreements with providers as trade secrets, charge different prices to different providers for the same drug and hide the true prices of their drugs by providing free drugs and phony grants to providers as a means of discounting the prices.

By publishing false and inflated average wholesale prices and keeping their actual prices secret, defendants have harmed plaintiff, its citizens and private payers in Wisconsin. Plaintiff is a payer under Medicaid, a joint state and federal health care entitlement program. Reimbursements to pharmacies and physicians for drugs covered by Medicaid are calculated by subtracting a fixed percentage from the average wholesale prices. Thus, publication of

4

inflated prices has caused the state to overpay for the drugs it purchases through its Medicaid program.

In addition, many Wisconsin citizens participate in Medicare, a health insurance program funded by the federal government. Medicare consists primarily of two major components, Part A and Part B. Part B is an optional program that provides coverage for some healthcare services not covered by Part A. It is supported by government funds and by premiums paid by individuals who choose to participate. Part B has a limited drug benefit. The federal government pays 80% of the allowable cost of a drug and participants are responsible for the remaining 20%. Because the allowable costs under Part B are calculated on the basis of defendants' inflated average wholesale prices, participants in Wisconsin have paid higher co-payments for their prescription drugs.

Finally, private, Wisconsin-based organizations that pay the prescription drug costs of their members have overpaid for prescription drugs. Because of the complexity of the prescription drug market, these organizations contract with Pharmacy Benefit Managers to handle their prescription drug reimbursements. Pharmacy Benefit Managers assert that they have the bargaining power needed to negotiate the price of drugs with drug manufacturers. However, plaintiff alleges that they have used their power to obtain benefits for themselves in the form of fees and rebates paid by manufacturers. In addition, Pharmacy Benefit Managers benefit from inflated average wholesale prices because they use them to set the

5

reimbursement rates for the private payers they represent.

Plaintiff brings suit on its own behalf and in *parens patriae* capacity on behalf of the citizens of Wisconsin against defendant pharmaceutical companies. The amended complaint consists of five counts, all arising under Wisconsin law. Counts I and II allege violations of Wis. Stat. §§ 100.18(1) and 100.18(10)(b), which prohibit making false representations with the intent to sell merchandise. Count III alleges a violation of the Wisconsin Trust and Monopolies Act, Wis. Stat. § 133.05. Count IV alleges a claim for fraud on the Wisconsin Medicaid Program, Wis. Stat. § 49.49(4m)(a)(2). Count V states a common law claim for unjust enrichment.

## DISCUSSION

### A. Jurisdiction

The Judicial Panel on Multidistrict Litigation has transferred many of the average wholesale price lawsuits filed across the country to the United States District Court for the District of Massachusetts for consolidated pre-trial proceedings. In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456. Defendants seek to have this action transferred to that court. On August 12, 2005, this court received a copy of a Conditional Transfer Order transferring this case to the District of Massachusetts pursuant to 28 U.S.C. § 1407. However, Rule 1.5 of the Rules of Procedure of the Judicial Panel on

6

Multidistrict Litigation states that the existence of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." See also Illinois Municipal Retirement Fund v. Citigroup, Inc., 391 F.3d 844, 851-852 (7th Cir. 2004) (district courts should consider motion to remand even though conditional transfer order has been issued). Thus, this court retains jurisdiction to decide plaintiff's motions.

## B. Motion to Stay Decision

In their brief in opposition to the motion to remand, defendants argue that the court should stay a decision on the motion to remand until the Judicial Panel on Multidistrict Litigation determines whether this case should be transferred to the District of Massachusetts. Apparently, defendants are under the impression that their motion to stay a decision on plaintiff's motion to remand remains undecided. However, Magistrate Judge Crocker denied their motion in an order dated August 4, 2005. Although Judge Crocker characterized defendants' motion as a motion to stay *briefing* on the motion to remand, he wrote that if "this court has the time to address the remand dispute before the MDL panel acts, it would be more efficient for the parties and the judicial system as a whole for this court to rule on the state's motion." Order, dkt. #49, at 2. Given that defendants never filed a motion to stay *briefing* and that Judge Crocker referred to their motion to stay a

7

decision in his order, defendants should have known that his order was addressing their motion to stay a decision. Regardless of its caption, the motion was and remains denied.

C. Motion to Supplement the Record and Motion to File Supplemental Authority

On August 22, 2005, defendants filed a request for leave to supplement their brief in opposition to the motion to remand with supplemental authority in the form of recent decisions from courts in Illinois and Alabama addressing motions to remand in cases against pharmaceutical companies. Dkt. #55. In response, plaintiff filed an opposition to defendants' request. Dkt. #56. Two days later, however, plaintiff filed its own motion to supplement the record. Dkt. #57. Approximately two weeks after that, plaintiff filed a motion to file supplemental authority. Dkt. #58. Plaintiff's motion to supplement the record and its motion to file supplemental authority will be granted. In ruling on the motion to remand, I have considered all of the decisions brought to the court's attention by the parties after the close of briefing on the motion to remand.

D. Motion to Remand

Although plaintiff has requested remand, defendants bear the burden of proving that this court has subject matter jurisdiction because they removed the case to federal court. Tykla v. Gerber Products Co., 211 F.3d 445, 448 (7th Cir. 2000). In determining whether

8

removal was proper, a district court must construe the removal statute, 28 U.S.C. § 1441, narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); People of the State of Illinois v. Kerr-McGee Corp., 677 F.2d 571, 576 (7th Cir. 1982).

Plaintiff's motion to remand raises two issues: whether federal jurisdiction exists in this case under the federal question statute, 28 U.S.C. § 1331, and, if so, whether defendants removed this case timely under 28 U.S.C. § 1446(b).

