**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE: PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE ) MDL No. 1456
LITIGATION ) Civil Action No. 01-CV-12257-PBS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO: ) Hon. Patti B. Saris
International Union of Operating Engineers, )
Local No. 68 Welfare Fund v. AstraZeneca PLC )
et al. Civil Action No. 04-11503-PBS )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION FOR REMAND BY PLAINTIFF INTERNATIONAL UNION**
**OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-CV-12257-PBS |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO: International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca PLC et al. Civil Action No. 04-11503-PBS | ) ) ) ) ) ) | Hon. Patti B. Saris |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR REMAND BY PLAINTIFF INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this Second Supplemental Memorandum of Law in Opposition to Motion for Remand by Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund ("IUOE").

## PRELIMINARY STATEMENT

This case was removed to federal court on July 3, 2003 and was subsequently transferred to the AWP MDL for coordinated and consolidated pretrial proceedings with numerous other AWP-related class actions filed throughout the country. Since that time, Plaintiff has undertaken several efforts to have the case remanded back to state court in New Jersey. These efforts have failed, and should continue to fail, for one indisputable reason: those individual defendants who purportedly did not consent to removal had not been – at the time of removal – properly served under New Jersey law and, therefore, their consent to removal was not required. The discovery authorized by this Court in its August 19 Order and obtained by AstraZeneca confirms this conclusion.

Further, as confirmed by the discovery recently obtained by AstraZeneca, remand should be denied for an additional, independent reason: the individual defendants were joined in this action by Plaintiff without an intent, or a good faith basis, to pursue the claims alleged against them, in an attempt to defeat removal and circumvent the MDL proceeding. For example, former counsel for one of the individual doctor defendants stated that Plaintiff's counsel informed him that Plaintiff was not interested in his client as a defendant, but instead only as a fact witness. It is well established that nominal or fraudulently joined parties should be disregarded for purposes of the unanimity rule regarding consent to removal.

1

For these reasons, removal of this case was proper and remand should be denied.

## **BACKGROUND**

Two years after the removal of this case to federal court in 2003 based on federal question jurisdiction, Plaintiff renewed its motion for remand, arguing in its supplemental memorandum that AstraZeneca's removal of this action was procedurally defective because certain individual doctor defendants failed to consent to removal. *See* Supplemental Brief in Support of Motion for Remand by Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, dated April 22, 2005 ("Pl.'s Suppl. Memo"), at 5-8. AstraZeneca responded that under controlling New Jersey law, these individual defendants had not been served at the time of removal and, therefore, their consent was not required. *See* Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Remand, dated May 6, 2005 ("AstraZeneca's Suppl. Memo"), at 6-11. AstraZeneca further argued that Plaintiff's Motion for Remand should be denied on the additional independent ground that the individual defendants were fraudulently joined such that their lack of consent should be disregarded. *Id.* at 12-15.

On August 19, 2005, this Court granted AstraZeneca's request to conduct discovery with respect to the issue of fraudulent joinder. Pursuant to this Order, AstraZeneca issued the First Requests for Production of Documents to Plaintiff and Defendants Drs. Antoun, Berkman, and Hopkins (the "Requests") and Subpoenas Ad Testificandum and Duces Tecum to Messrs. Mustokoff, Sherman, and Fernandez, former

counsel for the individual doctor defendants (the "Subpoenas").[1]  Rather than producing

materials in response to AstraZeneca's Requests, Plaintiff again moved this Court for

immediate remand of this action to state court in New Jersey on the ground that the rule

of unanimity was not satisfied at the time of removal. *See* Pl.'s Mot. for Immediate

Remand at 2-5.  Plaintiff also moved this Court, in the alternative, to reconsider and

rescind its August 19 Order granting AstraZeneca leave to conduct discovery on the

fraudulent joinder issue. *See* Pl.'s Mot. for Immediate Remand at 5-8.  AstraZeneca

opposed Plaintiff's motion. *See* Memorandum of Law in Opposition to Motion by

Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, for

Immediate Remand Based Upon Declarations of Defense Counsel or, in the Alternative,

Motion to Reconsider Memorandum and Order of August 19, 2005 That Permitted

Discovery on Issue of Alleged Fraudulent Joinder, dated October 12, 2005.

