UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
IN RE PHARMACEUTICAL INDUSTRY    )
AVERAGE WHOLESALE PRICE          )    MDL NO. 1456
LITIGATION                       )    CIVIL ACTION NO.
_____  )    01-CV-12257-PBS


REPORT AND RECOMMENDATION RE:
**WATSON PHARMACEUTICALS, INC.'S MOTION TO DISMISS THE STATE OF
MONTANA'S SECOND AMENDED COMPLAINT AND THE STATE OF NEVADA'S
AMENDED COMPLAINT (DOCKET ENTRY # 1187);[1] B. BRAUN MEDICAL,
INC.'S MOTION TO DISMISS THE SECOND AMENDED
MASTER CONSOLIDATED CLASS ACTION COMPLAINT
(DOCKET ENTRY # 1439)[2]**

**January 4, 2006**

**BOWLER, U.S.M.J.**

Pending before this court are two motions.  The first is

Watson Pharmaceuticals, Inc.'s Motion to Dismiss the State of

Montana's Second Amended Complaint and the State of Nevada's

_____

[1]  This motion relates to State of Nevada v. American Home
Products, et al., Civil Action No. 02-12086-PBS ("the Nevada
action"), originally filed in state court in March 2002, and
State of Montana v. Abbott Laboratories, et al., Civil Action No.
02-12084-PBS ("the Montana action"), originally filed in state
court in February 2002.  After the entry of Case Management Order
No. 2 in July 2002 (Docket Entry # 135), a coordinated order
transferring these actions to the court was noticed and entered
on the docket in October 2002.  (Docket Entry # 156).  On October
29, 2002, the court consolidated the Nevada and Montana actions
with the lead case, Civil Action No. 01-12257-PBS ("the MDL
action").  (Docket Entry # 225).

[2]  This motion relates to the MDL action.

Amended Complaint on grounds of failure of service.  (Docket Entry # 1187).  At issue is the failure to serve defendant Watson Pharmaceuticals, Inc. ("Watson" or "defendant") with the second amended complaint in the Montana action and the amended complaint in the Nevada action ("the amended complaints").  Watson concedes it "has not challenged the sufficiency of service of the class action complaint."  (Docket Entry # 1257).  Accordingly, the filing of the Third Amended Master Consolidated Class Action Complaint ("TAMCC") after Nevada and Montana filed motions to dismiss is immaterial to the present dispute except to the extent that Nevada and Montana's participation in that filing and events in the MDL action thereafter supports a waiver of service in the Nevada and Montana actions.

The second motion is B. Braun Medical, Inc.'s Motion to Dismiss the Second Amended Master Consolidated Class Action Complaint ("SAMCC").  (Docket Entry # 1439).  The impact of the filing of the TAMCC after the filing of B. Braun Medical, Inc.'s motion is explained *infra*.  After conducting a hearing, this court took the motions (Docket Entry ## 1187 & 1439) under advisement.

I.  WATSON PHARMACEUTICALS, INC.'S MOTION TO DISMISS THE STATE OF MONTANA'S SECOND AMENDED COMPLAINT AND THE STATE OF NEVADA'S

AMENDED COMPLAINT (DOCKET ENTRY # 1187)

BACKGROUND

Nevada and Montana (collectively:  "plaintiffs") agree that Watson was named as a defendant in amended complaints filed on August 1, 2003.  A Scheduling Order specific to the Montana and Nevada actions relieved "defendants" from answering the current complaint in the Montana action, required Montana and Nevada to file amended complaints by August 1, 2003, and required "defendants" to "file responsive pleadings or otherwise move against the amended complaints by September 15, 2003."  (Docket Entry # 470).  The Scheduling Order therefore required the filing of the amended complaints as well as the filing of answers or motions to dismiss those amended complaints and set deadlines for the filings.  At the time of the August 2003 Scheduling Order, Watson had been named a defendant by the class of plaintiffs in the Amended Master Consolidated Class Action Complaint filed in June 2003.

On or about August 13, 2003, plaintiffs' counsel and defendant's counsel discussed the matter of service.  Defendant's counsel stated he would accept service on behalf of Watson and also suggested that plaintiffs provide him with a waiver of service form pursuant to Fed. R. Civ. Proc. 4(d) ("Rule 4").  Following that conversation, plaintiffs did not serve upon Watson

3

or its counsel the amended complaints or a summons.  Nor did defendant's counsel ever receive a request for a waiver of service from plaintiffs' counsel.  Through a means other than service, Watson did obtain copies of the amended complaints.

