# Exhibit 2

1  UNITED STATES DISTRICT COURT

2  DISTRICT OF MASSACHUSETTS

3  -o0o-

4  In Re: Pharmaceutical Industry Average   MDL No. 1456
   Wholesale Price Litigation           Civil Action No.
5                    01-CV-12257-PBS
   This Document Relates to State of
6  Nevada v. Abbott Laboratories, et al.,
   CA No. 02-CV-00260-ECR (Nevada I), and
7
   State of Nevada v. American Home
8  Products, et al., CA No.
   02-CV-12086-PBS (Nevada II)
9

10

11

12

13

14

15                DEPOSITION OF

16                CAROL TILSTRA

17              December 21, 2005

18              Carson City, Nevada

19

20

21

22

23          SUNSHINE REPORTING SERVICES

24         (775) 323-3411 * (775) 883-7950

25  REPORTED BY: DEBORAH MIDDLETON GRECO, CCR #113, RDR, CRR

1

1  colleague Shankur Duraiswamy.

2        We represent a drug company GlaxoSmithKline, which is

3  one of the defendants in this lawsuit.

4        Can you please state and spell your name for the

5  record?

6    A   My name is Carol, C-a-r-o-l, Tilstra, T-i-l-s-t-r-a.

7    Q   And what's your current business address?

8    A   Is 1100 North Carson Street. Williams.

9    Q   Williams Street?

10   A   Williams Street. Sorry.

11   Q   Carson City?

12   A   Carson City.

13   Q   Have you ever been deposed before?

14   A   No.

15   Q   Okay. Well, I'm just explain the process of the

16 deposition.

17        I'm going to ask the questions. You will respond.

18 You need to respond verbally so that the court reporter can

19 write down a response.

20        At times, your attorney may object to one of my

21 questions. Unless instructed by him or her not to answer the

22 question, you still are required to answer the question even

23 though there's an objection.

24        If you don't understand a question, please ask me the

25 clarify its I'll be happy if you do not ask for clarification I

1     That's what I was involved with.

2  Q  Okay. So then processing the physicians claim for
3  reimbursement for the drug, that would be handled by somebody
4  else at that time?

5  A  Correct.

6  Q  And how long were you in this position as prior
7  contract nurse for prior payment authorizations?

8  A  Six months, and then I was hired by the state and
9  continued doing prior authorizations.

10 Q  For how long?

11 A  So I continued in the same position until five years
12 ago, and then prior authorization were outsourced.

13 Q  Have you held any other positions besides contract
14 nurse for prior payment authorizations while, during your time
15 at Medicaid?

16 A  I was the policy and procedure code program
17 specialist.

18 Q  And when was that?

19 A  Began in July of 1990.

20 Q  And how long were you in that position?

21 A  I'm still in program services. I no longer do the
22 procedure file.

23 Q  When did you stop doing the procedure file?

24 A  Three years ago. Four. Excuse me.

25 Q  And what were your job responsibilities in connection

14

1   with that position?

2     A   Basically the same as it was with the prior

3   authorization.

4         Services, new products would come, by-products, I mean

5   new services would come on, on the horizon, could be developed,

6   and so I had to do research determine if Medicaid was going to

7   cover the service or was not going to cover the service.

8         Would there be any limitations placed on a service.

9   And it was with the physicians, with therapy, laboratory

10  services, multitude of services.

11        Now I stopped doing prior authorizations for pharmacy

12  after two years, and they hired other staff.

13    Q   You have kind of testified that a lot of your job

14  responsibilities involved the physician services.

15        What were your responsibilities in connection with the

16  physician-administered drugs?

17    A   Only from the standpoint of a drug requiring prior

18  authorization.

19    Q   Are you familiar with the information that a physician

20  would have to submit in order to obtain reimbursement for a drug

21  that he had administered to a patient in an inpatient setting?

22    A   No.

23    Q   Okay. Do you review federal government studies or

24  policy statements?

