# Exhibit 5

Daniel Wade Peterson                    December 15, 2005
                    Helena, MT

1

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---oOo---

In re:  PHARMACEUTICAL,              MDL DOCKET NO.

INDUSTRY AVERAGE WHOLESALE           CIVIL ACTION

PRICE LITIGATION                     01CV12257-PBS

_____

THIS DOCUMENT RELATES TO:

ALL ACTIONS

_____

DEPOSITION OF DANIEL WADE PETERSON

Taken at

Law Offices of

Gough, Shanahan, Johnson & Waterman

33 South Last Chance Gulch

Helena, Montana

December 15, 2005

9:00 a.m.

Daniel Wade Peterson                    December 15, 2005

Helena, MT

7

1    Jersey.

2       Q.    What year did you get your associate's

3    degree?

4       A.    19, I believe it was '92, somewhere around

5    there.

6       Q.    What was the concentration of your

7    associate's?

8       A.    Business administration.

9       Q.    Do you have any further education beyond

10   that?

11      A.    Yes, I went on, took some additional

12   classes, and to Idaho State University and

13   graduated with a degree in health care

14   administration in 1999.

15      Q.    Was that a bachelor's?

16      A.    Yes.

17      Q.    Do you have any degrees beyond a

18   bachelor's?

19      A.    No.

20      Q.    And when did you begin your employment with

21   Montana DPHHS?

22      A.    In 2002, August of 2002.

Daniel Wade Peterson                              December 15, 2005
                        Helena, MT

8

1      Q.    What was the title of the first position

2    that you took with DPHHS?

3      A.    Pharmacy program officer, or human services

4    program officer.

5      Q.    What is the title of your current position?

6      A.    Pharmacy program supervisor.

7      Q.    From 2002, when you were hired as pharmacy

8    program officer, could you just briefly describe

9    the responsibilities of that position?

10     A.    Sure.  Basically, I took care of all the

11   issues related to the Medicaid pharmacy program

12   dealing with client issues.  When I say client, I

13   refer to our recipients.  Provider issues, taking

14   care of our policies, procedures, taking care of

15   any administrative rules that needed to be done.

16   So basically everything encompassing the Medicaid

17   pharmacy program.

18     Q.    How long did you hold the position of

19   pharmacy program officer?

20     A.    Up until September of this year.

21     Q.    And --

22     A.    I am still fulfilling those duties, since

Daniel Wade Peterson                                December 15, 2005

Helena, MT

27

1    listed in the general schedules, your agency must

2    draft a retention schedule and submit it to the

3    state records committee for approval.

4           Are you aware of a separate records

5    retention schedule for DPHHS?

6       A.   I am not.

7       Q.   Okay.  I think we are done with that

8    exhibit.  Thank you.

9           Prior to your search for responsive

10   documents, did you receive an e-mail or any other

11   communication instructing you or any other state

12   employees to retain all documents that might be

13   relevant to the subject matter of this litigation?

14      A.   I don't recall I got any e-mail relating to

15   that.

16      Q.   Did you receive any communication in a form

17   other than e-mail?

18      A.   No.  At what time period did you refer to

19   for that?

20      Q.   Any time before you searched for the

21   responsive documents.

22      A.   Any time before I searched for them?

Daniel Wade Peterson                      December 15, 2005

Helena, MT

28

1      Q.    Yes.

2      A.    No.

3      Q.    So since 2002 until the present day you

4   have not received a communication instructing you

5   to retain documents that might be relevant to the

6   subject matter of this litigation?

7      A.    I did just this last week.

8      Q.    Okay.  Moving on to topic 1I of the

9   30(b)(6) notice:  What measures has Montana

10  undertaken to reduce its expenditures for

11  prescription drugs?

12        MS.  BRECKENRIDGE:  Objection.  Very broad.

13  For all of time, any type?

14        MS. SMITH-KLOCEK:  From 1991 to the

15  present.

