# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | Judge Patti B. Saris |
| ALL ACTIONS | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
THE JOINT MEMORANDUM OF THE ATTORNEYS GENERAL OF
ILLINOIS, KENTUCKY, WISCONSIN AND IDAHO
<u>REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BRIEF BACKGROUND OF STATE ATTORNEY GENERAL LITIGATION
        OF AWP FRAUD ISSUES.......................................................................................... 3

III.    THE EFFECTIVENESS OF CONSUMER PROTECTION ENFORCEMENT
        IS ENHANCED THROUGH PARALLEL ACTIONS PURSUED BY
        PRIVATE AND PUBLIC REPRESENTATIVES ........................................................ 4

IV.     CHOOSING A "SUPERIOR" ADVOCATE AT THIS TIME IS
        UNNECESSARY AND PERILOUS.............................................................................. 7

V.      ADDRESSING OTHER ISSUES RAISED BY THE MOVING AGS .......................... 10

        A.      Understanding Of Consumer Protection Statutes ................................... 10

        B.      The Court Has Not Recognized Any Difficulties In Certifying A Class
                Of Medicare Part B Beneficiaries Under Different State Consumer
                Protection Laws ...................................................................................... 10

        C.      The Moving AGs Do Not Have A Lower Burden Of Proof Under Their
                Consumer Protection Statutes ................................................................. 11

        D.      The States Have No Stronger Interest In Securing Injunctive Relief ................ 11

VI.     ANY POTENTIAL DELAY ASSOCIATED WITH INTERLOCUTORY
        APPEALS WOULD BE MINOR COMPARED TO THE MOVING AGS'
        DELAYS IN BRINGING THEIR ACTIONS ................................................................ 12

VII.    CONCLUSION............................................................................................................. 13

001534-16 85132 V1

# TABLE OF AUTHORITIES

## CASES

*In re Lorazepam and Clorazepate Antitrust Litig.*,
  289 F.3d 98 (D.C. Cir. 2002) ...........................................................................4

*In re Lorazepam and Clorazepate Antitrust Litig.*,
  1999 U.S. Dist. Lexis 12574 (JPML 1999) ......................................................4

*In re Nine West Shoes*,
  No. 99-cv-00245 (S.D.N.Y. 1999)....................................................................4

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005)..........................................................................4

## STATUTES

15 U.S.C. § 15c ...........................................................................................................6

815 ILCS § 505/10...................................................................................................1, 5

815 ILCS § 505/7...............................................................................................1, 5, 11

Idaho Code § 48-606.................................................................................1, 5, 11, 13

Idaho Code § 48-608.............................................................................................1, 5

Ky. Rev. Stat. § 367.190....................................................................................1, 5, 11

Ky. Rev. Stat. § 367.220......................................................................................1, 5

Wis. Stat. § 100.18..........................................................................................10, 11

Wis. Stat. § 100.18(11)(a)....................................................................................1, 5

Wis. Stat. § 100.18(11)(b)....................................................................................1, 5

Wis. Stat. §§ 100.20, *et seq*..................................................................................10

## MISCELLANEOUS

Patricia A. Conners, *State Attorneys General and Our Concurrent System of Antitrust
  Enforcement:  Their Role In Protecting Consumer Interests*, FTC Class Action
  Workshop (Sept. 14, 2004) ...............................................................................5

001534-16 85132 V1

JULIAN O. VON KALINOWSKI, PETER SULLIVAN, AND MAUREEN MCGUIRL,
    ANTITRUST LAWS AND TRADE REGULATION § 3.04[3][b] (2d ed. 1998) ............................6

# I.     INTRODUCTION

The Attorneys General of twenty states have filed Average Wholesale Price ("AWP")
fraud cases against various pharmaceutical manufacturers.  Of these twenty, only three – Illinois,
Kentucky and Wisconsin, which are represented by the same private counsel firm – have asked
the Court[1] to:  (i) determine, as a matter of law, that the Attorneys General ("AGs") in these
states are "superior" to Plaintiffs for purposes of representing citizens of their states; and,
consequently (ii) decline to certify any class that includes consumers in the States of Illinois,
Kentucky and Wisconsin and third-party payors ("TPPs") in the State of Wisconsin.[2]  The Court
should decline the invitation to prematurely rule on matters that may never be at issue in the
case.

