UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
————————————————————————————————  )
                                   )
IN RE: PHARMACEUTICAL INDUSTRY     )
AVERAGE WHOLESALE PRICE            )
LITIGATION                         )
————————————————————————————————  )
                                   )
THIS DOCUMENT RELATES TO:          )
                                   )
                                   )   MDL NO. 1456
County of Erie v. Abbott Laboratories, )   CIVIL ACTION NO.
et al.                             )   01-12257-PBS
                                   )
Civ. Action No. 1:05-CV-11705-PBS )
                                   )
                                   )
————————————————————————————————  )
```

**MEMORANDUM AND ORDER**

January 9, 2006

Saris, U.S.D.J.

**I. INTRODUCTION**

Plaintiff the County of Erie, New York brings this action against seventy-seven pharmaceutical companies, four of which are citizens of New York, alleging the companies violated state law by fraudulently misrepresenting prescription-drug prices. Defendants removed the case from state court to the Western District of New York on the basis of diversity, alleging that the four non-diverse defendants have been "fraudulently misjoined" in order to defeat diversity. Before deciding the motion to remand, the district court transferred the case to this court for inclusion in the Pharmaceutical Industry Average Wholesale Pricing MDL. After review of the briefs, plaintiff's motion to

remand is **ALLOWED**.   The Court **ORDERS** that the case be remanded to
the state court in New York.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises out of the alleged scheme by defendant
pharmaceutical manufacturers to fraudulently and grossly inflate
the prices to consumers of many drugs by misstating the "Average
Wholesale Prices" ("AWPs") of their drugs in industry
publications.   These allegations have engendered an enormous
class action suit and multi-district litigation in this Court.   I
have fully outlined these allegations in earlier orders.   See,
e.g., In re Pharm. Indus. Average Wholesale Price Litig., 230
F.R.D. 61 (D. Mass. 2005); State of Montana v. Abbot Labs., et
al., 266 F. Supp. 2d 250 (D. Mass. 2003).

Plaintiff County of Erie filed a six-count complaint in New
York state court on March 8, 2005, asserting only state law
claims.[1]   Defendants are seventy-seven pharmaceutical
manufacturers, only four of which are citizens of New York.   On
April 15, 2005, the diverse defendants filed a timely notice of
removal to the Western District of New York, alleging that the
court had subject matter jurisdiction based on diversity.   On

---

[1] The complaint alleges six claims under New York law,
including fraud (Count I), violation of New York Social Services
Law § 366-b (Count II), violation of New York Social Services Law
§ 145-b (Count III), violation of New York General Business Law
§ 349 (Count IV), unjust enrichment (Count V), and fraudulent
concealment (Count VI).

April 18, defendant GlaxoSmithKline filed a notice with the
Judicial Panel on Multidistrict Litigation (JPMDL) suggesting the
case be transferred to this court as a "tag-along" to the ongoing
larger MDL.  On May 12, 2005, the JPMDL filed a conditional
transfer order to the MDL court.  On May 13, the plaintiff moved
to remand the case to state court, but the district court stayed
the case pending a final order by the JPMDL.  On August 11, 2005,
the JPMDL issued a final transfer order of the case to this
Court.  Plaintiff's motion to remand remains a live issue.

### III.  DISCUSSION

A civil case, at law or in equity, presenting a controversy
between citizens of different states, and involving the requisite
jurisdictional amount, may be removed from a state court into a
United States District Court by a non-resident defendant.  See 28
U.S.C. § 1441(b).  The district court, of course, must have
subject matter jurisdiction in order for the removed case to
remain in federal court.  The right to remove is "to be
determined according to the plaintiff's pleading at the time of
the petition for removal."  Pullman Co. v. Jenkins, 305 U.S. 534,
537 (1939).  A party seeking to remove a case to federal court
has the burden of demonstrating the existence of federal
jurisdiction.  See, e.g., BIW Deceived v. Local S6, 132 F.3d 824,
831 (1st Cir. 1997).  Furthermore, the removal statute should be
strictly construed, and any doubts about the propriety of removal

should be resolved against the removal of an action.  See, e.g., Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

It is against this backdrop that the Court must examine the removal in this case.  As defendants admit, the Court does not have jurisdiction based on the complete diversity of the parties, which is necessary for subject matter jurisdiction under the diversity statute.  See Caterpillar v. Lewis, 519 U.S. 61, 68 (1996).  Rather, defendants contend that the Court should ignore the citizenship of the non-diverse defendants because they have been fraudulently joined in the action.  If the non-diverse defendants are properly joined, then the Court does not have jurisdiction and the case must be remanded.

