

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: Pharmaceutical Industry Average Wholesale Price Litigation | ) MDL No. 1456 <br> ) <br> ) C.A. No. 01-12257-PBS <br> ) |
| This Document Relates to: ALL ACTIONS | ) The Honorable Patti B. Saris <br> ) |

## JOINT MEMORANDUM OF THE ATTORNEYS GENERAL OF ILLINOIS, KENTUCKY, WISCONSIN AND IDAHO REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I. <u>Introduction</u>.

Lisa Madigan, Attorney General of the State of Illinois; Gregory D. Stumbo, Attorney General of the Commonwealth of Kentucky; and Peggy A. Lautenschlager, Attorney General of the State of Wisconsin (hereinafter jointly referred to as "the Attorneys General" or "the States"), respectfully submit this joint memorandum in light of this Court's August 16, 2005 memorandum and order regarding plaintiffs' motion for class certification ("class certification order"). In addition, Lawrence G. Wasden, Attorney General for the State of Idaho, which is currently conducting an AWP investigation but has not filed suit, joins in this memorandum to alert the Court that should Idaho file suit and assert claims seeking relief for Medicare Part B beneficiaries or third-party payors in the state, it would take the same position with regard to the issues presented in this memorandum as the Attorneys General of Illinois, Kentucky, and Wisconsin.

Now that the Court has indicated its intention to certify a nationwide class of Medicare Part B beneficiaries and possibly a nationwide class of certain third-party payors, the question of who is the appropriate person to represent the interests of these consumers -- the Attorneys General or MDL plaintiffs' counsel -- resolution of which this Court previously deferred, now

appears to be ripe. The Attorneys General submit this joint memorandum to again advise the Court that the Attorneys General, rather than plaintiffs' counsel, are the proper persons to represent the interests of the residents of their states.[1]

II. Factual background.

    A. State AWP lawsuits brought by the Attorneys General.

As the Court is aware, the Attorneys General have filed AWP-related lawsuits in their respective state courts on their own behalf and on behalf of certain of their citizens.[2] Like

---

[1] By submitting this memorandum and advising the Court of their position with respect to this issue, the Attorneys General neither intend to, nor do, submit to the jurisdiction of this Court. The Attorneys General retain and do not waive their immunity under the Eleventh Amendment to the U.S. Constitution or under the broader principle of sovereign immunity. *See* memorandum of the Attorneys General of Wisconsin, Illinois, and Kentucky in response to the Court's April 15, 2005 order *In Re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430, a copy of which is attached hereto as Exh. 1.

[2] *The People of the State of Illinois v. Abbott Laboratories, et al.*, No. 05 CH 2474 (Cook County Circuit Court); *Commonwealth of Kentucky v. Abbott Laboratories, Inc.*, No. 03-CI-1134 (Franklin County Circuit Court); *Commonwealth of Kentucky v. Warrick Pharmaceuticals Corp., et al.*, No. 03-CI-1135 (Franklin County Circuit Court); *Commonwealth of Kentucky v. Alpharma, Inc., et al.*, No. 04-CI-1487 (Franklin County Circuit Court); *State of Wisconsin v. Amgen, Inc., et al.*, No. 04-CV-1709 (Dane County Circuit Court). Copies of these complaints were previously submitted to the Court. *See* February 7, 2005 joint memorandum of the Attorneys General of Illinois, Kentucky, Wisconsin, and Idaho regarding plaintiffs' motion for class certification, Exhs. 1-5. We refer to these actions as the "state lawsuits." On or about July 13, 2005, long after the state lawsuits were filed, the defendants removed them to federal court, arguing that the United States Supreme Court's decision in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005), established for the first time that a federal question was present. Additionally, defendants argued that the *Grable* decision constituted an "order or other paper" within the meaning of the federal removal statute, 28 U.S.C. §1446(b), that restarted the 30-day removal clock. Simultaneously, the defendants notified the Judicial Panel on Multidistrict Litigation ("JPML") that it considered these cases to be "tag-along actions" to MDL No. 1456, resulting in the issuance of a conditional transfer order. The States promptly filed motions to remand in federal court, as well as notices of opposition to, and motions to vacate, the conditional transfer order with the JPML. On September 29, 2005, the U.S. District Court for the Western District of Wisconsin granted Wisconsin's motion to remand and ordered defendants to pay the state's costs and attorneys' fees, concluding that the removal was both untimely and substantively without merit. Federal courts in Alabama, Pennsylvania, and Minnesota promptly remanded similar AWP lawsuits filed by those states that had also been removed by defendants on the same grounds. Motions to remand filed by Illinois and Kentucky are still pending
(continued...)

