UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re:  Lupron® Marketing and Sales Practices Litigation | ) ) ) ) | MDL No. 1430 File No. 01-CV-10861 |
| This Document Relates to:  ALL ACTIONS | ) ) ) | Judge Richard G. Stearns |

## MEMORANDUM OF THE ATTORNEYS GENERAL OF WISCONSIN, ILLINOIS AND KENTUCKY IN RESPONSE TO THE COURT'S APRIL 15, 2005 ORDER

Peggy A. Lautenschlager, Attorney General of the State of Wisconsin, Lisa Madigan, Attorney General of the State of Illinois, and Gregory D. Stumbo, Attorney General of the Commonwealth of Kentucky, (hereinafter jointly referred to as "the Attorneys General"), respectfully submit this joint response to the Court's April 15, 2005 Order.

As the Court is aware, the present case was filed by private parties against the defendants seeking among other things a settlement extinguishing the claims of the sovereign States of Wisconsin, Illinois and Kentucky.  These States have previously informed this Court that they respectfully decline the opportunity to participate in this settlement and object to the jurisdiction of this Court over them and their claims which are presently pending in their respective state courts.  Therefore, both the Eleventh Amendment and the broader principle of sovereign immunity preclude this Court from asserting its authority over the States of Wisconsin, Illinois and Kentucky in any way including, but not limited to, ruling that their attempts to exclude themselves from the settlement were insufficient or defining their claims against the defendants in a restrictive manner.



I.      **The Eleventh Amendment Bars This Court From Taking Any Action Against These Three States.**

The Eleventh Amendment precludes United States District Courts from exerting authority over Wisconsin, Illinois and Kentucky by any means. That Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." The case of *State of Missouri v. Fiske*, 290 U.S. 18 (1933) makes it clear that this means that a federal district court is prohibited from enforcing virtually any decree of any kind against a state.[1]  There the plaintiffs secured an order in federal district court enjoining the State of Missouri from prosecuting certain proceedings in probate court on the ground that doing so interfered with the jurisdiction of the federal court (a fact pattern remarkably similar to that presented here). The Supreme Court, invoking the Eleventh Amendment, held that the district court had no power to issue such an injunction. "The entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given." 290 U.S. at 26. The Court went on to explain that this prohibition extended broadly, enveloping any claim "or demand in a court of justice." *Id.*

It mattered not at all that the injunction was needed to protect the jurisdiction of the federal court or that the suit was in rem, not in personam:

> The question, then, is whether the purpose to protect the jurisdiction of the federal court, and to maintain its decree against the proceeding of the state in the state court, removes the suit from the application of the Eleventh Amendment. No warrant is found for such a limitation of its terms. The exercise of the judicial power cannot be protected by judicial action which the Constitution specifically provides is beyond the judicial power. The fact that a suit in a federal court is in rem, or quasi in rem, furnishes no ground for the issue of process against a

---

[1] The one identifiable exception to this rule is described in *Frew v. Hawkins*, 540 U.S. 431 (2004) a case based on the existence of a consent decree in federal court. That case has no relevance here.

> nonconsenting state. But, when the state does not come in and withholds its
> consent, the court has no authority to issue process against the state to compel it to
> subject itself to the court's judgment, whatever the nature of the suit.

*Fiske, supra*, at 27-28.

*Fiske* applies in all judicial contexts. *See, Moore ex rel. State of Miss. v. Abbott*

Laboratories, 900 F. Supp. 26, 30 (S.D. Miss. 1995):

> However, since the immunity granted by the Eleventh Amendment is an
> immunity from being made an involuntary party to an action in federal court, it
> should apply equally to the case where the state is a plaintiff in an action
> commenced in state court and the action is removed to federal court by the
> defendant.

*See also California v. Steelcase, Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992). As the Eighth Circuit

explained, the Eleventh Amendment protects against the involuntary coercion of any sort:

"[C]oncern and respect for state sovereignty are implicated whenever a state is involuntarily

subjected to an action, regardless of the role it is forced to play in the litigation." *Thomas v. FAG*

*Bearings Corp.*, 50 F.3d 502, 506 (8th Cir. 1995). In sum, the Eleventh Amendment precludes

this Court from entering any orders affecting the rights of these three States.

