# EXHIBIT B

Pg. 1-30

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR
LEON COUNTY, FLORIDA

THE STATE OF FLORIDA ）
 ）
ex rel. ）
 ）
    VEN-A-CARE OF THE ）
    FLORIDA KEYS, INC., ）
    a Florida Corporation, by and ）
    through its principal ）
    officers and directors, ）
    ZACHARY T. BENTLEY and ）
    T. MARK JONES, ）
 ）
          **Plaintiffs** ）
 ）      **CIVIL ACTION NO.:  98-3032G**
 ）
v. ）
 ）      **JURY TRIAL DEMANDED**
 ）
MYLAN LABORATORIES, INC.; ）
MYLAN PHARMACEUTICALS, INC.; ）
NOVOPHARM, LTD.; SCHEIN ）
PHARMACEUTICAL, INC.; TEVA ）
PHARMACEUTICAL INDUSTRIES, ）
LTD.; TEVA PHARMACEUTICAL ）
USA; and WATSON ）
PHARMACEUTICALS, INC., ）
 ）
          **Defendants.** ）
 ）

## FIRST AMENDED COMPLAINT

Plaintiff, the STATE OF FLORIDA, acting by and through its Attorney General,

Charles J. Crist, Jr., brings this cause of action against Defendants, Mylan Laboratories,

Inc.; Mylan Pharmaceuticals, Inc.; Novopharm, Ltd.; Schein Pharmaceutical, Inc.; Teva

Pharmaceutical Industries, Ltd.; Teva Pharmaceutical USA; and Watson

Pharmaceuticals, Inc.

Page 1 of 40

## INTRODUCTION

1. This is a civil action to recover damages in excess of fifteen thousand dollars ($15,000.00) plus all applicable civil penalties and other relief from Defendants for making or causing to be made, false or fraudulent statements, representations and claims to the State of Florida's Medicaid Program for the specified dispensed pharmaceuticals from July 1, 1994, through and including the present. The specified pharmaceuticals (hereinafter "the Subject Drugs") at issue are attached as Exhibit "A" and incorporated by reference in this Complaint.

2. Plaintiffs seek recovery against Defendants pursuant to the Florida False Claims Act §§ 68.081 - 68.092, Florida Statutes (hereinafter "the Act"), and for common law fraud.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of the causes of action set forth in this Complaint pursuant to Art. V, § 20(3), Fla. Const.; § 26.012, Florida Statutes; and §§ 68.081 - 68.092, Florida Statutes.

4. Venue is proper in Leon County pursuant to § 68.083(3), Florida Statutes.

## PARTIES

5. The State of Florida, Office of the Attorney General, Department of Legal Affairs (hereinafter "the Attorney General"), is acting on behalf of the Florida Agency for Health Care Administration (hereinafter "AHCA"), which administers the Florida Medicaid Program pursuant to § 409.902, Florida Statutes, and pursuant to the Attorney General's own authority under §§ 409.920 and 68.083, Florida Statutes.

6.  Private person Plaintiff/Relator Ven-A-Care of the Florida Keys, Inc. (hereinafter "the Relator" or "Ven-A-Care") originally provided information to the State of Florida which is the basis of this suit pursuant to § 68.083(3), Florida Statutes, and is included as a named party Plaintiff in this case pursuant to § 68.083(2) and (3), Florida Statutes.

7.  Defendant Mylan Pharmaceuticals, Inc., (hereinafter "Mylan"), is a corporation organized under the laws of West Virginia with its principal offices in Morgantown, West Virginia.  Mylan is a subsidiary of Mylan Laboratories, Inc., (hereinafter "Mylan Laboratories") a corporation organized under the laws of Pennsylvania with principal offices in Canonsburg, Pennsylvania. To the extent the acts of Mylan Pharmaceuticals, Inc. at issue in this Complaint were performed or otherwise attributable to Mylan Laboratories, Inc., or any subsidiary or affiliate of Mylan Laboratories, Inc., then judgment should be entered against it where appropriate.  At all times material to this Complaint, Mylan transacted business in the State of Florida by, including but not limited to, selling directly or through wholesalers its specified drugs, including the Subject Drugs identified in this Complaint, in the State of Florida, including Leon County.

8.  Defendant Teva Pharmaceutical Industries, Ltd. (hereinafter "Teva") is an Israeli corporation organized under the laws of Israel with its principal offices in Petach Tikva, Israel.  Teva Pharmaceutical USA (hereinafter "Teva USA") is a Delaware corporation headquartered in North Wales, Pennsylvania.  Teva is the corporate parent of Teva USA.   Copley Pharmaceutical, Inc. (hereinafter "Copley"), was a Delaware corporation with its principal offices in Canton, Massachusetts.  Teva acquired Copley

in or about September, 1999 and was subsequently merged into Teva USA.

