IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  Pharmaceutical Industry Average Wholesale Price Litigation | ) ) ) MDL No. 1456 ) ) C.A. No. 01-12257-PBS |
| This Document Relates to: ALL ACTIONS | ) ) The Honorable Patti B. Saris ) |

JOINT REPLY BRIEF OF THE ATTORNEYS GENERAL OF
ILLINOIS, KENTUCKY, WISCONSIN AND IDAHO
REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Lisa Madigan, Attorney General of the State of Illinois; Gregory D. Stumbo, Attorney General of the Commonwealth of Kentucky; and Peggy A. Lautenschlager, Attorney General of the State of Wisconsin (hereinafter jointly referred to as "the Attorneys General" or "the States"); respectfully submit this joint reply brief regarding plaintiffs' motion for class certification.  In addition, Lawrence G. Wasden, Attorney General for the State of Idaho, which is currently conducting an AWP investigation but has not filed suit, joins in this memorandum.

As demonstrated below, the States' request that the Court exclude consumers in Illinois, Kentucky, and Wisconsin, third- party payors ("TPPs") in Wisconsin, and the States themselves, from any class that may be certified is ripe for consideration.  Furthermore, plaintiffs' proposal that the litigation run in tandem ignores the myriad practical problems that will be created if two sets of lawyers are asserting claims and seeking recovery for the same individuals.  Additionally, differences in the litigation, conflicts within the class, the effect on settlement negotiations, as well as the States' experience in the Lupron litigation, make clear that the litigation brought by the Attorneys General is superior to the proposed class action.

I.  The States' request is ripe for consideration.

Plaintiffs argue that the States' request is premature and that the litigation of the plaintiffs and the Attorneys General should run in tandem "until such point that the Court will be called

upon to evaluate the terms of any settlement."  Plaintiffs' opposition to the joint memorandum of

the Attorneys General of Illinois, Kentucky, Wisconsin and Idaho regarding plaintiffs' motion for

class certification ("opposition"), p. 8.  However, as the Court recognized at the February 10,

2005 hearing on plaintiffs' class certification motion, it is the sending of notice to class members,

rather than the time of a settlement (which in theory may never occur, but in the instant case is

certainly not likely to occur prior to the certification of a class and the mailing of notice to class

members) that triggers a whole host of practical issues.  Indeed, as the colloquy between the

Court and Pennsylvania Chief Deputy Attorney General Jim Donahue confirms, the mailing of

notice to class members who are residents of the States would create a "serious problem."

| | |
|---|---|
| THE COURT: | Does it make sense just to let you run in tandem until someone has to fish and cut bait? |
| MR. DONAHUE: | I think to some extent it does make sense to do that.  You know, I think the big issue with the class is when you get to notice.  If you set up a class and issue notice right away, then you create all sorts of problems. |
| THE COURT: | I'm sort of assuming that when I decide whether to certify or not certify a class or certify a part and not another part, as soon as I do that, there are going to be at least one, maybe two notices of appeal filed.  I may be wrong about that basic understanding, but that's why I'm a little reluctant.  I don't think I'm even close timewise to when a notice would go out.  Isn't that right?  I'm not even close.  I'm sort of thinking that I don't need to deal directly with this issue yet.  Maybe I'm not seeing it the same way you are. |
| MR. DONAHUE: | I agree with you.  I have sort of the same feeling.  If the notice is the deciding factor as to when you can have, once notice goes out, you can't have two people representing the same people. |
| THE COURT: | I agree with that, or I'm not sure I agree with that, but I think it's at least a serious problem.... |

Transcript of February 10, 2005 hearing, pp. 83-84.

Among the problems that would arise is the content of the notice to class members.

Would the notice advise class members that the Attorneys General are also pursuing litigation

and seeking relief for them?  What would the notice say about how the state litigation should

affect their decision about whether to opt out of the class?  Having two sets of lawyers seeking relief for the same individuals is certain to create confusion in the minds of class members.

Moreover, class certification is the appropriate time for the Court to consider government-enforcement actions because of their effect on the "superiority" analysis that must be conducted under Fed.R.Civ.P. 23(b)(3).  As one commentator has observed, "government enforcement action can have any number of effects on the success and conduct of the possible class action, as well as (and most importantly) the resolution of the controversy underlying the matter."  Hoffman, D. Bruce, *To Certify or Not: A Modest Proposal for Evaluating the "Superiority" of a Class Action in the Presence of Government Enforcement*, 18 Geo. J. Legal Ethics 1383, 1386 (2005).  Indeed,

> Given the potentially significant effects of such actions on the class action, the class, and the defendants, courts should clearly use the authority of [Fed. R. Civ. P. 23] to measure those effects at one of the earliest practicable points: the class certification decision."

