# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | |
| THIS DOCUMENT RELATES TO: State of California, *ex rel.* Ven-A-Care v. Abbott Laboratories, Inc., *et al.* CASE #: 1:03-cv-11226-PBS | ) ) ) ) ) ) |

MDL No. 1456
Master File No. 01-12257-PBS

(Original Central District of California No. 03-CV-2238)

Judge Patti B. Saris

## ABBOTT LABORATORIES INC.'S INDIVIDUAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CALIFORNIA'S FIRST AMENDED COMPLAINT

Dated:  January 17, 2006

Submitted by:

 /s/ Toni-Ann Citera
James R. Daly
Tara A. Fumerton
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-8376
Facsimile:  (212) 755-7306

*Counsel for Defendant*
*Abbott Laboratories Inc.*

Defendant Abbott Laboratories Inc. ("Abbott") is uniquely situated in this lawsuit. As Plaintiffs allege, until December 1, 2002, Medi-Cal used "Direct Price," not "Average Wholesale Price," to reimburse providers who dispensed or administered Abbott-manufactured drugs. *See* Compl. ¶ 28; *see also* original Complaint-In-Intervention (filed Jan. 3, 2003). Abbott believes that it may be the only current defendant whose products were reimbursed using Direct Price. Abbott submits this brief to demonstrate that Medi-Cal's use of Direct Price provides unique grounds for dismissal of the Amended Complaint as to Abbott.

## BACKGROUND

The State of California has admitted previously in this litigation that "Direct Price" is not a term that was created for, and is not defined in, the Medicaid or Medicare contexts.[1] Rather, Direct Price is a term used in the marketplace by the pharmaceutical industry. According to pleadings filed by California, and a declaration of Senior Assistant Attorney General Thomas A. Temmerman, Medi-Cal may have been the only state Medicaid program to use Direct Price.[2]

The Medi-Cal regulatory definition of "Direct Price" further demonstrates that California elected to use a commercial term as published in pharmaceutical industry pricing publications, and declined to develop an independent benchmark. From 1977 to 2002, California regulation 22 C.C.R. § 51513, required that California reimburse the dispensing and administration of certain manufacturers' drugs on the basis of Direct Price. Over that 25 year period, the text of 22 C.C.R. § 51513 did not change in a material way. In pertinent part it read:

> The estimated acquisition cost of all of the drug products manufactured or distributed by a pharmaceutical company listed in paragraph (b) shall be the direct price for a standard package in the Department's primary reference source; or for products not listed

---

[1] *See* original Complaint-In-Intervention (filed Jan. 7, 2003) ¶ 13; Pltfs' Opp. to Def. Abbott Laboratories Inc.'s Ex Parte Application For An Order Staying All Proceedings And Supporting Points And Authorities (filed under seal Apr. 2, 2003) at 7.

[2] Temmerman Decl. ¶ 6 (filed under seal Apr. 2, 2003).

> in the Department's primary reference source, the direct price listed in the secondary price source; or, if not listed in the secondary price source, the principal labeler's catalogue.

22 C.C.R. § 51513.5 (2003) (Ex. A).  Plaintiffs allege that Medi-Cal used the First DataBank pricing compendium as the "primary reference source" of Abbott's Direct Prices.  Compl. ¶ 33.

On September 30, 2002, the California legislature ended the use of Direct Price.  *See* Cal. Wel & Inst. Code § 14105.45(c) (2003).  Although discontinuing use of Direct Price, that legislation expressly confirmed the previous definition of "Direct Price" as the "price for a drug product directly from a drug manufacturer listed in the department's price reference source."  *Id.* § 14105.46(a)(7).  Two years later, the California legislature repealed section 14105.46 and replaced it with Cal. Wel & Inst. Code § 14105.45, which continues to preclude the use of Direct Price and which restated the definition of Direct Price as the Direct Price published in the pricing compendia.  *See id.* § 14105.46(a)(3).

Thus, it is clear that -- for the last 29 years -- California has provided no special regulatory definition of Direct Price.  Instead, California simply adopted as its benchmark the Direct Price published by the industry pricing compendia.

## ARGUMENT

### I. PLAINTIFFS FAIL TO ALLEGE THAT ABBOTT REPORTED FALSE DIRECT PRICES

Plaintiffs summarily allege that Abbott's published Direct Prices were false.  *See* Compl. ¶ 50.  Plaintiffs do not, however, allege with the particularity required by Fed. R. Civ. P. 9(b) how Abbott's published Direct Prices were false.  Plaintiffs seem to imply that the Direct Prices were false because they were "undiscounted" prices.  *See* Compl. ¶ 45.  But, the term "Direct Price" does not connote anything about whether it is a discounted or undiscounted price.  Nor do Plaintiffs allege that Abbott ever made any representation that "Direct Price" represents anything

other than an undiscounted price.  Since Direct Price is entirely consistent with being an undiscounted price, Plaintiffs cannot allege falsity, and all five Counts should be dismissed as to Abbott for the period before December 1, 2002 (the period during which Plaintiffs allege that Direct Price was used).

