# EXHIBIT C



# The Medicare Drug Benefit:
## Implications for California

### Introduction

On January 1, 2006, the federal Medicare program will offer, for the first time, an outpatient prescription drug benefit to all Medicare beneficiaries. The new benefit, established as Part D of the Medicare program by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), is designed to lower the cost of prescription drugs for most senior and disabled Medicare beneficiaries.[1]

The Medicare drug benefit will present a wide, and potentially confusing, array of new options to California's four million Medicare beneficiaries. It will change the structure and delivery of drug coverage for nearly one million low-income beneficiaries in California who have existing drug coverage through Medi-Cal. Moreover, it will create significant operational and financial challenges for the state and county government agencies responsible for implementing key elements of the new drug benefit for low-income residents.

California lawmakers and program officials must soon make important decisions relating to the new drug benefit. These decisions will affect not only seniors and disabled persons covered by Medicare but also the state budget. Making these decisions even more difficult is that the new drug benefit is being rapidly implemented under very tight deadlines, while many questions regarding the new benefit still await answers from the federal Centers for Medicare and Medicaid Services (CMS). In addition, several unique attributes of California and its Medicare population contribute to the challenges state lawmakers and program officials face.

This issue brief provides an overview of the new Medicare drug benefit and a timeline for its implementation. In addition, it highlights the special characteristics of California that will affect introduction of the benefit and identifies and organizes numerous policy issues that state lawmakers and program officials must consider.

### Overview

The Medicare drug benefit is designed to provide Medicare beneficiaries with affordable drug coverage. The benefit is expected to reduce out-of-pocket drug spending for about 65 percent of Medicare beneficiaries in 2006.[2] Individual savings will vary greatly depending on income, prescription drug use, and other factors.

Under the standard Medicare drug benefit, a minimum of two drugs in each of 146 therapeutic classes must be covered by participating insurance plans.[3] For this standard coverage, beneficiaries will pay in 2006:

- A premium, which will vary by plan, estimated to average $37 per month nationally;[4]

- A $250 deductible;





APRIL 2005

- Twenty-five percent cost-sharing, up to an initial coverage limit of $2,250 in total drug spending;

- One hundred percent of their costs from $2,250 to $5,100 in total drug spending (a gap in coverage referred to as the "donut hole"); and

- Five percent cost-sharing thereafter.

For most Medicare beneficiaries, participation in the drug benefit is voluntary. For dual-eligibles, however, participation is mandatory if they are to continue receiving drug coverage. Federal matching funds will no longer be available for Medicaid expenditures for prescription drugs provided to dual-eligible beneficiaries except for drugs excluded from the Medicare drug benefit.

To begin receiving the new drug benefit, beneficiaries will have to enroll in a private Medicare insurance plan. There will be two types of Medicare drug plans: Medicare Advantage managed care plans that will provide all services covered by Medicare, including drug coverage (MA-PDs); and stand-alone prescription drug plans (PDPs) for beneficiaries who remain in the Medicare fee-for-service delivery system.

Medicare drug plans will be required to offer enrollees the standard benefit or an actuarially equivalent benefit with modified cost-sharing requirements. For example, plans may require higher cost-sharing with a smaller gap in coverage; or, they may charge tiered copayments in lieu of percentage cost-sharing. Drug plans may also offer more comprehensive coverage with higher premiums. In addition, the plans will establish formularies, subject to federal approval, which will limit the specific drugs covered.

### Terms Defined

**Dual-eligible:** Someone enrolled in both Medicare and Medicaid (which covers Medicare cost-sharing, prescription drugs, long-term care, and other services not covered by Medicare). Compared to other Medicare beneficiaries, dual-eligibles are more likely to reside in nursing facilities and to suffer from cognitive impairment and mental disorders.

**Medi-Cal:** California's version of Medicaid, it provides health and long-term care coverage for many low-income individuals, including seniors and people with disabilities. Medi-Cal is funded jointly by federal and state governments and administered by the state.

**Medi-Cal Managed Care:** California's unique system of managed care includes three different models operating in 22 counties. In any of eight counties, all Medi-Cal beneficiaries must enroll in a single plan (County Organized Health Systems); in 12 other counties, they have a choice of two plans (Two Plan Model); and in two counties they can choose among three or more plans (Geographic Managed Care).

