# EXHIBIT G

# Department of Health and Human Services
## OFFICE OF INSPECTOR GENERAL

# STATE STRATEGIES TO CONTAIN MEDICAID DRUG COSTS



Inspector General

October 2003
OEI-05-02-00680

Table 2. State EAC Changes Involving Tiered Formulas

| State | Previous EAC | Revised EAC |
|---|---|---|
| AR | AWP-10.5% | Brand: AWP-14%<br>Generic: AWP-20% |
| CO | AWP-12% | Brand: AWP-13.5%<br>Generic: AWP-35% |
| IL | Brand: WAC+8%<br>Generic: WAC+12% | Brand: AWP-12%<br>Generic: AWP-25% |
| KS | AWP-10% | Brand: AWP-11%<br>Generic: AWP-27% |
| WA | AWP-11% | Brand: AWP-14%<br>Generic: AWP-50% |

Sources: OIG National Survey, State Plan Amendments, and State websites

**Lack of Accurate Information on Drug Prices.** As reported by 12 States, the lack of accurate drug pricing information constitutes a significant barrier to containing Medicaid drug costs. Most States rely on AWP and/or WAC cost to determine pharmacy reimbursement. These are reference prices that States obtain from First Databank, a private company which issues a national drug pricing compendium. Reports by the OIG and other researchers have found AWP to substantially overstate pharmacies' actual acquisition costs and have discredited its validity. OIG audits have also suggested that WAC is unreliable.

Despite the widely recognized unreliability of AWP and WAC as a measure of pharmacy acquisition cost, States have few alternative sources for drug prices. Actual sales data are proprietary, and only three States indicated that they regularly obtain additional price information from drug manufacturers, pharmacies, or other sources. One State criticized the "obfuscation of price" by drug manufacturers. Several States suggested that CMS share average manufacturer price (AMP) data with States. CMS collects AMP from manufacturers as part of the Federal drug rebate program, but the agency does not share these prices with States. OIG has recommended that CMS provide States with AMP. However, CMS has not implemented this recommendation due to legal issues.[26]

One advantage of using AMP to more accurately estimate pharmacy acquisition cost is that AMP is a statutorily-defined price calculated from actual sales and subject to audit by the Department. Texas recently passed legislation requiring

manufacturers to provide AMP to the State Medicaid agency; however, many manufacturers have not yet complied.

---

**Profile of Pharmacy Reimbursement by Texas Medicaid**

Texas stands out among Medicaid programs in its aggressive pursuit of accurate drug pricing information and its efforts to reflect the complexity of the pharmaceutical marketplace. Rather than relying solely on the national compendia used by most States to obtain AWP and WAC, Texas requires drug manufacturers to submit "cost to wholesaler" and "direct" prices to the Medicaid agency, as well as AMP data. Direct prices represent sales directly from manufacturers to pharmacies, rather than through wholesalers. "Cost to wholesaler" is conceptually equivalent to WAC, but drug manufacturers must certify these prices, which may increase their accuracy.

Texas also uses a complex system for estimating pharmacy acquisition cost that takes into account how the pharmacy purchased the drug. If the drug is purchased through a wholesaler, Texas applies its EAC formula. If a pharmacy obtains the drug through a warehouse, Texas modifies its methodology to account for the volume discount associated with warehouse purchasing. Finally, Texas reimburses at the direct price if the drug purchase is direct from the manufacturer.

---

CMS's primary role is to approve the State plan amendments required for a State's pharmacy reimbursement change. To obtain approval, States must submit documentation showing that the new estimated acquisition cost formula represents the State's "best estimate of the price generally, and currently, paid by providers" for the drug.[27] According to CMS staff, acceptable evidence includes audits of pharmacy acquisition costs, and reviews of pharmacy reimbursement by other payers, or by surrounding States' Medicaid agencies.

