UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             )
IN RE: PHARMACEUTICAL INDUSTRY                               )
AVERAGE WHOLESALE PRICE                                      )  MDL No. 1456
LITIGATION                                                   )  Civil Action No. 01-CV-12257-PBS
                                                             )
                                                             )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             )
THIS DOCUMENT RELATES TO:                                    )  Hon. Patti B. Saris
International Union of Operating Engineers,                  )
Local No. 68 Welfare Fund v. AstraZeneca PLC                 )
et al. Civil Action No. 04-11503-PBS                         )
                                                             )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**OPPOSITION TO DR. HOPKINS' AND HIS COUNSEL'S
OBJECTIONS AND AMENDED OBJECTIONS TO MAGISTRATE JUDGE
BOWLER'S RULING DENYING
THEIR REQUEST FOR A PROTECTIVE ORDER**

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submits this opposition to the objections and amended objections filed by Dr. Hopkins and his counsel in which they seek to have this Court overrule Magistrate Judge Bowler's denial of their request for a protective order (the "Objections").

1.  Dr. Hopkins and his counsel have filed their Objections in an effort to further delay production of certain materials responsive to discovery this Court in August authorized defendants to propound and which Magistrate Judge Bowler on January 6, 2006 ordered be produced within seven days. Dr. Hopkins and his counsel have engaged in self-help and have ignored Judge Bowler's imposed deadline for production without even attempting to obtain a stay of production.

2.  Dr. Hopkins and his counsel are engaged in a transparent effort to take advantage of the fact that, at plaintiff's counsel's request, this Court has set January 27, 2006 as a date for a hearing on the pending motion to remand this action to New Jersey state court. Dr. Hopkins and his counsel argue that they should be absolved of their discovery obligations with respect to certain documents simply because the Court intends to hear argument on plaintiff's remand motion. This argument presupposes that this Court: (1) was aware of Judge Bowler's January 6 discovery order, as well as her setting a date of February 2, 2006 for a hearing on defendants' motion to compel production of documents and a privilege log from plaintiff,[1] (2) intends to remand the case from the

---

[1] Prior to this Court's setting of January 27, 2006 as a hearing date on the pending motion to remand, Judge Bowler set February 2, 2006 as a date to hear argument on defendants' motion to compel plaintiff to produce documents responsive to discovery requests propounded in accordance with this Court's August 19, 2005 order. Plaintiff has claimed a settlement privilege of documents reflecting communications between its counsel and the doctor defendants and their counsel. AstraZeneca has set forth the uniform authorities holding that no such privilege applies in this circumstance. The matter is fully
(...continued)

1

bench on January 27, 2006, and (3) through the setting of a hearing date, intended – *sub silentio* – to overrule Judge Bowler's denial of Dr. Hopkins' and his counsel's motion for a protective order and her ability to consider and rule on the pending motion to compel with respect to the plaintiff. We submit that Dr. Hopkins' and his counsel's position is, on its face, untenable.

3.  Dr. Hopkins and his counsel argue that the discovery Judge Bowler ordered could never establish that Dr. Hopkins was "fraudulently joined to destroy this Court's diversity jurisdiction because Dr. Hopkins himself, a Florida resident named in a New Jersey action, creates diversity." (Objections at 2.)[2] As all the papers filed in connection with the pending motion to remand make clear, no defendant has suggested (nor would suggest) that Dr. Hopkins was joined <u>to defeat diversity</u>. Diversity has nothing to do with this matter. The matter was not removed based on diversity grounds. The fraudulent joinder issue relates solely to whether the doctor defendants' post-removal indication that they did not consent to removal defeats removal. For all of the reasons defendants have outlined, there is no reason to reach that issue because none of the doctor defendants had been properly served with the complaint under New Jersey law prior to removal; thus, their consent was unnecessary. (*See, e.g.*, Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Remand, dated May 6, 2005; Memorandum

---

(continued…)
briefed before Judge Bowler. Dr. Hopkins and his counsel made the same settlement privilege argument in seeking a protective order, which Judge Bowler refused to grant. We defer to the Court's preference as to whether to proceed with argument on the remand motion on January 27, 2006 or adjourn the hearing on that issue until after Judge Bowler's discovery hearing on February 2, 2006.

[2] This argument does not reappear in the Amended Objections filed by Dr. Hopkins and his counsel.

of Law in Opposition to Motion by Plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund, for Immediate Remand Based Upon Declarations of Defense Counsel or, in the Alternative, Motion to Reconsider Memorandum and Order of August 19, 2005 That Permitted Discovery on Issue of Alleged Fraudulent Joinder, dated October 12, 2005; Second Supplemental Memorandum of Law in Opposition to Motion for Remand by Plaintiff International Union of Operating Engineers, Local No. 68 Welfare Fund, dated December 28, 2005.) To the extent that the Court determines that the doctor defendants had been served under New Jersey law prior to the filing of the removal petition (and we submit the evidence in the record demonstrates that they were not), only then need the Court analyze the issue of fraudulent joinder. In any event, diversity has nothing to do with it.

