**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

---

|  |  |  |
|---|---|---|
| **In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | ) ) ) ) | MDL NO. 1456 |
|  | ) | Civil Action No. 01-12257-PBS |
|  | ) | Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO** | ) |  |
| *State of Nevada v. Abbott Laboratories, et al.*, | ) |  |
| Case No. CV02-00260 (Nevada I), | ) | Chief Magistrate Judge Marianne B. |
|  | ) | Bowler |
| *State of Nevada v. American Home Products, et al.*, | ) |  |
| CA No. 02-CV-12086-PBS (Nevada II), and | ) |  |
|  | ) | ORAL ARGUMENT REQUESTED |
|  | ) |  |
| *State of Montana v. Abbott Laboratories, et al.*, | ) |  |
| CA No. 02-CV-12084-PBS | ) |  |
|  | ) |  |

---

## DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS THE STATE OF NEVADA AND THE STATE OF MONTANA

Defendants hereby move to compel discovery from the Plaintiffs States of Nevada and

Montana (the "States").[1]

Plaintiffs have had nearly nine months to produce documents and testimony responsive to

Defendants' discovery requests.  Yet, for various reasons, numerous categories of documents

have not been produced, and certain noticed witnesses have not been put forth for depositions.

Plaintiffs' persistent objections to certain categories of discovery, and undue delay in producing

documents and data to which they have not objected, have necessitated this motion to compel.  In

addition, in light of the January 31 discovery deadline, Defendants seek to preserve their rights

as to those documents and witnesses that Plaintiffs have agreed to produce but have not yet done

---

[1] Defendants Baxter International Inc. and Baxter Healthcare Corporation take no position on this motion.  All other Defendants join in the motion.

so.  Accordingly, Defendants ask this Court to compel Plaintiffs to produce the following

discovery as soon as possible, and by no later than March 31, 2006:

- Documents and testimony from certain non-Medicaid State entities involved in the purchasing or reimbursement of prescription drugs.

- Documents and testimony from State executive and legislative offices pertaining to government knowledge and understanding of AWP and drug reimbursement policy.

- Data related to the States' participation in drug rebate programs.

- Documents relating to the States' knowledge and understanding of AWP and drug acquisition costs for the pre-1991 time-period.

- Electronic documents and emails responsive to Defendants' document requests.

- Medicaid claims data for self-administered drugs and physician-administered drugs to the extent such data have not yet been produced.  The relevance of this discovery has not been contested by the States.

- Certain documents requested by Defendants at deposition or in correspondence with the States that the States have agreed to produce or to which Defendants are otherwise entitled.

- Testimony from certain current and former Medicaid officials that the States have agreed to make available or to which Defendants are otherwise entitled.

## BACKGROUND

Defendants served their First Set of Interrogatories and Requests for the Production of

Documents on the States on May 3, 2005.  The requests to each State were identical in substance.

*See* Exs. 1 and 2.  On July 29, Defendants filed a motion to compel certain discovery to which

the States had objected.  *See* Defendants' Motion to Compel Discovery From Plaintiffs the State

of Nevada and the State of Montana.  At a hearing on September 19, 2005, this Court decided to "withhold [its] ruling at this time, because it sounds to me like a lot is going to be produced, and you are making some progress."  Ex. 3 (Excerpts from Rough Transcript of Hearing) at 49.  The Court ordered the parties to make further efforts to resolve discovery disputes through meet-and-confer sessions.  The parties have subsequently engaged in frequent negotiations to address the contested issues.  Although the parties have resolved a number of issues, they remain at impasse on the States' obligation to produce certain documents and testimony.

Specifically, the States continue to object to the following discovery:  (i) documents and testimony from certain non-Medicaid State entities that are involved in the purchasing or reimbursement of prescription drugs; (ii) documents and testimony from relevant executive and legislative offices; (iii) documents from prior to 1991 regarding the States' knowledge and understanding of AWP and actual drug acquisition costs; (iv) data related to the States' participation in drug rebate programs; and (v) electronic documents, including email.

The parties have also used the meet-and-confer process to facilitate the production of various documents and testimony to which the States do not object.  The parties,  recognizing that this uncontested discovery could not be completed by the Court's January 31, 2006 cut-off date, jointly moved the Court for an extension of the discovery deadline.  On January 25, the Court denied the parties' joint motion.  To preserve their rights, Defendants have included in this motion to compel certain documents and testimony which the States have agreed to produce or to which they have not otherwise objected.  This discovery includes: (i) Medicaid claims data for prescription drugs for the time period at issue in the Complaint; (ii) certain documents specifically identified and requested by Defendants; and (iii) testimony from certain current and former Medicaid officials.

