# EXHIBIT 16

# COVINGTON & BURLING

| | | |
|---|---|---|
| 1201 PENNSYLVANIA AVENUE NW | WASHINGTON | RONALD G. DOVE, JR. |
| WASHINGTON, DC 20004-2401 | NEW YORK | TEL 202.662.5685 |
| TEL 202.662.6000 | SAN FRANCISCO | FAX 202.778.5685 |
| FAX 202.662.6291 | LONDON | RDOVE@COV.COM |
| WWW.COV.COM | BRUSSELS | |

October 14, 2005

BY E-MAIL AND ELECTRONIC SERVICE

Tim Terry
Deputy Attorney General
Office of the Attorney General
198 North Carson Street
Carson City, NV 89701

Jeniphr A. Breckenridge
Hagens Berman Sobol Shapiro
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

     Re:    <u>Nevada AWP Actions</u>

Dear Tim & Jeniphr:

     This letter summarizes the agreements reached and action items identified in our two telephone conferences held earlier this week: the October 10 call with First Health and the October 12 call covering general discovery issues. We have scheduled a follow-up call for Monday, October 17, at 2:00 p.m. EST, to further discuss outstanding discovery issues with First Health and the State of Nevada, in accordance with Magistrate Judge Bowler's thirty-day meet-and-confer window which expires on October 19.

## <u>October 10 Conference With First Health</u>

     To guide our discussion on this call, we circulated to you and to counsel for First Health a memorandum entitled "Documents and Data to be Produced by First Health." This document summarized the categories of information that defendants are seeking from First Health as fiscal agent of the State, based in part on samples of information previously provided by First Health. For ease of reference, we discuss below the conclusions reached and action items identified as to each of the nine categories listed in the memorandum.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 14, 2005
Page 2

1.      *Pharmacy Claim Data Request*

        First Health agreed to provide electronic data for all populated fields displayed in the "Adjudicated Claims" screen-shot, subject to the redaction of patient identification, patient card numbers, and other personal health information.

        While not committing to producing every electronic Remittance Advice ("RA") form, First Health agreed to determine whether the requested data from the individual RA forms were aggregated in a separate electronic form.

        First Health agreed to determine whether data from the fields listed in the memorandum as "typically found in pharmacy claim data," but not displayed in either the Adjudicated Claims screen-shot or the sample RA form, were available elsewhere.

        First Health noted that it did not generate unique code descriptions for all of the data fields discussed, but rather used standard government codes required for all HIPAA-compliant transactions.  Defendants requested that First Health nonetheless indicate the source of the codes to avoid errors of interpretation.

2.      *Drug File Data Request*

        First Health agreed to provide data from fields shown in the "Drug Clinical Pricing" screen-shot, but only after confirming that (i) First Databank would have no objection and (ii) the production of such data would comply with its agreements with First Databank.

        First Health agreed to consult with First Databank and to consider defendants' request that all of the data in the "Drug NDC [First Databank]" screen-shot be produced in the form of a comma-delimited ASCII text data set.

        First Health agreed to determine whether other pricing measures (e.g., EAC, FUL, CMS MAC, etc.) identified near the bottom of page 3 of the memorandum are available in the drug file.

3.      *Physician-Administered Drug ("PAD") Claim Data*

        First Health noted that (i) only about 30 percent of the data for PADs billed with J-codes would be electronically available, while none of the data for PADs billed with Q-codes would be available, and (ii) it was not clear that these drugs were part of the State's case.  In response, defendants suggested that First Health investigate further how this data was stored in its systems and that the State confirm its intent to pursue PAD claims (which the State has since confirmed).

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 14, 2005
Page 3

4.      _Provider Contract Request_

        First Health agreed to provide samples of the provider contracts requested on page 4 of
the memorandum, but did not commit to providing each and every contract.  First Health
confirmed that its only dealings with Nevada providers were in connection with First Health's
work for the State.

5.      _Nevada Medicaid MAC Listing Request_

        First Health stated that it receives MAC prices from a third party and does not have
information as to how MAC prices are determined.

6.      _Historical First Health Provider Billing Manuals_

        First Health's counsel stated that he was unfamiliar with and/or unaware of the specific
manuals requested in the memorandum, but agreed to investigate further as to those manuals
relating to Nevada during the relevant time period.

