# EXHIBIT 17

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS

RONALD G. DOVE, JR.
TEL 202.662.5685
FAX 202.778.5685
RDOVE@COV.COM

October 18, 2005

BY E-MAIL AND ELECTRONIC SERVICE

Tim Terry
Deputy Attorney General
Office of the Attorney General
198 North Carson Street
Carson City, NV 89701

Jeniphr A. Breckenridge
Hagens Berman Sobol Shapiro
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

      **Re:   Nevada AWP Actions**

Dear Tim & Jeniphr:

      This letter summarizes the agreements reached and action items identified in our telephone conference held on Monday, October 17, with counsel from First Health. We have scheduled a follow-up call for Tuesday, October 25, at 4:00 p.m. EST, to further discuss these and other outstanding discovery issues with the State of Nevada and First Health.

      To guide our discussion, we delivered a letter to you on October 14 summarizing our agreements and identifying action items from two telephone conferences held last week: (i) an October 10 call to discuss matters involving First Health; and (ii) an October 12 call to discuss matters involving only the State. Because Mr. Terry was unavailable, we agreed to limit the call on the 17th to following up on matters involving First Health and scheduling depositions. We discuss below the conclusions reached and action items identified as to those issues.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 18, 2005
Page 2

1. *Pharmacy Claim Data Request*

   a. *Data for fields displayed in "Adjudicated Claims" screen-shot*

   To provide this data, First Health stated that it must (i) obtain a listing of the relevant subject drugs, ideally in the form of NDC numbers; and (ii) create a program that will enable it to produce the data with personal health information deleted. The State agreed to provide First Health with a listing of subject drugs. First Health agreed to consult with its technology personnel to determine (i) how long it will take to create the required program; and (ii) if the data can be produced in the form of a comma-delimited ASCII text data set, as previously requested by the defendants.

   First Health identified two additional issues regarding the production of the requested claims data. First, the speed with which the data can be produced depends on the volume of information requested. Second, the expense associated with producing the data depends in part on whether the information is stored on a server maintained by First Health or on a mainframe maintained by Verizon. If stored on a mainframe, the charges may be significant.

   b. *Data for fields displayed in sample Remittance Advice ("RA") forms*

   First Health stated that it did not yet have an answer to defendants' question about whether the requested data from the individual RA forms were aggregated in a separate electronic form.

   c. *Data for fields typically found in pharmacy claim data, but not displayed in above samples*

   First Health agreed to seek clarification from its technology personnel on the availability of the requested data.

2. *Drug File Data Request*

   First Health stated that it did not yet have any answers to the defendants' questions, as memorialized in our previous letter of October 14, about First Health's ability to provide drug file data.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 18, 2005
Page 3

3.   *Physician-Administered Drug ("PAD") Claim Data*

First Health acknowledged that it had not yet made any progress on investigating how PAD claim data is stored in its systems.

4.   *Provider Contract Request*

Counsel for First Health represented that, to the best of his knowledge, a single form contract is used for all types of providers. First Health suggested that this form contract is available on its website.

5.   *Historical First Health Provider Billing Manuals*

First Health reiterated its uncertainty about the existence of prior billing manuals, but agreed again to determine whether they exist.

6.   *Preferred Drug Lists ("PDLs") and Formularies*

The State acknowledged that it had not made any progress in producing information provided by First Health in conjunction with PDL recommendations. Counsel for the State noted that she would have to discuss the matter with co-counsel first.

7.   *Rebates*

Defendants asked whether the State, in lieu of producing rebate information from its own files, would instead agree to stipulate to the amount of rebates it received for each drug at issue during each relevant time period and increment, to the extent that information could be obtained from defendants' files. Counsel for the State said that she would consider this proposal and consult with co-counsel.

8.   *Management Reports and Other Documents*

First Health agreed to send contracts, RFPs, and amendments relating to its agreement with the State to Ms. Breckenridge.

Defendants clarified that the requested "management reports" include drug utilization reports and other summary reports prepared by First Health. The State agreed to locate and produce these reports.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 18, 2005
Page 4

9. *Deposition Schedule*

Defendants proposed the following deposition schedule, based on dates previously provided by the State:

a. The State's second 30(b)(6) witness: November 15-16. The presumption is that this deposition would end around lunch time on the 16th, though it is possible that it would extend beyond that.

b. Mel Rosenberg: November 16. This deposition would most likely take place in the afternoon. There is a slight possibility that it would extend to the morning of the 17th.

c. John Liveratti: November 17. Defendants would attempt to conclude this deposition by the end of the day.

We assume that this schedule is acceptable to the State and that the State will notify its witnesses accordingly.

Sincerely,

Ronald G. Dove, Jr.

cc: Counsel of record (by electronic service)