# EXHIBIT 18

# COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004-2401
TEL 202.662.6000
FAX 202.662.6291
WWW.COV.COM

WASHINGTON
NEW YORK
SAN FRANCISCO
LONDON
BRUSSELS



Oct 26 2005
6:05PM

October 26, 2005

BY E-MAIL AND ELECTRONIC SERVICE

Tim Terry
Deputy Attorney General
Office of the Attorney General
198 North Carson Street
Carson City, NV 89701

Jeniphr A. Breckenridge
Hagens Berman Sobol Shapiro
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

    Re: **Nevada AWP Actions**

Dear Tim & Jeniphr:

    This letter summarizes the agreements reached and action items identified in our telephone conference held on Tuesday, October 25. To guide our discussion, we delivered a letter to you on October 18 summarizing our agreements and identifying action items from our October 17 telephone conference regarding discovery issues involving First Health. Additionally, we discussed those discovery issues involving the State of Nevada that were identified in our letter of October 14, but deferred during our October 17 conference due to Mr. Terry's unavailability.

    We discuss below the conclusions reached and action items identified as to the issues concerning both First Health and the State of Nevada. We also identify below certain discovery concerns that have arisen in the course of our review of documents that the State has thus far produced.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 26, 2005
Page 2

**Discovery Issues Involving First Health**

1. *Pharmacy Claim Data Request*

Counsel for First Health confirmed its ability to produce electronic "pharmacy claim" files from 2003 to the present with personal health information ("PHI") redacted. Counsel for the State confirmed that it has a listing of NDC numbers for the subject drugs and will promptly send these to First Health. First Health agreed to provide this listing to its technology personnel to determine how long it will take to produce the pharmacy claim data with redacted PHI. First Health noted that it is unsure whether the data can be produced in the form of a comma-delimited ASCII text data set.

First Health stated that its "adjudicated claim" files contain comprehensive information about all claims processed, including how the claims were paid and all other data found in individual RA forms. Because of their comprehensiveness, First Health suggested producing data from these "adjudicated claim" files in lieu of data from both the "pharmacy claim" files and individual RA forms. First Health agreed to provide samples of each type of claim file, so that defendants could decide whether they would like to request both files or just the "adjudicated claim" files.

2. *Drug File Data Request*

First Health confirmed that it has a historical drug file with the requested data, but claimed that the information contained therein is proprietary and confidential to the third-party vendors with whom First Health contracts. First Health agreed to ask its vendors if a confidentiality agreement from the parties regarding the limited use and disclosure of this information would be sufficient to permit its release. The State agreed to consider whether it would be willing to agree to this approach.

3. *Physician-Administered Drug ("PAD") Claim Data*

The State agreed to promptly send to First Health J-codes and any other information needed to determine how PAD claim data is stored in First Health's system.

4. *Provider Contract Request*

First Health reiterated that a single form contract, available on its website, is used for all providers. However, First Health noted that different types of providers are asked to complete different fields on the form.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 26, 2005
Page 3

5. *Historical First Health Provider Billing Manuals*

First Health confirmed that it possesses all historical billing manuals and updates since 2003 in the form of Adobe PDF files. First Health agreed to determine if and how this material can be sent to counsel for the State, so that it may be produced to defendants.

6. *Preferred Drug Lists ("PDLs") and Formularies*

The State reiterated that it is attempting to locate the information provided to it by First Health in conjunction with PDL recommendations.

7. *Rebates*

The State declined to accept defendants' compromise proposal that defense counsel will obtain rebate data from its clients if the State agrees to stipulate that such data accurately identifies the rebates actually received by the State. The parties agreed that they have reached impasse on this issue.

8. *Management Reports and Other Documents*

The State has yet to receive from First Health contracts, RFPs, and amendments relating to agreements between the State and First Health. Counsel from First Health agreed to determine if the materials have been sent and to ensure that they are sent again, if necessary. The State agreed to continue to search for management reports, including drug utilization reports and other summary reports prepared by First Health.

**Discovery Issues Involving the State of Nevada**

1. *Deposition Scheduling*

The parties confirmed the deposition schedule discussed on the October 17 telephone conference and memorialized in defense counsel's letter of October 18. The State confirmed that it has notified its witnesses of this schedule and requested that they be somewhat flexible with their availability.

2. *Parens Patriae Claims*

The State confirmed that it will press claims on behalf of self-insured employers, insurers, and other commercial third-party payors based in Nevada.

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 26, 2005
Page 4

3. *Pre-2003 Claims Data*

The State confirmed that it has claims data dating back to January 1991. The State agreed to determine if PAD claims data is included in the data set for which it provided sample printouts to defendants. Defendants agreed to take a closer look at the sample data printouts and address any additional questions to the State or to Mel Rosenberg at his deposition. The State noted that the data will be provided on compact disks. Should this prove impracticable, however, the State will explore the possibility of providing the data on tapes.

