**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              )
IN RE:  PHARMACEUTICAL INDUSTRY               )
AVERAGE WHOLESALE PRICE                       )  MDL No. 1456
LITIGATION                                    )  Civil Action No. 01-CV-12257-PBS
                                              )
                                              )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              )
THIS DOCUMENT RELATES TO:                     )  Hon. Patti B. Saris
International Union of Operating Engineers,   )
Local No. 68 Welfare Fund v. AstraZeneca PLC  )
et al. Civil Action No. 04-11503-PBS          )
                                              )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**MEMORANDUM OF LAW PURSUANT TO THE COURT'S DIRECTIVE ON JANUARY 27 AND IN OPPOSITION TO MOTION FOR REMAND BY PLAINTIFF INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND**

Pursuant to the Court's directive during the January 27, 2006 hearing, Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") summarizes below the reasons Plaintiff's motion for remand should be denied. Before doing so, counsel for AstraZeneca wishes to direct the Court's attention to the attached Supplemental Declaration of D. Scott Wise (Exhibit 1 to the Declaration of Lucy Fowler ("Fowler Decl.")), which apologizes to the Court for the consent-related language in the removal petition.[1]

A.   The Consent of the Doctor Defendants Was Not Required

It is undisputed that consent to removal is required only from defendants who were properly served under the applicable state law before removal. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig. (Swanston v. TAP Pharm. Prods.)*, 307 F. Supp. 2d 190, 195 (D. Mass. 2004). The undisputed facts here demonstrate that service was not effected on the doctor defendants before removal.

- New Jersey law generally requires personal service of a summons and complaint. *See* N.J. Ct. R. 4:4-4(a). Although there are exceptions to the personal service requirement, those exceptions all require a good faith attempt at personal service as a prerequisite. *See id.* 4:4-4(b)(1)(A)-(C). There was no attempt by Plaintiff, however, to serve the doctor defendants personally. *See* Fernandez Aff. ¶ 6 (Fowler Decl. Ex. 2); Mustokoff Aff. ¶ 5 (Fowler Decl. Ex. 3). No service of any kind was attempted prior to July 3 on Dr. Berkman. *See* Sherman Aff. ¶ 3 (Fowler Decl. Ex. 4). Plaintiff did not send the Complaint to Drs. Hopkins or Antoun directly by mail or otherwise. Plaintiff's only attempt at service on Drs. Hopkins and Antoun was through their counsel. *See* Fernandez Aff. ¶ 6; Mustokoff Aff. ¶¶ 4-5; Plaintiff's Supplemental Brief, dated April 22, 2005, at 6.

- Plaintiff did not send the Complaint by registered or certified mail, return receipt requested and simultaneously by ordinary mail, to any of the doctor defendants, as set forth in Rule 4:4-4(b)(1)(C). *See id.*

---

[1] We do not re-argue here regarding the issue of the substantive grounds for federal jurisdiction, which Plaintiff itself does not seriously contest. For a discussion of this issue, see AstraZeneca's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Remand, dated May 6, 2005, at 16-19 (setting forth the grounds for complete ERISA preemption). There is an independent alternative ground as well based on the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363 (2005) The Court is fully informed of the issues raised by *Grable* from the briefing and arguments on the pending motions to remand the Kentucky and Illinois cases.

- Plaintiff recognized that the Federal Express delivery of the Complaint on counsel for Dr. Antoun was not effective service under New Jersey law, and attempted to "cure" the defect by having counsel for Dr. Antoun submit an affidavit attesting to an oral agreement to accept service.  *See* July 17, 2003 E-Mail from D. Haviland to M. Mustokoff (K&S 0394, Fowler Decl. Ex. 5).

- An acceptance of service alternatively may be accomplished through the filing of a form with the appropriate court identifying the case name and number, and acknowledging the receipt of service.  *See* N.J. Ct. R. 4:4-6; 3 N.J. PRAC § 15.33.  No such thing occurred here before removal.  *See* Mustokoff Aff. ¶¶ 4-5; Fernandez Aff. ¶ 6.

- Reliance by Plaintiff on the optional mail service provision in Rule 4:4-4(c) – which provides for service via registered, certified, or ordinary mail – is misplaced.  As an initial matter, any mailing here was not to the doctor defendants.  Also, service is effective through this provision only after the defendant answers the complaint or otherwise appears in response thereto.  *See Citibank, N.A. v. Russo*, 759 A.2d 865, 868 (N.J. Super. Ct. App. Div. 2000); *Wohlegmuth v. 560 Ocean Club*, 695 A.2d 345, 347 (N.J. Super. Ct. App. Div. 1997).  It is undisputed that the doctor defendants did not answer or appear before removal.  Counsel for Dr. Antoun and Dr. Hopkins orally agreed to accept service on July 1 and 3, 2003, respectively, but did not file any document with any court or appear in any fashion in any court in connection with this matter until July 18, 2003.  *See* Mustokoff Aff. ¶¶ 4-5; Fernandez Aff. ¶ 6.

