# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | Judge Patti B. Saris |
| *State of Nevada v. Abbott Labs., Inc. et al.,*       Case No. CV-02-00260 (Nevada I), | |
| *State of Nevada v. American Home Products, et al.,*       CA NO. 02-CV-12086-PBS (Nevada II), and | |
| *State of Montana v. Abbott Labs., Inc., et al.,*       CA No. 02-CV-12084-PBS | |

## OPPOSITION OF THE STATES OF NEVADA AND MONTANA TO DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY

# TABLE OF CONTENTS

**PAGE**

I. BACKGROUND ...................................................................................................1

II. ARGUMENT .....................................................................................................3

    A. Discovery From Non-Medicaid State Entities Is Not Relevant To
       This Case And Would Be Extremely Burdensome To Produce ...........................3

        1. Defendants' efforts to obtain discovery from irrelevant State
           entities ...........................................................................................3

           a. Defendants seek *full* discovery of the drug programs of
               non-Medicaid agencies and depositions of up to 18
               non-Medicaid witnesses in the two states .......................................4

        2. Defendants have stated no good cause to compel the production
           of non-Medicaid information .........................................................5

           a. Defendants' "hope" is too speculative a basis for the
               discovery sought where there is no relationship between
               the agencies, the information would be irrelevant anyway..............6

           b. There is no imputation of knowledge under the agency
               law principles defendants cite ...........................................6

    B. Discovery from Executive and Legislative Offices Is Not Relevant to
       This Case And Would Be Invasive and Burdensome to Produce...........................8

        1. Defendants' efforts to take discovery from the "Governors'
           offices and legislative offices"......................................................8

         2. The document requests are fatally vague as they relate to
           documents in the possession of "Governors' offices and
           legislative offices" ........................................................................8

         3. The Governor's office is not likely to have relevant information ..............9

         4. The Legislative Counsel Bureau also is not likely to have
           relevant information.......................................................................9

         5. Certain discovery from the "Governor's office and the
           legislator's offices may be subject to the deliberative
           process privilege ..........................................................................10

    C. Defendants Already Have Access to the Highly-Confidential Drug
       Rebate Data the States Are Statutorily Barred From Disclosing..........................11

    D. Any Court Order to Produce Pre-1991 Documents Should Apply
       to All Parties ...................................................................................................12

E.    Defendants' Electronic Discovery Requests Are Unduly Burdensome and Should Not Be Allowed; If Allowed, the Costs Should Be Shifted to Defendants ........................................................................................................13

    1.    The status of electronic discovery..............................................13

        a.    The States' objections ....................................................14

        b.    Defendants' electronic discovery requests impose cannot be performed by the existing state systems and impose undue burdens on the States ................................14

    2.    Any electronic discovery should be strictly limited and pursued only at defendants' expense ........................................16

    3.    Other terms and conditions to electronic discovery...................19

F.    Agreed Discovery Is Not an Appropriate Subject for a Motion to Compel ..........20

III.    CONCLUSION...........................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*In re "Agent Orange" Prod. Liab. Litig.,*
   597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................................7

*Byers v. Ill. State Police,*
   2002 U.S. Dist. Lexis 9861 (N.D. Ill. June 3, 2002) .........................................................17

*Hotel Employees & Restaurant Employees Int'l Union v. State of Nevada,*
   103 Nev. 588, 747 P.2d 878 (1987) ...............................................................................10

*McPeek v Ashcroft,*
   202 F.R.D. 31 (D. D.C. 2001) .............................................................................3, 17, 19

*Multitechnology Servs., L.P. v. Verizon,*
   2004 U.S. Dist. Lexis 12957 (N.D. Tex. July 12, 2004) ....................................................17

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978) .....................................................................................................16

*Rowe Entm't, Inc. v. William Morris Agency, Inc.,*
   205 F.R.D. 421 (S.D.N.Y. 2002) ....................................................................................17

*Rowe Entm't v. William Morris Agency, Inc.,*
   2002 U.S. Dist. Lexis 8308 (S.D.N.Y. May 8, 2002) ........................................................17

*Thompson v. United States HUD,*
   219 F.R.D. 93 (D. Md. 2003) .....................................................................................17, 20

*Wiginton v. CB Richard Ellis, Inc.,*
   229 F.R.D. 568 (N.D. Ill. 2004) ....................................................................................20

*Zubulake v. UBS Warburg,*
   217 F.R.D. 309 (S.D.N.Y. 2003) ...............................................................16, 17, 18, 20

### STATUTES

42 U.S.C. § 1396r-8 ...........................................................................................................11

17 Nev. Rev. Stat. § 218.625 ................................................................................................9

The States of Nevada and Montana (the "States") oppose defendants' Second Motion to Compel Discovery on the grounds that the discovery sought is irrelevant, overly-burdensome, cumulative or simply broader than that which all parties agree should be produced.  The discovery is part of defendants' campaign to harass the States and detract from the principal issues before the Court by placing the States on trial, rather than a legitimate effort to discover information relevant to the claims and defenses of this case.

