# UNITED STATES DISTRICT·COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION,

THIS DOCUMENT RELATES TO:

*State of Nevada v. Abbott Labs., Inc. et al.,*
Case No. CV02-00260

*State of Nevada v. American Home Products, et al.,* CA No. 02-CV-12086-PBS

*State of Montana v. Abbott Labs., Inc., et al.* D. Mont. Cause No. CV-02-09-H-DWM

MDL No. 1456

CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris

## DECLARATION OF JENIPHR BRECKENRIDGE
## IN SUPPORT OF OPPOSITION OF THE STATES OF NEVADA AND MONTANA TO
## DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY

I, Jeniphr Breckenridge, declare:

1.      I am a partner in the law firm of Hagens Berman Sobol Shapiro LLP and I am one of the lawyers representing the States of Nevada and Montana in these cases.  I make this declaration in support of the States opposition to defendants' second motion to compel discovery.

2.      This declaration sets forth certain supplemental facts in support of the States' opposition to defendants' second motion to compel.  This declaration also, beginning in § G, attaches true and accurate copies of documents in support of the States' positions.

-1-

A.    **LACK OF KNOWLEDGE OF GOVERNMENTAL AGENCIES OTHER THAN MEDICAID**

3.    Between the two cases, defendants have noticed the depositions of up to *nineteen witnesses from agencies that have no formal or informal relationship or relevancy to the State Medicaid programs*. This includes both 30(b)(6) testimony from the agencies themselves and the depositions of individual witnesses.

4.    In Nevada the agencies include: the Nevada Public Employee Benefits Fund, Nevada's Bureau of Prisons,[1] Nevada's Division of Child and Family Services, Nevada's Division of Mental Health and Developmental Services, Nevada's Health Division, and Nevada's Senior Rx Program. The individuals include Dr. Emmanuel Ebo, Dr. Ted D'Amico, Patty Merrifield, Alex Haartz, Richard Whittley, and Laurie Olson.

5.    In Montana, the agencies include Montana's Department of Corrections, Montana's State Workers' Compensation Fund, Montana's Addictive & Mental Disorders Division, Montana's Children's Health Insurance Program Special Health Bureau, and Montana's End-Stage Renal Disease Program.

6.    At the time defendants first proposed the depositions of individuals within certain state division unrelated to Medicaid, in December, 2005, the State of Nevada conducted its own inquiry into the potential knowledge of the non-Medicaid agencies. After the motion to compel was filed, the State followed up with all but one of the agencies again.

7.    I am the lawyer for the State of Nevada who conducted this investigation. I conducted the investigation the weeks of December 12, 2005 and February 6, 2006.

8.    My investigation confirmed the following targeted non-Medicaid state agencies: (i) the non-Medicaid agencies do *not* have knowledge relevant to the claims and defenses of any party; (ii) *do not* have any knowledge of prescription drug pricing topics related to this lawsuit; the non-Medicaid agencies; (iii) *do not* have a formal relationship with the State Medicaid

---

[1] Nevada does not have a "Bureau of Prisons." Nevada assumes defendants mean the Department of Corrections.

agencies; (iv) the non-Medicaid agencies do not – and have not – communicated with the State Medicaid agencies regarding none of the agencies has significant responsive information; and (v) do not have – and have not had – any communication.

9.    More specifically, my investigation covered the following non-Medicaid entities and witnesses and developed the information detailed below.

10.    **Dr. Emmanuel Ebo, Division of Mental Health and Developmental Services ("DMHDS").** I spoke to Dr. Ebo in December 2005. Dr. Ebo confirmed that DMHDS: (i) purchases drugs; (ii) neither Dr. Ebo nor the DMHDS have any direct involvement with the purchase of those prescription drugs; (iii) neither Dr. Ebo nor DMHDS have any knowledge of prescription drug pricing topics related to this lawsuit; (iv) neither Dr. Ebo nor DMHDS have any formal or informal relationship with Medicaid; and (v) neither has had any communication with Medicaid employees regarding "their knowledge about AWP and drug pricing."

