UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | Judge Patti B. Saris |
| *State of Nevada v. Abbott Labs., Inc. et al.,*      Case No. CV-02-00260 (Nevada I), | |
| *State of Nevada v. American Home Products, et al.,*      CA NO. 02-CV-12086-PBS (Nevada II), and | |
| *State of Montana v. Abbott Labs., Inc., et al.,*      CA No. 02-CV-12084-PBS | |

## DECLARATION OF RANDY HOLM

I, Randy Holm, under the penalty of perjury, hereby declare as follows:

1.  I am the Bureau Chief, Computing Technology Services Bureau, Department of Administration, Information Technology Services Division for the State of Montana. I have held this position for 2 years. In this position, I am responsible for providing centralized computing services to state agencies and other government units. This includes management of a 70-person bureau that provides services on all computing platforms (mainframe, mid-tier, pc) covering a wide variety of applications including electronic mail. I have also participated in the production of electronic information on the part of the State of Montana in connection with other litigation. Prior to this position, I managed the End User Systems Support section within this bureau for 14 years. This section had direct responsibility for support and operation of the State's electronic mail system.

2.  In my capacity as Bureau Chief, I have been working since November, 2005 with State lawyers and IT professionals to evaluate the feasibility of the electronic mail and electronic

discovery requests I understand defendants have submitted to the State in this case. In the course of this process, I have seen and analyzed the December 19, 2005 letter from Charles Sipos with keywords and I have also seen the January 26, 2006 letter written by counsel for Nevada and Montana. I reviewed the January 26, 2006 letter before it was finalized. I contributed substantially to the letter. As it relates to Montana, the letter is accurate and reflects my professional opinion.

3. This declaration provides background information regarding the technology available to the State of Montana and, more specifically, the Department of Health and Human Services and, even more specifically, the Department of Public Health and Human Services or Montana Medicaid.

4. This declaration also represents my professional opinion of the feasibility, time and expense that would be entailed in conducting the searches the defendant drug manufacturers have requested. The information in this declaration was originally set forth in a series of e-mails and telephone calls between me and counsel for the State of Montana.

A. **THE USE AND AVAILABILITY OF BACK-UP TAPES AND OTHER ELECTRONIC INFORMATION**

5. The electronic discovery plan proposed by defendants contemplates production material from multiple sources.

6. One source is backup tapes. In Montana, the States' backup is based on a disaster recovery strategy rather than an archival or retention strategy. The backup cycle is 30 days. This means that the backup capability of the State is limited to restoring the system to a certain point of time – as of now, that date would be December 1, 2005. In order to access this information, the tapes for a given date would have to be restored.

7. The retrieval and restoration of backup tapes is a burdensome process. In order to access backup tapes, we first need to retrieve the tapes from our off-site storage facility. Once the tapes are retrieved, they must be restored. We cannot simply restore the mailboxes of the individuals we are interested in; the entire server must be restored. In this case we are restoring mailboxes for approximately 2000 users, even if we are only interested in accessing the mailboxes for 8 to 10 users. Because of the size of the restoration, we need to use a server separate from our existing server to conduct the restoration. The restoration process itself is subject to various problems, including problems with the media.

8. A second source is electronic mail. The State of Montana uses Microsoft Exchange and Microsoft Outlook for its electronic e-mail. This program has been used by the State since January 1999. Prior to that time, the State used ZIP!Mail and ZIP!Office from Attachmate Corporation. Electronic mail is located on servers known as Exchange servers and accessed through the Outlook client located on a user's pc. Limitations of the Outlook systems will be discussed below.

9. In addition, each employee has the capacity to create archived files. There is, however, no requirement that they do so. The contents of the employees' archived files will depend on the individual employee's file handling practices. Employees may have no archived files, or they may have multiple archived files. The availability of archived files may depend on where they are stored. Those stored on a network drive are backed up to tape and tapes are kept four weeks according to DPHHS IT staff, while those stored on a local drive are not backed up.

**B. DIFFICULTIES WITH THE KEY WORD SEARCHES REQUESTED BY DEFENDANTS**

10. I have studied the keyword searches proposed by defendants. Based on my experience, the list is quite extensive in terms of both the number of searches and the effort

required. It is my understanding that the list was developed for use in another state, Connecticut, which does not use Microsoft Outlook for electronic mail. In Montana, there are numerous problems with performing the searches for the keywords.

11. Montana uses Microsoft Outlook for electronic mail. The search capacity for Microsoft Outlook and Microsoft Exchange servers is very limited and time-consuming.

12. Microsoft Outlook does not have the capacity to handle any of the following: (a) wild card delimiters in the format used in the keyword search list currently proposed; (b) searches for "within # words"; (c) complex Boolean searches; (d) quotation marks within the search term – unless the search is intended to pick up only those documents containing the term within quotation marks; (e) combined searches for lengthy terms (Microsoft Outlook search is limited to 255 characters); or (f) searching attached documents. *All* of these would be required to conduct the keyword searches as drafted by the defendants in their request list.

13. Further, the Microsoft Outlook searches can be conducted on no more than one mailbox at a time.

14. We have discussed the potential of purchasing a separate search tool to perform the searches. Even aside from the expense of such a product, purchasing a separate search tool is not as easy as it sounds. Even if an alternative search product that the State would have to install could be located, it would have to undergo the same test-development-production implementation cycle that we put all software through. Therefore, this would likely introduce a significant time factor and cost for the IT staff. This would require additional resources. This could be mitigated somewhat by only installing it in an isolated test environment, but that also may require servers or other IT resources that the State doesn't already have in place.

