## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | MDL No. 1456 CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO *State of Nevada v. Abbott Labs., Inc. et al.,*       Case No. CV-02-00260 (Nevada I), and *State of Nevada v. American Home Products, et al.,*       CA NO. 02-CV-12086-PBS (Nevada II) | Judge Patti B. Saris |

## DECLARATION OF MEL ROSENBERG

I, Mel Rosenberg, under the penalty of perjury, hereby declare as follows:

1.      I am the Information Systems Manager for Division Health Care Financing and Policy ("DHCFP") for the State of Nevada.  I have held this position since February 2003.  In this position, I am responsible for DHCFP computer and data infrastructure.  Prior to this position, I held a variety of information systems positions with private companies since 1974.

2.      In my capacity as Information Systems Manager, I have been working since November, 2005 with State lawyers and IT professionals to evaluate the feasibility of the electronic mail and electronic discovery requests I understand defendants have submitted to the State in this case.  In the course of this process, I have seen and analyzed the December 14, 2005 letter from Jason Litow with keywords and I have also seen the January 26, 2006 response letter written by counsel for Nevada and Montana.  I reviewed the January 26, 2006 letter before it was finalized.  I contributed substantially to the letter.  As it relates to Nevada, the letter is accurate and reflects my professional opinion.

- 1 -

3.      This declaration provides background information regarding the technology available to the State of Nevada and, more specifically, the DHCFP, also known as Nevada Medicaid.

4.      This declaration also represents my professional opinion of the feasibility of, and the time and expense burdens that would be entailed in, conducting the electronic discovery the defendant drug manufacturers have requested. The information in this declaration was originally provided in a series of e-mails, telephone calls and in-person meetings between me and counsel for the State.

A.      **THE USE AND AVAILABILITY OF BACKUP TAPES AND OTHER ELECTRONIC INFORMATION**

5.      The electronic discovery plan proposed by defendants contemplates production of material from multiple sources.

6.      One source is back up tapes. In Nevada, the State's backup is based on a recovery strategy rather than a retention strategy. The backup cycle is 30 days. This means that the backup capability of the State is limited to restoring the system to a certain point of time – as of now, that date would be September 2005. In order to access this information, the tapes for a given date would have to be restored.

7.      A second source is electronic mail. The State of Nevada uses Microsoft Outlook for its electronic e-mail. This program has been used by the State since the spring of 2002. Prior to that time, CC Mail was our e-mail system. Information that pre-dated the State's implementation of Outlook is no longer available. With Outlook, electronic mail is located on servers known as Exchange servers. Limitations of the Outlook systems will be discussed below.

- 2 -

8.      In addition, each employee has the capacity to create archived files. There is, however, no requirement that they do so. The contents of the employees' archived files will depend on the individual employee's file handling practices. The steps to accomplish this are:

      a.      Have user whose e-mail archives will be searched, logout of their e-mail client.

      b.      Copy each of the user's archives to a secure location. Record the event and enter it into the tracking log.

      c.      Individually attach a single archive to an e-mail client and execute the keyword search.

9.      As a threshold matter, we have to locate the individual user's archives. They are not necessarily maintained in a standard place – or even necessarily on a server rather than an individual's hard drive or other storage source. It has also been my experience that individuals do not necessarily have any idea where his or her archives are located. Sometimes there is a lengthy hunt just to locate the files. I explained this at my deposition in November.

10.     This is a time-consuming process – both restoration of the tapes and the search for responsive material. In my deposition, given in this case on November 16, 2005, I described some of the burdens. I also describe the burdens more specially below now that I have received the list of keywords.

## B.      DIFFICULTIES WITH THE KEYWORD SEARCHES REQUESTED BY DEFENDANTS

11.     I have studied the keyword searches proposed by defendants. Based on my experience, the list is quite extensive in terms of both the number of searches and the effort required. It is my understanding that the list was developed for use in another state, Connecticut that does not use Microsoft Outlook for electronic mail. In Nevada, there are numerous problems with performing the searches for the keywords.

- 3 -

12.     Nevada uses Microsoft Outlook for electronic mail. The search capacity for Microsoft Outlook and Microsoft Exchange servers is very limited and time-consuming. Again, I explained this to defendants when asked at my deposition even before I saw the extensive keyword searches they have proposed in this case. Now that I have received the keywords, I can evaluate the burdens more specifically.

13.     Microsoft Outlook does not have the capacity to handle any of the following: (a) wild card delimiters in the format used in the key word search list currently proposed; (b) searches for "within # words"; (c) complex Boolean searches; (d) quotation marks within the search term – unless the search is intended to pick up only those documents containing the term within quotation marks; (e) combined searches for lengthy terms (Microsoft Outlook search is limited to 255 characters); or (f) searching attached documents. *All* of these would be required to conduct the keyword searches as drafted by the defendants in their request list.

14.     Further, the Microsoft Outlook searches can be conducted on no more than one archive at a time. This also was explained in my deposition.

