# EXHIBIT C



# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Nov 25 2005
5:42PM

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | **SUBPOENA IN A CIVIL CASE** MDL NO. 1456 |
| | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION | Judge Patti B. Saris (case pending in D. Mass.) |

TO:   Fallon Community Health Plan, Inc.
      10 Chestnut Street
      Worcester, Massachusetts 01608

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   See deposition topics at Schedule B, attached hereto.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Foley Hoag LLP<br>Seaport World Trade Center West<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210-2600 | December 2, 2005 at 9:30 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Foley Hoag LLP<br>Seaport World Trade Center West<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210-2600 | December 2, 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /s/ Paul F. Doyle   Attorney for Defendant Dey, Inc. | November 21, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:

Paul F. Doyle (BBO # 133460), Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178.  (212) 808-7800.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

| PROOF OF SERVICE |||
|---|---|---|
| SERVED | DATE | PLACE |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
   (i) fails to allow reasonable time for compliance;
   (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
   (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
   (iv) subjects a person to undue burden.

(B) If a subpoena

   (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
   (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
   (iii) requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

NY01/KJMS/1064521.3

## DEFINITION

1. "Fallon Community Health Plan," "You," or "Your" means Fallon Community Health Plan, Inc. and any of its past or present officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any information that might otherwise be construed to be outside its scope.

3. "Communication," as defined in Local Rule 26.5(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4. "Concerning," as defined in Local Rule 26.5(c)(7), means referring to, describing, evidencing, or constituting.

5. "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper, pressure sensitive paper, photostat, xerography, or other means or process.

6. "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in Your possession, custody or control or known or believed by You to exist.

7. "Drug Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

8. "PBM" means pharmacy benefit manager.

9. The terms "Participant" and "Beneficiary" mean a person for whom a health plan, health maintenance organization, insurance provider or company, health and welfare fund, or other similar entity provides any medical or health insurance benefit.

10. "Provider" means any physician, hospital, or other entity that provides health care or pharmaceuticals to any Participant or Beneficiary.

11. "Regarding" means in any way concerning or referring to, reflecting, consisting of, involving, regarding or connected with the subject matter of the request.

12. "Specialty Pharmacy" means a full service pharmacy that, among other things, dispenses and/or administers drugs directly to patients, and provides services including but not limited to contracting with Drug Manufacturers, prior authorization, patient education and follow up, case management, and home delivery.

13. "Staff-Model HMO" means a health maintenance organization ("HMO") providing health services from a group of physicians who are either staff employees of a professional group practice which is an integral part of the HMO plan or are direct employees of the HMO itself.

14. "Wholesaler" means any entity that purchases drugs from a Drug Manufacturer and resells such drugs to any other entity.

## INSTRUCTIONS

1. Unless otherwise specifically stated, the requests below refer to the period from January 1, 1991 to the present.

2. The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3. Each request for production of documents extends to all documents in the possession, custody, or control of You or anyone acting on Your behalf. A document is to be deemed in Your possession, custody, or control if it is in Your custody, or if it is in the custody of any other person and You (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when You sought to do so.

4. If production is requested of a document that is no longer in Your possession, custody, or control, Your response should state when the document was most recently in Your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document. If the document has been destroyed, state the reason for its destruction.

5. Provide the following information for each document withheld on the grounds of privilege:

    (a)    its date;

    (b)    its title;

    (c)    its author;

    (d)    its addressee;

  (e)  the specific privilege under which it is withheld;

  (f)  its general subject matter; and

  (g)  a description of it that You contend is adequate to support your contention that it is privileged.

6.  These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

7.  The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

8.  To the extent that You consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which You object and each ground for each objection.

## SCHEDULE A

## **DOCUMENTS TO BE PRODUCED**

1. All schedules disclosing the amounts reimbursed to physicians for services rendered and drugs administered (*i.e.*, physician "fee schedules") and documents detailing how those schedules were calculated or derived. To the extent the fee schedules differ from the electronic schedules or tables used to generate the actual reimbursement amounts paid to physicians, produce all such schedules and tables.

