# EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**05** CR **1 0 1 0 2** JLT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) Criminal Number- _____ - |
| | ) |
| | ) |
| v. | ) **VIOLATION:** |
| | ) |
| **JOHN BRUENS,** | ) 18 U.S.C. § 371 - Conspiracy to Offer and Pay |
| **MARY STEWART,** | ) Illegal Remunerations to Physicians |
| **MELISSA VAUGHN,** and | ) 42 U.S.C. § 1320a-7(b)(b)(2) – Offers and |
| **MARC SIROCKMAN,** | ) Payments of Remunerations to Physicians |
| | ) 18 U.S.C. § 2 - Aiding and Abetting |
| Defendants. | ) |
| | ) |
| ——————————————— | ) |

## I N D I C T M E N T

The Grand Jury charges:

## PRELIMINARY ALLEGATIONS

At all times material hereto, unless otherwise alleged:

1.  Serono Inc., a/k/a Serono Laboratories, Inc. (hereinafter "Serono"), a Delaware

    Corporation, was a subsidiary of Ares-Serono, S.A., an international pharmaceutical

    and bio-technology company with corporate headquarters in Geneva, Switzerland.

    The United States headquarters of Serono was located in Norwell, Massachusetts.

    Serono was engaged in the business of marketing and selling pharmaceutical and

    bio-technology products.

2.  From in or about 1996 and thereafter, Serono's Metabolic and Immune Therapy

    business unit (hereinafter "M&IT") was responsible for marketing and selling the

    drug Serostim, which was Serono's proprietary name of the generic drug,

"somatropin," a recombinant human growth hormone.  Serono marketed and sold

Serostim throughout the United States.

3.      In March of 1999, the M&IT sales force was divided into six sales Regions each led

by a Regional Director:  the Northeast Region (Massachusetts, Maine, Connecticut,

Vermont, New Jersey, parts of Pennsylvania and New York State); the New York

Region (New York City and its environs); the Southeast Region (Florida, Louisiana,

Mississippi, Alabama and Texas); the Central Region (Illinois, Wisconsin,

Missouri, Arkansas, Oklahoma, Kentucky, Michigan, Minnesota, North Dakota,

South Dakota, Nebraska, Iowa and Indiana); the Mid-Atlantic Region (Maryland,

Delaware, Georgia, North Carolina, South Carolina, Ohio, West Virginia, and part

of Pennsylvania); and the Western Region (California, Oregon, Washington,

Arizona, and Colorado).

## The Defendants

4.      Defendant **JOHN BRUENS** (hereinafter referred to as "**BRUENS**") held various

positions in Serono.  In 1999, defendant **BRUENS** was the Vice-President of

Marketing for M&IT working out of Serono headquarters in Massachusetts and

reported directly to X, an executive in M&IT (hereinafter "Executive X").

5.      Defendant **MARY STEWART** (hereinafter referred to as "**STEWART**") held

various positions in Serono.  In 1999, defendant **STEWART** was the Vice-

President of Sales of M&IT working out of Serono headquarters in Massachusetts

and reported directly to Executive X.

6.      Defendant **MELISSA VAUGHN** (hereinafter referred to as "**VAUGHN**") held various positions in Serono's M&IT business unit. In 1999, **VAUGHN** was the Regional Director of Sales for the Southeast Region and reported directly to **STEWART**. As Regional Director of Sales for the Southeast Region, **VAUGHN** supervised sales representatives (known within Serono as "clinical consultants") in Florida, Louisiana, Mississippi, Alabama and Texas.

7.      Defendant **MARC SIROCKMAN** (hereinafter referred to as "**SIROCKMAN**") was employed by Serono's M&IT business unit in a variety of positions. In or about January of 1999, **SIROCKMAN** became Regional Director for the Northeast Region and reported directly to defendant **STEWART**. As Regional Director of Sales for the Northeast Region, defendant **SIROCKMAN** supervised clinical consultants in Massachusetts, Maine, Connecticut, Vermont, New Jersey, parts of Pennsylvania and New York State.

