UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | CIVIL ACTION:  01-CV-12257-PBS |
| ) | |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ) | |
| CLASS ACTIONS ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION
TO COMPEL PRODUCTION BY AMGEN, INC., WITH REQUEST
FOR EXPEDITED BRIEFING AND DISPOSITION**

## TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ......................................................................................3

    A.  Plaintiffs' Requests for Production ...........................................................3

    B.  Plaintiffs' Omnibus Requests for Production and the
        First Motion to Compel..............................................................................4

    C.  Plaintiffs' Efforts to Resolve Production Issues with
        Amgen Voluntarily ....................................................................................6

III. LAW & ARGUMENT..........................................................................................10

    A.  The Court Should Order Amgen to Produce the Requested
        Materials Forthwith.................................................................................10

    B.  The Court Should Order Sanctions Against Amgen..................................12

        1.  Amgen's objections to production should be disregarded.........13

        2.  Amgen should be ordered to pay a monetary sanction.............14

    C.  The Court Should Order Amgen to Pay Plaintiffs the Cost of
        Litigating This Motion to Compel ...........................................................15

IV. CONCLUSION....................................................................................................15

001534-16 88335 V1

## TABLE OF AUTHORITIES

### CASES

*Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989)....................................................................................13, 14

*Big Top USA, Inc. v. Wittern Group*,
183 F.R.D. 331 (D. Mass. 1998).........................................................................................14

*Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*,
106 F.R.D. 59 (D. Mass. 1985)....................................................................................13, 14

001534-16  88335 V1

# I.      INTRODUCTION

This is the second motion to compel that plaintiffs have filed recently against Amgen Inc. ("Amgen").  Given the press of the Track Two schedule, plaintiffs respectfully ask that this motion be decided on an expedited basis.  Toward that end, they also ask the Court to order that any opposition materials be filed and served no later than Monday, March 6, 2006.

Plaintiffs filed their first motion to compel against Amgen in October 2005.  That motion was necessary because as of the date it was filed, Amgen had not produced even one document[1] in response to requests for production served in March 2004.  By the time of the February 2, 2006 hearing on that motion, Amgen had finally produced certain documents to plaintiffs, and it considered its production complete.  But its production was anything but complete.  Rather, Amgen's document production was limited to certain items generated in the 1997-2001 time-frame, even though plaintiffs' requests for production had asked for a broad range of documents dating from 1991 through the present.

At the February 2, 2006 hearing, Amgen convinced the Court that plaintiffs' motion need not be decided because it had produced documents to plaintiffs and because the parties were still negotiating over further production.  In fact, however, the parties had met and conferred on multiple occasions by that time and had been unable to reach a voluntary resolution of their discovery dispute.  Communication subsequent to the February 2 hearing only re-affirmed that the parties were and are in disagreement over what would be a satisfactory supplemental production.

This second motion is necessary because of Amgen's continuing imposition of unjustifiable time-limits on its document production in response to Plaintiffs' Omnibus Requests

---

[1] Throughout this memorandum, plaintiffs distinguish between "document" production and "data" production.  Where plaintiffs refer to "document" production, they mean production of requested material other than data, such as e-mails, sales activity reports, contracts, etc.

- 1 -

for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to All Other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery, dated March 31, 2004 ("Omnibus Requests for Production" or "Omnibus Requests").  It also is necessary because Amgen is insisting on producing "samplings" from various document categories, rather than the complete array of documents requested.

Accordingly, plaintiffs move the Court for an order:

a) compelling Amgen to begin immediately a rolling supplemental production in accordance with the requests made by plaintiffs, and to complete production by April 15, 2006, of all responsive and non-privileged documents and other materials, including data, called for by plaintiffs' Omnibus Requests for Production; plaintiffs' IMS discovery requests (as referenced later in this memorandum); and plaintiffs' limited document requests made of Amgen employees (or former employees) whose depositions plaintiffs have noted, or whose depositions plaintiffs will note as they complete review of Amgen's document production, to the extent Amgen has not yet produced any such responsive and non-privileged documents and other materials to plaintiffs;

b) requiring Amgen to pay a sanction of $100,000.00 to the plaintiffs, or, in the alternative, to the Court, for Amgen's flagrant disregard of Case Management Order ("CMO") No. 10 and its obligations under the Federal Rules of Civil Procedure, which has resulted in serious prejudice to the plaintiffs; and

c) requiring Amgen to reimburse plaintiffs for the costs, including attorneys' fees, incurred in filing and litigating this motion.

001534-16  88335 V1

## II.      STATEMENT OF FACTS

### A.      Plaintiffs' Requests for Production

Plaintiffs have served all Track Two defendants, including Amgen, with various requests for production.  Insofar as Amgen is concerned, these include:  Plaintiffs' Request for Production of Documents to Aventis, Abbott, Amgen, Boehringer, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough and Interrogatories to *All* Defendants Subject to Discovery, ***dated December 3, 2003***; Plaintiffs' Second Request for Production of Documents to Aventis, Abbott, Amgen, BMS, Johnson & Johnson, GSK, Hoffman, Immunex and Schering-Plough, dated *December 19, 2003*[2]; Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to All Other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery, ***dated March 31, 2004***; Plaintiffs' Request for Production to Defendants Regarding HHS ASPs, dated ***May 26, 2004***; and Plaintiffs' Third Request for Production to All Defendants, dated ***July 14, 2004***.  (Declaration of Steve W. Berman in Support of Motion to Compel Production of Documents by Amgen ("Berman Decl."), ¶ 2 and Exs. A and B (Omnibus Requests and responses and objections thereto) (declaration and exhibits originally submitted in support of October 2005 motion to compel and filed at Docket No. 1822).)

Also, on November 15, 2005, plaintiffs served the Track Two defendants, including Amgen, with their Amended and/or Supplemental Request for Production of Documents to Phase 2 Defendants Relating to IMS Data ("IMS discovery requests").  These IMS discovery

---

[2] As propounded to Amgen, plaintiffs' December 3, 2003 and December 19, 2003 requests for production effectively merged into the Omnibus Requests for Production that are the subject of this motion.

requests seek the production of various sales and financial data compiled by IMS Health, a leading data collector and provider for the pharmaceutical industry.

In addition, plaintiffs in mid-January 2006 served Amgen with notices of depositions for employees whose names were ascertained during review of Amgen's recently produced documents.  These notices contained limited document requests to the deponents.  Plaintiffs anticipate noting further depositions of Amgen present and former employees, and they anticipate appending limited document requests to the notices of deposition they will send to those employees, as they continue to review Amgen's recent document production.

**B.      Plaintiffs' Omnibus Requests for Production and the First Motion to Compel**

Plaintiffs served their Omnibus Requests for Production on Amgen in ***March 2004***, though some of the individual requests making up the Omnibus Requests were propounded to Amgen earlier.  When plaintiffs filed their first motion to compel, Amgen had produced no documents, including "undisputed documents" as referenced in this Court's CMO No. 10. (Berman Decl., ¶ 4, Dkt. No. 1822.)  Neither had Amgen filed a motion with the magistrate judge regarding any of plaintiffs' discovery requests, including plaintiffs' Omnibus Requests. (*Id.*)

Amgen's failure to produce any documents by October 2005 was astonishing, given that even in its blame-plaintiffs account of events, Amgen states that it had "swept" for responsive documents ***in or around January 2004***; it had received a narrowed version of plaintiffs' discovery requests ***in May 2005***[3]; and it supposedly had begun reviewing documents ***in June 2005***.[4]  Amgen's wrongful conduct was especially egregious given that the deadline for Track

---

[3] *See* discussion at n.4 and at Section II.C, *infra*.

[4] Amgen claimed to have begun reviewing "potentially responsive documents" in mid-June of 2005.  (Declaration of Robert F. Lopez in Support of Second Motion To Compel Production of Documents by Amgen ("Lopez Decl."), Ex. A at p. 8; Lopez Decl., Ex. C, ¶ 15.)  Amgen claimed that "[s]ince that time, it ha[d] devoted well over 3000

- 4 -

Two fact discovery was December 3, 2005, the extension of which deadline Amgen had opposed.[5]  (*Id.*)

Frustrated and prejudiced by Amgen's failure to produce even a single document in response to plaintiffs' requests,[6] (*see* Berman Decl., ¶ 3, Dkt. No. 1822), plaintiffs filed a motion to compel in late October 2005.  As plaintiffs showed, Amgen, in failing to produce any documents – even "undisputed documents" – had displayed a complete disregard of CMO No. 10.[7]  That order provides in pertinent part:

> A responding party to an initial document request shall complete production of all documents within sixty (60) days of service of such request.  Any dispute over the document request (i.e., overbreadth or burden) shall be presented to the magistrate judge within 30 days after service of the request after the parties have conferred.  Even if there is a dispute over a document request, the undisputed documents shall be produced within 60 days.

(Berman Decl., Ex. C, Dkt. No. 1822.)

---

hours to the review, and that it expect[ed] to begin a rolling production of documents [in October 2005]."  (Lopez Decl., Ex. C, ¶ 15.)

What is more, Amgen recently claimed that it first conducted "a sweep" for responsive documents some two years ago. (Lopez Decl., Ex. B.)

[5] *See generally* Lopez Decl., Ex. A.  Since that time, Amgen has joined in Track Two Defendants' Submission Regarding Discovery Schedule ("Submission").  Though that Submission advocates a modification of the Track Two discovery schedule, it does not go far enough, especially with regard to Amgen.  For example, even though Amgen did not "complete" its limited production until January 30, 2006, Amgen wants to limit plaintiffs only to that discovery served before December 3, 2005.  This, of course, would deny plaintiffs the opportunity to depose individuals whose names were first revealed via Amgen's late production.  As of the date of this motion, defendants' Submission remains pending.

[6] Though Amgen acquired Immunex Corporation ("Immunex") in or about July 2002, a distinction is to be made between Amgen and Immunex.  Amgen's behavior, and not that of Immunex, is the subject of the instant motion.

As of the date that plaintiffs filed their previous motion to compel, all that Amgen had produced was a limited amount of transactional data, and then only after considerable prodding by the plaintiffs.  (*Id.*)

[7] Prior to entry of CMO No. 10 on March 25, 2004, defendants had been dilatory in producing documents and often would simply ignore plaintiffs' attempts even to meet and confer.  Thus, plaintiffs urged that the Court impose deadlines for production of documents.

It was not until after plaintiffs had filed their motion to compel that Amgen began

producing documents.  On *October 31, 2005*, plaintiffs saw the first documents from among

Amgen's slow-rolling production.  (Lopez Decl., ¶ 2.)

And slow that production was.  In spite of an earlier representation by Amgen that it

expected to "largely complete" its production by December 3, 2006,[8] Amgen did not even

purport to "complete" its unilaterally limited production *until January 30, 2006*.  (Lopez Decl.,

Ex. D.)

**C.**     **Plaintiffs' Efforts to Resolve Production Issues with Amgen Voluntarily**

But Amgen's offenses are not limited to an egregiously late production.  As plaintiffs

reviewed Amgen's rolling production, it became apparent that Amgen had turned over only

certain documents generated within the 1997-2001 time-frame.  (Lopez Decl., ¶ 3.)  It also

became apparent that Amgen had produced only samplings of some – if not all – categories of

responsive documents.  (Lopez Decl., ¶¶ 4-5.)  And there were other anomalies; for example,

Amgen had produced sales activity reports prepared by certain of its salespeople (as opposed to

reports prepared by all salespeople, as requested), and that all of these reports were from

salespeople based in the eastern half of the United States.  (Lopez Decl., ¶ 5.)

To address these issues, plaintiffs asked for a telephonic discovery conference in early

January 2006.  (Lopez Decl., ¶ 6.)  The discussions that ensued were framed in large part not

only by plaintiffs' Omnibus Requests themselves, but also a memorandum – entitled "Re: Initial

Amgen Discovery" – that plaintiffs' counsel had prepared at Amgen's request, which was meant

to narrow and clarify the scope of Amgen's first wave of production.  (Lopez Decl., Ex. E

("Notargiacomo memo") ("Below I list by category, some of the documents identified in the

---

[8] Lopez Decl., Ex. C, ¶ 15.

30(b)(6) deposition conducted last year of Amgen, which I would suggest should be part of the **initial discovery** Amgen should produce **in its first waive** [sic].") (emphasis added).)  This memorandum had been given to Amgen's counsel in May 2005.  (Lopez Decl., ¶ 6.)

As the parties conferred, a serious point of contention was Amgen's insistence that it was justified in producing only those documents generated during the years 1997 through 2001. (Lopez Decl., ¶ 7.)  According to counsel for Amgen, asking Amgen to go beyond that time-frame was more than plaintiffs had required of other defendants.  (*Id.*)  Also, counsel for Amgen advised that Amgen believed it was justified in withholding documents outside the 1997-2001 time-frame because of the statute of limitations on the back-end (1997) and a legal theory based on its view of plaintiffs' allegations on the front-end (2001).  (*Id.*)

Plaintiffs explained that to the contrary, other defendants had produced documents from well outside the 1997-2001 time-frame.  (Lopez Decl., ¶ 8.)  Also, plaintiffs explained their disagreement with Amgen's stated justifications for hewing to the 1997-2001 time-frame.  (*Id.*)

Counsel for plaintiffs also repeatedly asked counsel for Amgen whether Amgen could identify any extraordinary burden, as distinct from the ordinary burden that unfortunately accompanies document production in any large case, attendant to producing responsive and discoverable documents to the full extent requested by plaintiffs.  (Lopez Decl., ¶ 9.)  Counsel could identify none.  (*Id.*)  So plaintiffs themselves undertook to analyze the transcripts of 30(b)(6) depositions taken earlier in the case, in conjunction with Amgen's written and verbal objections to greater production, to see if they could find any justification for Amgen's unwillingness to comply fully with plaintiffs' discovery requests.  (*Id.*)  They could find none. (*Id.*)

Another important issue concerned Amgen's apparent production of only "samplings" of various categories of documents. (Lopez Decl., ¶ 10.)  This decision to produce only "samplings" of documents,[9] whose parameters were decided solely by Amgen, helps explain why, to-date, Amgen has produced less than 44,000 pages of documents (on compact disks), even as fellow defendants have produced hundreds of thousands, and even in the case of some defendants, over one million, pages of responsive documents.  (*Id.*)  Though plaintiffs have asked Amgen for an accounting of where it has produced mere samplings of documents within given categories, Amgen has yet to respond, leaving plaintiffs to guess and surmise.  (Lopez Decl., Ex. G at p. 4.)

During the meet-and-confer process, the Court issued its final order on class certification as to the Track One defendants.  (Lopez Decl., Ex. H.)  This decision only underscored the propriety of the time-scope of plaintiffs' various document requests, for it certified classes from 1991 through January 1, 2005 in some instances and through the present date in another.  (Lopez Decl., ¶ 11.)

Also during the course of the parties' discussions on these discovery issues, counsel for Amgen expressed a desire to see if the parties could reach an agreement that would include calling off the February 2, 2006 hearing on plaintiffs' initial motion to compel.  (Lopez Decl., ¶ 12.)  As soon as plaintiffs finished their own good-faith analysis as to whether they were

---

[9] In his e-mail of February 17, 2006, to plaintiffs' counsel, counsel for Amgen states: "What Amgen has offered in an effort to resolve the issue of time-frame is to supplement its prior responses to include pre-1997 and post-2001 documents, as set out in my past correspondence and emails.  Where sampling was the agreed-upon convention previously, Amgen intends to use and is using the convention in supplementing its prior productions (and is willing to discuss sample size, etc.)  Amgen is not agreeing, as your most recent email seems to suggest, to a supplemental production responsive to plaintiffs' original omnibus requests, without regard to Amgen's prior objections and without regard to the agreed upon approach to production reached nine months ago."  (Lopez Decl., Ex. F.)

While counsel for Amgen refers to "sampling" as having been the "agreed-upon convention previously," at least in some unspecified instances, Amgen has not pointed to an agreement whereby plaintiffs acquiesced in accepting mere samplings of categories of documents.  Certainly the Notargiacomo memo, which was sent along to Amgen's counsel in May 2005, does not speak in terms of "samplings."  (Lopez Decl., Ex. E.)  Moreover, the Notargiacomo memo, as it states, was only meant to apply to the first wave of Amgen's production in response to plaintiffs' Omnibus Requests.

- 8 -

asking anything extraordinarily burdensome of Amgen, they communicated an offer to Amgen, which, if accepted, would have resulted in plaintiffs removing from the Court's schedule the hearing on their first motion to compel.  (Lopez Decl., Ex. G.)  By this time, the parties had engaged in multiple telephone conferences and multiple exchanges of letters and messages, and, but for getting an answer from Amgen to plaintiffs' proposal, the meet-and-confer period was over.  (*Id*.)

Amgen did not accept plaintiffs' offer prior to the hearing, so both its counsel and counsel for plaintiffs attended the hearing before Magistrate Judge Bowler.  (Lopez Decl., ¶ 13.) Amgen's counsel expressed his belief that the meet-and-confer process was ongoing, even though plaintiffs had advised him prior to the hearing that their offer was a final offer and represented their last attempt at compromise.  (*Id*.)  Amgen's counsel also advised the Court that it was working on other discovery issues raised by the plaintiffs.  (*Id*.)

The Court indicated in response that there seemed to be no present controversy requiring adjudication, but Judge Bowler advised the parties to come back to the Court if they required assistance down the road.  (Lopez Decl., ¶ 14.)  In fact, the parties now urgently require such assistance.  (*Id*.)  Since the hearing on plaintiffs' first motion to compel, Amgen has agreed vaguely to make a broader production in response to plaintiffs' Omnibus Requests, but even resolving the vagueness in the broadest possible manner, its agreement still does not go far enough.  (Amgen has agreed to make a supplemental production of certain subsets, or samplings, of materials requested by plaintiffs, but only from the 1991 through January 1, 2004 time-frame. (Lopez Decl., ¶ 14 and Exs. B and F.))

There is also the matter of plaintiffs' requests for production of IMS data and reports. (Lopez Decl., ¶ 15 and Ex. I.)  Amgen has produced certain material in response to these

requests, but again, apparently limited by the 1997-2001 time-frame.  (Lopez Decl., ¶ 15.)

Amgen has indicated that it is willing to produce more IMS data and reports, but that production

will be limited only to the 1991-January 1, 2004 time-frame; what is more, plaintiffs are unsure

as to whether Amgen has produced, and proposes to produce, mere "samplings" of this data.

(Lopez Decl., ¶ 15, Ex. B at p. 3, and Ex. F.)

Also, Amgen has recently objected to notices of deposition propounded to it after

plaintiffs received and began reviewing Amgen's limited document production.  (Lopez Decl.,

¶ 16 and Exs. J-K.)  While Amgen has indicated that it is willing to go forward with these

depositions, it now objects to producing the limited array of documents requested in the

deposition notices, purportedly because these requests were made after the December 3, 2005

Track Two discovery cutoff – even though Amgen did not begin producing documents until late

2005. (Lopez Decl., ¶ 16.)  These positions are likewise unreasonable and unacceptable to the

plaintiffs, and, as with Amgen's positions as to plaintiffs' Omnibus Requests, form a part of the

instant motion to the Court.

### III.    LAW & ARGUMENT

### A.    The Court Should Order Amgen to Produce the Requested Materials Forthwith

There is nothing special about Amgen that should exempt it from the range of production

required of other defendants in this case.  Why, for example, should it be sufficient for Amgen to

produce mere samples of responsive documents, and only from a short time-frame of its

choosing, when other defendants have done much more?  Whatever Amgen's contrived and self-

serving excuses, this Court should order Amgen to produce *all* documents and other materials,

including data, responsive to plaintiffs' Omnibus Requests for Production; plaintiffs' IMS

discovery request; and plaintiffs' limited document requests made of Amgen employees (or

former employees) whose depositions plaintiffs have noted or will note upon completion of their

review of Amgen's production.  In addition, the Court should order a reasonable extension of the

discovery schedule as between Amgen and plaintiffs, so that all of this can be completed in as

prompt and orderly a manner as is now possible.

Plaintiffs have requested documents and other materials, including data, in their Omnibus

Requests, and otherwise, ***spanning the time-frame from January 1, 1991 to the present***.[10]

Amgen has known about the time-scope of these requests for production for years.  Similarly, in

plaintiffs' IMS discovery requests, plaintiffs have asked for data and reports spanning from the

launch of a given drug through the present.  Yet Amgen insists that the proper time-frame for

discovery is 1997-2001,[11] even in the face of the Court's recent class-certification decision

ordering class periods from 1991 through January 1, 2005 and beyond.  The parties have reached

an impasse[12] as to the time-scope for production, and given the press of the pre-trial schedule,

plaintiffs urgently require the Court's aid to move past it.

---

[10] Plaintiffs' IMS discovery requests, however, seek data and reports from the launch of the specified drugs through the present.

[11] As indicated above, Amgen did, however, recently agree to produce select documents from the 1991 through January 1, 2004 time-frame.  (Lopez Decl., Exs. B, F.)  But Amgen still has not provided justification for cutting-off production at January 1, 2004.  Moreover, it still is insisting on providing only "samplings" of various unidentified categories of documents.  (Lopez Decl., Exs. B, F.)

Again, the time-scope for plaintiffs' discovery requests has always been 1991 through the present, if not longer (as in the case of their IMS discovery requests).  That time-frame derives from plaintiffs' complaint and subsequent amended complaints.

None of this is a surprise to Amgen.  Indeed, the Court's Track One class certification order implements a class period of January 1, 1991 through January 1, 2005 in certain instances and January 1, 1991 through the present in another.  Given these class periods, and the fact that it is certainly conceivable that relevant, let alone discoverable, documents were generated prior to 1991 and through the present, there is no compelling reason to truncate production at January 1, 2004, and certainly Amgen has shown none.

[12] Amgen has agreed to produce more data, but it is still not clear precisely how much additional responsive data Amgen has, nor is it clear how much of that responsive data that Amgen is actually agreeing to produce (*See* Lopez Decl., Exs. B, F.)  Given the back and forth that has gone on between plaintiffs and Amgen on this matter, given the limited time with which the parties have to work, and given the inability of plaintiffs and Amgen to reach a comprehensive (or even comprehensible) deal, plaintiffs submit that the best and wisest course for this Court to take is simply to order that Amgen produce all responsive and non-privileged data, as well as documents, as soon as possible.

- 11 -

Accordingly, plaintiffs ask for an order compelling Amgen to produce promptly all of the material that plaintiffs have requested in their Omnibus Requests for Production[13]; all of the material that plaintiffs have requested in their requests for IMS data and reports; and all of the documents that plaintiffs have requested in their January 2006 deposition notices to various Amgen employees.  *See* Fed. R. Civ. P. 34(b) ("The party submitting the request [for production] may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested."); Fed. R. Civ. P. 37(a)(2)(B).

**B.     The Court Should Order Sanctions Against Amgen**

Plaintiffs submit that the egregiousness of Amgen's conduct calls for significant sanctions.  Not only has Amgen violated its duties under the Federal Rules of Civil Procedure, but also it has grossly violated this Court's CMO No. 10.  What is more, as plaintiffs explained in support of their first motion to compel (Docket No. 1821), Amgen cynically invoked "ongoing discovery" that was supposedly occurring under this Court's auspices in order to avoid its responsibilities in a state case, even when, by its own admission, it was doing nothing to respond to discovery requests propounded here.  (*See generally* Declaration of Donald E. Haviland, Jr., in Support of Plaintiffs' Motion To Compel Production by Amgen Inc. and exhibits thereto (declaration and exhibits originally submitted in support of October 2005 motion to compel and filed at Docket No. 1823).)  These actions not only show a disregard for this Court's processes

---

[13] As plaintiffs have indicated, they provided a memorandum to Amgen in May 2005, which was meant to narrow and clarify Amgen's initial wave of production in response to plaintiffs' Omnibus Requests for Production.  Had Amgen promptly produced documents in response to the Notargiacomo memo (bearing in mind that Amgen itself claims to have done a sweep for all responsive documents over a year and a half ago), then plaintiffs could have reviewed those documents and determined what further production was necessary in response to plaintiffs' Omnibus Requests.  Amgen did not make a prompt and complete production in response to the Notargiacomo memo, however, leaving plaintiffs now to move for the only relief that is practical given the press of the schedule: complete production of all responsive documents in response to plaintiffs' Omnibus Requests as soon as possible.

and dignity, but also they have resulted in substantial prejudice to the plaintiffs as they prepare
their case for trial.  (Berman Decl., ¶ 6, Dkt. No. 1822.)

December 3, 2005, the Court's original Track Two fact discovery cutoff, has come and
gone, thanks to Amgen's dilatory conduct and evasion of responsibility.  Now Amgen apparently
thinks it can escape much of its duty under the rules of discovery and this Court's orders.  As
plaintiffs asked in support of their first motion to compel, could Amgen's motives be any more
transparent?  Patently it has sought to run out the clock, or at the least to distract and vex
plaintiffs by forcing them to perform a tremendous amount of work even as they should be able
to concentrate on other aspects of this case.  Neither Amgen's disregard of its legal obligations,
nor its cynical strategy, should be condoned.  Rather, Amgen's conduct should be dealt with in a
manner commensurate with its repugnance.

### 1.    Amgen's objections to production should be disregarded

First, plaintiffs ask the Court to treat all of Amgen's objections to production in response
to plaintiffs' Omnibus Requests as waived and of no moment.  *All* responsive and non-privileged
documents should be produced, whatever objections Amgen might have made to production.
Again, to this day Amgen has not made a full and complete production of documents and data
responsive to discovery requests made in 2004 and previously, and it did not produce a single
document until October 31, 2005.  Its outrageous refusal to produce discoverable material as
requested is sanctionable under this Court's inherent power to address such misconduct on the
part of a litigant.  *See*, *e.g.*, *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989)
(indicating that it is beyond question that a district court has the inherent power to manage its
affairs, including "the ability to do whatever is reasonably necessary to deter abuse of the judicial
process") (citation omitted); *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*, 106
F.R.D. 59, 69-70 (D. Mass. 1985) (discussing court's inherent power to impose sanctions, and

indicating that such power "may be exercised to sanction non-production of documents even when no order compelling production pursuant to Rule 37(a)(2), Fed. R. Civ. P., was obtained") (citations omitted). Surely the prejudice that has accrued to plaintiffs in terms of a detraction from their ability to work on pre-trial and trial matters in an orderly fashion more than justifies sanctions, as does Amgen's affront to this Court's dignity in terms of flouting the rules of civil procedure and this Court's CMO No. 10.

### 2. Amgen should be ordered to pay a monetary sanction

Second, the Court should sanction Amgen's conduct. As with Amgen's objections to production, the Court's inherent powers to manage its affairs, including the discovery process, should also be invoked to grant plaintiffs' request that Amgen be sanctioned monetarily for its conduct. *Aoude*, 892 F.2d at 1119; *Petroleum Ins.*, 106 F.R.D. at 69-70.

Plaintiffs ask that Amgen be ordered to pay them $100,000.00 as a sanction for Amgen's utter disregard of the discovery process. In the alternative, if the Court is not inclined to order Amgen to pay $100,000.00 to plaintiffs, notwithstanding the serious prejudice that Amgen's conduct has caused to plaintiffs, it should order Amgen to pay that sum to the Court. While there is no doubt that $100,000.00 is a significant sum of money, the sum is commensurate with the outrageousness of Amgen's conduct. After all, not only has Amgen flagrantly violated the civil rules as well as a specific order of this Court (CMO No. 10), but it also is plainly maneuvering to deny plaintiffs the right to support their case against it. In addition, Amgen invoked in a state court case supposedly "ongoing discovery" going on under this Court's banner when it was actually doing nothing to respond to plaintiffs' Omnibus Requests at all.

Furthermore, the size of the sanction will serve to deter other litigants from similar conduct of their own in the future. *See Big Top USA, Inc. v. Wittern Group*, 183 F.R.D. 331, 342 (D. Mass. 1998) (even the ultimate sanction of dismissal is warranted "'in appropriate cases, not

merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent'") (citations omitted).  Simply put, the sanction is not so small that it will be seen either by Amgen or other litigants as a mere slap on the hand.

Nor is the requested sanction so large as to cause any serious or lasting harm to Amgen financially.  Amgen is a major pharmaceutical manufacturer that cannot seriously contend that paying a sanction in the amount of $100,000.00 – a sanction brought about by its own calculated conduct – will hurt its bottom line.  The sanction should be ordered as requested.

**C.   The Court Should Order Amgen to Pay Plaintiffs the Cost of Litigating This Motion to Compel**

Finally, plaintiffs ask for an order requiring Amgen to pay the reasonable costs of making and prosecuting this motion, including attorneys' fees.  Fed. R. Civ. P. 37(a)(4)(A).  Amgen had ample opportunity to avoid this motion, either by producing discoverable material much earlier, as it should have done, or by agreeing with plaintiffs during the meet-and-confer process to the sort of production to which plaintiffs are plainly due.

## IV.   CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully urge the Court to issue an order:

a)  compelling Amgen to begin a rolling production immediately of ***all*** responsive and non-privileged documents and other materials, including data, not yet produced but called for by plaintiffs' Omnibus Requests for Production; plaintiffs' IMS discovery requests; and plaintiffs' limited document requests made of Amgen employees (or former employees) whose depositions

- 15 -

plaintiffs have noted or will note upon completion of review of Amgen's production,[14] and to complete that production no later than April 15, 2006;

b)  requiring Amgen to pay a sanction of $100,000.00 to the plaintiffs, or, in the alternative, to the Court, for Amgen's flagrant disregard of CMO No. 10 and its obligations under the Federal Rules of Civil Procedure, which conduct has prejudiced plaintiffs as they prepare for trial and otherwise prosecute this case, and for its manipulation of the discovery process; and

c)  requiring Amgen to reimburse plaintiffs for the costs, including attorneys' fees, incurred in filing and litigating this motion.

### RULE 37.1 CERTIFICATION

As set forth in this memorandum, plaintiffs have complied with the provisions of Rule 37.1 regarding discovery disputes.

DATED:  February 27, 2006

By____**/s/ Steve W. Berman**_____
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

---

[14] These documents and materials include, but are by no means limited to, those which were generated in, or which relate to, certain legal proceedings which took place between Amgen and fellow defendant Ortho Biotech.  Amgen is well aware of plaintiffs' ongoing efforts to obtain these documents and materials, which are a subset of documents and materials requested in plaintiffs' Omnibus Requests, and plaintiffs reserve the right to ask for this Court's assistance as necessary as they continue to try to obtain them.

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

- 17 -

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR
PLAINTIFFS**

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL PRODUCTION BY AMGEN INC., WITH REQUEST FOR EXPEDITED BRIEFING AND DISPOSITION** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 27, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By  **/s/ Steve W. Berman**_____
     Steve W. Berman
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
     1301 Fifth Avenue, Suite 2900
     Seattle, WA  98101
     (206) 623-7292

001534-16 88335 V1