UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) | 
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

**DECLARATION OF ROBERT F. LOPEZ IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL PRODUCTION BY AMGEN, INC., WITH REQUEST FOR EXPEDITED BRIEFING AND DISPOSITION**

Robert F. Lopez duly declares as follows:

1. I am one of the attorneys representing plaintiffs in this matter.

2. Plaintiffs did not begin receiving documents in response to their Omnibus Requests for Production to defendant Amgen, Inc. ("Amgen") until after they filed their first motion to compel in late October 2006. The first compact disk, containing 13,418 pages, was dated October 31, 2005 and arrived at our offices on November 1, 2005. Other compact disks arrived in November and December of 2005, with the last disk, dated January 30, 2006, arriving on or about January 31, 2006. This slow-rolling production resulted in the turnover of less than 44,000 pages of documents combined.

3. During the course of reviewing the documents on the compact disks that Amgen produced, we discovered that nearly all, if not all, of the documents were restricted to those dated during the 1997-2001 time-frame.

4. As we reviewed the documents in question, we also began to question, due to the paucity of documents received, whether Amgen had produced all responsive, non-privileged

documents in various document categories even for the 1997-2001 time-frame. Our suspicions would be confirmed when counsel for Amgen, Hank Young, later revealed that Amgen had produced only samplings of some if not all categories of documents (we are seeking clarification of the actual situation from Mr. Young, but he has not yet responded). (*See also* Ex. F to this declaration.)

5. For example, one category of documents produced by Amgen were salesperson activity reports from its so-called Millennium and Orion systems. Yet as we (plaintiffs' lawyers) reviewed the documents, we noticed that there were no Orion reports from salespersons based in the Western United States. When I first raised what we were seeing with Mr. Young during one of our meet-and-confer telephone conferences, he indicated that he did not know why production would be limited only to Eastern states' salespeople. He assured me that there had been no intentional omission of Western salespeople. Then, during another telephone conference, he speculated that perhaps it was because Amgen had produced only reports from top salespeople, and that perhaps Amgen's top salespeople were all based in the Eastern states. Later, Mr. Young seemed to confirm that Amgen had produced only a sampling of these sales activity reports, and only of top salespeople. Apparently Amgen had decided that these were the only reports it intended to produce. Again, *we* raised the issue as to comprehensiveness of production. It was only after we raised the issue that we learned that Amgen had chosen to produce only a sampling of documents. To-date, Mr. Young apparently has not completed his investigation as to why exactly Amgen produced only sales activity reports from Eastern-states salespeople. If he has in fact completed his investigation, he has yet to apprise plaintiffs of the results.

6. As indicated in the last preceding paragraph, Mr. Young and I have met and conferred in an effort to resolve the parties' differences and to avoid plaintiffs' second motion to

compel.  The first of these multiple conferences took place in early January 2006, at plaintiffs' request.  These discussions were framed in large part not only by plaintiffs' Omnibus Requests for Production, which plaintiffs served on Amgen *in March 2004*, but also by a memorandum that plaintiffs had prepared at Amgen's request, which was meant to narrow and clarify the scope of Amgen's first wave of production.  The memorandum, authored by another lawyer at Hagens Berman Sobol Shapiro LLP, Ed Notargiacomo, was entitled "Re:  Initial Amgen Discovery."  Plaintiffs' counsel sent it to Amgen's counsel in May 2005.  It began:  "Below I list by category, some of the documents identified in the 30(b)(6) deposition conducted last year of Amgen, which I would suggest should be part of the *initial discovery* Amgen should produce *in its first waive* [sic]."  (*Id*. (emphasis added).)

7. A serious point of contention during my telephone conferences with Mr. Young was Amgen's insistence that it was justified in producing only those documents generated during the years 1997 through 2001.  According to Mr. Young, asking Amgen to go beyond that time-frame was more than plaintiffs had required of other defendants.  Also, Mr. Young advised that Amgen believed it was justified in withholding documents outside the 1997-2001 time-frame because of the statute of limitations on the back-end (1997) and a legal theory based on its view of plaintiffs' allegations on the front-end (2001).

8. I explained that to the contrary, other defendants had produced documents from well outside the 1997-2001 time-frame.  Also, I explained plaintiffs' disagreement with Amgen's stated justifications for hewing to the 1997-2001 time-frame.

9. I also repeatedly asked Mr. Young whether Amgen could identify any extraordinary burden, as distinct from the ordinary burden that unfortunately accompanies document production in any large case, attendant to producing responsive and discoverable

documents to the full extent requested by plaintiffs.  Counsel could identify none.  So I analyzed the transcripts of 30(b)(6) depositions taken earlier in the case, in conjunction with Amgen's written and verbal objections to greater production, to see if I could find any justification for Amgen's unwillingness to comply fully with plaintiffs' discovery requests.  I could find none.

10. Another issue that Mr. Young and I discussed was Amgen's apparent production of only "samplings" of various categories of documents.  This decision to produce only "samplings" of documents, whose parameters were decided solely by Amgen, helps explain why, to-date, Amgen has produced less than 44,000 pages of documents, even as fellow defendants have produced hundreds of thousands, and even in the case of some defendants, over one million, pages of responsive documents.  Though plaintiffs have asked Amgen for an accounting of where it has produced mere samplings of documents within given categories, (*see* Ex. G to this declaration), Amgen has yet to respond, leaving plaintiffs to guess and surmise.

11. During the meet-and-confer process, the Court issued its final order on class certification as to the Track One defendants.  (*See* Ex. H to this declaration.)  As I explained to Mr. Young, the class certification order only underscored the propriety of the time-scope of plaintiffs' various document requests, for it certified classes from 1991 through January 1, 2005 in some instances and through the present date in another.

12. Also during the course of my discussions with Mr. Young on discovery issues, Mr. Young expressed a desire to see if the parties could reach an agreement that would include calling off the February 2, 2006 hearing on plaintiffs' initial motion to compel.  As soon as I finished plaintiffs' own good-faith analysis as to whether plaintiffs were asking anything extraordinarily burdensome of Amgen, I communicated an offer to Amgen, which, if accepted, would have resulted in plaintiffs removing from the Court's schedule the hearing on their first

motion to compel.  This occurred on January 31, 2006.  (*See also* Ex. G to this declaration.)  By this time, to reiterate, Mr. Young and I had engaged in multiple telephone conferences and multiple exchanges of letters and messages, and, but for getting an answer from Amgen to plaintiffs' proposal, the meet-and-confer period was over.

13.   Amgen did not accept plaintiffs' offer prior to the hearing, so both Mr. Young and counsel for plaintiffs, David Nalven, attended the hearing before Magistrate Judge Bowler.  I have been advised that Mr. Young expressed his belief that the meet-and-confer process was ongoing, though I had advised him prior to the hearing that plaintiffs' offer was a final offer and represented plaintiffs' last attempt at compromise.  As I understand it, Mr. Young also advised the Court that it was working on other discovery issues raised by the plaintiffs.

14.   I have been advised that the Court indicated in response that there seemed to be no present controversy requiring adjudication, but Judge Bowler advised the parties to come back to the Court if they required assistance down the road.  In fact, the parties now urgently require such assistance.  Since the hearing on plaintiffs' first motion to compel, Amgen has agreed vaguely to make a broader production in response to plaintiffs' Omnibus Requests, but even resolving the vagueness in the broadest possible manner, its agreement still does not go far enough.  (As shown in Exs. B and F of this declaration, Amgen recently has agreed to make a supplemental production of certain subsets, or samplings, of materials requested by plaintiffs, but only from the 1991 through January 1, 2004 time-frame.)

15.   There is also the matter of plaintiffs' requests for production of IMS data and reports.  (*See* Ex. I to this declaration.)  Amgen has produced certain material in response to these requests, but again, apparently limited by the 1997-2001 time-frame.  Amgen has indicated that it is willing to produce more IMS data and reports, but only for the 1991-January 1, 2004

- 5 -

time-frame; what is more, plaintiffs are unsure as to whether Amgen has produced, and proposes to produce, mere "samplings" of this data. (*Id.*)

16. Also, Amgen has recently objected to notices of deposition propounded to it after plaintiffs received and began reviewing Amgen's limited document production. (*See* Exs. J-K to this declaration.) While Amgen has indicated that it is willing to go forward with these depositions, it now objects to producing the limited array of documents requested in the deposition notices, purportedly because these requests were made after the December 3, 2005 Track Two discovery cutoff – even though Amgen did not begin producing documents until late 2005 and did not even "complete" the production it intended to make until January 30, 2006. For obvious reasons, this position is likewise unreasonable and unacceptable to the plaintiffs.

17. Attached as Exhibit A is a true and correct copy of Track Two Defendants' Opposition to Plaintiffs' Motion To Modify the Track Two Discovery Schedule and Cross Motion for Entry of Case Management Order 16.

18. Attached as Exhibit B is a true and correct copy of a letter from Hank Young, counsel for Amgen, to me, dated February 7, 2006.

19. Attached as Exhibit C is a true and correct copy of the Declaration of Joseph H. Young (without exhibits), dated October 5, 2005, which was submitted to the Court with Track Two Defendants' Opposition to Plaintiffs' Motion To Modify the Track Two Discovery Schedule and Cross Motion for Entry of Case Management Order 16.

20. Attached as Exhibit D is a true and correct copy of a January 30, 2006 letter from counsel for Amgen to me.

001534-16 97613 V1

21. Attached as Exhibit E is a true and correct copy of a memorandum from Ed Notargiacomo ("Notargiacomo memo"), transmitted by counsel for plaintiffs to counsel for Amgen in May 2005.

22. Attached as Exhibit F is a true and correct copy of an e-mail string between me and Hank Young, counsel for Amgen, beginning on February 8, 2006 and ending on February 17, 2006.

23. Attached as Exhibit G is a true and correct copy of a letter from me to Amgen's counsel, Hank Young, dated February 2, 2006.

24. Attached as Exhibit H is a true and correct copy of this Court's Consolidated Order Re: Motion for Class Certification, dated January 30, 2006.

25. Attached as Exhibit I is a true and correct copy of plaintiffs' IMS discovery requests to Amgen.

25. Attached as Exhibits J-K are true and correct copies of Amgen Inc.'s Responses and Objections to Plaintiffs' Notice of Depositions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of February, 2006.

                                                **/s/ Robert F. Lopez**
                                                ROBERT F. LOPEZ

**CERTIFICATE OF SERVICE**

      I hereby certify that I, Robert F. Lopez, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF ROBERT F. LOPEZ IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL PRODUCTION BY AMGEN INC., WITH REQUEST FOR EXPEDITED BRIEFING AND DISPOSITION** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 27th, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

      By    **/s/ Robert F. Lopez**
          Robert F. Lopez
          **HAGENS BERMAN SOBOL SHAPIRO LLP**
          1301 Fifth Avenue, Suite 2900
          Seattle, WA  98101
          (206) 623-7292