# Exhibit A

**to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.**



6958701
Oct 6 2005
5:36PM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | MDL NO. 1456 CIVIL ACTION NO. 01-12257 |
| **THIS DOCUMENT RELATES TO:** **ALL CLASS ACTIONS** | |

## TRACK TWO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE TRACK TWO DISCOVERY SCHEDULE AND CROSS MOTION FOR ENTRY OF CASE MANAGEMENT ORDER 16[1]

Seeking to delay their obligation to identify suitable class representatives for their claims against the Track Two Defendants[2] plaintiffs have moved this Court for an order that would effectively suspend their cases against Track Two Defendants for at least nine months. Plaintiffs' Motion to Modify the Track Two Discovery Schedule ("Plaintiffs' Motion") at 3-4 (Docket # 1741). In addition, having failed to prosecute discovery aggressively against the vast majority of Track Two Defendants, plaintiffs ask the Court to give them an additional six months of fact discovery commencing *after* their requested stay is lifted. The Court should deny this

---

[1] Abbott Laboratories, Baxter International, Inc. and Baxter Healthcare Corp. join in this brief only with respect to the Track Two Defendants' motion for entry of CMO 16.

[2] Pfizer, Inc., Pharmacia Corp., Pharmacia & Upjohn, Inc., Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Aventis Behring, L.L.C., Hoechst Marion Roussel, Inc., B. Braun Medical Inc., Bayer Corporation, Baxter International, Inc., Baxter Healthcare Corp., Dey, Inc., Fujisawa Health Care, Inc., Fujisawa USA, Inc., Immunex Corporation, Novartis Pharmaceuticals Corporation, Sicor, Inc. f/k/a Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., TAP Pharmaceutical Products, Inc., Together Rx LLC, and Watson Pharmaceuticals, Inc.

request to further delay the case and instead should require that plaintiffs do for the Track Two Defendants just what they have been ordered to do for the Track One Defendants – identify their Track Two class representatives promptly and provide the type of information regarding class representatives for the Track Two claims that the Court has already ordered plaintiffs to provide for the Track One claims.

To this end, the Track Two Defendants respectfully cross move for entry of Case Management Order No. 16 ("CMO 16") requiring plaintiffs to: (1) file any amendment naming new class representatives for their claims against the Track Two Defendants by December 14, 2005, (2) produce discovery documenting the basis of any claims of the new class representatives at the time that those class representatives are identified, and (3) produce any new class representative for deposition within 30 days after the amendment seeking to add that class representative is filed. This order is necessary to avoid additional delays in the Track Two pre-trial schedule and to ensure that, after nearly four years of litigation, the Track Two Defendants are advised promptly – and finally – of the identity of any named class representatives suing them.

**A.   The Plaintiffs Should Identify Any Track Two Class Representatives by December 14.**

In its Memorandum and Order Re: Motion for Class Certification ("August 16 Order") , the Court ruled that plaintiffs' proposed class of Medicare Part B beneficiaries satisfies the requirements of Rule 23 in every respect but one – the current named plaintiffs do not include any such beneficiaries and therefore are unable adequately to represent the interests of individual members of the proposed Medicare Part B class. The Court gave plaintiffs 60 days from the date of its Order to attempt to rectify this deficiency by naming new class representatives, alleging "facts demonstrating typicality and adequacy of the class representatives," and disclosing "the

2

documents demonstrating that the proposed class representatives made co-insurance payments (at least in part) under Medicare Part B based on AWP." August 16 Order at 43-44. The Court also granted the Track One Defendants 30 days following this disclosure to take depositions. *Id.* at 88-89.

The Track Two Defendants seek a corresponding order applicable to Track Two. Plaintiffs concede in their motion that they will need to identify new class representatives for their claims against Track Two Defendants and to substantiate that those representatives personally paid at least a portion of the co-insurance for their Part B medicines based on AWP. Plaintiffs' Motion at 2-3. The only issue is when plaintiffs will be required to meet these requirements. The Track Two Defendants submit that there is no justification for delay, and plaintiffs have offered none. Like the Track One Defendants, the Track Two Defendants need to know the identities of any proposed class representatives and the basis of those proposed representatives' claims in order to test their standing to bring the claims asserted in the AMCC, their adequacy to represent the class, and their typicality in relation to the claims of absent class members.

Plaintiffs do not dispute this fundamental principle. Indeed, their motion unambiguously anticipates that they will file an "amendment of the complaint to add proposed Track Two class representatives consistent with the Court's Track One class certification Order." Plaintiffs' Motion at 2. The only area of disagreement among the parties is one of timing. Notwithstanding the Court's determination that 60 days was sufficient time for plaintiffs to name Track One class representatives because "plaintiffs state that they have individuals waiting in the wings," August 16 Order at 44, plaintiffs now propose a schedule that, by their own admission, will likely result in a complete stay of discovery in the Track Two cases until at least July 2006. Plaintiffs'

Motion at 4. Plaintiffs offer no compelling reason for further extending this already four year old litigation in such a manner, and none exists.

The schedule proposed in CMO 16 provides more than enough time for plaintiffs to identify class representatives and to provide the necessary documentation. The proposed December 14 deadline falls 60 days after the Court-imposed deadline for identifying new class representatives for claims against the Track One Defendants and 120 days after the Court's Order establishing the inadequacy of the current class representatives. These cases are nearly four years old and the Track Two discovery deadline is rapidly approaching, yet plaintiffs still have not identified a single individual with standing to pursue Medicare Part B claims against any of the Track Two Defendants. There is no reason why plaintiffs cannot identify willing, typical, and adequate class representatives within the time frame proposed in CMO 16.

**B.     Plaintiffs' Request to Stay the Track Two Case is Unwarranted and Should Be Rejected.**

Under CMO 14, fact discovery in the Track Two cases will close on December 3, 2005. This discovery cutoff already reflects an extension of the original deadline for discovery in the Track Two cases. Months ago, plaintiffs pushed for the December 3 discovery cutoff; they now reverse course and ask the Court to suspend all discovery (and nearly all activity) in the Track Two cases "pending the Court's standing determination." Plaintiffs' Motion at 3. That standing determination – whether a purchaser of, for instance, a drug to treat breast cancer has standing to represent a class of purchasers of prostate cancer drugs – has been an issue that plaintiffs have confronted since they filed their complaint years ago. If their plan is simply to identify a single product purchaser for each defendant without regard to the relationship between the drug purchased and the claims asserted in the complaint, plaintiffs have good reason to be concerned about yet again relying on inappropriate class representatives. The response to this

4

concern, however, is not to require this Court to issue what are, in effect, a series of advisory opinions nudging plaintiffs through endless, incremental amendments of their complaint. Rather, plaintiffs should identify appropriate class representatives with standing *now* so that the plaintiffs' allegations can finally be tested and the case can proceed to judgment.

Early on in this case, the Court made clear that the plaintiffs' claims would have to be tested "drug by drug." Transcript of January 12, 2003 Hearing on Motions, at 74. And the plaintiffs' themselves assured this Court that their "proof will focus on each defendant and each drug," and that "liability and damages will be both defendant and drug-specific." *See* Plaintiffs' Reply to Bristol-Myers Squibb's Individual Memorandum in Opposition to Class Certification, at 5 (Docket # 1241). Plaintiffs have long been fully aware of the risks they face if they fail to identify a class representative who has standing to sue for the claims in the complaint with respect to each drug alleged to be the subject of unlawful behavior. As claimed experts in class action litigation, they should not require that the Court pre-approve their methodology for naming appropriate class representatives, but should simply pluck such representatives from those they have "waiting in the wings" and allow the case to move forward as the parties and the Court contemplated it would when CMO 14 was entered.

In their Motion, plaintiffs warn that "unless the schedule is adjusted in the manner that Plaintiffs propose, several months of Track Two discovery will continue against Track Two Defendants for which no additional class representatives may ultimately identified [sic] under the Court's final standards." Plaintiffs' Motion at 3. What plaintiffs fail to disclose is why they cannot or will not simply identify appropriate class representatives now rather than waiting for the Court to rule on the propriety of the Track One class representatives. Plaintiffs know what they need to do in order to move forward with this case. Rather than confront that reality, they

ask this Court to call a timeout, leaving all of the Track Two Defendants in limbo. In the meantime, defendants' employees move on to new jobs, defendants needlessly maintain and accumulate large quantities of documents and data that may be subject to discovery at great expense, and the parties are no closer to having their claims adjudicated.

Plaintiffs also correctly note that the benefits flowing from coordinating discovery with the state cases would be lost if this Court entered a stay. Plaintiffs' Motion at 4. Although plaintiffs' lead counsel has advised that certain of his other clients, the states of Nevada and Montana, "have offered to agree to abide by the discovery schedule proffered by the class Plaintiffs here," *id.*, that agreement would only compound the discovery burden on several Track Two Defendants because they currently face discovery demands in other state cases that would not be covered by this "offer." In fact, on behalf of one of its other clients – Connecticut – plaintiffs' lead counsel has stipulated that discovery taken in either Connecticut or the MDL may be used for the other case. Declaration of John C. Dodds ("Dodds Decl.") at ¶ 15. Discovery has been very active in the Connecticut case and promises to remain intense for the two remaining months of the discovery schedule. Moreover, plaintiffs do not explain what benefit accrues from requiring Track Two Defendants to abruptly cease the discovery they are pursuing against the states of Montana and Nevada. In fact, there is no reason to do so. Track Two Defendants agree that Nevada and Montana should abide by this Court's discovery schedule, but strongly oppose any effort to freeze that schedule.

Finally, plaintiffs' requested stay fails to address the extensive third party discovery that at least some of the Track Two Defendants will inevitably need to take. Plaintiffs offer no reason to forestall those efforts, which typically require greater effort and lead times in working with third parties. Because plaintiffs' attempt to justify a stay until next summer fails to account

for an entire category of substantial and necessary discovery, the Court should deny that request for this reason alone.

Rule 1 of the Federal Rules of Civil Procedure instructs the courts to interpret the Rules "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. Pro. 1. Plaintiffs' proposal to shelve the Track Two cases until next July flies in the face of that admonition.

**C.     Plaintiffs Have Not Made Any Showing to Justify Yet Another Extension of the Discovery Schedule.**

The real reason for plaintiffs' motion to stay discovery is exposed in its admission that "the work necessary for Plaintiffs to react to the Court's Track One Class Order, prepare the Track One expert disclosures, and brief the Track One Defendants' petition to appeal, have made it difficult to substantially advance the discovery against the Track Two Defendants." Plaintiffs' Motion at 6. They make this admission while arguing in the alternative for "90 additional days beyond December 3rd in order to complete Track Two discovery…" *Id.* In support of this argument, plaintiffs assert that certain Track Two Defendants have been dilatory in providing discovery responses, citing to alleged examples of intransigence from defendants Pharmacia, Amgen, and Baxter. Far from supporting their position, however, these examples underscore that it is plaintiffs themselves who have dragged their feet in failing to pursue discovery.

For instance, defendant Pharmacia made its initial production of documents back in 2002. Dodds Decl. at ¶ 3. In the Spring of 2004, Pharmacia agreed with plaintiffs that it would provide various types of pricing and transaction data to enable plaintiffs to select those products for which they wanted to pursue additional discovery. *Id.* at ¶ 5. Pharmacia then promptly provided the agreed upon data over the next few weeks. *Id.* at ¶ 6. But rather than pursuing discovery aggressively, plaintiffs allowed an entire year to pass before specifying the drugs on which they

sought further discovery. *Id.* at ¶ 7. Once they did so, Pharmacia promptly began producing additional documents relating specifically to the drugs that plaintiffs identified. *Id.* at ¶¶ 11-12.

Plaintiffs' track record as to Amgen is similar. Shortly after making company representatives available for Rule 30(b)(6) depositions in May 2004, Amgen was dismissed from the case. As a result, it advised plaintiffs that it would not respond to discovery until its status in the litigation was determined. Declaration of Joseph H. Young ("Young Decl.") at ¶ 4. Plaintiffs did not object or even respond. *Id.* Indeed, it was Amgen – and not plaintiffs – that ultimately sought to reinitiate discussions regarding discovery in December 2004, largely out of concern on Amgen's part that discovery might be difficult to complete if the Court, as it later did, determined that plaintiffs' complaint stated a claim against Amgen. *Id.* at ¶ 5. Plaintiffs, however, failed to return phone calls, delayed meeting with Amgen for well over two months (ostensibly because they were preoccupied with the Track One case), and did not provide for nearly five months a promised "short list" of requests intended to focus the parties' discovery efforts. *Id.* at ¶¶ 6-12. As a direct result, Amgen was unable to begin in earnest the time-consuming task of reviewing potentially responsive documents until mid-June. Since that time, it has devoted well over 3000 hours to the review, and expects to begin a rolling production of documents this month. *Id.* at ¶ 15.

If plaintiffs had legitimate concerns about the discovery conduct of any Track Two Defendants, they should have moved to compel discovery months ago. They have nobody to blame but themselves for failing to prosecute their claims aggressively. Now, at the eleventh hour, they ask this Court to grant them more time to take discovery against all Track Two Defendants without an adequate showing that such an extension is justified even as to the only

three defendants mentioned in their motion and with no mention whatsoever of any of the other Track Two Defendants.

For the foregoing reasons, the Track Two Defendants respectfully request the Court to enter proposed CMO No.16 and to deny Plaintiffs' Motion to Modify the Track Two Discovery Schedule in all respects.

Respectfully submitted,

/s/ Mark D. Smith
Mark D. Smith (BBO# 542676)
Laredo & Smith, LLP
15 Broad Street, Suite 600
Boston, MA  02109
617.367.7984 (t)
617.367.6475 (f)

John C. Dodds
*Admitted pro hac vice*
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5000 (t)
215.963.5001 (f)

Scott A. Stempel
*Admitted pro hac vice*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004
202.739.3000 (t)
202.739.3001 (f)

*Attorneys for Defendant Pfizer Inc., Pharmacia Corp. and Pharmacia & Upjohn, Inc.*

On behalf of the Track Two Defendants

9

# Exhibit B

**to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.**

# HOGAN & HARTSON
## L.L.P.

JOSEPH H. YOUNG
PARTNER
(410) 659-2775
JHYOUNG@HHLAW.COM

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981
WWW.HHLAW.COM

February 7, 2006

*BY ELECTRONIC MAIL*

Robert F. Lopez, Esq.
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

> Re:   **Amgen Inc. Production – Average Wholesale Pricing Litigation, MDL No. 1456**

Dear Rob:

I am writing in response to your letter of February 2, regarding Amgen's time frame exceptions to plaintiffs' Omnibus requests, as modified by our discussions last May with Steve Berman.

Preliminarily, you state in your letter that plaintiffs "have never agreed" to a limited time frame for production. The record indicates otherwise. Amgen specifically objected to the plaintiffs' requests on the basis of time frame in its June 2004 responses. Thereafter, by letter dated April 21, 2005, Steve Berman noted exception with respect to Amgen's time frame limitations, but only with respect to *four specific requests*: Nos. 36 (documents describing discount programs), 38 (documents evidencing "credit memos"), 39 (documents setting forth circumstances relating to when credits were or could be offered to any hospital, GPO, HMO, physician, wholesaler or other purchaser), and 42 (documents evidencing chargebacks).

More to the point, the issue of Amgen's time frame exceptions did not even come up during the subsequent meet-and-confer with Mr. Berman on May 26, 2005. And plaintiffs can hardly claim they were "unsure" of Amgen's position regarding its time frame exceptions until Amgen's supplemental production in October 2005. As Amgen's letter accompanying its initial production of data and related documents on June 23, 2005 made absolutely clear, Amgen's productions

WASHINGTON, DC

BERLIN   BRUSSELS   LONDON   PARIS   BUDAPEST   PRAGUE   WARSAW   MOSCOW   BEIJING   TOKYO
NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES

HOGAN & HARTSON L.L.P.

Robert F. Lopez, Esq.
February 7, 2006
Page 2

were made "without waiver of any objections that Amgen has made regarding scope and time frame of plaintiffs' request." While Amgen provided data that predated 1997, where such data existed and was readily obtainable through current systems, Amgen consistently applied a cutoff date of December 31, 2001, and made clear in its letter to plaintiffs that it was doing so. By my count, pursuant to CMO 10, plaintiffs were obligated to bring any continuing issue to the Court's attention within 60 days, or no later than August 23.

Second, Judge Saris' ruling regarding class periods for the Track 1 defendants by its terms pertains only to Track 1 – and not to the entire case. Moreover, I do not understand that plaintiffs have taken a similar stand with other Track 2 defendants, let alone with respect to the Track 1 defendants, to whom Judge Saris' order directly applies. Nor do I believe that Judge Saris intended her order to reopen discovery or require defendants to go back and pull additional documents for several additional *years*. Contrary to your letter, this would involve an extraordinary burden for Amgen and other defendants, requiring it to undertake a comprehensive new search for potentially responsive documents generated after the date of Amgen's original sweep for documents two years ago.

Third, as you know, discovery in the MDL case closed on December 3, 2005, more than a month prior to your letter to me regarding Amgen's time frame exceptions. Absent a Court order extending the time for fact discovery in this case, your January 9, 2006 demand to broaden Amgen's production is untimely for this reason, as well.

Notwithstanding what Amgen believes is plaintiffs' clear waiver of objections relating to time frame, as your letter suggests, we have been and continue to be willing to meet you more than half way. As I read the so-called "Notargiacomo memo," which served as the basis for Amgen's meet-and-confer with Steve Berman in May 2005, there are a number of key categories of documents or information that would be affected by any modification in the time frame for production and in connection with which Amgen is willing to accede to plaintiffs' requests. Specifically:

> ➤ Pricing History Data Reports. As indicated previously, Amgen is willing to provide you with Price History Reports through January 1, 2004.

HOGAN & HARTSON L.L.P.

Robert F. Lopez, Esq.
February 7, 2006
Page 3

> Data. As indicated previously, Amgen is willing to update productions of
> sales, rebate and credit data through January 1, 2004. Amgen is also
> willing to supplement its production of IMS data for the same time period.

> Pricing Committee minutes. Amgen is amenable to supplementing its
> production of Pricing Committee minutes through January 1, 2004.

> Field sales reports. As indicated previously, Amgen is willing to
> supplement its production to provide ORION reports and related
> documents for a selected universe of sales representatives, to be identified
> by mutual agreement, through January 1, 2004.

> Compendia communications. As indicated previously, Amgen is willing to
> supplement its prior production of compendia communications through
> January 1, 2004.

> Contracts. As noted in your letter, and as previously discussed, Amgen
> remains willing to supplement its prior productions by providing a
> reasonable sampling of contracts beyond the 1997-2001 timeframe in a
> manner to be discussed and agreed upon by the parties.

Amgen's offer in this regard is, I think, eminently reasonable and in
fact extends the relevant time frame well beyond what we understand plaintiffs
have required from most other defendants in both the Track 1 and Track 2 cases.
In the event this offer is, for any reason, rejected by plaintiffs, Amgen expressly
reserves all of its objections, including those referenced above, in connection with
any motion that plaintiffs may file with the Court.

With regard to the remaining issues mentioned in your letter, most
appear to me to be premature and will likely be resolved once plaintiffs have
completed their review of Amgen's productions to date. (For example, Amgen has
not merely produced "end-result" documents, such as Pricing History Data Reports,
but has also produced the underlying Pricing Committee minutes, as agreed upon in
discussions with Steve Berman.) I am following up on some of the related questions
you ask (for example, missing address fields in the ORION reports), but understand
that no data fields have been eliminated or redacted. I would, of course, be happy to

HOGAN & HARTSON L.L.P.

Robert F. Lopez, Esq.
February 7, 2006
Page 4

discuss this and any other concern regarding Amgen's productions that you may
have.

I look forward to hearing from you regarding what I hope will be an
amicable resolution of the parties' difference with respect to the issue of time frame.

Very truly yours,

Joseph H. Young

cc:    Steven F. Barley, Esq.
       Jennifer A. Walker, Esq.

# Exhibit C

**to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) AVERAGE WHOLESALE PRICE ) LITIGATION ) ) | MDL No. 1456 Civil Action: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO THE ) AMENDED MASTER CONSOLIDATED ) CLASS ACTION ) | Hon. Patti B. Saris |

## DECLARATION OF JOSEPH H. YOUNG

I, Joseph H. Young, hereby declare that:

1.     I am a partner in the Baltimore, Maryland office of Hogan &
Hartson, LLC, and am co-lead counsel for defendant Amgen Inc. ("Amgen") in this
litigation.  In that capacity, I have been personally involved in discussions with
plaintiffs' counsel regarding discovery over the course of these proceedings.

2.     Contrary to plaintiffs' memorandum filed in support of their
Motion to Modify the Track Two Discovery Schedule and the accompanying
Declaration of Steve Berman, Amgen early on sought to meet and confer with
plaintiffs' counsel in an effort to resolve differences regarding scope of discovery.
However, plaintiffs' counsel, apparently preoccupied with other matters, including
the Track One motion for class certification, were generally unresponsive to
Amgen's repeated requests over the course of several months, between December
2004 and late May 2005.  Had they been, Amgen likely would have completed most
if not all of its review and production of responsive documents by this time.

3.  Since the outset, Amgen has sought to work with plaintiffs on discovery matters, promptly responding, for example, to plaintiffs' requests for initial Rule 30(b)(6) depositions, and making three employees available over the course of two days in May 2004, for depositions relating generally to information systems, document retention, and pricing.

4.  Shortly thereafter, as a result of the Court's June 9, 2004 order granting Amgen's motion for reconsideration and dismissing the Amended Master Consolidated Complaint as to it, Amgen specifically advised plaintiffs that, because Amgen was no longer in the case, it did not intend to respond further to plaintiffs' pending discovery requests. *See* Attachment 1 (Letter dated 6/28/04 from Steven F. Barley to Edward Notargiacomo).  Plaintiffs not only did not file any objection to Amgen's letter, but at least tacitly agreed with Amgen's position to avoid potentially needless and costly discovery by not pursuing any discovery as to Amgen over the course of the next seven months.

5.  Plaintiffs filed a corrected amended complaint in July 2004. Amgen again moved to dismiss that complaint, which motion was ultimately denied by the Court by order dated February 17, 2005. Despite the pendency of that motion, Amgen counsel reinitiated discussions in December 2004 so that it could begin the process of reviewing and producing potentially responsive documents in the event its motion was denied. *See* Attachment 2 (group exhibit comprising email and other correspondence between Amgen counsel and plaintiffs' counsel). Amgen decided to restart negotiations with plaintiffs' counsel in order to avoid precisely the

kind of discovery logjam that plaintiffs now seek to use to justify an extension of the Court's Case Management Order.

6.      At that time, Amgen had been advised by plaintiffs to coordinate discovery with Edward Notargiacomo, an attorney with the Boston, Massachusetts office of Hagens Berman. As a result of apparent confusion on his part, Mr. Notargiacomo did not return calls placed in late December and early January 2005 until January 27, 2005. *Id.* (1/27/05 Young email).

7.      Amgen made clear by email dated January 27, 2005, that it was seeking to schedule a meet-and-confer so that it could proceed with discovery. *Id.* Mr. Notargiacomo responded, ruling out the possibility of a meeting "because things will just be too crazy" until after the hearing on plaintiffs' class certification motion on February 10. *Id.* (1/27/05 Notargiacomo email).  Despite Amgen's willingness to travel to Boston to meet with Mr. Notargiacomo, plaintiffs' counsel was unable to accommodate Amgen's request.

8.      Amgen made follow up requests for a meeting on February 22 and March 4, 2005.  A meeting by phone was finally scheduled for March 9.  At the conclusion of that call, Mr. Notargiacomo agreed to coordinate with his co-counsel and provide Amgen in the next several days with a list of more specific requests in an effort to more narrowly focus discovery.

9.      Anxious to begin the review process, Amgen's counsel sent separate requests on March 15 and March 16, 2005, asking Mr. Notargiacomo to advise Amgen as to when it might expect to receive the proposed list. *Id.* (3/15/05

Young email; 3/16/05 Young email). On March 17, Mr. Notargiacomo responded, indicating that he had "not been able to get to the list" and requesting an additional week. *Id.* (3/17/05 Notargiacomo email). Amgen responded that the timing was not ideal because Amgen was prevented in the meantime from beginning its review in earnest, pending receipt of the plaintiffs' list and agreement as to scope. *Id.* (3/17/05 Young email).

10. Notwithstanding Amgen's prior discussions and understanding with Mr. Notargiacomo, on April 20, 2005, Amgen's local counsel in Boston received a letter from Steve Berman regarding the production of transactional data, followed by a second letter the following day, again addressed to local counsel, requesting a meet and confer regarding Amgen's discovery responses. *Id.* (Letter from Steve Berman to Frank Libby, dated 4/20/05; Letter from Steve Berman to Frank Libby, dated 4/21/05). Amgen immediately contacted Mr. Notargiacomo, given that Amgen had been attempting to meet and confer since January and again requested an update regarding the status of plaintiffs' proposed list of issues/requests. *Id.* (4/22/05 Young email). Mr. Notargiacomo responded that there had been a "shifting of responsibilities on our side" and that he needed to speak with Mr. Berman. *Id.* (4/22/05 Notargiacomo email).

11. By email correspondence dated April 28, 2005, Amgen requested clarification regarding the identification of the responsible plaintiffs' attorney for discovery issues. *Id.* (4/28/05 Barley email).

12.     On May 17, 2005, Mr. Notargiacomo responded and advised that "things have been shuffled around on our side" and that Amgen should "deal directly with Steve Berman" on discovery issues. *Id.* (5/17/05 Notargiacomo email). Amgen contacted Mr. Berman on May 18, and a telephonic meet-and-confer was thereafter scheduled for May 27, 2005. *Id.* (5/18/05 Young email).  Given the apparent lack of coordination between Mr. Berman and Mr. Notargiacomo, Amgen advised Mr. Berman of the status of discussions with Mr. Notargiacomo, and the plaintiffs' long-outstanding offer to provide Amgen with a more narrowed list of requests.  That list was finally provided on May 26, 2005.  *Id.* (5/26/05 Berman email and attachment).

13.     Following the May 27 meeting with Mr. Berman, Amgen agreed to finalize its transactional data and to undertake efforts to identify, review and produce documents in response to plaintiffs' narrowed production requests, as outlined in Mr. Berman's May 26 email.  On June 23, Amgen produced its transactional data. *Id.* (Letter from Joseph Young to Steve Berman dated 6/23/05).

14.     Even after the responsibility for Amgen's discovery was apparently handed off to Mr. Berman, it remained unclear as to which of plaintiffs' many attorneys Amgen was to work with in dealing with production issues.  On or about June 28, 2005, Amgen received a separate request from Allan Hoffman of the law firm of Hoffman & Edelson LLC, demanding the review of potentially tens of thousands of documents produced in wholly-unrelated arbitrations between Amgen and Ortho Biotech.  It was again apparent that plaintiffs' counsel had not

coordinated with other plaintiffs' counsel to determine the status of any discussions or agreements reached between Amgen and plaintiffs regarding discovery. As a result of Mr. Hoffman's demands, Amgen was distracted in its efforts to identify and review potentially responsive documents, and was required, instead, to devote considerable time and effort in reviewing transcripts and exhibits which, Amgen maintains, were never responsive to plaintiffs' discovery requests in the first place. *Id.* (Letter from Steven F. Barley to Allan Hoffman dated 6/29/05).

15.     Since June, Amgen has committed well in excess of 3000 hours of attorney time to the identification and review of potentially responsive hardcopy and electronic records and anticipates it will be in a position to begin a rolling production in October, and largely complete its document production on or before the December 3, 2005 discovery cutoff. Had plaintiffs' counsel and Amgen reached an agreement regarding scope in January 2005 – as Amgen sought – it likely would have been able to substantially complete document discovery this past summer.

16.     At no time prior to the filing of plaintiffs' Motion to Modify the Track Two Discovery Schedule did plaintiffs move to compel Amgen's production. Nor did plaintiffs request a further meet and confer with Amgen since May 27 regarding discovery.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 5, 2005.

Joseph H. Young

# Exhibit D

## to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.

# HOGAN & HARTSON
## L.L.P.

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 539-6981
WWW.HHLAW.COM

January 30, 2006

*CONTAINS HIGHLY CONFIDENTIAL*
*INFORMATION; SUBJECT TO PROTECTIVE*
*ORDER ENTERED IN MDL NO. 1456*

*VIA FEDERAL EXPRESS*

Robert F. Lopez, Esq.
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

> Re:   **Amgen Inc. Document and Data Production – Average**
> **Wholesale Pricing Litigation, MDL No. 1456**

Dear Robert:

On behalf of Amgen Inc. ("Amgen"), I am enclosing in electronic format Amgen's fifth supplemental production of documents responsive to the plaintiffs' omnibus requests in the MDL proceedings, as modified by our prior discussions and agreements. For ease of reference, these documents have been labeled AM00027175 through AM00043930. The gap in the production sequence at AM00032313-32314 is intentional.

I am also enclosing a CD with rebate and wire transfer data, which may not have been part of Amgen's prior productions. For ease of reference, this data has been labeled AMGN_AWP_09000051 through AMGN_AWP_09000055.

With this production, Amgen believes it has substantially completed its production of documents responsive to plaintiffs' omnibus requests, as modified by the parties' agreements, and subject to Amgen's written responses and objections served on June 4, 2004. As part of its continuing obligation, Amgen will, of course, produce any additional responsive documents it identifies.

WASHINGTON, DC

BERLIN   BRUSSELS   LONDON   PARIS   BUDAPEST   PRAGUE   WARSAW   MOSCOW   BEIJING   TOKYO
NEW YORK   BALTIMORE   McLEAN   MIAMI   DENVER   BOULDER   COLORADO SPRINGS   LOS ANGELES

HOGAN & HARTSON L.L.P.

Robert F. Lopez, Esq.
January 30, 2006
Page 2

The information set forth in this letter and in the accompanying disks have been designated "Highly Confidential" pursuant to the terms of the Protective Order entered in MDL No. 1456 and should be handled accordingly.

The submission of this information does not waive, nor is it intended to waive, any rights, privileges, or immunities with respect to this matter, including any applicable attorney-client, work product, or other privileges or immunity. Moreover, to the extent that non-responsive documents may have been produced, we do not agree to any expansion in the scope of the requests.

Please feel free to call Hank Young or Steve Barley if you have any questions regarding this production or any aspect of this case.

Very truly yours,

Jennifer A. Walker

cc:     Joseph H. Young, Esq.
        Steven F. Barley, Esq.