# Exhibit E

**to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.**

<u>MEMORANDUM</u>

FROM:  Ed Notargiacomo

TO:  Steve Berman

RE:  Initial Amgen Discovery


Below I list by category, some of the documents identified in the 30(b)(6) deposition conducted last year of Amgen, which I would suggest should be part of the initial discovery Amgen should produce in its first waive.  These are not listed in order of importance.  I've also identified in parentheses the source for each of these items according to the witness and the transcript page.  Also notice that under Sales and Transaction Data, Hank Young indicated they had collected transactional data and were ready to produce this to us on CD.  That was just before Amgen was dismissed out last year, and they never made that production.  He should have that ready to go already, so it should be the very first thing they produce.


I.    <u>Organizational Summary</u>:

- Full corporate directory as currently exists on Amgen's "intranet" (Mikelson p. 26) (Feldman p. 42), including any historical version of the corporate directory.
- All organizational charts for each department at Amgen as well as historical version of each organizational chart.  (Mikelson p. 27) (Feldman p. 22).

II.    <u>Information Systems</u>

- Documentation explaining the structure of Amgen's e-mail system. (Mikelson p. 22)
- Record Layouts for the Orion System (Mikelson p. 40)
- All docs describing the Orion System (Mikelson p. 32)
- Record Layout for the Millennium System (Mickelson p41)
- Record Layout for the JD Edwards System (Mikelson  p. 41)
- Record Layout for the CCS System
- Record layout for the CDEF system (Feldman, p.67)


III.    <u>Document Retention</u>

- All specific document retention schedules maintained by Amgen  (Struck p. 24)
- All general document retention schedule maintained by Amgen    (Struck p.25)
- All indices for each off-site storage facility (Struck 33)
- Copy of hold order issued by Amgen to employees related to the AWP case (Struck p. 45)

- List of employees, departments or business units to whom hold order was distributed (p.46)
- Revised hold order related to AWP case (Struck p. 47)
- All docs concerning document retention and destruction policy (Struck p.20) including any historical version of the same documents
- Document identifying what material held off-site have been designated as subject to the hold order related to AWP case.

IV.   Pricing

- All copies of Amgen's Pricing Policy and Practice document (Feldman p. 58)
- Copies of all Price History Reports (Feldman p. 70)
- All copies, historical or otherwise, of the process document showing the steps necessary to enact notification of a product launch or price change (Feldman p. 75)
- All copies of Pricing Committee minutes (Feldman p. 118)
- All copies of documents distributed periodically at Pricing Committee meetings (Feldman p.120)
- Copies of all price history sheets concerning each of Amgen's products (Feldman p. 87-88)
- Documents describing how list price for Amgen's products are generated (Feldman p. 79-80)
- All analytic documents, spreadsheets and other analyses associated with a proposed change in list price of Amgen's products (Feldman p85)
- All presentation or recommendation documents associated with a proposed change in list price of Amgen's products (Feldman p. 87)
- Copies of all analyses conducted on the effect of any price change for any Amgen product named in the AMCC (Feldman p. 29)
- Copies of all final recommendation documents related to any price change, proposed or otherwise accepted, w/r/t any price change for any Amgen product named in the AMCC (Feldman p. 30)
- All current and historical copies of Schedule 5

V.   Contracting/Contracts

- All powerpoint slides and other materials that summarize the flow of Amgen products through distribution chain and summarize the contractual relationships with entities in the chain of distribution (Feldman p. 56)
- All copies of Amgen's documents evidencing the approval process for all contracting decisions (Feldman p. 58)
- Copies of Ks with wholesalers (Feldman p. 51)
- Copies of Ks with clinics (Feldman p. 53)
- All contracts with PBMs (Feldman, p 69)

- NOTE:  CCS System (Contract and Chargeback System) contains the contract terms with customers (wholesalers, hospitals, clinics).  We can either ask for

hardcopy of contracts with customers now or, after receiving the Record Layout for the CCS System, have them run reports of contract terms we are interested in. I suggest the latter.

VI.     Field Sales Force

-   Orion System – all call notes for each sales rep, related to each drug in the AMCC
-   Millennium System – all call notes for each sales rep, related to each drug in the AMCC. (Mik p. 37)
-   All documents distributed, in whatever form, to field force notifying them of a change in any price or pricing metric associated with Amgen's products (Feldman p. 90)
-   Copies of all definitional training documents (Feldman p. 70)

VII.    Communications with Pricing Compendia

-   All communications with industry compendia (Feldman p. 72)

VIII.   Sales and Transactional Data

-   All sales performance reports from the Business Analytics and Information concerning all Amgen drugs listed in the AMCC (Feldman p. 44)
-   The data retrieval and production, in CD format, referred to by Hank Young in Feldman deposition (Feldman p.66)
-   To extent not provided in production above:
    -   All sales data, whether obtained through IMS or otherwise, maintained in the Orion System, for each Amgen drug in the AMCC. (Mikelson. p. 35)
    -   From the JD Edwards System, all transactional date related all Amgen drugs in the AMCC (Mikelson. p36)
    -   From the CCS System, all data concerning all rebates and chargeback information related to Amgen drugs in the AMCC.

IX.     Competition

-   All documents that track pricing information for products that compete with Amgen's products (Feldman p. 106-108)
-   All documents that track the contract price, rebates, discounts or incentives associated with products that compete with Amgen's products (Feldman p. 109-111)

X.      Electronic Documents:

-   Possible to run a search on the server files (that contain the shared files and each individual employee's files) and may be possible to remotely search each individual's desktop computer from a central location. All sites have been connected electronically since 1994. (Mikelson p. 20). We may want to consider

providing Amgen with a list of search terms to use in retrieving electronic documents.

- Separate e-mail server is also searchable by subject, title, date (Mikelson p.28). We may want to run the same search for e-mails.

- I suggest the following initial list of search terms. This list was used with AZ in the past by Beth.

<u>Suggested Search Terms</u>

AWP
Suggested
List Price(s)
Bundle
Chargeback(s)
Credit(s)
Discounts(s)
Educational Grant
Free Good
Grant(s)
Incentive(s)
Net
Price(s)
Rebate(s)
Reimbursement
Returned Goods
Spread
Sample(s)
Volume
Reduce/reduction
Profit
Return to Practice
RTP
Medicare
Part B
Advantage
Cost Advantage
Profit Advantage
Reimbursement Advantage
Margin
Influence
Unrestricted
Complementary

# Exhibit F

## to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.

## Rob Lopez

| | |
|---|---|
| **From:** | Young, Joseph H. (Hank) [JHYoung@HHLAW.com] |
| **Sent:** | Friday, February 17, 2006 2:48 PM |
| **To:** | Rob Lopez |
| **Subject:** | RE: AWP -- Amgen Production |

Rob --

    I frankly do not understand what you mean in referring to plaintiffs' "Omnibus Requests, as modified (but not supplanted) by the Notargiacomo memo of May 2005." That listing served as the basis for the parties' agreement following the May 2005 meet-and-confer. It is the operative set of requests (in fact, the whole point of last spring's exercise was to narrow the original requests and memoranda to avoid a "data dump" that plaintiffs had received from other parties), and nothing during our numerous calls last month or in your January 9, 2005 letter suggested otherwise. What Amgen has offered in an effort to resolve the issue of time frame is to supplement its prior responses to include pre-1997 and post-2001 documents, as set out in my past correspondence and emails. Where sampling was the agreed-upon convention previously, Amgen intends to use and is using the convention in supplementing its prior productions (and is willing to discuss sample size, etc.). Amgen is not agreeing, as your most recent email seems to suggest, to a supplemental production responsive to plaintiffs' original omnibus requests, without regard to Amgen's prior objections and without regard to the agreed upon approach to production reached nine months ago.

    As to scheduling or the submission of new requests filed as part of deposition notices, the parties' positions are spelled out in their competing proposals and memoranda submitted to Judge Saris. Amgen's position has been consistent throughout: had plaintiffs responded in December 2004 and early 2005 to Amgen's requests for a meet-and-confer on the scope of plaintiffs' Omnibus requests, document productions and discovery could have been completed last summer or fall. Plaintiffs have yet to respond to this point, preferring instead to point to delay in defendant's production -- delay that was a direct result of plaintiffs' unwillingness or inability to conduct a meaningful meet-and-confer until the end of May 2005.

    Please let me know if you would like to discuss this further.

*Joseph H. ("Hank") Young*
*Hogan & Hartson, LLP*
*111 South Calvert Street, Ste. 1600*
*Baltimore, MD 21202*
*ph: 410/659-2775*
*fx: 410-/539-6981*
*email: jhyoung@hhlaw.com*

---

**From:** Rob Lopez [mailto:robl@hbsslaw.com]
**Sent:** Wednesday, February 15, 2006 7:13 PM
**To:** Young, Joseph H. (Hank)
**Cc:** Sean Matt
**Subject:** RE: AWP -- Amgen Production

Hank:

Your e-mail raises questions even as it answers some. I think it's best to pose my follow-up questions in writing, and to ask you to respond in writing, rather than to do so over the phone, where details might be lost.

Does your first substantive paragraph mean that Amgen is now willing to make a production from 1991 through January 1, 2004 of all responsive, non-privileged documents requested in plaintiffs' Omnibus Requests, as modified (but not supplanted) by the Notargiacomo memo of May 2005? This would not be samplings of certain categories, but rather all responsive, non-privileged documents, save for contract documents, which contract documents would be

produced in accordance with the proposal we made in my January 9, 2006 letter to you? In other words, Amgen is now willing to make a supplemntal production in accordance with plaintiffs' proposal as set forth in our January 9, 2006, letter, save for substituting an end date of January 1, 2004 for the 2005 and "to the present" dates plaintiffs proposed in my January 9 letter?

If how I am re-stating Amgen's offer is correct, how is it justifiable on the basis of extraordinary burden or otherwise to take the position that Amgen will produce documents from the 1991 through January 1, 2004 time-frame, but not through the dates proposed in my January 9, 2006 letter? Also, it isn't so much that Judge Saris's order on class certification re-opened discovery; it's that her decision underscored the propriety of plaintiffs' long-pending requests.

Regarding scheduling, obviously it was impossible to note all necessary depositions or targeted follow-up discovery in advance of December 3, 2005, given that your client's initial production was not complete until January 30, 2006. You know our position regarding this issue, and we know yours. But moving beyond the parties' expressed positions, it only seems reasonable that Amgen agree voluntarily to permit the follow-up discovery I have described. Do you seriously doubt that the Court will not allow it, however the Court rules on the broader motion for modification of the overall Track Two schedule?

As for the objections to the very limited document production requested with plaintiffs' most recent notices of deposition, again, given the reason for the timing attendant to issuance of those notices, how is it reasonable to say that the schedule, which already has been exceeded by Amgen's production to-date, should cut-off such limited discovery as to these deponents?

--Rob

From: Young, Joseph H. (Hank) [mailto:JHYoung@HHLAW.com]
Sent: Wednesday, February 15, 2006 2:40 PM
To: Rob Lopez
Subject: RE: AWP -- Amgen Production

Rob --

Thank you for your email.

First, as my prior correspondence makes clear, Amgen is willing to accede to your January 9, 2006 request regarding supplementation through January 1, 2004. As I have mentioned repeatedly, this is substantially longer than the time periods that have been applied to most, if not all, of the Track 1 and other Track 2 defendants. I do not believe Judge Saris intended her Track 1 class order to reopen discovery for either tracks and, as I noted in my letter, doing so now would not only be burdensome, but would be a significant step backward in terms of moving discovery toward some closure.

As for scheduling, this is, as I have said, a problem largely of plaintiffs' own making for two reasons. First, but for the nearly five-month delay in getting things started last year, production clearly would have been completed last summer or early fall. As to the issue of relevant time frame, Amgen made its position clear in its written responses (generally consistent with every other defendant in this litigation) and reiterated its position in June 2005. Had the issue been raised in a timely fashion, rather than more than a month after the scheduled close of discovery under the still-current scheduling order, neither side would be in the position we find ourselves. In any event, Amgen indicated it would be willing to agree to an extension consistent with the Track 2 proposal before the court. Plaintiffs rejected that offer, and until Judge Saris rules on the competing proposals pending before the Court, I see little sense in debating the issue further.

With regard to supplemental productions, consistent with its offer during our meet-and-confers, Amgen is already in the process of identifying documents that are believed to be responsive based on the expanded time frame. As I indicated in our prior discussions, this will include supplementation of our prior production of IMS data for the requested time frame, subject to availability (pre-1993). I will let you know promptly of any limitations in this regard.

Lastly, with regard to our written objections to the noticed depositions, your assumption is correct: these extend only to the document requests, and not, as we agreed, to the depositions themselves (other than those noticed in the

Montana and Nevada cases, in which Amgen is no longer a party).  It remains unclear to me why plaintiffs were "surprised" by written objections, given that they were timely filed consistent with the Federal Rules of Civil Procedure. In any event, I agree that a further meet-and-confer, at least to this extent, is unnecessary.

Please feel free to contact me if you have any further questions, comments or concerns.

Joseph H. ("Hank") Young
Hogan & Hartson, LLP
111 South Calvert Street, Ste. 1600
Baltimore, MD 21202
ph: 410/659-2775
fx: 410-/539-6981
email: jhyoung@hhlaw.com

_____

**From:** Rob Lopez [mailto:robl@hbsslaw.com]
**Sent:** Tuesday, February 14, 2006 8:02 PM
**To:** Young, Joseph H. (Hank)
**Cc:** Sean Matt
**Subject:** FW: AWP -- Amgen Production

Hank: The last paragraph should read "February 15, 2006" instead of "February 17, 2006."  Sorry for any confusion.  --Rob

_____

**From:** Rob Lopez
**Sent:** Tuesday, February 14, 2006 3:55 PM
**To:** 'Young, Joseph H. (Hank)'
**Cc:** Sean Matt
**Subject:** RE: AWP -- Amgen Production

Hank:

Putting your last two e-mails together with your letter to me of February 7, 2006, Amgen is offering to make a supplemental production of certain samples of certain categories of documents from sometime in late 1993 to early 1994 (though it is not completely clear that Amgen is willing to go back even that far) through January 1, 2004.  Amgen has selected this time-frame notwithstanding the Court's recent order on class certificaiton as to the Phase I defendants, which only underscores the propriety of the longer timeline that plaintiffs have been seeking.

Further, Amgen is not willing to agree to a reasonable modification of the discovery schedule between plaintiffs and Amgen, notwithstanding the situation caused by the fact that Amgen did not complete even its own unilaterally limited production until January 30, 2006, and notwithstanding the fact that based on what you have said previously, it could or will take months (at one point you threw out "until August 2006") for Amgen to review and ready more responsive documents for production.  I think it is abundantly clear why plaintiffs cannot accept this offer.

As for sanctions, one justifying reason is obvious: plaintiffs are seriously prejudiced by the fact that Amgen did not "complete" even its limited production until January 30, 2006, and the prejudice to plaintiffs is only enhanced by the fact that in plaintiffs' view, Amgen's production is anything but complete.  Amgen's actions have severely impacted plaintiffs' efforts to prepare their case, both for the pre-trial and trial phases, and that, of course, is prejudicial.  We know that Amgen's position is to blame plaintiffs for this state of affairs, but you know we believe otherwise.  Plaintiffs believe that Amgen's conduct is in violation of the civil rules and the Court's CMO No. 10, and

that it merits sanctions.

As for what we meant by "supplemental productions," Amgen knows plaintiffs' position as to what they believe they're entitled to discovery-wise. Amgen has offered to make a broader production, as set forth in your February 7, 2006 letter and in your e-mails below, than what it has made thus far. It seems abudantly clear to the plaintiffs that Amgen's recent offers set a bracket for the least amount of additional production that the Court will order. Accordingly, we urge that Amgen work on making a supplemental production as soon as possible that is at least in line with its most recent offer, or the prejudice to plaintiffs will only worsen. Naturally, if prejudice continues to accrue and worsen, then plaintiffs will have no choice but to take it up with the Court in the future, as that should occur. So what I was saying is that it would not be reasonable for Amgen to wait until the Court decides plaintiffs' motion to compel to begin collecting and reviewing more documents.

A couple of other matters. First, as we understand it, Amgen is likewise refusing to produce IMS data and reports through the full time-frame requested by plaintiffs, as that time-frame was reiterated in my letter to you of February 2, 2006. Accordingly, we are folding the issue of IMS production into plaintiffs' motion to compel.

Second, we recently received Amgen's written objections to plaintiffs' notices of deposition to Ms. Citty and Ms. Biancalana, et al. You have previously advised that you would work with us to schedule those depositions, so we are assuming that the objections are solely to the production of documents that plaintiffs have requested in conjunction with the notices of deposition. Please advise if our understanding is incorrect, *i.e.*, whether Amgen now objects to those depositions going forward at all, in spite of what you have said previously. If, on the other hand, we are correct--that Amgen is only objecting to production of the documents requested by way of the notices--then we intend to fold a request to compel production of those documents into plaintiffs' forthcoming motion to compel. Given the meet-and-confers and the messages and letters we have exchanged thus far, we think that plaintiffs are well aware of Amgen's position in this matter, though I must say that we were surprised to receive the objections given that you had made no objections, and had agreed to cooperate, previously. But if you wish to have a meet-and-confer on that topic, then we ask that it occur tomorrow, February 17, 2006. In the event you do wish to have a conference, then please let me know as soon as possible so that we can schedule it.

--Rob

---

**From:** Young, Joseph H. (Hank) [mailto:JHYoung@HHLAW.com]
**Sent:** Friday, February 10, 2006 9:20 AM
**To:** Rob Lopez
**Cc:** Barley, Steven F.; Walker, Jennifer A.
**Subject:** RE: AWP -- Amgen Production

Rob --

I want to make sure that I understand plaintiffs' position. The issue that I understand we are grappling with is Amgen's time frame exceptions. In that regard, we have agreed to supplement our prior productions through January 1, 2004, and have further agreed to supplement for periods prior to 1997, subject to agreement as to how to identify relevant samples in certain categories. Plaintiffs have categorically rejected Amgen's offer. Under these circumstances, I am at an utter loss to understand what conceivable basis plaintiffs have for seeking sanctions.

With regard to your reference to "supplemental productions" and plaintiffs' prejudice, I have no idea as to what you are referring. As indicated in the letter accompanying our most recent production, we believe we have substantially completed our production in response to the Omnibus requests, as modified by agreement. I'd appreciate it if you would let me know what "data and/or documents" you believe remain outstanding, unless you are referring to items that are subject to the present dispute over relevant time frame.

Lastly, I believe that Amgen has identified fewer than 50 documents in the last supplemental production that contain privileged material that has been redacted, and have identified fewer than 100 such documents in our 43000-plus page production. Consistent with past practice, Amgen's supplemental privilege log will be provided to you in accordance with the deadlines established under CMO 10.

As always, please feel free to contact me if you have any questions regarding Amgen's position.

*Joseph H. ("Hank") Young*
*Hogan & Hartson, LLP*
*111 South Calvert Street, Ste. 1600*
*Baltimore, MD 21202*
*ph: 410/659-2775*
*fx: 410-/539-6981*
*email: jhyoung@hhlaw.com*

---

**From:** Rob Lopez [mailto:robl@hbsslaw.com]
**Sent:** Thursday, February 09, 2006 7:17 PM
**To:** Young, Joseph H. (Hank)
**Subject:** RE: AWP -- Amgen Production

Hank:

Plaintiffs cannot and do not accept Amgen's proposal as laid out in your letter of February 7, 2006, and added to by your e-mail below. As you must have anticipated, knowing what we have said and explained previously in our meet-and-confers, in my last letter to you, and otherwise, plaintiffs find the proposal unreasonable and unacceptable.

Plaintiffs will move to compel. Also, as I have advised previously, plaintiffs intend to ask for sanctions.

We hope and urge that in line with the Court's previous CMOs on discovery, Amgen will, during the pendency of plaintiffs' motion, continue to review documents and data as necessary and make supplemental productions as soon as possible. The Phase II schedule is progressing at a rapid clip, and the prejudice to plaintiffs is accruing daily.

Also, I note in reviewing the contents of the last CD that Amgen produced that certain material has been redacted purportedly on the basis of privilege. Plaintiffs look forward to receiving an appropriately detailed privilege log as soon as possible, and in accordance with the Court's CMO on privilege logs.

--Rob

---

**From:** Young, Joseph H. (Hank) [mailto:JHYoung@HHLAW.com]
**Sent:** Wednesday, February 08, 2006 7:10 PM
**To:** Rob Lopez
**Subject:** RE: AWP -- Amgen Production

Rob --

As you know, we have already included data for a significant portion of the period predating 1997. I am checking with information systems to find out what, precisely, would be involved to pull sales/credit/rebate data for periods not handled by the company's current operating systems.

As for the remaining categories, I am willing to see if we can negotiate some reasonable sampling (as you suggested with regard to contracts, for example), to the extent that documents dating back to this time period still exist and are readily identifiable.

Lastly, I want to make clear that in proposing to voluntarily extend the time period beyond that set out in Amgen's objections and answers, we are not agreeing to a modification of the discovery schedule along the lines set out in your letter.  Instead, if we are able to reach an agreement, Amgen expects the parties to follow the schedule that Judge Saris orders in ruling on the parties' CMOs.  As set out more fully in my letter of February 7 and in the separate responses to plaintiffs' motion to compel and motion to modify the Track 2 schedule last fall, we do not believe the circumstances warrant the extension requested.

Please let me know if you have any additional questions.

Joseph H. Young
Hogan & Hartson LLP
111 South Calvert Street
Suite 1600
Baltimore, MD  21201
410-659-2700
jhyoung@hhlaw.com

---

**From:** Rob Lopez [mailto:robl@hbsslaw.com]
**Sent:** Wednesday, February 08, 2006 5:53 PM
**To:** Young, Joseph H. (Hank)
**Subject:** FW: AWP -- Amgen Production

Checking again on this.

---

**From:** Rob Lopez
**Sent:** Wednesday, February 08, 2006 10:25 AM
**To:** 'Young, Joseph H. (Hank)'
**Subject:** RE: AWP -- Amgen Production

Hank:

I want to be sure I understand what you mean in your letter of yesterday's date.

When you go through the list of items that Amgen is willing voluntarily to supplement, you repeatedly say "through January 1, 2004."  What are you intending to be the bracket date going back in time, i.e., how far back in time is Amgen proposing to go?

Please advise as soon as possible.  --Rob

---

**From:** Young, Joseph H. (Hank) [mailto:JHYoung@HHLAW.com]
**Sent:** Tuesday, February 07, 2006 6:45 PM
**To:** Rob Lopez
**Subject:** AWP -- Amgen Production

<<img-207212951.pdf>>
Rob --

# Exhibit G

**to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.**



ROBERT F. LOPEZ
DIRECT • (206) 268-9304
ROBL@HBSSLAW.COM

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

February 2, 2006

**VIA ELECTRONIC MAIL**

Joseph H. Young
HOGAN & HARTSON LLP
111 South Calvert Street
Suite 1600
Baltimore, MD 21202

> Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation,*
>        MDL No. 1456

Dear Hank:

We write regarding Amgen Inc.'s ("Amgen") production in response to plaintiffs' pending requests for production.

As you know, you and I have now met and conferred on multiple occasions regarding the state of Amgen's production. During these conferences I, in behalf of plaintiffs, have raised questions regarding Amgen's production to-date, and we will discuss those in greater detail later in this letter. But what we first wish to discuss is Amgen's decision to produce materials, with limited exceptions pertaining to data, only from within the 1997-2001 timeframe.

Plaintiffs have never agreed to such a limited time-scope for production. As I have pointed out on several occasions during our conferences, plaintiffs' complaint sets forth a time-frame of 1991 through the present. Moreover, as I have pointed out, Judge Saris's class certification order of August 16, 2005 recognized the plaintiffs' class period to be from 1991 to the present. And, as we have discussed most recently, Judge Saris's Consolidated Order Re: Motion for Class Certification ("Consolidated Order") provides that the class periods extend from January 1, 1991 to January 1, 2005, or from January 1, 1991 to the present, depending on the sub-class.

ATTORNEYS AT LAW                    SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE • SUITE 2900 • SEATTLE WASHINGTON 98101
www.hagens-berman.com

DOCUMENT2

Joseph H. Young
February 2, 2006
Page 2

Moreover, as I have said on several occasions, the standard of discoverability under Fed. R. Civ. P. 26 would not restrict plaintiffs only to those documents created during the class period. It is certainly conceivable that documents created before or after a given class period could be discoverable, depending on their content and the circumstances of the case.

Further, I have pointed out during our discussions that other defendants, both Phase I and Phase II, have produced volumes of responsive documents dating before and after the 1997-2001 timeframe, in spite of formally having raised time-scope objections like Amgen's in response to plaintiffs' requests for production. That is why, until plaintiffs began receiving Amgen's document production in November of this year, plaintiffs were unsure of whether Amgen intended to stand on its time-scope objections and produce documents from the 1997-2001 time-frame only. Indeed, in response to plaintiffs' motion to compel, which was heard today, you wrote: "Following the May 27 meeting with Mr. Berman, Amgen agreed to finalize its transactional data and to undertake efforts to identify, review and produce documents *in response to plaintiffs' narrowed production requests, as outlined in Mr. Berman's May 26 email*." (Declaration of Joseph H. Young, ¶ 13 (emphasis added).) The Notargiacomo memo that Steve Berman transmitted with his May 26, 2005 e-mail ("Notargiacomo memo") does not, of course, recognize or acquiesce in Amgen's 1997-2001 time-scope limitation.

During the meet-and-confer process, you indicated that Amgen believed it had legal bases for its time-scope limitation. I advised that plaintiffs disagreed as to the validity of those bases.

I also indicated that plaintiffs were unaware of any extraordinary burden that would attend complying with their discovery requests. Early on I asked you to advise me of any extraordinary burden—that is, any burden other than the "burden" attending discovery in any large case—and none was identified.

A bit later in the process, I carefully examined the transcripts of the 30(b)(6) depositions that Ed Notargiacomo took, to see if I could ascertain any reasons why Amgen could not reasonably comply with plaintiffs' discovery requests. I could see none.

By Tuesday, January 31, 2006, when we last conferred, the parties had received the Court's Consolidated Order. As I said, that order underscored the correctness of

Joseph H. Young
February 2, 2006
Page 3

plaintiffs' position regarding Amgen's time-scope objection and corresponding production.

At that point, having discussed the issues with you on multiple occasions, having undergone our own analysis, and having received an order from the Court spelling out the class periods in the Phase I part of the case, there was nothing left to do but to communicate plaintiffs' proposal to head off the hearing scheduled for today, February 2. As I advised, plaintiffs would agree to take today's motion off of the Court's calendar in exchange for an agreement from Amgen that it would make a full production of documents and data[1] responsive to plaintiffs' omnibus requests for production as modified (but not supplanted) by the Notargiacomo memo, spanning the class periods set forth in the Consolidated Order. Plaintiffs also offered as a part of this proposal to take a reasonable and representative sampling of responsive contracts, with the proviso that the sampling would be sure to contain a good sampling of Amgen's large accounts.

Also, as I said, due to the hard press of the schedule, plaintiffs' proposal was conditioned on Amgen's pledge to complete its supplemental production on a rolling basis by April 2006, such pledge to be memorialized in an agreed order that also would extend the discovery period as to Amgen to the end of June 2006. The model would be the agreement entered into by Amgen's co-defendant Baxter.

You indicated that you would take the proposal to your client, but that you doubted you could get an answer in time to head-off the February 2 hearing.

Thus, as I have said in subsequent e-mails to you, plaintiffs' position is clear, and the meet-and-confer process as to the time-scope of Amgen's production has run its course. Again, the press of the schedule makes it absolutely imperative that the parties reach a resolution as to this important issue, whether voluntarily, or by order of the Court.

Of course, today's hearing has come and gone, and the Court did not resolve the issue. **Accordingly, plaintiffs must hear by 5:00 p.m. Pacific time on Monday, February 6, 2006, that Amgen agrees to their proposal for production of documents**

---

[1] Here I mean that Amgen will supplement its data production, as we have discussed, to the extent the requested data is available. As you have explained, that essentially means a supplemental production of post-2001 data. You have said on more than one occasion that supplementing Amgen's data production would not entail any great burden.

We also note that plaintiffs will require a supplementation of Amgen's IMS data and report production, to the extent responsive material was withheld on the basis of a time-scope objection. If necessary, plaintiffs will include a call for missing IMS data and reports in whatever discovery motion or appeal they are required to make.

Joseph H. Young
February 2, 2006
Page 4

**outside the '97-'01 timeframe or plaintiffs will promptly bring the issue to the Court yet again.** In addition, given the prejudice that continues to accrue to plaintiffs, as they now must factor review of documents yet to be produced by Amgen, and follow-up discovery, into an exceedingly short period during which they must also attend to the Phase I trial schedule, plaintiffs will call yet again for sanctions.[2]

During our conferences, we also have discussed issues that have arisen during our review of Amgen's production to-date. These include: the absence of salesperson activity reports from Western states; the fact that many salesperson activity reports say nothing but the salesperson's name—they do not include even the name of the person or entity visited (a sample is attached); a paucity or complete absence of Aranesp/Procrit price comparison worksheets, notwithstanding the entry "Econ – Aranesp/Procrit price comparison" on numerous salesperson activity reports; a paucity of records documenting discount free goods requests (which issue may or may not be able to be addressed by advice from your client as to the magnitude of free, or discount free, goods provided to customers); and a lack of background documents to the few Price History Data Sheets provided us, including but not limited to minutes of Pricing Committee meetings as well as other categories of documents referenced in Part IV of the Notargiacomo memo.

In addition, Hank, plaintiffs require a comprehensive advice from Amgen as to what categories of documents referenced in the Notargiacomo memo it has produced mere samplings of; similarly, plaintiffs need a comprehensive report of where Amgen has merely produced what I will call end-result documents as opposed to related, or background, documents. For example, regarding the production of "end-result" documents only, plaintiffs had no idea, until you said so during one of our conferences, that Amgen had decided on its own to produce only Price History Data Sheets as opposed to related, or background, documents such as minutes from Pricing Committee meetings.

As for another example giving us pause, we have seen relatively few e-mails on any topic in the production made thus far. Has Amgen opted to produce only a sampling of e-mails? If so, is it a sampling from all categories of responsive e-mails, or only from a select few? Again, plaintiffs require a comprehensive report as to where Amgen has produced a) only samplings of responsive documents, and b) only end-result, as opposed to related or background, documents.

---

[2] Please be advised that in any event, plaintiffs are considering an appeal of today's decision on their motion to compel insofar as Judge Bowler did not award sanctions as requested.

Joseph H. Young
February 2, 2006
Page 5


      Our review of Amgen's production is necessarily ongoing, especially in light of the fact that Amgen produced a data CD and a document CD on January 30, 2006 (both of which we received on January 31), the latter CD containing 16,753 document-image pages.  This means that more issues are likely to arise, which we will bring to your attention as they do.

      We look forward to hearing from you soon.

                    Very truly yours,

                    HAGENS BERMAN SOBOL SHAPIRO LLP

                    Robert F. Lopez


Attachment (AM00010939)

cc:    Steve W. Berman
       Sean R. Matt

# ORION Account Activity Report

Sorted by Amgen Employee, Activity Date, Facility Name, and Activity Type

ACIS Number:        FACILITY:                                   ACTIVITY DATE:  9/13/2000

AMGEN EMPLOYEE:  MARK VISNOVSKE        ACTIVITY:  General        ACTIVITY TYPE:  Appointment

COMMENTS

| PRODUCT | MESSAGE | CONTACT PEOPLE |
|---|---|---|

HIGHLY CONFIDENTIAL

AM00010939

# Exhibit H

## to the Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion to Compel Production by Amgen, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
IN RE PHARMACEUTICAL INDUSTRY       )
AVERAGE WHOLESALE PRICE             )   M.D.L. No. 1456
LITIGATION                          )
_____)   CIV. ACTION NO. 01-12257-PBS
                                    )
THIS DOCUMENT RELATES TO:           )
ALL ACTIONS                         )
_____)
```

## CONSOLIDATED ORDER RE: MOTION FOR CLASS CERTIFICATION

January 30, 2006

Saris, U.S.D.J.

Pursuant to Fed. R. Civ. P. 23, plaintiffs have moved for an order certifying a class in this action.  After considering the submissions of the parties and the record in this case, and after hearing on January 19, 2006, I order that plaintiffs' motion for class certification is **ALLOWED IN PART and DENIED IN PART** as to the claims asserted in the Third Amended Master Consolidated Class Action Complaint ("TAMCCAC").  The Court relies on the reasons stated in court and in In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61 (D. Mass. 2005).  The classes are certified as follows:

### I. CLASSES AND SUBCLASSES CERTIFIED

**A.   Class 1:  Medicare Part B Co-Payment Class**

1.  Class Definition:

All natural persons nationwide who made, or who

incurred an obligation enforceable at the time of judgment to make, a co-payment based on AWP for a Medicare Part B covered Subject Drug[1] that was manufactured by AstraZeneca (AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P., and AstraZeneca U.S.), the BMS Group (Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., and Apothecon, Inc.), SmithKline Beecham Corporation d/b/a GlaxoSmithKline, or the Johnson & Johnson Group (Johnson & Johnson, Centocor, Inc., Ortho Biotech, McNeil-PPC, Inc., and Janssen Pharmaceutica Products, L.P.). Excluded from the Class are those who made flat co-payments, who were reimbursed fully for any co-payments, or who have the right to be fully reimbursed; and the residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana, and Virginia (where consumer protection statutes do not permit class actions).

2.   The Court certifies four Subclasses corresponding to each of the defendant groups.

3.   The Court certifies the following plaintiffs as representatives of these Subclasses pursuant to Fed. R. Civ. P. 23(b)(3). Leroy Townsend (AstraZeneca); David and Susan Ruth Aaronson (GlaxoSmithKline, the BMS Group); Joyce Howe, individually and on behalf of the Estate of Robert Howe (AstraZeneca); James and Teresa Shepley (the Johnson & Johnson Group); Larry Young, individually and on behalf of the Estate of

---

[1] The Subject Drugs are identified in the Table of Subject Drugs found at the end of this Order. Defendants recently raised the issue that some drugs were improperly included. After conferring, the parties may move to strike drugs included in error.

2

Patricia Young (the Johnson & Johnson Group). The representative of a Subclass need only have paid for one of the Subject Drugs manufactured or marketed by a defendant group. I decline to certify a class of persons who made co-payments for drugs manufactured by the Schering Plough Group (Schering-Plough Corporation and Warrick Pharmaceuticals Corporation) because plaintiffs have not proposed any adequate and typical representatives of that proposed subclass.

4. The consumer protection act of each state shall apply to these Subclasses. Specifically, the Medicare Part B Co-payment Class is certified for claims under the following statutes: (a) Ariz. Rev. Stat. § 44-1522, *et seq.*; (b) Ark. Code § 4-88-101, *et seq.*; (c) Cal. Bus. & Prof. Code §§ 17200, *et seq.*, 1770; (d) Colo. Rev. Stat. § 6-1-105, *et seq.*; (e) Conn. Gen. Stat. § 42-110b, *et seq.*; (f) 6 Del. Code § 2511, *et seq.*; (g) D.C. Code § 28-3901, *et seq.*; (h) Fla. Stat. § 501.201, *et seq.*; (i) Haw. Rev. Stat. § 480, *et seq.*; (j) Idaho Code § 48-601, *et seq.*; (k) 815 ILCS § 505/1, *et seq.*; (l) Ind. Code Ann. § 24-5-0.5.1, *et seq.*; (m) Kan. Stat. § 50-623, *et seq.*; (n) Md. Com. Law Code § 13-101, *et seq.*; (o) Mass. Gen. L. Ch. 93A, *et seq.*; (p) Mich. Stat. § 445.901, *et seq.*; (q) Minn. Stat. § 325F.67, *et seq.*; (r) Mo. Rev. Stat. § 407.010, *et seq.*; (s) Neb. Rev. Stat. § 59-1601, *et seq.*; (t) Nev. Rev. Stat. § 598.0903, *et seq.*;

3

(u) N.H. Rev. Stat. § 358-A:1, *et seq.*; (v) N.J. Stat. Ann.
§ 56:8-1, *et seq.*; (w) N.M. Stat. Ann. § 57-12-1, *et seq.*;
(x) N.Y. Gen. Bus. Law § 349, *et seq.*; (y) N.C. Gen. Stat. § 75-
1.1, *et seq.*; (z) N.D. Cent. Code § 51-15-01, *et seq.*; (aa) Ohio
Rev. Stat. § 1345.01, *et seq.*; (bb) Okla. Stat. tit. 15 § 751, *et
seq.*; (cc) Or. Rev. Stat. § 646.605, *et seq.*; (dd) 73 Pa. Stat.
§ 201-1, *et seq.*; (ee) R.I. Gen. Laws. § 6-13.1-1, *et seq.*;
(ff) S.C. Code Laws § 39-5-10, *et seq.*; (gg) S.D. Code Laws § 37-
24-1, *et seq.*; (hh) Tenn. Code § 47-18-101, *et seq.*; (ii) Tex.
Bus. & Com. Code § 17.41, *et seq.*; (jj) Utah Code Ann. § 13-1 1-
1, *et seq.*; (kk) Vt. Stat. Ann. tit. 9, § 245 1, *et seq.*; (ll)
Wash. Rev. Code § 19.86.010, *et seq.*; (mm) W. Va. Code § 46A-6-
101, *et seq.*; (nn) Wis. Stat. § 100.18, *et seq.*; and (oo) Wyo.
Stat. § 40-12-100, *et seq.*  Plaintiffs allege that they have
complied with the notice provisions of all consumer protection
acts requiring such notice.

     5.   This Class is certified pursuant to Fed. R. Civ.
P. 23(b)(3).

**B.   Class 2:  Third-Party Payor MediGap Supplemental Insurance
Class**

     1.   Class Definition:

        All Third-Party Payors who made reimbursements for
        drugs purchased in Massachusetts, or who made
        reimbursements for drugs and have their principal
        place of business in Massachusetts, based on AWP

4

for a Medicare Part B covered Subject Drug that was manufactured by AstraZeneca (AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P., and AstraZeneca U.S.), the BMS Group (Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., and Apothecon, Inc.), SmithKline Beecham Corporation d/b/a GlaxoSmithKline, the Johnson & Johnson Group (Johnson & Johnson, Centocor, Inc., Ortho Biotech, McNeil-PPC, Inc., and Janssen Pharmaceutica Products, L.P.), or the Schering Plough Group (Schering-Plough Corporation and Warrick Pharmaceuticals Corporation).

2.   The Court certifies five Subclasses corresponding to each of the defendant groups.

3.   The Court certifies plaintiffs Blue Cross/Blue Shield of Massachusetts and Sheet Metal Workers National Health Fund as the representatives for this Class.

4.   The claims for this Class are certified under Mass. Gen. Laws ch. 93A.

5.   This Class is certified pursuant to Fed. R. Civ. P. 23(b)(3).

## C.   **Class 3:   Consumer and Third-Party Payor Class for Medicare Part B Drugs Outside of the Medicare Context**.

1.   Class Definition:

All natural persons who made or who incurred an obligation enforceable at the time of judgment to make a payment for purchases in Massachusetts, all Third-Party Payors who made reimbursements based on contracts expressly using AWP as a pricing standard for purchases in Massachusetts, and all Third-Party Payors who made reimbursements based on contracts expressly using AWP as a pricing standard and have their principal place of

5

business in Massachusetts, for a physician-administered Subject Drug that was manufactured by AstraZeneca (AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P., and AstraZeneca U.S.), the BMS Group (Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., and Apothecon, Inc.), SmithKline Beecham Corporation d/b/a GlaxoSmithKline, the Johnson & Johnson Group (Johnson & Johnson, Centocor, Inc., Ortho Biotech, McNeil-PPC, Inc., and Janssen Pharmaceutica Products, L.P.), or the Schering Plough Group (Schering-Plough Corporation and Warrick Pharmaceuticals Corporation). Included within this Class are natural persons who paid coinsurance (*i.e.*, co-payments proportional to the reimbursed amount) for a Subject Drug purchased in Massachusetts, where such coinsurance was based upon use of AWP as a pricing standard. Excluded from this Class are any payments or reimbursements for generic drugs that are based on MAC and not AWP.

2.  The Court certifies five Subclasses corresponding to each of the defendant groups.

3.  The Court certifies plaintiff Pipefitters Local 537 Trust Funds and Blue Cross/Blue Shield of Massachusetts as the representatives for this Class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3). The Court also certifies Health Care For All as the representative for this Class pursuant to Fed R. Civ. P. 23(b)(2).

4.  The claims for this Class are certified under Mass. Gen. Laws ch. 93A.

## II. CLASSES NOT CERTIFIED

1.  With respect to Class 2, plaintiffs have not submitted

an adequate analysis of the feasibility of a nationwide class of Third-Party Payors.  Therefore, the Court declines at this time to certify this Class under the consumer protection laws of states other than Massachusetts.  However, this denial is without prejudice.

2.  With respect to Class 3, the Court declines at this time to certify this Class under the consumer protection laws of states other than Massachusetts.  However, this denial is without prejudice.

3.  The Court declines to certify a class of persons or Third-Party Payors who made payments or reimbursements for self-administered drugs not appearing in the appended Table of Subject Drugs.  This denial is with prejudice.

### III.  MISCELLANEOUS

1.  The Class Period for Class 1 and Class 2 is January 1, 1991 to January 1, 2005.  The class period for Class 3 is January 1, 1991 to the present.

2.  Excluded from these Classes are: any subsidiaries or affiliates of defendants; the officers and directors of defendants during the Class Period; members of defendants' immediate families; any person, firm, trust, corporation, officer, director, or any individual or entity in which any defendant has a controlling interest or which is related to, or

7

affiliated with, any defendant; the legal representatives,
agents, affiliates, heirs, successors-in-interest, or assigns of
any such excluded parties and governmental entities.

   3.   Pursuant to Fed. R. Civ. P. 23(g), the Court appoints
the following firms as Co-Lead Counsel:  Hagens Berman Sobol
Shapiro LLP; Spector Roseman & Kodroff, P.C.; Hoffman & Edelson;
The Wexler Firm; and Kline & Specter.

   4.   The "Together Rx" claims are not certified because they
are dismissed without prejudice by the filing of the TAMCCAC.

   5.   The Court retains the discretion under Rule 23 to modify
this Order.  Modifications may include adding new class
representatives, striking existing class representatives, and
striking drugs from the Table of Subject Drugs.

   6.   The Court declines to certify issues for an
interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or to
recommend appeal pursuant to Fed. R. Civ. P. 23(f).

                              _____
                              PATTI B. SARIS
                              United States District Judge

8