UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
IN RE PHARMACEUTICAL INDUSTRY         )
AVERAGE WHOLESALE PRICE               )   MDL NO. 1456
LITIGATION                            )   Civil Action No. 01-12257-PBS
_____)
                                      )   Hon. Patti B. Saris
THIS DOCUMENT RELATES TO THE          )
AMENDED MASTER CONSOLIDATED           )   Chief Mag. Judge Marianne B. Bowler
CLASS ACTION                          )
                                      )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF TRACK TWO DEFENDANTS'
MOTION TO COMPEL
PLAINTIFF BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC. AND
THIRD-PARTY NATIONAL HERITAGE INSURANCE COMPANY
IN THEIR CAPACITIES AS THE
MEDICARE PART B CARRIERS FOR MASSACHUSETTS
TO PRODUCE DOCUMENTS AND WITNESSES FOR DEPOSITION
<u>PURSUANT TO SUBPOENA</u>**

**<u>PRELIMINARY STATEMENT</u>**

The methodologies for calculating the submitted charges from and reimbursement payments to the providers of Medicare Part B drugs lie at the very heart of this case because they govern the co-insurance payments of Part B beneficiaries (members of Class I as defined in the Court's January 30, 2006 Order concerning Track One) and, in turn, the supplemental insurance payments made by "Medi-gap" providers (members of Class II for Track One). Private organizations, usually insurance companies, contract with the Centers for Medicare & Medicaid Services (CMS) to process and reimburse Medicare Part B claims and are referred to as Medicare Part B "carriers." From 1991 to 1997, plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA") was the Part B carrier for Massachusetts. And, since 1998, third-party National Heritage Insurance Company ("NHIC") has been the Commonwealth's Part

B carrier.  Given their central role in evaluating, considering and rejecting or implementing methodologies for calculating Medicare Part B drug reimbursement rates, track two defendant Aventis Pharmaceuticals subpoenaed the two carriers to produce documents concerning, and designate witnesses to testify about, these Medicare Part B pricing issues.

Despite the unquestioned relevance of the requested evidence, both BCBSMA and NHIC (the "Carriers") have failed to produce any responsive documents or witnesses for deposition.  Instead, and despite Defendants' concerted efforts to reach a mutually agreeable scope of initial production by the Carriers, BCBSMA has maintained that it is unable and unwilling to produce any documents or designate any witnesses and, after lodging similar objections, NHIC has all but refused to discuss the matter any further.  BCBSMA and NHIC, however, should be held to the same standard as the other companies, both parties and non-parties, that have responded to discovery requests and subpoenas in this case.  They should be ordered to respond to the Part B carrier subpoenas directed to them.

## STATEMENT OF FACTS

Defendants served BCBSMA with an October 21, 2005 subpoena to produce documents and an October 28, 2005 subpoena to produce 30(b)(6) designees for deposition.  See Exhibits 1 and 2 to the Declaration of Michael DeMarco ("DeMarco Decl.").  Defendants likewise served NHIC with an October 27, 2005 subpoena to produce documents and an October 28, 2005 subpoena to produce 30(b)(6) designees for deposition.  See DeMarco Decl. Exs. 3-4.  Highly probative of the material facts at issue in this case, the subpoenas seek documents and testimony concerning:

- The use of AWP in calculating submitted and approved charges for Medicare Part B drug transactions;

- The discretion of Part B carriers to determine pricing for Medicare Part B drugs;

- The information collected or received by the Carriers concerning the providers' actual acquisition costs; and,

- The carrier's methods for overcoming confounding factors associated with matching reimbursement rates with the actual form, strength, quantity and labeler of the drugs dispensed to Part B beneficiaries.

After service of the subpoenas and the receipt of the Carriers' boilerplate objections (see DeMarco Decl. Exs. 5-6), Defendants engaged in extended negotiations with BCBSMA and NHIC concerning the scope of the discovery requests and potential mechanisms to streamline their production. At first, Defendants supplied the Carriers with draft custodian of records declarations through which duly authorized representatives would produce documents responsive to the requests and attest to their authenticity or otherwise declare under penalty of perjury that no such records were in the possession, custody or control of the Carriers. See DeMarco Decl. Exs. 7-8. Both carriers, however, refused to produce such a declaration to the Defendants. See, e.g., DeMarco Decl. Ex. 9.

Defendants engaged in protracted discussions with BCBSMA in an attempt to identify and locate responsive documents and potential 30(b)(6) designees. See DeMarco Decl. Exs. 10-11. As part of this exchange, BCBSMA disclosed that it discontinued acting as the Massachusetts Part B carrier and transferred related materials to NHIC as of January 1, 1998, but that it had retained certain Part B-related documents. BCBSMA also provided incomplete and partial indices of documents for which it transferred custody to NHIC and lists of former

employees that were responsible for its Massachusetts Part B carrier work who it maintained were subsequently hired by NHIC.  See id.

In an effort to reach even a mutually agreeable scope of initial discovery, Defendants requested that BCBSMA produce a copy of any agreement between it and NHIC concerning the transfer of possession or control of the Part B documents and other assets to NHIC and an index for a particular collection of Medicare Part B pricing documents that were apparently part of the transfer.  Defendants also requested that BCBSMA initially respond by designating witnesses to testify regarding: (1) the frequency by which the submitted charges from and the reimbursement payments to health care providers deviated from the statutory AWP ceiling for the Medicare Part B transactions concerning the subject drugs, and (2) any surveys or other information prepared, gathered or received by BCBSMA concerning physician acquisition costs for the subject drugs.  See DeMarco Decl. Exs. 12-13.

About the same time, Defendants similarly requested that NHIC at least begin its production by producing the Medicare Part B pricing records of which it had taken control from BCBSMA as well as any corresponding records NHIC had created and maintained since the transfer.  Defendants further requested that NHIC provide a description of its electronic claims data and initially proceed with the depositions by designating witnesses to testify as to (1) whether it is possible to determine from the Part B records maintained by NHIC if the submitted charges for part B covered drugs were based upon AWP and the frequency by which the submitted charges from and the reimbursement payments to health care providers have deviated from the statutory AWP ceiling for Part B covered drugs since 1991, and (2) any surveys or other information prepared, gathered or received by BCBSMA concerning physician acquisition costs for the subject drugs.  See DeMarco Decl. Ex. 14.

NHIC initially raised concerns about preserving the confidentiality of personal identification information, and, in response, Defendants supplied NHIC with a copy of this Court's June 9, 2004 Protective Order Governing Confidential Health Information. See DeMarco Decl. Ex. 15. Defendants then conferred and corresponded with NHIC on January 30, 2006, attempting to facilitate the identification of potential 30(b)(6) designees, resolve NHIC's concerns regarding personal identification information and obtain the requested description of NHIC's electronic claims data. See DeMarco Decl. Ex. 16.

On the same day, Defendants also conferred with BCBSMA and repeated their requests for a copy of any agreement between BCBSMA and NHIC concerning the transfer of Part B documents and other assets and the index of the Medicare Part B pricing documents that BCBSMA reportedly transferred to NHIC. BCBSMA, however, did not produce either the asset transfer agreement or the index of Part B pricing records and refused to designate any witnesses. See DeMarco Decl. Exs. 17-19.

In the meantime, and despite repeated attempts by Defendants to correspond and confer with it, NHIC refused to produce any documents or designate any witnesses and essentially refused to discuss the matter any further. See DeMarco Decl. Exs. 20-24.

**ARGUMENT**

The scope of permissible pre-trial discovery is "very broad." See Cabana v. Forcier, 200 F.R.D. 9, 17 (D. Mass. 2001); 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995). " Relevance is to be broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action." Schuurman v. Town of North Reading, 139 F.R.D. 276, 277 (D. Mass. 1991) (internal citations omitted); see also Klonoski v. Mahlab, 156 F.3d 255, 267 (1st Cir. 1998); Sacramona v. Bridgestone/Firestone, Inc., 152 F.R.D. 428, 430 (D. Mass. 1993).

Furthermore, and contrary to their efforts to shift the burden of identifying appropriate deponents to the Defendants, plaintiff BCBSMA and third-party NHIC have the obligation and duty to identify and prepare 30(b)(6) designees to testify on their behalf. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 17 (1st Cir. 2000) (designating party has duty to identify witness that would best speak for it on listed matters); Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc., 201 F.R.D. 33, 37 (D. Mass. 2001) ("party responding to a Rule 30(b)(6) deposition notice must prepare deponents … [e]ven if the documents are voluminous" and their review "would be burdensome"); McLellan Highway Corp. v. United States, 95 F. Supp. 2d 1, 9 (D. Mass. 2000) ("corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation"); Big Top USA, Inc. v. The Wittnern Group, 183 F.R.D. 331, 339 (D. Mass. 1998) (corporation responding to a 30(b)(6) notice must make a reasonable attempt to ascertain information reasonably available to the corporation). Rule 37(a)(2)(B) provides that if a "corporation or other entity fails to make a designation under Rule 30(b)(6), . . . the discovering party may move for an order compelling . . .

a designation . . ..." Both BCBSMA and NHIC have failed to designate anyone and the Court should enter such an order here.

The discovery sought from the Massachusetts Part B carriers focuses on issues central to this litigation. The Court has already recognized that production requests of a similar magnitude do not pose the sort of burden that would obviate the obligation to produce relevant documents and witnesses and that the discovery sought is relevant and responsive to this case.[1] Defendants are willing to inspect and copy documents at their own expense and at the Carriers' respective places of business. Similarly, it will not be unreasonably burdensome to produce witnesses for deposition. Defendants are willing to travel to the witnesses' location and, for each carrier, the contemplated depositions would last no longer than a day.

## CONCLUSION

In their role as the Medicare Part B carriers for Massachusetts, plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. and third-party National Heritage Insurance Company evaluated, considered and rejected or implemented various methodologies for calculating Medicare Part B drug reimbursement rates, which, in turn, determined the co-insurance payments of the Part B beneficiaries and the payments made by third-party providers of "Medi-gap" insurance. Consequently, the Medicare Part B pricing evidence that Defendants seek from these carriers is highly probative of the material facts at issue in this case. Defendants therefore request that this Court enter an Order requiring Blue Cross and Blue Shield of Massachusetts, Inc. and National Heritage Insurance Company to produce documents and witnesses pursuant to

---

[1] See, e.g., In re Pharm. Industry Average Wholesale Price Litig., No. 01-cv-12257, MDL 1456 (D. Mass. Apr. 26, 2004 (denying motion to quash subpoenas directed to third-party health plans); id. (Nov. 2, 2004) (granting motion to compel third party corporations to produce witnesses for deposition); id. (Jan. 27, 2005) (granting motion to compel third-party corporation to produce documents).

the subpoenas served upon them in October 2005, and granting such other and further relief as the Court deems just and appropriate.

/s/ Michael DeMarco
Michael DeMarco (BBO #119960)
   mdemarco@klng.com
Aimée E. Bierman (BBO #640385)
   abierman@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA  02109-1808
(617) 261-3100

Michael L. Koon
James P. Muehlberger
SHOOK, HARDY & BACON L.L.P.
2255 Grand Boulevard
Kansas City, Missouri  64108-2613
(816) 474-6550

*Attorneys for Defendant
Aventis Pharmaceuticals Inc. on behalf of
the Track Two Defendants*

Dated:  February 28, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2006, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ Michael DeMarco
Michael De Marco