UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br><br>THIS DOCUMENT RELATES TO ALL CLASS ACTIONS,<br>*State of Nevada v. Abbott Labs., Inc., et al.,* Case No. CV02-00260 (Nevada I) and<br>*State of Montana v. Abbott Labs., Inc., et al.,* CA No. 02-CV-12084-PBS[1] | MDL No. 1456<br><br>Judge Patti B. Saris<br>MDL No. 1456<br>Civil Action No. 01-12257-PBS |

**DEFENDANTS BAXTER INTERNATIONAL INC.'S AND BAXTER HEALTHCARE CORPORATION'S RESPONSE TO THE COURT'S QUESTIONS OF FEBRUARY 7, 2006, AND FURTHER MOTION FOR EXTENSION OF TRACK II DISCOVERY SCHEDULE AND TO AMEND CMO NO. 23 ONLY WITH RESPECT TO BAXTER**

Defendants Baxter International Inc. and Baxter Healthcare Corporation (collectively "Baxter") hereby respond to the questions posed by the Court in its February 7, 2006 Order, and further respectfully request that this Court extend the Track II discovery schedule and amend Case Management Order ("CMO") No. 23 with respect to discovery between Baxter and plaintiffs in the above matters. We have contacted plaintiffs' counsel, who has authorized us to represent that plaintiffs agree with the extended discovery schedule proposed herein.

---

[1] Baxter is not a defendant in *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (Nevada II).

- 2 -

Baxter previously made similar motions requesting an extension of their fact discovery deadlines to June 1, 2006.[2] On February 7, 2006, the Court denied one of those motions without prejudice:

> Denied without prejudice. The parties have not explained the issues in this case. Is it possible to bifurcate liability discovery from damage discovery? Can't summary judgment be briefed prior to the close of expert discovery?

From the outset, Baxter and its counsel wish to be abundantly candid with the Court that this motion, and Baxter's prior motions, are *not* part of a "litigation strategy" designed somehow to seek a tactical advantage through an extension of the discovery schedule. If that were the case, plaintiffs would not have assented to the relief that Baxter now seeks. Instead, Baxter has made a carefully considered, good faith, and, above all, *realistic* assessment of when it can conclude discovery. The present motion, moreover, is not necessitated by Baxter simply not trying hard enough. As demonstrated below, despite dedicated effort and the expenditure of enormous human resources, Baxter unfortunately, and simply, cannot meet the present discovery deadline. Ex. 1 (Bolton Declaration, ¶3). It is, therefore, with its duty of utmost candor to the Court in mind that Baxter now seeks the requested relief; *viz.*, it is better to be honest with the Court now and state the hard truth, than to file the predictable motion to enlarge time at the eleventh hour when the Court's schedule has become understandably more inflexible. We do not believe that the allowance of our motion

---

[2] On November 22, 2005, plaintiffs and Baxter filed a Joint Agreed Motion for Extension to Track II Discovery Schedule With Respect to Baxter for all class actions in MDL No. 1456. That joint motion is still pending. On January 31, 2006, Baxter filed a Motion for Reconsideration of Order Denying Joint Motion to Amend CMO 15.

will cause a "run on the bank" because we have sought this relief twice before and our requests have not spawned similar requests by other defendants.

In addition, and in response to the Court's February 7 Order, we also demonstrate why we believe bifurcation is not feasible (and could well cause additional delay). We also describe why summary judgment cannot be briefed prior to the close of expert discovery.

For all of these reasons, we respectfully request that the schedule proposed herein regarding the Baxter claims be accepted and that the Track II discovery schedule and CMO No. 23 be amended accordingly. A proposed Order is attached. Ex. 2

## I.   BACKGROUND

Baxter has concluded that it is not possible to complete discovery by March 31, 2006 -- the present discovery cut-off. Bolton Declaration, ¶3. Baxter makes this assertion based upon the vast amount of work that it has undertaken to date and, more importantly, the substantial work that remains. Baxter has and will continue to devote a massive effort to satisfy its discovery obligations.

### a.   Previous Discovery Efforts

Baxter has never before faced litigation implicating the range of potentially responsive records involved here. Records regarding the development, sales, marketing, and pricing of Baxter products and therapies are created, held, and stored by a huge number of employees across multiple Baxter facilities, divisions, and disciplines using multiple retention, filing, and electronic storage systems. Bolton Declaration, ¶4. In searching for relevant information, Baxter interviewed

approximately 400 present and former employees and physically collected information from over 400 individual document custodians. Those present and former employees were physically located in disparate sites around the country (in Baxter offices and, for scores of sales personnel, at their home offices). Bolton Declaration, ¶5. More than 6,500,000 pages of documents have been collected for review and potential production. Bolton Declaration, ¶6. Baxter has reviewed approximately 400,000 pages and produced nearly 70,000 pages of documents over the course of 14 separate/rolling document productions. Bolton Declaration, ¶7. Baxter will soon produce approximately 120,000 pages of documents in the MDL. Those documents will be followed shortly thereafter by production of approximately 100,000 pages. Bolton Declaration, ¶8.

Baxter has expended a huge amount of monetary and human resources in undertaking the above effort. In addition to in-house counsel and legal staff, 12 outside lawyers are devoted full time to working on the MDL and related AWP litigation. To bolster that effort, Baxter has retained 35 additional contract attorneys, whose sole effort is focused upon document review and production. Because additional documents and information have been identified, we anticipate that *15 to as many as 40 additional contract attorneys* will be hired for document review and production. Bolton Declaration, ¶9.

In addition to the above attorney time, Baxter has contracted with an electronic discovery vendor which, in cooperation with Baxter, is in the process of completing the collection of potentially responsive information, including the collection of computer hard drives, e-mails, and network documents. This review has involved at

least eight electronic records systems, including outmoded predecessor/legacy computer systems. Bolton Declaration, ¶10. In the past several weeks alone, Baxter and its vendor have successfully collected approximately 165 computer hard drives, each of which must be carefully reviewed for responsive information. Bolton Declaration, ¶11. This process is particularly time intensive. Baxter is presently adding additional personnel and resources to its discovery efforts in order to complete discovery as soon as possible.

### b. Future Discovery Effort

As described above, Baxter has collected millions of pages of potentially responsive information and is working to review and produce responsive information. Baxter has also identified three additional corporate document depositories: Buffalo Grove, IL; New Providence, NJ;[3] and several separate physical storage facilities in and around Los Angeles, CA. Bolton Declaration, ¶12. The effort necessary to review all of these documents cannot be completed in the time period presently specified in CMO No. 23. By way of example, the Buffalo Grove location was determined to contain approximately *40,000 boxes* of potentially responsive documents. Through analysis of record management indices, we have been able to reduce that universe of potential documents to approximately 15,000 boxes, which would require man-years of review time. We subsequently located more specific indices that provide greater detail of the contents of those boxes. We are presently reviewing those indices – contained on nearly 8,300 pages – in an effort to streamline further Baxter's discovery efforts. Bolton

---

[3] The documents located in New Jersey relate to the Baxter Anesthesia and Critical Care Division ("ACC"). For the MDL class actions and Montana and Nevada actions, plaintiffs' counsel agreed to remove the ACC drugs from the case. We hope that plaintiffs in other AWP-related actions will similarly agree to remove/exclude ACC drugs from any litigation. Even with their concurrence, Baxter must still review millions of pages of documents.

Declaration, ¶13. A similar process, which also took a great deal of time, resulted in a substantial reduction in the number of boxes of documents to be reviewed in the Los Angeles locations. While we continue to work to narrow the universe of responsive documents, we nonetheless must then review the targeted documents for relevance and privilege. This review process is laborious and, realistically, prevents conclusion of discovery by March 31.

### c.   Bifurcation of Discovery or Briefing Is Not Viable

For many of the same reasons, we do not believe that it is possible to bifurcate liability and damage discovery. Bolton Declaration, ¶14. The documents produced to date and to be produced are not identified, organized, or captured in a manner that would permit us to identify particular categories of document as relevant to liability or damages. The sheer magnitude of the document identification and review process requires that we spend considerable effort simply identifying overall responsiveness and relevance. As a result, we are unable to segregate liability discovery from damages discovery.

Facts regarding one Baxter employee, Greg Neier, are illustrative of this point. Neier is Vice President of Sales for the Medication Delivery Division's alternate site business, which is responsible for selling Baxter's Medication Delivery portfolio of products to non-hospital customers. Neier's group sells drugs to various wholesalers at wholesale acquisition cost ("WAC") prices and has some input in the determination of those WAC prices. Plaintiffs allege that documents discussing WAC prices are relevant to liability issues.[4] Neier's group is also in possession of numerous financial reports and

---

[4] Baxter disagrees with the substance of plaintiffs' allegations in this regard. However, the documents may be responsive to plaintiffs' discovery requests.

data that plaintiffs allege bear on any damages analysis. Baxter is not aware of any way to segregate these documents prior to a thorough review of all of Neier's documents (hard copy files, computer hard drive, network files, etc.). Bolton Declaration, ¶15.

Moreover, our interviews have revealed that many relevant custodians have documents relating to both liability *and* damages. We have been collecting documents from custodians' hard copy files, computer hard drives, and network files, among other sources. An undertaking to separate liability documents from damages documents presupposes that the documents easily can be identified as either liability documents or damages documents in advance of collection and/or review. Bolton Declaration, ¶¶14, 15. This is not the case.

Similarly, we are unable to segregate documents that might be relevant to expert analysis from those documents that are generally relevant/responsive to plaintiffs' discovery requests. The vast volume of potentially responsive documents demands that we produce documents on a rolling basis as they are collected, reviewed, and produced. The present process – which is designed to provide plaintiffs with responsive information as quickly as possible – does not permit expert discovery to close before more general document/fact discovery. Bolton Declaration, ¶16. For these reasons, the most efficient methodology is to capture and produce documents. Thereafter, fact depositions should be completed. Only then should expert depositions proceed. All of these activities should precede summary judgment.

## II. CONCLUSION

This litigation requires Baxter to protect and collect an unprecedented amount of documents and information. Despite intense efforts by Baxter to comply with the present discovery schedule, Baxter realizes in good faith that it cannot complete discovery pursuant to the existing schedule. Too many documents and data must still be collected and produced. The information cannot be collected in a way that would permit bifurcation of the liability and damages phases of this matter. Attempting to bifurcate, and thereby duplicating the document collection and production process, would likely create even more delay. For the same reasons, summary judgment briefing cannot be accelerated. We respectfully suggest that briefing should occur after the conclusion of all discovery. Otherwise, summary judgment briefs will be incomplete and the parties and the Court will lose the benefit of narrowing issues for trial.

For all of the foregoing reasons, Baxter respectfully requests that this Court enter an order extending the Track II discovery schedule and amending CMO No. 23 solely to permit Baxter and plaintiffs to proceed on the following schedule:

- Final date for production of documents: June 1, 2006,
- Final date for depositions of fact witnesses: September 30, 2006;
- Plaintiffs to file their expert reports on liability: November 15, 2006;
- Baxter to file its expert reports on liability: December 1, 2006;

- 9 -

- Completion of expert depositions: December 30, 2006.[5]

DATED: March 1, 2006

*On Behalf of Baxter International Inc. and*
*Baxter Healthcare Corporation*


By: /s/ Merle M. DeLancey

---

[5] This is the same schedule requested last Fall in plaintiffs' and Baxter's Joint Agreed Motion for Extension to Track II Discovery Schedule With Respect to Baxter, filed November 22, 2005 for all class actions in MDL No. 1456.

## CERTIFICATE OF SERVICE

I hereby certify that I, Merle M. DeLancey, counsel to Baxter International Inc. and Baxter Healthcare Corporation, caused a true and correct copy of the foregoing Baxter International Inc.'s and Baxter Healthcare Corporation's Response to the Court's Questions of February 7, 2006, and Further Motion For Extension of Track II Discovery Schedule and to Amend CMO No. 23 Only With Respect to Baxter and Order to be served electronically on counsel of record pursuant to Paragraph 11 of the Case Management Order No. 2, by sending a copy to LexisNexis File and Service for posting and notification to all parties on March 1, 2006.

/s/ Merle M. DeLancey
Merle M. DeLancey
Dickstein Shapiro Morin & Oshinsky
LLP 2101 L Street, N.W.
Washington, D.C. 20037
Tel: (202) 828-2282
Fax: (202) 887-0689
Counsel for Baxter International Inc.
and Baxter Healthcare Corporation