# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS, *State of Nevada v. Abbott Labs., Inc., et al.*, Case No. CV02-00260 (Nevada I) and *State of Montana v. Abbott Labs., Inc., et al.*, CA No. 02-CV-12084-PBS[1] | Judge Patti B. Saris MDL No. 1456 Civil Action No. 01-12257-PBS |

## DECLARATION OF MICHAEL BOLTON

I, Michael Bolton, declare as follows:

1. I am Senior Counsel for Defendant Baxter International Inc. and am authorized to make this verification on behalf of Baxter Healthcare Corporation.

2. I have reviewed Baxter International Inc.'s and Baxter Healthcare Corporation's Response to the Court's Questions of February 7, 2006, and Further Motion For Extension of Track II Discovery Schedule and to Amend CMO No. 23 Only With Respect to Baxter.

3. Despite dedicated effort and the expenditure of enormous human resources, Baxter has concluded that it is likely not possible to complete discovery by March 31, 2006 -- the present discovery cut-off.

4. To the best of my knowledge, Baxter has never before faced litigation implicating the range of potentially responsive records involved here. Records regarding the development, sales, marketing, and pricing of Baxter products and

---

[1] Baxter is not a defendant in *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (Nevada II).

- 1 -

therapies are created, held, and stored by a huge number of employees across multiple Baxter facilities, divisions, and disciplines using multiple retention, filing, and electronic storage systems.

5. Baxter has interviewed approximately 400 present and former employees and physically collected information from over 400 individual document custodians. Those present and former employees were physically located in disparate sites around the country (in Baxter offices and, for scores of sales personnel, at their home offices).

6. More than 6,500,000 pages of documents have been collected for review and potential production.

7. Baxter has reviewed approximately 400,000 pages and produced nearly 70,000 pages of documents over the course of 14 separate/rolling document productions.

8. Baxter will soon produce approximately 120,000 pages of documents in the MDL. Those documents will be followed shortly thereafter by production of approximately 100,000 pages.

9. In addition to in-house counsel and legal staff, 12 outside lawyers are devoted full time to working on the MDL and related AWP litigation. Baxter has retained 35 additional contract attorneys, whose sole effort is focused upon document review and production. We anticipate that 15 to as many as 40 additional contract attorneys will be hired for continued document review and production.

10. Baxter has contracted with an electronic discovery vendor which, in cooperation with Baxter, is in the process of completing the collection of potentially responsive information, including the collection of computer hard drives, e-mails, and

network documents. This review has involved at least eight electronic records systems, including outmoded predecessor/legacy computer systems.

11. In the past several weeks alone, Baxter and its vendor have successfully collected approximately 165 computer hard drives, each of which must be carefully reviewed for responsive information.

12. Baxter has also identified three additional corporate document depositories: Buffalo Grove, IL; New Providence, NJ; and, four to six separate physical storage facilities in and around Los Angeles, CA.

13. The Buffalo Grove location was determined to contain approximately *40,000 boxes* of potentially responsive documents. Through analysis of record management indices, we have been able to reduce that universe of potential documents to approximately 15,000 boxes. We subsequently located more specific indices that provide greater detail of the contents of those boxes. We are presently reviewing those indices – contained on nearly 8,300 pages – in an effort to streamline further Baxter's discovery efforts.

14. We do not believe that it is possible to bifurcate liability and damage discovery. Document custodians have documents relating to both liability *and* damages. We have been collecting documents from custodians' hard copy files, hard drives, and network files, among other sources. To date, we have been unable to identify documents as either liability documents or damages documents in advance of collection and review.

15. For example, Greg Neier, Vice President of Sales for the Medication Delivery Division's alternate site business, is responsible for selling Baxter's Medication Delivery portfolio of products to non-hospital customers. Neier's group sells drugs to

- 3 -

various wholesalers at wholesale acquisition cost ("WAC") prices and has some input in the determination of those WAC prices. Plaintiffs allege that documents discussing WAC are relevant to liability issues. Neier's group is also in possession of numerous financial reports and data that plaintiffs allege bear on any damages analysis. Baxter is not aware of any way to segregate these documents prior to a thorough review of all of Neier's sources of documents (hard copy files, hard drive, network files, etc.).

16. The vast volume of potentially responsive documents demands that we produce documents on a rolling basis as they are collected, reviewed, and produced. The present process – which is designed to provide plaintiffs with responsive information as quickly as possible – does not permit us to collect documents that might be relevant to expert analysis separately from those documents that are generally relevant/responsive to plaintiffs' discovery requests.

I declare under penalty of perjury that the foregoing is true and correct to the best of my belief.

Executed on 28 February, 2006.

_____
Michael Bolton