# Exhibit A



**NYSAC**

NEW   YORK   STATE
ASSOCIATION OF COUNTIES

111 Pine Street
Albany, NY 12207

Honorable Rocco J. DiVeronica, President
Stephen J. Acquario, Executive Director

*Testimony to the*

**New York State Senate
Joint Public Hearing**

*Of the*

**Senate Standing Committee on Health
Senate Standing Committee on Social Services, Children and Families
In conjunction with
The Senate Medicaid Reform Task Force**

*On*

**Wednesday, September 21, 2005
10:00 A.M.
Hearing Room A
Albany, New York**

*Presented by*

# Stephen J. Acquario, Esq.
## Executive Director
## New York State Association of Counties

Chairman Hannon, Chairman Meier, distinguished members of the Senate Health Committee, Social Services Committee and the Senate Medicaid Reform Task Force, thank you for the opportunity to testify today as you evaluate New York's efforts to detect, investigate and prosecute Medicaid fraud. As your partner in funding and administering Medicaid, counties share your concern about the integrity of our state's program and agree that steps must be taken to ensure that fraud and abuse control activities are sufficient to protect taxpayers from those who would attempt to misuse the program.

The current Medicaid caseload totals more than 4 million recipients whose services will result in an expenditure exceeding $44.5 billion this year. Because fraud and abuse by their nature are unknown until identified, the amount of Medicaid funds lost through inappropriate payments cannot be quantified. While we believe that the often cited General Accounting Office (GAO) claim of a general 10 percent health care fraud rate is exaggerated, even a more realistic rate as low as 4.5 percent means a loss of approximately $2.0 billion annually.

Let's stop to put this figure in perspective. Our counties combined, outside of New York City, will contribute roughly the same amount ($2 billion) as their total share of Medicaid expenses in 2006. The bottom line is that with any program of this magnitude, we need coordinated and aggressive fraud and abuse controls. Any loss through fraud and abuse is unacceptable.

2

Since July, when the New York Times focused attention on our state's Medicaid fraud and abuse control activities, there has been much confusion as to the county role in the payment and administration of the Medicaid program.

Unlike most states, our Medicaid program is administered by the State Department of Health through 58 county social services districts and through the New York State Office of Mental Health and Mental Retardation and Developmental Disabilities. Fiscal responsibility for services and administration is shared among the federal, state, and local government. Generally, the non-federal share of the Medicaid program is borne equally by the state and local governments, except for certain services. In the current year, counties, including New York City, will contribute a local share of approximately $6.6 billion as their share of the Medicaid program.

The recent legislation to cap the local share of Medicaid and limit the future growth in local financial liability is an extremely positive development for us at the local level. **We are also realistic and understand that the growth of the current program is unsustainable. A program that costs $44.5 billion and encounters double-digit growth each year is simply unsustainable.** Whomever is responsible for the cost—state or local—we must work together to reform our Medicaid program.

In our opinion, the Medicaid Cap enacted this year represents the most significant change to state/local fiscal policy since New York

3

enacted the Medicaid program in 1966 and while it has garnered most of the attention, I would like to point out that the new law provides for innovative local demonstration projects to improve the delivery of health services in a cost effective manner and allows savings to be shared with the participating counties. We believe that these demonstration projects are a huge opportunity to form new state and local partnerships and we have already put in motion a plan to assist the state with Medicaid provider fraud and abuse control activities.

Before I get into our plan, I think it's important to describe the current role counties play with Medicaid fraud and abuse. Traditionally, the county role in Medicaid fraud and abuse control activity has been focused on the identification and pursuit of recipient fraud, with counties identifying recipients who are fraudulently receiving benefits, performing investigations, and ultimately the recovery of funds through restitution agreement or criminal prosecution. Across the state, counties have aggressively pursued Medicaid recipient fraud and continue to monitor activity to ensure that only eligible recipients receive services.

While provider fraud can be investigated at many levels (federal, state and local) the ability to enforce administrative and criminal actions against Medicaid providers, remains with state and federal officials.

4

The responsibility for Medicaid provider audits resides with the State Department of Health and includes investigations, recovery of overpayments and sanctions of providers who commit Medicaid fraud. Also, counties do not have authority for administrative recovery of overpayments through provider withholds or the use of provider sanctions such as exclusions. Some additional program integrity functions such as pre-payment edit controls are also not available to counties.

The Health Department uses many techniques to identify fraudulent activity including computer analysis, surveillance and investigations, either independently or in collaboration with the Attorney General's office or federal agencies.

In instances where there may have been criminal fraud, the case is referred to the Medicaid Fraud Control Unit (MFCU) within the Attorney General's office, who is responsible for investigation and ultimate prosecution of criminal fraud.

Where the activity is determined to be an unacceptable practice but not criminal, the Health Department has the ability to exclude the provider from participating in the Medicaid program or pursue other lesser sanctions including limitations on Medicaid participation.

In the past, the State Health Department has made available to counties their Adjudicated Claims Files. This data identifies all Medicaid claims paid on behalf of recipients, for which the county is

5

fiscally responsible. If a county could review the data and identify a provider that they believed to have received an inappropriate payment, the county could refer the case to the State Health Department or offer the provider the opportunity to self-disclose any overpayment. However, a county's ability to effectively use the adjudicated claims file to identify questionable payment issues unique to a single provider or group of providers was very limited.

Lastly, counties can review the local share of Medicaid payments to providers by requesting information from the provider, but the county cannot conduct traditional audits that result in recovery of payments. If a county wanted to review the local share of Medicaid payments, they are required to enter into a detailed Memorandum of Understanding (MOU) with the State Health Department to ensure that any resultant recoveries taken by the State as a result of local review can withstand challenge.

The local role in Medicaid fraud and abuse control has been understandably limited by the State Health Department, as they must be assured that there is no duplication of effort, that proper audit procedures are followed, and that there is a consistent application of program requirements pursuant to federal and state regulations.

The development of the Medicaid data warehouse, as a part of the new EMedNY system, has provided the state and counties with a new ability to access payment information and perform analysis in ways that until now was not possible. This new system opens the

door to advanced data mining techniques and other methods to take on waste and abuse just like the tools used by leading healthcare and insurance companies in the private sector.

Given the availability of this data resource and our desire to develop creative cost savings demonstration projects, last May—before the NY Times articles, I want to point out—NYSAC formed a partnership with IBM to develop a state of the art fraud and abuse management program that can be applied to Medicaid at the local level.

This effort, called VERIFY NY, is the most advanced Medicaid claims management program available today and is based on three proprietary software tools, including a fraud and abuse management system that is used to analyze Medicaid claims for mathematical anomalies, a tool developed to discover additional data about providers or recipients based on fraud patterns identified in the healthcare industry, and a tool called entity analytics, which identifies networks and aliases of those submitting fraudulent claims.  This HIPPA-compliant program also identifies cost saving opportunities and other programmatic efficiencies that a county can develop into other cost containment concepts.

While the performance of the State Health Department and Office of the Attorney General have been questioned, we can report that they have actively sought working relationships with counties to improve and strengthen Medicaid auditing and program integrity functions statewide. In its support of this demonstration effort and a desire to

build upon their current resources, the State Health Department has been actively meeting with NYSAC to develop a statewide MOU and corresponding demonstration agreement. This will establish a protocol for counties to audit and investigate providers and clarify our respective roles concerning Medicaid fraud and abuse control efforts. Through this effort, county government will finally have the legal standing and technical ability to investigate health care providers.

We believe that our Verify NY project is a great opportunity to improve the Medicaid program for both consumers and taxpayers. Through this demonstration project, we will strengthen the integrity of the Medicaid program in New York. Several counties will participate in the initial phase and we look forward to reporting back to the Senate as our efforts move forward.

Medicaid fraud hurts taxpayers and recipients. While most providers and clients are honest, the tremendous size of the system enables some to financially profit through dishonest practices.

We are hopeful that with this renewed attention on the problem, we will identify new ways to build on the state and local partnership, strengthen our state's fraud and abuse control efforts and ensure the integrity our state's Medicaid program.

Thank you for your attention and I will be happy to answer any questions.