# Exhibit B



## NEW YORK LEGISLATIVE SERVICE, INC.

299 Broadway, New York, NY  10007  (212) 962-2826  www.nyls.org

Providing research and document services since 1932!

# GOVERNOR'S BILL JACKET

# 1975

# CHAPTER 659

## MEDICAID REIMBURSEMENT

## 35  PAGES

Copyright Notice:

All material added to the Governor's Bill Jacket by New York Legislative Service, Inc. is copyrighted as a compilation.
These pages, if any, are clearly indicated.

1975

SENATE

JUN 18 1975
PAGE 70
Date _____

The Senate Bill
by Mr. W. SMITH

Entitled: "

Senate No. 6553-A
Assem. Rept. No. _____

6553-A

MR. W.T. SMITH, ETC.
AN ACT TO AMEND THE SOCIAL SERVICES LAW, IN
RELATION TO INTEREST AND PENALTIES FOR
FALSE STATEMENTS OR MISREPRESENTATIONS IN
CONNECTION WITH MEDICAID REIMBURSEMENT

" was read the third time          DEBATE WAS HAD THEREON

The President put the question whether the Senate would agree to the final passage of said bill, the same having been printed and upon the desks of the members in its final form at least three calendar legislative days, and it was decided in the affirmative, a majority of all the Senators elected voting in favor thereof and three-fifths being present, as follows:

| AYE | Dist. |  | NAY | AYE | Dist. |  | NAY |
|-----|-------|--|-----|-----|-------|--|-----|
|  | 47 | Mr. Anderson |  |  | 22 | Mr. Lewis |  |
|  | 49 | Mr. Auer |  |  | 50 | Mr. Lombardi |  |
|  | 45 | Mr. Barclay |  |  | 24 | Mr. Marchi |  |
|  | 23 | Mr. Beatty |  |  | 5 | Mr. Marino |  |
|  | 25 | Ms. Bellamy |  |  | 48 | Mr. Mason |  |
|  | 33 | Mr. Bernstein |  |  | 28 | Mr. McCall |  |
|  | 19 | Mr. Bloom |  |  | 59 | Mr. McFarland |  |
|  | 12 | Mr. Bronston |  |  | 16 | Mr. Meyerson |  |
|  | 9 | Ms. Burstein |  |  | 14 | Mr. Moore |  |
|  | 7 | Mr. Caemmerer |  |  | 42 | Mr. Nolan |  |
|  | 34 | Mr. Calandra |  |  | 27 | Mr. Ohrenstein |  |
|  | 21 | Mr. Conklin |  |  | 17 | Mr. Owens |  |
|  | 46 | Mr. Donovan |  |  | 11 | Mr. Padavan | EXCUSED |
|  | 6 | Mr. Dunne |  |  | 60 | Mr. Paterson |  |
|  | 54 | Mr. Eckert |  |  | 53 | Mr. Perry |  |
|  | 35 | Mr. Flynn |  |  | 36 | Mr. Pisani |  |
|  | 32 | Mr. Galiber |  |  | 57 | Mr. Present |  |
|  | 30 | Mr. Garcia |  |  | 39 | Mr. Rolison |  |
|  | 1 | Mr. Giuffreda |  |  | 31 | Mr. Ruiz |  |
|  | 13 | Mr. Gold |  |  | 10 | Mr. Santucci |  |
|  | 26 | Mr. Goodman |  |  | 40 | Mr. Schermerhorn |  |
|  | 37 | Mr. Gordon |  |  | 2 | Mr. Smith, B. C. |  |
|  | 56 | Mr. Griffin |  |  | 51 | Mr. Smith, W. T. |  |
|  | 20 | Mr. Halperin |  |  | 43 | Mr. Stafford |  |
|  | 41 | Mr. Hudson |  |  | 18 | Mr. Straub |  |
|  | 44 | Mr. Isabella |  |  | 55 | Mr. Tauriello |  |
|  | 4 | Mr. Johnson |  |  | 3 | Mr. Trunzo |  |
|  | 15 | Mr. Knorr |  |  | 58 | Mr. Volker |  |
|  | 29 | Mr. Leichter |  |  | 52 | Mr. Warder |  |
|  | 8 | Mr. Levy |  |  | 38 | Ms. Winikow |  |

A Y E S _____ 57

N A Y S _____ 0

¶ Ordered, that the Secretary deliver said bill to the Assembly and request its concurrence therein.

W. Smith

§ 655.3-A, Rec. No. 833  7/8  **1975**

No. 1-150

(Republicans in Italics)

| Those Who Voted In the Affirmative | Those Who Voted in the Negative | Those Who Voted In the Affirmative | Those Who Voted In the Negative | Those Who Voted In the Affirmative | Those Who Voted in the Negative |
|---|---|---|---|---|---|
| Mr. Abramson | | Mr. Grannis | | Mr. Montana | |
| Miss Amatucci | | Mr. Greco | | *Mr. Murphy (G. A.)* | |
| Mr. Barbaro | | Mr. Griffin | | Mr. Murphy (M. J.) | |
| *Mr. Betros* | | Mr. Griffith | | *Mr. Murphy (T. J.)* | |
| Mr. Bianchi | | *Miss Gunning* | | Mr. Nicolosi | |
| Mr. Blumenthal | | Mr. Haley | | Mr. Nine | |
| Mr. Brewer | | Mr. Hamilton | | *Mr. O'Neil* | |
| Mr. Brown | | ~~Mr.~~ | | Mr. Orazio | |
| *Mr. Burns* | | Mr. Harenberg | | Mr. Passannante | |
| *Mr. Burrows* | | *Mr. Harris* | | ~~Mr. Pesce~~ | |
| *Mr. Calogero* | | *Mr. Haxley* | | Mr. Posner (H. A.) | |
| *Mr. Caputo* | | *Mr. Healey* | | Mr. Posner (S.) | |
| Mr. Cincotta | | Mr. Hecht | | *Mr. Rappleyea* | |
| *Mr. Cochrane* | | *Mr. Henderson* | | *Mr. Reilly* | |
| Mrs. Connelly | | *Mr. Herbst* | | *Mr. Riford* | |
| Mr. Connor | | Mr. Hevesi | | Mr. Robach | |
| *Mr. Cook (C. D.)* | | Mr. Hinchey | | *Mr. Roosa* | |
| *Mr. Cook (D. W.)* | | Mr. Hochberg | | *Mr. Ross* | |
| Mr. Cooperman | | Mr. Hochbrueckner | | Mrs. Runyon | |
| Mr. Culhane | | Mr. Hoyt | | *Mr. Ryan* | |
| *Mr. Daly* | | *Mr. Hurley* | | Mr. Schmidt | |
| *Mr. D'Amato* | | Mr. Izard | | Mr. Schumer | |
| *Mr. D'Andrea* | | *Mr. Jonas* | | *Mr. Sears* | |
| Mr. Dearie | | Mr. Kelleher | | Mr. Serrano | |
| *Mr. DelliBovi* | | Mr. Kidder | | *Mr. Sharoff* | |
| Mr. Del Toro | | Mr. Koppell | | Mr. Siegel | |
| Mr. DeSalvio | | Mr. Kremer | | Mr. Silverman | |
| *Mr. DiCarlo* | | Mr. Landes | | *Mr. Solomon* | |
| Mr. DiFalco | | *Mr. Lane* | | Mr. Stavisky | |
| Mrs. Diggs | | Mr. Lasher | | Mr. Stein | |
| *Mr. Dokuchitz* | | *Mr. Lee* | | *Mr. Stephens* | |
| *Mr. Duryea* | | Mr. Lehner | | Mr. Stott | |
| *Mr. Dwyer* | | Mr. Lentol | | Mr. Strelzin | |
| *Mr. Emery* | | *Mr. Levy* | | *Mr. Suchin* | |
| *Mr. Esposito* | | Mr. Lewis | | *Mr. Sullivan* | |
| Mr. Eve | | Mr. Lill | | Mr. Tallon | |
| Mr. Farrell | | Mr. Lisa | | *Mr. Taylor* | |
| Mr. Ferris | | *Mr. Lopresto* | | Mr. Thorp | |
| *Mr. Field* | | *Mr. Mannix* | | *Mr. Tills* | |
| Mr. Fink | | Mr. Marchiselli | | Mr. Vann | |
| *Mr. Flack* | | *Mr. Margiotta* | | *Mr. Felella* | |
| *Mr. Flanagan* | | *Mr. Marshall* | | Mr. Virgilio | |
| Mr. Fortune | | Mr. McCabe | | Mr. Walsh | |
| Mr. Fremming | | *Mr. Mega* | | *Mr. Wemple* | |
| *Mr. Frey* | | Mr. Miller (G. W.) | | Mr. Weprin | |
| Mr. Gazzara | | *Mr. Miller (H. J.)* | | ~~Mr.~~ | |
| ~~Mr.~~ | | *Mr. Miller (H. M.)* | | Mr. Yevoli | |
| Mr. Gerski | | Mr. Miller (M. H.) | | *Mr. Zagame* | |
| Mr. Gottfried | | Mr. Mirto | | Mr. Zimmer | |
| Mr. Gralice | | *Mr. Melinari* | | ~~Mr.~~ | |

Mr. Hanna present but not voting.

AYES ............ 144 ............

NOES ........ 1 ........



STATE OF NEW YORK
EXECUTIVE CHAMBER
ALBANY 12224

MEMORANDUM filed with the following bills:

Senate Bill Number 1074-C, entitled:

APPROVAL #44

CHAPTER # 648

"AN ACT to amend the public health law, in relation to the rights of patients in certain medical facilities"

Assembly Bill Number 8815, entitled:

45

CHAPTER # 649

"AN ACT to amend the public health law, in relation to enacting criteria for the regulation of nursing homes and facilities providing health-related service"

Assembly Bill Number 8816, entitled:

46

650

"AN ACT to amend the public health law, in relation to enacting revised criteria for the regulation of residential health care facilities"

Senate Bill Number 6466-A, entitled:

"AN ACT to amend the social services law, in relation to transfers of the care and custody of children"

Senate Bill Number 6541-C, entitled:

APPROVAL # 47

651

"AN ACT to amend the public health law, in relation to liability of controlling persons of nursing homes and facil- ities providing health-related services or the operators thereof"

Senate Bill Number 6542-B, entitled:

48

CHAPTER # 652

"AN ACT to amend the public health law, in relation to reports of nursing homes and facilities providing health- related services"

Senate Bill Number 6543-A, entitled:

49

653

"AN ACT to amend the public health law, in relation to providing for unannounced inspections of nursing homes and to providing administrative penalties for unauthorized advance notice of such inspections"

-3-

A P P R O V E D

When I took office in January of this year, the public's confidence in the State's ability to protect its most defenseless citizens, the aged and infirm, had been destroyed by a series of dramatic disclosures highlighting the abuses of nursing home care in this State.

One of my first acts was the creation of a Moreland Act Commission, headed by Morris B. Abram, to investigate the regulation of all residential care facilities in the State receiving any public funding.

Mr. Abram immediately assembled a talented staff to investigate the existing governmental system of regulation and to determine where that system failed to provide those charged with responsibility for residential health care with the necessary tools to carry out their responsibilities, as well as where that system was vulnerable to misuse and influence peddling.

Ten of the bills I am signing today are products of the Moreland Commission's work.  Two other bills, Assembly 8815 and Assembly 8816, complement these Moreland bills and address themselves as well to certain problems, including Medicaid rate setting, on an interim, emergency basis, to protect the public purse while these problems receive further study by the Moreland Commission during the coming months.

Another bill, Senate 1047-C, enacts a forceful bill of rights for patients in nursing homes which will guarantee them the dignity and privacy that is their due.

These bills together cover every aspect of the regulation of residential health care facilities--from financial disclosure by operators and owners to the creation of a patient's right of action against a facility which fails to meet required standards of care.  To curb abuses in the Medicaid program, they provide for the triple recovery by local districts of fraudulently obtained funds, for the exclusion of certain non-care related costs (such as legal fees) from Medicaid rates and for the stringent regulation of real estate cost claims.  In the area of patient care, they would give each patient the potential to act as his own ombudsman, and would provide for his access to full information about his facility.  In order to strengthen governmental regulation, they would provide for required inspections and a rating system, to be promulgated by the Commissioner of Health.  By this legislation, the Commissioner is also given important new powers to impose penalties and close facilities or limit their operation to protect patients' health or safety.

Each of these bills has been endorsed by the Moreland Commission and the Departments of Health and Social Services.

- 4 -

By doing much of what had to be done to strengthen the regulation of residential health care facilities and by providing their patients with basic rights, as well as the right to have their grievances redressed, this legislation is highly responsive to the needs of this group of citizens.   I commend the Moreland Commission and the sponsors of these bills for their work, which goes far in assuring that elderly and disabled New Yorkers who must look to nursing homes when they can no longer take care of themselves can find there the quality of care they seek and deserve.

The bills are approved.

*AEL 659*

**B-20f**

BUDGET REPORT ON BILLS

Session Year: 19 __75__

*AUG 5 1975*

**SENATE**

Introduced by:

**ASSEMBLY**

No. __6553-A__

Smith, Lombardi, Flynn

No.

Law:  Social Services

Sections:  §145-b (new)

Division of the Budget recommendation on the above bill:

Approve: _____ Veto: _____ No Objection: ____X____ No Recommendation: _____

1. Subject and Purpose:  This bill provides for financial penalties in cases of fraud or misrepresentations relating to reimbursement to any person or business for services or supplies provided to Medicaid recipients.

2. Summary of Provisions:  Existing statute provides for criminal penalties of up to four years imprisonment and for fines up to double the profit from the crime for persons who defraud the Medicaid program.

   Effective September 1, 1975, this bill would:

   a. Provide authority for the State or local social services district to sue Medicaid providers who defraud the State for damages equal to three times the amount of overstatement in addition to any other penalties provided by law.

   b. Provide for the apportionment of collected judgments between the local social services district and the State according to Department of Social Services regulation.

   c. Require Medicaid providers to pay interest on overpayments at the maximum rate in effect at the time of overpayment.

3. Prior Legislative History:  In the current legislative session, three bills (A. 6296-A, A. 3407, S. 2714), similar to the instant bill, would have provided for treble damages in the instance of overclaiming by service providers.  All bills died in committee.  A fourth bill (A. 6297-A) that would have required nursing home financial reports to be certified by a CPA, with intentional falsification classified as a Class E Felony, also died in committee.

   Two 1975 Department of Health Proposals (HD #35 and #36), would have amended the Public Health Law making it a misdemeanor to falsify any information required under Article 28 of that law, and would have required medical facilities to repay Medicaid overpayments with interest, respectively.

   Bills similar to the subject bill (S. 4136-A and A. 3989), introduced in the 1974 and 1973 legislative sessions which would have amended the Social Services Law to provide for treble damages in the instance of public assistance service providers who receive overpayment through fraudulent claims, died in committee.

Date _____  Examiner: _____

Disposition: _____     Chapter No. _____     Veto No. _____

- 2 -

4. Arguments in Support:

    a.  This bill, with its stiff financial deterrents, is a reaction to recent disclosures of fraud in connection with Medicaid over-reimbursement and could serve to underscore the State's commitment to the reduction of Medicaid costs.

    b.  According to the Departments of Health and Social Services, existing statutes providing criminal penalties for service provider overclaiming have not been completely effective.  This bill would supplement current criminal statutes by providing heavy financial penalties for offenders.  The existence of stronger deterrents could reduce the incidence of overclaiming by service providers.

    c.  This bill should enable the State to increase the amount of recoupments from Medicaid overpayments.

5. Possible Objections:

    a.  It could be argued that the financial penalties imposed by this bill could prove ineffective because of the difficulty in proving fraud on the part of the service provider.  This has been the case under the current criminal statutes.  However, according to the Department of Health, proof of fraud is less difficult in civil cases.

    b.  This bill gives the State or local social services district the authority to sue Medicaid providers for damages equal to three times the amount of any figure overstated.  Hospitals and nursing homes are required to submit to the Department of Health statements of total operating costs from which Medicaid rates are determined. This bill could possibly be interpreted to allow providers to be sued triple the amount of overstatement of total operating costs, which could be significantly greater than the actual Medicaid component overstatement.  This could be a draconian penalty for some Medicaid providers, especially hospitals since, according to the Health Department, Medicaid comprises one-third of patient costs for hospitals while in nursing homes it comprises almost one hundred percent of the patient costs.

    c.  This bill implies that Medicaid providers must refund overpayments and pay interest on such overpayments in one lump sum.  This would alter current practice which allows for flexibility in scheduling of repayments.  Payment in one lump sum could also be a severe hardship on some penalized Medicaid providers.

6. Other State Agencies Interested:  The Departments of Social Services and Health support this bill.  The Department of Law has an interest in this bill but has not yet developed its position.

- 3 -

7. <u>Known Position of Others</u>:  None known.  Local social services districts and associations of health care facilities should have an interest.

8. <u>Budgetary Implications</u>:  The Department of Health is unable to estimate potential State savings from money recouped from overpayments to service providers.  However, if savings amounted to one-half of one percent in the State's Medicaid program, they would total $136 million annually.

9. <u>Recommendation</u>:  This bill provides for financial penalties in cases of fraud or misrepresentation relating to reimbursement to any person or business for services or supplies provided to Medicaid recipients. Although the bill is imprecise regarding the exact basis for setting penalties, we have no serious objections to enactment.

Examiner:  John Dalton
Date:  July 25, 1975

Vincent E. LaFleche
Assistant Chief Budget Examiner
(Management)

JUL 22 1975

Multiple memorandum received from the

State Comptroller dated _____

stating the following bill is of

"No Interest" to the Department of

Audit and Control.

Intro. No.         Print No.

The original memorandum filed with:

GOVERNOR'S PROGRAM BILL (At the request of
the Moreland Act
Commission)

S-6553

A-7820

1975

M E M O R A N D U M

JUL 16 1975

RE:   AN ACT to amend the social services
law, in relation to interest
and penalties for false state-
ments or misrepresentations in
connection with medicaid reim-
bursement.

## Purpose of the Bill:

To create a right on behalf of the State to sue for
damages in cases of fraud or misrepresentations in connection with
medicaid reimbursement.

## Summary of Provisions of the Bill:

A new section 145-b would be added to the Social
Services Law.  Subdivision 1 makes unlawful any false statements
or the concealment of any material fact in an attempt to obtain
or in the actual obtaining of payment for services from medicaid
funds.  Subdivision 2 gives the Attorney General a right to bring
a treble damage action for any violation of subdivision 1.  Sub-
division 3 provides that medicaid providers who overcharge will
have to pay interest at the maximum legal rate in addition to
making restitution.

## Statement in Support of the Bill:

This bill will provide a significant financial deterrent
to the practice of overstating or falsely stating figures in cost
or rate setting forms used for Medicaid reimbursement and to the
practice of overstating or falsely stating claims for services
rendered, either by nursing homes, hospitals, physicians or other
Medicaid providers.

This bill provides a necessary complement to a whole
range of existing criminal statues, which can and should be used
in these circumstances.  For instance, New York Penal Law § 210.45
(McKinney 1967) states that the making of a false written statement
on an instrument which declares that such statements are punishable
is a class A misdemeanor which is punishable by up to one year
imprisonment.  Some statutes proscribe the falsification of business
records. Id. at §175.00 et. seq.  The offering of an instrument
to a public official to become part of his official records is a

-- 2 --

class A misdemeanor if one knows that it contains false statements.
Id. at §175.30.  If such action is taken with the intent of
defrauding the State, it is a class E felony, punishable by up to
four years imprisonment.  Id. at §175.35.

   To supplement these criminal offenses with a strong
financial deterrent in the form of treble damages is a necessary
step in regulating abuse in the Medicaid field.  Traditionally,
treble damage statutes are drafted to create a private right of
action for an injured party to recover three times the amount of
his actual damages.  However, we have found no legal barrier to
creating the same right of action for the State.  Particularly in
this matter of great public concern the State should be in the
position to create a significant financial, as well as criminal,
deterrent.

   Without a treble or multiple damage statute the State
would be limited to recovery of actual damages plus interest.
Even if the State requested multiple damages, the case law indicates
that in the absence of specific statutory authority, the courts
would not permit recovery by the State of more than its actual
damages.  It is clear that such a remedy has had no deterrent effect
to date and that a more effective financial deterrent is necessary
in a system where the profit motive is so strong.

Budgetary Implications:

   None.

S-6553-a

MEMORANDUM ACCOMPANYING COMMENTS ON BILLS BEFORE

THE GOVERNOR FOR EXECUTIVE ACTION

AUG 1 1975

NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES

AL

July 31, 1975

SENATE
Int. 6553-A                          Introduced by: Senator W. T. Smith


RECOMMENDATION: Approval

STATUTES INVOLVED: Social Services Law, Section 145-b

EFFECTIVE DATE: September 1, 1975

DISCUSSION:

1. Purpose of bill: This bill would authorize the imposition of treble damages
   against any person, firm or corporation who fraudulently obtains or attempts
   to obtain public funds for services or supplies under the medical assistance
   program; either the State or local social services district could sue to
   recover such damages, which, once collected, would be apportioned between
   the State and local social services districts; would further provide that
   where a provider or supplier of services under the program of medical
   assistance is required to repay any payment received under such program,
   repayment shall bear the maximum legal rate of interest from the date
   the payment was initially made to such provider.

2. Summary of provisions of bill: A new section 145-b would be added to the
   Social Services Law to accomplish the above-stated purpose.

3. Prior legislative history of bill & similar proposals: Two similar bills
   (A.3989 and S.4136) were introduced during the 1975 legislative session,
   but neither bill was reported out of the Senate or Assembly Social Services
   Committees.

4. Known position of others respecting bill: None known

5. Budget implications: This bill should result in some reduction in Medicaid
   expenditures by discouraging the filing of fraudulent or unsubstantiated
   Medicaid claims.

6. Arguments in support of bill: The Department of Social Services supports
   the intent of this bill in strengthening the enforcement provisions of
   the Social Services Law with regard to fraudulent conduct by providers of
   services and supplies under the medical assistance program.

   Local social services districts currently take administrative and legal
   action to recover funds which have been paid out as a result of fraud, but
   inadequate staffing and legal barriers are major impediments to an aggressive
   program. In addition, current  law encourages medicaid providers to file

Thirty Day Bill
S.6553-A                                -2-

insubstantiated claims if the claims are disallowed, the providers can
simply pay the funds back without any interest or penalty.

The Department of Health, Education and Welfare is placing major program
emphasis on identifying cases of fraud and abuse, and has indicated its
intention of requiring the State to adopt a separate program to deal
with this issue.  Such a program requires the establishment of procedures
for detecting fraud, including verifying that recipients have actually
received medical care or services for which the provider submitted bills,
investigating suspected  fraud, referring such cases to law enforcement
officials where appropriate, and reporting the total numbers of such
cases to the Department of Health, Education and Welfare.

The ultimate success of this bill as a deterrent to fraud in the medical
assistance program will depend upon the extent to which the Courts are
willing to render full judgments in such cases, and the extent to
which additional State and local staffing is made available to detect
fraud or overpayment cases and to bring those cases to court.

7.  Arguments in opposition to bill:  None

8.  Reasons for recommendation:  See #6 above.



STATE OF NEW YORK
DEPARTMENT OF LAW
ALBANY. 12224

LOUIS J. LEFKOWITZ
ATTORNEY GENERAL

MEMORANDUM FOR THE GOVERNOR

Re:  Senate 6553-A

This bill, effective September 1, 1975, would amend the Social Services Law, by adding thereto Section 145-b, which confers upon the state or local social services districts the right to commence an action to recover damages equal to three times the amount of any Medicaid reimbursement amount which is overstated by a Medicaid provider.  Any amounts collected, under the terms of this bill, would be apportioned between the state and the local social services district.

A similar bill was introduced in 1973 and 1974 (Senate 4136, Assembly 3989), as a two-year bill.  However, this bill failed to pass in either year.

I find no legal objection to this bill.

Dated:  August 5, 1975

Respectfully submitted,

LOUIS J. LEFKOWITZ
Attorney General



**STATE OF NEW YORK**
**DEPARTMENT OF HEALTH**

TOWER BUILDING
EMPIRE STATE PLAZA
ALBANY, NEW YORK 12237

OFFICE OF THE COUNSEL

DONALD A. MAC HARG
COUNSEL

AMBROSE P. DONOVAN, JR.
CHIEF ASSOCIATE COUNSEL

RT P. WHALEN, M.D.
COMMISSIONER

JUL 24 1975

July 24, 1975

Hon. Judah Gribetz
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York

Re:  Senate 6553-A

Dear Mr. Gribetz:

This bill, originally introduced
at the request of the Moreland Act Commission, authorizes
local social services districts or the State of New York
to bring civil actions for treble damages against any pro-
vider or supplier of services or supplies who knowingly
obtains or attempts to obtain payment from public funds by
false statements or representations, deliberate concealment
of material facts or other fraudulent schemes or devices.
In the case of medical assistance, interest at the maximum
legal rate will be due on all overpayments until repaid.

The purpose of this bill is to
prevent excess or fraudulent billing in the social services
field and particularly the Medicaid program.

The Department of Health recommends
approval of the bill, the need for which has become evident
as a result of the experience of the Department and public
investigations.

Sincerely,

DONALD A. MacHARG
Counsel

# FEDERATION OF PROTESTANT WELFARE AGENCIES, INC.

*JUL 28 1975*

*AL*

281 PARK AVENUE SOUTH / NEW YORK, N.Y. 10010 / (212) 777-4800

**OFFICERS**

William F. Draper
Chairman

R. Palmer Baker, Jr.
President

John Darrell
Mrs. Robert DeVecchio
J. Bruce Llewellyn
Roland L. Pepper
Mrs. Ira S. Robbins
Dallas K. Traver
Vice-Presidents

Frederick C. Tanner, Jr.
Secretary

Robert F. Longley
Treasurer

Harry Barrington, Jr.
Assistant Treasurer

Mrs. Jayne Phillips Austin
Executive Vice-President

Maurice O. Hunt
Administrative Vice-President

Frazier J. Gaffield
Assistant Vice-President

**BOARD OF DIRECTORS**

Mrs. Ruth Adams
Mrs. Harold B. Blake
Francis E. Brewer
Marvin Brown
Spurgeon Bryant
Mrs. Alfred Cahn
Mrs. Edwin L. Chandler
Robert E. Grass
Rupert Conrad
Mrs. Winfred Davis
Rev. Lawrence E. Lucas
Rev. M. Earl Evans
Frederick W. Fischer
Thomas D. Flynn
James Foster
Daniel A. Friedman
David E. Johnson
Fred Lee Cooly
Carroll A. Marum
Phyllis Harrison-Ross, M.D.
Hans W. Hemsley
George Immerso
Herbert C. Jackson, Jr.
Mrs. Florence A. Kelley
Dean Theodore H. Runyon
John S. Lawrence
Samuel R. Lewis
Edward T. Lewis
Kenneth A. McFadden
Frank B. Moore
William A. Macklowe
Dana Wallace Smith
Ira E. Oring
Herman J. Reynolds
Mrs. Ira S. Robbins
Mrs. Paul H. Rhoads
R. Peter Straus
Mrs. William T. White
Mrs. Winifred M. Wright
Heath G. Watson

**THE COUNCIL**

July 24, 1975

Honorable Judah Gribetz
Executive Chamber
State Capitol
Albany, N.Y.   12224

Re:  S.6541C, S.6542B, S.6543A,
S.6544B, S.6545A, S.6546B,
S.6553A, S.6554B

Dear Mr. Gribetz:

The Federation of Protestant Welfare Agencies supports all of the above-captioned bills, the bills of the Moreland Act Commission on Nursing Homes, and urges that the Governor sign them into law.

The widespread abuse by owners and operators of nursing homes which was discovered by the Commission deserves strong measures of reform in this vital and needed segment of the social service field. The most pervasive problem presented by the Commission appeared to be the fact that most of the operations and procedures could degenerate to such low quality levels by reason of the shroud of secrecy surrounding the industry. In our opinion, the most beneficial aspect of the package of bills will be the opening up of nursing home operations to public scrutiny and appropriate government regulation. When adequately funded, staffed and motivated, the government agencies will be able to oversee ownership and beneficial ownership, all monetary and business interests, day-to-day operations through unannounced inspections, and certified financial reports. In addition, the residents and their relatives will have posted reports of the inspection reports and remedial actions taken by operators, new certificates will depend on criteria of past performances, there can be stiffer penalties for continuing violations, and operators abusing the benefits of Medicaid will suffer treble damages.

The additional measure (the establishment of controlling persons, although we opposed it in its original form, has now been rewritten and amended in such a way that we support it also. This measure, amended to exclude those whose sole function is director or trustee, will protect voluntary directors of non-profit agencies while still placing heavy liability on those whose daily actions are responsible for the welfare of

-2-

patients/residents.  It is those who are directly responsible for the expense and receipt of money, the care of patients, and the maintenance of the facility who should be held accountable for abuse in these areas.

The enactment of this package of bills should serve to be an excellent means of curbing nursing home abuse, adequately overseeing the welfare of the resident elderly, and re-establishing a high standard of care in residential facilities.  For these reasons, the Federation urges that the Governor sign these bills into law.

Sincerely yours,

Berkeley D. Johnson, Jr.
Chairman
Committee on Public Social Policy

S-6553-A

AEV

# AMERICAN JEWISH CONGRESS

STEPHEN WISE CONGRESS HOUSE · 15 EAST 84th STREET · NEW YORK, N.Y. 10028 · TRAFALGAR 9-4500

July 30, 1975

Honorable Judah Gribetz
Counsel to the Governor                    AUG 1  1975
Executive Chamber
State Capitol
Albany, New York  12224

RE:  S. 269-A, S. 1074-C/A. 993-C., S. 6541-C, S. 6542-B, S. 6543-A,
     S. 6544-B, S. 6545-A, S. 6546-B, S. 6547-A, S. 6551-B, S. 6553-A,
     S. 6554-B and S. 6942/A. 8815

Dear Mr. Gribetz:

As an organization that has been heavily involved in local and national
efforts aimed at nursing home reform, the American Jewish Congress welcomes
your request for our comments and recommendations on these thirteen bills
affecting the operations of nursing homes in New York State.

We recommend that the Governor veto S. 269-A that would provide for the
appointment of nursing home advocates in each of the state's counties.
We urge that the Governor sign the remaining twelve bills, although we
believe that several of them are in need of improvement.

S. 269-A would charge the Commissioner of Health with appointing one person
in each county to serve as "a nursing home patient advocate."

We have long believed that an independent nursing home ombudsman with
statutory authority and funds to operate effectively would help signifi-
cantly in reducing abuses in the nursing home industry and would
ultimately lead to a higher quality of care for all patients.  However,
S. 269-A is so minimal as to be virtually meaningless.  While the
ostensible intention is that the advocates will investigate specific
complaints, the bill does not include any powers that would make possible
meaningful investigation.  Indeed, the law specifically denies that the
"advocates" findings shall be granted any "legal presumption."  The office
of "advocate" has no subpoena powers, no staff and no funding.  Perhaps
even more serious, signing of S. 269-A will give the public the false
impression that a genuine nursing home ombudsman system is at work.

## NATIONAL OFFICERS

ARTHUR HERTZBERG, President
HOWARD M. SQUADRON, Chairman, Governing Council
Co Chairmen, Governing Council
THEODORE BIKEL, JACQUELINE LEVINE, THEODORE R MANN
BENJAMIN M. HALPERIN, Treasurer
CLARENCE GOLDBERG, Co-Treasurer
JOSEPH GEROFSKY, Secretary
NAOMI LEVINE, Executive Director
RICHARD COHEN, PHIL BAUM, Associate Executive Directors

STANLEY H. LOWELL, Senior Vice President

Vice Presidents
PAUL S. BERGER, Washington, D.C.
LEONA CHANIN, New York City
ISRAEL DRESNER, Wayne, N.J.
JACK M. LEVINE, New York City
MURRAY A. GORDON, Bronx, N.Y.
ALVIN GRAY, Cleveland
THEODORE J. POLISH, New York City
S. STANLEY KREUTZER, Great Neck, N.Y.
LEON NEMOYER, Miami Beach

LAURENCE MYERS, San Francisco
ESTHER POLEN, Philadelphia
JUSTINE WISE POLIER, New York City
RICHARD RAVITCH, New York City
WALTER ROTH, Chicago
MORTON M. SILVERMAN, Los Angeles
VIRGINIA SNITOW, Scarsdale, N.Y.
LILLIAN STEINBERG, Brooklyn, N.Y.
JUDITH I. WOLF, Newton, Mass.

Honorary Presidents
ARTHUR J LELYVELD, Cleveland
JOACHIM PRINZ, Orange, N.J.
ISRAEL GOLDSTEIN, Jerusalem
IRVING MILLER, Woodmere, N.Y.

Honorary Vice Presidents
PAUL G. ANNES, Chicago
MAX DOLF, Lawrence, N.Y.
BENJAMIN S. KALNICK, Great Neck, N.Y.
MAX A. ROSENBERG, Chicago
MAX NUSSBAUM, Hollywood, Cal.
HARRY SCHACTER, Brooklyn, N.Y.

Honorary Chairmen, Governing Council
SHAD POLIER, New York City
Honorary Co-Chairman, Governing Council
MORRIS MICHELSON, Boston

Honorable Judah Gribetz                    - 2 -                    July 30, 1975

S. 269-A can accomplish no worthwhile improvements in patient care and we recommend that it be vetoed.

The remaining twelve bills are first steps in urgently needed nursing home reform and, we trust, indicative of additional forthcoming improvements. We endorse S. 6543-A (requiring unannounced inspections); S. 6544-B (making nursing home financial and inspection reports available to the public); S. 6545-A (mandating certification of financial reports); S. 6546-B (compelling high levels of character and competence from proposed operators and sponsors); S. 6551-B (providing patients with the right to sue for damages or other relief where their treatment has been improper)and S. 6553-A (broadening penalties for false statements and misrepresentations). We urge that the Governor sign them. In the past we have made recommendations similar to the provisions found in these bills.

While we have some reservations concerning S. 1074-C/A. 993-C, S. 6547-A, S. 6542-B, S. 6541-C, S. 6554-B and S. 6942/A. 8815, we believe that on the whole, they will have a beneficial effect on the quality of nursing home care. At the same time, however, we pledge ourselves to work in the coming session to correct the weaknesses in these bills.

S. 1074-C/A. 993-C establishes a bill of rights for nursing home patients. The current nursing home investigations in New York State have underscored the need for legislation and regulations spelling out the rights of nursing home patients but this bill is only a first step in that direction and lacking many of the elements we feel should be included in such a statute. The enclosed copy of a statement made on our behalf by Dr. Martin Hochbaum at hearings before the Assembly's Subcommittee on Health Care and the enclosed "Bill of Rights for Nursing Home Patients" that we have recommended to the Legislature contain the elements we believe vital to any effective guarantee of patient rights. We would have preferred that the Legislature adopt A. 7874-A, introduced by Assemblywoman Jean Amatucci. This we believe presented nursing home patients with a more comprehensive statement of their rights.

S. 6547-A gives discretionary authority to the State Commissioner of Health to temporarily suspend the operating certificate of hospitals (including nursing homes) where conditions pose a threat to the health or safety of patients. Some of the new powers contained in this legislation, such as the power to prohibit placing new patients in such facilities, are long overdue. But a finding of danger to health or safety should require mandatory suspension of operating licenses and we would hope that a bill to strengthen S. 6547-A would be enacted in the next session of the Legislature.

Honorable Judah Gribetz                 - 3 -              July 30, 1975

S. 6542-B, as amended by S. 6942/A. 8815, adds Section 2805-e to the
Public Health Law.  This would require disclosure in annual reports of the
names of operators and owners of nursing homes.  However, Section 2805-e
contains an internal inconsistency.  While this new section requires the
reporting of the names of officers and directors of corporations operating
or owning facilities, subsection 2805-e (4) would exclude the names of
many of these same people from the reporting requirement.  Subsection 4
appears to be a mistake.

S. 6541-C deals with the "liability of controlling persons of nursing
homes."  Unfortunately, the bill's definition of "controlling persons" is
imprecise and tends to vitiate the effect of the bill.  Future legislation
should spell out just which "controlling persons" are affected.

S. 6554-B provides fines of up to $1,000 per day for violations of rules
and regulations pertaining to patient care.  The rate of state payment to
nursing homes may be decreased by up to 5 per cent of the per diem rate
in order to collect these fines.  The fact is, however, that in many
cases -- perhaps the majority -- a 5 per cent reduction in the daily rate
of payment will bring in considerably less than the $1,000 suggested
maximum fine.  This bill, then, is likely to be most ineffective,
especially regarding long term violations.

Still on the subject of fines, we further note that while S. 6942/A. 8815
contains a provision that gives the Commissioner the discretion to require
the posting of security against which assessed penalties may be drawn, that
provision is exclusively limited to facilities that have received the
lowest of the five possible ratings under the new rating system.  We believe
that the posting of security should be mandatory, that the $25,000 maximum
should be increased and that there should be minimum security requirements
scaled according to the most recent rating.

S. 6942/A. 8815 is an omnibus bill that includes a grievance procedure for
residents, empowers the Health Commissioner to establish interim regula-
tions to relate the rate of payment to the quality of care, allows the
Public Health Council to approve the establishment of new hospitals for
demonstration purposes and sets up receivership procedures.  While we
are generally pleased with the provisions in this bill, we believe that
it contains several that are objectionable.  We have already referred to
one, a chapter amendment.  Two more, however, deserve mention.  While we
believe in the need for demonstration projects, many hospitals now have
a low occupancy rate and there is talk of closing or merging some facilities.
We therefore suggest that an attempt be made to implement subdivision
2801-a(3-a) within the framework of existing hospitals.  To follow the
course suggested in this bill, in a time of difficult economic circumstances,
would be a waste of taxpayers' money.

Honorable Judah Gribetz               - 4 -                July 30, 1975

Subdivision 2801-d(10)(b) establishes an administrative complaint procedure for patients who believe they have been discriminated against for pursuing their legal rights against low quality care or for testifying against a nursing home.  The thirty-day period within which patients must file such complaints is insufficient, particularly when one considers that many nursing home patients are infirm and may need ample opportunity to discuss their course of action with friends, relatives or counsel.

We hope that the Governor will take these comments into consideration not only in acting on the bills currently before him but also in proposing future legislation.

Sincerely,

Albert C. Lasher
Chairman
Committee on Poverty and
    Social Welfare



JUL 25 1975

THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

July 25, 1975

S#6553-A - by Sens. W.T. Smith, et al

AN ACT To amend the social services law, in
relation to interest and penalties
for false statements or misrepresenta-
tions in connection with medicaid re-
imbursement

APPROVAL RECOMMENDED

Honorable Hugh L. Carey
Governor of the State of New York
Albany, New York

Dear Governor Carey:

The above bill is before you for executive action.

This bill amends the Social Services Law, to make it unlawful
for any person, firm or corporation, by means of false statement or
representation or other fraudulent device, on behalf of himself or others,
to attempt to obtain or to obtain payment from public funds for services
or supplies furnished pursuant to the provisions of the Social Services
Law. For any violation, the local social services district or the State
would have the right in a civil damage suit, to recover three times the
amount falsely overstated. Also, should a medicaid provider or supplier
of services be required to refund any part of monies received, the amount
would include an additional interest penalty at the maximum legal rate.

Current law provides penalties only for the improper receipt
of assistance and for improper actions by social services officials and
employees. This bill would extend stringent penalties to providers of
services, who are guilty of fraudulent practices with the obvious aim of
detering such acts and lowering the costs of the medical assistance pro-
gram.

Honorable Hugh L. Carey
July 25, 1975
Page 2


        New York City strongly supports these goals.  However, we must
point out that enactment would present some problems.  By requiring that
interest be paid on repayment of any payment received under the medical
assistance program, with such repayment not necessarily due to fraud,
but possibly clerical or administrative errors, a strict interpretation
of this provision could deter providers of services and supplies from
participating in the medicaid program, particularly since interest at
the maximum legal rate would be charged from the date of initial payment.

        Also, the bill does not specify any formula for the disburse-
ment of monies collected from interest payments.  These defects however
can be remedied by Department regulation.

        Accordingly, I urge your approval of this bill.

                        Very truly yours,

                        ABRAHAM D. BEAME, Mayor



                By  *Leonard E. Yoswein*
                    Legislative Representative



**COMMUNITY SERVICE SOCIETY**

DEPARTMENT OF PUBLIC AFFAIRS

ARTHUR SCHIFF
    *Director*

ALINE F. LeMAT
    *Staff Associate for Health*

**COMMITTEE ON HEALTH**

CHARLES B. DORF
    *Chairman*

MRS. MARCIA W. McHAM
    *Vice Chairman*

DAVID W. SMITH
    *Vice Chairman*

MRS. NATHANIEL J. BICKFORD
MRS. WILLIAM A. M. BURDEN
IRVING S. K. CHIN
GEORGE S. DALLAL
MRS. ALBERT L. EHINGER, JR.
JOHN P. FAYOLLE
MISS KAREN GANTZ
MRS. NICHOLAS GYORY
STANLEY L. HILTON
THEODORE HOOD
MRS. ALAN C. KIRK
MRS. EUGENE M. KRADER
EDWARD F. KROEPKE
FRANKLIN E. PARKER
MRS. IRIS POMERANCE
MRS. IRVING J. SANDS
MRS. DENNIS A. SCULLY
BERTRAM LELAND STEINBERG
ROBERT M. STROZIER, JR.
MARSHALL W. STUKES, JR.
MRS. ELINOR WOLFERT
STEPHEN B. WONG

**OFFICERS OF THE SOCIETY**

MRS. ANDREW HEISKELL
    *Chairman of the Board*

ROBERT W. SWEET
    *President*

MRS. WILLIAM A. M. BURDEN
    *Vice Chairman of the Board*

HERBERT P. PATTERSON
    *Treasurer*

DAVID L. HOPKINS, JR.
    *Secretary and Asst. Treasurer*

ALAN L. SCHORR
    *General Director*

July 22, 1975

Honorable Judah Gribetz
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York   12224

RE:  S.6553-A – to amend the social
     service law, in relation to
     interest and penalties for
     false statements or
     misrepresentations

Dear Mr. Gribetz:

The Community Service Society supports this bill to allow the
state or local social services district to sue for three times
the actual damage in cases of Medicaid fraud.  This should
provide a financial deterrent to the practice of falsely
overstating costs or for improper claims for services rendered.

A copy of our Memorandum (#32) setting forth the opinion of our
Committees on Health and Aging is enclosed for your information.

We urge enactment of this bill.  Thank you for providing us the
opportunity to express our view on this legislation.

Sincerely yours,

*Charles B. Dorf*

Charles B. Dorf
Chairman
Committee on Health

CBD:EDM:jf

# ‌ew York Association of Homes for the Aging

120 WEST 106TH STREET ● NEW YORK, N.Y. 10025 ● 212/666-2000

June 9, 1975

Dear Senator:

You and your colleagues are to be highly commended on what you have been doing to develop legislation to remedy abuses and improve the administration of care in nursing homes for the elderly throughout the State.

You will be pleased to learn, I believe, that the great majority of the 15 "nursing home" bills proposed by the Moreland Act Commission and the Assembly Subcommitte on Health have the full approval of the New York Association of Homes for the Aging, which represents some 140 non-prof facilities caring for over 20,000 elderly citizens.

The Association's position on each of the 15 bills is given on the attached three-page Summary.

You will note that we support ten of the bills, but find ourselves opposed to five -- the Moreland Act Commission bills A-7816/S-6551 and A-7826/S-6541, and the Health Subcommittee bills A-7873, A-7874, and A-7875. Our detailed reasons for opposing each of these five bills are given in the Addendum to this letter.

We are united, I am sure, in wanting to provide elderly citizens needing help with the best possible care. Your support of the ten bills we favor, and your vote against the five bills we oppose, will contribute significantly toward that end.

Sincerely yours,

Thomas F. Coughlin
President

Attachments (2)

OFFICERS
President
THOMAS F. COUGHLIN
New York City

1st Vice President
REV. R. KENNETH ARNTSEN
Endicott

2nd Vice President
REV. ROBERT M. ARMSTRONG
Buffalo

3rd Vice President
NORMAN E. HARPER
Syracuse

Secretary
SIDNEY FEINBERG
New Hyde Park

Treasurer
SISTER MARIE MICHELLE

Immediate Past President
LAWRENCE E. LARSON
New York City

Executive Vice President
MITCHELL M. WAIFE
New York City

DIRECTORS
MOTHER M. ALOYSIUS, O. CARM.
New York City

HAROLD O. MAWHINEY
Rye

WILLIAM MCGRAIL
Clarence

ERNEST MOUNT
Rochester

LEON R. CANTOR
Buffalo

MRS. GLENN LITTLE
Binghamton

DR. ARTHUR HAGGERTY
Brooklyn

DR. JOSEPH W. BELL
Ossining

DAVID GLASER
New York City

SISTER ANGELA THERESA S.C.S.J.
Amityville

WILLIAM J. GREENBERG
Rochester

ROBERT MACK
Syracuse

THEODORE ROSEN
Troy

ARTHUR SHADE
Williamsville

HONORARY MEMBER
MISS OLLIE RANDALL
New York City

AT LARGE MEMBERS OF DELEGATES
MSGR. CHARLES J. RAMSEY
Syracuse

EDWARD E. MYERS at large

FRED BERNSTEIN
New York City

S-6553



# LEGISLATIVE MEMORANDUM

1225

COMMUNITY SERVICE SOCIETY OF NEW YORK          Department of Public Affairs

105 East 22 Street, New York, N.Y. 10010 · (212) 254-8900

June 6, 1975

Committee on Health
Committee on Aging

A BILL TO ALLOW STATE TO SUE FOR MEDICAID FRAUD

SUPPORT

With Recommendation

The Community Service Society supports this bill to empower the state to sue nursing home operators or other providers for treble damages for falsely overstating their costs or for fraud in seeking Medicaid reimbursement. This bill would also provide that refunds to the state shall bear interest from the date the Medicaid payment to the provider was made to the date of the refund.

Heretofore, the Health Department has had difficulty in recovering overcharges and, in effect, has acted as a source of interest-free loans to the nursing homes, some of which were never paid back, as both the Stein and Moreland Act Commissions have revealed.

We believe the bill in its present form amends the wrong section of the Social Services Law. It seems to us that it would be more appropriate to amend Title 11, Section 366-b (Penalties for fraudulent practices), which deals specifically with the medical assistance program.

With this recommendation, we urge passage of this bill.

COH 32
COA 16

J - 10

## LEGISLATIVE REFERENCES

S. 6553.              Mr. W.T. Smith, et al.          Social Services
A. 7820               Mr. Hevesi                      Social Services

Social Services Law, new Section 145-b (False statements - treble damages - actions by the attorney general).



# COMMUNITY COUNCIL OF GREATER NEW YORK

225 Park Avenue South  •  New York, N.Y. 10003  •  (212) 777-5000

S 6553

1225

June 13th, 1975

Honorable Manfred Ohrenstein
New York State Senate
Albany, New York 12224

Dear Sir:

The Community Council of Greater New York, both in
action by its Board of Directors and in testimony
before respective Committees of the Legislature,
has spoken out in general support of the work of
the Moreland Commission.

Therefore, beyond those bills which have already
been passed by both the Assembly and the Senate
( A.7824/S.6543; A.7821/S.6545; and A.7818/6476A),
the following bills have our strong support, and
we urge their enactment into law:

S.6551/A.7816 - allows residents to file class
                action suits.

S.6547A/A7817 - suspension of operating certificates.

S.6595/A.7819 - legislative ethics, no conflict of
                interest for public officials.

S.6553/A.7820 - triple damages for medicaid fraud.

S.6554/A.7822 - system of penalties and fines.

S.6544/A.1823 - public disclosure of financial and
                inspection reports.

S.6542A/A.7825- disclosure of identity of persons
                with financial interests in nursing
                homes.

In addition, we support these three assembly bills:
A.7874-A ( Amatucci ) which provides for a Patients'
Bill of Rights; A.7875 ( Dearie ) which establishes
a state office of residential care ombudsman, and
A.7576, which transfers administrative responsibility
for the medicaid program ( except for determination
of eligibility ) to the State Department of Health in
order to centralize authority for what is, essentially
a health program.

We urge that these bills which are only one step in the
direction of protecting New Yorkers who reside in nursing
homes, be enacted speedily and with the greatest concern
for the residents' well-being.

HON. ABRAHAM D. BEAME
Honorary President
CARL M. LOEB, JR.
DAVID SHER
Honorary Chairmen of the Board

OFFICERS
HOWARD A. SEITZ
Chairman of the Board
MRS. LEONARD M. BERNHEIM
President
MYRON L. MAYER
ALBERT F. MONCURE
REV. JOSEPH M. SULLIVAN
Vice Presidents
ROBERT L. POPPER
Treasurer
MRS. NANCIE B. PALMER
Secretary
BERNARD M. SHIFFMAN
Executive Vice President

DIRECTORS
ROBERT A. BERNHARD
JACK BIGEL
DAVID J. BILLINGS III
MRS. LEONARD BLOCK
ROBERT M. CALLAGY
MRS. ALMIRA R. COURSEY
J. CLARENCE DAVIES, JR.
ANTHONY DREXEL DUKE
MRS. MARION L. FOSTER
DR. ELINOR C. GUGGENHEIMER
CHARLES HALSEY
BRIG. JAMES G. HENDERSON
WILLIAM A. HOWES
MRS. BAILEY JACKSON
REV. ROBERT P. KENNEDY
JOEN J. KEPPLER
PETER K. LEISURE
COMM. EMIL LEVIN
MRS. HENRY MARCH
MIGUEL MARTINEZ
A. ALEXANDER MORISEY
DR. CHARLOTTE MULLER
REV. MSGR. JAMES J. MURRAY
MRS. WILLIAM O'KEEFFE
MRS. MARIA G. PEREZ
ROBERT S. POTTER
ESTHER RIDDER
PETER ROGATZ, M.D.
MRS. IRWIN H. ROSENBERG
IRVING SCHNEIDER
DAVID SHER
SEYMOUR N. SIEGEL
R. BRINKLEY SMITHERS
SANFORD SOLENDER
ROBERT W. SWEET
PROF. FRANK VAN DYKE
DR. JOSEPH L. VIGILANTE
GEORGE WEISS
JACQUELINE WEXLER
JOSEPH WILLEN
LIVINGSTON L. WINGATE
BRUCE H. WITTMER

EX-OFFICIO DIRECTORS
COMMISSIONER,
AGENCY FOR CHILD
DEVELOPMENT
ADDICTION SERVICES
DEPT. OF CORRECTIONS
DEPT. OF EMPLOYMENT
DEPT. OF HEALTH
DEPT. OF RECREATION
RENT AND HOUSING
MAINTENANCE
YOUTH SERVICES AGENCY



JUN 23 1975 **LEGISLATIVE MEMORANDUM**

**COMMUNITY SERVICE SOCIETY OF NEW YORK**   Department of Public Affairs
105 East 22 Street, New York, N.Y. 10010 • (212) 254-8900

June 6 , 1975

Committee on Health
Committee on Aging

A BILL TO ALLOW STATE TO SUE FOR MEDICAID FRAUD

REPORT

with Recommendation

The Community Service Society supports this bill to empower the state to sue nursing home operators or other providers for treble damages for falsely overstating their costs or for fraud in seeking Medicaid reimbursement. This bill would also provide that refunds to the state shall bear interest from the date the Medicaid payment to the provider was made to the date of the refund.

Heretofore, the Health Department has had difficulty in recovering overcharges and, in effect, has acted as a source of interest-free loans to the nursing homes, some of which were never paid back, as both the Stein and Moreland Act Commissions have revealed.

We believe the bill in its present form amends the wrong section of the Social Services Law. It seems to us that it would be more appropriate to amend Title 11, Section 366-b (Penalties for fraudulent practices), which deals specifically with the medical assistance program.

With this recommendation, we urge passage of this bill.

COH 32
COA 16

I - 10

LEGISLATIVE REFERENCES

S. 6553 .              Mr. W.T. Smith, et al.          Social Services
A. 7820                Mr. Hevesi                      Social Services

<u>Social Services Law</u>, new Section 145-b (False statements - treble damages - actions by the attorney general).



OFFICE OF THE MAYOR
OFFICE FOR THE AGING

ALICE M. BROPHY, *Director*

250 Broadway
New York, N.Y. 10007

Original to _____
Info Photo _____

June 24, 1975

Honorable Hugh L. Carey
Governor of New York
Executive Chambers
Albany, N.Y. 12224

Dear Governor Carey:

The New York City Office for the Aging is concerned that all
necessary protections for the aged in nursing homes and health re-
lated facilities will die in the Legislature. Our Office strongly
supports the strengthening of the powers of the Commissioner of
Health, the statutory regulation of conflict of interest of public
officials, public disclosure of financial and inspection reports,
as well as disclosure of the identity of persons with financial
interest in nursing homes. We believe that there should be the
suspension of operating service and a system of penalties and fines.
We also support the establishment of a residential care ombudsman.

It would be regrettable that the public disclosure of abuses
in nursing homes and health related facilities was not followed by
appropriate corrective action.

We strongly urge passage of the following:

            S.6547A/A.7817
            S.6595/A.7819
            S.6553/A.7820
            S.6554/A.7822
            S.6544/A.1823
            S.6542A/A.7825

                                    Sincerely,

                                    Alice M. Brophy
                                    Director

AMB:RRS:cb



# YM-YWHA OF THE BRONX
1130 GRAND CONCOURSE ■ BRONX, N.Y. 10456 ■ (212) 293-1200

**BRONX YM & YWHA SENIOR CITIZENS CENTER**

JUL 18 1975

OFFICERS:

IRVING H. STOLZ
President

DANIEL ROSE*
Chairman of the Executive Committee

SIDNEY H. ASCH
SIMON R. BREGMAN
RED GUREVICH
BENJAMIN NEUWIRTH
Vice Presidents

HAROLD DERFNER
Treasurer

HAROLD S. SHAPIRO
Secretary

MARVIN HOCHBERG
Executive Director

IRMA KRAMER
Senior Citizens Center Director

TRUSTEES:

BERT ACKMAN
LEONARD A. ARVE
OSWALD D. HENENSON
ALFRED W. HILSSLEIN
MRS MATHILDA M. CUNEO
MRS HENRIETTA DABEK
OSCAR DANE
ARTHUR L. DEUTSCH
SIDNEY P. DIAMOND*
W. BALDWIN FERTIG
LAWRENCE P. FIEDLER
WILLIAM G. LOEFIG
WILLIAM J. GOODFRIEND
KENNETH HOROWITZ
WILLIAM A. HUROWITZ
DAVID W. LEWIS
MRS. IDA G. LOEB
JACK L. MILLER
PAUL MILSTEIN
JACK MOSS
DONALD L. NEWHOUSE
DANIEL SIMON
DAY JUNGSTEIN
THEODORE REITMAN
LOUIS ROSENBWEIG
HERBERT ROSENTHAL
EMANUEL SAXE*
MRS. DAISY SCHMIDT
MERLE L. SCHOENHEIMER
MORTON M. SCHRIER
DAVID SCHWARTZ
THEODORE SISKIND
JEROME J. STELKER
J ZACHARY STERN
MAX STERNBERG
SAMUEL S. STOLZ
BERNARD THEURER
MRS BEATRICE F. USDAN
CHARLES WASSERMAN
JAMES WEINBERG

HONORARY TRUSTEES:

MRS. HATTIE HENENSON
DAVID HURE
BENJAMIN SOBOL
HILL SOBOL
ISRAEL H. ZINOVOY

*Past Presidents

June 30, 1975

Gov. Hugh Carey
State Capitol
Albany, N.Y.

Dear Sir:

The Community Council of Greater New York, both in action
by its Board of Directors and in testimony before
respective Committees of the Legislature, have spoken out
in general support of the work of the Moreland Commission.

Therefore, beyond these bills which have already been passed
by both the Assembly and the Assembly and the Senate
(A.7824/S.6543; A.7921/S.6545; and A.7818/6476A),
the following bills have our strong support, and we
urge their enactment into law:

S.6551/A.7816 - allows residents to file class action
                suits.

S.6547A/A7817 - suspension of operating certificates.

S.6595/A.7819 - legislative ethics, no conflicts of
                interest for public officials.

S.6553/A.7820 - triple damages for medicaid fraud.

S. 6544/A.1823 - public disclosure of financial and
                 inspection reports.

S.6554/A.7822 - system of penalties and fines.

S.6542A/A.7825 - disclosure of identity of persons
                 with financial interests in nursing homes.



Program Funded in part under an agreement with the Bureau of Purchased
Social Services for Adults.

-2-

In addition, we support these three assembly bills:

A. 7874-A (Amatucci.) which provides for a Patients
Bill of Rights; A.7875 (Dearie) which establishes a
state office of residential care ombudsman, and
A.7576, which transfers administrative responsibility
for the medicaid program ( except for determination of
eligibility ) so the State Department of Health in order
to centralize authority for what is, essentially a health
program,

We urge that those bills which are only one step in the
direction of protesting New Yorkers who reside in nursing
homes, be enacted speadily and with the greatest concern
for the residents well-being.

Sincerely,

*Esther Bojourou*

BRONX Y M & Y W H A
SENIOR CITIZENS CENTER

rs/