# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br> _____ , <br><br> THIS DOCUMENT RELATES TO: <br><br> *The City of New York v. Abbott Labs, et al.* (S.D.N.Y. No. 04-CV-06054) <br> *County of Suffolk v. Abbott Labs, et al* (E.D.N.Y. No. CV-03-229) <br> *County of Westchester v. Abbott Labs, et al.* (S.D.N.Y. No. 03-CV-6178) <br> *County of Rockland v. Abbott Labs, et al.* (S.D.N.Y. No. 03-CV-7055) <br> *County of Putnam v. Abbott Labs, et al.* (S.D.N.Y. No. 05-CV-04748) <br> *County of Dutchess v. Abbott Labs, et al.* (S.D.N.Y. No. 05-CV-06458) <br> *County of Washington v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00408) <br> *County of Rensselaer v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00422) <br> *County of Albany v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00425) <br> *County of Warren v. Abbott Labs, et al* (N.D.N.Y. No. 05-CV-00468) <br> *County of Greene v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00474) <br> *County of Saratoga v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00478) <br> *County of Columbia v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00867) <br> *Essex County v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00878) <br> *County of Chanango v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00354) <br> *County of Broome v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00456) <br> *County of Onondaga v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00088) <br> *County of Tompkins v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00397) | MDL NO. 1456 <br><br> Civil Action No 01-12257-PBS <br><br> Judge Patti B. Saris |

*County of Cayuga v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00423)
*County of Madison v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00714)
*County of Cortland v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00881)
*County of Kerkimer v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00415)
*County of Oneida v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00489)
*County of Fulton v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00519)
*County of St. Lawrence v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00479)
*County of Jefferson v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00715)
*County of Lewis v. Abbott Labs, et al.*
(N.D.N.Y. No. 05-CV-00839)
*County of Chautauqua v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06204)
*County of Allegany v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06231)
*County of Cattaraugus v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06242)
*County of Genesee v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06206)
*County of Wayne v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06138)
*County of Monroe v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06148)
*County of Yates v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06172)
*County of Niagara v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06296)
*County of Seneca v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06370)
*County of Orleans v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06371)
*County of Ontario v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06373)
*County of Schuyler v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06387)
*County of Chemung v. Abbott Labs, et al.*
(W.D.N.Y. No. 05-CV-06744)
       AND

*County of Nassau v. Abbott Labs, et al.*
(E.D.N.Y. No. 04-CV-5126)

**DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.'S
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS**

Defendant TAP Pharmaceutical Products Inc. ("TAP") moves for dismissal of the city of New York and the New York Counties' (hereinafter collectively referred to as the "New York Counties") claims related to Lupron® for reasons not identified in defendants' joint memorandum in support of its motion to dismiss[1]. Specifically, Plaintiffs' claims should be dismissed because all of their claims against TAP based on Lupron® were settled and released by settlements reached in 2001 and 2005. In addition, Plaintiffs are specifically enjoined from continuing to prosecute such claims by an injunctive order entered and pending in this District.

**ARGUMENT**

On December 3, 2001, the State of New York reached a settlement with TAP that released TAP from any liability involving the marketing, sale and pricing of Lupron® (the "State Settlement Agreement"). The State Settlement Agreement provides:

> [T]he state of New York…shall release and forever discharge TAP, predecessors, subsidiaries, joint venture owners, and their corporate parents and affiliates, successors and assigns, and their current and former directors, officers, and employees from any civil or administrative claims for damages or penalties that the state of New York has or may have relating to the Covered Conduct…

(*See* Settlement Agreement, attached as Ex. A, at 8, ¶2.)

The State Settlement Agreement defines "Covered Conduct" to include "alleged conduct from January 1991 through 2001 involving the marketing, sale and pricing of Lupron® …," including, for instance, any allegation that TAP (1) inflated the AWP of Lupron® in order to establish and market the spread; (2) provided free samples of Lupron® knowing and expecting that medical providers would charge for them; (3) provided financial incentives, including grants, travel and entertainment, to induce providers to purchase Lupron®; (4) concealed the

---

[1] TAP adopts and incorporates by reference the defendants' joint memorandum and, to the extent applicable, the arguments contained in the other defendants' individual memoranda in support of the motion to dismiss.

- 1 -

CHI-1522453v1

discounted price from governmental agencies; and (5) misreported Best Price and underpaid Medicaid rebates for Lupron®. (*Id*. at ¶F(i)-(v).) The conduct alleged by the New York Counties here unquestionably falls within the scope of claims released by the State Settlement Agreement. (*See* Second Am. Compl. Nassau County ¶¶380-388 and Cons. Compl. ¶¶749-762, 767-769.)

Moreover, the State Settlement Agreement covered New York's full share of Medicaid damages relating to TAP's alleged inflation of AWP and Best Price, including any portion that the New York Counties ultimately paid to the State for its Medicaid recipients. Specifically, the State was required to share with the New York Counties the settlement money TAP paid to the State pursuant to the State Settlement Agreement. (*See* NY Soc. Ser. Law § 145-b(2) ("amounts collected pursuant to a judgment under [Medicaid] shall be apportioned between the local social services district and the state.").) The State Settlement Agreement therefore precludes the New York Counties' claims as to Lupron®.

Furthermore, not only does the State Settlement Agreement release all claims relating to the pricing, marketing or sale of Lupron®, but the New York Counties are also prohibited from pursuing any Lupron® claims on behalf of themselves or their citizens because of a nationwide class settlement approved by the Honorable Richard G. Stearns in this District in the matter of *In re: Lupron® Marketing and Sales Practices Litigation*, MDL 1430. On August 26, 2005, Judge Stearns entered a Final Order and Judgment (the "August 26, 2005 Order") certifying, for settlement purposes, a nationwide class of persons and entities who had paid for Lupron®. Specifically, the "Lupron® Purchaser Class" includes:

> All individual persons or entities who, during the Class Period [January 1, 1985 through March 31, 2005], made Lupron® Purchases. Excluded from the class are the Settling Health Plans; Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and

- 2 -

> affiliates; and the United States government, its officers, agents, agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products, Inc.* (D. Mass.) and related litigation.

(*See* Aug. 26, 2005 Order, attached as Exhibit B). Judge Stearns' Final Order and Judgment incorporated the terms of the detailed Settlement Agreement executed by the parties (the "Class Agreement"). Together, Judge Stearns' Order and the Class Agreement leave no doubt that the Lupron®-related claims advanced in this action by the New York Counties are improper and should be dismissed.

*First*, the New York Counties are members of the Lupron® Purchaser Class. These are governmental entities who have allegedly made Lupron® Purchases--defined in the Class Agreement as "payment or reimbursement, direct or indirect, for all or part of the cost of Lupron® prescribed, provided or administered in the United States." (Class Agmt. ¶2(t), relevant parts attached as Ex. C.)

*Second*, the New York Counties did not submit a request to "opt out" of the Lupron® Purchaser Class. (*See* Ex. A to the Aug. 26, 2005 Order, listing all persons and entities who validly excluded themselves from the Class.)

*Third*, the New York Counties are accordingly subject to the release provisions of the Class Agreement and the August 26, 2005 Order. The Class Agreement provides that Releasors (which includes all members of the Lupron® Purchaser Class) have released all "Released Claims," including:

> any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever,…that any Releasor who has not timely excluded themselves from the Lupron® Purchaser Class… ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions alleged or that could have been alleged in any

- 3 -

>litigation relating to the marketing, sale, cost, pricing or purchase of Lupron®.

(Class Agmt. ¶2(y).) Judge Stearns' August 26, 2005 Order specifically incorporates that release. (Aug. 26, 2005 Order ¶ 10.)

>*Finally*, Judge Stearns' August 26, 2005 Order expressly provides that:
>
>>No nationwide Lupron® Purchaser Class member, either directly, representatively, or in any other capacity (other than the persons and entities specifically enumerated in Exhibit A hereto), shall commence, continue or prosecute against any or all Releasees any action or proceeding in any court or tribunal asserting any of the Released Claims defined in the Class Agreement and are hereby permanently enjoined from so proceeding.

(*Id.* ¶18.) By continuing to prosecute claims in this action relating to Lupron® pricing, the New York Counties stand in direct violation of the permanent injunction issued by Judge Stearns. The New York Counties have released these claims relating to Lupron®, and they have been specifically enjoined from continuing to prosecute such claims against TAP. These claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and those identified in defendants' joint memorandum, TAP respectfully requests that this Court dismiss with prejudice all claims related to Lupron® in the Consolidated Complaint (of New York City and all plaintiff New York Counties other than Nassau) and the Second Amended Complaint of Nassau County.

- 4 -

Dated: March 3, 2006

Respectfully submitted,

DEFENDANT TAP PHARMACEUTICAL PRODUCTS, INC.

s/Toni-Ann Citera

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, NY 10017-6702
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

James R. Daly
JONES DAY
77 W. Wacker St., Suite 3500
Chicago, IL 60601-1676
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

- 5 -

CHI-1522453v1

## CERTIFICATE OF SERVICE

      I hereby certify that on this 3rd day of March, 2006, a true and correct copy of DEFENDANT TAP PHARMACEUTICAL PRODUCTS INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS was served upon all counsel of record by electronic service pursuant to CMO No. 2, by causing a copy to be sent to Lexis/Nexis for posting and notification.

                                                             s/ Toni-Ann Citera_____
                                                             Attorney for Defendant TAP Pharmaceutical Products Inc.

CHI-1522453v1