UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION,<br><br>THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION, | MDL No. 1456<br><br>Civil Action No. 01-12257-PBS |

## SUPPLEMENTAL AFFIDAVIT OF PAMELA SIREN

I, Pamela Siren, being duly sworn, do hereby depose and say:

1. I am the Vice President of Quality and Compliance at Neighborhood Health Plan, Inc. ("NHP"). This Supplemental Affidavit is submitted in support of Nonparty Neighborhood Health Plan, Inc.'s Motion for Protective Order and to Quash Subpoena from Defendant Dey, Inc.

2. I have reviewed the "Narrowed Drug List" and "Narrowed Requests" sent by Dey, Inc., copies of which are attached as Exhibit A to Defendant Dey, Inc.'s Memorandum of Law in Opposition to NHP's Motion. The revised documents do not alleviate the burdens imposed on NHP in responding to discovery from Dey, Inc.

3. The Narrowed Requests repeatedly refer to and request documents pertaining to the drugs listed on the Narrowed Drug List. The Narrowed Drug List, which is written in terms of "drug name" and "J Code", does not in any way assist NHP in responding to the Narrowed Requests. NHP does not index, reference, file, or organize any of its documentation pertaining to drugs by "J Code". Nor does NHP store J Codes in its data warehouse. In order for NHP to search for documents pertaining to specific drugs, the drugs and J Codes on the Narrowed Drug

381408

List would have to be converted to NDC Codes, a process that I estimate could take hundreds of hours.

4. Even if NHP were to attempt to search for the categories of documents described in the Narrowed Requests without reference to specific drugs, such a search would impose significant burdens on NHP.

5. For example, Request 3 seeks in part "All schedules disclosing the amounts reimbursed to physicians for services rendered and drugs administered ..." and Request 4 seeks in part "All documents concerning your contractual relationships with Providers ...." NHP keeps copies of contracts with current providers on site. Other provider contracts are boxed with various other documents and stored with Iron Mountain storage, which charges NHP to store, retrieve and return documents to storage. Given that Dey, Inc. is seeking documents spanning a fourteen year time period, there are thousands of contracts at issue. I estimate that there are roughly at least 5,000 provider contracts on site alone, each encompassing multiple pages. All such documents would have to be manually retrieved and reviewed to attempt to obtain the requested information. Such endeavor could take thousands of hours.

6. Request 5 seeks in part "Electronic medical claims data regarding Provider or PBM claims for reimbursement for any of the drugs listed on Exhibit A ...." Claims data is not kept by nor can it be searched by reference to specific J Code drugs. NHP receives thousands of medical claims, approximately 130,000 per month. Therefore, all medical claims would have to be retrieved and reviewed to determine whether any claim contained the requested information. Moreover, since NHP is in the process of changing its current claims data processing system, time would need to be spent extracting data from NHP's current and prior claims data processing systems. I estimate that such a review and retrieval process could take thousands of hours.

381408

7.  Requests 8 and 11 encompass documents concerning advisory boards regarding reimbursement for drugs and drug formularies. Since I started at NHP in 1999, NHP has had a Pharmacy and Therapeutics Committee which meets every quarter. Members review various documents before and during the meetings and minutes are kept of the meetings. The minutes are not indexed or segregated with respect to reimbursement for drugs or drug formularies. Moreover, the minutes reference a variety of other confidential and proprietary information. These documents would have to be manually retrieved, reviewed and redacted in order to produce the requested information, a process which I estimate would take hundreds of hours.

8.  Request 10 seeks documents pertaining to communications between NHP and providers and PBM's on various aspects of physician-administered drugs. NHP does not index or store provider correspondence by reference to subject matter or drugs. Moreover, certain correspondence with providers is highly confidential. NHP would have to attempt to retrieve and review all provider communications spanning a fourteen year period to find the requested information, a virtually impossible task.

9.  NHP has approximately 300 employees and only two pharmacists on staff. These pharmacists are responsible for advising providers and members as to drug eligibility and benefits and also work to ensure compliance with all applicable legal requirements, including Medicaid regulations. A pharmacist, as well as staff from NHP's finance, information technology and contracting departments, would have to assist with the retrieval and review of the documents sought by Dey, Inc. NHP's current staff cannot both attend to the business of NHP and take time away from their duties to attempt to respond to the broad discovery requests from Dey, Inc.

10. Given a reasonable amount of time, NHP could retrieve and produce:

- 4 -

- physician fee schedules (Requests 1, 3);

- contracts with current and former PBM's (Requests 4, 6);

- contracts with specialty pharmacies (Request 9); and

- summary reports regarding rebates (Request 12).


Signed under the pains and penalties of perjury this 27th day of January, 2006.


                                                                               /s/ Pamela Siren
                                                                               Pamela Siren

381408