UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |

**NON-PARTY TUFTS ASSOCIATED HEALTH PLAN, INC.'S
RESPONSE TO DEFENDANTS' OBJECTIONS TO
CHIEF MAGISTRATE JUDGE BOWLER'S DISCOVERY ORDERS**

**Introduction and Procedural Background**

In November, 2005, just short of the Track Two defendants' discovery deadline, defendant Dey, Inc. ("Dey") served remarkably broad third party witness subpoenas requesting documents and deposition testimony on over thirty subjects from the following Massachusetts-based private health insurers/third-party payors: Tufts Associated Health Plans, Inc. ("Tufts Health Plan")[1], Neighborhood Health Plan ("NHP"), and Fallon Community Health Plan ("Fallon"). *See,* Declaration of Christopher C. Palermo (Docket No. 2141), Exhibits A, B, and C. Dey had previously issued a subpoena to Blue Cross Blue Shield of Massachusetts ("BCBS MA"), the largest Massachusetts health insurer, with a reported membership of 2.8 million people.[2] Co-defendant Abbott Laboratories ("Abbott") had previously issued a subpoena to and had

---

[1] Tufts Associated Health Plans, Inc. is essentially the operations arm of Tufts Health Maintenance Organization, Inc. ("TAHMO") and TAHMO subsidiaries that offer health plans and that have contracts with providers. TAHMO and one of its subsidiaries meet the criteria for class membership as set forth in the Court's Class Certification Order of August 16, 2005. These entities are collectively referenced herein as "Tufts Health Plan."

[2] This membership figure is as reported on the BCBS MA website, www.bluecrossma.com.

obtained discovery from Harvard Pilgrim Healthcare ("Harvard Pilgrim"), the second largest Massachusetts health insurer, with a reported membership of over 900,000 people.[3] With discovery in progress from BCBS MA and Harvard Pilgrim, the defendants had already begun gathering information pertaining to more than half of the insured lives in this Commonwealth.

Although Dey and Abbott suggest that prior orders in this case establish a veritable presumption in favor of unfettered absent class member discovery, they concede (as they must) that, as a matter of law, such discovery is permitted only upon a showing that (i) the information is relevant to the decision of common questions; (ii) the discovery is tendered in good faith; (iii) the discovery imposes no undue burden; and (iv) the information sought "is not available from the representative parties." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984). *See*, Dey, Inc. and Abbott Laboratories' Memorandum Of Law In Opposition To Plaintiff's Motion For Protective Order (Docket No. 1919)(hereinafter, "Defendants' Opposition Memo") at 5. In short, discovery of absent class members must be supported by a clear showing of legitimate need. *See, e.g.*, Federal Judicial Center's MANUAL FOR COMPLEX LITIGATION (hereinafter, "MANUAL") at §21.4 (2004).

To justify their efforts to obtain discovery from additional Massachusetts health insurers, and, in particular, to explain why the information is not available from "representative parties," defendants pointed out that, while, on August 16, 2005, this Court had certified a class of Massachusetts third-party payors whose reimbursement rates for physician-administered drugs were based upon average wholesale price

---

[3] This is the membership figure as of 2/28/06, as reported on Harvard Pilgrim's website, www.harvardpilgrim.org.

2

("AWP"), no Massachusetts third-party payor had yet been certified as a representative plaintiff in the case. *See*, Defendants' Opposition Memo at 2. Defendants argued that, in the absence of a Massachusetts third party payor class representative, its selection of Massachusetts based health insurers for further discovery was "not without logic," explaining that:

> BSBC MA is the largest third-party payor in Massachusetts (over 2 million members), Tufts and Harvard Pilgrim are smaller plans (700-800,000 members), and Fallon and Neighborhood represent plans with the smallest enrollment (less than 200,000 members). Thus, discovery from these plans was meant to provide a *cross-section* of the potential members of the Massachusetts third party payor class. (Emphasis supplied). Defendants' Opposition Memo at 3.

On January 30, 2006, this Court issued a Consolidated Order re: Motion For Class Certification (Docket No. 2097) that certified BCBS MA, among others, as a representative for two distinct classes of plaintiffs:

> All Third Party Payors who made reimbursements for drugs purchased in Massachusetts, or who made reimbursements for drugs and have their principal places of business in Massachusetts, based on AWP for a Medicare Part B covered Subject Drug that was manufactured by [designated defendants]; and

> All…Third Party Payors who made reimbursements based on contracts expressly using AWP as a pricing standard for purchases in Massachusetts, and all Third Party Payors who made reimbursements based on contracts expressly using AWP as a pricing standard and have their principal place of business in Massachusetts, for a physician-administered Subject Drug that was manufactured by [designated defendants].

Accordingly, by the time of the hearing before Magistrate Bowler on February 2, 2006, there *was* a plaintiff in this action--BCBS MA—certified as meeting all Rule 23 criteria necessary to represent Massachusetts third-party payors such as Tufts Health Plan, NHP, and Fallon. The principal justification for the defendants' discovery from absent class members had therefore become moot.

It is well settled that, before post-certification discovery of a non-party class member may proceed, the Court must be satisfied that the requests are absolutely necessary, *see, Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); that the information sought is not available elsewhere, *see, Clark v. Universal Builders, Inc.* 501 F. 2d 324, 340-41 (7th Cir. 1974); that the discovery will not subject absent class members to undue burden or excessive taxing of resources; and that it is not a tactic designed to harass absent class members or reduce the number of potential claimants. *Id.* The defendant's burden is even higher where, as here, the proposed discovery involves the taking of a deposition. *See, e.g., Baldwin & Flynn v. National Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).

As discussed further below, Chief Magistrate Bowler acted well within her discretion, and completely within the parameters of applicable legal standards, in granting the Motions For Protective Order and Motions to Quash the subpoenas served upon absent class member Massachusetts third-party payors. The record amply justifies Chief Magistrate Bowler's conclusion that, given the Court's certification of BCBS MA as a class representative, the defendants had failed to show a legitimate need for further discovery from Massachusetts third party payors, particularly where (i) each absent class member had submitted uncontradicted evidence demonstrating the overwhelming practical burdens imposed, where (ii) in Tufts Health Plan's case, discovery had already been sought and obtained from Harvard Pilgrim, a Massachusetts third-party payor that defendants considered to be comparable, and where (iii) Massachusetts health insurers were being asked to produce their most confidential and competitively sensitive business

4

information. *See*, Affidavit of James Roosevelt, Jr., President and CEO of Tufts Health Plan.

Indeed, in Tufts Health Plan's case, BCBS MA is its largest competitor in a relatively small and intensely competitive market. Chief Magistrate Bowler was amply warranted in crediting Tufts Health Plans' description of the serious risk of competitive harm in requiring Massachusetts health plans to disclose their most competitively sensitive information in discovery, given the fact that BCBS MA is now a party to the case. Tufts Health Plan's evidentiary submissions are found at Docket Nos. 1910, 2110, and 2111, and are attached hereto as Exhibits A, B, and C.

## Argument

### I. THE CHIEF MAGISTRATE'S ORDER PROPERLY BALANCED THE DEFENDANTS' ASSERTED NEED FOR DISCOVERY FROM ABSENT CLASS MEMBERS AGAINST THE SIGNIFICANT BURDENS IMPOSED.

#### A. The Chief Magistrate's Order Must Be Upheld Unless "Clearly Erroneous or Contrary To Law"

The district court must defer to a magistrate judge's orders on non-dispositive matters such as discovery motions unless the order in question is "clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(a); *United States v. Raddatz*, 447 U.S. 667, 673 (1980); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). Under the "clearly erroneous" standard, the district court may overturn a magistrate's order only when, upon review of all the evidence, the court is "left with the firm conviction that a mistake has been made" *United States v. Mehta*, 236 F. Supp. 2d 150, 154 (D. Mass. 2002), *quoting from Weeks v. Samsung Heavy Industries Co.*, 126 F. 3d 926, 943 (7th Cir. 1997). In reviewing the record for this purpose, the district court "must refrain from second-guessing the magistrate judge's pre-trial discovery rulings."

*Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 6 (D. Rhode Island, 2004).

There is no reason to second-guess the Chief Magistrate's rulings here. The defendants have failed to demonstrate *any* need for post-certification discovery from Massachusetts insurers, much less how their desire for additional information outweighs the significant burdens that such discovery would clearly impose.

### B. The Defendants Have Made No Showing of Need For Discovery From Absent Class Members Now That There Is A Plaintiff Representative of Massachusetts Third Party Payors

In its Consolidated Order of January 20, 2006, the Court cited and relied upon Rule 23(b)(3) of the Federal Rules of Civil Procedure, which provides that a class action may be maintained if the four prerequisites of Rule 23(a) are satisfied, and if, in addition,

> the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Emphasis supplied).

Rule 23(a) makes clear that a member of a class may sue as a representative party

> on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are *common questions of law or fact common to the class*, (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. (Emphasis supplied).

Ignoring the fact that this is a Rule 23 class action, with a named plaintiff whom this Court has certified as a representative of Massachusetts third-party payor health plans, defendants continue to assert that they need individualized post-certification discovery from several other Massachusetts-based health insurer in order to understand "the methodologies used by third-party payors to reimburse for physician-administered

6

drugs and whether payors who based reimbursement on AWP knew that AWP was not an average of wholesalers' prices." Defendants' Opposition Memo at 5-6.

Defendants themselves describe their inquiry as centrally relevant to the "common questions alleged in the Third Amended Master Consolidated Class Action Complaint." Defendants' Opposition Memo at 5. The defendants concede that the information expected from this discovery will not be new, but will be "consistent with testimony obtained from other third-party payors." Defendants' Opposition Memo at 6. Defendants have offered no explanation whatsoever for their need for discovery from Tufts Health Plan, where they have already sought and obtained information from Harvard Pilgrim, the only other health insurer in Massachusetts whom the defendants consider to be comparable in size. Defendants' Opposition Memo at 3.

Even if this case had not been certified to proceed as a class action, there would be ample authority under these circumstances to support the Chief Magistrate's discovery orders. *See, e.g., Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F. 3d 189, 193 (1st Cir. 2001)(non-party discovery not permitted where the entity seeking discovery had failed to establish that the information to be gained would be anything other than cumulative or duplicative of prior discovery). Given the fact that, after extensive discovery, briefing, and argument, this Court has determined that common issues predominate; that the injury alleged by BCBS MA is typical and representative of an injury to an entire class of Massachusetts third-party payors; and that a class action is a superior vehicle to adjudicate plaintiffs' claims, there is no reason whatsoever to allow individualized post-certification discovery from absent class members at this time-- particularly the type of sweeping, intrusive (and admittedly cumulative) discovery that

the defendants have sought here. Indeed, "[o]ne of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subjected to discovery." MANUAL at §21.4.

### C. Prior Discovery Orders In This Case Do Not Entitle Defendants To Unfettered Nonparty Discovery

Rather than making a particularized showing of need, the defendants appear to argue the Chief Magistrate's order should be overruled as "clearly erroneous" simply because they had been allowed to obtain discovery from nonparty third party payors in the past. These prior orders, however, in no way create an unfettered right to post-certification discovery from absent class members in this case. On the contrary, they reflect a careful balancing of "needs" and "burdens," given the procedural posture of the case at the time:

- This Court's denial of Plaintiffs' Motion for Protective Order to Putative Class Members on April 6, 2004 was issued long before the class certification orders of August 16, 2005 and January 30, 2006. The ruling was explicitly based upon "the reasons stated in open Court at the Status Conference on March 8, 2004." See, Palermo Declaration (Docket No. 2141), Exhibit E.

  At the Status Conference held on March 8, 2004, the Court considered whether pre-certification discovery of sample ERISA plans was justified and stated the following: "Normally, I'm not sympathetic to class discovery. In [the case of ERISA plans] it may be critical to understanding not only preemption issues but also what's typical." See, Transcript at 48.[4]

  After having been assured that the defendants' goal was merely to "develop enough information so we can present a sample," and after considering the fact that the plans were routinely distributed to plan members and hence were not confidential, see, Transcript at 49, the Court allowed the defendants to proceed with "discovery into the different kinds of ERISA plans for typicality." Transcript at 50. The Court noted that such nonparty discovery was "rare." Transcript at 49.

---

[4] Tufts Health Plan relies upon excerpts of transcript of the March 8th Status Conference appended to the Affidavit of Adeel Mangi at Exhibit 11, submitted in connection with Defendants' Memorandum of Law in Opposition to Motion to Quash Subpoenas and For a Protective Order Filed By Third Party Health Plans, Docket No. 1767.

8

- On November 2, 2004, prior to the class certification orders of August 16, 2005 and January 30, 2006, the Chief Magistrate denied a Motion to Quash nonparty discovery on the basis of "the reasoning employed by the court at the March 8, 2004 status conference." Palermo Declaration at Exhibit F. In other words, the defendants were permitted pre-certification depositions and document discovery on issues of "typicality."

    Discovery was limited to a designated list of subjects, and defendants were ordered to pay reasonable costs of transportation and related expenses, reasonable attorneys' fees, and lost income incurred by the witnesses. *See*, Palermo Declaration, Exhibit F. The Court adopted these conditions on November 18, 2004, with the additional limitation that "no deposition shall be longer than 8 hours per health plan."

- On January 27, 2005, the Chief Magistrate allowed pre-certification discovery to proceed against Health Net, a third-party payor who, according to the defendants, was "a key part" of their "industry sample." Palermo Declaration, Exhibit G at 3.

    The Chief Magistrate permitted discovery only after defendants had made explicit (and undisputed) assurances that they sought only "representative sample" contracts from Health Net, and that no competitive relationship existed between Health Net and any of the parties to the case. Palermo Declaration, Exhibit G at 8 and 10.

- On November 9, 2005, prior to the certification of a representative Massachusetts third party payor plaintiff, the Chief Magistrate allowed discovery to proceed against six Blue Cross Blue Shield Plans, a "core part" of "the initial industry sample" upon which plaintiffs apparently had relied "for many of the assumptions that underlie their theories of liability and damages." Palermo Declaration, Exhibit H at 27 and 29.

    Chief Magistrate Bowler accepted the defendants' representations that the discovery requests directed to the Blues plans were even more narrowly drawn than those directed to Health Net, Palermo Declaration, Exhibit H at 28, 33and ordered defendants to pay the cost of downloading electronic claims data. Exhibit H at 35.

- On February 2, 2006, the Chief Magistrate allowed defendants to complete long-pending discovery against United Health Care and Empire Blue Cross Blue Shield—two of the entities that defendants had identified in the November 9th hearing as belonging to the "core part" of their "initial industry sample." Exhibit H at 29. Discovery had been underway since 2004.

9

The Chief Magistrate was amply warranted in concluding that, given the Court's recent certification of BSBC MA as a representative party, the defendants' prior justifications for nonparty discovery were no longer sufficient or persuasive. As to Massachusetts health plans, the open questions are fairly straightforward:

> According to plaintiffs' experts Hartman and Rosenthal, payments to physicians for physician-administered drugs and related services are predominantly based on AWP. Defendants' expert Young disagrees, opining that the payments are negotiated as part of the overall physician fee schedule involving both drugs and services and that TPPs do not consider the providers' acquisition costs to be relevant. Dr. Berndt views the record as "unsettled" on this point.

In light of the fact that this Court has already determined that BCBS MA's claims are typical of those of the nonparty Massachusetts class members, and in light of the fact that the defendants already had the opportunity, pre-certification, to discover information on this and other issues:

- from health plans covering more than half of the insured lives in this country;

- from Massachusetts and other health plans covering more than half of the insured lives in this Commonwealth;

- from the Massachusetts health plan recently certified as a class representative in this action; and

- from the only other Massachusetts health insurer that defendants consider to be comparable to Tufts Health Plan,

the Chief Magistrate was well within her discretion in concluding that enough was enough.

10

### D. The Chief Magistrate's Orders Were Supported By Undisputed Evidence Showing the Extraordinary Burden Imposed By Defendants' Propounded Discovery

#### 1. Compliance With Defendants' Discovery Requests Would Have Imposed Significant and Unwarranted Burdens Upon the Ongoing Business Operations of the Absent Class Members.

The Dey subpoena, both in its original and its "narrowed" form, present overwhelming compliance challenges, which are described in detail in the Affidavit and the Supplemental Affidavit of Miriam Sullivan attached hereto as Exhibits B and C. Among other things, the subpoena seeks information, including claims data, internal communications regarding reimbursement rates, communications with physicians, and provider contracts from 1991 to the present—a period of over fourteen years. The subpoena demands production of documents concerning hundreds of drugs, some self-administered and some physician administered. The list appended to the Dey subpoena bears little resemblance to the "Subject Drug" list appended to the Court's Consolidated Order of January 30, 2006.

The following serves to illustrate some of the most daunting challenges involved in retrieving and organizing the documents sought:

- Currently, Tufts Health Plan contracts with approximately 20,000 health care service providers and 85 hospitals. Compliance with the Dey subpoena would involve the retrieval and review of approximately 65,000 such contracts, including individual physician contracts.

- Tufts Health Plan receives and processes approximately 630,000 coverage claims each month, and receives at least 38,000 telephone queries each month. These telephone queries, which are contemporaneously documented, may come from members, providers, or any third party at all. They are not stored by subject matter, and there is no mechanism by which to search for particular queries by subject matter.

- Tufts Health Plan's business operations are overseen by more than fifteen (15) committees, ranging from the Pharmacy and Therapeutics Committee to the annual medical budget planning committees. These various committees meet

11

- regularly throughout each year, and minutes are regularly taken and maintained. Committee members typically review materials before each meeting, and generate follow up documents. To determine whether any particular committee may have considered or discussed a physician concern about drug reimbursement would require someone at Tufts Health Plan to review every piece of documentation ever generated in the past fourteen years in connection with the work of its committees.

- For both business and legal reasons, the documentation that supports the above-described activities is extensive. In any given year, Tufts Health Plan easily receives and generates hundreds of thousands of documents in the course of its normal operations. Production of documentation reflecting fourteen years of business operations involves the retrieval, organization, and sorting of at least 1.7 million documents.

Tufts Health Plan has made an uncontradicted factual showing that it would take more than 1500 hours of full time equivalent work simply to retrieve and organize this vast amount of information, at a labor cost of nearly $80,000.00. The task would be undertaken at a time when Tufts Health Plan needs its staff to complete high priority regulatory and business tasks, including post-implementation work required by the Centers for Medicare and Medicaid Services ("CMS") in connection with the recent creation of the Medicare Part D pharmacy benefit, and the upcoming triennial and biennial site visits by National Committee on Quality Assurance ("NCQA") and CMS respectively. The undisputed evidence is that the production of documents requested by the Dey subpoena would significantly compromise Tufts Health Plan's ability to complete these tasks within the timeframes required, and would jeopardize its ability to run its business effectively.

### 2. Where a Direct Competitor Had Just Been Added As a Party To the Case, Production of Competitively Sensitive Documents Would Have Needlessly Subjected Nonparty Insurers To the Risk of Serious Harm.

Similarly, the record is undisputed that, with the addition of BCBS MA as a party to the case, the risk of competitive harm from document production changes dramatically.

BCBS MA is Tufts Health Plan's largest competitor in a small and intensely competitive market. In this environment, BCBS MA, Tufts Health Plan, and other Massachusetts third-party payors must negotiate reimbursement rates with essentially the same pool of providers. Sharing reimbursement rates under these circumstances has antitrust implications.

Notwithstanding these business realities, the Dey subpoena demands that Tufts Health Plan produce documents not only reflecting the drug reimbursement rates it negotiates with its providers, but also revealing the way in which Tufts Health Plan reimburses its providers for all of the health services they provide. As the Affidavit of Tufts Health Plan's CEO, James Roosevelt, Jr. points out, *see*, Exhibit A, this is perhaps the most confidential and competitively sensitive information that Tufts Health Plans maintains.

While Tufts Health Plan is aware of the confidentiality orders that have been entered in this action, Mr. Roosevelt explains precisely why those orders fall short of the protection necessary in this highly competitive Massachusetts environment:

> These confidentiality orders are designed to limit access to highly confidential information to outside counsel, in-house counsel who are not currently involved in the contracting process, and experts retained by the parties in connection with the litigation. There is apparently no provision in the current confidentiality orders to ensure against experts with possible conflicts of interest, and there is no guarantee that outside or in-house counsel authorized to see highly confidential information will not, at some later time, move on in their careers, into positions that may involve the contracting process.
>
> Even with the protections provided by existing confidentiality orders, disclosure of the contracting information sought would work significant harm to Tufts Health Plans. It is important to understand that, in focusing on Massachusetts third party payors, the case focuses on a relatively small cohort of insurers in a relatively small market. Producing information to our largest competitor that includes the rates we pay our Providers for their services, and that shows them the

13

specific deals we make with Providers, would be utterly destructive of Tufts Health Plans' ability to compete in the Massachusetts insurance market.

    a.    First, it would disclose to our largest competitor the terms of our arrangements with common suppliers (that is, health care providers), providing that competitor with key information for its own supplier negotiations, as well as information from which it could determine critical Tufts Health Plan cost and customer pricing information.

    b.    Second, I believe that, from an antitrust perspective, Tufts Health Plan would be prohibited from disclosing to our competitor the type of information called for by the Subpoena.

    c.    Finally, the information sought is so sensitive, and the health care marketplace, including attorneys, is so small and close-knit in this area, that I do not believe that any form of confidentiality order would sufficiently protect Tufts Health Plans' or the public's interest with respect to the competitively sensitive disclosure of contract terms called for by the subpoena.

The Magistrate Judge acted well within her discretion in concluding that the risk of harm to the Massachusetts health insurers far outweighed any benefit to the defendants from further discovery.

## Conclusion

For all of the reasons set forth herein, the Magistrate Judge's orders should be affirmed.

                            Respectfully submitted,

                            TUFTS ASSOCIATED HEALTH PLANS, INC.

                            By its attorney,

                            /s/ Anne L. Josephson
                            Anne L. Josephson, Esq.
                            BBO #254680
                            Kotin Crabtree & Strong
                            One Bowdoin Square
                            Boston, MA 02114
                            (617) 227-7031

## Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorney of record for Dey, Inc. with a copy to David Nalven, Liaison and Co-Lead Counsel for plaintiffs, via email and regular mail on March 8, 2006.

/s/ Anne L. Josephson