UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION,<br><br>THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION | MDL No. 1456<br><br>Civil Action No. 01-12257-PBS |

### NON-PARTY FALLON COMMUNITY HEALTH PLAN, INC.'S MEMORANDUM IN RESPONSE TO DEFENDANTS' OBJECTIONS TO THE ORDER OF CHIEF MAGISTRATE JUDGE BOWLER ISSUED ON FEBRUARY 4, 2006, QUASHING SUBPOENAS

Non-Party Fallon Community Health Plan, Inc. ("Fallon"), by its attorneys, Nelson, Kinder, Mosseau & Saturley, P.C., and in accordance with the plaintiffs' assented-to motion for leave to file a reply to Defendants' objections to Magistrate Bowler's February 4, 2006 Order,[1] respectfully submits the following Memorandum in Response to Defendants' Objections to the Order of Chief Magistrate Judge Bowler issued on February 4, 2006.

### INTRODUCTION

Federal Rule of Civil Procedure 45(c) places the obligation squarely on the attorney issuing a subpoena to take reasonable steps so as not to impose an undue burden or expense on the non-party subject to the subpoena. Rule 45 likewise grants the Court, including a magistrate judge assigned to resolve a discovery dispute pursuant to Rule 72(a), with broad discretion to ensure that attorneys exercising the subpoena power of the court comply with their obligations. In this case, Chief Magistrate Judge Bowler acted well within her discretion in quashing

---

[1] See Docket Entry No. 2148. In the assented-to motion, the plaintiffs specifically stated that the motion would govern "responses to be filed, if any, by Massachusetts third-party payors Fallon Community Health Plan, Inc. ('Fallon'), Tufts Associated Health Plans, Inc. ('Tufts'), and Neighborhood Health Plan, Inc. ('NHP')."

subpoenas that were extraordinarily burdensome, as demonstrated by the numerous affidavits submitted in opposition to them.

Contrary to the contentions of Dey and Defendant Abbott Laboratories, there is an abundance of support in the record for Chief Magistrate Judge Bowler's decision. Specifically, Fallon submitted several affidavits conclusively establishing that compliance with the subpoena served upon it, a small health maintenance organization with very limited resources, would have required substantially in excess of 50,000 hours of its administrative staff's time. The other health plans subject to the subpoenas likewise demonstrated the dramatic nature of the burdens placed upon them. Balanced against such extraordinary burdens is the fact that the defendants have already engaged in discovery of more than 40 health plans nationwide, representing in excess of 50 percent of individuals covered by private health insurance in the United States, as well as 50 percent of Massachusetts covered lives.

In short, the defendants' claim that "Chief Magistrate Bowler failed to engage in any balancing between the alleged burden of the proposed discovery sought and its likely benefit" is categorically untrue. No decision of this Court or order in this case has ever given the defendants *carte blanche* authority to conduct discovery of non-party health plans. It was not Magistrate Bowler's obligation, as the defendants suggest, to "have narrowed the discovery sought from the Massachusetts Payors." Rather, it was the *defendants'* responsibility not to impose an undue burden in the first instance. The defendants having breached that obligation, the order quashing the subpoenas was proper and should be upheld.

## STANDARD OF REVIEW

**A.   Chief Magistrate Judge Bowler had broad discretion in resolving the present discovery dispute, and reversal is appropriate only if that discretion was abused.**

A magistrate's decision in a discovery dispute may be set aside only if it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" only when, based upon the entire record, "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." Shadduck v. Rodolakis, 221 B.R. 573, 576 (D. Mass. 1998) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

"Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." Commodity Futures Trading Comm'n v. Standard Forex. Indus., Co., 882 F. Supp. 40, 42 (E.D.N.Y. 1995); see also Detection Systems, Inc. v. Pittway Corp., 96 F.R.D. 152, 154 (W.D.N.Y. 1982) (cited with approval in Benefit Management of Maine, Inc. v. Allstate Life Ins. Co., 993 F. 2d 1530, 1993 WL 177120 (1st Cir. 1993) (unpublished table decision)). Accord, MacNeil v. Americold Corp., 735 F. Supp. 32, 37 (D. Mass. 1990) (magistrates have broad discretion to fashion discovery orders). In this case, there is more than ample support in the record for Chief Magistrate Judge Bowler's exercise of discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.   Dey served the subpoenas on Fallon and the other Massachusetts health plans just prior to the close of discovery.**

Dey served its subpoena upon Fallon on November 21, 2005. Dey served substantially similar subpoenas upon Tufts Associated Health Plans, Inc. ("Tufts") and Neighborhood Health Plan, Inc. ("Neighborhood"), two other Massachusetts health plans, around the same time. See generally Subpoenas, attached as Exhibits A through C to the Declaration of Christopher C.

3

Palermo dated February 16, 2006, Docket Entry No. 2141. In the Fallon subpoena, Dey sought Rule 30(b)(6) testimony on 33 separate topics and production of 12 separate categories of documents generated over a 14-year period. See Exhibit C to the Declaration of Christopher C. Palermo, Docket Entry No. 2141. The subpoena purported to require Fallon's compliance by December 2, 2005, or eleven days after service of the subpoena and one day prior to the close of discovery for Track II Defendants.

The plaintiffs filed motions to quash and for protective orders with respect to all three subpoenas. See Docket Entry Nos. 1907, 1908, and 1909. Each of the three health plans likewise moved to quash and for protective orders. See Docket Entry Nos. 1910, 1911, 1914, 1915, 2091, and 2092. In its opposition papers, Dey relied heavily upon the fact that, in the Order of August 16, 2005, this Court certified a class of Massachusetts third party payors. At that time, there were no Massachusetts-based health plans among the representative plaintiffs. See Docket Entry No. 1919 at 2-3, 9. On January 30, 2006, however, this Court certified Blue Cross Blue Shield of Massachusetts as a representative plaintiff.

Chief Magistrate Judge Bowler held a hearing on the motions on February 2, 2006. In advance of the hearing, each of the health plans submitted several affidavits addressing with specificity the burdens that compliance with the subpoenas would have imposed on each business in light of the circumstances unique to how each health plan operates and the resources available to each health plan. See Docket Entry Nos. 2083, 2084, and 2085 (Fallon); 1914 and 2089 (Neighborhood); and 1910, 2110, and 2111 (Tufts). The defendants did not offer any contradictory evidence, or otherwise refute the information contained within the affidavits.

4

> **B.  The affidavits Fallon submitted established that it is a small health plan with very limited resources, and that compliance with the subpoena would have imposed extraordinary burdens upon it.**
>
>> **(1)  Fallon is a small health maintenance organization with limited resources to respond to discovery requests.**

Fallon is a small health maintenance organization providing physician care and pharmaceuticals to approximately 171,000 members in 228 cities and towns, located primarily in Worcester County, Massachusetts.  Fallon's two primary competitors, by contrast, serve over 2,400,000 and 800,000 members, respectively.  See Affidavit of Daniel M. Concaugh ("Concaugh Affidavit"), attached hereto as Exhibit A, at ¶ 2; see also Affidavit of Kevin C. McGovern ("McGovern Affidavit"), attached hereto as Exhibit B, at ¶ 5.[2]

Fallon employs a total of approximately 525 employees.  Of that total, approximately 200 serve in an administrative capacity, and would have been involved in responding to the subpoena.  See id. at ¶ 3.

>> **(2)  The discovery sought of Fallon was extraordinarily broad, overly burdensome, and sought highly confidential information.**

Fallon's affidavits establish that the document production the subpoena would have required was extraordinarily burdensome.  For instance, the first document request would have obligated Fallon to manually review between 100,000 and 120,000 separate contracts entered into over a fourteen year period.  This process would have taken an estimated 50,000 hours to complete.  See generally Concaugh Affidavit at ¶ 5.  Similarly, the second document request would have required manual review of millions of claims records *per year* between 1991 and the present, which would have taken tens of thousands of hours to complete in addition to the time required to review the contracts.  See Concaugh Affidavit at ¶¶ 7-8.  Moreover, producing these

---

[2]   The Affidavits submitted herewith as Exhibits A through C were submitted to the Court separately as Docket Entry Nos. 2083, 2084, and 2085, and as attachments to Fallon's Motion to Quash (Docket Entry Nos. 2091 and 2092).  For the Court's convenience, they are also being attached to this memorandum.

records would have allowed a competitor of Fallon to calculate Fallon's fee and reimbursement schedules, which are among its most commercially sensitive and proprietary information. The other document requests would have imposed similar cumulative burdens. See generally Concaugh Affidavit and Affidavit of Leslie Fish ("Fish Affidavit"), attached hereto as Exhibit C.

In sum, the affidavits establish that virtually every piece of paper or data Fallon has maintained for the last fourteen years would have to have been manually reviewed, a process that would have taken substantially in excess of 50,000 hours of its own staff's time. See Concaugh Affidavit at ¶ 11. Fallon simply does not have the necessary resources to devote to such an endeavor. Moreover, contrary to the defendants' belief, see Objection at 6, Fallon does not directly purchase drugs from manufacturers. See McGovern Affidavit at ¶¶ 5-9.

### (3) Responding to the subpoena would have imposed unnecessary and unduly burdensome expenses on Fallon.

Fallon maintains approximately three years of records at its administrative offices. Older records are stored at an Iron Mountain commercial storage facility. The facility charges fees for both retrieving and re-storing such records. Accordingly, compliance with the subpoena would have required the retrieval and restoration of approximately 11 years' worth of records from off-site storage, and the warehousing of the documents in a space with sufficient room and resources to conduct a document review. Moreover, because Fallon's records are not catalogued in a manner corresponding to the document production requests, the retrieval and review process would have been much broader in scope than merely requesting specified records. The logistics of responding to the subpoena, in short, would have imposed significant out-of-pocket expenses on Fallon in addition to the internal labor costs Fallon would have been forced to incur by dedicating its limited administrative staff to document review. See Concaugh Affidavit at ¶ 6.

Moreover, the affidavits establish that many of Fallon's administrative staff members who might otherwise have been available to respond to the subpoena are already fully engaged in numerous regulatory compliance and audit preparation activities, and will be so engaged for the balance of 2006. Responding to the subpoena would have imposed inordinate burdens on a staff the size of Fallon's even if that staff had no competing duties. The unavailability of many of its key staff members, however, renders the tasks required by the subpoena all the more impossible to undertake  See generally Concaugh Affidavit at ¶¶ 12-13; Fish Affidavit at ¶¶ 4-5.

Finally, it bears noting that many of the documents Dey sought contain private medical records. Fallon is obligated to keep such records confidential pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), absent certain limited conditions. Fallon already devotes two staff positions exclusively to HIPAA compliance, and the daily compliance with HIPAA terms and conditions by other staff consumes the full time equivalent of an estimated ten more positions. Review of the records in anticipation of production would, therefore, have required a separate and additional analysis by legal counsel. See Concaugh Affidavit at ¶ 15.

C.  **At the hearing on the motions, Chief Magistrate Judge Bowler specifically considered the burdens imposed by the subpoenas in light of the Defendants' need for the discovery.**

At the February 2, 2006 hearing on the motions, the plaintiffs specifically noted that the Defendants have already conducted discovery of over 40 health plans nationwide covering more than half of all insured persons in the country, including Blue Cross Blue Shield of Massachusetts and Harvard Pilgrim Community Health Plan, which together cover more than half of Massachusetts insured persons. See Hearing Transcript, attached hereto as Exhibit D, at 24-25. Adding the three additional health plans, the plaintiffs pointed out, would encompass virtually the entire health insurance industry in the Commonwealth. See id. at 25.

7

Notably, counsel for the Defendants did not dispute the relevance of the nationwide discovery to its defenses. Indeed, two other motions were argued at the hearing involving non-Massachusetts-based health plans. In response to an argument from one of those health plans that the discovery was not focused upon Massachusetts, counsel for one of the Defendants responded as follows:

> As to the issue of our not having focused purely on [the health plan's] Massachusetts operations, well again, that's a simple point. There is no claim in this case that there was a Massachusetts specific fraud. The claim is of a nationwide fraud. It so happens that the class that's been certified in this context is Massachusetts specific, but proving or disproving it and plaintiffs' theories is a consequence of the knowledge of the industry as a whole. So [the health plan's] knowledge on these issues is absolutely critical. Id. at 19-20.

Counsel for the health plans underscored the extraordinarily burdensome nature of the discovery to their business operations, as well as the risks inherent in having one of their primary competitors, Blue Cross Blue Shield of Massachusetts, a party to the case with potential access to the health plans' most commercially-sensitive information. See generally id. at 32-47. For Fallon, the undersigned counsel emphasized that responding even to the first document request "would require just in and of itself the equivalent of 50,000 hours worth of work. Fallon cannot meet that burden." Id. at 45. In light of the limited availability of its administrative staff and their other current business responsibilities, counsel for Fallon stressed that any response to the subpoena, even a limited one, would pose an overwhelming burden to Fallon. See id. at 46-47.

Defendants' response was not to address the specific burdens articulated by the health plans in their affidavits. Rather, like they do in the present objection, the defendants simply pointed out that other health plans have had to respond to discovery requests. See id. at 47-48.

8

In granting the motions, Chief Magistrate Judge Bowler noted that she had considered the extensive arguments made by the parties in their papers and at the hearing. See id. at 48. She concluded as follows: "Having reevaluated the situation and having heard really very extensive argument on burdensomeness today, I believe that the presence of Blue Cross Blue Shield in the litigation at this time does change things, and I feel that the oppressiveness of the burden as has been outlined by counsel for the three health plans is quite dramatic." Id. at 48. She also reasoned that the confidentiality concerns raised by the health plans militated in favor of granting the motions. Id. The defendants' present objections followed.

## ARGUMENT

**A.  It was defendants' burden to make a particularized showing of need for the discovery, and to demonstrate that it was not unduly burdensome.**

"Rule 45(c)(1) imposes upon the party issuing a subpoena a duty to avoid imposing an undue burden or expense on the person or entity subject to the subpoena." 9A C. Wright & A. Miller, Federal Practice & Procedure § 2459 (1995 & Supp. 2005).  Rule 45(c)(3)(A)(iv) specifically "commands that a court 'shall' quash or modify a subpoena if the subpoena 'subjects a person to undue burden.'" Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003).  In balancing a party's need for discovery against the burden imposed by the requested discovery on a nonparty, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight." Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998).

In the context of a class action, discovery is not available as a matter of course against absent class members. See M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 103 F.R.D. 635, 637 (D. Mass. 1984).  It is the party seeking to impose discovery obligations on nonparty class members who bears the burden to demonstrate a particularized need for the discovery.  See In re

9

Carbon Dioxide Industry Antitrust Ligitation, 155 F.R.D. 209, 212 (M.D. Fla. 1993). Ordinarily, discovery of non-party class members is "sharply limited and allowed only on a strong showing of justification." Manual for Complex Litigation, Third, § 30.232, at 231 (1995) (quoting 8 Charles A. Wright et al., Federal Practice and Procedure § 2171 (2d ed. 1994)).

Factors relevant to whether such discovery is allowed include the necessity of the discovery, whether the discovery will pose an undue burden, and whether the information is available from representative parties. See, e.g., On the House Syndication, Inc. v. Federal Express Corp., 203 F.R.D. 452, 456 (S.D. Cal. 2001). Accord, M. Berenson Co., 103 F.R.D. at 637. Even where courts have allowed the discovery, they have limited the discovery so as not to impose an undue burden on the absent class members. See, e.g., Transamerican Refining Corp. v. Dravo Corp., 139 F.R.D. 619, 622 (S.D. Tex. 1991) (limiting discovery to 50 of 6,000 absent class members); Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 1998 WL 241 279, at *3 (S.D.N.Y. 1998) (allowing defendants to select a total of 10 class members from whom to seek documents, and rejecting defendants' request to take discovery of 25 absent members); Robertson v. National Basketball Assoc., 67 F.R.D. 691, 700-701 (S.D.N.Y. 1975) (limiting number of absent class members subject to discovery so as to protect the class from undue harassment and excessive taxing of resources).

**B.     The defendants failed to carry their burden of showing a particularized need for the discovery, and that the discovery did not impose an undue burden on Fallon.**

    **(1)     Chief Magistrate Judge Bowler's decision did not contradict any prior ruling of the Court.**

The mere fact that prior decisions of the Court in this matter have allowed discovery of nonparty health plans does not mean that the Defendants have *carte blanche* authority to conduct unlimited discovery of additional health plans. Rather, Rule 45(c) requires that each subpoena

be judged on its own merits. Indeed, even where courts in other cases have allowed absent class member discovery, they have been careful to limit the number of absent class members subject to the discovery and to require the proponent of the discovery to demonstrate why follow-up discovery is needed. See Transamerican Refining Corp., 139 F.R.D. at 622; Laborers Local 17 Health and Benefit Fund, 1998 WL 241279, at *3; Robertson, 67 F.R.D. at 700-701.

The defendants' suggestion, therefore, that prior leave of the Court to allow discovery of other nonparty health plans means that this specific round of discovery is permissible is facially without merit. See Objection at 7-8. It was the defendants' burden to show a particularized need for the discovery sought by *these specific subpoenas* and that the discovery would not impose an undue burden on *these specific health plans*. The defendants cannot carry their burden by simply asserting, "it has been allowed before; therefore it should be allowed now."

For the same reason, the defendants' argument that because discovery was not unduly burdensome on other health plans it cannot be burdensome on these health plans fails. See id. at 8-9. Fallon submitted affidavits proving with specificity that responding to the subpoena would have required substantially in excess of 50,000 hours of its already-burdened administrative staff. The other health plans submitted similar proof. It is not sufficient to answer this by simply saying that other health plans have submitted to similar discovery requests. This argument assumes that all health plans nationwide are under identical circumstances, and ignores the specific proof submitted by the health plans on these motions.

**(2)    The record more than demonstrates that Chief Magistrate Judge Bowler struck the proper balance in this case.**

The defendants' contention that Chief Magistrate Judge Bowler "failed to engage in any balancing between the alleged burden of the proposed discovery sought and its likely benefit and, as a result, did not consider the relevance of the information sought," Objection at 4, is

11

categorically untrue. Indeed, the very fact that Judge Bowler ordered discovery of two other health plans at the same hearing belies this contention. To the contrary, the record demonstrates that Judge Bowler considered both the defendants' claims of need and the burden on the health plans, and struck that balance in this instance in favor of the health plans, finding "the oppressiveness of the burden as has been outlined by counsel for the three health plans is quite dramatic." Transcript at 48. This decision was not an abuse of discretion.

Despite the defendants' present claim that the nationwide discovery they have already engaged in is insufficient, see Objection at 6, at the hearing they took the position that while "the class that's been certified in this context is Massachusetts specific, . . . proving or disproving [the claims of fraud] and plaintiffs' theories is a consequence of the knowledge of the industry as a whole." Transcript at 19-20. As counsel for the plaintiffs pointed out at the hearing, the defendants have indeed engaged in discovery of health plans representing more than half of all insured persons nationwide, and half of all Massachusetts insured persons. The defendants themselves expect the discovery they seek of Fallon to be "[c]onsistent with testimony obtained from other third-party payors" – that is, cumulative to what they have already discovered. Objection at 6.

Balanced against the defendants' concession that they are, in fact, seeking cumulative information, Fallon and the other health plans submitted unrebutted testimony demonstrating the extraordinary burden the discovery would impose on their resources. As to Fallon, a small health plan with relatively limited resources, the discovery would impose substantially in excess of 50,000 hours of its staff's time. Quite simply, this is a burden it cannot bear. Judge Bowler's finding, therefore, that "the oppressiveness of the burden as has been outlined by counsel for the three health plans is quite dramatic" is fully supported by the evidence.

12

Finally, Judge Bowler's observation of the risk to the health plans of disclosing their most protected trade secrets to their largest competitor in what is, at its core, a market with very few players was not an abuse of discretion. The defendants' only answer to this is that the health plans can parse through millions of pages to identify and designate "highly confidential" information, thereby maximizing an already unbearable burden.

## CONCLUSION

It was the defendants' duty not to impose an undue burden on Fallon. It was not Chief Magistrate Judge Bowler's duty to re-write Dey's subpoena in order to "narrow[] the discovery sought from the Massachusetts Payors to address any legitimate claims of excessive burdens." Objection at 9. Because Judge Bowler did not abuse her discretion in quashing the Fallon subpoena, the decision should be upheld.

Respectfully submitted,

FALLON COMMUNITY HEALTH PLAN, INC.

By its attorneys,

NELSON, KINDER, MOSSEAU
&amp; SATURLEY, PC

Dated:  March 8, 2006                    By:/s/ William C. Saturley, Esquire
                                         Peter W. Mosseau, Esquire (BBO #358060)
                                         William C. Saturley, Esquire (BBO #442800)
                                         99 Middle Street
                                         Manchester, NH 03101
                                         603-647-1800

**CERTIFICATE OF SERVICE**

I, William C. Saturley, counsel to Fallon Community Health Plan, Inc., hereby certify that on the 8th day of March, 2006, I filed the foregoing Memorandum using the CM/ECF system, which will cause copies to be served electronically on all counsel of record.

Dated:  March 8, 2006                    By:/s/ William C. Saturley, Esquire
                                         William C. Saturley, Esquire