## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1456<br><br>Master File No. 01-CV-12257-PBS<br><br>Hon. Patti B. Saris<br><br>Chief Magistrate Judge Marianne B. Bowler |
| THIS DOCUMENT RELATES TO: (All Actions) | | |

## DECLARATION OF ADEEL A. MANGI

I, Adeel A. Mangi, declare as follows:

1.      I am associated with Patterson Belknap Webb & Tyler LLP and represent Johnson & Johnson, Johnson & Johnson Health Care Systems Inc., Centocor Inc., Ortho Biotech Products L.P., Janssen Pharmaceutica L.P., Ortho Neutrogena Inc., Ortho McNeil Pharmaceutical Inc. and McNeil-PPC in this litigation.  I offer this declaration on behalf of all defendants to the Amended Master Consolidated Class Action Complaint in support of Defendants' Response to Third Party UnitedHealthCare Inc. and United HealthCare Insurance Company's Objections to Chief Magistrate Judge Bowler's Order Granting Defendants' Motion to Compel.

2.      On October 12, 2005, Defendants filed a motion to compel United to produce all documents responsive to Defendants' outstanding subpoena, and to produce witnesses for deposition.

3.      A true and correct copy of Defendants' Motion to Compel Third Party United HealthCare To Produce Documents And Witnesses For Deposition Pursuant To Subpoena and the Memorandum of Law in support thereof, filed with the Court on October 12, 2005, are attached hereto as Exhibit A.

4.      A true and correct copy of the Declaration of Adeel A. Mangi in support of Defendants' Motion To Compel Third Party United HealthCare To Produce Documents and Witnesses For Deposition Pursuant to Subpoena, filed with the Court on October 12, 2005, is attached hereto as Exhibit B.

5.      Oral argument took place before Chief Magistrate Judge Bowler on February 2, 2006, and Defendants' motion to compel was granted in full.  A true and correct copy of the transcript of the February 2, 2006 Motion Hearing Before Chief Magistrate Bowler is attached hereto as Exhibit C.

6.      Following the February 4 Order, Defendants offered to discuss any technical issues associated with data production.  For example, on February 2 and again on February 10, Defendants contacted United to discuss the alleged technical difficulties associated with fee schedule production.

7.      On February 13, 2006, United responded that it would likely be filing objections; it also requested that Defendants narrow the discovery in light of the Court's class certification rulings and requested a list of drugs for which Defendants are seeking claims data and field schedules.  On February 15, 2006, Defendants promptly provided United with the requested information and, notwithstanding that the Court had already ruled in Defendants' favor, informed United of their willingness to further narrow their discovery requests calling for PBM reports, MAC lists and rebate reports.

8.      A true and correct copy of the email string containing each of the above-referenced communications is attached at Exhibit D.

1261515v1

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Adeel A. Mangi
Adeel A. Mangi

Executed on this 10th day of March 2006

3

# EXHIBIT A



7084276

Oct 12 2005
5:37PM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | MDL NO. 1456 |
| | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) ) ) ) ) |
| | Hon. Patti B. Saris |
| | Chief Mag. Judge Marianne B. Bowler |

## DEFENDANTS' MOTION TO COMPEL THIRD PARTY UNITED HEALTHCARE TO PRODUCE DOCUMENTS AND WITNESSES FOR DEPOSITION PURSUANT TO SUBPOENA

Defendants to the Amended Master Consolidated Class Action Complaint respectfully move this Court for an order compelling third party health plan United Healthcare ("United") to produce documents and witnesses for deposition pursuant to the subpoena served upon United on April 9, 2004 and for such other and further relief as the Court deems just and appropriate. The grounds for this motion are set forth in the accompanying memorandum of law, declaration of Erik Haas and exhibits thereto.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel hereby certify that counsel for defendants conferred with counsel for United regarding the issues addressed in this motion, but were unable to resolve or further narrow the issues.

Dated:  October 12, 2005

Respectfully submitted,


_____/s/ Andrew D. Schau_____
Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for Defendants Johnson &*
*Johnson, Johnson & Johnson Health Care*
*Systems, Inc., Centocor Inc. Ortho Biotech*
*Products L.P., Janssen Pharmaceutica L.P.,*
*Ortho Neutrogena Inc., Ortho McNeil*
*Pharmaceutical Inc. and McNeil-PPC on*
*behalf of all defendants to the Amended*
*Master Consolidated Class Action*
*Complaint*

1221166v1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
|  | MDL No. 1456 |
|  | ) ) | Master File No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: THE AMENDED MASTER CONSOLIDATED CLASS ACTION | ) ) ) ) |
|  | Judge Patti B. Saris |
|  | Chief Mag. Judge Marianne B. Bowler |

## [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO COMPEL THIRD PARTY UNITED HEALTHCARE TO PRODUCE DOCUMENTS AND WITNESSES FOR DEPOSITION PURSUANT TO SUBPOENA

Having considered each of the parties' and third party's submissions with respect to Defendants' Motion to Compel Third Party United Healthcare To Produce Documents And Witnesses For Deposition Pursuant To Subpoena, the Court hereby grants the motion.

It is hereby ordered that within twenty days of the entry of this order, United Healthcare complete production to defendants of all documents responsive to defendants' subpoena. It is further ordered that the Plan produce witnesses for deposition within thirty days of the date of this order.

Dated: _____

_____
Hon. Marianne B. Bowler
United States Magistrate Judge

3

1221166v1

## CERTIFICATE OF SERVICE

I certify that on October 12, 2005, a true and correct copy of the forgoing

DEFENDANTS' MOTION TO COMPEL THIRD PARTY UNITED HEALTHCARE TO

PRODUCE DOCUMENTS AND WITNESSES FOR DEPOSITION PURSUANT TO

SUBPOENA was served on all counsel of record by electronic service pursuant to Paragraph 11

of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and

notification to all parties.  I further certify that on October 12, 2005, a copy was served on

counsel for third party United Healthcare via Federal Express.

            /s/ Andrew Schau
            Andrew Schau

4



Oct 12 2005
5:31PM

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

)
IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE )  MDL NO. 1456
LITIGATION )  Civil Action No. 01-12257-PBS
)
)  Hon. Patti B. Saris
THIS DOCUMENT RELATES TO THE )
AMENDED MASTER CONSOLIDATED )
CLASS ACTION )  Chief Mag. Judge Marianne B. Bowler
)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
THIRD PARTY UNITED HEALTHCARE TO PRODUCE DOCUMENTS AND
WITNESSES FOR DEPOSITION PURSUANT TO SUBPOENA**

Defendants to the Amended Master Consolidated Class Action Complaint ("defendants") bring this motion to compel third party United Healthcare ("United") to produce documents and witnesses for deposition pursuant to defendants' subpoena.

## PRELIMINARY STATEMENT

This motion to compel raises no new issues. This Court has already recognized that defendants are entitled to discovery from third party health plans and that such discovery is necessary to defend against plaintiffs' claims. This Court has already ordered other third party health plans to produce the same types of documents and data sought here from United. And this Court has already ordered other third party health plans to produce witnesses for depositions.

United is aware of those rulings. Nonetheless, United has failed to produce responsive documents and witnesses for deposition. Instead, United produced a limited number of (redacted in part) documents and then refused to produce anything more, including deposition witnesses. United has clung to this intransigent position even though defendants have sought to substantially narrow the scope of their requests to facilitate production. United should be held to the same standard as the other third party health plans who were subpoenaed in this litigation. They should be ordered to respond in full to defendants' subpoenas.

## STATEMENT OF FACTS

Defendants subpoenaed United on April 9, 2004.  See Exhibit 1.[1] United was targeted for discovery because of its paramount importance in the industry. Previously, in recognition of the need for this type of discovery, Judge Saris denied a motion by the class plaintiffs which sought to bar discovery from health plans, and ordered that such discovery could proceed. See Exhibit 2.

---

[1] All exhibits referenced herein are appended to the supporting declaration of Adeel A. Mangi ("Mangi Dec.").

1208891v2

After service of the subpoena, defendants engaged in extended negotiations with United over its scope. United did then produce a limited number of documents in late 2004, including redacted copies of some sample contracts with physicians and PBM contracts. However, these documents failed to shed much light on a number of the most critical issues in the case. For example, they did not reveal the rates at which United reimburses physicians administering drugs in office for drugs or services, how those rates are determined, the extent of United's knowledge of the difference between United's rate of reimbursement and the physicians' cost of acquisition, or even United's knowledge and understanding of the AWP benchmark. (Mangi Dec. ¶¶ 6-8).

Defendants then engaged in protracted negotiations in an effort to persuade United to produce the missing documents and data and to produce its witnesses for deposition. United refused to agree to do anything more. On May 27, 2005 defendants sent United a letter at United's request detailing the outstanding production issues and again seeking a deposition date. See Exhibit 3. United refused to budge. (Mangi Dec. ¶¶ 9-10).

Left with no further options, on September 16, 2005, defendants sent counsel for United a motion to compel in draft form, offering to hold a meet and confer prior to filing the motion. See Exhibit 4. United did then engage in substantive discussion about the subpoena and even asked for parameters on specific production issues, e.g., regarding claims data. On September 30, 2005 defendants wrote to United providing the information and specifics they requested. See Exhibit 5. At United's request, defendants also provided a further narrowed list of deposition topics, which were incorporated by reference to the subpoena. See id. To defendants' surprise, however, United wrote back on October 4, 2005 refusing to make any productions of documents or witnesses. See Exhibit 6. (Mangi Dec. ¶¶ 11-13).

- 2 -

While this long course of negotiations played out, this Court ruled on a series of motions directed to other health plans.  Specifically, this Court ordered Aetna, Cigna and Humana to produce witnesses for deposition pursuant to subpoena, and it ordered Health Net to produce responsive documents and data.  See Ex. 7 (order compelling Aetna, Cigna and Humana) and Ex. 8 (Transcript reflecting order compelling Health Net).  The Court directed that the depositions of Aetna, Cigna and Humana could proceed on the same issues that defendants hope to address with United.  Health Net was ordered to produce an even broader set of documents (as the demands then encompassed self administered drugs as well) than those that United is refusing to produce here.  (Mangi Dec. ¶ 14).

## DISCUSSION

This Court has already held in ruling upon previous motions to compel that it has jurisdiction pursuant to the multidistrict litigation statute to enforce subpoenas issued from out-of-state courts both with respect to documents and depositions.  See e.g. Transcript from Motion to Compel Health Net, attached as Ex. 4.  See also 28 U.S.C. § 1407(b);  In re Corrugated Container Antitrust Litigation, 644 F.2d 70, 74 n.6 (2d Cir. 1981);  In re Subpoena Issued to Boies, Schiller & Flexner LLP, No. M8-85, 2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003);  United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc., 238 F. Supp. 2d 270, 273 (D.D.C. 2002); In re Factor VIII or IX Concentrate Blood Products Litigation, 174 F.R.D. 412, 415 (N.D. Ill. 1997); In re Sunrise Securities Litigation, 130 F.R.D. 560, 586 (E.D. Pa. 1989); In re San Juan DuPont Plaza Hotel Fire Litigation, 117 F.R.D. 30, 32 (D.P.R. 1987).

In discussions to date, United has failed to articulate any basis for its refusal to make complete productions or to produce witnesses other than claiming it would be burdensome to do so.  This argument is without merit.

- 3 -

1208891v2

The scope of permissible pre-trial discovery is "very broad." <u>See</u> <u>Cabana v. Forcier</u>, 200 F.R.D. 9, 17 (D. Mass. 2001); 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995). "'Relevance is to be broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action.'" <u>Schuurman v. Town of North Reading</u>, 139 F.R.D. 276, 277 (D. Mass. 1991) (internal citations omitted); <u>see also</u> <u>Klonoski v. Mahlab</u>, 156 F.3d 255, 267 (1st Cir. 1998); <u>Sacramona v. Bridgestone/Firestone, Inc.</u>, 152 F.R.D. 428, 430 (D. Mass. 1993).

Here, the discovery sought from United focuses on the central issues in this litigation. <u>See</u> Ex. 3 (Letter from defendants dated May 27, 2005, which discussed a potential narrowing of the requested documents to facilitate production). Defendants have also offered to pay the costs of culling the electronic data and copying the documents. The Court has already recognized that production requests of a similar magnitude do not pose the sort of burden that would obviate the obligation to produce relevant documents and that the discovery sought is relevant and responsive to this case. *See* Ex. 8. Similarly, it will not be unreasonably burdensome to produce witnesses for deposition. Defendants are willing to travel to the witnesses' location and no third party health plan witnesses deposition to date has lasted more than one day.

1208891v2

## CONCLUSION

Defendants respectfully request that this Court hold United to the same standard as the other third parties subpoenaed in this litigation, compelling them to produce all documents responsive to defendants' outstanding subpoena, and to produce witnesses for deposition.

Dated:       New York, New York
              Oxtober 12, 2005

                                    Respectfully submitted,

                                      /s/ Andrew D. Schau
                                 ———————————————————
                                 Andrew D. Schau (admitted *pro hac vice*)
                                 Erik Haas (admitted *pro hac vice*)
                                 Adeel A. Mangi (admitted *pro hac vice*)
                                 PATTERSON, BELKNAP, WEBB & TYLER LLP
                                 1133 Avenue of the Americas
                                 New York, NY  10036-6710
                                 (212) 336-2000

                                 *Attorneys for defendants Johnson & Johnson, Johnson & Johnson Health Care Systems, Inc., Ortho McNeil Pharmaceutical, Ortho-Neutrogena Inc., Centocor Inc. Ortho Biotech Products L.P., Janssen Pharmaceutica L.P. and McNeil-PPC on behalf of all defendants to the Amended Master Consolidated Class Action Complaint*

## CERTIFICATE OF SERVICE

I certify that on October 12, 2005, a true and correct copy of the forgoing Memorandum Of Law In Support Of Defendants' Motion To Compel Third Party United Healthcare To Produce Documents And Witnesses For Deposition Pursuant To Subpoena was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Verilaw Technologies for posting and notification to all parties.  I further certify that on October 12, 2005, a copy was served on counsel for third party United Healthcare via Federal Express.

/s/ Andrew D. Schau
Andrew D. Schau

1208891v2

# EXHIBIT B



Oct 12 2005
5:27PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

)
)
In Re: PHARMACEUTICAL )
INDUSTRY AVERAGE WHOLESALE )
PRICE LITIGATION )        MDL No. 1456
)
)        Master File No. 01-CV-12257-PBS
)
THIS DOCUMENT RELATES TO: )        Judge Patti B. Saris
(All Actions) )
_____)

## DECLARATION OF ADEEL A. MANGI

I, Adeel A. Mangi, declare as follows:

1.       I am associated with Patterson Belknap Webb & Tyler LLP and represent Johnson

& Johnson, Johnson & Johnson Health Care Systems Inc., Centocor Inc., Ortho Biotech Products

L.P., Janssen Pharmaceutica L.P., Ortho Neutrogena Inc., Ortho McNeil Pharmaceutical Inc. and

McNeil-PPC in this litigation.  I offer this declaration in support of Defendants' Motion To

Compel Third Party United Healthcare To Produce Documents And Witnesses For Deposition

Pursuant To Subpoena.

2.       I base this declaration on my (a) personal knowledge, (b) communications with

United's counsel Michael Prame of the Groom Law Group, and (c) review and discussion with

members of my firm concerning the correspondence with Mr. Prame.

## Defendants' Subpoena to United

3.       On April 9, 2004 defendants served a subpoena upon United Healthcare

("United") seeking the production of documents and deposition testimony.  A copy of that

subpoena is attached as Exhibit 1.

4.       United formed a particularly critical part of defendants' industry sample because

of its size and status as a major industry player.

5.      Defendants served this subpoena on United after Judge Saris had denied a motion filed by MDL class plaintiff seeking to halt third party health plan discovery and ordered this discovery to proceed.  A copy of Judge Saris' order is attached at Exhibit 2.

### Defendants Have Narrowed the Production Sought

6.      After serving United, defendants then entered into a prolonged period of negotiation with United's counsel.  During that process, defendants substantially narrowed the scope of the documents sought from United.  This process included the exchange of numerous letters, emails and telephone conferences where defendants sought to work with United to address any claims of burden and to narrow the scope of documents sought to those absolutely necessary to defend against plaintiffs' claims.

7.      United did then make a series of rolling productions in fall and late 2004.  The documents produced included copies of contracts with physicians that redacted the names of the contracting parties and included no information regarding reimbursement rates.  The production also included some contracts between United and PBMs.

8.      This production, however, did not satisfy even defendants' narrowed documents demands.  For example, the documents produced did not even reveal the rates at which United reimburses physicians administering drugs in office for drugs or services, how those rates are determined, or the extent of United's knowledge regarding the AWP benchmark or differences between its reimbursement rates and physicians' drug acquisition costs.

9.      Defendants then engaged in continued negotiations with United to get supplemental production of missing documents and deposition testimony.  This again included emails, letters and telephone conferences.  United, however, refused to produce supplemental

2

documents or a deposition witness.

10.    On May 27, 2005 defendants sent United a letter at United's request detailing the outstanding production issues and again seeking a deposition date.  A copy of that letter is attached as Exhibit 3.  United's position did not change.

11.    Left with no further options, on September 16, 2005, defendants sent counsel for United a motion to compel in draft form, offering to hold a meet and confer prior to filing the motion.  A copy of that email is attached as Exhibit 4.

12.    United did then engage in substantive discussion about the subpoena and even asked for parameters on specific production issues, e.g., regarding claims data.  On September 30, 2005 defendants wrote to United providing the information and specifics they requested.  At United' request, defendants also provided a further narrowed list of deposition topics, which were incorporated by reference to the subpoena.  A copy of that letter is attached as Exhibit 5.

13.    To defendants' surprise, however, United wrote back on October 4, 2005 refusing to make any productions of documents or witnesses.  See Exhibit 6.

**This Court Has Previously Granted Similar Motions Against Other Health Plans**

14.    Meanwhile, Judge Bowler issues orders in response to other motions requiring Aetna, Cigna and Humana to produce deposition witnesses (Exhibit 7) and ordering Health Net to produce documents and data in response to defendants' subpoena (Exhibit 8).  The Court directed that the depositions of Aetna, Cigna and Humana could proceed on the same issues that defendants hope to address with United.  Health Net was ordered to produce an even broader set of documents (as the demands then encompassed self administered drugs as well) than those that United is refusing to produce here.

I declare under penalty of perjury that the foregoing is true and correct.

3

1212969v2

/s/ Adeel Mangi
Adeel A. Mangi

Executed on this 12th day of October 2005

4

# Exhibit 1

J5400-864

| SERIAL NO. 244 | | |
|---|---|---|
| SERVED | | |
| RECEIVED | | |
| FILED | | |

## Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Erik Haas

Direct Phone
(212) 336-2117

Email Address
ehaas@pbwt.com

April 7, 2004

**By Hand**

Thomas F. Fitzgerald, Esq.
The Groom Law Group
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Re:   **In re Pharmaceutical Industry Average Wholesale Price Litigation**

Mr. Fitzgerald:

        We write on behalf of all defendants to the Amended Master Consolidated Class
Action Complaint to update you on the recent rulings that allow and require defendants to
promptly pursue the discovery demanded by the subpoena we served on your client last
November, and to reinitiate discussions concerning your client's response.

        Specifically, on February 24, 2004, the Court denied defendants' motions to
dismiss, significantly expanding the drugs at issue in this litigation.  Thereafter, on March 8, the
Court denied plaintiffs' motion to quash defendants' subpoenas, authorizing defendants to
proceed with their discovery demands on third party private payors, including your client.
Finally, on March 25, the Court issued a case management order that created a fast track
discovery schedule for this matter.

        In accord with those rulings, we have reissued on behalf of all remaining
defendants the subpoena previously served on your client (a copy of which is annexed) and call
for an initial production by May 5.   There are only two substantive changes from the prior
subpoena.  First, the list of "subject drugs" has been substantially expanded to reflect the drugs
that are now at issue in the case.  Second, the operative time period has been made consistent as
to all requests as January 1, 1991 to the present.

        Consistent with our earlier conversations, we reiterate defendants' commitment to
work with you in an attempt to define a production that provides defendants with the information
required to respond to plaintiffs' claims, while minimizing the burden on your client.  To that
end, we provide the following elaboration regarding the scope of the production we envision
would satisfy the document demands.

April 5, 2004
Page 2

First, with respect to claims data that is maintained in electronic format and should be relatively straightforward to produce, we have limited the specific data fields defendants require to those identified in the annexed file layout. By "claims data" we refer to the electronic transaction records showing reimbursement or payment for the subject drugs. That data is encompassed by numerous document requests, including numbers 2, 6, 9, 10, and 15. It is our understanding that this information may be generated in relatively short order, given the manner in which it is maintained. Please let us know immediately if this is not the case.

Second, with respect to the hard-copy or electronic documents called for by the demands, defendants will accept documents *sufficient to show* the following:

1. The methodologies your client has utilized during the relevant time period to reimburse for drugs, whether based on AWP, and the rationale for adopting the particular reimbursement methodologies used. (Document requests 2, 3 and 4).

2. Your client's understanding of (a) the term "AWP" or "average wholesale price", including whether AWP equals the average of *actual* acquisition prices, and (b) whether health care providers, retailers and pharmacy benefit managers ("PBMs") earn a margin on drugs administered or dispensed. (Document requests 1, 5, 7, 8, 11, 16, and 18).

3. Analyses and discussions concerning whether servicing or administration fees paid to health care providers for administering drugs are sufficient to cover costs associated with the drug administration. (Document requests 2, 4, 8, 11, and 16).

4. The identities of the Pharmacy Benefits Managers ("PBMs") and specialty pharmacies ("SPs") with which you have contractual relationships and, with respect to those PBMs and SPs, the methodologies used to reimburse or pay the PBMs and SPs for drugs administered or dispensed. (Document requests 2, 10, 16, 18).

5. Analyses concerning the relative levels of reimbursement for drugs administered in hospitals versus administered in doctors' offices, by other providers, or in other outpatient settings such as homecare, and documents showing any changes in those relative reimbursement levels during the relevant time period. (Document requests 20 and 21).

6. Communications with federal, state or local governments regarding points 1 through 5 above, including government reports in your possession showing that AWP does not equal the average of actual acquisition prices. (Document requests 22, 23 and 24).

In view of the expedited schedule ordered by the Court, we request that your client produce on a rolling basis, as the responsive documentation is identified. A useful starting point is the production of those documents your client produced in any other litigation,

985471v1

April 5, 2004
Page 3

government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement. Such production would be encompassed by document request 25.

     While the subpoena calls for the production of a deposition witness on May 6, we are willing to work with you to schedule a mutually agreeable deposition date. In some cases, based on the documentation produced, a deposition might not be required.

     We look forward to discussing these issues with you in greater detail.

                        Very truly yours,

                        Erik Haas

Enclosure
cc:    All Counsel of Record (by Verilaw)

985471v1

| Field Name | Field Description |
|---|---|
| Internal Control Number | Numeric or Alphanumeric field used to uniquely identify each claim. |
| Subscriber Number | Identification number for the subscriber. |
| Group Number | Identifies a set of individuals who obtain insurance and health care coverage services through a common group business relationship. |
| Billing Unit | Identifies a set of individuals who obtain insurance and health care coverage services under a certain billing relationship. |
| Group Name | Name of the group for which the subscriber is a member. |
| Fund Method | Identifies the financial arrangement of the group as either self-funded, fully-insured, or other |
| Product | High level categorization of a product.  (Indemnity, Managed Indemnity, PPO, Long Term Care, Point of Service, Drug, Dental, etc.) May be referred to as Line of Business. |
| Plan Type | Type of plan (Administrative services only, Fiscal Intermediary, etc.) |
| Patient Age | Patient age as of the incurred date of the claim. |
| Patient Gender | Gender of the Patient. |
| Member relationship. | Relationship with the plan (subscriber, spouse, dependent, etc.) |
| Claim Number | Internal Insurer medical claim identification number |
| Claim Status or Type | Indicates processing status of claim. |
| First Service Date | Date of first service provided for the claim. |
| Date of Service | Date of service of the claim. |
| Payment Date | The date the claim reaches final disposition (also referred to as settlement date or check date). |
| Provider charge | Total amount billed (charges) for the service or drug provided. |
| PBM Dispensing Fee | The dispensing fee paid by the insurance carrier. |
| Drug Ingredient Cost | The amount the drug actually cost the pharmacy to obtain. |
| Amount Billed (Charges) | The total amount billed for the service or drug provided. |
| Allowed Charge | An amount that is used to determine any copay, coinsurance, and deductible applicable to a claim. |
| Claims Paid | Maximum potential financial liability for the covered service. |
| Copay | A fixed dollar amount deducted from the allowed amount for which the plan member  must pay for certain medical services as specified by the contract. |
| Deductible | A dollar amount deducted from the allowed amount for which the plan member is liable. |
| Coinsurance Amount | The coinsurance amount is the liability of the plan member. |
| COB Savings Amount | The amount of money saved as a result of coordination of benefits or subrogation. |
| Medicare Paid Amount | Amount paid by Medicare. |
| Amount Not Covered | Amount not covered. |
| NDC Code | National Drug Code assigned by the Federal Drug Administration for pharmaceuticals. |
| HCPCS/J Code | Procedure code associated with physician administered drugs. |
| HCPCS/J Code (2) | Second procedure code associated with physician administered drugs, if applicable. |

| Field Name | Field Description |
|---|---|
| HCPCS/J Code (3) | Third procedure code associated with physician administered drugs, if applicable. |
| CPT Code | Procedure code for medical service provided. |
| Icd9 Code | Diagnosis code for medical service provided. |
| Denial Reason | If the claim was denied, why was it denied |
| Provider network status | In network, Out of network |
| Provider Number | Identifies the provider which provided the drug or service. |
| Provider Type | Identifies the type of provider providing the drug or service. |
| Provider Tax ID | Tax ID of Provider providing service. |
| Pharmacy Name | Name of pharmacy drug was provided. |
| Pharmacy Number | Pharmacy identification number. |
| Diagnosis Code | Primary diagnosis for the medical service submitted on claim |
| AWP Price | Average Wholesale Price for Wholesale Drugs |
| Date Filled | Date prescription was filled. |
| Days Supply | Day supply of drug provided. |
| Drug Name | Name of the drug provided. |
| NDC | National Drug Code, unique identifier for drugs |
| Other Coverage Indicator | Indicates if other commercial or Medicare coverage is known to Payor |
| Patient ID | Unique identifier for individual patient. |
| Refill Code | Code associated with review amounts. |
| RX Dose | Dosage Amount of drug provided. |
| RX Type | Form of Drug provided. |
| State | State in which service was provided. |
| Units | Number of units provided. |
| Denial Reason | If the claim was denied, why was it denied. |
| Claim adjustment number | Claim Adjustment number to ensure only the latest claim status is provided. |

* Please note the field listing above is not all inclusive.  This listing represents a combined listing of fields third party insurers typically maintain related to claims associated with physician assisted and retail pharmacy drugs. Any additional fields maintained with claim data should be provided.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | **SUBPOENA IN A CIVIL CASE**<br>MDL NO. 1456<br><br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris<br>(case pending in D. Mass.) |
| THIS DOCUMENT RELATES TO THE MASTER<br>CONSOLIDATED CLASS ACTION | |

TO:    United Healthcare
        9900 Bren Road East
        Minnetonka, MN 55343

☐  **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒  **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| United Healthcare<br>9900 Bren Road East<br>Minnetonka, MN 55343 | May 6, 2004 at 10 a.m. |

☒  **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
        See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| United Healthcare<br>9900 Bren Road East<br>Minnetonka, MN 55343 | May 5, 2004 at 10 a.m. |

☐  **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants Johnson & Johnson, Centocor Inc. Ortho Biotech Products L.P., Janssen Pharmaceutica L.P. and McNeil-PPC on behalf of all defendants to the Amended Master Consolidated Class Action Complaint | April 5, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: Erik Haas, Patterson, Belknap, Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036.  (212) 336 2000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | | DATE | | PLACE |
|---|---|---|---|---|
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
   (i)    fails to allow reasonable time for compliance;
   (ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel frm any such place within the state in which the trial is held, or
   (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
   (iv)   subjects a person to undue burden.

(B) If a subpoena

   (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
   (ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
   (iii)  requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A**

**DEFINITIONS**

1.      "United Healthcare" ("United") means United and any of its past or present trustees, officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2.      "AMCC" means the Amended Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

3.      "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

4.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

5.      "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided by any health plan or health and welfare fund to any of its participants or beneficiaries.

6.      "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-Span").

7.      "Benefit Consultant" means any person or entity that provides information,

counsel or advice to any health plan or health and welfare fund regarding any medical benefit or service provided by any health plan or health and welfare fund to any participant or beneficiary.

8.      "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

9.      "CMS" shall mean Centers for Medicare and Medicaid Services.

10.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

11.     "Concerning" means referring to, describing, evidencing, or constituting.

12.     "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

13.     "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

14.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

15.     "Government payor" means any federal or state government entity or program that reimburses Providers for drugs or health care services, including but not limited to CMS, Medicare, and Medicaid.

16.     "Independent Practice Association" means any organized group of

providers whose members provide health care to any participant or beneficiary.

17.   "MAC" means Maximum Allowable Cost and includes the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

18.   "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, subject drugs.

19.   "MCC" means the Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

20.   "PBM" means pharmacy benefit manager.

21.   The terms "Participant" and "Beneficiary" mean a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

22.   "Person" means any natural person or any business, legal, or governmental entity or association.

23.   "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

24.   "Private payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit funds.

25.   "Provider" means any physician or entity that provides health care to any Participant or Beneficiary.

26.   "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program

Memorandum AB-99-63 and includes FirstDataBank, Red Book, Blue Book and Medispan.

27.   "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

28.   "Subject drug" or "subject drugs" means one or more of drugs listed on Exhibit A hereto.

29.   "Third Party Administrator" means any entity that provides administrative services to any health plan or health and welfare fund relating to any medical benefit provided to any participant or beneficiary.

30.   "WAC" means wholesale acquisition cost or the list prices for sales by manufacturers to wholesalers.

31.   "Wholesaler" means any entity that purchases subject drugs from a manufacturer and resells such drugs to any other entity.

32.   "You" or "your" shall refer to United.

## INSTRUCTIONS

1.      Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.      The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.      Provide the following information for each document withheld on the grounds of privilege:

5

985098v1

(a)     its date;

(b)     its title;

(c)     its author;

(d)     its addressee;

(e)     the specific privilege under which it is withheld;

(f)     its general subject matter; and

(g)     a description of it that you contend is adequate to support your contention that it is privileged.

6.      These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

7.      The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

8.      To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

6

## <u>DOCUMENTS TO BE PRODUCED</u>

1.   All documents relating to or reflecting any definition or meaning of AWP.

2.   All documents that reflect, discuss, memorialize, or otherwise relate to your setting of reimbursement or payment rates for any subject drug.

3.   All documents that you or someone acting on your behalf relied upon in setting reimbursement or payment rates for any subject drug.

4.   All minutes from meetings where reimbursement or payment for subject drugs was discussed, including meetings where the setting of reimbursement or payment rates was discussed.

5.   All documents relating to or reflecting the costs to providers of any subject drug.

6.   All documents relating to or reflecting the amounts you reimburse providers for any subject drug.

7.   All documents relating to or reflecting any differences between the costs to providers of any subject drug and the amounts you reimburse providers for any subject drug.

8.   All documents relating to or reflecting your awareness that the costs to providers of subject drugs are different from the amounts you reimburse providers for subject drugs.

9.   All documents relating to your claims processing policies and procedures for any subject drug.

10.  All documents reflecting any payments made by you that were based in whole or in part on the AWP of any subject drug.

7

985098v1

11.    All communications between you and providers or pharmacies relating to reimbursement, payment or prices of any subject drug.

12.    All documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug.

13.    All documents concerning your decision to rely on, reliance on, or use of drug pricing information published by any publisher for any subject drug.

14.    All documents created by or received from any publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between you and any publisher regarding any subject drug.

15.    All documents relating or referring to AWPs, including documents that relate or refer to the relationship between any price and AWP for any subject drug.

16.    All documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any subject drug.

17.    To the extent not otherwise produced, all documents concerning AWP, AMP, WAC, MAC, EAC, Best Price or any other drug pricing, payment or reimbursement information for any subject drug.

18.    All documents relating or referring to your contractual relationships with PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover subject drugs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

19.    Documents sufficient to identify all persons involved in negotiation of

8

985098v1

contractual relationships with PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover any subject drug.

20.    All documents relating to any profit analysis you have performed or received relating to your reimbursement or payment for any subject drug.

21.    All documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug.

22.    All filings with any state or federal government entity made by you or on your behalf that refer or relate to AWP.

23.    All documents created by or received from CMS, United States Department of Health and Human Services, The Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal or state institution, agency, department, or office regarding the pricing of prescription drugs.

24.    All documents provided to CMS, United States Department of Health and Human Services, the Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal or state institution, agency, department, or office regarding the pricing of any subject drug.

25.    All documents produced by you in any litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

26.    All current and historical organizational charts for all of your departments.

9

985098v1

## EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| | |
|---|---|
| Abbott | Acetylcyst |
| Abbott | Acyclovir |
| Abbott | A-Methapred |
| Abbott | Amikacin |
| Abbott | Amikacin Sul |
| Abbott | Aminosyn |
| Abbott | Biaxin |
| Abbott | Calcijex |
| Abbott | Cimetidine |
| Abbott | Clindamycin |
| Abbott | Depakote |
| Abbott | Depakote SPR |
| Abbott | Dextrose |
| Abbott | Dextrose w/Sodium Chloride |
| Abbott | Diazepam |
| Abbott | Ery-Tab |
| Abbott | Erythromycin Cap |
| Abbott | Erythromycin Tab Bs |
| Abbott | Fentanyl Cit |
| Abbott | Furosemide |
| Abbott | Gentamicin |
| Abbott | Heparin Lock |
| Abbott | Leucovor CA |
| Abbott | Lorazepam |
| Abbott | Prevacid Cap |
| Abbott | Prevacid Gra |
| Abbott | Sod Chloride |
| Abbott | Sodium Chloride Sol |
| Abbott | Tobra/Nacl |
| Abbott | Tobramycin |
| Abbott | Vancomycin |
| | |
| Allen & Hanburys | Beconase AQ SPR |
| Allen & Hanburys | Flonase SPR |
| Allen & Hanburys | Serevent AER |
| Allen & Hanburys | Serevent DIS MIS |
| | |
| Amgen | Aranesp |
| Amgen | Enbrel |
| Amgen | Epogen |

| | |
|---|---|
| Amgen | Kineret |
| Amgen | Neulasta |
| Amgen | Neupogen |
| | |
| Astrazeneca | Accolate |
| Astrazeneca | Arimidex |
| Astrazeneca | Casodex |
| Astrazeneca | Diprivan |
| Astrazeneca | Nolvadex |
| Astrazeneca | Seroquel |
| Astrazeneca | Zestril |
| Astrazeneca | Zoladex |
| Astrazeneca | Zomig |
| Astrazeneca | Zomig ZMT |
| Astrazeneca | Atacand |
| Astrazeneca | Atacand HCT |
| Astrazeneca | Entocort EC |
| Astrazeneca | Nexium |
| Astrazeneca | Prilosec |
| Astrazeneca | Pulmicort |
| Astrazeneca | Rhinocort |
| Astrazeneca | Toprol XL |
| | |
| Aventis | Allegra |
| Aventis | Allegra-D |
| Aventis | Amaryl |
| Aventis | Anzemet |
| Aventis | Arava |
| Aventis | Azmacourt |
| Aventis | Calcimar |
| Aventis | Carafate |
| Aventis | Cardizem Cap |
| Aventis | Cardizem Inj |
| Aventis | Cardizem Tab |
| Aventis | Gammar |
| Aventis | Gammar P-IV |
| Aventis | Intal |
| Aventis | Intal INH |
| Aventis | Nasacort |
| Aventis | Nasacort AQ |
| Aventis | Taxotere |
| Aventis | Trental |
| | |
| B. Braun | Dextrose |

11

985098v1

| | |
|---|---|
| B. Braun | Dextrose with sodium chloride |
| B. Braun | Dextrose with lactated ringers |
| B. Braun | Heparin with dextrose |
| B. Braun | Heparin with sodium chloride |
| B. Braun | Sodium chloride IV solution |
| B. Braun | Sodium chloride irrigation |
| | |
| Baxter | Aggrastat |
| Baxter | Ativan |
| Baxter | Bebulin VH |
| Baxter | Brevibloc |
| Baxter | Buminate |
| Baxter | Cisplatin |
| Baxter | Claforan/D5W |
| Baxter | Dextrose |
| Baxter | Doxorubicin |
| Baxter | Gammagard SD |
| Baxter | Gentam/NACL |
| Baxter | Gentran 40 |
| Baxter | Gentran 75 |
| Baxter | Gentran/Trav |
| Baxter | Heparin Lock |
| Baxter | Iveegam |
| Baxter | Iveegam EN |
| Baxter | Osmitrol |
| Baxter | Osmitrol VFX |
| Baxter | Recombinate |
| Baxter | Sod Chloride |
| Baxter | Sodium Chlor Sol |
| Baxter | Travasol |
| Baxter | Travasol w/Dextrose |
| Baxter | Vancocin HCL |
| Baxter | Vancocin/Dex |
| | |
| Bayer Pharmaceutical | Cipro |
| Bayer Pharmaceutical | Cipro Cystit Tab |
| Bayer Pharmaceutical | Cipro I.V. |
| Bayer Pharmaceutical | Cipro XR |
| Bayer Pharmaceutical | DTIC-DOME |
| Bayer Pharmaceutical | Gamimune N |
| Bayer Pharmaceutical | Koate-HP |
| Bayer Pharmaceutical | Kogenate FS |
| Bayer Pharmaceutical | Mithracin |
| | |

985098v1

| | |
|---|---|
| B-M Squibb | Paraplatin Inj |
| B-M Squibb | Blenoxane |
| B-M Squibb | Cytoxan |
| B-M Squibb | Etopophos |
| B-M Squibb | Rubex |
| B-M Squibb | Taxol |
| B-M Squibb | Vepesid |
| B-M Squibb | Ividex EC |
| B-M Squibb | Avapro |
| B-M Squibb | Buspar |
| B-M Squibb | Cefzil |
| B-M Squibb | Glucophage) |
| B-M Squibb | Glucovance) |
| B-M Squibb | Monopril) |
| B-M Squibb | Plavix) |
| B-M Squibb | Serzone) |
| B-M Squibb | Tequin) |
| B-M Squibb | Coumadin |
| Apothecon | Amikin (amikacin sulfate) |
| Apothecon | Fungizone (amphotercin b) |
| | |
| Cerenex | Amerge |
| Cerenex | Imitrex |
| Cerenex | Zofran |
| | |
| Dey Labs | Acetylcysteine |
| Dey Labs | Albuterol |
| Dey Labs | Cromolyn Sodium |
| Dey Labs | Ipratropium |
| Dey Labs | Metaproteren Neb |
| | |
| Fujisawa | Aristocort |
| Fujisawa | Aristospan |
| Fujisawa | Cefizox |
| Fujisawa | Cefizox/D5W |
| Fujisawa | Cyclocort |
| Fujisawa | Lyphosin |
| Fujisawa | Nebupent or Pentam 300 |
| Fujisawa | Prograf |
| Fujisawa | Vinblastine Sulfate |
| | |
| Gensia | Amikacin Sulfate |
| Gensia | Amphotercin B |
| Gensia | Etoposide |

13

| Gensia | Leucovorin Calcium |
|---|---|
| GlaxoSmithKline | Advair Diskus |
| GlaxoSmithKline | Agenerase |
| GlaxoSmithKline | Agenerase SOL |
| GlaxoSmithKline | Alkeran |
| GlaxoSmithKline | Amerge |
| GlaxoSmithKline | Beconase |
| GlaxoSmithKline | Ceftin |
| GlaxoSmithKline | Combivir |
| GlaxoSmithKline | Daraprim |
| GlaxoSmithKline | Epivir |
| GlaxoSmithKline | Epivir HBV |
| GlaxoSmithKline | Flonase |
| GlaxoSmithKline | Flovent |
| GlaxoSmithKline | Flovent ROTA |
| GlaxoSmithKline | Imitrex |
| GlaxoSmithKline | Kytril |
| GlaxoSmithKline | Lamictal |
| GlaxoSmithKline | Lanoxin |
| GlaxoSmithKline | Lanoxin Ped |
| GlaxoSmithKline | Leukeran |
| GlaxoSmithKline | Mepron |
| GlaxoSmithKline | Myleran |
| GlaxoSmithKline | Navelbine |
| GlaxoSmithKline | Paxil |
| GlaxoSmithKline | Paxil CR |
| GlaxoSmithKline | Purinethol |
| GlaxoSmithKline | Relenza |
| GlaxoSmithKline | Retrovir |
| GlaxoSmithKline | Servent |
| GlaxoSmithKline | Thioguanine |
| GlaxoSmithKline | Trizivir |
| GlaxoSmithKline | Valtrex |
| GlaxoSmithKline | Ventolin HFA |
| GlaxoSmithKline | Wellbutrin |
| GlaxoSmithKline | Zantac |
| GlaxoSmithKline | Ziagen |
| GlaxoSmithKline | Zofran |
| GlaxoSmithKline | Zovirax |
| GlaxoSmithKline | Zyban |
| Immunex | Leucovorin Calcium |
| Immunex | Leukine |

14

985098v1

| Immunex | Methotrexate Sodium |
|---|---|
| Immunex | Novantrone |
| Immunex | Thioplex |
| | |
| J&J Group (Centocor) | Remicade |
| J&J Group (Janssen Pharmaceutica) | Aciphex |
| J&J Group (Janssen Pharmaceutica) | Duragesic |
| J&J Group (Janssen Pharmaceutica) | Reminyl |
| J&J Group (Janssen Pharmaceutica) | Risperdal |
| J&J Group (Janssen Pharmaceutica) | Sporanox |
| J&J Group (Ortho McNeil Pharmaceutical) | Bicitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Elmiron |
| J&J Group (McNeil-PPC) | Flexeril |
| J&J Group (Ortho McNeil Pharmaceutical) | Floxin |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol Decan |
| J&J Group (Ortho McNeil Pharmaceutical) | Levaquin |
| J&J Group (Ortho McNeil Pharmaceutical) | Mycelex |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease MT |
| J&J Group (Ortho McNeil Pharmaceutical) | Parafon Fort |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-LC Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Regranex |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 3 |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 7 |
| J&J Group (Ortho McNeil Pharmaceutical) | Testoderm |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin DS |
| J&J Group (Ortho McNeil Pharmaceutical) | Topamax |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylenol/Cod |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylox |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultracet |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultram |
| J&J Group (Ortho McNeil Pharmaceutical) | Urispas |
| J&J Group (Ortho McNeil Pharmaceutical) | Vascor |
| J&J Group (Ortho Biotech Products) | Procrit |
| J&J Group (Ortho Neutrogena) | Erycette |
| J&J Group (Ortho Neutrogena) | Grifulvin V |
| J&J Group (Ortho Neutrogena) | Monistat |
| J&J Group (Ortho Neutrogena) | Renova |
| J&J Group (Ortho Neutrogena) | Retin-A |

| J&J Group (Ortho Neutrogena) | Retin-A Micr Gel |
|---|---|
| J&J Group (Ortho Neutrogena) | Spectazole Cream |
| | |
| Novartis | Clozaril |
| Novartis | Combipatch |
| Novartis | Comtan |
| Novartis | Estraderm |
| Novartis | Exelon |
| Novartis | Femara |
| Novartis | Lamisil |
| Novartis | Lamprene |
| Novartis | Lescol |
| Novartis | Lescol XL |
| Novartis | Lotensin |
| Novartis | Lotensin HCT |
| Novartis | Lotrel |
| Novartis | Miacalcin |
| Novartis | Parlodel |
| Novartis | Ritalin |
| Novartis | Ritalin LA |
| Novartis | Starlix |
| Novartis | Tegretol |
| Novartis | Tegretol XR |
| Novartis | Trileptal |
| Novartis | Vivelle |
| Novartis | Vivelle-DOT |
| | |
| Pfizer | Accupril |
| Pfizer | Accuretic |
| Pfizer | Cardura |
| Pfizer | Celontin |
| Pfizer | Dilantin |
| Pfizer | Dilantin-125 |
| Pfizer | Estrostep FE |
| Pfizer | Femhrt 1/5 |
| Pfizer | Lipitor |
| Pfizer | Lopid |
| Pfizer | Minizide |
| Pfizer | Nardil |
| Pfizer | Neurontin |
| Pfizer | Nitrostat |
| Pfizer | Renese |
| Pfizer | Rescriptor |
| Pfizer | Viracept |

16

985098v1

| | |
|---|---|
| Pfizer | Zarontin |
| Pfizer | Zithromax |
| Pfizer | Zoloft |
| Pfizer | Zyrtec |
| | |
| Pharmacia | Adriamycin PFS |
| Pharmacia | Adriamycin RDF |
| Pharmacia | Adrucil |
| Pharmacia | Amphocin |
| Pharmacia | Amphotercin B |
| Pharmacia | Bleomycin Sulfate |
| Pharmacia | Celebrex |
| Pharmacia | Cleocin-T |
| Pharmacia | Cytarabine (Cytosar-U) |
| Pharmacia | Depo-Testosterone |
| Pharmacia | Etoposide |
| Pharmacia | Neosar |
| Pharmacia | Solu-Cortef |
| Pharmacia | Solu-Medrol |
| Pharmacia | Toposar |
| Pharmacia | Vincasar PFS |
| | |
| Schering | Clarinex |
| Schering | Claritin |
| Schering | Claritin-D |
| Schering | Diprolene |
| Schering | Diprolene AF |
| Schering | Diprosone |
| Schering | Elocon |
| Schering | Eulexin |
| Schering | Integrilin |
| Schering | Intron-A |
| Schering | Lotrisone |
| Schering | Nasonex |
| Schering | Peg-Intron |
| Schering | Proventil |
| Schering | Rebetol |
| Schering | Sebizon |
| Schering | Temodar |
| Schering | Trinalin Rep |
| Schering | Vanceril |
| | |
| Warrick | Albuterol |
| Warrick | Clotrimazole |

17

| | |
|---|---|
| Warrick | Griseofulvin, Ultramicrocry |
| Warrick | ISMN |
| Warrick | Oxaprozin |
| Warrick | Perphenazine |
| Warrick | Potassium Chloride |
| Warrick | Sodium Chloride |
| Warrick | Sulcrafate Tablets |
| Warrick | Theophylline |
| | |
| Sicor | Acyclovir Sodium |
| Sicor | Amikacin Sulfate |
| Sicor | Doxorubicin |
| Sicor | Etoposide |
| Sicor | Leucovorin Calcium |
| Sicor | Pentamidine Isethionate |
| Sicor | Tobramycin Sulfate |
| | |
| TAP | Prevacid |
| | |
| Watson | Dexamethasone Acetate8 |
| Watson | Dexamethasone Sodium Phosphate |
| Watson | Diazepam |
| Watson | Estradiol |
| Watson | Ferrlecit |
| Watson | Fluphenazine HCL |
| Watson | Gemfibrozil |
| Watson | Gentamicin Sulfate |
| Watson | Imipramine HCL |
| Watson | Infed |
| Watson | Lorazepam |
| Watson | Nadolol |
| Watson | Perphenazine2 |
| Watson | Propranolol |
| Watson | Ranitidine |
| Watson | Vancomycin HCL |
| Watson | Verapamil HCL |

985098v1

UNITED STATES DISTRICT CO   RT DISTRICT OF MINNESOTA

Index No. 01-12257-PBS

In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION

, Plaintiff(s)

– against –

, Defendant(s)

State of Washington DC   )
                         )   SS.:
County of District of Columbia )

AFFIDAVIT OF SERVICE

Brandon Snesko  being duly sworn, deposes and says
that he is over the age of 18 years; is not a party to this action and resides
within the State of Washington DC.  That on 04/09/2004 at 12:10 PM at:
        United Healthcare c/o The Groom Law Group
        1701 Pennsylvania Avenue N.W.
        Washington DC 20006
Deponent served the:

SUBPOENA IN A CIVIL CASE

on United Healthcare c/o The Groom Law Group

a domestic and/or foreign corporation
by delivering thereat a true copy to Jason Ehrenbert
personally, deponent knew said corporation so served to be the corporation,
described in same as said recipient and knew said individual to be the
Attorney and who stated that they were
authorized to accept service thereof.

Deponent describes the individual served as follows:
AGE: 37 HEIGHT: 5'7''   WEIGHT: 180   HAIR: BROWN   RACE: WHITE   SEX: MALE

Brandon Snesko          License #NONE

SWORN TO BEFORE ME 5/06/04

Angela H. Croson
Notary Public, District of Columbia
My Commission Expires 3-31-2009

OUR DOC# 1580
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York NY 10036
212-336-2000

# Exhibit 2

**Exhibit B**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL No. 1456 ) ) Civil Action No. ) 01-CV-12257-PBS |
| THIS DOCUMENT RELATIONS TO ALL ACTIONS | ) ) Judge Patti B. Saris |

## [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING SUBPOENAS TO PUTATIVE CLASS MEMBERS

For the reasons stated in open Court at the Status Conference on March 8, 2004,

Plaintiffs' Motion for a Protective Order Regarding Subpoenas to Putative Class Members

[Docket No. 632] hereby is DENIED.

Dated: ~~March~~ april 26, 2004

The Honorable Patti B. Saris

# Exhibit 3

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

.May 27, 2005

Jessica Golden Cortes
(212) 336-2017
Direct Fax (212) 336-7901
jgcortes@pbwt.com

**By Email Attachment**

Michael Prame, Esq.
The Groom Law Group
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006

Re:    **In re Pharmaceutical Industry AWP Litigation**

Dear Mike:

Per your request, this letter summarizes United Healthcare's outstanding discovery pursuant to defendants' third party subpoena in the AWP Litigation.  Defendants have revised and significantly paired down the categories of remaining outstanding discovery sought to facilitate a timely production and to avoid unduly burdening your client.  As previously discussed, for purposes of these revised requests, unless otherwise stated, the relevant time period at issue is 1997 to 2002:

1.    To the extent not previously produced, all documents reflecting United Healthcare's understanding of whether health care providers earn a margin on drugs administered.

2.    All documents concerning the relative reimbursement or costs for injected or infused drugs (and related treatments or therapies) in the hospital (in or outpatient setting) as compared to in physicians' offices, including United Healthcare's business and strategic plans addressing the optimal site of care for the administration of oncology drugs.

3.    To the extent not previously produced, a representative sample of physician reimbursement contracts from your client's showing the various methodologies United Healthcare utilized, and the various levels of reimbursement United Healthcare afforded, for the reimbursement of physician-administered drugs.

    A.    In an effort to allay your previously asserted concerns regarding anticipated costs and required employee time, defendants are willing to limit this request to a production from one major east coast market of United Healthcare and one major west coast market.  The determination of the appropriate markets would be determined jointly by United Healthcare and defendants, and agreement to this limitation is contingent upon prompt production.

4.  .    All schedules disclosing the amounts reimbursed to particular physicians for services rendered and drugs administered (*i.e.*, physician "fee schedules") and documents

Michael Prame, Esq.
May 27, 2005
Page 2

detailing how those schedules were calculated or derived.  To the extent the fee schedules differ from the electronic schedules or tables used to generate the actual reimbursement amounts paid to physicians, produce all such schedules and tables.

5.   All rebate reports or other documentation showing the rebates paid by pharmacy benefit managers or pharmaceutical manufacturers to United Healthcare.

6.   . Medical Claims Data from 1997 <u>to the present</u>, including claims submitted by hospitals and physician offices.

    A.   This data should include a field that explains the type of payment methodology utilized to reimburse for a particular claim (*e.g.*, U&C, AWP-based, capitation).

    B.   As we briefly discussed earlier on in these negotiations, please describe how the data is maintained and the estimated cost of retrieval prior to production of the requested data.

    C.   In a further effort to allay your previously asserted concerns regarding anticipated costs and required employee time, defendants are again willing to limit this request to data from one major east coast market and one major west coast market, again, to be determined jointly by United Healthcare and defendants, and again, contingent upon prompt production.

7.   Claims processing manuals corresponding to data produced.

8.   MAC Lists pertaining to retail pharmacy reimbursement for generic drugs.

9.   To the extent not previously produced, all documents your client produced in any other litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

        Please also identify witness(es) qualified to testify regarding the substance of the above-requested documents and data, and advise me of when in the coming month the witness(es) will be available for deposition(s).  I look forward to working with you to achieve a swift resolution of outstanding production issues.  Please contact me with any questions.

        Very truly yours,

        Jessica Golden Cortes

1185186v1

# Exhibit 4

**Mangi, Adeel A. (x2563)**

| | |
|---|---|
| From: | Mangi, Adeel A. (x2563) |
| Sent: | Friday, September 16, 2005 8:12 PM |
| To: | 'mjp@groom.com' |
| Subject: | RE: Golden Rule and United |

Mike:  Further to my email of the 13th (below), attached are (draft) copies of the motion to compel papers we plan to file against your clients United and Golden Rule on September 21.  We are hereby seeking a meet and confer prior to filing that motion.  If you would like to hold such a conference and discuss these issues, please let us know by 3 pm on the 21st, failing which we will make our filing.  Separately, I received the mail version of your letter today but it was missing the enclosure (golden rule objections).  Please resend those (email pdf is fine).

Regards
Adeel

    ------Original Message-----

| | |
|---|---|
| From: | Mangi, Adeel A. (x2563) |
| Sent: | Tuesday, September 13, 2005 5:13 PM |
| To: | 'mjp@groom.com' |
| Subject: | Golden Rule and United |

Mike:
Thank you for your letter of today regarding Golden Rule.  I am looking into whether objections were previously received at this firm, and will review them when your letter arrives by mail with the enclosure.  In any event, I understand you now represent both Golden Rule and United and will be adopting similar positions for both on substantive issues.  We are currently preparing a motion to compel against United based on your positions to date and will fold Golden Rule into that discussion.  We will send you a draft once the papers are complete.  We can then hold a Rule 7.1 discovery conference and proceed with filing the motion if needed.

As to specific point you raise in your letter, please be advised that your contention regarding CMO 13 is incorrect.  That schedule is for track 1 defendant discovery.  It does not apply to discovery from third parties.  Indeed, such discovery is continuing.  Please let us know if you have a basis for believing otherwise, so we can include that issue in the motion papers as needed.

Adeel Abdullah Mangi
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Ph: (212) 336 2563
Fax: (212) 336 7947
aamangi@pbwt.com

BRIEF_ United and Haas   Declaration in   MOTION_ United
Golden Rule ...   support of...   and Golden Rule...

1

# Exhibit 5

**Mangi, Adeel A. (x2563)**

| | |
|---|---|
| From: | Mangi, Adeel A. (x2563) |
| Sent: | Friday, September 30, 2005 1:03 PM |
| To: | Michael Prame (mjp@groom.com) |
| Subject: | United and Golden Rule |

Mike: Please see attached letter.



united.pdf (155 KB)

Adeel Abdullah Mangi
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Ph: (212) 336 2563
Fax: (212) 336 7947
aamangi@pbwt.com

1

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

September 30, 2005

By Email Attachment

Michael Prame, Esq.
Groom Law Group
1701 Pennsylvania Ave., N.W.
Washington, D.C.  20006-5811

Adeel A. Mangi
(212) 336-2563
Direct Fax (212) 336-7947
aamangi@pbwt.com

                    Re:    In Re AWP Litigation

Dear Mike:

            We are writing further to our conversation of September 23, 2005 to provide some of the additional information you requested.

## (1)  MAC Lists

            You asked us to check whether defendants' have already obtained United's MAC lists through discovery from PBMs.  We checked with counsel coordinating that discovery, who informs us that United's MAC lists were not produced.

## (2)  Claims Data

            In your July 12, 2005 letter you represented that United's claims data is housed on the "Galaxy" system and provided the following estimates for collection:

- For data from May 1, 2002 to December 31, 2003 - $19,750 (current system)
- For data from August 1998 to April 30, 2002: $30,500 (data archived on tape)
- For data from January 1, 1997 to July 30, 1998: $26,500 (archived on older system)

            Based on these estimates, defendants will seek production of the data for the period August 1998 to April 30, 2002 only.  Please provide us with a list of data fields available for pre-collection analysis to ensure that all relevant data is collected and produced in an efficient manner.  Please also clarify whether the "Galaxy" system incorporates data from "Inginex" and if not, what data is available from Inginex.

## (3)  Deposition Topics

            You stated that United has no objection in principle to the production of a deposition witness but were concerned that the list of deposition topics would require the production of too many witnesses.  You asked that defendants again try to focus the list of topics

Michael Prame, Esq.
September 30, 2005
Page 2

on which deposition testimony is sought to facilitate the production of witnesses. To that end, we have revised and further focused the list of deposition topics originally sent to you by Jessica Cortes. We will reissue the deposition subpoena listing these topics if you request, otherwise these are incorporated by reference as issued at your request.

As I stated during our call, the vast majority of subpoenaed health plans have previously responded to a much broader list of areas of inquiry through the production of one or two witnesses and the court has found that the production of witnesses on even that broader list of topics is not burdensome. The appropriate witness on the medical side is generally a senior executive with responsibility for contracting negotiations with providers. Defendants reserve the right to seek witnesses to testify on issues pertaining to self administered drugs should an appeal change the current case posture.

**(4) Golden Rule**

Finally, as to Golden Rule Insurance Co., you represented during our call that Golden Rule had no responsive documents to the subpoena and agreed to state Golden Rule's position in writing with reference to each specific document production category. We look forward to receiving that letter, after which we can decide how to proceed with regard to Golden Rule on the document requests and deposition subpoena.

*     *     *

As discussed during our call, defendants continue to call for the collection of all other documents identified in our letter of May 27, 2005. I understand you will confirm that production and a schedule after conferring with your client. We look forward to hearing from you.

Sincerely,

Adeel A. Mangi

1218254v1

Michael Prame, Esq.
September 30, 2005
Page 3

## AREAS OF INQUIRY

### Benchmarks and Reimbursement

1.      Your understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," or "WAC."

2.      All methodologies (e.g., capitation, usual and customary charges, AWP-based formula, or use of specialty pharmacies) you utilized or considered utilizing to determine the amounts to pay or reimburse health care providers (e.g., doctors, hospitals, clinics) for drugs administered in physician's offices or hospitals, including the extent to which any reimbursements are tied to the AWPs of specific drugs.

3.      All rationales, information, and factors considered by you in deciding whether or not to pay a separate administration fee in addition to the price of the drug itself.

4.      Whether and to what extent you provide different reimbursement rates for subject drugs when they are administered in providers' offices rather than in hospitals, including your rationale for doing so or not doing so, and including any studies or analysis you have made concerning the relatives costs of the administration of subject drugs in providers' offices rather than in hospitals.

### Negotiations with Providers

5.      Whether and to what extent you set drug reimbursement for drugs administered and dispensed based on competitive negotiations with health care providers.

6.      The substance of such negotiations, including whether and to what extent they expressly dealt with a distinction between the reimbursement of the drug itself and the reimbursement for the medical provider's administration services, or referenced Medicare reimbursement rates.

### Information Regarding Margins

7.      Your understanding, knowledge and expectations (if any) of whether health care providers earn a margin on drugs administered, including whether such a margin depended, in part, on the difference between the reimbursement you paid and the actual acquisition costs for the drugs, net of any incentives provided by the drug manufacturers, and the effect (if any) of such knowledge on the setting of reimbursement rates.

8.      Your knowledge and understanding of whether any administration fees you reimbursed to providers were sufficient to cover the provider's costs in administering the corresponding drugs.

9.      Your understanding and knowledge of whether drug manufacturers provided health care providers with discounts, rebates and other incentives that were not reported in pricing compendia or otherwise disclosed to the public, including whether or not the published AWP was adjusted to account for these discounts, rebates and other incentives.

1218254v1

Michael Prame, Esq.
September 30, 2005
Page 4

10.    Your knowledge of government studies, reports, and communications concerning actual
acquisition costs for drugs.

**Documents Produced**

11.    All documents produced in response to defendants' subpoena, including whether such
documents are authentic within the meaning of Rule 901 of the Federal Rules of Evidence, and
Records of Regularly Conducted Activity within the meaning of Rule 803(6) of the Federal
Rules of Evidence.

1218254v1

# Exhibit 6

# GROOM
## LAW GROUP
### *www.groom.com*

## FACSIMILE TRANSMITTAL

**DATE:** October 4, 2005

**TO:** Adeel Mangi

**COMPANY:** Patterson, Belknap, Webb & Tyler, LLp

**FAX NUMBER:** (212) 336-2222   [08040]

**VOICE NUMBER:**

**FROM:** Mike Prame

**NUMBER OF PAGES:** 3

**Person to contact in case of transmittal problems:**   Sheron Fletcher, ext. 419
(After business hours, please contact Groom Office Services at 202-861-5421.)

**NOTE:**

**NOTICE:** This facsimile transmission is intended only for the use of the addressee and may contain information that is privileged, confidential, or prohibited by law from disclosure. If you have received this transmission but are not the intended recipient, then you are hereby notified that any dissemination, distribution, or copying of this transmission is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone and return the original message to us at the address below via United States Postal Service. Thank You

**FOR INTERNAL USE ONLY:**

| Client/Matter Code: | 999999-102 | User Code: |
|---|---|---|

Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811 • 202-857-0620 • Fax 202-659-4503

# GROOM
## LAW GROUP
### *www.groom.com*

Michael J. Prame
(202) 857-0620
mjp@groom.com

October 4, 2005

**By Facsimile**

Adeel A. Mangi, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York  10036-6710

Re:     *In re Pharmaceutical Industry Average Wholesale Price Litigation*,
         MDL No. 1456, Civ. No. 01-12257-PBS (U.S.D.C. D. Mass.)

Dear Mr. Mangi:

Thank your for September 30, 2005 letter which follows up on three of the points that we discussed during our September 23, 2005 conversation regarding the subpoenas served on UnitedHealthcare, Inc., United HealthCare Insurance Company, and Golden Rule Insurance Company ("Golden Rule"). We have reviewed the issues that we discussed with our respective clients and provide the following responses.

With respect to the subpoenas served on UnitedHealthcare, Inc. and United HealthCare Insurance Company (collectively "United"), it does not appear that we will be able to reach an agreement as to the scope of additional discovery from these entities. As you know, after more than three months of negotiations last summer regarding the scope of the subpoenas, United produced nearly 24,000 pages of materials. United produced everything that it had agreed to produce to Defendants during the negotiations last year. In standing by its objections to Defendants' continuing efforts to obtain further

Groom Law Group, Chartered
1701 Pennsylvania Ave, N.W. • Washington, D.C. 20006-5811 • 202-857-0620 • Fax 202-659-4503



**GROOM**
**LAW GROUP**
*www.groom.com*

Adeel A. Mangi, Esq.
October 4, 2005
Page 2

discovery, United agrees that the parties have met and conferred in good faith regarding the discovery dispute, but are not able to resolve their differences.

  With respect to Golden Rule, we will send to you a letter formalizing Golden Rule's position regarding the lack of documents responsive to Defendants' requests. We hope to forward the letter to you later this week.

  Thank you for your consideration.

       Very truly yours,

       Michael J. Prame