UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 ) ) ) ) | Hon. Patti B. Saris<br><br>Chief Mag. Judge Marianne B. Bowler |

## DECLARATION OF ADEEL A. MANGI

I, Adeel A. Mangi, declare as follows:

1. I am associated with Patterson Belknap Webb & Tyler LLP and represent Johnson & Johnson, Centocor Inc., and Ortho Biotech Products L.P. in this litigation. I offer this declaration in support of Defendants' Motion To Compel Third Party Oxford Health Plans To Produce Documents And Witnesses For Deposition Pursuant To Subpoena And For Recovery Of Attorney Fees And Costs.

2. I base this declaration on my (a) personal knowledge, (b) communications with Oxford's counsel Michael Sandmann of Rawlings & Associates, and (c) review and discussion with members of my firm concerning the correspondence with Mr. Sandmann.

### Defendants' Subpoena to Oxford

3. On April 19, 2004 defendants served a subpoena upon Oxford Health Plans ("Oxford") seeking the production of documents and deposition testimony. A copy of that subpoena is attached as Exhibit 1.

4. Defendants served this subpoena on Oxford after Judge Saris had denied a motion filed by MDL class plaintiff seeking to halt third party health plan discovery and ordered this

discovery to proceed.  A copy of Judge Saris' order is attached at Exhibit 2.

### Oxford's Pattern of Delay

5.	After serving Oxford, defendants entered into a prolonged period of negotiation with Oxford's counsel.  During that process, defendants substantially narrowed the scope of the documents sought from Oxford.  This process included the exchange of numerous letters, emails and telephone conferences where defendants sought to work with Oxford to address any claims of burden and to narrow the scope of documents sought to those absolutely necessary to defend against plaintiffs' claims.

6.	Oxford did then make one small production.  This consisted of 476 pages of contracts and a CD of claims data.

7.	This production, however, did not satisfy even defendants' narrowed documents demands.  For example, the documents produced did not even reveal the rates at which Oxford reimburses physicians administering drugs in office for drugs or services, how those rates are determined, or the extent of Oxford's knowledge regarding the AWP benchmark or differences between its reimbursement rates and physicians' drug acquisition costs.  Similarly, the data produced lacked specific fields necessary to render it useable.

8.	Defendants then engaged in continued negotiations with Oxford to get supplemental production of missing documents, data and deposition testimony.  This again included emails, letters and telephone conferences.  On June 28, 2005 defendants sent Oxford a letter detailing the outstanding production demands and seeking a prompt production.  See Exhibit 3.  Oxford responded on June 29, 2005 saying Oxford would respond the following week.  Id.

9.	Thereafter Oxford settled into a pattern of purposeful delay designed to avoid all

2

1262744v1

production obligations.  Oxford generally ignored communications from defendants for weeks.  When finally forced to respond by follow up calls and emails from defendants, Oxford would agree to make production and seek additional time to do so.  Weeks would again pass, but nothing would be produced.  Defendants would then make further follow up inquiries and receive further assurances of production.  This cycle continued for some seven months.  Defendants threatened numerous motions to compel but withdrew them in each instance upon receiving assurance of production.

10.   A few examples of this pattern are illustrative.  Despite Oxford's July 29, 2005 assurance that they would respond "next week" they did not do so.  Defendants followed up by phone and email numerous times, but received only one incomplete response in July saying counsel would speak to Oxford "tomorrow."  Oxford then ignored follow up correspondence from defendants dated September 21 and October 3 of 2005.  See Exhibit 3.

11.   Numerous voicemails later, Oxford finally responded on October 23, 2005.  See Exhibit 4.  Oxford sought additional information regarding previous productions and what was outstanding and defendants supplied that information on October 27, 2005.  Id.  Counsel for Oxford then said they had messages into Oxford and would get back to defendants.  They did not.  Defendants heard nothing and sent a follow up query on November 4, 2005.  Id.  Oxford then replied and promised a response by the end of the week.  A week came and went and again defendants heard nothing.  Defendants again emailed Oxford on November 14, 2005 and received in response another assurance that counsel would be "talking to Oxford today about this very issue."  Counsel for Oxford also assured defendants "I do not think it is so much a refusal as it is an internal issue on who is going to handle this."  Id.

12.   This pattern continued.  On November 21, 2005 at Oxford's request defendants

again summarized the outstanding production issues.  See Exhibit 5.  On December 1, 2005 Oxford replied by email noting they were working on production and promising a detailed letter response "tomorrow or Monday."  See Exhibit 6.  Some six weeks passed without any further word from Oxford, forcing defendants to send yet another follow up on January 20, 2006.  See id.

13. On January 24, 2005 defendants had a phone conference with counsel for Oxford.  During that call, all outstanding production issues were finally resolved and Oxford agreed to commence production promptly.  See Exhibit 7.  After that call, defendants also sent Oxford a list of specific outstanding data queries at Oxford's request.  See Exhibit 8.

14. Once again, however, weeks passed and nothing happened.  On February 10, 2006 defendants wrote to Oxford again stating (see Exhibit 7):

> Mark:  It has now been almost 3 weeks since our call of the 24th.  During that call, we had worked through all outstanding issues.  My understanding was you would talk to your client and get production rolling and let us know of any outstanding issues.  I emphasized that the one situation we could not accept was a repeat of the past pattern, where we would receive a production assurance and then nothing would happen for weeks.  You assured me this would not happen again.  But we are yet to see any documents or hear back from you.

Again Oxford responded apologizing for the delay and saying "we will have data and the additional responses we discussed to you before the end of the month."  Id.  In response, defendants emphasized the important of prompt production (id.):

> We look forward to receiving the supplemental productions we have requested from Oxford by the end of the month and will schedule the deposition shortly thereafter.  Please be advised that due to the summary judgment schedule that time frame is inflexible and we are relying on your representation that production will be completed by that time.

15. Again, defendants received nothing from Oxford.  Finally, on March 1, 2006

4

1262744v1

counsel for Oxford emailed defendants saying "I have not received anything from Oxford. Do what you must. I tried." (See Exhibit 9). Defendants emphasized that we would be forced by Oxford's position to file a motion to compel seeking costs and fees. Counsel for Oxford emphasized that he had made Oxford aware of this fact, but Oxford was not responding to his communications. (See Exhibit 10).

### This Court Has Previously Granted Similar Motions Against Other Health Plans

16. This Court has previously compelled numerous health plans to produce exactly the same discovery sought from Oxford here. For example, this Court has ordered Aetna, Cigna and Humana to produce deposition witnesses (Exhibit 11), ordered Health Net to produce documents and data in response to defendants' subpoena (Exhibit 12), compelled Blue Cross Blue Shield Of Massachusetts, Carefirst Blue Cross Blue Shield, Hawaii Medical Service Association, Excellus Blue Cross Blue Shield, Blue Cross Blue Shield Of Vermont and Mutual Of Omaha Insurance Company to produce documents and witnesses (Exhibit 13), compelled Empire Blue Cross Blue Shield to produce a witness for deposition (Exhibit 14), and ordered Oxford's parent United Health Care to produce documents and witnesses for deposition (Exhibit 15). The Court directed that these depositions to proceed on the same issues that defendants hope to address with Oxford. Some of those Health Plans were ordered to produce an even broader set of documents (as many of those demands encompassed self administered drugs as well) than those that Oxford is "refusing" to produce here.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Adeel Mangi
Adeel A. Mangi

Executed on this 17th day of March 2006