# Exhibit 1



## Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Erik Haas

Direct Phone
(212) 336-2117

Email Address
ehaas@pbwt.com

April 19, 2004

**By Hand**

Oxford Health Plans
48 Monroe Tpke.
Trumbull, CT 06611

Re:     **In re Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Sir or Madam:

         We write on behalf of all defendants to the Amended Master Consolidated Class
Action Complaint to update you on the recent rulings that allow and require defendants to
promptly pursue the discovery demanded by the subpoena we served on your client last
November, and to reinitiate discussions concerning your client's response.

         Specifically, on February 24, 2004, the Court denied defendants' motions to
dismiss, significantly expanding the drugs at issue in this litigation.  Thereafter, on March 8, the
Court denied plaintiffs' motion to quash defendants' subpoenas, authorizing defendants to
proceed with their discovery demands on third party private payors, including your client.
Finally, on March 25, the Court issued a case management order that created a fast track
discovery schedule for this matter.

         In accord with those rulings, we have reissued on behalf of all remaining
defendants the subpoena previously served on your client (a copy of which is annexed) and call
for an initial production by May 13.   There are only two substantive changes from the prior
subpoena.  First, the list of "subject drugs" has been substantially expanded to reflect the drugs
that are now at issue in the case.  Second, the operative time period has been made consistent as
to all requests as January 1, 1991 to the present.

         Consistent with our earlier conversations, we reiterate defendants' commitment to
work with you in an attempt to define a production that provides defendants with the information
required to respond to plaintiffs' claims, while minimizing the burden on your client.  To that
end, we provide the following elaboration regarding the scope of the production we envision
would satisfy the document demands.



   First, with respect to claims data that is maintained in electronic format and should be relatively straightforward to produce, we have limited the specific data fields defendants require to those identified in the annexed file layout. By "claims data" we refer to the electronic transaction records showing reimbursement or payment for the subject drugs. That data is encompassed by numerous document requests, including numbers 2, 6, 9, 10, and 15. It is our understanding that this information may be generated in relatively short order, given the manner in which it is maintained. Please let us know immediately if this is not the case.

   Second, with respect to the hard-copy or electronic documents called for by the demands, defendants will accept documents *sufficient to show* the following:

1.  The methodologies your client has utilized during the relevant time period to reimburse for drugs, whether based on AWP, and the rationale for adopting the particular reimbursement methodologies used. (Document requests 2, 3 and 4).

2.  Your client's understanding of (a) the term "AWP" or "average wholesale price", including whether AWP equals the average of *actual* acquisition prices, and (b) whether health care providers, retailers and pharmacy benefit managers ("PBMs") earn a margin on drugs administered or dispensed. (Document requests 1, 5, 7, 8, 11, 16, and 18).

3.  Analyses and discussions concerning whether servicing or administration fees paid to health care providers for administering drugs are sufficient to cover costs associated with the drug administration. (Document requests 2, 4, 8, 11, and 16).

4.  The identities of the Pharmacy Benefits Managers ("PBMs") and specialty pharmacies ("SPs") with which you have contractual relationships and, with respect to those PBMs and SPs, the methodologies used to reimburse or pay the PBMs and SPs for drugs administered or dispensed. (Document requests 2, 10, 16, 18).

5.  Analyses concerning the relative levels of reimbursement for drugs administered in hospitals versus administered in doctors' offices, by other providers, or in other outpatient settings such as homecare, and documents showing any changes in those relative reimbursement levels during the relevant time period. (Document requests 20 and 21).

6.  Communications with federal, state or local governments regarding points 1 through 5 above, including government reports in your possession showing that AWP does not equal the average of actual acquisition prices. (Document requests 22, 23 and 24).

   In view of the expedited schedule ordered by the Court, we request that your client produce on a rolling basis, as the responsive documentation is identified. A useful starting point is the production of those documents your client produced in any other litigation,



April 19, 2004
Page 3

government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.  Such production would be encompassed by document request 25.

       While the subpoena calls for the production of a deposition witness on May 14, we are willing to work with you to schedule a mutually agreeable deposition date.  In some cases, based on the documentation produced, a deposition might not be required.

       We look forward to discussing these issues with you in greater detail.

       Very truly yours,

       Erik Haas /s

       Erik Haas

Enclosure
cc:    All Counsel of Record (by Verilaw)

988722v1



E.SERVED
04/20/04
02:21 PM ET
AWP-MDL NO. 1456

| Field Name | Field Description |
|---|---|
| Internal Control Number | Numeric or Alphanumeric field used to uniquely identify each claim. |
| Subscriber Number | Identification number for the subscriber. |
| Group Number | Identifies a set of individuals who obtain insurance and health care coverage services through a common group business relationship. |
| Billing Unit | Identifies a set of individuals who obtain insurance and health care coverage services under a certain billing relationship. |
| Group Name | Name of the group for which the subscriber is a member. |
| Fund Method | Identifies the financial arrangement of the group as either self-funded, fully-insured, or other |
| Product | High level categorization of a product. (Indemnity, Managed Indemnity, PPO, Long Term Care, Point of Service, Drug, Dental, etc.) May be referred to as Line of Business. |
| Plan Type | Type of plan (Administrative services only, Fiscal Intermediary, etc.) |
| Patient Age | Patient age as of the incurred date of the claim. |
| Patient Gender | Gender of the Patient. |
| Member relationship | Relationship with the plan (subscriber, spouse, dependent, etc.) |
| Claim Number | Internal Insurer medical claim identification number |
| Claim Status or Type | Indicates processing status of claim. |
| First Service Date | Date of first service provided for the claim. |
| Date of Service | Date of service of the claim. |
| Payment Date | The date the claim reaches final disposition (also referred to as settlement date or check date). |
| Provider charge | Total amount billed (charges) for the service or drug provided. |
| PBM Dispensing Fee | The dispensing fee paid by the insurance carrier. |
| Drug Ingredient Cost | The amount the drug actually cost the pharmacy to obtain. |
| Amount Billed (Charges) | The total amount billed for the service or drug provided. |
| Allowed Charge | An amount that is used to determine any copay, coinsurance, and deductible applicable to a claim. |
| Claims Paid | Maximum potential financial liability for the covered service. |
| Copay | A fixed dollar amount deducted from the allowed amount for which the plan member  must pay for certain medical services as specified by the contract. |
| Deductible | A dollar amount deducted from the allowed amount for which the plan member is liable. |
| Coinsurance Amount | The coinsurance amount is the liability of the plan member. |
| COB Savings Amount | The amount of money saved as a result of coordination of benefits or subrogation. |
| Medicare Paid Amount | Amount paid by Medicare. |
| Amount Not Covered | Amount not covered. |
| NDC Code | National Drug Code assigned by the Federal Drug Administration for pharmaceuticals. |
| HCPCS/J Code | Procedure code associated with physician administered drugs. |
| HCPCS/J Code (2) | Second procedure code associated with physician administered drugs, if applicable. |

E.SERVED
04/20/04
02:21 PM ET
AWP-MDL No.1456



| Field Name | Field Description |
| --- | --- |
| HCPCS/J Code (3) | Third procedure code associated with physician administered drugs, if applicable. |
| CPT Code | Procedure code for medical service provided. |
| Icd9 Code | Diagnosis code for medical service provided. |
| Denial Reason | If the claim was denied, why was it denied |
| Provider network status | In network, Out of network |
| Provider Number | Identifies the provider which provided the drug or service. |
| Provider Type | Identifies the type of provider providing the drug or service. |
| Provider Tax ID | Tax ID of Provider providing service. |
| Pharmacy Name | Name of pharmacy drug was provided. |
| Pharmacy Number | Pharmacy identification number. |
| Diagnosis Code | Primary diagnosis for the medical service submitted on claim |
| AWP Price | Average Wholesale Price for Wholesale Drugs |
| Date Filled | Date prescription was filled. |
| Days Supply | Day supply of drug provided. |
| Drug Name | Name of the drug provided. |
| NDC | National Drug Code, unique identifier for drugs |
| Other Coverage Indicator | Indicates if other commercial or Medicare coverage is known to Payor |
| Patient ID | Unique identifier for individual patient. |
| Refill Code | Code associated with review amounts. |
| RX Dose | Dosage Amount of drug provided. |
| RX Type | Form of Drug provided. |
| State | State in which service was provided. |
| Units | Number of units provided. |
| Denial Reason | If the claim was denied, why was it denied. |
| Claim adjustment number | Claim Adjustment number to ensure only the latest claim status is provided. |

* Please note the field listing above is not all inclusive. This listing represents a combined listing of fields third party insurers typically maintain related to claims associated with physician assisted and retail pharmacy drugs. Any additional fields maintained with claim data should be provided.



AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | : **SUBPOENA IN A CIVIL CASE**<br>: **MDL NO. 1456**<br>:<br>:<br>: **Civil Action No. 01-12257-PBS**<br>:<br>: Judge Patti B. Saris<br>**THIS DOCUMENT RELATES TO THE MASTER** : (case pending in D. Mass.)<br>**CONSOLIDATED CLASS ACTION** :<br>:<br>:<br>: |

TO:    Oxford Health Plans
       48 Monroe Turnpike
       Trumbull, CT 06611

☐ **YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.**

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ **YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Oxford Health Plans<br>48 Monroe Turnpike<br>Trumbull, CT 06611 | May 14, 2004 at 10 a.m. |

☒ **YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):**
  See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Oxford Health Plans<br>48 Monroe Turnpike<br>Trumbull, CT 06611 | May 13, 2004 at 10 a.m. |

☐ **YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.**

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Erik Haas /s*<br>Attorney for Defendants Johnson & Johnson, Centocor Inc. Ortho Biotech Products L.P., Janssen Pharmaceutica L.P. and McNeil-PPC on behalf of all defendants to the Amended Master Consolidated Class Action Complaint | April 19, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: Erik Haas, Patterson, Belknap, Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036.  (212) 336 2000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

E. SERVED
04/20/04
02:21 PM ET
MDL NO. 1456

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                          DATE                                        SIGNATURE OF SERVER

                                                    _____
                                                         ADDRESS OF SERVER

                                                    _____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

    (1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

    (2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

        (B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

    (3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i)   fails to allow reasonable time for compliance;
        (ii)  requires a person who is not a party or an officer of a party to travel to a place more than100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
        (iv)  subjects a person to undue burden.

        (B) If a subpoena
        (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

    (1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    (2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



## SCHEDULE A

### DEFINITIONS

1.      "Oxford Health Plans" ("Oxford") means Oxford and any of its past or present trustees, officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2.      "AMCC" means the Amended Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

3.      "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

4.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

5.      "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided by any health plan or health and welfare fund to any of its participants or beneficiaries.

6.      "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-Span").

1

985181v1



7.     "Benefit Consultant" means any person or entity that provides information, counsel or advice to any health plan or health and welfare fund regarding any medical benefit or service provided by any health plan or health and welfare fund to any participant or beneficiary.

8.     "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

9.     "CMS" shall mean Centers for Medicare and Medicaid Services.

10.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

11.     "Concerning" means referring to, describing, evidencing, or constituting.

12.     "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

13.     "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

14.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

15.     "Government payor" means any federal or state government entity or program that reimburses Providers for drugs or health care services, including but not limited to

2



CMS, Medicare, and Medicaid.

16.     "Independent Practice Association" means any organized group of providers whose members provide health care to any participant or beneficiary.

17.     "MAC" means Maximum Allowable Cost and includes the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

18.     "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, subject drugs.

19.     "MCC" means the Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

20.     "PBM" means pharmacy benefit manager.

21.     The terms "Participant" and "Beneficiary" mean a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

22.     "Person" means any natural person or any business, legal, or governmental entity or association.

23.     "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

24.     "Private payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit funds.

25.     "Provider" means any physician or entity that provides health care to any

985181v1



Participant or Beneficiary.

26.     "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes FirstDataBank, Red Book, Blue Book and Medispan.

27.     "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

28.     "Subject drug" or "subject drugs" means one or more of drugs listed on Exhibit A hereto.

29.     "Third Party Administrator" means any entity that provides administrative services to any health plan or health and welfare fund relating to any medical benefit provided to any participant or beneficiary.

30.     "WAC" means wholesale acquisition cost or the list prices for sales by manufacturers to wholesalers.

31.     "Wholesaler" means any entity that purchases subject drugs from a manufacturer and resells such drugs to any other entity.

32.     "You" or "your" shall refer to Oxford.

4



## INSTRUCTIONS

1.      Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.      The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.      Provide the following information for each document withheld on the grounds of privilege:

5

985181v1



(a)    its date;

(b)    its title;

(c)    its author;

(d)    its addressee;

(e)    the specific privilege under which it is withheld;

(f)    its general subject matter; and

(g)    a description of it that you contend is adequate to support your contention that it is privileged.

6.      These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

7.      The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

8.      To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

6

985181v1



## DOCUMENTS TO BE PRODUCED

1.      All documents relating to or reflecting any definition or meaning of AWP.

2.      All documents that reflect, discuss, memorialize, or otherwise relate to your setting of reimbursement or payment rates for any subject drug.

3.      All documents that you or someone acting on your behalf relied upon in setting reimbursement or payment rates for any subject drug.

4.      All minutes from meetings where reimbursement or payment for subject drugs was discussed, including meetings where the setting of reimbursement or payment rates was discussed.

5.      All documents relating to or reflecting the costs to providers of any subject drug.

6.      All documents relating to or reflecting the amounts you reimburse providers for any subject drug.

7.      All documents relating to or reflecting any differences between the costs to providers of any subject drug and the amounts you reimburse providers for any subject drug.

8.      All documents relating to or reflecting your awareness that the costs to providers of subject drugs are different from the amounts you reimburse providers for subject drugs.

9.      All documents relating to your claims processing policies and procedures for any subject drug.

10.      All documents reflecting any payments made by you that were based in whole or in part on the AWP of any subject drug.

7

985181v1



11.     All communications between you and providers or pharmacies relating to reimbursement, payment or prices of any subject drug.

12.     All documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug.

13.     All documents concerning your decision to rely on, reliance on, or use of drug pricing information published by any publisher for any subject drug.

14.     All documents created by or received from any publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between you and any publisher regarding any subject drug.

15.     All documents relating or referring to AWPs, including documents that relate or refer to the relationship between any price and AWP for any subject drug.

16.     All documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any subject drug.

17.     To the extent not otherwise produced, all documents concerning AWP, AMP, WAC, MAC, EAC, Best Price or any other drug pricing, payment or reimbursement information for any subject drug.

18.     All documents relating or referring to your contractual relationships with PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover subject drugs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

19.     Documents sufficient to identify all persons involved in negotiation of

8



contractual relationships with PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover any subject drug.

      20.     All documents relating to any profit analysis you have performed or received relating to your reimbursement or payment for any subject drug.

      21.     All documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug.

      22.     All filings with any state or federal government entity made by you or on your behalf that refer or relate to AWP.

      23.     All documents created by or received from CMS, United States Department of Health and Human Services, The Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal or state institution, agency, department, or office regarding the pricing of prescription drugs.

      24.     All documents provided to CMS, United States Department of Health and Human Services, the Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal or state institution, agency, department, or office regarding the pricing of any subject drug.

      25.     All documents produced by you in any litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

      26.     All current and historical organizational charts for all of your departments.

985181v1



## EXHIBIT A

## ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS

| | |
|---|---|
| Abbott | Acetylcyst |
| Abbott | Acyclovir |
| Abbott | A-Methapred |
| Abbott | Amikacin |
| Abbott | Amikacin Sul |
| Abbott | Aminosyn |
| Abbott | Biaxin |
| Abbott | Calcijex |
| Abbott | Cimetidine |
| Abbott | Clindamycin |
| Abbott | Depakote |
| Abbott | Depakote SPR |
| Abbott | Dextrose |
| Abbott | Dextrose w/Sodium Chloride |
| Abbott | Diazepam |
| Abbott | Ery-Tab |
| Abbott | Erythromycin Cap |
| Abbott | Erythromycin Tab Bs |
| Abbott | Fentanyl Cit |
| Abbott | Furosemide |
| Abbott | Gentamicin |
| Abbott | Heparin Lock |
| Abbott | Leucovor CA |
| Abbott | Lorazepam |
| Abbott | Prevacid Cap |
| Abbott | Prevacid Gra |
| Abbott | Sod Chloride |
| Abbott | Sodium Chloride Sol |
| Abbott | Tobra/Nacl |
| Abbott | Tobramycin |
| Abbott | Vancomycin |
| | |
| Allen & Hanburys | Beconase AQ SPR |
| Allen & Hanburys | Flonase SPR |
| Allen & Hanburys | Serevent AER |
| Allen & Hanburys | Serevent DIS MIS |
| | |
| Amgen | Aranesp |
| Amgen | Enbrel |
| Amgen | Epogen |

10



| | |
|---|---|
| Amgen | Kineret |
| Amgen | Neulasta |
| Amgen | Neupogen |
| | |
| Astrazeneca | Accolate |
| Astrazeneca | Arimidex |
| Astrazeneca | Casodex |
| Astrazeneca | Diprivan |
| Astrazeneca | Nolvadex |
| Astrazeneca | Seroquel |
| Astrazeneca | Zestril |
| Astrazeneca | Zoladex |
| Astrazeneca | Zomig |
| Astrazeneca | Zomig ZMT |
| Astrazeneca | Atacand |
| Astrazeneca | Atacand HCT |
| Astrazeneca | Entocort EC |
| Astrazeneca | Nexium |
| Astrazeneca | Prilosec |
| Astrazeneca | Pulmicort |
| Astrazeneca | Rhinocort |
| Astrazeneca | Toprol XL |
| | |
| Aventis | Allegra |
| Aventis | Allegra-D |
| Aventis | Amaryl |
| Aventis | Anzemet |
| Aventis | Arava |
| Aventis | Azmacourt |
| Aventis | Calcimar |
| Aventis | Carafate |
| Aventis | Cardizem Cap |
| Aventis | Cardizem Inj |
| Aventis | Cardizem Tab |
| Aventis | Gammar |
| Aventis | Gammar P-IV |
| Aventis | Intal |
| Aventis | Intal INH |
| Aventis | Nasacort |
| Aventis | Nasacort AQ |
| Aventis | Taxotere |
| Aventis | Trental |
| | |
| B. Braun | Dextrose |

11



| | |
|---|---|
| B. Braun | Dextrose with sodium chloride |
| B. Braun | Dextrose with lactated ringers |
| B. Braun | Heparin with dextrose |
| B. Braun | Heparin with sodium chloride |
| B. Braun | Sodium chloride IV solution |
| B. Braun | Sodium chloride irrigation |
| | |
| Baxter | Aggrastat |
| Baxter | Ativan |
| Baxter | Bebulin VH |
| Baxter | Brevibloc |
| Baxter | Buminate |
| Baxter | Cisplatin |
| Baxter | Claforan/D5W |
| Baxter | Dextrose |
| Baxter | Doxorubicin |
| Baxter | Gammagard SD |
| Baxter | Gentam/NACL |
| Baxter | Gentran 40 |
| Baxter | Gentran 75 |
| Baxter | Gentran/Trav |
| Baxter | Heparin Lock |
| Baxter | Iveegam |
| Baxter | Iveegam EN |
| Baxter | Osmitrol |
| Baxter | Osmitrol VFX |
| Baxter | Recombinate |
| Baxter | Sod Chloride |
| Baxter | Sodium Chlor Sol |
| Baxter | Travasol |
| Baxter | Travasol w/Dextrose |
| Baxter | Vancocin HCL |
| Baxter | Vancocin/Dex |
| | |
| Bayer Pharmaceutical | Cipro |
| Bayer Pharmaceutical | Cipro Cystit Tab |
| Bayer Pharmaceutical | Cipro I.V. |
| Bayer Pharmaceutical | Cipro XR |
| Bayer Pharmaceutical | DTIC-DOME |
| Bayer Pharmaceutical | Gamimune N |
| Bayer Pharmaceutical | Koate-HP |
| Bayer Pharmaceutical | Kogenate FS |
| Bayer Pharmaceutical | Mithracin |
| | |

12



| | |
|---|---|
| B-M Squibb | Paraplatin Inj |
| B-M Squibb | Blenoxane |
| B-M Squibb | Cytoxan |
| B-M Squibb | Etopophos |
| B-M Squibb | Rubex |
| B-M Squibb | Taxol |
| B-M Squibb | Vepesid |
| B-M Squibb | Ividex EC |
| B-M Squibb | Avapro |
| B-M Squibb | Buspar |
| B-M Squibb | Cefzil |
| B-M Squibb | Glucophage) |
| B-M Squibb | Glucovance) |
| B-M Squibb | Monopril) |
| B-M Squibb | Plavix) |
| B-M Squibb | Serzone) |
| B-M Squibb | Tequin) |
| B-M Squibb | Coumadin |
| Apothecon | Amikin (amikacin sulfate) |
| Apothecon | Fungizone (amphotercin b) |
| | |
| Cerenex | Amerge |
| Cerenex | Imitrex |
| Cerenex | Zofran |
| | |
| Dey Labs | Acetylcysteine |
| Dey Labs | Albuterol |
| Dey Labs | Cromolyn Sodium |
| Dey Labs | Ipratropium |
| Dey Labs | Metaproteren Neb |
| | |
| Fujisawa | Aristocort |
| Fujisawa | Aristospan |
| Fujisawa | Cefizox |
| Fujisawa | Cefizox/D5W |
| Fujisawa | Cyclocort |
| Fujisawa | Lyphosin |
| Fujisawa | Nebupent or Pentam 300 |
| Fujisawa | Prograf |
| Fujisawa | Vinblastine Sulfate |
| | |
| Gensia | Amikacin Sulfate |
| Gensia | Amphotercin B |
| Gensia | Etoposide |

13

985181v1



| Gensia | Leucovorin Calcium |
|---|---|
|  |  |
| GlaxoSmithKline | Advair Diskus |
| GlaxoSmithKline | Agenerase |
| GlaxoSmithKline | Agenerase SOL |
| GlaxoSmithKline | Alkeran |
| GlaxoSmithKline | Amerge |
| GlaxoSmithKline | Beconase |
| GlaxoSmithKline | Ceftin |
| GlaxoSmithKline | Combivir |
| GlaxoSmithKline | Daraprim |
| GlaxoSmithKline | Epivir |
| GlaxoSmithKline | Epivir HBV |
| GlaxoSmithKline | Flonase |
| GlaxoSmithKline | Flovent |
| GlaxoSmithKline | Flovent ROTA |
| GlaxoSmithKline | Imitrex |
| GlaxoSmithKline | Kytril |
| GlaxoSmithKline | Lamictal |
| GlaxoSmithKline | Lanoxin |
| GlaxoSmithKline | Lanoxin Ped |
| GlaxoSmithKline | Leukeran |
| GlaxoSmithKline | Mepron |
| GlaxoSmithKline | Myleran |
| GlaxoSmithKline | Navelbine |
| GlaxoSmithKline | Paxil |
| GlaxoSmithKline | Paxil CR |
| GlaxoSmithKline | Purinethol |
| GlaxoSmithKline | Relenza |
| GlaxoSmithKline | Retrovir |
| GlaxoSmithKline | Servent |
| GlaxoSmithKline | Thioguanine |
| GlaxoSmithKline | Trizivir |
| GlaxoSmithKline | Valtrex |
| GlaxoSmithKline | Ventolin HFA |
| GlaxoSmithKline | Wellbutrin |
| GlaxoSmithKline | Zantac |
| GlaxoSmithKline | Ziagen |
| GlaxoSmithKline | Zofran |
| GlaxoSmithKline | Zovirax |
| GlaxoSmithKline | Zyban |
|  |  |
| Immunex | Leucovorin Calcium |
| Immunex | Leukine |

14



| | |
|---|---|
| Immunex | Methotrexate Sodium |
| Immunex | Novantrone |
| Immunex | Thioplex |
| | |
| J&J Group (Centocor) | Remicade |
| J&J Group (Janssen Pharmaceutica) | Aciphex |
| J&J Group (Janssen Pharmaceutica) | Duragesic |
| J&J Group (Janssen Pharmaceutica) | Reminyl |
| J&J Group (Janssen Pharmaceutica) | Risperdal |
| J&J Group (Janssen Pharmaceutica) | Sporanox |
| J&J Group (Ortho McNeil Pharmaceutical) | Bicitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Elmiron |
| J&J Group (McNeil-PPC) | Flexeril |
| J&J Group (Ortho McNeil Pharmaceutical) | Floxin |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol Decan |
| J&J Group (Ortho McNeil Pharmaceutical) | Levaquin |
| J&J Group (Ortho McNeil Pharmaceutical) | Mycelex |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease MT |
| J&J Group (Ortho McNeil Pharmaceutical) | Parafon Fort |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-LC Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Regranex |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 3 |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 7 |
| J&J Group (Ortho McNeil Pharmaceutical) | Testoderm |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin DS |
| J&J Group (Ortho McNeil Pharmaceutical) | Topamax |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylenol/Cod |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylox |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultracet |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultram |
| J&J Group (Ortho McNeil Pharmaceutical) | Urispas |
| J&J Group (Ortho McNeil Pharmaceutical) | Vascor |
| J&J Group (Ortho Biotech Products) | Procrit |
| J&J Group (Ortho Neutrogena) | Erycette |
| J&J Group (Ortho Neutrogena) | Grifulvin V |
| J&J Group (Ortho Neutrogena) | Monistat |
| J&J Group (Ortho Neutrogena) | Renova |
| J&J Group (Ortho Neutrogena) | Retin-A |

15



| | |
|---|---|
| J&J Group (Ortho Neutrogena) | Retin-A Micr Gel |
| J&J Group (Ortho Neutrogena) | Spectazole Cream |
| | |
| Novartis | Clozaril |
| Novartis | Combipatch |
| Novartis | Comtan |
| Novartis | Estraderm |
| Novartis | Exelon |
| Novartis | Femara |
| Novartis | Lamisil |
| Novartis | Lamprene |
| Novartis | Lescol |
| Novartis | Lescol XL |
| Novartis | Lotensin |
| Novartis | Lotensin HCT |
| Novartis | Lotrel |
| Novartis | Miacalcin |
| Novartis | Parlodel |
| Novartis | Ritalin |
| Novartis | Ritalin LA |
| Novartis | Starlix |
| Novartis | Tegretol |
| Novartis | Tegretol XR |
| Novartis | Trileptal |
| Novartis | Vivelle |
| Novartis | Vivelle-DOT |
| | |
| Pfizer | Accupril |
| Pfizer | Accuretic |
| Pfizer | Cardura |
| Pfizer | Celontin |
| Pfizer | Dilantin |
| Pfizer | Dilantin-125 |
| Pfizer | Estrostep FE |
| Pfizer | Femhrt 1/5 |
| Pfizer | Lipitor |
| Pfizer | Lopid |
| Pfizer | Minizide |
| Pfizer | Nardil |
| Pfizer | Neurontin |
| Pfizer | Nitrostat |
| Pfizer | Renese |
| Pfizer | Rescriptor |
| Pfizer | Viracept |

985181v1



| | |
|---|---|
| Pfizer | Zarontin |
| Pfizer | Zithromax |
| Pfizer | Zoloft |
| Pfizer | Zyrtec |
| | |
| Pharmacia | Adriamycin PFS |
| Pharmacia | Adriamycin RDF |
| Pharmacia | Adrucil |
| Pharmacia | Amphocin |
| Pharmacia | Amphotercin B |
| Pharmacia | Bleomycin Sulfate |
| Pharmacia | Celebrex |
| Pharmacia | Cleocin-T |
| Pharmacia | Cytarabine (Cytosar-U) |
| Pharmacia | Depo-Testosterone |
| Pharmacia | Etoposide |
| Pharmacia | Neosar |
| Pharmacia | Solu-Cortef |
| Pharmacia | Solu-Medrol |
| Pharmacia | Toposar |
| Pharmacia | Vincasar PFS |
| | |
| Schering | Clarinex |
| Schering | Claritin |
| Schering | Claritin-D |
| Schering | Diprolene |
| Schering | Diprolene AF |
| Schering | Diprosone |
| Schering | Elocon |
| Schering | Eulexin |
| Schering | Integrilin |
| Schering | Intron-A |
| Schering | Lotrisone |
| Schering | Nasonex |
| Schering | Peg-Intron |
| Schering | Proventil |
| Schering | Rebetol |
| Schering | Sebizon |
| Schering | Temodar |
| Schering | Trinalin Rep |
| Schering | Vanceril |
| | |
| Warrick | Albuterol |
| Warrick | Clotrimazole |



| | |
|---|---|
| Warrick | Griseofulvin, Ultramicrocry |
| Warrick | ISMN |
| Warrick | Oxaprozin |
| Warrick | Perphenazine |
| Warrick | Potassium Chloride |
| Warrick | Sodium Chloride |
| Warrick | Sulcrafate Tablets |
| Warrick | Theophylline |
| | |
| Sicor | Acyclovir Sodium |
| Sicor | Amikacin Sulfate |
| Sicor | Doxorubicin |
| Sicor | Etoposide |
| Sicor | Leucovorin Calcium |
| Sicor | Pentamidine Isethionate |
| Sicor | Tobramycin Sulfate |
| | |
| TAP | Prevacid |
| | |
| Watson | Dexamethasone Acetate8 |
| Watson | Dexamethasone Sodium Phosphate |
| Watson | Diazepam |
| Watson | Estradiol |
| Watson | Ferrlecit |
| Watson | Fluphenazine HCL |
| Watson | Gemfibrozil |
| Watson | Gentamicin Sulfate |
| Watson | Imipramine HCL |
| Watson | Infed |
| Watson | Lorazepam |
| Watson | Nadolol |
| Watson | Perphenazine2 |
| Watson | Propranolol |
| Watson | Ranitidine |
| Watson | Vancomycin HCL |
| Watson | Verapamil HCL |

18

985181v1

# Exhibit 2

**Exhibit B**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 |
| | ) | Civil Action No. |
| | ) |    01-CV-12257-PBS |
| THIS DOCUMENT RELATIONS TO ALL ACTIONS | ) ) | |
| | ) | Judge Patti B. Saris |
| | ) | |

### [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING SUBPOENAS TO PUTATIVE CLASS MEMBERS

For the reasons stated in open Court at the Status Conference on March 8, 2004,

Plaintiffs' Motion for a Protective Order Regarding Subpoenas to Putative Class Members

[Docket No. 632] hereby is DENIED.

Dated: March ___, 2004
*April 06*

The Honorable Patti B. Saris

FHBoston-#1033361-v1-Request_for_Order_on_Protective_Order.DOC

-4-

# Exhibit 3

**Mangi, Adeel A. (x2563)**

| | |
|---|---|
| **From:** | Mangi, Adeel A. (x2563) |
| **Sent:** | Monday, October 03, 2005 5:27 PM |
| **To:** | 'Mark Sandmann' |
| **Subject:** | FW: In re AWP Litigation |



CORR_ 20050628
to Sandmann re ...
               Mark:  We have not heard back from you regarding the below email.  I am
forwarding it again in case it was lost in your vacation email. Thanks Adeel

-----Original Message-----
From: Mangi, Adeel A. (x2563)
Sent: Wednesday, September 21, 2005 12:23 PM
To: 'Mark Sandmann'
Cc: Haas, Erik (x2117)
Subject: In re AWP Litigation


Mark:
I am taking over from Jessica Cortes in this matter.  I understand that Jessica sent you a
letter detailing outstanding discovery issues in late June and that Oxford has not
responded (other than the emails below).  Could you please clarify your client's position
regarding the issues detailed in the June letter, which is attached.

Best regards
Adeel

-----Original Message-----
From: Cortes, Jessica Golden (x2017)
Sent: Thursday, July 07, 2005 7:46 PM
To: 'Mark Sandmann'; Cortes, Jessica Golden (x2017)
Cc: Mark Fischer; Mangi, Adeel A. (x2563)
Subject: RE: RE: FW: In re AWP


Mark, your recollection is inaccurate. On September 9, 2004, you gave us two "options",
either to attend the Lupron deposition and depose the witness immediately following, or to
schedule the deposition for another time.  If you will recall, defendants explained to you
at that time that two different protective orders governed each case and needed to be
strictly adhered to, such that your proposal for MDL defendants to attend the Lupron
deposition and to question the witness subsequently, feeding off the Lupron deposition,
was not acceptable.  For the convenience of the witness, we then offered to depose the
witness the day after her Lupron deposition to prevent subsequent travel or hassle, but
you refused to produce the witness. If Oxford continues to take this position, defendants
will move to compel immediately.

Jessica Golden Cortes, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
Direct Phone: 212-336-2017
Direct Fax: 212-336-7901


-----Original Message-----
From: Mark Sandmann [mailto:mms@rawlingsandassociates.com]
Sent: Thursday, July 07, 2005 7:37 PM
To: jgcortes@pbwt.com
Cc: Mark Fischer

Subject: Re: RE: FW: In re AWP


Jessica:
Neither I nor Mark Fischer are ignoring your requests.  We were both out last week and now
we are trying to coordinate with Oxford.  However, Oxford DID produce a witness on the
date specified months ago and you elected to attempt to change the date for the witness to
give deposition testimony.  I doubt seriously Oxford is going to acede to your request to
produce the same witness (or witness type) months and months later.  I will, however, be
speaking with Oxford tomorrow about this and the other issues you raised in your letter.
Thanks.

>>> "Cortes, Jessica Golden (x2017)" <jgcortes@pbwt.com> 07/07/05 19:25
>>> PM >>>
Mark,
Despite your June 29 email representing that you would respond to my June 28 letter this
week, and despite my numerous previous efforts to speak with you or your colleague, Mark
Sandmann, to no avail, we still have yet to hear from you.  By the close of business
tomorrow, please provide concrete dates for supplemental production of documents pursuant
to the narrowed requests in my June 28 letter, and please provide a concrete date for
deposition of an Oxford witness qualified to testify in depth regarding the areas of
inquiry previously provided, or defendants will be forced to move to compel. I will be out
of the office tomorrow, so please contact my colleague, Adeel Mangi, at 212-336-2563, with
any questions.  I will return to the office on Monday.

Jessica Golden Cortes, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
Direct Phone: 212-336-2017
Direct Fax: 212-336-7901


-----Original Message-----
From: Mark Fischer [mailto:mdf@rawlingsandassociates.com]
Sent: Wednesday, June 29, 2005 8:59 AM
To: jgcortes@pbwt.com
Cc: Mark Sandmann
Subject: Re: FW: In re AWP


Jssica,

I have your letter and we'll respond next week.  Thanks.

Mark D. Fischer
502-814-2139

IMPORTANT WARNING: This message is intended for the use of the person or entity to which
it is addressed and may contain information that is privileged and confidential, the
disclosure of which is governed by applicable law.  If the reader of this message is not
the intended recipient, or the employee or agent responsible to deliver it to the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this
information is STRICTLY PROHIBITED.  If you have received this message in error, please
notify us immediately and delete the related message.


>>> "Cortes, Jessica Golden (x2017)" <jgcortes@pbwt.com> 06/28/05
>>> 05:01PM >>>
Good afternoon Mark,
I received Mark Sandman's out of the office message and so I am forwarding this letter on
to you for your client's immediate attention. Thank you.

Jessica Golden Cortes, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

```
Direct Phone: 212-336-2017
Direct Fax: 212-336-7901


-----Original Message-----
From: Cortes, Jessica Golden (x2017)
Sent: Tuesday, June 28, 2005 4:53 PM
To: 'Mark Sandmann'
Subject: In re AWP


Good afternoon Mark,
Please see the attached.

Jessica Golden Cortes, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036
Direct Phone: 212-336-2017
Direct Fax: 212-336-7901

 <<Ltr to Mark Sandman dated June 28 2005.pdf>>
```

-------------------------------------------------------------------------
--
Privileged/Confidential Information may be contained in this message.  If you are not the
addressee indicated in this message (or responsible for delivery of the message to such
person), you may not copy or deliver this message to anyone.  In such case, you should
destroy this message and kindly notify the sender by reply email.  Please advise
immediately if you or your employer donot consent to Internet email for messages of this
kind.


-------------------------------------------------------------------------
--

IRS Circular 230 disclosure:  Any tax advice contained in this communication (including
any attachments or enclosures) was not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter addressed
in this communication. (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)
=========================================================================
==

--------------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are not the
addressee indicated in this message (or responsible for delivery of the message to such
person), you may not copy or deliver this message to anyone.  In such case, you should
destroy this message and kindly notify the sender by reply email.  Please advise
immediately if you or your employer do not consent to Internet email for messages of this
kind.

--------------------------------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (including
any attachments or enclosures) was not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter addressed
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)
=========================================================================

3

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

June 28, 2005

Jessica Golden Cortes
(212) 336-2017
Direct Fax (212) 336-7901
jgcortes@pbwt.com

**By Email Attachment**

Mark Sandman, Esq.
Rawlings & Associates
1700 Waterfront Plaza Suite
Louisville, Kentucky, 40202

Re:   **In re Pharmaceutical Industry AWP Litigation**

Dear Mark:

Given that we have been unable to speak despite our multiple voicemail exchanges over the past several weeks, this letter summarizes defendants' position regarding Oxford's outstanding discovery pursuant to defendants' third party subpoena in the AWP Litigation. Defendants have revised and significantly paired down the categories of remaining outstanding discovery sought to facilitate a timely production and to avoid unduly burdening your client. As previously discussed, for purposes of these revised requests, unless otherwise stated, the relevant time period at issue is 1997 to 2002:

1.   To the extent not previously produced, all documents reflecting Oxford's understanding of whether health care providers earn a margin on drugs administered.

2.   All documents concerning the relative reimbursement or costs for injected or infused drugs (and related treatments or therapies) in the hospital (in or outpatient setting) as compared to in physicians' offices, including Oxford's business and strategic plans addressing the optimal site of care for the administration of oncology drugs.

3.   To the extent not previously produced, a representative sample of physician reimbursement contracts showing the various methodologies Oxford utilized, and the various levels of reimbursement Oxford afforded, for the reimbursement of physician-administered drugs.

4.   All schedules disclosing the amounts reimbursed to particular physicians for services rendered and drugs administered (*i.e.*, physician "fee schedules") and documents detailing how those schedules were calculated or derived. To the extent the fee schedules differ from the electronic schedules or tables used to generate the actual reimbursement amounts paid to physicians, produce all such schedules and tables. We note that although various documents previously produced by Oxford referred to such schedules, the schedules were not included in the production.

Mark Sandman, Esq.
June 28, 2005
Page 2

5.  All rebate reports or other documentation showing the rebates paid by pharmacy benefit managers or pharmaceutical manufacturers to Oxford.

6.  Medical Claims Data from 1997 to the present, including claims submitted by hospitals and physician offices. This request pertains to all subject drugs.

   A.  This data should include a field that explains the type of payment methodology utilized to reimburse for a particular claim (*e.g.*, U&C, AWP-based, capitation). We note that your previous data production (restricted to Lupron data) did not convey the methodologies used to reimburse for a particular claim.

   B.  As we briefly discussed earlier on in these negotiations, please describe how the data is maintained and the estimated cost of retrieval prior to production of the requested data.

7.  Claims processing manuals corresponding to data produced.

8.  MAC Lists pertaining to retail pharmacy reimbursement for generic drugs.

9.  To the extent not previously produced, all documents your client produced in any other litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

   Please also identify witness(es) qualified to testify regarding the substance of the above-requested documents and data, and advise me of when in the coming month the witness(es) will be available for deposition(s). I look forward to working with you to achieve a swift resolution of outstanding production issues. Please contact me with any questions.

                              Very truly yours,

                              Jessica Golden Cortes

# Exhibit 4

**Mangi, Adeel A. (x2563)**

| | |
|---|---|
| **From:** | Mark Sandmann [MMS@rawlingsandassociates.com] |
| **Sent:** | Tuesday, November 15, 2005 8:37 AM |
| **To:** | Mangi, Adeel A. (x2563) |
| **Subject:** | RE: RE: In re AWP |

I am talking to  Oxford today about this very issue.  I do not think it is so much a refusal as it is an internal issue on who is going to handle this.  United now has a say in everything Oxford does and it is causing some confusion internally over who is going to handle this.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message in error, please notify us immediately and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 11/14/05 05:48PM >>>
Mark:  I'm afraid the end of the week came and went, but we are yet to hear from you.  I should apprise you that in the interim the Judge ruled on a motion for a protective order filed by a group of blue cross blue shield plans, denying the motion and ordering them to produce documents and witnesses.  This follows earlier orders to the same effect as to Health Net, Aetna, Cigna and Humana.  If Oxford is still refusing to produce both documents and witnesses despite the Judge's previous rulings, please let us know now so we can raise the issue with the court and move forward promptly.

Thanks
Adeel

-----Original Message-----
From: Mark Sandmann [mailto:mms@rawlingsandassociates.com]
Sent: Saturday, November 05, 2005 11:48 AM
To: Mangi, Adeel A. (x2563)
Subject: Re: RE: In re AWP


Adeel:
No there has not, but it has not been for lack of trying.  Oxford is now, as you know, owned by United and I suspect they are figuring out who is going to take the lead on this.  I have to be out of the office on Monday and Tuesday of next week,but I will turn my full attention to this on Wednesday.  I will get you an answer on the deposition and data by the end of the week-promise
Take care.

>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 11/04/05 18:05 PM >>>
Mark:  Has there been any progress on the below issues?
Thanks
Adeel

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Thursday, October 27, 2005 1:55 PM
To: Mangi, Adeel A. (x2563)

1

Subject: RE: In re AWP

Adeel,

I have forwarded the information about the missing data to Oxford and
will await their response.  I have left a message with Oxford via e-mail
and telephone with respect to the deposition.  I will let you know
something as soon as I hear something from Oxford.  They have been
hanndling most of this internally.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or
entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is governed by
applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this information is STRICTLY PROHIBITED.   If
you have received this message in error, please notify us immediately
and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 10/27/05 01:24PM >>>

Mark:

Thank you for your email.

First, rearding depositions, Jessica's email of July 7, 2005 (below)
sets forth our position.  To ensure there is no confusion, however, I
note that you appear to be conflating two separate litigations:  the
Lupron litigation against TAP and the AWP MDL litigation, which is
against the industry.  Please also be advised that the MDL court has
previously ordered depositions to proceed against other health plans
that similarly refused to produce witnesses (e.g. Aetna, Cigna and
Humana) in response to motions to compel.

Second, regarding document production, Oxford has produced 476 pages of
documents to date, which are indexed below for your reference.  Oxford
also produced a CD of electronic claims data.  The documents and data
that were outstanding from Oxford were listed in Jessica's letter to you
of June 28, which I am attaching here.  As to the categories listed in
that letter, it is my understanding that Oxford has represented it has
already produced a representative sample of physician fee schedules
(category 3) and that will be tested at deposition.  The remaining
categories are still outstanding.  Please be advised that this is a
narrowed scope of production and the court has already ordered broader
discovery from other health plans in response to motions to compel (see
e.g. Health Net motion to compel).

Finally, to faciliate the fee schedule and medical claims data pulls
detailed in the June 28 letter, I include for your reference the most
updated list of physician administered drugs in suit and their
corresponding J-codes.  Note the data pulled must include not just drug
reimbursements but also any related reimbursements relating to physician
services or administrations.  While these can often be pulled be
reference to drug reimbursements in the system, I include a list of
frequently used adminstration codes for your reference.  The CD already
produced by Oxford had some drug-specific medical claims data but no
information on corresponding adminstration fees.

I look forwad to hearing from you.

2

Best regards

Adeel


Bates Range Description
OXF 000001-000070 Prescription Drug Administrative Services
Agreement between Oxford and Merck -Medco effective 9/7/01.
OXF 000071-000081 First Amendment to the Prescription Drug
Administrative Services Agreement of 9/7/01 between Oxford and
Merck-Medco.
OXF 000082-000086 Oxford Health Plans Attachment A to Primary Care
Physician Application Form
OXF 000087-000089 Oxford Health Plans Attachment A to Consultant
Physician Application Form (Consultant Physician Agreement).
OXF 000090-000092  February, 1993 Oxford Health Plans Attachment A
to Consultant Physician Application Form (Consultant Physician
Agreement).
OXF 000093-000097 April, 1996 Oxford Health Plans Attachment A to
Consultant Physician Application Form (Consultant Physician Agreement).
OXF 000098-000102 1/13/97 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000103-000108 4/3/97 Oxford Health Plans (NY), INC. Consultant
Physician Agreement.
OXF 000109-000113 4/10/97 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000114-000123 3/31/98 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000124-000125 9/1/98 Provision additions to the Agreement
currently in force between Provider and Oxford
OXF 000126-000134 6/12/98 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000135-000150 2/3/99 Oxford Health Plans (NY), INC. Consultant
Physician Agreement.
OXF 000151-000161 May, 2000 Oxford Health Plans (NY), INC.
Participating Consultant Physician Agreement.
OXF 000162-000174 5/4/01 Oxford Health Plans (NY), INC.
Participating Consultant Physician Agreement.
OXF 000175-000188 Oxford Health Plans (CT), INC. Participating
Consultant Physician Agreement for year 2000
OXF 000189-000205 Oxford Health Plans (CT), INC. Participating
Consultant Physician Agreement for September, 2002.
OXF 000206-000223 6/2/04 Investors Guaranty Life Insurance Company
d/b/a Oxford Health Plans (CT), INC.Participating Consultant Physician
Agreement.
OXF 000224-000241 6/1/04 Investors Guaranty Life Insurance Company
d/b/a Oxford Health Plans (CT), INC. Participating Consultant Physician
Agreement.
OXF 000242-000270 8/7/03 Oxford Health Plans (NJ), INC.
Participating Primary Care Physician Agreement.
OXF 000271-000299 8/7/03 Oxford Health Plans (NJ), INC.
Participating Primary Care Physician Agreement.
OXF 000300-000321 5/29/01 Oxford Health Plans (NY), INC./Oxford
Health Insurance, Inc. Participating Primary Care Physician Agreement.
OXF 000322-000343 5/29/01 Oxford Health Plans (NY), INC./Oxford
Health Insurance, Inc. Participating Consultant Physician Agreement.
OXF 000344-000360 6/1/04 Oxford Health Insurance, Inc.
Participating Consultant Physician Agreement.
OXF 000361-000377 6/1/04 Oxford Health Insurance, Inc.
Participating Primary Care Physician Agreement.
OXF 000378-000412 3/1/97 Managed Pharmaceutical Benefit Agreement
between Oxford Health Plans INC. and PCS Health Systems, INC.
OXF 000413-000414 Clinical Programs Schedule
OXF 000415-000436 Exhibit N - Target Costs: Created with the goal
of giving Diversified an incentive to assist Oxford in achieving certain
cost containment objectives for the Benefits Plans in the Lines of
Business listed in Exhibit B as being subject to Exhibit N.

3

OXF 000437-000444 2/14/92 Letter of agreement setting forth the
terms  whereby the Provider will provide services to member of Oxford's
medical plans ("Members")
OXF 000445-000462 8/12/96 Letter of agreement setting forth the
terms  whereby the Provider will provide services to member of Oxford's
medical plans ("Members")
OXF 000463-000476 5/19/95 Letter of agreement setting forth the
terms  whereby the Provider will provide services to member of Oxford's
medical plans ("Members")


-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Thursday, October 27, 2005 10:16 AM
To: Mangi, Adeel A. (x2563)
Subject: RE: In re AWP


Adeel:
I resonded to the e-mail that was forwarded to me by Mark Fischer.  I
am going to check my "sent e-mails" to see if it is still retained on my
system and not archived.

As far as Jessica's recollection of the events, she was told that this
was the only day that that individual was available to be deposed.  Wew
worked for several weeks on getting that date and it was the Defendants
who porposed that date and the timing of the deposition.  The protective
order issue was only brought up on  the eve of her deposition.

As for the documents, let me know what has been produced.

Finally, I will call Oxford this morning to see if they want to fight
the Motion to Compel, or produce the witness a second time (She was
already in NYC when the deposition was cancelled by Def.)  At the time
the deposition was cancelled, it was Oxford's position that they had
complied with the order of the court in agreeing to produce a witnness
on a date convenient to the Defendnats and that they did so.  I will see
what latitude they may be willing to offer.n Ag

Finally, I was not involved in the document production.  Have they
produced anything in response to the subpoena on that front?

Take care.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or
entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is governed by
applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this information is STRICTLY PROHIBITED.  If
you have received this message in error, please notify us immediately
and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 10/27/05 09:55AM >>>
Mark:
(1) Please clarify when and how you previously responded to my emails
and voicemail.  I have received no messages, eails or letters from you
that I am aware of.
(2)  Your contention regarding depositions is inaccurate.  I am pasting
below again Ms. Cortes' email of July 7, 2005 regarding that issue to
refresh your recollection.  Nonetheless, if your position remains that
Oxford is refusing to produce a witness because it produced one in the

separate Lupron litigation then we will have to move to compel.  I
assume from your email that meet and confer obligations have been
satisfied, please let me know if your disagree.
(3)  I also understand from your email that Oxford is refusing to
produce the additional responsive documents and data it has responsive
to the subpoena.  Please similarly let me know if you disagree that meet
and confer obligations on this point have also been satisfied so we can
tee up this issue for resolution as well.
(4) Discovery from the Track 1 defendants closed on August 31.  That
does not relate to third party discovery, nor does it relate to track 2
discovery, and this subpoena was served on behalf of all defendants.
See CMO 13.

Best regards
Adeel

-----Original Message-----
From: Cortes, Jessica Golden (x2017)
Sent: Thursday, July 07, 2005 7:46 PM
To: 'Mark Sandmann'; Cortes, Jessica Golden (x2017)
Cc: Mark Fischer; Mangi, Adeel A. (x2563)
Subject: RE: RE: FW: In re AWP


Mark, your recollection is inaccurate. On September 9, 2004, you gave us
two "options", either to attend the Lupron deposition and depose the
witness immediately following, or to schedule the deposition for another
time.  If you will recall, defendants explained to you at that time that
two different protective orders governed each case and needed to be
strictly adhered to, such that your proposal for MDL defendants to
attend the Lupron deposition and to question the witness subsequently,
feeding off the Lupron deposition, was not acceptable.  For the
convenience of the witness, we then offered to depose the witness the
day after her Lupron deposition to prevent subsequent travel or assle,
but you refused to produce the witness. If Oxford continues to take this
position, defendants will move to compel immediately.

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Thursday, October 27, 2005 9:48 AM
To: Mangi, Adeel A. (x2563)
Cc: Mark Fischer
Subject: Re: In re AWP


I did respond to your e-mail and voicemail.  It is the position of
Oxford, once again, that Oxford had made available an individual for
deposition last year.  The day before her deposition was to be taken,
Ms. Golden Cortes cancelled the same.  We were doing by agreement and
that that was your one shot to take it.  Further, it is my understanding
that discovery is closed in this matter.  If I am mistaken please let me
know.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or
entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is governed by
applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this information is STRICTLY PROHIBITED.  If
you have received this message in error, please notify us immediately
and delete the related message.

>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 10/27/05 09:41AM >>>

  Please see attached letter.
  <<sandmanletter.pdf>>

---------------------------------------------------------------------
------
Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internt email for messages of
this kind.

---------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
=====================================================================
======



---------------------------------------------------------------------
------
Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.

---------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
=====================================================================
======



---------------------------------------------------------------------
------
Privileged/Confidential Information may be contained in thi message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.

```
-------------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
=========================================================================
======


-------------------------------------------------------------------------
------
Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.


-------------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The forgoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
=========================================================================
======



----------------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are not the
addressee indicated in this message (or responsible for delivery of the message to such
person), you may not copy or deliver this message to anyone.  In such case, you should
destroy this message and kindly notify the sender by reply email.  Please advise
immediately if you or your employer do not consent to Internet email for messages of this
kind.

----------------------------------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (including
any attachments or enclosures) was not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction or matter addressed
in this communication.  (The foregoing disclaimer has been affixed pursuant to U.S.
Treasury regulations governing tax practitioners.)
============================================================================
```

# Exhibit 5

**Mangi, Adeel A. (x2563)**

| | |
|---|---|
| **From:** | Mangi, Adeel A. (x2563) |
| **Sent:** | Monday, November 21, 2005 3:31 PM |
| **To:** | 'Mark Sandmann' |
| **Subject:** | RE: In re AWP |

Mark,

In response to your email regarding the response of your client Oxford:

**Claims Data**

Oxford produced both medical and pharmacy claims data sets.  I limit this discussion to the medical claims data.
The produced medical data covered the period January 1996 through March 2004.  This data was deficient and
has to be supplemented in three respects.

(1)  Most important, the data produced does not contain information related to services incident to drug
administration.  This data was expressly requested as part of the data pull.  A list of service codes for which we
need claim data is attached.  This is the same list I sent you on October 27th.
(2)  The data documentation provided to date does not include decode descriptions for the following values of
the place of service field: 1, 2, 9.  Please produce that information.
(3)   We need production of the more recent drug and service claims data.

**Document Production**

Outstanding issues pertaining to document production were detailed in my email of October 27, which is below
and which referred to you to Ms. Cortes' letter of June 28.  In sum, all categories requested in that letter remain
outstanding except for contracts, where Oxford has represented that the production to date was representative
and we will test that at deposition.  I have highlighted the relevant section of that email for you in red below and
am again attaching Ms. Cortes letter for your reference.

**Depositions**

We can certainly coordinate on dates in December, but it will be useful to first get a sense of the time frame
when Oxford will be producing the documents requested.  Please get back to me on that as soon as possible and
we can then schedule dates.

Regards
Adeel

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Wednesday, November 16, 2005 4:08 PM
To: Mangi, Adeel A. (x2563)
Subject: RE: In re AWP

OK--finally.
Oxford did produce data sometime ago.  Can u please let me know, so I can pass along, what was missing from the
original production.

Also, can you give me some dates for the deposition.  The first half of December is out for me.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or entity to which it is addressed and may

contain information that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message in error, please notify us immediately and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 11/15/05 10:30AM >>>
thanks

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Tuesday, November 15, 2005 10:31 AM
To: Mangi, Adeel A. (x2563)
Subject: RE: In re AWP


I actually have forwarded the attorney who was working on the previously
a couple of e-mails re: the motions to compel, so they are fully aware
of the situation.  I will forward this one, too

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or
entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is governed by
applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this information is STRICTLY PROHIBITED.  If
you have received this message in error, please notify us immediately
and delete the related message.



>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 11/15/05 10:26AM >>>
Mark:  Please apprise them of the already decided motions and that we
have also have a fully briefed motion to compel pending against United
Healthcare.  That motion raises no new issues and we expect the judge
will follow her earlier rulings.  We would like to get an Oxford motion
heard at the same time if that proves necessary.  Accordingly, please be
advised that we will be filing a motion to compel on November 21 unless
Oxford provides a firm production commitment and timetable as to both
documents and witnesses before that time.  By this email, we also
request a pre-motion meet and confer pursuant to the local rules prior
to that filing.

Best regards
Adeel
-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Tuesday, November 15, 2005 8:37 AM
To: Mangi, Adeel A. (x2563)
Subject: RE: RE: In re AWP


I am talking to  Oxford today about this very issue.  I do not think it
is so much a refusal as it is an internal issue on who is going to
handle this.  United now has a say in everything Oxford does and it is
causing some confusion internally over who is going to handle this.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is STRICTLY PROHIBITED.  If you have received this message in error, please notify us immediately and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 11/14/05 05:48PM >>>
Mark:  I'm afraid the end of the week came and went, but we are yet to hear from you.  I should apprise you that in the interim the Judge ruled on a motion for a protective order filed by a group of blue cross blue shield plans, denying the motion and ordering them to produce documents and witnesses.  This follows earlier orders to the same effect as to Health Net, Aetna, Cigna and Humana.  If Oxford is still refusing to produce both documents and witnesses despite the Judge's previous rulings, please let us know now so we can raise the issue with the court and move forward promptly.

Thanks
Adeel

-----Original Message-----
From: Mark Sandmann [mailto:mms@rawlingsandassociates.com]
Sent: Saturday, November 05, 2005 11:48 AM
To: Mangi, Adeel A. (x2563)
Subject: Re: RE: In re AWP


Adeel:
No there has not, but it has not been for lack of trying.  Oxford is now, as you know, owned by United and I suspect they are figuring out who is going to take the lead on this.  I have to be out of the office on Monday and Tuesday of next week,but I will turn my full attention to this on Wednesday.  I will get you an answer on the deposition and data by the end of the week-promise
Take care.

>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 11/04/05 18:05 PM >>>
Mark:  Has there been any progress on the below issues?
Thanks
Adeel

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Thursday, October 27, 2005 1:55 PM
To: Mangi, Adeel A. (x2563)
Subject: RE: In re AWP


Adeel,

I have forwarded the information about the missing data to Oxford and will await their response.  I have left a message with Oxford via e-mail and telephone with respect to the deposition.  I will let you know something as soon as I hear something from Oxford.  They have been hanndling most of this internally.

Mark M. Sandmann

502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or
entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is governed by
applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of this information is STRICTLY PROHIBITED.  If
you have received this message in error, please notify us immediately
and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 10/27/05 01:24PM >>>

Mark:

Thank you for your email.

First, rearding depositions, Jessica's email of July 7, 2005 (below)
sets forth our position.  To ensure there is no confusion, however, I
note that you appear to be conflating two separate litigations:  the
Lupron litigation against TAP and the AWP MDL litigation, which is
against the industry.  Please also be advised that the MDL court has
previously ordered depositions to proceed against other health plans
that similarly refused to produce witnesses (e.g. Aetna, Cigna and
Humana) in response to motions to co of this message is not the intendempel.

Second, regarding document production, Oxford has produced 476 pages of
documents to date, which are indexed below for your reference.  Oxford
also produced a CD of electronic claims data.  The documents and data
that were outstanding from Oxford were listed in Jessica's letter to you
of June 28, which I am attaching here.  As to the categories listed in
that letter, it is my understanding that Oxford has represented it has
already produced a representative sample of physician fee schedules
(category 3) and that will be tested at deposition.  The remaining
categories are still outstanding.  Please be advised that this is a
narrowed scope of production and the court has already ordered broader
discovery from other health plans in response to motions to compel (see
e.g. Health Net motion to compel).

Finally, to faciliate the fee schedule and medical claims data pulls
detailed in the June 28 letter, I include for your reference the most
updated list of physician administered drugs in suit and their
corresponding J-codes.  Note the data pulled must include not just drug
reimbursements but also any related reimbursements relating to physician
services or administrations.  While these can often be pulled be
reference to drug reimbursements in the system, I include a list of
frequently used adminstration codes for your reference.  The CD already
produced by Oxford had some drug-specific medical claims data but no
information on corresponding adminstration fees.

I look forwad to hearing from you.

Best regards

Adeel


Bates Range     Description
OXF 000001-000070     Prescription Drug Administrative Services
Agreement between Oxford and Merck -Medco effective 9/7/01.
OXF 000071-000081     First Amendment to the Prescription Drug

Administrative Services Agreement of 9/7/01 between Oxford and
Merck-Medco.
OXF 000082-000086    Oxford Health Plans Attachment A to Primary Care
Physician Application Form
OXF 000087-000089    Oxford Health Plans Attachment A to Consultant
Physician Application Form (Consultant Physician Agreement).
OXF 000090-000092    February, 1993 Oxford Health Plans Attachment A
to Consultant Physician Application Form (Consultant Physician
Agreement).
OXF 000093-000097    April, 1996 Oxford Health Plans Attachment A to
Consultant Physician Application Form (Consultant Physician Agreement).
OXF 000098-000102    1/13/97 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000103-000108    4/3/97 Oxford Health Plans (NY), INC. Consultant
Physician Agreement.
OXF 000109-000113    4/10/97 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000114-000123    3/31/98 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000124-000125    9/1/98 Provision additions to the Agreement
currently in force between Provider and Oxford
OXF 000126-000134    6/12/98 Oxford Health Plans (NY), INC.
Consultant Physician Agreement.
OXF 000135-000150    2/3/99 Oxford Health Plans (NY), INC. Consultant
Physician Agreement.
OXF 000151-000161    May, 2000 Oxford Health Plans (NY), INC.
Participating Consultant Physician Agreement.
OXF 000162-000174    5/4/01 Oxford Health Plans (NY), INC.
Participating Consultant Physician Agreement.
OXF 000175-000188    Oxford Health Plans (CT), INC. Participating
Consultant Physician Agreement for year 2000
OXF 000189-000205    Oxford Health Plans (CT), INC. Participating
Consultant Physician Agreement for September, 2002.
OXF 000206-000223    6/2/04 Investors Guaranty Life Insurance Company
d/b/a Oxford Health Plans (CT), INC.Participating Consultant Physician
Agreement.
OXF 000224-000241    6/1/04 Inv of this message is not the intendeestors Guaranty Life Insurance Company
d/b/a Oxford Health Plans (CT), INC. Participating Consultant Physician
Agreement.
OXF 000242-000270    8/7/03 Oxford Health Plans (NJ), INC.
Participating Primary Care Physician Agreement.
OXF 000271-000299    8/7/03 Oxford Health Plans (NJ), INC.
Participating Primary Care Physician Agreement.
OXF 000300-000321    5/29/01 Oxford Health Plans (NY), INC./Oxford
Health Insurance, Inc. Participating Primary Care Physician Agreement.
OXF 000322-000343    5/29/01 Oxford Health Plans (NY), INC./Oxford
Health Insurance, Inc. Participating Consultant Physician Agreement.
OXF 000344-000360    6/1/04 Oxford Health Insurance, Inc.
Participating Consultant Physician Agreement.
OXF 000361-000377    6/1/04 Oxford Health Insurance, Inc.
Participating Primary Care Physician Agreement.
OXF 000378-000412    3/1/97 Managed Pharmaceutical Benefit Agreement
between Oxford Health Plans INC. and PCS Health Systems, INC.
OXF 000413-000414    Clinical Programs Schedule
OXF 000415-000436    Exhibit N - Target Costs: Created with the goal
of giving Diversified an incentive to assist Oxford in achieving certain
cost containment objectives for the Benefits Plans in the Lines of
Business listed in Exhibit B as being subject to Exhibit N.
OXF 000437-000444    2/14/92 Letter of agreement setting forth the
terms  whereby the Provider will provide services to member of Oxford's
medical plans ("Members")
OXF 000445-000462    8/12/96 Letter of agreement setting forth the
terms  whereby the Provider will provide services to member of Oxford's
medical plans ("Members")

OXF 000463-000476    5/19/95 Letter of agreement setting forth the
terms  whereby the Provider will provide services to member of Oxford's
medical plans ("Members")

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Thursday, October 27, 2005 10:16 AM
To: Mangi, Adeel A. (x2563)
Subject: RE: In re AWP


Adeel:
I resonded to the e-mail that was forwarded to me by Mark Fischer.  I
am going to check my "sent e-mails" to see if it is still retained on my
system and not archived.

As far as Jessica's recollection of the events, she was told that this
was the only day that that individual was available to be deposed.  Wew
worked for several weeks on getting that date and it was the Defendants
who porposed that date and the timing of the deposition.  The protective
order issue was only brought up on  the eve of her deposition.

As for the documents, let me know what has been produced.

Finally, I will call Oxford this morning to see if they want to fight
the Motion to Compel, or produce the witness a second time (She was
already in NYC when the deposition was cancelled by Def.)  At the time
the deposition was cancelled, it was Oxford's position that they had
complied with the order of the court in agreeing to produce a witnmess
on a date convenient to the Defendnats and that they did so.  I will see
what latitude they may be willing to offer.n Ag

Finally, I was not involved in the document production.  Have they
produced anything in response to the subpoena on that front?

Take care.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or
entity to which it is addressed and may contain information that is
privileged and confidential, the disclosure of which is governed by
applicable law.  If the reader of this message is not the intended
recipient, or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination,
distribution or copying of th of this message is not the intendeis information is STRICTLY PROHIBITED.  If
you have received this message in error, please notify us immediately
and delete the related message.


>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 10/27/05 09:55AM >>>
Mark:
(1) Please clarify when and how you previously responded to my emails
and voicemail.  I have received no messages, eails or letters from you
that I am aware of.
(2)  Your contention regarding depositions is inaccurate.  I am pasting
below again Ms. Cortes' email of July 7, 2005 regarding that issue to
refresh your recollection.  Nonetheless, if your position remains that
Oxford is refusing to produce a witness because it produced one in the
separate Lupron litigation then we will have to move to compel.  I
assume from your email that meet and confer obligations have been
satisfied, please let me know if your disagree.

(3) I also understand from your email that Oxford is refusing to produce the additional responsive documents and data it has responsive to the subpoena. Please similarly let me know if you disagree that meet and confer obligations on this point have also been satisfied so we can tee up this issue for resolution as well.
(4) Discovery from the Track 1 defendants closed on August 31. That does not relate to third party discovery, nor does it relate to track 2 discovery, and this subpoena was served on behalf of all defendants. See CMO 13.

Best regards
Adeel

-----Original Message-----
From: Cortes, Jessica Golden (x2017)
Sent: Thursday, July 07, 2005 7:46 PM
To: 'Mark Sandmann'; Cortes, Jessica Golden (x2017)
Cc: Mark Fischer; Mangi, Adeel A. (x2563)
Subject: RE: RE: FW: In re AWP


Mark, your recollection is inaccurate. On September 9, 2004, you gave us two "options", either to attend the Lupron deposition and depose the witness immediately following, or to schedule the deposition for another time. If you will recall, defendants explained to you at that time that two different protective orders governed each case and needed to be strictly adhered to, such that your proposal for MDL defendants to attend the Lupron deposition and to question the witness subsequently, feeding off the Lupron deposition, was not acceptable. For the convenience of the witness, we then offered to depose the witness the day after her Lupron deposition to prevent subsequent travel or assle, but you refused to produce the witness. If Oxford continues to take this position, defendants will move to compel immediately.

-----Original Message-----
From: Mark Sandmann [mailto:MMS@rawlingsandassociates.com]
Sent: Thursday, October 27, 2005 9:48 AM
To: Mangi, Adeel A. (x2563)
Cc: Mark Fischer
Subject: Re: In re AWP


I did respond to your e-mail and voicemail. It is the position of Oxford, once again, that Oxford had made available an individual for deposition last year. The day before her deposition was to be taken, Ms. Golden Cortez cancelled the same. We were doing by agreement and that that was your one shot to take it. Further, it is my understanding that discovery is closed in this matter. If I am mistaken please let me know.

Mark M. Sandmann
502.814.2157

IMPORTANT WARNING: This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information of this message is not the intendeis STRICTLY PROHIBITED. If you have received this message in error, please notify us immediately and delete the related message.

>>> "Mangi, Adeel A. (x2563)" <AAMANGI@PBWT.COM> 10/27/05 09:41AM >>>

 Please see attached letter.
 <<sandmanletter.pdf>>

------------------------------------------------------------------------
------

Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internt email for messages of
this kind.

------------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
========================================================================
======


------------------------------------------------------------------------
------

Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.

------------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
========================================================================
======


------------------------------------------------------------------------
------

Privileged/Confidential Information may be contained in thi message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message

and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.

----------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The forego of this message is not the intendeing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
========================================================================
======

----------------------------------------------------------------------
------

Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.

----------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The forgoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
========================================================================
======

----------------------------------------------------------------------
------

Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.

----------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter

9

addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
============================================================
======



------------------------------------------------------------------
------
Privileged/Confidential Information may be contained in this message.
If you are not the addressee indicated in this message (or responsible
for delivery of the message to such person), you may not copy or deliver
this message to anyone.  In such case, you should destroy this message
and kindly notify the sender by reply email.  Please advise immediately
if you or your employer do not consent to Internet email for messages of
this kind.


------------------------------------------------------------------
------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including any attachments or enclosures) was not intended
or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter
addressed in this communication.  (The foregoing disclaimer has been
affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)o of this message is not the intende
============================================================
======



------------------------------------------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you are not the addressee indicated in this
message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone.
In such case, you should destroy this message and kindly notify the sender by reply email.  Please advise immediately if
you or your employer do not consent to Internet email for messages of this kind.


------------------------------------------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this communication (including any attachments or enclosures)
was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this
communication.  (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax
practitioners.)
==================================================================================

   

CORR_ 20050628   Administration or
to Sandmann re ...   Service fees...