**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 ) ) ) | Chief Mag. Judge Marianne B. Bowler |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO COMPEL THIRD PARTY OXFORD HEALTH PLANS TO PRODUCE
DOCUMENTS AND WITNESSES FOR DEPOSITION PURSUANT TO
SUBPOENA AND FOR RECOVERY OF ATTORNEY FEES AND COSTS**

Defendants to the Amended Master Consolidated Class Action Complaint respectfully bring this motion to compel third party Oxford Health Plans ("Oxford") to produce documents and witnesses for deposition pursuant to the subpoena served upon Oxford on April 19, 2004, and for recovery of attorney fees and costs.

## PRELIMINARY STATEMENT

This motion is unlike any of the previous motions to compel third party health plans heard by the Court. Oxford's counsel acknowledges that the documents and testimony sought should be produced and has repeatedly assured defendants that production is forthcoming. Oxford has not made any claims or burden or sought in any other way to excuse itself from production. But Oxford is now simply refusing to acknowledge or respond to *its own counsel*. Instead, it is ignoring this subpoena, defendants' counsel and its own counsel in the apparent hopes that they will all go away. Oxford has finally adopted this "position" after two full years of delay, wherein it repeatedly staved off motions to compel through production assurances, but then failed to make any productions. Oxford has now adopted this outrageous position despite being notified that it leaves defendants with little option but to file a motion seeking costs and fees.

## ARGUMENT

### I.  Oxford Has Accepted the Scope of Its Production Obligations But Has Failed to Produce Documents

Oxford has never stated that it will not comply with the subpoena. Nor has Oxford sought a protective order or even put forward any reasons to excuse production. To the contrary, Oxford has repeatedly assured defendants that production is imminent. But Oxford has failed to produce any documents.

2

1262921v1

The subpoena at issue was served on Oxford on April 19, 2004.  *See* Declaration of Adeel Mangi ("Mangi Dec.") Ex. 1.  After serving Oxford, defendants entered into a prolonged period of negotiation with Oxford's counsel.  During that process, defendants substantially narrowed the scope of the documents sought from Oxford.  This process included the exchange of numerous letters, emails and telephone conferences where defendants sought to work with Oxford to address any claims of burden and to narrow the scope of documents sought to those absolutely necessary to defend against plaintiffs' claims.  (Mangi Dec. ¶ 5).

Oxford did then make one small production.  This consisted of 476 pages of contracts and a CD of claims data.  (Mangi Dec. ¶ 6).  This production, however, did not satisfy even defendants' narrowed document demands.  For example, the documents produced did not even reveal the rates at which Oxford reimburses physicians administering drugs in office for drugs or services, how those rates are determined, or the extent of Oxford's knowledge regarding the AWP benchmark or differences between its reimbursement rates and physicians' drug acquisition costs.  Similarly, the data produced lacked specific fields necessary to render it useable.  (Mangi Dec. ¶ 7).

Defendants then engaged in continued negotiations with Oxford to get supplemental production of missing documents, data and deposition testimony.  This again included emails, letters and telephone conferences.  On June 28, 2005 defendants sent Oxford a letter detailing the outstanding production demands and seeking a prompt production.  (*See* Mangi Dec. Exhibit 3).  Oxford responded on June 29, 2005 saying it would respond the following week, but did not do so.  (Mangi Dec. ¶ 8).

Thereafter Oxford settled into a pattern of purposeful delay designed to avoid all production obligations.  Oxford generally ignored communications from defendants for weeks.

3

When finally forced to respond by follow up calls and emails from defendants, Oxford would agree to make production and seek additional time to do so.  Weeks would again pass, but nothing would be produced.  Defendants would then make further follow up inquiries and receive further assurances of production.  This cycle continued for some seven months.  Defendants threatened numerous motions to compel but withdrew them in each instance upon receiving assurance of production.  (Mangi Dec. ¶ 8).

A few examples of this pattern are illustrative.  Despite Oxford's July 29, 2005 assurance that they would respond "next week" they did not do so.  Defendants followed up by phone and email numerous times, but received only one incomplete response in July saying counsel would speak to Oxford "tomorrow."  Oxford then ignored follow up correspondence from defendants dated September 21 and October 3 of 2005.  (Mangi Dec. ¶ 10).  Numerous voicemails later, Oxford finally responded on October 23, 2005.  Oxford sought additional information regarding previous productions and what was outstanding and defendants supplied that information on October 27, 2005.  Counsel for Oxford then said they had messages into Oxford and would get back to defendants.  They did not.  Defendants heard nothing and sent a follow up query on November 4, 2005.  Oxford then replied and promised a response by the end of the week.  A week came and went and again defendants heard nothing.  Defendants again emailed Oxford on November 14, 2005 and received in response another assurance that counsel would be "talking to Oxford today about this very issue."  Counsel for Oxford also assured defendants "I do not think it is so much a refusal as it is an internal issue on who is going to handle this."  (Mangi Dec. ¶ 11).  This pattern continued for months even after that.  (Mangi Dec. ¶¶ 11-12).

4

1262921v1

On January 24, 2005 defendants had a phone conference with counsel for Oxford. During that call, all outstanding production issues were finally resolved and Oxford agreed to commence production promptly. Once again, however, weeks passed and nothing happened. (Mangi Dec. ¶¶ 13-14).

On February 10, 2006 defendants wrote to Oxford stating (*see* Mangi Dec. Exhibit 7):

> Mark: It has now been almost 3 weeks since our call of the 24th. During that call, we had worked through all outstanding issues. My understanding was you would talk to your client and get production rolling and let us know of any outstanding issues. I emphasized that the one situation we could not accept was a repeat of the past pattern, where we would receive a production assurance and then nothing would happen for weeks. You assured me this would not happen again. But we are yet to see any documents or hear back from you.

Again Oxford responded apologizing for the delay and saying "we will have data and the additional responses we discussed to you before the end of the month." *Id.* In response, defendants emphasized the important of prompt production (*id.*):

> We look forward to receiving the supplemental productions we have requested from Oxford by the end of the month and will schedule the deposition shortly thereafter. Please be advised that due to the summary judgment schedule that time frame is inflexible and we are relying on your representation that production will be completed by that time.

Again, defendants received nothing from Oxford. Finally, on March 1, 2006 counsel for Oxford emailed defendants saying **"I have not received anything from Oxford. Do what you must. I tried."** (*See* Mangi Dec. Exhibit 9) (emphasis added). Counsel for Oxford also asked to be provided a draft motion prior to this being filed, stating (Mangi Dec. Exhibit 10):

5

> I do not know to what extent they have attempted to [sic] proivide the information, data, etc. and maybe that will get their attention and at least let me know what, if anything, they have done.  Heck, they may be close to getting it all together as far as I know--I am just not getting responses back

Defendants emphasized that we would be forced by Oxford's position to file a motion to compel seeking costs and fees.  Counsel for Oxford emphasized that he had made Oxford aware of this fact.  (*See* Mangi Dec. Exhibit 10).

Oxford's position is especially egregious given that this court has previously ordered numerous Health Plans to produce exactly the same data, documents and testimony sought here.  For example, this Court has ordered Aetna, Cigna and Humana to produce deposition witnesses, ordered Health Net to produce documents and data in response to defendants' subpoena, compelled Blue Cross Blue Shield Of Massachusetts, Carefirst Blue Cross Blue Shield, Hawaii Medical Service Association, Excellus Blue Cross Blue Shield, Blue Cross Blue Shield Of Vermont and Mutual Of Omaha Insurance Company to produce documents and witnesses, and compelled Empire Blue Cross Blue Shield to produce a witness for deposition. **This Court has even ordered Oxford's parent United Health Care to produce documents and witnesses for deposition.**  The Court directed that these depositions to proceed on the same issues that defendants hope to address with Oxford.  Some of those Health Plans were ordered to produce an even broader set of documents (as many of those demands encompassed self administered drugs as well) than those that Oxford is refusing to produce here.  (Mangi Dec. ¶ 16).  The documents sought are narrowly defined, directly relevant, and go to the core of plaintiffs' claims.

**II.    Oxford's Conduct Justifies The Award
        of Attorney Fees and Costs**

Oxford has decided to purposefully ignore this subpoena and even its own counsel's good faith efforts to contract it to arrange production.  It has done so without putting forward any excuses and despite defendants' efforts over almost two years to facilitate production.  This extreme position merits the imposition of an award of attorneys fees and costs.  Pursuant to Fed. R. Civ. P. 37(a)(4)(A):

> If the motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified.

*See also Aetna Casualty & Surety Co. v. Rodco Autobody*, 130 F.R.D. 2, 4 (D. Mass. 1990) (awarding costs, including attorney's fees, incurred in obtaining an order compelling non-party to comply with deposition subpoena).  *C.f.* Fed. R. Civ. P. 45(e) ( "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.").

### III. An In-House Representative of Oxford Health Plans Should Be Ordered To Attend Oral Argument

Given the extraordinary circumstances necessitating this motion, defendants request that the Court order a responsible in-house representative from Oxford to attend oral argument on this motion.

### CONCLUSION

Defendants respectfully request that this Court hold Oxford to the same standard as the other third parties subpoenaed in this litigation, compelling them to produce all documents responsive to defendants' outstanding subpoena, and to produce witnesses for deposition. Defendants further ask that the Court respond to Oxford's blatant disregard for the subpoena served upon it through the imposition of an award of attorney costs and fees.

Dated:  New York, New York
        March 17, 2006

Respectfully submitted,

/s/ Andrew D. Schau
Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for defendants Johnson & Johnson, Centocor Inc. and Ortho Biotech Products L.P. on behalf of all defendants to the Amended Master Consolidated Class Action Complaint*

## CERTIFICATE OF SERVICE

I certify that on March 17, 2006 a true and correct copy of the forgoing Memorandum Of Law In Support Of Defendants' Motion To Compel Third Party Oxford Health Plans To Produce Documents And Witnesses For Deposition Pursuant To Subpoena And For Recovery Of Attorney Costs And Fees was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.  I further certify that on March 17, 2006 a copy was served on counsel for third party Oxford Health Plans via Federal Express.

                                        /s/ Andrew D. Schau
                                        Andrew D. Schau