UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) ) ) |
| | Judge Patti B. Saris |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION
TO COMPEL PRODUCTION BY AMGEN INC.**

## I.     INTRODUCTION

Plaintiffs submit this reply memorandum in further support of their second motion to compel against Amgen Inc. ("Amgen").  That motion was filed and served on February 27, 2006. Amgen has agreed not to oppose plaintiffs' request that the Court permit plaintiffs to file, and that the Court consider, this reply.

## II.     REPLY ARGUMENTS IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

**A.     Omnibus requests for production**

Notwithstanding all of Amgen's evasions and finger-pointing, the fact is that it has failed to meet its discovery obligations, both as set forth in the civil rules and in this Court's CMO No. 10.  As a consequence, at this late date, plaintiffs do not have all of the discoverable materials they requested years ago.  Furthermore, because plaintiffs do not yet have all of the materials they requested from Amgen, plaintiffs still cannot identify all of the Amgen-related witnesses whom they should depose, nor can they conduct appropriate and comprehensive follow-up discovery.  This is a serious situation requiring the Court's intervention.

CMO No. 10 mandated specific behavior on the part of Amgen.  Again, in pertinent part it provided:

A responding party to an initial document request shall complete production of all documents within sixty (60) days of service of such request.  Any dispute over the document request (i.e., overbreadth or burden) shall be presented to the magistrate judge within 30 days after service of the request after the parties have conferred.  Even if there is a dispute over a document request, the undisputed documents shall be produced within 60 days.

***This Court's order placed the burden squarely on Amgen, as the responding party, to have acted***.  Yet it is undisputed that Amgen ***did not*** complete production within 60 days of service of plaintiffs' Omnibus Requests; ***did not*** ever challenge plaintiffs' document requests before the Magistrate, let alone within 60 days of service of plaintiffs' requests for production; and ***did not*** produce undisputed documents within the 60 days specified.  ***In fact, Amgen did not produce a single document until October 31, 2005, a full year and seven months after plaintiffs served their Omnibus Requests on Amgen, and only 33 days before the then-scheduled discovery cutoff of December 3, 2005***.[1]  And even if the Court takes into account Amgen's plea that "[i]t was not until the Court's final order in February 2005 that it was clear that Amgen would even remain in the case," it was more than ***eight months*** after the Court's February 2005 order that Amgen produced even one page to plaintiffs.  Furthermore, it would not be until ***January 30, 2006, almost two months after the December 3, 2005 discovery cutoff***, that Amgen would declare its production complete.[2]

Two Amgen admissions underscore the outrageousness of Amgen's behavior.  First, Amgen states that it "swept" for responsive documents ***in or around January 2004***.  (Memorandum in Support of Plaintiffs' Second Motion To Compel Production by Amgen Inc., With Request for Expedited Briefing and Disposition at p. 4.)  Second, Amgen states that it

---

[1] The parties' motions to extend the Track Two discovery cutoff are pending before Judge Saris.

[2] Since that time, Amgen has agreed to broaden the scope of its production.  Plaintiffs look forward to receiving the additional material recently promised by Amgen.  But Amgen does not go far enough with its recent pledges, necessitating the instant motion.

001534-16 99149 V1

began reviewing documents *in June 2005*.  (*Id.*)  Yet plaintiffs would see no documents until October 31, 2005, even as the discovery cutoff loomed.

Not surprisingly, given its own inexcusable behavior, Amgen points the finger at plaintiffs.  But again, CMO No. 10 was clear: ***it placed the burden for keeping discovery moving squarely on the shoulders of the responding party, and it required very specific actions on the part of the responding party.***  Amgen acted at its peril in ignoring the Court's mandate, no matter what the excuse.  If instead of undertaking a strategy of delay Amgen truly believed that it had sustainable objections to the scope and breadth of plaintiffs' Omnibus Requests, then it could have and should have threatened and then filed a motion to limit plaintiffs' requests for production, as the civil rules and CMO No. 10 contemplate.  Instead, Amgen purports to have hoped that plaintiffs would acquiesce, even as the clock ticked toward and then well-past the time by which Amgen should have sought definitive relief as to its objections.

Amgen did not act as it was required to do.  Rather, Amgen perceived that plaintiffs and their lawyers were occupied with the tremendous amount of work to be done in this case, both with regard to the Track One defendants and its fellow Track Two defendants, and saw an opportunity to run out the clock.  For again, Amgen could have forced—and had a duty under CMO No. 10 to force—the issue with regard to any truly good objections it believed it had to plaintiffs' requests for production.

Surmising that Amgen had a strategy of running out the clock takes no great leap.  What else is to be believed given the chronology of events and the fact that Amgen still has not made a substantive case for why it should not respond fully to plaintiffs' Omnibus Requests?  For example, Amgen has not shown, and cannot show, any extraordinary or unique burden attending a complete response to plaintiffs' Omnibus Requests.  Furthermore, Amgen has not shown why,

001534-16  99149 V1

in a case in which the Court has already decided that class periods extend from 1991 through the present as to one class, and from 1991 through January 1, 2005, as to others, it should not have to respond to discovery to the full extent of the time-scope set forth by plaintiffs.

In fact, Amgen cannot point to any agreement between plaintiffs and any defendant to limit discovery to the 1997-2001 time-frame.  While some defendants have attempted to limit discovery, or categories of discovery, to that time-frame, plaintiffs have never agreed to such a limitation with any defendant.

More importantly, plaintiffs have never agreed to Amgen's attempted time-scope limitation.  Amgen points to an April 21, 2005 letter from one of plaintiffs' lawyers, Steve Berman, to one of Amgen's lawyers, in which plaintiffs' counsel indicated that plaintiffs did not agree with Amgen's time-scope objection as to four particular requests for production.  Amgen suggests that the cited passage of the April 21, 2005 letter means that plaintiffs only disagreed with Amgen's attempted time-scope limitation as to those four discovery requests.  (Amgen Inc.'s Opposition to Plaintiffs' Second Motion To Compel Production ("Amgen Opp.") at p. 5.) But the letter does not say anything along the lines of what Amgen suggests, and plaintiffs' counsel *never* indicated that plaintiffs acquiesced in Amgen's time-scope objection to the tens of other discovery requests making up plaintiffs' Omnibus Requests.  (Supplemental Declaration of Steve W. Berman in Support of Plaintiffs' Second Motion To Compel Production by Amgen Inc. ("Berman Decl."), ¶ 2.)  In fact, counsel for Amgen admits that the subject of Amgen's attempted time-scope limitation simply never came up during the parties' May 27, 2005 meet-and-confer that followed transmittal of the April 21, 2005 letter.  (Declaration of Joseph H. Young, ¶ 14; Declaration of Steven F. Barley, ¶ 6 (both declarations submitted in response to plaintiffs' second motion to compel); Amgen Opp. at p. 6.)

- 4 -

Rather, plaintiffs' counsel cited the four requests for production as a preliminary matter. (Berman Decl., ¶ 2.)  These were objections that plaintiffs wanted to address at the outset, even with regard to what was supposed to be Amgen's first wave of production.  (*Id.*)  For again, at that point, Amgen had produced nothing in response to plaintiffs' Omnibus Requests.

Moreover, contrary to Amgen's assertion, plaintiffs have never agreed that samplings of document categories would suffice for all time.  (*Cf.* Amgen Opp. at nn. 4-5.)  Amgen asserts that a "list," or memorandum, that plaintiffs' counsel gave to Amgen's counsel in advance of their May 2005 meet-and-confer supplanted plaintiffs' Omnibus Requests.  (*Id.* at n.4.)  But that memorandum itself states that it was only meant as a reference point for the initial wave of discovery.  (Declaration of Robert F. Lopez in Support of Plaintiffs' Second Motion To Compel Production of Documents by Amgen Ex. E (submitted with plaintiffs' opening papers).)  Counsel for plaintiffs never said otherwise.  (Berman Decl., ¶ 3.)  So even if the memorandum spoke in terms of substituting samplings for the actual range of document sought in the Omnibus Requests—which it does not—it could not form the basis for Amgen's claims that it could simply offer up samplings within document categories and be relieved of any further obligation.

Nor can Amgen claim that the parties ever agreed that Amgen could submit samplings of documents and be done with the process for all time.  And in fact, Amgen does not so claim. Looking at footnote five (n.5) of Amgen's opposition brief, and at the supporting Young and Barley declarations submitted with that brief, neither Amgen or its lawyers ever state that sampling was to be sufficient for all time.  Rather, any samplings from limited document categories were to be for preliminary purposes only, and plaintiffs always reserved the right to ask for all additional responsive documents in the sampled categories.  (Berman Decl. ¶ 4.)

Serious problems have arisen, however, due to Amgen's conduct with sampling.  First, Amgen still has not responded definitively or comprehensively to plaintiffs' request that it clarify exactly where it has produced mere samples in response to plaintiffs' document requests. Second, Amgen did not produce a single document until a month before the December 3, 2005 discovery cutoff, and it did not purport to "complete" its production until January 30, 2006, even as it has recently agreed to produce more responsive documents at some indeterminate point in the near future.  This has made it impossible to use sampling in any document category as a waypoint of getting plaintiffs all of the materials to which they are entitled as they press forward with their case.  Now that the parties are well past the original discovery cutoff and on the fast track to motions practice and trial, it is too late to employ a sampling methodology as a means to full production.  Rather, due to its own choices, Amgen has made it impossible for plaintiffs to accept samplings even as a preliminary measure.  There is no more time for dribs and analysis and further drabs.  Now, as plaintiffs request, the Court should order Amgen to produce all responsive, non-privileged materials, so that the plaintiffs can review the materials and get on with any necessary follow-up discovery, including depositions, as soon as possible.

**B.       Requests for documents made with notices of deposition**

As plaintiffs have advised, they served Amgen with notices of deposition directed at Amgen's employees, or former employees, in mid-January 2006.  Almost certainly they will have to serve more deposition notices as to former or current Amgen employees, as well as (other) third-parties, as review of Amgen's production continues.  Quite obviously, plaintiffs could not know whom they would need to depose in terms of issues raised by Amgen's production, or otherwise, where the production identified potential witnesses, until plaintiffs had Amgen's production in-hand.

- 6 -

Given that Amgen did not begin its document production until October 31, 2006; that its slow-rolling production was not "complete" until the end of January 2006; and that it has promised to produce yet more responsive materials sometime in the future, it is outrageous that Amgen should argue now that plaintiffs should be foreclosed from making non-extensive document requests of deponents.  The law allows such requests, as this Court has recognized. *See Carter v. United States*, 164 F.R.D. 131 (D. Mass. 1995); Fed. R. Civ. P. 30(b)(5).  Plaintiffs should not be further injured by Amgen's violations of the civil rules and CMO No. 10 in terms of its dilatory and incomplete production, and Amgen's objections on behalf of its employees or former employees (if they would be proper in any circumstances) should be overruled.  The limited range of documents should be produced as requested.

**C.      Request for sanctions**

Plaintiffs have demonstrated Amgen's dereliction of duty both under the civil rules setting forth discovery obligations and under this Court's very specific CMO No. 10.  They have also shown how Amgen cynically invoked this Court's name to avoid meeting discovery obligations in a case in Arizona.[3]  Amgen's manifest strategy to run out the clock, and to act as if the rules do not apply to it, all the while doing far less to meet its obligations than other defendants have done to meet theirs, should not be countenanced.  If sanctions do not issue, Amgen's strategy will be rewarded, even as the plaintiffs suffer and this Court sees one of its orders flouted, all against a backdrop where Amgen can show no good reason for avoiding its responsibilities.

---

[3] The record, submitted with plaintiffs' first motion to compel against Amgen, and referenced in plaintiffs' second motion to compel against Amgen, speaks for itself.  In September 2004 and later, Amgen invoked "ongoing discovery" supposedly occurring in this case as a means of avoiding its discovery obligations in the *Swanston* case. Of course, Amgen was not doing anything to meet its discovery obligations in this case at the time in question. Indeed, the letters attached to Mr. Barley's declaration show that it was not until February 2, 2005, that Amgen acknowledged, by way of one of his letter, that it had produced nothing to plaintiffs in this MDL case.

Sanctions should issue as requested.  Further, the Court should order Amgen to pay plaintiffs the costs, including attorneys' fees, of litigating the instant motion.

### III.    CONCLUSION

For all of the reasons expressed in this brief, and those expressed in their opening memorandum, plaintiffs respectfully urge the Court to issue an order:

a)  compelling Amgen to begin a rolling production immediately of ***all*** responsive and non-privileged documents and other materials, including data, not yet produced but called for by plaintiffs' Omnibus Requests for Production; plaintiffs' IMS discovery requests; and plaintiffs' limited document requests made of Amgen employees (or former employees) whose depositions plaintiffs have noted or will note upon completion of review of Amgen's production, and to complete that production no later than April 15, 2006;

b)  requiring Amgen to pay a sanction of $100,000.00 to the plaintiffs, or, in the alternative, to the Court, for Amgen's flagrant disregard of CMO No. 10 and its obligations under the Federal Rules of Civil Procedure, which conduct has prejudiced plaintiffs as they prepare for trial and otherwise prosecute this case, and for its manipulation of the discovery process; and

c)  requiring Amgen to reimburse plaintiffs for the costs, including attorneys' fees, incurred in filing and litigating the instant motion.


DATED:  March 17, 2006                    By____/s/ Steve W. Berman_____
                                                         Thomas M. Sobol (BBO#471770)
                                                         Edward Notargiacomo (BBO#567636)
                                                    Hagens Berman Sobol Shapiro LLP
                                                    One Main Street, 4th Floor
                                                    Cambridge, MA  02142
                                                    Telephone: (617) 482-3700
                                                    Facsimile: (617) 482-3003
                                                    **LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16 99149 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL PRODUCTION BY AMGEN INC.** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 17, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By **/s/ Steve W. Berman**
    Steve W. Berman
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292

- 11 -

001534-16 99149 V1