# EXHIBIT L

DISTRICT OF MASSACHUSETT

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>CHRISTINE DRISCOLL, and<br>STATE OF CALIFORNIA ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>STATE OF DELAWARE ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>DISTRICT OF COLUMBIA ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>STATE OF FLORIDA ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>STATE OF HAWAII ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>STATE OF ILLINOIS ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>COMMONWEALTH OF MASSACHUSETTS,<br>ex rel. CHRISTINE DRISCOLL and<br>FRANK GARCIA,<br>STATE OF NEVADA ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>STATE OF TENNESSEE ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA,<br>STATE OF TEXAS ex rel. CHRISTINE<br>DRISCOLL and FRANK GARCIA, and<br>COMMONWEALTH OF VIRGINIA ex rel.<br>CHRISTINE DRISCOLL and<br>FRANK GARCIA,<br><br>Plaintiffs<br><br>v.<br><br>SERONO INC., SERONO LABORATORIES, INC.,<br>ARES-SERONO, S.A., SERONO, S.A. <br><br>Defendants | C.A. No. 00-11680GAO<br>(UNDER SEAL) |

THIRD AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL

**Introduction**

1.      This is a civil action alleging violations of the Federal False Claims Act ("FCA"), 31

U.S.C. § 3729 *et seq.*, and of analogous State qui tam statutes.

2.      This action is brought on behalf of the United States by the Relator Christine Driscoll

("Driscoll") pursuant to 31 U.S.C. § 3730(b) and on behalf of the States of California,

Delaware, Florida, Hawaii, Illinois, Massachusetts, Nevada, Tennessee, Texas, and

Virginia and the District of Columbia (hereafter, collectively, "the States") by the Co-

Relators Christine Driscoll and Frank Garcia ("Driscoll and Garcia") under the States'

respective qui tam statutes.

**Jurisdiction and Venue**

3.      This Court has jurisdiction over this action under the Federal FCA, 31 U.S.C. §§ 3732(a)

and 3730(h), and 28 U.S.C. §§ 1331 and 1345, and has pendent jurisdiction over the state

claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

4.      Venue is proper in this district because the Relator Driscoll resides in this judicial district,

the defendants transact business in this judicial district, and/or acts proscribed by the

Federal FCA have been committed by the defendants in this judicial district.

**Parties**

5.      Relator Driscoll is a former employee of Serono, currently residing in Marshfield,

Plymouth County, Massachusetts.

6.      Relator Garcia is a former employee of Serono, currently residing in Greenwich, Fairfield

County, Connecticut.

7.      Relator Driscoll has personal knowledge of the facts asserted herein as to claims arising

under the FCA except in those instances where facts are asserted upon information and

belief, in which case the assertions are made in good faith after reasonable investigation

and are believed to be true. The Co-Relators Driscoll and Garcia have personal

knowledge of the facts asserted herein as to claims arising under the States' qui tam statutes except in those instances where facts are asserted upon information and belief, in which case the assertions are made in good faith after reasonable investigation and are believed to be true.

8.  Relators Driscoll and Garcia are original sources under the Federal FCA and analogous State qui tam statutes. For purposes of this action, Driscoll and Garcia are co-relators with respect to the pendent state claims outlined below in Counts 7-44.

9.  Defendant Serono, Inc. and, on information and belief, Serono Laboratories, Inc., are corporations organized and existing under the laws of the State of Delaware. Their principal place of business is located at One Technology Place, Rockland, Massachusetts.

10. Serono Inc. is the North American affiliate of defendant Ares-Serono, S.A. ("Ares-Serono"), on information and belief, a corporation duly organized by law with a principal place of business located in Geneva, Switzerland. Ares-Serono is a fully integrated global biotechnology corporation which manufactures, distributes and sells pharmaceutical products, particularly pharmaceuticals using recombinant genetic engineering. In May 2000, Ares-Serono, S.A. was renamed Serono, S.A. Except where the context otherwise requires, all Serono entities are referred to herein as "Serono."

11. Serono is a manufacturer, distributor and seller of pharmaceutical products in the United States.

12. 

13.





22.

23.

**Food and Drug Administration Approval: The $36,000 Cap and Phase IV Study**

24.     On or about September 11, 1995, Serono submitted to the Food and Drug Administration

("FDA") of the United States a New Drug Application ("NDA") seeking FDA approval to

distribute and sell in the United States a drug identified by Serono as "Serostim."

25.     Serostim is the proprietary name or trademark given by Serono to the pharmaceutical

product identified by the generic name "Somatropin."

26.     Serostim is a mammalian cell derived human growth hormone (r-hGH) which is identical

to endogenous human growth hormone.

27.     Serostim is delivered in lyophilized powder form intended for injection by the consumer.

28.     At the time it filed the NDA and at all times thereafter, Serono intended Serostim to be

prescribed by physicians for treatment of AIDS-associated weight loss, wasting and/or

catabolism.

29.     At the time it filed the NDA, and at all times thereafter, Serono was aware that upon

approval, the market price of Serostim would be paid by third-party private and publicly-

funded insurers or payors, including but not limited to the Health Care Finance

Administration of the United States ("HCFA").

30.     If approved by the FDA, Serono intended to purchase Serostim for resale in the United

States pharmaceuti.. _ market from its international affiliate, ..es-Serono.

31.     At the time it filed the NDA, Serono was aware that at then-current world-wide market prices for (r-hGH) the annual cost of Serostim at the target dosage of 6 mg daily would be in excess of $75,000 per person.

32.     On or about March 4, 1996, the evaluator at the Center for Drug Evaluation and Research ("CDER"), a division of the FDA, stated that: "... [G]iven the marginal benefit supported by the data and the considerable concern about drug safety for the proposed indication suggest to me a questionable overall risk-benefit relationship. I therefore recommend this application not be approved. Additional phase II studies are necessary to define an adequate dose and to identify subpopulations that may benefit from this application.

33.     On or about March 11, 1996, the NDA filed by Serono was denied.

34.     On March 28, 1996, the reviewer at CDER issued two memoranda regarding further testing and evaluation of Serostim for use in treatment of AIDS-wasting/catabolism. The reviewer concluded that "... the hypothesis that GH will result in weight gain, LBM increments and improvements in strength and endurance was not fully proven by the data submitted."

35.     In the subsequent months, Serono was the subject of criticism within the AIDS community because of the exorbitant pricing structure which the company sought to establish because of Ares-Serono's control of the world-wide market for recombinant human growth hormone and because the company failed to seek accelerated approval of Serostim thereby depriving AIDS patients of access to the drug.

36.     On or about June 25, 1996, representatives of the AIDS community, in particular Jeff Getty of the activist group ACTUP/Golden Gate, met with the president of Serono, Hisham Samra ("Samra"), to discuss the issue of the approval of Serostim by the FDA.

6

37.    As a result of the meeting, the defendant Serono issued a written agreement signed by its president, Samra, and delivered that agreement to ACT UP/Golden Gate.

38.    By the express language of the written agreement Serono agreed to accept and to maintain an annual per person total reimbursement amount of "$30,000 to $36,000 for Serostim therapy."

39.    Serono further agreed to set up an "indigent program" to provide assistance in obtaining access to Serostim for those with limited resources.

40.    On information and belief, the agreement signed by Serono's president, Samra, and delivered to ACT UP/Golden Gate was intended by Serono to be communicated to the FDA and was intended by Serono to inform the FDA that Serono had accepted and would enforce a pricing structure for Serostim with an annual per person reimbursement total limit of $36,000.

41.    In making this agreement, Serono intended to be bound by the pricing structure limiting its annual per person reimbursement to $36,000 in all of Serono's dealings with both private and public health insurers and payors, including but not limited to HCFA.

42.    On information and belief, during the meeting on June 25, 1996, Getty advised Samra that ACT UP/Golden Gate would act as the intermediary with the FDA in order to communicate Serono's agreement regarding pricing and indigent assistance program.

43.    On information and belief, at some point thereafter, Getty communicated to CDER the terms of the written agreement signed by Serono's president, Samra.

44.    On information and belief, at some point thereafter, Getty and other activists from the AIDS community met with representatives of the FDA and urged that Serostim be given accelerated approval based specifically upon the written agreement signed by Serono's president, Samra.

45.     On or about Augus    , 1996, the FDA issued a revised Clini    , Pharmacology and

Biopharmaceutics Review of NDA 20-604, the NDA originally submitted by Serono on

September 11, 1995.

46.     In the report, under General Comments, the reviewer states: ". . . It was determined by

HFD-510 that an accelerated approval of Serostim for AIDS related wasting would be

granted." HFD-510 is the internal "address" of CDER.

47.     The report does not include any information or statements as to why CDER

recommended approval after its report in March 1996 denied approval.

48.     In the report, the reviewer states, under General Comments, " ... the following labeling

*was agreed upon at a meeting with the sponsor and representatives of the AIDS*

*community on July 25, 1996."*

49.     On information and belief, the stated date of July 25, 1996 is a typographical error and, in

fact, was intended to state June 25, 1996, and further intended to be a direct reference to

the written agreement signed by the Serono's president, Samra.

50.     On or about August 11, 1996, after the FDA had given formal accelerated approval to

Serostim, an authorized employee acting as spokesperson for and with the knowledge and

affirmation of Serono acknowledged the role of the AIDS activists in obtaining the

accelerated approval of Serostim by the FDA by stating that approval "would have been

difficult" without the support of the activists.

51.     The statement made by Serono was a specific acknowledgment and ratification of its

written agreement signed by its president, Samra, to keep the annual cost of Serostim at

no more than $36,000 per patient.

52.     The statement made by Serono was specific acknowledgment and ratification by Serono

that it was obligated not to charge, bill, accept or receive funds from any private or public

health insurer or p_ _r, including specifically HCFA, in pay. _t or reimbursement for the distribution or sale of Serostim which was in excess of $36,000 per year per patient.

53. On information and belief, at the time Serostim was approved by the FDA, Serono was aware that the accelerated approval of Serostim had been based in large part upon the written commitment of Serono not to charge, bill, accept or receive funds from any private or public health insurer or payor, including HCFA, in payment or reimbursement for the distribution or sale of Serostim which was in excess of $36,000 per year per patient.

54. On information and belief, at the time Serostim was approved by the FDA, Serono was aware that it was legally obligated not to charge, bill, accept or receive funds from any private or public health insurer or payor, including HCFA, in payment or reimbursement for the distribution or sale of Serostim in excess of $36,000 per year per patient.

55. After obtaining accelerated approval, Serono, through its agents, servants and employees, began to advertise, market, distribute and sell Serostim in the stream of commerce and in ordinary course of business in all state and local jurisdictions within the United States.

56. As part of the effort to market, distribute and sell Serostim, Serono prepared and distributed promotional and marketing materials including a booklet described as "A Patient's Guide to Serostim."

57. In that booklet, Serono advises the patient that:

An important part of SeroCare is the Treatment Continuation Program. This unique plan limits the annual cost of Serostim and ensures that treatment continues as long as is medically necessary. *The annual cost limit in any given calendar year is $36,000.* This means you will have to keep track of how much is being spent upon your Serostim prescriptions. If you are approaching the annual cost limit, please call NORD.

58. As part of its marketing and sales program, Serono established a program within the non-profit organization known as the National Organization of Rare Diseases ("NORD")

through which Sero   has the opportunity to provide free pr    iptions of Serostim to persons without coverage for the medication.

59. On information and belief, the treatment continuation program administered through NORD is paid for and supported entirely by Serono and all persons working within that program are either employees of Serono or persons under the direction and control of Serono.

60. Serono established and employs today a team of specialists described as "Serono Insurance Coverage Experts" whose job duties are to obtain private or public insurance coverage or reimbursement of the cost of Serostim to persons.

61. Serono's efforts to advertise, distribute and sell Serostim continue up to and including the present date and, according to the 1999 Serono Annual Report and Accounts "... the U.S. market for AIDS wasting is currently (US) $175 million."

62. According to the 1999 Serono Annual Report and Accounts, 110,000 persons in the United States with AIDS suffer from AIDS-associated wasting or catabolism.

63. Also according to the 1999 Serono Annual Report and Accounts, Serostim has been provided to 16 percent of the approximately 110,000 persons in the United States who suffer from AIDS-associated wasting.

64. According to the 1999 Serono Annual Report and Accounts, Serono has exclusive rights to the Serostim market in the United States for the treatment of AIDS wasting until the year 2003.

65. On information and belief, beyond the promises to cap Serostim costs at $36,000, Serono obtained regulatory approval for Serostim by promising to conduct post-approval confirmatory studies referred to as "Phase IV" studies. For example, by letter dated March 5, 1996, in return for regulatory approval Samra on behalf of Serono "commit[ted] to the following: *to immediately conduct a Phase IV confirmatory trial ...* (emphasis supplied).

The March 5, 1996 letter is attached as Exhibit A to Relator Driscoll's First Amended Complaint. Moreover, in a letter to the FDA dated June 27, 1996, Thomas A. Lang, Serono's Vice President, Regulatory Affairs, promised to "further study the drug, subsequent to receiving accelerated approval, to verify its clinical benefits including the determination of the *optimal maintenance dose*" (emphasis supplied). Mr. Lang's letter evidences that one of the purpose of the proposed Phase IV study was to determine the optimal dosage for Serostim. Mr. Lang's June 27, 1996, letter is attached as Exhibit B to Relator Driscoll's First Amended Complaint.

66.     On information and belief, Serono never intended to conduct, nor has it conducted, the Phase IV studies it promised. Also on information and belief, Serono failed to conduct Phase IV studies because it knew that any such studies would result in a finding that effective Serostim therapy could be achieved through administering a dosage of Serostim that was both smaller in dose and less frequently administered than the currently approved dosage of 6 mg daily. On information and belief, Serono knew from the experiences of its Serostim sales staff that the benefits of Serostim could be achieved by administering Serostim at a rate of 4 mg given three to four times per week. On information and belief, Serono knowingly ignored information in its possession regarding the optimal dosage for Serostim so as to continue to reap the profits received from billing HCFA and other third party payors for the current excessive dosage. Thus, on information and belief, Serono failed to perform any Phase IV studies so as to prevent a reduction of Serono's expected income stream by limiting the "optimal" dosage and interval for Serostim therapy from the presently FDA-approved daily dosage of 6 mg to a more conservative dosage of 4 mg administered every other day.

67.     Driscoll's experience in dealing with patients using Serostim, as well as the experience of other Serono sales representatives, suggests that a 4 mg dose taken every other day most

often produces the ... rapeutic benefits sought by Serostim ... apy with greatly reduced or eliminated side effects. However, when she communicated her experience to her superiors, Driscoll was instructed both to continue to recommend 6 mg daily as the optimal dosage for Serostim and to suggest the prescription of anti-inflammatory drugs to deal with Serostim's side effects.

68.    If a Phase IV study were to establish the optimal dosage for Serostim as a 4 mg dose taken three to four times per week, as Driscoll's experience indicates, then the impact on Serono revenues would be substantial. As only 12-16 mg of Serostim would be required weekly, rather than the current 42 mg, Serono's revenues would be, at the very least, cut in half as a result of Serono conducting the promised Phase IV studies. Therefore, on information and belief, the effect of Serono's knowing failure to conduct the promised Phase IV studies is to cause HCFA and other third party payors to pay double, if not three to four times more than, the amount necessary for effective Serostim therapy.

**Preferred Providers**

69.    When Serostim was first approved, Serono entered into an agreement with ████████ ████████████ providing this pharmacy with "preferred provider" status. ██

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████

70.    Serono gradually expanded its list of preferred providers ████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████ed

██████████████████████████████████████████████████████████████████████

████████████████████████████████████



71.   On information and belief, ███████████████ receive a 3.75 percent

discount on the price of Serostim. Also on information and belief, ███████████

███████ bill HCFA, as well as other third party payers, for the full price of Serostim,

thus receiving additional profit on each Serostim sale.

72.   The opportunity for profit from Serostim sales was increased for ███████████

███████ because Serono offered incentives to its sales representatives for directing

business to ███████████████████ As part of their contracts with Serono, ████

███████████████ agreed to document and to provide to Serono the volume

of Serostim sales attributable to each sale representative. In turn, this information was the

basis by which Serono determined whether sales representatives reached their quotas and

qualified for incentive bonuses in each quarter. By linking the sales representatives'

compensation to sales through its preferred providers, Serono funneled the majority of

Serostim sales to ███████████████████ who had a strong financial motive to

maximize sales because of the additional payment they received in excess of the already

significant profits from selling Serostim.

73.   By internal memorandum dated January 2, 2001, Serono informed its sales

representatives that the preferred provider program was being immediately suspended.

Serono's management advised the sales representatives that the preferred provider

program was terminated because the arrangement violated HCFA guidelines:

13

-- Medicaid guidelines prohibit manufactures [sic] from providing incentives or inducements to distributors for products that are used in a Medicaid population. Serostim is 75% Medicaid. The Serono Legal Team has advised the discontinuation of the Preferred Partner Program agreement immediately.

A copy of Serono's January 2, 2001 memorandum is attached as Exhibit D to Relator Driscoll's First Amended Complaint. Simultaneously with the issuance of the January 2, 2001, memorandum to sales representatives, Serono contacted ███████████ ███████████ to cancel each written preferred provider agreement.

### Inducements to Physicians

74.    Also from the time Serostim was first approved, Serono engaged in a pattern of conduct that fraudulently induced physicians who prescribed Serostim to bill HCFA improperly for Bioelectrical Impedance Analysis ("BIA"), a medical diagnostic test that evaluates body composition by running a faint electrical current through the body. BIA tests were necessary to justify a three-month prescription of Serostim. In most cases, BIA testing was required for each Serostim patient on a quarterly basis.

75.    Serono instructed its sales staff to perform BIA testing using BIA machines that Serono owned and provided to its sales representatives. Serono then instructed its sales representatives to tell the physician to bill HCFA under Code 93720 and the physician would be reimbursed by HCFA $101.50 for each submitted test.

76.    Serono's BIA machines are programmed to generate a deceptive report. The report, which documents testing performed by a Serono sales representative, was printed with a heading that states ". . . created by [the treating physician] . . . ."  Additionally, at the bottom of the report form, billing codes are listed with the clear intent of facilitating the billing process. The BIA report thus appears to be a report generated in the course of the prescribing doctor's medical practice by a technician in the prescribing doctor's office. Attached as Exhibit E to Relator Driscoll's First Amended Complaint is a written report generated by

14

the Serono BIA ma___ine assigned to Driscoll after BIA test_ _ was completed on an HIV-infected patient of a physician in Driscoll's sales territory.

77.    On information and belief, with Serono's assurance that the billing procedure was appropriate, the physicians would submit and be paid for these tests. Thus, Serono was able to provide an improper financial incentive for doctor's to prescribe Serostim. Moreover, Serono insured its own profits by maintaining control over the tests that supported the prescription of Serostim. By training Serono's sales representatives to operate the BIA machines and counseling the sales representatives to offer their services to conduct the BIA tests, Serono used ostensibly objective tests, which were under its employees' control, to justify and increase the sale of Serostim.

**Open Label Study**

78.    On information and belief, in addition to its other efforts to receive unwarranted funds from the public coffers, Serono wrongfully received payments from HCFA for an unauthorized "open-label study."

79.    Driscoll is personally aware of one instance when Serono set up what the company described as an "open-label study" to determine the effect of Serostim on "HAARS" or lypodystrophy, a condition that occurs in HIV patients. Serono is presently in the midst of FDA trials attempting to obtain orphan drug status for Serostim for the treatment of HAARS. If the company were to obtain FDA approval for this indication it would secure another seven-year monopoly on the marketplace.

80.    Under the study protocol for the "open-label study," a copy of which is attached as Exhibit F to Relator Driscoll's First Amended Complaint,[1] the participating physicians were permitted to prescribe Serostim for up to a six-month period for treatment of

---

[1]  References to Exhibits G through O herein are to Exhibits A through I of Relator Driscoll's original Complaint.

15

HAARS. On inform___on and belief, HCFA and other third p__ / payors were billed for
the prescriptions of Serostim under the "open-label study."

81.     Serono directed Driscoll to inform the various physicians in her territory about this study.
If a physician was interested, Driscoll assisted in setting up the criteria for the study,
identifying potential participants and monitoring the patients enrolled.

82.     In fact, the study was *not approved* by the FDA for evaluation of Serostim in the
treatment of lypodystrophy. Consequently, the physicians who participated were, in fact,
prescribing Serostim inappropriately because lypodystrophy was not an FDA-approved
indication for the drug. Driscoll's supervisors did not inform her that the study was in
violation of FDA regulations until many months after it had been undertaken by the
physician in her territory. Then, the supervisors dispatched her with specific instruction to
close down the study on an emergency basis.

83.     On information and belief, the "open-label study" conducted in Driscoll's territory was not
an isolated incident, but rather one of many unapproved "open-label studies" of Serostim
run by Serono and billed to HCFA and other third party payors.

## COUNT ONE
### VIOLATION OF 31 U.S.C. § 3729 - SERONO AND ARES-SERONO - CLAIMS EXCEEDING $36,000 PRICE CAP

84.     Driscoll repeats and incorporates herein her allegations in paragraphs 1 through 83 above.

85.     The cost of a three-month cycle of Serostim is approximately $20,000.

86.     When a patient is eligible, the cost of a three-month cycle of Serostim is paid for or
reimbursed by private or public health insurers or payors, including HCFA.

87.     Beginning in September 1996 and continuing up to and including the present, Serono has
knowingly and repeatedly submitted claims and received payment or reimbursement from
private and public health insurers and payors, including HCFA, which greatly exceed the
$36,000 per person annual cost limit.

16

88.     Serono has accepted such payments with full knowledge that the payments were in excess

of the annual cost limit per person and that such payments were, at least in part, paid

directly by or reimbursed by HCFA.

89.     By accepting each such payment, Serono engaged in a pattern of repeated and continuing

knowing violations of the Federal False Claim Act, 31 U.S.C. § 3729(a) (1) through (7)

beginning as early as September 1996 and continuing up to and including the present.

90.     As a direct consequence of the repeated and continuing fraudulent claims in knowing

violation of 31 U.S.C § 3729(a), HCFA and the United States government have been

defrauded of money as defined in 31 U.S.C. § 3729(c).

## COUNT TWO
## VIOLATION OF 31 U.S.C. § 3729 - SERONO'S KNOWING FAILURE TO CONDUCT PHASE IV STUDIES ALLOWS IT TO CONTINUE TO BILL HCFA FOR AN EXCESSIVE DOSAGE OF SEROSTIM

91.     Driscoll repeats and incorporates herein her responses to the allegations in paragraphs 1

through 90 above.

92.     On information and belief, Serono knew that the current daily 6 mg dosage of Serostim

was far more than is necessary for effective Serostim therapy. Moreover, on information

and belief, Serono knowingly failed to conduct the promised Phase IV studies so as to

prevent the FDA from becoming aware of Serono's knowledge regarding the optimal

dosage for Serostim and the connected reduction in revenues from prescriptions of

Serostim that would result from the public dissemination of such information. Also on

information and belief, Serono's failure to conduct Phase IV studies resulted in HCFA

and other third party payors paying at least double, if not three or four times more than,

the price necessary for effective Serostim therapy.

93.     By failing to do Phase IV studies so as to insure the continuation of inflated revenues

from Serostim sales, Serono engaged in a pattern of repeated and continuing knowing

17

violations of the Federal False Claim Act, 31 U.S.C, § 3729(a) (1) through (7).

94. As a direct consequence of the repeated and continuing fraudulent claims in knowing violation of 31 U.S.C § 3729(a), HCFA and the United States government have been defrauded of money as defined in 31 U.S.C. § 3729(c).

### COUNT THREE
### VIOLATION OF 31 U.S.C. § 3729 - SERONO'S ROLE ININMPROPER BILLING FOR BIA TESTING

95. Driscoll repeats and incorporates herein her responses to the allegations in paragraphs 1 through 94 above.

96. On information and belief, the billing procedure adopted by Serono for BIA testing was to have its sales representative do the testing while allowing doctor's to bill for the tests; this violated HCFA billing regulations because the tests were performed by a technician not affiliated with the billing doctor's practice using equipment not owned by the doctor.

97. By causing HCFA to make unwarranted payments for BIA testing so as to provide improper financial incentives to prescribing doctors while assuring the qualifications of patients for Serostim prescriptions, Serono engaged in a pattern of repeated and continuing knowing violations of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1) through (7).

98. As a direct consequence of the repeated and continuing fraudulent claims in knowing violation of 31 U.S.C § 3729(a), HCFA and the United States government have been defrauded of money as defined in 31 U.S.C. § 3729(c).

### COUNT FOUR
### VIOLATION OF 31 U.S.C. § 3729 - SERONO'S USE OF AN UNAPPROVED "OPEN-LABEL STUDIES"

99. Driscoll repeats and incorporates herein her responses to the allegations in paragraphs 1 through 98 above.

100. On information and belief, Serono conducted "open-label studies" for an indication for

18

Serostim that was not approved by the FDA so as to receive additional revenues from

Serostim sales from HCFA and other third party payors.

101. By conducting unapproved "open-label studies," and receiving payments from HCFA and

other third party payors for Serostim prescribed in connection with such unapproved

studies, Serono engaged in a pattern of repeated and continuing knowing violations of the

Federal False Claim Act, 31 U.S.C. § 3729(a) (1) through (7).

102. As a direct consequence of the repeated and continuing fraudulent claims in knowing

violation of 31 U.S.C. § 3729(a), HCFA and the United States government have been

defrauded of money as defined in 31 U.S.C. § 3729(c).

**COUNT FIVE**
**VIOLATION OF 31 U.S.C. § 3729 - IMPROPER DISCOUNTS PROVIDED BY SERONO**

103. Driscoll repeats and incorporates herein her responses to the allegations in paragraphs 1

through 102 above.

104. On information and belief, Serono provided to ███████████████ a 3.75

percent discount on the price of Serostim. Also on information and belief, despite this

discount ██████████████ billed HCFA, as well as other third party

payors, for the full price of Serostim, thus receiving an additional profit on Serostim

sales.

105. Serono aided the fraudulent conduct of ███████████████ by encouraging

its sales representatives to sell Serostim through ██████████████

106. By providing preferential pricing to a select group of pharmacies, Serono allowed for ███

██████████████ to present inflated reimbursement claims to and receive

excessive payments from HCFA for sales of Serostim. By taking part in this fraudulent

billing scheme, Serono engaged in a pattern repeated and continuing knowing violations

of the Federal False Claims Act, 31 U.S.C. § 3729 (a) (1) through (7).

107.   As a direct consequence of the repeated and continuing fraudulent claims in knowing violation of 31 U.S.C. § 3729(a), HCFA and the United States government have been defrauded of money as defined in 31 U.S.C. § 3729(c).

## COUNT SIX
### VIOLATION OF 31 U.S.C. § 3729 – IMPROPER CLAIMS SUBMITTED BY ██████████████████████████████████████

108.   Driscoll repeats and incorporates herein her responses to the allegations in paragraphs 1 through 107 above.

109.   ████████████████████████████ entered into a preferred provider agreement with Serono by which it received a 3.75 percent discount on the price of Serostim.  On information and belief, despite this discount ██████████████████████ billed HCFA, as well as other third party payors, for the full price of Serostim, thus receiving an additional profit on Serostim sales.

110.   By accepting payments from HCFA for the full price of Serostim that they received at a discount, ████████████████████ engaged in a pattern of repeated and continuing knowing violations of the Federal False Claim Act, 31 U.S.C. § 3729(a)(1) through (7).

111.   As a direct consequence of the fraudulent claims in knowing violation of 31 U.S.C. § 3729(a), HCFA and the United States government have been defrauded of money as defined in 31 U.S.C. § 3729(c).

## COUNT SEVEN
### VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT
### Cal. Govt Code § 12651(a)(1)

112.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

113.   The California False Claims Act, Cal. Govt Code § 12651(a)(1), specifically provides in

20

part:

> (a)  Any person who commits any of the following acts shall be liable to the state . . . for three times the amount of damages which the state . . . sustains because of the act of that person.  A person who commits any of the following acts shall also be liable to the state  . . . for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state . . . for a civil penalty of up to ten thousand ($10,000) for each false claim:
>
> (1)  Knowingly presents or causes to be presented to an officer or employee of the state   . . . a false claim for payment or approval.

114.    Defendant Serono knowingly caused to be presented to the California Medicaid program false and fraudulent claims for payment and approval, claims which failed to disclose the material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in violation of Cal. Govt Code § 12651(a)(1).

115.    The State of California paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in California, because of these acts by the Defendant.

**COUNT EIGHT**
**VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT**
**Cal. Govt Code § 12651(a)(2)**

116.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

117.    The California False Claims Act, Cal. Govt Code § 12651(a)(2), specifically provides:

> (a)  Any person who commits any of the following acts shall be liable to the state . . . for three times the amount of damages which the state . . . sustains because of the act of that person.  A person who commits any of the following acts shall also be liable to the state . . . for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state . . . for a civil penalty of up to ten thousand ($10,000) for each false claim: .
>
> (2)  Knowingly makes, uses, or causes to be made or used a false

21

record or sta___ent to get a false claim paid or approv   by the
state . . . .

118.   Defendant Serono knowingly made, and caused to be made false records and statements

to get false and fraudulent claims paid and approved by the California Medicaid program,

in violation of Cal. Govt Code § 12651(a)(2).

119.   The State of California paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in California, because of these acts

by the Defendant.

### COUNT NINE
### VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT
### Cal. Govt Code § 12651(a)(3)

120.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

121.   The California False Claims Act, Cal. Govt Code § 12651(a)(3), specifically provides:

>    (a)  Any person who commits any of the following acts shall be
>    liable to the state . . . for three times the amount of damages which
>    the state . . . sustains because of the act of that person.  A person
>    who commits any of the following acts shall also be liable to the
>    state . . . for the costs of a civil action brought to recover any of
>    those penalties or damages, and may be liable to the state . . . for a
>    civil penalty of up to ten thousand ($10,000) for each false claim:
>    . . .
>
>    (3)  Conspires to defraud the state . . . by getting a false claim
>    allowed or paid by the state . . . .

122.   Defendant Serono conspired with its employee sales representatives, third-party

providers, and others to defraud the State of California by getting false and fraudulent

claims allowed and paid, in violation of Cal. Govt Code § 12651(a)(3).

123.    The State of California paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in California, because of these acts

by the Defendant.

**COUNT TEN**
**VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT**
**Del. Code Ann. tit. 6, § 1201(a)(1)**

124.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

125.    The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(1),

specifically provides, in part, that any person who:

> (a)(1) Knowingly presents, or causes to be presented, directly or
> indirectly, to an officer or employee of the Government a false or
> fraudulent claim for payment or approval;
>
> . . .
>
> shall be liable to the Government for a civil penalty of not less than
> $5,500 and not more than $11,000 for each act constituting a
> violation of this section, plus 3 times the amount of actual damages
> which the Government sustains because of the act of that person.

126.    Defendant Serono knowingly caused to be presented, directly and indirectly, to the

Delaware Medicaid program false and fraudulent claims for payment and approval,

claims which failed to disclose the material violations of the Anti-Kickback Statute and

the Food, Drug and Cosmetic Act, in violation of Del. Code Ann. tit. 6, § 1201(a)(1).

127.    The State of Delaware paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts

by the Defendant.

## COUNT ELEVEN
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT Del. Code Ann. tit. 6, § 1201(a)(2)

128.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

129.    The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(2),

specifically provides, in part, that any person who:

> (a)(2) Knowingly makes, uses or causes to be made or used,
> directly or indirectly, a false record or statement to get a false or
> fraudulent claim paid or approved;
> . . .
>
> shall be liable to the Government for a civil penalty of not less than
> $5,500 and not more than $11,000 for each act constituting a
> violation of this section, plus 3 times the amount of actual damages
> which the Government sustains because of the act of that person.

130.    Defendant Serono knowingly made, used and caused to be made and used, directly and

indirectly, false records and statements to get false and fraudulent claims paid and

approved by the State of Delaware, in violation of Del. Code Ann. tit. 6, § 1201(a)(2).

131.    The State of Delaware paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts

by the Defendant.

## COUNT TWELVE
## VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
## Del. Code Ann. tit. 6, § 1201(a)(3)

132.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

133.    The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a)(3),

specifically provid..., in part, that any person who:

(a)(3) Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

. . .

shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

134.    Defendant Serono knowingly conspired with its employee sales representatives, third-party providers, and others to defraud the State of Delaware by getting false and fraudulent claims allowed and paid, in violation of Del. Code Ann. tit. 6, § 1201(a)(3).

135.    The State of Delaware paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Delaware, because of these acts by the Defendant.

## COUNT THIRTEEN
## VIOLATIONS OF THE DISTRICT OF COLUMBIA PROCUREMENT REFORM AMENDMENT ACT D.C. Code § 2-308.14(a)(1)

136.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

137.    The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(1), specifically provides, in part:

(a)   Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:

(1)   Knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval.

25

138.   Defendant Serono knowingly caused to be presented to the District of Columbia Medicaid program false and fraudulent claims for payment and approval, claims which failed to disclose the material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in violation of D.C. Code § 2-308.14(a)(1).

139.   The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by the Defendant.

## COUNT FOURTEEN
## VIOLATIONS OF THE DISTRICT OF THE COLUMBIA PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(2)

140.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

141.   The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(2), specifically provides, in part:

> (a) Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:
>
> . . .
>
> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District; . . .

142.   Defendant Serono knowingly made, used and caused to be made and used, directly and indirectly, false records and statements to get false and fraudulent claims paid and approved by the District of Columbia, in violation of D.C. Code § 2-308.14(a)(2).

143.  The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by the Defendant.

## COUNT FIFTEEN
## VIOLATIONS OF THE DISTRICT OF THE COLUMBIA PROCUREMENT REFORM AMENDMENT ACT
### D.C. Code § 2-308.14(a)(3)

144.  Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

145.  The District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.14(a)(3), specifically provides:

> (a)  Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person.  A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:
>
> . . .
> (3)  Conspires to defraud the District by getting a false claim allowed or paid by the District; . . .

146.  Defendant Serono conspired with its employee sales representatives, third-party providers, and others to defraud the District of Columbia by getting false and fraudulent claims allowed and paid, in violation of D.C. Code § 2-308.14(a)(3).

147.  The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by the Defendant.

## COUNT SIXTEEN
## VIOLATIONS OF THE FLORIDA FALSE CLAIMS ACT
### Fla. Stat. § 68.082(2)(a)

148.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

149.    The Florida False Claims Act, Fla. Stat. § 68.082(2)(a), specifically provides, in part, that

any person who:

> (a) Knowingly presents or causes to be presented to an officer or
> employee of an agency a false claim for payment or approval;
> . . .
>
> is liable to the state for a civil penalty of not less than $5,000 and
> not more than $10,000 and for treble the amount of damages the
> agency sustains because of the act or omission of that person.

150.    Defendant Serono knowingly caused to be presented to the Florida Medicaid program

false claims for payment and approval, claims which failed to disclose the material

violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in

violation of Fla. Stat. § 68.082(2)(a).

151.    The State of Florida paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by

the Defendant.

## COUNT SEVENTEEN
## VIOLATIONS OF THE FLORIDA FALSE CLAIMS ACT
### Fla. Stat. § 60.082(2)(b)

152.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

153.    The Florida False Claims Act, Fla. Stat. § 68.082(2)(b), specifically provides, in part, that

any person who:

> (b) Knowingly makes, uses, or causes to be made or used a false
> record or statement to get a false or fraudulent claim paid or
> approved by an agency;

is liable to the state for a civil penalty of not less than $5,000 and
not more than $10,000 and for treble the amount of damages the
agency sustains because of the act or omission of that person.

154.    Defendant Serono knowingly made, used and caused to be made and used, false records

and statements to get false and fraudulent claims paid and approved by an agency of the

State of Florida, in violation of Fla. Stat. § 68.082(2)(b).

155.    The State of Florida paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by

the Defendant.

## COUNT EIGHTEEN
## VIOLATIONS OF THE FLORIDA FALSE CLAIMS ACT
### Fla. Stat. § 68.082(2)(c)

156.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-85 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

157.    The Florida False Claims Act, Fla. Stat. § 68.082(2)(c), specifically provides, in part, that

any person who:

(c) Conspires to submit a false claim to an agency or to deceive an
agency for the purpose of getting a false or fraudulent claim
allowed or paid;
. . .
is liable to the state for a civil penalty of not less than $5,000 and
not more than $10,000 and for treble the amount of damages the
agency sustains because of the act or omission of that person.

158.    Defendant Serono conspired with its employee sales representatives, third-party

providers, and others to submit a false claim to Government Health Care Programs and to

deceive Government Health Care Programs for the purpose of getting false and fraudulent

claims allowed and paid, in violation of Fla. Stat. § 680.82(2)(c).

159.    The State of Florida paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by

the Defendant.

## COUNT NINETEEN
## VIOLATIONS OF THE HAWAII FALSE CLAIMS ACT
Haw. Rev. Stat. § 661-21(a)(1)

160.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

161.    The Hawaii False Claims Act, Haw. Rev. Stat. § 661-21(a)(1), specifically provides, in

part, that any person who:

> (1) Knowingly presents, or causes to be presented, to an officer or
> employee of the State a false or fraudulent claim for payment or
> approval;
> . . .
> shall be liable to the State for a civil penalty of not less than $5,000
> and not more than $10,000, plus three times the amount of
> damages that the State sustains due to the act of that person.

162.    Defendant Serono knowingly caused to be presented to the Hawaii Medicaid program

false and fraudulent claims for payment and approval, claims which failed to disclose the

material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in

violation of Haw. Rev. Stat. § 661-21(a)(1).

163.    The State of Hawaii paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Hawaii, because of these acts by

the Defendant.

### COUNT TWENTY
### VIOLATIONS OF THE HAWAII FALSE CLAIMS ACT
#### Haw. Rev. Stat. § 661-21(a)(2)

164.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

165.   The Hawaii False Claims Act, Haw. Rev. Stat. § 661-21(a)(2), specifically provides, in part, that any person who:

> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;
> . . .
> shall be liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages that the State sustains due to the act of that person.

166.   Defendant Serono knowingly made, used and caused to be made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State of Hawaii, in violation of Haw. Rev. Stat. § 661-21(a)(2).

167.   The State of Hawaii paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Hawaii, because of these acts by the Defendant.

### COUNT TWENTY-ONE
### VIOLATIONS OF THE HAWAII FALSE CLAIMS ACT
#### Haw. Rev. Stat. § 661-21(a)(3)

168.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

169.   The Hawaii False Claims Act, Haw. Rev. Stat. § 661-21(a)(3), specifically provides, in part, that any person who:

(3) Conspir... ..o defraud the State by getting a false c ...audulent
claim allowed or paid.

shall be liable to the State for a civil penalty of not less than $5,000
and not more than $10,000, plus three times the amount of
damages that the State sustains due to the act of that person.

170.    Defendant Serono conspired with its employee sales representatives, third-party

providers, and others to defraud the State of Hawaii by getting false and fraudulent claims

allowed and paid, in violation of Haw. Rev. Stat. § 661-21(a)(3).

171.    The State of Hawaii paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Hawaii, because of these acts by

the Defendant.

**COUNT TWENTY-TWO**
**VIOLATIONS OF THE ILLINOIS WHISTLEBLOWER**
**REWARD AND PROTECTION ACT**
**740 Ill. Comp. Stat. § 175/3 (a)(1)**

172.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

173.    The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §

175/3(a)(1), specifically provides, in part, that any person who:

> (1) knowingly presents, or causes to be presented, to : officer or
> employee of the State or member of the Guard a false or fraudulent
> claim for payment or approval;
> . . .
> is liable to the State for a civil penalty of not less than $5,000 and
> not more than $10,000, plus 3 times the amount of damages which
> the State sustains because of the act of that person.

174.    Defendant Serono knowingly caused to be presented to the Illinois Medicaid program

false and fraudulent claims for payment and approval, claims which failed to disclose the

material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in

violation of 740 Ill. Comp. Stat. § 175/3(a)(1).

175.    The State of Illinois paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Illinois, because of these acts by

the Defendant.

### COUNT TWENTY-THREE
### VIOLATIONS OF THE ILLINOIS WHISTLEBLOWER
### REWARD AND PROTECTION ACT
### 740 Ill. Comp. Stat. § 175/3(a)(2)

176.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

177.    The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §

175/3(a)(2), specifically provides, in part, that any person who:

> (2) knowingly makes, uses or causes to be made or used, a false
> record or statement to get a false or fraudulent claim paid or
> approved by the State;
> . . .
> is liable to the State for a civil penalty of not less than $5,000 and
> not more than $10,000, plus 3 times the amount of damages which
> the State sustains because of the act of that person.

178. Defendant Serono ...owingly made, used and caused to be r. ...e and used, false records and statements to get false and fraudulent claims paid and approved by the State of Illinois, in violation of 740 Ill. Comp. Stat. § 175/3(a)(2).

179. The State of Illinois paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Illinois, because of these acts by the Defendant.

**COUNT TWENTY-FOUR**
**VIOLATIONS OF THE ILLINOIS WHISTLEBLOWER**
**REWARD AND PROTECTION ACT**
**740 Ill. Comp. Stat. § 175/3(a)(3)**

180. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

181. The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/3(a)(3), specifically provides, in part, that any person who:

> (2) conspires to defraud the State by getting a false or fraudulent claim allowed or paid;
>
> . . .
>
> is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the State sustains because of the act of that person.

182. Defendant Serono conspired with its employee sales representatives, third-party providers, and others to defraud the State of Illinois by getting false and fraudulent claims allowed and paid, in violation of 740 Ill. Comp. Stat. § 175/3(a)(3).

183. The State of Illinois paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Illinois, because of these acts by the Defendant.

### COUNT TWENTY-FIVE
### VIOLATIONS OF THE MASSACHUSETTS FALSE CLAIMS ACT
Mass. Gen. Laws Ch. 12, § 5B(1)

184. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

185. The Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12, § 5B(1), specifically provides, in part, that any person who:

> (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> . . .
> shall be liable to the commonwealth or political subdivision for a civil penalty of not less than $5,000 and not more than $10,000 per violation, plus three times the amount of damages, including consequential damages, that the commonwealth or political subdivision sustains because of the act of that person.

186. Defendant Serono knowingly caused to be presented to the Massachusetts Medicaid program false and fraudulent claims for payment and approval, claims which failed to disclose the material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in violation of Mass. Gen. Laws Ch. 12, § 5B(1).

187. The Commonwealth of Massachusetts paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Massachusetts, because of these acts by the Defendant.

### COUNT TWENTY-SIX
### VIOLATIONS OF THE MASSACHUSETTS FALSE CLAIMS ACT
Mass. Gen. Laws Ch. 12, § 5B(2)

188. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

189.    The Massachusetts _ .lse Claims Act, Mass. Gen. Laws Ch.    . § 5B(2), specifically
provides, in part, that any person who:

> (2) knowingly makes, uses, or causes to be made or used, a false
> record or statement to obtain payment or approval of a claim by the
> commonwealth or any political subdivision thereof;
>
> . . .
>
> shall be liable to the commonwealth or political subdivision for a
> civil penalty of not less than $5,000 and not more than $10,000 per
> violation, plus three times the amount of damages, including
> consequential damages, that the commonwealth or political
> subdivision sustains because of the act of that person.

190.    Defendant Serono knowingly made, used and caused to be made and used, false records
and statements to obtain payment and approval of claim by the Commonwealth of
Massachusetts, in violation of Mass. Gen. Laws Ch. 12, § 5B(2).

191.    The Commonwealth of Massachusetts paid said claims and has sustained damages, to the
extent of its portion of Medicaid losses from Medicaid claims filed in Massachusetts,
because of these acts by the Defendant.

## COUNT TWENTY-SEVEN
## VIOLATIONS OF THE MASSACHUSETTS FALSE CLAIMS ACT
### Mass. Gen. Laws Ch. 12, § 5B(3)

192.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs
1-111 above as if each were stated herein in their entirety and said allegations are
incorporated herein by reference.

193.    The Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12, § 5B(3), specifically
provides, in part, that any person who:

> (3) conspires to defraud the commonwealth or any political
> subdivision thereof through the allowance or payment of a
> fraudulent claim;
>
> . . .
>
> shall be liable to the commonwealth or political subdivision for a
> civil penalty of not less than $5,000 and not more than $10,000 per
> violation, plus three times the amount of damages, including
> consequential damages, that the commonwealth or political
> subdivision sustains because of the act of that person.

36

194.   Defendant Serono conspired with its employee sales representatives, third-party

providers, and others to defraud the Commonwealth of Massachusetts through the

allowance and payment of fraudulent claims in violation of Mass. Gen. Laws Ch. 12, §

5B(3).

195.   The Commonwealth of Massachusetts paid said claims and has sustained damages, to the

extent of its portion of Medicaid losses from Medicaid claims filed in Massachusetts,

because of these acts by the Defendant.

## COUNT TWENTY-EIGHT
### VIOLATIONS OF THE NEVADA FALSE CLAIMS ACT
### Nev. Rev. Stat. § 357.040(1)(a)

196.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

197.   The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(1)(a), specifically provides, in

part, that a person who:

> With or without specific intent to defraud, does any of the
> following listed acts is liable to the state or a political subdivision,
> whichever is affected, for three times the amount of damages
> sustained by the state or political subdivision because of the act of
> that person, for the costs of a civil action brought to recover those
> damages and for a civil penalty of not less than $2,000 or more
> than $10,000 for each act:
>
> (a)  Knowingly presents or causes to be presented a false claim for
> payment or approval.

198.   Defendant Serono knowingly caused to be presented to the Nevada Medicaid program

false claims for payment and approval, claims which failed to disclose the material

violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in

violation of Nev. Rev. Stat. § 357.040(1)(a).

199.   The State of Nevada paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Nevada, because of these acts

by the Defendant.

## COUNT TWENTY-NINE
## VIOLATIONS OF THE NEVADA FALSE CLAIMS ACT
### Nev. Rev. Stat. § 357.040(1)(b)

200.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

201.   The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(1)(b), specifically provides, in

part, that a person who:

> With or without specific intent to defraud, does any of the
> following listed acts is liable to the state or a political subdivision,
> whichever is affected, for three times the amount of damages
> sustained by the state or political subdivision because of the act of
> that person, for the costs of a civil action brought to recover those
> damages and for a civil penalty of not less than $2,000 or more
> than $10,000 for each act:
>
> . . .
>
> (b) Knowingly makes or uses, or causes to be made or used, a
> false record or statement to obtain payment or approval of a false
> claim.

202.   Defendant Serono knowingly made, used and caused to be made and used, false records

and statements to obtain payment and approval of false claims, in violation of Nev. Rev.

Stat. § 357.040(1)(b).

203.   The State of Nevada paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Nevada, because of these acts

by the Defendant.

## COUNT THIRTY
## VIOLATIONS OF THE NEVADA FALSE CLAIMS ACT
### Nev. Rev. Stat. § 357.040(1)(c)

204.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

205.   The Nevada False Claims Act, Nev. Rev. Stat. § 357.040(1)(c), specifically provides, in

part, that a person who:

> With or without specific intent to defraud, does any of the
> following listed acts is liable to the state or a political subdivision,
> whichever is affected, for three times the amount of damages
> sustained by the state or political subdivision because of the act of
> that person, for the costs of a civil action brought to recover those
> damages and for a civil penalty of not less than $2,000 or more
> than $10,000 for each act:
>
> . . .
>
> (c)  Conspires to defraud by obtaining allowance or payment of a false
> claim.

206.   Defendant Serono conspired with its employee sales representatives, third-party

providers, and others to defraud the Commonwealth of Massachusetts by obtaining

allowance and payment of false claims, in violation of Nev. Rev. Stat. § 357.040(1)(c).

207.   The State of Nevada paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Nevada, because of these acts

by the Defendant.

## COUNT THIRTY-ONE
## VIOLATIONS OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT
### Tenn. Code Ann. § 71-5-182(a)(1)(A)

208.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

209.    The Tennessee Medicaid False Claims Act, Tenn. Code Ann. 71-5-182(a)(1)(A), specifically provides, in part, that any person who:

> (A) Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing such claim is false or fraudulent;
>
> . . .
>
> is liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), plus three (3) times the amount of damages which the state sustains because of the act of that person.

210.    Defendant Serono knowingly caused to be presented to the Tennessee Medicaid program claims for payment under the Medicaid program knowing such claims were false and fraudulent, claims which failed to disclose the material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(A).

211.    The State of Tennessee paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Tennessee, because of these acts by the Defendant.

## COUNT THIRTY-TWO
## VIOLATIONS OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT
### Tenn. Code Ann. § 71-5-182(a)(1)(B)

212.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

213.    The Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(B), specifically provides, in part, that any person who:

> (B) Makes, uses, or causes to made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false; . . . is liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand

dollars ($10,000), plus three (3) times the amount of damages which the state sustains because of the act of that person.

214.    Defendant Serono made, used and caused to be made and used, records and statements to get false and fraudulent claims under the Medicaid program paid and approve by the State of Tennessee knowing such records and statements were false, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(B).

215.    The State of Tennessee paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Tennessee, because of these acts by the Defendant.

## COUNT THIRTY-THREE
## VIOLATIONS OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT
### Tenn. Code Ann. § 71-5-182(a)(1)(C)

216.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

217.    The Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(C), specifically provides, in part, that any person who:

> (C) Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent; . . . is liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), plus three (3) times the amount of damages which the state sustains because of the act of that person.

218. Defendant Serono conspired with its employee sales representatives, third-party providers, and others to defraud the State of Tennessee by getting claims allowed and paid under the Medicaid program knowing such claims were false and fraudulent, in violation of Nev. Rev. Stat. 357.040(1)(C).

219. The State of Tennessee paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Tennessee, because of these acts by the Defendant.

## COUNT THIRTY-FOUR
## VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(1)(A)

220. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

221. The Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.001(1)(A), specifically provides, in part, that a person commits an unlawful act if the person:

> (1) knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:
> (A) on an application for a contract, benefit, or payment under the Medicaid program.

222. Defendant Serono knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the Texas Medicaid program, claims which failed to disclose the material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in violation of Tex. Hum. Res. Code § 36.002(1)(A).

223. The State of Texas paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Texas, because of these acts by the Defendant.

## COUNT THIRTY-FIVE
## VIOLATIONS OF THE TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(4)(B)

224.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

225.    The Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.002(4)(B),

specifically provides, in part, that a person commits an unlawful act if the person:

> (4)  knowingly or intentionally makes, causes to be made, induces,
> or seeks to induce the making of a false statement or
> misrepresentation of material fact concerning: . . .
> (B)  Information required to be provided by a federal or state law,
> rule, regulation, or provider agreement pertaining to the Medicaid
> program;

226.    Defendant Serono by knowingly and intentionally causing to be made, inducing, and

seeking to induce the making of false statements and misrepresentations of material facts

concerning information required to be provided by state and federal law, rule, regulation

and provider agreements pertaining to the Medicaid program, in violation of Tex. Hum.

Res. Code § 36.002(4)(B).

227.    The State of Texas paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Texas, because of these acts by

the Defendant.

## COUNT THIRTY-SIX
## VIOLATIONS OF TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code § 36.002(9)

228.    Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

229.     The Texas Medical ...raud Prevention Law, Tex. Hum. Res.    .de § 36.002(9),

specifically provides, in part, that a person commits an unlawful act if the person:

> (9)  knowingly or intentionally enters into an agreement,
> combination, or conspiracy to defraud the state by obtaining or
> aiding another person in obtaining an unauthorized payment or
> benefit from the Medicaid program . . . .

230.     Defendant Serono knowingly and intentionally conspired with its employee sales

representatives, third-party providers, and others to defraud the State of Texas by aiding

another person in obtaining an unauthorized payment from the Medicaid program, in

violation of Tex. Hum. Res. Code § 36.002(9).

231.     The State of Texas paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Texas, because of these acts by

the Defendant.

### COUNT THIRTY-SEVEN
### VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.3(A)(1)

232.     Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

233.     The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(1),

specifically provides, in part, that any person who:

> 1.  Knowingly presents, or causes to be presented, to an officer or
> employee of the Commonwealth a false or fraudulent claim for
> payment or approval; . . . shall be liable to the Commonwealth for
> a civil penalty of not less than $5,000 and not more than $10,000,
> plus three times the amount of damages sustained by the
> Commonwealth.

234.     Defendant Serono knowingly caused to be presented, to the Virginia Medicaid

program false and fraudulent claims for payment and approval, claims which failed to

disclose the material violations of the Anti-Kickback Statute and the Food, Drug and Cosmetic Act, in violation of Va. Code Ann. § 8.01-216.3(A)(1).

235. The Commonwealth of Virginia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Virginia, because of these acts by the Defendant.

## COUNT THIRTY-EIGHT
## VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.3(A)(2)

236. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

237. The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(2), specifically provides, in part, that any person who:

> 2. Knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth; . . . shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

238. Defendant Serono knowingly made, used and caused to made and uses, false records and statements to get false and fraudulent claims paid and approved by the Commonwealth of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

239. The Commonwealth of Virginia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Virginia, because of these acts by the Defendant.

## COUNT THIRTY-NINE
## VIOLATIONS OF THE VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.3(A)(3)

240. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

241. The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(3), specifically provides, in part, that any person who:

> 3. Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid; . . . shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

242. Defendant Serono conspired with its employee sales representatives, third-party providers, and others to defraud the Commonwealth of Virginia by getting false and fraudulent claims allowed and paid, in violation of Va. Code Ann. § 8.01-216.3(A)(3).

243. The Commonwealth of Virginia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Virginia, because of these acts by the Defendant.

## COUNT FORTY

████████████████████████████████████████

████████████████████

244. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.

245. ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

46



246.

247.

**COUNT FORTY-ONE**

248. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs 1-111 above as if each were stated herein in their entirety and said allegations are incorporated herein by reference.



249.

250.

251.



**COUNT FORTY-TWO**

252.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.



253.

254.

255.

**COUNT FORTY-THREE**

256.   Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

48

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

257. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████ rs,

███████████████████████████████████████

258. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

259. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████

### COUNT FORTY-FOUR

████████████████████████████████████████

████████████████████████████

260. Relators Driscoll and Garcia restate and reallege the allegations contained in Paragraphs

1-111 above as if each were stated herein in their entirety and said allegations are

incorporated herein by reference.

261. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████



262.

263.

### PRAYERS FOR RELIEF

WHEREFORE, as to Relator Driscoll's claims under the Federal FCA (Counts 1-6),

Relator Driscoll demands as follows:

A. That this Complaint and all attachments thereto be impounded as required by 31

U.S.C. § 3730(b)(2);

B. That the United States Government, through its Attorney General, intervene and

proceed with the action in accordance with 31 U.S.C. § 3730(b)(2);

C. That the defendant Serono be ordered to repay and disgorge all money received as a

result of its repeated, continuing and knowing violations 31 U.S.C. § 3729(a)(1) through (7);

D. That the defendant Ares-Serono, S.A. be ordered to repay and disgorge all money

received for the purchase of Serostim by the defendant Serono which payments were the fruit of

or as a result of Serono's repeated, continuing and knowing violations of 31 U.S.C. § 3729(a)(1)

through (7);

E. That the defendant Serono be assessed and ordered to pay an amount equal to three

times the amount of money received as a result of its repeated, continuing and knowing

violations of 31 U.S.C. § 3729(a)(1) through (7);

F. That the defenda...  Serono's orphan drug status as the exc... ve provider of Serostim as acquired by the FDA accelerated approval on August 1, 1996, be forthwith revoked;

G. That ████████████████ be ordered to repay and disgorge all money received as a result of its repeated, continuing and knowing violations of 31 U.S.C. § 3729(a)(1) through (7);

H. That ████████████████ be assessed and ordered to pay an amount equal to three times the amount of money received as a result of its repeated, continuing and knowing violations of 31 U.S.C. § 3729(a)(1) through (7);

I. That all defendants be assessed the costs of this action as provided by 31 U.S.C. § 3729 (a)(7)(C);

J. That the Relator Driscoll be awarded payments in accordance with 31 U.S.C. § 3730(d) in an amount to be determined but not less than 15 percent of the proceeds of this action; and

K. That the Court enter such other relief as this court deems just and proper.

WHEREFORE, as to the pendent State claims of Co-Relators Driscoll and Garcia (Counts 7-44), the Co-Relators pray for judgment against the Defendants under the pendent State claims as follows:

L. That defendant cease and desist from violating Cal. Govt Code § 12650 *et seq.*; Del. Code Ann. Tit. 6, § 1201 *et seq.*; D.C. Code § 2-308.13 *et seq.*; Fla. Stat. § 68.081 *et seq.*; Haw. Rev. Stat. § 661-21 *et seq.*; 740 Ill. Comp. Stat. § 175/1 *et seq.*; Mass. Gen. Laws Ch. 12, § 5A *et seq.*; Nev. Rev. Stat. § 357.010 *et seq.*; Tenn. Code Ann. § 71-5-181 *et seq.*; Tex. Hum. Res. Code § 36.001 *et seq.*, and Va. Code Ann. § 8.01-216.1 *et seq.*;

M. That the Court enter judgment against Defendant in an amount equal to three times the amount of damages that California, Delaware, District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Nevada, Tennessee, and Virginia have sustained, respectively, as a result of the

Defendants' actions, as well as a civil penalty against the Defendants of a statutory maximum for each violation of Cal. Govt Code § 12651; Del. Code Ann. Tit. 6, § 1201; D.C. Code § 2-308.14; Fla. Stat. § 68.082; Haw. Rev. Stat. § 661-21; 740 Ill. Comp. Stat. § 175/3; Mass. Gen. Laws Ch. 12, § 5B; Nev. Rev. Stat. § 357.040, Tenn. Code Ann. § 71-5-182; and Va. Code Ann. § 8.01-216.3;

N. That the Court enter judgment against Defendants in an amount equal to two times the amount of damages that Texas has sustained as a result of the Defendants' actions, as well as a civil penalty against the Defendants of a statutory maximum for each violation of Tex. Hum. Res. Code § 36.002;

O. That the Co-Relators Driscoll and Garcia be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d); Cal. Govt Code 12652(g); Del. Code Ann. Tit. 6, § 1205; D.C. Code § 2-308.14(f); Fla. Stat. § 68.085; Haw. Rev. Stat. § 661-27; 740 Ill. Comp. Stat. § 175/4(d); Mass. Gen. Laws Ch. 12, § 5F; Nev. Rev. Stat. §§ 357.210, 357.220, Tenn. Code Ann. § 71-5-183(c); Tex. Hum. Res. Code § 36.110, and Va. Code Ann. § 8.01-216.7;

P. That the Co-Relators Driscoll and Garcia be awarded all costs and expenses associated with the pendent State claims, including attorneys fees; and

Q. That the Court grant all such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby request a jury trial on all counts so triable.

Respectfully submitted,

For CHRISTINE DRISCOLL

_Carl Valvo_      and      _Thomas J. Lynch / by CV_

Carl Valvo (BBO # 507380)                     Thomas J. Lynch
COSGROVE, EISENBERG and KILEY, P.C.           LYNCH ASSOCIATES, P.C.
One International Place                        99 Derby Street, Suite 200
Boston, MA 02110-2600                         Hingham, MA 02043
(617) 439-7775                                (781) 556-1089

For FRANK GARCIA

_Robert M Thomas, by CV_
Robert M. Thomas, Jr. (BBO #645600)
THOMAS & ASSOCIATES
Federal Reserve Building
600 Atlantic Avenue, 12th Fl
Boston, MA 02110
(617) 371-1072                                Dated: May 13, 2005

CERTIFICATE SERVICE
I hereby certify that a this date a true copy of the
above document was served upon the attorney of
record for each party by Hand/Mail.
Date: 5/13/05                     A. KENNEY

53