**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO**<br>*State of Nevada v. Abbott Laboratories, et al.*, Case No. CV02-00260 (Nevada I), | Chief Magistrate Judge Marianne B. Bowler |
| *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (Nevada II), and | **HEARING: March 29, 2006 10:00 a.m.** |
| *State of Montana v. Abbott Labs., Inc., et al.* CA No. 02-CV-12084-PBS | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR SECOND MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS THE STATE OF NEVADA AND THE STATE OF MONTANA**

Defendants submit this reply brief in support of their Second Motion to Compel ("Motion") in order to clarify and supplement the record with evidence recently acquired from deposition testimony and documents produced by the States after the filing of the Motion. Defendants also respond to new arguments raised by the States that were not addressed in the Motion. Defendants request that the Court specifically order the production of certain documents and data that the States agreed—but have thus far failed—to produce.

## I. RECENT EVIDENCE REINFORCES THE RELEVANCE OF THE DISCOVERY SOUGHT FROM THE STATES' NON-MEDICAID AGENCIES.

Each State's knowledge of drug acquisition costs and understanding of AWP are key issues in this case. Communications between agencies that either acquired or reimbursed for prescription drugs are highly relevant in that they reflect upon the State's considerations and

motivations in setting its reimbursement rates within the Medicaid program. Defendants therefore seek a limited number of documents and depositions relating to certain agencies' drug reimbursement policies and their knowledge of drug acquisition costs. *See* Motion at 4-5.

Deposition testimony and documents recently produced by Nevada and Montana confirm that Plaintiffs' assertion (Opp. at 3) that there "is no formal – or even informal – relationship between different State agencies involved in the purchasing and reimbursement of drugs" is simply not true. The examples set out below directly contradict Plaintiffs' statement (Opp. at 6) that "Defendants have not been able to establish that any interagency communications regarding drugs and drug reimbursement took place":

- A "background paper" and "attendee list" produced at deposition earlier this week from the "Nevada Prescription Drug Policy Makers' Summit" makes clear that Nevada Medicaid has been exchanging drug reimbursement and cost information with the various State agencies from which discovery is sought – the Nevada Mental Health and Developmental Services Division, the State Pharmacy Assistance Programs (Senior Rx and Disability Rx), Public Employees Benefit System, and the Nevada Department of Corrections. *See* Ex. 31.

- Recent deposition testimony confirms that key officials at Nevada Medicaid, including the agency's pharmacy director, were aware of and considered the drug purchasing and reimbursement policies of certain state agencies from which Defendants seek discovery. *See* Ex. 32, Squartsoff Dep. Tr. at 112-19 (3/6/06); Ex. 33, Townley Dep. Tr. at 124-25, 128-29 (1/27/06); Ex. 34, King Dep. Tr. at 12-13 (1/28/06).

- Nevada Medicaid's written protocol for developing cost-containment policies, which presumably include efforts to control costs by reducing drug reimbursement rates, requires "contact with other state agencies." *See* Ex. 35 at NV08648.

- A document outlining the "Interagency Agreements" that Nevada Medicaid maintains with the Divisions of Child and Family Services and Mental Health and Development Services reinforces the institutional links among the agencies. *See* Ex. 36 at NV009694.

- Montana Medicaid was aware that the Department of Corrections had a contract that provided for reimbursement of drugs based on "*actual acquisition cost*" plus a per prescription fee. Ex. 37 (MT 018459; Poulsen Ex. 3). This contract applied not only to drugs dispensed to residents of Montana correctional facilities, but also to residents of state institutions administered by the Department of Public Health and Human Services ("DPHHS"), the umbrella organization of which Montana Medicaid is a part. Ex. 38 (MT 18455; Poulsen Ex. 4). Asked about these exhibits, Montana's pharmacy program

officer testified that she understood from them that AWP – 10% did not represent actual acquisition cost. *See* Ex. 39, Poulsen Dep. Tr. at 40 (2/22/06).

- Montana Medicaid performed an analysis of and compared "the two reimbursement methodologies" used by the Department of Corrections and the state institutions and that used by Montana Medicaid. Ex. 39, Poulsen Dep. Tr. at 62-63; Ex. 40 (Poulsen Ex. 5/MT004034-43) at MT004041; *see also* Ex. 39, Poulsen Dep. Tr. at 166-67 (describing differences in approach to pharmaceutical reimbursement among agencies).

- Montana had a "Pharmaceutical Management – Advisory Committee," with members from the Department of Corrections and from various divisions of DPHHS, including Medicaid, the Addictive & Mental Disorders Division, the Disability Services Division, and the Senior & Long Term Care Division. Ex. 41 (Poulsen Ex. 35/MT 018330). Representatives from these various Montana entities were involved in discussions regarding reimbursement for drugs, including discussions relating to the re-negotiation of the contract for pharmaceutical management to which the Department of Corrections and DPHHS were a party. Ex. 39, Poulsen Dep. Tr. at 66-67, 160-63.

Along with the evidence discussed in the Motion (at 6-7) regarding interagency ties and communications about drug costs and reimbursement, these facts lay a solid foundation for pursuing limited discovery from select non-Medicaid agencies.

## II. RECENT EVIDENCE REINFORCES THE RELEVANCE OF DISCOVERY FROM LEGISLATIVE AND EXECUTIVE OFFICES.

Recent evidence also reinforces the factual basis for pursuing discovery from certain State legislative and executive offices. Two former Nevada Medicaid officials have confirmed that both the legislature and the governor's office are intimately involved in administrative decisions that have budgetary implications, such as changes to the drug reimbursement rate. Proposed agency budgets are reviewed and shaped by the governor's office, and the legislature provides input on state plan amendments with budgetary impacts. *See* Ex. 34, King Dep. Tr. at 51-53; Ex. 42, Wright Dep. Tr. at 82-83 (1/26/06). As just one example, earlier this week, the Director of the Nevada Department of Health and Human Services testified to having conversations about drug reimbursement issues with Michael Hillerby, the governor's former

chief of staff, who Defendants seek to depose. *See* Ex. 43, Willden Rough Dep. Tr. at 53-54 (3/21/06).

In addition, recent deposition testimony has confirmed that Steve Abba, whose deposition Nevada opposes, is the Legislative Counsel Bureau's fiscal analyst responsible for analyzing and reporting to the legislature the budgetary impact of Medicaid initiatives. *See* Ex. 34, King Dep. Tr. at 51-52. Documents produced by Nevada indicate that Mr. Abba is routinely copied on memoranda concerning reimbursement rates and prescription drugs. *See, e.g.*, Ex. 44 (Hospital Inpatient Prospective Rates Memorandum) at NV014076; Ex. 45 (Provider Fee Schedule) at NV014238; Ex. 46 (Automated Unit Dose Credit Return Processing) at NV012645.[1]

## III. THE STATES' PRODUCTION OF PRE-1991 DOCUMENTS RELATING TO THE STATES' KNOWLEDGE AND UNDERSTANDING OF AWP AND DRUG ACQUISITION COSTS SHOULD NOT BE TIED TO DEFENDANTS' PRODUCTION OF PRE-1991 DOCUMENTS.

The standard for discovery is relevance, not symmetry. The States do not dispute the relevance of Defendants' pre-1991 requests, which are limited to documents relating to the States' knowledge and understanding of AWP and drug acquisition costs.[2] Nevertheless, the States contend that they should not be compelled to produce any documents from the pre-1991 time period unless Defendants do so as well. *See* Opp. at 12-13. Other than arguing "if you don't, I won't," the States have failed to articulate the relevance of *any* pre-1991 documents held by Defendants. The Court should reject the States' transparent attempt to impose needless

---

[1] As to Montana, Plaintiffs provide no rebuttal to the specific evidence outlined in the Motion as to the involvement of Montana's executive and legislative officials in policy choices affecting Medicaid and prescription drug reimbursement. Motion at 9-10 (citing Ex's. 13-15).

[2] Indeed, at the Court's direction and contrary to Plaintiffs' assertions (*see* Opp. at 13) Defendants endeavored to narrow their requests even further, but, in response, Plaintiff Nevada made very clear that its "position regarding pre-1991 discovery has not changed" and that "[a]ny agreement to produce information from the earlier time period must be bilateral." *See* Ex. 47 (9/23/05 Litow Letter) at 3-4; Motion Ex. 20. Plaintiff Montana also indicated that it would not change its position on pre-1991 discovery. Ex. 48 (12/12/05 Breckenridge Letter).

discovery burdens on Defendants as a price for producing documents to which Defendants are clearly entitled.[3]

## IV. THE STATES' OBJECTIONS TO PRODUCING ANY ELECTRONIC DOCUMENTS ARE MERITLESS.

The States have failed to produce *any* electronic documents from their computer files. Seven months after receiving Defendants' discovery requests, the States raised, for the first time, objections that the requests for electronic discovery are overbroad, cumulative, and unduly burdensome. These objections are meritless, and Defendants' motion to compel should be granted.

### A. Defendants' Requests Are Not Overbroad.

The States offer no argument whatsoever to support their assertion (Opp. at 14-16) that Defendants' requests for electronic documents (served in May 2005) are overbroad. Defendants' proposed search terms are tailored to the key issues of the case, a fact that is substantiated by *Plaintiffs' counsel's acceptance* of a virtually identical set of search terms in the Connecticut AWP actions.[4]

### B. The Discovery Sought Is Not Cumulative.

The States also now contend that electronic document production will be cumulative because all documents that "need to be retained" must be printed out. Such an argument assumes that, without the direction of counsel, the various state employees of Nevada and

---

[3] If the States truly believed that documents pre-dating 1991 in the possession of Defendants were relevant, the solution would have been for the States' counsel to meet and confer with Defendants' counsel to explain the relevance of these documents and, if necessary, file a motion compelling their production. "Parties to a lawsuit cannot, without seeking some sort of relief from the Court, refuse to provide discovery to another party on the basis that the other party has not provided discovery to them." *Mahoney v. Kempton*, 142 F.R.D. 32, 33 (D. Mass. 1992).

[4] Defendants nonetheless attempted to compromise by further narrowing the scope of the proposed search in Nevada to the files of four current Medicaid officials whose depositions were scheduled for the week of March 20. *See* Ex. 49 (2/24/06 Litow Email). Nevada failed to respond to Defendants' offer, forcing Defendants to go forward with the depositions without access to the requested electronic documents.

Montana are, and have been, sufficiently familiar with the claims and defenses of this litigation to determine which documents are relevant and therefore in need of preservation. However, for more than three years after the filing of their complaints, the States failed to issue a disposition hold requiring the States' employees to preserve documents related to this litigation, calling into serious question whether relevant materials were preserved at all. *See* Defendants' Emergency Motion For An Order Holding Plaintiffs In Contempt, For Preservation Of Relevant Documents, And For An Accounting Of Spoliated Documents (filed on 12/7/05) at 2-7. Nevada has produced very few email printouts, suggesting that either not all relevant emails have been printed out, or that responsive emails have been spoliated.[5] Although Montana has produced some email printouts, they could not possibly constitute the universe of relevant electronic documents that existed when Montana filed this lawsuit in 2002.

### C. The Requested Electronic Discovery Is Not Unduly Burdensome.

The States further argue that the requested electronic discovery is unduly burdensome due to time, expense, and technical limitations. *See* Opp. at 14-15. While Defendants do not concede that the States are unduly burdened by the constraints of time, any such burden is the sole fault of the States, who neglected their electronic discovery obligations for seven months. The technical constraints raised by the States, if accurate, only require that they conduct individual searches rather than the compound or "wildcard" searches suggested by Defendants. This is not a complicated or unduly burdensome task. Nonetheless, Defendants have offered to

---

[5] Indeed, Defendants have obtained from non-parties relevant emails and other documents written by or addressed to Nevada Medicaid officials that were *not* produced by Nevada, suggesting that these emails – which are dated after the filing of the complaint – either exist in Nevada's computer files or have been spoliated. *See, e.g.*, Ex. 50, Duarte Rough Dep. Tr. at 75-79 (3/22/06) (discussing email produced by non-party from Nevada Medicaid Administrator acknowledging impact change in medicine code rates could have on access to care for children; "not my practice" to print out emails; "I may still have it. I archive my emails.").

consider any reasonable proposals from the States for limiting the searches or making them more efficient, but no such proposals have been forthcoming. *See* Ex. 49 (2/24/06 Litow Email).

**D. The States Must Cover The Costs Of Electronic Production.**

The States are apparently willing to compromise their unreasonable refusal to produce electronic documents only if Defendants are forced to compensate them for the production. *See* Opp. at 16-17. Not only is Plaintiffs' position entirely unfair and contrary to what the practice has been in the MDL (Defendants previously produced many thousands of pages of electronic documents at their own cost), but it relies on an erroneous analysis of the applicable law.

The States purport to rely on the legal standard for cost-shifting in electronic discovery that was articulated in *Zubulake v. UBS Warburg*, 217 F.R.D. 309 (S.D.N.Y. 2003), but conveniently ignore the first step of that analysis. As a threshold matter, documents maintained on accessible media are not subject to cost-shifting. *See id.* at 318. Although the States suggest that individual archives on individual hard drives are "less accessible," *see* Opp. at 17, *Zubulake* makes clear that "active online data" and "offline archives" are accessible by definition. *See Zubulake*, 217 F.R.D. at 318-20. By the States' own account, the only inaccessible medium that they must search are those few backup tapes that they have preserved since late 2005.[6] *See* Opp. at 15, 17.

---

[6] Nevada concedes that it only retains monthly backup tapes dating to September 2005, while Montana concedes that it only retains monthly backup tapes dating to December 2005. *See* Rosenberg Decl. at 2; Holm Decl. at 2. The deposition of Randy Holm, the Bureau Chief for Montana's Computing Technology Services Bureau, revealed that prior to December, 1, 2005 there was no litigation hold in place in Montana. As a result, the data tapes containing emails prior to that date were destroyed. Ex. 54, Holm Dep. Tr. 23-24 ("Q: So, with respect to the information that is centrally backed up, what happens to that information when it's 30 days old, is it permanently deleted? A: Yes, it's deleted."); Tr. 24-25 ("Q: Is this litigation subject to one of those holds that you described? A: Yes. Q: Do you know when that hold was initiated? A: We've got tapes to December 1st, 2005."). In addition to centrally-stored emails for the time period prior to December 1, 2005, that were permanently deleted as a result of Montana's 30-day destruction cycle, emails were also routinely destroyed by Montana in any email box that exceeded the State's 50-megabyte memory limit for individual user accounts. Tr. 60-61 ("Q: [O]nce you've reached the 50 megabyte limit, you have to permanently delete items within your email to get back within the ceiling; is that right? A: Correct.").

As to those documents deemed inaccessible, the *Zubulake* analysis requires the court to consider seven factors in determining whether cost-shifting is appropriate. *See Zubulake*, 217 F.R.D. at 323. These factors are: (i) the extent to which the request is specifically tailored to discover relevant information; (ii) the availability of such information from other sources; (iii) the total cost of production, compared to the amount in controversy; (iv) the total cost of production, compared to the resources available to each party; (v) the relative ability of each party to control costs and its incentive to do so; (vi) the importance of the issues at stake in the litigation; and (vii) the relative benefits to the parties of obtaining the information. *Id.* Consideration of these seven factors clearly demonstrates the impropriety of the States' attempts to shift the costs of fulfilling their discovery obligations onto Defendants.

First, as explained above, Defendants' proposed search terms are specifically tailored to produce relevant information and were accepted and used by Plaintiffs' counsel in the Connecticut AWP actions.

Second, the States' confidence that such documents are readily available in hard copy is belied by their failure to issue a litigation hold and the fact that their retention policies do not extend to all responsive documents.

The three "cost" factors all militate against cost-shifting, especially given that the States have destroyed all but a few backup tapes. The cost of restoring these few tapes is quite small compared to the millions of dollars at stake in the litigation. *Cf. Zubulake v. UBS Warburg*, 216 F.R.D. 280, 287-88 (S.D.N.Y. 2003) (noting that even though Plaintiff was an unemployed individual, the $19 million claim and ability of Plaintiffs' firms to front costs weighed against shifting the costs of restoring 72 backup tapes). Furthermore, given that these backup tapes

belong to the States, they are in a better position than Defendants to limit the costs of restoration and production. *See OpenTV v. Liberate Techs.*, 219 F.R.D. 474, 478.

Finally, as to the sixth and seventh factors, Defendants and Plaintiffs agree that the issues at stake in the litigation are important and that Defendants would be the party to benefit from the production of this discovery. *See* Opp. at 18 n.18. The fact that this litigation implicates broad public policy issues relating to the States' Medicaid programs counsels against cost-shifting and in favor of extensive discovery. *See Zubulake,* 217 F.R.D. at 321; *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 309 F.Supp.2d 459, 466 (S.D.N.Y. 2003).

## V. THE COURT SHOULD COMPEL NEVADA TO PRODUCE THE POST-2003 CLAIMS DATA THAT THEY HAVE AGREED TO PRODUCE.

While Nevada has agreed to produce post-2003 Medicaid claims data, *see* Motion at 18 & Opp. at 2, it has yet to do so. The data is maintained by Nevada's fiscal agent, but, as previously explained, is owned by the State and therefore within its "possession, custody or control." *See* Motion at 18, n.10. Accordingly, the Court should order Nevada to take affirmative steps to produce this data immediately at its own cost so that Defendants' experts have sufficient time to analyze the data prior to the May 5, 2006 deadline for submitting their reports.

## VI. THE COURT SHOULD COMPEL MONTANA TO PRODUCE THE DISPENSING FEE SURVEYS THAT IT OBJECTED TO PRODUCING FOR THE FIRST TIME AFTER FILING ITS OPPOSITION TO THE MOTION TO COMPEL.

Defendants' Motion listed six categories of documents to which Montana had agreed to produce or had not objected to. One such category was responses to the dispensing fee questionnaires from Montana Medicaid providers. Motion at 19. Having learned about the existence of these surveys at a Montana 30(b)(6) deposition in mid-December, Defendants specifically requested these dispensing fee surveys in a letter dated December 19, 2005. Ex. 51

(O'Sullivan letter). The State of Montana raised an objection to these surveys for the first time on February 28, 2006, the cut-off date under CMO 23 for the States to complete document production. Ex. 52 (Breckenridge email) (attaching copy of blank dispensing fee questionnaire). The Court should compel Montana to produce these dispensing fee surveys because (a) they are relevant – as they are likely to establish, consistent with other documents produced by Montana, that Montana Medicaid's dispensing fee was inadequate to reimburse providers for their costs of dispensing drugs, Ex. 53 (Poulsen Ex. 12 at 2, "Medicaid Services Prescription Drug Program Memo," 12/6/99) ("The current maximum dispensing fee of $4.20 covers between one-fourth and one-half of the cost incurred by pharmacies."); (b) the State's objection was untimely; and (c) any alleged confidentiality of the information contained in these surveys will be protected by the Protective Order in effect in this case.

**CONCLUSION**

For the foregoing reasons and those previously stated in Defendants' Motion, the Court should grant Defendants' Motion to Compel Discovery from Plaintiffs the State of Nevada and the State of Montana.

Respectfully submitted on behalf of all
Defendants in the Nevada and Montana actions,

/s/ Geoffrey E. Hobart

Geoffrey E. Hobart (BBO # 547499)
Mark H. Lynch
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Mark D. Seltzer (BBO #556341)
HOLLAND & KNIGHT LLP

10 St. James Avenue
Boston, MA 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850

Frederick G. Herold
DECHERT LLP
1117 California Avenue
Palo Alto, CA 94304
Telephone: (650) 813-4930
Facsimile: (650) 813-4848

Thomas H. Lee II
DECHERT LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Telephone: (215) 994-2994
Facsimile: (215) 994-2222

*Attorneys for Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

March 24, 2006

**Certificate of Service**

I hereby certify that on **March 24, 2006**, I caused a true and correct copy of Defendants' Reply Brief in Support of their Second Motion to Compel Discovery From Plaintiffs the State of Nevada and the State of Montana, together with accompanying exhibits, to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.

/s/ Ronald G. Dove, Jr.