**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| *IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION* | MDL No. 1456 |
| | Civil Action No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *State of California, ex rel. Van-A-Care v. Abbott Laboratories, et al.,* Cause No. 03-CV-11226-PBS | |

**B. BRAUN OF AMERICA INC.'S REPLY IN SUPPORT OF ITS SEPARATE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

B. Braun of America Inc. ("BBA"), files this Reply in Support of its Separate Motion to Dismiss the State of California's First Amended Complaint.

**I. Plaintiffs' specific jurisdiction arguments fail as a matter of law due to their mistaken belief that BBA bought McGaw, Inc.**

Plaintiffs assert in their Response – but noticeably not in the First Amended Complaint – that the Court has specific jurisdiction over BBA because of BBA's alleged "acquisition of a California based company," and "purposeful availment of the benefits of doing business in California because BBA knowingly acquired a company that makes and sells pharmaceuticals in California." (Response at pp. 3 and 4). Because B. Braun Medical Inc. ("BBM") was the entity that acquired McGaw, all of Plaintiffs' arguments for asserting specific jurisdiction over BBA all fail.

As set forth in the Affidavit of Charles DiNardo, BBA did not acquire McGaw. (Affidavit at ¶ 4). Instead, McGaw was acquired by and merged into BBM. *Id.* The only purported evidence that Plaintiffs' offer to the contrary is an 10-Q filed by IVAX, and a footnote from *Ivax Corp. v. B. Braun of Am., Inc., et al.,* 286 F.3d 1309 (11th Cir. 2002). Neither is helpful to the Plaintiffs.

First, the 10-Q is inadmissible hearsay as to BBA and, more importantly, contrary to the facts. Attached hereto as Exhibit A is a Supplemental Affidavit of Charles DiNardo.[1] The Supplemental Affidavit – expanding on paragraph 4 of the prior Affidavit – proves that:

1) BBA and Ivax entered into a Stock Purchase Agreement dated May 30, 1997 for the purchase of McGaw;
2) On June 17, 1997, BBA and BBM entered into an Assignment and Assumption Agreement and Amendment No. 1 to Stock Purchase Agreement, whereby BBA transferred and assigned to BBM all of BBA's rights, interests and obligations under the Stock Purchase Agreement;
3) On June 24, 1997, by way of a Stock Power, Ivax Corporation sold, assigned, and transferred 1,000 shares of common stock to BBM (and not to BBA);
4) The 1,000 shares of common stock of McGaw were delivered to BBM by Stock Certificate No. 2, dated June 24, 1997; and
5) At no time did BBA own stock or hold assets of McGaw.

---

[1] The Supplemental Affidavit of Charles DiNardo is presented solely to rebut once and for all Plaintiffs' mistaken belief that BBA bought McGaw.

**B. BRAUN OF AMERICA INC.'S REPLY IN SUPPORT OF ITS SEPARATE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** **Page** 2

Thus, as represented by Mr. DiNardo in his Affidavit and as confirmed in his Supplemental Affidavit – it was BBM that bought McGaw. The footnote cited by Plaintiffs only confirms this point.[2] Plaintiffs' First Amended Complaint should be dismissed.

**II. As this Court has found on multiple occasions, Plaintiffs have not and cannot meet their burden of proof to confer general jurisdiction over BBA**.

Plaintiffs allege that general jurisdiction over BBA is appropriate under either agency or representative services theories. Under California law, the representative services theory is wholly inapplicable to BBA because, as Plaintiffs admit, BBA is a holding company that holds the stock of BBM. *See F. Hoffman-LaRoche v. Superior Court*, 30 Cal. Rptr.3d 407, 419 (Cal. Ct. App. 2005); *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr.2d 824, 839-41 (Cal. Ct. App. 2000); (both noting that the representative services doctrine does not apply to a holding company whose only business pursuit is its investment in the subsidiary). (*See also* Plaintiffs' Response at p. 2).

As to Plaintiffs' agency theory, it is a "rare occasion" that California courts are willing to treat a parent and a subsidiary as one entity for jurisdictional purposes. *F. Hoffman-LaRoche*, 30 Cal. Rptr.3d at 419. In order to overcome this proposition, the Plaintiffs would have to have shown by a preponderance of the evidence that BBA moved beyond the establishment of general policy and direction for the subsidiary and taken over performance of the subsidiary's day-to-day operations. *Sonora*, 99 Cal. Rptr.2d at 839. There is no such evidence in this case.

Plaintiffs assert that the fact that BBA and BBM have common officers and directors,

---

[2] That footnote reads as follows:

> [BBA] is the entity that initially entered into the stock-purchase agreement at issue in this case, and [BBM] is [BBA's] wholly-owned subsidiary. **<u>Because [BBA] subsequently assigned all of its rights and interests under the stock-purchase agreement to [BBM], and [BBM] assumed all of [BBA's] duties and obligations under that agreement</u>**, we hereinafter refer to the two Braun entities bound by the agreement as "Braun."

*Ivax*, 286 F.3d at 1311, fn 1 (emphasis added).

share a principal place of business, and have occasional loans, advances and service transactions between them is sufficient to confer jurisdiction over BBA. California law says otherwise. *See Sonora*, 99 Cal. Rptr.2d at 841-45 (holding that formation of an investment in the subsidiary, financial support of the subsidiary, interlocking officers and directors, and consolidated financial reporting were all insufficient, even in the aggregate, to confer jurisdiction over the parent). Moreover, this Court has previously ruled on at least two occasions that these facts are insufficient to confer general jurisdiction over BBA. (*See* Docket Nos. 1337 and 1338). Plaintiffs further assert – without any proof whatsoever – that "BBA is no more than a mechanism to own and direct the affairs of BBM." Because Plaintiffs have wholly failed to carry their burden of proof, BBA should be dismissed from this cause.[3]

**III. Plaintiffs' "effects" argument is equally unavailing.**

Plaintiffs' final argument for asserting jurisdiction over BBA is that BBA caused an "effect" in California through its purchase of McGaw. As shown above, BBA did not purchase McGaw. Therefore, there is no out-of-state act or omission through which jurisdiction against BBA could be maintained. *See St. Joe Paper Co. v. Superior Court*, 120 Cal. App.3d 991, 995 (Cal. Ct. App. 1981) (noting the requirement of an act of omission before jurisdiction can be established).

WHEREFORE, BBA prays that the Court grant its Motion to Dismiss First Amended Complaint, and for all other relief to which BBA may be entitled. Defendant "McGaw, Inc." should also be dismissed because it does not exist as a legal entity and therefore cannot be properly named as a party to this case, which the State does not dispute in its Response.

---

[3] Plaintiffs assert that BBA has failed to meet its burden of proving that the exercise of jurisdiction over it would be unreasonable. BBA only has to show unreasonableness if the Plaintiffs first meet their burden. *Hoffman-LaRoche*, 30 Cal. Rptr.3d at 416. Because Plaintiffs have not and cannot meet their burden, the Court need not reach the unreasonableness of its maintaining jurisdiction over BBA.

Dated: April 3, 2006

Respectfully submitted,

**/s/ John P. McDonald**
John P. McDonald
Texas Bar No. 13549090
C. Michael Moore
Texas Bar No. 14323600
Karin B. Torgerson
Texas Bar No. 00794745
LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
214/740-8000 (Tel.); 214/740-8800 (Fax)

**ATTORNEYS FOR**
**B. BRAUN OF AMERICA INC.**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record on this 3rd day of April, 2006 via electronic service with LexisNexis.

**/s/ John P. McDonald**
John P. McDonald