# EXHIBIT A


PLAINTIFF'S EXHIBIT
Hartman 022
mw 10-8-04

```
 1              UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3    * * * * * * * * * * * * * * * *
                                     *
 4    UNITED STATES                  *
                    Plaintiff        *
 5                                   *
         VERSUS                      *   CR-01-10350-DPW
 6                                   *
      ALAN MACKENZIE, JANICE         *
 7     SWIRSKI, HENRY VAN MOURIK,    *
      DONNA TOM, DONALD PATTON,      *
 8    DONALD MEEK, ERIC OTTERBEIN    *
      RITA JOKIAHO, CAREY SMITH,     *
 9    MARK SMITH                     *
                    Defendants       *
10                                   *
      * * * * * * * * * * * * * * * *
11
             BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
12
                UNITED STATES DISTRICT COURT JUDGE
13
                       JURY TRIAL - DAY 39
14
                         JUNE 24, 2004
15
16
17                         Courtroom No.  1 - 3rd Floor
                           1 Courthouse Way
18                         Boston, Massachusetts 02210
                           9:00 A.M. - 12:00 P.M.
19
20
21
                   Pamela R. Owens -- Lee A. Marzilli
22                      Official Court Reporters
                 John Joseph Moakley District Courthouse
23                   1 Courthouse Way - Suite 3200
                       Boston, Massachusetts   02210
24
25        Method of Reporting:   Computer-Aided Transcription
```

                                                                    2

```
 1    APPEARANCES:
 2        MICHAEL K. LOUCKS, ESQ. Chief, Health Care
          Fraud Unit, GEORGE W. VIEN, ESQ., and SUSAN G.
 3        WINKLER, ESQ., Assistant United States Attorneys,
          U.S. Attorney's Office, 1 Courthouse Way, Suite
 4        9200, Boston, Massachusetts 02210, on behalf of
          the United States
```

```
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

```
 1              THE CLERK:  This Honorable Court is now in
 2    session.  Please be seated.
 3              THE COURT:  One specific question:  Have the
 4    defendants filed their jury instructions?  I just
 5    haven't seen them on the --
 6              MR. KETTLEWELL:  No.  Actually, they haven't
 7    been filed, Your Honor.  We're trying to file one set
 8    with all 10 people and we've circulated a draft and I
 9    think we're very close to having agreement on all of
10    them.
11              THE COURT:  Okay.  I just didn't know if there
12    was something --
13              MR. KETTLEWELL:  They should be here -- they
14    will be filed today.
15              THE COURT:  All right.  Now, let me outline
16    the order of battle.  Ms. Greenberg -- because the
17    Government asked what the order is that we'll go through
18    this, I think the way in which I'd like to do it is
19    start with the broad objects of the conspiracy motions
20    to frame the legal issues here.  And specifically, I
21    want to start with defraud the Government object, then
22    the sampling law issues, and then I'll talk a little bit
23    about an anti-kickback.  But I think at that point, I'm
24    going to want to start talking very specifically about
25    particular defendants.
```

5

```
 1              I would hope that -- there's a large body of
 2    material that was filed yesterday which I've tried to
 3    get through it, but I haven't, I think, fully absorbed
 4    it.  But it's very helpful, I think, in framing the
 5    issues here.  And, so, I'm going to use that as the
 6    agenda for the Government to respond in specific ways.
 7              What I think I anticipate happening is that I
 8    will be asking for specific citations to specific
```

```
 9    transcript and to documents that have been introduced.
10    And we can use the screen to do that so everybody gets
11    to see it at the same time.  That's my hope, anyway.
12              Now, let me turn to this question of
13    defrauding the Government.  I framed it -- in just my
14    kind of things to think about yesterday -- as what's the
15    duty to disclose?  There are terms of art involved, so
16    that's a little misleading.  But let me put it a
17    different way.  This is clearly an area in which the
18    Federal Government and its various agencies has
19    been struggling to develop a coherent pattern for
20    reimbursement.  And for a variety of reasons, it's hit
21    on the idea about average wholesale price.  And
22    depending on the administration, people at OMB think
23    that there's too much paperwork in trying to do a real
24    evaluation of what these prices are.  And people who are
25    in the pharmaceutical business aren't really interested
```

                                                                6
```
 1    in having the Government get too intrusive.  And, so,
 2    they're perfectly happy if the Government is not
 3    directly involved in administering the prices except
 4    beyond the AWP.  So, it's a yeasty area.  But I'm not
 5    certain that there is any criminal violation for people
 6    to pursue their business in light of a structure that is
 7    as open-textured as this unless they are either lying to
 8    the Government in their presentation or they have some
 9    duty to disclose to the Government some aspect of the
10    business.  That, it seems to me, is at the core of what
11    the defraud clause in this setting asks for.  And, so, I
12    guess I want to understand from the Government what it
13    was that they were supposed to do, not what would have
14    been nice for them, what would have been public-spirited
15    for them to do, but what they were obligated to do.
16              MR. LOUCKS:  Your Honor, thank you.  I'll try
17    to address the Court's questions.
18              Our prong (a) is predicated on two things, one
19    of which is conspiring to defraud to obtain money or
20    property.  The second is conspiring to thwart the
21    operations of the programs.  Providing a kick- -- I
22    mean, there have been a number of cases that have
23    approved conspiring to defraud theories against the
24    Medicare and Medicaid programs by paying kickbacks.
25    The cases that have not approved it have been where
```

                                                                7
```
 1    there has been no showing of a loss or an increased
 2    cost.
 3              THE COURT:  So you're saying that it's simply
 4    a duplication of the anti-kickback statute?
 5              MR. LOUCKS:  No.  Because the anti-kickback
```

```
 6    statute -- there are different elements in both.
 7    The anti-kickback statute does not require proof of
 8    loss. Conspiring to defraud requires proof of
 9    conspiring to defraud to obtain money or property.
10    That's not a part of the anti-kickback statute.
11              THE COURT:  So you've got to prove even more
12    for there to be conspiracy to defraud?
13              MR. LOUCKS:  You have to prove an intent to
14    obtain money through the course of --
15              THE COURT:  Right. But you've got to prove
16    something more?
17              MR. LOUCKS:  Yes.
18              THE COURT:  All right. So, what do you need
19    it for?
20              MR. LOUCKS:  What do we need it for in this
21    case?
22              THE COURT:  Right. I mean, it seems
23    replicative. As you've described it, the anti-kickback
24    statute is a lesser-included offense of defrauding the
25    Government on this prong.
```

                                                                8

```
 1              MR. LOUCKS:  On this prong. There are
 2    different intent aspects as well.
 3              THE COURT:  Yes. The intent is even easier on
 4    the anti-kickback statute.
 5              MR. LOUCKS:  Actually, I thought it was the
 6    other way around, Judge.
 7              But our view is this, also, is that there
 8    has been substantial proof of an intent to provide
 9    inducements to get around reporting obligations on best
10    price.
11              THE COURT:  Well, I'll get to that in a
12    minute. That's thwarting as far as I'm concerned.
13              Now I want to deal with this parallel kickback
14    theory. And I want to understand why it is that a jury
15    should be instructed on something like this that just
16    means another set of moving parts. You say that you've
17    got to prove loss. No, you don't have to do that with
18    the anti-kickback statute. Okay. So, as I said,
19    lesser-included offense. You say there is some
20    difference in intent. I'm not altogether sure.
21              MR. LOUCKS:  I'm not sure, as a practical
22    matter, one could explain to a jury a difference in
23    intent between prong (a) and prong (b) where the
24    underlying conduct for both includes payment kickbacks.
25    We actually discussed this amongst ourselves, that
```

                                                                9

```
 1    there is a parallel between the two, that it would
```