# EXHIBIT 1

Virginia Newell                                November 15, 2005
                        Charlotte, NC

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

# CERTIFIED COPY

---------------------------------X

IN RE PHARMACEUTICAL INDUSTRY        : MDL No. 1456

AVERAGE WHOLESALE PRICE              :

LITIGATION                           : CIVIL ACTION:

-------------------------------- 01-CV-12257-PBS

THIS DOCUMENT RELATES TO             :

ALL CLASS ACTIONS                    : Judge Patti B.

---------------------------------X Saris


        Deposition of VIRGINIA NEWELL, taken by the

Defendant, at Robinson, Bradshaw, Hinson, 101 North

Tryon Street, Charlotte, North Carolina, on the 15th

day of November, 2005, at 11:20 a.m., before Jackie

Johnson, Court Reporter and Notary Public.


Reported by:  Jackie Johnson

        Court Reporter, Notary Public

Virginia Newell                                    November 15, 2005
                        Charlotte, NC

147

1          MS. PRINZO:  Let me restate it.

2          BY MS. PRINZO:

3      Q.    Are you hoping to lower the price of drugs?

4      A.    That's not my objective.  I just would like

5  to -- I don't think I can.  I'd just like to

6  represent the people who have been overcharged.

7      Q.    Are you hoping to get monetary damages?

8      A.    No.

9      Q.    When you say you're hoping to represent the

10 people who were overcharged, is there anything that

11 you're hoping to obtain for them?  Is there anything

12 you're hoping to obtain for them?

13     A.    I can't think of -- no, I don't want to

14 obtain anything for them.  I just think it's unfair

15 that we've all been overcharged, and if they can --

16 if we can do anything to reduce, for future people

17 who are in this situation, if they can cut the costs

18 somehow for them.

19     Q.    So when you say overcharged, you're

20 referring to paying an expensive amount for drugs?

21     A.    Yes.

22     Q.    Are you asserting that there's any fraud in

Henderson Legal Services
(202) 220-4158

Virginia Newell                                    November 15, 2005
                            Charlotte, NC

148

```
 1   this case?
 2       A.    I can't answer that.  I don't know.
 3       Q.    Have you or your husband ever had any
 4   relationship with any drug manufacturer?
 5       A.    No.
 6       Q.    Have you or your husband had any contact
 7   with any drug manufacturer?
 8       A.    No.
 9       Q.    Have you or your husband ever called any
10   drug manufacturers' customer service line?
11       A.    I don't recall.
12       Q.    Have you authorized your lawyers in this
13   case to obtain your husband's medical records?
14       A.    I think I gave my permission.
15       Q.    Have you authorized the lawyers in this
16   case to obtain your husband's billing records?
17       A.    Yes, I think so.
18       MS. PRINZO:  Why don't we take a couple
19   minutes break, and I think we can wind up in the next
20   few minutes.
21            (Thereupon, a brief recess was taken,
22            after which the following proceedings
```

Virginia Newell                          November 15, 2005
                    Charlotte, NC

149

1          were had:)

2          MS. PRINZO:  Mrs. Newell, I just have a

3  couple more questions for you, and then I believe one

4  of the attorneys on the phone just has a few more.

5  So we should be wrapping up shortly.

6          BY MS. PRINZO:

7      Q.   **Are you familiar with the term least costly**

8  **alternative?**

9      A.    No.

10         MS. PRINZO:  For the Record, I would just

11  like to request to depose someone who's familiar with

12  the billing statements, so we can get a better

13  understanding of these bills and the checks that Mrs.

14  Newell has produced.

15         MS. BENEDETTO:  We'll take that under

16  advisement.  Obviously, we differ as to whether or

17  not that's necessary, and certainly that that does

18  not excuse the Defendants, in our view, from having

19  to conclude the discovery by the 17th.

20         MS. PRINZO:  And then we'd also reserve the

21  right to continue the deposition as soon as

22  additional documents are produced.

Henderson Legal Services
(202) 220-4158

# EXHIBIT 2

## FILED UNDER SEAL

# EXHIBIT 3

## FILED UNDER SEAL

# EXHIBIT 4

**FILED UNDER SEAL**

# EXHIBIT 5

James E. Shepley                                November 11, 2005

Reno, NV

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-oOo-

CERTIFIED COPY

IN RE PHARMACEUTICAL      MDL No. 1456

INDUSTRY AVERAGE PRICE

LITIGATION                CIVIL ACTION: 01-CV-12257-PBS

Judge Patti B. Saris

_____

DEPOSITION OF

JAMES E. SHEPLEY

Friday, November 11, 2005

Reno, Nevada

Reported by:  Lesley A. Clarkson, CCR #182

Henderson Legal Services
(202) 220-4158

James E. Shepley                                    November 11, 2005

Reno, NV

74

1    you received was purchased from your doctor?

2              MR. HAVILAND:  Objection to the form.

3              THE WITNESS:  No.

4              MR. HAVILAND:  Vague.  Are you asking

5    whether he bought it, bought it from the doctor?

6    I'm just not clear about that question.  You said

7    purchased.

8              MS. LAWSON:  Mr. Shepley has testified

9    that he doesn't know whether he made any payments

10   for it, so I'm just asking.

11   BY MS. LAWSON::

12        Q    Do you know whether the doctor owned the

13   medication he was giving to you, do you know that?

14        A    No.

15        Q    Either for Zoladex or Lupron?

16        A    I don't know.

17        Q    So you don't know, we can all assume that

18   any Lupron or Zoladex that you were given, somebody

19   had to pay for it somewhere along the lines,

20   correct?

21             MR. HAVILAND:  Objection to the form.

22             THE WITNESS:  Yes.

James E. Shepley                               November 11, 2005

Reno, NV

75

BY MS. LAWSON:

Q     And it had to be, there had to be a buyer

and a seller; is that consistent with your

understanding?

A     Yes.

Q     And for Zoladex or Lupron, do you know

during the time period you were given either, so we

can say 1991 to today, do you know for any time

period who the seller and buyer of Zoladex or

Lupron --

A     I don't know.

Q     -- that was given to you?

Do you know whether this lawsuit and the

group of plaintiffs on whose behalf this lawsuit is

being asserted, do you know whether that's limited

to people in the state of Nevada?

A     I don't know.

Q     Just to make the record clear, do you know

whether people in the state of Illinois are included

as plaintiffs in this case?

A     I don't know.

Q     Last question on this topic.  Do you know

Henderson Legal Services
(202) 220-4158

James E. Shepley                           November 11, 2005
                          Reno, NV

76

1   whether people from the state of Massachusetts are

2   included?

3        A    I don't know.

4        Q    It's a slightly different topic.  Do you

5   know whether insurance companies are included as

6   plaintiffs in this lawsuit?

7        A    I don't know.

8        Q    Does Medicare -- withdrawn.

9             When you receive a drug in a physician's

10  office, so when the physician administers it, as

11  opposed to getting a prescription and buying it in a

12  retail pharmacy, when you receive a drug in a

13  physician's office, does Medicare pay the physician

14  for that?

15       A    I don't know.

16       Q    So I'll assume -- if we -- withdraw that.

17            Do you know how it is that Medicare

18  determines what it will pay your doctors?

19       A    No, I don't.

20       Q    What about United American, do you know

21  how it determines what it will pay your doctors?

22       A    No.

James E. Shepley                                    November 11, 2005
                              Reno, NV

85

1    expensive than Zoladex?

2         A    No.

3         Q    So is it fair to say that the price of

4    Lupron relative to the price of Zoladex -- I see

5    your lawyer shaking his head already.

6              MR. HAVILAND:  You just lost your

7    foundation.

8    BY MS. LAWSON:

9         Q    You have testified you prefer Lupron?

10        A    Yes.

11        Q    Is price a reason why you prefer Lupron?

12             MR. HAVILAND:  Asked and answered.

13             THE WITNESS:  No.

14   BY MS. LAWSON:

15        Q    If Zoladex were cheaper than Lupron, would

16   you switch to Zoladex?

17             MR. HAVILAND:  Calls for speculation.

18             THE WITNESS:  I don't know.

19   BY MS. LAWSON:

20        Q    I think, I'm pretty sure you have already

21   testified that you have not discussed with any of

22   your doctors the cost of Zoladex or Lupron, right?

James E. Shepley                                   November 11, 2005
                        Reno, NV

86

1        A      That's right.  Yes.

2        Q      If, when I asked you if you would switch

3   to Zoladex if it was cheaper than Lupron, your

4   answer was "I don't know," right?

5        A      Yes.

6        Q      So if you might switch if it's cheaper,

7   how come you haven't asked your doctor?

8            MR. HAVILAND:  Speculation, argumentative.

9            Can you answer that?

10           THE WITNESS:  Like I said, I prefer

11  Zola -- or Lupron.

12  BY MS. LAWSON:

13       Q      That's fine.  I'm just trying to make, get

14  clear, is you prefer Zol -- I'm sorry, I did the

15  same thing.  Let me rephrase, say that again.

16           I'm just trying to make clear.  What I

17  understand you to be saying is that you prefer

18  Lupron because you think it treats your prostate

19  cancer better and you prefer the injection over the

20  Zoladex abdominal injection?

21       A      Yes.

22       Q      Is it correct that you prefer Lupron

Henderson Legal Services
(202) 220-4158

James E. Shepley                                        November 11, 2005
                          Reno, NV

                                                                    87

1    irrespective of the price?

2         A    Yes.

3              MR. HAVILAND:  Objection to form.

4    BY MS. LAWSON:

5         Q    So even if Lupron is more expensive than

6    Zoladex, you still prefer it.

7         A    Yes.

8              MS. LAWSON:  I have no further questions.

9              MR. HAVILAND:  Mr. Shepley, I just have

10   one question for you.

11                      EXAMINATION

12   BY MR. HAVILAND:

13        Q    The document that was put in front of you,

14   this Shepley 1, you were asked some questions about

15   that earlier.

16        A    Yes.

17        Q    Do you have another document at home that

18   is a bigger document than this that you have

19   reviewed?

20        A    Yes.

21        Q    So were you confused when you were asked

22   questions about this particular document?

James E. Shepley                                    November 11, 2005

Reno, NV

88

1     A    Yes, I thought this was different.

2     Q    **Okay.  I just want to be clear about this.**

3     A    Yes.  I thought this was a different one.

4          MS. LAWSON:  Because this one is double

5     sided and so thinner?

6          THE WITNESS:  I think so.

7          MS. LAWSON:  I just have a couple of more

8     questions.

9               FURTHER EXAMINATION

10    BY MS. LAWSON::

11    Q    **Did you, your version of the complaint,**

12    **which isn't double sided like mine, I was trying to**

13    **save some trees and my back --**

14         MR. HAVILAND:  Very admirable of you.

15    BY MS. LAWSON:

16    Q    **-- and my back from carrying it.  Your**

17    **version of the complaint, did you read it?**

18    A    No.

19    Q    **Did you read any part of it?**

20    A    Yes.

21    Q    **What part did you read?**

22    A    The first part.

# EXHIBIT 6

Anna Choice                                    November 10, 2005
                        Chicago, IL

                                                              1

1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF MASSACHUSETTS

3

4                                   CERTIFIED COPY

5   IN RE PHARMACEUTICAL INDUSTRY

6   AVERAGE WHOLESALE PRICE        MDL No. 1456

7   LITIGATION

8                              )  CIVIL ACTION:

9   THIS DOCUMENT RELATES TO       01-CV-12257-PBS

10  ALL CLASS ACTIONS

11                             )

12

13                  The discovery deposition of

14  ANNA CHOICE, taken in the above-entitled case,

15  before Karyn Chalem, CSR, RPR, on the 10th day of

16  November, 2005, at 1:35 o'clock p.m. at the offices

17  of Hagens, Berman, Sobol & Shapiro, 60 West

18  Randolph Street, Suite 200, Chicago, Illinois,

19  pursuant to agreement of counsel.

20

21  Reported by:  Karyn H. Chalem

22  License No.:  084-004167

Anna Choice                                      November 10, 2005
                        Chicago, IL

34

1    inflated?

2              MS. FEGAN:  Objection, calls for

3    speculation.  You can answer if you know.

4              THE WITNESS:  No, I don't know.

5    BY MR. DOVE:

6         Q    Have you ever asked your insurance

7    company why they're continuing to make payments

8    based on AWP?

9         A    No, I don't.

10        Q    And have you ever asked your union

11   why they're continuing to make payments based on

12   AWP?

13        A    No, I have not.

14        Q    Ms. Choice, what claims have you

15   brought against the defendants in this case?

16        A    What do you mean "what claims"?

17        Q    What allegations, what charges?

18        A    You mean personally?

19        Q    Yeah.  I mean, what are you accusing

20   the defendants of, if you know?

21        A    As far as I know, it's the medicine,

22   the overcharge of the medicine.

Henderson Legal Services
(202) 220-4158

Anna Choice                                          November 10, 2005
                              Chicago, IL

                                                                    35

1          Q      Other than the overcharge of the

2    medicine, are there any other claims that -- that

3    you believe you're making against the defendants in

4    this case?

5          A      No.

6          Q      And what's the basis for your

7    understanding that -- strike that.

8                 What's the basis for your allegation

9    that defendants are overcharging for medicine?  Why

10   do you think that?

11         A      Me personally, I don't know exact

12   amounts of what medicine is supposed to cost, but

13   I'm assuming my union does.  So I consider myself

14   trying to help them and, you know, maybe other

15   people that didn't want to come forth or other

16   people that, you know, they couldn't get in touch

17   with or whatever, you know, to help.

18         Q      Are you making claims based on your

19   payment for certain medications?

20         A      Me personally making claims against

21   them?

22         Q      Yes.

Anna Choice                                    November 10, 2005
                    Chicago, IL

                                                          36

1           A     Well, I do think they charge too

2    much for medicine.  Which specific one, I don't

3    know, but I really do think they do charge too much

4    for medicine.

5           Q     And when you say they charge too

6    much for medicine, you mean the doctors or -- who

7    are charging for medicine?

8                 MS. FEGAN:  Objection, form.  You

9    can answer.

10                THE WITNESS:  Well, I'm assuming the

11   doctors, they have their amount that they have to

12   pay to you all's client, and then maybe they might

13   put a little more in it.  I don't know.

14                MR. DOVE:  Off the record.

15                (Off record discussion.)

16                MR. DOVE:  Go back on the record,

17   please.

18   BY MR. DOVE:

19          Q     Ms. Choice, I'd like to show you a

20   document titled Third Amended Master Consolidated

21   Class Action Complaint Amended to Comply with

22   Court's Class Certification Order, Redacted

37

1    Version, and I'd ask if you've seen this document

2    before.

3            A      Yes, I have.

4            Q      And when is the first time you saw

5    this document?

6            A      I want to say maybe a month ago.

7    Maybe about a month ago.

8            Q      And did anyone ask you whether the

9    information contained in this document is correct?

10           A      No.  They asked me to read it.

11           Q      So they asked you to read it, but

12   did they ask you whether the information contained

13   in the document is correct?

14                  MS. FEGAN:  I'm just going to

15   object.  To the extent that questions were asked by

16   your attorney, I'm going to instruct you not to

17   answer.

18                  If you want to ask her if that

19   information is correct, that's a different

20   question, but I think you're using the word "they"

21   vaguely to get at attorney-client privilege

22   information, and I'm going to instruct you not to

Anna Choice                                      November 10, 2005
                          Chicago, IL

40

1          MS. FEGAN:  Objection, asked and

2     answered.  You can answer.

3               THE WITNESS:  What was the basis?

4     BY MR. DOVE:

5          Q    Why -- I guess I'm a little -- I

6     mean, it sounds to me like you're not sure what AWP

7     is.  Is that correct?

8          A    I remember reading, but I forgot

9     what it meant.

10         Q    And I guess my question for you is:

11    How do you know that the amounts you paid were

12    based on AWP?

13         A    As far as my insurance papers go, I

14    guess it's from that, you know, the bills that I

15    was sent.

16         Q    I mean, did somebody tell you that

17    the amounts you paid were based on AWP?

18              MS. FEGAN:  I'm going to object.  To

19    the extent that you had conversations with counsel

20    specifically regarding AWP or your bills, I'm going

21    to instruct you not to answer.  If you relied on

22    what counsel told you, you can tell him that, but

Anna Choice                                November 10, 2005
                        Chicago, IL

41

1    please don't go into the conversations themselves.

2              THE WITNESS:  I rely what my counsel

3    said.

4    BY MR. DOVE:

5         Q    So you said you relied on what

6    counsel told you.  I take it, then, that, you know,

7    the statement "the amounts she paid were based on

8    AWP," that's not based on your own personal

9    knowledge.  Is that correct?

10        A    I rely on what my counsel tells me.

11        Q    Earlier in the paragraph, it states

12   that from 2000 through 2005, Ms. Choice paid

13   out-of-pocket amounts for Rubex, BMS in

14   parentheses, comma, Zofran, GSK in parentheses,

15   comma, Cytoxan, BMS in parentheses, comma, Heparin,

16   comma, Dexamethasone Sodium, comma, and Taxotere,

17   Aventis in parentheses, period.

18             Do you see that statement?

19        A    Sure.  Yes, I do.

20        Q    What is your basis for believing

21   that you paid out-of-pocket amounts for those

22   drugs?

Anna Choice                                           November 10, 2005
                          Chicago, IL

42

1          A       These were on the bills that were

2     sent to me.

3          Q       So I understand they were on the

4     bills that were sent to you.  What is the basis for

5     your assertion that you paid out-of-pocket amounts

6     for those drugs?

7                  MS. FEGAN:  Objection, asked and

8     answered, but you can answer again.

9                  THE WITNESS:  As far as I know, I

10    did, from the bills that were sent to me.

11    BY MR. DOVE:

12         Q       And you paid those bills?

13         A       Not all of them I've paid.  I'm

14    still paying on them.

15         Q       Do you know for which drugs you have

16    paid and for which drugs you're still paying on?

17         A       No, I really don't.

18         Q       Ms. Choice, when were you diagnosed

19    with cancer?

20         A       2000.

21         Q       What type of cancer were you

22    diagnosed with?

Henderson Legal Services
(202) 220-4158