# EXHIBIT 7

| Glenn Randle | November 17, 2005 |
|---|---|
| | Chicago, IL |

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---oOo---

**CERTIFIED COPY**

| In re: PHARMACEUTICAL | MDL DOCKET NO. |
|---|---|
| INDUSTRY AVERAGE WHOLESALE | CIVIL ACTION |
| PRICE LITIGATION | 01CV12257-PBS |

THIS DOCUMENT RELATES TO:

ALL ACTIONS

_____/

Deposition of GLENN RANDLE, taken before GREG S. WEILAND, CSR, RMR, CRR, Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States District Court pertaining to the taking of depositions, at Suite 2000, One North LaSalle Street, in the City of Chicago, Cook County, Illinois, commencing at 8:11 o'clock a.m., on the 17th day of November, 2005.

Glenn Randle                                    November 17, 2005
                        Chicago, IL

                                                              126

1  what this check/EFT is in reference to?
2       A.   Common sense would tell me it is a check
3  number or electronic funds transfer reference
4  number.  That's -- I'm taking a guess at that, but
5  that would be the common sense.
6            MR. CHRISTOFFERSON:  Just for the record,
7  Defendants would request that to the extent
8  documents such as those that appear on SMW 0082,
9  that other documents such as this are in existence,
10 that they be produced to the Defendants to indicate
11 payment by the Fund in connection with these claims.
12           THE WITNESS:  82 or -- okay.
13           MS. CONNOLLY:  I'll consider your request.
14 I think we gave you everything, but we will look
15 into that.
16 BY MR. CHRISTOFFERSON:
17      Q.   With respect to the drugs that are listed
18 in Paragraph 4 of your affidavit that we discussed
19 earlier, were payments made by the Fund for these
20 drugs based on average wholesale price or AWP?
21           MS. CONNOLLY:  Objection, form.
22           THE WITNESS:  Do you want to restate?

Glenn Randle                                         November 17, 2005

Chicago, IL

127

1  BY MR. CHRISTOFFERSON:

2      Q.   Were the amounts that the Fund paid to

3  providers under the Wraparound Plus Program for the

4  drugs that you've identified in Paragraph 4, were

5  those amounts based on average wholesale price of

6  the drugs that are listed in Paragraph 4?

7           MS. CONNOLLY:  Objection to form.

8           You can answer.

9           THE WITNESS:  All payments were made based

10 on the Medicare-approved plan form.  No other

11 criteria was looked at by our third-party

12 administrator to my knowledge other than, you know,

13 you have to go to Medicare to find out that as I

14 would see.

15 BY MR. CHRISTOFFERSON:

16     Q.   Do you know if the average wholesale price

17 of any of the drugs that were reimbursed appears on

18 any of the documents that were produced by the Fund?

19          MS. CONNOLLY:  Objection, form.

20          THE WITNESS:  Only if it's a standard

21 process of Medicare.  I don't know personally.

22 BY MR. CHRISTOFFERSON:

**Glenn Randle**  November 17, 2005
Chicago, IL

128

1  Q.  What is your understanding of average
2  wholesale price?
3  A.  You know, it is what its name is as I
4  understand it.  It's some type of a standard that's
5  produced by some group and identified as just that
6  average wholesale price.  Now, how their sampling is
7  done and who is it that does it and whatever I don't
8  have any knowledge of.
9  Q.  Do you know who calculates average
10  wholesale price?
11  A.  No.
12  Q.  Do you know generally how it's used?
13       MS. CONNOLLY:  Objection to form.
14       THE WITNESS:  Do you want to restate?
15  BY MR. CHRISTOFFERSON:
16  Q.  Do you know what the purpose of average
17  wholesale price is?
18       MS. CONNOLLY:  Objection to form.
19       THE WITNESS:  Personally I don't.
20  BY MR. CHRISTOFFERSON:
21  Q.  Does the Fund keep track of the average
22  wholesale prices of the drugs that it reimburses?

Henderson Legal Services
(202) 220-4158

Glenn Randle                                              November 17, 2005
                            Chicago, IL

                                                                        129

1      A.   Personally, I don't know if they do.

2      Q.   **Are you familiar with the term wholesale**

3   **acquisition cost or WAC, W-A-C?**

4      A.   No.

5      Q.   **To your knowledge, does the Fund keep**

6   **track of wholesale acquisition costs or WACs for the**

7   **prescription drugs that it reimburses?**

8      A.   Not to my knowledge. I don't know.

9      Q.   **When did you first learn of this**

10  **litigation?**

11     A.   In the end of 2004 I think, at one of our

12  trustee meetings, Jan made us aware of it being out

13  there and asked us whether we wanted to --

14          MS. CONNOLLY: Don't tell him what Jan

15  told you.

16  BY MR. CHRISTOFFERSON:

17     Q.   I believe in your affidavit you said

18  **December 9th, 2004.**

19          Does that refresh your recollection?

20     A.   It's very possible if that's what I said.

21     Q.   And just to be clear, I think you

22  testified earlier that you're in the process of

Glenn Randle                                                November 17, 2005
                          Chicago, IL

                                                                    134

BY MR. CHRISTOFFERSON:

    Q.   Did you have the -- with respect to
Paragraph 25a on Page 13, when did you first see
this paragraph in this document?

    A.   Today.

    Q.   So you never had the opportunity to review
this before it was filed?

    A.   There's a document that I've looked at.
It's certainly not this thick, some information that
I've looked at.  I don't know if this is a
duplication of that myself.  Total recollection of
what that document said, I don't think so.  As I
said, we had that SMW Plus error there in the mid
paragraph.  That doesn't ring a bell with me.

    Q.   Do you know when you reviewed this other
document that you're talking about?

    A.   In the last two or three weeks.

    Q.   Do you know if it was after October 17th?

    A.   That I reviewed it, probably.

    Q.   Did you make changes, any changes to that
document?

    A.   No.

Glenn Randle                                         November 17, 2005
                        Chicago, IL

                                                                    135

1    Q.    What are the claims that the Fund is
2    asserting against the Defendant drug manufacturers?
3           MS. CONNOLLY:  Objection to form.
4           You can answer.
5           THE WITNESS:  Restate it.
6    BY MR. CHRISTOFFERSON:
7    Q.    What claims are you asserting, and by you
8    I mean the Fund, asserting against the Defendants in
9    this litigation?
10          MS. CONNOLLY:  Objection to form.
11          You can answer.
12          THE WITNESS:  For any overcharge relating
13   to physician-administered drugs for any of our
14   participants.
15   BY MR. CHRISTOFFERSON:
16   Q.    And overcharged by whom?
17   A.    By the provider, whomever it would be.  I
18   understand that some of these drugs are -- well, the
19   physicians for the most part administers, are
20   administering the drugs, so I guess they would be
21   the provider.
22   Q.    What is your understanding of the

Glenn Randle                                          November 17, 2005
                        Chicago, IL

136

1   documents that the Fund was supposed to produce to
2   Defendants pursuant to the court's order of
3   August 16th, 2005?
4         MS. CONNOLLY: Don't tell him anything you
5   learned from Jan or me.
6         THE WITNESS: Say the question again.
7   BY MR. CHRISTOFFERSON:
8       Q.   What's your understanding of the documents
9   that the Fund was required to produce pursuant to
10  the court's order in August?
11        MS. CONNOLLY: Same thing. If you know it
12  independent of talking to me or Jan, you can
13  testify.
14        THE WITNESS: To my knowledge, just claim
15  forms, paid claims.
16  BY MR. CHRISTOFFERSON:
17      Q.   We have already discussed, or you've
18  already testified I should say, that you requested
19  these documents from the third-party administrator.
20      A.   For them to produce.
21      Q.   For them to produce.
22           Did you request any documents from

Henderson Legal Services
(202) 220-4158

# EXHIBIT 8

## FILED UNDER SEAL

# EXHIBIT 9

## FILED UNDER SEAL

# EXHIBIT 10

**FILED UNDER SEAL**

# EXHIBIT 11

**FILED UNDER SEAL**

# EXHIBIT 12

**FILED UNDER SEAL**

# EXHIBIT 13

**FILED UNDER SEAL**

# EXHIBIT 14

**FILED UNDER SEAL**