# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

THIS DOCUMENT RELATES TO:

ALL CLASS ACTIONS

MDL No. 1456

CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris

## RESPONSE OF CLASS PLAINTIFFS TO LOCAL RULE 56.1 STATEMENT OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY AND <u>ONCOLOGY THERAPEUTICS NETWORK CORP.</u>

Class Plaintiffs, by their counsel, hereby respond to the Local Rule 56.1 Statement of

Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network Corp.

(collectively "BMS") and where necessary counter designate undisputed facts in opposition to

BMS's motion.

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

-1-

9.      Admitted.

10.     Admitted, but counter-designate that Sheet Metal Workers made reimbursements based on AWP for drugs prescribed to beneficiaries in the State of Massachusetts.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted, but counter-designate that, at the time BMS established a WLP, it knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

18.     Denied.

19.     Denied, except admit that BMS may sometimes raise the WLP for a drug while it is protected by patent.

20.     Admitted as a general proposition but denied that no changes were ever made to the list price of a drug that lost its patent protection.

21.     Admitted to the extent that BMS offered discounts and rebates to downstream customers but denied in all other respects, particularly the statement that such discounts were merely offered "[f]rom time to time" when discounts and rebates – indeed massive ones – were offered nearly all of the time.

22.     Admitted.

23.     Admitted, except denied with respect to direct sales.

24.     Admitted.

25.     Denied due to lack of knowledge (Plaintiffs have had no opportunity to examine Mr. Bell about his purported work).  However, if true, Plaintiffs counter-designate that a substantial amount of sales near WLP would create marketplace expectations of small spreads.

26.     Denied due to lack of knowledge (Plaintiffs have had no opportunity to examine Mr. Bell about his purported work).

27.     Denied due to lack of knowledge (Plaintiffs have had no opportunity to examine Mr. Bell about his purported work).

28.     Denied due to lack of knowledge (Plaintiffs have had no opportunity to examine Mr. Bell about his purported work).

29.     Admitted, but counter-designate that, at the time BMS established a WLP, it knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

30.     Denied, and counter-designate that communicating WLPs to the publications is the formulaic equivalent of communicating AWPs, and that BMS directed the *Red Book* to use a 25% markup factor, and the *Red Book* did so.

31.     Admitted.

32.     Denied.

33.     Admitted.

34.     Denied.

35.     Denied.  Plaintiffs counter-designate that the body of evidence demonstrates the opposite:  that BMS controlled AWPs.  *See, e.g.,* BMS Exs. 1-14, 24-27, 58; Kaszuba Aff., ¶ 2; Szabo Ex. 1.  Plaintiffs also counter-designate that, at the time BMS established a WLP, it knew: (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

36.     Denied.

37.     Admitted that the quote is an accurate reproduction of that statement as it appears in the document.  Plaintiffs counter-designate that, at the time BMS transmitted these prices to *First DataBank*, BMS knew:  (i) that an AWP would be established from that WLP based on a mark-up factor that BMS knew would be applied; (ii) what the AWP would be; (iii) that the AWP would be used by Medicare and other payors to reimburse providers; and (iv) that BMS would use the AWP for various purposes, including on price lists and other information provided to customers.

38.     Denied, as the question asked was objectionable and not cured.

39.     Admitted that Plaintiffs took the depositions of nine BMS sales representatives in the case.  Admitted that those witnesses gave carefully crafted and rehearsed testimony that the therapeutic attributes of BMS drugs were discussed in meetings with customers and that customers asked those witnesses about reimbursement.  Denied in all other respects.  Further, Plaintiffs counter-designate that BMS emphasized to marketing and sales representatives the importance of reimbursement to OBOs (*see, e.g.,* BMS Exs. 17, 49-50, 59-60), and BMS marketing and sales representatives engaged in active campaigns to market the spread (*see, e.g.,* 17-18, 41, 48, 50-56).

40.     Admitted.

41.     Denied.

42.     Denied.

43.     Denied.  Plaintiffs counter-designate that the report also states that:  "Our review was limited to a small judgmental sample of patients and physicians;" that only five physicians were surveyed (page 4 & App. I); that "[t]he conclusions reached may not apply in all cases" (page 11); and that a recommendation was made to conduct a broader survey "to assure widespread applicability" (page 11).  It is also undisputed that HCFA disagreed with one of the recommendations because "they lack assurance that a substantial number of physicians can obtain drugs at the lowest price available," *see* p. 12-13, and that HCFA generally believed that it required additional information.  P. 3.  It is also uncontested that the authors of this report discussed the spread between AWP and acquisition cost and that the report does not disclose the full extent of such spreads as reported by Dr. Hartman.  *See* Berman Decl. Supporting Plaintiffs' Motion for Partial Summary Judgment, Ex. 1.

44.     Denied.  Moreover, the letter is hearsay and is incomplete (no exhibits attached).

DATED:  April 7, 2006.                    By ___/s/ Steve W. Berman_____
                                               Thomas M. Sobol (BBO#471770)
                                               Edward Notargiacomo (BBO#567636)
                                          Hagens Berman Sobol Shapiro LLP
                                          One Main Street, 4th Floor
                                          Cambridge, MA  02142
                                          Telephone: (617) 482-3700
                                          Facsimile: (617) 482-3003

                                          **LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  101578 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

  I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 7, 2006, I caused copies of **RESPONSE OF CLASS PLAINTIFFS TO LOCAL RULE 56.1 STATEMENT OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY AND ONCOLOGY THERAPEUTICS NETWORK CORP.** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


        **/s/ Steve W. Berman**
        Steve W. Berman

001534-16  101578 V1