# EXHIBIT 1

```
 1                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

                     _____
 3

     UNITED STATES OF AMERICA,
 4                   Plaintiff,

 5   V.                              Criminal Action No. 05-10282-RCL

 6   SERONO LABORATORIES, INC.,      December 15, 2005, 10:31 a.m.
                     Defendant.      Boston, Massachusetts
 7   _____

 8

 9

10

11

12   TRANSCRIPT OF PLEA/SENTENCING OF SERONO LABORATORIES, INC.
13          BEFORE THE HONORABLE REGINALD C. LINDSAY
14                UNITED STATES DISTRICT COURT
15             JOHN J. MOAKLEY U.S. COURTHOUSE
16                   ONE COURTHOUSE WAY
17                    BOSTON, MA   02210
18

19

20

21

22          DEBRA M. JOYCE, RMR, CRR
               Official Court Reporter
23          John J. Moakley U.S. Courthouse
             1 Courthouse Way, Room 5204
24                 Boston, MA   02210
                     617-737-4410

25
```

1            THE COURT:  Do you agree; that is to say, do you
2   disagree with anything she said?
3            MR. GUNNING:  Yes.  We don't agree with all of the
4   facts in the information or the sentencing memo, but I did
5   understand your explanation of the material elements of the
6   crimes, and we agree to the facts that would support those
7   elements.
8            THE COURT:  You have the government's sentencing
9   memorandum?
10           MR. GUNNING:  As of yesterday afternoon, yes.
11           THE COURT:  And you read it?
12           MR. GUNNING:  Yes.
13           THE COURT:  What facts do you disagree with as
14  recited by Ms. Carmody and in the memorandum?
15           MR. GUNNING:  I can try to give some examples, but
16  I can't give you a laundry list --
17           THE COURT:  Well, I ask this question, because,
18  depending on what facts you disagree with, you may be
19  disagreeing with the crime that was committed.  It may be that
20  you're talking details, maybe this sale wasn't made, that sale
21  wasn't made, but some sales were made.  Maybe there were three
22  software packages, not four, details of that kind.  If that's
23  the thing you're talking about, okay -- I just need to know,
24  because I need to know whether you are actually admitting to
25  these crimes.

1    MR. GUNNING: I think it's detail, I think if we go
2 on to some of the things we agree with --
3    THE COURT: Maybe that would be helpful. Yes, that
4 would be helpful.
5    MR. GUNNING: I guess in the late 1990s we agree
6 that Serono Labs with RJL introduced the BIA machines that
7 contain software that was not approved by the FDA.
8    THE COURT: Okay. All right. And how about with
9 respect to count two?
10    MR. GUNNING: I guess as to count two, Serono
11 Laboratories also agreed to make payments to certain physicians
12 in the form of a trip to Cannes, France to attend a medical
13 conference.
14    THE COURT: And this agreement was with the
15 employees, the regional directors --
16    MR. GUNNING: The payments were made to physicians.
17    THE COURT: The payments were made, but who is it
18 that you agreed with the regional directors that they should go
19 out and make these offers?
20    MR. GUNNING: I guess on this point, at least as I
21 understand the information, it's a conspiracy to offer and pay
22 remuneration to physicians.
23    THE COURT: All right. Then let me ask you it this
24 way: Ms. Carmody explained what happened. There was a
25 meeting, two executives from the company came, and they

1  instructed regional directors to go out to get employees to
2  make these offers.  Have I summarized what you said?
3           MS. CARMODY:  Yes, your Honor.
4           THE COURT:  Do you agree with that much?
5           MR. GUNNING:  Can I consult just for a minute?
6           THE COURT:  You certainly may.
7           (Discussion off the record.)
8           MR. GUNNING:  I guess we acknowledge that Adam
9  Stupak, one of our former employees, has pled guilty.  We also
10 acknowledge -- understand that the other individuals that have
11 been charged are contesting their guilt.
12          THE COURT:  Well, that's not the same thing as
13 agreeing that the corporation -- Ms. Carmody said that the two
14 executives of the corporation had a meeting at the Boston
15 Harbor Hotel and instructed or directed regional directors to
16 go out or have people working for the regional directors to go
17 out and make offers to physicians that if they were to
18 prescribe the drug -- Ms. Carmody?
19          MS. CARMODY:  Yes, your Honor.
20          THE COURT:  -- to prescribe the drug in sufficient
21 numbers, 30, I think, they would get this trip to this
22 conference in France; and that 20 of such offers were made
23 pursuant to this direction, and 13 people went to that
24 conference.  I think that's what you said.
25          MS. CARMODY:  Yes, your Honor.

1    THE COURT:  All right.  Does the company agree --
2  does the company admit that that happened?
3        (Mr. Gunning conferred with counsel.)
4    MR. GUNNING:  The numbers and the details are -- I
5  have a hard time confirming those facts.  We do know that some
6  offers were made and some payments were made to physicians in
7  order to attend a conference in Cannes, France.
8    THE COURT:  Work with me, Mr. Gunning.  If the
9  company doesn't want to acknowledge a central fact, that's not
10 a problem for me.  Here's what I'm asking:  The government's
11 position is that the corporation conspired to make offers to
12 doctors.  And so the question I ask you, does the company admit
13 the facts as recited by Ms. Carmody relative to the conspiracy
14 to make this offer to physicians?  And the facts that she
15 recited are the ones I just mentioned, that this meeting was
16 held at the Boston Harbor Hotel.  That's part of what she
17 said.  A meeting -- sales were not going well, the meeting was
18 held at the Boston Harbor Hotel, regional directors were
19 invited, six regional directors -- I'll let you consult with
20 your lawyer if you want to, then I'll tell you what I want you
21 to hear from me.
22   MR. GUNNING:  I'm sorry, I'm being distracted.
23   THE COURT:  You consult and tell me when you're
24 ready.
25        (Mr. Gunning conferred with counsel.)

United States v. Serono Labs, Plea/Sentencing, 12/15/05

1             THE COURT: Okay, sir.
2             MR. GUNNING: So let me give this a try.
3             Serono Laboratories also agrees that it and at
4    least one company employee conspired to make payments in the
5    form of a free trip to Cannes, France for physicians.
6             THE COURT: Okay. Thank you, sir.
7             MR. GUNNING: Thank you.
8             Ms. Carmody, do you see any reason why I should not
9    take the plea of the corporation?
10            MS. CARMODY: No, I do not.
11            THE COURT: Mr. Depippo, do you see any reason why
12   I should not take the plea of the corporation?
13            MR. DEPIPPO: No, your Honor.
14            THE COURT: To these two counts?
15            MR. DEPIPPO: No, your Honor.
16            THE COURT: All right. Mr. Gunning, please stand.
17            THE CLERK: Mr. Gunning, Serono Laboratories has
18   been named in two counts in an information charging in count
19   one conspiracy to introduce into interstate commerce, with
20   intent to defraud and mislead, adulterated medical devices in
21   violation of Title 18 United States Code 371; and in count two
22   with conspiracy to offer to pay illegal remuneration to health
23   care providers in violation of Title 18 United States Code
24   section 371.
25            How do you plead to counts one and two of the

1    information, guilty or not guilty?
2            MR. GUNNING:  Guilty.
3            THE COURT:  It is the finding of the Court that
4    Mr. Tom Gunning is an officer of the defendant corporation
5    Serono Laboratories, Incorporated and that the board of
6    directors of that corporation empowered him to waive indictment
7    of the corporation of the two charges set forth in the
8    information; that Mr. Gunning is -- was likewise authorized by
9    the directors of the corporation to enter a plea of guilty to
10   the two counts of the information; and that the corporation is
11   financially able to pay the fine set forth in the plea
12   agreement between the United States and the corporation; that
13   the corporation is aware of the nature of the charges in the
14   information and the consequences of pleading guilty to those
15   charges; and, finally, that the plea of guilty that Mr. Gunning
16   has entered on behalf of the corporation is a knowing and
17   voluntary plea supported by an independent basis in fact
18   containing each of the essential elements of each of the
19   offenses charged in the information.
20           I will determine that the corporation may be found
21   guilty of these two offenses.  Acceptance of this plea,
22   however, I will await information that I receive in the
23   specific sentencing phase.
24           So let's proceed to the sentencing phase.
25           I normally ask, but I don't think it's really