UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION
_____

THIS DOCUMENT RELATES TO:
State of California, *ex rel.* Ven-A-Care v.
Abbott Laboratories, *et al.*
03-cv-11226-PBS
_____

)
)
)
)
)
)
)
)
)
)
)

MDL No. 1456
Master File No.  01-12257-PBS

Judge Patti B. Saris

**PLAINTIFFS' REPLY BRIEF IN OPPOSITION TO JUDICIAL NOTICE**

## INTRODUCTORY STATEMENT

Although Defendants claim they merely asked the Court to "take judicial notice of a handful of publicly-available documents," Defs.' Opposition To Plaintiffs' Objections Pursuant to Rule 201(e), at 1 (hereafter "Defs.' Opp."), in fact they urge the Court's scrutiny of matters well beyond the First Amended Complaint (FAC). Those matters are intensely disputed, and at most might undermine the scienter allegations underpinning some of the claims in the FAC. It would be improper to address Defendants' motion to dismiss based on their submission of materials which are both outside the FAC, and inappropriate for judicial notice.[1]

Separate and apart from the point that Defendants' ostensible defense of government knowledge cannot be decided as a matter of law on a motion to dismiss, each of the documents submitted for judicial notice by Defendants suffers from the disabling flaws set forth below. Finally, although Defendants disavow any attempt to have this Court draw broad conclusions from the submitted documents, it is clear that the isolated facts themselves would be irrelevant, which is itself reason to decline judicial notice.[2]

---

[1] Defendants would have this Court issue a dispositive order precluding the State from developing a factual record pertaining to, inter alia, the following: the State's efforts to manage the complex reimbursement issues pertaining to the thousands of drugs for which it reimburses thousands of providers for over 147,000 claims per week; the consistently identified impediments to obtaining reliable, timely and specific information pertaining to market prices in the pharmaceutical marketplace; the administrative difficulties and cost in devising an alternative system of pharmaceutical reimbursement; the fact that the existing AWP reimbursement system leads to reasonable reimbursement levels if appropriate average wholesale prices are actually reported by manufacturers; and the evolution of the State's understanding of the manner and mechanisms by which drug manufacturers manipulate and distort the prices employed by Medi-Cal to effectuate provider reimbursements for their own financial benefit. While the State might well argue that this entire focus is irrelevant and inadmissible, it is clear that the subject cannot be considered at all without a full factual record.

[2] In fact, it is clear that Defendants continue to seek to have this Court draw broad conclusions from the submitted documents, far beyond the mere existence of the documents. See, e.g., Defs.' Opp. at 6, where Defendants argue that this Court should take judicial notice of selected price lists preceding the relevant time period to show a "pattern of behavior – in this case California's long-standing awareness of and *acquiescence in* paying providers significantly more than their actual costs for acquiring drugs." (emphasis added).

## ARGUMENT

**I.    The Extent and Timing of the States Knowledge of Drug Prices Is An Intensely Factual Subject That is Wholly Beyond the Four Corners of the Complaint.**

Just recently, the state court in Wisconsin dealing with a request for judicial notice on a motion to dismiss in a parallel case, decided that it would not take judicial notice of materials outside the complaint ostensibly representing the public record of what the government knew. *State of Wisconsin v. Amgen Inc.*, Case No. 04-CV-1709, Partial Decision and Order dated April 3, 2006 at 7 (Circuit Court, Dane County, State of Wisconsin) (copy of opinion attached as Exhibit 1) ("the contents of hefty reports to Congressional committees and sub-committees, testimony before such bodies, news articles, reports to agencies are not proper subjects for judicial notice"). Although the Wisconsin court was influenced by the volume of the submissions[3], its analysis is nonetheless helpful for this case.  First, the court decided that the issues raised on a motion to dismiss should be decided within the four corners of the complaint, in accordance with established judicial doctrine. *Id.* at 7.  Second, the court determined that the subject of the government's knowledge was far too complex to be determined on a motion to dismiss, especially where "the submissions do not appear to establish any clear factual conclusions" and it was not clear that "all the facts the parties wish the Court to consider are relevant." *Id.* at 8.  Third, with regard to defendants' argument that the public record belied the "reliance" allegations of the complaint, the court held that "it is far from clear that the documents selected by Defendants indisputably establish that Plaintiff in no way relied upon

---

[3] Notably, although defendants herein confined their extra-complaint submissions to under 100 pages, they acknowledge that they randomly identified only some pages of the price lists on which they rely – candidly admitting that their point could only be established with some level of specificity if they submitted hundreds of additional pages of documents. Defts.' Mem. Re Motion to Dismiss, at 9 n.5.  Defendants also neglected to submit approximately 35 pages of the OIG report attached as Exhibit G.

Defendants' AWPs." *Id.* at 14.   Finally, the volume of submissions in the Wisconsin case is no different from what would have to be considered here to allow the Court to make accurate factual findings as to the state of the State's knowledge and any impact of that knowledge on the allegations in the FAC.  Since Plaintiffs do not believe that it is appropriate for these matters to be decided on a motion to dismiss, prior to discovery and prior to any judicial determination that these matters are even relevant, Plaintiffs have not inflated the record with the litany of additional public record documents that properly pertain to this subject.[4]

As the Wisconsin court noted, judicial notice must be denied where the submitted documents fail to establish the point for which they are submitted.  *Accord:  United States v. Jaimes,* 297 F. Supp.2d 1254 (D. Haw. 2003), where the court refused to take judicial notice of the "fact" that a substantial amount of currency is contaminated by cocaine, where the submitted government study

> shows, at best, that seventy to eighty percent of the currency circulating in Chicago, Houston and Miami contains trace to high levels of cocaine contamination when tested using a gas chromatograph/mass spectrometer. This sheds very little light on the contamination of currency in San Diego. . .Thus, even with the Report, San Diego's percentage and level of contamination are left entirely to assumption.

---

[4] The existence of a vast public record pertaining to Medicaid pharmaceutical reimbursement is probably the one fact as to which this Court can properly take judicial notice at this stage of the proceedings.  For example, the OIG report entitled State Strategies to Contain Medicaid Drug Costs, October 2003, which Defendants attached in part as Exhibit G, identifies over a dozen reports in its endnotes relating directly to the topic of Medicaid reimbursement policies and drug pricing studies during the relevant time period.  E.g., n. 1 (referring to annual Financial Management Reports of CMS' Center for Medicaid and State Operations); n. 2 (Bruen, Brian. "States Strive to Limit Medicaid Expenditures for Prescribed Drugs"); n. 18 (State Medicaid Director Letter 02-014, Sept. 18, 2002); n. 25 (OIG, "Medicaid Pharmacy: Additional Analyses of the Actual Acquisition Costs of Prescription Drug Products (A-06-97-00041); OIG, "Medicaid Pharmacy: Actual Acquisition Costs of Prescription Drug Products for Brand Name Drugs (A-06-96-00030));  n. 26 (OIG, Cost Containment of Medicaid HIV/AIDS Drug Expenditures (OEI-05-99-00611); n. 32 ("Overview of Select State Maximum Allowable Cost (MAC) Programs" The Health Strategies Consultancy LLC, Draft Report to CMS, Dec. 2002).

If the Court were to take judicial notice of the documents submitted by Defendants, Plaintiffs request that this motion be converted to a motion for summary judgment, which would allow the appropriate discovery to be had and full evidentiary submissions to be made.

*Id.* at 1256.  Here, Defendants' submitted documents only show random knowledge of certain drug prices, at certain periods of time, and consistently demonstrate a great variation in price inflation amongst different drug products.  Furthermore, "documents are judicially noticeable only for the purpose of determining what statements are contained therein, *not to prove* the truth of the contents or *any party's assertion of what the contents mean*." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (S.D. Cal. 2004) (emphasis added).  In any event, the submitted documents do not demonstrate what accounted for the variation between acquisition costs and reported Average Wholesale Prices, and nothing submitted by Defendants suggests that the State was aware that manufacturers were manipulating the spreads for their own marketing purposes.

## II.    Each of the Submitted Documents is Inappropriate for Judicial Notice.

The First Circuit has made clear that judicial notice is to be used sparingly to take the place of adversarial discovery and presentation of evidence:

> Courts have tended to apply Rule 201(b) stringently--and well they might, for accepting disputed evidence not tested in the crucible of trial is a sharp departure from standard practice. . . Court records aside, some government documents are subject to judicial notice (albeit under certain limited conditions) on the ground that information contained therein is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See, e.g., Massachusetts v. Westcott, 431 U.S. 322, 323 n. 2, 97 S. Ct. 1755, 1756 n. 2, 52 L. Ed.2d 349 (1977) (*per curiam*) (taking judicial notice of fishery licenses as reflected in the records of the Coast Guard's Merchant Vessel Documentation Division). The information here at issue does not reach this safe harbor. In the first place, the information is not contained in generally available government records. Second, the court did not acquire it by direct resort to any public record, but, rather, through untested unilateral submissions. Third, a monetary figure affecting a plaintiff's ultimate award, even though eventually quantifiable, seems to us to be the sort of disputed adjudicative fact for which the adversarial truth-finding process is well suited.

4

*Lussier v. Runyon*, 50 F.3d 1103, 1113-14 (1st Cir. 1995).

Each of Defendants' documents is objectionable, either on its face or for the point for which it was submitted. Exhibit C, for example, is an Issue Brief prepared by a private consulting firm and Exhibit B is a periodic publication of the Medi-Cal Policy Institute, a project of the California HealthCare Foundation, which identifies itself as an "independent philanthropy" (hardly official *public* records that satisfy the criteria of Fed. R. Evid. 201, as Defendants suggest). *Cf. Koelsch v. Town of Amesbury*, 851 F. Supp. 497, 499 (D. Mass. 1994)(Saris, J.) (taking judicial notice of town charter - a quintessential public record - which was referenced in complaint). Exhibit B, moreover, contradicts Defendants' assertion that California "took  no steps to reduce its reimbursement to providers," Defs.' Mem. Re Mot. To Dismiss at 10, because the publication specifically highlights the fact that "[s]ince 1995, the State legislature has made several adjustments to the reimbursement formula, the net result being that all drug claims . . . are decreased by $0.25 each year." Exh. B at 1. Exhibit D, a *Preliminary* Legal Review of Proposed Title 22 Regulation, is plainly not an authoritative government document that permits conclusions of indisputable fact, and it cannot support judicial notice of a "fact" that it does not even purport to address (that California's MAIC program "caps the maximum amount that Medi-Cal will reimburse for most generic drugs.") *See* Def. Mem. Re Mot. To Dismiss at 8.

Defendants claim they refer the Court to Relator's sealed complaint only for the proposition that the State knew of the sealed complaint in 1998. *See* Defs.' Opp. at 7. But it serves no purpose for Defendants to demonstrate that the State knew of the sealed complaint. This is not a situation where inquiry notice of a potential claim is significant, as for statute of limitation purposes. The

5

only possible significance of the sealed *qui tam* complaint could be if it constituted clear knowledge on the part of the State of the truth of the allegations in the complaint – and Plaintiffs doubt that Defendants would concede that point. Defendants cannot otherwise establish any legal significance to any delay by the State in responding to the allegations or to any deliberate decision to respond by investigation and eventual litigation. *See, e.g., In re Lupron Mktg. and Sales Practices Litig.,* 295 F. Supp.2d 148, 168 n. 19 (D. Mass. 2003) ("recognition on the part of government regulators of inefficiencies in the administration of Medicare does not, as defendants contend, amount to condonation of fraudulent conduct").[5]

Exhibit F, a Final Statement of Reasons concerning adoption of then-new Federal Allowable Costs in 1987, does acknowledge the profit margin Defendants reference on at least a few drugs. However, the Statement explains California's reasons for expanding cost *limitations* on generic drugs (as Defendants acknowledged in their Motion to Dismiss, at 9, n6), and the Statement refers to Average Wholesale Price as though it is a real indicator of the price that a provider pays.[6] The Statement also explains why the State rejected the suggestion of the California Pharmacists Association to transfer ingredient cost savings to the State into dispensing fee increases for the

---

[5] Furthermore, Defendants take too narrow a view when they claim that the State did nothing in response to the qui tam complaint. The State initiated an extensive investigation, pursued documents through investigatory subpoenas, engaged in negotiations with many manufacturers to secure both monetary damages and better price reporting practices, intervened in the lawsuit by Dey Laboratories against First Databank, participated in nationwide settlements against named Defendants Bayer and GlaxoSmithKline, and relied also on efforts by the federal government to deal with Defendants' inflated price reporting, including Congressional hearings, federal investigations and prosecutions and issuance of Guidance regarding pharmaceutical pricing that rather explicitly condemned the conduct alleged in the FAC. *See In re Pharm. Ind. Average Wholesale Price Litig.,* 263 F.Supp.2d 172, 179 n.6 (D.Mass. 2003) (citing OIG , "Compliance Program Guidance for Pharmaceutical Manufacturers" (dated April 2003) : "It is illegal for a manufacturer knowingly to establish or inappropriately maintain a particular AWP if one purpose is to manipulate the 'spread' to induce customers to purchase its product").

[6] In deciding to implement many of the new Federal Allowable Cost limitations, the State determined that drug products are " 'available' where at least one regional wholesaler regularly carries the drug at an Average Wholesale Price at or below the FAC price. Application of this standard will insure that California pharmacists can actually obtain such drug products at an AWP which is at or below the FAC price." Ex. F at 2.

pharmacists.  Ex. F at R-84-87.  Viewed in context, the document hardly supports Defendants'

argument that the State knew of or endorsed their spread system.  Exhibit E, the random selection

of price information from 1987, predates the complaint and cannot show the State's knowledge of

any drug prices during the relevant time period.  Tellingly, in attempting to resurrect Exhibits A and

E in their Opposition, Defendants admit that they are really seeking to have the Court venture far

beyond the straightforward fact that these price lists and studies existed or even that California was

aware of them.  Instead, Defendants peremptorily demand that the Court conclude – on a motion to

dismiss – that California "*acquiesce[d]* in paying providers significantly more than their actual costs

for acquiring drugs."  Defs.' Opp. at 6 (emphasis added).  As Defendants' own Exhibit G concludes:

> "the lack of accurate drug price information constitutes a significant
> barrier to containing Medicaid drug costs.  Most States rely on AWP
> and or WAC cost to determine pharmacy reimbursement.  These are
> references prices that States obtain from First Databank, a private
> company which issues a national drug pricing compendium.  Reports
> by the OIG and other researchers have found AWP to substantially
> overstate pharmacies' actual acquisition costs and have discredited its
> validity.  OIG audits have also suggested that WAC is unreliable.
>
> "Despite the widely recognized unreliability of AWP and WAC as a
> measure of pharmacy acquisition cost, States have few alternative
> sources for drug prices.  Actual sales data are proprietary .... One
> State criticized the "obfuscation of price" by drug manufacturers."

State Strategies to Contain Medicaid Drug Costs, October 2003, at p 9.  It is ludicrous to suggest

that this Court could find that Defendants have established as indisputable fact that they made full

disclosure to the State of the facts surrounding their self-serving spreads and that the State

nonetheless acquiesced in paying those spreads.

### III.     Judicial Notice Should Not be Taken When the Submitted Facts are Irrelevant.

Defendants contend that Plaintiffs' arguments pertaining to the irrelevancy of the

submitted facts should not affect this Court taking judicial notice of those facts. Def. Opp. at 1 n.1.

Defendants are wrong. It is well established that judicial notice is only appropriate if the requested

submissions are relevant. The court in *Guerra v. Teradyne*, 2004 U.S. Dist. LEXIS 28547 (D. Mass.

2004), explained the analysis where potentially indisputable facts are submitted for judicial notice

but the facts are irrelevant:

> This court recognizes that in certain circumstances it may be
> appropriate for a court to take judicial notice of a stock index.
> Nevertheless, in the instant case, the state of the industry in general
> is not relevant to whether the Complaint states a cause of action.
> Thus, if the Complaint states a claim of fraud, Teradyne might seek
> to defend itself by arguing that its stock decline was consistent with
> the industry, making the stock index relevant. *At the present stage of
> this case, however, such a fact-based defense is not relevant.* The
> stock index relates to information beyond the Complaint and is not
> referenced in the Complaint. The motion to strike, therefore, is
> allowed.

*Id.* at 7-8 (emphasis added).

Since, as argued in Plaintiffs' Opp. to the Motion to Dismiss and Plaintiffs' Sur-Reply,

mere government awareness of market prices below reported Average Wholesale Prices does not

defeat Plaintiffs' claims, these documents are irrelevant at this juncture of the case and judicial

notice would be improper.

## CONCLUSION

For the foregoing reasons and as set forth in Plaintiffs' Objections to Judicial Notice and

Plaintiffs' briefs opposing Defendants' Motion to Dismiss, the Court should decline to take judicial

notice of the documents attached to Defendants' motion to dismiss.

In addition, the Court should not prematurely accept Defendants' submitted documents for

possible use at a later stage of the case. If later efforts are made to have the Court take judicial notice

8

of such documents, the appropriate analysis at that point would require inquiry into whether the documents establish some indisputable fact, whether the facts presented for judicial notice are relevant, and whether judicial notice of some documents without regard to the full panoply of studies would be misleading.

Respectfully submitted,

BILL LOCKYER
Attorney General for the State of California

Dated: April 17, 2006

By: ____/s/ Nicholas N. Paul_____
NICHOLAS N. PAUL
Supervising Deputy Attorney General
California Department of Justice
1455 Frazee Road, Suite 315
San Diego, California 92108
Telephone: (619) 688-6099

**Attorneys for Plaintiff,
STATE OF CALIFORNIA**

THE BREEN LAW FIRM, P.A.

BERGER & MONTAGUE, P.C.

By: ___/s/ James J. Breen_____
JAMES J. BREEN

By: ___/s/ Susan Schneider Thomas___
SUSAN SCHNEIDER THOMAS

5755 No. Point Parkway, Suite 39
Alpharetta, Georgia 30022
Telephone: (770) 740-0008

1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

**Attorneys for *Qui Tam* Plaintiff,
VEN-A-CARE OF THE
FLORIDA KEYS, INC.**

**Attorneys for *Qui Tam* Plaintiff,
VEN-A-CARE OF THE
FLORIDA KEYS, INC.**

9

## CERTIFICATE OF SERVICE

I, Nicholas N. Paul, hereby certify that on April 17, 2006, I caused a true and correct copy of the foregoing, **PLAINTIFFS' REPLY BRIEF IN OPPOSITION TO JUDICIAL NOTICE, AND EXHIBIT 1** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated:  April 17, 2006

        /s/ Nicholas N. Paul
        NICHOLAS N. PAUL
        Supervising Deputy Attorney General

# EXHIBIT 1

STATE OF WISCONSIN          CIRCUIT COURT          DANE COUNTY
                               BRANCH 7

STATE OF WISCONSIN,

                    Plaintiff,

                                                      Case No. 04-CV-1709

        v.

AMGEN INC., et. al.,

                    Defendants.

## *PARTIAL* DECISION AND ORDER

### <u>EXPLANATION</u>

*The unusual step of issuing different parts of this Decision at different times is being taken for two reasons:*

*1.          In recognition that composing and issuing a decision addressing ALL the many aspects of Defendants' motion to dismiss is taking an inordinately long time, and*

*2.          Substantial re-pleading is being Ordered in the first sections of this Decision. That amending process can be undertaken while the balance of the motion is being addressed.*

### BACKGROUND[1]

Plaintiff, the State of Wisconsin (State), is suing thirty-seven manufacturers of prescription drugs.  The claim is that these companies took "advantage of the enormously complicated and non-transparent market for prescription drugs to engage in an unlawful scheme to cause Wisconsin and its

---

[1] This background section will form the basis for future rulings and will not be repeated.

citizens and payers to pay inflated prices for prescription drugs." <u>First Amended Complaint</u>, ¶ 1.

According to the Amended Complaint, the prescription drug market is quite complex, difficult to understand, and somewhat unusual.  First, the market itself is composed of a large number of products.  The market is allegedly made up of over 65,000 National Drug Codes - a separate code for each quantity of each drug manufactured by each manufacturer.  Second, in the prescription drug market the entity that decides to purchase the product and the entity that pays for the product are often separate.  Allegedly, "providers" such as physicians, hospitals and pharmacies initially purchase drugs from manufacturers for resale to patients.  "Payers," private insurance companies, self-insured entities and government entities, pay the "providers" for the drugs.  The "providers," however, in the prescription drug case function not only as middlemen or resellers, but also as the decision-makers regarding which particular drugs should be purchased by the patient.  This dual role played by "providers" creates, Plaintiff alleges, the opportunity for a "spread."  A "spread" is created when the "provider" is able to sell a drug to a "payer" for a price higher than the "provider" paid to the manufacturer.  Third, Plaintiff alleges that the entire system, including pricing information, is in a shrouded in secrecy enforced by contractual agreement and supported by mutual self-interest.

Therefore, the State claims, it is difficult to gather accurate pricing information for the prescription drug market.  For this reason, in determining

reimbursement, the State allegedly relies heavily on information from Defendants themselves.  Among the pricing information available from Defendants are prices known as Average Wholesale Price (AWP) and Wholesale Acquisition Cost (WAC), both of which are prices disseminated by the Defendants to the public via publication in certain medical compendia.  Far from representing the actual price paid by an average provider, however, virtually every reported AWP is an inflated – some grossly - number which Defendants have used simply as a starting point from which to negotiate "spreads."  They have continued to report such AWPs, Plaintiff alleges, even though they are well aware that Wisconsin's drug reimbursement programs rely almost entirely on the reported AWPs.  Similarly, Defendants have allegedly represented that WACs were wholesaler "break even" prices, but have used WACs as prediscount prices.

Furthermore, Defendants have allegedly effectively concealed the existence and extent of the price misreporting via various schemes.  First, drug manufacturers allegedly purport to sell drugs to "providers" at a stated price, e.g. WAC, but then make use of "charge backs," free drugs and/or phony grants to arrive at a lower actual acquisition cost.  Second, agreements between Defendants and "providers" allegedly often contain contractual provisions requiring secrecy.  Finally, Defendants allegedly charge different prices to different sorts of "providers," allegedly further concealing the actual prices.

The inaccuracy of the published prices and Defendants' efforts to keep the fact and extent of the misreporting secret have, Plaintiff alleges, resulted in injury to the State and its citizens.   The State in funding its portion of the Medicaid program expects to spend approximately $610 million on pharmaceuticals in fiscal year 2004-2005.  Wisconsin citizens eligible for and participating in Medicare Part B make co-payments and premium payments to secure certain pharmaceuticals.  Each has allegedly relied on Defendants' reported prices, particularly AWPs, and has, thus, overpaid as a result of Defendants' overstated reported prices.

In addition, private "payer" organizations in Wisconsin have allegedly been harmed by Defendants' dealings with Pharmacy Benefit Managers (PBMs). PBMs are organizations which allegedly gather together information regarding cost, availability and comparability or many drugs, and offer to "payers" their services in negotiating lower drug prices.  By the late 1990's, four PBMs allegedly controlled approximately 70% of what Plaintiff terms the "reimbursement market."  Defendants have allegedly paid fees and rebates to these four major PBMs, some of which fees and rebates have been kept secret from "payer" clients and some of which rebates are based on AWPs.  These fees and rebates, Plaintiff alleges, have created an incentive for PBMs to list pharmaceuticals with inflated AWPs on their formularies contrary to their "payer" clients' interests.  Thus, Plaintiff claims the State, its citizens and private "payers" doing business in Wisconsin have been harmed by Defendants.

4

Plaintiff lists five Counts in the Amended Complaint.  It alleges that Defendants have violated Wis. Stat. §§ 100.18(1), 100.18(10)(b), 133.05, 49.49(4m)(a)(2) and have been unjustly enriched.  The State specifically requests injunctive relief, compensatory damages, restitution to the State and various private entities, treble damages for violations of Wis. Stat. § 133.05, forfeitures under several statutes, disgorgement of unlawful profits and its costs in bringing this action.

Defendants have moved to dismiss the Amended Complaint on several grounds.  Collectively, the Defendants argue that this Complaint:

1.   is insufficient, both under notice pleading and in particular under Wis. Stat. § 802.03(2),

2.   does not establish a causal link between the alleged misconduct and the alleged injuries,

3.   alleges certain claims which the Attorney General is not empowered to pursue,

4.   fails to allege certain required elements for several claims,

5.   is barred by the "filed rate" doctrine, and

6.   contains claims that are barred by the applicable statutes of limitations.

Additionally, several Defendants have alleged grounds for dismissal that are specific to their situations.[2]

_____

[2] There are, additionally, several outstanding motions.  The motions for leave to file additional authority (Plaintiff's motions filed November 3 and 8, 2005 and Defendants' motion filed February 3, 2005) are **granted**.  The other outstanding motions are considered, as appropriate, below.

## STANDARD OF REVIEW

The recent case (July 2005), <u>Doe v. Archdiocese of Milwaukee</u>, 2005 WI 123,

294 Wis. 2d 307, 700 N.W. 2d 180, ¶¶ 19 &29, offers a good summary of how to analyze

a motion to dismiss:

> . . . [a] motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." <u>BBB Doe</u>, 211 Wis. 2d 331, 565 N.W. 2d 94.. A reviewing court "accept[s] the facts pled as true for purposes of [its] review, [but is] not required to assume as true legal conclusions pled by the Plaintiffs." *Id.* Although the court must accept the facts pleaded as true, it cannot add facts in the process of liberally construing the complaint. 3 Jay E. Grenig, *Wisconsin Practice: Civil Procedure* § 206.11 at 304 (West, 3d ed.2003) (hereinafter Grenig, *Civil Procedure* ). Rather, "[i]t is the sufficiency of the facts *alleged* that control[s] the determination of whether a claim for relief" is properly pled. <u>Strid v. Converse</u>, 111 Wis.2d 418, 422-423, 331 N.W.2d 350 (1983) (emphasis added).
>
> The court should not draw unreasonable inferences from the pleadings. <u>Morgan v. Pa. Gen. Ins. Co., 87 Wis.2d 723, 731, 275 N.W.2d 660 (1979)</u>. After liberally construing the complaint, a court should dismiss a Plaintiff's claims if it is "quite clear" that there are no conditions under which that Plaintiff could recover. *Id.; see also* <u>Prah v. Maretti, 108 Wis.2d 223, 229, 321 N.W.2d 182 (1982)</u> (both citing Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801-803*, 59 Marq. L.Rev. 1, 54 (1976) (hereinafter Clausen, *The New Wisconsin Rules of Civil Procedure* )). In other words, "A claim should not be dismissed ... unless it appears to a certainty that no relief can be granted under any set of facts that Plaintiff can prove in support of his allegations." <u>Morgan,, 87 Wis.2d at 732, 275 N.W.2d 660</u>.

## DECISION [3]

First, these parties must be made aware that the reams of extra material

submitted and any beyond-the-Complaint "facts" inserted into the briefs will <u>not</u>

be factored into this decision.  The facts being examined are solely those set forth

in the First Amended Complaint.  Defendants, especially, have attempted to set

forth hundreds of pages of additional facts to be considered in making this

---

[3]  At least part of the reason this decision has been so delayed is that the case was removed this past summer, for the second time, to Federal Court.  On-going work toward on this decision the motion had to be abandoned, and then started up anew, when time permitted, after the file was returned in November and other decisions issued on cases that had become ready while this case was in Federal Court.

ruling. But neither side has provided adequate justification for going beyond the four corners of this Complaint. This boundary is black letter law for addressing a motion to dismiss. *See, e.g.* <u>Wolnak v. Cardiovascular & Thoracic Surgeons of Central Wisconsin</u>, 706 N.W. 2d 667, ¶ 48 (Ct. App. 2005), which cites with approval <u>Heinritz v. Lawrence University</u>, 194 Wis. 2d 606, 614, 535 N.W. 2d 81 (Ct. App. 1995).

While it is true that pursuant to Wis. Stat. § 902.01, a Court may take judicial notice of certain facts, including legislative history, if appropriate, what is being offered here goes far beyond what is generally so noticed. For example, the contents of hefty reports to Congressional committees and sub-committees, testimony before such bodies, news articles, reports to agencies are not proper subjects for judicial notice.[4]

These submissions also go beyond what is helpful to the decision maker. Having to factor in lengthy agency reports and stacks of other information in deciding the sufficiency of the Amended Complaint creates more confusion than it resolves. As a practical matter, for the uninitiated such as this writer, the world described in the Complaint is foreign, complicated, and confusing. Adding more information at this stage of the proceedings only magnifies that reaction, rather than aiding in this decision. It is understandable that the Defendants, especially,

---

[4]  See, footnote 6 on p. 16 of Plaintiff's brief.

want this lawsuit resolved in their favor as soon as possible, but human and legal limitations must still be recognized.[5]

Equally problematic is that the submissions do not appear to establish any clear factual conclusions. If they did, both sides would not be trying to present contrary information.[6] It is not even a given that all the facts the parties wish the Court to consider are relevant. This motion is to test the sufficiency of the pleadings in the Complaint; it is not a motion for summary judgment or an exercise to determine which of two competing views of the eventual evidence is more convincing or logical. Such an exercise should not and will not be undertaken at this juncture.

## I.     THE SUFFICIENCY OF THE PLEADINGS:

### A.     Notice Pleading:

Despite its length and complexity, this Amended Complaint is indisputabley lacking detail as to the specific actions of individual Defendants.[7] Under Wisconsin's "notice pleading" rules, such outline pleading is not necessarily fatally defective, provided that the parties being sued can figure out the basis of the claims against them. Again, reference is made to the <u>Archdiocese of Milwaukee</u> case, 284 Wis. 2d at 328-329:

> ¶ 35 In 1975 this court adopted new rules of Wisconsin civil procedure. 67 Wis.2d 585 (1975). One of the "keystones of the new procedural system" was Wis. Stat. § 802.02 (1977-78), which signaled Wisconsin's adoption of "notice pleading."Wilson v. Cont'l Ins. Cos., 87 Wis.

---

[5] Since it seems almost a certainty that for whatever causes survive this motion to dismiss, summary judgment motions will be filed, I want to be clear that resubmission of materials is not necessary or wanted. All that need be added are whatever affidavits required under summary judgment procedure.
[6] See i.e., pp. 3-18 of Plaintiff's brief.
[7] Eleven pages are devoted to the caption and listing of parties.

2d 310, 316, 274 N.W. 2d 679 (1979); Clausen, *The New Wisconsin Rules of Civil Procedure* at 37. Under § 802.02(1)(a), a complaint must simply contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." These claims are to be liberally "construed [so] as to do substantial justice." Wis. Stat. § 802.02(6); Prah, 108 Wis.2d at 229, 321 N.W.2d 182.

¶ 36 However, a complaint cannot be completely devoid of factual allegations. The notice pleading rule, while "intended to eliminate many technical requirements of pleading," nevertheless requires the Plaintiff to set forth "a statement of circumstances, occurrences and events in support of the claim presented." Clausen, *The New Wisconsin Rules of Civil Procedure* at 38-39. For example, "a claim in negligence must state general facts setting forth that the [defendant] had knowledge or should have had knowledge of a potential and unreasonable risk...." Wilson, 87 Wis.2d at 318, 274 N.W.2d 679. "[A] bare conclusion [does] not fulfill[ ] a Plaintiff's duty of stating the elements of a claim in general terms." Id. at 319, 274 N.W.2d 679. In short, we will dismiss a complaint if, "[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court." Id. at 326-27, 274 N.W.2d 679. It is not enough for the Plaintiff to contend that the requisite facts will be "supplied by the discovery process." Id. at 327, 274 N.W.2d 679.

Not surprisingly, the instant challenge does claim that this Amended Complaint requires speculation to be understood.  It is true that these pleadings lack the usual contentions that a named-defendant did a discrete act forming the cause of action on a given date.  This pleading does a very thorough job of describing the key points of what is repeatedly referred to as "a scheme" which Plaintiff claims was shared by all the Defendants.[8]  As far as can be determined, the contention appears to be that "virtually all" of Defendants' drugs had misleading AWPs released for publication by every single defendant since 1992.[9]  Given the figure cited in this Complaint of "over 65,000 separate National Drug Codes (NDC)" plus 37 Defendants and a time period of either 3 or 6 years (depending on the applicable statute of limitations), the potential permutations are astronomical.

If indeed the actions for which the Defendants are being sued are as global as described, then the notice being given is that each defendant listed false AWP's for each of its drugs during the times within the statute of limitations.[10]  Even though the date of 1992 is given, it appears to be more for

---

[8] "Notably, the State does not allege any form of conspiracy, collusion, or unlawful agreement among the Defendant manufacturers . . . " Defendants' initial brief, p. 2.
[9] Amended complaint, ¶37.
[10] Obviously, Plaintiff will be restricted to whatever period is permitted under the applicable statute of limitations.

background than as an effort to hold these Defendants accountable going back that far.  The story being told in this Complaint is that of an on-going practice, repeating itself for many years as to "virtually all" the AWPs listed by these manufacturers. The notice to those who must respond to this Complaint is that they are accused of misstating the actual AWP for each and every one of their drugs during a three or six year period.

These drug manufacturers are also alleged to have taken measures to conceal their misrepresentations.  The State of Wisconsin claims that it and other entities relied upon these misrepresented prices when paying for drugs manufactured by Defendants.  Under the most liberal reading of this Complaint, each of the allegations applies to each of the Defendants.  The role of each defendant appears to have been uniform, varying only as to the specific drug and the magnitude of the misrepresentation.  The basic claim as to each defendant is the same.   For general pleading purposes, these vast allegations are adequate to put Defendants on notice of the claims against them.

### B.      Allegations of fraud:

Citing Wis. Stat.§ 802.03(2.), Defendants argue that the Complaint does not adequately identify which drugs are at issue, does not describe what each of them did, does not adequately detail what fraud each has committed, and improperly relies on "group pleading."  Plaintiff counters that none of its claims are subject to the requirements of Wis. Stat. § 802.03(2), and that, even if any were, the Complaint is sufficiently particular.

Wis. Stat. § 802.03(2) provides:

> **Fraud, mistake and condition of mind.** In all
> averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

No Wisconsin state appellate case could be found which directly addresses whether § 802.03(2) governs pleadings under Wis. Stat. §100.18. <u>State v. American T.V. of Madison</u>, 146 Wis. 2d 292, 312-313, 430 N.W.2d 709 (1988) contains dicta in Justice Steinmetz's dissent. He declared that only notice pleading is required under § 100.18(9), but that is hardly conclusive.

The State relies heavily on legislative history, pointing to a Judicial Council Committee Note to a 1978 change in the notice pleading statute, § 802.02(1)(a) that states, *inter alia*:

> This modification will allow a pleader in **a consumer protection or antitrust case**, for example, for example, to plead a pattern of business transactions, occurrences or events leading to a claim of relief rather than having to specifically plead each and every transaction, occurrence or event when the complaint is based on a pattern or course of business conduct involving either a substantial and continuous transactions and events. (Plaintiff's brief, pp. 38-39.)

Again, this language is not determinative of whether § 100.18 claims must be plead with particularity. All consumer protection cases do not involve claims of fraud. The note does not say that the modification it discusses also changes the requirements of § 802.03(2) when fraud is involved.

The purpose of the rule requiring such detail when fraud is claimed is often repeated:

". . . because the particularity requirement affords notice to a defendant for the purpose of a response. As additional rationale, we agree that our statute is designed to protect Defendants whose reputation could be harmed by lightly made charges of wrongdoing involving moral turpitude, to minimize 'strike suits" and to discourage the filing of suits in the hope of turning up relevant information during discovery."

Quoted in <u>Friends of Kenwood v Green</u>, 239 Wis.2d 78, 87, 619 N.W.2d 271 (Ct. App. 2000), [citations omitted]

There is no logical reason for repudiating this rationale just because the charges of fraud being leveled against these Defendants involve consumer protection. Indeed, because the object of such a claim in a consumer protection case may likely be a business or a company dependent for its success on a positive public perception, the need for particularity in pleading seems at least as compelling as in any other fraud case. Here, Defendants are not overstating the matter when they characterize the causes of action in this complaint as "grounded in fraud." Language synonymous with or highly suggestive of fraud permeates the document. Variations on the word "fraud" appear throughout the complaint; "false" and "phony" are used often, as is "deceptive." The word "scheme" when presented in this context certainly has a nefarious connotation. Even the title of § 100.18, one of the provisions under which Plaintiff is suing, is entitled "Fraudulent representations," while Plaintiff's claim in Court IV comes under § 49.49(4m)(2)(a) "Medical Assistance Fraud." There is every reason to find that Wis. Stat. § 802. 03(2) applies to these allegations.

As quoted on p. 87 of <u>Kenwood, supra,</u> "Particularity means the 'who, what, when, and how.' [citation omitted.] . . . the rule 'requires specification of

the time, place, and content of an alleged false misrepresentation.'"  While

Plaintiff has done a masterful job of describing a "dauntingly complex" drug sale

and reimbursement system, it has failed (other than in a few examples) to set

forth the activities of each defendant and to put everyone on notice for what

activities, occurring when and how it wishes to hold each defendant

responsible. [11]  Probably for good reason,[12]  Plaintiff seems as though it wants to

put the burden on each company to come forward with an explanation for each

and every AWP listing since 1992.  This is not permissible.

Under this complaint, it is not known what Plaintiff considers the

threshold for fraud.  Would a few cents difference from the AWP and the actual

sales price meet that definition?  A few dollars?  Is the State limiting this case to

the drugs mentioned in Exhibits A & B attached to the Complaint or is it

including the 65,000 different drugs referenced several times in that pleading?

In order to maintain these causes of action premised on fraud, Plaintiff

must re-plead them, giving as many specifics as it can.  Each Defendant is

entitled to know, with as much detail as Plaintiff can provide, **which** of its drugs

are involved and **what** (name, date) publication of AWP is false, and the **actual**

price that should have been published.  Discovery has been on-going in this case

and in national cases, so much of this information should be available.  It is

difficult to know how long it will take Plaintiff to redraft those claims involving

---

[11] ¶ 51 of the complaint takes the vagueness of this pleading to dangerous level by alleging wrong-doing by "some Defendants" without naming any.

[12] See, ¶¶ 46 & 55 of the complaint.

fraud.  Subject to the right to obtain an extension, the State is given 60 (sixty days) to re-plead.  Failure to do so within the specified or extended time will result in dismissal of those counts grounded in fraud (I, II, and IV). [13]

## II.   CAUSATION

Contending that Plaintiff cannot establish belief and reliance on Defendants' AWPs and that the Complaint fails to "affirmatively" allege that anyone "actually "relied on the AWPs as the true price, all Defendants argue that the entire complaint should be dismissed.  Since there is no such reliance, Defendants assert, "there is no cognizable link between the alleged misconduct … and any claimed injury."  Joint Memorandum, p. 18.

First, the argument relies on the substantial documentary submissions of Defendants.  As explained earlier in this decision, Defendants have not provided a sufficient basis supporting consideration of such materials at this stage of the proceedings.  Second, Defendants have provided no substantial argument or any authority for their broad assertion that the Court can dismiss all of Plaintiff's claims based simply on an arguable lack of facts showing this level of reliance. Finally, it is far from clear that the documents selected by Defendants indisputably establish that Plaintiff in no way relied upon Defendants' AWPs. However, the basis for any claim of reliance included in Counts I, II, and IV

---

[13] Counts I and II allege violation of Wis. Stat. § 100.18., and Count IV alleges violation of Wis. Stat. § 49.49(4m)(a)(2).

should, for the same reasons articulated in the previous section, be part of the more specific pleadings.

## CONCLUSION and ORDER

For the reasons stated above, Plaintiff is to amend its Amended Complaint by **June 5, 2006** to comply with the directive contained in this Partial Decision.  In the interim, work will continue on the balance of the contentions in Defendants' motion to dismiss.

Dated this 3rd day of April 2006 at Madison, Wisconsin.

BY THE COURT:

Moria Krueger, Judge. *
Case No. 04  CV 1709

*Recognition is given to staff attorney, Eric Mueller, for his work on this decision.

CC:     (To be distributed electronically by each attorney to the other lawyers on the same side)
AAG C. Hirsch
Atty. B. Butler