# Cicala Declaration

# Exhibit A

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF MASSACHUSETTS
 3
 4     _____
 5     IN RE:  PHARMACEUTICAL
       INDUSTRY AVERAGE WHOLESALE     Civil Action No. 01-12257-PBS
 6     PRICE LITIGATION               MDL No. 1456
 7                                     April 8, 2005, 2:25 p.m.

       _____
 8
 9
10
11         TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
12            BEFORE HONORABLE PATTI B. SARIS
13             UNITED STATES DISTRICT COURT
14          JOHN J. MOAKLEY U.S. COURTHOUSE
15                ONE COURTHOUSE WAY
16                 BOSTON, MA  02210
17
18
19             DEBRA M. JOYCE, RMR, CRR
                  Official Court Reporter
20          John J. Moakley U.S. Courthouse
            1 Courthouse Way, Room 5204
21               Boston, MA  02210
                   617-737-4410
22
23
24
25
```

```
 1    APPEARANCES:
 2    RONALD J. RANTA, ESQ.
      Fisette & Ranta
 3    Suite 221B
      100 Cummings Ctr.
 4    Beverly, MA  01915
      978-927-8766
 5    For Intervenor Commonwealth of Pennsylvania
 6    TERRIANNE BENEDETTO, ESQ.
      Kline & Specter
 7    1525 Locust Street
      19th Floor
 8    Philadelphia, PA  19102
      215-772-1000
 9    For International Union of Operating Engineers, Local No. 68
      Welfare Fund
10
      JOHN T. MONTGOMERY, ESQ.
11    Ropes & Gray
      One International Place
12    Boston, MA  02110
      617-951-7000
13    For Warrick Pharmaceuticals Corporation
14    D. SCOTT WISE, ESQ.
      Davis Polk & Wardwell
15    450 Lexington Avenue
      New York, NY  10017
16    212-450-4000
      For Astrazeneca US
17
      STEVEN M. EDWARDS, ESQ.
18    Hogan & Hartson, LLP
      875 Third Avenue
19    Suite 2600
      New York, NY  10012
20    212-918-3000
      For Oncology Therapeutics Network Corp.
21
      JOANNE M. CICALA, ESQ.
22    Kirby, McInerney & Squire
      830 3rd Ave.
23    10th Floor
      New York, NY  10022
24    212-371-6600
      For Suffolk County, County of Westchester, County of Rockland,
25    County of Onondaga, The City of New York
```

```
1                    P R O C E E D I N G S

2             (The following proceedings were held in open court

3    before the Honorable Patti B. Saris, United States District

4    Judge, United States District Court, District of Massachusetts,

5    at the John J. Moakley United States Courthouse, 1 Courthouse

6    Way, Boston, Massachusetts, on April 8, 2005.)

7             THE COURT:  Why don't you introduce yourself.

8             MR. RANTA:  Good afternoon, your Honor, Attorney

9    Ronald Ranta appearing for Ms. Benedetto pro hac vice.

10            THE COURT:  Mr. Ranta, I thought I recognized you

11   too.

12            MS. BENEDETTO:  Good afternoon, your Honor,

13   Terrianne Benedetto.  I'm here instead of Don Haviland.

14            MR. MONTGOMERY:  John Montgomery.

15            MR. WISE:  Scott Wise from Davis, Polk & Wardwell.

16            MR. EDWARDS:  Steve Edwards, Hogan & Hartson.

17            THE COURT:  So I'll look at you.  You're up from

18   New Jersey?

19            MS. BENEDETTO:  Philadelphia.

20            THE COURT:  You got one of our rare good days.

21            Let me ask you.  We started doing some spring

22   cleaning here and we noticed this case was here and we haven't

23   heard from anybody.

24            MS. BENEDETTO:  Well, what had happened your Honor,

25   was when my colleague, Don Haviland, and another of our local
```

1    counsel, Steven Sullivan, were before your Honor on February

2    10th and they had requested a hearing on the remand issue.  I

3    believe he told you we wanted to go home to New Jersey and --

4    we had expected on our next appearance before your Honor would

5    be for an oral argument on the remand motion, but what we

6    received was a notice of hearing of Rule 16.

7             THE COURT:  Right.

8             MS. BENEDETTO:  And what I had originally intended

9    to do was just to come appear here today and ask your Honor to

10   decide the motion for remand on the papers.

11           THE COURT:  Isn't the remand the same issue I've

12   had -- well, I won't prejudge it.  Is it the same issue I've

13   had in all the other ones?

14           MS. BENEDETTO:  It's not, your Honor.  This is a

15   lack of unanimity of consent issue.  It's in the briefing.

16           THE COURT:  We, frankly, had to dredge it up

17   because it was in some -- it wasn't easily accessible, and it

18   looked like very, very old briefing, predating many of my

19   opinions.  So I don't want to sit and go through what it is

20   I've ruled on and what it is I haven't.  My suggestion to

21   you -- and a lot of it was, you know, they promised this and

22   they fooled us, you know, it really wasn't -- they were

23   claiming -- you were claiming the other side wasn't playing

24   fair in the New Jersey system.

25           I think we need to put that behind us at this

1   point.

2                   MS. BENEDETTO:  I agree, your Honor.  I wasn't

3   going to speak to any of that today.

4                   Basically, I was ready -- I'm ready to argue today

5   if your Honor wishes on the remand issue.

6                   THE COURT:  No.  I think if you need -- if you want

7   to press it, you need to update your briefing to deal with the

8   current situation, and it's just old briefing.  As you know, I

9   issued an order a long time ago talking about, you know, what's

10  still alive.  We're eager to get rid of this stuff, in a sense

11  of get through it, and I've been slowly, but surely, pumping

12  out opinions, but I don't want to sit and parse through a very

13  old set of briefs that really are two years out of date in

14  terms of what I've written and where the case law is.  So there

15  may be new case law that may help you or hurt you, but it's

16  really old stuff in the briefing.

17                  So I'm trying to figure out how fast you could turn

18  this around to just give me a brief on sort of currently how is

19  this case the same or different from what I've ruled before?

20  How much of it is preserving issues and how much of is based on

21  different facts in your complaint versus the other ones.  That

22  would be very helpful to me.

23                  MS. BENEDETTO:  Your Honor, we could do it in two

24  weeks, and I hope --

25                  THE COURT:  I won't call you back; I'll do it on

1    the papers.

2             If you could do something -- I don't want you to

3    spend any sleepless nights or ruin any spring weekends, this

4    has really been sitting for two years.  Is two weeks what you

5    need?

6             MS. BENEDETTO:  Your Honor, that's --

7             THE COURT:  Two weeks.

8             MS. BENEDETTO:  We just want to go back to New

9    Jersey.

10            MR. MONTGOMERY:  Your Honor, if we could have

11   another two weeks beyond --

12            THE COURT:  Right.

13            MR. MONTGOMERY:  And we would make our own filing,

14   the usual page limits.

15            THE COURT:  Twenty, but no individual ones.  I

16   think this sounds pretty consistent.

17            MR. MONTGOMERY:  We agree, your Honor.  There's no

18   need for individual briefs.

19            THE COURT:  And I'll do it on the papers.

20   Truthfully, I have to rethink this whole thing every time I

21   read them, because the case law is to twisted in this area in a

22   labyrinth vine.  I don't see a need for a hearing, if I do,

23   I'll call you in.

24            MR. MONTGOMERY:  That's fine, your Honor.

25            THE COURT:  So wait.  So if I remand it, then it's

1  over.  If I don't remand it -- I don't want to call you back in

2  here for a scheduling conference.  So what -- how far along, if

3  at all, are you on discovery?

4  　　　　　　MS. BENEDETTO:  Hasn't even begun yet, your Honor.

5  　　　　　　MR. MONTGOMERY:  Well, it's a private class action,

6  your Honor, and so I think under the current orders it would

7  simply be subsumed in the --

8  　　　　　　THE COURT:  Which track, two?

9  　　　　　　MR. MONTGOMERY:  It would be track two simply

10  because it's not track one.

11  　　　　　　THE COURT:  It couldn't possibly be the faster

12  track.

13  　　　　　　And how will this work vis-a-vis the big

14  complaint?  Have you worked at all with plaintiffs' counsel?

15  　　　　　　MS. BENEDETTO:  No, your Honor, we haven't.

16  　　　　　　THE COURT:  Well, raise your hand.

17  　　　　　　Yes.  So that's the group -- I'm not going to let

18  you reinvent the wheel, it's too expensive and a lot has been

19  done and I don't know how you've divvied up expenses and all

20  those kinds of things and I don't know how much is

21  overlapping.  We don't need to go there yet.  I'm simply saying

22  I suggest that you call lead plaintiffs' counsel and piggyback

23  on their discovery and share in the costs if you're here.  If

24  not, it's a different situation and it's the headache of

25  someone in New Jersey.

1          MS. BENEDETTO:  Yes, your Honor.  That's what we

2     hope.

3          THE COURT:  So two and two.  And I think -- that's

4     all I need to deal with right now, right?  We'll put you on the

5     track two otherwise; am I right?

6          Nothing else I need to deal with?

7          MS. BENEDETTO:  No, your Honor.

8          THE COURT:  Great.  Good-bye.

9          I think logically speaking in my spring cleaning

10    urge was Montana and Nevada -- were Montana and Nevada, which

11    we keep hoping to get on some sort of a track, and these are

12    attorney general actions.

13         MR. MONTGOMERY:  We have been talking.  We have an

14    almost agreement, a proposed schedule to present to your Honor.

15         THE COURT:  Okay.

16         MR. MONTGOMERY:  With one issue.  The schedule,

17    just to give you an idea of what you'll see when we submit it,

18    has motions -- well, let's see, it has discovery cut off

19    January 30, 2006, and then the schedule rolls through from

20    there into summary judgment in the summer of 2006.

21         The difference between us, and I believe the only

22    one, your Honor, is that the schedule that we've discussed so

23    far does not have a place in it for reply and sur-reply expert

24    affidavits.

25         The defendants oppose the inclusion of that step or

1    stage in the process, and I believe that Mr. Sobol wants to

2    speak --

3              THE COURT:  It's turned into a nightmare quite

4    candidly in the certification context, and the motions to

5    strike are really sur-replies and sur-sur-replies.  I don't

6    want to ever do that again.

7              MR. SOBOL:  May I address the court on this, your

8    Honor.

9              THE COURT:  Yes.

10             MR. SOBOL:  The defendants have astutely tried to

11   exploit the anticipation of that remark, your Honor, which is

12   why they are trying to avoid the replies and sur-replies.

13             THE COURT:  I think it will take me the rest of my

14   life just to read the expert reports.

15             MR. SOBOL:  To be serious, your Honor, let me go

16   through the schedule and then I'm going to deal with the issues

17   of replies that deals with housekeeping matters.  I need to put

18   this in context so that preconceptions, which are certainly

19   understandable, given the way the defendants have handled the

20   experts.

21             Okay.  The schedule that we have, as Mr. Montgomery

22   correctly pointed out, for Montana and Nevada fact discovery

23   ends January 31, 2006.  There's then expert liability reports.

24   So the states would file their expert liability reports on

25   March 2, the defendants file their expert liability reports on

1    April 18th.  And then there's the question, which I'll get to

2    in a moment, about why there should be replies and sur-replies.

3              In addition to that, we agree to coordinate in

4    terms of depositions consistent with the schedule; and then we

5    have summary judgment that begins on motions for summary

6    judgment on June 3; oppositions July 2; replies the 24th of

7    July; sur-replies August 8th; and that's the end of our

8    proposed schedule.

9              Now, the reason why a reply and if the defendants

10   would like a sur-reply, on expert liability makes sense is

11   this:  The plaintiffs are going first in terms of their

12   liability experts.  We obviously can't anticipate all of the

13   defenses --

14             THE COURT:  I understand that, and I'm not -- maybe

15   some judges are really rigid about that, but that's why you

16   have expert depositions.  I'm not going to hold you rigidly to

17   your expert reports.  Obviously the expert is going to be asked

18   and respond to things that the other side has said, I'm not

19   going to say it's not in there.  That's why the expert

20   depositions are there.  I mean --

21             MR. SOBOL:  Right.

22             THE COURT:  I just think it's not necessary to do

23   that.

24             MR. SOBOL:  Right.

25             THE COURT:  It really has turned into a much bigger

1   deal than I anticipated.  Maybe I should have anticipated it in

2   the class certification context.  So let me ask the other

3   thing, is there any way of getting all the summary judgment

4   briefing done in a way that is consistent with getting opinion

5   out by the end of August?

6                    MR. SOBOL:  Of '06?

7                    THE COURT:  Huh?

8                    MR. SOBOL:  Yes.

9                    THE COURT:  This is -- well, the issue that I run

10  into always is I have to educate another new clerk in the whole

11  thing so that while I'm going to have to do that anyway next

12  year, to start with another is just a little bit of a problem

13  for me.  This stuff is so difficult, I'm learning about it even

14  as we go, things I said in the first opinion I'm not, you know,

15  assumptions maybe we were all making about the way the industry

16  worked aren't necessarily true.  How can we do this so that my

17  next year's clerk could do this?

18                   MR. MONTGOMERY:  I think the question, your Honor,

19  is how much time do you need from the filing of the last

20  brief --

21                   THE COURT:  Three months.

22                   MR. MONTGOMERY:  -- for argument -- okay.

23  Argument -- so it will be three months.  So we'll need to

24  create a schedule in which we're done with briefing your Honor

25  would have to accommodate us on argument whenever you could fit

1  that in, and we need to have it complete by the end of May,

2  middle of May?  I'm --

3          THE COURT:  If it's doable.  If not, the truth is

4  that it almost doesn't matter if you expand a little into the

5  next year rather than kill yourself, because I just have to

6  bring another law clerk up to speed to help.

7          So why don't you do this:  I'm not going to do

8  reply and sur-reply with the understanding that that will

9  happen to some extent in the depositions, and I am not going to

10 force you to do it in time for the law clerk to finish by the

11 end of August, which may not be doable, but I'm simply saying

12 that it is much better to have somebody who's been working on

13 it for a year, they just would be speedier.

14         MR. MONTGOMERY:  Well, we could agree to go back to

15 the drawing board and see if we could accommodate that

16 schedule.  I'm a bit skeptical that we can do so, but I

17 certainly understand you're asking us to try.

18         THE COURT:  Try it, propose a schedule, and if we

19 can do it, we'll do it; if we can't, we can't.

20         The most important thing is to get on a schedule.

21 For some reason, Montana and Nevada never were actually on a

22 schedule.  I don't know what happened there.  We kept thinking

23 we were going to get a proposal and we didn't and it slipped

24 through the cracks.

25         Can you file something by next Friday?

```
 1              MR. SOBOL:  Sure.  We'll try to do that to
 2    accommodate the trying to get things done by -- all be done
 3    three months out for summary judgment.
 4              THE COURT:  Yes.
 5              MR. SOBOL:  That would be the housekeeping matter
 6    on the class cert.  You addressed the question about the
 7    replies and sur-replies.  I know it's a sore subject with your
 8    Honor, but I think it's very important to address this matter.
 9              THE COURT:  Address what?
10              MR. SOBOL:  Well, the specific issues --
11              THE COURT:  I haven't read -- no --
12              MR. SOBOL:  I understand that completely, that's
13    why I'm trying to address it, because I know you haven't had a
14    chance to read it.
15              One of the motions that has been filed before your
16    Honor is a motion for sanctions regarding the reply or -- I
17    can't remember, whatever it was, thing filed by the defendants'
18    expert, a Mr. Young, which we claim is materially false, has
19    huge amounts of additional amounts of additional information to
20    the record, which is why we felt constrained -- I know you
21    don't like it -- we felt constrained to reply it.
22              We see the importance of that motion to the
23    substance of the rights of the class when you're deliberating
24    on this, it makes sense to have a hearing on that motion.
25              THE COURT:  I'll think about it.  I'm not even
```

1   there yet.

2           MR. SOBOL:  I appreciate you thinking about it.

3           THE COURT:  My law clerk is looking at it.  I

4   haven't even started.  I hope that's where I'm at.  I hope to

5   soon, but it would be useless -- I try and read things before

6   we have arguments on anything, and I haven't even read it yet,

7   other than knowing it came in and was voluminous.

8           So -- all right.  So let's bring in -- I think we

9   have the counties, don't we?

10          MR. MONTGOMERY:  Yes, we do.

11          MS. CICALA:  Yes, your Honor.

12          THE COURT:  We have Suffolk?  What do we have?  We

13  have all the New York --

14          MS. CICALA:  I have a map that I think will help

15  Court and everyone else involved.  When we -- Joanne Cicala,

16  your Honor, for the City of New York and 42 New York counties.

17          THE COURT:  How many are there altogether?

18          MR. SOBOL:  Fifty-five.

19          MS. CICALA:  There are 62 counties, the City of New

20  York is comprised of five.  And we represent another 42.

21          THE COURT:  This is like the red state, blue

22  state.  We've got the yellow county, white county.

23          MS. CICALA:  So the yellow clients on this map are

24  Kirby, McInerney & Squire clients filed in federal Court --

25  actually, not all these cases have been filed yet.  We've been

1   retained and they either have been filed or will be filed

2   within the next two weeks.

3              The Orange county is Erie, they filed a couple of

4   weeks ago in state court with the firm Weitz Lutzenberg; and

5   the blue county is Nassau which filed in federal court with

6   Milberg Weiss.  I don't know if there's anyone from Milberg

7   here today.  Okay.

8              So that's where we stand right now in terms our

9   county roster.

10             THE COURT:  The white -- well, let me just start.

11  I'm one person.  Are they all separate complaints?

12             MS. CICALA:  No, no, we have a plan for how this

13  case can move forward in an organized fashion.  It involves our

14  filing a consolidated complaint within 30 days of today that

15  would cover all our county complaints.

16             When you look on this map and see white counties,

17  those are counties deliberating whether to join the action and

18  those decisions would be made within that time.  Thirty days

19  from now we could file a complete complaint that includes all

20  of our complaints, and we invite Milberg Weiss to join us with

21  respect to the Nassau County case in that filing, and we can

22  proceed on the consolidated complaint.

23             THE COURT:  I have pending still a serious question

24  of whether or not Suffolk County has alleged enough with

25  respect to certain defendants.

1           MS. CICALA:   The 13 plus 6.

2           THE COURT:   Yes.   I was going through what was

3      left.   That's probably the last of what I would call the old

4      ones that are left for me, and it's high on my plate.   Will all

5      of these other cases have the similar problem in terms of -- we

6      don't have a government investigation in actual pricing.   The

7      question is whether you can take an industry average?

8           MS. CICALA:   Right.   The new pleadings filed on

9      behalf of the City of New York and our new clients are

10     materially different with respect to the Suffolk 13 plus 6.

11     Defendants are certainly going to disagree with my

12     characterization, but the pleadings are different in any event,

13     and our new counties and the City of New York would like to

14     test those new pleadings.   I don't know where your Honor is

15     with respect of her evaluation and deliberation over motions

16     the Suffolk 13 plus 6.

17          THE COURT:   I say to rule on that -- I have this

18     pile of things, it's the last of what I would call the older

19     motions as I was going through the list.   I think that's the

20     only one left other than class cert; is that right?   That's the

21     last of that --

22          MR. MONTGOMERY:   New Jersey.

23          MS. CICALA:   That's the last part of the motion to

24     dismiss.

25          I'll cease to talk in one moment, your Honor.

1          Our view, as you see -- the pleading you have

2    before you with respect to Suffolk was filed in August of

3    2003.   In the wake of that, as you can see, we've been retained

4    by a number of other clients.   Collectively they represent 89

5    percent of the state.   New York City alone represents 8.78

6    percent of the nation in Medicaid spending.   New York City

7    would like its pleadings tested on the issues that are of

8    concern to the Suffolk 13 plus 6.

9          And the Suffolk pleading at this point is outdated,

10   we think more appropriate, particularly if the Court has not

11   begun deliberation in earnest in the issue of Suffolk 13 plus

12   6, more appropriate would be to evaluate the claims against

13   those defendants in the context of our consolidated complaint,

14   which will be filed within 30 days.

15         THE COURT:   Well, is that going to include Suffolk?

16         MS. CICALA:   We would like to include Suffolk in

17   that complaint, your Honor.   We understand as a practical

18   matter we may essentially be moving --

19         THE COURT:   And when what deliberation in earnest

20   means.   I've read them, and I've got concerns about taking the

21   industry average in and multiplying times what you get on a

22   dot-com drug web site.

23         MS. CICALA:   I understand, your Honor.

24         THE COURT:   What I haven't done is gone through and

25   seen is there anything that would save it with respect to new

```
 1    investigations or documents, and it certainly doesn't dispose

 2    of all defendants.

 3              And so I don't know what to do yet.  I just don't

 4    think it's going to save that complaint.

 5              Now, I don't want to say definitively because I

 6    just read them and I haven't written it, and I sometimes change

 7    my mind when I write it.  The question is, I don't want 89

 8    percent of New York to be relying on the same theory.  And I

 9    think it would be useful for you to have that ruling from me.

10              MS. CICALA:  The difference that is important for

11    us with respect to the consolidated complaint is that we have

12    repled the claims to include the government investigations that

13    your Honor was looking for that were absent from the Suffolk

14    pleading.

15              So when your Honor -- were your Honor to review,

16    for example, the City of New York's complaint, you would see

17    enhanced -- you would see additional facts alleged with respect

18    to government investigation for the majority of the Suffolk 13

19    plus 6, which would satisfy --

20              THE COURT:  Why don't I -- I'm going to try and

21    rule within the next week or so in a margin rather than mega

22    opinion.  I've got concerns about it, taking industry average,

23    particularly since I'm learning more and more about the

24    industry there's a certain expected spread during a certain

25    period of time in part that was not expected.
```

1          MS. CICALA:  Right.

2          THE COURT:  Which is hugely more than what was

3   expected.  As I'm trying to parse through it.  So it

4   actually -- it could be, as I think even the plaintiffs,

5   Mr. Sobol say, well, we only picked the 300 drugs because most

6   drugs, actually, there wasn't such a discrepancy.  So I'm

7   reluctant to take just an industry average and say it must have

8   been a problem.

9          Let me just say that now.  I'll do that in the

10  margin, and you work on something else.

11         If there's -- the thing that was key to the

12  plaintiffs' case where they actually had either internal

13  company documents or a government investigation they pick up a

14  spread far more than anyone would say was at least expected

15  within the industry.

16         MS. CICALA:  Right, right.

17         THE COURT:  And so -- I'm more sophisticated than I

18  was two years ago in understanding what's going on here.  Even

19  still, every time I read something, I get another insight into

20  it.

21         Let me just say that's where I'm going.  I'll do

22  that more quickly rather than less quickly so you'll know that.

23         MS. CICALA:  Your Honor, to the extent there was a

24  second prong, however, your Honor had a two-part test, one

25  was -- one concerned our allegations with respect to spread and

1    the other did concern whether these defendants or the drugs at

2    issue were at issue in any governmental investigations.  And as

3    our new pleadings do make clear that for the vast majority of

4    the Suffolk 13 plus 6 they are, in fact, the subject of

5    government investigations that bear on the same allegations in

6    our complaints.

7              THE COURT:  Maybe.  But don't forget -- I'd have to

8    see more about what the investigation says.  Some of them are

9    just damning because they had a spread in a way -- it was at

10   least enough to get past motions to dismiss.  It can't be just

11   that another county filed a lawsuit.

12             MS. CICALA:  Fair enough.  I'm talking about true

13   Department of Justice --

14             THE COURT:  Fair enough.  Let me do that more

15   quickly rather than less quickly so you can have some guidance

16   knowing when you redraft your papers.

17             MS. CICALA:  And we would like to fold Suffolk in.

18   It would be the equivalent of a second amended complaint of

19   Suffolk.  We would like to fold them in with the balance of our

20   clients.

21             THE COURT:  I'll think about that.

22             MS. CICALA:  Thank you, your Honor.

23             THE COURT:  Let me just -- assume you file that

24   within 30 days or so.

25             MS. CICALA:  Yes.

```
 1                THE COURT:  Consolidate because just the resources

 2     would be horrible to try and do this county by county.

 3                MS. CICALA:  No, no, that's not in our design at

 4     all.  We will proceed on a consolidated basis.

 5                THE COURT:  I think it would be fair to predict

 6     I'll see a motion to dismiss.

 7                MR. MONTGOMERY:  You will, your Honor.  But before

 8     we get to a motion to dismiss, first they have to file the

 9     complaint.  We suggest that we agree here and you could give us

10     a deadline for filing a proposed case management order with

11     your Honor that would put all of this on a schedule perhaps.

12                THE COURT:  Sure.  As soon as they file within 30

13     days, why don't you all confer, come up with a proposed order.

14     If you can't agree, one side will be in parenthesis, one side

15     will be in brackets.

16                MR. MONTGOMERY:  Okay.

17                THE COURT:  What I'd like to do, is this briefing,

18     however, should be so that I can complete this one before this

19     very learned law clerk leaves in August.  So this one we know

20     the issue, it should be a very truncated pleading at this

21     point.

22                So if you file within 30 days -- today's the 8th,

23     is it?  Let's say May 8th.  Your motion to dismiss should come

24     in within a couple of weeks, your opposition a couple of weeks,

25     and I should be able to have this summer to work on it.  I'm
```

1   unlikely to hold a hearing, I know about enough about it at

2   this point.

3            MS. CICALA:  That's fine.

4            THE COURT:  If you're desperate we can shoot in

5   here.  I need to be able to have the summer to not lose of

6   resources of my law clerk, who I will lose to the 9th Circuit.

7            So that's realistically -- I need to finish that by

8   the end of the summer.

9            Okay?

10           MR. MONTGOMERY:  Okay.

11           MS. CICALA:  So two weeks after our consolidated

12  complaint is filed --

13           THE COURT:  We'll get a motion to dismiss and

14  briefs, and -- this is a harder one for me because it may well

15  be there's something unique to individual companies.  There may

16  be.

17           Can I just say the one thing that my eyes glaze

18  over is when the individual companies just restate what was

19  said in the main brief.  You sort of -- what's the most

20  effective is occasionally I'll have someone just really focus

21  on that company and that company's drug, otherwise it should be

22  in the big brief.  Otherwise I lose -- I stop reading because

23  it just all looks the same and maybe in the last paragraph

24  you'll mention a particular drug with a particular problem, so

25  that's most helpful.

```
 1              All right?

 2              MS. CICALA:  I'm sorry to rehearse this again.  So

 3   if we file by May 6th the consolidated pleading, the

 4   defendants' consolidated motions to dismiss will be filed by

 5   the 20th of May?

 6              THE COURT:  Yes.  I'll adjust for kids' weddings,

 7   bar mitzvahs, graduations, just so that I get a couple of

 8   months in there to work on it, you all can work out the

 9   internal dates.

10              MR. MONTGOMERY:  This is going to be tight, your

11   Honor.  We will do our best, and I'm sure we can accommodate

12   the schedule.  It would be nice if we can get the consolidated

13   complaint even earlier, because I think we're going to have a

14   real difficult time getting all of this done.  We don't exactly

15   know what's going to be in it.  It would be helpful.

16              THE COURT:  I don't want you to give away work

17   product, but do you have basically a rough blueprint that no

18   one would tie you to that you can informally give them so they

19   could at least start the process of --

20              MS. CICALA:  They can review any of the complaints

21   that we filed in 2005 to get a very good sense of what the

22   consolidated would look like.

23              THE COURT:  Well, thank you.  That's very helpful.

24   So you, too, will get me something by next Friday.

25              MS. CICALA:  A schedule for a briefing on the
```

Page 24

```
 1   motions to dismiss.

 2              THE COURT:  Perfect.

 3              MS. CICALA:  Thank you, your Honor.

 4              THE COURT:  Is there anything else I need to do?

 5              MS. CICALA:  Do I need to do something more formal

 6   with Suffolk in folding them in?  Do I need to seek leave --

 7              THE COURT:  Why don't you wait to see what I do,

 8   and then you can seek what relief you need.

 9              MS. CICALA:  Thank you.

10              THE COURT:  Is that it?

11              Have a nice weekend.  By the way, am I right?  No

12   more motions?  We're on top, everyone's been scheduled and

13   there's no more pending motions?

14              MR. MONTGOMERY:  That's correct.

15              MR. SOBOL:  With the exception of the one you told

16   me you would think about, your Honor.

17              THE COURT:  Fair enough.

18              (Court adjourned at 2:52 p.m.)

19                   i  i  i  i  i  i  i

20

21

22

23

24

25
```

Page 25

1                                    CERTIFICATION

2                        I certify that the foregoing is a correct

3        transcript of the record of proceedings in the above entitled

4        matter to the best of my skill and ability.

5

6

7

8        _____          _____

9        Debra M. Joyce                           Date

10       Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

