# EXHIBIT 2

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

June 28, 2005

Jessica Golden Cortes
(212) 336-2017
Direct Fax (212) 336-7901
jgcortes@pbwt.com

**By Email Attachment**

Mark Sandman, Esq.
Rawlings & Associates
1700 Waterfront Plaza Suite
Louisville, Kentucky, 40202

      Re: **In re Pharmaceutical Industry AWP Litigation**

Dear Mark:

    Given that we have been unable to speak despite our multiple voicemail exchanges over the past several weeks, this letter summarizes defendants' position regarding Oxford's outstanding discovery pursuant to defendants' third party subpoena in the AWP Litigation. Defendants have revised and significantly paired down the categories of remaining outstanding discovery sought to facilitate a timely production and to avoid unduly burdening your client. As previously discussed, for purposes of these revised requests, unless otherwise stated, the relevant time period at issue is 1997 to 2002:

1. To the extent not previously produced, all documents reflecting Oxford's understanding of whether health care providers earn a margin on drugs administered.

2. All documents concerning the relative reimbursement or costs for injected or infused drugs (and related treatments or therapies) in the hospital (in or outpatient setting) as compared to in physicians' offices, including Oxford's business and strategic plans addressing the optimal site of care for the administration of oncology drugs.

3. To the extent not previously produced, a representative sample of physician reimbursement contracts showing the various methodologies Oxford utilized, and the various levels of reimbursement Oxford afforded, for the reimbursement of physician-administered drugs.

4. All schedules disclosing the amounts reimbursed to particular physicians for services rendered and drugs administered (*i.e.*, physician "fee schedules") and documents detailing how those schedules were calculated or derived. To the extent the fee schedules differ from the electronic schedules or tables used to generate the actual reimbursement amounts paid to physicians, produce all such schedules and tables. We note that although various documents previously produced by Oxford referred to such schedules, the schedules were not included in the production.

Mark Sandman, Esq.
June 28, 2005
Page 2

5. All rebate reports or other documentation showing the rebates paid by pharmacy benefit managers or pharmaceutical manufacturers to Oxford.

6. Medical Claims Data from 1997 to the present, including claims submitted by hospitals and physician offices. This request pertains to all subject drugs.

   A. This data should include a field that explains the type of payment methodology utilized to reimburse for a particular claim (*e.g.*, U&C, AWP-based, capitation). We note that your previous data production (restricted to Lupron data) did not convey the methodologies used to reimburse for a particular claim.

   B. As we briefly discussed earlier on in these negotiations, please describe how the data is maintained and the estimated cost of retrieval prior to production of the requested data.

7. Claims processing manuals corresponding to data produced.

8. MAC Lists pertaining to retail pharmacy reimbursement for generic drugs.

9. To the extent not previously produced, all documents your client produced in any other litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

Please also identify witness(es) qualified to testify regarding the substance of the above-requested documents and data, and advise me of when in the coming month the witness(es) will be available for deposition(s). I look forward to working with you to achieve a swift resolution of outstanding production issues. Please contact me with any questions.

Very truly yours,

Jessica Golden Cortes

1195959v1