UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | |
| THIS DOCUMENT RELATES TO: <br><br> *The City of New York v. Abbott Laboratories, Inc., et al.* <br> S.D.N.Y. Case No. 04-CV-06054 <br><br> *County of Albany v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0425 <br><br> *County of Allegany v. Abbott Laboratories, Inc., et al.* <br> W.D.N.Y. Case No. 05-CV-0236 <br><br> *County of Broome v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0456 <br><br> *County of Cattaraugus v. Abbott Laboratories, Inc., et al.* <br> W.D.N.Y. Case No. 05-CV-0256 <br><br> *County of Cayuga v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0423 <br><br> *County of Chautauqua v. Abbott Laboratories, Inc., et al.* <br> W.D.N.Y. Case No. 05-CV-0214 <br><br> *County of Chemung v. Abbott Laboratories, Inc., et al.* <br> W.D.N.Y. Case No. 05-CV-6744 <br><br> *County of Chenango v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0354 <br><br> *County of Columbia v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0867 <br><br> *County of Cortland v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0881 <br><br> *County of Dutchess v. Abbott Laboratories, Inc., et al.* <br> S.D.N.Y. Case No. 05-CV-6458 <br><br> *County of Essex v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0878 <br><br> *County of Fulton v. Abbott Laboratories, Inc., et al.* <br> N.D.N.Y. Case No. 05-CV-0519 | MDL NO. 1456 <br> Civil Action No. 01-12257-PBS <br><br> Judge Patti B. Saris <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT CHIRON CORPORATION'S MOTION TO DISMISS** |

*County of Genesee v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-00267

*County of Greene v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0474

*County of Herkimer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00415

*County of Jefferson v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0715

*County of Lewis v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0839

*County of Madison v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00714

*County of Monroe v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6148

*County of Nassau v. Abbott Laboratories, Inc., et al.*
E.D.N.Y. Case No. 04-CV-05126

*County of Niagara v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-06296

*County of Oneida v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0489

*County of Onondaga v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0088

*County of Ontario v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6373

*County of Orleans v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6371

*County of Putnam v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 05-CV-04740

*County of Rensselaer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00422

*County of Rockland v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 03-CV-7055

*County of Schuyler v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6387

*County of Seneca v. Abbott Laboratories, Inc., et al.*

| | |
|---|---|
| W.D.N.Y. Case No. 05-CV-6370<br><br>*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0479<br><br>*County of Saratoga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0478<br><br>*County of Steuben v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6223<br><br>*County of Suffolk v. Abbott Laboratories, Inc., et al.*<br>E.D.N.Y. Case No. 03-CV-12257<br><br>*County of Tompkins v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0397<br><br>*County of Ulster v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 06-CV-0123<br><br>*County of Warren v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0468<br><br>*County of Washington v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0408<br><br>*County of Wayne v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06138<br><br>*County of Westchester v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 03-CV-6178<br><br>*County of Wyoming v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6379<br><br>*County of Yates v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06172 | |

## INTRODUCTION

Chiron Corporation's ("Chiron") individual memorandum (hereinafter "Chiron MTD") seeks the dismissal of all plaintiffs' fraud-based claims on the grounds that the Court dismissed similar claims against Chiron in the matter styled *County of Suffolk v. Abbott Labs., et al.* (Civ. Action No. 1:03-cv-10643)(MDL 1456)("*Suffolk*"). Chiron seeks dismissal with prejudice.

Chiron's argument is misguided. Plaintiffs allege fraudulent AWPs for every Chiron drug for which they seek relief and properly use Chiron's own market prices to demonstrate Chiron's artificially inflated spreads.[1] Plaintiffs also allege facts in sufficient detail to support their Best Price/Rebate claims, including that the government is investigating Chiron's pricing practices. This Court has already determined such government investigations to be directly relevant to plaintiffs' claims. The specificity of these allegations satisfies the particularity requirements of Fed. R. Civ. P. 9(b) as well as the Court's prior rulings, including those in *Suffolk*.[2] Finally and contrary to Defendants' assertion, the Court did not dismiss any non-fraud based state claims against Chiron in *Suffolk*. For the reasons set forth below, Chiron's motion to dismiss should be denied in its entirety.[3]

## ARGUMENT

Chiron's sole basis for its motion is that plaintiffs' allegations are identical to that of *Suffolk* and as such plaintiffs' complaints should be dismissed with prejudice. *See id.* Chiron's argument is

---

[1] *See* Corrected Consolidated Complaint, filed on June 22, 2005 ("Consolidated Complaint" or "CC") at ¶¶ 187, 387-400, Exh. A & B; Nassau Second Amended Complaint, filed on January 6, 2006 ("Nassau SAC" or "NSAC") at ¶¶ 360-371.

[2] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 339 F.Supp.2d 165, 173 ("*Suffolk I*"); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257, 2004 WL 2387125, at *3 (D. Mass. Oct. 26, 2004) ("*Suffolk II*"); *In re Pharm.Indus. Average Wholesale Price Litig.*, Memorandum and Order at 1-2 (D. Mass. April 8, 2005)("*Suffolk III*")

[3] All other causes are addressed in Plaintiffs Consolidated Opposition to Defendants Joint Motion to Dismiss, filed April 17, 2006 (referred to herein as "Con.Opp.").

1

misplaced.. See Exhibit A to Con. Opp. detailing differences between Suffolk and the CC.

### A.  Plaintiffs' Fraud-Based AWP Claims Are Pled With Sufficient Particularity

In order to maintain fraud-based AWP Claims under the Court's prior rulings, plaintiffs must set forth factual allegations regarding spread, internal documents or government investigations from which an inference of fraud can reasonably be made. *See Suffolk II*, 2004 WL, 2387125 at *2; *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196 at 209 (D. Mass. 2004)("*Pharm. III*")(recognizing an industry-wide practice of inflating AWPs and not requiring a specific spread for every drug of each manufacturer). The Court specifically held that the use of a calculated average sales price for a drug was insufficient. *See Suffolk III* at 2.

Plaintiffs have complied with the Court's prior rulings by alleging: (1) fraudulent AWPs for all Chiron products for which plaintiffs paid; (2) exorbitant spreads calculated based on Chiron's own available actual market prices[4] -- as opposed to calculated prices -- for Chiron products; (3) substantial spreads between an actual market price and the fraudulent AWPs for Chiron drugs paid for by plaintiffs (4) that Chiron instructed its sales force to market the spread via worksheets demonstrating the proper calculation of spread for Chiron products and that of its competitors; (5) that Chiron utilized advertisements highlighting spreads for Leucovorin and Doxorubicin and offered customers one or two free vials for every 10 ordered depending on the drug, the effect of which resulted in an even lower net cost to its customers; (6) that Chiron maintained an AWP of $434.60 for Mitomycin from 1995 to 1998 while lowering the net cost each year from and creating larger spreads each year from 28% in 1995 to 184% in 1998; (7) that Chiron admitted in its SEC Form

---

[4] The prices used to calculate spreads are actual market prices offered to Ven-a-Care of the Florida Keys, Inc. ("Ven-a-Care"), a licensed pharmacy, and were available on a nationwide basis to similar pharmacies. In the matter styled, *State of California ex rel. Ven-a-Care of the Florida Keys v. Abbott Labs., et al.*, also pending before this Court, plaintiffs utilized these same prices to calculate the spreads in support of similar claims. Notably, the legitimacy of these prices was not questioned in recent motions to dismiss filed in that action.

2

10K filed March 3, 2004 that it is the subject of an investigation by the Office of Inspector General for the Department of Health and Human Services concerning improper reporting of AWPs and Best Prices pursuant to an *qui tam* (whistle blower) lawsuit; and (8) the existence of government investigations concerning Medicaid and pricing practices of the Chiron being conducted by the Attorneys General for the States of California, Florida and Kentucky.[5] (*See* CC ¶¶153, 387-400, Exh. A; NSAC ¶¶360-371).

Individually and collectively, these allegations are more than sufficient to draw a reasonable and sound inference that Chiron fraudulently established AWPs. *See U.S. ex rel Franklin v. Parke Davis*, 147 F.Supp.2d 39, 49 (D.Mass 2001)(Saris, J.)("[W]here the alleged scheme of fraud is complex and far-reaching, pleading every instance of fraud would be extremely ungainly, if not impossible.").

Accordingly, Defendant's motion to dismiss should be denied.

## B. Plaintiffs' Fraud-Based Best Price/Rebate Claims Are Pled With Sufficient Particularity

In order to maintain Best Price/Rebate claims, plaintiffs must "set forth minimal facts with respect to (1) the allegedly fraudulent or false price reported to the state for any specific drug; or (2) any information showing a company-wide scheme to misstate Best Prices." *Suffolk II*, 2004 WL, 2387125 at *3.

Plaintiffs have done both. First, plaintiffs allege the name of every Chiron drug for which they assert Best Price/Rebate claims. *See* CC ¶¶387-400, Exh. A; NSAC ¶¶ 360-371. Second, plaintiffs allege a company-wide scheme and strategy whereby Chiron's sales force had the

---

[5]The Court has specifically held that in order to maintain AWP-related claims, plaintiffs must "set forth [] factual allegations regarding a spread, internal documents or <u>government investigations</u> from which an inference of fraud [could] reasonably be made..." (emphasis added). *See Suffolk II*, 2004 WL2387125 at *2; *Pharm III*, 307 F. Supp. 2d at 209. The Court does not require an adjudication of the lawsuits or government investigations.

3

discretion to utilize aggressive discounts and off-invoice pricing to lower prices and maximize sales. Plaintiffs allege off-invoice pricing allows a manufacturer to lower the net cost to the purchaser while concealing the actual cost beneath the fiction of a higher invoice. *See* CC ¶ 153; NSAC ¶ 122.

In addition, among other allegations of malfeasance, plaintiffs allege that: (1) Chiron utilized aggressive discounts to compete with other therapeutic equivalent drugs; (2) Chiron utilized off-invoice pricing, including rebates, discounts and free products; (3) Chiron is keenly aware that its purchaser's profits depend on the reimbursement rates of Chiron drugs and can achieve greater sales through price adjustments and discounts, while not lowering AWPs, (4) Chiron utilized, and did not account for, off-invoice price reductions which resulted in falsely inflated invoices, the effect of which was to mask to true cost of the drugs on the invoice and maintain a higher fictional invoice price; (5) the Office of Inspector General for the Department of Health and Human Services and the Attorneys General for the States of California, Florida and Kentucky are investigating Chiron for improper pricing practices and failures to comply with Best Price rebate requirements. These allegations show a company-wide scheme implicating all Chiron products. *See* CC ¶¶ 153, 387-400, Exh. A; NSAC ¶¶ 360-371. Individually and collectively, these claims satisfy Fed. R. Civ. P. 9(b). Thus, Defendant's motion to dismiss should be denied.

**C.     There is No Basis to Dismiss Plaintiffs' Fraud-based Claims with Prejudice.**

Chiron requests dismissal with prejudice of plaintiffs' fraud based claims on the grounds that the allegations were ruled on in Suffolk.

This is incorrect. First, Plaintiffs' allegations are decidedly different from that in *Suffolk*. See Consolidated Opposition, Exhibit A. Second, the instant motion is, in fact, the first test of plaintiffs' allegations. In the event that the Court deems plaintiffs' allegations in support of its fraud-based claims insufficient, plaintiffs respectfully request leave to amend. *See Whelan v.*

4

*Intergraph Corp.*, 889 F.Supp. 15, 19 at fn 4. (D.Mass 1995) (citing *Hayduk v. Lanna,* 775 F.2d 441 at 445 (1985)( "federal courts must be liberal in allowing parties to amend their complaints.")).

Finally, Chiron does not dispute any of plaintiffs' non-fraud based claims – nor could it – as plaintiffs' allegations state AWP and Best Price unjust enrichment claims, and claims for violation of N.Y.C.R.R. §515.2(b)(4) & (5) and NY Soc. Sec. Law §367-a(7)(d). The Court ruled that Fed. R. Civ. P. 9(b) does not apply to such claims. *Suffolk II*, 2004 WL2387125 at *2.

## CONCLUSION

For the reasons set forth herein, Chiron's individual motion to dismiss should be denied in its entirety.

Dated: April 24, 2006

                                      Respectfully submitted,

                                      **City of New York and all captioned Counties except Nassau, by**

                                      **KIRBY McINERNEY & SQUIRE, LLP**
                                      830 Third Avenue
                                      New York, New York 10022
                                      (212) 371-6600

                                      /s/ Joanne M. Cicala
                                      Joanne M. Cicala (JC 5032)
                       By:  James P. Carroll Jr. (JPC 8348)
                                        Aaron D. Hovan (AH 3290)
                                        David E. Kovel (DK 4760) (*pro hac vice*
                                        application pending)

                                      **For the City of New York**

                                      MICHAEL A. CARDOZO
                                      Corporation Counsel of the
                                      City of New York

                                      John R. Low-Beer (JL 3755)
                                      Richard J. Costa (RC 7278)
                                      Assistant Corporation Counsels

        100 Church Street, Room 3-162
        New York, New York 10007
        (212) 788-1007

        **LORNA B. GOODMAN**
        Peter J. Clines
        Rachel S. Paster
        Nassau County Attorney, by


By:  **MOULTON & GANS, P.C.**

        /s/ Nancy Freeman Gans
        Nancy Freeman Gans, BBO # 184540

        55 Cleveland Road
        Wellesley, MA  02481
        Telephone: (781) 235-2246
        Facsimile: (781) 239-0353

        **MILBERG WEISS BERSHAD**
          **& SCHULMAN LLP**

        Melvyn I. Weiss
        Michael M. Buchman
        Ryan G. Kriger
        One Pennsylvania Plaza
        New York, New York 10119-0165
        Telephone: (212) 594-5300
        Facsimile:  (212) 868-1229

        *Special Counsel for the*
        *County of Nassau*