

**Shipman & Goodwin LLP®**
COUNSELORS AT LAW

One Constitution Plaza
Hartford, Connecticut  06103-1919
Phone: (860) 251-5000

Gary S. Starr
Phone: (860) 251-5501
Fax: (860) 251-5216
gstarr@goodwin.com

April 21, 2006

Michael DeMarco, Esq.
Kirkpatrick & Lockhart Nicholson Graham, LLP
One Lincoln Street
Boston, MA  02111-2950

    Re: <u>In re Pharmaceutical Industry Average Wholesale Price Litigation
MDL 1456</u>

Dear Michael:

    Before I respond to the allegations made in your letter dated April 19, 2006, I will first outline for your review each and every category of documents and witnesses NHIC has produced and/or made available pursuant to our agreement reached on March 28, 2006:

- <u>First</u>, at your request, NHIC has produced a full index for the 121 boxes of documents related to BCBSMA Cost Center 9132;
- <u>Second</u>, NHIC allowed your legal team to review each and every one of those documents at your convenience at NHIC headquarters in Hingham, Massachusetts between April 12 and April 14;
- <u>Third</u>, NHIC produced approximately 4,000 documents that you hand-selected during your review of the 121 boxes of documents related to BCBSMA Cost Center 9132;
- <u>Fourth</u>, NHIC produced all organizational charts for the Part B carrier business from at least 1997-2005, to the extent that such documents exist;
- <u>Fifth</u>, NHIC produced any agreements between NHIC and CMS to provide Part B carrier services for Massachusetts, to the extent that such documents exist;

Michael DeMarco, Esq.
April 6, 2006
Page 2 of 5

- <u>Sixth</u>, NHIC identified two 30(b)(6) witnesses for deposition on a limited range of topics, specified by you, and identified the areas on which they would be prepared to testify;
- <u>Seventh</u>, NHIC produced the current resumes of its 30(b)(6) designees; and
- <u>Eighth</u>, please find enclosed an attachment which contains all of the electronic claims data you described as part of our agreement.

Therefore, the record is clear that NHIC has made a good faith effort to comply with the terms of our March 28, 2006 agreement.

Your April 19, 2006 letter complains that the agreement has become "unworkable" because the indices for documents related to BCBSMA are "imprecise," and because of "NHIC's refusal to produce indices that appear to be readily available to it." However, NHIC did not prepare the indices. To the contrary, BCBSMA prepared them almost eight years ago. Therefore, any gripe you have about the precision of the indices is not with NHIC. All NHIC can do is produce what it has.

In addition, your request for the remainder of the index was not a part of our original agreement. You requested it subsequent to our March 28, 2006 conversation, and NHIC is presently making reasonable efforts to search for the document. NHIC will produce it, to the extent that it exists, when it is recovered.

Next, your April 19, 2006 letter states that NHIC agreed to produce "all claims manuals and any written guidelines for its Medicare Part B reimbursement payments to providers"; and "the identity of all sources utilized to determine AWPs for the subject drugs as set forth in our October 2005 subpoenas." To the contrary, NHIC never agreed to produce any of this information. For example, our letter to you dated April 6, 2006, in which we memorialize the terms of the March 28, 2006 agreement, contains no mention of these documents.

Although you never asked for this information as part of our agreement, and we never agreed to produce it, as another example of our good-faith effort to meet your requests, please find presented below most of the information you seek in this request.

1. "identify all sources NHIC utilized to determine AWPs for the subject drugs." This is the Redbook, and it is available from its publisher.

2. "all claims manuals and any written guidelines for Med Part B reimbursement payments." It is unclear from your request whether you seek internal or external guidelines.

Michael DeMarco, Esq.
April 6, 2006
Page 3 of 5

- *External guidelines* are posted on this website: www.medicarenhic.gov, and in newsletters that were produced in the Lupron litigation.
- *Internal guidelines*—there are thousands upon thousands of desk level procedures, help files, and other materials used with our computer system to process claims. There is no central repository for this information: some may be in any of the boxes at the warehouse, or on individualized PCs, or in files maintained by customer service representatives for their own personal use. We do not agree to produce these documents.
- *Claims manuals* – From our discussions with NHIC, they are unaware of any claims manuals.

In addition, your letter refers to "NHIC's production of documents in response to our October 27, 2005 subpoena," and states that "NHIC needs to identify and produce without any further delay documents responsive to the October 27, 2005 subpoena." However, NHIC has not produced documents in response to either of Aventis' October 2005 subpoenas to date, and will not do so absent an order of the Court. You will recall that NHIC filed its objections to your overly broad and unduly burdensome production requests with the Court, and later filed a motion to quash, which it withdrew, without prejudice, only on the basis of our March 28, 2006 agreement.

At present, there is no agreement to produce anything pursuant to your October 2005 subpoenas, and no court order to do so. Moreover, NHIC believes that your October 27, 2005 subpoena is defective to the extent that it purports to make any request for documents. As we have already pointed out to you in writing, the October 27, 2005 subpoena makes no mention of any request for production of documents. For instance, you even neglected to check the box on the first page of the subpoena indicating that documents were requested to be produced. Thus, NHIC will not make any production pursuant to your defective subpoena.

Michael DeMarco, Esq.
April 6, 2006
Page 4 of 5

      Finally, you make the false and baseless claim that "we agreed to specific hourly rates and caps on paralegal and attorney time related to the review of these documents for privilege." To the contrary, we never agreed to any "specific hourly rates." Your representation was that you would pay reasonable rates. However, your letter of April 11, 2006 unilaterally changed this agreement, stating for the first time that you would only pay hourly rates that are far below the standard rates for attorneys and paralegals associated with the firm of Shipman & Goodwin, LLP—or, I suspect, your offices in Boston. We corrected this absurd—and, to be frank, insulting—assertion in our letter dated April 14, 2006. You will pay our standard rate, which is reasonable, or we will take this matter to the Magistrate Judge, and demand fees and costs associated with this request.

Sincerely yours,

Gary S. Starr, Esq.

cc:    James P. Muehlberger, Esq.
        Nicholas P. Mizell, Esq.
        Michael D. Ricciuti, Esq.
        Aimee E. Berman, Esq.
        Leslie M. Stafford, Esq.
        Andy J. Mao, Esq.
        Benjamin M. Wattenmaker, Esq.

433489 v.01

# ATTACHMENT TO APRIL 21, 2006 LETTER

On March 28, 2006, you requested that NHIC provide "the following information for any electronic claims data concerning the submitted charges and reimbursement payments for Medicare Part B drug transactions in Massachusetts:

1. the file names, file sizes, media on which they are preserved, the application used to access the files, and the operating system used to run each named application.
2. the number and types of cartridges/tapes used to store these files."

The information you sought for the period from October 1, 1992 to September 30, 2003 is presented below:

A. **File Names, and Number and Size of Cartridges/Tapes (*i.e.* "Reels") Used to Store These Files:**

| DSN (i.e. File Name) | | CREATED BY | # OF REELS | FOR PERIOD |
|---|---|---|---|---|
| PMSSB.HBBBU.BY70PURG.G0053V00 | 1/4/2006 | MSPBCN4X | 13 | 10/1/1992 - 9/30/1993 |
| PMSSB.HBBBU.BY70PURG.G0054V00 | 1/4/2006 | MSPBCN4X | 25 | 10/1/1993 - 9/30/1995 |
| PMSSB.HBBBU.BY70PURG.G0055V00 | 1/4/2006 | MSPBCN4X | 27 | 10/1/1995 - 9/30/1997 |
| PMSSB.HBBBU.BY70PURG.G0056V00 | 1/4/2006 | MSPBCN4X | 15 | 10/1/1997 - 9/30/1998 |
| PMSSB.HBBBU.BY70PURG.G0057V00 | 1/4/2006 | MSPBCN4X | 14 | 10/1/1998 - 9/30/1999 |
| PMSSB.HBBBU.BY70PURG.G0058V00 | 1/4/2006 | MSPBCN4X | 14 | 10/1/1999 - 9/30/2000 |
| PMSSB.HBBBU.BY70PURG.G0059V00 | 1/4/2006 | MSPBCN4X | 20 | 10/1/2000 - 9/30/2001 |
| PMSSB.HBBBU.BY70PURG.G0060V00 | 1/5/2006 | MSPBCN4X | 17 | 10/1/2001 - 9/30/2002 |
| PMSSB.HBBBU.BY70PURG.G0061V00 | 1/5/2006 | MSPBCN4X | 18 | 10/1/2002 - 9/30/2003 |

B. **File Sizes:**

- Size per reel is estimated to be 3.6 Gigabytes the 'size per reel', as the exact size cannot be calculated since the base MCS record length is variable.

C. **Media on Which They Are Preserved:**

- Data files are stored via IBM 3480 magnetic tape cartridges (re. reels).

D. **Attachment Used to Access the Files:**

- MCS application is run on an IBM platform including CPU models 2064-1C8 (986 MIPS) and 2064-1C9 (1,111 MIPS).

E. **Operating System Used to Run Each Named Application:**

- Operating System software includes Z/OS v1.4, CICS TS v2.3, and MVS v1.4.