# EXHIBIT A

## SUMMARY OF PLAINTIFFS' RESPONSES
## TO SCHERING'S AND WARRICK'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 1 | Average wholesale price, or "AWP," is a negotiation benchmark that has been used in the pharmaceutical industry for decades. | Admitted[2] | | Admitted |
| 2 | Warrick understood AWP to be a benchmark or list price. | Admitted[2] | | Admitted |
| 3 | Schering understood AWP to be a benchmark or a list price. | Admitted[2] | | Admitted |
| 4 | Warrick manufactures albuterol sulfate, which is at issue in this case. | Denied | No | Admitted |
| 5 | Albuterol is reimbursed under the "Durable Medical Equipment" provision of Medicare Part B. | Admitted | | Admitted |
| 6 | The .083% and .5% albuterol solutions are primarily self-administered drugs dispensed by pharmacies for patients to use at home with the help of a nebulizer. | Admitted | | Admitted |
| 7 | Albuterol was a multi-source drug for the entire period for which plaintiffs' have calculated damages. | Admitted | | Admitted |
| 8 | Medicare set the reimbursement rate for albuterol through four durable medical equipment regional carriers ("DMERCs"). This reimbursement rate was not published. | Denied | No | Admitted |
| 9 | Between January 1, 1994 through February 28, 2005, albuterol accounted for $182 of $269 million of allowances for inhalation drugs for Medicare Part B. | Admitted[5] | | Admitted |
| 10 | Medicare allowed $178 million for albuterol sulfate 0.083% in 1996 and over $200 million in 1997. | Admitted[5] | | Admitted |

1   Plaintiffs object to the relevancy of part or all of the statement.
2   Plaintiffs counter-designate additional statements.
3   Plaintiffs object to the statement on the grounds that it is inadmissible.
4   Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5   Plaintiffs admit that the statement appears in the cited deposition or document.

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 11 | In 1999, albuterol unit dose form accounted for 6.4% of total Medicare Part B drug spending and 65.8% of total Medicare Part B units. | Admitted[5] | | Admitted |
| 12 | In 2000, Medicare paid $296 million for the unit dose form of albuterol, which represented over 43% of the $683 million Medicare paid for inhalation drugs in 2000. | Admitted[5] | | Admitted |
| 13 | After the patent covering the Proventil inhaler expired in December 1989, Warrick introduced a generic version of the drug, which was among the first on the market, in 1993. | Denied | Yes. However, Plaintiffs' reference to the entirety of two exhibits, Ex. 2 and 10A - totaling 83 pages - fails under LR 56.1, which requires citations "with page references." Moreover, Plaintiffs' cited evidence does not contradict the proposed statement of fact. | Admitted |
| 14 | Albuterol products have historically been a large seller for Warrick, whereas perphenazine is much smaller. Perphenazine is a product primarily dispensed by pharmacies to be used as an anti-psychotic drug and occasionally, but rarely, administered by physicians as an anti-emetic agent. Medicare paid approximately $50,000 during the entire class period for all perphenazine prescriptions, not just those manufactured by Warrick. | Admitted[1] | | Admitted |
| 15 | Schering manufactures Proventil, which is reimbursed under Medicare Part B. | Admitted | | Admitted |
| 16 | Proventil is a brand form of albuterol sulfate and is used to treat the symptoms of asthma, chronic bronchitis, emphysema, and other lung diseases. | Admitted | | Admitted |
| 17 | In the generic industry, unlike the brand industry, the competing products are identical. | Admitted | | Admitted |
| 18 | Given the presence of perfect product substitutes in the generic market, prices can change often and generally decrease over time. | Denied[3] | No | Admitted |

1  Plaintiffs dispute the relevancy of part or all of the statement.
2  Plaintiffs counter designate additional statements.
3  Plaintiffs object to the statement on the grounds that it is inadmissible.
4  Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or
deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it
is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5  Plaintiffs admit that the statement appears in the cited deposition or document.

-2-

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|----|-----------|---------------------|--------------------------------------|------------|
| 19 | Pharmacies generally stock only a single manufacturer's generic product and only dispense that product. | Admitted [1,5] | | Admitted |
| 20 | Generic manufacturers compete for a pharmacy's business by offering discounts or rebates to the pharmacy, either directly or through a wholesaler. | Admitted [1,3,5] | | Admitted |
| 21 | When prescribing generic albuterol, the prescribing physician does not typically specify the manufacturer of the albuterol to be dispensed. | Denied [1,3] | No | Admitted |
| 22 | When a patient presents a prescription for a generic drug, such as albuterol, the version of the product actually dispensed depends upon the pharmacy and which version it has chosen to carry. | Denied [1,3] | No | Admitted |
| 23 | "Auto-substitution programs," utilized by wholesalers, involve pharmacies agreeing to take whichever manufacturers' generic a wholesaler supplies in exchange for a guarantee of the lowest possible price. | Admitted [1,3] | | Admitted |
| 24 | Agreements for generic products typically include a "right of first refusal," which allows a company to meet any lower price that a competitor might offer on a generic product. A right to first refusal carries with it the obligation to rebate to the customers the difference between what the customer paid for a product and the new price under the right-of-first-refusal for all products in the customer's system at the time the right is exercised. | Admitted [1,3,5] | | Admitted |
| 25 | The convention in expressing spreads - including the method used consistently by the government in many reports - is to express the spread as a percentage below AWP. | Denied | Yes. However, Plaintiffs' cited evidence does not contradict the proposed statement of fact. | Admitted |
| 26 | Plaintiffs express spreads as a percentage above ASP. For example, Plaintiffs claim that Warrick touted a 529% of albuterol. | Admitted | | Admitted |

1  Plaintiffs dispute the relevancy of part or all of the statement.
2  Plaintiffs counter designate additional statements.
3  Plaintiffs object to the statement on the grounds that it is inadmissible.
4  Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5  Plaintiffs admit that the statement appears in the cited deposition or document.

-3-

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 27 | In 1998, spreads as high as 85% of AWP, or approximately 550% of "ASP," were reported publicly. | Admitted [1,2,5] | | Admitted |
| 28 | The pricing of Warrick's products varies according to market conditions and can change on a daily basis. | Admitted [2,5] | | Admitted |
| 29 | Warrick competed in the marketplace by establishing accounts and then meeting, but typically not beating, the prices offered by competitors. | Admitted [2,5] | | Admitted |
| 30 | Warrick offers or has offered discounts and rebates, including prompt pay discounts, line-based rebates, market-share rebates, and stocking allowances. | Admitted | | Admitted |
| 31 | Upon the introduction of a generic product, Warrick and other generic manufacturers offer extended payment terms and offers to "reset" the price of all product purchased during that period at the price existing in the marketplace in a certain period after launch. | Admitted | | Admitted |
| 32 | Since Warrick and a wholesaler cannot know how much product will be sold under such programs at the time the product is shipped and billed, the price concessions demanded by wholesalers on the preferred position within auto-substitution programs are given by a post-sale rebate. | Admitted | | Admitted |
| 33 | It is not until after a product is sold that the amounts due under any market share rebate program can be assessed and rebates paid, typically as a credit towards future purchases. | Admitted | | Admitted |
| 34 | Warrick also typically adjusts on-hand inventory in the event of a market price decrease. | Admitted | | Admitted |
| 35 | When Warrick was the first to introduce a generic product, it generally set AWP at 10-20% below the equivalent brand product's AWP. | Admitted | | Admitted |

1 Plaintiffs dispute the relevancy of part or all of the statement.
2 Plaintiffs counter designate additional statements.
3 Plaintiffs object to the statement on the grounds that it is inadmissible.
4 Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete. This is a non-response. Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed. If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5 Plaintiffs admit that the statement appears in the cited deposition or document.

-4-

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 36 | Warrick suggests an AWP at launch and has, in almost all instances, not changed the AWP for the life of the product. | Admitted | | Admitted |
| 37 | Warrick did not use a Medicare reimbursement rate as a basis for adjusting prices on Warrick products. | Denied | Yes. However, Plaintiffs' single citation - to a December 2002 e-mail from Brian Longstreet - fails to create a disputed issue of fact, for reasons explained in Schering's and Warrick's Reply Memorandum, filed herewith. | Admitted |
| 38 | Warrick cannot report Warrick cannot report a single AWP that would have a uniform relationship to the many changing prices at which it sells its drugs. | Denied | No | Admitted |
| 39 | Warrick does not typically report a list price to wholesaler (or WAC) to national pricing compedia, nor does it set or use WAC in its internal record-keeping. | Admitted [2,5] | | Admitted |
| 40 | Warrick's wholesale and retail customers were invoiced at wide range of different prices, and Warrick does not have a single list price to report as WAC. | Admitted [5] | | Admitted |
| 41 | Warrick set its AWPs for albuterol at launch at 15-20% below Proventil's AWP. | Admitted | | Admitted |
| 42 | Since 1995, Warrick's AWPs for 0.083% and 0.5% solutions of albuterol have stayed the same. | Admitted | | Admitted |
| 43 | Warrick's AWPs for albuterol were consistently low in relation to its competitors, but Warrick has consistently achieved large market shares. | Denied | Yes. However, Plaintiffs' cited evidence does not contradict the proposed statement of fact. | Admitted |
| 44 | Following introduction of the generic version, Schering has maintained relatively high AWPs for Proventil, but its market share has been relatively low. | Admitted [2] | | Admitted |
| 45 | When Warrick's market share began declining, it did not adjust its AWPs. | Admitted [2,5] | | Admitted |
| 46 | When an albuterol competitor lowered its AWP in 2002, the competitor's market share increased. | Admitted [1,3] | | Admitted |

1  Plaintiffs dispute the relevancy of part or all of the statement.
2  Plaintiffs counter designate additional statements.
3  Plaintiffs object to the statement on the grounds that it is inadmissible.
4  Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5  Plaintiffs admit that the statement appears in the cited deposition or document.

| No | STATEMENT | PLAINTIFFS' RESPONSE | EVIDENCE CITED IN SUPPORT OF DENIAL? | CONCLUSION |
|----|-----------|----------------------|--------------------------------------|------------|
| 47 | Warrick did not market the spread. | Denied | Yes. However, Plaintiffs' citation - to two pages in their brief discussing a December 2002 e-mail from Brian Longstreet and July 2005 deposition testimony from Louis Manfredi - fails to create a disputed issue of fact, for reasons explained in Schering's and Warrick's Reply Memorandum, filed herewith. | Admitted |
| 48 | At no time was Warrick aware of the Medicare reimbursement rate for albuterol, nor did it ever attempt to calculate the reimbursement rate. | Admitted [1,3,5] | | Admitted |
| 49 | Warrick did not provide calculations comparing its products with competitors' products based on the spread between acquisition cost and AWP. Warrick did not instruct customers to calculate the spread between the AWP and direct price and to compare that to a competitor's spread. | Admitted [1, 3,5] | | Admitted |
| 50 | Warrick competes based on product portfolio, production capacity, customer-service levels, and price. | Admitted [1,2,3,5] | | Admitted |
| 51 | Warrick sent out price notifications listing the name of the product, its package size, its NDC, its AWP, and its "direct price," i.e., the price to the customer. | Admitted [2] | | Admitted |
| 52 | Warrick used a field sales force of three sales directors to sell its products. | Denied | Yes. However, Plaintiffs' reference to the entirety of Ex. 2 - which totals 73 pages - fails under LR 56.1, which requires citations "with page references." Moreover, Plaintiffs' cited evidence does not contradict the proposed statement of fact. | Admitted |
| 53 | Warrick used a contract telemarketing service in order to market its products to independent retailers. | Admitted [1] | | Admitted |

1  Plaintiffs dispute the relevancy of part or all of the statement.
2  Plaintiffs counter designate additional statements.
3  Plaintiffs object to the statement on the grounds that it is inadmissible.
4  Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete. This is a non-response. Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed. If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5  Plaintiffs admit that the statement appears in the cited deposition or document.

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 54 | Warrick's strategy was to target a limited number of customers that supply the significant majority of the national market for its drugs. | Admitted[1] | | Admitted |
| 55 | AWPs were publicly available from pricing compendia. | Admitted | | Admitted |
| 56 | Competitive forces in the industry drive prices down and cause the spread between AWP and ASP to increase over the life of a particular product. | Denied | Plaintiffs' reference to the entirety of a 40 page-declaration – "*See* Hartman Decl." – fails under LR 56.1, which requires a citation "with page references." Moreover, the relevant portions of the Hartman Declaration, especially as they apply to multi-source products like albuterol, are inadequate to create a disputed issue of fact, for reasons explained in Schering's and Warrick's Reply Memorandum, filed herewith. | |
| 57 | Schering AWPs are set and maintained at 20% to 25% above the manufacturer's "list price," which is referred to as "direct price" or WAC. | Admitted[5] | | Admitted |
| 58 | Schering did not market the spread. | Denied | Plaintiffs' reference to ten pages of their brief fails under LR 56.1, which requires citations "with page references to affidavits, depositions and other documentation." Moreover, the Plaintiffs' memorandum fails to create a disputed issue of fact, for reasons explained in Schering's and Warrick's Reply Memorandum, filed herewith. | Admitted |
| 59 | Schering did not intend to market the spread by sending price notifications to customers. | Admitted[3,5] | | Admitted |
| 60 | Schering did not instruct customers to calculate the spread in sending out price notification lists. | Admitted[4,5] | | Admitted |

1 Plaintiffs dispute the relevancy of part or all of the statement.
2 Plaintiffs counter designate additional statements.
3 Plaintiffs object to the statement on the grounds that it is inadmissible.
4 Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5 Plaintiffs admit that the statement appears in the cited deposition or document.

-7-

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 61 | Call notes are notes that sales representatives used to memorialize their meetings and conversations with physicians in the course of selling Schering's products. | Admitted [2,4] | | Admitted |
| 62 | Schering sales representatives testified that discussions about reimbursement with physicians were rare and were primarily limited to answering questions about the mechanics of the Medicare reimbursement process by physicians who had not participated in the Medicare program. | Denied | No | Admitted |
| 63 | Medicare based reimbursement for multiple-source drugs and biologicals on a flat rate calculated as "the lesser of the median average wholesale price for all sources of the generic forms of the drug or biological or the lowest average wholesale price of the brand name forms of the drug or biological." | Admitted [2] | | Admitted |
| 64 | Since the early 1990s, Schering and Warrick have been required to report "average manufacturer's price" and "best price" for their products to the same agency that administers Medicare. | Admitted [1] | | Admitted |
| 65 | The regulation regarding manufacturer's "average sales price," passed pursuant to the Medicare Modernization Act of 2003, specifies numerous variables which manufacturers must consider in performing the calculation. | Admitted [1] | | Admitted |
| 66 | Between 1996 and 2004, government reports announced spreads as high as 89% off AWP for albuterol sulfate. As early as 1996, the government reported spreads of 65% of AWP for albuterol sulfate. | Admitted [1,2] | | Admitted |

1 Plaintiffs dispute the relevancy of part or all of the statement.
2 Plaintiffs counter designate additional statements.
3 Plaintiffs object to the statement on the grounds that it is inadmissible.
4 Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete. This is a non-response. Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed. If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5 Plaintiffs admit that the statement appears in the cited deposition or document.

-8-

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|----|-----------|----------------------|--------------------------------------|------------|
| 67 | In June 1996, HHS-OIG reported that "using the median of the published average wholesale pricing of albuterol sulfate does not reflect the actual wholesale pricing of albuterol sulfate that is occurring in the marketplace." The study found that most customers in retail or mail order pharmacies paid less for albuterol-sulfate than Medicare did. The study also found that buying groups, who negotiate prices from drug manufacturers for member pharmacies, were able to negotiate prices for albuterol sulfate that were between 56 and 70 percent lower than the Medicare reimbursement. | Admitted [1,2] | | Admitted |
| 68 | In June 1996, HHS-OIG reported that "Medicare allowances for albuterol sulfate are excessive compared to suppliers' costs for the drug." Based on a study of supplier acquisition costs from January 1994 to February 1995, the report found that suppliers paid an average of $0.19 per milliliter to acquire albuterol sulfate, while Medicare was reimbursing the drug at between $0.40 and $0.43 per milliliter. The report concluded that Medicare could have saved $94 million if it had based reimbursement on the average of supplier invoice costs. | Admitted [1,2] | | Admitted |
| 69 | In August 1998, HHS-OIG reported that Medicare reimbursements exceeded acquisition cost by up to 333 percent more than acquisition costs for the albuterol sulfate. This study found that Medicare allowance for albuterol sulfate in 1998 ($0.39 per ml) was between 56 to 550 percent more than the Department of Veterans Affairs paid and 20 percent more than the average Medicaid paid for the drug. | Admitted [1,2] | | Admitted |

1  Plaintiffs dispute the relevancy of part or all of the statement.
2  Plaintiffs counter designate additional statements.
3  Plaintiffs object to the statement on the grounds that it is inadmissible.
4  Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5  Plaintiffs admit that the statement appears in the cited deposition or document.

| No | Statement | Plaintiffs' Response | Evidence Cited in Support of Denial? | Conclusion |
|---|---|---|---|---|
| 70 | In June 2000, HHS-OIG reported that Medicare reimbursement for albuterol was almost seven times greater than the price the VA paid and almost twice Medicaid's upper limit for the drug. The report noted that a customer at a retail pharmacy would pay a median price of $0.38 per ml (or 0.25 per ml from an Internet pharmacy) whereas Medicare reimbursed $0.47 per ml. | Admitted [1,2] | | Admitted |
| 71 | In March 2002, HHS-OIG reported that HHS-OIG has "consistently found that the published average wholesale prices currently used by Medicare to establish reimbursement amounts bear little or no resemblance to actual wholesale prices that are available to suppliers and large government purchasers." The report found that Medicare reimbursement for albuterol ($0.47 per mg) was nine times greater than the price at which the Department of Veterans Affairs paid to acquire the drug ($0.05 per mg) and six times higher than the median catalog price available to suppliers ($0.09 for median supplier invoice price and $0.11 for the median wholesale acquisition cost reported by manufacturers). | Admitted [1,2] | | Admitted |
| 72 | In January 2004, HHS-OIG reported that, in 2002, Medicare could have saved $263 million if it had reimbursed albuterol at the FUL set under Medicaid ($0.17 per mg) rather than at 95 percent of AWP. The report also found that, for 2003, Medicare reimbursement for albuterol was eight times higher than the median price available to suppliers (median price of $0.06 per mg) and nine times higher than the median price available to the VA ($0.05 per mg). | Admitted [1,2] | | Admitted |

1  Plaintiffs dispute the relevancy of part or all of the statement.
2  Plaintiffs counter designate additional statements.
3  Plaintiffs object to the statement on the grounds that it is inadmissible.
4  Plaintiffs make the argument that a statement or fact is taken out of context or that an exhibit is incomplete.  This is a non-response.  Under Local Rule 56.1, plaintiffs must admit or deny that the fact(s) are undisputed.  If the plaintiffs deny that a particular fact is undisputed, they are required to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."
5  Plaintiffs admit that the statement appears in the cited deposition or document.