**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 ) ) ) ) | Hon. Patti B. Saris |

**MEMORANDUM IN SUPPORT OF THE JOHNSON & JOHNSON DEFENDANTS' MOTION FOR LEAVE TO RESPOND TO THE DUXBURY DECLARATION**

Johnson & Johnson, Ortho Biotech Products, L.P., and Centocor, Inc. (the "J&J Defendants") respectfully ask for leave to respond to the declaration of Mark Duxbury submitted by plaintiffs.

Plaintiffs filed their motion for partial summary judgment against all Track 1 Defendants on March 15, 2006.  [Dkt. No. 2278].  The J&J Defendants responded on April 7, 2006.  On April 28, 2006, plaintiffs filed their reply papers and included a declaration from a former Ortho Biotech employee named Mark Duxbury.  [Dkt. No. 2484]

Although Mr. Duxbury's declaration is irrelevant given the undisputed facts, plaintiffs' resort to Mr. Duxbury should not stand without comment.  In his declaration, Mr. Duxbury accuses Ortho Biotech of promoting Procrit's low price to dialysis centers and hospitals.  Contrary to the evidence, Mr. Duxbury denies that Ortho Biotech had a policy against marketing the spread between acquisition cost and the reimbursement amount.  *Compare* Duxbury Decl., ¶ 28 *with* The Johnson & Johnson Defendants' L.R. 56.1 Counter-Statement of Disputed Material Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment Against All Track 1 Defendants, Counter-Statement 67.

Mr. Duxbury occupies a unique position in this litigation.  First, as he admits, for "the past two and a half years" he has been a paid "consultant" to plaintiffs' counsel.  Duxbury Decl., ¶ 31.  *See also* Schau Sur-Reply Decl., Ex. 4.  Second, the government's actions in response to his vendetta against Ortho Biotech reveal the reality of what is going on here.

### A. Mr. Duxbury's Unsuccessful Wrongful Discharge Case Against Ortho Biotech

Mr. Duxbury was an Ortho Biotech sales representative.  In 1998, the Western Washington Cancer Center contacted Mr. Duxbury's supervisor at Ortho Biotech to say that Mr. Duxbury "was no longer welcome on the premises because of repeated sexual and racial

comments." *Duxbury v. Ortho Biotech, Inc.*, No. 52348-1-I, 2004 WL 93588, at \*2 (Wash. App. Div. 1, May 3, 2004) (Schau Sur-Reply Decl., Exh. 1).  Mr. Duxbury's behavior was subsequently described by the Washington State Court of Appeals, Division 1, as "gravely inappropriate."  *Id.* at \*6.

Following his resignation, Mr. Duxbury sued Ortho Biotech for alleged wrongful discharge.  Ortho Biotech was granted summary judgment against Mr. Duxbury's wrongful discharge claim.  The grant of summary judgment was upheld on appeal.  *Id.* at \*1.  During the course of the wrongful discharge litigation, Mr. Duxbury was sanctioned and fined by the court for disclosing Ortho Biotech's confidential business information in violation of a protective order.  *Id.* at \*3.  The sanction and fine were upheld on appeal.  *Id.*

Moreover, a declaration submitted by Mr. Duxbury in opposition to Ortho Biotech's motion for summary judgment was stricken by the court because it contained "numerous assertions that are hearsay, speculation, argument, and/or lack any foundation."  *Id.* at \*4.  The order striking Mr. Duxbury's declaration was upheld on appeal.  *Id.*

B.  **Mr. Duxbury's Unsuccessful Qui Tam Case Against Ortho Biotech**

As an unsuccessful employment litigant and a disgraced former sales representative, Mr. Duxbury needed a new career.  He found one.  In the fall of 2003, Mr. Duxbury was hired by Hagens Berman LLP, plaintiffs' counsel, as a "Senior Pharmaceutical Investigator/Consultant."  Schau Sur-Reply Decl., Ex. 4.  Coincidentally, Duxbury filed an AWP *qui tam* case against Ortho Biotech naming himself as the relator.  Schau Sur-Reply Decl., Ex. 2.  Not surprisingly, he was represented by Hagens Berman.  *Id.*

Seeking a big payday (and liberally borrowing from plaintiffs' complaint), Mr. Duxbury alleged that Ortho Biotech engaged in a fraud relating to AWP (*id.*, ¶ 29):

2

> Ortho deliberately and intentionally published AWPs for Procrit that did not reflect the actual pricing structure of the drugs, but was created solely to cause overpayment for Procrit by Medicare and Medicaid. Ortho created and perpetuated this scheme so that the medical providers who purchased these drugs at a low cost would bill Medicare and Medicaid at the inflated AWPs and earn a substantial profit from the "spread" between the real cost and the various AWP-related reimbursement rates.

Mr. Duxbury's new career has stalled. On July 12, 2005, the United States Department of Justice served a Notice of Election to Decline Intervention in Mr. Duxbury's *qui tam* case. Schau Sur-Reply Decl., Exh. 3. Mr. Duxbury did not pursue his AWP claims after the United States declined to intervene as a plaintiff.

## ARGUMENT

### I. THE DUXBURY DECLARATION SHOULD BE STRICKEN

#### A. Mr. Duxbury's Declaration is Untimely

Plaintiffs' counsel has employed Mr. Duxbury for two and a half years, and they have represented him as counsel since at least November 2003. Such as it is, plaintiffs are not allowed to hold back "evidence" until a reply brief to "ambush" the other party. *See Will-O-Wheel Farms v. A.O. Smith Harvestore Products, Inc.*, Nos. 89-1942, 89-1977 & 89-1978, 1991 WL 86286, at *6 (6th Cir. May 24, 1991) (citing *Wright v. Holbrook,* 794 F.2d 1152, 1156 (6th Cir. 1986)); *see also In re Del Grosso*, No. 89 B 06606, 1992 WL 280788 (Bankr. N.D. Ill. Sept. 21, 1992) ("The nature of a reply brief is to address issues raised in the responding brief, which does not include new arguments – trial by ambush is not an acceptable form of litigation."). A declaration used to support a motion, should be served with the motion. *See Cia. Patrolera Caribe, Inc. v. ARCO Caribbean, Inc.*, 754 F.2d 404, 409 (1st Cir. 1985).

### B. Mr. Duxbury's Accusations are Irrelevant

The essence of Mr. Duxbury's testimony is that he was compelled by his sales quotas to promote Procrit to dialysis centers and hospitals premised on "greater profit and margin … based on the difference between acquisition cost and reimbursement."  Duxbury Decl., ¶¶ 9, 10, 11, 12, 13, 15, 18, 19, 20, 22, 23, and 24.

Once again, plaintiffs have not done their homework.  *Dialysis centers and hospitals are not reimbursed based on AWP*.  Rather, dialysis centers are reimbursed for epoetin alfa based on a *fixed statutory rate* of $10 per 1000 units.  42 U.S.C. § 1395rr(b)(11)(B).  The statutory rate is not tied to AWP.

Moreover, in the early 1990's, the very years that Mr. Duxbury says he was promoting Procrit to dialysis centers, Procrit's spreads were well within Dr. Hartman's liability threshold.  In other words, even if Mr. Duxbury promoted Procrit's spreads, the spreads he promoted were, according to plaintiffs, completely legal.

### CONCLUSION

Mr. Duxbury's declaration should be stricken as untimely, and, if considered, fails to set forth a triable issue of fact.

Dated:  May 5, 2006                  Respectfully submitted:

/s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr.
Andrew D. Schau
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000

Attorneys for the Johnson & Johnson Defendants

## CERTIFICATE OF SERVICE

      I certify that on May 5, 2006 a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF THE JOHNSON & JOHNSON DEFENDANTS' MOTION FOR LEAVE TO RESPOND TO THE DUXBURY DECLARATION was served on all counsel via Lexis/Nexis.

                                                      /s/ Andrew D. Schau
                                                      Andrew D. Schau

1275827v1