E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Docket No. 01-12257-PBS

**CITIZENS FOR CONSUMER JUSTICE, ET AL.**
      Plaintiffs

v.

**ABBOTT LABORATORIES, et al**
      Defendants

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
HELD ON FEBRUARY 2, 2006

APPEARANCES:

For the plaintiffs: David S. Nalven, Esquire, Hagens, Berman, Sobol, Shapiro, LLP, One Main Street, Cambridge, MA 02142.

For Shering-Plough: Eric Christofferson, Esquire, Ropes and Gray, LLP, One International Place, Boston, MA 02110, (617) 951-7751.

For Johnson & Johnson: Adel Mangi, Esquire, Patterson, Belknap, Webb & Tyler, LLP, 1133 Avenue of the Americas, New York, NY 10036-6710.

For Astrazeneca Pharm.: Nicholas Theodorou, Esquire, Foley Hoag LLP, 155 Seaport Boulevard, Seaport World Trade Center West, Boston, MA 02210, (617) 832-1163.

For Dey, Inc.: Chris Palermo, Esquire, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, (212) 808-7800.

For Abbott Labs: Carol Geisler, Esquire, Jones Day, 222 East 41st Street, New York, NY 10017-6702.

For Empire Blue Cross Blue Shield: Theodore Hess-Mahan, Esquire, Shapiro Haber & Urmy, LLP, 53 State Street, Boston, MA 02108, (617) 439-3939.

*MARYANN V. YOUNG*
Certified Court Transcriber
Wrentham, Massachusetts 02093
(508) 384-2003

44

1  Thank you, Your Honor.
2          THE COURT: All right. Do you want to reply briefly?
3          MS. JOSEPHSON: Could I just very, very briefly. I
4  just wanted to point out because counsel for Dey referenced the
5  action that you took on the Health Net issue, this is the
6  transcript of that hearing is attached to document 1940-1 at
7  Exhibit E, and in that hearing it was very clear that one of
8  the factors that the defendants brought forward to convince you
9  to order discovery from Health Net was that there was no
10 competitive relationship between Health Net and any of the
11 parties in the case, also, that the defendants only sought a
12 representative sample of contracts and that is sample not what
13 their position is here.  Thank you.
14         THE COURT: All right, on behalf of Fallon?
15         MR. SATURLEY: Thank you, Your Honor, William
16 Saturley on behalf of Fallon Community Health Plan. Fallon has
17 171,000 members, Your Honor, and they are largely located in
18 Worcester County in the Commonwealth. My brothers have already
19 ably dealt with whether or not there's a benefit to the
20 defendants of pursuing this subpoena issuance, and so I will
21 certainly pass over that other than I endorse the arguments
22 that have been made by Attorney Nalven.
23         We've only been involved in this, my law firm, since
24 December 22nd and so there's been an awful lot--
25         THE COURT: You're lucky.

Case 1:01-cv-12257-PBS   Document 2530-3   Filed 05/08/06   Page 4 of 17
Case 1:01-cv-12257-PBS   Document 2240   Filed 03/08/2006   Page 59 of 75

45

1           MR. SATURLEY:  --to try to catch up with, and I'm
2  hoping you'll let me stay lucky, Your Honor, and grant our
3  motion because from our standpoint while the subpoena that was
4  served on Fallon maybe a narrowed subpoena it's quite
5  significant.  It asks for in essence if read largely and on its
6  face, it essentially asks for every piece of paper that Fallon
7  has generated or collected in one form or other for the past 14
8  years.
9           The first document request seeks all schedules
10 disclosing the amounts reimbursed to physicians for any
11 services rendered or drugs administered.  Your Honor, the way
12 that Fallon does its business is it signs a separate contract
13 with every physician or every entity that employs physician or
14 every provider every year.  That's on average 8,000 contracts
15 per year times 14 years is approximately 110 to 120,000
16 contracts.  In order to determine and to go through the process
17 of reviewing those contracts to strike them for privilege, to
18 determine whether they were responsive at all, to worry about
19 the commercial information that my sister has addressed, would
20 require just in and of itself the equivalent of 50,000 hours
21 worth of work.  Fallon cannot meet that burden.  That's just
22 the first category of 12.
23          The second category, for instance, please give us all
24 electronic claims data, in essence is what it says.  Fallon
25 receives tens of thousands of electronic claims every day.  In

Case 1:01-cv-12257-PBS   Document 2530-3   Filed 05/08/06   Page 5 of 17
Case 1:01-cv-12257-PBS   Document 2240   Filed 03/08/2006   Page 60 of 75

46

1  order to comply with a request that would entail a review of
2  millions of claims.  There is no electronic computer search
3  mechanism that would allow us to respond to the subpoena and go
4  through the process we would need to in order to determine if
5  those records were compliant, determine if there was
6  information in there that we should not produce.  So, again,
7  we're talking a manual review process.  Fallon has already told
8  you in the context of the companies that are involved here is
9  very small.  It has a total of 525 employees, 200 of them in
10 the administrative capacity.  They're all very busy.  The
11 affidavit of Daniel Conquer, which is document number 2783,
12 sets forth the other things that Fallon is doing today.  Fallon
13 is trying to convert all of its records and answer multiple
14 inquiries just with regards to the Medicare Part D change that
15 was made with regards to the health reinsurance business as of
16 January 1.  Fallon is also preparing for a Medicaid site visit
17 upcoming.  Fallon is undergoing a Department of Insurance
18 investigation right now, an annual site visit.  Fallon is
19 preparing for its two week audit in order to file its 501(c)(3)
20 information, et cetera, et cetera, et cetera.  Fallon's staff
21 are working up to 80 hours a week now to comply with their
22 existing obligations.  To undertake any response to the
23 subpoena as stands or even as what might, from your situation
24 might appear to be a reasonable accommodation, why not do it
25 for instance for the past three years all the records on site

Case 1:01-cv-12257-PBS   Document 2530-3   Filed 05/08/06   Page 6 of 17
Case 1:01-cv-12257-PBS   Document 2240   Filed 03/08/2006   Page 61 of 75

47

1  as opposed to iron mountain still remains an overwhelming and
2  unreasonable burden to Fallon.
3        I will say that we have communicated with counsel for
4  Dey.  They have been polite.  They have been responsive.  We
5  haven't had any problem talking with each other, but we are up
6  against the unassailable fact to respond to the subpoena either
7  as stated or as modified in a way that would be acceptable to
8  Dey is an incredible, unreasonable burden to a very small
9  company.  And we ask under those circumstances that you just
10 say, that's not necessary, the subpoena on Fallon is squashed.
11 Thank you.
12        MR. PALERMO:  Your Honor--
13        THE COURT:  Clearly the theme all the way across the
14 board with all three entities is burden here.
15        MR. PALERMO:  Well, Your Honor, in the last argument
16 counsel's argument seemed to be that any response would be too
17 burdensome because they're too busy with all the other things
18 that they have to do.  What we've tried to do with our narrowed
19 request, Your Honor, is narrow them to exactly the same
20 discovery that Your Honor has permitted on numerous prior
21 occasions.  The Court has previously ordered discovery from
22 Blue Cross Blue Shield and Mutual of Omaha even though they're
23 small plans.  Small plans are particularly relevant here with
24 respect their knowledge of reimbursement and their methodology,
25 and they're highly relevant to the allegations that are at the

Case 1:01-cv-12257-PBS   Document 2530-3   Filed 05/08/06   Page 7 of 17
Case 1:01-cv-12257-PBS   Document 2240   Filed 03/08/2006   Page 62 of 75

48

1  heart of this case, Your Honor.  And we have really tried to
2  narrow those requests and tried to be consistent with what's
3  been permitted over and over and over again.  Thank you, Your
4  Honor.
5          THE COURT:  All right.  I'll take the morning recess
6  at this time.  All right, 10 minutes.
7  (RECESS)
8          THE COURT:  All right, having given the matter some
9  further thought and having heard extensive argument in
10 reference to docket entries 1907, 1909, 1910, 1914, 2005 and
11 2091, I will grant the plaintiffs' motion for protective orders
12 in those individual motions, and I will grant the motions to
13 quash as well.  Having reevaluated the situation and having
14 heard really very extensive argument on burdensomeness today, I
15 believe that the presence of Blue Cross Blue Shield in the
16 litigation at this time does change things, and I feel that the
17 oppressiveness of the burden as has been outlined by counsel
18 for the three health plans is quite dramatic.  I'm also
19 concerned about the issues of confidentiality.  I think there
20 are serious confidentiality issues here in a competitive
21 situation, and for that reason I'm very much concerned about
22 the rights of the non-parties and, therefore, grant the
23 motions.
24         All right, I believe we have one remaining motion and
25 that is 1820, which is plaintiffs' motion to compel production

F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: PHARMACEUTICALS INDUSTRY )
AVERAGE WHOLESALE PRICE )
LITIGATION ) MDL No. 1456
)
)
) Civil Action No. 01-12257-PBS
THIS DOCUMENT RELATES TO THE )
CONSOLIDATION CLASS ACTION )
)
)
)

## SUPPLEMENTAL AFFIDAVIT OF DEBORAH A. JOHNSON

I, Deborah A. Johnson, being duly sworn, depose and say the following:

1. My name is Deborah A. Johnson. I am over the age of 18, of sound mind, and fully competent to testify to the facts and matters set forth in this Affidavit.

2. As I noted in my initial Affidavit in this matter, I am an employee of Electronic Data Systems Corporation. One of EDS' subsidiaries is National Heritage Insurance Company ("NHIC"), and I am assigned to work full time at NHIC as the Massachusetts Systems Support Manager for the Medicare Part B Carrier account. I have worked on the Medicare Part B Carrier account for NHIC and have served in a leadership position with NHIC since 1997.

3. NHIC, as a federal contractor, is compensated for its work on the Medicare Part B Carrier account on a cost-reimbursement basis by the federal agency charged with responsibility for Medicare (Centers for Medicare and Medicaid Services, or "CMS"). The budget for NHIC's performance for the current fiscal year does not include any costs for

SUPPLEMENTAL AFFIDAVIT OF DEBORAH A. JOHNSON – Page 1

compliance associated with this subpoena. Under its Agreement with CMS, NHIC has no obligation to continue performance or otherwise incur any costs beyond the amount of federal funding available, its most recent cost apportionment by CMS, or its budgeted amount for the anticipated cost of performance, whichever is least.

4. I estimate that it will cost at least $518,227 for NHIC to comply with the subpoena as it is now stands. This estimate includes the following expenses:

    a. NHIC presently maintains between 30,000 and 35,000 boxes of paper documents at an Iron Mountain off-site storage facility. Costs for pulling the relevant boxes, and for replacing them in the storage facility, will be approximately $70,500;

    b. Costs for transporting the documents to and from the Iron Mountain storage facility will total approximately $30,000;

    c. Storage of the retrieved documents at a temporary facility near the NHIC offices for a period of 4 months will cost at least $12,917;

    d. Review of these paper documents will require approximately 12,016 hours by contract temporary employees at an hourly rate of approximately $15.11. The total expense for review by contract temporary employees will be approximately $181,500;

    e. Supervision and training of the temporary employees, and supplemental review of these paper documents, will also require approximately 1,408 hours by contract paralegals at an hourly rate of $37. The total expense for the work of the contract paralegals will be approximately $52,000;

**SUPPLEMENTAL AFFIDAVIT OF DEBORAH A. JOHNSON – Page 2**

    f. The cost for extracting claims history data from NHIC computer systems will be approximately $144,000.

This estimate does not include the substantial expense of reviewing e-mail and other electronic documents, such as desk level procedures, or the creation of a date base to expedite such review. It also does not include any legal fees necessary with respect to the production.

  5. Unless Aventis is ordered to pay these very substantial costs of compliance, those costs will be included in NHIC's cost of performance under the Agreement. Accordingly, CMS may cut back on other services or change the priorities for services that NHIC is providing to meet this obligation, unless it allocates additional funds to cover the costs of compliance.

  6. Such an outcome is highly undesirable. NHIC currently provides Medicare Part B Carrier account services for CMS in Maine, Massachusetts, New Hampshire, Vermont, and California, serving over 4 million Medicare beneficiaries and 142,000 providers on behalf of CMS. Therefore, to avoid or minimize additional expenditure of federal funds by CMS per the Agreement or curtailment by CMS of the services provided by NHIC for those Medicare beneficiaries and providers, it is essential that Aventis' subpoena be dramatically reduced in scope, that ample time be provided for NHIC's production of any documents required under it, and that Aventis be ordered to pay the cost of that production.

  7. I know of my own personal knowledge that each of the facts and matters set forth in this Affidavit is true and correct, and I could and would testify to them if called upon to do so.

_____
Deborah A. Johnson

Subscribed and sworn to before me this __8th__ day of May, 2006.

_____
Notary Public

My Commission Expires: __Amber M. Elie__
Notary Public, Maine
My Commission Expires June 2, 2012

---

**SUPPLEMENTAL AFFIDAVIT OF DEBORAH A. JOHNSON -- Page 4**

G



**Kirkpatrick & Lockhart Nicholson Graham** LLP

State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
617.261.3100
Fax 617.261.3175
www.klng.com

April 11, 2006

**By E-Mail and First-Class Mail**

Gary S. Starr, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919

Michael DeMarco
617.951.9111
Fax: 617.261.3175
mdemarco@klng.com

Re:   **In re Pharmaceutical Industry Average Wholesale Price Litigation
      MDL 1456**

Dear Gary:

I am writing in response to your letter dated April 6, 2006, and to also address our inspection and copying of documents scheduled to begin on Wednesday, April 12, 2006.

1.  **CONFIRMED AREAS OF AGREEMENT**

    Per your letter of April 6, 2006, you have confirmed that the parties are in agreement on the following points:

    **ITEMS READILY AVAILABLE TO NHIC**

    Without good cause for delay and to the extent such document presently exist, on or before April 10, 2006, NHIC will produce the following documents to Aventis:

    - The contracts between BCBSMA and CMS and NHIC and CMS to provide Part B carrier services for Massachusetts.

    - Any agreements between BCBSMA and NHIC concerning the transfer of the Part B carrier business from BCBSMA to NHIC in 1997-1998.

    - Organizational charts for the Part B carrier business from at least 1997-2005, to the extent that such documents exist.

    **INITIAL AREAS OF INQUIRY FOR 30(b)(6) DESIGNEES**

    Without good cause for delay, on or before April 21, 2006, NHIC will produce a 30(b)(6) witness or witnesses to testify as to the following areas of inquiry:

    - any work done relating to surveys of physicians regarding their Medicare Part B drug acquisition costs, including preliminary questionnaires, information received from physicians, and any related information prepared, gathered or received by BCBSMA as the Massachusetts Part B carrier. This includes actions taken and information gathered in response to the March 14, 1994 directive from CMS requesting such surveys;

BOS-957994 v1 5544510-0903

BOSTON • DALLAS • HARRISBURG • LONDON • LOS ANGELES • MIAMI • NEWARK • NEW YORK • PALO ALTO • PITTSBURGH • SAN FRANCISCO • WASHINGTON



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Gary S. Starr, Esq.
April 11, 2006
Page 2

- why and how often submitted charges from and reimbursement payments to physicians deviated from the statutory AWP ceilings for Part B covered drugs from 1991-2004, including the carrier's discretion to set reimbursement amounts;

- whether it is possible to determine from the Massachusetts Medicare Part B records for 1991-2004 maintained by NHIC if the submitted charges for part B covered drugs were based upon AWP; and

- the volume of Part B claims from 1991 to 2004 for Massachusetts and the quantity of providers that submitted such claims.

### ELECTRONIC CLAIMS DATA

Without good cause for delay, on or before April 21, 2006, NHIC will provide the following information for any electronic claims data concerning the submitted charges and reimbursement payments for Medicare Part B drug transactions in Massachusetts:

1. The file names, file sizes, media on which they are preserved, the application used to access the files, and the operating system used to run each named application.

2. The number and types of cartridges/tapes used to store these files.

2. **NOTES REGARDING ITEMS TO BE PRODUCED BY APRIL 10, 2006**

As we discussed during the evening of March 28, 2006, and as memorialized in Jim Muehlberger's e-mail to you just after our conversation concluded, NHIC also agreed to identify all sources it utilized to determine AWPs for the subject drugs and to produce all claims manuals and any written guidelines for its Medicare Part B reimbursement payments to providers by April 10, 2006.

We have yet to receive, however, any of the items that were to be produced to us by April 10, 2006. Please explain the good cause for and expected length of the delay.

3. **CONTINUED AREAS OF DISAGREEMENT**

In my letter dated March 31, 2006, I asserted quite clearly that: "The above productions and designations shall not constitute a waiver by Aventis of its right to seek additional productions and/or designees pursuant to its previously served subpoenas upon NHIC. For instance, Aventis assumes that NHIC's productions of documents will include all documents responsive to the Initial Areas of Inquiry for 30(b)(6) designees."



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Gary S. Starr, Esq.
April 11, 2006
Page 3

You apparently misinterpreted this assertion, countering that "NHIC has never agreed at any time to produce the documents called for in Aventis' subpoena for production of Rule 30(b)(6) witnesses, nor has NHIC given Aventis any reason to 'assume' that it would make any such production."

Please advise immediately as to whether NHIC is now refusing to produce documents responsive to the Initial Areas of Inquiry for 30(b)(6) designees, so that we may timely raise and resolve the issue with Magistrate Bowler, if need be.

Moreover, Aventis has never agreed to withdraw its previously served subpoenas. Aventis stands by its assertion that it has not, and will not, waive its right to seek additional productions and/or designees pursuant to its previously served subpoenas upon NHIC.

4.  **INDICES**

On March 31, you produced an index for 121 boxes identified by the "Depart Id" of 1113003. Please confirm that this is the index that corresponds to BCBSMA cost center 9132.

This six-page index appears to be but a small fraction of a more than 300 page index originally generated on August 2, 2002 – indicating that pre-existing indices for the other BCBSMA cost centers transferred to NHIC are readily available. On Tuesday, April 4, 2006 we requested indices for BCBSMA cost centers 5405, 5420, 5750, 5900, 9139, 9400, and 9430. On Friday, April 7, 2006, NHIC requested additional information concerning the identification of these cost centers, which we provided yesterday to your associate Ben Wattenmaker. Please immediately advise us as to whether NHIC will produce these indices within the next three days.

5.  **ROLLING PRODUCTION TO BEGIN ON APRIL 12, 2006**

Aventis has requested that NHIC begin its document production by making the following 19 boxes (as identified in the Iron Mountain index of August 2, 2002 for Dept. Id. 1113003, pp. 316-321 and as referred to by their "customer box numbers") available for inspection and copying at NHIC's place of business in Hingham, Massachusetts:

| | | |
|---|---|---|
| 28772783 | 28773565 | 28773580 |
| 28772835 | 28773566 | 28773930 |
| 28773558 | 28773568 | 28773931 |
| 28773560 | 28773569 | 28773933 |
| 28773562 | 28773576 | 28773939 |
| 28773563 | 28773577 | |
| 28773564 | 28773579 | |



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Gary S. Starr, Esq.
April 11, 2006
Page 4

Your associate, Ben Wattenmaker, has advised us that NHIC will retrieve and begin reviewing these documents on Tuesday, April 11, 2006, and that they will be made available to us on a rolling basis beginning at 10:00 a.m., Wednesday, April 12, 2006. Aventis has agreed to reimburse NHIC at the rate of $80 per hour up to a pre-established limit of $2,500 for paralegal time (including costs) associated with its review of these documents. Any fees incurred in excess of this $2,500 limit will need our written pre-authorization. Additionally, while we do not believe that it will be necessary, we are also willing to reimburse NHIC at the rate of $200 per hour up to a pre-established limit of $1,000 for attorney time, to the extent that attorney time is necessary. Any fees incurred in excess of this $1,000 limit will need our written pre-authorization.

We expect NHIC to produce a privilege log for any documents withheld from the requested production identifying all of the following: (a) the date the document bears or the date it was prepared; (b) the author(s) of the document; (c) the recipient(s) and/or addressee(s) of the documents; (d) the general subject matter of the particular portion of the document for which you assert a claim of privilege; and (e) the factual and legal basis for your claim of privilege. We further expect NHIC to produce redacted versions of the documents to which a claim of privilege is asserted for anything less than the entire contents thereof.

Thank you for your continued cooperation regarding all of the above-referenced issues.

Yours sincerely,

Michael DeMarco

MDM/AEB/gmf
cc: James P. Muehlberger, Esq.
   Nicholas P. Mizell, Esq.
   Michael D. Ricciuti, Esq.
   Aimée E. Bierman, Esq.
   Leslie M. Stafford, Esq.
   Andy J. Mao, Esq.
   Benjamin M. Wattenmaker, Esq.