# EXHIBIT A

(b) "unlimited farecard" means a farecard that is time-based, magnetically encoded and which permits entrance an unlimited number of times into facilities and conveyances for a specified period of time; and

(c) "doctored farecard" means a farecard that has been bent or manipulated or altered so as to facilitate a person's access to transportation services without paying the lawful charge. Unauthorized sale of transportation service is a class B misdemeanor.

§ 2. This act shall take effect on the ninetieth day after it shall have become a law provided, however, that the metropolitan transportation authority, New York city transit authority and any subsidiary or affiliate selling farecards, including but not limited to unlimited farecards, shall promulgate and publish rules and regulations, which may be amended from time to time, providing additional public notice of the manner of sales that are prohibited by this act, and of the exemptions to the prohibitions in this act, and such initial rules and regulations shall be promulgated and published on or before such effective date.

*End of Part T*

§ 2. Severability clause. If any clause, sentence, paragraph, subdivision, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, subdivision, section or part thereof directly involved in the controversy in which such judgment shall have been rendered. It is hereby declared to be the intent of the legislature that this act would have been enacted even if such invalid provisions had not been included herein.

§ 3. This act shall take effect immediately provided, however, that the applicable effective date of Parts A through T of this act shall be as specifically set forth in the last section of such Parts.

---

## BUDGETS—HEALTH AND MENTAL HEALTH

### CHAPTER 58

S. 3668, A. 6842

Approved April 12, 2005, Parts A through J effective as specifically provided in the last section of each Part

AN ACT to amend the public health law, in relation to the early intervention service; to amend the tax law, in relation to the program for elderly pharmaceutical insurance coverage; to amend the elder law, in relation to Medicare part d prescription drug coverage; to amend chapter 62 of the laws of 2003, amending the public health law relating to allowing for the use of funds of the office of professional medical conduct for activities of the patient health information and quality improvement act of 2000, in relation to the effectiveness of such provisions (Part A); to amend the New York Health Care Reform Act of 1996 and the public health law, in relation to extending certain provisions relating thereto; to amend the New York Health Care Reform Act of 2000, in relation to extending the effectiveness of provisions thereof; to amend the public health law, in relation to extending the distribution of pool allocations and graduate medical education; to amend chapter 2 of the laws of 1998 amending the public health law and other laws relating to expanding the child health insurance plan, in relation to extending the effectiveness of certain provisions thereof; to amend chapter 703 of the laws of 1988 relating to enacting the expanded health care coverage act of nineteen hundred eighty-eight and amending the insurance law and other laws relating to expanded health care and catastrophic health care coverage, in relation to extending certain provisions thereof; to amend chapter 62 of the laws of 2003 amending the general business law and other laws relating to enacting major components necessary to implement the state fiscal plan for the 2003–2004 state fiscal year, in relation to extending certain provisions thereof; to amend the public health law, in relation to continuing the priority restoration adjustment; to amend chapter 731 of the laws of 1993 amending the public health law and other laws relating to reimbursement, delivery and capital costs of ambulatory health care services and inpatient hospital services, in relation to extending the

14. The amendments to section 4403–f of the public health law made by sections eighty-three and eighty-four of this act shall not affect the repeal of such section and shall be deemed to be repealed therewith.

*End of Part B*

**PART C**

§ 1. (a) Notwithstanding the provisions of section 368–a of the social services law, or any other provision of law, the department of health shall provide reimbursement for expenditures made by or on behalf of social services districts for medical assistance for needy persons, and the administration thereof, in accordance with the provisions of this section; provided, however, that this section shall not apply to amounts expended for health care services under section 369–ee of the social services law, which amounts shall be reimbursed in accordance with paragraph (t) of subdivision 1 of section 368–a of such law and shall be excluded from all calculations made pursuant to this section.

(b) Commencing with the period April 1, 2005 though March 31, 2006, a social services district's yearly net share of medical assistance expenditures shall be calculated in relation to a reimbursement base year which, for purposes of this section, is defined as January 1, 2005 through December 31, 2005. The final base year expenditure calculation for each social services district shall be made by the commissioner of health, and approved by the director of the division of the budget, no later than June 30, 2006. Such calculations shall be based on actual expenditures made by or on behalf of social services districts, and revenues received by social services districts, during the base year and shall be made without regard to expenditures made, and revenues received, outside the base year that are related to services provided during, or prior to, the base year. Such base year calculations shall be based on the social services district medical assistance shares provisions in effect on January 1, 2005.

(c) Commencing with the calendar year beginning January 1, 2006, calendar year social services district medical assistance expenditure amounts for each social services district shall be calculated by multiplying the results of the calculations performed pursuant to paragraph (b) of this section by a non-compounded trend factor, as follows:

(i) 2006 (January 1, 2006 through December 31, 2006): 3.5%;

(ii) 2007 (January 1, 2007 through December 31, 2007): 6.75% (3.25% plus the prior year's 3.5%);

(iii) 2008 (January 1, 2008 through December 31, 2008): 9.75% (3% plus the prior year's 6.75%);

(iv) 2009 (January 1, 2009 through December 31, 2009), and each succeeding calendar year: prior year's trend factor percentage plus 3%.

(d) The base year expenditure amounts calculated pursuant to paragraph (b) of this section and the calendar year social services district expenditure amounts calculated pursuant to paragraph (c) of this section shall be converted into state fiscal year social services district expenditure cap amounts for each social services district such that each such state fiscal year amount is proportional to the portions of the two calendar years within each fiscal year, as follows:

(i) fiscal year 2005–2006 (April 1, 2005 through March 31, 2006): 75% of the base year amount plus 25% of the 2006 calendar year amount;

(ii) fiscal year 2006–2007 (April 1, 2006 through March 31, 2007): 75% of the 2006 calendar amount plus 25% of the 2007 calendar year amount;

(iii) each succeeding fiscal year: 75% of the first calendar year within that fiscal year's amount plus 25% of the second calendar year within that fiscal year's amount.

(e) No later than April 1, 2007, the commissioner of health shall certify the 2006–2007 fiscal year social services district expenditure cap amounts for each social services district calculated pursuant to subparagraph (ii) of paragraph (d) of this section and shall communicate such amounts to the commissioner of taxation and finance.

Additions are indicated by <u>underline</u>; deletions by ~~strikeout~~; vetoes by shading　　　**221**

(f) Subject to paragraph (g) of this section, the state fiscal year social services district expenditure cap amount calculated for each social services district pursuant to paragraph (d) of this section shall be allotted to each district during that fiscal year and paid to the department in equal weekly amounts in a manner to be determined by the commissioner and communicated to such districts and shall represent each district's maximum responsibility for medical assistance expenditures governed by this section. Commencing January 1, 2008, all such amounts shall be deposited into the general fund of the state treasury to the credit of the state purposes account therein.

(g) (i) No allotment pursuant to paragraph (f) of this section shall be applied against a social services district during the period April 1, 2005 through December 31, 2005. Social services district medical assistance shares shall be determined for such period pursuant to shares provisions in effect on January 1, 2005.

(ii) For the period January 1, 2006 through June 30, 2006, the commissioner is authorized to allot against each district an amount based on the commissioner's best estimate of the final base year expenditure calculation required by paragraph (b) of this section. Upon completion of such calculation, the commissioner shall, no later than December 31, 2006, reconcile such estimated allotments with the fiscal year social services district expenditure cap amounts calculated pursuant to subparagraphs (i) and (ii) of paragraph (d) of this section.

(iii) During each state fiscal year subject to the provisions of this section, the commissioner shall maintain an accounting, for each social services district, of the net amounts that would have been expended by, or on behalf of, such district had the social services district medical assistance shares provisions in effect on January 1, 2005 been applied to such district. As soon as practicable after the conclusion of each such fiscal year, but in no event later than six months after the conclusion of each such fiscal year, the commissioner shall reconcile such net amounts with such fiscal year's social services district expenditure cap amount. Such reconciliation shall be based on actual expenditures made by or on behalf of social services districts, and revenues received by social services districts, during such fiscal year and shall be made without regard to expenditures made, and revenues received, outside such fiscal year that are related to services provided during, or prior to, such fiscal year. The commissioner shall pay to each social services district the amount, if any, by which such district's expenditure cap amount exceeds such net amount.

§ 2. (a) Commencing January 1, 2008, at the option of a social services district, such option to be exercised as described in paragraph (b) of this section, and notwithstanding any other provision of law, the department of health shall provide reimbursement for the full amount of expenditures made by such district for medical assistance for needy persons, and the administration thereof, in accordance with the provisions of this section.

(b) Notwithstanding any provisions of state or local law, ordinance or resolution to the contrary:

(i) A social services district shall exercise the option described in this section through the adoption of a resolution by its local legislative body, in the form set forth in subparagraph (ii) of this paragraph, to elect the medical assistance reimbursement methodology set forth in paragraph (a) of this section and to elect the tax intercept methodology set forth in subdivision (f) of section 1261 of the tax law or subdivision (g) of section 1261 and subdivision (h) of section 1313 of the tax law, as applicable. A social services district, acting through its local legislative body, is hereby authorized to adopt such a resolution. Such a resolution shall be effective only if it is adopted exactly as set forth in subparagraph (ii) of this paragraph no later than September 30, 2007, and a certified copy of such resolution is mailed to the commissioner of health by certified mail by such date. The commissioner of health shall, no later than October 31, 2007, certify to the commissioner of taxation and finance a list of those social services districts which have elected the option described in this section. A social services district shall have no authority to rescind the exercise of the option described in this section.

(ii) Form of resolution.

Be it enacted by the (county or city) of (insert locality's name) as follows:

§ one. The (county or city) of (insert locality's name) hereby elects the medical assistance reimbursement option and revenue intercept for Medicaid purposes described in section 2 of chapter (fill in chapter number) of the laws of 2005.

§ 2. This resolution shall take effect immediately.

§ 3. The commissioner of health shall examine social services district expenditures during calendar year 2005 for the purpose of assuring that local administrative or other actions were not taken for the purpose of artificially diminishing medical assistance expenditures during the base year established under paragraph (b) of section one of this act. The commissioner shall examine patterns of such expenditures that appear to be atypical when compared with historical expenditure patterns and trends within the district. If the commissioner determines that such actions were taken, the commissioner is authorized to adjust the base year medical assistance calculation in the amount necessary to account for the impact of such actions.

§ 4. Notwithstanding the provisions of sections one and two of this act, the director of the division of the budget may, at his or her sole discretion, decrease a fiscal year social services district expenditure cap amount calculated pursuant to paragraph (d) of section one of this act or a tax revenue intercept amount calculated pursuant to subdivision (f) or (g) of section 1261 of the tax law to account for any increases in the New York state federal medical assistance percentage amount established pursuant to the federal social security act.

§ 5. Notwithstanding the provisions of any law to the contrary, the commissioner of health is authorized to approve social services district demonstration programs for the purposes of demonstrating innovative methods of improving the delivery of quality health care services in a cost effective manner. The commissioner should evaluate the results of any such programs, including any savings, resulting therefrom. Any such savings, after certification by the director of the division of the budget, shall be shared equally with the applicable social services district in a manner to be determined jointly by the commissioner of health and the director of the division of the budget.

§ 6. Local district accountability in medical assistance administration. 1. The commissioner of health shall establish requirements and guidelines to help ensure that, in the context of the state's assumption of local Medicaid expenditure growth, local districts exercise due diligence with respect to their statutory and regulatory functions in the administration, supervision and operation of the medical assistance program in their locality.

2. Such requirements and guidelines shall include but not be limited to the obligation of local districts in conjunction with the commissioner of health to regularly monitor enrollment, utilization, provider service and expenditure patterns, including patterns suggestive of fraud and abuse.

(a) If, pursuant to such monitoring, a local district detects a pattern or patterns which the district believes may require investigation, including a pattern or patterns of fraud and abuse, the district shall promptly notify the commissioner of health and consult with such commissioner on the appropriate action, and shall refer suspected instances or patterns of fraud and abuse to the attorney general and other appropriate state authorities.

(b) If, pursuant to such monitoring, the commissioner of health finds that a pattern or patterns emerge which suggests that a local district may not be in compliance with the requirements or guidelines for due diligence, including fraud and abuse, then such commissioner shall promptly notify such district of such finding. Upon such notice, the district shall examine such pattern or patterns and report the results of such examination to such commissioner.

3. The commissioner of health shall review with the district the report of its examination and shall take such further steps as may be warranted and permitted under this act, including but not limited to:

(a) the provision of technical assistance to the district to assist the district in achieving compliance;

(b) requiring a plan of action by the district to achieve compliance; and/or

(c) imposing a penalty upon such district in accordance with subdivision four of this section.

4. If the commissioner of health finds that a district has either substantially failed to demonstrate due diligence, including due diligence with respect to the identification and reporting of fraud and abuse, according to the prescribed requirements and guidelines or continues to fail to comply with such requirements then such commissioner may impose such sanctions and penalties as are permitted under the public health law and the social services law.

5. Any action under this section shall be an action that is otherwise authorized by a provision of the public health law, the social services law or this act.

§ 7. Section 1261 of the tax law is amended by adding two new subdivisions (f) and (g) to read as follows:

(f) Notwithstanding any provision of state or local law, ordinance or resolution to the contrary, if the commissioner of health timely certifies to the commissioner that a county which imposes sales and compensating use taxes pursuant to the authority of section twelve hundred ten, twelve hundred ten-A, twelve hundred ten-B or twelve hundred ten-C of this article properly exercised its option by September thirtieth, two thousand seven, pursuant to section two of the chapter of the laws of two thousand five which added this subdivision, that such county be reimbursed for medical assistance expenditures as provided in such section two of such chapter, then the commissioner shall calculate the Medicaid amount of each such county. The amount due each month to each such county provided for in subdivision (e) of this section shall be reduced by the monthly Medicaid amount; and such monthly Medicaid amount of each such county shall instead be paid into the general fund of the state treasury to the credit of the state purposes account therein. The calculation of each such county's Medicaid amount and monthly Medicaid amounts and the procedures governing the payment of such amounts shall be as follows:

(1) The commissioner of health shall furnish the commissioner with the amount of every county's "two thousand six-two thousand seven fiscal year social services district expenditure cap amount," as provided in paragraph (e) of section one of a chapter of the laws of two thousand five which added this subdivision, as soon as practicable but no later than April first, two thousand seven.

(2) The commissioner shall calculate the "Medicaid factor" for every county as follows and shall notify each county's chief fiscal officer of the results of such calculation by April thirtieth, two thousand seven, to help each county determine whether to exercise such option:

(A) for a county in which no city exercises any prior right to impose sales or compensating use taxes authorized by section twelve hundred ten of this article, first, divide the total amount of sales and compensating use tax distributions to such county during state fiscal year two thousand six-two thousand seven by the county's general rate of such taxes during such period, and then divide the county's "two thousand six-two thousand seven fiscal year social services district expenditure cap amount" by the quotient of the first division;

(B) for a county in which one or more cities exercise any prior right to impose sales or compensating use taxes authorized by section twelve hundred ten of this article and the combined rate of the county's and city's taxes in each such city equals the general rate of the county's taxes on similar transactions in the area of the county outside such city or cities, first, add the total amounts of sales and compensating use tax distributions to such county and to each such city during state fiscal year two thousand six-two thousand seven and divide such sum by the county's general rate of such taxes during such period, and then divide the county's "two thousand six-two thousand seven fiscal year social services district expenditure cap amount" by the quotient of the first division; and

(C) for a county in which one or more cities exercise any prior right to impose sales or compensating use taxes authorized by section twelve hundred ten of this article and the combined rate of the county's and city's taxes in any such city does not equal the general rate of the county's taxes on similar transactions in the area of the county outside such city or cities:

(i) for each such city, add the total amount of sales and compensating use tax distributions to such city during state fiscal year two thousand six-two thousand seven and divide such sum by the city's effective general rate of such taxes during such period, then multiply such