# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO: ) ) | Judge Patti B. Saris |
| *The City of New York v. Abbott Labs., et al.*<br>S.D.N.Y. Case No. 04-CV-06054<br>*County of Albany v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0425<br>*County of Allegany v. Abbott Labs., et al.*<br>W.D.N.Y. Case No. 05-CV-0236<br>*County of Broome v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-00456<br>*County of Cattaraugus v. Abbott Labs., et al.*<br>W.D.N.Y. Case No. 05-CV-0256<br>*County of Cayuga v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0423<br>*County of Chautauqua v. Abbott Labs., et al.*<br>W.D.N.Y. Case No. 05-CV-0214<br>*County of Chenango v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0354<br>*County of Fulton v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0519<br>*County of Genesee v. Abbott Labs., et al.*<br>W.D.N.Y. Case No. 05-CV-00267<br>*County of Greene v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0474<br>*County of Herkimer v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-00415<br>*County of Jefferson v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0715<br>*County of Madison v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0714<br>*County of Monroe v. Abbott Labs., et al.*<br>W.D.N.Y. Case No. 05-CV-6148<br>*County of Nassau v. Abbott Labs, et al.*<br>E.D.N.Y. Case No. 05-CV-10179<br>*County of Niagara v. Abbott Labs., et al.*<br>W.D.N.Y. Case No. 05-CV-6296<br>*County of Oneida v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0489<br>*County of Onondaga v. Abbott Labs., et al.*<br>N.D.N.Y. Case No. 05-CV-0088<br>*County of Putnam v. Abbott Labs., et al.* | |

| | |
|---|---|
| S.D.N.Y. Case No. 05-CV-4748 | ) |
| *County of Rensselaer v. Abbott Labs., et al.* | ) |
| N.D.N.Y. Case No. 05-CV-0422 | ) |
| *County of Rockland v. Abbott Labs., et al.* | ) |
| S.D.N.Y. Case No. 03-CV-7055 | ) |
| *County of St. Lawrence v. Abbott Labs., et al.* | ) |
| N.D.N.Y. Case No. 05-CV-0479 | ) |
| *County of Saratoga v. Abbott Labs., et al.* | ) |
| N.D.N.Y. Case No. 05-CV-0478 | ) |
| *County of Steuben v. Abbott Labs., et al.* | ) |
| W.D.N.Y. Case No. 05-CV-6223 | ) |
| *County of Suffolk v. Abbott Labs., et al.* | ) |
| E.D.N.Y. Case No. 01-CV-12257 | ) |
| *County of Tompkins v. Abbott Labs., et al.* | ) |
| N.D.N.Y. Case No. 05-CV-0397 | ) |
| *County of Warrren v. Abbott Labs., et al.* | ) |
| N.D.N.Y. Case No. 05-CV-0468 | ) |
| *County of Washington v. Abbott Labs., et al.* | ) |
| N.D.N.Y. Case No. 05-CV-0408 | ) |
| *County of Wayne v. Abbott Labs., et al.* | ) |
| W.D.N.Y. Case No. 05-CV-6138 | ) |
| *County of Westchester v. Abbott Labs., et al.* | ) |
| S.D.N.Y. Case No. 03-CV-6178 | ) |
| *County of Yates v. Abbott Labs., et al.* | ) |
| W.D.N.Y. Case No. 05-CV-06172 | ) |
| | ) |

**DEFENDANT AMGEN INC.'S INDIVIDUAL REPLY
IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED COMPLAINT OF
PLAINTIFFS NEW YORK CITY AND THE NEW YORK COUNTIES OTHER THAN
NASSAU AND THE NASSAU COUNTY SECOND AMENDED COMPLAINT**

Plaintiffs' opposition to Amgen Inc.'s ("Amgen") Motion to Dismiss does nothing to salvage the Consolidated New York City and New York County Complaint (the "Consolidated Compl.") and the Second Amended Complaint of Nassau County (the "Nassau Compl.") (collectively, the "Complaints") as to Amgen.[1] Indeed, the opposition serves only to reinforce the fact that Amgen should be dismissed with prejudice from these cases. The Complaints fail to plead sufficient facts as to Amgen to satisfy Rule 9(b). Moreover, notwithstanding plaintiffs' half-hearted efforts to demonstrate that they have AWP-related claims for physician-administered drugs, it is clear that under New York's Medicaid reimbursement scheme, claims pertaining to those drugs should be dismissed from this case.

Although plaintiffs contend they have satisfied their obligations under Rule 9(b) and this Court's prior rulings, they have not. Plaintiffs merely assert conclusory allegations without any apparent basis in fact. For instance, plaintiffs argue that they have adequately pled the basis for their spread calculations for Amgen's products by relying on "actual market prices" obtained from pharmacies participating in the "McKesson/Servall" program.[2] However, while the Consolidated Complaint alleges that "Exhibit B-4 shows examples of the available prices" for Amgen's drugs, it does not provide a *single example* of pricing for *any* Amgen product. Consolidated Compl. ¶ 225, Exh. B[3]. The same is true with the Nassau Complaint. Nassau Compl. ¶ 211, Exh. A. And, although plaintiffs make references to supposed "spreads" for

---

[1] Amgen has joined in and incorporates by reference Defendants' Joint Reply in Support of the Motion to Dismiss.

[2] Plaintiffs also argue that these prices were used in *State of California ex rel. Ven-a-Care of the Florida Keys v. Abbott Labs., et al.*, and that the defendants, including Amgen, did not question the legitimacy and source of these prices in their motions to dismiss. Amgen was voluntarily dismissed from that case before it was required to respond to the complaint. Accordingly, it had no opportunity to consider, let alone respond to, arguments or allegations raised in that matter.

[3] Exhibit B to the Consolidated Complaint purports to reference "Amgen (Amgen, Immunex) Drugs & Prices," but that document only makes reference to Immunex drugs. Immunex and Amgen are separate corporations that are separately represented in this case.

1

Amgen products in the body of the Complaints themselves, they never explain how they came up with these so-called "actual available market prices" upon which these spreads are calculated.[4]

As this Court has held, Rule 9(b) requires plaintiffs to provide the "basis for calculating a spread between the published AWP and the actual average price at which the drug is sold by wholesalers." *See In re Pharmaceutical Average Wholesale Price Litigation,* Memorandum and Order dated April 8, 2005, MDL No. 145 (D. Mass) (*"Suffolk III"*). Yet, with no explanation for their supposed "market" prices for Amgen products, there can be no defensible basis for the alleged spreads on Amgen's products and, consequently, plaintiffs' Complaints necessarily fail to comply with the minimal requirements of Rule 9(b).

Plaintiffs concede that, after June 9, 1994, New York reimbursed physician-administered drugs based on "actual cost." Amgen-Specific Opposition at 5; *see* N.Y. Soc. Serv. L. § 367-a(9)(a) (1994 amendments). They nevertheless argue that they should be permitted to proceed with their fraud-based claims relating to physician-administered drugs over a 15 year period because "there is no record before the Court that can be used to determine which of Amgen's PADs are also self-administered and therefore reimbursed based on fraudulent AWPs." This argument completely misses the point. Amgen seeks an order dismissing claims relating to physician-administered drug reimbursements. It does not ask the Court to parse through Amgen's drugs and determine if they are solely physician-administered. Rather, a simple order dismissing all claims relating to physician-administered drug reimbursement will serve to

---

[4] Plaintiffs assert that they have adequately provided "fraudulent" AWPs (and "spreads") for all Amgen products. Plaintiffs Opp. at 1, 3 (emphasis added). Again, neither the Complaints nor the exhibits support this claim. The Complaints refer to seven Amgen products but allege spreads for only three of them—Aranesp, Neulasta, and Neupogen. Consolidated Compl. ¶¶ 230 -232, 234-235; Nassau Compl. ¶ 232-233. Of these three, plaintiffs are only seeking relief as to Aranesp and Neupogen. Consolidated Compl. ¶ 223, Exh. A; Nassau Compl. ¶ 210, Exh. B. Plaintiffs do not allege spreads for Amgen's other products—Epogen, Infergen, Kineret, and Enbrel. Accordingly, to the extent Plaintiffs are seeking relief relating to these drugs, these claims should be dismissed.

significantly narrow the case against Amgen (and others) and limit the need to engage in costly and wasteful discovery as to physician-administered drug reimbursements.

The fact that physician-administered drugs are alleged to have been reimbursed based on AWP before June 1994 – setting aside such obvious problems as limitations – does not prevent the entry of an order dismissing claims seeking damages for physician-administered drug reimbursements after that date. Again, dismissal of claims relating to drug reimbursements that post-date June 1994 will significantly narrow the case against Amgen and reduce the burden and expense of discovery. Not only will it limit the relevant timeframe for discovery, it will eliminate several of Amgen's physician-administered products completely because they did not come to market until years later.[5]

## CONCLUSION

For the reasons set forth above and in Amgen's initial memorandum in support of its motion to dismiss, Amgen respectfully requests that as to it, the Complaints be dismissed with prejudice.[6]

Respectfully submitted,

/s/ Douglas S. Brooks
Frank A. Libby, Jr.
Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street, 8th Floor
Boston, Massachusetts 02110
Telephone: (617) 338-9300
Facsimile: (617) 338-9911

---

[5] Plaintiffs also make reference to a settlement between the New York State and TAP, which they allege "calls into question" whether physician-administered drugs are reimbursed based on "actual cost" or AWP. Obviously, the settlement is not binding on Amgen. More importantly, its terms cannot overcome plaintiffs' concession that physician-administered drugs have been reimbursed by New York at actual cost for over a decade.

[6] Plaintiffs conclude by stating that Amgen does not dispute that plaintiffs have stated claims for unjust enrichment and for violation of 18 N.Y.C.R.R. §515.2(b)(4) & (5). This statement is flat wrong. Amgen has joined in the joint motion to dismiss, which seeks a dismissal of both these claims.

3

                                        Joseph H. Young  
                                        Steven F. Barley  
                                        Hogan & Hartson L.L.P.  
                                        111 S. Calvert St., Suite 1600  
                                        Baltimore, Maryland  21202  
                                        Telephone:  (410) 659-2700  
                                        Facsimile:  (410) 539-6981

Dated: May 11, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May 2006, a true and correct copy of the foregoing document was served upon all counsel of record via electronic service pursuant to CMO No. 2 by causing a copy to be sent to LexisNexis File & Serve for posting and notification.

/s/ Jennifer A. Walker
Jennifer A. Walker