# ADDENDUM

| STATE OF WISCONSIN | CIRCUIT COURT BRANCH 7 | DANE COUNTY |
|---|---|---|

STATE OF WISCONSIN,

        Plaintiff,

v.

        Case No. 04-CV-1709

AMGEN INC., et. al.,

        Defendants.

## *PARTIAL* DECISION AND ORDER

### EXPLANATION

*The unusual step of issuing different parts of this Decision at different times is being taken for two reasons:*

1. *In recognition that composing and issuing a decision addressing ALL the many aspects of Defendants' motion to dismiss is taking an inordinately long time, and*

2. *Substantial re-pleading is being Ordered in the first sections of this Decision. That amending process can be undertaken while the balance of the motion is being addressed.*

### BACKGROUND[1]

Plaintiff, the State of Wisconsin (State), is suing thirty-seven manufacturers of prescription drugs. The claim is that these companies took "advantage of the enormously complicated and non-transparent market for prescription drugs to engage in an unlawful scheme to cause Wisconsin and its

---

[1] This background section will form the basis for future rulings and will not be repeated.

RECEIVED
APR 0 4 2006

citizens and payers to pay inflated prices for prescription drugs." <u>First Amended Complaint</u>, ¶ 1.

According to the Amended Complaint, the prescription drug market is quite complex, difficult to understand, and somewhat unusual. First, the market itself is composed of a large number of products. The market is allegedly made up of over 65,000 National Drug Codes - a separate code for each quantity of each drug manufactured by each manufacturer. Second, in the prescription drug market the entity that decides to purchase the product and the entity that pays for the product are often separate. Allegedly, "providers" such as physicians, hospitals and pharmacies initially purchase drugs from manufacturers for resale to patients. "Payers," private insurance companies, self-insured entities and government entities, pay the "providers" for the drugs. The "providers," however, in the prescription drug case function not only as middlemen or resellers, but also as the decision-makers regarding which particular drugs should be purchased by the patient. This dual role played by "providers" creates, Plaintiff alleges, the opportunity for a "spread." A "spread" is created when the "provider" is able to sell a drug to a "payer" for a price higher than the "provider" paid to the manufacturer. Third, Plaintiff alleges that the entire system, including pricing information, is in a shrouded in secrecy enforced by contractual agreement and supported by mutual self-interest.

Therefore, the State claims, it is difficult to gather accurate pricing information for the prescription drug market. For this reason, in determining

reimbursement, the State allegedly relies heavily on information from Defendants themselves. Among the pricing information available from Defendants are prices known as Average Wholesale Price (AWP) and Wholesale Acquisition Cost (WAC), both of which are prices disseminated by the Defendants to the public via publication in certain medical compendia. Far from representing the actual price paid by an average provider, however, virtually every reported AWP is an inflated – some grossly - number which Defendants have used simply as a starting point from which to negotiate "spreads." They have continued to report such AWPs, Plaintiff alleges, even though they are well aware that Wisconsin's drug reimbursement programs rely almost entirely on the reported AWPs. Similarly, Defendants have allegedly represented that WACs were wholesaler "break even" prices, but have used WACs as prediscount prices.

Furthermore, Defendants have allegedly effectively concealed the existence and extent of the price misreporting via various schemes. First, drug manufacturers allegedly purport to sell drugs to "providers" at a stated price, e.g. WAC, but then make use of "charge backs," free drugs and/or phony grants to arrive at a lower actual acquisition cost. Second, agreements between Defendants and "providers" allegedly often contain contractual provisions requiring secrecy. Finally, Defendants allegedly charge different prices to different sorts of "providers," allegedly further concealing the actual prices.

3

The inaccuracy of the published prices and Defendants' efforts to keep the fact and extent of the misreporting secret have, Plaintiff alleges, resulted in injury to the State and its citizens. The State in funding its portion of the Medicaid program expects to spend approximately $610 million on pharmaceuticals in fiscal year 2004-2005. Wisconsin citizens eligible for and participating in Medicare Part B make co-payments and premium payments to secure certain pharmaceuticals. Each has allegedly relied on Defendants' reported prices, particularly AWPs, and has, thus, overpaid as a result of Defendants' overstated reported prices.

In addition, private "payer" organizations in Wisconsin have allegedly been harmed by Defendants' dealings with Pharmacy Benefit Managers (PBMs). PBMs are organizations which allegedly gather together information regarding cost, availability and comparability or many drugs, and offer to "payers" their services in negotiating lower drug prices. By the late 1990's, four PBMs allegedly controlled approximately 70% of what Plaintiff terms the "reimbursement market." Defendants have allegedly paid fees and rebates to these four major PBMs, some of which fees and rebates have been kept secret from "payer" clients and some of which rebates are based on AWPs. These fees and rebates, Plaintiff alleges, have created an incentive for PBMs to list pharmaceuticals with inflated AWPs on their formularies contrary to their "payer" clients' interests. Thus, Plaintiff claims the State, its citizens and private "payers" doing business in Wisconsin have been harmed by Defendants.

4

Plaintiff lists five Counts in the Amended Complaint. It alleges that Defendants have violated Wis. Stat. §§ 100.18(1), 100.18(10)(b), 133.05, 49.49(4m)(a)(2) and have been unjustly enriched. The State specifically requests injunctive relief, compensatory damages, restitution to the State and various private entities, treble damages for violations of Wis. Stat. § 133.05, forfeitures under several statutes, disgorgement of unlawful profits and its costs in bringing this action.

Defendants have moved to dismiss the Amended Complaint on several grounds. Collectively, the Defendants argue that this Complaint:

1. is insufficient, both under notice pleading and in particular under Wis. Stat. § 802.03(2),

2. does not establish a causal link between the alleged misconduct and the alleged injuries,

3. alleges certain claims which the Attorney General is not empowered to pursue,

4. fails to allege certain required elements for several claims,

5. is barred by the "filed rate" doctrine, and

6. contains claims that are barred by the applicable statutes of limitations.

Additionally, several Defendants have alleged grounds for dismissal that are specific to their situations.[2]

---

[2] There are, additionally, several outstanding motions. The motions for leave to file additional authority (Plaintiff's motions filed November 3 and 8, 2005 and Defendants' motion filed February 3, 2005) are **granted**. The other outstanding motions are considered, as appropriate, below.

5

## STANDARD OF REVIEW

The recent case (July 2005), Doe v. Archdiocese of Milwaukee, 2005 WI 123,

294 Wis. 2d 307, 700 N.W. 2d 180, ¶¶ 19 &29, offers a good summary of how to analyze

a motion to dismiss:

> ... [a] motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." BBB Doe, 211 Wis. 2d 331, 565 N.W. 2d 94.. A reviewing court "accept[s] the facts pled as true for purposes of [its] review, [but is] not required to assume as true legal conclusions pled by the Plaintiffs." Id. Although the court must accept the facts pleaded as true, it cannot add facts in the process of liberally construing the complaint. 3 Jay E. Grenig, *Wisconsin Practice: Civil Procedure* § 206.11 at 304 (West, 3d ed.2003) (hereinafter Grenig, *Civil Procedure* ). Rather, "[i]t is the sufficiency of the facts *alleged* that control[s] the determination of whether a claim for relief" is properly pled. Strid v. Converse, 111 Wis.2d 418, 422-423, 331 N.W.2d 350 (1983) (emphasis added).
>
> The court should not draw unreasonable inferences from the pleadings. Morgan v. Pa. Gen. Ins. Co., 87 Wis.2d 723, 731, 275 N.W.2d 660 (1979). After liberally construing the complaint, a court should dismiss a Plaintiff's claims if it is "quite clear" that there are no conditions under which that Plaintiff could recover. *Id.; see also* Prah v. Maretti, 108 Wis.2d 223, 229, 321 N.W.2d 182 (1982) (both citing Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801-803*, 59 Marq. L.Rev. 1, 54 (1976) (hereinafter Clausen, *The New Wisconsin Rules of Civil Procedure* )). In other words, "A claim should not be dismissed ... unless it appears to a certainty that no relief can be granted under any set of facts that Plaintiff can prove in support of his allegations." Morgan,, 87 Wis.2d at 732, 275 N.W.2d 660.

## DECISION [3]

First, these parties must be made aware that the reams of extra material

submitted and any beyond-the-Complaint "facts" inserted into the briefs will <u>not</u>

be factored into this decision. The facts being examined are solely those set forth

in the First Amended Complaint. Defendants, especially, have attempted to set

forth hundreds of pages of additional facts to be considered in making this

---

[3] At least part of the reason this decision has been so delayed is that the case was removed this past summer, for the second time, to Federal Court. On-going work toward on this decision the motion had to be abandoned, and then started up anew, when time permitted, after the file was returned in November and other decisions issued on cases that had become ready while this case was in Federal Court.

6

ruling. But neither side has provided adequate justification for going beyond the four corners of this Complaint. This boundary is black letter law for addressing a motion to dismiss. *See, e.g.* Wolnak v. Cardiovascular & Thoracic Surgeons of Central Wisconsin, 706 N.W. 2d 667, ¶ 48 (Ct. App. 2005), which cites with approval Heinritz v. Lawrence University, 194 Wis. 2d 606, 614, 535 N.W. 2d 81 (Ct. App. 1995).

While it is true that pursuant to Wis. Stat. § 902.01, a Court may take judicial notice of certain facts, including legislative history, if appropriate, what is being offered here goes far beyond what is generally so noticed. For example, the contents of hefty reports to Congressional committees and sub-committees, testimony before such bodies, news articles, reports to agencies are not proper subjects for judicial notice.[4]

These submissions also go beyond what is helpful to the decision maker. Having to factor in lengthy agency reports and stacks of other information in deciding the sufficiency of the Amended Complaint creates more confusion than it resolves. As a practical matter, for the uninitiated such as this writer, the world described in the Complaint is foreign, complicated, and confusing. Adding more information at this stage of the proceedings only magnifies that reaction, rather than aiding in this decision. It is understandable that the Defendants, especially,

---

[4] See, footnote 6 on p. 16 of Plaintiff's brief.

want this lawsuit resolved in their favor as soon as possible, but human and legal limitations must still be recognized.[5]

Equally problematic is that the submissions do not appear to establish any clear factual conclusions. If they did, both sides would not be trying to present contrary information.[6] It is not even a given that all the facts the parties wish the Court to consider are relevant. This motion is to test the sufficiency of the pleadings in the Complaint; it is not a motion for summary judgment or an exercise to determine which of two competing views of the eventual evidence is more convincing or logical. Such an exercise should not and will not be undertaken at this juncture.

I. THE SUFFICIENCY OF THE PLEADINGS:

    A. **Notice Pleading:**

Despite its length and complexity, this Amended Complaint is indisputabley lacking detail as to the specific actions of individual Defendants. [7] Under Wisconsin's "notice pleading" rules, such outline pleading is not necessarily fatally defective, provided that the parties being sued can figure out the basis of the claims against them. Again, reference is made to the <u>Archdiocese of Milwaukee</u> case, 284 Wis. 2d at 328-329:

> ¶ 35 In 1975 this court adopted new rules of Wisconsin civil procedure. 67 Wis.2d 585 (1975). One of the "keystones of the new procedural system" was <u>Wis. Stat. § 802.02 (1977-78)</u>, which signaled Wisconsin's adoption of "notice pleading."<u>Wilson v. Cont'l Ins. Cos.,</u> 87 Wis.

---

[5] Since it seems almost a certainty that for whatever causes survive this motion to dismiss, summary judgment motions will be filed, I want to be clear that <u>re</u>submission of materials is not necessary or wanted. All that need be added are whatever affidavits required under summary judgment procedure.
[6] See i.e., pp. 3-18 of Plaintiff's brief.
[7] Eleven pages are devoted to the caption and listing of parties.

2d 310, 316, 274 N.W. 2d 679 (1979); Clausen, *The New Wisconsin Rules of Civil Procedure* at 37. Under § 802.02(1)(a), a complaint must simply contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." These claims are to be liberally "construed [so] as to do substantial justice." Wis. Stat. § 802.02(6); Prah, 108 Wis.2d at 229, 321 N.W.2d 182.

¶ 36 However, a complaint cannot be completely devoid of factual allegations. The notice pleading rule, while "intended to eliminate many technical requirements of pleading," nevertheless requires the Plaintiff to set forth "a statement of circumstances, occurrences and events in support of the claim presented." Clausen, *The New Wisconsin Rules of Civil Procedure* at 38-39. For example, "a claim in negligence must state general facts setting forth that the [defendant] had knowledge or should have had knowledge of a potential and unreasonable risk...." Wilson, 87 Wis.2d at 318, 274 N.W.2d 679. "[A] bare conclusion [does] not fulfill[ ] a Plaintiff's duty of stating the elements of a claim in general terms." Id. at 319, 274 N.W.2d 679. In short, we will dismiss a complaint if, "[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court." Id. at 326-27, 274 N.W.2d 679. It is not enough for the Plaintiff to contend that the requisite facts will be "supplied by the discovery process." Id. at 327, 274 N.W.2d 679.

Not surprisingly, the instant challenge does claim that this Amended Complaint requires speculation to be understood. It is true that these pleadings lack the usual contentions that a named-defendant did a discrete act forming the cause of action on a given date. This pleading does a very thorough job of describing the key points of what is repeatedly referred to as "a scheme" which Plaintiff claims was shared by all the Defendants.[8] As far as can be determined, the contention appears to be that "virtually all" of Defendants' drugs had misleading AWPs released for publication by every single defendant since 1992.[9] Given the figure cited in this Complaint of "over 65,000 separate National Drug Codes (NDC)" plus 37 Defendants and a time period of either 3 or 6 years (depending on the applicable statute of limitations), the potential permutations are astronomical.

If indeed the actions for which the Defendants are being sued are as global as described, then the notice being given is that each defendant listed false AWP's for each of its drugs during the times within the statute of limitations.[10] Even though the date of 1992 is given, it appears to be more for

---

[8] "Notably, the State does not allege any form of conspiracy, collusion, or unlawful agreement among the Defendant manufacturers . . . " Defendants' initial brief, p. 2.
[9] Amended complaint, ¶37.
[10] Obviously, Plaintiff will be restricted to whatever period is permitted under the applicable statute of limitations.

9

background than as an effort to hold these Defendants accountable going back that far. The story being told in this Complaint is that of an on-going practice, repeating itself for many years as to "virtually all" the AWPs listed by these manufacturers. The notice to those who must respond to this Complaint is that they are accused of misstating the actual AWP for each and every one of their drugs during a three or six year period.

These drug manufacturers are also alleged to have taken measures to conceal their misrepresentations. The State of Wisconsin claims that it and other entities relied upon these misrepresented prices when paying for drugs manufactured by Defendants. Under the most liberal reading of this Complaint, each of the allegations applies to each of the Defendants. The role of each defendant appears to have been uniform, varying only as to the specific drug and the magnitude of the misrepresentation. The basic claim as to each defendant is the same. For general pleading purposes, these vast allegations are adequate to put Defendants on notice of the claims against them.

### B. Allegations of fraud:

Citing Wis. Stat.§ 802.03(2.), Defendants argue that the Complaint does not adequately identify which drugs are at issue, does not describe what each of them did, does not adequately detail what fraud each has committed, and improperly relies on "group pleading." Plaintiff counters that none of its claims are subject to the requirements of Wis. Stat. § 802.03(2), and that, even if any were, the Complaint is sufficiently particular.

Wis. Stat. § 802.03(2) provides:

> **Fraud, mistake and condition of mind.** In all
> averments of fraud or mistake, the circumstances

> constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

No Wisconsin state appellate case could be found which directly addresses whether § 802.03(2) governs pleadings under Wis. Stat. §100.18. <u>State v. American T.V. of Madison</u>, 146 Wis. 2d 292, 312-313, 430 N.W.2d 709 (1988) contains dicta in Justice Steinmetz's dissent. He declared that only notice pleading is required under § 100.18(9), but that is hardly conclusive.

The State relies heavily on legislative history, pointing to a Judicial Council Committee Note to a 1978 change in the notice pleading statute, § 802.02(1)(a) that states, *inter alia*:

> This modification will allow a pleader in **a consumer protection or anti-trust case**, for example, for example, to plead a pattern of business transactions, occurrences or events leading to a claim of relief rather than having to specifically plead each and every transaction, occurrence or event when the complaint is based on a pattern or course of business conduct involving either a substantial and continuous transactions and events. (Plaintiff's brief, pp. 38-39.)

Again, this language is not determinative of whether § 100.18 claims must be plead with particularity. All consumer protection cases do not involve claims of fraud. The note does not say that the modification it discusses also changes the requirements of § 802.03(2) when fraud is involved.

The purpose of the rule requiring such detail when fraud is claimed is often repeated:

11

> ". . . because the particularity requirement affords notice to a defendant for the purpose of a response. As additional rationale, we agree that our statute is designed to protect Defendants whose reputation could be harmed by lightly made charges of wrongdoing involving moral turpitude, to minimize 'strike suits" and to discourage the filing of suits in the hope of turning up relevant information during discovery."

Quoted in <u>Friends of Kenwood v Green</u>, 239 Wis.2d 78, 87, 619 N.W.2d 271 (Ct. App. 2000), [citations omitted]

There is no logical reason for repudiating this rationale just because the charges of fraud being leveled against these Defendants involve consumer protection. Indeed, because the object of such a claim in a consumer protection case may likely be a business or a company dependent for its success on a positive public perception, the need for particularity in pleading seems at least as compelling as in any other fraud case. Here, Defendants are not overstating the matter when they characterize the causes of action in this complaint as "grounded in fraud." Language synonymous with or highly suggestive of fraud permeates the document. Variations on the word "fraud" appear throughout the complaint; "false" and "phony" are used often, as is "deceptive." The word "scheme" when presented in this context certainly has a nefarious connotation. Even the title of § 100.18, one of the provisions under which Plaintiff is suing, is entitled "Fraudulent representations," while Plaintiff's claim in Court IV comes under § 49.49(4m)(2)(a) "Medical Assistance Fraud." There is every reason to find that Wis. Stat. § 802. 03(2) applies to these allegations.

As quoted on p. 87 of <u>Kenwood, supra</u>, "Particularity means the 'who, what, when, and how.' [citation omitted.] . . . the rule 'requires specification of

12

the time, place, and content of an alleged false misrepresentation.'" While Plaintiff has done a masterful job of describing a "dauntingly complex" drug sale and reimbursement system, it has failed (other than in a few examples) to set forth the activities of each defendant and to put everyone on notice for what activities, occurring when and how it wishes to hold each defendant responsible. [11] Probably for good reason,[12] Plaintiff seems as though it wants to put the burden on each company to come forward with an explanation for each and every AWP listing since 1992. This is not permissible.

Under this complaint, it is not known what Plaintiff considers the threshold for fraud. Would a few cents difference from the AWP and the actual sales price meet that definition? A few dollars? Is the State limiting this case to the drugs mentioned in Exhibits A & B attached to the Complaint or is it including the 65,000 different drugs referenced several times in that pleading?

In order to maintain these causes of action premised on fraud, Plaintiff must re-plead them, giving as many specifics as it can. Each Defendant is entitled to know, with as much detail as Plaintiff can provide, **which** of its drugs are involved and **what** (name, date) publication of AWP is false, and the **actual** price that should have been published. Discovery has been on-going in this case and in national cases, so much of this information should be available. It is difficult to know how long it will take Plaintiff to redraft those claims involving

---

[11] ¶ 51 of the complaint takes the vagueness of this pleading to dangerous level by alleging wrong-doing by "some Defendants" without naming any.
[12] See, ¶¶ 46 & 55 of the complaint.

13

fraud. Subject to the right to obtain an extension, the State is given 60 (sixty) days to re-plead. Failure to do so within the specified or extended time will result in dismissal of those counts grounded in fraud (I, II, and IV).[13]

## II. CAUSATION

Contending that Plaintiff cannot establish belief and reliance on Defendants' AWPs and that the Complaint fails to "affirmatively" allege that anyone "actually "relied on the AWPs as the true price, all Defendants argue that the entire complaint should be dismissed. Since there is no such reliance, Defendants assert, "there is no cognizable link between the alleged misconduct ... and any claimed injury." Joint Memorandum, p. 18.

First, the argument relies on the substantial documentary submissions of Defendants. As explained earlier in this decision, Defendants have not provided a sufficient basis supporting consideration of such materials at this stage of the proceedings. Second, Defendants have provided no substantial argument or any authority for their broad assertion that the Court can dismiss all of Plaintiff's claims based simply on an arguable lack of facts showing this level of reliance. Finally, it is far from clear that the documents selected by Defendants indisputably establish that Plaintiff in no way relied upon Defendants' AWPs. However, the basis for any claim of reliance included in Counts I, II, and IV

---

[13] Counts I and II allege violation of Wis. Stat. § 100.18., and Count IV alleges violation of Wis. Stat. § 49.49(4m)(a)(2).

14

should, for the same reasons articulated in the previous section, be part of the more specific pleadings.

## CONCLUSION and ORDER

For the reasons stated above, Plaintiff is to amend its Amended Complaint by **June 5, 2006** to comply with the directive contained in this Partial Decision. In the interim, work will continue on the balance of the contentions in Defendants' motion to dismiss.

Dated this 3rd day of April 2006 at Madison, Wisconsin.

BY THE COURT:

_____
Moria Krueger, Judge. *
Case No. 04 CV 1709

*Recognition is given to staff attorney, Eric Mueller, for his work on this decision.

CC:     (To be distributed electronically by each attorney to the other lawyers on the same side)
AAG C. Hirsch
Atty. B. Butler