**Attachment A to CIA between AstraZeneca and Office of Inspector General**

## CERTIFICATION

In accordance with the Corporate Integrity Agreement ("CIA") entered between AstraZeneca Pharmaceuticals LP and AstraZeneca LP (collectively "AstraZeneca") and the OIG, the undersigned hereby certifies that the attached Average Sale Price information has been provided to First DataBank Inc. (and/or other price reporting entity as specified in the CIA); to the State Medicaid programs of those States which executed settlement agreements with AstraZeneca; to the OIG; and to CMS; and that the average sale price has been calculated in accordance with the methodology described generally in the CIA and more specifically in the attached document.

_____
Name
Title

_____
Date

**Appendix A to CIA between AstraZeneca and Office of Inspector General**

## List of Covered Products

1. Cefotan
2. Elavil Injection *
3. Faslodex
4. Foscavir
5. Merrem
6. Tenormin Injection
7. Xylocaine Injection
8. Zolodex

Following the Effective Date of the CIA, the list of Covered Products for which AstraZeneca is required to report Average Sale Price in accordance with Section III.D of the CIA shall include the above-listed products and all other newly developed injectible products primarily marketed and sold by AstraZeneca to individual medical practitioners/clinics for in-office administration and directly billed by the practitioners/clinics to health care insurers, including Federal health care programs.

* As of February 2003, AstraZeneca no longer makes or sells Elavil Injection. Consequently, AstraZenca may be limited or unable to report Average Sale price for this product in the future.

**Attachment B to CIA between AstraZeneca and Office of Inspector General**

**Audit Workplan for Group Internal Audit (GIA)**

As specified more fully below, AstraZeneca shall direct its Group Internal Audit ("GIA") to perform reviews to assist the company in determining the accuracy of Best Price reported for purposes of the Medicaid Drug Rebate Program ("Medicaid Rebate Review"). AstraZeneca shall also direct its GIA to perform reviews to assist the company in assessing and evaluating its systems, processes, policies and practices related to Sales and Marketing ("Sales and Marketing Review").

The GIA shall perform the Medicaid Rebate Review for one randomly selected quarter of each Reporting Period. The GIA shall perform the Sales and Marketing Review annually for each Reporting Period.

**A. Medicaid Rebate Review**

1.    General Description of Medicaid Rebate Review

AstraZenca's Policies and Procedures (referenced in Section III.B.2 of the CIA) include policies and procedures which the company follows in gathering, calculating and reporting prices for purposes of the Medicaid Drug Rebate Program. The GIA will review a sample of the Best Prices reported to CMS for 50 11-digit NDCs during a randomly selected quarter during the Reporting Period.

2.    Medicaid Rebate Review Methodology

The Medicaid Rebate Review shall consist of two parts as follows:

(a)    Part One – Review of Samples

At the end of each Reporting Period, the GIA shall randomly select one quarter for review. The GIA will then obtain a listing of all 11-digit NDCs for which Best Price was reported during the quarter under review. The GIA will identify the five 11-digit NDCs for which AstraZeneca paid the largest amount (e.g., total dollars) of rebates to the States under the Medicaid Drug Rebate program in the quarter under review. From the listing, the GIA will also randomly select another 45 11-digit NDCs for review.

For each of the 50 11-digit NDCs included in the Medicaid Rebate Review, the GIA will:

(1) select all prices identified in the AstraZeneca Top Contracts Report and all manual price adjustments within AstraZeneca's government pricing system(s) where an actual sale was recorded in the quarter under review at a price <u>lower</u> than the Best Price reported by AstraZeneca for the NDC for the quarter[1]; and

(2) analyze each of the lower prices and determine, based on AstraZeneca's policies and procedures and the Medicaid Drug Rebate Program requirements, if each price was properly excluded from the determination of Best Price.

(b)     Part Two - Additional Investigation

For purposes of additional investigation, an error shall be defined to be any instances in which: 1) contract price terms for the 11-digit NDCs under review which were not appropriately included in or excluded from AstraZeneca's Best Price determination; or 2) the reported Best Price for any 11-digit NDC was incorrectly reported.  If the GIA discovers either type of error, then the GIA shall conduct an additional investigation, as may be necessary, to determine the root cause of the error (*e.g.*, review additional documentation and/or conduct interviews with appropriate personnel to identify the root cause of the error.)

In the event the GIA finds more than one error as defined in the preceding paragraph, the GIA will perform a second Medicaid Rebate Review.  The second Medicaid Rebate Review shall consist of the GIA randomly selecting and reviewing (in accordance with the steps outlined in section A.2.a above) an additional five 11-digit NDCs for which AstraZeneca paid Medicaid rebates in the quarter under review.

3.     IRO Verification Review

The IRO shall conduct a verification review, which shall evaluate at least 15 of the same 11-digit NDCs reviewed by the GIA.  The IRO will independently obtain

---

[1] The review of the AstraZeneca Top Contracts Report and all manual price adjustments will result in a review of all contract prices within AstraZeneca's government pricing system where an actual sale was made at a price lower than the Best Price reported by AstraZeneca for the NDCs for the quarter.

source documentation relating to the 15 11-digit NDCs and will independently conduct the steps outlined contained in section A.2.a above. After the IRO has conducted its verification review and made its independent determinations, it shall: 1) obtain the GIA's findings with regard to each of the 15 11-digit NDCs; 2) compare its own findings to those of the GIA; 3) identify any discrepancies between the two sets of findings; and 4) explain potential reasons for the discrepancies.

If the IRO identifies errors in any of AstraZeneca's findings, the IRO shall conduct a verification review of at least an additional 5 of the 11-digit NDCs reviewed by the GIA. If the IRO identifies any AstraZeneca errors in this additional review, AstraZeneca and the IRO shall notify the OIG to discuss appropriate additional steps to be taken (*e.g.*, additional reviews or a requirement that an IRO, rather than the GIA, conduct all or part of future reviews).

The IRO shall prepare a report based upon its review ("IRO Verification Report"). The IRO Verification Report shall contain, for each NDC reviewed: (i) the IRO's findings; (ii) a detailed description of any discrepancies between the IRO's findings and those of the GIA; and (iii) the IRO's explanation of the possible reasons for the discrepancies. In addition, if the IRO conducted any additional verification review(s) (beyond the initial review of the 15 NDCs), the IRO Verification Report shall contain a detailed description of the results of that review, including the IRO's findings. The IRO Verification Report shall be provided to the OIG.

4.   Medicaid Rebate Review Report

The GIA shall annually prepare a report based upon the Medicaid Rebate Review performed. The report shall include the following general elements and information:

(a)   Review Objective: A clear statement of the objective(s) intended to be achieved by the review;

(b)   Review Protocol: A detailed narrative description of: (i) the sampling unit; (ii) the universe from which the sample was selected; (iii) the procedures performed;

(c)   Sources of Data: A full description of documentation (and/or other information) relied upon by the GIA when performing the Medicaid Rebate Review;

3

(d)   a narrative list of the five 11-digit NDCs with the highest rebates paid by AstraZeneca for the quarter under review and the associated Best Price reported by AstraZeneca to CMS and a narrative list of the 45 randomly selected 11-digit NDCs and the associated Best Price reported by AstraZeneca to CMS;

(e)   for each 11-digit NDC under review, a list of all contract price terms and the corresponding AstraZeneca customer to which a sale was made at a price <u>lower</u> than the Best Price reported to CMS for that quarter;

(f)   for each NDC under review, a description of the steps and the supporting documentation reviewed to determine that each such lower price was appropriately evaluated for purposes of determining the Best Price;

(g)   for each NDC under review, a list of any prices not appropriately included in AstraZeneca's Best Price determination for that quarter;

(h)   a detailed description of any additional investigation undertaken with regard to any prices that were not accurately included or excluded in AstraZeneca's Best Price determination for the quarter under review and the results of any additional investigation or reviews undertaken with respect to any such price; and

(i)   the GIA's recommendations for changes in AstraZeneca's policies and procedures to correct or address any weaknesses or deficiencies uncovered during the review.

## B. Sales and Marketing Review

1.   General Description of Sales and Marketing Review

The Sales and Marketing Review shall be conducted for three of AstraZeneca's Business Centers annually and shall cover all therapy areas handled by the respective Business Center. The Sales and Marketing review shall consist of two parts: (1) interviews with Pharmaceutical Sales Specialists (PSSs), contract sales representatives, District Sales Managers (DSMs) and other supervisory personnel at the Business Center; and (2) a review of a sample of Control Documents, as defined below, completed by personnel at the Business Center in connection with sales and marketing activities.

4

AstraZeneca's Policies and Procedures (referenced in section III.B.2 of the CIA), including its Business Policies (hereafter collectively "AstraZeneca's Policies"), set forth certain requirements relating to control type documents used in connection with the following types of activities (hereafter, collectively "Sales and Marketing Related Activities" or "Activities"):

(a)    provision of Access Tools (*e.g.*, meals, refreshments, other items) to healthcare professionals (HCPs) or others;

(b)    engagement of HCPs, institutions, organizations for contracted services (*e.g.*, consulting, advisory, speaking and other fee-for-service arrangements);

(c)    sponsorship of promotional education programs (*e.g.*, speakers programs, convention/symposia exhibits; case study programs, *etc.*);

(d)    provision of grants (*e.g.*, educational and other grants);

(e)    expenditures for third party advice about reimbursement or claims submissions for Government Reimbursed Products, if any;

(f)    provision of customer assistance programs, if any;

(g)    provision of drug samples; and

(h)    provision of any or all other activities identified in AstraZeneca's Policies and used in connection with Sales and Marketing Activities.

For purposes of this Sales and Marketing Review, "Control Documents" is defined mean all documents associated with the above-referenced Sales and Marketing Related Activities.  For instance, Control Documents include Expense Reports, Purchase Orders, and Vendor Invoices, among others.

2.     Interviews of Personnel from Business Centers

For each Business Center under review, the GIA shall annually interview at least 5% of the PSSs and their corresponding supervisory DSMs, and shall interview at least three contract sales representatives and one supervisory contract DSM associated with the Business Center.  The interviews shall be designed to evaluate the PSSs', the contract sale representatives', and the DSMs' knowledge of and adherence to AstraZeneca's Policies relating to the Sales and Marketing Related

5

Activities and the extent to which the PSSs and contract sale representatives have engaged in various types of Sales and Marketing Related Activities. The 5% of the PSSs interviewed shall be judgmentally selected from among the PSSs assigned to each Business Center in a manner designed to ensure that PSSs from each therapy area, territory and different experience levels associated with the Business Center are selected for interview.

The GIA shall also identify the therapy area in the applicable Business Center with the highest dollar amounts of budgeted expenditures per PSS for Sales and Marketing Related Activities during the Reporting Period. The GIA shall then conduct interviews with an additional number of PSSs from the identified high-expenditure therapy area. The number of additional PSSs to be interviewed from the high-expenditure therapy area shall be equal to at least 50% of the aggregate number of PSSs selected for the initial interviews (as described above) in the Business Center. The contract sales representatives interviewed shall be randomly selected.

3.   GIA Review of Control Documents

For each Reporting Period and for each Business Center, the GIA shall review at least four Expense Reports and other Control Documents, selected from the 12-month period proceeding the review, for each of the PSSs and contract sales representatives selected for interview. At a minimum, GIA shall review 158 Expense Reports annually. In addition, GIA shall review a minimum of 54 non-Expense Report Control Documents associated with the PSSs and contract sales representatives selected for interview. To the extent the GIA cannot identify at least 54 non-Expense Report Control Documents associated with the PSSs and contract sales representatives interviewed, the GIA shall select the 54 non-Expense Report Control Documents for other personnel at the Business Center.

The GIA shall evaluate and review the Control Documents to determine:

(a)   whether the Control Documents were completed in accordance with the requirements set forth in the AstraZeneca's Policies;

(b)   whether the Control Documents reflect that all required written approvals were obtained in accordance with AstraZeneca's Policies; and

(c)   for each Control Document reviewed, whether all supporting documentation (*e.g.*, receipts) and follow-up documentation (*e.g.*, progress and final reports produced in connection with grants) exists in appropriate

6

files in accordance with AstraZeneca's Policies.

Any Control Document that does not satisfy the criteria set forth above shall be considered an exception and shall be noted by the GIA. The GIA will consider a Control Document to have a Material Error if either of the following is identified:

(a)     all the appropriate and required Control Documents do not exist and no corrective action has been taken prior to the GIA review; or

(b)     information or data is omitted from key fields in the Control Documents that prevents the GIA from understanding the nature of the expenditure and/or assessing compliance with AstraZeneca's Policies.

4.     Additional Review of Material Errors Are Discovered

If the GIA finds any Material Errors, it shall conduct an additional review of the expenditures or activities reflected in the Control Documents at issue. The GIA shall perform this additional review in a manner designed to determine the root cause of the Material Errors. For instance the GIA may need to review additional documentation and/or conduct interviews with appropriate personnel to identify the root cause of the Material Error.

5.     IRO Verification Review

The IRO shall conduct a verification review which shall evaluate least 20% of the same Expense Reports and 20% of the non-Expense Report Control Documents reviewed by the GIA. The IRO will independently obtain source documentation relating to the Control Documents under review and will independently conduct the steps outlined in section B.3 above. After the IRO has conducted its verification review and made its independent determinations, it shall: 1) obtain the GIA's findings with regard to each of the Control Documents; 2) compare its own findings to those of the GIA; 3) identify any discrepancies between the two sets of findings; and 4) explain potential reasons for the discrepancies.

If the IRO identifies errors in any of AstraZeneca's findings, the IRO shall conduct a verification review of at least an additional 10% of the Expense Reports and 10% of the non-Expense Report Control Documents reviewed by the GIA. If the IRO identifies any AstraZeneca errors in this additional review, AstraZeneca and the IRO shall notify the OIG to discuss appropriate additional steps to be taken (*e.g.*, additional reviews or a requirement that an IRO, rather than the GIA, conduct all or part of future reviews).

The IRO shall prepare a report based upon its review ("IRO Verification Report").

The IRO Verification Report shall contain, for each Control Document: (i) the IRO's findings; (ii) a detailed description of any discrepancies between the IRO's findings and those of the GIA; and (iii) the IRO's explanation of the possible reasons for the discrepancies. In addition, if the IRO conducted any additional verification review(s) (beyond the 20% initial review), the IRO Verification Report shall contain a detailed description of the results of that review, including the IRO's findings. The IRO Verification Report shall be provided to the OIG.

6.      Sales and Marketing Review Report

The GIA shall annually prepare a report based upon each Sales and Marketing Review performed ("Sales and Marketing Review Report"). Each Sales and Marketing Review Report shall include the following elements/information:

(a)     Review Objectives: A clear statement of the objectives intended to be achieved by the review;

(b)     Review Protocol: A detailed narrative description of: (i) the sampling units; (ii) the universe from which the sample was selected; and (iii) the procedures performed;

(c)     Sources of Data: A full description of the documentation (and/or other information) relied upon by the GIA when performing the Sales and Marketing Review.

(d)     a summary of the interviews with the PSSs, contract sales representatives, and DSMs, including the GIA's assessment of: (i) whether the PSSs, contract sales representatives and DSMs received adequate training relating to the Sales and Marketing Activities; (ii) the frequency with which personnel at the Business Center engaged in each type of Activity; and (iii) a detailed description of instances in which the training appeared inadequate and/or the Business Center personnel failed to follow AstraZeneca's Policies.

(e)     for each sample unit, the GIA shall state its findings and supporting rationale as to whether: a) the Control Document was completed in accordance with all requirements set forth in the AstraZeneca's Policies; b) the Control Document reflects that all written approvals were obtained in accordance with AstraZeneca's Policies; and c) all supporting documentation and follow-up documentation exists in accordance with AstraZeneca's Policies;

(f)     for each sample unit reviewed, the GIA shall identify all exceptions and

Material Errors discovered.  For the exceptions, the GIA shall describe in general terms what the errors were.  The GIA shall describe those situations when corrective action was taken prior to the GIA review, including a description of the circumstances requiring corrective action and the nature of the corrective action;

(g)     if any Material Errors were discovered for any sample unit, the GIA shall describe the Material Error and the additional review procedures it performed, and shall state its findings as to the root cause of the Material Errors; and

(h)     the GIA's recommendations for changes in AstraZeneca's Policies in order to correct or address any weaknesses or deficiencies uncovered during the review.

**Attachment C to CIA between AstraZeneca and Office of Inspector General**

**Independent Review Organization (IRO) Reviews**

As specified more fully below, AstraZeneca shall retain an Independent Review Organization ("IRO") to perform reviews to assist AstraZeneca in assessing and evaluating its systems, processes, policies and practices related to:  1) the determination of Best Price for purposes of the Medicaid Drug Rebate Program ("Medicaid Rebate Systems Review"); 2) the methodology for calculating Average Sale Price ("Average Sale Price Systems Review"); and 3) its sales and marketing activities ("Sales and Marketing Systems Reviews").

If, during the term of the CIA, there are no material changes in AstraZeneca's systems, processes, policies and practices relating to the determination of Best Price, the calculation of Average Sale Price, or its sales and marketing activities, then the IRO shall perform the Systems Reviews listed above to cover the first and fourth Reporting Periods. If AstraZeneca materially changes its systems, processes, policies or practices, then the IRO shall perform the applicable additional Systems Review(s) covering the Reporting Period(s) in which such changes were made in addition to conducting the Systems Reviews for the first and fourth Reporting Periods.

As specified in section III.E of the CIA, for at least the first two years of the CIA, AstraZeneca shall also retain the IRO to conduct the Average Sale Price Review outlined below in Section D.  Each Average Sale Price Review shall cover one randomly-selected quarter of the Reporting Period.

**A.     Medicaid Rebate Systems Review**

1.     General Description of Medicaid Rebate Systems Review

For at least the first and fourth Reporting Periods, the IRO shall review and evaluate AstraZeneca's systems, processes, policies and practices associated with the tracking of, gathering of, and appropriate accounting for all data relevant for purposes of determining the Best Prices reported to the Centers for Medicare and Medicaid Services ("CMS").

In general terms, the IRO shall evaluate the following:

(a)     the systems, processes, policies, and practices that are in place to track, gather, and appropriately account for contract price

terms that are relevant to the Medicaid Rebate Program. Specifically, this includes a review of:

> (1) the processes, policies and procedures used to determine whether contract price terms are appropriately included in the determination of the Medicaid Best Price for any product (this includes: (a) a review of the data or information flow process by which relevant contract price terms are evaluated for purposes of determining the Medicaid Best Price; and (b) a review of any AstraZeneca inquiries to CMS regarding Medicaid Best Price and any responses to those inquiries); and

> (2) the computer or other relevant systems used to determine the Medicaid Best Price; and

(b)   AstraZeneca's policies and practices for identifying outliers (*i.e.*, reported Best Prices that, according to AstraZeneca's policies, would require further scrutiny), the reasons for any identified outliers, and the identification and correction of any erroneous Best Price reported.

2.   Medicaid Rebate Systems Review Report

For each relevant Reporting Period, the IRO shall prepare a report based upon the Medicaid Rebate Systems Review. Each report shall include the following items:

(a)   a full description of the systems, processes, policies, and practices in place to track, gather, and appropriately account for those contract price terms that are relevant to the Medicaid Rebate Program, including, but not limited to:

> (1) the computer or other relevant system(s) used to determine the Medicaid Best Price;

2

(2) what information is input into AstraZeneca's relevant computer or other system(s) and whether this information is appropriate and comprehensive;

(3) the system logic or decision rationale used to determine whether relevant contract price terms are included in the determination of the Medicaid Best Price; and

(4) AstraZeneca's policies and practices for identifying outliers, the reasons for any identified outliers, and the identification and correction of any erroneous Best Price reported.

(b)   a full description of all documentation, information, and systems reviewed, including but not limited to, a description of AstraZeneca's inquiries to CMS regarding Best Price, any responses to those inquiries, and a summary of interviews with personnel (if any interviews were conducted); and

(c)   observations, findings, and recommendations on possible improvements to AstraZeneca's systems, processes, policies, and practices, including the IRO's assessment of whether AstraZeneca's systems, processes, policies and practices result in the inclusion of appropriate and relevant contract price terms in the determination of the Medicaid Best Price.

## B.   Average Sale Price Systems Review

1.   General Description of Average Sale Price Systems Review

For at least the first and fourth Reporting Periods, the IRO shall review and evaluate AstraZeneca's systems, processes, policies and practices associated with the tracking of, gathering of, and appropriate accounting for all data relevant for purposes of calculating the Average Sale Prices reported pursuant Section III.D of the CIA.

In general terms, the IRO shall evaluate the following:

3

(a) the systems, processes, policies, and practices that are in place to track, gather, and appropriately account for price terms that are relevant for purposes of the Average Sale Price.  Specifically, this includes a review of:

> (1) the process, policies, and procedures used to determine whether particular transactions reflecting final sales prices are included in or excluded from the calculation of the Average Sale Price for any product (this includes: (a) a review of the decision rationale by which sales to certain types of customers are included in or excluded from the calculation of Average Sale Price; (b) a review of the decision rationale by which certain transactions are included in or excluded from the calculation of Average Sale Price; and (c) the relevant data or information flow process by which relevant price terms are evaluated for purposes of determining the Average Sale Price);

> (2) the computer or other relevant system(s) used to calculate the Average Sale Prices; and

(b)     AstraZeneca's policies and practices for identifying outliers (*i.e.*, reported Average Sale Prices that, according to AstraZeneca's policies, require further scrutiny), the reasons for any identified outliers, and the identification and correction of any erroneous Average Sale Price reported.

2.     Average Sale Price Systems Review Report

For each relevant Reporting Period, the IRO shall prepare a report based upon the Average Sale Price Systems Review.  Each report shall include the following items:

(a) a full description of the systems, processes, policies, and practices in place to track, gather, and appropriately account for price terms relevant for purposes of the Average Sale Price including, but not limited to:

4

(1) the computer or other relevant systems used to calculate the Average Sale Price;

(2) what information is input into AstraZeneca's relevant computer or other system(s) and whether this information is appropriate and comprehensive;

(3) the system logic or decision rationale used to determine whether certain transactions are included in or excluded from the calculation of the Average Sale Price; and

(4) AstraZeneca's policies and practices of identifying outliers, the reasons for any identified outliers, and the identification and correction of any erroneous Average Sale Price reported.

(b) observations, findings, and recommendations on possible improvements to AstraZeneca's systems, processes, policies, and practices, including the IRO's assessment of whether AstraZeneca's systems, processes, policies and practices result in the inclusion of appropriate and relevant price terms in the determination of the Average Sale Price.

## C.    Sales and Marketing Systems Review

1.    General Description of Sales and Marketing Systems Review

For at least the first and fourth Reporting Periods, the IRO shall review AstraZeneca's systems, processes, policies and practices associated with the following types of activities (hereafter collectively "Sales and Marketing Related Activities" or "Activities"):

a) provision of Access Tools (*e.g.*, meals, refreshments, other items) to healthcare professionals (HCPs) or others;
b) engagement of HCPs, institutions, organizations for contracted services (*e.g.*, consulting, advisory, speaking and other fee-for-service arrangements);
c) sponsorship of promotional education programs (*e.g.*, speakers programs,

convention/symposia exhibits; case study programs, *etc.*);

d) provision of grants (*e.g.*, educational and other grants);

e) expenditures for third party advice about reimbursement or claims submissions for Government Reimbursed Products, if any;

f) provision of gifts, if any;

h) provision of customer assistance programs, if any;

i) provision of debt forgiveness, debt reduction, or other like assistance to customers, if any; and

j) provision of drug samples.

For each of the Sales and Marketing Related Activities, the IRO shall determine the following:

> (a)    whether AstraZeneca has instituted control and accountability systems (*e.g.*, documentation and approval requirements, tracking mechanisms) and written policies regarding the Activity;
>
> (b)    whether the control and accountability systems and the written policies are adequate and appropriate;
>
> (c)    the manner in which the control and accountability systems and the written policies are made known or disseminated within AstraZeneca;
>
> (d)    what disciplinary measures AstraZeneca has established for failure to comply with the control and accountability systems and written policies; and
>
> (e)    the number of instances and the circumstances in which AstraZeneca took disciplinary actions for failure to comply with the systems and policies.

2.    Sales and Marketing Systems Review Report

For each relevant Reporting Period, the IRO shall prepare a report based upon the Sales and Marketing Systems Review. Each report shall include the following items for each of the Sales and Marketing Related Activities:

> (a) a description of the documentation reviewed and any personnel interviewed;
>
> (b) a general description of AstraZeneca's control and accountability systems and written policies and actual practices and the IRO's

6

assessment about their adequacy and appropriateness;
(c) a description of the manner in which the control and
accountability systems and written policies are disseminated or made
known within AstraZeneca;
(d) a general description of the disciplinary measures AstraZeneca
has established for failure to comply with the control and
accountability systems and written policies;
(e) a description of the number of instances and a description of the
circumstances in which AstraZeneca undertook disciplinary actions
for failure to comply with the systems and policies;
(f) the findings and supporting rationale regarding any weaknesses in
AstraZeneca's sales and marketing related systems, policies and
practices; and
(g) any recommendations to improve any of AstraZeneca's sales and
marketing related systems, policies or practices.

## D.  Average Sale Price Review

1.    General Description of Average Sale Price Review

Section III.D of the CIA requires AstraZeneca to calculate and report
Average Sale Prices for Covered Products.  The IRO shall randomly select
five 11-digit NDCs for which Average Sale Prices were reported during the
quarter of the Reporting Period under review.  The IRO shall then randomly
select 50 transactions (defined to be final sale prices) associated with each
of the five 11-digit NDCs.  This review shall determine, in accordance with
AstraZeneca's policies and procedures and the CIA requirements, whether:
1) each transaction is supported by source documentation; and 2) whether
each transaction has been appropriately considered (*i.e.*, included or
excluded) for purposes of determining an Average Sale Price for the 11-
digit NDC under review.

2.    Average Sales Price Review Methodology

The Average Sale Price Review shall consist of two parts as follows:

(a)    Part One – Review of Samples

At the end of each Reporting Period, the IRO shall randomly select one quarter for review. The IRO will then randomly select 5 11-digit NDCs for which Average Sale Price was reported during the quarter under review. From that listing, the IRO will randomly select for review 50 transactions associated with each of the five 11-digit NDCs.

For each of the five 11-digit NDCs included in the Average Sales Price Review, the IRO will:

> (1) obtain information about all transactions reflected anywhere in AstraZeneca's systems relating to the calculation of Average Sale Price for the 11-digit NDC under review; and

> (2) for each of the five 11-digit NDCs, the IRO will review a sample of 50 randomly selected transactions to determine whether: 1) each transaction is supported by source documentation; and 2) each transaction was properly included in or excluded from the calculation of Average Sale Price.

(b) Part Two - Additional Investigation

For purposes of additional investigation, an error shall be defined to be any transaction that was: 1) not supported by source documentation; or 2) not appropriately included in or excluded from AstraZeneca's Average Sale Price calculation. If the IRO discovers either type of error, then the IRO shall conduct an additional investigation (*e.g.*, conduct interviews and/or review additional documentation) as may be necessary to determine the root cause of the error.

3. Average Sale Price Review Report

The IRO shall annually prepare a report based upon the Average Sale Price Review performed. The report shall include the following general elements and information:

8

(a) Review Objectives:  A clear statement of the objective(s) intended to be achieved by the review;

(b) Review Protocol:  A detailed narrative description of: (i) the sampling unit; (ii) the universe from which the sample was selected; (iii) the procedures performed;

(c) Sources of Data:  A full description of documentation (and/or other information) relied upon by the IRO when performing the Average Sale Price Review.

(d) a narrative list of the five 11-digit NDCs for which AstraZeneca reported Average Sale Price for the quarter under review and the associated Average Sale Price reported for each;

(e) for each NDC under review, a list of all transactions reviewed and a description of all documentation supporting the transaction;

(f) for each NDC under review, a description of the steps and the supporting documentation reviewed to determine that each transaction was appropriately included or excluded for purposes of determining the Average Sale Price;

(g) for each NDC under review, a list of any transactions not appropriately included in or excluded from AstraZeneca's Average Sale Price determination for that quarter;

(h) a detailed description of any additional investigation undertaken with regard to any identified error and the results of any additional investigation or reviews undertaken with respect to any such error; and

(i) the IRO's recommendations for changes in

9

AstraZeneca's policies and procedures to correct or address any weaknesses or deficiencies uncovered during the review.