UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | |
| *The City of New York v. Abbott Labs., et al.* (S.D.N.Y. No. 04-CV-06054) | |
| *County of Suffolk v. Abbott Labs., et al.* (E.D.N.Y. No. CV-03-229) | |
| *County of Westchester v. Abbott Labs., et al.* (S.D.N.Y. No. 03-CV-6178) | |
| *County of Rockland v. Abbott Labs., et al.* (S.D.N.Y. No. 03-CV-7055) | |
| *County of Dutchess v. Abbott Labs., et al.* (S.D.N.Y. No. 05-CV-06458) | |
| *County of Putnam v. Abbott Labs., et al.* (S.D.N.Y. No. 05-CV-04740) | |
| *County of Washington v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00408) | |
| *County of Rensselaer v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00422) | |
| *County of Albany v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00425) | |
| *County of Warren v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00468) | |
| *County of Greene v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00474) | |
| *County of Saratoga v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00478) | |
| *County of Columbia v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00867) | |
| *Essex County v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00878) | |
| *County of Chenango v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00354) | |
| *County of Broome v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00456) | |
| *County of Onondaga v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00088) | |
| *County of Tompkins v. Abbott Labs., et al.* (N.D.N.Y. No. 05-CV-00397) | |
| *County of Cayuga v. Abbott Labs., et al.* | |

| | |
|---|---|
| (N.D.N.Y. No. 05-CV-00423) | ) |
| *County of Madison v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00714) | ) |
| *County of Cortland v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00881) | ) |
| *County of Herkimer v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00415) | ) |
| *County of Oneida v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00489) | ) |
| *County of Fulton v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00519) | ) |
| *County of St. Lawrence v. Abbott Labs.,* | ) |
| *et al.* | ) |
| (N.D.N.Y. No. 05-CV-00479) | ) |
| *County of Jefferson v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00715) | ) |
| *County of Lewis v. Abbott Labs., et al.* | ) |
| (N.D.N.Y. No. 05-CV-00839) | ) |
| *County of Chautauqua v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06204) | ) |
| *County of Allegany v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06231) | ) |
| *County of Cattaraugus v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06242) | ) |
| *County of Genesee v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06206) | ) |
| *County of Wayne v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06138) | ) |
| *County of Monroe v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06148) | ) |
| *County of Yates v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06172) | ) |
| *County of Niagara v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06296) | ) |
| *County of Seneca v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06370) | ) |
| *County of Orleans v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06371) | ) |
| *County of Ontario v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06373) | ) |
| *County of Schuyler v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06387) | ) |
| *County of Steuben v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06223) | ) |
| *County of Chemung v. Abbott Labs., et al.* | ) |
| (W.D.N.Y. No. 05-CV-06744) | ) |
| AND | ) |

*County of Nassau v. Abbott Labs., et al.*         )
(E.D.N.Y. No. 04-CV-5126)                          )
_____)

**DEFENDANT MEDIMMUNE, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS (1) THE CONSOLIDATED COMPLAINT OF NEW YORK CITY AND PLAINTIFF NEW YORK COUNTIES OTHER THAN NASSAU AND (2) THE SECOND AMENDED COMPLAINT OF NASSAU COUNTY[1]**

---

[1] MedImmune hereby incorporates Defendants' Joint Reply Memorandum of Law in Support of the Motion to Dismiss as well as, when applicable, the arguments advanced in the individual reply memoranda submitted by other Defendants in support of their motions to dismiss.

Plaintiffs' allegations assume that "one size fits all" defendants. But it does not, and MedImmune provides the quintessential example of that pleading deficiency. So it is no wonder that Plaintiffs' Opposition adds no particulars that might otherwise rope MedImmune in. Instead, Plaintiffs continue to rely on generalized allegations of fraud, refer to settlements wholly unrelated to MedImmune, and distort MedImmune's pleadings in a strained attempt to force it under their pleading umbrella. But MedImmune simply will not fit there. And to make matters worse, Plaintiffs contradict New York statutes and misrepresent this Court's rulings.

The Opposition does not set forth any allegations from which the Court can reasonably infer fraud. Although Plaintiffs call MedImmune's WAC and AWP "false" and "inflated" because they do not reflect actual costs net of all discounts, Cons. Compl. ¶ 8, they neither allege that MedImmune represented them to reflect actual costs nor present any support for their view of what WAC and AWP mean. Tellingly, Plaintiffs ignore that New York (a) set reimbursement for <u>some</u> drugs at AWP minus a percentage, N.Y. Soc. Serv. L. § 367-a(9)(b)(ii), and (b) set reimbursement for <u>other</u> drugs at "actual cost," N.Y. Soc. Serv. Law § 367-a(9)(a); thereby acknowledging twice that AWP does not represent a drug's actual cost. Federal law also belies Plaintiffs' suggestion that WAC is an actual average price, <u>after</u> discounts. *See* Cons. Compl. ¶ 12. First, federal law provides a statutorily defined price ("AMP") that reflects certain discounts from WAC. 42 U.S.C.A. § 1396r-8(k)(1). Second, as of December 8, 2003, federal law defines the "term 'wholesale acquisition cost' [as] . . . the manufacturer's list price for the drug . . . <u>not including</u> prompt pay or other discounts, rebates or reductions in price." 42 U.S.C.A. § 1395w-3a(c)(6)(B) (emphasis added).[2]

---

[2] Although this Court has stated in a case involving generic drugs—not against MedImmune—that WAC was understood to mean the actual price charged to wholesalers, *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 322 (D. Mass. 2005), the Court relied on evidence of representations concerning WAC in 1994-95, before Synagis was on the market. No evidence or allegations of any such representations by

1

Even if Plaintiffs' unsupported "definitions" of WAC and AWP were accepted, their claims still must be dismissed for lack of specificity. First, this Court previously held that that Plaintiff Suffolk must "present more particular information about its allegation that the published [AWP] for <u>each</u> drug was fraudulent," Memorandum and Order, *County of Suffolk v. Abbott Labs.*, MDL No. 1456, at 1 (D. Mass. April 8, 2005) (emphasis added), and that the method of estimation originally underlying that calculation was "not sufficient," *id.* at 2.[3] Plaintiffs, however, have provided additional market price information for only <u>one</u> of the three MedImmune drugs named in the Complaints, Cytogam, s*ee* Pl. Opp. at 2 (and for that, only for the year 2000)—which represents only 10% of Nassau County's expenditures on MedImmune's named drugs for the period 1997-2003. *See* Nassau Compl. ¶ 489 & Ex. B at 44.[4]

The need for the specificity required by Rule 9(b) (but lacking here) is especially evident in this setting. Under New York law, when the administering physician purchases a drug and seeks Medicaid payment directly, such payment is <u>required by statute</u> to be set at "actual cost" and is <u>not</u> to be based on AWP. N.Y. Soc. Serv. Law 367-a(9)(a). Cytogam (the only drug for

---

MedImmune have been presented here. This Court also has stated that "it has <u>long</u> been widely understood" in the pharmaceutical industry that AWP "is <u>not</u> a measure of prices generally paid by wholesalers to manufacturers," and that reimbursement was based on AWP despite the fact that HHS and other agencies "have disclosed over the years <u>that pharmacies' and providers' acquisition costs were typically less than AWP</u>." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 67-68 & 71 (D. Mass. 2005) (emphasis added).

[3] Plaintiffs cannot rely on *Pharm III*, 307 F. Supp. 2d 196 (D. Mass 2004), *see* Pl. Opp. at n.5, to evade this requirement. First, this Court's order relating to <u>this</u> case is what controls. Second, *Pharm III*— which did not involve MedImmune—is inapposite. It is a class action where the Court found, in light of the particular "allegations and concessions" in that case that the Plaintiffs did not need to allege a spread for each drug, "so long as sufficient facts were alleged to infer a fraudulent scheme by each particular Defendant manufacturer . . . ." 307 F.Supp.2d at 209. Plaintiffs have alleged no such facts here.

[4] Plaintiffs claim that Defendants' fraudulent motive to "inflate" the WAC and AWP was to increase market share. But MedImmune's Synagis—which accounts for the majority of MedImmune's sales— faces no competition (nor did Respigam, Synagis' predecessor drug). MedImmune therefore lacks the motivation to enter into an alleged scheme to increase market share.

2

which market prices are alleged) and Respigam are virtually exclusively administered by doctors or hospitals that seek Medicaid reimbursement directly. Synagis is distributed both by physicians, who are statutorily required to be reimbursed at actual cost, and by Assignment of Benefit Distributors, who are reimbursed at AWP minus a percentage. Plaintiffs have not alleged when, if ever, they paid for Medimmune drugs based on allegedly inflated AWPs or WACs—although whether an AWP-based formula was used is certainly information that is in their possession—and thus have utterly failed to allege (much less to allege with specificity) when and how Medimmune committed fraud.[5]

Finally, for the same reasons that their WAC and AWP claims fail, Plaintiffs' Best Prices claims against MedImmune must be dismissed. Plaintiffs provide no examples of the allegedly fraudulent Best Prices MedImmune reported. And MedImmune's alleged co-marketing agreement with an entity that has settled another case—not involving MedImmune—has nothing to do with MedImmune.[6]

Contrary to Plaintiffs' assertions, in previous rulings this Court dismissed all claims against MedImmune. *See* MedImmune's Mem. in Supp. of Mot. to Dismiss at 1 & n. 2. For the reasons stated above, the Court should do the same here.

---

[5] It is wholly irrelevant that New York State alleged in a different case, involving a different defendant, that it may have reimbursed physician-administered drugs based on AWP instead of actual cost, contrary to the statute. Plaintiffs—who should know what formula was used to calculate reimbursement—have not so alleged here. Even if Plaintiffs are correct that New York only began reimbursing physician-administered drugs at actual cost beginning in 1994, *see* Pl. Opp. at 4, that was over eleven years ago. And Synagis, the chief MedImmune drug in this case, was not introduced until 1998.

[6] Plaintiffs incorrectly claim that MedImmune has admitted that "its AWPs are inflated to cover administration costs." Pl. Opp. at 1 & n.6. MedImmune never stated that its AWPs are "inflated." It only stated that, to the extent Medicaid payment exceeds the cost of the drug itself, the difference is used, in part, to cover the extraordinary costs encountered in administering Synagis which are reasonably viewed as part of the cost every provider assumes when purchasing Synagis. *See* Response to Hovan Aff. at 4. Even Plaintiffs now admit that a margin between WAC and AWP is permissible, representing the wholesaler's "mark-up and profit." Cons. Compl. ¶ 7.

3

Dated: May 11, 2006                              Respectfully submitted,

                                                 WILLIAMS & CONNOLLY LLP

                                                 By: /s/ James V. Hayes
                                                     Steven M. Umin
                                                     Beth A. Levene
                                                     James V. Hayes (BBO #651802)
                                                     725 12th Street, N.W.
                                                     Washington, D.C. 20005-5901
                                                     Telephone: (202) 434-5000
                                                     Facsimile: (202) 434-5029

                                                 *Attorneys for Defendant MedImmune, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2006, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2, by sending a copy of this document to Lexis/Nexis File & Serve for posting and notification to all parties.

                                                 /s/ James V. Hayes
                                                 James V. Hayes