UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE JOHNSON & JOHNSON DEFENDANTS' MOTION
<u>FOR LEAVE TO RESPOND TO THE DUXBURY DECLARATION</u>**

**I.    INTRODUCTION**

Plaintiffs submit this memorandum of law in order to reply to the arguments made in the Johnson & Johnson Defendants' Motion for Leave to Respond to the Duxbury Declaration (the "Motion").

On May 5, 2006, the Johnson & Johnson defendants ("J&J") filed a motion for leave to respond to the declaration of Mark Duxbury (the "Declaration"). According to J&J, the purported basis for its Motion is that the Declaration is (i) untimely and (ii) its content is irrelevant to summary judgment. *See* J&J Br. at 3-4. However, because both of these arguments can be disposed of easily, it appears the real purpose of J&J's Motion is to zealously attack the credibility of Mr. Duxbury. Indeed, it is telling that J&J devotes more than half of its four-paged brief – approximately two and a half pages -- to attacking the credibility of Mr. Duxbury and only one page to presenting its dubious legal arguments. Notwithstanding the fact that none of J&J's attacks are directed at his truthfulness, as a matter of law, courts cannot resolve credibility

determinations at summary judgment. *See*, *e.g., Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (holding that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions and not those of a judge."). Thus, J&J's ineffective attempt to undermine Mr. Duxbury's credibility at summary judgment unnecessarily wastes judicial resources and J&J's Motion should be denied.

## II.   ARGUMENT

### A.   The Duxbury Declaration is Not Untimely.

J&J contends that the Duxbury Declaration is untimely and was held back to ambush J&J. J&J Br. at 3. The argument is absurd. Plaintiffs did not ambush J&J with the Duxbury Declaration. Indeed, J&J admits that it was aware that Mr. Duxbury was involved in aspects of this litigation since November 2003. *See* J&J Br. at 2. Moreover, defense counsel was intimately familiar with Mr. Duxbury's prior testimony in other litigation regarding OBI's sales and marketing practices. As such, J&J had ample opportunity to depose Mr. Duxbury in this litigation, but chose not to. Accordingly, J&J cannot now argue that it has been prejudiced by the Declaration.

Furthermore, contrary to J&J's contention, Plaintiffs did not attach the Duxbury Declaration to their Reply to "ambush" J&J. Rather, it was submitted as further evidence that OBI marketed the spread of Procrit to its various customers and to counter J&J's claim that OBI had a policy that prohibited its employees from marketing the spread. Plaintiffs, in their opening brief, attached certain documents that they believed sufficiently demonstrated that OBI marketed the spread of Procrit to customers. The attached documents were not intended to be exhaustive of all of the evidence demonstrating OBI's improper marketing practices. However, because J&J challenged certain of those documents in its response and argued that OBI had an

oral policy against marketing the spread until late 2000, Plaintiffs, in an effort to satisfy their burden to show that no genuine issue of material fact is in dispute, offered additional evidence to demonstrate their original claim that Ortho Biotech marketed the spread of Procrit.  Certainly, this was not a new argument.

Rule 56(e) of the Federal Rules of Civil Procedure provides that "[s]upporting and opposing affidavits shall be made on <u>personal knowledge</u>, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e).  Here, there is no dispute that the Duxbury Declaration meets each of these requirements.  **<u>This is in direct contrast to Defendants' reliance on the Declaration of Thomas Hiriak, which Plaintiffs contend should be stricken because it contains numerous purported facts outside his personal knowledge as established by his prior testimony that he has limited knowledge of any facts regarding OBI prior to his joining the company in 1998.</u>**  *See* Class Plaintiffs' Response to the Johnson & Johnson Defendants' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment as to Class 1 and Class 2 ("Plaintiffs' Counterstatement of Facts") at ¶¶ 19, 20, 36-39, 41-44, 46, 48, 50-51, 53, 55, 59-61, 64, 69, 72, 74, 86 and 88; *see also Perez v. Volvo Car Corp.,* 247 F.3d 303, 315-16 (1st Cir. 2001) (holding that party may apprise trial court, "in a conspicuous manner and in a timely fashion" that the affidavit is defective through a motion to strike, objection or legal memorandum; and that statements in affidavit made prior to time when witness had personal knowledge cannot be considered at summary judgment).  Furthermore, because Mr. Duxbury was a witness well known to J&J and its defense counsel, they were aware of the likelihood that he could become involved as a witness and therefore cannot now use their inaction as a sword against Plaintiffs.

As mentioned above, J&J improperly goes to great lengths in its brief to advocate to the Court that Mr. Duxbury has credibility issues.  *See* J&J Br. at 1-3.  Nonetheless, the worst that J&J asserts is that Mr. Duxbury made inappropriate comments at work, was sanctioned for disclosing certain confidential information of OBI and submitted a declaration in another case that contained inadmissible evidence.  Notably, none of these attacks goes towards the truthfulness of Mr. Duxbury's statements.  J&J does not argue that the Declaration contains perjured material or inadmissible evidence.  Nor does J&J argue that the Declaration is inconsistent with Mr. Duxbury's prior testimony.  However, the Declaration is critical because it apprises the Court of relevant and important evidence that Plaintiffs will tender at trial.

It is well settled that a court that is ruling on summary judgment may not resolve factual disputes or make credibility determinations.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (holding that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions and not those of a judge."); *Thyssen Plastik Anger KG v. Induplas, Inc.,* 576 F.2d 400, 402 (1st Cir. 1978) (refusing to turn summary judgment proceedings into trial by affidavit as such conflicts are most appropriately resolved by jury at trial); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987) (holding that a court may determine that submissions on summary judgment motion are conclusory or irrelevant, but may <u>not</u> adjudicate <u>credibility</u> of assertions); *Lincoln Alameda Creek v. Cooper Indus., Inc.*, 829 F.Supp 325, 327 (N.D. Cal. 1992) (holding that court may not make <u>credibility</u> determinations in deciding motion for summary judgment).

Nor do the unpublished cases cited by J&J suggest otherwise, as each is readily distinguishable on their facts.  For example, unlike here, *Will-O-Wheel Farms v. A.O. Smith Harvestore Products, Inc.,* 1991 WL 86286 at *6 (6th Cir. May 24, 1991), involved plaintiffs'

appeal of a judgment N.O.V. during which defendant introduced a new argument at an oral appellate hearing (which the court allowed in under Fed. R. App. P. 28(j)).  *Id.* at *6.  Here, Plaintiffs are not raising a new legal issue post-trial.

Similarly, in *In re: Antonio Del Grosso*, 1992 WL 280788 (Bankr. N.D. Ill. Sept. 21, 1992) after filing cross-motions for summary judgment, defendants attempted to assert a <u>new theory</u> as an affirmative defense to the Trustee's fraud claims.  *Id.* at *18.  Here, however, Plaintiffs are not asserting a new argument or legal theory.

Likewise, in *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404 (1st Cir. 1985), the Court rejected evidence presented in a reply brief due to the fact that it was new evidence produced the day of oral argument and the opposing party never had an opportunity to respond.  Such is not the case here.

A case more on point is *Crater Corp. v. Lucent Technologies, Inc.*, 255 F.3d 1361(Fed. Cir. 2001), 2002 U.S. LEXIS 3520 where the court held that additional evidence could be submitted in a reply brief because, like here, the opposing party had notice of the substance of the testimony and ample opportunity to address the evidence.  Accordingly, J&J's Motion should be denied.

### B. The Duxbury Declaration is Directly Relevant.

J&J argues that the testimony contained in the Declaration is irrelevant.  J&J Br. at 3. Despite J&J's attempt to oversimplify and mischaracterize Mr. Duxbury's testimony, the argument is baseless.  Although J&J conceded previously in its opening summary judgment brief that evidence of "marketing the spread" is not essential to establish liability against OBI, the company's efforts to market and sell the spread of Procrit to customers illustrates how the fraud was furthered by OBI after setting the spread.  The Declaration shows that OBI sales

representatives were instructed to market the spread, evidences efforts to market the spread and shows that there was no OBI or J&J policy prohibiting marketing the spread.  *See, gen*., Duxbury Decl.  Each of these areas is central in this case because they establish OBI's awareness and intent in selling Procrit based on the difference between reimbursement and acquisition cost.

J&J's argument that dialysis centers and hospitals are "not reimbursed based on AWP" is misleading and contradicted by OBI's witnesses and documents.  J&J is well aware that its own documents indicate that at least 5% of the reimbursement for Procrit in the dialysis sector is reimbursed at a non-statutory rate.  *See* MDL-OMP0049639 (a memorandum from Gary Reedy, OBI's Vice-President of Sales and Marketing, to OBI's President, Carol Webb, dated December 3, 1997 stating "The government pays for approximately 95% of all ESRD patients."); *see also* J&J's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel the Johnson & Johnson Group to Produce Documents and For an Extension of Discovery and in Support of OBP's Cross-Motion for Sanctions dated August 31, 2005 at p.4, n.2 stating "it is undisputed that well over 90% of dialysis patients are Medicare beneficiaries."  In light of the extremely high percentage of private insurers that reimburse based on AWP, it is likely that private payors reimbursed the approximately 5% remainder based on AWP.  In addition, J&J's former Director of Reimbursement testified that hospital outpatient clinics reimburse physicians who prescribe Procrit based on AWP.  *See* Plaintiffs' Counterstatement of Facts at ¶ 64.

J&J additionally argues that even if Mr. Duxbury promoted Procrit's spreads to customers, these acts are irrelevant because the spreads that he promoted were within Dr. Hartman's liability threshold.  J&J Br. at 4.  J&J's argument is erroneous because the testimony shows that OBI was aware of its spread and how it actively marketed it to its customers, and

corroborates evidence (e.g., John Hess memorandum) that contradicts OBI claims that there was a policy against marketing the spread.  Thus, J&J's Motion should be denied.

## III.   CONCLUSION

For all of the foregoing reasons, the Court should deny J&J's Motion for Leave to Respond to the Duxbury Declaration.

DATED:  May 19, 2006.

By    /s/ Steve W. Berman
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 9 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

      I, Allan M. Hoffman, hereby certify that I am one of Plaintiffs' attorneys and that, on May 19, 2006, I caused copies of **Plaintiffs' Memorandum Of Law Of Law In Opposition To The Johnson & Johnson Defendants' Motion For Leave To Respond To The Duxbury Declaration** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

      **/s/   Allan M. Hoffman**
      Allan M. Hoffman