# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE                          ) | |
| LITIGATION                                                       ) | Master File No. 01-CV-12257-PBS |
| _____ ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO:              ) | |
|                                                                          ) | Chief Mag. Judge Marianne B. Bowler |
| 01-CV-12257-PBS AND 01-CV-339          ) | |
|                                                                          ) | |
| _____ ) | |

## OXFORD HEALTH PLANS, LLC'S LIMITED OBJECTIONS TO TO MAGISTRATE JUDGE'S ORDER GRANTING THE MOTION TO COMPEL

Julie B. Brennan (BBO # 564101)
MANCHEL & BRENNAN, P.C.
199 Wells Avenue, Suite 301
Newton, Massachusetts 02459
Tel:  (617) 796-8920
Fax: (617) 796-8921

Thomas F. Fitzgerald
Michael J. Prame
Lars C. Golumbic
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC  20006-5893
Tel:  (202) 857-0620
Fax:  (202) 659-4503

**Attorneys for Oxford Health Plans, LLC**

Pursuant to Fed. R. Civ. P. 72(a) and Local Magistrate Judge Rules 2(b), Third-Party Oxford Health Plans, LLC ("Oxford") respectfully submits this memorandum of law in support of its Limited Objections to the Magistrate Judge's May 9, 2006 Order granting Defendants' Motion to Compel (the "Order").  The Order is contrary to the legal standard governing third-party discovery and should be set aside, either in full, or at least as to certain particularly burdensome requests, because (1) Defendants have absolutely no need for additional discovery from Oxford, a small, regional health insurer who does almost no business in Massachusetts, and (2) it would take thousands of hours for Oxford employees to:

> (a)   produce the fee schedules for hospitals and other facilities that cannot be searched electronically and, in any event, may not even contain the fee information sought by Defendants; and
>
> (b)   manually review the files Oxford maintains from its contract negotiation with tens of thousands of healthcare providers to determine either (1) whether Oxford understood that providers earned a margin on the drugs that the providers administered; or (2) the reimbursement or cost for drugs administered in a hospital compared to drugs administered in a physicians office.[1]

---

[1]   Oxford's objections to the Order are narrowly tailored to the two most burdensome categories of discovery.  In addition to these items, the Order requires Oxford to produce five other categories of documents.  Oxford will produce in accordance with the Order (1) fee schedules for individual physicians and ancillary providers; (2) reports that Oxford received that break out rebates paid to Oxford during the relevant period for the drugs at issue in the lawsuit; (3) claims data for the J Codes and the service codes that Defendants identified; (4) the documents that Oxford produced in the *Lupron* litigation; and (5) documents identified by the employees in charge of setting company policy and strategy for provider reimbursement that address either (a) whether Oxford understood

(continued…)

## BACKGROUND

On April 19, 2004, Defendants issued a third-party subpoena on Oxford, a small, regional health insurer whose business is concentrated in Connecticut, New Jersey and New York.  *See* Declaration of Michael J. Prame ("Prame Decl.") Ex.1, concurrently filed with Oxford's Memorandum in Opposition to Defendants' Motion to Compel ("Oxford Mem.") (Docket No. 2466).  After receiving the subpoena, Oxford produced, among other things, a sample of its contracts with healthcare providers as well as a file containing voluminous claims data for the drugs at issue in this lawsuit.

On June 28, 2005, counsel for Defendants sent Oxford a letter listing Defendants' outstanding discovery demands.  Prame Decl. Ex.2.  After receiving Defendants' revised requests, Oxford attempted to reach an agreement with Defendants with respect to the scope of an additional production.  When such an agreement could not be reached, Defendants filed the Motion to Compel.  *See* Docket No. 2298.

------------------------------

(…continued)

that providers earned a margin on the drugs that the providers administered, or (b) the reimbursement or cost for drugs administered in a hospital compared to drugs administered in a physicians office.

Defendants' erroneously maintain that the Order requires Oxford to complete its production within 30 days.  Magistrate Judge Bowler made no such express ruling. Oxford nonetheless intends to work diligently to produce these materials on a rolling basis over the course of the next 30 to 60 days (which is how long Oxford estimates it will reasonably take to complete the production of electronic claims data and provider fee schedules).  Upon completion of its document production, Oxford also will produce for deposition at a mutually convenient date an Oxford representative familiar with the provider contracting process generally and, more specifically, negotiations with providers regarding physician administered drugs.

On May 9, 2006, a hearing on Defendants' Motion to Compel was held before the

Honorable Marianne B. Bowler.  *See* Clerk's electronic notes from hearing on May 9,

2006.  Magistrate Judge Bowler granted Defendants' Motion from the bench.  No written

decision (hard copy or electronic) was issued by Magistrate Judge Bowler.

## ARGUMENT

### A.     Legal Standard

Fed. R. Civ. P. 72(a) permits a party to file objections to a magistrate judge's

nondispositive order.  *See* Local Magistrate Judge Rules 2(b).  A district court may

"modify or set aside any portion of the magistrate's order found to be clearly erroneous

or contrary to law."  Fed. R. Civ. P. 72(a); *see also* Local Magistrate Judge Rules 2(c).

Magistrate Judge Bowler's May 9, 2006 Order was clearly erroneous and contrary

to law.  As the First Circuit has recognized, discovery should not be permitted if "the

burden or expense of the proposed discovery outweighs its likely benefit."  *Cusumano v.*

*Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998).  This consideration of the level of

burden that would be imposed in responding to discovery is heightened where the burden

is on a third-party.  *Id.* at 717; Fed. R. Civ. P. 45(c)(3)(A)(iv) (a court "shall" quash or

modify a subpoena that "subjects a person to undue burden").

**B.      Defendants' Demands Are Unduly Burdensome.**

      **1.      Defendants Do Not Need Further Discovery From Oxford.**

The Order should be set aside because Defendants do not need additional

discovery from Oxford.  Oxford is a relatively small insurer, with only approximately

1.5 million members.  Its members are confined mainly to a tri-state area – New York,

New Jersey, and Connecticut.  As such, Oxford insures approximately only 3,500

Massachusetts residents who may arguably fall within the Massachusetts-based

subclasses that the Court certified.  And less than 80,000 of Oxford's members may

arguably fall within the nationwide Medicare Part B class that the Court certified.  As

Oxford's members comprise a *de minimis* segment of the subclasses certified by the

Court, discovery from Oxford would not materially advance the prosecution or defense of

the claims in this case

Even if Oxford's involvement was greater, there still would be no need for

discovery from Oxford now that Blue Cross Blue Shield of Massachusetts ("Blue Cross

Blue Shield") has been made a class representative.  *See* Docket Number 2097-1, at 5.

As Magistrate Bowler has recognized in denying Defendants' efforts to obtain discovery

from three other small insurers (Tufts Associated Health Plan ("Tufts"), Neighborhood

Health Plan ("NHP") and Fallon Community Health Plan ("Fallon")), "the presence of

Blue Cross Blue Shield at this time in this litigation does change things."  Prame Decl.

Ex. 3 (Transcript of Feb. 2, 2006 hearing, p. 48.).  As Blue Cross Blue Shield has been

added as a class representative, there is no need for Defendants to seek further discovery

from Oxford, a non-party.

Moreover, in pursuing discovery from Oxford, Defendants have misconstrued the Court's prior ruling allowing them to conduct discovery from a "sample" of health insurers. The Court did not give Defendants permission to conduct a complete "census" of health insurers. Defendants do not deny that they have already sought and obtained discovery from an extensive sample of large and small insurers across the country; in fact, those entities collectively insure over half of the population of the United States covered by private health insurance. *See* Docket No. 1911-1, at 4. As Defendants have the sample authorized by the Court, it is simply inappropriate for them to continue to seek discovery from a small insurer like Oxford.

> **2.** **The Burden Imposed by the Discovery Sought By Defendants Substantially Outweighs Any Benefit.**

In her prior ruling as to further discovery from Tufts, NHP and Fallon, Magistrate Judge Bowler recognized the substantial burden that the discovery sought by Defendants imposes on small insurers like Oxford. Prame Decl. Ex. 3 (Transcript of Feb. 2, 2006 hearing, at 48 ("I feel that the oppressiveness of the burden as has been outlined by counsel for the three health plans is quite dramatic")). Like Tufts, NHP and Fallon, Oxford is a relatively small insurer (it has less than 3,200 employees) and, as discussed in greater detail below, Oxford would have to divert an enormous amount of resources and thousands of staff hours to produce facility-based fee schedules and to search the files it maintains from its negotiation with healthcare providers.

Unlike the fee schedules for physicians and ancillary healthcare care providers (which Oxford is in the process of producing), Oxford's fee schedules for hospitals and

other facilities cannot be electronically searched to identify the basis for reimbursement of physician administered drugs.  Moreover, some payment methodologies employed for facilities (*e.g.*, per diem, capitation) would not separately breakout a fee for physician administered drugs   To produce facility based fee schedules, Oxford estimates its employees would have to spend hundreds of staff hours conducting a manual search of its records to determine if a facility-based fee schedule breakouts charges for physician administered drugs.

Defendants likewise have demanded that Oxford scour the files it maintains from contract negotiations with tens of thousands of healthcare providers to determine if any documents address whether Oxford understood that providers earned a margin on administered drugs, or the comparative cost for drugs administered in a hospital as opposed to a physician's office.  If these requests are permitted to stand, Oxford would be required to expend thousands of staff hours reviewing contracting files to satisfy Defendants' hopes of finding some document or documents relating to these issues.  This "needle in a haystack" approach to discovery should not be countenanced.[2]

Thus, the burden on Oxford greatly outweighs any benefit to be gained by the discovery of (a) facility based fee schedules and (2) Oxford's contract negotiation files.

---

[2]    A more reasonable (and fruitful) approach -- which Oxford has offered to Defendants -- would be for Defendants to elicit testimony on these issues from the employee that Oxford is proffering for deposition.  Defendants have refused to agree to this approach.

Accordingly, Defendants' Motion to Compel should be denied to the extent it seeks production of such documents.[3]

## **CONCLUSION**

For the reasons set forth above, the Court should reverse the May 9, 2006 Order, either in full, or at least to the extent that it requires Oxford to produce facility-based fee schedules and to conduct a search of its contract negotiation files for documents relating to Oxford's understanding as to whether providers earned a margin on or the comparative cost for drugs administered in a hospital versus in a physician's office.

Dated:  May 23, 2006                Respectfully submitted,

                                    MANCHEL & BRENNAN, P.C.


                                    _____/s/ Julie B. Brennan_____
                                    Julie B. Brennan (BBO # 564101)
                                    199 Wells Avenue, Suite 301
                                    Newton, Massachusetts 02459
                                    Tel:  (617) 796-8920
                                    Fax: (617) 796-8921

                                    - and -

_____

[3]      Defendants maintain that they are entitled to recover their fees in connection with the Motion.  Magistrate Judge Bowler made no finding during the May 9 hearing as to Defendants' entitlement to an award of attorneys' fees.  Nor does Oxford believe that such an award would be warranted given the good faith nature of the dispute between the parties regarding whether further discovery was necessary or warranted.

Thomas F. Fitzgerald
Michael J. Prame
Lars C. Golumbic
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Tel: (202) 857-0620
Fax: (202) 659-4503
Attorneys for Oxford Health Plans, LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 23, 2006, a true and correct copy of the foregoing Limited

Objections to Magistrate's Order Granting Motion to Compel was served on all counsel

of record by electronic service pursuant to Case Management Order No. 2.  A copy of the

same was served on counsel for Patterson Belknap Webb & Tyler LLP by electronic

service and also by first class mail.


_____/s/ Julie B. Brennan_____
Julie B. Brennan