Exhibit A



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


Case No. 1:01-CV-12257-PBS


- - - - - - - - - - - - - - - - - - - - - - - -

CITIZENS FOR CONSUME, ET AL,

                    Plaintiffs,

            vs.

ABBOTT LABORATORIES, ET AL,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - -


                   HEARING

              May 9, 2006


H e l d   B e f o r e:

        The Hon. MARIANNE B. BOWLER,

            U.S. Magistrate Judge

**UNITED REPORTERS**

UNITED REPORTERS, INC., 43 Woodland Street, Suite 200, Hartford, Connecticut 06105
Toll-free Phone 866-534-3383, Toll-free Fax 877-534-3383  info@unitedreporters.com  www.unitedreporters.com

1  Green?

2              MR. GREEN:  Yes, your Honor.

3              THE COURT:  And work out the

4  language of the stipulation.  E-file it and I

5  will sign it.

6              MR. MYERS:  Thank you.

7              A VOICE:  Thank you, your

8  Honor.

9              MR. GREEN:  I'll be here all

10  day, Counsel.

11             THE COURT:  All right.  And

12  thank you very much, Mr. Green, for being

13  available by phone.

14             MR. GREEN:  And, your Honor, I

15  apologize, and I do appreciate the Court's

16  courtesy of letting me appear by phone.

17             THE COURT:  It's our pleasure.

18  We're very gracious here in New England.

19             All right.  Now, back to 2162.

20             MR. DEMARCO:  Correct.  Your

21  Honor, we've met briefly in the anteroom,

22  discussed the -- the issues, went over the --

23  our proposed order which Mr. Wattanaker

24  received a -- a proposed stipulated order.

25  Our proposed order, to be totally honest with

1   he's asked the Court to enter this wholesale

2   if we can't produce anything.

3                    THE COURT:  Well, I'm

4   suggesting that I allow an order that you can

5   agree to and that I give you a little bit

6   more time to work on those portions that you

7   can't agree to.

8                    MR. WATTANAKER:  Well, I ask

9   to be heard on -- I understand you want to

10  move things along, but if we did get to a

11  point where we couldn't reach an agree, I

12  just represent to the Court and to

13  Mr. DeMarco (inaudible) this represents the

14  framework of something that we could --

15                    THE COURT:  All right.

16                    MR. WATTANAKER:  -- agree to.

17                    THE COURT:  So if --

18                    MR. WATTANAKER:  But if we

19  can't reach agreement for whatever reason,

20  I'd like the opportunity to be heard.

21                    THE COURT:  But at least file

22  something as to those portions that you can

23  and indicate in the cover letter that you

24  cannot agree to other provisions and I'll

25  give you another hearing so that at least

1    what's filed is agreed to.

2                    MR. WATTANAKER:   Thank you,

3    your Honor.

4                    MR. DEMARCO:   May I be heard

5    briefly on that, your Honor?   The problem we

6    have with this and the reason rather than

7    taking an hour this morning for him getting

8    back to his client again, they've had weeks

9    in some cases to deal with certain issues and

10   months in other cases to deal with other

11   issues.   We're on a very short leash now and

12   -- and originally we've talked about maybe

13   until the end of the week, but that doesn't

14   do it for us.

15                    We really need to have access

16   to the documents now and rather than listen

17   and -- and I didn't mean to be curt with Mr.

18   Wattanaker in the anteroom, but rather than

19   listen to all of the discrete reasons why

20   they can do certain things and clients not

21   available and people aren't available to talk

22   to this rings hollow at this point.

23                    THE COURT:   Here's what I

24   suggest, Mr. Wattanaker.   It's better to sit

25   down and work something out that you are both

1    in agreement on, even though you may not be

2    happy because it may well be that what I

3    allow you don't like at all.

4              MR. WATTANAKER:  I understand

5    that, your Honor, but I would certainly like

6    an opportunity to be heard on some of the

7    fine points of this agreement that Mr.

8    DeMarco would like you to enter wholesale and

9    can't reach a final agreement on.

10             THE COURT:  Well, see what you

11   can -- see what you can get to --

12             MR. WATTANAKER:  I mean, Mr.

13   Demarco's been heard, you know, two or three

14   times this morning, you know, making

15   accusations about the conduct, you know, of

16   my client and my associates.  I've held my

17   tongue but I have to say that I'd certainly

18   agree for the record with much of it, and

19   like I've said, we can work with this but for

20   instance, let's just take an example.  They

21   want documents produced in this order on May

22   10th.  Today is --

23             THE COURT:  May 9th.

24             MR. DEMARCO:  May 9th.

25             MR. WATTANAKER:  -- the 9th,

1  so if we enter this order by the end of the

2  day tomorrow, then we're already in

3  violation.  That's just one example, your

4  Honor.

5                 THE COURT:  Well, let's --

6  let's get reasonable.  I mean --

7                 MR. DEMARCO:  Well --

8                 THE COURT:  Both sides.

9                 MR. DEMARCO:  -- we've tried

10  very hard to be reasonable for about the last

11  eight months.

12                 THE COURT:  Okay.  But --

13                 MR. DEMARCO:  This is our

14  second time before the Court.

15                 THE COURT:  -- now we're close

16  to it, so --

17                 MR. WATTANAKER:  But I haven't

18  had an opportunity to be heard on any of

19  this.

20                 THE COURT:  I'll hear you.  Go

21  ahead.

22                 MR. WATTANAKER:  Well, what

23  would the Court like to know?

24                 We -- we've reached an

25  agreement.  We had a motion to compel

1    pursuant to an exceptionally broad subpoena

2    that was filed.  It's true it was filed in --

3    we were served in October 2005, I believe it

4    was the 27th.  We timely filed our

5    objections.  We placed the Court, we placed

6    Mr. DeMarco, we placed everybody on notice,

7    we believe, that the documents requested --

8    that the subpoena as it was originally

9    written was unduly broad and overly

10   burdensome and they hadn't satisfied their

11   affirmative obligation to Rule 45 to take

12   reasonable steps to mitigate an undue burden

13   on a nonparty that NHIC is.

14              There are 27 discrete

15   categories of documents that were -- that

16   were requested, covering 130 subject drugs

17   dating back to 1998.  I would like to point

18   out while I'm on that point, two of the

19   points for information that are requested in

20   this agreement date back to 1991.  So I would

21   certainly ask the Court to strike any

22   requests that exceed what was originally

23   requested in the underlying subpoena.

24              THE COURT:  Can you go along

25   with that?

105

1          MR. DEMARCO:  No, your Honor.
2   We've had -- what happened was Blue
3   Cross/Blue Shield transferred, sold their
4   business NHIC and they have, NHIC has all the
5   documents that we need to properly defend
6   ourselves in this case.  They were not the
7   reimbursement providers from '91 and '98, but
8   they have all the documents, which is why the
9   last time we were here, we were able to
10  strike a very reasonable agreement with Blue
11  Cross, with Mr. Coco who was here a minute
12  ago.
13          Mr. Coco, gave us a
14  declaration describing in some -- in some
15  detail, certainly agreeable with us, that
16  they didn't have what they didn't have, so
17  they transferred it all to them.
18          This has been a constant
19  quest, and I don't want to make more out of
20  it than it really is, but it's a constant
21  quest.  We've had people on this for the last
22  eight months.  It's been a dance without
23  music.  It's back and forth, letter writing,
24  e-mailing and it's one excuse after the next.
25  That's why we're here, asking for the Court's

106

1   assistance.

2                We've got to have an order.

3   They're not going to produce what we're

4   looking for without an order.  He wants more

5   time and it's fine.  Close of business

6   tomorrow is enough time.  We will submit a

7   proposed order.  If we can agree to something

8   before the close of business tomorrow, then

9   fine.  But quite frankly, the credibility of

10  NHIC in this case is very, very seriously

11  questionable with us.  They have just not

12  come through for us and they're always giving

13  some reason.

14                Recently within the last hour

15  we heard -- I heard in the anteroom that he

16  needs to talk to his client and they need to

17  get permission from CMS, permission from the

18  federal government.  We know that that's not

19  required.  There are orders that protect

20  everyone in this case.  We heard for the

21  first time back in March we didn't comply

22  with the TUEY regulations, so we filed an

23  affidavit and we filed papers.  We complied

24  with the TUEY regulations.  We heard that for

25  the first time in March after having gone

1   through this exercise in the filing of these

2   papers back in October, so that, your Honor,

3   it seems to me that it's the -- it's the

4   excuse du jour that makes it right for them

5   to tell us why we can't have it.  Like I said

6   earlier, your Honor, it was either that we

7   don't have it, it's too much, or we don't

8   know where it is.

9                    THE COURT:  Well, I frankly

10  think rather than going back and forth -- and

11  I'll allow you the opportunity to respond --

12  but rather than going back and forth here,

13  I'd rather you spend the time today to see

14  what you can work out and then we'll deal

15  with the rest.

16                   MR. WATTANAKER:  That's all we

17  ask for, your Honor.  And if you decide -- if

18  we -- if we are not able to reach some kind

19  of accord, and like I said before and I'll

20  say it again, I believe this sets out some

21  kind of framework that we can agree to.  Then

22  I would just like the opportunity to discuss

23  the scope of this proposed settlement.

24                   THE COURT:  All right.

25                   MR. WATTANAKER:  Thank you,

108

1    your Honor.

2                    THE COURT:   And you're located

3    where?

4                    MR. WATTANAKER:   In Hartford,

5    Connecticut.

6                    THE COURT:   In Hartford, so

7    you're not so far away.

8                    MR. WATTANAKER:   But we can be

9    here as soon as you like.

10                    THE COURT:   All right.   All

11   right.   Then we stand in recess.

12                    (Whereupon, the above

13   proceedings were adjourned at 10:58 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

109

```
1                    CERTIFICATE
2        I hereby certify that the foregoing 108
3   pages are a complete and accurate transcript
4   of  the Hearing in Case No. 1:01-CV-12257-PBS
5   recorded on a compact disc marked "5/9/2006
6   Courtroom #25, USMJ Marianne B. Bowler." I
7   further certify that the compact disc sound
8   recording was transcribed by employees of the
9   word processing department of United
10  Reporters, Inc., under my direction.
11
12
13  _____
14  Margherita R. Cunningham
15  Registered Professional Reporter
16
17
18
19
20
21
22
23
24
25
```

Exhibit B



**Kirkpatrick & Lockhart Nicholson Graham LLP**

State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
617.261.3100
Fax 617.261.3175
www.klng.com

May 12, 2006

Michael DeMarco

617.951.9111
Fax:  617.261.3175
mdemarco@klng.com

<u>VIA CM/ECF</u>

The Honorable Magistrate Judge Marianne B. Bowler
United States District Court
For the District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 8420
Boston, MA  02210

Re:     In re Pharmaceutical Industry Average Wholesale Price Litigation MDL 1456

Dear Magistrate Judge Bowler:

I am writing in response to the letter from Benjamin Wattenmaker, counsel for National
Heritage Insurance Company dated May 11, 2006 and to address the form of proposed
order attached thereto (the "NHIC Proposed Order") [Docket Entry No. 2556].  The
Track Two Defendants request that the following points be considered in your decision
to enter the Track Two Defendants' Renewed Motion to Compel [Docket Entry No.
2162, as renewed by Docket Entry Nos. 2485/2498]:

1.     For all categories of documents, NHIC's production should be from 1991 forward.
As this court was made aware during the March 29, 2006 hearing on the Track Two
Defendants' original Motion to Compel and as set forth in the Declaration of Steven
Skwara, Esq. [Docket Entry No. 2248], NHIC possesses all of the Part B carrier records
from 1991 onward.

2.     NHIC should not be allowed to exclude documents contained in the boxes
currently stored in the Iron Mountain facility from its production.  See NHIC Proposed
Order at 2.

3.     The declaration provisions set forth in paragraphs 2(c) and 2(d) of NHIC's
Proposed Order are acceptable to the Track Two Defendants.  See NHIC Proposed
Order at 3-4.

4.     NHIC has agreed to produce its internal and external guidelines for processing
Part B reimbursements for physician administered drugs by June 5, 2006.  See NHIC

BOS-968643 v1 5544510-0903

**BOSTON • DALLAS • HARRISBURG • LONDON • LOS ANGELES • MIAMI • NEWARK • NEW YORK • PALO ALTO • PITTSBURGH • SAN FRANCISCO • WASHINGTON**



Kirkpatrick & Lockhart Nicholson Graham LLP

The Honorable Magistrate Judge Marianne B. Bowler
United States District Court
For the District of Massachusetts
May 12, 2006
Page 2

Proposed Order at 4 ¶¶ 3-4.  The Track Two Defendants request that such documents be produced by May 19, 2006.

5.      The Track Two Defendants object to NHIC's suggestion that it can discharge its obligation to produce items listed in the NHIC Proposed Order by supplying a declaration asserting undue burden.  See NHIC Proposed Order at 4.  The Track Two Defendants assert that declarations are only acceptable when NHIC claims it does not have or can not find the listed documents.

6.  The Track Two Defendants will pay for retrieval and copy costs; not for staff time of NHIC.  See NHIC Proposed Order at 5.  We are not aware of any other party in this litigation paying for "staff time."

7.  The Track Two Defendants request that NHIC's 30(b)(6) designees be produced on or before June 2, 2006.  See NHIC Proposed Order at 5.  The Track Two Defendants' Opposition to Class Certification is due June 15, 2006 and NHIC has previously offered dates in April, indicating that the designees are presumably ready and prepared to testify to their designated areas of inquiry.

8.  The Track Two Defendants will not pay NHIC's legal and paralegal costs for the April 11-14, 2006 document production.  See NHIC Proposed Order at 5.  NHIC acknowledges in its Memorandum in Support of its Motion to Quash that contract paralegals will review document for privilege for $37 per hour.  See Docket Entry No. 2530 at 9.  The Track Two Defendants previously agreed to pay $80 per hour and only for time spent by paralegal reviewing for attorney-client privilege.

9.  Finally, the Track Two Defendants request that their fees and costs incurred in prosecuting the original Motion to Compel and their Renewed Motion to Compel be levied against NHIC.  NHIC previously agreed to produce documents listed in the NHIC Proposed Order by April 2006, misrepresented that they had sent them on April 14, 2006, and refused to address these matters any further until the Track Two Defendants renewed the Motion to Compel.  The Track Two Defendants have been requesting the documents related to the 30(b)(6) areas of inquiry for weeks and now, only after the



Kirkpatrick & Lockhart Nicholson Graham LLP

The Honorable Magistrate Judge Marianne B. Bowler
United States District Court
For the District of Massachusetts
May 12, 2006
Page 3

Track Two Defendants renewed their Motion to Compel, is NHIC finally agreeing to produce responsive materials.  It is clear that NHIC only acts when faced with a Motion to Compel - the very conduct for which sanctions are awarded under the rules.

Very truly yours,

Michael DeMarco

MDM/AEB/gmf

cc:    Gary S. Starr, Esq. (by e-mail)
       Benjamin M. Wattenmaker, Esq. (via CM/ECF)

Exhibit C



**Kirkpatrick & Lockhart Nicholson Graham LLP**

State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
617.261.3100
Fax 617.261.3175
www.klng.com

April 28, 2006



Michael DeMarco

617.951.9111
Fax: 617.261.3175
mdemarco@klng.com

**By E-Mail and First-Class Mail**

Gary S. Starr, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919

Re:    **In re Pharmaceutical Industry Average Wholesale Price Litigation**
       **MDL 1456**

Dear Gary:

There is no dispute that NHIC agreed to produce the following materials by April 1, 2006:

- The contracts between BCBSMA and CMS to provide Part B carrier services for Massachusetts, and

- Any agreements between BCBSMA and NHIC concerning the transfer of the Part B carrier business from BCBSMA to NHIC in 1997-1998.

Indeed, in the transmittal letter that we received on April 17, 2006, your associate Ben Wattenmaker represented that these items were included among the 694 pages of documents delivered that day. Having examined this set of documents and locating nothing of this kind, however, we requested in my April 19, 2006 letter to you that NHIC identify these items by bates number, immediately produce them, or provide a declaration describing with particularity its efforts to identify and confirming its inability to produce these documents. In this regard, your April 21, 2006 letter is completely unresponsive.

Further, it can not be said that NHIC did not agree to produce the following by April 10, 2006:

- All claims manuals and any written guidelines for its Medicare Part B reimbursement payments to providers, and

- The identity of all sources utilized to determine AWPs for the subject drugs as set forth in our October 2005 subpoenas.

Our agreement of March 28, 2006, was memorialized in a series of emails exchanged late that evening and during the following morning. These items were listed in the 8:09 pm email from James Muehlberger to you and all of other participants in our negotiation. You agreed to the terms exchanged in these emails at the outset of the March 29, 2006 hearing.

BOS-963601 v1 5544510-0903

BOSTON • DALLAS • HARRISBURG • LONDON • LOS ANGELES • MIAMI • NEWARK • NEW YORK • PALO ALTO • PITTSBURGH • SAN FRANCISCO • WASHINGTON



**Kirkpatrick & Lockhart Nicholson Graham** LLP

Gary S. Starr, Esq.
April 28, 2006
Page 2


In your April 21, 2006 letter, you represented that NHIC did not make use of any "claims manuals," but that it did have both "external" and "internal" guidelines for its Medicare Part B reimbursement payments to providers. You further represented that the external guidelines were posted at www.medicarenhic.gov, but no such website appears to exist. If you meant www.medicarenhic.**com**, this response is not sufficient because it improperly attempts to shift the burden to us to search for and locate NHIC's external guidelines concerning Medicare Part B reimbursement for physician administered drugs. Having acknowledged that these external guidelines are readily available to NHIC, and given NHIC's prior agreement to produce these guidelines by April 10, 2006 (eighteen days ago), these documents need to be produced without any further delay.

As for the internal guidelines, to the extent that they are responsive to items 3, 7, 8, 9, 10, or 13 of the October 27, 2005 document subpoena, NHIC is obligated to identify and produce them. Given your representation that responsive materials are maintained by employees in their individual files or on their individual PCs, NHIC needs to instruct its employees to search for and identify the claim processing materials responsive to these document requests and, in turn, produce these documents to us.

Furthermore, your April 21, 2006 letter confuses the October 28, 2005, 30(b)(6) subpoena with the October 27, 2005 document subpoena. As I explained in my letter of April 19, 2006, NHIC's production of documents responsive to the areas of inquiry for which it has agreed to produce 30(b)(6) designees would be responsive, in part, to items 1-6, 15, 17-18, and 26-27 in the October 27, 2005 document subpoena and would include any and all Medicare Part B fee schedules for physician administered drugs. NHIC needs to identify and produce these documents without any further delay. We will reimburse NHIC for the costs of retrieving responsive records from its archives and for copying costs up to 10 cents per page.

Relatedly, while you represent that NHIC has agreed to produce the complete Iron Mountain index of the records for which it assumed custody and control as a result of the transfer of the Massachusetts Part B carrier business from BCBSMA, your representation that this index was created "almost eight years ago" is belied by the excerpt that you previously provided to us. This six-page excerpt states that it was generated on August 2, 2002 – less than four years ago. All indications are that the index does, in fact, exist, or that Iron Mountain could readily print another one and, given your agreement to produce it, the index should be delivered to us immediately.

Finally, we did in fact agree to specific hourly rates and caps on paralegal and attorney time related to the review of the BCBSMA cost center 9132 records. The proposed hourly rates and caps were discussed during an April 10, 2005 telephone conversation between Nick Mizell and Ben Wattenmaker and memorialized in my April 11, 2006 letter to you. We have since



**Kirkpatrick & Lockhart Nicholson Graham** LLP

Gary S. Starr, Esq.
April 28, 2006
Page 3

determined that contract paralegals are available for basic document and privilege review at the rate of $30-$35 per hour and therefore conclude that our agreement to pay up to $80 per hour was and remains fair and reasonable. Moreover, your paralegal inappropriately devoted hours of time reviewing documents for personally identifiable health information despite our repeated explanation to you that NHIC's document production would be subject to the protections of the Court's June 9, 2004 Protective Order Governing Confidential Health Information. Her review was to be solely concerned with identifying documents potentially subject to attorney-client privilege and we will not pay for time inappropriately devoted to reviewing the documents for any other information.

Please let us know by 10:00 am EDT, May 1, 2006, whether and when NHIC will produce the documents discussed above. We will otherwise deem our meet and confer obligations satisfied, renew our motion to compel and seek the remedies provided by Rules 37(a)(4) and 45(e) of the Federal Rules of Civil Procedure.

Yours sincerely,

Michael DeMarco

MDM/AEB/gmf

cc:   James P. Muehlberger, Esq.
      Nicholas P. Mizell, Esq.
      Michael D. Ricciuti, Esq.
      Aimée E. Bierman, Esq.
      Leslie M. Stafford, Esq.
      Andy J. Mao, Esq.
      Benjamin M. Wattenmaker, Esq.