# Exhibit D

## Individual Long Form Notice to Consumers

United States District Court – District of Massachusetts

# If You Made a Co-Payment Through Medicare Part B or Made a Percentage Co-Payment in Massachusetts, For Any of the Drugs Listed Below,

## A Class Action Lawsuit May Affect Your Rights.

*The District Court has approved the text of this Notice and authorized its printing and publication.  It is not from a lawyer. You are not being sued.*

➢ A lawsuit claims that certain drug companies reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs.  The reported AWPs are used to set prescription drug prices that are paid by Medicare, consumers and insurers.  The lawsuit also asks the Court to award money damages to some people who paid or made co-payments for the drugs.

➢ The Court has said that the lawsuit can go forward on behalf of a "Class" or group of people that made co-payments for certain drugs ("Covered Drugs") manufactured and marketed by Defendants AstraZeneca, Bristol-Myers Squibb Group, Johnson & Johnson Group and Schering Plough Group.  Certain dosages of the following Covered Drugs are included: **Albuterol, Blenoxane, Coumadin, Cytoxan, Etopophos, Integrilin, Intron A, Paraplatin, Perphenazine, Procrit, Proventil, Remicade, Rubex, Taxol, Temodar, VePesid and Zoladex.**

➢ The Court has said there are two different Classes for people who made co-payments for certain drugs between January 1, 1991 and December 31, 2004 and January 1, 1991 and June 1, 2006: a Medicare Part B Class, and a Massachusetts Class.  See Questions 8 and 10 to see if you are a Class Member in either or both Classes.

➢ A series of trials will begin on September 25, 2006 to determine whether the claims in this lawsuit against the Defendants listed above are true.

This Notice explains what your rights and choices are in each Class.  You could be a member of both Classes depending upon what Covered Dugs you purchased and where you live. *You must make a choice now regarding your rights in both Classes.  Please read all of this Notice carefully*.

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

## A SUMMARY OF YOUR RIGHTS AND CHOICES:

| You May: | | Due Date |
|---|---|---|
| **Do Nothing** | ***Stay in the lawsuit and wait for the result.*** By doing nothing, you keep the possibility of getting money that could come from a trial or a settlement. But you give up the right to sue the Defendants yourself about the claims in the lawsuit. | |
| **Exclude Yourself** | ***Get out of the Class.*** You can write and ask to get out of the lawsuit. If any money or benefits are awarded later in a trial or settlement, you can't get these benefits, but you keep the right to sue the drug companies at your own expense about the claims in the lawsuit. **See Questions 12 and 13.** | ***Postmarked by*** **September 15, 2006** |
| **Appear In The Lawsuit** | ***Participate in the lawsuit on your own or through a lawyer.*** If you don't exclude yourself, you can appear and speak in the lawsuit on your own or through your own lawyer. (Class Counsel has been appointed to represent you at no cost.) **See Questions 15 and 16.** | |

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

-2-

# WHAT THIS NOTICE CONTAINS

**Basic Information ..............................................**          Page
   1.  Why did I get this Notice?
   2.  What is this lawsuit about?
   3.  Why is this a class action?

**The Claims In The Lawsuit .................................**          Page
   4.  What does the lawsuit claim?
   5.  What do the Defendants say about the lawsuit?
   6.  Has the Court decided who is right in the lawsuit?

**What are the Classes and Who are Class Members?.........**          Page
   7.  How many Classes are there?
   8.  Am I part of the Medicare Part B Class?
   9.  How do I know if my co-payment was under Medicare Part B?
  10.  Am I part of the Massachusetts Class?

**What are the Covered Drugs........................................**          Page
  11.  How can I tell if the drug I took is included as a Covered Drug?

**Your Rights – Getting Out of the Class Action......................**          Page
  12.  Can I get out of the lawsuit and the Class?
  13.  How do I exclude myself from the Classes?
  14.  If I exclude myself, can I get any money or benefits from the lawsuit?

**Your Rights – Appearing In The Lawsuit..............**          Page
  15.  Can I appear or speak in this lawsuit?
  16.  How do I appear in this lawsuit?

**If You Do Nothing.........................................**          Page
  17.  What happens if I don't do anything at all?

**The Lawyers Representing You ............................**          Page
  18.  Do I have a lawyer in this lawsuit?
  19.  Who pays the lawyers and how much will they be paid?
  20.  Should I get my own lawyer?

**Getting More Information .........................................**          Page
  21.  Are more details and information available?

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

# BASIC INFORMATION

## 1. Why did I get this Notice?

A lawsuit has been filed against several drug companies on behalf of people who paid for one or more of the drugs – called "Covered Drugs" – see Question 11. You received this Notice because you may have made a co-payment for a Covered Drug between either January 1, 1991 and December 31, 2004 or January 1, 1991 and  June 1, 2006. If so, the lawsuit may affect you.

You have legal rights and choices to make before a trial will decide whether the claims being made against the Defendant drug companies on your behalf are true. The first of a series of trials begins on September 25, 2006. **You must make you choice whether to remain in the class or exclude yourself before September 15, 2006.**

This Notice explains:

- What the lawsuit is about, and why it is a class action lawsuit.
- What the lawsuit claims and what the drug companies say about the claims.
- Who is affected by the lawsuit.
- Who represents you in the lawsuit.
- What your legal rights and choices are.
- How and by when you need to act.

## 2. What is this lawsuit about?

Defendant drug companies either report the average wholesale price ("AWP") of each drug they make to trade publications or provide those publications with information that causes the publications to publish an AWP for each of their drugs. The published AWP of a drug is used to set the price that consumers making percentage co-payments, Medicare and insurance companies will pay for the drug.  The lawsuit claims that Medicare, private insurers and consumers paid more than they should have paid for the Covered Drugs because drug companies reported false and inflated AWPs concerning these drugs.

The Court in charge of the lawsuit is the United States District Court for the District of Massachusetts.  The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS.  The people who sued are called the Plaintiffs.  The drug companies they sued are called the Defendants.

The lawsuit includes as many as 42 Defendants.  At this time, the Court has certified the first phase of the lawsuit to begin with a trial of the claims against the following Defendants in the following order:

- AstraZeneca (which includes: AstraZeneca, PLC; AstraZeneca Pharmaceuticals L.P.; and AstraZeneca U.S.),
- The Bristol-Myers Squibb Group (which includes: Bristol-Myers Squibb Co.; Oncology Therapeutics Network Corp.; and Apothecon, Inc.),
- The Johnson & Johnson Group (which includes: Johnson & Johnson; Centocor, Inc.; Ortho Biotech; McNeil-PPC, Inc.; and Janssen Pharmaceutica Products, L.P.), and

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

- The <u>Schering Plough</u> Group (which includes Schering-Plough Corp. and Warrick Pharmaceuticals Corp.).

Whenever you see the word "Defendants" in this Notice, it includes only the companies listed above: AstraZeneca, Bristol-Myers Squibb Group, Johnson & Johnson Group and the Schering Plough Group.

### 3.  Why is this a class action?

In a class action lawsuit, one or more people called "class representatives" sue on behalf of people who have similar claims.  The people together are a "class" or "class members."  The court must determine if it will allow the lawsuit to proceed as a class action.  If it does, a trial of the claims then decides the lawsuit for everyone in the class.  The Court in this lawsuit decided it could be a class action because there are thousands of people that are affected, and one lawsuit would be better than many individual lawsuits.

## THE CLAIMS IN THE LAWSUIT

### 4.  What does the lawsuit claim?

The lawsuit claims that the Defendants violated various state consumer protection laws because they provided false and inflated AWPs on certain types of outpatient drugs, including the Covered Drugs.  The lawsuit also claims that the Defendants reported inflated AWPs with the knowledge that Medicare Part B and private insurers rely on reported AWPs to determine the prices they will reimburse doctors for those drugs.  The lawsuit says that as a result of the inflated AWPs, people who made co-payments under Medicare Part B or a percentage co-payment under private insurance for these drugs paid more than they should have.  The lawsuit asks the Court to award money damages to those people.

### 5.  What do the Defendants say about the lawsuit?

The Defendants say they didn't do anything wrong.  Defendants deny that they are not responsible for any of the claims made in the lawsuit.

### 6.  Has the Court decided who is right in the lawsuit?

No.  The Court hasn't decided who is right in the lawsuit yet.  Much more must occur before the Court holds a trial, including notifying Class Members.  By deciding now that the lawsuit can continue as a class action, the Court isn't saying who will win.

## WHAT ARE THE CLASSES AND WHO ARE CLASS MEMBERS?

*To know if you're affected by this lawsuit, you first should determine if you're a member of the Class.*

### 7. How many classes are there?

The Court has said there are two different Classes for consumers who purchased Covered Drugs, a Medicare Part B Class and a Massachusetts Class.

You could be a member of one or both Classes if you made a co-payment for a drug that is listed in the chart in Question 11 **and**, you meet the other requirements that are described below.  Before you see if you meet these other requirements, you should first determine if you took one or more of the Covered Drugs.

## 8.  Am I part of the Medicare Part B Class?

You're a member of the Medicare Part B Class and part of this lawsuit if you are a resident of any state in the U.S. (except the states listed below), **and** between January 1, 1991 and January 1, 2005, you paid (or are currently obligated to pay) a co-payment under Medicare Part B for any of the Covered Drugs that are listed under these 3 Defendants:

- AstraZenenca,
- The Bristol-Myers Squibb Group,
- The Johnson & Johnson Group, or
- Schering Plough Group.

You are **not** a member of the Medicare Part B Class if you resided in Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana or Virginia at the time you made the co-payment.  The Court excluded persons residing in these states from the Medicare Part B Class because those states' consumer protection laws don't allow class actions.

You are also **not** part of the Medicare Part B Class if:

(a)  You were fully reimbursed for the co-payment you made (for example, your MediGap or other private insurer reimbursed you the full amount); *or*

(b)  Your co-payment was a flat amount instead of a percentage of the total charge (for example, your MediGap or other private insurer paid for all of the co-payment except for a flat amount such as $10 or $20 that you had to pay). If your co-payment is a set dollar amount and does not differ with the price of the drug, your co-payment is a flat co-payment and **not** a percentage co-payment and you are not a member of the class.

## 9.  How do I know if my co-payment was under Medicare Part B?

If you are 65 or older, or are younger than 65 but receive social security benefits because of a disability, you are entitled to Medicare benefits.  Medicare Part A is the primary coverage for your health care costs when you are admitted as a patient in a hospital, and enrollment is generally automatic at age 65.

Medicare Part B helps to pay primarily for outpatient services such as care given in your doctor's office, outpatient hospital care, and physical therapy.  Medicare Part B also has a limited drug benefit.  For drugs that are covered under Part B, Medicare pays 80% of the drug cost, and you are responsible for paying the other 20% (which is your co-payment).

Generally, the drugs covered under Medicare Part B are ones that are administered by your doctor, such as cancer treatment drugs that are given through injections or an IV.  But Part B also covers some drugs that are self-administered (ones that you take yourself).  Those

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

-6-

include some oral anti-cancer drugs in pill form, some pills prescribed to help with nausea or anemia in connection with chemotherapy and drugs provided with some durable medical equipment, such as inhalation drugs used with a nebulizer (a compressed air machine).

Like Part A, Medicare Part B coverage is also automatic, but you have the option to decline it. You pay a monthly premium for Medicare Part B coverage (which is typically deducted from your social security check). You can tell if you're enrolled in Medicare Part B by looking at your Medicare insurance card. It will say if you are enrolled in Part B.

If you took one of the Covered Drugs when you were an inpatient in the hospital, you did not make a co-payment under Medicare Part B. However, if a Covered Drug was prescribed or administered by your doctor as a part of an outpatient treatment at a clinic, and you are enrolled in Medicare Part B, you may have been billed a co-payment of 20% of the drug cost <u>if Medicare is your primary payer</u>.

For the vast majority of people enrolled in Medicare, Medicare is the primary payer. Medicare is your secondary payer only if: (a) you or your spouse have continued to work after age 65 and have accepted the employer's health care insurance, or (b) you are a disabled person under 65 and have large group health plan coverage through your current job or the job of a family member. Unless either of these situations applies to you, your co-payment for a Covered Drug would have been under Medicare Part B.

### 10. Am I part of the Massachusetts Class?

Like the Medicare Part B Class, you must have paid a percentage co-payment for a Covered Drug to be part of the Massachusetts. But this Class is limited to people who paid a percentage co-payment for the Covered Drug in the state of Massachusetts. <u>You don't have to have paid for the drug</u> under Medicare Part B – you could have paid a percentage co-payment for the Covered Drug under your private health insurance plan.

You're a member of the Massachusetts Class and part of this lawsuit if, between January 1, 1991 and June 1, 2006:

- You paid (or are currently obligated to pay) a percentage co-payment for any Covered Drug in the state of Massachusetts.

You're included in the Massachusetts Class if your payment was a percentage co-payment. You're **not** included in the Class if you paid a fixed or flat co-payment. A fixed or flat co-payment is one that is the same no matter how much the drug costs. For example, if you pay $10 for any generic drug, and $30 for any brand name drug, you have a flat co-pay. A percentage co-pay is one that is based on the cost of the drug (for example, if the drug costs $50, and your co-payment is 25% of the drug cost, you pay $12.50).

## WHAT ARE THE COVERED DRUGS?

### 11. How can I tell if the drug I took is included as a Covered Drug?

Most, but not all, of the Covered Drugs are ones that a doctor administers to you in the form of an injection – either through a shot, an IV, or an implant beneath the skin. A few are

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

-7-

drugs that you take yourself, such as the pill forms of Cytoxan, VePesid, Alkeran and Temodar – all cancer therapy drugs. Most of the Covered Drugs are used for the treatment of various types of leukemia and cancers of the breast, ovaries, cervix, prostrate, testes, lung, brain, and bone marrow. Other Covered Drugs are used to treat nausea or anemia resulting from cancer therapy, asthma, migraines, heart problems, leukemia, herpes, psychoses, or rheumatoid arthritis.

The Covered Drugs in the Class, by Defendant, are listed below:

## AstraZeneca
*AstraZeneca, AstraZeneca Pharmaceuticals and AstraZeneca U.S.*

| Drug Name | Treatment | Dosages |
|-----------|-----------|---------|
| **Zoladex** | Prostrate and breast cancer; Endometriosis | Implant: 3.6mg<br>Injection (3 month): 10.8mg<br>Kit for injection: 10.8mg syringe; 3.6mg syringe |

## Bristol-Myers Squibb Group
*Bristol-Myers Squibb, Oncology Therapeutics Network and Apothecon*

| Drug Name | Treatment | Dosages |
|-----------|-----------|---------|
| **Blenoxane** | Cancer of cervix and uterus, head and neck, or testicle and penile cancer; Hodgkin's disease | Powder for Injection: 15 Unit Vial; 30 Unit Vial |
| **Coumadin** | Thrombosis (blood clots); Atrial fibrillation (irregular, rapid heart beat); Heart attack | Injection: 5mg vial |
| **Cytoxan** | Cancer (primarily breast, ovarian); Leukemia; Nephrotic syndrome (kidney disease) | Injection: 100mg; 200 mg; 500mg; 1gm; 1x2gm;<br><br>Lyophilized Injection: 100mg; 200mg; 500mg<br>Powder for Injection: 500mg; 1gm; 2gm<br>Tablets: 25mg; 50 mg |
| **Etopophos** | Lung and testicular cancer; Cancer of the lymph glands; Leukemia | Powder for Injection: 100mg |
| **Paraplatin** | Ovarian cancer | Powder for Injection: 50mg; 150mg; 450mg |

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

-8-

| | | |
|---|---|---|
| **Rubex** | Ovarian and breast cancer; Cancers of the bone, stomach, lung, bladder and thyroid; Leukemia | Powder for Injection: 10mg; 50mg; 100mg<br>Powder for Injection (Under Immunex label): 10mg; 50mg; 100mg |
| **Taxol** | Ovarian and breast cancer; Lung cancer; Kaposi's sarcoma | Injection: 30mg; 30mg/5ml; 300mg/50ml<br>Injection Solution: 100mg; 100mg/16.7ml |
| **VePesid** | Testicular cancer; Small cell lung cancer | Injection Solution: 100mg; 150mg; 500mg; 1gm<br>Capsules: 500mg |

## Johnson & Johnson Group
*Johnson & Johnson, Centocor, Ortho Biotech, McNeil-PPC and Janssen Pharmaceutica Products*

| Drug Name | Treatment | Dosages |
|---|---|---|
| **Remicade** | Rheumatoid arthritis; Crohn's disease; Ulcerative colitis | Intravenous Injection: 100 mg vial |
| **Procit** | Anemia (especially anemia due to chemotherapy or HIV) | Solution for Injection: 2,000 Unit/ml; 3,000 Unit/ml; 4,000 Unit/ml; 10,000 Unit/ml; 20,000 Unit/ml; 40,000 Unit/ml |

## Schering-Plough Group
*Schering-Plough and Warrick Pharmaceuticals*

| Drug Name | Treatment | Dosages |
|---|---|---|
| **Albuterol** | Asthma, chronic bronchitis, emphysema, and other lung diseases | Inhalation Solution: XX<br>Sulfate Inhalation Solution: XX |
| **Integrilin** | Chest pain and heart attack. May also be given during heart surgery | Intravenous Injection: 0.75mg/ml; 2mg/ml |

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

-9-

| Intron A | Melanoma, leukemia, hepatitis B and C, lymphoma, Kaposi's sarcoma | <u>Solution for Injection:</u> 10 million, 18 million, 30 million, 60 million multidose pen; 3 million, 5 million, 1 0million, 18 million, 25 million unit HSA-Free vials <u>Powder for Injection:</u> 3 million, 5 million, 10 million, 18 million, 25 million, 50 million unit vials |
|----------|------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Perphenazine | Psychiatric disorders; Severe nausea and vomiting | <u>Tablets:</u> 2mg; 4mg; 8mg; 16mg |
| Proventil | Asthma, bronchitis, and emphysema. | <u>Inhalation Solution:</u> 5mg/ml; .83mg/ml |
| Temodar | Cancerous brain tumors | <u>Capsules:</u> 5mg; 20mg; 100mg; 250mg |

There may be other dosage amounts and forms for some of these drugs in this litigation that are <u>not</u> included.

Please carefully review the list of Covered Drugs. If your doctor gave you or prescribed one or more of these drugs in the listed forms and dosages during the time periods listed in Questions 8 and 10 you might be a member of the Medicare Part B Class or Massachusetts Class, or both. To determine which Class you fit into, please read Questions 8 and 10.

## YOUR RIGHTS – GETTING OUT OF THE CLASS ACTION

### 12. Can I get out of the lawsuit and the Class?
If you don't want money or benefits from the Class (if any are ever awarded) and you want to keep the right to sue the Defendants about the same claims on your own, you must take steps to get out of the Class. This is called excluding yourself. By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against the Defendants about the claims in this lawsuit.

### 13. How do I exclude myself from the Classes?
To exclude yourself from either or both of the Classes, you must send a letter signed by you that includes all of the following:

- Your name, address, and telephone number;
- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS;
- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

- A statement that you want to be excluded from either or both the Classes, and which Class(es) you want to be excluded from.

Your exclusion letter must be mailed first class, **postmarked on or before September 15, 2006,** to:

> AWP Litigation Administrator
> P.O. Box xxx
> City, State Zip code

Please remember that you can't exclude yourself by phone or by sending an email.

### 14.  If I exclude myself, can I get any money or benefits from the lawsuit?

No.  If you exclude yourself from either or both of the Classes, you will not get money or benefits from the Class(es) if any are obtained from a settlement or trial of the lawsuit involving the remaining Defendants.  If you exclude yourself, you're no longer part of the Class, and nothing that happens in the lawsuit affects you.  But you can sue or be part of a different lawsuit against the Defendants about the claims in this case.

## YOUR RIGHTS – APPEARING IN THE LAWSUIT

### 15.  Can I appear or speak in this lawsuit?

As long as you don't exclude yourself, you can (but do not have to) participate and speak for yourself in this lawsuit through your own lawyer.  This is called making an appearance. Remember that you will have to pay for the lawyer yourself.  If you appear in the lawsuit, you are still a member of the Class and can share in any benefits the Class might receive as a result of settlement or a trial.

### 16.  How do I appear in this lawsuit?

If you want your own lawyer instead of Class Counsel to participate or speak for you in this lawsuit, your lawyer must give the Court a paper that is called a Notice of Appearance.  The Notice of Appearance should include the name and number of the lawsuit, and state that you wish to enter an appearance in the lawsuit.

The Notice of Appearance must be filed with the Court at the following address:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

Your Notice of Appearance should be filed with the Court before the beginning of the series of trials of each Defendant in this lawsuit.  The first trial is currently scheduled to start on September 25, 2006.

*Questions? Call toll free 1-800-000-0000, or visit www.AWPlitigation.net.*

# IF YOU DO NOTHING

### 17.   What happens if I don't do anything at all?
If you do nothing, you stay in the Class and will be represented by Class Counsel.  You also keep the possibility of getting money or benefits from the lawsuit if the Class wins at trial or settles the lawsuit.  By staying in the Class, all of the Court's orders in the lawsuit will apply to you, including any decision on the trial.  Please remember that staying in the Class means you can't sue the Defendants yourself about any of the claims in this lawsuit.

# THE LAWYERS REPRESENTING YOU

### 18.  Do I have a lawyer in this lawsuit?
Yes.  The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hagens-berman.com
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
   *and*
One Main Street, 4th Floor
Cambridge, MA 02142

Mark H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman & Kodroff, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Toriseva Wallace LLP
www.wtwlaw.us
One North LaSalle St., Suite 2000
Chicago, IL 60602

Kline & Specter, PC
www.klinespecter.com
The Nineteenth Floor
1525 Locust Street
Philadelphia, PA 19102

These lawyers are called Class Counsel.  You won't be charged for these lawyers.  More information about Class Counsel and their experience is available at the Web sites listed above.

### 19.   Who pays the lawyers and how much will they be paid?
If Class Counsel obtains money or benefits for the Class through a settlement or a successful trial, they will ask the Court for payment of attorneys' fees and expenses out of the total amount of money and benefits obtained.  <u>The Court must approve the amount of attorneys' fees and expenses.</u>  If Class Counsel doesn't obtain any money or benefits for the Class, they won't receive or ask to receive any attorneys' fees or reimbursement of expenses.

### 20.   Should I get my own lawyer?
You don't need to hire your own lawyer because Class Counsel works for you.  But, if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (*see* Question 16 to find out how to submit a Notice of Appearance).  If you

hire a lawyer to appear for you in the lawsuit, you will have to pay the lawyer yourself

## GETTING MORE INFORMATION

### 21.   Are more details and information available?

This Notice is just a summary of the lawsuit. More details are in the Complaint filed by Class Counsel, and the other legal documents that have been filed with the Court in this lawsuit. You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210.   Copies of some of the important   documents,   like   the   Complaint   are   also   available   on-line   at www.AWPlitigation.net.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the AWP Litigation Web site at www.AWPitigation.net
- Call toll free 1-xxx-xxx-xxxx (hearing impaired call 1-yyy-yyy-yyyy)
- Write to: AWP Litigation Administrator, PO Box xxxx, City, State Zip code.

*By Order of the United States District Court, District of Massachusetts.*

Date: _____          _____

The Honorable Judge Patti B. Saris

# Exhibit E

# Form of Notice From Federal Judicial Center

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF STATE

# If you were ever exposed to asbestos in ABC Corporation products, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide $270 million to pay claims from those who are currently suffering from an asbestos-related disease, as well as those exposed but not sick, who need medical monitoring.

- To qualify, you must have been exposed to asbestos in ABC Corporation products. Your exposure may have happened in different ways:

  o **Homeowners may have had ABC's Xinsulation in their attics or walls.**

  o **Workers may have installed ABC building products like Xbestos.**

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against ABC, about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCsettlement.com

PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITAR NUESTRO WEBSITE

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .................................................... PAGE 3
1. Why did I get this notice package?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ......................................... PAGE 4
5. How do I know if I am part of the settlement?
6. Which ABC products are included?
7. If I was exposed but do not have any disease, am I included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET** .................. PAGE 5
9. What does the settlement provide?
10. What can I get from the settlement?
11. What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** ...... PAGE 7
12. How can I get a payment?
13. When would I get my payment?
14. What am I giving up to get a payment or stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................. PAGE 7
15. How do I get out of the settlement?
16. If I don't exclude myself, can I sue ABC for the same thing later?
17. If I exclude myself, can I get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................ PAGE 8
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................... PAGE 8
20. How do I tell the Court that I don't like the settlement?
21. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ................................. PAGE 9
22. When and where will the Court decide whether to approve the settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** ................................................ PAGE 10
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ...................................... PAGE 10
26. Are there more details about the settlement?
27. How do I get more information?

QUESTIONS?  CALL 1-800-000-0000 TOLL FREE, OR VISIT ABCSETTLEMENT.COM

# BASIC INFORMATION

## 1. Why did I get this notice package?

You or someone in your family may have owned or lived in a home or other property with Xinsulation. Or you or a family member may have worked around Xbestos, Xinsulation, or other asbestos-containing products made or sold by ABC Corporation.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of the settlement.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of State, and the case is known as *Smith et al v. ABC Corporation*, Case No. CV-00-1234. The people who sued are called Plaintiffs, and the company they sued, ABC, is called the Defendant.

## 2. What is this lawsuit about?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The lawsuit claimed that exposure increased the risk of developing asbestosis, mesothelioma, lung cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies they did anything wrong.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case Frederick Smith), sue on behalf of people who have similar claims. All these people are a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Judge Jane Jones is in charge of this class action.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representative and the attorneys think the settlement is best for everyone who was injured or exposed.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

## 5. How do I know if I am part of the settlement?

Judge Jones decided that everyone who fits this description is a Class Member: *All people exposed to asbestos fibers in any ABC Corporation product any time before Month 00, 0000.*

## 6. Which ABC products are included?

If you're not sure whether you were exposed to ABC products, look at these pictures and captions:

### DID YOU WORK AROUND OR INSTALL ABC BUILDING PRODUCTS?

ABC made Xbestos, Xinsulation, and other building products called Ybestos and Zbestos. These products were sprayed on during the construction of high-rise office buildings and many other structures and homes. You may have been exposed to asbestos by either installing the products directly, or simply by working at the site. You may have brought asbestos fibers home on your clothing, exposing your family.



### DID YOUR HOME EVER HAVE XINSULATION?

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. It's shaped like a small cotton ball, varying from silver-blue to gray-black. It is layered with a glittery, puffy appearance that may have a translucent or brownish hue. After years in the attic, the granules may darken to black or gray. **Be careful not to disturb it.** It may be underneath other types of insulation. The settlement provides for someone to come and test it for you, if you call and ask.



**Did a family member ever work around ABC's asbestos products? He or she may be included.**

**Did your home or property ever have Xinsulation? You're included even if you don't live there anymore.**

## 7.  If I was exposed but do not have any disease, am I included?

Yes.  You don't have to have a disease to be part of this settlement.  The Class includes all those who have certain asbestos-related diseases.  The Class also includes those who were exposed but are not currently suffering from an asbestos-related disease and who may need medical monitoring—even those who haven't visited a doctor.  The settlement payments are different for sick and for healthy people.

## 8.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help.  You can call 1-800-000-0000 and ask for an independent inspector to come see if your insulation is Xinsulation.  **Some government agencies warn that the asbestos in Xinsulation is dangerous to your health, so do not disturb it.**  For more information, you can also visit the website, www.ABCsettlement.com.  Or you can fill out and return the claim form described on page 7, in question 12, to see if you qualify.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 9.  What does the settlement provide?

ABC has agreed to create an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and another $70 million Medical Monitoring Fund for assessing the health of those who were exposed but not currently suffering from an asbestos-related disease.  ABC will also pay claims for future injuries among Class Members already exposed who request medical monitoring.

## 10.  What can I get from the settlement?

### ARE YOU INJURED?

If you have been diagnosed with an asbestos-related disease, you may be eligible for payment from the Injury Compensation Fund.  These are the payment amounts for specific asbestos-related diseases:

| INJURY COMPENSATION FUND PAYMENTS | | | |
|---|---|---|---|
| Disease | Minimum | Maximum | Average |
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

If, after everyone sends in claim forms, the injury compensation claims total more than $200 million, the payments will be reduced. If the injury compensation claims are less than $200 million, the payments will be increased.

Your payment will be based on how severe your disease is, your medical expenses, and your lost earnings. To get the minimum payment in the table above, you do not have to detail your expenses or lost earnings. To get larger amounts up to the maximum amount, you'll have to prove your medical expenses and document your lost earnings.

## WERE YOU EXPOSED TO ASBESTOS?  HAVE YOU BEEN TESTED?

If you were exposed to one or more of ABC's asbestos-containing products, but you are *not* currently suffering from an asbestos-related disease, you may be eligible for payment from the Medical Monitoring Fund according to this table:

| MEDICAL MONITORING FUND PAYMENTS | | |
|---|---|---|
| **Exposure to Asbestos** | **Medical Expenses** | **Payment** |
| You have evidence of exposure to asbestos in an ABC product. | You *do* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 or your actual expenses, whichever is greater. |
| | You *don't* have evidence of your medical expenses to test for an asbestos-related disease. | $1,000 |

If, after everyone sends in claim forms, the medical monitoring claims total more than $70 million, the payments will be reduced. If the total medical monitoring claims are less than $70 million, the payments will be increased.

### 11.  What if I get sick, or I am exposed to asbestos in ABC products, in the future?

**If you were exposed to asbestos in ABC products before Month 00, 0000, you must send in a claim form now, or you will not be able to get a payment under this settlement for injuries that develop in the future.** If you do send a claim form now, and in the future you develop symptoms of the diseases listed in the table on page 5, in question 10, you will be eligible for a payment as shown in that table.

If, in the future, you determine that you need medical monitoring from exposure that took place *after* Month 00, 0000, then you are not bound by this settlement for those claims. This means you can pursue your claims separately from this settlement with your own lawyer.

# HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

## 12. How can I get a payment?

To qualify for payment, you must send in a claim form.  A claim form is attached to this Notice.  You can also get a claim form on the Internet at www.ABCsettlement.com.  Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than **Month 00, 0000**.

For an injury compensation claim, you'll have to send in a statement from a doctor with a description of your current medical condition, including a diagnosis of one of the types of diseases in the table on page 5, in question 10.  For a medical monitoring claim, you have to show that you were exposed to ABC products.  You may be asked for additional documentation.  Follow all the instructions on the claim form.

## 13. When would I get my payment?

The Court will hold a hearing on Month 00, 0000, to decide whether to approve the settlement.  If Judge Jones approves the settlement after that, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who sends in a claim form will be informed of the progress of the settlement.  Please be patient.

## 14. What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against ABC about the legal issues in *this* case.  It also means that all of the Court's orders will apply to you and legally bind you.  If you sign the claim form, you will agree to a "Release of Claims," attached to the claim form, which describes exactly the legal claims that you give up if you get settlement benefits.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want keep the right to sue or continue to sue ABC, on your own, about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

## 15. How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Smith v. ABC*.  Be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request postmarked no later than **Month 00, 0000**, to:

> ABC Exclusions
> P.O. Box 0000
> City, ST 00000-0000

You can't exclude yourself on the phone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) ABC in the future.

**16.  If I don't exclude myself, can I sue ABC for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue ABC for the claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is **Month 00, 0000**.

**17.  If I exclude myself, can I get money from this settlement?**

No. If you exclude yourself, do not send in a claim form to ask for any money. But, you may sue, continue to sue, or be part of a different lawsuit against ABC.

## THE LAWYERS REPRESENTING YOU

**18.  Do I have a lawyer in this case?**

The Court asked the law firms of Lawfirm One LLP, of City, ST, and Lawfirm Two P.C., of City, ST, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**19.  How will the lawyers be paid?**

Class Counsel will ask the Court for attorneys' fees and expenses up to $23,990,000, and a payment of $10,000 to the Class Representative, Frederick Smith. The Court may award less than these amounts. ABC will separately pay the fees and expenses that the Court awards. These amounts will not come out of the funds for payments to Class Members. ABC has agreed not to oppose these fees and expenses. ABC will also separately pay the costs to administer the settlement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

**20.  How do I tell the Court that I don't like the settlement?**

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object,

you must send a letter saying that you object to *Smith v. ABC*. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. Mail the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court | Herman Green | Mary Jones |
| United States District Court for the | Lawfirm One LLP | Defensefirm LLP |
| District of State | 100 Main Street | 200 Broad Street |
| 100 Court Street | Suite 100 | Suite 200 |
| City, ST 00000-0000 | City, ST 00000-0000 | City ST, 00000-0000 |

### 21. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 10:00 a.m. on Tuesday, Month 00, 0000, at the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom One. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Jones will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

### 23. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Jones may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 24. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Smith v. ABC*." Be sure to include

your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than **Month 00, 0000,** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses on page 9, in question 20.  You cannot speak at the hearing if you excluded yourself.

# IF YOU DO NOTHING

### 25.  What happens if I do nothing at all?

If you do nothing, you'll get no money from this settlement.  But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against ABC about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

### 26.  Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by writing to Herman Green, Lawfirm One LLP, 100 Main Street, Suite 100, City, ST 00000-0000, or by visiting www.ABCsettlement.com.

### 27.  How do I get more information?

You can call 1-800-000-0000 toll free; write to ABC Settlement, P.O. Box 000, City, ST 00000-0000; or visit the website at www.ABCsettlement.com, where you will find answers to common questions about the settlement, a claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

DATE:  MONTH 00, 0000.

# Exhibit F

# Form of Notices From *Lupron*

LEGAL NOTICE

# If you paid for Lupron®—used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty—you could get a payment from a legal settlement.

A nationwide class action settlement includes people and entities (together called "class members") who paid for Lupron® from January 1, 1985 through Month 00, 0000, and who qualify under the settlement. Lupron® is an injectible drug used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty. If you're included, you may ask for a payment, or exclude yourself from, or object to, the settlement. The United States District Court for the District of Massachusetts will have a hearing to decide whether to approve the settlement so that payments can be issued.

This is not about the safety or effectiveness of Lupron®. Lawsuits said there was a fraudulent scheme that caused class members to overpay for Lupron®. The defendants, TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited deny all the allegations.

## WHAT DOES THE SETTLEMENT PROVIDE?

Up to $150 million will be paid. After allocating $55 million to a separate settlement with certain large insurers, and then deducting attorneys' fees (not to exceed 30% of $95 million), expenses, and payments to class representatives, the net fund will be distributed in cash to consumers who submit valid claim forms, as well as to insurers and employee welfare benefit plans and other entities, which are also included. Up to 42.1% of the net fund will go to consumers—about $100 minimum each, or more. A detailed notice and the settlement agreement are available at www.lupronclaims.com, or by calling 1-800-000-0000.

## HOW DO YOU GET A PAYMENT?

Simply fill out and follow the instructions on the claim form below, and mail it by Month 00, 0000. Or get a claim form at www.lupronclaims.com. The amount you get depends on how much Lupron® you paid for, and how many valid claims are filed.

## YOUR OTHER RIGHTS.

If you don't want a payment, and if you don't want to be legally bound, you must exclude yourself by Month 00, 0000, or you won't be able to sue, or continue to sue, the defendants about the the cost of Lupron® or other legal claims in this case, ever again. If you exclude yourself, you can't get a payment from this settlement. If you stay in the settlement, you may object to it if you do so by Month 00, 0000. The detailed notice explains how to exclude yourself or object. The Court will hold a hearing in this case, called In re Lupron® Marketing and Sales Practices Litigation, No. 01-CV-10861, MDL 1430, on Month 00, 0000, to consider whether to approve the settlement and a request for fees and expenses by the lawyers representing class members. You may ask to appear and speak at the hearing at your own cost, but you don't have to. For more information call toll free or go to the website listed below.

## www.lupronclaims.com            1-800-000-0000

**I'd like a payment from the Lupron® settlement.**      | Consumer Claim Form |
Complete and mail to the address below, postmarked by Month 00, 0000.

Your Name | Dates You or Patient took Lupron® (Month/Year - Month/Year)

Your Address | Name of Doctor who Prescribed Lupron®

Your City, State, Zip | Doctor's City and State

Name of Lupron® Patient / Relationship to you | Patient's Date of Birth

How much money did you pay for Lupron® from Month 00, 0000 through Month 00, 0000? (Notes: Deduct any insurance reimbursements you got. Attach one proof of payment if you have it. See the detailed notice. You may be asked for more information at a later time.)   $_____

I declare that the information here is true and correct. If not submitting this for myself, I am authorized to submit this form on behalf of the patient above.

Mail by Month 00, 0000 to:
Lupron Settlement Administrator
P.O. Box 00000
City, ST 00000

Signature _____ Date _____

LEGAL NOTICE

# If you paid for Lupron® —used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty—you could get a payment from a legal settlement.

A nationwide class action settlement includes people and entities (together called "class members") who paid for Lupron® from January 1, 1985 through Month 00, 0000, and who qualify under the settlement. Lupron® is an injectible drug used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty. If you're included, you may ask for a payment, or exclude yourself from, or object to, the settlement. The United States District Court for the District of Massachusetts will have a hearing to decide whether to approve the settlement so that payments can be issued.

### This is not about the safety or effectiveness of Lupron®.

Lawsuits said there was a fraudulent scheme that caused class members to overpay for Lupron®. The defendants, TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited deny all the allegations.

## WHAT DOES THE SETTLEMENT PROVIDE?

Up to $150 million will be paid. After allocating $55 million to a separate settlement with certain large insurers, and then deducting attorneys' fees (not to exceed 30% of $95 million), expenses, and payments to class representatives, the net fund will be distributed in cash to consumers who submit valid claim forms, as well as to insurers and employee welfare benefit plans and other entities, which are also included. Up to 42.1% of the net fund will go to consumers—about $100 minimum each, or more.

A detailed notice and the settlement agreement are available at www.lupronclaims.com, or by calling 1-800-000-0000.

## HOW DO YOU GET A PAYMENT?

Call toll-free 1-800-000-0000 or go to the website to get a claim form, and mail it no later than **Month 00, 0000.** Or get a claim form at www.lupronclaims.com. The amount you get depends on how much Lupron® you paid for, and how many valid claims are filed.

## YOUR OTHER RIGHTS.

If you don't want a payment, and if you don't want to be legally bound, you must exclude yourself by **Month 00, 0000,** or you won't be able to sue, or continue to sue, the defendants about the the cost of Lupron® or other legal claims in this case, ever again. If you exclude yourself, you can't get a payment from this settlement. If you stay in the settlement, you may object to it if you do so by **Month 00, 0000.** The detailed notice explains how to exclude yourself or object. The Court will hold a hearing in this case, called *In re Lupron® Marketing and Sales Practices Litigation*, No. 01-CV-10861, MDL 1430, on **Month 00, 0000,** to consider whether to approve the settlement and a request for fees and expenses by the lawyers representing class members. You may ask to appear and speak at the hearing at your own cost, but you don't have to. For more information call toll free or go to the website listed below.

**www.lupronclaims.com          1-800-000-0000**

<u>LEGAL NOTICE</u>

# Employee Welfare Benefit Plans, Insurers, and other entities that paid for Lupron® —used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty— could get a payment from a legal settlement.

A nationwide class action settlement includes "class members" which are people together with entities known as "third party payors" (e.g., insurers, employee welfare benefit plans, and certain government employer plans), that paid any portion of the price of Lupron® between January 1, 1985 through Month 00, 0000, and who qualify under the settlement. Lupron® is an injectible prescription drug used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty.

A third party payor class member, through its authorized agent, can exclude itself from, or object to, the settlement. The United States District Court for the District of Massachusetts authorized this notice and will have a hearing to decide whether to approve the settlement so that payments can be issued.

## WHAT'S THIS ABOUT?

This does **not** involve the safety or effectiveness of Lupron®. Lawsuits said there was a fraudulent scheme about the marketing, sale, and distribution of Lupron® that caused class members to overpay. The defendants, TAP Pharmaceutical Products Inc., Abbott Laboratories, and Takeda Pharmaceutical Company Limited deny all of the allegations.

## WHAT DOES THE SETTLEMENT PROVIDE?

Up to $150 million will be paid. After allocating $55 million to certain large insurers (called "Settling Heath Plans" or "SHPs"), who are settling their claims separately, and then deducting certain amounts including attorneys' fees (not to exceed 30% of $95 million), expenses, and payments to class representatives, the net fund will be distributed in cash to third party payors who submit valid claim forms, as well as to individual consumers, who are also included. Up to 57.9% of the net fund will be allocated to third

party payors. The amount of money available to the third party payors may be reduced if the SHPs show that their claims entitle them to more than the $55 million currently allocated to them. A detailed notice, available at www.lupronclaims.com or by calling 1-800-000-0000, explains all of these things. The class settlement agreement is available at the website.

## HOW DO YOU GET A PAYMENT?

Simply fill out the attached claim form and mail it no later than **Month 00, 0000** to the address on the form. Or get a claim form at www.lupronclaims.com. Your pro rata share will be based on how much Lupron® you paid for from January 1, 2000 through December 31, 2001, and how many valid claims are filed.

## YOUR OTHER RIGHTS.

If a third party payor doesn't want a payment, and doesn't want to be legally bound, its authorized agent must exclude it by **Month 00, 0000**, or it won't be able to sue, or continue to sue, the defendants about the cost of Lupron® or other legal claims in this case, ever again. Exclusions submitted in other similar Lupron® cases are not effective. If a third party payor asks to be excluded, it can't get a payment from this settlement. If a third party payor stays in the settlement, its authorized agent may object to it, if it does so by **Month 00, 0000**. The detailed notice explains how to exclude a third party payor or object. The Court will hold a hearing in this case, called *In re Lupron® Marketing and Sales Practices Litigation*, No. 01-CV-10861, MDL 1430, on **Month 00, 0000**, to consider whether to approve the settlement and a request for fees and expenses by the lawyers representing the class members. Authorized agents of third party payors may ask to appear and speak at the hearing at their own cost, but don't have to. For more information, call toll-free 1-800-000-0000, or go to www.lupronclaims.com.

**www.lupronclaims.com          1-800-000-0000**

## Please read the enclosed Court-ordered Notice.

## Insurers, Employee Welfare Benefit Plans and Governmental Employer Plans that paid for Lupron® could get a payment from a nationwide class action settlement.

(Back of outside of mailing above.)

(Front of outside of mailing below.)

Lupron Settlement Administrator for U.S. District Court
P.O. Box 00000
City, ST 00000

## Legal Notice to Insurers, Employee Welfare Benefit Plans, and other entities

<First Name> <Last Name>
<Title>
<Organization>
<Address>
<City>, <ST> <00000-0000>

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# If you paid for Lupron®—used to treat prostate cancer, endometriosis, uterine fibroids, and precocious puberty—you could get a payment from a legal settlement.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A nationwide settlement has been proposed in class action litigation about the cost of Lupron®.  This notice is for:

  o **Consumers who paid for Lupron®, for example, as part of their treatment for prostate cancer, endometriosis, uterine fibroids, or precocious puberty.**

  o **Private and certain governmental Insurers, Employee Welfare Benefits Plans, and governmental employers that paid for Lupron®.**

- The settlement will pay cash to those who submit valid claims.  It will also pay fees for the lawyers appointed by the Court, plus expenses and the costs of the notice and settlement administration.

## — This does not involve the safety or effectiveness of Lupron® —

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF** | Get no payment.  This is the only option that allows you to start, or remain part of any other lawsuit against the Defendants about the cost of Lupron® or other legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the settlement. |
| **DO NOTHING** | Get no payment.  Give up your rights to be part of any other lawsuit against the Defendants about the cost of Lupron® or other legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement, and after any appeals are resolved.  Please be patient.

QUESTIONS? CALL **1-800-000-0000** TOLL FREE, OR VISIT WWW.LUPRONCLAIMS.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE NUESTRO SITIO DE INTERNET

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**.................................................................................................. **PAGE 3**

    1.     Why was this notice issued?
    2.     What is the lawsuit about?
    3.     Why is this a class action?
    4.     Why is there a settlement?

**WHO IS IN THE SETTLEMENT**.......................................................................................... **PAGE 4**

    5.     How do I know if I am part of the settlement?
    6.     Are there exceptions to being included?
    7.     How are consumers included?
    8.     Which entities are included?
    9.     What if I'm not sure whether I'm included in the settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET**................................................................. **PAGE 5**

    10.    What does the settlement provide?
    11.    How much will my payment be?
    12.    What am I giving up as part of the settlement?

**HOW DO YOU GET A PAYMENT—SUBMITTING A CLAIM FORM**................................. **PAGE 6**

    13.    How can I get a payment?
    14.    When would I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**.............................................................. **PAGE 7**

    15.    If I exclude myself, can I get money from this settlement?
    16.    What about other cases involving Lupron®?
    17.    If I don't exclude myself, can I sue later?
    18.    How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU**................................................................................ **PAGE 8**

    19.    Do I have a lawyer in the case?
    20.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**.................................................................................. **PAGE 9**

    21.    How do I tell the Court if I don't like the settlement?
    22.    What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING**.................................................................................. **PAGE 10**

    23.    When and where will the Court decide whether to approve the settlement?
    24.    Do I have to come to the hearing?
    25.    May I speak at the hearing?

**IF YOU DO NOTHING**..................................................................................................... **PAGE 11**

    26.    What happens if I do nothing at all?

**GETTING MORE INFORMATION**....................................................................................... **PAGE 11**

    27.    How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about a nationwide proposed settlement of this class action, including the right to claim money, and about all of your options, before the Court decides whether to give "final approval" to the settlement. If the Court approves the settlement, and after any appeals are resolved, payments will be made to everyone who submitted a valid claim. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

Judge Richard G. Stearns of the United States District Court for the District of Massachusetts is overseeing this class action. The case is known as *In re Lupron*® *Marketing and Sales Practices Litigation*, No. 01-CV-10861, MDL 1430. The people who sued are called the "Plaintiffs," and the companies they sued, TAP Pharmaceutical Products Inc. ("TAP"), Abbott Laboratories, and Takeda Pharmaceutical Company Limited (formerly known as Takeda Chemical Industries, Ltd.), are called the "Defendants."

### 2. What is the litigation about?

There are lawsuits about the cost of Lupron®, an injectable drug usually given by a doctor to treat prostate cancer in men, endometriosis and uterine fibroids in women and precocious puberty in children. The litigation is about whether people or entities were unlawfully overcharged and defrauded by the Defendants. **This does not involve the safety or effectiveness of Lupron**®**.** The Plaintiffs say that there was a fraudulent scheme by the Defendants about the marketing, sale and distribution of Lupron®, and that the alleged scheme caused people to overpay for Lupron®. They say the scheme involved: 1) artificially inflating the average wholesale price ("AWP") so that doctors could charge more for Lupron®; 2) giving free samples to doctors knowing they would charge patients and insurers for them; and 3) giving valuable gifts to doctors as incentives to prescribe Lupron® instead of other less costly alternatives.

The Defendants deny all of these claims. Specifically, the defendants say they have many defenses, that they are not liable to the Plaintiffs, and that the Plaintiffs are not entitled to any money or benefits from the litigation. The Defendants say the federal government created and still uses AWP instead of cost-to-acquire as a basis for reimbursing physicians, despite decades of knowledge and criticism that AWP does not necessarily reflect the actual cost-to-acquire. Defendants also believe that the Plaintiffs cannot prove they lost any money or had "damages" from free samples given by TAP to certain doctors.

### 3. Why is this a class action?

In a class action, one or more people or entities like you, called Class Representatives, sue on behalf of people who have similar claims. All these people are a "Class" or "Class Members."

One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a settlement?

Both sides agreed to a settlement to avoid the cost and risk of a trial, and so that the people affected can get compensation, in exchange for releasing the Defendants from all liability. The settlement does not mean the Defendants did anything wrong or that they violated any laws. The Class Representatives and the lawyers representing them think the settlement is best for all Class Members.

# WHO IS IN THE SETTLEMENT?

To see if your rights will be affected by this settlement or if you will get money from the settlement, you first have to determine if you are a Class Member.

## 5. How do I know if I am part of the settlement?

The Court decided that Class Members in the settlement include: *All individual persons or entities who paid for Lupron® from January 1, 1985 through Month 00, 0000.*

Note: This includes all formulations of Lupron®, including Lupron Depot®.

## 6. Are there exceptions to being included?

Excluded from the class are several large insurers called "Settling Health Plans" who are settling separately (*See* Question 10), the Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; and the United States government, its officers, agents, agencies and departments, and all other government entities' claims, to the extent that they previously released their claims pursuant to the 2001 Settlement Agreement and Release resolving the matter of *United States of America v. TAP Pharmaceutical Products Inc.* (D. Mass.) and related litigation.

## 7. How are consumers included?

Consumers, i.e., people who paid any amount for Lupron®, including co-pays and deductibles, are included in the settlement. Lupron® is not the typical prescription drug that is "paid for" at a pharmacy. Instead, your doctor usually injects it—to treat prostate cancer in men, endometriosis and uterine fibroids in women, or precocious puberty in children—and includes a charge for it on your bill. You may have paid for a portion of the cost of Lupron® if your insurance company did not pay your doctor his/her full charge for Lupron® (e.g. you paid a "copay"). If you have no insurance, or your insurance does not cover Lupron®, you may have paid more.

## 8.  Which entities are included?

Entities, also known as "third party payors," could include health insurers (other than the Settling Health Plans) that paid part or all of the cost of Lupron® for their insured patients.  Entities may also include employee welfare benefit plans, governmental plans or union plans that paid some portion of the cost of Lupron® for insureds, employees or family members of employees insured under these plans.

## 9.  What if I'm not sure whether I'm included in the settlement?

If you are not sure whether you or your company is included in the Class, you may call the toll-free number 1-800-000-0000 with questions.  You may also write with questions to Lupron Settlement Administrator, P.O. Box 00000, City, ST 00000.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

## 10.  What does the settlement provide?

Up to $150 million will be paid by TAP, on behalf of all the Defendants.  After allocating $55 million to a separate settlement with the Settling Health Plans, a $95 million fund will be set up for the Class Members in this settlement.  After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*See* Question 20), the net fund will be distributed in cash to consumers who submit valid claim forms, as well as to third party payors. Consumers will receive up to 42.1% of the net fund, and up to 57.9% will go to third party payors.  The amount of money for third party payors may be reduced if the Settling Health Plans show that their claims entitle them to more than the $55 million currently allocated to them.

If you are a third party payor and want to get out of the settlement (*See* the section called "Excluding Yourself From the Settlement" below), the third party payor settlement fund will be reduced by the amount of money you could have received if you had filed a valid claim.  More details are available in the Settlement Agreement at www.lupronclaims.com.

## 11.  How much will my payment be?

Your share of the settlement fund will be based on how much Lupron® you paid for and on how many Class Members file valid claims.  Consumers will get $100 each or 30% of their Lupron® purchases from January 1, 1985 through Month 00, 0000, whichever is greater.  If the amount of claims received is too great to allow payment of either of these amounts, consumers will get a *pro rata* share (based on what each consumer paid in proportion to what all consumers paid). Third party payors' payments will be *pro rata*, based on how much Lupron® third party payors paid for, and the January 1, 2000 through December 31, 2001 time period will be used to determine each *pro rata* share.

The Defendants will not be involved in deciding how much money you may receive.

## 12. What am I giving up as part of the settlement?

If the settlement becomes final, consumer and third party payor Class Members will be releasing the Defendants and other people and entities for all the claims described and identified in paragraphs 2(y) and 18 of the Settlement Agreement. The Settlement Agreement is available at www.lupronclaims.com. The Settlement Agreement describes the released claims with specific descriptions, in necessarily accurate legal terminology, so read it carefully. The release does not cover any legal claims about the safety or effectiveness of Lupron®. Even if you registered with, or excluded yourself from, a different Lupron® lawsuit about similar claims, you'll be giving up rights described in this Settlement Agreement.

# HOW DO YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

## 13. How can I get a payment?

To ask for a payment, you must complete and submit a claim form. You can get a claim form at www.lupronclaims.com or by calling the Settlement Administrator at 1-800-000-0000 or writing to the address below. If you are a consumer Class Member you need to include the dates you used Lupron® and send proof that you paid for Lupron® sometime from January 1, 1985 through Month 00, 0000 (only one proof of purchase is required), and any amount paid during that period. Proof may be in the form of 1) a written prescription for Lupron®, 2) a receipt, cancelled check, or credit card statement that shows that you paid for Lupron®, 3) an EOB (explanation of benefits) that shows you made a co-pay for Lupron®, or 4) a letter from your doctor saying he or she prescribed and that you paid part of the cost of Lupron® at least once, including the amount paid. Contact the Settlement Administrator if you do not have any proof. Third party payors need to provide all of the information required on the claim form, including the amount paid for Lupron® from January 1, 2000 through December 31, 2001. On third party payors' claims for purchases over $300,000, more information must be provided.

Claim forms must be postmarked by **Month 00, 0000**, and mailed to:

<div align="center">

Lupron Settlement Administrator
P.O. Box 00000
City, ST 00000

</div>

## 14. When would I get my payment?

Payments will be mailed to Class Members after the Court grants "final approval" of the settlement and any appeals are resolved. Send in your claim form postmarked by **Month 00, 0000**. The Court is scheduled to consider final approval at a hearing on **Month 00, 0000** (*See* section called "The Court's Fairness Hearing" below).

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Defendants over the legal issues in this case, then you must take steps to get out. This is called asking to be excluded from—or sometimes called "opting out" of—the Class. The deadline for exclusions to be received is **Month 00, 0000**.

## 15. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, you cannot get money from this settlement, and should not send in a claim form to request a payment. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. But you may sue, continue to sue, or be part of a different lawsuit against Defendants in the future. You will not be bound by anything that happens in this lawsuit or settlement. If a third party payor excludes itself, the share of the money it could have received if it had stayed in will be removed from the $55 million set aside for third party payors and given back to TAP.

## 16. What about the other cases involving Lupron®?

You may have received or seen other notices about other class actions about the cost of Lupron®, including a national case in a North Carolina court, *Stetser v. TAP Pharmaceutical Products, Inc.*, and a statewide case in a New Jersey court, *Walker v. TAP Pharmaceutical Products, Inc.* If you registered with, or if you excluded yourself from, one of those or other cases, you need to exclude yourself from this case if you want to sue, continue to sue, or be part of a different lawsuit against the Defendants about the cost of Lupron® or any other legal issues in this case, ever again. The courts overseeing those cases may dismiss those cases, but they may not, so check with your lawyer about how this case will affect your rights.

## 17. If I don't exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue the Defendants for all the claims that this settlement resolves. You must exclude yourself from this Class to start or continue your own lawsuit, or to be part of any different lawsuit relating to these claims.

## 18. How do I get out of the settlement?

If you wish to be excluded from the settlement you must, in writing, state that you want to be excluded from *In re Lupron® Marketing and Sales Practices Litigation,* provide the time period (month/year to month/year) during which you paid for Lupron®, include your name, address, taxpayer identification number, telephone number, fax number (if any), and your signature.

Third party payor Class Members must include the total amounts paid for Lupron® from January 1, 2000 through December 31, 2001.  If you are submitting an exclusion request on behalf of a third party payor Class Member, you must also provide a signed certification with the following wording, indicating that the Class Member has given you the authority to submit the exclusion.

> "The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named class member.  The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, et seq., or other laws governing their obligations to any class member.  The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to receive any proceeds of the Class Settlement Fund.  By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746."

Any exclusion requests must be <u>received</u> on or before **Month 00, 0000** at this address:

<div align="center">

Lupron® Settlement Administrator
P.O. Box 00000
City, ST 000000

</div>

## THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in the case?

The Court has appointed the law firms of Cohen, Milstein, Hausfeld, & Toll, P.L.L.C., of Washington, DC; Foote Meyers Mielke & Flowers, of Geneva, IL; Hagens Berman LLP, of Cambridge, MA; Lieff Cabraser Heimann & Bernstein, LLP, of San Francisco, CA; and Spector Roseman & Kodroff, of Philadelphia, PA to represent you and other Class Members as "Class Counsel."  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one, at your own cost.

## 20. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees not to exceed 30% of the $95 million settlement fund (after deducting any amount that TAP gets back from any third party payor exclusions—*See* Question 15) plus reimbursement of their expenses.   The Defendants have agreed not to oppose these fees and a request for reasonable expenses.   Class Counsel will also ask for a total of $_____ for the Class Representatives, who helped the lawyers on behalf of the whole Class.   The Court may award less than these amounts to Class Counsel or to the Class Representatives.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

## 21. How do I tell the Court if I don't like the settlement?

If you are a Class Member and you do not exclude yourself, you can object to the settlement if you don't like any part of it.   If you decide to object to the settlement you should give reasons why you think the Court should not approve it.   The Court will consider your views.   To object, you must do so in writing.   Be sure to include your name, address, telephone number, your signature, and the reasons why you object to the settlement, and any documentation supporting your objection.   Send the objection to these three different places postmarked no later than **Month 00, 0000**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of Court | Edward Notargiacomo | Jason G. Winchester |
| John Joseph Moakley U. S. | Hagens Berman, LLP | Jones Day |
| Courthouse | 225 Franklin Street, 26th Floor | 77 West Wacker, Suite 3500 |
| 1 Courthouse Way | Boston, MA 02110 | Chicago, Illinois 60601-1692 |
| Boston, MA  02210 | | |

## 22. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement.   You can object only if you stay in the Class.   Excluding yourself is telling the Court that you don't want to be part of the Class.   If you exclude yourself, you cannot object to the settlement or to the attorneys' fees because the case no longer affects you, and you will not receive any settlement payment.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement.  You may attend, but you don't have to.  You may also ask to speak at the hearing.

## 23.  When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _:__ _.m. on _____, **Month 00, 0000** at the United States District Court for the District of Massachusetts, Court Room No. __, 1 Courthouse Way, Boston, MA.  At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate.  The Court will consider whether to approve the settlement and the request for attorneys' fees, expenses, and awards for Class Representatives and others.  If there are objections, the Court will consider them.   The hearing may be moved to a different date without additional notice, so it is a good idea to check www.lupronclaims.com for updated information.

## 24.  Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have.  But you are welcome to attend the hearing at your own expense.  If you send a written objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

## 25.  May I speak at the hearing?

To speak at the Fairness Hearing, you must send a letter or other written document saying that the letter or document is your "Notice of Intention to Appear" in *In re Lupron Marketing and Sales Practices Litigation*, No. 00-CV-10861, MDL 1430.   Be sure to include your name, address, telephone number, and your signature.  You must also include the information on what you intend to say at the hearing.  You must send your "Notice of Intention to Appear" to the three addresses listed in Question 21 above.  It must be postmarked no later than **Month 00, 0000**.  The Court will decide if you will be allowed to speak at the hearing.

# IF YOU DO NOTHING

## 26.  What happens if I do nothing at all?

If you do nothing, you will not get any payment from this settlement.  And, unless you exclude yourself from this Class, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit, including any other class action lawsuit, against the Defendants about the cost of Lupron® or any other legal issues in this case.

# GETTING MORE INFORMATION

## 27.  How do I get more information?

This notice summarizes the proposed settlement.  You can get a copy of the Settlement Agreement at www.lupronclaims.com.  You may also write with questions to Lupron® Settlement Administrator, P.O. Box 00000, City, ST 00000. You can get a claim form at the website or by calling the toll free number below.