**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | Judge Patti B. Saris<br>Magistrate Judge Marianne B. Bowler |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL**
**AND FOR ASSESSMENT OF DISCOVERY-RELATED COSTS**
**AGAINST DEFENDANT ABBOTT LABORATORIES**

Plaintiffs have filed their Motion to Compel and For Assessment of Discovery-Related Costs Against Defendant Abbott Laboratories ("Motion to Compel") because, after a year of negotiations with Abbott in order to obtain relevant documents, plaintiffs have not been able to get Abbott to produce meaningful documents and therefore require court intervention. Specifically, plaintiffs seek an order requiring Abbott to produce within 30 days:  (1) Calcijex-related sales documents; (2) Plan and Update documents; (3) sales documents; (4) high-level marketing and strategy documents; and (5) a supplemented e-mail production or an explanation of why one cannot be provided.   All five of these categories of documents are both highly relevant to plaintiffs' claims as well as necessary for plaintiffs to take depositions.  In addition, although unusual, plaintiffs ask that this Court assess plaintiffs' costs (not attorneys' fees) incurred in searching through hundreds of thousands of "document dump" pages in Abbott's production.  Plaintiffs ask for these costs in order to both compensate plaintiffs for their lost time as well as to deter Abbott from continuing to unnecessarily prolong this proceeding.  In support hereof, plaintiffs state as follows:

## I.     Background

### A.     Abbott's document production

On March 31, 2004, plaintiffs served their Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, Tap, and Watson and To All Other Defendants With Respect to Drugs That Were Previously Subject To Discovery ("Omnibus Requests."), Ex. A to Declaration of Jennifer Fountain Connolly ("Connolly Decl."). In between the time of the service of the Omnibus Requests and the initiation of plaintiffs' discussions about discovery with Track Two Defendants, including Abbott, plaintiffs, by virtue of the experience they gained in working with Track One Defendants, were able to significantly narrow the types of documents they needed. For example, on April 20, 2005, plaintiffs served a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6) for six areas of inquiry plaintiffs had identified as areas of interest. Ex. B to Connolly Decl. Beginning in the Spring of 2005, plaintiffs began both written and telephonic discussions with Abbott regarding the production of documents pursuant to plaintiffs' narrowed interests. *See* Connolly Decl. ¶ 2.

Consistent with plaintiffs' attempts at focused discovery, they sought to obtain specific types of highly relevant documents from Abbott. On October 28, 2005, plaintiffs similarly noticed seventeen depositions anticipating that Abbott would produce documents so that plaintiffs could go forward with those depositions. *See* Ex. C to Connolly Decl. However, Abbott did not make a meaningful production and so, on December 12, 2005, plaintiffs postponed those depositions. E-mail to Tina Tabacchi and Toni-Ann Citera from Jennifer Fountain Connolly dated Dec. 12, 2005, Ex. D to Connolly Decl. In response to Abbott's claim that there was no need for plaintiffs to cancel those depositions, plaintiffs' counsel responded that "I engaged in extensive and what I thought at the time were good faith discussions with

[Abbott] in the Spring and Summer of 2005 regarding what plaintiffs' 'really' wanted. . . . [I]t is not the case that we have not attempted to limit the scope of plaintiffs' Omnibus Requests." E-mail to Tina Tabacchi from Jennifer Fountain Connolly dated Dec. 14, 2005, Ex. E to Connolly Decl.

To make it absolutely clear to Abbott the types of documents they sought, plaintiffs thereafter prepared a detailed letter to Abbott's counsel identifying the categories of documents plaintiffs required.  Letter to Tina Tabacchi, Beth O'Connor and Toni-Ann Citera from Jennifer Fountain Connolly dated Jan. 19, 2006, Ex. F to Connolly Decl.  That letter sought numerous types of documents and data, but, relevant to this Motion, that letter included requests for: (1) an e-mail production (*id.* at 1); (2) strategic, business and marketing plans (*id.* at 2); (3) sales documents (*id.* at 2-3); (4) Plan and Update documents (*id.* at 4); and (5) documents related to Calcijex (*id.* at 3 n.4) – all of which are types of documents plaintiffs seek through this Motion.

Rather than responding to plaintiffs' requests in good faith, Abbott has instead buried plaintiffs in thousands of pages of largely irrelevant documents.  To date, Abbott has produced 240,754 pages of hard copy documents.  *See* Connolly Decl. ¶ 3.  Of those pages, 149,926 of them, or 62% of Abbott's total production, constitutes contracting files with group purchasing organizations ("GPOs") and wholesalers, the majority of which are page-after-page of price lists. *See* Connolly Decl. ¶ 4.  The first 72,216 pages of Abbott's production constitute its government production produced pursuant to Case Management Orders Nos. 5 and 10.  *See* Connolly Decl. ¶ 5.  Once that production is not considered and only Abbott's recent productions are taken into account, over 89% of Abbott's production of documents has consisted of contracting files.  *See* Connolly Decl. ¶ 6.  Notably, ***none*** of these documents contained any of the categories of documents plaintiffs seek through this Motion.  With the exception of Abbott's e-mail

production, discussed below, none of Abbott's subsequent productions have contained the five categories of documents plaintiffs seek through this Motion. Instead, plaintiffs have received months of broken promises that they would be forthcoming. *See* Connolly Decl. ¶ 7; Feb. 6, 2006 letter to Toni-Ann Citera and Beth O'Connor from Kenneth A. Wexler, Ex. G; Feb. 8, 2006 letter to Kenneth Wexler from Beth O'Connor, Ex. H; Feb. 23, 2006 letters to Beth O'Connor from Amber M. Nesbitt, Exs. I and J; Feb. 28, 2006 letter to Amber M. Nesbitt from Beth A. O'Connor, Ex. K; Mar. 1, 2006 letter to Beth A. O'Connor from Amber M. Nesbitt, Ex. L; Mar. 3, 2006 letter to Amber M. Nesbitt from Beth O'Connor, Ex. M; and May 4, 2006 letter to Beth O'Connor from Amber M. Nesbitt, Ex. N to Connolly Decl.

Abbott's conduct is similar to the discovery conduct of certain other Track 2 Defendants. Amgen has produced over one million pages of documents and Baxter has produced more than three million pages of documents. Connolly Decl. ¶ 8. These kind of tactics are not only in violation of CMO No. 10, which requires production of responsive documents within 60 days of service of a request, but also make a mockery of Judge Saris' establishment of two tracks of discovery in the first instance.

### B.   Abbott's electronic production

On April 6 and 18, 2006, Abbott produced its "electronic documents." Abbott represented that this production constituted all e-mails and other electronic documents responsive to the Omnibus Requests that were not previously produced in Abbott's government production. *See* Connolly Decl. ¶ 9; Letter to Toni-Ann Citera and Beth O'Connor from Jennifer Fountain Connolly dated May 26, 2005, Connolly Decl. Ex. O. It took nearly a year to get Abbott to produce these documents.[1]

---

[1]   *See* Letter to Jennifer Fountain Connolly from Beth O'Connor dated June 6, 2005, Ex. P; Letter to Beth O'Connor from Jennifer Fountain Connolly dated July 8, 2005, Ex. Q; Letter to Beth O'Connor

However, Abbott's electronic production is still not complete.   Consisting of approximately 40,342 pages, it is filled with duplicates. Connolly Decl. ¶ 9.  Moreover, Abbott produced very few e-mails or other electronic documents from key personnel.  *Id.*  On May 4, 2006, plaintiffs therefore asked Abbott to explain the duplicates in its production and to explain the process by which Abbott collected electronic documents.  *See* Letter to Beth A. O'Connor from Amber M. Nesbitt dated May 4, 2006, Ex. N to Connolly Decl.   Although the letter requested a response by May 8, Abbott waited until May 12 to send an e-mail stating that a response would be forthcoming.  *See* E-mail to Amber Nesbitt from Beth A. O'Connor dated May 12, 2006, Ex. V to Connolly Decl.  As of the date of this filing, plaintiffs have not received a response from Abbott regarding its e-mail production. Connolly Decl. ¶ 10.

## C.   **Plaintiffs' Discovery-Related Costs**

In order to wade through the enormous document dump Abbott has produced, plaintiffs have incurred significant costs to use an Optical Character Recognition "OCR" process so that they could search the text of Abbott's documents electronically. Connolly Decl. ¶ 11.  This process is extremely expensive and, when quality documents are produced, largely unnecessary even in a case of this size.  *Id.*  In addition, plaintiffs have retained additional attorneys at the costs of thousands of dollars to review these documents.  *Id.*  Finally, plaintiffs have spent numerous hours obtaining the detailed data used in this Motion to educate the Court about the true nature of Abbott's production.  *Id.*  The end result of this costly wild goose chase is that

and Tina Tabacchi from Jennifer Fountain Connolly dated August 17, 2005, Ex. R; Letter to Beth O'Connor and Tina Tabacchi from Jennifer Fountain Connolly dated October 6, 2005, Ex. S; Letter to Beth O'Connor and Tina Tabacchi from Jennifer Fountain Connolly dated January 19, 2006, Ex. F; Letter to Toni-Ann Citera and Beth O'Connor from Kenneth Wexler dated February 6, 2006, Ex. G; Letter to Kenneth Wexler from Beth O'Connor dated February 8, 2006, Ex. H;  Letters to Beth O'Connor from Amber Nesbitt dated February 23, 2006, Exs. I and J; Letter to Amber Nesbitt from Beth O'Connor dated February 28, 2006, Ex. K; Letter to Beth O'Connor from Amber Nesbitt dated March 1, 2006, Ex. L; Letter to Amber Nesbitt from Beth O'Connor dated March 3, 2006, Ex. M; Letter to Beth O'Connor from Amber Nesbitt dated March 6, 2006, Ex. T; Letter to Beth O'Connor from Amber Nesbitt dated April 3, 2006, Ex. U.

plaintiffs are right where they were at the end of 2005 when they canceled seventeen depositions: they cannot go forward with those depositions – or any other depositions of Abbott personnel -- because they lack the documents to conduct them.

**D.      Relevance of the Documents Sought**

Plaintiffs ask this Court to order Abbott to produce:   (1) Calcijex-related sales documents; (2) Plan and Update documents; (3) sales documents; (4) high-level marketing documents; and (5) a supplemented e-mail production.

Calcijex-related sales documents are necessary because, though the majority of the Abbott drugs at issue in this litigation are marketed by the Hospital Products Division ("HPD") of Abbott, Calcijex is not.  Abbott therefore needs to search the files of the Renal Care Division to locate these documents.  Plan and Update documents are relevant because those documents were used by Abbott to justify pricing and contracting decisions, both of which are without question relevant to plaintiffs' claims.   Sales documents are relevant to know how Abbott marketed the drugs at issue in this litigation.  High-level marketing documents are necessary to learn what company management knew about its sales practices and to see if those practices were consistent with company goals.   Of the few Abbott witnesses who have testified at depositions, all have said that documents such as annual "strategic presentations" and "strategic plans" do in fact exist.  There are likely many other similar types of documents.  Either Abbott's management runs the company with a willful blindness never seen before in corporate America, or there are still significant documents to be produced.  Finally, Abbott must either supplement its e-mail production or explain how such an alleged massive search resulted in so few documents from its key personnel and so many duplicates.

## II.    <u>Argument</u>

Due to Abbott's discovery conduct plaintiffs have incurred extensive -- yet entirely unnecessary -- costs. As set forth above, plaintiffs have had to review hundreds of thousands of pages of largely irrelevant documents, while Abbott has not yet produced five categories of highly relevant documents. Plaintiffs have accrued volumes of written correspondence with Abbott and have had numerous lengthy telephonic meet and confers, but there comes a time when Court intervention is required. Now is that time.

A trial court has broad discretion when determining whether to impose discovery sanctions. *See, e.g., Park v. City of Chicago*, 297 F.3d 606, 614 (7th Cir. 2002). Here, it is appropriate for this Court to assess Abbott plaintiffs' discovery-related costs. 28 U.S.C.S. § 1927 grants this Court authority and discretion to impose sanctions on any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The First Circuit has provided the following guidance for courts applying §1927:

> We do not require a finding of subjective bad faith as a predicate to the imposition of sanctions. Behavior is vexatious when it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927. The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice. Yet, we agree with other courts considering this question that section 1927's requirement that the multiplication of the proceedings be vexatious necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence. Finally, in assessing whether an attorney acted unreasonably and vexatiously in multiplying proceedings, the district courts in this circuit should apply an objective standard.

*Beh-Hanson v. Arconium Specialty Alloys Co.*, No. 03-263, 2004 U.S. Dist. LEXIS 27732, at **6-7 (D.R.I. Jun 18, 2004)(quoting *Cruz v. Savage*, 896 F.2d 626, 631-32 (1st Cir. 1990)

(citations and internal quotation marks omitted)).  In *Beh-Hanson*, the court imposed discovery sanctions on the plaintiff's counsel for repeatedly failing to disclose that that there were no responsive documents to certain requests, even after defendant filed a motion to compel.  *See id.* at **20-22.  Even though the attorney did not necessarily act in bad faith, sanctions were appropriate because he "act[ed] in disregard of whether his conduct constitute[d] harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process of justice.'"  *Id.* at **22-23 (quoting *Cruz*, 896 F.2d at 632 (quoting *United States v. Nesglo, Inc.*, 744 F.2d 887, 891 (1st Cir. 1984)).  Sanctions also act as a deterrent to those litigants who may be tempted to engage in vexatious or harassing conduct without the possibility of being sanctioned.  *Id.* at *23 (citing *Gutierrez-Rodriguez v. Catragena*, 882 F.2d 553, 576 (1st Cir. 1989)).

It is clear that Section 1927 applies to discovery abuses such as those committed by Abbott.  *See, e.g., Cruz*, 896 F.2d at 634 (affirming the award of §1927 sanctions when the attorney "continually engaged in obfuscation of the issues, hyperbolism and groundless assumptions," and refused to produce the knife that the defendant had admitted she had been given); *Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1019 (2d Cir. 1988)(affirming §1927 sanctions, when "in each [discovery dispute], prior to making its motion, Apex's counsel attempted to resolve the matter informally ....And, in each case, ... Apex's counsel was 'told to make a motion.' After each motion was made, defense counsel 'mysteriously,' in the district court's words, complied with the requests."); *Pro Spice, Inc. v. Omni Trade Group, Inc.*, No. 01-1661, 2003 U.S. Dist. LEXIS 23831, at *5 (E.D. Pa. Dec. 16, 2003) (providing plaintiff's costs for the motion to compel in a case where defendant committed repeated discovery abuses,

noting that the second motion to compel "would not have been necessary if they had been more forthright to plaintiff's discovery requests.").[2]

Here, it is appropriate to assess Abbott plaintiffs' discovery-related costs in order to both compensate plaintiffs for their costs incurred in reviewing hundreds of thousands of pages of worthless discovery as well as to deter Abbott from similar conduct in the future.

WHEREFORE plaintiffs respectfully request that this Court GRANT plaintiffs' Motion to Compel, order Abbott, within 30 days of entering its order, to produce: (1) Calcijex-related sales documents, (2) Plan and Update documents, (3) sales documents,(4) high-level marketing and strategy documents, and (5) a supplemented e-mail production or explanation of why one cannot be produced. Plaintiffs likewise respectfully request that this Court assess against Abbott plaintiffs' discovery-related costs incurred in reviewing its production and in preparing this Motion,[3] and all other relief that this Court deems just and proper.

---

[2]    Abbott has likewise violated Fed. R. Civ. P. 26(g), which requires that every discovery response bear the signature of the attorney certifying "to the best of the signer's knowledge, information and belief, formed after a reasonable inquiry, that the response is: (A) consistent with these rules...;(B) not interposed for any improper purpose, such as to harass of cause unnecessary delay...; and (C) not unreasonable." *See also Legault v. Zambarano*, 105 F.3d 24, 27 (1st Cir. 1997)(internal quotations omitted)(affirming sanctions when defendants had improperly failed to produce four categories of documents in response to plaintiff's legitimate discovery requests). Abbott has similarly clearly violated Case Management Order No. 10 ("CMO No. 10") (Mar. 25, 2004), which provides that a responding party to a document request must complete its production within sixty (60) days of service of the request. Fed. R. Civ. P. 37 therefore also gives this Court authority to assess costs against Abbott. *See, e.g., Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) (indicating that it is beyond question that a district court has the inherent power to manage its affairs, including "the ability to do whatever is reasonably necessary to deter abuse of the judicial process") (citation omitted); *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*, 106 F.R.D. 59, 69-70 (D. Mass. 1985) (discussing court's inherent power to impose sanctions, and indicating that such power "may be exercised to sanction non-production of documents even when no order compelling production pursuant to Rule 37(a)(2), F. R. Civ. P., was obtained") (citations omitted).

[3]    Should this Court grant plaintiffs' motion they will prepare a detailed affidavit setting forth the costs incurred.

DATED:  June 2, 2006

_/s/ Jennifer Fountain Connolly_
Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One N. LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

<u>**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**</u>

Docket No. MDL 1456

I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on June 2, 2006, I caused copies of ***PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL AND FOR ASSESSSMENT OF DISCOVERY-RELATED COSTS AGAINST DEFENDANT ABBOTT LABORATORIES*** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

<u>/s/ Jennifer Fountain Connolly</u>
Jennifer Fountain Connolly