# Exhibit A



E-SERVED
03/31/04
06:55 PM ET
AWP-MDL No. 1456

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | MDL No. 1456 |
| | ) CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | ) ) ) ) |
| | Judge Patti B. Saris |

## PLAINTIFFS' OMNIBUS REQUESTS FOR PRODUCTION AND INTERROGATORIES TO DEFENDANTS ABBOTT, AMGEN, AVENTIS, BAXTER, BAYER, BOEHRINGER, BRAUN, DEY, FUJISAWA, NOVARTIS, PFIZER, PHARMACIA, SICOR, TAP AND WATSON AND TO ALL OTHER DEFENDANTS WITH RESPECT TO DRUGS THAT WERE NOT PREVIOUSLY SUBJECT TO DISCOVERY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and LR D. Mass. 26.5 and 34.1, and pursuant to case management orders of this Court including the March 25, 2004 Order, the plaintiffs hereby request that each defendant produce the documents requested herein in compliance with the March 25, 2004 Order.

Prior to the Court's March 25, 2004 Order, several defendants commenced production for specific drugs pursuant to prior document requests. This Omnibus Request does not seek production of documents to the extent that such documents were both previously requested and actually produced by a defendant.

## I.  DEFINITIONS

1.      "Agreement" means a contract, arrangement or understanding, formal or informal, oral or written, between two or more persons.

2.      "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of a defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

3.      "AMCC" means the Amended Master Consolidated Complaint.

4.      "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

5.      "Any" means one or more.

6.      "ASP" means average sales price.



7.    "AWP" means the average wholesale price reported to and/or reported by an industry trade publication.

8.    "AWPID" means any of the drugs identified in Appendix A to the AMCC and, pursuant to Case Management Order No. 10 dated March 25, 2004, includes all NDC's for that drug, including NDC's not in the AMCC.

9.    "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

10.    "CMS" means the Centers for Medicare and Medicaid Services.

11.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

12.    "Concerning" means referring to, describing, evidencing, or constituting.

13.    "Covered Drugs" means pharmaceuticals that are reimbursed under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*.

14.    "Defendant" refers to any of the defendants in the AMCC, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

15.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed.R.Civ.P. 34(a). A draft or non-idential copy is a separate document within the meaning of this term. The term is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings. Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.



16.    "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

17.    "Government Investigation" refers to any ongoing or closed investigation conducted by the Commerce, Energy and/or Ways and Means Committees of the United States Congress, the United States Department of Justice, the United States General Accounting Office, Federal Trade Commission, the Office of the United States Inspector General, the United States Department of Health and Home Services, or any other federal, state or local governmental entity without regard to time period.

18.    "Government payor" means any federal or state government entity or program that reimburses Providers for drugs or health care services, including but not limited to CMS, Medicare, and Medicaid.

19.    "Identify":  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

20.    "Identify":  When referring to documents, "to identify" means to give, to the extent known, the

      (a)    type of document;

      (b)    general subject matter;

      (c)    date of the document; and

      (d)    author(s), addressee(s), and recipients(s).

21.    "Independent Practice Association" means any organized group of providers whose members provide health care to any participant, beneficiary or patient.

22.    "MAC" means the maximum allowable cost, and includes the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

23.    "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, AWPIDs.

24.    "Medicare," "Medicare Program" or "Medicare Part B" means the government reimbursement system for prescription pharmaceuticals under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*.



25.    "Meeting" means any discussion between two or more persons either in person or telephonically.

26.    "Participant" and "Beneficiary" means a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

27.    "PBM" means a pharmacy benefit manager.

28.    "Person" means any natural person or any business, legal, or governmental entity or association.

29.    "Price" means any measure for the charging, payment or reimbursement of a drug, including but not limited to actual wholesale price, AMP, ASP, AWP, Best Price, direct price, estimated acquisition cost, list price, net wholesale price or other measure, comparison, estimate, benchmark or computation of price, and includes prices both with or without discounts, rebates or other incentives affecting the cost of the drug.

30.    "Private payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit funds.

31.    "Provider" means any physician or entity that provides health care to any Participant or Beneficiary.

32.    "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes *First DataBank*, *Red Book*, *Blue Book* and *Medispan*.

33.    "Relating" means concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

34.    "State the Basis."  When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion, allegation, or contention, the party shall:

(a)    identify each and every document, (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b)    identify each and every communication which forms any party of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c)    state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal

-4-



conclusions referred to in the interrogatory; and

(d)     state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

35.     "Third Party Administrator" means any entity that provides administrative services to any health plan or health and welfare fund relating to any medical benefit provided to any participant or beneficiary.

36.     "WAC" means wholesale acquisition cost or the list prices for sales by manufacturers to wholesalers.

37.     "Wholesaler" means any entity that purchase AWPIDs from a manufacturer and resells such drugs to any other entity.

38.     "You" or "Your" means the Defendant responding to these requests.

## II.     RULES OF CONSTRUCTION

1.     All/Each – The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.     And/Or – The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.     The use of the singular form of any word shall include the plural and vice versa.

4.     The masculine gender includes the feminine.

## III.     INSTRUCTIONS

1.     Control.  A document shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or public or private entity having possession or custody thereof.  If any otherwise responsive document was, but is no longer, in existence or in your possession, custody or control, or has been lost, discarded or destroyed, said document shall be identified as completely as possible including, but not limited to, the following information:

(a)     the date of disposal or disposition from your possession, custody or control;

(b)     the manner of disposal or disposition from your possession, custody or control;

(c)     the reason for disposal or disposition from your possession, custody or control;



        (d)     the person authorizing disposal or disposition from your possession, custody or control;

        (e)     the document's current or last known custodian;

        (f)     the circumstances surrounding the document's disposition from your possession, custody or control;

        (g)     the generic category of the document, *e.g.*, memo, letter, computer print-out, etc.;

        (h)     the type(s) of information contained in the document; and

        (i)     the identity of all persons having knowledge or who had knowledge of the contents of the document.

    2.    <u>All Documents</u>.  Unless otherwise indicated, the documents to be produced include all documents prepared, sent, dated or received, or those which otherwise came into existence at anytime during the relevant period described herein.

    3.    <u>Objections</u>.

        (a)     Where an objection is made to any document request under Fed. R. Civ. P. 34, the objection shall state with specificity all grounds.  Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

        (b)     Where a claim of privilege is asserted in objecting to any document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

        (i)     the attorney asserting the privilege shall in the objection to the document demand, or sub-part thereof, identify the nature of the privilege (including work product) that is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

        (ii)     the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

        (A)     for documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; and, (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;



(B)     for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; and, (3) the general subject matter of the communication.

4.     <u>Non-Objected Sub-Parts</u>. Notwithstanding the assertion of any objection to production, any document to which an objection is raised containing non-objectional subject matter which is relevant and material to a request must be produced, but that portion of the document for which the objection is asserted may be withheld or redacted provided that the above-requested information is furnished.

5.     <u>Continuing Duty</u>. This request is continuing and all documents coming into your possession, custody or control which you would have been required to produce had they been available at an earlier time shall be produced forthwith in accordance with the Federal Rules of Civil Procedure.

6.     <u>Entire Document</u>. Each document requested herein is requested to be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Redactions should be included on the privilege log described in Instruction 3.

7.     <u>Each Defendant Separate</u>. The fact that a document is produced by one defendant does not relieve any other defendant of the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

8.     <u>Originals and Non-Identical Copies</u>. In producing documents, you are requested to produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

9.     <u>Container Intact</u>. All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

10.     <u>Source Identifiable</u>. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

11.     <u>Don't Separate Attachments</u>. Documents attached to each other should not be separated.



12.   <u>Electronic Availability</u>.  Any documents available in an electronic format shall be so provided in that format, i.e., in an identical, usable electronic format.  If issues regarding compatibility of computer systems and software arise, the producing parties shall confer to resolve the matters.  In producing documents consisting of electronically stored data in machine readable form in response to any document request, provide such data in a form that does not require specialized or proprietary hardware or software.  Data files typically should be in sequential format, also known as ASCII files or flat files, with the data fields in fixed-column positions. For each data file provided, the following information should be included: a record layout, a short narrative description of the contents of the file, translation of any coded fields, the number of records in the file, and a printout of the first 100 records in report format. A record layout must contain the following pieces of information: name of the field, starting and ending position in the record, length of the field, and characteristics of the field (e.g., packed decimal, zoned decimal, alphanumeric).  The magnetic media should be in the most efficient, transferable form.  Data typically can be accepted in either ASCII or EBCDIC format.  Do not convert the data between ASCII and EBCDIC formats. The record length, blocksize and tape density must be provided. The tapes should be written with generic copy utilities rather than backup programs from a specific operating system. Where multiple magnetic media are necessary, recreation of the entire data must be enabled.  For example, where PC files are too large for one diskette, DOS BACKUP disk sets will be acceptable so long as they are accompanied by backup listings. Backup listings may be hard copy or ASCII files on non-backup diskettes. A backup listing must provide the path name necessary to individually restore each file in the backup. Compression utilities are acceptable so long as the utility is provided and such provision does not violate licensing or copyright laws.

13.   <u>Don't Alter Contents</u>.  No watermarks, stamps of "confidential" or the like shall be on the text or other contents of a document and (if the parties agree to production of photocopies in lieu of originals as requested by this pleading) no reduction of the size of an original document shall be made.

14.   <u>Reference Documents</u>.  Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

## IV.   DRUGS AT ISSUE

1.   "Class A drugs" means all physician or other provider-administered AWPIDs and all other AWPIDs that are, or at any time during the relevant period were, coverable under Medicare Part B.

2.   "Class B drugs" are all other AWPIDs.

3.   "All Classes" or "All Drugs" means all drugs identified in the AMCC.



## V.      RELEVANT TIME PERIOD

The relevant period of these document requests, unless otherwise indicated, shall be from January 1, 1991, to the date of production and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## VI.     REQUESTS FOR PRODUCTION

### *Category 1:  General Corporate*

1.      All documents sufficient to identify your policy or practice of document retention, destruction, disposal or preservation during the relevant time period.

2.      All current and historical organizational charts for all of your sales, marketing and pricing departments or divisions.

3.      Any and all company, organizational and policy information in its entirety, including but not limited to corporate policy and procedure manuals, and policy memoranda.

4.      Documents sufficient to identify your electronic mail, document management and other automated information systems.

5.      Documents sufficient to identify your electronic mail retention policies.

6.      Documents evidencing steps were taken by you (if any) from January 1, 2001 to the present to insure that discoverable information with respect to average wholesale price litigation is not destroyed or otherwise made unavailable.

7.      Documents sufficient to identify your policies and procedures concerning the back-up of data for your financial and your marketing, sales and promotion divisions, including but not limited to, the frequency of back-ups, all software and hardware used to perform back-ups, and all media onto which data is backed-up.

### *Category 2:  Trade Associations*

8.      All documents received from or provided to any trade association (such as the Pharmaceutical Research and Manufacturers of America), and any of its organizational subcommittees, including meeting agendas and minutes, concerning (i) Medicare reimbursement for drugs and/or the use of AWP in the reimbursement process; (ii) publications identified in Health Care Financing Administration Program Memorandum AB-99-63, including the *Red Book*, *Blue Book*, and *Medispan* ("pharmaceutical industry publications"); or (iii) a Government Investigation or inquiry as to the use of AWP in the reimbursement process.



***Category 3:  Governmental Investigations; Litigation***

9.　All documents produced by you, whether voluntarily or involuntary, in any governmental investigation or inquiry concerning the use of AWP.

10.　All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegations relating to AWPs.

11.　All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegations relating to the use of AWP.

***Category 4:  Communications With Governmental Entities***

12.　All documents created by or received from CMS, the United States Department of Health and Human Services, the Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal institution, agency, department, or office concerning prices for prescription drugs.

13.　All documents provided to CMS, the United States Department of Health and Human Services, and Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office concerning the price of any AWPID.

***Category 5:  AWPs and Pricing Related***

14.　All documents concerning any definition or meaning of AWP, including documents discussing how you or others define AWP.

15.　All documents discussing how the AWP has been or is currently determined for any AWPID.

16.　As to each of your AWPIDs, all documents concerning any actual, proposed, or prospective AWP announcements, changes or price lists, including the methodology and procedures used by you in considering whether to increase or decrease the AWP of each AWPID.

17.　As to each of your AWPIDs, all documents concerning any actual, proposed or prospective price announcement, price change or price list, including the methodology and procedures used by you in considering whether to increase or decrease the price for each AWPID.

18.　As to Class A drugs only, all sales-level detailing reports where AWPs, reimbursement based on AWPs, or the prices for AWPIDs was discussed.  (Class A Drugs)

19.　As to Class A drugs only, all sales-level detailing reports where price, discounts,



rebates, price concessions, forgiveness of debt, free samples, educational grants or other remuneration were discussed with a purchaser or potential purchaser of any of your AWPIDs.

20.    All documents, including organizational charts, that describe or list the individuals responsible for determining the price for each AWPID.

21.    All documents, including organizational charts, that describe or list the individuals responsible for determining the price for each AWPID.

22.    For each of your AWPIDs, all documents concerning the "product market," as defined in the 1992 Department of Justice and Federal Trade Commission Horizontal Merger Guidelines, in which each AWPID competes including, but not limited to, all documents that: (a) discuss, address, concern, regard, or reflect products that have a significant cross-elasticity of demand, or that are reasonably substitutable for, interchangeable with, or close therapeutic equivalents and/or (b) discuss, address, concern, regard, or reflect whether, and to what extent, the marketing, pricing, and/or sale of a drug other than your AWPID has caused, or could or might cause, physicians, consumers, and other individuals or entities to terminate or reduce their purchase or use of your AWPID.

23.    For each of your AWPIDs, all documents concerning the "geographic market" or markets in which the AWPID competes including, but not limited to, all documents that (a) discuss, concern, regard, or reflect the geographic area within which the AWPID is marketed, and (b) discuss, concern, regard or reflect the area within which you and your competitors view themselves as competing with respect to the AWPID.

24.    For each of your AWPIDs, all documents concerning your strategic and marketing plans including, but not limited to all pricing, reimbursement, brand switching, and consumer segmentation studies and/or surveys.

25.    For each of your AWPIDs, all documents (in digital, computerized form where available) that identify each customer who purchased the AWPID. For each of these purchasers, all documents that reflect:

(a)    Each sale or other transaction involving the AWPID including the date thereof;

(b)    The number or units of the AWPID sold by dosage strength and package size for each sale or other transaction;

(c)    The invoice amount in dollars for each sale or other transaction concerning the AWPID;

(d)    Discounts, rebates, chargebacks, and other price adjustments relating to each sale, transaction, or set of transactions involving or relating to the AWPID;

(e)    The net amount in dollars for each sale or transaction concerning the AWPID;

(f)    Any other price or unit adjustments – whether monthly, quarterly or on any other basis – involving or relating to sales or transaction involving the AWPID;



(g)     The full name and address of each entity purchasing the AWPID (and, in addition, the full name and address of the parent company where the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse).

26.     For each of your AWPIDs, all documents that reflect the prices charged to, or terms of conditions of sale for, purchasers of the AWPID including, but not limited, to:

(a)     The wholesale acquisition price or other published price of the AWPID or any generic equivalent;

(b)     Payment terms;

(c)     discounts, rebates, chargebacks or other adjustments offered to any class of purchaser;

(d)     Prices and terms of sales for wholesale purchasers;

(e)     Prices and/or discounts and/or rebates or other adjustments for chain pharmacy purchasers;

(f)     Prices and/or discounts and/or rebates or other adjustments for hospital purchasers;

(g)     Prices and/or discounts and/or rebates or other adjustments for managed care purchasers;

(h)     Prices and/or discounts and/or rebates or other adjustments for pharmacy benefit managers;

(i)     Prices and/or discounts and/or rebates or other adjustments for internet pharmacies;

(j)     Prices and/or discounts and/or rebates or other adjustments for mail order purchasers; and

(k)     Prices and/or discounts and/or rebates or other adjustments for any other purchaser class or subgroup.

27.     For each of your AWPIDs, documents sufficient to show, in digital or computerized form, in chronological order:

(a)     The date of each sales transaction;

(b)     Every discount, rebate, and/or any other adjustment that any customer of D has received;



(c)     The date each discount, rebate, and/or any other adjustment was given;

(d)     The time period covered by each discount, rebate, and/or any other adjustment;

(e)     Sales in units by National Drug Code sold, shipped, and/or returned by dosage form, strength, and package size;

(f)     Sales in dollars by National Drug Code sold, shipped, and/or returned by dosage form, strength, and package size;

(g)     Net sales in dollars for each sale;

(h)     The name, address, account number, and all other identifying numbers or codes for the person or entity billed, invoices, and/or credited for the transaction; and

(i)     The name, address, account number, and all other identifying numbers or codes for the person or entity to whom the product was shipped or from whom product returns were received.

28.     For each of your AWPIDs, documents sufficient to identify:

(a)     The published AWP;

(b)     AMP;

(c)     ASP;

(d)     EAC;

(e)     WAC;

(f)     MAC;

(g)     Earned margin (difference between AWP and actual product cost);

(h)     Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates, chargebacks, discounts, allowances, credits, administrative fees, price/volume discounts and any other incentives provided to third parties.

(i)     Documents summarizing all rebates, chargebacks, discounts, allowances, credits, administrative fees, price volume discounts or other incentives.

29.     For each of your AWPIDs, all agreements for sale of the AWPID, whether or not those contracts are with customers who purchased the AWPID directly, including drafts, correspondence, and supporting detail and data (in computerized form where available).



30.     All documents concerning communications between you and IMS Health (or any similar entity providing pharmaceutical database information) concerning or relating to any of your AWPIDs.

31.     For each of your AWPIDs, documents sufficient to estimate the number of patients taking the AWPID over each one year period.

32.     For each of your AWPIDs, all documents concerning your actual, potential, or expected revenues and/or profits from the sale of that AWPID.

33.     All documents concerning or relating to the actual or potential impact of the pricing or reimbursement of any drug on the quantity of any of your AWPIDs that have been or might be sold.

34.     Documents sufficient to show your per-unit average total cost for each of your AWPIDs, and the components that make up that figure, including but not limited to raw materials, manufacturing, marketing, sales and packaging costs.

35.     All documents concerning or relating to the difference between an AWP and any other price for any AWPID.

### *Category 6: Inducements*

36.     All documents describing any discount programs (including but not limited to volume discounts), rebates, incentives, or penalties for each AWPID.

37.     All documents relating to the use or provision of free samples, educational grants, marketing grants, and payments for specific data gathering or other incentives relating to any AWPID.

38.     All documents evidencing any "credit memos" or credit extended to hospitals, GPOs or other purchasers of AWPIDs, including but not limited to credit memos or credit issued via a wholesaler to a purchaser, and/or credit for the purpose of "returned goods."

39.     All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or could be given to any hospital, GPO, HMO, physician, wholesaler or other purchaser of AWPIDs.

40.     All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or could be given to any hospital, GPO, HMO, physician, wholesaler or other purchaser of AWPIDs.

41.     All documents relating to or reflecting any payments you gave to providers relating to any AWPID.  (Class A Only)



42.    All documents evidencing any chargebacks with respect to the sale of an AWPID.

### *Category 7:  Marketing Plans and Sales Representatives*

43.    Documents sufficient to determine complete contact information for all personnel with responsibility for marketing and promotional activity for AWPIDs.  Include Marketing Department Product or Brand Managers, and members of Marketing Advisory Boards, and include home address and telephone number.  (Class A Drugs)

44.    A list of all national level sales awards available for each AWPID.  (Class A Drugs)

45.    Quarterly, semi-annual and annual business plans for each winner of the top national sales award winners and direct supervisors.  (Class A Drugs)

46.    Any summaries or reports made by a sales representative that evidence a discussion between that sales representative and a provider regarding AWPs for AWPIDs, reimbursements based on AWPs for AWPIDs, and any difference between what the provider is reimbursed for AWPIDs and what the provider pays for the AWPID.  (Class A Drugs)

47.    For each AWPID, sales representatives' field notes for the top 50 sales representatives for each year.  (Class A Drugs)

48.    Documents sufficient to describe any computer programs that you employ or have employed to manage your sales force, including but not limited to programs that collect data on the number of provider contacts and summarize the nature of the discussions between your sales representatives and providers.  Examples of such programs include programs marketed by Siebel Systems and ImpactRx, as well as any programs developed by you.  (Class A Drugs)

49.    All documents relating to discussions between sales managers and sales representatives after field visits where AWPs, reimbursements rates, or the spread was discussed. (Class A Drugs)

50.    All documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool, on any AWPID was discussed.  (Class A Drugs)

51.    All communications between you and any party in the reimbursement cycle or pharmacies relating to reimbursement and AWP.  (Class A Drugs)

52.    All documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug.  (Class A Drugs)

53.    All documents relating to all actual, proposed, or prospective marketing methods, practices, policies, or strategies for each AWPID to the extent such documents refer to AWP, the spread, or to discounts of any type.



NITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
|  | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | Judge Patti B. Saris |

**NOTICE OF RULE 30(b)(6) DEPOSITION**

TO:    ALL COUNSEL OF RECORD VIA VERILAW:

PLEASE TAKE NOTICE THAT pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition upon oral examination of a representative of Abbott, who is knowledgeable regarding the matters designated on attached Exhibit "A."  The deposition shall take place on June 6, 2006 at 9:00 a.m., and shall continue until concluded at the offices of Hagens Berman Sobol Shapiro LLP, 60 West Randolph Street, Suite 200, Chicago, IL 60601.

Testimony will be recorded and transcribed by a court reporter, for use at trial and all other purposes permissible under the Federal Rules of Civil Procedure.  You are invited to attend and participate.

1534.16 0194 MTN.DOC



DATED:  April 20, 2005

By___/s/ Steve W. Berman_____
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735



Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Samuel D. Heins
Alan I. Gilbert
Susan E. MacMenamin
Heins, Mills & Olson, P.C.
3550 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
**CO-LEAD COUNSEL FOR
PLAINTIFFS**

1534.16 0194 MTN.DOC



**EXHIBIT "A"**

<u>INSTRUCTIONS</u>

All of the definitions from Plaintiffs' Omnibus Requests for Production of Document Directed to All Defendants are incorporated herein by reference.

"AWPID" refers to all of the drugs identified in Appendix A to the AMCC.

"Spread" refers to the difference between AWP or any price upon which reimbursement for a drug is based, on the one hand, and the actual or net price paid for a drug on the other hand.

Unless otherwise specifically stated, each of these Areas of Inquiry encompasses the years 1991 through the present and focuses only on physician-administered AWPIDs.

<u>AREAS OF INQUIRY</u>

1.      The identity of documents describing how prices on physician-administered drugs are established and the identity of persons with knowledge on this issue.

2.      The identity of documents describing the price paid by physicians or others reimbursing for physician-administered drugs, and the identity of persons with knowledge on this subject

3.      The types of materials maintained by the sales force, including "detail" reports, field sales notes, and electronic databases.

4.      Communications, oral or written, with publishers on any of the following:  list price, AWP, net price, suggested wholesale price, WAC, or any other communication with publishers.

5.      The identity and nature of the competitive drugs with respect to each physician-administered AWPID.



6.    The ASPs on each AWPID and the spread between ASP and AWP, and how defendant calculates ASP.



## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **NOTICE OF RULE 30(B)(6) DEPOSITION** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 20, 2005, a copy to Verilaw Technologies for Posting and notification to all parties

By_____/s/ Steve W. Berman_____

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

# Exhibit B

| Name | Date | Location |
|---|---|---|
| Mark Sebree | December 2, 2005<br>9:30 a.m. | The Wexler Firm [LLP]<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Michael Sellers | November 10, 2005<br>9:30 a.m. | The Wexler Firm [LLP]<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Dennis Walker | November 9, 2005<br>9:30 a.m. | The Wexler Firm [LLP]<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |

The deposition will be taken before a notary public or another officer authorized by law to administer oaths and recorded by videotape and stenographic means. You are invited to attend.

Dated: October 28, 2005

Respectfully submitted,

By _____

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm [LLP]
One N. LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

3

## CERTIFICATE OF SERVICE BY FILE & SERVE

Docket No. MDL 1456

I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on October 28, 2005, I caused copies of the foregoing *Notice of Video Depositions of Representatives of Abbott Laboratories* to be served on all counsel of record by causing same to be posted electronically via LexisNexis File & Serve.

_Jennifer F. Connolly_
Jennifer Fountain Connolly

# Exhibit C



7311798

Oct 28 2005
8:01PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| \IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS. | Judge Patti B. Saris |

## NOTICE OF VIDEO DEPOSITIONS
## OF REPRESENTATIVES OF ABBOTT LABORATORIES[1]

**TO:    ALL COUNSEL OF RECORD**

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiffs, by and through their counsel, will take the deposition upon oral examination of the following representatives of Abbott Laboratories on the dates and at the times indicated below, and continuing from day to day thereafter until completed.

| Name | Date | Location |
|---|---|---|
| Harry Adams | November 11, 2005 9:30 a.m. | The Wexler Firm [LLP] One North LaSalle Street Suite 2000 Chicago, IL  60602 |
| John J. Casey | November 14, 2005 9:30 a.m. | The Wexler Firm [LLP] One North LaSalle Street Suite 2000 Chicago, IL  60602 |
| Jerrie Cicerale | November 15, 2005 9:30 a.m. | The Wexler Firm [LLP] One North LaSalle Street Suite 2000 Chicago, IL  60602 |

---

[1]  This Notice is issued without prejudice to issue subsequent notices based on Abbott's production of addition responsive documents to MDL plaintiffs.  Despite numerous requests from plaintiffs, Abbott has not supplemented its production since June 30, 2005; thus, plaintiffs have issued this notice based on an incomplete production.

| Name | Date | Location |
|---|---|---|
| Gregg Conwell | November 16, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Gerald Eichorn | November 17, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Jeffrey Hamlin | November 18, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Michael Heggie | November 21, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Pete Karas | November 22, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Steve Kipperman | November 23, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Clifford Krajewski | November 25, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Ted Lyjak | November 28, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Lynn Leone | November 29, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| Doug McGill | November 30, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |
| D.C. Robertson | December 1, 2005<br>9:30 a.m. | The Wexler Firm LLP<br>One North LaSalle Street<br>Suite 2000<br>Chicago, IL 60602 |



54.    All documents relating to any communication with doctors, other health care professionals, or any person or entity providing health care services to seek Medicare reimbursement or consumer co-payment for free samples of each AWPID you provided to them. (Class A Drugs)

55.    All marketing and sales materials which compare the AWP, price, market share, rebates, pricing discounts, incentives, or penalties for each AWPID with the AWP of any other pharmaceutical.  (Class A Drugs)

### *Category 8:  Publishers*

56.    All documents concerning communications between you and any publisher concerning measures of price for pharmaceuticals, including ASP, AWP, WAC or other measures of price.

57.    For each of your AWPIDs, separately produce all documents concerning communications between you and a publisher regarding the price(s) for that AWPID.

58.    All documents concerning your role in the publication, appearance and/or advertisement of the AWP, WAC or other price measure for your AWPIDs in any publication of a publisher.

59.    All documents concerning the role of the publisher in the publication, appearance and/or advertisement of the AWP, WAC or other price measure for each of your AWPIDs in a publication of a publisher.

60.    All documents relating to the role of some person other than yourself and the publisher in the publication, appearance and/or advertisement of the AWP, WAC and/or other price measure for each of your AWPIDs in any publication of a publisher.

61.    All documents relating to your role in the publication, appearance, or advertisement of the AWP, WAC or other pricing information in any pharmaceutical-related industry publications, including publications of the publishers.

62.    All documents concerning the use by any participant in the drug distribution/sales channels (e.g., wholesalers, retailers, pharmacies, pharmacy benefit managers, insurers, etc.).

63.    All documents concerning agreements between you and any publisher.

64.    All documents concerning any payments made by you to a publisher, where such payments related in any way to drug pricing.

65.    All documents relating to any investments or loans that you have made in or to a publisher.

66.    All notes or minutes of any meetings between you and a publisher where drug

-16-



pricing was discussed.

67.    All documents concerning communications between you and a publisher about litigation involving AWP or drug pricing.

68.    All documents regarding any pricing surveys that publishers have done for AWPIDs.  (All Drugs)

69.    All documents regarding communications between you and a publisher about drug reimbursement systems, including Medicare, Medicaid and private insurance.  (All Drugs)

### *Category 9:  PBMs; Wholesalers*

70.    All documents concerning your contractual relationships with wholesalers, independent practice associations, pharmacies or providers insofar as they cover AWPIDs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

71.    Documents sufficient to identify all persons involved in negotiation of contractual relationships with wholesalers, manufacturers, independent practice associations, pharmacies, PBMs or providers insofar as they cover any AWPID.

72.    All documents relating or referring to your contractual relationships with PBMs insofar as they cover AWPIDs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

73.    Documents sufficient to identify all persons involved in negotiation of contractual relationships with PBMs insofar as they cover any AWPID.

74.    All documents relating to marketing materials that you have provided PBMs for any AWPID.

75.    All documents relating to any communications between you and PBM regarding AWP, or to any fees or monies paid to or retained by a PBM.

76.    All documents relating to any communications between you and any PBM regarding the revenue, profit, spread or other consideration that a PBM would earn based on any difference between your price for any AWPID and the compensation that the PBM receives for the AWPID.

77.    All documents relating to the pricing of any of your AWPIDs sold to or through any PBM.

78.    All documents relating to any rebates that you have provided PBMs for any AWPID.



79.     Excluding Rebates, all documents referring or relating to your provision of any other consideration to a PBM for AWPIDs, including but not limited to:

    a.   Administrative fees for assembling data to verify market share results;

    b.   Fees for selling other data;

    c.   Fees for encouraging physicians to change prescribing patterns;

    d.   Prompt payment discounts;

    e.   Free drugs;

    f.   Drug samples;

    g.   Credit memos or credit extended to any PBM, including but not limited to credit memos or credit issued for the purported reason of "returned goods;"

    h.   Other discounts, fees or grants.

80.     All documents relating to the placement of any of your AWPIDs on a PBM formulary.

### *Category 10:  Communications With Other Manufacturers*

81.     All documents relating to any communications, including meetings, between you and any other pharmaceutical company regarding:

    (a)     any actual, proposed or prospective price, price announcements, price changes, or price lists for any AWPID;

    (b)     any actual, proposed, or prospective pricing methods, practices, policies or strategies for any AWPID;

    (c)     any actual, proposed, or prospective marketing methods, practices, policies, or strategies for any AWPID;



(d)     any actual, proposed, or prospective pricing discounts, rebates, bids, or incentives for any AWPID;

(e)     territories or markets for sales or potential sales for any AWPID;

(f)     Medicare Part B and its policy of reimbursement for any AWPID;

(g)     the AWP of any AWPID;

(h)     pharmaceutical industry publications; and

(i)     market conditions or market shares.

### *Category 11: Miscellaneous*

82.     Any documents relating to the repackaging or relabeling of any AWPID including but not limited to:  (a) documents indicating that any AWPID with a specific NDC has been repackaged and is being sold with a different NDC, but is the same drug; and (b) for any repackaged AWPID, documents evidencing the AWP of the original AWPID and of the repackaged AWPID, and documents evidencing the bases, methods and/or reasons for any change in the AWP.

## VII.   INTERROGATORIES

1.     For the period beginning January 1, 1997, and for each subsequent calendar quarter, and with respect to each of the AWPIDs, identify the following information:

a.     the total volume of sales, indicating both the number of units and net revenue;

b.     the "average wholesale price" (AWP), as reported in Medical Economics *Red Book, First Data Bank* and/or *MediSpan*, and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of AWP, whether higher or lower, (ii) at more than five percent above AWP, and (iii) at more than five percent below AWP;

c.     the " average manufacturer price" ("AMP"), as reported to the Secretary of Health and Human Services, pursuant to the requirements of Social Security Act ("SSA") § 1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at AMP and up to and including 10% above AMP, and less than or equal to 10% below AMP (broken out separately), (ii) at greater than 10% above AMP but less than or equal to 20% above AMP, and at greater than 10% below AMP but less than or equal to 20% below AMP (broken out separately), (iii) at greater than 20% above AMP but less than or equal to 30% above AMP, and at greater than 20% below AMP but less than or equal to 30% below AMP (broken out separately), (iv) at greater than 30% above AMP but less than or equal to 40% above AMP, and at greater than 30% below AMP but less than or equal to 40% below AMP (broken out separately), and (v) at greater than 40% above AMP but less than or equal to 50% above AMP,



and at greater than 40% below AMP but less than or equal to 50% below AMP (broken out separately);

d.    the "wholesale acquisition cost" ("WAC"), as reported by Medical Economics *Red Book, First Data Bank* and/or *MediSpan* or any other such entity that gathers and publishes "wholesale acquisition costs," and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of WAC, whether higher or lower, (ii) at more than five percent above WAC, and (iii) at more than five percent below WAC;

e.    the "average sales price" (ASP), *i.e.*, the price after reflecting discounts, rebates, chargebacks, to all classes except FSS;

f.    the total volume of the subject drug, in units, distributed as free goods.

2.    For the period beginning January 1, 1997, to the present, has the distribution, marketing, sales or promotion of any AWPID considered, incorporated, or been based upon, in any way, the difference between the cost to the provider and the amount that the provider receives for reimbursement or sale? If so, please describe the circumstances of such distribution, marketing, sales, or promotion, and provide all documents relating thereto, and identify all past and current employees with knowledge of the facts relating to such marketing, sales or promotion.

3.    For the period of January 1, 1997, to the present, please state for each calendar quarter the largest single purchaser, in terms of units, of each of the AWPIDs and the following:

a.    the total number of units of the AWPIDs received by that purchaser; and

b.    the total net revenue received for the AWPIDs by your company from that purchaser.

Please also produce the contract or agreement governing your relationship with that purchaser for each relevant quarter.

4.    For the period of January 1, 1997, to the present, and for each subject drug, please provide a list of all purchasers who received the subject drug at a price exempted from the calculation of the Medicaid "best price," pursuant to the requirements of SSA _1927(c)(1)(C)(ii)(III), and, for each such purchaser, indicate the volume of the AWPID received by calendar quarter, in units, and the range of prices at which such purchaser received the subject drug for that quarter.

5.    With respect to each AWPID, please describe how you calculate the prices and/or data reported to Medical Economics *Red Book, First Data Bank* or *MediSpan* or any other such entity that gathers and publishes either "average wholesale prices," "list prices," or "wholesale acquisition costs." And for each drug identify the persons responsible for doing so. (All Drugs)



6.      Identify the source of each of the documents produced in response to plaintiffs'
requests for the production of documents throughout this litigation by identifying the person(s)
who possessed those documents, the job position of any such individuals, and the division and
department where such documents were located.  If you are unable to determine the individual(s)
who possessed the documents, identify the department and division where they were/are located
when produced.

DATED:        March 31, 2004                      By _____

                                                 Thomas M. Sobol (BBO # 471770)
                                                 Edward Notargiacomo (BBO #567636)
                                                 Hagens Berman LLP
                                                 225 Franklin Street, 26th Floor
                                                 Boston, MA  02110
                                                 Telephone: (617) 482-3700
                                                 Facsimile: (617) 482-3003

                                                 **LIAISON COUNSEL**

                                                 Steve W. Berman
                                                 Sean R. Matt
                                                 Hagens Berman LLP
                                                 1301 Fifth Avenue, Suite 2900
                                                 Seattle, WA  98101
                                                 Telephone: (206) 623-7292
                                                 Facsimile: (206) 623-0594

                                                 Samuel Heins
                                                 Brian Williams
                                                 Heins Mills & Olson, P.L.C.
                                                 3550 IDS Center
                                                 80 South Eighth Street
                                                 Minneapolis, MN 55402
                                                 Telephone: (612) 338-4605
                                                 Facsimile: (612) 338-4692

                                                 Jeff Kodroff
                                                 John Macoretta
                                                 Spector, Roseman & Kodroff, P.C.
                                                 1818 Market Street, Suite 2500
                                                 Philadelphia, PA  19103
                                                 Telephone: (215) 496-0300
                                                 Facsimile: (215) 496-6611

                                                 **CHAIRS OF LEAD COUNSEL
                                                 COMMITTEE**



Marc H. Edelson
Alan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Elizabeth Fegan Hartweg
The Wexler Firm
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

**MEMBERS OF LEAD COUNSEL
COMMITTEE AND EXECUTIVE
COMMITTEE**

Michael McShane
Alexander, Hawes & Audet, LLP
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 982-1886
Facsimile: (415) 576-1776

Robert E. Piper, Jr.
Piper & Associates
624 Pierre Avenue
Shreveport, LA 71103
Telephone: (318) 226-0826
Facsimile: (318) 424-9900

**MEMBERS OF EXECUTIVE
COMMITTEE**

Anthony Bolognese
Bolognese & Associates
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Tel: (215) 814-6750
Fax: (215) 814-6764

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Avenue, N.E.
Suite 300
Washington, D.C. 20002
Tel: (202) 789-3960
Fax: (202) 789-1813



Neal Goldstein (Of Counsel)
Freedman & Lorry, PC
400 Market Street, Suit 900
Philadelphia, PA 19106
Tel: (215) 925-8400
Fax: (215) 925-7516

Michael E. Criden
Hanzman & Criden, PA
Commerce Bank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL 33134
Tel: (305) 357-9000
Fax: (305) 357-9050

Blake M. Harper
Kirk B. Hulett
Hulett Harper LLP
550 West C Street, Suite 1700
San Diego, CA 92101
Tel: (619) 338-1133
Fax: (619) 338-1139

Jonathan D. Karmel
Karmel & Gilden
221 N. LaSalle Street
Suite 1414
Chicago, IL 60601
Tel: (312) 641-2910
Fax: (312) 641-0781

Dianne M. Nast
Roda & Nast, PC
801 Estelle Drive
Lancaster, PA 17601
Tel: 717-892-3000
Fax: 717-892-1200

Henry H. Rossbacher
Rossbacher & Associates
811 Wilshire Boulevard,
Suite 1650
Los Angeles, CA 90017-2666
Tel: (213) 895-6500
Fax: (213) 895-6161

Jonathan Shub
Sheller, Ludwig & Badey, P.C.
1528 Walnut Street, 3rd fl
Philadelphia, PA 19102
Tel: (215) 790-7300
Fax: (215) 546-0942



Scott R. Shepherd
Shepherd & Finkleman, LLC
117 Gayley Street, Suite 200
Media, PA 19063
Tel: (610) 891-9880
Fax: (610) 891-9883

Lisa J. Rodriguez
Ira Neil Richards
Trujillo Rodriguez& Richards, LLC
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Tel: (215) 731-9004
Fax: (215) 731-9044

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
2615 Calder Street, Suite 400
P.O. Box 350
Beaumont, TX 77704
Tel: (409) 838-0101
Fax: 409-838-6780

Damon Young
Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
P.O. Box 1897
Texarkana, AR/TX 75504
Tel: (903) 794-1303
Fax: 903-792-5098; 903-794-5098

**ADDITIONAL ATTORNEYS FOR
PLAINTIFFS**

### CERTIFICATE OF SERVICE

    I hereby certify that I, Thomas M. Sobol, an attorney, caused a true and correct copy of the foregoing Plaintiffs' Omnibus Requests For Production And Interrogatories To Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, Tap And Watson And To All Other Defendants With Respect To Drugs That Were Not Previously Subject To Discovery to be served on all counsel of record electronically on March 31, 2004, pursuant to Section D of Case Management Order No. 2.

Thomas M. Sobol, Esq.
**HAGENS BERMAN LLP**
225 Franklin Street, 26th Floor
Boston, MA 02110
Telephone: (617) 482-3700