# Exhibit D

**Jennifer F. Connolly**

| | |
|---|---|
| **From:** | Jennifer F. Connolly |
| **Sent:** | Monday, December 12, 2005 10:29 AM |
| **To:** | ttabacchi@jonesday.com; Toni-Ann Citera |
| **Cc:** | Jennifer F. Connolly |
| **Subject:** | AWP:  Abbott depositions |

Tina and Toni -

In preparing for this week's Abbott's depositions, it has become clear that, due to the status of Abbott's document production (combined with the fact that we are no longer dealing with a December 3 discovery deadline), it does not make sense for plaintiffs to go forward with many of the Abbott depositions scheduled for this month.

Regarding the document production, we are in the process of preparing a detailed letter that will set forth the substantial areas where Abbott's document production is deficient.  After reviewing that letter I suggest that we set up and meet and confer regarding those issues (Toni has suggested I do so with Beth, which is fine).  In short, there has been virtually no production from the sales department, Abbott still has not devised a method for reviewing its archived e-mails such that its e-mail production to-date is minimal, and there are significant time periods missing in other areas of the production.  While Abbott has been doing a weekly ongoing document production, all of those documents for the past five weeks have consisted of wholesaler price lists and other "document dump"-type material.

This is what plaintiffs propose regarding the depositions currently scheduled for December.  Plaintiffs will postpone (not cancel) the depositions of:

Steve Kipperman (scheduled for December 14)*
Cliff Krajewski (December 19)
Ted Lyjak (December 21)
Jeff Hamlin (Dec. 22)

We would keep scheduled the 30(b)(6) of Mike Sellers set for December 20 and the December 30 deposition of Mark Sebree.

While I'm sure you will disagree with my characterization of Abbott's document production, in order to move this case forward and avoid having disputes in February about continuing depositions based on documents produced at the last minute, I think it makes sense to proceed in this fashion.  My initial communications with you back in the Spring of this year were positive and suggested that we might be able to work out discovery disputes to get plaintiffs the documents we need in an efficient manner.  This is not the way things have worked.  Rather that just continuing on a path that is going to land us before Judge Bowler all of March, we recommend that we proceed this way.

Thanks -
Jennifer

* I already postponed the John Casey deposition with Tony this weekend.  In the event that Abbott has already expended significant time preparing Mr. Kipperman, plaintiffs can go forward with that deposition but will specifically reserve the right to redepose him based on Abbott's document production.  Let me know which way

you would prefer to proceed.

Jennifer Fountain Connolly
**THE|WEXLER|FIRM** LLP
One North LaSalle St., Suite 2000
Chicago, IL  60602
(312) 346-2222
(312) 261-6195 (direct)
(312) 346-0022 (facsimile)
www.wexlerfirm.com

# Exhibit E

**Jennifer F. Connolly**

| | |
|---|---|
| **From:** | Jennifer F. Connolly |
| **Sent:** | Wednesday, December 14, 2005 4:11 PM |
| **To:** | tmtabacchi@jonesday.com |
| **Subject:** | AWP:  Your letter of December 12 |

Tina -

Due to the holidays we may be later than I originally anticipated in getting you a letter that will specifically discuss deficiencies in Abbott's document production.  I just wanted to make you aware of the delay so that you will not construe our silence as an admission of anything in your December 12 letter.

Regarding the document dump issue, I engaged in extensive and what I thought at the time were good faith discussions with Beth O'Connor in the Spring  and Summer of 2005 regarding what plaintiffs "really" wanted. You and I likewise discussed on the phone ways to streamline discovery.  So it is not the case that we have not attempted to limit the scope of plaintiffs' Omnibus Requests.  Therefore, if Abbott still wants to engage in those types of discussions rather than producing a CD per week of relatively meaningless material, I welcome the opportunity to resume those discussions.

We will talk more in the new year regarding scheduling the postponed depositions.  In the meantime, have an enjoyable holiday.  In any event, I assume I will see you on the 20th.

Jennifer

Jennifer Fountain Connolly
THE|WEXLER|FIRM LLP
One North LaSalle St., Suite 2000
Chicago, IL  60602
(312) 346-2222
(312) 261-6195 (direct)
(312) 346-0022 (facsimile)
www.wexlerfirm.com

# Exhibit F

# T H E | W E X L E R | F I R M LLP

January 19, 2006


***Via Facsimile***


Ms. Tina Tabacchi                            Ms. Toni-Ann Citera
Ms. Beth A. O'Connor                         Jones Day
Jones Day                                    222 East 41st Street
77 W. Wacker Drive                           New York, New York  10017-6702
Chicago, IL  60601-1692

> Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*
>        MDL No. 1456 (D. Mass.)

Dear Tina, Beth and Toni:

I write with regard to deficiencies in Abbott's document production that forced plaintiffs to postpone several of the depositions previously scheduled in December 2005.

As an initial matter, we write this letter in the spirit of getting documents that, in plaintiffs' experience with the Track 1 defendants, will constitute a *meaningful* production. Since the Court extended the Track 2 deadline beyond December 3, Abbott has attempted to paper the record by producing thousands and thousands of pages of price lists and contracting documents. Tina has defended this production by stating that those documents are responsive to plaintiffs' Omnibus Requests. However, as I made clear in my first letter to you and in all the subsequent meet and confers I had with Beth, we are interested in an efficient production rather than one that keeps our respective copy vendors in business. With these guidelines in mind, plaintiffs are missing the following key types of documents from Abbott:

   **E-mails.**  Back in the spring of 2005 I discussed with Beth how Abbott was going to search its e-mail systems for responsive documents. At that time Abbott had retained an e-discovery vendor and was pursuing various options on producing archived e-mails. On July 8, I provided you with a list of potential search terms. Despite these initial efforts, plaintiffs have not received *any* supplemental e-mail productions. We need to discuss, among other things, when this production will be forthcoming as well as its anticipated volume.

   **Source List.**  We have repeatedly asked for a source list for Abbott's production, but Abbott has not produced one. *See, e.g.,* Letter to Toni and Beth dated May 26, 2005; letter to Beth dated July 19, 2005. Please provide this.

   **Categories of Documents.**  Moreover, although Beth has given me numerous assurances that Abbott was "investigating" whether Abbott would and could produce

THE ⎮ WEXLER ⎮ FIRM LLP

Ms. Tina Tabacchi
Ms. Beth A. O'Connor
Ms. Toni-Ann Citera
January 19, 2006
Page 2

numerous types of documents in which plaintiffs have indicated a specific interest, we have never received answers regarding Abbott's position on these types of documents:

- Strategic plans, business plans and marketing plans. Although Beth told me (prior to the Court's August 16 class certification order) that most of these documents would have been contained in a PPD production, we have not seen *any* of these types of documents in the HPD production. Please advise whether they will be forthcoming.

- Documents reflecting discussions about Abbott's pricing methodologies. Plaintiffs are not looking for every document that contains WAC; rather, we are looking for internal documents discussing Abbott's pricing methodologies. These documents have not been produced.

- Trade association documents. You have not advised us whether Abbott will be producing these types of documents and, if it will not, the grounds upon which Abbott is refusing to produce them.

**Sales Documents.** Perhaps Abbott's greatest area of deficiency is in its production of sales-related documents. In her December 12 letter, Tina advised that Abbott has produced "contracts, price lists, customer files, pricing analyses, communications with customers, as well as numerous other documents and emails contained in the working files of may individual 'sales department' employees." As an initial matter, given the substance of what has been produced to us it is unclear that Abbott had produced any working files of sales employees, unless Abbott's definition of "sales employees" is vastly more expansive than ours.

Moreover, Tina's list completely ignores that plaintiffs have requested – but have never received: (a) lists of Abbott's sales awards during the class period and the recipients thereof; (b) communications or records of meetings between account representatives and providers regarding AWPIDs or the reimbursement thereof; (c) reports submitted by field personnel to their supervisors;[1] (d) reports submitted by district managers to their

---

[1] Among these documents are the monthly sales reports described by Abbott witnesses. (Karas Dep., at 87, 112; Sellers Dep., at 98.); monthly "significant events" reports developed by Regional Managers and submitted to their superiors (Sellers Dep., at 105), as well as the performance evaluation forms used in connection with supervision of sales representatives during the class period. (Sellers Dep., at 103.)

T H E │ W E X L E R │ F I R M <sup>LLP</sup>

Ms. Tina Tabacchi
Ms. Beth A. O'Connor
Ms. Toni-Ann Citera
January 19, 2006
Page 3

supervisors; (e) materials given during field sales training or describing the training performed;[2] and (f) materials used by the field sales force in marketing AWPIDs.[3]

We realize that Abbott field sales personnel did not regularly maintain call notes; however, neither you nor any Abbott witnesses have ever represented that _no_ sales personnel maintained call notes. Rather, you and Abbott witnesses have said that whether to require field sales personnel to keep call notes or documents of a similar nature was left in the discretion of district managers. It is Abbott's responsibility in locating responsive documents to identify the supervisors that required submission of these types of documents and then, in turn, produce these documents to plaintiffs.[4]

**Additional Documents Referenced During Sellers, Karas, and Sebree Depositions.** In addition to the categories of documents described above, Abbott deponents have also referenced a variety of specific documents that have not yet been produced. All of these documents are clearly responsive to plaintiffs' Omnibus Requests.

First, Abbott has produced few, if any, documents related to the promotion of AWPIDs. Mr. Sebree described "advertising budgets," as well as "journal ads" that he developed in connection with outside agencies. (Sebree Dep., at 31.) Abbott's production of these documents is not yet complete.

---

[2] For example, Abbott has failed to produce documents related to Abbott's codes of conduct. (_See_ Sellers Dep., at 118; Karas Dep., at 93, 127.) Moreover, prior to the introduction of the code of conduct, Abbott utilized "brochures" that contained the rules governing sales representatives' activities. (Karas Dep., at 94.) Abbott has yet to produce these documents.

[3] For example, Mr. Sellers described "marketing packets" that were provided to sales representatives in connection with each new product introduction. (Sellers Dep., at 116.) He also referenced "field-generated agreements" and other templates developed by the contract marketing department for use by sales representatives. (Sellers Dep., at 113.) Further, Mr. Karas described a "seeding" or "trial" program involving the provision of free product to customers, yet Abbott has produced almost no documents related to this program. (Karas Dep., at 123.)

[4] You have also indicated that plaintiffs are improperly seeking HPD sales documents that would only be related to sales to hospitals. On the contrary, plaintiffs are seeking these documents as they relate to either Alternate Site or Renal Care sales forces – apparently the two sales forces responsible for the Abbott AWPIDs at issue in the case.

THE ｜ WEXLER ｜ FIRM LLP

Ms. Tina Tabacchi
Ms. Beth A. O'Connor
Ms. Toni-Ann Citera
January 19, 2006
Page 4

Second, Abbott's production does not include significant strategic documents related to the drugs at issue. Mr. Sebree described documents prepared in connection with the "April Update, August Update and Plan" presentations, which were created for the purpose of "justifying your pricing and contracting decisions." (Sebree Dep., at 31.) He also referenced annual "strategic presentations" regarding prospective strategy and financial results. (Sebree Dep., at 34.) Further, Mr. Sellers noted that each of Abbott's businesses created annual strategic plans. (Sellers Dep., at 106.) All of these documents are clearly relevant and responsive and should be produced.

Third, Abbott's production of documents related to pricing of the AWPIDs is far from complete. For instance, Mr. Sebree described reports of financial analysts showing "monthly average sales price, the monthly volumes, and the monthly mix of products within a particular molecule." (Sebree Dep., at 38.) He also referred to an annual review of list prices in which he participated, and described e-mails and documents created in connection with that review. (Sebree Dep., at 55.) Likewise, Mr. Karas noted Abbott tracks ASPs in the form of pricing graphs developed as part of the planning process. (Karas Dep., at 102.) Again, to the extent that they have not been included in Abbott's production, all of these documents must be produced.

**Other Documents Related to Abbott Witnesses Previously Noticed By Plaintiffs.** Finally, plaintiffs were required to cancel numerously previously-noticed (and in some cases scheduled) depositions because of the lack of documents plaintiffs have related to those individuals. While the productions related to nearly every one of these individuals (Harry Adams, John Casey, Jerrie Ciccerale, Gerald Eichorn, Jeff Hamlin, Michael Heggie, Pete Karas, Steve Kipperman, Cliff Krajewski, Ted Lyjak, Doug McGill, D.C. Robertson, Mark Sebree, Mike Sellers and Dennis Walker) was vastly deficient, particularly problematic productions include the following:

- Harry Adams. Even though Mr. Adams held management-level positions at Abbott from 1992-2004, we have fewer than fifty (50) e-mails[5] with his name on them – and the vast majority of those e-mails he is copied on and is not the author or recipient.

---

[5] All numbers referred to in this section refer to *non-duplicative* substantive documents – *i.e.*, documents authored or received by the person described.

T H E | W E X L E R | F I R M $^{LLP}$

Ms. Tina Tabacchi
Ms. Beth A. O'Connor
Ms. Toni-Ann Citera
January 19, 2006
Page 5

- **Gerry Eichorn**. Even though Mr. Eichorn held relevant positions from at least 1993 through 2002, we do not even have 30 substantive documents with his name on them. We have barely any e-mails which he either authored or received.

- **Michael Heggie**. Other than the government investigation documents, Abbott appears to have done no additional production of documents from Mr. Heggie.

- **Pete Karas**. Although Mr. Karas has held positions at Abbott since at least 1989 and is currently the Vice President of Sales, we have less than thirty (30) documents with his name on them.

- **D.C. Robertson**. Even though Mr. Robertson held major and significant positions at Abbott during the Class Period, we have less than ten (10) documents with his name on them.

*** 

We consider these deficiencies to be significant and are prepared to educate the Court that, while Abbott's production has been vast in number, it has not been in substance. But before proceeding this way we would prefer to reestablish the positive working relationship we once had and see if we can get these types of documents produced on a timely basis. In this regard, w would like to have a meet and confer on these issues on Monday, January 23 at 2:00 Central. Although I may be on maternity leave, you should speak to Ken Wexler about scheduling this call.

Please call with any questions.

Very truly yours,

Jennifer Fountain Connolly

JFC:lmv

cc:     Beth Fegan (via facsimile)

# Exhibit G

T H E | W E X L E R | F I R M LLP

February 6, 2006

***Via Facsimile***

Toni-Ann Citera                                Beth A. O'Connor
Jones Day                                      Jones Day
222 E. 41st Street                             77 W. Wacker Drive
New York, NY  10017-6702                       Chicago, IL  60601-1692

      Re:     *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
                MDL No. 1456 (D. Mass.)

Dear Toni and Beth:

This is to confirm the results of our meet and confer on January 25, 2006, and to memorialize the remaining document production issues that may yet need to be resolved. I would also like updates on the current status of each of the issues, as further explained below.

**Issue 1 – E-mail Search:**

    **Meet and Confer:**  You stated that you would determine whether Abbott was willing to conduct searches for key words "profits," "incentives," "margins," and "samples" (without the accompanying term "free").  You were also supposed to check with your vendor to find out if it is capable of creating a "hit list" of terms so that we can deal with any potential overbreadth problem you think has resulted from these searches.

    **Update Requested:**  Please advise regarding your resolution of these issues.

**Issue 2 – Source Lists:**

    **Meet and Confer:**  During the meet and confer, you stated that you are unable to provide us with a source list for Abbott's government productions; however you stated that you would notify us whether Abbott can provide a source list for the rest of its document production.

    **Update Requested:**  Will you be providing us with a source list for Abbott's non-government document production?

Contact Information:      **Kenneth A. Wexler**      One North LaSalle Street    312 346 2222
                                **312 261 6197 Direct Dial**    Suite 2000                   312 346 0022 fax
                                **kawexler@wexlerfirm.com**    Chicago, Illinois 60602      www.wexlerfirm.com

THE │ WEXLER │ FIRM LLP

Toni-Ann Citera
Beth A. O'Connor
February 6, 2006
Page 2

## Issue 3 – Marketing Production:

**Meet and Confer:** You said that Abbott would be making a "significant" marketing production by the end of January, specifically including Abbott's strategic plans, trade association documents, and documents reflecting Abbott's pricing methodologies, among others.

**Update Requested:** Since the meet and confer, we have received from you several CDs containing Abbott documents. Please let me know whether these CDs contain the "significant" marketing production that we discussed during the meet and confer, and the bates numbers of the documents comprising the marketing production. If the production you spoke of has been made, is it complete? If not, when should we expect it to be?

## Issue 4 – Update and Plan Meeting Documents:

**Meet and Confer:** You stated that you would confer with Abbott regarding whether it will produce all documents related to the April and August Updates and Plans for the relevant time period.

**Update Requested:** Please advise whether these documents have been produced and, if not, when we can expected them.

## Issue 4 – Sales Production:

**Meet and Confer:** You said that Abbott would also be producing many sales documents; specifically documents located in the files of Abbot's field office managers and Alternate Site personnel. This sales production is also to include "significant event" reports and other similar communications between the field sales personnel and their supervisors, as well as Abbott's Code of Conduct documents and marketing packets provided to sales personnel. Finally, we reminded you that a search must also be conducted of the files of the Renal Care sales force responsible for marketing Calcijex.

**Update Requested:** Have these materials been produced in the recent document production? If not, what is the anticipated production date of this information?

THE │ WEXLER │ FIRM LLP

Toni-Ann Citera
Beth A. O'Connor
February 6, 2006
Page 3

### Issue 5 – Sales Awards:

**Meet and Confer:** You stated that Abbott would promptly provide us with a list of sales awards and their recipients during the class period.

**Update Requested:** When are you producing this information, or is it in the recent production?

### Issue 6 – Training Documents:

**Meet and Confer:** It was unclear from the meet and confer whether Abbott will be producing the training documents requested. We explained that we must have, and are entitled to, all relevant training materials, including both Hospital Products Division ("HPD") and Alternate Site training documents.

**Update Requested:** Please advise regarding whether these materials have recently been or will be produced and when, and whether Abbott has produced or will be producing both the HPD and Alternate Site documents.

### Issue 7 – Financial Documents:

**Meet and Confer:** We discussed the financial documents that Abbott has yet to produce. In particular, we requested that you determine whether Abbott will produce the reports of financial analysts described by Sebree in his deposition; annual reviews of list prices and all related documents; pricing graphs developed in the planning process; and any other similar reports or documents. You said that you would discuss this with Abbott and get back to us.

**Update Requested:** What were the results of your discussion?

### Issue 8 – Deponents' Files:

**Meet and Confer:** We requested confirmation that Abbott has produced *all* files of previously-noticed deponents, specifically: Harry Adams, John Casey, Jerrie Ciccerale, Gerald Eichorn, Jeff Hamlin, Michael Heggie, Pete Karas, Steve Kipperman, Cliff Krajewski, Ted Lyjak, Doug McGill, D.C. Robertson, Mark Sebree, Mike Sellers and Dennis Walker. You stated that you would check on this issue and confirm that all relevant files have been produced.

# T H E │ W E X L E R │ F I R M LLP

Toni-Ann Citera
Beth A. O'Connor
February 6, 2006
Page 4

**Update Requested:** I am requesting that you confirm that all files of previously-noticed deponents have been produced. Alternatively, I request that you provide me with a date when these files will be produced. In both events, please provide bates ranges for the documents produced from their files.

I would like to have a response to my update requests by Wednesday. In the meantime, with regard to future productions, it would be extremely helpful if you provided a list of the types of documents contained on each CD when they are produced. This will make it much more efficient for us to track the production of these documents and will aid in any future negotiations on these kinds of issues.

Thank you for your attention to this matter.

Very truly yours,

Kenneth A. Wexler

KAW:lmv

cc:    Beth Fegan
       Amber M. Nesbitt

# Exhibit H

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1676

TELEPHONE 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number: 312/269-1529
baoconnor@jonesday.com

February 8, 2006

VIA FACSIMILE 312/346-0022

Kenneth Wexler
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Re:    In Re Pharmaceutical Industry Average Wholesale Price Litigation,
       MDL 1456 (D. Mass.)

Dear Ken:

I am writing in response to your letter of February 6, 2006 regarding various issues from our meet and confer on January 25, 2006 regarding Abbott's production.

E-MAIL PRODUCTION

I have been informed that our vendor will get back to us on Thursday, February 9, 2006 with the results of the "hit list" for the following four key word search terms that are at issue: "profits," "incentives," "margins," and "samples." I hope to get back to you that same day as to whether these search terms are overbroad.

SOURCE LISTS

We are in the process of creating a source reference list of the documents Abbott has produced, excluding the government productions made pursuant to CMO 5 and CMO 10. We hope to have this list to you by the end of next week.

MARKETING PRODUCTION

The marketing production is included in the production CDs you received last week. The bates range for these documents is ABT AWP/MDL 186041-216459.

UPDATE AND PLAN MEETING DOCUMENTS

We are in the process of conferring with our client on this issue. I will try to get back you early next week on this issue.

CHI-1495362v2

JONES DAY

Kenneth Wexler
February 8, 2006
Page 2

SALES PRODUCTION

You received a significant production of sales documents in the recent production, including Significant Events and Monthly Updates from the field sales force and managers. We are looking into what Calcijex-related sales documents exist from files managers responsible for Calcijex sales. In addition, you have requested production of Abbott's Code of Conduct. We are looking into these issues and will get back to you shortly.

SALES AWARDS

We will be providing you a list of sales awards for the sales force shortly.

TRAINING DOCUMENTS

The production you received last week included documents related to sales training, including those from field sales training employees for the Alternate Site sales force. In addition, we will produce general sales training manuals, to the extent they exist, for the Alternate Site sales force.

FINANCIAL DOCUMENTS

As these are related to and will overlap with any decision to produce plan and update documents, as stated earlier, I will let you know next week whether we will be producing these documents.

DEPONENTS' FILES

We believe that any files we have located for the individuals that you listed in your letter have been collected and the relevant documents produced, save any back-up e-mails that are currently being processed for production. To the extent we should discover that this is not the case, we will produce relevant files for these individuals.

Please contact me if you have any questions.

Sincerely,

Beth A. O'Connor

cc: Toni-Ann Citera



# Facsimile Transmission

77 West Wacker ▪ Chicago, Illinois 60601-1692 ▪ (312) 782-3939
Facsimile: (312) 782-8585
baoconnor@jonesday.com

**February 8, 2006**

Please hand deliver the following facsimile to:

Name: **Kenneth Wexler**

Company: **The Wexler Firm**

Telephone No.: **312-261-6197**

Send Copies To:

☐ **Copies distributed** _____
                            Operator's initials

Re:

Facsimile No.: **312-346-0022**

Number of pages (including this page):

From: **Beth A. O'Connor**

Direct Telephone No.: **312-269-1529**

JP No.: **JP978639**

CAM No.: **080024-024270**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.

CHI-1480188v1

ATLANTA ▪ BEIJING ▪ BRUSSELS ▪ CHICAGO ▪ CLEVELAND ▪ COLUMBUS ▪ DALLAS ▪ FRANKFURT ▪ HONG KONG ▪ HOUSTON
IRVINE ▪ LONDON ▪ LOS ANGELES ▪ MADRID ▪ MENLO PARK ▪ MILAN ▪ MUMBAI ▪ MUNICH ▪ NEW DELHI ▪ NEW YORK
PARIS ▪ PITTSBURGH ▪ SAN FRANCISCO ▪ SHANGHAI ▪ SINGAPORE ▪ SYDNEY ▪ TAIPEI ▪ TOKYO ▪ WASHINGTON

# Exhibit I



# THE │ WEXLER │ FIRM LLP

February 23, 2006

_**Via Facsimile**_

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

Re:    _In re: Pharmaceutical Industry Average Wholesale Price Litigation_
       MDL No. 1456 (D. Mass.)

Dear Beth:

According to your February 8, 2006 letter to Ken Wexler, you promised to provide us
with Abbott's source lists by the end of last week.  You also said you would let us know
by the end of last week the outcome of your conference with Abbot concerning the
Update and Plan Meeting Documents and the Financial Documents.  To date, we have yet
to receive any of these documents or information.

In addition, you stated that you would provide us with the following information
"shortly:" a list of sales awards; Abbott's Code of Conduct; and Cacijex-related sales
documents to the extent they exist.  We have not received any of these items either.

As you are aware, the meet and confer during which you made these promises took place
on January 25, 2006, however, we have been asking for this information for much longer.
Please provide all requested documents and information immediately.

Sincerely,

Amber M. Nesbitt

AMN:lmv

cc:    Kenneth A. Wexler
       Jennifer Fountain Connolly

Contact Information:    **Amber M. Nesbitt**
                        **312 261 6193 Direct Dial**
                        **anesbitt@wexlerfirm.com**

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
**www.wexlerfirm.com**

# Exhibit J

# T H E | W E X L E R | F I R M ᴸᴸᴾ

February 23, 2006

**_Via Facsimile_**

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

Re:   *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
       MDL No. 1456 (D. Mass.)

Dear Beth:

It has just come to my attention that, in addition to the issues raised in my letter from earlier today, you also have not told us whether your vendor determined that the four key word search terms at issue were overbroad. Per your February 8, 2006 letter to Ken Wexler, you had a meeting with your vendor on February 9th to discuss this issue and were going to pass this information on to us that same day.

Please provide us with this information immediately.

Sincerely,

Amber M. Nesbitt

AMN:lmv

cc:    Kenneth A. Wexler
       Jennifer Fountain Connolly

Contact Information:   **Amber M. Nesbitt**
**312 261 6193 Direct Dial**
**anesbitt@wexlerfirm.com**

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
www.wexlerfirm.com

# Exhibit K

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1676
TELEPHONE: 312-782-3939 • FACSIMILE: 312-782-8585

Direct Number: 312/269-1529
baoconnor@jonesday.com

February 28, 2006



VIA MESSENGER

Amber Nesbitt
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Re:     In Re Pharmaceutical Industry Average Wholesale Price Litigation,
        MDL 1456 (D. Mass.)

Dear Amber:

I am writing to follow-up on my February 8, 2006 letter to Ken Wexler regarding various issues relating to Abbott's production.

### E-MAIL PRODUCTION

Abbott will agree to include the terms "profits," "incentives," "margins," and "samples" in its list of search terms. The e-mails are currently being processed. Once the emails are processed, we will review them and begin producing responsive emails hopefully as early as next week.

### SOURCE LISTS

Included with this letter is a CD-ROM, labeled ABT AWP/MDL 240685, which contains two text files that are source lists for Abbott's recent productions. As we discussed, we are unable to create similar source lists for the productions made pursuant to CMO 5 and CMO 10.

### SALES PRODUCTION

Plaintiffs requested Abbott produce Calcijex related sales documents in addition to the sales documents you have received. We are in the process of collecting sales reports and documents from the managers overseeing Calcijex sales and will produce responsive documents, to the extent they exist. In addition, as you requested, we will produce Abbott's Code of Conduct.

CHI-1521986v2

JONES DAY

Amber Nesbitt
February 28, 2006
Page 2

### SALES AWARDS

Included with this letter is a hard copy spreadsheet, labeled ABT AWP/MDL 240686 - ABT AWP/MDL 240721, which lists the names of individuals who have received sales awards. The following individuals earned the awards as part of the Alternate Site sales force:

| | | | |
|---|---|---|---|
| Keith Aldy | Janet Astori | Jeffrey Balzer | Mike Beck |
| Ron Blackwell | Kelly Bukaty | Rob Cannon | Chandra Coleman |
| Sam Colon | Jennifer Connell | Andrew Crofoot | Brad Crosby |
| Brian Davidson | Frank Genuardi | Jeani Haines | Amanda Hatfield |
| Denis Hill | Meg Jansen | Kaye Jessup | Dennis Kelly |
| Ma'at Kenney | Molly Louhgman | Paul Lozano | Clydie Mayfield |
| Doug McGill | Deborah Paulson | Shannon Quinby | Aaron Rayford |
| Doris Roach | John Sims | Catrina Smith | Mark Spiers |
| Scot SteenOlsen | Matt Strassner | Melissa Xavier | Diana Young |
| David Zackowski | | | |

### UPDATE, PLAN AND RELATED FINANCIAL DOCUMENTS

Abbott will not produce its business and plan documents in response to Plaintiffs' requests on the grounds that they are neither relevant nor likely to lead to the discovery of admissible evidence and due to their highly sensitive and proprietary nature. I am happy to discuss this decision with you in more detail if necessary.

Please contact me if you have any questions.

Sincerely,

Beth A. O'Connor/ld

Beth A. O'Connor

cc: Toni-Ann Citera

CHI-1521986v2

# Exhibit L



T H E | W E X L E R | F I R M ᴸᴸᴾ

March 1, 2006

***Via Facsimile***

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

      Re:     *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
               MDL No. 1456 (D. Mass.)

Dear Beth:

I received your letter yesterday regarding the issues relating to Abbott's production.

With regard to Abbott's entire e-mail production, additional Cacijex sales documents, and Abbott's Code of Conduct, we must have all of these documents by Friday, March 3, 2006. You simply have not articulated a basis for further delay in producing this information.

Further, your position that Abbott's Update, Plan, and financial documents are "neither relevant nor likely to lead to the discovery of admissible evidence" and are highly sensitive and proprietary in nature is unfounded. Mark Sebree, who was Abbott's Marketing Manager for Injectable Drugs, testified at length about the "April Update, August Update and Plan." For instance, he explained that:

> [a]t the time, Abbott had a rigorous process of monitoring the health of the business financially, and there were three key meetings, called April Update, August Update and Plan, whereby you would prepare a presentation to senior management, in essence, justifying your pricing and contracting decisions, but as part of that, you would review the volume, the mix, the average sales price of a product, and talk about, you know, macro forces in terms of what kind of rebates were being paid to distributors and GPO's.

Sebree Transcript at 36. These Updates and Plans include written reports as well as PowerPoint presentations that were given to management, the "VP level for the commercial organization," and ultimately presented to the President of the division. *Id.* at 37-38. Mr. Sebree further testified that these Updates and Plans were used to "review the health of the business, and in the case of the last one, to estimate the next year's financial results," and sometimes discussed prospective business strategies. *Id.* at 39.

---

Contact information:    **Amber M. Nesbitt**
                 **312 261 6193 Direct Dial**
                 **anesbitt@wexlerfirm.com**

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
**www.wexlerfirm.com**

THE | WEXLER | FIRM

Beth A. O'Connor
March 1, 2006
Page 2

Based on this testimony, it is clear that the Update, Plan, and financial documents are indeed relevant and certainly likely to at least lead to the discovery of admissible evidence, if they are not already admissible on their own. Furthermore, the Protective Order entered by Judge Saris on December 13, 2002 eliminates your concerns regarding the highly sensitive and proprietary nature of these documents.

As you know, Plaintiffs were forced to cancel virtually all noticed depositions because of Abbott's inadequate document production. Despite the passage of time and our efforts to obtain complete production, we are still finding ourselves having to ask for a lot of the same information. This is preventing us from re-noticing the depositions and interfering with our ability to finish discovery.

This letter is but another of a large number of attempts to meet and confer in an effort to resolve our discovery differences. Unless we hear otherwise, we consider our obligations under Local Rule 37.1 to be satisfied and will act accordingly if the documents are not produced timely.

Sincerely,

Amber M. Nesbitt

AMN:lmv

cc:    Kenneth A. Wexler
       Jennifer Fountain Connolly

# Exhibit M

# JONES DAY

77 WEST WACKER · CHICAGO, ILLINOIS 60601-1676
TELEPHONE: 312-782-3939 · FACSIMILE: 312-782-8585

Direct Number: 312/269-1529
baoconnor@jonesday.com

March 3, 2006

VIA FACSIMILE

Amber Nesbitt
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602

Re:   In Re Pharmaceutical Industry Average Wholesale Price Litigation,
      MDL 1456 (D. Mass.)

Dear Amber:

     I am writing in response to your March 1, 2006 letters regarding various issues relating to Abbott's production.

     First, Plaintiffs have provided several arguments as to why they believe Abbott's update, plan and financial documents are relevant to this litigation. Based on the arguments raised in your letter, we will revisit this issue and let you know next week whether we will agree to produce these documents.

     Second, as you know, we have just recently received the e-mail files from the vendor that were searched for relevant key terms. We will be making a production of e-mails and other electronic documents to Plaintiffs next week. Therefore, we do not think it is prudent to seek the court's intervention as Abbott is not refusing to produce e-mails and is working in good faith to get them to you as quickly as possible.

     Third, Abbott's Code of Conduct and relevant Calcijex-related sales documents, to the extent they exist, are in the process of being collected and reviewed. We will also produce them to you as soon as possible, hopefully also next week.

     Fourth, your second letter lists several individuals who you have asked whether there computer files have been searched. Your inquiry, I believe, arises because these individuals names do not appear on the source sheet files provided to you. As we discussed with Ken Wexler when he requested a source list, there is not always an individuals name associated with the documents that are being produced and instead only a department name provided with the responsive documents, *i.e.* Contract Marketing. Your assumption that relevant documents that may have been maintained on a individual's computer were not collected because his or her name does not appear on the source list therefore does not follow. That being said, we will verify that

CHI-1522830v1

Case 1:01-cv-12257-PBS   Document 2632-4   Filed 06/02/06   Page 33 of 62

**JONES DAY**

Amber Nesbitt
March 3, 2006
Page 2

relevant documents, if any, that may have been maintained on these individuals' computers were collected.

Finally, your assertion that Plaintiffs were forced to cancel virtually all of noticed depositions because of Abbott's "inadequate document production" is disingenuous and incorrect. Plaintiffs' decision to go forward with certain depositions of Abbott individuals, including a 30(b)(6) deposition, and to cancel the remaining depositions was obviously done for reasons other than any alleged deficiencies in Abbott' document production. Indeed, Abbott has produced over 200,000 pages of documents and despite this enormous production Plaintiffs have made no effort to reschedule these depositions.

Please contact me if you have any questions.

Sincerely,

Beth A. O'Connor

cc: Toni-Ann Citera

CHI-1522830v1

# Exhibit N

T H E | W E X L E R | F I R M LLP

May 4, 2006

*<u>Via Facsimile</u>*

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

        Re:   *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
               MDL No. 1456 (D. Mass.)

Dear Beth:

We have reviewed Abbott's electronic document production produced on April 6th and 18th. Although you have represented that this production constitutes the majority of Abbott's electronic documents, it constitutes only 44,000 pages and contains thousands of pages of duplicates. While duplicates are often common in electronic productions, the volume of duplicates in this production, which you once represented was all of Abbott's responsive electronic documents from 2000 to the present, indicates that Abbott's search was not complete. Accordingly, please explain how Abbott's search was conducted and provide us with a list of current and former employees whose files were searched.

In addition, we are still awaiting Abbott's Plan and Update documents and Calcijex-related sales documents.

Please provide the documents and information requested in this letter by Monday, May 8. Abbott's long-delayed electronic production in particular has greatly prejudiced plaintiffs' ability to schedule depositions. If we do not receive meaningful information from you regarding that production we will have to seek relief from the Court.

Sincerely,

Amber M. Nesbitt

AMN:mls

cc:   Kenneth A. Wexler
       Jennifer Fountain Connolly

| Contact Information: | **Amber M. Nesbitt**<br>**312 261 6193 Direct Dial**<br>**anesbitt@wtwlaw.us** | One North LaSalle Street<br>Suite 2000<br>Chicago, Illinois 60602 | 312 346 2222<br>312 346 0022 fax<br>www.wexlerfirm.com |

# Exhibit O

T H E | W E X L E R | F I R M <sup>LLP</sup>



May 26, 2005

*Via Facsimile*

Ms. Toni-Ann Citera
Jones Day
222 E. 41st Street
New York, NY 10017-6702

Ms. Beth A. O'Connor
Jones Day
77 West Wacker Dr.
Chicago, IL 60601-1692

Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation*
       MDL No. 1456 (D. Mass.)

Dear Toni and Beth:

Thank you for speaking with me yesterday. This letter will memorialize the contents of our discussion. If there is anything inaccurate in this letter, please let me know.

**Abbott's Ongoing Production:** You advised me that the CD-ROM production would be completed on June 13. I informed you that this was inconsistent with the position taken by Laura Dahl, who indicated we would have the production at the beginning of this week. Based on some of the technical difficulties Abbott has experienced in imaging the documents, we agreed that Abbott would produce CD-ROMs to us on a rolling basis that would in all cases be completed by June 13. You also agreed to make Abbott's organizational charts among the first documents that are produced to us on CD-ROM so that we can begin making decisions about depositions. (Abbott has already agreed to compile "a list of departments at Abbott with relevant information, including persons responsible for setting the price of Abbott's drugs listed in the AMCC.")

In addition, you advised me that Abbott intends to do a "rolling production" for documents otherwise responsive to plaintiffs' Omnibus Requests. I told you that, because of the discovery deadlines, a rolling production would be unacceptable unless we saw a definitive end in sight. You agreed to investigate providing me with a date.

When I asked you to identify the differences between the CD-ROM production and the rolling production, you stated that most of the documents in the CD production would be from the government productions, although there were about six boxes of documents that were responsive to the Omnibus Requests. I therefore asked you to provide us with a source list or, at minimum, a list of the persons whose offices Abbott has searched and intends to search. Please provide this list by Monday, June 6.

Contact Information:    **Jennifer Fountain Connolly**    One North LaSalle Street    312 346 2222
                        **312 261 6195 Direct Dial**       Suite 2000                 312 346 0022 fax
                        **jfconnolly@wexlerfirm.com**      Chicago, Illinois 60602    **www.wexlerfirm.com**

# THE │ WEXLER │ FIRM LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 2

We further discussed Abbott's position that it would address whether to produce documents from the entire Class Period (January 1, 1991 to the present) on a case-by-case basis. You informed me that Abbott is not withholding documents from earlier time periods that are otherwise responsive; however, you stated that there are certain places where Abbott has not searched for responsive documents. The only concrete example that you were able to identify was microfiche. First, we need to know what is contained on those microfiche. Second, we would like a complete list of the areas which Abbott has outright refused to search based on its time period objection. Please provide that to me by Friday, June 3.[1]

**Electronic Sales Data:**

In addition, you indicated that Abbott would be producing Bruce Stowell as Abbott's designee pursuant to our 30(b)(6) notice on data. We agreed to interview Mr. Stowell by telephone in lieu of a deposition. Of course, if he is non-responsive, we reserve the right to reschedule the deposition. We are available on June 21 and would like to begin the telephone conference at 10:00 a.m. Central time. Please let us know the number(s) we should call on that date.

You agreed to provide me with Abbott's designee on indirect sales/chargeback data (for PPD) by Friday, May 27. You also informed me that, though Abbott spun off its hospital division last year, Abbott will agree to provide a designee for Hospira (the new spun-off entity).

You agreed to identify Abbott's designees with respect to plaintiffs' second 30(b)(6) notice by next week. You also informed me that Abbott would be providing a revised data set for one of its divisions (but you did not recall which division) in one week.

As initially raised by Chris Cook, you asked me if plaintiffs would consider limiting the number of Abbott AWPIDs. I informed you that we would be willing to engage in this inquiry if Abbott would provide us with the data and more detailed information to enable us to do so. You said that you would follow-up on this.

Further, you advised me that Abbott is not willing to supplement its electronic sales data production beyond December 31, 2003. Although you provided me with Abbott's legal position on this issue, you did not provide me with details regarding any undue burden

---

[1] You informed me this is not an issue with regard to TAP because Prevacid was introduced in 1995.

T H E │ W E X L E R │ F I R M ᴸᴸᴾ

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 3

Abbott would incur in supplementing this information.  You advised me that Mr. Stowell would be able to address this.   We will deal with the issue at that point.

Finally, I advised you that I will be sending you a letter under separate cover regarding the deficiencies in Abbott's electronic data production to date.

**E-Mail:**  You stated that Abbott has produced e-mail that was contained in paper form and that the e-mails produced in paper form were produced in the form maintained in the ordinary course of business.  Beth will get back to me regarding the manner in which Abbott intends to proceed with searching.  I agreed to provide you with a list of terms to search.  I would like to know how Abbott intends to proceed with those searches by Friday, June 3.

**Privilege Log.**  Abbott agreed to provide a privilege log for the CD-ROM production by June 8, 2005.

**Documents Abbott Must Still Produce In Response to Plaintiffs' Omnibus Requests:**
Finally, we discussed the specific categories in the Omnibus Requests for which plaintiffs believe Abbott has not yet produced responsive documents.  You advised me that many of these documents were being produced in the CD production.  Specifically,

> *Category 1:  General Corporate*
>
> • You informed me that Abbott's document retention policy during the relevant time period would be produced in the CD production.
>
> *Category 2:  Trade Associations*
>
> • You said that these documents would be contained in the rolling production. To your knowledge, Abbott is not withholding responsive documents in this category; however, you agreed to confirm this.  Please advise me of this by Friday, June 3.
>
> *Category 5:  AWPs and Pricing Related*
>
> • You stated that Abbott did not have many responsive documents defining AWP; however, the vast majority of them will be contained in the CD production.  You stated that there would be documents relating to Abbott's

THE|WEXLER|FIRM LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 4

pricing methodologies (other than just Abbott price lists) in the rolling production.

- You stated that most marketing plans would be in PPD and would be produced in the rolling production.

- You stated that, although Abbott would produce documents related to its revenues (in its electronic sales data), that Abbott would not produce any documents regarding its profits and/or per-unit average total cost for its AWPIDs.

### *Category 6: Inducements:*

- You stated that Abbott has provided rebate, chargeback, and discount data in its electronic sales data.

- You did not believe that Abbott had many documents regarding free samples given to physicians. However, Abbott will produce all responsive documents.

- Finally, you will advise me whether Abbott is withholding any documents in this category. Please let me know by Friday, June 3.

### *Category 7: Marketing Plans and Sales Representatives*

- We discussed plaintiffs' need for sales representative call notes. You informed me that Abbott does not have these documents in electronic form. You stated that Abbott has produced some notes from the offices of its National Account Managers because these documents were produced in the government productions; however, the offices of individual sales representatives have not been searched. You indicated a desire to limit this search. I advised you that plaintiffs could not take a position on this issue without organization charts and reviewing the documents in Abbott's CD production. I also advised you that providing us with list of all national sales awards available for each AWPID and the business plans for all recipients thereof (Request Nos. 44 and 45) as soon as possible would assist us in making decisions about this issue. You also did not know if there was any overlap between sales notes that might be found in the offices of individual sales representatives and those in the offices of National Account Managers.

T H E │ W E X L E R │ F I R M LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 5

We will require answers to these types of questions and need to revisit these issues soon.

- You informed me that Abbott does not have many documents where the raising of or use of AWP as a marketing tool was discussed (Request Nos. 50, 53); however, you represented that these would be in the CD production as part of Abbott's government production.

### *Category 8: Publishers.*

- You advised me that these documents would be contained in the CD production. You told me that you would attempt to produce these documents earlier rather than later in the production.

### *Category 9: PBMs; Wholesalers*

- You stated that, for PPD, Abbott will produce all PBM contracts. You will investigate whether Abbott can produce all wholesaler contracts. (I told you that since there are only three full-line wholesalers that should not be an issue.) You also agreed that, if Abbott is producing only a "sampling" of certain categories of responsive documents, you will advise me of that so that I may ask you for additional documents or a full production if we need it. I assume that you will do this for Abbott's entire production. If this is not the case, please advise.

### *Category 10: Communications With Other Manufacturers*

- You stated Abbott has no responsive documents.

### *Category 11: Miscellaneous*

- You stated that, with regard to Request No. 82, you did not believe Abbott has any repackaged or relabeled AWPIDs. You will confirm this to me.

**TAP documents.** I agreed to provide you with dates during which we could re-review the TAP documents at your Chicago office. We are available June 2, 6 or 9. Please advise which of these dates works for Beth.

# T H E | W E X L E R | F I R M LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 6

We also need to talk about TAP's 30(b)(6) designees.  I will call you after the Memorial Day holiday to get the names of those individuals.

Please call me or Beth Fegan with any questions.

Very truly yours,

Jennifer Fountain Connolly

JFC:lmv

cc:     Beth Fegan
        Kenneth A. Wexler

# Exhibit P

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692
TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number: (312) 269-1529
baoconnor@jonesday.com

June 6, 2005

<u>VIA HAND DELIVERY</u>

Jennifer Fountain Connolly
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*
MDL No. 1456 (D. Mass.)

Dear Jennifer:

I am writing as a follow-up to my May 27, 2005 letter to you regarding issues raised during our May 25, 2005 conference call.

As requested, we are producing organizational charts with this letter, which have been labeled as ABT AWP/MDL 07125 - ABT AWP/MDL 071324. These charts should allow you to begin making decisions regarding individuals who you may want to depose. I have also enclosed a CD-ROM, ABT AWP/MDL 071325, which contains the first of the government productions. Please note that this CD-ROM has been designated "Highly Confidential" and the documents contained in the CD-ROM have been marked confidential as appropriate. Additional CD-ROMs, which are also responsive to CMO 5 and CMO 10, will be produced as they become available.

You requested a source list or the names of individuals whose offices Abbott has searched. I am investigating whether there were any such source lists created for the government productions. As you know, these productions occurred several years ago and if there were no source lists created at the time, then it will not be possible to produce such lists.

You also requested a list of areas that Abbott has refused to search based on a time period objection. After discussing this topic, there do not appear to be any areas that Abbott has refused to search for responsive documents. Without waiving any prior objections relating to the scope of the purported class period and plaintiffs' document requests, Abbott has searched historical records that have been maintained in its corporate records department and will continue to produce responsive documents it locates that date back to 1991.

We discussed the need to limit e-mail searches to certain individuals and key word terms. You indicated that you would provide a list of terms to search. I have not yet received such a list. Also, the organizational charts you received should help you limit the individuals for whom you would like e-mails, to the extent such e-mails exist. Please feel free to call me to discuss this process in more detail.

As we discussed previously, Abbott will provide an initial privilege log on June 8, 2005.

CHI-1480194v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

**JONES DAY**

Jennifer Connolly
June 6, 2005
Page 2

Also, with respect to the categories of documents identified in your May 26, 2005 letter that are still outstanding, Abbott is still investigating the following categories: trade associations; sales representatives' call notes; types of national sales awards; wholesaler contracts; and communications with other manufacturers. In addition, although Abbott does not believe any such documents exist, it will produce marketing plans that discuss marketing AWP and documents where the raising of or use of AWP as a marketing tool was discussed.

Abbott does not have any documents relating to samples used as "inducements" as you described in our May 25, 2005 call.

Finally, I am in the process of responding to your June 1, 2005 requesting additional information relating to Abbott sales data. I will forward that information to you as soon as possible.

In the meantime, please contact me with any additional questions or requests.

Sincerely,

Beth A. O'Connor

cc:  Beth Fegan (via facsimile w/o enclosures)
Tina Tabacchi
Toni-Ann Citera
Laura Dahl

# Exhibit Q

# T H E  |  W E X L E R  |  F I R M  LLP

July 8, 2005

*Via Facsimile*

Ms. Beth A. O'Connor
Jones Day
77 West Wacker Dr.
Chicago, IL  60601-1692

Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation*
MDL No. 1456 (D. Mass.)

Dear Beth:

I am writing to follow-up on some issues remaining from my May 25 letter and that have arisen in examining Abbott's document production.

**30(b)(6) Depositions:**  First, on April 20, 2005 plaintiffs noticed a 30(b)(6) deposition for six areas of inquiry.  Pursuant to CMO No. 10, Abbott must designate individuals within 45 days; however, it has not done so.  I will contact you next week to schedule these depositions.

**Source Lists:**  You advised me in your June 6 letter that you were in the process of determining whether Abbott maintained a source list for documents produced to the government.  Please let me know the status of that search.  In addition, we have not received a source list for Abbott's initial production; please advise whether one will be forthcoming.

**E-Mail:**  You have asked me to provide you a list of terms to search e-mail.  We suggest that Abbott search for the following terms.  Please let me know when you think this search might be completed.[1]

| | |
|---|---|
| AWP/Average Wholesale Price | Spread |
| WAC/Wholesale Acquisition Cost | Return to Practice/RTP |
| Direct Price | Catalog Price |
| Return on Investment/ROI | Profit |
| Sample(s) | Educational Grant(s) |
| Reimbursement | Rebate(s) |

---

[1]  Plaintiffs obviously have not had the time to examine the CD-ROMs Abbott recently produced. To the extent that the review of those documents reveal Abbott-specific terms that should be included in this list, plaintiffs reserve the right to make additional requests.

Contact information:   **Jennifer Fountain Connolly**
**312 261 6195 Direct Dial**
**jfconnolly@wexlerfirm.com**

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
www.wexlerfirm.com

# THE | WEXLER | FIRM LLP

Ms. Beth A. O'Connor
July 8, 2005
Page 2

| | |
|---|---|
| ASP/Actual Sales Price | Medicare Part B |
| Discount(s) | Margin |
| Free | Incentive |
| Formulary | Complementary |

**Documents Abbott Must Still Produce In Response to Plaintiffs' Omnibus Requests:**
In your June 6 letter you advised that Abbott was still investigating the following categories of documents.  Please advise both whether Abbott intends to produce these categories of documents and when that production will be forthcoming.

- Trade associations (Category 2)

- Sales Representatives' Call Notes and Types of National Sales Awards (Category 6).  We need to discuss how and in what way Abbott intends to search the offices of individual sales representatives – especially because Abbott does not maintain call notes in electronic form.  I propose that we discuss this issue next week.  During that call I will want to know, for example, whether there is any overlap between sales notes that might be found in the offices of individual sales representatives and those in the offices of National Account Managers (which you have told me we will find in Abbott's production).

- Wholesaler contracts (Category 9).  Your June 6 letter says that Abbott is investigating this area.  Please let me know the status on this.  It did appear that some of these contracts were in Abbott's CD production.

- Communications with other manufacturers (Category 10).  Please let me know if Abbott has looked for this category of documents.

- Finally, it appears that the vast majority of Abbott's recent CD-ROM production related to the HPD side of the business.  Please advise me the reason for this.  You told me that the CD production would be mostly the government production, but would also include some documents generally responsive to the Omnibus Requests; however, it appears from your cover letters that the CD production is entirely from the government production.  If this accounts for the HPD focus, then let me know.

**Abbott's Ongoing Production:**  Finally, overall, we still need to discuss the anticipated volume and content of Abbott's ongoing production and the efforts Abbott is making to complete this on a timely basis.

THE │ WEXLER │ FIRM LLP

Ms. Beth A. O'Connor
July 8, 2005
Page 3

I look forward to talking with you next week.  In the meantime, please call me or Beth
Fegan with any questions.

Very truly yours,

*Jennifer F. Connolly*

Jennifer Fountain Connolly

JFC:lmv

cc:     Toni-Ann Citera (via facsimile)
        Beth Fegan
        Kenneth A. Wexler

# Exhibit R

T H E | W E X L E R | F I R M LLP

August 17, 2005

*Via Facsimile*

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

       Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation*
             MDL No. 1456 (D. Mass.)

Dear Tina and Beth:

This will confirm our agreement to postpone the August 17, 2005 deposition of Mike Sellers in lieu of a more substantive deposition. In short, you informed me that, had the deposition gone forward on the 17th, Mr. Sellers would only have been designated to testify about the documents related to the areas of inquiry. However, you have agreed to reset Mr. Sellers' deposition for early to mid-September so that plaintiffs can take his deposition on more substantive topics with the view of Abbott only having to produce Mr. Sellers for his deposition once.

In that regard, you have asked me to identify the substantive topics about which I would like Mr. Sellers to be able to testify. Those topics include:

- How prices or reimbursement benchmarks on HPD physician-administered drugs are established, the persons with knowledge on this issue, and the documents related to this topic.

- The price paid by physicians or other providers for HPD physician-administered drugs, the persons with knowledge on this issue, and documents related to this topic.

- The amounts paid by third parties reimbursing for physician-administered drugs, Abbott's (HPD's) knowledge thereof, any training or education provided by HPD on that issue, the persons with knowledge on this issue, and the documents related to this topic.

Contact Information:    **Jennifer Fountain Connolly**
                           **312 261 6195 Direct Dial**
                           **jfconnolly@wexlerfirm.com**      One North LaSalle Street      312 346 2222
                                                                 Suite 2000                312 346 0022 fax
                                                                   Chicago, Illinois 60602     www.wexlerfirm.com

# THE │ WEXLER │ FIRM LLP

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
August 17, 2005
Page 2

- The reporting structure of the sales forces at HPD, the physician-administered AWPIDs marketed and/or sold (if any) by each sales force, any persons with knowledge thereof, and any documents related thereto.[1]

- The types of materials maintained, informally or formally, by the sales force, including but not limited to:

    o  Call notes, trip reports, and expense reports.

    o  Contracting documents.

    o  Marketing documents (internal and those provided to customers).

    o  Policy documents

    o  Training documents

    o  Any other types of documents (reports, etc.) regularly prepared by the sales staff.

- Any communications (in any media) with publishers, the identity of persons with knowledge about those communications, and any documents related to those communications.

- The identity and nature of any competitive drugs with respect to each physician-administered AWP, any persons with knowledge about this issue (i.e., marketing personnel), and documents related thereto.[2]

- The ASPs on each (physician-administered) AWPID, the spread between ASP and AWP, how Abbott (HPD) calculates ASP, the persons with knowledge about those calculations, and any documents reflecting them.

---

[1]  Beth has previously advised me that those sales forces include:  Infusion Therapy, Pre-Operative Sales, ICCP, Renal Sales, and Alternate Site.  If this is not a complete list, please advise.

[2]  In this regard, you have suggested that the parties talk specifically about the information plaintiffs require so that you can prepare Mr. Sellers to authenticate the result of our discussions. I am willing to explore this option.

# THE | WEXLER | FIRM LLP

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
August 17, 2005
Page 3

I am available the following dates in early- to mid-September for a deposition of Mr. Sellers on these topics: September 8, 9, 12, 13, and 20.

We likewise discussed several ways to shorten Mr. Sellers' deposition. You advised me that you would produce a current version of Mr. Sellers' resume, which should shorten the examination on his background. In addition, we discussed that, because Mr. Sellers' prior depositions are not admissible in this proceeding, I would have no choice but to re-examine Mr. Sellers on various issues discussed during those depositions. Given this dilemma, we discussed negotiating a stipulation on the use and admissibility of those depositions in this proceeding. I remain willing to explore such a stipulation. Please forward me a draft of what you propose.

I recognize and appreciate that Abbott wants to avoid putting Mr. Sellers up multiple times for a deposition. However, we cannot agree to make this deposition Mr. Sellers' substantive deposition until and unless Abbott can confirm that all responsive documents from Mr. Sellers' files have been produced. If Abbott can do this in the coming weeks I will certainly reconsider this issue.

Finally, you agreed to look into the status of the document production. I would like an update on this soon because we have not received documents from Abbott for several weeks. There are specific categories of documents which plaintiffs have requested in previous correspondence that Beth is aware are outstanding. And, although neither I or plaintiffs are taking an official position on this issue, given Judge Saris' opinion it does seem more important that we receive remaining HPD documents as priority over PPD documents.

Very truly yours,

Jennifer Fountain Connolly

JFC:lmv

cc:     Beth Fegan (via facsimile)
        Toni-Ann Citera (via facsimile)
        Kenneth A. Wexler

# Exhibit S

# T H E | W E X L E R | F I R M LLP

October 6, 2005

*Via Facsimile*

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*
      MDL No. 1456 (D. Mass.)

Dear Tina and Beth:

As you know, plaintiffs and Track Two defendants have been unable to reach agreement regarding extending the Track Two discovery deadline. Given this, please provide me with dates for Mr. Sellers' deposition. Unless Abbott has objections to them, the topics for that deposition should include all topics set forth in my August 17 letter. Before proceeding with that deposition, I would like copies of Mr. Sellers' resumé and your confirmation that all responsive documents from Mr. Sellers' files have been produced.

In addition, we discussed negotiating a stipulation to provide for the admissibility of Mr. Sellers' (or any other Abbott deponent's) prior deposition testimony in this proceeding. I have not heard back from you on that.

Further, I would like an update on the status of Abbott's document production. Given Judge Saris' ruling on plaintiffs' motion for class certification, the documents that need to be produced are those relating to physician-administered drugs. But we should talk to make sure that we are on the same page regarding which of the Abbott AWPIDs are physician-administered drugs.

Finally, I have not received any information or documents requested in my August 16 letter to Beth, which was follow-up on the Abbott electronic sales data interviews. Please advise when that information will be forthcoming.

Contact Information:   **Jennifer Fountain Connolly**    One North LaSalle Street     312 346 2222
                       **312 261 6195 Direct Dial**       Suite 2000                    312 346 0022 fax
                       **jfconnolly@wexlerfirm.com**      Chicago, Illinois 60602       www.wexlerfirm.com

T H E │ W E X L E R │ F I R M <sup>LLP</sup>

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
October 6, 2005
Page 2

Given that we still have a discovery deadline of December 3, I expect to hear from you soon on these issues. Please feel free to call with any questions.

Very truly yours,

Jennifer Fountain Connolly

JFC:lmv

cc:    Beth Fegan (via facsimile)
       Toni-Ann Citera (via facsimile)
       Kenneth A. Wexler

# Exhibit T

THE | WEXLER | FIRM LLP



March 6, 2006

*Via Facsimile*

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

      Re:    *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
                MDL No. 1456 (D. Mass.)

Dear Beth:

Thanks for your letter of March 3, 2006. We look forward to receiving the documents promptly.

Your comments about the depositions, however, require a response. We were forced to continue the depositions because Abbott's production of documents was significantly incomplete. As your letter acknowledges, it is still incomplete. By continuing to prod you for documents required and which should have been produced long ago, we have been attempting to reschedule the depositions. Choosing firm dates is impossible without all the documents. It is Abbott's fault we do not have them, not ours.

Be that as it may, there is no use in belaboring the point. Please get the documents to us as soon as possible so we can move on.

Sincerely,

Amber M. Nesbitt

AMN:lmv

cc:    Kenneth A. Wexler
       Jennifer Fountain Connolly

Contact Information:    **Amber M. Nesbitt**               One North LaSalle Street    312 346 2222
                         **312 261 6193 Direct Dial**     Suite 2000                312 346 0022 fax
                         **anesbitt@wexlerfirm.com**      Chicago, Illinois 60602    **www.wexlerfirm.com**

# Exhibit U

T H E | W E X L E R | F I R M LLP

April 3, 2006

**VIA FACSIMILE**

Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-7692

Re:   *In re: Pharmaceutical Industry Average Wholesale Price Litigation*
MDL No. 1456 (D. Mass.)

Dear Beth:

When we last spoke on March 17th you said that Abbott would produce all e-mails and
Update and Plan documents either during the week of March 20th or, at absolute latest, at
the beginning of the following week. It is now April 3, 2006 and Abbot has yet to produce
any documents. As you know Plaintiffs have engaged in many discussions and negotiations
with you in a good faith attempt to obtain these documents without Court assistance.
However, given Abbott's persistent failure to comply with its obligations, we will be left
with no choice but to file the appropriate motion with the Court to compel their production
if we do not receive the documents by April 5th.

Please feel free to contact me with any questions.

Respectfully yours,

Amber M. Nesbitt

AMN:mls

cc:   Kenneth A. Wexler
Jennifer Fountain Connolly

Contact Information:        **Amber M. Nesbitt**        One North LaSalle Street        312 346 2222
                            **(312) 261-6193 direct**       Suite 2000                312 346 0022 fax
                            **anesbitt@wexlerfirm.com**     Chicago, Illinois 60602   www.wexlerfirm.com

# Exhibit V

## Amber Nesbitt

**From:**     Beth A. O'Connor [baoconnor@JonesDay.com]
**Sent:**     Friday, May 12, 2006 4:17 PM
**To:**       Amber Nesbitt
**Subject:** Your letter

Amber:

I wanted to let you know that I am working on a response to your recent letter and hope to get back to you next week.  Please call me if you would like to discuss in the meantime.  Thank you and have a good weekend.

Beth A. O'Connor
Jones Day
77 West Wacker
Chicago, Illinois 60601
312-269-1529
312-782-8585 (facsimile)

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========