## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257 PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *The City of New York v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 04-CV-06054<br>*County of Albany v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0425<br>*County of Allegany v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0236<br>*County of Broome v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0456<br>*County of Cattaraugus v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0256<br>*County of Cayuga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0423<br>*County of Chautauqua v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0214<br>*County of Chemung v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0354<br>*County of Chenango v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0354<br>*County of Columbia v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0867<br>*County of Cortland v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0881<br>*County of Dutchess v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 05-CV-6458<br>*County of Essex v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0878 | |
| Caption Continues on Next Page | |

## PLAINTIFFS' SURREPLY IN OPPOSITION
## TO DEFENDANTS' JOINT MOTION TO DISMISS (1) THE CONSOLIDATED COMPLAINT OF THE CITY OF NEW YORK AND NEW YORK COUNTIES AND (2) NASSAU COUNTY'S SECOND AMENDED COMPLAINT

*County of Fulton v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0519
*County of Genesee v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-00267
*County of Greene v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0474
*County of Herkimer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00415
*County of Jefferson v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0715
*County of Lewis v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0839
*County of Madison v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00714
*County of Monroe v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6148
*County of Nassau v. Abbott Laboratories, Inc., et al.*
E.D.N.Y. Case No. 05-CV-05126
*County of Niagara v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-06296
*County of Oneida v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0489
*County of Onondaga v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0088
*County of Ontario v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6373
*County of Orleans v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6371
*County of Putnam v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 05-CV-04740
*County of Rensselaer v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-00422
*County of Rockland v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 03-CV-7055
*County of Saratoga v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0478
*County of Schuyler v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6387
*County of Seneca v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6370
*County of Steuben v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6223

*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0479
*County of Suffolk v. Abbott Laboratories, Inc., et al.*
E.D.N.Y. Case No. 03-CV-12257
*County of Tompkins v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0397
*County of Ulster v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0123
*County of Warren v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0468
*County of Washington v. Abbott Laboratories, Inc., et al.*
N.D.N.Y. Case No. 05-CV-0408
*County of Wayne v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-06138
*County of Westchester v. Abbott Laboratories, Inc., et al.*
S.D.N.Y. Case No. 03-CV-6178
*County of Wyoming v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-6379
*County of Yates v. Abbott Laboratories, Inc., et al.*
W.D.N.Y. Case No. 05-CV-06172

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 3

    I.      A PLAINTIFF NEED NOT BE IN PRIVITY WITH
          DEFENDANT TO CLAIM FRAUD BASED ON
          STATEMENTS MADE TO THIRD PARTIES ................................................. 3

    II.    *BLUE CROSS* IS INAPPLICABLE TO PLAINTIFFS'
          GBL § 349 CLAIM ...................................................................................... 7

          A.    The Enactment of SSL § 367-B Did Nothing
               To Change The Legal Relationship Between
               The Counties and The State With Respect
               To Medicaid ................................................................................... 7

          B.    Parties Who Suffer Indirect Injury
               Can Still Sue Under GBL § 349 ...................................................... 9

          C.    The Counties Are Not Equivalent To
               Insurers ......................................................................................... 10

    III.    PLAINTIFFS HAVE STATED A VALID UNJUST
          ENRICHMENT CLAIM ............................................................................. 11

          A.    The Existence of the Rebate Agreements
                Does Not Preclude Plaintiffs' Unjust
               Enrichment Claims ........................................................................ 11

          B.    Unjust Enrichment Does Not Require a Direct Relationship Between the
               Parties ........................................................................................... 13

    IV.    PLAINTIFFS' PRICING ALLEGATIONS ARE
          SUFFICIENT ............................................................................................ 16

          A.    Plaintiffs' Claims for Physician-Administered
                Drugs Should Be Sustained ........................................................... 16

          B.    Plaintiffs' Claims Apply To Drugs Paid At the FUL ................... 17

          C.    Plaintiffs' Best Price/Rebate Claims Are Sufficiently Pleaded ................... 18

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Angie v. Johns-Manville Corp.*,
  94 A.D.2d 939 (4th Dep't 1983) ................................................................... 4-5

*Beaudoin v. Toia*,
  45 N.Y.2d 343 ..................................................................................................8

*Bildstein v. Mastercard International Inc.*,
  2005 U.S. Dist. LEXIS 10763  2005 U.S. Dist. LEXIS 10763 (S.D.N.Y. June 6,
  2005) .................................................................................................................9

*Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris, USA, Inc.*,
  3 N.Y.3d 200 (2004) ..............................................................1-2, 7, 9-11

*Catherwood v. American Sterilizer Co.*,
  132 A.D.2d 9938 (4th Dep't 1987) ...............................................................4

*Cement and Concrete Workers District Council Welfare Fund v. Lollo*,
  148 F.3d 194 (2d Cir. 1998).........................................................................5

*Chadirjian v. Kanian*,
  123 A.D.2d 596 (2d Dep't 1986) ................................................................13

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*,
  4 N.Y.2d 403 (1958) .....................................................................................5

*Christianson v. Colt Industries*,
  486 U.S. 800 (1988)......................................................................................1

*City of New York v. GlaxoSmithKline*,
  Civil Action No. 04-2134 (E.D. Pa. 2004) ................................................6

*City of New York v. GlaxoSmithKline*,
  No. 2:04cv312 (E.D. Va. 2004) ..................................................................6

*City of New York v. Lead Industries Association*,
  222 A.D.2d 119 (1st Dep't 1996) ..............................................................14

*City of New York v. Lead Industries Association*,
  241 A.D.2d 387 (1st Dep't 1997) ................................................................4

*City of New York v. The Tobacco Institute, Inc.*,
  1997 U.S. Dist. LEXIS 19415 (S.D.N.Y. 1997).........................................6

**Page**

*Clark-Fitzpatrick, Inc. v. Long Island RR. Co.*,
    70 N.Y.2d 382 (1987) ...........................................................................12

*Connelly Containers, Inc. v. Bernard*,
    717 F. Supp. 202 (S.D.N.Y. 1989) ................................................... 13-14

*Continental Insurance Co. v. Mercadante*,
    222 A.D. 181 (1st Dep't 1927) ..............................................................6

*Cooper v. Weisblatt*,
    154 Misc. 522 (App. Term, 2d Dep't 1935) .............................................5

*Cox v. Microsoft*,
    8 A.D.3d 39 (1st Dep't 2004) ................................................ 1, 9, 14-16

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    65 N.Y.2d 536 (1985) .............................................................................4

*Daly v. Llanes*,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998)................................................. 18-19

*Davenport v. Walker*,
    132 A.D. 96 (2d Dep't 1909)................................................................13

*Dreieck Finanz AG v. Sun*,
    1989 U.S. Dist. LEXIS 9623 (S.D.N.Y. Aug. 14, 1989) ........................13

*Goldman v. Metro. Life Ins. Co.*,
    5 N.Y.3d 561 (2005) ............................................................................12

*Granite Partners, L.P. v. Bear Stearns & Co.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) ....................................................12

*Graystone Materials, Inc. v. Pyramid Champlain Co.*,
    198 A.D.2d 740 (3d Dep't 1993)..........................................................12

*In re Horizon Cruises Litigation*,
    1999 U.S. Dist. LEXIS 9398 (S.D.N.Y. Jun. 24, 1999) ..........................5

*Hyosung America, Inc. v. Sumagh Textile Co., Ltd.*,
    25 F. Supp. 2d 376 (S.D.N.Y.1998)........................................................5

*Jones v. Berman*,
    37 N.Y.2d 42 .........................................................................................8

**Page**

*Kagan v. K-Telegraph Entertainment, Inc.,*
172 A.D.2d 375 (1st Dep't 1991).................................................................15

*Kapral's Tire Service, Inc. v. Aztek Tread Corp.,*
124 A.D.2d 1011 (4th Dep't 1986) ...............................................................15

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,*
2002 U.S. Dist. LEXIS 4636 (S.D.N.Y. Mar. 20, 2002) .............................19

*Kuelling v. Roderick Lean Manufacturing Co.,*
183 N.Y. 78 (1905)..........................................................................................4

*Lightfoot v. Union Carbide Corp.,*
110 F.3d 898 (2d Cir. 1997)..........................................................................13

*MCI Worldcom Communications, Inc. v LD Wholesale Inc.,*
2002 U.S. Dist. LEXIS 12426 (S.D.N.Y. July 8, 2002) ..............................19

*In re Methyl Tertiary Butyl Ether Products Liability Litigation,*
175 F. Supp. 2d 593 (S.D.N.Y. 2001)........................................................9-10

*Manufacturers Hanover Trust Co. v. Chemical Bank,*
160 A.D.2d 113 (1st Dep't 1990) ..................................................................14

*Massachusetts v. Mylan,*
Civ. No. 03-11865-PBS (D. Mass., filed Sept. 25, 2003).....................3, 19

*Metral v. Horn,*
213 A.D.2d 524 (2d Dep't 1995)......................................................................4

*Metropolitan Electric Manufacturing Co. v. Herbert Construction Co.,*
183 A.D.2d 758 (2d Dep't 1992).....................................................................12

*Newman & Schwartz v. Asplundh Tree Expert Co.,*
102 F.3d 660 (2d Cir. 1996)...........................................................................11

*O'Brien v. National Property Analysts Partnership,*
936 F.2d 674 (2d Cir. 1991)...........................................................................19

*O'Brien v. Syracuse,*
54 N.Y.2d 353 (1981) .....................................................................................11

*Old Salem Development Group v. Town of Fishkill,*
301 A.D.2d 639 (2d Dep't 2003)................................................................11-12

*Outrigger Construction Co. v. Bank Leumi Trust Co. of N.Y.,*

**Page**

240 A.D.2d 382 (2d Dep't 1997)..................................................................................15

*Parsa v. State,*
    64 N.Y.2d 143 (1984) ..........................................................................................13

*People of the State of New York v. Aventis Pharmaceuticals, Inc.,*
    No. 05-12497-PBS (S. Ct. Albany Co. 2005)........................................................7

*People of the State of New York v. GlaxoSmithKline, P.L.C.,*
    No. 05-12498-PBS (S. Ct. Albany Co. 2005)........................................................7

*People of the State of New York v. Pharmacia,*
    No. 05-12496-PBS (S. Ct. Albany Co. 2005)....................................................6-7

*In re Pharmaceutical Industry Average Wholesale Price Litigation ("Suffolk I")*
    339 F. Supp. 2d 165 (D. Mass. 2004) .................................................2, 3, 18-19

*In re Pharmaceutical Industry Average Wholesale Price Litigation ("Suffolk II")*
    2004 WL 2387125 (D. Mass. Oct. 26, 2004.....................................................18-19

*Piper v. Hoard,*
    107 N.Y. 73 (1887) .................................................................................................5

*Ramapo Land Co. v. Consolidated Rail Corp.,*
    918 F. Supp. 123 (S.D.N.Y. 1996) .................................................................18-19

*Redtail Leasing, Inc. v. Thrasher (In re Motel 6 Sec. Litigation),*
    1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. April 1, 1997) ........................................14

*Rice v. Manley,*
    66 N.Y. 82 (1876) ..................................................................................................4

*Ruffing v. Union Carbide Corp.,*
    308 A.D.2d 526 (2d Dep't 2003)............................................................................4

*SIPC v. BDO Seidman, LLP,*
    222 F.3d 63 (2d Cir. 2000).................................................................................3-4

*SIPC v. BDO Seidman, LLP,*
    95 N.Y.2d 702 (2001) ............................................................................................4

*Schauer v. Joyce,*
    54 N.Y.2d 1 (1981) ..........................................................................................13-14

*Seiden Associate, Inc. v. ANC Holdings, Inc.,*
    754 F. Supp. 37 (S.D.N.Y. 1991) .........................................................................19

**Page**

*Shafran v. Kule,*
    159 A.D.2d 263 (1st Dep't 1990) ..................................................................4

*Smith v. Kirkpatrick,*
    305 N.Y. 66 (1952) ...................................................................................11

*Sperry v. Crompton Corp.,*
    26 A.D.3d 488 (2d Dep't 2006) ............................................................ 14-15

*State v. Stewart's Ice Cream Co.,*
    64 N.Y.2d 83 (1984) .................................................................................14

*Strong v. Strong,*
    277 A.D.2d 533 (3d Dep't 2000)................................................................13

*Sybelle Carpet & Linoleum of Southampton, Inc. v. East End Collaborative, Inc.,*
    167 A.D.2d 535 (2d Dep't 1990)................................................................15

*Ultramar Energy Ltd. v. Chase Manhattan Bank N.A.,*
    179 A.D.2d 592 (1st Dep't 1992) ...............................................................19

*Ultramares Corp. v. Touche, Niven & Co.,*
    255 N.Y. 170 (1931) ...................................................................................4

*Union Carbide Corp. v. Montell N.V.,*
    9 F. Supp. 2d 405 (S.D.N.Y. 1998) .............................................................5

*United States v. Consolidated Edison Co.,*
    580 F.2d 1122 (2d Cir. 1978).....................................................................18

*United States v. Rivera-Martinez,*
    931 F.2d 148 (1st Cir. 1991)........................................................................1

*Vitolo v. Dow Corning,*
    166 Misc. 2d 717 (S. Ct. Richmond Co. 1995)............................................10

*Wechsler v.  Hoffman-La Roche, Inc.,*
    198 Misc. 540 (S. Ct. Bronx Co. 1950) ........................................................5

*Young v. Robertshaw Controls Co.,*
    104 A.D.2d 84 (3d Dep't 1984), *app. dismissed,* 64 N.Y.2d 885 (1985)....................4

*Zucker v. Katz,*
    708 F. Supp. 525 (S.D.N.Y. 1989) .............................................................19

**STATUTES AND REGULATIONS**

42 C.F.R. 447.332 ....................................................................................................17

42 U.S.C. § 1396r-8 (b)(3)(D) ..................................................................................20

New York 1976 Laws, Ch. 639, §§ 1, 4 ....................................................................8

New York 2005 Laws, Ch. 58, Pt. C ..........................................................................8

New York Constitution, Art. XVII § 1 ....................................................................8-9

New York General Business Law § 349 ............................................................. 1, 7-10

New York Social Service Law § 21 ..........................................................................10

New York Social Service Law § 62(1) ........................................................................9

New York Social Service Law § 145-b ....................................................................2, 7

New York Social Service Law § 365(1) ......................................................................9

New York Social Service Law § 366(2)(b)(3) ..........................................................10

New York Social Service Law § 367-a ......................................................................16

New York Social Service Law § 367-b ..............................................................7, 8, 10

**OTHER AUTHORITIES**

62 A.L.R.3d 288 (J.R. Kemper, *Building and Construction Contracts:  Right of Subcontractor Who Has Dealt Only With Primary Contractor to Recover Against Property Owner In Quasi Contract*) ......................................................................15

37 Am. Jur. 2d § 293 ..................................................................................................5

66 Am. Jur. 2d § 24 ..................................................................................................12

22A N.Y. Jur. § 572 ..................................................................................................18

60A N.Y. Jur. §§ 16, 81 ..............................................................................................4

## INTRODUCTION

While defendants complain that plaintiffs have selectively invoked law of the case and stare decisis, they themselves do no less. If this Court decides to revisit any of its prior rulings, however, there is one that stands out: the dismissal of Suffolk's common law fraud claim. This Court's ruling dismissing the fraud claim was clearly contrary to New York law and works a manifest injustice, and the Court should not adhere to it here. *See Christianson v. Colt Industries*, 486 U.S. 800, 816-17 (1988); *United States v. Rivera-Martinez*, 931 F.2d 148, 150-51 (1st Cir. 1991). Both the explicit statements of New York courts and the facts of numerous cases demonstrate beyond peradventure that there is no requirement in New York law that a plaintiff be in privity with defendant in order to state a claim for fraud through reliance on statements made to third parties. Here, plaintiffs relied on the accuracy of defendants' price statements to industry publications in exactly the same manner as did the State. They paid their shares of the Medicaid bills without challenging these prices as they would have done had they known the truth, and as they have now done.

Defendants reiterate their contention that *Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris, USA, Inc.,* 3 N.Y.3d 200 (2004), bars plaintiffs' GBL § 349 consumer fraud claim. Their major argument on reply, that the change in the payment system legislated by the State in 1976 altered the statutory responsibilities of the Counties and the State with respect to the Medicaid program, is false, and many of defendants' understandings of both past and recent changes in the Social Services Law are simply wrong. Moreover, even if the Counties were indirect purchasers, which they are not, there is ample caselaw holding that indirect purchasers may state claims under GBL § 349. This caselaw, which extends well beyond *Cox v. Microsoft,* 8 A.D. 3d 39, 40 (1st Dep't 2004), is in no way undermined by *Blue Cross. Blue Cross*

concerned a different kind of remoteness, namely an insurer's effort to recover economic losses from the tobacco industry whose fraud had allegedly caused personal injuries to third parties.

Defendants argue that plaintiffs' unjust enrichment claims fail both because such claims require a relationship "approaching a contractual relationship," Defs. Mem. at 24 n.17, and because the very existence of the rebate contracts "bars anyone – even someone not a party to the contract – from using an unjust enrichment theory," Defs. Rep. at 16.  These propositions cannot both be true, and indeed both are false.

Defendants' argument that New York's Medicaid fraud statute, SSL § 145-b, should be read so as not to cover the fraud alleged here adds nothing to what has been said previously.  The legislative history that defendants cite does not in any way require the narrow and tortured construction that they champion, nor does it contradict this Court's straightforward reading of the statute in *Suffolk I*.   This point is therefore not further addressed below. Defendants' replies concerning plaintiffs' third-party beneficiary claim and implied causes of action likewise miss the mark, but add virtually nothing that warrants rebuttal here.[1]

Finally, defendants make a series of points concerning plaintiffs' factual allegations of pricing fraud that display a willful misunderstanding of the theory of plaintiffs' case.  Plaintiffs' theory is that defendants' submission to publishers of false and inflated pricing data – including not only AWPs but also WACs and other published prices – leads directly to gross overpayments by the New York State Medicaid program, not only for drugs with reimbursement based on AWP, but also for drugs with reimbursement based on FUL.  *See, e.g.,* CC ¶¶ 6-8, 86.  Moreover, contrary to defendants' suggestions, plaintiffs' theory does take into account that the FUL is based on the lowest *published* price.  However, where the FUL is, for

---

[1] Defendants state that if plaintiffs were "really" agents of the State, they could proceed directly rather than as third-

example, four and a half times higher than the actual prices listed by McKesson Servall (which are not especially low prices), this is evidence of fraudulent inflation of the published price upon which the FUL is based.   Nor have plaintiffs conceded that physician-administered drugs ("PADs") are not reimbursed based on AWP.   Medicaid reimburses hospitals and clinics for such drugs at prices based on AWP.   With respect to the Best Price allegations, plaintiffs now rely on specific information of violations by 22 defendants.   Because such violations appear to be virtually universal in the industry, *see Massachusetts v. Mylan*, Civ. No. 03-11865-PBS (D. Mass. filed Sept. 25, 2003), these allegations should not be dismissed as against any defendants until minimal discovery is completed. [2]

## ARGUMENT

**I.      A PLAINTIFF NEED NOT BE IN PRIVITY WITH DEFENDANT TO CLAIM FRAUD BASED ON STATEMENTS MADE TO THIRD PARTIES**

In their Consolidated Opposition, Plaintiffs cited extensive caselaw demonstrating that third-party reliance may form the basis of a fraud claim in New York.[3]   Defendants, in reply, concede this, but assert that"[t]he cases allowing third-party reliance are special ones in which the plaintiff and the defendant are in privity, but the defendants' representation is made to an intermediary upon whom plaintiff relied." Defs. Rep. at 6-7.

This is not accurate.   In *SIPC v. BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000), the Second Circuit made very clear that although "a relationship approaching that of privity" is

---

party beneficiaries.  This is obviously false:  the State itself is a third-party beneficiary.

[2] Although the Consolidated Complaint amply demonstrates the falsity of defendants' reported pricing information, pursuant to CMO 21 plaintiffs have recently obtained actual transaction prices from every named defendant who has produced such information to the class plaintiffs.  Plaintiffs' initial evaluation of this data suggests that it would permit plaintiffs, if the Court felt it necessary, to amend their complaint to document the even higher spreads that these data reveal between the reported AWPs (and other published prices) and what a true AWP should have been.

[3] Defendants dispute the fact that the briefing on common law fraud on the *Suffolk* motion to dismiss was terse. However, defendants' moving brief in *Suffolk* spent only one and a half pages on fraud, while Suffolk's opposition addressed only Rule 9(b), and said nothing at all about reliance.

required to make out a claim for *negligent* misrepresentation, *id.* at 73-74 (quoting *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985), and *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 182 (1931)), there is no such requirement in New York for *fraudulent* misrepresentation, *id.* at 71-72.   Indeed, in *SIPC* itself there was no relationship whatsoever between the plaintiff SIPC and the defendant accounting firm.   The Second Circuit certified to the Court of Appeals the question of whether a plaintiff could "recover against an accountant for *negligent* misrepresentation where the plaintiff had only minimal direct contact with the accountant," *SIPC,* 222 F.3d at 81, but asked no such question with respect to *fraudulent* misrepresentation.   The Court of Appeals, in turn, found that the SIPC could not state a claim for fraud, not because the reliance was by a third party or because it lacked privity, but only because the discretion enjoyed by the third party in this case – the NASD – was such as to sever the chain of causation.   *SIPC*, 95 N.Y.2d 702, *passim* (2001).   *See Metral v. Horn*, 213 A.D.2d 524, 526 (2d Dep't 1995) (no requirement of "relationship of privity or something close to privity") (citing *Credit Alliance Corp.*, 65 N.Y.2d at 547); *Shafran v. Kule*, 159 A.D.2d 263 (1st Dep't 1990) ("Lack of privity is not a viable defense to fraud."); *Kuelling v. Roderick Lean Mfg. Co.*, 183 N.Y. 78, 89 (1905) (same); 60A N.Y. Jur. §§ 16 and 181 (same).

   Not one of the New York cases supporting a cause of action for fraud based on indirect reliance so much as mentions privity, and in many cases upholding third-party reliance, there was no personal contact whatsoever between plaintiff and defendant. *Kuelling*, 183 N.Y. at 89; *Rice v. Manley*, 66 N.Y. 82 (1876); *Young v. Robertshaw Controls Co.*, 104 A.D.2d 84 (3d Dep't 1984), *app. dismissed*, 64 N.Y.2d 885 (1985); *City of New York v. Lead Industries Ass'n*, 241 A.D.2d 387 (1st Dep't 1997); *Ruffing v. Union Carbide Corp.*, 308 A.D.2d 526 (2d Dep't 2003); *Catherwood v. American Sterilizer Co.*, 132 A.D.2d 9938 (4th Dep't 1987); *Angie v.*

*Johns-Manville Corp.*, 94 A.D.2d 939 (4th Dep't 1983); *Cooper v. Weisblatt*, 154 Misc. 522 (App. Term, 2d Dep't 1935) (no relationship between Weisblatt and Cooper); *Wechsler v. Hoffman-La Roche, Inc.*, 198 Misc. 540, 541 (S. Ct. Bronx Co. 1950); *Piper v. Hoard*, 107 N.Y. 73, 79 (1887).

        The cases supporting indirect reliance make clear that causation, not privity, is the fundamental test of whether a plaintiff may recover for fraud based upon misrepresentations that the defendant made to a third party. *See* Pls. Opp. at 31-34; *see also, e.g., Union Carbide Corp. v. Montell N.V.*, 9 F. Supp. 2d 405, 412 (S.D.N.Y. 1998) (distinguishing New York cases rejecting third-party reliance on grounds that they "address situations presenting a risk of far-flung liability for inchoate or unintended injuries."); *Hyosung America, Inc. v. Sumagh Textile Co., Ltd.*, 25 F. Supp. 2d 376, 383, n.9 (S.D.N.Y.1998) (distinguishing *Cement and Concrete Workers v. Lollo*, 148 F.3d 194 (2d Cir. 1998), because "defendant's misrepresentations [there] were not the immediate cause of plaintiffs' loss."); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 406-07 (1958) (fraud plaintiff must "show that the defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged"); 37 Am. Jur. 2d § 293 ("To recover on a claim for misrepresentation it is not always necessary to prove that the misrepresentation was made directly to the person who claims to have been injured as long as [the] injured party is able to prove that damages resulted from the deceit.").[4]

---

[4] Contrary to defendants' assertion, *In re Horizon Cruises Litig.*, 1999 U.S. Dist. LEXIS 9398 at *5 (S.D.N.Y. Jun. 24, 1999), makes no mention of any requirement that there be "a direct relationship within the alleged fraudulent transaction between plaintiff and defendant." Defs. Rep. at 8 n.8. *Horizon Cruises* instead acknowledges that when there is indirect reliance "it may be enough where the third party recipient of the false statement is the intermediary between the plaintiff and defendant in the transaction." *Id.* at *5 (citing *Union Carbide Corp.*, 9 F. Supp. 2d at 412-13).

Thus, under New York law, reliance by a third party that directly causes damage to plaintiff suffices to sustain a fraud claim. Here, moreover, there is no question that the Counties themselves relied on defendants' misrepresentations to the publishers, just as did the State. Pursuant to State law, the prices charged to the Medicaid program are based on AWPs, which are the only prices uniformly publicly available for all of defendants' drugs. Defendants' misrepresentations caused the Counties (and the State) to provide reimbursements based on false information. *See, e.g.*, Cons. Comp. ¶¶ 784, 822, 843. Had the Counties known that their payments were affected by fraud, they would have taken action, as they have done in the past and are doing again here. Indeed, two such actions concerned overcharges for pharmaceuticals by defendant GlaxoSmithKline. *City of New York v. GlaxoSmithKline*, No. 2:04cv312 (E.D. Va. 2004); *City of New York v. GlaxoSmithKline*, Civil Action No. 04-2134 (E.D. Pa. 2004); *see also City of New York v. The Tobacco Institute, Inc.*, 1997 U.S. Dist. LEXIS 19415 (S.D.N.Y. 1997).[5] Defendants' misrepresentations here induced the Counties to refrain from acting for many years. The Counties' forbearance constitutes reliance: "Inaction, quite as much as action, induced by fraud, may sustain recovery." *Continental Ins. Co. v. Mercadante*, 222 A.D. 181 at *6 (1st Dep't 1927).

The pharmaceutical companies are not, technically, Medicaid providers, and are not subject to audit by the State under the Social Services Law. The State has no greater or different remedies against the pharmaceutical companies than do the Counties. In fact, the State has embarked on the same course as the Counties, bringing civil lawsuits against pharmaceutical companies for fraudulent AWPs. *People of the State of New York v. Pharmacia*, No. 05-12496-

---

[5] Should this Court deem it necessary, Plaintiffs can amend their complaint to add that in addition to civil prosecutions by the New York City Law Department, the City has at times investigated Medicaid provider fraud through its social services agency, the Human Resources Administration, and these investigations have resulted in

PBS (S. Ct. Albany Co. 2005); *People of the State of New York v. Aventis Pharmaceuticals, Inc.*, No. 05-12497-PBS (S. Ct. Albany Co. 2005); *People of the State of New York v. GlaxoSmithKline, P.L.C.*, No. 05-12498-PBS (S. Ct. Albany Co. 2005).[6]

## II.     *BLUE CROSS* IS INAPPLICABLE TO PLAINTIFFS' GBL § 349 CLAIM

Defendants again mistakenly argue that *Blue Cross*, 3 N.Y.3d 200, defeats plaintiffs' GBL § 349 consumer fraud claim. Defendants charge that plaintiffs' statement that it is the Counties, not the State, that bear ultimate financial responsibility for medical assistance to the needy is "just plain false," because of the enactment of SSL § 367-b in 1976. Defs. Rep. at 11. Defendants' point appears to be that plaintiffs' damages are now less directly related to defendants' wrongful conduct than prior to 1976, and/or that plaintiffs have now become insurers or third-party payors with respect to the State. These arguments are incorrect.

### A.     The Enactment of SSL § 367-b Did Nothing to Change the Legal Relationship Between the Counties and the State With Respect to Medicaid

Defendants' suggestion that the passage of SSL § 367-b was a watershed event that transformed the Counties' relationship to the Medicaid program is wrong. Section 367-b simply took a system in which the Counties made Medicaid payments directly to providers and were reimbursed by the State, and replaced it with a system where "the local social services district share of medical assistance payments [is] made by the state on behalf of the local social services district." SSL § 367-b(14). This was done based upon the legislature's finding that "an economical and efficient method of controlling medical assistance expenditures is through the establishment within the state department of social services of a statewide centralized medical

---

criminal prosecutions by the District Attorneys and monetary recoveries.
[6] Contrary to defendants' contention, Defs. Rep. at 14, the State fully supports this action as well as the Attorney General's actions. The State's support of this litigation is evidenced by Exhibits B and C to the Cicala Declaration. The Counties here are seeking not only the local share of defendants' Medicaid overcharges, but also the State and

assistance information and payments system." Laws of 1976 Ch. 639 §1. Although, over a

period of years, the State became the initial payor of provider claims, the statute did not relieve

the Counties of their status as co-obligors with ultimate responsibility for all Medicaid payments.

As the statute explains:

> This act shall be construed so as to give effect to every other
> provision of the social services law . . . , and nothing herein
> contained shall be interpreted as superseding any other provision
> of such laws."

Laws of 1976, Ch. 639, §4. The State and the Counties still share the Medicaid burden. Indeed,

Section 367-b is replete with references to the "local . . . district share."[7]

Accordingly, the holding of *Jones v. Berman*, 37 N.Y.2d 42, 54-55, that the

Counties are ultimately responsible for care of the needy, is in no way affected by SSL § 367-b.

That holding was based on Article XVII, § 1 of the New York State Constitution ("The aid, care

and support of the needy are public concerns and shall be provided by the state and by such of its

subdivisions, and in such manner and by such means, as the legislature may from time to time

determine."), and on provisions of the Social Services Law that remained unaltered. *See* SSL §

62(1) ("Subject to reimbursement in the cases hereinafter provided for, each public welfare

district shall be responsible for the assistance and care of any person who resides or is found in

its territory and who is in need of public assistance and care which he is unable to provide for

---

federal shares, as they are required to do by law. *See* Pls. Opp. at 14-15.

[7] Defendants utterly fail to understand the cap legislation first enacted as part of the 2005 State budget. N.Y. 2005 Laws, Ch. 58, Part C. *See* Defs. Rep. at 3 n.3, 5 n.5, 12 n.12. Pursuant to the cap legislation, the State is assuming the increment (but only the increment) in local spending when such spending increases at a rate of more than approximately 3% per year over the 2005 base year. The State has taken the position that the effect of this statute is that there will be no local share of overcharges recovered after FY 2006 unless such recoveries are certified as demonstration projects. It is for this reason, and no other, that in 2005 the Counties sought and received such certification for this litigation. Contrary to defendants' speculation, *all* the Counties have received such certification. Defendants' belief that localities will no longer pay a share of Medicaid expenditures after 2008 is also wrong, although the method of payment can change for Counties (but not for the City) at the Counties' election. Defendants are mistaken, too, in contending that *Beaudoin v. Toia*, 45 N.Y.2d 343, is only applicable to AFDC. The Social Services Law defines "Assistance and care" to include not only AFDC (now TANF), but also medical

himself."); SSL § 365(1) ("Subject to supervision by the department [and to enumerated exceptions]: each public welfare district shall furnish medical assistance to the persons eligible therefor who reside in its territory.").

## B.   Parties Who Suffer Indirect Injury Can Still Sue Under GBL § 349

Even if plaintiffs were considered indirect purchasers, as defendants argue, they would still have a claim under GBL § 349. There is a huge difference between a purchaser who seeks to recover a fraudulent overcharge – whether passed down through intermediaries or not – and an insurer who seeks to recover medical costs that it had to pay for because of a physical injury to someone else. In *Blue Cross*, unlike here, the chain of causation passes tenuously through two wholly different kinds of injury: a personal injury to the intermediary, which in turn caused the insurer to incur medical costs. The tobacco companies there deceived smokers into becoming addicted, which in turn caused them to become ill, which in turn caused them to go to the hospital, which in turn cost money that Blue Cross was obligated to pay. Here, defendants submitted false and inflated prices for their products, and plaintiffs, along with the State and the federal government, overpaid as a result. There is nothing remote about plaintiffs' injuries. Even accepting defendants' analysis, what is at issue here and in *Cox v. Microsoft*, 8 A.D. 3d at 40, is the same injury passed along through an intermediary. Because of this difference, *Blue Cross* had no effect on *Cox*, which reaffirmed indirect purchasers' right to sue under GBL § 349. *See also Bildstein v. Mastercard Int'l Inc.*, 2005 U.S. Dist. LEXIS 10763 at *9, 2005 U.S. Dist. LEXIS 10763, *9-10 (S.D.N.Y. June 6, 2005) ("Privity is not required to state a Section 349 claim.") (decided after *Blue Cross*); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 630-31 (S.D.N.Y. 2001) ("there is no requirement of privity, and the victims of

---

assistance. SSL § 2(18).

indirect injuries are permitted to sue under [Section 349]") (internal quotation marks and citation omitted); *Vitolo v. Dow Corning*, 166 Misc. 2d 717 (S. Ct. Richmond Co. 1995), *aff'd in relevant part*, 234 A.D. 2d 361 (2d Dep't 1996) (same).   While neither the State nor the Counties pay defendants directly, both the State and the Counties suffer direct injury from paying providers at fraudulently inflated prices.   Their claims are therefore not foreclosed by *Blue Cross*.

## C.      The Counties Are Not Equivalent to Insurers

The application of *Blue Cross* is moreover limited to the insurance context.   As the Court there noted, plaintiffs there had a more appropriate remedy – equitable subrogation. As the *Blue Cross* court explained, "[i]nsurers cannot sidestep the traditional remedy of subrogation and sue directly for derivative injuries using a statute that creates a cause of action for a person directly injured." *Blue Cross*, 3 N.Y. 3d at 209.   In the instant case, plaintiffs have no equitable subrogation claims.   Plaintiffs here do not seek to stand in the shoes of anyone, but rather to assert their own claims.

Nevertheless, defendants attempt to shoehorn the Medicaid program into the narrow holding of *Blue Cross* by suggesting that the State is an insured party and the County is merely an insurer or third party payer.   *See* Defs. Rep. at 11.   The reality, however, is quite different.   The County and the State work hand-in-hand to administer the Medicaid program.[8] Since the Counties are primary obligors of Medicaid payments not insurers of the State's obligations.   Therefore, the decision in *Blue Cross* is of no relevance here.

---

[8] Thus it is the Counties that determine the eligibility of individuals seeking Medicaid coverage. SSL § 366(2)(b)(3).   That eligibility information becomes available to the State through a computer program shared by the County and State. SSL § 21.   Providers submit to the State their claims for services rendered to eligible clients, and the State pays them through the statewide computer system that it developed after the enactment of SSL § 367-b.   On a weekly basis, each County then pays the appropriate local portion tothe State.

III.     **PLAINTIFFS HAVE STATED A VALID UNJUST ENRICHMENT CLAIM**

On reply, defendants reiterate their arguments that a claim of unjust enrichment both *requires* privity between plaintiff and defendant and *cannot* exist if there is such privity. Defendants' mutually inconsistent positions are both misplaced.  Defendants' pincer maneuver erroneously eliminates the claim of unjust enrichment from the law entirely.

A.     **The Existence of the Rebate Agreements Does Not Preclude Plaintiffs' Unjust Enrichment Claims**

Defendants challenge the Counties' unjust enrichment claim with respect to Best Prices on the ground that "the very existence of the Medicaid rebate agreements preclude these claims," because "unjust enrichment will not lie when a contract covers the matter in dispute." Defs. Rep. at 15.  Defendants misstate New York law.  As the Court of Appeals has held, "In this State, where a litigant fails to establish the right to recover upon an express contract he may, in the same action, recover in *quantum meruit*." *Smith v. Kirkpatrick*, 305 N.Y. 66, 73 (1952) (overruled on a different point by *O'Brien v. Syracuse*, 54 N.Y.2d 353, 358 (1981)).  This is true, moreover, not only where the dispute is outside of the contract or where there is a question as to the validity of the contract, as defendants contend, *see* Defs. Rep. at 16 n.15, but also where there is a question as to whether the plaintiff is a beneficiary of the contract.  For example, in *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996), the court permitted pleading in the alternative where, as here, plaintiff asserted that it was a third-party beneficiary of a contract, but in the alternative sought recovery in unjust enrichment.  *See also Old Salem Dev. Group v. Town of Fishkill*, 301 A.D.2d 639, 639 (2d Dep't 2003) ("[W]hile the parties do not dispute the existence of two agreements entered into between the plaintiffs and a nonparty which ultimately may govern the dispute herein, there is a dispute as to whether the defendant

11

assumed the nonparty's obligations to the plaintiffs under these agreements and therefore, as to whether the agreements govern the parties' dispute. Under these circumstances . . . plaintiffs are entitled to proceed on both *quasi* contract and breach of contract theories."); 66 Am. Jur. 2d § 24 ("The mere existence of a written contract governing the same subject matter does not preclude quantum meruit recovery from third persons *or nonparties* so long as the other requirements for quasi-contracts are met.") (emphasis added).

Defendants again cite dicta from *Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998), to support their contention that the existence of a contract "bars anyone – even someone not a party to the contract – from using an unjust enrichment theory." Defs. Rep. at 16.  The holding of *Granite Partners* is, however, consistent with the general rule stated, *e.g.*, in *Clark-Fitzpatrick, Inc. v. Long Island RR. Co.*, 70 N.Y.2d 382, 389 (1987), that where a valid contract clearly cover the dispute between the parties, the can be no action in quasi-contract.  The *Granite* court found that plaintiffs' claim was in fact "at the heart of the contractual agreements governing those transactions," and that "[t]he enrichment which was allegedly 'unjust' was simply the payment of a bargained-for sales price." *Granite Partners*, 17 F. Supp. 2d at 312.[9]  Defendants also cite *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 570 (2005).  The parties there agreed that an insurance policy governed their dispute, and were at odds only as to the interpretation of that contract.  Here, the issue of whether the Rebate Agreements apply remains to be decided.  If they do not, plaintiffs have an unjust enrichment claim.

---

[9] Paradoxically, *Granite Partners*' erroneous *dicta* that parties in privity or near-privity cannot state a claim for unjust enrichment relies on the same line of cases discussed below that supports the opposite proposition, that parties *must* be in privity or near-privity to bring claims for unjust enrichment. *See Graystone Materials, Inc. v. Pyramid Champlain Co.*, 198 A.D.2d 740 (3d Dep't 1993); *Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.*, 183 A.D.2d 758 (2d Dep't 1992) (cited in *Granite Partners*, 17 F. Supp. 2d at 311).  As explained below, this is based on the sloppy legal reasoning of some of these subcontractor cases, which are in any event inapplicable here.

**B.**     **Unjust Enrichment Does Not Require A Direct Relationship Between the Parties**

With respect to the Counties' AWP claims, defendants again argue that plaintiffs "do not have the requisite quasi-contractual relationship with drug manufacturers" to support a claim of unjust enrichment. Defs. Rep. at 16. Presumably, the relationship that defendants would require is not contractual, as this would allegedly bar the unjust enrichment claim. And although they call it "quasi-contractual," defendants do not mean a quasi-contract implied in law. Rather, defendants contend that a personal relationship of some unspecified kind is required.[10]

Defendants' suggested requirement of privity or some unspecified relationship similar to privity would defeat the very purpose of the doctrine of unjust enrichment, which developed to prevent defendants from keeping possession of something of value which "in equity and good conscience they should not have obtained or possessed because it rightfully belongs to another." *Strong v. Strong*, 277 A.D.2d 533, 534 (3d Dep't 2000); *Parsa v. State*, 64 N.Y.2d 143, 148, 149 (1984) (same); *see also* Pls. Opp. at 17 n.23 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997); *Chadirjian v. Kanian*, 123 A.D.2d 596 (2d Dep't 1986)).[11] This is why the cases hold that an unjust enrichment claim does not require "plaintiff and defendant to have had direct dealings with one another." *Dreieck Finanz AG v. Sun*, 1989 U.S. Dist. LEXIS 9623 at *13 (S.D.N.Y. Aug. 14, 1989) (citing *Davenport v. Walker*, 132 A.D. 96 (2d Dep't 1909)); *Connelly Containers, Inc. v. Bernard*, 717 F. Supp. 202, 210 (S.D.N.Y. 1989) ("The lack of a direct transfer from plaintiff to defendant thus does not bar recovery for unjust enrichment," and defendants' argument to the contrary "tries to draw too fine

---

[10] If a relationship akin to privity were required, it would be found here. *See* Pls. Opp. at 18. Defendants are well aware when they communicate prices to the publishing services that those prices will form the basis for payments by governmental payors, including plaintiffs, under the Medicaid program. *See, e.g.,* CC ¶¶ 12, 122.

[11] The unjust enrichment claim here is analogous to a claim for equitable indemnity, as to which there is no requirement of any relationship or duty of any kind between indemnitor and indemnitee. *See, e.g., Schauer v. Joyce,*

a line for an equitable remedy such as unjust enrichment."). For example, plaintiffs who allege that defendants' conduct "caused them to pay artificially inflated prices for [defendants'] products state a cause of action for unjust enrichment." *Cox v. Microsoft Corp.*, 8 A.D.3d at 40-41 (trial court erred in dismissing plaintiff's unjust enrichment claim on ground that "plaintiffs only indirectly bestowed a benefit upon Microsoft") (citing *Manuf. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117-18 (1st Dep't 1990) (In evaluating a claim of unjust enrichment, "[i]t does not matter whether the benefit is directly or indirectly conveyed.")); *see also State v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 88 (1984) (permitting State to seek restitution from a third party with which it had no prior relationship); *City of New York v. Lead Industries Ass'n*, 222 A.D.2d 119 (1st Dep't 1996) (upholding claims for restitution and equitable indemnity by City against former manufacturers of lead pigments with which the City had no prior relationship).

Defendants again cite to *Redtail Leasing, Inc. v. Thrasher (In re Motel 6 Sec. Litig.)*, 1997 U.S. Dist. LEXIS 3909 at * 22 (S.D.N.Y. April 1, 1997), already distinguished by plaintiffs. Dicta in that case suggesting that the plaintiff "must have had some type of direct dealings" with the defendant, *id.*, would make new state law rather than reflecting the existing law of New York. Indeed, the *Redtail Leasing* court itself conceded that the elements of a claim for unjust enrichment "do not explicitly spell out such a requirement." *Id.* at *21.

Defendants also cite *Sperry v. Crompton Corp.*, 26 A.D.3d 488, 489 (2d Dep't 2006), which disapproves of *Cox* and claims that the parties to an unjust enrichment claim must be in privity with each other. In fact, it is *Sperry*, not *Cox*, that got the law wrong. None of the cases cited by *Sperry* holds that there must be a relationship of privity or approaching privity in

---

54 N.Y.2d 1, 5 (1981).

order to state a claim of unjust enrichment.  Those cases hold rather that there can be no unjust enrichment claim against the ultimate recipient of goods or services where that recipient pays an intermediary such as a general contractor, who in turn fails to pay his subcontractor.  In such a case, the subcontractor's only remedy is in contract against the general contractor with which he is in privity.  Even if the subcontractor does have a direct relationship with the property owner, the subcontractor has no unjust enrichment claim against him, as he was not unjustly enriched.[12] *See Sybelle Carpet & Linoleum of Southampton, Inc. v. East End Collaborative, Inc.*, 167 A.D.2d 535 (2d Dep't 1990); *Outrigger Constr. Co. v. Bank Leumi Trust Co. of N.Y.*, 240 A.D.2d 382 (2d Dep't 1997); *Kagan*, 172 A.D.2d 375; *Kapral's*, 124 A.D.2d 1011.   In *Outrigger*, *Kagan*, and *Kapral's*, the party unjustly enriched was not the defendant, who had in fact made full payment, but rather the intermediary who had a contract with the plaintiff, but was insolvent.   In the fourth case, *Sybelle*, as well, there is no allegation that the defendant homeowner had not paid the general contractor.   In each case, the court dismissed the case holding that there was no unjust enrichment.  *See also* J.R. Kemper, *Building and Construction Contracts:  Right of Subcontractor Who Has Dealt Only With Primary Contractor to Recover Against Property Owner In Quasi Contract*, 62 A.L.R.3d 288, at *2 (in such cases it is usually the general contractor that has been unjustly enriched, not the property owner, so that "to allow the subcontractor to recover from the landowner would . . . be to require him to pay twice").

However, the facts of the instant case – and of *Sperry* itself – are like those of the cases supporting recovery regardless of privity, and unlike those of the subcontractor line of

---

[12]  In fact, two cases relied on by *Sperry* dismissed unjust enrichment claims even though there *was* a direct relationship between plaintiff and defendant.  *Kagan v. K-Tel Entm't, Inc.*, 172 A.D.2d 375 (1st Dep't 1991) (agents who successfully negotiated with defendants on behalf of a third party sued defendants for fee that insolvent third party never paid them); *Kapral's Tire Serv., Inc. v. Aztek Tread Corp.*, 124 A.D.2d 1011 (4th Dep't 1986) (plaintiff supplier of goods to Montgomery Ward pursuant to contract with an insolvent third party sued Montgomery Ward for payment).

cases. Here, in contrast to those cases, it is the defendant drug manufacturers, not any alleged intermediary, that were unjustly enriched. As in this case, in *Sperry* and *Cox* it was the defendants who were unjustly enriched, not any intermediate purchasers. Therefore, the claim of unjust enrichment here must stand.

## IV.   PLAINTIFFS' PRICING ALLEGATIONS ARE SUFFICIENT

### A.   Plaintiffs' Claims For Physician-Administered Drugs Should be Sustained

Defendants argue that PADs are reimbursed based on actual cost, not AWP, and that claims as to them must therefore be dismissed. However, it is only where a claim for a PAD is submitted by a practitioner claiming separately, outside of a hospital or clinic setting, that reimbursement is at actual cost. SSL § 367-a ("payments . . . shall be made at the following amounts[:]  for drugs administered by medical practitioners *and claimed separately by the practitioners*, the actual cost of the drug to the practitioners") (emphasis added).  Where hospitals and clinics submit claims for PADs, Medicaid reimbursement is made based on AWP. Many drugs classified as PADs may also be self-administered, and in that case also they are reimbursed based on AWP.  Medimmune confirms that PADs are reimbursed on AWP, stating: "[S]ynagis [a PAD] is distributed both by physicians, who are statutorily required to be reimbursed at actual cost, and by Assignment of Benefit Distributors, who are reimbursed at AWP minus a percentage." Medimmune Rep. at 3.  *See also* Lupron Settlement Agreement (Exh. A to TAP's Supp. Mem. in Support of Defs. Motion to Dismiss) (settling allegations that TAP inflated AWP for Lupron, a PAD).  It is premature to determine at this stage, with no factual record, what proportion of PAD claims were reimbursed based on AWP and are thus properly within the scope of plaintiffs' claims.

**B.    Plaintiffs' Claims Apply to Drugs Paid at the FUL**

Defendants argue that plaintiffs' claims with respect to multisource generic drugs that have FUL prices are not alleged with sufficient particularity.  However, as plaintiffs previously pointed out, the Consolidated Complaint alleges specific facts concerning inflation of FULs.  Moreover, plaintiffs are now in possession of data showing that each and every defendant played a role in the maintenance of unlawfully elevated FULs. *See* Pls. Opp. Mem. at 20-21.[13]

Defendants misstate plaintiffs' argument with respect to FUL prices.  Defendants point out that the FUL is set at "150% of the *published price* for the least costly therapeutic equivalent."  42 C.F.R. 447.332 (emphasis added).  Plaintiffs, however, have alleged unlawful overcharges not just with respect to AWP, but with respect to all defendants' published prices. CC ¶¶ 6-8, 86.  Evidence for plaintiffs' allegations that the FULs are unlawfully inflated comes from the fact that the FULs for specific drugs are not merely slightly higher than actual prices, but enormously higher, even than prices that are themselves rather high, such as the McKesson Servall prices referenced in plaintiff's exhibits.  These are the prices paid by independent pharmacists, and are generally substantially higher than the best prices that defendants offer to large pharmacy chains and other larger purchasers.  They are therefore conservative estimates of *real* average transactional prices, such as *real* (as opposed to published) AWPs and WACs. Therefore, if the FUL for a specific drug is far higher than the McKesson Servall price for that same drug, the published price from which that FUL was calculated must also be grossly inflated

---

[13] It should be noted, too, that the same drugs are reimbursed at FUL during some periods and not during others. Defendants' own submissions make clear that defendants themselves do not know when their drugs were or were not reimbursed based on FUL. *See* Sandoz Opp. at 4-5, *citing* Sandoz MTD at 4, wherein Sandoz and its 24 co-authors incorrectly state that three drugs were reimbursed based on FUL when in fact they were reimbursed based on AWP.  Therefore, on this basis alone, no drugs should be dismissed on the ground that they were paid for based on a FUL rather than on AWP.

over any actual price.  For example, the FUL for Clobetasol 0.5% cream was more than 4.5 times higher than Alpharma's McKesson Servall price.  CC ¶¶ 208-09.  The FUL for Furosemide 20 mg tablets was 4.8 times higher than Boehringer Group's McKesson Servall price.  CC ¶¶ 354-55.  Similar spreads exist for many other drugs.  *See* Pls. Opp. Mem. at 20 (citing to CC and NSAC).  In the above examples, had the defendant published its McKesson Servall price, the FUL would have been less than a quarter of what it actually was.

It is not plaintiffs' theory that defendants were obligated to publish their lowest price for generic drugs.  However, defendants were legally obligated to report average prices that are tethered to actual prices.  The fact that the FULS are so very much higher than the generally available market prices for defendants' generic products reveals that defendants' published prices are not accurate average prices of any kind.

**C.      Plaintiffs' Best Price/Rebate Claims Are Sufficiently Pleaded**

In *Suffolk I*, the Court generally sustained Plaintiffs' Best Price/Rebate claims, holding that "Suffolk's claim that Defendants were 'saved from expense' when they fraudulently underpaid Best Price rebates to the States, and consequently Suffolk, suffices to state an unjust enrichment claim."  339 F. Supp. 2d at 181.[14]  In *Suffolk II*, the court made clear that Rule 9(b) does not apply to plaintiffs' unjust enrichment best price/rebate claims.  *Id.* at *2 ("Rule 9(b) does not apply to the remaining claims, unjust enrichment and implied causes of action, since these do not require a pleading of fraud or mistake.").[15]

---

[14] The Court there characterized as "thorny" the question of "whether Suffolk may recover from defendants to the extent that the AWP fraud boosted their sales." *Id.*  In an action for unjust enrichment, the measure of damages properly may be either the defendant's gains or the plaintiff's losses.  22A N.Y. Jur. § 572 (plaintiff in quasi contract "is entitled to recover . . . that which he parted with" or "that which the defendant has received."); *United States v. Consol. Edison Co.*, 580 F.2d 1122, 1131 n.16 (2d Cir. 1978) ("In quasi-contract, it is appropriate to look to measures of damages other than the amount by which the defendant is benefited where that amount is not susceptible of proof.") (citation omitted).  If defendants' gains here are hard to measure, plaintiffs' losses are not.

[15] Defendants nevertheless cite *Daly v. Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998), and *Ramapo Land Co. v.*

In *Suffolk II* the court sustained Suffolk's Best Price unjust enrichment claims as to defendants Bayer, GSK, Abbott, Pfizer, TAP and Schering-Plough, for whom Suffolk had set forth at least minimal facts with respect to "(1) the allegedly fraudulent or false price reported to the state for any specific drug; or (2) any information showing a company-wide scheme to misstate Best Prices." 2004 WL 2387125 at *3. The same Best Price allegations are made here, and claims against these same defendants should therefore be upheld here as well. In addition, plaintiffs herein now have specific evidence of failure to report Best Prices as to defendants Merck, TAP, and Wyeth, and plaintiffs' unjust enrichment claim should therefore be sustained as against these defendants. CC ¶¶ 602-07, 763-67, and 819-23.

This Court's denial of motions to dismiss in *Massachusetts v. Mylan Laboratories*, Civ. No. 03-11865-PBS, represent another important development subsequent to the *Suffolk* decisions. The Commonwealth of Massachusetts, because it is a state, has access to pricing data, including Best Prices, Unit Rebate Amounts and AMPs, which plaintiffs here have thus far been unable to obtain, as they are confidential by law. 42 U.S.C. § 1396r-8 (b)(3)(D). Using that data, Massachusetts was able to allege, with sufficient particularity to satisfy this

---

*Consol. Rail Corp.*, 918 F. Supp. 123, 128 (S.D.N.Y. 1996), for the alleged proposition that the Counties must plead unjust enrichment with particularity under Rule 9(b) because the allegations in the complaint are "premised on fraud." Defs. Rep. at 17 n.17. Both cases are inapposite. The only New York decision cited by *Daly* dealt only with whether the plaintiffs in that case "pleaded *fraud* with the requisite particularity." *O'Brien v. Nat'l Prop. Analysts P'ship*, 936 F.2d 674, 676 (2d Cir. 1991) (emphasis added). There was no unjust enrichment claim there. In *Ramapo*, the analysis of 9(b)'s application to unjust enrichment was pure dicta, since the court upheld the unjust enrichment counterclaim.

The law in New York is that "Rule 9(b) is not applicable to . . . unjust enrichment claims; it only applies to the claims sounding in fraud." *Zucker v. Katz*, 708 F. Supp. 525, 530 (S.D.N.Y. 1989). This makes sense, because unjust enrichment does not even require proof of wrongdoing, let alone fraud. *Ultramar Energy Ltd. v. Chase Manhattan Bank N.A.*, 179 A.D.2d 592, 593 (1st Dep't 1992). In *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 2002 U.S. Dist. LEXIS 4636 at *29 (S.D.N.Y. Mar. 20, 2002), for example, plaintiff's fraud claim was insufficient under Rule 9(b), but the same factual allegations were sufficient to support unjust enrichment. Here, "dismissal of plaintiff's alternative theories at this stage would violate the liberal policy of Rule 8(e)(2) which allows plaintiffs wide latitude in framing their right to recover." *MCI Worldcom Communications, Inc. v LD Wholesale Inc.*, 2002 U.S. Dist. LEXIS 12426 at *3 (S.D.N.Y. July 8, 2002) (quoting *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991) (internal quotation marks omitted).

Court, that each and every one of the defendants in its case had breached the Rebate Agreements and the implied covenants of good faith and fair dealing contained therein.  These rulings in and of themselves provide a sufficient basis to sustain plaintiffs' allegations of Best Price violations against defendants Mylan, Barr, Duramed, Ivax, Warrick, Watson, Schein, Teva, Par, Dey, Ethex, Purepac, and Roxane.  In addition, after the filing of the Suffolk complaint, in April 2004, the Senate Finance Committee commenced an investigation into abuses in the calculation of Medicaid rebates, seeking information from the following additional companies:  Johnson & Johnson, Astrazeneca, Bristol-Myers Squibb, Novartis, Eli Lilly & co., Aventis, Boehringer Ingelheim, Forest, Sanofi-Sythelabo, and Eisai.

Given that the above indications of widespread, if not universal, abuse and violations of the Rebate Agreements by drug manufacturers, and given the very limited data that plaintiffs would need to confirm their allegations, plaintiffs respectfully request that the court defer ruling on their Best Price/Rebate violation claims, and direct defendants to respond to plaintiffs' request for the AMPs, Best Prices and URAs.  With these data in hand, plaintiffs can plead their Best Price/Rebate claims with particularity against the other defendants as well.[16]  If any Best Price claims are dismissed, moreover, it should be without prejudice.

---

[16] Certain defendants did produce discovery to plaintiffs for the first time in March 2006 pursuant to CMO 21 but these data sets did not include AMPs, Best Prices or URAs.

## CONCLUSION

For all the foregoing reasons, defendants' consolidated motion to dismiss should

be denied it its entirety.

Dated: June 2, 2006

Respectfully submitted,

KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue
New York, New York 10022
(212) 371-6600

By:_____/s/Joanne M. Cicala_____
Joanne M. Cicala (JC 5032)
James P. Carroll Jr. (JPC 8348)
Aaron D. Hovan (AH 3290)
David E. Kovel (DEK 4760)

*Attorneys for the City of New York and all captioned
New York Counties except Nassau.*

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
John R. Low-Beer (JL 3755)
Ari Biernoff (AB6357)
Assistant Corporation Counsels
100 Church Street
New York, New York 10007
(212) 788-1007

*Attorneys for the City of New York*

LORNA B. GOODMAN,
Nassau County Attorney
Peter J. Clines
Rachel S. Paster
Deputy County Attorneys

*Attorneys for Nassau County*

21

MOULTON & GANS, P.C.

_____/s/ Nancy Freeman Gans____
Nancy Freeman Gans, BBO No.184540
55 Cleveland Road
Wellesley, Massachusetts 02481
Telephone: 781-235-2246
Facsimile: 718-239-0353

MILBERG WEISS BERSHAD
  & SCHULMAN LLP
Melvyn I. Weiss
Michael M. Buchman
Ryan G. Kriger
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

*Special Counsel for the County of Nassau*