UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | |
| THIS DOCUMENT RELATES TO:<br><br>*The City of New York v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 04-CV-06054<br><br>*County of Albany v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0425<br><br>*County of Allegany v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0236<br><br>*County of Broome v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0456<br><br>*County of Cattaraugus v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0256<br><br>*County of Cayuga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0423<br><br>*County of Chautauqua v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-0214<br><br>*County of Chemung v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6744<br><br>*County of Chenango v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0354<br><br>*County of Columbia v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0867<br><br>*County of Cortland v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0881<br><br>*County of Dutchess v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 05-CV-6458<br><br>*County of Essex v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0878<br><br>*County of Fulton v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0519 | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris<br><br><br>**PLAINTIFFS' JOINT SURREPLY IN FURTHER OPPOSITION TO DEFENDANT THE MYLAN DEFENDANTS' INDIVIDUAL MOTION TO DISMISS** |

| | |
|---|---|
| *County of Genesee v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-00267 | |
| *County of Greene v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0474 | |
| *County of Herkimer v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-00415 | |
| *County of Jefferson v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0715 | |
| *County of Lewis v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0839 | |
| *County of Madison v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-00714 | |
| *County of Monroe v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6148 | |
| *County of Nassau v. Abbott Laboratories, Inc., et al.*<br>E.D.N.Y. Case No. 04-CV-05126 | |
| *County of Niagara v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06296 | |
| *County of Oneida v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0489 | |
| *County of Onondaga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0088 | |
| *County of Ontario v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6373 | |
| *County of Orleans v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6371 | |
| *County of Putnam v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 05-CV-04740 | |
| *County of Rensselaer v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-00422 | |
| *County of Rockland v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 03-CV-7055 | |
| *County of Schuyler v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6387 | |
| *County of Seneca v. Abbott Laboratories, Inc., et al.* | |

| | |
|---|---|
| W.D.N.Y. Case No. 05-CV-6370<br><br>*County of St. Lawrence v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0479<br><br>*County of Saratoga v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0478<br><br>*County of Steuben v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6223<br><br>*County of Suffolk v. Abbott Laboratories, Inc., et al.*<br>E.D.N.Y. Case No. 03-CV-12257<br><br>*County of Tompkins v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0397<br><br>*County of Ulster v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 06-CV-0123<br><br>*County of Warren v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0468<br><br>*County of Washington v. Abbott Laboratories, Inc., et al.*<br>N.D.N.Y. Case No. 05-CV-0408<br><br>*County of Wayne v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06138<br><br>*County of Westchester v. Abbott Laboratories, Inc., et al.*<br>S.D.N.Y. Case No. 03-CV-6178<br><br>*County of Wyoming v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-6379<br><br>*County of Yates v. Abbott Laboratories, Inc., et al.*<br>W.D.N.Y. Case No. 05-CV-06172 | |

Mylan's reply brief misinterprets this Court's rulings and ignores relevant portions of the pleadings. As detailed below and in Plaintiffs' Consolidated and Mylan-specific Oppositions[1], ("Con. Opp." and "Opp.", respectively) plaintiffs' allegations have more than satisfied the requirements of Fed. R. Civ. P. 9(b) for their claims based on Defendants' reporting of materially misleading wholesale price information.

## I. Mylan Entirely Mischaracterizes Plaintiffs' Allegations of AWP and FUL Fraud Generally.

Mylan's reply purports to give several reasons why, in Mylan's view, the CC fails 9(b). Each is wrong. *First*, Mylan states that "plaintiffs must particularize their allegations explaining the basis for the so-called 'market prices' and 'spread' for each drug and furnish and identify the evidence supporting their allegations." Mylan Reply at 1. Plaintiffs have done this. Plaintiffs have explained the origin of the conservative market prices they have utilized as a proxy for a true AWP (McKesson ServAll). And plaintiffs have explained, and the CC exhibits on their face make clear that the basis for the spread is simply the difference between this true AWP proxy and the false AWP Mylan caused to be reported. *See* Merck sur-reply at 3 which is incorporated herein. Next Mylan claims that plaintiffs merely "submitted a laundry list of over 500 NDCs with published AWPs". The characterization of plaintiffs' detailed pleadings, their Exhibts A, B and F as a "laundry list" is as incorrect as it is offensive. Exhibit B to the CC compares the AWP Mylan caused to be reported against actual generally available conservative market prices from wholesalers for Mylan drugs. It itemizes outrageous spreads for hundreds of Mylan drugs based on this comparison. This is not a "laundry list". It is clear evidence of intentional misreporting of pricing information to the government—a fraud on the public fisc-- by defendant. Exhibit F is

---

[1] The Mylan Defendants also join in Defendants Joint Reply Memorandum of Law and Sandoz Inc.'s Supplemental Reply Memorandum of Law Regarding Multiple Source Generic Drugs. Plaintiffs oppositions to these briefs apply to the Mylan defendants.

1

similarly devastating. It contains hundreds of specific drugs for which Mylan intentionally reported a false and inflated AWP that was grossly inflated over the WACs Mylan reported for those same drugs. Plaintiffs do not in any way concede the accuracy of these Mylan WACs but apart from that, Mylan's purposeful submission of AWPs that exceeded the generally accepted 20-25% mark up over WAC provides yet another clear example of Mylan's intentional fraud on Medicaid payors.

Notwithstanding the foregoing, Mylan has the temerity to state that "pleading the applicable reimbursement scheme and proffer[ing] allegations of [D]efendants' fraudulent conduct" is not enough, because plaintiffs do not provide sufficient "defendant specific allegations". See Mylan Reply at 1-2. As noted in the paragraph above, plaintiffs have submitted hundreds if not thousands of specific examples of fraudulent Mylan price reporting in the exhibits to their CC.

Mylan then contends that plaintiffs have not made specific allegations because they have produced no internal company documents or DOJ calculated spreads. The argument is disingenuous and of no effect. Mylan resisted all discovery from plaintiffs at the time the CC was filed and regardless, plaintiffs' pricing information regarding Mylan's fraud is sufficient for their claims.

In any event, plaintiffs have alleged that Mylan used the artificially inflated spreads described above to create market share and with resulting injury to plaintiffs. Plaintiffs have also provided evidence of government investigations of Mylan's pricing practices, by both the federal government and Massachusetts. See CC at ¶¶608-622. These pleadings, together with the allegations summarized above and in plaintiffs' Opp. are sufficient to sustain plaintiffs' claims.

## II. Mylan's Objections Regarding the CC's Multi-Source Drug Allegations are Misplaced

Mylan claims that the AWP is irrelevant to those drugs reimbursed on the basis of FUL. This argument is irrelevant as to whether plaintiffs' FUL pleadings satisfy Fed. R. Civ. P. 9(b). Plaintiffs have plead in detail the fraudulent scheme Mylan employed to market those multisource drugs reimbursed based on FULs and those reimbursed on the basis of AWP. See Opp. at 2, 3, 4;

2

*see also* Exhibit B. Plaintiffs have plead that Mylan's failure to report accurate wholesale pricing information (WACs, AWPs or otherwise) resulted in false and inflated FULs and plaintiffs have provided hundreds of specific examples of outrageous spreads between Mylan's reported price data and what true AWPs for Mylan drugs should have been. Exhibit B to CC.

Mylan also claims that its practice of creating spreads ranging from 400-600% of AWP for Albuterol 2mg tablets is irrelevant to Mylan's pricing practices for its other drugs. Wrong. Mylan's practice of reporting inflated Albuterol AWPs that have no connection whatever to Mylan's Albuterol WACs is consistent with Mylan's practices for each of the other Mylan drugs identified in the CC. But even without the Albuterol example, the spreads for the hundreds of other Mylan drugs listed in plaintiffs' exhibits speak for themselves. Ex. B to the CC, Ex. A to Sandoz's Opp, and Ex. A to the consolidated opposition demonstrate that hundreds of Mylan's multisource NDCs had spreads where the reimbursement price exceeded Mylan's own widely available market prices (proxies for what an accurate AWP should have been) by more than 100%, whether the widely available market price was compared to the FUL or the AWP. Moreover, Mylan's decided to continually raise the Albuterol 2mg AWP even when its AWP already exceeded widely-available acquisition costs by over 400%. This created additional spread to market the product and further increased plaintiffs' reimbursement costs. *See* Opp. at 5.[2]

### Conclusion

For the reasons set forth herein and in Plaintiffs' Opposition Memorandum, Mylan's Motion

---

[2] Mylan argues that plaintiffs' claims of being able to substantially amend their exhibits now means that "Plaintiffs admit they have had the information to have adequately plead their allegations, yet have failed to do so." Mylan illogically and incorrectly assumes that because plaintiffs can do something now, they were capable of doing that same thing prior to their filing of this complaint. Not so. After extensive discovery and investigation, Plaintiffs dataset today is far much more robust than the dataset available last summer. This is not a failure of pleading, it is the normal course of complex litigation, a fact which is illustrated by the numerous amendments granted the class plaintiffs and other in this MDL. See plaintiffs 4th amended complaint, filed on 3/2/2006, Docket # 2227. Regardless, any amendment by plaintiffs will merely confirm all that is alleged in the CC including that the McKesson Servall AWP proxies are (continued...)

3

to Dismiss should be denied in its entirety.

Dated: June 2, 2006.

          Respectfully submitted,

          **City of New York and all captioned Counties except Nassau, by**

          **KIRBY McINERNEY & SQUIRE, LLP**
          830 Third Avenue
          New York, New York 10022
          (212) 371-6600

          /s/ Joanne M. Cicala
          Joanne M. Cicala (JC 5032)
          James P. Carroll Jr. (JPC 8348)
          Aaron D. Hovan (AH 3290)
          David E. Kovel (DK 4760) (*pro hac vice* application pending)

          **For the City of New York**

          MICHAEL A. CARDOZO
          Corporation Counsel of the
          City of New York

          John R. Low-Beer (JL 3755)
          Richard J. Costa (RC 7278)
          Assistant Corporation Counsels
          100 Church Street, Room 3-162
          New York, New York  10007
          (212) 788-1007

          **LORNA B. GOODMAN**
          Peter J. Clines
          Rachel S. Paster
          Nassau County Attorney, by

          **MOULTON & GANS, P.C.**

          /s/ Nancy Freeman Gans
          Nancy Freeman Gans, BBO # 184540

---

extremely conservative when compared against a full examination of defendants' true wholesale prices.

55 Cleveland Road
Wellesley, MA 02481
Telephone: (781) 235-2246
Facsimile: (781) 239-0353

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**

Melvyn I. Weiss
Michael M. Buchman
Ryan G. Kriger
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Special Counsel for the
County of Nassau*