**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

MDL NO. 1456
Civil Action No. 01-12257-PBS

Hon. Patti B. Saris

Chief Magistrate Judge Marianne B. Bowler

**DEFENDANTS' RESPONSE TO THIRD PARTY OXFORD HEALTH PLANS LLC'S OBJECTIONS TO CHIEF MAGISTRATE JUDGE BOWLER'S ORDER GRANTING DEFENDANTS' MOTION TO COMPEL**

Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for defendants Johnson & Johnson, Centocor Inc., and Ortho Biotech Products L.P., on behalf of all defendants to the Fourth Amended Master Consolidated Class Action Complaint*

Defendants to the Amended Master Consolidated Class Action Complaint ("Defendants") respectfully submit this response to the objections of third party Oxford Health Plans LLC ("Oxford") to Chief Magistrate Judge Marianne B. Bowler's May 9, 2006 Order granting Defendants' motion to compel (the "May 9 Order") and requiring Oxford to produce documents and witnesses for deposition pursuant to subpoena.

## PRELIMINARY STATEMENT

For over two years, Oxford represented to defendants that its document production was imminent, yet continuously failed to make productions when the appointed hour arrived. This history of misrepresentations and delay reached its zenith earlier this year, when Oxford stopped responding even to its own attorneys. Oxford's counsel then invited defendants to file a motion to compel because they could not get a response from Oxford and hoped a motion seeking fees and costs would "get their attention." Defendants' motion, which included a claim for attorney fees and costs in view of Oxford's extraordinary conduct, was granted in full. But Oxford's intransigence continues in the form of the present objections, which are without merit and should be dismissed.

## FACTUAL BACKGROUND

### I. Oxford's History Of Refusing to Respond Even To Its Own Counsel In Relation To This Subpoena

The subpoena at issue was served on Oxford on April 19, 2004. *See* Declaration of Adeel Mangi ("Mangi Dec.") Ex. 1.[1] There followed a prolonged period of negotiation with Oxford's counsel. Over the course of the negotiations, defendants substantially narrowed the

---

[1] The Mangi declaration was filed on March 17, 2006 as docket number 2299 in support of Defendants' Motion To Compel Third Party Oxford Health Plans To Produce Documents And Witnesses For Deposition Pursuant To Subpoena And For Recovery Of Attorney Fees And Costs.

1

scope of the documents sought. (Mangi Dec. ¶ 5). Oxford then made one small production consisting of 476 pages of contracts and a CD of claims data. (Mangi Dec. ¶ 6). As to all other outstanding document demands, however, Oxford settled into a steady pattern of purposeful delay designed to avoid any production obligation. Oxford generally ignored communications from defendants for weeks. When finally forced to respond by follow up calls and emails from defendants, Oxford would agree to make productions but would ask for additional time. Weeks would pass, but nothing else was ever produced. Defendants threatened numerous motions to compel but withdrew them in each instance upon receiving assurances of production. Numerous examples of this conduct stretching over many months were detailed before Judge Bowler. (Mangi Dec. ¶ 8-14).

By February 10, 2006 defendants' patience was wearing thin, and defendants' wrote to Oxford stating (*see* Mangi Dec. Exhibit 7):

> It has now been almost 3 weeks since our call of the 24th. During that call, we had worked through all outstanding issues. My understanding was you would talk to your client and get production rolling and let us know of any outstanding issues. I emphasized that the one situation we could not accept was a repeat of the past pattern, where we would receive a production assurance and then nothing would happen for weeks. You assured me this would not happen again. But we are yet to see any documents or hear back from you.

Again Oxford responded apologizing for the delay saying "we will have data and the additional responses we discussed to you before the end of the month." *Id.* In response, defendants emphasized the important of prompt production (*id.*):

> We look forward to receiving the supplemental productions we have requested from Oxford by the end of the month and will schedule the deposition shortly thereafter. Please be advised that due to the summary judgment schedule that time frame is inflexible and we are relying on your representation that production will be completed by that time.

Again, defendants received nothing from Oxford.  Finally, on March 1, 2006 counsel for Oxford emailed defendants saying **"I have not received anything from Oxford. Do what you must.  I tried."**  (*See* Mangi Dec. Exhibit 9) (emphasis added).  Counsel for Oxford also asked to be provided a draft motion prior to this being filed, stating (Mangi Dec. Exhibit 10):

> I do not know to what extent they have attempted to [sic] proivide the information, data, etc. and maybe that will get their attention and at least let me know what, if anything, they have done.  Heck, they may be close to getting it all together as far as I know--I am just not getting responses back.

Defendants emphasized that we would be forced by Oxford's position to file a motion to compel seeking costs and fees.  Counsel for Oxford emphasized that he had made Oxford aware of this fact.  (*See* Mangi Dec. Exhibit 10).

## II.     Judge Bowler Granted Defendants' Motion to Compel Against Oxford

On May 9, 2006 Judge Bowler heard detailed argument on defendants' motion to compel against Oxford.  Defendants detailed the history of discussions regarding the subpoena and explained the bases for their claim for attorneys' fees and costs; Oxford put forward its claims of burden.  Judge Bowler rejected Oxford's arguments as too little too late and granted defendants' motion in its entirety.[2]

---

[2] Oxford has denied that Judge Bowler made any finding as to attorney fees.  In fact, attorney fees were an intrinsic part of defendants' motion, were the subject of oral argument at the hearing on May 9, 2006, and Judge Bowler granted the motion in full when she made her ruling from the bench.  The transcript of that May 9, 2006 hearing is not yet available.  Once it is, defendants will be filing a separate motion for enforcement of the attorney fees award before Judge Bowler.

3

1284245v2

### III. Oxford's Objections to Judge Bowler's May 9, 2006 Order

Oxford submits that its objections to the Order are "narrowly tailored to the two most burdensome categories of discovery" and represents that it will make production of other categories of documents and witnesses for deposition. *See* Oxford Memo at fn 1.[3]

The first category Oxford objects to consist of hospital and other facility based fee schedules. To facilitate production, defendants have voluntarily withdrawn that aspect of their production demand seeking these facility-based fee schedules and have limited their fee schedule request to those relating to physicians' offices. Oxford's only other objections are to those portions of Judge Bowler's order requiring that Oxford review its contract files to produce documents responsive to defendants' subpoena, which Oxford submits is unduly burdensome.[4]

---

[3] At other points in its memorandum, Oxford suggests it is seeking reversal of Judge Bowler order "in full." *See* "Conclusion" at page 7. This broader claim, however, is not the subject of argument by Oxford. Indeed, it is expressly contrary to Oxford's claim that it is only making "narrowly tailored" objections. Accordingly, defendants focus here on Oxford specifically enunciated objections.

[4] In footnote one to its objections, Oxford suggests that Judge Bowler placed no time frame on their production. In fact, this issue was addressed at oral argument. Oxford's proposed two month production period was discussed and defendants pointed out, *inter alia*, that a two month time frame was too long given the court's summary judgement schedule. Judge Bowler agreed and did not accept the delayed time frame proposed by Oxford.

## ARGUMENT

"Nondispositive" discovery rulings, such as those at issue here, may be set aside only where they are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); Local Magistrate Judge Rules 2(b); *see Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5 (1st Cir. 1999) (order imposing discovery sanctions considered nondispositive); 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3068.2, at 341-43 (2d ed. 1997) ("Disputes about the handling of discovery . . . should ordinarily be viewed as nondispositive.") Because magistrate judges are afforded broad discretion in determining discovery disputes, district courts routinely apply an abuse-of-discretion analysis when applying this standard of review. *See United States v. Gioia*, 853 F. Supp. 21, 25-26 (D. Mass. 1994) (holding that "a district judge would have to find the magistrate judge's [discovery] ruling to be an abuse of discretion in order to set aside the ruling on the basis that it is 'contrary to law'"); *Doe v. Marsh*, 899 F. Supp 933, 934 (N.D.N.Y. 1995) ("Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if the discretion is abused."); *see also*, *e.g.*, *Angelina v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999) (reviewing magistrate judge's discovery decision under an abuse of discretion standard); 12 *Federal Practice and Procedure* § 3069 ("many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis").

Chief Magistrate Judge Bowler's May 9 Order reflects the exercise of her sound discretion. It should be affirmed as it is neither "clearly erroneous" nor "contrary to law." Moreover, Defendants have substantially narrowed the scope of their discovery requests – both before and *after* the Order – in order to reduce any unnecessary burdens upon Oxford and to

5

facilitate production. Oxford's objections should be overruled and it should provide the discovery it has been ordered to produce.

### A. Oxford Cannot Avoid Its Discovery Obligations Simply Because It Is Not Based In Massachusetts

Oxford submits it should be excused from production because it has only 3500 insured residents of Massachusetts and because defendants' should instead seek all discovery from named class plaintiff Blue Cross Blue Shield of Massachusetts.

This argument is without merit. Oxford was subpoenaed over two years ago as a critical part of defendants' industry sample. It is a significant player in north east regional markets and was targeted for discovery along with numerous other health plans to ensure that industry knowledge regarding AWP could be presented to the Court. Oxford spent two years representing it was on the verge of making production and then failing to do so even while other health insurers around the country complied with subpoenas served upon them. Oxford should not now be rewarded for its conduct. Moreover, discovery from the named class representative – one health insurers in one market with a close interest in the outcome of this litigation – is no substitute for discovery showing industry knowledge, upon which the outcome of this case will depend.

### B. Defendants' Requests Are Not Unduly Burdensome

Defendants' narrowed demands to Oxford were very simple. Relevant to the present objections, they included:

> 1. To the extent not previously produced, all documents reflecting Oxford's understanding of whether health care providers earn a margin on drugs administered.
> 2. All documents concerning the relative reimbursement or costs for injected or infused drugs (and related treatments or therapies) in the hospital (in or outpatient setting) as compared to in physicians' offices, including Oxford's business and strategic

6

>plans addressing the optimal site of care for the administration of oncology drugs.
>
>See Mangi Dec. Ex. 3 (June 28, 2005 letter ¶ 1).

Oxford's obligation is a simple one: to make a reasonable and diligent search of all its files and produce responsive documents, which are centrally relevant to the core issues raised in this case. To the extent relevant document are in contract files, Oxford must locate and produce those documents. Dozens of other health insurers subpoenaed in this litigation have complied with identical demands; so too must Oxford.

**C.   Judge Bowler's Order is Consistent With Numerous Prior Orders Compelling Other Health Plans to Make Similar Productions**

Oxford's position is especially egregious given that this court has previously ordered numerous Health Plans to produce exactly the same data, documents and testimony sought here. For example, this Court has ordered Aetna, Cigna and Humana to produce deposition witnesses, ordered Health Net to produce documents and data in response to defendants' subpoena, compelled Blue Cross Blue Shield Of Massachusetts, Carefirst Blue Cross Blue Shield, Hawaii Medical Service Association, Excellus Blue Cross Blue Shield, Blue Cross Blue Shield Of Vermont and Mutual Of Omaha Insurance Company to produce documents and witnesses, and compelled Empire Blue Cross Blue Shield to produce a witness for deposition. **This Court has even ordered Oxford's parent United Health Care to produce documents and witnesses for deposition.** Some of those Health Plans were ordered to produce an even broader set of documents (as many of those demands encompassed self administered drugs as well) than those that Oxford is objecting to here. (Mangi Dec. ¶ 16). The documents sought are narrowly defined, directly relevant, and go to the core of plaintiffs' claims.

## CONCLUSION

Chief Magistrate Judge Bowler heard each of Oxford's arguments and ruled that it must produce documents and witnesses for deposition pursuant to defendants' subpoena. Her decision was consistent with numerous prior rulings and is not clearly erroneous, contrary to law, or an abuse of discretion. Oxford's objections should be overruled.

Dated:  June 6, 2006

>Respectfully submitted,
>
>/s/ Andrew D. Schau
>_____
>Andrew D. Schau (admitted *pro hac vice*)
>Erik Haas (admitted *pro hac vice*)
>Adeel A. Mangi (admitted *pro hac vice*)
>PATTERSON, BELKNAP, WEBB & TYLER LLP
>1133 Avenue of the Americas
>New York, NY  10036-6710
>(212) 336-2000
>
>*Attorneys for defendants Johnson & Johnson, Centocor Inc., and Ortho Biotech Products L.P., on behalf of all defendants to the Fourth Amended Master Consolidated Class Action Complaint*

## CERTIFICATE OF SERVICE

I certify that on June 6, 2006, a true and correct copy of the forgoing was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to Lexis/Nexis File & Serve for posting and notification to all parties. I further certify that on July 6, 2006, a copy was served on counsel for third party Oxford Health Plans LLC.

/s/ Adeel Mangi
Adeel Mangi