# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO THE CLASS ACTION | |

# DEFENDANT BAYER CORP.'S INDIVIDUAL
# MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION

To obtain class certification in a multi-defendant case, plaintiffs "must establish that there is an individual class representative with standing to sue *each defendant*." *In re Pharm. Indus. AWP Litig.*, 230 F.R.D. 61, 80 (D. Mass. Aug. 16, 2005) (emphasis added). After more than four years of litigation and voluminous discovery, plaintiffs cannot meet this burden as to defendant Bayer Corporation ("Bayer"). Specifically, plaintiffs' Motion for Class Certification establishes the following facts as undisputed:

- **Class One:** No Class One plaintiff purchased any Bayer drug. Accordingly, plaintiffs do not seek certification of any Class One subclass against Bayer.

- **Class Two:** No Class Two plaintiff purchased any Bayer drug. Plaintiffs likewise do not seek certification of any Class Two subclass against Bayer.

- **Class Three:** No Class Three plaintiff can establish that it purchased any Bayer drug. While plaintiffs seek certification of a Class Three subclass, they do so *solely* on the basis of the alleged purchase by Pipefitters Local 537 Trust Funds ("Pipefitters") of Immune Globulin, a multisource product manufactured by numerous companies, including Bayer.

As explained in greater detail below, the mere *possibility* that Pipefitters purchased a single Bayer product is not sufficient to confer standing upon Pipefitters to serve as a class representative as to Bayer. Accordingly, plaintiffs' Motion to certify any class against Bayer should be denied.

**ARGUMENT**

"It is well settled that prior to the certification of a class, and . . . before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *In re Pharm. Indus. AWP Litig.*, 230 F.R.D. at 79 (*quoting Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *see also Rivera v. Wyeth-Ayers Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107 (D.C. Cir. 2002).

Indeed, this Court has previously recognized that standing is "a threshold requirement[] for the maintenance of federal class actions." *In re Pharm. Indus. AWP Litig.*, 230 F.R.D. at 79 (internal quotation omitted); *see also In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 165 (D. Mass. 2004) (reciting the "general rule that 'standing is an inherent prerequisite to the class certification inquiry.'" (*quoting Rivera*)); *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (holding standing is a "threshold question in *every* federal case, determining the power of the court to entertain the suit." (emphasis added)).[1]

In order to establish Article III standing to assert a claim against a defendant, a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The factual predicates for standing cannot be "inferred argumentatively from the averments in the pleadings . . . but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotations omitted). Therefore, the party seeking to establish jurisdiction has the burden of alleging facts demonstrating that he or she has standing to invoke judicial resolution of the dispute. *Id.* at 231; *see also Guckenberger v. Boston University*, 957 F. Supp. 306, 320 (D. Mass. 1997) (Saris, J.) ("the burden of adducing facts necessary to support standing rests squarely with the party seeking to avail itself of federal jurisdiction").

---

[1] The Supreme Court has recognized a limited exception to this general requirement that jurisdiction be established as a threshold matter to allow courts to consider class certification issues first only where those issues are "logically antecedent" to any other issue. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (holding class certification issues logically antecedent to standing in the specific context of a settlement-only class asserting claims the parties never intended to litigate). As this Court held in *Eaton*, class certification issues are not "logically antecedent to Article III concerns" where "the standing question would exist whether the [named plaintiffs] filed [their] claim[s] alone or as part of a class." *In re Eaton Vance Corp.*, 220 F.R.D. at 166 (*quoting Rivera*, 283 F.3d at 319 n.6.). In this case, the Court would be compelled to dismiss Bayer for lack of jurisdiction had the named plaintiffs not sought class certification. Thus, the limited *Ortiz* exception does not apply, and the Court should only consider class certification issues after determining whether plaintiffs have Article III standing as against Bayer. *Id.* at 166.

In this case, plaintiffs have failed to carry their burden of establishing their standing to pursue any of their claims against Bayer. Consequently, no class may be certified against Bayer.

## I. PLAINTIFFS DO NOT SEEK, AND HAVE NO STANDING TO OBTAIN, CERTIFICATION OF A CLASS ONE SUBCLASS AS TO BAYER

Plaintiffs do not seek certification of any claims of the purported Class One plaintiffs against Bayer. (Plaintiffs' [Proposed] Consolidated Order Re: Motion for Class Certification Track 2 ("Proposed Order") p. 1-2 (omitting from Class One definition any claims arising from Medicare Part B co-payments for Bayer drugs)). Indeed, plaintiffs do not allege that any individual Class One plaintiff purchased any Bayer drug.[2] (Pls.' Memorandum of Law in Support of Motion to Certify Claims ("Pls.' Memo") p. 2-3 (listing manufacturers of drugs allegedly purchased by named class members and omitting Bayer); Declaration of Donald E. Haviland, Jr., Esq. In Support of Plaintiffs' Motion to Certify Claims ("Haviland Dec.") ¶¶ 2-37 (same); Proposed Order p. 2 (same)). Absent such an allegation, no individual plaintiff can demonstrate an injury traceable to conduct of Bayer. *See Allen*, 468 U.S. at 751. Thus, plaintiffs have failed to establish that there is a Class One representative with standing to sue Bayer and Class One may not be certified against it. *See In re Pharm. Indus. AWP Litig.*, 230 F.R.D. at 80.

---

[2] This includes plaintiffs' newest proposed class representative, Harold Bean, as well as proposed representatives Joyce and Robert Howe, Larry Young and the Estate of Patricia Young, Hunter Walters, Harold Carter, Roger Clark and the Estate of David Clark, and Susan Ruth Aaronson. (Haviland Dec.).

## II. PLAINTIFFS DO NOT SEEK, AND HAVE NO STANDING TO OBTAIN, CERTIFICATION OF A CLASS TWO SUBCLASS AS TO BAYER

Plaintiffs also do not seek certification of any claims of the purported Class Two plaintiffs against Bayer. (Proposed Order p. 3 (omitting from Class Two definition any claims arising from Medigap insurer reimbursements for Bayer drugs)). Again, plaintiffs do not allege that the sole individual Class Two plaintiff, Sheet Metal Workers National Health Fund ("SMW"), made any reimbursement for any Bayer product. (Pls.' Memo p. 3 (listing manufacturers of drugs for which SMW allegedly made reimbursements and omitting Bayer); Affidavit of Glenn Randle ("Randle Aff.") ¶¶ 6-7, Ex. 2 (same); Proposed Order p. 3 (omitting Bayer from class definition)). Having alleged no reimbursements for any Bayer product, SMW cannot claim any injury traceable to Bayer. *See Allen*, 468 U.S. at 751. Thus, SMW does not have standing to sue Bayer, and the Class Two plaintiffs it purports to represent may not be certified against it. *See In re Pharm. Indus. AWP Litig.*, 230 F.R.D. at 80.

## III. A CLASS THREE SUBCLASS CANNOT BE CERTIFIED AS TO BAYER

The only claims plaintiffs even seek to have certified against Bayer are those of the Massachusetts class of TPPs and consumers paying for physician-administered drugs ("PADs") based on AWP outside the Medicare context (Class Three). That request must be denied for each of two reasons: *first,* because the lone plaintiff that attempts to assert a claim against Bayer – Pipefitters – fails to establish that it purchased any Bayer product, and thus does not have standing to sue Bayer; and *second*, because any attempt to determine whether individual members of Class Three purchased the only Bayer product at issue will require an extensive individualized inquiry.

### A. Pipefitters Lacks Standing To Sue or to Serve as a Class Representative Against Bayer.

Pipefitters alleges that it purchased a single multi-source product, Immune Globulin, that it alleges was manufactured by Aventis, Baxter *and* Bayer.[3] (Declaration of Charles Hannaford ("Hannaford Dec.") Ex. 1). This allegation establishes nothing more than that Pipefitters made payments for some drug which ***might have been*** Gamimune, but might also have been another Immune Globulin product manufactured by another company. (Hannaford Dec.). It is insufficient to establish Pipefitters' standing to sue Bayer.

Pipefitters has offered no evidence that it made any payment for Gamimune, which is the trade name used by Bayer for its Immune Globulin product. Indeed, Pipefitters' own pleadings suggest that it made no such payment. Specifically, Appendix B to the Fourth Amended Master Consolidated Complaint ("FAMCC") – filed on March 10, 2006 – indicates that Pipefitters *did not* purchase Gamimune. (FAMCC App. B, p. 9). Moreover, because several companies manufacture other products that share the same J-Code as Bayer's product, Pipefitters does not – and cannot – allege that Bayer's product was the formulation administered to its members. Nor is such evidence likely to be uncovered. (Expert Report of Steven J. Young in Support of Track 2 Defendants' Opposition to Class Certification ("Young Rep.") ¶ 12) ("It is not possible to identify the manufacturer of a multi-source drug based on the information

---

[3] Plaintiffs have produced no evidence to support their allegation that these defendants manufacture Immune Globulin. Indeed, publicly available FDA records indicate that numerous entities, including certain defendants and non-defendants are currently licensed to manufacture Immune Globulin. *See* United States Food and Drug Administration, Center for Biologics Evaluation and Research, *Current Licensed Establishments and Products*, *available at* http://www.fda.gov/cber/ep/part3.htm (last visited June 8, 2006) (listing BioPort Corporation; Massachusetts Public Health Biologic Laboratories; Talecris Biotherapeutics, Inc.; Baxter Healthcare Corporation; Grifols Biologicals Inc.; Instituto Grifols, S.A.; Octaharma Pharmazeutika Produktionsges.m.b.H.; ZLB Behring AG; ZLB Behring LLC; and ZLB Behring GmbH.) However, these records also reveal that Bayer does not currently hold a license to manufacture Immune Globulin. *Id.*

available to the patient and TPP.").[4]  Accordingly, Pipefitters' alleged overpayments for Immune Globulin are not traceable to any conduct of Bayer and Pipefitters lacks standing to sue Bayer.

Nor does Pipefitters achieve standing to sue Bayer by virtue of the fact that it seeks to represent a class of individuals and entities allegedly injured by Bayer.  *See Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002).  The reason for this is clear – adopting such a position would allow plaintiffs to abuse the class action mechanism to bootstrap themselves into standing they otherwise lack.  *See Eaton*, 220 F.R.D. at 169 (cautioning against allowing a plaintiff to "sue a defendant against whom the plaintiff has no claim in a putative class action, on the theory that some member of the hypothetical class, if a class were certified, might have a claim.").  As the Supreme Court has cautioned, "[s]tanding cannot be acquired through the backdoor of a class action."  *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974); *In re Pharm. Indus. AWP Litig.*, 230 F.R.D. at 193 (*quoting Allee*).  Rather, in order to assert claims on behalf of Class Three, Pipefitters must first establish that it was personally injured by conduct traceable to Bayer.  *See Sierra Club v. Morton*, 405 U.S. 727, 734-35 (standing "requires that the party seeking review be himself among the injured.").  Pipefitters has not established any such injury; thus, it may not seek relief on behalf of others allegedly injured by Bayer.

Similarly, Pipefitters does not gain standing to sue Bayer simply because it might have standing to sue other, unrelated defendants.  As an initial matter, any such argument based on the "juridical linkage" doctrine is appropriately considered only pursuant to an analysis of adequacy and typicality under Rule 23, and is not relevant to whether a plaintiff has standing in

---

[4] Even if plaintiffs could establish that Pipefitters purchased Gamimune, they still cannot establish standing to sue Bayer because the evidence is clear that Pipefitters *did not* rely on any allegedly fraudulent AWP.  Instead, the testimony of Blue Cross Blue Shield of Massachusetts ("BCBSMA"), which administered the medical benefits claims of Pipefitters' members, establishes that AWP did not bear any relationship to the actual cost of any drug.  (Killion Tr. at 137-139.)

the first instance. *See Eaton*, 220 F.R.D. at 171 (noting that the First Circuit has not adopted the juridical linkage doctrine in any context). Moreover, even if the juridical linkage doctrine serves as an exception to the general standing requirement, it does so only in extremely narrow circumstances. *See Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002) (recognizing doctrine to allow claims against affiliates of defendant with respect to whom plaintiff had established a direct injury and standing). Those circumstances are not present in this case, and plaintiffs may not rely on the juridical linkage doctrine to avoid establishing standing as against Bayer. Indeed, this Court has twice rejected such attempts, and clearly instructed plaintiffs that they "must establish that there is an individual class representative with standing to sue *each defendant*." *In re Pharm. Indus. AWP Litig.*, 230 F.R.D. at 80 (emphasis added); *In re Pharm. Indus. AWP Litig.*, 263 F. Supp. 2d 172, 193 (D. Mass. 2003) ("the doctrine of juridical linkage is not indefinitely elastic so as to permit an industry-wide challenge on the basis of select companies."). It is now clear that plaintiffs cannot comply with this order with respect to Bayer.

In short, plaintiffs have not put forward a single named plaintiff with standing to sue Bayer, despite having had ample opportunity to do so. As such, this Court need not consider whether the requirements of Rule 23 have been met as to Bayer for Class Three. *Eaton*, 220 F.R.D. at 169.

### B. Individual Issues Predominate as to Immune Globulin, the Only Bayer Product Which Pipefitters Might Have Purchased.

Finally, even if the plaintiffs could establish that Pipefitters has standing to sue Bayer for purchases of Gamimune, this Court still should not certify Class Three as to Bayer for Gamimune because extensive individualized inquiry will be required to determine whether class

members purchased Gamimune or another entity's Immune Globulin product.  Plaintiffs themselves allege that at least three different manufacturers' versions of Immune Globulin share the same J-Code (Hannaford Dec. Ex. 1.), and they have produced no evidence to identify the source of the Immune Globulin paid for by Pipefitters.  Even if the plaintiffs could establish which company's Immune Globulin was paid for by Pipefitters, a transaction-by-transaction examination of the medical records of each Class Three member who allegedly paid for Immune Globulin will be required to determine if the payment was for Gamimune.  This inquiry will be highly individualized and time consuming, and, ultimately, may be fruitless.  (Young Rep. ¶ 12).  Accordingly, Class Three should not be certified as to Bayer.

## CONCLUSION

For the reasons set forth above, as well as those in the Joint Memorandum of Law in Support of the Track Two Defendants' Opposition to Plaintiffs' Motion for Class Certification, plaintiffs' Motion for Class Certification should be denied as to Bayer.

Date:   June 15, 2006

                                           Respectfully submitted,

                                           <u>/s/ Jaime L.M. Jones</u>
                                           Richard D. Raskin
                                           Michael Doss
                                           Jaime L.M. Jones
                                           Sidley Austin LLP
                                           One South Dearborn Street
                                           Chicago, Illinois 60603
                                           Telephone:  (312) 853-7000
                                           Facsimile:   (312) 853-7036

                                           *Attorneys for Defendant Bayer Corporation*

- 9 -

## **CERTIFICATE OF SERVICE**

      I, Jaime L.M. Jones, hereby certify that I am one of Bayer Corporation's attorneys, and that I caused a true and correct copy of BAYER CORP.'S INDIVIDUAL MEMORANDUM IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 15th day of June, 2006.

                                  /s/ Jaime L.M. Jones
                                  Jaime L.M. Jones