# EXHIBIT 10

Case 1:01-cv-12257-PBS   Document 2743-13   Filed 06/21/06   Page 2 of 9

# READERSHIP

## FALL 2005 MRI PROFILE: ADULTS

| DEMOGRAPHIC | (000) | % COMP |
|---|---|---|
| ADULTS | 40,162 | 100.0% |
| WOMEN | 31,767 | 79.1% |
| MEN | 8,396 | 20.9% |
| **AGE** | | |
| 18-34 | 8,174 | 20.4% |
| 25-54 | 24,444 | 60.9% |
| 35-49 | 14,296 | 35.6% |
| 18-49 | 22,471 | 56.0% |
| 50+ | 17,692 | 44.1% |
| MEDIAN AGE: | 47.7 | |
| **HOUSEHOLD INCOME** | | |
| $50,000+ | 22,727 | 56.6% |
| $60,000+ | 18,997 | 47.3% |
| $75,000+ | 14,483 | 36.1% |
| $100,000+ | 8,786 | 21.9% |
| MEDIAN INCOME: | $57,093 | |
| **MARITAL STATUS** | | |
| MARRIED | 26,183 | 65.2% |
| **HOME OWNERSHIP** | | |
| OWN HOME | 32,452 | 80.8% |
| MEDIAN HOME VALUE: | $184,829 | |
| **EDUCATION** | | |
| ATT/GRAD COLLEGE+ | 22,914 | 57.1% |
| GRAD COLLEGE+ | 10,521 | 26.2% |
| **CHILDREN** | | |
| ANY CHILD UNDER 18 | 17,384 | 43.3% |

READERS-PER-COPY: 5.23

Source: MRI Fall 2005



Better Homes and Gardens
Where the heart is.

# EXHIBIT 11

Case 1:01-cv-12257-PBS   Document 2743-13   Filed 06/21/06   Page 4 of 9

RESEARCH



# National Geographic
## Audience Profile
### 2005 Mendelsohn Affluent Survey
**Heads of Households**

|  | Audience (000) | Percent Comp. | Percent Coverage | Index (US=100) |
|---|---|---|---|---|
| **Total Adults** | 5,169 | 100.0% | 11.5% | 100 |
| Male | 2,751 | 53.2% | 12.1% | 106 |
| Female | 2418 | 46.8% | 10.8% | 94 |
| **Age** | | | | |
| 18-34 | 467 | 9.0% | 7.1% | 62 |
| 25-49 | 2,369 | 45.8% | 9.0% | 78 |
| 25-54 | 3,194 | 61.8% | 9.7% | 84 |
| 55+ | 1,948 | 37.7% | 16.8% | 147 |
| Median Age | 54 | | | |
| **Household Income** | | | | |
| $100,000+ | 3,987 | 77.1% | 12.1% | 105 |
| $125,000+ | 2,394 | 46.3% | 12.6% | 110 |
| $150,000+ | 1,599 | 30.9% | 13.1% | 114 |
| $200,000+ | 773 | 15.0% | 13.8% | 120 |
| Median HHI | $122,691 | | | |
| **Education** | | | | |
| Attended/Graduated College+ | 4,416 | 85.4% | 12.7% | 110 |
| Graduated College+ | 3,413 | 66.0% | 13.5% | 118 |
| Post Graduate Degree | 1,573 | 30.4% | 15.9% | 139 |
| **Occupation** | | | | |
| C-suite* | 693 | 13.4% | 12.2% | 106 |
| Professional | 2,882 | 55.8% | 11.9% | 103 |
| Professional/Managerial | 1,323 | 25.6% | 13.1% | 114 |
| **Total Asset Value** | | | | |
| $500,000+ | 4,480 | 86.7% | 12.0% | 105 |
| $1,000,000+ | 2,877 | 55.7% | 13.3% | 116 |
| $2,000,000+ | 1,123 | 21.7% | 14.4% | 125 |
| Median Asset Value | $1,129,095 | | | |
| **Household Composition** | | | | |
| Married | 4,641 | 89.8% | 11.5% | 100 |
| Own home | 5,007 | 96.9% | 11.5% | 100 |
| Own 2+ Residences | 1,497 | 29.0% | 12.3% | 107 |
| Median Value of Principal Residence | $358,972 | | | |
| Influentials ® | 1,465 | 28.4% | 17.5% | 153 |

*Owner, Partner, President, CEO, COO, other company officer

# EXHIBIT 12

# Analysis&Perspective

**NOTICE**

Under the proposed revisions to Federal Rule of Federal Procedure 23, class action notices must be written in "plain, easily understood language." But the plain language requirement calls for more than just simplified language, notice expert Katherine Kinsella says.

The author of the notice must take into consideration both the content and the format of a document so that it will be understandable by the widest possible audience. Certain kinds of language, and certain typefaces, layouts, and other composition tools, make notices much easier to read.

Notice authors should also avoid legalese and other wordy text, Kinsella says. In this article, she guides class action lawyers through the maze of developing effective plain language notice.

## The Plain Language Tool Kit for Class Action Notice

BY KATHERINE KINSELLA

The Judicial Conference of the United States has approved proposed revisions to Rule 23 of the Federal Rules of Civil Procedure prepared by the Conference's Committee on Rules of Practice and Procedure. If these revisions are approved by the Supreme Court and the Congress, which is likely given the unanimous approval of the Judicial Conference, they will become law. The proposed change to Rule 23(c)(2) would require that class notices be written in "plain, easily understood language."

### What Is Plain Language?

Although the draft Committee Notes focus entirely on language, plain language, or "plain English," as defined by practitioners is not just simplified language, which eliminates legalese, jargon and complex language. It is an approach to communicating with a reader based on who the reader is and how to deliver an understandable message to that individual.

Katherine Kinsella is president of Kinsella Communications Ltd., a Washington, D.C.-based legal advertising agency specializing in class action and bankruptcy notice programs. She can be reached at kkinsella@kinsella.com.

Plain language is the "marriage of content and format"[1] to create documents that can be understood by the widest possible audience.

"It is the use of language stripped of archaic forms and vocabulary, aided by design, layout and typography of the text.... [It] takes into account the empirical research of the past 30 years about how the mind works—how people read and assimilate information."[2]

Plain language is also an international movement, which seeks to make documents understandable to the general public. Plain language organizations are rewriting laws, regulations and other public documents in Canada, the United Kingdom, New Zealand, Australia, Sweden, South Africa and the United States. (See Web site information in the References section.)

In a plain language document, the effective organization of information, presentation, design and layout are as important as clear and understandable writing. This article explores the principles of plain language as it is broadly defined and advocates its use in notice documents. As a notice provider, specializing in media-based notice, I focus my comments on the development of summary notices for publication purposes. These comments, however, have obvious implications for structuring and writing long form notices.

---

[1] Gail Dykstra, *What is Plain Legal Language?*, http://www.plainlanguageneework.org/Legal/lawdefn.html.
[2] Cheryl Stephens, Address to the Wills and Estates Section, Canadian Bar Association (Nov. 27, 1990).

## Organizing and Formatting the Notice Document

There are four basic questions that need to be posed before drafting the notice:
- Who is the audience?
- What is the essential information a class member needs to know?
- What is the logical organization or flow of that information?
- How should the information be formatted for ease of access?

### Who is the audience?

The demographics—age, level of education and the like—of class members are readily ascertainable through consumer research data. These demographics are important in targeting media to reach the class. However, in writing a legal notice, they are important only to a point. In actuality, the education and comprehension levels of class members in consumer, product liability, mass tort and employment cases vary so widely that notice must be written in the simplest conversational English without legal jargon, complex language or unwieldy grammatical structures. When the majority of the class is composed of elderly or minimally educated individuals, comprehension as well as document format requires even more simplification.

### What is the essential information a class member needs to know?

Published notice, whether as a print ad or a television spot, is a summary of the most important information in the long form notice. It should not include all the details of the litigation or the settlement. Answering the following questions easily provides the necessary information:
- What is the litigation about?
- Am I affected by this litigation?
- What is the product and how was it used? (if applicable)
- What are the terms of the settlement? (if applicable)
- What are my rights?
- Do I need to take an action?
- How do I get more information?

Examples of information that can be eliminated from the summary notice are the formal case caption as a headline; the names and addresses of the plaintiff and defendant counsel, unless required for a specific communication function; *detailed* instructions on the procedures for opting-out or objecting; *the details* of the settlement and claims process; and determination of attorneys' fees.

### What is the logical organization or flow of that information?

Think in terms of a hierarchy of information. Start with the general and move to the more specific. A Q and A format is the most effective way to guide a reader through the notice information, particularly the long form notice. Anticipate a reader's questions and organize the information to answer those questions. The suggested structure that follows leads the class member through progressively more detailed information.
- Headline
- Introduction to what the litigation is about
- Class definition
- Sections—(legal rights, product description, settlement terms)
- Subsections under legal rights (opting-out, objecting)
- Contact information

### The Headline

- Use the headline to alert the reader that the notice may affect them. An advertisement has only a few seconds to get the attention of the reader and research shows headlines are read first.
- *Never use a formal case caption as a headline in any notice to consumers.* Potential class members are not perusing newspapers and magazines looking for legal notices that might affect them. The case caption is a reference for the judicial system.

For example, headlines such as "If you have a breast implant . . . If you have an asbestos disease . . . If you purchased or took prescription diet drugs . . ." target the consumer personally, directly and quickly.
- Headlines should be simple. When necessary, use an overly inclusive headline that encompasses a larger potential audience and let the class definition provide the parameters of class membership. For example:

Use this:

**If You Own a Home with Cedar Shingles
Please Read this Legal Notice – It May Affect Your Rights**

Don't use this:

**If You Own a Home as of June 5, 2002, with Real or Simulated Cedar Shingles Manufactured or Sold by Housetop Roofing and Supply Company Installed after January 1, 1989,
Please Read this Legal Notice – It May Affect Your Rights**

Unless a product is well known or carries the name of the manufacturer, most consumers will not necessarily know the brand. Putting information that is too specific in the headline can be an impediment to the reader. In the above example, consumers will know if they have cedar shingles, but not necessarily if they are real or simulated and who sold or manufactured them.

### Subheads

Use subheadings to provide additional information. But get the targeting information into the main headline. For example:

**If You Purchased or Used an Aerosol Inhaler
Please Read This Legal Notice, It May Affect Your Rights
Inhalers were Manufactured or Distributed by Schering-Plough Corp., Schering Corp, Warrick Pharmaceuticals Corp., Schering Laboratories, and related companies**

In this case, the notice headline provides the essential information to grab the attention of the reader, and the subheading provides additional qualifying information that would have been too complex and confusing if used in the headline.

### Introduction

The opening paragraphs of the summary notice should orient the reader to the litigation. Provide the name of the case and court, the fact that it has been certified and whether or not there is a settlement and generally what the case is about.

### Notice Text

Use subheads and descriptive headers to break up the document into manageable sections grouping related information. In product liability cases, graphics

such as a picture of the product or the product markings or label can help class members determine if they have the product. Following are examples of subheads:
- Am I a Member of the Class?
- What are My Legal Rights?
- What is Polybutylene Pipe?
- What is EIFS Synthetic Stucco?

**Contact Information**

The telephone number, Web site and post office box for requesting or accessing additional information should not be buried in the text. The prominence of the contact information should be secondary only to the headline.

*How should the information be formatted for ease of access?*

**Typography and Space**

**Type:** There are two kinds of type—serif and san serif. Serif has small strokes at the beginning and ending of each letter, which links one letter to another making the words and sentences easy to read. It is therefore recommended for text. San serif type is recommended for headlines and subheads.
An example of serif type is:
Imperial Roman.
An example of san serif type is:

Franklin Gothic Condensed.

**Font Size:** Font size should usually be between 10 and 12 point. However, there is variation among font types and adjustments should be made. What is 12 point in one font may be as small as 10 point in another font.

**Spacing:** White space around the notice and between sections is important for readability. The space between lines, or "leading," is also important. Notices in 6 point type with little leading is a disservice to class members. Once again, a summary notice is a summary, and readable type can be used when less detail is included. If readers are elderly, type size and leading should be increased.

**Paragraphs and Sentences**

Paragraphs should be short. Long blocks of copy discourage reading. Sentences also should be reasonable and not paragraph length, which is often the case in legal documents.

**Emphasizing Text**

Use bullets, underlining, and/or italics to emphasize key points. *Never use all uppercase type for sentences or paragraphs—it is the most difficult type to read.* Bolding, italics or initial caps are type treatments that are far more readable than all caps. For example:
Hard to Read:
IF YOU ARE ONE OF THE PERSONS DESCRIBED ABOVE, YOU MAY BE A MEMBER OF THE SETTLEMENT CLASS, AND YOU MAY BE ENTITLED TO PARTICIPATE IN AND/OR OBJECT TO THE FAIRNESS, REASONABLENESS AND ADEQUACY OF THE PROPOSED SETTLEMENT.
Easier to Read:
If You Are One Of The Persons Described Above, You May Be A Member Of The Settlement Class, And You May Be Entitled To Participate In And/Or Object To The Fairness, Reasonableness And Adequacy Of The Proposed Settlement.
**If you are one of the persons described above, you may be a member of the Settlement Class, and you may be entitled to participate in and/or object to the fairness, reasonableness and adequacy of the proposed settlement.**
*If you are one of the persons described above, you may be a member of the Settlement Class, and you may be entitled to participate in and/or object to the fairness, reasonableness and adequacy of the proposed settlement.*

## Simplifying the Language: Writing in Plain English

A widespread consensus exists among plain language experts regarding the basic guidelines that make documents accessible and understandable:

**Use short sentences**

Complex sentences especially in legal documents may be traditional but are hard to understand. Many legal sentences are paragraph length. Break the definition of complex material into digestible segments and use bullets and other formatting aids.

The following is a class definition that uses all too common legal jargon:

> "All persons in the United States who purchased or used an aerosol inhaler manufactured or distributed by Shering-Plough Corporation, Shering Corporation, Warrick Pharmaceuticals Corporation, or any of their subsidiaries or Affiliates from September 20, 1997 through July 2, 2002 and their Representatives, successors, assignees and Subrogees."

The following class definition is more readable:

> "All persons who purchased or used an aerosol inhaler from September 20, 1997, through July 2, 2002, manufactured or distributed by:
> - Shering-Plough Corporation,
> - Shering Corporation,
> - Warrick Pharmaceuticals Corporation, or
> - related representatives and companies.
>
> To identify the brands or companies that sold these inhalers, go to www.inhaler.com for information."

**Use positive language and reduce negatives, particularly double negatives**

Positive language communicates a clearer message than negative language. For example, the following two sentences communicate the same message, but the positive language sentence is easier to understand.
Negative:
"If you fail to timely file a claim, you will not participate in the settlement distribution."
Positive:
"You must file a claim by the deadline to participate in the settlement distribution."

**Use active voice—use passive voice sparingly**

The active voice eliminates ambiguity and it requires fewer words to express a thought. The subject of the sentence performs the action rather than being acted upon.
Active:
The court will hold a Fairness Hearing on December 12, 2002.

**Passive:**
A Fairness Hearing will be held by the court on December 12, 2002.

### Omit superfluous words.

Pare the sentences down to the essential thought. Replace wordy phrases with simple words. For example:

| Instead of | Use |
|---|---|
| in order to | to |
| subsequent to | after |
| with regard to | about |

### Omit legal jargon

Words such as *heretofore, pursuant to, null and void* and *herein* can be replaced with *before, following, void,* and *here* without losing their meaning in most circumstances.

### Limit defined terms

Sometimes a defined term can be helpful. For example, if there are multiple defendants, using the defined term *Defendants* after they have been initially identified is simpler and can save repetition and space. In many instances, defined terms originating in the settlement agreement are incorporated into the long form notice and are repeated in the summary notice, even when they are not needed. If the defined terms do not have a specific use in a particular document, do not use them.

### Eliminate unnecessary details

As discussed earlier, think in terms of what the reader needs to know at the summary notice level: What is the litigation about? Am I involved? What are my rights and how do I get complete information?

### Personalize the notice by using personal pronouns

Addressing the notice to the reader using "you," especially in the headline, communicates that the message is specifically for that reader. The Q & A format allows personalization with questions like "What are My Legal Rights?" and "Do I Need to Take Action?"

### Avoid nominalization—make nouns into verbs

Nominalization expresses a thought as a noun requiring a supporting verb. When possible, use a verb instead of a noun. For example:
"If you made an application" reads better as "if you applied."

### Eliminate redundant information

In a simple, well-written notice, give the information once. Avoid repeating the names of multiple defendants, the Web site, telephone number or other information.

### Use parallel constructions

Similar construction should be used in phrases, sentences and lists. Use the same tense for verbs in a sentence.

"The purpose of the notice is to: (a) *inform* class members of the litigation, (b) *outline* the terms of the settlement, (c) *explain* the legal rights of class members, and (d) *provide* telephone and Web site contact information to request the complete notice."

## Conclusion

The purpose of notice is to inform class members of pending litigation and their legal rights. In far too many cases, the summary and long form notices confuse rather than inform. Plain language documents provide clear and effective communication of complex and important information to individuals with basic education. Simple, clear writing and effective presentation ensures understanding, promotes informed decision-making and advances due process.

## References

**Books**
- William Strunk Jr. and E.B. White, *The Elements of Style* (Macmillan 3d Ed 1979).
- Richard C. Wydick, *Plain English for Lawyers* at 25 (Carolina Academic 4th Ed 1998).
- Office of Investor Education and Assistance, *A Plain English Handbook: How to Create Clear SEC Disclosure Documents* (U.S. Securities and Exchange Commission 1998).

**Web Sites**
- Clarity, http://www.adler.demon.co.uk/clarity.htm (last modified July 5, 2002).
- Northwest Territories Literacy Council, http://www.nwt.literacy.ca.
- Plain English Committee, State Bar of Michigan, http://www.plainlanguagenetwork.org/Organizations/Michigan.html.
- Plain Language Action Network, *Writing User Friendly Documents*, http://www.plainlanguage.gov/pen.html.
- http://www.plainlanguage.network.org.
  Gail Dykstra, *What is Plain Legal Language?*
  Cheryl Stevens, *A Crash Course in Plain Language.*
  Cheryl Stevens, *What is Really Wrong with Legal Language?*
- PlainTrain, *Introducing Plain Language*, http://www.web.net/~plain/PlainTrain.
- Carol Ann Wilson, *Be on the Cutting Edge: Learn These Seven Plain Language Principles Now*, http://www.wwlia.org/plainlan.html.

## Acknowledgement

The topic and title of this article was graciously suggested by John Isbister.