UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Nevada v. Abbott Labs., Inc. et al.*,<br>      Case No. CV-2-00260 (Nevada I),<br><br>*State of Nevada v. American Home Products, et al.*,<br>      CA NO. 02-CV-12086-PBS (Nevada II), and<br><br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>      Cause No. CV-02-09-H-DWM (D. Mont.) | |

**MONTANA'S AND NEVADA'S MOTION FOR PROTECTIVE ORDER RELATING TO DEFENDANTS' SECOND SUBPOENA TO BLUE CROSS BLUE SHIELD OF MONTANA AND DEPOSITION NOTICE TO MMCAP**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and CMO No. 23, plaintiff Montana moves for a protective order precluding defendants from seeking additional non-party discovery pursuant to the Fed. R. Civ. P. 45 subpoena to Blue Cross Blue Shield of Montana ("BCBS MT") served on May 19, 2006;[1] and Montana and Nevada move for a protective order precluding defendants from seeking additional discovery pursuant to the deposition notice to the Minnesota Multi-State Contracting Alliance ("MMCAP") served on June 15, 2006.

The subpoena and the deposition notice, respectively served nearly two and three months after the formal close of fact discovery, are untimely. Fact discovery in the Montana and Nevada cases formally ended on March 31, 2006. CMO No. 23. No additional fact discovery has been

---

[1] Defendants did not serve Montana with a copy of the subpoena until June 2, 2006.

- 1 -

initiated by any party.  Discrete fact discovery from the states continued only pursuant to a March 29, 2006 order resolving defendants' second motion to compel.  The non-party subpoena and deposition notice before the Court on this motion neither fall within the Court's order nor arise out of information developed after discovery closed.  To the contrary, defendants were aware of both sources of non-party discovery in advance of the discovery cut-off the Court, but did not pursue the information months after discovery closed.  To compound the untimeliness, defendants waited two weeks after personal service of the BCBS MT subpoena on BCBS MT to serve an incomplete notice on plaintiff Montana *and* waited until six days before the scheduled date for the MMCAP deposition to advise the States by telephone that a deposition would take place.

The BCBS MT subpoena is also objectionable as duplicative.  Defendants have previously subpoenaed the same entity for identical and similar information and have taken two depositions of BCBS MT personnel on these topics.[2]  The MMCAP deposition notice[3] is also objectionable as overly broad.

At some point, discovery in this case must end.  That point, subject to the limited exception identified above, was March 2006.  Defendants can offer no justification for their delay in serving the non-party discovery before the Court or for their additional delay in notifying the States of their intention to pursue such discovery.  Allowing the defendants to circumvent the case schedule by proceeding would be an abuse of the case schedule and the rules of discovery.  The discovery is untimely and should not be permitted to go forward.  The States

---

[2] BCBS MT has informed Montana counsel that it objects to the subpoena on these and other grounds. Declaration of Jeniphr Breckenridge in Support of Montana's and Nevada's Motion for Protective Order Relating to Defendants' Second Subpoena to Blue Cross Blue Shield of Montana and Deposition Notice to MMCAP ("Breckenridge Decl."), at ¶ 7.

[3] It is not clear whether defendants seek testimony and documents from MMCAP or testimony only.

seek the Court's protection and request that the Court enter an order that the discovery sought by defendants not be had.

The States and the defendants have met and conferred in good faith on these matters and remain at an impasse. Breckenridge Decl. at ¶ 11.

## I.   BACKGROUND AND ARGUMENT

### A.   Defendants Have Served Untimely Non-Party Discovery With Improper Notice to the States

The fact discovery in the State cases ended on March 31, 2006 pursuant to CMO No. 23. Yet, in the past four weeks, defendants have issued a non-party subpoena and a non-party deposition notice seeking testimony and documents that they could have (and should have) pursued during the normal course of discovery, if at all. Fact discovery from non-parties is subject to the same rules limiting discovery as any other type of discovery. In addition, non-party fact discovery is as time-consuming and expensive for parties as any other type of discovery. It is unfair for defendants to wait until months after the close of discovery and after the States' initial expert reports have been filed to inject new evidence into the case. After the deadline, discovery is particularly unreasonable and burdensome where, as here, the parties' attention and the case schedule have turned to expert reports and dispositive motions.

#### 1.   The BCBS MT subpoena

Defendants served the BCBS MT subpoena on BCBS MT in person on May 19, 2006 for document production and a deposition date of June 9, 2006. Defendants did not serve Montana with a copy of the subpoena until June 2, 2006, just five working days before the scheduled deposition.[4] Breckenridge Decl. at ¶¶ 4-5. Montana lawyers contacted BCBS MT counsel and learned that negotiations regarding the deposition and documents had been underway for two

---

[4] The deposition did not take place, apparently because BCBS MT and Montana objections had not been resolved.

weeks, over BCBS MT's objections. Breckenridge Decl. at ¶ 7. The BCBS MT objections included that fact that BCBS MT had already responded to a subpoena in the case covering similar information two years before. *Id.* Montana later realized the subpoena served by defendants was incomplete, missing *a critical page describing documents sought*. The State finally obtained a complete copy of the subpoena on June 12, 2006. Breckenridge Decl. at ¶ 5.

In addition to being untimely, the BCBS MT subpoena is also objectionable because it is duplicative. Defendants issued their first subpoena to BCBS MT on April 28, 2004 in the *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL 1456 (D. Mass.) ("BCBS MT Subpoena I"). A copy of that subpoena, with a cover letter from the same law firm that issued the second subpoena, is attached to the Breckenridge Decl. as Ex. B. BCBS MT Subpoena I was extremely broad and explicitly covered Medicaid and other state documents. *Id.* By example, BCBS MT Subpoena I sought all documents related to "any definition or meaning of AWP" (Documents to Be Produced No. 2 ("DP 2"); the setting of reimbursement or payment rates for any subject drug (DCP 3-4); the amounts BCBS MT reimburses providers (DP 7); and communications with state and federal entities (CP 13, 23 – 26). The second BCBS MT subpoena ("BCBS MT Subpoena II") requests duplicative information concerning reimbursements, reimbursement changes and claims data for both retail and physician-administered drugs. *See* Breckenridge Decl., Ex. A at 1 to 4.

BCBS MT produced two witnesses for deposition in response to BCBS MT Subpoena I. The first witness testified about reimbursements for physician-administered drugs; the second witness testified more generally about reimbursements and relationships with pharmacies and others. Both witnesses testified about AWPs. Breckenridge Decl. at ¶ 7.

Because the BCBS MT subpoena is both untimely and duplicative, the requested discovery should not be permitted to go forward.

### 2. The MMCAP deposition notice

The MMCAP subpoena was also served months after the discovery cut-off. Defense lawyers contacted the States via telephone regarding the deposition of Rose Svitak of MMCAP on Thursday, June 15. Breckenridge Decl. at ¶ 12. Defense counsel advised Montana that, among other topics, defendants would seek interpretation of data produced by MMCAP on a CD before the discovery cut off. Breckenridge Decl. at ¶ 16. At the time of this conversation, no deposition notice had been served. The lawyer advised the States that the deposition was scheduled to take place in Minneapolis, Minnesota on June 23, 2006 – just six working days from the telephone notice. The States immediately objected that fact discovery in the case had closed and that the notice was untimely pursuant to CMO No. 10 and requested a formal meet and confer on their objections. A hardcopy of the notice was received by the States on Friday, June 16, 2006.

MMCAP's potential relevance to these lawsuits is not a new development. MMCAP is a group purchasing organization operated and managed by the Materials Management Division of the State of Minnesota's Department of Administration for government-run health care facilities. MMCAP pools the purchasing power of its members to receive the best prices available for the products and services for which it contracts. www.mmcap.org. MMCAP has been involved in pooling arrangements for state prescription drug purchases for years. Defendants originally subpoenaed MMCAP in these cases on January 31, 2006. Defendants could have followed up on this subpoena at any point during the subpoena date and the March 31, 2006 close of discovery. Discovery requests cannot remain open *ad infinitum* and defendants cannot cast the court ordered schedule to suit their convenience

An additional issue is the breadth of the MMCAP deposition notice. The subpoena and deposition notice are extremely broad. The deposition notice covers 13 areas of inquiry – more than the number included in defendants' first notice of 30(b)(6) depositions to the States. As just one example of the overbreadth and burden imposed by the subpoena on MMCAP, the subpoena seeks "[a]ll documents relating to the pricing of subject drugs" without limitation to any particular state. Breckenridge Decl., Ex. A at 8.

The MMCAP deposition notice is untimely both because it was issued on June 15, 2006, nearly three months after the close of discovery and because it was served only six days before the deposition date.[5]

**B.     Fed. R. Civ. P. 26 Authorizes the Court to Enter an Order that Discovery Not Be Had**

Fed. R. Civ. P. 26 provides discovery ground rules and at the same time "confers broad powers on the court to regulate or prevent discovery." Comments to Rule 26(c ) (1970 Amendment). The Court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . . including an order directing that the discovery not be had." Fed. R. Civ. P. 26(c)(1).

Defendants have challenged the States' standing to seek protection from the non-party discovery before the Court. This position reflects a basic misunderstanding of non-party discovery, its role in lawsuits and the Court's powers to moderate all types of discovery. The States *do* have standing and that standing confers the States with the right to seek the protection it requests from the Court here.

---

[5] CMO No. 10 provides that "a party shall provide a 'three week deposition notice' under which such party provides at least 21 days notice for a proposed deposition." CMO No. 10 at ¶ 10. CMO No. 10 ¶ 7 also provides that any motion for protective order shall be filed "at least 5 working days before the scheduled deposition." Because the states were not served with the deposition notice until 5 working days before the scheduled notice and the parties had to confer, the States could not meet the schedule here but have filed this motion as soon as possible.

The majority of jurisdictions recognize that non-party discovery pursuant to Fed. R. Civ. P. 45 "[is ] encompassed within the definition of 'discovery,' as enunciated in Rule 26(a)(5) and, therefore, [is] subject to the same time constraints that apply to all of the other methods of formal discovery." *Marvin Lumber & Cedar Co. v. PPG Indus.*, 177 F.R.D. 443 (D. Minn. 1997) (granting Plaintiffs' motion for protective order prohibiting defendants' efforts to continue Rule 45 discovery after deadline) (citations omitted); *Alper v. United States*, 190 F.R.D. 281, 283-84 (D. Mass. 2000) (explicitly adopting the *Marvin Lumber* interpretation of Rule 45 discovery and granting plaintiffs' motion with respect to Rule 45 discovery); *see also Nicholas v. Wyndham Int'l, Inc.*, 2003 U.S. Dist. Lexis 24085 (D.V.I. May 24, 2002).

A party may seek the Court's protection from any unreasonable discovery burden – including schedule abuse. A party may not obtain an order protecting the rights of another party or witness if that party or witness does not claim the protection for himself, but " a party may seek an order if it believes its own interest is jeopardized by discovery sought from a third person." WRIGHT, MILLER, MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2035 (1994). Here, the States' interest in a timely end to discovery is jeopardized. The Court does not relinquish its right to control discovery or the case schedule simply because the discovery is sought from a non-party and the entity seeking protection is a party.

Other courts recognize that the burdens of discovery on a case are not limited to discovery directly between the parties and have taken measures to protect parties from the burden where necessary as part of good "case management." *Marvin Lumber*, 177 F.R.D. at 445.

> The obligation of a party to monitor an opponent's discovery, as allowed by Rule 45 Subpoenas, is no less burdensome or expensive than that demanded by the other methods of formal

> discovery and, in fact, can be considerably more burdensome and expense that those [other forms]. [*Id*. at 445.]

The *Marvin Lumber* court expressly considered the burden on a party of allowing the opposing party to continue with non-party discovery after the discovery deadline: "to allow a party to continue with formal discovery . . . whether in the guise of Rule 45 or any of the other discovery methods recognized by Rule 26(a)(5), after the discovery deadline unnecessarily lengthens the discovery process, and diverts the parties attention from the post discovery aspects of preparing a case for trial, to continued involvement in the discovery, and in the nondispositive Motion process. We can find no plausible reason to exempt Rule 45 discovery from the time constraints that are applicable to all of the other discovery methods recognized by the Federal Rules of Civil Procedure." *Id*.; s*ee also Alper*, 190 F.R.D. at 283 (holding "'that a party should be allowed to employ a subpoena after a discovery deadline to obtain materials from third parties that could have been produced during discovery'").

For these reasons, "[t]here can be no question as to the standing of the Plaintiffs to seek protection from discovery gone awry." *Marvin* Lumber, 177 F.R.D. at 445 n.2. These principles are particularly applicable where, as here, the defendants have had ample opportunity to obtain the material during the discovery period set by the Court but did not avail themselves of the opportunity.

## II.  CONCLUSION

For the foregoing reasons, the States respectfully request that this motion for protective order be granted and that the Court order that the delinquent discovery sought by defendants not be had.

- 9 -

By /s/ Steve W. Berman                               DATED:  June 21, 2006

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

COUNSEL FOR PLAINTIFFS
STATE OF MONTANA AND
STATE OF NEVADA

Brian Sandoval
Attorney General of the State of Nevada
L. Timothy Terry
Assistant Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

Mike McGrath
Attorney General of Montana
Ali Bovingdon
Assistant Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  56920-1402
(406) 444-2026

COUNSEL FOR PLAINTIFF
STATE OF MONTANA
George J. Chanos
Attorney General of the State of Nevada
L. Timothy Terry
Assistant Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

- 10 -

## CERTIFICATE OF SERVICE

   I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **MONTANA'S AND NEVADA'S MOTION FOR PROTECTIVE ORDER RELATING TO DEFENDANTS' SECOND SUBPOENA TO BLUE CROSS BLUE SHIELD OF MONTANA AND DEPOSITION NOTICE TO MMCAP** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on June 21, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

              By   **/s/ Steve W. Berman**
                Steve W. Berman
                **HAGENS BERMAN SOBOL SHAPIRO LLP**
                1301 Fifth Avenue, Suite 2900
                Seattle, WA  98101
                (206) 623-7292