# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

## CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE THE FORM OF CLASS NOTICE AND THE MANNER OF NOTICE AND REPORT ON STATUS OF INDIVIDUAL NOTICE TO PART B CLASS MEMBERS

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...............................................................................................................2

    A. The Form of Notice Is Consistent with Examples Approved by the Judiciary .......2

    B. Multiple Notices Are Not Required........................................................................4

    C. Detailed Defense Explanations Are Not Appropriate.............................................4

    D. The Status of Mailing of Individual Notices and Scheduling Implications.............5

## I.      INTRODUCTION

Class Plaintiffs propose the publication of a summary notice and the mailing of individual notice to Class 1 and Class 2.[1]  The form of the notice has been constructed by following examples in the Manual for Complex Litigation and those promulgated by the Federal Judicial Center, and after consultation with a nationally known expert in the field of designing notice and notice programs.

Having vigorously resisted class certification, defendants now feign an interest in designing a notice program that they claim is in the best interests of the class.  One court has likened a defendants' concern for the rights of class members similar to permitting the fox to take charge of the chicken house.[2]  Certain defendants now claim that a summary published notice is inappropriate, and that the published notice should be lengthy, thus potentially doubling the publication cost (from roughly $1 million to perhaps $2 million).  Defendants claim that five separate notices should be sent (adding another $5 to $10 million in just publication costs).  Additional costs only serve to eventually reduce the amount available to the class.

Defendants also claim that their form of notice is superior – yet they have not utilized the services of a notice expert in designing it.  Plaintiffs have done so.

Finally, defendants claim that each defendant should explain in the notice at some length their defenses to the litigation.  Defendants' assertions would require a response from Plaintiffs in order to have a balanced notice, and the resulting notice would be complex and too long.

Accordingly Plaintiffs request that the Court approve the notice and notice plan.

---

[1] To eliminate confusion Plaintiffs do not propose to notice Class 3 at this time, an idea the Court raised at the last hearing.

[2] *Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir. 1981).

- 1 -

## II.    ARGUMENT

### A.    The Form of Notice Is Consistent with Examples Approved by the Judiciary

A summary notice alerts class members to the litigation and encourages them to obtain

the full notice from readily available sources.  Plaintiffs' proposed single-page summary notice

accomplishes these purposes better than defendants' two-page notice.  (Plaintiffs' summary

proposals are Exhibits 1 and 2 attached to the Declaration of Steve W. Berman In Support of

Plaintiffs' Motion to Approve the Form of Class Notice and the Manner of Notice ("Berman

Decl.")).  Indeed, Plaintiffs' summary notice closely conforms to the model summary notices

created by the Federal Judiciary Center ("FJC") for use by the federal courts and recommended

by the *Manual For Complex Litigation, Fourth* (Federal Judiciary Center 2004) ("*MCL4th*" or

"*Manual*").  The *Manual* contains a model class-certification order.  *MCL4th* § 40.41 at 763-64.

That order addresses class notices and endorses the "style and format" of "the illustrative

summary notices posted on the 'Class Action Notices' page of the Federal Judicial Center's Web

site (www.fjc.gov)."  Ex. 2 attached hereto.  That FJC web page contains three sample English-

language summary notices, which are attached hereto as Ex. 1.

Plaintiffs' proposed summary notice adheres to the three FJC model summary notices'

style and format.  Berman Decl., Exs. 1 and 2.  Plaintiffs' and the model summary notices all fit

on ***a single page*** and are designed to (i) capture class members' attention, (ii) briefly summarize

their options and (iii) most importantly, refer them to readily available sources of fuller

information.[3]  At the top of each of these notices is a bold-faced heading that briefly describes

who should read the notice and why they should do so.  Compare Ex. 1 attached hereto with

---

[3] Even so, the FJC's model notices are longer than the present proposed notice because they provide notification of the class action ***and*** a proposed settlement, whereas here the notice only informs of the pendency of the class action.

Berman Decl. Exs. 1 and 2.  Immediately below is a short description of the lawsuit and its potential impact on the reader.  Next is a series of brief headings followed by short paragraphs that succinctly describe the nature of the lawsuit, whom it affects and what they should do.  The notices uniformly highlight that class members should obtain the full "detailed notice" about the litigation and class members' rights.

Notably, the *FJC* summary notices, like the Plaintiffs' proposed notice, are designed for quick readability and easy reader comprehension.  *See The Federal Judicial Center's "Illustrative" Forms of Class Action Notices*, Overview of Methodology, at 1-2 (Ex. 1 attached hereto).  They purposefully avoid non-essential detail that would lengthen and complicate a summary notice – heightening the risk class members would overlook it.

And as with the FJC summary notices, Plaintiffs' proposed summary notice serves as a signpost to the full notice, not as an alternative notice.  The summary notice directs class members to the full notice readily accessible via a toll-free telephone number, a web site or a mailing address.  It is there that the present class members can obtain full and detailed information about this litigation.  The summary notice should not duplicate that function.

Plaintiffs' proposed summary notice also accomplishes its goal at a lower cost to the class than the defendants' notice.  Defendants' detailed, two-page notice would ***double*** the cost to the class.  Plaintiffs' one-page summary notice hence will save the class one-half the publication costs or – roughly $1 million.[4]  And thus, more effective in substantive and cost, Plaintiffs' summary notice is superior to defendants'.

---

[4] If there are five separate publications at the length proposed by defendants, costs could go up from $1 million to $10 million.

**B.      Multiple Notices Are Not Required**

Defendants similarly argue that the Court should order publication of four separate summary notices – one for each defendant.  But again, Plaintiffs' proposed comprehensive summary notice will more effectively notify the class of this litigation and at a lower cost.  Class members will more likely read and understand a single summary notice that identifies all of the Covered Drugs rather than four piecemeal notices that, although identical in language and appearance, contain crucial differences.  With Plaintiffs' proposal, the single comprehensive summary notice notifies all class members of their claims.  Under defendants' proposal, by contrast, class members might read a summary notice concerning one defendant's Covered Drugs but overlook ostensibly duplicate notices regarding other Covered Drugs.  Defendants' piecemeal approach would needlessly confuse class members, causing some never to learn they have claims at issue in this litigation.

And again, the class will pay much more for the ineffectiveness of defendants' approach – roughly $4-$8 million more in just publication costs or ***many times*** the cost of Plaintiffs' comprehensive notice.  Plainly, the better and cost-effective approach is Plaintiffs' comprehensive, single-page summary notice.

**C.      Detailed Defense Explanations Are Not Appropriate**

The long form notice contains a general description of the defendants' position.  *See* Ex. 3 at p. 5.  Several defendants wish to add much more.  For example, BMS wants to add language that it did not send AWPs to the publishers.  To balance this plaintiffs would have to explain that BMS sent to publishers list prices from which AWPs were created and that BMS knew its list prices could become AWPs.  BMS did so also knowing that its list prices were phony in that they understated the true price due to secret rebates, discounts and other price

- 4 -

reductions.  If we respond to each and every of defendant's individual incantations, the notice would be unwieldy.

**D.      The Status of Mailing of Individual Notices and Scheduling Implications**

Pursuant to the Court's directive Plaintiffs have served a subpoena on CMS seeking the names of Part B class representation.

CMS has responded that they will provide such names and have indicated that it may take three months to do so.  Berman Decl. at ¶ 7.  This lengthy process maybe affected by the following.  The pre-1998 database is archived.  Plaintiffs have asked the government to check to see if the 1998 forward information could be produced in less than three months.  Many of the pre-1998 class members maybe deceased and it could be that the court will wish to go forward with mailed notice just to the post-1998 class members.

Assuming a three month mailing program and that some mailing can start before September 21, 2006 (three months), and allowing for a 45 day opt out from September 21, 2006, the trial date set for the BMS trial, or November 6, 2006, could become the trial date for the AstraZeneca case.  Publication could start in August.

DATED:  June 21, 2006

By   **/s/ Steve W. Berman**
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

- 5 -

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  114291 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on June 21, 2006, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO APPROVE THE FORM OF CLASS NOTICE AND THE MANNER OF NOTICE** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

 **/s/ Steve W. Berman**
Steve W. Berman

# EXHIBIT 1

**The Federal Judicial Center's "Illustrative" Forms of Class Action Notices**

At the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure, the Federal Judicial Center developed illustrative notices of proposed class action certification and settlement. The securities and products liability notices deal with combined notices of class certification and settlement. The employment discrimination notices deal with a class certified for litigation and trial, not settlement. These notices are designed to illustrate how attorneys and judges might comply with a change to Federal Rule of Civil Procedure 23(c)(2)(B). The change, effective December 1, 2003, says that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect potential class members' rights.

For each of three hypothetical cases (one dealing with securities law claims, one with products liability claims, and one with employment discrimination claims), we present below a long form ("Full Notice") and a one-page form ("Publication Notice"). For the securities and products liability class actions, we also include a summary statement to use on a mailing envelope ("Language for Envelope"). For the securities notices, in January 2005 we replaced the original notices with a modified notice that responds more directly to the requirements of the Private Securities Litigation Reform Act (PSLRA). The revised securities notices presented below include a new cover letter in a format designed to disclose the required PSLRA information in one short document. The product liability and employment notices have not been changed. Those forms follow:

Securities class action certification and settlement: full notice
Securities class action certification and settlement: publication notice
Securities class action certification and settlement: publication notice (Spanish-language version)
Securities class action: language for envelope
Securities class action: PSLRA cover letter

Products liability class action certification and settlement: full notice
Products liability class action certification and settlement: full notice (Spanish-language version)
Products liability class action certification and settlement: publication notice

- for construction workers
- for homeowners

Products liability class action certification and settlement: language for envelope

- for construction workers
- for homeowners

Employment discrimination class action certification: full notice
Employment discrimination class action certification: publication notice

**Overview of methodology**
We began this project by studying empirical research and commentary on the plain language drafting of legal documents. We then tested several notices from recently closed class actions by presenting them to nonlawyers, asking them to point out any unclear terms, and testing their comprehension of various

subjects. Through this process, we identified areas where reader comprehension was low. We found, for example, that nonlawyers were often confused at the outset by use of the terms "class" and "class action." Combining information from the pilot test with principles gleaned from psycholinguistic research, we drafted preliminary illustrative class action notices and forms. We then asked a lawyer-linguist to evaluate them for readability and redrafted the notices in light of his suggestions.

We then tested the redrafted securities and products liability notices before focus groups composed of ordinary citizens from diverse backgrounds. This testing explored recipients' willingness to open and read a notice as well as their ability to comprehend and apply the information contained in a notice.

We tested the effectiveness of the redrafted securities notice by conducting a survey comparing the Center's redrafted illustrative plain language notice with the best comparable notice we could find from closed securities class action cases. Using objective comprehension measures, we found that participants who received the Center's plain language notice exhibited significantly higher comprehension than participants who received the comparison notice.

In August 2001, we posted to the FJC Website the yet-again redrafted securities and products liability notices and requested public comments. We subsequently revised the notices' design and wording, incorporating comments and suggestions received and using the assistance of additional experts. In November 2003 we added the employment notices.

(For more detailed information on the methodology involved in our research and drafting prior to the 2001 posting, click here)

## Notes for use by attorneys and judges
We designed the illustrative forms of notice posted here to demonstrate ways that drafters can use clear, simple, "plain language" and design in class action notices. In an actual case, attorneys and judges can adapt the illustrative notice to the unique factual, legal, and procedural circumstances of their case.

For each type of illustrative notice posted here, we drafted a detailed "full" notice that an attorney might mail to known class members, post to a Web site, or otherwise provide to class members. We also drafted a publication notice and language that might be used on the outside of a mailing envelope. The products liability notice, based on a hypothetical asbestos personal injury settlement, has two target audiences: homeowners and construction workers. Therefore, we prepared two separate publication notices, both of which are included under the link to "Products Liability class action: Publication Notice."

Effective notice to a class may require translation of the English-language notice into languages used by a substantial portion of the class members. To call attention to this need and to illustrate its form in two types of notices, we translated into Spanish the securities class action publication notice and the products liability class action full notice.

## Acknowledgments
We thank all the organizations and individuals who provided us with advice and comments. We wish to specifically acknowledge the class action notice drafting, design, and communications expertise provided by Todd B. Hilsee, of Hilsoft Notifications, Philadelphia, Pa, and the legal writing and plain-language expertise provided by Terri R. LeClercq, Ph.D. of the University of Texas School of Law, Austin, Tex. During the rulemaking process, both made their interest in helping known to the Advisory Committee, which referred them to the Center. Their significant and extensive pro bono services have enhanced the work done for the Advisory Committee. We also acknowledge the Spanish-language expertise of Abby Dings, University of

Texas, Austin, Tex.

The Federal Judicial Center produced and maintains this site in furtherance of its statutory mission. Opinions expressed in the materials found on this site are those of the authors, and not necessarily those of the Federal Judicial Center.

LEGAL NOTICE

# If you were exposed to Xbestos or other ABC products, you may have a claim in a proposed class action settlement.

A settlement of a class action lawsuit affects you if you were ever exposed to asbestos in Xinsulation, Xbestos, or other ABC Corporation products. The settlement will pay people who are suffering from an asbestos-related disease, as well as those who were exposed, but not sick, who need medical monitoring. If you qualify, you may send in a claim form to ask for payment, or you can exclude yourself from the settlement, or object.

The United States District Court for the District of State authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

## Who's Affected?

Construction workers who installed, or worked around, Xbestos, Xinsulation, and other ABC products (pictured and described to the right) are included in the settlement. Homeowners whose homes have or had Xinsulation are also included, as described in separate notices. *You're a 'Class Member' if you were exposed to asbestos fibers in any ABC Corporation products any time before Month 00, 0000.*

## What's this About?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The suit claimed that exposure increased the risk of developing Asbestosis, Mesothelioma, Lung Cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies all allegations and has asserted many defenses. The settlement is not an admission of wrongdoing or an indication that any law was violated.

## What can you Get from the Settlement?

There will be an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and a $70 million Medical Monitoring Fund for checking the health of those who were exposed but are not currently suffering from an asbestos-related disease. Compensation for injuries will be in varying amounts for specific diseases:

| DISEASE | MINIMUM | MAXIMUM | AVERAGE |
|---|---|---|---|
| MESOTHELIOMA | $10,000 | $100,000 | $20,000-$30,000 |
| LUNG CANCER | $5,000 | $43,000 | $9,000-$15,000 |
| OTHER CANCER | $2,500 | $16,000 | $4,000-$6,000 |
| NON-MALIGNANT | $1,250 | $15,000 | $3,000-$4,000 |

Medical monitoring payments will be $1,000 or the amount of your actual medical expenses, whichever is greater.

## How do you Get a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. **Claim forms are due by Month 00, 0000.** For an injury compensation claim, you'll have to submit a statement from a doctor that describes your current medical condition and confirms that you have one of the diseases in the box above. For a medical monitoring claim, you'll have to show proof of your exposure to an ABC asbestos-containing product.

## What are your Options?

If you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000**, or you won't be able to sue, or continue to sue, ABC about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by **Month 00, 0000**. The detailed notice describes how to exclude yourself or object. The Court will hold a hearing in this case (*Smith v. ABC Corp.*, Case No. CV-00-1234) on **Month 00, 0000**, to consider whether to approve the settlement and attorneys' fees and expenses totalling no more than $30 million. You may appear at the hearing, but you don't have to. For more details, call toll free 1-800-000-0000, go to www.ABCsettlement.com, or write to ABC Settlement, P.O. Box 000, City, ST 00000.



**Did you work around ABC building products?**

ABC Corp. made building products such as Xbestos, Ybestos and Zbestos, used in the construction of buildings and homes. You may have been exposed to asbestos by installing them or working at the site. Asbestos fibers on your clothing may have exposed your family. If you're not sure whether you worked around ABC products, call or visit the website below.

## 1-800-000-0000          www.ABCsettlement.com

<u>LEGAL NOTICE</u>

# If you were exposed to asbestos in Xinsulation, you could get benefits from a class action settlement.

A settlement of a class action lawsuit affects you if you were ever exposed to asbestos in Xinsulation, Xbestos, or other ABC Corporation products. The settlement will pay people who are suffering from an asbestos-related disease, as well as those who were exposed but not sick, who need medical monitoring. If you qualify, you may send in a claim form to ask for payment, or you can exclude yourself from the settlement, or object.

The United States District Court for the District of State authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

## Who's Affected?

Homeowners whose homes have or had Xinsulation (pictured and described to the right) are included in the settlement. Construction workers who installed, or worked around, Xbestos and other ABC products are also included, as described in separate notices. *You're a 'Class Member' if you were exposed to asbestos fibers in any ABC Corporation products any time before Month 00, 0000.*

## What's this About?

The lawsuit claimed that ABC made and sold products knowing that the asbestos fibers contained in them posed a danger to the health and safety of anyone exposed to them. The suit claimed that exposure increased the risk of developing Asbestosis, Mesothelioma, Lung Cancer, or other diseases that scientists have associated with exposure to asbestos. ABC denies all allegations and has asserted many defenses. The settlement is not an admission of wrongdoing or an indication that any law was violated.

## What can you Get from the Settlement?

There will be an Injury Compensation Fund of $200 million for Class Members who have been diagnosed with an asbestos-related disease, and a $70 million Medical Monitoring Fund for checking the health of those who were exposed but are not currently suffering from an asbestos-related disease. Compen-



**Did your home ever have Xinsulation?**

Xinsulation is in the attics and walls of older homes. It's loose, white, and fluffy. Be careful not to disturb it. It may be under other types of insulation. If you're not sure whether your home has or had Xinsulation, you can call toll free or visit the website below.

sation for injuries will be in varying amounts for specific diseases:

| Disease | Minimum | Maximum | Average |
|---|---|---|---|
| Mesothelioma | $10,000 | $100,000 | $20,000-$30,000 |
| Lung Cancer | $5,000 | $43,000 | $9,000-$15,000 |
| Other Cancer | $2,500 | $16,000 | $4,000-$6,000 |
| Non-Malignant | $1,250 | $15,000 | $3,000-$4,000 |

Medical monitoring payments will be $1,000 or the amount of your actual medical expenses, whichever is greater.

## How do you Get a Payment?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. **Claim forms are due by Month 00, 0000.** For an injury compensation claim, you'll have to submit a statement from a doctor that describes your current medical condition and confirms that you have one of the diseases in the box above. For a medical monitoring claim, you'll have to show proof of your exposure to an ABC asbestos-containing product.

## What are your Options?

If you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000,** or you won't be able to sue, or continue to sue, ABC about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by **Month 00, 0000.** The detailed notice describes how to exclude yourself or object. The Court will hold a hearing in this case (*Smith v. ABC Corp.*, Case No. CV-00-1234) on **Month 00, 0000,** to consider whether to approve the settlement and attorneys' fees and expenses totalling no more than $30 million. You may appear at the hearing, but you don't have to. For more details, call toll free 1-800-000-0000, go to www.ABCsettlement.com, or write to ABC Settlement, P.O. Box 000, City, ST 00000.

## 1-800-000-0000          www.ABCsettlement.com

<u>**LEGAL NOTICE**</u>

# If you bought XYZ Corp. stock in 1999, you could get a payment from a class action settlement.

**Para una notificación en Español, llamar o visitar nuestro website.**

A settlement has been proposed in a class action lawsuit about the price of XYZ Corporation stock. The settlement will provide $6.99 million to pay claims from XYZ investors who bought the company's stock during 1999. If you qualify, you may send in a claim form to get benefits, or you can exclude yourself from the settlement, or object to it.

The United States District Court for the District of State authorized this notice. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

### WHO'S INCLUDED?

You are a Class Member and could get benefits if you bought shares of XYZ stock during 1999. You are a Class Member only if you bought shares of XYZ stock individually, not simply through a mutual fund. If you sold XYZ stock during 1999, you are a Class Member only if those shares you sold were purchased in 1999. XYZ officers and directors, as well as immediate family members of directors of XYZ during 1999, are not Class Members.

Contact your broker to see if you had shares of XYZ stock. If you're not sure you are included, you can get more information, including a detailed notice, at www.XYZsettlement.com or by calling toll free 1-800-000-0000.

### WHAT'S THIS ABOUT?

The lawsuit claimed that XYZ and its Chief Executive Officer, Anne Adams, misled investors by intentionally overstating the profits that the company expected to earn in the future. The lawsuit also claimed XYZ issued false and misleading information about income and earnings per share for 1999, and that XYZ executives sold their personal shares at inflated prices during that time. XYZ and Ms. Adams deny they did anything wrong. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case and get benefits to investors. The two sides disagree on how much money could have been won if the investors had won at a trial.

### WHAT DOES THE SETTLEMENT PROVIDE?

XYZ agreed to create a fund of $6.99 million to be divided among all Class Members who send in valid claim forms. A Settlement Agreement, available at the website below, describes all of the details about the proposed settlement.

Your share of the fund will depend on the number of valid claim forms that Class Members send in, how many shares of XYZ stock you bought, and when you bought and sold them. Generally, if you bought more shares and have more Net Recognized Losses (as explained in the detailed notice), you will get more money. If you bought fewer shares and have fewer Net Recognized Losses, you will get less. All of the $6.99 million will be paid out.

If every eligible Class Member sends in a valid claim form, the average payment will be 17½ cents for each share of stock bought in 1999. The number of claimants who send in claims varies widely from case to case. If less than 100% of the Class sends in a claim form, you could get more money.

### HOW DO YOU ASK FOR A PAYMENT?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. To qualify for a payment, you must send in a claim form. **Claim forms are due by Month 00, 0000.**

### WHAT ARE YOUR OTHER OPTIONS?

If you don't want to be legally bound by the settlement, you must exclude yourself by **Month 00, 0000**, or you won't be able to sue, or continue to sue, XYZ about the legal claims in this case. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you may object to it by **Month 00, 0000**. The detailed notice explains how to exclude yourself or object.

The Court will hold a hearing in this case (*North v. XYZ Corp.*, Case No. CV-00-5678) on **Month 00, 0000**, to consider whether to approve the settlement and a request by the lawyers representing all Class Members (Lawfirm LLP, of City, ST) for $3,010,000 (7½ cents per share) in attorneys' fees and costs, for investigating the facts, litigating the case, and negotiating the settlement. The fees and costs won't reduce the settlement fund. You may ask to appear at the hearing, but you don't have to. For more information, call toll free 1-800-000-0000, visit the website www.XYZsettlement.com, or write to XYZ Settlement, P.O. Box 000, City, ST 0000-0000.

## 1-800-000-0000        www.XYZsettlement.com

# EXHIBIT 2

# Manual for Complex Litigation,
# Fourth

*Board of Editors*

Judge Stanley Marcus (Ct. of App., 11th Cir.), *chair*

Judge John G. Koeltl (S.D.N.Y.)      Judge Barefoot Sanders (N.D. Tex.)

Judge J. Frederick Motz (D. Md.)      Sheila Birnbaum, Esq. (N.Y., N.Y.)

Judge Lee H. Rosenthal (S.D. Tex.)      Frank A. Ray, Esq. (Columbus, Ohio)

Judge Fern M. Smith (N.D. Cal.),
*director, Federal Judicial Center 1999–2003*

Federal Judicial Center 2004

The *Manual for Complex Litigation, Fourth* has been produced under the auspices of the Federal Judicial Center. The analyses and recommendations are those of the *Manual*'s Board of Editors.

# Preface

This fourth edition of the *Manual for Complex Litigation* stands on the shoulders of the three previous editions and in the debt of the following: Judge William W Schwarzer, director of the Federal Judicial Center from 1990 to 1995, and primarily responsible for the third edition (1995); Judge Sam C. Pointer, who chaired the Board of Editors for the second edition (1985); Judge Alfred P. Murrah, the Center director who was the driving force behind the inaugural edition; Judge Thomas J. Clary, the chair of the initial Board of Editors; and the members of that Board.

The fourth edition of the *Manual* is adapted to new conditions and demands of federal litigation and reflects the work, experience, and insight of its Board of Editors. The Chief Justice, as chairman of the Board of the Federal Judicial Center, appointed the Board of Editors in 1999. He asked Judge Stanley Marcus, then a member of the Center's Board, to chair the Board of Editors. Judge Marcus has continued to oversee the *Manual*'s completion even though his term as a Center Board member ended in 2002. His insight and experience as a federal district judge and now as a member of the court of appeals are reflected on every page of the *Manual*. So, too, does this edition reflect the many hours dedicated to the project by individual members of the Board of Editors. A complete list of individuals who worked on the *Manual* can be found at Acknowledgments, page xix.

This *Manual* is one of the flagship services of the Federal Judicial Center. It has been my pleasure, as director of the Center, to have worked with Judge Marcus and the Board of Editors, and with the staff of the Center and others, to bring this fourth edition into being.

Fern M. Smith
*Director, Federal Judicial Center 1999–2003*

xvii

# Introduction

The impetus for this fourth edition of the *Manual for Complex Litigation* was, as with the previous editions, significant change in the landscape of federal litigation and the increasing responsibilities of federal trial judges. A recommendation of the Mass Tort Working Group, appointed by the Chief Justice, served as a catalyst for this project.[1] Major changes include, but are hardly limited to, the growth in class action and mass tort litigation, and the trial judge's heightened role imposed by *Daubert v. Merrell Dow Pharmaceuticals*[2] and cases following it, and by *Markman v. Westview Instruments, Inc.*[3] The *Manual*'s orientation, however, differs little from the first incarnation. It "contains neither a simplified outline for the easy disposition of complex litigation nor an inflexible formula or mold into which all trial or pretrial procedure must be cast."[4]

Users should keep in mind several things about this edition. First, it is not, and should not be cited as, authoritative legal or administrative policy. As noted at page iii, it contains analyses and recommendations of the Board of Editors, but each member of the Board does not necessarily subscribe to all parts of the *Manual*. It was produced under the auspices of the Federal Judicial Center, but the Center has no authority to prescribe practices for federal judges. The *Manual*'s recommendations and suggestions are merely that. As always, the management of any matter is within the discretion of the trial judge.

Second, although federal trial judges are the *Manual*'s primary audience, the techniques and procedures discussed may be useful in state courts as well, particularly in view of the convergence that is occurring in related litigation pending in both state and federal court systems. Reference to the *Manual* may assist in the coordination of such litigation. The *Manual* will also assist lawyers, who share with judges the responsibility for managing complex litigation in which they are involved.

Third, as with the previous editions, this edition's "organization . . . belies the fact that its subject matter is not neatly divisible into distinct topics."[5] Nor is the term "complex litigation" susceptible to any bright-line definition. Part I

---

1. Mass Tort Working Group, Report on Mass Tort Litigation, 187 F.R.D. 293, 324 (1999).

2. 509 U.S. 579 (1993).

3. 517 U.S. 370 (1996).

4. Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351, 355 (1960) (quoted in Manual for Complex Litigation, Second, § 10 (1985)).

5. Manual for Complex Litigation, Third, § 10.2 (1995).

treats generic topics in complex (and other) litigation, such as pretrial and trial procedures and attorney fees. Part II analyzes special problems in complex litigation, such as class actions and expert scientific evidence. Part III has separate sections on complex litigation in various subject areas, such as antitrust and intellectual property. Part IV includes sample orders and forms. As the *Manual for Complex Litigation, Third* said, however, "[a] topic, such as settlement or class actions, will be relevant to the discussion at different points."[6] Thus, this edition too contains extensive cross-references. This fourth edition contains much new and revised material and has a somewhat different format and numbering system than that of the *MCL 3d*. However, because civil and criminal case management differ significantly, and in order to keep this volume to a manageable size, this edition deals only with civil litigation.

Finally, it could go without saying that changes in statutes, case law, regulations, and technology will quickly date some specific references in the *Manual*, and users need to exercise standard research practices when using the *Manual*. For example, prospective legislative changes in class action rules remained pending as the *Manual* went to press, and the precise changes could not be forecast. Before this edition went to press, significant changes in Federal Rules of Civil Procedure 23 and 53 were approved by the Supreme Court[7] and were before Congress pursuant to the Rules Enabling Act.[8] Because congressional acceptance of the amendments seemed likely, and the amended rules differed significantly from those in effect prior to December 1, 2003, the *Manual*, when treating class actions, uses the amended rules and the committee notes about those amendments.

In offering an array of litigation management techniques and procedures, the *Manual* does not recommend that every complex litigation necessarily employ any such procedures or follow a standard pattern. Choices will depend on the needs of the litigation and many other considerations. What the *Manual* does urge is that choices be made, and that they be made starting early in the litigation. While those decisions are largely the responsibility of the court, the judge should not take the case from the lawyers, but rather provide guidance and direction, setting limits and applying controls as needed. Additional Center publications on litigation management can be found at http://www.fjc.gov.

Complex litigation should not be viewed as monolithic. In some areas of law, such as antitrust and securities litigation, substantive and procedural rules

---

6. *Id.*

7. See letters of the Chief Justice to the Speaker of the House and the President of the Senate, March 27, 2003, and amendments adopted by the Supreme Court, in "2002 Term Court Orders," at http://www.supremecourtus.gov (last visited Nov. 10, 2003).

8. 28 U.S.C. § 2074 (2000).

*Introduction*

are relatively well settled, as are management techniques. In others, such as environmental, civil rights, and mass tort litigation, rules are still emerging or undergoing change. While all complex litigation challenges courts, the unsettled areas present the greatest challenges.

Much complex litigation, therefore, will take the judge and counsel into sparsely charted terrain with little guidance on how to respond to pressing needs for effective management. Practices and principles that served in the past may not be adequate, their adaptation may be difficult and controversial, and novel and innovative ways may have to be found. While this *Manual for Complex Litigation, Fourth* should be helpful within the limits of its mission, it should be viewed as open-ended, and judges are encouraged to be innovative and creative to meet the needs of their cases while remaining mindful of the bounds of existing law and any variations within their own circuits.

# 40.4 Class Actions Orders

.41 Order Certifying Class  763
.42 Order Setting Hearing on Proposed Class Settlement  765
.43 Combined Certification and Proposed Settlement Order  766
.44 Order Approving Settlement/Claims Procedure  768

*Note:* These class action forms have been adapted from antitrust litigation for illustrative purposes and may be adapted for other litigation by appropriate changes.

## 40.41 Order Certifying Class

[caption]

Order No. _____

In accordance with the findings and conclusions contained in the Opinion [omitted] filed concurrently with this order, it is, ORDERED:

1.  *Class Certification.* Civil Action No. _____, styled _____ _____ shall be maintained as a class action on behalf of the following class of plaintiffs:

    [Describe class in objective terms to the extent possible. For example, "All persons and entities throughout the United States and its territories (other than widget manufacturers and entities owned or controlled by them) that, since _____[date]_____, have purchased widgets directly from any of the defendants or from any other widget manufacturer."]

    with respect to the following cause(s) of action:

    [Describe class claims as precisely as possible. For example, "Any claims for damages or injunctive relief under federal antitrust laws premised upon an alleged conspiracy among the defendants and other widget manufacturers to restrict competition in the manufacture, distribution, and sale of widgets by setting the minimum prices charged for widgets after _____[date]_____."]

2.  *Class Representative; Class Counsel.* Subject to further order of the court, [A.B. Co.] is designated as class representative and [X.Y.] is designated as counsel for the class.

3.  *Notice.*[1]

    (a)  Class counsel shall by _____[date]_____, cause to be mailed in the name of the clerk by first class mail, postage prepaid, to all class members who can be identified through reasonable efforts, a notice written in

§ 40.41                                    *Manual for Complex Litigation, Fourth*

plain language and approved by the court. For illustrative examples of the form of such notices, see the Federal Judicial Center's Web site (www.fjc.gov) and go to the "Class Action Notices" page. In addition to class members identified through an examination of defendants' records, this notice will also be mailed to persons who are members of [National Widget Dealers Trade Association].

(b) Class counsel shall cause to be published in the _____ by _____[date]_____, a notice in substantially the same style and format as the illustrative summary notices posted on the "Class Action Notices" page of the Federal Judicial Center's Web site (www.fjc.gov).

4. *Exclusion.* The notice to class members must inform them as to how they may exclude themselves from the class.

5. *List of Class Members.* Class counsel will file with the clerk by _____[date]_____, an affidavit identifying the persons to whom notice has been mailed and who have not timely requested exclusion.

Dated: _____         _____
                                          United States District Judge

*Note:*
    1. *See supra* section 21.311.