# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
| --- | --- |
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE FOR OBFUSCATION OF DOCUMENTS AND DILATORY TACTICS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND FACTS.....................................................................................2

     A.    Unbeknownst to and Despite the Efforts of Plaintiffs, Baxter Barely
         Makes a Dent in Its Document Production Prior to 2006........................2

     B.    Convincing Plaintiffs to Withdraw Their Motion to Compel, Baxter
         Agrees Not to Dump the Majority of Its Production on Plaintiffs on the
         Deadline ..................................................................................................5

     C.    On the Eve of the Close of Written Discovery for Baxter, Baxter Reneges
         and Dumps 1.9 Million Pages on Plaintiffs ............................................7

     D.    Since the Close of Written Discovery, Baxter Has Produced in Excess of
         Three Million Pages................................................................................8

     E.    Baxter's Dump of 5.8 Million Pages of Documents Since April 2006 Has
         and Will Prejudice Plaintiffs..................................................................9

III.  ARGUMENT.....................................................................................................10

     A.    This Court Should Sanction Baxter For Willfully Dumping 5.8 Million
         Pages of Documents on Plaintiffs Five Years After Litigation Commenced
         and At the Close of Written Discovery...................................................10

         1.    This Court has the inherent power and statutory authority to
              fashion an appropriate sanction ..................................................10

         2.    Default judgment against Baxter should be entered as it is the most
              appropriate sanction given Baxter's discovery abuse.................13

IV.  CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aoude v. Mobil Oil Corp.*,
   892 F.2d 1115 (1st Cir. 1989) ............................................................................10, 14

*Apex Oil Co. v. Belcher Co. of N.Y.*,
   855 F.2d 1009 (2d Cir. 1988) ......................................................................................11

*Atkins v. Fischer*,
   232 F.R.D. 116 (D.D.C. 2005) ....................................................................................13

*Beh-Hanson v. Arconium Specialty Alloys Co.*,
   No. 03-263, 2004 U.S. Dist. Lexis 27732 (D.R.I. Jun 18, 2004) ...........................11, 12

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .............................................................................................10, 11

*Cruz v. Savage*,
   896 F.2d 626 (1st Cir. 1990) ......................................................................................11

*Metro. Opera Ass'n v. Local 100, Hotel Emples. & Restaurant Emples. Int'l Union*,
   2004 U.S. Dist. Lexis 17093 (S.D.N.Y. 2004) ............................................................11

*Labadie Coal Co. v. Black*,
   672 F.2d 92 (D.C. Cir. 1982) ......................................................................................13

*Mullane v. Chambers*,
   333 F.3d 322 (1st Cir. 2003) ......................................................................................11

*Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*,
   193 F.R.D. 26 (D.P.R. 2000), *aff'd* 295 F.3d 108 (1st Cir. 2002) .................................11

*Park v. City of Chicago*,
   297 F.3d 606 (7th Cir. 2002) ......................................................................................13

*Pension Admin. Committee of the Sheraton Corp. Retirement Plan for Salaried
   Employees v. Carroll*,
   No. 93-1585, 1993 U.S. App. Lexis 34032 (1st Cir. Dec. 30, 1993) ..............................13

*Petroleum Ins. Agency, Inc. v. Hartford Acci. & Indem. Co.*,
   106 F.R.D. 59 (D. Mass. 1985) ....................................................................................15

*Pro Spice, Inc. v. Omni Trade Group, Inc.*,
   No. 01-1661, 2003 U.S. Dist. Lexis 23831 (E.D. Pa. Dec. 16, 2003) .............................11

*R.W. Int'l Corp. v. Welch Foods, Inc.*,
   937 F.2d 11 (1st Cir. 1991).............................................................................................13

*Tantivy Communs., Inc. v. Lucent Techs. Inc.*,
   No. 2:04-CV-79, 2005 U.S. Dist. Lexis 29981 (E.D. Tex. Nov. 1, 2005).........................15

*Tracy v. Financial Ins. Mgmt. Corp.*,
   No. 04-cv-00619, 2005 U.S. Dist. Lexis 38323 (S.D. Ind. Aug. 22, 2005).......................15

*United States Fidelity & Guar. Co. v. Baker Material Handling Corp.*,
   62 F.3d 24 (1st Cir. 1995).................................................................................................13

*Webb v. District of Columbia*,
   146 F.3d 964 (D.C. Cir. 1998) ....................................................................................13, 14

## STATUTES

28 U.S.C. § 1927......................................................................................................................10, 11

## I.      INTRODUCTION

From the inception of this case against Baxter until May 2006, Baxter produced only 230,446 pages of documents.  However, in the last two months, from May 1, 2006 until June 26, 2006, Baxter has dumped 5,822,498 pages on Plaintiffs in response to long-outstanding document requests.  Of those, Baxter produced 3.8 million *at or after* the close of written discovery.  Baxter clearly made a litigation decision to avoid prior substantial production knowing that it would be impossible – even with a team of 10 attorneys dedicated solely to reviewing Baxter documents – to cull through and digest these documents in time to conduct or complete depositions of Baxter's witnesses prior to the close of oral discovery on August 31, 2006.  In fact, it would have been a Herculean task even if Baxter had produced this information in a timely fashion.

There is no excuse for Baxter's dilatory tactics other than an improper attempt to manipulate discovery around the known discovery cut-off date for purposes of obfuscating the truth and purposely undermining the integrity of the Court and ability of Plaintiffs to prosecute this litigation.  This litigation has been pending since 2001.  Baxter has had the relative luxury of being a Phase II Defendant, thus having had extra opportunity to review the scope of Phase I Discovery and plan accordingly.  Moreover, Baxter responded to a Motion To Compel filed by Plaintiffs in 2005 with an agreement to produce documents on a rolling basis and not to dump the majority of documents on Plaintiffs at the close of discovery.  That agreement caused Plaintiffs to withdraw their Motion.  Baxter's decision to renege on that agreement by producing the bulk of its production, 5 million pages in the last 2 months, with the knowledge and intent that there would not be enough time to review and digest the information prior to the discovery cut off, has caused and will cause Plaintiffs untold prejudice.

Based on the dump of 5 million pages on Plaintiffs at the close of written discovery, Plaintiffs are not and cannot be afforded any opportunity to, *inter alia*: use the documents to identify potential witnesses; identify potential third parties that may have documents responsive to this litigation; understand the documents in order to prepare for depositions; review and digest the documents in order to understand Baxter's practices with respect to AWP; or rely on the documents in connection with class certification proceedings.

This Court should use its inherent authority to sanction Baxter for discovery abuses and to enter a default judgment against Baxter. There is no other sanction that can adequately compensate Plaintiffs for Baxter's failure to produce documents on a timely basis or for Baxter's decision to dump 96 percent of its documents on Plaintiffs in the last three months. Thus, Plaintiffs' Motion should be granted.

## II.   BACKGROUND FACTS

### A.   Unbeknownst to and Despite the Efforts of Plaintiffs, Baxter Barely Makes a Dent in Its Document Production Prior to 2006

Since the inception of this lawsuit, Plaintiffs have served all Defendants, including Baxter, with various requests for production, including Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to All Other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery, dated March 31, 2004 ("Omnibus Requests"). *See* Declaration of Elizabeth A. Fegan in Support of Motion For Sanctions and Default Judgment Against Baxter Healthcare For Obfuscation of Documents and Dilatory Tactics ("Fegan Decl."), ¶ 2, Exhibit 1. Pursuant to CMO No. 10, Baxter was required to produce documents within 60 days. On April 26, 2004, Plaintiffs'

counsel, Sean Matt, conferred with Baxter's counsel, Merle DeLancey, during which Baxter's counsel requested that Plaintiffs provide Baxter an extension to the production deadline.  Based on Baxter's position as a Phase II Defendant, Plaintiffs agreed to "such an extension provided that Baxter produces on a rolling basis, works in good faith to produce the documents as soon as possible and, in any event, completes its production by August 1, 2004."  *See* E-Mail from Sean Matt to Merle DeLancey dated April 27, 2004, Exhibit 2.

During that meet and confer process, Plaintiffs' counsel pressed to have Baxter **complete** its production by August 1, 2004.  *See* Letter dated May 26, 2004 from Sean Matt to Merle DeLancey, Exhibit 3.  When Baxter stated that it would not be able to do so, Plaintiffs' counsel, Sean Matt, wrote Baxter, suggesting certain compromises on the scope of the production, and requested a complete production by September 1, 2005.  *Id.*, at 3, ¶ 6.

Unbelievably, for the next year, Baxter admittedly did not produce a single responsive document.  Thus, on May 11, 2005, in anticipation of a meet and confer with Baxter's counsel, Plaintiffs counsel, Elizabeth A. Fegan, requested that Baxter "be ready to discuss and disclose the 'reasonable search' it promised to conduct and has conducted to date to identify responsive documents."[1]  Letter dated May 11, 2005 from Elizabeth A. Fegan to Merle DeLancey, Exhibit 6.  On May 24, 2005, Plaintiffs counsel, Elizabeth A. Fegan, and Baxter's counsel conferred regarding the production of documents by Baxter in response to Plaintiffs' Omnibus

---

[1] Baxter represented that it had or would conduct such a "reasonable search" in responses to Plaintiffs' Omnibus Request.  *See* Baxter International Inc. and Baxter Healthcare Corporation's Objections and Responses to Plaintiffs' Omnibus Requests for Production and Interrogatories, at Preliminary Statement, ¶ 2, and Specific Responses and Objections to the Document Requests, Nos. 1-24, 27-28, 30-31, 33, 35, 36-37, 41-61, 63-82, Exhibit 4.

Requests for Production.[2]   At that time, Plaintiffs counsel advised that the lack of production was unacceptable, and requested that the production begin and be done on a rolling basis.  Plaintiffs' counsel also suggested ways to minimize the size of the production, including a suggestion of email search terms as well as a request that documents be made available for review prior to actual production.  *See* Letter dated May 27, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on May 24, 2005), Exhibit 7; Letter from Merle Delancey to Elizabeth A. Fegan dated June 3, 2005 (agreeing to produce documents on a rolling basis), Exhibit 8.

Pursuant to CMO No. 5, Baxter initially produced 20,622 pages of documents previously produced to the government.  *See* Fegan Decl. at ¶ 3 (these documents were bates-stamped BAX MDL 0000001-0020622).  During 2005, Baxter produced an additional 26,634 pages of documents.[3]  Of those, 11,355 pages were contract-related documents identified by Plaintiffs' counsel after reviewing certain contract files at Baxter.  *Id.* at ¶ 4.

---

[2] The parties did confer during this time regarding Baxter's request that Plaintiffs not pursue what it referred to as certain "de minimus" drugs in the litigation.  *See, e.g.,* Letter from Elizabeth A. Fegan to Merle DeLancey dated April 28, 2005, Exhibit 5.  In the past, Baxter has attempted to use these discussions as the basis for not producing any documents.  However, there would be no reason, during the pendency of these discussions, to withhold documents related to drugs that both parties agreed from the outset would remain in the litigation.  *See, e.g.,* Letter from Elizabeth A. Fegan to Merle DeLancey dated November 8, 2005 (stating "Moreover, it is clear than Baxter used this delay not just with respect to the drugs that you requested be withdrawn but also the drugs that even you admitted from the beginning would be subject to discovery.  Thus, even if we were to accept your posturing as true, it is clear that Baxter has delayed production of documents with respect to drugs that have always been at issue."), Exhibit 17.

[3] *See* Letter dated June 17, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0020729-0024217), Exhibit 10; Letter dated September 30, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0024514-0035869), Exhibit 14; Letter dated December 16, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0035870-0046862), Exhibit 20; Letter dated December 23, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0046863-0047662), Exhibit 21.

-4-

The parties reconvened for subsequent meet and confers on June 3, 17, 27, and July 29, 2005.[4]  Despite these extensive meet and confers, by October 31, 2005, there were serious deficiencies in Baxter's production.  Thus, Plaintiffs' counsel sent a letter stating:

> Some of the deficiencies in production include but may not be limited to: (i) Baxter has yet to produce e-mail (other than what may have been included in the Government Investigation document set); (ii) Baxter has yet to produce documents maintained off-site; (iii) Baxter has yet to produce documents maintained in its electronic databases (separate from e-mail); (iv) Baxter has yet to produce documents identified at the 30(b)(6) depositions (again other than what may have been included in the Government Investigation document set); and (v) Baxter has yet to produce or make available all relevant contracts, or an agreed upon sampling thereof (with the limited exception of a discrete subset of BioScience contracts). Nor has Baxter affirmed that documents in these categories do not exist or that they otherwise have been produced in full.

Letter dated October 31, 2005 from Elizabeth A. Fegan to Merle DeLancey, Exhibit 15.  These issues were not resolved.

**B.     Convincing Plaintiffs to Withdraw Their Motion to Compel, Baxter Agrees Not to Dump the Majority of Its Production on Plaintiffs on the Deadline**

On November 8, 2005, Plaintiffs filed a Motion To Compel Production by Baxter.[5]  *See* Exhibit 16.  In response, Baxter's counsel contacted Plaintiffs' counsel, requested that Plaintiffs withdraw their Motion To Compel and, in exchange, Baxter would agree to the submission of an

---

[4] *See* Letter dated June 6, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on June 3, 2005 and noting that Baxter had again agreed to produce documents on a rolling basis beginning the week of June 13, 2005), Exhibit 9; Letter dated June 22, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on June 17, 2005 and again pushing for production and/or access), Exhibit 11; Letter dated June 27, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on June 27, 2005 and again pushing for production and/or access), Exhibit 12; Letter dated July 29, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing agreement and July 29 meet and confer), Exhibit 13.

[5] At the time of filing of the motion, Baxter had only produced:  (i) the Government Investigation documents required by CMO 5 (comprised of approximately 20,000 pages); (ii) two disks containing less than 4,000 pages (or just two boxes) of documents; (iii) two years' worth of active contracts for one of two divisions at issue (of which plaintiffs copied approximately 10,000 pages); and (iv) certain transactional data.

agreement before the Court that Baxter would complete document production by June 1, 2006.

Further, Baxter specifically agreed to produce on a rolling basis and **NOT** dump all the

documents on Plaintiffs at the deadline.  Fegan Decl. at ¶ 5.  Plaintiffs confirmed this issue in

writing, stating:

> We also discussed my concern that the [extension of the document
> production date to June 1, 2006] set forth above will only work if
> Baxter's document production is truly conducted on a rolling basis,
> noting that the dates will not be feasible if Baxter dumps the
> majority of documents on Plaintiffs on June 1, 2006. You agreed,
> and stated that you intended to produce the documents on a rolling
> basis.

Letter dated November 15, 2005 from Elizabeth A. Fegan to Merle DeLancey, Exhibit 19.

Moreover, Baxter was advising during this period that the full production would take just

several more months.  *See* Letter dated November 8, 2005 from Merle DeLancey to Elizabeth A.

Fegan (stating that Baxter "is in the process of a rolling production …that may not be completed

for several additional months"), Exhibit 18.  Based on the representations of Baxter's counsel

and the pace and quantitative content of the rolling productions thus far, Plaintiffs expected a

manageable production that could be culled and reviewed in time to complete depositions during

the summer of 2006.

Between January 1, 2006 and April 30, 2006, Baxter made an additional nine productions

in the form of 10 CD-ROMs containing 182,784 pages.  *See* Letters dated January 19, 27,

February 2, 10, 23, March 7, 10, 17, and 23, 2006 (the group of which contained pages bates-

stamped BAX MDL 0047663-0203446), Exhibit 22.  Despite these productions, Baxter

continued with its plan to undermine Plaintiffs' ability to conduct reasonable discovery by failing

to disclose in any of the cover letters to Baxter's production (or by any other manner) that these

productions constituted just a fraction of its production, or that Baxter intended to renege on its agreement not to dump all the documents on Plaintiffs on the discovery deadline.

Moreover, Baxter compounded its discovery deception by also attempting to delay the start of any deposition discovery through the misrepresentation of the scope of potential documents yet to be produced.[6] Thus, Baxter not only purposely avoided producing documents but also sandbagged Plaintiffs by attempting to delay the start of depositions pending completion of the documents it had held back from timely production.

**C.     On the Eve of the Close of Written Discovery for Baxter, Baxter Reneges and Dumps 1.9 Million Pages on Plaintiffs**

The close of written discovery with respect to Baxter was June 1, 2006.  Yet less than three weeks before the close, Baxter produced what it described as five DVDs, one Hard Drive, two CD-ROMs and hardcopy documents, all of which contained more than 668,430 pages.  *See* Letter dated May 11, 2006 from Tina Reynolds to Elizabeth A. Fegan (enclosing hardware containing pages bates-stamped BAX MDL E 0000001-668428; 203477, 203478), Exhibit 24. That production alone contained three times as many documents as had been produced to date.

Then, just three business days before the close of written discovery, Baxter's counsel sent a letter detailing, for the very first time, that it intended to produce 2,000,000 pages the following week as well as provide access to an on-line repository containing an unspecified amount of

---

[6] In response to a March 17, 2006 request from Plaintiffs to start scheduling certain depositions of current and former Baxter employees, one of Baxter's attorneys did attempt to defer the depositions until after the close of written discovery, advising:  "Our recent document discovery efforts, including the efforts relating to documents in the storage facilities, have resulted in the discovery of documents related to some of the Baxter employees you have identified.  We continue to believe that it will be more efficient for us to produce those documents before starting depositions.  Indeed, that was the intended purpose behind negotiating an extension to the discovery schedule with separate deadlines for production (June 1) and completion of fact depositions (September 1)."  *See* Emails dated March 17 and April 7, 2006 from Andrew Jackson to Elizabeth A. Fegan, and E-Mails dated March 17 and 28, 2006 from Elizabeth A. Fegan to Andrew Jackson, Exhibit 23.  However, Baxter did not advise of nor hint at the expected size of the production.

documents.  *See* Letter dated May 26, 2006 from Merle DeLancey to Elizabeth A. Fegan, Exhibit 25.

On May 30, 2006, Baxter produced 1,263,636 pages of documents.  *See* Letter dated May 30, 2006 from Tina Reynolds to Elizabeth A. Fegan (enclosing two Hard Drives containing documents bates-stamped BAX MDL E 0669393-1933029), Exhibit 26.  *See also* Letter dated May 26, 2006 from Merle DeLancey to Elizabeth A. Fegan (describing upcoming production of over 2,000,000 additional pages).  Had this been the end of Baxter's production, 90% of its production had just occurred in the last days of document discovery despite the fact that these cases had been pending against Baxter since at least as early as November 15, 2001.  *See United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund et al. v. Baxter International, Inc.*, No. 01 C 8828 (N.D. Ill.) (filed on November 15, 2001 and transferred May 20, 2002 to District of Massachusetts to MDL 1456).  Yet this was not the end of Baxter's production.

**D.    Since the Close of Written Discovery, Baxter Has Produced in Excess of Three Million Pages**

Since June 1, 2006, despite the fact that written discovery is closed and Plaintiffs only have 3 months to complete oral discovery, Baxter has continued to produce documents.  And not just stragglers – but approximately 3,890,432 pages!

Baxter has made two productions post-discovery closure.  The first was comprised of more than 1 million pages on Hard Drives as well as access to a remote Internet site that houses 543,000 documents, comprised of a good faith estimate of more than 2 million pages [7].  *See*

---

[7] For purposes of this motion, Plaintiffs are guestimating that each document is comprised of an average of four pages. Plaintiffs make this estimate based on good faith and their experience to date with Baxter's production, among other things.  Fegan Decl. at ¶ 6 .  Based on the other documents produced by

Letter dated June 1, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing two Hard Drives

containing documents bates-stamped BAX MDL E 1933030-2962307 and providing Lextranet

instructions and Password), Exhibit 27.  Then, between June 19 and 22, 2006, Baxter produced

an additional three Hard Drives containing 689,155 pages.  *See* Letters dated June 19, 2006 and

June 22, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing three Hard Drives containing

documents bates-stamped BAX MDL E 2962308-3386202, and BAX MDL S 0000001-

0265261), Exhibit 28.

**E.      Baxter's Dump of 5.8 Million Pages of Documents Since April 2006 Has and Will Prejudice Plaintiffs**

There can be no valid excuse for Baxter to have waited to produce 5,822,498 million

pages beginning in April 2006.  This litigation has been pending since 2001, and Baxter has had

ample opportunity to view the scope of Phase I Discovery.  Now that the dump has occurred this

late in the litigation, Baxter has sprung its discovery trap and ensured that there is no way for

Plaintiffs to physically review the documents in time for identification of deponents and

completion of oral discovery by August 31, 2006.  Nor would it be feasible to extend this

litigation by the number of years[8] it would take to review and digest the documents (not to

mention to then conduct oral discovery thereafter).

---

Baxter prior to April 2006, Plaintiffs believe that this estimate underestimates the total number of pages per document.

[8] It is reasonable, based on experience and precedent, to estimate that one attorney could review 800 pages per day (based on 100 pages per hour and an 8-hour day).  Thus, a team of 10 attorneys could review 8,000 pages a day.  Based on this estimate, it would take a team of 10 attorneys at least 728 days to review the documents produced by Baxter just since April.

# III.    ARGUMENT

**A.    This Court Should Sanction Baxter For Willfully Dumping 5.8 Million Pages of Documents on Plaintiffs Five Years After Litigation Commenced and At the Close of Written Discovery**

### 1.    This Court has the inherent power and statutory authority to fashion an appropriate sanction

Courts have the express authority to impose sanctions by virtue of both statutes and the Federal Rules of Civil Procedure.  *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *see e.g.,* 28 U.S.C. § 1927; Fed. R. Civ. P. 37.  However, even beyond these explicit powers, courts also have the inherent power to "impose silence, respect, and decorum," powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers,* 501 U.S. at 43 (internal citations and quotations omitted).  Accordingly, courts have the discretion and ability to fashion an appropriate and commensurate sanction for conduct that it finds to be abusive of the judicial process, even if there is also a separate statutory authority to sanction the same conduct.  *See id.,* at 44-45.[9]  *See also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

While these inherent powers should be reserved for the most egregious circumstances and must be exercised with restraint and discretion, courts can tailor the sanction to fit the

---

[9]  This inherent authority is clearly a source of power for courts separate and apart from – and coexistent with – statutory authority.  *See Chambers*, 501 U.S. at 49 ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct….In *Roadway Express*, a party failed to comply with discovery orders and a court order concerning the schedule for filing briefs. 447 U.S. at 755.  After determining that § 1927, as it then existed, would not allow for the assessment of attorney's fees, we remanded the case for a consideration of sanctions under both Federal Rule of Civil Procedure 37 and the court's inherent power, while recognizing that invocation of the inherent power would require a finding of bad faith.").

circumstances at hand.  *Mullane v. Chambers*, 333 F.3d 322, 338 (1st Cir. 2003) (citations omitted).  *See also Chambers*, 501 U.S. at 48-51 (citations omitted).[10]

Moreover, 28 U.S.C.S. § 1927 also affords the Court authority and discretion to impose sanctions on any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Beh-Hanson v. Arconium Specialty Alloys Co.*, No. 03-263, 2004 U.S. Dist. Lexis 27732, at **6-7 (D.R.I. Jun 18, 2004). Sanctions under Section 1927 are appropriate for discovery misconduct related to nonproduction or belated production. *Id.; Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 2004 U.S. Dist. Lexis 17093 (S.D.N.Y. 2004).  *See also Cruz v. Savage*, 896 F.2d 626, 634 (1st Cir. 1990) (affirming the award of § 1927 sanctions when the attorney "continually engaged in obfuscation of the issues, hyperbolism and groundless presumptions," and refused to produce the knife that the defendant had admitted she had been given); *Pro Spice, Inc. v. Omni Trade Group, Inc.*, No. 01-1661, 2003 U.S. Dist. Lexis 23831, at *5 (E.D. Pa. Dec. 16, 2003) (providing plaintiff's costs for the motion to compel in a case where defendant committed repeated discovery abuses, noting that the second motion to compel "would not have been necessary if they had been more forthright to plaintiff's discovery requests"); *Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1020 (2d Cir. 1988) (affirming § 1927 sanctions, when "in each [discovery dispute], prior to making its motion, Apex's counsel attempted to resolve the matter informally . . . and, in each case, . . . Apex's counsel was 'told to make a motion.' After

---

[10] *See, e.g., Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26, 31 (D.P.R. 2000) (imposing sanctions on a party for abusive discovery tactics under Rule 37, as well as through its inherent powers "that enable it to enforce standards of conduct during discovery."), *aff'd* 295 F.3d 108, 116-17 (1st Cir. 2002) (affirming the district court's inherent authority to impose such sanctions for the litigant's "bad-faith litigation tactics").

each motion was made, defense counsel 'mysteriously,' in the district court's words, complied

with the requests.").

> The First Circuit has provided the following guidance for courts applying § 1927:

>> We do not require a finding of subjective bad faith as a predicate to the imposition of sanctions. Behavior is vexatious when it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927. The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice. Yet, we agree with other courts considering this question that section 1927's requirement that the multiplication of the proceedings be vexatious necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence.  Finally, in assessing whether an attorney acted unreasonably and vexatiously in multiplying proceedings, the district courts in this circuit should apply an objective standard.

*Beh-Hanson*, 2004 U.S. Dist. Lexis 27732, at **6-7 (quoting *Cruz v. Savage,* 896 F.2d 626, 631-

32 (1st Cir. 1990) (citations and internal quotation marks omitted)).  In *Beh-Hanson*, the court

imposed discovery sanctions on the plaintiff's counsel for repeatedly failing to disclose that that

there were no responsive documents to certain requests, even after defendant filed a motion to

compel.  *See id.,* at **20-22.  Even though the attorney did not necessarily act in bad faith,

sanctions were appropriate because he "act[ed] in disregard of whether his conduct constitute[d]

harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process

of justice.'"  *Id.,* at **22-23 (quoting *Cruz*, 896 F.2d at 632 (quoting *United States v. Nesglo,

Inc.*, 744 F.2d 887, 891 (1st Cir. 1984)).  The court noted that sanctions also act as a deterrent to

those litigants who may be tempted to engage in vexatious or harassing conduct without the

possibility of being sanctioned.  *Id.,* at *23 (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d

553, 576 (1st Cir. 1989)). *See also Labadie Coal Co. v. Black,* 672 F. 2d 92, 100 (D.C. Cir. 1982) (vacating judgment in favor of defendant where "the court's . . . attempts to compensate for defendant's disorganization by admitting evidence produced only at the last minute, worked prejudice to plaintiff's attempts to justify its action . . .").

### 2.   Default judgment against Baxter should be entered as it is the most appropriate sanction given Baxter's discovery abuse

A trial court has broad discretion when determining whether to impose discovery sanctions.  *See, e.g., Park v. City of Chicago*, 297 F.3d 606, 614 (7th Cir. 2002).  Rule 37(b) expressly allows the entry of default judgment as a sanction.  *See e.g., United States Fidelity & Guar. Co. v. Baker Material Handling Corp*., 62 F.3d 24, 29 (1st Cir. 1995); *R.W. Int'l Corp. v. Welch Foods, Inc*., 937 F.2d 11, 15 (1st Cir. 1991).  Moreover, default judgments are appropriate and have been used by courts in the First Circuit to address egregious discovery abuses.  *See, e.g., Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried Employees v. Carroll*, No. 93-1585, 1993 U.S. App. Lexis 34032, at \*17 (1st Cir. Dec. 30, 1993) (affirming district court's entry of a default judgment under Rule 37 when "a party fails to comply with a discovery order," based on repeated violations of the court's orders to produce documents and submit to a deposition, [and] his failure to pay the $2,000 sanction") (unreported decision).

The D.C. Circuit has provided further guidance by articulating three possible (not mandatory) justifications for dismissal or default judgment as a sanction for misconduct, regardless of whether the court bases its decision on the Federal Rules of Civil Procedure or its inherent power.  *See Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998); *Atkins v. Fischer*, 232 F.R.D. 116, 128 (D.D.C. 2005). Under *Webb*, a sanction of dismissal is justified when:  (1) the other party has been "so prejudiced by the misconduct that it would be unfair to

require [the party] to proceed further in the case"; (2) the party's misconduct has put "an intolerable burden" on the court by requiring the court to modify its own docket and operations in order to accommodate the delay; or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future."  *Webb*, 146 F.3d at 971.

Here, default judgment is the appropriate sanction because Baxter's conduct has so severely limited and prejudiced Plaintiffs' ability to use the documents produced by Baxter in fashioning their prosecution.  It would be utterly impossible to review the five million pages in short order so as to make use of them at depositions that have and will occur this summer.  That appears to be exactly the result Baxter intended – but it is a result that should not be tolerated in the judicial process.

Nor could Plaintiffs make use of the 5 million pages even if this Court were to consider a short extension of the schedule in light of the enormity of the document dump.  Further, this Court should not be placed in the intolerable position of delaying years' worth of work by modifying its own docket and operations in order to accommodate the discovery abuses and wrongdoing of one Defendant.  The full scope of Baxter's abuse of the discovery process in this action can be elucidated when comparing its actions with those of the other Defendants.  While there have been numerous discovery disputes amongst the parties, none have approached the level of mendacity as shown by Baxter.  While Plaintiffs recognize that the requested sanction is severe, there is no alternative sanction that can so clearly punish Defendant for its mockery of the discovery process and this Court's Case Management Orders as well as protect Plaintiffs from the prejudice resulting from the conduct.[11]  Thus, whether this Court bases its decision on

---

[11] Obviously, the other alternative sanctions may include adverse inference instructions or monetary compensation, such as attorneys' fees, or costs.  *See, e.g., Aoude v. Mobil Oil Corp.*, 892 F.2d at 1119.

the Federal Rules of Civil Procedure or its inherent power, default judgment should be entered against Baxter.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request an order sanctioning Baxter, including but not limited to, the entry of a default judgment and for such other and further relief as this Court deems appropriate.

---

(indicating that it is beyond question that a district court has the inherent power to manage its affairs, including "the ability to do whatever is reasonably necessary to deter abuse of the judicial process") (citation omitted); *Petroleum Ins. Agency, Inc. v. Hartford Acci. & Indem. Co*., 106 F.R.D. 59, 70 (D. Mass. 1985) (discussing court's inherent power to impose sanctions, and indicating that such power "may be exercised to sanction non-production of documents even when no order compelling production pursuant to Rule 37(a)(2), F. R. Civ. P., was obtained") (citations omitted).  Where a party withholds documents, courts have fashioned appropriate monetary sanctions so that the "punishment fits the crime." *See e.g., Tracy v. Financial Ins. Mgmt. Corp.*, No. 04-cv-00619, 2005 U.S. Dist. Lexis 38323, at **3-4, 11 (S.D. Ind. Aug. 22, 2005) (Defendant who produced responsive email on the last day of out-of-state depositions by plaintiff was ordered to pay for additional telephonic depositions and for half the cost of additional in-person depositions pursuant to Rule 37(c)(1)); *Tantivy Communs., Inc. v. Lucent Techs. Inc.*, No. 2:04-CV-79, 2005 U.S. Dist. Lexis 29981, at *2  (E.D. Tex. Nov. 1, 2005) (finding defendant's actions sanctionable by producing relevant document in an untimely manner, permitting destruction of others, and trying to "hide the ball" in other ways).

001534-16  114560 V1

DATED:  June 28, 2006.

By    **/s/** Elizabeth A. Fegan
        Elizabeth A. Fegan
        Hagens Berman Sobol Shapiro LLP
        60 W. Randolph Street, Suite 200
        Chicago, IL  60601
        Telephone: (312) 762-9235
        Facsimile: (312) 762-9286

        Thomas M. Sobol (BBO#471770)
        Edward Notargiacomo
        (BBO#567636)
        Hagens Berman Sobol Shapiro LLP
        One Main Street, 4th Floor
        Cambridge, MA  02142
        Telephone: (617) 482-3700
        Facsimile: (617) 482-3003

        **LIAISON COUNSEL**

        Steve W. Berman
        Sean R. Matt
        Robert F. Lopez
        Hagens Berman Sobol Shapiro LLP
        1301 Fifth Avenue, Suite 2900
        Seattle, WA  98101
        Telephone: (206) 623-7292
        Facsimile: (206) 623-0594

        Eugene A. Spector
        Jeffrey Kodroff
        Spector, Roseman & Kodroff, P.C.
        1818 Market Street, Suite 2500
        Philadelphia, PA  19103
        Telephone: (215) 496-0300
        Facsimile: (215) 496-6611

        Kenneth A. Wexler
        Jennifer Fountain Connolly
        The Wexler Firm LLP
        One North LaSalle Street, Suite 2000
        Chicago, IL  60602
        Telephone: (312) 346-2222
        Facsimile: (312) 346-0022

001534-16  114560 V1

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter

Donald E. Haviland, Jr.

Kline & Specter, P.C.

1525 Locust Street, 19th Floor

Philadelphia, PA  19102

Facsimile:  (215) 772-1359

Telephone:  (215) 772-1000


**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  114560 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

I, Elizabeth A. Fegan, hereby certify that I am one of plaintiffs' attorneys and that, on June 28, 2006, I caused copies of **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE FOR OBFUSCATION OF DOCUMENTS AND DILATORY TACTICS** to be served on all counsel of record by causing same to be posted electronically via LexisNexis File & Serve.

By**    /s/ Elizabeth A. Fegan    **
Elizabeth A. Fegan

001534-16  114560 V1