# EXHIBIT 5



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL  60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

April 28, 2005

**Via Electronic Delivery**
Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC  20037-1526

Re:   In re Pharmaceutical Industry AWP Litigation: Baxter's Pharmaceuticals

Dear Merle:

I am writing in response to your letters dated July 14, 2004 and April 21, 2005.

As discovery with the Phase II Defendants re-commences, we have again reviewed your letter dated July 14, 2004 requesting that plaintiffs not pursue certain drugs manufactured or produced by Baxter Healthcare Corporation.   There does not appear to be sufficient information for plaintiffs to yet strike certain drugs from the MDL. However, we have attempted to capture below the additional information we believe that we need at this time[1] to further evaluate whether certain exclusions should be made.

**A.     Baxter's Calculation of ASPs and WAC[2]**

ASP is generally supposed to be an average net price.  In your letter however, it appears that Baxter has inflated the ASPs submitted to the Plaintiffs ("MDL ASPs") for 2 of the divisions as follows: with respect to Anesthia & Critical Care, Baxter did not deduct from its purported ASP calculations rebates, cash discounts or administrative fees;

---

[1] Plaintiffs' requests herein are made without prejudice to requesting additional information as needed, so long as Baxter continues to pursue its requesst that certain pharmaceuticals be excluded from the MDL.

[2] The comments herein apply equally to all drugs set forth in your July 14 Letter.

1534.16 0292 LTR-1L.DOC

Merle M. DeLancey, Jr.
April 28, 2005
Page 2

with respect to BioScience, Baxter did not deduct from its purported ASP calculations administrative fees.

Moreover, since your July 14 letter, Baxter has had some experience with submitting ASPs to the government ("Government ASPs"). Accordingly, because there is insufficient information provided in your July 14 letter, please explain how Baxter's purported calculations of the MDL ASPs for each of the three divisions differ from Baxter's Government ASPs. Moreover, please identify and explain Baxter's typical assumptions for calculating Government ASPs, and how those assumptions differ from the assumptions used in calculating the MDL ASPs in your July 14 Letter.

Finally, it is unclear in what instances and how the Medication Delivery division *calculated* WACs or Dealer Acquistion Costs for purposes of your July 14 Letter, as opposed to relying on published WACs. Please provide further explanation.

**B.     Drugs that Baxter Contends should not be in the MDL**

In order to fully evaluate your request, we request additional information regarding certain drugs as set forth below.

### 1.     Drugs Produced by Baxter Medication Delivery

#### a.     Aggrastat

You advise that Baxter only manufactures Aggrastat for Merck, and does not sell the drug directly nor is involved in its pricing decisions. Please provide copies of all agreements with Merck that refer or relate to Baxter's responsibility or liability with respect to Aggrastat, as well as documents sufficient to identify the formula by which Baxter is paid for its services. Also, please produce copies of all documents in Baxter's possession and/or control that reference or relate to the pricing of Aggrastat, or confirm that Baxter has no such documents in its possession and/or control.

#### b.     Claforan

Please confirm that you have provided all NDCs and identified all formulations of Claforan whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

Further we request that Baxter confirm that annual sales of all NDCs and all formulations of Claforan (whether or not in Appendix A to the AMCC) to providers for administration in the outpatient setting did not exceed 10% of total annual sales of Claforan for any year from 1991 to the present.

Merle M. DeLancey, Jr.
April 28, 2005
Page 3

### c.   Gentamicin

Please confirm that you have provided all NDCs and identified all formulations of Gentamicin whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

We request that Baxter confirm that annual sales of all NDCs for all formulations of Gentamicin (whether or not in Appendix A to the AMCC), or Gentamicin sold without NDCs, to providers for administration in the outpatient setting did not exceed 10% of total annual sales of Gentamicin for any year from 1991 to the present.

### d.   Gentran

Generally, we ask that you provide all NDCs and all formulations of all variations of Gentran, as well as the data related thereto. With respect to the three variations of Gentran set forth in Appendix A to the AMCC, we further request the following.

#### (1)   Gentran 40

Of the four formulations of Gentran 40 in Appendix A to the AMCC, you advise that three of the four appear to be invalid and that, for the fourth (NDC 0038-0272-03), Baxter reported no sales.

First, please provide all NDCs for Gentran 40, whether or not currently listed in Appendix A to the AMCC, as well the data related thereto. Second, please provide sales data for Gentran 40 sold without NDCs. Finally, with respect to NDC 0038-0272-03, please advise whether Baxter reported no sales for the entire period 1991 to the present, or provide sales data for alternative dates.

#### (2)   Gentran 75

Of the two formulations of Gentran 75 in the AMCC (6% Gentran 75 in saline, and 6% Gentran 75 in .9% sod. chl.), you advise that one NDC is appears to be invalid and the Baxter is unable to locate any sales or pricing information for the second NDC (NDC 0038-0265-03).

First, please provide all NDCs for all formulations of Gentran 75, whether or not currently listed in Appendix A to the AMCC, as well the data related thereto. Second, please provide sales data for Gentran 75 sold without NDCs. Finally, with respect to NDC 0038-0265-03, please advise whether Baxter reported no sales for the entire period 1991 to the present, or provide sales data for alternative dates.

Merle M. DeLancey, Jr.
April 28, 2005
Page 4

### (3)   Gentran/Travasol

Of the one correct formulation of Gentran/Travasol (10% Gentran Tav. Inj. in invert sugar) listed in Appendix A to the AMCC, you advise that the NDC appears to be invalid.

First, please provide all NDCs for all formulations of Gentran/Travasol, whether or not currently listed in Appendix A to the AMCC, as well the data related thereto. Second, please provide sales data for Gentran/Travasol sold without NDCs.

#### e.   Heparin Lock

You advise that Plaintiffs correctly identify nine formulations of Heparin Lock, but that four NDCs appear to be invalid.  Please confirm that you have provided all NDCs and identified all formulations of Heparin Lock whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

#### f.   Osmitrol

Please confirm that you have provided all NDCs and identified all formulations of Osmitrol whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

Moreover, you state that the AMCC contains only one valid NDC and you provide an additional valid NDC, but your chart at Tab E-1, for example, includes three valid NDCs.  However, it does not appear that you have provided total sales and outpatient sales data for the third NDC (00338035703).  Please do so.

#### g.   Travasol

Please confirm that you have provided all NDCs and identified all formulations of Osmitrol whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

#### h.   Vancocin

Please provide all NDCs for all formulations of Vancocin whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto. Second, please provide sales data for Vancocin sold without NDCs.

### 2.   Drugs Produced by Baxter Anesthesia & Critical Care

#### a.   Ativan injection and/or generic Ativan (Lorazepam)

Your letter is unclear in identifying all of the NDCs for all formulations of Ativan injection and/or generic Ativan (Lorazepam). For example, on page 17, you identify four NDCs which you contend Baxter did not own or sell, but on page 18, you identify sales

Merle M. DeLancey, Jr.
April 28, 2005
Page 5

information for those same four NDCs. Accordingly, we would appreciate clarification and/or identification of all of the NDCs for all formulations of Ativan injection and/or generic Ativan (Lorazepam) owned or sold by Baxter, whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto. Second, please provide sales data for Ativan injection and/or generic Ativan (Lorazepam) sold without NDCs.

Moreover, you object to providing information regarding four formulations of Ativan injections launched after the filing of the MCC, claiming that they are thus not subject to discovery. You may recall that the Phase I Defendants waived this objection for purposes of discovery in response to the filing of Plaintiffs' Motion to Compel the Production of Documents Created During the Relevant Time Period From Defendants Abbott Laboratories, AstraZeneca, Schering Plough, Sicor and Together Rx Defendants. Please advise whether you intend to stand firm on this objection, in which case we will not be able to evaluate Baxter's request for exclusion of this drug. Otherwise, please provide the requested information for the additional four formulations so that we may fully evaluate your request to exclude Ativan injection and/or generic Ativan (Lorazepam).

### b.   Brevibloc

You object to providing information regarding four formulations of Brevibloc, which Baxter began selling after the filing of the MCC, claiming that they are not subject to discovery. As I indicated above, the Phase I Defendants previously waived this objection, and we ask that you do so also and provide the requested information for these four formulations so that we may fully evaluate your request to exclude Brevibloc.

Moreover, please confirm that you have provided all NDCs and all formulations of Brevibloc whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

### c.   Cisplatin

Please confirm that you have provided all NDCs and all formulations of Cisplatin whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

### d.   Doxorubicin

Please confirm that you have provided all NDCs and all formulations of Doxorubicin whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

Merle M. DeLancey, Jr.
April 28, 2005
Page 6

### 3.    Drugs Produced by Baxter BioScience

#### a.    Bebulin

Please confirm that you have provided all NDCs and identified all formulations of Bebulin whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

#### b.    Buminate

Please confirm that you have provided all NDCs and identified all formulations of Buminate whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

#### c.    Iveegam

Please confirm that you have provided all NDCs and all formulations of Iveegam whether or not currently listed in Appendix A to the AMCC, as well as the data related thereto (or otherwise provide such information).

Once we have this additional information and/or explanation from you, we will hopefully be in a position to finalize our evaluations and analysis of your request for exclusion of the above drugs expeditiously.

However, in the interim, there is no reason not to proceed with production of sales data and the deposition pursuant to the 30(b)(6) Notice served on April 20, 2005 in light of the current case deadlines.

We look forward to hearing from you.

Sincerely,

Beth

Elizabeth A. Fegan

BF:bf

cc:    Steve W. Berman
Kenneth A. Wexler

1534.16 0292 LTR-1L.DOC

# EXHIBIT 6



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

May 11, 2005

***Via Electronic Delivery***

Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC 20037-1526

      Re:   <u>In re AWP Litigation</u>

Dear Merle:

      In anticipation of our meet and confer next week regarding Plaintiffs' Omnibus Requests for Production and Interrogatories, and Baxter's responses and objections thereto, we request that Baxter be ready to discuss and disclose the "reasonable search" it promised to conduct and has conducted to date to identify responsive documents. *See* Baxter International Inc. and Baxter Healthcare Corporation's Objections and Responses to Plaintiffs' Omnibus Requests for Production and Interrogatories, at Preliminary Statement, ¶ 2, and Specific Responses and Objections to the Document Requests, Nos. 1-24, 27-28, 30-31, 33, 35, 36-37, 41-61, 63-82.

                        Sincerely,

                        Beth

                        Elizabeth A. Fegan

BF:bf

cc:    Rick Meza

1534.16 0303 LTR-IL.DOC

# EXHIBIT 7



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

May 27, 2005

***Via Electronic Delivery***

Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC  20037-1526

Re:   In re Pharmaceutical Industry AWP Litigation

Dear Merle:

I am writing to memorialize our meet and confer held on Tuesday, May 24, 2005 regarding the production of documents by Baxter in response to Plaintiffs' Omnibus Requests. If your understanding of our conversation differs, please let me know immediately.

At the conclusion of our meet and confer, we agreed to reconvene in one week. Accordingly, we suggest that we speak by telephone on Tuesday, May 31, 2005 at 3 p.m. CST. Please confirm your availability.

## I.   BACKGROUND DISCUSSION

### A.   Timing of Production

We generally discussed that, outside of documents required to be produced under the prior CMOs, Baxter has not yet undertaken a search and review of potentially responsive documents. We advised you that this was unacceptable given the current discovery deadlines. You stated that you would endeavor to produce certain categories of documents, including organizational charts and certain indices of warehoused documents,[1] within the next two weeks. You further stated that you would investigate

---

[1] You advised that you believed that documents stored off-site by the BioScience and Medication Delivery divisions were indexed, but that you were unsure of the manner in which the third division's documents were stored.

1534.16 0327 LTR-IL.DOC

| BOSTON | CHICAGO | LOS ANGELES | PHOENIX | SEATTLE |

Merle M. DeLancey, Jr.
May 27, 2005
Page 2

how long it would take to complete the production, and that we would discuss this further in one week.  Finally, we discussed that any production to be made should be made on a rolling basis and that Plaintiffs prefer that documents be made available for review before copying to try and narrow the costs and size of the final production.

### B.   Database Searches: E-mail, Siebel and Goldmine

You asked that we identify particular people whose electronic files should be produced.  We advised that we are unable to do so in light of the lack of production to date.  However, we stated that we would provide you with a list of suggested search terms to be used in searching the e-mail, Siebel and Goldmine databases.  These include:

| | |
|---|---|
| AWP | volume |
| "average wholesale price" | reduce/reduction |
| WAC | proft |
| "wholesale acquisition cost" | RTP |
| ASP | "return to practice" |
| "average sales price" | Medicare |
| "list price(s)" | "Part B" |
| BP | "cost advantage" |
| AMP | "profit advantage" |
| EAC | margin |
| net | influence |
| price(s) | unrestricted |
| bundle | complimentary |
| chargeback(s) | inflat* (inflated, inflation) |
| credit(s) | margin(s) |
| discount(s) | acquisition |
| grant(s) | windfall |
| free | "cash ins" |
| incentive(s) | "product choice" |
| "economic incentives" | revenue |
| rebate(s) | insure* (insure, insurer(s), insured) |
| reimbursement | "third party payer" |
| "returned goods" | "third party payor" |
| spread | co-pay* (co-pay, co-payment) |
| sample(s) | |

Moreover, we-discussed that, prior to the use of Goldmine, field sales representatives kept hard copies of reports of daily call notes.  Baxter's 30(b)(6)

Merle M. DeLancey, Jr.
May 27, 2005
Page 3

witnesses testified that those reports would be sent to district/regional sales managers and
to the home office. You stated that it would be impossible to go to every field sales
representative to collect the old documents. We requested that you identify the central
locations where these documents were kept, *i.e.* with the sales managers and/or home
office, and that we would discuss further the process for their production when we talk in
one week.

### C.    Time Period at Issue

We generally discussed that Plaintiffs have requested the production of documents
for the period 1991 to the present. You have previously raised an objection to producing
any documents other than for the period 1997 to the time that the MCC was filed. We
discussed that the Phase I Defendants previously withdrew any similar objections in
response to Plaintiffs' Motion To Compel. We asked that you advise us immediately if
you intend to maintain this objection so that we may bring it to the Court's attention.

We did suggest, however, that we are willing to agree to a sampling approach for
particular requests. We suggested sampling on the basis of time, on the basis of customer
types, and on the basis of departments or groups within Baxter, and/or suggested the
production of indices of warehoused documents so that we may try to narrow the
documents in which we are interested. However, we requested that Baxter consider each
of these approaches in light of how it has indexed and stored its documents and propose
to us the particular approach(es) in which it is interested. You agreed to consider our
suggestions. We ask that Baxter be prepared to agree on an approach on our call next
week, or be prepared to advise us that it intends to stand by its objection as to the time
period for which it will produce documents.

### D.    Privilege Log

We discussed that Baxter's prior productions made pursuant to the CMOs include
redacted documents. However, to date, we have not received a privilege log. We
requested that Baxter provide a privilege log for the productions made to date, and that
Baxter update that privilege log on an ongoing basis as it makes further productions.

Please advise during our call next week when we can expect the privilege log for
the productions made to date. Further, we request that the privilege log be updated
within 14 days of any further productions.

### E.    Productions Made to Date

We requested that you advise us of the bates-range of documents produced to date
so that we can ensure we have the full production. You agreed to do so.

Merle M. DeLancey, Jr.
May 27, 2005
Page 4

### F.    Source List

We requested that you identify the source(s) of documents produced to date and in any further productions. You agreed to do so, subject to the limitation that you may not be able in certain instances to identify the specific person whose files may have been produced but that you would be able to identify the department from which they came (*i.e.* because the files may show up at your office undifferentiated). We requested that you endeavor to work with your client to ensure that sources can be identified. You agreed to do so.

## II.   SPECIFIC OMNIBUS REQUESTS

### A.    Requests to Which Baxter Agreed to Produce Responsive Documents

Baxter agreed to produce responsive documents, to the extent that they exist, in response to the following requests:[2] 1, 2, 3 (subject to the limitations set forth in Sean Matt's letter), 5, 6, 8, 20, 21, 24, 28(a)-(i) (subject to Baxter's objection that it will not produce documents regarding the actual costs of production/manufacture of any drug), 30[3], 31, 32, 33[4], 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 52, 54, 55, 56, 57, 58, 59, 60[5], 61, 62[6], 63, 64, 65, 66, 67, 68, 69, 70[7], 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82[8].

---

[2] Baxter may have already captured some of the documents responsive to these requests in its prior productions, but nonetheless has agreed to the production of responsive documents. Further, to the extent that Baxter does not have any documents subject to a particular request, please advise in writing.

[3] You advised that Medication Delivery is the only division that communicates with IMS and that may have documents responsive to this request.

[4] You advised that Medication Delivery would not have any documents responsive to this request, but that BioScience will.

[5] You advised that Baxter will not have any documents responsive to this request because there is no third party which reports any prices on Baxter's behalf to any pricing compendia, but that you would nonetheless inquire.

[6] Baxter has previously objected to any requests that include a request for documents related to PBMs on the basis that "it does not conduct business with PBMs." However, during the 30(b)(6) deposition, it was clear that there may be certain limited instances (*e.g.* where an insurer or PBM has set up a specialty care pharmacy) where Baxter does in fact do business with PBMs. Accordingly, you agreed to produce such relevant documents.

[7] You advised that Baxter does not do business with traditional wholesalers, but instead with biological distributors. We requested that documents related to biological distributors be produced in response to requests that include a reference to wholesalers or to the distribution chain generally. You agreed.

[8] You advised that Baxter does not engage in any repackaging or relabeling, and thus does not have documents responsive to this request.

Merle M. DeLancey, Jr.
May 27, 2005
Page 5

Baxter agreed that either its production was complete or that it would supplement its prior productions in response to the following requests: 9, 10 (subject to the agreement that this included any legal proceeding outside of the MDL process), 11, 12, 13, 14, 15, 49, 50, 51, 53.

### B.   Requests to Which the Parties Agreed to Confer Further

Baxter further agreed to produce documents but will first propose a sampling approach for the following requests:

- 16, 17: Baxter agreed to produce responsive documents, but will propose a sampling approach with respect to Baxter's price lists which counsel represented were each hundreds of pages.
- 26, 29: Baxter will produce responsive documents, but will first propose a sampling approach of contracts and customer files to be searched.
- 38: Baxter agreed to produce responsive documents, but will first propose a sampling approach for credit memos.

In this letter, Plaintiffs have proposed a search term list for searching documents that may be responsive to the following requests: 18-19, 46, 47. We discussed that you would consider this list in time for discussion on our next telephone call.

The parties agreed that the production of transactional data and related electronic database information was the subject of a separate discussion with Sean Matt and the technical gurus. *See e.g.,* Request Nos. 4, 7, 25, 27, 48.

### C.   Requests to Which the Parties Agreed to Defer At This Time

The parties agreed to hold the following requests in abeyance at this time: 22-23, 34.

Sincerely,

Beth

Elizabeth A. Fegan

BF:bf

1534.16 0327 LTR-JL.DOC

Merle M. DeLancey, Jr.
May 27, 2005
Page 6

cc:    Ken Wexler
       Rick Meza
       Steve Berman
       Sean Matt

# EXHIBIT 8

# DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 828-2282*
*E-Mail Address: DeLanceyM@dsmo.com*

June 3, 2005

Elizabeth A. Fegan, Esq.
Hagens Berman Sobol Shapiro LLP
60 West Randolph St.
Chicago, Il 60601

Re:     Baxter's Response to Plaintiffs' Omnibus Requests

Dear Beth:

I am writing in response to your letter dated May 27, 2005. While the letter generally reflected our meet and confer of May 24, 2005, there are a few points that require correction and/or further comment. The headings below track those in your letter.

## Timing of Production

We disagree with your statement that "Baxter has not yet undertaken a search and review of potentially responsive documents." Baxter began the process of searching for documents relevant to this litigation long ago. It was as a result of these efforts that Baxter initiated a dialogue with Plaintiffs in the Spring of 2004 to narrow the scope of the drugs at issue in this litigation rather than produce reams of paper relating to drugs that, for example, have extremely minimal outpatient usage. In July 2004, Baxter provided a comprehensive and detailed explanation with substantial supporting data demonstrating that certain drugs it manufactures have minimal outpatient utilization. Having heard nothing from plaintiffs, in April 2005, I contacted Sean Matt to determine if and when plaintiffs intended to respond to my July 2004 letter. Mr. Matt indicated that he was not sure if he was still plaintiffs' liaison responsible for Baxter and that either he or someone else would get back to me in the next two to four weeks.

As you have stated, we will begin producing documents on a rolling basis. However, with the exception of contract documents, we did not agree that Plaintiffs will be permitted to review documents ahead of time and mark for copying what they would like. Such an effort is logistically unfeasible and would introduce significant delay into the production process. We cannot agree to this arrangement. To minimize volume and cost, we will produce responsive documents in electronic form wherever possible.

## Database Searches

We disagree with your statement that you are "unable" to identify persons whose electronic files should be produced. Baxter produced over 20,000 pages of

*1177 Avenue of the Americas • New York, New York 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.legalinnovators.com*

Elizabeth A. Fegan, Esq.
June 3, 2005
Page 2

documents over three years ago in response to CMO 5. During our meet and confer, you stated that you had not reviewed Baxter's production for some time. Also, contradicting your representation, Mr. Mesa has indicated that based upon his review of the documents, plaintiffs desire to depose two former Baxter employees, Pam Koo and Candy Pullano. By separate letter, Baxter will be informing you that we represent Ms. Koo and Ms. Pullano and will make them available for depositions at a mutually agreeable time and location.

I have reviewed the search terms you have proposed for use with employee e-mail, Siebel, and Goldmine systems. While I agree with most of your terms, a few likely will generate too many documents. I propose excluding the following: "price(s)," "volume," "profit," "margin," "influence," "acquisition," and "insur." Any e-mail or other document with responsive information will most certainly contain one of the other search terms in addition to these very general terms.

### Time Period at Issue

With respect to the time period at issue, it is not my understanding that the Phase I Defendants have agreed to produce all categories of documents back to 1991. Rather, I understand that in response to Plaintiffs' motions to compel, certain Defendants agreed to produce specific types of documents dating back to 1991. Also, it is my understanding that no Phase I Defendant has produced pre-1997 sales data. Further, it is my understanding that most (if not all) Defendants have stopped their productions as of the date of the AMCC. As I indicated at our meet and confer, some of the documents Baxter has already produced go back to the early 1990s. We will sample archive files as we discussed previously but otherwise will produce only from active files. In addition, we intend to provide certain document storage indices for your review.

### Productions Made to Date

You have asked us to confirm the Bates range of our prior production. Baxter's CMO 5 production originally spanned Bates range BAX MDL 0000001 through 0020667. Further, by letter dated, March 3, 2004, Baxter supplemented this production by providing Steven Berman with copies of discovery responses and objections to the California subpoena duces tecum and the Texas civil investigative demand and its supplement. Unfortunately, some of the prior Bates labels were duplicated, as this second set was labeled Bates BAX MDL 0020588 through 0020644. We will reproduce the pages with new Bates numbers, Bates range BAX MDL 0020668 through 0020728.

We will endeavor for future productions to identify the source of documents that we produce. Given the time that has transpired since the underlying productions that comprise the CMO 5 production, however, it is not possible to do this for previously produced documents. We can tell you that the documents that are found in CMO 5 came from the files of the following individuals, among others: Kyle Bush, Bryant Gunnerson, Peter O'Malley, Michael Bradley, Pam Koo, Candy Pullano, and Larry Guiheen.

Elizabeth A. Fegan, Esq.
June 3, 2005
Page 3

### Requests to Which Baxter Agreed to Produce Responsive Documents

While your representations are overwhelmingly correct, I do disagree with respect to some of the categories. Requests 28 and 70 will require some sort of sampling, as you have agreed to with respect to Requests 16, 17, 26, 29, and 38. Responses to Request 42 will be incorporated into the sales transaction database we will provide to Sean Matt. Baxter will not provide a response to Request 43. Rather, you should direct all requests for deposition of current and former Baxter employees through me, as counsel for Baxter. Finally, regarding Request 10, Baxter will provide a list of all non-MDL cases in which it is a defendant, but will not provide copies of all pleadings and other documents associated with those cases.

With respect to your May 27, 2005 letter concerning alleged deficiencies in the 30(b)(6) deponent designations for BioScience, I respectfully disagree that only Topic 5 was exhausted and that there were gaps with respect to the remaining topic areas. Should your review of documents indicate that there are other individuals within Baxter (or formerly within Baxter) who have better knowledge concerning the areas of testimony, you can notice their depositions as fact witnesses. We are providing you with the names of our Medication Delivery and Anesthesia witnesses by separate letter.

I look forward to talking with you at 11:00 am (EDT) on Friday, to further our discussions on discovery matters.

Sincerely,

Merle M. DeLancey Jr.

MMD/tdr

# EXHIBIT 9



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

June 6, 2005

***Via Electronic Delivery***

Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC  20037-1526

> Re:   In re Pharmaceutical Industry AWP Litigation

Dear Merle:

I am writing to confirm the substance of our continued meet and confer held Friday, June 3, 2005 regarding Plaintiffs' Omnibus Requests and the Rule 30(b)(6) Depositions, and the various positions set forth in my letters dated May 27, 2005 and the response letters from you and Tina Reynolds dated June 3, 2005. If the synopsis below does not conform to your understanding of our discussion, please contact me immediately.

We agreed to reconvene on Friday, June 17, 2005 at 10 a.m. CST.

**30(b)(6) Depositions**

First, we confirmed July 12-13, 2005 at my office for the continued 30(b)(6) deposition, with witnesses designated for the Medication Delivery division and a portion of the topics with respect to the Anesthesia/Critical Care division. We discussed that Baxter was no longer in compliance with CMO 10's timing requirements for the production of 30(b)(6) witnesses. I thus requested that you designate the remainder of the witnesses for the Critical Care division for the same dates. You stated that you were not sure if that would work (one deponent may only be available out of town), but that you would try. You nonetheless advised that you would designate the remainder of the witnesses and their availability within a very short time frame.

We also discussed Plaintiffs' position, as set forth in detail in my letter dated May 27, 2005 regarding the 30(b)(6) deposition of the BioScience division, that Baxter's

1534.16 0334 LTR-IL.DOC

BOSTON        CHICAGO        LOS ANGELES        PHOENIX        SEATTLE

Merle M. DeLancey, Jr.
May 27, 2005
Page 2

witnesses had not made themselves knowledgeable about all of the information available
to the BioScience division with respect to 5 out of 6 topics. You did not provide a
substantive response in your June 3 letter, but denied that Baxter's witnesses were
inadequate. Accordingly, I asked whether this constituted our final meet and confer on
this topic, or whether you wanted to consider Plaintiffs' substantive position and
reconsider your position. You stated that you would go back and reconsider and/or
provide a substantive response.

### Timing of Production

Baxter has not yet been able to provide us with an estimated date for completion
of production. However, we agreed to discuss this issue again the week of June 13, 2005.
You also stated that you planned to begin production the week of June 13, 2005 and will
produce documents on a rolling basis. You stated that you would try to expedite certain
documents, such as organizational charts and indices of warehoused documents[1], prior to
the week of June 13 so that we may have more informed discussions.

We also reiterated Plaintiffs' request that Plaintiffs be allowed to review
documents before they are imaged and produced. You stated that Plaintiffs will be
allowed to review contract documents for culling prior to production. Then, we
discussed Baxter's position as set forth in your June 3 letter that all other documents
would be imaged and produced without providing Plaintiffs a first opportunity for
review. Generally, you advised Plaintiffs would likely have the opportunity to review
off-site documents; however "live" documents, from active files, would be imaged. I
advised you that Plaintiffs would not agree to pay, in whole or in part, for the imaging of
all Baxter documents if Plaintiffs were not first provided a review opportunity so Baxter
would need to consider its position on this issue prior to production. You stated that you
would discuss this issue with your client.

### Database Searches

We discussed our disagreement regarding the persons whose electronic files
needed to be searched. I reiterated Plaintiffs' position that we would not designate
specific people whose files should be searched (as Defendant has argued), because: (i) it
is Defendant's burden to identify relevant documents for production, and Defendant is
improperly attempting to shift the burden; (ii) Plaintiffs do not have sufficient
information to make any type of intelligent or informed decision as to the list of people
whose files should be searched; and (iii) e-mail searches etc. should be made on a

---

[1] During the course of our discussion, you indicated that these indices would include files referring to
field sales representatives. *See* my letter dated May 27, 2005 at 2-3 (discussing hard copy documents
used by field prior to use of Goldmine/Siebel).

Merle M. DeLancey, Jr.
May 27, 2005
Page 3

departmental or group basis, not an individual basis. Thus, I again suggested that we
discuss particular departments or groups (depending on how Baxter is organized) from
which electronic files should be culled, and further that we discuss particular departments
or groups whose files should be excluded (such as DTC advertising). You stated that you
would go back to your client and discuss this issue and propose a solution.

We further discussed the search terms that would be used for the e-mail, Siebel
and Goldmine databases. We agreed to the following terms (changes from my May 27,
2005 letter are noted below):

AWP
"average wholesale price"
WAC
"wholesale acquisition cost"
ASP
"average sales price"
"list price(s)"
BP
AMP
EAC
net
price(s)
bundle
chargeback(s)
credit(s)
discount(s)
grant(s)
free
incentive(s)
"economic incentives"
rebate(s)
reimbursement
"returned goods"
spread
sample(s)
~~volume~~
reduce/reduction
profit
RTP

"return to practice"
Medicare
"Part B"
"cost advantage"
"profit advantage"
~~margin~~
influence
unrestricted
complimentary
inflat* (inflated, inflation)
margin(s)
~~acquisition~~
~~"acquisition cost"~~
~~"cost of acquisition"~~
windfall
"cash ins"
"product choice"
revenue
~~insure* (insure,~~ insurer(s), insured)
"third party payer"
"third party payor"
co-pay* (co-pay, co-payment)

Merle M. DeLancey, Jr.
May 27, 2005
Page 4

We further discussed your concern that a search for "price(s)" and/or "profit" would return an unmanageable amount of documents. However, we agreed to defer this discussion until an actual search is undertaken. If the search for these two terms does, in fact, return an unmanageable amount of documents, we will revisit this issue and discuss a way to narrow the search.

Finally, you advised that the same people who are in the process of producing transactional data will be the ones to undertake the above database searches. Accordingly, you requested a prioritization of the transactional database production versus the above production. I advised you that the transactional data should come first as Baxter is only one of four defendants that has yet to produce any data. However, I stated that the process of producing transactional data should not indefinitely delay the above electronic production. As you may expect, the database search may yield thousands of documents and we will thus need some time to review them. Thus, since you did not indicate when you thought the transactional database search may be completed, please advise as to your expected completion date. If you do not expect to be completed with your transactional data search within four weeks, please advise us immediately so that we can confer as to an alternative resolution to this matter.

### Time Period at Issue

I advised you by e-mail dated June 3, 2005 and in our discussion that your statement that no Phase I Defendant has produced data prior to 1997 is patently incorrect. Moreover, we again discussed that Phase I Defendants have produced documents going back to 1991 and continuing to the present. Accordingly, I advised you that if Baxter intends to withhold any documents on the basis of time period that Baxter should advise us immediately so that we may take this issue to the Court.

Moreover, I stated that your last two sentences of the paragraph entitled "Time Period At Issue" in your June 3, 2005 letter were not consistent with our prior discussions. After discussing the matter, you agreed that: Baxter would start producing live files (regardless of the time period for which they cover) the week of June 13, 2005, Baxter would produce indices of warehoused/off-site documents for Plaintiffs' review, then the parties would confer on the particular off-site documents to be produced, and Plaintiffs would have an opportunity to review off-site immediately thereafter.

### Privilege Log

You stated that you have not yet completed the privilege log for the documents produced from the government investigations. However, you stated that you would produce this privilege log as soon as completed. We agreed to discuss this issue again the week of June 13, 2005. Moreover, you stated that you would produce privilege logs

Merle M. DeLancey, Jr.
June 6, 2005
Page 5

related to each rolling production within a reasonable time after each production. I suggest that we agree that this will be done within 14 days of each subsequent production.

### Specific Omnibus Requests

Between our prior letters, we have generally agreed on the scope of Defendant's responses with respect to specific omnibus requests. The only additions are as follows:

- Request 10: We agreed that Baxter would produce a list of all responsive legal proceedings outside of the MDL, together with copies of any testimony (including but may not be limited to transcripts, affidavits, and/or declarations).

- Request 43: we requested that Baxter provide identification information, but agreed that Baxter did not have to provide contact information based on Baxter's position that it intends to voluntarily produce all former or current Baxter employees as noticed by Plaintiffs from time to time.

- We discussed that Baxter intends to provide a sampling of documents in response to various requests, including 16, 17, 26, 29, and 70. However, Baxter has yet to propose a sampling approach (we have suggested a number of different routes but you have indicated that you were not yet familiar enough with the client's documents to propose an approach). We agreed that you would be ready to propose a sampling approach during the week of June 13, 2005.

Merle M. DeLancey, Jr.
June 6, 2005
Page 6

We look forward to talking with you on June 17.

Sincerely,

Beth

Elizabeth A. Fegan

BF:bf

cc:    Tina Reynolds
      Ken Wexler
      Rick Meza
      Steve W. Berman
      Sean Matt

# EXHIBIT 10

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 828-2282
E-Mail Address: DeLanceyM@dsmo.com

June 17, 2005

**BY FACSIMILE AND FEDERAL EXPRESS**

Elizabeth A. Fegan, Esq.
Hagens Berman Sobol Shapiro LLP
60 West Randolph St.
Chicago, Il 60601

Re:     Baxter's Response to Plaintiffs' Omnibus Requests

Dear Beth:

Enclosed please find one CD-ROM containing Baxter Healthcare Corporation's ("Baxter") production of documents (BAX MDL 0020729 – BAX MDL 0024217 in response to the above discovery requests. Also enclosed are privilege logs for Baxter's CMO 5 production and today's production. Baxter's document production efforts will continue on a rolling basis.

Many documents in this production have been designated "Confidential" and "Highly Confidential." Because of the electronic production tools we utilized, we were not able to mark individual pages with these legends; rather, designations have been made on a document-by-document basis. If you have any questions about these designations, we would be happy to review them with you.

In connection with Document Request No. 10, attached hereto is a list of all civil lawsuits that have been filed against Baxter alleging conduct relating to AWP/WAC pricing or the failure to accurately report prices under the Federal Medicaid Rebate Program. Included in the production is the only testimony that has been elicited in such a case – three examinations under oath conducted in the Texas litigation.

By making this production, Baxter does not waive any jurisdictional, substantive or procedural defect or any of our objections to Plaintiffs' discovery requests. The documents are also produced subject to, and without waiver of, the attorney-client, work product, and/or any other applicable privileges.

1177 Avenue of the Americas • New York, NY 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
www.DicksteinShapiro.com

DSMDB.1941479.1

Elizabeth A. Fegan, Esq.
June 17, 2005
Page 2

Please do not hesitate to contact me should you have any questions.

Sincerely,

Merle M. DeLancey Jr.

Enclosures

MMD/emh

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

# EXHIBIT 11



**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

June 22, 2005

***Via Electronic Delivery***

Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC  20037-1526

   Re: In re Pharmaceutical Industry AWP Litigation

Dear Merle:

   I am writing to confirm the substance of our continued meet and confer held Friday, June 17, 2005 regarding Plaintiffs' Omnibus Requests and the Rule 30(b)(6) Depositions.  If the synopsis below does not conform to your understanding of our discussion, please contact me immediately.

   We agreed to reconvene on Friday, June 24, 2005. Please let me know whether you are available at 10 a.m. CST.

   **30(b)(6) Depositions**

   In addition to the July 12-13, 2005 dates for the 30(b)(6) deposition of the Medication Delivery division, you advised that you could make two 30(b)(6) witnesses available for Anesthesia and Critical Care on July 11, 2005 in New Jersey.  We tentatively agreed to that date, but have also agreed to discuss further once you set forth in writing certain alleged facts regarding the drugs from this division, which alleged facts may make discovery of this division unnecessary.

   We also discussed Plaintiffs' position, as set forth in detail in my letter dated May 27, 2005 regarding the 30(b)(6) deposition of the BioScience division, that Baxter's witnesses had not made themselves knowledgeable about all of the information available to the BioScience division with respect to 5 out of 6 topics.  You advised that you would make Larry Guiheen  available to testify as to the alleged gaps in the testimony of Mr. O'Malley, and Jennifer Rogers to testify as to the alleged gaps in the testimony of Mr. Gunnerson.   Please provide us with proposed dates for these depositions.

Merle M. DeLancey, Jr.
June 22, 2005
Page 2

With respect to gaps in Topic 4, rather than produce an additional 30(b)(6) witness, I requested that you advise in writing of the identities of the persons responsible for communications with the publishers for the period 1991 to the present. You agreed, and stated that the persons most likely were Kyle Bush and Judy Ruder but that you would verify with your client. Please do so.

### Timing of Production

You advised that you would be producing a CD containing organizational charts, Medication Delivery contracts that were physically on site at your law firm, document retention policies, three examinations under oath from the Texas litigation, and other miscellaneous documents. We have since received one CD from you.

You may recall that, during our June 3, 2005 meet and confer (confirmed in my letter dated June 6, 2005), you stated that you would also be providing during the week of June 13, 2005 certain indices of warehoused documents. We have not yet received these indices. You did advise that there are two boxes of indices for Medication Delivery and BioScience. Please advise when these will be made available for our review.

With respect to the production of contracts, you stated that the BioScience division maintains two years' worth of live contracts on site and that everything else is in storage. You further stated that the contracts are stored by state in alphabetical order. You stated that you would make these available to us in the Chicago area for review. After consulting with Tina about how long it would take your team to first go through them, we agreed that we would tentatively shoot for this review to occur July 14-15, 2005.

### Database Searches

We discussed at length some very concerning news regarding e-mail and/or documents of former employees that were not preserved in accordance with company policy when employees left the company. You have set forth the circumstances of this failure in a separate letter, and I have served on you a Notice of 30(b)(6) Deposition for July 11, 2005 focused on this topic. I suggest we discuss this issue further on Friday and again reiterate my request that Baxter propose a written stipulation agreeing to preserve on a going-forward basis.

Further, I request that the 30(b)(6) deposition on these topics occur on July 11, 2005 or immediately before or after (and not be scheduled out to August, 2005) because of the seriousness of the issues that must be addressed first by Plaintiffs and second by the Court.

Merle M. DeLancey, Jr.
June 22, 2005
Page 3

We also discussed that you had not yet determined how and/or if Goldmine and/or Siebel was preserved or backed-up.[1]  Again, because of the serious nature of the preservation issue, we ask that you be prepared to discuss this on Friday.

With respect to current employees, you advised that e-mails are deleted on a 90-day rolling basis but that employees have been instructed by the Company to archive their e-mails every 90 days so that they will not be destroyed.  While the Company's directives and/or steps taken to ensure compliance with these directives is one of the subjects for the 30(b)(6) deposition, we nonetheless have continued to discuss the manner in which Baxter will search these e-mails.  I again suggested that you specifically identify and propose the groups or departments whose employees' e-mails you intend to search, and specifically identify and propose the groups or departments to be excluded.  As soon as you provide us with this information, we will consider it and provide our feedback.  Please advise when we can expect this information.

We did not discuss the search term list to which we previously agreed as set forth in my May 27, 2005 letter, so I assume you have had no further issues on that topic.

### Time Period at Issue

We agreed that Baxter would produce transactional data current through the first quarter of 2005, and would produce documents through January 1, 2005 (as a reasonable cut-off for searching documents but without prejudice to any obligations that Baxter may have to supplement its production at a later time).

### Specific Omnibus Requests

Baxter has previously taken the position that it intends to provide a sampling of documents in response to various requests, including 16, 17, 26, 29, and 70.  You were not prepared to discuss this last week, other than to say that you thought that the documents covered by these requests would be made available for inspection.  Please confirm on Friday that all documents responsive to these requests will be produced, or advise of a proposed sampling approach.

---

[1] You did advise, however, that the Anesthesia & Critical Care division did not have an electronic call note database.

Merle M. DeLancey, Jr.
June 22, 2005
Page 4

      We look forward to talking with you on Friday.

                Sincerely,

                Beth

                Elizabeth A. Fegan

BF:bf

cc:    Tina Reynolds
       Ken Wexler
       Rick Meza
       Steve W. Berman
       Sean Matt

# EXHIBIT 12



**HAGENS BERMAN**
SOBOL SHAPIRO LLP

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

June 27, 2005

***Via Electronic Delivery***

Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC 20037-1526

     Re:    <u>In re Pharmaceutical Industry AWP Litigation</u>

Dear Merle:

    I am writing to confirm the substance of our continued meet and confer held Monday, June 27, 2005 regarding Plaintiffs' Omnibus Requests and the Rule 30(b)(6) Depositions. If the synopsis below does not conform to your understanding of our discussion, please contact me immediately.

    We agreed to reconvene on Friday, July 1, 2005 at 10 a.m. CST.

**30(b)(6) Depositions**

    As we discussed, you will be providing me with a letter shortly regarding certain issues that may obviate the need for the July 11, 2005 30(b)(6) deposition of the Anesthesia and Critical Care division. As I told you, if you can get me that information today or tomorrow, I will try to evaluate it by Friday.

    With respect to the July 12-13, 2005 Rule 30(b)(6) deposition of the Medication Delivery Division, I advised you that I will be unavailable on July 12 and asked that this be rescheduled. You will advise me whether you still want to go forward on the 13th or reschedule both days for August.

    With respect to the Notice of Rule 30(b)(6) related to the preservation of documents, you advised that you are "cautiously optimistic" that the documents, which you previously thought were not kept, were in fact preserved. *See infra.* You stated that this might obviate the need for this deposition. We agreed to discuss this matter again on Friday.

1534.16 0334 LTR-IL.DOC

BOSTON     CHICAGO     LOS ANGELES     PHOENIX     SEATTLE

Merle M. DeLancey, Jr.
June 22, 2005
Page 2

With respect to the BioScience Division 30(b)(6), you confirmed that you would be producing Larry Guiheen and Jennifer Rogers and will provide us with proposed dates for these depositions.

In our last meet and confer, with respect to gaps in Topic 4 for the BioScience division, rather than produce an additional 30(b)(6) witness, I requested that you advise in writing of the identities of the persons responsible for communications with the publishers for the period 1991 to the present. You agreed, and stated that the persons most likely were Kyle Bush and Judy Ruder but that you would verify with your client. We did not discuss this again today, but I reiterate our request.

### Timing of Production

I inquired as to the status of the production of indices for warehoused documents for the BioScience and Medication Delivery divisions. You advised that you would be providing me this week with a letter listing all of the departments that sent documents to storage. You asked that we advise you from which departments we request documents, which departments may be excluded and for which departments we need more information.

You advised us that you would make the "live" or active contract files (which you defined as those for the last two years) for the BioScience division available for review on July 14-15, 2004. I requested that you advise me of the volume in advance, and you agreed to do so.

### Database Searches

We revisited the issue of whether e-mail and/or documents of former employees were or were not preserved in accordance with company policy when employees left the company. You stated that you may have received some misinformation and are cautiously optimistic that the documents were in fact preserved. You stated that you should know within the next two days.

I requested the following: (i) a stipulation as to how this issue will be resolved as to employees who depart the company on a going forward basis (to which you stated that you had a draft stipulation to forward to me shortly); (ii) in the event that documents were in fact preserved, an affidavit from the company (not the lawyers) affirming the same; and (iii) in the event that the documents were not or were haphazardly preserved, a date for the corresponding Rule 30(b)(6) deposition during the week of July 11 or 18, 2005.

Merle M. DeLancey, Jr.
June 22, 2005
Page 3

We also discussed that you had not yet determined how and/or if Goldmine and/or Siebel was preserved or backed-up.

I again suggested that you specifically identify and propose the groups or departments whose employees' e-mails you intend to search, and specifically identify and propose the groups or departments to be excluded. You agreed that this process was not contingent on the outcome of the preservation issue, and further agreed to provide this information by Wednesday.

### Specific Omnibus Requests

**Nos. 16, 17, 26**: First we agreed that no. 16 was subsumed within no. 17. Second, we agreed that you would produce all documents responsive to these requests from specific departments to be agreed upon. You are going to provide us with a list of those departments that you propose to include in your search and those departments that you propose to exclude from your search.

**Nos. 29, and 70**: You stated that you are going to make all contracts for the relevant time period available for our review.

We look forward to talking with you on Friday.

Sincerely,

Beth

Elizabeth A. Fegan

BF:bf

cc:    Tina Reynolds
       Ken Wexler
       Rick Meza
       Steve W. Berman
       Sean Matt

# EXHIBIT 13

**HB**

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

hbsslaw.com
60 WEST RANDOLPH STREET, SUITE 200 • CHICAGO, IL 60601
(312) 762-9235 • FAX (312) 762-9286

ELIZABETH A. FEGAN
(312) 762-9235
beth@hbsslaw.com

July 29, 2005

***Via Electronic Delivery***

Merle M. DeLancey, Jr.
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW
Washington, DC 20037-1526

     Re:   In re Pharmaceutical Industry AWP Litigation

Dear Merle:

     I am writing to confirm the substance of our meet and confer held today.

**A.    Preservation Issues**

     We revisited the ongoing discussion we have had regarding the documents that Baxter may have failed to preserve in the past and how Baxter intends to preserve documents going forward.

     First, with respect to ongoing preservation issues, you advised that Baxter is now preserving documents and that you are meeting with the third party vendor that backs-up Baxter's documents on Monday to discuss how this will continue to be done on an ongoing basis.

     Second, with respect to documents that may not have been preserved in the past, you advised that you have identified a universe of approximately 65 persons that have left the Company that you believe may have had responsive responsibilities and, of those, are investigating whether or not documents were preserved (specifically, you identified that the investigation includes the questions whether Baxter: (i) maintained the hard drives; (ii) preserved e-mails; and (iii) has access to documents on shared/network documents).

     We discussed that Plaintiffs intend to move forward with the 30(b)(6) on preservation issues and we requested a date certain. You advised that Andy Jackson would be handling that deposition from your office. You suggested the week of August

1534.16 0362 LTR-IL.DOC

Merle M. DeLancey, Jr.
July 29, 2005
Page 2

22, 2005. We advised you that we are available that week every day, except Wednesday. You will coordinate the deposition and provide us a specific date during the week of 8/22 for the deposition by letter next week.

**B.     Storage Indices**

We generally discussed that you provided us with a list of departments or groups that had documents in storage in order to identify groups from which documents would be produced. On July 1, 2005, we provided you with a response to those lists, and had not heard back from you.

You advised that you were struggling with the number of groups that may have responsive documents. We discussed that it was time to move off this discussion of groups and begin producing documents.

You stated that you were considering making the documents available, depending on the state of law in Massachusetts regarding inadvertent disclosure. We generally discussed the current Protective Order and claw back provisions.

You stated that you intended to research Massachusetts law and provide us with a letter next week, advising (i) whether you intended to make the documents available subject to a claw back agreement, or whether you intended to review the documents first prior to production; and (ii) a timeline for production under either scenario. You further stated that production has been/may be delayed because Baxter is in the process of moving its storage facilities.

**C.     Contract Templates and Databases**

We discussed the review Plaintiffs conducted of the active BioScience contract files, and the items set forth in my letter dated July 25, 2005 related thereto.

We requested templates of the standard contract forms used over time for both Medication Delivery and BioScience. You agreed to produce those in conjunction with the Guideline Price reports, recognizing that this may reduce the production generally.

Further, we discussed the databases to which it appeared Account Directors or others have access and which appear to capture contract information in summary form. You stated that you thought it might be duplicative of the transactional databases being produced to Sean Matt. We agreed to reconvene this discussion once we both have had access to the documents we marked for copying from our BioScience contract review.

Merle M. DeLancey, Jr.
July 29, 2005
Page 3

## D.   E-Mail

We discussed that this issue has stalled in your court with respect to identifying the groups or people whose e-mail you intend to search. You agreed to provide us with a timeline for production by letter next week.

## E.   BioScience Continued 30(b)(6)

You will provide us with dates for the depositions of Jennifer Rogers and Larry Guiheen by letter next week.

We look forward to next week's letter.

Sincerely,

Beth

Elizabeth A. Fegan

BF:bf

cc:   Rick Meza

1534.16 0362 LTR-IL.DOC

# EXHIBIT 14

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 828-2282*
*E-Mail Address: DeLanceyM@dsmo.com*

September 30, 2005

**BY FACSIMILE AND FEDERAL EXPRESS**

Elizabeth A. Fegan, Esq.
Hagens Berman Sobol Shapiro LLP
60 West Randolph St.
Chicago, Il 60601

Re:     Baxter's Production of Requested BioScience Active Contract Files

Dear Beth:

Enclosed please find one CD-ROM containing those documents you selected from Baxter Healthcare Corporation's ("Baxter") BioScience division's active contract files during your July 19, 2005 document inspection at Baxter's Deerfield offices. Also enclosed is the privilege log for this production. The documents span Bates range BAX MDL 0024514 – BAX MDL 0035869. A privilege log is included for documents withheld in full and those which contain redactions for privilege.

As you may recall, prior to your review of the contract files we noted that some files related solely to BioSurgery products, but that it was not possible to extract those prior to your review. In fact, some of the documents that you selected for production concern BioSurgery products exclusively. Because no BioSurgery products are at issue in the Amended Master Consolidated Complaint, we have withheld these documents from this production as irrelevant. We have also withheld documents that relate exclusively to other BioScience drugs not at issue in the case, for example, Feiba and Advate. We have produced in full documents that contain any reference to an MDL drug, even if BioSurgery or non-MDL drugs were also discussed therein.

By making this production, Baxter does not waive any jurisdictional, substantive or procedural defect or any of our objections to Plaintiffs' discovery requests. The documents are also produced subject to, and without waiver of, the attorney-client, work product, and/or any other applicable privileges.

*1177 Avenue of the Americas • New York, NY 10036-2714 • Tel (212) 835-1400 • Fax (212) 997-9880*
*10866 Wilshire Boulevard • Suite 300 • Los Angeles, CA 90024-4350 • Tel (310) 441-8460 • Fax (310) 441-8470*
DSMDB.1985983.1       *www.DicksteinShapiro.com*

Elizabeth A. Fegan, Esq.
September 30, 2005
Page 2


Please do not hesitate to contact me should you have any questions.

Sincerely,

Merle M. DeLancey, Jr.

Enclosures

MMD/emh

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP