UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO THE CLASS ACTION | ) ) | **[REDACTED]** |

# ABBOTT LABORATORIES, INC.'S INDIVIDUAL MEMORANDUM OF LAW IN OPPOSITION TO TRACK 2 CLASS CERTIFICATION

Dated: June 15, 2006

Respectfully submitted,

/s/ Brian J. Murray
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Counsel for Defendant Abbott Laboratories, Inc.*

Abbott Laboratories, Inc. ("Abbott") joins in full in the Opposition to class certification filed on behalf of all Track 2 Defendants; that brief correctly explains why none of proposed Clases 1, 2, or 3 can be certified as against the Track 2 Defendants. These classes cannot be certified against Abbott for these additional reasons:

- **Class 1:** Robert Howe, proposed as a representative for Class 1 against Abbott,[1] did not incur responsibility to pay for any Abbott drug within the definition of proposed Class 1;

- **Class 2:** Sheet Metal Workers, the lone proposed representative for Class 2 against Abbott, did not incur responsibility to pay for any Abbott drug within the definition of proposed Class 2; and

- **Class 3:** Pipefitters, the lone proposed representative for Class 3 against Abbott, (1) did not incur responsibility to pay for any Abbott drug within the definition of proposed Class 3, and (2) had extensive knowledge of Abbott's drug pricing by virtue of its TPP's direct contracts with Abbott, rendering Pipefitters subject to myriad unique defenses and thus not a "typical" class representative.

Nor is this surprising. Unlike the single-source, branded drugs primarily at issue in Track 1, all of the Subject Drugs for Abbott are multi-source drugs, and are generally administered in hospital settings (such as saline solution). The nature of Medicare reimbursement for these drugs, and issues associated with cross-walking their J-Codes to NDCs, render them particularly insusceptible of class treatment. Accordingly, Plaintiffs' motion to certify any class against Abbott should be denied.

### I.   NONE OF THE PROPOSED CLASS REPRESENTATIVES FOR ABBOTT HAS STANDING ON CLAIMS AGAINST ABBOTT; THESE REPRESENTATIVES ARE NOT "TYPICAL," AND THUS CANNOT SUPPORT CERTIFICATION OF ANY OF CLASSES 1, 2, OR 3 AGAINST ABBOTT.

Before any class can be certified, Plaintiffs must demonstrate that all requirements of Rule 23(a) have been met. *See Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass.

---

[1] The claims of Harold Bean, who was recently permitted to enter this action as a named plaintiff and is the only other proposed representative for Class 1 for Abbott, will be addressed upon the close of discovery as to Mr. Bean.

1997) ("The moving party has the burden of demonstrating that all of the prerequisites to certification under Rule 23(a) and 23(b) have been met."). One of these requirements is that the proposed representative for each class be "typical" of the class. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that when a proper class representative litigates its claim against a defendant, it will necessarily advance the interests of the entire class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982); *Wooden v. Bd. of Regents of the Univ. Sys. of Georgia*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("One of the core purposes of conducting typicality review is to ensure that the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.") (internal quotation marks omitted).

As this Court previously recognized, one aspect of typicality – and indeed, a threshold question for class certification – is that there must be "an individual class representative with standing to sue each defendant." *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005); *see Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) ("[I]n a multi-defendant . . . class action, the named plaintiffs must establish that they have been harmed by each of the defendants" against whom they seek to represent a class.). Indeed, the Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (internal quotation marks omitted); *see also Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.").

In addition, unique defenses available against the named plaintiff must also be considered in the typicality analysis. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000); *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989). These basic precepts doom plaintiffs' motion for class certification against Abbott.

### A.   Robert Howe Lacks Standing Against Abbott, And Thus Is Not A Typical Representative For Abbott For Proposed Class 1.

Robert Howe is named as a proposed representative for Class 1 against Abbott. *See* Proposed Consolidated Order re: Motion For Class Certification Class 2 at 2 ¶ 3 (filed May 8, 2006) ("Proposed Certification Order"). As analyzed extensively in the *Expert Declaration of Steven J. Young Related To Track 2 Class Certification On Behalf Of Abbott Laboratories, Inc..* ("Young Abbott Decl."), however, Mr. Howe is not a member of proposed Class 1 because none of his drug encounters involving Subject Drugs named for Abbott meets the proposed class definition. (*Id.* ¶¶ 12-14, 17.)



Accordingly, Mr. Howe suffered no alleged injury at the hands of Abbott, and thus, he cannot represent Class 1 against Abbott. (*Id.* ¶ 17.)

### B. Sheet Metal Workers Lacks Standing Against Abbott, And Thus Is Not A Typical Representative For Abbott For Proposed Class 2.

Similarly, none of the drug encounters for Abbott for the sole proposed Class 2 representative, the Sheet Metal Workers National Health Fund ("Sheet Metal Workers") (*see* Proposed Certification Order at 3 ¶ 3 (filed May 8, 2006)), meets the proposed definition of that class. Specifically, of the ten drug encounters put forward for Abbott:

- Two of the drug encounters ▉▉▉▉▉▉▉▉▉▉▉▉ occurred after January 1, 2005, and thus are outside the proposed class definition (Young Abbott Decl. ¶ 20);

- Six of the drug encounters ▉▉▉▉▉▉▉▉▉▉▉▉ were reimbursed based on Hospital OPPS methodology (not based on AWP), and are thus outside the proposed class definition (*id.*); and

- The remaining two encounters, ▉▉▉▉▉▉▉▉▉▉▉▉, were administered after Abbott no longer sold or marketed those products (*id.*).

Accordingly, Sheet Metal Workers suffered no alleged injury at the hands of Abbott, and thus, it cannot represent Class 2 against Abbott. (*Id.* ¶ 21.)

### C. Pipefitters Lacks Standing Against Abbott, And Also Has Unique Knowledge Of Abbott's Drug Pricing, And Therefore Is Not A Typical Representative For Abbott For Proposed Class 3.

Finally, plaintiffs have failed to establish that the sole proposed representative for Class 3, the Pipefitters Local 537 Trust Fund ("Pipefitters") (*see* Proposed Certification Order at 4 ¶ 3 (filed May 8, 2006)), is a typical representative as against Abbott, for two different reasons.

*First*, while Pipefitters has put forward 20 different drug encounters for Abbott, it has not demonstrated that any of them fall within the proposed Class 3 definition. Indeed, plaintiffs have put forward no evidence that any of these multi-source drugs were actually sourced from Abbott, as opposed to some other defendant or non-defendant source. (Young Abbott Decl. ¶ 25.) Moreover:

- Eight of the claims (40%) involved drug encounters for which Pipefitters' own records indicate that Pipefitters paid the provider nothing for the drug, or did not separately reimburse for the drug (*id.* ¶ 25);

- An additional two claims (10%) involved drug encounters for which Pipefitters paid 100% of billed charges – and thus, did not reimburse based on AWP, as the proposed Class 3 definition requires (*id.*); and

- The remaining ten encounters (50%) related to multi-source drugs for which Abbott is only one of many sources, and were not reimbursed based on the AWPs associated with Abbott's drugs; indeed, there is no evidence that the drugs administered were even Abbott's (*id.*).

Accordingly, Pipefitters has not demonstrated any injury at the hands of Abbott. Therefore, it cannot represent Class 3 against Abbott. (*Id.* ¶ 28.)

*Second*, Pipefitters presents an independent problem as a proposed representative for Class 3, in that its separate dealings with Abbott make it susceptible to defenses that may not be available against Class 3 members in general. Specifically, Pipefitters contracted with Blue Cross Blue Shield of Massachusetts ("BCBSMA") to manage the care for its members and process medical benefit claims. BCBSMA, in turn, contracted directly with Abbott to purchase Abbott Subject Drugs at amounts drastically lower than the AWPs associated with those drugs. These contracts included over 750 Abbott NDCs, of which 175 are associated with Subject Drugs, and allowed BCBSMA to purchase Abbott drugs at deeply discounted prices. (Young Abbott Decl. ¶¶ 26-27.) This special knowledge of BCBSMA, which is imputed to Pipefitters, renders Pipefitters susceptible to defenses that may not be available to other class representatives. *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 146 (1st Cir. 1998) (dismissing plaintiff's fraud claim where plaintiff would not have acted differently had there been no alleged fraud); *see Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 507 (6th Cir. 2003) (same). For this reason, too, Pipefitters is not a typical representative as to Abbott for Class 3. (Young Abbott Decl. ¶ 28); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989) (noting that

if a proposed class representative "has relied on non-market information that plaintiff may be subject to unique defenses at trial," and "[s]uch a plaintiff could hurt the class he seeks to represent by having to litigate issues that solely relate to his special reliance").

## II.    PLAINTIFFS HAVE HAD PLENTY OF TIME TO FIND TYPICAL CLASS REPRESENTATIVES FOR ABBOTT AND HAVE FAILED TO DO SO; BACKFILLING AT THIS LATE DATE IS IMPERMISSIBLE AND, IN ANY EVENT, FUTILE.

This Court has already recognized that a class may not be certified without a proper representative before the Court. *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. at 80. To the extent Plaintiffs ask the Court to address their class certification motion, but grant them leave to substitute in new class representatives as to Abbott, the request should be denied. At some point, the Track 2 Defendants are entitled to learn the identities of the named plaintiffs who are suing them. Abbott respectfully submits that this date came and passed on March 1, 2006, which this Court's CMO 16 established as the deadline for adding new Track 2 class representatives. Plaintiffs added new representatives in their Fourth Amended Master Consolidated Complaint at that time,[2] and the parties have expended significant resources in discovery of those named plaintiffs ever since – resulting in the instant briefing. Any motion to add yet more plaintiffs at this late date should fail, for any of three reasons.

*First*, it is well-established that a lack of diligence is fatal to a motion to amend a complaint. *See Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994) (Leave to amend should be denied where it would "reward, *inter alia*, undue or intended delay."); *McSorley v. Richmond*, 2002 WL 31106427, *1 (D. Me. Sept. 20, 2002) ("[T]he First Circuit has more than once recognized" that denial of leave to amend is appropriate where "there was an

---

[2] Indeed, the Court has already patiently allowed one addition of a named plaintiff by amendment after the filing of the FAMCC, Mr. Bean – resulting in the need for more discovery, and eventually more class certification briefing. Any further addition of named plaintiffs would be a transparent abuse of this Court's good offices.

'undue delay' in filing the motion to amend."); *see also Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.") This litigation has already gone on for more than four years, and the deadline to add new class representatives passed over three months ago. Enough is enough.

*Second*, any addition of new plaintiffs at this late stage would require yet more discovery, the expenditure of yet more of the parties' (and the Court's) resources, and ultimately, another significant delay in the proceedings. It is well settled that, in such circumstances, leave to amend should be denied. *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998) (holding leave to amend may be denied where the allowance of the amendment would unduly prejudice the opposing party through "a re-opening of discovery with additional costs" and "a significant postponement of trial"); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (affirming district court's decision to deny leave to amend to add new class plaintiffs filed fourteen months after the court's deadline for amending the pleadings: "Granting that motion would have required reopening class discovery and further delay, precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a).").

*Finally*, and perhaps most important, it is well-established that leave to amend should be denied where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing "failure to cure deficiencies by amendments previously allowed" and "futility of amendment" as proper grounds for denial of leave to amend); *Berard v. Town of Millville*, 113 F. Supp. 2d 197, 203-04 (D. Mass. 2000) ("Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters."). As expert Steven Young has explained, the fact that Plaintiffs have not located appropriate class representatives for Abbott's multi-source hospital drugs is no accident. (Young Abbott Decl. ¶ 15 ("The fact that these

transactions do not meet the proposed Class 1 definition is not a coincidence."); *see also id.* ¶¶ 16, 21, 28.) That is because "[t]he Subject Drugs named for Abbott are all multi-source drugs and drugs administered primarily in the hospital setting." (*Id.* ¶ 7). Accordingly, even if Plaintiffs could find a class representative for Abbott that meets the three proposed Class definitions (which is highly unlikely), it would not matter:

> [T]he complexity of the analysis required to identify whether a [multi-source] drug encounter meets the proposed class definitions renders it infeasible to address plaintiffs' allegations on a class-wide basis.

(*Id.*) After all, if scores of Plaintiffs' lawyers steeped in knowledge of AWP and drug pricing cannot find a proper plaintiff in over four years of trying, how can this Court be expected to sort out millions of class members to determine whether they also meet the class definition? *See* Charles Alan Wright, et al., *Federal Practice and Procedure* § 1760 (3d ed. 2005) (Class certification is improper where it is not "administratively feasible for the court to determine whether a particular individual is a member.").

## CONCLUSION

For the foregoing reasons, in addition to those set out in the Track 2 Class Certification Opposition Brief, Plaintiffs' motion to certify Track 2 Classes 1, 2, and 3 as against Abbott should be denied.

## CERTIFICATE OF SERVICE

I, Brian J. Murray, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES INC.'S INDIVIDUAL MEMORANDUM OF LAW IN OPPOSITION TO TRACK 2 CLASS CERTIFICATION, as well as the EXPERT REPORT OF STEVEN J. YOUNG RELATED TO TRACK 2 CLASS CERTIFICATION ON BEHALF OF ABBOTT LABORATORIES, INC. DATED JUNE 15, 2006 and Supporting Materials, to be served, via Fed Ex, upon:

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
*Plaintiffs' Liason Counsel*

This 15th day of June, 2006.

/s/ Brian J. Murray
Brian J. Murray