HIGHLY CONFIDENTIAL

# EXPERT DECLARATION OF STEVEN J. YOUNG RELATED TO TRACK 2 CLASS CERTIFICATION ON BEHALF OF ABBOTT LABORATORIES, INC.

**DATED JUNE 15, 2006**

(REDACTED)

Subject to Protective Order

**TABLE OF CONTENTS**       HIGHLY CONFIDENTIAL

Page

QUALIFICATIONS AND COMPENSATION ................................................................. 1
SCOPE OF REPORT ............................................................................................... 1
SUMMARY OF ANALYSIS AND OPINIONS ............................................................ 2
    I.    REIMBURSEMENT OF MULTI-SOURCE DRUGS ............................... 2
    II.   PROPOSED CLASS 1 ............................................................................ 3
    III.  PROPOSED CLASS 2 ............................................................................ 5
    IV.  PROPOSED CLASS 3 ............................................................................ 6

Subject to Protective Order

**HIGHLY CONFIDENTIAL**

## QUALIFICATIONS AND COMPENSATION

1. I have been a consultant to the health care industry for more than twenty years. I have substantial experience with health insurance reimbursement, claims processing, pharmaceutical pricing and distribution channels, and Government pricing in the health care industry. I have previously outlined my experience and qualifications in my Declaration dated October 25, 2004, and Track 2 Declaration dated June 15, 2006. To the extent my opinions have been addressed in previous expert reports (whether my own or those of others), I will reference those reports and not repeat that information here. The only supporting documentation attached to this Declaration is that which is not already attached to my Track 2 Declaration.

2. I have been retained by Abbott Laboratories ("Abbott") and am being compensated at a rate of $425 per hour. No portion of my compensation depends upon the nature of my findings or on the outcome of this matter.

3. A list describing the data and information I relied upon in preparing this report is attached as Exhibit 1.

## SCOPE OF REPORT

4. I have been asked to analyze the named plaintiffs' drug encounters[1] involving Subject Drugs[2] named for Abbott, and to determine whether each drug encounter resulted in a named plaintiff incurring an obligation to pay based on AWP, as required by all three proposed class definitions.

5. I was also asked to consider whether the complexity of the analysis required to determine whether any given drug encounter for a named plaintiff resulted in the named plaintiff incurring an obligation to pay based on AWP of the Subject Drug was consistent with class treatment under the framework of the three proposed classes for the claims against Abbott.

6. I have set forth below the results of my analysis, and the opinions I have formed.

---

[1] This term is defined in my Track 2 Declaration dated June 15, 2006.

[2] This term is defined in my Track 2 Declaration dated June 15, 2006.

**HIGHLY CONFIDENTIAL**

## SUMMARY OF ANALYSIS AND OPINIONS

7. The Subject Drugs named for Abbott are all multi-source drugs and drugs administered primarily in the hospital setting. In my Track 2 Declaration, I explained how none of the drug encounters involving multi-source hospital products met the proposed class definitions. I also explained that the complexity of the analysis required to identify whether a drug encounter meets the proposed class definitions renders it infeasible to address plaintiffs' allegations on a class-wide basis. I have built on that analysis in this Declaration, and specifically addressed the drug encounters and issues associated with the Subject Drugs identified for Abbott.

### I.   REIMBURSEMENT OF MULTI-SOURCE DRUGS

8. Based on my analysis of the Medicare Single Drug Pricer and the 2005 Medicare Crosswalk, all of the Subject Drugs identified for Abbott are multi-source drugs[3]. In the Medicare context, multiple-source drugs are reimbursed based on J-codes. The use of J-codes creates at least the following issues:

- It is not possible to identify the source of a multi-source drug based on the information available to the patient and TPP because the source of the product is not needed to reimburse the provider and is therefore not included in the documentation. As a result, it is not possible to establish that the product was purchased from Abbott as opposed to another defendant or non-defendant.
- All competing sources of the product, whether the source is a defendant or a non-defendant, are by definition reimbursed at the same level – making it impossible for a source such as Abbott to effect a higher reimbursement than its competitors with the AWP published for its products.
- For every Abbott drug encounter identified by plaintiffs, the AWP associated with Abbott's NDCs was not used to establish reimbursement

---

[3] As I explained in my Track 2 Declaration, comprehensive cross-walk information and detailed analysis of the methodology used by Medicare to establish reimbursement for multi-source drugs was not available until the recent Medicare cross-walks were published by CMS and CMS implemented the Single Drug Pricer process in 2003. Therefore, I have identified multi-source drugs based on these recent sources. The status of drugs over the entire class period would require extensive analysis. However, the transactions identified by named plaintiffs were primarily related to the more recent time frames, so I have limited my analysis at this time to the SDP and Medicare Crosswalk information currently available through CMS.

**HIGHLY CONFIDENTIAL**

for the encounter. This is not surprising. Due to the large number of sources for hospital products that competed with those sold by Abbott's Hospital Products Division and the reimbursement methodologies generally applied for multi-source drugs, I would not expect to see an AWP associated with Abbott's products to be selected as the basis for reimbursement.

9. In addition, Medicare has known of large variations in the AWPs for the various sources of drugs within a given multi-source J-code.[4] Medicare has also long been aware of differences between the acquisition cost of, and the published AWP for, Abbott's multi-source drugs.[5]

10. These observations, as well as those discussed in my Track 2 Declaration concerning reimbursement for multi-source drugs, support my analysis of the three proposed classes and conclusion that the drug encounters identified for the named plaintiffs against Abbott do not fall within them.

## II. PROPOSED CLASS 1

11. I have analyzed the Haviland Declaration[6], which names Robert Howe as a class representative currently proposed for Class 1 for Abbott.[7]

12. As shown in Exhibit 3-d of my Track 2 report,



13.

---

[4] See "Medicare Reimbursement of Prescription Drugs," Department of Health and Human Services Office of the Inspector General Report, January 2001.

[5] See "Physicians' Cost for Chemotherapy Drugs," Department of Health and Human Services Office of Inspector General, November 1992. See also "Medicaid Pharmacy—Actual Acquisition Cost of Prescription Drug Products for Brand Name Drugs," Department of Health and Human Services Office of the Inspector General, April 1997.

[6] See Declaration of Donald E. Haviland, Jr., Esquire in Support of Plaintiffs' Motion to Certify Claims with Respect to Track 2 Defendants, May 8, 2006.

[7] Mr. Bean has been excluded from this Declaration due to the lack of discovery associated with his drug encounters. I will address Mr. Bean separately when additional discovery is available.

HIGHLY CONFIDENTIAL

14. 

15. The fact that these transactions do not meet the proposed Class 1 definition is not a coincidence. I understand that Abbott primarily sells these two Subject Drugs to hospitals.[9] As described in my report for Track 2 Defendants, Medicare's Hospital reimbursement is not based on AWP – whether a patient is treated on an inpatient or outpatient basis.[10]

16. Furthermore, for the Subject Drugs identified for Abbott, the products are most commonly used in hospitals, and Abbott but one of many companies that manufacture the products. It is not possible to determine the source of any particular administered product based on the reimbursement and claims information provided by plaintiffs, and there is therefore no evidence that the Subject Drug administered during the drug encounter was even manufactured or sold by Abbott.

17. In sum, as to proposed Class 1, I conclude that it is infeasible to certify this class against Abbott. Plaintiffs have not proposed a Class 1 representative who had a single drug encounter for an Abbott Subject Drug within the definition of Class 1. Regardless, it would not be feasible to assess plaintiffs' Class 1 allegations on a class-wide basis for Abbott Subject Drugs due to, among other issues, the impossibility of determining if a given drug administered was sourced from Abbott versus some other source, and the impossibility of showing that reimbursement for any given drug encounter was based on the AWP associated with an Abbott NDC for the multi-source drug.

---

[8] I have analyzed Abbott Direct and Indirect Sales Data (Bates Range ABT AWP/MDL 072220- 072232) and determined that Abbott did not sell this product ▮

[9] See Affidavit of Michael Sellers dated June 14, 2006.

[10] See Young Track 2 Report, dated June 15, 2006.

HIGHLY CONFIDENTIAL

### III. PROPOSED CLASS 2

18. Plaintiffs have identified the Sheet Metal Workers National Health Fund ("Sheet Metal Workers") as the proposed class representative for Abbott for Class 2.

19. I have analyzed the Randle Affidavit[11], which details transactions allegedly involving Abbott Subject Drugs for Sheet Metal Workers.

20. As shown in Exhibit 4-B of my Track 2 report, my analysis of the 10 drug encounters named for Abbott by Sheet Metal Workers establishes that:

- 2 of the drug encounters ███████████████████████ occurred after January 1, 2005[12], at which time Medicare converted to an ASP-based reimbursement structure. Reimbursement was not based on AWP.
- 6 of the drug encounters ███████████████████████ ███████████████████ were in connection with a hospital outpatient visit reimbursed under the Medicare Hospital Outpatient Prospective Payment System (Hospital OPPS) and not under the Medicare Part B physician fee schedule. Hospital OPPS never requires a patient co-payment based on AWP for the Subject Drug.
- The remaining 2 transactions (related to the multi-source drugs ███████████████████████████████████) were administered on October 4, 2004 and August 5, 2004. Abbott did not sell or market these drugs at this time[13].

21. In sum, as to proposed Class 2, I conclude that it is not feasible to certify this class against Abbott. Plaintiffs have not proposed a Class 2 representative who had a drug encounter for an Abbott Subject Drug within the definition of Class 2. Regardless, it is not feasible to assess plaintiffs' Class 2 allegations on a class-wide

---

[11] Mr. Glenn Randle, a member of the Board of Trustees for the Sheet Metal Workers, submitted his Affidavit dated May 4, 2006 which identified the drug claims that Sheet Metal Workers advances in support of its claims against specified Track 2 Defendants.

[12] I have included this category because the named Plaintiff specifically cited 2005 transactions in support of their claims against Defendants. The plaintiffs provided documentation related to ASP based transactions, so I have included the transactions to establish a complete record of transactions for named plaintiffs provided in discovery associated with the defendant to avoid future confusion regarding these transactions.

[13] *See* Affidavit of Joseph Fiske dated June 14, 2006.

**HIGHLY CONFIDENTIAL**

basis for the Subject Drugs identified for Abbott due to, among other issues, the impossibility of determining if a given drug administered was sourced from Abbott versus some other source, and the impossibility of showing that reimbursement for any given drug encounter was based on the AWP associated with an Abbott NDC for the multi-source drug.

## IV. PROPOSED CLASS 3

22. Plaintiffs have identified the Pipefitters Local 537 Trust Fund ("Pipefitters") as the proposed class representative against Abbott for Class 3.

23. I have analyzed the Hannaford Affidavit[14], which details transactions allegedly involving Abbott Subject Drugs for Pipefitters.

24. As described in my Track 2 report, to determine whether a given drug transaction falls within the proposed Class 3 definition, one must analyze both the facts of the transaction itself and the unique characteristics of the Third Party Payor ("TPP") involved in the transaction.

25. Pipefitters identified 20 claims for drugs that it identified as Abbott Subject Drugs. My analysis of these drug encounters shows that:

- 8 of these claims (40%) involved situations when the Pipefitters' records demonstrate that Pipefitters paid the provider nothing for the drug (or did not separately reimburse for the drug).
- An additional 2 claims (10%) involved situations in which the Pipefitters paid 100% of billed charges, which indicates that the reimbursement is not based on AWP.
- The remaining 10 encounters (50%) related to multi-source drugs for which Abbott is only one of many sources. I have found nothing in my analysis of the information provided by Pipefitters that suggests that reimbursement for the remaining 10 encounters was based on the AWP associated with Abbott's NDCs for the Subject Drugs.

---

[14] Mr. Charles Hannaford, the Fund Administrator for Pipefitters, submitted his Declaration dated March 8, 2006, which identified the drugs that Pipefitters claims as Track 2 Subject Drugs. A CD containing Blue Cross Blue Shield of Massachusetts ("BCBSMA") claims data related to Pipefitters was also provided with the Hannaford Declaration.

**HIGHLY CONFIDENTIAL**

- Furthermore, there is no evidence that Pipefitters reimbursements involved multi-source drugs purchased from Abbott, as opposed to some other source.

26. Moreover, my Track 2 report established that Pipefitters contracted with TPP Blue Cross Blue Shield of Massachusetts ("BCBSMA") to manage the care for its members and process medical benefit claims.[15] As shown in Exhibit 5a of my Track 2 report, BCBSMA had direct contracts with Abbott to purchase the Subject Drugs at amounts that were substantially below the AWPs associated with those products.

27. In fact, BCBSMA purchased Subject Drugs from Abbott through contracts dating back to 1996. These contracts included over 750 Abbott NDCs of which over 175 are associated with Subject Drugs.[16] These contracts allowed BCBSMA to purchase drugs from Abbott at deeply discounted prices. For its own business reasons however, BCBSMA elected to nevertheless reimburse providers at amounts significantly above those purchase prices.

28. In sum, as to proposed Class 3, I conclude that it is not feasible to certify this class against Abbott. Plaintiffs have not proposed a Class 3 representative that had a drug encounter for an Abbott Subject Drug within the definition of Class 3. Moreover, the proposed Class 3 representative, Pipefitters, contracted with TPP BCBSMA to process its claims and negotiate all provider reimbursement levels on its behalf. BCBSMA's clear understanding that it could (and did) buy Abbott Subject Drugs at deep discounts and well below the published AWP, eliminates any claim that Pipefitters was harmed by the reimbursement levels BCBSMA chose for Abbott Subject Drugs. In any event, the necessity of examining not only the facts and circumstances of each drug encounter, but also the knowledge and practices of each TPP involved in such an encounter, on an encounter by encounter basis, makes administration of proposed Class 3 as it relates to Abbott Subject Drugs infeasible.

---

[15] *See* the March 8, 2006 Declaration of Charles Hannaford that states "The Fund uses Blue Cross Blue Shield of Massachussets as its third-party administrator to process medical benefit claims for our plan members."

[16] *See* Bates Range ABT AWP/MDL 104841-104847 and ABT AWP/MDL 240755-240768.

**HIGHLY CONFIDENTIAL**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 15, 2006.

*[signature]*
Steven J. Young

FILED
IN CLERKS OFFICE

2006 JUN 15 P 3:34

U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Civil Action No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO THE CLASS ACTION | Judge Patti B. Saris |

### AFFIDAVIT OF MICHAEL W. SELLERS IN SUPPORT OF ABBOTT LABORATORIES, INC.'S INDIVIDUAL MEMORANDUM OF LAW IN OPPOSITION TO TRACK 2 CLASS CERTIFICATION

1. My name is Michael W. Sellers. I am above the age of twenty-one (21), of sound mind, and capable of making this affidavit. From 1974 until April 2004, I was employed by Abbott Laboratories ("Abbott").

2. From approximately February 2000 through April 2004, I was the General Manager of Contract Marketing, for Abbott's Hospital Products Division. I have personal knowledge of the facts set forth below, and could testify to them if called as a witness.

3. I have been advised that the proposed class periods run from 1991 to the present. I have also reviewed the list of Abbott NDCs indentified in the "Table of Subject Drugs" attached to plaintiffs' motion for class certification ("Abbott Subject Drugs").

4. From 1991 to 2004, any sales of Abbott Subject Drugs were by Abbott's former Hospital Products Division. These drugs were hospital products, meaning that they were primarily, if not exclusively, administered in a hospital setting. The vast majority of such drugs were sold by Abbott's former Hospital Products Division to hospitals or hospital outpatient clinics.

5. The Abbott Subject Drugs are multi-source drugs, meaning they were made and distributed by many sources, of which Abbott was only one.

- 1 -

CHI-1538385v1

6.    The sales data produced to the plaintiffs in this case for Abbott Subject Drugs formerly sold by Abbott's Hospital Products Division reflects the customers purchasing products from Abbott. Based on a search of that data, one could determine whether Abbott sold a particular drug product to a particular customer.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of June, 2006.

_____
Michael W. Sellers

SWORN TO AND SUBSCRIBED BEFORE ME
This 14th day of June ~~2005~~ 2006.
                          A.E.

_____
NOTARY PUBLIC
State of Illinois

"OFFICIAL SEAL"
NANCY A. ESP
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/25/2009

- 2 -

CHI-1538385v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Civil Action No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO THE CLASS ACTION | Judge Patti B. Saris |

### AFFIDAVIT OF JOSEPH FISKE IN SUPPORT OF
### ABBOTT LABORATORIES, INC.'S INDIVIDUAL MEMORANDUM OF LAW
### IN OPPOSITION TO TRACK 2 CLASS CERTIFICATION

1.  My name is Joseph Fiske. I am above the age of twenty-one (21), of sound mind, and capable of making this affidavit.

2.  I have been employed by Abbott Laboratories ("Abbott") for the past 24 years, and I am authorized by Abbott to give this affidavit. I have personal knowledge of the facts set forth below, and could testify to them if called as a witness.

3.  From approximately 2002 through the present, I have served as Director, Pricing and Planning for Abbott's Pharmaceutical Products Division ("PPD"). In that capacity, I have been familiar with Abbott's entire line of drug products.

4.  Abbott no longer sells the vast majority of hospital products sold through its former Hospital Products Division. In particular, Abbott has not sold either ▮▮▮▮ or ▮▮▮▮ since at least April 30, 2004.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of June, 2006.

_____
Joseph Fiske

CHI-1537977v1

SWORN TO AND SUBSCRIBED BEFORE ME
This 14th day of June 2005

_____
NOTARY PUBLIC
State of Illinois

```
OFFICIAL SEAL
DEBRA LYNN DEYOUNG
Notary Public – State of Illinois
My Commission Expires 4/24/2010
```

CHI-1537977v1