FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 ) ) CIVIL ACTION: 01-CV-12257-PBS ) ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) |

## DEFENDANT PHARMACIA'S INDIVIDUAL MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION

In order to fall within the class definitions and to establish standing to pursue claims against Pharmacia,[1] each proposed representative must demonstrate that they (a) made some payment, (b) for a Pharmacia product at issue, (c) during the relevant period, that was (d) based on a published AWP for Pharmacia's product. None of the proposed class representatives can make such a showing with regard to Pharmacia. The evidence in the case suggests that all of the reimbursements on which the proposed class representatives base their claims against Pharmacia were either (a) for a product manufactured by a company other than Pharmacia, (b) were not based on AWP, or (c) were based on a published AWP for another manufacturer's product.

Moreover, no proposed class representative is alleged to have made any payments at all for a majority of the Pharmacia products at issue. Classes cannot be certified as to those products because no party has even a potential claim of injury arising from purchases of those products. Purchases of other Pharmacia products is not sufficient.

Because there is no class representative with standing to pursue claims against Pharmacia, class certification should be denied for all claims asserted against Pharmacia.

---

[1] References in the text to "Pharmacia" are intended to encompass both Pharmacia Corp. and Pharmacia & Upjohn, Inc.

1-WA/2584216.1

FILED UNDER SEAL

## ARGUMENT

### I. PLAINTIFFS HAVE NOT ESTABLISHED THE STANDING OF THEIR PROPOSED PHARMACIA REPRESENTATIVES.

Individual standing is a threshold issue for all actions, including class actions. *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991). As the Supreme Court has instructed, the fact "that a suit may be a class action . . . adds nothing to the question of standing, for even named Plaintiffs who represent a class must allege *and show* that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citations and internal quotation marks omitted) (emphasis added). Unless the proposed class representatives offer sufficient evidence to "demonstrate the requisite case or controversy between themselves personally and [defendants], none may seek relief on behalf of himself or any other member of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (citation and quotations omitted).

Plaintiffs fail to meet this burden, as none of the proposed representatives for the putative Pharmacia Subclasses have standing to assert AWP-based claims against Pharmacia. In fact, their claims do not even fall within the proposed class definitions. Consequently, none are adequate or typical representatives of Plaintiffs' proposed Pharmacia subclasses.

#### A. Larry Young Cannot Adequately Represent Claims Against Pharmacia.

The claims of Larry Young, the proposed Class 1 representative for Pharmacia, are based on two prescriptions given to his wife, Patricia Young.[2] Declaration of Donald Haviland

---

[2] Plaintiffs also propose Harold Bean as a class representative for Class 1 claims against Pharmacia. The documents supporting Plaintiffs' motion for class certification suggest that Mr. Bean's claims against Pharmacia suffer from the same problems as the other proposed class representatives, but the Track 2 Defendants have not had an opportunity to take any discovery in relation to Mr. Bean due to Mr. Bean's

1-WA/2584216.1                                              2

FILED UNDER SEAL

("Haviland Decl.") ¶¶ 8-12 (attached to Plaintiffs' May 8, 2006 Brief in Support of Class Certification). Both prescriptions are for ███████████████████, a multi-source product used to treat ███████. Discovery demonstrates that these claims do not meet the class definition, and that they are subject to potentially unique defenses, rendering Mr. Young an inadequate and atypical class representative.

The documents produced by Plaintiffs reveal that were not based on the AWP for Pharmacia's version of ███, known as ███████ Expert Declaration of Steven J. Young ("Steve Young Decl.") ¶ 32 (attached to the Track 2 Defendants' Joint Opposition to Class Certification). The following chart shows the (lack of) relationship between the published AWPs relating to ███████ and the two Medicare Part B reimbursements on which Mr. Young's claims against Pharmacia rest:

| Service Date | Allowed Amount | Young's Responsibility | NDC AWP Range[3] | Correlation between AWP to Allowed Amount (%) |
|---|---|---|---|---|
| 3/3/03 | ███ | ███ | ███ | 51 – 87 % |
| 2/2/04 | ███ | ███ | ███ | 46 – 78 % |

Given that the Medicare Part B reimbursements for multiple-source products should be at 95% of the median AWP for all equivalent multiple-source products, it is evident that the reimbursements for these ███████ encounters were not based on the published AWPs for Pharmacia's products. *See also* Steve Young Decl. Ex. 7, ¶ 29. Therefore, these reimbursements do not fall within the proposed Class 1 Definition.

---

extremely late addition to the case. A separate submission relating to Mr. Bean may be filed after discovery is taken. Plaintiffs have no other putative Class 1 representative for Pharmacia.

[3] The Table of Subject Drugs attached to the FAMCC identifies several different NDCs for the dosage of ███ ███ corresponding to the J-code used for the reimbursements at issue.

In addition to these shortcomings, Mr. Young's ▇ claims are also subject to unique defenses. The doctor who prescribed and administered HSS to Mrs. Young produced invoices showing that he paid ▇ for each 100 mg dose of ▇.[4] The allowed amount for the March 3, 2003 prescription was ▇, meaning that Ms. Young's doctor made only ▇ on the prescription. That is roughly 11% of the doctor's acquisition cost. Given Plaintiffs' experts' stated opinion that the market expected a 30% spread between AWPs and acquisition costs, this transaction obviously cannot be used to establish liability against Pharmacia.

The story relating to the second prescription is even more stark. There, the doctor was reimbursed ▇ for a prescription that cost him ▇ to purchase. In other words, the doctor *lost money on the prescription*. Obviously, the AWP forming the basis for this reimbursement was not "inflated" relative to the doctor's acquisition cost. Given the circumstances surrounding the transactions underlying Mr. Young's claims, he cannot serve as an adequate or typical class representative of Class 1 Pharmacia subclass. *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260-64 (D. Mass. 2005) (finding that unique defenses may render a proposed class representative atypical).

### B. SMW Lacks Standing To Assert Claims Against Pharmacia.

Plaintiffs' proposed Class 2 Representative, Sheet Metal Workers Health & Welfare Benefit Fund ("SMW"), also lacks standing to assert claims against Pharmacia. SMW's claims against Pharmacia relate to four reimbursements for J-codes that correspond to the following multi-source products produced by Pharmacia: ▇. *See* Randle Aff. Exh. 3(k) (attached to Plaintiffs' May 8, 2006 Brief in Support of Class

---

[4] Documents produced by Plaintiffs reveal that ▇ where Mrs. Young, was administered ▇, was charged ▇ for 500 mg units of ▇ throughout the relevant time period. *See, e.g.*, YOUNG 0892, 0902. ▇ thus paid ▇ for the 100 mg units of ▇ administered to Mrs. Young. Pharmacia has no record of any chargebacks provided to the ▇ for Solu-Cortef. *See* Declaration of Steven Roh ("Roh Decl.") ¶ 3.

**FILED UNDER SEAL**

Certification). Because equivalent products are also produced by other manufacturers and reimbursed under the same J-code, Plaintiffs again have the burden of demonstrating that these prescriptions in fact involved Pharmacia products. *See Warth*, 422 U.S. at 502. Plaintiffs have failed to meet this burden. Indeed, the evidence is to the contrary. A thorough search of Pharmacia's sales and chargeback records confirms that Pharmacia never sold any of these products to the two providers identified in the SMW documents. *See* Roh Decl. ¶¶ 4-5.

### C. Pipefitters Lacks Standing to Pursue Claims Against Pharmacia.

A summary chart produced by Pipefitters, the proposed Class 3, representative indicates that Pipefitters made reimbursements for J-codes corresponding to the following multi-source Pharmacia products: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Evidence produced in discovery demonstrates that these reimbursements were not based on the published AWPs for Pharmacia's products.

According to the data, all of the reimbursements that Pipefitters made for the J-code corresponding to ▓▓▓▓▓▓ were at the provider's billed amount, which generally means that they were not based on AWP. *See* Steve Young Decl. ¶¶ 93-94. Likewise, nearly all of the reimbursements for the J-code corresponding to ▓▓▓▓▓▓ were made at the billed amount, which was far in excess of the published AWPs for the dosages of Pharmacia's products corresponding to the J-code for each reimbursement.

Pipefitters paid ▓▓ for each of the two reimbursements for J-codes corresponding to ▓▓▓▓▓▓▓ that were not made at the billed amount. Though that amount was far below the billed amount, it was also far below the published AWP for Pharmacia's ▓▓▓▓▓▓ at the time ▓▓▓▓. The evidence thus demonstrates again that the reimbursed amount for these prescriptions was not based on published AWPs for Pharmacia's products.

FILED UNDER SEAL

Pipefitters made only one reimbursement for the J-code corresponding to ▇▇▇▇. Pipefitters reimbursed ▇▇▇ for a single prescription that was billed by the provider at ▇▇▇. All of the published AWPs for potentially relevant Pharmacia products, however, were greater than ▇▇▇ at the time of this reimbursement, meaning that the reimbursement was, at most, 55% of the published AWPs for Pharmacia's products.

The following chart compares the allowed amount for the prescriptions underlying Pipefitters' claims against the published AWPs for the relevant Pharmacia products during the relevant time period.

| Subject Drug | Year | Allowed Amount | AWPs[5] | Relationship to Allowed Amount (% of AWP) |
|---|---|---|---|---|
| ▇▇▇ | 1998 | ▇▇▇ | ▇▇▇ | 267% |
| | 1995 | ▇▇▇ | ▇▇▇ | 7.8% |
| | 1998 | ▇▇▇ | ▇▇▇ | 142% |
| | 2000 | ▇▇▇ | ▇▇▇ | 123% |
| | 2001 | ▇▇▇ | ▇▇▇ | 97% |
| | 2001 | ▇▇▇ | ▇▇▇ | 108% |
| | 2001 | ▇▇▇ | ▇▇▇ | 113% |
| ▇▇▇ | 1999 | ▇▇▇ | ▇▇▇ | 55 % |
| ▇▇▇ | 1999 | ▇▇▇ | ▇▇▇ | 63 % |
| | 2000 | ▇▇▇ | ▇▇▇ | 57% |
| | 2001 | ▇▇▇ | ▇▇▇ | 52% |

As the chart demonstrates, there is no consistent relationship between the allowed amount charged for any of these prescriptions and the published AWPs for the three Pharmacia products that corresponded to the J-codes used for Pipefitters' reimbursements.

Although Medicare was reimbursing for these multiple-source drugs at 95% of the median AWP for all equivalent products during the period that these prescriptions were made,

---

[5] According to the Fourth Amended Master C consolidated Class Action Complaint Rev. App A, 18.

[6] For one transaction, the allowed amount was equal to the billed amount ($9.32).

FILED UNDER SEAL

Pipefitters' reimbursements for the identified prescriptions ranged between 7.8% and 267% of the published AWPs for Pharmacia's products. Clearly, the amount that Pipefitters reimbursed for the claimed encounters was not based on the published AWPs for Pharmacia's products. As such, Pipefitters has no basis for asserting claims against Pharmacia.

## II.  No Class Representatives Are Identified for Several Pharmacia Drugs.

Plaintiffs do not allege that any proposed class representative ever purchased the following Pharmacia drugs purportedly at issue in this case: Amphocin, Toposar, Amphotericin B, Bleomycin Sulfate, Vincristine Sulfate, or Etoposide. As explained further in the Track 2 Defendants' joint opposition brief, a class representative may only represent class claims relating to the drugs for which they have standing—*i.e.*, those Pharmacia drugs for which they made reimbursements based on published AWPs for Pharmacia's products. *See In re Eaton Vance Corp. Securities Litig.*, 220 F.R.D. 162, 170 (D. Mass. 2004). Thus, classes should not be certified for these products.[7]

For instance, Mr. Young, who is alleged to have only made an AWP-based payment for Solu-Cortef, has no standing to represent claims relating to Toposar, Bleomycin Sulfate or any Pharmacia product other than Solu-Cortef. He could not have been injured by Pharmacia's marketing activities with regard to those other products, so he cannot represent class claims relating to those products. Each product is used to treat a different condition, each is in a different competitive situation, and each is marketed and sold in different ways. It would be inappropriate and inaccurate to generalize the facts relating to one Pharmacia drug in an attempt

---

[7] In addition to these Pharmacia products that no proposed class representative from any proposed subclass is alleged to have purchased, no Class 1 representative has been identified for Depo-Testosterone, Cytarabine, Adrucil, Neosar, or Adriamycin; no Class 2 representative has been identified for Depo-Testosterone, Solu-Cortef, Solu-Medrol; and no Class 3 representative has been identified for Adrucil, Neosar, Adriamycin, or Solu-Cortef. Certification is inappropriate for those claims as well.

FILED UNDER SEAL

to apply those facts to other Pharmacia drugs.[8] The "juridical link" doctrine cannot be stretched so far. *See, e.g., id.* (holding that while the juridical link doctrine may be expeditious, "Article III standing . . . does not often bend to expediency and the Supreme Court has warned against such an approach" (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). Consequently, the Court should not certify Subclasses for Pharmacia drugs that were not purchased by a proposed class representative.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Class Certification should be DENIED as to all claims against Pharmacia.

---

[8] A Plaintiff who purchased a drug from a given company lacks standing to represent a class of others who purchased a different drug from the same company if the pricing methodology differs from drug to drug. *See, e.g., Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198 (D. Mass. 2002) (finding class representative had standing for multiple ERISA plans of which he was not a participant only because the plan provisions were "*substantially the same*" and "the gravamen of the Plaintiff's challenge is to the *general practices [of the defendant] which affect all of the plans*" (citing *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410, 422 (6th Cir. 1998) (emphasis added)).

**FILED UNDER SEAL**

Dated June 15, 2006

Respectfully Submitted,

*[signature]*

Mark Smith
Laredo & Smith
15 Broad Street, Suite 600
Boston, MA 02109
617.367.7984 (Tel.)
617.367.6475 (Fax)

John C. Dodds
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5000 (Tel.)
215.963.5001 (Fax)

Scott A. Stempel
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
202.739.3000 (Tel.)
202.739.3001 (Fax)