# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | Chief Magistrate Judge Marianne B. Bowler |
| THE CLASS ACTION | ) | |

## DEFENDANT ABBOTT LABORATORIES' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR ASSESSMENT OF DISCOVERY RELATED COSTS AGAINST DEFENDANT ABBOTT LABORATORIES

Plaintiffs' Motion to Compel and for Assessment of Discovery Related Costs is improper and unnecessary.  It should be denied for two principal reasons:

- This is a large class action, and Plaintiffs' document requests have been as expansive as one might expect.  Plaintiffs should not now be heard to complain that they got what they asked for:  Abbott has produced hundreds of thousands of documents in compliance with these requests.  Nor should Plaintiffs' counsel be permitted to shift the cost to review these documents to Abbott or its lawyers – Plaintiffs' counsel are experienced class action lawyers, and they know full well it is their responsibility to review the documents they asked for.

- Despite the breadth of Plaintiffs' discovery requests, Abbott has worked diligently over the course of many months to produce documents to Plaintiffs.  Abbott continues to do so; it has not refused to produce any of the categories of documents complained of in Plaintiffs' motion; and indeed, are in agreement with respect to the production, to the extent they exist, of any additional relevant documents.

Since there really is no remaining discovery dispute here, Abbott cannot understand why Plaintiffs have refused to withdraw this motion.  There is nothing in the Federal Rules that permits Plaintiffs to seek costs when discovery does not yield the smoking guns they had hoped for.  The motion is baseless and should be denied.

## I.    Plaintiffs Are Not Entitled To Discovery-Related Costs.

Plaintiffs, after serving over 80 requests for documents, now allege that Abbott has "unnecessarily prolonged this proceeding" by causing Plaintiffs to search through "hundreds of

thousands of 'document dump' pages in Abbott's production" and by not producing "meaningful documents." (Motion at 1; *See* Pls.' Ex. A (listing 82 separate broad discovery requests grouped into eleven categories).)  Conceding that their request is "unusual," Plaintiffs nevertheless ask this Court, pursuant to 28 U.S.C. § 1927, to assess "discovery-related costs against defendant Abbott Laboratories."  (*Id.* at 1, 7.)  Section 1927 does not authorize the relief Plaintiffs seek, and this Court should, therefore, deny Plaintiffs' request for costs.[1]

### A.    Neither Abbott Nor Its Counsel Have Multiplied These Proceedings Vexatiously and Unreasonably.

Plaintiffs raise two issues that they believe require sanctions under § 1927: (1) an alleged "document dump" of "largely irrelevant documents" (Motion at 7); and (2) the alleged failure of Abbott to produce "five categories of highly relevant documents."  (*Id.*)  In support of sanctions, Plaintiffs offer only their bare assertion that Abbott has engaged in "discovery abuse."  That is not nearly enough to merit the sanctions they seek; section 1927 requires Plaintiffs to show that Abbott's counsel have "multiplie[d] the proceedings . . . unreasonably and vexatiously," thereby causing Plaintiffs to have incurred "excess costs."  Plaintiffs have not done that, nor can they.

Although section 1927 does not itself define what conduct is sanctionable, courts narrowly construe § 1927 to authorize sanctions only for conduct amounting to an abuse of the judicial process.  *See Roadway Express*, 447 U.S. at 761-62; *EEOC v. Tandem Computers, Inc.*,

---

[1] Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  By its terms, § 1927 authorizes sanctions against counsel, not against a non-attorney litigant like Abbott. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757 (1980) ("[Section] 1927 deals only with attorney conduct and involves taxing costs against counsel."); *see also Chambers v. Nasco*, 501 U.S. 32, 48 (1991) (noting that § 1927 "says nothing about a court's power to assess fees against a party"); *Bolivar v. Pocklington*, 975 F.2d 28, 33 n.13 (1st Cir. 1992); *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991) ("[Section] 1927 . . . does not permit the court to sanction a party.").  Yet Plaintiffs unambiguously seek to have costs assessed against Abbott.  (*See, e.g.*, Motion at 1 (seeking "assessment of discovery-related costs against defendant Abbott Laboratories"); id. at 8 (arguing that sanctions "act as a deterrent to . . . litigants") (emphasis added)).  Because § 1927 does not authorize what Plaintiffs seek, this Court can and should deny plaintiffs' request for costs on that basis alone.

158 F.R.D. 224, 227 (D. Mass. 1994) ("[T]he intent of . . . § 1927 is to eliminate flagrant abuses of the litigation process."); *see also United States v. Kouri-Perez*, 187 F.3d 1, 7-8 (1st cir. 1999) (describing § 1927 sanctions as "punitive in nature" and noting that courts normally should "deploy[] the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes").  Courts require more than "mere negligence, inadvertence, or incompetence."  *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990); *see also McLane v. Rechberger*, 280 F.3d 26, 44 (1st Cir. 2002).  Indeed, they require, at a minimum, a showing of a "display[] [of] serious and studied disregard for the orderly process of justice."  *Cruz*, 896 F.2d at 632; *Wallace*, 964 F.2d at 1220.  In short, the conduct of Abbott's counsel must have been reckless or deliberately indifferent.  *See Wallace*, 964 F.2d at 1219-20.  Recklessness is "a high threshold," and "in general requires deliberate action in the face of a known risk, the likelihood or impact of which the [attorney] inexcusably underestimates or ignores."  *Id.*[2]

Viewed under this rubric, Plaintiffs' sanctions request is untenable.  Abbott and its counsel have throughout the discovery process acted in good faith to comply with Plaintiffs' discovery requests.  (*See infra* Sec. II.)  Abbott is not refusing to produce any of the categories of documents Plaintiffs complain about, and indeed, have addressed Plaintiffs' concerns as to each of those categories.  Nor are Plaintiffs' allegations of a "document dump" tenable.  This is a big case, Plaintiffs cast a wide net, and they should not now be heard to complain that they got what they asked for.  The request for sanctions should be denied.

---

[2] The cases Plaintiffs cite do not compel a different conclusion.  In none of these cases does the sanctionable conduct even remotely resemble the conduct of Abbott or Abbott's counsel here.  For example, in *Beh-Hanson*, the sanctioned counsel made no "reasonable inquiry regarding the existence of responsive documents" and simply continued to deny their existence even during a hearing on a motion to compel, thus causing the opposing party and the court to expend time unnecessarily.  *Beh-Hanson*, 2004 U.S. Dist. LEXIS 27732, at *22.  In *Cruz*, counsel was sanctioned for refusal to produce evidence that the client admitted holding and for "continually engag[ing] in obfuscation of the issues, hyperbolism, and groundless assumptions."  896 F.2d at 634.  And in *Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009 (2d Cir. 1988), the sanctioned counsel refused to resolve discovery disputes informally, forced opposing counsel to file motions with the court, and then "mysteriously" turned over the requested discovery after the filing of each motion.  *Id.* at 1019.

**B.      Plaintiffs Cannot Show That They Have Incurred "Excess Costs."**

Even if Plaintiffs could somehow demonstrate that Abbott's counsel have engaged in misconduct (and they cannot), § 1927 requires that "excess costs" be incurred as a result of the alleged misconduct.  Plaintiffs claim that that they have incurred "significant" costs to search and review the documents produced by Abbott, and that Abbott has yet to produce "highly relevant documents."  (Motion at 9.)

For reasons already discussed, it is difficult to see how Plaintiffs have incurred "excess costs" in reviewing the many thousands of pages of documents that Abbott has produced in this case.[3]  Given the breadth of Plaintiffs' discovery requests, and the complex nature of this case, any discovery costs Plaintiffs have incurred are the cost of doing business in complex litigation cases like this one.  *See Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991) ("Under the 'American rule,' each party must bear its own expenses during litigation.").  Plaintiffs make broad allegations about incurring "unnecessary" costs to review the so-called "document dump," but have not explained why they would not have had to incur those same costs in the ordinary course.

At bottom, Plaintiffs' Motion is nothing less than an improper attempt to have Abbott's counsel "pick up the tab" for *all* of Plaintiffs' discovery-related costs.  But § 1927 authorizes sanctions only for specific misconduct and the resulting excess costs, not the wholesale shifting of costs Plaintiffs seek here.  *See Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993) ("[T]he sanction should reflect only the costs . . . incurred in responding to those proceedings that are

---

[3] Plaintiffs' description of Abbott's production as a "document dump" makes it appear as if Abbott simply dropped hundreds of boxes of documents at Plaintiffs' doorstep to wade through.  In fact, Abbott produced the documents on CD-ROM as tiff images.  This type of production was much more expensive and time consuming for Abbott.  Thus, Plaintiffs complaint that it was costly for them to review and organize the documents ignores the fact that it was even more costly for Abbott to collect, review, image and produce these documents in response to Plaintiffs' broad document requests.

found to be unreasonable or vexatious."); *Browning*, 931 F.2d at 346; *see also Wallace*, 964 F.2d at 1221 n.6 (noting that there must be a "reliable measure" of costs incurred, and costs that would have been incurred regardless of the misconduct should not be included in sanctions).

Plaintiffs' real complaint with Abbott's production is that it has not unearthed the proverbial "smoking gun."  The fact that Plaintiffs do not have such a document or documents (which simply do not exist) speaks to the merits of Plaintiffs' case, but says nothing about whether Abbott's counsel have engaged in sanctionable discovery misconduct.  Plaintiffs point to no authority to support the view that § 1927 authorizes sanctions to reimburse their costs when produced documents prove disappointing to Plaintiffs, but were nevertheless responsive to their discovery requests.[4]

## II.     Abbott's Document Production and Other Discovery.

Abbott's document production has been made in good faith in response to Plaintiffs' massive document requests as well as in response to this Court's various orders.  Abbott has also provided Plaintiffs with significant information on an informal discovery basis as well as produced witnesses for depositions.  The following is a summary of Abbott's discovery efforts:

- Abbott made its initial production in 2002 of approximately 50,000 pages of documents pursuant to Case Management Order 5 ("CMO 5").  (*See* June 29, 2006 Declaration of Beth A. O'Connor ("O'Connor Decl."), Exhibit 1 at ¶ 3).

- Abbott produced sales transaction data for the Abbott drugs named in the AMCC on July 16, 2004 and July 23, 2004.  (*Id.* at ¶4).

---

[4]  Plaintiffs appropriately consign to a footnote their throw-away argument that sanctions are appropriate under other provisions, such as Rule 37 and the court's inherent authority.  These provisions do not support sanctions here.  Rule 37 sanctions require that the Court first issue an order compelling discovery.  *See Mems v. City of St. Paul*, 327 F.3d 771, 779 (8th Cir. 2003).  Likewise, sanctions pursuant to the Court's inherent powers require finding that Abbott or its counsel have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *McLane*, 280 F.3d at 42.  As plaintiffs cannot show that Abbott or its counsel meet the lesser threshold for sanctions under § 1927, they certainly cannot show that sanctions under the Court's inherent powers are justified here and have provided no argument to the contrary.

- Plaintiffs did not pursue discovery from Abbott again until May 2005. (*Id.* at ¶5, Ex. A).

- On May 25, 2005, Plaintiffs' counsel and Abbott's counsel engaged in a meet and confer telephone conference regarding document production issues and thereafter exchanged letters regarding the issues discussed during this conference. (*Id.* at ¶¶6-7, Exs. B, C).

- On June 6, 2005, Abbott produced organizational charts and a CD-ROM of documents pursuant to CMOs 5 and 10. (*Id.* at ¶8, Ex. D).

- On June 8, 2005, Abbott produced additional CD-ROMs containing documents pursuant to CMOs 5 and 10. (*Id.* at ¶9, Ex. E).

- On June 10, 2005, Abbott produced four additional CD-ROMs pursuant to CMOs 5 and 10. (*Id.* at ¶10, Ex. F).

- On June 13, 2005, Abbott produced the last five CD-ROMs pursuant to CMOs 5 and 10 as well a codes table informally requested by Plaintiffs to help their experts understand Abbott's electronic sales data. (*Id.* at ¶11, Ex. G).

- On or about July 26, 2005, at Plaintiffs' request, Abbott's counsel engaged in a telephone conference to provide descriptions of the sales force structure of Abbott's Pharmaceutical Products Division and its former Hospital Products Division. (*Id.* at ¶13, Ex. H).

- On August 11, 2005, Abbott voluntarily allowed Plaintiffs' experts to conduct informal interviews of three of Abbott's IT personnel to assist in understanding the electronic sales data produced to Plaintiffs. (*Id.* at ¶14, Exs. I, J).

- In August 2005, Abbott and Plaintiffs agreed on a date for a 30(b)(6) deposition of Abbott. Plaintiffs agreed that this deposition -- noticed to cover topics related only to the identification of documents – should be postponed so that Plaintiffs could take a substantive deposition. (*Id.* at ¶15, Ex. K).

- On August 29, 2005, Abbott produced a CD-ROM containing an additional documents in response to Plaintiffs' document requests. (*Id.* at ¶16, Ex. L).

- Abbott made additional document productions to Plaintiffs November 4, 2005, November 11, 2005, November 18, 2005, November 23, 2005, December 2, 2005 and December 9, 2005. (*Id.* at ¶17, Ex. M). In addition, on November 11, 2005, Abbott provided Plaintiffs with deposition transcripts and exhibits of several Abbott individuals taken in other AWP cases. (*Id.*)

- In December 2005, Plaintiffs took the depositions of three Abbott witnesses, including a 30(b)(6) deposition. Before these depositions occurred, Plaintiffs

canceled five other depositions of Abbott individuals that had been previously noticed and scheduled.  (*Id.* at ¶18, Ex. N).

- On December 13, 2005, Abbott sent a letter responding to several questions posed by Plaintiffs relating to Abbott's sales data which were not raised during the three interviews of Abbott IT individuals conducted in August.  Abbott also provided additional documents to assist Plaintiffs in understanding the sales data.  (*Id.* at ¶19, Ex. O).

- Abbott made additional document productions to Plaintiffs on December 16, 2005, December 23, 2005, December 30, 2005, January 6, 2006, January 13, 2006, January 20, 2006, January 27, 2006, and January 31, 2006. (*Id.* at ¶20, Ex. P).

- On January 25, 2006, Abbott and Plaintiffs engaged in a meet and confer telephone conference to discuss production issues.  On February 8, 2006 Abbott responded by letter to issues raised during this conference.  (*Id.* at ¶21, Ex. Q).

- On February 28, 2006, Abbott sent another letter following up on its earlier letter and provided Plaintiffs with additional documents and information requested by Plaintiffs. (*Id.* at ¶22, Ex. R).

- On March 10, 2006, Abbott produced Code of Conduct documents to Plaintiffs. (*Id.* at ¶23, Ex. S).

- On April 5, 2006, Abbott produced electronic documents to Plaintiffs in response to Plaintiffs' document requests.  (*Id.* at ¶24, Ex. T).

- On April 18, 2006, Abbott produced IMS data to Plaintiffs as well as made an additional production of electronic documents.  (*Id.* at ¶25, Ex. U).

- On June 12, 2006, Abbott produced Calcijex related sales documents and Plan and Update documents.  (*Id.* at ¶26, Ex. V).

- To date, Abbott has produced almost 250,000 pages of documents (in addition to thousands of documents previously produced pursuant to CMOs 5 and 10).  (*Id.* at ¶27).  Abbott will continue to produce any responsive and relevant documents to the extent they exist.

Even a cursory review of Abbott's document production history and other discovery related efforts reveals that Abbott has been diligent in responding to Plaintiffs' discovery requests.  Abbott has not refused to produce responsive and relevant documents to Plaintiffs. Abbott's production has included, but is not limited to, the following types of documents:

contracting files; price lists and catalogs; correspondence to the pricing compendia; national

sales data; rebate data; sales force reports; marketing documents; e-mails; IMS data; Calcijex

sales documents; business strategy plans and updates; Codes of Conduct; and organizational

charts.  Thus, Abbott has produced relevant documents and Plaintiffs' request for discovery

related costs is completely overreaching and should be denied.

### III.    The Parties Have Reached Agreement With Respect To The Five Document Categories That Plaintiffs Seek to Compel.

Plaintiffs' Motion seeks to compel Abbott to produce five categories of documents:  1)

Calcijex-related sales documents; 2) "Plan and Update" documents; 3) sales documents; 4) high-

level marketing documents and strategy documents; and 5) a supplemented e-mail production or

an explanation of why one cannot be provided.  (Motion at p. 1.)  Abbott has not refused to

produce any of these documents and has, in fact, produced relevant documents and/or provided

the requested explanation with respect to all five categories.  Indeed, Abbott and Plaintiffs

engaged in discovery conferences on June 15, 2006 and June 23, 2006.  (*See* Exhibit 1 at ¶28.)

During these conferences, Abbott addressed the five categories of documents discussed in

Plaintiffs'.  These discussions have rendered Plaintiffs' Motion to compel the production of these

documents moot.

#### A.    Calcijex Related Sales Documents

Calcijex has not been promoted by Abbott since approximately mid-1998 and, as a

consequence, Abbott has not maintained a sales force that promoted Calcijex for many years.

Abbott has undergone the effort to collect, review and produce to Plaintiffs all relevant Calcijex

sales documents.  Abbott's Calcijex production, though limited, is complete.[5]  There is nothing

for this Court to order Abbott to produce.

---

[5] Abbott's remaining Calcijex sales related documents will be produced to Plaintiffs on June 30, 2006.

### B.      Plan and Update Documents

Abbott has agreed to produce responsive "Plan and Update" documents and has produced all such documents that have been located after a thorough search.  Abbott has agreed to supplement its production of this category of documents should additional documents become available.  Again , there is no issue related to this category of documents and there is nothing for the Court to order Abbott to produce.

### C.      Sales Documents

Abbott has represented that it has provided Plaintiffs with the sales documents related to the Abbott Subject Drugs in the AMCC.  As Plaintiffs are aware, most sales of these drugs are made to hospitals, which do not reimburse based on AWP.  Thus, Abbott's production has been limited to the Alternate Site sales force (sales outside of the hospital setting).  While the production for these types of documents may not have been as voluminous as Plaintiffs had hoped, they have been produced.  Once again, there is nothing for this Court to order Abbott to produce.

### D.      High Level Marketing and Strategy Documents

Abbott has conducted a search for "high level marketing or strategy" documents, produced those documents it has located and identified (by bates number) other documents previously produced to Plaintiffs falling into this category.  While Abbott agreed to produce any additional relevant documents to the extent they exist, at this time, Abbott's production of documents for this category is complete.

### E.      Abbott's E-Mail Production

Abbott undertook, at significant cost, to restore back up e-mail tapes for its production of documents in this case.  Abbott consulted with Plaintiffs in advance of its e-mail search and the parties agreed upon a list of search terms.  Plaintiffs have advised Abbott that they will review

the production and advise Abbott of any "gaps".  Abbott has also agreed to provide Plaintiffs

with a list of e-mail custodians.  At this time, there are no outstanding issues between the parties

as to Abbott's email production.

As the Court can see, Abbott has in good faith addressed all of Plaintiffs' issues related to

the five categories of documents that are the subject of their Motion.  Abbott has not refused to

produce anything relevant to Plaintiffs' case and, in fact, is making every effort to make sure that

such a production is complete.  Since there is nothing for this Court to order Abbott to produce,

this portion of Plaintiffs' Motion is moot and should be denied.  It follows that the award of

discovery related costs should be denied as well.

## CONCLUSION

Plaintiffs' Motion to Compel and For Assessment of Discovery-Related Costs should be

denied.

Dated:  June 29, 2006                                    Respectfully submitted,

                                                        /s/ Brian J. Murray
                                                        James R. Daly
                                                        Tina M. Tabacchi
                                                        Brian J. Murray
                                                        JONES DAY
                                                        77 West Wacker Drive, Suite 3500
                                                        Chicago, Illinois  60601
                                                        Telephone:  (312) 782-3939
                                                        Facsimile:   (312) 782-8585

                                                        Toni-Ann Citera
                                                        JONES DAY
                                                        222 East 41st Street
                                                        New York, New York  10017
                                                        Telephone:  (212) 326-3939
                                                        Facsimile:  (212) 755-7306

                                                        *Counsel for Defendant Abbott Laboratories*

## <u>CERTIFICATE OF SERVICE</u>

  I, Tara Fumerton, an attorney, hereby certify that I caused a true and correct copy of the foregoing DEFENDANT ABBOTT LABORATORIES' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR ASSESSMENT OF DISCOVERY RELATED COSTS AGAINST DEFENDANT ABBOTT LABORATORIES to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 29th day of June, 2006.

          /s/ Tara Fumerton
          Tara Fumerton