# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) ) ) ) THIS DOCUMENT RELATES TO ALL ACTIONS ) ) ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION: 1:01-CV-12257-PBS<br><br>Judge Patti B. Saris<br>Magistrate Judge Marianne B. Bowler |

**DECLARATION OF BETH A. O'CONNOR IN SUPPORT OF DEFENDANT ABBOTT LABORATORIES' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR ASSESSMENT OF DISCOVERY RELATED COSTS <u>AGAINST DEFENDANT ABBOTT LABORATORIES</u>**

I, Beth A. O'Connor, declare as follows:

1. I am one of the attorneys for Abbott Laboratories ("Abbott"). Since May 2005, I have engaged in discussions with various Plaintiffs' counsel, including, Jennifer Fountain Connolly, Kenneth Wexler and Amber Nesbitt, regarding Abbott's production of documents as well as overseen production of such documents and other discovery matters.

2. Over the past year, Plaintiffs' counsel and I have had, among other things, several discussions, written letters and e-mails back and forth, and arranged witness interviews relating to Abbott's discovery in this matter. A chronology of these events follows.

A.      **Abbott's Document Production**

3. In 2002, Abbott made its initial production of approximately 50,000 pages of documents pursuant to Case Management Order 5 ("CMO 5").

2

4. In July 2004, Abbott produced sales transaction data for the Abbott drugs named in the AMCC.

5. On or about May 18, 2005, after almost a year of inactivity and non-communication from Plaintiffs, Abbott's counsel received a letter from Plaintiffs' counsel regarding Abbott's document production. (*See* May 18, 2005 Letter from Jennifer Connolly to Toni-Ann Citera, attached as Exhibit A).

6. On May 25, 2005, counsel for Abbott, Toni-Ann Citera and I, engaged in a telephonic meet and confer with Ms. Connolly to discuss the issues raised in Ms. Connolly's letter.

7. On May 26, 2005, Ms. Connolly sent a letter purporting to memorialize our discussion from the previous day. (*See* May 26, 2005 Letter from Ms. Connolly, attached as Exhibit B). On May 27, 2005, I wrote a letter to Ms. Connolly to clarify certain issues raised in her May 26, 2005 letter. (*See* May 27, 2005 Letter from Beth O'Connor to Jennifer Connolly, attached as Exhibit C).

8. On June 6, 2005, I sent Ms. Connolly a letter regarding some additional issues raised in her May 26, 2005 letter. Pursuant to the June 6, 2005 letter, Abbott produced organizational charts, from which employees could be identified for email searches, as well as a CD-ROM containing documents pursuant to CMOs 5 and 10 as promised during our conversation on May 25, 2005. (*See* June 6, 2005 Letter from Beth O'Connor to Jennifer Connolly, attached as Exhibit D).

9. On June 8, 2005, Abbott provided a privilege log to Plaintiffs and produced additional documents pursuant to CMOs 5 and 10. (*See* June 8, 2005 Letter from Beth O'Connor to Jennifer Connolly, attached as Exhibit E).

10. On June 10, 2005, Abbott produced four additional CD-ROMs of documents pursuant to CMOs 5 and 10.  (*See* June 10, 2005 Letter from Beth O'Connor to Jennifer Connolly, attached as Exhibit F).

11. On June 13, 2005, as promised, Abbott produced five additional CD-ROMs of documents, thereby completing Abbott's production of documents pursuant to CMOs 5 and 10. In addition, in response to an informal request from Plaintiffs, Abbott produced code tables to help Plaintiffs' experts understand Abbott's sales data.  (*See* June 13, 2005 Letter from Beth O'Connor to Jennifer Connolly, attached as Exhibit G).

12. Many of the documents produced pursuant to CMOs 5 and 10 were also responsive to Plaintiffs' Omnibus Discovery Requests.

13. On or about July 27, 2005, at Plaintiffs' counsel's request, I had an extensive call with Ms. Connolly providing her with the information she informally requested regarding the sales force structure of Abbott's Pharmaceutical Products Division and its former Hospital Products Division.  (*See* July 26, 2005 E-mails to and from Beth O'Connor and Jennifer Connolly, collectively attached as Exhibit H).

14. On August 11, 2005, Abbott voluntarily made available three IT individuals for interviews by Plaintiffs' experts to discuss Abbott's electronic sales data interviews.  (*See* July 26, 2005 E-Mail from Ms. Connolly, attached as Exhibit I.)  These interviews were previously scheduled to take place on July 15, 200, but Plaintiffs canceled on July 13, 2005 because Plaintiffs' experts had not yet processed Abbott's sales data.  Ms. Connolly requested that the interviews be rescheduled for the second week of August.  (*See* July 13, 2005 E-mail from Jennifer Connolly to Beth O'Connor, attached as Exhibit J).

15. Also in August 2005, Abbott and Plaintiffs agreed on a date for a 30(b)(6) deposition of Michael Sellers. By agreement, this deposition, which was noticed to cover topics related only to the identification of documents, was postponed so that Plaintiffs could take a more substantive deposition of Mr. Sellers. (*See* August 17, 2005 Letter from Jennifer Connolly, attached as Exhibit K).

16. On August 29, 2005, Abbott produced a CD-ROM containing additional documents. (*See* August 29, 2005 Letter from Beth O'Connor, attached as Exhibit L).

17. Abbott made subsequent document productions to Plaintiffs on November 4, 2005, November 11, 2005, November 18, 2005, November 23, 2005, December 2, 2005, and December 9, 2005. (*See* November 4, 11, 18, and 23, 2005 and December 2, 2005 and December 9, 2005 Letters from Beth O'Connor, attached collectively as Exhibit M). The November 11, 2005 production also included several deposition transcripts and exhibits of Abbott individuals taken in other AWP cases. (*Id.*)

18. In December 2005, Plaintiffs took the depositions of three Abbott witnesses, Michael Sellers, Peter Karas, and Mark Sebree. Mr. Sellers deposition was a 30(b)(6) deposition. Before these depositions occurred, Plaintiffs canceled five other depositions of Abbott individuals that had been previously noticed and scheduled. (*See* December 12, 2005 Letter to Jennifer Connolly from Tina Tabacchi, attached as Exhibit N).

19. On December 13, 2005, I sent a letter responding to several questions posed by Plaintiffs relating to Abbott's sales data. These questions were not raised during the three interviews of the Abbott's IT individuals conducted in August. Abbott also provided along with this letter additional documents to assist Plaintiffs in understanding the sales data. (*See* December 13, 2005 Letter (w/o enclosures) from Beth O'Connor, attached as Exhibit O).

20. Abbott made additional document productions to Plaintiffs on December 16, 2005, December 23, 2005, December 30, 2005, January 6, 2006, January 13, 2006, January 20, 2006, January 27, 2006, and January 31, 2006. (*See* December 16, 23, and 30, 2005 and January 6, 13, 20, 27, and 31, 2006 Letters, attached collectively as Exhibit P).

21. On January 25, 2006, Plaintiffs' counsel and I engaged in a meet and confer conference to discuss production issues. On February 8, 2006, Abbott responded by letter to issues raised during this conference. (*See* February 8, 2006 Letter from Beth O'Connor, attached as Exhibit Q).

22. On February 28, 2006, I followed up with another letter to Plaintiffs' counsel and provided additional documents and information requested by Plaintiffs. (*See* February 28, 2006 Letter (w/o enclosures) from Beth O'Connor, attached as Exhibit R).

23. On March 10, 2006, Abbott made an additional production of its Code of Conduct as requested by Plaintiffs. (*See* March 10, 2006 Letter from Beth O'Connor, attached as Exhibit S).

24. On April 5, 2006, Abbott produced a CD-ROM containing electronic documents. (*See* April 5, 2006 Letter from Beth O'Connor, attached as Exhibit T).

25. On April 18, 2006, Abbott produced IMS data and two CD-ROMs containing additional electronic documents. (*See* April 18, 2006 Letters from Beth O'Connor, attached collectively as Exhibit U).

26. On June 12, 2006, Abbott produced Calcijex related sales documents and Plan and Update documents to Plaintiffs. (*See* June 12, 2006 Letter from Beth O'Connor, attached collectively as Exhibit V).

27. To date Abbott has produced almost 250,000 pages of documents (in addition to the thousands of documents previously produced pursuant to CMOs 5 and 10). Abbott has agreed to produce additional documents to Plaintiffs to the extent they exist.

28. On June 15, 2006 and June 23, 2006, Plaintiffs' counsel and I engaged in separate meet and confer conferences to discuss the five categories of documents at issue in Plaintiffs' Motion to Compel.

29. On June 27, 2006, Plaintiffs' counsel sent a letter confirming the contents of these discussions. The letter also indicated the agreements reached with respect to the production of additional documents, to the extent they exist, related to these five categories, and that the parties would address any additional concerns should they arise. (*See* June 27, 2006 Letter from Jennifer Connolly, attached as Exhibit W).

30. Despite Abbott's efforts to comply with Plaintiffs' discovery demands and the significant production made to date, Plaintiffs refused to withdraw their Motion to Compel and For Discovery Related Costs. (*See Id.*)

Dated: June 29, 2006

/s/ Beth A. O'Connor
Beth A. O'Connor