# Exhibit A

# THE | WEXLER | FIRM LLP

May 18, 2005

**_Via Facsimile_**

Ms. Toni-Ann Citera
Jones Day
222 E. 41st Street
New York, NY 10017-6702

> Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation*
> MDL No. 1456 (D. Mass.)

Dear Toni:

I write to address outstanding issues with regard to Abbott's document production. In order to discuss and narrow the issues in dispute as soon as possible, I propose that we speak about the issues in this letter on Friday, May 20 at 2:00 p.m. Central.[1]

**Abbott's Responses to Plaintiffs' Omnibus Requests:** In Abbott's June 1, 2004 responses to MDL Plaintiffs' Omnibus Requests, Abbott represented that it would produce: (1) electronic sales data from PPD from May 1994-December 31, 2003; (2) electronic sales data for HPD from mid-1996 to December 31, 2003; (3) policies or manuals relating to pricing, marketing, and sales; (4) correspondence with pricing compendia regarding Abbott AWPIDs; (5) price announcements to wholesalers; and (6) documents sufficient to identify Abbott's automated information systems. In addition, Abbott agreed to compile "a list of departments at Abbott with relevant information, including persons responsible for setting the price of Abbott's drugs listed in the AMCC."

First, with the exception of the electronic sales data (where Abbott has identified technical reasons why the data cannot be produced) it does not appear as if Abbott has conducted a search for documents throughout the relevant time period (January 1, 1991 to the present). While Chris Cook's May 25, 2004 letter stated that Abbott intended to address this issue on a case-by-case basis, that response is not sufficient. Instead, as it did with electronic data, it is Abbott's duty to identify any undue burden associated with searching for responsive documents within the relevant time period. Therefore, please either supplement Abbott's production or identify with specificity why responsive documents may not be produced within the entire Class Period.

Second, it does not seem that, with the exception of the electronic sales data, Abbott has produced all responsive documents in the categories it has represented it produced. For example,

---

[1] If any of the documents requested in this letter will be produced in Abbott's upcoming production, you may advise me of that during that call.

| Contact Information: | Jennifer Fountain Connolly | One North LaSalle Street | 312 346 2222 |
| | 312 261 6195 Direct Dial | Suite 2000 | 312 346 0022 fax |
| | jfconnolly@wexlerfirm.com | Chicago, Illinois 60602 | www.wexlerfirm.com |

# T H E | W E X L E R | F I R M LLP

Ms. Toni-Ann Citera
May 18, 2005
Page 2

although Abbott has produced some communications with publishers, this production does not appear to be complete, as Abbott has not produced notes of any meetings with publishers or any other materials sent to or received from publishers. *See* Omnibus Request Nos. 56-69. And it does not appear as if Abbott has produced any documents sufficient to identify its "automated information systems." Thus, for each category of documents Abbott has agreed to produce, please either confirm that Abbott's production is complete or supplement it within 21 days.

Third, Abbott has not produced any organizational charts or other information sufficient to enable plaintiffs to identify persons with knowledge of the subject areas relevant to this litigation. Obviously this is key information for us to proceed with depositions. Therefore, especially since Abbott has already represented that it would do so, produce those documents immediately.

Fourth, with limited exceptions, Abbott has not produced responsive e-mails. Please confirm that Abbott has searched and will continue to search the e-mails (and archived e-mails) of individuals who may have knowledge about the subject matters at issue in this litigation.

Finally, with regard to the electronic sales data, we assume that, consistent with Fed. R. Civ. P. 26(e), Abbott will be supplementing its production shortly. We also assume that, pursuant to plaintiffs' 30(b)(6) deposition notice that was served May 13, Abbott will advise us of the individuals it intends to identify regarding those areas of inquiry.

We further assume that, pursuant to plaintiffs' April 20, 2005 Rule 30(b)(6) deposition notice, Abbott will advise us of the persons it intends to designate on the subject areas identified in that notice. I did receive your voice mail message and am happy to discuss those issues with you on our meet and confer.

If any of these assumptions are not accurate, please let me know immediately.

**Documents Abbott Must Still Produce In Response to Plaintiffs' Omnibus Requests:** In addition to the deficiencies identified above, Abbott's production to date is incomplete. Without waiving our position that it is Abbott's duty to locate documents responsive to the Omnibus Requests and without waiving our right to seek additional discovery, it is clear that, at a minimum, and in addition to the categories of documents identified above, Abbott should produce:

### *Category 1:  General Corporate*

- Documents containing Abbott's document retention policy during the relevant time period

**T H E │ W E X L E R │ F I R M** LLP

Ms. Toni-Ann Citera
May 18, 2005
Page 3

### *Category 2: Trade Associations*

- All documents provided to any trade association described in Request No. 8[2]

### *Category 5: AWPs and Pricing Related*

- All documents in which AWP is defined or discussed (responsive to Request Nos. 14-18) and/or in which Abbott's pricing methodologies are discussed. Although Abbott has provided voluminous price lists, it has not provided other documents responsive to this category. Notably, Abbott has not produced any sales-level detailing reports (Request Nos. 18 and 19).

- Documents concerning the product or geographic markets in which Abbott's AWPIDs compete (Request Nos. 22-23).

- Abbott's strategic and marketing plans (Request No. 24).

- Documents relating to Abbott's earned margin, revenues or profits, and/or per-unit average total cost for its AWPIDs (Request Nos. 28 and 32)

### *Category 6: Inducements:*  All documents responsive to Request Nos. 36-42.

### *Category 7: Marketing Plans and Sales Representatives*

- A list of all national sales awards available for each AWPID and the business plans for all recipients thereof (Request Nos. 44 and 45)

- All documents memorializing conversations or meetings between any sales representative and any provider regarding an AWPID or seeking reimbursement for an AWPID (Request Nos. 46, 47, 49, 51, 54)

- All documents where the raising of or use of AWP as a marketing tool was discussed (Request Nos. 50, 53)

- All marketing or sales plans that discuss any item identified in Request No. 55.

### *Category 8: Publishers.*  *See* discussion above.

---

[2]  We assume based on Chris Cook's previous correspondence that Abbott has produced all documents previously provided to any governmental entity (Categories 3 and 4 of the Omnibus Requests). If this is not the case and Abbott is withholding otherwise responsive, non-privileged documents, please advise.

# T H E | W E X L E R | F I R M LLP

Ms. Toni-Ann Citera
May 18, 2005
Page 4

### *Category 9:  PBMs; Wholesalers*

- All documents and communications regarding Abbott's contractual negotiations with PBMs, wholesalers, manufacturers, pharmacies, and/or providers.

- All documents related to payments (chargebacks, rebates, credits, *etc.*) made to any of the above entities.

### *Category 10:  Communications With Other Manufacturers*

- Abbott has not produced any documents responsive to Request No. 81.

### *Category 11: Miscellaneous*

- Abbott has not produced any documents responsive to Request No. 82.

We are willing to discuss these categories with you; however, because many of these documents go to the heart of plaintiffs' allegations, Abbott cannot just refuse to produce them.  Indeed, doing so is inconsistent with Chris Cook's previous representation to Beth Fegan in his May 6, 2004 letter that Abbott was not going to refuse outright to produce any category of documents sought in the Omnibus Requests.

**Privilege Log.**  Finally, Abbott has not provided us with a log of documents withheld pursuant to any applicable privilege.  I understand that Laura Dahl has represented that Abbott will be providing one shortly.  Please provide that within fourteen (14) days.

Please call me or Beth Fegan with any questions.  I look forward to working with you.

Very truly yours,

Jennifer Fountain Connolly

JFC:lmv

cc:    Beth Fegan

# Exhibit B

# T H E | W E X L E R | F I R M LLP

May 26, 2005

*Via Facsimile*

Ms. Toni-Ann Citera
Jones Day
222 E. 41st Street
New York, NY  10017-6702

Ms. Beth A. O'Connor
Jones Day
77 West Wacker Dr.
Chicago, IL  60601-1692

Re:  *In re Pharmaceutical Industry Average Wholesale Price Litigation*
       MDL No. 1456 (D. Mass.)

Dear Toni and Beth:

Thank you for speaking with me yesterday.  This letter will memorialize the contents of our discussion.  If there is anything inaccurate in this letter, please let me know.

**Abbott's Ongoing Production:**  You advised me that the CD-ROM production would be completed on June 13.  I informed you that this was inconsistent with the position taken by Laura Dahl, who indicated we would have the production at the beginning of this week.  Based on some of the technical difficulties Abbott has experienced in imaging the documents, we agreed that Abbott would produce CD-ROMs to us on a rolling basis that would in all cases be completed by June 13.  You also agreed to make Abbott's organizational charts among the first documents that are produced to us on CD-ROM so that we can begin making decisions about depositions.  (Abbott has already agreed to compile "a list of departments at Abbott with relevant information, including persons responsible for setting the price of Abbott's drugs listed in the AMCC.")

In addition, you advised me that Abbott intends to do a "rolling production" for documents otherwise responsive to plaintiffs' Omnibus Requests.  I told you that, because of the discovery deadlines, a rolling production would be unacceptable unless we saw a definitive end in sight.  You agreed to investigate providing me with a date.

When I asked you to identify the differences between the CD-ROM production and the rolling production, you stated that most of the documents in the CD production would be from the government productions, although there were about six boxes of documents that were responsive to the Omnibus Requests.  I therefore asked you to provide us with a source list or, at minimum, a list of the persons whose offices Abbott has searched and intends to search.  Please provide this list by Monday, June 6.

| Contact Information: | Jennifer Fountain Connolly | One North LaSalle Street | 312 346 2222 |
| | 312 261 6195 Direct Dial | Suite 2000 | 312 346 0022 fax |
| | jfconnolly@wexlerfirm.com | Chicago, Illinois 60602 | www.wexlerfirm.com |

THE │ WEXLER │ FIRM LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 2

We further discussed Abbott's position that it would address whether to produce documents from the entire Class Period (January 1, 1991 to the present) on a case-by-case basis. You informed me that Abbott is not withholding documents from earlier time periods that are otherwise responsive; however, you stated that there are certain places where Abbott has not searched for responsive documents. The only concrete example that you were able to identify was microfiche. First, we need to know what is contained on those microfiche. Second, we would like a complete list of the areas which Abbott has outright refused to search based on its time period objection. Please provide that to me by Friday, June 3.[1]

**Electronic Sales Data:**

In addition, you indicated that Abbott would be producing Bruce Stowell as Abbott's designee pursuant to our 30(b)(6) notice on data. We agreed to interview Mr. Stowell by telephone in lieu of a deposition. Of course, if he is non-responsive, we reserve the right to reschedule the deposition. We are available on June 21 and would like to begin the telephone conference at 10:00 a.m. Central time. Please let us know the number(s) we should call on that date.

You agreed to provide me with Abbott's designee on indirect sales/chargeback data (for PPD) by Friday, May 27. You also informed me that, though Abbott spun off its hospital division last year, Abbott will agree to provide a designee for Hospira (the new spun-off entity).

You agreed to identify Abbott's designees with respect to plaintiffs' second 30(b)(6) notice by next week. You also informed me that Abbott would be providing a revised data set for one of its divisions (but you did not recall which division) in one week.

As initially raised by Chris Cook, you asked me if plaintiffs would consider limiting the number of Abbott AWPIDs. I informed you that we would be willing to engage in this inquiry if Abbott would provide us with the data and more detailed information to enable us to do so. You said that you would follow-up on this.

Further, you advised me that Abbott is not willing to supplement its electronic sales data production beyond December 31, 2003. Although you provided me with Abbott's legal position on this issue, you did not provide me with details regarding any undue burden

---

[1] You informed me this is not an issue with regard to TAP because Prevacid was introduced in 1995.

# T H E | W E X L E R | F I R M LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 3

Abbott would incur in supplementing this information. You advised me that Mr. Stowell would be able to address this. We will deal with the issue at that point.

Finally, I advised you that I will be sending you a letter under separate cover regarding the deficiencies in Abbott's electronic data production to date.

**E-Mail:** You stated that Abbott has produced e-mail that was contained in paper form and that the e-mails produced in paper form were produced in the form maintained in the ordinary course of business. Beth will get back to me regarding the manner in which Abbott intends to proceed with searching. I agreed to provide you with a list of terms to search. I would like to know how Abbott intends to proceed with those searches by Friday, June 3.

**Privilege Log.** Abbott agreed to provide a privilege log for the CD-ROM production by June 8, 2005.

**Documents Abbott Must Still Produce In Response to Plaintiffs' Omnibus Requests:** Finally, we discussed the specific categories in the Omnibus Requests for which plaintiffs believe Abbott has not yet produced responsive documents. You advised me that many of these documents were being produced in the CD production. Specifically,

### *Category 1: General Corporate*

- You informed me that Abbott's document retention policy during the relevant time period would be produced in the CD production.

### *Category 2: Trade Associations*

- You said that these documents would be contained in the rolling production. To your knowledge, Abbott is not withholding responsive documents in this category; however, you agreed to confirm this. Please advise me of this by Friday, June 3.

### *Category 5: AWPs and Pricing Related*

- You stated that Abbott did not have many responsive documents defining AWP; however, the vast majority of them will be contained in the CD production. You stated that there would be documents relating to Abbott's

# T H E | W E X L E R | F I R M LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 4

pricing methodologies (other than just Abbott price lists) in the rolling production.

- You stated that most marketing plans would be in PPD and would be produced in the rolling production.

- You stated that, although Abbott would produce documents related to its revenues (in its electronic sales data), that Abbott would not produce any documents regarding its profits and/or per-unit average total cost for its AWPIDs.

## *Category 6: Inducements:*

- You stated that Abbott has provided rebate, chargeback, and discount data in its electronic sales data.

- You did not believe that Abbott had many documents regarding free samples given to physicians. However, Abbott will produce all responsive documents.

- Finally, you will advise me whether Abbott is withholding any documents in this category. Please let me know by Friday, June 3.

## *Category 7: Marketing Plans and Sales Representatives*

- We discussed plaintiffs' need for sales representative call notes. You informed me that Abbott does not have these documents in electronic form. You stated that Abbott has produced some notes from the offices of its National Account Managers because these documents were produced in the government productions; however, the offices of individual sales representatives have not been searched. You indicated a desire to limit this search. I advised you that plaintiffs could not take a position on this issue without organization charts and reviewing the documents in Abbott's CD production. I also advised you that providing us with list of all national sales awards available for each AWPID and the business plans for all recipients thereof (Request Nos. 44 and 45) as soon as possible would assist us in making decisions about this issue. You also did not know if there was any overlap between sales notes that might be found in the offices of individual sales representatives and those in the offices of National Account Managers.

# T H E │ W E X L E R │ F I R M LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 5

We will require answers to these types of questions and need to revisit these
issues soon.

- You informed me that Abbott does not have many documents where the
raising of or use of AWP as a marketing tool was discussed (Request Nos. 50,
53); however, you represented that these would be in the CD production as
part of Abbott's government production.

### *Category 8: Publishers.*

- You advised me that these documents would be contained in the CD
production. You told me that you would attempt to produce these documents
earlier rather than later in the production.

### *Category 9: PBMs; Wholesalers*

- You stated that, for PPD, Abbott will produce all PBM contracts. You will
investigate whether Abbott can produce all wholesaler contracts. (I told you
that since there are only three full-line wholesalers that should not be an
issue.) You also agreed that, if Abbott is producing only a "sampling" of
certain categories of responsive documents, you will advise me of that so that
I may ask you for additional documents or a full production if we need it. I
assume that you will do this for Abbott's entire production. If this is not the
case, please advise.

### *Category 10: Communications With Other Manufacturers*

- You stated Abbott has no responsive documents.

### *Category 11: Miscellaneous*

- You stated that, with regard to Request No. 82, you did not believe Abbott has
any repackaged or relabeled AWPIDs. You will confirm this to me.

**TAP documents.** I agreed to provide you with dates during which we could re-review
the TAP documents at your Chicago office. We are available June 2, 6 or 9. Please
advise which of these dates works for Beth.

# THE | WEXLER | FIRM LLP

Ms. Toni-Ann Citera
Ms. Beth A. O'Connor
May 26, 2005
Page 6

We also need to talk about TAP's 30(b)(6) designees.  I will call you after the Memorial Day holiday to get the names of those individuals.

Please call me or Beth Fegan with any questions.

Very truly yours,

Jennifer Fountain Connolly /KAW

Jennifer Fountain Connolly

JFC:lmv

cc:    Beth Fegan
       Kenneth A. Wexler

# Exhibit C

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-1529
baoconnor@jonesday.com

May 27, 2005

<u>VIA FACSIMILE</u>

Jennifer Fountain Connolly
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

<table>
<tr><td>Re:</td><td><i>In re Pharmaceutical Industry Average Wholesale Price Litigation</i><br>MDL No. 1456 (D. Mass.)</td></tr>
</table>

Dear Jennifer:

I am writing in response to your May 26, 2005 letter, in which you purport to summarize the contents of our discussion on May 25, 2005. I will be sending you a more comprehensive letter next week, but I wanted to clarify a few points right away as well as provide immediate responses to some of your requests.

### ABBOTT'S ONGOING DOCUMENT PRODUCTION

As an initial matter, Abbott is cooperating and working diligently with you to produce responsive documents within a reasonable time period. After nearly a year of no communication from plaintiffs regarding Abbott's document production, you have expressed a sense of urgency for the receipt of documents. Despite plaintiffs' delay, Abbott will make a good faith effort to produce to plaintiffs, on a rolling basis, responsive documents as quickly as possible.

Your letter suggests that Abbott has committed to producing documents in response to most of the "categories" of documents identified in your May 18, 2005 letter. We did not make such a commitment in many instances, but rather said that we would get back to you as to what Abbott will and will not agree to produce. We hope to get back to you shortly. Moreover, there are several deadlines in your letter, many of which are as early as next week. I will take up these matters with the client and get back to you as soon as possible, but I cannot promise that all of your deadlines will be met, especially given that it is a holiday weekend.

As we agreed, you will receive Abbott's CMO 5 and CMO 10 production on a rolling basis via CD-ROM, which is to be completed by June 13, 2005. As you know, paper copies of these documents were made available to plaintiffs last year, but were never copied. We also discussed that Abbott would produce to you additional responsive documents on a rolling basis. You responded that production on a rolling basis is not acceptable unless there is an "end date" for the production. Providing you with such an "end date" is not, at this juncture, feasible, particularly since we are still waiting for plaintiffs to "triage" the Abbott drugs named in this case, as was promised last year. Until this is done, Abbott cannot know how long it will take to

CHI-1480094v1

JONES DAY

Jennifer Connolly
May 27, 2005
Page 2

collect and produce responsive documents and, therefore, Abbott is unwilling to subject itself to such a deadline. To the extent there are particular documents you want sooner in the rolling production, please let me know and we will try to accommodate your request. You also stated that you need "more detailed information" in addition to the electronic sales data already produced in order to determine how to limit the number of drugs. Please advise as to what additional information you believe you need for this inquiry.

**30(B)(6) DESIGNEES**

You have agreed to interview Bruce Stowell in lieu of a deposition on June 21, 2005, beginning at 10:00 a.m. (CDT) regarding Abbott's direct sales data (for both the Pharmaceutical Products Division and the Hospital Products Division) and TAP's direct sales data. The call-in number and passcode for this interview are:

    1-866-448-1308
    57177138

We have not yet located the appropriate individual who can discuss Abbott's or TAP's indirect sales data. We will inform you as soon as we have located someone who is knowledgeable in these areas. In addition, Abbott has agreed to provide a designee for what was formerly known as Abbott's Hospital Products Division ("HPD"). Although the individual for HPD will be from Hospira, he or she will be interviewed as or deposed as a corporate designee for Abbott, not Hospira as you suggest.

**REVIEW OF TAP DOCUMENTS**

I am available on Thursday, June 9, 2005, for you to visit our offices in Chicago to review TAP documents. As you know, these documents were made available to plaintiffs last year, but were never copied. The documents will be available beginning at 9:00 a.m. Please ask for me at the reception desk when you or your colleagues arrive.

Again, I will be sending you a more detailed letter next week in response to the remainder of your letter. We look forward to working with you on these issues.

Sincerely,

Beth A. O'Connor

CHI-1480094v1

JONES DAY

Jennifer Connolly
May 27, 2005
Page 3


cc:  Beth Fegan
     Toni-Ann Citera
     Laura Dahl

# Exhibit D

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-1529
baoconnor@jonesday.com

June 6, 2005

<u>VIA HAND DELIVERY</u>

Jennifer Fountain Connolly
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

Re:     *In re Pharmaceutical Industry Average Wholesale Price Litigation*
         MDL No. 1456 (D. Mass.)

Dear Jennifer:

I am writing as a follow-up to my May 27, 2005 letter to you regarding issues raised during our May 25, 2005 conference call.

As requested, we are producing organizational charts with this letter, which have been labeled as ABT AWP/MDL 07125 - ABT AWP/MDL 071324.  These charts should allow you to begin making decisions regarding individuals who you may want to depose.  I have also enclosed a CD-ROM, ABT AWP/MDL 071325, which contains the first of the government productions.  Please note that this CD-ROM has been designated "Highly Confidential" and the documents contained in the CD-ROM have been marked confidential as appropriate.  Additional CD-ROMs, which are also responsive to CMO 5 and CMO 10, will be produced as they become available.

You requested a source list or the names of individuals whose offices Abbott has searched.  I am investigating whether there were any such source lists created for the government productions.  As you know, these productions occurred several years ago and if there were no source lists created at the time, then it will not be possible to produce such lists.

You also requested a list of areas that Abbott has refused to search based on a time period objection.  After discussing this topic, there do not appear to be any areas that Abbott has refused to search for responsive documents.  Without waiving any prior objections relating to the scope of the purported class period and plaintiffs' document requests, Abbott has searched historical records that have been maintained in its corporate records department and will continue to produce responsive documents it locates that date back to 1991.

We discussed the need to limit e-mail searches to certain individuals and key word terms.  You indicated that you would provide a list of terms to search.  I have not yet received such a list.  Also, the organizational charts you received should help you limit the individuals for whom you would like e-mails, to the extent such e-mails exist.  Please feel free to call me to discuss this process in more detail.

As we discussed previously, Abbott will provide an initial privilege log on June 8, 2005.

CHI-1480194v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MENLO PARK  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK
PARIS  •  PITTSBURGH  •  SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

JONES DAY

Jennifer Connolly
June 6, 2005
Page 2

Also, with respect to the categories of documents identified in your May 26, 2005 letter that are still outstanding, Abbott is still investigating the following categories: trade associations; sales representatives' call notes; types of national sales awards; wholesaler contracts; and communications with other manufacturers. In addition, although Abbott does not believe any such documents exist, it will produce marketing plans that discuss marketing AWP and documents where the raising of or use of AWP as a marketing tool was discussed.

Abbott does not have any documents relating to samples used as "inducements" as you described in our May 25, 2005 call.

Finally, I am in the process of responding to your June 1, 2005 requesting additional information relating to Abbott sales data. I will forward that information to you as soon as possible.

In the meantime, please contact me with any additional questions or requests.

Sincerely,

Beth A. O'Connor

cc:  Beth Fegan (via facsimile w/o enclosures)
     Tina Tabacchi
     Toni-Ann Citera
     Laura Dahl

CHI-1480194v1

# Exhibit E

# JONES DAY

77 WEST WACKER  •  CHICAGO, ILLINOIS  60601-1692

TELEPHONE: (312) 782-3939  •  FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-1529
baoconnor@jonesday.com

June 8, 2005

<u>VIA HAND DELIVERY</u>

Jennifer Fountain Connolly
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

          Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*
                MDL No. 1456 (D. Mass.)

Dear Jennifer:

      As we discussed during our May 25, 2005 conference call, I am providing Abbott's initial privilege log, which will be supplemented as necessary.  In addition, I have enclosed a CD-ROM, ABT AWP/MDL 071326, which contains more of the government productions that are responsive to CMO 5 and CMO 10.  Please note that this CD-ROM has been designated as "Highly Confidential" and the documents contained therein have been marked confidential as appropriate.  Additional CD-ROMs will be produced as they become available.

      Please contact me with any questions.

                Sincerely,

                Beth A. O'Connor

cc:  Beth Fegan (via facsimile w/o enclosures)
     Toni-Ann Citera
     Laura Dahl

CHI-1481905v1

# Exhibit F

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number: (312) 269-1529
baoconnor@jonesday.com

June 10, 2005

**VIA HAND DELIVERY**

Jennifer Fountain Connolly
The Wexler Firm
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*
    MDL No. 1456 (D. Mass.)

Dear Jennifer:

I have enclosed four CD-ROMs, ABT AWP/MDL 071327 - ABT AWP/MDL 071330, which contain more of the government productions that are responsive to CMO 5 and CMO 10. Please note that these CD-ROMs have been designated as "Highly Confidential" and the documents contained therein have been marked confidential as appropriate. Additional CD-ROMs will be produced as they become available.

Please contact me with any questions.

Sincerely,

Beth A. O'Connor

cc: Beth Fegan (via facsimile w/o enclosures)
    Toni-Ann Citera
    Laura Dahl

CHI-1482404v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# Exhibit G

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number: (312) 269-1529
baoconnor@jonesday.com

June 13, 2005

<u>VIA HAND DELIVERY</u>

Jennifer Fountain Connolly
The Wexler Firm
One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

           Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*
                 MDL No. 1456 (D. Mass.)

Dear Jennifer:

       I have enclosed the last five CD-ROMs, ABT AWP/MDL 071331 - ABT AWP/MDL 071335, which contain the remainder of the government productions that are responsive to CMO 5 and CMO 10. Please note that these CD-ROMs have been designated as "Highly Confidential" and the documents contained therein have been marked confidential as appropriate. In addition, I have enclosed a print out of the "Class of Trade" codes, which you requested. This print-out has been bates labeled ABT AWP/MDL 171336 - ABT AWP/MDL 071370, and designated as "Highly Confidential."

       Please contact me with any questions.

                        Sincerely,

                        Beth A. O'Connor

cc:  Beth Fegan (via facsimile w/o enclosures)
     Toni-Ann Citera
     Laura Dahl

CHI-1482619v1

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MENLO PARK  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK
PARIS  •  PITTSBURGH  •  SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

# Exhibit H



| | | |
|---|---|---|
| "Jennifer F. Connolly" <JFConnolly@wexlerfirm.com> | To | "Beth A. O'Connor" <baoconnor@JonesDay.com> |
| | cc | |
| | bcc | |
| 07/26/2005 10:50 AM | Subject | RE: AWP: Abbott electronic sales data interviews |

History:        ⏎ This message has been replied to.

Hi, Beth -

Let's talk tomorrow when you have spoken to your PPD people.  That way we can have a complete discussion.

I will check on August 11 on our end.

Regarding the week of the 15th, I am available the 15th, 16th, or 17th.  Let me know what works for Mr. Sellers.  Will the dep be at Abbott or at Jones Day?  (If Abbott, I'll probably need directions for exactly where I'm going.)

Thanks -
Jennifer

**From:** Beth A. O'Connor [mailto:baoconnor@JonesDay.com]
**Sent:** Tuesday, July 26, 2005 10:44 AM
**To:** Jennifer F. Connolly
**Subject:** Re: AWP: Abbott electronic sales data interviews


Jennifer:

It looks like August 11th works best for our folks.  Will that be a problem?

Also, I am following up on all of your questions, including the sales force organization.  I had a call regarding the HPD side and would be happy to discuss with you.  I have a call tomorrow about the PPD sales side.  If you would rather wait until after that call, we can discuss in more detail.  Finally, Mike Sellers has been out of the office, I have calls into him about dep dates.  We are likely looking at the week of August 15th.  I hope to hear back from him soon and pin this down.  If any days during that week are not good for you, please let me know.

Thanks for your patience.

Beth A. O'Connor
Jones Day
77 West Wacker
Chicago, Illinois 60601
312-269-1529
312-782-8585 (facsimile)

"Jennifer F. Connolly" <JFConnolly@wexlerfirm.com>

To <baoconnor@jonesday.com>

cc

Subject AWP:  Abbott electronic sales data interviews

07/25/2005 06:04 PM

August 10 looks best for us.  Let us know if this works for your people.

Thanks -
Jennifer

Jennifer Fountain Connolly
**T H E | W E X L E R | F I R M**<sup>LLP</sup>
One North LaSalle St., Suite 2000
Chicago, IL  60602
(312) 346-2222
(312) 261-6195 (direct)
(312) 346-0022 (facsimile)
www.wexlerfirm.com

==========
The preceding e-mail message (including any attachments) contains information that may be confidential, be protected by the attorney-client or other applicable privileges, or constitute non-public information.  It is intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.
==========

# Exhibit I



"Jennifer F. Connolly"
<JFConnolly@wexlerfirm.com>

07/26/2005 01:54 PM

To  "Beth A. O'Connor" <baoconnor@JonesDay.com>

cc

bcc

Subject  RE: AWP:  Abbott electronic sales data interviews

Oh -- and we are confirmed for August 11 for the electronic sales data interviews.  Thanks.

**From:** Beth A. O'Connor [mailto:baoconnor@JonesDay.com]
**Sent:** Tuesday, July 26, 2005 10:53 AM
**To:** Jennifer F. Connolly
**Subject:** RE: AWP: Abbott electronic sales data interviews

Sounds good Jennifer.  I have back to back calls and then a break around 2:00.  I will call you then if you are available.

Beth A. O'Connor
Jones Day
77 West Wacker
Chicago, Illinois 60601
312-269-1529
312-782-8585 (facsimile)

"Jennifer F. Connolly" <JFConnolly@wexlerfirm.com>

07/26/2005 10:50 AM

To  "Beth A. O'Connor" <baoconnor@JonesDay.com>

cc

Subject  RE: AWP:  Abbott electronic sales data interviews

Hi, Beth -

Let's talk tomorrow when you have spoken to your PPD people.  That way we can have a complete discussion.

I will check on August 11 on our end.

Regarding the week of the 15th, I am available the 15th, 16th, or 17th.  Let me know what works for Mr. Sellers.  Will the dep be at Abbott or at Jones Day?  (If Abbott, I'll probably need directions for exactly where I'm going.)

Thanks -

Jennifer

**From:** Beth A. O'Connor [mailto:baoconnor@JonesDay.com]
**Sent:** Tuesday, July 26, 2005 10:44 AM
**To:** Jennifer F. Connolly
**Subject:** Re: AWP: Abbott electronic sales data interviews

Jennifer:

It looks like August 11th works best for our folks.  Will that be a problem?

Also, I am following up on all of your questions, including the sales force organization.  I had a call regarding the HPD side and would be happy to discuss with you.  I have a call tomorrow about the PPD sales side.  If you would rather wait until after that call, we can discuss in more detail.  Finally, Mike Sellers has been out of the office, I have calls into him about dep dates.  We are likely looking at the week of August 15th.  I hope to hear back from him soon and pin this down.  If any days during that week are not good for you, please let me know.

Thanks for your patience.

Beth A. O'Connor
Jones Day
77 West Wacker
Chicago, Illinois 60601
312-269-1529
312-782-8585 (facsimile)

"Jennifer F. Connolly" <JFConnolly@wexlerfirm.com>

07/25/2005 06:04 PM

To <baoconnor@jonesday.com>
cc
Subject AWP:  Abbott electronic sales data interviews

August 10 looks best for us.  Let us know if this works for your people.

Thanks -
Jennifer

Jennifer Fountain Connolly
**T H E | W E X L E R | F I R M** LLP
One North LaSalle St., Suite 2000

Chicago, IL  60602
(312) 346-2222
(312) 261-6195 (direct)
(312) 346-0022 (facsimile)
www.wexlerfirm.com

==========
The preceding e-mail message (including any attachments) contains information that may be confidential,
be protected by the attorney-client or other applicable privileges, or constitute non-public information.  It is
intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this
message, please notify the sender by replying to this message and then delete it from your system.  Use,
dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and
may be unlawful.
==========

==========
The preceding e-mail message (including any attachments) contains information that may be confidential,
be protected by the attorney-client or other applicable privileges, or constitute non-public information.  It is
intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this
message, please notify the sender by replying to this message and then delete it from your system.  Use,
dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and
may be unlawful.
==========

# Exhibit J



"Jennifer F. Connolly"
<JFConnolly@wexlerfirm.co
m>

07/13/2005 11:39 AM

To  "Beth A. O'Connor" <baoconnor@JonesDay.com>
cc  "Toni-Ann Citera" <tcitera@JonesDay.com>
bcc
Subject  AWP:  Data interviews scheduled for July 15

Beth:

I just left you a voicemail.  After I confirmed the July 15 date with our experts they have informed me that, because of the late production of the supplemental data, they do not think we can go forward with the interviews as scheduled on July 15.

I realize that this is last minute notice.  If the interviewees are already in the process of traveling to Chicago, please let me know and we will try to work something out.

Thanks.
Jennifer

Jennifer Fountain Connolly
**T H E | W E X L E R | F I R M**[LLP]
One North LaSalle St., Suite 2000
Chicago, IL  60602
(312) 346-2222
(312) 261-6195 (direct)
(312) 346-0022 (facsimile)
www.wexlerfirm.com

# Exhibit K

T H E | W E X L E R | F I R M ᴸᴸᴾ

August 17, 2005

***Via Facsimile***

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
Jones Day
77 W. Wacker Drive
Chicago, IL 60601-1692

   Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*
      MDL No. 1456 (D. Mass.)

Dear Tina and Beth:

This will confirm our agreement to postpone the August 17, 2005 deposition of Mike Sellers in lieu of a more substantive deposition. In short, you informed me that, had the deposition gone forward on the 17th, Mr. Sellers would only have been designated to testify about the documents related to the areas of inquiry. However, you have agreed to reset Mr. Sellers' deposition for early to mid-September so that plaintiffs can take his deposition on more substantive topics with the view of Abbott only having to produce Mr. Sellers for his deposition once.

In that regard, you have asked me to identify the substantive topics about which I would like Mr. Sellers to be able to testify. Those topics include:

- How prices or reimbursement benchmarks on HPD physician-administered drugs are established, the persons with knowledge on this issue, and the documents related to this topic.

- The price paid by physicians or other providers for HPD physician-administered drugs, the persons with knowledge on this issue, and documents related to this topic.

- The amounts paid by third parties reimbursing for physician-administered drugs, Abbott's (HPD's) knowledge thereof, any training or education provided by HPD on that issue, the persons with knowledge on this issue, and the   documents   related  to  this  topic.

Contact Information:  **Jennifer Fountain Connolly**  One North LaSalle Street  312 346 2222
           **312 261 6195 Direct Dial**   Suite 2000      312 346 0022 fax
           jfconnolly@wexlerfirm.com   Chicago, Illinois 60602  www.wexlerfirm.com

**T H E │ W E X L E R │ F I R M** <sup>LLP</sup>

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
August 17, 2005
Page 2

- The reporting structure of the sales forces at HPD, the physician-administered AWPIDs marketed and/or sold (if any) by each sales force, any persons with knowledge thereof, and any documents related thereto.[1]

- The types of materials maintained, informally or formally, by the sales force, including but not limited to:

    o Call notes, trip reports, and expense reports.

    o Contracting documents.

    o Marketing documents (internal and those provided to customers).

    o Policy documents

    o Training documents

    o Any other types of documents (reports, etc.) regularly prepared by the sales staff.

- Any communications (in any media) with publishers, the identity of persons with knowledge about those communications, and any documents related to those communications.

- The identity and nature of any competitive drugs with respect to each physician-administered AWP, any persons with knowledge about this issue (*i.e.*, marketing personnel), and documents related thereto.[2]

- The ASPs on each (physician-administered) AWPID, the spread between ASP and AWP, how Abbott (HPD) calculates ASP, the persons with knowledge about those calculations, and any documents reflecting them.

---

[1] Beth has previously advised me that those sales forces include: Infusion Therapy, Pre-Operative Sales, ICCP, Renal Sales, and Alternate Site. If this is not a complete list, please advise.

[2] In this regard, you have suggested that the parties talk specifically about the information plaintiffs require so that you can prepare Mr. Sellers to authenticate the result of our discussions. I am willing to explore this option.

T H E | W E X L E R | F I R M LLP

Ms. Tina M. Tabacchi
Ms. Beth A. O'Connor
August 17, 2005
Page 3

I am available the following dates in early- to mid-September for a deposition of Mr. Sellers on these topics: September 8, 9, 12, 13, and 20.

We likewise discussed several ways to shorten Mr. Sellers' deposition. You advised me that you would produce a current version of Mr. Sellers' resume, which should shorten the examination on his background. In addition, we discussed that, because Mr. Sellers' prior depositions are not admissible in this proceeding, I would have no choice but to re-examine Mr. Sellers on various issues discussed during those depositions. Given this dilemma, we discussed negotiating a stipulation on the use and admissibility of those depositions in this proceeding. I remain willing to explore such a stipulation. Please forward me a draft of what you propose.

I recognize and appreciate that Abbott wants to avoid putting Mr. Sellers up multiple times for a deposition. However, we cannot agree to make this deposition Mr. Sellers' substantive deposition until and unless Abbott can confirm that all responsive documents from Mr. Sellers' files have been produced. If Abbott can do this in the coming weeks I will certainly reconsider this issue.

Finally, you agreed to look into the status of the document production. I would like an update on this soon because we have not received documents from Abbott for several weeks. There are specific categories of documents which plaintiffs have requested in previous correspondence that Beth is aware are outstanding. And, although neither I or plaintiffs are taking an official position on this issue, given Judge Saris' opinion it does seem more important that we receive remaining HPD documents as priority over PPD documents.

Very truly yours,

Jennifer Fountain Connolly

JFC:lmv

cc:    Beth Fegan (via facsimile)
       Toni-Ann Citera (via facsimile)
       Kenneth A. Wexler