# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | MDL NO. 1456 |
| LITIGATION | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| | ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *State of Nevada v. Abbott Labs., Inc. et al.*, | ) | Chief Mag. Judge Marianne |
| Case No. CV-2-00260 (Nevada I), | ) | B. Bowler |
| | ) | |
| *State of Nevada v. American Home Products,* | ) | |
| *et al.,* CA NO. 02-CV-12086-PBS (Nevada II), | ) | |
| | ) | |
| *State of Montana v. Abbott Labs., Inc., et al.*, | ) | |
| Cause No. CV-02-09-H-DWM (D. Mont.) | ) | |
| 02-CV-12086-PBS | ) | |
| | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO MONTANA'S AND NEVADA'S MOTION FOR A PROTECTIVE ORDER RELATING TO DEFENDANTS' SECOND SUBPOENA TO BLUE CROSS BLUE SHIELD OF MONTANA AND DEPOSITION NOTICE TO MMCAP

Defendants to the above-captioned matters respectfully submit this memorandum of law in opposition to the State of Montana's motion for a protective order relating to a subpoena served on Blue Cross Blue Shield of Montana ("BCBSMT") and the State of Montana's and the State of Nevada's motion for a protective order relating to a deposition notice served on the Minnesota Multi-State Contracting Alliance for Pharmacy ("MMCAP").

## PRELIMINARY STATEMENT

Plaintiffs the State of Nevada ("Nevada") and the State of Montana ("Montana") (collectively "the States") move here for protective orders on behalf of two third parties. Those third parties have not made any such motions of their own and have not joined the States' motions. Indeed, the third parties were working with defendants to define the scope of their responses until the States interjected themselves into the process.

The States' arguments are hyper-technical and designed to prevent this highly relevant evidence coming to light. In the case of the subpoena to BCBSMT, Montana complains that the scanned copy of the subpoena served electronically was missing a page and focuses on its scope and timing. In fact, Montana could have obtained the missing page within minutes with a phone call notifying defendants of the scanning error and eventually did so. Moreover, the discovery sought is narrow and tailored, and a focused follow-up to an earlier subpoena on BCBSMT necessitated in part by Montana's failure to timely produce materials relating to its *parens patriae* claims on behalf of third-party payors.

In the case of the subpoena to MMCAP, a Minnesota state group purchasing organization, the States complain of inadequate notice of deposition and overbroad scope. In fact, the subpoena was issued months ago, the deposition is narrowly tailored, and the States

2

were notified of the actual date on which the deposition was proceeding as soon as the third party

provided defendants with that date.

In sum, the States' argument exalt form over substance with the intention of

obscuring critically important factual discovery that could cripple its claims.  This ploy must not

be allowed to succeed and this discovery must be allowed to proceed.

<b>ARGUMENT</b>

The States' motion should be denied for two independent reasons.  First, the States

lack standing to bring this motion on behalf of third parties.  Second, the States' factual

contentions as to burden and timing are unwarranted and this discovery is highly relevant to

defeating the States' *parens patriae* allegations.

**I.      MONTANA AND NEVADA LACK STANDING TO OBTAIN THE REMEDY
          THEY SEEK**

The States concede that a party generally does not have standing to challenge a

third-party subpoenaed pursuant to Federal Rule of Civil Procedure 45 unless that party can

demonstrate it has some proprietary interest that will be jeopardized by the documents sought

from the third party.  *See* States' Memo at 7; Wright & Miller, FEDERAL PRACTICE & PROCEDURE

§ 2549 (2005) ("Ordinarily a party has no standing to seek to quash a subpoena issued to

someone who is not a party to the action  unless the party claims some personal right or privilege

with regard to the documents sought."); *see*, *e.g.*, *Nova Prods., Inc. v. Kisma Video, Inc.*, 220

F.R.D. 238, 241 (S.D.N.Y. 2004) ("Moreover, a party ordinarily lacks standing to quash a

subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or

right.").  Montana and Nevada do not argue that the documents and deposition sought by

defendants would reveal privileged or confidential information, or even contend that the

information sought is not relevant.  *See* Breckenridge Decl. ¶¶ 6-7, 10.

3

In an attempt to sidestep this rule, the States claim standing here under Rule 26, contending they can block this discovery by moving to enforce the terms of scheduling Case Management Orders.  *See* States' Memo at 6-8.  But this argument fares no better.  While courts have not been unified on this point, the better view in the circumstances presented here – where the impact on the case-management order and the burden imposed upon the States is negligible – is that a Rule 45 subpoena is challengeable only as provided by Rule 45 itself.  S*ee O'Boyle v. Jensen*, 150 F.R.D. 519, 520 (M.D. Pa. 1993) ("The discovery deadline established by the court precludes parties from conducting any further discovery addressed to each other or requiring one another's presence or participation, e.g. discovery in the form of interrogatories or depositions. It was not intended to preclude, and does not preclude, parties from gathering additional information on their own case or that of their opponent through independent lines of inquiry not directed to, or requiring the participation of, the other side."); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 686 (D. Kan. 1995) (noting that only the party to whom a subpoena was issued has standing to challenge the subpoena under Rule 45 absent a claim of a personal privilege and overruling defendant's objection to a third-party subpoena on the ground that the subpoena was issued after the close of discovery).

These precedents on standing provide an independent reason to deny the States' motion.  But the States' factual argument in relation to the two subpoenas at issue do not mitigate towards a different result.

4

## II.    MONTANA'S MOTION FOR A PROTECTIVE ORDER CONCERNING THE SUBPOENA TO BCBSMT SHOULD BE DENIED

Montana argues that a protective order should issue barring the discovery on BCBSMT because it initially received a copy of the subpoena missing a page, and on the grounds of scope and timing.  These arguments are all without merit.

### A.    Montana Could Have And Did Obtain the Missing Page Within Minutes

As soon as counsel for Montana notified defendants that the copy of the subpoena served electronically was missing a page – due to an inadvertent scanning error – a complete copy was immediately forwarded to counsel for Montana.  Young Decl. ¶ 3.  Moreover, it appears that Montana had already obtained a copy of the complete subpoena from BCBSMT, given that counsel for Montana and counsel for defendant had already discussed the requests in the subpoena.  Young Decl. ¶ 2.

### B.    The BCBSMT Subpoena Is Narrowly Tailored, Timely, and Relevant to Defeating Montana's *Parens Patriae* Allegations

As Montana concedes, BCBSMT was originally subpoenaed in this litigation years ago.  Breckenridge Decl. ¶¶ 8-9.  The subpoena at issue here is a focused follow up designed to elicit documents and testimony on specific points that are directly relevant to Montana's *parens patriae* claims and which neither BCBSMT nor Montana has previously produced.[1]  It consists of only four narrowly-drawn document requests.  For example, the subpoena seeks contracts with the State of Montana that Montana failed to produce.  It also seeks data evidencing the reimbursement claims Montana is asserting on behalf of third parties like

---

[1] Tellingly, Montana does not, nor can it, deny the relevance of this material either to its claims or, conversely, to defendants' potential defense of this lawsuit.  Defendants have not received any information regarding the identity of the parties on whose behalf Montana is purportedly bringing *parens patriae* claims, the nature of those parties' reimbursement schemes, the identity of the claims that Montana asserts were affected by the AWP scheme, and the alleged damages of those parties.

1291543v3

BCBSMT.[2]  The accompanying deposition notice similarly follows up on significant recent

issues such as whether BCBSMT has now considered or made changes to its reimbursements for

drugs or services based on or by reference to changes in Medicare's reimbursement from AWP-

based methodologies to those based on average sales price or ASP.  This follow-up subpoena

issued after counsel for Montana finally revealed in a May 9, 2006 letter that Montana did not

intend to produce any discovery supporting their *parens patriae* claims and that defendants

would have to obtain all this material from third parties.  Young Decl. ¶  4 & Ex. 1, at 4. ("The

parens patriae claim will be supported by defendants' own data.").  This subpoena issued shortly

thereafter on May 19, 2006.  In these circumstances, defendants acted diligently to follow up on

the earlier subpoena with a focused follow up, which will be completed in short order if the

Court allows it to proceed.

## III.    THE STATES' MOTION FOR A PROTECTIVE ORDER CONCERNING THE SUBPOENA TO MMCAP SHOULD BE DENIED

The Minnesota Multi-State Contracting Alliance for Pharmacy ("MMCAP") is a

voluntary group purchasing organization operated by the State of Minnesota, designed to provide

member organizations the combined purchasing power to receive the best prices available for

pharmaceuticals and related products.  Several of the States' agencies are members of MMCAP,

but MMCAP itself is not a party to the litigation.  MMCAP was subpoenaed because several of

the States' agencies purchase pharmaceuticals through MMCAP.

---

[2]The other two categories sought were: "All documents concerning any consideration of or actual changes to your reimbursements for drugs or services based on or by reference to changes in Medicare's reimbursement rates for drugs or services since 2003," and "All documents concerning the determination of your reimbursement to providers for physician-administered drugs ("PADS'), including but not limited to (a) communications to, from, and/or with providers concerning (i) the adequacy of reimbursement for a PAD or PADs and/or (ii) changes in reimbursement for a PAD or PADs, (b) cost-containment measures such as capitated arrangements or withholds, (c) documents concerning any differences in reimbursement based on geography and/or on providers' specialty."

1291543v3

The MMCAP subpoena was served on January 31, 2006, and accompanied by a notice of deposition for February 21, 2006.  Fedotin Decl. ¶ 3.  Since the subpoena was timely issued, the States focus on the timing of a follow-up notice of a date when MMCAP agreed to make a witness available.  The States argue that defendants should not have waited until June to obtain information needed to interpret the data or to have the data authenticated.  The facts demonstrate that defendants were diligent in pursuing discovery of MMCAP.

In mid-February, after conferring with Greg Huwe, counsel for MMCAP, defendants narrowed the scope of the subpoena and accommodated the travel schedule of MMCAP employees with knowledge of information sought in the subpoena, by agreeing to accept document production in early May.  *See* Fedotin Decl. ¶ 4 & Ex. 1.  After MMCAP agreed to produce data concerning drug pricing and sales to Montana and Nevada based participants of MMCAP, defendants agreed to indefinitely postpone the February 21, 2006 deposition.  *Id.* ¶ 5.  On  March 13, 2006, MMCAP produced a DVD consisting of more than 650 files in 6 folders.  *See id.* ¶ 6.  After analyzing the voluminous data, defendants realized that they were unable to interpret all of the data due to missing field definitions and codes.  On March 24, 2006, defense counsel emailed Mr. Huwe to request additional codes to interpret the data. *See id.* ¶ 7 & Ex. 1.  While MMCAP produced additional definitions, those definitions were not sufficient to interpret the data.  *See id.* ¶ 7.  Defense counsel concluded that a deposition was necessary to interpret and authenticate the produced data and continued to communicate with Mr. Huwe.

On May 31, 2006, defense counsel sent a fax to Mr. Huwe advising that he was still awaiting possible deposition dates and names of MMCAP employees with knowledge of pricing information to the States and with the ability to authenticate the data contained on the

7

DVD produced by MMCAP.  *See* Fedotin Decl. ¶ 8 & Ex. 2.  With the dispositive motion deadline fast approaching, defense counsel sought a deposition as soon as possible.  On June 9, 2006, defense counsel sent a follow up email to Mr. Huwe seeking dates for mid-June depositions.  *See id.* ¶ 8.

It was not until June 15, 2006, that MMCAP confirmed that Ms. Svitak was the most knowledgeable witness and that she would be available for deposition on June 23, 2006. *See id.* ¶ 9.  On June 15, 2006, defense counsel placed a courtesy call to Ms. Breckenridge to advise her that a deposition notice for June 23 would be served later that day.  *See id.* ¶ 11.  Ms. Breckenridge stated her intention to file a protective order.  *See id.*  Defense counsel acknowledged her objection, but served the notice.  *See id.*  Defense counsel agreed to a meet and confer.  *See id.*  At the meet and confer, the States were unwilling to negotiate the terms of an MMCAP deposition.  *See id.* ¶ 12.

The States' failure to negotiate during the meet and confer demonstrates the hollowness of the States' arguments in support of their motion for a protective order.  First, the States argue that the MMCAP deposition subpoena is overbroad.  This argument ignores the June 15, 2006  telephone call and the subsequent meet and confer where defense counsel advised Ms. Breckenridge that the deposition would be brief and would address three major areas: (1) pricing information available to the States; (2) field codes and missing definitions necessary to analyze the data produced back in March; and (3) authentication of the data for use at trial. Second, the States assert that the second notice, issued on June 15, 2006, was untimely.  *See id.* ¶ 12.  This argument is also a red herring.  The States' objection could be easily remedied by allowing defendants to serve a new notice.  Yet,  during the meet and confer, when defendants raised the possibility of other dates for the MMCAP deposition, the States refused to negotiate.

1291543v3

The States' real objection to the MMCAP notice is not when it was served, but that it was served at all.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court deny Montana's motion for a protective order relating to a subpoena to Blue Cross Blue Shield of Montana and the Montana's and Nevada's motion for a protective order relating to a deposition notice to MMCAP.

Dated:      New York, New York
            July 5, 2006

                                           Respectfully submitted,


                                           /s/ Andrew D. Schau
                                           _____

                                           Andrew D. Schau (admitted *pro hac vice*)
                                           Erik Haas (admitted *pro hac vice*)
                                           Patterson, Belknap, Webb & Tyler LLP
                                           1133 Avenue of the Americas
                                           New York, NY  10036-6710
                                           (212) 336-2000

                                           *Attorneys for defendants Johnson &*
                                           *Johnson, Centocor Inc. and Ortho Biotech*
                                           *Products L.P. on behalf of all defendants*

9

1291543v3

**CERTIFICATE OF SERVICE**

I certify that on July 5, 2006, a true and correct copy of the forgoing

Memorandum of Law was served on all counsel of record by electronic service pursuant to

Paragraph 11 of Case Management Order No. 2 by sending a copy to LEXISNEXIS FILE AND

SERVE for posting and notification to all parties.


/s/ Andrew D. Schau

Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

*Attorneys for defendants Johnson &*
*Johnson, Centocor Inc. and Ortho Biotech*
*Products L.P. on behalf of all defendants*

1291543v3