# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
)
IN RE PHARMACEUTICAL INDUSTRY  )
AVERAGE WHOLESALE PRICE        )        MDL NO. 1456
LITIGATION                     )        Civil Action No. 01-12257-PBS
_____)
                               )        Hon. Patti B. Saris
THIS DOCUMENT RELATES TO       )
ALL CLASS ACTIONS              )
_____)

## THE JOHNSON & JOHNSON DEFENDANTS' MEMORANDUM
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AS TO CLASS 3

Johnson & Johnson, Ortho Biotech Products, L.P., and Centocor, Inc. (the "J&J Defendants") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment as to Class 3.

## PRELIMINARY STATEMENT

The J&J Defendants' individual motions for summary judgment focus on one basic fact:  the spreads on Procrit and Remicade were too modest to have caused deception, even under plaintiffs' liability theory.  The J&J Defendants thus showed in connection with their pending motion for summary judgment as to Classes 1 and 2 that the spreads on Procrit and Remicade either did not exceed 30%, or they exceeded 30% by a very small margin.  Drugs with small spreads simply do not belong in this litigation.

Rather than repeat facts already set forth in the record, the J&J Defendants hereby incorporate the prior summary judgment papers by reference.  A list of incorporated materials is provided in an Appendix to this Memorandum.

## ARGUMENT

The spreads on Remicade and Procrit were very modest.  According to Dr. Hartman, the annualized spreads on Remicade were only slightly above 30%:[1]

| Remicade Spreads Calculated Per Dr. Hartman's Dec. 2005 Report | | | | | |
|---|---|---|---|---|---|
| **1998** | **1999** | **2000** | **2001** | **2002** | **2003** |
| 30.8% | 33.4% | 31.9% | 36.1% | 33.9% | 34.3% |

Notably, however, Dr. Hartman's spread calculations are incorrect.  As previously shown, the actual spreads on Remicade *never* exceeded 30%.[2]  Moreover, Remicade's 30% spread was

---

[1] *See* Declaration of Jayson S. Dukes in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment as to Class 1 and Class 2 (Corrected) ("Dukes Decl."), May 8, 2006, at Ex. 6.

*published* by the pricing services.  Because Remicade's spread was disclosed, it could not have resulted in deception.

The spreads on Procrit were even smaller than the spreads on Remicade.  From 1991 through 2003, the annualized spreads on all Procrit NDCs exceeded 30% on only two occasions.  In both cases the excess over 30% was trivial (0.1% in 1996, and 0.3% in 2003):[3]

| Procrit Spreads Calculated Per Dr. Hartman's Dec. 2005 Report | | | | | | |
|---|---|---|---|---|---|---|
| **1991** | **1992** | **1993** | **1994** | **1995** | **1996** | **1997** |
| 22.7% | 23.6% | 25.1% | 24.1% | 27.3% | 30.1% | 27.8% |
| **1998** | **1999** | **2000** | **2001** | **2002** | **2003** | |
| 29.4% | 27.1% | 25.6% | 27.5% | 26.7% | 30.3% | |

As with Remicade, when the errors in Dr. Hartman's Procrit calculations are corrected, the annualized spreads *never* exceeded 30%.[4]

Against this backdrop, no rational trier of fact could find that Class 3 payors were deceived by the J&J Defendants' AWPs.  As shown in the Track 1 Defendants' joint memorandum, Class 3 payors knew all about AWP.  They embraced AWP because they concluded that it served their interests.  Even today, long after the commencement of this litigation, these payors continue to use AWP in preference to other reimbursement methods.  In fact, Blue Cross Blue Shield of Massachusetts ("BCBS/MA") is expanding its use of AWP to the reimbursement of drugs administered in hospital out-patient departments, an area in which AWP-based reimbursement was not used previously.

---

[2] Dukes Decl. at Ex. 6.  Dr. Hartman has declined to defend his calculations, claiming that he "cannot offer an opinion" concerning which set of calculations is correct.  Decl. of Raymond S. Hartman in Opposition to Defendants' Motions for Summary Judgment (Apr. 6, 2006), ¶ 25a.

[3] *Id*. at Ex. 6.

[4] *Id*. at Ex. 6.  Dr. Hartman originally testified that he thought payors expected spreads of 33%.  *See* Decl. of Raymond S. Hartman in Support of Plaintiffs' Motion for Class Certification (Sept. 3, 2004), ¶¶ 30(g) and 33(b).  He changed his mind after he calculated the J&J spreads.

What is more, the record reveals that Class 3 payors had actual knowledge of the specific prices at which J&J drugs could be purchased.  In the case of Remicade, this is true by definition, inasmuch as Centocor did not offer discounts to physicians.[5]  Accordingly, Remicade could only be purchased by providers at or about the published list price.  Remicade's spread was a matter of public record.

Class 3 also knew Procrit's actual acquisition price.  The following chart compares the prices paid by BCBS/MA, Fallon Community Health Plans, Harvard Pilgrim Health Care, and CIGNA to the ASP and AWP figures reported by Dr. Hartman.  All four companies purchased Procrit at prices that closely tracked Dr. Hartman's ASPs.[6]



**Procrit prices to Massachusetts TPPs**

---

[5] The Johnson & Johnson Defendants' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment as to Class 1 and Class 2 (Mar. 15, 2006), ¶ 125.

[6] Declaration of Eric M. Gaier, Ph.D. in Support of the Track 1 Defendants' Joint Motion for Summary Judgment (Mar. 15, 2006) at Fig. 4.  *See also id.*, App. A at Figs. 16, 17, and 18; Decl. of Jessica V. Barnett in Support of the Reply Memo. of Law in Further Support of the Track 1 Defendants' Joint Motion for Summary Judgment (Apr. 28, 2006) at Ex. 6 (listing maximum and median spreads on Procrit purchases by Class 3 payors).

3

## CONCLUSION

It is undisputed that Class 3 payors knew about the difference between AWP and acquisition cost.  In the case of Remicade and Procrit, Class 3 either knew about the spread because it was published (Remicade), or they knew about the spread because they themselves made purchases at prices close to the average selling price (Procrit).  Accordingly, payors in Class 3 were not deceived.  The J&J Defendants' motion for summary judgment as to Class 3 should be ALLOWED.


Dated:  July 14, 2006

/s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
Adeel A. Mangi
**PATTERSON BELKNAP WEBB & TYLER** LLP
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000

*Attorneys for the Johnson & Johnson Defendants*

4

**APPENDIX OF PREVIOUSLY-FILED MATERIALS RELIED
UPON BY THE JOHNSON & JOHNSON DEFENDANTS IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT AS TO CLASS 3**

1. Declaration of John Hoffman in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment as to Class 1 and Class 2 (Mar. 14, 2006), and Exhibits. 1-2, thereto.

2. Declaration of Thomas C. Hiriak in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment as to Class 1 and Class 2 (Mar. 14, 2006), and Exhibits. 1-6, thereto.

3. Declaration of Andrew D. Schau in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment as to Class 1 and Class 2 (Mar. 15, 2006), and Exhibits. 1-14, thereto.

4. Declaration of Jayson S. Dukes in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment as to Class 1 and Class 2 (Mar. 15, 2006), and Attachments 1-3 and Exhibits 1-24, thereto.

5. Declaration of Jayson S. Dukes in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment as to Class 1 and Class 2 (Corrected) (May 8, 2006), and Attachments 1-3 and Exhibits 1-24, thereto.

6. Declaration of Eric M. Gaier, Ph.D. in Support of the Track 1 Defendants' Joint Motion for Summary Judgment (Mar. 15, 2006), and Appendix A, B, C and D, thereto.

7. The Johnson & Johnson Defendants' Local Rule 56.1 Statement in Support of Their Motion for Summary Judgment as to Class 1 and Class 2 (Mar. 15, 2006).

8. The Johnson & Johnson Defendants' Memorandum in Support Of Their Motions for Summary Judgment as to Class 1 and Class 2 (Mar. 15, 2006).

9. Memorandum of Law In Support Of Track 1 Defendants' Joint Motion for Summary Judgment (Mar. 15, 2006)

10. Declaration of Lucy Fowler [in Support of Track 1 Defendants' Motion for Summary Judgment and the accompanying Rule 56.1 Statement of Undisputed Material Facts in Support of Track 1 Defendants' Motion for Summary Judgment] (Mar. 15, 2006), and Exhibits 1-89, thereto.

11. Rule 56.1 Statement of Undisputed Material Facts in Support of Track 1 Defendants' Motion for Summary Judgment (Mar. 15, 2006)

12.     Reply Declaration of Andrew D. Schau in Support of the Johnson & Johnson Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Request for Additional Discovery Pursuant to Rule 56(f) (Apr. 28, 2006), and Exhibits A-D, thereto.

13.     Reply Declaration of Jessica V. Barnett in Support of the Reply Memorandum of Law in Further Support of Track 1 Defendants' Joint Motion for Summary Judgment (Apr. 28, 2006), and Exhibits 1-6, thereto.

14.     The Johnson & Johnson Defendants' Reply Memorandum In Support Of Their Motions For Summary Judgment As To Class 1 and Class 2 (Apr. 28, 2006)

15.     Reply Memorandum of Law In Support Of Track 1 Defendants' Joint Motion For Summary Judgment (Apr. 28, 2006)

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2006 a true and correct copy of the foregoing The Johnson & Johnson Defendants' Memorandum in Support of Their Motion for Summary Judgment as to Class 3 was served on all counsel via LEXIS/NEXIS.


/s/ Andrew D. Schau
Andrew D. Schau