**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO<br>*State of Montana v. Abbott Labs., Inc., et al.*,<br>Cause No. CV-02-09-H-DWM (D. Mont.)<br>02-CV-12086-PBS | Hon. Patti B. Saris<br><br>Chief Mag. Judge Marianne B. Bowler |

**MEMORANDUM OF LAW IN OPPOSITION TO BLUE CROSS AND BLUE SHIELD OF MONTANA'S MOTION FOR A PROTECTIVE ORDER RELATING TO DEFENDANTS' SECOND SUBPOENA TO BLUE CROSS AND BLUE SHIELD OF MONTANA**

Defendants to the above-captioned matter respectfully submit this memorandum of law in opposition to Blue Cross and Blue Shield of Montana's "concurrence" in the State of Montana's motion for a protective order relating to Defendants' second subpoena to Blue Cross and Blue Shield of Montana ("BCBS/MT").

**PRELIMINARY STATEMENT**

BCBS/MT raises two new arguments in its submission in concurrence with Montana's motion for a protective order. First, it complains that this is a "second" subpoena served upon it and that this somehow merits relief. Second, it complains of the burden associated with claims-data production. BCBS/MT does not reveal however, that the two subpoenas were served in different cases, on behalf of different groups of defendants, and target different discovery. Nor does BCBS/MT reveal that defendants have repeatedly emphasized their willingness to work with BCBS/MT to resolve any logistical burdens associated with claims-data production and to pay for the costs associated with that production.

BCBS/MT's only remaining argument is a rehash of plaintiff's arguments regarding timeliness, which defendants have demonstrated in previous submissions are without basis. Defendants issued the narrow and focused subpoena at issue to third party BCBS/MT to elicit documents and testimony on specific points that are directly relevant to Montana's *parens patriae* claims and which neither BCBS/MT nor Montana has previously produced. This discovery should be allowed to proceed.

**BACKGROUND**

**I. BCBS/MT Was Originally Subpoenaed in 2004 in Connection with the MDL Consolidated Class Action**

Defendants to the consolidated class cases in the MDL litigation subpoenaed BCBS/MT on April 28, 2004, seeking documents and a deposition concerning a variety of

subjects. *See* Declaration of Mark G. Young ("Young Decl.") ¶ 3 & Exh. 1. That discovery was part of the MDL class action defendants' broad third-party discovery effort designed to address issues relating to class certification and the merits of those class claims. *Id.* at ¶ 3. Defendants worked with BCBS/MT to resolve objections and facilitate production. BCBS/MT eventually produced documents and data, including materials it had previously produced in the Lupron litigation, where it was a named plaintiff. *Id.* ¶ 5 & Exh. 2. Defendants reimbursed BCBS/MT the costs of copying this production. *Id.* ¶ 5.

Part of what the MDL class defendants sought from BCBS/MT was claims data. BCBS/MT, however, adopted an obstructionist approach. In a letter to counsel for defendants dated June 23, 2004, counsel for BCBS/MT recited various logistical impediments and estimated that extracting the data would "cost well into the hundreds of thousands of dollars." *Id.* ¶ 6 & Exh. 2. That estimate is astronomical in comparison with estimates from all other third parties and lacked substantiation. Despite defendants' best efforts, it proved impossible to resolve these issues in a timely manner that would allow the use of this claims data in the MDL consolidated class case. *Id.* ¶ 7.

## II. BCBS/MT Was Later Subpoenaed in 2006 in Connection with the Litigation by the Montana Attorney General

Defendants in *State of Montana v. Abbott Labs., Inc., et al.*, No. CV-02-09-H-DWM (U.S. Dist. Ct. D. Mont.) issued the subpoena that is the subject of this motion on May 19, 2006. This subpoena was issued shortly after counsel for Montana finally revealed in a May 9, 2006 letter that Montana did not intend to produce any discovery supporting their *parens patriae* claims and that defendants would have to obtain all this material from third parties. *See* Young Decl. ¶ 9 & Exh. 3, at 4. ("The parens patriae claim will be supported by defendants' own data."). Although this subpoena was served in this different case and on behalf of the Montana

defendants, it was designed as a focused follow up to the subpoena issued in the MDL; it was designed to elicit documents and testimony on specific points that are directly relevant to Montana's *parens patriae* claims and which neither BCBS/MT nor Montana has previously produced.[1] It consists of only four narrowly-drawn document requests and a request for a deposition on a single topic.

**III. Defendants Have Repeatedly Expressed Their Willingness to Work With BCBS/MT to Address Any Unique Concerns Over Burden**

Defendants have had several communications with counsel for BCBS/MT regarding the Montana subpoena. Defendants have repeatedly emphasized their willingness to work through any unique burden issues with BCBS/MT. BCBS/MT also communicated to defendants a willingness to discuss an appropriate scope of a response. Young Decl. ¶ 10. For example, counsel for BCBS/MT and defendants had several telephone conferences, in which they discussed the availability of claims data, including what systems the claims data is stored on and its availability for different time periods. Indeed, counsel for BCBS/MT stated that certain data was easily accessible. *Id.* Defendants requested a good-faith estimate of the cost and time to retrieve this data, and indicated that they would reimburse BCBS/MT for the cost of retrieving the data. *Id.*

## ARGUMENT

**I. BCBS/MT's Motion for a Protective Order Concerning the Subpoena Should Be Denied**

BCBS/MT cites a series of cases for the proposition that "the vast majority of courts to address the issue have held that a court ordered discovery cut-off applies not just to

[1] Montana did not deny the relevance of this material either to its claims or, conversely, to defendants' potential defense of this lawsuit. Defendants have not received any information regarding the identity of the parties on whose behalf Montana is purportedly bringing *parens patriae* claims, the nature of those parties' reimbursement schemes, the identity of the claims that Montana asserts were affected by the AWP scheme, and the alleged damages of those parties.

discovery directed at the parties, but also to Rule 45 subpoenas to third parties." BCBS/MT Mem. at 3. As defendants demonstrated in their opposition to Montana's motion which raised the same point – and which both BCBS/MT and Montana concede – this issue is not settled. *See id.* In any event, these authorities cited by BCBS/MT (and Montana) do not uniformly hold – assuming that a Rule 45 subpoena is "discovery" – that such discovery is never to be had. To the contrary, these cases reflect that the decision depends on context, which, tellingly, BCBS/MT fails to discuss.

In particular, most of the decisions that BCBS/MT (following Montana's lead) relies on involve subpoenas issued on the eve of trial. *See Mortgage Information Services, Inc. v. Kitchens*, 210 F.R.D. 562, 568 (W.D.N.C. 2002) (denying motion to compel a subpoena that was served 5 days before trial date and in response to an *in limine* motion); *Alper v. United States*,[2] 190 F.R.D. 281, 284 (D. Mass 2000) ("Plaintiff's last minute effort to obtain documents, if allowed, could raise significant evidentiary issues, about which the court will have had no prior notice."); *Integra Lifesciences I, Ltd. v. Merck KgaA*, 190 F.R.D. 556, 557 (S.D. Ca. 1999) (third-party subpoena at issue was issued after not only the close of discovery, but also after dispositive motions had been heard and decided, a pretrial conference held, and a pretrial order filed); *cf. Dreyer v. GACS Inc.*, 204 F.R.D. 120, 121-22 (N.D. Ind. 2001) (denying motion to compel concerning a subpoena issued almost one year after close of discovery).

In a similar vein is *Marvin Lumber & Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443 (D. Minn. 1997), a case that Montana heavily relied upon. In reaching its decision,

[2] *Alper* is further distinguishable on the basis of the court's determination that the discovery sought by the Rule 45 subpoena was directed at the defendant's expert and accordingly should have been sought under Rule 34 instead, which would certainly "comes up against the court's discovery schedule." *Alper*, 190 F.R.D. at 284.

the court raised two concerns that do not apply here: First, the court noted that "[f]requently, Rule 45 Subpoenas *duces tecum* are served, and enforced, at great distances from the residences of the parties, and from the forum in which the underlying legal proceedings pend, thereby necessitating the expenditure of travel time and money[.]" *Marvin Lumber & Cedar*, 177 F.R.D. at 445. The subpoena here specified that the deposition was to take place at BCBS/MT's offices in Helena, Montana. Second, the court expressed concern about "unnecessarily lengthen[ing the] discovery process, and divert[ing] the parties' attention, from the post-discovery aspects of preparing a case for Trial, to continued involvement in the discovery, and in the nondispositive." *Id.* These tailored requests go very much to the heart of the matter of what Montana claims – namely, that it seeks recovery on behalf of third-party payors who were allegedly deceived and harmed. Moreover, Montana is itself still engaged in document production.

Finally, the court in two of the cases that BCBS/MT cites permitted the discovery, notwithstanding that the subpoena which compelled the discovery was issued after the close of formal discovery. *See Nicholas v. Wyndham Int'l, Inc.*, No. Civ. 2001/147, 2003 WL 23198847, at *2 (D.V.I. Oct. 1, 2003) (ordering the third parties to respond to the subpoenas issued after close of discovery, but directing no additional discovery to be had); *Integra Lifesciences*, 190 F.R.D. at 562 (refusing to exclude document that was produced prior to requested meet and confer in response to a third-party subpoena issued after the close of discovery).

In sum, the cases that BCBS/MT relies upon demonstrate that there are two lines of authority concerning whether a Rule 45 subpoena issued to a third party comes within the scope of formal discovery and that one of those lines answers that question in the affirmative. However, these cases do not stand for the proposition that the information and documents sought

may not be had solely on the basis that the subpoena was issued after the deadline for discovery set out in a case-management order.

## II. The BCBSMT Subpoena Is Not Unduly Burdensome and Is Narrowly Tailored and Relevant to Montana's *Parens Patriae* Allegations

This second subpoena is narrowed, targeted, and designed to elicit documents and testimony on specific points that are directly relevant to Montana's *parens patriae* claims and which neither BCBS/MT nor Montana has previously produced. It is necessitated in part by Montana's failure to timely produce materials relating to its *parens patriae* claims on behalf of third-party payors.

The subpoena consists of only four narrowly-drawn document requests and a request for a deposition on a single topic. BCBS/MT claims an undue burden only with respect to one of the four document requests, namely that concerning retail pharmacy claims data. However, even with respect to this one topic, BCBS/MT's contentions about undue burden are unpersuasive for at least two reasons. First, defendants will reimburse BCBS/MT for the cost of obtaining the data, as they have done with all other third-party payors from whom defendants have obtained claims data.[3] Second, defendants indicated they would be amenable to narrowing the scope e.g. as to the time period if there is a good faith basis for doing so to minimize the burden of collecting the data. *Id.*

[3] Although BCBS/MT estimated in July 2004 that the claims data sought by the first subpoena would "cost well into the hundreds of thousands of dollars," it is extremely unlikely that this remains an accurate good-faith estimate of the cost of obtaining the data at issue. First, this estimate is way out of line with the actual cost of retrieving claims data from all of the many third-party payors from whom defendants have obtained claims data, some of which are small entities and all of which confront problems with obtaining data from legacy systems. *See* Young Decl. ¶ 8. Second, the data now sought is a subset of the data originally sought – *i.e.*, just retail pharmacy claims data.

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that this Court deny BCBS/MT's motion for a protective order relating to defendants' subpoena issued to BCBS/MT on May 19, 2006.

Dated: New York, New York
July 24, 2006

Respectfully submitted,

/s/ Andrew D. Schau

Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

*Attorneys for defendants Johnson & Johnson, Centocor Inc. and Ortho Biotech Products L.P. on behalf of all defendants*

**CERTIFICATE OF SERVICE**

I certify that on July 24, 2006, a true and correct copy of the forgoing Memorandum of Law was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LEXISNEXIS FILE AND SERVE for posting and notification to all parties.

/s/ Andrew D. Schau

Andrew D. Schau (admitted *pro hac vice*)
Erik Haas (admitted *pro hac vice*)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000

*Attorneys for defendants Johnson & Johnson, Centocor Inc. and Ortho Biotech Products L.P. on behalf of all defendants*