# Exhibit 1



E-SERVED
04/29/04
03:53 PM ET
MDL NO. 1456

## Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Erik Haas

Direct Phone
(212) 336-2117

Email Address
ehaas@pbwt.com

April 28, 2004

**By Hand**

Blue Cross and Blue Shield of Montana
560 N. Park Avenue
Helena, MT 59601

Re:      **In re Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Sir/Madam:

Please find enclosed a subpoena calling for the production of documents in this litigation. This subpoena is being served on behalf of all defendants to the Amended Master Consolidated Class Action Complaint.

In view of the expedited schedule ordered by the Court, we request that you produce on a rolling basis as the responsive documentation is identified. Defendants also request that you prioritize production of the following three categories of documents.

First, all documents your client produced in any other litigation, government investigation or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement, including *In re Lupron Marketing and Sales Practices Litigation* (MDL No. 1430). (Document request 27). Second, electronic transaction records showing reimbursement or payment for the subject drugs ("claims data") that is maintained in electronic format. To facilitate this production, we have attached a list of illustrative data fields defendants require. (Document request 10). Third, all contracts, communications and other documents in your possession concerning the named plaintiffs in this case. (Document request 1).

While the subpoena calls for the production of a deposition witness on May 19, we are willing to work with you to schedule a mutually agreeable deposition date. In some cases, based on the documentation produced, a deposition might not be required.

We look forward to discussing these issues with you in greater detail.

Very truly yours,

Erik Haas

Enclosure
cc:      All Counsel of Record (by Verilaw)



E-SERVED
04/29/04
03:53 PM ET
RMP-MDL No.1456

| Field Name | Field Description |
|---|---|
| Internal Control Number | Numeric or Alphanumeric field used to uniquely identify each claim. |
| Subscriber Number | Identification number for the subscriber. |
| Group Number | Identifies a set of individuals who obtain insurance and health care coverage services through a common group business relationship. |
| Billing Unit | Identifies a set of individuals who obtain insurance and health care coverage services under a certain billing relationship. |
| Group Name | Name of the group for which the subscriber is a member. |
| Fund Method | Identifies the financial arrangement of the group as either self-funded, fully-insured, or other |
| Product | High level categorization of a product.  (Indemnity, Managed Indemnity, PPO, Long Term Care, Point of Service, Drug, Dental, etc.) May be referred to as Line of Business. |
| Plan Type | Type of plan (Administrative services only, Fiscal Intermediary, etc.) |
| Patient Age | Patient age as of the incurred date of the claim. |
| Patient Gender | Gender of the Patient. |
| Member relationship | Relationship with the plan (subscriber, spouse, dependent, etc.) |
| Claim Number | Internal Insurer medical claim identification number |
| Claim Status or Type | Indicates processing status of claim. |
| First Service Date | Date of first service provided for the claim. |
| Date of Service | Date of service of the claim. |
| Payment Date | The date the claim reaches final disposition (also referred to as settlement date or check date). |
| Provider charge | Total amount billed (charges) for the service or drug provided. |
| PBM Dispensing Fee | The dispensing fee paid by the insurance carrier. |
| Drug Ingredient Cost | The amount the drug actually cost the pharmacy to obtain. |
| Amount Billed (Charges) | The total amount billed for the service or drug provided. |
| Allowed Charge | An amount that is used to determine any copay, coinsurance, and deductible applicable to a claim. |
| Claims Paid | Maximum potential financial liability for the covered service. |
| Copay | A fixed dollar amount deducted from the allowed amount for which the plan member  must pay for certain medical services as specified by the contract. |
| Deductible | A dollar amount deducted from the allowed amount for which the plan member is liable. |
| Coinsurance Amount | The coinsurance amount is the liability of the plan member. |
| COB Savings Amount | The amount of money saved as a result of coordination of benefits or subrogation. |
| Medicare Paid Amount | Amount paid by Medicare. |
| Amount Not Covered | Amount not covered. |
| NDC Code | National Drug Code assigned by the Federal Drug Administration for pharmaceuticals. |
| HCPCS/J Code | Procedure code associated with physician administered drugs. |
| HCPCS/J Code (2) | Second procedure code associated with physician administered drugs, if applicable. |



E-SERVED
04/29/04
03:53 PM ET
AWP-MDL NO.1456

| Field Name | Field Description |
| --- | --- |
| HCPCS/J Code (3) | Third procedure code associated with physician administered drugs, if applicable |
| CPT Code | Procedure code for medical service provided. |
| Icd9 Code | Diagnosis code for medical service provided. |
| Denial Reason | If the claim was denied, why was it denied |
| Provider network status | In network, Out of network |
| Provider Number | Identifies the provider which provided the drug or service. |
| Provider Type | Identifies the type of provider providing the drug or service. |
| Provider Tax ID | Tax ID of Provider providing service. |
| Pharmacy Name | Name of pharmacy drug was provided. |
| Pharmacy Number | Pharmacy identification number. |
| Diagnosis Code | Primary diagnosis for the medical service submitted on claim |
| AWP Price | Average Wholesale Price for Wholesale Drugs |
| Date Filled | Date prescription was filled. |
| Days Supply | Day supply of drug provided. |
| Drug Name | Name of the drug provided. |
| NDC | National Drug Code, unique identifier for drugs |
| Other Coverage Indicator | Indicates if other commercial or Medicare coverage is known to Payor |
| Patient ID | Unique identifier for individual patient. |
| Refill Code | Code associated with review amounts. |
| RX Dose | Dosage Amount of drug provided. |
| RX Type | Form of Drug provided. |
| State | State in which service was provided. |
| Units | Number of units provided. |
| Denial Reason | If the claim was denied, why was it denied. |
| Claim adjustment number | Claim Adjustment number to ensure only the latest claim status is provided. |

* Please note the field listing above is not all inclusive. This listing represents a combined listing of fields third party insurers typically maintain related to claims associated with physician assisted and retail pharmacy drugs. Any additional fields maintained with claim data should be provided.



E-SERVED
04/29/04
03:53 PM ET
MDL NO. 1456

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION : <br> : <br> : <br> : <br> : <br> : <br> THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION : <br> : <br> : <br> : <br> : <br> : | **SUBPOENA IN A CIVIL CASE** <br> **MDL NO. 1456** <br><br> **Civil Action No. 01-12257-PBS** <br><br> **Judge Patti B. Saris** <br> **(case pending in D. Mass.)** |

TO:     Blue Cross and Blue Shield of Montana
        560 N. Park Avenue
        Helena, MT 59601

[ ]  **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒  **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Blue Cross and Blue Shield of Montana <br> 560 N. Park Avenue <br> Helena, MT 59601 | May 19, 2004 at 10 a.m. |

☒  **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
        See Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Blue Cross and Blue Shield of Montana <br> 560 N. Park Avenue <br> Helena, MT 59601 | May 18, 2004 at 10 a.m. |

[ ]  **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants Johnson & Johnson, Centocor Inc. Ortho Biotech Products L.P., Janssen Pharmaceutica L.P. and McNeil-PPC on behalf of all defendants to the Amended Master Consolidated Class Action Complaint | April 28, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: Erik Haas, Patterson, Belknap, Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036. (212) 336 2000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)



E-SERVED
04/29/04
03:53 PM ET
MDL NO. 1456

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws ofhe United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                      SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuanceand service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breath of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspectionand copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)    fails to allow reasonable time for compliance;
(ii)   requires a person who is not a party or an officerof a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in orderto attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)   requires disclosure of an unrelated expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)  requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assuresthat the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) A person responding to a subpoena to produce documentsshall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



E-SERVED
04/29/04
03:53 PM ET
MDP-MDL No. 1456

## SCHEDULE A

## DEFINITIONS

1.      "Blue Cross and Blue Shield of Montana" ("Blue Cross") means Blue Cross and any of its past or present trustees, officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2.      "AMCC" means the Amended Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

3.      "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

4.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

5.      "Auditor" means any independent entity that provides an independent, third-party audit review of any aspect of medical coverage or services provided by any health plan or health and welfare fund to any of its participants or beneficiaries.

6.      "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-Span").

7.      "Benefit Consultant" means any person or entity that provides information,

1



counsel or advice to any health plan or health and welfare fund regarding any medical benefit or service provided by any health plan or health and welfare fund to any participant or beneficiary.

8.      "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

9.      "CMS" shall mean Centers for Medicare and Medicaid Services.

10.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

11.     "Concerning" means referring to, describing, evidencing, or constituting.

12.     "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

13.     "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

14.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

15.     "Government payor" means any federal or state government entity or program that reimburses Providers for drugs or health care services, including but not limited to CMS, Medicare, and Medicaid.

16.     "Independent Practice Association" means any organized group of

2

003073  1



providers whose members provide health care to any participant or beneficiary.

17.    "MAC" means Maximum Allowable Cost and includes the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

18.    "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, subject drugs.

19.    "MCC" means the Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in the United States District Court for the District of Massachusetts.

20.    "Named Plaintiffs" means (i) the Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund; (ii) Teamsters Health & Welfare Fund of Philadelphia and Vicinity; (iii) Twin Cities Bakery Workers Health and Welfare Fund; (iv) United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund; (v) Philadelphia Federation of Teachers Health and Welfare Fund; or (vi) Man-U Service Contract Trust Fund, (vii) Vermont Public Interest Research Group, (viii) Wisconsin Citizen Action, (ix) New York StateWide Senior Action Council, (x) Citizen Action of New York and (xi) Citizens for Consumer Justice.

21.    "PBM" means pharmacy benefit manager.

22.    The terms "Participant" and "Beneficiary" mean a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

23.    "Person" means any natural person or any business, legal, or governmental entity or association.

24.    "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

3



25.     "Private payor" means any non-government entity or program that reimburses Providers for drugs or health care services, including but not limited to health insurance companies, health maintenance organizations, preferred provider organizations, self insurance plans, health plans, unions, and welfare and benefit funds.

26.     "Provider" means any physician or entity that provides health care to any Participant or Beneficiary.

27.     "Publisher" means an entity that publishes a listing of pharmaceutical prices, and includes publications identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes FirstDataBank, Red Book, Blue Book and Medispan.

28.     "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

29.     "Subject drug" or "subject drugs" means one or more of drugs listed on Exhibit A hereto.

30.     "Third Party Administrator" means any entity that provides administrative services to any health plan or health and welfare fund relating to any medical benefit provided to any participant or beneficiary.

31.     "WAC" means wholesale acquisition cost or the list prices for sales by manufacturers to wholesalers.

32.     "Wholesaler" means any entity that purchases subject drugs from a manufacturer and resells such drugs to any other entity.

33.     "You" or "your" shall refer to Blue Cross.



E-SERVED
04/29/04
03:53 PM ET
MP-MDL NO. 456

## INSTRUCTIONS

1.      Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.      The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.      Provide the following information for each document withheld on the grounds of privilege:

002022



(a)     its date;

(b)     its title;

(c)     its author;

(d)     its addressee;

(e)     the specific privilege under which it is withheld;

(f)     its general subject matter; and

(g)     a description of it that you contend is adequate to support
your contention that it is privileged.

6.      These requests for production of documents are continuing in nature
pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary,
continuing production and supplementation of responses between the initial date for production
set forth above and the time of trial.

7.      The documents produced must be produced as they are kept in the usual
course of business or organized and labeled to correspond with the categories in the request.

8.      To the extent that you consider any of the following requests for
production of documents objectionable, please respond to the remainder of the production
request, and separately state the part of each request to which you object and each ground for
each objection.

003073 1



## DOCUMENTS TO BE PRODUCED

1.     All documents concerning the Named Plaintiffs, including without

limitation:

(a)     all communications with the Named Plaintiffs, including counsel
for the Named Plaintiffs;

(b)     all contracts with the Named Plaintiffs;

(c)     reports provided to and received from the Named Plaintiffs;

(d)     documentation concerning the amount to charge the Named
Plaintiffs for drugs administered; and

(e)     all data concerning drugs dispensed to or requested by the Named
Plaintiffs' members or beneficiaries.

2.     All documents relating to or reflecting any definition or meaning of AWP.

3.     All documents that reflect, discuss, memorialize, or otherwise relate to

your setting of reimbursement or payment rates for any subject drug.

4.     All documents that you or someone acting on your behalf relied upon in

setting reimbursement or payment rates for any subject drug.

5.     All minutes from meetings where reimbursement or payment for subject

drugs was discussed, including meetings where the setting of reimbursement or payment rates

was discussed.

6.     All documents relating to or reflecting the costs to providers of any subject

drug.

7.     All documents relating to or reflecting the amounts you reimburse

providers for any subject drug.

8.     All documents relating to or reflecting any differences between the costs to

providers of any subject drug and the amounts you reimburse providers for any subject drug.

7

003073 1



9.     All documents relating to or reflecting your awareness that the costs to providers of subject drugs are different from the amounts you reimburse providers for subject drugs.

10.     All transaction records maintained in a database or other electronic format concerning amounts reimbursed or paid by you for Subject Drugs.

11.     All documents relating to your claims processing policies and procedures for any subject drug.

12.     All documents reflecting any payments made by you that were based in whole or in part on the AWP of any subject drug.

13.     All communications between you and providers or pharmacies relating to reimbursement, payment or prices of any subject drug.

14.     All documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug.

15.     All documents concerning your decision to rely on, reliance on, or use of drug pricing information published by any publisher for any subject drug.

16.     All documents created by or received from any publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between you and any publisher regarding any subject drug.

17.     All documents relating or referring to AWPs, including documents that relate or refer to the relationship between any price and AWP for any subject drug.

18.     All documents relating or referring to any difference between an AWP and an actual payment by you or anyone else for any subject drug.

19.     To the extent not otherwise produced, all documents concerning AWP,

8



AMP, WAC, MAC, EAC, Best Price or any other drug pricing, payment or reimbursement information for any subject drug.

20.    All documents relating or referring to your contractual relationships with PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover subject drugs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

21.    Documents sufficient to identify all persons involved in negotiation of contractual relationships with PBMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, independent practice associations, pharmacies or providers insofar as they cover any subject drug.

22.    All documents relating to any profit analysis you have performed or received relating to your reimbursement or payment for any subject drug.

23.    All documents concerning any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug.

24.    All filings with any state or federal government entity made by you or on your behalf that refer or relate to AWP.

25.    All documents created by or received from CMS, United States Department of Health and Human Services, The Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal or state institution, agency, department, or office regarding the pricing of prescription drugs.

26.    All documents provided to CMS, United States Department of Health and



Human Services, the Department of Health and Human Services Office of the Inspector General,

the General Accounting Office, Congress, or any other federal or state institution, agency,

department, or office regarding the pricing of any subject drug.

      27.    All documents produced by you in any litigation, government investigation

or inquiry related to the use of AWP in Medicare, Medicaid or private reimbursement.

      28.    All current and historical organizational charts for all of your departments.



E. SERVED
04/29/04
03:53 PM ET
BMR-MDL-No.1456

**EXHIBIT A**

**ALL DRUGS LISTED BELOW ARE SUBJECT TO THESE DISCOVERY REQUESTS**

| | |
|---|---|
| Abbott | Acetylcyst |
| Abbott | Acyclovir |
| Abbott | A-Methapred |
| Abbott | Amikacin |
| Abbott | Amikacin Sul |
| Abbott | Aminosyn |
| Abbott | Biaxin |
| Abbott | Calcijex |
| Abbott | Cimetidine |
| Abbott | Clindamycin |
| Abbott | Depakote |
| Abbott | Depakote SPR |
| Abbott | Dextrose |
| Abbott | Dextrose w/Sodium Chloride |
| Abbott | Diazepam |
| Abbott | Ery-Tab |
| Abbott | Erythromycin Cap |
| Abbott | Erythromycin Tab Bs |
| Abbott | Fentanyl Cit |
| Abbott | Furosemide |
| Abbott | Gentamicin |
| Abbott | Heparin Lock |
| Abbott | Leucovor CA |
| Abbott | Lorazepam |
| Abbott | Prevacid Cap |
| Abbott | Prevacid Gra |
| Abbott | Sod Chloride |
| Abbott | Sodium Chloride Sol |
| Abbott | Tobra/Nacl |
| Abbott | Tobramycin |
| Abbott | Vancomycin |
| | |
| Allen & Hanburys | Beconase AQ SPR |
| Allen & Hanburys | Flonase SPR |
| Allen & Hanburys | Serevent AER |
| Allen & Hanburys | Serevent DIS MIS |
| | |
| Amgen | Aranesp |
| Amgen | Enbrel |
| Amgen | Epogen |
| Amgen | Kineret |
| Amgen | Neulasta |



| Amgen | Neupogen |
|---|---|
| Astrazeneca | Accolate |
| Astrazeneca | Arimidex |
| Astrazeneca | Casodex |
| Astrazeneca | Diprivan |
| Astrazeneca | Nolvadex |
| Astrazeneca | Seroquel |
| Astrazeneca | Zestril |
| Astrazeneca | Zoladex |
| Astrazeneca | Zomig |
| Astrazeneca | Zomig ZMT |
| Astrazeneca | Atacand |
| Astrazeneca | Atacand HCT |
| Astrazeneca | Entocort EC |
| Astrazeneca | Nexium |
| Astrazeneca | Prilosec |
| Astrazeneca | Pulmicort |
| Astrazeneca | Rhinocort |
| Astrazeneca | Toprol XL |
| Aventis | Allegra |
| Aventis | Allegra-D |
| Aventis | Amaryl |
| Aventis | Anzemet |
| Aventis | Arava |
| Aventis | Azmacourt |
| Aventis | Calcimar |
| Aventis | Carafate |
| Aventis | Cardizem Cap |
| Aventis | Cardizem Inj |
| Aventis | Cardizem Tab |
| Aventis | Gammar |
| Aventis | Gammar P-IV |
| Aventis | Intal |
| Aventis | Intal INH |
| Aventis | Nasacort |
| Aventis | Nasacort AQ |
| Aventis | Taxotere |
| Aventis | Trental |
| B. Braun | Dextrose |
| B. Braun | Dextrose with sodium chloride |
| B. Braun | Dextrose with lactated ringers |
| B. Braun | Heparin with dextrose |
| B. Braun | Heparin with sodium chloride |



| | |
|---|---|
| B. Braun | Sodium chloride IV solution |
| B. Braun | Sodium chloride irrigation |
| | |
| Baxter | Aggrastat |
| Baxter | Ativan |
| Baxter | Bebulin VH |
| Baxter | Brevibloc |
| Baxter | Buminate |
| Baxter | Cisplatin |
| Baxter | Claforan/D5W |
| Baxter | Dextrose |
| Baxter | Doxorubicin |
| Baxter | Gammagard SD |
| Baxter | Gentam/NACL |
| Baxter | Gentran 40 |
| Baxter | Gentran 75 |
| Baxter | Gentran/Trav |
| Baxter | Heparin Lock |
| Baxter | Iveegam |
| Baxter | Iveegam EN |
| Baxter | Osmitrol |
| Baxter | Osmitrol VFX |
| Baxter | Recombinate |
| Baxter | Sod Chloride |
| Baxter | Sodium Chlor Sol |
| Baxter | Travasol |
| Baxter | Travasol w/Dextrose |
| Baxter | Vancocin HCL |
| Baxter | Vancocin/Dex |
| | |
| Bayer Pharmaceutical | Cipro |
| Bayer Pharmaceutical | Cipro Cystit Tab |
| Bayer Pharmaceutical | Cipro I.V. |
| Bayer Pharmaceutical | Cipro XR |
| Bayer Pharmaceutical | DTIC-DOME |
| Bayer Pharmaceutical | Gamimune N |
| Bayer Pharmaceutical | Koate-HP |
| Bayer Pharmaceutical | Kogenate FS |
| Bayer Pharmaceutical | Mithracin |
| | |
| B-M Squibb | Paraplatin Inj |
| B-M Squibb | Blenoxane |
| B-M Squibb | Cytoxan |
| B-M Squibb | Etopophos |
| B-M Squibb | Rubex |
| B-M Squibb | Taxol |



| | |
|---|---|
| B-M Squibb | Vepesid |
| B-M Squibb | Ividex EC |
| B-M Squibb | Avapro |
| B-M Squibb | Buspar |
| B-M Squibb | Cefzil |
| B-M Squibb | Glucophage) |
| B-M Squibb | Glucovance) |
| B-M Squibb | Monopril) |
| B-M Squibb | Plavix) |
| B-M Squibb | Serzone) |
| B-M Squibb | Tequin) |
| B-M Squibb | Coumadin |
| Apothecon | Amikin (amikacin sulfate) |
| Apothecon | Fungizone (amphotercin b) |
| | |
| Cerenex | Amerge |
| Cerenex | Imitrex |
| Cerenex | Zofran |
| | |
| Dey Labs | Acetylcysteine |
| Dey Labs | Albuterol |
| Dey Labs | Cromolyn Sodium |
| Dey Labs | Ipratropium |
| Dey Labs | Metaproteren Neb |
| | |
| Fujisawa | Aristocort |
| Fujisawa | Aristospan |
| Fujisawa | Cefizox |
| Fujisawa | Cefizox/D5W |
| Fujisawa | Cyclocort |
| Fujisawa | Lyphosin |
| Fujisawa | Nebupent or Pentam 300 |
| Fujisawa | Prograf |
| Fujisawa | Vinblastine Sulfate |
| | |
| Gensia | Amikacin Sulfate |
| Gensia | Amphotercin B |
| Gensia | Etoposide |
| Gensia | Leucovorin Calcium |
| | |
| GlaxoSmithKline | Advair Diskus |
| GlaxoSmithKline | Agenerase |
| GlaxoSmithKline | Agenerase SOL |
| GlaxoSmithKline | Alkeran |
| GlaxoSmithKline | Amerge |
| GlaxoSmithKline | Beconase |

14



| | |
|---|---|
| GlaxoSmithKline | Ceftin |
| GlaxoSmithKline | Combivir |
| GlaxoSmithKline | Daraprim |
| GlaxoSmithKline | Epivir |
| GlaxoSmithKline | Epivir HBV |
| GlaxoSmithKline | Flonase |
| GlaxoSmithKline | Flovent |
| GlaxoSmithKline | Flovent ROTA |
| GlaxoSmithKline | Imitrex |
| GlaxoSmithKline | Kytril |
| GlaxoSmithKline | Lamictal |
| GlaxoSmithKline | Lanoxin |
| GlaxoSmithKline | Lanoxin Ped |
| GlaxoSmithKline | Leukeran |
| GlaxoSmithKline | Mepron |
| GlaxoSmithKline | Myleran |
| GlaxoSmithKline | Navelbine |
| GlaxoSmithKline | Paxil |
| GlaxoSmithKline | Paxil CR |
| GlaxoSmithKline | Purinethol |
| GlaxoSmithKline | Relenza |
| GlaxoSmithKline | Retrovir |
| GlaxoSmithKline | Servent |
| GlaxoSmithKline | Thioguanine |
| GlaxoSmithKline | Trizivir |
| GlaxoSmithKline | Valtrex |
| GlaxoSmithKline | Ventolin HFA |
| GlaxoSmithKline | Wellbutrin |
| GlaxoSmithKline | Zantac |
| GlaxoSmithKline | Ziagen |
| GlaxoSmithKline | Zofran |
| GlaxoSmithKline | Zovirax |
| GlaxoSmithKline | Zyban |
| | |
| Immunex | Leucovorin Calcium |
| Immunex | Leukine |
| Immunex | Methotrexate Sodium |
| Immunex | Novantrone |
| Immunex | Thioplex |
| | |
| J&J Group (Centocor) | Remicade |
| J&J Group (Janssen Pharmaceutica) | Aciphex |
| J&J Group (Janssen Pharmaceutica) | Duragesic |
| J&J Group (Janssen Pharmaceutica) | Reminyl |
| J&J Group (Janssen Pharmaceutica) | Risperdal |
| J&J Group (Janssen Pharmaceutica) | Sporanox |



| | |
|---|---|
| J&J Group (Ortho McNeil Pharmaceutical) | Bicitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Elmiron |
| J&J Group (McNeil-PPC) | Flexeril |
| J&J Group (Ortho McNeil Pharmaceutical) | Floxin |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol |
| J&J Group (Ortho McNeil Pharmaceutical) | Haldol Decan |
| J&J Group (Ortho McNeil Pharmaceutical) | Levaquin |
| J&J Group (Ortho McNeil Pharmaceutical) | Mycelex |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease |
| J&J Group (Ortho McNeil Pharmaceutical) | Pancrease MT |
| J&J Group (Ortho McNeil Pharmaceutical) | Parafon Fort |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-K Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Polycitra-LC Sol |
| J&J Group (Ortho McNeil Pharmaceutical) | Regranex |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 3 |
| J&J Group (Ortho McNeil Pharmaceutical) | Terazol 7 |
| J&J Group (Ortho McNeil Pharmaceutical) | Testoderm |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin |
| J&J Group (Ortho McNeil Pharmaceutical) | Tolectin DS |
| J&J Group (Ortho McNeil Pharmaceutical) | Topamax |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylenol/Cod |
| J&J Group (Ortho McNeil Pharmaceutical) | Tylox |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultracet |
| J&J Group (Ortho McNeil Pharmaceutical) | Ultram |
| J&J Group (Ortho McNeil Pharmaceutical) | Urispas |
| J&J Group (Ortho McNeil Pharmaceutical) | Vascor |
| J&J Group (Ortho Biotech Products) | Procrit |
| J&J Group (Ortho Neutrogena) | Erycette |
| J&J Group (Ortho Neutrogena) | Grifulvin V |
| J&J Group (Ortho Neutrogena) | Monistat |
| J&J Group (Ortho Neutrogena) | Renova |
| J&J Group (Ortho Neutrogena) | Retin-A |
| J&J Group (Ortho Neutrogena) | Retin-A Micr Gel |
| J&J Group (Ortho Neutrogena) | Spectazole Cream |
| | |
| Novartis | Clozaril |
| Novartis | Combipatch |
| Novartis | Comtan |
| Novartis | Estraderm |
| Novartis | Exelon |
| Novartis | Femara |
| Novartis | Lamisil |
| Novartis | Lamprene |
| Novartis | Lescol |



| | |
|---|---|
| Novartis | Lescol XL |
| Novartis | Lotensin |
| Novartis | Lotensin HCT |
| Novartis | Lotrel |
| Novartis | Miacalcin |
| Novartis | Parlodel |
| Novartis | Ritalin |
| Novartis | Ritalin LA |
| Novartis | Starlix |
| Novartis | Tegretol |
| Novartis | Tegretol XR |
| Novartis | Trileptal |
| Novartis | Vivelle |
| Novartis | Vivelle-DOT |
| | |
| Pfizer | Accupril |
| Pfizer | Accuretic |
| Pfizer | Cardura |
| Pfizer | Celontin |
| Pfizer | Dilantin |
| Pfizer | Dilantin-125 |
| Pfizer | Estrostep FE |
| Pfizer | Femhrt 1/5 |
| Pfizer | Lipitor |
| Pfizer | Lopid |
| Pfizer | Minizide |
| Pfizer | Nardil |
| Pfizer | Neurontin |
| Pfizer | Nitrostat |
| Pfizer | Renese |
| Pfizer | Rescriptor |
| Pfizer | Viracept |
| Pfizer | Zarontin |
| Pfizer | Zithromax |
| Pfizer | Zoloft |
| Pfizer | Zyrtec |
| | |
| Pharmacia | Adriamycin PFS |
| Pharmacia | Adriamycin RDF |
| Pharmacia | Adrucil |
| Pharmacia | Amphocin |
| Pharmacia | Amphotercin B |
| Pharmacia | Bleomycin Sulfate |
| Pharmacia | Celebrex |
| Pharmacia | Cleocin-T |
| Pharmacia | Cytarabine (Cytosar-U) |

002073 .1



E-SERVED
04/29/04
03:53 PM ET
AWP-MDL No.1456

| | |
|---|---|
| Pharmacia | Depo-Testosterone |
| Pharmacia | Etoposide |
| Pharmacia | Neosar |
| Pharmacia | Solu-Cortef |
| Pharmacia | Solu-Medrol |
| Pharmacia | Toposar |
| Pharmacia | Vincasar PFS |
| | |
| Schering | Clarinex |
| Schering | Claritin |
| Schering | Claritin-D |
| Schering | Diprolene |
| Schering | Diprolene AF |
| Schering | Diprosone |
| Schering | Elocon |
| Schering | Eulexin |
| Schering | Integrilin |
| Schering | Intron-A |
| Schering | Lotrisone |
| Schering | Nasonex |
| Schering | Peg-Intron |
| Schering | Proventil |
| Schering | Rebetol |
| Schering | Sebizon |
| Schering | Temodar |
| Schering | Trinalin Rep |
| Schering | Vanceril |
| | |
| Warrick | Albuterol |
| Warrick | Clotrimazole |
| Warrick | Griseofulvin, Ultramicrocry |
| Warrick | ISMN |
| Warrick | Oxaprozin |
| Warrick | Perphenazine |
| Warrick | Potassium Chloride |
| Warrick | Sodium Chloride |
| Warrick | Sulcrafate Tablets |
| Warrick | Theophylline |
| | |
| Sicor | Acyclovir Sodium |
| Sicor | Amikacin Sulfate |
| Sicor | Doxorubicin |
| Sicor | Etoposide |
| Sicor | Leucovorin Calcium |
| Sicor | Pentamidine Isethionate |
| Sicor | Tobramycin Sulfate |



| | |
|---|---|
| TAP | Prevacid |
| | |
| Watson | Dexamethasone Acetate8 |
| Watson | Dexamethasone Sodium Phosphate |
| Watson | Diazepam |
| Watson | Estradiol |
| Watson | Ferrlecit |
| Watson | Fluphenazine HCL |
| Watson | Gemfibrozil |
| Watson | Gentamicin Sulfate |
| Watson | Imipramine HCL |
| Watson | Infed |
| Watson | Lorazepam |
| Watson | Nadolol |
| Watson | Perphenazine2 |
| Watson | Propranolol |
| Watson | Ranitidine |
| Watson | Vancomycin HCL |
| Watson | Verapamil HCL |

003073.1

Exhibit 2



**MILLER & CHEVALIER**
CHARTERED

655 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005-5701
202.626.5800  FAX: 202.626.0858
WWW.MILLERCHEVALIER.COM

ADAM P. FEINBERG
202.626.6087
afeinberg@milchev.com

July 23, 2004

**VIA FACSIMILE AND 2-DAY FEDERAL EXPRESS**

Adeel Abdullah Mangi, Esquire
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

      **Re:**   **In re: Pharmaceutical Industry Average Wholesale Price Litigation**

Dear Mr. Mangi:

    This letter is in response to your letter dated July 19, 2004, regarding the subpoena your clients served on BlueCross BlueShield of Montana ("BCBSMT") in the above referenced matter.

    As I have told you on the phone several times, BCBSMT is more than willing to try to produce responsive documents, provided you narrow your requests substantially so as to address the objections BCBSMT set forth in writing on May 14, 2004.[1]  To date, you have not done that. Indeed, some of your firm's purported attempts to "narrow" the requests only serve to make them more burdensome.  For example, when we spoke with your colleagues Erik Haas and Elaine H. Wynn on May 27, 2004, they informed us it would be sufficient for BCBSMT to supply only a representative sample of BCBSMT's contracts.  However, Ms. Wynn's June 4, 2004, follow-up letter to us set forth "a listing of the *minimum* number and types of contract defendants would expect to be produced," and calling for well in excess of 500 "sample" contracts meeting *all* of the specified parameters in as many as eight categories.  Although it would be extremely burdensome, it would be easier for BCBSMT to simply produce all of its contracts than to comply with your notion of a representative sample.

    In any event, BCBSMT remains willing to try to work with you to achieve a mutually acceptable solution.  With that in mind, BCBSMT has endeavored to compile what it believes is a representative sampling of its contracts.  We hope to have these documents available by August 13, 2004.  You asked me on the phone to describe the methodology used to collect this sample.  BCBSMT is compiling the sample on a case by case basis.  For example, in categories where only a handful of form contracts were used, BCBSMT is providing you examples of each. We will attempt to provide you with a fuller explanation of how the documents were collected when they are produced.

---

[1]    Neither this letter nor BCBSMT's production of any documents should be construed as a waiver of any of these objections.

Adeel Abdullah Mangi, Esquire
July 23, 2004
Page 2

The electronic claims data sought in the subpoena presents additional and even more substantial problems. This data currently resides in at least three places. First, data from before 1991 until 1993 was created using the RBS system and is archived. The data is currently on data tapes and must be accessed using COBOL programs in a batch mode. Unfortunately, BCBSMT does not have technical or business staff capable of interpreting this data, so any extraction will be extremely difficult, if not impossible.

Second, most of the remaining data you seek is archived and was created using the Long Range System Plan ("LRSP") system. Typically, claims that are older than approximately 24 to 27 months have been archived. There are a few exceptions to this. For example, a claim associated with a once-in-a-lifetime procedure is never achieved. The archived claims are on data tapes and are accessible by COBOL programs in a batch mode.

Third, data in the LRSP system that has not been archived is available on-line.[2]

Wherever it resides, it will be difficult to pull data associated with the more than 300 drugs covered by the subpoena. The easiest way to do that would be to search for the "J-drug procedure codes" associated with each drug. This will require research into which codes are applicable and additional programming efforts. Moreover, BCBSMT is unable to search by these codes for claims prior to 1997. Claims from before this time did not utilize standardized codes and would have to be pulled by manually reviewing each hardcopy claim.

BCBSMT does not have the technical staff, and in some cases the expertise, to extract the data sought in the subpoena. BCBSMT would have to hire outside consultants to perform the work, at a cost well into the hundreds of thousands of dollars.

Finally, your letter inquired about the documents produced in the Lupron litigation. Those documents – Bates numbered MON 0000001 through MON 0006501 – are enclosed. Please note that Bates numbers MON 0006458, MON 0006459, and MON 0006501 are CDs. In addition, BCBSMT is about to produce additional documents in the Lupron litigation, and we will provide copies of those to you shortly.

Sincerely,

Adam P. Feinberg

Enclosures (by U.S. Mail only)

---

[2]     In addition, BCBSMT's pharmacy claims data is in the possession of BCBSMT's three pharmacy benefit managers ("PBMs"). BCBSMT understands that these PBMs are entitled to charge a fee to access this data. Copies of BCBSMT's contracts with these PBMs are included in the Lupron documents.

# Exhibit 3



JENIPHR A.E. BRECKENRIDGE
DIRECT • (206) 224-9325
JENIPHR@HBSSLAW.COM

HAGENS BERMAN
SOBOL SHAPIRO LLP

May 9, 2006

**Via Electronic Mail**

Mr. Christopher R. Dillon
Ropes & Gray
One International Place
Boston, MA  02110-2624

     Re:    <u>Nevada AWP Actions</u>

Dear Christopher:

    This letter is a partial reply to your letter dated April 28, 2006 ("April 28, 2006 Letter").  The State of Nevada disagrees with many of the characterizations and positions taken in your letter.  This will not be the State's only response on topics raised.

***Outstanding Document Requests***

    Numerous documents have been produced since the April 28 Letter.  We will not recount those productions here.

    **Category 1:**  Lack of cooperation and full disclosure among drug defendants is a defense problem.  The State has met its discovery obligations by producing responsive defendant-specific documents located for that defendant to the specific defendant and asking the defendant to share the information with other defendants as it deems appropriate.  The State has no obligation to provide a list of the documents produced by drug manufacturer name.  Further, the State has no obligation to produce similar documents for drug manufacturers not in the case.  In most cases, documents in this category contain information defendants deem confidential and proprietary.  Defendants other than your clients have written to thank us for treating their documents in this way.  Your own clients have withdrawn copies of this type of communications introduced as exhibits at depositions because of their sensitivity.  The State will not bear the responsibility of divulging this information.  Defendants should obtain this information from one another.

ATTORNEYS AT LAW                    SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292   F 206.623.0594
1301 FIFTH AVENUE • SUITE 2900 • SEATTLE WASHINGTON 98101
www.hagens-berman.com

001534-13  107470 V1

Mr. Christopher R. Dillon
May 8, 2006
Page 2

We have produced responsive correspondence for Warrick and Schering-Plough. As a practical matter, if you have produced these to your co-defendants, it would seem that you are in a good position to broker a "show me yours; show you mine" exchange. Leave the State out of it.

**Category 2:**  Responsive documents will be produced in accordance with the procedure detailed under Category 1 above.

**Category 6:**  The State has not located responsive documents.  The State disagrees that just because the information might be available to First Health, the State necessarily has access to this information.  Furthermore, defendants have not demonstrated that the historical information is in First Health's possession.  Moreover, the same information is the subject of defendants' December 2, 2005 subpoena to First Health.  The State has not been provided with copies of documents that First Health provided defendants in response to this subpoena.  Defendant (sic) First Health Group Corporation's Response to Subpoena to Produce Documents dated March 17, 2006 indicated that First Health would provide a sampling of responsive MAC documents would be provided to defendants.  Document produced by First Health may include the information you seek.

**Category 7:**  The State Medicaid library has been checked.  There are no responsive OIG or CMS reports to produce.

As for the HCFA-64 reports, the State has produced sample HCFA 64 reports. This is what led GSK on behalf to request access to the complete set of available reports.  The State has already made them available as kept in the ordinary course of business.  Because of their volume, defendants must review them before they are copied.  I believe sample reports have been used as exhibits at certain depositions.  You should check with Covington and Burling about these reports.

**Rebate Data:**  The State is inclined to agree to a stipulation.  However, before we do so we request defendants to provide us with copies of the rebate data to review and a draft of the stipulation language.

*30(b)(6) Notice*

**Topics 1-6:**  As an initial matter, defendants are *not* entitled to discovery with respect to Topics 2, 3 and 5 and therefore, contrary to your suggestion in the April 28, 2006 Letter, we will not produce witnesses with knowledge on those topics.  Magistrate

Mr. Christopher R. Dillon
May 8, 2006
Page 3

Bowler did *not* order the State to provide discovery on all the non-Medicaid agencies
from which the defendants sought discovery.  Defendants were limited to three entities
of their choosing.  Defendants chose the Division of Mental Health and Developmental
Services, Senior Rx, and the Public Employee Benefits Fund.   We will provide
witnesses as described in previous correspondence.

These witnesses will not be Fed. Rule 30(b)(6) witnesses.  Your April 28 letter is
the first suggestion by defendants that they would like to treat the upcoming  non-
Medicaid witnesses as Fed. R. Civ. P. 30(b)(6) witnesses.  This was not our
understanding of the purpose and scope of these depositions as ordered by Magistrate
Bowler.  Defendants' motion to compel non-Medicaid discovery was filed in
January 31, 2006, the same data as Defendants' Second 30(b)(6) notice.  Obviously, the
target of the motion to compel could not have been the deposition notice.  Defendants
could not have moved to compel a deposition notice that had not yet become due.
Consistent with that point, the prospect of treating the witnesses as 30(b)(6) witnesses
was not raised in defendants' briefing on the motion to compel nor, to my
understanding, at the oral argument.  Furthermore, the 30(b)(6) notice as it relates to
non-Medicaid entities is broader than the discovery expectations outlined in Katie
O'Sullivan's March 30, 2006 letter.  For a month before your letter,  have been
operating off the March 30, 2006 O'Sullivan Letter as we selected witnesses whose files
would be searched and would be produced for deposition.[1]

The witnesses will testify about their knowledge only.  Because drug acquisition
and reimbursement for these entities is often handled by outside vendors, you will likely
find that the state employees have little knowledge of the topics in which defendants are
interested.  The State is having difficulty even locating documents that detail drug
acquisitions and reimbursement rates.  The documents we have produced to date reflect
these difficulties as will the witness testimony.

**Topics 7-14 and 17:**  The State objected to the notice in its entirety shortly after
it was received.  April 10, 2006 was a follow up.  Please consult with your co-
defendants regarding earlier communications regarding the State's objections.

---

[1] Ms. O'Sullivan's letter related to the Montana and Nevada AWP cases.  In the Montana case, there has been
no expectation communicated that either the State would provide six witnesses or that the witnesses would be
deemed to be Fed. R. Civ. P. 30(b)(6) witnesses.

Mr. Christopher R. Dillon
May 8, 2006
Page 4

In addition to objections to the subject matters, the State objects to the burden created by this notice. Defendants have taken an excessive number of depositions in this case. Additional depositions are unnecessary.

As for defendants suggestion that the State "adopt" the testimony of "some of the State witnesses . . . on these topics" in lieu of producing 30(b)(6) witnesses, this proposal is vague. Before evaluating this offer, the State would need to know what topics, what witnesses and what portions of their testimony defendants propose the State should "adopt."

We are willing to discuss this further. The State is prepared to move for a protective order if necessary.

### Claims Data

First Health has agreed to produce certain claims data. Jason Litow and Ron Dove had negotiated extensively with First Health since August, 2005 for the claims data from 2003 to the present, including physician administered drugs. First Health presented them with a proposal, with costs, for producing the data. The proposal was dated March 28, 2006 and was addressed to Jason Litow. To my knowledge, no defendant has followed up the pending proposal.

The April 28, 2006 letter is the first time defendants have requested claims data for "any reimbursement of the Medicare co-pay"; or "any parens patriae claims." instance. The data that has been produced by the State today is the product of extensive negotiations with defendants. Defendants dictated the data fields they wanted provided. These areas will be covered by the State's expert reports at the appropriate time. The parens patriae claims will be supported by defendants' own data.

### Electronic Discovery

We disagree with your statement that as it relates to electronic discovery it is "the State's burden to search the files of *all individuals* that have relevant documents." April 28, 2006 Letter at 5. Magistrate Judge Bowler ordered the State to search the files of witnesses who have been or will be deposed. As explained to you last week, the State followed the list provided by Covington and Burling in the December 14, 2005 letter. We e-mailed you before the State launched the electronic searches asking you to confirm that this is the list we should use. When we did not hear back from you, we

Mr. Christopher R. Dillon
May 8, 2006
Page 5

assumed it was the appropriate list.  We will add the additional witnesses to the list, if time permits.

The April 28, 2006 Letter asked us to explain "why the data is not available" for "Ms. Wright, Mr. Thomson (sic), and Ms. Squartsoff."  We disagree that we have any additional obligation to provide the explanations you request regarding available electronic information.  Defendants have already taken the depositions of two IT staff people in this case: Mel Rosenberg and Ron Swenson.  Nevertheless, Mr. Rosenberg informs me that the tenures and email accounts of these former Medicaid employees predated the current system.

### *Depositions*

As previously communicated, we are working to schedule the remaining Nevada witnesses for the week of May 22, 2006.  Any information you can provide on the expected duration of the depositions for each witness would be helpful.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Jeniphr A.E. Breckenridge

cc:   L. Timothy Terry