# EXHIBIT 38

.



10433258

Jan 26 2006
11:07PM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE LITIGATION )
            )
————————————————————— )
            )
THIS DOCUMENT RELATES TO ALL )
CLASS ACTIONS )
01-CV-12257-PBS AND 01-CV-339 )
————————————————————— )

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

### [MODIFIED AND CORRECTED PROPOSED VERSION 1]
### CONSOLIDATED ORDER RE: MOTION FOR CLASS CERTIFICATION

————————, 2006

Saris, U.S.D.J.

Plaintiffs have moved, pursuant to Fed. R. Civ. P. 23, for an order certifying a class in this action. Having considered the submissions of the parties and the record in this case, IT IS HEREBY ORDERED that plaintiffs' motion for class certification is GRANTED IN PART and DENIED IN PART as to the claims asserted in the Third Amended Master Consolidated Class Action Complaint ("TAMCAC"), as follows:

### I. CLASSES AND SUBCLASSES CERTIFIED

The Court certifies the following Classes:

1. **Class 1: Medicare Part B Co-Pay Class.**

    a. Class Definition:

      All natural persons who made a co-payment based on
      AWP, or who have incurred a currently enforceable
      obligation to make a co-payment, for a Medicare Part B
      covered Subject Drug[1] that was manufactured by

---

[1] The Subject Drugs are identified in the Table of Subject Drugs found at the end of this Order.

> AstraZeneca, the BMS Group, the GSK Group, or the
> Johnson & Johnson Group.[2] Excluded from the Class are
> those who made flat co-pays; and the residents of the states
> of Alabama, Georgia, Iowa, Kentucky, Louisiana,
> Mississippi and Montana (where consumer protection
> statutes do not permit class actions).

b. The Court certifies four Subclasses corresponding to each of the defendant groups

c. The Court also certifies the following plaintiffs as Class 1 Representatives of these Subclasses: Leroy Townsend (Astra); Reverend David and Susan Ruth Aaronson (BMS); Joyce Howe individually and on behalf of the Estate of Robert Howe (Astra, GSK); James and Teresa Shepley (J&J, Astra); and Larry Young individually and on behalf of the Estate of Patricia Young (BMS, J&J). Consistent with the Court's February 24, 2004, Memorandum and Order, the Representative of a Subclass need only have paid or reimbursed for one of the Subject Drugs manufactured or marketed by a defendant group.

d. The consumer protection laws of each state shall apply to these Subclasses. Specifically, the Medicare Co-pay Class is certified for claims that include the following statutes: (a) Alaska Stat. Code § 40.50.471, *et seq.*; (b) Ariz. Rev. Stat. § 44-1522, *et seq.*; (c) Ark. Code § 4-88-101, *et seq.*; (d) Cal. Bus. & Prof. Code §§ 17200, *et seq.*, 1770; (e) Colo. Rev. Stat. § 6-1-105, *et seq.*; (f) Conn. Gen. Stat. § 42-110b, *et seq.*; (g) 6 Del. Code § 2511, *et seq.*; (h) D.C. Code § 28-3901, *et seq.*; (i) Fla. Stat. § 501.201, *et seq.*; (j) Haw. Rev. Stat. § 480, *et seq.*; (k) Idaho Code § 48-601, *et seq.*; (l) 815 ILCS § 505/1, *et seq.*; (m) Ind. Code Ann. § 24-5-0.5.1, *et seq.*; (n) Kan. Stat. § 50-623, *et seq.*; (o) Md. Com. Law Code § 13-101, *et seq.*; (p) Mass. Gen. L. Ch. 93A, *et seq.*; (q) Mich. Stat. § 445.901, *et seq.*; (r) Minn. Stat. § 325F.67, *et seq.*; (s) Mo. Rev. Stat. § 407.010, *et seq.*; (t) Neb. Rev. Stat. § 59-1601, *et seq.*; (u) Nev. Rev. Stat. § 598.0903, *et*

---

[2] These "groups" are defined in the TAMCAC.

*seq.*; (v) N.H. Rev. Stat. § 358-A:1, *et seq.*; (w) N.J. Stat. Ann. § 56:8-1, *et seq.*;
(x) N.M. Stat. Ann. § 57-12-1, *et seq.*; (y) N.Y. Gen. Bus. Law § 349, *et seq.*;
(z) N.C. Gen. Stat. § 75-1.1, *et seq.*; (aa) N.D. Cent. Code § 51-15-01, *et seq.*;
(bb) Ohio Rev. Stat. § 1345.01, *et seq.*; (cc) Okla. Stat. tit. 15 § 751, *et seq.*;
(dd) Or. Rev. Stat. § 646.605, *et seq.*; (ee) 73 Pa. Stat. § 201-1, *et seq.*; (ff) R.I.
Gen. Laws. § 6-13.1-1, *et seq.*; (gg) S.C. Code Laws § 39-5-10, *et seq.*; (hh) S.D.
Code Laws § 37-24-1, *et seq.*; (ii) Tenn. Code § 47-18-101, *et seq.*; (jj) Tex. Bus.
& Com. Code § 17.41, *et seq.*; (kk) Utah Code Ann. § 13-1 1-1, *et seq.*; (ll) Vt.
Stat. Ann. tit. 9, § 245 1, *et seq.*; (mm) Va. Code § 59.1-196, *et seq.*; (nn) Wash.
Rev. Code § 19.86.010, *et seq.*; (oo) W. Va. Code § 46A-6-101, *et seq.*; (pp) Wis.
Stat. § 100.20, *et seq.*; and (qq) Wyo. Stat. § 40-12-100, *et seq.*  The Court finds
that plaintiffs have complied with the notice provisions of all consumer protection
acts requiring such notice.

      e.      Class 1 is certified pursuant to Fed. R. Civ. P. 23(b)(3) for damage
claims.

      f.      The time period for this class is January 1, 1991 to January 1,
2005.

2.      **Class 2: Third-Party Payor MediGap Supplemental Insurance Class.**

      a.      Class Definition:

> All Third-Party Payors that made reimbursements for a
> Medicare Part B covered Subject Drug that was
> manufactured by AstraZeneca, the BMS Group, the GSK
> Group, the Johnson & Johnson Group, or the Schering
> Plough Group.

      b.      The Court certifies five Subclasses corresponding to each of the
defendant groups

      c.      The Class representatives for Class 2 are: UFCW, PMBT, Blue
Cross Blue Shield of Massachusetts, and Sheet Metal Workers Health Fund.

d.     The Class 2 claims are certified for those states allowing
corporations to bring consumer protection claims, including the following states:
(a) Alaska Stat. Code § 40.50.471, *et seq.*; (b) Ariz. Rev. Stat. § 44-1522, *et seq.*;
(c) Ark. Code § 4-88-101, *et seq.*, including 4-88-113(f), and 4-8-102(5); (d) Cal.
Bus. & Prof. Code §§ 17200, *et seq.*; (e) Colo. Rev. Stat. § 6-1-105, *et seq.*,
including § 6-1-113(1)(c) and § 6-1-102(b); (f) Conn. Gen. Stat. § 42-110b, *et
seq.*, including § 42-110(a)(3); (g) 6 Del. Code § 2511, *et seq*, including 6 Del.
Code § 2512; (h) D.C. Code § 28-3901, *et seq.*, including § 28-390(1); (i) Fla.
Stat. § 501.201, *et seq.*; (j) Idaho Code § 48-601, *et seq.*, including § 48-602;
(k) 815 ILCS § 505/1, *et seq.*; (l) Md. Com. Law Code § 13-101, *et seq.*,
including § 13-101(h); (m) Mass. Gen. L. Ch. 93A, *et seq.*; (n) Mich. Stat.
§ 445.901, *et seq.*; (o) Minn. Stat. § 325F.67, *et seq.*, including § 407.010(5);
(p) Vernon's Mo. Rev. Stat. § 407.010, *et seq.*; (q) Neb. Rev. Stat. § 59-1601, *et
seq.*, including § 59-160(1); (r) Nev. Rev. Stat. § 598.0903, *et seq.*; (s) N.H. Rev.
Stat. § 358-A:1, *et seq.*, including § 358A:1(1); (t) N.J. Stat. Ann. § 56:8-1, *et
seq.*, § 56:8-1(d); (u) N.M. Stat. Ann. § 57-12-1, *et seq.*; (v) N.Y. Gen. Bus. Law
§ 349, *et seq.*; (w) N.C. Gen. Stat. § 75-1.1, *et seq.*; (x) N.D. Cent. Code § 51-15-
01, *et seq.*, including § 51-15-01(4); (y) Ohio Rev. Stat. § 1345.01, *et seq.*,
including § 1345.01(B); (z) Okla. Stat. tit. 15 § 751, *et seq.*; (aa) Or. Rev. Stat.
§ 646.605, *et seq.*, including § 646.605(4); (bb) 73 Pa. Stat. § 201-1, *et seq.*,
including § 201-2(2); (cc) S.C. Code Laws § 39-5-10, *et seq.*, including § 39-5-
10(9); (dd) S.D. Code Laws § 37-24-1, *et seq.*, including § 37-24-1(8); (ee) Tenn.
Code § 47-18-101, *et seq.*, including § 47-18-103(9); (ff) Tex. Bus. & Com. Code
§ 17.41, *et seq.*, including § 17.45(4) (only for TPPs with assets less than $25
million); (gg) Utah Code Ann. § 13-1 1-1, *et seq.*; (hh) Va. Code § 59.1-196, *et
seq.*, including § 59.1-198; (ii) Wash. Rev. Code § 19.86.010, *et seq.*, including
§ 19.86.010(1); (jj) Wis. Stat. § 100.20, *et seq.*; and (kk) Wyo. Stat. § 40-12-100,

*et seq.*, including § 40-12-102(a)(i).  The Court finds that plaintiffs have complied with the notice provisions of all consumer protection acts requiring such notice.

    e.    The Class is certified pursuant to Fed. R. Civ. P. 23(b)(3) for damage claims.

    f.    The time period for this class is January 1, 1991 to January 1, 2005.

3.    **Class 3:  Consumer and Third-Party Payor Class for Medicare Part B Drugs Outside of the Medicare Context.**

    a.    Class Definition:

> All natural persons and Third-Party Payors that made payments or reimbursements, or who have a currently enforceable obligation to make a payment or reimbursement, for Subject Drugs prescribed in the Commonwealth of Massachusetts and manufactured by AstraZeneca, the BMS Group, the GSK Group, the Johnson & Johnson Group, or the Schering Plough Group, where such payments or reimbursements were based on contracts that expressly use AWP as a pricing standard.  Included within this Class are individuals who paid coinsurance (*i.e.*, co-pays proportional to the reimbursed amount) for a Subject Drug, where such coinsurance was based upon use of AWP as a pricing standard.  Excluded from this Class 3 are any payments or reimbursements for generic drugs that are based on MAC and not AWP.

    b.    The Court certifies five Subclasses corresponding to each of the defendant groups.

    c.    The Class is certified pursuant to Fed. R. Civ. P. 23(b)(3) for damage claims and (b)(2) for injunctive purposes.

    d.    The class representatives for Class 3 are:  Blue Cross Blue Shield of Massachusetts, ~~Sheet Metal Workers Health Fund,~~ and the Pipefitters Local 537 Trust Funds, and Health Care For All for the 23(b)(2) Class.

    e.    The claims for this Class are certified under Mass. Gen. Laws ch. 93A for the purposes of a test case, after which the Court will examine the issue of a broader certification.

      f.      The Class period is January 1, 1991 to the present.

## II.    CLASSES NOT CERTIFIED

1.      With respect to Class 3, the Court declines at this time to certify this Class under the consumer protection laws of states other than Massachusetts. However, this denial is without prejudice and does not affect the statute of limitations, which remains tolled in those states that permit equitable tolling, until such time as the Court makes a final ruling. The Court intends the proceedings with respect to Class 3 to provide important information for an accurate evaluation of claims under other states' laws. Accordingly, at a later date plaintiffs can renew their motion to certify Class 3 for purposes of the application of the consumer protection acts of other states.

2.      The Court declines to certify a Class of Consumers and Third-Party Payors who made payments or reimbursements for self-administered drugs not appearing in the appended Table of Subject Drugs to the extent monetary claims were sought for those drugs (*see* Memorandum Opinion of August 16, 2005). This declination thus excludes from any class self-administered drugs ("SADs") except to the extent such SADs (1) are covered under Medicare Part B, and (2) appear in the Table of Subject Drugs. The drugs certified in Class 3 are limited to physician-administered drugs that appear in the appended Table of Subject Drugs.

## III.    MISCELLANEOUS

1.      To the extent that it is not inconsistent herewith, this Court's August 16, 2005, Memoranda and Order Re: Motion for Class Certification is incorporated herein.

2.      Excluded from these Classes are the defendants herein; any subsidiaries or affiliates of defendants; the officers and directors of defendants during the Class Period; members of the defendants' immediate families; any person, firm, trust, corporation, officer, director or any individual or entity in which any defendant has a controlling interest or which is related to, or affiliated with, any of the defendants; the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded parties and governmental entities.

3. Pursuant to Fed. R. Civ. P. 23(g), the Court appoints the following firms as Co-Lead Counsel: Hagens Berman Sobol Shapiro LLP; Spector Roseman & Kodroff, P.C.; Hoffman & Edelson; The Wexler Firm LLP; and Kline & Specter.

4. Co-Lead Counsel for Plaintiffs shall prepare and submit within 30 days from the date of this Order a proposed form and method of notice to be sent to members of the Classes and a supporting motion. Defendants may file any comments to the notice within 15 days, and Plaintiffs may reply 15 days thereafter. The motion and supporting memorandum shall not exceed 20 pages; any response by defendants shall not exceed 10 pages; and the reply shall not exceed 5 pages. There will be no sur-replies, supplemental replies, letter briefs, motions to strike or similar subterfuges for more briefing opportunity. There shall be no individual briefs by each defendant. The parties shall be reasonable with respect to any appendices.

5. The "Together Rx" claims are not certified because they are dismissed without prejudice by the filing of the TAMCAC.

6. The Court retains the discretion under Rule 23 to modify this Order.

PATTI B. SARIS
United States District Judge

# TABLE OF SUBJECT DRUGS

**AZ NDC List**

| NDC | Description |
|---|---|
| 00186198804 | PULMICORT RESPULES 60 mls 2 X 30.25mg/2mL |
| 00186198904 | PULMICORT RESPULES 60 mls 2x30 .5mg/2mL |
| 00310096036 | Zoladex 3.6mg 1x1EA Depot |
| 00310096130 | Zoladex 10.8mg 1x1EA Depot |
| 00310095130 | Zoladex 10.8mg 1x1EA Depot |
| 00310095036 | Zoladex 3.6mg 1x1EA Depot |

**BMS NDC List**

| NDC | Description |
|---|---|
| 00015301026 | BLENOXANE INJ 15 UNIT VHA |
| 00015301020 | BLENOXANE INJ 15 UNIT VL |
| 00015306326 | BLENOXANE INJ 30 UNIT VHA |
| 00015306301 | BLENOXANE INJ 30 UNIT VL |
| 00590032435 | COUMADIN INJ 5MG VIAL |
| 00015053910 | CYTOXAN 100MG LYOPH W/CYT |
| 00015054812 | CYTOXAN 1G 6X50ML VHA+ |
| 00015054810 | CYTOXAN 1GM LYOPH W/CYTOG |
| 00015054610 | CYTOXAN 200MG LYOPH W/CYT |
| 00015054912 | CYTOXAN 2G 6X100ML VHA+ |
| 00015054910 | CYTOXAN 2GM LYOPH W/CYTOG |
| 00015054710 | CYTOXAN 500MG LYOPH W/CYT |
| 00015050001 | CYTOXAN FOR INJ 100 MG |
| 00015050041 | CYTOXAN INJ 100MG |
| 00015050641 | CYTOXAN INJ 1X2GM VIAL |
| 00015050241 | CYTOXAN INJ 1X500MG VIAL |
| 00015050141 | CYTOXAN INJ 200MG |
| 00015054712 | CYTOXAN LYO 500MG VL VHA |
| 00015054741 | CYTOXAN LYOPH 500MG |
| 00015053941 | CYTOXAN LYOPHILIZED 100MG |
| 00015054841 | CYTOXAN LYOPHILIZED 1GM |
| 00015054641 | CYTOXAN LYOPHILIZED 200MG |
| 00015054941 | CYTOXAN LYOPHILIZED 2GM |
| 00015050541 | CYTOXAN PINJ 1X1G VIAL |
| 00015050303 | CYTOXAN TABLETS 50 MG |
| 00015050302. | CYTOXAN TABLETS 50MG |
| 00015050401 | CYTOXAN TABS 25MG |
| 00015050301 | CYTOXAN TABS 50MG |
| 00015050348 | CYTOXAN TABS 50MG |
| 00015340420 | ETOPOPHOS 100MG VIAL |
| 00015321429 | PARAPLATIN 10X15ML VHA+ |
| 00015321529 | PARAPLATIN 10X45ML VHA+ |
| 00015321329 | PARAPLATIN 10X5ML VHA+ |
| 00015321410 | PARAPLATIN 150MG LYOPH CY |
| 00015321430 | PARAPLATIN 1X150MG LYO VL |
| 00015321530 | PARAPLATIN 1X450MG LYO VL |
| 00015321510 | PARAPLATIN 450MG VL W/CYT |
| 00015321330 | PARAPLATIN 50MG LYOPHILIZ |
| 00015321310 | PARAPLATIN 50MG W/CYTO |
| 00015335322 | RUBEX 100 MG LYOPHILIZED |
| 00015335324 | RUBEX 100MG IMMUNEX LABEL |
| 00015335124 | RUBEX 10MG IMMUNEX LABEL |
| 00015335122 | RUBEX 10MG LYOPHILIZED |
| 00015335224 | RUBEX 50MG IMMUNEX LABEL |
| 00015335222 | RUBEX 50MG LYOPHILIZED |
| 00015347630 | TAXOL 100MG INJ MULTIDOSE |
| 00015347627 | TAXOL 100MG SEM-SYN VIAL |
| 00015347620 | TAXOL 100MG/16.7ML VHA+ L |

| | |
|---|---|
| 00015347911 | TAXOL 300MG/50ML VIAL |
| 00015345620 | TAXOL 30MG CONC FOR INJ |
| 00015347530 | TAXOL 30MG INJ MULTIDOSE |
| 00015347527 | TAXOL 30MG SEM-SYN VIAL |
| 00015347520 | TAXOL 30MG/5ML VHA+ LABEL |
| 00015309510 | VEPESID 100MG VIAL W/CYTO |
| 00015309530 | VEPESID 100MG VL W/O CYTO |
| 00015306224 | VEPESID 1G 50ML VIAL VHA+ |
| 00015306220 | VEPESID 1GM/50ML |
| 00015306120 | VEPESID 500MG |
| 00015306124 | VEPESID 500MG 25ML VL VHA |
| 00015309145 | VEPESID 50MG CAPSULES |
| 00015309520 | VEPESID INJ 100MG/5ML |
| 00015308420 | VEPESID INJ 150MG/7.5ML |

**GSK NDC List**

| NDC | Description |
| --- | --- |
| 00173013093 | ALKERAN I.V. INJ 50 MG |
| 00173004535 | ALKERAN TAB 2MG 50S |
| 00173044902 | IMITREX INJ 0.5ML 12MG/ML 5S VIALS |
| 00173044901 | IMITREX INJ 12MG/ML 0.5ML 2S PFLD SRNG |
| 00173044903 | IMITREX INJ 12MG/ML 0.5ML2S KIT,SELFDOSE |
| 00173047900 | IMITREX INJ 12MG/ML STAT DOSE KIT |
| 00173047800 | IMITREX INJ 12MG/ML STAT DOSE RFL 2'S |
| 00173403291 | IMITREX SELFDOSE SYSTEM  SELFDOSE UNIT/C |
| 00173408367 | ITMD ZOVIRAX STERILE POWDER 1000MG (BWX9 |
| 00029415105 | KYTRIL 1 MG TABS 20'S SUP |
| 00029415139 | KYTRIL 1MG TABS 2'S |
| 00029415201 | KYTRIL 1MG/ML INJECTION 4ML VIAL |
| 00029414975 | KYTRIL INJ SGL DOSE VIAL 1MG/ML VHA |
| 00029414901 | KYTRIL INJ SINGLE DOSE VIAL 1MG/ML |
| 00173026010 | LANOXIN INJ 0.5MG   -PART 1.00 |
| 00173026035 | LANOXIN INJ 0.5MG 2ML 50S |
| 00173026210 | LANOXIN INJ PEDIATRIC 0.1MG/ML |
| 00173026015 | LANOXIN INJECTION   -PART 1.00 |
| 00173026055 | LANOXIN INJECTION   -PART 1.00 |
| 00173071325 | MYLERAN TAB 2MG 25S |
| 00173065601 | NAVELBINE INJ 10MG 1ML |
| 00173065644 | NAVELBINE INJ 50MG 5ML |
| 00173010793 | RETROVIR IV INF 10MG/ML 20ML 10 |
| 00173041900 | VENTOLIN NEB SOL INH    0.083% 3ML 25S |
| 00173041901 | VENTOLIN NEB SOL INH    0.083% 3ML 5S S |
| 00173038501 | VENTOLIN SOL INH 0.5% 5MG/ML 10ML |
| 00173038558 | VENTOLIN SOL INH 0.5% 5MG/ML 20ML |
| 00173044200 | ZOFRAN INJ 2MG/ML 20ML |
| 00173044202 | ZOFRAN INJ 2MG/ML 2ML 5S |
| 00173046100 | ZOFRAN INJ PRMXD 32MG/50ML |
| 00173046200 | ZOFRAN INJ PRMXD 4MG/50ML |
| 00173056900 | ZOFRAN ODT 4MG 5X2 30S |
| 00173057004 | ZOFRAN ODT 8MG 5X2 10'S |
| 00173057000 | ZOFRAN ODT 8MG 5X2 30S |
| 00173048900 | ZOFRAN ORAL SOL 4MG/5ML  50ML |
| 00173068000 | ZOFRAN TAB 24MG 1S |
| 00173044601 | ZOFRAN TAB 4MG 100S |
| 00173044602 | ZOFRAN TAB 4MG 100S UD |
| 00173044600 | ZOFRAN TAB 4MG 30S |
| 00173044604 | ZOFRAN TAB 4MG 3S |
| 00173044701 | ZOFRAN TAB 8MG 100S |
| 00173044702 | ZOFRAN TAB 8MG 100S UD |
| 00173044700 | ZOFRAN TAB 8MG 30S |
| 00173044704 | ZOFRAN TAB 8MG 3S |
| 00173095201 | ZOVIRAX FOR INJECTION 1000MG 20ML 10S (C |
| 00173099501 | ZOVIRAX FOR INJECTION 500MG 10ML 10S (C# |

**J&J NDC List**

| NDC | Description |
|---|---|
| 57894003001 | C168J REMICADE 1PCK |
| 59676031201 | PROCRIT 10,000 U/ML |
| 59676031002 | PROCRIT 10000 U |
| 59676031001 | PROCRIT 10000 U/ML |
| 00062740103 | PROCRIT 10000U/ML AMG |
| 59676032001 | PROCRIT 20,000 U/ML |
| 59676030202 | PROCRIT 2000 U/ |
| 59676030201 | PROCRIT 2000 U/ML 6 |
| 00062740201 | PROCRIT 2000U/ML AMG |
| 59676030302 | PROCRIT 3000 U/ |
| 59676030301 | PROCRIT 3000 U/ML 6 |
| 00062740503 | PROCRIT 3000 U/ML INST |
| 00062740501 | PROCRIT 3000U/ML AMG |
| 59676030402 | PROCRIT 4000 U/ |
| 59676030401 | PROCRIT 4000 U/ML 6 |
| 00062740004 | PROCRIT 4000 U/ML INST |
| 59676034001 | PROCRIT 40000 U/ML |
| 00062740003 | PROCRIT 4000U/ML AMG |

SP NDC List

| NDC | Description |
|---|---|
| 59930151504 | ALBUTEROL INHALATION SOLUTION |
| 59930164702 | ALBUTEROL INHALATION SOLUTION |
| 59930150006 | ALBUTEROL SULFATE INHAL. SOL. |
| 59930150008 | ALBUTEROL SULFATE INHAL. SOL. |
| 59930151701 | ALBUTEROL SULFATE SOLUTION |
| 59930151702 | ALBUTEROL SULFATE SOLUTION |
| 59930155020 | ALBUTEROL SULFATE SOLUTION |
| 00085113601 | INTEGRILIN |
| 00085117701 | INTEGRILIN |
| 00085117702 | INTEGRILIN |
| 00085123501 | INTRON A FOR INJ MULTIDOSE PEN |
| 00085124201 | INTRON A FOR INJ MULTIDOSE PEN |
| 00085125401 | INTRON A FOR INJ MULTIDOSE PEN |
| 00085116801 | INTRON A INJ 18MIU HSA FREE |
| 00085113301 | INTRON A INJ 25MIU HSA FREE |
| 00085118401 | INTRON A INJ 3MIU HSA FREE |
| 00085118402 | INTRON A INJ 3MIU HSA FREE |
| 00085119101 | INTRON A INJ 5MIU HSA FREE |
| 00085119102 | INTRON A INJ 5MIU HSA FREE |
| 00085117901 | INTRON A INJ PAK10MIU HSA FREE |
| 00085117902 | INTRON A INJ PAK10MIU HSA FREE |
| 00085057102 | INTRON A INJECTABLE 10MILLN IU |
| 00085057106 | INTRON A INJECTABLE 10MILLN IU |
| 00085111001 | INTRON A INJECTABLE 18MILLN IU |
| 00085028502 | INTRON A INJECTABLE 25MILLN IU |
| 00085064703 | INTRON A INJECTABLE 3MILLN IU |
| 00085064704 | INTRON A INJECTABLE 3MILLN IU |
| 00085064705 | INTRON A INJECTABLE 3MILLN IU |
| 00085012002 | INTRON A INJECTABLE 5 MILLN IU |
| 00085012003 | INTRON A INJECTABLE 5 MILLN IU |
| 00085012004 | INTRON A INJECTABLE 5 MILLN IU |
| 00085012005 | INTRON A INJECTABLE 5 MILLN IU |
| 00085053901 | INTRON A INJECTABLE 50MILLN IU |
| 00085068901 | INTRON A INJECTION 18 MIU |
| 00085092301 | INTRON A SOL FOR INJ 10 MILLI |
| 00085076901 | INTRON A SOL. FOR INJ. 25MILLN |
| 00085095301 | INTRON A SOLUTION 18MIU 3ML |
| 59930160001 | PERPHENAZINE |
| 59930160002 | PERPHENAZINE |
| 59930161001 | PERPHENAZINE 16MG |
| 59930160501 | PERPHENAZINE 8MG |
| 59930160502 | PERPHENAZINE 8MG |
| 59930160301 | PERPHENAZINE TABLETS |
| 59930160302 | PERPHENAZINE TABLETS |
| 00085133601 | PROVENTIL INHALATION SOLUTION |
| 00085020901 | PROVENTIL SOLUTION .083MG/ML |
| 00085180601 | PROVENTIL SOLUTION .083MG/ML |
| 00085020802 | PROVENTIL SOLUTION 5MG/ML |

| | |
|---|---|
| 00085020852 | PROVENTIL SOLUTION 5MG/ML |
| 00085125901 | TEMODAR 100MG |
| 00085125902 | TEMODAR 100MG |
| 00085124401 | TEMODAR 20MG |
| 00085124402 | TEMODAR 20MG |
| 00085125201 | TEMODAR 250MG |
| 00085125202 | TEMODAR 250MG |
| 00085124801 | TEMODAR 5MG |
| 00085124802 | TEMODAR 5MG |

# **Exhibit 39**



SERVED
12/22/04
04:49 PM ET
MDL No.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY )
AVERAGE WHOLESALE PRICE )    MDL No. 1456
LITIGATION )
_____ )   CIVIL ACTION:  01-CV-12257-PBS
 )
THIS DOCUMENT RELATES TO )    Judge Patti B. Saris
ALL CLASS ACTIONS )
 )
 )    [FILED UNDER SEAL]
_____ )

## CORRECTED PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

### [REDACTED VERSION]

.



# I.   INTRODUCTION

Defendants' massive filing fails to provide a legal or factual basis to deny class certification.

In the First Circuit, a class is appropriate if "a sufficient constellation of common issues binds class members together." Defendants' conduct, in publishing artificially inflated AWPs, which were then uniformly used in the reimbursement process by the proposed Class, creates such a constellation. The question of whether Defendants engaged in the unlawful inflation of any AWP will be adjudicated by evidence (*e.g.*, form contracts, industry documents, expert analysis) that is common to all members of the proposed Classes. Such commonality is sufficient to invoke the procedural device of class certification, a judicial and administrative tool far superior to the hundreds or thousands of redundant trials Defendants must be implicitly arguing as the alternative.

As to the original Medicare Part B Class[1] – *i.e.*, consumers and third-party payers who overpaid the Medicare 20% co-insurance – Defendants have failed to raise any facts, which materially refute Plaintiffs' ability to prove their case on a common basis. Indeed, by statute, Part B drugs are not subject to "negotiations" or the "complexity" that Defendants claim exists elsewhere, and therefore common issues clearly predominate. Moreover, nor does the application of state law to the claims of the Medicare Part B Class undermine predominance, both because one state's law may apply nationwide and because varying state law damage remedies are "rarely determinative under Rule 23(b)(3)." *Smilow v. Southwestern Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003).

As for Class members who over-reimbursed providers due to Defendants' inflation of the AWP for oncology and other physician-administered drugs – *i.e.*, those consumers and third-party payers who are now under the umbrella of the amended Physician-Administered Class –

---

[1] With this memorandum Plaintiffs have filed a motion to amend the class definitions. In this brief, Plaintiffs will use the nomenclature of the class re-groupings used in that motion for the three proposed classes of the "Physician-Administered Class," the "Self-Administered and Speciality Pharmacy Class" and the "RICO Payer Class."



Defendants' claims of complicating individual factual issues fade upon examination. In order to be included in the Class, these private reimbursements must be based on a contract using AWP as a benchmark. All parties have shown great ease in identifying these AWP-based contracts. In addition to Dr. Hartman's analysis, the only empirical study of reimbursement for physician-administered drugs, the Dyckman study, found that *all* plans reimbursed for such drugs based on AWP. Again, such uniform use of AWP is exactly why a class is appropriate here. Since these contracts ultimately manifest themselves in a formulaic reimbursement based on AWP, proof of Plaintiffs' claims and other trial issues affecting the existence and size of over-reimbursement for physician-administered AWPIDs will be based predominantly on a common proof.

As for self-administered drugs – *i.e.*, the class of consumers and third-party payers whose contracts use the AWP benchmark and, as a result over-paid PBMs or pharmacies for oral or topical AWPIDs – Defendants' claim of "complexity" of the industry fails. Defendants ignore the commonality created by the use of AWP as an "industry standard" and the evidence demonstrating that all third-party payer reimbursement is "anchored" off AWP.[2] AWP as the "standard" or "anchor" is confirmed by the absolute uniformity of the contracts between plans and PBMs, and PBMs and pharmacies. AWP is the basis for reimbursement in almost every single one of these contracts. As a result, if the AWP has been artificially inflated due to Defendants' scheme, all Class members using AWP as a benchmark suffer impact, and that impact can be proven using standard econometric techniques. Adjudication will involve evidence common to all Class members.

As for superiority and manageability, Defendants rely on irrelevant mass tort cases, yet ignore the recent string of authorities certifying RICO cases and finding a class action to be superior even if follow-on proceedings regarding causation and damages are required.[3] These

---

[2] *See* Ex. 1 (AZ0565611-14 at 612). All exhibits referenced in this memorandum are attached to the Reply Declaration of Steve W. Berman ("BRD") unless otherwise indicated.

[3] *See Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004).

# Exhibit 40

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
|  | CIVIL ACTION: 01-CV-12257-PBS |
|  | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | **[FILED UNDER SEAL PURSUANT TO COURT ORDER]** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

(1)     Each Defendant posted or caused to be posted an AWP for a Part B covered drug whose AWP-based reimbursement was fixed by regulation;

(2)     Throughout the Class Period and due to a series of discounts, promotions, rebates, and other inducements which are not reflected in the published AWP, the real AWP as measured by ASP for the drug was lower;

(3)     Plaintiffs' co-pay under Medicare was 20% of the inflated AWP, and should have been 20% of the real AWP or the ASP; and

(4)     Plaintiffs will prove that the AWP inflation scheme was deceptive in violation of state law and caused class members damage.

Similarly, the claims of the Third-Party Payor Class and the Class Representatives are typical as well.  For example, each Plaintiff's and Class members' plan during all or part of the Class Period utilized the services of a PBM in purchasing drugs,[61] and each plan had a contract that utilized AWP as a reimbursement benchmark.[62]

The Plaintiffs' contracts' use of AWP as a pricing mechanism is typical of the Third Party/Co-Payor Class members' use of AWP, and Plaintiffs and Third-Party Payor Class members are thus perfectly aligned in this regard.  First, the proposed Class by definition includes only those entities whose "contracts" used AWP as a "pricing standard."  So by definition the Class is linked to Plaintiffs' claims.  Second, Plaintiffs will offer proof at trial that AWP is used as a standard pricing benchmark in the private payor market.  Hartman Decl., Attachment D, ¶ 29-33; Schondelmeyer Decl., ¶ 96.  This testimony is consistent with the contracts themselves, and other evidence gathered in class certification discovery.  Hartman

---

[61] See, e.g., Ex. 111 (ESI 277-00000086, at 86, 104-05) (a model Express Scripts contract tying payment for generics and brand name drugs to AWP); see Ex. 112 (CMK-AWP 001666) (contract between Plaintiff Twin Cities Bakery Workers Health & Welfare Fund ("TCBW") and Caremark, basing mail order brand name pricing on "AWP – 23%"; retail purchases at "AWP – 15.5%"); Affidavit of William K. Ecklund, Esq. (TCBW), at ¶ 6B.

[62] See, e.g., Affidavit of Arthur Steinberg, Philadelphia Federation of Teachers Health & Welfare Fund, ¶ 6(a)-(e).

# Exhibit 41

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 BOYLSTON STREET
25TH FLOOR
BOSTON, MA 02199
TEL: 617-267-2300 FAX: 617-267-8288
www.rkmc.com

ATTORNEYS AT LAW

Stephen L. Coco
(617) 859-2731

June 8, 2006

**Via Facsimile and Overnight Mail**

Adeel A. Mangi, Esq.
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036

> Re:    *In Re Pharmaceutical Industry Average Wholesale Price Litigation,*
>        MDL No. 1456, Civil Action No. 01-12257-PBS
>        Our File No.: 072188-0000

Dear Adeel:

I am responding to your letter of May 26, 2006. With respect to your first point regarding the requests in the January 13, 2006 letter, BCBSMA disagrees that that request is within the scope of any formal document request. Nevertheless, to avoid any further dispute, I have enclosed the correspondence which Ms. DeMaina received from the physician concerning drug purchases, BCBSMA-AWP-17444-17451. The redactions were contained in the original letter as it was provided to BCBSMA.

With respect to the second point regarding the requests in the January 13, 2006 letter, on each occasion that BCBSMA has sent documents to the defendants, BCBSMA has provided a description of the documents produced by bates number and subject matter or source. Thus, the defendants are in as good a position to identify where particular documents are located as BCBSMA. With respect to the two specific sub-parts, at previous depositions, the defendants have marked as exhibits minutes from the PFSW committee where the ASP reimbursement methodology was discussed – accordingly, your claim that you have been unable to locate them in the production is somewhat suspect. Furthermore, Mike Mulrey never testified that he had a file on this subject. Nevertheless, Mr. Mulrey has confirmed that he has no additional documents on this topic.

With respect to the first point regarding the requests in the April 19, 2006 letter, while I have been willing to provide the defendants with the opportunity to explain the alleged relevance of these documents, BCBSMA has consistently taken the position that this subject is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. If you believe a motion on this issue is necessary, then it is the defendants' duty, not BCBSMA's, to determine

BN1 35031747.1

Adeel A. Mangi, Esq.
Page 2
June 8, 2006

whether they believe they have satisfied their meet and confer obligations.

With respect to the second point regarding the requests in the April 19, 2006 letter, we do not agree that BCBSMA has any further obligations. Nevertheless, BCBSMA states that Mr. Doherty was a Manager in BCBSMA's Professional Audit business area from 1998 to 2002. Mr Doherty is currently the Contract Leader for Contracted Health Services in the Health Care Services business area.

With respect to the claims data, at a break during the deposition of either Sharon Smith or Maureen Coneys, Steve Skwara had a conversation with you in which he offered to make Ms. DeMaina available by telephone to discuss the issues related to the claims data raised in your March 31, 2006 letter, an offer which you accepted. The fact that you apparently forgot about this offer and neglected to follow up on it is your responsibility, not the responsibility of BCBSMA. The reason BCBSMA proposed to make Ms. DeMaina available by telephone, rather than to provide a written response is because the explanation could not easily be put into writing and BCBSMA believed a telephone conversation (and, potentially, follow up conversations) would be more productive in answering your questions. Accordingly, BCBSMA is prepared to make Ms. DeMaina available by telephone at a time convenient to you over the next several weeks. Please provide three or four blocks of time during which you could participate in this call.

Finally, with respect to the provider contracts, since BCBSMA had not begun the process of assembling and copying the provider contracts, BCBSMA was not in a position at that hearing to provide detailed information concerning the time, cost and burden of producing all of those contracts. Now that the process has begun, BCBSMA can provide such information, which presents new grounds for assessing the appropriateness of the request. Furthermore, at the hearing, the defendants and the Court raised novel questions about the difficulty of ascertaining the reimbursement methodology from the claims data – to which BCBSMA did not have adequate information to respond. We believe that Ms. DeMaina can explain how the claims data reflects reimbursement methodologies.

Finally, while you continue to repeat your contention that "a selection of contracts is inadequate," not once have the defendants provided a concrete example to explain this contention. Nor have the defendants articulated the analysis they purport to need to perform that requires every single contract. Indeed, the initial three boxes of contracts (that will be produced shortly) appear not to contain a single reference to reimbursement methodologies for physician-administered drugs at issue in this case even though the providers associated with these contracts administered the bulk of the office-based physician-administered drugs paid for by BCBSMA. Rather, each of such contracts refers to the BCBSMA fee schedules, which the defendants already have extensive testimony about explaining that those fee schedules are based on AWP. Your continued inability to articulate how these contracts form the basis of any relevant analysis

BN1 35031747.1

Adeel A. Mangi, Esq.
Page 3
June 8, 2006

suggests that, in fact, the defendants are not intending to perform any such analysis that requires
the production of every single contract.  If you wish to avoid motion practice, then BCBSMA
respectfully requests that the defendants describe with more specificity the analysis they intend to
perform so as to demonstrate why the production of contracts for those providers responsible for
90% of the claims by dollar volume is insufficient.

Please contact me if you have any additional questions.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI, LLP

Stephen L. Coco

SLC

cc:    Edward. Notargiacomo, Esq.

BN1 35031747.1