# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

## BAXTER HEALTHCARE CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND <u>DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 2

    A.    Plaintiffs' Discovery Requests............................................................... 2
    B.    Baxter Meets and Confers with the Plaintiffs About the Scope and Breadth of Plaintiffs' Document Requests ............................................................. 3
    C.    Baxter's Production of Sales Transaction Data ...................................... 4
    D.    Baxter's Collection of Millions of Pages of Potentially Responsive Documents .. 4
    E.    Baxter's Massive Review of Documents ................................................ 6
    F.    Baxter's Production of Documents to Plaintiffs .................................... 9

III. ARGUMENT ...................................................................................................... 11

    A.    Fed. R. Civ. P. 37 Does Not Apply..................................................... 12
    B.    28 U.S.C. § 1927 Does Not Apply...................................................... 12
    C.    Baxter's Good Faith Efforts Make The Use Of The Court's Inherent Sanctioning Power Inappropriate........................................................... 14
    D.    The Extreme Sanction of Default Judgment is Not Appropriate. ........... 16

IV. CONCLUSION .................................................................................................. 20

V.  REQUEST FOR ORAL ARGUMENT .......................................................... 20

DSMDB-2113810v07

## TABLE OF AUTHORITIES

Cases

*Adams v. Carlson*,
    521 F.2d 168 (7th Cir. 1975) ........................................................................... 14, 15

*Anderson v. Beatrice Foods Co.*,
    900 F.2d 388, 396 (1st Cir. 1990); *cert. denied,* 498 U.S. 891 (1990) ......................... 16, 17, 19

*Aoude v. Mobil Oil Corp.*,
    892 F.2d 1115 (1st Cir. 1989) ......................................................................... 15, 16

*Apex Oil Co. v. Belcher Co. of N.Y., Inc.*,
    855 F.2d 1009 (2d Cir. 1988) ................................................................................. 14

*Beh-Hanson v. Arconium Specialty Alloys Co.*,
    No. 03-263-ML, 2004 U.S. Dist. Lexis 27732 (D.R.I. June 18, 2004) .................................... 13

*Browning v. Kramer*,
    931 F.3d 340 (5th Cir. 1991) ................................................................................. 19

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ................................................................... 11, 13, 14, 15, 16

*Cruz v. Savage*,
    896 F.2d 626 (1st Cir. 1990) ............................................................................ 13, 14

*Fleet Nat'l Bank v. Tellier*,
    171 B.R. 478 (D.R.I. 1994) ................................................................................. 17

*Local 285, Service Employees Int'l Union v. Nonotuck Assocs., Inc.*,
    64 F.3d 735 (1st Cir. 1995) ................................................................................. 15

*Luis C. Forteza e Hijos, Inc. v. Mills*,
    534 F.2d 415 (1st Cir. 1976) ................................................................................. 16

*Mullane v. Chambers*,
    333 F.3d 322 (1st Cir. 2003) ............................................................................ 14, 15

*Pension Administration Committee of the Sheraton Corp. Ret. Plan for Salaried Employees v. Carroll*,
    No. 93-1585, 1993 U.S. App. Lexis 34032 (1st Cir. Dec. 30, 1993) ...................................... 17

*Pro Spice, Inc. v. Omni Trade Group, Inc.*,
    No. 01-1661, 2003 U.S. Dist. Lexis 23831 (E.D. Pa. Dec. 16, 2003);
    *aff'd*, 128 F. Appx. 836 (3d Cir. 2005) ..................................................................... 14

ii

*R.W. Int'l Corp. v. Welch Foods, Inc.,*
937 F.2d 11 (1st Cir. 1991) ............................................................................................ 12

*Richman v. Gen. Motors Corp.,*
437 F.2d 196 (1st Cir. 1971) .......................................................................................... 16

*Roadway Express, Inc. v. Piper,*
447 U.S. 752 (1980) ................................................................................................. 11, 14

*United States v. Nesglo, Inc,*
744 F.2d 887 (1st Cir. 1984) .......................................................................................... 14

*Webb v. District of Columbia,*
146 F.3d 964 (D.C. Cir. 1998) ....................................................................................... 18

*Weinberger v. Kendrick,*
698 F.2d 61 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983) ................................... 15

*Whitney Bros. Co. v. Sprafkin,*
60 F.3d 8 (1st Cir. 1995) .......................................................................................... 14, 15

*Xaphes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
102 F.R.D. 545 (D. Me. 1984) ..................................................................... 16, 17, 18, 19

Statutes

28 U.S.C. § 1927 .................................................................................. 1, 11, 12, 13, 14

Fed. R. Civ. P. 37 ............................................................................................ 1, 11, 12

DSMDB-2113810v07

## I.   INTRODUCTION

Plaintiffs' June 28, 2006 motion for sanctions requests the "nuclear option" of a default judgment because Baxter Healthcare ("Baxter")[1] produced too many documents, and did so later than Plaintiffs would have liked.  While the production may have occurred later than Plaintiffs expected, Baxter has made an extraordinary effort – interviewing more than 500 employees and expending 43 man-years of attorney time – to achieve a comprehensive production.  Baxter's actions were completely reasonable in light of the broad scope and number of Plaintiffs' discovery requests.  There was no malice in producing documents in the manner Baxter did and Plaintiffs have introduced *no* evidence of malice.  As we demonstrate below, Baxter undertook Herculean efforts in order to collect, review, and produce responsive documents.

Plaintiffs state that it would take them years to review the documents that Baxter has produced.  Yet Plaintiffs claim to be surprised that it took Baxter months to review over *five times* more documents than were produced in order to respond to Plaintiffs' requests.  Plaintiffs also object because they might have to employ 10 lawyers to review Baxter's documents.  Baxter employed more than *100* lawyers to review documents.  Plaintiffs apparently do not want to do the kind and amount of work that they forced Baxter to do.  The facts simply do not support sanctions.

There is also no legal authority that supports sanctions, particularly the imposition of default judgment.  Plaintiffs attempt to invoke Fed. R. Civ. P. 37, 28 U.S.C. § 1927, and the Court's inherent power as authority for imposing default judgment.  But none of those sources support sanctions here.  First, Rule 37 sanctions require that the Court first issue an order compelling discovery and that Baxter violate such an order.  Second, Section 1927 – by its express terms – does not permit the Court to sanction a *party*.  Finally, sanctions under the

---

[1] Baxter International Inc. is also named as an MDL Defendant, but Plaintiffs' motion is against Baxter Healthcare.

Court's inherent authority require a finding that Baxter or its counsel acted in bad faith. Plaintiffs fail on each account.  Baxter and its counsel acted in good faith in responding to Plaintiffs' broad document requests – Baxter interviewed hundreds of employees, reviewed millions of documents, and spent millions of dollars on document collection and production.

In short, there is no factual or legal basis for the imposition of any sanctions in this case. The Court should not give credence to Plaintiffs' complaints and their Motion should be denied. Indeed, Plaintiffs should be required to reimburse Baxter for the costs and attorneys' fees associated with this opposition.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Discovery Requests

Plaintiffs served their Omnibus Requests for Production on March 31, 2004.  *See* Declaration of Elizabeth Fegan (attached to Plaintiffs' Motion, hereinafter "Fegan Decl."), Ex. 1. They included 82 document production requests, some with multiple parts, many of which were exceedingly broad.  For example, Request No. 29 sought:

> For each of your AWPIDs, all agreements for sale of the AWPID, whether or not those contracts are with customers who purchased the AWPID directly, including drafts, correspondence, and supporting detail and data. . .

*Id.*  This request seeks production of every Baxter contract (for the divisions selling AWPIDs) since 1991, all drafts of those contracts, and all correspondence and emails related thereto. Similarly, Request No. 24 asked for:

> For each of your AWPIDs, all documents concerning your strategic and marketing plans including, but not limited to all pricing, reimbursement, brand switching, and consumer segmentation studies and/or surveys.

*Id.*  This request seeks nearly every document created by Baxter marketing departments over a 15 year period.  *See id.* for the remainder of Plaintiffs' Omnibus Requests and Fegan Decl., Ex. 4 for Baxter's Objections thereto.

2

### B.   Baxter Meets and Confers with the Plaintiffs About the Scope and Breadth of Plaintiffs' Document Requests

Because of the enormity of Plaintiffs' requests, Baxter attempted to narrow and limit them. *See* Declaration of Merle M. DeLancey in Support of Baxter Healthcare Corporation's Opposition to Plaintiffs' Motion for Sanctions and Default Judgment Against Baxter Healthcare ("DeLancey Decl."), ¶ 2. Initially, negotiations took place with Plaintiffs' attorney Sean Matt in April and May 2004. *See* Fegan Decl., Exs. 2 and 3. On July 14, 2004, Baxter wrote a detailed letter explaining why it believed that certain drugs and therapies should not be included in the MDL litigation. DeLancey Decl., ¶ 3 and Ex. A. Baxter reasonably did not initiate the gargantuan efforts required to collect the documents until such time as it learned of Plaintiffs' decision on limiting the drugs in the case. Baxter continued to advise its employees to retain documents relevant to the MDL litigation during this time period.[2]

Plaintiffs did not respond to Baxter's July 14, 2004 letter until April 2005, nearly nine months later, and only after being contacted by Baxter's counsel. DeLancey Decl., ¶ 4 and Ex. C; Fegan Decl., Ex. 5.[3] Plaintiffs agreed, as Baxter had anticipated, to eliminate 6 of the 19 Baxter drugs at issue in the MDL litigation.[4] DeLancey Decl., ¶ 5; *see also* Plaintiffs' Memorandum in Support of Their Motion for Default at p. 4, n. 2. The parties then resumed discussions aimed at limiting the scope of discovery. *See* Fegan Declaration, Exs. 5-13.

---

[2] *See* DeLancey Decl., Ex. B, Declaration of Michael Bolton, ¶ 15.

[3] Plaintiffs apparently, and perhaps understandably, chose to focus their efforts on Track 1 discovery during this time, given their perception that the Track 1 cases would move forward in discovery before Track II. Plaintiffs, and not Baxter, are responsible for any delay associated with their decision.

[4] Plaintiffs agreed to eliminate Aggrastat because Baxter demonstrated that the drug was simply manufactured by Baxter for sale by another company. Five other products – Ativan, Brevibloc, cisplatin, doxorubicin, and vancocin – were removed from the case because Baxter demonstrated that the usage of these products is almost exclusively inpatient, and therefore the drugs are not reimbursed based upon AWP. DeLancey Decl., ¶ 5; *see also* DeLancey Decl., Exs. A and D.

DSMDB-2113810v07

Plaintiffs' characterization of these negotiations are largely accurate, although Baxter denies that it purposefully delayed producing documents.[5]

### C.      Baxter's Production of Sales Transaction Data

On April 20, 2005, Plaintiffs sent Baxter a letter revising their prior requests for sales transaction data. DeLancey Decl., Ex. E. Baxter asked whether it should focus first on the production of sales transaction data or electronic and hard copy documents. DeLancey Decl., ¶ 6. Plaintiffs asked for the sales transaction data. *Id.* Baxter then devoted its efforts first to capturing and producing transaction the data. *Id.* These efforts required analysis and downloading of data from multiple separate systems - the current J.D. Edwards system, and the historical legacy systems for Baxter's BioScience and Medication Delivery divisions. *Id.* Baxter produced its sales transaction data for these two divisions on August 4, 2005 and September 19, 2005. DeLancey Decl., ¶ 7. The data described all sales transactions for the relevant drugs and therapies from January 1, 1991 through March 30, 2005, including quantity, price, customer name and address, rebate and chargeback data, etc. *Id.* This production consisted of 16 gigabytes of data, the equivalent of over 250,000 pages of information. *Id.* Plaintiffs dramatically understate the importance and extent of this production by describing it as merely "certain transaction data." Memorandum in Support of Plaintiffs' Motion for Default at 5, n. 5.

### D.      Baxter's Collection of Millions of Pages of Potentially Responsive Documents

---

[5] Plaintiffs' counsel did suggest e-mail search terms as well as the possibility that documents be made available for review prior to production. However, Plaintiffs' suggested search terms, like their document requests, were so broad that they would require review of nearly every corporate document. For example, some proposed terms were "price(s)," "free," "reimbursement," and Medicare." *See* Fegan Decl., Ex. 7 at 2. One can only imagine the number of documents containing but one of these terms yet having absolutely no relevance to the allegations of the Complaint. As for making documents available for review prior to production, Baxter's research indicated that this would have potentially caused waiver in other cases as to attorney-client communications that might have been inadvertently produced in this case. Neither suggestion was feasible.

Baxter then turned its focus on gathering information responsive to the remainder of Plaintiffs' Omnibus Requests.  So as not to miss any employee with potentially relevant information, Baxter contacted its Human Resources department and obtained a list of all potentially relevant Baxter employees of the divisions at issue in the litigation.  DeLancey Decl., ¶ 8.  Baxter reviewed this list, compared it with previous lists, and revised the list in order to confirm the accuracy of the ultimate list of employees to be used.  *Id.*  The remaining employees – nearly 600 in total – were sent a questionnaire asking about the relevant documents and the location of such documents.  *Id; see also* DeLancey Decl., Ex. B at ¶ 19.  All employees who responded in the affirmative, and those employees whose status was uncertain, were interviewed by Baxter's in-house legal team or outside counsel.  DeLancey Decl., ¶ 8.  In all, over 550 employees were interviewed.  *Id.*  Each employee's pertinent documents were inventoried by category – hard copy documents, email, electronic documents on computer hard drives, shared network drives, etc.  *Id.*  Following the interview process, teams of vendors began the process of capturing the potentially relevant documents.  *Id.*

For technical and logistical reasons, it was not possible to capture electronically only those emails or electronic documents (on computer hard drives or network drives) that were responsive to Plaintiffs' Omnibus Requests.  DeLancey Decl., ¶ 9.  Therefore, a determination was made that employees who had a significant number of responsive documents would have their entire hard drives "ghost imaged," and all of their email captured.  *Id.*  Hard copy documents were collected from each individual office and/or common area where they were maintained.  *Id.*

Baxter's legal representatives also examined several areas of shared files, for example, BioScience and Medication Delivery contract and bid files.  In addition, Baxter located thousands of boxes of files in two archive locations, one outside of Chicago and the other outside

5

of Los Angeles.  DeLancey Decl., ¶ 10; *see also* DeLancey Decl., Ex. B at ¶¶ 20 and 22.

Hundreds of these boxes were selected for copying and scanning as well.  *Id.*

### E.    Baxter's Massive Review of Documents

In the end, Baxter collected for review more than 5 million potentially relevant

documents.[6]  DeLancey Decl., ¶ 11; *see also* DeLancey Decl., Ex. B at ¶24.  These documents

were loaded into two different electronic discovery tools (Concordance and EED) and reviewed

by scores of contract attorneys hired specifically for this purpose.  DeLancey Decl., ¶ 11; *see*

*also* DeLancey Decl., Ex. B at ¶23.  The chart below describes the monthly contract attorney

effort over time.  At the height of the review, Baxter had well over 100 contract attorneys

reviewing documents.[7]  DeLancey Decl., ¶ 11.  A total of 88,950 contract attorney hours - nearly

43 man years[8] - was spent on this "first review" effort.  *Id.*  This figure does not include the

thousands of hours spent by in-house and outside counsel also working on document production

efforts.  *Id.*  The total number of hours spent on discovery efforts in this case was well over

100,000.  *Id.*

---

[6] Plaintiffs' Motion speaks in terms of "pages" of documents, versus number of "documents".
The number of documents is a more useful figure as some documents, such as sales-related
spreadsheets, can be hundreds or thousands of pages long.

[7] Baxter initially did not have as many attorneys engaged in review of documents for production
because Baxter was in the process of interviewing employees and collecting documents.  In
addition to in-house and outside counsel, Baxter also used teams of contract attorneys to assist
with this process.  DeLancey Decl., ¶ 11.

[8] 88,950 work hours divided by 2080 (work hours per year) equals 42.8 years.

DSMDB-2113810v07

| MONTH | TOTAL HOURS BILLED BY CONTRACT ATTORNEYS FOR MONTH |
|---|---|
| Aug 05 | 191 |
| Sept 05 | 326 |
| Oct 05 | 653 |
| Nov 05 | 770 |
| Dec 05 | 775 |
| Jan 06 | 1,263 |
| Feb 06 | 3,751 |
| Mar 06 | 9,217 |
| April 06 | 21,433 |
| May 06 | 30,438 |
| June 06 | 20,133 |
| TOTAL CONTRACT ATTORNEY HOURS | 88,950 |

DeLancey Decl., ¶ 11.

   After this initial review by contract attorneys for relevance and privilege, many additional steps had to be completed before the documents could be produced.  Flow charts describing these steps are attached hereto as Delancey Decl., Exs. F and G.  In summary, the process included a secondary quality review, conversion of selected documents to TIFF format by a third-party vendor, redaction of documents that contained privileged or patient-identifying information, assignment of Bates numbers to the documents, formatting and delivery of the proposed production to Baxter's attorneys, proofing that production, and, finally, production to Plaintiffs. DeLancey Decl., ¶ 12; Exs. F and G.  Because of these many steps, the process could not possibly take place on a weekly, or even bi-weekly, basis.  *Id.*  Rather, Baxter had to wait until significant numbers of documents were reviewed by the contract attorneys dedicated to this case before undertaking a production effort.  *Id.*  Given the extensive lead time required prior to

7

production, it is not surprising that the majority of the productions came later in the discovery process.

Significantly, Baxter reviewed over **FIVE TIMES** more documents than the number of documents it ultimately produced to Plaintiffs.  DeLancey Decl., ¶ 13; *see also* Fegan Decl., Ex. 22 for copies of some of the cover letters accompanying Baxter's productions.  The charts below describe those numbers:

BAXTER REVIEW

| System/type of document | # of documents reviewed by Baxter |
|---|---|
| Concordance[9] | 169,502 |
| EED[10] – electronic | 3,337,842 |
| – scanned set | 1,569,128 |
| **TOTAL** | **5,076,472** |

PRODUCTION TO PLAINTIFFS

| System/type of document | # of docs produced to Plaintiffs |
|---|---|
| Concordance (CDs) | 49,878 |
| EED (hard drive) | 395,475 |
| Lextranet (repository)[11] | 519,884 |
| **TOTAL** | **965,237** |

DeLancey Decl., ¶ 13.

---

[9] Concordance is one of the electronic discovery tools used by Baxter contract attorneys to review potentially responsive documents.  DeLancey Decl., ¶ 13, n. 1.

[10] EED is another of the electronic discovery tools used by Baxter contract attorneys to review potentially responsive documents.  DeLancey Decl., ¶ 13, n. 2.  The "electronic" refers to emails and other electronic data received from Baxter; "scanned sets" are hard copy documents that were scanned into the EED tool for review.  *Id.*  Most of these scanned sets came from archives. *Id.*

[11] In this on-line repository, Plaintiffs can review electronic documents in their native format, run full text searches, search by custodian, and mark documents for Bates stamping and delivery in TIFF format.  DeLancey Decl., ¶ 13, n. 3.  In Plaintiffs' papers they cite a document count of approximately 543,000 as the number we provided to them. *See* Fegan Decl. ¶ 6.  This was an accurate count at the time given for *all* documents on Lextranet – those that were produced in the MDL (to Ms. Fegan) and in the Montana/Nevada litigation (to Ms. Jeniphr Breckenridge of Ms. Fegan's firm).  The number quoted here is the current number of *MDL* documents loaded to Lextranet.

8

Stated differently, Baxter produced to Plaintiffs only 19% of the potentially responsive documents that Baxter reviewed.  It is noteworthy that Plaintiffs have not complained about the quality of the production; their objection is merely to the quantity.

      **F.**    **Baxter's Production of Documents to Plaintiffs**

Baxter made a total of 29 productions, totaling nearly one million documents.  DeLancey Decl., ¶ 14.  Baxter produced sales transaction data, archived files, contract files, sales and marketing documents, correspondence with pricing compendia, field sales notes, e-mails, IMS data, policy manuals, and organizational charts.  *Id.*  A summary of these production efforts is set forth below:

- 12/13/2002 – Baxter produces documents produced in prior government investigations pursuant to CMO 5. Baxter supplements this production on 3/3/2004 and 6/3/2005.

- 6/17/2005 and 6/27/2005 - Baxter produces organizational charts, price agreements, price lists, contracts, customer information sheets, and marketing plans to Plaintiffs.

- 8/4/2005 and 9/19/2005 – Baxter produces 16 gigabytes of sales transaction data related to all sales of Subject Drugs for Baxter's Medication Delivery and BioScience divisions from January 1, 1991 through March 30, 2005.

- 9/30/2005 – Baxter produces BioScience contract files to Plaintiffs.

- 12/16/2005, 12/23/2005, 1/19/2006, 1/27/2006, 2/2/2006, 2/10/2006, 2/23/2006, 3/7/2006, 3/10/2006, 3/23/2006, and 5/11/2006 – Baxter produces responsive documents from its Concordance database in Summation-compatible format, as requested by the Plaintiffs.  Total produced includes 10 CDs and 10 DVDs.

- 3/13/2006 – Baxter produces specifically requested IMS data to Plaintiffs.

- 5/11/2006, 5/30/2006, 6/1/2006, 6/19/2006, 6/22/2006, 6/27/2006, 6/29/2006, and 7/10/2006 – Baxter produces electronic documents and images of scanned hard copy documents from its electronic discovery tool.  Total produced includes 11 hard drives.

- 5/26/2006 - Baxter notifies Plaintiffs that it has loaded remaining documents to an on-line repository that is text searchable.  *See* Fegan Decl., Ex. 25.

DeLancey Decl., ¶ 14; *see also* Fegan Decl., Ex. 22 for copies of some of the cover letters accompanying Baxter's productions.  This history demonstrates Baxter's diligence and good faith in responding to Plaintiffs' discovery requests.

Plaintiffs make much of the fact that a large volume of Baxter's production came at or just after the close of discovery.  Baxter does not deny that this is the case, but vigorously denies that this was "an improper attempt to manipulate discovery around the known discovery cut-off date for purposes of obfuscating the truth and purposely undermining the integrity of the Court and ability of Plaintiffs to prosecute this litigation."  *See* Plaintiffs' Memorandum at 1.  As described above, the production process was mammoth and took longer than anyone anticipated.  DeLancey Decl. ¶ 15.

That many more documents remained to be produced was no surprise to Plaintiffs, however.  Their own correspondence reveals that they were well aware of the quantity of data that remained forthcoming.  *See, e.g.,* Fegan Decl. Ex. 23, April 7, 2006 email from Beth Fegan to Andrew Jackson ("Since Baxter's 'recent document discovery efforts. . . have resulted in the discovery of documents related to some of the Baxter employees [we] have identified,' please put those documents on the front-burner for production, and let's get those current or former employees scheduled for deposition.") [12]  Baxter's filings with this Court requesting extensions of time in the MDL and Montana and Nevada cases also put the Plaintiffs on notice of the

_____

[12] In fact, Plaintiffs did go forward with several Baxter depositions in May, June, and July 2006.

extraordinary efforts being taken by Baxter.[13]  Further, in response to a 30(b)(6) deposition

request, on May 19, 2006 Baxter provided Plaintiffs with the declaration of Michael J. Bolton,

in-house counsel for Baxter.  DeLancey Decl., Ex. B.  This declaration detailed, *inter alia*, that

Baxter had "collected approximately 4.21 million pages of documents from active and archived

employee files," that Baxter had "collected 353 gigabytes of data from 165 employee hard

drives, 12 backup tapes, 19 computer disks and 5 DVDs," and that "[a]s of May 2006, nearly

3.27 million electronic documents collected from more than 320 document custodians are in the

final stages of production.  *Id.* at ¶¶ 20-24.  In light of these disclosures, Plaintiffs should not

have been surprised to receive a significant quantity of documents in June 2006.

## III.   ARGUMENT

The above facts demonstrate that any sanction against Baxter, particularly default, is

unwarranted.  Baxter also asserts there is no cognizable *legal* basis for the imposition of

sanctions here.

The Court's power to impose sanctions for discovery misconduct is derived from three

distinct sources – the Federal Rules of Civil Procedure, federal statute, and the Court's inherent

authority to manage its own affairs.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991);

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-65 (1980).  Fed. R. Civ. P. 37(b) is not

implicated, as Plaintiffs imply, because Baxter has not violated any Order compelling discovery.

The imposition of attorneys' fee sanctions under 28 U.S.C. § 1927 applies only to attorneys, not

---

[13] *See, e.g.,* Plaintiffs' and Defendant Baxter's Joint Agreed Motion for Extension to Track II Discovery Schedule with Respect to Baxter (11/22/06); Defendants Baxter Healthcare Corporation And Baxter International Inc.'s Memorandum Regarding Track Two Discovery Schedule (12/9/06); Defendants Baxter International Inc. and Baxter Healthcare Corporation's Motion for Reconsideration of Order Denying Joint Motion to Amend CMO 15 (2/1/06); Defendants Baxter International Inc.'s and Baxter Healthcare Corporation's Response to The Court's Questions of February 7, 2006, and Further Motion for Extension of Track II Discovery Schedule and to Amend CMO No. 23 Only with Respect to Baxter (3/2/06).

the parties in the lawsuit.  And for the Court to impose sanctions under its inherent authority, the Plaintiffs must prove bad faith – a showing that Plaintiffs clearly have not made here.  Finally, the extreme remedy of default judgment is not appropriate because any purported prejudice to Plaintiffs can be cured by allowing them additional time to review the documents.  We respectfully suggest that the only appropriate "remedy" – if one is to be given at all – is to give Plaintiffs additional time to review documents.

### A.    Fed. R. Civ. P. 37 Does Not Apply.

Rule 37 does not apply because Baxter has not violated any Court Order compelling production of documents.  Rule 37(b)(2)(C) contains two preconditions to sanctions: (1) the imposition of a court order pursuant to Rule 37(a); and (2) violation of that order.  *See* Fed. R. Civ. P. 37(b)(2)(C); *see also R.W. Int'l Corp. v. Welch Foods, Inc.,*  937 F.2d 11, 15 (1st Cir. 1991).  This Court has not issued a Rule 37(a) order compelling Baxter to produce documents. While Plaintiffs may contend that the multiple Case Management Orders in this action are a reasonable substitute for Rule 37(a) Orders, the First Circuit has already rejected this argument. *See R.W. Int'l*, 937 F.2d at 16-18 (in reversing district Court's imposition of Rule 37 sanctions, the court noted that a scheduling order containing general instructions on the scope of discovery is not a "suitable surrogate for a Rule 37(a) order.").  Therefore, imposition of Rule 37 sanctions against Baxter would be improper.

### B.    28 U.S.C. § 1927 Does Not Apply.

Likewise, 28 U.S.C. § 1927 is not applicable because that statute's authorization of the imposition of sanctions applies only to attorneys, not to parties.  *See* 28 U.S.C. § 1927;

*Chambers*, 501 U.S. at 32.[14]   The statute provides that:

> *Any attorney* or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).  Plaintiffs spend much of their argument citing to cases that discuss 28 U.S.C. § 1927, but in all of those cases the court imposed sanctions against the attorneys only.  Here, Plaintiffs unambiguously seek to impose sanctions on Baxter itself, not its counsel.  *See* Plaintiffs' Memorandum in Support of its Motion for Sanctions and Default Judgment at 2 ("Plaintiffs request that this Court. . . sanction Baxter for its discovery abuses and enter a default judgment against Baxter.")  Plaintiffs do not attempt to attack Baxter's attorneys, because such an attack would be unwarranted and unsupported.

Even had Plaintiffs sought sanctions against the attorneys as opposed to Baxter, the imposition of attorneys' fees is clearly not warranted.  Courts have construed 28 U.S.C. § 1927 narrowly, using it only where there has been egregious behavior on the part of counsel amounting to abuse of the judicial process – a circumstance not present here.  S*ee, e.g., Beh-Hanson v. Arconium Specialty Alloys Co.*, No. 03-263-ML, 2004 U.S. Dist. Lexis 27732 at *22-23 (D.R.I. June 18, 2004) (magistrate recommended imposing attorneys fee sanctions against plaintiff's counsel for repeatedly failing to disclose that there were no documents responsive to several of defendant's discovery requests); *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990)

---

[14] Therein the Supreme Court noted:

> The court likewise declined to impose sanctions under 28 U.S.C. § 1927, both because the statute's authorization of an attorney's fees sanction applies only to attorneys who unreasonably and vexatiously multiply proceedings, and therefore would not reach [defendant/petitioner], and because the statute was not broad enough to reach "acts which degrade the judicial system."

*Chambers*, 501 U.S. at 32.

DSMDB-2113810v07

(affirming award of Rule 11 and § 1927 monetary sanctions imposed against plaintiff's counsel for pursuing frivolous claims, insinuating that court was biased, and refusing to produce certain physical evidence before or during trial.  The Court also noted that sanctions should not be imposed for "mere negligence, inadvertence, or incompetence," but require display of "serious and studied disregard for the orderly process of justice") (*quoting United States v. Nesglo, Inc*, 744 F.2d 887, 891 (1st Cir. 1984) (additional citations omitted); *Pro Spice, Inc. v. Omni Trade Group, Inc.*, No. 01-1661, 2003 U.S. Dist. Lexis 23831, at *2 (E.D. Pa. Dec. 16, 2003) (imposing monetary sanctions against defendant for producing 13,000 pages of documents the weekend before trial), *aff'd*, 128 F. Appx. 836 (3d Cir. 2005); *Apex Oil Co. v. Belcher Co. of N.Y., Inc.*, 855 F.2d 1009, 1019-20 (2d Cir. 1988) (affirming monetary sanctions against law firm representing defendants where law firm, on three separate occasions, forced plaintiff to file motions to compel and after each motion was filed "mysteriously" complied with the discovery requests).  The actions of Baxter's attorneys in producing documents in this case in no way parallel the actions of those sanctioned by the courts in the cases cited by Plaintiffs.

## C.   Baxter's Good Faith Efforts Make The Use Of The Court's Inherent Sanctioning Power Inappropriate.

The Court possesses inherent powers to sanction a party that "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *See Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (quoting *Chambers*, 501 U.S. at 45-46).  "[B]ecause of their very potency, inherent powers must be exercised with restraint and discretion" and thus "should be used sparingly and reserved for egregious circumstances." *Mullane v. Chambers*, 333 F.3d 322, 338 (1st Cir. 2003) (internal citations omitted).  The *sine qua non* of the exercise of such powers is the existence of bad faith on the part of the offender. *See Roadway*, 447 U.S. at 765-66; *Chambers*, 501 U.S. at 49-50.  The "standards for bad faith are necessarily stringent," *Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975), and there must be "clear evidence" of bad faith or

14

vexatiousness. *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982), *cert. denied*, 464 U.S.
818 (1983) (internal citations omitted).[15]

Here, there is no evidence that Baxter's document production was made in bad faith.
While a significant percentage of Baxter's document production was made later in the document
production time period, Baxter's efforts to provide Plaintiffs responsive documents were made in
good faith.  Baxter undertook a far-reaching search for responsive documents and employed
hundreds of attorneys to review and produce responsive documents. These measures demonstrate
that Baxter's discovery conduct was not vexatious, wanton, or performed for oppressive reasons.

In *Mullane*, 333 F.3d 322, the First Circuit reversed a district court's decision to use its
inherent authority to impose attorneys' fee sanctions against plaintiffs who violated a discovery
order.  The court found that while the plaintiffs' failure to comply with the district court's order
"might have been grounds for discovery sanctions . . . it [was] insufficient alone to support a
finding that the [plaintiffs] or their attorneys 'acted in bad faith, vexatiously, wantonly, or for
oppressive reasons.'" *Id.* at 338, *quoting Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir.
1995) (remaining citations omitted).  Unlike the plaintiffs in *Mullane*, Baxter has not violated
any  discovery order, and has done its best to comply with Plaintiffs' broad discovery requests.

The facts of *Chambers* and another case cited by Plaintiffs, *Aoude v. Mobil Oil Corp.*,
892 F.2d 1115 (1st Cir. 1989), are also distinguishable.  In *Chambers*, the Supreme Court
affirmed a district court's use of its inherent authority to impose sanctions on a defendant who
willfully violated multiple court orders, attempted to deprive the court of jurisdiction, perpetrated
fraud upon the court, and filed a frivolous appeal in an attempt to prevent the sale of a Louisiana
television station.  The court noted that "[defendant's] entire course of conduct throughout the

---

[15] *Cf. Local 285, Service Employees Int'l Union v. Nonotuck Assocs., Inc.*, 64 F.3d 735, 738 (1st
Cir. 1995) (affirming district court's imposition of attorneys' fees sanctions against defendant for
vexatious conduct in failing to arbitrate claim; the court noted that "subjective bad faith is not a
prerequisite to a fee award").

15

lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court." *Chambers,* 501

U.S. at 51.  In *Aoude,* the First Circuit affirmed the district court's use of its inherent sanctioning

power to dismiss an action where the plaintiff committed fraud on the court.  In that case, the

plaintiff filed a complaint based on an admitted falsified purchase agreement.  The court found

that the plaintiff committed a fraud on the court and "[t]he tactic plainly hindered defendant's

ability to prepare and present its case, while simultaneously throwing a large monkey wrench

into the judicial machinery."  892 F.2d at 1118.  Baxter has neither violated Court orders nor

perpetrated any fraud.

### D.    The Extreme Sanction of Default Judgment is Not Appropriate.

The First Circuit has held that "[a] default judgment is itself a drastic sanction that should

be only employed in an extreme situation."  *Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415,

419 (1st Cir. 1976).[16]  Default judgments are disfavored because there is a general belief that

"cases should be disposed of on the merits except in the most unusual circumstances."  *Xaphes v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 102 F.R.D. 545, 550 (D. Me. 1984) (citing *Richman*

*v. Gen. Motors Corp.*, 437 F.2d 196 (1st Cir. 1971)).  While discovery misconduct may be

sanctionable, it does not require imposition of the most severe sanctions available.  *See Anderson*

*v. Beatrice Foods Co.*, 900 F.2d 388, 396 (1st Cir. 1990); *cert. denied*, 498 U.S. 891 (1990).

The First Circuit offers the following guidance when considering the appropriate sanction

to impose:

> In general, a trial court confronted by sanctionable behavior should consider the
> purpose to be achieved by a given sanction and then craft a sanction adequate to
> serve that purpose. . . . [T]he judge should take pains neither to use an elephant

---

[16] In that case, the First Circuit affirmed the district court's entry of a default judgment after the
defendant refused to agree to a settlement negotiated by his attorney.  534 F.2d at 419.  The
defendant violated the trial court's prior orders directing him to secure new counsel  after his
counsel had withdrawn due to lack of the defendant's cooperation and defendant's conduct
prevented the prompt trial of the case.

16

> gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether
> deterrence or compensation is the goal, the punishment should be reasonably
> suited to the crime.

*Anderson*, 900 F.2d at 395.  Plaintiffs ask the Court to use an elephant gun where there is no

wrongdoing.

Plaintiffs rely on the unpublished opinion in *Pension Administration Committee of the*

*Sheraton Corp. Ret. Plan for Salaried Employees v. Carroll*, No. 93-1585, 1993 U.S. App. Lexis

34032 (1st Cir. Dec. 30, 1993) as support for their argument, but they are wrong.  In *Carroll,* the

First Circuit affirmed the district court's sanctions – under Rule 37(b)(2) – because of the

defendant's failure to comply with: (1) orders compelling the production of documents; (2) an

order compelling defendant to submit to a deposition, and, (3) an order to pay a $2,000 sanction

for discovery abuses.  *Id.* at *13-15.  This Court has issued no Orders compelling Baxter to do

anything.

Other courts in this circuit have refused to enter default judgment for alleged discovery

misconduct.  *See, e.g., Xaphes*, 102 F.R.D. 545 (refusing to enter default judgment where

defendant deliberately violated the court's order to produce documents after being reminded by

counsel on three separate occasions); *Fleet Nat'l Bank v. Tellier*, 171 B.R. 478 (D.R.I. 1994)

(reversing entry to default judgment for defendant's late disclosure of two memoranda, where

there was no prior specific order for production, defendant had responded to plaintiffs document

request, and there was no evidence that the late disclosure resulted from anything other than

careless mistake or that it substantially affected the determination of the case).  Baxter has not

violated any court order compelling document production.  At most, Baxter produced large

volumes of responsive documents.  Under these circumstances, default judgment is not

appropriate.

DSMDB-2113810v07

Even when sanctions are appropriate, courts in the First Circuit consider the following factors: (1) the time and energy expended by the court, (2) the need of future litigants for access to the court; and, (3) the egregiousness of the conduct in question. *See Xaphes*, 102 F.R.D. at 550-51. Taking these factors into account, no sanctions are warranted here. First, other than the instant motion, the Court has not expended any time or energy on discovery matters between plaintiffs and Baxter. Second, Baxter's conduct has not prevented future litigants from accessing the court. Allowing Plaintiffs additional time to review the documents will only serve to help streamline this litigation so it can be conducted in a more efficient manner, thereby freeing judicial resources that can be devoted to other litigants.[17] Finally, Baxter's conduct was not egregious; in fact, it was reasonable and to be expected given Plaintiffs' overbroad discovery requests.

Close examination of the D.C. Circuit case relied on by Plaintiffs, *Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998),[18] also demonstrates that sanctions are inappropriate. First, Plaintiffs have not been prejudiced by any alleged tardy document production. Although Plaintiffs may be *inconvenienced* by having to commit resources to reviewing Baxter's documents, Baxter has been equally inconvenienced by broad discovery requests and having to employ more than a hundred contract attorneys to produce discovery. There is no prejudice that results in Plaintiffs being unable to effectively prosecute their case. Even if Baxter had produced the documents earlier, Plaintiffs still would have had to review them. Plaintiffs have not and will

---

[17] The Court's recent delay of the start of the first trial against AstraZeneca will also allow the Plaintiffs more time to review documents.

[18] According to Plaintiffs, the *Webb* case articulates three possible justifications for default judgment as a sanction of misconduct: (1) "the other party 'has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case'"; (2) the misconduct put an "intolerable burden" on the court by requiring it to modify its docket and operations; and, (3) the court should deter similar misconduct in the future. 146 F.3d at 971 (internal citations omitted).

DSMDB-2113810v07

not incur any extra costs related to Baxter's document production. Any costs Plaintiffs incur in reviewing Baxter's documents are simply the cost of engaging in extensive discovery in a massive and complex litigation. They are not "excess costs," but rather, the cost of litigation. *See Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991) ("Under the 'American rule,' each party must bear its own expenses during litigation.").

Neither has Baxter's conduct placed an "intolerable burden" upon the Court. A trial date in this matter has not yet been set, and is likely more than one year away. An extension of time to permit Plaintiffs time to review the documents and conduct depositions will not affect that trial date. As the *Xaphes* court states, "It seems to have escaped the attention of [] counsel that trial *is* the ultimate goal in the absence of some voluntary accommodation by settlement of Plaintiff's claims." 102 F.R.D. at 551 (emphasis in original). Plaintiffs seek to avoid pre-trial responsibilities and obligations in favor of a pre-trial windfall.

Finally, sanctions are not necessary to deter any future misconduct from Baxter. As the First Circuit stated in *Anderson*:

> As a deterrent, sanctions speak largely to systemic concerns. Courts cannot function smoothly if parties, and counsel, ignore the rules, overlook due dates, or flout court orders. In this sense, sanctions may be a useful tool in vindicating the court's authority, reminding those who need reminding of the protocol, and ensuring orderliness in the judicial process.

900 F.2d at 394-95. Baxter is well aware of the Court's authority and has employed more than 100 attorneys so Baxter could produce documents in an orderly and efficient manner. It may have taken longer to complete the document production than Baxter anticipated. That slight miscalculation certainly does not warrant sanctions. In the end, Plaintiffs' primary complaint can be remedied by granting Plaintiffs additional time to review the documents. Ironically, Plaintiffs summarily reject this solution, without discussion or justification.

19

IV.     **CONCLUSION**

For Baxter's production of nearly one million documents, Plaintiffs ask the Court to impose the extreme remedy of default judgment.  Plaintiffs have given this Court no sound basis to do so.  Baxter has not engaged in any bad-faith conduct nor has it willfully or deliberately violated any Court orders with respect to its document production.  To the contrary, Baxter spent over 100,000 hours and millions of dollars to produce documents requested by Plaintiffs.  DeLancey Decl., ¶ 11.  Plaintiffs' frivolous motion is nothing more than a thinly-veiled attempt to avoid reviewing the very documents they asked for and a request for a reward for doing nothing.

For all the foregoing reasons, Plaintiffs' motion should be denied.  Because Plaintiffs motion lacks factual or legal basis, Baxter requests that the Court require Plaintiffs to reimburse Baxter for the costs, including attorneys fees, associated with the preparation of this opposition.

V.      **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1, Baxter hereby requests oral argument on this Motion.

Dated:  July 26, 2006                         Respectfully submitted,


                                               /s/ Peter E. Gelhaar
                                              Peter E. Gelhaar (BBO #188310)
Of counsel:                                   DONNELLY, CONROY & GELHAAR, LLP
                                              One Beacon Street, 33rd Floor
Merle M. DeLancey                             Boston, MA  02108
J. Andrew Jackson                             Telephone:  (617) 720-2880
DICKSTEIN SHAPIRO LLP                         Facsimile:  (617) 720-3554
1825 Eye St., N.W.
Washington, DC 20037                          Counsel for Defendants
Telephone:  (202) 420-2200                    BAXTER INTERNATIONAL INC. and
Facsimile:  (202) 420-2201                    BAXTER HEALTHCARE CORPORATION

**CERTIFICATE OF SERVICE BY LEXIS NEXIS FILE AND SERVE**

Docket No. MDL 1456

I, Shamir Patel, hereby certify that I am one of the attorneys for Defendant Baxter Healthcare Corporation and that, on July 26, 2006, I caused copies of BAXTER HEALTHCARE CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File and Serve.

___ **/s/ Shamir Patel** _____
Shamir Patel

DSMDB-2113810v07