# UNPUBLISHED DECISIONS CITED IN BRIEF

LEAH BEH-HANSON, Plaintiff v. ARCONIUM SPECIALTY ALLOYS CO., FRY TECHNOLOGIES, INC., and FRY'S METALS, INC., and JOHN RYCZEK, INDIVIDUALLY AND IN HIS CAPACITY AS PRODUCTION MANAGER ASSISTANT, and PAUL TITZLER, INDIVIDUALLY AND IN HIS CAPACITY AS HUMAN RESOURCES DIRECTOR, Defendants

CA 03-263ML

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

2004 U.S. Dist. LEXIS 27732

June 18, 2004, Decided

**COUNSEL:** [*1] For LEAH BEH-HANSON, plaintiff: Kevin F. McHugh, City of Providence Law Department, Providence, RI

For ARCONIUM SPECIALTY ALLOYS CO., defendant: Neal J. McNamara, Robert J. Crohan, Jr., Holland & Knight LLP One Financial Plaza, Providence, RI

For FRY TECHNOLOGIES, INC., defendant: Neal J. McNamara, Robert J. Crohan, Jr., Holland & Knight LLP One Financial Plaza, Providence, RI

For FRY'S METALS, INC., defendant: Neal J. McNamara, Robert J. Crohan, Jr., Holland & Knight LLP One Financial Plaza, Providence, RI

For JOHN RYCZEK, Individually and in his capacity as Production Manager Assistant, defendant: Neal J. McNamara, Robert J. Crohan, Jr., Holland & Knight LLP One Financial Plaza, Providence, RI

For PAUL TITZLER, Individually and in his capacity as Human Resources Director, defendant: Neal J. McNamara, Robert J. Crohan, Jr., Holland & Knight LLP One Financial Plaza, Providence, RI

**JUDGES:** David L. Martin, United States Magistrate Judge

**OPINIONBY:** David L. Martin

**OPINION:**

### REPORT AND RECOMMENDATION

Before the court is Defendants' Motion for Sanctions ("Motion for Sanctions" or "Motion") (Document # 33). Although the Motion was referred for determination, the nature of [*2] the relief being sought, the imposition of sanctions, causes the court to treat the Motion as if it were referred for preliminary-review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b) (1) (B) and D.R.I. Local R. 32(a). A hearing was conducted on June 7, 2004. n1 For the reasons stated herein, I recommend that the Motion be granted.

n1 The hearing was scheduled for 2:00 p.m. Although Plaintiff's counsel was present, counsel for Defendants did not appear until 2:15 p.m., after being called by the clerk. Defendants' counsel explained that his office had calendared the hearing for a later date and apologized for his tardiness. While accepting this explanation and apology, the court stated that if it determined that Defendants' Motion for Sanctions (Document # 33) ("Motion for Sanctions" or "Motion") should be granted, it would recommend that the amount of any monetary sanctions awarded be reduced by an amount equal to the reasonable hourly compensation of Plaintiff's counsel for one quarter hour of his time. The court, now having concluded that the Motion for Sanctions should be granted, recommends that the amount of any monetary sanctions awarded be reduced by this amount.

[*3]

### Facts

Defendants filed the instant Motion on April 21, 2004, pursuant to Fed. R. Civ. P. 26(g) and 28 U.S.C. § 1927. The Motion seeks "imposition of sanctions, including an award of attorney's fees, against plaintiff and/or her counsel, for their conduct in connection with responding to Defendants' First Request for Production

of Documents and the subsequent Motion to Compel." Motion for Sanctions.

The conduct about which Defendants complain is set forth in their memorandum:

> During discovery, Defendants served upon plaintiff their First Request For Production of Documents and First Set of Interrogatories. Plaintiff objected to a number of Defendants' discovery requests on the grounds of relevance, attorney-client privilege, and work product. Plaintiff did not indicate whether she had documents in her possession responsive to these requests, and did not produce a privilege log. Defendants sought to obtain responses to these requests and a privilege log from plaintiff without Court action. (See letter attached as Exhibit A). Plaintiff's counsel did not respond to Defense counsel's letter. Defendants subsequently [*4] moved to compel and submitted a supporting memorandum of law.
>
> In response to Defendants' motion, plaintiff, rather than acknowledging that she possessed no responsive documents to three of the four requests, filed a memorandum in opposition to the motion to compel, arguing the merits of her objections. (See Docket Entry # 26.) Defendants thereafter submitted a reply memorandum. On March 16, 2004, Magistrate Judge Martin conducted a lengthy hearing at which counsel for both parties fully argued the merits of plaintiff's objections to the pertinent discovery requests. Magistrate Judge Martin made rulings from the bench with respect to each matter in dispute and subsequently entered a written order compelling Plaintiff to respond to Defendants' requests for production numbers 8, 10, 12, and, as limited 14 (See Docket Entry # 32.) He also ordered plaintiff to respond to interrogatory number 14, as limited. (See id.) Defense counsel expended considerable time in preparing for and appearing at the hearing. Moreover, the court expended judicial resources in preparing for and conducting the hearing.
>
> Plaintiff subsequently complied with Magistrate Judge Martin's order by serving supplemental [*5] responses to Defendants' discovery requests. **Of the four specific requests for production on which Defendants had moved to compel, and for which plaintiff had been ordered to respond, Plaintiff responded in her supplemental response that she had no documents responsive to [three of] the request[s].**

Defendants' Memorandum in Support of Motion for Sanctions ("Defendants' Mem.") at 1-2 (bold added).

**Law**

Federal Rule of Civil Procedure 26(g):

> requires that every discovery response bear the signature of the attorney, certifying "to the best of the signer's knowledge, information and belief, formed after a reasonable inquiry" that the response is "(A) consistent with these rules. . . ; (B) not interposed for any improper purpose, such as to harass or cause unnecessary delay . . . ; and (C) not unreasonable . . . . "

Legault v. Zambarano, 105 F.3d 24, 27 (1st Cir. 1997)(quoting the Rule).

In addition, Title 28, U.S.C., § 1927 states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies [*6] the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The United States Court of Appeals for the First Circuit has provided the following guidance to district courts regarding the application of § 1927:

> We do not require a finding of subjective bad faith as a predicate to the imposition of sanctions. Behavior is vexatious when

it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927. The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice. Yet, we agree with other courts considering this question that section 1927's requirement that the multiplication of the proceedings [*7] be vexatious necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence. Finally, in assessing whether an attorney acted unreasonably and vexatiously in multiplying proceedings, the district courts in this circuit should apply an objective standard.

Cruz v. Savage, 896 F.2d 626, 631-32 (1st Cir. 1990)(citations and internal quotation marks omitted).

Other courts have also concluded that there is no requirement under § 1927 that an attorney be found to have acted in bad faith before sanctions may be imposed. See Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 291 (5th Cir. 2002) ("All that is required to support § 1927 sanctions is a determination, supported by the record, that an attorney multiplied proceedings in a case in an unreasonable manner."); Ridder v. City of Springfield, 109 F.3d 288, 298 (6th Cir. 1997) ("Fees may be assessed without a finding of bad faith, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous [*8] claims.") (internal quotation marks omitted).

### Discussion

Plaintiff makes four arguments in opposition to the Motion for Sanctions. First, she charges that Defendants have engaged in bad faith conduct in this litigation. Second, Plaintiff contends her conduct is distinguishable from that found sanctionable in Tise v. Kule, 37 Fed. R. Serv. 2d 846 (S.D.N.Y. 1983), a case cited by Defendants and attached to Defendants' memorandum. Third, Plaintiff faults Defendants for inaccurately stating that she has not previously produced any documents in response to request number 10. Fourth, Plaintiff argues that although there were no responsive documents at the time of the hearing on the Motion to Compel, there are now and that the only way she could have preserved her claim of privilege as to these documents (and others which may come into existence in the future) was by objecting at the time of the request.

Plaintiff's first contention is that Defendants have engaged in bad faith conduct and that the instant Motion is the "fourth" such instance. Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Sanctions ("Plaintiff's Mem.") at 1. Plaintiff [*9] initially complains that after two and one half hours of mediation Defendants made "a nuisance-value offer and stated they were confident that they would win on summary judgment," id. at 2, and that if Plaintiff had known this she would not have agreed to mediation at the pretrial conference, see id. In Plaintiff's view, Defendants' conduct made "a mockery out of the mediation," id., wasted the time of the mediator, Plaintiff, and Plaintiff's counsel, see id., and was "the type of conduct that Rule 26(g) and 28 U.S.C. § 1927 contemplate," id., n2 as being sanctionable.

> n2 Plaintiff also asserts that at the mediation "Defendants denied there was insurance to cover these allegations," Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Sanctions ("Plaintiff's Mem.") at 1, but that on February 4, 2004, Defendants produced an insurance policy for the period of October 1, 2000, to October 1, 2001. Plaintiff describes the policy as being a "renewal policy," id. at 2, and appears to imply that Defendants' earlier denial of insurance was not true, see id. If so, the court does not condone Defendants' misstatement. However, it does not appear that the denial caused or contributed to conduct which is the subject of the present Motion for Sanctions. For that reason, the court considers the alleged misstatement as not relevant to its determination of the instant Motion for Sanctions.

[*10]

The next instance of alleged bad faith conduct, according to Plaintiff, is Defendants' "failure to produce the evidence of the Plaintiff allegedly stealing buckets for which she was fired." Id. at 3. Plaintiff states that Defendants' former general manager and former plant manager testified at their depositions to viewing a videotape which showed Plaintiff stealing buckets, but that Defendants have failed to produce the videotape despite a request for production seeking it. See id.

Yet another episode of Defendants' bad faith conduct, in Plaintiff's view, occurred when Defendants "filed a motion for summary judgment based on the statute of limitations, despite the fact that all of the Defendants admitted in their answer[s] that the charges were timely filed." Id. Plaintiff contends that this is the type of conduct contemplated by the court in Tise v. Kule, 37 Fed. R. Serv. 2d 846 (S.D.N.Y. 1983). See Plaintiff's Mem. at 3.

To the extent that Plaintiff is arguing that the Motion for Sanctions should be denied because Defendants are themselves guilty of bad faith conduct, the court is unpersuaded. Even if Defendants were guilty of such conduct, that [*11] fact would not justify or excuse Plaintiff engaging in sanctionable behavior in retaliation or otherwise. If Defendants have engaged in such conduct, the proper recourse for Plaintiff is to bring it to the attention of the court via a motion for sanctions, preferably soon after the conduct occurs. This would allow the court to address the matter while the events surrounding it are still fresh. Moreover, the court has serious doubts that any of the actions about which Plaintiff now complains rise to the level of bad faith conduct.

The fact that Defendants made only a "nuisance value offer" at the mediation conference is not by itself sanctionable. While Plaintiff states that she would not have agreed to the mediation had she known that this would be Defendants' position, the court declines to find that a party's failure to offer more than nuisance value at a mediation conference, in the absence of other circumstances, constitutes bad faith conduct. Plaintiff has not alleged that Defendants made any affirmative representations that they would offer more than "nuisance value" if she agreed to participate in the mediation.

As for Plaintiff's argument that Defendant's failure to produce [*12] the videotape constitutes bad faith conduct, the court notes that Plaintiff has not filed a motion to compel the production of this evidence. While Defendants are required to produce the videotape without such a motion, n3 a motion to compel would be the appropriate remedy when production is late. The court declines to find that delay in producing materials in response to a request for production, by itself, constitutes bad faith where there has been no motion to compel, the delay is only a few months, and there is no apparent prejudice as of yet to Plaintiff.

---

n3 The court assumes that Plaintiff has sought this evidence by way of a properly served request for production.

---

Plaintiff's contention that Defendants are guilty of bad faith conduct because they have filed for summary judgment based on the statute of limitations is difficult to understand. Plaintiff does not cite any specific paragraphs of Defendants' answers in support of her claim that Defendants have admitted the charges were timely. On the other hand, [*13] Defendants in their Answers specifically plead that "the complaint, or portions thereof, is barred by the applicable statutes of limitations." See Answer of Paul Titzler (Document # 3) at 6; Answer of Defendants Arconium Specialty Alloys Co., Fry Technologies, Inc. and Fry's Metals, Inc., and John Ryczek (Document # 2) at 8. Thus, the premise for this claim of bad faith conduct appears to be faulty.

Furthermore, the fact that a claim is time barred may not be clear at the time an answer is filed and may only become known after discovery has been conducted. The court rejects Plaintiff's contention, at least in the circumstances here, that a party's attempt to raise a defense which has allegedly been waived, without more, constitutes bad faith conduct. If Plaintiff is correct that Defendants have waived their statute of limitations defense, a ruling by the court to that effect will fully protect Plaintiff. The court declines to elevate to the level of bad faith conduct an attempt by a party to raise a defense which may have been inadvertently or improvidently waived.

Plaintiff's second argument against the Motion is that her conduct is distinguishable from that found sanctionable [*14] in Tise v. Kule, 37 Fed. R. Serv. 2d 846 (S.D.N.Y. 1983). Plaintiff notes that here "only three requests [for production] out of fifteen [are] at issue," Plaintiff's Mem. at 3, while in Tise the offending counsel had responded "Not Applicable" to two thirds of the requests, Tise, 37 Fed. R. Serv. 2d at 848. Plaintiff's focus on the original request for production is misplaced. What prompted the instant Motion for Sanctions was Plaintiff's conduct relative to Defendants' Motion to Compel Production of Documents and Answers to Interrogatories ("Motion to Compel") (Document # 14). That motion sought responses to four specific document requests, numbers 8, 10, 12, and 14, and one interrogatory. See id. at 1. Plaintiff objected to the motion. See Plaintiff's Objection to Defendants' Motion to Compel Production of Documents and Answers to Interrogatories ("Plaintiff's Objection to Defendant's Motion to Compel") (Document # 26). After the court ordered Plaintiff to respond to the four document requests and the single interrogatory, see Order dated 3/23/04 (Document # 32), Plaintiff did so by stating that as to document requests 8, 10, [*15] and 12 there were no documents to be produced, n4 see Defendants' Mem. at 3 (quoting Plaintiff's supplemental responses). Thus, of the five matters which were the subject of the March

16, 2004, Motion to Compel hearing, three of them are at issue. This is equivalent to sixty percent of those matters, a proportion which is close to the "two-thirds" at issue in Tise. See Tise v. Kule, 37 Fed. R. Serv. 2d at 848.

> n4 Plaintiff's supplemental response to document requests numbers 8 and 12 was "None." Her supplemental response to document request number 10 was: "None other than those already provided." Defendant's Memorandum in Support of Motion for Sanctions ("Defendants' Mem.") at 3 (quoting Plaintiff's supplemental responses).

Plaintiff also argues that the transgressing counsel in Tise sought a protective order for privileged documents which did not exist, a circumstance which is not present in the instant matter. See Plaintiff's Mem. at 3. However, this court considers seeking a protective [*16] order to be an aggravating circumstance. Its absence does not preclude the granting of the present Motion if the court determines that action is warranted.

Plaintiff additionally argues that in deciding whether to impose sanctions the Tise court took into account the degree of success achieved by the defendants as a result of their actions. See Plaintiff's Mem. at 4. Plaintiff notes that as to requests 10 and 12 this Magistrate Judge effectively reduced by eight months the time period for which documents had to be produced. See id. The effect of this reduction was to narrow the time period from approximately 77 months to approximately 66 months. This slight modification cannot be reasonably characterized as significant success. More importantly, Plaintiff does not contend that the reduction had any effect on her response. At the hearing on June 7, 2004, Plaintiff's counsel confirmed that even if the court had not narrowed the period by these eight months, her supplemental responses to requests 10 and 12 would have been the same.

Plaintiff's third argument carries somewhat greater weight. She contends that Defendants incorrectly state in their memorandum "that plaintiff [*17] has not previously provided any documents responsive to [request number 10]," Defendants' Mem. at 3 n.1. At the June 7, 2004, hearing, Plaintiff's counsel submitted a copy of Plaintiff's First Supplemental Response to Defendants' First Request for Production of Documents ("Plaintiff's First Supplemental Response"). That document, which is certified as having been mailed to Defendants' counsel on January 5, 2004, reflects that copies of four documents responsive to request number 10 were produced. n5 Plaintiff maintains that she "has produced all of the clinical psychologist's records and the treating physician's office notes that referred the Plaintiff to the clinical psychologist." Plaintiff's Mem. at 5. The persuasiveness of this argument, however, is significantly diminished by the fact that Plaintiff's counsel failed to disclose prior to (or at the very latest at) the March 16, 2004, hearing on the Motion to Compel that there were no additional documents responsive to this request. Both Defendants and the court were led to believe that there were such documents and that a hearing was necessary.

> n5 The four documents were: 1) a March 29, 2000, letter from Michael E. Werle, Ed.D.; 2) a health insurance claim form submitted by Dr. Werle; 3) treatment notes of Dr. Werle; and 4) treatment notes of Michael F. Felder, D.O., M.A. See Plaintiff's First Supplemental Response to Defendants' First Request for Production of Documents, Attachments.

[*18]

Plaintiff's fourth argument against the Motion for Sanctions is that:

> Although there were no documents that fell into the aforementioned categories at the time of the Motion to Compel, there are now n6 and there could be more in the future. (The Plaintiff is preparing a supplemental response to one of the requests at this time). The only way the Plaintiff could preserve her privilege if such documents come into existence in the future was to object at the time of the request. Otherwise, she would have waived the right to assert the privilege.

> n6 Plaintiff's counsel indicated at the June 7, 2004, hearing that documents responsive to request number 8 have come into his possession since the hearing on the Motion to Compel. See also Plaintiff's Mem. at 6 (indicating that either a former or present employee of Defendant has given information to Plaintiff or her attorney since the March 16, 2004, hearing).

Plaintiff's Mem. at 5. She further asserts that "it would have been irresponsible for the Plaintiff [*19] to simply answer 'none,'" id. at 7, because there was a "realistic

potential," id., that responsive documents could come into existence in the future, see id. Plaintiff maintains that "she had a duty to assert privilege where the potential for it to apply existed." Id.

With this argument in mind, the court asked Plaintiff's counsel at the June 7, 2004, hearing why Plaintiff had not stated in her responses, after asserting the objection and the grounds therefor, that without waiving the objection she presently had no documents responsive to the requests. Plaintiff's counsel answered that such a response could constitute a waiver of the objection notwithstanding the specific disclaimer to the contrary. Counsel cited no authority for this proposition, and the court rejects it as illogical. Indeed, the court notes that it is not uncommon for attorneys to assert objections in response to requests for production and to also include the statement that, without waiving the objection, there are no responsive documents. Such a practice is to be encouraged because it helps all concerned avoid expending time and energy on resolving theoretical questions.

In summary, the arguments [*20] offered by Plaintiff in opposition to the present Motion are unpersuasive. After considering all of the circumstances in this matter, the court finds that the conduct of Plaintiff and/or her counsel violated the requirement of Rule 26(g) that a signature on an objection certify, "to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry," that the objection is "(A) consistent with these rules . . . ; (B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay . . . ; and (C) not unreasonable . . . ." Fed. R. Civ. P. 26(g) (2). The specific conduct, which cumulatively the court finds to be "unreasonable" and warranting the imposition of sanctions, is: 1) Plaintiff's response to Defendants' First Request for Production of Documents ("Request for Production") which asserted objections based on claims of privilege and relevancy as to request numbers 8 and 12 without disclosing that no documents responsive to these requests then existed; 2) the failure of Plaintiff's counsel to respond in any manner to the January 15, 2004, letter from Defendant's counsel despite the fact [*21] that the letter was largely devoted to requests numbers 8, 10, and 12 and called Plaintiff's attention to the requirement that she submit a privilege log; n7 3) Plaintiff's objection to Defendant's Motion to Compel (and Plaintiff's memorandum in support thereof) which failed to disclose that no documents responsive to these three requests then existed (apart from those already produced on or about January 5, 2004, with Plaintiff's First Supplemental Response), see Plaintiff's Objection to Defendant's Motion to Compel; and 4) Plaintiff's failure to disclose at the March 16, 2004, hearing the non-existence of the documents.

n7 A copy of the January 15, 2004, letter from Defendants' counsel is attached at Exhibit A to Defendants' Mem.

Applying an objective standard, see Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990), I further find that Plaintiff's counsel acted unreasonably and vexatiously in multiplying the proceedings and that his conduct violates 28 U.S.C. § 1927. [*22] Plaintiff was obligated to make a reasonable inquiry regarding the existence of responsive documents and should have disclosed in her initial response that no responsive documents existed as to three of the requests for production. The need for such a response was even more apparent after Plaintiff's counsel received the January 15, 2004, letter from defense counsel which presented detailed argument regarding the requests. At the very latest, Plaintiff should have revealed the non-existence of responsive documents at the March 16, 2004, hearing on the Motion to Compel. Had she done so, the court could have focused on a single request for production rather than four. Plaintiff's failure caused Defendants and the court to expend time unnecessarily.

While there is no evidence that Plaintiff's counsel intended to harass or annoy Defendants, I find that his repeated failures (detailed above) to disclose that there were no responsive documents demonstrates that he "act[ed] in disregard of whether his conduct constitute[d] harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process of justice,'" Cruz v. Savage, 896 F.2d at 632 (quoting [*23] United States v. Nesglo, Inc., 744 F.2d 887, 891 (1st Cir. 1984)); cf. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 576 (1st Cir. 1989)("Discovery sanctions are appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'")(quoting Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)). I also find that his conduct was more severe than mere negligence, inadvertence, or incompetence, see id., and that sanctions should be imposed.

### Conclusion

For the reasons stated above, I recommend that the Motion for Sanctions be granted and that Defendants be awarded a reasonable attorney's fee for the time they expended after January 15, 2004, in an effort to obtain documents responsive to their requests for production numbers 8, 10, and 12. Because it appears that Plaintiff's counsel was responsible for the failure to disclose that there were no responsive documents, I further

recommend that the sanctions be paid by Plaintiff's counsel.

Any objections [*24] to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

United States Magistrate Judge

June 18, 2004

Copyright 2006 SHEPARD'S(R) - 0 Citing references

**Beh-Hanson v. Arconium Specialty Alloys Co., 2004 U.S. Dist. LEXIS 27732 (D.R.I. June 18, 2004)**

Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

**SHEPARD'S SUMMARY**

**Unrestricted** *Shepard's* **Summary**
**No subsequent appellate history.**
**Citing References: None**

**PRIOR HISTORY**  ( 0 citing references )

*(CITATION YOU ENTERED):*
*Beh-Hanson v. Arconium Specialty Alloys Co.*, 2004 U.S. Dist. LEXIS 27732 (D.R.I. June 18, 2004)

# PENSION ADMINISTRATION COMMITTEE OF THE SHERATON CORPORATION RETIREMENT PLAN FOR SALARIED EMPLOYEES, Plaintiff, Appellee, v. WILLIAM J. CARROLL D/B/A CARROLL CONSULTING ACTUARIES, Defendant, Appellant.

## No. 93-1585

## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

## 1993 U.S. App. LEXIS 34032

### December 30, 1993, Decided

**NOTICE:** [*1]   RULES OF THE FIRST CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**

Reported in Table Case Format at: 14 F.3d 44, 1993 U.S. App. LEXIS 37357.

**PRIOR HISTORY:** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. Hon. Rya W. Zobel, U.S. District Judge.

**COUNSEL:** William J. Carroll on brief pro se.

Jerome P. Facher, Peter A. Spaeth and Hale and Dorr on brief for appellee.

**JUDGES:** Before Breyer, Chief Judge, Torruella and Selya, Circuit Judges.

**OPINIONBY:** PER CURIAM

**OPINION:** Per Curiam. This appeal arises from a civil action brought by the named fiduciary of a pension plan to recover certain assets alleged to be wrongfully held by the administrator of another pension plan. The plaintiff is the Pension Administration Committee of the Sheraton Corporation Retirement Plan for Salaried Employees ("the PAC"). The defendant is William J. Carroll d/b/a Carroll Consulting Actuaries (Carroll). Pursuant to Fed. R. Civ. P. 37(b)(2), the district court entered a default judgment against Carroll for his failure to comply with multiple orders compelling discovery. Carroll now appeals from the default judgment. We affirm.

Background

The PAC commenced this action by filing [*2] a five-count complaint which stated claims for relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201, federal common law, and state law. The complaint alleged the following facts.

PGA Resort Ltd. (PGA), a Florida limited partnership, owned the former Sheraton PGA Resort Hotel in West Palm Beach, Florida. In 1980, PGA began providing retirement benefits for its salaried and hourly employees. PGA provided those benefits by becoming a participating employer in the Pension Plan and Trust for Hotels and Motor Inns Associated With The Sheraton Corporation (Plan I). Under Plan I, individual owners of hotels associated with the Sheraton Corporation (Sheraton) adopted as their pension plans the terms of two "master" documents - a Pension Plan Agreement and a Pension Trust Agreement (the Plan Documents). These documents provided that a participating employer could withdraw from Plan I and establish a separate qualified pension or retirement plan provided that the new plan provided equal or greater rights and benefits to [*3] the employees covered by Plan I. Under Plan I, PGA and other participating employers made contributions to a common trust fund which was held by the Bank of Boston as trustee. The Plan Documents further provided that, upon an employer's withdrawal from Plan I, the assets in the participating employer's account in Plan I shall be transferred to the trustee designated by the employer.

Carroll is the administrator for Plan I. He has the duty to account separately for the Plan assets of each participating employer and exclusive control over the disposition of Plan I's assets. The complaint alleged that as a result of the following events, Carroll continued improperly to exercise control over the assets in PGA's account in Plan I.

In 1986, PGA decided to participate in a new pension plan (Plan II) that preserved the rights and benefits of all PGA employees covered by Plan I, in addition to

providing other benefits. n1 PGA informed Carroll of its intention to withdraw from Plan I. Carroll informed PGA and its agent, the actuarial firm of Towers, Perrin, Forster & Crosby (TPF&C), that a new pension plan and trust approved by the Internal Revenue Service (IRS) was the only authorization he [*4] required to transfer PGA's assets to the trustee of the new pension plan. PGA subsequently adopted Plan II and requested a ruling from the IRS that Plan II was a qualified pension plan under 26 U.S.C. § 401(a). The IRS issued such a ruling in 1988. Thereafter, TPF&C instructed Carroll to transfer PGA's assets in Plan I to the Shawmut Bank, the trustee for Plan II. The complaint alleged that despite PGA's compliance with the requirements for transferring the assets set forth in Plan I and Carroll's own conditions, Carroll refused to transfer PGA's assets without justification. n2

n1 Plan II is also known as the Sheraton Salaried and Hourly Retirement Plans and Trusts for Managed Hotels.

n2 The complaint further alleged that TPF&C made further demands on Carroll to transfer PGA's assets during the remainder of 1988. Carroll continued to retain control over the assets. In December, 1988, Carroll urged the IRS to rescind its favorable determination letters concerning Plan II. The IRS did not do so.

[*5]

Effective January 1, 1989, PGA discontinued providing retirement benefits to its employees. Pursuant to an agreement between PGA and Sheraton, the liabilities and assets of Plan II were merged into a third pension plan, the Sheraton Corporation Retirement Plan for Salaried Employees (Plan III). The PAC is the administrator and a named fiduciary of Plan III. See 29 U.S.C. §§ 1102(16)(A), 1102(a). The complaint alleged that at the time this merger took place, PGA's assets in Plan I were the lawful property of Plan II and thus should have been received by Plan III as a result of the merger. However, Carroll improperly continued to refuse to transfer PGA's assets to Plan III despite multiple demands by PGA, its agents, and the PAC. The complaint alleged that PGA's assets in Plan I (hereafter, "the Assets") have been the lawful property of Plan III since January 1, 1989 and that Carroll's improper retention of control over the Assets is in derogation of Plan III's right to possession and control. The PAC commenced this action to compel Carroll to transfer the Assets to Plan III. According to the complaint, Carroll's most recent accounting indicated [*6] that the Assets were worth at least $ 230,000.

The first two counts of the complaint alleged that Carroll's improper refusal to transfer the Assets constituted a breach of his fiduciary duty to act solely in the interest of the participants and beneficiaries of Plan I in violation of 29 U.S.C. § 1104(a)(1), and a breach of his fiduciary duty to act in accordance with the documents and instruments governing Plan I in violation of 29 U.S.C. § 1104(a)(1)(D). n3 Carroll's refusal to transfer the Assets also was said to violate of the terms of Plan I. These violations were said to entitle the PAC to an order compelling Carroll to (1) direct the Bank of Boston, the trustee of Plan I, to transfer all assets in PGA's account in Plan I to the trustee for Plan III, Northern Trust Company, and, (2) provide the PAC with a final accounting of the assets in PGA's account in Plan I. The PAC claimed this relief under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(3). n4 Count II sought a declaratory judgment that the PAC, not Carroll, was entitled to possession and control of [*7] the Assets in addition to the aforementioned equitable relief. Counts four and five of the complaint stated common law claims for breach of fiduciary duty and conversion and claimed damages in an amount not less than the market value of the Assets. n5

n3 29 U.S.C. § 1104(a) provides, in relevant part, that:

> (1) Subject to sections 1103 (c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and
>
> * * *
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

n4 29 U.S.C. § 1132(a) provides that,

> A civil action may be brought -

\* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . .

[*8]

n5 The complaint also claimed attorney's fees and costs under 29 U.S.C. § 1132(g).

Procedural History

Throughout the course of the proceedings below, Carroll maintained that since the summons and complaint identified him as "William J. Carroll d/b/a Carroll Consulting Actuaries," he had been sued in his individual capacity only, and therefore lacked the ability to respond to the complaint and the PAC's discovery requests in his capacity as the administrator of Plan I. Thus, the PAC filed a request for production of documents shortly after it filed its complaint. That request sought all correspondence, notes and files relating to PGA, its pension plans, or the Assets, as well as all correspondence between Carroll and any other person or entity relating to Carroll's role as the administrator of Plan I.

Carroll initially did not file a response to this request for production of documents. Instead, proceeding pro se, he filed an "Objection to Complaint and Motion to Stay Proceedings." This document alleged, inter alia, that the PAC lacked the standing [*9] to bring this action and that Carroll lacked the capacity to defend it since he had been sued only in his individual capacity. n6 Carroll withdrew this motion before it was heard. On June 5, 1992, an initial scheduling conference (ISC) was held before the district court. After explaining to Carroll that the PAC was entitled to discover the documents it had requested, the district judge ordered Carroll to produce the requisite documents by June 26, 1992 and to submit to a deposition on August 10th and 11th, 1992. A written order embodying these requirements was issued on June 10, 1992.

n6 We note that attached to this motion were twelve letters and an incomplete list of other documents in Carroll's files. These appear to be responsive to the PAC's request for production of documents, albeit incomplete.

On June 26, 1992, Carroll filed a response to the PAC's request for production of documents. For the most part, that response denied that Carroll possessed the requested documents in his individual capacity and expressly [*10] disavowed the capacity or authority to respond to the PAC's request as the administrator of Plan I. n7 On July 2, 1992, the PAC filed a motion to compel production of documents and for sanctions. The motion stated that Carroll had refused to produce documents based on his meritless attempt to distinguish documents he possessed in an individual capacity and documents he possessed in his capacity as administrator of Plan I. n8 On August 14, 1992, the district court denied Carroll's motion for disqualification and allowed the PAC's motion to compel production of documents. The court issued an order that required Carroll to produce all documents which he held in his individual or representative capacity. n9

n7 Several letters between Carroll and various parties were attached to the response, as well as accountings for the Hourly and Salaried Pension Plans from 1983 through 1990. These documents and those that were attached to his initial objection to the complaint indicate that Carroll's claim that he did not possess the documents is disingenuous.

n8 Carroll filed a rambling and prolix opposition to the PAC's motion to compel which raised no meritorious issues. He also filed a motion to disqualify the district judge based on her alleged pro-plaintiff bias.

[*11]

n9 Carroll appealed the order denying his motion to disqualify the district judge and the order compelling him to produce the requested documents. This court dismissed both appeals on October 29, 1992.

By letter dated August 20, 1992, plaintiff's counsel notified Carroll to produce the requisite documents by August 24th and to appear for his deposition on August 28th. Once again, Carroll did not comply. On August 31, 1992, the PAC filed a motion for sanctions based on Car-

roll's failure to comply with the district court's August 14, 1992 order to produce documents and on his subsequent failure to appear for his deposition on August 28th. The PAC also filed a motion for summary judgment on August 31, 1992. In support of this motion, the PAC filed multiple affidavits, including that of Kathy Bascik, Sheraton's Director of Employee Benefits. Bascik averred that after Plans II and III merged, Plan III began paying claims submitted by the participants and beneficiaries of PGA's pension plans. She further averred that Plan III would continue to pay all valid claims of participants and beneficiaries of PGA's [*12] pension plans, although Plan III had been deprived of the assets which correspond to these liabilities as a result of Carroll's refusal to transfer PGA's assets in Plan I.

The district court did not rule on the PAC's motion for sanctions while its motion for summary judgment remained under advisement. On November 3, 1992, the district court denied that motion on the ground that genuine issues of material fact remained about the validity of the amendment to Plan I and the validity of Plan II. Thereafter, the PAC resumed its efforts to secure discovery from Carroll.

On December 18, 1992, the PAC noticed Carroll's deposition for January 5, 1993. Anticipating that Carroll would not comply on the ground that he could not do so in his individual capacity, plaintiff's counsel subpoenaed Carroll for this deposition in his capacity as the administrator of Plan I. The subpoena also required Carroll to produce the previously requested documents by January 4, 1993. The PAC also requested a ruling on its August 31, 1992 motion for sanctions. On December 29, 1992, Carroll informed plaintiff's counsel that counsel was being engaged to represent Plan I and that he would be unable to comply with the [*13] subpoena for his deposition. n10

n10 We note that Carroll has proceeded pro se throughout this litigation and never secured counsel.

On January 5, 1993, the district court allowed the PAC's motion for sanctions. The court ordered Carroll to pay $ 2000 to the plaintiff forthwith as partial compensation for the costs it had incurred in its unsuccessful attempts to discover documents and depose him. n11 On January 13, 1993, having received no payment from Carroll, the PAC moved to default Carroll pursuant to Fed. R. Civ. P. 37(b) and (d). The motion was based on Carroll's willful refusal to obey the district court's orders to produce documents and submit to a deposition as well as the order compelling Carroll to pay the $ 2000 sanction for his past misconduct. n12

n11 On January 25, 1993, Carroll filed a notice of appeal from the sanction order. We dismissed that appeal for lack of jurisdiction on March 17, 1993.

n12 On January 18, 1993, Carroll forwarded a $ 2000 check to the Senior Counsel for ITT Corporation (Sheraton's parent corporation) in New York. While the check was made payable to the PAC, it included a list of conditions seemingly designed to render it non-negotiable. For example, the check indicated that it was good for 30 days only. An accompanying document provided that the PAC's deposit of the check would constitute an admission against its interest. Thus, plaintiff's counsel was unable to use this check.

[*14]
On March 10, 1993, the district court held a hearing on the PAC's motion for a default judgment. Despite Carroll's obstinacy, the court deferred ruling on the motion and gave Carroll one last chance. The court ordered Carroll to appear for his deposition on March 15, 1993 and to produce the requested documents at his deposition. In making this ruling, the court explained to Carroll that he was required to appear and answer questions in whatever capacity he thought he was acting with respects to the pension plans. (Supp. App. pp. 255-60). Carroll responded, "I don't know what you mean by me[,]" and repeatedly protested that he was not able to comply with discovery in his capacity as the administrator of Plan I because he had been sued as an individual. The court specifically instructed Carroll to answer "whatever question is put to you" and to "have with you all the documents that pertain to the pension plan. It doesn't matter whether you are William Carroll, personally, William Carroll, trustee, William Carroll, plan administrator, you will appear with all the documents." (Supp. App. pp. 260, 272). When Carroll protested, "I hear the words, but I don't understand the meaning," the [*15] court urged him to try, noting that, "if you don't succeed, there will be further sanctions against you Mr. Carroll." (Supp. App. p. 273). The court further ordered Carroll to issue a $ 2000 check to plaintiff's counsel without restrictions. (Supp. App. p. 278).

On March 11, 1993, the district court issued a written order embodying its oral orders from the previous day's hearing. Carroll failed to appear for his deposition and did not pay the $ 2000 sanction. On March 17, 1993, the PAC filed a renewed motion to default Carroll and for further sanctions. Carroll filed a response in which he indicated that he agreed that a default was "the desired solution of the moment" because he wanted to get this

case before another court. The court scheduled a hearing on the renewed motion to default Carroll for April 27, 1992. In response to the hearing notice, Carroll filed another rambling and prolix document generally protesting his treatment in the district court while announcing that he would not be attending the hearing on the default motion. On April 27, 1993, the district court defaulted Carroll under Fed. R. Civ. P. 37. The court specifically found that Carroll willfully and persistently [*16] refused to obey the court's orders, including the August 14, 1992 order to produce documents, the March 10-11, 1993 oral and written orders to appear for his deposition, and the January 5, 1993 sanction order. (Supp. App. pp. 285-86). The court also required plaintiff's counsel to prepare a proposed judgment. On May 5, 1993, the district court entered a judgment against Carroll on counts I through V of the complaint. The judgment declared that the PAC had the right to possession and control of the assets in the account(s) of PGA in Plan I, and ordered Carroll, in whatever capacity necessary, to forthwith direct the First National Bank of Boston (the trustee of Plan I) to transfer all assets in PGA's account(s) in Plan I to the Northern Trust Company, the trustee of Plan III. The judgment also required Carroll to provide plaintiff's counsel with a full and complete accounting of the assets in PGA's account(s) in Plan I and to personally pay plaintiff's costs under 29 U.S.C. § 1132(g). (Supp. App. pp. 288-89). Carroll filed a timely notice of appeal. n13

> n13 Carroll filed a motion for reconsideration before he filed his notice of appeal. The motion did not object to the entry of the default per se. Rather, Carroll sought to revise the substance of the judgment. On June 11, 1993, this court ordered Carroll to show cause why this appeal should not be dismissed for lack of jurisdiction given the outstanding motion for reconsideration. In response, Carroll filed a notice withdrawing his motion for reconsideration with the district court. We allowed this appeal to proceed and directed both parties to brief the jurisdictional issues. Regrettably, neither party has done so. As we conclude that Carroll is not entitled to relief on the merits, we need not address the jurisdictional issues. See Norton v. Mathews, 427 U.S. 524, 530-32 (1976).

[*17]

Analysis

"Federal Rule 37 empowers a district court to make such orders as 'are just' when a party fails to comply with a discovery order, placing the court's handling of such matters beyond appellate review when there has been no abuse of discretion." Local Union No. 251 v. Town Line Sand & Gravel, Inc., 511 F.2d 1198, 1199 (1st Cir. 1975). On this record, we have no hesitation in concluding that the district court did not abuse its discretion in defaulting Carroll. In view of Carroll's repeated violations of the court's orders to produce documents and submit to a deposition, not to mention his failure to pay the $ 2000 sanction, we think that the district court exhibited extraordinary patience. The default judgment was wholly justified.

On appeal, Carroll argues that the orders compelling discovery were erroneous because they directed him to provide information in his capacity as the administrator of Plan I when he had only been sued in his individual capacity. Carroll claims that this alleged technical defect in the summons and complaint disabled him from responding to the PAC's discovery efforts. He contends that the default judgment sanctioned [*18] him for the conduct of a non-party - i.e. - William J. Carroll, Administrator of Plan I, and therefore is not "just" within the meaning of Fed. R. Civ. P. 37(b)(2).

Like the district court, we refuse to indulge in such willful blindness. Carroll concedes that he is the administrator of Plan I and the record discloses that he possesses numerous documents responsive to the PAC's request for production. Carroll's feigned inability to comply is indicative of bad faith, which further justifies the default. See Eisler v. Stritzler, 535 F.2d 148, 153 (1st Cir. 1976)(upholding default judgment where defendant acted in bad faith throughout litigation).

Carroll also assails the default judgment under ERISA, raising a host of arguments. He claims that the amendment to Plan I which created Plan II is invalid, thus Plan II never acquired a right to PGA's assets. Carroll further argues that ERISA does not recognize mergers of pension plans, therefore the merger of Plans II and III also is invalid and the PAC has no right to PGA's assets as a result of the merger, apart from the invalidity of Plan II. Carroll also contends that the PAC lacks standing to sue [*19] because it is not a "person" and therefore cannot be a fiduciary under 29 U.S.C. §§ 1002(9) and 21(A). Each of these claims have been waived by Carroll's accession to the default. "An entry of default against a defendant establishes the defendant's liability." Goldman, Antonetti, Ferraiuo-Li, Axtmayer & Hertell v. Medfit International, Inc., 982 F.2d 686, 693 (1st Cir. 1993)(citations omitted). Insofar as these contentions attack the liability finding, they come too late.

Carroll's remaining arguments are equally without merit, and largely unintelligible. We particularly note that the district judge did not abuse her discretion in denying Carroll's multiple motions to disqualify her. It is well established that "prior adverse rulings alone cannot,

of course, be the basis for a motion to recuse." Panzardi-Alvarez v. United States, 879 F.2d 975, 984 (1st Cir. 1989), cert. denied, 493 U.S. 1082 (1990). Given Carroll's wholly unjustified refusal to comply with the court's orders, no appearance of bias arises from this record.

Judgment affirmed.

Copyright 2006 SHEPARD'S(R) - 2 Citing references

**Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried Employees v. Carroll, 1993 U.S. App. LEXIS 34032 (1st Cir. Mass. Dec. 30, 1993)**

*SHEPARD'S Signal: Citing Refs. With Analysis Available*
Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

### SHEPARD'S SUMMARY

**Unrestricted *Shepard's* Summary**
**No subsequent appellate history. Prior history available.**
**Citing References:**
  Other Sources:         Treatises (1)

### PRIOR HISTORY  ( 1 citing reference )

1.   *Pension Admin. Comm. v. Carroll*, 14 F.3d 44, 1993 U.S. App. LEXIS 37357 (1st Cir. Mass. 1993)

     *Reported in full at (CITATION YOU ENTERED):*
     *Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried Employees v. Carroll*, 1993 U.S. App. LEXIS 34032 (1st Cir. Mass. Dec. 30, 1993)

### TREATISE CITATIONS ( 1 Citing Source )

2.   *5-37 MA Pleading and Practice @ 37.18.1*

LEXSEE 2003 US DIST LEXIS 23831

PRO SPICE, INC., Plaintiff, v. OMNI TRADE GROUP, INC.ANDYAN RAHARDJASHANK'S EXTRACTS, INC.YORK IMPORT AND EXPORT, INC., Defendants.

CIVIL ACTION NO. 01-1661

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2003 U.S. Dist. LEXIS 23831

December 16, 2003, Decided

**SUBSEQUENT HISTORY:** Costs and fees proceeding at *Pro Spice, Inc. v. Omni Trade Group, Inc., 2004 U.S. Dist. LEXIS 2246 (E.D. Pa., Feb. 11, 2004)*

**PRIOR HISTORY:** *Pro Spice, Inc. v. Omni Trade Group, Inc., 2003 U.S. Dist. LEXIS 20305 (E.D. Pa., Oct. 31, 2003)*

**DISPOSITION:** Plaintiff's request for sanctions denied.

**COUNSEL:** [*1] For Pro Spice, Inc, PLAINTIFF: Jonathan L Swichar, Duane Morris LLP, Philadelphia, PA USA. Steven M Richman, Duane Morris & Heckscher, LLP, Princeton, NJ.

For Omni Trade Group, Inc, Eric A Savage, Littler Mendelson, Newark, NJ USA. Joanne M Maxwell, Littler Mendelson, Philadelphia, PA USA.

For Shank's Extracts, Inc, York Import and Export, Inc, DEFENDANTS: Eric A Savage, Littler Mendelson, Newark, NJ USA. Joanne M Maxwell, Littler Mendelson, Philadelphia, PA USA.

For Andyan Rahardja, DEFENDANT: Eric A Savage, Littler Mendelson, Newark, NJ USA. Joanne M Maxwell, Littler Mendelson, Philadelphia, PA USA. William J Leahy, Littler Mendelson PC, Philadelphia, PA USA.

**JUDGES:** RONALD L. BUCKWALTER, J.

**OPINIONBY:** RONALD L. BUCKWALTER

**OPINION:**

MEMORANDUM

BUCKWALTER, J.

December 16, 2003

Before the court is plaintiff's request for sanctions.

The history of this case reveals that the court has previously sanctioned defendant for discovery abuses - twice by directing them to pay fees and once by prohibiting them from calling a key witness for trial.

In its present motion, plaintiff thinks that defendants should be sanctioned for producing four boxes of documents containing [*2] approximately 13,000 pages of documents that were finally directly responsive to document demands.

Plaintiff goes on to state in its brief in support of sanctions the following:

> Defendants' last minute production of these unquestionably critical materials, responsive to multiple Court Orders, deprived Pro Spice and its counsel of all opportunity to explore the content and import of these materials in discovery and at depositions. Having been deprived of this opportunity, Pro Spice was forced to confront Defendants' witnesses with these materials for the first time at trial. In essence, Pro Spice had to conduct depositions at trial - which, in a limited time frame, impeded a smooth presentation, which was compounded by Rahardja's own documented evasiveness at trial.
>
> There must be a consequence to Defendants' actions. Under well-settled Third Circuit precedent, Defendants and their

counsel should be sanctioned for their outrageous disregard of the Federal Rules of Civil Procedure and Your Honor's Orders. Pro Spice incurred substantial fees and costs in: (1) moving to obtain the very documents produced only on the eve of trial; (2) seeking to enforce the Court's [*3] orders compelling such production; (3) advancing these issues at hearings before the Court; and (4) reviewing the massive production of documents on the eve of trial, instead of completing last-minute trial preparation. We respectfully request that, under *Federal Rule of Civil Procedure 37* and *28 U.S.C. § 1927*, this Court enter an Order requiring Defendants and their counsel to reimburse Pro Spice for all legal fees and costs incurred by Pro Spice in seeking the production of, and having to review, documents produced on the eve of trial, upon presentation of a bill of costs by Pro Spice.

The defendants do not agree with plaintiff and, not surprisingly, take a totally opposite position. Defendants state:

Pro Spice now incorrectly claims that this production evidences defendants' failure to comply with discovery requests from earlier in the case. In fact, the production does precisely the opposite. It demonstrates that (a) the vagueness of Pro Spice's original demands, (b) its reliance on legal conclusions in those demands, and (c) its insistence on production of categories of documents that it failed [*4] to define with any degree of clarity yielded a production which was fully compliant but that plaintiff improperly characterizes as insufficient. Thus, had plaintiff actually asked for tax returns, documents concerning proposed joint ventures, or similarly well-delineated categories, it would have received during pre-trial discovery the materials that it obtained in response to the trial subpoena. However, by failing to make clear requests, Pro Spice set the stage for the production it now claims as insufficient.

Thus, the production at issue was proper based on the requests and Pro Spice's application should be denied in full. To the contrary, it is not defendants, but Pro Spice which should be sanctioned for multiplying these proceedings with the instant application, including by granting itself an unsanctioned third opportunity to argue the merits of the case.

It is difficult to determine which side is correct; but it is clear that plaintiff, contrary to what it says, suffered no prejudice in its ability to present a coherent case.

Plaintiff had ample time to review the evidence presented on the eve of trial which on this case actually appears to be evidence given to [*5] plaintiff at least on the weekend preceding the trial which began on Wednesday, December 4, 2002. Plaintiff wanted that trial date and assured the court at a November 26, 2002 hearing on discovery issues that it was ready to go to trial on December 4. (*See* N.T. 11/26/02 at 12).

However, as alluded to earlier, this case contains a history of defendants' not responding timely and requiring court intervention to resolve the discovery problem. This is precisely what happened again in the motion before the court. Only after the court intervened did the defendant resolve the discovery dispute. The notes of testimony of the November 26, 2002 hearing are representative of how discovery proceeded or failed to proceed in this case.

Defendants should pay the counsel fees for filing the instant motion and preparing the brief in support of the motion, which would not have been necessary if they had been more forthright to plaintiff's discovery requests.

An order follows.

**ORDER**

AND NOW, this 16th day of December, 2003 it is hereby ORDERED that counsel for plaintiff should submit its bill for filing the motion for sanctions and brief in support thereof directly to the court with [*6] a copy to defendants. Thereafter, defendants will have ten (10) days to file objections to the bill after which the court, absent agreement of counsel, will determine the amount.

BY THE COURT:

RONALD L. BUCKWALTER, J.

Copyright 2006 SHEPARD'S(R) - 5 Citing references

Pro Spice, Inc. v. Omni Trade Group, Inc., 2003 U.S. Dist. LEXIS 23831 (E.D. Pa. Dec. 16, 2003)

*SHEPARD'S Signal: Citing Refs. With Analysis Available*
Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

## SHEPARD'S SUMMARY

### Unrestricted *Shepard's* Summary
**No negative subsequent appellate history.**
**Citing References:**
  Citing Decisions:      Citing decisions with no analysis assigned (1)

## PRIOR HISTORY  ( 3 citing references )

1. *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 2001 U.S. Dist. LEXIS 14934 (E.D. Pa. 2001)

2. **Judgment entered by:**
   *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 2003 U.S. Dist. LEXIS 20305 (E.D. Pa. Oct. 31, 2003)

   ***Sanctions disallowed by (CITATION YOU ENTERED):***
   *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 2003 U.S. Dist. LEXIS 23831 (E.D. Pa. Dec. 16, 2003)

3. **Affirmed by:**
   *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 128 Fed. Appx. 836, 2005 U.S. App. LEXIS 87, 55 U.C.C. Rep. Serv. 2d (CBC) 689 (2005)

## SUBSEQUENT APPELLATE HISTORY  ( 1 citing reference )

4. **Costs and fees proceeding at:**
   *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 2004 U.S. Dist. LEXIS 2246 (E.D. Pa. Feb. 11, 2004)

## CITING DECISIONS  ( 1 citing decision )

## 3RD CIRCUIT - COURT OF APPEALS

5. **Cited by:**
   *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 128 Fed. Appx. 836, 2005 U.S. App. LEXIS 87, 55 U.C.C. Rep. Serv. 2d (CBC) 689 (2005)