UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| **IN RE PHARMACEUTICAL** ) | |
| **INDUSTRY AVERAGE** ) | |
| **WHOLESALE PRICE** ) | MDL NO. 1456 |
| **LITIGATION** ) | Civil Action No. 01-12257-PBS |
| ) | Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** ) | |
| ) | |
| STATE OF NEVADA V. ABBOTT ) | Chief Magistrate Judge Marianne B. Bowler |
| LABORATORIES, INC., ET AL., CA ) | |
| NO. CV-02-00260-ECR (Nevada I) ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| STATE OF NEVADA V. AMERICAN ) | |
| HOME PRODUCTS, ET AL., CA NO. ) | |
| 02-CV-12086-PBS (Nevada II) ) | |
| ) | |

### DEFENDANTS' THIRD MOTION TO COMPEL DISCOVERY FROM PLAINTIFF THE STATE OF NEVADA

Defendants hereby move to compel discovery from the plaintiff State of Nevada ("Nevada" or "Plaintiff"). Defendants' repeated attempts to work with Plaintiff have been rebuffed, and despite efforts to meet and confer to resolve these issues, the parties have been unable to reach an agreement. Consequently, Defendants request that the Court enter an order compelling Nevada to (1) complete and sign responses to interrogatories served over a year ago; (2) produce responsive Medicaid managed-care documents; (3) produce complete contracts for the non-Medicaid government agencies; and (4) produce a witness to answer Defendants' questions regarding Nevada's claims data, or in the alternative, preclude Nevada from relying on the claims data. Defendants ask that Nevada produce the requested documents by September 1, 2006, and produce a witness regarding the claims data by September 8, 2006, so that Defendants can make use of these materials in their summary judgment briefs and expert disclosures currently due September 21, 2006. In addition, due to Plaintiff's substantial production of

1

documents after close of discovery, Defendants request that the Court authorize Defendants to take the depositions of up to five witnesses of Defendants' choosing on or before November 1, 2006, and permit Defendants to use those depositions in their reply briefs currently due November 15, 2006.

## BACKGROUND

This is Defendants' third motion to compel discovery from Nevada. Defendants served their *First Set of Interrogatories and Requests for Production to the State of Nevada* (attached hereto as Exhibit A[1]) on May 3, 2005. On July 29, 2005, Defendants filed a motion to compel certain discovery to which Nevada had objected (*see* Docket No. 1623); at a hearing on September 19, 2005, this Court withheld its ruling and ordered the parties to make further efforts to resolve discovery disputes. Despite frequent negotiations and the resolution of a number of contested issues, the parties remained at an impasse regarding Nevada's discovery obligations. On January 31, 2006, Defendants filed their second motion to compel discovery from Nevada (*see* Docket No. 2104). At a hearing on March 29, 2006, this Court ordered Nevada to produce additional documents "ASAP," including, electronic documents and emails, rebate data, and claims data for self-administered and physician-administered drugs. In addition, the Court ordered Nevada to produce documents and make witnesses available from certain non-Medicaid state entities, the executive branch and legislative staff.

The parties have subsequently engaged in negotiations, including frequent correspondence and a meet-and-confer session on July 19, 2006, regarding remaining contested issues. Despite Nevada's counsel's promises regarding the discovery addressed by this motion, no documents have been produced, Defendants' efforts to learn the status of production have been ignored, and Defendants now reluctantly bring these issues to the Court's attention.

---

[1] All exhibits herein are attached to the declaration of Carisa A. Klemeyer, Esq. dated August 3, 2006.

**STANDARD**

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is "very broad." *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 1991). Indeed, "information is discoverable if there is any possibility that it might be relevant to the subject matter of the motion." *Id.* at 17; *see also Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428 (D. Mass. 1993); *Schuurman v. The Town of North Reading*, 139 F.R.D. 276 (D. Mass. 1991).

**ARGUMENT**

**I.    THE COURT SHOULD ORDER NEVADA TO COMPLETE AND VERIFY ITS INTERROGATORY ANSWERS**

Defendants served their *First Set of Interrogatories and Requests for Production to the State of Nevada* on May 3, 2005. *See* Exhibit A. As set forth below, these interrogatories ask Nevada to state its position on the central issues of this case, including, stating its basis for asserting that Defendants "marketed the spread," identifying Defendants' alleged representations to Nevada regarding AWP, identifying the amounts Nevada allegedly overpaid for the Subject Drugs, identifying Nevada's attempts to ascertain provider acquisition cost, and identifying what constitutes an unlawful AWP. On June 2, 2005, Nevada served its *Response to Defendants' First Set of Interrogatories and Requests for Production to the State of Nevada* (attached hereto as Exhibit B), and on November 22, 2005, it served its *Supplemental Response to Defendants' First Set of Interrogatories* (attached hereto as Exhibit C). But Nevada has neither completed nor finalized its interrogatory responses. Defendants reminded Nevada that a number of interrogatory responses were still incomplete in a letter dated April 28, 2006 (attached hereto as Exhibit D), and subsequent correspondence dated May 16 (attached hereto as Exhibit E) and June 7 (attached hereto as Exhibit F). During the parties' July 19, 2006 meet and confer,

Nevada's counsel represented that Nevada would serve supplemental complete and signed responses within one week from that conference but Nevada has not done so.

The Federal Rules oblige Nevada to actually answer each of the interrogatories and to do so under oath.  Fed. R. Civ. P. 33.  Not only has Nevada failed to answer any interrogatory under oath, but it has failed to answer a number of outstanding interrogatories at all.  These interrogatories fall into three categories.

- <u>Contention interrogatories</u>: Nevada took the position that certain contention interrogatories (Nos. 6, 7, 8, 10, 19, and 23) were premature because it had not conducted discovery against Defendants.  Discovery closed on March 30, 2006, and Nevada should now be required to state the basis for the allegations referred to in these interrogatories;

- <u>Interrogatories that Nevada was continuing to investigate</u>:  Nevada's supplemental response stated that it was continuing to investigate interrogatory No. 3.  Nevada needs to advise whether it has been able to determine an answer.  And if it is unable to determine an answer, it should explain why and when it expects to be able to provide an answer.

- <u>Interrogatories for which Nevada elected to produce documents</u>: In response to certain requests (Nos. 1(c), 1(g), 4, 9, 12, 17, and 19), Nevada said that it would produce documents.  In April, Defendants requested that Nevada identify the responsive documents by Bates range if they had already produced them; otherwise, Defendants requested Nevada produce the relevant documents.  To date, Nevada has not responded.  The Court's Local Rules require Nevada to provide information that permits Defendants to discern the answer to the interrogatories as easily as Nevada, and they require Nevada to provide this information within fourteen days of serving its interrogatory responses.  *See* L. R. 33(B).  Over a year after Nevada first responded to the interrogatories, Nevada has still not provided this information.  The Court should order Nevada to identify, and if necessary produce, the documents that it references, or answer these interrogatories.

The interrogatories address issues that are highly relevant to Nevada's claims, and the defenses against them.  For example, the contention interrogatories go to the allegations at the heart of Nevada's case—that Defendants "marketed the spread" (Interrogatory No. 6), their alleged use of incentives (Interrogatory No. 7), their alleged representations to Nevada regarding AWP (Interrogatory No. 8), the amounts Nevada paid, and allegedly overpaid, for the Subject Drugs (Interrogatory No. 10), any attempts by Nevada to ascertain provider acquisition cost

4

(Interrogatory No. 19), and any distinction by Nevada between lawful and unlawful spreads (Interrogatory No. 23).

> Defendants now request that the Court order Nevada to, by September 1, 2006:
>
> (1) provide a verification page for the original interrogatory responses and any supplemental responses;
>
> (2) respond to Interrogatory No. 3;
>
> (3) state the basis for the allegations in Interrogatory Nos. 6, 7, 8, 10, 19, and 23; and
>
> (4) produce and identify by Bates range the documents responsive to Interrogatory Nos. 1(c), 1(g), 4, 9, 12, 17, and 19.

## II. THE COURT SHOULD ORDER NEVADA TO PRODUCE DOCUMENTS REGARDING ITS MEDICAID MANAGED-CARE PROGRAM

Approximately half of Nevada's Medicaid program is administered by health maintenance organizations (HMOs). These HMOs reimbursed drugs at a different rate from the fee-for-service Medicaid program. Nevada contends that it was deceived about the rates it set regarding its fee-for-service program. Defendants contend that Nevada was not deceived and point to, among other things, the fact that these HMOs were very aware of what the term AWP meant and how it relates to acquisition cost. Defendants have requested that Nevada produce documents regarding how these managed-care contractors reimbursed for drugs. *See* Exhibit A, Request Nos. 13, 14, 26, 32 and 38; however, to date Nevada has produced only limited documents regarding Medicaid managed care and has asserted that the rest are not "relevant to the case." *See* Breckenridge Letter dated June 19, 2006 (attached hereto as Exhibit G).

Discovery of non-Medicaid entities revealed that Nevada maintains a wide range of documents regarding contracts it has for health-care benefits services. In her May 2006 deposition, Donna Lopez, Quality Control Officer for the Nevada Public Employees Benefit Program (PEBs), explained Nevada's request for proposal ("RFP") process generally, and how it

applied to the PEBs program.  Her testimony revealed that Nevada maintained a number of contracting documents—including RFPs, proposals, contracts, monthly reports, and audits—for the contracts it entered with health care providers.  With respect to the PEBs pharmacy program, these documents contained relevant information regarding Nevada's knowledge concerning, among other things, the meaning of AWP, the difference between acquisition cost and AWP, and the discount off AWP at which Nevada reimbursed.  After learning of the types of documents that Nevada regularly maintains regarding its health care contracts, Defendants requested that Nevada supplement its Medicaid production to include the Medicaid HMO contracting documents—the contracts, RFPs, responses to RFPs, evaluations of the RFPs, reports, and presentations by the top bidders—all of which are responsive to Defendants' Requests for Production of May 2005.  *See* Dillon Letter dated June 6, 2006 (attached hereto as Exhibit H).

In a letter dated June 19, 2006, Nevada asserted that the Nevada Medicaid managed-care documents are not relevant to this case and that Defendants' discovery of Medicaid's managed-care programs was somehow limited to the deposition of Philip Nowak, the official responsible for the Nevada Medicaid managed-care program.  *See* Exhibit G.  Nevada's protestations are neither sincere nor reasonable.  Approximately half of Nevada Medicaid beneficiaries are covered by the managed-care program.  The reimbursement decisions Nevada made regarding one half of the Medicaid program are certainly relevant to Nevada's knowledge regarding reimbursement issues available for the other half of that program.  Moreover, this discovery is responsive to outstanding discovery requests served in the spring of 2005.  Although counsel for Nevada suggests otherwise, there is no rule that limits a defendant's discovery regarding a topic to one deposition, especially where the plaintiff has not produced the relevant documents at the time of the deposition and the deponent is unable to answer the questions.  *See* Exhibit G

6

("Discovery of the Medicaid managed-care program took place earlier in the case and none of the issues were raised.  Defendants deposed Philip Nowak[,] . . . the deposition lasted less than 2 hours and included no examination of the topics on which defendants now seek discovery").

While counsel for Nevada indicated during the parties' July 19 meet and confer that Nevada was searching for these documents, in the two weeks since that conference it has not produced documents or otherwise responded to Defendants' request.  Defendants ask the Court to order Nevada to produce by September 1, 2006, all responsive documents regarding the Medicaid managed-care program, including, without limitation,

> (1) Managed-care contracts (and any amendments thereto);
>
> (2) Requests for proposal (RFPs) regarding these contracts;
>
> (3) Responses to RFPs (including but not limited to bids)
>
> (4) Evaluations, reports, and other analysis and/or correspondence regarding the RFP process;
>
> (5) Presentations (by top bidders);
>
> (6) Periodic reports regarding pharmacy benefits; and
>
> (7) Audit reports of or by the entities providing managed-care services.

### III.  THE COURT SHOULD ORDER NEVADA TO PRODUCE A WITNESS FOR DEPOSITION TO EXPLAIN ITS CLAIMS DATA

Nevada asserts that as a result of Defendants' allegedly false AWPs, Nevada reimbursed pharmacists and physicians in Nevada more than it intended.  Defendants have requested that Nevada produce its claims data for the time period and drugs at issue in this case.[2]  This information is relevant to determining what Nevada reimbursed, the amount it reimbursed, and whether that reimbursement was based on Defendants' AWPs or some other pricing benchmark.

---

[2] For example, Defendants' Request for Production No. 2 asks for "[a]ll documents and data concerning utilization, reimbursement, and rebate information for any of the Subject Drugs."

Nevada does not contest the relevance of this data, nor did it contest the relevance in connection with Defendants' second motion to compel.  Indeed, during the hearing on March 29, 2006, the Court deferred ruling on Defendants' motion to compel certain additional claims data because Nevada did not object to producing such data.

This motion concerns the data Nevada has produced, but which is in a proprietary COBOL format that is not documented.  Although Nevada produced a witness to try to explain the data, that witness was not able to answer all of Defendants' questions.  Nevada has refused to produce any further witnesses and asserts that it has no documentation regarding the data.  Defendants seek the Court's permission to take a 30(b)(6) deposition to obtain the information necessary to decode this data or an order precluding Nevada from relying on such data.

Until 2002, Anthem Blue Cross Blue Shield was Nevada's Medicaid fiscal agent and processed its pharmacy claims.  Anthem kept this claims data in a proprietary COBOL program.  Nevada maintained a copy of the data and produced this in response to Defendants' requests.  As received, this data is difficult to discern.  Defendants took the deposition of Ronald Swenson of the Department of Information Technology on January 5, 2006, to try to clarify what this data meant.  *See* Deposition of Ronald Swenson, Jan. 5, 2006 (attached hereto as Exhibit I).  Mr. Swenson was not able to answer a number of questions.  Moreover, upon further review of this data with the insights gained from the Swenson deposition, Defendants learned that the data was incomplete, and that they were still having difficulty reading the claims data.  Defendants informed Nevada of these issues in a letter dated May 16, 2006 (*see* Exhibit E).  In a response dated June 1, 2006 (attached hereto as Exhibit J), Nevada stated that it was willing to provide an employee to answer questions Defendants or their experts may have, and requested that Defendants submit the questions in writing so that it could locate the appropriate employee.

Defendants provided Nevada with a list of questions regarding the claims data, which was attached as Exhibit A to their letter dated June 7, 2006 (*see* Exhibit F).  Nevada subsequently informed Defendants, in a letter dated July 7, 2007 (attached hereto as Exhibit K), that their list was "excessive," and that it would not make a witness available for an additional deposition.  During the parties' July 19 meet and confer, counsel for Nevada indicated that Nevada would consider Defendants' proposal to answer written questions regarding the claims data, but in the two weeks since that conference Nevada has not agreed to this proposal or otherwise responded to Defendants' request.

       Defendants believe that Nevada's position is unfounded and unreasonable.  This data is highly relevant to Nevada's case; indeed, Nevada's damages expert uses it to support his opinion that Nevada is entitled to damages.  And yet, Nevada refuses to provide Defendants with sufficient information to understand this data.  While Defendants did have an opportunity to depose Mr. Swenson, he was unable to answer all of their questions.  For example, Mr. Swenson was not certain (i) whether physician-administered drug reimbursements were included in the data, *see* Exhibit I at 31; this issue is addressed by Question 1 in Exhibit A to the June 7 letter; (ii) whether the data contain only Medicaid fee-for-service claims, *see* Exhibit I at 23; this is addressed by Question 2; and (iii) whether the data contain specialty pharmacy transactions, *see* Exhibit I at 25; this is addressed by Question 4.  Likewise, he was unable to clarify field names that were coded into letters, numbers, and symbols, *see, e.g.*, Exhibit I at 27, 47, 48-50, 53, 61, 69, and 78; Question 17 addresses this issue.  Other requests in Exhibit A to the June 7 letter are follow-up questions identified after Defendants and their experts had an opportunity to review the claims data with the benefit of Mr. Swenson's testimony.  Defendants' questions are not excessive, and are important to their ability to understand the claims data on which Nevada

9

relies. Defendants therefore request this Court order Nevada to provide a 30(b)(6) deponent to answer the questions set forth in Exhibit A to the June 7 letter by September 8, 2006, or preclude Nevada from relying on this data.

### IV.  THE COURT SHOULD REQUIRE NEVADA TO PROVIDE THE CONTRACTS OF THE NON-MEDICAID AGENCIES FOR WHICH IT ALLOWED DISCOVERY IN MARCH.

On March 29, 2006, this Court granted Defendants' second motion to compel and ordered that Defendants were allowed take three depositions, per state, of representatives of non-Medicaid state entities that acquired or reimbursed for prescription drugs. The Court also ordered Nevada to produce documents from the files of each of these six witnesses to the extent these documents relate to (a) how these non-Medicaid agencies acquired or purchased drugs; (b) how these non-Medicaid agencies reimbursed for drugs; and (c) any communications between the non-Medicaid agency and any Medicaid official regarding drug pricing or reimbursement. The parties agreed that this search should include files of administrative assistants to these witnesses, general files where the witnesses filed documents, and any archived files of these witnesses. *See* O'Sullivan Letter dated March 30, 2006 (attached hereto as Exhibit L). Subsequent discovery has shown that the contracts between Nevada and the contractors it employs to administer these programs are maintained by the purchasing department and not the program office. Nevada has produced some of these contracts; however, Nevada has not responded to Defendants' request that it produce the complete contracts for these entities or say that such contracts do not exist.

In response to the Court's March 29 Order, Defendants deposed representatives of Senior Rx, PEBs, and the Division of Mental Health. In their depositions, these witnesses identified additional documents that Defendants believe are relevant to this litigation and within the agreed parameters of discovery. Defendants are entitled to the complete contracts for these three

entities (including the contract, along with the RFP and contractor proposal, both of which are typically incorporated by reference in the contract). These contracts show the amount that Nevada reimbursed for these programs, and also demonstrate Nevada's knowledge regarding the meaning of, and use of, the term AWP. While Nevada produced some contracting documents prior to the depositions, it has not responded to Defendants' follow up requests to provide the complete contracts.

During the July 19 meet and confer, counsel for Nevada represented that Nevada would search for additional contracting documents, but in the two weeks since that conference Nevada has not produced any documents or otherwise responded to Defendants' request. Accordingly, Defendants request the Court order Nevada to produce such contracts (including the RFP and proposal from the winning bidder) by September 1, 2006, or state that they do not exist.

## V.   THE COURT SHOULD ALLOW DEFENDANTS TO NOTICE UP TO FIVE ADDITIONAL DEPOSITIONS IN EACH CASE

Since the close of discovery on March 30, 2006, Nevada has and is still producing a number of relevant documents. Since March 30, Nevada has produced in excess of 25,000 pages of paper documents—more than the amount of documents it produced prior to the close of discovery—in addition to the tens of thousands of responsive electronic documents. When Defendants deposed Plaintiff's employees prior to the March 30th deadline, Defendants did not have the benefit of these documents. For example, Charles Duarte, Nevada's Medicaid Director, was deposed in March 2006; on August 1, 2006, Defendants received 27,000 electronic files belonging to Mr. Duarte. Similarly, since the March 2006 deposition of Coleen Lawrence, the pharmacy program officer, Nevada has produced over 25,000 of her electronic files and its production is still on-going. Because of Nevada's untimely production, Defendants did not have the opportunity to question Mr. Duarte, Ms. Lawrence, or other Medicaid officials regarding

these documents. Consequently, Defendants request that this Court order Nevada to make available up to five witnesses of Defendants' choosing for depositions on topics addressed by (i) any document that Nevada produced after the close of discovery, or (ii) Nevada's verified interrogatory answers, on or before November 1, 2006, and permit Defendants to use these in their reply briefs currently due November 15, 2006. Defendants agree to limit their examinations to 3.5 hours per witness.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court enter an order compelling Nevada to

> (1) serve signed and complete responses by Nevada to interrogatories;
>
> (2) produce responsive Nevada Medicaid managed-care documents;
>
> (3) produce a witness on Defendants' questions regarding Nevada claims data or, in the alternative, preclude Nevada from relying on the data;
>
> (4) produce the requested discovery from Nevada non-Medicaid government agencies; and also
>
> (5) make up to five witnesses of Defendants' choosing available for depositions following the completion of the Plaintiff's production of documents.

## CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1

Pursuant to Local Rules 7.1(A)(2) and 37.1 of this Court, the undersigned counsel certifies that counsel for Defendants conferred unsuccessfully with Plaintiff's counsel in an effort to narrow or resolve the issues presented by this motion.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Local Rule 7.1(F) of this Court, Defendants believe that oral argument may assist the Court in deciding this motion and request an opportunity to present one.

*Respectfully submitted,*


 /s/ Carisa A. Klemeyer
John T. Montgomery (BBO# 352220)
Brien T. O'Connor (BBO# 546767)
Christopher R. Dillon (BBO# 640896)
Carisa A. Klemeyer (BBO# 655045)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

*Attorneys for Schering-Plough Corporation & Warrick Pharmaceuticals Corporation on behalf of the Defendants in Nevada I and Nevada II*

Dated:  August 3, 2006

**CERTIFICATE OF SERVICE**

    I, Carisa A. Klemeyer, hereby certify that a true copy of the foregoing document was served upon all counsel of record in Nevada I and Nevada II electronically pursuant to Fed. R. Civ. P. 5(b)(2)(D) and CMO No. 2 on this 3rd day of August, 2006, by causing a copy to be sent to LexisNexis File & Serve for posting and notification to all counsel of record.

                                                                                 /s/ Carisa A. Klemeyer
                                                                                 Carisa A. Klemeyer