# EXHIBIT C



LEXISNEXIS' FILE & SERVE
7498234
E-SERVICE
Nov 22 2005
6:42PM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION, | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | |
| *State of Nevada v. Abbott Laboratories, Inc., et al.*, CA No. CV-02-00260-ECR (*Nevada I*) | |
| *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (*Nevada II*) | |

## SUPPLEMENTAL RESPONSES OF THE STATE OF NEVADA
## TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26, 33 and 34, the State of Nevada supplements its responses to the following Interrogatories. The State of Nevada's original responses were served on Defendants on June 2, 2005.

### PRELIMINARY STATEMENT

1.    These responses and objections are made solely for the purposes of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such document requests were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are expressly reserved and may be interposed at the time of trial. Any response to an interrogatory shall not be deemed a waiver of any general or specific objection.

1534.13 0018 DSC.DOC

2.      Nevada's responses shall not be deemed to constitute admissions:

      a.      That any particular document or thing exists, is relevant, non-privileged, or admissible in evidence; or

      b.      That any statement or characterization in Defendants' First Set of Interrogatories is accurate or complete.

3.      Nevada's responses are made based upon reasonable and diligent investigation conducted to date.  Discovery and investigation in this matter are ongoing and Nevada reserves the right to amend its responses and to raise any additional objections it may have in the future. These responses are made based upon the typical or usual interpretation of words contained in the discovery requests unless a specific definition or instruction has been provided.

4.      Nevada's responses may contain information subject to the stipulated Protective Order in this matter and must be treated accordingly.

5.      Nevada's responses are submitted without prejudice to Nevada's right to produce evidence of any subsequently discovered facts.  Nevada reserves its right to provide further responses and answers as additional facts are ascertained.

## GENERAL OBJECTIONS

Nevada objects generally as follows:

1.      Nevada objects to the "definitions" and to any other preliminary statements to the extent they intend to expand upon or alter the Federal Rules of Civil Procedure or Nevada's obligations under the Court's Local Rules in responding to these requests and interrogatories. Nevada will comply with the Federal Rules of Civil Procedure and Local Rules in providing its responses to Defendants' First Set of Interrogatories and Requests for Production to the State of Nevada.

2.      Nevada objects to Defendants' definitions of "you," "your," "state," "Plaintiff" because they are vague, ambiguous, overly broad, unduly burdensome, and encompass materials that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

-2-

3.      Nevada objects to Instruction Nos. 5-11 and their various subsections because they are unduly burdensome, and imposes burdens beyond the requirements of applicable rules of procedure.

4.      Nevada objects to each interrogatory to the extent that it calls for the production of documents or information not relevant to the issues in this action or is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Nevada objects to the extent that any interrogatory seeks documents or information that is protected from disclosure by the work product doctrine, the attorney-client, accountant-client, consulting expert, or investigative privileges, by any other applicable privilege or protection.  Nevada agrees to prepare and provide Defendants with a listing or log of any documents withheld on the grounds of privilege.

6.      Nevada objects to each interrogatory to the extent that it calls for production of documents or information not within the possession, custody, or control of Nevada.  The responses given herein are based upon documents and information within Nevada's current possession, custody, or control.

7.      Nevada objects to each interrogatory to the extent that it may be construed as calling for the production of confidential information relating to a patient.  Nevada will not produce any such material to the extent it is under any obligation to maintain the patient information in confidence and not to disclose it unless the patient grants permission to do so.

8.      Nevada objects to each interrogatory to the extent that it seeks disclosure of information that is a matter of public record, is equally available to the Defendants, or is already in the possession of the Defendants.

9.      Nevada incorporates the above General Objections into each specific response to the requests set forth below as if set forth in full therein.  The response to a request shall not operate as a waiver of any applicable specific or general objection to a request.

10.      Nevada objects to the time period to the extent it goes beyond the time frame for which Defendants have agreed to produce information.

-3-

## SPECIFIC OBJECTIONS AND RESPONSES

1.      Identify all Persons currently or formerly employed by or serving as a contractor to You with any knowledge of, responsibility for, involvement in, or influence on:

        (a)      Any claim or allegation asserted in the Complaints;

        (b)      The methodology the State uses to determine the amount it pays Providers as reimbursement under Medicaid or any other State program for Subject Drugs;

        (c)      The negotiating, authoring, executing or otherwise contributing to, any contract, memorandum of understanding or agreement, between You and any Provider relating to AWPs for Subject Drugs or the reimbursement for Subject Drugs;

        (d)      The reimbursement for any Subject Drug which exceeded Provider acquisition costs;

        (e)      The processing of payments for Providers' claims for reimbursement regarding Subject Drugs;

        (f)      The adoption, rejection, amendment to, consideration, or negotiation of any State supplemental rebate program;

        (g)      Establishing, considering, determining, calculating, or setting of the dispensing fees or fees for other professional services payable in connection with the supply or administration of Subject Drugs by You; and

        (h)      The AWP, AMP, MAC, WAC, EAC, Best Price, or other prices, costs, reimbursement rates, or other benchmarks for any Subject Drug.

And for each such Person, state the subject of information that Person is likely to have.

**ANSWER:**

(a)      Nevada objects to this interrogatory on the grounds that it is overbroad.  Without waiving this objection, Nevada responds by stating that the following may have information regarding the use of AWP by Nevada Medicaid:  Anthem Blue Cross/Blue Shield (Dwight Hansen), Charles Duarte, Coleen Lawrence, First Health Services Corp. (Bruce Engren, Jeff Monaghan, David Viele), Health Information Design, John Liveratti, Patrick Cates, Laurie

-4-

Squartsoff (former employee), Chris Thompson (former employee), Keith McDonald (former employee), Philip Nowak, and Vicki Langdon.

(b)     Nevada objects to this interrogatory on the grounds that the methodology used is set forth in various State statutes equally available to the Defendants.  Without waiving this objection, Nevada responds as follows:  Charles Duarte, Vicki Langdon and First Health Services Corp. (Bruce Engren, Jeff Monaghan, David Viele).

(c)     The State reimburses based upon a set statutory formula.  Nevada will produce documents from which this answer can be ascertained.  Further, Nevada responds as follows: Charles Duarte, Coleen Lawrence, First Health Services Corp.

(d)     Coleen Lawrence, First Health Services Corp.

(e)     Nevada objects on the grounds this request is overbroad and not calculated to lead to discovery of admissible evidence and it is unclear what is meant by "processing."

(f)     Nevada objects on the grounds this request is overbroad and not calculated to lead to discovery of admissible evidence.

(g)     Nevada objects on the grounds this request is overbroad and not calculated to lead to discovery of admissible evidence.  Without waiving this objection, Nevada states that it has produced responsive documents.  Nevada further responds as follows:  Coleen Lawrence, Laurie Squartsoff.

(h)     Nevada objects on the grounds this request is overbroad and not calculated to lead to discovery of admissible evidence.  Without waiving this objection, Nevada responds as follows:  Anthem Blue Cross / Blue Shield, Charles Duarte, First Health Services Corp., Coleen Lawrence.

2.     Identify all cabinets, departments, agencies, boards, commissions, organizations, consultants, accountants, task forces, or any other entity, including the members of such entities, that have reviewed or analyzed, at any time, Your reimbursement of or expenditures for pharmaceutical products or dispensing fees, including but not limited to any State "medical care advisory committee" (42 C.F.R. § 431. l2(b)).

-5-

**ANSWER:**

Nevada objects to this as overbroad and not calculated to lead to the discovery of admissible evidence. Without waiving this objection, Nevada responds that the following may have been involved in discussions regarding AWP: the Centers for Medicare and Medicaid Services, Division of Health Care Financing and Policy (DHCFP), Charles Duarte, First Health Services Corp., Health Information Design, Myers and Stauffer, the Nevada State Legislature, the Office of the Inspector General.

3.      Identify the time period and State program in which You have used AWPs recommended by the United States Department of Justice or National Association of Medicaid Fraud Control Units, as noted in the September 2001, HHS-OIG report, entitled "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010), and Identify why you have not used such AWPs during any other time period.

**ANSWER:**

Nevada has investigated this interrogatory and has been unable to determine the answer. Nevada will continue to investigate this interrogatory and will provide an answer if possible.

4.      Identify the pharmaceutical product reimbursement methodology employed by any State agencies or departments that have or participate in any way in a pharmaceutical benefit, including but not limited to State Pharmaceutical Assistance Programs, Supplemental Rebate Programs, Medicaid Rebate Programs, prison health programs, employee benefit programs, psychiatric health programs, or Veterans Health Care Act/FSS Contracting.

**ANSWER:**

Nevada objects to this request on the grounds it is overbroad. Further, as it relates to rebates, the interrogatory seeks information that is equally available to defendants and is confidential and by agreement cannot be produced by the State. Without waiving this objection, Nevada states that it has provided documents from which the pharmaceutical reimbursement methodology can be determined for State Medicaid.

-6-

5.      Identify all Persons currently or formerly employed by or representing You who have testified in any legal, legislative, or administrative forum about Your reimbursement of pharmaceutical products, costs or reimbursement rates for pharmaceutical products, pharmacy dispensing fees, or other fees for the supply or administration of pharmaceutical products, and state the legal or legislative forum and date of testimony.

**ANSWER:**

Nevada objects to this as overbroad.  Without waiving this objection, Nevada responds as follows:  Charles Duarte, Coleen Lawrence, John Liveratti, Laurie Squartsoff, Mary Wherry, Michael Willden.

6.      For each Subject Drug, identify each instance in which a Defendant "marketed the spread" to one or more Providers as alleged in the Complaints, and for each such instance:

      (a)     Identify the Manufacturer employee who marketed the spread;

      (b)     Identify the Provider to whom the spread was marketed;

      (c)     Identify the drug that was marketed;

      (d)     Identify the place and time of the alleged marketing; and

      (e)     State the manner in which the "spread" was marketed.

**ANSWER:**

Nevada objects to this request on the grounds it is a premature contention interrogatory that it would require Nevada to parse through discovery from each Defendant much of which has not yet even been produced and notes that Defendants have failed to answer identical requests served on each Defendant.

7.      For each Defendant, Identify every instance in which You allege such Defendant used discounts, rebates, free goods, charge-backs, and other financial incentives to induce providers to purchase or administer its drugs, as alleged the Complaints, and for each such instance:

      (a)     Identify the Defendant employee(s) who engaged in such acts;

      (b)     Identify the Provider to whom the alleged inducements were directed;

      (c)     Identify the drug that was marketed;

      (d)     Identify the discounts, rebates, free goods, charge-backs, or other financial incentives that were offered; and

      (e)     Identify the place and time of the alleged inducement.

**ANSWER:**

Nevada objects to this request on the grounds it is a premature contention interrogatory that it would require Nevada to parse through discovery from each Defendant much of which has not yet even been produced and notes that Defendants have failed to answer identical requests served on each Defendant.

8.     For each Defendant, Identify every instance in which You allege such Defendant has ever made a representation to You concerning the meaning of the term AWP, and every instance where *you* allege a Defendant has knowingly, willfully, and intentionally concealed its drugs' actual average price from You as alleged in the Complaints, and for each such instance:

      (a)     Identify what the "actual average price" was;

      (b)     Identify the actions of each Defendant that constituted a knowing, willful, and intentional concealment; and

      (c)     Identify whether that representation was made directly to You.

**ANSWER:**

Nevada objects to this request on the grounds it constitutes a premature contention interrogatory that it would require Nevada to parse through discovery from each Defendant much of which has not yet even been produced and notes that Defendants have failed to answer identical requests served on each Defendant.

9.     Separately as to each Subject Drug, identify each Provider that submitted a claim for reimbursement and indicate whether the Provider is or is not a 340B Provider.

**ANSWER:**

Nevada objects to this request on the grounds it is overbroad and is not calculated to lead to admissible evidence.  Without waiving this objection, Nevada responds that it has or will

-8-

produce data reflecting providers that have submitted claims for reimbursement. Further, information regarding the identity of 340B providers is publicly available at http://opanet.hrsa.gov.

      10.    State, by State program, by year and by NDC, (a) the number of units and the dollar amount You paid for reimbursement to Providers for each Subject Drug, (b) the amount that You contend You overpaid for such drugs as a result *of* each Defendant's alleged misconduct, and (c) any true-ups that were contemplated, negotiated, initiated, completed, or transacted between You and any Defendant.

**ANSWER:**

Nevada objects to this request on the grounds it constitutes a premature contention interrogatory that it would require Nevada to page through discovery from each Defendant much of which has not yet even been produced. When expert reports are due, Nevada will disclose these calculations.

      11.    Describe Your understanding of the Federal Supply Schedule and how, if at all, You used it and, if not, why not.

**ANSWER:**

Nevada objects to this request on the grounds that it is not calculated to lead to admissible evidence. Nevada states it does not use the Federal Supply Schedule.

      12.    Identify any State formulary and any State supplemental rebate program, and the scope of such program.

**ANSWER:**

Nevada objects to this request on the grounds of relevance. Without waiving this objection, Nevada states that it has produced documents from which an answer can be derived.

      13.    Identify all periodicals, listservs, publications, associations, or other media or group to which You subscribe or belong and that publishes or distributes information concerning health care benefits, prices, costs, and reimbursement or state or federal health care benefit programs.

**ANSWER:**

Nevada objects on the grounds of burdensome, is overbroad and is not calculated to lead to admissible evidence. If Defendants can specify information they wish to see if various state agencies had access to, Nevada might be able to respond.

14.   Identify, by year, the amount actually paid by beneficiaries to their Providers for each of the Subject Drugs, as co-payment or otherwise, and for each instance:

(a)   Identify the yearly dollar amounts requested as an aggregate figure, by beneficiary (if possible);

(b)   Identify the yearly dollar amounts requested as an aggregate figure, by Defendant (if possible); and

(c)   Identify what portion of the amounts paid by Beneficiaries was impacted by or depended on AWP for each Subject Drug.

**ANSWER:**

Nevada objects on the grounds this will be the subject of expert report and hence it is premature. Without waiving this objection, Nevada states that it has not used co-payments for prescription drugs.

15.   Identify the State program and the methods You used to determine reimbursement amounts for each NDC of each Subject Drug and how those methods changed over time. Answer separately as to claims submitted by 340B Providers versus claims submitted by other Providers.

**ANSWER:**

Nevada objects to this request on the grounds of relevance as to 340(b) providers and programs other than Medicaid. Without waiving this objection, Nevada states that it does not determine reimbursement amounts for each NDC of each Subject Drug. Nevada relies on outside vendor to do so. This information is proprietary to the vendor.

16.   Identify any internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on behalf of You (whether or not performed by You)

-10-

regarding the possible effect various reimbursement amounts or methodologies could potentially have, or were having, on beneficiary access to medicine or medical treatment; and all Persons who were involved in such internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on behalf of You (whether or not performed by You).

**ANSWER:**

Nevada objects to this request on the grounds of relevance and overbreadth.  Without waiving this objection, Nevada responds that no such assessment has been conducted.

17.    If reimbursement for any Subject Drug was ever based on a percentage adjustment from a benchmark, explain the policy or other reasons for the percentage adjustment.

**ANSWER:**

Nevada states that it has produced documents responsive to this interrogatory.

18.    Identify any "state plan for medical assistance" (42 C.F.R. 430.0 et seq.), and any proposed or adopted amendments thereto.  For each "state plan for medical assistance," or amendment thereto, Identify each Person who participated in the creation, consideration, or adoption of such plan, and proposed or adopted amendment thereto, to the extent the Person's activity concerns AMP, MAC, EAC, FUL, Best Price, or other drug pricing information.

**ANSWER:**

Nevada objects to this request as hopelessly overbroad and vague.  Without waiving this objection, Nevada states that the Nevada State Medicaid Plan may be found on the following Web sites: *www.cms.hhs.gov/medicaid*, and *dhcfp.state.nv.us*.  Charles Duarte, John Liveratti, Mike Willden, Laurie Squartsoff and First Health Services personnel may have been involved.

19.    State whether, at any time, You made any effort to ascertain or estimate any Provider's acquisition cost for any of the Subject Drugs and, if so, describe those efforts in detail, and Identify each Provider who actually received alleged "inflated amounts" of reimbursement from You at any time on account of any alleged fraud, scheme, misrepresentation, negligence, or other culpable conduct by any Defendant.

-11-

1534.13 0018 DSC.DOC

**ANSWER:**

Nevada objects to the second part of this interrogatory as a premature contention interrogatory. Without waiving this objection, Nevada responds to the first part of this interrogatory by stating that responsive documents have been produced.

20.     State whether You have, by action, administrative proceeding, or otherwise, sought to recover alleged overpayments from the Providers who allegedly received excessive amounts of reimbursement as a direct or indirect result of alleged inflated AWPs and, if so, Identify each such action, proceeding or other recovery effort; and if not, state the basis for your failure to do so.

**ANSWER:**

Nevada objects to this interrogatory on the grounds it is not calculated to lead to the discovery of admissible evidence. Without waiving this objection, Nevada responds that it has not undertaken such action. In lieu of doing so, Nevada has filed this lawsuit.

21.     Identify all requests by You for supplemental or additional rebates from any Manufacturer, including the identity of each Person making such request, whether the request was written or oral, the date on which each such request was made, the identity of each Person to whom each request was made, all drugs that any such request concerned, whether an agreement to provide the requested supplemental or additional rebates was a condition to the continued reimbursement by You of any such drugs, and whether an agreement to provide the requested supplemental or additional rebates was a condition to the continued presence of any of Defendant's products on any formulary or list of approved drugs.

**ANSWER:**

Nevada objects to this interrogatory on the grounds that it is overbroad and burdensome. Nevada further objects to this interrogatory on the grounds that the interrogatory seeks information that is equally available to defendants and is confidential and by agreement cannot be produced by the State.

1534.13 0018 DSC.DOC

22.     Identify each Third Party Administrator, Benefits Consultant, other consultant, or PBM contacted, considered, retained, or hired by You concerning pharmaceutical product prices, costs, reimbursement, utilization, or benefits.

**ANSWER:**

Nevada objects to this request on the grounds of relevance.  Without waiving this objection, Nevada states the following:  Anthem Blue Cross/Blue Shield, First Health Services, Health Information Design, Myers & Stauffer.

23.     If You contend that Defendants are liable solely by virtue of the existence of a so-called "spread" between the amount reimbursed by You for a Subject Drug and the price paid by Providers to acquire such Subject Drug then set forth how large You contend the spread must be (as a percentage of Provider acquisition cost) to constitute grounds for liability.  If you do not seek to recover the entire difference between the amount reimbursed by You for a Subject Drug and the price paid by Providers to acquire such Subject Drug, State the basis or bases for such a "spread" that you accept as lawful and what distinguishes such basis from those that you contend are unlawful.

**ANSWER:**

Nevada objects to this request on the grounds it is a premature contention interrogatory, the answers to which will be provided in expert reports.

24.     Identify all communications between You and any other state or federal government, including but not limited to its officials, agents employees, commissions, boards, divisions, departments agencies, instrumentalities, administrators, and other Persons or entities acting on their behalf, concerning usual and customary, AWP, AMP, MAC, WAC, EAC, Best Price, or other prices, costs, reimbursement rates, or other benchmarks.

**ANSWER:**

Nevada objects to this request as overbroad and burdensome.

25.     State the basis for and the specific amount of damages that You have suffered with respect to each count against each Defendant as stated in the Complaints.  In answering this Interrogatory,

(a)     Describe the methodology You employed in calculating such damages and all assumptions made when calculating such damages; and

(b)     Identify all Documents supporting such damages and state all factors on which You rely in claiming such damages.

**ANSWER:**

Nevada objects to this request as a premature contention interrogatory.  Subject to this objection, Nevada will respond when expert disclosures are due.

By_____/s/ Steve W. Berman_____          DATED:  November 22, 2005.
   Steve W. Berman
   Sean R. Matt
   Jeniphr A.E. Breckenridge
   Hagens Berman Sobol Shapiro LLP
   1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
   Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

*Attorneys for the State of Nevada*

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **SUPPLEMENTAL RESPONSE OF THE STATE OF NEVADA TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO THE STATE OF NEVADA** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 22, 2005, a copy to LexisNexis File and Serve for Posting and notification to all parties

By_____ **/s/ Steve W. Berman**_____
        Steve W. Berman
        **HAGENS BERMAN SOBOL SHAPIRO LLP**
        1301 Fifth Avenue, Suite 2900
        Seattle, WA  98101
        (206) 623-7292

-15-

1534.13 0018 DSC.DOC

# EXHIBIT D



ROPES & GRAY LLP

ONE INTERNATIONAL PLACE     BOSTON, MA 02110-2624     617-951-7000     F 617-951-7050

BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

April 28, 2006

Christopher Dillon
cdillon@ropesgray.com
(617) 951-7827

**BY ELECTRONIC DELIVERY AND U.S. MAIL**

Jeniphr A. Breckenridge
Hagens Berman Sobol Shapiro
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

Re: *Nevada AWP Actions*

Dear Jeniphr:

I write in response to your recent correspondence and to address certain outstanding discovery requests.

*Outstanding Document Requests*

In Jason Litow's March 30, 2006, letter, Shankar Duraiswamy's March 31, 2006, e-mail, and Katie O'Sullivan's March 30, 2006, letter, the defendants identified a number of categories of outstanding documents. In your letters of April 10 and April 25, you address the status of the state's production. Below is our understanding of the status of these requests. As we agreed, all responsive documents (other than electronic documents) should be produced by May 1, 2006, to ensure time for the defendants to prepare for the upcoming depositions of witnesses from the non-Medicaid entities, Steve Abba, and Mike Hillerby.

**Category 1:** (Open) This request seeks all communications between the State and any pharmaceutical manufacturer regarding prescription drug pricing. Your April 25 letter says that the State intends only to produce correspondence from manufacturers that are defendants in this action and to produce the pricing documents for each defendant only to that defendant and not to defendants as a group. The defendants object to the State's narrow reading of this request. Information conveyed to the Nevada Medicaid program regarding the pricing of pharmaceuticals is relevant regardless of its source. The information the State learned regarding the meaning of AWP or pharmaceutical pricing from a letter sent by any pharmaceutical manufacturer – even those that are not defendants – is relevant to the defenses asserted by all defendants. We have no objection to your producing correspondence from a defendant directly to that defendant;

Jeniphr A. Breckenridge                    - 2 -                         April 28, 2006

however, we would ask that you identify to us the defendants to whom you have or will be producing documents. For example, in Montana, we have learned of this situation involving two defendants.

**Category 2:** (Open) This request seeks responsive documents in the files of Mr. Terry, and identified specifically two letters from Dey. Your April 25 letters states that there are no responsive non-privileged documents in the State's possession. We presume that the State is not claiming these documents are privileged; but, for the avoidance of doubt, please confirm that the State does not have in its possession the May 10, 2000, and June 13, 2000, letters from Dey. In addition, we have learned that other manufacturers responded to similar letters from Mr. Terry. Please produce these letters or confirm that the State does not have them in its possession.

**Category 3:** (Open) This request seeks Mr. Willden's legislative files. Your April 25 letter states that the State's search is ongoing.

**Category 4:** (Open) This request seeks correspondence from the legislative branch regarding drug reimbursement. Your April 25 letter states that the State's search is ongoing.

**Category 5:** (Open) This request seeks white papers prepared for legislative sessions. Your April 25 letter states that documents will be produced.

**Category 6:** (Open) This request seeks the historical MAC lists. You state that the MAC lists are maintained on-line and that Ms. Lawrence does not maintain paper copies of this list. As you are aware, the on-line version of the MAC list only identifies the current price. It does not identify when the price was set or the prior prices of the drug, if any. To the extent the State has reimbursed the defendants' drugs on the basis of a MAC price, that information is relevant to this action. The State needs to provide a MAC list that identifies not only the 2006 price, but all MAC prices that it has utilized for reimbursement. The fact that Ms. Lawrence does not have a paper copy does not relieve the State of its burden. First Health is an agent of the State and the MAC pricing information that First Health has developed for the State is information within the custody and control of the State. Please forward documents showing, at a minimum, each MAC price the State has used for reimbursement of the drugs at issues in this action.

**Category 7:** (Open) This request seeks all federal reports relating to drug reimbursement, drug acquisition costs, and Medicaid rebates. Your April 10 letter states that the State has previously made the HCFA-64 reports available. The defendants' request is not limited to a single type of report. As several State witnesses have acknowledged, OIG and CMS (HCFA) have sent numerous reports to the State regarding drug reimbursement, drug acquisition costs, and Medicaid rebates. Both Mr. Duarte (Day III, at pp. 19-20) and Ms. Wherry (pp. 105-08) testified that such reports might be found in the State's Medicaid Library. The defendants

10010144_2

Jeniphr A. Breckenridge                    - 3 -                    April 28, 2006

request that the State review the Medicaid library and produce all federal reports found therein relating to drug reimbursement, drug acquisition costs, and Medicaid rebates. With respect to the HCFA-64 reports, we understand from your prior correspondence that there are approximately 10-12 boxes; please send us a sample of such a report, so that we can determine whether to request the entire collection.

  **Category 8:** (Closed) This request seeks Colleen Lawrence's June/July 2002 slide presentation. Your letters state that the State has searched for and has been unable to locate this document.

  **Category 9:** (Open) This request seeks the MAC savings reports. Your letters say that the State's search is ongoing and that the documents are in the possession of First Health. As discussed above, the State is responsible for producing reports created by First Health and sent to the State, as such documents are within the custody and control of the State.

  **Category 10:** (Closed) This request seeks two binders of Mr. Willden. You agreed to produce and we have received copies of both.

  **Category 11:** (Open) This request seeks claims data for physician-administered drugs. Your April 25 letter says that the State is working to locate this information.

  **Category 12:** (Open) This request seeks documents generated or received since the State instituted its litigation hold on November 30, 2005 and to remind the State that it has an obligation to supplement its production. Your April 25 letter says that the State will meet its obligation under the Federal Rules of Civil Procedure.

  **Category 13:** (Open) This request seeks third-party correspondence with the State and lists by way of example certain documents used as deposition exhibits, produced by third parties in response to subpoenas, or produced by other states. Your April 10 letter states that the requested emails are not available in hard copy and your April 25 letter states that you will produce correspondence related to the Comprehensive Cancer Center of Nevada. We have received some CCCN documents. Please confirm that the State has no additional responsive documents.

  **Duraiswamy March 31, 2006 e-mail:** (Open) This request seeks responsive pages from Charles Duarte's and Mary Wherry's handwritten notes. Your April 25 letter states that two pages from Ms. Wherry's notes will be produced, which we have now received, and that the search of Mr. Duarte's notes is ongoing.

  **Written Discovery from Non-Medicaid Entities:** (Open) As set forth in Katie O'Sullivan's March 30 letter, the defendants seek documents, including electronic documents,

10010144_2

Jeniphr A. Breckenridge                    - 4 -                         April 28, 2006

from the three non-Medicaid entities and Messrs. Hillerby and Abba.  To date, we have received no documents.

**Rebate Data:** (Open): As set forth in Katie O'Sullivan's March 30 letter, Judge Bowler ordered the State to choose between (a) producing rebate data and (b) stipulating to the accuracy of the manufacturers' data.  Please let us know if the State intends to produce the rebate data or if we should prepare a suitable stipulation.

### 30(b)(6) Notice

As you are aware, the defendants served a second 30(b)(6) notice on January 31, 2006. Your April 10 letter states that the State objects to this notice in its entirety.  We are willing to work with the State to address specific concerns, if any, the State has with the notice; however, the State's general refusal to produce witnesses is unfounded.  With respect to Topics 1-6, in the next few weeks the State will be putting forth knowledgeable persons from the relevant agencies to testify, and we will reserve our rights until that testimony is completed.  With respect to Topics 7-14 and 17, the State has not provided any 30(b)(6) witness; however, some of the State witnesses have provided testimony on these topics.  If the State wants to adopt the testimony of these witnesses, we would be open to discussing that option.  Otherwise, we would look for the State to designate and prepare an appropriate witness.  With respect to Topics 15 and 16, the State has not provided any testimony, documents, or claims data regarding its *parens patriae* claims.  If the State intends to go forward with these claims, it needs to identify a witness to provide testimony regarding these topics.

### Claims Data

We are still reviewing the claims data that has been provided; however, from our preliminary review, it does not appear that the State has produced any claims data for (1) the period 2003 to the present; (2) any physician-administered drugs; (3) any reimbursement of the Medicare co-pay; or (4) any *parens patriae* claims.  Please state whether the State intends to produce any additional claims data, and, if so, your best estimate as to when we will receive that data.

### Electronic Discovery

With respect to electronic discovery, your recent e-mail states that the State does not have any electronic data for Janice Wright, Chris Thompson, Laura Squartsoff, and Keith McDonald. For Ms. Wright, Mr. Thomson and Ms. Squartsoff, please identify why the data is not available and when the State stopped maintaining the electronic data for these individuals. We understand that the State is presently searching the electronic files of Charles Duarte, Coleen Lawrence, Vicki Langdon, John Liveratti, Carol Tilstra, Patrick Cates, Mary Wherry, and Phil Nowak.  It is

Jeniphr A. Breckenridge                      - 5 -                          April 28, 2006

the State's burden to search the files of all individuals that have relevant documents.  At a
minimum, we believe that this search should include the following additional persons:  April
Townley, Deborah King, Michael Willden, Steve Abba, Mike Hillerby, and the persons the State
designates from the Division of Mental Health and Developmental Services, Senior Rx, and the
Public Employees Benefits Program.  In addition, several witnesses testified that reports from
CMS (HCFA) would be forwarded from the Nevada Medicaid Administrator to staff.  To the
extent this distribution was done by administrative assistants, the electronic files of those
assistants should also be searched.

        As the State will be producing documents on a rolling basis, we request that the State
prioritize the production of the documents of the individuals who will be deposed in May.  After
those files have been produced, the defendants would like the State to next provide the electronic
files of Mr. Duarte, Ms. Townley, Ms. Lawrence, and Mr. Willden, and, thereafter, the files of
the remaining individuals.

*Depositions*

        On March 30, 2006, Judge Bowler granted the defendants five additional depositions in
Nevada.  On April 3, the defendants identified Steve Abba, Mike Hillerby, and a person
knowledgeable from three non-Medicaid entities (Division of Mental Health and Developmental
Services, Senior Rx, and the Public Employees Benefits Program).  As we discussed last week,
we are interested in obtaining the documents from these witnesses by May 1, and deposing these
witnesses in one of the last three weeks of May.  Given these impending dates, please identity
the individuals who will testify on behalf of the three non-Medicaid agencies and the dates you
propose for the five Nevada depositions.

*Interrogatories*

        In reviewing the State's response to a number of interrogatory responses, we note that a
number of them are still incomplete.  As an initial matter, we note that the defendants have not
received a signed copy of the State's interrogatories.  We request that the State provide a
verification page for the original interrogatory responses and for any supplementary responses.

        With respect to Interrogatory No. 3, the State's supplemental response states that it was
continuing to investigate.  Please advise as to whether you have been able to determine the
answer.  In addition, the State took the position that certain contention interrogatories (Nos. 6, 7,
8, 10, 19, and 23) were premature because it had not conducted discovery against the defendants.
Given the State's obligation to investigate its claims prior to filing suit, the State should have
been able to provide preliminary answers to these requests, but, in any case, now that the State's
discovery against the defendants is complete, it should state the basis for the allegations in these
interrogatories.  Finally, in response to certain requests (Nos. 1(c), 1(g), 4, 9, 12, 17, and 19), the

Jeniphr A. Breckenridge                    - 6 -                    April 28, 2006

State said that it would produce documents.  If the State has already produced the documents responsive to these requests, please identify them by Bates ranges; if not, please produce the relevant documents.

      Please call me if you have any questions.

                              Very truly yours,

                              Christopher Dillon

cc:    L. Timothy Terry
        Defense counsel

10010144_2

# EXHIBIT E



ROPES & GRAY LLP
ONE INTERNATIONAL PLACE      BOSTON, MA 02110-2624      617-951-7000      F 617-951-7050
BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

May 16, 2006

Christopher Dillon
cdillon@ropesgray.com
(617) 951-7827

**BY ELECTRONIC DELIVERY AND U.S. MAIL**

Jeniphr A. Breckenridge
Hagens Berman Sobol Shapiro
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

Re: *Nevada AWP Actions*

Dear Jeniphr:

     I write in response to your May 9, 2006, letter regarding outstanding discovery requests.

*Document Requests*

     **Category 1:** (Open)  Your May 9, 2006 letter asserts that the State has met its discovery obligations by producing responsive defendant-specific documents to the specific defendant, and the State has no obligation to provide a list of the documents produced by drug manufacturer name. We disagree. *First*, the State has no basis for withholding correspondence between the State and non-defendant manufacturers. The defendants have requested this information,[1] such information is relevant to this action, and the State has not set forth any proper basis for objecting to its production. If the State received information from manufacturers that is responsive to defendant's requests than it needs to be produced. Any purported issues regarding confidentiality can be dealt with pursuant to the Protective Order.

     *Second*, as stated in prior correspondence, we are willing to broker a deal among the defendants for sharing documents responsive to Category 1. Your protestations, although entertaining, miss the mark. The defendants ask only that you (1) identify the defendants to

---

[1] Request No. 38: "All Communications, including but not limited to e-mails, between Your employees themselves or with other parties, including but not limited to Providers, Medicaid fiscal agents and contractors, consultants, pharmaceutical companies, pharmacy associations, professional groups, and lobbyists concerning drug pricing, drug reimbursement, or dispensing fees.

Jeniphr A. Breckenridge                  - 2 -                       May 16, 2006

whom you have produced documents responsive to Category 1; and (2) confirm this list is complete, and no additional documents will be produced.  We do not think this is unreasonable as it does not call for the State to share any sensitive information regarding any defendant and as the alternative is for you to receive a letter from each defendant asking whether the State's production is complete as to them.

     **Category 2:**  (Open) Please indicate whether your production responsive to Category 2 is ongoing, or whether all responsive materials have been produced.

     **Category 6:**  (Open) Your May 9 letter says that the historical MAC lists might be available to First Health.  You do not say whether you have attempted to obtain them from First Health, but claim that the State does not necessarily have access to them.  First Health is an agent of the State under contract with the State to pay the claims owed by the State using the MAC pricing information that First Health has developed for the State.  If the State were to contact First Health and ask what price it used to pay a claim, First Health would undoubtedly provide such information.  This MAC information is within the custody and control of the State, and the State is required to produce it, regardless of whether we might be able to obtain it independently.  As you note, a subpoena was served on First Health in December; although discussions are on-going and we hope to receive some documents soon, to date, no documents have been produced.  Please confirm whether the State intends to produce the historical MAC list or whether we need to address this issue with the Court.

     **Category 7:**   (Closed) This request seeks all federal reports relating to drug reimbursement, drug acquisition costs, and Medicaid rebates.  Your May 9 letter says that the State Medicaid library has been checked, and there are no responsive reports to produce.  We are checking with the defendants to see if there is an interest in obtaining the HCFA-64 reports.

     **Rebate Data:** (Open):  We understand from your May 9 letter that the State does not intend to produce this data.  We will be consulting with the other defendants in this case and will then provide a further response to you, either separately or as a group.

     Since our last correspondence, we have received further productions from the State.  Would you please confirm that we now have all documents responsive to Category No. 1, 2, 10, 13, Duraiswamy March 31, 2006 e-mail (Wherry notes, Duarte notes), and the written discovery of the non-Medicaid entities.

*30(b)(6) Notice*

**Topics 1-6:**  We are aware of Judge Bowler's order and the compromise that was reached whereby the defendants would obtain discovery from three non-Medicaid entities of their choosing.  We are not currently asking the State to produce a witness on these topics, but, as our

Jeniphr A. Breckenridge                    - 3 -                        May 16, 2006

prior letter stated, we were merely reserving our rights until such discovery was concluded.
Pursuant to the compromise ordered by Judge Bowler, the State has a good faith obligation to
produce information on behalf of the three entities the defendants selected.  Given the State's
scant production and your representations that the witnesses are likely to "have little knowledge
of the topics in which defendants are interested," the defendants may need to revisit taking
additional discovery on these fronts.

**Topics 7-14 and 17:**  We are aware of the State's prior objections.  We disagree with your
assessment that the defendants have taken an excessive number of depositions in this case, and
that additional depositions are unnecessary.  We continue to request a witness on these topics.  If
the State intends to designate witnesses who have already been deposed, we would be amenable
to adopting sections of their prior testimony in lieu of a further deposition.  It is the State's – and
not the defendants' – obligation, however, to identify the person(s) it thinks has the most
knowledge regarding these topics.  Once the State has designated the witness that it intends to
put forward on each topic, we are willing to work with you to identify the relevant sections of
their testimony.  Please provide a list of the witness(es) the State intends to designate for each
topic.

**Topics 15 and 16:**   Your letter does not directly address these topics; please identify the
witness(es) the State intends to designate for these topics and let us know when they are
available to be deposed.  We would like to conclude this deposition in advance of the plaintiff's
expert disclosures.

*Claims Data*

        The defendants have requested all claims data supporting their claims in this case,[2] and
have never abandoned this position.  The State has not produced claims data regarding its *parens
patriae* claims.  Your letter says "The parens patriae claims will be supported by defendants'
own data." This is insufficient.  *First*, if the State has data related to its *parens patriae* claims, it
must produce it, even if the State does not intend to rely on such data.  *Second*, if the State
intends to rely on any third party information to establish liability or damages for its *parens
patriae* claims, the State needs to produce such information.  To date, we have not received any
information regarding the identity of the parties on whose behalf the State is purportedly
bringing *parens patriae* claims, the nature of those parties' reimbursement scheme, the identity
of the claims that the State asserts were affected by the AWP scheme, and the alleged damages

---

[2] Request No. 2: All Documents and data concerning utilization, reimbursement, and rebate
information for any of the Subject Drugs; Request No. 7: All Documents reflecting the most
reliable data on numbers of Medicare and Medicaid dual-eligibles, pharmaceutical
reimbursements for Medicare co-pays, and Medicaid rebates collected by the State with respect
to such individuals.

Jeniphr A. Breckenridge     - 4 -     May 16, 2006

of those parties. If the State does not identify the claimants, produce their documents, and produce 30(b)(6) witnesses, we will move to dismiss all such claims.

With respect to the Medicaid claims, the State has had two different fiscal agents, and the issues surrounding each are different. You say that the "data that has been produced by the State today is the product of extensive negotiations with the defendants," but this is not true. With respect to the 1990-2003 data, the defendants did not have any say in the content. The State produced the data it had, in the format it had, with little guidance on what was being produced. As discussed below, this data has been difficult to read and is clearly incomplete. With respect to the First Health era, the defendants do not have any claims data. The defendants did discuss with First Health the format of the data; however, the defendants have not received any data from First Health.

**Pre-2003 Claims Data:** The State has produced some data from when Anthem was its fiscal agent. This data is incomplete and we are having difficulty reading this claims data. We will likely have further communications with you on this subject; however, the following issues need to be addressed immediately.

- From our preliminary review, it appears that this data covers only self-administered drugs reimbursed by the Medicaid program. If the State intends to go forward with claims regarding physician-administered drugs it needs to produce such data.
- The data does not appear to indicate whether the claims were actually paid.
- The data does not appear to delineate between what was paid as the dispensing fee and what was paid as the ingredient cost.
- The data does not appear to identify the basis of the payment (AWP, MAC, FUL, or Usual and Customary).

If the State has produced such information, please identify it for us. If the State has not produced such information, please let us know if and when it intends to do so.

**Post-2003 Claims Data:** To date, the State has produced no claims data from the time that First Health was the State's fiscal agent. First Health has this information and is capable of producing it. First Health is the State's agent and its claims data is in the State's custody and control. Having asserted a "False Claims" action, the State is obligated as part of its *prima facie* case to provide evidence that claims were made. If the State chooses not to produce such data, then the defendants will move to dismiss all claims during this period.[3]

---

[3] As you note, the defendants have requested such information directly from First Health, who wanted the defendants to pay $178,000 to produce the data. The defendants have no interest in paying the State's agent for data that the State is obligated to produce.

Jeniphr A. Breckenridge                    - 5 -                           May 16, 2006

*Electronic Discovery*

Your May 9 letter concedes that Magistrate Judge Bowler ordered the State to search the files of witnesses who have been or will be deposed. On April 25 and 26, you sent two emails listing the witnesses you intended to search. On the 26th, I responded stating that we did not agree that the list of individuals you have identified was exhaustive and specifically identified the need for the State to search the electronic documents of the upcoming deponents. I also said that we would provide a more complete response shortly, and, two days later, we sent you a letter identifying the additional people that the State needed to search. Our objection to your list was that it did not comply with Judge Bowler's order in that it omitted people who were or are going to be deposed. At the time you compiled your list, you knew who had been deposed, and yet, the list omits Mr. Willden. Ms. Townley, and Ms. King. Similarly, you knew that we wanted to depose Mr. Hillerby, Mr. Abba, and witnesses from the three non-Medicaid agencies, and, yet, their names were also omitted.

Your letter says the State does not have any electronic data for Janice Wright, Chris Thompson, Laura Squartsoff, and Keith McDonald. As these people were deposed and the State was obligated to produce their electronic documents, we do not think it unreasonable that the State explain why it does not have documents for these individuals. You say that Mr. Rosenberg has informed you that the email accounts for these individuals predate the current system. Please explain: (a) when did this system change occur; and (b) whether that was indeed the time that these individuals accounts were no longer retained.

Finally, given the State's representation that the electronic documents will not be produced any time soon, we renew our request for the State to prioritize its searches, as previously outlined. We do not think this creates any additional burden on the State.

*Interrogatories*

We understand that your May 9 letter was only a partial response to my letter of April 28, and we look forward to your response regarding the Interrogatory Response issues identified in the April 28 letter.

Jeniphr A. Breckenridge                    - 6 -                    May 16, 2006

We look forward to hearing from you regarding the remaining issues.  Please call me if you have any questions.

Very truly yours,

Christopher Dillon

cc:    L. Timothy Terry
       Defense counsel

10022252_1