# EXHIBIT J



**HAGENS BERMAN
SOBOL SHAPIRO LLP**

JENIPHR A.E. BRECKENRIDGE
DIRECT • (206) 224-9325
JENIPHR@HBSSLAW.COM

June 1, 2006

<u>*Via E-Mail*</u>

Mr. Christopher R. Dillon
Ropes & Gray
One International Place
Boston, MA  02110-2624

    Re:   *Nevada AWP Actions*

Dear Chris:

    This letter addresses numerous issues raised by your May 16, 2006 letter.

*Document Requests*

    **Category 1:**  The State will provide a list of defendant-specific documents. Defendants can take it from there.

    **Category 2:**  All responsive materials have been produced.

    **Category 6:**  The State will produce MAC reports it has been able to obtain from First Health.  Presumably this information is responsive to defendants' outstanding subpoena to First Health.  If defendants obtain additional MAC lists – or any material – pursuant to the outstanding defense subpoena, we request a copy.

    **Rebate Data:**  Your letter indicates that the State will receive a response from defendants as a group or individually.  We have heard from very few defendants.  To my knowledge, your clients have not responded.  Please advise what defendants' position will be and when it will be revealed to us.

    **Other:**  Michael Willden has located additional documents as a follow up to his deposition.  They are to be sent to our office for production this week.

ATTORNEYS AT LAW    SEATTLE  LOS ANGELES  CAMBRIDGE  PHOENIX  CHICAGO
T 206.623.7292    F 206.623.0594
1301 FIFTH AVENUE  SUITE 2900  SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001534-13 111702 V1

Mr. Christopher R. Dillon
June 1, 2006
Page 2

We have detailed elsewhere the difficulties related to the defendants' unreasonably broad electronic discovery requests (review ongoing) and the request for discovery from non-Medicaid entities (Division of Mental Health and Developmental Services pending).

*30(b)(6) Notice*

The State has objected to the 30(b)(6) notice in its entirety. We agreed to consider defendants' compromise position – i.e., to adopt select portions of existing testimony as testimony on the part of the State. We cannot do so if defendants will not identify the witnesses and testimony they had in mind when they made this offer. It is absurd to ask the State to identify the pre-existing testimony defendants might have had in mind when they drafted and served their 30(b)(6) notice. We remain willing to work with you on this matter, but we need more information.

*Claims Data*

1.   **First Health Claims Data – Post-2003 Data**

Defendants have met extensively with First Health since August, 2005 to develop the claims data defendants desired for their case. These meetings were held cooperatively with representatives of the State. At all times during these discussions, it was clear that the State did not agree to bear the costs for information defendants sought. This was First Health's understanding as well. On March 28, 2006, First Health provided Jason Litow an invoice for the provision of the data defendants requested. A copy of that invoice is attached to this letter as Exhibit A. The letter states that in order for First Health to provide the data, a written agreement would have to be entered into between First Health and authorized representatives of the defendants. To our knowledge, defendants have never followed up on this invoice or asked First Health to provide the data.

There has never been an agreement that the State would pay for data defendants requested from First Health. This is not data that the State was obligated to produce. First Health was adamant that in order to obtain the data, defendants would have to serve a subpoena. First Health's counsel even participated in the drafting of the subpoena. The data contemplated by the First Health production and the March 28, 2006 invoice is data prepared to defendants' specifications. It is not necessarily in the format the State or the State's experts would have selected. The State has to go through a similar process to obtain data from First Health, *including paying for it.*

Mr. Christopher R. Dillon
June 1, 2006
Page 3

### 2. Pre-2003 Data

The State provided pre-2003 data to defendants by early November 2005. In response, defendants took the deposition of Ron Swenson of the Department of Information Technology, on January 5, 2006. The purpose of the deposition was for defendants to clarify the claims data provided. Defendants' expert witness, Chris Stromberg of Bates White, participated in the deposition by telephone. In advance of the deposition, the State provided defendants with additional, explanatory information regarding the data. The State placed no limits on the deposition; GSK counsel concluded the deposition after approximately one-half day.

Despite having had this data for more than six months, defendants have only recently begun to complain about this data. The May 16, 2006 Letter is the first notice the State has received that defendants have had difficulty reading the claims data. This is particularly surprising given that defendants' experts have been involved in obtaining and have had access to the data since last fall. Although we believe that the State has more than fulfilled its obligations with respect to this data, we are willing to provide a state employee to answer questions defendants or their experts may have. We request that you submit the questions in writing as soon as possible so we may locate the appropriate state employee.

### 3. Other

Your letter requests information regarding the State's parens patriae claims. We have explained to you repeatedly: the State relies on sales data provided by defendants to support its *parens patriae* claims. The State is not relying on its own data. Thus, we do not understand the questions you pose in the May 16, 2006 Letter at 3. As for the identity of the *parens patriae* claimants, the State expects these to be revealed at the time the claims are made as part of the claims process. It is thus not clear what the source of defendants' request for a 30(b)(6) witness is.

*Electronic Discovery*

The State's efforts – and difficulties – with defendants' electronic discovery requests are detailed elsewhere. As for defendants' questions regarding the availability of electronic mail, in addition to what we have already explained, we refer you to the deposition of Mel Rosenberg, taken by defendants earlier in the case. We also note that Keith Macdonald left Medicaid more than 17 years ago; Chris Thompson left Medicaid

001534-13 111702 V1

Case 1:01-cv-12257-PBS   Document 2949-10   Filed 08/03/06   Page 5 of 13

Mr. Christopher R. Dillon
June 1, 2006
Page 4

in January, 1999; Janice Wright left Medicaid in August, 2000 and Laurie Squartsoff left Medicaid in 2000 – all well before these lawsuits were brought.

    Please contact us with any questions.

                      Sincerely,

                      HAGENS BERMAN SOBOL SHAPIRO LLP

                      *[sent via electronic delivery]*

                      Jeniphr A.E. Breckenridge

cc:    Steve W. Berman
        L. Timothy Terry

4300 Cox Road  
Glen Allen, VA 23060  
(804) 965-7400  
www.fhsc.com


**First Health**
Services Corporation®
A Coventry Health Care Company

March 28, 2006

Covington & Burling  
Attn: Jason Litow, Esq.  
1201 Pennsylvania Avenue, NW  
Washington, DC 20004

Dear Jason:

The following is a quote for the proposed services requested. All of the quotes are estimates based on the nature of the request and the level of effort to create one set of output. We will charge for actual hours expended respecting the minimums noted herein. All labor hours will be charged at $150/hour. This quote is intended to provide you with a reasonable estimate of the time and expense that would be involved in producing the information and data you requested. By providing you this quote, First Health Services is **not** committing itself to performing this work. Any agreement regarding the performance of this work would have to be reduced to writing and signed by authorized representatives of the parties to bind First Health Services.

**Adjudicated Pharmacy Claims and Drug Pricing Information:**

|  | Estimated Hours |  | Hourly Rate |
|---|---|---|---|
| Analysis and Report Generation | 80 |  | $150.00 |
|  | Estimated Subtotal |  | $12,000.00 |

**J-Code Analysis and Reporting**

|  | Estimated Hours | Minimum | Hourly Rate |
|---|---|---|---|
| Analysis and Report Generation | 240 | 120 | $150.00 |
| CPU Processing | 130 | 130 | $1,000.00 |
|  | Minimum Subtotal |  | $148,000.00 |
|  | Estimated Subtotal |  | $166,000.00 |
|  | Estimated Minimum Total |  | $160,000.00 |
|  | **Estimated Total** |  | **$178,000.00** |

Sincerely,

/s/ Doug Lipton

Douglas A. Lipton, Esq.  
Corporate Attorney

Confidential & Proprietary to First Health Services. Unauthorized reproduction, distribution, or dissemination is strictly prohibited.

# EXHIBIT K



JENIPHR A.E. BRECKENRIDGE
DIRECT • (206) 224-9325
JENIPHR@HBSSLAW.COM

**HAGENS BERMAN
SOBOL SHAPIRO LLP**

July 7, 2006

*Via E-Mail*

Mr. Christopher R. Dillon
Ropes & Gray
One International Place
Boston, MA  02110-2624

     Re:    *Nevada AWP Litigation*

Dear Mr. Dillon:

     We are writing to respond to Exhibits A and B to your June 7, 2006 letter.  We believe that the requests contained in each are beyond the scope of proper discovery in this case for the reasons set forth below.

     Exhibit A relates to the deposition testimony of Ronald Swenson which was taken earlier in the case.  Although the State did offer to consider what limited additional questions regarding the claims data at defendants' request, the list submitted is excessive.  Defendants have already taken the witness's deposition after defendants received the data and with no limitations placed on the examination.  We neither "appreciate" nor understand that you must now "preserve this (additional) information in an admissible form."  We will not make Mr. Swenson available for an additional deposition.

     Exhibit B requests additional documents from each of three non-Medicaid witnesses.  The State's understanding of Magistrate Bowler's order was that the State was to produce the documents *from the files of each of* non-Medicaid witnesses to the extent the documents relate to drug pricing, acquisition or reimbursement.  Defendants' understanding is the same.  O'Sullivan's March 30, 2006 Letter at 2-3.  This is a much more limited directive than the free-ranging discovery defendants now seek.  As we have explained, the files of each of the witnesses have been searched as well as files where they might have maintained responsive information.  None of the information was located.

                                Sincerely yours,

                                HAGENS BERMAN SOBOL SHAPIRO LLP


                              *[sent via electronic delivery]*

                              Jeniphr A.E. Breckenridge

ATTORNEYS AT LAW      SEATTLE   LOS ANGELES   CAMBRIDGE   PHOENIX   CHICAGO
T 206.623.7292   F 206.623.0594
1301 FIFTH AVENUE   SUITE 2900   SEATTLE, WASHINGTON 98101
www.hagens-berman.com

001534-13 114942 V1

# EXHIBIT L



Kathleen M. O'Sullivan
PHONE: 206.359.6375
FAX: 206.359.7375
EMAIL: kosullivan@perkinscoie.com

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

March 30, 2006

Jeniphr A.E. Breckenridge
Hagens Berman Sobol Shapiro LLP
Suite 2900
1301 Fifth Avenue
Seattle, WA 98101

BY EMAIL AND ELECTRONIC SERVICE

Re:   **Montana and Nevada AWP Actions**

Dear Jeniphr:

I write as a follow up to Judge Bowler's rulings of yesterday on defendants' second motion to compel the States of Montana and Nevada. The Court ordered the States to produce additional documents and witnesses for deposition and stated explicitly that the production needed to be "ASAP" given that "time is of the essence" with the impending May 5 deadline for defendants to file motions for summary judgment and expert reports.

    1.    Electronic documents and email: Judge Bowler ordered the States to produce electronic documents and emails.

        (a) Number of fileholders to search

The searches for electronic documents and emails should be done for all Montana and Nevada witnesses whose depositions have been taken or that are upcoming, including the non-Medicaid state agency officials and legislative and executive officials that Judge Bowler ordered could go forward. At the risk of stating the obvious, email searches should include emails sent by or to these witnesses (including sent to as a cc or bcc). To the extent that the witnesses are former employees, we understand that electronic documents (e.g., Word documents) authored by former employees are still available on the

[06735-0059/SL060880.132]

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

March 30, 2006
Page 2

H drive in Nevada, and on the G drive in Montana, where the former employee's files are often located in his or her former supervisor's sub-folder; emails sent and received by former employees may still be available as well.

(b) Search terms

Defendants have always been willing to consider reasonable limitations on the search terms used for the States' electronic searches, but the States have never offered a counter-proposal to the list that defendants proposed in December 2005 and that were used successfully in the Connecticut AG AWP case. After the hearing, we conferred with your partner, David Nalven, who stated that the States would make a counter-proposal for the list of search terms. Please provide us with such a list by the close of business on Monday, April 3 and defendants will consider that list promptly.

(c) Cost-shifting

Judge Bowler rejected the States' request that the cost of an electronic production be shifted to defendants, with one small exception. Judge Bowler asked if defendants would purchase the software necessary to perform email searches in a more efficient manner (i.e., permitting multiple search terms to be searched at once) and defendants agreed. The software that defendants are likely to purchase is either Mail Archive Pro or X1 Enterprise Client, both of which have the capability to search attachments to emails. Please let us know to whom we should send the software.

(d) Back-up tapes

At this point, defendants are not requesting searches of the back-up tapes that are in place as of late 2005 or early 2006 due to the litigation holds that the States instituted late last year. Defendants are not waiving their rights to request this data, but are trying to expedite the electronic searches by having the States focus their searches on readily accessible electronic media.

2.  Discovery from non-Medicaid agencies: Judge Bowler ordered that defendants may take three depositions, per state, of representatives of non-Medicaid state entities that acquired or reimbursed for prescription drugs. Judge Bowler ordered the States to produce documents from the files of each of these six witnesses to the extent these documents relate to (a) how these non-

March 30, 2006
Page 3

Medicaid agencies acquired or purchased drugs; (b) how these non-Medicaid agencies reimbursed for drugs; and (c) any communications between the non-Medicaid agency and any Medicaid official regarding drug pricing or reimbursement. As we discussed with Mr. Nalven yesterday, that search should include files of administrative assistants to these witnesses, general files where the witnesses filed documents, and any archived files of these witnesses. We will provide you with the agencies from whom we want this discovery by the close of business on Monday, April 3.

3.   Discovery from executive/legislative staffers: Judge Bowler ordered that defendants may take a total of three depositions of legislative or executive staffers who were involved in communications and/or policy-making regarding drug pricing or reimbursement. In open court, defendants selected for deposition Michael Hillerby and Steve Abba from Nevada and Steve Snezick from Montana. Judge Bowler also ordered the States to produce the documents from the files of each of these three witnesses to the extent these documents relate to drug pricing, acquisition or reimbursement. The searches should be conducted pursuant to the same ground rules set forth above as to the non-Medicaid agencies.

4.   Rebate data: Judge Bowler ordered that the States have a choice: either (a) produce rebate data relating to the defendants and the subject drugs, or (b) stipulate to the accuracy of defendants' rebate data. Please inform us by the close of business on Monday April 3 which option each State has selected.

5.   Montana's dispensing fee surveys and other "agreed upon," but outstanding documents: Judge Bowler denied defendants' motion, without prejudice, as to the categories of documents to which the States had either agreed to produce or had not previously objected to producing. There are various categories of documents that the States have agreed to produce, but have not done so yet (e.g., documents relating to the reimbursement for physician-administered drugs in Montana, post-2003 Medicaid claims data maintained by First Health and pre-2003 physician-administered drugs data in Nevada). These documents should have been produced months ago, and defendants expect that they will be produced promptly following this letter. We are aware of only one category of documents to which the State of Montana raised a belated objection, on the basis of confidentiality, to producing the dispensing fee surveys conducted by Montana Medicaid of Medicaid providers. I have asked several times for an explanation of what information the State of Montana proposes redacting from these surveys and

March 30, 2006
Page 4

on what basis, given the existence of the Protective Order in this case, but I have not received an answer. If the dispensing fee surveys are not produced in unredacted form by the close of business on Thursday, April 6, defendants will have no choice but to file an expedited motion to compel their production.

     6.    Timing of production: Given the May 5 deadline for filing summary judgment motions and expert reports, we ask that all remaining responsive documents be produced by April 14, 2006 on a rolling basis with priority being given to emails and electronic documents related to the upcoming deposition witnesses.

Very truly yours,

*Kath N. O'Sullivan*

Kathleen M. O'Sullivan

cc:   Ali Bovingdon (via email)
      L. Timothy Terry (via email)
      All Counsel of Record (via Electronic Service)