# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | |
| *State of Nevada v. Abbott Labs, Inc.*, et al., Case No. CV02-00260 ("Nevada I") | |
| *State of Montana v. Abbott Labs, Inc.*, et al., D. Mont. Cause No. CV-02-09-H-DWM | |

## BAXTER HEALTHCARE CORPORATION'S OPPOSITION TO MONTANA AND NEVADA'S JOINDER IN THE MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE

Dated: August 4, 2006

Respectfully submitted,

_/s/ Peter E. Gelhaar_

Peter E. Gelhaar (BBO #188310)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, MA  02108
Telephone:  (617) 720-2880
Facsimile:  (617) 720-3554

Of counsel:

Merle M. DeLancey
J. Andrew Jackson
DICKSTEIN SHAPIRO LLP
1825 Eye St., N.W.
Washington, DC 20037
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201

Counsel for Defendants
BAXTER INTERNATIONAL INC. and
BAXTER HEALTHCARE CORPORATION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................... 2

  A.    Montana and Nevada Serve Requests for Production on Baxter ...................... 3

  B.    The MDL Plaintiffs Serve Discovery Requests ................................................ 4

  C.    Baxter Meets and Confers with Hagens Berman About the Scope and Breadth
        of the Document Requests ................................................................................ 4

  D.    Baxter's Production of Sales Transaction Data ................................................ 5

  E.    Baxter's Collection of Millions of Pages of Potentially Responsive Documents .............. 6

  F.    Montana and Nevada Serve Additional Discovery Requests on Baxter............................. 7

  G.    Baxter's Massive Review of Documents ......................................................... 8

  H.    Baxter's Production of Documents to the MDL Plaintiffs, Montana, and
        Nevada ........................................................................................................... 11

  I.    Plaintiffs Were Not Surprised by Baxter's Production of a Significant Volume of
        Documents in June 2006 ................................................................................ 12

III.    ARGUMENT ..................................................................................................... 13

  A.    Fed. R. Civ. P. 37 Does Not Apply................................................................. 14

  B.    28 U.S.C. § 1927 Does Not Apply.................................................................. 14

  C.    Baxter's Good Faith Efforts Make the Use of the Court's Inherent Sanctioning
        Power Inappropriate. ..................................................................................... 15

  D.    The Extreme Sanction of Default Judgment is Not Appropriate. .................... 17

IV.     CONCLUSION.................................................................................................. 20

V.      REQUEST FOR ORAL ARGUMENT ............................................................. 20

i

# TABLE OF AUTHORITIES

## Cases

*Adams v. Carlson,*
   521 F.2d 168 (7th Cir. 1975) ................................................... 16

*Anderson v. Beatrice Foods Co.,*
   900 F.2d 388, 396 (1st Cir. 1990); *cert. denied,* 498 U.S. 891 (1990) ........................ 17, 18, 20

*Aoude v. Mobil Oil Corp.,*
   892 F.2d 1115 (1st Cir. 1989) .................................................. 16, 17

*Apex Oil Co. v. Belcher Co. of N.Y., Inc.,*
   855 F.2d 1009 (2d Cir. 1988) .................................................. 15

*Beh-Hanson v. Arconium Specialty Alloys Co.,*
   No. 03-263-ML, 2004 U.S. Dist. Lexis 27732 (D.R.I. June 18, 2004) .................... 15

*Browning v. Kramer,*
   931 F.3d 340 (5th Cir. 1991) .................................................. 19

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) .................................................. 13, 14, 15, 16, 17

*Cruz v. Savage,*
   896 F.2d 626 (1st Cir. 1990) .................................................. 15

*Fleet Nat'l Bank v. Tellier,*
   171 B.R. 478 (D.R.I. 1994) .................................................. 18

*Local 285, Service Employees Int'l Union v. Nonotuck Assocs., Inc.,*
   64 F.3d 735 (1st Cir. 1995) .................................................. 16

*Luis C. Forteza e Hijos, Inc. v. Mills,*
   534 F.2d 415 (1st Cir. 1976) .................................................. 17

*Mullane v. Chambers,*
   333 F.3d 322 (1st Cir. 2003) .................................................. 15, 16

*Pension Administration Committee of the Sheraton Corp. Ret. Plan for Salaried Employees v.*
   *Carroll,*
   No. 93-1585, 1993 U.S. App. Lexis 34032 (1st Cir. Dec. 30, 1993) .................... 18

*Pro Spice, Inc. v. Omni Trade Group, Inc.,*
   No. 01-1661, 2003 U.S. Dist. Lexis 23831 (E.D. Pa. Dec. 16, 2003);
   *aff'd,* 128 F. Appx. 836 (3d Cir. 2005) .................................................. 15

ii

*R.W. Int'l Corp. v. Welch Foods, Inc.,*
  937 F.2d 11 (1st Cir. 1991) ................................................................................. 14

*Richman v. Gen. Motors Corp.,*
  437 F.2d 196 (1st Cir. 1971) ................................................................................. 17

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) ...................................................................................... 13, 16

*United States v. Nesglo, Inc,*
  744 F.2d 887 (1st Cir. 1984) ................................................................................. 15

*Webb v. District of Columbia,*
  146 F.3d 964 (D.C. Cir. 1998) ............................................................................. 19

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983) ............................... 16

*Whitney Bros. Co. v. Sprafkin,*
  60 F.3d 8 (1st Cir. 1995) ............................................................................... 15, 16

*Xaphes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  102 F.R.D. 545 (D. Me. 1984) ................................................................. 17, 18, 20

## Statutes

28 U.S.C. § 1927 ...................................................................................... 2, 13, 14, 15

Fed. R. Civ. P. 37 ......................................................................................... 2, 13, 14

## I.    INTRODUCTION

On June 28, 2006, the Plaintiffs in the MDL class action filed a motion for sanctions requesting the "nuclear option" of a default judgment because Baxter Healthcare ("Baxter") [1] produced too many documents, and did so later than Plaintiffs would have liked. The States of Montana and Nevada, represented by the same law firm as the MDL Plaintiffs, have now joined that motion[2] and seek identical relief.[3]   As explained below and in Baxter's Opposition to the MDL motion for sanctions ("Baxter Opposition"), which is hereby incorporated by reference, Baxter's production of documents and data in these cases may have occurred later than expected, but Baxter has nonetheless made an extraordinary effort – including interviewing more than 500 employees and expending 43 man-years of attorney time – to achieve a comprehensive production.   In such circumstances, there can be no question that Baxter's actions were reasonable in light of the broad scope and number of the discovery requests propounded to it. Moreover, there was no malice in the timing or manner of Baxter's production, as demonstrated by the inability of the MDL Plaintiffs, Montana, and Nevada to introduced *any* evidence of malice.   Baxter's production of documents in these cases simply took longer than expected. Montana and Nevada should understand this in light of their own delays in providing electronic information requested by the Defendants and ordered by this Court to be produced months ago.

In the brief joined by Montana and Nevada, the MDL Plaintiffs assert that it would take them years to review the documents that Baxter has produced, while claiming to be surprised that

---

[1]  Baxter International Inc. is also named as a Defendant in these actions, but the motion for sanctions/default is filed against Baxter Healthcare alone.

[2]  Counsel for Montana and Nevada never conferred with counsel for Baxter prior to filing their Joinder in the Motion for Sanctions, in violation of Local Civil Rule 7.1(a)(2). *See* Second Declaration of Merle M. DeLancey in Support of Baxter Healthcare Corporation's Opposition to Montana and Nevada's Joinder in the Motion for Sanctions and Default Judgment ("Second DeLancey Decl."), ¶ 21-23.

[3]  Montana and Nevada do not make any independent arguments, but simply incorporate and rely upon the arguments made by the MDL class action Plaintiffs.

it took Baxter months to review nearly *five times* more documents than were produced. Plaintiffs also object because they might have to employ 10 lawyers to review Baxter's documents, despite the fact that Baxter was forced to employ more than *100* lawyers to review documents. Plaintiffs simply do not want to do the kind and amount of work that they required of Baxter.

Plaintiffs invoke Federal Rule of Civil Procedure 37, 28 U.S.C. § 1927, and the Court's inherent power as authority for imposing the sanction of a default judgment. None of those sources support sanctions here, let alone a default judgment. Rule 37 sanctions require that the Court first issue an order compelling discovery and that Baxter violate such an order – neither of which has occurred here. Section 1927 – by its express terms – does not permit the Court to sanction a *party*. Finally, sanctions under the Court's inherent authority require a finding that Baxter or its counsel acted in bad faith. The facts here demonstrate that Baxter and its counsel acted in good faith in responding to the broad document requests issued by Montana and Nevada – Baxter interviewed hundreds of employees, reviewed millions of documents, and spent millions of dollars on document collection and production.

Because there is no factual or legal basis for the imposition of sanctions in this case, the Motion for Sanctions should be denied in not only the MDL, but also in the cases filed by Montana and Nevada. Montana and Nevada should also be required to reimburse Baxter for the costs and attorneys' fees incurred in preparing this Opposition.

## II.    STATEMENT OF FACTS

The MDL class action Plaintiffs, the State of Montana, and the State of Nevada, are all represented by the same law firm – Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). Moreover, the Baxter drugs at issue in the Montana and Nevada cases are the same as the drugs at issue in the MDL class action. As a result, the documents sought from and produced by Baxter in the MDL class action are also largely responsive to discovery requests served in the

DSMDB-2121423v04

Montana and Nevada cases.  The circumstances of Baxter's production of documents to the MDL Plaintiffs, therefore, have significant bearing on discovery in the Montana and Nevada cases.  For these reasons, this Opposition reiterates the significant events pertaining to discovery in the MDL, adding the facts regarding the Montana and Nevada cases where appropriate.

### A.    Montana and Nevada Serve Requests for Production on Baxter

On August 7, 2003, the State of Montana served its First Request for Production of Documents on Baxter and the other Defendants in *State of Montana v. Abbott Labs., Inc.,* et al., 02-CV-12084-PBS, and the State of Nevada served its First Request for Production of Documents on the Defendants in *State of Nevada v. American Home Products Corp.,* et al., 02-CV-12086-PBS ("Nevada II").  Baxter, however, is a Defendant in only the "Nevada I" case – *State of Nevada v. Abbott Labs., Inc.*, et al., 02-CV-00260-ECR – not the Nevada II case.  The State of Nevada did not serve discovery requests in the Nevada I case until November 13, 2003.

After these discovery requests were served in the Montana and Nevada II actions, the Defendants objected to the requests as premature.[4]  As for the Nevada I discovery requests, the Defendants asserted that these requests were premature because Nevada procedure allows discovery only after the filing of an early case conference report, which had not yet occurred.[5]

Together, the Document Requests served by Montana and Nevada on Baxter and the other Defendants included 94 requests, most with multiple parts, and many of which were exceedingly broad and sought huge amounts of information and documents.  For example, Requests No. 42 and 43 of the Montana Requests sought:

---

[4] *See* Second DeLancey Decl. ¶ 4, Ex. A thereto.

[5] *See* Second DeLancey Decl. ¶ 4, Ex. B thereto.  Although Montana and Nevada subsequently filed a Motion to Compel responses to the Montana and Nevada II requests from the named Defendants, that motion was denied by this Court on September 23, 2003.  No motion to compel was ever filed against Baxter in connection with the Nevada I requests.

3

> All documents relating to any actual, proposed, or prospective pricing methods, practices, policies or strategies for each Identified Drug during the Relevant Time Period.
>
> All documents relating to any actual, proposed, or prospective marketing methods, practices, policies, or strategies for each Identified Drug during the Relevant Time Period.

*Id.*[6]  These requests seeks nearly every document created by Baxter having anything to do with pricing or marketing of the drugs named in the Montana Complaint from 1991 through the present.  Similarly, Request No. 34 of the Nevada I Requests sought:

> All data maintained in electronic form relating to the pricing, cost data and sales data, including the AWP, of each AWPID in the United States for the Relevant Time Period . . .

*Id.*[7]  This request seeks production of the entirety of Baxter's data regarding pricing, costs, and sales of each of the drugs named in Nevada's Complaint for a 15 year period.

### B.   The MDL Plaintiffs Serve Discovery Requests

The discovery requests served by Montana and Nevada were followed by the Omnibus Requests for Production of Documents by the MDL class action Plaintiffs, which were served on Baxter and the other Defendants on March 31, 2004.  *See* Second DeLancey Decl. ¶ 7.  As explained in Baxter's MDL Opposition, these requests included 82 separate documents production requests, many of which were also extremely broad.[8]

### C.   Baxter Meets and Confers with Hagens Berman About the Scope and Breadth of the Document Requests

Counsel for Baxter worked with Plaintiffs' counsel in an effort to narrow and limit the Plaintiffs' discovery requests in the MDL.  Declaration of Merle M. DeLancey in Support of

---

[6] *See* Second DeLancey Decl. ¶ 5, Ex. C thereto.  Nevada's Requests Nos. 37 and 38 sought identical documents for the drugs named in the Nevada Complaint. *See* Ex. D to Second DeLancey Decl.

[7] *See* Second DeLancey Decl. ¶ 5, Ex. D thereto.  Montana's Request No. 28 sought identical data for the drugs named in the Montana Complaint. *See* Ex. C to Second DeLancey Decl.

[8] *See* Baxter Opposition, at 2-3; Second DeLancey Decl., ¶ 6.

4

Baxter's Opposition to the MDL Plaintiffs' Motion for Sanctions and Default Judgment ("DeLancey Decl."), attached hereto as Exhibit 2, ¶¶ 2-4. These negotiations and discussions are set forth in detail in Baxter's Opposition to the MDL Motion for Sanctions. As explained therein, Baxter reasonably did not initiate the gargantuan efforts required to collect documents until such time as it learned of Plaintiffs' decision on limiting the drugs in the case. *See* Baxter Opposition, at 3-4. That decision was not made until April 2005, when Plaintiffs' counsel agreed, as Baxter had anticipated, to eliminate 6 of the 19 Baxter drugs at issue in the MDL litigation. *See* Baxter Opposition, at 3; DeLancey Decl. ¶ 5. Throughout this entire period, Baxter continued to advise its employees to retain documents relevant to the AWP cases,[9] and never purposefully delayed producing documents.

Counsel for Baxter also communicated with Hagens Berman in an effort to limit the scope of discovery and drugs at issue in the Montana and Nevada cases. *See* Second DeLancey Decl. ¶ 7. It was not until early 2006[10] that an agreement was finally reached with counsel for Montana and Nevada that the drugs removed from the MDL litigation would also be removed from the Montana and Nevada cases for purposes of discovery and trial. *Id.* ¶ 8.

### D.    Baxter's Production of Sales Transaction Data

On April 20, 2005, the MDL Plaintiffs sent Baxter a letter clarifying their prior requests for sales transaction data. *See* DeLancey Decl, ¶ 6. This data is relevant to both the MDL class action and the Montana and Nevada cases. Pursuant to the instruction of Plaintiffs, Baxter focused first on the production of sales transaction data rather than electronic and hard copy documents. *Id.* After extensive effort, Baxter produced its sales transaction data on August 4,

---

[9] *See* DeLancey Decl., Declaration of Michael Bolton, attached thereto as Ex. B, ¶ 15.

[10] Hagens Berman apparently, and perhaps understandably, chose to focus their efforts on MDL Track 1 discovery during this time, given their perception that the Track 1 cases would move forward in discovery before either MDL Track II or the Montana and Nevada cases. Plaintiffs, and not Baxter, are responsible for any delay associated with this decision.

DSMDB-2121423v04

2005 and September 19, 2005. *Id.* ¶ 7. The data described all sales transactions for the relevant drugs and therapies from January 1, 1991 through March 30, 2005, including quantity, price, customer name and address, rebate and chargeback data, etc. *Id.* This production consisted of 16 gigabytes of data, the equivalent of over 250,000 pages of information. *Id.*

### E.     Baxter's Collection of Millions of Pages of Documents

Baxter then turned its focus to gathering information responsive to the remainder of Plaintiffs' Omnibus Requests, as well as all the additional information and documents relevant to the MDL cases brought by various States, including Montana and Nevada. *See* Second DeLancey Decl. ¶ 10; DeLancey Decl. ¶ 8. So as not to miss any employee with potentially relevant information, Baxter contacted its Human Resources department and obtained a list of all potentially relevant Baxter employees of the divisions at issue in the litigation. *See* DeLancey Decl. ¶ 8. Baxter reviewed this list, compared it with previous lists, and revised the list in order to confirm the accuracy of the ultimate list of employees to be used. *Id.* The remaining employees – nearly 600 in total – were sent a questionnaire asking about the relevant documents and the location of such documents. *Id.*; *see also* DeLancey Decl., Declaration of Michael Bolton, attached thereto as Ex. B, at ¶ 8. All employees who responded in the affirmative or whose status was uncertain were interviewed by in-house or outside counsel. *See* DeLancey Decl. ¶ 8. Overall, more than 550 employees were interviewed. *Id.* Each employee's pertinent documents were inventoried by category. *Id.* Teams of vendors began the process of capturing the potentially relevant documents. *Id.*

For technical and logistical reasons, it was not possible to capture electronically only those emails or electronic documents (on computer hard drives or network drives) that were responsive. *See* DeLancey Decl. ¶ 9. Therefore, a determination was made that employees who had a significant number of responsive documents would have their entire hard drives "ghost

6

imaged," and all of their email captured. *Id.* Hard copy documents were collected from each individual office and/or common area where they were maintained.[11] *Id.*

**F.    Montana and Nevada Serve Additional Discovery Requests on Baxter**

On March 1, 2006, Montana and Nevada each served a new set of Interrogatories, Requests for the Production of Documents, and Requests for Admission on all Defendants, including Baxter.[12] *See* Second DeLancey Decl. ¶ 10, Ex. E thereto. The broadest of the document requests asked for a virtually unlimited number of documents regarding each of the relevant drugs sold by Baxter during the entire time period 1991 through the present:

> For each sale of a Subject Drug made by You to any wholesaler, retailer, pharmacy, provider, PBM or other entity for use by a Montana resident during the Relevant Time Period, identify the following information:
>
> (a)    date of sale;
>
> (b)    the quantity of the Subject Drug sold;
>
> (c)    to whom the Subject Drug was sold;
>
> (d)    whether the entity the Subject Drug was sold to was an individual, a state agency, a distributor, a wholesaler, a PBM, a hospital, a private payor or other entity;
>
> (e)    the AWP(s) for the Subject Drug;
>
> (f)    the ASP (or equivalent) for the Subject Drug;
>
> (g)    the location where the Subject Drug was sold;
>
> (h)    the AWP reported for the drug to each Publisher; and

----

[11] Baxter's legal representatives also examined several areas of shared files, for example, BioScience and Medication Delivery contract and bid files. DeLancey Decl. ¶ 10. Baxter also located thousands of boxes of files in two archive locations. *Id.*; *see also id.*, Declaration of Michael Bolton, attached thereto as Ex. B, at ¶¶ 20 and 22. Hundreds of these boxes were selected for copying and scanning as well. *Id.*

[12] These discovery requests nowhere mention the prior Requests for Production served by Plaintiffs. Nor did Plaintiffs say anything at this time or thereafter about the fact that Baxter had not yet produced documents in response to the initial Requests for Production. *See* Second DeLancey Decl. ¶ 10.

(i)      the price the purchaser paid for the Subject Drug.

*See* Montana Interrogatory No. 1, Nevada Interrogatory No. 1 (Exs. E-F to Second DeLancey Decl.).

Baxter answered Montana and Nevada's discovery requests on April 3, 2006. In its responses to each of the Requests for Production, Baxter stated that non-privileged documents responsive to the Requests "will be provided to Plaintiff at a mutually agreeable time, place, and location." *See* Second DeLancey Decl. ¶ 13, Exs. G-H thereto. At no point did Plaintiffs object to this response, contact counsel for Baxter to inquire as to the "time, place, and location" at which the documents would be produced, or raise any questions at all as to when Baxter would be producing its responsive documents.[13]  *Id.* ¶ 14.

### G.      Baxter's Massive Review of Documents

In the end, Baxter collected for review more than 5 million potentially relevant documents.[14]  *See* DeLancey Decl. ¶ 11, Declaration of Michael Bolton, attached thereto as Ex. B, at ¶ 24. These documents were loaded into two different electronic discovery tools (Concordance and EED) and reviewed by scores of contract attorneys hired specifically for this purpose. *See* DeLancey Decl. ¶ 11, Ex. B thereto at ¶ 23. The chart below describes the monthly contract attorney effort over time. At the height of the review, Baxter had well over 100 contract attorneys reviewing documents.[15]  *See* DeLancey Decl. ¶ 11. A total of 88,950 contract attorney hours - nearly 43 man years[16] - was spent on this "first review" effort. *Id.* This figure

---

[13]  In addition, neither Montana nor Nevada have ever sought to depose any Baxter witnesses in these cases.  *See* Second DeLancey Decl. ¶ 15.

[14]  The MDL Plaintiffs' Motion speaks in terms of "pages" of documents, versus number of "documents." The number of documents is a more useful figure as some documents, such as sales-related spreadsheets, can be hundreds or thousands of pages long.

[15]  Baxter initially did not have as many attorneys engaged in review of documents for production because Baxter was in the process of interviewing employees and collecting documents. In addition to in-house and outside counsel, Baxter also used teams of contract attorneys to assist with this process.  *See* DeLancey Decl. ¶ 11.

[16]  88,950 work hours divided by 2080 (work hours per year) equals 42.8 years.

DSMDB-2121423v04

does not include the thousands of hours spent by in-house and outside counsel also working on document production efforts. *Id.* The total number of hours spent on discovery efforts in this case was well over 100,000. *Id.*

| MONTH | TOTAL HOURS BILLED BY CONTRACT ATTORNEYS FOR MONTH |
|---|---|
| Aug 05 | 191 |
| Sept 05 | 326 |
| Oct 05 | 653 |
| Nov 05 | 770 |
| Dec 05 | 775 |
| Jan 06 | 1,263 |
| Feb 06 | 3,751 |
| Mar 06 | 9,217 |
| April 06 | 21,433 |
| May 06 | 30,438 |
| June 06 | 20,133 |
| **TOTAL CONTRACT ATTORNEY HOURS** | **88,950** |

DeLancey Decl. ¶ 11.

After this initial review by contract attorneys for relevance and privilege, many additional steps had to be completed before the documents could be produced. These steps are described in Baxter's Opposition brief and in the DeLancey Declaration. *See* Baxter Opposition, at 7; DeLancey Decl. ¶ 12, Exs. F and G thereto. Because of the many steps involved, the process could not possibly take place on a weekly, or even bi-weekly, basis. *Id.* Rather, Baxter had to wait until significant numbers of documents were reviewed by contract attorneys before undertaking a production effort. *Id.* Given the extensive lead time required prior to production, it is not surprising that the majority of the productions came later in the discovery process.

DSMDB-2121423v04

As demonstrated by the charts below, Baxter reviewed nearly **FIVE TIMES** more documents than it ultimately produced to the MDL Plaintiffs, Montana, and Nevada:[17]

BAXTER REVIEW

| System/type of document | # of documents reviewed by Baxter |
|---|---|
| Concordance[18] | 169,502 |
| EED[19] – electronic | 3,337,842 |
| – scanned set | 1,569,128 |
| **TOTAL** | **5,076,472** |

PRODUCTION TO PLAINTIFFS

| System/type of document | # of documents produced to MDL Plaintiffs, Montana and Nevada |
|---|---|
| Concordance (CDs) | 101,211 |
| EED (hard drive) | 492,452 |
| Lextranet (repository)[20] | 571,410 |
| **TOTAL** | **1,165,073** |

Stated differently, Baxter produced to the MDL Plaintiffs, Montana, and Nevada combined only 23% of the potentially responsive documents that Baxter reviewed. Second

---

[17] *See* Second DeLancey Decl. ¶ 16; *see also* Declaration of Elizabeth Fegan in Support of MDL Plaintiffs' Motion for Sanctions ("Fegan Decl."), Ex. 22 thereto; Declaration of Jeniphr Breckenridge in Support of Montana and Nevada's Joinder in the Motion for Sanctions ("Breckenridge Decl."), Exs. 1-7 thereto.

[18] Concordance is one of the electronic discovery tools used by Baxter contract attorneys to review potentially responsive documents. *See* DeLancey Decl. ¶ 13, n. 1.

[19] EED is another electronic discovery tool used by Baxter contract attorneys to review potentially responsive documents. *See* DeLancey Decl. ¶ 13, n.2. The "electronic" refers to emails and other electronic data received from Baxter; "scanned sets" are hard copy documents that were scanned into the EED tool for review. *Id.* Most of these scanned sets came from archives. *Id.*

[20] In this on-line repository, counsel for the MDL Plaintiffs, Montana, and Nevada can review electronic documents in their native format, run full text searches, search by custodian, and mark documents for Bates stamping and delivery in TIFF format. *See* DeLancey Decl. ¶ 13, n.3.

DSMDB-2121423v04

DeLancey Decl. ¶ 17. Tellingly, Plaintiffs complain only about the quantity of documents produced by Baxter – nowhere do Plaintiffs challenge the quality of Baxter's production.

## H.    Baxter's Production of Documents

Baxter made a total of 29 productions to the MDL Plaintiffs, totaling nearly one million documents, and a total of 6 additional productions to Montana and Nevada alone, producing another 200,000 documents. *See* DeLancey Decl., ¶ 14; Second DeLancey Decl., ¶ 18. These production efforts are summarized in Baxter's Opposition brief and in the cover letters attached to the Declarations supporting the Motion for Sanction papers.[21] As of the date of this brief, Baxter has produced the vast majority of its responsive documents to the MDL Plaintiffs, as well as to Montana and Nevada. *See* Second DeLancey Decl. ¶ 18.

While it may be the case that a large volume of Baxter's production came near the close of discovery, this was not "an improper attempt to manipulate discovery around the known discovery cut-off date for purposes of obfuscating the truth and purposely undermining the integrity of the Court and ability of Plaintiffs to prosecute this litigation." *See* MDL Plaintiffs' Memorandum at 1. Instead, the production process was mammoth and took longer than anyone anticipated. *See* DeLancey Decl. ¶ 15; Second DeLancey Decl. ¶ 19. Indeed, Montana and Nevada should understand this considering their own difficulties in complying with their discovery obligations. The motions filed in these cases include a motion to hold Montana and Nevada in contempt for failure to preserve documents, as well as three motions to compel Montana and/or Nevada to comply with their discovery obligations. In granting the latter of these motions to compel, Magistrate Judge Bowler ordered Montana and Nevada to produce the electronic documents responsive to Defendants' discovery requests "as soon as possible." Despite this Order, it has taken Montana and Nevada months to produce the electronic

---

[21] *See* Baxter Opposition, at 9-10; DeLancey Decl. ¶ 14; Fegan Decl., Exs. 10, 14, 20-22, 24-28 thereto; Breckenridge Decl., Exs. 1-7 thereto.

DSMDB-2121423v04

documents in their possession. *See* Second DeLancey Decl. ¶ 20. In fact, Montana and Nevada recently had to file a motion to extend the deadlines in these cases due, in part, to their delay in producing the electronic documents ordered to be produced.[22] *Id.* Moreover, the Nevada II Defendants recently were forced to file a Joint Motion for Redress of Spoliation of Evidence, based upon Nevada's failure to order its employees to preserve evidence relevant to this case until years after it should have. Considering all of these circumstances, it is perplexing that Montana and Nevada have joined a Motion for Sanctions and Default Judgment.

## I.   Montana and Nevada Were Not Surprised by Baxter's Production of a Significant Volume of Documents in June 2006

Although Montana and Nevada were aware, as 2006 began, that a significant quantity of responsive documents remained to be produced by Baxter, they never contacted Baxter to obtain a date certain for the production of Baxter's documents. *See* Second DeLancey Decl. ¶ 21. Nor did Montana and Nevada move to compel an earlier production date. *Id.* To the contrary, the States specifically consented to, or did not oppose, a number of filings by Baxter with this Court seeking extensions of time for its production of documents in the MDL case, and in the Montana and Nevada actions.[23] *Id.* Inasmuch as these filings detailed the extraordinary efforts being made by Baxter to produce responsive documents, in addition to the status of Baxter' extraordinary document review efforts, Montana and Nevada have no basis for contending that

---

[22] *See also* Joint Motion of Montana and Nevada to Amend CMO No. 25 (seeking extension of expert report and summary judgment deadlines to September 21 for several reasons, including that Montana and Nevada "are in the final stages of producing voluminous electronic discovery to the defendants that will not be available until the week before the current deadline for summary judgment motions").

[23] *See, e.g.,* Plaintiffs' and Defendant Baxter's Joint Agreed Motion for Extension to Track II Discovery Schedule with Respect to Baxter (Nov. 22, 2005); Defendants Baxter Healthcare Corporation And Baxter International Inc.'s Memorandum Regarding Track Two Discovery Schedule (Dec. 9, 2005); Defendants Baxter International Inc. and Baxter Healthcare Corporation's Motion for Reconsideration of Order Denying Joint Motion to Amend CMO 15 (Feb. 1, 2006); Defendants Baxter International Inc.'s and Baxter Healthcare Corporation's Response to The Court's Questions of February 7, 2006, and Further Motion for Extension of Track II Discovery Schedule and to Amend CMO No. 23 Only with Respect to Baxter (March 2, 2006).

they were unaware of the number of the documents that remained to be produced or the timing of that production. Indeed, correspondence from the law firm representing the States reveals that they were well aware of the quantity of data that remained forthcoming.[24]

As June 2006 approached, Montana and Nevada remained aware that Baxter still had a significant number of responsive documents left to produce. Yet Montana and Nevada did not seek relief from the Court or even inquire from Baxter's counsel as to when production would be occurring because, contrary to their current representations, they were well aware that Baxter would not be producing the vast majority of its documents until at or near June 1, 2006. *See* Second DeLancey Decl. ¶ 22. On these facts, Montana and Nevada cannot reasonably contend that they were surprised by the production of a significant quantity of documents in June 2006.

## III.   ARGUMENT

The above facts demonstrate that any sanction against Baxter, particularly default, is unwarranted. There is also no cognizable *legal* basis for the imposition of sanctions here under any of the three distinct sources of a Court's power to impose sanctions for discovery misconduct – the Federal Rules of Civil Procedure, federal statute, or the Court's inherent authority to manage its own affairs. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763-65 (1980). Fed. R. Civ. P. 37(b) is not implicated, as Plaintiffs[25] imply, because Baxter has not violated any Order compelling

---

[24] *See, e.g.,* Fegan Decl., Ex. 23 thereto. Furthermore, in response to a 30(b)(6) deposition request, on May 19, 2006 Baxter provided Plaintiffs with the declaration of Michael J. Bolton, in-house counsel for Baxter. *See* DeLancey Decl., Declaration of Michael Bolton, attached thereto as Ex. B. This declaration detailed, *inter alia*, that Baxter had "collected approximately 4.21 million pages of documents from active and archived employee files," that Baxter had "collected 353 gigabytes of data from 165 employee hard drives, 12 backup tapes, 19 computer disks and 5 DVDs," and that "[a]s of May 2006, nearly 3.27 million electronic documents collected from more than 320 document custodians are in the final stages of production. *Id.* at ¶¶ 20-24.

[25] Because Montana and Nevada simply adopt the arguments of the MDL Plaintiffs, the Argument section of this Opposition uses "Plaintiffs" to refer to the MDL Plaintiffs, Montana, and Nevada combined.

13

discovery.  The imposition of attorneys' fee sanctions under 28 U.S.C. § 1927 applies only to attorneys, not the parties in the lawsuit.  And for the Court to impose sanctions under its inherent authority, the Plaintiffs must prove bad faith – a showing that Plaintiffs clearly have not made here.  Finally, the extreme remedy of default judgment is not appropriate because any purported prejudice to Plaintiffs can be cured by allowing them additional time to review the documents.

### A.    Fed. R. Civ. P. 37 Does Not Apply

Rule 37 does not apply because Baxter has not violated any Court Order compelling production of documents.  Rule 37(b)(2)(C) contains two preconditions to sanctions: (1) the imposition of a court order pursuant to Rule 37(a); and (2) violation of that order.  *See* Fed. R. Civ. P. 37(b)(2)(C); *see also R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 15 (1st Cir. 1991).  This Court has not issued a Rule 37(a) order compelling Baxter to produce documents. While Plaintiffs may contend that the multiple Case Management Orders in this action are a reasonable substitute for Rule 37(a) Orders, the First Circuit has already rejected this argument. *See R.W. Int'l*, 937 F.2d at 16-18 (in reversing district Court's imposition of Rule 37 sanctions, the court noted that a scheduling order containing general instructions on the scope of discovery is not a "suitable surrogate for a Rule 37(a) order.").  Thus, Rule 37 sanctions are unwarranted.

### B.    28 U.S.C. § 1927 Does Not Apply

Likewise, 28 U.S.C. § 1927 is not applicable because that statute's authorization of the imposition of sanctions applies only to attorneys, not to parties:

> *Any attorney* or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

DSMDB-2121423v04

28 U.S.C. § 1927 (emphasis added); *Chambers*, 501 U.S. at 32.  Consistent with the statutory language, each of the cases cited by Plaintiffs involve the imposition of sanctions on attorneys only.  Here, Plaintiffs unambiguously seek to impose sanctions on Baxter itself, not its counsel.[26]

Even had Plaintiffs sought sanctions against the attorneys as opposed to Baxter, the imposition of attorneys' fees is clearly not warranted.  Courts have construed 28 U.S.C. § 1927 narrowly, using it only where there has been egregious behavior on the part of counsel amounting to abuse of the judicial process – a circumstance not present here.[27]  The actions of Baxter's attorneys in producing documents in this case in no way parallel the actions of those sanctioned by the courts in the cases cited by Plaintiffs.

### C.    Baxter's Good Faith Efforts Make The Use Of The Court's Inherent Sanctioning Power Inappropriate

The Court possesses inherent powers to sanction a party that "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *See Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (quoting *Chambers*, 501 U.S. at 45-46).  "[B]ecause of their very potency, inherent powers must be exercised with restraint and discretion" and "should be used sparingly and reserved for egregious circumstances." *Mullane v. Chambers*, 333 F.3d 322, 338 (1st Cir.

---

[26] *See* Plaintiffs' Memorandum in Support of its Motion for Sanctions, at 2 ("Plaintiffs request that this Court . . . sanction Baxter for its discovery abuses and enter a default judgment against Baxter.")

[27] *See, e.g., Beh-Hanson v. Arconium Specialty Alloys Co.*, No. 03-263-ML, 2004 U.S. Dist. Lexis 27732 at *22-23 (D.R.I. June 18, 2004) (Magistrate Judge recommended imposing attorneys fee sanctions against plaintiff's counsel for repeatedly failing to disclose that there were no documents responsive to several of defendant's discovery requests); *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990) (affirming award of Rule 11 and § 1927 monetary sanctions imposed against plaintiff's counsel for pursuing frivolous claims, insinuating that court was biased, and refusing to produce certain physical evidence before or during trial.  The Court also noted that sanctions should not be imposed for "mere negligence, inadvertence, or incompetence," but require display of "serious and studied disregard for the orderly process of justice") (*quoting United States v. Nesglo, Inc*, 744 F.2d 887, 891 (1st Cir. 1984) (additional citations omitted); *Pro Spice, Inc. v. Omni Trade Group, Inc*., No. 01-1661, 2003 U.S. Dist. Lexis 23831, at *2 (E.D. Pa. Dec. 16, 2003) (imposing monetary sanctions against defendant for producing 13,000 pages of documents the weekend before trial), *aff'd*, 128 F. Appx. 836 (3d Cir. 2005); *Apex Oil Co. v. Belcher Co. of N.Y., Inc.*, 855 F.2d 1009, 1019-20 (2d Cir. 1988) (affirming monetary sanctions against law firm representing defendants where law firm, on three separate occasions, forced plaintiff to file motions to compel and after each motion was filed "mysteriously" complied with the discovery requests).

15

2003) (internal citations omitted).  The *sine qua non* of the exercise of such powers is the existence of bad faith on the part of the offender. *See Roadway*, 447 U.S. at 765-66; *Chambers*, 501 U.S. at 49-50.  The "standards for bad faith are necessarily stringent," *Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975), and there must be "clear evidence" of bad faith or vexatiousness. *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983) (internal citations omitted). [28]

    Here, there is no evidence that Baxter's document production was made in bad faith. While a significant percentage of Baxter's document production was made later in the document production time period, Baxter's efforts to provide Plaintiffs responsive documents were made in good faith.  Baxter undertook a far-reaching search for responsive documents and employed hundreds of attorneys to review and produce responsive documents. These measures demonstrate that Baxter's discovery conduct was not vexatious, wanton, or performed for oppressive reasons.

    In *Mullane*, 333 F.3d 322, the First Circuit reversed a district court's decision to use its inherent authority to impose attorneys' fee sanctions against plaintiffs who violated a discovery order.  The court found that while the plaintiffs' failure to comply with the district court's order "might have been grounds for discovery sanctions . . . it [was] insufficient alone to support a finding that the [plaintiffs] or their attorneys 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Id.* at 338, *quoting Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (remaining citations omitted).  Unlike the plaintiffs in *Mullane*, Baxter has not violated any discovery order, and has done its best to comply with Plaintiffs' broad discovery requests.

    The facts of *Chambers* and another case cited by Plaintiffs, *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989), are also distinguishable.  In *Chambers*, the Supreme Court

---

[28] *Cf. Local 285, Service Employees Int'l Union v. Nonotuck Assocs., Inc.*, 64 F.3d 735, 738 (1st Cir. 1995) (affirming district court's imposition of attorneys' fees sanctions against defendant for vexatious conduct in failing to arbitrate claim; noting that "subjective bad faith is not a prerequisite to a fee award").

DSMDB-2121423v04

affirmed a district court's use of its inherent authority to impose sanctions on a defendant who willfully violated multiple court orders, attempted to deprive the court of jurisdiction, perpetrated fraud upon the court, and filed a frivolous appeal in an attempt to prevent the sale of a Louisiana television station.  The court noted that "[defendant's] entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court." *Chambers,* 501 U.S. at 51.  In *Aoude*, the First Circuit affirmed the district court's use of its inherent sanctioning power to dismiss an action where the plaintiff committed fraud on the court which "plainly hindered defendant's ability to prepare and present its case, while simultaneously throwing a large monkey wrench into the judicial machinery."  892 F.2d at 1118.  Baxter has neither violated Court orders nor perpetrated any fraud.

### D.      The Extreme Sanction of Default Judgment is Not Appropriate

The First Circuit has held that "[a] default judgment is itself a drastic sanction that should be only employed in an extreme situation." *Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415, 419 (1st Cir. 1976).[29]  Default judgments are disfavored because there is a general belief that "cases should be disposed of on the merits except in the most unusual circumstances." *Xaphes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 102 F.R.D. 545, 550 (D. Me. 1984) (citing *Richman v. Gen. Motors Corp.*, 437 F.2d 196 (1st Cir. 1971)).  While discovery misconduct may be sanctionable, it does not require imposition of the most severe sanctions available. *See Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 396 (1st Cir. 1990); *cert. denied*, 498 U.S. 891 (1990).  In *Anderson*, the First Circuit offered guidance regarding the proper sanction to impose:

> In general, a trial court confronted by sanctionable behavior should consider the purpose to be achieved by a given sanction and then craft a sanction adequate to serve that purpose. . . . [T]he judge should take pains neither to use an elephant

---

[29] In that case, the First Circuit affirmed the district court's entry of a default judgment after the defendant refused to agree to a settlement negotiated by his attorney.  534 F.2d at 419.  The defendant violated the trial court's prior orders directing him to secure new counsel  after his counsel had withdrawn due to lack of the defendant's cooperation and defendant's conduct prevented the prompt trial of the case.

DSMDB-2121423v04

gun to slay a mouse nor to wield a cardboard sword if a dragon looms. Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime.

*Anderson*, 900 F.2d at 395.  Plaintiffs ask the Court to use an elephant gun where there is no wrongdoing.

Plaintiffs rely on the unpublished opinion of *Pension Administration Committee of the Sheraton Corp. Ret. Plan for Salaried Employees v. Carroll*, No. 93-1585, 1993 U.S. App. Lexis 34032 (1st Cir. Dec. 30, 1993).  But in *Carroll,* the First Circuit affirmed the district court's sanctions – under Rule 37(b)(2) – because of the defendant's failure to comply with orders: (1) compelling the production of documents; (2) compelling defendant to submit to a deposition, and, (3) to pay a $2,000 sanction for discovery abuses. *Id*. at *13-15.  This Court has issued no Orders compelling Baxter to do anything.  At most, Baxter has produced large volumes of responsive documents.  These circumstances do not warrant a default judgment.[30]

Even when sanctions are appropriate, courts in the First Circuit consider the following factors: (1) the time and energy expended by the court, (2) the need of future litigants for access to the court; and, (3) the egregiousness of the conduct in question.  *See Xaphes*, 102 F.R.D. at 550-51.  Taking these factors into account, no sanctions are warranted here.  First, other than the instant motion, the Court has not expended time or energy on discovery disputes between Plaintiffs and Baxter.  Second, Baxter's conduct has not prevented future litigants from accessing the Court.  Allowing Plaintiffs additional time to review the documents will only serve to help streamline this litigation so it can be conducted in a more efficient manner, thereby freeing

---

[30] Other courts in this Circuit have refused to enter default judgment for alleged discovery misconduct. *See, e.g., Xaphes*, 102 F.R.D. 545 (refusing to enter default judgment where defendant deliberately violated the court's order to produce documents after being reminded by counsel on three separate occasions); *Fleet Nat'l Bank v. Tellier*, 171 B.R. 478 (D.R.I. 1994) (reversing entry to default judgment for defendant's late disclosure of two memoranda, where there was no prior specific order for production, defendant had responded to plaintiffs document request, and there was no evidence that the late disclosure resulted from anything other than careless mistake or substantially affected the determination of the case).

DSMDB-2121423v04

judicial resources that can be devoted to other litigants.[31]   Finally, Baxter's conduct was not

egregious; in fact, it was reasonable and to be expected given the overbroad discovery requests.

Close examination of the D.C. Circuit case relied on by Plaintiffs, *Webb v. District of Columbia*, 146 F.3d 964 (D.C. Cir. 1998), also demonstrates that sanctions are inappropriate. First, Plaintiffs have not been prejudiced by any alleged tardy document production.   Although Plaintiffs may be *inconvenienced* by having to commit resources to reviewing Baxter's documents, Baxter has been equally inconvenienced by broad discovery requests and having to employ more than a hundred contract attorneys to produce discovery.   There is no prejudice that results in Plaintiffs being unable to effectively prosecute their case.   Even if Baxter had produced the documents earlier, Plaintiffs still would have had to review them.   Plaintiffs have not and will not incur any extra costs related to Baxter's document production.   Any costs Plaintiffs incur in reviewing Baxter's documents are not "excess costs," but simply the cost of extensive discovery in a massive and complex litigation.   *See Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991) ("Under the 'American rule,' each party must bear its own expenses during litigation.").

Neither has Baxter's conduct placed an "intolerable burden" upon the Court.   Not only has no trial date in this matter yet been set (and is likely more than one year away), but the cases against Baxter are not even subject to existing summary judgment deadlines.[32]   An extension of time to permit Plaintiffs time to review the documents and conduct depositions will not affect any trial date.   As the *Xaphes* court states, "It seems to have escaped the attention of [] counsel

---

[31] The Court's recent delay of the start of the first trial against AstraZeneca will also allow the Plaintiffs more time to review documents.

[32] The summary judgment deadlines in the Montana and Nevada II cases are currently September 21, 2006.  As a result of this Court's March 6, 2006 granting of Baxter's motion for extension, however, the cases brought against Baxter by the MDL Plaintiffs and Montana are not subject to the summary judgment schedules applicable to the other Defendants.  In the Baxter cases, deadlines have been entered for completion of depositions and exchange of expert reports, but no summary judgment deadlines have yet been established by this Court.  As for the Nevada I case, while that case has been coordinated with the MDL actions for discovery, no summary judgment schedule has been entered by the state court.

DSMDB-2121423v04

that trial *is* the ultimate goal." 102 F.R.D. at 551 (emphasis in original). Plaintiffs seek to avoid
pre-trial responsibilities and obligations in favor of a pre-trial windfall.

Finally, sanctions are not necessary to deter future misconduct by Baxter. As the First
Circuit stated in *Anderson*, 900 F.2d at 394-95:

> As a deterrent, sanctions speak largely to systemic concerns. Courts cannot
> function smoothly if parties, and counsel, ignore the rules, overlook due dates, or
> flout court orders. In this sense, sanctions may be a useful tool in vindicating the
> court's authority, reminding those who need reminding of the protocol, and
> ensuring orderliness in the judicial process.

Baxter is well aware of the Court's authority and has employed more than 100 attorneys so
Baxter could produce documents in an orderly and efficient manner. It may have taken longer to
complete the document production than Baxter anticipated, but that miscalculation does not
warrant sanctions. In the end, Plaintiffs' complaints can be remedied by granting them
additional time to review documents. Plaintiffs reject this solution, without discussion.

## IV.     CONCLUSION

Despite Baxter's production of more than one million documents, Montana and Nevada
ask the Court to impose the extreme remedy of default judgment. But Baxter has not engaged in
any bad-faith conduct or willfully or deliberately violated any Court orders. To the contrary,
Baxter spent over 100,000 hours and millions of dollars to produce responsive documents. This
frivolous motion is nothing more than a thinly-veiled attempt by Montana and Nevada to avoid
reviewing the very documents they asked for. Accordingly, the motion for sanctions and default
judgment joined in by Montana and Nevada should be denied and, because it lacks any factual or
legal basis, the Court should also require Montana and Nevada to reimburse Baxter for the costs,
including attorneys' fees, associated with the preparation of its Opposition papers.

## V.     REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Baxter hereby requests oral argument on this Motion.

20

## CERTIFICATE OF SERVICE BY LEXIS NEXIS FILE AND SERVE

Docket No. MDL 1456

I, Shamir Patel, hereby certify that I am one of the attorneys for Defendant Baxter Healthcare Corporation and that, on August 4, 2006, I caused copies of BAXTER HEALTHCARE CORPORATION'S OPPOSITION TO MONTANA AND NEVADA'S JOINDER IN THE MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File and Serve.

_/s/ Shamir Patel_____
Shamir Patel

DSMDB-2121423v04