UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

DECLARATION OF MERLE M. DELANCEY IN SUPPORT OF BAXTER
HEALTHCARE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR SANCTIONS AND
<u>DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE</u>

I, Merle M. DeLancey, declare under penalty of perjury under the laws of the United States of America that:

1. I am one of the attorneys for Defendant Baxter Healthcare Corporation and have personal knowledge of the matters set forth herein.

2. After Plaintiffs' March 31, 2004 Omnibus Requests for Production and Interrogatories, Baxter made numerous attempts to narrow and limit them.

3. On July 14, 2004, I wrote an detailed letter, including supporting documentation, to Plaintiffs' attorney Sean Matt. The letter requested, among other things, that certain of the "Baxter Subject Drugs" be eliminated from the MDL case. A true and correct copy of that letter is attached hereto as Exhibit A.

4. Baxter did not hear from Plaintiffs regarding the limitations requested in the July 14, 2004 letter until April 2005, and only after I called Sean Matt inquiring as to when Plaintiffs

intended to respond to my July 2004 letter. Indeed, in April 2005, Sean Matt stated that he was not sure he was still responsible for Baxter and that someone would get back to me in three to four weeks. *See* Exhibit C.

5. Plaintiffs agreed to eliminate 6 of the 19 Baxter Subject Drugs from the litigation. They agreed to eliminate Aggrastat because Baxter demonstrated that the drug was simply manufactured by Baxter for sale by another company. Five other products – Ativan, Brevibloc, cisplatin, doxorubicin, and vancocin – were removed from the case because Baxter demonstrated that the usage of these products is almost exclusively inpatient, and therefore are not reimbursed based upon AWP.

6. After Plaintiffs' April 20, 2005 clarification of its prior sales transaction data document requests, (see Exhibit E hereto), I asked counsel for Plaintiffs whether Baxter should focus first on the production of sales transaction data or on the production of electronic and hard copy documents. Plaintiffs asked for the sales transaction data, so Baxter then devoted its efforts first to capturing and producing transaction the data. These efforts required analysis and downloading of data from multiple separate systems - the current J.D. Edwards system, and the historical legacy systems for Baxter's BioScience and Medication Delivery divisions.

7. Baxter produced sales transaction data for the Subject Drugs on August 14, 2005 and September 19, 2005. The data described all sales transactions for the relevant drugs and therapies from January 1, 1991 through March 30, 2005, including quantity, price, customer name and address, rebate and chargeback data, etc. This production consisted of 16 gigabytes of data, the equivalent of over 250,000 pages of information.

8. Counsel for Baxter devised a rigorous review process in order to respond to the remainder of Plaintiffs' Omnibus Requests. So as not to miss any employee with potentially relevant information, Baxter contacted its Human Resources department and obtained a list of all

2

potentially relevant Baxter employees of the divisions at issue in the litigation. Baxter reviewed this list, compared it with previous lists, and revised the list in order to confirm the accuracy of the ultimate list of employees to be used. The remaining employees – nearly 600 in total – were sent a questionnaire asking about the relevant documents and the location of such documents. All employees who responded in the affirmative, and those employees whose status was uncertain, were interviewed by Baxter's in-house legal team or outside counsel. Overall, more than 550 employees were interviewed. Each employee's pertinent documents were inventoried by category – hard copy documents, email, documents on computer hard drive, shared network drives, etc. Following the interview process, teams of vendors began the process of capturing the potentially relevant documents.

9. For technical and logistical reasons, it was not possible to capture electronically only those emails or electronic documents (on computer hard drives or network drives) that were responsive to Plaintiffs' Omnibus Requests. Therefore, a determination was made that employees who had a significant number of responsive documents would have their entire hard drives "ghost imaged," and all of their email captured. Hard copy documents were collected from each individual office and/or common area where they were maintained.

10. Baxter legal representatives also examined several areas of shared files, for example, BioScience and Medication Delivery contract and bid files. In addition, Baxter located thousands of boxes of files in two archive locations, one outside Chicago and the other outside Los Angeles. Hundreds of these boxes were selected for copying and scanning as well.

11. In the end, Baxter collected for review more than 5 million potentially relevant documents. These documents were loaded into two different electronic discovery tools (Concordance and EED) and reviewed by scores of contract attorneys hired specifically for this purpose. The chart below describes the monthly contract attorney effort over time. At the height

of the review, Baxter had well over 100 contract attorneys reviewing documents. (Baxter initially did not have as many attorneys engaged in review of documents for production because Baxter was in the process of interviewing employees and collecting documents.) In addition to in-house and outside counsel Baxter also used teams of contract attorneys to assist with this process. A total of 88,950 contract attorney hours - nearly 43 man years - was spent on this "first review" effort. This figure does not include the thousands of hours spent by in-house and outside counsel also working on document production efforts. The total number of hours spent on discovery efforts in this case was well over 100,000. Baxter spent in excess of $10 million on discovery efforts.

| MONTH | TOTAL HOURS BILLED BY CONTRACT ATTORNEYS FOR MONTH |
| --- | --- |
| Aug 05 | 191 |
| Sept 05 | 326 |
| Oct 05 | 653 |
| Nov 05 | 770 |
| Dec 05 | 775 |
| Jan 06 | 1,263 |
| Feb 06 | 3,751 |
| Mar 06 | 9,217 |
| April 06 | 21,433 |
| May 06 | 30,438 |
| June 06 | 20,133 |
|  | **TOTAL CONTRACT ATTORNEY HOURS 88,950** |

12. After this initial review by contract attorneys for relevance and privilege, many additional steps had to be completed before the documents could be produced. Flow charts

4

describing these steps are attached hereto as Delancey Decl., Exs. F and G. In summary, the process included a secondary quality review, conversion of selected documents to TIFF format by a third-party vendor, redaction of documents that contained privileged or patient-identifying information, assignment of Bates numbers to the documents, formatting and delivery of the proposed production to Baxter's attorneys, proofing that production, and, finally, production to Plaintiffs. Because of these many steps, the process could not possibly take place on a weekly, or even bi-weekly, basis. Rather, Baxter had to wait until significant numbers of documents were reviewed by the contract attorneys dedicated to this case before undertaking a production effort.

       13. Baxter reviewed over five times more documents than the number of documents it ultimately produced to Plaintiffs. DeLancey Decl., ¶ 13. The charts below describe those numbers.

**BAXTER REVIEW**

| System/type of document | # of documents reviewed by Baxter |
|---|---|
| Concordance[1] | 169,502 |
| EED[2] – electronic | 3,337,842 |
| – scanned set | 1,569,128 |
| **TOTAL** | **5,076,472** |

**PRODUCTION TO PLAINTIFFS**

| System/type of document | # of docs produced to Plaintiffs |
|---|---|
| Concordance (CDs) | 49,878 |
| EED (hard drive) | 395,475 |
| Lextranet (repository)[3] | 519,884 |
| **TOTAL** | **965,237** |

    14. Baxter made a total of 29 productions, totaling nearly one million documents. Baxter produced sales transaction data, archived files, contract files, sales and marketing documents, correspondence with pricing compendia, field sales notes, e-mails, IMS data, policy manuals, and organizational charts. A summary of these production efforts is set forth below:

---

[1] Concordance is one of the electronic discovery tools used by Baxter contract attorneys to review potentially responsive documents.

[2] EED is another of the electronic discovery tools used by Baxter contract attorneys to review potentially responsive documents. The "electronic" refers to emails and other electronic data received from Baxter; "scanned sets" are hard copy documents that were scanned into the EED tool for review. Most of these scanned sets came from archives.

[3] In this on-line repository, Plaintiffs can review electronic documents in their native format, run full text searches, search by custodian, and mark documents for Bates stamping and delivery in TIFF format. In Plaintiffs' papers, they cite a document count of approximately 543,000 as the number we provided to them. *See* Fegan Decl. ¶ 6. This was an accurate count at the time given for *all* documents on Lextranet – those that were produced in the MDL (to Ms. Fegan) and in the Montana/Nevada litigation (to Ms. Jeniphr Breckenridge of Ms. Fegan's firm). The number quoted here is the current number of *MDL* documents loaded to Lextranet.

- 12/13/2002 – Baxter produces documents produced in prior government investigations pursuant to CMO 5. Baxter supplements this production on 3/3/2004 and 6/3/2005.

- 6/17/2005 and 6/27/2005 – Baxter produces organizational charts, price agreements, price lists, contracts, customer information sheets, and marketing plans to Plaintiffs.

- 8/4/2005 and 9/19/2005 – Baxter produces 16 gigabytes of sales transaction data related to all sales of Subject Drugs for Baxter's Medication Delivery and BioScience divisions from January 1, 1991 through March 30, 2005.

- 9/30/2005 – Baxter produces BioScience contract files to Plaintiffs.

- 12/16/2005, 12/23/2005, 1/19/2006, 1/27/2006, 2/2/2006, 2/10/2006, 2/23/2006, 3/7/2006, 3/10/2006, 3/23/2006, and 5/11/2006 – Baxter produces responsive documents from its Concordance database in Summation-compatible format, as requested by the Plaintiffs. Total produced includes 10 CDs and 10 DVDs.

- 3/13/2006 – Baxter produces specifically requested IMS data to Plaintiffs.

- 5/11/2006, 5/30/2006, 6/1/2006, 6/19/2006, 6/22/2006, 6/27/2006, 6/29/2006, and 7/10/2006 – Baxter produces electronic documents and images of scanned hard copy documents from its electronic discovery tool. Total produced includes 11 hard drives.

- 5/26/2006 - Baxter notifies Plaintiffs that it has loaded remaining documents to an on-line repository that is text searchable. *See* Fegan Decl., Ex. 25.

15. Plaintiffs make much of the fact that a large volume of Baxter's production came at or just after the close of discovery. Baxter does not deny that this is the case, but vigorously denies that this was "an improper attempt to manipulate discovery around the known discovery cut-off date for purposes of obfuscating the truth and purposely undermining the integrity of the

Court and ability of Plaintiffs to prosecute this litigation." *See* Plaintiffs' Memorandum at 1. As described above, the production process was mammoth and took longer than anyone anticipated.

    16. Attached are true and correct copies of the following exhibits:

| | |
|---|---|
| A. | July 14, 2004 letter from Merle M. DeLancey to Sean Matt |
| B. | Declaration of Michael Bolton dated May 19, 2006 (submitted to Plaintiffs in connection with 30(b)(6) notice). |
| C. | April 21, 2005 letter from Merle M. DeLancey to Sean Matt |
| D. | June 27, 2005 letter from Merle M. DeLancey to Elizabeth Fegan |
| E. | April 20, 2005 letter from Sean Matt to Merle M. DeLancey |
| F. | Flow chart describing hard copy production process |
| G. | Flow chart describing electronic document production process |

Dated: July 26, 2005　　　　　　　　　　　　　　　　　　　　　　/s/ **Merle M. DeLancey**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Merle M. DeLancey

DSMDB-2117312v01

## CERTIFICATE OF SERVICE BY LEXIS NEXIS FILE AND SERVE

Docket No. MDL 1456

    I, Shamir Patel, hereby certify that I am one of the attorneys for Defendant Baxter Healthcare Corporation and that, on July 26, 2006, I caused copies of the DECLARATION OF MERLE M. DELANCEY IN SUPPORT OF BAXTER HEALTHCARE CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File and Serve.

                                                                              **/s/ Shamir Patel**
                                                                              Shamir Patel