# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 |
|  | ) | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) | Judge Patti B. Saris |

## DECLARATION OF MICHAEL J. BOLTON

I, Michael J. Bolton, declare as follows:

1.    On or about June 20, 2005, and pursuant to Fed. Rule Civ. P. 30(b)(6), Baxter Healthcare Corporation ("Baxter") was served with a deposition notice ("June Notice") seeking deposition testimony regarding various matters relating to document retention in this litigation.

2.    I am currently employed as counsel for Baxter and have been designated as the person who will testify on Baxter's behalf regarding the matters outlined in the June Notice.

3.    Without waiver of any objection or applicable privilege, Baxter provides the following information in response to the June Notice.

Policies

4.    Baxter maintains a corporate Record Management Policy.  Similar policies have existed over time.  Previously, individual Baxter business units may have published document management policies applicable to those business units.

5.    Baxter's Record Management Policy is promulgated to Baxter employees via Baxter's intranet.  Baxter also trains employees in record management by direct training, records champions, and e-learning modules.

2079009.04

HIGHLY CONFIDENTIAL

6.    Baxter's Corporate Records Center also published a practice manual. That policy provided, in pertinent part, that a notification of destruction form would be issued when records stored at the center have reached the recommended destruction date. The notice is issued to the appropriate custodian to confirm whether the documents in question may be destroyed. Once the signed destruction notification form has been returned, documents still may not be destroyed until Baxter's Law and Tax Departments have also granted approval for destruction. Since the initiation of various investigations and litigation concerning Baxter's sales and marketing practices relating to average wholesale price ("AWP"), the Baxter Law Department, to the best of my knowledge, has *not* approved the destruction of any documents that Baxter reasonably believed might contain information relevant to AWP issues.

Email Policies

7.    In the fall of 2001, Baxter revised its document retention policy as it related to electronic mail ("email"). Because of ever-increasing costs and technical limitations, Baxter determined that it would no longer retain on a company-wide basis emails that were more than 90 days old.

8.    Under this policy, emails in employee in-boxes are automatically deleted from the applicable email server after 90 days. There is a 14 day retention cycle for automatically deleted emails. Thereafter, emails are not backed up on a server or on tape. Users can elect to archive messages to their local archive file. Users then must follow the Baxter retention policy regarding the length of time that the emails will be retained. Baxter generally encourages employees not to save too many emails to their hard drives or personal drives because of space limitations, but this is not a written or formal policy.

2079009.04                                          HIGHLY CONFIDENTIAL

9.     Recognizing its obligation to attempt to preserve emails relating to AWP, Baxter informed employees that any emails relating to AWP should be preserved by capturing and saving those emails on individual employee computers or by printing relevant messages and retaining them in paper form.

<u>Document Retention</u>

10.    It appears that Baxter first initiated procedures in 1996 designed to suspend document destruction practices and preserve information relating to the pricing of drugs and therapies and AWP issues.

11.    In January 1996, the Department of Justice ("DoJ") issued a civil investigative demand to Baxter seeking documents relating to drugs and therapies sold by three Baxter business units (IV Systems, Clintec, and Hyland).  DoJ requested documents relating to the direct price, wholesale acquisition cost, and/or average wholesale price of ten drugs and therapies.

12.    Baxter identified those employees most likely to possess relevant documents and directed them to identify and collect any responsive documents.  The employees were also instructed not to destroy any responsive documents.  Finally, the employees were instructed to review computer files for electronic documents and to print and preserve hard copies of the documents.

13.    In November, 1997, Baxter issued similar document retention instructions to employees following receipt of a subpoena issued by the Office of the Inspector General, Department of Health and Human Services ("OIG").  The OIG subpoena sought documents relating to the pricing of drugs and therapies, including Autoplex-T, Gammagard IVIG, Gammagard S/D IVIG, Hemofil M AHF, Proplex-T, and Recombinate AHF.  As in 1996, Baxter identified those employees most likely to possess relevant documents and directed them to identify and collect any responsive documents.  The employees were also instructed not to destroy any responsive

3

HIGHLY CONFIDENTIAL

documents. Finally, the employees were instructed to review computer files for electronic documents and to print and preserve hard copies of the documents.

14.     In 2000, Baxter received a request from the State of Texas for documents relating to AWP, wholesale acquisition cost, direct acquisition cost, and related pricing information. As in 1996 and 1997, Baxter identified those employees most likely to possess relevant documents and directed them to identify and collect any responsive documents. The employees were also instructed not to destroy any responsive documents. Finally, the employees were instructed to review computer files for electronic documents and to print and preserve hard copies of the documents.

15.     Thereafter, and on multiple occasions in 2002, 2003, 2004, and 2005, Baxter instructed employees to locate and preserve AWP related documents and information sought by governments and private litigants, including, but not limited to, plaintiffs in this litigation. As the scope of Baxter products and therapies at issue expanded, the number of Baxter employees contacted regarding document retention, preservation, and collection similarly expanded.

                    Document Collection

16.     During the time period, 1996-2002, Baxter collected and produced various AWP documents to DoJ, the OIG, and the states of California, Texas, and Illinois. These documents had been collected in conjunction with various government requests for documents. Pursuant to CMO No. 5, Baxter produced these documents to plaintiffs in this litigation.

17.     Counsel for Baxter and plaintiffs completed negotiations regarding the scope of discovery in this litigation in the summer of 2005. Baxter then began the process of physically collecting additional documents for production to plaintiffs.

18.     As explained in detail below, Baxter has identified and has produced/will produce millions of pages of hard copy documents and hundreds of gigabytes of electronic information to plaintiffs in this litigation. Baxter has interviewed

HIGHLY CONFIDENTIAL

hundreds of Baxter employees, present and former, in searching for responsive information to produce to plaintiffs in this litigation.

19.     Baxter contacted nearly 600 employees seeking information responsive to the AWP litigation.

20.     Baxter collected approximately 4.21 million pages of documents from active and archived employee files located in Baxter storage facilities and offices in Deerfield, IL, Round Lake, IL, Buffalo Grove, IL, Westlake Village, CA, and Los Angeles, CA, and at remote employee locations across the United States.

21.     Baxter produced seven computer disks consisting of millions of lines of sales transaction data that provide all BioScience and Medication Delivery sales transaction data for subject drugs in this litigation for the time period from 1991 through Q1 2005.

22.     Baxter collected 353 gigabytes of data from 165 employee hard drives, 12 backup tapes, 19 computer disks and 5 DVDs.  This data was collected from Baxter employee computers and network servers and includes network shared files, Lotus Notes emails, personal network files, and files saved on local hard drives.

23.     All of the above documents and electronic data has been/are being loaded to an electronic discovery tool and is in the process of being reviewed by approximately 125 contract attorneys.

24.     As of May 2006, nearly 3.27 million electronic documents collected from more than 320 document custodians are in final stages of production.

                Personal Computers

25.     Following negotiations described in paragraph 17, Baxter began the document collection process.  This process happened to take place following multiple rounds of Baxter corporate restructuring.  During this document collection process, Baxter determined it had not retained the personal computers of approximately 65 individuals who had left Baxter's employment (at the time, Baxter had approximately

5

HIGHLY CONFIDENTIAL

40,000 employees worldwide). Previously, and in addition to informing employees to retain information and documents, Baxter had provided a list of employees to its Human Resources Department ("HR") and asked HR to collect electronic and hard copy documents from any of those employees who might leave Baxter. The information and documents were to be collected during HR's exit interviews of any such employees. The 2005 document collection process revealed that the exit interview process had not occurred.

26.     Thereafter, Baxter established a notification system in which its Human Resources Department notifies the Law Department and the IT Department of the departure of Baxter employees thought to have relevant information. Documents for those employees are collected subsequent to the notification of their termination.

27.     Of those employees leaving Baxter during the relevant time period (2000 through the summer of 2005), Baxter subsequently determined that there were approximately 22 additional former employees from whom personal computers had not been collected.

28.     Baxter believes that the breadth of its search for documents and electronic information and the massive amount of documents and electronic information collected for production has substantially minimized any likelihood that relevant information existed on the personal computers that was not located elsewhere and has been or will be produced. Baxter also believes that to the extent any potentially relevant document or email might have existed on one of the personal computers not collected, it is highly likely that the same document or email was collected from a current employee who had received, sent, or otherwise possessed the same document or email.

2079009.04

6

HIGHLY CONFIDENTIAL

29.     Upon discovery that certain personal computers had not been retained, Baxter began an exhaustive effort to determine whether the former employees would likely have had responsive information.  Baxter also undertook efforts designed to identify other sources of the documents or information that might have existed on the former employee's personal computers.  Baxter's efforts are described above in paragraphs 18 through 24.

30.     As a result of its efforts, Baxter has determined that many of the former employees would not have stored relevant information on personal computers.  Baxter also believes that any relevant information that might have existed on personal computers was likely captured via other techniques or from other document custodians.  For example, Baxter determined that some of the former employees worked for organizations not relevant to this litigation or were responsible for drugs/therapies not relevant to this litigation.  For example, Baxter's anesthesia business unit employee or Baxter employees who worked exclusively in the context of in-hospital therapies would not have relevant information.  Baxter also determined that some of the former employees' files had been transferred to existing Baxter employees who assumed the responsibilities and documents of the former employee and those transferred files have been reviewed for purposes of document production.  Further, Baxter located the computers of some of the former employees and then reviewed the computers for purposes of document production.  Finally, Baxter actually located information and documents relating to former employees (on servers, electronic tape/media, and in Baxter storage facilities).

31.     To date, Baxter has located electronic data for approximately 60 former employees.  Baxter retained and is reviewing data from the hard drive files and hard drive email archives for approximately 26 of the former employees.  Baxter retained and is reviewing data from the 90-day retention email in-box files for approximately 36 of the former employees.  Baxter retained and is reviewing data from ghost images

2079009.04                                                    HIGHLY CONFIDENTIAL

captured from hard drives for approximately 7 of the former employees.  Finally, Baxter retained and is reviewing server data associated with approximately 18 of the former employees.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on ___*17 May 2006*___.

*Michael J. Bolton*
Michael J. Bolton

2079009.04                                                    HIGHLY CONFIDENTIAL