# EXHIBIT D

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street NW • Washington, DC 20037-1526
Tel (202) 785-9700 • Fax (202) 887-0689
Writer's Direct Dial: (202) 828-2282
E-Mail Address: DeLanceyM@dsmo.com

June 27, 2005

**BY FACSIMILE & OVERNIGHT MAIL**

Elizabeth A. Fegan, Esq.
Hagens Berman Sobol Shapiro LLP
60 West Randolph St.
Chicago, Il 60601

Re:   30(b)(6) designations for Baxter Healthcare Corporation

Dear Beth:

This letter confirms our July 17, 2005 telephone conversation.

A.   Baxter Anesthesia/Critical Care ("ACC")

As we discussed, we continue to believe that it is a waste of both Plaintiffs' and Baxter's resources for Plaintiffs to continue to pursue the four ACC drugs (lorazepam, Brevibloc, doxorubicin hcl, and cisplatin) identified in Attachment A to the AMCC.

   1.   Doxorubicin hcl, and cisplatin

ACC does not market doxorubicin hcl or cisplatin to outpatient setting providers. ACC does not have a dedicated outpatient sales force detailing these drugs to any oncology clinic or infusion center. Thus, there are no marketing or clinical detailing materials for these drugs other than specification sheets that identify the vial size, case dimension, and shelf pack. Nor does ACC send any direct mail or engage in direct marketing with respect to these drugs. ACC does publish a wholesaler catalog that identifies the prices at which wholesalers can purchase, all of its other drugs, including these three drugs.

In addition, these drugs are not even marketed to hospitals for inpatient utilization. They are generally sold based solely upon a hospital's request to purchase these drugs. This usually occurs when a hospital has no other source of supply. As further support to the data provided in my July 14, 2004 letter to Sean Matt, attached hereto is IMS clinic data which covers the outpatient market demonstrating that, with respect to cisplatin and doxorubicin, Baxter ACC sales of cisplatin and doxorubicin hcl represent less than 1% of the outpatient market (BAX MDL 0024218 - 0024224).

1177 Avenue of the Americas • New York, NY 10036-2714
Tel (212) 835-1400 • Fax (212) 997-9880
www.DicksteinShapiro.com

1942348

Elizabeth A. Fegan, Esq.
June 27, 2005
Page 2

  2. <u>Lorazepam,</u>

As for Lorazepam, ACC has a 50% market share in the IMS clinic/outpatient market for this drug. However, 50% of the outpatient market represents less than 1% of the total sales market for Lorazepam. (See BAX MDL 0024218 - 0024224).[1] For the reasons discussed above and in my July 14, 2004 letter -- namely, no outside sales force, no marketing materials, and limited sales to providers in the outpatient setting -- Lorazepam too should be dropped from this case.

  3. <u>Brevibloc</u>

As with the drugs discussed above, ACC does not have a dedicated outpatient sales force selling or marketing Brevibloc. Brevibloc is primarily sold to hospitals through wholesalers. Very limited amounts are sold to surgery centers and physicians' offices. Enclosed are Brevibloc Marketing Plans for 2002-2004. (BAX MDL 0024227 - 0024506). From these Plans it can be gleaned that Brevibloc is not an appropriate drug for this case. First, the clinical indications for Brevibloc demonstrate that Brevibloc is primarily administered in hospitals. Brevibloc is an ultrashort-acting beta blocker with a 2 minute onset and 9 minute elimination half-life. It is indicated for the treatment of supraventricular tachyarhythmias, rapid control of ventricular heart rate in patients with atrial fibrillation or atrial flutter in perioperative, postoperative, or other emergent circumstances, and tachycardia and hypertension that occur during the perioperative period, induction and tracheal intubation, surgery, emergence from anesthesia, and/or postoperative period. See e.g. 2002 Marketing Plan at pages 2, 12, 26-34. Second, the Marketing Plans demonstrate that the focus of the ACC sales force is hospital based. Specifically, "Brevibloc is currently used most often in the Anesthesia and Critical Care areas of the hospital." See e.g. 2002 Marketing Plan page 2. The Plans further demonstrate that the sales and marketing targets for Brevibloc are hospital-based anesthesiologists, emergency medicine physicians, Cardiology and Emergency Departments, nurse anesthetists and critical care nurses, and hospital pharmacies. See e.g. 2002 Marketing Plan pages 3, 5, 35-37. Third, and most significant, is the fact that no where in the approximately 100 page Plans is there any mention of AWP, "the spread," or marketing Brevibloc on the basis of reimbursement.

Also enclosed is IMS total market sales and IMS clinic data for Brevibloc. (BAX MDL 0024225 - 0024226). Baxter's market share in the outpatient setting (i.e., IMS clinic data) for the past four years has ranged from a low of 1.6% to a high of 3.4%. For these reasons, we reiterate our request that plaintiffs not pursue Brevibloc.

---

[1] BAX MDL 0024218 – 0024224 reflects total market sales for Lorazepam. IMS includes all channels in total market sales -- non-federal hospital, federal hospital, mail order, clinic, prisons, chain stores, food stores, HMOs, home health care, retail independents, long term care, universities, and all other channels.

Elizabeth A. Fegan, Esq.
June 27, 2005
Page 3

In summary, these four drugs are so minimal in the overall scheme of ACC's business that they have been described to us, on more than one occasion, as being "rounding errors."

Notwithstanding, and as we discussed, we are prepared to designate two additional 30(b)(6) witnesses for ACC. Previously, we designated Juliana Reed as a 30(b)(6) witness for ACC with respect to the reimbursement component of topic area 2, and topic areas 4 and 6. The two additional witnesses are Dr. Raul Trillo and Kathy Kovalic. Dr. Trillo will testify with respect to Brevibloc, and Kathy Kovalic will testify with respect to lorazepam, doxorubicin hcl, and cisplatin. For the applicable drugs, each witness is being designated for topic areas 1, 3, and 5, and the price paid by physicians component of area 2.

B.   Baxter BioScience

In response to your allegations of "gaps" in our 30(b)(6) deponents for the BioScience division, we will agree, without agreeing to your allegations, to produce Larry Guiheen with respect to categories 1, 2 (pricing component), and 3, and Jennifer Rogers with respect to area 6.

With respect to topic area 2, you agreed to defer seeking additional testimony. As to topic area 4, you agreed that in lieu of taking additional testimony, you would accept a list of the names of BioScience employees who historically have communicated with the Publishers. The following current or former BioScience employees communicated with Publishers during the Relevant Time Period:

<u>Medication Delivery</u>

Julianna Reed
Kathleen Sullivan
Ester Stein

<u>BioScience</u>

Michael Bradley
Kyle Bush
Pam Koo
Judith Reuter
John Sonnier
Bernadette Connolly

Elizabeth A. Fegan, Esq.
June 27, 2005
Page 4

       Please let me know when you would propose to take the depositions of Larry Guiheen and Jennifer Rogers and I will check their availability.

                                        Sincerely,

                                        Merle M. DeLancey Jr.    /E.A.H.

MMD/mgm