UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| | MDL No.1456 |
| | Civil Action No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL CONSOLIDATED PRIVATE CLASS ACTIONS | ) ) ) ) ) |
| | Judge Patti B. Saris |
| | Chief Magistrate Judge Marianne B. Bowler |

**TRACK TWO PROPOSAL CONCERNING THE APPOINTMENT OF A NEUTRAL EXPERT TO ADVISE THE COURT ON TRACK TWO CLASS CERTIFICATION**

At yesterday's status hearing, the Track Two defendants suggested that the Court appoint a neutral expert to advise the Court on issues pertaining to class certification for Track Two. This submission expands on that suggestion. As explained below, Dr. Berndt's prior report expressly left unresolved certain key issues on which the parties and their experts have now submitted clarifying evidence. The re-appointment of Dr. Berndt – or, if he is unavailable, another neutral expert – will assist the Court in resolving the critical issues left open following the Track One class certification proceedings.

When Dr. Berndt filed his initial reports (Feb. 9, 2005 and August 9, 2005), the principal focus of the pending motion for class certification as to Track One was on (a) self-administered drugs, and (b) brand name drugs under patent, rather than multisource drugs. Conversely, as Dr. Berndt recognized in his reports, there were gaps in the record both as to physician-administered drugs and multi-source drugs. In particular, Dr. Berndt noted that these issues merited "thoughtful and concise clarification by both Plaintiffs' and Defendants' experts."[1]

---

[1] August 9, 2005 Memorandum from Professor Ernst R. Berndt to Judge Patti B. Saris re: Pharmaceutical Average Wholesale Price Litigation (M.D.L. No. 1456, Civil Action No. 01-12257-PBS) (Berndt Memorandum), at 3; *see also* Feb. 9, 2005 Report of Independent Expert Professor Ernst R. Berndt to

1

The Track Two defendants' discovery record and expert reports have focused on addressing Dr. Berndt's concerns and clarifying these issues. Now that these record gaps have been filled, the Court would likely benefit from a neutral expert's further counsel on these issues.[2] In light of the industry-specific and somewhat technical issues implicated by the parties' class certification arguments, the Court may also wish to invite the court-appointed expert to attend the September 12, 2006 Track Two class certification hearing on behalf of the Court.

**I.    A Supplemental Report Addressing the New Record Evidence Regarding the Feasibility and Accuracy of Crosswalking Multi-Source Drugs Would Be Beneficial to the Court and the Parties**

Multi-source drugs raise significant new issues for the Track Two class certification proceedings. Unlike Track One, most of the Track Two subject drugs are multi-source drugs, which create a host of issues which were not present in the Track One class certification proceedings. Foremost among them is the crosswalking issue, a touchstone that cuts across the central elements of causation, injury, deception and class membership. And while it presents itself primarily with multi-source drugs, it is also present with certain branded drugs[3] as well. As Dr. Berndt concluded in his Report, "Just how labor intensive crosswalking will be, and how individualized the process will need to be in order to be reliable, particularly going back in time to the 1990s, is unclear to me at this point. This is an important issue that merits thoughtful

---

Judge Patti B. Saris (Berndt Report) ¶¶ 98, 197, 228-30, 233. The Court acknowledged in its August 2005 Order that Dr. Berndt considers the record as "unsettled" on the issue of whether the reimbursement payments of third party payors ("TPPs") to physicians for PADs were based on AWP. *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 75 (D. Mass. 2005), *citing* Berndt Report ¶ 98.

[2] In CMO 24, the Court indicated that it would "rely on the expert report of Professor Berndt" in connection with plaintiffs' motion to certify as to the Track Two Defendants. CMO 24, ¶ 4.

[3] For instance, Ortho Biotech's branded product Procrit® and Amgen's branded product Epogen® are the same biologic (epoetin alfa) and share a common federal reimbursement (J-code or Q-code) code. Since provider statements typically refer to epoetin alfa or the federal reimbursement (J or Q) code rather than identifying the particular product (either Procrit® or Epogen®), extensive crosswalking will be necessary to determine whether the provider administered Epogen® or Procrit®.

and concise clarification by both Plaintiffs' and Defendants' experts."[4] In his August 9, 2005 Memorandum, Dr. Berndt declared that "the crosswalk is more likely to be feasible and reliable for the more recently introduced and typically more expensive biotech physician-administered drugs, and much less likely to be feasible and reliable for older, and in particular, multi-source off-patent and generic products."[5] Dr. Berndt concluded that "Whether the crosswalking will be sufficiently reliable and comprehensive in the class certification context remains I think an open empirical issue."[6]

As part of Track Two Defendants' Memorandum in Opposition to Class Certification, defendants submitted an expert report by Steven Young, which explains that because all competing sources of a multi-source drug are billed within the same J-code at a single reimbursement rate, the manufacturer, dosage, and specific drug cannot be identified.  In addition, multi-source drugs are rarely reimbursed based on the AWP of the manufacturer of the drug because Medicare bases multi-source reimbursement on the lower of the median AWP for all drugs within the J-code or the lowest brand-name AWP.[7]  Documents recently produced by the Massachusetts Medicare Part B carrier confirms these individual variables and the role that discretion by Part B carriers plays in determining reimbursement for multi-source drugs.[8]  The crosswalking issue bears directly on the standing of the proposed Class 1 representatives, injury,

---

[4] Berndt Report ¶ 197.

[5] Berndt Memorandum, at 2.  "Unlike the 11-digit NDC codes for self-administered drugs, the 5-digit J-codes for physician-administered drugs are not unique for product size, packaging or dose, implying that a single billable J-code can be composed of numerous distinct NDC codes, thereby obfuscating not only which particular NDC product was actually administered, but how many units were utilized.  This creates significant difficulties in tracking physician-administered drug utilization and unit prices." Berndt Report ¶ 194.

[6] Berndt Memorandum, at 3.

[7] Young Decl. ¶¶ 12, 13, 25-43.  Perhaps for this reason, the Court has noted that "multiple source drugs do not fit in the paradigm described in the complaint." *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 n.11 (D. Mass. 2003).

[8] *See* Exs. 14-23 of the Appendix to Track Two Defendants' Memorandum in Opposition to Class Certification ("Appendix"), Docket No. 2704.

2061323v1

causation, ascertainability of the class, and the inability to determine who is in the class without individual fact-finding and litigation.

### II. A Supplemental Report Addressing The New Record Evidence Regarding Whether PADs Are Reimbursed On The Basis of AWP Would Be Beneficial to the Court and the Parties

Dr. Berndt found the record "unsettled" as to whether payments to physicians for PADs "are based predominantly on AWP."[9] He cited plaintiffs' experts Hartman's and Rosenthal's opinions on the point, noting that each relied on the Dyckman & Associates 2002 report.[10] Accordingly, as part of Track Two Defendants' Memorandum in Opposition to Class Certification, the Track Two defendants provided Dr. Dyckman's expert report on the issue, which reveals that plaintiffs' experts have misinterpreted Dr. Dyckman's 2002 report. The Track Two defendants have also provided substantial deposition testimony as to TPP reimbursement of PADs, which was not available to Dr. Berndt when he wrote his Track One report.[11] The Track Two Defendants submit that allowing a neutral expert to evaluate the parties' new expert reports and the new record evidence may be helpful to the Court in addressing this important issue.

### III. A Supplemental Report Addressing Whether a Single, Commonly Understood Definition of AWP Existed Throughout the Proposed Class Period, and the Effect on the Healthcare System if AWP Were Defined to Equal ASP May Be Beneficial to the Court and the Parties

Dr. Berndt found that "inconsistent and ambiguous information exists even currently concerning what type of price AWP measures."[12] Since Dr. Berndt's Report was issued, the parties have briefed the issue of whether it is appropriate for the Court to define AWP. The defendants have also provided the Court with expert reports that suggest the healthcare system could not function if AWP were defined to equal ASP. *See, e.g.*, Merits

---

[9] Berndt Report ¶ 98.

[10] *Id.*, notes 142, 143.

[11] *See* Exs. 28, 30-36, 44, 46-51, 54 in the Appendix.

[12] Berndt Report ¶ 81.

4

Report of Linda A. Haegele, M.D.; Merits Report and Declaration of Fiona Scott Morton, Ph.D. And recent discovery from National Heritage Insurance Company ("NHIC"), the Massachusetts Medicare Part B carrier, states that AWP "is typically defined as the 'Red Book.'"[13] Accordingly, a supplemental report by the court-appointed expert addressing this issue may also prove helpful to the Court.

## CONCLUSION

For the reasons stated above, the Track Two Defendants request that the Court invite Dr. Berndt or another court-appointed expert to prepare a supplemental report to address the "unclear" issues that Dr. Berndt identified in his initial report.

---

[13] AWP001-0841 (Ex. 17 in the Appendix).

          Respectfully submitted,


          /s/ Michael DeMarco  
          Michael DeMarco (BBO #119960)  
           mdemarco@klng.com  
          Aimée E. Bierman (BBO #640385)  
           abierman@klng.com  
          David M. Glynn (BBO #650964)  
           dglynn@klng.com  
          KIRKPATRICK & LOCKHART  
          NICHOLSON GRAHAM LLP  
          State Street Financial Center  
          One Lincoln Street  
          Boston, MA 02111-2950  
          (617) 261-3100


          /s/ Michael L. Koon  
          Michael L. Koon  
          James P. Muehlberger  
          Brian G. Fedotin  
          SHOOK, HARDY & BACON L.L.P.  
          2555 Grand Blvd.  
          Kansas City, Missouri 64108-2613  
          (816) 474-6550

          Attorneys for Aventis Pharmaceuticals Inc. and on behalf of the Track Two Defendants


## CERTIFICATE OF SERVICE

    I hereby certify that on August 4, 2006 I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

          /s/ David M. Glynn  
          David M. Glynn