UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Nevada v. Abbott Labs., Inc. et al.*,<br>    Case No. CV-2-00260 (Nevada I), and<br><br>*State of Nevada v. American Home Products, et al.,*<br>    CA NO. 02-CV-12086-PBS (Nevada II) | |

**THE STATE OF NEVADA'S MOTION FOR PROTECTIVE ORDER
RELATING TO DEFENDANTS' DEPOSITION SUBPOENA TO MGM MIRAGE**

Once again defendants attempt to circumvent the case discovery schedule, bringing the State of Nevada before the Court to seek protection. Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Case Management Order ("CMO") No. 23 (Dkt. No. 2124), plaintiff Nevada moves for a protective order precluding defendants from taking the deposition of MGM Mirage pursuant to a Fed. R. Civ. P. 45 subpoena issued on January 10, 2006 and other non-party depositions they may schedule.

The MGM Mirage deposition is untimely and should not be permitted to go forward. Fact discovery in the case ended on March 31, 2006. There is no justification for granting defendants special dispensation to pursue additional discovery from a non-party almost five months after the deadline. The information defendants seek from MGM Mirage is not new. Defendants could have obtained the material before the cut-off. Allowing litigants to serve a non-party subpoena before discovery closes future option and hold it to be redeemed at their

1

discretion later post-discovery contradicts the concept of case scheduling.  Yet, this is essentially what defendants ask the Court to permit them to do here.

The State asks the Court's protection in the form of a protective order that no additional non-party depositions be had.  The State has standing to seek this relief and the Court has power to grant it under the Federal Rules of Civil Procedure.

The State and the defendants have met and conferred in good faith on these matters and cannot resolve the issues.  *See* Declaration of Jeniphr Breckenridge in Support of the State of Nevada's Motion for Protective Order Relating to Defendants' Deposition Subpoena to MGM Mirage ("Breckenridge Decl."), ¶ 12.

## I.     FACTUAL BACKGROUND

Defendants served two Fed. R. Civ. P. 45 subpoenas on a non-party entity identified as "Mandalay Bay Resort & Casino (owned by MGM Mirage)" (referred to here as "Mandalay Bay") before the close of discovery.[1]  The first subpoena was issued on November 14, 2005 and sought documents.  Breckenridge Decl., Ex. 1.  The second subpoena was issued on January 10, 2006 and sought deposition testimony.  Breckenridge Decl., Ex. 2.  Fact discovery in this case ended on March 31, 2006.  CMO No. 23.  To the State's knowledge, defendants made no effort to schedule the deposition of Mandalay Bay or MGM Mirage prior to the fact discovery deadline.  Between the issuance of the subpoenas and the close of discovery, defendants did, however, take the depositions of numerous other non-parties pursuant to subpoenas identical or nearly identical to the Mandalay Bay subpoenas.  Breckenridge Decl., ¶ 5.  Defendants at no time asked if they could schedule any non-party depositions after the close of discovery.  Breckenridge Decl., ¶ 5.  In contrast, defendants were careful to make advance arrangements

---

[1] Defendants now seek the deposition of an entity identified as "MGM Mirage" pursuant to the subpoenas.  The State has no information on the corporate relationship between these companies.

with the State to take the depositions of certain State fact witnesses after discovery closed. Breckenridge Decl., ¶ 6.

In May 2003 defendants provided the State with documents purportedly produced by MGM Mirage. Breckenridge Decl., Ex. 3. No mention was made of a deposition. Three weeks later defendants proposed a stipulation to the authenticity of certain unspecified non-party documents. Breckenridge Decl., Ex. 4. Again, no mention of a deposition was made. On June 29, 2006, defendants identified the documents for which they sought an authenticity stipulation. Breckenridge Decl., Ex. 5. Once again, no mention of a deposition was made. Later, the defendants expanded the proposed stipulation on the documents to include authenticity and admissibility. Breckenridge Decl., ¶ 9. It was only at this point that defendants indicated that if the State would not agree to stipulate to the authenticity of the documents that the defendants intended to take depositions to do so. Breckenridge Decl., ¶ 9. The State immediately objected citing that fact discovery had closed and it was too late for depositions. Breckenridge Decl., ¶ 10. The parties conferred in good faith and could not agree. Breckenridge Decl., ¶ 12.[2]

On July 25, 2006, defendants issued a letter notice to MGM Mirage and the State that it would take the deposition of MGM Mirage on August 15, 2006 pursuant to the January 10, 2006

---

[2] Defendants' proposed stipulation related to documents produced by Walgreens, the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP"), MGM Mirage, Great Falls Clinic and Snyders Drug Stores. Each of these non-parties has been served with a subpoena. The State has not received notices of deposition for any entity other than MGM Mirage and MMCAP. The MMCAP notice was served on June 23, 2006, nearly three months after the close of discovery. It is the subject a pending motion for protective order. *See* State of Montana and Nevada Motion for Protective Order Relating to Defendants' Second Subpoena to Blue Cross Blue Shield of Montana and Deposition Notice to MMCAP (Dkt. No. 2745). The State asked defense counsel if defendants intended to depose any of the other four parties and did not immediately receive a response. Breckenridge Decl., ¶ 15. On the eve of filing this motion, the State learned that defendants *do* intend to take other non-party depositions pursuant to outstanding non-party subpoenas. Breckenridge Decl., Ex. 6. The defense expectation that they should be allowed to take other depositions in addition to the MGM Mirage deposition – even later than the MGM Mirage deposition and not even scheduled yet – is strong evidence of their belief that the fact deposition cut-off applied to anyone but them. Even five months after the discovery deadline and after being put on notice that the State will not agree to any additional depositions because discovery is closed, defendants demonstrate that they are in no rush to schedule the depositions they expect to take.

Although the State and defendants have not fully conferred on the other depositions, the State's arguments would be essentially the same as those submitted via this motion. Thus, the State asks the Court for a protective order directing that ***no additional non-party depositions be taken***.

"30(b)(6) deposition subpoena." Breckenridge Decl., Ex. 7. The State immediately reiterated its objections to defendants. Breckenridge Decl., ¶ 16. The State also stated its objections to MGM Mirage through its Senior Vice President and Senior Counsel, Phyllis A. James. Breckenridge Decl., ¶ 16.

Notably, the letter does not mention any limitations on the scope of the deposition. Breckenridge Decl., Ex. 7. In other words, during discussions between the State and defendants regarding the proposed stipulation and deposition, defense counsel suggested that depositions would be required to establish the authenticity and admissibility of documents. Breckenridge Decl., ¶ 18. The deposition notice referred to in the July 25, 2006 letter is far broader. Breckenridge Decl., ¶ 17.[3]

## II.   ARGUMENT

Within the quiver of tools the Federal Rules grant courts to manage cases is Fed. R. Civ. P. 26(c) which confers on the Court broad powers to enter any order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." This includes a directive that "disclosure or discovery not be had." The motion before the Court is a petition to those powers. Courts long ago resolved the question of whether Rule 45 subpoenas to a non-party should be considered "discovery" for case management purposes. The majority view is that Rule 45 subpoenas indeed constitute "discovery." *See, e.g., Alper v United States*, 190 F.R.D. 281, 283 (D. Mass. 2000). *See also Dodson v CBS Broadcasting*, 2005 U.S. Dist. Lexis 30126 (S.D.N.Y. Nov. 29, 2005) (citing relevant case law); *Marvin Lumber v. PPG Indus., Inc. v. PPG Indus., Inc.*, 177 F.R.D. 443, 444 (D. Minn. 1997). It is axiomatic that Rule 45 subpoenas as fact

---

[3] In an August 6, 2006 telephone conference counsel for Novartis stated that the MGM Mirage deposition would be limited to authenticating documents, but this has never been confirmed in writing. Breckenridge Decl., ¶ 19. If this is the case, this is a completely different deposition than that noted on January 10, 2006 or referred to in the July 25, 2006 letter to MGM Mirage incorporating the subpoena deposition topics. Breckenridge Decl., ¶ 20. No notice has been issued for this different deposition. Its untimeliness is manifest.

4

discovery are subject to the same case rules and deadlines as other fact discovery in the case. It would be contradictory to require parties to complete fact discovery of parties before the deadline, while employing a subpoena after the discovery deadline to obtain information from non-parties. *Dreyer v. GACS Inc.*, 204 F.R.D. 120, 122-23 (N.D. Ind. 2001); *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D. Okla. 2001). The principle is particularly acute where, as here, the information could have been acquired during the discovery period.[4]

In other contexts, defendants have challenged the State's standing to seek Court protection from non-party discovery. *See* Defendants' Opposition to the State's Motion for Protective Order Relating to Defendants' Second Subpoena to Blue Cross Blue Shield of Montana and Deposition Notice to MMCAP. To the contrary, legal precedent in this court and others demonstrates the unassailability of the State's standing. A party may seek the Court's protection from any unreasonable discovery burden – including schedule abuse. A protective order is a cognizable remedy for a party seeking to void discovery to a non-party. As one court explained, the effort is ***not*** to ***quash*** a subpoena, as is allowed by Rule 45 and is limited to the target subject of the subpoena, "but is one of case management under Rules 16 and 26." *Marvin Lumber,* 177 F.R.D. at 445. A majority of courts have adopted the "better reasoned view" is that the Rule 45 subpoena is discovery and thus subject to the same court deadlines as other discovery. *Rice v. United States*, 164 F.R.D. 556, 558 (D. Okla. 1995).

Non-party discovery is at least as time-consuming and involved as any other. "The obligation of a party to monitor an opponent's discovery, as allowed by Rule 45 Subpoenas, is no less burdensome or expensive than that demanded by the other methods of formal discovery and,

---

[4] Defendants may argue that they could not have known that the State would not agree to stipulate to the authenticity and admissibility of certain non-party documents until after the close of discovery. This, however, is a risk they bore by waiting to raise the issue at a time when they had no recourse to additional discovery if the State would not agree. Further, the class case negotiations regarding authenticity stipulations put defendants on notice that entering into a stipulation here would be at best time-consuming and unlikely.

in fact, can be considerably more burdensome and expensive than [other forms of discovery]." *Marvin Lumber,* 177 F.R.D. at 445 (recognizing travel time and money as factors).  Moreover, to allow a party to continue with formal discovery pursuant to Rule 45, flat out lengthens the discovery process and divert the parties' attention form the post-discovery aspects of preparing a case, including expert witness testimony, dispositive motions and trial.  *Id.* at 445.

The diversion from post-discovery case activity so long after the court-set deadline is a prominent factor in the State's objection. The parties moved past fact discovery nearly five months ago.  The State has served defendants with its expert reports.  The depositions of the State experts are scheduled to begin on August 22, 2006.  Defendants' expert reports and motions for summary judgment are to be filed on September 21, 2006.  Still, defendants assume the right to act upon aging subpoenas and, unbelievably, do not feel any pressure to calendar the additional four depositions they expect to take.[5]  Moreover, the subject matter of the depositions they now seek to take may be completely different from the schedule of topics originally served in January 2006.[6]

Enough is enough.  Discovery must end some time and, in this case, it did – on March 31, 2006.  There is no plausible basis for allowing the defendants to continue with discovery so far past the March 31, 2006 cut-off.  If defendants find themselves in an evidentiary predicament, it is one of their own making.  Defendants should not be allowed to take the MGM Mirage deposition they have scheduled – or any of the others they "expect" to take.

---

[5] Defense ennui regarding the discovery cut-off and the remaining depositions is evidenced by their August 7, 2006 letter indicating that they "expect" they will attempt to schedule additional depositions "in the near future." Breckenridge Decl., Ex. 6.

[6] *See supra* at 20.

### III.     CONCLUSION

For the foregoing reasons, the State of Nevada respectfully requests that Court grant the motion for protective order and that defendants' deposition of MGM Mirage not go forward and that no additional non-party depositions will be taken in this case. A proposed form of order is attached.

By  /s/ Steve W. Berman                    DATED:  August 8, 2006.
Steve W. Berman
Sean R. Matt
Jeniphr A.E. Breckenridge
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Thomas M. Sobol
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
225 Franklin Street, 26th Floor
Boston, MA  02110
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

George J. Chanos
Attorney General of the State of Nevada
L. Timothy Terry
Deputy Attorney General Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4714

COUNSEL FOR PLAINTIFF
STATE OF NEVADA

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **THE STATE OF NEVADA'S MOTION FOR PROTECTIVE ORDER RELATING TO DEFENDANTS' DEPOSITION SUBPOENA TO MGM MIRAGE** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 8, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

8