**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED NATIONWIDE GSK CLASS
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND
APPROVAL OF NOTICE PLAN**

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...................................................................................................1

II.     DESCRIPTION OF THE LITIGATION.............................................................2

     A.      Class Claims........................................................................................................2

     B.      The Class Plaintiffs' Prosecution of the Case.........................................................3

     C.      History of Settlement Negotiations........................................................................4

     D.      The Risks of Litigation .......................................................................................5

III.    DESCRIPTION OF THE PROPOSED SETTLEMENT .....................................7

     A.      Total Settlement Amount and Allocation ..............................................................7

          1.      Payments to Class Members ......................................................................9

               (i)      Consumer ......................................................................................9

               (ii)     TPP Class Members......................................................................10

               (iii)    ISHP .............................................................................................10

          2.      Attorney's Fees, Expenses and Incentive Award .....................................10

     B.      What Is Being Released ......................................................................................11

     C.      Termination.......................................................................................................11

IV.     ARGUMENT .......................................................................................................12

     A.      The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and
             23(b)(3) for Purposes of Settlement....................................................................13

          1.      The Requirements of Rule 23(a) have been satisfied. ...............................13

     B.      Preliminary Approval is Appropriate...................................................................14

          1.      The proposed settlement is sufficiently fair, reasonable and
               adequate for preliminary approval ............................................................16

          2.      The proposed settlement is the result of arduous, arm's length
               negotiations conducted by highly experienced counsel............................18

3. Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues ............19

C. The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing ............................................................................................20

1. Form of Notice ........................................................................................20

V. CONCLUSION ............................................................................................................23

001534-16  122938 V1

# TABLE OF AUTHORITIES

## CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1985) .................................................................................18

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*,
   455 F.2d 101 (7th Cir. 1972) .......................................................................................20

*Alliance to End Repression v. City of Chicago*,
   91 F.R.D. 182 (N.D. Ill. 1981) ...................................................................................17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................12, 20

*Argo v. Harris*,
   84 F.R.D. 646 (E.D.N.Y. 1979) ..................................................................................17

*Carlough v. Amchem Prods., Inc.*,
   158 F.R.D. 314 (E.D. Pa. 1993)..................................................................................20

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship.*,
   100 F.3d 1041 (1st Cir. 1996)..........................................................................12, 18, 19

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ....................................................................................13

*Donovan v. Estate of Fitzsimmons*,
   778 F.2d 298 (7th Cir. 1985) .......................................................................................15

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   183 F.3d 1 (1st Cir. 1999)............................................................................................14

*Durett v Housing Auth. of Providence*,
   896 F.2d 600 (1st Cir. 1990).................................................................................14, 20

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) .......................................................................................17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)....................................................................................................21

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) .....................................................................................18

*In re General Motors Corp. Pick-Up Truck Fuel Tank*,
  55 F.3d 768 (3d Cir. 1995)................................................................................19

*Greenspun v. Bogan*,
  492 F.2d 375 (1st Cir. 1974)............................................................................21

*Grunin v. International House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ............................................................................21

*Hawkins v. Commissioner of New Hampshire Dept. of Health &
  Human Servs.*,
  2004 U.S. Dist. Lexis 807 (D.N.H. Jan 23, 2004) .................................... *passim*

*Henry v. Sears Roebuck & Co.*,
  1999 WL 33496080 (N.D. Ill. July 23, 1999).................................................22

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................................17

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994)........................................................................21

*Levell v. Monsanto Research Corp.*,
  191 F.R.D. 543 (S.D. Ohio 2000) .....................................................................12

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ........................................................................22

*Mars Steel v. Continental Ill. Nat'l Bank & Trust Co.*,
  834 F.2d 677 (7th Cir. 1987) ............................................................................18

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................22

*In re MicroStrategy, Inc. Secs. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ...............................................................22

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
  189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000)..............13

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)...........................................................................................21

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................14

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
   546 F. Supp. 1 (N.D. Ohio 1982) .................................................................................16

*Patterson v. Stovall*,
   528 F.2d 108 (7th Cir. 1976) ........................................................................................17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) .......................................................................................2

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   233 F.R.D. 229 (D. Mass. 2006) .....................................................................................2

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   263 F. Supp. 2d 172 (D. Mass. 2005) ..............................................................................2

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   431 F. Supp. 2d 98 (D. Mass. 2006) ................................................................................2

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)......................17, 23

*Reppert v. Marvin Lumber & Cedar Co.*,
   359 F.3d 53 (1st Cir. 2004)..........................................................................................20

*Rolland v. Celluci*,
   191 F.R.D. 3 (D. Mass. 2000) .......................................................................................19

*In re Screws Antitrust Litig.*,
   91 F.R.D. 52 (D. Mass. 1981) .......................................................................................13

*Smilow v. Southwestern Bell Mobile Sys.*,
   323 F.3d 32 (1st Cir. 2003) ...........................................................................................13

*South Carolina Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990) ..................................................................................12

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*,
   447 F.2d 647 (7th Cir. 1971) ........................................................................................17

*White v. National Football League*,
   822 F. Supp. 1389 (D. Minn. 1993).........................................................................14, 21

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992)...................................................................................16

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..............................................................................................16

## STATUTES

18 U.S.C. § 1964 ....................................................................................................................2

001534-16  122938 V1

## I.      INTRODUCTION

The Class Plaintiffs respectfully submit this Memorandum in support of the Joint Motion for an Order (i) preliminarily approving the proposed settlement of this Class action ("Settlement"); and (ii) conditionally certifying a Settlement Class (as described more fully below).  The Settlement encompassed by the parties' Settlement Agreement provides for the payment by the GSK Defendants of up to $70 million (the "Settlement Payment").  The $70 million will be divided by litigating states, consumers and Third-Party Payors ("TPPs"), including various health plans that have settled individually with Defendants ("Settling Health Plans" or "ISHPs").  That amount will be reduced by court-awarded fees, costs and expenses, incentive awards to the named Class Plaintiffs, and possible reversion amounts, as more fully described in the Settlement Agreement.

Class Plaintiffs and their counsel believe that the Settlement is fair, reasonable, and adequate.  It has been reached after dozens of arms-length intensely fought negotiation sessions, many of which were conducted with the court appointed mediator, Eric Green.  After the global amount was reached, separate counsel representing the TPPs, ISHPs, consumers and states negotiated allocation of the $70 million in a separate round of hard fought negotiations.  Accordingly, this Joint Motion seeks preliminary approval of the Settlement and certification of the Class for settlement purposes and requests, inter alia, that the Court order that notice of the Settlement be disseminated to the Class, and schedule a hearing to determine whether final approval of the Settlement should be granted.

At this preliminary stage of the Settlement process, Class Plaintiffs respectfully request that the Court enter an Order:

1.      Certifying the Class as a Settlement Class;

2.      Appointing Class Representative Plaintiffs and the following law firms as Class Settlement Counsel:  Hagens Berman Sobol Shapiro, LLP; Spector, Roseman & Kodroff P.C; Wexler Toriseva Wallace LLP; Edelson & Associates LLC; Kline & Specter, P.C.;

3.      Granting preliminary approval of the proposed Settlement;

4.      Scheduling a Fairness Hearing to consider final approval of the Settlement and Plaintiffs' counsel's motion for attorneys' fees, reimbursement of expenses, and plaintiff incentive awards;

5.      Approving the proposed forms of Notice and Summary Notice;

6.      Approving the proposed Claim Forms and instructions; and

7.      Authorizing dissemination of the Notices and Claim Forms substantially in the forms attached to the Settlement Agreement as Exhibits by first Class mail to all Third-Party Payor Class Members and Medicare Part B Consumers (as set forth in the proposed Notice Plan), and authorizing publication of the Summary Notices.

## II.      DESCRIPTION OF THE LITIGATION

### A.      Class Claims

In this litigation, Plaintiffs allege that GSK implemented a fraudulent scheme used to manipulate and inflate the monetary spread between the Average Wholesale Price ("AWP") and the cost to doctors and other providers of various drugs ("Subject Drugs" or "Covered Drugs") in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO"), and various state consumer protection laws.[1]

Plaintiffs allege that GSK illegally manipulated the AWPs on its Subject Drugs during the relevant period, in order to increase profits and market share, at the expense of patients, their insurers, and the Medicare program.  The AWPs that GSK caused to be published – and upon which Plaintiffs and the Class Members based their payments as required by statute for payments

---

[1] The Court is aware of the extensive facts and claims alleged in this action.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 98 (D. Mass. 2006); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229 (D. Mass. 2006); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005); *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172 (D. Mass. 2005).  The Class Plaintiffs respectfully will not repeat all of those allegations here.

- 2 -

by Class 1 and Class 2 members, were fictional.  Those allegedly fictional AWPs created a larger profit spread that funneled hidden profits to doctors to prescribe GSK Drugs over less expensive alternatives.  GSK's strategy targeted Plaintiffs and members of the Class, who continued to pay more and more for a drug that should have cost less and less.

GSK has denied, and continues to deny, that it has committed any violation of law or any wrongdoing, and further deny that they have any liability with respect to any claims asserted in the Complaint, and deny all liability to Plaintiffs and the Class.  They litigated extensive Motions to Dismiss, and vigorously opposed Plaintiffs' Motion for Class Certification of a litigation Class.  They have indicated that if the case proceeds, they would continue to vigorously oppose Plaintiffs' claims through summary judgment and trial.

B.      The Class Plaintiffs' Prosecution of the Case

The Class Plaintiffs have aggressively prosecuted their claims since 2001.  Numerous cases were subsequently consolidated before this Court by the Judicial Panel on Multi-District Litigation on April 30, 2002.

The Class Plaintiffs overcame motions to dismiss and briefed and argued dozens of discovery motions and a pending motion for class certification.

In discovery, Class Plaintiffs reviewed, analyzed, coded and loaded into a database over 2.8 million pages of documents produced by GSK and third parties.  The selected documents were analyzed and coded by a team of attorneys over a period of 18 months.  Through that review, the Class Plaintiffs created a detailed, computerized, searchable database of relevant documents.  Through negotiation and motion practice, Plaintiffs pressed GSK for additional relevant documents and data, resulting in GSK producing additional information after the close of discovery.  Plaintiffs also undertook detailed analysis of GSK transactional data on dozens of

- 3 -

GSK products.  For some of the drugs, the analysis covered a period of time in excess of ten years.

Class Plaintiffs also took over 45 depositions of GSK's current and former employees, including senior managers, consultants, and contractors.  The depositions resulted in nearly 1000 marked deposition exhibits.

At the same time, Plaintiffs were issuing subpoenas to physicians, trade associations and other third parties to obtain additional evidence.  Third-party witnesses with knowledge of GSK activities or the effects of GSK's conduct were also sought out, interviewed, and in some cases deposed.

Defendants also engaged in extensive defensive discovery.  Defendants took the depositions of all named Plaintiffs, including multiple depositions of the corporate Plaintiffs.  Plaintiffs responded to interrogatories from the Defendants and produced voluminous documents and (for the health plan Plaintiffs) electronic transactional and claims data.

**C.      History of Settlement Negotiations**

The settlement negotiations among the parties, although always courteous, were long, detailed, and contentious.  Over a two-year period, in separate series of meetings, each of which extended over several months, the parties met, conferred, exchanged information and debated the other's evidence and interpretations.  Both sides made detailed presentations to each other, presented extensive analysis and conclusions of experts, and noted their positions on legal theories, evidence, and possible damages.  In addition to many face-to-face negotiations, there were a significant number of additional discussions by phone.  The negotiating sessions often spanned many hours, and always involved considerable back-and-forth between counsel for the several parties.  The court-appointed mediator, Eric Green, was involved in many of these

- 4 -

sessions.  Eventually, a sum of $70 million was reached which represents a substantial recovery for the Class.

The next step was to determine an allocation between consumer, TPPs, and participating Attorneys General.  Each constituency had an assigned allocation counsel, Class counsel did not advocate for any allocation.[2]  All groups accepted Class counsel's recommendation that $70 million was a fair amount and proceeded to work out their points and the split of monies between them, and then all the parties spent many days and long hours negotiating a MOU and Settlement Agreement with all required Exhibits.  In addition, there were extensive negotiations between TPP counsel, ISHP counsel, and class counsel about the allocation among these entities. The extensive result of that work is now presented to the Court for preliminary approval.

**D.     The Risks of Litigation**

Throughout the discovery and settlement negotiation processes, the Class Plaintiffs, consumers, Attorneys General, and the ISHPs gained a thorough understanding of the strengths and weaknesses of their case.  The Class Plaintiffs and the ISHPs ultimately agreed to the Settlement after evaluating various factors, including certain risks to Plaintiffs' theories of liability and damages.

Specifically, the Class Plaintiffs recognized liability risks including:

- The Defendants' arguments that many people were aware of how the AWP was manipulated and that many people knew the AWP was not reliable.  Class Counsel believes this argument is seriously flawed, particularly for Class 1 and 2, it still presents a litigation risk.

---

[2] The Attorneys General were represented by Assistant Attorneys General from Arizona, Connecticut, Montana, New York and Nevada.  Counsel for the states of Pennsylvania, Kentucky, Wisconsin, and Illinois were invited to settlement meetings and all chose not to attend.  Consumer allocation counsel was Dianne M. Nast of Roda Nast and Kent Williams, two highly experienced class action litigators.  TPP allocation counsel was Jonathan O. Karmel.

- The Defendants also adduced evidence that many TPPs continued to use AWP as a basis for reimbursement even after the Complaint was filed, thus indicating that they were aware of the alleged AWP manipulation but chose, for a variety of reasons, to continue to rely on AWP.

- The existence of numerous reports from the federal government discussing overpayments for drugs.

- Some of these government reports date from 1996 or earlier, which the Defendants argued triggered the running of the statute of limitations on Plaintiffs' claims.

- The risk that some Class Members might not have documentation or claims data to prove or substantiate payments from the early '90s or beyond. Many TPPs do not retain data for more than 5 to 7 years, thus it would have been difficult to prove damages for the early years of the Class Period. For consumers, the same is true.

Class Plaintiffs believe that they could overcome these risks, but there is no certainty that this in fact would happen, particularly when such matters are put before a jury.

Another important factor considered by the Class Plaintiffs in evaluating the reasonableness of the Settlement was the value to Class Members of receiving payment as soon as possible, as opposed to litigating through trial and the almost certain appeals. Many of the Consumer Class Members are elderly and the prospect of an increased payment, years in the future, is of little value to them. Indeed, two of the proposed Class Representatives died during the pendency of this litigation.

001534-16  122938 V1

As a result of these as well as other factors, and after years of contentious litigation and months of arms-length negotiation between Defendants, Class Plaintiffs and certain individual Plaintiffs, the parties were able to obtain this Settlement, which is fair and reasonable.

## III.    DESCRIPTION OF THE PROPOSED SETTLEMENT

### A.    Total Settlement Amount and Allocation

Defendant GSK has agreed to pay up to seventy million dollars ($70,000,000.00) to settle the MDL Actions, and all related claims of the Class Plaintiffs and the ISHP Group and those states that sued GSK.  The seventy million dollars will be allocated as follows:  (1) a payment of $2.5 million to various litigating states (New York, Arizona, Connecticut, Montana and Nevada); (2) a potential payment of $2 million to states that are litigating and may wish to participate but have not yet done so; and (3) $65 million to the Class and ISHPs.  Of that $65 million, 30% will go to consumers and 70% to TPPs.

As fully set forth in the Settlement Agreement, the Settlement Class is defined as:

> A.    Medicare Part B Co-Payment Class ("Medicare Co-Payment Class")
>
> All natural persons in the United States, who made, or who incurred a currently enforceable obligation to make, a co-payment based on AWP for a Medicare Part B covered drug manufactured by GSK set forth on Exhibit A hereto. Excluded from the class are persons who made flat co-payments, who were reimbursed in full for any co-payments, or who have the right to be fully reimbursed for any co-payments.
>
> B.    Third-Party Payor MediGap Supplemental Insurance Class ("MediGap TPP Class")
>
> All Third-Party Payors in the United States who made reimbursements for a Medicare Part B covered drug manufactured by GSK and set forth on Exhibit A hereto, based on AWP, during the Class Period.

C.     Consumer and Third-Party Payor Class for Payments Made
for Medicare Part B Drugs Outside the Medicare Context
("Private Payor Class")

All natural persons in the United States who made, or who
incurred a currently enforceable obligation to make, a
payment for, and all Third Party Payors in the United States
who made reimbursements based on contracts using AWP
as a reimbursement standard for purchases of a physician
administered drug manufactured by GSK set forth on
Exhibit A hereto, during the Class Period.  Excluded from
the class are natural persons who made flat co-payments,
who were reimbursed in full for any payments or co-
payments, or who have the right to be fully reimbursed for
any payments or co-payments.[3]

Excluded from each of the AWP Payor Classes are Defendants and their officers,

directors, management, employees, subsidiaries, and affiliates.  Excluded from the MediGap TPP

Class and the Private Payor Class are:  (1) the United States government and its agencies and

departments, and all other governmental entities that made payments pursuant to any state's

Medicaid program; (2) the Independent Settling Health Plans (ISHPs), as defined in

Paragraph 2(w) of the Settlement Agreement; and (3) all federal, state or local governmental

entities, *except for* the following, which are *not* excluded from the Medigap TPP or Private

Payor Classes:  (a) non-Medicaid state or local government entities that made AWP-based

prescription drug payments as part of a health benefit plan for their employees, but only with

respect to such payments, and (b) other non-Medicaid state government agencies or programs of

the Participating States other than New York and Connecticut and of the additional participating

states, if any.

---

[3] Settlement Agreement ¶ 1, p. 6.

1.      **Payments to Class Members**

(i)      Consumer

If approved by the Court, payments will be made to authorized Consumer Class Members (consumers who are not "opt-outs") out of the Consumer Settlement Fund in pro rata shares based on their claims authorized by the Claims Administrator.  As fully set forth in the Preliminary Order, Consumer Class Members will be asked to certify the dates they were using the Subject Drug and their total out-of-pocket payments for the Subject Drug, net of any reimbursement from insurers.

The dollar claim amount submitted by each Consumer Class Member will be multiplied by the Recognized Claim Percentage ("RCP") to determine the value of each person's recognized claim.  The RCP is intended by Class counsel to represent the approximate percentage each Consumer Class Member was overcharged for a given drug.

Each Consumer Class Member will receive either a pro-rata portion of their recognized claim (up to 100%) *or a minimum payment of $100*, whichever is greater.  The pro-rata percentage and the exact amount of the minimum payment will be determined after all Consumer Class claims have been received and verified.[4]  Any remaining money will be distributed as the Court deems appropriate (but not to GSK) after a mediation between counsel for Consumers and the States, before Eric Green, whose recommendation will be submitted to the Court with any comments from the consumers, and Class counsel and the States.

The simplified documentation process (*see* Class Notice p. 18, Exhibit B1-A) and the minimum payment are both intended to give Consumer Class Members an incentive to submit their Claim Forms and encourage a high participation rate among the consumers.  After all

---

[4] Exhibit G to the Settlement Agreement sets forth the recognized claim percentages and provides examples of how claims would be calculated for consumers.

- 9 -

payments to Consumer Class Members of their share of the Fund, any remaining money will be distributed as the Court sees appropriate, after submission of recommendations by the parties.

(ii)     TPP Class Members

TPP Class Members will be paid from the TPP Settlement Fund, based on each TPP claimant's authorized claim as a percentage of the total allowed claims of all authorized TPP Class Members, including the ISHPs.  All TPPs' percentage shares will be calculated in reference to claim data from the TPPs for the years 1999 to 2003.  (*See* Exhibit G at p. 1.) Certain certifications and proofs will be required, and the Claims Administrator will conduct audits of a minimum number of TPP claims to ensure the appropriateness of the process and validity of the Claims.

(iii)    ISHP

Authorized ISHP claimants will be paid pursuant to the provisions of the Settlement Agreement relating to the ISHPs.  That Settlement Agreement sets forth a specific claims procedure, time frame, calculations for ISHP Group reversion amount payment, and dispute resolution procedure.  As noted above, to the extent they are not fully paid their damages from the ISHP Fund, the ISHPs may also submit Claim Forms to participate in the TPP Class Fund.

**2.     Attorney's Fees, Expenses and Incentive Award**

Class Plaintiffs' Counsel will submit a fee petition for an award of fees, reimbursement of costs and expenses, and award of incentive payments to appropriate Plaintiffs or Class Representatives.  Understanding that the award of attorneys' fees is a matter committed to the sole discretion of this Court, Defendants will not object to Counsel's request for a reasonable attorneys' fee not to exceed 33% of the sum of sixty-five million dollars ($65,000,000.00). Defendants also will not object to Counsel's request to the Court for an award of reasonable

- 10 -

expenses.  Such fees and expenses are to be paid from the Class Settlement Fund, after approval by the Court.

The Settlement Agreement provides for incentive awards as determined by this Court for services rendered to the Class by the Class Representatives.

The Settlement Agreement provides additional terms governing the inclusion of other Plaintiffs' counsel in the fee award, disputes over attorney's fees, release of all claims for attorney's fees, and similar matters.

**B.      What Is Being Released**

As described fully in the Settlement Agreement, all Consumer Class Members and all TPP Class Members (including various entities on whose behalf a TPP warrants it is authorized to act) are releasing GSK and its various subsidiaries, related entities and personnel from all claims relating to the marketing, sale, cost, pricing or purchase of the Subject Drugs.  Claims concerning product liability or personal injury are not being released.

**C.      Termination**

Defendants and Class Settlement Counsel each have the right to terminate the Settlement if any of the following events occurs:  (a) this Court declines to enter the Preliminary Approval Order submitted with this Joint Motion or the Order and Final Judgment finally approving the Settlement; (b) the Order and Final Judgment are modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (c) an alternative judgment, agreed to by the parties, is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.  Defendants are also entitled to terminate if nationwide classes are not certified.

## IV.    ARGUMENT

A class action cannot be compromised or settled without the approval of the Court.  Fed. R. Civ. P. 23(e).  Prior to addressing the adequacy of a proposed Settlement, however, the Court must determine whether the Plaintiff Class, as agreed to by the parties, may be certified for purposes of the Settlement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Hawkins v. Commissioner of New Hampshire Dept. of Health & Human Servs.*, 2004 U.S. Dist. Lexis 807 (D.N.H. Jan 23, 2004).

A court may grant conditional approval of a class action where, as here, the Class proposed satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *See Amchem*, 521 U.S. at 613; *see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).

If the Court determines that a settlement Class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement.  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).  First, the Court must preliminarily approve the proposed settlement.  *Id.* at 547.  Second, members of the Class must then be given notice of the proposed settlement.  *Id.*  Third, a hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the Class as a whole, and consistent with the public interest.  *Id.*  This protects the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian for the Class' interests.  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship.*, 100 F.3d 1041, 1043-44 (1st Cir. 1996).

**A.      The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3)
         for Purposes of Settlement**

Preliminary certification of the Settlement Class is appropriate in this case because the

four requirements of Fed. R. Civ. P. 23(a) and a part of Rule 23(b) are satisfied.

**1.       The Requirements of Rule 23(a) have been satisfied.**

Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of

representation.  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing

*Amchem*, 521 U.S. at 613).

These issues have been addressed in the Court's prior Order and will not be repeated

here.  All Rule 23(a) requirements have been satisfied.

The Settlement Class should be certified because, in addition to having satisfied the

prerequisites of Rule 23(a), the Class also satisfies those of Rule 23(b)(3): namely, (1) questions

of law or fact common to Class Members predominate over any questions affecting only

individual members; and (2) the Class action is superior to other available methods for the fair

and efficient adjudication of this matter.  *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D.

194, 196-97 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000); *In re Screws Antitrust Litig.*,

91 F.R.D. 52, 55 (D. Mass. 1981); *In re Compact Disc Minimum Advertised Price Antitrust

Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003).

The Court has already certified Class 1 or the Part B Consumer Class on a multi-state

basis for consumer claims.  The Court has reserved certification on Class 2 and Class 3 beyond

the State of Massachusetts.  However, any manageability concerns with respect to these Classes

are not present in a settlement class and certification of Class 2 and Class 3 on a nationwide basis

is thus appropriate.[5]

**B.      Preliminary Approval is Appropriate**

Plaintiffs respectfully submit, as they will demonstrate at the Fairness Hearing, that:

(i) the Settlement is in all respects fair, reasonable and adequate to the Class; (ii) they have

investigated the pertinent legal and factual issues; (iii) continued litigation will consume

enormous resources of the parties and the Court; and (iv) there is no hint of collusion between or

among the parties in the settlement negotiations.  At the Fairness Hearing the Court must

undertake a detailed assessment of the terms of the Settlement, the interests of the Class

Members as well as any third parties that might be affected by the settlement, and the

circumstances of the litigation and the proposed settlement.  *See Duhaime v. John Hancock Mut.*

*Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999); *Durett v. Housing Auth. of Providence*, 896 F.2d

600, 604 (1st Cir. 1990); *Hawkins*, 2004 U.S. Dist. Lexis 807, at *14.

However, at this stage of the settlement process, the Court conducts only a preliminary

evaluation to determine whether the proposed Settlement is within the range of possible final

approval, and thus whether notice to the Class of the terms and conditions of the proposed

Settlement, and the scheduling of a formal Fairness Hearing, are appropriate.  *White v. National*

*Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Thus, the *Manual For Complex Litigation,*

*Third* ("*Manual*") characterizes the preliminary approval inquiry as a court's "initial assessment"

of the fairness of the proposed settlement, made on the basis of written submissions and informal

---

[5] Further, nationwide certification of all classes is appropriate given the pending RICO claims.  These are still
subject to appeal and are certifiable on a nationwide basis.

presentation from the settling parties, and summarizes the preliminary approval criteria as
follows:

> If the preliminary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness or other obvious deficiencies,
> such as unduly preferential treatment of Class representatives or of
> segments of the Class, or excessive compensation for attorneys,
> and appears to fall within the range of possible approval, the court
> should direct that notice . . . be given to the Class Members of a
> formal Fairness Hearing, at which arguments and evidence may be
> presented in support of and in opposition to the settlement.

*Manual* § 30.41; *see also* 2 *Newberg* § 1.25.

As detailed below, the proposed Settlement falls well within the range of reasonableness,
and thus merits preliminary approval.

Initially, Class Plaintiffs note that the law has long favored settlement of litigations.  This
is particularly true in class actions and other complex cases where substantial resources can be
conserved by avoiding the time, cost and rigors of prolonged litigation.  In addition, there is an
overriding public interest in favor of settlement of complex class action suits, especially where
the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or
the social or economic policies to be established."  *See*, *e.g.*, *Donovan v. Estate of Fitzsimmons*,
778 F.2d 298, 307 (7th Cir. 1985).  By supporting the settlement of complex, class action
disputes, the judicial system can help minimize litigation expenses on both sides, reduce the
strain on scarce judicial resources, and avoid the risk of trial to both parties.  *Manual*, §§ 23, 30.4
(Fed. 1995).

These concerns apply with particular force in a case such as this, where thousands of
consumers and TPPs throughout the country were subject to allegedly deceptive and unfair
practices in connection with the marketing and sale of the Subject Drugs.  Individual litigation
would clog the courts of this and may other states; would take years to resolve; and, given the

- 15 -

relatively modest amount of damages suffered by each individual consumer, it likely would be available only to those wealthy and sophisticated enough to retain their own lawyers.  The proposed Settlement is the best and only vehicle to assure that all Class Members, regardless of their means, and whether they are consumers or TPPs, receive the relief to which they are entitled in a prompt and efficient manner.

> 1.      **The proposed settlement is sufficiently fair, reasonable and adequate for preliminary approval**

In determining whether the Settlement is fair, reasonable, and adequate to the Class as a whole, several factors should be considered, including:  (1) the complexity of the litigation, (2) the posture of the case at the time settlement was proposed, (3) the extent of discovery conducted in the case, (4) the circumstances of the settlement negotiations, (5) the experience of counsel, (6) the relative strength of the plaintiffs' case on the merits, the possible defenses, and other risks in the litigation, (7) the anticipated duration and expense of further litigation, and (8) the reaction of the Class and opposition to the settlement.  *Hawkins*, 2004 U.S. Dist. Lexis 807, at *15 (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 785 (3d Cir. 1995); *Kovacs v. Ernst & Young*, 927 F.2d 155, 158 (4th Cir. 1991)); *Williams v. Vukovich*, 720 F.2d 909, 922-24 (6th Cir. 1983).  Some of these factors are not yet relevant at the preliminary approval stage, but they can be used to guide the preliminary approval process.

While the foregoing criteria will guide the Court's analysis, "[a] class action settlement cannot be measured precisely against any particular set of factors."  *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6-7 (N.D. Ohio 1982)).  Therefore the relevance of the factors set forth above "will vary from case to case."  *Ohio Public Interest Campaign*, 546 F. Supp. at 6-7.

As a general rule, courts will not substitute their own thoughts for the parties' business judgment in arriving at a settlement.[6] *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976); *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971).  Accordingly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether Class Members will receive as much from a settlement as they might have recovered from victory at trial.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998), *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).  It is not the Court's function to reopen and enter into negotiations with the litigants in the hope of improving the terms of the settlement or to substitute its business judgment for that of the parties who worked out the settlement.  *Argo v. Harris*, 84 F.R.D. 646, 648 (E.D.N.Y. 1979) (quoting *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y 1973), *aff'd on op. below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)).  Courts challenged with evaluating a proposed class action settlement recognize that the "essence of settlement is compromise" and will not represent a total win for either side.  *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980)).

Evaluation of the aforementioned factors in this case weigh heavily in favor of ***preliminary approval***.  Continuing this complex consumer fraud and RICO litigation is likely to result in a highly expensive, protracted legal battle, with appeals.  Further, the Plaintiffs

---

[6] Judge Getzendanner explained in *Alliance to End Repression v. City of Chicago*, 91 F.R.D. 182, 201 (N.D. Ill. 1981): "Some objectors argue that both settlement agreements are fatally defective because they lack more extensive admissions or finding of wrongdoing by the Court.  As the Court stated at the March 13 hearing: 'the whole purpose of the settlement is to avoid adjudication with respect to the activity which is the basis of the complaint.  I think the parties would be stunned if in submitting a class action settlement to the Court, the Court started to decide the issues.  That's why people enter into settlements and I am not going to interfere in the settlement process.'"

- 17 -

conducted a substantial investigation, through discovery and otherwise, such that they were well-informed concerning the strengths and weaknesses of their case upon entering into settlement negotiations.

> **2.      The proposed settlement is the result of arduous, arm's length negotiations conducted by highly experienced counsel**

There is a presumption of correctness attached to a Class settlement reached in arms-length negotiations between experienced, capable counsel.  *City P'ship Co. v. Atlantic*, *supra*, 100 F.3d at 1043, *see Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While opinion and recommendation of experienced counsel should not be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."); *see also Newberg* § 11.41, at 87-89.

The United States Court of Appeals for the Seventh Circuit, in approving a class action settlement, noted that "[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation....  The proof of the pudding was indeed in the eating."  *Mars Steel v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1985) (most important concern for the court in reviewing a settlement of a class action is the strength of the plaintiffs' case if it were fully litigated).

In the instant action, the parties actively engaged in many rounds of negotiations, for many months.  The parties negotiated arduously and at arms-length, often with the court-appointed mediator.  The negotiations involved submissions of proposals, counter-proposals, evaluation of additional documentation/discovery, preparation and presentation of expert reports, and factual arguments.  The parties have worked long and hard to reach a resolution of this matter, and Plaintiffs submit it is fair, appropriate, and in the best interests of the Class Members.

3.    **Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues**

A presumption in favor of the proposed Settlement arises when sufficient discovery has been provided and counsel have experience in similar cases.  *See Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *see also City P'ship Co. v. Atlantic, supra*, 100 F.3d 1043; *Rolland v. Celluci*, 191 F.R.D. 3, 6 (D. Mass. 2000).  This factor directs the trial court to consider whether the attorney participating in the settlement negotiations had access to sufficient information to appreciate the merits of the class's case."  *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 783 (3d Cir. 1995).

In this case, the parties exchanged written discovery, conducted over hundreds of depositions, and obtained extensive discovery from third-party sources such as other pending litigation, trade associations, physicians and the federal government.  Defendants produced millions of documents and Plaintiffs' counsel spent more than four years reviewing said documents, organizing documents for use, creating an electronic database and making determinations on utilization of important documents, additional discovery and general assistance in the litigation of this matter.

Thus, the proposed Settlement provides for up to $65 million to Class Members and ISHPs, allowing for substantial payments of their damages to them.  There is no preferential treatment to Plaintiffs or singled-out Class Members, and it does not provide excessive attorneys' fees.  The Settlement has no "obvious deficiencies"- indeed, Plaintiffs submit, no deficiencies at all - and the settlement process should go forward to a Fairness Hearing.

- 19 -

**C.      The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing**

**1.      Form of Notice**

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement.  *See Durrett*, 896 F.2d at 604.  Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs."  In a settlement Class maintained under Rule 23(b)(3), Class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e).  *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause).  Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem*, 521 U.S. at 617; *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir.2004).

The *Manual* sets forth several elements of the "proper" content of notice.  If these requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2); Fed. R. Civ. P. 23(e); and due process, and binds all members of the Class.  The Notice must:

1. Describe the essential terms of the Settlement;

2. Disclose any special benefits or incentives to the Class representatives;

3. Provide information regarding attorneys' fees;

4. Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the Settlement;

5. Explain the procedures for allocating and distributing Settlement funds; and

6. Prominently display the address of Class counsel and the procedure for making inquiries.

*Manual*, ¶ 30.212 (3d ed. 1995).  *See, e.g., Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of

proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process); *accord Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974). The proposed notice program clearly meets this standard.

In the instant action, the Notice to be provided to the Class is clear, precise, informative, and satisfies the requirements governing notice. Further, Plaintiffs' Counsel propose a detailed nationwide Notice Plan designed to reach both Consumer and TPP Class Members in a number of ways. As reflected in the proposed Notice Plan created by a recognized expert, individual notice will be mailed all Class Members whose addresses can be reasonably ascertained and who can be reached reasonably economically. A website will allow Class Members to reach the Administrator, request Notices and ask questions. An extensive publication of two Summary Notices will take place in a variety of publications, some directed to the Consumer Class Members and others to the Third-Party Payors. Plaintiffs' counsel also propose publishing the full Notice, the Settlement Agreement and possibly other documents on the website established for purposes of this Settlement.

Notice via first class mail, publication in nationwide papers and magazines and website publication are all avenues for notice that have been approved by various courts. *See*, *e.g.*, *White v. National Football League*, 822 F. Supp. at 1400 (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving

- 21 -

as reasonable notice by third class mail to identified Class members and publication two times in the national edition of USA Today); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in USA Today); *Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re MicroStrategy, Inc. Secs. Litig.*, 148 F. Supp. 2d 654, 669-70 (E.D. Va. 2001) (approving publication of summary notice in nationwide newspapers and posting full notice on websites maintained by co-lead counsel); *Henry v. Sears Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) (the Court directed that the class Action Settlement Notice be mailed by first class mail to all identified Class members, and the Summary Notice be published twice in the national edition of USA Today); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) (the Court approved Class Notice mailed to the last known address of all Class Members identified through reasonable effort by Defendant, published a Summary Notice on three separate days in a nationally published newspaper, *USA Today*, published the Class Notice and other pertinent information on the internet).

The proposed Notice clearly meets the requirements of Rule 23(c)(2) and 23(e), in so much as it meets the new requirements of plain English and ease of reading and includes:  (1) the case caption; (2) a description of the Class; (3) a description of the claims; (4) a description of the Settlement; (5) the names of counsel for the Class; (6) a statement of the maximum amount of attorneys' fees that may be sought by Plaintiffs' Counsel; (7) the Fairness Hearing date; (8) a description of Class Members' opportunity to appear at the hearing; (9) a statement of the procedure and deadline for filing objections to the Settlement; (10) a statement of the procedure and deadline for filing requests for exclusion; (11) a statement of the consequences of exclusion;

- 22 -

(12) a statement of the consequences of remaining in the Class; and (13) the manner in which to obtain further information. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 496. *See also Manual* § 30.212 (Rule23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation).

Plaintiffs have retained an experienced Notice Administrator to administer notice, have carefully crafted a detailed Notice Plan and have taken all necessary steps to ensure that the proposed Notice Plan meets the requisite due process requirements. Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the Settlement and their options, and therefore should be approved by the Court.

## V.    CONCLUSION

For all the above-stated reasons, it is respectfully requested that the Joint Motion be granted and the Court enter an order:  (a) granting Preliminary Approval of the Settlement; (b) certifying the Settlement Class; (c) appointing Settlement Class counsel; (d) scheduling a Fairness Hearing and establishing all related deadlines; (e) directing that notice be provided to the Class in accordance with the Plan of Notice, and (f) ordering a stay of all proceedings in this and other class actions until the Court renders a final decision regarding the approval of this Settlement.

DATED:  August 10, 2006.

By____**/s/ Steve W. Berman**_____
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

- 23 -

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  122938 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 10, 2006, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED NATIONWIDE GSK CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF NOTICE PLAN** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

**/s/ Steve W. Berman**
Steve W. Berman

001534-16  122938 V1