# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**SETTLEMENT AGREEMENT AND RELEASE**
**OF THE GLAXOSMITHKLINE DEFENDANTS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

1.    Class Definition ...............................................................................................6

2.    Definitions..........................................................................................................7

3.    Settlement Consideration ...............................................................................20

      (a)    Class Members and ISHP Group Members ...................................20

      (b)    Participating States' Allocation .......................................................20

      (c)    Litigating States' Allocation ............................................................21

      (d)    Satisfaction of Defendants' Obligations .........................................21

4.    Allocation Between Consumer Class Members, TPP Class Members and ISHP Group
      Members ..........................................................................................................22

5.    Agreements Concerning Participating State Plaintiffs .................................23

6.    Agreements Concerning Litigating State Plaintiffs ......................................26

7.    Agreement Concerning ISHP Group .............................................................29

8.    Reasonable Best Efforts to Effectuate This Agreement ................................33

9.    Motion for Preliminary Approval ..................................................................33

10.   Entry of Final Judgment..................................................................................33

11.   Notice to AWP Payor Classes.........................................................................33

12.   Class Claims Process .......................................................................................34

13.   Effective Date ..................................................................................................36

14.   Termination......................................................................................................36

15.   Qualified Settlement Fund ..............................................................................37

16.   Modification of the Settlement Fund and TPP Opt-Out Provisions ..............38

17.   Refunds to GSK for TPP Opt-Out/TPP Opt-Out Requirements....................38

      (a)    Refunds for TPP Opt Outs ...............................................................38

      (b)    TPP Opt-Out Requirements ..............................................................39

i

(c) Determination of TPP Opt-Out Amounts and GSK Opt-Out Refund, and Dispute Resolution Process ............................................................... 40

18. Attorneys' Fees ................................................................................. 41

19. All Class Claims Satisfied by Settlement Fund ................................. 42

20. Payment of Expenses ......................................................................... 42

21. Court Approval of Disbursements and Distributions ......................... 42

22. Disbursements and Distributions from the Settlement Fund ............. 42

23. Class Releases ................................................................................... 48

24. ISHP Group Releases ........................................................................ 49

25. Reservation of Claims ....................................................................... 50

26. Settlement of Additional Matters ...................................................... 51

27. Preservation of Rights ....................................................................... 51

28. Effect of Termination ........................................................................ 52

29. No Admission .................................................................................... 53

30. Class Certification for Settlement Purposes Only ............................. 54

31. Stay and Resumption of Proceedings ................................................ 54

32. Dismissal of Claims .......................................................................... 55

33. Consent to Jurisdiction ..................................................................... 55

34. Resolution of Disputes: Retention of Jurisdiction ............................ 55

35. Enforcement of Agreement ............................................................... 55

36. Binding Effect ................................................................................... 56

37. Authorization to Enter Agreement .................................................... 56

38. No Party Is the Drafter ..................................................................... 56

39. Choice of Law ................................................................................... 56

40. Amendment or Waiver ...................................................................... 57

41. Execution in Counterparts ................................................................ 57

42.   Integrated Agreement .................................................................................................57

43.   Construction .................................................................................................................57

**DESCRIPTION**                                                                                                      **EXHIBIT**

GSK Covered Drugs ..........................................................................................................A

[Proposed] Preliminary Approval Order .............................................................................B

Long Form Notice to Consumers, with Claim Form and Exclusion Form.............................B-1A

Long Form Notice to TPPs, with Claim Form.......................................................................B-1B

Short Form Notice to Consumers .......................................................................................B-2A

Short Form Notice to TPPs ................................................................................................B-2B

Settlement Notice Program ...............................................................................................B-3

[Proposed] Final Order and Judgment ...............................................................................C

Class Escrow Agreement ...................................................................................................D

Participating States' Escrow Agreement .............................................................................E

Litigating States' Escrow Agreement .................................................................................. F

Claims Process Explanation...............................................................................................G

ISHP List...........................................................................................................................H

ISHP Claims Documentation ............................................................................................. I

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## SETTLEMENT AGREEMENT AND RELEASE
## OF THE GLAXOSMITHKLINE DEFENDANTS

This Settlement Agreement and Release of the GlaxoSmithKline Defendants ("this Agreement" or this "Settlement" or the "GSK MDL Agreement" ) is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Subject to the approval of the MDL Court, this Agreement is entered into between and among (i) Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), which is, along with GlaxoSmithKline, plc and Glaxo Wellcome, Inc., a named defendant in the above-captioned matter (collectively the "GlaxoSmithKline Defendants" or the "GSK Defendants"), (ii) Class Representatives on behalf of themselves and the AWP Payor Classes (as such classes are hereinafter defined) (the "Class Plaintiffs"), and (iii) the members of the ISHP Group (as hereinafter defined), by and through their respective counsel (collectively "the Parties");

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a consolidated and coordinated proceeding, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1430, (the "MDL Class Actions"), comprised of actions in which Class Plaintiffs have alleged, *inter alia*, that the GSK Defendants (among others) have engaged in unlawful inflation and misrepresentation of published Average

1

Wholesale Prices ("AWPs") and the unlawful use of AWPs in the marketing of certain drugs covered by Medicare Part B, including physician-administered drugs, as set forth in putative class action complaints that were transferred to and/or consolidated with the MDL Class Actions and in several consolidated Complaints filed by the Class Plaintiffs in the MDL Class Actions (collectively the "MDL Class Complaints");

WHEREAS, there exist  various entities, consisting of certain health insurance companies and health plans (referred to and defined herein below as the "Independent Settling Health Plans," "ISHPs" or the "ISHP Group") which have claims against the GSK Defendants that are identical to those brought in the MDL Class Actions and which, in lieu of litigating such claims independently or as part of a class, wish to enter into a settlement of those claims in accordance with the provisions set forth herein;

WHEREAS, as a condition precedent to this Agreement, the ISHP Group has represented, and has provided information sufficient for Lead Class Counsel and Defendants to establish, that the ISHPs, in the aggregate, provide or administer prescription drug and health benefits to approximately sixty percent (60%) of the covered lives privately insured in the United States (based on U.S. Census data published December 31, 2004), which information is summarized in Exhibit H hereto;

WHEREAS, this Agreement is entered into by the Parties in conjunction with separate but related State Settlement Agreements and Releases and/or stipulated Consent Judgments (the "Participating State Agreements") entered into by and between (i) GSK, on behalf of itself and the other GSK Defendants and (2) certain additional Plaintiffs comprised of the States (and/or the People of the States), through their Attorneys General, of New York, Connecticut, Nevada, Montana and Arizona (the "Participating State Plaintiffs"), who have filed similar claims against the GSK Defendants related to the published Average Wholesale Price ("AWP") of GSK's drugs

in their own jurisdictions, including claims pursuant to the State's *parens patriae* authority and/or consumer restitution claims and/or penalty claims, on behalf of consumers in their respective States (the "Participating State Actions," collectively with the MDL Class Actions the "AWP Actions");

WHEREAS, Defendants have asserted a number of defenses to the claims by the Class Plaintiffs and the Participating State Plaintiffs (collectively, the "AWP Plaintiffs") in all of the AWP Actions;

WHEREAS, the AWP Plaintiffs and the GSK Defendants agree that this Agreement and the Participating State Agreements shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the GSK Defendants or of the truth of any of the claims or allegations alleged in the AWP Actions or as a waiver of any defenses thereto;

WHEREAS, Class Plaintiffs' Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Class Actions, including the claims asserted in the complaints filed in the MDL Class Actions and the possible legal and factual defenses thereto, that it would be in the best interests of the Class Plaintiffs to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the AWP Payor Classes herein defined; and, further, that counsel representing the Class Plaintiffs consider the settlement set forth in this Agreement to be fair, reasonable and adequate and in the best interests of the AWP Payor Classes and all putative members of the AWP Payor Classes;

WHEREAS, ISHP Group Counsel have likewise concluded, after investigation of the facts and careful consideration of the circumstances of the relevant claims and potential claims by the members of the ISHP Group, including the possible legal and factual defenses thereto,

that it would be in the best interest of the ISHP Group to enter into this Agreement;

WHEREAS, Defendant GSK, through its counsel, and the Class Plaintiffs, through their counsel, after months of vigorous, arms-length negotiations, have conditionally agreed herein to payment by GSK of Seventy Million Dollars ($70,000,000.00) (the "Settlement Amount") to settle the MDL Class Actions in their entirety, as well as (a) the claims of the ISHP Group (b) the *Parens Patriae*/Consumer Restitution and Penalty Claims of the Participating States, as well as claims by certain Participating State non-Medicaid entities and (c) the *Parens Patriae*/Consumer Restitution and Penalty Claims and certain other claims of any Litigating States that timely elect to become Additional Participating States (as further explained below);

WHEREAS, counsel representing the Participating State Plaintiffs have engaged in vigorous arms-length negotiations with Consumer Allocation Counsel and Third-Party Payor Allocation Counsel, who were appointed by Lead Class Counsel to represent the Class Plaintiffs in the MDL Class Actions, to secure a portion of the Settlement Amount for potential payments to the Participating States in the total amount of Two Million Five-Hundred Thousand Dollars ($2,500,000.00), as well as certain other consideration hereunder as described in Paragraph 5 below;

WHEREAS, an additional portion of the Settlement Amount in the amount of Two Million Dollars ($2,000,000.00) will be set aside in accordance with the provisions of  Paragraph 3 (c) below, and certain other consideration has been provided hereunder, including that described in Paragraph 6 below, so that GSK may settle all of the AWP *Parens Patriae*/Consumer Restitution and Penalty Claims and certain other claims filed against the GSK Defendants by the State Attorneys General of Pennsylvania, Illinois, Wisconsin, and/or Kentucky (the "Litigating State Plaintiffs"), should any of those States timely elect to become Additional Participating States as described below;

WHEREAS, Consumer Allocation Counsel and TPP Allocation Counsel further engaged in vigorous arms-length negotiations to apportion the Settlement Fund Amount, as defined below, between Consumers and TPPs, and reached agreement to apportion thirty percent (30%) of the Settlement Fund Amount to Consumers and seventy percent (70%) of the Settlement Fund Amount to TPPs (including the TPPs who are now defined as members of the ISHP Group), as further described below;

WHEREAS, Lead Class Counsel have determined it to be in the best interest of the Class and necessary to effectuate this Agreement to take steps to ensure the participation of the ISHP Group in the Settlement;

WHEREAS, ISHP Group Counsel have engaged in vigorous arms-length negation with Lead Class Counsel and have reached an agreement that certain amounts of the Settlement Fund apportioned to TPPs, equal to the amount ISHP Group members collectively would have been entitled to as TPP Class Members, shall be set aside for the benefit of the ISHP Group and paid under certain conditions as more fully set forth below;

WHEREAS, the settlement between the ISHP Group and the GSK Defendants requires a coordination of the claims administration process for TPP Class Members and the ISHP Group;

WHEREAS, the GSK Defendants, despite their belief that they have good defenses to the claims asserted against them in all of the AWP Actions, including the MDL Class Actions and actions filed by by the Participating State Plaintiffs and the Litigating State Plaintiffs, have nevertheless agreed to enter into this Agreement and the Participating State Agreements to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to resolve these AWP Actions;

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of GSK, Class Plaintiffs and the ISHP Group Members that the MDL Class Actions, and all claims of the

AWP Payor Classes and ISHP Group Members described herein, be settled, compromised and/or dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to Class Plaintiffs, the ISHP Group or the GSK Defendants, subject to the approval of the MDL Court, on the following terms and conditions:

1.    <u>Class Definition</u>. Subject to the MDL Court's approval, GSK and the Class Plaintiffs agree and consent, for settlement purposes, to the certification of the following classes in the MDL Class Actions (collectively, the "AWP Payor Classes"):

A.    <u>Medicare Part B Co-Payment Class ("Medicare Co-Payment Class")</u>

All natural persons in the United States who made, or who incurred a currently enforceable obligation to make, a co-payment based on AWP for a Medicare Part B covered drug manufactured by GSK set forth on <u>Exhibit A</u> hereto.  Excluded from the class are persons who made flat co-payments, who were reimbursed in full for any co-payments, or who have the right to be fully reimbursed for any co-payments.

B.    <u>Third-Party Payor MediGap Supplemental Insurance Class ("MediGap TPP Class")</u>

All Third-Party Payors in the United States who made reimbursements for a Medicare Part B covered drug manufactured by GSK and set forth on <u>Exhibit A</u> hereto, based on AWP, during the Class Period.

C.    <u>Consumer and Third-Party Payor Class for Payments Made for Medicare Part B Drugs Outside the Medicare Context ("Private Payor Class")</u>

All natural persons in the United States who made, or who incurred a currently enforceable obligation to make, a payment for, and all Third Party Payors in the United States who made reimbursements based on contracts using AWP as a reimbursement standard for purchases of, a physician administered drug manufactured by GSK set forth on <u>Exhibit A</u> hereto, during the Class Period.  Excluded from the class are natural persons who made flat co-payments, who were reimbursed in full for any payments or co-payments, or who have the right to be fully reimbursed for any payments or co-payments.

Excluded from each of the AWP Payor Classes are Defendants and their officers,

directors, management, employees, subsidiaries, and affiliates.  Excluded from the MediGap TPP

Class and the Private Payor Class are: (1) the United States government and its agencies and

departments, and all other governmental entities that made payments pursuant to any state's

Medicaid program; (2) the Independent Settling Health Plans (ISHPs), as defined in Paragraph

2(w) of this Agreement; and (3) all federal, state or local governmental entities, *except for* the

following, which are *not* excluded from the Medigap TPP or Private Payor Classes:  (a) non-

Medicaid state or local government entities that made AWP-based prescription drug payments as

part of a health benefit plan for their employees, but only with respect to such payments, and (b)

other non-Medicaid state government agencies or programs of the Participating States and of the

Additional Participating States, if any, *except that* such agencies and programs in New York and

Connecticut *are* excluded.

      2.   <u>Definitions</u>.  As used in this Agreement, the following terms shall have the

indicated meanings:

      (a)   "Additional Participating State" means any Litigating State that

enters into a separate written agreement with GSK within ninety (90) days of the date of

the preliminary approval by the MDL Court of this MDL Class Agreement pursuant to

Paragraph 6(b) of this MDL Class Agreement.

      (b)   "Class Counsel" means all attorneys and law firms that have

appeared in the MDL Class Actions on behalf of Class Plaintiffs.

      (c)   "Class Member" means any natural person and any entity falling

within the definition of the AWP Payor Classes as defined in Paragraph 1 above other than

any Class Opt-Outs.

(d)      "Class Opt-Out" means any natural person or entity falling within the definition of the AWP Payor Classes who timely and validly submits a request for exclusion from one or more of the AWP Payor Classes in accordance with the procedures set forth in the Settlement Notice.  ISHP Group Members do not fall within the definition of the AWP Payor Classes and therefore need not and cannot become Class Opt Outs.

(e)      "Class Period" means January 1, 1991 through January 1, 2005, inclusive, for the Medicare Co-Payment Class and the MediGap TPP Class, and January 1, 1991 through the date of this Agreement, inclusive, for the Private Payor Class.

(f)      "Class Representatives" of "Class Plaintiffs" or "Named Class Representatives" means the named plaintiffs in the Fourth Amended Master Consolidated Class Action Complaint, as filed with the MDL Court.

(g)      "Class Releasors" means each Class Member, including, (1) all Consumer Class Members, as well as all Consumer Class Members' successors, heirs, executors, trustees, administrators and assigns and (2) all TPP Class Members, including any self-funded benefit plans for which the TPP, as a third party administrator, provides prescription drug benefit services (provided the TPP has the legal right and authority to make such claim), as well as all TPP Class Members' respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and legal representatives, and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common

8

control with a Class Releasor.

(h)     "Class Escrow Account" means the account established pursuant to Paragraph 3(a) herein.

(i)     "Claims Administrator" means Complete Claim Solutions, Inc.

(j)     "CMS" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services.

(k)     "Consumer" means any individual falling within the definition of the Medicare Co-Payment Class and/or the Private Payor Class defined in Paragraph 1 who is a natural person and not a TPP.

(l)     "Consumer Allocation Counsel" means attorney Dianne M. Nast of the law firm of Roda Nast, PC, 801 Estelle Drive, Lancaster, Pennsylvania and attorney Kent M. Williams, 1300 Godward Street NE, Suite 6200, Minneapolis, Minnesota.

(m)     "Consumer Class Member" means Consumers who are not Class Opt-Outs.

(n)     "Consumer Settlement Pool" means 30% of the Settlement Fund Amount, after subtracting fees and expenses as set forth in Paragraph 22 (b) (iv) below, which has been allocated to pay authorized claims of Consumer Class Members.

(o)     "EPIC" means the State of New York's Elderly Pharmaceutical Insurance Coverage Program.

(p)      "Effective Date" is the date defined in Paragraph 13 below.

(q)      "GSK" or "GlaxoSmithKline" means SmithKline Beecham Corporation, d/b/a GlaxoSmithKline.

(r)      "GSK Defendants" or "GlaxoSmithKline Defendants" means SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, GlaxoSmithKline, plc and Glaxo Wellcome, Inc., as well as any affiliated entities that have been named as defendants in any of the MDL Class Actions.

(s)      "GSK Category A Drugs" means Zofran and Kytril injectibles, as described with specificity in Exhibit A hereto.

(t)      "GSK Category B Drugs" means the GSK drugs covered by Medicare Part B other than Zofran and Kytril injectibles that are described with specificity in Exhibit A hereto.

(u)      "GSK Drugs" of "GSK Covered Drugs" means GSK Category A Drugs and GSK Category B Drugs.

(v)      "GSK Releasees" means the GSK Defendants and each of their present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing as of the date of this Agreement.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a GSK Releasee.

(w)     "Independent Settling Health Plans," the "ISHP Group," or "ISHPs" means all of the entities identified on Exhibit H to this Agreement (the "ISHP Group Members"), together with all self-funded healthcare plans and/or entities ("SFPs") for which one or more ISHP Group Member provides or provided prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator and on whose behalf the ISHP Group Member has legal authority and authorization to make a claim, to the extent that such ISHP Group Member administered such SFP's purchases of GSK Drugs.  Such SFPs will be identified in the Claim Documentation submitted by ISHP Group Members pursuant to Paragraph 7 of this Agreement.

(x)     "ISHP Group Counsel" means the law firms of Lowey Dannenberg Bemporad & Selinger P.C., Rawlings & Associates, and Robins, Kaplan, Miller & Ciresi, LLP.

(y)     "ISHP Group Recognized Claim Percentage" or "ISHPRCP" means the total amount of claims by all ISHP Group Members that are allowed by the Claims Administrator, divided by the total allowed claims of (a) all Authorized TPP Claimants, (b) all members of the ISHP Group, and (c) all TPP Opt-Outs for which GSK receives a refund from the TPP Settlement Pool pursuant to Paragraph 17 of this Agreement.

(z)     "ISHP Group Initial Payment" means the sum of Eleven Million Dollars ($11,000,000.00), which will be payable to the ISHP Group in accordance with Paragraph 7 hereof.  This amount was calculated by taking 75% of the estimated amount to be deposited into the ISHP Settlement Pool pursuant to Paragraph 4 herein (which amount

is net of all estimated expenses and fees as described in Paragraph 22(b)(iv) herein).

(aa)   "ISHP Over/Underage" means the ISHPRCP less thirty-seven and one half percent (37.5%).  For example, if the ISHPRCP is 60%, then the SHP Over/Underage would be positive 22.5%.  If the ISHPRCP is 25% then the SHP Over/Underage would be negative 12.5%.

(bb)   "ISHP Group Reversion Amount" means an amount calculated after all claims by TPP Claimants have been processed and the total allowed claim amounts for all Authorized TPP Claimants and the ISHP Group have been determined by the Claims Administrator, all in accordance with the procedure set forth on Exhibit G hereto.  The ISHP Group Reversion Amount is calculated by multiplying the ISHP Over/Underage times the total amount deposited into both the TPP Settlement Pool and the ISHP Settlement Pool (which amounts are both net of fees and expenses pursuant to Paragraph 22(b)(iv) herein) minus any amount of refund to GSK pursuant to Paragraph 17 herein.  If the resulting amount is a positive figure, such amount is to be paid to the ISHP Group from the ISHP Settlement Pool and, if necessary, the TPP Settlement Pool, as more fully described in Paragraph 7(g)(1) below.  If the resulting amount is a negative figure, such amount is to be paid to the TPP Settlement Pool from the ISHP Settlement Pool, as more fully described in Paragraph 7(g)(2) below.

(cc)   "ISHP Settlement Pool" means half of the 70% allocated hereunder to TPPs, which comes to 35% of the Settlement Fund Amount, after subtracting fees and expenses as set forth in Paragraph 22(b)(iv) below, which amount has been allocated to pay authorized claims of ISHP Group Members.

(dd)    "ISHP Group Releasors" means all ISHP Group Members, together

with all self-funded healthcare plans and/or entities (SFP's) for which one or more ISHP

Group Member provides or provided prescription drug or health benefit services through

administrative services-only contracts or as a third-party administrator and on whose behalf

the ISHP Group Member has legal authority and authorization to make a claim, to the

extent that such ISHP Group Member administered such SFP's purchases of GSK Drugs,

together with all ISHP Group Members' respective present and former direct and indirect

parents, subsidiaries, divisions, partners and affiliates, their respective present and former

stockholders, officers, directors, employees, managers, agents, attorneys and legal

representatives, and any predecessors, successors, heirs, executors, trustees, administrators

and assigns of each of the foregoing, all in their capacities as such.  As used in this

Paragraph, "affiliates" means entities controlling, controlled by or under common control

with an ISHP Group Member.

(ee)    "Lead Class Counsel" means the law firms of Hagens Berman Sobol

Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, Hoffman &

Edelson, LLC, and Kline & Specter, P.C.

(ff)    "Litigating State Plaintiffs" or "Litigating States" means Illinois,

Kentucky, Pennsylvania and Wisconsin, *i.e.*, those states that, through their Attorneys

General, filed AWP-related claims against GSK by April 6, 2006 which include *Parens

Patriae*/Consumer Restitution and/or Penalty Claims, but which by the date of this

Agreement have not agreed to become Participating State Plaintiffs in order to resolve all

such claims against the GSK Defendants hereunder.  The Litigating States may qualify to

become "Additional Participating States" hereunder, and thereby become entitled to a

13

portion of the "Litigating State Allocation" and other consideration described in Paragraph 6 below, if they timely qualify to do so in accordance with the procedures set forth in Paragraph 6 (b) below.

(gg)     "Litigating States' Allocation" means a portion of the Settlement Amount totaling $2,000,000.00.

(hh)     "MDL Court" means the Honorable Patti B. Saris, or if she is unavailable, another judge of the United States District Court for the District of Massachusetts, presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(ii)     "MDL Class Actions" means all putative class actions in which any of the GSK Defendants are named as a defendant and which have been transferred to and/or consolidated in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(jj)     "MDL Class Complaints" means all of the putative class action complaints that were transferred to and/or consolidated in or with the MDL Class Actions, including all of the Master Consolidated Class Action Complaints (through and including the Fourth Amended Master Consolidated Class Action Complaint) filed in the MDL Class Actions, including all counts of such complaints that were previously dismissed by the MDL Court (e.g. putative class RICO claims).

(kk)     "MDL Mediator" means Eric Green, Resolutions, LLC of Boston, Massachusetts.

(ll)     "Named Plaintiff" means all persons and entities that have been named plaintiffs in the Fourth Amended Master Consolidated Class Action Complaint filed with the MDL Court.

(mm)    "Participating State Plaintiffs" or "Participating States" means the states that have entered into "Participating State Agreements," namely the states of Arizona, Connecticut, Montana, Nevada and New York, which have, through their Attorneys General, filed claims against GSK related to the published Average Wholesale Price ("AWP") of GSK's drugs in their own jurisdictions, including claims pursuant to the State's *parens patriae* authority and/or consumer restitution claims and/or penalty claims on behalf of consumers in their respective States, and have agreed to resolve all such claims through separate State Settlement Agreements and Releases and/or stipulated Consent Judgments (hereinafter "Participating State Agreements") and/or as set forth hereunder.

(nn)    "Participating States' Allocation" means a portion of the Settlement Amount totaling $2,500,000.00.

(oo)    "Released Class Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Class Releasor who has not timely excluded himself, herself or itself from the AWP Payor Classes, whether or not they object to the settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly or

indirectly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to any drug price published by any commercial price reporting service, or provided by any GSK Releasee to any such commercial price reporting service  (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, that were or could have been alleged against any GSK Releasee in any of the MDL Class Complaints with respect to any and all of the GSK drugs listed on Exhibit A hereto and subject to class treatment hereunder.  "Released Class Claims" shall not include any claim against any person or entity that is not a GSK Releasee, any claim arising out of this Agreement, or any claim between any Class Member and any GSK Releasee that is unrelated to the allegations of the MDL Complaints, including unrelated breach of contract or economic injury claims, any product liability, breach of warranty, personal physical injury or intellectual property claim, any claim relating to the efficacy, safety or manufacture of GSK products, and any claim by any governmental entity (including any state Medicaid program or agency) that is not a member of the MediGap TPP Class or Private Payor Class as defined herein.

(pp)    "Released ISHP Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any ISHP Group Member, ever had, now has, or hereafter can, shall or may have, directly or indirectly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to any drug

16

price published by any commercial price reporting service, or provided by any GSK

Releasee to any such commercial price reporting service  (including, but not limited to,

AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing activity relating

to any such price, such as any reference to the difference between (1) a price paid and (2)

any reported price or reimbursement rate based on such a reported price, that were or could

have been alleged against any GSK Releasee in any of the MDL Class Complaints with

respect to any and all of the GSK Drugs listed on Exhibit A hereto.  "Released ISHP

Claims" shall not include any claim against any person or entity that is not a GSK

Releasee, any claim arising out of this Agreement, or any claim between any ISHP Group

Member and any GSK Releasee that is unrelated to the allegations of the MDL Complaints,

including unrelated breach of contract or economic injury claims, any product liability,

breach of warranty, personal physical injury or intellectual property claim, and any claim

relating to the efficacy, safety or manufacture of GSK products.

(qq)    "Released Claims" means any and all claims released by this

Agreement.

(rr)    Self-funded healthcare plans and/or entities, or "SFPs," means SFPs

for which one or more ISHP Group Member provides or provided prescription drug or

health benefit services through administrative services-only contracts or as a third-party

administrator and on whose behalf the ISHP Group Member has legal authority and

authorization to make a claim, to the extent that such ISHP Group Member administered

such SFP's purchases of GSK Drugs.  Such SFPs will be identified in the Claim

Documentation submitted by ISHP Group Members pursuant to Paragraph 7 of this

Agreement.

(ss)     "Settlement Amount" means the sum of Seventy Million Dollars

($70,000,000.00).

(tt)     "Settlement Fund Amount" means the Settlement Amount, minus the

$2,500,000.00 Participating State Plaintiffs' Allocation and the $2,000,000.00 Litigating

State Plaintiffs' Allocation, which GSK shall pay into the Class Escrow Account pursuant

to Paragraph 3(a) hereunder, plus any portion of the Litigating State Plaintiffs' Allocation

that is later deposited into the Class Escrow Account pursuant to Paragraph 6 (e) hereunder,

plus all interest or other income that accrues in the Class Escrow Account.  The

"Settlement Fund" is the fund to be used to pay all claims relating to settlement of the

MDL Class Actions and the Released ISHP Claims, which shall be held in the Class

Escrow Account until distributions are made as provided for herein.

(uu)     "Settlement Notice" means the Notice of Proposed Settlement of

Class Action, Motion for Attorneys' Fees and Settlement Hearing substantially in the form

annexed hereto as Exhibit 1 to Exhibit B and the Summary Notice for publication annexed

hereto as Exhibit 2 to Exhibit B, as the same may be modified in accordance with the

Court's rulings with respect to the motion for preliminary approval of this settlement.

(vv)     "Third-Party Payor" or "TPP" means a private or governmental

entity which was or is at risk, by contract, to pay all or part of the cost of any GSK drug

listed on Exhibit A hereto that was prescribed, provided or administered in the United

States for individual beneficiaries of the TPP's prescription drug or health coverage.

Excluded from the definition of "Third Party Payor" and "TPP" are Defendants and their

18

officers, directors, management, employees, subsidiaries, and affiliates, as well as (1) the

United States government and its agencies and departments, and all other governmental

entities that made payments pursuant to any state's Medicaid program; and (2) all federal,

state or local governmental entities, *except for* the following, which *are* included in the

definition of "Third Party Payor" or "TPP:"  (a) non-Medicaid state or local government

entities that made AWP-based prescription drug payments as part of a health benefit plan

for their employees, but only with respect to such payments, and (b) other non-Medicaid

state government agencies or programs of the Participating States and of the Additional

Participating States, if any.

(ww)   "TPP Allocation Counsel" means attorney Jonathan D. Karmel, The

Karmel Law Firm, 221 N. LaSalle Street, Suite 1414, Chicago, IL 60601.

(xx)   "TPP Class Members" means those entities falling within the

definition of the MediGap TPP Class and the Private Payor Class defined in Paragraph 1

above, excluding any Class Opt-Outs who are TPPs.  ISHP Group Members are TPPs but

are not TPP Class Members.

(yy)   "TPP Claimants" mean all TPP Class Members that file a claim

hereunder with the Claims Administrator, as well as EPIC, should EPIC file a claim with

the Claims Administrator hereunder.

(zz)   "TPP Settlement Pool" means half of the 70% allocated hereunder

to TPPs, which comes to 35% of the Settlement Fund Amount, after subtracting fees and

expenses as set forth in Paragraph 22(b)(iv) below, which has been allocated to pay

authorized claims of TPP Class Members.

(aaa)   "United States" means the United States of America including its states, commonwealths, territories and possessions.

3.      Settlement Consideration.

(a)      Class Members and ISHP Group Members.   Subject to the provisions hereof, and in full, complete and final settlement of the claims of the Class Members and the ISHP Group Members as provided herein, GSK shall cause to be transferred, within five (5) business days after the MDL Court enters an order granting preliminary approval of this Class Settlement Agreement, the Settlement Amount, minus the Participating State Plaintiffs' Allocation and the Litigating State Plaintiffs' Allocation, that is, Sixty-Five Million Five-Hundred Thousand Dollars ($65,500,000.00), into an escrow account designated by Lead Class Counsel (the "Class Escrow Account").  This payment shall be made by electronic funds transfer pursuant to written instructions to be provided to GSK by Lead Class Counsel on or the day after the date this Agreement is submitted to the MDL Court for preliminary approval.  The Class Escrow Account shall be established and administered pursuant to an Escrow Agreement substantially in the form annexed hereto as Exhibit D (the "Class Escrow Agreement").  Monies held in the Class Escrow Account shall be invested by the Escrow Agent (as defined in the Class Escrow Agreement) in short term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or other similar short-term United States government obligations, and any interest earned thereon shall become part of the Settlement Fund.

(b)      Participating States' Allocation:  In addition to causing the transfer to the Class Escrow Account described in subparagraph (a) above, on the same day GSK

shall also cause to be transferred Two Million Five-Hundred Thousand Dollars ($2,500,000.00) into a separate escrow account designated by counsel for the Participating States (the "Participating States' Escrow Account" or "PSEA").  This payment shall be made by electronic funds transfer pursuant to written instructions to be provided to GSK by one designated counsel for the Participating States on or the day after the date this Agreement is submitted to the MDL Court for preliminary approval.  The PSEA shall be established and administered pursuant to an Escrow Agreement substantially in the form annexed hereto as <u>Exhibit E</u>.  The funds in the PSEA are to be made available to satisfy certain claims of the Participating States, as more fully described in Paragraph 5 below.

(c)     <u>Litigating States' Allocation</u>:  In addition to causing the transfers set forth in subparagraphs (a) and (b) above, on the same day GSK shall also cause to be transferred Two Million Dollars ($2,000,000.00) into a separate escrow account designated and controlled jointly by Lead Class Counsel and counsel for GSK, referred to herein as the "Litigating States' Escrow Account" or "LSEA."  This payment shall be made by electronic funds transfer pursuant to written instructions to be provided to GSK by Lead Class Counsel on or the day after the date this Agreement is submitted to the MDL Court for preliminary approval.  The LSEA shall be established and administered pursuant to an Escrow Agreement substantially in the form annexed hereto as <u>Exhibit F</u>.  The funds in the LSEA are to be made available to satisfy certain claims of the Litigating States, as more fully described in Paragraph 6 below.

(d)     <u>Satisfaction of Defendants' Obligations</u>.  GSK's transfer of the $65,500,000.00 to the Class Escrow Account, plus GSK's transfer of $2,500,000.00 to the PSEA, plus GSK's transfer of $2,000,000.00 to the LSEA, shall fully satisfy the GSK

Defendants' obligation to make payments under this Agreement, and no other payment by any GSK Defendant shall be required hereunder or to resolve the MDL Class Actions or the Released ISHP Claims.  The GSK Defendants shall not thereafter have any liabilities, obligations or responsibilities with respect to the investment, payment, disposition or distribution of the Settlement Fund or the monies deposited into the Class Escrow Account or the PSEA.  GSK's obligations with respect to the monies transferred into the LSEA are set forth in Paragraph 6 (c) and 6 (e) below.

4. <u>Allocation Between Consumer Class Members, TPP Class Members and ISHP Group Members</u>

The $65,500,000.00 portion of the Settlement Amount paid by GSK into the Class Escrow Account, pursuant to Paragraph 3(a) above, plus any portion of the Litigating States' Allocation that is later deposited into the Class Escrow Account pursuant to Paragraph 6 (e) hereunder, plus all interest or other income that accrues in the Class Escrow Account, is the Settlement Fund Amount that will be used to pay authorized claims of Class Members, the authorized claims of ISHP Group Members, as well as class counsels' attorneys fees and expenses and other fees and expenses described in Paragraph 22 below.  Thirty percent (30%) of the Settlement Fund Amount minus fees and expenses, as set forth in Paragraph 22 (b) (iv) below, will become the "Consumer Settlement Pool," which will be used to pay authorized claims of Consumer Class Members.  Thirty-Five percent (35%) of the Settlement Fund Amount, minus fees and expenses as set forth in Paragraph 22 (b) (iv) below, will become the "TPP Settlement Pool," which will be used to pay authorized claims of TPP Class Members, and, in certain circumstances described in Paragraph 7(g)(1), may be used to pay the authorized claims of ISHP Group Members.  Thirty-Five percent (35%) of the Settlement Fund Amount, minus

fees and expenses as set forth in Paragraph 22(b)(iv) below, will become the "ISHP Settlement Pool," which will be used to pay authorized claims of ISHP Group Members, and, in certain circumstances described in Paragraph 7(g)(2), may be used to pay the authorized claims of TPP Class Members.

      5.     <u>Agreements Concerning Participating State Plaintiffs</u>.

      (a)     The Participating State Plaintiffs have agreed, in separate State Settlement Agreements and Releases and/or stipulated Consent Judgments (the "Participating State Agreements"), to resolve all of the *parens patriae*, consumer restitution and/or penalty claims asserted in separate lawsuits that each Participating State has filed against the GSK Defendants, in exchange for the consideration set forth in each Participating State Agreement. As set forth in Paragraph 3(b) above, GSK has also agreed hereunder to deposit $2,500,000.00 into the PSEA, which sum shall be made available to the Participating States, at their option, as compensation for the *parens patriae*, consumer restitution and/or penalty claims, including for costs and fees incurred in connection with the litigation of those claims, according to shares previously determined for each Participating State.  In addition, each Participating State may be awarded certain unclaimed funds hereunder by the MDL Mediator in accordance with the provisions of Paragraph 22 (b) (vii) b. below.  Additionally, as further detailed in the applicable Participating State Agreements, certain Participating States, namely the States of Arizona, New York and Connecticut, whose non-Medicaid state agencies or programs have paid for GSK Drugs, have agreed to settle all claims against the GSK Defendants resulting from those payments in exchange for the payment of a sum.  In the case of Arizona and New York, the aforementioned sum shall be determined by the Claims Administrator as the sum to which that entity would be entitled as a TPP Claimant hereunder.  In the case of Connecticut, the parties

have agreed that the amount that Connecticut's Non-Medicaid Medical Assistance Programs, including ConnPACE, SAGA and CADAP, would be entitled to as TPP Claimants hereunder, based on their purchases of GSK Drugs, is $30,000.00 (the "Connecticut Non-Medicaid Purchase Payment").

        (b)        The Participating States have each further agreed to resolve any and all AWP-based Medicaid claims they filed in their separate actions against the GSK Defendants, and to dismiss their separate lawsuits against the GSK Defendants, through separate Participating State Agreements entered into between GSK and each Participating State, which Participating State Agreements are not required to be and will not be presented to the MDL Court for approval.  The Participating State Agreements will be executed by the parties thereto contemporaneously with the execution of this GSK MDL Class Agreement.

        (c)        <u>Method of Payment of Participating State Allocation</u>:

        (1)        Within ten (10) business days from the date the MDL Court enters an order preliminarily approving this GSK MDL Class Agreement, counsel for each of the Participating States shall elect in writing (by e-mail to counsel for GSK and by e-mail or fax to the Escrow Agent for the PSEA), whether it wishes to receive its previously-negotiated share of the Participating State Allocation directly from the PSEA or whether it wishes to receive that share directly from GSK.  As part of those written elections, each Participating State shall specify its previously-negotiated share of the $2,500,000.00 allocation, expressed as a percentage of the $2,500,000.00 total, which percentages must add up to 100% for the written elections to be effective.

        (2)        Within ten (10) business days from the date all five Participating

States make effective written elections to GSK and the Escrow Agent for the PSEA as described above, the Escrow Agent for the PSEA shall calculate and deduct escrow fees and taxes (if any) from the PSEA, calculate the principal and interest amount accumulated in the PSEA to be available for distribution, calculate the share of each Participating State to be made available for distribution, and provide to counsel for GSK and each Participating State, and to Lead Class Counsel, a written interim accounting that sets forth these items and that specifies the share (expressed in dollars) of each Participating State available for distribution on a date certain five business days from the date of the accounting.

(3)     Within five (5) business days thereafter, the Escrow Agent for the PSEA shall cause the payment of the specified share of each State that elected to be paid from the PSEA to be made directly to that State, and shall cause the payment of the specified share of each State that elected *not* to be paid from the PSEA to be refunded to GSK.  For each State that elects *not* to be paid from the PSEA and for which GSK therefore receives a refund, thereafter GSK shall pay that State's share directly to that State in accordance with the terms of that State's Participating State Agreement.

(4)     The entire amount of the PSEA shall be disbursed as described above (although amounts, if any, needed for any tax payments deemed required by the Escrow Agent may be retained until they become due).  The Escrow Agent for the PSEA shall thereafter promptly provide to counsel for GSK and each Participating State, and to Lead Class Counsel, a final accounting.

(d)     Each Participating State retains the discretion to use its portion (if any) of the Participating State Allocation and any other funds awarded hereunder for purposes

25

reasonably related to the AWP litigation it initiated against GSK, including, but not limited to, the fees and costs it incurred in connection with such litigation.

(e)     The State of Arizona has non-Medicaid state agencies or programs that claim to have paid for GSK Drugs based on AWPs and which are TPP Class Members. Connecticut's Non-Medicaid Medical Assistance Programs, as well as the New York EPIC Program, though excluded from the TPP Classes, also claim to have paid for GSK drugs based on AWPs.  GSK and these three states, through the Participating State Agreements, as well as the Parties hereto, have agreed that the Arizona non-Medicaid state programs or agencies and the New York EPIC Program may submit claims to the Claims Administrator hereunder, that such claims shall be adjudicated as if they are claims by TPP Claimants hereunder, and that such claims shall be paid (or declined) in the same way as the claims of TPP Claimants hereunder. With respect to Connecticut's Non-Medicaid Medical Assistance Programs, pursuant to the terms of the Participating State Agreement between GSK and the State of Connecticut, and by agreement of the parties hereto, at the same time as set forth in Paragraph 5(c)(3) above for payment to Participating States of their share of the Participating State Allocation from the PSEA, the Escrow Agent for the Class Escrow Account shall cause the Connecticut Non-Medicaid Purchase Payment amount to be paid to the State of Connecticut from the Class Escrow Account.  Payments made to any of the Participating States and/or Additional Participating States relating to non-Medicaid state purchases of GSK drugs, including any payments made to the State of Connecticut pursuant to this paragraph, shall be accounted for by the claims administrator in the same manner as payments made to TPP Class Members.

6.     Agreements Concerning Litigating State Plaintiffs.

(a)        The Parties hereto have agreed to make the Litigating States'
Allocation amount, as well as other consideration hereunder, available to satisfy the *parens*
*patriae*/consumer restitution and penalty claims of the Litigating States, under the conditions set
forth herein.

(b)        In order for any of the Litigating States to be entitled to any payment
or other consideration hereunder, GSK and the Litigating State must first enter into a separate
written agreement within ninety (90) days of the date a preliminary approval order is entered by
the MDL Court for this GSK MDL Class Agreement, under which the Litigating State agrees to
resolve all of its *parens patriae*/consumer restitution and penalty claims in its AWP lawsuit
against the GSK Defendants.  Counsel for GSK must present any such separate written
agreement with a Litigating State to Lead Class Counsel and to the Escrow Agent for the LSEA
within five (5) business days from receipt of a fully executed copy thereof, at which time the
Litigating State shall become an "Additional Participating State" hereunder.

(c)        Each Additional Participating State shall be entitled to a share of the
Litigating States' Allocation amount deposited into the LSEA hereunder, plus interest
accumulated in the LSEA, minus escrow fees and taxes (if any), in the following individual State
shares, which were calculated based upon the size of each Litigating States' Medicare population
(according to publicly available 2004 data) relative to the total Medicare population of all four of
the Litigating States, as follows:  Pennsylvania: 40.2%;  Illinois: 31.8%;  Wisconsin: 15.5%;
Kentucky: 12.5%.  Each Additional Participating State shall be paid its share from the LSEA
within One-hundred (100) days of the date a preliminary approval order is entered by the MDL
Court for this GSK MDL Class Agreement.

(d)         Each Additional Participating State may also be awarded, through a binding mediation conducted by the MDL Mediator, some portion of any unclaimed monies from the Consumer Settlement Pool in accordance with the provisions of Paragraph 22 (b) (vii) b. hereunder.  In addition, state government agencies (other than state Medicaid agencies or programs) within each Additional Participating State may qualify as TPP Class Members hereunder and may therefore, if qualified, make claims as TPP Claimants hereunder.

(e)         If any Litigating State has not timely entered into a separate written agreement to resolve all of its *parens patriae/*consumer restitution and penalty claims and thus become an Additional Participating State through the process set forth herein, then on the One-hundred fifth (105th) day after preliminary approval of the GSK MDL Class Agreement by the MDL Court, (1) twenty-five percent (25%) of each such Litigating State's share of the money in the LSEA on that date will be paid by the Escrow Agent for the LSEA, at the direction of Lead Class Counsel and GSK, into the Class Escrow Account for distribution to Class Members as further provided herein, and (2) the remaining seventy-five percent (75%) of each such Litigating States' share (the "State Reversion Amount") will be retained in the LSEA for further use and distribution as set forth immediately below.

(f)         The State Reversion Amount, if any, shall be used, at the direction of Lead Class Counsel, with notice to GSK, first to reimburse the Consumer Settlement Pool for the cost of designing and implementing a notice program to reach Consumer Class Members and then (if there are funds remaining in the LSEA), to reimburse the TPP Settlement Pool for the cost of designing and implementing a notice program to reach TPP Class Members.  If there are funds remaining in the LSEA after (i) payments are made to all Additional Participating States under subparagraph (c) above, (ii) payments are made to reimburse for the cost of notice to

28

Consumers and TPPs as set forth herein, and (iii) all escrow fees and taxes (if any) are paid by

the LSEA, then all such funds shall be returned to GSK from the LSEA within ninety (90) days

of the end of the notice period set forth in Exhibit 3 to Exhibit B hereto.

      7.      Agreement Concerning ISHP Group.

      (a)      Within Ten (10) business days after the MDL Court enters an order

granting preliminary approval of this Agreement, Lead Class Counsel shall cause to be

transferred from the ISHP Settlement Pool within the Class Escrow Account, via electronic

transfer to ISHP Group Counsel, the ISHP Group Initial Payment, for distribution as appropriate

to the ISHP Group Members.

      (b)      On or before the date the MDL Court sets for final submission of

claims by TPP Class Members, the ISHP Group shall provide Claim Documentation, as set forth

on Exhibit I hereto, to GSK Counsel and the Claims Administrator, with a copy to Lead Class

Counsel.  The Claim Documentation shall include a list of all SFPs, as defined in Paragraph 2

(rr) above. Each ISHP Group member shall warrant that any Claims Documentation, data, or

other information submitted to the Claims Administrator will be true and accurate.

      (c)      To verify the accuracy of claims information and to prevent

duplication of claims, the Claims Administrator may request additional information from ISHP

Group Members as deemed appropriate by the Claims Administrator.  ISHP Group Members

will provide additional information to the Claims Administrator as requested.  The calculation of

the ISHP Group Reversion Amount shall not include claims of any ISHP Group Member that

fails to timely submit the above Claims Documentation or additional claims documentation

requested by the Claims Administrator.

(d)      If, in the judgment of the Claims Administrator, a claim submitted by an ISHP Group Member is duplicative of a claim, or any portion of a claim, submitted independently by an SFP or other TPP, or if a claim by any ISHP Group Member is submitted on behalf of an entity that has independently submitted a valid request for exclusion, the claim, or any duplicative portion of a claim, made by the ISHP Group Member shall be disallowed by the Claims Administrator.

(e)      The Claims Administrator shall make available to ISHP Group Counsel a list of the identities of all TPP Class Members that submit Claim Documentation (the "TPP Claimant List").  The TPP Claimant List shall be deemed confidential and can be used only for the purposes of determining duplication of claims or whether any entity submitting Claims Documentation falls within the definitions of TPP and TPP Claimant as set forth in Paragraphs 2(vv) and 2(yy).  The TPP Claimant List shall be generated by the Claims Administrator and transmitted to the ISHP Group Counsel no later than the date for the final approval hearing set by the MDL Court.  The Claims Administrator shall also generate and transmit to ISHP Group Counsel an updated and final TPP Claimant List twenty (20) days after the date set for postmark of all claims by Class Members, or sooner if available.  ISHP Group Counsel shall have the opportunity, within twenty-one (21) days of receipt of a TPP Claimant List, to identify in writing to Lead Class Counsel any TPP Class Member that ISHP Group Counsel believe has submitted a claim that is duplicative of a claim already asserted by another TPP Class Member or ISHP Group Member, or that falls outside the definition of TPP or TPP Claimant as set forth in Paragraphs 2(vv) and 2(yy).  At least thirty-five (35) days prior to any distribution of the Net TPP Settlement Pool under Paragraph 22(b)(ix) to TPP Class Members, Lead Class Counsel shall provide ISHP Group Counsel with the proposed computation of the

ISHP Group Reversion Amount payment, including a list of the Claim Administrator's determination of the amount of each ISHP Group Member's allowed claims.  Such computation will become binding upon the ISHP Group unless within ten (10) business days or receipt of such computation, ISHP Group Counsel disputes the amount of the proposed ISHP Group Reversion Amount payment in writing to Lead Class Counsel.  In the event of such a dispute, ISHP Group Counsel may request and receive from the Claims Administrator, in consultation with Lead Class Counsel, a list of the TPP Class Members who have the 50 largest aggregate claims approved by the Claims Administrator and the amount of such claims (the "TPP List").  The TPP List shall be held in confidence by ISHP Group Counsel, will be provided for attorney's eyes only, and shall not be provided or shared with any other person, including any member of the ISHP Group or another TPP.  ISHP Group Counsel shall be entitled to show the TPP List to a single third-party consultant who is not employed by any TPP, and who agrees in writing to be bound by the same confidentiality as ISHP Group Counsel, solely for the purposes of dispute resolution under this Paragraph.  Other than as provided in this Agreement, the ISHP Group and ISHP Group Counsel shall not be entitled to any information collected or generated by the Claims Administrator or Lead Class Counsel, except to the extent permitted by the MDL Mediator in a proceeding under subparagraph (f) below.

(f)      Lead Class Counsel and the ISHP Group shall attempt to resolve any disputes raised pursuant to this Paragraph through good faith negotiations.  If the dispute cannot be resolved informally, it shall be submitted to binding arbitration by the MDL Mediator.  The MDL Mediator's decision shall be final and will not be subject to appeal.  Defendants shall not be involved in any arbitration pursuant to this Paragraph, and shall have not obligations or liability with respect thereto.

(g)        On or before five (5) days after the Effective Date of this Agreement, or within five (5) days of any resolution of a dispute under subparagraph (f) above, or within five (5) days after all TPP claims have been processed and the total authorized claim amounts for all Authorized TPP Claimants and ISHP Group Members has been finally determined, whichever is later, the Lead Class Counsel or ISHP Group Counsel, as the case may be, shall cause the payment of the ISHP Group Reversion Amount to be made as follows:

(1)    If the ISHP Group Reversion Amount is calculated by reference to a positive ISHP Over/Underage, Lead Class Counsel shall cause the Escrow Agent to transfer into an account designated by ISHP Group Counsel the ISHP Group Reversion Amount from the funds remaining in the ISHP Settlement Pool.  Any funds remaining in the ISHP Settlement Pool after such transfer is made and the entire ISHP Group Reversion Amount has been paid shall be transferred to the TPP Settlement Pool and distributed as the remainder of the funds in the TPP Settlement Pool pursuant to Paragraph 22(b)(ix) herein.   If the funds remaining in the ISHP Settlement Pool are not sufficient to pay the entire ISHP Group Reversion Amount, then in addition to transfer of the remaining funds in the ISHP Settlement Pool, Lead Class Counsel shall cause the Escrow Agent to transfer as much of the funds in the TPP Settlement Pool to the account designated by ISHP Group Counsel until the entire ISHP Group Reversion Amount has been transferred to the ISHP Group.

(2)    If the ISHP Group Reversion Amount is calculated by reference to a negative ISHP Over/Underage, Lead Class Counsel shall cause to be transferred to the TPP Settlement Pool as much of the funds remaining in the ISHP Settlement Pool as are necessary to satisfy the ISHP Group Reversion Amount.

(h)         Under no circumstances shall the GSK Defendants be liable for

collective payment of more than the Seventy Million Dollars ($70,000,000.00) to be paid by

GSK pursuant to this Agreement, regardless of the outcome of any disputes pursuant to

subparagraph (f) or the calculation of the ISHP Group Reversion amount pursuant to this

Paragraph.

8.      <u>Reasonable Best Efforts to Effectuate This Agreement</u>.  The undersigned parties

and their counsel agree to use their reasonable best efforts, including all steps and efforts

contemplated by this Agreement and any other steps and efforts that may be necessary or

appropriate, by order of the MDL Court or otherwise, to carry out the terms of this Agreement.

9.      <u>Motion for Preliminary Approval</u>.  Concurrent with the submission of this

Agreement for consideration by the MDL Court, Lead Class Counsel shall submit to the MDL

Court a motion for preliminary approval of the settlement set forth in this Agreement, which

requests entry of the Preliminary Approval Order substantially in the form annexed hereto as

<u>Exhibit B</u>, and which includes a provision that enjoins Class Members and ISHP Group

Members from litigating Released Claims pending final approval of the settlement.

10.     <u>Entry of Final Judgment</u>.  If, following the Settlement Fairness Hearing scheduled

by the MDL Court pursuant to the Preliminary Approval Order, the MDL Court approves this

Agreement, then counsel for the parties shall request that the MDL Court enter an Order and

Final Judgment substantially in the form annexed hereto as <u>Exhibit C</u>.

11.     <u>Notice to AWP Payor Classes</u>.

(a)         In the event the MDL Court preliminarily approves the Settlement

set forth in this Agreement, Lead Class Counsel shall, in accordance with Rule 23 of the Federal

Rules of Civil Procedure and the Preliminary Approval Order, provide all those members of the AWP Payor Classes who can be identified by reasonable means with the best notice practicable under the circumstances, as ordered by the MDL Court, in substantially the form annexed hereto as Exhibits 1 and 2 of Exhibit B or as otherwise ordered by the MDL Court, which shall include publication on a web site established by Lead Class Counsel or the Claims Administrator.

(b)        As part of the class notice program referenced above, Lead Class Counsel will seek, through the MDL Court if necessary, information from CMS concerning the identity, contact (including last known address) and payment information of individuals who may be members of the Medicare Co-payment Class who may have made a payment, or incurred a currently enforceable obligation to make a payment, under Medicare Part B for the GSK manufactured drugs Zofran (in its injectible forms) and Kytril (in its injectible forms, through the date it was divested by GSK in December 2000).  This information will be utilized to provide notice to such individuals during the class notice and class claims administration process if, and only if, such information can be obtained from CMS within a reasonable time period. "Reasonable" as used in this subparagraph shall be determined at the sole discretion of Lead Class Counsel, subject to review by the MDL Court.

(c)        All costs of notice to the AWP Payor Classes shall be paid exclusively from the Settlement Fund or, if there is a State Reversion Amount as described in Paragraph 6(f) above, then pursuant to the provisions of that Paragraph 6(f), but in no event shall any of the GSK Defendants be responsible for payment of notice costs to the AWP Payor Classes.

12.    Class Claims Process.

(a)        The minimum requirements for a Class Member's claim to be considered valid are set forth in Exhibit G, which is incorporated herein by reference and will be submitted to the MDL Court for preliminary approval.  Lead Class Counsel, in consultation with Consumer Allocation Counsel, TPP Allocation Counsel and counsel for GSK, have established for purposes of this Agreement a "Recognized Claim Percentage" associated with each Medicare Part B drug manufactured by GSK and set forth on Exhibit A, and have created a schedule of such Recognized Claim Percentages and a description of the claims payment procedures for the AWP Payor Classes and the calculation of recognized claims of ISHP Group Members, as described in Exhibit G.  As set forth in Exhibit G, the Recognized Claim Percentages differ according to whether the drug to which the claim relates is a "GSK Category A Drug" (Zofran and Kytril injectibles), which have the highest Recognized Claim Percentages, or a "GSK Category B Drug" (other GSK Medicare Part B-covered Drugs), which have significantly lower Recognized Claim Percentages.  The applicable Recognized Claim Percentage for each GSK drug will be applied to the purchase amount claimed by each Class Member, ISHP Group Member or TPP Claimant who makes an Authorized Claim for that drug in order to determine the total payment to be made to each Class Member, ISHP Group Member or TPP Claimant deemed to be eligible for such payments through the claims process (the "Recognized Claim Amount").

(b)        In addition to the application of the Recognized Claim Percentage, a Minimum Payment shall be made to all Consumer Class Members who file a valid claim and whose Recognized Claim Amount falls below a certain amount, all as set forth on Exhibit G.

(c)        As set forth in Exhibit G, a claim may be made pursuant to this Agreement on behalf of a TPP Class Member or ISHP Group Member by an agent thereof,

including the third-party administrator of a TPP Class Member's or an SFP's prescription drug benefit plan, if the agent has the legal authority to make such a claim pursuant to contract and the TPP Class Member or SFP authorizes the agent to make such a claim.

13.  <u>Effective Date</u>.  The settlement detailed in this Agreement shall be effective on the first date after all of the following events have occurred:

(a)  entry of the Preliminary Approval Order substantially in the form annexed hereto as <u>Exhibit B</u>, or entry of a Preliminary Approval Order not substantially in the form of annexed hereto with respect to which neither party invokes any rights of termination pursuant to Paragraph 14 below;

(b)  final approval by the MDL Court of this Class Settlement, following notice to members of the AWP Payor Classes and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(c)  entry by the MDL Court of an Order and Final Judgment, substantially in the form set forth in <u>Exhibit C</u> annexed hereto, and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the MDL Court enters an order and final judgment in form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Settlement as permitted by Paragraph 14, the date that such Alternative Judgment becomes final and no longer subject to appeal or review.

14.  <u>Termination.</u>  GSK's Counsel and Lead Class Counsel shall each have the right to

terminate the Settlement and this Agreement by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of:  (a) the MDL Court declining to enter the Preliminary Approval Order substantially in the form annexed hereto as Exhibit B; (b) a decision by the MDL Court declining to approve this Agreement or any material part of it; (c) the MDL Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit C; (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.  A modification at any stage or reversal on appeal of (1) any amount of Class Counsels' attorneys' fees and expenses requested by Lead Class Counsel from the Settlement Fund, (2) the amount of incentive fees to be awarded to named Class Representatives or (3) the proposed plan of allocation set forth in Paragraphs 3 and 4 of this Agreement, shall not constitute a material change that would entitle a party to terminate the Settlement pursuant to this paragraph.  Should the MDL Court decline to certify a class or classes encompassing all fifty states and the District of Columbia, GSK will be entitled to terminate the settlement.

15.    Qualified Settlement Fund.  The Class Escrow Account, the PSEA and the LSEA, established pursuant to Paragraphs 3(a), 3(b) and 3(c) above, are each intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  Whether or not final approval of this settlement has occurred, and whether or not the Class Escrow Account, the PSEA or the LSEA qualifies as a qualified settlement fund within the

meaning of Treas. Reg. § 1.468B-1, the Escrow Agents shall cause to be paid from the Class

Escrow Account, the PSEA, and the LSEA any taxes or estimated taxes due on any income

earned on the funds in those accounts, and all related costs and expenses.  The parties elect that

the Class Escrow Account, the PSEA and the LSEA should be treated as qualified settlement

funds from the earliest possible date and agree to make any "relation back" election that may be

available.  If amounts received by Class Members, the Participating State Plaintiffs, the

Additional Participating State Plaintiffs or by GSK upon any refund or other reversion, are

construed to be income, it is the recipient's sole responsibility to pay taxes on the amount

construed to be income, plus any penalties or interest.

16.     <u>Modification of the Settlement Fund and TPP Opt-Out Provisions</u>.  As detailed in

the proposed Settlement Notices attached hereto as <u>Exhibits 1 and 2</u> to <u>Exhibit B</u>, all requests to

opt out of any of the AWP Payor Classes must be received no later than fifteen (15) days before

the final approval hearing set by the MDL Court.

17.     <u>Refunds to GSK for TPP Opt-Outs/TPP Opt-Out Requirements</u>

(a)     <u>Refunds for TPP Opt Outs</u>.  In the event there are any TPP Opt-Outs,

namely TPPs that validly and timely request exclusion from the Medigap TPP Class or the

Private Payor Class (neither of which include ISHP Group Members), GSK shall be entitled to a

refund for each such TPP Opt-Out in an amount equal to $45,850,000.00 (which is 70% of

$65,500,000.00) times a percentage derived by dividing the amount of each such TPP Opt-Out's

Recognized Claim Amount (calculated, by the Claims Administrator, in the same manner that

the Recognized Claim for a TPP remaining in the Class or an ISHP Group Member would be

calculated) by the total of all Recognized Claims of (a) all TPP Class Members who file

acceptable claims, (b) all ISHP Group Members, and (c) all TPP Opt-Outs (the "GSK Opt-Out Refund"). All such GSK Opt-Out Refunds shall be paid to GSK in accordance with the provisions of Paragraph 22 (b)(v) below. Upon receipt of any refund under this paragraph, thirty-three percent (33%) of the total refund due GSK pursuant to this Paragraph resulting from TPP Opt-Outs, shall be retained in a separate interest-bearing account by GSK (the "GSK Opt-Out Refund Account") until any claims by Lead Class Counsel for attorneys fees relating to any TPP Opt-Outs with whom GSK settles have been resolved, but for no more than two years. GSK shall notify Lead Class Counsel of any settlement between GSK and a TPP Opt-Out or group of TPP Opt-Outs within ten (10) days of execution of any settlement agreement between GSK and a TPP Opt-Out or group of TPP Opt-Outs. Within thirty (30) days of (1) notification by GSK of such settlement or (2) the payment of the refund to GSK pursuant to this Paragraph, whichever is later, Lead Class Counsel shall submit to the MDL Court any motion for costs and expenses, including attorneys' fees, with respect to any portion of the refund amount paid to GSK that is attributable to a TPP Opt-Out with whom GSK has reached a settlement. The Court's decision on the motion by Lead Class Counsel shall be final and non-appealable and GSK shall distribute monies from the GSK Opt-Out Refund Account in accordance with the MDL Court's decision.

The total amount of the Settlement Fund shall be reduced by the amount of the total GSK Opt-Out Refunds, including for purposes of determining the final amount of the class attorneys fee award. The reduction shall be shared equally by the TPP Settlement Pool and the ISHP Settlement Pool.

(b)   TPP Opt-Out Requirements.   For purposes of implementation of this Agreement, including this Paragraph 17, a TPP Opt-Out (which does *not* include any ISHP Group Member) will be required to file a TPP Notice of Exclusion, as will be set forth in the preliminary approval

order issued by the MDL Court.  Each TPP Opt-Out will be requested, as part of its Notice of

Exclusion, to provide reasonable confirmation that its payments were based on the AWP of the

GSK Drugs listed on Exhibit A and the amount of its purchases for each such drug during the

Class Period, in order to demonstrate that it would otherwise be a TPP Class member and that it

wishes to opt-out of the AWP Payor Classes.  If additional information is needed by the parties

hereto or the Claims Administrator from any TPP Opt-Out to implement this Paragraph or any

other provision of this Agreement, the parties shall cooperate to obtain such information from the

TPP Opt-Out, including, but not limited to, seeking an order of the MDL Court to obtain such

information.

(c)     Determination of TPP Opt-Out Amounts and GSK Opt-Out Refund, and Dispute

Resolution Process.  The Claims Administrator shall in the first instance calculate the GSK Opt-

Out Refund due under this Paragraph for each valid TPP Opt-Out, as well as the total GSK Opt-

Out Refund due to GSK hereunder.

(1)     If GSK Counsel, Lead Class Counsel or ISHP Group Counsel

dispute the refund amount determined by the Claims Administrator, or if GSK Counsel, Lead

Class Counsel or ISHP Group Counsel determine that they have received insufficient purchase or

other information from the Claims Administrator or any TPP Opt-Out to determine the amount

of the total GSK Opt-Out Refund due and, therefore, a dispute exists regarding the amount of the

GSK Opt-Out Refund, the parties, the Claims Administrator and the TPP Opt-Out(s) shall

attempt informally to resolve any such dispute.

(2)     As part of any attempt to resolve such dispute, the Claims

Administrator, upon request by GSK Counsel, Lead Class Counsel or ISHP Group Counsel, shall

seek additional information from the TPP Opt-Out and/or provide GSK Counsel, Lead Class

Counsel and ISHP Group Counsel with such additional claims information and data as is

reasonably necessary for GSK, Lead Class Counsel and ISHP Group Counsel to evaluate the

validity of the refund calculation.

     (3)    If the TPP Opt-Out does not provide such additional information

after the parties make reasonable efforts to obtain it, then the parties shall undertake good faith

efforts to estimate the TPP Opt-Out amount and the GSK Opt-Out Refund using publicly

available or other more easily obtainable information about the TPP Opt-Out, such as the TPP

Opt-Out's number of covered lives.

     (4)    The parties agree promptly to submit any unresolved disputes

concerning TPP Opt-Out amounts and/or the GSK Opt-Out Refund due to the MDL Court, and

the MDL Court's decision shall be binding and final and the parties waive any right to appeal.

    18.    <u>Attorneys' Fees</u>.

     (a)    Understanding that the award of attorneys' fees for Class Counsel is

a matter committed to the sole discretion of the MDL Court, the GSK Defendants will not

object to Class Counsel's request to the MDL Court for an attorneys' fee to be paid out of

the Settlement Fund or to any petition for fees on amounts returned to GSK and held in the

GSK Opt-Out Refund Account pursuant to Paragraph 17(a).

     (b)    ISHP Group Counsel have agreed to forgo seeking (1) a separate

counsel fee in the MDL Actions, and (2) any fee from GSK in connection with their work

concerning any of the Released ISHP Claims, and in lieu thereof will accept as payment of

ISHP Counsel Fees an amount negotiated between ISHP Group Members and Lead Class

Counsel, in accordance with the conditions set forth in a separate agreement between Lead

Class Counsel and ISHP Group Counsel, which agreement shall be identified to the MDL

Court in accordance with Fed.R.Civ.P 23(e).

19.     <u>All Class Claims Satisfied by Settlement Fund</u>.  Each Class Member and each

ISHP Group Member shall look solely to the Settlement Fund for settlement and satisfaction, as

provided herein, of all Released Class Claims and all Released ISHP Claims.

20.     <u>Payment of Expenses</u>.  The Defendants shall not be liable for any of the expenses

of the litigation of the MDL Class Actions or the pursuit of any of the Released ISHP Claims,

including without limitation attorneys' fees, fees and expenses associated with the provision of

notice to the members of the AWP Payor Classes, and claims administration, fees and expenses

incurred in administering the Class Escrow Account or the Settlement Fund, fees and expenses

of expert witnesses and consultants, and expenses associated with discovery, motion practice,

hearings before the Court and/or appeals.  All such fees and expenses as are approved by the

MDL Court shall be paid out of the Settlement Fund in accordance with this Agreement.

21.     <u>Court Approval of Disbursements and Distributions</u>.  Court approval shall be

required prior to any disbursement or any distribution from the Settlement Fund, but not for any

fees and expenses incurred to administer the PSEA, the LSEA, the Class Escrow Account and

the Settlement Fund under the Class Escrow Agreement, or taxes on the Settlement Fund, the

PSEA or the LSEA.

22.     <u>Disbursements and Distributions from the Settlement Fund</u>.  The Settlement Fund

shall be distributed as follows or as otherwise ordered by the Court:

(a)     <u>Prior to</u> the Effective Date of this Agreement:

(i)     Any fees and expenses incurred in administering the Class Escrow Account and the Settlement Fund shall be paid pursuant to the Class Escrow Agreement.  The costs of notice and claim administration of the Settlement shall be paid by the Escrow Agent to the Claims Administrator as approved by the MDL Court and at the direction of Lead Class Counsel with notice of such payments provided to counsel for GSK.;

(ii)     Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund, shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel and GSK.

(iii)     Any attorneys' fees and litigation expenses awarded by the MDL Court to Class Counsel in connection with Final Approval of this Settlement Agreement by the MDL Court.  Such attorneys fees and litigation expenses shall be paid to Lead Class Counsel for distribution to Class Counsel and then, in accordance with a separate agreement on legal fees, to ISHP Group Counsel.  Notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, any attorneys' fees and litigation expenses awarded by the MDL Court in connection with the Final Approval of this Settlement Agreement shall be paid by the Class Escrow Agent promptly after entry of the order awarding such fees and expenses, subject to Lead Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if any, as a result of any GSK Opt-Out Refund pursuant to Paragraph 17(a), or if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral

attack, the fee or expense award is reduced or reversed, or the settlement is terminated pursuant to Paragraph 14 of this Agreement.

(iv)     Payment shall be made, pursuant to Paragraph 7(a) of this Agreement, of the ISHP Initial Payment.

(v)     Payment shall be made of the Connecticut Non-Medicaid Purchase Payment, pursuant to Paragraphs 5(a) and 5(e) of this Agreement.

(b)     <u>After</u> the Effective Date of this Agreement the Settlement Fund shall be distributed as follows:

(i)     First, any remaining fees or expenses incurred in connection with the administration of the Class Escrow Account and the Settlement Fund shall be paid pursuant to the Class Escrow Agreement, and to the extent, if any, the reasonable fees and expenses incurred as part of notice and claims administration of the Settlement have not been paid, such fees and expenses shall be distributed to the Claims Administrator by the Escrow Agent with notice of such disbursements provided to the Lead Class Counsel;

(ii)     Second, disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel;

(iii)     Third, any incentive award determined by the MDL Court for services rendered to the AWP Payor Classes by the Named Class Representatives, either in the amounts to be recommended by Lead Class Counsel as set forth in the proposed notice

44

forms attached hereto as <u>Exhibit B</u> or as otherwise ordered by the MDL Court, shall be distributed to the Named Class Representatives  ;

(iv)     The Settlement Fund Amount, net of (1) payment of attorneys fees and expenses pursuant to Paragraph 22 (a) (iii), and (2) payment of other fees, costs, expenses and awards provided for in Paragraph 22 (a) (i) and (ii) and 22 (b) (i), (ii) and (iii), shall be segregated thirty percent (30%) for the benefit of Consumers (the "Consumer Settlement Pool") and thirty-five percent (35%) for the benefit of TPP Class Members (the "TPP Settlement Pool") and thirty-five percent (35%) for the benefit of ISHP Group Members (the "ISHP Settlement Pool");

(v)     Fourth, the payment to GSK of any GSK Opt-Out Refunds attributable to TPP Opt-Outs under Paragraph 17.  Any such GSK Opt-Out Refund shall be deducted from the TPP Settlement Pool and the ISHP Settlement Pool only, in equal amounts;

(vi)     Fifth, payments, if any, to any non-Medicaid state programs that are determined by the Claims Administrator to be entitled to a payment under Paragraph 5(e) and (6)(d) hereunder, except that the Connecticut Non-Medicaid Purchase Payment shall be made prior to the Effective Date as set forth in Paragraph 22 (a) (v) above. Any such payments shall be deducted from the TPP Settlement Pool and the ISHP Settlement Pool only, in equal amounts;

(vii)     Sixth, the balance of the Consumer Settlement Pool after deducting the above fees, expenses, costs and awards (the "Net Consumer Settlement Pool"), shall be payable to Consumer Class Members who submit Proofs of Claim that are accepted by

45

the Claims Administrator and approved by the MDL Court ("Authorized Consumer Claimants") in accordance with the applicable "Recognized Claim Percentages" established pursuant to Paragraph 12.

        a.     If the amount of the Net Consumer Settlement Pool is not sufficient to pay each Authorized Consumer Claimant his or her Recognized Claim Amount as set forth herein, then each Authorized Consumer Claimant shall be paid their *pro rata* share of the claimants' Recognized Claim Amount, subject to any minimum payment(s) established by the MDL Court.  In no event shall GSK be required to pay additional funds hereunder.

        b.     If, on the other hand, there are any unclaimed monies in the Net Consumer Settlement Pool after all Authorized Consumer Claimants have been paid according to the applicable Recognized Claim Percentage or the single minimum payment authorized by the Court, then Consumer Allocation Counsel, TPP Allocation Counsel, ISHP Group Counsel, Counsel for the Participating State Plaintiffs and Counsel for any Additional Participating State Plaintiffs will have an opportunity to participate in a binding mediation with the MDL Mediator to determine how any unclaimed monies should be divided between (1) the States participating in the mediation, (2) Consumers,  (3) TPPs and (4) ISHPs.  It is GSK's position that, in such a mediation, the MDL Mediator should not award any such unclaimed funds from the Net Consumer Settlement Pool to the TPPs or the ISHPs.  The MDL Mediator's decision concerning how any such unclaimed funds should be distributed shall be binding as between the parties thereto, but shall be submitted to the MDL Court for review and approval (not subject to objection by any

of the parties) and incorporation into an Order directing the Escrow Agent to make disbursements in accordance thereto.  It is agreed that under no circumstances are any such unclaimed funds in the Net Consumer Settlement Pool to revert to any GSK Defendant.

(viii)   Seventh, any ISHP Group Reversion Amount shall be paid from or to the ISHP Settlement Pool or the TPP Settlement Pool as provided in Paragraph 7 above;

(ix)   Eighth, the balance of the TPP Settlement Pool after the payment of the above fees, expenses, costs, awards and any GSK Opt-Out Refund pursuant to Paragraph 17 above (the "Net TPP Settlement Pool"), shall be payable to TPP Class Members who submit Proofs of Claim that are accepted by the Claims Administrator and approved by the Court ("Authorized TPP Claimants"), in accordance with the applicable "Recognized Claim Percentages" established pursuant to Paragraph 12.

a.   In the event that the Net TPP Settlement Pool is less than or equal to One Hundred Percent (100%) of the total Recognized TPP Claims of all Authorized TPP Claimants, the Authorized TPP Claimants shall be paid the balance of the Net TPP Settlement Pool in proportion to their Recognized Claim Amounts, *i.e.*, their *pro rata* share.  In no event shall GSK be required to pay additional funds hereunder.

b.   If, on the other hand, the Net TPP Settlement Pool is greater than One Hundred Percent (100%) of the total Recognized TPP Claims of all Authorized TPP Claimants, the Authorized TPP Claimants shall be paid the full amount of their

Recognized Claims, and disposition of the balance of the Net TPP Settlement Pool remaining after such payment shall be determined by the MDL Court on the motion of Lead Class Counsel.

23.  <u>Class Releases.</u>

Upon the Effective Date of this Agreement in accordance with Paragraph 13 above, the GSK Releasees (as defined in Paragraph 2 (v) above) shall be released and forever discharged by the Class Releasors from all Released Class Claims, as defined in Paragraph 2(oo) above.  All Class Releasors hereby covenant and agree that they shall not hereafter seek to establish liability against any GSK Releasee based, in whole or in part, on any of the Released Class Claims.  In addition, each Class Releasor hereby expressly waives and releases, upon the Settlement Agreement becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Class Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 23, but each Class Releasor hereby expressly waives and fully, finally and forever settles and releases, upon this Agreement becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Class Claims with respect to the subject matter of this Paragraph 23 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Releasee also hereby

48

expressly waives and fully, finally and forever settles and releases any and all Released Class

Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and

Professions Code relating to any drug price published by any commercial price reporting service,

or provided by any GSK Releasee to any such commercial price reporting service  (including,

but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing

activity relating to any such price, such as any reference to the difference between (1) a price

paid and (2) any reported price or reimbursement rate based on such a reported price, arising

from the facts alleged in the MDL Complaints concerning the GSK drugs listed on Exhibit A,

which claims are expressly incorporated into this Paragraph 23.

24. <u>ISHP Group Releases</u>.  Upon execution of this Agreement and payment of the

ISHP Group Initial Payment, the GSK Releasees (as defined in Paragraph 2 (v) above) shall be

released and forever discharged by the ISHP Group Releasors from all Released ISHP Claims as

defined in Paragraph 2(pp) above.  All ISHP Group Releasors hereby covenant and agree that

they shall not hereafter seek to establish liability against any GSK Releasee based, in whole or in

part, on any of the Released ISHP Claims.  In addition, each ISHP Group Releasor hereby

expressly waives and releases, upon receipt of the ISHP Group Initial Payment, any and all

provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to § 1542 of the California Civil Code.  Each ISHP Group

Releasor may hereafter discover facts other than or different from those which he, she or it

knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 24, but each ISHP Group Releasor hereby expressly waives and fully, finally and forever settles and releases, upon receipt of the ISHP Group Initial Payment, any known or unknown, suspected or unsuspected, contingent or non-contingent Released ISHP Claims with respect to the subject matter of this Paragraph 24 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each ISHP Group Releasor also hereby expressly waives and fully, finally and forever settles and releases any and all Released ISHP Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code relating to any drug price published by any commercial price reporting service, or provided by any GSK Releasee to any such commercial price reporting service  (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, arising from the facts alleged in the MDL Complaints concerning the GSK drugs listed on Exhibit A, which claims are expressly incorporated into this Paragraph 24.

25.     Reservation of Claims.  Notwithstanding Paragraphs 23 and 24 above, "Released Class Claims" and "Released ISHP Claims" shall not include any claim against any person or entity that is not a GSK Releasee, any claim arising out of this Agreement, any claim between any Class Member or ISHP Group Member and any GSK Releasee that is unrelated to the allegations of the MDL Complaints, including unrelated breach of contract or ecomomic injury claims, any product liability, breach of warranty, personal physical injury or intellectual property claim, any claim relating to the efficacy, safety or manufacture of GSK products, and any claim by any governmental entity (including any state Medicaid program or agency) that is not a

member of the MediGap TPP Class or Private Payor Class as defined herein.  Moreover, the releases in Paragraph 23 and 24 shall not act as a release of any claim that any governmental entity has or may have with respect to any purchases of GSK physician administered or Medicare Part B covered drug by the governmental entity which does not relate to the allegations in the MDL Complaints.

26.      <u>Settlement of Additional Matters</u>.  GSK will separately negotiate an agreement concerning the stay and dismissal of the claims against GSK in the case entitled *Swanston v. TAP Pharmaceutical Products, Inc.*, No. CV 2002-004988 (Super. Ct. Ariz.) a class action originally filed in state court in Arizona ("*Swanston*")  as well as the case entitled *International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca PLC, et al.*, No. C-193-03 (Super. Ct. N.J.) a class action originally filed in state court in New Jersey ("*International Union*").  Counsel for the Class Plaintiffs signing this GSK MDL Class Agreement include the firm of Kline & Specter, P.C., who are also counsel for the plaintiffs in *Swanston* and *International Union*.  Resolution of the *Swanston* and *International Union* matters will be subject to separate settlement agreements without payment of additional monetary or other consideration by any GSK Defendant for any purpose whatsoever.  The parties' obligations under this Agreement are not contingent upon the consummation of separate settlement agreements in the *Swanston* and *International Union* matters.

27.      <u>Preservation of Rights</u>.  The parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party (other than those that have been compromised herein); shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by the GSK Defendants or of

the truth of any of the claims or allegations contained in any complaint or any other pleading, whether in the AWP Actions or in any other action or proceeding. The parties expressly reserve all their rights if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

28. <u>Effect of Termination</u>.

(a) <u>Return of Settlement Funds to GSK</u>. If this Agreement is terminated pursuant to Paragraph 14 hereto, or the Effective Date is prevented from occurring for any reason, then the Settlement Fund and any undisbursed amounts from the PSEA and LSEA, together with any accrued income, shall be returned to GSK net of (i) taxes paid or due to be paid on the Class Escrow Account, the PSEA and the LSEA, (ii) the fees and costs paid or incurred for notice and administration of the Settlement, (iii) any fees or costs paid or incurred for administration of the Class Escrow Account, the PSEA and the LSEA, (iv) any amounts paid to ISHP Group Members as part of the ISHP Group Initial Payment, which payment triggered the ISHP Group Releases in Paragraph 24 herein and (v) $3,400,000.00 of the funds remaining in the ISHP Settlement Pool within the Class Escrow Account, which shall be disbursed in accordance with subparagraph b immediately below. In addition, if this Agreement is terminated pursuant to Paragraph 14 hereto, or the Effective Date is prevented from occurring for any reason, then (a) this Agreement shall be of no force or effect, except for (i) payment of notice and administrative fees and costs or refunds as referenced herein from the Settlement Fund, and (ii) the provisions related to payment of the ISHP Initial Payment Amount, the release provided to the GSK Defendants by the ISHP Group Releasors pursuant to Paragraph 24, and the payment of $3,400,000.00 of the funds remaining in the ISHP Settlement Pool to ISHP Counsel pursuant to subparagraph b immediately below; (b) any release by Class Members or Named Class

Representatives pursuant hereto shall be of no force or effect; and (c) the parties shall request the MDL Court to vacate any order certifying the AWP Payor Classes defined in Paragraph 1 hereto. The parties expressly reserve all of their rights if this Agreement is terminated or does not become final and effective.

(b)   If this Settlement Agreement is not reconstituted by the parties hereto within thirty (30) months from the date of Termination pursuant to Paragraph 14 or the date the Effective Date is prevented from occurring for any reason, whichever is later, ISHP Group Members shall be entitled to payment of $3.4 million from the funds remaining in the ISHP Settlement Pool within the Class Escrow Account for distribution as appropriate to the ISHP Group Members.

29.   No Admission.  Nothing in this Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by any GSK Defendant including, without limitation, that the GSK Defendants have engaged in any conduct or practice that violates any unfair and deceptive trade practices statute or other law. Neither this Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by any GSK Defendant as to the validity of any claim that AWP Plaintiffs or the AWP Payor Classes have or could have asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by the GSK Defendants.  Neither this Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith nor the fact of this Agreement, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in

53

connection with (a) settlement discussions in other matters; (b) the parties' application for approval or enforcement of this Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the AWP Payor Classes or ISHP Group Members, and (c) any other disputes arising from this Agreement.

30.     <u>Class Certification for Settlement Purposes Only</u>.  The GSK Defendants conditionally agree and consent to certification of the AWP Payor Classes described in Paragraph 1 above for settlement purposes only, and for the sole purpose of creating those settlement classes.  The GSK Defendants' conditional agreement is contingent upon the execution by the parties of this Agreement and that this Agreement is finally approved by the MDL Court and is not terminated pursuant to this Agreement.  If this Agreement is for any reason not finally approved, or is otherwise terminated, the GSK Defendants reserve the right to reassert all of their objections and defenses to certification of any class for trial purposes, and neither Plaintiffs nor Class Counsel will offer the GSK Defendants' conditional agreement to certification of any of the AWP Payor Classes as part of this Agreement as any evidence in support of a motion to certify any class for trial purposes.

31.     <u>Stay and Resumption of Proceedings</u>.  The parties agree, subject to the preliminary approval of the MDL Court of the Settlement, that all proceedings in the MDL Class Actions as related to GSK and any proceedings asserting any of the Released ISHP Claims, other than proceedings relating to the Settlement contemplated herein (including but not limited to providing Notice of the Pendency of this action against the GSK Defendants as a class action), shall be stayed except to the extent discovery is necessary with respect to information required to effectuate notice to Class Members and for purposes of administering and consummating this Agreement.  In the event that this Agreement is not approved by the MDL Court or the

settlement is terminated or the Effective Date is prevented from occurring, all such stayed

proceedings in the MDL Class Action as related to GSK will resume in a reasonable manner to

be approved by the MDL Court.

32.     <u>Dismissal of Claims</u>.  The parties agree that upon the Effective Date of this

Agreement in accordance with Paragraph 13 above, all Released Class Claims shall be dismissed

with prejudice.  In addition, all claims against GSK in the MDL Class Actions that are not

Released Class Claims shall be dismissed without prejudice, except that any claims against GSK

related to the Together Rx Card shall be dismissed with prejudice, all in accordance with the

Final Order and Judgment Granting Final Approval, substantially in the form set forth in <u>Exhibit

C</u> annexed hereto.  In Addition, upon the receipt of the ISHP Group Initial Payment, counsel for

the ISHP Group Members shall cause all Released ISHP Claims that have been filed in any

forum (if any) to be dismissed with prejudice.

33.     <u>Consent to Jurisdiction</u>.  GSK, Class Plaintiffs and the ISHP Group Members

hereby irrevocably submit to the exclusive jurisdiction of the MDL Court only for the specific

purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or

the applicability of this Agreement.

34.     <u>Resolution of Disputes: Retention of Jurisdiction</u>.  Any disputes between or

among GSK and any Class Members or ISHP Group Members concerning matters contained in

this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to

the MDL Court.  The MDL Court shall retain jurisdiction over the implementation and

enforcement of this Agreement.

35.     <u>Enforcement of Agreement</u>.  Notwithstanding Paragraph 29 above, this

Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Class Claims or Released ISHP Claims and may be filed, offered and received into evidence and otherwise used for such defense.

36.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

37.     <u>Authorization to Enter Agreement</u>.  The undersigned representatives of the GSK Defendants represent that they are fully authorized to enter into and to execute this Agreement on behalf of the GSK Defendants.  Lead Class Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Class Representatives and Class Members and to enter into, and to execute, this Agreement on behalf of the Class Representatives and Class Members, subject to Court approval pursuant to Fed. R. Civ. P. 23(e). ISHP Group Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel and Lead Class Counsel on behalf of the ISHP Group Members and to enter into, and to execute, this Agreement on behalf of the ISHP Group Members.

38.     <u>No Party Is the Drafter</u>.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

39.     <u>Choice of Law</u>. All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of Massachusetts without regard to its choice of law or conflict of laws principles.

40.     <u>Amendment or Waiver</u>. This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

41.     <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts. Facsimile or pdf signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the MDL Court.

42.     <u>Integrated Agreement</u>. This Agreement, including the exhibits hereto, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto.

43.     <u>Construction</u>. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the GSK Releasees.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date first herein above written.

DATED:  August ___, 2006                    COUNSEL FOR CLASS PLAINTIFFS

By_____

    Steve W. Berman
    Sean R. Matt
    HAGENS BERMAN SOBOL
    SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
    David S Nalven (BBO#547220)
    HAGENS BERMAN SOBOL
    SHAPIRO LLP
    One Main Street, 4th Floor
    Cambridge, MA  02142
    Telephone: (617) 482-3700
    Facsimile: (617) 482-3003

    Elizabeth Hartweg Fegan
    HAGENS BERMAN SOBOL
    SHAPIRO LLP
    60 W. Randolph Street, Suite 200
    Chicago, IL  60601
    Telephone: (312) 762-9235
    Facsimile: (312) 762-9286

By _Jeff Kodroff (s w3/per o.h_

    Eugene A. Spector
    Jeffrey L. Kodroff
    John Macoretta
    SPECTOR, ROSEMAN
    & KODROFF,  P.C.
    1818 Market Street, Suite 2500
    Philadelphia, PA  19103
    Telephone: (215) 496-0300
    Facsimile: (215) 496-6611

By_____

    Marc H. Edelson
    EDELSON & ASSOCIATES, LLC,
    45 West Court Street
    Doylestown, PA  18901
    Telephone: (215) 230-8043
    Facsimile: (215) 230-8735

By_____

    Kenneth A. Wexler
    Jennifer F. Connolly
    THE WEXLER FIRM LLP
    One North LaSalle Street, Suite 2000
    Chicago, IL  60602
    Telephone: (312) 346-2222
    Facsimile: (312) 346-0022

By_____

    Eugene A. Spector
    Jeffrey L. Kodroff
    John Macoretta
    SPECTOR, ROSEMAN
    & KODROFF, P.C.
    1818 Market Street, Suite 2500
    Philadelphia, PA 19103
    Telephone: (215) 496-0300
    Facsimile: (215) 496-6611


By_____

    Marc H. Edelson
    EDELSON & ASSOCIATES, LLC,
    45 West Court Street
    Doylestown, PA 18901
    Telephone: (215) 230-8043
    Facsimile: (215) 230-8735

By_____

    Kenneth A. Wexler
    Jennifer F. Connolly
    THE WEXLER FIRM LLP
    One North LaSalle Street, Suite 2000
    Chicago, IL 60602
    Telephone: (312) 346-2222
    Facsimile: (312) 346-0022

By _____

Shanin Specter
Donald E. Haviland, Jr.
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1359

DATED: August ___, 2006

COUNSEL FOR THE INDEPENDENT
SETTLING HEALTH PLANS

_____

Richard W. Cohen
Lowey, Dannenberg, Bemporad &
Selinger, P.C.
The Gateway
1 N Lexington Ave
White Plains, NY 10601-1712
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

_____

W. Scott Simmer, Partner
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street NW
Washington, DC 20006
Telephone: 202.775.0725
Facsimile: 202.223.8604

60

DATED: August 9, 2006

COUNSEL FOR DEFENDANT
SMITHKLINE BEECHAM
CORPORATION, D/B/A
GLAXOSMITHKLINE ("GSK")


By _____
Frederick G. Herold
DECHERT LLP
1117 California Avenue
Palo Alto, CA 94304
Telephone:  (650) 813-4930
Facsimile: (650) 813-4848

Mark H. Lynch
Geoffrey E. Hobart (BBO #547499)
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 662-6000
Facsimile:   (202)662-6291

Mark D. Seltzer (BBO#556341)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone:  (617) 523-2700
Facsimile:  (617) 523-6850