# EXHIBIT F

LITIGATING STATE ESCROW AGREEMENT

Exhibit F

LITIGATING STATES' ESCROW AGREEMENT

This Litigating States' Escrow Agreement (this "Agreement" or this "LSEA") is made and entered into by Frontier Bank through its Trust Department (the "Escrow Agent"), SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and Class Plaintiffs, acting through and by Lead Class Counsel, as defined in the Settlement Agreement and Release of the GlaxoSmithKline Defendants dated on or about August 10, 2006 ("GSK MDL Settlement Agreement"), in consideration of the following promises of each party. GSK and Class Plaintiffs are referred to collectively as the "Settling Parties" in the litigation entitled *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (the "MDL Class Action"). Unless otherwise provided herein, the terms defined in the GSK MDL Settlement Agreement shall have the same meaning in this Agreement

## I. Terms and Conditions

1. GSK and Lead Class Counsel hereby appoint the Escrow Agent to establish and administer an escrow account on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

2. GSK shall deliver to the Escrow Agent a settlement payment in the amount of $2,000,000.00 as required by Paragraph 3(c) of the GSK MDL Settlement Agreement in immediately available United States funds (the "Litigating States' Escrow Fund") pursuant to the wire transfer instructions provided in paragraph 1 of Section IV below. Escrow Agent shall confirm receipt of such funds in writing to the Settling Parties.

3. Until the Escrow Agent receives written notification from counsel for GSK and Lead Class Counsel that one or more Litigating States has entered into a separate written agreement with GSK pursuant to Paragraph 6(b) of the GSK MDL Settlement Agreement or until the Escrow Agent receives written notification from counsel for GSK and Lead Class Counsel that one or more Litigating States has not timely entered into a separate written agreement pursuant to Paragraph 6(e) of the GSK MDL Settlement Agreement, and the Escrow Agent is directed by counsel for GSK and Lead Class Counsel to distribute the Litigating States' Escrow Fund in accordance with Paragraph 6 of the GSK MDL Settlement Agreement, it shall invest and reinvest the Litigating States' Escrow Fund in United States Agency or Treasury Securities (or a mutual fund investing solely in such instruments) or other similar short-term United States government obligations as shall be directed in writing by the Lead Class Counsel and GSK and as shall be acceptable to the Escrow Agent. In the absence of written direction from the Settling Parties regarding the investment of the Litigating

1

States' Escrow Fund, Escrow Agent will invest and reinvest the Escrow Funds in the STI Classic U.S. Treasury Money Market Fund.

4. All interest on or other income realized by investment of the Litigating States' Escrow Fund or any portion thereof shall be accumulated and added to the Litigating States' Escrow Fund. Any investment losses realized by investment of Litigating States' Escrow Fund or any portion thereof shall be charged to the Litigating States' Escrow Fund.

5. Except as set forth in paragraph 6(a) and 6(b) of this Section I, the Litigating States' Escrow Fund shall be withdrawn or otherwise removed from the Escrow Account established pursuant to this Agreement only in accordance with instructions provided by Lead Class Counsel and counsel for GSK.

6. The Escrow Agent shall deliver the Escrow Funds only as set forth below:

    (a) Following receipt of written notice signed by counsel for GSK and Lead Class Counsel stating that the MDL Settlement Agreement has not been preliminarily approved by the MDL Court or has been cancelled or terminated or has otherwise become null and void for any reason, the Escrow Agent shall disburse the Litigating States' Escrow Fund, including any interest or other income earned thereon, to GSK net of taxes paid or due with respect thereto and any fees or costs paid or incurred for administration of the Escrow Account;

    (b) Regardless of whether the GSK MDL Class Agreement receives preliminary approval by the MDL Court, the Escrow Agent shall disburse funds as needed for payment of taxes or estimated taxes that become due on income earned by the Litigating States' Escrow Fund, with notice of such payments to Lead Class Counsel and GSK

    (c) After receipt of any separate written agreement between GSK and a Litigating State pursuant to Paragraph 6(b) of the GSK MDL Settlement Agreement, the Escrow Agent shall, within the time period prescribed in Paragraph 6(c) of the GSK MDL Settlement Agreement, make a payment to the Litigating State (also known as an Additional Participating State after execution of a written agreement with GSK) in an amount prescribed by Paragraph 6(c).

    (d) Within the time period set forth in Paragraphs 6(e) and 6(f) of the GSK MDL Settlement Agreement the Escrow Agent shall make such payments from the Litigating States' Escrow Fund as called for in Paragraph 6(e) 6(f) of the GSK MDL Settlement Agreement.

    provided, however, that the Escrow Agent shall retain amounts in the Escrow Account necessary for the payment of taxes or estimated taxes and

fees and expenses of the Escrow Agent, as directed by Lead Class Counsel.

7. The Litigating States' Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of the Settling Parties, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Litigating States' Escrow Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

8. All Counsel for all Settling Parties' each warrant to and agree with Escrow Agent that, unless otherwise expressly set forth in this Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Litigating States' Escrow Fund or any part of the Litigating States' Escrow Fund; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Litigating States' Escrow Fund or any part of the Litigating States' Escrow Fund; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Litigating States' Escrow Fund or any part of the Litigating States' Escrow Fund or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Litigating States' Escrow Fund or any part thereof.

## II. Provisions as to Escrow Agent

1. This Escrow Agreement expressly and exclusively sets forth the duties of Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against Escrow Agent.

2. This Escrow Agreement, and the references herein to the GSK MDL Settlement Agreement, constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this escrow. Unless it is signed by the Escrow Agent as a party, no other agreement including the GSK MDL Settlement Agreement entered into between the parties, or any of them, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with Escrow Agent or the Escrow Agent may have knowledge thereof.

3. Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under

the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4. Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Escrow Agreement. The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Escrow Agreement.

5. Escrow Agent shall be protected in acting upon any document which Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Litigating States' Escrow Fund.

6. In the event of any disagreement between any of the parties to this Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Agreement, or in the event that Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the United States District Court for the District of Massachusetts, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and Escrow Agent shall have been notified thereof in writing signed by all such parties.

7. Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

4. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

8. The Escrow Agent will maintain a daily record of all transactions in the Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than annually)

reflecting all such transactions and the property held in the account as of the end of the reporting period.

9. The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary. The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

### III. Compensation of Escrow Agent

1. Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Escrow Agreement (including reasonable fees and expenses of Escrow Agent's counsel). Lead Class Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to other provisions of this paragraph. The Escrow Agent is entitled to reimbursement for reasonable expenses for each year or any part thereof.

2. The Escrow Agent shall not debit the Litigating States' Escrow Fund for any charge for its fees or its costs and expenses, until it shall have received written confirmation from counsel for GSK and Lead Class Cousnel, approving the amount of fees, costs and expenses to which it is entitled. Fees and expenses of the Escrow Agent charged against the Escrow Funds shall, to the extent possible, be paid out of interest earned.

### IV. Miscellaneous

1. Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

   If to Escrow Agent:

   Frontier Bank
   Corporate Trust Department

   **Attn: Escrow Administration**
   Wire:
   ABA #:
   Account:
   Account name:

        Attention:
        Beneficiary Account:

If to Lead Class Counsel:

        Edward Notargiacomo
        HAGENS BERMAN SOBOL SHAPIRO LLP
        One Main Street, 4th Floor
        Cambridge, MA 02142Seattle, WA 98101
        Telephone: (617) 482-3700
        Facsimile: (617) 482-3003

If to GSK

        Frederick G. Herold
        Dechert LLP
        1117 California Avenue
        Palo Alto, CA
        94304-1106
        Telephone: (650) 813-4930

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

2. This Escrow Agreement is being made in and is intended to be construed according to the laws of the Commonwealth of Massachusetts. It shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns. All representations, covenants, and indemnifications contained in this Escrow Agreement shall survive the termination of this Escrow Agreement.

3. The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4. If any provision of this agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5. The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the parties hereto. Such resignation shall be effective not less than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement. The Escrow Agent shall have no responsibility for the

appointment of a successor escrow agent. Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6. All titles and headings in this Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8. This Agreement shall be effective as of the date the last party to this Agreement fully and appropriately executes this document.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.

Dated: August ____, 2006

_____
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel

Dated: August ____, 2006

_____
Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 813-4930
Facsimile: (650) 813-4848

Counsel for SmithKline Beecham Corporation, d/b/a GlaxoSmithKline