**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) MDL No. 1456 ) ) ) Civil Action No. 01-12257-PBS ) |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | ) Judge Patti B. Saris ) ) ) |

**TRACK 1 DEFENDANTS' MEMORANDUM ON THE**
**OVERLAP IN THE PROOF CONCERNING CLASSES 2 AND 3**

At the hearing on August 3, 2006, the Court indicated that it intends to commence a trial of third party payor ("TPP") claims under Mass. G.L. ch. 93A beginning November 6, 2006. The parties discussed whether such a trial should include Class 3 as well as Class 2 claims, and the Court invited defendants to submit a memorandum on that issue. This is that memorandum.

The Court should try the Class 2 and Class 3 TPP claims together because there is significant overlap in the issues and proof relating to those claims. Plaintiffs' witnesses and the key class representative -- Blue Cross/Blue Shield of Massachusetts ("BCBSMA") -- will be the same for both classes. Defendants' witnesses, including experts and company witnesses who will testify about products, marketing and price reporting, will also be the same. Those witnesses should not have to testify in two successive trials (or three successive trials if the Class 1 claims are considered).

Moreover, as the Court observed at the August 3 hearing, one of the key evidentiary issues at any trial involving TPPs will be the extent of their knowledge of the spreads between provider acquisition costs and AWPs, among other things. It does not make sense to examine and cross-examine witnesses about what TPPs knew or should have known about the spreads for purposes of Class 2 and then call those same witnesses back to testify on the same subject in connection with the Class 3 claims.

There can be no real disagreement that TPP knowledge is *relevant* to the Class 2 claims. In its opinion on class certification, the Court observed:

> "The benchmarks for Medicare Part B reimbursement were based on AWP even though the Department of Health and Human Services and other agencies have disclosed over the years that pharmacies' and providers' acquisition costs were typically less than AWP (Berndt ¶ 65.) Moreover, various publications disclosed that physicians were able to purchase many of the

> Medicare Part B outpatient drugs at prices considerably less than AWP.  (Berndt ¶ 97.)  In Dr. Berndt's words, the existence of a spread 'has not been a secret, at least to active observers and health care participants.'  (Berndt ¶ 65.)  However, *the parties dispute whether the government and industry were aware of the magnitude of the spread, and when they reasonably should have been aware of the spread.*"

*In re Pharm. Indus. AWP Litig.*, 230 F.R.D. 61, 71 (D. Mass. 2005) (emphasis added).[1]

Moreover, in response to defendants' motion for summary judgment against Class 2 on statute of limitations grounds, plaintiffs acknowledged that the issue turned on TPP knowledge and contended that "'[w]hether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue.'"  (Plaintiffs' Memorandum In Opposition To Track 1 Defendants' Joint Motion For Summary Judgment, dated April 7, 2006, at 34) (emphasis omitted) (quoting, *In re Lupron Mktg. & Sales Practices Litig.,* 295 F. Supp.2d 148, 183-84 (2003)).[2]

        The only real disagreement between the parties is whether knowledge would be a *complete* bar to the TPP's Class 2 claim.  Defendants contend that any TPP who agreed to provide Medicare supplemental insurance with full knowledge of the facts could not be deceived.  Plaintiffs contend that TPP knowledge would not bar the claim (even though it would trigger the statute of limitations) because a TPP would be unable to use that knowledge to lower the regulatory or statutory amount it paid for drugs under Medicare Part B.

        This disagreement has no impact on the scope of the proof that both sides would offer in connection with the Class 2 claim.  Even if the issue were limited to the statute of limitations, plaintiffs would undoubtedly call witnesses to testify that they did not know, and had no way of finding out, about the magnitude of the spreads.  Defendants would cross-examine

---

[1] It was this overlap that led the Court to certify Class 3 to begin with.  *Id.* at 91.

[2] Defendants submit that this knowledge is a complete bar to TPP recovery and that they are entitled to summary judgment on the issue.  The point is that plaintiffs agree that TPP knowledge is relevant.

those witnesses and offer other evidence to show that TPPs did not believe there was a predictable relationship between acquisition costs and AWPs, and they either knew, or had access to information that would tell them, about the magnitude of the spreads.

The TPPs cannot segregate what they knew for one purpose from what they knew for another. Knowledge is knowledge, and there is no difference between the knowledge proof for statute of limitations purposes or for any other purpose. Nor is there any difference between the knowledge proof for Class 2 and Class 3.

This overlap also exists for expert testimony. Although plaintiffs advance Dr. Hartman's expectation theory for Class 3 only, evidence and testimony relating to that theory is relevant to both Class 2 and Class 3. Defendants' experts will testify that TPPs did not base their reimbursement decisions on the expectation that AWP did not exceed acquisition costs by more than 30% and, in any event, either knew or had reason to believe that spreads exceeded 30% in many cases. They will also testify that TPPs acquired drugs for their own managed care operations at prices similar to, and in some cases lower than, the average sales prices ("ASPs") calculated by Hartman.[3] This evidence demonstrates that both the Class 2 and Class 3 claims are barred on statute of limitations grounds (because they were on notice of a potential claim) and the merits (because they were not deceived and cannot prove causation). It would not make sense for defendants' experts to testify about these subjects twice -- once in a Class 2 trial and a second time in a Class 3 trial.[4]

---

[3] This evidence relates to defendants' *Daubert* challenge as well. The Court has indicated that it will consider defendants' *Daubert* challenge to Hartman's expectation theory during the course of the trial, perhaps in special afternoon sessions. It would not make sense for Hartman and defendants' experts to testify about these matters a second time in a Class 3 trial.

[4] If the Court is inclined to separate Class 2 and Class 3, it would be more efficient to try the Class 3 claims first. Since the Medicare statute is not at issue for Class 3, by trying the Class 3 claims first, the Court can avoid the potential Rule 23 problem of defining AWP before the Class 1 notice period has concluded (assuming -- without agreeing -- that the Court found it necessary to define AWP for the Class 2 trial). In addition, the evidence on TPP knowledge at a Class 3 trial would assist the Court in later ruling on the statute of limitations issue for Class 2.

There is also substantial overlap with respect to other aspects of causation -- as to which plaintiffs bear the burden of proof for both Class 2 and Class 3. Plaintiffs must prove that their out-of-pocket costs would have been less in the "but for" world -- *i.e.* a world in which AWP equaled ASP. There is extensive evidence in this case, however, that reimbursement for drugs -- in both the government and private sectors -- was designed to encourage doctors to treat patients outside of the hospital setting; induce doctors to treat patients under the plan (either by joining TPP networks or agreeing to treat Medicare patients); and cross-subsidize inadequate payment for the service of administering the drugs. This evidence, which is the same for both Class 2 and Class 3, demonstrates that total out-of-pocket costs would not have been any different in the "but for" world.

Perhaps the most compelling proof of this point is the experience of BCBSMA, a TPP class representative for both Class 2 and Class 3. In 2005, BCBSMA considered switching from an AWP-based reimbursement formula to an ASP-based reimbursement formula because ASPs had become publicly available as a result of the Medicare Modernization Act. Numerous witnesses have testified that BCBSMA decided not to make that change because it was concerned that doctors would decide it was more economical for them to administer chemotherapy drugs in hospitals, which is more expensive for BCBSMA; some doctors might refuse to join its network, making it less competitive with other TPPs; and it would have to increase the amount it paid for the service of administering the drugs. In other words, total reimbursement in the "but for" world was exactly the same. This proof is relevant to the claims of Class 2 as well as Class 3.

Furthermore, in order to establish a causal connection between an allegedly deceptive act by a particular defendant and injury to the class, plaintiffs must demonstrate that

the reimbursement amount was based on that defendant's AWP.  For multi-source drugs, that will be the subject of extensive proof, given the difficulty of establishing a "crosswalk" between the reimbursement amount and the median AWP.  This issue, and the proof relating to it, confronts both Class 2 and Class 3.

In addition, while defendants do not believe that a trial of either Class 2 or Class 3 claims should include damages,[5] there are methodological issues that relate to both classes if damages are tried.  For example, Hartman bases his damage calculation on the difference between AWP and ASP.[6]  In his initial report, filed December 15, 2005, Hartman's ASP for Class 2 and Class 3 was limited to certain customer classes -- basically physicians and other entities who are reimbursed under Medicare Part B.  In his supplemental report, filed February 3, 2006, Hartman broadened the definition of ASP to encompass all customer classes -- including hospitals -- thereby dramatically reducing ASPs and increasing the spreads.  It is anticipated that there will be extensive testimony -- from TPPs, defendants and experts -- on whether this is appropriate.  That proof will be substantially the same for Class 2 and Class 3.

Hartman also bases his damage calculations on manufacturer data, which presents cross-cutting issues for Class 2 and Class 3.  For both classes, Hartman calculates damages based on the extent to which ASPs (reflecting discounts) were less than AWP.  By using this approach, Hartman assumes that (a) all co-payments are paid; and (b) all charges are based on AWP.  There

---

[5] Case Management Order No. 17 provides for the filing of expert "liability" reports only, and at a recent hearing the Court stated: "I'm not remembering what we agreed to try, but wasn't it just liability?"  (6/5/06 Tr. 14.) Defendants confirmed that this was their understanding and plaintiffs did not disagree.  Nevertheless, Hartman's expert reports include a damage calculation.  Defendants' experts have critiqued Hartman's methodology but have not provided an alternative analysis.

[6] For Class 2, he calculates damages based on the extent to which AWP exceeded ASP.  For Class 3, he calculates damages based on the extent to which AWP exceeded 130% of ASP.  In both cases, the calculation depends on the definition of ASP.

is substantial evidence that these assumptions are incorrect. That evidence will come from the same witnesses for Class 2 and Class 3.

Finally, there could be serious collateral estoppel problems if the Court were to separate the trials of the TPP claims for Class 2 and Class 3. BCBSMA is a representative for both classes. If the Court proceeds with a Class 2 trial and BCBSMA loses, it will be collaterally estopped from relitigating issues essential to the Class 2 claims in any Class 3 trial. That would affect the interests of the TPPs who are members of Class 3.

## Conclusion

While it might be possible to draw fine distinctions in some cases between proof that relates to Class 2 and Class 3, it would not be efficient to do so. On virtually every issue that we can think of, the witnesses who will testify in connection with Class 2 claims and Class 3 claims will be the same. It would not make sense to interrupt the testimony of these witnesses in mid-sentence to bring them back to testify on another day. The most efficient, practical and sensible way to proceed is to try the Class 2 and Class 3 TPP claims together.

Dated: August 10, 2006

Respectfully submitted,

THE TRACK 1 DEFENDANTS

By:   /s/ Jacob T. Elberg (BBO No. 657469)
     Thomas E. Dwyer (BBO No. 139660)
     Jacob T. Elberg (BBO No. 657469)
     **DWYER & COLLORA, LLP**
     600 Atlantic Avenue
     Boston, MA  02210
     Tel: (617) 371-1000
     Fax: (617) 371-1037
     tdwyer@dwyercollora.com
     jelberg@dwyercollora.com

     Steven M. Edwards (SE 2773)
     Lyndon M. Tretter (LT 4031)
     Admitted *pro hac vice*
     **HOGAN & HARTSON LLP**
     875 Third Avenue
     New York, NY  10022
     Tel: (212) 918- 3640

Attorneys for Defendant Bristol-Myers Squibb Company


     Nicholas C. Theodorou (BBO #496730)
     Lucy Fowler, Esq. (BBO #647929)
     **FOLEY HOAG LLP**
     155 Seaport Boulevard
     Boston, MA  02210

     D. Scott Wise
     Michael Flynn
     Kimberley Harris
     **DAVIS POLK & WARDWELL**
     450 Lexington Avenue
     New York, NY 10017

Attorneys for AstraZeneca Pharmaceuticals LP

>William F. Cavanaugh, Jr.
>Andrew D. Schau
>Erik Haas
>**PATTERSON, BELKNAP, WEBB**
>**& TYLER LLP**
>1133 Avenue of the Americas
>New York, NY 10036-6710

Attorneys for Johnson & Johnson

>John T. Montgomery (BBO #352220)
>Steven A. Kaufman (BBO # 262230)
>Eric P. Christofferson (BBO #654087)
>**ROPES & GRAY LLP**
>One International Place
>Boston, MA 02100

Attorneys for Schering-Plough Corp. and Warrick Pharmaceuticals Corp.

## CERTIFICATE OF SERVICE

I certify that on August 10, 2006 a true and correct copy of the forgoing document was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

>_____//s Jacob T. Elberg_____
>Jacob T. Elberg