# EXHIBIT D

LEXSEE 2005 U.S. DIST. LEXIS 19967

**COMMONWEALTH OF PENNSYLVANIA v. TAP PHARMACEUTICAL PRODUCTS, INC., et al.**

**CIVIL ACTION 2:05-cv-03604**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2005 U.S. Dist. LEXIS 19967**

**September 9, 2005, Decided**

COUNSEL: [*1] For COMMONWEALTH OF PENNSYLVANIA BY THOMAS W. CORBETT, JR., IN HIS CAPACITY AS ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA, Plaintiff: JAMES A. DONOHUE, III, OFFICE OF THE ATTORNEY GENERAL, ANTITRUST DIVISION, HARRISBURG, PA; SHANN SPECTER, KLINE & SPECTER, P.C., PHILADELPHIA, PA; THOMAS W. CORBETT, JR., OFFICE OF THE ATTORNEY GENERAL, HARRISBURG, PA.

For TAP PHARMACEUTICAL PRODUCTS, INC., Defendant: STACEY L. GREGORY, PEPPER HAMILTON LLP, PHILADELPHIA, PA.

For ABBOTT LABORATORIES, Defendant: JOHN W. BOYLE, JONES, DAY, REAVIS & POGUE, PITTSBURGH, PA; JOHN D. GOETZ, JONES, DAY, REAVIS & POGUE, PITTSBURGH, PA; JAMES J. RODGERS, DILWORTH PAXSON L.L.P., PHILADELPHIA, PA.

For ASTRAZENECA PLC, ZENECA HOLDINGS, INC., ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, Defendants: DAVID W. ENGSTROM, HARKINS CUNNINGHAM, PHILADELPHIA, PA.

For BAYER AG, BAYER CORPORATION, Defendants: LISA A. MATHEWSON, WELSH & RECKER, P.C., PHILADELPHIA, PA.

For SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE, Defendant: BRENNAN J. TORREGROSSA, DECHERT PRICE & RHOADS, PHILADELPHIA, PA; MARK H. LYNCH, COVINGTON & BURLING, WASHINGTON, DC; JOSEPH R. HEFFERN, DECHERT, LLP, PHILADELPHIA, [*2] PA.

For PFIZER, INC., PHARMACIA CORPORATION, Defendants: ERICA SMITH-KLOCEK, MORGAN LEWIS & BOCKIUS LLP, PHILADELPHIA, PA; JOHN C. DODDS, MORGAN LEWIS & BOCKIUS, PHILADELPHIA, PA.

For JOHNSON & JOHNSON, ALZA CORPORATION, CENTOCOR, INC., ETHICON, INC., JANSSEN PHARMACEUTICAL, MCNEIL-PPC, INC., ORTHO BIOTECH, INC., ORTHO BIOTECH PRODUCTS, L.P., ORTH-MCNEIL PHARMACEUTICAL, INC., Defendants: JACK M. STOVER, BUCHANAN INGERSOLL, HARRISBURG, PA; JAYSON R. WOLFGANG, BUCHANAN INGERSOLL P.C., HARRISBURG, PA.

For AMGEN, INC., Defendant: FRANK R. EMMERICH, JR., CONRAD O'BRIEN GELLMAN & ROHN, PC, PHILADELPHIA, PA; JOSEPH H. YOUNG, HOGAN & HARTSON LLP, BALTIMORE, MD; STEVEN F. BARLEY, HOGAN & HARTSON LLP, BALTIMORE, MD US.

For IMMUNEX CORPORATION, Defendant: LAWRENCE D. BERGER, BALLARD SPAHR ANDREWS AND INGERSOLL, LLP, PHILADELPHIA, PA.

For BRISTOL-MYERS SQUIBB COMPANY, Defendant: DAVID NEWMANN, HOGAN & HARTSON L.L.P., PHILADELPHIA, PA; LYNDON M. TRETTER, SIMPSON, THACHER AND BARTLETT, NEW YORK, NY; STEVEN M. EDWARDS, HOGAN & HARTSON LLP, NEW YORK, NY US; THOMAS J. SWEENEY, ECKERT SEAMANS CHERIN & MELLOTT, LLC, PITTSBURGH, PA.

For BAXTER INTERNATIONAL INC., BAXTER

HEALTHCARE [*3] CORPORATION, IMMUNO-U.S., INC., Defendants: JOSEPH G. DERESPINO, DERESPINO & DOUGHER PC, PHILADELPHIA, PA; MARIA JESSICA COLSEY HEARD, DICKSTEIN SHAPIRO MORIN & OSHINKSY LLP, WASHINGTON, DC.

For AVENTIS PHARMACEUTICALS, INC., AVENTIS BEHRING, L.L.C., HOECHST MARION ROUSSEL, INC., Defendants: BRIAN T. FEENEY, GREENBERG TRAURIG, LLP, PHILADELPHIA, PA.

For BOEHRINGER INGELHEIM CORPORATION, BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., BEN VENUE LABORATORIES, INC., BEDFORD LABORATORIES, ROXANNE LABORATORIES, Defendants: ALAN KLEIN, DUANE MORRIS LLP, PHILADELPHIA, PA.

For SCHERING-PLOUGH CORPORATION, WARRICK PHARMACEUTICALS CORPORATION, SCHERING SALES CORPORATION, Defendants: RICHARD L. SCHEFF, MONTGOMERY MCCRACKERN WALKER & RHOADS LLP, PHILADELPHIA, PA.

For DEY, INC., Defendant: BETH LILLIAN DOMENICK, FOX ROTHSCHILD, LLP, PHILADELPHIA, PA.

JUDGES: Juan R. Sanchez, J.

OPINIONBY: Juan R. Sanchez

OPINION: JUAN R. SANCHEZ, J.

The Commonwealth of Pennsylvania is suing thirty-eight pharmaceutical companies, alleging price-setting fraud. The pharmaceutical companies would like to remove the case to federal court. Because I find the lawsuit sounds solely in state law, I will grant the [*4] Commonwealth's motion to remand.

In their unified notice of removal, the Defendants assert the Commonwealth's lawsuit arises under federal law because recovery is predicated on the meaning of "average wholesale price," a term, which until recently, governed reimbursement for certain prescription drugs under Medicare. The Commonwealth argues its pleading raises purely state-law causes of action not dependent on the meaning of "average wholesale price" as the term was used in the Medicare statute. Alternatively, the Commonwealth argues even if federal-question jurisdiction exists, the Defendants failed to remove this case in a timely manner. The Defendants also ask this Court to stay its consideration of the motion to remand because they have sought transfer of this lawsuit to multi-district litigation underway in the District of Massachusetts, a request I will deny.

BACKGROUND

In March, 2004, the Commonwealth of Pennsylvania filed a lawsuit against thirteen pharmaceutical companies in Commonwealth Court of Pennsylvania, alleging violations of state law. The Commonwealth Court dismissed the complaint without prejudice on February 1, 2005 based upon the pharmaceutical companies' [*5] preliminary objections. Undeterred, on March 10, 2005, the Commonwealth, through its Attorney General, filed a Corrected Amended Civil Action Complaint ("Amended Complaint") that names thirty-eight pharmaceutical companies as defendants. Many of the thirty-eight entities identified in the caption are subsidiaries or affiliates of one another, so the allegations in the Amended Complaint are essentially directed against fourteen pharmaceutical defendants. Specifically, each Defendant faces a count for unjust enrichment, misrepresentation/fraud, and violations of the Commonwealth's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). There is also a count against the Defendants collectively for civil conspiracy, and the Commonwealth invokes its ability to proceed *parens patriae* (as "parent of the state") for those citizens who were adversely affected by Defendants' allegedly wrongful conduct.

The Commonwealth complains the pharmaceutical companies have engaged in an unlawful sales and marketing scheme to artificially inflate the average wholesale price ("AWP") of drugs since 1991. Accordingly, the Amended Complaint prays for compensatory and punitive damages, as well as [*6] injunctive relief.

The AWP for a prescription drug is a number generated by the pharmaceutical company that manufactures the drug. AWP is the standard for reimbursement under many of the Commonwealth's social welfare programs. n1 Simply stated, the Commonwealth reimburses beneficiaries of various social welfare programs, such as Medicaid, for their purchase of prescription drugs. The price at which these beneficiaries purchase and receive reimbursement is based upon AWP data promulgated by the Defendants. Until recently, Medicare reimbursed healthcare providers in the Commonwealth up to eighty percent of the AWP for prescriber-dispensed drugs used to treat Medicare beneficiaries.

n1 The three largest programs through which the Commonwealth reimburses its citizens for prescription drugs are Medicaid, the Pharmaceutical

Case 1:01-cv-12257-PBS    Document 2976-5    Filed 08/11/06    Page 4 of 9

Page 3
2005 U.S. Dist. LEXIS 19967, *6

Case 1:01-cv-12257-PBS    Document 1981    Filed 12/23/2005    Page 14 of 46

Contract with the Elderly Program ("PACE"), and the Pennsylvania Employees Benefit Trust Fund ("PEBTF"). Reimbursement is determined by statute for Medicaid, 55 Pa. Code §§ 1121.55-56, and PACE beneficiaries, 72 P.S. § 3761-509(6) (relying on the "average wholesale cost of the prescription drug dispensed"). The starting point for computation of benefits under both provisions is based on a drug's AWP. Pharmacy benefit managers administer reimbursement under the PEBTF program, and the contracts with these firms require the Commonwealth to provide reimbursement for prescription medication using a figure derived from AWP.

[*7]

A substantial portion of the Amended Complaint is devoted to the recovery the Commonwealth seeks for itself, and the Defendants do not assert the meaning of AWP as it pertains to reimbursement at the state level implicates a federal issue. The Defendants also do not claim the Commonwealth's *parens patriae* claim to recover inflated copayments or direct purchases made by its citizens gives rise to federal-question jurisdiction. The only claim the Defendants assert confers federal-question jurisdiction is the Commonwealth's *parens patriae* claim to recover Medicare copayments based on allegedly inflated AWPs. The Defendants argue the Commonwealth must prove a discrepancy between reported AWPs and the meaning of AWP as it was once used in the Medicare statute.

When Medicare based reimbursement for prescriber-dispensed drugs on AWP, there were no federal regulations for calculating a drug's "average wholesale price." Additionally, neither Medicare nor the Department of Health and Human Services established a process whereby AWPs could be accurately ascertained for federal Medicare purposes. Medicare beneficiaries in the Commonwealth who received prescriber-dispensed drugs paid [*8] the remaining twenty-percent of the drug's cost in the form of a copayment. These copayments were based on the AWP figures generated by the pharmaceutical manufacturers.

Pharmaceutical companies do not report AWP information directly to Medicare or the Commonwealth. Instead, drug manufacturers report AWP data to independent publishers of pharmaceutical-trade compendia designed to disseminate this information. The independent publishers do not verify the accuracy of AWP data. The Commonwealth claims the Defendants used the lack of government and private oversight of AWP data to their advantage by creating a "spread" between the price at which they sold prescription drugs to providers (e.g., physicians, pharmacies, and pharmacy benefit managers) and the AWP figure reported to the independent publishers. Defendants allegedly made the irrespective drug products more attractive to these providers because they could profit from reimbursements the Commonwealth and federal government paid on the spread. According to the Commonwealth, Medicare beneficiaries in Pennsylvania paid more for prescriber-dispensed prescription drugs as a result of inflated AWPs. To recover these overpayments, the [*9] Commonwealth's Attorney General is proceeding *parens patriae* against the Defendants. Defendants assert the definition of AWP raises a substantial question of federal law.

On July 13, 2005, Defendants filed a unified notice of removal with this Court pursuant to 28 U.S.C. § 1441(b), which permits cases to be removed to federal court if the plaintiff's cause of action arises under federal law. Two days later, Defendants submitted a Notice of Related Action (otherwise known as a "Tag-Along Notice") to the Joint Panel for Multi-district Litigation ("JPML") requesting this case, as well as ten others brought by Attorneys General from Alabama, Illinois, Kentucky, Minnesota, New York, and Wisconsin against many of the same defendants here, be transferred to MDL 1456, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, underway in the District of Massachusetts. The JPML issued a conditional transfer order as a matter of course on August 9, 2005, to which the Commonwealth filed a notice of opposition. As a result, the conditional transfer order is stayed until further order from the JPML pursuant to Rule 7.4(c).

**DISCUSSION**

Defendants' [*10] motion to stay is a request to have the jurisdictional issue decided in MDL 1456. They argue it would be an inefficient use of judicial resources for this Court to consider the motion to remand. As Defendants' brief states, "this lawsuit raises many of the same legal and factual issues that are present in dozens of average wholesale price ("AWP") actions that have already been transferred to the Honorable Judge Patti B. Saris in Boston for consolidated and coordinated pretrial proceedings." Def.'s Br. Stay 1. They argue the conservation of judicial resources and consistency of decision at the federal level outweigh any potential prejudice to the Commonwealth because Judge Saris, given her experience dealing with AWP litigation thus far, is uniquely qualified to rule on the motion to remand. In response, the Commonwealth insists this Court should (and must) decide the threshold issue of jurisdiction. This Court agrees with the Commonwealth's position and concludes the power to grant a stay is subject to an important limitation: the existence of subject matter

jurisdiction. n2

> n2 A federal court has the inherent power to stay a proceeding, but this opinion does not actually adjudicate the Defendants' motion to stay (by balancing competing interests) because subject matter jurisdiction is lacking.

[*11]

If this Court is to adjudicate any pretrial matters, it must satisfy itself that it has the power to do so. The reasons for this are straightforward: determinations of subject matter jurisdiction should be made on an individualized basis. *Illinois Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 851 (7th Cir. 2004). Even when a final transfer order is pending, as is the case here, "Congress has indicated a preference for remands based on such individualized jurisdictional evaluations and a tolerance for inconsistency." *Id.* (holding district court had unfettered power to remand case while final transfer order was pending). A conditional transfer order from the JPML "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." JPML Rule 1.5. Therefore, granting a stay solely based on the existence of a factually-related MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law, congressional intent, and JPML Rule 1.5, all of which contemplate a district court will [*12] act to resolve threshold jurisdictional concerns. n3

> n3 Defendants recognize the existence of subject matter jurisdiction is fundamental to a district court's ability to act. In support of their motion to stay, they request this Court to make a "preliminary assessment" of jurisdiction, determine if there are similar issues between this and other cases about to be (or already) transferred to MDL 1456, and then balance the competing interests to determine if a stay is appropriate. This was the approach developed in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001). While the *Meyers* three-step approach is facially appealing, its application is not as clear as the methodology may appear at first glance. For example, there are no guidelines on what constitutes a "preliminary analysis" of jurisdiction, and the task of determining similarities between the case before the court and others awaiting transfer (or already transferred) is collateral to the issue of subject matter jurisdiction. Moreover, a faithful undertaking to determine such similarities would undermine any notion of judicial efficiency.

Accordingly, this Court declines Defendants' invitation to follow *Meyers*.

[*13]

Defendants' judicial efficiency and uniformity arguments overlook this critical point. Here, either this Court or Judge Saris must make an *independent* review of the notice of removal, the Amended Complaint, and the motion to remand to determine whether a federal question is present. The same degree of judicial resources must be expended here or in the District of Massachusetts to make an assessment of which party should prevail. Therefore, the existence of subject matter jurisdiction cannot be resolved more efficiently or uniformly in MDL 1456 because it is undisputed that one federal court must make an individualized assessment of the jurisdictional issues in this case. Multi-district litigation undoubtedly conserves judicial resources in many respects, but, in determining the threshold issue of jurisdiction, this Court concludes such an inquiry is fundamental to its purpose.

Removal of a case to federal court is permitted if there is a basis for subject matter jurisdiction. The removal statute also sets forth procedural requirements, including timeliness. 28 U.S.C. § 1446(b). Failure to satisfy either of these prerequisites renders removal ineffective. [*14]

Here, the parties disagree sharply on the substantive basis for removal, as well as whether Defendants filed their notice in a timely manner. Therefore, this opinion discusses both aspects, and the analysis tracks the order in which the governing provisions are set forth in the removal statute. Specifically, the first issue to resolve is whether, as Defendants assert, a federal question is present permitting removal under 28 U.S.C. § 1441(b). n4 Secondly, because the parties devoted substantial portions of their briefs to the timeliness issue, this opinion evaluates whether the removal comports with 28 U.S.C. § 1446(b).

> n4 This subsection of the removal statute states, in relevant part: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

[*15]

The statutory right to remove extends to cases pending in state court that could have originally been brought in federal court. Defendants' unified notice of removal predicates subject matter jurisdiction solely on the theory that the Commonwealth's *parens patriae* claim "to recover Medicare Part B co-payments raises a substantial federal

question in that it requires the resolution of issues of federal law relating to the federal Medicare program." Defs.' Not. Rmvl. P 9. More specifically, Defendants maintain the Commonwealth's claim requires "proof of a discrepancy between the AWPs reported by [Defendants] and the meaning of AWP under the Medicare statute." Defs.' Mot. Stay (quoting *Montana v. Abbot Labs.*, 266 F. Supp. 2d 250, 255 (D. Mass. 2003)). Defendants rely heavily on the language in *Abbot Laboratories*, an opinion dealing, in part, with Minnesota's attempt to recover Medicare co-payments using its *parens patriae* authority. The district court in *Abbot Laboratories* would have permitted removal, concluding the meaning of AWP presents a federal-question, however, First Circuit precedent required it to remand the case because no private remedy [*16] exists to seek redress for inflated AWPs. Here, Defendants contend a Supreme Court case from last term, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 162 L. Ed. 2d 257, 125 S. Ct. 2363 (2005) ("*Grable*"), removes this prerequisite, making this case removable in light of the reasoning in *Abbot Laboratories*. Therefore, "the propriety of removal [here] turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). As Justice Brennan's opinion in *Franchise Tax Board* indicates, there is no "single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Id.*

The threshold question of federal jurisdiction begins with application of the "well-pleaded complaint rule." According to this rule, "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 309 (3d Cir. 1994). [*17] Equally settled is the principle that "federal jurisdiction cannot be created by anticipating a defense based on federal law." *United Jersey Banks v. Parell*, 783 F.2d 360, 365 (3d Cir. 1986) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 53 L. Ed. 126, 29 S. Ct. 42 (1908)). For example, in *Goepel*, the Third Circuit concluded the plaintiffs' complaint did not raise a federal question merely because it alluded to a federal contract. *Goepel*, 36 F.3d at 310. Similarly, in *United Jersey Banks*, the plaintiff's reliance on state-law causes of action signified the claim is not one arising under federal law. *United Jersey Banks*, 783 F.2d at 366. Both opinions appropriately noted, however, the issue of federal-question jurisdiction does not end with a facial review of the complaint.

The most recent guidance in completing this endeavor comes from the Supreme Court's opinion last term in *Grable*, which refines the approach a district court should follow to ascertain whether a removed case is within its original federal-question jurisdiction. In fact, the opinion does not refer to the well-pleaded complaint rule at [*18] all, but instead, is directed at those "less frequently encountered" situations where "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 125 S. Ct. at 2367. Additionally, the opinion in *Grable* reveals the Court granted certiorari "to resolve a split within the Courts of Appeals on whether *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986), always requires a federal cause of action as a condition for exercising federal-question jurisdiction." *Id.* at 2366 (footnote omitted). Thus, the Court was only concerned with the propriety of removal.

Grable brought a quiet title action in state court against Darue Engineering over real property the latter acquired from the IRS, which seized Grable's property to satisfy a tax deficiency. Grable's theory for invalidating Darue's title was based on the IRS's failure to provide notification of the seizure "in the exact manner required by [Internal Revenue Code] § 6335(a), which provides that written notice must be 'given by the Secretary to the owner of the property [or] left at his [*19] usual place of abode.'" *Id.* Grable insisted this provision necessitates personal service; not notification by certified mail. "Darue removed the case to federal court as presenting a federal issue, because the claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.* Grable argued the lack of a federal right to enforce IRC § 6335(a) rendered removal improvident.

In affirming the propriety of removal, the Supreme Court held the absence of a federal cause of action was not a bar to the existence of federal-question jurisdiction. The Court emphasized, though, its holding in *Merrell Dow* was not to the contrary because the absence of a federal right of action is "relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Id.* at 2369. To summarize, the Court in *Merrell Dow* held that a negligence action, which was based upon an alleged violation of a federal labeling standard contained in the Food, Drug, and Cosmetics Act, did not raise an issue of federal law. Considering the intersection of congressional intent, judicial power, and federalism, the Court [*20] concluded the mere presence of a federal standard embedded in a state-law cause of action was not enough to warrant federal question jurisdiction. *Merrell Dow*, 478 U.S. at 810-12. Thus, granting federal-question jurisdiction over the plaintiff's state-law claim in *Merrell Dow*, without an accompanying federal cause of action, would have clearly upset the balance between

the federal and state judicial spheres of responsibility because any state-law claim that referred to a federal standard would confer subject matter jurisdiction—a result the Supreme Court deemed untenable. *Grable* recognizes the need to maintain this balance by emphasizing the appropriate test centers on whether "*a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.*" *Grable*, 125 S. Ct. at 2368 (emphasis added).

As applied, the Court reasoned there was an actual dispute over the meaning of the Internal Revenue Code provision upon which Grable premised its claim to superior title. The dispute [*21] was substantial in that "the meaning of the federal tax provision" directly impacted the IRS's ability to fulfill its mission in collecting tax deficiencies because proper notice plays a critical role in seizing property from delinquents. *Id.* The opinion also directs district courts to proceed with caution in determining the propriety of removal because "even when a state action discloses a contested and substantial federal question, the exercise of jurisdiction is subject to a possible veto" after appropriate consideration of the "sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 2367. Upon consideration of this factor, the Court concluded "it will be the rare state quiet title case that raises a contested matter of federal law, [so] federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.* at 2368. The *Grable* analysis is completely consistent with the notion expressed by Justice Brennan in *Franchise Tax Board*: there are no bright-line rules to ascertain the existence of federal-question jurisdiction. [*22]

Here, the Amended Complaint sets forth exclusively state-law causes of action against the Defendants for unjust enrichment, misrepresentation/fraud, violations of Pennsylvania's UTPCPL, as well as civil conspiracy. A facial assessment of the Commonwealth's Amended Complaint precludes removal based on federal-question jurisdiction because there is no suggestion anywhere in the pleading the Commonwealth is suing to vindicate a federal right or seek redress for a violation of federal law. Defendants, though, argue this case fits within the *Grable* framework as one where federal-question jurisdiction exists because the Commonwealth's state-law claims implicate significant federal issues. Although I agree with Defendants' proposition that *Grable* controls, its application here leads me to conclude the Commonwealth's *parens patriae* claim does not present an issue arising under federal law.

The first step under *Grable* is to assess whether the "state-law claim necessarily raises a stated federal issue, actually disputed and substantial." *Id.* To reiterate, plaintiff Grable premised its quiet title action on the meaning of IRC § 6335(a), and to prevail, [*23] Grable needed to demonstrate this provision required the IRS to provide personal notification of the seizure, not service by certified mail. An alternative construction of the statute would defeat Grable's state-law claim. Here, the term "average wholesale price" is not "actually disputed" because the Commonwealth does not premise its *parens patriae* claim on the construction of these words as they appear in the applicable Medicare statute and regulations. Neither Congress nor Medicare ever defined "average wholesale price," and there were no regulations in place to approve AWP or verify the accuracy of the reported figures. Faithful adherence to the plain language of these words does not reveal an aspect of federal law that is "actually disputed." More importantly, a court (be it federal or state) does not need to ascribe any meaning to the words "average wholesale price" for the Commonwealth to prevail. Instead, the Commonwealth must prove the Defendants' conduct was in derogation of state law. Provided the Commonwealth adduces evidence to support its allegations, Defendants must counter by marshaling facts to suggest their conduct did not violate state law. Like the federal labeling [*24] provision at issue in *Merrell Dow*, AWP was no more than a federal standard. n5 AWP governed the amount a health-care professional would be paid for prescriber-dispensed prescription drugs. That is the only purpose it served and its meaning in that regard is not in dispute.

> n5 In *Merrell Dow*, the plaintiff, to prevail, would have to demonstrate the federal labeling standard was violated. Here, though, the Commonwealth is not even alleging Defendants violated the Medicare reimbursement provision, so the relation of a federal law to the Commonwealth's claim is even more tangential than the situation in *Merrell Dow*.

As part of their contention that subject matter jurisdiction exists, Defendants maintain the interpretation of the federal Medicare statute presents a substantial question of federal law. Under *Grable*, though, only federal issues that are "actually disputed and substantial" can give rise to federal-question jurisdiction. (The word "substantial" in *Grable* is linked, by the conjunction [*25] "and," to the language requiring the federal issue be "actually disputed.") Thus, the absence of an "actually disputed" issue of federal law, as is the case here, renders any discussion of substantiality superfluous. Rather than dismiss

Case 1:01-cv-12257-PBS   Document 2976-5   Filed 08/11/06   Page 8 of 9

Page 7
2005 U.S. Dist. LEXIS 19967, *25

Case 1:01-cv-12257-PBS   Document 1981   Filed 12/23/2005   Page 18 of 46

Defendants' argument on grammatical construction, this opinion briefly analyzes whether a substantial issue of federal law exists.

In *Grable*, the meaning of the IRC provision directly impacted the ability of the IRS to fulfill its mission. Federal court adjudication served the national interest because of the need for uniform interpretation of the tax law provision at issue. *Grable*, 125 S. Ct. at 2368. Here, the administration of Medicare would be unaffected by a state-court adjudication of this matter for two reasons. First, AWP is no longer the standard for reimbursement under Medicare. Secondly, even if it were, a court would not need to construe the term "average wholesale price" beyond its plain meaning. Simply put, the method for reimbursement would be unaltered. At oral arguments, defense counsel posited a federal interest exists in retrospective claims to recover inflated copayments because a state-court judgment finding [*26] the Defendants artificially raised AWP would mean the federal government also overpaid for Defendants' products. Counsel suggested this figure would be enormous. This argument, though, focuses on Defendants' conduct, not how the meaning of AWP in the Medicare statute affects that conduct. Furthermore, the amount of potential damages, if the federal government were to seek restitution, is collateral to the assessment of federal jurisdiction here because, as previously indicated, the result of this lawsuit would have no impact on Medicare's ability to perform its mission. n6 Therefore, the Commonwealth's *parens patriae* claim to recover Medicare co-payments does not present a substantial issue of federal law.

> n6 Medicare does not preempt a state's ability to regulate fraudulent billing practices under state consumer protection statutes. *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 188 (D. Mass. 2003) (noting "there was no legislative intent to preempt supervision of the compensation of a person providing health services"); *see also* 42 U.S.C. § 1395 (precluding the exercise of federal control over administration of medical services or compensation to health-care providers). Thus, Congress anticipated states would be free to regulate and police conduct that causes detriment to its citizens without substantially affecting the administration of Medicare benefits. *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d at 187 (explaining there is no "evidence of a clear and manifest intent to preempt the entire field of state regulation of fraudulent medical billing practices"); *see also Hofler v. Aetna US Healthcare of Cal., Inc.*, 296 F.3d 764, 768 (9th Cir. 2002) (remanding, in part, "because Congress clearly did not manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions"). Here, the Commonwealth is proceeding *parens patriae* on its state-law causes of action, one of which is a violation of Pennsylvania's consumer protection law. This claim does not implicate a substantial federal interest because the Medicare statute, as structured and construed, authorizes states to supervise conduct that adversely affects Medicare beneficiaries without federal oversight.

[*27]

Given the absence of an "actually disputed and substantial" issue of federal law, the need to assess the balance between federal and state spheres of judicial responsibilities is obviated. In closing, the general concern expressed in both *Grable* and *Merrell Dow* over the extent to which federal-state judicial roles could be disrupted if federal-question jurisdiction could be triggered with mere reference to federal law applies here. Opening this Court to the Commonwealth's state-law *parens patriae* claim would be improvident because the reference to AWP is ancillary to the recovery sought. As the previous analysis demonstrates, removal under 28 U.S.C. § 1441(b) requires at a minimum, that the plaintiff's cause of action rely on a particular construction of federal law. Moreover, federal court adjudication of the disputed issue must serve the national interest in a substantial manner, without serious impact to our federalist system. To conclude, this Court is without jurisdiction.

The parties also differ sharply on the timeliness of removal and devoted a substantial portion of their briefs to the issue. Although the lack of federal-question jurisdiction [*28] is dispositive, this Court wishes to succinctly indicate the reasons for which it concludes the removal did not comport with 28 U.S.C. § 1446(b).

Defendants argue the removal was timely because the Supreme Court's *Grable* opinion constitutes an "order or other paper" under section 1446(b) from which it first could be ascertained this case was removable. Not until the Supreme Court issued its *Grable* opinion, Defendants assert, could they have removed this case in good faith because Third Circuit precedent n7 and the holding in *Abbot Laboratories* required a private right of action for the existence of federal-question jurisdiction. n8 To assess Defendants' argument requires applying existing case law to the language in the second paragraph of section 1446(b), which reads as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be

filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, *order or other paper* from which it may be first ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446 [*29] (b) (emphasis added).

n7 *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90 (3d Cir. 1992) (holding a private right of action is a prerequisite to federal-question jurisdiction).

n8 Defendants offer a second basis upon which they claim removal was timely. Specifically, they argue the complete lack of service upon ZLB Behring, one of the defendants named in the Amended Complaint, tolls the thirty day period for removal under section 1446(b) for all defendants. Under this theory, the thirty day period has not even begun to run for any defendant in this case. The Court, though, dismisses this argument as without adequate support.

To begin, the *Grable* opinion cannot be considered an "order" upon evaluation of Third Circuit precedent in *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993). In *American Red Cross*, the panel affirmed removal based on federal-question jurisdiction because the defendant, the Red Cross, was also a party to a factually-related Supreme Court [*30] case that resulted in an opinion expressly permitting the Red Cross to remove the case it was defending in state court. n9 The Third Circuit explained its holding in *American Red Cross* was a narrow one, and set forth the following test for a district court to determine if a subsequent court opinion is an "order":

An order is sufficiently related when, as here, the order in the case came from a court superior in the same judicial hierarchy, was directed at a particular defendant and expressly authorized that same defendant to remove an action against it in another case involving similar facts and legal issues.

*Id.* at 203. Application of this test here readily reveals only the first element is satisfied. The Supreme Court did not direct its *Grable* opinion at the Defendants in this case, and the factual issues here are completely unrelated to those in *Grable*. Accordingly, *Grable* is not an order for purposes of section 1446(b). Although the Third Circuit has not considered whether a subsequent Supreme Court opinion constitutes an "other paper" under section 1446(b), the majority rule from other district courts is that unrelated opinions [*31] fall outside this language. n10 "The plain language of the statute, referring to the 'receipt by the defendant, though service or otherwise,' implies the occurrence of an event within the proceeding itself; defendants do not ordinarily 'receive' decisions entered in unrelated cases." *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1333 (M.D. Fla. 1999) (holding Supreme Court opinion was not an "order or other paper" for purposes of 1446(b)). This rationale for this rule is to preclude potentially disruptive effects at both the state and federal level.

n9 The Supreme Court's subsequent opinion was "not simply an order emanating from an unrelated action but rather . . . an unequivocal order directed to a party to the pending litigation, explicitly authorizing it to remove any cases it is defending." *American Red Cross*, 14 F.3d at 202.

n10 *See Metropolitan Dade County v. TCI TKR of S. Fla.*, 936 F. Supp. 948, 936 F. Supp. 958 (S.D. Fla. 1996) (holding Federal Communications opinion was not "other paper" to trigger thirty-day period); *Kocaj v. Chrysler Corp.*, 794 F. Supp. 234 (E.D. Mich. 1992) (holding Sixth Circuit opinion on ERISA preemption was not "other paper"); *Holiday v. Travelers Ins. Co.*, 666 F. Supp. 1286 (W.D. Ark. 1987) (holding recent Supreme Court decisions were not "other papers" under removal statute).

[*32]

For the foregoing reasons, removal in this case was not timely. I will enter an order consistent with this opinion.

### ORDER

AND NOW, this 9th day of September, 2005, it is hereby ORDER ED Plaintiff's Motion to Remand (Document 17) is GRANTED, Defendants' Motion to Stay Consideration of the Motion to Remand (Document 19) is DENIED; and Plaintiff's Motion for an Award of Fees and Costs (Document 17) is DENIED. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).

BY THE COURT:

Juan R. Sanchez, J