UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**PLAINTIFFS' RESPONSIVE MEMORANDUM ON THE QUESTION OF WHETHER THE NOVEMBER TRIAL SHOULD EXPAND BEYOND CLASS 2**

001534-16 123533 V1

- i -

**TABLE OF CONTENTS**

**PAGE**

I.     INTRODUCTION ...........................................................................................................1

II.    A CLASS 2 ONLY TRIAL STARTS US OFF WITH A "CLEAN SHOT" .......................1

III.   A CLASS 2 TRIAL RESULTS IN COMPLEXITIES COMPLETELY
       GLOSSED OVER BY THE TRACK 1 DEFENDANTS....................................................2

       A.   The Differences in the Scope and Quantity of Expert Witnesses and Other
            Proof is Substantial ...............................................................................................3

       B.   The Scope of Defendants Daubert Motions Demonstrate the Differences
            Between Class 2 and 3 ...........................................................................................4

       C.   There Are Other Differences in Witness Testimony .............................................4

IV.    CONCLUSION................................................................................................................5

**I.      INTRODUCTION**

Plaintiffs suggest that given the number of issues to be decided in a Class 2 trial with four Defendants, focusing on Class 2 trial alone and not adding the complexities of a Class 3 trial is the better course. As the Court observed at the August 3 status conference, "whatever I learn in the trial in November ... I will use in dealing with Class 3."[1]

As noted below, a trial limited to Class 2 can be completed rather quickly and will focus on the statutory based AWP scheme. A trial that includes Class 3 will involve "hard economic issues" that have no bearing on Class 2 and as the Court observed "damages will vary dramatically." *Id.* These differences will compel a wide range of additional testimony not needed in the Class 2 trial. As a result, the better course is to get one "clean shot" on Class 2 and "that by doing 2, were going to have laid a foundation for 1 and 3 later."[2]

**II.     A CLASS 2 ONLY TRIAL STARTS US OFF WITH A "CLEAN SHOT"**

The Class 2 trial by itself will decide several core issues and can be easily concluded, in its entirety. The issues in a Class 2 trial include:

1. Did each Defendant cause an AWP to be published?

2. Did each Defendant cause an AWP to be published that did not meet the statutory definition of AWP (as interpreted by the Court)?[3]

3. Issue 2 above will be proven by Defendants' own documents and proof of the real average price.

4. Did Defendants' conduct cause Class 2 TPPs to pay more than they should have?

---

[1] Transcript at 11.

[2] Transcript at 27. The Court also noted that everything done in a Class 2 trial could be used in a later Class 3 follow-on proceeding.

[3] Plaintiffs believe that the Court should define the meaning of AWP prior to the trial and that this can be done prior to notice to Class 1 since the Court is not deciding a claim or granting summary judgment, but instead is interpreting the meaning of one word. Plaintiffs can find no case suggesting that interpreting a key statutory term prior to giving notice to a class is somehow improper.

- 1 -

     5.     Is the practice of causing phony AWPs to be published in the context of the statutory based payment scheme unfair?

     6.     Is it deceptive?

     7.     Was Defendants' conduct willful thus triggering double or treble damages under 93A?

     8.     The extent of Class 2 damages.[4]

Determination of these core issues will advance any subsequent Class 3 follow-on trial. Trial of the foregoing issues is relatively clean in that the unfairness/deception issue focuses on the legality of publishing AWPs knowing that TPPs must reimburse based on these AWPs, while each defendant was marketing a different price to doctors.

This Class 2 trial is not entangled with issues of what was occurring in the TPP Class 3 marketplace – a non Medicare marketplace.

### III. A COMBINED CLASS 2 AND 3 TRIAL RESULTS IN COMPLEXITIES COMPLETELY GLOSSED-OVER BY THE TRACK 1 DEFENDANTS

The expectations theory relevant to Class 3 is not relevant to Classes 1 and 2 given that the Court has indicated that it will "statutorily define AWP" for Classes 1 and 2. *See* July 6, 2006 Hearing Tr. at 52. Consequently, trying some of the Class 3 claims simultaneously with Class 2 shifts the focus from the statutory reimbursement regime to one that is market-driven. It is therefore more sensible and appropriate to try the Class 2 claims first without injecting Class 3 issues. This will keep the focus on the Medicare Part B program and produce at least some consistent findings with potentially preclusive future effect on the Class 3 claims. For instance, Plaintiffs expect that findings that one or more Defendants engaged in unfair or deceptive acts or practices would be accorded collateral estoppel effect in the Class 3 trial. Thus, even if the Class

---

[4] The Defendants' brief suggests that damages are not part of the trial. However, the Court asked Plaintiffs how long for a trial of Class 2 on liability and damages. Tr. at 14. And the subsequent discussion centered on "trying the entire" Class 2 case. *Id.* It is in this context that the Court observed that "damages will vary dramatically" between Class 2 and 3. The Court should be alert to Defendants' attempt to retrench and cut back on the scope of the trial.

- 2 -

3 claims are not included per se in the Class 2 trial, many of the factual issues tried for Class 2 will be determinative for Class 3. Therefore, the Class 3 trial will not have to start over from scratch as Defendants would have us believe. There will not be any inefficiencies associated with trying the Class 3 claims later.

And a cursory examination of the Class 3 issues raised by Defendants reveals the added complexities of Class 3 glossed-over by the Track 1 Defendants. A Class 3 trial involves different expert testimony, substantial Daubert motions and a different set of witnesses.

## A. The Differences in the Scope and Quantity of Expert Witnesses and Other Proof is Substantial

Completely absent from the Track 1 discussion is the substantial difference in the scope of expert testimony. In a Class 2 trial Dr. Hartman will testify on the difference between published AWP and a real average. This is a mathematical matter based on Defendants' own records. There is no substantial controversy about this testimony or that it is the proper subject of expert testimony.

By contrast, in a Class 3 trial Dr. Hartman will have to testify concerning the use of AWP in the non-Medicare payment arena and what the payors in this marketplace expected AWP to mean. Plaintiffs will also introduce Defendants' documents and testimony that bear on these expectations. This is a substantial body of additional evidence not needed in a Class 2 only trial.

Defendants themselves have no less than *six* experts all focused on Class 3 "expectation issues." In addition, many of Defendants' experts claim that AWP was not used in the Class 3 payment system. Thus, Mr. Young and others hope to present substantial testimony on this issue. There will also be extensive cross-examination and Daubert motions on this issue that Plaintiffs will direct at Mr. Young and other defense experts. None of this will occur in a Class 2 only trial.

- 3 -

Defendants also claim that in a Class 3 marketplace, and this was a major part of their opposition to class certification, that doctors have negotiating power. Thus, Defendants will introduce, presumably, testimony and expert testimony on this issue none of which will be present in a Class 2 only trial. Again, there will be cross-examination and Daubert motions directed at Defendants on this issue – none of which will occur in a Class 2 only trial.

And, as noted, the damage methodologies will also vary between the classes. Damage calculations in Class 2 are based upon the statutory meaning of AWP and the published AWPs. That is not the case for Class 3.

### B. The Scope of Defendants' Daubert Motions Demonstrate the Differences Between Class 2 and 3

Defendants have filed no less than three Daubert motions, backed by hundreds of pages of "expert" submissions. The vast bulk of this is directed at the Class 3 marketplace. Almost none of it is relevant to Class 2. Thus, there will be substantial additional testimony and Daubert arguments not relevant to Class 2. There will also be Daubert motions filed by Plaintiffs concerning Defendants' expert submissions in this regard.

### C. There Are Other Differences in Witness Testimony

The Track 1 Defendants also ignore the fact that Class 2 and Class 3 have different members, thus necessitating different proof from the Class. Yes, BCBS MA is a member of both classes. This cannot be decided solely on the testimony of one Class Member. In Class 3 are health plans and Taft Hartley Funds that do not pay Medigap insurance. Plaintiffs will call these class members as to their expectations and knowledge of Defendants' actions. Such testimony is not relevant to a Class 2 trial.

**D.      Class 3 Has Not Even Been Fully "Noticed" Yet**

The Court ordered that TPPs in Classes 2 and 3 be provided notice of this case. However, Class 3 also contains consumers who made graduated co-payments. No notice has been directed to these Class Members. Thus, the Class 3 trial could not be completed.

Finally, Defendants have moved for summary judgment on Class 3. That motion is still being briefed and argument is set for October 12, 2006, just a scant three weeks prior to trial. Presumably, Defendants would want the Court to have time to consider this motion.[5]

## IV.    CONCLUSION

The slight overlap in "knowledge issues" trumpeted by Defendants obscures the differences between a Class 2 and Class 3 trial. Plaintiffs suggest that a "clean shot" trial of Class 2 claims only is the sensible way to conduct the first trial.

DATED:  August 11, 2006.             By    /s/ **Steve W. Berman**
                                            Thomas M. Sobol (BBO#471770)
                                            Edward Notargiacomo (BBO#567636)
                                         Hagens Berman Sobol Shapiro LLP
                                         One Main Street, 4th Floor
                                         Cambridge, MA  02142
                                         Telephone: (617) 482-3700
                                         Facsimile: (617) 482-3003

                                         **LIAISON COUNSEL**

                                         Steve W. Berman
                                         Sean R. Matt
                                         Hagens Berman Sobol Shapiro LLP
                                         1301 Fifth Avenue, Suite 2900
                                         Seattle, WA  98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594

---

[5] Perhaps if they are serious about trial the motion should be withdrawn.

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 7 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of Plaintiffs' attorneys and that, on August 11, 2006, I caused copies of **PLAINTIFFS' RESPONSIVE MEMORANDUM ON THE QUESTION OF WHETHER THE NOVEMBER TRIAL SHOULD EXPAND BEYOND CLASS 2** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                     **/s/ Steve W. Berman**
                                     Steve W. Berman