# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | MDL No. 1456 <br><br> CIVIL ACTION:  01-CV-12257-PBS <br><br> Judge Patti B. Saris |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE FOR <u>OBFUSCATION OF DOCUMENTS AND DILATORY TACTICS</u>

001534-16 123202 V1

-i-

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ 1 | |
| II. | SUPPLEMENTAL FACTS ................................................................................................ 2 | |
| | A. | Baxter's Document Production Continues Despite the Close of Discovery ................................................................................................................ 2 |
| | B. | In Its Opposition, Baxter Fails to Explain to This Court Why It Reneged on Its Agreement Not to Dump the Majority of Its Production on Plaintiffs on the Deadline ................................................................ 3 |
| | C. | Baxter's Complaint that Plaintiffs Are Not Willing to Spend the Time Necessary to Review Baxter's Documents Has No Basis in Fact. ................ 4 |
| III. | ARGUMENT ........................................................................................................................ 5 | |
| | A. | Baxter's Claim That Its Production of 75 Percent of Its Documents After the Close of Discovery Does Not Violate Any Court Order is a Farce ................ 5 |
| | B. | This Court Should Grant Plaintiffs' Request for Sanctions Pursuant to § 1927 ..... 7 |
| | C. | Because Baxter's Actions Demonstrate That It Did Not Act in Good Faith, This Court Has the Inherent Power to Fashion an Appropriate Sanction ............. 10 |
| IV. | CONCLUSION .................................................................................................................. 12 | |

## TABLE OF AUTHORITIES

### CASES

*Aoude v. Mobil Oil Corp.*,
　892 F.2d 1115 (1st Cir. 1989) ........................................................................................... 10

*Apex Oil Co. v. Belcher Co. of N.Y.*,
　855 F.2d 1009 (2d Cir. 1988) ....................................................................................... 9, 10

*Chambers v. NASCO*,
　501 U.S. 32 (1991) ........................................................................................................... 10

*Cruz v. Savage*,
　896 F.2d 626 (1st Cir. 1990) ......................................................................................... 9, 10

*Gagnon v. Teledyne Princeton, Inc.*,
　437 F.3d 188 (1st Cir. 2006) ............................................................................................... 6

*Klonoski v. Mahlab*,
　156 F.3d 255 (1st Cir. 1998) ............................................................................................... 6

*Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*,
　2004 U.S. Dist. Lexis 17093 (S.D.N.Y. 2004) .................................................................... 9

*Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried*
　　*Employees v. Carroll*,
　1993 U.S. App. Lexis 34032 (1st Cir. Dec. 30, 1993) ....................................................... 11

*Pro Spice v. Omni Trade Group*,
　2003 U.S. Dist. Lexis 23831 (E.D. Pa. Dec. 16, 2003) ....................................................... 9

*R.W. Int'l Corp. v. Welch Foods, Inc.*,
　937 F.2d 11 (1st Cir. 1991) ............................................................................................. 6, 7

*Steinert v. Winn Group, Inc.*,
　440 F.3d 1214 (10th Cir. 2006) .......................................................................................... 8

*Williams v. Monarch Machine Tool Co., Inc.*,
　26 F.3d 228 (1st Cir. 1994) ................................................................................................. 6

*Wilson v. Bradlees of New Eng., Inc.*,
　250 F.3d 10 (1st Cir. 2001) ................................................................................................. 6

001534-16 123202 V1

## STATUTES

28 U.S.C. § 1927 ...........................................................................................................................7

001534-16 123202 V1

## I.     INTRODUCTION

Baxter does not dispute that the majority of its document production "came at or just after" the close of discovery.[1]  A cursory glance at Baxter's breakdown of attorney time spent on document production shows that Baxter did not even start what it calls the "first review"[2] for the purpose of production until August 2005, 45 months after the AWP litigation against Baxter was commenced and just nine months before the close of discovery.  In fact, it barely paid attention to document review and production prior to April 2006.  By its own admission, 79.8% of Baxter's "first review" effort to review and produce documents was not expended until the period between April 1, 2006 and June 30, 2006, with 22.6% of that time occurring *after* the close of discovery.[3]  Baxter's late review is consistent with the fact that more than 96% of its document production occurred after April 1, 2006.

Baxter does not and cannot proffer any valid excuse for its dilatory efforts.  Rather, Baxter would have this Court:

- Forgive its discovery transgressions based on the sheer number of hours contract attorneys spent reviewing documents without regard to the fact that these hours were spent literally in the waning days of the five-year lifespan of this case and at a time too late for Plaintiffs to incorporate those documents into the prosecution of their case;

---

[1] Baxter Healthcare Corporation's Opposition to Plaintiffs' Motion For Sanctions and Default Judgment Against Baxter Healthcare ("Baxter Mem."), at 10.

[2] Baxter Mem. at 6.

[3] Baxter Mem. at 7.  According to Baxter's breakdown of contract attorney time, from August 2005 to March 2006, Baxter employed contract attorneys that barely scratched the surface of the production, spending just 19% of Baxter's total review time on reviewing and producing documents.  Then on the eve of discovery but too late to comply with its discovery obligations, Baxter ramped up, spending 58.2% of its total attorney document review time on reviewing and producing documents.  And then, even after discovery closed and as if it doesn't recognize the import of its admission, Baxter spent another 22.6% of its total attorney document review time in June 2006.  *Id.*

- Ignore its attorney's representations to Plaintiffs that Baxter would not dump the majority of its documents on Plaintiffs at the close of discovery, which resulted in the withdrawal of Plaintiffs' Motion To Compel;[4] and/or

- Sanction Plaintiffs by requiring them to hire hundreds of contract attorneys despite the fact that it is too late to use Baxter's documents in connection with oral discovery or class certification.

Any of these alternatives – forgiving Baxter, ignoring Baxter's prior promises, or sanctioning Plaintiffs – makes a mockery of this Court's Case Management Orders and of the just, efficient and orderly discovery process contemplated by the Federal Rules of Civil Procedure and the Local Rules. This Court should use its inherent authority to sanction Baxter for discovery abuses and to enter a default judgment against Baxter. There is no other sanction that can adequately compensate Plaintiffs for Baxter's failure to produce documents on a timely basis or for Baxter's decision to dump 96% of its documents on Plaintiffs in the last three months. Accordingly, Plaintiffs request that their motion be granted.

## II.  SUPPLEMENTAL FACTS

### A.  Baxter's Document Production Continues Despite the Close of Discovery

Since the filing of Plaintiffs' Motion For Sanctions and Default Judgment, Baxter has produced an additional half million documents in three separate productions. *See* Second Declaration of Elizabeth Fegan ("Fegan Decl. II"), ¶ 2. On June 27, June 29, and July 10, 2006, Baxter served Plaintiffs with three hard drives containing documents, bringing the total number of hard drives produced post-discovery closure to eight. *See* Fegan Decl. II, Exs. 1-3 (Letter dated June 27, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL E 3386203-3402290); Letter dated June 29,

---

[4] *See* Letter dated November 15, 2005 from Elizabeth A. Fegan to Merle DeLancey, Exhibit 19 to the original Fegan Declaration ("We also discussed my concern that the [extension of the document production date to June 1, 2006] set forth above will only work if Baxter's document production is truly conducted on a rolling basis, noting that the dates will not be feasible if Baxter dumps the majority of documents on Plaintiffs on June 1, 2006. You agreed, and stated that you intended to produce the documents on a rolling basis.").

-3-

2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL S 0265262-0502246); Letter dated July 10, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL S 0502247-0724629)).  Thus, as of today, 75% of Baxter's document production (4,365,886 pages) has transpired after the close of discovery.

**B.     In Its Opposition, Baxter Fails to Explain to This Court Why It Reneged on Its Agreement Not to Dump the Majority of Its Production on Plaintiffs on the Deadline**

Baxter utterly fails to explain to this Court either why it represented to Plaintiffs that it would not dump all of its documents on Plaintiffs on the discovery deadline, if it in fact knew that such a dump was likely to occur.  The only plausible explanation[5] is that Baxter intended to cause Plaintiffs to rely on its representations and withdraw their November 8, 2005 filing of Plaintiffs' Motion To Compel Production by Baxter.  The ploy worked.  Plaintiffs withdrew their Motion, and relied on the veracity of the representations by Baxter's counsel, Merle DeLancey.

Rather than explain why Baxter reneged on its agreement made through its counsel, Baxter points to a declaration that it provided to Plaintiffs seven months later in May 2006 (two weeks before the close of discovery).  Baxter Mem. at 11.  What Baxter fails to tell this Court is that the Declaration was provided because Baxter admittedly spoliated evidence by destroying electronic documents of key former employees.  Thus, the Declaration is Baxter's attempt to talk its way out of an upcoming motion for sanctions based on spoliation by trying to show the work that it did to determine the extent of the spoliation.  In no way, shape or form does that Declaration put Plaintiffs on "notice" two weeks before the close of discovery of the fact that millions of pages are about to drown their efforts to prosecute their case.

---

[5] Baxter has provided no other explanation, plausible or not.

C.     **Baxter's Complaint that Plaintiffs Are Not Willing to Spend the Time Necessary to Review Baxter's Documents Has No Basis in Fact.**

Plaintiffs have devoted time from at least nine attorneys and four paralegals to the review of Baxter's documents. Fegan Decl. II, ¶ 3. For example, when Baxter made documents available at its warehouse in Deerfield, Illinois in 2005, Plaintiffs sent a team of three attorneys and one paralegal to review the documents and were able to accomplish the review in one day. Fegan Decl. II, ¶ 3. Moreover, for the period prior to Baxter's dump of documents which began in April 2006, Plaintiffs spent hundreds of hours per month reviewing Baxter documents and were able to keep pace with the production. Thus, when timely productions were made by Baxter on a rolling basis, Plaintiffs were able to review the documents in an orderly and efficient fashion.

However, to hire 100 contract attorneys now, as Baxter suggests Plaintiffs should do, would be futile to the prosecution of Plaintiffs' case and would cause Plaintiffs an expense that they would not have borne had Baxter complied with its discovery obligations in a timely and orderly manner. Plaintiffs have already deposed 11 current or former Baxter employees[6] and have noticed or scheduled an additional 16 depositions of Baxter witnesses to take place in August and September 2006.[7] Fegan Decl. II, ¶¶ 4-5. It would be physically impossible to

---

[6] Plaintiffs have already deposed the following current or former Baxter employees: Candy Pullano (July 19, 2006), Pam Koo (June 21, 2006), Rosalee Satterthwaite (June 13, 2006), Bernadette Connolly (May 17, 2006), Catherine Schrank (May 18, 2006), and Judy Reuter (May 19, 2006), as well as five corporate representatives pursuant to Plaintiffs' initial 30(b)(6) notice of deposition, including Pete O'Malley (May 23, 2005), Michael Bradley (May 24, 2005), Bryant Gunnerson (May 24, 2005), Juliana Reed (July 13, 2005), and Greg Neier (August 12, 2005). Fegan Decl. II, ¶ 4.

[7] Plaintiffs and Baxter have agreed on the following dates for depositions of additional witnesses: Royal Stewart (August 23, 2006 in Chicago), Brian Carter (August 25, 2006 in Chicago), Bill Donan (September 7, 2006 in Atlanta), John Shannon (September 12, 2006 in Chicago), Scott Hippensteel (September 13 in Chicago), John Sonnier (September 14, 2006 in Chicago), Diane Munson (September 20, 2006 in Birmingham, AL), Mike Bradley (September 26, 2006 in Chicago), and are still working to coordinate dates for Matt Likens (in Phoenix), Anita Bessler (in California), Kathy Sullivan (in Chicago), Jim Hauert (in Chicago), Melissa Macek (in Chicago), Jill

-4-

review the 4,365,886 pages that have been produced since June 1, 2006 in order to be able to incorporate them into the deposition process.  Moreover, it is too late to use these documents in the class certification process.

Furthermore, if Plaintiffs were to hire hundreds of contract attorneys to review Baxter's 11th-hour dump, the costs would be daunting.  Even just a simple calculation demonstrates that hiring 100 contract attorneys to review the six million pages since April 1, 2006 would be cost-prohibitive, reaching over $2,000,000[8] – a cost that would not have been necessary had Baxter conducted the production in the normal course of litigation over time.

### III.   ARGUMENT

**A.   Baxter's Claim That Its Production of 75 Percent of Its Documents After the Close of Discovery Does Not Violate Any Court Order is a Farce**

Baxter asserts that this Court cannot exercise its authority to impose sanctions pursuant to Fed. R. Civ. P. 37, because it has not violated any Court Order – other than this Court's Case Management Orders ("CMOs").  Such an assertion smacks of disrespect for this Court's diligence and energy invested in the more than 25 CMOs entered to date, which have clearly kept this MDL on track for the first trial to occur in November.  Moreover, Baxter's position is contrary to the law.

The First Circuit has made abundantly clear that "a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through the court" through the issuance of case management orders.

---

Kadam (in Chicago), Lou Rofrano (in Chicago), Larry Guiheen (in Chicago), and Peter O'Malley (in Chicago). Fegan Decl. II, ¶ 5.

[8] Plaintiffs estimate that it would take 100 attorneys 75 days to review 6,000,000 pages (based on each attorney reviewing 800 pages per day).  Thus, the estimated cost would be calculated as:  100 attorneys (8 hours $35/hour) x 75 days = $2,100,000.00.

*Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191 (1st Cir. 2006).  Moreover, the First Circuit has consistently taken the stance that litigants have a broad duty to comply with those case management orders, and may sanction any party for their failure to comply.  *Id*. (citing *Primus v. United States*, 389 F.3d 231 (1st Cir. 2004)) ("The adoption of Rule 37(c)(1) in 1993 'gave teeth to a significantly broadened duty' to comply with case management orders, . . . and 'the required sanction in the ordinary case is mandatory preclusion.'" *id*. (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)).[9]

Baxter takes the position that the fact that it failed to comply with this Court's CMOs is not sufficient justification for entering sanctions, citing a 1991 case entitled *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 14 (1st Cir. 1991).  As an initial matter, the First Circuit has held that its pre-1993 opinions analyzing whether to impose Rule 37 sanctions "retain only limited authority in this post-amendment era."  *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998).  Moreover, even if authoritative, *R.W. Int'l* does little to help Baxter's case.

In *R.W.*, the Court first analyzed a case management order in order to determine whether to impose sanctions for a corporate representative's refusal to answer certain questions at a deposition.  The Court found that it could not impose sanctions because the case management order merely required the deposition to take place by a certain date. Because the deposition did take place before the Court-ordered deadline, the Court held that the party had complied with the case management order and thus did not support the imposition of sanctions.  *Id*. at 15-16.  Here,

---

[9] Moreover, the authority of a trial court to exclude documents that are not timely produced under the deadlines set by a case management order was well-established in the First Circuit before the 1993 amendment to the Rules. *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 20 (1st Cir. 2001) (citing *Fusco v. General Motors Corp.*, 11 F.3d 259, 265 (1st Cir. 1993) and stating "Indeed, we held in *Fusco* (a pre-amendment case) that the duty of a party to seasonably supplement its disclosures under Rule 26(e) "carries with it the implicit authority of the district court to exclude such materials when not timely produced even if there was no rigid deadline for production." *See also Williams v. Monarch Machine Tool Co., Inc.*, 26 F.3d 228, 230 (1st Cir. 1994).").

on the other hand, CMO 23, as amended with respect to Baxter only, required that Baxter complete its document production by June 1, 2006.[10]  Baxter does not dispute that it failed to do so, producing 75% of its documents after the close of discovery.  Thus, even under the *R.W.* court's analysis, sanctions are appropriate.

Next, the *R.W.* court considered whether sanctions would be appropriate where a litigant withheld documents that were arguably outside the scope of a general case management order.  *Id*. at 17-19.  Here, that analysis is inapplicable.  Baxter has never taken the position that the documents it produced or is still producing are not relevant or outside the scope of this Court's CMOs with respect to document production deadlines.  In fact, Baxter goes overboard in its Opposition to demonstrate to this Court just how much work it did (albeit five years into the case) to produce the relevant documents it was required to produce.

Finally, in *R.W.*, the First Circuit left open the possibility that "sanctions might be imposed where a response has eventuated, but is so flawed as to be tantamount to no response at all."  *Id*. at 18.  In light of the strong stance that the First Circuit has taken post-1993 in the enforcement of case management orders, it is clearly within this Court's authority to find that Baxter's failure to produce 75% of its documents until after the close of discovery is tantamount to no response at all in flagrant violation of this Court's orders.

**B.     This Court Should Grant Plaintiffs' Request for Sanctions Pursuant to § 1927**

Sanctions pursuant to 28 U.S.C. § 1927 are appropriate here because Baxter's counsel has unreasonably and vexatiously multiplied these proceedings by, *inter alia*:  (i) their failure to counsel their client, Baxter, to begin the document review and production process until August

---

[10] On March 6, 2006, the Court entered an Electronic Order granting Baxter's Motion for Extension of Time of Track II Discovery Schedule and to Amend CMO No. 23 Only with Respect to Baxter.

001534-16 123202 V1

2005 – 45 months after the AWP litigation against Baxter was commenced; (ii) their misrepresentations to Plaintiffs' counsel, in their successful effort to cause Plaintiffs to withdraw their Motion To Compel against Baxter, that they would ensure that the majority of Baxter's production would not be dumped on Plaintiffs on the discovery deadline; (iii) their failure to dedicate sufficient resources to ensure that Baxter could comply with the discovery deadlines and allow Plaintiffs sufficient time to incorporate the documents into the prosecution of their case, as demonstrated by the admission that 79.8% of the "first review" was not expended until the period between April 1, 2006 and June 30, 2006; and (iv) their production of 75% of Baxter's documents, comprised of at least 4,365,886 pages, *after* the close of discovery.

Baxter's attorneys claim that such a sanction should not be entered because Plaintiffs' Motion does not specifically request sanctions against the attorneys.  Baxter's position is frivolous in light of Plaintiffs' extensive discussion of sanctions against attorneys under § 1927.  Moreover, regardless of a how a brief discussing § 1927 is styled, courts will entertain sanctions against attorneys where the attorneys are on notice that such sanctions are being considered by the court and are provided a subsequent opportunity to respond.  *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) (rejecting attorney's argument that the district court denied him due process of law where it entered sanctions pursuant to § 1927 based on a brief rather than a formal motion, and stating "We need not dwell on this argument too long. The basic requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond." (quotations omitted)).  Here, Baxter's counsel are obviously on notice and have responded to Plaintiffs' Motion, but to no avail.

Baxter makes just one conclusory (and unfounded) statement in support of its position that its attorneys should not be sanctioned for their dilatory conduct, stating courts only use § 1927 "where there has been egregious behavior on the party of counsel amounting to abuse of the judicial process – a circumstance not present here." Baxter Mem. at 13. Yet Baxter offers not one fact in support of this argument. *See generally* Baxter Mem. § III.B. In fact, no where throughout its brief does Baxter distinguish or explain whose decision (Baxter's or its counsel's) it was to:

- Not produce a single document in response to Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to All Other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery ("Omnibus Requests") between March 31, 2004, the date the Omnibus Requests were served, and June 17, 2005;

- Fail to engage a team of attorneys to review documents for the purpose of production until August 2005, 45 months after the AWP litigation against Baxter was commenced and just nine months before the close of discovery;

- Refrain from spending the time necessary to get through the document review and production process in a timely manner prior to April 2006, and thus by its own admission having to expend 79.8% of its effort to review and produce documents during the period between April 1, 2006 and June 30, 2006;

- Produce just 4% of Baxter's total document set prior to April 1, 2006; 96 percent of its total documents after April 1, 2006; and 75% of its total documents after the close of discovery.

Nor does Baxter provide any legal support that is on point. In fact, Baxter does not dispute that sanctions under § 1927 are appropriate for discovery misconduct related to nonproduction or belated production.[11] Thus, where the record is undisputed and clearly shows

---

[11] *See Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 2004 U.S. Dist. Lexis 17093 (S.D.N.Y. 2004). *See also Cruz v. Savage*, 896 F.2d 626, 634 (1st Cir. 1990) (affirming the award of § 1927 sanctions when the attorney "continually engaged in obfuscation of the issues, hyperbolism and groundless presumptions," and refused to produce the knife that the defendant had admitted she had been given); *Pro Spice v. Omni Trade Group*, 2003 U.S. Dist. Lexis 23831, at *5 (E.D. Pa. Dec. 16, 2003) (providing plaintiff's costs for the motion to compel in a case where defendant committed repeated discovery abuses, noting that the second motion to compel "would not have been necessary if they had been more forthright to plaintiff's discovery requests"); *Apex Oil*

7d590a753971516d

that neither Baxter nor its counsel took any steps[12] to ensure compliance with this Court's Orders and, *inter alia*, produced 75% of Baxter's documents ***after*** the close of discovery, § 1927 sanctions are warranted.

**C.      Because Baxter's Actions Demonstrate That It Did Not Act in Good Faith, This Court Has the Inherent Power to Fashion an Appropriate Sanction**

Courts have the inherent power to "impose silence, respect, and decorum," powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO,* 501 U.S. 32, 43 (1991) (internal citations and quotations omitted).  Accordingly, courts have the discretion and ability to fashion an appropriate and commensurate sanction for conduct that it finds to be abusive of the judicial process, even if there is also a separate statutory authority to sanction the same conduct.  *See id.*, at 44-45.  *See also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

Apparently viewing the record through the prism of the same rabbit hole as Alice in Wonderland, Baxter claims that there is no evidence that its production was made in bad faith. Baxter Mem. at 15.  While admitting that "a significant percentage of Baxter's document production was made later in the document production time period," Baxter extols its "far-reaching search for responsive documents" and its "employ[ment] of hundreds of attorneys to review and produce responsive documents."  *Id.*

---

*Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1020 (2d Cir. 1988) (affirming § 1927 sanctions, when "in each [discovery dispute], prior to making its motion, Apex's counsel attempted to resolve the matter informally . . . and, in each case, . . . Apex's counsel was 'told to make a motion.'  After each motion was made, defense counsel 'mysteriously,' in the district court's words, complied with the requests.").

[12] The First Circuit does "not require a finding of subjective bad faith as a predicate to the imposition of sanctions.  Behavior is vexatious when it is harassing or annoying, regardless of whether it is intended to be so." *Cruz v. Savage*, 896 F.2d at 631-32.

-10-

Yet, at the risk of sounding redundant, just how can good faith be attributed to a party that sat on its hands for 45 months after being sued and did virtually nothing?  Or that produced just 230,446 pages during the first 4½ years of the case and then dumped over six million pages on its opponent beginning just two months before the close of written discovery and continuing well past the discovery deadline?  Or that didn't actually employ hundreds of attorneys until approximately two months before the close of discovery and yet still touts their employment (never mind the timing) as demonstrating diligence?

To litigants and attorneys well-versed in complex commercial litigation, the audacity of Baxter is daunting.

These are exactly the circumstances under which this Court should exercise its inherent authority to sanction Baxter.  Baxter has made it virtually impossible for Plaintiffs to use its documents in the prosecution of their case.  Thus, where Baxter has so severely handicapped its opponent, there is no reason to allow Baxter to continue to defend.  A default judgment is wholly appropriate to address this type of egregious discovery abuse.  *See*, *e.g.*, *Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried Employees v. Carroll*, 1993 U.S. App. Lexis 34032, at *17 (1st Cir. Dec. 30, 1993) (affirming district court's entry of a default judgment under Rule 37 when "a party fails to comply with a discovery order," based on repeated violations of the court's orders to produce documents and submit to a deposition, [and] his failure to pay the $2,000 sanction") (unreported decision).  There is no alternative sanction that can so clearly punish Baxter for its mockery of the discovery process and this Court's Case Management Orders as well as protect Plaintiffs from the prejudice resulting from the conduct.  Accordingly, Plaintiffs request that default judgment be entered against Baxter.

## IV. CONCLUSION

For all of the foregoing reasons and for the reasons set forth in Plaintiffs' opening brief, Plaintiffs respectfully request an order sanctioning Baxter and its counsel, including but not limited to, the entry of a default judgment and for such other and further relief as this Court deems appropriate.

DATED:  August 14, 2006.                By      /**s**/ Elizabeth A. Fegan
                                                                        Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

-13-

                                      Eugene A. Spector
                                      Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR PLAINTIFFS**

-14-

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**
Docket No. MDL 1456

    I, Elizabeth A. Fegan, hereby certify that I am one of Plaintiffs' attorneys and that, on August 14, 2006, I caused copies of **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE FOR OBFUSCATION OF DOCUMENTS AND DILATORY TACTICS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                             **/s/ Elizabeth A. Fegan**
                                              Elizabeth A. Fegan

001534-16 123202 V1