### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *State of Nevada v. Abbott Labs., Inc. et al.*, Case No. CV-2-00260 (Nevada I), and | |
| *State of Nevada v. American Home Products, et al.*, CA No. 02-CV-12086-PBS (Nevada II) | |

### THE STATE OF NEVADA'S OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL DISCOVERY

Defendants' third motion to compel should be denied in its entirety because the information it seeks is irrelevant to the claims or defenses in the case, cumulative or already ruled on by the Court.  The motion continues defense efforts to put the State of Nevada on trial by focusing on purported State knowledge and to divert attention from their own improper manipulation of drug prices and the spread.  But State knowledge is ***not*** the issue here and thus discovery of ostensible State knowledge is unnecessary, improper and a deliberate diversion at a crucial time in the case.

Just last month, in the New York Average Wholesale Price case pending before the New York Supreme Court for the County of Albany, the court evaluated similar drug manufacturer requests to the State of New York seeking extensive discovery from numerous state agencies as well as the Legislature.  *People of the State of New York v. Pharmacia, et al.*, Index No. 904-03 (N.Y. Sup. Ct. July 19, 2006) (attached to the Declaration of Jeniphr Breckenridge in Support of The State of Nevada's Opposition to Defendants' Third Motion to Compel Discovery

- 1 -

("Breckenridge Decl.") as Ex. 1).  The Court found that the agencies' understanding of what "average wholesale price" constituted is irrelevant to the case.  Thus, the drug manufacturers had not met their burden to show that the discovery sought from the agencies is material and relevant and denied the drug defendants' motion to compel in its entirety.  *Id.*  The claims in the two cases are similar.  The present motion should also be denied.

Five categories of information are in dispute:  (i) non-Medicaid documents defendants were not successful in obtaining through their second motion to compel; (ii) data that defendants themselves have refused to provide the State; (iii) information defendants did not ask for earlier, but have now discovered they "need;" (iv) documents unrelated to the claims and defenses in this case; and (v) cumulative deposition testimony.  Coincident with the motion, the State is working to finish reviewing and producing extensive electronic discovery, the State's expert is scheduled for deposition next week, defendants' expert reports and any motions for summary judgment are due in one month, and the States, along with Class Plaintiffs, are struggling to review the prodigious volume of documents two defendants, Baxter and Amgen, have dumped on them in the final stage of discovery in the hopes of being able to use the information in summary judgment motions.

For these and the reasons discussed more fully below, the motion should be denied in its entirety.

## I.        BACKGROUND ON CASE DISCOVERY HISTORY

The defendant drug manufacturers served their First Set of Interrogatories and Requests for Production to the State of Nevada on May 3, 2005, more than three years after the State filed this lawsuit.  Def. Ex. A.  The discovery was so broad and unfocused that it in effect called for the production of every piece of paper that had passed through Nevada Medicaid over two decades.  It appeared that defendants had done virtually no homework into what information the

- 2 -

State might have or what information defendants might reasonably use to defend themselves. From the beginning, the State has had to devote considerable time and resources to educating the drug manufacturers. This resulted in an extensive, but cooperative, meet and confer process and numerous trips back to file cabinets as defendants refined their requests. Breckenridge Decl., ¶ 4-5.[1]

The parties' frequent negotiations led to the resolution of most contested issues. Many of the topics raised in the instant motion – including managed care discovery, claims data interpretation, and non-Medicaid discovery – were covered in early meet and confer sessions, long before current defense liaison counsel became actively involved in case discovery. Breckenridge Decl., ¶ 6. Defendants submitted unresolved issues to the Court via Defendants' Second Motion to Compel Discovery from Plaintiffs the State of Nevada and the State of Montana. Magistrate Bowler ruled on the motion orally on March 29, 2006. Relevant aspects of Judge Bowler's ruling will be discussed below.

Shortly after the March 29, 2006 ruling, new discovery liaison counsel appeared for the defendants. This counsel had not previously been actively involved in case discovery and appeared at few State witness depositions and seemed to have virtually no historical knowledge of the fact discovery history. Defendants immediately seized this opportunity to question earlier discovery decisions and deposition testimony and to pursue digressive facts. This exercise has been unfair to the State, forcing it to retrace document search steps in innumerable files. The current motion is a continuation of this exercise. The discovery that defendants continue to pressure the State to provide is, for the most part, irrelevant. Defendants have not met their

---

[1] Defendants' accusations that they have been "rebuffed" in their efforts to work with the State, Def. Mot. at 1, are contradicted by this discovery history and their own descriptions of the parties' cooperative efforts in the present motion, Def. Mot. at 2, and previous filings.

burden to show the nexus between the information sought and the claims or defenses of the case. The State should not be required to respond.

## II.     ARGUMENT

### A.     Documents Regarding Medicaid's Managed Care Program Are Irrelevant and Non-Discoverable

The managed care documents defendants seek have no demonstrable relevance to this case because *the State makes no direct claim for drugs purchased or reimbursed pursuant to the State's Medicaid managed care programs*.   In addition, defendants cannot demonstrate that the documents they seek would contain anything related to communications between the HMO's and the State regarding drug pricing because there is no evidence they did so.   Defendants' objective is to discovery information that will "prove" state knowledge that the average wholesale prices were not the actual prices paid, "facts" defendants believe would be fatal to the State's claims.   But in the New York AWP case, the court has found that the State's understanding of what average wholesale price constituted is not relevant, the state could recover for the drug defendants improper manipulation of list prices and the spreads *even if the state agencies knew that the AWPs were inaccurate*.   Breckenridge Decl., Ex. 1 at p. 6-7.   The court then held that the discovery should not be had.

Here, despite the program's irrelevance, the State has already provided significant material on the program from the hard-copy files of its long-time director, Philip Nowak, and his staff.   The documents defendants now seek were not located among these files.   Defendants have also taken Mr. Nowak's deposition.   And the State produced over 1700 pages from Nowak's electronic files to defendants pursuant to the Court's March 29, 2006 Order.[2]   Breckenridge

---

[2] The State suspects that the defendants did not review Mr. Nowak's files before filing their third motion to compel. The State's cursory review of Mr. Nowak's files to prepare for this opposition showed numerous Requests for

Decl., ¶ 10.  Given these efforts and the irrelevance of the program, the State should not be forced to spend time to search for and produce additional material.

Defendants insist that the managed care documents must be relevant because "approximately half of Nevada's Medicaid program is administered by health maintenance organizations (HMOs)" and "these HMOs were very aware of what the term AWP meant and how it relates to acquisition cost."  Def. Mot. at 5.  Even if agency knowledge were relevant (which is it not), defendants do not support their presumption regarding HMO knowledge because they cannot and wrongly impute any knowledge to the State.  Defendants' argument is based on what they want the case to be rather than what the evidence shows.

Defendants do not understand the nature of Nevada Medicaid's managed care program, its administration and how drugs are purchased and reimbursed because of their extremely limited examination of managed care director Nowak, which was more notable for what they did ***not*** ask the Director about the Medicaid managed care program than for what they did ask him.[3] If defendants had asked, they would have learned that Nevada Medicaid's managed care program has only been in place since 1998 and that all managed care programs from the beginning have been "free standing delivery systems."  Breckenridge Decl., ¶ 13-14.  This means that the State pays a monthly per capita rate for each of the participants enrolled in the managed care programs.  In exchange for this payment, the HMO assumes responsibility for all of the health care needs of the participants, ***including pharmacy reimbursement***.  There are "no carve outs for pharmacy."  Breckenridge Decl., ¶ 14.  The HMO pays for all prescription drugs for the

---

Proposal ("RFP") and other contract-related documents such as those now demanded by defendants among those files.  Breckenridge Decl., ¶ 12.

[3] The deposition lasted just two hours, despite the fact that Mr. Nowak has run Nevada Medicaid's managed care program for six of the eight years it has been in operation.  Breckenridge Decl., ¶¶ 8, 11.  The transcript was only 68 pages long.  Ten of the 68 pages related to the irrelevant topic of Mr. Nowak's work in the State's Department of Prisons.  A number of other pages was devoted to whether Mr. Nowak had destroyed any documents relevant to this litigation (answer: no).  *Id.*

- 5 -

participants.  *Id.*  Contrary to defendants' arguments, Nevada Medicaid does not make any

"reimbursement decisions" regarding the managed care program.  Def. Mot. at 6.

Defendants did not ask Mr. Nowak, but he would have also testified that the State does

not receive *any information whatsoever regarding the reimbursement methodology used by the*

*HMOs for the drug purchases or reimbursement or any information regarding drug*

*utilization by HMO participants*.  Breckenridge Decl., ¶ 15.  The HMOs do not provide any

information to Medicaid that would indicate what drugs were purchased or reimbursed by the

HMO or at what prices.  *Id.*  Defendants' suggestions to the contrary are outright wrong.  Thus,

managed care documents cannot be used to demonstrate State knowledge of "what the term

AWP meant and how it relates to acquisition cost,"  Def. Mot. at 5, because the State did not get

such information from the HMOs.

Defendants also could have elicited the same information via documents or testimony

from the Nevada Medicaid HMO's itself.  Defendants issued subpoenas to each of them on

November 3, 2005.  Each produced documents.  None of the documents reflect communications

between the HMOs and the State regarding drug reimbursement rates, because there were no

such communications.

Defendants' renewed effort to obtain managed care documents they say were not

produced appears to be based on the testimony of Donna Lopez, an employee from an unrelated

State agency about the documents *her* independent agency, Public Employee Benefits Program,

receives in connection with the bidding process.  Breckenridge Decl., ¶ 18.  Ms. Lopez did *not*

"reveal[] that Nevada maintains a wide range of documents regarding contracts it has for health-

care benefits services."  Def. Mot. at 5.[4]  Ms. Lopez's testimony was limited to her own agency.

---

[4] Significantly, this and virtually every other factual assertion defendants make in the motion are unsupported by
citations to documents or testimony or affidavit.

Breckenridge Decl., ¶19.  Mr. Nowak has confirmed that the process for hiring contractors for the managed care program is different than Ms. Lopez describes for PEB, including the fact that until this year there were never more than two bidders (both hired) for the managed care program.  Breckenridge Decl., ¶ 20.

Defendants have had enough discovery from Nevada Medicaid's managed care program, particularly considering that the program is irrelevant to the claims and defenses of this case. There is no justification to send State employees back to the files to search for and produce additional documents.  Defendants' motion as it relates to managed care documents should be denied.

**B.      The State Should Not Be Forced to Provide a Second Witness to Explain Its Medicaid Claims Data**

Defendants cite no adequate legal or practical basis for the Court to permit them to take an unprecedented *second* deposition regarding the State's claims data and should not be allowed to do so.  There is no dispute that the State produced claims data in its possession for January 1991 through September 2003.  Defendants then took the deposition of Ron Swenson, Information Systems Specialist with the Nevada Department of Information Technology, for the sole and express purpose of interpreting that data in January 2006.  Although Mr. Swenson appeared as a fact witness, he is also the current Nevada state employee most knowledgeable regarding the claims data.  Breckenridge Decl., ¶ 21.

Defendants now seek a Fed. Rule 30(b)(6) deposition, something they never asked for before discovery closed.  Mr. Swenson appeared for deposition voluntarily *at the suggestion of the State* after the data was produced.  Breckenridge Decl., ¶ 22.  Prior to the deposition, the State voluntarily produced two documents reflecting file layouts for the claims data to assist defendants' understanding.  Breckenridge Decl., ¶ 23.  Also to help the defendants, on the

- 7 -

morning of the deposition, the State produced two additional versions of these documents created by Mr. Swenson.  *Id.*  GSK counsel, assisted by Christopher Stomberg of Bates White, examined Mr. Swenson.  Breckenridge Decl., Ex. 2.  Christopher Stromberg had been identified on numerous occasions as defendants' claims data expert.  *Id.*

Defendants grossly overstate Mr. Swenson's inability to answer their questions.  Def. Mot. at 8-9 ("the witness was not able to answer all of the Defendants' questions").  In fact, virtually the only questions that the witness was unable to answer are those few identified in defendants' motion in the supplemental "Questions for Plaintiffs [sic] Regarding the Nevada Claims Data" defendants finally submitted to the State in June.  Breckenridge Decl., Ex. 3. Those questions Mr. Swenson could not answer, he volunteered to research and report back to defendants.  Breckenridge Decl., ¶ 25.  State lawyers made the same offer off the record.  *Id.* Defendants did not follow-up on these offers for months.  Breckenridge Decl., ¶ 25.

A comparison of what defendants now want to know about the data reveals that the problem was not what Mr. Swenson ***did not know*** but what defendants ***did not ask***.  Most of the questions raised in defendants' list are questions defendants never asked.  Breckenridge Decl., Ex. 3.  The Swenson deposition lasted just 3 hours and 10 minutes, ignored most of the data fields contained in the claims data and did not include in-depth questions regarding any data. Breckenridge Decl., ¶ 26.  Four months after the deposition, defendants approached the State about having Mr. Swenson or another competent state employee answer a "limited" number of questions regarding the claims data.  Breckenridge Decl., ¶ 27.  No mention was made of any inadequacy on the part of Mr. Swenson.  Breckenridge Decl., ¶ 28.  The State indicated it would provide defendants with answers to their questions (and thus help them with the predicament in which their first deposition left them).  Breckenridge Decl., ¶ 29.  The State offered to make

- 8 -

Mr. Swenson available *informally* or to have Mr. Swenson answer the questions in writing. *Id.* The State asked for the questions in advance to facilitate the process and to minimize the disruption to Mr. Swenson. *Id.* Defendants responded by providing an extensive list and insisting on a deposition. Breckenridge Decl., ¶ 30.

Nothing defendants have related to the Court or to the State suggests the need for an additional deposition and the attendant time and expense at this stage of the litigation. Indeed, the concept of an additional deposition to interpret claims data is unprecedented in the AWP cases where plaintiffs and defendants have worked cooperatively to help each other interpret data produced via discovery. This has usually been accomplished through informal discussions, but never through additional deposition testimony. Breckenridge Decl., ¶ 31.

Excessive depositions are an abuse that Fed. R. Civ. P. 26(b) is designed to curb. Rule 26(b) should be invoked to restrain defendants here where the State and Mr. Swenson remain willing to assist defendants in interpreting the State's claims data. To this end, Mr. Swenson provides answers to defendants' inquiries in the declaration submitted with this motion. *See* Declaration of Ronald H. Swenson Concerning Nevada Claims Data.

**C.    The Court Limited Defendants' Discovery From Non-Medicaid Agencies Once Before; Defendants Should Not Be Able to Expand That Discovery Now**

Defendants' argument that it is entitled to *more* documents from non-Medicaid agencies constitutes blatant over-reaching and an attempt to circumvent the Court's March 29, 2006 Order *limiting* defendants' discovery from non-Medicaid state agencies.[5] The dispositive factor

---

[5] Exactly what defendants seek from non-Medicaid agencies is ambiguous. The motion expressly requests "contracts," Def. Mot. at 10-11, but also discusses (non-specifically) documents non-Medicaid witnesses identified at their depositions but that have not been produced. *Id.* at 10. Because of this ambiguity, the State addresses the contracts only in its Response. The State notes that non-Medicaid witnesses for Senior Rx and the Public Employees Benefit Program and Governor Guinn's Office have produced or will produce specific documents requested as follow-up to their depositions. The State is not aware of any follow-up requests from the non-Medicaid DMHDS deposition.

against any additional production is the same one raised by the State in response to Defendants'

Second Motion to Compel: *the State confirmed nearly one year ago that it is not seeking*

*damages on behalf of non-Medicaid agencies*.  Thus, the non-Medicaid documents defendants

seek are irrelevant to the claims or defenses in this case.  Nevertheless, defendants sought

discovery from every non-Medicaid agency in any way involved in drug purchasing or

reimbursement.  The State objected.  Defendants moved the court to compel full discovery.[6]  The

Court limited defendants to three depositions of non-Medicaid agency witnesses and the

documents found *within the files of those witnesses*.[7]  Defendants selected the witnesses

themselves.  Breckenridge Decl., ¶ 33.

The State complied with its court-ordered obligations by searching the witnesses' files

including related administrative assistant, general files and archived files as agreed.  The State

*then* went beyond its court-ordered obligations to search other likely sources within the agencies.

The searches took a long time.  The State kept defendants apprised of the search timing and the

difficulties encountered.  Breckenridge Decl., ¶ 35.  The documents defendants now seek –

"complete contracts" – were not located within any of the targeted files.[8]  Breckenridge Decl.,

¶ 36.

---

[6] *See* Defendants' Second Motion to Compel [Dkt. No. 2104].

[7] In defendants' own words: "Judge Bowler ordered the States to produce *documents from the files of each of these six witnesses to the extent these documents relate to (a) how these non-Medicaid agencies acquired or purchased drugs; (b) how these non-Medicaid agencies reimbursed for drugs; and (c) any communications between the non-Medicaid agency and any Medicaid official regarding drug pricing or reimbursements*."  *See* Letter from Kathleen M. O'Sullivan to Jeniphr Breckenridge dated March 30, 2006 at 2-3 (Breckenridge Decl., Ex. 4) (emphasis added).  The Court also limited the defendants a total of three depositions of Montana and/or Nevada legislative or executive staff "involved in communications and/or policy-making regarding drug pricing or reimbursement."  *Id.* at 3.

[8] Defendants do not complain that *no* contract documents have been produced.  In fact, defendants are quite vague on what is missing.  In the case of the Department of Mental Health and Developmental Services ("DMHDS"), the State contacted the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP"), the entity that handles the drug purchasing for the DMHDS.  MMCAP was initially uncooperative, but eventually produced everything on their information system.  The State provided the data to defendants.  Breckenridge Decl., ¶ 37.

- 10 -

Each non-Medicaid witness testified to the limited information he or she had regarding drug pricing and reimbursement.  The witnesses also uniformally testified that they have little regular communication with State Medicaid staff and none regarding drugs or drug reimbursement.  Breckenridge Decl., ¶ 38.

Defendants now refer to the potential availability of the documents in the state purchasing department and not the program office.  Launching new discovery of a department independent from Medicaid would be time-consuming and expensive.  The State should not be forced to bear the burden of defendants' belated interest in this information from agencies for which the State *does not claim damages*.  The Court has already limited defendants' discovery in this area once before.  At this point, the uselessness of the information to the case is evident and defendants offer no plausible explanation for needing the information.  Defendants' arguments that the information will go to "prove" Medicaid knowledge regarding the falsity of AWP list prices provided by defendants should be rejected for the same reasons that the New York Court rejected similar arguments – state agency knowledge is simply not relevant.  Breckenridge Decl., Ex. 1 at pp. 6-7.  Moreover, here, there is not even any basis to impute other agency knowledge to Nevada Medicaid.

Defendants' motion as it relates to non-Medicaid discovery should be denied.

**D.     Defendants Have Demonstrated No Need for Additional Depositions**

Defendants seek "up to five [additional] depositions in each case,"[9]  Def. Mot. at 11-12, without demonstrating why even one is necessary.  Fed. R. Civ. P. 30(a)(2) limits the number of depositions in a case to ten without leave of court or the written stipulation of the parties.  Courts will expand the number for good cause shown.  *Id*.  Defendants have already had an excessive

---

[9] The State assumes that the drug manufacturers' reference to "up to five additional depositions *in each case*," is a typographical error since defendants brought the motion only in the Nevada cases.

amount of discovery here in light of the relatively small population of the State of Nevada and the size of its Medicaid program.  Given the current case schedule, the parties should not be committed to additional depositions unless absolutely necessary.  A request to take additional depositions of ***unidentified*** witnesses beyond the number prescribed by the Rules is particularly inappropriate.  *Whittingham v. Amherst College*, 163 F.R.D. 170-71 (D. Mass. 1995).  The purpose of Rule 30(a)(2) is to place some restraint on the parties and to control the litigation.  *Id.* at 171-72.  Such restraint is required now in this case.

Additional depositions at this point would be unduly burdensome in terms of time and expense and can only be designed to harass and annoy the State.  Defendants' request is purportedly based on its complaints about the volume of electronic and paper documents, the State has produced since March 30, 2006.  However, defendants' motion is devoid of even one example of a document that would require it to depose another witness.

Indeed, defendants' references to volume and timing of production as bases for additional depositions are misleading and the volume is a predicament of their own making.  The electronic documents are being produced pursuant to the Court's March 29, 2006 Order that the State produce electronic files for all Medicaid witnesses deposed pursuant to search terms prepared by defendants.  The State warned the defendants that the search terms were far too broad and that the available software was not capable of limiting duplicate electronic documents and that the process was extremely time-consuming.

The State initially attempted to review all electronic documents before production.  This was too cumbersome and delayed production.  The State and defendants negotiated a process by which the State would conduct only a cursory review of the files for privilege and patient health information and would then produce the files.  In exchange for the expedited production, the

- 12 -

defendants agreed to return any files containing protected information immediately, with no questions asked.  The State and defendants have conferred repeatedly throughout the process, thus defendants are aware of the problems.  The result is the production of a larger volume of duplicative and non-responsive material than would have been produced if the State had conducted a complete screening.  Because of the limited screening, much of the electronic material has been previously produced in hard copy and the State is producing an extraordinary volume of non-responsive and duplicative material (including as many as 20 or more copies of the same e-mails).

Defendants must not be granted leave to take additional depositions without identifying the witnesses they wish to depose and demonstrating need.  If the defendants' request for additional depositions is truly founded on legitimate need arising out of newly-produced evidence rather than opportunistic complaints regarding volume, they will have no problem demonstrating need.  The State will not reasonably withhold its agreement if the defendants show good cause for the additional depositions and the Court should not be required to become involved absent extraordinary circumstances.  The defendants' motion as it relates to additional depositions should be denied, with leave to renew if the parties cannot reach agreement regarding any showing of "good cause."

**E.     The State Has Conducted a Reasonable Inquiry and Answered Defendants' Interrogatories to the Best of Their Knowledge**

A close examination of defendants' claims regarding the State's interrogatory responses reveals ***not*** that the State did not provide answers, but that defendants either do not like the answers, want additional detail that may not be available or want the information faster than the

State has been able to provide it.[10]  The State does not intend to evade its discovery obligations, but it also will not compromise its legitimate objections.  The State's responses are still being developed.  The State is reviewing voluminous amounts of data and other discovery defendants provided, including the millions of pages of information dumped on the State and Class Plaintiffs by Baxter and Amgen just before and after discovery closed.

Defendants served the First Set of Interrogatories on June 2, 2005.  The State immediately responded to defendants' broad, ambiguous interrogatories with objections.  Many of the interrogatories were improper, premature contention interrogatories, asking for answers that would necessarily have to come from defendants' yet-to-be produced files, if the State could answer them at all.  Ironically, defendants also asked for information that they strongly objected to producing to the States themselves, including information about pricing such as ASP data.  In the case of the ASP data defendants refused to produce, Class Plaintiffs moved to compel the production of the data and the Court ruled in defendants' favor.  In other interrogatories, defendants asked for information that would only be found in the expert submissions later in the case.

The State responds here to each interrogatory for which defendants dispute the State's answer.

> **a.     The State Supplements Interrogatory Nos. 6, 7, and 8**

The State will supplement interrogatory numbers 6 through 7 consistent with the following discussion.

---

[10] The State assumes that the drug manufacturers do not have a sincere concern regarding a signed verification page for the interrogatories, considering that the author of the motion, Schering Plough and Warrick, just provided their own signed verification pages and many defendants have signed verification pages outstanding.  Counsel for the State developed the interrogatory responses with Nevada Medicaid Director Chuck Duarte and other Medicaid staff. Mr. Duarte will execute a signed verification page.

Interrogatory No. 6 asks for information regarding the drug manufacturers' marketing of the spread to Providers, as alleged in the Complaint. This information is uniquely located within defendants' own files and has been the subject of extensive document production and deposition testimony, primarily in the Class case. Significantly, ***defendants refused to provide exactly the same information when asked by the State***. *See* Breckenridge Decl., Ex. 5 (Response of Schering-Plough Corporation and Warrick Pharmaceuticals Corporation to Plaintiffs' Omnibus Requests for Production and Interrogatories, Interrogatory Nos. 1 – 3 (objecting to the production of data; Request for Production of spread-related documents).

The State will supplement Interrogatory No. 7, requesting identification of each instance the State alleges that the drug manufacturers' use of discounts, rebates, and other financial incentives to induce drug use or purchase, by stating the following: from the time a sale was made in the State at a price that was not AWP, such an incident occurred. The State cannot identify each defendant employee with knowledge (that information is within the defendants' custody and control). Information concerning the providers involved and the dates of the inducement are contained within the claims data provided by the State to defendants and data used by the State's expert, Ray Hartman. The drug information is contained within the data used by Dr. Hartman in his expert report.

The State will also supplement its response to Interrogatory No. 8, seeking defendants' representations concerning the meaning of the term AWP, by reiterating its objection that the information is within the custody and control of defendants, who have objected to the production of the same information when asked by the State. The State further states that every time AWP was used, there was a representation that it meant what the United States Congress intended it to mean and what its plain language suggested: ***an average wholesale price.*** Each time a

- 15 -

transaction was made at an amount other than AWP, defendants made a representation and it was *false*. The specific transactions are in the defendants' sales data based on the claims data produced by Nevada.

        **b.**      **The State Has No Supplemental Information to Provide For Certain Interrogatories**

The State has answered certain interrogatories to the best of its current abilities, and cannot provide additional information.

Interrogatory No. 1(c) asks for the identity of individuals with information regarding negotiations between the State and any Provider relating to AWPs for Subject Drugs or the reimbursement for such drugs. Notwithstanding the irrelevance of the information sought, the State answered this interrogatory almost immediately by identifying two State employees and the State's fiscal intermediary as having knowledge. The State has no supplemental information. The State further notes that the defendants deposed the two State employees more than one time each and failed to pursue information from the fiscal intermediary once it determined the fiscal intermediary would charge them for the data. Breckenridge Decl., ¶ 45. The documents the State referred to in its supplemental responses are State Plan Amendment documents reflecting changes in the reimbursement rate for State Medicaid. These were among the first documents produced in the case and have since been produced in electronic form through many witnesses.

Similarly Interrogatory No. 1(g) asks for the identity of individuals with knowledge regarding the setting of dispensing fees or fees for other professional services. The State identified one current employee and one former employee. Defendants deposed both (the current employee for more than two days). The documents the State refers defendants to are general documents and electronic mail discussing dispensing fees. There are no specific documents responsive to this interrogatory. The State has no supplemental information.

- 16 -

Interrogatory No. 3 asks for "the time period and State program in which [Medicaid and non-Medicaid entities] used AWPs" recommended by the United States DOJ or the National Association of Medicaid Fraud Control Units.  Interrogatory No. 3 was limited by Magistrate Bowler's March 29, 2006 ruling on the defendants' second motion to compel in which she restricted discovery from non-Medicaid State agencies.  *See supra* at 9.  The State has answered this interrogatory on behalf of Nevada Medicaid by stating that it has investigated this interrogatory and that no current employee can provide an answer.  The State has no supplemental information.

Interrogatory No. 4, seeking pharmaceutical reimbursement methodologies for multiple state agencies, was also limited by the March 29, 2006 ruling.  The State responded fully to Interrogatory No. 4 on behalf of Nevada Medicaid.  The relevant production included the State Plan Amendment documents and the Medicaid manual, both provided early in the case.  The State Plan Amendment is the official document setting forth State Medicaid's "pharmaceutical product reimbursement methodology."

Interrogatory No. 9 asks the State for (i) claims data; and (ii) information regarding Section 340B providers.  The State provided claims data and objected to defendants' efforts to obtain Section 340B provider information as irrelevant to the claims and defenses in the case.  Defendants have demonstrated no basis for producing additional information.  The State both stands on its objection and has no additional information to provide.

With respect to Interrogatory No. 12, asking for information describing the rebate program, the State has objected to this interrogatory as irrelevant.  Moreover, defendants have access to this information because they participate in the State's rebate program.  State formulary information may be found within the electronic productions of various witnesses.

- 17 -

The State and defendants have discussed Interrogatory No. 19, requesting State acquisition cost data, numerous times.  The defendants are aware of the study conducted by Myers & Stauffer, at the State's request, in 2002.  Defendants have deposed Coleen Lawrence, Nevada Medicaid Director Chuck Duarte and other witnesses at length on this exact question, *using the very documents they now ask the State to identify.*  Breckenridge Decl., ¶ 46. Defendants also deposed a representative of Myers & Stauffer, using the same documents. Breckenridge Decl., ¶ 47.  The State has no supplemental information to respond to this interrogatory.

### c.     Some of Defendants' Interrogatories Are The Subject of Expert Testimony

Defendants' Interrogatory No. 10 asks for information by NDC number on (a) the number of units and the dollar amount Nevada Medicaid paid to providers for subject drugs; (b) the amount overpaid; and (c) any true-ups considered between defendants and the State.  The State can only respond, as it has so often, by advising defendants that information concerning the number of units and the dollar amounts paid are included in claims data (including claims data they did not pursue from First Health, the State's fiscal intermediary).  The amount overpaid is the subject of expert testimony.  Finally, the State is not aware of any true-ups contemplated by the defendants and the States, although the same question should be asked of defendants.  If defendants have information to the contrary, the State would like to discuss it.

Interrogatory No. 23 asks the State to quantify the spread it believes is required to trigger liability on the part of the defendants.  This information is the subject of Dr. Hartman's expert opinion.

- 18 -

## III.    CONCLUSION

For the foregoing reasons, Defendants' Third Motion to Compel Discovery from Plaintiff

the State of Nevada should be denied in its entirety.  Defendants should not be permitted to

pursue irrelevant and cumulative discovery.


By___/s/ Jeniphr Breckenridge_____          DATED:  August 17, 2006.
   Steve W. Berman
   Sean R. Matt
   Jeniphr A.E. Breckenridge
   HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
   Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

   Thomas M. Sobol
   Edward Notargiacomo
   HAGENS BERMAN SOBOL SHAPIRO LLP
   225 Franklin Street, 26th Floor
   Boston, MA  02110
   Telephone: (617) 482-3700
   Facsimile: (617) 482-3003


   George J. Chanos
   Attorney General of the State of Nevada
   L. Timothy Terry
   Deputy Attorney General Attorney General
   100 N. Carson Street
   Carson City, Nevada 89701-4714

   COUNSEL FOR PLAINTIFF
   STATE OF NEVADA

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **THE STATE OF NEVADA'S OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL DISCOVERY** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 17, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By       **/s/ Steve W. Berman**
      Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA  98101
      (206) 623-7292

001534-13  123351 V1