UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *State of Nevada v. Abbott Labs., Inc. et al.*, Case No. CV-2-00260 (Nevada I), and | |
| *State of Nevada v. American Home Products, et al.,* CA NO. 02-CV-12086-PBS (Nevada II) | |

**DECLARATION OF JENIPHR BRECKENRIDGE IN SUPPORT OF THE STATE OF NEVADA'S OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL DISCOVERY**

I, Jeniphr Breckenridge, declare:

1. I am a partner in the law firm of Hagens Berman Sobol Shapiro LLP and I am one of the lawyers representing the State of Nevada in these cases. I make this declaration in support of the State of Nevada's ("State") Opposition to Defendants' Third Motion to Compel Discovery. This declaration is based on facts known to be personally or related to me by others involved in the lawsuit.

2. This declaration sets forth certain facts in support of the State's Opposition to Defendants' Third Motion to Compel Discovery.

**A.    BACKGROUND**

3. On behalf of the State, I have been directly involved in conferring with defendants regarding their discovery to the State and the State's responses.

001534-13 124289 V1

4. Defendant drug manufacturers served their First Set of Interrogatories and Requests for Production to the State of Nevada on May 3, 2005. The discovery was ambiguous, broad and unfocused. The information the drug manufacturers appeared to seek often had no relationship to documents the State could locate in its files.

5. From the beginning, the State and defendants have spent an unusual amount of time meeting and conferring regarding defendants' discovery. For the most part, these efforts have been cooperative. Based on my experiences in this case and many other complex cases, I believe that the extensive meet and confer process was necessary because of the complexity of the case *and* the breadth of defendants' discovery.

6. The parties' frequent negotiations led to the resolution of most contested issues. Many of the topics raised in the instant motion – including managed care discovery, claims data interpretation, and non-Medicaid discovery – were covered in early meet and confer sessions with GSK counsel, long before current defense liaison counsel became actively involved in case discovery.

7. In late March 2006, new discovery liaison counsel appeared for the defendants. It is these counsel who have filed the present motion. New counsel had not previously been actively involved in case discovery, appeared at few State witness depositions, and seemed to have virtually no historical knowledge of the fact discovery history in the case. New counsel immediately began to question previous discovery decisions by their co-defendants and re-opened discovery issues previously closed. Although this was frustrating and time-consuming for the State, we cooperated.

**B.    DISCOVERY FROM NEVADA MEDICAID'S MANAGED CARE PROGRAM**

8. To prepare this opposition, I reviewed the December 22, 2005 deposition of Nevada Medicaid's managed care director, Phil Nowak. Mr. Nowak has been the director of the

2

managed care program for 6 years.  Nevada Medicaid's managed care program has been in existence for eight years.   I interviewed Phil Nowak regarding defendants' allegations.  I have also been involved in discovery from the managed care program on behalf of the State.  This section is based on all of these sources of information.

9. Although the State has objected to the production of documents from the managed care program files, without waiving its objections, the State has reviewed and produced significant material on the program from the hard-copy files of the director and his staff.  The documents defendants now seek were not located among these files.

10. My firm has also reviewed Mr. Nowak's electronic files and produced over 1700 pages of responsive information pursuant to Magistrate Bowler's March 29, 2006 order concerning electronic discovery.

11. Defendants took Mr. Nowak's deposition.  It lasted just two hours.  The transcript was only 68 pages long.  Ten of the 68 pages related to the irrelevant topic of Mr. Nowak's work in the State's Department of Prisons.  A number of other pages were devoted to whether Mr. Nowak had destroyed any documents relevant to this litigation (answer: no).

12. The State's cursory review of Mr. Nowak's electronic files to prepare for this opposition showed among those files numerous Requests for Proposal ("RFP") and other contract-related documents such as those now demanded by defendants.

13. If defendants had asked Mr. Nowak, they would have learned that Nevada Medicaid's managed care program has only been in place since 1998.

14. Mr. Nowak would also have told defendants, if asked, that all managed care programs from the beginning have been "free standing delivery systems." Mr. Nowak describes this term as meaning that the State pays a monthly per capita rate for each of the participants

enrolled in the managed care programs.  According to Mr. Nowak, in exchange for this payment, the HMO assumes responsibility for all of the health care needs of the participants, ***including pharmacy reimbursement***.  There are "no carve outs for pharmacy.  The HMO pays for all prescription drugs for the participants.

15. Defendants did not ask Mr. Nowak, but he would have testified that the State does not receive any information whatsoever regarding the reimbursement methodology used by the HMOs for the drug purchases or reimbursement or any information regarding drug utilization by HMO participants.

16. The HMOs do not provide any information to Medicaid that would indicate what drugs were purchased or reimbursed by the HMO or at what prices.  Thus, managed care documents cannot be used to demonstrate State knowledge of "what the term AWP meant and how it relates to acquisition cost" because the State did not get such information from the HMOs.

17. Defendants issued subpoenas to each of them on November 3, 2005.  Each produced documents.  Presumably defendants could have developed the same information from these entities.  Notably, none of the documents reflected State knowledge regarding HMO pharmacy-reimbursement rates.

18. Defendants' renewed effort to obtain managed care documents they say were not produced appears to be based on the testimony of Ms. Lopez, an employee from an unrelated State agency about the documents *her* independent agency, Public Employee Benefits Program employee, receives in connection with the bidding process.  I reviewed Ms. Lopez's deposition transcript and interviewed her to prepare this response.  The information here is based on those sources of information, as well as the other sources identified above.

19. Ms. Lopez did *not* "reveal that Nevada maintains a wide range of documents regarding contracts it has for health-care benefits services" and her testimony was limited to her own agency.

20. Mr. Nowak has confirmed that the process for hiring contractors for the managed care program is different than Ms. Lopez describes for PEB, including the fact that until this year there were never more than two bidders (both hired) for the managed care program.

C. DISCOVERY CONCERNING NEVADA MEDICAID CLAIMS DATA

21. Defendants then took the deposition of Ron Swenson, Information Systems Specialist with the Nevada Department of Information Technology, on January 5, 2006. Mr. Swenson appeared as a fact witness. He is also the current Nevada state employee most knowledgeable regarding the claims data. To prepare for the opposition to defendants' third motion to compel, I recently reviewed Mr. Swenson's deposition transcript and interviewed Mr. Swenson.

22. After the State produced claims data and defendants raised questions regarding that data, I suggested that Mr. Swenson answer questions informally or via deposition. Mr. Swenson appeared voluntarily at a deposition.

23. Prior to the deposition, the State voluntarily produced two documents reflecting file layouts for the claims data to assist defendants' understanding. On the morning of the deposition, the State produced two additional versions of these documents created by Mr. Swenson.

24. GSK counsel, assisted by Christopher Stromberg of Bates White, examined Mr. Swenson. Christopher Stromberg had been identified on numerous occasions as defendants' claims data expert.

5

25. Virtually the only questions that the witness was unable to answer are those few identified in defendants' "Questions for Plaintiffs [sic] Regarding the Nevada Claims Data" defendants finally submitted to the State in June. Those questions Mr. Swenson could not answer, he volunteered to research and report back to defendants. I made the same offer off the record. Defendants did not follow up on these offers for months

26. The Swenson deposition lasted just 3 hours and 10 minutes; ignored most of the data fields contained in the claims data and did not include in-depth questions regarding any data.

27. Four months after the depositions, defendants approached the State about having Mr. Swenson or another competent state employee answer a "limited" number of questions regarding the claims data.

28. No mention was made of any inadequacy on the part of Mr. Swenson at any time.

29. The State indicated it would provide defendants with answers to their questions (and thus help with the predicament in which their first deposition left them). The State offered to make Mr. Swenson available *informally* or to have Mr. Swenson answer the questions in writing. The State asked for the questions in advance to facilitate the process and to minimize the disruption to Mr. Swenson.

30. Defendants responded by providing an extensive list and insisting on a deposition.

31. Lawyers involved in the Class AWP case before this Court have informed me that the concept of an additional deposition to interpret claims data is unprecedented in the AWP cases where plaintiffs and defendants have worked cooperatively to help each other interpret data produced via discovery. I have been told that this has usually been accomplished through informal discussions, but never through additional deposition testimony.

6

**D.     ADDITIONAL DISCOVERY FROM NON-MEDICAID AGENCIES**

32.    The State confirmed nearly one year ago that it is not seeking damages on behalf non-Medicaid agencies.

33.    Defendants moved for full discovery from non-Medicaid State agencies anyway. The Court limited defendants to three depositions of non-Medicaid agency witnesses and the documents found *within the files of those witnesses*.  Defendants selected the witnesses by name, not agency, themselves.

34.    The State complied with its obligations by searching the witnesses' files including related administrative assistant, general files and archived files as agreed.

35.    The State *then* went beyond its court-ordered obligations to search other likely sources within the agencies.  The searches took a long time.  The State kept defendants apprised of the search timing and the difficulties encountered.

36.    The documents defendants now seek – "complete contracts" – were not located within any of the targeted files.

37.    In the case of the Department of Mental Health and Developmental Services ("DMHDS"), the State contacted the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP"), the entity that handles the drug purchasing for the DMHDS.  MMCAP was initially uncooperative, but eventually produced all documents in their information system files. The State provided the data to defendants

38.    Each non-Medicaid witness testified to the limited information he or she had regarding drug pricing and reimbursement.  The witnesses also uniformly testified that they have little regular communication with State Medicaid staff and none regarding drugs or drug reimbursement.

7

### E. THE ADDITIONAL DEPOSITIONS

39. Electronic documents are being produced pursuant to the Court's March 29, 2006 order that the State produce electronic files for all Medicaid witnesses deposed pursuant to search terms prepared by defendants.

40. The State warned the defendants that the search terms were far too broad and that the available software was not capable of limiting duplicate electronic documents and that the process was extremely time-consuming.

41. The State initially attempted to review all documents. This was very cumbersome and delayed production of electronic files. The State and defendants negotiated a process by which the State would conduct only a cursory review of the files for privilege and patient health information and would then produce the files.

42. In exchange for the expedited production, the defendants agreed to return any files containing protected information immediately, with no questions asked.

43. The State and defendants have conferred repeatedly throughout the process, thus defendants are aware of the problems. The result is the production of a larger volume of duplicative and non-responsive material than would have been produced if the State had conducted a complete screening. Because of the limited screening, much of the electronic material has been previously produced in hard copy.

### F. THE INTERROGATORIES

44. The State has answered certain interrogatories to the best of its current abilities, and cannot provide additional information based on a reasonable investigation and interviews with State employees.

45. Interrogatory No. 1(c) asks for the identity of individuals with information regarding negotiations between the State and any Provider relating to AWPs for Subject Drugs or

8

the reimbursement for such drugs and the State answered almost immediately by identifying two State employees and the State's fiscal intermediary as having knowledge. The defendants deposed the two State employees more than one time each and failed to pursue information from the fiscal intermediary once it determined the fiscal intermediary would charge them for the data.

46.  With respect to Interrogatory No. 19, defendants questioned Nevada Medicaid Pharmacy Director Coleen Lawrence extensively on this exact topic during her three days of deposition using the Myers & Stauffer documents.

47.  Defendants also took a Fed. R. Civ. P. 30(b)(6) deposition of Myers & Stauffer regarding the same documents.

## G.    EXHIBITS

48.  Attached hereto as Exhibit 1 is a true and correct copy of the New York Supreme Court Decision and Order in *People of the State of New York v. Pharmacia, et al.*, Index No. 904-03 (N.Y. Sup. Ct. July 19, 2006).

49.  Attached hereto as Exhibit 2 is a true and correct copy of the January 5, 2006 Ronald Swenson deposition transcript, pages 1-2.

50.  Attached hereto as Exhibit 3 is a true and correct copy of a June 7, 2006 letter to Jeniphr Breckenridge from Christopher Dillon with attached Exhibit A "Questions for Plaintiffs Regarding the Nevada Claims Data".

51.  Attached hereto as Exhibit 4 is a true and correct copy of a March 30, 2006 letter to Jeniphr Breckenridge from Kathleen O'Sullivan.

52.  Attached hereto as Exhibit 5 is a true and correct copy of the Response of Schering-Plough Corporation to Plaintiffs' Omnibus Requests for Production and Interrogatories, Case Nos. 01-CV-12257-PBS and 01-CV-339.

I swear under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

      /s/ Jeniphr Breckenridge
Jeniphr A.E. Breckenridge (WSBA 21410)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

<u>August 17, 2006 at Seattle, Washington</u>
Date and Place of Execution

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF JENIPHR BRECKENRIDGE IN SUPPORT OF THE STATE OF NEVADA'S OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL DISCOVERY** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 17, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties.

By  **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

11