# EXHIBIT 1

NEW YORK SUPREME COURT
COUNTY OF ALBANY
-------------------------------------------------x
People of the State of New York   :
                                          :
        Plaintiff               :
                                            :
        v.                   :        Index No. 904-03
                                            :        RJI No.: 01-03-075848
Pharmacia Corp.               :
                                            :
        Defendant          :
-------------------------------------------------x     **NOTICE OF ENTRY**
People of the State of New York   :        Hon. William E. McCarthy, J.S.C.
                                            :        Commercial Division
        Plaintiff              :
                                            :
        v.                   :        Index No. 905-03
                                            :        RJI No.: 01-03-076342
SmithKline Beecham Corporation,  :
d/b/a GlaxoSmithKline        :
                                            :
        Defendants        :
-------------------------------------------------x
People of the State of New York   :
                                            :
        Plaintiff              :
                                            :
        v.                   :        Index No. 1150-03
                                            :        RJI No.: 01-03-076343
Aventis Pharmaceuticals, Inc.    :
                                            :
        Defendant       :
-------------------------------------------------x

      **PLEASE TAKE NOTICE** that the attached is a true copy of the Decision and Order

issued by the Hon. William E. McCarthy on the 19th day of July, 2006 and entered and filed in

the office of the Clerk of the Court on the 24th day of July, 2006.

Dated: Albany, New York
     July 25, 2006

                         ELIOT SPITZER
                         Attorney General of the
                          State of New York
                         By:

                         MATTHEW J. BARBARO
                         Assistant Attorney General
                         Bureau of Consumer Frauds and
                         Protection
                         The Capitol
                         Albany, New York 12224
                         (518) 486-9630
                         Attorney for Petitioners

To:    John C. Dodds, Esq.
        Morgan, Lewis & Bockius, LLP
        1701 Market Street
        Philadelphia, PA 19103

        Frederick G. Herold, Esq.
        Dechert LLP
        1117 California Avenue
        Palo Alto, CA  94304-1106

        Joseph G. Matye, Esq.
        Shook, Hardy & Bacon
        2555 Grand Boulevard
        Kansas City, Missouri 64108-2613

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF ALBANY

PEOPLE OF THE STATE OF NEW YORK,

        Plaintiff,

  -against-

                        Index No. 904-03
                        RJI No.: 01-03-075848

PHARMACIA CORPORATION,

        Defendant.

*Albany County Clerk*
*Document Number 9760854*
*Rcvd 07/24/2006 9:08:37 AM*

PEOPLE OF THE STATE OF NEW YORK,

        Plaintiff,

  -against-

                        **DECISION and ORDER**

                        Index No. 905-03
                        RJI No.: 01-03-076342

SMITHKLINE BEECHAM, CORP., d/b/a
GLAXOSMITHKLINE,

        Defendant.

PEOPLE OF THE STATE OF NEW YORK,

        Plaintiff,

  -against-

                        Index No. 1150-03
                        RJI No.: 01-03-076343

AVENTIS PHARMACEUTICALS, INC.,

        Defendant.

(Supreme Court, Albany County, All Purpose Term)

APPEARANCES:

                Hon. Eliot Spitzer
                Attorney General of the State of New York
                Attorney for Plaintiff

(Matthew J. Barbaro, Rose E. Firestein, Carol Beyers, Carol Hunt,
Galen Kirkland, Patrick Lupinetti, Shirley Stark and Henry
Weintraub, Esqs., of Counsel)
The Capitol
Albany, New York   12224-0341

Nixon Peabody LLP
Co-Attorneys for Defendant Pharmacia Corp.
(Andrew C. Rose, Esq., of Counsel)
Omni Plaza, Suite 900
30 South Pearl Street
Albany, New York, 12207

Morgan, Lewis & Bockius LLP
Co-Attorneys for Defendant Pharmacia Corp.
(John C. Dodds, Jennifer B. Jordan and
Jason E. Baranski, Esqs., of Counsel)
1701 Market Street
Philadelphia, Pennsylvania 19103

Whiteman Osterman & Hanna LLP
Attorneys for Defendant SmithKline Beecham Corp.
(Neil L. Levine, Esq., of Counsel)
One Commerce Plaza
Albany, New York 12260

Greenberg Traurig, LLP
Co-Attorneys for Aventis Pharmaceuticals, Inc.
(Alan Mansfield and Stephen L. Saxl, Esqs., of Counsel)
200 Park Avenue
New York, New York 10166

Shook Hardy & Bacon, L.L.P.
Co-Attorneys for Aventis Pharmaceuticals, Inc.
(Michael L. Koon, Joseph G. Matye and
Nicola R. Heskett, Esqs., of Counsel)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613

McCarthy, J.:

The above-captioned actions have been consolidated for pre-trial purposes. Plaintiff has

moved for an order compelling defendant Pharmacia Corp. to comply with discovery demands

2

relating to all prescription drugs sold by said defendant notwithstanding the fact that the complaint only specifically identified a small number of drugs. Defendant Pharmacia Corp. has moved for an order compelling the plaintiff to conduct a full and complete search for documents responsive to said defendant's demands in the possession of numerous different state agencies and the Legislature, compelling production of documents claimed to be privileged and documents covering the period from 1985 to the present. Defendant Aventis Pharmaceuticals has moved for similar relief.

The instant actions are brought pursuant to General Business Law § 349 and Executive Law § 63 (12) seeking to enjoin allegedly fraudulent and deceptive business practices, to obtain restitution to aggrieved consumers and state agencies which have allegedly overpaid for prescription drugs and to direct the payment of certain fines and penalties. As a means of background, pursuant to statute, a number of state agencies reimburse medical and prescription drug providers for some drugs dispensed to medicaid and medicare recipients, as well as certain elderly consumers covered by EPIC, a state sponsored prescription drug insurance plan, based upon the "average wholesale price" of the drugs as reported by a prescription drug price reporting service (*see* Social Services Law § 367-a [9] [b]; Elder Law § 250 [1] [a] and [b]). The statutes do not impose any restrictions or mandates with respect to how drug manufacturers are to report their "average wholesale prices" to the reporting service. Apparently, a longstanding industry practice has been to report some form of "list" price, rather than the actual discounted prices paid by providers to wholesalers and distributors. Indeed, the statutes on their face appear to indicate that the reported "average wholesale price" is not the actual price paid by providers. Both statutes provide that reimbursement shall be the lesser of the usual and customary charge to the general public or a significantly discounted "average wholesale price."

3

The State contends that, in recent years, a number of manufacturers, including defendants, have allegedly inflated their reported "average wholesale prices" well above the actual average prices paid for their drugs. This inflation, in turn, has the effect of increasing the reimbursements, and hence the profits, to providers who dispense such manufacturers' drugs. The differential is known as the "spread." A greater "spread" creates a significant incentive for providers to prescribe or dispense such drugs, thereby increasing the sales of such drugs. Indeed, the State alleges that Pharmacia Corp. actively marketed its drugs by promoting this "spread" and the consequent profits available to providers. The State contends that such increased prices have the effect of increasing the co-payments for consumers as well as increasing the costs to the State.

With respect to the instant motion practice, all three motions to compel discovery are entirely generic in that they fail to address any specific discovery demands. Indeed, defendant Pharmacia failed to submit a copy of the demand with which it seeks to compel compliance. The Court will follow this course charted by the parties.

Plaintiff seeks to compel production of information with respect to all drugs sold by defendant Pharmacia. Plaintiff contends that, because a prior motion to dismiss for failure to provide sufficient specificity in the complaint was denied, it is now the law of the case that all drugs sold by Pharmacia are covered by the litigation. Pharmacia contends that discovery should be limited to the drugs specifically identified in the complaint. The prior decision of Justice Benza, dated June 1, 2004 did not mention the issue of identifying specific drugs in upholding the complaint and, as such, has no impact on the outcome of the instant motion. Moreover, the complaint appears to list the specific drugs as examples with no intention to limit the claims to such drugs. Therefore, the scope of the instant action is not limited to the drugs specifically identified in the complaint.

4

However, plaintiff, as the party seeking to compel discovery, has the burden of establishing that the requested discovery seeks evidence which is material and relevant to the causes of action asserted in the complaint (*see Vyas v Campbell*, 4 AD3d 417, 418 [2d Dept 2004]; *Carp v Marcus*, 116 AD2d 854, 855 [3d Dept 1986]). The complaint on its face, as well as the relevant statutes, indicate that not all drugs are reimbursed based upon the reported "average wholesale price." Many drugs are subject to a "federal upper limit" and others may have lower retail prices. As such, plaintiff has failed to show that discovery with respect to all drugs sold by defendant Pharmacia is relevant. Accordingly, plaintiff's motion to compel production of information with respect to all such drugs shall be denied without prejudice to renew following service of a demand which properly narrows the scope of discovery in the event defendant Pharmacia fails to comply.

Defendants Pharmacia and Aventis seek to compel plaintiff to search numerous state agencies, as well as the Legislature, for information concerning how much such state bodies knew about the nature of the reported "average wholesale price" and when they acquired such knowledge. Plaintiff objects to the demands on the grounds that the information sought is irrelevant, that the state agencies and Legislature are not parties to this action and further that much of the information is privileged.

As indicated above, the defendants have the burden of showing that the requested evidence is material and relevant (*see Vyas*, 4 AD3d at 418; *Carp*, 116 AD2d at 855). Defendants contend that plaintiff alleges that the agencies and programs were defrauded into believing that the published "average wholesale prices" represented the actual prices paid by physicians and pharmacies for the various drugs. They also contend that the complaint alleges that the agencies were defrauded

5

because they tied reimbursement to the reported "average wholesale prices" based upon the understanding that these were the actual prices paid. The complaint against Pharmacia does not expressly contain any such allegations and Aventis has not submitted the complaint in the action against it.

Further, defendants also contend that, if they can prove that the state agencies knew that the reported "average wholesale prices" were not the actual prices paid, plaintiff's claims must fail. This argument fails. Reimbursement is based solely upon statutory formulae over which the agencies have no discretion or control. The agencies' understanding of what "average wholesale price" constituted is thus irrelevant.

Plaintiff contends that the "action turns on what the Legislature meant by "average wholesale price": Is it an estimate of actual acquisition cost, as plaintiff contends, or is it a 'sticker' or 'list' price that the manufacturer can set without reference to purchaser's actual acquisition cost, as defendant argue." (Plaintiff's memorandum of law at 4). However, plaintiff objects to providing discovery of evidence sought by defendants on the ground that it is not probative with respect to legislative intent.

Evidence with respect to an individual legislator's knowledge or interpretations of statutes, (see *Knight-Ridder Broadcasting, Inc. v Greenberg*, 70 NY2d 151, 158 [1987]), letters of individual legislators (see *Willett v Dugan*, 161 AD2d 900, 901 -902 [3d Dept 1990]) and reports which are not referred to in the bill jacket (see *Matter of Orens v Novello*, 99 NY2d 180, 188 [2002]) are not probative of the legislative intent. Rather, defendants must rely upon the public record in establishing legislative intent (see e.g. *Matter of Gropper v Tax Appeals Tribunal of State of New*

6

*York*, 9 AD3d 796, 798 [3d Dept 2004]).  As such, the great bulk of the evidence sought by defendants is not relevant to the issue of legislative intent.  In any event, plaintiff could recover upon a showing that defendants improperly manipulated the prior practice of reporting mildly inflated prices as "list" prices by substantially increasing the "spread" to increase sales even if the Legislature was aware of and accepted the mildly inflated pricing when it established the reimbursement formulae.  Therefore, evidence that the Legislature and state agencies knew that the reported "average wholesale prices" were inaccurate and when they knew it is not relevant herein. This includes evidence related to such issue going back to 1985, as sought by defendants.

Plaintiff also contends that neither the Legislature nor the agencies are parties to the instant action and, as such, defendants must follow the procedures applicable to obtaining discovery from non-party witnesses.  CPLR 3102 (f) provides "[i]n an action in which the state is properly a party, whether as plaintiff, defendant or otherwise, disclosure by the state shall be available as if the state were a private person."  Thus, it has been held that a defendant in an action brought by the Attorney General pursuant to the General Business Law and the Executive Law to prevent fraudulent conduct is entitled to full discovery from the state (*see People v Katz*, 84 AD2d 381, 383 [1st Dept 1982]; *see also People v Bestline Prods.*, 41 NY2d 887, 888 [1977]).  Therefore, discovery of evidence within the possession, custody or control of the Attorney General is discoverable.  This certainly includes evidence relating to payments for the various drugs for which plaintiff seeks restitution which is in the possession of the affected agencies.  However, as indicated above, it is unclear what drugs are actually the subject of this action.  It would therefore be premature and wasteful to compel production of evidence with respect to drugs which may not be involved herein.

7

With respect to the motion to compel production of allegedly privileged documents, the privilege log served by plaintiff fails to provide sufficient information with respect to the documents to allow the Court to determine whether any privilege applies. An *in camera* inspection would therefore be required (*see Geary v Hunton & Williams*, 245 AD2d 936 [3d Dept 1997]). However, given the generic nature of the motions, the fact that many of the documents concerning which plaintiff has asserted various privileges are not relevant, and the fact that the scope of the action has not been defined, an *in camera* inspection would be premature at this time. Rather, the parties are directed to appear for a preliminary conference to establish a discovery schedule, which should include, among other things, a time frame to serve a bill of particulars to define the affected drugs and the amount of restitution claimed. The Court will schedule such conference by separate letter.

Accordingly, it is

**ORDERED** that the motions to compel discovery are hereby denied.

This memorandum shall constitute both the decision and the order of the Court. All papers, including this decision and order, are being returned to former counsel for plaintiff. The signing of this decision and order shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of that section relating to filing, entry and notice of entry.

IT IS SO ORDERED!

Dated: JULY 19 2006
Albany, New York

William E. McCarthy, J.S.C.

Albany County Clerk
Document Number 9760854
Rcvd 07/24/2006 9:08:37 AM

8

Papers Considered:

1.   Notice of Motion dated June 29, 2005;
2.   Affirmation of Carol Beyers, Esq. affirmed June 29, 2005, with Exhibits 1-12 annexed;
3.   Exhibits 1-6 submitted by defendant Pharmacia;
4.   Notice of Motion dated June 30, 2005;
5.   Affidavit of Jason E. Baranski, Esq. sworn to June 29, 2005, with Exhibits A-L annexed;
6.   Notice of Motion dated June 30, 2005;
7.   Affirmation of Steven L. Saxl, Esq. affirmed June 30, 2005, with Exhibit A annexed;
8.   Affirmation of Matthew Barbaro, Esq. affirmed May 12, 2006, with Exhibits A-E and G annexed;
9.   Affidavit of Gregor N. MacMillan, Esq. sworn to July 13, 2005.

SUPREME COURT OF THE STATE OF
NEW YORK, COUNTY OF ALBANY

PEOPLE OF THE STATE OF NEW YORK,

Plaintiff,

-against-

PHARMACIA CORPORATION,

Defendant.

PEOPLE OF THE STATE OF NEW YORK,

Plaintiff,

-against-

SMITHKLINE BEECHAM CORP., d/b/a
GLAXOSMITHKLINE,

Defendant.

PEOPLE OF THE STATE OF NEW YORK,

Plaintiff,

-against-

AVENTIS PHARMACEUTICALS, INC.,

Defendant.

DECISION and ORDER
Index No. 905-03
RJI No.: 01-03-076342

ELIOT SPITZER
Attorney General

/Madam:

...ke notice that the within is a copy of the

_____ duly filed

d entered in the office of the Clerk of

_____ County, on the _____ day

_____ 2006.

...urs, etc.

ELIOT SPITZER
...torney General
...torney for the Plaintiff
...e Capitol
...bany, NY 12224

# EXHIBIT 2

Ronald H. Swenson                                    January 5, 2006
                          Carson City, NV

                                                                   1

          IN THE UNITED STATES DISTRICT COURT

          FOR THE DISTRICT OF MASSACHUSETTS

    ------------------------x          CERTIFIED COPY

    In re: PHARMACEUTICAL    : MDL DOCKET NO.

    INDUSTRY AVERAGE         : CIVIL ACTION

    WHOLESALE PRICE          :

    LITIGATION               : 01CV12257-PBS

    ------------------------x

    THIS DOCUMENT RELATES    :

    TO:  ALL ACTIONS         :

    ------------------------x

              DEPOSITION OF RONALD H. SWENSON

                   JANUARY 5, 2006


         BE IT REMEMBERED that on THURSDAY, the 5th day

    of JANUARY, 2006, at the hour of 9:05 AM of said day,

    at the offices of THE ATTORNEY GENERAL, 100 North

    Carson Street, Carson City, Nevada, before me,

    STEPHANIE ZOLKOWSKI, a notary public, personally

    appeared, RONALD H. SWENSON, who was by me first duly

    sworn and was examined as a witness in said cause.

Ronald H. Swenson                                    January 5, 2006
                        Carson City, NV

```
                                                              2
 1                A P P E A R A N C E S
 2   FOR GLAXOSMITHKLINE:   COVINGTON & BURLING
 3                          By:   JASON R. LITOW, ESQ.
 4                          1201 Pennsylvania Ave. NW
 5                          Washington, DC 20004-2401
 6
 7                          BATES WHITE
 8                          BY: CHRIS STROMBERG, ESQ.
 9                          2001 K Street NW, Ste. 700
10                          Washington, DC 20006
11                               (Via telephone)
12
13   FOR STATE OF NEVADA:   HAGENS BERMAN, LLP
14                          By:   JENIPHR BRECKENRIDGE, ESQ.
15                          1301 Fifth Ave.
16                          Seattle, Washington 98101
17                                   and
18                          L. TIMOTHY TERRY, DIRECTOR
19                          OFFICE OF THE ATTORNEY GENERAL
20                          100 N. Carson St.
21                          Carson City, Nevada 89701
22
```

# EXHIBIT 3



ROPES & GRAY LLP

ONE INTERNATIONAL PLACE     BOSTON, MA 02110-2624     617-951-7000     F 617-951 7050
BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

June 7, 2006

Christopher Dillon
cdillon@ropesgray.com
(617) 951-7827

## BY ELECTRONIC DELIVERY AND U.S. MAIL

Jeniphr A. Breckenridge
Hagens Berman Sobol Shapiro
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101

Re: *Nevada AWP Actions*

Dear Jeniphr:

I write in response to your June 1, 2006, letter.

*Document Requests*

As requested in our May 16 letter, please confirm whether we now have all documents responsive to Category Nos. 1, 2, 10, 13, Duraiswamy March 31, 2005 email (Wherry and Duarte notes), and the written discovery of the non-Medicaid entities. In addition, the following issues remain unresolved.

**Category 3:** (Open) This request seeks Mr. Willden's legislative files. Your April 25 letter states that the State's search is ongoing. Please provide an update on the status of your search and production.

**Category 4:** (Open) This request seeks correspondence from the legislative branch regarding drug reimbursement. Your April 25 letter states that the State's search is ongoing. Please provide an update on the status of your search and production.

**Category 5:** (Open) This request seeks white papers prepared for legislative sessions. Your April 25 letter states that documents will be produced. Please provide an update on the status of your search and production.

10051725_1

Jeniphr A. Breckenridge                   - 2 -                          June 7, 2006

**Categories 6& 9:** (Open) Your June 1 letter says that that State will produce MAC reports it has been able to obtain from First Health. We have recently received two boxes of MAC reports. Please confirm that all responsive materials have now been produced.

.   **Category 11:** (Open) This request seeks claims data for physician-administered drugs. Your April 25 letter says that the State is working to locate this information. Please provide an update on the status of your search and production.

**Rebate Data:** (Open): My clients expect to produce rebate data, and a stipulation regarding the data will be forthcoming.

### 30(b)(6) Notice

In reliance on your June 1 letter representing that the State is open to adopting prior testimony in lieu of a further deposition, the defendants will undertake to identify the portions of existing testimony that they would like the State to adopt. Our preliminary review indicates that the State has not offered testimony on a number of categories and, thus, for these we will still be seeking a deponent. We will get back to you regarding a list of proposed testimony and topics for which we still seek a live witness.

### Parens Patriae Claims

Your June 1 letter says that "the State relies on sales data provided by defendants to support its *parens patriae* claims. The State is not relying on its own data." Your letter further states "As for the identity of the *parens patriae* claimants, the State expects these to be revealed at the time the claims are made as part of the claims process." We are unaware of any "claims process." This case is not a class action. As discovery closes, you have not identified the claimants for whom you purport to bring the *parens patriae* claims, you have not produced any documents from them, you have not produced any claims data regarding these claims, and you have not produced any witnesses. Please let me know if the State intends to produce any additional information regarding its *parens patriae* claims.

### Claims Data

As requested, attached as Exhibit A is the list of questions regarding the claims data. Please let us know when you have identified the person who can answer these questions and when we may speak with this person. As you will appreciate, we will need to preserve this information in an admissible form, and are open to discussing the form this would take.

Jeniphr A. Breckenridge        - 3 -        June 7, 2006

    With respect to the First Health claims data, the defendants do not intend to pay First Health for data that the State is required to produce. Your letter was unclear as to whether the State has obtained claims data from First Health, albeit in a format different from what the defendants originally sought. If so, we request that the State provide the data in the format it has received it. Otherwise, our respective positions are clear: we think that you have failed to produce information within your control that is essential to proving a *prima facie* element of your claim and will seek to dismiss such claims; whereas, you do not think the First Health claims data is necessary to prove the State's claims.

*Non-Medicaid Entity Discovery*

    I am attaching as Exhibit B, a list of documents that were identified by Mr. Hillerby, Ms. Lopez, and Ms. Olson, which we believe are responsive to outstanding discovery requests. We are mindful of the limitations that Judge Bowler has placed and request that you produce them or confirm that such documents do not exist in the files of these individuals, their assistants, or in the general program files.

    In addition, as we discussed on Friday, we are interested in obtaining complete copies of the contracts for Senior Rx and the PEB program. For the PEB program, we do not have the RFP or the proposal for the winning bidder for the 1996 PEB contract (PEBP/Merck-Medco Contract, Effective 01/1996, NV019544 - 019547, RFP mentioned but no number present). With respect to the Senior Rx program, defendants have been provided with the following: RFP #1377 with its corresponding contract (dated 9/14/04), RFP # 1289 with its corresponding contract (effective 4/14/03), and RFP #1173 with its corresponding contract (dated 10/20/00). We do not have the winning bid proposals (which are part of the contracts) for any of the RFPs listed above and request that you provide them. In addition, if there are any other contracts (or amendments thereto) that existed between the Senior Rx program and any provider of health insurance and/or pharmacy services, please produce them along with the corresponding RFP and winning bid proposal.

    In anticipation of Dr. Ebo's deposition, we would like to have complete copies of all contracts between the State and MMCAP. If there is a separate contract between the State and a wholesaler (which is responsible for the physical delivery of the drugs) we would like that as well.

    Finally, your May 17 letter says that Mr. Abba has withheld certain documents from production pursuant to Nev. Rev. Stat. 218.625, and that the Legislative Counsel Bureau would be preparing a privilege log reflecting all documents that have been withheld from production pursuant to section 218.625. We have not yet received such a log and request that the State produce this in advance of Mr. Abba's deposition, as Defendants will need time to review the log and to formulate a course of action regarding potential objections. We also note that pursuant to

Jeniphr A. Breckenridge                    - 4 -                        June 7, 2006

Nev. Rev. Stat. 218.625 individuals at the Legislative Counsel Bureau may disclose and discuss
otherwise confidential information if "the person entrusting the matter to the legislative counsel
bureau" gives consent. Nev. Rev. Stat. 218.625(b). To the extent such confidential information
originated from the Department of Health and Human Services or the PEB program and is
relevant to the claims at issue in this lawsuit, we would request that the State consent to such
disclosure, of course the defendants would be open to treating such information as confidential
pursuant to the protective order. Please advise us as to whether the State is agreeable to this
arrangement.

### *Electronic Discovery*

We have still not received any electronic discovery. We understood that it was going to
be produced on a rolling basis. We again reiterate our commitment to working with you to
address any search terms that are producing a high number of false positives. Given that
discovery is drawing to a close and we do not have these documents, we reserve our rights to
take or retake the depositions of any witness for whom the State later produces documents.

In our May 16 letter, we asked that you explain when the State e-mail system change
occurred and whether that was when Janice Wright's, Chris Thompson's, and Laura Squartsoff's
e-mail accounts were no longer retained. We are still awaiting an answer to this request.

### *Interrogatories*

To date, your letters have not addressed the Interrogatory Response issues identified in
my April 28 letter. We look forward to your response regarding these issues.

Please call me if you have any questions.

Very truly yours,

Christopher Dillon

cc:    L. Timothy Terry
       Defense counsel

10051725_1

Exhibit A:  Questions for Plaintiffs Regarding the Nevada Claims Data

1. Mr. Swenson did not know whether physician-administered drug reimbursements were included in the data provided and did not know how the State would store this information. Please confirm that drugs administered in an office-based setting were not included in the data produced and explain how and where that information would have been stored.

2. Mr. Swenson did not know whether the data contain only Medicaid fee-for-service claims. Please confirm that other types of claims (e.g., Medicaid managed care, SCHIP, Workers' Compensation) are included and how they are identified.

3. Mr. Swenson testified that the field **"IC-DRUG-MAC-EXCL"** identifies State Upper Limit ("SUL")-based reimbursements. In particular, Mr. Swenson testified that this field would contain an "X" if a transaction were priced based on AWP and would be blank if a transaction were based on SUL. *See* Swenson's 1/5/06 Deposition at 75-77.  Please confirm that this testimony accurately reflects the Nevada claims data and that there is no additional field in the claims data to capture the basis of the amount Nevada Medicaid paid.

4. Mr. Swenson was unable to testify regarding whether the data contain specialty pharmacy transactions.  Does it, and if so, is there a field that differentiates them from retail transactions?

5. Please confirm whether mail-order pharmacy transactions are found in the data. If so, is there a field that differentiates them from retail transactions?

6. Please confirm that the data identifying Medicaid's reimbursements ("IC-SAMI-AMT") do not separate dispensing fees and ingredient costs (i.e., "IC-SAMI-AMT" appears inclusive of both).

7. What dispensing fee is used for retail drugs and home infusion drugs throughout the relevant time period?

8. Is there a field that denotes when Medicaid is paying a portion of a claim left over after another payor (e.g., Medicare) has already paid? Is there a field identifying the other payor that paid on the claim?

9. Mr. Swenson testified there is a file containing the prices used by Medicaid to adjudicate claims, although he testified that it is limited to relatively recent price updates.
    a. Is this file available electronically?
    b. What pricing bases does this file contain (e.g., AWP, WAC, FUL, SUL, Baseline Price)?
    c. Does this file contain effective dates for these prices?

10. Mr. Swenson testified that the **IC-VEN-CD** field contains three provider types: 28 (Pharmacy Claims), 33 (Durable Medical Supplies), and 37 (IV Therapy). See Swenson's 1/5/06 Deposition at 7-8. Does the State treat Provider types 33 and 37 as non-Pharmacy? Please specify the types of drug administration included in code 37.

11. According to Mr. Swenson specialty pharmacy transactions (e.g. long term care or nursing facilities) are included in the **IC-RESIDENCE** field. He testified that an "N" indicates a nursing facility; however, he was uncertain of the "O" designation. Swenson's 1/6/05 Deposition at 11. Please explain what the "O" designation indicates?

12. If the **IC-RESIDENCE** field contains an "O" designation and the **IC-DRUG-NURES-FACILITY** field is also populated, is the claim a nursing facility claim or a residence claim?

13. Mr. Swenson testified that physician administered claims may be indicated in field **IC-PROV-NAME.** Is there a way to determine if a claim relates to an outpatient or inpatient pharmacy?

14. What field contains the date the claim was paid? Mr. Swenson testified that the Julian date may be stored in the field **IC-CLAIM-NUMBER-R.** Is **IC-CLAIM-NUMBER-R** the correct field, and, if so, how is the date extracted from this field?

15. What does the field **IC-SER-UNITS** indicate? According to Mr. Swenson, **IC-SER-UNITS** always defaults to 1, meaning one service unit. We have identified instances where the **IC-SER-UNITS** equals 0, what does this mean?

16. Mr. Swenson testified that Medicaid used the **IC-DRUG-BENEFIT CODE** "...to determine whether they're going to pay a drug or not. They would have to tell you the value...when we received a new drug from First Data Bank it would go on our drug file. Medicaid would have to go and assign a drug benefit code." Please explain what the following values mean: blank, 0, 1, 2, 3.

17. Mr. Swenson was unable to clarify the field names that were coded into letters, numbers and symbols. Please provide a complete list of decodes for each field that is coded into letters, numbers and symbols. Also, if the coded values have changed over time, please provide the decodes for the entire relevant time period. Below are examples of some of the coded field names with references to the location of the field in the COBOL file layout ("file layout") that was provided with the data.

   a. **IC-APPROVAL-CD** (p. 3 of file layout, middle)
      i. What data does this field contain?
      ii. The most common value present is "A". What does this letter represent?

   b. **IC-SPEC-HLDG** (p. 3 of file layout, middle)
      i. What data does this field contain?
      ii. The values are "H", "P", and "B". What do these letters represent?

   c. **IC-SPEC-ACCT** (p. 3 of file layout, middle)
      i. What data does this field contain?
      ii. The values are "F", "E", and "I". What do these letters represent?

   d. **IC-AID-1** (p. 1 of file layout, top)
      i. What data does this field contain?

      ii.  The most common values are "9", "1", and "4". What do these numbers represent?

    e.  **IC-AID-2** (p. 1 of file layout, top)

        i.  What data does this field contain?

        ii.  How does this field differ from ic-aid-1?

        iii.  The most common values are "0", "7", "9", and "1". What do these numbers represent?

18. Please provide field descriptions defining each field in the data (i.e., a "data dictionary").

Exhibit B:  Documents Identified in Recent Depositions

Mike Hillerby:

(1) Spreadsheets given to the Governor's Office from evaluators during the RFP process for Medicaid Managed Care and/or PBM contracts, outlining the different bids received.

(2) Documents associated with presentations made to the Governor's Office by HHS as part of the budget approval process, including copies of the budget reports that were given to the legislature, to the extent these related to the acquisition or purchase of drugs, drug pricing, or reimbursement for drugs;

(3) National Association of Chain Drug Stores / Retail Association of Nevada handout (Mr. Hillerby recalled that these organizations may given him a handout when they presented their opposition to the reimbursement change on June 4, 2002);

(4) Advocacy presentations made by different groups on pharmacy issues during the budget process, to the extent these presentations related to the acquisition or purchase or drugs, drug reimbursement, or drug pricing;

(5) Any National Governors' Association white papers or other papers sent by policy groups concerning pharmacy issues, including any agenda set in advance of NGA conferences, to the extent these papers relate the acquisition or purchase or drugs, drug reimbursements, or drug pricing;

(6) Reports from private health care consultants offering services to the Governor's Office, to the extent these reports relate to drug acquisition or purchase, drug reimbursement, or drug pricing;

(7) The following Senior RX materials: "several folders, presentations given to the legislature, budget information, monthly budget updates that we would get from the program, enrollment data, enrollment forms, presentations I made to the legislature, actuarial reports from Milliman and Robertson . . . various kinds of correspondence, information on the formulary" to the extent they related to drug acquisition or purchase, drug reimbursement, or drug pricing.

Donna Lopez:

(1) Minutes of Public Employees' Benefit Program (PEBP) board meetings, including any available video tapes or CDs (kept with Capitol Reporters), to the extent these relate to the acquisition or purchase of drugs, drug reimbursement, or drug pricing;

(2) Advance packets provided to board members before scheduled board meetings, to the extent these relate to the acquisition or purchase of drugs, drug reimbursement, or drug pricing;

(3) Reports generated by Pharmacy Benefit Managers (PBMs) in accordance with the PBM contract;

(4) Presentations made to the PEBP board by finalists in the PBM request for proposal (RFP) processes from 1995, 1998 and 2001;

(5) Reports generated by consultants to PEBP (including but not limited to Aon Consulting or Segal Consulting) during any RFP process involving contracts for pharmacy benefit services;

(6) Lists of evaluators for the last three PEBP RFP sessions involving contracts for pharmacy benefit services;

(7) Other documents from the last three RFP processes for pharmacy benefit services: evaluator score sheets, proposals of the losing bidders, questions posed by bidders with corresponding answers by PEBP, evaluator recommendations to the PEBP board; score sheet used by the PEBP board; correspondence between evaluators and consultant, documents provided to PEBP or to the evaluators from a consultant (i.e., "financial analysis" completed by consultant); correspondence between PEBP staff and vendor during the contract negotiation period for any of the three RFP processes at issue (1995, 1998 and 2001);

(8) Documents or correspondence related to pharmacy issues received by PEBP due to involvement with SALGBA;

(9) Documents showing comparisons of the PEBP program with those of other state and local governmental entities to the extent these documents relate to the acquisition or purchase of drugs, drug reimbursement, or drug pricing;

(10)     Audit reports from the last three or four times the PEBP has been independently audited (Lopez testified that these audit reports are included in a board packet), to the extent these relate to the acquisition or purchase of drugs, drug reimbursement, or drug pricing.

Laurie Olson:

(1) Notes of meetings that she attended regarding implementation of the Medicaid Modernization Act, to the extent that they relate to pharmacy reimbursement;

(2) Documents associated with the RFP process by which Catalyst RX was awarded the Senior RX PBM contract. Ms. Olson testified that these documents would be at Purchasing or in the files at Senior RX;

(3) Reports from Catalyst RX related to the operation of the PBM for Senior RX;

(4) Reports compiled by Senior RX personnel from the Catalyst reports and distributed to other government agencies.

# EXHIBIT 4



Kathleen M. O'Sullivan
PHONE: 206.359.6375
FAX:   206.359.7375
EMAIL: kosullivan@perkinscoie.com

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

March 30, 2006

Jeniphr A.E. Breckenridge
Hagens Berman Sobol Shapiro LLP
Suite 2900
1301 Fifth Avenue
Seattle, WA  98101

BY EMAIL AND ELECTRONIC SERVICE

Re:   **Montana and Nevada AWP Actions**

Dear Jeniphr:

I write as a follow up to Judge Bowler's rulings of yesterday on defendants' second
motion to compel the States of Montana and Nevada.  The Court ordered the States to
produce additional documents and witnesses for deposition and stated explicitly that
the production needed to be "ASAP" given that "time is of the essence" with the
impending May 5 deadline for defendants to file motions for summary judgment and
expert reports.

     1.    Electronic documents and email:  Judge Bowler ordered the States to
produce electronic documents and emails.

     (a) Number of fileholders to search

     The searches for electronic documents and emails should be done for all
Montana and Nevada witnesses whose depositions have been taken or that are
upcoming, including the non-Medicaid state agency officials and legislative
and executive officials that Judge Bowler ordered could go forward.  At the
risk of stating the obvious, email searches should include emails sent by or to
these witnesses (including sent to as a cc or bcc).  To the extent that the
witnesses are former employees, we understand that electronic documents
(e.g., Word documents) authored by former employees are still available on the

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

March 30, 2006
Page 2

H drive in Nevada, and on the G drive in Montana, where the former
employee's files are often located in his or her former supervisor's sub-folder;
emails sent and received by former employees may still be available as well.

(b) Search terms

Defendants have always been willing to consider reasonable limitations on
the search terms used for the States' electronic searches, but the States have
never offered a counter-proposal to the list that defendants proposed in
December 2005 and that were used successfully in the Connecticut AG AWP
case. After the hearing, we conferred with your partner, David Nalven, who
stated that the States would make a counter-proposal for the list of search
terms. Please provide us with such a list by the close of business on Monday,
April 3 and defendants will consider that list promptly.

(c) Cost-shifting

Judge Bowler rejected the States' request that the cost of an electronic
production be shifted to defendants, with one small exception. Judge Bowler
asked if defendants would purchase the software necessary to perform email
searches in a more efficient manner (i.e., permitting multiple search terms to be
searched at once) and defendants agreed. The software that defendants are
likely to purchase is either Mail Archive Pro or X1 Enterprise Client, both of
which have the capability to search attachments to emails. Please let us know
to whom we should send the software.

(d) Back-up tapes

At this point, defendants are not requesting searches of the back-up tapes
that are in place as of late 2005 or early 2006 due to the litigation holds that the
States instituted late last year. Defendants are not waiving their rights to
request this data, but are trying to expedite the electronic searches by having
the States focus their searches on readily accessible electronic media.

2.     Discovery from non-Medicaid agencies: Judge Bowler ordered that
defendants may take three depositions, per state, of representatives of non-
Medicaid state entities that acquired or reimbursed for prescription drugs.
Judge Bowler ordered the States to produce documents from the files of each of
these six witnesses to the extent these documents relate to (a) how these non-

March 30, 2006
Page 3

Medicaid agencies acquired or purchased drugs; (b) how these non-Medicaid agencies reimbursed for drugs; and (c) any communications between the non-Medicaid agency and any Medicaid official regarding drug pricing or reimbursement.  As we discussed with Mr. Nalven yesterday, that search should include files of administrative assistants to these witnesses, general files where the witnesses filed documents, and any archived files of these witnesses.  We will provide you with the agencies from whom we want this discovery by the close of business on Monday, April 3.

3.      Discovery from executive/legislative staffers:  Judge Bowler ordered that defendants may take a total of three depositions of legislative or executive staffers who were involved in communications and/or policy-making regarding drug pricing or reimbursement.  In open court, defendants selected for deposition Michael Hillerby and Steve Abba from Nevada and Steve Snezick from Montana. Judge Bowler also ordered the States to produce the documents from the files of each of these three witnesses to the extent these documents relate to drug pricing, acquisition or reimbursement.  The searches should be conducted pursuant to the same ground rules set forth above as to the non-Medicaid agencies.

4.      Rebate data:  Judge Bowler ordered that the States have a choice:  either (a) produce rebate data relating to the defendants and the subject drugs, or (b) stipulate to the accuracy of defendants' rebate data.  Please inform us by the close of business on Monday April 3 which option each State has selected.

5.      Montana's dispensing fee surveys and other "agreed upon," but outstanding documents:  Judge Bowler denied defendants' motion, without prejudice, as to the categories of documents to which the States had either agreed to produce or had not previously objected to producing.  There are various categories of documents that the States have agreed to produce, but have not done so yet (e.g., documents relating to the reimbursement for physician-administered drugs in Montana, post-2003 Medicaid claims data maintained by First Health and pre-2003 physician-administered drugs data in Nevada).  These documents should have been produced months ago, and defendants expect that they will be produced promptly following this letter.  We are aware of only one category of documents to which the State of Montana raised a belated objection, on the basis of confidentiality, to producing the dispensing fee surveys conducted by Montana Medicaid of Medicaid providers.  I have asked several times for an explanation of what information the State of Montana proposes redacting from these surveys and

March 30, 2006
Page 4

on what basis, given the existence of the Protective Order in this case, but I have not received an answer. If the dispensing fee surveys are not produced in unredacted form by the close of business on Thursday, April 6, defendants will have no choice but to file an expedited motion to compel their production.

6.   <u>Timing of production</u>: Given the May 5 deadline for filing summary judgment motions and expert reports, we ask that all remaining responsive documents be produced by April 14, 2006 on a rolling basis with priority being given to emails and electronic documents related to the upcoming deposition witnesses.

Very truly yours,

Kathleen M. O'Sullivan

cc:   Ali Bovingdon (via email)
      L. Timothy Terry (via email)
      All Counsel of Record (via Electronic Service)

# EXHIBIT 5



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LIGITATION

THIS DOCUMENT RELATES TO
01-CV-12257-PBS AND 01-CV-339

)
)
)
)
)
)
)
)
)
)
)
)

MDL No. 1456
Civil Action No. 01-12257-PBS
Judge Patti B. Saris

## RESPONSE OF SCHERING-PLOUGH CORPORATION AND WARRICK PHARMACEUTICALS CORPORATION TO PLAINTIFFS' OMNIBUS REQUESTS FOR PRODUCTION AND INTERROGATORIES

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, and the Local

Rules of the United States District Court for the District of Massachusetts, Defendants, Schering-

Plough Corporation and Warrick Pharmaceuticals Corporation (collectively "Schering") by their

undersigned counsel, hereby respond to Plaintiffs' Omnibus Requests for Production and

Interrogatories (the "Omnibus Requests"; the "Requests") as follows:

### PRELIMINARY STATEMENT

1.      By responding to the Requests, Schering does not waive or intend to waive:

(a) any objections as to the competency, relevancy, materiality, privilege or admissibility as

evidence, for any purpose, of any documents or information produced in response to the

Requests; (b) the right to object on any ground to the use of the documents or information

produced in response to the Requests at any hearing or trial; (c) the right to object on any ground

at any time to a demand for further responses to the Requests; or (d) the right at any time to

revise, correct, add to, supplement, or clarify any of the responses contained herein.

9425492_3



2.      By responding that it will make documents available for inspection in response to a particular Request, Schering does not assert that it has responsive materials or that such materials exist, only that it will conduct a reasonable search and make available responsive, non-privileged documents.  No objection made herein, or lack thereof, is an admission by Schering as to the existence or non-existence of any documents.

3.      The responses made herein are based on Schering's investigation to date of those sources within its control where it reasonably believes responsive documents or information may exist.  Schering reserves the right to amend or supplement these responses in accordance with the applicable rules and Court orders.

4.      Schering's responses to the Omnibus Requests contain information subject to the stipulated Protective Order in this matter and must be treated accordingly.

## GENERAL OBJECTIONS TO PLAINTIFFS' DEFINITIONS, INSTRUCTIONS, AND "RELEVANT TIME PERIOD"

1.      Schering objects to Plaintiffs' "definitions" and "instructions" and to any other preliminary statements to the extent Plaintiffs intend to expand upon or alter the Federal Rules of Civil Procedure, the Local Rules, or Schering's obligations in responding to these Requests.

2.      Schering objects to the definitions of "Document," "All Documents," "Defendant," "You," "Your," "Communication," "Person," "Identify," and "State the Basis," as set forth in Definition Nos. 2, 11, 14-15, 19, 28, 34, and 38, to Instructions Nos. 1, 3-5, 6, 8-14 and their respective subsections, and to each Request to the extent they seek to impose discovery obligations that are broader than, or inconsistent with, Schering's obligations under the Federal Rules of Civil Procedure, this Court's Local Rules, and the Orders of this Court.

3.      Schering objects to the definition of "MAC" or "Maximum Allowable Cost" as set forth in Definition No. 22 on the ground that the cited regulation, 42 C.F.R. § 442.332, does



not exist. As such, the terms "MAC" and "Maximum Allowable Cost" are vague and ambiguous.

    4.    Schering objects to the definition of "price," as set forth in Definition No. 29 to the extent it characterizes "discounts" and "rebates" as "incentives affecting the cost of the drug." This characterization lacks factual foundation and depends upon a legal conclusion. Use of this argumentative characterization is a device intended by plaintiffs to assume away an evidentiary burden borne exclusively by plaintiffs; namely, whether "discounts" or "rebates" are in fact "incentives." Schering further objects to the phrase "other incentives affecting the cost of the drug" as vague and ambiguous.

    5.    Schering objects to the definitions of "ASP," "EAC," "Government payor," "Independent Practice Organization," "Provider," "Publisher," "Private Payor," "Participant," "Beneficiary," and "Third Party Administrator," as set forth in Definition Nos. 6, 16, 18, 21, 26, 30, 31, 32, and 35 because they are vague and ambiguous.

    6.    Schering objects to the use of the acronym "AWPID" in Definition No. 8, which is defined in the Amended Master Consolidated Class Action Complaint ("AMCC") as "AWP Inflated Drugs" and, therefore, lacks factual foundation and depends upon a legal conclusion. *See* AMCC ¶ 11. Use of this argumentative term is a device intended by plaintiffs to assume away an evidentiary burden borne exclusively by plaintiffs; specifically, the question of whether any AWP for any drug at issue in this case has, in fact, been "inflated."

    7.    Schering objects to the definition of "Government Investigation" as set forth in Definition No. 17 on the ground it is vague and ambiguous as to its reference to investigations by the "Department of Health and Home Services" and "Office of the United States Inspector General" because no such governmental departments exist. Notwithstanding these objections,

-3-



for purposes of these Requests, Schering defines "government investigation" as including only those areas of inquiry by the Commerce, Energy and/or Ways and Means Committees of the United States House of Representatives, or subcommittees thereof, the United States Department of Justice, the United States General Accounting Office, the Federal Trade Commission, and the United States Department of Health and Human Services relating to Schering's and Warrick's drugs listed in Appendix B to the AMCC (the "Subject Drugs") and use of AWP in Medicare reimbursement.

8.      Schering objects to these Requests to the extent that they call for documents concerning non-prescription drugs on the ground that such documents are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

9.      Schering objects to these Requests to the extent they seek information regarding drugs that are not listed in the AMCC on the ground that such documents are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

10.     Schering objects to Instruction No. 2 and to each Request to the extent it calls for documents generated or assembled either prior to January 1, 1997, or after September 6, 2002, on the ground that such documents are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

11.     Schering objects to Instruction No. 6 and to each Request to the extent it demands that, when redacting a document for privilege, Schering must stamp the word "redacted" on each page of the document. Schering will identify redacted portions of documents in a privilege log.

-4-



12.     Schering objects to Instruction No. 8 and to each Request to the extent that it requires production of original documents.

13.     Schering objects to Instruction No. 9 and to each Request to the extent it demands that all documents be produced in the original file folders, envelopes, or other containers in which the documents are kept by Schering. Schering will use reasonable efforts to make available copies of all labels or other identifying marks on such original file folders, envelopes or other containers.

14.     Schering objects to Instruction No. 12 and to each Request to the extent that it demands that electronic materials be produced in specified formats. Schering will make available for inspection documents sufficient to explain and render usable any electronic documents and data, including the record layout of electronic data made available and the operation of software utilized to maintain the electronic data.

15.     Schering objects to Instruction No. 14 and to each Request to the extent it demands that Schering produce documents that "explain" responsive documents on the ground that such demand is vague and ambiguous, calls for a subjective determination and, therefore, is unduly burdensome.

16.     Schering objects to each Request that uses the terms "spread" and "spreads" because these terms are vague and ambiguous. Use of the terms is also argumentative and without factual foundation.

17.     Schering objects to the Requests to the extent that they ask Schering to produce 82 separate categories of documents concerning all dosages and package sizes of 28 Subject Drugs. These extraordinarily broad Requests are contrary to the Federal Rules of Civil Procedure that prohibit irrelevant, cumulative, duplicative, and vexatious discovery. Moreover,

-5-



Plaintiffs served their Requests six days after the entry of CMO 10, which requires Schering to produce responsive and relevant documents within 60 days. The breadth and scope of these Requests (many of which seek information and material that is not relevant to the issues in this litigation and which will not help to resolve the issues), viewed in light of the 60-day deadline, are oppressive, unduly burdensome, unnecessarily costly, and without a proportionate and corresponding benefit as required by Fed. R. Civ. P. 26(b)(2).

18.     Schering objects to the extent the Requests are directed to Schering and any of its "officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates" on the ground that such an expansive search is unduly burdensome. Schering will conduct a search for all responsive paper documents from home office employees in positions with decision-making responsibility relating to the sales, marketing, and pricing of the Subject Drugs, as well as related supporting employees and positions, that are most likely to have materials relevant to this case. Schering also will conduct a search for all responsive paper documents in the possession of a reasonable number of representatives in the field for Schering's and Warrick's Class A Subject Drugs that were actively marketed during the relevant time period (the "Class A Subject Drugs"). Because of the additional burden of collection, review, and production of electronic documents, Schering will conduct a search of all responsive electronic documents solely from home office employees in positions with decision-making responsibility relating to the sales, marketing, and pricing of the Subject Drugs that are most likely to have materials relevant to this case.

19.     Schering objects to each Request to the extent that it seeks information not contained in documents that currently exist at Schering and requires Schering to create, compile, or develop new documents.

-6-



20.     Schering objects to each Request to the extent that it calls for the production of documents or information not relevant to the issues in this action or is not reasonably calculated to lead to the discovery of admissible evidence, and will not make available for inspection such documents or information.

21.     Schering objects to each Request to the extent that it seeks information protected by the attorney-client privilege, work-product doctrine, common-interest doctrine, joint-defense privilege, accountant-client privilege, or any other applicable privileges or protections.

22.     Schering objects to each Request to the extent that it may be construed as calling for the production of confidential information relating to a patient.  Schering will not make available for inspection any such material to the extent it is under any obligation to maintain the patient information in confidence.  Schering will not disclose such material unless the patient grants permission to do so.

23.     Schering objects to each Request to the extent that it seeks disclosure of information that is a matter of public record, is equally available to the Plaintiffs, or is already in the possession of the Plaintiffs.

24.     Schering objects to the Requests as unduly burdensome to the extent that they require re-review of documents previously reviewed on the basis of the Plaintiffs' Request for Production of Documents and Interrogatories, served on December 3, 2003 (the "First Requests"), and of Plaintiffs' Second Request for Production of Documents, served on January 21, 2004 (the "Second Requests").  District of Massachusetts Local Rule 26.1(c) expressly limits each party to two "separate sets of requests for production."  To the extent that the Omnibus Requests seek discovery on the matters covered by the First Requests and Second Requests, they violate Local Rule 26.1.  Schering will make available for inspection documents concerning the



Subject Drugs that were collected from the business unit responsible for Intron A and Temodar, the only drugs subject to the First Requests and the Second Requests, consistent with Schering's Responses to the First Requests and Second Requests.

25.     Schering objects to the Omnibus Requests to the extent that they are ambiguous as to whether the First Requests and Second Requests remain applicable to non-drug-specific documents that have not yet been produced in this litigation. Schering objects to each Request as unduly burdensome to the extent that it is duplicative of requests for non-drug-specific documents contained in the First Requests and Second Requests. Notwithstanding these objections, Schering will treat the Omnibus Requests for non-drug-specific documents as the operative document requests for such documents in this litigation. To the extent not otherwise listed below, Schering hereby incorporates by reference all general and specific objections previously served by Schering in response to all First Requests and Second Requests that the Omnibus Requests duplicate in whole or in part.

26.     Schering objects to the defined "relevant time period" and to each Request to the extent it calls for documents generated or assembled either prior to January 1, 1997 or after September 6, 2002 on the ground that such documents are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

27.     Schering objects to any implications and to any explicit or implicit characterization of the facts, events, circumstances, or issues in these Requests. Any response by Schering is not intended to indicate that Schering agrees with any such implications or characterizations, or that such implications or characterizations are relevant to this litigation.

-8-



28.     Schering expressly incorporates these General Objections into each specific

response to the Requests set forth below as if set forth in full therein. The response to a Request

shall not operate as a waiver of any applicable specific or general objection to a Request.

## RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

Request No. 1.     All documents sufficient to identify your policy or practice of
document retention, destruction disposal or preservation during the relevant time period.

Response to Request No. 1:

Subject to the General Objections set forth above, Schering will make available for

inspection non-privileged documents responsive to Request No. 1, if any such documents exist.

Request No. 2.     All current and historical organizational charts for all of your sales,
marketing and pricing departments or divisions.

Response to Request No. 2:

Subject to the General Objections set forth above, Schering will make available for

inspection non-privileged documents responsive to Request No. 2, if any such documents exist.

Request No. 3.     Any and all company, organizational and policy information in its
entirety, including but not limited to corporate policy and procedure manuals, and policy
memoranda.

Response to Request No. 3:

In addition to the General Objections set forth above, Schering objects to Request No. 3

on the ground that it is overbroad and that responding to the Request as stated would be unduly

burdensome. Schering further objects to Request No. 3 on the ground that it calls for documents

that are not relevant and unlikely to lead to the discovery of admissible evidence. Subject to

these objections, Schering will make available for inspection non-privileged documents

responsive to Request No. 3 relating to the sales, marketing, and pricing of the Subject Drugs, if

any such documents exist.

Request No. 4.     Documents sufficient to identify your electronic mail, document
management and other automated information systems.

Response to Request No. 4:

Subject to the General Objections set forth above, Schering will make available for

inspection non-privileged documents responsive to Request No. 4, if any such documents exist.



Request No. 5.    Documents sufficient to identify your electronic mail retention policies.

Response to Request No. 5:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 5, if any such documents exist.

Request No. 6.    Documents evidencing steps were taken by you (if any) from January 1, 2001 to the present to insure that discoverable information with respect to average wholesale price litigation is not destroyed or otherwise made unavailable.

Response to Request No. 6:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 6, if any such documents exist.

Request No. 7.    Documents sufficient to identify your policies and procedures concerning the back-up of data for your financial and your marketing, sales and promotion divisions, including but not limited to, the frequency of back-ups, all software and hardware used to perform backups, and all media onto which data is backed-up.

Response to Request No. 7:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 7, if any such documents exist.

Request No. 8.    All documents received from or provided to any trade association (such as the Pharmaceutical Research and Manufacturers of America), and any of its organizational subcommittees, including meeting agendas and minutes, concerning (i) Medicare reimbursement for drugs and/or the use of AWP in the reimbursement process; (ii) publications identified in Health Care Financing Administration Program Memorandum AB-99-63, including the Red Book, Blue Book, and Medispan ("pharmaceutical industry publications"); or (iii) a Government Investigation or inquiry as to the use of AWP in the reimbursement process.

Response to Request No. 8:

In addition to the General Objections set forth above, Schering objects to Request No. 8 on the grounds that it is overbroad and seeks production of documents not likely to lead to the discovery of admissible evidence. Specifically, Schering objects to the request to the extent it calls for documents relating to Medicaid reimbursement. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 8 concerning the Subject Drugs, if any such documents exist.



Request No. 9.    All documents produced by you, whether voluntarily or involuntary, in any governmental investigation or inquiry concerning the use of AWP.

Response to Request No. 9:

In addition to the General Objections set forth above, Schering objects to Request No. 9 on the grounds that it is overbroad and seeks the production of documents not likely to lead to the discovery of admissible evidence. Specifically, Schering objects to the request to the extent it calls for documents relating to Medicaid reimbursement. Subject to these objections, Schering will make available for inspection all documents it produced in any governmental investigation or inquiry related to the use of AWP in Medicare reimbursement for the Subject Drugs, if any such documents exist.

Request No. 10.    All documents relating to any legal proceeding (by country, court, caption, case number, etc.), including but not limited to court hearings, legislative hearings, mediations or arbitrations, in which you were a party or witness, regarding any allegations relating to AWPs.

Response to Request No. 10:

In addition to the General Objections set forth above, Schering objects to Request No. 10 on the ground that it is overly broad and that responding to Request No. 10 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 10 to the extent it calls for "all documents" relating to certain proceedings. Schering also objects to Request No. 10 to the extent it seeks materials that are subject to protective orders entered in other jurisdictions. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 10 concerning the Subject Drugs, if any such documents exist.

Request No. 11.    All affidavits, declarations, depositions, or other written statements, including drafts, provided by you regarding any allegations relating to the use of AWP.

Response to Request No. 11:

In addition to the General Objections set forth above, Schering objects to Request No. 11 on the ground that it is overly broad and that responding to Request No. 11 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 11 to the extent it calls for all "written statements" on the subject. Schering also objects to Request No. 11 to the extent it seeks materials protected by the attorney-client privilege or the work product doctrine. Schering further objects to Request No. 11 to the extent it seeks documents that are subject to protective

-11-



orders entered in other jurisdictions. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 11 concerning the Subject Drugs, if any such documents exist.

Request No. 12. All documents created by or received from CMS, the United States Department of Health and Human Services, the Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal institution, agency, department, or office concerning prices for prescription drugs.

Response to Request No. 12:

In addition to the General Objections set forth above, Schering objects to Request No. 12 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 12 to the extent it calls for "all documents created by or received from" the listed governmental entities that "concern[] prices for prescription drugs." Schering further objects to Request No. 12 on the ground that it calls for documents that are irrelevant and unlikely to lead to the discovery of admissible evidence. Specifically, Schering objects to the request to the extent it calls for documents relating to Medicaid reimbursement. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 12, if any such documents exist.

Request No. 13. All documents provided to CMS, the United States Department of Health and Human Services, and Department of Health and Human Services Office of the Inspector General, the General Accounting Office, Congress, or any other federal institution, agency, department, or office concerning the price of any AWPID.

Response to Request No. 13:

In addition to the General Objections set forth above, Schering objects to Request No. 13 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 13 to the extent it calls for "all documents provided to" the listed governmental entities that "concern[] the price of any AWPID." Schering further objects to Request No. 13 on the ground that it calls for documents that are irrelevant and unlikely to lead to the discovery of admissible evidence. Specifically, Schering objects to the request to the extent it calls for documents relating to Medicaid reimbursement. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 13 concerning the Subject Drugs, if any such documents exist.

-12-



Request No. 14.   All documents concerning any definition or meaning of AWP, including documents discussing how you or others define AWP.

Response to Request No. 14:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 14, if any such documents exist.

Request No. 15.   All documents discussing how the AWP has been or is currently determined for any AWPID.

Response to Request No. 15:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 15 for the Subject Drugs, if any such documents exist.

Request No. 16.   As to each of your AWPIDs, all documents concerning any actual, proposed, or prospective AWP announcements, changes or price lists, including the methodology and procedures used by you in considering whether to increase or decrease the AWP of each AWPID.

Response to Request No. 16:

In addition to the General Objections set forth above, Schering objects to Request No. 16 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 16 to the extent it seeks "all documents concerning" "proposed or prospective" information.  Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 16 for the Subject Drugs, if any such documents exist.

Request No. 17.   As to each of your AWPIDs, all documents concerning any actual, proposed or prospective price announcement, price change or price list, including the methodology and procedures used by you in considering whether to increase or decrease the price for each AWPID.

Response to Request No. 17:

In addition to the General Objections set forth above, Schering objects to Request No. 17 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 17 to the extent it seeks "all documents concerning" "proposed or prospective" information.  Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 17 for the Subject Drugs, if any such documents exist.

-13-



Request No. 18.    As to Class A drugs only, all sales-level detailing reports where AWPs, reimbursement based on AWPs, or the prices for AWPIDs was discussed. (Class A Drugs)

Response to Request No. 18:

In addition to the General Objections set forth above, Schering objects to Request No. 18 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 18 to the extent that it seeks all sales-level detailing reports. Schering further objects to Request No. 18 on the ground that the phrase "sales-level detailing reports" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged call notes collected from the top 25 sales representatives for the Class A Subject Drugs from January 1, 1997 to September 6, 2002.

Request No. 19.    As to Class A drugs only, all sales-level detailing reports where price, discounts, rebates, price concessions, forgiveness of debt, free samples, educational grants or other remuneration were discussed with a purchaser or potential purchaser of any of your AWPIDs.

Response to Request No. 19:

In addition to the General Objections set forth above, Schering objects to Request No. 19 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 19 to the extent that it seeks all sales-level detailing reports. Schering further objects to Request No. 19 on the ground that the phrase "sales-level detailing reports" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged call notes collected from the top 25 sales representatives for the Class A Subject Drugs from January 1, 1997 to September 6, 2002.

Request No. 20.    All documents, including organizational charts, that describe or list the individuals responsible for determining the price for each AWPID.

Response to Request No. 20:

In addition to the General Objections set forth above, Schering objects to Request No. 20 on the grounds that it unduly burdensome and duplicative of Request No. 2. Schering further objects to Request No. 20 to the extent it seeks "all documents . . . that describe or list" certain individuals. Subject to these objections, Schering will make available for inspection non-privileged documents sufficient to identify individuals responsible for determining the price for the Subject Drugs.

-14-



Request No. 21.   All documents, including organizational charts, that describe or list the individuals responsible for determining the price for each AWPID.

Response to Request No. 21:

In addition to the General Objections set forth above, Schering objects to Request No. 21 on the grounds that it is unduly burdensome and identical to Request No. 20. Schering hereby incorporates by reference all objections to Request No. 20. Subject to these objections, Schering will make available for inspection non-privileged documents sufficient to identify individuals responsible for determining the price for the Subject Drugs.

Request No. 22.   For each of your AWPIDs, all documents concerning the "product market," as defined in the 1992 Department of Justice and Federal Trade Commission Horizontal Merger Guidelines, in which each AWPID competes including, but not limited to, all documents that: (a) discuss, address, concern, regard, or reflect products that have a significant cross-elasticity of demand, or that are reasonably substitutable for, interchangeable with, or close therapeutic equivalents and/or (b) discuss, address, concern, regard, or reflect whether, and to what extent, the marketing, pricing, and/or sale of a drug other than your AWPID has caused, or could or might cause, physicians, consumers, and other individuals or entities to terminate or reduce their purchase or use of your AWPID.

Response to Request No. 22:

In addition to the General Objections set forth above, Schering objects to Request No. 22 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Schering further objects on the ground that the terms "cross-elasticity of demand," "substitutable," "interchangeable," and "close therapeutic equivalents" are vague and ambiguous. Schering also objects to this Request to the extent that it assumes Schering did or would employ the term "product market" as defined in this Request or requires Schering to conduct an analysis using this term that does not already exist. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 22 for the Subject Drugs, if any such documents exist.

Request No. 23.   For each of your AWPIDs, all documents concerning the "geographic market" or markets in which the AWPID competes including, but not limited to, all documents that (a) discuss, concern, regard, or reflect the geographic area within which the AWPID is marketed, and (b) discuss, concern, regard or reflect the area within which you and your competitors view themselves as competing with respect to the AWPID.

Response to Request No. 23:

In addition to the General Objections set forth above, Schering objects to Request No. 23 on the grounds that it is overly broad, that responding to the Request as stated would be unduly



burdensome, and that it calls for production of documents not reasonably calculated to lead to the discovery of admissible evidence. Schering further objects to Request No. 23 on the ground that the terms "geographic market," "geographic area," and "competitors," and the phrase "area within which you and your competitors view themselves as competing," as vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents concerning the marketing of the Subject Drugs that are responsive to Request No. 23, if any such documents exist.

Request No. 24.    For each of your AWPIDs, all documents concerning your strategic and marketing plans including, but not limited to all pricing, reimbursement, brand switching, and consumer segmentation studies and/or surveys.

Response to Request No. 24:

In addition to the General Objections set forth above, Schering objects to Request No. 24 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 24 to the extent it calls for "all documents concerning . . . strategic and marketing plans." Schering further objects to Request No. 24 on the ground that the terms "brand switching" and "consumer segmentation studies and/or surveys" as vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 24 for the Subject Drugs, if any such documents exist.

-16-



Request No. 25.   For each of your AWPIDs, all documents (in digital, computerized form where available) that identify each customer who purchased the AWPID. For each of these purchasers, all documents that reflect:

(a)   Each sale or other transaction involving the AWPID including the date thereof;

(b)   The number or units of the AWPID sold by dosage strength and package size for each sale or other transaction;

(c)   The invoice amount in dollars for each sale or other transaction concerning the AWPID;

(d)   Discounts, rebates, chargebacks, and other price adjustments relating to each sale, transaction, or set of transactions involving or relating to the AWPID;

(e)   The net amount in dollars for each sale or transaction concerning the AWPID;

(f)   Any other price or unit adjustments - whether monthly, quarterly or on any other basis - involving or relating to sales or transaction involving the AWPID;

(g)   The full name and address of each entity purchasing the AWPID (and, in addition, the full name and address of the parent company where the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse).

Response to Request No. 25:

In addition to the General Objections set forth above, Schering objects to Request No. 25 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects on the ground that the Request seeks documents relating to all pricing and sale conditions that fall within seven categories for each of the Subject Drugs, and producing the requested data will be unnecessarily costly. Schering further objects to Request No. 25 on the ground that the terms "invoice amount," "discount, "net amount in dollars" and "price or unit adjustment" are vague and ambiguous. Schering objects to Request No. 25 to the extent it calls for individualized data with respect to every purchase and sale of a drug. Subject to these objections, Schering will make available for inspection non-privileged electronic data containing the information called for in Request No. 25 for the Subject Drugs, to the extent that such data exist.

-17-



Request No. 26.   For each of your AWPIDs, all documents that reflect the prices charged to, or terms of conditions of sale for, purchasers of the AWPID including, but not limited, to:

(a)   The wholesale acquisition price or other published price of the AWPID or any generic equivalent;

(b)   Payment terms;

(c)   discounts, rebates, chargebacks or other adjustments offered to any class of purchaser;

(d)   Prices and terms of sales for wholesale purchasers;

(e)   Prices and/or discounts and/or rebates or other adjustments for chain pharmacy purchasers;

(f)   Prices and/or discounts and/or rebates or other adjustments for hospital purchasers;

(g)   Prices and/or discounts and/or rebates or other adjustments for managed care purchasers;

(h)   Prices and/or discounts and/or rebates or other adjustments for pharmacy benefit managers;

(i)   Prices and/or discounts and/or rebates or other adjustments for internet pharmacies;

(j)   Prices and/or discounts and/or rebates or other adjustments for mail order purchasers; and

(k)   Prices and/or discounts and/or rebates or other adjustments for any other purchaser class or subgroup.

Response to Request No. 26:

In addition to the General Objections set forth above, Schering objects to Request No. 26 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome.  Specifically, Schering objects on the ground that the Request seeks documents relating to all pricing and sale conditions that fall within eleven categories for each of the Subject Drugs, and producing the requested data will be unnecessarily costly.  Schering further objects to Request No. 26 on the ground that the terms "adjustment" and "discount" are vague and ambiguous.  Schering objects to Request No. 26 to the extent it calls for individualized data with respect to every purchase and sale of a drug.  Subject to these



objections, Schering will make available for inspection non-privileged electronic data containing the information called for in Request No. 26 for the Subject Drugs, to the extent that such data exist.

Request No. 27.   For each of your AWPIDs, documents sufficient to show, in digital or computerized form, in chronological order:

(a)   The date of each sales transaction;

(b)   Every discount, rebate, and/or any other adjustment that any customer of D has received;

(c)   The date each discount, rebate, and/or any other adjustment was given;

(d)   The time period covered by each discount, rebate, and/or any other adjustment;

(e)   Sales in units by National Drug Code sold, shipped, and/or returned by dosage form, strength, and package size;

(f)   Sales in dollars by National Drug Code sold, shipped, and/or returned by dosage form, strength, and package size;

(g)   Net sales in dollars for each sale;

(h)   The name, address, account number, and all other identifying numbers or codes for the person or entity billed, invoices, and/or credited for the transaction; and

(i)   The name, address, account number, and all other identifying numbers or codes for the person or entity to whom the product was shipped or from whom product returns were received.

Response to Request No. 27:

In addition to the General Objections set forth above, Schering objects to Request No. 27 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects on the ground that the Request seeks documents relating to all pricing and sale conditions that fall within nine categories for each of the Subject Drugs, and producing the requested data will be unnecessarily costly. Schering further objects to Request No. 27 on the ground that the terms "customer of D," "adjustment," and "discount" are vague and ambiguous. Schering objects to Request No. 27 to the extent it calls for individualized data with respect to every purchase and sale of a drug. Subject to these objections, Schering will make available for inspection non-privileged electronic data containing

-19-



the information called for in Request No. 27 for the Subject Drugs, to the extent that such data exist.

Request No. 28. For each of your AWPIDs, documents sufficient to identify:

(a)     The published AWP;

(b)     AMP;

(c)     ASP;

(d)     EAC;

(e)     WAC;

(f)     MAC;

(g)     Earned margin (difference between AWP and actual product cost);

(h)     Documents that indicate whether the AWP, ASP, AMP and Earned Margin include all rebates, chargebacks, discounts, allowances, credits, administrative fees, price/volume discounts and any other incentives provided to third parties.

(i)     Documents summarizing all rebates, chargebacks, discounts, allowances, credits, administrative fees, price volume discounts or other incentives.

Response to Request No. 28:

In addition to the General Objections set forth above, Schering objects to Request No. 28 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Schering further objects to Request No. 28 on the ground that documents concerning AMP are irrelevant and unlikely to lead to the discovery of admissible evidence. Schering further objects to Request No. 28 on the ground that the terms "ASP," "EAC," "MAC," "earned margin," "discount," "incentives," and "allowances" are vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged electronic data containing the information called for in Request No. 28 for the Subject Drugs, to the extent that such data exist.

Request No. 29. For each of your AWPIDs, all agreements for sale of the AWPID, whether or not those contracts are with customers who purchased the AWPID directly, including drafts, correspondence, and supporting detail and data (in computerized form where available).



Response to Request No. 29:

In addition to the General Objections set forth above, Schering objects to Request No. 29 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Schering further objects on the ground that the term "supporting detail and data" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents, other than documents from its Managed Care division, responsive to Request No. 29 for the Subject Drugs, if any such documents exist. Schering will also make available for inspection documents related to Managed Care contracts with the top three PBMs, HMOs, staff-model HMOs, and GPOs for the Subject Drugs.

Request No. 30.   All documents concerning communications between you and IMS Health (or any similar entity providing pharmaceutical database information) concerning or relating to any of your AWPIDs.

Response to Request No. 30:

In addition to the General Objections set forth above, Schering objects to Request No. 30 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 30 to the extent it calls for "all documents concerning communications between you and IMS Health . . . ." Schering further objects to Request No. 30 on the grounds that it calls for the production of documents that are irrelevant and unlikely to lead to the discovery of admissible evidence and to the extent it calls for information that Schering is prohibited by contract from disclosing.

Request No. 31.   For each of your AWPIDs, documents sufficient to estimate the number of patients taking the AWPID over each one year period.

Response to Request No. 31:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 31 for the Subject Drugs, if any such documents exist.

Request No. 32.   For each of your AWPIDs, all documents concerning your actual, potential, or expected revenues and/or profits from the sale of that AWPID.

Response to Request No. 32:

In addition to the General Objections set forth above, Schering objects to Request No. 32 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 32 to the extent it seeks "all



documents concerning" various documents. Schering also objects to Request No. 32 to the extent it calls for documents concerning Schering's revenues and profits on the ground that those documents are not relevant and are not likely to lead to the discovery of admissible evidence.

Request No. 33.   All documents concerning or relating to the actual or potential impact of the pricing or reimbursement of any drug on the quantity of any of your AWPIDs that have been or might be sold.

Response to Request No. 33:

In addition to the General Objections set forth above, Schering objects to Request No. 33 on the ground that it is vague and ambiguous. Specifically, Schering objects to Request No. 33 on the ground that the term "actual or potential impact" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 33 for the Subject Drugs, if any such documents exist.

Request No. 34.   Documents sufficient to show your per-unit average total cost for each of your AWPIDs, and the components that make up that figure, including but not limited to raw materials, manufacturing, marketing, sales and packaging costs.

Response to Request No. 34:

In addition to the General Objections set forth above, Schering objects to Request No. 34 to the extent it calls for documents concerning Schering's per-unit average total cost and the components that make up that figure on the ground that those documents are not relevant and are not likely to lead to the discovery of admissible evidence.

Request No. 35.   All documents concerning or relating to the difference between an AWP and any other price for any AWPID.

Response to Request No. 35:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 35 for the Subject Drugs, if any such documents exist.

Request No. 36.   All documents describing any discount programs (including but not limited to volume discounts), rebates, incentives, or penalties for each AWPID.

Response to Request No. 36:

In addition to the General Objections set forth above, Schering objects to Request No. 36 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 36 to the extent it seeks "all

-22-



documents describing" various practices. Schering also objects to Request No. 36 on the ground that the terms "discount programs," "incentives" and "penalties" are vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents sufficient to identify all volume discounts and rebates for the Subject Drugs.

Request No. 37.    All documents relating to the use or provision of free samples, educational grants, marketing grants, and payments for specific data gathering or other incentives relating to any AWPID.

Response to Request No. 37:

In addition to the General Objections set forth above, Schering objects to Request No. 37 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 37 to the extent it seeks "all documents relating to" various practices. Schering also objects to Request No. 37 to the extent it calls for all documents relating to "free samples," "educational grants," "marketing grants," and "payments for specific data gathering" on the grounds that it would be unduly burdensome to collect those documents and those documents are not relevant and are not likely to lead to the discovery of admissible evidence. Schering further objects to the term "incentives" on the ground that it is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents sufficient to identify all educational grants, marketing grants, and payments for data gathering for the Subject Drugs.

Request No. 38.    All documents evidencing any "credit memos" or credit extended to hospitals, GPOs or other purchasers of AWPIDs, including but not limited to credit memos or credit issued via a wholesaler to a purchaser, and/or credit for the purpose of "returned goods."

Response to Request No. 38:

In addition to the General Objections set forth above, Schering objects to Request No. 38 on the ground that it calls for the production of documents that are irrelevant and unlikely to lead to the discovery of admissible evidence. Schering further objects to Request No. 38 on the grounds that responding to Request No. 38 as stated would be unduly burdensome.

Request No. 39.    All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or could be given to any hospital, GPO, HMO, physician, wholesaler or other purchaser of AWPIDs.

-23-



Response to Request No. 39:

In addition to the General Objections set forth above, Schering objects to Request No. 39 on the ground that it calls for the production of documents that are irrelevant and unlikely to lead to the discovery of admissible evidence. Schering further objects to Request No. 39 on the grounds that responding to Request No. 39 as stated would be unduly burdensome.

Request No. 40.    All documents setting forth the circumstances in which credit against the purchase of AWPIDs was or could be given to any hospital, GPO, HMO, physician, wholesaler or other purchaser of AWPIDs.

Response to Request No. 40:

In addition to the General Objections set forth above, Schering objects to Request No. 40 on the ground that it calls for the production of documents that are irrelevant and unlikely to lead to the discovery of admissible evidence. Schering further objects to Request No. 40 on the grounds that responding to Request No. 40 would be unduly burdensome.

Request No. 41.    All documents relating to or reflecting any payments you gave to providers relating to any AWPID. (Class A Only)

Response to Request No. 41:

In addition to the General Objections set forth above, Schering objects to Request No. 41 on the grounds that it is overly broad and that responding to Request No. 41 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 41 to the extent it seeks "all documents relating to or reflecting any payments [made] to providers . . . ." Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 41 for the Class A Subject Drugs, if any such documents exist.

Request No. 42.    All documents evidencing any chargebacks with respect to the sale of an AWPID.

Response to Request No. 42:

Subject to these objections, Schering will make available for inspection non-privileged electronic data containing the information called for in Request No. 42 for the Subject Drugs, to the extent that such data exist.

-24-



Request No. 43.   Documents sufficient to determine complete contact information for all personnel with responsibility for marketing and promotional activity for AWPIDs. Include Marketing Department Product or Brand Managers, and members of Marketing Advisory Boards, and include home address and telephone number. (Class A Drugs)

Response to Request No. 43:

In addition to the General Objections set forth above, Schering objects to Request No. 43 to the extent that it seeks "complete contact information" and the addresses and telephone numbers of its employees. Subject to these objections, Schering will make available for inspection non-privileged documents sufficient to identify home office employees in positions with decision-making responsibility, as well as related supporting employees and positions, related to the practices described in Request No. 43 for the Class A Subject Drugs.

Request No. 44.   A list of all national level sales awards available for each AWPID. (Class A Drugs)

Response to Request No. 44:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 44 for the Class A Subject Drugs, if any such documents exist.

Request No. 45.   Quarterly, semi-annual and annual business plans for each winner of the top national sales award winners and direct supervisors. (Class A Drugs)

Response to Request No. 45:

In addition to the General Objections set forth above, Schering objects to Request No. 45 on the ground that it is vague and ambiguous. Specifically, Schering objects that the phrase "each winner" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged business plans for the winner of each award referenced in Request No. 45, as well as the business plans of their respective district managers, for the Class A Subject Drugs.

Request No. 46.   Any summaries or reports made by a sales representative that evidence a discussion between that sales representative and a provider regarding AWPs for AWPIDs, reimbursements based on AWPs for AWPIDs, and any difference between what the provider is reimbursed for AWPIDs and what the provider pays for the AWPID. (Class A Drugs)

Response to Request No. 46:

In addition to the General Objections set forth above, Schering objects to Request No. 46 on the grounds that it is overly broad and that responding to Request No. 46 as stated would be



unduly burdensome. Subject to these objections, Schering will make available for inspection non-privileged documents collected from the top 25 sales representatives for the Class A Subject Drugs from January 1, 1997 to September 6, 2002.

Request No. 47.    For each AWPID, sales representatives' field notes for the top 50 sales representatives for each year. (Class A Drugs)

Response to Request No. 47:

In addition to the General Objections set forth above, Schering objects to Request No. 47 on grounds that it is overly broad and that responding to Request No. 47 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 47 to the extent it seeks collection of documents from the "top 50 sales representatives for each year." Schering further objects on the ground that the term "field notes" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged call notes collected from the top 25 sales representatives for the Class A Subject Drugs for the time period from January 1, 1997 to September 6, 2002.

Request No. 48.    Documents sufficient to describe any computer programs that you employ or have employed to manage your sales force, including but not limited to programs that collect data on the number of provider contacts and summarize the nature of the discussions between your sales representatives and providers. Examples of such programs include programs marketed by Siebel Systems and ImpactRx, as well as any programs developed by you. (Class A Drugs)

Response to Request No. 48:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 48 for the Class A Subject Drugs, if any such documents exist.

Request No. 49.    All documents relating to discussions between sales managers and sales representatives after field visits where AWPs, reimbursements rates, or the spread was discussed. (Class A Drugs)

Response to Request No. 49:

In addition to the General Objections set forth above, Schering objects to Request No. 49 on the grounds that it is overly broad and that responding to Request No. 49 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 49 to the extent it seeks "all documents relating to discussions between sales managers and sales representatives." Schering further objects to the term "field visits" as vague and ambiguous. Subject to these objections,



Schering will make available for inspection non-privileged documents collected from the top 25 sales representatives and their respective district managers for the Class A Subject Drugs from January 1, 1997 to September 6, 2002.

Request No. 50.   All documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool, on any AWPID was discussed. (Class A Drugs).

Response to Request No. 50:

In addition to the General Objections set forth above, Schering objects to Request No. 50 on the grounds that it is overly broad and that responding to Request No. 50 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 50 to the extent it seeks "all documents evidencing any meetings where raising the AWP, or use of AWP as a marketing tool."  Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 50 for the Class A Subject Drugs, if any such documents exist.

Request No. 51.   All communications between you and any party in the reimbursement cycle or pharmacies relating to reimbursement and AWP. (Class A Drugs)

Response to Request No. 51:

In addition to the General Objections set forth above, Schering objects to Request No. 51 on the grounds that it is overly broad and that responding to Request No. 51 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 51 to the extent it seeks "all communications . . . relating to reimbursement and AWP."  Schering further objects on the ground that the phrase "any party in the reimbursement cycle" is vague and ambiguous.  Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 51 for the Class A Subject Drugs, if any such documents exist.

Request No. 52.   All documents relating to any requests by you for any information concerning the reimbursement, pricing or payment for any subject drug. (Class A Drugs)

Response to Request No. 52:

In addition to the General Objections set forth above, Schering objects to Request No. 52 on the grounds that it is overly broad and that responding to Request No. 52 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 52 to the extent it seeks "all documents relating to any requests . . . concerning the reimbursement, pricing or payment for any subject drug."  Subject to these objections, Schering will make available for inspection non-



privileged documents responsive to Request No. 52 for the Class A Subject Drugs, if any such documents exist.

Request No. 53.   All documents relating to all actual, proposed, or prospective marketing methods, practices, policies, or strategies for each AWPID to the extent such documents refer to AWP, the spread, or to discounts of any type.

Response to Request No. 53:

In addition to the General Objections set forth above, Schering objects to Request No. 53 on the grounds that it is overly broad and that responding to Request No. 53 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 53 to the extent it calls for "[a]ll documents relating to" various practices.  Schering also objects to Request No. 53 to the extent it calls for "proposed" or "prospective" methods, practices, policies, or strategies on the ground that those documents are irrelevant and unlikely to lead to the discovery of admissible evidence.  Subject to these objections, Schering will make available for inspection non-privileged documents concerning its marketing methods, practices, policies, or strategies for each Subject Drug, to the extent such documents refer to AWP or the spread, that are responsive to Request No. 53, if any such documents exist.

Request No. 54.   All documents relating to any communication with doctors, other health care professionals, or any person or entity providing health care services to seek Medicare reimbursement or consumer co-payment for free samples of each AWPID you provided to them. (Class A Drugs)

Response to Request No. 54:

In addition to the General Objections set forth above, Schering objects to Request No. 54 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 54 to the extent it seeks "all documents relating to" various practices.  Schering also objects to Request No. 54 on the ground that documents concerning "free samples" are not relevant and are not likely to lead to the discovery of admissible evidence.

Request No. 55.   All marketing and sales materials which compare the AWP, price, market share, rebates, pricing discounts, incentives, or penalties for each AWPID with the AWP of any other pharmaceutical. (Class A Drugs)

Response to Request No. 55:

In addition to the General Objections set forth above, Schering objects to Request No. 55 on the ground that the terms "discounts," "incentives," and "penalties" are vague and ambiguous.



Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents responsive to Request No. 55 for the Class A Subject Drugs, if any such documents exist.

Request No. 56.   All documents concerning communications between you and any publisher concerning measures of price for pharmaceuticals, including ASP, AWP, WAC or other measures of price.

Response to Request No. 56:

In addition to the General Objections set forth above, Schering objects to Request No. 56 on the ground that the term "ASP" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 56 for the Subject Drugs, if any such documents exist.

Request No. 57.   For each of your AWPIDs, separately produce all documents concerning communications between you and a publisher regarding the price(s) for that AWPID.

Response to Request No. 57:

In addition to the General Objections set forth above, Schering objects to Request No. 57 on the ground that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects to Request No. 57 to the extent it seeks "all documents concerning" certain communications. Schering further objects to Request No. 57 to the extent it purports to require "separate" production of documents. Subject to these objections, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 57 for the Subject Drugs, if any such documents exist.

Request No. 58.   All documents concerning your role in the publication, appearance and/or advertisement of the AWP, WAC or other price measure for your AWPIDs in any publication of a publisher.

Response to Request No. 58:

In addition to the General Objections set forth above, Schering objects to Request No. 58 on the grounds that it is overly broad and that responding to Request No. 58 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 58 to the extent it calls for the production of "all documents concerning" the subject specified. Schering further objects to Request No. 58 on the ground that the terms "your role" and "price measure" are vague and ambiguous. Schering also objects to Request No. 58 to the extent it purports to characterize published pricing data as advertising. Subject to these objections, Schering will make available

-29-



for inspection contracts or agreements with the Publishers and communications with the Publishers concerning the Subject Drugs.

Request No. 59.    All documents concerning the role of the publisher in the publication, appearance and/or advertisement of the AWP, WAC or other price measure for each of your AWPIDs in a publication of a publisher.

Response to Request No. 59:

In addition to the General Objections set forth above, Schering objects to Request No. 59 on the grounds that it is overly broad and that responding to Request No. 59 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 59 to the extent it calls for the production of "all documents concerning" the subject specified. Schering further objects to Request No. 59 on the ground that the terms "the role of the publisher" and "price measure" are vague and ambiguous. Schering also objects to Request No. 59 to the extent it purports to characterize published pricing data as advertising. Subject to these objections, Schering will make available for inspection contracts or agreements with the Publishers and communications with the Publishers concerning the Subject Drugs.

Request No. 60.    All documents relating to the role of some person other than yourself and the publisher in the publication, appearance and/or advertisement of the AWP, WAC and/or other price measure for each of your AWPIDs in any publication of a publisher.

Response to Request No. 60:

In addition to the General Objections set forth above, Schering objects to Request No. 60 on the grounds that it is overly broad and that responding to Request No. 60 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 60 to the extent it calls for the production of "all documents concerning" the subject specified. Schering further objects to Request No. 60 on the ground that the terms "the role of some person other than yourself and the publisher" and "price measure" are vague and ambiguous. Schering also objects to Request No. 60 to the extent it purports to characterize published pricing data as advertising. Subject to these objections, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 60 for the Subject Drugs, if any such documents exist.

Request No. 61.    All documents relating to your role in the publication, appearance, or advertisement of the AWP, WAC or other pricing information in any pharmaceutical-related industry publications, including publications of the publishers.

-30-



Response to Request No. 61:

In addition to the General Objections set forth above, Schering objects to Request No. 61 on the grounds that it is overly broad and that responding to Request No. 61 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 61 to the extent it calls for the production of "all documents concerning" the subject specified. Schering further objects to Request No. 61 on the ground that the terms "your role" and "price measure" are vague and ambiguous. Schering also objects to Request No. 61 to the extent it purports to characterize published pricing data as advertising. Subject to these objections, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 61 for the Subject Drugs, if any such documents exist.

Request No. 62.    All documents concerning the use by any participant in the drug distribution/sales channels (e.g., wholesalers, retailers, pharmacies, pharmacy benefit managers, insurers, etc.).

Response to Request No. 62:

In addition to the General Objections set forth above, Schering objects to Request No. 62 on the grounds that it is vague, ambiguous, and unintelligible as written.

Request No. 63.    All documents concerning agreements between you and any publisher.

Response to Request No. 63:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 63, if any such documents exist.

Request No. 64.    All documents concerning any payments made by you to a publisher, where such payments related in any way to drug pricing.

Response to Request No. 64:

In addition to the General Objections set forth above, Schering objects to Request No. 64 on the grounds that the phrase "where such payments related in any way to drug pricing" is vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents sufficient to show payments made to a Publisher, if any such documents exist.



Request No. 65.    All documents relating to any investments or loans that you have made in or to a publisher.

Response to Request No. 65:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents sufficient to show any investments or loans made to a Publisher.

Request No. 66.    All notes or minutes of any meetings between you and a publisher where drug pricing was discussed.

Response to Request No. 66:

Subject to the General Objections set forth above, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 66 for the Subject Drugs, if any such documents exist.

Request No. 67.    All documents concerning communications between you and a publisher about litigation involving AWP or drug pricing.

Response to Request No. 67:

In addition to the General Objections set forth above, Schering objects to Request No. 67 on the grounds that it is overly broad and that responding to Request No. 67 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 67 to the extent it calls for the production of "all documents concerning" the subject specified. Subject to these objections, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 67 for the Subject Drugs, if any such documents exist.

Request No. 68.    All documents regarding any pricing surveys that publishers have done for AWPIDs. (All Drugs)

Response to Request No. 68:

In addition to the General Objections set forth above, Schering objects to Request No. 68 on the grounds that it is overly broad and that responding to Request No. 68 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 68 to the extent it calls for the production of "all documents regarding" the subject specified. Schering further objects to Request No. 68 on the ground that the terms "pricing surveys" is vague and ambiguous. Schering also objects to Request No. 68 to the extent it calls for documents not within the control of Schering. Subject to these objections, Schering will make available for inspection non-

-32-



privileged documents within its control concerning Publishers responsive to Request No. 68 for the Subject Drugs, if any such documents exist.

Request No. 69.    All documents regarding communications between you and a publisher about drug reimbursement systems, including Medicare, Medicaid and private insurance. (All Drugs)

Response to Request No. 69:

In addition to the General Objections set forth above, Schering objects to Request No. 69 on the grounds that it is overly broad and that responding to Request No. 69 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 69 to the extent it calls for the production of "all documents regarding" the subject specified. Subject to these objections, Schering will make available for inspection non-privileged documents concerning Publishers responsive to Request No. 69 for the Subject Drugs, if any such documents exist.

Request No. 70.    All documents concerning your contractual relationships with wholesalers, independent practice associations, pharmacies or providers insofar as they cover AWPIDs, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

Response to Request No. 70:

In addition to the General Objections set forth above, Schering objects to Request No. 70 on the ground that it is overly broad and that responding to Request No. 70 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 70 to the extent it calls for the production of "all documents concerning" particular relationships and to the extent it calls for the production of documents relating to all contractual relationships in the identified areas. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 70 for the Subject Drugs, if any such documents exist.

Request No. 71.    Documents sufficient to identify all persons involved in negotiation of contractual relationships with wholesalers, manufacturers, independent practice associations, pharmacies, PBMs or providers insofar as they cover any AWPID.

Response to Request No. 71:

In addition to the General Objections set forth above, Schering objects to Request No. 71 on the ground that it is overly broad and that responding to Request No. 71 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 71 to the extent it calls for the production of documents sufficient to identify "all persons" involved in negotiation and to the extent it calls for the production of documents relating to all contractual relationships in the



identified areas. Schering further objects to Request No. 71 on the ground that the term
"manufacturers" is vague and ambiguous as used in that Request. Subject to these objections,
Schering will make available for inspection documents sufficient to identify persons
substantively involved in negotiation of contractual relationships with wholesalers, independent
practice associations, and pharmacies for the Subject Drugs. Schering also will make available
for inspection documents sufficient to identify persons substantively involved in negotiation of
contractual relationships for the Subject Drugs with its top three PBMs, as well as any PBM with
whom any named plaintiff contracted.

Request No. 72.   All documents relating or referring to your contractual relationships
with PBMs insofar as they cover AWPIDs, including, without limitation, master agreements,
addenda, schedules, attachments, requests for proposal, responses to requests for proposal and
correspondence.

Response to Request No. 72:

In addition to the General Objections set forth above, Schering objects to Request No. 72
on the ground that it is overly broad and that responding to Request No. 72 as stated would be
unduly burdensome. Specifically, Schering objects to Request No. 72 to the extent it calls for
the production of "all documents concerning" particular relationships and to the extent it calls for
the production of documents relating to all contractual relationships in the identified areas.
Subject to these objections, Schering will make available for inspection contracts, including
addenda, schedules and attachments, requests for proposals, and related correspondence for the
Subject Drugs with each of its top three PBMs, as well as any PBM with whom any named
plaintiff contracted.

Request No. 73.   Documents sufficient to identify all persons involved in negotiation of
contractual relationships with PBMs insofar as they cover any AWPID.

Response to Request No. 73:

In addition to the General Objections set forth above, Schering objects to Request No. 73
on the ground that it is overly broad and that responding to Request No. 73 as stated would be
unduly burdensome. Specifically, Schering objects to Request No. 73 to the extent it calls for
the production of "all persons" involved in negotiation and to the extent it calls for the
production of documents relating to all contractual relationships in the identified areas. Subject
to these objections, Schering will make available for inspection documents sufficient to identify

-34-



persons substantively involved in negotiation of contractual relationships for the Subject Drugs with each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted.

Request No. 74.   All documents relating to marketing materials that you have provided PBMs for any AWPID.

Response to Request No. 74:

In addition to the General Objections set forth above, Schering objects to Request No. 74 on the ground that it is overly broad and that responding to Request No. 74 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 74 to the extent it calls for the production of "all documents relating to marketing materials" and to the extent it calls for the production of documents relating to all contractual relationships with PBMs. Subject to these objections, Schering will make available for inspection all marketing materials for the Subject Drugs provided to each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted.

Request No. 75.   All documents relating to any communications between you and PBM regarding AWP, or to any fees or monies paid to or retained by a PBM.

Response to Request No. 75:

In addition to the General Objections set forth above, Schering objects to Request No. 75 on the ground that it is overly broad and that responding to Request No. 75 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 75 to the extent it calls for the production of "all documents relating to" communications and to the extent it calls for the production of documents relating to all contractual relationships with PBMs. Subject to these objections, Schering will make available for inspection all communications concerning the Subject Drugs with each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted, that are responsive to Request No. 75, if any such documents exist.

Request No. 76.   All documents relating to any communications between you and any PBM regarding the revenue, profit, spread or other consideration that a PBM would earn based on any difference between your price for any AWPID and the compensation that the PBM receives for the AWPID.

Response to Request No. 76:

In addition to the General Objections set forth above, Schering objects to Request No. 76 on the ground that it is overly broad and that responding to Request No. 76 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 76 to the extent it calls for

-35-



the production of "all documents relating to" communications and to the extent it calls for the production of documents relating to all contractual relationships with PBMs. Subject to these objections, Schering will make available for inspection all communications concerning the Subject Drugs with each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted, that are responsive to Request No. 76, if any such documents exist.

Request No. 77.    All documents relating to the pricing of any of your AWPIDs sold to or through any PBM.

Response to Request No. 77:

In addition to the General Objections set forth above, Schering objects to Request No. 77 on the ground that it is overly broad and that responding to Request No. 77 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 77 to the extent it calls for the production of "all documents relating to" certain information and to the extent it calls for the production of documents relating to all contractual relationships with PBMs. Schering also objects to Request No. 77 on the ground that the phrase "relating to the pricing" is vague and ambiguous. Subject to these objections, Schering will make available for inspection all documents concerning the Subject Drugs relating to each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted, that are responsive to Request No. 77, if any such documents exist.

Request No. 78.    All documents relating to any rebates that you have provided PBMs for any AWPID.

Response to Request No. 78:

In addition to the General Objections set forth above, Schering objects to Request No. 78 on the ground that it is overly broad and that responding to Request No. 78 as stated would be unduly burdensome. Specifically, Schering objects to Request No. 78 to the extent it calls for the production of "all documents relating to" certain information and to the extent it calls for the production of documents relating to all contractual relationships with PBMs. Subject to these objections, Schering will make available for inspection all documents concerning the Subject Drugs relating to each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted, that are responsive to Request No. 78, if any such documents exist.



Request No. 79.    Excluding Rebates, all documents referring or relating to your provision of any other consideration to a PBM for AWPIDs, including but not limited to:

(a)    Administrative fees for assembling data to verify market share results;

(b)    Fees for selling other data;

(c)    Fees for encouraging physicians to change prescribing patterns;

(d)    Prompt payment discounts;

(e)    Free drugs;

(f)    Drug samples;

(g)    Credit memos or credit extended to any PBM, including but not limited to credit memos or credit issued for the purported reason of "returned goods;"

(h)    Other discounts, fees or grants.

Response to Request No. 79:

In addition to the General Objections set forth above, Schering objects to Request No. 79 on the ground that it is overly broad and that responding to Request No. 79 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 79 to the extent it calls for the production of "all documents referring or relating to" certain practices and to the extent it calls for the production of documents relating to all contractual relationships with PBMs. Schering also objects to Request No. 79 to the extent it calls for all documents relating to "administrative fees," "fees for selling other data," "fees for encouraging physicians to change prescribing patterns," "free drugs," "drug samples," "credit memos or credit extended to any PBM" on the grounds that it would be unduly burdensome to collect those documents and that those documents are not relevant and are not likely to lead to the discovery of admissible evidence.  Schering also objects to Request No. 79 on the ground that the phrases "administrative fees for assembling data to verify market share results," "encouraging physicians to change prescribing patterns," "market share results," and "any other consideration" are vague and ambiguous.  Subject to these objections, Schering will make available for inspection all non-privileged documents concerning the Subject Drugs relating to each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted, that are responsive to Request No. 79, if any such documents exist.

-37-



Request No. 80.    All documents relating to the placement of any of your AWPIDs on a PBM formulary.

Response to Request No. 80:

In addition to the General Objections set forth above, Schering objects to Request No. 80 on the ground that it is overly broad and that responding to Request No. 80 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 80 to the extent it calls for the production of "all documents relating to" certain information and to the extent it calls for the production of documents relating to all contractual relationships with PBMs.  Subject to these objections, Schering will make available for inspection all documents concerning the Subject Drugs relating to each of its top three PBMs, as well as any PBM with whom any named plaintiff contracted, that are responsive to Request No. 80, if any such documents exist.

Request No. 81.    All documents relating to any communications, including meetings, between you and any other pharmaceutical company regarding:

(a)    any actual, proposed or prospective price, price announcements, price changes, or price lists for any AWPID;

(b)    any actual, proposed, or prospective pricing methods, practices, policies or strategies for any AWPID;

(c)    any actual, proposed, or prospective marketing methods, practices, policies, or strategies for any AWPID;

(d)    any actual, proposed, or prospective pricing discounts, rebates, bids, or incentives for any AWPID;

(e)    territories or markets for sales or potential sales for any AWPID;

(f)    Medicare Part B and its policy of reimbursement for any AWPID;

(g)    the AWP of any AWPID;

(h)    pharmaceutical industry publications; and

(i)    market conditions or market shares.

Response to Request No. 81:

In addition to the General Objections set forth above, Schering objects to Request No. 81 on the ground that it is overly broad and that responding to Request No. 81 as stated would be unduly burdensome.  Specifically, Schering objects to Request No. 81 to the extent it calls for

-38-



.the production of "all documents relating to" certain information. Schering also objects to. Request No. 81 on the ground that the terms "territories," "markets," "market conditions," "market shares," "incentives," and "pharmaceutical industry publications" are vague and ambiguous. Subject to these objections, Schering will make available for inspection non-privileged documents responsive to Request No. 81 for the Subject Drugs, if any such documents exist.

     <u>Request No. 82.</u>    Any documents relating to the repackaging or relabeling of any AWPID including but not limited to: (a) documents indicating that any AWPID with a specific NDC has been repackaged and is being sold with a different NDC, but is the same drug; and (b) for any repackaged AWPID, documents evidencing the AWP of the original AWPID and of the repackaged AWPID, and documents evidencing the bases, methods and/or reasons for any change in the AWP. .

     <u>Response to Request No. 82:</u>

     In addition to the General Objections set forth above, Schering objects to Request No. 82 on the ground that it calls for production of documents that are irrelevant and unlikely to lead to the discovery of admissible evidence.

<strong><u>RESPONSES TO INTERROGATORIES</u></strong>

<u>Interrogatory No. 1.</u>

     For the period beginning January 1, 1997, and for each subsequent calendar quarter, and with respect to each of the AWPIDs, identify the following information;

          a.    the total volume of sales, indicating both the number of units and net revenue;

          b.    the "average wholesale price" (AWP), as reporting in Medical Economics Red Book, *First Data Bank* and/or *MediSpan,* and the volume of sales (in both units and net revenue) occurring (i) at or within five percent of AWP, whether higher or lower, (ii) at more than five percent above AWP, and (iii) at more than five percent below AWP;

          c.    the "average manufacturer price" ("AMP"), as reported to the Secretary of Health and Human Services, pursuant to the requirements of Social Security Act ("SSA") §



1927(b)(3), and the volume of sales (in both units and net revenue) occurring (i) at AMP and up to and including 10% above AMP, and less than or equal to 10% below AMP (broken out separately), (ii) at greater than 10% above AMP but less than or equal to 20% above AMP, and at greater than 10% below AMP but less or equal to 20% below AMP (broken out separately), (iii) at greater than 20% above AMP but less than or equal to 30% above AMP, and at greater than 20% below AMP but less than or equal to 30% below AMB (broken out separately), (iv) at greater than 30% above AMP but less than or equal to 40% above AMP, and at greater than 30% below AMP but less than or equal to 40% below AMP (broken out separately), and (v) at greater than 40% above AMP but less than or equal to 50% above AMP, and at greater than 40% below AMP but less than or equal to 50% below AMP (broken out separately);

      d.    the "wholesale acquisition cost" ("WAC"), as reported by Medical Economics *Red Book*, *First Data Bank* and/or *MediSpan* or any other such entity that gathers and publishes "wholesale acquisition costs," and volume of sales (in both units and net revenue) occurring (i) at or within five percent of WAC, whether higher or lower, (ii) at more than five percent above WAC, and (iii) at more than five percent below WAC;

      e.    the "average sales price" (ASP), *i.e.*, the price after reflecting discounts, rebates, chargebacks, to all classes except FSS;

      f.    the total volume of the subject drug, in units, distributed as free goods.

Response to Interrogatory No. 1:

In addition to the General Objections set forth above, Schering objects to Interrogatory No. 1 to the extent it seeks information that is a matter of public record, is equally available to Plaintiffs, or is already in the possession of the Plaintiffs. Schering further objects to Interrogatory No. 1 to the extent it does not currently possess data in the form requested on the

-40-



ground that it would be unduly burdensome to create such data. Schering also objects to the

terms "net revenue" and "AMP" on the ground that they seek information that is irrelevant and

unlikely to lead to the discovery of admissible evidence, and to the terms "net revenue," "FSS,"

and "ASP" as vague and ambiguous. Subject to these objections, Schering will make available

for inspection electronic data from which information sought by Interrogatory No. 1 can be

ascertained, to the extent such data exist.

Interrogatory No. 2.

    For the period beginning January 1, 1997, to the present, has the distribution, marketing,

sales or promotion of any AWPID considered, incorporated, or been based upon, in any way, the

difference between the cost to the provider and the amount that the provider receives for

reimbursement or sale? If so, please describe the circumstances of such distribution, marketing,

sales, or promotion, and provide all documents relating thereto, and identify all past and current

employees with knowledge of the facts relating to such marketing, sales or promotion.

      Response to Interrogatory No. 2

    In addition to the General Objections set forth above, Schering objects to Interrogatory

No. 2 on the ground that it is vague and ambiguous. Specifically, the phrase "considered,

incorporated or been based upon" is vague and ambiguous. Subject to these objections, Schering

will make available for inspection documents from which the information sought by

Interrogatory No. 2 can be ascertained, if any such documents exist.

Interrogatory No. 3.

    For the period of January 1, 1997, to the present, please state for each calendar quarter

the largest single purchaser, in terms of units, of each of the AWPIDs and the following:

      a.    the total number of units of the AWPIDs received by that purchaser; and



b.     the total net revenue received for the AWPIDs by your company from that purchaser.

Please also produce the contract or agreements governing your relationship with that purchaser for each relevant quarter.

Response to Interrogatory No. 3:

In addition to the General Objections set forth above, Schering objects to Interrogatory No. 3 on the ground that it seeks information on "net revenue" that is irrelevant and unlikely to lead to the discovery of admissible evidence. Schering further objects to Interrogatory No. 3 on the ground that the term "net revenue" is vague and ambiguous. Subject to these objections, Schering will make available for inspection electronic data from which information sought by Interrogatory No. 3 can be ascertained, to the extent such data exist.

Interrogatory No. 4

For the period of January 1, 1998, to the present, and for each subject drug, please provide a list of all purchasers who received the subject drug at a price exempted from the calculation of the Medicaid "best price," pursuant to the requirements of SSA _1927(c)(1)(C)(ii)(III), and, for each purchaser, indicate the volume of the AWPID received by calendar quarter, in units, and the range of prices at which such purchaser received the subject drug for that quarter.

Response to Interrogatory No. 4

In addition to the General Objections set forth above, Schering objects to Interrogatory No. 4 on the ground that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence. Subject to these objections, Schering will make available for inspection electronic data from which the information sought by Interrogatory No. 4 can be ascertained, to the extent such data exist.

-42-



Interrogatory No. 5

With respect to each AWPID, please describe how you calculate the prices and/or data reported to Medical Economics *Red Book*, *First Data Bank* or *MediSpan* or any other such entity that gathers and publishes either "average wholesale prices," "list prices," or "wholesale acquisition costs." And for each drug identify the persons responsible for doing so.

Response to Interrogatory No. 5.

Subject to the General Objections set forth above, Schering will make available for inspection documents from which the information sought by Interrogatory No. 5 can be ascertained, including documents sufficient to identify the persons referenced therein.

Interrogatory No. 6

Identify the source of each of the documents produced in response to plaintiffs' requests for the production of documents throughout this litigation by identifying the person(s) who possessed those documents, the job position of any such individuals, and the division and department where such documents were located. If you are unable to determine the individual(s) who possessed the documents, identify the department and division where they were/are located when produced.

Response to Interrogatory No. 6

In addition to the General Objections set forth above, Schering objects to Interrogatory No. 6 on the ground that responding to Interrogatory No. 6 as stated would be unduly burdensome. Schering further objects to Interrogatory No. 6 to the extent that it seeks to impose discovery obligations that are broader than, or inconsistent with, Schering's obligations under the Federal Rules of Civil Procedure, this Court's Local Rules, and the Orders of this Court.

-43-



SCHERING-PLOUGH CORP. and
WARRICK PHARMACEUTICALS CORP.
By their attorneys,

John T. Montgomery (BBO#352220)
Brien T. O'Connor (BBO#546767)
Crystal D. Talley (BBO#633759)
John R. Therien (BBO#651185)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated:  April 26, 2004

-44-



## CERTIFICATE OF SERVICE

I, John R. Therien, certify that, on this 26th day of April, 2004, I served a copy of the foregoing document on all counsel of record by electronic service pursuant to Case Management Order No. 2, by causing a copy to be sent to Verilaw Technologies for posting and notification.

John R. Therien

-45-