UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S
## MOTION FOR ENTRY OF CASE MANAGEMENT ORDER AND
## TO ORDER COMMENCEMENT OF DISCOVERY

Plaintiff/Relator Ven-A-Care of the Florida Keys, Inc. originally filed this action in June of 1995.  It languished under seal in the U.S. District Court for the Southern District of Florida for *nearly eleven years* before it was finally unsealed as to certain Defendants in April, 2006 – and later served on Abbott at the end of May, 2006.  During the decade that the action remained under seal the Government pursued one-way discovery, serving on Abbott (and third parties) various Civil Investigative Demands, subpoenas, and other requests for information.[1]  Indeed, the United States, through the Department of Justice and the Department of Health and Human Services, issued no less than six separate document requests to Abbott.  In response, Abbott produced to the United States tens of thousands of pages of responsive documents and many CDs containing Abbott's national sales data.

Now that the case has finally been unsealed, and the litigation commenced, Abbott is finally able to start making up this eleven year head start by conducting discovery of the United

---

[1] The United States requested information from Abbott on several occasions during the time that the complaint was filed, but under seal, including: (1) a February 1, 1996 Civil Investigative Demand by the Untied States Department of Justice ("DOJ"); (2) an October 6, 1997 subpoena by the United States Department of Health and Human Services ("HHS"); (3) a July 27, 2000 subpoena by HHS; (4) an August 19, 2003 subpoena by HHS; (5) an April 2004 request for sales data by the DOJ; and (6) a December 2005 request for sales data by the DOJ.  In response, Abbott provided the United States with documents and data concerning the allegations in the complaint.

States.  To that end, when this case was still pending before Judge Gold in Miami, the parties held their Rule 26(f) conference.  Since then, Abbott has worked diligently with Plaintiffs to negotiate a protective order.  Abbott also propounded document requests and requests for admission on Plaintiffs on July 12, 2006, and Plaintiffs propounded discovery on Abbott on July 19, 2006.  When Plaintiffs asked for an extension of time to respond Abbott reasonably agreed, giving them until August 23, 2006 – and then until September 1, 2006 – to answer Abbott's requests for admission.  (*See* Ex. 1; *see also* Ex. 2 (Plaintiffs state:  "Technically, the operative CMO suspends discovery until Abbott files its answer.  But, we too would like discovery to get going.  I think we should file something jointly with the Court to get a modification to the operative CMO to engage in . . . discovery . . . .").)

It now appears, though, that all of these negotiations and discussions with Plaintiffs were an elaborate ruse:  Plaintiffs just this morning announced that they are taking the position that – even though the Rule 26(f) conference has been held, and discovery is *already underway* – all discovery must cease until the motions to dismiss are decided and answers filed.  Worse, Plaintiffs are asking that discovery extend for *two years* (for a total of over 13 years on their side), while simultaneously seeking artificially to limit the discovery tools available to Abbott and prevent Abbott from properly preparing its defense or narrowing the issues in this case for summary judgment or trial.

Eleven years of delay is enough.  It is time to start this litigation, and supply Abbott with the tools it needs to prepare its defense.  Abbott respectfully requests that this Court:

- Confirm that discovery is underway in this case, and order Plaintiffs to respond to Abbott's discovery;

- Suspend the presumptive limits on discovery imposed by the local rules in favor of this Court's Case Management Order ("CMO"), and

- Enter Abbott's proposed CMO (attached as Ex. 3).

**ARGUMENT**

**I.     PLAINTIFFS' SPECIOUS ARGUMENT THAT DISCOVERY IN THIS CASE IS, SOMEHOW, ON HOLD SHOULD BE REJECTED OUT OF HAND.**

After months of stringing out discovery with negotiations, Plaintiffs just this morning announced their intention to seek to shut down discovery entirely. They now, for the first time, claim that the MDL's CMO 9 requires all discovery be stayed in this case until the motions to dismiss are decided and answers filed. Plaintiffs are wrong.

It is interesting, to say the least, that Plaintiffs have this morning taken this position based on CMO 9. The parties held the required Rule 26(f) conference in July. Abbott propounded discovery thereafter, and Plaintiffs agreed to answer it. Indeed, Plaintiffs themselves propounded discovery on Abbott. When Plaintiffs later sought an extension until August 23, 2006 to answer Abbott's discovery Abbott agreed, and also agreed Plaintiffs could have until September 1, 2006, to answer Abbott's requests for admission; Plaintiffs agreed to answer on that date. Only now as that date approaches have Plaintiffs decided to claim that no discovery is appropriate – relying on a CMO over two and a half years old, entered in connection with the class action cases in this MDL. Plaintiffs' ploy is transparent and should be rejected.

Nor is there any legitimate argument that CMO 9 applies to this case. CMO 9 focused on the class actions in the MDL. Separate and later-filed actions have been subject to separate CMOs which independently state whether discovery is permitted or not pending filing of an answer. *E.g.*, CMO 18 ¶ 6 (California); CMO 21 ¶ 4 (New York Counties). If CMO 9 covered *all* such cases, such orders would be superfluous. It does not, and it does not cover this case, either. After 11 years of waiting, it is time to let Abbott get on with discovery here.

## II. THE DISCOVERY NEEDED BY ABBOTT IN THIS MATTER IS WIDE-RANGING, BUT CAN BE COMPLETED IN A REASONABLE AMOUNT OF TIME PROVIDED ABBOTT IS NOT HAMSTRUNG BY "DEFAULT" PROVISIONS IN THE LOCAL RULES.

Abbott respectfully requests that this Court enter the proposed CMO attached hereto. To be clear, the case pled by Plaintiffs is massive. Plaintiffs' claims span ten years – 1991 to 2001. The complaint covers 44 NDCs of four multiple source drugs manufactured by Abbott. Plaintiffs seek to recover damages for the entire Medicare and Medicaid Programs for that time, thus sweeping in reimbursement decisions by fifty states, in addition to the HCFA and CMS bureaucracy. Plaintiffs, not Abbott, structured the case this way.

Accordingly, the discovery in an action this wide-ranging will be extensive. Abbott will need to obtain documents and testimony from the Federal Government, including but not limited to CMS, each of the approximately 50 Medicare Carriers during the time period, each state Medicaid Program, and each state's Medicaid intermediaries during the relevant time period. At a minimum, Abbott must determine whether all of these agencies paid based on Abbott's AWP, as the Government contends.[2] Thus, Abbott likely will be required to depose a long list of people who have critical testimony, including:

- at least one representative from a substantial number of, if not each of, the fifty state Medicaid agencies;

- multiple representatives of CMS, the Office of the Inspector General for the Department of Health and Human Services, and the various United States agencies who have been involved with Medicare or Medicaid or were involved in investigations of the true nature of AWP;

- representatives from the various Medicare carriers and Medicaid fiscal intermediaries who contract with Medicare and the various Medicaid programs to manage their reimbursement to providers;

- representatives of State Medicaid Fraud Control Units; and

---

[2] Early evidence suggests that not all did.

- numerous third parties who have information relevant to Plaintiffs' claims.

Abbott has not been able to issue a single discovery request to the Government until now in this litigation; it is imperative that Abbott not be saddled at this late date with artificially narrow discovery limitations – which would only inure to the benefit of the Plaintiffs, who presumably have demanded via subpoena most of the documents they need from Abbott and from third parties.  That said, the task before the parties is manageable and can be completed in relatively short order – if the parties get to work immediately and are not hamstrung by having their discovery tools limited.

### III.  THE COURT SHOULD ENTER ABBOTT'S PROPOSED CMO.

After many hours of negotiations, conducted over many days over a nearly three-month period, the parties were able to agree on many provisions in Abbott's proposed CMO attached hereto – at least before Plaintiffs decided this morning, unilaterally (and wrongly), to seek a stay of discovery until after answers are filed.  At least four major areas of disagreement remain.

#### A.  The Duration Of Fact Discovery

- Abbott believes discovery can and should be completed within one year.

- Although Plaintiffs have not proposed a specific time period, Plaintiffs have alluded to the notion that they will need at least an additional two years – for a total of 13 years, counting the 11 years during which they conducted one-way discovery when this case was sealed – to complete fact discovery.

Plaintiffs have had over a decade to prepare their case; Plaintiffs have much of Abbott's documents and data as a result of their one-way discovery campaign; and the vast majority of any other relevant Abbott documents have already been collected and produced in one of the various AWP actions pending throughout the country, and were produced to Plaintiffs on August 10, 2006, as part of Abbott's initial Rule 26(a) disclosures.  While there are scores of depositions that must be taken, Abbott is in a position to begin taking these depositions within the next

several weeks and is confident that counsel can complete all depositions, assuming Plaintiffs cooperate, within the next year. One year, not two years, is appropriate. Abbott's proposed CMO reflects this period, and fills in the intermediate dates based on that.

### B. Limit On The Number Of Hours Available For Depositions

- Abbott believes that the parties will need at least 500 hours of deposition time per side.
- Plaintiffs have proposed a 250 hour limit.

When considered in the context of a seven-hour deposition day, 250 hours (proposed by Plaintiffs) works out to just under 36 days of depositions. 500 hours, as proposed by Defendants, is slightly more than 71 deposition days. Defendants' proposal is eminently more reasonable in a case of this scope.

The number of individuals who need to be deposed in this matter is expansive. Experience teaches that Plaintiffs' claims – encompassing both Medicare and Medicaid – could require deposition of hundreds of persons. In an AWP case pending in Texas (in which Relator Ven-A-Care of the Florida Keys, Inc. is also a plaintiff) the parties took approximately 120 depositions – and that case involved only one State, and only Medicaid. This case involves 50 states; 500 hours is only 10 hours per state for Medicaid issues – let alone discovery of the Medicare issues (including important discovery of present and former employees of CMS, HCFA, OIG-HHS, and other federal and state agencies). Plaintiffs' proposal is obviously inadequate.

### C. Limit On Number Of Interrogatories

- Abbott originally proposed a limit of 100 interrogatories.
- Plaintiffs seek a limit of 65 interrogatories, and did not respond to Abbott's offer to compromise at 75 interrogatories.

Although Massachusetts Local Rule 26(C)(1) sets the presumptive limit at 25 interrogatories per side, the Rule also explicitly permits the Court to deviate from these default settings as it deems necessary.  As this Court is well aware, these AWP cases are just the type of litigation that requires deviation from the presumptive discovery limits of the local rules.  Indeed, the parties agree that the local discovery rules should not govern this case, they simply disagree on what the precise number of interrogatories per side should be.   Abbott has thus far served 17 interrogatories that test, among other things, the reimbursement practices of not only the Federal Government and those who manage and run the Medicare program, but also each of the fifty states' Medicaid programs.  Additional, precisely focused interrogatories will be necessary.  Abbott's interrogatory limits are, therefore, appropriate.

### D. Limit On Number Of Requests For Admission

- Abbott believes there should be no limit on the number of requests for admission.

- Plaintiffs originally agreed with Abbott on this point, presumably because there were no limits on requests for admission in the Southern District of Florida.  (Plaintiffs originally took the position that they would oppose transfer of this matter by the JPML panel to this Court, but changed their minds a few days before their opposition was due.)  Plaintiffs have recanted and now argue that the parties should be allowed to serve only 35 requests for admission.

Again, while Local Rule 26(C)(1) sets the default limit at 25, these AWP cases – and especially this case – are the quintessential cases for deviating from the default discovery rules, especially as they apply to requests for admission.  Requests for admission will be an important method for *limiting* the issues and *reducing* discovery in this matter.  "Rule 36 is not designed to discover facts, but rather it is designed to circumscribe contested factual issues in the case so that issues which are disputed might be clearly and succinctly presented to the trier of facts." *McLaughlin v. Drakett Prod. Co.*, 1975 WL 166107, *1 (D. Mass. Sept. 2, 1975); *see also Metro. Life Ins. Co. v. Carr*, 169 F. Supp. 377 (D. Md. 1959) (the purpose of requests for

admission is "to require admission of matters which ought to be admitted, or which will not be disputed at trial, so that the time, trouble and expense required to prove them may be avoided").

Given the expansive parameters of the Plaintiffs' complaint, covering the entirety of the Medicare and Medicaid programs over a 10-year period, and the useful function that requests for admission serve in narrowing and limiting the issues necessary for trial, there should be no limit on requests for admission. As the Court knows, there are myriad inter-related and changing regulations, reimbursement programs and mechanisms, pricing terms, drugs, and other facts at issue in the AWP-related litigation. Most of these facts are undisputed but nevertheless important to the fact-finder's determination of whether Abbott made false statements that caused Medicare or Medicaid to pay false claims. Both sides can use requests for admission to identify where disputes actually exist and focus discovery there. Of course, if Plaintiffs believe particular requests are unduly burdensome or otherwise improper, they may object to those particular requests in accord with Rule 36(a) of the Federal Rules of Civil Procedure.

Abbott already has propounded a number of requests for admission (298 in total) designed to narrow the scope of this case. The vast majority of Abbott's requests for admission will take hardly any effort at all, inasmuch as they merely ask Plaintiffs to admit certain basic and incontrovertible facts, such as statements made by HHS in previous court filings and reports; the authenticity of certain governmental reports relating to drug reimbursement; the accuracy of legislative and regulatory history and its impact on this case; the sharing of information with the Government in the 1995-96 time period from Ven-A-Care; and the authenticity of specific statements and correspondence attributed to various individuals within the Federal Government. Abbott made Plaintiffs' job even easier by attaching copies of relevant documents, and providing citations to sources easily accessible in the public domain. Responding to these requests for admission should take little effort from the Plaintiffs and will save Abbott and potentially this

Court from the time and expense required to prove undisputed but important facts – often through depositions of fact witnesses outside of the jurisdiction.  In any event, the number of requests for admission already propounded by Abbott, particularly considering their nature, is not at all out of the ordinary; indeed, in cases like this, it is not unusual for the parties to exchange many hundreds of requests for admission in an attempt to define each others' positions and decrease time and expense in discovery and at trial.  *See, e.g.*, *Duncan v. Santaniello*, Civ. A. No. 94-030224-MAP, 1996 WL 121730,* 3 (D. Mass. Mar. 8, 1996) (holding that 322 requests for admission was not so large as to warrant a protective order preventing defendants from responding to requests); *Photon, Inc. v. Harris Intertype, Inc.*, 28 F.R.D. 327, 329 (D. Mass. 1961) (requiring plaintiff to answer majority of over 700 requests for admission, reasoning that "purely factual matters . . . will have to be resolved for the record at some time . . . and establishment of these facts through the medium of requests for admission will *pro tanto* shorten the trial"); *Moscowitz v. Baird*, 10 F.R.D. 233, 235 (S.D.N.Y. 1950) (requiring plaintiff to respond to all but two of 267 requests for admission).

## CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court:

- Confirm that discovery is underway in this case, and order Plaintiffs to respond to Abbott's discovery;

- Suspend the presumptive limits on discovery imposed by the local rules in favor of this Court's CMO, and

- Enter Abbott's proposed CMO.

Dated:  August 18, 2006                    Respectfully submitted,

<u>/s/ Brian J. Murray</u>
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

I certify that the moving parties have communicated with counsel for Plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

        /s/ Brian J. Murray
        Brian J. Murray

## CERTIFICATE OF SERVICE

I, Brian J. Murray, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER AND TO ORDER COMMENCEMENT OF DISCOVERY to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 18th day of August, 2006.

I further certify I hereby certify that on August 18, 2006, a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION FOR ENTRY OF CASE MANAGEMENT ORDER AND TO ORDER COMMENCEMENT OF DISCOVERY was served upon the following by e-mail and U.S. Mail:

| | |
|---|---|
| Mark A. Lavine, Esq.<br>United States Attorney's Office<br>99 N.E. 4 Street<br>Miami, FL 33132 | Gejaa T. Gobena, Esq.<br>United States Department of Justice<br>Commercial Litigation Branch<br>P.O. Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044 |
| James J. Breen, Esq.<br>Alison Simon, Esq.<br>The Breen Law Firm<br>3350 S. W. 148th Avenue, Suite 110<br>Miramar, FL 33029 | |

        /s/ Brian J. Murray
        Brian J. Murray

CHI-1548411v1