UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| **IN RE PHARMACEUTICAL** ) | |
| **INDUSTRY AVERAGE** ) | |
| **WHOLESALE PRICE** ) | MDL NO. 1456 |
| **LITIGATION** ) | Civil Action No. 01-12257-PBS |
| ) | Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** ) | |
| ) | |
| STATE OF NEVADA V. ABBOTT ) | Chief Magistrate Judge Marianne B. Bowler |
| LABORATORIES, INC., ET AL., CA ) | |
| NO. CV-02-00260-ECR (Nevada I) ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| STATE OF NEVADA V. AMERICAN ) | |
| HOME PRODUCTS, ET AL., CA NO. ) | |
| 02-CV-12086-PBS (Nevada II) ) | |
| ) | |

**DEFENDANTS' REPLY TO THE STATE OF NEVADA'S OPPOSITION TO
DEFENDANTS' THIRD MOTION TO COMPEL DISCOVERY**

In its Opposition, Plaintiff attempts to evade completing its late (and Court-ordered) production by referring to the recently decided case, *People of the State of New York v. Pharmacia, et al.*, Index No. 904-03 (N.Y. Sup. Ct. July 19, 2006). That decision is both non-binding on this Court and inapplicable here. In *Pharmacia*, the New York state court determined that it faced only an issue of statutory interpretation, so the agency and individual legislator's knowledge regarding the term "AWP" was not relevant. *See id.* at 7 ("As such, the great bulk of the evidence sought by defendants is not relevant to the issue of legislative intent."). Here, the reimbursement rate was set by Nevada's Department of Human and Health Services ("DHHS"), not the legislature. The knowledge of that agency regarding AWP is therefore directly relevant to the defense against Plaintiff's claims. Plaintiff's reliance on a case decided four months after discovery closed to forestall discovery ordered by the Court is misplaced.

1

Defendants are entitled to the discovery sought in their third motion to compel, including (1) signed and complete answers to interrogatories; (2) Nevada Medicaid's managed care documents; (3) non-Medicaid agencies' contracts for pharmacy services; and (4) five additional depositions regarding Plaintiff's late-produced documents.[1] In addition, Defendants had asked for answers to certain questions regarding the claims data, so that they could understand the data on which Plaintiff relies. Now that Plaintiff has produced answers to those questions, the motion to compel is moot as to that issue.[2]

## I. INTERROGATORIES

Defendants are only asking Plaintiff to sign and answer the interrogatories served. When it does so, Defendants will review Plaintiff's answers, and challenge them if appropriate. The State's interrogatories are long overdue. Plaintiff was required to answer the contention interrogatories even at the time they were served (as it had a good faith obligation to investigate its claims prior to bringing this case), and discovery has now been closed for almost five months.

## II. MANAGED CARE

Defendants are entitled to this discovery, which is relevant to their defense in this case, even if it ultimately proves fruitless. Plaintiff ironically faults Defendants for failing to "understand the nature of Nevada Medicaid's managed care program," because of an "extremely limited" deposition of Nevada Medicaid managed care director Philip Nowak in December 2005. Opp. at 5. But Plaintiff ignores that its document production trickled in to Defendants over a

---

[1] Needless to say, Defendants disagree with nearly all of the characterizations and attacks in Plaintiff's Opposition. Defendants note only that while, as the Court is aware, new defense liaison counsel became necessary when former defendant GSK settled this lawsuit, Defendants' positions in this motion have been coordinated, and are not inconsistent, with prior liaison counsel.

[2] Defendants have never insisted on a deposition, as a June 7, 2006, letter to Plaintiff's counsel confirms. *See* Dillon Letter dated June 7, 2006 ("As requested, attached as Exhibit A is the list of questions regarding the claims data. Please let us know when you have identified the person who can answer these questions and when we may speak with this person. As you will appreciate, we will need to preserve this information in an admissible form, and are open to discussing the form this would take.") (attached as Exhibit F to Defendants' Third Motion to Compel Discovery from Plaintiff the State of Nevada).

period of time, up to and including August 2006.  Because of Plaintiff's conduct, Defendants were denied documents and forced to depose witnesses without them to meet the then discovery deadline of January 31, 2006.

Moreover, Plaintiff asks Defendants to accept on faith that managed care documents are not relevant to their defense.  As an initial matter, Defendants have little faith in Plaintiff's ability to determine what is relevant, as Plaintiff contends that government knowledge is not relevant at all.  To a less partisan observer, the relevance is obvious.  Plaintiff claims that its Medicaid program was deceived and defrauded because it believed AWP was an actual average of wholesale prices.  *See, e.g.*, Am. Compl. ¶ 7.  Discovery has already shown that a number of State programs contract with pharmacy benefit managers (PBMs) and reimburse drugs at rates far below AWP (for example, the Senior Rx program reimburses generics at AWP-55%).  If, as Defendants expect, the half of the Medicaid program that is administered by an HMO paid rates similar to those paid by these PBMs, then that knowledge would be relevant to what Plaintiff understood the term AWP to mean.

Defendants should not be required to accept Plaintiff's representations regarding these documents on faith when Plaintiff has shown it is not fully knowledgeable about what its documents contain, or even if they exist.  *See infra*, Section IV (discussing Plaintiff's suggestion, later shown to be incorrect, that no other documents regarding the 2002 Myers & Stauffer study exist).  Plaintiff has produced some Medicaid managed care documents, including an August 16, 2006, production.  If this production is complete, Plaintiff need only say so.  If it is not, Defendants are entitled to the remaining documents, and the Court should order Plaintiff to produce them.

**III.     DISCOVERY FROM NON-MEDICAID AGENCIES**

Plaintiff incorrectly asserts that the documents sought are beyond of the scope of the Court's March 2006 order.  Pursuant to that order, Defendants were permitted to depose one witness from each of three non-Medicaid State agencies to find out how that agency reimbursed for prescription drugs.  While the parties agreed at the March 29 hearing to limit Plaintiff's search of documents to the files of the deponents and the general program files, no one knew at that time that the contracts for these agencies were kept not in individual or program files, but in purchasing department files.  These contracts are highly relevant as they establish the rates that these agencies pay for drugs – the very issue upon which the Court allowed discovery.  Had everyone understood on March 29 that these contracts were in the file cabinets of someone in purchasing, there is little doubt that they would have been included in the parties' original agreement.

**IV.     ADDITIONAL DEPOSITIONS**

Prior to the close of discovery in March 2006, Plaintiff had produced only 17,837 pages of documents.   Since then, Plaintiff has produced over 150,000 records (including e-mails and electronic documents).  To comply with the March 30, 2006, discovery cut off, Defendants noticed and took the depositions of the key Nevada Medicaid employees prior to that date; these depositions included, among others, three pharmacy managers, two pharmacy program employees, three Medicaid Administrators, three assistant Medicaid Administrators, the Director of DHHS, the managed care program manager, the rates program manager, and the compliance manager.  At the time these depositions were taken, Defendants did not have these witnesses' e-mail or any of the other 150,000 documents.  Defendants have not sought to have the Court dismiss the case in response to this late production, as Plaintiff has done in its motion against

4

Baxter, Dkt. Entry No. 2786.  Rather, Defendants ask that the Court put them in the position they would have been in, if Plaintiff had made a timely production.

Although Defendants' review of these documents is ongoing, there can be no doubt that the 150,000 responsive documents produced after the close of discovery contain information about which Defendants would have wanted to depose Plaintiff's employees.  For example, in Defendants' recently filed reply brief in support of Defendants' Joint Motion for Redress for Spoliation of Evidence, Dkt. Entry No. 2980, Defendants attached as Exhibit U an e-mail from Charles Duarte, current Medicaid director, to Michael Willden, director of DHHS:

> In their letter, the NACDS suggest that this reduction [from AWP-10 to AWP -15] was taken without any evaluation.  For your information, we initiated this with the support of OIG as well as Tom Scully, CMS Medicaid Administrator.  Mr. Scully, and the OIG, have been urging states to increase the discount up to as high as 21%.  Additionally, we had our rates contractor, Myers and Stauffer conduct a "margin" analysis to look into the continued profitability of pharmacies at the 15% discount level.  I've attached that analysis as well.  As you can see, pharmacies remain profitable at this discount rate.

This document shows that Plaintiff knew that AWP was not the pharmacists' acquisition cost, as pharmacists were profitable even at AWP -15%; it shows that OIG was urging Plaintiff to discount AWP by 21%; and it shows that Mr. Willden was informed of (and provided a copy of) the Myers & Stauffer study.

This document is one example of numerous similar documents that Plaintiff repeatedly has represented do not exist. *See* State of Nevada's Opposition to Defendants' Joint Motion for Redress for Spoliation of Evidence ("Spoliation Opposition"), Dkt. Entry No. 2961, at 12 ("[t]here is no definitive evidence that the documents defendants want to seek ever existed."). Defendants could not adequately question Plaintiff's employees about documents of which Plaintiff denied even their existence.  Indeed, even the author, Mr. Duarte, testified that he was

5

unaware of its existence.  *See* Spoliation Opp. at 12, n. 13 (stating that Mr. Duarte testified he knew of "<u>no other documents related to the [Myers and Stauffer] survey</u>") (emphasis added).

Plaintiff objects because Defendants have not identified the witnesses they intend to question or the documents they intend to use, but this is a direct result of Plaintiff's belated production of electronic documents, most of which were received on August 16, 2006 (and which are still being reviewed).  This is hardly a "predicament of [Defendants'] own making." Opp. at 12.  Had these documents been produced when requested, Defendants would have asked each and every Medicaid witness questions about them.  Had Plaintiff served completed and verified interrogatories, Defendants would have been able to question their author regarding the answers.  Defendants are not asking to reopen all depositions.  Rather, Defendants request only the opportunity to complete their review of Plaintiff's production, determine the five individuals for whom they are most in need of further testimony, and take those depositions.  Given the enormity of Plaintiff's late production (which continues to come in), Defendants should not be required to identify in advance the documents they wish to use;  instead, Defendants should have free rein to ask about any of the issues raised in these documents.[3]  By limiting the number and length of these depositions, the Court can be assured that these depositions will not be taken to "harass and annoy the State," Opp. at 12, as Plaintiff baselessly asserts.

---

[3] Moreover, Plaintiff should not be allowed a roadmap of the topics that Defendants want to address with its witnesses.  Had Plaintiff timely produced its documents, Defendants would not have been required to identify the documents in advance of the initial depositions.

6

*Respectfully submitted,*

 /s/ Christopher R. Dillon
John T. Montgomery (BBO# 352220)
Brien T. O'Connor (BBO# 546767)
Christopher R. Dillon (BBO# 640896)
Carisa A. Klemeyer (BBO# 655045)
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

*Attorneys for Schering-Plough Corporation & Warrick Pharmaceuticals Corporation on behalf of the Defendants in Nevada I and Nevada II*

Dated:  August 24, 2006

**CERTIFICATE OF SERVICE**

    I, Christopher R. Dillon, hereby certify that a true copy of the foregoing document was served upon all counsel of record in Nevada I and Nevada II electronically pursuant to Fed. R. Civ. P. 5(b)(2)(D) and CMO No. 2 on this 24th day of August, 2006, by causing a copy to be sent to LexisNexis File & Serve for posting and notification to all counsel of record.

                                                                     /s/ Christopher R. Dillon
                                                                     Christopher R. Dillon