**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF MASSACHUSETTS**

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

NO. 1456

Civil Action No. 01-CV-12257-PBS

THIS DOCUMENT RELATES TO:

Judge Patti B. Saris

*State of Arizona v. Abbott Labs Inc., et al.,*
06-CV-11069-PBS

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO**
**PLAINTIFF STATE OF ARIZONA'S MOTION FOR REMAND**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................. iii

I.   FACTUAL AND PROCEDURAL BACKGROUND ............................2

    A.   Role of "AWP" Under Federal Medicare and
    Medicaid Statutes For Drug Reimbursement ...................................2

    B.   The Arizona Action .........................................................................3

    C.   The Multidistrict Litigation Proceeding ...........................................4

II.   THE STANDARD FOR REMOVAL HAS BEEN SATISFIED..............6

III.   FEDERAL QUESTION JURISDICTION EXISTS UNDER *GRABLE*
    OVER ARIZONA'S AWP-BASED STATE LAW CLAIMS.................7

IV.   THE RECENTLY REMANDED AWP CASES DO NOT
    SUPPORT REMAND IN ARIZONA'S CASE....................................13

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

## CASES

PAGE

*Alabama v. Abbott Labs.*,
No. 2:05-cv-647-T, slip op. (M.D. Ala. Aug. 11, 2005)..........................................5,14

*Berg v. Leason*,
32 F.3d 422 (9th Cir. 1994) ........................................................................................ 12

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ...................................................................................... 11

*County of Santa Clara v. Astra USA, Inc.*,
401 F. Supp. 2d 1022 (N.D. Cal. 2005) ............................................................ *passim*

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*,
103 S.Ct. 2841 (1983) ............................................................................................... 12

*Gattegno v. Sprint Corp.*,
297 F. Supp. 2d 372 (D. Mass. 2003) ........................................................................ 14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
125 S. Ct. 2363 (2005) ...................................................................................... *passim*

*Hunter v. Greenwood Trust Co.*,
856 F. Supp. 207 (D.N.J. 1992) .............................................................................. 6,7

*Hunter v. United Van Lines*,
746 F.2d 635 (9th Cir. 1984), *cert denied*, 106 S. Ct. 180 (1985) ............................. 12

*Merrell Dow Pharms., Inc. v. Thompson*,
106 S. Ct. 3229 (1986) ................................................................................................ 5

*Minnesota v. Pharmacia Corp.*,
No. 05-1394, 2005 WL 2739297 (D. Minn. Oct. 24, 2005) ................................... 5, 16

*Montana v. Abbott Labs.*,
266 F. Supp. 2d 250 (D. Mass. 2003) ............................................................... *passim*

*Municipality of San Juan v. Corporación Para El Fomento Económico De La Ciudad Capital*,
  415 F.3d 145 (1st Cir. 2005) ..................................................................................... 9

*Natale v. Pfizer Inc.*,
  379 F. Supp. 2d 161, 181 (D. Mass. 2005), *aff'd* 424 F.3d 43 (1st Cir. 2006) ......... 5,14

*Pennsylvania v. Tap Pharm. Prods.*,
  415 F. Supp. 2d 516 (E.D. Pa. 2005) ..................................................................... 5,14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  431 F. Supp. 2d 98 (D. Mass. 2006) ........................................................................... 6

*Postal Instant Press v. Clark*,
  741 F.2d 256 (9th Cir. 1984) .................................................................................... 12

*Regis Assocs. v. Rank Hotels (Management), Ltd.*,
  894 F.2d 193 (6th Cir. 1990) ...................................................................................... 6

*Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*,
  159 F.3d 1209 (9th Cir. 1998) .................................................................................... 6

*Connecticut v. GlaxoSmithKline PLC*,
  C.A. No. 01-12257-PBS (D. Mass. Sept. 30, 2003) .................................................... 5

*T.B. Harms Co. v. Eliscu*,
  339 F.2d 823 (2d Cir. 1964) *cert denied*, 85 S. Ct. 1534 (1965) ............................... 12

*Texas v. Abbott Labs.*,
  No. A-05-CA-897-LY, slip op. (W.D. Tex. Dec. 5, 2005) ....................................... 5,14

*Va. Timberline, LLC v. Appalachian Power Co.*,
  C.A. No. 4:06-CV-00026, 2006 WL 1993557 (W.D. Va. July 13, 2006) ................. 7,8

*Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*,
  454 F.2d 38 (1st Cir. 1972) ........................................................................................ 7

*Wisconsin v. Abbott Labs.*,
  390 F. Supp. 2d 815 (W.D. Wis. 2005) .............................................................. 5,8,15

*In re Zyprexa Prods. Liab. Litig.*,
  375 F. Supp. 2d 170 (E.D.N.Y. 2005) .................................................................. 9,10

iv

STATUTES & RULES

PAGE

42 C.F.R. § 405.517(b) .................................................................................. 2

42 U.S.C. §§ 1395-1395pp ........................................................................... 2

42 U.S.C. § 1395k(a)(1) ............................................................................... 2

42 U.S.C. § 1395l(o) ..................................................................................... 2

42 U.S.C. § 1395u(o) .................................................................................... 2

42 U.S.C. § 1395u(o)(1)(C) .......................................................................... 2

42 U.S.C. § 1395u(o)(4)(A) .......................................................................... 2

42 U.S.C. §§ 1396-1396v .............................................................................. 2

42 U.S.C. § 1396a(a)(54) .............................................................................. 3

OTHER AUTHORITIES

14A Charles A. Wright et al., *Federal Practice & Procedure*
  § 3721, at 218-19 (2d ed. 1985) ................................................................ 7

16 James W. Moore, et al., *Moore's Federal Practice and Procedure*
  § 107.05 at 107-25 (3d ed. 2000) .............................................................. 6

69 Fed. Reg. 68,370, 68,371 (Nov. 18, 2004) .............................................. 10

This lawsuit is one of dozens of pharmaceutical average wholesale price ("AWP") actions that have been pending since 2001.  Many of those cases involve state law claims virtually identical to those asserted here by the State of Arizona.  Like the many other AWP actions, this case belongs in federal court.  Plaintiff's state law claims for consumer fraud and racketeering seek recovery of certain Medicare-related payments on behalf of Arizona Medicare beneficiaries.  Plaintiff bases these claims on a particular interpretation of the term "AWP" in the federal Medicare statute and regulations, thus raising a substantial question of federal law that a federal court should decide.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005).  In fact, this Court has already ruled that such state law claims present a federal question, *see Montana v. Abbott Labs.*, 266 F. Supp. 2d 250, 255 (D. Mass. 2003), and the State of Arizona's remand motion should accordingly be denied.

Plaintiff's assertion that "[e]very court to consider a motion for remand filed by a State Attorney General in AWP litigation has rejected federal jurisdiction in cases involving solely AWP claims" overstates its case.  Plaintiff's Memorandum in Support of Motion for Remand ("Pl. Remand Mem.") at 1.  Although this Court remanded several cases, prior to the *Grable* decision, because the Medicare statute did not include a private cause of action, *Grable* held that a private right of action is not a prerequisite for federal jurisdiction.  While post-*Grable* district courts in Alabama, Pennsylvania, Wisconsin, Texas, and Minnesota have remanded similar cases to state court, those courts granted remand on grounds that conflict with one another and with this Court's earlier *Montana*

1

ruling, and are therefore inapposite.  Moreover, unlike this case, the other post-*Grable* AWP cases all centered on the question of whether removal was timely, and consequently, those decisions did not adequately address the issue of whether federal jurisdiction existed.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Role of "AWP" Under Federal Medicare and Medicaid Statutes for Drug Reimbursement

The federal Medicare program provides health insurance to individuals age 65 and older and to other qualifying individuals.  *See* 42 U.S.C. §§ 1395-1395pp.  Part B of Medicare covers, *inter alia*, certain categories of outpatient drugs, including physician-administered drugs ("Covered Drugs"), such as chemotherapy treatments.  *See* 42 U.S.C. § 1395k(a)(1).  Part B generally pays 80 percent of the allowable amount for a particular medical service or pharmaceutical.  42 U.S.C. § 1395l(o).  The beneficiary is responsible for the remaining 20 percent as a co-payment.  Until 2004, Covered Drugs were reimbursed at "the lower of the actual charge on the Medicare claim for benefits or 95 percent of the national average wholesale price of the drug or biological."  42 C.F.R. § 405.517(b); 42 U.S.C. § 1395u(o).[1]

The Medicaid program is a joint state-federal program that provides medical care, including prescription drug coverage.  *See generally* 42 U.S.C. §§ 1396-1396v.  Each participating state sets its own rules, consistent with federal guidelines, for eligibility and

---

[1] As of January 1, 2005, the reimbursement formula for Covered Drugs no longer depends on AWP.  *See* 42 U.S.C. § 1395u(o)(1)(C).  During 2004, Covered Drugs were reimbursed at 85% of AWP.  *See* 42 U.S.C. § 1395u(o)(4)(A).

type of medical care, and receives funding from the federal government.  Many state

Medicaid programs reimburse pharmacists and other providers for dispensing drugs.  *See*

42 U.S.C. § 1396a(a)(54).  Some states, including Arizona, base their Medicaid

reimbursements in part on AWPs.

      B.       The Arizona Action

On December 6, 2005, plaintiff filed a complaint in the Superior Court of

Maricopa County, Arizona, against numerous pharmaceutical manufacturers.  The

Complaint alleges that each defendant drug manufacturer caused the Arizona Health Care

Cost Containment System ("Arizona's Medicaid program") to overpay for that

company's pharmaceutical products by reporting allegedly inflated AWPs and other

pricing information on which Arizona's Medicaid program bases its reimbursement rates

for prescription drugs.  (Complaint ¶¶ 1-16.)  Plaintiff also brings claims in its *parens*

*patriae* capacity on behalf of all Arizona citizens who are Medicare Part B beneficiaries.

Plaintiff alleges that by reporting allegedly inflated AWP pricing information, each

defendant caused Medicare beneficiaries in Arizona to make inflated Medicare Part B co-

payments for defendants' prescription drugs.  (Complaint ¶¶ 9-10, 133-43.)  Plaintiff

further alleges that by reporting allegedly inflated AWP pricing information, defendants

have caused individuals to overpay for both physician-administered and self-administered

drugs for which AWP is used as a benchmark for programs outside the Medicare Part B

program.  (Complaint ¶¶ 11-13, 18-21, 156-74.)  Plaintiff seeks to recover the amounts

allegedly overpaid for all such payments, including co-payments for Medicare Part B

beneficiaries, as well as other legal, declaratory, and injunctive relief.

3

Defendants timely removed this case on January 5, 2006.  Pursuant to MDL Rule

7.5(e), defendants filed a Notice of Related Action with the Judicial Panel on

Multidistrict Litigation ("JPML") on January 11, 2006, designating this case as a related

action to the other AWP cases that have already been transferred to the AWP MDL.  The

JPML issued a conditional transfer order ("CTO") on January 30, 2006, which plaintiff

opposed.  On June 16, 2006, the JPML denied plaintiff's motion to vacate the CTO and

ordered this case to be transferred to the MDL.

C.     The Multidistrict Litigation Proceeding

Other cases initiated by state attorneys general have been transferred to the MDL,

including four cases brought by the states of Minnesota, Montana, and Nevada.[2]  Like

Arizona, those states alleged that defendants violated state statutes (and state common

law) by, *inter alia*, reporting inflated AWPs that increased the amount of Medicare Part B

co-payments, and sued in their *parens patriae* capacity to recover such payments on

behalf of their Medicare beneficiaries.  All four cases were originally filed in state courts,

but defendants removed them on the ground that the state-law AWP claims raised a

substantial federal question.  *See Montana*, 266 F. Supp. 2d at 254-55.

In *Montana,* this Court found that state law *parens patriae* claims to recover

Medicare co-payments on behalf of a state's Medicare beneficiaries, like Plaintiff's

claims, present a federal question because they cannot be resolved without reference to

the Medicare statute.  *Id.* at 255.  Despite this conclusion, the Minnesota case was

---

[2] Nevada filed two separate suits, each substantively identical but against different defendants.

4

remanded on the basis that the Medicare statute did not create a private cause of action. *See id*. at 256.[3]  On a motion to reconsider, this Court again ruled that it was bound by First Circuit precedent that interpreted *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 106 S. Ct. 3229 (1986), to require a statutory cause of action in order to exercise federal jurisdiction. *See Minnesota v. Pharmacia Corp.,* 278 F. Supp. 2d 101, 103 (D. Mass. 2003).[4]

Subsequently, in June 2005, the United States Supreme Court held that a private right of action is ***not*** required in order to confer federal question jurisdiction on state law claims that depend on the resolution of federal law. *See Grable*, 125 S. Ct. at 2368. Within thirty days of this decision, thirteen AWP cases pending in state courts around the country were removed on the basis that *Grable* made them removable.  Five of these cases, brought by the states of Alabama, Pennsylvania, Wisconsin, Minnesota, and Texas, were remanded before the JPML issued its transfer order.[5]  The remaining eight cases, brought by New York, Kentucky, Illinois, and Florida,[6] were transferred to this Court.  In

---

[3] There were alternative grounds for federal jurisdiction in the Montana case and the Nevada cases. *See Montana*, 266 F. Supp. 2d at 257-60.  One Nevada suit was remanded, however, because one defendant did not timely consent to removal. *Id.* at 260-63.

[4] Relying on these decisions, this Court subsequently remanded seven suits brought by the states of Connecticut and New York. *See Connecticut v. GlaxoSmithKline PLC*, C.A.. No. 01-12257-PBS (D. Mass. Sept. 30, 2003) (Pl. Remand Mem. Ex. A).

[5] *See Alabama v. Abbott Labs*., No. 2:05cv647-T, slip op. (M.D. Ala. Aug. 11, 2005) (Pl. Remand Mem. Ex. B); *Pennsylvania v. Tap Pharm. Prods.*, 415 F. Supp. 2d 516 (E.D. Pa. 2005); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis. 2005); *Minnesota v. Pharmacia Corp.*, 2005 WL 2739297 (D. Minn. Oct. 24, 2005) (Pl. Remand Mem. Ex. E); *Texas v. Abbott Labs.*, No. A-05-CA-897-LY, slip op. (W.D. Tex. Dec. 5, 2005) (Pl. Remand Mem. Ex. C).

[6] New York and Kentucky have each filed three substantively identical cases against three separate defendants.

March 2006, the cases brought by New York, Kentucky, and Illinois were remanded because removal was untimely.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 98, 109 (D. Mass. 2006).

Here, removal was timely, and plaintiff does not argue to the contrary.  The only question for decision here is whether, post-*Grable*, plaintiff's state claim to recover Medicare Part B co-payments on behalf of Arizona Medicare beneficiaries raises a substantial federal question.

## II.    THE STANDARD FOR REMOVAL HAS BEEN SATISFIED.

Removal is an important statutory right that Congress has expressly granted to defendants in specified classes of cases.  *See Regis Assocs. v. Rank Hotels (Management), Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990) ("A defendant is entitled to have the suit removed to a proper federal court as a matter of right, on complying with the conditions prescribed by [the removal] statute").  Despite plaintiff's rhetoric about its right to choose its forum and "strict construction" of the removal statute, courts and commentators alike have recognized that "if the requirements of the removal statute are met, the right to remove is absolute."  *Id.* (citation omitted); *see also* 16 James W. Moore, et al., *Moore's Federal Practice and Procedure* § 107.05 at 107-25 (3d ed. 2000) (same); *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("When a plaintiff chooses to plead what 'must be regarded as a federal claim,' then 'removal is at the defendant's option.'") (citations omitted).  Accordingly, a federal court should "be cautious about remand, lest it erroneously deprive a defendant of

6

the right to a federal forum." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 211 (D.N.J. 1992) (quoting 14A Charles A. Wright et al., *Federal Practice & Procedure* § 3721, at 218-19 (2d ed. 1985)); *see Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38, 41 (1st Cir. 1972) (holding that "a defendant has the right to have a federal question decided in a federal forum").  As demonstrated below, plaintiff has not identified any grounds that would justify denying defendants their statutory right to a federal forum.

## III.    FEDERAL QUESTION JURISDICTION EXISTS UNDER *GRABLE* OVER ARIZONA'S AWP-BASED STATE LAW CLAIMS.

Federal question jurisdiction exists over state law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368.  Plaintiff's AWP-based *parens patriae* claims on behalf of Medicare beneficiaries satisfy this test because plaintiff's theory of its case turns on the meaning of AWP under the Medicare statute, implicates substantial federal interests in the operation of the Medicare and Medicaid programs, and will not disrupt any congressionally approved balance of responsibilities between the state and federal courts.

*First*, the meaning of AWP under the Medicare statute is in dispute and will determine whether plaintiff can succeed on its theory of the case.  *See id.* (holding federal statute's meaning is an "essential element" of state law claim when "the meaning of the federal statute is actually in dispute"); *Va. Timberline, LLC v. Appalachian Power Co.*,

C.A. No. 4:06-CV-00026, 2006 WL 1993557, at *2 (W.D. Va. July 13, 2006) (finding that federal question jurisdiction existed when the meaning of a federal law was a "primary issue contested in this case").  As this Court previously found, although the term AWP is not defined by federal statute or regulation, there is evidence that Congress understood that AWPs did not represent the actual cost providers paid for drugs:

> Pharmacia contends that Minnesota's *parens patriae* claims on behalf of Medicare beneficiaries require a determination of whether the AWPs reported by Pharmacia comport with the meaning of AWP under the Medicare statute; Pharmacia argues that Congress has sanctioned the "spread."  Minnesota replies that its claims do not require reference to the Medicare statutes. . . .  Pharmacia readily wins this dispute, because an essential element of Minnesota's *parens patriae* claims is proof of a discrepancy between the AWPs reported . . . and the meaning of AWP under the Medicare statute.

*Montana*, 266 F. Supp. 2d at 255.  Similarly, Arizona cannot prove its state law claims on behalf of Medicare beneficiaries without both a court determining it is appropriate to decide what AWP under the Medicare statute was understood to mean, and by adopting plaintiff's interpretation of that understanding.  *See id.*; *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 823 (W.D. Wis. 2005).

While plaintiff contends here that "[f]ederal law is barely even relevant" to its asserted causes of action, *see* Pl. Remand Mem. at 9, this is not the case.  Not only is plaintiff's contention contrary to this Court's *Montana* decision, but plaintiff's counsel has taken the opposite position in submissions made to this Court in related AWP actions.  Class counsel, also plaintiff's counsel here, has argued that the meaning of AWP under the federal Medicare statute is central to their ability to establish defendants' liability.

*See* Plaintiffs' Response To The Track Two Defendants' Submission Regarding the Meaning of AWP, at 2-3 (No. 2995).  Although defendants disagree that the Court's adoption of plaintiff's construction of AWP under the statute would alone be determinative of defendants' liability, it is undeniable that plaintiffs in all of the AWP cases asserting Medicare Part B claims, like the State of Arizona, rely on a particular interpretation of AWP under the federal statute to support their claims.  Thus, the existence of a federal question could not be more self-evident.

  *Second*, plaintiff's AWP-based state law claims brought on behalf of its Medicare beneficiaries are substantial because they raise an important federal interest.  *See Grable*, 125 S. Ct. at 2367 (a substantial federal question depends on "a serious federal interest in claiming the advantages thought to be inherent in a federal forum").  Post-*Grable* decisions make clear that substantial federal issues include "those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction and those that impact a complex federal regulatory scheme."  *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1027-28 (N.D. Cal. 2005) (citations omitted) (finding federal question jurisdiction over state law claims that depended on the interpretation of the Medicaid pricing statute); *see also Municipality of San Juan v. Corporación Para El Fomento Económico De La Ciudad Capital*, 415 F.3d 145, 149 n.6 (1st Cir. 2005) (federal jurisdiction proper over state law claims that depend on a state agency's "adherence to the intricate and detailed set of federal [housing] regulatory requirements" and "where federal grant monies" are at issue); *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) ("[T]he substantial federal funding

9

provisions involved [in Medicaid programs] and the allegations about the violation of federal law" warrant federal jurisdiction).

Here, the interpretation of AWP under the Medicare statute is of paramount federal interest. The Medicare program is an entirely federal program. Accordingly, federal courts have a special responsibility to entertain claims on behalf of Medicare beneficiaries alleging that the program has been abused. If a court rules that plaintiff can prevail on its theory of fraud and can recover the 20 percent Medicare co-payment on behalf of its citizens, it follows that the federal government would be entitled to recover the remaining 80 percent of the payment for the same violation. This potential outcome implicates hundreds of millions of dollars for the federal government and turns on the meaning of AWP used in the federal statute. Moreover, if this case is remanded and a state court judge chooses to determine what AWP was understood to mean under the Medicare statute for purposes of this case, there is a grave risk that AWP will be interpreted differently in different cases. Although AWP is no longer used in the Medicare program, it continues to be used in many state Medicaid programs, including Arizona's, which are financed in large part with federal funds.[7] Thus, inconsistent determinations of what AWP was understood to mean in these various cases would create confusion in the administration of federally-supported Medicaid programs in all states. *See County of Santa Clara*, 401 F. Supp. 2d at 1028 (holding federal Medicaid pricing

---

[7] For example, the federal government currently pays 67% of the cost of Arizona's Medicaid program. *See* 69 Fed. Reg. 68,370, 68,371 (Nov. 18, 2004).

issues were substantial because "[d]etermination of the federal issues in this case could heal or injure the complex regulatory [Medicaid] scheme").

*Third*, exercising federal question jurisdiction in this case will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2367-68. As one court that directly considered the issue concluded, there is "no congressionally approved balance of judicial responsibilities" for pharmaceutical pricing cases because these cases are already being litigated in both federal and state court. *County of Santa Clara*, 401 F. Supp. 2d at 1029. Over ninety pharmaceutical pricing cases have been transferred to the AWP MDL to date. These cases include claims on behalf of the same Arizona Medicare beneficiaries plaintiff seeks to represent in this case, state law claims brought by other states that are nearly identical to plaintiff's Medicare-related state law *parens patriae* claims, and many additional related claims. *See, e.g., Montana*, 266 F. Supp. 2d at 260, 263 (exercising supplemental jurisdiction over AWP-based state law claims brought by Montana and Nevada). Moreover, it will be the "rare" claim that a state will bring on behalf of its citizens to recover payments made under a federal program. *Grable*, 125 S. Ct. at 2368; *see also County of Santa Clara*, 401 F. Supp. 2d at 1031 ("Violation of federal law will rarely be a presumptively conclusive element of . . . unfair competition" claims); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("[I] t is likely to be the rare [state law claim] … that seeks to assert a private right of action for violation of a federal law otherwise lacking one").

Plaintiff fails to address the *Grable* standard in any meaningful way. Instead, relying on Ninth Circuit precedent that predates *Grable*, plaintiff asserts that remand is

proper because it "is not required to prove a violation of federal law" to prevail on its state law claims.[8]  Pl. Remand Mem. at 9-10.  Plaintiff nevertheless acknowledges, as it must, that federal jurisdiction exists where the interpretation of a federal law is an essential component of an asserted cause of action.  *Id.* at 10; *see Grable*, 125 S. Ct. at 2366; *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 103 S. Ct. 2841, 2846 (1983).  Indeed, three of the four cases on which plaintiff relies recognize that federal question jurisdiction exists when, as in this case, the success of the plaintiff's state law claims depends on a disputed question of federal law.[9]  *See Hunter v. United Van Lines*, 746 F.2d 635, 644 (9th Cir. 1984), *cert denied*, 106 S. Ct. 180 (1985) (federal question jurisdiction arises when "[a] substantial proposition of federal law" is a "'direct and essential element of the plaintiff's cause of action.'") (citations omitted); *Berg v. Leason*, 32 F.3d 422, 423 (9th Cir. 1994), (State law claims "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law.") (citations omitted); *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964), *cert denied*, 85 S. Ct. 1534 (1965) ("Even though the [plaintiff's] claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application" of federal law.").

---

[8] Plaintiff's discussion of the "artful pleading" doctrine is unnecessary, Pl. Remand Mem. at 6-7, because *Grable* applies to the other exception to the well-pleaded complaint rule.  *See Grable*, 125 S. Ct. at 2367 ("[F]or nearly 100 years this Court [has recognized] . . . federal question jurisdiction . . . over state-law claims that implicate significant federal issues") (citations omitted).

[9] The fourth case, *Postal Instant Press v. Clark*, only cursorily considered whether federal jurisdiction existed under the federal trademark act for a state law claim that involved a federally created trademark, but in which the validity of the trademark was not at issue.  *See* 741 F.2d 256, 257 (9th Cir. 1984).

Plaintiff also argues that the lack of a private right of action and federal preemption "weigh heavily" in favor of remand.  Pl. Remand Mem. at 11-13.  However, under *Grable*, the combination of the lack of a federal cause of action and federal preemption are merely "an important clue to Congress's conception of the scope" of federal question jurisdiction.  125 S. Ct. at 2370.  *Grable* does not "bar federal jurisdiction over state law claims in the absence of preemption or a federal cause of action," but "merely held that there was no 'welcome mat' inviting federal claims in such cases."  *County of Santa Clara*, 401 F. Supp. 2d at 1030 (quoting *Grable*).  These two factors only become relevant when a state law claim presents a "slim connection to federal law."  *See id.* at 1031.  In light of the substantial importance of the meaning of AWP to plaintiff's theory of recovery on its Medicare Part B claims, the existence of federal jurisdiction is evident and plaintiff's remand motion should be denied.

## IV.    THE RECENTLY REMANDED AWP CASES DO NOT SUPPORT REMAND IN ARIZONA'S CASE.

Plaintiff's reliance on pre-*Grable* cases that were remanded for lack of a private right of action is entirely misplaced.  *See* Pl. Remand Mem. at 8-10 (discussing cases).  Contrary to plaintiff's assertions, *see id.* at 9-10, the lack of a private right of action was the sole reason that this Court remanded the claims of Minnesota, Connecticut, and New York.  *See County of Santa Clara*, 401 F. Supp. 2d at 1030 (rejecting *Montana* as precedent for granting remand because it premised remand on the absence of a private right of action).

13

Although post-*Grable* district courts in Alabama, Pennsylvania, and Texas reached the opposite conclusion from this Court concerning the existence of a substantial federal question, these decisions are unpersuasive.[10]  For example, the Alabama district court summarily rejected federal question jurisdiction in a cursory, unreasoned opinion. *See Alabama v. Abbott Labs.*, No. 2:05cv647-T, slip op. at 1 (M.D. Ala. Aug. 11, 2005) (Pl. Remand Mem. Ex. B).  Although the Pennsylvania district court analyzed the issue more thoroughly, defendants submit that the court failed to correctly understand the role that the term AWP plays in determining Medicare drug reimbursements.  Despite having the AWP case on its docket for less than two months, the Pennsylvania district court ignored this Court's previous holding that the meaning of AWP under the Medicare statute presented a substantial federal question, and concluded that Pennsylvania need not prove a violation of federal law to prevail on its AWP-based state law claims. *Pennsylvania v. Tap Pharm. Prods.*, 415 F. Supp. 2d 516, 524 (E.D. Pa. 2005).  As previously explained, this finding directly contradicts previous decisions of this Court. Finally, the Texas district court merely adopted the Pennsylvania district court's

---

[10] Plaintiff also claims that this Court should award attorney's fees and costs to the State because other federal courts have considered whether AWP cases should be remanded.  *See* Pl. Remand Mem. at 14.  This argument, however, has been specifically rejected by a District of Massachusetts court which refused to award costs and fees where a plaintiff contended that the "overwhelming majority of remand decisions to date containing similar claims . . . have been in favor of remand."  *Gattegno v. Sprint Corp.*, 297 F. Supp. 2d 372, 378 (D. Mass. 2003); *see also Natale v. Pfizer Inc.*, 379 F. Supp. 2d 161, 181 (D. Mass. 2005), *aff'd* 424 F.3d 43 (1st Cir. 2006) (declining to award costs and attorney's fees even though a number of courts had rejected defendant's argument for removal).  Moreover, the apparent federal question raised by plaintiff's claims on behalf of Medicare Part B beneficiaries means that defendants' removal was entirely supportable.

reasoning and is thus unpersuasive for the same reason.  *See Texas v. Abbott Labs*, No. A-05-CA-897-LY, slip op. at 6 (W.D. Tex. Dec. 5, 2005) (Pl. Remand Mem. Ex. C).

In contrast, the Wisconsin district court rejected the Pennsylvania court's reasoning and correctly agreed with this Court that the meaning of AWP under the Medicare statute "presented a substantial and disputed question of federal law." *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 823 (W.D. Wis. 2005).  Nevertheless, the Wisconsin district court granted remand because it incorrectly concluded that (i) there was no strong federal interest in interpreting the Medicare statute and (ii) because Congress had not preempted states' use of their consumer protection laws to regulate medical billing, federal courts would subsequently be inundated with such claims.  *See id.* The Wisconsin district court also dismissed the fact that similar cases were already in federal court because they were decided before *Grable* and "emphasized the importance preserving the balance between the state and federal systems."  *Id.* at 823-24

The *Santa Clara* court persuasively rejected this aspect of the Wisconsin court's decision, finding that there is "no congressionally approved balance of judicial responsibilities" for pharmaceutical pricing cases.  *County of Santa Clara*, 401 F. Supp. 2d at 1029.  That court found the Wisconsin district court's reasoning flawed because it improperly conflated the federal interest inquiry, which determines the substantiality of a federal issue, with the judicial balance inquiry.  *See id.* at 1030.  The court in *Santa Clara* also rejected the Wisconsin court's view that the presence of pharmaceutical pricing cases in federal court was not relevant to the judicial balance inquiry.  *See id.*  In light of

15

the criticisms articulated in the *Santa Clara* opinion, this Court should not follow the Wisconsin decision.

The Minnesota district court simply adopted the Wisconsin court's analysis of the federal-state judicial balance and, therefore, its decision is unpersuasive for the same reasons. *See Minnesota v. Pharmacia Corp.*, No. 05-1394, 2005 WL 2739297, at *4 (D. Minn. Oct. 24, 2005) (Pl. Remand Mem. Ex. E); *see also County of Santa Clara*, 401 F. Supp. 2d at 1030 n.4 (rejecting *Minnesota* as unpersuasive). Additionally, the Minnesota court misconstrued this Court's holding in *Montana* to conclude that the opinion also relied on the lack of federal preemption as a basis for rejecting federal question jurisdiction. *Minnesota*, 2005 WL 2739297, at *3. As discussed above, this Court remanded the state's Medicare beneficiary claims solely because the Medicare statute lacked a private cause of action. *See Montana*, 266 F. Supp. 2d at 256. Also, the Minnesota court mischaracterized this Court's discussion of a uniform interpretation of AWP under the Medicare statute as the only federal interest at issue in the AWP cases. *See Minnesota,* 2005 WL 2739297, at *3. As this Court recognized, however, more than uniformity was at stake because "[t]he adjudication of whether the term 'average wholesale price' in the Medicare statute embraces a 'spread' could have broad implications for Medicare reimbursements and co-payments." *Montana*, 266 F. Supp. 2d at 255.

These conflicting decisions, largely based on superficial analyses conducted by courts unfamiliar with this complex area of Medicare law, do not compel remand in this case and plaintiff's reliance on them is misplaced. Moreover, they all involved the

16

question of whether removal was timely, which is not an issue here.   In contrast, this

Court's prior decision in *Montana* and the admitted importance of a particular

interpretation of AWP under the Medicare statute to plaintiff's theory of liability both

demonstrate that there is an important federal question at issue in this litigation and

plaintiff's remand motion should accordingly be denied.

## CONCLUSION

For all of the above reasons, plaintiff's motion to remand should be denied.


Dated:   Boston, Massachusetts
         August 25, 2006
                                        Respectfully Submitted,


                                        By:   /s/ Lucy Fowler
                                              _____

                                              Nicholas C. Theodorou (BBO # 496730)
                                              Lucy Fowler (BBO #647929)
                                              FOLEY HOAG LLP
                                              155 Seaport Blvd.
                                              Boston, Massachusetts  02210
                                              Tel: (617) 832-1000

                                              D. Scott Wise (admitted *pro hac vice*)
                                              Michael S. Flynn (admitted *pro hac vice*)
                                              Kimberley D. Harris (admitted *pro hac vice*)
                                              DAVIS POLK & WARDWELL
                                              450 Lexington Avenue
                                              New York, New York  10017
                                              Tel: (212) 450-4000

                                              Attorneys for AstraZeneca Pharmaceuticals LP

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on August 25, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Lucy Fowler_____
Lucy Fowler