# EXHIBIT 2
## [REDACTED VERSION]

HIGHLY CONFIDENTIAL

# EXPERT DECLARATION OF STEVEN J. YOUNG IN SUPPORT OF THE FOLLOWING TRACK 2 DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION:

ABBOTT LABORATORIES, AMGEN INC., AVENTIS PHARMACEUTICALS INC., BAXTER HEALTHCARE CORP., BAXTER INTERNATIONAL INC., BAYER CORPORATION, DEY, INC., FUJISAWA HEALTHCARE INCORPORATION, FUJISAWA USA, INC., HOECHST MARION ROUSSEL, INC., IMMUNEX CORPORATION, PFIZER, INC., PHARMACIA CORP., PHARMACIA & UPJOHN, AND AVENTIS BERING LLC, N/K/A ZLB BEHRING LLC.

JUNE 15, 2006

[REDACTED VERSION]

Subject To Protective Order

**TABLE OF CONTENTS**        **HIGHLY CONFIDENTIAL**

Page

QUALIFICATIONS AND COMPENSATION ..................................................... 1  
SCOPE OF REPORT ......................................................................................... 1  
SUMMARY OF OPINIONS ................................................................................ 3  
    I.    REIMBURSEMENT OF MULTI-SOURCE DRUGS ........................ 4  
    II.   PROPOSED CLASS 1 ................................................................... 5  
    III.  PROPOSED CLASS 2 ................................................................... 6  
    IV.  PROPOSED CLASS 3 ................................................................... 6  
ANALYSIS ........................................................................................................... 8  
    I.    MULTI-SOURCE DRUGS AND THEIR REIMBURSEMENT UNDER MEDICARE PART B ........................................................ 8  
        A.    Regulatory Background ..................................................... 8  
        B.    Multi-Source Drug Reimbursement Under Medicare Part B ........ 10  
    II.   PROPOSED CLASS 1 ................................................................. 15  
        A.    The Vast Majority Of The Named Plaintiffs' Drug Encounters Do Not Meet The Proposed Class Definition Because They Were Not Paid Based On The AWP For The Subject Drug Identified For The Track 2 Defendant ........................................... 15  
            1.    The Encounter Relates To Inpatient Hospital Stay And Is Reimbursed Under Medicare Part A – Any Co-Payment Was Not Based On The AWP Of The Subject Drug ................................................................. 15  
            2.    The Encounter Was Reimbursed Under Medicare Part B After The Implementation Of ASP In 2005 – Any Co-Payment Was Not Based On The AWP Of The Subject Drug ........................................................ 16  
            3.    The Encounter Was Reimbursed Under The Medicare Hospital Outpatient Prospective Payment System (Hospital OPPS) – Any Co-Payment Was Not Based On The AWP Of The Subject Drug ........................ 17  
            4.    The Plaintiff Either Paid Nothing For The Subject Drug, Or Any Payment Made By The Plaintiff Was Not Based On The AWP For The Subject Drug ....................... 19

**TABLE OF CONTENTS**
(continued)

**HIGHLY CONFIDENTIAL**

|  |  |  |  | Page |
|---|---|---|---|---|
|  |  | 5. | The Encounter Involved A Multi-Source Drug, And Reimbursement For The Multi-Source Drug Was Not Based On The AWP For The Subject Drug | 22 |
|  |  | 6. | For The Remaining 6% There Is Conflicting Information Regarding Supplemental Insurance and Medicare Coverage For the Subject Drug | 24 |
|  | B. | A Plaintiff-By-Plaintiff Assessment For Class 1 Confirms That 4 of the 6 Proposed Class Representatives Are Not Members Of The Proposed Class Because They Did Not Pay For A Subject Drug Identified For A Track 2 Defendant Based On AWP | | 26 |
| III. | PROPOSED CLASS 2 | | | 33 |
|  | A. | Class Definition and Overall Class Characteristics | | 33 |
|  | B. | The Vast Majority Of The Named Plaintiffs' Drug Encounters Do Not Meet The Proposed Class Definition For Class 2 Because They Were Not Paid Based On the AWP For the Subject Drug Identified For The Track 2 Defendant | | 35 |
| IV. | PROPOSED CLASS 3 | | | 37 |
|  | A. | Class Definition and Overall Class Characteristics | | 37 |
|  | B. | The Variability Between TPPs Requires A TPP-By-TPP Analysis For Each Proposed Class 3 Plaintiff | | 39 |
|  |  | 1. | Massachusetts TPPs Are Typically Large And Sophisticated Organizations With Significant Knowledge Of Drug Acquisition Cost | 40 |
|  |  | 2. | TPPs Possess Competitive Leverage | 41 |
|  |  | 3. | TPP Drug Reimbursements Cannot Be Considered In Isolation Due To Cross-Subsidization | 42 |
|  |  | 4. | Health And Welfare Funds Obtain The Benefit Of The TPP's Network Contracts And The Related Fee Schedule Structures | 43 |
|  |  | 5. | Summary Of TPP-By-TPP Issues | 46 |
|  | C. | Individual Issues That Must Be Assessed Within Each TPP | | 46 |
|  | D. | Conclusion Regarding The Proposed Class 3 | | 47 |

## QUALIFICATIONS AND COMPENSATION

1. I have been a consultant to the health care industry for more than twenty years. I have substantial experience with health insurance reimbursement, claims processing, pharmaceutical pricing and distribution channels, and Government pricing in the health care industry. I have previously outlined my experience and qualifications ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and Exhibit 2a of that Declaration. In addition, I have provided an updated summary of my recent testimony in Exhibit 1a of this report. To the extent my opinions have been addressed in previous expert reports ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ will reference those reports and not repeat that information in this report. A true and correct copy of the materials cited here in is submitted with this Declaration.

2. I have been retained by counsel for the defendants and am being compensated at an hourly rate of $475. No portion of my compensation depends upon the nature of my findings or on the outcome of this matter.

3. A list describing the data and information I relied upon in preparing this report is attached as Exhibit 1.

## SCOPE OF REPORT

4. I understand that the plaintiffs have asked the Court to certify the following three classes:

### Class 1: Medicare Part B Co-Payment Class

All natural persons nationwide who made, or who incurred an obligation enforceable at the time of judgment to make, a co-payment based on AWP for a Medicare Part B covered Subject Drug that was manufactured by Abbott, Amgen, The Aventis Group, Baxter, Dey, Fujisawa, Immunex, Pfizer, Pharmacia, The Sicor Group and Watson. Excluded from the class are those who made flat co-payments, who were reimbursed fully for any co-payments, or who have the right to be fully reimbursed; and the residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana, and Virginia (where consumer protection statutes do not permit class actions).

The proposed Class Period for Class 1 is January 1, 1995 to January 1, 2005.

**HIGHLY CONFIDENTIAL**

### Class 2: Third-Party Payor MediGap Supplemental Insurance Class

All Third-Party Payors who made reimbursements for drugs purchased in Massachusetts, or who made reimbursements for drugs and have their principal place of business in Massachusetts, based on AWP for a Medicare Part B covered Subject Drug that was manufactured by Abbott, Amgen, The Aventis Group, Baxter, Dey, Fujisawa, Immunex, Pfizer, Pharmacia, The Sicor Group and Watson.

The proposed Class Period for Class 2 is January 1, 1995 to January 1, 2005.

### Class 3: Consumer and Third-Party Payor Class for Medicare Part B Drugs Outside of the Medicare Context

All natural persons who made or who incurred an obligation enforceable at the time of judgment to make a payment for purchases in Massachusetts, and all Third-Party Payors who made reimbursements based on AWP as a pricing standard and have their principal place of business in Massachusetts or who have made reimbursements for Medicare Part B consumers in Massachusetts, for a physician-administered Subject Drug that was manufactured by Abbott, Amgen, The Aventis Group, Bayer, Baxter, Dey, Fujisawa, Immunex, Pharmacia, The Sicor Group and Watson. Included within this class are natural persons who paid coinsurance (*i.e.*, co-payments proportional to the reimbursed amount) for a Subject Drug purchased in Massachusetts, where such coinsurance was based upon the use of AWP as a pricing standard. Excluded from this Class are any payments or reimbursements for generic drugs that are based on MAC and not AWP.

The proposed Class Period for Class 3 is January 1, 1991 to the present.

5. I was asked, in connection with Track 2 class certification proceedings, to analyze the named plaintiffs' drug encounters[1] involving Track 2 Subject Drugs[2] to determine whether each drug encounter resulted in a named plaintiff incurring an obligation to pay based on AWP for the Subject Drug as required by the class definitions.

---

[1] Throughout this report I use the term "drug encounter" to describe each time a specific Subject Drug appears associated with a named plaintiff's claim against a Track 2 Defendant based on that drug. There are often multiple drug encounters associated with a single clinic visit and reimbursement claim because more than one Subject Drug was administered during the clinic visit. I have analyzed each drug individually because different circumstances may apply to individual drugs, such as whether each drug is covered by Medicare and/or supplemental insurance, whether the drug is a single source or a multi-source drug, etc.

[2] A "Subject Drug" is a drug that has been appropriately identified by plaintiffs for a specific Track 2 Defendant in the revised Appendix A provided in the "[Proposed] Consolidated Order Re: Motion For Class Certification Track 2," and has not been stricken by this Court.

**HIGHLY CONFIDENTIAL**

6. My analysis of the named plaintiffs' drug encounters has required a detailed review of documentation for each encounter, including the Explanation of Medicare Benefits ("EOMB"), the Explanation of Benefits ("EOB") for the supplemental insurance, supplemental insurance coverage documentation, provider billings or statements, remittance advice, evidence of the source of any multi-source drugs, and other information. Each must be analyzed to determine whether the named plaintiff incurred a responsibility to pay for the encounter based on the AWP for the Subject Drug.

7. I was also asked to consider whether class treatment under the framework of the three proposed classes is feasible considering the complexity of the analysis required to determine whether any given drug encounter for a named plaintiff resulted in the named plaintiff incurring an obligation to pay based on AWP for the Subject Drug.

8. I have set forth the results of my analysis and the opinions I have formed below.

## SUMMARY OF OPINIONS

9. Whereas the drugs named for the Track 1 Defendants are primarily branded and oncology drugs, the Subject Drugs named for the Track 2 Defendants are predominately multi-source drugs administered primarily in the hospital setting ("Hospital Products"). For example, the Track 2 Subject Drugs include sodium chloride solution, also known as saline. In fact, over 70% (Class 1), over 80% (Class 2), and over 90% (Class 3) of the identified Track 2 drug encounters relate to multi-source drugs.

10. The reports issued by ▬▬▬ and myself in connection with proceedings in Track 1[3] explain that, as a general matter, a series of individual inquiries must be undertaken, on a drug encounter by drug encounter basis, to determine whether a given drug encounter meets the definitions of a proposed class. This analysis is significantly more complex for the Track 2 Subject Drugs because, for multi-source drugs and Hospital Products, the reimbursement structures adopted by

**HIGHLY CONFIDENTIAL**

Medicare and private Third-Party Payors ("TPPs") are generally not based on the AWP for the Subject Drug due to the use of other reimbursement methods for hospitals and the use of J-codes by other providers. ■■■■■■■■■■■■■■■■■■■■■■■■■■

11.     My analysis of whether the various drug encounters shown in the discovery concerning the named plaintiffs meets the proposed Class definitions illustrates two important points: (1) that the vast majority of the identified drug encounters do not even fall within the proposed class definitions, which not only eliminates the named plaintiffs' claims against Track 2 Defendants, thereby eliminating them from the proposed Class, but also highlights the fundamental flaws in the proposed classes and (2) that the sheer complexity of the analysis itself suggests that it would not be feasible to afford class treatment to the claims of the named plaintiffs as they relate to Track 2 Subject Drugs.

## I.     REIMBURSEMENT OF MULTI-SOURCE DRUGS

12.     The majority of the Subject Drugs named for the Track 2 Defendants are multi-source drugs. The challenges of cross-walking between J-codes and NDCs, previously identified by ■■■■■■■■■■■■ and myself, are magnified for multi-source drugs. The use of J-codes to reimburse for these drugs creates at least the following issues:

- It is not possible to identify the source of a multi-source drug based on the information available to the patient and TPP because the source of the product is not needed to reimburse the provider and is therefore not included in the documentation. As a result, it is not possible to establish that the product was purchased from a Track 2 Defendant as opposed to another non-defendant source.
- All competing sources, both defendant and non-defendant, are by definition reimbursed at the same level – making it impossible for any

**HIGHLY CONFIDENTIAL**

      source to use its AWP to obtain a higher reimbursement than its competitors.

- Because of the number of different sources for most of the Track 2 multi-source Subject Drugs, and the fact that for Medicare reimbursement, the lower of the "median AWP" or lowest branded AWP (as opposed to an AWP associated with the particular defendant's drug) was used for reimbursement, the AWP used for reimbursement for a given J-code is generally not associated with the drug of the specific Track 2 Defendant against whom a named plaintiff or class member brings a claim.

13. Based on the issues resulting from the inability to cross-walk J-code based reimbursements for multi-source drugs to the specific source or the AWP associated with the specific source's NDC, my analysis has shown that all multi-source drug encounters do not meet the proposed class definition. Furthermore, it is impossible to manipulate the AWP based reimbursement of a multi-source J-code to make the reimbursement of one source's product higher than the competing products within the same J-code, which establishes that the underlying allegations of the Complaint do not apply to multi-source drugs.

## II.   PROPOSED CLASS 1

14. I have performed a detailed analysis of the discovery provided by plaintiffs for each drug encounter against each cited Track 2 Defendant and have determined that for 94% of the 130[5] drug encounters, the plaintiff did not pay (or incur a responsibility to pay) based on the AWP for the Track 2 Subject Drug. Indeed, the discovery affirmatively establishes that 4 of the 6 named plaintiffs are not members of the proposed Class 1 because they did not pay based on the AWP for the Subject Drug.[6] (Exhibit 2, a pie chart, summarizes the results in graphical form. Exhibit 3 provides the detail of this analysis for each named plaintiff.)

---

[5] My analysis includes all drug encounters identified in plaintiffs' Motion for Class Certification and any other drug encounters for the plaintiff associated with subject drugs of the Track 2 Defendant cited by that plaintiff.

[6] I have not analyzed the claims of ▇▇▇ at this time, but will do so upon the close of discovery for ▇▇▇

HIGHLY CONFIDENTIAL

15. It is my opinion, based on this analysis, the complexity of the analysis, and the over-riding issues associated with reimbursement for multi-source drugs (which impact the majority of these encounters) that it would not be feasible to assess the allegations in the Complaint on a class-wide basis for Track 2 Subject Drugs for the proposed Class 1.

### III.   PROPOSED CLASS 2

16. I performed a separate analysis of the Randle Affidavit[7], which details transactions allegedly involving Track 2 Subject Drugs for the proposed Class 2 representative, the Sheet Metal Workers National Health Fund ("Sheet Metal Workers"). As was the case with drug encounters for the proposed Class 1, 97% of the drug encounters (indeed, all but 1 of the drug encounters), do not meet the proposed class definition.

17. It is my opinion, based on this analysis, the complexity of the analysis, and the over-riding issues associated with reimbursement for multi-source drugs (which impacts the majority of these encounters) that it would not be feasible to assess the allegations in the Complaint on a class-wide basis for Track 2 Subject Drugs for the proposed Class 2.

### IV.   PROPOSED CLASS 3

18. Finally, I performed a separate analysis of the Hannaford Declaration[8], which lists transactions allegedly involving Track 2 Subject Drugs for the proposed Class 3 representative, the Pipefitters Local 537 Trust Funds ("Pipefitters").

19. Proposed Class 3 differs from proposed Classes 1 and 2 in that, while the proposed class members for Class 1 are all consumers, and the proposed class members for Class 2 are all TPPs, proposed Class 3 combines these payors.

---

[7] Mr. Glenn Randle, a member of the Board of Trustees for the Sheet Metal Workers, submitted his Affidavit dated May 4, 2006 which identified the drug claims that Sheet Metal Workers advances in support of its claims against specified Track 2 Defendants.

[8] Mr. Charles Hannaford, the Fund Administrator for Pipefitters, submitted his Declaration dated March 8, 2006, which identified the drug claims that Pipefitters advances in support of its claims against specified Track 2 Defendants.