1. Propriety of removal

Federal law provides that a civil action begun in state court may be removed if a district court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). As noted above, defendants contend that this court has original jurisdiction over this case because it contains a federal question. The federal question statute, 28 U.S.C. § 1331, extends federal jurisdiction to "all civil actions arising under the Constitution, laws, or treaties of the United States." In the vast majority of cases, a claim arises under federal law because federal law creates the cause of action. However, claims grounded in state law may invoke "arising under" jurisdiction when they present a substantial and disputed question of federal law. Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 13 (1985); Commercial National Bank

9

of Chicago v. Demos, 18 F.3d 485, 488 (7th Cir. 1994). Defendants argue that the present

case falls into this latter category. Although the amended complaint invokes Wisconsin law

only, defendants contend that "the State of Wisconsin's claim to recover Medicare Part B

co-payments raises a substantial federal question in that it requires the resolution of issues

of federal law relating to the federal Medicare program, namely the meaning of [average

wholesale price] in the federal Medicare statute and regulations." Notice of Removal, dkt.

#2, at 2.

     Defendants' argument relies on a recent Supreme Court decision, Grable & Sons

Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S. Ct. 2363 (2005), but

the proper starting point for analysis is a case decided twenty years earlier. In Merrell Dow

Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), the Supreme Court held that a

complaint alleging a violation of a federal statute as an element of a state law claim was not

sufficient to invoke the jurisdiction of the federal courts under 28 U.S.C. § 1331 because the

federal statute did not confer a private right of action. The case involved state law

negligence claims against a drug manufacturer. The plaintiffs alleged that the manufacturer

provided an inadequate warning in violation of the Federal Food, Drug and Cosmetic Act,

21 U.S.C. §§ 301-395, a regulatory statute that did not contain a private right of action.

The plaintiffs argued that violation of the federal statute erected a rebuttable presumption

of negligence and that it "directly and proximately" caused the alleged injuries. Id. at 806.

10

The Court began its analysis by noting that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810. It considered the lack of a private cause of action in the federal statute particularly probative of congressional intent and concluded that it would undermine that intent to extend federal question jurisdiction to redress a violation of the statute solely because the violation was an element of a state law claim. Id. at 814 ("the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.").

In the wake of Merrell Dow, when federal courts had to determine whether federal question jurisdiction existed over state law claims alleging the violation of federal statutes, they looked to whether those statutes provided private rights of action. E.g., Seinfeld v. Austen, 39 F.3d 761, 764 (7th Cir. 1994); Montana v. Abbott Laboratories, 266 F. Supp. 2d 250, 256 (D. Mass. 2003) (citing cases). Recently, in Grable, the Court backed away from this approach and implied that the absence of a private right of action would not shut the federal courthouse door in every case. Grable involved a quiet title action brought in state court concerning property that had been seized by the IRS. Resolution of the case hinged on the interpretation of a notice provision in a federal tax statute. The Court held

11

that removal of the case to federal court was proper even though the tax statute lacked a

private right of action. Grable, 125 S. Ct. at 2365. In doing so, the Court emphasized that

federalism concerns should guide lower courts considering whether to shift litigation from

state to federal court:

> [E]ven when the state action discloses a contested and substantial federal
> question, the exercise of federal jurisdiction is subject to a possible veto. For
> the federal issue will ultimately qualify for a federal forum only if federal
> jurisdiction is consistent with congressional judgment about the sound
> division of labor between state and federal courts governing the application of
> § 1331. . . . Because arising-under jurisdiction to hear a state-law claim always
> raises the possibility of upsetting the state-federal line drawn (or at least
> assumed) by Congress, the presence of a disputed federal issue and the
> ostensible importance of a federal forum are never necessarily dispositive;
> there must always be an assessment of any disruptive portent in exercising
> federal jurisdiction.

Id. at 2367-68.

Applying this language, the Court concluded that the quiet title action involved a

substantial and disputed federal issue: interpretation of the notice provision in the federal

tax statute. In addition, the Court highlighted the federal government's strong interest in

"the availability of a federal forum to vindicate its own administrative action" and the

greater degree of familiarity of federal courts with tax matters. Id. at 2368. Finally, the

Court concluded that removal of the case would not upset the balance between federal and

state courts because quiet title actions rarely raise disputed issues of federal law. Id.

The Court stated further that its holding did not overrule the decision in Merrell

12

Dow. Rather, it characterized Merrell Dow as consistent with the framework set out in Grable. In Merrell Dow, the absence of a federal cause of action suggested the lack of a "substantial" federal question and, when combined with the fact that state remedies for mislabeling had not been preempted, provided "an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." Grable, 125 S. Ct. at 2370. Moreover, federal statutes and regulations are involved often in state tort actions, as was the case in Merrell Dow. By contrast, quiet title actions rarely raise questions of federal law. By refusing to extend jurisdiction over the tort claims in Merrell Dow, the Court avoided opening the floodgates for a massive shift in litigation. Id. at 2370-71 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.").

In sum, Grable holds that a state law claim is removable if it presents a disputed and substantial question of federal law that a federal court may decide without disturbing "any congressionally approved balance of federal and state judicial responsibilities." Id. at 2368. In the present case, plaintiff asserts five claims, all grounded in Wisconsin law: unjust enrichment, antitrust, fraud on the Wisconsin Medicaid program and two claims of false advertising. Each claim is rooted in defendants' alleged publication of inflated average wholesale prices for their drugs, which caused Wisconsin, its citizens, insurance companies

13

and other private organizations to overpay for the drugs. The Medicare statute does not contain a private right of action to recover overpayments made on the basis of inflated average wholesale prices. Nonetheless, defendants argue that removal is proper because the meaning of "average wholesale price" in the Medicare statute is a disputed and substantial element of plaintiff's claims, specifically the claims "to recover Medicare Part B co-payments for [plaintiff's] Medicaid program and on behalf of its Medicare beneficiaries." Dfts.' Br., dkt. #52, at 25; see also Montana, 266 F. Supp. 2d at 255 (Minnesota's *parens patriae* claims on behalf of Medicare beneficiaries present substantial federal question). Moreover, defendants contend that there is a substantial federal interest in having a single interpretation of "average wholesale price" in the Medicare statute. Finally, they argue that the exercise of federal jurisdiction in this case will not disrupt the division of labor between the federal and state courts because the district court handling the multidistrict litigation concerning average wholesale prices has already exercised jurisdiction over claims similar to those brought by plaintiff.

In response, plaintiff distinguishes Grable as an anomaly, a specific exception to Merrell Dow in which federal jurisdiction was appropriate because (1) a federal agency, the IRS, had an interest in the interpretation of the notice provision; (2) the meaning of the notice provision was the only disputed issue; and (3) removal of the case would not herald a massive shift in litigation from state to federal court because quiet title actions rarely raise

14

contested issues of federal law. Plaintiff contends that the present case, like <u>Merrell Dow</u>, presents garden variety tort claims that only tangentially involve federal questions. It cites the Court's admonition that lower courts should refrain from exercising jurisdiction in such cases because doing so would "herald[] a potentially enormous shift of traditionally state cases into federal courts." <u>Grable</u>, 125 S.Ct. at 2370.

To date, only one published decision has considered these arguments in a suit concerning average wholesale price manipulation. <u>Commonwealth of Pennsylvania v. Tap Pharmaceutical Products, Inc.</u>, No. Civ.A. 2:05-CV-03604, 2005 WL 2242913 (E.D. Pa. Sept. 9, 2005). In that case, Pennsylvania asserted claims of fraud, misrepresentation and unjust enrichment similar to those asserted by plaintiff in the present case. The pharmaceutical companies sought to transfer the case to the multidistrict proceeding in Massachusetts and the state filed a motion to remand. The court concluded that the term "average wholesale price" was not disputed because "the Commonwealth does not premise its *parens patriae* claim on the construction of these words as they appear in the applicable Medicare statute and regulations." <u>Id.</u> at *6. In fact, neither Congress nor the Medicare program provided a definition for the term in the statute or regulations. Therefore, a particular construction of the phrase under federal law was not necessary for the state to prevail. <u>Id.</u> As with the labeling provision at issue in <u>Merrell Dow</u>, the court concluded that the phrase supplied a federal standard against which the prices reported by the

15

pharmaceutical companies were to be judged.

In addition, the court concluded that the meaning of "average wholesale price" in the Medicare statute was not a substantial question of federal law. According to the court, "the administration of Medicare would be unaffected by a state-court adjudication" of Pennsylvania's claims because Medicare no longer calculates reimbursements on the basis of average wholesale prices and, even if it did, adjudication of the state claims would not alter the method of reimbursement. Id. at *7. In a footnote, the court noted further that, as in Merrell Dow, there was no evidence that Congress intended to preempt state regulation of fraudulent medical billing practices. Id. at *7 n.6.

In the present case, I agree with defendants that plaintiff's claims present a substantial and disputed question of federal law. Plaintiff seeks recoupment of alleged overpayments it made under Medicaid as well as alleged overpayments made by Medicare Part B participants in Wisconsin. In determining whether plaintiff and Wisconsin citizens have overpaid for prescription drugs (and therefore whether defendants have violated Wisconsin law), a court will have to determine the meaning of the phrase "average wholesale price" as it appears in the Medicare statute and its implementing regulations. Then, the court will have to determine whether a discrepancy exists between the average wholesale price and the prices reported by defendants. Montana, 266 F. Supp. 2d at 255 ("an essential element of Minnesota's parens patriae claims is proof of a discrepancy between the [average wholesale

16

prices] reported by Pharmacia and the meaning of [average wholesale price] under the Medicare statute.).

That is not the end of the inquiry, however. Although plaintiff's claims present a substantial and disputed question of federal law, removal of the present case is proper only if it will not disturb the balance struck by Congress between the federal and state courts. Grable, 125 S.Ct. at 2367. At this point, differences between the present case and the quiet title action in Grable begin to appear. For one, there is no strong federal interest in the present case comparable to the federal interest in tax collection implicated in Grable. The federal question raised in Grable was of critical importance to the IRS's efforts to satisfy tax liabilities from the property of delinquent taxpayers. Although a federal agency administers the Medicare program, states play the primary role in apportioning Medicaid benefits within the broad parameters set by federal law. Montana, 266 F. Supp. 2d at 253. States and the federal government have an interest in securing an interpretation of the Medicare statute and regulations. At best, the federal and state interests are equivalent. Moreover, the fact that Congress has not preempted the states' use of consumer protection statutes to police medical billing practices indicates the absence of a dominant federal interest. Merrell Dow, 478 U.S. at 516.

Second, in Grable, the Court was willing to extend federal jurisdiction because quiet title actions under state law rarely raise issues of federal law. By contrast, the present case

17

is one of many that have been filed by states across the country concerning pharmaceutical companies' alleged fraud in price-setting. Shifting all of these cases (not to mention other state-law claims grounded in alleged violations of federal law) into federal court would work a significant disruption in the division of labor between federal and state courts. (I am aware that many average wholesale price cases have been removed to federal court. However, most of these cases were transferred before the Court emphasized the importance of preserving the balance between the state and federal systems in <u>Grable</u>.). Finally, the nature of the present case is more analogous to <u>Merrell Dow</u> than <u>Grable</u>. Plaintiff has asserted statutory and common law tort claims that, like the negligence claims in <u>Merrell Dow</u>, rest on alleged violations of federal law. Because this case does not implicate an overriding federal interest and because removal would disturb the balance of judicial responsibilities between state and federal courts, I conclude that removal of this action was improper.

2. <u>Timeliness of removal</u>

Even if I concluded that removal of this case was proper, plaintiff would be entitled to remand because defendants failed to file their notice of removal timely. Because the parties devote substantial portions of their briefs to this question, I will address their arguments briefly.

Ordinarily, a notice of removal must be filed within thirty days after defendant

18

receives a copy of the initial pleading in a case. 28 U.S.C. § 1446(b). Because plaintiff filed

this case in June 2004, defendants's latest attempt at removal would be untimely. However,

§ 1446(b) includes an exception to the thirty-day limit:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Defendant seizes on this provision, arguing that this case was not removable on the basis of

federal question jurisdiction when it was filed but that the Grable decision constitutes an

"other paper" which indicates that the case has become removable. Because defendants filed

their notice of removal within thirty days of the issuance of the Grable decision, removal was

timely.

The courts are split on the question whether a decision in an unrelated case qualifies

as an "order or other paper" under § 1446(b). Green v. R.J. Reynolds Tobacco Co., 274 F.3d

263, 266-67 (5th Cir. 2001) (reviewing cases). As plaintiff notes, the majority of courts to

address the question have concluded that a decision in a case unrelated to the action for

which removal is sought does not qualify as an "other paper" indicating that the action has

become removable for the purpose of § 1446(b). E.g., Morsani v. Major League Baseball, 79

F. Supp. 2d 1331, 1333-34 (M.D. Fla. 1999). These courts have limited the phrase "other

19

paper" to include only documents filed in the case for which removal is sought. Defendants argue that this limiting construction is improper because it does not appear in the plain language of the statute. Although correct as a technical matter, defendants' argument ignores the well established principle that statutory language draws its meaning from the context in which it is used. Barmes v. United States, 199 F.3d 386, 389 (7th Cir. 1999). Section § 1446(b) refers to "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper." Inclusion of the concept of receipt through service and the words "pleading" and "motion" suggest that it is reasonable to limit the phrase "other paper" to documents generated in the case for which removal is sought. Kocaj v. Chrysler Corp., 794 F. Supp. 234, 236-37 (E.D. Mich. 1992).

Defendants cite two appellate decisions, Doe v. American Red Cross, 14 F.3d 196 (3d Cir. 1993) and Green v. R.J. Reynolds, 274 F.3d 263 (5th Cir. 2001), but neither is applicable to the present case. Both cases stand for the narrow proposition that a decision in an unrelated case that involves the same defendant, concerns a similar factual situation and expressly authorizes removal qualifies as an "order" under § 1446(b). Green, 274 F.3d at 267-68. They are inapplicable because defendants do not contend that Grable constitutes an "order" but rather an "other paper." Moreover, Green and Doe are distinguishable on their facts. Defendants in the present case were not parties in Grable. Grable did not involve a fact situation similar to the present case. Finally, although Grable did address the

20

question of removal, it did not authorize removal of state law actions against pharmaceutical companies.

Because the <u>Grable</u> decision does not constitute an "other paper from which it may first be ascertained that the case is one which is or has become removable," defendants' removal of this case was untimely.

### E.  Sanctions, Fees and Costs

Plaintiff requests the court to consider sanctioning defendants for attempting to remove this case a second time. Although I have concluded that removal was improper, I do not believe that the arguments put forth by defendants were so frivolous and unjustified as to warrant sanctions. Therefore, I will deny this request.

In addition to its request for sanctions, plaintiff requests an award of costs and fees. In this circuit, a party that succeeds in showing that removal is improper is presumptively entitled to an award of fees.  <u>Garbie v. DaimlerChrysler Corp.</u>, 211 F.3d 407, 410 (7th Cir. 2000) ("§ 1447 is not a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party."); <u>see</u> <u>also</u> <u>Wisconsin v. Hotline Industries, Inc.</u>, 236 F.3d 363, 367-68 (7th Cir. 2000); <u>Citizens for a Better Environment v. Steel Co.</u>, 230 F.3d 923, 927 (7th Cir. 2000).  Plaintiff need not show that removal was undertaken in bad faith. <u>Sirotsky v. New York Stock Exchange</u>, 347 F.3d 985, 987 (7th Cir. 2003).  Rather, an award

21

is proper when "[r]emoval [is] unjustified under settled law." <u>Garbie</u>, 211 F.3d at 410. Although defendants' arguments were not frivolous, removal of this case was improper on at least two grounds.  In light of the presumption that plaintiff is to be made whole, I conclude that plaintiff is entitled to reimbursement for its reasonable fees and costs.


ORDER

IT IS ORDERED that

1.  Plaintiff's motion to remand is GRANTED and this case is REMANDED to the Circuit Court for Dane County, Wisconsin;

2.  Plaintiff's request sanctions is DENIED;

3.  Plaintiff's request for reimbursement of costs and attorney fees under 28 U.S.C. § 1447(c) is GRANTED;

4.  Plaintiff may have until October 10, 2005, in which to submit an itemization of the actual expenses, including costs and attorney fees, it incurred in responding to defendants' removal;

5.  Defendants may have until October 17, 2004, to file an objection to any itemized costs and fees;

6.  The clerk of court is directed to return the record in case number 05-C-408-C to

22

the Circuit Court for Dane County, Wisconsin.

Entered this _____29th_____ day of September, 2005.

BY THE COURT:


_Barbara B. Crabb_
BARBARA B. CRABB
District Judge

23

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

State of Minnesota, by its Attorney
General, Mike Hatch,                                    Civil No. 05-1394 (PAM/JSM)

                        Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

Pharmacia Corporation,

                        Defendant.

---

This matter is before the Court on Plaintiff's Motion to Remand and Defendant's Motion to Stay Consideration of the Motion to Remand. For the reasons that follow, Defendant's Motion is denied and Plaintiff's Motion is granted.

**BACKGROUND**

The underlying action has been ongoing since 2002. Plaintiff, the State of Minnesota, filed this action on behalf of Medicare beneficiaries claiming that Defendant Pharmacia Corporation inflated the average wholesale price ("AWP") on prescription drugs, causing Medicare beneficiaries to make inflated Medicare Part B co-payments. The Complaint only alleges state law claims, including violations of the Minnesota Consumer Fraud Act, the False Statement in Advertising Act, the Fraud on Senior Citizens and Handicapped Persons Act, and the Medicaid Fraud Act. It also contains common law claims for fraud and unjust enrichment.

The Complaint was initially filed in Minnesota state court on June 18, 2002, and subsequently removed to federal court on July 18, 2002. In particular, Defendant contended that because Plaintiff's claims require a determination of whether the AWPs used by

EXHIBIT
4
Blumberg No. 5119

Defendant complied with the meaning of AWP under the Medicare statute, federal jurisdiction existed. Before the Court disposed of the motion to remand, the case was transferred by the Multi-District Litigation ("MDL") Panel to In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL 1456 ("MDL Litigation"). Following transfer to the MDL Litigation, the MDL court remanded the action to Minnesota state court. Montana v. Abbott Labs., 266 F. Supp. 2d 250, 255 (D. Mass. 2003).

On June 13, 2005, the United States Supreme Court determined that the relevant question for federal jurisdiction is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg., 125 S. Ct. 2363, 2368 (2005). This decision clarified the rule in Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986), by eliminating any requirement that a private federal cause of action exist in order for federal jurisdiction to lie.

On July 13, 2005, Defendant removed this action to this Court. The basis for removal is premised on the Supreme Court's decision in Grable. On July 14, 2005, Defendant filed a Notice of Related Action in the MDL Litigation, designating the case as a tag-along to those like cases already transferred. On August 9, 2005, the MDL Panel issued an order conditionally transferring this action to the MDL Litigation. No final transfer order has been issued.

Defendant first requests that the Court stay a ruling on the Motion to Remand pending

2

Dbt f !1;16.dw 124: 5.QBN. KTN !!!!!Epdvn f oiJ45!!!!!Gjrhe!21฿5฿31 16!!!!!Qbhf !4!pg9

a final order of transfer to the MDL Litigation, so that the MDL court may decide the remand issue in conjunction with other similarly situated state-filed cases. Plaintiff argues that a stay is not warranted and claims that remand is appropriate because Defendant's removal is procedurally defective.

**DISCUSSION**

In this case, the Court is faced with two Motions: a Motion to Remand and a Motion to Stay the Motion to Remand. Defendant argues that a stay is appropriate to allow for a final order of transfer to the MDL Litigation so that the Motion to Remand will be addressed in conjunction with other cases presenting the same legal and factual issues. However, Plaintiff insists that, before the Court may address Defendant's Motion to Stay, the Court must address the threshold issue of subject matter jurisdiction. Indeed, the absence of subject matter jurisdiction renders the Court powerless. Thus, the Court agrees with Plaintiff. <u>See</u> <u>Pennsylvania v. Tap Pharm. Prods. Inc.</u>, No. 05-3604, 2005 WL 2242913 (E.D. Pa. Sept. 9, 2005) (in factually and legally identical scenario, the district court found that "granting a stay solely based on the existence of a factually-related MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law, congressional intent, and [Judicial Panel on Multi-District Litigation] Rule 1.5, all of which contemplate a district court will act to resolve threshold jurisdictional concerns"). In reviewing a motion to remand, the Court must strictly construe the removal statute against the party seeking removal and resolve all doubts as to the propriety of federal jurisdiction in favor of state court jurisdiction. <u>See</u> <u>In re Potash Antitrust Litig.</u>, 866 F. Supp. 406, 410 (D. Minn.

3

Dbt f !1;16.dw 124: 5. QBN. KTN !!!!!Epdvn f ou45!!!!!Gjrhe!210503116!!!!!Qbhf !5!pg9

1994) (Kyle, J.).

A.    **Timeliness**

First and foremost, Plaintiff argues that Defendant's Second Notice of Removal is untimely. In relevant part, 28 U.S.C. § 1446 (b) states:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

Indeed, this Second Notice of Removal comes three years after the initial filing of the underlying Complaint. Defendant contends that the Supreme Court's decision in Grable constitutes "other paper," which allows Defendant thirty days from the issuance of the Grable decision to file this Second notice of Removal. However, the law in Minnesota is clear that "other paper" refers "solely to documents generated within the state court litigation itself." Johansen v. Employee Ben. Claims, Inc., 668 F. Supp. 1294, 1296 (D. Minn. 1989) (McLaughlin, J.). Thus, under the precedent in this district, and indeed the majority view, the issuance of the Supreme Court decision is irrelevant when determining the timeliness of Defendant's Second Notice of Removal. Accordingly, Defendant's removal is improper and remand is appropriate. Id.; see Holiday v. Travelers Ins. Co., 666 F. Supp. 1286, 1289 (W.D. Ark. 1987) ("the court does not 'buy' the proposition that the decision of a court - even the Supreme Court - constitutes 'other papers'" within the meaning of the removal statute); see also Tap Pharm. Prods. Inc., 2005 WL 2242913, at * 8 (concluding that "other paper" does not include opinions from unrelated litigation, and noting that majority of jurisdictions follow this

4

Dbt f !1;16.dw124: 5.QBN.KTN!!!!!Epdvn f ouI45!!!!!Gjrñe!210508116!!!!!Qbhf !6!pg9

conclusion); Wisconsin v. Abbott Labs., – F. Supp. 2d – , 2005 WL 2407669, at **8-9 (W.D. Wis. Sept. 29, 2005) ("other paper" does not include the recent Grable decision).

Defendant argues that Johansen is not good law and that the Court should disregard its mandate. Although neither the Eighth Circuit nor any other Minnesota District Court has addressed the issue, Johansen has not been overruled. Moreover, it is the majority view. See Tap Pharm. Prods. Inc., 2005 WL 2242913, at *8 n.10. Finally, Defendant's reliance on Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263, 266-68 (5th Cir. 2001) and Doe v. American Red Cross, 14 F.3d 196, 203 (3d Cir. 1993), is misplaced, as both of these cases narrowly hold that a decision in an unrelated case, but involving the same defendant and concerning a similar factual situation and an express grant of removal qualifies as an "order" under § 1446(b), to allow removal. See Green, 274 F.3d at 266-68; Am. Red Cross, 14 F.3d at 203. Indeed, none of these facts are evident here, and accordingly, Defendant's Second Notice of Removal is untimely. Because removal in this instance is procedurally defective, remand is appropriate. See 28 U.S.C. § 1446; see also Mousel v. Knutson Mortg. Corp., 823 F. Supp. 658, 662 (D. Minn. 1993) (MacLaughlin, J.).

**B.      Federal Question**

Even if Defendant's Second Notice of Removal was timely, the Court finds that it nevertheless lacks jurisdiction over Plaintiff's claims. An action may be removed from state court to federal court only if it presents an issue of federal question or if diversity jurisdiction exists. 28 U.S.C. § 1441. Defendant premises removal on federal question jurisdiction.

Dbtf !1;16.dw.124: 5.QBN.KTN !!!!!Epdvn f oU45!!!!!Gjrhe!21㎝5㎝116!!!!!Qbhf !7!pg9

In <u>Montana v. Abbott Laboratories</u>, the MDL court determined that although Plaintiff's claims presented a federal question, the First Circuit's interpretation of <u>Merrell Dow</u> required remand. Because the Medicare statute does not provide a private cause of action for AWP misreporting, the court concluded that "the federal issue is not substantial enough to create federal jurisdiction." 266 F. Supp. 2d at 257. According to Defendant, because <u>Grable</u> expressly clarified that federal question jurisdiction does not require the existence of a private cause of action, the MDL court's narrow basis for remand no longer exists.

However, Defendant fails to acknowledge that the MDL court further held that <u>Merrell Dow</u> compelled remand. The MDL court specifically rejected Defendant's contention that the prospect of multiple judicial determinations on the meaning of AWP warranted removal. <u>Id.</u> at 257-58 (the lack of a federal cause of action and no preemption of state remedies demonstrate Congress's intent to limit federal question jurisdiction). Indeed, as the <u>Grable</u> court noted, "the combination of no federal cause of action and no preemption of state remedies . . . [is] an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." 125 S. Ct. at 2370. Thus, the MDL court's holding is not as narrow as Defendant contends and further suggests that Plaintiff's claims do not present a substantial federal question, even under <u>Grable</u>.

Even assuming that Plaintiff's claim raises a disputed and substantial federal issue, removal is nevertheless inappropriate under <u>Grable</u>. <u>Grable</u> requires that each case must be examined to determine whether the exercise of federal jurisdiction preserves any congressionally approved balance of federal and state judicial responsibilities. <u>Id.</u> at 2368.

6

Dbt f !1;16.dw124: 5.QBN.KTN!!!!!Epdvn f ou45!!!!!Gjrfhe!21®508116!!!!!Qbhf !8!pg9

The Court is persuaded by the thorough and reasoned analysis of the Western District of Wisconsin, which addressed the same legal and factual dispute:

> [T]here is no strong federal interest in the present case comparable to the federal interest in tax collection implicated in <u>Grable</u>. The federal question raised in <u>Grable</u> was of critical importance to the IRS's efforts to satisfy tax liabilities from the property of delinquent taxpayers. Although a federal agency administers the Medicare program, states play the primary role in apportioning Medicaid benefits within the broad parameters set by federal law. States and the federal government have an interest in securing an interpretation of the Medicare statute and regulations. At best, the federal and state interests are equivalent. Moreover, the fact that Congress has not preempted the states' use of consumer protection statutes to police medical billing practices indicates the absence of a dominant federal interest.

> Second, in <u>Grable,</u> the Court was willing to extend federal jurisdiction because quiet title actions under state law rarely raise issues of federal law. By contrast, the present case is one of many that have been filed by states across the country concerning pharmaceutical companies' alleged fraud in price-setting. Shifting all of the cases [] into federal court would work a significant disruption in the division of labor between federal and state courts. [] Finally, the nature of the present case is more analagous to <u>Merrell Dow</u> than <u>Grable</u>. Plaintiff has asserted statutory and common law tort claims that, like the negligence claims in <u>Merrell Dow</u>, rest on alleged violations of federal law. Because this case does not implicate an overriding federal interest and because removal would disturb the balance of judicial responsibilities between state and federal courts, [] removal of this action was improper.

<u>Abbott Labs.,</u> – F. Supp. 2d – , 2005 WL 2407669, at *8.

**CONCLUSION**

The Court finds that Defendant's Second Notice of Removal was untimely, and accordingly, remand is appropriate. Based on all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion to Remand (Clerk Doc. No. 5) is **GRANTED;**

7

Dbt f !1;16.dw.124: 5. QBN.KTN!!!!!Epdvn f ou45!!!!!Gjrfne!21Õ35Õ8116!!!!!Qbhf !9!pg9

2. Defendant's Motion to Stay Consideration of the Motion to Remand (Clerk Doc. No. 11) is **DENIED**;

3. This case is **REMANDED** to Hennepin County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 22, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2005 DEC -5 PM 2: 16

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| *EX REL.* | § | |
| VEN-A-CARE OF THE | § | |
| FLORIDA KEYS, INC., | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. A-05-CA-897-LY |
| | § | |
| ABBOTT LABORATORIES INC., | § | |
| ABBOTT LABORATORIES, | § | |
| HOSPIRA, INC., | § | |
| B. BRAUN MEDICAL INC., AND | § | |
| BAXTER HEALTHCARE | § | |
| CORPORATION, | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion to Remand Action to Texas State Court filed October 24, 2005 (Doc. #6); Plaintiffs' Notice of Filing of Recent Additional Authorities filed November 1, 2005 (Doc. #18); Defendants' Opposition to Plaintiffs' Motion to Remand filed November 7, 2005 (Doc. #20); Plaintiffs' Reply Brief in Support of Motion to Remand filed November 15, 2005 (Doc. #27); and Defendants' Sur-Reply to Plaintiffs' Reply Brief in Support of Motion to Remand filed November 17, 2005 (Doc. #28). Also before the Court are the Amended Motion of Defendants Abbott Laboratories Inc., Abbott Laboratories and Hospira, Inc. to Stay Proceedings Pending Transfer to MDL 1456 filed October 26, 2005 (Doc. #9); Plaintiffs' Opposition to Defendants' Motion to Stay filed October 27, 2005 (Doc. #12); and Reply of Defendants Abbott Laboratories Inc., Abbott Laboratories and Hospira, Inc. in Support of their Motion to Stay Proceedings Pending Transfer to MDL 1456 filed October 31, 2005 (Doc. #13). After reviewing the motions, responses,





EXHIBIT
5

replies, surreply, relevant case law, and the record in this cause, the Court makes the following findings.

## I. BACKGROUND

Plaintiff Ven-A-Care of the Florida Keys, Inc. filed this *qui tam* action in the 201st Judicial District Court of Travis County, Texas on March 14, 2000, seeking damages, penalties, and attorneys' fees for alleged violations of the Texas Medicaid Fraud Prevention Act. The State of Texas intervened shortly thereafter. Defendants removed the cause to this Court on October 21, 2005, alleging federal-question jurisdiction. Specifically, Defendants assert that Plaintiffs' Fifth Amended Petition, filed October 3, 2005, added a new claim that requires resolution of an embedded federal question, supporting federal jurisdiction over this cause.

## II. MOTION TO STAY

In April 2002, the Judicial Panel on Multidistrict Litigation ("JPMDL") transferred sixteen then-pending Medicaid and Medicare pricing cases in federal court for coordinated or consolidated pretrial proceedings to the District of Massachusetts ("MDL Court"). *See* 28 U.S.C. § 1407 (1993) (providing that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings"). On March 29, 2002, the JPMDL issued a Conditional Transfer Order in this case, along with eight other cases pending before this Court. Plaintiffs filed a Notice of Intention to File Opposition to Conditional Transfer Order on November 10, 2005 (Doc. #25), to which Defendants filed a Response on November 14, 2005 (Doc. #26).

Despite the issuance of a conditional transfer order, this Court retains jurisdiction to consider the instant Motion. Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation provides that the pendency of a conditional transfer order "does not affect or suspend

2

orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." J.M.P.L. Rule 1.5.

Defendants argue that this Court should defer ruling on the remand motion and stay the cause to allow the MDL Court to consider the motion because "denying the stay would result in hardship and inequity to the Abbott Defendants because they will be 'forced to litigate the same jurisdictional issues, as well as other substantive and procedural issues, multiple times in multiple courts.'" (internal citations omitted), and because "the interests of judicial efficiency and consistency of decision will be strongly served if this Court stays all proceedings in this action." This Court disagrees and is of the opinion that judicial efficiency and economy are better served by this Court considering the motion to remand before the case is transferred to the MDL Court. *See Barragan v. Warner-Lambert Co.*, 216 F. Supp.2d 627, 630 (W.D. Tex. 2002). Further, as the Court will set forth below, the decision to grant remand in this case is unquestionably supported by case law. [1] Thus, there is no risk of this Court contributing to alleged inconsistent decisions issued by federal district courts.

### III. MOTION TO REMAND

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A case may be removed to federal court if the action is one over

---

[1] *See Minnesota v. Pharmacia Corp.*, No. 05-1394, 2005 WL 2739297 (D. Minn. Oct. 24, 2005) (finding no overriding federal interest in state-law claims of Medicaid price-setting resting on alleged violations of federal law); *Wisconsin v. Abbott Labs.*, 390 F. Supp.2d 815 (W.D. Wis. 2005) (holding state-law claims on Wisconsin Medicaid program did not implicate overriding federal interest and removal would disturb balance of judicial responsibilities between state and federal courts); *Pennsylvania v. TAP Pharm. Prods., Inc.*, No. 2:05-CV-03604 (E.D. Pa. Sept. 9, 2005) (holding state's claim to recover Medicare copayments does not present a substantial issue of federal law); *Montana v. Abbott Laboratories*, 266 F. Supp.2d 250 (D. Mass. 2003) (holding no federal jurisdiction because Medicare statute does not provide private cause of action for misreporting of Medicare prices).

3

which the federal court possesses subject-matter jurisdiction. *See* 28 U.S.C. § 1441(a) (1994). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. CONST. art. III §§ 1-2. *See also Kokkonen*, 511 U.S. at 377. As such, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). In determining whether jurisdiction is present for removal, the federal court looks to the claims in the state-court petition as they existed at the time of removal. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). To support the propriety of removal, the defendant bears the burden of establishing facts demonstrating that the Court has subject-matter jurisdiction of the cause. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Any doubt as to the propriety of the removal is to be resolved in favor of remand. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Although Defendants may generally remove an action if the federal court would have original jurisdiction, a removing party bears the burden of proving that federal jurisdiction exists. *De Aguilar*, 47 F.3d at 1408. Removal is only appropriate if the plaintiff's "well-pleaded complaint" raises issues of federal law sufficient to support federal jurisdiction. *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993). The plaintiff is thus the "master of the claim," and may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Federal courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 (1993) State-law claims "arising under" federal law also may be heard when they "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on

4

federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2367 (2005). The exercise of federal jurisdiction over state claims requires not only a substantial federal issue, but a contested one. *Id.* However, even when such an issue exists, courts must yet consider issues "regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8 (1983). Therefore, in order for a federal court to exercise jurisdiction over a state-law claim, the claim must: (1) necessarily raise a disputed and substantial federal issue, and (2) be such that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368.

Defendants assert that Plaintiffs' Fifth Amended Petition includes a physician-reimbursement claim that is predicated on the allegation that the Abbott Defendants' actions caused the Medicare Average Wholesale Price ("Medicare AWP") to be false, which Defendants deny, thus raising a substantial and disputed issue. Further, Defendants contend that the meaning of the term "Medicare AWP" is a disputed, substantial question of federal law requiring a federal court to determine its meaning under federal statutes and regulations. Therefore, Defendants argue, "a federal court must interpret numerous federal statutes, regulations, and report to discern the meaning of Medicare AWP," and that process is already underway before the MDL Court in several other similar cases.

Defendants acknowledge that the term "Medicare AWP" is not defined by any federal statute or regulation, yet they seek to have a federal court determine its meaning. In addition, Plaintiffs assert that the definition of Medicare AWP is not a contested issue in this case because their claims arise solely from their allegation that Defendants reported prices, including Medicare AWPs, in a misleading or deceptive manner, and that must be decided under Texas law alone.

5

As the Supreme Court in *Grable* noted, "the combination of no federal cause of action and no preemption of state remedies . . . [is] an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." 125 S. Ct. at 2370. The existence of these factors in this cause suggests that Plaintiffs' claims do not present a substantial federal question, even under *Grable*. Plaintiffs' Fifth Amended Petition alleges exclusively state-law causes of action against Defendants for violations of the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE ANN. §§ 36.001–36.132 (West 2001 & Supp. 2005). It is clear that Plaintiffs do not premise their claims on the definition of the term "Medicare AWP." Therefore, no court need ascribe any meaning to the term for either party to prevail. Plaintiffs must prove that Defendants' conduct was in violation of state law. This Court finds that Plaintiffs' claims raise no "actually disputed" issue of federal law. *See Pennsylvania v. TAP Pharm. Prods., Inc.*, No. 2:05-CV-03604, slip op. at 12-13 (E.D. Pa. Sept. 9, 2005).

Having determined that no actually disputed issue of federal law exists, the Court need not address the balance of federal and state judicial responsibilities under the second step in *Grable*. This Court finds that Plaintiffs' Fifth Amended Petition does not raise claims presenting a substantial federal question. *See Minnesota v. Pharmacia Corp.*, No. 05-1394, 2005 WL 2739297, at *3 (D. Minn. Oct. 24, 2005). This action shall be remanded to the appropriate state court.

## IV. CONCLUSION

Having concluded that Plaintiffs' Fifth Amended Petition does not present a federal question, the Court

**ORDERS** that Plaintiffs' Motion to Remand Action to Texas State Court filed October 24, 2005 (Doc. #6) is **GRANTED**. Plaintiffs' request for an award of their costs and attorneys' fees incurred in seeking the remand is **DENIED**.

6

The Court **FURTHER ORDERS** that the Amended Motion of Defendants Abbott

Laboratories Inc., Abbott Laboratories and Hospira, Inc. to Stay Proceedings Pending Transfer to

MDL 1456 filed October 26, 2005 (Doc. #9) is **DENIED**.

The Court **FINALLY ORDERS** that this action is **REMANDED** to the 201st Judicial

District Court of Travis County, Texas.

SIGNED this ____5th____ day of December, 2005.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

7

Case 1:01-cv-12257-PBS Document 4091 Filed 12/27/2005 Page 69 of 65

## CERTIFICATE OF SERVICE

      Lisa Mecca Davis certifies that she caused a copy of the foregoing Motion to be served on all counsel of record, by electronic service via the Court's electronic filing system, this 27th day of December, 2005.

Lisa Mecca Davis