Although the Court did not reconsider or rescind its August 19 Order, Plaintiff has

still refused to produce certain documents in its possession responsive to AstraZeneca's

Requests, claiming that these responsive documents are protected by the attorney-client

privilege, the work product doctrine, and a purported "settlement privilege" under Rule

408 of the Federal Rules of Evidence. *See* Responses and Objections of Plaintiff,

International Union of Operating Engineers, Local No. 68 Welfare Fund, to Defendant

AstraZeneca's First Request for Production of Documents, dated October 17, 2005.

---

[1] The Requests and Subpoenas were submitted to the Court as Exhibits A through G of the Motion by Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, for Immediate Remand Based Upon Declarations of Defense Counsel or, in the Alternative, Motion to Reconsider Memorandum and Order of August 19, 2005 That Permitted Discovery on Issue of Alleged Fraudulent Joinder, dated September 28, 2005 ("Pl.'s Mot. for Immediate Remand").

Plaintiff also has refused to provide a privilege log or other documentation describing the nature of the withheld documents and why they are privileged. *See* October 26, 2005 Letter from TerriAnne Benedetto to James J. Duffy ("October 26 Letter," Fowler Decl. Exhibit 10). Given Plaintiff's refusal to provide relevant discovery, AstraZeneca moved to compel; that motion is currently pending before the Court. *See* Memorandum of Law in Support of AstraZeneca's Motion to Compel the Production of Documents by Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund, dated November 17, 2005 ("AstraZeneca's Memo in Support of Mot. to Compel").[2]

Similarly, Dr. Hopkins and his counsel Mr. Fernandez filed a motion to quash AstraZeneca's Requests and Subpoena, also arguing that the documents and testimony sought were protected by various privileges, including the attorney-client privilege, the work product doctrine, and a purported "settlement privilege" under Rule 408 of the Federal Rules of Evidence. *See* Motion to Quash, dated September 27, 2005. AstraZeneca opposed Dr. Hopkins' and Mr. Fernandez's motion to quash, and the motion is currently pending before this Court.[3]

---

[2] In its opposition to AstraZeneca's Motion to Compel, Plaintiff protests that a privilege log of all attorney-client communications responsive to AstraZeneca's document requests would be unduly burdensome. *See* Memorandum of Law in Opposition to AstraZeneca's Motion to Compel the Production of Documents by Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund, dated December 16, 2005 ("Pl.'s Opp. to Mot. to Compel") at 5 & n.8. This argument is a red herring; the key issue in this discovery dispute is not whether Plaintiff must produce or log communications with its counsel, but whether Plaintiff must produce or log the communications with its purported *adversaries,* either directly or through counsel, that it claims are somehow "privileged."

[3] Although these discovery motions are still pending, AstraZeneca submits this Memorandum of Law at this time because the period for discovery specified by the Court in its August 19 Order has concluded. In the event that AstraZeneca obtains additional discovery from Plaintiff, Dr. Hopkins or Mr. Fernandez, AstraZeneca will supplement this submission.

Although Plaintiff, Dr. Hopkins, and his counsel, Mr. Fernandez, resisted

discovery, the other doctor defendants, Drs. Berkman and Antoun, and their counsel,

Messrs. Sherman and Mustokoff respectively, produced documents and affidavits in

response to AstraZeneca's Requests and Subpoenas.  The documents and affidavits that

have been produced confirm that the consent of the doctor defendants was not required

for removal because these defendants, at the time of removal, had not been properly

served under New Jersey law:

- Terry K. Sherman, former counsel for Dr. Robert A. Berkman, provided an affidavit in which he states that he "never accepted service of the summons and complaint in the New Jersey Action on behalf of Dr. Berkman." Affidavit of Terry K. Sherman, dated September 27, 2005 ("Sherman Aff."), ¶ 3 (attached to the Declaration of Lucy Fowler ("Fowler Decl.") as Exhibit 1). Nor is there any evidence that Dr. Berkman was personally served.

- In his affidavit, Michael M. Mustokoff, former counsel for Dr. Saad Antoun, states that, although he agreed to accept service of the complaint on behalf of Dr. Antoun, his "firm's appearance was not entered as of July 3, 2003 nor did [his firm] file any pleading with the court as of this date," Affidavit of Michael M. Mustokoff, dated October 17, 2005 ("Mustokoff Aff."), ¶ 5 (Fowler Decl. Exhibit 2), as required under New Jersey law for service in this manner to have been effective on that date. Mr. Mustokoff also states that he "is not aware of plaintiff attempting personal service of Dr. Antoun in this case." *Id.*

Moreover, even the limited discovery obtained supports the conclusion that the

doctor defendants were not joined in good faith, thus providing an additional,

independent reason why the doctor defendants' lack of consent would not be an

impediment to removal in any event:

- Mr. Mustokoff states in his affidavit that some time in June 2003, *before* Plaintiff had even filed its complaint in this action, Donald E. Haviland, Jr., counsel for IUOE, contacted him and had discussions with him "regarding the possibility of a settlement which might result in a release of Dr. Antoun from the captioned matter." *Id.* ¶ 8. Prior to these settlement

discussions between counsel for Plaintiff and Dr. Antoun, Mr. Haviland sent to Mr. Mustokoff a draft Memorandum of Understanding ("MOU") that outlined the terms of settlement proposed by Plaintiff. *See id.* Mr. Mustokoff produced a copy of this draft MOU in response to AstraZeneca's Subpoena, which indicates that the MOU was faxed to Mr. Mustokoff on either June 27 or 28, 2003. *See* Draft MOU (MUST 0079-0086, Fowler Decl. Exhibit 3). The complaint in this matter was not filed until several days later, on June 30, 2003.

- Moreover, on the same day that the complaint was filed, Plaintiff filed a motion for a temporary restraining order ("TRO") against Dr. Antoun and AstraZeneca. *See* docket sheet for New Jersey state court proceedings (Fowler Decl. Exhibit 7). Although the motion against AstraZeneca was briefed and argued by the parties, there is no evidence that Dr. Antoun ever opposed or even responded to this motion, despite the fact that no settlement was apparently reached with Dr. Antoun. *See* docket sheets for state and federal court proceedings (Fowler Decl. Exhibits 6 through 9). Significantly, there is also no evidence that Plaintiff ever pursued the motion against Dr. Antoun.

- Similarly, Mr. Sherman states in his affidavit that, in a telephone conversation in early July 2003 with Plaintiff's counsel, Mr. Haviland "informed [him] that plaintiffs were not interested in Dr. Berkman as a defendant in the New Jersey Action, but instead as a fact witness." Sherman Aff. ¶ 4 (Fowler Decl. Exhibit 1). In the same telephone call, Mr. Haviland also suggested to Mr. Sherman that "it would be in Dr. Berkman's best interest for the case to remain in state court in New Jersey." *Id.*

- Moreover, a July 8, 2003 letter from Mr. Haviland to counsel for the doctor defendants, which was produced by both Dr. Berkman and Mr. Mustokoff in response to AstraZeneca's Requests and Subpoenas, indicates that Mr. Haviland was having discussions with counsel for the doctor defendants in early July 2003 concerning the removal of the case and the need for counsel to manifest their lack of consent to such removal. *See* July 8 Letter (BERK 005-007 and MUST 0074-0076, Fowler Decl. Exhibit 4); *see also* Sherman Aff. ¶ 5 (Fowler Decl. Exhibit 1). Indeed, Mr. Haviland's coordination with the doctors' counsel went so far that he proposed language that counsel should use in manifesting to the court their lack of consent to removal. *See* July 8 Letter at 1 (Fowler Decl. Exhibit 4); Sherman Aff. ¶ 5 (Fowler Decl. Exhibit 1). Tellingly, in a July 9, 2003 letter to the United States District Court in New Jersey, Mr. Sherman indicated his lack of consent to removal of the case to federal court, using virtually the same language suggested by Plaintiff's counsel. *See* July 9

Letter (BERK 004, Fowler Decl. Exhibit 5); Sherman Aff. ¶ 6 (Fowler Decl. Exhibit 1).

## ARGUMENT

### I.     The Consent Of The Doctor Defendants Was Not Required Because They Were Not Properly Served Under New Jersey Law.

In arguing for the remand of this action on several occasions, Plaintiff has repeatedly emphasized the fact that the individual doctor defendants did not consent to removal. Such consent, however, is irrelevant to the issue of whether this action was properly removed to federal court on July 3, 2003.

Plaintiff acknowledges – as it must – that consent to removal is required only from defendants who were properly served at the time the case was removed. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig. (Swanston v. TAP Pharm. Prods.)*, 307 F. Supp. 2d 190, 193 (D. Mass. 2004) ("In cases involving multiple defendants, all defendants who have been *served* must join or assent in the removal petition.") (emphasis added); *Karpowicz v. Blue Cross & Blue Shield of Mass., Inc.*, No. 96-10050-MLW, 1996 U.S. Dist. LEXIS 13541, at *9 (D. Mass. Aug. 19, 1996) ("[D]efendants are not required to join in the petition if they have not yet been served with process at the time the petition is filed."). *See also* Pl.'s Suppl. Memo at 5. The discovery obtained by AstraZeneca pursuant to the Court's August 19 Order confirms that none of the three doctor defendants had been effectively served as of the date of removal.[4]

---

[4] For a prior discussion of the requirements for effective service under New Jersey law, see AstraZeneca's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Remand, dated May 6, 2005 and previously filed with the Court, at 6-11, and AstraZeneca's Memorandum of Law in Opposition to Motion by Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, for Immediate Remand Based Upon Declarations of Defense Counsel or, in the Alternative, Motion to (...continued)

7

### A. The Doctor Defendants Were Not Personally Served, Nor Was Personal Service Even Attempted By Plaintiff.

New Jersey law generally requires personal service of a summons and complaint. *See* N.J. Ct. R. 4:4-4(a). Although there are exceptions to the personal service requirement, such as constructive service, those exceptions all require a good faith attempt at personal service as a prerequisite. *See id.* 4:4-4(b)(1)(A)-(C).

Here, there is no dispute that Plaintiff did not even attempt personal service on the doctor defendants. *See, e.g.,* Mustokoff Aff. ¶ 5 (Fowler Decl. Exhibit 2). Plaintiff only attempted to serve the doctor defendants by sending the summons and complaint to their counsel. *See* Pl.'s Suppl. Memo at 6 (noting that Plaintiff transmitted the complaint and supporting papers to counsel for AstraZeneca and counsel for Dr. Antoun by Federal Express and to counsel for all other defendants by U.S. certified mail, return receipt requested). Transmittal to counsel does not constitute personal service. *See* N.J. Ct. R. 4:4-4(a). Accordingly, as a threshold matter, Plaintiff failed to satisfy a necessary perquisite for service under New Jersey law.

### B. Defective Service Cannot Be Cured Nor Waived By Verbal Acceptance Of Service By Counsel.

Plaintiff cannot cure improper service on the doctor defendants with bare statements by counsel for these defendants that they agreed to accept service on behalf of their clients. Although it is possible under New Jersey law for defendants to waive the

---

(continued...)

Reconsider Memorandum and Order of August 19, 2005 That Permitted Discovery on Issue of Alleged Fraudulent Joinder, dated October 12, 2005 and previously filed with the Court, at 4-7.

right to proper service, certain conditions must be met in order for this to occur. There is no evidence that any of these conditions were met in this case.

Plaintiff has suggested that service was effected on the individual doctor defendants pursuant to Rule 4:4-4(c). Rule 4:4-4(c) of the New Jersey Court Rules states:

> Optional Mailed Service. Where personal service is required to be made pursuant to paragraph (a) of this rule, service, in lieu of personal service, may be made by registered, certified or ordinary mail, provided however, that such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto . . . .

As indicated by the plain language of the Rule, service is effected in this manner only after the defendant answers the complaint or otherwise appears in response thereto. *See Citibank, N.A. v. Russo*, 759 A.2d 865, 868 (N.J. Super. Ct. App. Div. 2000) (holding that service pursuant to Rule 4:4-4(c) is valid if "the defendant answers or otherwise appears in the action"); *see also Wohlegmuth v. 560 Ocean Club*, 695 A.2d 345, 347 (N.J. Super. Ct. App. Div. 1997) ("Since service on defendant by regular and certified mail under R. 4:4-4(c) did not result in defendant's answer or otherwise appearing in the suit, such mail service was ineffective.").

There is no evidence that any of the doctor defendants answered the complaint or otherwise appeared in this action on or prior to July 3, 2003, the date of removal. Mr. Mustokoff states in his affidavit that "[o]ur firm's appearance was not entered as of July 3, 2003 nor did we file any pleading with the court as of this date." Mustokoff Aff. ¶ 5 (Fowler Decl. Exhibit 2). Similarly, Mr. Sherman did not file any pleadings or otherwise appear on behalf of Dr. Berkman until July 9, 2003, the date he indicated his lack of

9

consent to removal. *See* July 9 Letter (BERK 004, Fowler Decl. Exhibit 5); docket sheet

for court proceedings in U.S. District Court, District of New Jersey (Fowler Decl. Exhibit

6); docket sheet for New Jersey state court proceedings (Fowler Decl. Exhibit 7).

Likewise, the July 18, 2003 Affidavit submitted by Mr. Fernandez to the District Court in

New Jersey is the first instance of Mr. Fernandez submitting any documents to the court.

*See* Affidavit of Jack Fernandez, dated July 18, 2003 ("Fernandez Aff.", Fowler Decl.

Exhibit 11); docket sheet for court proceedings in U.S. District Court, District of New

Jersey (Fowler Decl. Exhibit 6); docket sheet for New Jersey state court proceedings

(Fowler Decl. Exhibit 7). Accordingly, service was not effected as of July 3, 2003

pursuant to Rule 4:4-4(c).

> Alternatively, Rule 4:4-6 of the New Jersey Court Rules provides that:
>
> A general appearance or an acceptance of the service of a summons,
> signed by the defendant's attorney or signed and acknowledged by the
> defendant . . . shall have the same effect as if the defendant had been
> properly served.

Under New Jersey law, an acceptance of service may be accomplished through

the filing of a form with the appropriate court identifying the case name and

number, and acknowledging the receipt of service. *See* 3 NJPRAC § 15.33.

Again, there is no evidence that any of the doctor defendants made a general

appearance or filed the appropriate form evidencing acceptance of service in this action

on or prior to July 3, 2003. Mr. Sherman states in his affidavit that he "never accepted

service of the summons and complaint in the New Jersey Action on behalf of Dr.

Berkman." Sherman Aff. ¶ 3 (Fowler Decl. Exhibit 1). As described above, Mr.

Mustokoff states that his firm did not make an appearance in this case as of July 3, 2003,

10

nor has he been able to locate any document memorializing his acceptance of service as of July 3, 2003. *See* Mustokoff Aff. ¶¶ 4-5 (Fowler Decl. Exhibit 2). In addition, there is no evidence that Mr. Fernandez made an appearance in this action or filed any form evidencing his acceptance of service as of July 3, 2003. *See* docket sheet for court proceedings in U.S. District Court, District of New Jersey (Fowler Decl. Exhibit 6); docket sheet for New Jersey state court proceedings (Fowler Decl. Exhibit 7). Accordingly, service was not effected as of July 3, 2003 pursuant to Rule 4:4-6.

### C.    Even If Plaintiff Cured Defective Service On The Doctor Defendants, It Occurred After July 3, 2003.

As described above, under the New Jersey Rules proper acceptance of service has the same legal effect as if the defendant had been properly served. *See* N.J. Ct. R. 4:4-6. However, such acceptance of service is equivalent to the proper service of the summons only as of the time the acceptance or appearance was made. *See* 6 C.J.S. *Appearances* § 35 (2005) ("An appearance is equivalent to personal service of the summons only as of the time when the appearance was made") (citing cases). In other words, the acceptance of service is not retroactive and does not date back to the time of the initial defective service. *See id.* ("[An appearance] has no retroactive force, and it does not relate back so as to put defendant in default for failure to answer, or to enable the adverse party to claim that process was previously served") (citing cases); 4 Am. Jur. 2d *Appearance* § 2 (2005) ("[A] party's general appearance will cure any defects in service occurring prior to that time. However, a general appearance does not retroactively validate court orders made before the date of the appearance.") (citing cases); *Gates v. Gates*, 144 A.2d 782, 785 (Vt. 1958) ("Doubtless any inadequacy in the service of the petition could be cured by a

11

general appearance, or acts amounting thereto, but a general appearance [has] no effect as to the antecedent service of the decree").

Thus, even if the joinders and affidavit filed by the doctor defendants with the New Jersey District Court are construed to be sufficient as acceptances of service pursuant to Rule 4:4-6, they would only be effective as of the date of the filings and would not date back to July 3, 2003.[5] *See* 6 C.J.S. *Appearances* § 35; 4 Am. Jur. 2d *Appearance* § 2; *Gates*, 144 A.2d at 785.  Because these joinders and affidavit were filed with the court on July 18 and August 4, 2003, it is still the case that the doctor defendants were not properly served under New Jersey law as of July 3, 2003.

In sum, the discovery obtained by AstraZeneca pursuant to the Court's August 19 Order demonstrates that none of the individual doctor defendants were properly served as of July 3, 2003 and, therefore, their consent to removal was not required.

## II.     The Consent Of The Doctor Defendants Was Not Required Because They Were Fraudulently Joined In The Action By Plaintiff.

In addition, the doctor defendants' consent to removal was not required for the independent reason that they were fraudulently joined by Plaintiff in this action in an attempt to defeat removal of the action to federal court.

It is well established that nominal or fraudulently joined parties may be disregarded for purposes of the unanimity rule regarding consent to removal.  *See* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*

---

[5] *See* Joinder of Defendant, Saad Antoun, M.D. in Plaintiff's Motion for Remand, or, in the Alternative, Motion to Remand Pursuant to 28 U.S.C. § 1448, dated July 18, 2003 (Fowler Decl. Exhibit 12); Fernandez Aff., dated July 18, 2003 (Fowler Decl. Exhibit 11); Joinder of Defendant Stanley C. Hopkins, M.D. in Plaintiff's Motion for Remand, or, in the Alternative, Motion to Remand Pursuant to 28 U.S.C. § 1448, dated August 4, 2003 (Fowler Decl. Exhibit 13).

*Procedure* § 3731, at 269-70 (3d ed. 1998); *Carey v. Bd. of Governors of the Kernwood Country Club*, 337 F. Supp. 2d 339, 341 (D. Mass. 2004); *Hill v. City of Boston*, 706 F. Supp. 966, 968 (D. Mass. 1989); *Montanez v. Solstar Corp.*, 46 F. Supp. 2d 101, 103 (D.P.R. 1999).

The joinder of a defendant is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, *or* no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 419 (E.D. Pa. 2002) (quotations omitted). As this Court has recognized, when assessing the fraudulent joinder issue, "the primary concern is whether plaintiff's claim was brought in good faith." *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 5 (D. Mass. 2001). In assessing a claim of fraudulent joinder, "a court is not held captive by the allegations in the complaint," but "may also examine affidavits of the parties in determining the propriety of joinder." *Id.* at 5-6.

A review of the discovery obtained by AstraZeneca, the circumstances surrounding the joinder of the doctor defendants in this action, and their subsequent refusal to consent to removal demonstrates that Plaintiff had no real intention in good faith to prosecute this action against the doctor defendants. In addition, a review of the complaint in this action indicates a lack of reasonable basis in fact for the claims asserted by Plaintiff against the doctor defendants.

### A.    Plaintiff Has Demonstrated A Lack Of Good Faith Intention To Prosecute This Action Against The Doctor Defendants.

13

The documents and affidavits produced by the individual doctor defendants and the circumstances surrounding their joinder in this action show that Plaintiff has been acting cooperatively and coordinating with these defendants and lacks a good faith intention to proceed against them to a joint judgment.

First, even before Plaintiff had filed its complaint with the Court, Plaintiff's counsel contacted counsel for Dr. Antoun and had discussions with him regarding the possibility of a settlement that would result in a release of Dr. Antoun from the action. *See* Mustokoff Aff. ¶ 8 (Fowler Decl. Exhibit 2). Prior to these settlement discussions between counsel for Plaintiff and Dr. Antoun, Mr. Haviland sent to Mr. Mustokoff a draft MOU that outlined the terms of settlement proposed by Plaintiff, including that, in exchange for his release from liability, Dr. Antoun would provide full discovery and would "use his best efforts to assist in the further investigation and prosecution" of Plaintiff's claims against the remaining defendants. *See id.*; Draft MOU ¶¶ 2.2, 2.3 (MUST 0082, Fowler Decl. Exhibit 3).

Although apparently no settlement was reached with Dr. Antoun, it does not appear that Plaintiff has prosecuted this action against Dr. Antoun. On the same day the complaint in this action was filed, Plaintiff filed a motion for a TRO against AstraZeneca and Dr. Antoun. *See* docket sheet for New Jersey state court proceedings (Fowler Decl. Exhibit 7). This motion was vigorously contested between Plaintiff and AstraZeneca. Yet, there is no evidence that Dr. Antoun ever opposed or even responded to this motion; nor is there any evidence that Plaintiff ever pursued this motion against Dr. Antoun. *See* docket sheet for New Jersey state court proceedings (Fowler Decl. Exhibit 7); docket sheets for federal court proceedings (Fowler Decl. Exhibits 6, 8 and 9).

14

Third, Mr. Sherman, former counsel for Dr. Berkman, states in his affidavit that, in a telephone conversation in early July 2003 with Plaintiff's counsel, Mr. Haviland "informed [him] that plaintiffs were not interested in Dr. Berkman as a defendant in the New Jersey Action, but instead as a fact witness." Sherman Aff. ¶ 4 (Fowler Decl. Exhibit 1). Mr. Haviland also suggested to Mr. Sherman that "it would be in Dr. Berkman's best interest for the case to remain in state court in New Jersey." *Id.*

Fourth, the July 8, 2003 letter from Mr. Haviland to counsel for the doctor defendants indicates that Mr. Haviland was having discussions with counsel for the doctor defendants in early July 2003 concerning the removal of the case and the need for counsel to manifest their lack of consent to such removal. *See* BERK 005-007, MUST 0074-0076 (Fowler Decl. Exhibit 4); *see also* Sherman Aff. ¶ 5 (Fowler Decl. Exhibit 1). Mr. Haviland's coordination with counsel for the doctor defendants went so far that he proposed language that counsel should use in manifesting to the court their lack of consent to removal. *See* July 8 Letter at 1 (Fowler Decl. Exhibit 4); Sherman Aff. ¶ 5 (Fowler Decl. Exhibit 1). Not surprisingly, in the July 9, 2003 letter to the New Jersey District Court, Mr. Sherman indicated his lack of consent to removal of the case to federal court using virtually the same language suggested by Mr. Haviland. *See* BERK 004 (Fowler Decl. Exhibit 5); Sherman Aff. ¶ 6 (Fowler Decl. Exhibit 1).

Finally, Plaintiff's conduct in this action conforms to a pattern that has arisen in at least two other AWP-related cases filed by Plaintiff's counsel, including the *Swanston* Action and *Stetser v. TAP Pharmaceuticals, Inc.*, No. 1-CV-5268 (N.C. Gen. Ct. of Justice Super. Ct. Div., filed Dec. 27, 2001). In both cases, individuals were initially named as defendants, refused to consent to removal, and were later discovered to have

15

settled with Plaintiff's counsel for no apparent consideration other than "cooperation" in the prosecution of the suit. *See Stetser* Settlement Agreement, filed on August 27, 2002 (Fowler Decl. Exhibit 14).

Courts confronted with similar circumstances and facts have determined that the non-consenting defendants were fraudulently joined and, thus, their consent to removal was not required.  For example, the court in *In re Diet Drugs*, 220 F. Supp. 2d at 421-22, relied on its "common sense" and "significant circumstantial evidence" in disregarding the lack of consent of the defendants who had entered into agreements with plaintiffs' counsel to withhold consent to removal, observing that:

> [w]hat has been transpiring can only be characterized as a sham, at the unfair expense not only of AHP but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against AHP, the real target, in a federal forum.

*Id.* at 425; *see also Watson v. Wyeth Co.*, No. Civ. A. 02-2548, 2003 WL 203096, at *4 (E.D. La. Jan. 28, 2003) (denying motion to remand based on evidence of collusive agreements between certain defendants and plaintiffs on ground that doctor defendant and phentermine defendants were fraudulently joined and, therefore, need not have consented to removal).

Similar reasoning led the court in *Joe v. Minnesota Life Insurance Co.* to permit discovery on the issue of fraudulent joinder and, following the close of such discovery, to conclude that the joinder of certain defendants "constitute[d] a fraudulent attempt to defeat the Minnesota defendants' statutory right of removal." 257 F. Supp. 2d 845, 850 (S.D. Miss. 2003).  The court in that case found circumstantial evidence of a collusive sham, and noted that "point[ing] to the conclusion that defendant Gulley is more aligned

16

with the plaintiff than the Minnesota defendants" and, accordingly, that "the only effect of defendant Gulley's presence in this lawsuit is that of assistance to the plaintiffs." *Id.* at 849.

In arguing against the existence of fraudulent joinder in this case, Plaintiff has cited to this Court's decision in *Mills*, where the Court held that defendants' claim of fraudulent joinder based on an allegation that plaintiffs' counsel did not truly intend to secure a judgment against the allegedly fraudulently joined defendants did not rise to the level of fraudulent joinder. 178 F. Supp. 2d at 6-7. In *Mills*, however, the only evidence presented by defendants to support their claim that plaintiffs did not intend to secure a judgment against the allegedly fraudulently joined defendants was an off-hand comment by plaintiffs' counsel that "he only joined Claflin to facilitate discovery." *Id.* at 6. Here, as described above, there is substantially more evidence demonstrating that Plaintiff lacks a good faith intention to prosecute this action against the doctor defendants. *See, e.g.,* Sherman Aff. (Fowler Decl. Exhibit 1); Mustokoff Aff. (Fowler Decl. Exhibit 2); Draft MOU (Fowler Decl. Exhibit 3); July 8 Letter (Fowler Decl. Exhibit 4). Thus, the Court's holding in *Mills* concerning plaintiffs' lack of intent to prosecute the action is inapposite to the issue here.

Instead, the Court in this case is presented with the same type of collusive sham that led the courts in *In re Diet Drugs* and *Minnesota Life Insurance Co.* to disregard the lack of consent of the cooperating defendants due to their fraudulent joinder by plaintiffs.

**B.      Plaintiff's Complaint Lacks A Reasonable Basis In Fact For The Claims Asserted Against The Doctor Defendants.**

17

On the face of the complaint in this action, it is clear that there is no reasonable basis in fact upon which recovery can be granted against the individual doctor defendants.

First, there are no allegations in the complaint establishing personal jurisdiction over two of the three doctor defendants in the State of New Jersey. The medical practices of Dr. Berkman and Dr. Hopkins are located in Ohio and Florida, respectively. Second, there are no allegations in the complaint even attempting to establish Plaintiff's standing to sue the doctor defendants, despite the fact that such information (relating to whether Plaintiff or any of its members paid for Zoladex prescribed by the doctor defendants) is solely within Plaintiff's control.

Moreover, Plaintiff's bare allegation that it paid for Zoladex is insufficient to confer standing against the doctor defendants in the absence of an allegation of direct injury caused to the Plaintiff or its members by the individual doctor defendants. *See In re Diet Drugs*, 220 F. Supp. 2d at 424 (holding that complaints lacked specific allegations against the defendant pharmacies and merely contained general statements against all defendants that only implicated the drug manufacturers; "[a]gain, there is a pattern of pharmacies being named in complaints, but never pursued to judgment, typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired."); *see also Jones v. Nastech Pharm.*, 319 F. Supp. 2d 720, 728 (S.D. Miss. 2004) (physician defendant fraudulently joined given, in part, that plaintiffs failed to allege receiving treatment from physician).

Yet there is no allegation of such direct injury. Indeed, there appears to be no good faith basis for asserting a claim against the doctor defendants on the face of the

18

complaint. The baseless nature of these claims, combined with the evidence cited above

indicating that Plaintiff has no good faith intention to pursue its purported claims against

these doctors, demonstrates that the doctor defendants were fraudulently joined and their

lack of consent should be disregarded.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Remand should be denied.

Dated:   December 28, 2005

Respectfully Submitted,

By:   /s/ Lucy Fowler

Nicholas C. Theodorou (BBO #496730)
Lucy Fowler (BBO #647929)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Tel: (617) 832-1000

D. Scott Wise
Kimberley Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000

Attorneys for AstraZeneca
Pharmaceuticals LP

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel
of record by electronic service pursuant to Paragraph 11 of Case Management Order No.
2, by sending on December 28, 2005, a copy to LexisNexis File & Serve for posting and
notification to all parties.

/s/ Lucy Fowler