Watson, in the intervening time before filing its motion to dismiss on November 24, 2004, participated, to a minor degree, in the MDL, Montana and Nevada actions.  Specifically, on September 9, 2003, Watson joined a motion for a protective order which dealt with maintaining confidentiality of portions of the Amended Master Consolidated Class Action Complaint in addition to the Montana and Nevada's amended complaints.  (Docket Entry # 489).  In the protective order, Watson did not request that any portion of the amended complaints be sealed.  On January 23, 2004, Watson filed a motion to withdraw as counsel wherein the caption states it is related to "all actions."  Finally, Watson responded to discovery requests and participated in two depositions without specifically limiting its involvement to the MDL action.

## DISCUSSION

Rule 4(m) requires that service of a summons and complaint be made upon a defendant within 120 days of filing the complaint. If service is not made within the 120 day period, the court "shall dismiss the action without prejudice as to that

4

defendant."  Rule 4(m), Fed. R. Civ. P.  A plaintiff, upon a showing of good cause for the failure, can request that the court extend the time for service.  Rule 4(m), Fed. R. Civ. P.  The purpose of Rule 4(m) and its predecessor Rule 4(j) "is to compel parties to be diligent in prosecuting causes of action."  <u>United States v. Ayer</u>, 857 F.2d 881, 884 (1st Cir. 1988).  In order to preserve the necessity for service and ensure a defendant receives formal notification of a lawsuit against the defendant, Rule 4(m) provides the sanction of dismissal unless service is perfected within 120 days.  <u>United States v. Ayer</u>, 857 F.2d at 884.  The plain language of the rule requires the plaintiffs to be diligent in perfecting service.  Courts have allowed Rule 4 motions to dismiss even where the statute of limitations would bar the plaintiff from refiling.  <u>See</u> <u>In Re City of Philadelphia Litigation</u>, 123 F.R.D. 515, 520 (E.D.Pa. 1988).

There are a number of ways in which a defendant can waive service.  An express waiver of service can be made following a request for a waiver under Rule 4(d).[3]  Under Rule 12(h), Fed. R. Civ. P. ("Rule 12"), a defendant can waive service by failing to

---

[3]  In this case, plaintiffs' counsel discussed with defendant's counsel a request for waiver of service, but one was never sent.

raise the issue in the defendant's first responsive pleading.[4]
Waiver can also be inferred where the defendant, having actual
knowledge of the lawsuit, participates in or encourages the
proceedings.  Precision Etchings & Findings v. LPG Gem, Ltd., 953
F.2d 21, 25 (1st Cir. 1992) (citing United States Use of
Combustion Systems Sales, Inc. v. Eastern Metal Products &
Fabricators, Inc., 112 F.R.D. 685, 687 (M.D.N.C. 1986)).  Actual
notice of a lawsuit does not constitute waiver and is not a
substitute for proper service of process.  See Precision Etchings
& Findings v. LPG Gem, Ltd., 953 F.2d at 24 (actual knowledge
does not constitute a waiver of service or personal
jurisdiction).

The standard used to determine if a defendant has waived
service by inference is whether the defendant has by a decisive
act unequivocally shown an intent to submit to the court's
jurisdiction.  Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d
1555, 1559 (1st Cir. 1989); accord Marcial Ucin, S.A. v. SS

---

[4]  Under Rule 12, defenses of insufficiency of process and
insufficiency of service of process are waived if omitted from
the party's first responsive pleading.  Rule 12(g)-(h), Fed. R.
Civ. P.  An answer containing all of a defendant's Rule 12(b)
defenses must be filed within 20 days of service.  Rule 12(a),
Fed. R. Civ. P.  Furthermore, if a defendant, after having been
improperly served, files a pleading or Rule 12 motion without
raising the defense of improper service, the defense is waived
even if the 120 days under Rule 4(m) has not passed.  McCurdy v.
Am. Bd. of Plastic Surgery, 157 F.3d 191, 195 (3rd Cir. 1998).

Galicia, 723 F.2d 994, 997 (1st Cir. 1983) (conduct was sufficiently dilatory and inconsistent to an assertion of lack of personal jurisdiction to constitute waiver).  Allowing a defendant to raise the defense of lack of service after having participated in a proceeding would be "subversive of orderly procedure and make for harmful delay and confusion."  Marcial Ucin, S.A. v. SS Galicia, 723 F.2d at 997.  The doctrine of waiver serves to prohibit a defendant from attempting to gain a strategic advantage by raising the defense in the middle of the litigation.  Broadcast Music, Inc. v. M.T.S. Enterprises, Inc., 811 F.2d 278, 281 (5th Cir. 1987).

Nonetheless, a defendant who has not been properly served can ignore a lawsuit without the risk of waiving the defense.  In Re City of Philadelphia Litigation, 123 F.R.D. at 520 (a defendant is under no obligation to register objections to service early enough to preserve claims).  Furthermore, not all conduct by a defendant or his counsel constitutes a waiver of the right to service.  Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d at 1559 (filing a motion in an independent proceeding did not constitute waiver of defects in service); J. Slotnik Co. v. Clemco Industries, 127 F.R.D. 435, 441 (D.Mass. 1989) (citing Martinez v. Picker International, Inc., 635 F.Supp. 658 (D.P.R.

1986), and finding no waiver where counsel filed a general appearance and a motion to enlarge).

Certain actions or courses of conduct have been found to constitute waiver.  In Marcial Ucin, the defendant's attorney filed an appearance in the matter and attended 13 depositions before moving to dismiss on grounds that the defendant was not properly served.  There the court considered the attorney's extensive involvement and that the motion to dismiss came four years after the filing of the lawsuit in determining that the defendant's actions constituted a waiver.  Marcial Ucin, S.A. v. SS Galicia, 723 F.2d at 995-997.  In Broadcast Music, a waiver was found where the defendant's counsel attended a pretrial conference, negotiated towards a settlement, filed a motion to withdraw, and accepted service for a motion for continuance as well as subpoenas.  Broadcast Music, Inc. v. M.T.S. Enterprises, Inc., 811 F.2d at 280.  Like the circumstances at issue in the case at bar, in Financial Partners Class Action Litigation, 1985 WL 2373 at * 1 (N.D.Ill. August 23, 1985), the defendant had been properly served the consolidated class action complaint but had not been properly served a complaint and summons by the individual plaintiffs in the same litigation.  In contrast to the minimal involvement of Watson and its counsel in the case at bar, however, the defendant in Financial Partners had served

interrogatories and document requests on the plaintiffs, filed six separate motions relating to discovery and attended weekly status conferences without ever limiting the defendant's appearance to the class action litigation.  The court found a waiver in that case given the defendant's extensive participation in discovery relating directly to the plaintiffs' individual case over a two year period.  See Financial Partners Class Action Litigation, 1985 WL 2373 at * 2-3 (N.D.Ill. August 23, 1985).

Here, plaintiffs point out that Watson's counsel has responded to discovery requests, filed a motion to withdraw as counsel and joined in a protective order.  The submission of Defendant's Supplemental Brief In Support Of Supplemental Jurisdiction (Docket Entry # 681) with the language that it was submitted "ON BEHALF OF ALL DEFENDANTS" immediately above the signature lines cannot be attributed to Watson even though the caption lists the Nevada and Montana actions.  Watson's counsel did not sign the document and the brief makes no mention that it was filed on behalf of or with the participation of Watson.  In complying with the document production requests and attending the two depositions, Watson was participating in discovery for the furtherance of the entire MDL action.  While Watson did not specifically limit its participation to the class action, these discovery matters are minimal given the scope of this proceeding

and do not speak with any degree of certainty to defendant's intent to submit to the jurisdiction of the court.  Likewise, the filing of a motion to withdraw as counsel, which refers generically to "all actions," cannot be seen as a showing of intent in this instance.  Additionally, the protective order Watson joined when seen in the context of the entire litigation falls short of participation which would rise to the level of a waiver of a legal right.

Where proof of a waiver rests on one's acts, "his acts should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d at 1560 (quoting Bechtel v. Liberty National Bank, 534 F.2d 1335, 1340 (9th Cir. 1976)). The level of participation of the defendants in cases where waiver was found is not present in this case.  In the cases cited above, the defendant's participation was more extensive and related directly to the plaintiff's individual claims rather than being directed towards an entire class of plaintiffs.  While Watson could have been timelier in filing the motion to dismiss (Docket Entry # 1187), Watson has not been "sufficiently dilatory," especially considering that plaintiffs' failure to

10

serve in this case was a product of their own neglect.  <u>Marcial</u>
<u>Ucin, S.A. v. SS Galicia</u>, 723 F.2d at 997.

Finally, the court's Scheduling Order (Docket Entry # 470)
does not render defendant's motion untimely.  Under the Order the
deadline for responsive pleadings was set for September 15, 2003.
Given the August 1, 2003 deadline for filing the amended
complaints and the 120 day period under Rule 4, it is clear that
the Order was not intended to preclude such future Rule 4
motions.  Accordingly, pursuant to Rule 4(m), the failure to
serve Watson with the amended complaints in a timely manner
mandates dismissal of Watson as a defendant in the Montana and
Nevada actions.


II.  <u>B. BRAUN MEDICAL, INC.'S MOTION TO DISMISS THE SECOND</u>
<u>AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT (DOCKET ENTRY</u>
<u># 1439)</u>

<u>BACKGROUND</u>

B. Braun Medical, Inc. ("BBM" or "defendant") moves to
dismiss the claims filed against it in the SAMCC.  (Docket Entry
# 1439).  In particular, BBM argues that plaintiffs fail to state
a claim under Rule 12(b)(6) and there is no subject matter
jurisdiction under Rule 12(b)(1).

For present purposes, the named plaintiffs in the SAMCC and the TAMCC bring similar claims against BBM in counts II, III, IV and IX of the complaints.[5]  Because an amended complaint supercedes a prior complaint, absent an incorporation by reference, In Re Wireless Telephone Federal Cost Recovery Litigation, 396 F.3d 922, 928 (8th Cir. 2005); Kolling v. American Power Conversion Corporation, 347 F.3d 11, 16 (1st Cir. 2003), this court will construe the motion to dismiss as seeking the dismissal of the same counts in the TAMCC that BBM attacks in the SAMCC.[6]  Count II alleges violations of the civil RICO statute, 18 U.S.C. § 1962(c).[7]  Count III seeks relief under the Declaratory Judgment Act, a statute that "does not provide an independent source of jurisdiction."  Aroostook Band of Micmacs v. Ryan, 404 F.3d 48, 58 (1st Cir. 2005).  Count IV alleges violations of state consumer protection statutes.  Count IX,

---

[5]  Counts in each complaint are referenced by the same Roman numeral with respect to the same causes of action.

[6]  The proper filing date for purposes of determining "commencement" of this suit is addressed infra and this court affords plaintiffs the benefit of either the filing date of the SAMCC (February 24, 2005) and the TAMCC (October 18, 2005).  The differences between the named plaintiffs in the SAMCC and the TAMCC (collectively:  "the class plaintiffs") do not materially effect the disposition of the present motion to dismiss.

[7]  RICO is an acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 et seq.

which plaintiffs acknowledge should be dismissed with respect to

BBM (Docket Entry # 1468, n. 1)[8] and thus need not be addressed,

seeks recovery for civil conspiracy.

BBM's history as a defendant in the MDL action has undergone

a number of changes.[9]  The class of plaintiffs in the master

consolidated class action complaint ("MCC") filed on September 6,

2002, named BBM as a defendant.  (Docket Entry # 148, ¶ 79).  On

May 13, 2003, the court dismissed the class one claims against

BBM "without prejudice to a motion to amend to cure any defects."

(Docket Entry # 362, p. 47).  The corrected amended master

consolidated complaint ("AMCC") filed in redacted version in July

2004,[10] however, omitted BBM as a defendant.  (Docket Entry #

---

[8]   Plaintiffs "acknowledge that Count IX (for civil
conspiracy) should be dismissed with regard to BBM, but only
because CMHV did not reimburse for a BBM AWPID."  (Docket Entry #
1468, n. 1).

[9]   Relying on a Seventh Circuit decision, the class
plaintiffs assert that such changes support their argument that
the Class Action Fairness Act, 28 U.S.C. § 1332(d), confers
subject matter jurisdiction over BBM.  (Docket Entry # 1562).  As
discussed below, the statute does not apply to actions
"commenced" prior to its enactment date, February 18, 2005.  The
class plaintiffs maintain that BBM was a new defendant added to
the MDL action after February 18, 2005, via the filing of the
SAMCC on February 24, 2005.

[10]   On June 18, 2003, the court allowed the motion to amend
the MCC, albeit without prejudice subject to the later filing of
motions to dismiss.  The amended master consolidated class action
complaint was filed in redacted form in July 2003.  (Docket Entry
# 443.)

928, ¶ 68).  On August 24, 2004, belatedly realizing "that BBM was inadvertently omitted as a defendant" from the AMCC (Docket Entry # 987, p. 1), the class of plaintiffs in the AMCC filed a motion to amend the AMCC to add BBM as a defendant.  (Docket Entry # 987).  Quoting Rule 15(c)(3), Fed. R. Civ. P., the class of plaintiffs in the AMCC pointed out that BBM may be added as a defendant and that the amendment would relate back to the date of the filing of the AMCC.  (Docket Entry # 987).

On February 4, 2005, the court issued a 12 page decision which addressed, in addition to another motion, the motion to amend (Docket Entry # 987) to add BBM as a defendant.  (Docket Entry # 1337).  The court allowed the motion (Docket Entry # 987) to add BBM as a defendant to the AMCC.  Fourteen days later, the Class Action Fairness Act was enacted.  On February 24, 2005, after the enactment date of the Class Action Fairness Act, the class plaintiffs filed the SAMCC.  (Docket Entry # 1377).  In accordance with the February 12, 2005 decision, the SAMCC names BBM as a defendant.  (Docket Entry # 1377, ¶ 68).

<u>STANDARD OF REVIEW</u>

At the pleading stage, an order to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) "is appropriate only when the facts alleged in the complaint, taken

14

as true, do not justify the exercise of subject matter jurisdiction." <u>Muniz-Rivera v. United States</u>, 326 F.3d 8, 11 (1st Cir. 2003).  Where, as here, the issue involves a facial as opposed to factual challenge to subject matter jurisdiction, the relevant background information is gleaned "from the plaintiffs' amended complaint, accepting the well-pleaded factual averments contained therein and indulging all reasonable inferences in the plaintiffs' favor." <u>Muniz-Rivera v. United States</u>, 326 F.3d at 11; <u>see</u> <u>generally</u> <u>Biscanin v. Merril Lynch & Co., Inc.</u>, 407 F.3d 905, 907 (8th Cir. 2005).

The standard of review for a Rule 12(b)(6) motion for failure to state a claim for relief is well settled.  Drawing reasonable inferences in the plaintiffs' favor and accepting as true the factual allegations contained in the complaint, <u>Vartanian v. Monsanto Company</u>, 14 F.3d 697, 700 (1st Cir. 1994), dismissal is proper if it appears beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989).

<u>DISCUSSION</u>

BBM asserts that the class plaintiffs' claims against them fail to establish subject matter jurisdiction under either

federal question or diversity pursuant to 28 U.S.C. § 1331
("section 1331") and 28 U.S.C. § 1332 ("section 1332").  The
burden is on the class plaintiffs to establish subject matter
jurisdiction.  McBee v. Delica Co., Ltd., 417 F.3d 107, 122 (1st
Cir. 2005) ("burden is on McBee to establish [subject matter]
jurisdiction").  Accordingly, although this court does not
foreclose the class plaintiffs from raising another basis for
jurisdiction,[11] this court limits the present analysis to the
basis for subject matter jurisdiction raised by the class
plaintiffs' in their briefs (Docket Entry ## 1468 & 1562) and
during oral argument as well as the arguments raised by BBM.

Turning to federal question jurisdiction under section 1331,
BBM alleges that Count II, the RICO claim, is fatally defective
on three grounds: the class plaintiffs have not alleged causation
or injury-in-fact; failure to establish an enterprise between BBM
and any pharmacy benefit manager ("PBM") concerning the drugs
named in the SAMCC; and that the class plaintiffs are estopped
from asserting a RICO claim because they have limited the scope
of their claim to self-administered drugs whereas the drugs named
in the SAMCC are physician-administered.

---

[11]  Any such basis must be supported by proper legal
authority.  See LR. 7.1(b) (both supporting memorandum and
oppositions must include "citation of supporting authorities").

16

The class plaintiffs concede that the BBM drugs, which form the basis of Count II, are physician-administered as opposed to self-administered.  Moreover, the class plaintiffs have not argued, let alone alleged, that BBM had any relationship concerning these drugs that falls within the limited scope of their RICO claim.  Indeed, in the face of BBM's argument, the class plaintiffs do not address the RICO issues and, instead, focus entirely upon the existence of diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("section 1332(d)").  As the proponent of subject matter jurisdiction, plaintiffs thus fail to carry their burden of showing federal question jurisdiction via the RICO claim.

The remaining two claims in counts III and IV allege violations of state law.  Again, the class plaintiffs rely exclusively on section 1332(d) as the means to establish subject matter jurisdiction.[12]  This court therefore declines to address, at least at this juncture and absent adequate briefing from the parties, the issue of whether these state law claims "turn on substantial questions of federal law."  <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, __U.S.__, 125 S.Ct. 2363, 2367 (2005).

---

[12]  They also fail to address the issue of supplemental jurisdiction.

Accordingly, this court turns to section 1332(d) and the presence of diversity jurisdiction under the Class Action Fairness Act.  The Class Action Fairness Act expands subject matter jurisdiction where at least one member of the plaintiffs' class is diverse in citizenship from the defendant and where the amount in controversy exceeds $5 million.  See 28 U.S.C. § 1332(d).  Section nine of the act, enacted on February 18, 2005, states that, "The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act."  Pub.L. No. 109-2, 119 Stat. 4 at 14.  Interpreting this language, the Tenth Circuit in Pritchett v. Office Depot, Inc., 420 F.3d 1090 (10th Cir. 2005), held that the act does not apply to actions filed in state court prior to the February 18, 2005 enactment date but removed to federal court after the February 18, 2005 enactment date.

The well reasoned decision in Pritchett, which need not be repeated at length, applies equally to the case at bar.  First, Congress explicitly stated that this Act "'shall apply to any civil action commenced on or after the date of enactment of this Act.'"  Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1092 (10th Cir. 2005) (quoting Class Action Fairness Act); accord Exxon Mobile Corp. V. Allapattah Services, Inc., __ U.S. __, 125 S.Ct. 2611, 2628 (2005) (the Class Action Fairness Act does not

18

apply retroactively).   Typically, an action is "commenced" by the
filing of the original complaint with the court.   See Rule 3,
Fed. R. Civ. P.; Pritchett v. Office Depot, Inc., 420 F.3d at
1094.   Both the traditional meaning of "commenced" as well as the
legislative history of the act excludes currently pending state
court suits that are subsequently removed to federal court from
the reach of the act.   See Pritchett v. Office Depot, Inc., 420
F.3d at 1094-1096.   Adhering to the reasoning of Pritchett, this
action "commenced" well before the filing of the SAMCC.

    The Seventh Circuit's decision in Knudsen v. Liberty Mutual
Insurance Co., 411 F.3d 805 (7th Cir. 2005), relied upon by the
class plaintiffs, does not convince this court otherwise.   First,
in rejecting the argument that a substantial change of the
definition of the class "commenced" a new case for purposes of
the Class Action Fairness Act, the court in Knudsen *agreed* with
the court in Pritchett that, "[T]he new Act must be taken
seriously" and that "Pritchett concluded that a civil action is
'commenced' for purposes of § 9 when it is filed in state court
and not when some later step occurs in its prosecution."   Knudsen
v. Liberty Mutual Insurance Co., 411 F.3d at 806.[13]   Second,

_____

[13]   The Knudsen decision interpreted a prior version of the
Pritchett opinion published at 404 F.3d 1232.   Although the later
Pritchett opinion published at 420 F.3d 1090, issued after the
Knudsen decision, fails to mention Knudsen, it does not differ
materially for present purposes from the prior published version

although dicta in Knudsen notes that adding a new defendant or a
new federal claim "(where only state claims had been framed
before)" might "open[] a new window of removal" and thereby
"commence" a new civil action for purposes of applying section
1332(d), a federal claim that relates back under Rule 15(c) would
not "commence" a civil action for purposes of applying section
1332(d).  Knudsen v. Liberty Mutual Insurance Co., 411 F.3d at
807.  The claims against BBM fall under the latter category, as
accurately reasoned by BBM (Docket Entry # 1567, p. 4 & n. 5).
Indeed, in August 2003 the class of plaintiffs in the AMCC argued
that the claims against BBM would relate back to the filing of
the AMCC.  (Docket Entry # 987).  Finally, the February 4, 2005
Order allowed the motion to amend the AMCC to add BBM as a party
and thereby added BBM as a defendant to the AMCC on that date.
Thus, BBM was a defendant added to the AMCC as of the enactment
date of the Class Action Fairness Act.

     Plaintiffs' remaining request for leave to file a separate
complaint against BBM and that the action would thereafter be
added as a "tag-along" case to the MDL action pursuant to Rule
7.4 of the Rules of the Judicial Panel on Multidistrict
Litigation is premature.  In any event, Rule 7.4 requires "The
Clerk of the Panel" to provide all parties to the litigation "the

discussed in Kundsen.

opportunity to oppose transfer" to the "transferee district court."  To state the obvious, BBM has not had an opportunity to be heard relative to any such a future transfer.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[14] that Watson's motion to dismiss (Docket Entry # 1187) be **ALLOWED** and that BBM's motion to dismiss (Docket Entry # 1439) be **ALLOWED**.


/s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[14] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).