25    A   As it relates to outpatient services, yes.

15

1   Q   And just so I'm clear, when you say outpatient

2   services, you are referring to providing of services to a

3   patient, but not necessarily the administering of a

4   pharmaceutical product; is that correct?

5   A   That's correct.

6       MR. LITOW:  Ask the court reporter to mark as Tilstra

7   Exhibit 1, email from Chuck Duarte to everyone, dated November

8   30th, 2005.

9       (Exhibit Tilstra 1 marked for identification)

10  BY MR. LITOW:

11  Q   Just take a moment, Miss Tilstra to look over that

12  document.  Have you seen this document before, Miss Tilstra?

13  A   Yes.

14  Q   And when did you see this document?

15  A   I don't remember when it came on to my screen.

16  Q   Was it around November 30th, 2005?

17  A   If that's the date on there, that's the date I saw it.

18  Q   Can you please describe what it is?

19  A   It's just informing us of the litigation.  Talks about

20  our recordkeeping.

21  Q   Had you ever received a notice like this before

22  regarding this case?

23  A   I don't remember.

24  Q   I'd like to direct your attention to the first

25  sentence.  Which states as many of you are aware, the state of

16

1  Nevada is engaged in litigation entitled state of Nevada V

2  American Home Products, Corp, et al., this lawsuit is also

3  known as average wholesale price litigation or the AWP

4  litigation.

5      Do you see that?

6  A  Yes. I do.

7  Q  When did you first become aware of this action?

8  A  In August of this year.

9  Q  And how did you become aware of it?

10 A  I was asked to come to a meeting.

11 Q  Who asked you to come to this meeting?

12 A  John Liveratti.

13 Q  Did you go to this meeting?

14 A  Yes, I did.

15 Q  And who was at this meeting?

16 A  Tim Terry, Jim, John Liveratti, Colleen Lawrence.

17 Lynn -- what's her last name? I think Mansell. I may be wrong.

18 Q  You weren't aware of this action in 2002, back when it

19 was filed; is that correct?

20 A  That is correct. I was not aware.

21 Q  I'd like to direct your attention to the second

22 paragraph, please, the first bolded sentence.

23     Which states it is extremely important that any

24 documents pertaining to the litigation are identified, separated

25 from other files and protected. Do you see that?

1  A  Yes.
2  Q  Did you ever receive this specific instruction before
3  in relation to this case?
4  A  No.
5  Q  Did you take any steps in 2002 to identify and
6  separate documents that might pertain to this litigation?
7  A  No.
8  Q  I'd like to direct your attention to the next
9  sentence. Which states, all destruction of records pertaining
10 to a lawsuit must be stopped until the legal action has been
11 resolve.
12    Do you see that?
13 A  Yes.
14 Q  Had you ever received this specific instruction before
15 in relation to this case?
16 A  No.
17 Q  Direct your attention to the sixth paragraph. The
18 last sentence. Which states, again, most of you have seen this
19 document before as you have been involved in searching for and
20 producing documents responsible ever responsive to the questions
21 and requests from the department's files, your files or the
22 files of others.
23    Do you see that?
24 A  Yes.
25 Q  Did you search your files for documents pertaining to

18

```
 1              FURTHER EXAMINATION
 2  BY MR. LITOW:
 3     Q  Do you ever delete email?
 4        MS. BRECKENRIDGE:  Any email, ever?
 5  BY MR. LITOW:
 6     Q  When you get emails, do you delete them sometimes?
 7     A  I delete some.
 8     Q  And when you go the meetings, do you take notes at
 9  those meetings sometimes?
10     A  Yes.
11     Q  Handwritten notes?
12     A  Just handwritten.
13     Q  Do you save those notes?
14     A  Sometimes.
15     Q  And sometimes you discard them?
16     A  Correct.
17        MR. LITOW:  I have no further questions.
18        MS. BRECKENRIDGE:  I have no further questions.
19        MR. LITOW:  Thanks.  Thank you so much.
20        (Proceedings concluded at 2:14 p.m.)
21
22
23
                        CAROL TILSTRA
25
```