16     A.    Well, I cannot speak to 1991, until the

17  time I started working there.  But I can briefly

18  explain the stuff that I have done in my tenure

19  there.

20        Without having everything in front of me,

21  it might not be complete.  But I can discuss in

22  generalities what we have done.

Daniel Wade Peterson                           December 15, 2005
                        Helena, MT

48

1    notices.

2        Q.    Anything else?

3        A.    That's as far as I know.  That's all I can

4    think of.

5        Q.    Was there correspondence between yourself

6    and Mr. Preshinger regarding the reduction in

7    reimbursement rates or the proposed reduction in

8    reimbursement rates?

9        A.    There probably was, but I just, I can't

10   think of any particular correspondence for certain.

11       Q.    Do you and Mr. Preshinger communicate by

12   e-mail?

13       A.    Yes, we do.

14       Q.    Would you --

15       A.    Also, I believe -- we have weekly meetings,

16   so --

17       Q.    Are minutes kept at your weekly meetings?

18       A.    No.

19       Q.    Do you take notes at your weekly meetings?

20       A.    Probably.

21       Q.    Do you keep those notes?

22       A.    They are just handwritten pieces of paper,

Daniel Wade Peterson                          December 15, 2005
                        Helena, MT

49

1    so I don't keep them.

2        Q.    Is there any internal office correspondence

3    regarding consideration of their reduction in

4    reimbursement to providers?

5        A.    There would probably be by e-mail.

6        Q.    And who would those e-mails be from or to?

7        A.    Between Duane Preshinger and myself.

8        Q.    Anyone else?

9        A.    Probably infoing his supervisor, I believe

10   that was Jeff Buska at the time.

11       Q.    Does Montana Medicaid process and

12   adjudicate prescription drug claims electronically

13   in real time?

14       A.    Yes.  We also process claims by paper, as

15   well.  It's not all providers -- because not all

16   providers have a point of sale system.

17       Q.    Do you know about what percentage of

18   prescription drug claims are processed by paper?

19       A.    In our last DUR report I reported 98

20   percent of our claims are via point of sale.

21       Q.    And by point of sale are you referring to

22   electronic claims processing?

Daniel Wade Peterson                                    December 15, 2005

Helena, MT

117

1    Q.    As in discard.

2    A.    Uh-huh.

3    Q.    Earlier, you testified that you threw away

4    certain notes from meetings you attended with Mr.

5    Preshinger; is that correct?

6    A.    I did say that, uh-huh.

7    Q.    Are there --

8    A.    Handwritten, like notes to myself,

9    reminders or points I would make on whatever

10   project I was working on.

11   Q.    Are there any other handwritten notes that

12   you create that you have thrown away since you

13   started in 2002?

14   A.    Gosh, that's -- I -- I don't know.  I do so

15   much every day, it's just hard for me to remember.

16   I've got to write notes to myself, reminders,

17   little sticky notes.  I got stuff laying all over

18   the place.

19   Q.    Have you kept all your handwritten notes

20   since 2002?

21   A.    No.

22   Q.    Other than the ones that you --

Henderson Legal Services
(202) 220-4158

Daniel Wade Peterson                              December 15, 2005
                              Helena, MT

118

```
1        A.    No.

2        Q.    And in the files that you inherited from

3    Shannon Marr, did you see any directive or

4    communication stating that you should retain

5    documents based on the filing of the lawsuit?

6        A.    No, I did not.

7              MS. SMITH-KLOCEK:  I'm done.

8              MS.  BRECKENRIDGE:  Thank you.

9              (Whereupon, at 12:15 p.m., the taking of

10   the instant deposition ceased.)

11

12                   SIGNATURE OF WITNESS

13

14             _____

15                   DANIEL WADE PETERSON

16

17   SUBSCRIBED AND SWORN to before me this _____ day

18   of _____, 200__.

19

20   _____

21   Notary Public

22   My Commission Expires:_____
```

Henderson Legal Services
(202) 220-4158