The very consumer protection acts cited by the Moving AGs recognize that private and
public enforcement actions co-exist.  *See* IDAHO CODE §§ 48-606, -608; 815 ILCS §§ 505/7, /10;
KY. REV. STAT. §§ 367.190, .220; WIS. STAT. §§ 100.18(11)(a) and (b).  The long tradition of
such parallel proceedings encourages the strongest enforcement of state consumer protection
laws.  The lack of any precedent for the notion that courts must elect a single remedial vehicle
for protection of consumer interests strongly underscores the respect and purposes served by
parallel public and private enforcement.  Establishing such a precedent – that courts are required
to make a false election between class proceedings and state AG *parens patriae* proceedings –
defeats the legislatures' preference for the dual enforcement mechanism, reduces the

---

[1]     The Attorneys General are not parties to the action, and indeed they take the position that this Court has no
jurisdiction to make any rulings that would affect their interests.  Having not sought to intervene in this case, they
nevertheless have filed a memorandum requesting that the Court take certain actions.  The Attorney General of the
State of Idaho, who has not filed any AWP litigation, also joins in the request.  The Attorneys General of Idaho,
Illinois, Kentucky, and Wisconsin are referred to herein as the "Moving AGs."

[2]     Thus, 17 actively litigating states have declined to join in the three AGs' motion.

001534-16 85132 V1

effectiveness of these important statutes and fails to credit jurisprudence recognizing that ***both*** private and public actors are appropriate representatives, each with their own strengths and limitations.  In sum, parallel enforcement mechanisms were designed to make consumer protection statutes more effective, not to effectuate a race to the courthouse by attorneys general and private citizens to force courts to choose one enforcement mechanism over the other.

In addition to these strong policy arguments, the practicalities of this particular litigation command rejection of the Moving AGs' quest here.  For instance, not all of the cases involve the same defendants, drugs or legal claims – a diversity of tactics that provide additional reasons to leave multiple options open to protect consumers.  Nor is choosing a superior plaintiff necessary to protect State interests in participating in potential settlement negotiations, as the Court has already ruled that class counsel should keep state AGs informed of potential settlement developments.[3]

The Court already has recognized that State AG actions and the private class actions should "run in tandem" until such time that a decision on a proposed settlement is needed.  At that point, if need be, the Court can engage in a detailed analysis of whether substantive claims overlap and whether the proposed settlement is fair.  If needed, it can then select the most appropriate consumer protector.  But until then, there are no sound reasons – statutory, policy or otherwise – for choosing a "superior" representative at this juncture.  The best course of action is to permit parallel actions to proceed in tandem, just as the relevant statutes contemplate.

---

[3]    Indeed, class counsel has invited the Moving AGs to the recent mediation sessions ordered by the Court.

## II.   BRIEF BACKGROUND OF STATE ATTORNEY GENERAL LITIGATION OF AWP FRAUD ISSUES

In addition to Illinois, Kentucky and Wisconsin, the following states are pursuing AWP fraud-related actions against certain pharmaceutical manufacturers:  Alabama, Arizona, Arkansas, California, Connecticut, Florida, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New York, Nevada, Ohio, Pennsylvania, Texas, and West Virginia.  This brings to 20 the number of States that have filed.

With the exception of Texas (and the possible exception of West Virginia), the AG cases were initiated after the filing of the lead class actions that were eventually consolidated into MDL 1456.  Some State cases were filed recently, like the AG actions in Alabama, Arizona, Illinois, Mississippi, and Missouri, all of which were filed in 2005.

The state AG actions do not substantially overlap the class action claims pending in MDL 1456.  As a threshold matter, it appears that about 30 state AGs have not filed any AWP litigation, leaving the class actions as the *only* pending cases crafted to protect consumers in the non-filing states.  Furthermore, many litigating states have not joined the breadth of defendants identified in the class actions; nor have they targeted the same panoply of drugs.  For example, some states, like Florida and Massachusetts, are focusing solely or predominantly on generic drugs.[4]  Several states, like Arkansas, Connecticut, Minnesota, New York and Ohio, bring claims largely against brand makers, but focus on a select few of these types of defendants and drugs.[5]

---

[4]     Massachusetts has sued Barr Laboratories, Dey, Duramed Pharmaceuticals, Ethex Corporation, Ivax Corporation, Mylan Laboratories, Par Pharmaceutical, Purepac Pharmaceutical Co., Roxane Laboratories, Schein Pharmaceutical, Teva Pharmaceuticals, Watson, and Warrick.  Most of these defendants are *not* defendants in the consolidated class actions.

[5]     The lone defendant in Arkansas was Dey (the case has settled).  The defendants in Connecticut are Dey, Roxane, Pharmacia, Aventis, GlaxoSmithKline, and Warrick.  The defendants in Minnesota are Dey, Pharmacia, and Warrick.  The defendants in New York are Aventis, GlaxoSmithKline, and Pharmacia.  The defendants in Ohio are Abbott, Dey, Pharmacia, Ben Venue, Boehringer, and Roxane.

-3-

Lastly, the state AGs that have sued do not bring the same legal claims as those advanced in the class actions.  Most commonly, the state AG cases include claims in addition to violations of consumer protection statutes, including claims for unjust enrichment and common law fraud.

Thus, in evaluating the instant motion, the Court should be mindful that – notwithstanding the consolidation of most of the private class actions before this Court – a patchwork of AG litigation relating to AWP fraud exists nationwide, and many of the AGs pursue but a subset of the claims brought here.

### III.   THE EFFECTIVENESS OF CONSUMER PROTECTION ENFORCEMENT IS ENHANCED THROUGH PARALLEL ACTIONS PURSUED BY PRIVATE AND PUBLIC REPRESENTATIVES

State attorneys general and private citizens represented by class counsel frequently litigate large actions simultaneously.  *See, e.g.*, *In re Lorazepam and Clorazepate Antitrust Litigation*, 289 F.3d 98, 100 (D.C. Cir. 2002); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (noting the cooperation of state AGs and class counsel); *In re Lorazepam and Clorazepate Antitrust Litigation*, 1999 U.S. Dist. Lexis 12574 (JPML 1999) (claims brought by the Federal Trade Commission, thirty-three state Attorneys General, and consumers); *In re Nine West Shoes*, No. 99-cv-00245 (S.D.N.Y. 1999) (claims brought by consumers and the AGs of all fifty states, Washington D.C., and five territories).  As the Attorney General's office for the State of Florida recently recognized in the context of antitrust enforcement:

> [O]ur system of enforcement would not be as effective or comprehensive if the role of "private attorneys general" in our class action bar did not exist....  The class action bar is important from the perspective of natural person consumers....  The size and extent of the resources available to the class action bar to initiate antitrust actions means that more consumers nationally are likely to obtain redress for damages incurred as the result of an antitrust law violation....  [O]verlapping representation can and does occur when both the class action bar and the state attorneys general seek to recover damages on behalf of natural persons.  ***When that happens, the state attorneys general and private plaintiffs'***

> *counsel have often worked together creatively and effectively to reduce duplication of effort and of remedies, usually with excellent outcomes.*

Patricia A. Conners, *State Attorneys General and Our Concurrent System of Antitrust Enforcement: Their Role In Protecting Consumer Interests*, FTC Class Action Workshop (Sept. 14, 2004) ("*Connors Comments*") (emphasis added).[6]

Indeed, like many of the consumer protection laws existing throughout the country, the very statutes empowering the Moving AGs provide for such parallel enforcement. *See*, *e.g*., IDAHO CODE § 48-606 (authorizing proceedings by the state Attorney General) and IDAHO CODE § 48-608 (authorizing private right of action for any person harmed under the act); 815 ILCS § 505/7 (authorizing proceedings by the state Attorney General) and 815 ILCS § 505/10 (granting a private right of action to any person who suffers actual damages under the act); KY. REV. STAT. § 367.190 (authorizing Attorney General to seek injunctive relief) and KY. REV. STAT. § 367.220 (allowing a private right of action where an individual has suffered an ascertainable loss under the act); WIS. STAT. § 100.18(11)(a) (granting enforcement powers to the state department of agriculture, trade, and consumer protection) and WIS. STAT. § 100.18(11)(b) (authorizing a private right of action to any person who suffers pecuniary loss under the statute).

It is not uncommon for AGs and class counsel to work together to fashion appropriate injunctive relief. These parallel enforcement mechanisms were designed to make consumer protection statutes more effective, not to effectuate a race to the courthouse between attorneys general and private citizens to force courts to choose one enforcement mechanism over the other.

---

[6]   These materials are available at:  http://www.ftc.gov/bcp/workshops/classaction/writ_materials/conners.pdf (last visited Dec. 12, 2005).

-5-

Parallel enforcement mechanisms recognize that AG and private citizens often have different resources to deploy against consumer frauds.  For example, while AGs may lack the resources or budget to pursue certain actions, AGs may also be more likely to bring smaller cases that cannot be financially justified by class counsel.  See Comments of the Maine Attorney General On Role of State In Enforcing Federal Antitrust Laws Outside the Merger Area, submitted to the Antitrust Modernization Commission on July 15, 2005.[7]  Likewise, while class counsel may be able to recover damages and treble damages for consumers, private counsel may wish not to pursue actions based on actual or perceived difficulties in obtaining class certification.  *See*, *e.g.*, JULIAN O. VON KALINOWSKI, PETER SULLIVAN, AND MAUREEN MCGUIRL, ANTITRUST LAWS AND TRADE REGULATION § 3.04[3][b] (2d ed. 1998), at 3-52 (purpose of Section 4c of the Clayton Act [antitrust], 15 U.S.C. § 15c, is to allow state AGs to avoid "problems of manageability which some courts have found under Rule 23").[8]

These different strengths and limitations highlight the state legislature's respective decisions to encourage the co-existence of public and private enforcement methods.  The Moving AGs overlook this and would have the Court choose one set of strengths and limitations over another.  ***In other words, the Moving AGs advocate a false election of remedy***.  Doing so would eviscerate what parallel proceedings are designed to do in the first instance, to wit, providing many tools to protect consumers.  And establishing the precedent that either an AG or class

---

[7]    These comments are available at:  http://www.amc.gov/public_studies_fr28902/ enforcement_pdf/050715_Rowe-Maine_AG-Enforc_Inst.pdf  (last visited Dec. 12, 2005).

[8]    Indeed, at its 1985 Spring Meeting, the National Association of Attorneys General adopted a resolution in support of the ***private*** treble damages remedy in antitrust actions.  *See* Resolution In Support of Treble Damage Remedy in Antitrust Actions, available at:  http://www.naag.org/issues/pdf/1985-res-treble_damages.pdf (last visited Dec. 12, 2005).

counsel must proceed exclusively on behalf of citizens of a state undermines the ability of these actors to cooperate well in the future.

In sum, private and public enforcement actions are meant to co-exist.  By asking this Court to hold that the Moving AGs, rather than class counsel, should represent the citizens of their States, the AGs ask this Court to take an extreme course of action that is neither necessary nor justified by the statutory schemes.  The consumer protection statutes at issue encourage – not curtail – dual enforcement.

### IV.    CHOOSING A "SUPERIOR" ADVOCATE AT THIS TIME IS UNNECESSARY AND PERILOUS

In addition to recognizing that the statutes at issue provide parallel rights of private action, notwithstanding the grant of authority to the AGs to prosecute violations thereof, other practical considerations warrant abstaining from selecting a "chosen" representative at this time. For instance, it remains to be seen, as it does in the MDL class proceeding, how successful the States' claims will be.  But the assessment of the strengths of the Moving AGs' cases is far off given how far these cases lag MDL 1456. *This highlights the perils of deciding at this juncture who is the "superior" plaintiff under the consumer protection laws, particularly when the statutes at issue contemplate simultaneous actions*.

Other considerations include differences in the number and identity of defendants, drugs and claims.  Examination of the spectrum of actions filed by AGs reveals that (i) not all states are suing the same defendants; (ii) the drugs at issue overlap to some extent, but the overlap is not complete; and (iii) the legal claims, while having some overlap, are also not identical.  While many state AGs have filed cases, many have not, and only three of the filing AGs join in the instant motion.  Furthermore, not all AGs actually bring *parens patriae* claims in addition to

claims on behalf of Medicaid programs. These practical observations emphasize the need for *multiple* options to remain open so that consumers can obtain the benefit of private and public enforcement actions.

The wisdom of permitting parallel actions is also shown by the fact that the positions of parties may shift during litigation. One need look no further than the Moving AGs' actions during the proposed *Lupron* settlement. They first objected to the proposed settlement, then withdrew their objections and attempted to opt-out the citizens of their states. After Judge Stearns requested that the Moving AGs identify the legal basis for invoking the rights of their citizens, the Moving AGs abandoned their efforts to force a mass exclusion. *See* Joint Mem. Ex. B at 4-5. Weeks later, the Moving AGs agreed to the same settlement as was first proposed (excepting to take a portion of consumer *cy pres* dollars for the state), thereby permitting the settlement to proceed without any further relief from the defendants in that action.[9] In short, what may initially seem objectionable may later turn out to be a rational way to resolve litigation. This example provides additional support to not truncate such proceedings.

The Court previously has recognized that the MDL and the state actions can proceed along parallel paths. The Commonwealth of Pennsylvania, joined by the State of Ohio, initially raised the prospect of carving out their states from any certified class. The Court declined that invitation, asking "[d]oes it make sense just to let you run in tandem until someone has to fish and cut bait?" February 10, 2005, Transcript of Class Certification Hearing, at 83. The Commonwealth agreed. The statutes themselves and practical considerations warrant allowing the cases to "run in tandem" until such point that the Court will be called upon to evaluate the terms of any settlement. If that juncture arrives, the Court will analyze the extent of the claims

---

[9]   The Moving AGs also garnered TAPs' agreement to pay the attorneys' fees of their outside counsel.

overlapping and determine the fairness of the proposed settlement.  Of course, if a proposed

settlement proves to be fundamentally unfair, it will be the Court's province to reject it.

Moreover, the Court has announced its intent to protect multiple advocates during any

settlement negotiations.  Paragraph VI of CMO No. 10 provides:

> To protect the integrity of the MDL process, Defendants shall
> notify the Plaintiffs and the Court in writing of any attempts to
> settle any of the claims before this Court in another jurisdiction
> upon commencement of such discussions.  Failure to do so may
> result in injunctive relief, contempt sanctions, and refusal to give
> any judgment preclusive effect.

During the class certification hearing, the Court advised that this paragraph also applies to any

settlement discussions held in this case.  *See* February 10, 2005, Transcript of Class Certification

Hearing, at 84-85 (directing the parties to notify state AGs of pending settlement talks).  Thus, it

is simply untrue, as the Moving AGs argue, that "certification of a class that includes the States'

consumers and TPPs would interfere with the rights of the Attorneys General to conduct

settlement negotiations."  Joint Mem. at 10.  Indeed, class counsel have invited the Moving AGs

to recent mediation sessions, and some (but not these representatives) have accepted the

invitation and participated.

In sum, the Court should not undermine parallel proceedings and establish a precedent

that undercuts private consumer protection enforcement and imposes on AGs obligations that

they may not necessarily desire.  In allowing the actions to proceed "in tandem" and awaiting a

decision of whether to "fish and cut bait," the Court will be furthering the intent of the

legislatures when they established consumer protection regimes marked by the duality of private

and public enforcement mechanisms.[10]

## V.     ADDRESSING OTHER ISSUES RAISED BY THE MOVING AGS

The Moving AGs raise a number of additional arguments that Plaintiffs rebut below.

### A.     Understanding Of Consumer Protection Statutes

While there is no doubt that the AGs possess expertise in litigating the consumer

protection statutes of their respective States, that does not make class counsel unfamiliar with

those statutes.  Indeed, the sole support for the AGs' broad and over-reaching statement is that,

in the TAMCC, Plaintiffs cited to Wis. Stat. §§ 100.20, *et seq.* rather than Wis. Stat.§§ 100.18, *et*

*seq.*  There is no reason to suggest that class counsel's expertise should be judged by what is a

typographic error.  As this Court has already found, class counsel have brought numerous

nationwide class actions and recently spearheaded a successful settlement in *In re Lupron*

*Marketing & Sales Practices Litigation.  See* Memorandum and Order re:  Plaintiffs' Motion for

Class Certification (Aug. 16, 2005) ("Class Cert. Order") at 44.

### B.     The Court Has Not Recognized Any Difficulties In Certifying A Class Of Medicare Part B Beneficiaries Under Different State Consumer Protection Laws

The Moving AGs proceed on the assumption that this Court determined there would be

problems in certifying a national class of consumer Medicare Part B beneficiaries.  Joint Mem. at

4-6.  This premise is false.  The Court did ***not****,* as the Moving AGs represent, "recognize[] the

problem that would be created if it certified a class that included consumers of the litigating

states."  Joint Mem. at 4.  Instead, in analyzing whether common issues would predominate over

individual ones, the Court noted that the differences in state law highlighted by defendants would

---

[10]     It should also go without saying that, in litigation this complex against such well-heeled and powerful defendants, collateral skirmishes such as the instant motion only detract from what should be a unified battle against a common litigation foe.

be largely irrelevant: "in the context of the claims of consumer-patients under Medicare Part B, these variations in legal standards are *unlikely to be material*."  Class Cert. Order at 55 (emphasis added).  Therefore, the Court should reject any suggestions that the Moving AGs are superior because of questions of state law certification.[11, 12]

### C.      The Moving AGs Do Not Have A Lower Burden Of Proof Under Their Consumer Protection Statutes

The Moving AGs claim that their cases are superior because their claims "are broader and do not require proof of intent or reliance."  Joint Mem. at 9.  Although no supporting authority is provided, it is clear that the Moving AGs have no lesser burden of proof under their consumer protection statutes.  *See* IDAHO CODE § 48-606 (not providing for lesser burden of proof); 815 ILCS 505/7 (same); KY. REV. STAT. § 367.190 (same); WIS. STAT. § 100.18 (same).  But more importantly perhaps, the Court has concluded that whether a particular state statute requires proof of reliance is irrelevant because Plaintiffs have alleged that defendants intentionally inflated AWP.  Class Cert. Order at 55-56.

### D.      The States Have No Stronger Interest In Securing Injunctive Relief

The Moving AGs claim that their actions are superior because "the States have a stronger interest in securing injunctive relief."  Joint Mem. at 10.  In making this assertion, the Moving AGs fail to offer any compelling supporting argument, merely stating without more that

---

[11] The Court *did* exclude consumers in Kentucky because there is no right to bring a class action to enforce Kentucky's consumer protection statute.  Class Cert. Order at 54.  *But this only serves to highlight the importance of allowing parallel actions to proceed*.

[12] The Moving AGs also claim that the States themselves, acting in their governmental or proprietary capacity, would be included in the proposed class of MediGap payors (proposed Class 2).  The Moving AGs reach this conclusion based on comparing subtle differences in the language in the proposed order on class certification ("[e]xcluded from these classes are . . . governmental entities") versus the language in the TAMCC ("[e]xcluded from these classes are . . . governmental entities with respect to claims asserted for governmental damages.").  The Moving AGs are seeking to manufacture an issue that simply does not exist.  To be clear, Plaintiffs do not seek to represent the States in their proprietary or governmental capacity period and have repeatedly acknowledged that the attorneys general are the only proper representatives of the States themselves.

"Plaintiffs in this action do not have the same incentive to seek such relief (it is not clear that they even intend to seek it), nor the unique perspective and experience of the Attorneys General in fashioning such relief."  The Moving AGs did not review Plaintiffs' TAMCC very carefully, because it contains a specific count for declaratory relief (Count III), and the Prayer expressly requests the award of injunctive relief.  Furthermore, one is left wondering what "unique" perspective these AGs have.  If they do indeed have a unique perspective on injunctive relief, any such expertise can be considered by the Court in the event that a settlement is reached in this action, regardless of who this Court deems should represent the citizens of their States.

## VI.  ANY POTENTIAL DELAY ASSOCIATED WITH INTERLOCUTORY APPEALS WOULD BE MINOR COMPARED TO THE MOVING AGS' DELAYS IN BRINGING THEIR ACTIONS

The Moving AGs suggest that their actions are superior because this Court's final order on class certification may be appealed.  Joint Mem. at 10.  First, any stay entered pursuant to Fed. R. Civ. P. 23(f) is discretionary and, to date, this Court has not indicated that it intends to stay these proceedings pending an appeal of its class certification order.  (Further, any stay would only be applied to Track 1, where discovery is complete, and not to Track 2.)  Second, the First Circuit already has rejected defendants' appeal of the preliminary class certification order and served notice that it will not lightly entertain another appeal.  Third, any purported delay caused by the entry of a subsequent stay would be minor compared to the delays of these attorneys general in bringing their actions.  Idaho has been "investigating" a possible complaint for nearly a year and has yet to actually file a Complaint.[13]  Illinois did not file until this year,

---

[13]    If it has not done so already, Idaho must provide defendants notice of its intention to file suit.  Under the Idaho Consumer Protection Act, "[u]nless the attorney general finds in writing that the purposes of this chapter will be substantially and materially impaired by delay in instituting legal proceedings, he shall, before initiating any legal proceedings as provided in this section, give notice in writing that such proceedings are contemplated to the person against whom proceedings are contemplated and allow such person a reasonable opportunity to appear before the

Wisconsin filed in 2004, and Kentucky filed its first action in 2003, well after these class actions had substantially advanced.  None of those cases has progressed nearly as far as this case, and the Illinois and Kentucky remain subject to the jurisdictional determination of this Court.[14]

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Moving AGs' motion be denied.

DATED:  January 9, 2006                     By____/s/ Steve W. Berman_____
                                                            Thomas M. Sobol (BBO#471770)
                                                            Edward Notargiacomo (BBO#567636)
                                                      Hagens Berman Sobol Shapiro LLP
                                                      One Main Street, 4th Floor
                                                      Cambridge, MA  02142
                                                      Telephone: (617) 482-3700
                                                      Facsimile: (617) 482-3003

                                                      **LIAISON COUNSEL**

                                                      Steve W. Berman
                                                      Sean R. Matt
                                                      Hagens Berman Sobol Shapiro LLP
                                                      1301 Fifth Avenue, Suite 2900
                                                      Seattle, WA  98101
                                                      Telephone: (206) 623-7292
                                                      Facsimile: (206) 623-0594

                                                      Elizabeth Fegan
                                                      Hagens Berman Sobol Shapiro LLP
                                                      60 W. Randolph Street, Suite 200
                                                      Chicago, IL  60601
                                                      Telephone: (312) 762-9235
                                                      Facsimile: (312) 762-9286

---

attorney general and execute an assurance of voluntary compliance or a consent judgment as in this chapter provided."  IDAHO CODE § 48-606(3).

[14]   On December 28, 2005, the Court entered an electronic order granting the Motion of the States for a hearing on their respective Motions to Remand.  The Hearing has been set for January 27, 2006 at 2:00 p.m.

-13-

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611


Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022


Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**PROPOSED CO-LEAD COUNSEL
FOR PLAINTIFFS**

-14-

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on January 9, 2006, I caused copies of **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE JOINT MEMORANDUM OF THE ATTORNEYS GENERAL OF ILLINOIS, KENTUCKY, WISCONSIN AND IDAHO REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


  **/s/ Steve W. Berman**
Steve W. Berman

-1-