Fraudulent joinder provides an exception to the requirement of complete diversity when the plaintiff has joined a non-diverse defendant in bad faith in order to defeat diversity.  See Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 98 (1921)).  Although the First Circuit has not yet provided a standard for addressing an alleged fraudulent joinder, several courts in this District have explored the doctrine, including this Court in Mills, 178 F. Supp. 2d at 4.  See also In re Massachusetts Diet Drug Litig., 338 F. Supp. 2d 198, 202 (D. Mass. 2004) (O'Toole, J.); In re New England Mut. Life Ins. Co. Sales Practices Litig., 324 F. Supp. 2d 288, 298 (D. Mass. 2004)

4

(Keeton, J.).

In a run-of-the-mill fraudulent joinder claim, the defendant argues that the plaintiff cannot assert a colorable claim against the non-diverse defendant, meaning that defendant's only purpose in the case is to defeat diversity.  This notion underlies the Supreme Court's language in Wilson that the right of removal may not be defeated by joinder of a defendant "having no real connection with the controversy."  257 U.S. at 97.  This Court has stated that the "linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact."  Mills, 178 F. Supp. 2d at 4.  In such a case the "burden of establishing that joinder is fraudulent is on the party seeking removal to federal court, and that burden is a heavy one."  Fabiano Shoe Co. v. Black Diamond Equip. Ltd., 41 F. Supp. 2d 70, 71 (D. Mass. 1999).

Defendants' claim in this case, however, is slightly different.  Defendants concede that plaintiffs have alleged a colorable state law claim against all defendants, diverse and non-diverse.  Rather, they argue that the non-diverse defendants have been improperly joined under Federal Rule of Civil Procedure 20(a) or its New York counterpart because plaintiffs' allegations do not arise out of the same transaction, occurrence, or series of transactions or occurrences.  Fed R. Civ. P. 20(a); N.Y. C.P.L.R. § 1002(b).  For support of this doctrine, styled "fraudulent misjoinder," defendants rely on an Eleventh Circuit

case holding that improper joinder under Rule 20(a) may be "so egregious as to constitute fraudulent joinder."  See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000).  The Fifth Circuit appeared to endorse the Tapscott analysis, but only in passing.  See In re Benjamin Moore, 318 F.3d 626, 629 (5th Cir. 2002).  Rather than argue that plaintiffs have joined a defendant against whom they have no claim in order to defeat diversity, defendants here argue that plaintiffs have joined valid but unrelated claims against non-diverse defendants.  No other circuit has squarely endorsed the theory espoused in Tapscott, and the First Circuit has likewise not spoken regarding the existence of a "fraudulent misjoinder" doctrine, nor have any other courts in this district.  Wright, Miller, and Cooper acknowledge the existence of the fraudulent misjoinder doctrine, but they criticize the result in Tapscott as adding "a further level of complexity – and additional litigation – to a federal court's decision regarding removal jurisdiction." 14B Charles Alan Wright, Arthur R. Miller & Edward H Cooper, Federal Practice & Procedure § 3723 (3d ed. 1998).

Whatever the standard might be for fraudulent misjoinder, it is clear that a court must find that there has been a misjoinder of defendants in the first place, and even then that the misjoinder is particularly egregious.  See Tapscott, 77 F.3d at

1360 ("We do not hold that mere misjoinder is fraudulent joinder,
but we do agree . . . that Appellants' attempt to join these
parties is so egregious as to constitute fraudulent joinder.");
Walton v. Tower Loan, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004)
(noting that "for Tapscott to be applicable, this court would be
required to find a level of misjoinder that was not only
improper, but grossly improper").

First, I must decide under which procedural rule to evaluate
the joinder of the non-diverse defendants, the federal rule or
the New York state rule.  Although Tapscott applied the federal
rule without discussion, it makes more sense to assess whether
the parties have been properly joined under the state rule
because plaintiffs were only required to comply with the state
rule when filing the complaint in state court.  See Conk v.
Richards & O'Neill, LLP, 77 F. Supp. 2d 956, 971 (S.D. Ind.
1999); Jamison v. Purdue Pharma Co., 251 F. Supp. 2d 1315, 1321
(S.D. Miss. 2003) ("It makes little sense to say that the
resident [defendant's] joinder became fraudulent only after
removal and only under the federal rule.").  In this case, the
distinction may make little difference because the critical
language is virtually identical in the federal and state rules.
Compare Fed. R. Civ. P. 20(a), with N.Y. C.P.L.R. § 1002(b).

The question then becomes whether the non-diverse defendants
have been misjoined under the New York statute.  N.Y. C.P.L.R
§ 1002(b) states that "Persons against whom there is asserted any

7

right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if any common question of law or fact would arise." Because plaintiffs assert identical claims against all defendants, defendants wisely do not argue against the existence of a common question of law or fact.  Instead, defendants argue that plaintiffs' allegations do not arise out of the "same transaction, occurrence, or series of transactions or occurrence."  The advisory committee note accompanying the statute suggests that most courts "apply the section liberally to allow the joinder."  N.Y. C.P.L.R § 1002(b) advisory committee's note.

Defendants' argument does not hold water.  The allegations against the defendants arise out of the same series of transactions or occurrences.  The complaint alleges a scheme "deliberately concocted by defendants" to falsely report average wholesale drug prices ("AWP's"), which caused Plaintiff Erie County to overpay for the company's pharmaceutical products under the New York state Medicaid program.  AWP's serve as the basis for New York's Medicaid reimbursable rates.  (Compl. ¶ 16.) Because most drugs have similar substitutes or generic equivalents (Compl. ¶5), Plaintiffs also allege that each defendant took other defendants' published prices into account when devising its own prices to increase its market share.

(Compl. ¶¶ 139-142.)  That defendants were not conspiring with one another, but instead competing, does not defeat the allegation that each defendant's liability arises from a connected industry-wide series of transactions or occurrences and complex pricing structure.

A defendant bears a heavy burden in sustaining an allegation of fraudulent joinder.  In a typical fraudulent joinder case, a defendant must "demonstrate by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility the plaintiff can state a cause of action against the non-diverse defendant in state court." Mills, 178 F. Supp. 2d at 5 (quoting Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 207 (2d Cir. 2001)).  Defendants have made no allegation of fraud, and they have certainly not proven that there is no possibility the New York courts would allow the joinder.  See Conk, 77 F. Supp. 2d at 971-72 (ordering remand despite allegation of fraudulent misjoinder if "there is a reasonable possibility that a state court would find [plaintiff's] claims . . . were properly joined").  Accord Jamison, 251 F. Supp. 2d at 1321.  Even if the court were to recognize the "fraudulent misjoinder" doctrine, defendants have not come close to establishing it in this case. Cf. Tapscott, 77 F.3d at 1360 (refusing to remand when the allegations against the diverse defendants and the removing non-diverse defendant were "wholly distinct").  Remand is

appropriate.

That said, this suit, which mirrors the other suits in the
"massive" MDL litigation, involves a complex drug pricing
structure, multiple defendants and millions of documents.  It
makes little sense from the viewpoint of judicial management to
have two massive, duplicative pieces of litigation running in
tandem.  Defendants are free, of course, to seek severance of the
non-diverse New York defendants in state court.  Should the state
court sever the claims against the non-diverse defendants,
complete diversity would then exist, and defendants would have a
second opportunity to remove with respect to the non-diverse
parties.  Several courts and commentators have preferred this
procedure over the "fraudulent misjoinder" approach advocated by
defendants in this case.  See Higginbotham v. State Farm Mut.
Auto. Ins. Co., 2005 U.S. Dist. LEXIS 31701 at *10-11 (N.D. Ind.
2005); Osborn v. Met. Life Ins. Co., 341 F. Supp. 2d 1123, 1127-
28 (E.D. Cal. 2004).  See also Wright, Miller & Cooper, supra, at
§ 3723 (3d ed. 1998).


**ORDER**

The motion to remand (Docket No. 80) is **ALLOWED**.


                                    **S/PATTI B. SARIS**
                                    UNITED STATES DISTRICT JUDGE