the instant litigation, the lawsuits of the Attorneys General allege that defendants have published phony and inflated AWPs. The Attorneys General allege that this conduct violated their respective state laws and resulted in higher prices for prescription drugs being paid by the States themselves (as payers under the Medicaid program), by the States' citizens who pay for part of the cost of drugs under Part B of the Medicare program, and, with respect to Wisconsin, by private third-party payors domiciled in the state. The Attorneys General assert violations of state law and seek relief that includes restitution for Medicare Part B beneficiaries (and with respect to Wisconsin, private third-party payors) for these excessive payments, as well as civil penalties and forfeitures.

B. <u>Hearing on plaintiffs' motion for class certification</u>.

On or about February 7, 2005, the Attorneys General filed with this Court a joint memorandum regarding the plaintiffs' motion for class certification ("the States' brief") (which is incorporated herein by reference), alerting this Court to the position of the Attorneys General that they, rather than plaintiffs' counsel, were the proper persons to represent the interests of their citizens. The Commonwealth of Pennsylvania also filed a brief taking the same position, in which the State of Ohio joined. Counsel for the States attended the February 10, 2005 hearing regarding plaintiffs' motion for class certification, as did counsel for Pennsylvania.

After hearing argument from the plaintiffs and defendants, the Court asked to hear from the representatives for the State Attorneys General. Pennsylvania Chief Deputy Attorney General Jim Donahue addressed the Court, urging it to carve Pennsylvania consumers out of any class that might be certified. *See* transcript of February 10, 2005 hearing, p. 82. ("...You asked what is a practical way to handle the differences among the state law, the differences in

---

[2] (...continued)
in the respective U.S. District Courts. Also pending are the motions of these States to vacate the JPML's conditional transfer order. The JPML met to consider these motions, without oral argument, on November 17, 2005.

state law, and one practical way is for the Attorney Generals to have brought lawsuits, for those claims to be carved out any class action here. We think that's the most appropriate way. We've outlined why we think that's the case in our brief").

In its colloquy with Mr. Donahue, this Court recognized the problem that would be created if it certified a class that included consumers of the litigating states. Nevertheless, the Court suggested that the state-court litigation should run in tandem with the MDL until a later date and that the Court need not resolve the question of who is the appropriate person to represent the interests of consumers in the litigating states until after it had issued an opinion on the motion for class certification and heard again from the interested parties. The Court suggested, for example, that any class certification order it issued could be amended to carve out consumers of a litigating state. Transcript of February 10, 2005 hearing, at 86 ("I can always amend my class certification. Let's say if I were to certify something and you were to say we want to rectify it, can't I amend it and delete out Pennsylvania?").

C. This Court's August 16, 2005 order regarding class certification.

On August 16, 2005, this Court entered a memorandum and order regarding plaintiffs' motion for class certification, relevant portions of which are summarized below.

1. Medicare Part B beneficiaries.

With regard to the proposed nationwide class of Medicare Part B beneficiaries, the Court found that most, but not all, of the requirements of Fed.R.Civ.P. 23(a) and (b)(3) had been met. First, the Court found that the plaintiff associations lacked standing to serve as class representatives under Rule 23(b)(3). Class certification order, at 41. In addition, the Court found that the third-party payor ("TPP") plaintiffs were not adequate and typical representatives of Medicare Part B beneficiaries. *Id.*, at 42. The Court then proceeded to analyze the remaining requirements of Fed.R.Civ.P. 23(a) and (b)(3) and concluded that they were met.

The Court noted that defendants' primary challenge to class certification was based on the differences in the consumer-protection statutes of the 50 states. *Id.*, at 47. The Court conducted a choice-of-law analysis and concluded that the laws of the home states of the consumers should govern. The Court further noted that defendants had cited to differences in the consumer-protection statutes of the 50 states with regard to: (a) the requirements for establishing reliance; (b) proximate cause; (c) scienter; (d) damages; and (e) statute of limitations. However, because plaintiffs were only pressing the theory that defendants intentionally made fraudulent misrepresentations of AWP and this conduct, if proven, would violate the consumer-protection statutes of all 50 states, the Court concluded that common legal and factual issues predominated over the individual ones. *Id.*, at 55-56.

Accordingly, although the Court declined to certify a nationwide class of Medicare Part B beneficiaries, it gave leave to the plaintiffs to amend their complaint within 60 days to add individual class representatives with standing to sue each defendant. *Id.*, at 43. The only exceptions were consumers of several states, including Kentucky, in which the Court found that there is no right to bring a class action to enforce the consumer-protection statute, *id.*, at 54 ("[c]onsumers in these states may be excluded out of hand"), or states in which plaintiffs have not complied with special notice provisions, *id.*, at 55 ("[u]nless plaintiffs give evidence of compliance with the notice provisions, these states will be excluded"). Illinois and Wisconsin do not fall into this exception. The Court made clear that it intends to certify a class:

> The motion to certify a nationwide class of Medicare Part B beneficiaries is deferred pending plaintiffs' proposed amendment to add individual class representatives. *I will then certify the nationwide class (except in those states where class actions are not authorized or notice was not given) if adequate individual class representatives are found.*

*Id.*, at 88 (emphasis added).

### 2. Third-party payors in the Medicare Part B context.

Plaintiffs also sought to certify a nationwide class of TPPs that pay MediGap supplemental insurance for co-payments made by Medicare Part B beneficiaries. As to this proposed class, the Court found that the numerosity, typicality, and adequacy requirements had been met. *Id.*, at 58-59. Again, defendants challenged class certification on the ground that legal differences among the consumer-protection statutes of the states predominated over common issues. The Court noted that plaintiffs had not examined which statutes permit corporations, unions, or other entities to bring class actions; nor had plaintiffs proposed any feasible groupings of these statutes. Accordingly, the Court denied the motion to certify a nationwide class without prejudice. *Id.*, at 60. The Court did, however, certify a statewide class for Massachusetts. *Id.*

### 3. Third-party payors for physician-administered drugs in the non-Medicare Part B context.

Although the Court found (and defendants did not dispute) that the proposed class of TPPs for physician-administered drugs in the non-Medicare Part B context met the requirements of numerosity, adequacy, typicality, and commonality, *id.*, at 62, the Court agreed with defendants that individual factual and legal issues predominated over common ones. However, the Court did find that predominance was satisfied for a Massachusetts-only class. Unlike its ruling with regard to TPPs in the Medicare Part B context, the Court's denial of class certification for a nationwide class of TPPs for physician-administered drugs in the non-Medicare Part B context appears to be with prejudice.

### D. Plaintiffs' third amended master consolidated class action complaint.

On October 17, 2005, plaintiffs filed a third amended master consolidated class action complaint amended to comply with the Court's class certification order ("third AMCC") and a

proposed consolidated order re: motion for class certification ("plaintiffs' proposed class certification order"). Plaintiffs' proposed classes as defined in ¶553 of the third AMCC and in the proposed class certification order include Medicare Part B beneficiaries in the States of Illinois, Kentucky, and Wisconsin[3] as well as TPPs in Wisconsin in both the Medicare Part B and the non-Medicare Part B context. In addition, to the extent that the States of Illinois, Kentucky, and Wisconsin pay the 20% co-pay for Medicare Part B beneficiaries who are also on Medicaid ("dual eligibles"), the States themselves would fall within the definition of the proposed "third-party payor Medigap supplemental insurance class." And the description of the persons and entities excluded from the classes does not make clear whether Illinois, Kentucky, and Wisconsin (or any other litigating state for that matter) would be excluded from this class. *Compare* proposed order, §III.4 ("[e]xcluded from these classes are...governmental entities") *with* third AMCC, ¶556 ("[e]xcluded from these classes are...governmental entities with respect to claims asserted for governmental damages"). In the latter document, the term "claims asserted for governmental damages" is not defined. In any event, even if plaintiffs were to seek to exclude the States themselves from the proposed classes, such exclusion would not resolve the question of who is the appropriate person to represent the interests of the States' consumers and, with respect to Wisconsin, its TPPs.

III. The Attorneys General are the appropriate persons
    to represent the interests of their consumers.

In light of the above events, it is no longer practical for this litigation and the state litigation brought by the Attorneys General to run in tandem. The Attorneys General, rather than plaintiffs' counsel, are the appropriate persons to represent the interests of their

---

[3] The proposed class certification order only excludes from the proposed Medicare Part B co-pay class residents of the States of Alabama, Georgia, Iowa, Louisiana, Mississippi, and Montana, notwithstanding the fact that the Court also concluded that the consumer-protection statutes of Alaska and Kentucky do not permit class actions.

consumers and TPPs. Accordingly, the Court should not certify a class that includes consumers in Illinois, Kentucky, and Wisconsin or TPPs in Wisconsin.

As the States demonstrated in their previously-filed brief regarding class certification, the primacy of the Attorneys General over plaintiffs' counsel is clearly established by the fact that the Attorneys General are statutorily authorized to enforce the states' consumer-protection laws and obtain relief for their citizens while plaintiffs' counsel are not. This represents a determination of the state legislatures that the Attorneys General are the most appropriate parties to assert the interests of the States' residents when they choose to do so. *See* States' brief, at 3-4.

There are several other reasons why the Attorneys General are better-suited than plaintiffs' counsel to represent the interests of consumers in their states. *First*, the Attorneys General are more familiar with their own consumer-protection statutes. No clearer evidence of this exists than the fact that plaintiffs' counsel rely on an entirely inapplicable statute with respect to Wisconsin residents. The Wisconsin consumer-protection statute is Wis. Stat. §§100.18, *et seq.* Yet in both the third AMCC and their proposed class certification order, plaintiffs' counsel cite Wis. Stat. §§100.20, *et seq.* Clearly, plaintiffs' counsel cannot adequately protect the interests of Wisconsin residents in this matter under the third AMCC as currently drafted.

*Second*, the Attorneys General allege that defendants' misconduct extends to *all drugs* manufactured by each defendant, while plaintiffs' counsel in the MDL only seek relief with respect to a limited number of drugs.

*Third*, the Attorneys General assert claims under statutes besides their consumer-protection statutes.[4] Accordingly, the claims of the Attorneys General are broader than those in the third AMCC.

*Fourth*, unlike plaintiffs' counsel in this case, the Attorneys General have not limited their theory of recovery under their consumer-protection statutes to intentional fraudulent misrepresentation of AWPs. Rather, the claims of the Attorneys General are broader and do not require proof of intent or reliance. Accordingly, the Attorneys General are much more likely to establish liability under their statutes.

*Fifth*, the state lawsuits are different than typical civil lawsuits in that they constitute enforcement actions by the States. Indeed, civil penalties are available to the States that are not available to private litigants, *see* States' brief, at 4, a fact which plaintiffs' counsel conceded in *In Re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430, in which they represent the plaintiff settlement class. *See* MDL plaintiffs' response regarding purported "exclusions" by Idaho, Illinois, Kentucky, Wisconsin, Minnesota, and Pennsylvania (a copy of which is attached hereto as Exh. 2), at 12 ("...[p]laintiffs recognize that Attorneys General may have additional claims which the plaintiffs could not and do not purport to release. For example, some Attorneys General possess the power to seek injunctive relief and civil penalties pursuant to statute and their general police powers.... [P]rivate lawsuits could not compromise such a law...").

---

[4] Illinois asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§505/2 and 505/2-CC; the Illinois Public Assistance Fraud Act, 305 ILCS §5/8A-7(b); and the Illinois Whistleblower Reward and Protection Act, 740 ILCS §175/1, *et seq.*

Kentucky asserts claims under the Kentucky Consumer Protection Act, KRS 367.170; the Kentucky Medicaid Fraud statute, KRS 205.8463; the Kentucky False Advertising statute, KRS 517.030; common-law fraud; and negligent misrepresentation.

Wisconsin asserts claims under its statute prohibiting fraudulent representations, Wis. Stat. §§100.18(1) and 10(b); the Wisconsin Trust and Monopolies Act, Wis. Stat. §133.05; the Wisconsin Medical Assistance Fraud statute, Wis. Stat. §49.49(4m)(a)(2); and under a theory of unjust enrichment.

*Sixth*, the States have a stronger interest in securing injunctive relief to ensure that defendants comply with the law prospectively, relief that is noticeably absent from the resolution of the *Lupron* litigation in MDL No. 1430 because plaintiffs' counsel never sought it. Plaintiffs in this action do not have the same incentive to seek such relief (it is not clear that they even intend to seek it), nor the unique perspective and experience of the Attorneys General in fashioning such relief.

*Seventh*, as this Court has already recognized, any class certification order is certain to be appealed by one or both sides. *See* transcript of February 10, 2005 hearing, at 84 ("I'm sort of assuming that when I decide whether to certify or not certify a class or certify a part and not another part, as soon as I do that, there are going to be at least one, maybe two notices of appeal filed"). It is the States' understanding that cross-appeals have in fact been filed. Such appeals could be accompanied by a stay of district court proceedings (see Fed.R.Civ.P. 23(f)), causing delay that would harm the States' consumers.

*Eighth*, certification of a class that includes the States' consumers and TPPs would interfere with the rights of the Attorneys General to conduct settlement negotiations. The Attorneys General reach this unfortunate conclusion in light of the conduct of plaintiffs' counsel in *In Re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430. Notwithstanding the fact that the Attorneys General were engaged in discussions with plaintiffs' counsel regarding the very issue now before this Court -- whether the Attorneys General or plaintiffs' counsel were the appropriate persons to represent the interests of consumers -- plaintiffs' counsel not only engaged in settlement negotiations with the defendants in that action *without providing the States with notice or an invitation to participate*, but entered into a settlement agreement that sought to bind the States by defining the settlement class to include them. This conduct alone demonstrates the need for this Court to determine now that the Attorneys General, and only the Attorneys General, represent the interests of their residents. Additionally, there is presently confusion among the defendants as to who has settlement authority with respect to claims seeking relief for consumers and TPPs of the litigating states. This confusion provides fertile ground for defendants to encourage a

reverse auction, *i.e.*, attempt to settle with the attorneys who agree to settle most cheaply, and engage in other mischief with regard to settlement.

## CONCLUSION

For the above reasons, this Court should not certify any class that includes: (1) consumers in the States of Illinois, Kentucky, and Wisconsin; (2) third-party payors in the State of Wisconsin; and (3) the States of Illinois, Kentucky, and Wisconsin.

Dated: November 21, 2005

Respectfully submitted,

LISA MADIGAN
Attorney General of the State of Illinois

GREGORY D. STUMBO
Attorney General of the Commonwealth of Kentucky

PEGGY A. LAUTENSCHLAGER
Attorney General of the State of Wisconsin

LAWRENCE G. WASDEN
Attorney General for the State of Idaho

By: /s/ Robert S. Libman

ROBERT S. LIBMAN
Special Assistant Attorney General
for the States of Illinois, Kentucky,
Wisconsin and Idaho

Miner, Barnhill & Galland
14 W. Erie St.
Chicago, IL 60610
(312) 751-1170
(312) 751-0438 (telefax)