**II.      The States of Wisconsin, Illinois and Kentucky Are Immune As Sovereigns
         From Any Orders Emanating From This Case.**

Not only are Wisconsin, Illinois and Kentucky protected by the Eleventh Amendment but

they are also shielded from this Court's jurisdiction by the broader principle of sovereign

immunity. The doctrine of sovereign immunity in its simplest form holds that private citizens

may not sue a state. The seminal case announcing this proposition is *Hans v. Louisiana*, 134

U.S. 1 (1890). Since *Hans*, and particularly recently, the doctrine of sovereign immunity has

been applied so as to bar every kind of judicial or administrative action brought against a state by

a private citizen. The Supreme Court summarized theses holdings as follows:

> For purposes of this case, we will assume, *arguendo,* that in adjudicating
> complaints filed by private parties under the Shipping Act, the FMC does not
> exercise the judicial power of the United States. Such an assumption, however,
> does not end our inquiry as this Court has repeatedly held that the sovereign
> immunity enjoyed by the States extends beyond the literal text of the Eleventh
> Amendment. *See, e.g., Alden, supra* (holding that sovereign immunity shields
> States from private suits in state courts pursuant to federal causes of action);
> *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578 (1991)
> (applying state sovereign immunity to suits by Indian tribes); *Principality of
> Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934)
> (applying state sovereign immunity to suits by foreign nations); *Ex parte New
> York* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) (applying state sovereign
> immunity to admiralty proceedings); *Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919,
> 44 L.Ed. 1140 (1900) (applying state sovereign immunity to suits by federal
> corporations); *Hans v. Louisana,* 134 U.S. 1, 10 S.Ct. 504 33 L.Ed. 842 (1890)
> (applying state sovereign immunity to suits by a State's own citizens under
> federal-question jurisdiction).

*Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 754

(2002)(footnote omitted).[2]

"The preeminent purpose of state sovereign immunity is to accord States the dignity that

is consistent with their status as sovereign entities." *Federal Maritime Commission v. South

Carolina State Ports,* 535 U.S.743, 760 (2002). Thus, states are immune from any kind of

process in any forum:

> While state sovereign immunity serves the important function of shielding state
> treasuries and thus preserving "the States' ability to govern in accordance with the
> will of their citizens," *Alden, supra,* at 750-751, 119 S.Ct. 2240, the doctrine's
> central purpose is to "accord the States the respect owed them as" joint
> sovereigns. See *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy,
> Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); see Part III-C,
> *supra.* It is for this reason, for instance, that sovereign immunity applies
> regardless of whether a private plaintiff's suit is for monetary damages or some
> other type of relief. See *Seminole Tribe,* 517 U.S., at 58, 116 S.Ct. 1114 ("[W]e
> have often made it clear that the relief sought by a plaintiff suing a State is
> irrelevant to the question whether the suit is barred by the Eleventh
> Amendment"). Sovereign immunity does not merely constitute a defense to

---

[2] The overlap of the law on the Eleventh Amendment and sovereign immunity is a result of the fact that the Supreme Court has now overruled the case of *Chisholm v. Georgia,* 2 Dall. 419, 1 L.Ed. 440 (1793) which permitted states to be sued which, in turn, led to the prompt passage of the Eleventh Amendment. *See, Alden v. Maine,* 527 U.S. 706, 721-22 (1999).

monetary liability or even to all types of liability.  Rather, it provides immunity from suit."

*Federal Maritime Commission, supra*, 535 U.S. at 765-66.

> [The Supreme Court has ] recognized only two circumstances in which an individual may sue a State.  First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).  Second, a State may waive its sovereign immunity by consenting to suit.  *Clark v. Barnard*, 108 U.S. 436, 447-448, 2 S.Ct. 878, 27 L.Ed. 780 (1883).

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S.

666, 670, 119 S.Ct. 2219, 2223 (1999).

The Fourteenth Amendment is not relevant to this case, there has been no explicit waiver of immunity by these three States, and there is no such thing as a constructive or implied waiver of State sovereignty.  *See, e.g., College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 675 et seq.  Thus, once the States of Wisconsin, Illinois and Kentucky announced that they had no interest in these proceedings—however they chose to make this announcement—the Court was without jurisdiction to enter any order affecting their rights.

**III.     The Case Of *In re Baldwin-United Corporation* Does Not Authorize The Court To Disregard The Sovereign Immunity Of Wisconsin, Illinois And Kentucky.**

The defendants ask the Court to bind the states of Wisconsin, Illinois and Kentucky to the class action settlement, and/or define the claims of these States in such a way as to limit their ability to seek certain kinds of relief, and enjoin the States from pursuing the relief the Court finds inappropriate.  This obvious intrusion in the affairs of these States is inconsistent with their sovereign immunity.  To justify this otherwise prohibited intrusion the defendants rely almost

exclusively on the case of *In re Baldwin-United Corporation*, 770 F.2d 328 (2d Cir. 1985).

Defendants' reliance on this case is misplaced.

The foundation of *In re Baldwin-United*—and its sole rationale for avoiding the doctrine

of sovereign immunity—was the concession by the involved States that they were asserting only

the personal claims of their citizens: "To start with, when the state merely asserts the personal

claims of its citizens, it is not the real party in interest and cannot claim parens patriae standing."

*In re Baldwin-United, supra*, 770 F.2d at 341.

Here, however, the States are real parties in interest. A federal court has already so ruled

and that decision was manifestly correct.

The defendants in Wisconsin's case against the drug manufacturers, including defendants

here, sought removal on the grounds of diversity arguing that since Wisconsin was suing not

only on its own behalf, but also on behalf of its citizens in connection with certain requested

relief, Wisconsin was not the real party in interest and, hence, the court was required to look to

the residency of Wisconsin's citizens, all of which, so the argument ran, were diverse from all

the defendants. Judge Crabb rejected this characterization of Wisconsin's interest. Judge Crabb

concluded:

> Thus, viewing the complaint as a whole, I am persuaded that plaintiff has a
> "substantial stake" in the outcome of this case. Four of the five claims in this case
> were brought by the Attorney General pursuant to specific statutory authority.
> *See Moore*, 900 F. Supp. at 31. In addition to damages for the private parties who
> allegedly overpaid for defendants' drugs, plaintiff seeks injunctive relief on four
> of the five claims. This type of prospective relief goes beyond addressing the
> claims of previously injured organizations or individuals. It is aimed at securing
> an honest marketplace, promoting proper business practices, protecting Wisconsin
> consumers and advancing plaintiff's interest in the economic well-being of its
> residents. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592,
> 607 (1982) (discussing state interests enforceable through *parens partriae*
> actions); *State of Missouri ex rel. Webster*, 727 F. Supp at 1317; *Kelley*, 442 F.
> Supp. at 356-57 ("some of the most basic of a state's quasi-sovereign interests
> include maintenance of the integrity of markets and exchanges operating within

6

> its boundaries, protection of its citizens from fraudulent and deceptive practices,
> support for the general welfare of its residents and its economy, and prevention of
> its citizens' revenues from being wrongfully extracted from the state."). The fact
> that private parties may benefit monetarily from a favorable resolution of this case
> does not minimize or negate plaintiff's substantial interest. *State of Alabama ex
> rel. Galanos v. Star Service & Petroleum Co.*, 616 F. Supp. 429, 431 (S.D. Ala.
> 1985) ("[w]hether other parties will benefit from this action does not affect the
> state's valid interest in enforcing this statutory scheme"); *State of New York*, 547
> F. Supp. at 706-07. In sum, I conclude that the state of Wisconsin is the real party
> in interest in this litigation. Consequently, this court does not have jurisdiction
> over this case under 28 U.S.C. §1332.

Opinion and Order of Judge Crabb, dated 10/05/04, at pgs. 11-12 (decision attached.)

Judge Crabb's finding that Wisconsin is the real party in interest, and that the Federal

Court has no jurisdiction over Wisconsin, disposes of defendants' contrary claim here.[3]

Moreover, Judge Crabb's decision was consistent with virtually all the case law on the issue.

No case has ever held—or even come close to holding—that a state, seeking

compensation for damages done to it directly, is stripped of its sovereignty if it also seeks relief

for its citizens. Indeed, the case law holds just the opposite.

See, for example, *Moore ex rel. State of Miss. v. Abbott Laboratories, Inc.*, 900 F.Supp.

26 (S.D. Miss. 1995), where the Mississippi Attorney General brought an action against

pharmaceutical manufacturers of infant formula. The Attorney General claimed that the

defendants' unlawful actions had the effect of requiring the citizens of the State to pay artificially

high prices for infant formula, and similarly affected the State through its purchases under the

Mississippi Women, Infants and Children (WIC) Program. 900 F. Supp. at 29.

The defendants removed the case, claiming the existence of diversity jurisdiction. They

asserted that "the Attorney General is acting as the nominal party for a group of lawyers who

want to mask what is in fact a private class action on behalf of Mississippi consumers of infant

---

[3] The Kentucky and Illinois lawsuits are based on almost identical claims. They too were filed in state court and raise no federal question.

formula . . . ." *Id.* at 31. The defendants further asserted that the Attorney General's non-*parens patriae* claims were fraudulently joined to defeat diversity jurisdiction, and that accordingly the State of Mississippi was not a real party in interest. *Id.*

The court held that since the attorney general was statutorily authorized to seek penalties in the name of the State for violations of antitrust law, the State was the real party in interest regardless of the status of the *parens patriae* claims. *Id.* The court further held that the *parens patriae* claims were not fraudulently joined nor were they "separate and independent" from the "nonremovable" claims. *Id.* at 32.

The court's analysis in *Moore* applies even where a State's interest is non-pecuniary. In *State of N.Y. by Abrams v. General Motors Corp.*, 547 F. Supp. 703 (S.D.N.Y. 1982), General Motors sought to remove on diversity grounds a lawsuit brought by New York on behalf of its citizens who had purchased General Motors cars. GM argued that the State's interest was purely derivative, and hence the State was a nominal party. The court rejected this argument noting that New York sought injunctive relief to preclude future misconduct, holding: "The State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest." 547 F. Supp. at 705-06 (citing *Kelly v. Carr*, 442 F. Supp. 346, 356-57 (W.D. Mich. 1977) ("surely some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries, (and) protection of its citizens from fraudulent and deceptive practices")). "As such, [this quasi-sovereign interest] is sufficient to preclude characterizing the state as a nominal party without any real interest in the outcome of this lawsuit." *Id.* at 706. See the many cases supporting this proposition cited therein and, *State of Missouri v. Freedom Financial Corporation*, 727 F. Supp. 1313 (W.D. Mo. 1989).

8

And in *State of Ala. ex rel. Galanos v. Star Service & Petroleum Co., Inc.*, 616 F. Supp. 429 (S.D. Ala. 1985), the court held that the possibility that a citizen (there a county) would recover a penalty in a suit brought by the State did not create diversity for jurisdiction purposes. 616 F. Supp. at 431. The court rejected the argument that the County of Mobile, which was a citizen for diversity purposes, was the real party because any funds recovered went to it. The court held that the possibility that a citizen could recover a penalty did "not vitiate the state's interest as *parens patriae.*" *Id.* The state had a real interest in the controversy—"preventing unfair or dishonest competition"—and thus was the real party in interest. *Id.*

These holdings are consistent with the Supreme Court holding in *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982), that "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." 458 U.S. at 607.

Here, of course, the States' position as the real party in interest is even stronger than the cases outlined above, for here the States have forsworn any claim other than those claims which the States themselves possess. (It is for a court of competent jurisdiction to decide what those claims are.) In such a context, there can be no question that the States of Kentucky, Wisconsin and Illinois are the real parties in interest and immune from the jurisdiction of this Court.

## CONCLUSION

The States of Wisconsin, Illinois and Kentucky continue to assert their immunity from this Court's jurisdiction.

Dated this 28th day of April, 2005.

Respectfully submitted,

PEGGY A. LAUTENSCHLAGER
Attorney General of the State of Wisconsin

9

LISA MADIGAN
Attorney General of the State of Illinois

GREGORY D. STUMBO
Attorney General of the Commonwealth of
Kentucky

By: _____

CHARLES BARNHILL
Special Assistant Attorney General
for the States of Wisconsin, Illinois and
Kentucky

Miner, Barnhill & Galland
44 East Mifflin Street; Suite 803
Madison WI 53703
(608) 255-5200
(608) 255-5380 (facsimile)

10

## IN THE UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN,

                                          OPINION and
                                          ORDER

             Plaintiff,

                                          04-C-0477-C

       v.

ABBOTT LABORATORIES, AMGEN, INC.,
ASTRAZENECA PHARMACEUTICALS, LP,
ASTRAZENECA, LP, AVENTIS
PHARMACEUTICALS, INC., AVENTIS
BEHRING, LLC., BAXTER INTERNATIONAL, INC.,
BAYER CORPORATION, BOEHRINGER INGELHEIM
CORPORATION, BRISTOL-MYERS SQUIBB CO.,
DEY, INC., FUJISAWA HEALTHCARE, INC.,
GENSIA SICOR PHARMACEUTICALS, INC.,
GLAXOSMITHKLINE, INC., JOHNSON &
JOHNSON, INC., PFIZER, INC., PHARMACIA,
SCHERING-PLOUGH CORPORATION,
TAP PHARMACEUTICAL PRODUCTS, INC.,
WATSON PHARMACEUTICALS, INC.,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a suit for monetary and injunctive relief filed by the State of Wisconsin against

twenty pharmaceutical manufacturers. Plaintiff alleges that defendants inflated the average

wholesale prices of their drugs, thereby violating several provisions of Wisconsin law. The

1

A copy of this document
has been mailed to the following:

All counsel
record

this 6th day of October, 2004 by
S. Vogel, Secretary to Judge Crabb

10-5

case was originally filed in the Circuit Court for Dane County. On July 14, 2004, defendant

Bayer Corporation filed a notice of removal with this court, asserting that this court had

jurisdiction over this case under the diversity statute, 28 U.S.C. § 1332. All of the other

defendants filed consents to the removal, with the exception of defendant Gensia Sicor

Pharmaceuticals, Inc., which did not file its consent until July 27, 2004, one day after

plaintiff filed its motion to remand. In its motion, plaintiff also requested an award of costs

and attorney fees incurred as a result of the removal. In an order dated September 9, 2004,

I lifted a previously entered stay on the briefing regarding plaintiff's motion to remand.

Defendants have submitted a brief in opposition and I am ready to rule on plaintiff's

motion. After reviewing the arguments submitted by the parties, I conclude that removal

of this case was improper because this court lacks subject matter jurisdiction over the case.

Therefore, I will grant plaintiff's motion to remand. In addition, I will grant plaintiff's

request for costs and attorney fees.

## FACTS

Plaintiff State of Wisconsin, through its Attorney General Peggy A. Lautenschlager,

filed its complaint in the Circuit Court for Dane County, Wisconsin, on June 3, 2004.

Plaintiff's complaint consists of five counts arising from defendants' alleged practice of

"publishing false and inflated prices for their drugs." Cpt. ¶ 1. Plaintiff brought this action

"on behalf of itself, its citizens, and Wisconsin organizations (those that pay the prescription drug costs of their members, hereinafter 'private payers'), who have paid inflated prices for defendants' prescription drugs as a result of defendants' unlawful conduct." Cpt. ¶ 2.

Plaintiff alleges that defendants' alleged inflation of drug prices caused harm to the state, Wisconsin citizens, and certain private, Wisconsin-based organizations. First, plaintiff alleges that defendants' conduct caused the state to overpay for the drugs it purchases through its Medicaid program. Second, plaintiff alleges that Wisconsin Medicare Part B participants, primarily disabled and elderly citizens, were forced to pay higher co-pays for their prescription drugs than they would if defendants had published the actual drug prices. Third, plaintiff alleges that private, Wisconsin-based organizations that pay the prescription drug costs of their members overpaid for prescription drugs. Cpt. ¶ 52.

The complaint consists of five counts, all arising under Wisconsin law. Counts I and II allege violations of Wis. Stat. §§ 100.18(1) and 100.18(10)(b), which prohibit making false representations with the intent to sell merchandise. Count III alleges a violation of the Wisconsin Trust and Monopolies Act, Wis. Stat. § 133.05. Count IV alleges a claim for fraud on the Wisconsin Medicaid Program, Wis. Stat. § 49.49(4m)(a)(2). Count V states a common law claim for unjust enrichment.

Plaintiff seeks several forms of relief. With respect to Counts I and II, plaintiff seeks injunctive relief, civil forfeitures and restitution to the state programs, private citizens, and

3

other private payers harmed by defendants' actions. On Count III, plaintiff seeks injunctive relief, civil forfeitures and treble damages for the state and those injured by defendants' conduct. With respect to Count IV, plaintiff seeks civil forfeitures and remedial damages. For Count V, plaintiff seeks injunctive relief and disgorgement of all profits realized as a result of defendants' unlawful conduct.

## DISCUSSION

### A. Jurisdiction

Initially, I note that on August 3, 2004, the Clerk of the Judicial Panel on Multidistrict Litigation issued a conditional transfer order transferring this case to the District of Massachusetts for consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407. However, Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation states that the existence of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Thus, the court has jurisdiction to rule on plaintiff's motion.

### B. Standard of Review

Although plaintiff has requested this court to remand the case, defendants bear the

4

burden of proving that this court has subject matter jurisdiction because they removed the case to federal court. Tykla v. Gerber Products Co., 211 F.3d 445, 448 (7th Cir. 2000). To meet this burden, defendants must support their allegations of jurisdiction with evidence indicating a "reasonable probability that jurisdiction exists." Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F.3d 424, 427 (7th Cir. 1997). The existence of jurisdiction is determined as of the date of removal. Sirotzky v. New York Stock Exchange, 347 F.3d 985, 988 (7th Cir. 2003). Also, in determining whether removal was proper, a district court must construe the removal statute, 28 U.S.C. § 1441, narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. See Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); People of the State of Illinois v. Kerr-McGee Corp., 677 F.2d 571, 576 (7th Cir. 1982).

Plaintiff argues that removal of this case was improper for three reasons. First, there is no diversity jurisdiction in this case because the state of Wisconsin is the real party in interest. Second, the Eleventh Amendment bars removal of this case. Third, removal was improper because one of the defendants, Gensia Sicor Pharmaceuticals, did not file a timely consent to the notice of removal. I agree that the state of Wisconsin is the real party in interest and that this court does not have diversity jurisdiction over the case. Because my agreement with plaintiff's first argument is sufficient to decide this motion, I express no opinion on plaintiff's arguments regarding the Eleventh Amendment and failure to file a

5

timely consent.

## C. Real Party in Interest

The removal statute, 28 U.S.C. § 1441, states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." In its notice of removal, defendant Bayer Corporation alleged that this court had original jurisdiction over this case by way of diversity. Diversity jurisdiction requires that the parties be citizens of different states and the dispute between them exceed $75,000. 28 U.S.C. §1332.

It is well settled that a state is not a citizen for diversity purposes. Indiana Port Comm'n v. Bethlehem Steel Corp., 702 F.2d 107, 109 (7th Cir. 1983) (citing Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482 (1891)). However, in determining whether diversity jurisdiction exists, courts must look beyond the named parties and consider the citizenship of the real parties in interest. Navarro Savings Assn. v. Lee, 446 U.S. 458, 460 (1980); CCC Information Services, 230 F.3d at 346. The focus of the "real party in interest" inquiry is on "the essential nature and effect of the proceedings." Adden v. Middlebrooks, 688 F.2d 1147, 1150 (7th Cir. 1982) (citing Ex parte New York, 256 U.S. 490, 500 (1921)). The court must determine whether plaintiff has "a substantial stake in

6

the outcome of the case." State of West Virginia v. Morgan Stanley & Co. Inc., 747 F. Supp. 332, 337 (S.D. W. Va. 1990) (internal citations and quotations omitted).

Defendants propose to split the claims in plaintiff's complaint into two groups: those brought on behalf of the state and those brought on behalf of private citizens and organizations in Wisconsin. Defendants concede that plaintiff has an interest in the claims brought on behalf of the state but argue that with respect to the claims brought on behalf of private parties, those private parties are the true parties in interest because the relief requested will go directly to them. Therefore, defendants argue, the citizenship of those parties is relevant for diversity purposes. Defendants then argue that the claims brought on behalf of several large Wisconsin-based health insurers meet § 1332(a)(1)'s diversity and amount in controversy requirements. Thus, the court has diversity jurisdiction over those claims and supplemental jurisdiction over all other claims in plaintiff's complaint pursuant to 28 U.S.C. § 1367.

In support of their arguments, defendants cite State of Connecticut v. Levi Strauss & Co., 471 F. Supp. 363 (D. Conn. 1979). In that case, Connecticut brought suit under its enforcement capacity and as *parens patriae* against the defendant under the state's antitrust statute. The defendant removed the case to federal court and the state sought remand. In analyzing whether diversity jurisdiction existed, the court began by noting that the state was seeking "several types of monetary awards, and . . . in different capacities." Id. at 370.

7

Specifically, the state had requested (1) recovery of allegedly unlawful overcharges incurred by Connecticut citizens, to be distributed to the affected individuals where possible but otherwise to be kept by the state; (2) a statutorily authorized civil penalty; and (3) attorney fees. Id. The court concluded that, insofar as the state was seeking monetary relief for "identifiable purchasers, the citizen status of the purchasers rather than the sovereign status of their benefactor controls for diversity purposes." Id. at 371.

Plaintiff argues that this court should not apply the reasoning in Levi Strauss to this case. Plaintiff argues that it is the real party in interest in this case when the case is viewed as a whole. First, Counts I-IV in the complaint (the two consumer fraud claims, the secret rebates claim and the Medicaid fraud claim) are brought pursuant to the state's law enforcement authority. See Wis. Stat. § 100.18 (11)(d) (authorizing Department of Justice to bring suit in name of state to enjoin violation of consumer fraud statute); § 133.16 (authorizing Department of Justice to bring suit to prevent or restrain violations of antitrust statute); § 49.495 (giving Department of Justice authority to prosecute violations of laws affecting medical assistance programs). Second, a state is not stripped of its sovereignty merely because it seeks relief on behalf of its citizens in addition to relief for harm done to the state itself. In support of this argument, plaintiff cites Moore v. Abbott Laboratories, Inc., 900 F. Supp. 26 (S.D. Miss. 1995) and State of New York v. General Motors Corp., 547 F. Supp. 703 (S.D.N.Y. 1982).

8

In <u>Moore</u>, 900 F. Supp. at 28-29, the Mississippi Attorney General filed suit against three pharmaceutical companies, alleging violations of the state's antitrust and consumer fraud statutes. The attorney general alleged that the defendants agreed to fix the wholesale price of infant formula sold in the state, thereby injuring private citizen consumers and the state, which purchased infant formula pursuant to a welfare program. The attorney general filed the suit on behalf of the state and as *parens patriae* on behalf of injured Mississippi citizens. The defendants removed the case to federal court, arguing that the real parties in interest were the private individuals who had purchased the formula. The court disagreed, ruling that the state was the real party in interest because the attorney general was suing under his statutory authority to bring suit for violations of the antitrust statute. <u>Id.</u> at 31.

In <u>State of New York</u>, 547 F. Supp. at 704, the New York Attorney General sued General Motors after receiving consumer complaints about alleged defects in one of the transmissions used in GM automobiles. The state sought several forms of injunctive relief and restitution to the injured consumers. General Motors removed the case to federal court, arguing that the state was merely a nominal party and that the real parties in interest were the allegedly defrauded consumers. The district court remanded the case primarily because of the wide-ranging injunctive relief sought by the state. <u>Id.</u> at 707. The court noted that the state had a "quasi-sovereign interest" in securing an honest marketplace that "preclude[d] characterizing the state as a nominal party without a real interest in the

9

outcome of this lawsuit." Id. at 705-06 (citing Kelley v. Carr, 442 F. Supp. 346, 356-57

(W.D. Mich. 1977)). The court continued by stating that

> This conclusion is not altered by the State's decision to seek restitutionary relief and
> damages on behalf of those who allegedly have been defrauded by GM. Recovery of
> damages for aggrieved consumers is but one aspect of the case. The focus is on
> obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-
> sovereign interest in securing an honest marketplace for all consumers. That recovery
> on behalf of an identifiable group is also sought should not require this Court to
> ignore the primary purpose of the action and to characterize it as one brought solely
> for the benefit of a few private parties.

Id. at 706-07.

In the present case, defendants' arguments appear to rest on a basic misunderstanding

of the court's inquiry when faced with a real party in interest question. Defendants argue

that the complaint should be split initially into two groups: claims made on behalf of private

entities and claims made on behalf of the state. According to defendants, the court should

then determine who is the real party in interest with respect to each group of claims.

Defendants are correct that plaintiff appears to be wearing two hats by requesting relief for

itself and for private parties, but that fact does not require this court to break the complaint

apart along those lines for purposes of determining the real party in interest. On the

contrary, most courts analyze real party in interest questions by examining the state's

interest in a lawsuit as a whole. See Moore, 900 F. Supp. at 28-29, 31; State of West

Virginia, 747 F. Supp. at 337; State of Missouri ex rel. Webster v. Freedom Financial Corp.,

10

727 F. Supp. 1313, 1317 (W.D. Mo. 1989) ("[t]he interest of the state of Missouri . . . is sufficient to preclude characterizing the State as a nominal party without a real interest in the outcome *of this lawsuit*) (emphasis added); State of New York, 547 F. Supp. at 707 ("This is, in all respects, the State's action.").

Defendants cite Missouri, Kansas & Texas Railway Co. v. Hickman, 183 U.S. 53, 59 (1901), in which the Supreme Court stated that, in determining whether a state may be considered the real party in interest, "the state is such real party when the relief sought is that which inures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." This language seems to foreclose plaintiff's argument that it is the real party in interest because plaintiff is seeking restitution for private parties. However, lower courts have not strictly construed the language in Missouri, but instead have focused on the state's interest, monetary or otherwise, in the context of the entire case. See State of West Virginia, 747 F. Supp. at 338 (citing cases).

Thus, viewing the complaint as a whole, I am persuaded that plaintiff has a "substantial stake" in the outcome of this case. Four of the five claims in this case were brought by the Attorney General pursuant to specific statutory authority. See Moore, 900 F. Supp. at 31. In addition to damages for the private parties who allegedly overpaid for defendants' drugs, plaintiff seeks injunctive relief on four of the five claims. This type of prospective relief goes beyond addressing the claims of previously injured organizations or

11

individuals. It is aimed at securing an honest marketplace, promoting proper business practices, protecting Wisconsin consumers and advancing plaintiff's interest in the economic well-being of its residents. Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 607 (1982) (discussing state interests enforceable through *parens patriae* actions); State of Missouri ex rel. Webster, 727 F. Supp. at 1317; Kelley, 442 F. Supp. at 356-57 ("some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries, protection of its citizens from fraudulent and deceptive practices, support for the general welfare of its residents and its economy, and prevention of its citizens' revenues from being wrongfully extracted from the state."). The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize or negate plaintiff's substantial interest. State of Alabama ex rel. Galanos v. Star Service & Petroleum Co., 616 F. Supp. 429, 431 (S.D. Ala. 1985) ("[w]hether other parties will benefit from this action does not affect the state's valid interest in enforcing this statutory scheme"); State of New York, 547 F. Supp. at 706-07. In sum, I conclude that the state of Wisconsin is the real party in interest in this litigation. Consequently, this court does not have jurisdiction over this case under 28 U.S.C. § 1332.

## D. Fees and Costs

Finally, plaintiff has asked for an award of attorney fees and costs incurred in seeking

12

( 　　　　　　　　　　　　　　　　　　　　　　 (

remand of this action. In this circuit, a party that succeeds in showing that removal is improper is presumptively entitled to an award of fees. Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) ("§ 1447 is not a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party."); see also Wisconsin v. Hotline Industries, Inc., 236 F.3d 363, 367-68 (7th Cir. 2000); Citizens for a Better Environment v. Steel Co., 230 F.3d 923, 927 (7th Cir. 2000). However, the presumption may be rebutted. See, e.g., Sirotsky v. New York Stock Exchange, 347 F.3d 985 (7th Cir. 2003). Plaintiff need not show that removal was undertaken in bad faith. Id. at 987. Rather, an award is proper when "[r]emoval [is] unjustified under settled law." Garbie, 211 F.3d at 410.

Defendants have not addressed the award of fees and costs, presumably because they concentrated on establishing their right to removal. Now that I have found that defendants are not entitled to removal, it is necessary to consider whether there is any reason to deny plaintiff its fees and costs. If the question were one of good faith, this would be a more difficult case. Defendant's arguments were not frivolous. However, in light of the presumption that awards should be made to the victorious party, I conclude that plaintiff is entitled to reimbursement for its reasonable fees and costs.

13

## ORDER

IT IS ORDERED that

1. Plaintiff's motion to remand this case to state court is GRANTED.

2. Plaintiff's request for costs and attorney fees under 28 U.S.C. § 1447(c) is GRANTED.

3. Plaintiff may have until October 20, 2004, in which to submit an itemization of the actual expenses, including costs and attorney fees, it incurred in responding to defendants' removal.

4. Defendants may have until November 3, 2004, to file an objection to any itemized costs and fees.

5. This case is REMANDED to the Circuit Court for Dane County, Wisconsin.

6. The clerk of court is directed to return the record in case number 04-C-0477-C to the Circuit Court for Dane County, Wisconsin.

Entered this _____5ᵗʰ_____ day of October, 2004.

BY THE COURT:

_Barbara B. Crabb_

BARBARA B. CRABB
District Judge

14