Novopharm, Ltd., (hereinafter "Novopharm") is a Canadian Corporation with its principal

offices in Toronto, Canada.  In or about April, 2000, Novopharm became a subsidiary of

Teva.  To the extent the acts of Teva USA, Copley, or Novopharm at issue in this

Complaint were performed by or otherwise attributable to Teva, or any subsidiary or

affiliate of it, then judgment should be entered against Teva where appropriate.  At all

times material to this action, Teva, Teva USA, Copley, and Novopharm transacted

business in the State of Florida by, including but not limited to, selling directly or through

wholesalers, its specified drugs, including those identified in this Complaint, to

purchasers within the State of Florida, including Leon County.

      9.  Defendant Watson Pharmaceuticals, Inc. (hereinafter "Watson") is a

corporation organized under the laws of Nevada with its principal offices in Corona,

California.  At all times material to this action, Watson transacted business in the State

of Florida by, including but not limited to, selling and distributing its specified drugs,

including those identified in this Complaint, to purchasers within the State of Florida,

including Leon County.  The Defendant Schein Pharmaceutical, Inc. (hereinafter

"Schein") is a corporation organized under the laws of Delaware with its principal offices

in Florham Park, New Jersey.  In or about September 2000, Schein merged into

Watson.  Schein is a properly named Defendant as a predecessor in interest from the

beginning of the relevant time until it merged with Watson.  To the extent the acts of

Watson at issue in this action were performed or otherwise attributable to Defendant

Schein or any subsidiary or affiliate of this Defendant, then judgment should be entered

against Schein where appropriate.

10.  Whenever reference is made in this Complaint to any representation, act or transaction of any of the Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents or representatives, while actively engaged in the course and scope of their employment, did or authorized such representations, acts, or transactions on behalf of the Defendants.

### THE FLORIDA MEDICAID PHARMACEUTICAL PROGRAM

11.  The Medicaid Program provides funding for health care for indigent individuals pursuant to § 409.901, *et seq.*, Fla. Stat.

12.  The State of Florida Medicaid Program is administered by AHCA pursuant to § 409.902, Fla. Stat.

13.  The Office of the Attorney General conducts a program of Medicaid fraud control through its Medicaid Fraud Control Unit.

14.  Prescribed drug services are a benefit for Medicaid recipients under the Florida Medicaid Program pursuant to § 409.906(20), Fla. Stat.

15.  The ultimate providers of pharmaceuticals to Medicaid recipients, including physicians, hospitals, nursing homes, and pharmacies, purchase drugs from manufacturers or wholesalers[1] and in turn dispense or administer the drugs to Medicaid recipients.

16.  AHCA awarded contracts to private companies to evaluate and process Medicaid recipients' claims for payment.  These contractors are referred to as "fiscal agents" and are agents and instrumentalities of AHCA.  The providers submit claims for

---

[1] Including re-packagers and re-lablers.

reimbursement of their costs incurred in purchasing and dispensing the drugs to AHCA's "fiscal agent" acting as an agent of AHCA, under a Medicaid provider contract pursuant to § 409.907, Florida Statutes.  The fiscal agent accomplishes claims adjudication under contract with AHCA on AHCA's behalf. From 1994 until 1996, AHCA's fiscal agent was Consultec, Inc.  From 1996 until 1998, AHCA's fiscal agent was the Unisys Corporation.  From 1998 through the present, Consultec, Inc. was AHCA's fiscal agent.  In 2001, Consultec, Inc., changed its name to ACS, Inc.

17.  Pharmacy claims are submitted in one of two ways.  The first is by submitting a completed hard copy pharmacy claim form to the fiscal agent.  The second is through an electronic claims filing procedure where the same information required by the hard copy form is transmitted electronically to the fiscal agent.  Pharmaceuticals are identified on Florida Medicaid claims and the Florida Medicaid computer system drug file by means of unique identification numbers commonly known as National Drug Codes ("NDC"s).  *See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-1, *infra*.   This handbook is available on AHCA's website.  *See* http://floridamedicaid.acs-inc.com/index.jsp?display=handbooks.

18.  AHCA's current reimbursement to the provider of the drug under the pharmacy program is based on AHCA's best estimate of acquisition cost (hereinafter "EAC") to the provider for the drug.  From July 1, 1994, through and including June 30, 2004, the EAC was the lower of the "Average Wholesale Price" ( "AWP") less 13.25 percent or "Wholesaler Acquisition Cost" ("WAC") plus 7 percent.  Pursuant to a legislative change effective July 1, 2004, the EAC is the lower of AWP less 15.4 percent

or WAC plus 5.75 percent, whichever is less.[2]  *See* § 409.908(14), Fla. Stat.

19.  AHCA has established other safeguards to ensure it is a prudent purchaser of drugs.  From July 1, 1994, through and including June 30, 2004, AHCA reimbursed the least of:

   a)  "Average Wholesale Price" ("AWP") less 13.25 percent, plus a dispensing fee;

   b)  "Wholesaler Acquisition Cost" ("WAC") plus 7 percent, plus a dispensing fee;

   c)  the "Federal Upper Limit" ("FUL"), plus a dispensing fee;

   d)  the "State Maximum Allowable Cost" ("SMAC"), plus a dispensing fee; or

   e)  the provider's "usual and customary charge" to the public.

*See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-2, July 2001, as incorporated into law at Rule 59G-4.250, Fla. Admin. Code; *See also* § 409.908(14), Fla. Stat.

20.  After § 409.908(14), Florida Statutes was amended, AHCA reimburses the least of:

   a)     "Average Wholesale Price" ("AWP") minus 15.4 percent, plus a dispensing fee;

   b)     "Wholesaler Acquisition Cost" ("WAC") plus 5.75 percent, plus a dispensing fee;

---

   [2]  From July 2000 through April 2002, the Florida Medicaid Program reimbursed Providers at AWP minus 13.25 percent.

  c)   the "Federal Upper Limit" ("FUL"), plus a dispensing fee;

  d)   the "State Maximum Allowable Cost" ("SMAC"), plus a dispensing fee; or

  e)   the providers' "usual and customary charge" to the public.

See § 409.908(14), Fla. Stat.

21.   The Florida Medicaid dispensing fee is currently $4.23 per prescription. See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-3, supra. An additional $0.015 per unit is paid to pharmacies who prepare in-house unit dose packaging of tablets or capsules. Id.

22.   The AHCA fiscal agent reimburses pharmaceutical provider claims based on the current Florida Medicaid computer system drug file prices, and such prices are derived from pricing information, including AWPs and WACs, supplied and updated weekly by the First DataBank, Inc. ("First DataBank") National Drug Data file electronic service. See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-3, supra. First DataBank, a division of The Hearst Corporation, is a nationally-recognized company that specializes in gathering and disseminating prescription drug pricing information, including AWPs and WACs, to public and private health insurers.

23.   AHCA's fiscal agent has at all times relevant to this complaint contracted with First DataBank to provide National Drug Data file prices to establish Florida Medicaid provider drug reimbursement. The Florida Medicaid Program has utilized First DataBank as its primary reference source and has utilized representations of AWP and WAC supplied by First DataBank to establish provider reimbursement prices.

24. The manufacturers of the drugs directly supply AWP and WAC on a continual basis to First DataBank. First DataBank uses the AWPs and WACs supplied by the manufacturers, to compile the National Drug Data file price list, which in turn is utilized by the Florida Medicaid Program for its computer system drug file prices. The manufacturers annually certify to First DataBank that the pricing information they report to First DataBank is true and correct.

25.     The Florida Medicaid Program cannot reimburse a provider for any drug not listed in the National Drug Data file. *See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-2, *supra*. Drug manufacturers, including the Defendants, voluntarily report AWP and WAC pricing information to First DataBank to ensure their products are included in the National Drug Data file and their customers will be reimbursed by the Florida Medicaid Program.

### SUMMARY OF DEFENDANTS' FRAUD SCHEME

26.     The Florida Medicaid Program reimburses providers for the drugs they dispense to Medicaid recipients at EAC, estimated acquisition cost. Florida Medicaid determines EAC by using the AWPs and WACs supplied by pharmaceutical manufacturers to First DataBank. The Defendants knowingly misrepresented AWP and WAC prices solely for the purpose of illicit financial gain in an attempt to manipulate and control market share of the Subject Drugs.

27. The Defendants knowingly and intentionally made false representations of prices and costs for certain of their drugs to the Florida Medicaid Program. The Defendants reported, and caused First DataBank to report, prices for the Subject Drugs that substantially exceeded the market prices known to the Defendants from their own

business information.  The Defendants knew that reporting false, inflated AWP and WAC prices for the Subject Drugs would cause the Florida Medicaid Program's estimates of the acquisition costs of the Subject Drugs to substantially exceed any reasonable estimates of the acquisition costs of those drugs.

28.  The Defendants knowingly and intentionally created an inflated price spread for several of their drugs by supplying to First DataBank prices for those drugs far in excess of the prices for which the drugs were reasonably and currently available in the marketplace.  A "spread" is the difference between the purchase price and the amount reimbursed by the Florida Medicaid Program.  The Defendants intended the Florida Medicaid Program to use those false, inflated prices in setting provider reimbursement rates, and in fact the Florida Medicaid Program did use those false inflated prices to set Medicaid reimbursement rates.  As a direct result of its utilization of the false prices supplied by the Defendants, the Medicaid Program paid provider claims for the Subject Drugs dispensed in amounts far in excess of the acquisition costs generally or currently available in the marketplace for the Subject Drugs.

29.  After creating price spreads for their drugs, Defendants enlarged those inflated spreads by reducing acquisition costs to providers without disclosing the reductions to First DataBank or to the Florida Medicaid Program.  Price reductions were accomplished by giving providers financial incentives such as discounts, rebates, off-invoice pricing, free goods, and cash payments.  Price reductions were granted to some retail pharmacy chains, wholesalers, buying groups, pharmacy benefit managers at the request of those chains, wholesalers, buying groups or pharmacy benefit managers.  Defendants knowingly utilized these financial incentives to reduce the effective

acquisition prices of their drugs, while knowingly reporting AWPs and WACs to First DataBank that were not reflective of the price reductions.

30.     After maximizing the inflated spread on their drugs, Defendants engaged in a tactic commonly referred to as "marketing the spread," for the purpose of increasing their market share and profits. Providers were induced to buy the Subject Drugs because the Medicaid reimbursements for such drugs, unlike otherwise-identical competing drugs with little or no price spread, far exceeded the providers' acquisition cost generally or currently available in the marketplace. The Defendants actively marketed the spread through sales presentations, bid proposals, advertising, and various pharmacy inventory software programs specifically to increase their market share and earnings.

31.     The Defendants sold the Subject Drugs to providers, typically retail pharmacies, with full knowledge that the profits realized upon distribution of such drugs to Medicaid recipients far exceeded any commercially reasonable profits that would otherwise be obtained had prices and costs representative of the prices and costs generally and currently available in the marketplace been reported by the Defendants.

32.     The goals of this fraudulent business plan include: maximized demand for the drugs at issue, domination of the market for the Subject Drugs, and illegal over-reimbursement of Medicaid provider claims for the Subject Drugs. The Defendants inflated their reported prices and marketed the resulting inflated spread, with the purpose and intent of increasing sales of the Subject Drugs to Providers. As a direct, foreseeable, and proximate result of this conduct, they caused false claims for excessive reimbursement to be made to the Florida Medicaid Program. But for each of

the Defendants' actions, the Florida Medicaid Program would not have paid the excessive reimbursement amounts which were paid for the Subject Drugs. Consequently, each Defendant is liable under the Florida False Claims Act and Florida Common Law Fraud for each Medicaid reimbursement claim for the Subject Drugs which resulted in payment of a falsely inflated reimbursement amount.

33.   Defendants' knowing misrepresentation of drug prices to First DataBank caused each and every claim paid by the Florida Medicaid Program for the Subject Drugs to be a false claim under § 68.081, *et seq.*, Florida Statutes.  The Florida Medicaid Program is also entitled to be reimbursed for all payments made in excess of what the State of Florida Medicaid Program should have paid in pharmacy claims for Defendant's drugs in accordance with the legal remedies for common law fraud.

34.     The manufacturers virtually control what price information the payers, including the Florida Medicaid Program, can obtain.  Defendants have taken undue advantage of the resulting disparity in status, power and knowledge by knowingly reporting prices for Medicaid reimbursement purposes that bear no relationship whatsoever to prices generally or currently available in the marketplace.

35.  The Defendants were in a position to mislead the Florida Medicaid Program, in part, because other drug manufacturers typically report prices representative of prices and costs generally and currently available in the marketplace for other drugs. The Defendants knew that the Florida Medicaid Program uses manufacturer-supplied prices to reimburse providers for 30,000 of the approximately 300,000 NDCs in the Florida Medicaid drug database in any given month.  The Defendants knew that AHCA, with a handful of pharmacy employees, would never have the manufacturers' insider

knowledge, resources, or opportunity necessary to discover and remedy the Defendants' drug pricing fraud.

36.     The Defendants were fully capable of making representations about AWP and WAC prices of the Subject Drugs that fairly represented the prices and costs generally and currently available in the marketplace.

### THE ACTIONABLE CONDUCT OF DEFENDANTS

37.     The Defendants acted knowingly, as defined by § 68.082(1)(c), Florida Statutes, in presenting or causing to be presented to the Florida Medicaid Program false claims for payment or approval in violation of § 68.082(2)(a), Florida Statutes by:

a)     Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b)     Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

c)     Concealing or failing to disclose decreases in prices and costs of specified pharmaceuticals by reporting price reductions much smaller than the true price reductions;

d)     Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs that decreased the effective prices of the specified pharmaceuticals;

e)     Reporting that the price or cost of a specified drug was smaller than the price reductions generally and currently available in the marketplace; and

f)      Reporting that the price or cost of a specified drug was the same
when in fact it was falling.

38.     The Defendants acted knowingly, or recklessly disregarded, or acted in
deliberate ignorance in making, using, or causing to be made false records or
statements to get claims paid or approved by the Florida Medicaid Program in violation
of § 68.082(2)(b), Florida Statutes by:

a)      Submitting false, inflated prices and costs, including AWPs and
WACs, for specified pharmaceuticals to First DataBank initially;

b)      Concealing or failing to disclose decreases in prices and costs of
such pharmaceuticals to First DataBank;

c)      Concealing or failing to disclose decreases in prices and costs of
specified pharmaceuticals by reporting price reductions much
smaller than the true price reductions;

d)      Concealing or failing to disclose financial incentives such as
discounts, rebates, off-invoice pricing, free goods, cash payments,
and charge backs that decreased the effective prices of the
specified pharmaceuticals;

e)      Reporting that the price or cost of a specified drug was smaller
than the price reductions generally and currently available in the
marketplace; and

f)      Reporting that the price or cost of a specified drug was the same
when in fact it was falling.

39.     The Defendants conspired to submit false claims or deceive the Florida

Page 14 of 40

Medicaid Program for the purpose of getting false or fraudulent claims allowed or paid in violation of § 68.082(2)(c), Florida Statutes, by:

a)    Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b)    Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

c)    Concealing or failing to disclose decreases in prices and costs of specified pharmaceuticals by reporting price reductions much smaller than price reductions generally and currently available in the marketplace;

d)    Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs that decreased the effective prices of the specified pharmaceuticals;

e)    Reporting that the price or cost of a specified drug was smaller than the price reductions generally and currently available in the marketplace; and

f)    Reporting that the price or cost of a specified drug was the same when in fact it was falling.

## THE SPECIFIC FALSE PRICE REPRESENTATIONS OF DEFENDANTS MYLAN/MYLAN LABORATORIES

40.  Throughout the period starting July 1, 1994, through and including the present date, Defendants Mylan/Mylan Laboratories knowingly caused the Florida

Page 15 of 40

Medicaid Program to pay false or fraudulent claims for prescription drugs, including

those specified in this section, and further made or used false or fraudulent records

and/or statements to get such claims paid or approved.  As a result of the actions of

Mylan/Mylan Laboratories and those persons and entities acting directly or indirectly in

concert with Mylan/Mylan Laboratories the Florida Medicaid Program paid grossly

excessive, unreasonable, and unlawful reimbursement amounts for drugs, including

those specified in this section.  The acts committed by Mylan/Mylan Laboratories that

caused the Florida Medicaid Program to pay or approve these false or fraudulent claims

included, but were not limited to: knowingly making false representations about prices

and costs of drugs, including those specified in this section, which Mylan/Mylan

Laboratories knew would be used by the Florida Medicaid Program in paying or

approving claims for such drugs; using the inflated spread as a financial inducement to

increase sales of the Subject Drugs; and paying additional rebates and discounts to

customers effectively reducing the customers' acquisition cost for these drugs without

reporting these discounts and rebates to First DataBank.  Each of these false pricing

representations were used by the Florida Medicaid Program in paying or approving

claims for drugs, including those specified in this section.

41.  Mylan/Mylan Laboratories knowingly caused its false price and cost

representations to be published for the years specified in this section in First DataBank's

Automated Services and further made or used false records or statements regarding its

prices of the drugs, including those specified in this section.  For example, the false price

representations as reported by Mylan/Mylan Laboratories and reflected by First

DataBank and the inflated Medicaid reimbursement amounts calculated by the Florida

Medicaid Program are reflected in the following chart for some of Mylan/Mylan Laboratories' Subject Drugs. Amounts contained in the Florida Medicaid reimbursement column reflect falsely inflated WAC costs. The amount listed under the Relator's Cost column reflects the prices generally or currently available in the marketplace to the Relator or the Relator's Group Purchasing Organization for the listed drugs from Mylan/Mylan Laboratories or a wholesaler.

| Defendant Mylan Ranitidine 150 MG Tablet NDC#00378-3252-91 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | First DataBank AWP | First DataBank WAC | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" or "AWP" | Maximum Allowable Cost | Relator's Cost ——— Contract Price | SPREAD $ | SPREAD % (SPREAD $ ÷ RELATOR'S COST) |
| 05-08-2002 | $95.30 | $14.00 | $14.98 | NONE | $2.88 | $12.10 | 420% |
| 06-25-2002 | $95.30 | $14.00 | $14.98 | NONE | $2.88 | $12.10 | 420% |

42. As a direct and proximate result of Mylan/Mylan Laboratories' actions alleged in this Complaint, the State of Florida sustained actual damages in excess of $15,000.00 together with treble damages, penalties, and attorneys fees pursuant to the Florida False Claims Act.

### THE SPECIFIC FALSE PRICE REPRESENTATIONS OF DEFENDANTS TEVA/TEVA USA/COPLEY/NOVOPHARM

43. Throughout the period starting July 1, 1994, through and including the present date, Teva/Teva USA/Copley/Novopharm knowingly caused the Florida Medicaid Program to pay false or fraudulent claims for prescription drugs, including those specified in this section, and further made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the actions of

Teva/Teva USA/Copley/Novopharm and those persons and entities acting directly or indirectly in concert with Teva/Teva USA/Copley/Novopharm, the Florida Medicaid Program paid grossly excessive, unreasonable, and unlawful reimbursement amounts for drugs, including those specified in this section.  The acts committed by Teva/Teva USA/Copley/Novopharm that caused the Florida Medicaid Program to pay or approve these false or fraudulent claims included, but were not limited to: knowingly making false representations about prices and costs of drugs, including those specified in this section, which Teva/Teva USA/Copley/Novopharm knew would be used by the Florida Medicaid Program in paying or approving claims for such drugs; using the inflated spread as a financial inducement to increase sales of the Subject Drugs; and paying additional rebates and discounts to customers, effectively reducing the customer's acquisition cost for these drugs without reporting these discounts and rebates to First DataBank.  Each of these false pricing representations were used by the Florida Medicaid Program in paying or approving claims for drugs, including those specified in this section.

44.  Teva/Teva USA/Copley/Novopharm knowingly caused its false price and cost representations to be published for the years specified in this section in First DataBank's Automated Services and further made or used false records or statements regarding its prices of the drugs, including those specified in this section.  For example, the false price representations as reported by Teva/Teva USA/Copley/Novopharm and reflected by First DataBank and the inflated Medicaid reimbursement amounts calculated by the Florida Medicaid Program are reflected in the following chart for some of Teva/Teva USA/Copley/Novopharm's Subject Drugs.  Amounts contained in the Florida Medicaid reimbursement column reflect falsely inflated reported WAC costs.  The amount listed

under the Relator's Cost column reflects the prices generally or currently available in the marketplace to the Relator or the Relator's Group Purchasing Organization for the listed drugs from Teva/Teva USA/Copley/Novopharm or a wholesaler.

| Defendant TEVA<br>Clonazepam .5 MG Tablet, 100s<br>NDC#00093-0832-01 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | First DataBank AWP | First DataBank WAC | FLORIDA MEDICAID PER UNIT REIMBURSE MENT BASED ON FALSE REPORTED "WAC" or "AWP" | Maximum Allowable Cost | Relator's Cost<br>Contract Price | SPREAD $ | SPREAD %<br>(SPREAD $ ÷ RELATOR'S COST) |
| 05-08-2002 | $74.90 | $9.31 | $9.96 | $24.55 | $4.49 | $5.47 | 122% |
| 06-25-2002 | $74.90 | $9.31 | $9.96 | $24.55 | $4.49 | $5.47 | 122% |
| 11-05-04 | $74.90 | $9.31 | $9.96 | $24.55 | $4.04 | $5.92 | 147% |
| 04-13-05 | $74.90 | $9.31 | $9.96 | $24.55 | $4.04 | $5.92 | 147% |

45.  As a direct and proximate result of Teva/Teva USA/Copley/Novopharm's actions alleged in this Complaint, the State of Florida sustained actual damages in excess of $15,000.00 together with treble damages, penalties, and attorneys fees pursuant to the Florida False Claims Act.

## THE SPECIFIC FALSE PRICE REPRESENTATIONS OF DEFENDANTS WATSON/SCHEIN

46.  Throughout the period starting July 1, 1994, through and including the present date, Watson/Schein knowingly caused the Florida Medicaid Program to pay false or fraudulent claims for prescription drugs, including those specified in this section, and further made or used false or fraudulent records and/or statements to get such claims paid or approved.  As a result of the actions of Watson/Schein and those persons

and entities acting directly or indirectly in concert with Watson/Schein, the Florida

Medicaid Program paid grossly excessive, unreasonable, and unlawful reimbursement

amounts for drugs, including those specified in this section.  The acts committed by

Watson/Schein that caused the Florida Medicaid Program to pay or approve these false

or fraudulent claims included, but were not limited to: knowingly making false

representations about prices and costs of drugs, including those specified in this section,

which Watson/Schein knew would be used by the Florida Medicaid Program in paying or

approving claims for such drugs and using the inflated spread as a financial inducement

to increase sales of the Subject Drugs.  Each of these false pricing representations were

used by the Florida Medicaid Program in paying or approving claims for drugs, including

those specified in this section.

   47.  Watson/Schein knowingly caused its false price and cost representations to

be published for the years specified in this section in First DataBank's Automated

Services and further made or used false records or statements regarding its prices of the

drugs, including those specified in this section.  For example, the false price

representations as reported by Watson/Schein and reflected by First DataBank and the

inflated Medicaid reimbursement amounts calculated by the Florida Medicaid Program

are reflected in the following chart for some of Watson/Schein Subject Drugs.  Amounts

contained in the Florida Medicaid reimbursement column reflect falsely inflated WAC

costs.  The amount listed under the Relator's Cost column reflects the prices generally

or currently available in the marketplace to the Relator or the Relator's Group

Purchasing Organization for the listed drugs from Watson/Schein or a wholesaler.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **Defendant WATSON**<br>**Carisoprodol 350 MG Tablet 100's**<br>**NDC#:00364-0475-02**<br>**NDC#:00591-5543-10** | | | | |
| Date | First<br>DataBank<br>AWP | First<br>DataBank<br>WAC | FLORIDA<br>MEDICAID PER<br>UNIT<br>REIMBURSEMENT<br>BASED ON FALSE<br>REPORTED<br>"WAC" or "AWP" | Maximum<br>Allowable<br>Cost | Relator's<br>Cost<br>—————<br>Contract<br>Price | SPREAD $<br>Based on<br>MAC | SPREAD %<br>Based on<br>MAC<br>(SPREAD $ +<br>RELATOR'S<br>COST) |
| 11-05-04 | $524.70 | $363.40 | $388.84 | $374.30 | $33.50 | $340.80 | 1017% |
| 04-13-05 | $524.70 | $363.40 | $388.84 | $374.30 | $46.67 | $327.63 | 702% |
| 06-17-05 | $524.70 | $363.40 | $388.84 | $143.10 | $52.55 | $90.55 | 172% |

48.  As a direct and proximate result of Watson/Schein's actions alleged in this Complaint, the State of Florida sustained actual damages in excess of $15,000.00 together with treble damages, penalties, and attorneys fees pursuant to the Florida False Claims Act.

### CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT MYLAN

49.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through 42 as though fully set forth herein.

50.  Mylan knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081, *et seq.*, Fla. Stat.

51.  As a result of Mylan's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.00.

52. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

## COUNT II
## COMMON LAW FRAUD
## DEFENDANT MYLAN

53. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 42 as though fully set forth herein.

54. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So. 2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

55. Mylan made false statements of material fact regarding drug prices to First DataBank; Mylan knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Mylan knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false price Mylan submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

56.  As a result of Mylan's conduct as set forth in this Count, the State of Florida,

AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual

damages in excess of $15,000.00.

57. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a

remedy for the State's damages; to wit, the difference between what the Florida

Medicaid Program should have paid in pharmacy claims for Mylan's drugs and what was

in fact paid, as well as any other relief the Court deems appropriate, to include,

prejudgment interest and costs.

### COUNT III
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT MYLAN LABORATORIES

58.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through 42

as though fully set forth herein.

59.  Mylan Laboratories, through its subsidiary company Mylan, knowingly

presented or caused to be presented false claims for payment to the Florida Medicaid

Program creating liability for a false claims action pursuant to § 68.081 *et seq.*, Fla. Stat.

60.  As a result of Mylan Laboratories' conduct set forth in this count, the State of

Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has

suffered actual damages in excess of $15,000.00.

61.  Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to

treble the actual damages sustained, not less than $5,000 and not more than $10,000

penalty per claim, all other relief set forth in said statutes, prejudgment interest,

attorneys' fees and court costs.

**COUNT IV**
**COMMON LAW FRAUD**
**DEFENDANT MYLAN LABORATORIES**

62. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 42 as though fully set forth herein.

63.  The elements of common law fraud in Florida are:  a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party.  *See e.g., Tucker v. Mariani*, 655 So. 2d 221, 225 (Fla. 1st DCA 1995);  *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

64.  Mylan Laboratories, by and through its subsidiary company Mylan, made false statements of material fact regarding drug prices to First DataBank; Mylan Laboratories, by and through its subsidiary company Mylan, knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Mylan Laboratories, by and through its subsidiary company Mylan, knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Mylan Laboratories, by and through its subsidiary company Mylan, submitted to First DataBank; and the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

65.  As a result of Mylan Laboratories' conduct as set forth in this count, the State

of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and

suffered actual damages in excess of $15,000.00.

66. Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a

remedy for the State's damages; to wit, the difference between what the Florida

Medicaid Program should have paid in pharmacy claims for Mylan Laboratories and/or

Mylan's drugs and what was in fact paid, as well as any other relief the Court deems

appropriate, to include, prejudgment interest and costs.

### COUNT V
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### DEFENDANT TEVA/TEVA USA/COPLEY/NOVOPHARM

67. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 39

and 43 through 45 as though fully set forth herein.

68. Teva/Teva USA/Copley/Novopharm knowingly presented or caused to be

presented false claims for payment to the Florida Medicaid Program creating liability for

a false claims action pursuant to § 68.081 *et seq.*, Fla. Stat.

69. As a result of Teva/Teva USA/Copley/Novopharm's conduct set forth in this

count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid

claims and has suffered actual damages in excess of $15,000.00.

70. Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to

treble the actual damages sustained, not less than $5,000 and not more than $10,000

penalty per claim, all other relief set forth in said statutes, prejudgment interest,

attorneys' fees and court costs.

**COUNT VI**
**COMMON LAW FRAUD**
**DEFENDANT TEVA/TEVA USA/COPLEY/NOVOPHARM**

71. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 and 43 through 45 as though fully set forth herein.

72. The elements of common law fraud in Florida are: a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party. *See e.g., Tucker v. Mariani*, 655 So. 2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

73. Teva/Teva USA/Copley/Novopharm made false statements of material fact regarding drug prices to First DataBank; Teva/Teva USA/Copley/Novopharm knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Teva/Teva USA/Copley/Novopharm knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Teva/Teva USA/Copley/Novopharm submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

74. As a result of Teva/Teva USA/Copley/Novopharm's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.00.

75.  Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Teva/Teva USA/Copley/Novopharm's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT VII
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
## DEFENDANT TEVA

76.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 and 43 through 45 as though fully set forth herein.

77.  Teva, by and through its subsidiaries, Teva USA, Copley, and Novopharm knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081 *et seq.*, Fla. Stat.

78.  As a result of Teva's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.00.

79.  Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

**COUNT VIII**
**COMMON LAW FRAUD**
**DEFENDANT TEVA**

80.  The Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 and 43 through 45 as though fully set forth herein.

81.  The elements of common law fraud in Florida are:  a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party.  *See e.g., Tucker v. Mariani*, 655 So. 2d 221, 225 (Fla. 1st DCA 1995);  *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

82.  Teva, by and through its subsidiaries Teva USA, Copley, and Novopharm, made false statements of material fact regarding drug prices to First DataBank; Teva, by and through its subsidiaries Teva USA, Copley, and Novopharm knew that the submitted prices were false and significantly exceeded prices generally or currently available in the marketplace; Teva, by and through its subsidiaries Teva USA, Copley, and Novopharm knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices; Teva, by and through its subsidiaries Teva USA, Copley, and Novopharm, submitted to First DataBank and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

83.  As a result of Teva's conduct as set forth in this count, the State of Florida,

AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered actual damages in excess of $15,000.00.

84.   Pursuant to the common law of fraud in Florida, the Plaintiffs are entitled to a remedy for the State's damages; to wit, the difference between what the Florida Medicaid Program should have paid in pharmacy claims for Teva and/or Teva USA/Copley/Novopharm's drugs and what was in fact paid, as well as any other relief the Court deems appropriate, to include, prejudgment interest and costs.

## COUNT IX
## VIOLATION OF FLORIDA FALSE CLAIMS ACT
## DEFENDANT TEVA USA

85.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 and 43 through 45 as though fully set forth herein.

86.   Teva USA, by and through its corporate parent Teva, knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to § 68.081 *et seq.*, Fla. Stat.

87.   As a result of Teva USA's conduct set forth in this count, the State of Florida, AHCA or its fiscal intermediary paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.00.

88.   Pursuant to §§ 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, not less than $5,000 and not more than $10,000 penalty per claim, all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

**COUNT X**
**COMMON LAW FRAUD**
**DEFENDANT TEVA USA**

89. The Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 and 43 through 45 as though fully set forth herein.

90. The elements of common law fraud in Florida are:  a false statement concerning a material fact; knowledge by the person making the statement that the representation is false; the intent by the person making the statement that the representation will induce another to act on it; and reliance on the representation to the injury of the other party.  *See e.g., Tucker v. Mariani*, 655 So. 2d 221, 225 (Fla. 1st DCA 1995); *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

91. Teva USA, and by and through its parent company Teva, made false statements of material fact regarding drug prices to First DataBank; Teva USA and its corporate parent Teva knew that the submitted prices were false and significantly exceeded prices generally and currently available in the marketplace; Teva USA and its parent corporation Teva, knew that the Florida Medicaid Program relied on First DataBank prices and intended that the Florida Medicaid Program rely upon the false prices Teva USA and its corporate parent Teva, submitted to First DataBank; and, the Florida Medicaid Program did in fact rely upon such false price representations and was injured by paying provider reimbursements far in excess of reasonable estimates of provider acquisition cost as required by law.

92. As a result of Teva USA's conduct as set forth in this count, the State of Florida, AHCA, or its fiscal intermediary paid the improper Medicaid claims and suffered