*Id.*, at 1391.

Plaintiffs' other assertions in support of their argument that this issue is premature are disposed of easily.  First, plaintiffs assert that other litigating states have not joined in the request of Illinois, Kentucky, and Wisconsin.  Some of these states, such as Alabama and Missouri, have not brought claims on behalf of Medicare Part B beneficiaries or third-party payors but rather are only pursuing claims related to their Medicaid programs; accordingly, they are unaffected by plaintiffs' class certification motion.  Other states, such as Connecticut, Nevada, and Montana, are represented by the same attorneys representing the plaintiffs in this case and it is therefore not surprising that they have not joined in the request.  Moreover, as shown above, Pennsylvania (joined by Ohio) has already asked the Court to carve out its residents from any class that is certified.[1]  Finally, that the other litigating states have not joined in the present request does not eliminate the practical problems identified by these Attorneys General.

---

[1] Since the time of their earlier pleadings and argument to the Court in connection with the February 10, 2005 hearing on class certification, neither Pennsylvania nor Ohio has filed any pleading amending or withdrawing this request.

Next, plaintiffs claim that the States' request is not justified by the statutory schemes of their consumer-protection statutes. To be sure, the consumer-protection statutes of the States authorize private actions (with the exception of the Kentucky statute, which does not authorize private class actions) as well as enforcement actions by the Attorneys General. Moreover, the States do not dispute the *potential* benefits of parallel litigation. However, plaintiffs misunderstand (or misconstrue) the States' position. The States are not arguing that their consumer-protection statutes require a court to choose between the two enforcement mechanisms (the statutes similarly do not require a court to allow overlapping litigation to proceed until settlement or trial). Rather, the States argue that it is the facts and circumstances of these cases as they presently exist (explained below and in the States' prior briefs) that require the Court to make this choice and to exclude the States' consumers from any class that is certified. *See* Hoffman, 18 Geo. J. Legal Ethics at 1383 ("the result of that consideration [the implications of government enforcement action] cannot be predicted in advance, as it will necessarily depend on the facts of the case as they exist at the time of the decision on certification"); *id.*, at 1388 ("[t]he proper resolution of the issue [whether the class action is superior to a government enforcement action] will be case-specific; the important point is that the court address it"). For this reason, plaintiffs' assertion that the States' request, if granted, will "establish a precedent that undercuts private consumer protection enforcement," opposition at 9, is without merit.

In sum, now that the Court is poised to issue a final decision regarding class certification, the States' request is ripe for consideration.

II.  Differences in the litigation support the States' request.

There are several important differences in the litigation that weigh in favor of excluding the States' consumers (and Wisconsin's TPPs) from any class that is certified. First, while the MDL plaintiffs are only pursuing claims based on the states' consumer-protection statutes, the States have asserted causes of action under other statutes as well as common law. If the consumer protection claims are good in the MDL, they are good if brought by the Attorneys

General.  However, that the Attorneys General have brought additional claims clearly confers a greater benefit on the consumers.  Second, the Attorneys General are pursuing claims based on a larger number of drugs than the MDL plaintiffs.  Third, even with respect to the single statutory claim of each State that overlaps with the MDL plaintiffs (the consumer-protection statute), the States' legal theories are significantly broader than those of the MDL plaintiffs.  No stronger evidence of this exists than the fact that in the States' settlement discussions with defendants, the defendants almost uniformly cite to the testimony of MDL plaintiffs' expert witnesses in arguing against the States' legal theories.  The States' broader legal theories are more beneficial to consumers.  Fourth, the MDL plaintiffs bear a higher burden of proof on the overlapping consumer-protection claims.  This is because in order to overcome the class certification problem created by differences in the consumer protection statutes of the 50 states, MDL plaintiffs must prove that defendants' conduct was intentional.  The States have not limited themselves in this fashion, again conferring a greater benefit on the consumers.  Moreover, and significantly, MDL plaintiffs bear a serious risk that the Attorneys General do not -- decertification of a class, which defendants could seek, and the Court could order, at any time.

In stark opposition to these benefits from the States' lawsuits, MDL plaintiffs merely assert, erroneously, that their litigation is substantially further along than that of the States.  As an initial matter, "the issue of which action came first and which is the `follow on' is not particularly important in [the superiority analysis]."  Hoffman, 18 Geo J. Legal Ethics at 1392.  "Whether the class action is superior...is a question that courts can answer without regard to the dates on which the various actions were filed."  Moreover, the States are not behind the MDL plaintiffs in terms of discovery.  While the MDL plaintiffs have been litigating over class certification, the States have been developing their cases on the merits.  Moreover, the defendants in the state litigation are happily producing to the States all material produced in the MDL.  What the defendants are resisting producing is discovery that MDL plaintiffs do not have and have not requested.  In any event, even if MDL plaintiffs are closer to trial than the States (with respect to the Track 1

defendants), this does not outweigh the far greater benefits conferred on consumers by the States' broader claims and legal theories.

III.  <u>Conflicts between the states supports the States' request</u>.

Excluding consumers from the eight States whose consumer-protection statutes do not authorize class actions, plaintiffs' proposed class would include consumers from 42 states.  Some of these states have robust consumer-protection statutes that dispense with the necessity of proving many of the elements of intentional fraud -- most importantly, reliance.  Some do not. Some of these states have no statute of limitations governing their actions; some have a very short statute of limitations.  Because of these and other important differences between the claims of the states, it will be difficult to fairly apportion any settlements between them in the context of a class action.  The simplest way to reduce these conflicts is to permit the Attorneys General to proceed independently (and exclusively).  This will remove at least some states from the difficult calculus involved in determining the amount to which their consumers would be entitled should a settlement be secured.

IV.  The States' settlement negotiations with defendants and the conduct of the
     <u>Lupron litigation further demonstrate that the States' request should be granted</u>.

Permitting two sets of lawyers to continue to pursue claims and seek relief for the same consumers has interfered, and will continue to interfere, with settlement negotiations.  Initially, there is presently confusion among the defendants as to who has the authority to settle claims for Medicare Part B beneficiaries in Illinois, Kentucky, and Wisconsin.  What is clear, however, is that defendants who wish to discuss settlement are interested in a settlement that would resolve *all* claims flowing from their alleged conduct vis-a-vis Medicare Part B beneficiaries.  Only the Attorneys General have the authority to deliver such a global settlement because they, and they alone, have the authority (and have in fact asserted claims) to recover statutory penalties.

On a more fundamental level, the Attorneys General wish to avoid a situation in which a settlement is reached that they oppose.[2]  For example, even if the MDL plaintiffs were to reach a settlement for an amount of money that the Court deems to be within the range of reasonableness, the Attorneys General may believe that they could obtain more for their consumers.  Indeed, with two sets of lawyers seeking relief for the same consumers, the conditions are ripe for a reverse auction.  This is precisely what was alleged in the Lupron litigation, in which two separate class actions were brought against defendants.  In the first, MDL No. 1430, over which Judge Stearns of the U.S. District Court for the District of Massachusetts presided, plaintiffs were represented by the same attorneys representing the plaintiffs here.  In the second, brought in New Jersey, plaintiffs were represented by attorneys who recently joined as co-counsel in MDL No. 1456.  On the eve of trial in the New Jersey case, defendants entered into a class settlement agreement with plaintiffs in MDL No. 1430.  This settlement agreement also purported to settle the claims of the New Jersey plaintiffs, who fell within the agreement's class definition.  The New Jersey plaintiffs intervened and objected to the settlement, arguing that a reverse auction occurred, that the settlement amount was neither fair nor reasonable, and that they had been ambushed by the conduct of the Lupron MDL class counsel.  Protracted and unnecessary litigation ensued.

As explained in the States' opening brief, they fared no better in the Lupron MDL litigation.  Significantly, plaintiffs' counsel do not dispute that they failed to notify the States of, and include them in, their settlement negotiations, or that they defined the settlement class to include the States, thereby releasing their claims.  In light of these facts, it is surprising that plaintiffs now argue that the Lupron litigation and settlement supports, rather than undermines, defendants' proposal that parallel proceedings continue.  Plaintiffs are only able to make this argument by mischaracterizing the actions taken by the States after they learned of the settlement.  Far from shifting their position, as plaintiffs assert (opposition at 8), the States were consistent in opposing the settlement and their exclusion from the negotiations leading up to it.  Rulings from

---

[2] Plaintiffs' invitation to the States to participate in the court-ordered mediation with the Track 1 defendants came on the eve of those discussions and was therefore hollow.

the court and other factual developments resulting from the States' exclusion from the proceedings greatly influenced and limited the choices available to the States.

Because the States had been excluded from the settlement negotiations, their interests were neither adequately represented nor protected.  The States had little time to evaluate the settlement and its implications as the deadline for filing objections to the settlement approached.  In order to preserve and protect their interests while they further investigated and evaluated the matter, the States filed objections to the settlement, reserving their right to withdraw the objections, exclude themselves from the settlement, or take any other appropriate action.  After further investigation and evaluation, the States exercised the rights they had reserved, withdrew the objections, and excluded themselves from the settlement.  These exclusions forced the defendants and plaintiffs to negotiate with the States.  Although the States eventually entered into separate settlement agreements in that matter, they did not, contrary to the assertions of plaintiffs' counsel, agree to the original settlement.  Rather, the States negotiated relief far more favorable than what they would have obtained under the original agreement.  This included significantly more money for their consumers.  In addition, the States secured defendants' agreement to pay attorneys' fees to the States with new funds.  In the absence of this agreement, these fees would have come out of the relief for the consumers.  In short, the States obtained more favorable relief for their consumers than plaintiffs' counsel had negotiated.  This result was achieved in spite of, not because of, the conduct of plaintiffs' counsel.

Additionally, to the extent that plaintiffs acknowledge, as they have previously, that only the Attorneys General have the authority to seek civil penalties, this does not go far enough.  Plaintiffs took the same position in the Lupron MDL litigation.  Notwithstanding this position, defendants argued that because the settlement class included the States, any claims that could be brought by the States based on defendants' actions vis-a-vis consumers were released.  Beyond that, defendants sought an order from Judge Stearns ruling that any such claims were extinguished and enjoining the States from pursuing them.  Although the States strongly asserted that defendants were incorrect as a matter of law and Judge Stearns never ruled on the request,

the States should not have to face the prospect of litigating this issue.  Excluding the States'
consumers from any class that is certified guarantees that they won't.

V.   <u>The States should be excluded from any class that is certified</u>.

       The States pointed out in their opening brief that there was ambiguity as to whether the
plaintiffs were seeking to include the States within the definition of the Third-Party Payor
MediGap Supplemental Insurance class.  Plaintiffs' response does not shed much light on this
issue.

       Plaintiffs assert that they "do not seek to represent the States in their proprietary or
governmental capacity period and have repeatedly acknowledged that the attorneys general are
the only proper representatives of the States themselves."  Opposition at 11, n. 12.  Initially, the
States do not understand what plaintiffs mean by "proprietary or governmental capacity."  No
qualifiers should be used.  Any class that is certified should specifically exclude the States of
Illinois, Kentucky,[3] and Wisconsin.

---

[3] Plaintiffs' Third AMCC and proposed class certification order limit the Third Party Payor MediGap
Supplemental Insurance class to payors in states whose consumer-protection statutes authorize
corporations to bring claims.  The Third AMCC and proposed class certification order list all such
statutes.  Third AMCC, ¶649; proposed certification order, pp. 4-5.  Because no Kentucky statute is cited,
it appears that plaintiffs are not seeking to include the Commonwealth of Kentucky as a member of this
class.

<u>CONCLUSION</u>

For the above reasons, the Court should not certify any class that includes: (1) consumers in the States of Illinois, Kentucky,[4] and Wisconsin; (2) third-party payors in the State of Wisconsin; and (3) the States of Illinois, Kentucky, and Wisconsin.

Respectfully submitted,

LISA MADIGAN
Attorney General of the State of Illinois

GREGORY D. STUMBO
Attorney General of the Commonwealth of Kentucky

PEGGY A. LAUTENSCHLAGER
Attorney General of the State of Wisconsin

LAWRENCE G. WASDEN
Attorney General for the State of Idaho

By:     /s/ Robert S. Libman
        Robert S. Libman
        Special Assistant Attorney General
        for the States of Illinois, Kentucky,
        Wisconsin, and Idaho

Miner, Barnhill & Galland
14 W. Erie St.
Chicago, IL 60610
(312) 751-1170

---

[4] Notwithstanding the fact that their proposed Medicare Part B beneficiary class as defined in ¶553 of the Third AMCC and in the proposed class certification order includes Kentucky consumers, plaintiffs now recognize that Kentucky consumers are will be excluded from any such class.  Opposition at 11, n. 11.