## II. CALIFORNIA'S ATTEMPT TO REGULATE THE MEANING OF "DIRECT PRICE" VIOLATES THE COMMERCE CLAUSE

The Commerce Clause of the U.S. Constitution provides that "The Congress shall have Power [to] regulate Commerce [among] the several states."  U.S. CONST. art. I, § 8.  From that affirmative grant of power, the Supreme Court has inferred judicially enforceable limits on state action that affects interstate commerce.  When state action directly regulates interstate commerce, that action is *per se* invalid under the Commerce Clause.  *See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).  When state action indirectly affects interstate commerce, the local benefits from state regulation must clearly exceed the burden on interstate commerce.  *See id.*; *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  Under either test, California's attempt to regulate the term "Direct Price" fails.

Under the first test, California is attempting to unconstitutionally and directly regulate interstate commerce.  Through its California False Claims Act ("CFCA") claim, California is not only attempting to regulate "Direct Price" to mean a discounted price, but to require that the discounted price be published and that products be sold at that price throughout the fifty states.  *See* Compl. ¶¶ 44 and 45.

A similar effort by a state to dictate out-of-state prices was found to violate the Commerce Clause in *Brown-Forman*.  There, the Supreme Court held that a New York price affirmation statute, which had the effect of prohibiting a liquor distiller from changing its prices in other states once it had posted prices in New York, impermissibly regulated out-of-state

3

transactions in violation of the Commerce Clause.[3] *Brown-Forman*, 476 U.S. at 582.  Other extra-territorial attempts by states to restrict price negotiations have likewise been found unconstitutional.  *See Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) ("Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"); *PHRMA v. District of Columbia*, 2005 U.S. Dist. LEXIS 37897 at * 36-37 (D.D.C. Dec. 22, 2005) (holding that a D.C. statute, which prohibited drug manufacturers from causing their prescription drugs to be sold in D.C. for an "excessive" price, violated the Commerce Clause because "drug manufacturers will not remain free to conduct commerce on their own terms elsewhere, without either scrutiny or control by [D.C.], because of the potential liability they will face in [D.C.]").  California's attempt should fare no better.

Second, even if this Court finds that California's actions do not directly regulate interstate commerce, they still impermissibly burden interstate commerce.  "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike*, 397 U.S. at 142.  To determine whether a burden is "clearly excessive" the Court considers "the nature of the local interest involved, and [] whether it could be promoted as well with a lesser impact on interstate activities."  *Id.*

---

[3] The New York statute in *Brown-Forman* required liquor distillers doing business in New York to file a schedule of prices with the state and affirm that those prices were no higher than the lowest price charged to wholesalers anywhere in the United States.  *Id.* at 579.  Appellant, a liquor distiller, challenged the law, contending that it could not possibly file a schedule of prices that reflected the "effective price" charged to wholesalers throughout the nation, because each participating wholesaler could pay a different effective price in a given month depending on the amount of product it purchased.  *Id.* at 578.  Striking down New York's effort to regulate out-of-state prices, the Supreme Court stated, "While a State may seek lower prices for its consumers, it may not insist that producers or consumers in other States surrender whatever competitive advantages they may possess."  *Id.* at 580; *see also Baldwin v. G.A.G. Seelig, Inc*., 294 U.S. 511, 536 (1935) (finding unconstitutional a law that would neutralize the economic consequences of free trade among the states).

California has a legitimate interest in setting Medi-Cal reimbursement rates. But California could have fully satisfied this interest with no impact on interstate commerce by setting its own independent regulatory benchmark (as it did in its state rebate program). Instead, California elected to use a preexisting commercial term -- "Direct Price" -- which is used by the pharmaceutical industry in communications regarding price.

If California is permitted to regulate the meaning of "Direct Price" through its CFCA claim, then interstate commerce would be needlessly and adversely affected. Drug manufacturers and their customers throughout the country should be free to communicate with one another on pricing issues, including appropriate discounts off of Direct Price, without California stepping in to dictate the meaning (and require the publication) of existing industry terms such as "Direct Price."

Applying the balancing test set forth in *Pike*, the burden on interstate commerce that would be occasioned by California's proposed re-definition of Direct Price is "clearly excessive in relation to the putative benefits" to California, because California can choose any regulatory benchmark it desires (within federal guidelines) without proposing a modification of a commercial term ("Direct Price") that would affect commerce across the country. Accordingly, the claims against Abbott based on Direct Price should be dismissed.

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 17, 2006, a copy to Lexis-Nexis for posting and notification to all parties.

      /s/ Tara A. Fumerton
      Tara A. Fumerton