**Medicare:** The federally funded and administered program that provides health care coverage for individuals age 65 and older and many individuals under age 65 with long-term disabilities.

**Medicare Advantage:** Medicare's managed care program (formerly Medicare+Choice).

**Medicare Part D:** The name given to the new Medicare drug benefit. Medicare Part A covers inpatient hospital services and post-acute care, Part B covers physician and other outpatient services, and Part C is the Medicare Advantage program.

## Drug Coverage for Low-Income Beneficiaries

The Medicare drug benefit includes significant federal subsidies to reduce cost sharing for low-income beneficiaries (see Figure 1). Many low-income beneficiaries will receive coverage for the standard benefit with much lower or no monthly premiums. In California, the federal government will set the subsidy based on the average premium in the state. Low-income beneficiaries who enroll in a drug plan that charges a premium high-

**Figure 1: Cost-Sharing and Enrollment for Medicare Drug Benefit Eligibles in 2006**

| ELIGIBILITY LEVEL* | Premium | Deductible | Copay | Copay After Catastrophic Limit§ | Coverage Gap | Enrollment |
|---|---|---|---|---|---|---|
| Dual-eligible (Medi-Cal) individual regardless of assets† | None | None | $1/$3‡ (generic/brand) | None | None | Auto-enrolled |
| Income below $12,920 ($17,321 for couples) meeting asset test | None | None | $2/$5 (generic/brand) | None | None | Facilitated by CMS |
| Income between $12,920 ($17,321) and $14,355 ($19,245) meeting asset test | 25 to 75% of full premium, depending on income | $50 | 15% of drug cost | $2/$5 (generic/brand) | None | Facilitated by CMS |
| Income above $14,355 ($19,245) | $37 per month average | $250 | 25% of drug cost | 5% of drug cost | $2,250 to $5,100 | Up to individual |

\* Income limits are tied to federal poverty guidelines, which are updated annually. Values shown reflect guidelines published in February 2005.

† Institutionalized dual-eligibles will have no cost-sharing responsibilities. However, beneficiaries receiving home and community-based waiver services or residing in assisted living facilities will be responsible for copayments.

‡ Dual-eligible beneficiaries with incomes above $9,570 ($12,830 couple) will have co-pays of $2 (generic) and $5 (brand).

§ Set at $5,100 in total drug spending for 2006.

er than the state average will have to pay the difference between the plan's premium and the federal subsidy. At least one prescription drug plan will be available without a premium to all low-income beneficiaries with incomes below 135 percent of poverty.

As of January 1, 2006, dual-eligible beneficiaries will no longer receive drug coverage through Medi-Cal. To continue receiving drug coverage, they must enroll in a Medicare drug plan. CMS plans to automatically enroll dual-eligible beneficiaries into plans starting in October 2005, completed by January 1, 2006. As part of this process, dual-eligible beneficiaries will be enrolled randomly into stand-alone PDPs that offer a premium priced at or below the average for all plans offered in the state.  Dual-eligible beneficiaries may select a different plan before or after they are automatically enrolled. Even if they fail to exercise a choice before January 1, 2006, they will be permitted to switch plans thereafter on a monthly basis.

To encourage broad participation in the new drug benefit, CMS will also facilitate enrollment for low-income Medicare beneficiaries who are not dual-eligibles beginning in May 2006. Although details of this facilitated enrollment are not yet available, CMS has indicated that it may use a default system whereby CMS will inform low-income Medicare beneficiaries that they will be enrolled in a CMS-selected plan. If the beneficiary does not choose a different plan, or does not formally reject enrollment by a certain date, the beneficiary will become enrolled in that CMS-selected plan.

## Timeline for Implementation

During 2005 and early 2006, numerous important and complex tasks must be accomplished by federal and state officials, drug plans, and Medicare beneficiaries, as the new benefit is implemented (Figure 2 on the following pages). Actions required of the California

**Figure 2: Key Dates for Implementation of the Medicare Part D Drug Benefit (as of April 2005)[5]**



CMS Action
State Action
Part D Plan Action
Beneficiary Action

2005
Jan

CMS issues final rules [21] for Part D and final formulary guidelines

Feb

18  Potential Medicare drug plans must submit intent to apply.

DHS must submit first test enrollment files to CMS

Mar

DHS receives instructions from CMS for processing eligibility determinations for low-income subsidy program

23  Potential Medicare drug plans must submit applications to CMS

Apr

Social Security Administration (SSA) likely to begin training consumer intermediaries on low income subsidies

18  Potential Medicare drug plans must submit formularies to CMS

May

Beneficiaries can begin applying for low-income subsidies at SSA community events

CMS approves Part D plan formularies

Beneficiaries receive mailings from SSA/CMS containing information on low-income subsidies; eventually SSA will mail applications for the low-income subsidies to potential eligible individuals (until mid-August)

DHS must begin submitting enrollment production files on a monthly basis to CMS

Jun

6  Medicare drug plans submit bids to CMS

CMS releases guidance for "facilitated" enrollment processes and state pharmaceutical assistance program coordination requirements

Jul

DHS submits electronic data to CMS identifying dual eligibles and their drug costs for 2003 and each subsequent month

1  Beneficiaries can begin applying for low-income subsidies at any Medi-Cal or SSA office; applications also available online

CMS provides preliminary approval or disapproval of Part D plan bids

Medi-Cal and California SSA offices begin processing low-income subsidy

Medicare drug plans train with CMS on sub-mission of drug claims

continued on next page

**Figure 2: Key Dates for Implementation of the Medicare Part D Drug Benefit (as of April 2005), continued**



The legend indicates:
- CMS Action
- State Action
- Part D Plan Action
- Beneficiary Action

2005

**Aug**

**Sep**

CMS awards contracts to PDP/MA plans

**Oct**

CMS begins to assign full dual-eligible beneficiaries to PDPs; CMS sends Part D plan info to dual-eligible beneficiaries and sends California 2006 baseline of per capita drug costs for "claw-back" for the next year

Medicare drug plans receive notification from CMS of plan assignments for full dual-eligibles

Auto-enrolled dual-eligible beneficiaries begin receiving Part D plan assignments from CMS

**Nov**

CMS begins routine monthly auto-enrollment of new dual-eligible beneficiaries

15 All beneficiaries may begin voluntary enrollment in Part D plans

**Dec**

31 Last chance for dual-eligible beneficiaries to change plans before auto-enrollment takes effect

2006
**Jan**

Part D benefit 1 operational; discount card program ends

Medi-Cal stops 1 providing coverage to dual-eligible individuals for drugs covered under Part D

1 All Medicare eligible beneficiaries may begin receiving drug coverage under Part D; auto-enrollment is effective; dual-eligibles may no longer receive drug coverage under Medi-Cal

CMS bills California for first monthly Part D payment

CMS identifies eligible beneficiaries not enrolled and mails reminders about Part D

**Feb**

California makes first monthly Part D payment to CMS

CMS begins "facilitated" enrollment processes for individuals eligible for low-income subsidies

**May**

15 Initial Part D open enrollment period ends and late enrollment penalty begins

Department of Health Services (DHS) include:

- Ensure that its staff is able to answer questions from consumers about the new Medicare prescription drug benefit and how it interacts with other sources of coverage.

- Provide enrollment files to the federal government that identify the state's dual-eligible beneficiaries to ensure that they are enrolled in a Part D plan.

- Determine eligibility for the Medicare drug benefit's low-income subsidies.

- Provide payment to the federal government for a portion of its dual-eligible beneficiaries' prescription drug costs (known as the "clawback" requirement).

The timeline provides an overview of the tasks that DHS must accomplish for successful implementation of the new Medicare benefit, as well as the dates these tasks are to be undertaken or completed. Also included are major milestones and deadlines for CMS, for insurers who will offer the drug benefit, and for Medicare beneficiaries.

## The Uniqueness of California and Its Impact on Implementation

While all states will face many challenges and new financial obligations associated with the new Medicare prescription drug benefit, implementation in California is particularly complex due to several unique characteristics of the state and its Medicare population.

### Size and Diversity of Medicare Population

California has the largest Medicare population of any state, as well as the largest number of dual-eligible beneficiaries.[6] California's Medicare population is not only large, it is also extraordinarily diverse. Compared to the Medicare population nationally, a greater proportion of California's Medicare population is Hispanic (12 percent vs. 5 percent nationally) and Asian/Other (11 percent vs. 4 percent nationally); a smaller proportion is African American (5 percent vs. 8 percent nationally).[7] California's dual-eligible population is even more likely to be non-white: 22 percent are Hispanic, 20 percent are Asian/Pacific Islander, and 10 percent are African American.[8] Even these comparisons, which (for example) lump numerous distinct Asian ethnic groups into one category, do not capture the extent of the multi-lingual, multi-cultural characteristics of California's Medicare population. Such diversity adds significantly to the already daunting challenges DHS staff, consumer intermediaries, and advocates face in conducting outreach and educating beneficiaries about the change in prescription drug benefits and the need to enroll in a private plan.

### Participation in Medicare Managed Care

California has more Medicare beneficiaries enrolled in Medicare Advantage plans than any other state — twice as many as in Florida or New York.[9] California's 1.3 million Medicare Advantage enrollees account for one-fourth of all Medicare Advantage enrollees in the country. About 32 percent of Medicare beneficiaries in California are enrolled in Medicare Advantage plans, compared to 13 percent nationwide. This difference is due in large part to the greater selection of private health plans in California than in other states. In an urban county such as Los Angeles, beneficiaries can select among 11 different Medicare Advantage plans offering 21 plan options. Even in less populated counties, such as Sonoma or Stanislaus, beneficiaries can select among three different Medicare Advantage plans.[10]

The existence of a vibrant Medicare Advantage market may mean that many beneficiaries are accustomed to making health care coverage choices. On the other hand, the large number of existing Medicare Advantage plans is likely to result in a greater number of drug plan offerings in California, which will contribute to the complexity of the decision-making process.

## Dual-Eligible Beneficiaries and Managed Care

California also has a large number of dual-eligible beneficiaries enrolled in managed care. There are 87,000 dual-eligible beneficiaries enrolled in Medicare Advantage plans,[11] and over 94,000 who are enrolled in Medicaid managed care plans (mostly in the five County Organized Health Systems).[12] This presents two challenges:

- CMS will not automatically enroll in a Medicare drug plan those dual-eligibles who currently receive care through a Medicare Advantage plan. In its final regulations, CMS asserts that it does not have legislative authority to automatically enroll dual-eligible beneficiaries in drug plans if they are currently enrolled in Medicare managed care. Instead, CMS will "facilitate" enrollment for these beneficiaries; in this process, beneficiaries may be assigned to plans that offer premiums above the low-income subsidy levels. Such beneficiaries would be personally responsible for the difference in premium costs.

- When the new Medicare drug benefit is implemented, a Medi-Cal managed care plan will no longer manage prescription drug benefits for its dual-eligibles, unless that plan chooses to offer MA-PD or PDP coverage and the beneficiary chooses that coverage. This scenario is likely to have the most affect on the state's five County Organized Health Systems, in which enrollment is mandatory for all Medi-Cal beneficiaries, including dual-eligibles, in the eight counties in which they operate.

## County-Based Eligibility Determination Process

The MMA requires the Social Security Administration and states to perform the eligibility determinations for low-income subsidies. In California, eligibility determination for Medi-Cal is determined by county social services staff. SSA and DHS are considering permitting county eligibility workers to collect low-income subsidy applications and forward them to SSA for processing. However, the MMA requires that states themselves be equipped to process a beneficiary's application, so each county may be responsible for training its staff and making the information technology system changes necessary to perform eligibility determinations for low-income subsidies. This requirement places new staffing and cost burdens on counties, and may lead to inconsistencies in how eligibility for the low-income subsidies is determined in different counties.

## Medi-Cal Drug Rebates

All states participate in a federal program through which they receive quarterly rebates directly from drug manufacturers to help offset what they pay for prescription drugs. California also uses its substantial purchasing power to negotiate supplemental rebates. A drug manufacturer must sign a supplemental rebate contract to have its drugs included in Medi-Cal's formulary. In fiscal 2003–04, California collected nearly $1.5 billion in drug rebates, including $481 million through the state supplemental rebate program.

Dual-eligible beneficiaries account for 55 percent of Medi-Cal's fee-for-service prescription drug expenditures.[13] Because the new Medicare drug coverage will remove the dual-eligibles from Medi-Cal's drug purchase management, California's purchasing power is expected to drop, as will the value of the supplemental rebates it receives. This loss of purchasing power may lead to higher per capita net drug expenditures for Medi-Cal beneficiaries who are not dual-eligible.

The magnitude of California's supplemental rebates from drug manufacturers is also important in the context of the clawback provision of the Medicare drug benefit. In calculating the clawback amount, CMS has indicated that it will consider the value of drug rebates collected in 2003 regardless of when the drugs were provided and paid for. In other words, rebates collected in 2004 for drug purchases made in 2003 are not considered. The state's Legislative Analyst's Office estimates that the combined impact of the Medicare drug benefit — including reduction in Medi-Cal drug expenditures for dual-eligibles, the clawback, and loss of drug rebates — will result in additional state General Fund expenditures of $758 million from 2005–06 through 2008–09.[14]

### SB 393

In 1999, California adopted a law which allows all Medicare beneficiaries in the state to purchase prescription drugs at a price that is no greater than what Medi-Cal pays. It is not yet clear how the new Medicare drug benefit will affect this law (commonly referred to as the "Prescription Drug Discount Program for Medicare Recipients") and the prices beneficiaries pay for drugs not covered by their drug plan.

## Major Issues and Considerations for the State of California

The new Medicare prescription drug benefit will have a significant impact on California's health care programs and the residents they serve. However, even as program implementation gets underway, CMS is still in the process of developing guidance to states on how they are to administer the program's low-income subsidies. And some provisions that significantly affect California's Medi-Cal beneficiaries will be carried out without any involvement or oversight by the state, including CMS administration of the auto-enrollment process for dual-eligible beneficiaries.

Despite these contingencies, California faces imminent decisions on several key matters. These include how the state will:

- Fulfill federal requirements in implementing the legislation;
- Modify its Medi-Cal and possibly other health and human services programs to coordinate with the new benefit;
- Notify beneficiaries of changes to existing state coverage, of new opportunities for assistance, and of the steps they must take in order to participate; and
- Modify current state budgets to reflect changes.

Figure 3 provides summaries of some of the most important challenges over the next year. It describes what actions must be taken within California, as well as who must take them: state lawmakers (the governor and legislature); program officials within Medi-Cal and the Department of Health Services, and in other departments, such as aging, mental health, and development services; and county eligibility workers.

**Figure 3. Four Major Issues, the Challenges Posed and Actions Required**

### Issue 1: Beneficiary Outreach and Enrollment

Dual-eligible beneficiaries must enroll in a Medicare private plan by January 1, 2006 in order to continue to receive prescription drug benefits. CMS will auto-enroll those dual-eligible beneficiaries who are not in a managed care plan and who fail to select a drug coverage plan on their own.

| CHALLENGE | ACTION REQUIRED |
|---|---|
| State officials must provide CMS with a complete list of dual-eligible beneficiaries by July 1, 2005. CMS will notify these dual-eligible beneficiaries that they qualify for the low-income subsidy and must choose a Medicare drug benefit plan to continue their drug coverage. | Program officials must ensure that they can identify all dual-eligible beneficiaries.<br><br>State lawmakers must decide whether to create safeguards to prevent coverage gaps for those dual-eligible beneficiaries who are not properly identified. |
| States and the Social Security Administration will administer eligibility determinations for the low-income subsidies. In California, counties have traditionally determined eligibility for Medi-Cal. | County eligibility workers must be trained about the new benefit and low-income subsidy program, prepared to determine eligibility for the low-income subsidies, and be capable of transmitting this information to CMS.<br><br>Program officials must decide how best to ensure that eligibility determination for the low-income subsidies is performed uniformly across all 58 counties.<br><br>State lawmakers must decide whether to provide funding for these new administrative responsibilities. |
| Dual-eligible beneficiaries must enroll in a Medicare drug plan by December 31, 2005 to continue to receive drug coverage. CMS will randomly assign dual-eligibles to a drug benefit plan in mid-October; those who do not select a different plan will be auto-enrolled into assigned plans on January 1, 2006. | State lawmakers must decide whether to allocate funding to assist dual-eligible beneficiaries in learning about their options and selecting the Medicare drug benefit plan which best meets their individual needs. |
| Dual-eligible beneficiaries may not understand transition requirements or how to navigate within the new Medicare drug plan they join. | Program officials must be prepared to answer questions from dual-eligible beneficiaries about changes to their coverage. |

### Issue 2: Coverage and Cost-Sharing

Coverage of specific prescription drugs for dual-eligible beneficiaries, and the amounts some dual-eligible beneficiaries must pay, will vary depending on plan choice.

| CHALLENGE | ACTION REQUIRED |
|---|---|
| The Medicare drug plans available to dual-eligible beneficiaries without a premium (i.e., those priced at or below average premium in California) may not cover the same drugs that Medi-Cal covers. Medicare drug plans are prohibited from covering certain drug classes (e.g., benzodiazepines) commonly prescribed to dual-eligible beneficiaries. | State lawmakers and program officials must decide what safeguards are needed to ensure that dual-eligible beneficiaries do not experience adverse effects as a result of changes in their formulary. They must also decide if Medi-Cal will cover Medicare-excluded drug classes. |
| If dual-eligible beneficiaries select a Medicare drug plan with a premium above the state average, they must pay the difference in premiums and full copayments in order to obtain better coverage. | State lawmakers must decide whether they want to ensure that dual-eligible beneficiaries have access to the same drugs as other Medi-Cal beneficiaries. If so, they must either provide state-only funded coverage that wraps-around the Medicare drug benefit, or they must subsidize the premiums of certain higher-cost Medicare prescription drug plans. |
| Under Medicare's new drug benefit, the $3 copayments for brand-name prescription drugs is higher than the $1 copayment under Medi-Cal, and pharmacies can refuse to dispense a drug if a beneficiary does not pay the full copayment. | State lawmakers must decide whether to create a pool of funding to ensure that these higher copayments are not a barrier to drug access for dual-eligible beneficiaries. |

**Figure 3. Four Major Issues, the Challenges Posed and Actions Required, continued**

Issue 3: Coordination of Care

The addition of a new insurance plan for drug coverage may exacerbate problems with coordination of care for dual-eligible beneficiaries, particularly those residing in institutional settings or receiving mental health services.

| CHALLENGE | ACTION REQUIRED |
|---|---|
| Dual-eligible beneficiaries may have health care coverage from three or more sources: Medicare (FFS or managed care); a Medicare private drug plan; Medi-Cal (FFS or managed care); and other state programs. This will increase opportunities for confusion and fragmentation, and making disease management and care coordination more difficult. | Program officials must set up systems to ensure that care is coordinated. |
| Residents of the same nursing home or state developmental center may be enrolled in different Medicare drug benefit plans, requiring the long-term care provider to manage multiple formularies instead of only one. | Program officials must take steps to ensure that nursing homes and state developmental centers understand and prepare for these changes to the current delivery system. |
| Dual-eligible beneficiaries residing in nursing homes will pay no share of cost for their drug coverage, whereas dual-eligible beneficiaries residing at home or in a community-based setting will have copayments. | State lawmakers must decide whether to take action to ensure that the Medicare drug benefit does not exacerbate the existing Medi-Cal bias toward nursing home care over community-based, long-term care options. |

Issue 4: State Financing

Implementation of the benefit has implications for the Medi-Cal program and administrative expenditures.

| CHALLENGE | ACTION REQUIRED |
|---|---|
| As Medicare beneficiaries are screened for the low-income subsidies, Medi-Cal enrollment is expected to increase as some of those screened are determined to be eligible for Medi-Cal. | Program officials and state lawmakers must decide how much to budget for increased Medi-Cal enrollment due to this "woodwork effect." |
| The amount California must contribute (the "clawback") to the Medicare drug benefit is based on Medi-Cal spending in 2003. However, supplemental rebates collected from manufacturers in 2004 for drugs purchased in 2003 are not counted. Also, clawback payments are linked to per capita growth in Medicare drug spending. | Program officials and state lawmakers must decide how much to budget for potentially higher Medi-Cal expenditures as a result of the clawback formula. |
| The state contribution under the clawback formula will decrease from 90 percent of projected drug expenditures for dual-eligible beneficiaries in 2005 to 75 percent of projected expenditures in 2015 and beyond. | State lawmakers must decide whether any long-term savings that materialize from the new Medicare drug benefit are to be reinvested in Medi-Cal. |
| Medi-Cal managed care plans will no longer have financial responsibility for drug coverage for their residents/members who are dual-eligible beneficiaries. | Program officials must determine how much to reduce payments to health plans for dual-eligible beneficiaries, based on this reduction in their financial responsibility. |
| Medi-Cal will lose purchasing power associated with the nearly one million dual-eligible beneficiaries. Thus, revenues from supplemental drug rebates may fall. | Program officials must develop new negotiating strategies to offset this reduction in purchasing power. |

## Conclusion

The impact of the new Medicare drug benefit will be felt throughout the health care system in California. The Medicare drug benefit is expected to reduce beneficiaries' out-of-pocket costs for prescription drugs, but it will also create many challenges for beneficiaries, particularly dual-eligibles who have existing drug coverage through Medi-Cal. Implementation of the new benefit also creates numerous challenges for state and county program officials, and raises numerous policy questions for California lawmakers. The process will be complicated by the fact that certain characteristics of the health care marketplace and the Medicare population in California present unique challenges to implementation of the new drug benefit.

The new benefit and its impact will begin to take shape as insurance companies and managed care plans submit applications to participate in the new program, as CMS awards contracts to drug plans, and as CMS addresses the many questions about the program that remain unanswered. However, implementation timing is such that state lawmakers and program officials will have to make decisions on many issues in the absence of perfect information. And when new information becomes available, decisions will have to be made quickly in order to make the transition to the new benefit as successful as possible and to minimize adverse consequences, particularly for dual-eligible beneficiaries.

## AUTHORS

Prepared by Chiquita White, Jonathan Blum, Ryan Padrez of The Health Strategies Consultancy, LLC

## ENDNOTES

1. Along with adding a drug benefit, the MMA includes financial incentives for employers, including state retiree programs, to maintain drug coverage under private retiree plans.

2. Jim Mays, et al., The Kaiser Family Foundation *Estimates of Medicare Beneficiaries' Out-of-Pocket Drug Spending in 2006.* November 2004.

3. The MMA mandated CMS to work with the United States Pharmacopeia (USP) to develop a model therapeutic classification system. The system which USP developed contains 146 unique therapeutic categories and classes that Medicare drug plans may use when developing their formularies.

4. Congressional Budget Office, *Medicare Fact Sheet.* March, 2005.

5. Based on The Health Strategies Consultancy's analysis of the final rules and accompanying CMS guidance documents implementing Title I of the Medicare Modernization Act (CMS-4068-F).

6. Kaiser Family Foundation, "StateHealthFacts, Total Number of Medicare Beneficiaries, 2003," www.statehealthfacts.org (accessed on March 30, 2005).

7. Kaiser Family Foundation, "StateHealthFacts, Distribution of Medicare Beneficiaries by Race/Ethnicity, State Data 2002–2003, U.S. 2003," www.statehealthfacts.org (accessed April 4, 2005).

8. California HealthCare Foundation analysis of October 2004 Medi-Cal enrollment data.

9. Kaiser Family Foundation, "StateHealthFacts, California: Total Medicare Advantage Enrollment, 2004," www.statehealthfacts.org (accessed on March 18, 2005).

10. Centers for Medicare and Medicaid Services, "Medicare Personal Plan Finder," www.medicare.gov (accessed March 21, 2005; re plans in zip codes 90006, 95476, 95358).

11. Interview with DHS staff.

12. Stephanie Anthony, et al., Kaiser Family Foundation, *Medicare Managed care for Dual Eligibles: State Profiles,* October 2000.

13. California Legislative Analyst's Office, *Part D Stands for Deficit: How the Medicare Drug Benefit Affects Medi-Cal,* March 16, 2005.

14. Ibid.