CMS considers the establishment of pharmacy reimbursement rates to be a State prerogative.[28] However, 10 States report wanting to receive additional reimbursement guidance, including more accurate drug price information, from CMS. In addition to specific requests for AMP, States also look for guidance from CMS in setting accurate drug reimbursement estimates and for support in overcoming stakeholder opposition to reimbursement changes.

**Pharmacy Opposition to Reimbursement Reductions.** States often face resistance to changing their estimated pharmacy acquisition cost formulas because reduced Medicaid drug

reimbursement decreases pharmacies' revenue.  Of the 17 States that reported reductions to their EAC formula as an important cost containment strategy, all except 2 reported pharmacy opposition as a barrier to such efforts.  Twelve additional States also reported pharmacy opposition as a barrier to reducing pharmacy reimbursement.

It is important to distinguish between two types of costs for which Medicaid reimburses pharmacies: (1) the cost of the drug itself (ingredient cost) and (2) the cost associated with dispensing the drug.  States' estimated acquisition cost formulas represent the ingredient cost the provider paid for the drug, while dispensing fees cover the other professional costs of dispensing the drug.[29]  The reductions to EAC discussed in this section address only this ingredient cost, not the additional dispensing fee.

States face competing demands as they reconcile the need to reduce drug prices with the need to maintain adequate pharmacy participation in Medicaid.  Concerns about beneficiary access influence attempts to reduce drug reimbursement.  In 2002, Massachusetts substantially scaled back proposed drug reimbursement reductions after 3 major pharmacy chains threatened to stop serving Medicaid beneficiaries.[30]  In 2002, Washington successfully reduced pharmacy reimbursement while acting to protect beneficiary access to drugs through implementing a pharmacy mail order service and offering transportation services to beneficiaries in rural areas with limited pharmacy participation.[31]

**Savings Attributed to Changing States' Reimbursement Formulas.** Two States, Arizona and Washington, measured cost savings achieved through reductions in reimbursement, and eight additional States provided estimates or projections of cost savings attributed to their EAC changes.  States' annual savings ranged from $500,000 to $21.7 million, as shown in Table 3.  States' savings represent a proportion of their total FY 2001 drug expenditures that ranged from less than 1 percent to more than 21 percent.

Table 3. Savings from Reductions in EAC Reimbursement Formulas

| State | Projected/Estimated Annual Savings (in millions) | Savings as Percent of State's FY 01 Drug Expenditures |
|---|---|---|
| NV | $9.6* | 21.3% |
| AZ | $0.5 (actual) | 19.3% |
| WA | $21.7 (actual) | 5.9% |
| KY | $11.4 | 2.3% |
| TX | $20.3 | 1.9% |
| OH | $16 | 1.8% |
| OR | $3 | 1.6% |
| CO | $1.4 | 1.1% |
| KS | $1.5 | 1.0% |
| NE | $1.2 | 0.9% |

Source: OIG National Survey, 2002

*Nevada projected $2.4 million/quarter. We used this rate to estimate annual savings.

**Twenty-Four States Reported State Maximum Allowable Cost Programs to Rein in Drug Costs as Central to Cost Containment.**
Beyond the national Federal upper limits (FULs), States can achieve additional savings by setting State maximum allowable costs (MACs). Twenty-four States identified their MAC program as a successful drug cost containment effort. Conceptually, State maximum allowable cost programs resemble the Federal upper limit program in that they establish maximum reimbursement amounts for groups of equivalent drugs, i.e., a brand name drug and its generic equivalents.

States with MAC programs achieve additional cost savings by (1) setting reimbursement limits for multisource drugs not covered by the FUL program, and (2) setting MACs at lower amounts than existing FULs. While the current FUL list includes less than 200 drug entities out of thousands of multisource drugs, Texas has established MACs for 837 drug entities.[d][32] South Carolina reimburses at 10 percent below the FUL.

---

[d] A drug entity includes the multiple strengths and forms in which a particular drug is available.