4.      Dr. Hopkins and his counsel argue that, even if Dr. Hopkins was named by the plaintiff as a defendant solely to defeat removal and based on an understanding that plaintiff would not pursue its alleged claims against Dr. Hopkins, that factual scenario would not establish fraudulent joinder. As set forth above, defendants do not believe that the Court need reach the issue of fraudulent joinder given that the doctor defendants were not properly served under New Jersey law prior to removal. Nevertheless, if reached, defendants respectfully disagree that the factual scenario posited by Dr. Hopkins and his counsel does not establish fraudulent joinder. The joinder of a defendant is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, *or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.*" *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 220 F. Supp. 2d 414, 419

3

(E.D. Pa. 2002) (quotations omitted; emphasis added). As this Court has recognized, when assessing the fraudulent joinder issue, "the primary concern is whether plaintiff's claim was brought in good faith." *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 5 (D. Mass. 2001). If, as Dr. Hopkins and his counsel posit, plaintiff did not intend to pursue its claims against Dr. Hopkins, but joined him instead to defeat removal, there is no good faith intention on the plaintiff's part to pursue the action against Dr. Hopkins. That would suffice to establish fraudulent joinder. *See In re Diet Drugs*, 220 F. Supp. 2d at 421-22; *Joe v. Minnesota Life Insurance Company*, 257 F. Supp. 2d 845, 850 (S.D. Miss. 2003); *Watson v. Wyeth Co.*, No. Civ. A. 02-2548, 2003 WL 203096, at *4 (E.D. La. Jan. 28, 2003).

5.   Finally, the only real argument made by Dr. Hopkins and his counsel as to why they believe Judge Bowler's denial of their motion for a protective order should be overturned is that documents containing communications between Dr. Hopkins' counsel and his purported adversary in the litigation (plaintiff's counsel) are exempt from discovery under a so-called "settlement" privilege. This argument is based in Rule 408 of the Federal Rules of Evidence, but as Judge Bowler recognized, it has no merit.

Rule 408 provides, in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay . . . .

4

As an initial matter, the documents sought by defendants fall outside of the scope of this rule. The rule does not prohibit the use of "compromise evidence if it is offered to prove something other than liability for or invalidity of a claim or its amount." 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5310 (1980 & Supp. 2005). To the extent that defendants seek information related to settlement discussions, they seek such information in the context of the fraudulent joinder issue, not to prove or disprove liability or the invalidity of plaintiff's claims.

Moreover, courts have interpreted Rule 408 to restrict only the <u>admissibility</u> — not the <u>discoverability</u> — of information concerning settlement discussions. *See, e.g., In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979) ("Inquiry into the conduct of the [settlement] negotiations is also consistent with the letter and the spirit of Rule 408 of the Federal Rules of Evidence. That rule only governs admissibility."); *In re Subpoena Issued to Commodity Futures Trading*, 370 F. Supp. 2d 201, 209-12 (D.D.C. 2005) (noting that a "substantial number of cases have rejected such a privilege," and reaching the same result); *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) ("[Rule 408] . . . only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery."); *see also Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 226-27 (D. Mass. 2003) (accepting plaintiff's argument that courts can allow discovery of information related to confidential settlement agreements and holding that policies favoring liberal discovery outweighed plaintiff's claim of confidentiality).

Accordingly, any responsive documents relating to settlement discussions between plaintiff's counsel and Dr. Hopkins' counsel are, as Judge Bowler determined, discoverable, and Dr. Hopkins and his counsel cannot use Rule 408 as a "screen for curtailing [AstraZeneca's] right of discovery." *In re Subpoena Issued to Commodity Futures Trading*, 370 F. Supp. 2d at 208-09 (quoting 2 *Weinstein's Federal Evidence* § 408.07 (2005)).

Likewise, Dr. Hopkins' counsel's vague, undifferentiated assertion of client confidentiality is baseless. The discovery requests propounded by AstraZeneca are narrowly tailored to discover documents containing or reflecting communications between purported adversaries in this litigation. No general client confidentiality rule serves to insulate such communications from discovery.[3]

---

[3] One additional misimpression left by the initial Objections filed by Dr. Hopkins and his counsel is that Dr. Hopkins' counsel only intends to withhold two documents as privileged. While the initial Objections say as much, Dr. Hopkins' counsel provided to defendants a privilege log that lists substantially more than the two documents he describes. Moreover, the privilege log produced by Dr. Hopkins' counsel lists a number of documents that are – for the reasons set forth above – discoverable pursuant to this Court's August 19 Order and Judge Bowler's January 6, 2006 Order. For example, several of the documents listed are communications between counsel for plaintiff and Dr. Hopkins' counsel.

6

## CONCLUSION

For the reasons set forth above, Dr. Hopkins' and his counsel's Objections have no merit, and Judge Bowler's order should not be overturned.

Respectfully Submitted,

By:  /s/ Lucy Fowler

DATED:  January 20, 2006

Nicholas C. Theodorou (BBO# 496730)
Lucy Fowler (BBO# 647929)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110

D. Scott Wise
Michael Flynn
Kimberley Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY  10017

Attorneys for AstraZeneca Pharmaceuticals LP

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on January 20, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Lucy Fowler
Lucy Fowler