Concerns regarding the States' failure to preserve documents have also complicated efforts to complete discovery.  Upon discovering these failures, on December 7, 2005, Defendants moved this Court to hold the States in contempt for failing to preserve documents in violation of Case Management Order No. 2, and to order the States to comply with their preservation obligations and account for any spoliated documents.  The motion has not yet been scheduled for hearing, and the issues raised have not yet been resolved.

## ARGUMENT

As demonstrated below, all of the disputed material is relevant.

## I.   THE COURT SHOULD ORDER THE STATES TO PRODUCE DISCOVERY FROM NON-MEDICAID STATE ENTITIES.

### A.   Defendants' Efforts To Obtain Discovery From Non-Medicaid State Entities

Defendants' initial discovery requests sought responsive documents maintained by all State agencies, a fact reiterated in subsequent correspondence with the States.  *See* Ex. 1 at 7; Ex. 4 (9/7/05 Litow Letter) at 1; Ex. 5 (11/11/05 O'Sullivan Letter) at 2.  Based on the States' representations that they were not seeking to recover damages sustained by any State entity other than Medicaid, Defendants narrowed the scope of their requests.  For example, in Nevada, Defendants limited their requests to those State agencies that have been specifically identified by the States' own witnesses as being involved in the purchasing and reimbursement of prescription drugs, and to documents and witnesses bearing on the State's knowledge of AWP and drug acquisition costs.[2]  *See* Ex. 6 (11/23/05 Litow Letter) at 2, 3.  Specifically, Defendants have requested:

---

[2] For Nevada, these agencies are: (i) Senior Rx (prescription drug program for seniors); (ii) Division of Child and Family Services; (iii) Health Division: (iv) Division of Mental Health and Developmental Services; (v) Public Employees Benefits Fund; and (vi) Bureau of Prisons.

- Documents from each entity sufficient to show, during the time period at issue: (i) the drugs purchased by that entity; (ii) the prices at which the drugs were purchased by that entity; and (iii) any knowledge of actual acquisition costs for drugs, even if not purchased by that entity;

- Documents from each entity sufficient to describe the nature of the drug benefit program offered by that entity, and whether any reimbursements or payments by the program or its beneficiaries are based on AWP; and

- Depositions of State employees who have been identified as having knowledge regarding the drug purchasing or reimbursement activities of these State entities.[3]  *See id*. at 3.

The States have continued to object on the grounds that their decision to limit their claims rendered inappropriate any discovery whatsoever of non-Medicaid entities.  *See* Ex. 7 (12/1/05 Breckenridge Letter) at 2; Ex. 8 (12/2/05 Breckenridge Letter) at 3-4.  The parties are at impasse on this issue.

### B.     Discovery From Non-Medicaid Entities Is Relevant To Establishing Plaintiffs' Knowledge That AWP Did Not Reflect Actual Acquisition Costs.

Plaintiffs allege that their Medicaid programs were deceived into making excessive reimbursement payments by Defendants' fraudulent reporting of inflated Average Wholesale Prices (AWP).  One of Defendants' primary defenses is that the States could not have been deceived or harmed by Defendants' conduct because the States knew or should have known that AWP did not reflect the actual cost at which pharmacies and other providers acquired

---

[3] Those state employees in Nevada whose depositions have been noticed by Defendants include Alex Haartz, Richard Whitley, Laurie Olson, Ted d'Amico, Woody Thorn, Emmanuel Ebo, and Patty Maryfield.  In Montana, Defendants noticed 30(b)(6) deposition testimony from the non-Medicaid agencies that were involved in the purchasing or reimbursement of prescription drugs.  These agencies are:  (i) the State Employees Benefits Plan, (ii) the Department of Corrections, (iii) the State Workers' Compensation Fund, (iv) the Addictive & Mental Disorders Division, (v) Children's Health Insurance Program Special Health Bureau, and (vi) the End-Stage Renal Disease Program.

prescription drugs.  In establishing this defense, Defendants hope to point to the fact that certain non-Medicaid State entities were purchasing drugs at prices well below the published AWP. Thus, Defendants seek focused discovery from non-Medicaid State entities that is limited to their knowledge of AWP and the prices at which they purchased and reimbursed drugs.

That the States have limited their claims to the Medicaid program does not render irrelevant discovery from other State agencies.  The Plaintiffs in these cases are the States of Nevada and Montana.  Because the States are charged, as a matter of law, with the knowledge of their agents, the knowledge of any state entity is relevant.  *See* Restatement (Second) of Agency, § 272 (1957).

However, even if only the knowledge of the States' Medicaid agencies were relevant – a proposition that Defendants dispute -- discovery from non-Medicaid entities would still be proper for three reasons.

First, such discovery is relevant to determining the extent to which non-Medicaid employees may have communicated their knowledge about AWP and drug pricing to Medicaid employees.  In Nevada, for example, most non-Medicaid entities from which discovery is sought had an operational relationship with Medicaid insofar as they were organized together under the State Department of Health and Human Services.  *See* Ex. 9 (Excerpts from Transcript of Duarte Deposition) at 55-57; 134-40.  In Montana, this is true for half of the non-Medicaid entities from which discovery is sought.  *See* Ex. 10 (Excerpts from Transcript of Buska Deposition) at 70-71. In addition, Nevada Medicaid officials have discussed prescription drug purchasing and costs, and participated in related meetings, with officials from other State entities.  *See* Ex. 9 at 51-57;

132-40.  Given these facts, Defendants are entitled to discover the extent to which AWP and drug pricing information were shared by agency officials.[4]

Second, under certain circumstances, the knowledge of non-Medicaid State entities may be imputed, as a matter of law, to Medicaid itself.  Such imputation of knowledge among government agencies is appropriate "if there is some relationship between the agencies -- either some reason for the agency without knowledge to seek the information or a reason for the knowledgeable agency to transmit the information."  *In re Agent Orange Product Liability Litig.*, 597 F.Supp. 740, 796 (E.D.N.Y. 1984).  This standard is clearly met by the relationship between Medicaid and those State entities from which discovery is sought.  Given their shared involvement in drug purchasing and reimbursement, their shared organizational ties, and their periodic communications about drug issues, these entities have had both the opportunity and motivation to share knowledge regarding AWP and drug acquisition costs.

Third, discovery from these State entities is relevant to whether the State Medicaid agencies *should* have known that AWP did not reflect actual acquisition costs.  The extent to which this knowledge was available to policymakers is central to the questions of whether Defendants were engaged in deceptive practices and whether such practices caused any harm to Plaintiffs.  If other State agencies were acquiring drugs at prices well below AWP, this would suggest that the State Medicaid agencies' decision to reimburse providers based on AWP or a small discount off of AWP was not the result of fraud but rather was the result of other factors,

---

[4] In an AWP trial recently concluded in West Virginia, a witness from a non-Medicaid agency testified that Medicaid and non-Medicaid agencies communicated about the agencies' different reimbursement rates and policies. Although each of the agencies was a named plaintiff in that case, such communications demonstrated shared knowledge regarding the nature of AWP and the availability of different reimbursement rates and methods, and would have been equally relevant if Medicaid had been the only party.  The jury returned a verdict in favor of the defendant drug manufacturer, finding that the state had failed to prove any of its claims.  *State of West Virginia ex rel Darrell v. McGraw Jr. v. Warrick Pharmaceuticals Corp. et al*, Civil Action No. 01-C-3011 (Circuit Ct., Kanawha Cty., West Virginia) (Jury trial, 11/30/05 - 12/7/05).

such as the desire to ensure that pharmacies and other providers were adequately compensated so that they would remain in the Medicaid program.

Defendants' request for discovery from certain non-Medicaid entities is narrowly focused on those entities and issues that are directly relevant.  Accordingly, the Court should compel Plaintiffs to produce responsive documents and testimony from these entities.

## II.   THE COURT SHOULD ORDER THE STATES TO PRODUCE DISCOVERY FROM EXECUTIVE AND LEGISLATIVE OFFICES.

### A.   Defendants' Efforts To Obtain Discovery From Executive And Legislative Offices

Defendants move to compel the following discovery from State executive and legislative offices:

- Documents in the custody, control, or possession of the Governors' offices and legislative offices that are responsive to Defendants' initial request for the production of documents;

- Testimony from certain current and former staff members from the Governors' offices and legislative offices, who have been identified as being involved, on an ongoing basis, in discussions regarding the purchasing or reimbursement of prescription drugs.[5]

Defendants have repeatedly and unsuccessfully sought this discovery.  As with discovery from non-Medicaid entities, this discovery was within the scope of Defendants' initial document requests.  *See* Ex. 1 at 7.  Since then, Defendants have explicitly requested documents and noticed depositions of witnesses from the States' executive and legislative offices.  *See* Ex. 6 at 2-4; Ex. 5 at 2.  The States have objected, questioning the relevance of such discovery and

---

[5] Those State officials whose depositions have been noticed by Defendants include Marybel Batjer, Michael Hillerby, Steve Abba, and Marsheilah Lyons in Nevada, and Steve Snezik and Jean Branscum in Montana.

claiming vaguely that it has "no legitimate basis."  Ex. 8 at 4.  S*ee* Ex. 7 at 2-3; Ex. 11 (12/12/05

Breckenridge Letter) at 2.  In addition, counsel for the States mentioned, in passing, that such

discovery may be protected by the deliberative process privilege.

>        **B.**        **Documents And Testimony From Legislative And Executive Staff Are**
>                      **Relevant In Establishing The States' Knowledge Regarding AWP And The**
>                      **States' Rationale For Using An AWP-Based Reimbursement System In**
>                      **Their Medicaid Programs.**

Discovery from legislative and executive offices is clearly relevant to defenses regarding

both the States' knowledge and their conscious decisions to use AWP-based reimbursement to

achieve certain policy goals.  Decisions on Medicaid reimbursement policy at the state level

typically result from close consultations between the Medicaid agency, the Governor's office, the

budget office, the legislature, and the affected providers.

The record confirms that the States' executive and legislative offices were significantly

involved in Medicaid policy choices.  In Nevada, key Medicaid officials were engaged in

ongoing discussions about prescription drugs with legislative and executive officials, including

communications about Medicaid's decision to change its AWP-based reimbursement rate in

2002.  *See* Ex. 9 at 10-21, 220-21; Ex. 12 (Email from Charles Duarte to Michael Willden and

Steve Abba).  Testimony from two Nevada Medicaid administrators indicates that legislative and

executive offices have pressured Medicaid to pursue certain policies, including the reduction of

overall expenditures and the increase of reimbursement rates for physician services.  *See* Ex. 9 at

164-68, 216-20; Ex. 13 (Excerpts from Transcript of Thompson Deposition) at 56-58.  In

Montana, the Governor's Office asked all Department Directors to provide copies of all proposed

rule changes (such as the proposed changes to AWP – 15% or AWP – 25%) and to provide a

brief description of "any areas of potential controversy that might reasonably be anticipated as a

consequence of the rulemaking."  Ex. 14 (Email from Governor's Chief of Staff to Department

Directors 11/27/2001).  Executive and legislative officials were also involved, along with a key Medicaid official, in the "Montana Task Force," which held meetings regarding prescription drug pricing and reimbursement.  *See., e.g.,* Ex. 15 (Agenda for 2/10/2003 Meeting). Defendants' discovery requests are thus reasonably calculated to obtain information regarding the States' knowledge and use of AWP in light of its overarching policy goals.

Responsive documents relating to this process and dialogue from the legislative and executive branches of Nevada and Montana will likely contain relevant information that is material to Defendants' government knowledge defenses.  Reimbursement for prescription drugs is a governmental process.  Governors' offices take a lead role in guiding the policy choices of administrative agencies such as Medicaid, which fall within the purview of the executive branch. Meanwhile, legislatures oversee and exert political pressure on such agencies.  Defendants certainly have the right to learn the extent and nature of the influence these offices had on Medicaid reimbursement rate decisions.

### C.   The Documents And Testimony Sought By Defendants Are Not Within The Scope Of The Deliberative Process Privilege.

Plaintiffs have suggested in passing that discovery from legislative and executive offices may be improper because the material sought may be subject to the deliberative process privilege.  To qualify for the deliberative process privilege, the material sought must be both predecisional and deliberative.  *See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995); *Dr Partners v. Board of County Commissioners of Clark County*, 6 P.3d 465, 469 (Nev. 2000).  That is, the party claiming the privilege must establish (i) an actual decision or policy to which the material contributed, and (ii) that the material consists of opinions, recommendations, or advice about agency policies.  *See id.*  Even if these predicate

facts can be established, application of the privilege is subject to a balancing of competing interests and is at the discretion of the judge.  *See Texaco Puerto Rico*, 60 F.3d at 885.

Any attempt by the States to assert a blanket privilege for an entire category of documents would be premature and grossly overbroad.  First, there is a large subset of material that cannot be subject to any privilege due to its public nature.  This category includes, for example, public statements, testimony from legislative hearings, and minutes of legislative committee meetings.[6]

Second, a great deal of responsive material will not meet the requirements of being both predecisional and deliberative.  For example, documents that educate officials on the distinction between AWP and actual drug acquisition costs would not be tied to any particular policy decisions.  Even to the extent that Defendants seek information related to the States' conscious disregard of the distinction between AWP and actual acquisition costs, there may be relevant non-deliberative and post-decisional material.  For example, the States may produce documents and testimony relating to communications from interest groups, the identity of persons with whom policymakers discussed prescription drug issues, or post-decisional explanations of policy decisions.

Third, even if the State can establish that certain responsive material is both  pre-decisional and deliberative, the Court has the discretion to compel discovery in light of the competing interests at stake.  As noted above, the discovery sought from these offices is central to Defendants' core defenses.  Absent any specific showing that certain documents are

---

[6] The States may object that Defendants can obtain any publicly available information themselves.  However, public compilations of such material at the state level are far less comprehensive than at the federal level, and states seldom have the equivalent of the Congressional Record, Federal Register, and Public Papers of the Presidents.  Moreover, the mere fact that information may be obtainable from another source is not a bar to discovery.  *See* 6 MOORE'S FEDERAL PRACTICE §26.60 (3d ed. 1997).  Given that the States maintain this information in their regular course of business, it is much less burdensome to produce it themselves than for Defendants to try to locate it.

privileged, the essential relevance of the discovery sought must trump any vague speculations about its privileged nature.

If the States believe that certain documents or testimony should be withheld on the basis of privilege, they should, as with any privilege claim, offer specific objections in the context of their document production and at deposition.  The States' current position obstructs any efforts by Defendants to obtain responsive material without any actual proof that such material is privileged.  Accordingly, the Court should compel the States to produce documents and testimony from legislative and executive offices.

## III.   THE COURT SHOULD ORDER THE STATES TO PRODUCE DRUG REBATE DATA.

### A.   Defendants' Efforts To Obtain Drug Rebate Data

Defendants move to compel the production of data related to two drug rebate programs in which the States participate.  The first is a federal program implemented in 1990 that requires drug manufacturers to pay rebates to state Medicaid agencies.  The second is a multi-state supplemental rebate program, in which the States negotiate rebates with drug manufacturers in exchange for preferential treatment in having drugs placed on the States' preferred drug lists.

Defendants have repeatedly and unsuccessfully sought this data.  Defendants' initial document requests included a number of specific requests for data related to drug rebates.  *See* Ex. 1 at 19-21, 26.  The States objected, forcing Defendants' initial motion to compel. Following this Court's instruction that the parties confer further on discovery disputes, the States continued to resist the production of rebate data.  The States objected on the grounds that (i) it would be more burdensome for them to produce the data than for Defendants to produce it themselves, and (ii) such data are highly confidential and cannot be produced absent a court order.  *See* Ex. 16 (10/14/05 Dove Letter) at 3.  In an effort to reach a reasonable compromise,

Defendants offered to rely on their own rebate data if the State would agree to stipulate that Defendants' rebate data accurately identified the rebates actually received by the States. *See* Ex. 17 (10/18/05 Dove Letter) at 3. The States rejected the proposed stipulation, and the parties agreed that they had reached impasse on the issue. *See* Ex. 18 (10/26/05 Litow Letter) at 3.

**B.      Drug Rebate Data Is Relevant.**

The Medicaid rebate data is needed to determine whether the States suffered any harm at all from the alleged AWP scheme, as the rebates received by the States might fully compensate them for any alleged overpayment for a particular drug. If no harm has been caused, there can be no liability. Moreover, at a minimum, the amount of rebates collected by the States directly affects their calculation of damages, as such rebates off-set the reimbursement amounts paid by the States. Testimony from Medicaid officials indicates that rebates received from drug manufacturers effectively off-set drug reimbursement expenditures in the Medicaid budget. *See, e.g.,* Ex. 19 (Excerpts from Transcript of Cates Deposition) at 43-45, 59-60.

**C.      Rebate Data From Defendants' Files Are Not A Sufficient Substitute For Plaintiffs' Own Data, Which Can Be Produced With Less Effort.**

While Defendants possess data relating to the rebates they have paid to the States, Plaintiffs are unwilling to stipulate to the accuracy of that data or that the rebates identified were actually received by the States. Absent such a stipulation, Defendants have no choice but to seek the rebate data from the States directly, so that they can establish the precise amounts by which reimbursements for each drug have been off-set by rebates for that drug.

It is less burdensome and more efficient for the States to produce the rebate data from one or two locations than it is for each Defendant to produce its own data. To the extent the rebate data is in electronic form, any burden should be minimal; to the extent the rebate data exists on

paper only, Defendants would be willing to travel to the document site to inspect and copy it, if that would lessen any burden on Plaintiffs.

### D. The Confidentiality Of Drug Rebate Data Will Not Be Compromised By Their Production To Defendants Under The Court's Protective Order.

The States correctly note that rebate data are commercially sensitive and highly confidential information. However, these concerns about confidentiality can be addressed by designating the data as "Highly Confidential" under the protective order entered by this Court on December 13, 2002. *See* Protective Order ¶5. Moreover, Defendants have offered to provide the States with a specific confidentiality agreement that would provide an additional layer of protection. The States have ignored this offer.

Because drug rebate data is clearly relevant, and there is no basis for the States' objections, the Court should compel its production.

### IV. THE COURT SHOULD ORDER THE STATES TO PRODUCE DOCUMENTS RELATING TO THE STATES' KNOWLEDGE AND UNDERSTANDING OF AWP AND DRUG ACQUISITION COSTS FOR THE PRE-1991 TIME-PERIOD.

### A. Defendants' Efforts To Obtain Documents Relating To The States' Knowledge And Understanding Of AWP And Drug Acquisition Costs For The Pre-1991 Time-Period

Defendants move to compel the production of documents relating to the States' knowledge and understanding of AWP and drug acquisition costs for the pre-1991 time-period. Defendants included these documents in their initial motion to compel before this Court. *See* Motion to Compel at 4-5. The Court directed Defendants to narrow the scope of their request by identifying more precisely the types of documents sought. *See* Ex. 3 at 42-43. Defendants made this effort, but the States have continued to resist the production of *any* of these documents unless Defendants also agree to produce pre-1991 documents. *See* Ex. 20 (9/30/05 Breckenridge Letter). The parties are at impasse on this issue.

14

**B.      Documents Relating To The State's Knowledge And Understanding Of AWP And Drug Acquisition Costs For The Pre-1991 Time-Period Are Relevant.**

The States do not deny that such documents exist or are relevant, but nonetheless refuse to produce them.  Plaintiffs flatly refuse to search for any materials that predate 1991 under the convenient reasoning that 1991 is the date that Plaintiffs' claims begin.  But, in defending against Plaintiffs' fraud allegations, Defendants are entitled to know what the States knew about the nature of AWP and when.  For example, there is evidence that the federal government warned State Medicaid agencies far before 1991 that AWP was not a reliable indicator of acquisition costs.  In 1984, the States received HCFA Medicaid Action Transmittal No. 84-12, Sept. 1984, C.C.H. Medicare and Medicaid Guide, which concluded:  "AWP cannot be the best -- or even an adequate -- estimate of the prices providers are generally paying for drugs" and further stating that AWP is a "list price that does not reflect various discounts."  Ex. 21.  As another example, an October 3, 1989 HHS-OIG Report (A-06-89-00037) -- "Use of Average Wholesale Prices in Reimbursing Pharmacies Participating in Medicaid and the Medicare Prescription Drug Program" -- quotes a Pennsylvania Medicaid official as stating that AWP "has no connection to what pharmacies really purchase the drug for."  Ex. 22.

In addition, Nevada Medicaid's drug reimbursement rate that was in place during most of the time period at issue in the Complaint -- AWP-10% -- was established in 1987; Montana Medicaid's drug reimbursement rate of AWP-10% was also established prior to 1991.  Defendants need to know the circumstances surrounding the establishment of this "AWP-10%" rate, which may reveal the States' knowledge of the nature of AWP and the extent to which the States' choice of AWP-based reimbursement was based on broader policy concerns.

Accordingly, the Court should compel the production of pre-1991 documents relating to the States' knowledge.

## V.      THE COURT SHOULD ORDER THE STATES TO PRODUCE RESPONSIVE ELECTRONIC DOCUMENTS AND EMAILS.

### A.      Defendants' Efforts To Obtain Responsive Electronic Documents

Defendants move to compel the production of all electronic documents, including email, responsive to their initial document requests.  Despite receiving Defendants' requests nearly nine months ago, the States have yet to search their emails and computers for responsive documents. The States first addressed this issue in December, when they asked Defendants to provide search terms to guide electronic discovery.  *See* Ex. 23 (12/9/05 Breckenridge Letter).  Though under no obligation to do so, Defendants provided a list of terms in an effort to facilitate an efficient production.  *See* Ex. 24 (12/14/05 Litow Letter); Ex. 25 (12/19/2005 Sipos Letter).  The terms chosen were modeled after the search terms agreed to by the parties in the Connecticut AWP action.  On January 26 -- more than seven weeks after Defendants proposed the search terms and just days before the discovery deadline -- the States objected to "the undue burden imposed by Defendants' proposal" and claimed that they were under no obligation to produce electronic evidence at all.[7]  Ex. 26 (1/26/06 Breckenridge Letter) at 1-2.  The States further stated that to the extent that they may be under such an obligation, for technical and other reasons, they could not utilize Defendants' proposed terms.  *See id*. at 3.

Plaintiffs' failure to produce electronic documents has already prejudiced Defendants, who have had to go forward with depositions without having received or reviewed the emails and electronic documents prepared or received by the witnesses.  Defendants reserve the right to

---

[7] Unlike Nevada, Montana has produced certain emails, but Montana has also refused to conduct the electronic search proposed by Defendants.

recall such witnesses once their electronic documents (and other documents requested in this Motion) have been finally produced.

### B.    The Production Of Responsive Electronic Documents Is Not Unduly Burdensome.

The States' position that they need not produce relevant electronic documents or emails is simply unreasonable.  The States have failed to provide any legal analysis as to how they have been placed under an "undue burden" by Defendants' efforts to narrow the scope of the States' electronic discovery obligations.  Nor have they justified or explained their position that *any* electronic production would constitute such an undue burden.  As a threshold matter, "whether production of documents is unduly burdensome or expensive turns primarily on whether it is in an accessible or inaccessible format."[8]  *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003).  The States have not made a sufficient showing that any of the requested documents are inaccessible.[9]  Furthermore, any burden is significantly mitigated, as the States' own account suggests, by the limited availability of responsive documents due to the States' failure to order the archiving of relevant emails and to take other steps necessary to comply with their document preservation obligations.  *See* Ex. 26 at 2-3; Defendants' Emergency Motion For An Order Holding Plaintiffs In Contempt, For Preservation Of Potentially Relevant Documents, And For An Accounting of Spoliated Documents (December 7, 2005).

The States complain that the requested production will involve some expense, some manpower, and certain procedures that are inherent to any electronic production.  These generic issues, exacerbated by the States' own failure to contemplate the production of electronic

---

[8] Media in an accessible format include (i) active, online data, (ii) near-line data, and (iii) offline storage and archives.  *See Zubulake*, 217 F.R.D. at 318-19.

[9] Indeed, courts routinely require the production of email.  *See, e.g., Dziadkiewicz v. Blue Cross & Blue Shield of Rhode Island*, No. C.A.96-275S, C.A.96-2579, 2004 WL 2418308, at *3 (D.R.I. Oct. 21, 2004) (granting motion to compel various emails).

documents for seven months after receiving Defendants' document requests, are not sufficient to

create an "undue burden."  To the extent that the States' protestations are based on the

limitations of their information systems, the States bear the responsibility for developing a

workable search plan that accommodates these limitations.  This responsibility does not fall on

Defendants.

The Court should compel the States to produce expeditiously electronic documents

responsive to Defendants' discovery requests.

## VI.    THE COURT SHOULD ORDER THE STATES TO PRODUCE DISCOVERY TO WHICH THE STATES HAVE AGREED TO PRODUCE OR TO WHICH DEFENDANTS ARE OTHERWISE ENTITLED.

To preserve their rights to certain discovery, Defendants move to compel three categories

of discovery to which the States have agreed to produce or have not objected to.  First,

Defendants seek claims data for self-administered and physician-administered drugs from 1991

to the present.  Some of this data has already been produced, but some of it has not, as the parties

are involved in ongoing discussions regarding the proper format for such data.[10]  Second,

Defendants seek testimony from certain current and former Medicaid officials.[11]  The States have

agreed to put forward these witnesses, but depositions have not yet been scheduled, primarily

because many of the documents that would be used at those depositions have not been produced.

Third, Defendants seek the following documents, which they have specifically requested at

deposition or in prior correspondence with the States, *see* Ex. 28 (1/12/06 Litow Letter) at 1-2,

---

[10] While this data are managed by the States' fiscal agents, they are nonetheless in the "possession, custody or control" of the State.  Indeed, a 30(b)(6) witness on behalf of the State of Nevada acknowledged that the State "owns" its claims data.  *See* Ex. 27 (Excerpts from Transcript of Lawrence Deposition) at 176.  This issue was briefed at length in Defendants' initial motion to compel.  *See* Motion to Compel at 9-10.

[11] For Nevada, these officials include:  Laurie Squartsoff, Mary Wherry, Rebecca Ward, Dion Coston, Charlotte Crawford, Michael Willden, Coleen Lawrence, and Charles Duarte.  For Montana, these officials include:  Randy Bowsher, Maggie Bullock, Nancy Ellery, Chuck Hunter, Jeff Ireland, Dorothy Poulsen, Denise Brunett, Russ Cater, John Chappuis, Mary Angela Collins, Mary Dalton, Doug Girard, Shannon Marr, Duane Preshinger, Jeff Buska, and Dan Peterson.

Ex. 29 (12/19/05 O'Sullivan Letter) at 1-2, Ex. 30 (12/16/05 O'Sullivan Letter) at 3-4, Ex. 5

(11/11/05 O'Sullivan Letter) at 1-4:

### Nevada

- Study conducted by Keith MacDonald on drug acquisition costs;

- Responsive documents from the files of Vicki Langdon;

- Financial calculations and spreadsheets created by Doug Perry and others relating to the 2002 State Plan Amendment changing the reimbursement rate for prescription drugs;

- Contracts with Sierra Health and NevadaCare relating to the managed care program and related correspondence, amendments, and other documents;

- Performance audits of the Nevada Medicaid program concerning cost savings;

- Provider complaints regarding drug reimbursement from 1991 to present;

- Actuarial letters from the State's actuary describing the development of managed care capitation rates and any attachments, including but not limited to rate schedules;

- Documents identified in the January 26-28 depositions of Janice Wright, April Townley, and Debbra King.

### Montana

- Documents regarding the State's reimbursement for physician-administered drugs, including State Plan documentation and physician fee schedules;

- Documents regarding Montana Medicaid's capitated managed care program, including documents sufficient to show the number of enrollees and that the State paid a flat fee per enrollee for this program;

- Responses to the dispensing fee questionnaires from Montana Medicaid providers;

- All documents regarding proposed changes to Montana Medicaid's reimbursement rate for drugs, including correspondence with CMS, internal communications among State employees, all comments received on the proposed rule changes, all "second notices" of proposed rule changes (which contain the State's response to comments received), and minutes of public hearings;

- The State's contract with ACS and ACS' contract with the ACS PBM entity;

- The State's contracts with bidding for any other PBM services and with any other administrative services or benefits consultants associated with Medicaid, including Maximus, McKesson MedManagement, and PCG Consulting;

The States have neither objected to, nor produced, these documents.  The Court should compel their expeditious production.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to compel discovery and order the States to produce the documents and testimony sought by Defendants as soon as possible and by no later than March 31, 2006.[12]

## **Certification Pursuant to Local Rules 7.1 and 37.1**

Pursuant to Local Rules 7.1(a)(2) and 37.1 of this Court, the undersigned counsel certifies that counsel for Defendants conferred unsuccessfully with Plaintiffs' counsel in an effort to reach a resolution on those discovery requests on which, as identified above, the parties have reached impasse.

---

[12] Defendants have also served various third party discovery relating to the States' claims, including the States' *parens patriae* claims on behalf of third party payors and private health plans.  Negotiations with these third parties as to document production and deposition dates are still ongoing, and some third parties have begun but not concluded their document productions.  Defendants reserve the right to move to compel at a later date as to those third parties who fail to comply with their discovery obligations.

Respectfully submitted on behalf of all
Defendants in the Nevada and Montana actions,


      /s/ Geoffrey E. Hobart
Geoffrey E. Hobart (BBO # 547499)
Mark H. Lynch
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291

Mark D. Seltzer (BBO #556341)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
Telephone:  (617) 523-2700
Facsimile:  (617) 523-6850

Frederick G. Herold
DECHERT LLP
1117 California Avenue
Palo Alto, CA  94304
Telephone:  (650) 813-4930
Facsimile:  (650) 813-4848

Thomas H. Lee II
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
Telephone:  (215) 994-2994
Facsimile:  (215) 994-2222

*Attorneys for Defendant SmithKline Beecham
Corporation d/b/a GlaxoSmithKline*

January 31, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2006, I caused a true and correct copy of Defendants' Second Motion to Compel Discovery from Plaintiffs the State of Nevada and the State of Montana, together with accompanying exhibits, to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.

_____/s/ Jason Litow_____