7.      _Preferred Drug Lists and Formularies_

        With respect to information provided by First Health to the State in conjunction with its
Preferred Drug List ("PDL") recommendations, First Health suggested that the State provide this
information.  Defendants suggested that the State and First Health resolve this issue between
themselves, but that defendants expected this information to be produced.

8.      _Rebates_

        The State and First Health argued that they should not have to provide rebate data
because (i) it would be more burdensome for them to produce the data than for defense counsel
to obtain the same data from the numerous defendant companies in the case, and (ii) such data is
highly confidential under federal law and could not be produced absent court order.
Additionally, while First Health acknowledged that it was "confident" that basic rebate
information was electronically available in its system, the State suggested that the electronic
system used by Anthem, its previous fiscal agent, was now defunct, and that all rebate data from
the Anthem time period would only be available on paper in a "room full of filing cabinets."
There was no resolution on this issue.

9.      _Management Reports and Other Documents_

        First Health suggested that because all of its reports were delivered to the State, the State
should produce these reports, and the State agreed to do so.  The State confirmed that it was in

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 14, 2005
Page 4

the process of producing its contract with First Health, including the RFP and First Health's responsive proposal. First Health agreed to send its responsive proposal and perhaps other responsive documents to Jeniphr Breckenridge.

<u>**October 12 Conference on General Discovery Issues**</u>

The key statements made and action items identified in our October 12 conference call on general discovery issues are set out below.

- The State confirmed that it intends to press its physician-administered drug claims, despite the J-code/Q-code cross-walking problems identified by First Health.

- The State represented that, as of now, it intends to press claims on behalf of self-insured employers, insurers, and other commercial third-party payors based in Nevada, but stated that it will consider the issue further and provide a more definitive answer by our next call.

- The State represented that claims data for the six years prior to First Health becoming its fiscal agent are maintained in electronic storage by the State's Department of Information Technology. The State agreed to provide sample printouts of data for that time period, so that defense counsel can determine which data fields to request. The State suggested that this could be provided within "a couple days."

- The State said it would investigate whether claims data exists prior to the six-year retention period and would advise defendants as to whether the State intends to pursue claims as to Medicaid payments for which the underlying data no longer exists.

- The State said that it is currently working on answering defendants' interrogatories and that it hopes to complete them within the 30-day window set by Magistrate Judge Bowler, but that it cannot commit to completing them by that date.

- The parties agreed to schedule the depositions of (i) the State's second 30(b)(6) witness (likely Charles Duarte); (ii) Mel Rosenberg, and (iii) John Liveratti during the week of November 15-18, 2005. Defense counsel agreed to provide the State's counsel with a proposed schedule, accounting for the fact that Mr. Liveratti will only be available on the 16th and 17th.

- The parties agreed that the upcoming 30(b)(6) deposition will cover those topics that defendants assert were not adequately covered by Coleen Lawrence at her deposition, as identified in Jason Litow's letter of August 30, 2005. The parties disagreed as to the scope of these topics and whether they covered, for example, the State's drug reimbursement

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 14, 2005
Page 5

programs outside of the Medicaid context. We believe that this issue merits further discussion and clarification prior to the deposition dates.

- The State agreed to seek answers to two questions that we asked with respect to the production of legislative documents and testimony referenced in Jeniphr Breckenridge's email dated October 20, 2005: (i) Were files of the relevant legislative committees and executive offices searched? (ii) Did the search for legislative documents include documents dating back to at least 1991? (We are assuming that we are still at impasse on any pre-1991 documents).

- The parties confirmed that they have reached an impasse on whether the State will produce data or documents relating to rebates. The parties agreed that the impasse results from two objections of the State: (i) the information is highly confidential under federal law and cannot be produced without a court order; and (ii) it is unduly burdensome to produce the information, given that defendants already possess it.

- The parties agreed that First Health will forward information regarding its contract with the State to Ms. Breckenridge. The State agreed to ask Anthem for any copies of contracts, RFPs and related documents in connection with its service as the State's fiscal agent prior to First Health.

- The State represented that it is unaware of any large cache of documents that has not yet been produced. The State will continue to produce documents as it discovers them.

- The State said it will "get back to" defendants on whether its claims will be limited to Medicaid or will include other state drug-purchasing programs. Defendants asked the State to provide an answer to this question on the October 17 call.

                    *    *    *    *

        We look forward to discussing these issues on Monday, as well as any other outstanding issues from our previous letters or any other matter the State would like to raise.


                                        With best regards,

                                        Ronald G. Dove, Jr.


cc:     Counsel of record (by electronic service)