4. *Interrogatories*

The State stated that it is still gathering information needed to respond to defendants' interrogatories.

5. *Other State Drug Reimbursement Programs*

The State confirmed that it will limit its claims to the State's Medicaid program. The State noted that this would include Medicaid managed care programs to the extent that the State Medicaid program remains responsible for drugs. Defendants noted that they would still need to take discovery from other State entities that purchase prescription drugs, but agreed to further consider the nature and scope of their discovery requests given this limit on the State's claims (see below).

6. *Legislative Documents and Testimony*

The State noted that it expects to ascertain promptly the answers to two questions previously asked by defendants with respect to the production of legislative documents and testimony: (i) Were files of the relevant legislative committees and executive offices searched? (ii) Did the search for legislative documents include documents dating back to at least 1991?

**Additional Discovery Issues**

1. *Discovery of Other State Entities*

Although the State's claims are limited to payments made by the State Medicaid program, defendants continue to seek discovery from other State entities that may have purchased prescription drugs during the relevant time period (1991-present), or which may have provided prescription drug benefits to Nevada residents requiring payments based on AWP. In light of the State's limitation on its claims, however, defendants will initially limit their discovery requests to the following:

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 26, 2005
Page 5

- a witness or witnesses with knowledge of the drug purchasing and drug benefit programs of the other State entities;

- a list of all such entities;

- documents from each entity sufficient to show, during the time period at issue: (i) the drugs purchased by that entity; (ii) the prices at which the drugs were purchased by that entity; and (iii) any knowledge of actual acquisition costs for drugs, even if not purchased by that entity; and

- documents from each entity sufficient to describe the nature of the drug benefit program offered by that entity, and whether any reimbursements or payments by the program or its beneficiaries are based on AWP.

Defendants reserve the right to press for additional documents and depositions from or concerning these entities to the extent necessary to support their defenses or otherwise respond to plaintiffs' claims.

2. *Outstanding Discovery Items*

There are a number of items identified in my August 30, 2005, letter which the State has agreed to produce that we have not yet received. On the next call, defendants would like an update on the status of the production of these items:

- Coleen Lawrence's notes of the testimony she gave at the 2003 budget hearing (Aug. 30 letter, item 1)

- Coleen Lawrence's records of the legislative testimony that she helped prepare for others relating to prescription drug reimbursement or rebates (Aug. 30 letter, item 2).

- Any communications from the National Association of Medicaid Fraud Control Units relating to prescription drug reimbursement or rebates, including the letter referred to by Coleen Lawrence during the depositon (Aug. 30 letter, item 10)

- Any documents from any meeting of the National Association of State Medicaid Directors relating to prescription drug reimbursement or rebates (Aug. 30 letter, item 12)

- The study on drug acquisition costs conducted by Keith McDonald and referred to during the Coleen Lawrence deposition (the State has indicated that it has produced this study but defendants have been unable to locate it in the production) (Aug. 30 letter, item 13)

COVINGTON & BURLING

Tim Terry
Jeniphr A. Breckenridge
October 26, 2005
Page 6

- Minutes, audio or video of the July 8, 2002, meeting regarding the State's proposed amendment to its reimbursement rate for prescription drugs (the State has produced audio for the 1/22/02, 12/16/03 and 3/31/04 meetings, but not this one) (Aug 30 letter, item 16)

- The contact information for the individuals at Meyers & Stauffer who the State worked with to prepare the "margin analysis tool" discussed at the Coleen Lawrence deposition (Aug. 30 letter, item 18)

- Any public comments relating to the July 8, 2002, meeting on the States proposed amendment to its reimbursement rate (Aug. 30 letter, item 19)

- Any notes or minutes of Drug Utilization Review board meetings to the extent that they relate to reimbursement or rebate issues (Aug. 30 letter, item 25)

- Any documents relating to the OIG's 2003 audit of the State's rebate program (Aug. 30 letter, item 27)

- Any documents relating to the State's dealings with Sierra and NevadaCare to the extent they relate to AWP or reimbursement issues (Aug. 30 letter, item 29)

- Any contracts with HealthInsight and all related communications (Aug. 30 letter, item 31)

- Any documents relating to HealthInsight's recommended changes to the State's Medicaid plan (Aug. 30 letter, item 32)

As discussed on our last call, Jeniphr will contact either me or Ron when she returns to the office next week to arrange a time for our next call.

Sincerely,

Jason R. Litow

cc:   Counsel of record (by electronic service)