At the hearing on January 27, 2006, counsel for Plaintiff argued that AstraZeneca's service-related arguments made no sense because, if AstraZeneca were correct, a plaintiff could never obtain a default judgment on a defendant served by regular mail.  Far from making no sense, however, the New Jersey rules explicitly provide that a defendant *cannot be defaulted* if no response is made to a summons and complaint sent by ordinary mail.  *See* N.J. Ct. R. 4:4-4(c) (providing that service by ordinary mail is effective only if the defendant answers or otherwise appears and "provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto" and further providing that if a defendant does not respond within 60 days to the mail service, time then begins to run anew from the date of new service).[2]

Because all else fails, Plaintiff is left with the following retroactivity argument – namely, that the *subsequent* remand joinders filed by Drs. Hopkins and Antoun render service perfected *nunc pro tunc* to the date of the oral agreement by counsel to accept service.  Even assuming these

---

[2] The Court asked about New Jersey law practice manuals with relevant commentary.  *See* John H. Klock, 1B N.J. Prac., Court Rules Annotated R. 4:4-4, Author's Comment 3 at 37 (5th ed. 2005) (commenting that if service is not made personally on an individual, then "a default may not be entered").

post-removal filings would constitute the requisite appearance, nothing in the New Jersey rules supports such a retroactivity argument. Because the service rules "must be strictly construed and fully carried out in order to confer jurisdiction," *Soveral v. Franklin Trust*, Civ. No. 90-2052 (CSF), 1991 WL 160339, at *4 (D.N.J. Aug. 12, 1991), that should end the inquiry.

In addition, however, Plaintiff's retroactivity argument flies in the face of logic and well-established authority, succinctly summarized long-ago by the Eighth Circuit:

> "It is very true that a general appearance brings the party into the litigation as effectively as though there were no defects in . . . service. . . . But such expressions are to be taken only as meaning that the party cannot, after a general appearance, escape the jurisdiction of the court because of a defect in the process. <u>It does not relate back and cure such defects for all purposes but takes effect generally only as of the time of the general appearance</u>."

*United States v. French*, 95 F.2d 922, 926 (8th Cir. 1938) (emphasis added); *see also* Defendants' Second Supplemental Memorandum of Law, dated December 28, 2005, at 8-12.[3]

B.    <u>Alternatively, the Lack of Consent of the Doctor Defendants Should Be Disregarded</u>

As an initial matter, the Complaint provides no basis on which Plaintiff has standing to assert claims against the doctors. The Complaint fails to allege that the Plaintiff, or any of the putative class members, were treated by – let alone purchased subject drugs from – any of the three doctors. In fact, two of the three doctors practiced outside of New Jersey. There are no personal jurisdiction allegations at all. With respect to the one New Jersey doctor, there is no allegation that Plaintiff, its members, or members of the putative class were ever billed for any drug this doctor prescribed. Plaintiff cannot just make general "statements levied against all defendants." *In re Diet Drugs Products Liability Litigation*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002).[4]

---

[3] That no such rule of retroactivity applies to deem service perfected as of the date of an oral agreement is also consistent with Rule 4(d)(4) of the Federal Rules of Civil Procedure, which provides that an action proceeds as if a summons and complaint had been served *at the time of filing of the waiver of service*, not the receipt of the complaint in the mail. New Jersey considers the Federal Rules and federal authority persuasive when interpreting its own rules. *See Freeman v. Lincoln Beach Motel*, 442 A.2d 650, 651 (N.J. Super. Ct. 1981).

[4] Plaintiff's reliance on this Court's recent Erie County decision, *In re Pharm. Indus. Average Wholesale Price Litig. (County of Erie v. Abbott Labs.)*, slip op. (D. Mass. Jan. 9, 2006), is misplaced. In that case, there was no issue as to whether there were viable claims against the non-diverse defendants and there was certainly no (…continued)

Each of Plaintiff's claims requires some relationship between the doctor defendants' allegedly wrongful conduct and the injury claimed to Plaintiff. *See, e.g.*, *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (Sup. Ct. 1994) (claim for unjust enrichment requires showing that defendant received benefit [from plaintiff]); *Dabush v. Mercedes Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. Super. Ct. 2005) (claim under Consumer Fraud Act requires showing of unlawful conduct by the defendants, ascertainable loss on part of plaintiff, and causal relationship between defendants' unlawful conduct and plaintiff's ascertainable loss). Without allegations tying the alleged harm to the doctor defendants, there is no basis upon which a court could find these doctors liable for any of the claims asserted in the Complaint.

Second, discovery has revealed that Plaintiff did not intend to pursue the doctor defendants to joint judgment, but instead viewed them as integral to Plaintiff's counsel's strategy to maintain control of AWP-related litigation in state court outside of the MDL. The record contains strong evidence that the joinder of the doctor defendants was purely tactical and "that [the doctors] . . . [are] more aligned with the plaintiff than the [other] defendants" and, accordingly, that "the only effect of [the doctors']. . . presence in this lawsuit is that of assistance to the plaintiff[]." *Joe v. Minnesota Life Insurance Company*, 257 F. Supp. 2d 845, 849 (S.D. Miss. 2003). For example,

• Plaintiff's counsel told Dr. Berkman's lawyer that he was interested in Dr. Berkman not as a defendant, but only as a fact witness. He suggested it would be in Dr. Berkman's interest to support his efforts to keep the case in state court. *See* Sherman Aff. ¶ 4.

• Plaintiff's counsel circulated settlement agreements to counsel for Dr. Hopkins and Dr. Antoun prior to AstraZeneca receiving the Complaint. He indicated to counsel for Dr. Hopkins that "time [was] of the essence" in order to settle, predicted that AstraZeneca would attempt to remove the action, and said that all bets were off if the case goes to federal court because he would lose control over the litigation. *See* Fernandez Aff. ¶¶ 3-4. Plaintiff's counsel indicated he would be inclined to agree that no monetary payment would be required of Dr. Hopkins if the case remained in state court under his control. *See id.* ¶ 4.

---

(continued…)
evidence of the kind uncovered here. There, the Court was addressing whether there was a viable fraudulent joinder argument with respect to whether the claims against the non-diverse defendants should be severed from those of the diverse defendants.

4

- Plaintiff's counsel was the "shadow" writer for motions to quash filed by the doctor defendants back in 2003.  *See* July 15, 2003 E-Mail from D. Haviland to J. Fernandez (K&S 0365, Fowler Decl. Ex. 6); Fernandez Aff. ¶ 7.  He also encouraged the doctor defendants' counsel to support Plaintiff's remand efforts and provided language for them to do so.  *See* July 8, 2003 Letter from D. Haviland to Counsel for Doctor Defendants (BERK 005-007, MUST 0074-0076, Fowler Decl. Exhibit 7); Sherman Aff. ¶¶ 5-6; Fernandez Aff. ¶ 8.

- Plaintiff's counsel provided counsel for Dr. Hopkins with arguments to make in order to resist discovery subsequent to this Court's August 19, 2005 Order, and encouraged counsel for Dr. Hopkins to appeal and thereby prolong the discovery battle even after his motion for protective order was denied by Judge Bowler.  *See* Fernandez Aff. ¶¶ 9-10.

- Plaintiff's counsel convinced counsel for Dr. Antoun that it would be in Dr. Antoun's best interest to cooperate with Plaintiff's counsel.  *See* Dodds Aff. ¶ 6 (Fowler Decl. Ex. 8).

- Plaintiff's counsel never pursued his preliminary injunction against Dr. Antoun,[5] although Plaintiff's counsel did pursue it against AstraZeneca.  Dr. Antoun never answered Plaintiff's request for a preliminary injunction.  *See* docket sheets for state and federal court proceedings (Fowler Decl. Exs. 9 through 12).

- In other AWP-related litigation, the same Plaintiff's counsel named individual defendants, only to settle with them soon after the case was solidly in state court for no monetary compensation.  *See, e.g.,* Settlement Agreement in *Stetser v. TAP Pharmaceuticals, Inc.*, No. 1-CV-5268 (N.C. Gen. Ct. of Justice Super. Ct. Div., Dec. 27, 2001) (Fowler Decl. Ex. 13).

Moreover, this case is not the only instance where this same Plaintiff's counsel has sought to use state litigation to attempt to seize control of AWP-related litigation in the federal courts.  In the *Lupron Litigation*, Judge Stearns found that this same Plaintiff's counsel and his firm "embarked on a preemptive strategy to seize control of the litigation by using the state court proceedings to gain leverage over counsel cooperating with the MDL action."  *In re Lupron Marketing and Sales Practices Litigation*, 228 F.R.D. 75, 80 (D. Mass. 2005).  Now, having become one of lead plaintiff's counsel in this MDL, Plaintiff's counsel seek to circumvent the effect of this Court's class certification rulings by maintaining simultaneous control of a state court action purporting to assert certain class claims this Court has already ruled are inappropriate for class treatment.

---

[5] Curiously, Plaintiff did not even name Dr. Hopkins or Dr. Berkman in its motion for a preliminary injunction.

Respectfully Submitted,	By:   /s/ Lucy Fowler

DATED:   February 10, 2006	Nicholas C. Theodorou (BBO # 496730)
Lucy Fowler (BBO# 647929)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110

D. Scott Wise
Michael Flynn
Kimberley Harris
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY  10017

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on February 10, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Lucy Fowler_____
Lucy Fowler