The parties agree that they have conferred and that five categories of discovery are in dispute:  (1) documents and testimony from non-Medicaid State entities; (2) documents and testimony from State executive and legislative offices; (3) drug rebate data; (4) documents for the pre-1991 time-period; and (5) electronic discovery.  Defendants' motion should be denied as to each category.  Categories (1) and (2) are irrelevant to the case. These categories constitute a burdensome fishing expedition into governmental entities with no relevance to the State Medicaid programs.  Category (3) constitutes highly-confidential data which defendants admit that they have in their possession.  Category (4) relates to a time period for which defendants have refused to produce documents.  Category (5), as currently crafted by defendants, is overly-broad and burdensome to the point of impossibility for the States; if the Court orders electronic discovery, defendants should bear the cost.

Defendants also move to compel the production of a sixth category:  discovery which the States have agreed to produce.  Def. Mot. at 18.  Because agreement has been reached on nearly all of this discovery and much of the material referenced has been produced, the motion is unnecessary and should be denied as to the sixth category.

## I.     BACKGROUND

Defendants waited until 2½ years after the cases were filed to serve any discovery on the States.  The written discovery that defendants finally served in May 2005 was vague, confusing,

unfocused and free-ranging.  Def. Mot. Exs. 1-2.  Often defendants could not articulate what information they sought for a particular request.  This resulted in an extensive, but cooperative, meet and confer process and numerous trips back to file cabinets as defendants refined their requests.  Defendants conducted discovery of the States' fiscal intermediaries simultaneously.  The requests were equally amorphous and had to be resolved.

The depositions in Nevada have been no different.[1]  Defendants noticed the deposition of more than a dozen Medicaid employees or former employees mentioned in the 30(b)(6) testimony of Department of Health Care Finance and Policy ("DHCFP") Administrator Charles Duarte without evaluating whether each individual would have relevant knowledge.  In many cases, the depositions have lasted less than a full day, because the deponents did not have information relevant to the case, something that could have been predicted in advance.

Delays in the States' discovery were inevitable given three factors:  (i) defendants' confusion over what they were seeking; (ii) the compressed period the States had to work within given defendants' substantial delays in starting discovery; (iii) the lean Medicaid staffs in each of the States; and, later in the year (iv) the implementation of Medicare Part D which diverted the attention of the States' Medicaid staffs.  Declaration of Jeniphr Breckenridge in Support of Opposition of the States of Nevada and Montana to Defendants' Second Motion to Compel Discovery ("Breckenridge Decl."), ¶ 57.

Despite these obstacles, the States cooperated, and the States' discovery is substantially completed.  The majority of the ***relevant*** information available to the States and responsive to defendants' document requests has now been produced.  The States' fiscal intermediaries have or will complete the production of claims data.  In Nevada, thirteen depositions have been taken,

---

[1] Defendants have not begun fact depositions in Montana.

including the depositions of four current or former Medicaid administrators.  Additional

depositions are scheduled.  As a result of each deposition, Nevada has searched for and, if found,

produced additional documents.  In Montana, fact depositions will begin within the next week.

For defendants, however, this is not enough.  Defendants now want to drain the States'

resources and all parties' time by delving into material burdensome to produce that has marginal

or no relevancy to the claims and defenses before the Court.  Defendants' abusive over-reaching

must be stopped.  The States should not be forced to bear the time and expense entailed in

satisfying defendants' fishing expedition for the five categories of information outstanding.

## II.      ARGUMENT

### A.      Discovery From Non-Medicaid State Entities Is Not Relevant To This Case And Would Be Extremely Burdensome To Produce

#### 1.      Defendants' efforts to obtain discovery from irrelevant State entities

Defendants' initial discovery requests sought responsive documents maintained by **_all_**

State agencies.  Def. Mot., Exs. 1-2.[2]  The States subsequently advised defendants that they

would not seek damages on behalf of non-Medicaid agencies.  _See_ Breckenridge Decl., Exs. 1-2.

Because there is no formal – or even informal – relationship between different State agencies

involved in the purchasing and reimbursement of drugs in either Nevada or Montana, any

knowledge from non-Medicaid agencies became irrelevant.  Defendants confirmed this fact

through deposition.[3]  Nevada independently confirmed the lack of any relationship or

---

[2] "American lawyers engaged in discovery have never been accused of asking for too little.  To the contrary, like the Rolling Stones, they hope that if they ask for what they want, they will get what they need."  _McPeek v Ashcroft_, 202 F.R.D. 31, 33-34 (D.D.C. 2001).

[3] Defendants questioned Nevada Medicaid Administrator Charles Duarte about his dealings with non-Medicaid divisions regarding drugs and drug reimbursements.  He confirmed that he had no significant communications on relevant topics with these entities.  _See_ Breckenridge Decl., Ex. 3 at 50-54 (Charles Duarte Dep.) (Nevada Public Employee Benefits Fund and its Executive Director Woody Thorne), 135 (Nevada Division of Mental Health and Developmental Services and Dr. Emmanuel Ebo), 136-37 (Nevada Child and Family Services and Patty Maryfield), 136-39 (Nevada Health Division and its Administrator, Alex Haartz and its Deputy Administrator, Richard Whitley), 57, 137 (Department of Corrections), 132-34 (Senior Rx and Laurie Olson).  Former Administrators, April Townley and Christopher Thompson also confirmed that they did not recall specific conversations with non-Medicaid entities on the topics.  _Id._, Ex. 4 (April Townely Dep. at 20, 121-25, 128); _Id._, Ex. 5 (Christopher

communications between these entities and Medicaid.  The non-Medicaid agencies:  (i) do **not** have knowledge relevant to the claims and defenses of any party; (ii) *do not* have any knowledge of prescription drug pricing topics related to this lawsuit; (iii) *do not* have a formal relationship with the State Medicaid agencies; (iv) the non-Medicaid agencies do not – and have not – communicated with the State Medicaid agencies regarding none of the agencies has significant responsive information; and (v) do not have – and have not had – any communication with Medicaid employees regarding "their knowledge about AWP and drug pricing."  Breckenridge Decl., ¶¶ 6-20.

Nevada provided this information to defendants.  Breckenridge Decl., ¶ 21.  Defendants refused to withdraw the discovery.

> ### a.   Defendants seek *full* discovery of the drug programs of non-Medicaid agencies and depositions of up to 18 non-Medicaid witnesses in the two states

Defendants represent to the Court that they have narrowed what they seek from non-Medicaid agencies as a result of the States' stipulations.  What they actually seek, however, is similar in its broad scope to the discovery they have taken from the State Medicaid agencies.  Defendants seek documents from each entity:

- sufficient to show, during the time period at issue:  (i) the drugs purchased by that entity; (ii) the prices at which the drugs were purchased by that entity; and (iii) any knowledge of actual acquisition costs for drugs, even if not purchased by that entity; and

- sufficient to describe the nature of the drug benefit program offered by that entity, and whether any reimbursements or payments by the program or its beneficiaries are based on AWP.

Defendants also seek:

---

Thompson Dep. at 59-60).  Defendants disregarded the testimony and noticed the 30(b)(6) testimony of each of the divisions mentioned **and** the fact depositions of each individual mentioned.

- Depositions of State employees who have been identified as having knowledge regarding the drug purchasing or reimbursement activities of those state entities.

Def. Mot. at 5. The search for and production of documents "sufficient to show" all drugs purchased by an entity as well as prices and other data for a fifteen year period would impose a significant burden on agencies that have had virtually **no** relationship or communications with state Medicaid and for which the States do not claim damages. Breckenridge Decl., ¶ 22. In most cases, the requests would involve the non-Medicaid agencies and their staffs **and** the outside, non-governmental vendors and pharmacy benefit managers who administer any drug programs.

From the same state agencies, in Nevada, defendants seek **thirteen depositions**: 30(b)(6) testimony related to **six** non-Medicaid entities requiring depositions of up to **six individual witnesses** and the depositions of **seven** individuals from the same agencies.[4] In Montana, defendants seek 30(b)(6) notice testimony from **six non**-Medicaid agencies.[5]

### 2. Defendants have stated no good cause to compel the production of non-Medicaid information

Defendants attempt to justify this extensive non-Medicaid discovery with four arguments: (i) their "hope" it will "point" to the fact that non-Medicaid entities purchasing drugs at prices well below the published AWP; (ii) the potential that it **may** reflect communications between the non-Medicaid and Medicaid employees; (iii) their belief that the knowledge, of any, non-Medicaid state entities **should** be imputed to Medicaid; or (iv) the potential that it **may** show what defendants **believe**: that State Medicaid "should have known that AWP did not reflect actual acquisition costs." Def. Mot. at 5-6. None of these arguments overcomes the obvious

---

[4] *See supra* at n.3. A copy of the Fed. R. Civ. P. 30(b)(6) notice is attached to Breckenridge Decl., Ex.6.

[5] A copy of the Fed. R. Civ. P. 30(b)(6) notice is attached to Breckenridge Decl., Ex. 7.

irrelevance of the information or demonstrates good cause to subject the non-Medicaid agencies

to the burdens that the discovery sought would impose.

> **a.      Defendants' "hope" is too speculative a basis for the discovery sought where there is no relationship between the agencies, the information would be irrelevant anyway**

A party's "hope" that the extensive discovery sought will "point" to proof is simply too

removed from the claims and defenses in the case to justify the proposed discovery.  Neither

does it meet the "good cause" standard of Rule 26.  Fed. R. Civ. P. 26(b)(1).  Non-Medicaid

agencies are not a part of the case.  Deposition testimony by numerous current and former

Medicaid employees in both States, including four administrators, establishes that Medicaid staff

had limited communications with other agencies.  Defendants have not been able to establish that

any interagency communications regarding drugs and drug reimbursement took place.  In

Nevada, personnel from the non-Medicaid agencies have confirmed the Medicaid staff

testimony.  Breckenridge Decl., ¶¶ 6-20.  In Montana, a 30(b)(6) witness confirmed that there

was no "mechanism for sharing information about drug purchasing across Montana agencies"

and that there were no formal communications.  Breckenridge Decl., Ex. 8 (Jeff Buska Dep.

at 86-93).

> **b.      There is no imputation of knowledge under the agency law principles defendants cite**

Defendants' argue that basic agency laws operate to impute any prescription drug

knowledge among state agencies and thus justify the desired discovery.  Def. Mot. at 6-7.  This is

a misconstruction of agency law.  RESTATEMENT § 272 provides that a principal is liable for the

"knowledge of an agent concerning a matter as to which he acts within his power to bind the

principal or upon which it is his ***duty*** to give the principal information."  There has been no

allegation that any non-Medicaid state agency in Nevada or Montana was under any duty to

- 6 -

report information regarding prescription drugs or AWP either to the State or any other agency, including Medicaid.  In fact, state agencies retain the authority to conduct routine operations without reporting all details to the State.  Administrator Duarte has confirmed that this is the case within Nevada State Medicaid.[6]  The same is true in Montana.  Defendants' proposition that because at times State Medicaid organizations fell under the same umbrella of certain non-Medicaid entities that purchased drugs, knowledge must imputed, is unsupported.

The circumstances which caused the court to impute knowledge in *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984) do not apply here.  The Court cited the agency tenet that defendants want to apply here:  "the knowledge of employees of one agency may be imputed to those of another if there is some relationship between the agencies – either some reason for the agency without knowledge to seek the information or a reason for the knowledgeable agency to transmit the information," *id*. at 796, ***but*** the *Agent Orange* court only found that knowledge should be imputed ***after*** it reviewed substantial evidence submitted by the non-government party that was probative of a relationship among the agencies.  *Id*. at 799.  Defendants have not submitted any comparable evidence to the Court here and there is no such relationship among the targeted agencies.  Knowledge may not be imputed and thus the discovery is irrelevant and should not be allowed.

---

[6] Breckenridge Decl., Ex.3 (Duarte Dep. at 218).

**B.    Discovery from Executive and Legislative Offices Is Not Relevant to This Case And Would Be Invasive and Burdensome to Produce[7]**

    **1.    Defendants' efforts to take discovery from the "Governors' offices and legislative offices"**

Defendants move to compel (1) the production of documents in the possession of the "Governors' offices and legislative offices that are responsive to Defendants' initial request for production of documents;" and (2) testimony from certain current and former state employees who may have been involved in discussions "regarding the purchasing of or reimbursement of prescription drugs." Def. Mot. at 8. Yet no action by any state governor or legislator is at issue in the case. Apparently, the sole justification for the discovery is, again, the testimony of DHCFP Administrator, Charles Duarte, who testified about his periodic and limited contacts with the governor's office and the Legislative Bureau.[8]

    **2.    The document requests are fatally vague as they relate to documents in the possession of "Governors' offices and legislative offices"**

The States cannot determine what documents defendants seek and from whom in this category because defendants have not defined what they mean by the broad term "legislative offices," which could mean offices of legislators or their staff, both or something completely unrelated;[9] or even identified one request for production that covers responsive material that might be maintained within the "Governors' offices and legislative offices." Def. Mot. at 8-12.[10] On these bases alone, the defendants' motion to compel should be denied.

---

[7] This response relates specifically to the State of Nevada. Montana was not aware that defendants intended to take the depositions of "state officials" in Montana until a deposition notice was served with the motion to compel on January 31, 2006. There has been no meet and confer regarding the Montana "state official" depositions; therefore, Montana cannot respond fully.

[8] *See infra* at § II.B. 3-4.

[9] *See* organization chart of the Nevada Legislature depicting Nevada's legislature. Breckenridge Decl., Ex. 9.

[10] Arguably, the initial discovery requests do not even cover the Governor's office. *See* Def. Mot. Ex. 1 at 7; Ex. 2 at 7 (definition of "You," Your," "State," or "Plaintiff"). But the requests are so flawed that the Court need not consider this technical foul.

3.     **The Governor's office is not likely to have relevant information**

In Nevada defendants have also noticed the depositions of *two* former chiefs of staff to

Nevada governors and *two* staff analysts with the Legislative Counsel Bureau despite Duarte's

testimony that he prepared two to three presentations "at most" on prescription drug issues for

the Governor's office, and that he had *no* meetings with the Governor's office regarding

prescription drugs.  Breckenridge Decl., Ex. 3 (Duarte Dep. at 19-20, 168-69).  Duarte also

testified that information provided the Governor and the governor's staff was advisory.  Duarte

retained full statutory authority to administer the Medicaid program himself, without governor

approval.  *Id.* (Duarte Dep. at 89, 218).

Nevada independently confirmed that the governor's office witnesses or their offices are

not likely to have responsive information.  The primary, and usually only, work of the governor's

office in related to Medicaid in any year would be the budget and the Medicaid budget would be

one of dozens of budgets considered during any biennium.  Breckenridge Decl., ¶ 29.  In

Nevada, budget information is publicly available.  *Id.*

4.     **The Legislative Counsel Bureau also is not likely to have relevant information**

The Legislative Counsel Bureau ("LCB") is comprised of nonpartisan staff to the Nevada

State Legislature.  Their job is to provide legislators with advice, fiscal information and

background research and more extensive research upon request.  Breckenridge Decl., Ex. 10.

Research and other information provided by the LCB to legislators in protected by statute.  17

NEV. REV. STAT. § 218.625.  LCB files that are not protected under the statute or other authority

are made available *to the public, including defendants*, at the State library located on the State

Capitol campus in Carson City.  Breckenridge Decl., Ex. 11.  Many are also available on the

Internet.  The files may contain guidance as to legislative intent or information made public

regarding legislative hearings and other background information.  *Hotel Employees & Restaurant Employees Int'l Union v. State of Nevada*, 103 Nev. 588, 592, 747 P.2d 878 (1987).  Having the defendants cull through publicly-available library materials related to the LCB would be reasonable than asking a non-relevant agency to search files for non-privileged information that ***might*** be responsive to defendants' very vague requests.  Moreover, to the extent the information is irrelevant, defendants themselves should bear the burden of searching through public records to discover it.

Defendants have requested the depositions of two LCB staff members on the basis of Administrator Duarte's testimony that theses were two of "several" staff people that he dealt with to prepare testimony on various Medicaid-related topics.  Breckenridge Decl., Ex. 3 (Charles Duarte Dep. at 15-18).  At the deposition, defendants did ***not*** ask Duarte what responsive information the LCB staff might have.  Nevada confirmed that the LCB would not have responsive information in its files.  Breckenridge Decl., ¶ 37.  According to LCB staff, it is highly unlikely that either they or their files will contain information related to drugs, drug pricing or reimbursement, AWP or even communications within Medicaid staff.  *Id.*  State Medicaid personnel would be the more appropriate source of information.  *Id*.

### 5. Certain discovery from the "Governor's office and the legislator's offices may be subject to the deliberative process privilege

Defendants properly raised the potential applicability of the deliberative process privilege to this category of information.  The States do not claim a privilege with respect to ***all*** information in the possession of the "Governor's office and legislative offices."  The deliberative process privilege or other government-based privilege will, however, apply to ***some*** information.  The States reserve their rights to raise this issue on a case-by-case basis.  However, until defendants refine what they are seeking, the State cannot properly invoke the privilege.

**C.    Defendants Already Have Access to the Highly-Confidential Drug Rebate Data the States Are Statutorily Barred From Disclosing**

Defendants have moved to compel the production of data related to two drug rebate programs in which the States participate – not because defendants do not have the rebate data, but because it would be more convenient for them to have the State produce it.[11]  Def. Mot. at 12-14.

There is no dispute that drug rebates are an offset to Medicaid drug expenditures, pursuant to the federal rebate statute.  42 U.S.C. § 1396r-8(b)(1)(B).  The States reports aggregate drug rebate information to HHS in its quarterly HCFA/CMS 64 report as required.  *Id*. Nevada has offered to make ten to twelve boxes of these reports available to defendants.[12] Breckenridge Decl., Ex. 12.

The question is whether the States should produce manufacturer-specific drug rebate data that has been classified as highly-confidential by the defendants and other drug manufacturers *and* which the States are statutorily prohibited from disclosing.  42 U.S.C. § 1396r-8(b)(3)(D). Defendants have not demonstrated good cause for such a production.  The States are aware of no exception to the federal confidentially requirements.  Further, defendants do not dispute that they have the ability to obtain rebate information from one another.  This would obviate any confidentiality concerns, because it is the manufacturers who hold the confidentiality claims for their respective rebate data.

Apart from the confidentiality concerns, production of the rebate data is not the "convenience" for the States that defendants make it out to be.  The information would have to

---

[11] The "Medicaid Drug Rebate Program requires a drug manufacturer to enter into and have in effect a national rebate agreement with the Secretary of the Department of Health and Human Services (HHS) for states to receive Federal funding for outpatient drugs dispensed to Medicaid patients."  www.cms.hhs.gov (Breckenridge Decl., Ex. 13); *see also* 42 U.S.C. § 1396r-8.  The states or their designated vendors process Medicaid claims for prescription drugs.  Invoices are issued.  Manufacturers pay the rebates to the States.  42 U.S.C. § 1396r-8(b).  Breckenridge Decl., Ex. 14 (Daniel Peterson Dep. at 70).

[12] Defendants have not specifically requested this information in Montana.

be gathered from several different sources.  In Nevada, for example, rebate data for certain years

is maintained on green bar charts kept in dozens of boxes or in other hard copy form.

Information for other years may be maintained electronically by the States' *outside* contractors

who administer the rebate programs.  In Montana, there is no electronic database to track

supplemental rebates.  Breckenridge Decl., Ex. 14 (Daniel Peterson Dep. at 72-73).

Defendants' offer to rely on their own rebate data if the States will stipulate to its

accuracy[13] is dispositive of their access to the information.  It is also  unreasonable as an

evidentiary proposition.  The States should not be forced to cut deals with respect to authenticity

and accuracy of evidence – sight unseen – to avoid the unnecessary burden of searching for and

producing data already in the possession of the defense group.  The States rejected the proposal.

To do otherwise, would have been irresponsible and potentially prejudicial to the States'

positions at trial.  The pre-trial process will give the parties adequate opportunity to review each

other's evidence and to enter into agreements regarding the authenticity and accuracy of the data

and to resolve any discrepancies.

For these reasons, the Court should deny defendants' motion to compel rebate data in its

entirety.

**D.      Any Court Order to Produce Pre-1991 Documents Should Apply to All Parties**

Defendants have moved for the second time to compel pre-1991 documents from the

States, while continuing to refuse to produce documents from the same time period themselves.[14]

The States' claims in this case relate to the years 1991 to the present.  The States responded to

defendants' first motion to compel by offering to search for and produce pre-1991 documents *if*

---

[13] Def. Mot. at 13, Ex. 17.

[14] Certain defendants who joined the motion have even refused to produce documents from the 1991–1997 time period.

defendants would agree to do the same.  Defendants have refused.  The States' offer stands, but it would be unfair to widen the relevant time period for the States and not the defendants.

In addition, for the States, the burden imposed by a search for documents more than 15 years old that pre-date the claims in the case outweighs the marginal utility demonstrated by defendants.  While the Court directed defendants to narrow the list of pre-1991 documents sought, Def. Mot., Ex. 3 at 42-43, and defendants offered to provide a list of more specific documents,[15] no list has been forthcoming.  At the same time, defendants' motion and examination of witnesses demonstrate that defendants have already obtained from other sources many of the documents for which they would likely ask the States to search.  Def. Mot. at 15, Exs. 21-22.

For these reasons, the motion as it relates to pre-1991 documents in the State's possession should be denied.  If the Court grants defendants' motion with respect to the pre-1991 documents, however, the State respectfully submits it should be applicable to all parties and that all defendants *should also be ordered to produce documents from pre-1991 to the present.*

Breckenridge Decl, Ex. 15

**E.   Defendants' Electronic Discovery Requests Are Unduly Burdensome and Should Not Be Allowed; If Allowed, the Costs Should Be Shifted to Defendants**

**1.    The status of electronic discovery**

Defendants move to compel the production of all electronic documents, including email, responsive to their initial document requests.  Defendants make absolutely no showing that relevant evidence will be produced as a result of any electronic production.  Moreover, defendants' motion minimizes significant details provided to them regarding the extreme

---

[15] *Id.*, Ex. 3 at 47, Ex. 21.  At the September 19, 2005 hearing on defendants' first motion to compel, GSK counsel Mr. Hobart stated to the Court:  "And we would be happy to provide, like, a very specific list of documents, the types of documents that we would be looking for to do that."  Def. Mot. Ex. 3 at 47.

burdens the requested electronic discovery imposes on the States.   With respect to electronic discovery, defendants have flatly refused to compromise.

> **a.      The States' objections**

The States have objected to electronic discovery from the outset on three bases:  (i) the initial requests were overbroad with respect to both the scope of the requests and the universe defendants expected the States to search;[16] (ii) the evidence would likely be cumulative of hard copy evidence; and (iii) the burdens (time and expense) of any production, including a review to remove any confidential information, in particular patient health information.  The objections are based on the professional opinions of the States' Information Technology ("IT") professionals. *See generally*, Declarations of Mel Rosenberg ("Rosenberg Decl.") and Randy Holm ("Holm Decl.").

> **b.      Defendants' electronic discovery requests impose cannot be performed by the existing state systems and impose undue burdens on the States**

The scope of defendants' electronic discovery requests are overwhelming.  When defendants introduced the subject  in November, the States asked defendants to submit tailored lists of keywords and employees for which defendants ***really*** wanted the States to search.  . Breckenridge Decl., ¶ 43.  This is a common approach to make electronic discovery more manageable.  Defendants provided the States the list of terms used in the Connecticut AWP action.  Def. Mot., Ex. 24 (12/14/2005 Litow Letter) and Ex. 25 (12/19/2005 Sipos Letter). Defendants also initially agreed to limit the individuals whose files the States would search.[17] Breckenridge Decl., ¶ 43.

---

[16] *See generally* Def. Mot. Ex. 1 at 7; Ex. 2 at 7 (overbroad definition of "You").

[17] It is not clear from the motion to compel if defendants have withdrawn this limitation.

The Connecticut list was extremely long.  Moreover, defendants were already aware of Nevada's limited ability to perform search terms because they had examined Mel Rosenberg about them in  a deposition earlier in the month.  Breckenridge Decl., Ex. 16 (Mel Rosenberg Dep. at 33-37, 60-63).

The States immediately conferred with their respective IT staffs regarding defendants' proposal.  The IT staff studied the proposal.  Holm Decl., ¶ 2; Rosenberg Decl., ¶ 2.  The IT staffs independently determined that the keyword searches would be virtually  impossible to perform using the technology available to the States.  Holm Decl. ¶¶ 10-14; Roseberg Decl. ¶¶ 11-15.  Moreover, additional resources would be required to perform any electronic discovery.

The burdens are based on the accessibility of the information and the scope of what is requested.  *See generally*, Holm Decl. and Rosenberg Decl.  The electronic information defendants seek is stored in two places:  (1) back-up tapes; and (2)  personal archives of state employees.  *See*, *e.g.*, Def. Mot. Ex. 26 at 2-3.  The burdens are numerous, and include:  (i) the impact of the effort on the States' Medicaid budgets and normal Medicaid operations; (ii) the overbroad nature of the proposed search terms; (iii) the incapability of existing state technology to conduct searches for the  key words submitted by defendants; and (iv) the number of mailboxes defendants expected the States to search because searches could only be conducted on one mailbox at a time.  Factors enhancing the burden include the small IT staffs in Montana and Nevada and the limited resources of both States' Medicaid agencies.  *Id*.  Finally, until the project began, there would be no way to assess the full extent of the time and money required to complete it.

This information was communicated to defendants in person during the week of December 19, 2006 and later by letter.  Breckenridge Decl., ¶ 46.  The letter was very specific as to the problems with the searches.  *Id.*  The letter pointed out that the burden concerns must be measures against the apparent unlikelihood that the efforts would yield relevant, non-cumulative information.  *Id.* at 2.

Because of this undue burden, the State suggested, the electronic discovery should not be had.  Without waiving any objections, however, the States-proposed shifting the costs to the defendants.  The States also suggested other terms and conditions to make the discovery more reasonable.  Holm Decl., ¶¶ 29-31; Rosenberg Decl., ¶¶ 28-31.

Defendants responded to the States' letter by this motion.

**2.      Any electronic discovery should be strictly limited and pursued only at defendants' expense**

Electronic discovery has introduced novel issues *and expenses* into discovery disputes. The unfettered electronic discovery at the responding party's expense that defendants contemplate here is far from an irrebuttable entitlement.  As with any discovery, courts retain the authority to protect parties from undue burden, including the time and expense of producing information.  Fed. R. Civ. P. 26(b)(2).  Courts routinely apply the discovery rules to electronic discovery to "balance the broad scope of discovery prescribed in Rule 26(b)(10) with the cost-consciousness of Rule 26(b(2)."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). The responding party "may invoke the district court's discretion under Rule 26(c) to grant orders protecting [it] from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery."  *Id.*  In fact, the solution to many electronic discovery issues has been to consider cost-shifting: forcing the requesting party, rather than the answering party, to bear the cost of discovery.  *See*, *e.g.*, *Zubulake v. UBS*

- 16 -

*Warburg*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003); *see also Thompson v. United States HUD*, 219 F.R.D. 93, 99 (D. Md. 2003); *Multitechnology Servs., L.P. v. Verizon*, 2004 U.S. Dist. Lexis 12957 (N.D. Tex. July 12, 2004); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002); *Byers v. Ill. State Police*, 2002 U.S. Dist. Lexis 9861 (N.D. Ill. June 3, 2002); *McPeek v. Ashcroft*, 202 F.R.D. 31 (D.D.C. 2001). This consideration is not required in every case, only where, as here, electronic discovery imposes an "undue burden or expense" on the responding party. *Zubulake*, 217 F.R.D. at 318. It is the only fair method to address the astronomical costs of defendants' discovery.

Accessibility is a threshold issue in evaluating which party should pay. For both Nevada and Montana, the electronic mail and documents are located in two sources: (i) back-up tapes; and (ii) personal archives of individuals. Accessing the back-up tapes will require restoration. The archives will require searching of individual archives on individuals hard-drives. These formats make the information less accessible.

A multi-factor test from the Southern District of New York has become the standard for determining whether the costs of electronic discovery should shift from the producing party to the requesting party. *Rowe Entm't v. William Morris Agency, Inc.*, 2002 U.S. Dist. Lexis 8308 (S.D.N.Y. May 8, 2002); *Zubulake v. UBS Warburg*, 217 F.R.D. 309 (S.D.N.Y. 2003).

The seven factors include: (1) The extent to which the request is specifically tailored to discovery relevant information; (2) The availability of such information from other sources; (3) The total cost of production, compared to the amount in controversy; (4) The total cost of production, compared to the resources available to each party; (5) The relative ability of each party to control costs and its incentive to do so; (6) The importance of the issues at stake in the

litigation; and (7) The relative benefits to the parties of obtaining the information. *Zubulake*, 217

F.R.D. at 322.  The objective of the analysis is to determine whether there is an undue burden.

Here, the application of the factors to the electronic discovery sought and the difficulties

faced by the States to produce it, weighs in favor of shifting the costs to the defendants.  The

*Zubulake* court weighted the factors in descending order of importance and singled out the first

two factors as the most important.[18]  As described above, defendants' pending requests – both

the requests for production and the keyword search list,  are extremely broad and not tailored to

discover relevant information.  The keywords are recycled from another case; defendants did not

even take the time to develop keywords which would incorporate the discovery they have

developed to date in these cases.  Apparently defendants do not agree that they have any duty to

tailor their requests as they write, they provided a list of terms "though under no obligation to do

so."  Def. Mot. at 16.

As to the second factor, the information that may be obtained electronically is also likely

available from other sources.  In Nevada, IT manager Mel Rosenberg testified that the document

retention policy is a "paper document protection policy" in which "if it's something we need to

retain, we need to drop it to paper and then put it in the State archive, because the archive only

handles paper document."  Breckenridge Decl., Ex. 16 (Mel Rosenberg Dep. at 24-25, 30).

The cost factors also weigh in favor of shifting the cost to defendants, as considered by

factor four.  Although neither state has the ability to assess how much the production will cost

until the production begins, the IT managers have documented the expected burdens in their

affidavits.  Rosenberg Decl., ¶¶ 16-26; Holm Decl., ¶¶ 15-22.  Defendants clearly have a much

better ability to bear the costs of such a production.  When the responding party is a

---

[18] The *Zubulake* court considered factors 6 and 7 less important; therefore the States do not address them fully. The States assume that defendants would agree that the litigation is "important" (factor 6).  And the production provides no benefit to the States, who did not intend to use electronic documents in their case.

governmental entity, unique financial burden concerns arise.  It is, for instance, undisputed that the State Medicaid staffs, operate on lean budgets as they try to serve the beneficiary populations in their states.  *Id.*

In *McPeek v Ashcroft*, 202 F.R.D. 31 (D. D.C. 2001), the court recognized the unique burdens electronic discovery may place on governmental entities, whose budgets are chronically limited and also recognized the related burden on taxpayers who fund the programs.

The fifth factor, the incentive and ability of a party to control costs is particularly compelling here where, without cost-shifting, defendants have demonstrated no inclination to minimize the substantial burdens on the state.  In particular, defendants will have no incentive to narrow their requests, limit the personnel whose files are searched, withdraw their requests if the electronic yield relative to relevance is low or take other measures to if they are not ordered to bear the cost suggested by factor 5.  Forcing them to "buy" what they seek will minimize the financial burden on the States and also encourage defendants to be reasonable about the electronic evidence and its role in the case.

For all of these reasons, the cost of any electronic discovery should be shifted to defendants.

### 3.     Other terms and conditions to electronic discovery

In addition to cost-shifting, the States propose additional terms and conditions on any electronic discovery ordered by the Court:  (1) a clarification of the key terms; the defendants should be ordered to narrow the list and work with the States to develop keyword searches that can reasonably be conducted on the existing state systems; (2) sampling of information to gauge the likelihood that relevant information will be obtained; and (3) defendants' should be ordered

As a practical matter, clarification of key terms will be required regardless of the approach taken to cost-shifting.  The States simply cannot execute searches using the key word terms as currently crafted.

Courts routinely use sampling by permitting parties to review a small portion, or "test run", of electronic information, rather than a complete production, to determine relevance before moving forward with further electronic discovery.  *See Thompson*, 219 F.R.D. at 97; *Zubulake*, 217 F.R.D. at 324; *McPeek*, 202 F.R.D. at 34; *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573 (N.D. Ill. 2004).

Combining sampling with cost-shifting has been recognized as a particularly effective approach.  The requesting party can sample an agreed upon selection of electronic discovery before determining whether it is worth it to pay for more.  The sampling can "inform" the cost-shifting analysis by providing tangible evidence of what backup tapes may have to offer and the time and cost required to restore the information.  *Zubulake*, 217 F.R.D. at 324.

**F.     Agreed Discovery Is Not an Appropriate Subject for a Motion to Compel**

The final category which defendants move to compel is "discovery which the States have agreed to produce."  Def. Mot. at 18-20.  This issue is not ripe for a ruling by the Court because the State is in the process of producing the itemized information.  Since the motion was filed, Nevada has addressed nearly every request listed in the motion by producing the information or confirming that it is not available.  Def. Mot. at 19; Breckenridge Decl., Ex. 12.  A similar effort is underway in Montana.  Breckenridge Decl., ¶ 59.  Since the entry of CMO 23, Nevada and Montana have cooperated with defendants in the scheduling of agreed-upon depositions.  The next series of depositions will begin on February 15, 2006.  Breckenridge Decl., ¶ 60.

For of all of these reasons, defendants' motion to compel with respect to agreed-upon documents should be withdrawn.

- 20 -

001534-13 88016 V1

### III.   CONCLUSION

For the foregoing reasons, plaintiffs request that the Court deny the motion in its entirety.

If the order is granted as to any part, then the States respectfully propose the following terms and

conditions on specific categories of discovery: (i) electronic discovery:  the keywords for any

such discovery should be customized for the States' existing systems by defendants and costs for

that discovery should be borne by the defendants; and (ii) pre-1991 discovery: all parties shall be

ordered to produce documents for the same period;


By____/s/ Steve W. Berman_____          DATED:  February 14, 2006.
    Steve W. Berman
    Sean R. Matt
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Thomas M. Sobol
    Edward Notargiacomo
    HAGENS BERMAN SOBOL SHAPIRO LLP
    225 Franklin Street, 26th Floor
    Boston, MA  02110
    Telephone: (617) 482-3700
    Facsimile: (617) 482-3003

    COUNSEL FOR PLAINTIFFS
    STATE OF MONTANA AND
    STATE OF NEVADA

    George J. Chanos
    Attorney General of the State of Nevada
    L. Timothy Terry
    Deputy Attorney General
    100 N. Carson Street
    Carson City, Nevada 89701-4714

Mike McGrath
Attorney General of Montana
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

Joseph P. Mazurek
CROWLEY, HAUGHEY, HANSON,
  TOOLE & DIETRICH PLLP
100 North Park Avenue, Suite 300
P.O. Box 797
Helena, MT  59601-6263
(406) 449-4165

COUNSEL FOR PLAINTIFF
STATE OF MONTANA


Brian Sandoval
Attorney General of the State of Nevada
L. Timothy Terry
Assistant Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

001534-13  88016 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **OPPOSITION OF THE STATES OF NEVADA AND MONTANA TO DEFENDANTS SECOND MOTION TO COMPEL DISCOVERY** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 14, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By_____**/s/ Steve W. Berman**_____
    Steve W. Berman
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292