11.    **Ted D'Amico, D.O., Medical Director, Department of Corrections.** Defendants noticed both the depositions of Dr. D'Amico, Medical Director, and the Department of Corrections.[2]

12.    In telephone interviews with me on December 16, 2005 and February 6, 2006, Karen Walsh, Health Information Director, for the Department of Corrections, confirmed the following regarding the knowledge of Dr. D'Amico and the Department of Corrections: (i) the Department of Corrections purchases drugs for the prison population; (ii) these purchases are made through a group purchasing contract; (iii) neither Dr. D'Amico nor the Department of Corrections have any direct involvement with the purchase of prescription drugs; (iv) neither Dr. D'Amico nor the Department of Corrections have any knowledge of prescription drug pricing topics related to this lawsuit; (v) neither Dr. D'Amico nor the Department of Corrections have any formal or informal relationship with Medicaid; and (vi) neither has had any

---

[2] Defendants refer the "Bureau of Prisons," Def . Mot. at 4 n.2 in Nevada.  Nevada assumes defendants mean the Department of Corrections.

-3-

communication with Medicaid employees regarding "their knowledge about AWP and drug pricing."

13.   **Alex Haartz, Administrator, Health Division and Richard Whitley, Deputy Administrator, Health Division.**   Defendants noticed the depositions of Alex Haartz, Administrator of the Health Division and Richard Whitley, Deputy Administrator of the Health Division and requested 30(b)(6) testimony on behalf of the division.

14.   In telephone interviews held in December, 2005 with Mr. Whitley and on February 8, 2006 with Mr. Haartz, the administrators independently confirmed the following:  (i) the Health Division is the state agency for public health; its primary responsibilities deal with prevention and education; (ii) the Health Division has just one program that relates to prescription drugs in anyway; that program is the AIDS Drug Assistance program ("ADA"); (iii) ADA purchases pharmaceutical products; (iv) neither Haartz nor Whitley have specific information regarding the drug pricing and reimbursement for ADA; (v) this is true for Whitley even though he worked for the program at one time; (vi) neither Haartz, Whitley nor the Health Division Rx have any knowledge of prescription drug pricing topics related to this lawsuit; (vii) neither Haartz, Whitley nor the Health Division  have any formal or informal relationship with Medicaid; and (viii) neither Haartz, Whitley nor the Health Division has had any communication with Medicaid employees regarding "their knowledge about AWP and drug pricing."

15.   **Patty Merrifield and Division of Child and Family Services.**   Defendants noted both the depositions of Patty Merrifield, Deputy Administrator of the Division of Child and Family Services ("DCFS") and DCFS itself.

16.   Nevada did not locate Ms. Merrifield until February, 2006 because of a previous misspelling of her name by defendants and Nevada.

17.   On February 8, 2006, Ms. Merrifield confirmed that (i) she has been the Deputy Administrator of DCFS for exactly one year; (ii) DCFS is the major child-serving health care agency; (iii) neither she nor the agency have any direct involvement with prescription drugs;

-4-

(iv) DCFS's sole prescription drug benefit is provided through its one in-patient psychiatric hospital, Desert Willow; any drug prescribed are filled at that facility are provided by the Mental Health Disability Services ("MHDS") on the same campus; (v) MHDS bills DCFS back for the prescriptions, but neither DCFS nor Merrifield have absolutely no knowledge of rates or methodologies; (vi) Ms. Merrifield has worked for the State of Nevada for 15 years and has never had any involvement in drug reimbursement or prescription drugs; and (vii) Neither Ms. Merrifield nor DCFS communicate with Nevada Medicaid formally or informally on the topic of prescription drugs, drug reimbursement, AWP or any topics related to this lawsuit.

18.    **Laurie Olson, Program Manager, State Pharmacy Assistance Program, Health Division.** Laurie Olson is the Program Manager, State Pharmacy Assistance Program, Health Division. She has held this position since August 1, 2005. Ms. Olson is responsible for administering the Senior Rx, a prescription drug program for seniors, and Nevada Rx pharmacy programs. Defendants have noticed both the deposition of Ms. Olson individually and the Fed. R. Civ. P. 30(b)(6) deposition of Senior Rx.

19.    In telephone interviews conducted in December, 2005 and again in February, 2006, Ms. Olson confirmed the following regarding her knowledge and the knowledge of Senior Rx: (i) Ms. Olson has held her position since August 1, 2005; (ii) Senior Rx is a prescription drug program for seniors; (iii) Ms. Olson's responsibilities include managing eligibility and enrollment for Senior Rx; (iv) Senior Rx provides pharmacy benefits to seniors; (v) neither Olson nor Senior Rx are involved in the prescription drug reimbursements in anyway; (vi) the prescription drug reimbursements are handled by Pharmacy Benefits Manager Catalyst Rx; (vii) neither Olson nor Senior Rx have any knowledge of prescription drug pricing topics related to this lawsuit; (viii) neither Olson nor Senior Rx have any formal or informal relationship with Medicaid; and (ix) neither has had any communication with Medicaid employees regarding "their knowledge about AWP and drug pricing."

-5-

20.   **Woody Thorne, Executive Officer, Public Employee Benefits Program.**

Woody Thorne is the Executive Officer of the Public Employees Benefits Program ("PEB").

Defendants have noticed both the deposition of Mr. Thorne and the Fed. R. Civ. P. 30(b)(6) of

the PEB.  In a telephone interview on February 9, 2006, Mr. Thorne confirmed the following

regarding his knowledge and PEB's knowledge regarding the issues defendants intend to depose

them on: (i) Thorne has been the Executive Officer of PEB since 2001; (ii) PEB is the health care

program for Nevada's public employees and retirees, www.pebp.state.nv.us; (iii) PEB

reimburses employees for prescription drugs; (iv) neither PEB nor Thorne are involved in the

prescription drug reimbursements in anyway; (v) the prescription drug reimbursements have

been handled by Pharmacy Benefits Manager Catalyst Rx since 2002; (vi) prior to that time

another PBM handled pharmacy reimbursement; (vii) neither PEB nor Thorne have any

knowledge of prescription drug pricing topics related to this lawsuit; and (viii) neither PEB nor

Thorne have any formal or informal relationship with Medicaid.  Neither has had any

communication with Medicaid employees regarding "their knowledge about AWP and drug

pricing."

21.   This information was provided to defendants in December along with more

specific information regarding the limited scope of any drug programs for the targeted non-

Medicaid agencies.

22.   I also confirmed with each of the agencies that searching for and producing

documents "sufficient to show" all drugs purchased by an entity as well as prices and other data

for a fifteen year period would impose a significant burden on agencies that have had virtually

*no* relationship or communications with state Medicaid and for which the States do not claim

damages.

23.   I also confirmed that such a search would not be limited to files and personnel

within the State agency, but would also involve outside vendors who manage the non-Medicaid

pharmacy programs in question.

**B.    LACK OF KNOWLEDGE OF GOVERNOR'S OFFICE**

24.    Defendants have noticed the deposition of two former chiefs of staff of the governor of Nevada: Marybel Batcher and Michael Hillerby. Mr. Hillerby was Ms. Batcher's successor and served Governor Kenny Guinn through 2005.

25.    Nevada independently confirmed that the governor's office witnesses or their offices would have responsive information. I am the lawyer who conducted the investigation. The following information is based on my telephone interviews with Marybel Batcher in December, 2005 and with Michael Hillerby in February, 2006 and with Keith Munro, counsel for the governor's office and the governor's current chief of staff.

26.    Ms. Batcher and Mr. Hillerby each confirmed that they were aware of no responsive information in governor's office files regarding prescription drugs, drug reimbursement, AWP or other subject matter related to this lawsuit.

27.    Mr. Munro confirmed their representations regarding the files of the governors' office.

28.    Ms. Batcher and Mr. Hillerby each independently confirmed that they had specific recollections of meetings with or presentations by Chuck Duarte, Michael Willden or other Medicaid personnel.

29.    Mr. Hillerby advised that the principal work of the governor's office as related to Medicaid in any year would be the budget and the Medicaid budget would be one of dozens of budgets considered during any biennium. Mr. Hillerby also confirmed that budgets are available to the public.

30.    Ms. Batcher and Mr. Hillerby independently suggested that the best source of information provided by Medicaid to the governor or the governor's office would be Medicaid files and Medicaid personnel.

-7-

31.     Ms. Batcher independently raised the issue of the deliberative process privilege. Although she cannot recall any general or specific communications, she is concerned that certain information could be covered by the deliberative process privilege.

## C.     LEGISLATIVE COUNSEL BUREAU: LACK OF KNOWLEDGE, BURDEN AND PUBLIC AVAILABILITY OF INFORMATION

32.     Defendants have noticed the depositions of two Legislative Counsel Bureau ("LCB") staff people, Steve Abba and Marsheila Lyons.

33.     The Legislative Counsel Bureau is a non-partisan bureau whose principal responsibility it is to provide research and background information to legislators. www.leg.state.nv.us/lcb/lcb.cfm

34.     Steve Abba is the principal deputy analyst for the Assembly Ways and Means Committee.

35.     Marsheila Lyons is a Senior Research Analyst.

36.     At the time defendants first proposed these depositions, Nevada inquired as to whether they would have potentially relevant information. I am the lawyer who conducted the inquiry. I did so in interviews with Mr. Abba and Ms. Lyons conducted in December, 2005 and February, 2006 and through my firm's own research of information publicly available on the Internet.

37.     My inquiry confirmed that the LCB would not have responsive information in its files. According to LCB staff, it is highly unlikely that either they or their files will contain information related to drugs, drug pricing or reimbursement, AWP or even communications within Medicaid staff. State Medicaid personnel would be the more appropriate source of information.

38.     This information was initially communicated to defendants in December, 2005.

39.     LCB staff also informed me that the information they produce, if retained, is provided to the LCB research library and is available to the public via the library in Carson City or on the Internet at www.leg.state.nv.us/lcb/research/library/index.cfm.

40.     This same information regarding the public availability of LCB information may be readily determined with a simple search using the Google search engine.

**D.     THE BURDEN OF ELECTRONIC DISCOVERY ON THE STATES**

41.     Defendants raised the issue of electronic discovery for the first time in November, 2005. The States immediately objected to the burden of defendants' electronic discovery proposal.

42.     Initially defendants agreed to limit the individuals whose files that State would search.

43.     As part of their objections, the States requested that defendants provide keywords for searching. Defendants responded with a several-paged document containing a single-spaced list of search terms purportedly used successfully in the Connecticut AWP litigation.

44.     At the time defendants submitted the Connecticut keyword searches for use in these cases, defendants were already aware of the inability of Nevada's e-mail system to search for keywords, because defendants had taken the deposition of Mel Rosenberg, Information Systems Manager, on November 16, 2005 and he had testified at length regarding those limitations. Defendants have insisted on the use of these keywords nonetheless.

45.     The States conferred with their IT staff and they studied defendants' proposal – the keyword searches requested and the breadth of what was being requested. The IT staffs independently determined that keyword searches would be difficult to execute using the States existing technology.

46.     This was communicated to defense counsel verbally during a break in depositions at the Attorney General's office in Carson City, Nevada the week of December 19, 2005,

including the States' suggestion that the cost of any electronic production be shifted to defendants.

47.     On that same day, I consulted with counsel for Connecticut in the Connecticut AWP action. I did this because if what defendants represented was true and Connecticut could perform the searches so easily, it would seem unusual the Nevada and Montana could not. I learned about the differences in the systems and capabilities of Connecticut compared to the Nevada and Montana systems.

48.     I also learned that Connecticut considered the process extremely burdensome despite the ability of their system to perform the searches.

49.     The IT staffs continued their assessment of the requested searches and came up with more comprehensive explanations of why the searches were difficult, if not impossible.

50.     These explanations were provided to defendants in a letter drafted by me in conjunction with Randy Holm, Bureau Chief, Computing Technology Services Bureau, in Montana, and Mel Rosenberg, in Nevada.

51.     I have worked closely and extensively with Mel Rosenberg and Randy Holm in Montana to evaluate the ability of each State to conduct the electronic discovery sought by defendants and what the burden on each State might be. The burdens, as described by these State employees in the affidavits they submit are very real.

52.     I have also conferred with defendants regarding the same matter. In particular, I have met in person with Jason Litow and Ron Dove of Covington and Burling. I communicated the burden to them. I have proposed tailoring the keyword searches. I have proposed cost-shifting. The defendant drug manufacturers have refused to compromise.

E.     **PUBLICLY AVAILABLE INFORMATION**

53.     Another factor relevant to discovery in this case, including the information defendants seek to compel through their motion, is the numerous public sources from which defendants could obtain information, but have not. The public sources include State websites,

-10-

libraries and archives. These sources contain background information and other material that could expedite discovery. Defendants refused to conduct their own due diligence regarding the States' Medicaid and other governmental agencies by accessing this information.

54.     Some of the sources include the Legislative Counsel Bureau library, archives; the Nevada legislative libraries, the budget office and various websites. All of these are easily ascertained by the public, including defendants, using a simple Google search.

55.     The States have also informed defendants about these sources. In Nevada, witnesses testified about the availability and location of these sources where applicable.

56.     To the extent the information defendants now seek to compel is *irrelevant* to the claims and defenses in this case, it would be appropriate to force them to bear the burden to research them through these public sources.

## F.     STATUS OF AGREED-UPON DISCOVERY

57.     The States have been diligent in their discovery efforts. Delays in the States' discovery have been inevitable given these factors: (i) defendants' confusion over what they were seeking; (ii) the compressed period the States had to work within given defendants' substantial delays in starting discovery; (iii) the lean Medicaid staffs in each of the States; and, later in the year (iv) the implementation of Medicare Part D which diverted the attention of the States' Medicaid staffs. Aside from the five disputed categories of discovery, the States and defendants have reached agreement with respect to other information sought. The States are working cooperatively with defendants to complete document discovery by February 28, 2006 and other fact discovery, including depositions, by March 31, 2006.

58.     In Nevada, for example, the States have worked to confirm the existence of all specific documents or information identified in defendants' motion to compel, Def. Mot. at 19, and to produce information if available.

59.     Montana is undertaking a similar effort.

-11-

60.     Counsel of the States and defendants have cooperated in the scheduling of depositions. Fact depositions will begin in Montana on February 15, 2006. Fact depositions will resume in Nevada on February 23, 2006.

## G.   DOCUMENTS SUBMITTED IN SUPPORT OF THE STATES' OPPOSITION TO DEFENDANTS' SECOND MOTION TO COMPEL

61.     Attached hereto as Exhibit 1 is a true and correct copy of an unsigned Stipulation between Defendants and the State of Nevada. The Stipulation was agreed to but never signed or filed with the Court.

62.     Attached hereto as Exhibit 2 is a true and correct copy of letter from Kathleen O'Sullivan to Jeniphr Breckenridge dated December 16, 2006.

63.     Attached hereto as Exhibit 3 is a true and correct copy of the Deposition of Charles Duarte taken in the Nevada case on November 15 and 16, 2005. (Pertinent pages only.)

64.     Attached hereto as Exhibit 4 is a true and correct copy of the Deposition of April Townely taken in the Nevada case on January 27, 2006. (Pertinent pages only.)

65.     Attached hereto as Exhibit 5 is a true and correct copy of the Deposition of Christopher Thompson taken in the Nevada case on January 6, 2006. (Pertinent pages only.)

66.     Attached hereto as Exhibit 6 is a true and correct copy of defendants' Second Notice of Rule 30(b)(6) Deposition to Plaintiff the State of Nevada dated January 31, 2006.

67.     Attached hereto as Exhibit 7 is a true and correct copy of defendants' Second Notice of Rule 30(b)(6) Deposition to the State of Montana dated January 31, 2006.

68.     Attached hereto as Exhibit 8 is a true and correct copy of the Deposition of Jeff Buska taken in the Montana case on October 19, 2005. (Pertinent pages only.)

69.     Attached hereto as Exhibit 9 is a true and correct copy of an organizational chart of the Nevada Legislature for 2005.

70.     Attached hereto as Exhibit 10 is a true and correct copy of a print-out from the Legislative Counsel Bureau website.

71.     Attached hereto as Exhibit 11 is a true and correct copy of a print-out from the website of the Nevada Legislature with regard to their Research Library and the categories contained there.

72.     Attached hereto as Exhibit 12 is a true and correct copy of a group of e-mails from Jeniphr Breckenridge to Jason Litow.

73.     Attached hereto as Exhibit 13 is a true and correct copy of a print-out from the website of Centers for Medicaid & Medicaid Services regarding the Medicaid Drug Rebate Program.

74.     Attached hereto as Exhibit 14 is a true and correct copy of the Deposition of Daniel Wade Peterson taken in the Montana case on December 15, 2005.  (Pertinent pages only.)

75.     Attached hereto as Exhibit 15 is a true and correct copy of a letter from Kathleen O'Sullivan to Jeniphr Breckenridge dated December 1, 2005.

76.     Attached hereto as Exhibit 16 is a true and correct copy of the Deposition of Mel Rosenberg taken in the Nevada case on November 16, 2005.  (Pertinent pages only.)

I swear under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

Jeniphr Breckenridge (WSBA 21410)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101

February 14, 2006, Seattle, Washington
Date and Place of Execution

-13-

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF JENIPHR BRECKENRIDGE IN SUPPORT OF OPPOSITION OF THE STATES OF NEVADA AND MONTANA TO DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 14, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By_____/s/ Steve W. Berman_____
    Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

-14-