## C. ESTIMATES OF THE TIME AND EXPENSE INVOLVED WITH THE PROPOSED SEARCHES

15. Counsel for the State of Montana asked me to estimate the cost of conducting the costs to search for and produce the electronic information sought. There is no way to know for sure until the first search is executed. In addition, the fact that the keyword searches as currently drafted are not searchable for the State of Montana makes estimation difficult, if not impossible. Nonetheless, I have tried to come up with estimates that might be applied to the data.

16. The financial costs fall into three categories: (i) the costs of restoration of tapes and mailboxes; (ii) the cost of purchasing and storing tapes; and (iii) the costs of searches.

### 1. The costs of restoration

17. These mailboxes are all located on 1 server. Therefore, if we need to restore mailboxes from a previous date, it would be 1 restoration for each date requested. My staff has estimated that it will take 5 hours per each date to restore (this would include the time to locate backup tapes, restore the server from the backup tapes, and extract the specified mailboxes). Therefore, a cost estimate to recover mailboxes would be 5 hrs x $60 per hour = $300 for each day we need to restore. The estimate of 5 hours will not fit every restoration. For comparison purposes, I was involved in another case where electronic mail was restored and it took 20 hours to restore 1 server for 2 different dates (in other words: much higher than the average I quote here).

### 2. The costs of purchasing and storing tapes

18. We are using 6 tapes per day (3 onsite, 3 archived in vault) to backup the server on which these mailboxes are located. Tapes cost approximately $12 if we purchase used tapes, $32 if new. We've generally purchased from the used market so that would be 6 x $12 = $72 per day in tape purchase costs. As an example of what this might cost over time, if we hold tapes

each day for the next 6 months we would need additional tapes for 182 days x 6 tapes per day x $12 per tape = $13,104 (for used tapes; new tape cost would be nearly $35,000). Although I do not currently have a published rate for tape storage, a number of years ago we did and it was $1 per month per tape. Given the potential number of tapes for this case, we will require a tape storage charge of $1 per month per tape. This cost will grow continuously as time progresses. At 6 months there will be 1,092 tapes so that would be a $1,092 per month tape storage charge at that point in time.

### 3. The costs of conducting the searches and follow up review

19.     I cannot provide any specific estimates of how long the searches will take because that is dependent on how expansive this is and how much mail is in each mailbox. However, for comparison purposes, the searches we did for another case took 2 dedicated IT staff a total of 10 hours to search 2 different dates for 8 different mailboxes for 25 search terms. The proposed searches for this case are magnitudes of order greater than this (~20 times the number of search terms that will also need to be broken into separate searches to fit within Outlook limitations). In addition, the previously stated case did not attempt to search for archived files. Searching for archived files is much more labor intensive. Mailboxes on the Exchange server are in a known location, but archived files may be located anywhere (or even multiple places) on the network, on the local pc hard drive, on a CD-ROM, etc.

20.     After the State figures out how to conduct the searches, the State must search through the information located. The following steps will be necessary for each responsive e-mail:

> (1)   Print the actual e-mail;
>
> (2)   open any attachments;
>
> (3)   print any attachments;

      (4)    collate them; and

      (5)    conduct a review for privileged and confidential information.

21. The fifth step is particularly important because of the likelihood that many of the e-mails will contain confidential patient health information irrelevant to this lawsuit which the State is responsible for keeping confidential under both federal and state law.

22. The State does not have the manpower to conduct the searches or review. Additional staff would have to be hired or contracted, and there could be significant additional costs (hiring, process, office space and equipment, training, etc.). It is expected that personnel costs could range from $60 to $150 per hour.

**D.  THE BURDENS**

23. We have informed our counsel that searching for the terms is a significant burden. In addition, handling the information after it is located is also a separate, significant burden.

24. The State of Montana is not prepared to shoulder this burden.

25. The burdens are both financial and time-related. We have only a small staff available to handle the demands of daily operation and support of the State's e-mail system. There are approximately 2 FTE's (4 staff, each spending about ½ of their time) providing this support for over 12,000 e-mail users. E-mail discovery efforts, while important, must be taken on outside their regular duties

26. Our budget is limited.

27. We do not have staff available to conduct these searches.

28. We do not have the money in our budget to conduct these searches, including money to hire staff to conduct these searches.

### E. OTHER MEASURES THAT WOULD MAKE THE SEARCHES MORE MANAGEABLE

29. I have discussed with Montana's counsel a number of measures that would make the requested electronic searches more manageable.

30. The first suggestion is to clarify the keyword searches. This is more imperative than a suggestion. As described above, Microsoft Outlook cannot perform the searches as currently drafted. It is also important that the defendants themselves draft the keyword searches and agree to them before we begin. Once we begin, we simply cannot afford to go back and conduct the searches again because defendants want something different or believe we have misinterpreted their directions.

31. A second suggestion is that we conduct an electronic mail search of key individuals first, submit the responsive material to defendants and let them determine if they wish to continue with the electronic production. This way defendants will be able to see what they are getting and assess whether it is worth the effort and expense. This is another reason to shift the costs to defendants -- they will have an incentive to be reasonable about the cost and expense burden.

I declare under penalty of perjury under the laws of the State of Montana and the United States of America that the foregoing facts are true and correct.

Executed on this 14th day of February, 2006, at Helena, Montana.

*Randy Holm*
Randy Holm
Bureau Chief,
Computing Technology Services Bureau,
Department of Administration, Information Technology Services Division for the State of Montana

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF RANDY HOLM** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 14, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties

By /s/ Steve W. Berman
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292