15.     We have discussed the potential of purchasing a separate search tool to conduct the searches. Even aside from the expense of such a product, purchasing a separate search tool is not as easy as it sounds. Even if an alternative search product that the State would have to install could be located, it would have to undergo the same test-development-production implementation cycle that we put all software through. Therefore, this would likely introduce a significant time factor and cost for the IT staff. This would require additional resources. This could be mitigated somewhat by only installing it in an isolated test environment, but that also may require serves or other IT resources that the State doesn't already have in place.

- 4 -

C.     **ESTIMATES OF THE TIME AND EXPENSE INVOLVED WITH THE
       PROPOSED SEARCHES**

16.     Counsel for the State of Nevada asked me to estimate the cost of conducting the

costs to search for and produce the electronic information sought.  There is absolutely no way to

estimate for sure until the first search is executed.  In addition, the fact that the keyword searches

as currently drafted are not searchable for the State of Nevada makes estimation difficult, if not

impossible.

17.     The financial costs fall into three categories:  (i) the costs of restoration of tapes

and mailboxes; (ii) the cost of purchasing and storing tapes; and (iii) the costs of searches.

18.     After the State figures out how to conduct the searches, the State must search

through the information located.  The following steps will be necessary for each responsive

e-mail:

> (1)     print the actual e-mail;
>
> (2)     open any attachments;
>
> (3)     print any attachments;
>
> (4)     collate them; and
>
> (5)     conduct a review for privileged and confidential information.

19.     The fifth step is particularly important because of the likelihood that many of the

e-mails will contain confidential patient health information irrelevant to this lawsuit which the

State is responsible for keeping confidential under both federal and state law.

20.     The State does not have the manpower to conduct these searches.  Additional staff

would have to be hired.

21.     I cannot provide any specific estimates of how long the searches will take because

that is dependent on how expansive the effort and how much mail is in each mailbox.

**D.     THE BURDENS**

22.     We have informed our counsel that searching for the terms is a significant burden. In addition, handling the information after it is located is also a separate, significant burden.

23.     The State of Nevada cannot afford this burden. If I attempt to support this search request with existing staff, not only am I not able to define how long it would take prior to starting the search, I would not be able to commit to a completion date. My staff is fully loaded supporting DHCFP and would have to work on the search as a second priority project, in addition to their existing workload. We do not have staff available to conduct these searches.

24.     The burdens are both financial and time-related. We have only a small staff, two IT staff and one manager, available to handle the demands of over 200 division staff in six offices (three remote). Currently, our staff is over-extended because of continuing moving of staff to accommodate growth and office consolidations.

25.     Our budget is non-existent when it comes to unplanned consultants. My only solution to that is to hire a temporary worker (consultant). My IT budget does not have any dollars to support this effort.

26.     In summary, we do not have the money in our budget to conduct these searches, including money to hire staff to conduct these searches. In order to accomplish the electronic discovery, would have to hire or contract with additional staff.

**E.     AVAILABILITY OF INFORMATION ELSEWHERE**

27.     DHCFP policy states that if a document requires retention, it should be reduced to paper and stored in the State archive. Because of this, IT has a data recover policy not a data retention policy. Data recovery attempts to return all the users data to the state it was just before

- 6 -

the outage. This is different than retention which has a goal of preserving all versions of data for all time. This is another point I explained more than once in my depositions.

## F.     OTHER MEASURES THAT WOULD MAKE THE SEARCHES MORE MANAGEABLE

28.     I have discussed with Nevada's counsel a number of measures that would make the requested electronic searches more manageable.

29.     The first suggestion is to clarify the keyword searches. This is very important. As described above, we cannot conduct the searches as currently drafted.

30.     It is also important that the defendants themselves draft the keyword searches and agree to them before we begin. I told our counsel: "Don't make me think about it." This comment was not intended to be flippant. Rather, in my professional experience of nearly thirty years, I have learned that with projects such as this one, it is imperative that the parties agree explicitly on the terms before the project is launched. This goes to details as minute as the spelling of parties. This is particularly important where, as here, the search terms are broad and difficult to understand. The reason we do this is that once we begin, we simply cannot afford to go back and conduct the searches again because defendants want something different or believe we have misinterpreted their directions. With a search as burdensome as that which the defendants have proposed, we cannot have any discretion over what we do.

31.     A second suggestion is that we conduct an electronic mail search of key individuals first, submit the responsive material to defendants and let them determine if they wish to continue with the electronic production. This way defendants will be able to see what they are getting and assess whether it is worth the effort and expense. This is another reason to

- 7 -

shift the costs to defendants – they will have an incentive to be reasonable about the cost and expense burden.

I declare under penalty of perjury under the laws of the State of Nevada and the United States of America that the foregoing facts are true and correct.

Executed on this _14_ day of February, 2006, at _____4/17 pm_____.


_____
Mel Rosenberg
Information Systems Manager
Division of Health Care Financing and Policy
State of Nevada

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF MEL ROSENBERG** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 14, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292