2. Electronic medical claims data regarding reimbursement to Providers for all drugs on the list attached hereto as Exhibit A, including all data regarding reimbursements for related administration or service fees, and all claims processing manuals corresponding to the electronic medical claims data produced.

3. All documents relating to or reflecting differences between the amounts You reimburse in relation to physician-administered drugs when they are administered in hospitals as compared to physician's offices, including, but not limited to, all strategic plans and business plans comparing the associated costs of administration in each site of care, or indicating an incentive or preference to administer drugs in a physician's office rather than in a hospital setting.

4. All documents concerning advisory boards conducted by You, or on Your behalf, involving physicians or pharmacists, including final reports or other documents reflecting the issues discussed, documents reflecting all entities participating in such advisory boards, and documents reflecting the conclusions of such advisory boards.

5. All documents regarding or reflecting any consideration of or actual changes to Your reimbursements for drugs or services based on, or by reference to, changes in

Medicare's reimbursement rates for drugs or services since 2003.

6. All documents, including electronic transaction records and contracts, concerning Your direct purchases of drugs from Drug Manufacturers, Wholesalers, PBMs, Specialty Pharmacies or any other person or entity.

7. Documents regarding or reflecting the scope of operation of any Staff-Model HMO, including documents reflecting the time period of its operation, the number of patients treated through its facilities, the numbers of its members, the volume of its drug purchases, and the reasons or rationale behind Your decision to initiate or cease its operation.

8. All documents, including communications between You and Providers, regarding:

   (a) The costs to Providers of acquiring physician-administered drugs, including, but not limited to, the drugs on the list attached hereto as Exhibit A;

   (b) Any differences between the costs to Providers of acquiring physician-administered drugs and the amounts You reimburse Providers for such physician-administered drugs;

   (c) Your understanding that the costs to Providers of acquiring or administering physician-administered drugs are different from the amounts You reimburse Providers in relations to such physician-administered drugs;

   (d) Your intention or the fact that drug reimbursement acted as a cross-subsidy for service fees or administration reimbursements that were inadequate or were perceived by physicians to be inadequate.

9. All documents regarding the process whereby Fallon Community Health Plan determines drug formularies, including analysis of the economic merits of selecting or placing on a higher tier certain drugs as compared to others.

10. Summary reports regarding rebates received by You from Drug

Manufacturers.

11. All documents reflecting any controls, measures, studies or benchmark comparisons considered or implemented by You to manage the costs of reimbursements for physician-administered drugs.

12. All documents concerning your contractual relationships with Providers insofar as they cover reimbursement for the administration of the drugs on the list attached hereto as Exhibit A, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, and responses to requests for proposal.

## SCHEDULE B

## DEPOSITION TOPICS

1. All methodologies You utilized or considered utilizing to determine the amounts to pay or reimburse Providers for physician-administered drugs and services.

2. All rationales, information, and factors considered by You in deciding whether or not to adopt the reimbursement methodologies described in Subject 1.

3. Any actions that You have taken to reduce either Your total expenditures on pharmaceutical benefits or the amount spent on any particular pharmaceutical product.

4. For all methodologies discussed in Subject 1, all rationales, information, and factors considered by You in deciding whether or not to pay a separate administration fee or dispensing fee in addition to the price of the drug itself.

5. Your knowledge and understanding of whether any administration or dispensing fees You reimbursed to Providers were sufficient to cover the Provider's costs in administering or dispensing the corresponding drugs.

6. Your understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," "WAC," "Maximum Allowable Cost," "MAC," "Federal Supply Schedule," "FSS," "Average Sales Price," "ASP," "Average Manufacturer Price," "AMP," "Best Price," "Estimated Acquisition Cost," or "EAC."

7. Your understanding and knowledge of whether Drug Manufacturers provided Providers with discounts, rebates, and other incentives that were not reported in pricing compendia or otherwise disclosed to the public.

8. For physician-administered drugs, whether and to what extent Your

negotiations with Providers about reimbursement expressly dealt with a distinction between (a) the reimbursement of the drug itself, and (b) the reimbursement for the Provider's administration service.

9. Whether and to what extent Your reimbursement to Providers for drugs and drug-related services are influenced by Medicare's reimbursement rates, including any impact Medicare's reimbursement rates have on Your negotiations with Providers concerning reimbursement.

10. Any advisory boards conducted by You or on Your behalf, involving physicians or pharmacists, including the issues discussed and any conclusions reached.

11. Your understanding and knowledge of whether Providers would earn a margin on drugs administered and dispensed, including whether such a margin depended, in part, on the difference between the reimbursement You paid and the actual acquisition costs for the drugs, net of any incentives provided by the Drug Manufacturers.

12. Whether and to what extent You provide different reimbursement rates based upon the type of Providers and/or the method of the administration of the drugs, including the reasons for any such difference.

13. Any studies or analysis You have made concerning the relatives costs of the administration of drugs in physicians' offices rather than in hospitals.

14. Whether and to what extent You own any Provider and if so, whether You purchased drugs on behalf of any Provider.

15. Whether and to what extent a Staff-Model HMO was implemented by You and, if so, the period in which the Staff-Model HMO operated, its purchasing practices, and the terms of its contracts with Drug Manufacturers, Wholesalers, Specialty Pharmacies, or any other

person or entity.

16. Whether and to what extent You have ever been affiliated with a hospital or university and, if so, the period of affiliation with a hospital or university and the terms of the affiliation.

17. Whether and to what extent You participate in government programs that reimburse under the Federal Supply Schedule and, if so, the period of participation in the government program and terms of Your participation in the program.

18. Fee schedules for physician-administered drugs, including the methodologies used to develop the fee schedules, the rationales for such methodologies, and whether the fee schedules were communicated to the physicians.

19. Whether and to what extent You have transitioned to a Medicare's ASP-based reimbursement system.

20. Whether and to what extent You use a capitation reimbursement program, including withholds, for the reimbursement of physician-administered drugs and, if so, the start and end dates of these programs and how these programs work.

21. Your direct purchases, if any, of drugs from Drug Manufacturers, Wholesalers, PBMs, Specialty Pharmacies, or any other entity.

22. Your knowledge and understanding of how the formularies and the drugs to be included on the formularies are determined, including any rationales and factors considered in that determination.

23. Your relationship(s), if any, with any PBM.

24. All rationales, information, and factors considered by You in deciding whether to do business with a PBM and in deciding which PBM, if any, to use.

25. Your knowledge of the margin Wholesalers have earned on drugs over the last decade.

26. All information sent to or received from federal, state, or local governments regarding pharmaceutical reimbursement.

27. Your knowledge of government studies, reports, and communications concerning actual acquisition costs for drugs.

28. Your knowledge and understanding of the allegations and claims made by Plaintiffs in this action.

29. Your understanding of the costs to Providers of acquiring physician-administered drugs, including any difference between the Provider's cost and the amounts you reimburse for such drugs and any intention that drug reimbursement act as a cross-subsidy for service fees, administration costs, or otherwise.

30. Fallon Community Health Plan's document retention policy.

31. The types and scope of coverage offered by Fallon Community Health Plan.

32. Fallon Community Health Plan's organizational structure.

33. All documents produced in response to Defendants' subpoena, including whether such documents are authentic within the meaning of Rule 901 of the Federal Rules of Evidence, and Records of Regularly Conducted Activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

## EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| Drug Name | J Code |
|---|---|
| ALBUTEROL | J3535 |
| | J7613 |
| | J7619 |
| ALKERAN | J8600 |
| | J9245 |
| BLENOXANE | J9040 |
| CYTOXAN | J8530 |
| | J9090 |
| | J9091 |
| | J9093 |
| | J9094 |
| | J9095 |
| | J9096 |
| | J9097 |
| ETOPOPHOS | J9181 |
| | J9182 |
| HALDOL | J1630 |
| | J1631 |
| IMITREX | J3030 |
| INTEGRILIN | J1327 |
| INTRON A | J9214 |
| KYTRIL | J1625 |
| | J1626 |
| | Q0166 |
| LEVAQUIN | J1956 |
| MYLERAN | J8510 |
| NAVELBINE | J9390 |
| PARAPLATIN | J9045 |
| PERPHENAZINE | Q0175 |
| | Q0176 |
| PROCRIT | Q0136 |
| | Q4055 |
| | Q9920 |
| | Q9921 |
| | Q9922 |
| | Q9923 |
| | Q9924 |
| | Q9925 |
| | Q9926 |
| | Q9927 |
| | Q9928 |
| | Q9929 |
| | Q9930 |

NY01/KIMS/1064521.3

| Drug Name | J Code |
|---|---|
| PROCRIT (cont.) | Q9931 |
| | Q9932 |
| | Q9933 |
| | Q9934 |
| | Q9935 |
| | Q9936 |
| | Q9937 |
| | Q9938 |
| | Q9939 |
| | Q9940 |
| PROVENTIL | J7613 |
| | J7618 |
| PULMICORT | J7626 |
| REMICADE | J1745 |
| RETROVIR | J3485 |
| SODIUM CHLORIDE | J2912 |
| | J7030 |
| | J7040 |
| | J7050 |
| | J7051 |
| | J7130 |
| SPORANOX | J1835 |
| TAXOL | J9265 |
| TEMODAR | J8700 |
| VENTOLIN | J7620 |
| | J7625 |
| VEPESID | J8560 |
| | J9181 |
| | J9182 |
| ZANTAC | J2780 |
| ZOFRAN | J2405 |
| | Q0179 |
| ZOLADEX | J9202 |
| ZOVIRAX | Q4075 |
| ACETYLCYSTEINE | J7608 |
| | J7610 |
| | J7615 |
| ACYCLOVIR | Q4075 |
| ADRIAMYCIN | J9001 |
| ADRUCIL | J9190 |
| AGGRASTAT | J3245 |
| | J3246 |
| ALBUTEROL | J3535 |
| | J7613 |
| | J7619 |
| A-METHAPRED | J2920 |
| AMPHOCIN | J0285 |
| | J0287 |

| Drug Name | J Code |
|---|---|
| AMPHOCIN (cont.) | J0289 |
| AMPHOTERICIN B | J0285 |
| AMPHOTERICIN B (cont.) | J0287 |
|  | J0289 |
| ANZEMET | J1260 |
|  | Q0180 |
| ARANESP | J0880 |
|  | Q0137 |
|  | Q4054 |
| ARISTOCORT | J3302 |
| ARISTOSPAN | J3303 |
| ATIVAN | J2060 |
| AZMACORT | J7684 |
| BACTERIOSTATIC SODIUM CHLORIDE | J2912 |
|  | J7130 |
| BEBULIN VH | J7194 |
| BREVIBLOC | J7799 |
| BUMINATE | P9041 |
|  | P9042 |
|  | P9045 |
|  | P9046 |
|  | P9047 |
| CALCIJEX | J0635 |
|  | J0636 |
| CEFIZOX | J0715 |
| CIPRO | J0706 |
|  | J0744 |
| CISPLATIN | J9060 |
|  | J9062 |
| CLAFORAN | J0698 |
| CROMOLYN SODIUM | J7631 |
| CYTARABINE | J9098 |
|  | J9100 |
|  | J9110 |
|  | J9111 |
|  | J9112 |
|  | J9113 |
| DEPO TESTOSTERONE CYPIONATE | J1060 |
|  | J1070 |
|  | J1080 |
|  | J1081 |
|  | J1082 |
| DEXAMETHASONE | J1100 |
|  | J7637 |
|  | J7638 |
| DEXTROSE | J7042 |
|  | J7060 |
|  | J7070 |

| Drug Name | J Code |
|---|---|
| DIAZEPAM | J3360 |
| DILANTIN | J1165 |
| DOXORUBICIN HCL | J9000 |
|  | J9001 |
| DTIC-DOME | J9130 |
|  | J9140 |
| ENBREL | J1438 |
| EPOGEN | Q0136 |
|  | Q4055 |
|  | Q9920 |
|  | Q9921 |
|  | Q9922 |
|  | Q9923 |
|  | Q9924 |
|  | Q9925 |
|  | Q9926 |
|  | Q9927 |
|  | Q9928 |
|  | Q9929 |
|  | Q9930 |
|  | Q9931 |
|  | Q9932 |
|  | Q9933 |
|  | Q9934 |
|  | Q9935 |
|  | Q9936 |
|  | Q9937 |
|  | Q9938 |
|  | Q9939 |
|  | Q9940 |
| ETOPOSIDE | J9181 |
|  | J9182 |
| FENTANYL CITRATE | J3010 |
| FERRLECIT | J2916 |
| FUROSEMIDE | J1940 |
| GAMIMUNE N | J1563 |
|  | J1564 |
|  | Q9943 |
|  | Q9944 |
| GAMMAGARD SD | J1561 |
|  | J1563 |
|  | J1564 |
|  | Q9941 |
|  | Q9942 |
| GAMMAR P | J1561 |
|  | J1563 |
|  | J1564 |
|  | Q9941 |
|  | Q9942 |

| Drug Name | J Code |
|---|---|
| GENTAMICIN | J1580 |
| GENTRAN | J7100 |
| | J7110 |
| HEPARIN | J1642 |
| | J1644 |
| INFED | J1750 |
| INTAL | J7631 |
| IPRATROPIUM BROMIDE | J7644 |
| IVEEGAM | J1561 |
| | J1562 |
| | J1563 |
| | J1564 |
| | Q9941 |
| | Q9942 |
| KOATE-HP | J7190 |
| KOGENATE | J7192 |
| LEUCOVOR | J0640 |
| LEUCOVORIN CALCIUM | J0640 |
| | J8999 |
| LEUKINE | J2820 |
| LORAZEPAM | J2060 |
| METAPROTERENOL SULFATE | J7669 |
| METHOTREXATE | J9250 |
| | J9260 |
| MIACALCIN | J0630 |
| MITHRACIN | J9270 |
| MITOMYCIN | J9280 |
| | J9290 |
| | J9291 |
| NEOSAR | J9070 |
| | J9080 |
| | J9090 |
| | J9091 |
| | J9092 |
| | J9095 |
| | J9096 |
| NEULASTA | J2505 |
| | Q4053 |
| NEUPOGEN | J1440 |
| | J1441 |
| NOVANTRONE | J9293 |
| OSMITROL | J2150 |
| PROGRAF | J7507 |
| | J7508 |
| | J7525 |
| RECOMBINATE | J7192 |
| SODIUM CHLORIDE | J2912 |
| | J7030 |

| Drug Name | J Code |
|---|---|
| SODIUM CHLORIDE (cont.) | J7040 |
| | J7050 |
| | J7051 |
| | J7130 |
| SOLU-CORTEF | J1700 |
| | J1710 |
| | J1720 |
| SOLU-MEDROL | J1020 |
| | J1030 |
| | J1040 |
| | J2920 |
| | J2930 |
| | J7509 |
| TAXOTERE | J9170 |
| THIOPLEX | J9340 |
| TOBRAMYCIN SULFATE | J3260 |
| TOPOSAR | J9181 |
| | J9182 |
| VANCOCIN HCL | J3370 |
| VANCOMYCIN HCL | J3370 |
| VINBLASTINE | J9360 |
| VINCASAR PFS | J9370 |
| | J9375 |
| | J9380 |
| ZITHROMAX | J0456 |