**Serono and Serostim**

8.      At various times, defendants **BRUENS, STEWART, VAUGHN** and **SIROCKMAN**, along with others both known and unknown to the Grand Jury, including Executive X and Adam Stupak, who was the Regional Director of Sales for the New York Region, were responsible for sales and marketing of Serostim, Serono's human growth hormone drug. Serostim was a recombinant human growth hormone, consisting generally of growth hormone taken from an animal and modified, using DNA technology, by the addition of the human growth hormone gene. Serono received accelerated approval from the United States Food and Drug

3

Administration ("FDA") in 1996 for Serostim to treat AIDS wasting, also known as cachexia, a condition involving profound involuntary weight loss in AIDS patients. At the time the FDA approved Serostim, AIDS wasting was an AIDS-defining condition that constituted the leading cause of death among AIDS patients.

9.      Serostim was an injectable drug that was prescribed per milligram ("mg.") and was dispensed in vials. The dosing range for Serostim was from 4 to 6 mg. per patient per day based upon the patient's weight. The most common dose was 6 mg. per day. The recommended course of treatment for Serostim was for twelve weeks.

10.     Serostim was a very expensive drug. The average wholesale price ("AWP") was $42 per mg. At 6 mg. per day, a prescription for Serostim was 168 mg. per 28-day cycle, and the cost per 28-day cycle was approximately $7056. A twelve-week course of therapy cost approximately $21,168. Due to its cost, among other factors, many physicians treating AIDS patients did not use Serostim as a "first line" or primary choice of therapy.

11.     Serostim came on the market concurrently with the advent of protease inhibitor drugs. These drugs, often referred to as Highly Active Anti-Retroviral Therapy, or HAART, dramatically curtailed, in the United States, the proliferation of the AIDS virus in a given patient, particularly when these drugs were used in combination with one another (commonly referred to as "AIDS cocktails"). Given the decreased viral loads in HIV patients taking these drugs, the incidence and prevalence of the AIDS wasting syndrome began to decline markedly among AIDS patients.

Consequently, the demand for Serostim began to drop significantly immediately following launch of the drug in the Fall of 1996.

### The Medicaid Program

12.     Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*., established a program to enable the states to furnish medical assistance to certain categories of persons whose income and resources were insufficient to meet the costs of necessary medical services.  Commonly called Medicaid, the program was administered by the states, but was funded jointly by the federal and state governments.

13.     To participate in the Medicaid program, a state was required to develop a plan that was approved by the Secretary of Health and Human Services as meeting federal requirements.  The state paid qualified providers for furnishing necessary services covered by the state plan to individuals who were eligible for medical assistance. The federal government contributed a portion of the costs that each participating state incurred in purchasing items and services from qualified providers on behalf of eligible persons.  The state bore the remainder of the costs.  At all times relevant hereto, the States of New York, New Jersey and Florida, were among the states that had Medicaid programs receiving federal funding.

14.     State Medicaid programs, including those in New York, New Jersey and Florida were "federal health care programs" within the meaning of 18 U.S.C. § 24, in that they were public plans affecting commerce under which medical benefits, items and services were provided to individuals under the plans.

5

15.     The federal government contributed to the costs of prescriptions for persons who were Medicaid beneficiaries, including but not limited to persons disabled due to HIV infection and AIDS under the New York, New Jersey and Florida State Medicaid programs.

## Serostim and the Medicaid Program

16.     Medicaid paid for approximately 75% of all Serostim prescriptions nationwide. The total claims paid by Medicaid nationwide from 1997 through 1999 were over $200 million.  From 1997 through 1999, Medicaid claims in New York were over $53 million; in New Jersey were over $12 million; and in Florida were over $25 million.

17.     As discussed in this indictment, Drs. RL, P, DC, AC, O, G and W were each Medicaid providers who provided care and treatment for Medicaid-eligible patients who were HIV positive or suffering from AIDS.  Drs. RL and P were located in and treated patients in Florida; Drs. DC and AC were located in and treated patients in New Jersey; and Drs. O, G and W were located in and treated patients in New York. Each of these physicians prescribed Serostim from time to time to patients who were Medicaid program beneficiaries.  The Medicaid program in the states in which these physicians provided treatment reimbursed the Serostim prescriptions for the physicians' Medicaid eligible patients.

## The Marketing and Sales of Serostim in 1999

18.     During 1999, the top managers of the M&IT business unit who were responsible for Serostim sales and marketing were Executive X and defendants **BRUENS** and **STEWART**.

19.    In or about late 1998 or early 1999, Serono scheduled a National Sales Meeting to be held in Massachusetts from March 15-19, 1999, at which time representatives from various corporate business units of Serono, including Executive X, and defendants **BRUENS** and **STEWART** on behalf of the M&IT unit, would be required to present sales information concerning the products being marketed by their respective corporate business units.

20.    In February of 1999, Executive X, along with defendants **BRUENS** and **STEWART**, were aware that the M&IT business unit was falling significantly short of its sales goals with respect to sales of Serostim.

21.    The 3rd International Conference on Nutrition and HIV Infection was held in Cannes, France from April 22-25, 1999 (hereinafter referred to as the "Cannes Conference"). The Cannes Conference was organized to include new data on advances in the treatment of nutritional aspects of HIV disease, including but not limited to the effects of protease inhibitors on body composition, metabolism and hormone systems.

### COUNT ONE
### (CONSPIRACY)

#### The Conspiracy

22.    Commencing on or about March 1, 1999, and continuing thereafter until in or about December of 1999, the exact dates being unknown to the Grand Jury, in the District

of Massachusetts and elsewhere, defendants

**JOHN BRUENS,**
**MARY STEWART,**
**MELISSA VAUGHN, and**
**MARC SIROCKMAN**

and others known and unknown to the Grand Jury, including Adam Stupak and

Executive X, knowingly and willfully combined, conspired, and agreed to commit

an offense against the United States, to wit,  42 U.S.C. § 1320a-7b(b)(2)(A), by

knowingly and willfully offering and paying remuneration, directly and indirectly,

overtly and covertly, in cash and in kind, to physicians to induce them to refer

individuals, including Medicaid patients, to pharmacies for the furnishing of the

drug Serostim, for which payments were made in whole and in part under state

Medicaid programs.

## Purpose of the Conspiracy

23.     It was the purpose of this conspiracy to target physicians who were high prescribers

of Serostim or who were generally regarded as "thought leaders" and to offer certain

of these physicians financial incentives in order to obtain the number of

prescriptions that would advance a sales goal of increasing sales by $6,000,000,

which was to be accomplished by offering an all-expenses paid trip for each

physician and a guest to the Cannes Conference in return for the physicians writing

additional prescriptions of Serostim.

8

## Means and Manner of the Conspiracy

24.   It was a part of the conspiracy that Executive X and defendants **BRUENS** and
**STEWART** devised a plan called the "$6m-6 Day Plan," which had as an objective
to target top prescribing Serostim physicians and top "thought leader" physicians in
the AIDS/HIV medical community and then induce the targeted physicians to write
more prescriptions by offering as an inducement an all-expenses paid trip to the
Cannes Conference.

25.   It was a further part of the conspiracy that Executive X and defendants **BRUENS**
and **STEWART** summoned the six Regional Directors of M&IT, including Adam
Stupak and defendants **VAUGHN** and **SIROCKMAN**, to an emergency meeting at
the Boston Harbor Hotel on March 1, 1999.  At this meeting, which included other
M&IT personnel, Executive X and defendants **BRUENS** and **STEWART** told the
six Regional Directors that they were falling short of their sales goals for Serostim.
Executive X and defendants **BRUENS** and **STEWART** also advised the Regional
Directors that they needed to "dig their way out" of this fiscal crisis and informed
the Regional Directors of the "$6m-6 Day Plan."

26.   It was a further part of the conspiracy that, to effectuate the objectives of the "$6m-6
Day Plan," various co-conspirators within the M&IT unit would offer to selected
physicians an all-expenses paid trip to the Cannes Conference in return for the
physicians writing additional prescriptions of Serostim for patients.  Although this
target number of prescriptions per physician changed over time, the "$6m-6 Day

Plan," as originally explained by defendants **BRUENS** and **STEWART**, would increase total sales of Serostim by more than $6,000,000 within six (6) days.

27.     It was a further part of the conspiracy that Executive X and defendants **BRUENS** and **STEWART** required each Regional Director, including Adam Stupak and defendants **VAUGHN** and **SIROCKMAN**, to report daily to Serono headquarters in Massachusetts the number of Serostim prescriptions that they obtained during the sales push, including those prescriptions obtained from the key physicians who were targeted and offered the opportunity to attend the Cannes Conference.

28.     It was a further part of the conspiracy that defendants **BRUENS, STEWART, VAUGHN** and **SIROCKMAN** and various co-conspirators, including Adam Stupak, offered and caused to be offered to selected physicians the opportunity to attend the Cannes Conference with a guest with all expenses paid by Serono in return for the physicians writing additional prescriptions of Serostim.

29.     It was a further part of the conspiracy that, in exchange for the physicians writing additional Serostim prescriptions, various co-conspirators including Executive X and defendants **BRUENS, STEWART, VAUGHN** and **SIROCKMAN**, caused Serono to pay for the travel expenses of the physicians and their guests who actually attended the Cannes Conference.

30.     It was a further part of the conspiracy that, in exchange for the physicians' Serostim's prescriptions, various co-conspirators, including Executive X and defendants **BRUENS, STEWART, VAUGHN** and **SIROCKMAN**, caused Serono to pay thousands of dollars for the hotel accommodations, some meals, and

entertainment for the physicians and their guests while they were at the Cannes Conference.

31.    It was a further part of the conspiracy that various co-conspirators, including defendant **BRUENS**, authorized and caused a variety of personal gifts to be provided to the physicians and their guests who attended the Cannes Conference.

32.    It was a further part of the conspiracy that, after certain physicians rejected the Cannes offer, various co-conspirators advised certain of the physicians who had already been offered the all-expenses trip to the Cannes Conference that they would subsequently be asked to speak on behalf of Serono about the issues presented at the conference and about Serostim, and the physicians were paid separately for these speaking engagements.

## Overt Acts

In furtherance of this conspiracy, and to effect the objects thereof, defendants **BRUENS, STEWART, VAUGHN** and **SIROCKMAN** and other co-conspirators known and unknown to the Grand Jury, including Executive X and Adam Stupak, engaged in the following overt acts, among others, in the District of Massachusetts and elsewhere:

33.    On March 1, 1999, Executive X, together with defendants **BRUENS** and **STEWART**, met with the six Regional Directors, including defendants **VAUGHN** and **SIROCKMAN**, and with Adam Stupak and other M&IT employees at the Boston Harbor Hotel and advised them of the proposed plan to offer selected

physicians an all-expenses paid trip to the Cannes Conference in return for additional prescriptions of Serostim.

34.    On or about March 2, 1999, defendants **VAUGHN** and **SIROCKMAN** and other co-conspirators, including Adam Stupak, telephoned and sent e-mails to their respective sales forces passing forward the directions of defendants **BRUENS** and **STEWART** and advising their respective sales forces of the "$6m-6 Day" sales plan and the plan to offer the Cannes trip to certain physicians.

35.    On or about March 2 or 3, 1999, defendants **VAUGHN** and **SIROCKMAN** and other co-conspirators, including Adam Stupak, left Boston to return to their respective regions to implement the plan that was agreed upon at the Boston Harbor Hotel.

36.    On or about March 12, 1999, defendants **BRUENS** and **STEWART** left a voice-mail message for the Regional Directors, including defendants **VAUGHN** and **SIROCKMAN** and Adam Stupak, requesting confirmation of the physicians that Serono would be inviting to the Cannes Conference.

### The Florida Physicians

### The Offers to Drs. RL and P

37.    Between on or about March 1 and on or about March 3, 1999, various co-conspirators, including defendants **BRUENS, STEWART** and **VAUGHN,** caused a co-conspirator who was a Serono clinical consultant to visit Dr. RL, a physician in Florida who treated HIV positive and AIDS patients, and to offer Dr. RL the trip to the Cannes Conference in return for writing additional prescriptions of Serostim.

12

38.    Between on or about March 1, 1999 and on or about March 3, 1999, various co-conspirators, including defendants **BRUENS, STEWART** and **VAUGHN,** caused a co-conspirator who was a Serono clinical consultant to visit the office of Dr. P, a physician in Florida who treated HIV positive and AIDS patients, and to offer Dr. P the trip to the Cannes Conference in return for writing additional prescriptions of Serostim.

39.    On or about March 3, 1999, defendant **VAUGHN,** after learning that at least one doctor had reacted negatively to the offer of the Cannes trip in return for additional Serostim prescriptions, sent a voice-mail to defendants **BRUENS, STEWART** and **SIROCKMAN,** and to others, including Adam Stupak, in which she stated that at least one doctor told a clinical consultant that this program was "unethical and the very thing that the FDA looks for . . ." and further advised the recipients of the voice-mail that "I just wanted to let you know that we won't be doing this program in the south."

40.    On or about March 4, 1999, as part of the reporting requirements for the "$6m - 6 Day Plan," defendant **VAUGHN** reported via e-mail to Executive X and to defendants **BRUENS** and **STEWART** and others that Dr. P had written one (1) Serostim prescription on March 3, 1999, and that Dr. P had written seven (7) Serostim prescriptions on March 4, 1999.

41.    On or about March 13, 1999, defendant **VAUGHN** advised defendant **BRUENS** that Dr. P would attend the Cannes Conference and would need business-class airline tickets.

42.    On or about April 8, 1999, defendant **BRUENS** directed an employee in Norwell,

Massachusetts, to charge $7,846.64 on a corporate credit card to cover the cost of

Dr. P's round trip airfare, which had been booked by Serono's travel agency.

### The New Jersey Doctors

### The Offer to Dr. DC

43.    In or about March 1999, the exact dates being unknown, various co-conspirators,

including defendants **BRUENS, STEWART** and **SIROCKMAN,** caused a co-

conspirator who was a Serono clinical consultant to visit the office of Dr. DC, a

physician in New Jersey who treated HIV positive and AIDS patients, and to offer

Dr. DC the all-expenses paid trip to the Cannes Conference in return for gaining

clinical experience with at least thirty (30) Serostim patients before Dr. DC could

attend the conference.

### The Offer to Dr. AC

44.    In or about March 1999, the exact dates being unknown, various co-conspirators,

including defendants **BRUENS** and **STEWART,** caused defendant **SIROCKMAN**

to contact Dr. AC, a physician in New Jersey who treated HIV positive and AIDS

patients, and to offer to him the all-expenses paid trip to the Cannes Conference in

return for writing of additional prescriptions of Serostim.

45.    On or about April 15, 1999, various co-conspirators, including defendants

**BRUENS, STEWART** and **SIROCKMAN,** caused Dr. AC to receive a check in

the amount of $4,000 for airline tickets.

14

46.     On or about April 25, 1999, defendant **SIROCKMAN,** using his corporate expense account, paid for Dr. AC's transportation in a private limo service for Dr. AC's return to his residence from an airport in New York after the Cannes Conference.

### The New York Doctors

47.     Between on or about March 1, 1999 and on or about March 4, 1999, various co-conspirators, including defendants **BRUENS** and **STEWART,** caused Adam Stupak to visit the office of Dr. O, a physician in New York City who treated HIV positive and AIDS patients, and to offer Dr. O the trip to the Cannes Conference in return for his writing at least 10 additional prescriptions of Serostim.

48.     Between on or about March 1, 1999 and on or about March 4, 1999, various co-conspirators, including defendants **BRUENS** and **STEWART,** caused Adam Stupak to visit the office of Dr. G, a physician in New York City who treated HIV positive and AIDS patients, and to offer Dr G the trip to the Cannes Conference in return for his writing at least 10 additional prescriptions of Serostim.

49.     Between on or about March 1, 1999 and on or about March 4, 1999, various co-conspirators, including defendants **BRUENS** and **STEWART,** caused Adam Stupak to visit the office of Dr. W, a physician in New York City who treated HIV positive and AIDS patients, and to offer Dr W the all-expenses paid trip to the Cannes Conference in return for his writing at least 10 additional prescriptions of Serostim.

50.     On or about April 15, 1999, various co-conspirators including defendants **BRUENS** and **STEWART,** and Adam Stupak, caused a $4,000 check for airline tickets to be

issued to Dr. W, who had accepted the offer for the all-expenses paid trip to the Cannes Conference.

### Further Overt Acts by BRUENS

51. In or about March 15-19, 1999, during a presentation at Serono's National Sales meeting, defendant **BRUENS** announced the names of ten (10) physicians who were "US Invitees" to the Cannes Conference, including Dr. P in Florida; Dr. AC in New Jersey; and Drs. O, G and W in New York.

52. On or about April 24, 1999, defendant **BRUENS** charged 41030.00 French Francs ($6,733.02) on his corporate credit card for expenses incurred at the Moulin De Mougins as part of the entertainment for the physicians and their guests who attended the Cannes Conference.

All in violation of Title 18 United States Code, Section 371.

## COUNT TWO
### (OFFER OF REMUNERATION TO PHYSICIANS)

53.  The allegations set forth in Paragraphs 1-21, 33-36 & 37 are herein realleged and incorporated by reference.

54.  Between on or about March 1, 1999, and on or about March 3, 1999, in the District of Massachusetts and elsewhere, defendants

**JOHN BRUENS,**
**MARY STEWART, and**
**MELISSA VAUGHN**

did knowingly and willfully cause to be offered remuneration, directly and indirectly, overtly and covertly, in cash and in kind, to Dr. RL to induce Dr. RL to refer individuals, including Medicaid patients, to pharmacies for the furnishing of the drug Serostim, for which payments were made in whole and in part under state Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

**COUNT THREE**
**(OFFER AND PAYMENT OF REMUNERATION TO PHYSICIANS)**

55.    The allegations set forth in Paragraphs 1-21, 33-36, 38 & 41-42 are herein realleged and incorporated by reference.

56.    Between on or about March 1, 1999, and in or about December of 1999, in the District of Massachusetts and elsewhere, defendants

**JOHN BRUENS,**
**MARY STEWART, and**
**MELISSA VAUGHN**

did knowingly and willfully offer and pay, and cause to be offered and paid, remuneration, directly and indirectly, overtly and covertly, in cash and in kind, to Dr. P to induce Dr. P to refer individuals, including Medicaid patients, to pharmacies for the furnishing of the drug Serostim, for which payments were made in whole and in part under state Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

18

## COUNT FOUR
## (OFFER OF REMUNERATION TO PHYSICIANS)

57.   The allegations set forth in Paragraphs 1-21, 33-36 & 43 are herein realleged and

incorporated by reference.

58.   In or about March of 1999, the exact dates being unknown, in the District of

Massachusetts and elsewhere, defendants

**JOHN BRUENS,**
**MARY STEWART, and**
**MARC SIROCKMAN**

did knowingly and willfully cause to be offered remuneration, directly and

indirectly, overtly and covertly, in cash and in kind, to Dr. DC to induce Dr. DC to

refer individuals, including Medicaid patients, to pharmacies for the furnishing of

the drug Serostim, for which payments were made in whole and in part under state

Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A),

and Title 18, United States Code, Section 2.

19

## COUNT FIVE
### (OFFER AND PAYMENT OF REMUNERATION TO PHYSICIANS)

59.     The allegations set forth in Paragraphs 1-21, 33-36 & 44-46 are herein realleged and incorporated by reference.

60.     Between on or about March 1, 1999, and in or about December, 1999, in the District of Massachusetts and elsewhere, defendants

**JOHN BRUENS,**
**MARY STEWART, and**
**MARC SIROCKMAN**

did knowingly and willfully offer and pay, and cause to be offered and paid, remuneration, directly and indirectly, overtly and covertly, in cash and in kind, to Dr. AC to induce Dr. AC to refer individuals, including Medicaid patients, to pharmacies for the furnishing of the drug Serostim, for which payments were made in whole and in part under state Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## COUNT SIX
### (OFFER OF REMUNERATION TO PHYSICIANS)

61.  The allegations set forth in Paragraphs 1-21, 33-36 & 47 are herein realleged and incorporated by reference.

62.  Between on or about March 1, 1999, and on or about March 4, 1999, in the District of Massachusetts and elsewhere, defendants

**JOHN BRUENS and
MARY STEWART**

did knowingly and willfully cause to be offered remuneration, directly and indirectly, overtly and covertly, in cash and in kind, to Dr. O to induce Dr. O to refer individuals, including Medicaid patients, to pharmacies for the furnishing of the drug Serostim, for which payments were made in whole and in part under state Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## COUNT SEVEN
## (OFFER OF REMUNERATIONS TO PHYSICIANS)

63.     The allegations set forth in Paragraphs 1-21, 33-36 & 48 are herein realleged and

incorporated by reference.

64.     Between on or about March 1, 1999, and on or about March 4, 1999, in the District

of Massachusetts and elsewhere, defendants

**JOHN BRUENS** and
**MARY STEWART**

did knowingly and willfully cause to be offered remuneration, directly and

indirectly, overtly and covertly, in cash and in kind, to Dr. G to induce Dr. G to refer

individuals, including Medicaid patients, to pharmacies for the furnishing of the

drug Serostim, for which payments were made in whole and in part under state

Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A),

and Title 18, United States Code, Section 2.

**COUNT EIGHT**
**(OFFER AND PAYMENT OF REMUNERATION TO PHYSICIANS)**

65.    The allegations set forth in Paragraphs 1-21, 33-36 & 49-50 are herein realleged and

incorporated by reference.

66.    Between on or about March 1, 1999, and on or about April 15, 1999, in the District

of Massachusetts and elsewhere, defendants

**JOHN BRUENS** and
**MARY STEWART**

did knowingly and willfully cause to be offered and paid, remuneration, directly and

indirectly, overtly and covertly, in cash and in kind, to Dr. W to induce Dr. W to

refer individuals, including Medicaid patients, to pharmacies for the furnishing of

the drug Serostim, for which payments were made in whole and in part under state

Medicaid programs.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A),

and Title 18, United States Code, Section 2.

23

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; April 14, 2005 @ 2:00PM

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

24

Case 1:05-cr-10102-JLT    Document 1-2    Filed 04/14/2005    Page 1 of 8

JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**    **05 CR 10102 JLT**    U.S. District Court - District of Massachusetts

**Place of Offense:** Massachusetts    **Category No.** II    **Investigating Agency** FDA, FBI, HHS, DOL - POSTAL OIG

**City** Boston

**County** Suffolk    **Related Case Information:**

Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

**Defendant Name** John Bruens    Juvenile ☐ Yes ☒ No

**Alias Name** _____

**Address** 11504 Nantucket Parkway, San Diego, CA 92130

**Birth date (Year only):** 1957    **SSN (last 4 #):** 7778    **Sex** M **Race:** White    **Nationality:** U.S.A.

**Defense Counsel if known:** Thomas McC. Souther    **Address:** 787 Seventh Avenue, New York, NY 10019

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** Mary Elizabeth Carmody    **Bar Number if applicable** 074500

**Interpreter:** ☐ Yes ☒ No    **List language and/or dialect:** _____

**Matter to be SEALED:** ☐ Yes ☒ No

☐ Warrant Requested    ☒ Regular Process    ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____ ☐ Serving Sentence ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

**Charging Document:** ☐ Complaint ☐ Information ☒ Indictment

**Total # of Counts:** ☐ Petty _____ ☐ Misdemeanor _____ ☒ Felony Eight

**Continue on Page 2 for Entry of U.S.C. Citations**

☐    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** 4-14-05    **Signature of AUSA:** Mary Elizabeth C___

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number (To be filled in by deputy clerk):** _____

**Name of Defendant**   John Bruens _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. §371 | Conspiracy | 1 |
| Set 2 | 42 U.S.C.§ 1320a-7(b)(b)2 | Offers and Payments of Remunerations to Physicians | 2 - 8 |
| Set 3 | 18 U.S.C. §2 | Aiding and Abetting | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |

**ADDITIONAL INFORMATION:**

°⁄₈JS 45 (5/97) - (Revised USAO MA 3/25/02)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

Place of Offense:   Massachusetts                Category No.   II

City   Boston                                    Investigating Agency   FDA, FBI, HHS, DOL
                                                 – POSTAL OIG
County   Suffolk
                                Related Case Information:

                                Superseding Ind./ Inf. _____        Case No. _____
                                Same Defendant _____               New Defendant _____
                                Magistrate Judge Case Number _____
                                Search Warrant Case Number _____
                                R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Mary Stewart

Alias Name _____        Juvenile   ☐ Yes   ☒ No

Address   58 Union Street, North Andover, MA 01845

Birth date (Year only):   1961   SSN (last 4 #):   1279   Sex   F   Race: _____   Nationality: _____

Defense Counsel if known:   Mark Berman

Bar Number: _____                        Address:   One Riverfront Plaza, Newark,
                                                       NJ 07102-5496

**U.S. Attorney Information:**

AUSA   Mary Elizabeth Carmody

Interpreter:   ☐ Yes   ☒ No           Bar Number if applicable   074500

                                       List language and/or dialect: _____

Matter to be SEALED:   ☐ Yes   ☒ No

    ☐ Warrant Requested         ☒ Regular Process

Location Status:

Arrest Date: _____                                   ☐ In Custody

☐ Already in Federal Custody as _____
☐ Already in State Custody _____ in _____
☐ On Pretrial Release:   Ordered by _____   ☐ Serving Sentence   ☐ Awaiting Trial
                                                on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☒ Indictment

**Total # of Counts:**   ☐ Petty   ☐ Misdemeanor   ☒ Felony   Eight

            Continue on Page 2 for Entry of U.S.C. Citations

☐   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
    accurately set forth above.

Date:   4-14-05        Signature of AUSA:   _Mary Elizabeth C._

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**     <u>Mary Stewart</u> _____

**U.S.C. Citations**

| | <u>Index Key/Code</u> | <u>Description of Offense Charged</u> | <u>Count Numbers</u> |
|---|---|---|---|
| Set 1 | <u>18 U.S.C. §371</u> | <u>Conspiracy</u> | <u>1</u> |
| Set 2 | <u>42 U.S.C.§ 1320a-7(b)(b)2</u> | <u>Offers and Payments of Remunerations to Physicians</u> | 2 - 8 |
| Set 3 | <u>18 U.S.C. §2</u> | <u>Aiding and Abetting</u> | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |

**ADDITIONAL INFORMATION:**

%JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

Place of Offense: __Massachusetts__   Category No. ___II___   Investigating Agency  FDA, FBI, HHS, DOL – POSTAL OIG

City  __Boston__                     **Related Case Information:**

County  __Suffolk__    Superseding Ind./ Inf. _____   Case No. _____
                        Same Defendant _____   New Defendant _____
                        Magistrate Judge Case Number _____
                        Search Warrant Case Number _____
                        R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  __Melissa Vaughn__                  Juvenile   ☐ Yes   ☒ No

Alias Name  _____

Address  __673 West Hawthorn Street, Louisville, CO 80027-1114__

Birth date (Year only): __1962__  SSN (last 4 #): __0705__  Sex __F__  Race: _____  Nationality: _____

Defense Counsel if known:  __Adam S. Hofinger__         Address: __1200 Nineteenth Street, NW__
                                                              __Washington, DC 20036-2430__
Bar Number: _____

**U.S. Attorney Information:**

AUSA  __Mary Elizabeth Carmody__              Bar Number if applicable  __074500__

Interpreter:   ☐ Yes  ☒ No          List language and/or dialect: _____

Matter to be SEALED:   ☐ Yes  ☒ No

        ☐ Warrant Requested    ☒ Regular Process         ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____.
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☒ Indictment

**Total # of Counts:**   ☐ Petty _____  ☐ Misdemeanor _____  ☒ Felony __Three__

Continue on Page 2 for Entry of U.S.C. Citations

☐      I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
        accurately set forth above.

Date:  __4-14-05__        Signature of AUSA: _Mary Elizabeth Carmody_

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant**    Melissa Vaughn _____

**U.S.C. Citations**

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. §371 | Conspiracy | 1 |
| Set 2 | 42 U.S.C.§ 1320a-7(b)(b)2 | Offers and Payments of Remunerations to Physicians | 2- 8 |
| Set 3 | 18 U.S.C. §2 | Aiding and Abetting | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |

**ADDITIONAL INFORMATION:**

%JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**   05 CR 1 0 1 0 2 JLT   **U.S. District Court - District of Massachusetts**

| | | |
|---|---|---|
| **Place of Offense:** Massachusetts | **Category No.** ___II___ | **Investigating Agency** FDA, FBI, HHS, DOL ~POSTAL OIG |

**City** ___Boston___        **Related Case Information:**

**County** ___Suffolk___

Superseding Ind./ Inf. _____        Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name ___Marc Sirockman___        Juvenile    ☐ Yes   ☒ No

Alias Name _____

Address ___15 Covered Bridge Road, Flemington, NJ 08822-4902___

Birth date (Year only): ___1964___  SSN (last 4 #): ___8034___ Sex ___M___ Race: _____ Nationality: _____

**Defense Counsel if known:** ___Tracy A. Miner___        Address: ___One Financial Center,___
                                                                   ___Boston, MA 02111___

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** ___Mary Elizabeth Carmody___        Bar Number if applicable ___074500___

**Interpreter:**        ☐ Yes   ☒ No        List language and/or dialect: _____

**Matter to be SEALED:**        ☐ Yes   ☒ No

        ☐ Warrant Requested        ☒ Regular Process        ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____ .
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____ on _____

**Charging Document:**        ☐ Complaint        ☐ Information        ☒ Indictment

**Total # of Counts:**        ☐ Petty _____        ☐ Misdemeanor _____        ☒ Felony ___Three___

**Continue on Page 2 for Entry of U.S.C. Citations**

☐     I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: ___4/14/05___        Signature of AUSA: _Mary Elizabeth Carm_

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant     Marc Sirockman _____

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. §371 | Conspiracy | 1 |
| Set 2 | 42 U.S.C.§ 1320a-7(b)(b)2 | Offers and Payments of Remunerations to Physicians | 2 - 8 |
| Set 3 | 18 U.S.C. §2 | Aiding and Abetting | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |

ADDITIONAL INFORMATION: