# EXHIBIT 13

Westlaw.

### New York Pattern Jury Instructions--Civil
Committee on Pattern Jury Instructions Association of Supreme Court
Justices
**Database updated January 2006**

### Division 1: General Charges
### B. Charge After Trial
### 1. Where Pre-Trial Charge Has Been Given

Table of Contents  Index

PJI 1:23. BURDEN OF PROOF

The burden of proof rests on the  plaintiff.  That means that it must be established by a fair  preponderance of the
credible evidence that the claim plaintiff makes  is true. The credible evidence means the testimony or exhibits that
you  find to be worthy to be believed.  A preponderance of the evidence means the greater part of such evidence.
That does not mean the greater  number of witnesses or the greater length of time taken by either side. The phrase
refers to the quality of the evidence, that  is, its  convincing quality, the weight and the effect that it has on your
minds.  The law requires that in order for the plaintiff to prevail on  a claim, the evidence that supports (his, her)
claim must appeal to you  as more nearly representing what took place than the evidence opposed  to (his, her)
claim.  If it does not, or if it weighs so evenly that  you are unable to say that there is a preponderance on either side,
then you must decide the question in favor of the defendant.  It is  only if the evidence favoring the plaintiff's claim
outweighs the  evidence opposed to it that you can find in favor of plaintiff.

### Comment

   For cases where more than one party has the burden of proof on a  particular issue, PJI 1:60 or an appropriate
variation, should be  substituted.

   Whether a prima facie case has been made out is for the  trial  judge to determine, thus there is no need to
instruct the jury on the  subject. Every charge must include instructions as to the burden of  proof, see J. Baranello &
Sons v Chase Manhattan Bank, N.A., 119 AD2d 550, 500 NYS2d 727. The pattern charge, and the considerations
outlined in it, were cited  with approval in Torem v 564 Cent. Ave. Rest., Inc., 133 AD2d 25, 518 NYS2d 620. The
burden of proof portion  of the above charge finds statutory support in §  1-201, subd 8 of  the Uniform Commercial
Code, which provides: "'Burden of establishing' a fact means the burden  of persuading the triers of fact  that the
existence of the fact is more probable than its  non-existence," and decisional support in Jarrett v Madifari, 67 AD2d
396, 415 NYS2d 644.  An even balance of evidence requires a  finding for the defendant on the issue of defendant's
negligence, Rinaldi & Sons, Inc. v Wells Fargo Alarm Service, Inc., 39 NY2d 191, 383 NYS2d 256, 347 NE2d 618.
On some issues the burden may differ  from the general rule here stated, see PJI 1:60, PJI 1:61 and PJI 1:62. In such
case the appropriate charge should be used and PJI 1:23,  should be omitted.

   In a negligence action, while plaintiff has the burden of  proving defendant's negligence, defendant has the
burden of  establishing plaintiff's comparative fault. Care must be taken in  charging the jury with respect to burden
of proof in a negligence case  in which the comparative fault of plaintiff is in issue. The jury must  not be instructed
that as to each party it is "all or  nothing" since plaintiff may recover even if plaintiff was more negligent than
defendant, see Grisoff v Nicoletta, 107 AD2d 1047, 486 NYS2d 579.

Copyright 2006 Unified Court System and West, a Thomson business

NY PJI 1:23
END OF DOCUMENT

# EXHIBIT 14

| | |
|---|---|
| **From:** | Lane, Colleen M |
| **Sent:** | Wednesday, November 7, 2001 7:05 AM |
| **To:** | Garcia, Sylvia M; Savercool, Debbie A |
| **Cc:** | Johnson, Deborah A |
| **Subject:** | RE: Determination of the Average Wholesale (AWP) for a Multi-Source Drug or Biological |

I believe S. CA is using the multi-dose vials and N. CA and NE are not. Kelly and I are doing it the same way, using pricing based on the dosage that best matches the HCPCS description. The way Kelly explained it to me when I first started doing drug pricing, is that MDV's weren't used because of the product waste involved.

-----Original Message-----
From: Johnson, Deborah A
Sent: Wednesday, November 07, 2001 7:17 AM
To: Lane, Colleen M
Subject: FW: Determination of the Average Wholesale (AWP) for a
Multi-Source Drug or Biological

Colleen,
Can you answer Debbie's question? Which site or sites are using the multi dose vials and which is not?

Thanks

Deborah Johnson
NHIC
Manager System Support
75 Sgt. William Terry Drive
Hingham, MA 02044

* phone: 781-741-3260 (8-423)
* mailto: deborah.johnson@eds.com
Fax: 781-741-3011

-----Original Message-----
From: Savercool, Debbie A
Sent: Tuesday, November 06, 2001 6:53 PM
To: Johnson, Deborah A; Garcia, Sylvia M
Subject: RE: Determination of the Average Wholesale (AWP) for a
Multi-Source Drug or Biological

Which site is using pricing based on the average for all sources and doses? N.CA is using pricing based on the dosage that best matches the description of the HCPCS code (following the normal pricing guidelines).

There is a pricing difference if we change either way (or most likely).

-----Original Message-----
From: Johnson, Deborah A
Sent: Tuesday, November 06, 2001 4:25 AM
To: Savercool, Debbie A; Garcia, Sylvia M

NHIC-LUPRON/AWP
ENE 0004280

Subject: RE: Determination of the Average Wholesale (AWP) for a
Multi-Source Drug or Biological

Debbie & Sylvia,
Where do we go from here? I would say we need our Medical Directors to decide how they feel we should handle the Multi
dose vials. Any thoughts? We need to wrap this up for January pricing.

Deborah Johnson
NHIC
Manager System Support
75 Sgt. William Terry Drive
Hingham, MA 02044

* phone: 781-741-3260 (8-423)
* mailto: deborah.johnson@eds.com
Fax: 781-741-3011

-----Original Message-----
From: Savercool, Debbie A
Sent: Monday, November 05, 2001 4:16 PM
To: Garcia, Sylvia M; Johnson, Deborah A
Subject: FW: Determination of the Average Wholesale (AWP) for a
Multi-Source Drug or Biological

fyi -

-----Original Message-----
From: Frank Camozzi [mailto:FCamozzi@cms.hhs.gov]
Sent: Tuesday, October 30, 2001 10:29 AM
To: Chapple, Kelly M
Cc: Frank Camozzi; Robert Niemann; Savercool, Debbie A
Subject: Re: Determination of the Average Wholesale (AWP) for a
Multi-Source Drug or Biological

I don't have the response in writing. It was based on a telephone converstaion with Bob Niemann who works in C/O and is
the drug policy expert. He advised that MCS did not have a national policy with respect to the dosage that should be used for
pricing. It comes down to carrier discretion.

>>> "Chapple, Kelly M" <kelly.chapple@eds.com> 10/26/01 07:32AM >>>
Frank,
The other day on the phone I asked you if there was one method of
determining the average wholesale price (AWP) for injections and
biologicals. You told me, that you asked CO that same question. I was
wondering if you could send me the response that you received from CO when
you asked your question, when determining an AWP, do you use all of the
dosages available in the Redbook or do you use the dosages that best matches
the description of the HCPCS code.

Attached is PM 745 dated November 14, 2000, Implementation of the New
Payment Limit for Drugs and Biologicals. The section describing the
calculation of the AWP reads as follows:

    1.    For a single-source drug or biological, the AWP equals the

NHIC-LUPRON/AWP
ENE 0004281

AWP002-1943

AWP of the single product.

    2.    For a multi-source drug or biological, the AWP is equal to the lesser of the median AWP of all of the generic forms of the drug or biological or the lowest brand name product AWP. A "brand name" product is defined as a product that is marketed under a labeled name that is other than the generic chemical name for the drug or biological.

    3.    After determining the AWP, multiply it by 0.95. This is the new drug payment allowance limit. Do not round this payment allowance limit. There is no minimum for this amount.

For a multi-source drug or biological, the AWP is equal to the lesser of the median AWP of all of the generic forms of the drug or biological or the lowest brand name product AWP, this statement doesn't really answer our question on what dosages to use when determining the AWP for multi-source drug or biological and was hoping you could send the response that CO had given you.

<<CR 745.DOC>>

Thank you for your help.

Kelly Chapple
Medicare Systems Support
Service Center Analyst
620 J Street
Marysville, CA 95901
(530) 634-7428
kelly.chapple@eds.com

NHIC-LUPRON/AWP
ENE 0004282

# EXHIBIT 15

viewItem [https://www.lextranet.com/lce/search.prod/search/viewItem.lcs?docID=2249886a&DsID=0tableID=1183]

| From: | Chapple, Kelly M |
|---|---|
| Sent: | Wednesday, November 14, 2001 7:06 PM |
| To: | Johnson, Deborah A |
| Cc: | Savercool, Debbie A |
| Subject: | Using Multiple Dose Vials (MDV) for Injection Calculations |

Here is what I wrote.

NHIC is working towards having one method for calculating injections.  Since our three sites have become one we have found that each had their own method of calculating injections.  We know that CMS is very vague on the guidelines provided to the carriers for pricing injections.  PM 745 dated November 14, 2000, implementation of the New Payment Limit for Drugs and Biologicals is the PM that states the guidelines for injection pricing.  Below describes the Calculation of the AWP.

**Calculation of the AWP**

1.   For a single-source drug or biological, the AWP equals the AWP of the single product.

2.   For a multi-source drug or biological, the AWP is equal to the lesser of the median AWP of all of the generic forms of the drug or biological or the lowest brand name product AWP.  A "brand name" product is defined as a product that is marketed under a labeled name that is other than the generic chemical name for the drug or biological.

3.   After determining the AWP, multiply it by 0.95.  This is the new drug payment allowance limit.  Do not round this payment allowance limit.  There is no minimum for this amount.

My concern on the above calculation is including multiple dose vials (MDV) in the calculations when the drug is available as MDV and SDV.  Because MDVs are always less expensive than single dose vials (SDV), including them in the calculation formula could result in a lower price than when only the single dose vials are used.  I believe that providers prefer to purchase what they need for their practice, not an excess, but by including the MDV in the calculation formula, their reimbursement could be lower.

If a practice does not have many patients that would need a certain drug they probably would not purchase MDVs (if they had a choice), because there is limited shelf life after opening.  The providers would have to use all of the vial or discard the unused portion.  I feel that most providers would prefer to buy the amount they need, so that they would have little waste.

If a provider's specialty is a specialty where he would use the same drug with several patients in a day, as in allergies or asthma, he would probably purchase MDVs because it would be cost effective and would not have the waste, for he could use the entire vial after opening.  Where as a provider who did not have as many patients in a day using the same drug, the vial would have to be discarded due  to a limited shelf life.

Just the other day I had a provider's office call me on the drug sandostatin lar depot (J2352 1 mg), I know that this does not come in a MDV, but the situation is the same.  Sandostatin lar depot comes in 10 mgs, 20 mgs, and 30 mgs vials, NHIC chose the 30 mgs because when you calculate the AWPs, it costs less than using the 10 or 20 mg vials.  This provider wanted to know how I determined the allowance we had for this code, and I told her we used the 30 mg vial and divided by 30 to get 1 mg.  She let me know that they only purchase the 10 mg vials, because they do not have many patients that need this drug and there's too much waste to buy the 30 mg vials,

NHIC-LUPRON/AWP
ENE 0004292

viewitem [https...www.textranet.com/ics/search.proalbase viewitem ics?docID=2249886eDocID=0tableID=1183]

when they do not need that much.  She wanted to know if that would change in the future, and I let her know as of right now, no.  She was upset but found she had two options.

1. They can buy the 10 mg vial and eat the cost.  Or

2. They can buy the 30 mg vial and discard the waste.

They felt they should not have to buy the 30 mg vial and discard the waste.

I would like to have both methods reviewed, using the MDVs in our calculation or using only the SDVs and come to an agreement of which method we should use.  Coming to an agreement will help us reach our goal of one method for calculating injections.

Thanks,


Kelly Chapple
Medicare Systems Support
Service Center Analyst
620 J Street
Marysville, CA 95901
(530) 634-7428
kelly.chapple@eds.com


NHIC-LUPRON/AWP
ENE 0004293

# EXHIBIT 16

| From: | Lurvey, Arthur N |
|---|---|
| Sent: | Thursday, November 15, 2001 12:01 PM |
| To: | Johnson, Deborah A; Rogan, Jerry; Yeh, Charlotte |
| Cc: | Savercool, Debbie A; Garcia, Sylvia M; Hite, Jane M; Hite, Jane M |
| Subject: | RE: Using Multiple Dose Vials (MDV) for Injection Calculations |

**If we are to follow the sensible guidelines of making medications available to patients and doctors as needed; and not hinder the appropriate use of medications, we should not use the multiple dose vial information when determining the AWP. Here are my reasons:**

**Smaller practices and physicians who do not have high numbers of patients who use a specific medication would be harmed if we only priced medications on the basis of multiple dose vials. This occurs in rural areas, when family practice patients care for patients with rare conditions, and in solo and small group practices. I want patients to be able to receive all necessary medications. If physicians lose money on administering medically necessary medications, they may unconsciously hesitate to use that medicine and opt for another less effective drug. I would personally prefer a few doctors to make a few extra dollars (on multiple dose vials) than patients who need medications not getting them; or doctors who honorable administer appropriate medications losing money in giving the drugs.**

**So you see my choices are clearly with patients in need.**

*Art*
Arthur Lurvey, M.D.
Medicare Carrier Medical Director
National Heritage Insurance Company
1055 West Seventh Street
Los Angeles, California 90017
Phone 213-593-6801
Fax:   213-593-5921

-----Original Message-----
**From:**  Johnson, Deborah A
**Sent:**  Thursday, November 15, 2001 9:50 AM
**To:**    Rogan, Jerry; Lurvey, Arthur N; Yeh, Charlotte
**Cc:**    Savercool, Debbie A; Garcia, Sylvia M; Hite, Jane M; Hite, Jane M
**Subject:**   FW: Using Multiple Dose Vials (MDV) for Injection Calculations
**Importance:**   High

The System Support team has been working towards resolving drug pricing inconsistencies between the three NHIC sites. We have resolved most of our difference however need further guidance on Multiple Dose Vials. A clarification was requested from CMS however the response which I have pasted below indicates it is carrier discretion. This is where we need your assistance.

NHIC-LUPRON/AWP
ENE 0004294

AWP002-1962

Two NHIC sites - Do not use the Multi-Dose vials information when determining the AWP.
One NHIC site - Does use the Multi-dose vial information when determining the AWP.

In order to implement consistent drug pricing for NHIC we need the Medical Directors to come to an
agreement on which method all NHIC sites should follow. Kelly has provided some additional information
below. Either way based on the decision pricing will change for some providers. We could begin paying
more/less to certain providers based on the decision. The goal is to have consistent pricing for all NHIC
sites by January 1, 2002. For this to happen we need a response ASAP for publication purposes. This
information must be put on the NHIC web-site by 12/01/01 to meet the 30 day publication requirement.
Please let me know if you would like me to set up a conference call to discuss the issue further.

Thank you and I appreciate you assistance in this matter.

Deborah Johnson
NHIC
Manager System Support
75 Sgt. William Terry Drive
Hingham, MA 02044

```
----Original Message-----
From: Frank Camozzi [mailto:FCamozzi@cms.hhs.gov]
Sent: Tuesday, October 30, 2001 10:29 AM
To: Chapple, Kelly M
Cc: Frank Camozzi; Robert Niemann; Savercool, Debbie A
Subject: Re: Determination of the Average Wholesale (AWP) for a
Multi-Source Drug or Biological


I don't have the response in writing. It was based on a telephone
conversation with Bob Niemann who works in C/O and is the drug policy expert.
He advised that MCS did not have a national policy with respect to the dosage
that should be used for pricing. It comes down to carrier discretion.
```

```
----Original Message-----
From:    Chapple, Kelly M
Sent:    Wednesday, November 14, 2001 8:06 PM
To:      Johnson, Deborah A
Cc:      Savercool, Debbie A
Subject: Using Multiple Dose Vials (MDV) for Injection Calculations
```

Here is what I wrote.

NHIC is working towards having one method for calculating injections. Since our three sites have
become one we have found that each had their own method of calculating injections. We know that CMS
is very vague on the guidelines provided to the carriers for pricing injections. PM 745 dated November
14, 2000, implementation of the New Payment Limit for Drugs and Biologicals is the PM that states the
guidelines for injection pricing. Below describes the Calculation of the AWP.

NHIC-LUPRON/AWP
ENE 0004295

**Calculation of the AWP**

    1.    For a single-source drug or biological, the AWP equals the AWP of the single product.

    2.    For a multi-source drug or biological, the AWP is equal to the lesser of the median AWP of all of the generic forms of the drug or biological or the lowest brand name product AWP. A "brand name" product is defined as a product that is marketed under a labeled name that is other than the generic chemical name for the drug or biological.

    3.    After determining the AWP, multiply it by 0.95. This is the new drug payment allowance limit. Do not round this payment allowance limit. There is no minimum for this amount.

My concern on the above calculation is including multiple dose vials (MDV) in the calculations when the drug is available as MDV and SDV. Because MDVs are always less expensive than single dose vials (SDV), including them in the calculation formula could result in a lower price than when only the single dose vials are used. I believe that providers prefer to purchase what they need for their practice, not an excess, but by including the MDV in the calculation formula, their reimbursement could be lower.

If a practice does not have many patients that would need a certain drug they probably would not purchase MDVs (if they had a choice), because there is limited shelf life after opening. The providers would have to use all of the vial or discard the unused portion. I feel that most providers would prefer to buy the amount they need, so that they would have little waste.

If a provider's specialty is a specialty where he would use the same drug with several patients in a day, as in allergies or asthma, he would probably purchase MDVs because it would be cost effective and would not have the waste, for he could use the entire vial after opening. Where as a provider who did not have as many patients in a day using the same drug, the vial would have to be discarded due to a limited shelf life.

Just the other day I had a provider's office call me on the drug sandostatin lar depot (J2352 1 mg), I know that this does not come in a MDV, but the situation is the same. Sandostatin lar depot comes in 10 mgs, 20 mgs, and 30 mgs vials, NHIC chose the 30 mgs because when you calculate the AWPs, it costs less than using the 10 or 20 mg vials. This provider wanted to know how I determined the allowance we had for this code, and I told her we used the 30 mg vial and divided by 30 to get 1 mg. She let me know that they only purchase the 10 mg vials, because they do not have many patients that need this drug and there's too much waste to buy the 30 mg vials, when they do not need that much. She wanted to know if that would change in the future, and I let her know as of right now, no. She was upset but found she had two options.

1. They can buy the 10 mg vial and eat the cost. Or

2. They can buy the 30 mg vial and discard the waste.

They felt they should not have to buy the 30 mg vial and discard the waste.

I would like to have both methods reviewed, using the MDVs in our calculation or using only the SDVs and come to an agreement of which method we should use. Coming to an agreement will help us reach our goal of one method for calculating injections.

Thanks,

Kelly Chapple
Medicare Systems Support

NHIC-LUPRON/AWP
ENE 0004296

Service Center Analyst
620 J Street
Marysville, CA 95901
(530) 634-7428
kelly.chapple@eds.com

**NHIC-LUPRON/AWP**
**ENE 0004297**

# EXHIBIT 17

| From: | Yeh, Charlotte |
|---|---|
| Sent: | Wednesday, October 11, 2000 7:42 AM |
| To: | Johnson, Deborah A |
| Cc: | Bockhoff Dalton, Anne; Houston, Evelyn; Rogan, Jerry; D'Elia, Paulette; Harrington, Robert; Mackinnon, Rose; Ackerman, Paul J |
| Subject: | Drug pricing information question for HCFA RO |

Deb,

Thanks for our discussion earlier today, and your help in putting together HCFA's request for pricing information. I would also recommend that we submit the following question to HCFA RO, and await an answer before making any final decision about NHIC's position on what path to take on pricing for the 32 drugs identified by HCFA as having possible different pricing options from the standard 95% AWP of the Red Book:

Background: I was at a New England wide meeting of CMDs yesterday which included DMERC, and Part A and B CMDs, where this topic was discussed. Based upon prior experience with "reasonable" drug pricing attempts by HCFA, it apparently is not clear if HCFA has the authority to determine drug pricing beyond "AWP" which is typically defined as the "Red Book". Since the HCFA memorandum is informational in nature without a direct instruction to implement alternative pricing, it appears that this legal question does exist. The other CMDs, based upon prior experience would expect a legal challenge to HCFA's authority to use alternative pricing. Therefore, they recommend prior to going ahead with any change, to ask the HCFA RO to request from their General Counsel a decision on the following questions:  ( I would personally recommend a written decision with references)

Questions for HCFA RO:

1. Does HCFA authority permit use of pricing information other than AWP, to determine reimbursement rate?
2. If AWP is required, does AWP refer only to the Red Book pricing, or would the information provided in the memorandum as collected by the DOJ qualify as AWP?

3. If other sources than AWP are permitted, what can they be?  Does it include the information as provided in the memorandum supplied by the DOJ?

I also have some internal questions for NHIC: I am not sure who is supposed to make the decision on which drug pricing we can use, and whether they are supposed to be uniform for CA and NE. Also, would the questions have to be posed to both the CA or Boston RO?  Finally, if we choose to make no change, then are the questions necessary to send, or should we ask anyway?  Plus there may be questions that I have not thought of, and whether or not this is a topic that our NHIC attorneys should consider.

Thanks for your assistance in helping sort this all out!

Charlotte S. Yeh, MD, FACEP
Medical Director, Medicare Policy
National Heritage Insurance Company
75 Sgt. William Terry Drive
Hingham, MA 02043

NHIC-LUPRON/AWP
ENE 0000643

AWP001-0841

Phone: 781-741-3122
Fax: 781-741-3211
email: charlotte.yeh@eds.com

NHIC-LUPRON/AWP
ENE 0000644

# EXHIBIT 18

| | |
|---|---|
| **From:** | Chapple, Kelly M |
| **Sent:** | Wednesday, October 11, 2000 9:31 AM |
| **To:** | Johnson, Deborah A |
| **Subject:** | RE: Drug pricing information question for HCFA RO |

If my vote counts I wish not to implement until we need to. We had providers tell educational outreach that they do not agree with this and have concerns about this decision. I would like to wait to implement if possible.

Kelly

-----Original Message-----
**From:** Johnson, Deborah A
**Sent:** Wednesday, October 11, 2000 6:56 AM
**To:** Chapple, Kelly M; Lane, Colleen M
**Subject:** FYI: Drug pricing information question for HCFA RO

Please see below concerns from Dr Yeh.

Deborah Johnson
NHIC
Phone 781-741-3260 (8-423)
Email address deborah.johnson@eds.com

-----Original Message-----
**From:** Yeh, Charlotte
**Sent:** Wednesday, October 11, 2000 9:43 AM
**To:** Johnson, Deborah A
**Cc:** Bockhoff Dalton, Anne; Houston, Evelyn; Rogan, Jerry; D'Elia, Paulette; Harrington, Robert; Mackinnon, Rose; Ackerman, Paul J

**Subject:** Drug pricing information question for HCFA RO

Deb,

Thanks for our discussion earlier today, and your help in putting together HCFA's request for pricing information. I would also recommend that we submit the following question to HCFA RO, and await an answer before making any final decision about NHIC's position on what path to take on pricing for the 32 drugs identified by HCFA as having possible different pricing options from the standard 95% AWP of the Red Book:

Background: I was at a New England wide meeting of CMDs yesterday which included DMERC, and Part A and B CMDs, where this topic was discussed. Based upon prior experience with "reasonable" drug pricing attempts by HCFA, it apparently is not clear if HCFA has the authority to determine drug pricing beyond "AWP" which is typically defined as the "Red Book". Since the HCFA memorandum is informational in nature without a direct instruction to implement alternative pricing, it appears that this legal question does exist. The other CMDs, based upon prior experience would expect a legal challenge to HCFA's authority to use alternative pricing. Therefore, they recommend prior to going ahead with any change, to ask the HCFA RO to request from their General Counsel a decision on the following questions: ( I would personally recommend a written decision with references)

Questions for HCFA RO:

1. Does HCFA authority permit use of pricing information other than AWP, to determine reimbursement rate?

NHIC-LUPRON/AWP
ENE 0000686

AWP001-0891

2. If AWP is required, does AWP refer only to the Red Book pricing, or would the information provided in the memorandum as collected by the DOJ qualify as AWP?

3. If other sources than AWP are permitted, what can they be? Does it include the information as provided in the memorandum supplied by the DOJ?

I also have some internal questions for NHIC: I am not sure who is supposed to make the decision on which drug pricing we can use, and whether they are supposed to be uniform for CA and NE. Also, would the questions have to be posed to both the CA or Boston RO? Finally, if we choose to make no change, then are the questions necessary to send, or should we ask anyway? Plus there may be questions that I have not thought of, and whether or not this is a topic that our NHIC attorneys should consider.

Thanks for your assistance in helping sort this all out!


Charlotte S. Yeh, MD, FACEP
Medical Director, Medicare Policy
National Heritage Insurance Company
75 Sgt. William Terry Drive
Hingham, MA 02043

Phone: 781-741-3122
Fax: 781-741-3211
email: charlotte.yeh@eds.com


NHIC-LUPRON/AWP
ENE 0000687

# EXHIBIT 19

| From: | Johnson, Deborah A |
|---|---|
| Sent: | Wednesday, July 31, 2002 6:22 AM |
| To: | Yeh, Charlotte |
| Cc: | Whalen, Betty; Rivera, Carlos C |
| Subject: | FW: Drug Pricing Consistency - Next Phase |

Charlotte,
We have identified approximately 100 J-codes that NHIC is not consistently adjudicating. At least one of the sites may be paying for the services were the others are denying. The system support team provided a list of the codes in question to MR for resolution. We are being told it is on hold until CR2200 is clarified and direction is provided by Medical Policy. Can you please explain what clarification NHIC needs to move forward with resolving pricing discrepancies.

The Drug Pricing consistency project was submitted to Jeff as an initiative. We have completed Phase One which consisted of recalculating and applying the same price nationally for J codes all sites were approving. Phase Two was to resolves the J-codes that were not being processed consistently. In addition, a PIV project was opened to allow updates to be keyed in one environment and applied to all three sites. Today updates must be keyed into three environments and requires three resources to perform maintenance. The project will increase productivity and ensure consistency between the sites. However we cannot proceed until NHIC agrees how to adjudicate all the j-codes consistently. Any direction you can provide so we can move forward with this initiative would be appreciated.


Thanks
Deborah Johnson
NHIC
Manager System Support
75 Sgt. William Terry Drive
Hingham, MA 02044

☎ phone: 781-741-3260 (8-423)
✉ mailto: deborah.johnson@eds.com
Fax: 781-741-3011


-----Original Message-----
**From:** Lane, Colleen M
**Sent:** Wednesday, July 31, 2002 7:56 AM
**To:** Johnson, Deborah A
**Subject:** FW: Drug Pricing Consistency - Next Phase

Deb,
FYI....

NHIC-LUPRON/AWP
ENE 0005023

AWP003-0002

viewitem [https://www.lextranet.com/lcs/search/prodDocs/viewitem lcs?docID=2250015eDocID=0tableID=1183]

-----Original Message-----
**From:** Porter, Melissa
**Sent:** Wednesday, July 31, 2002 7:33 AM
**To:** Lane, Colleen M
**Subject:**     RE: Drug Pricing Consistency - Next Phase

Colleen,
As per our previous conversation, Drug Pricing is on hold until CR 2200 is clarified and direction is given from Medical Policy/Dr. Yeh.  I believe that because the project is so big (drug list is so big) Medical Policy is only looking at a list of 19 drugs (identified as high discrepancies between carriers) at this point. I will let you know when we receive direction!

Melissa

        -----Original Message-----
        **From:**  Lane, Colleen M
        **Sent:**  Tuesday, July 30, 2002 8:07 AM
        **To:**  Porter, Melissa
        **Subject:**     FW: Drug Pricing Consistency - Next Phase

        Hi Melissa,
        Can you give me a status as to how this is moving along?  Thanks so much.

        Colleen

        -----Original Message-----
        **From:**  Johnson, Deborah A
        **Sent:**  Monday, July 29, 2002 2:12 PM
        **To:**  Lane, Colleen M
        **Subject:**     FW: Drug Pricing Consistency - Next Phase

        Colleen,

        Below is the response that was sent to Dr. Lurvey on his suggestion to hold off. I did not receive a response and thought the MR team was moving forward with this. Please let me know if this is not the case and I will meet with Carlos and Betty Whalen to address.

        Thanks
        Deborah Johnson
        NHIC
        Manager System Support
        75 Sgt. William Terry Drive
        Hingham, MA 02044

        ☎ phone: 781-741-3260 (8-423)
        ✉ mailto: deborah.johnson@eds.com
        Fax: 781-741-3011

        -----Original Message-----
        **From:**  Johnson, Deborah A
        **Sent:**  Wednesday, May 22, 2002 7:26 AM
        **To:**  Lurvey, Arthur N
        **Cc:**  Chapple, Kelly M
        **Subject:**     RE: Drug Pricing Consistency - Next Phase

NHIC-LUPRON/AWP
ENE 0005024

viewitem [https://www.lextranet.com/lcs/search/prodDocs/viewitem.lcs?docID=2250015eDocID=0tableID=1183]

Dr. Lurvey,
I do not feel that NHIC should put a project on hold that is trying to address inconsistencies. I believe the
MR areas need to review the variances to determine if internally we can come to an agreement on
consistent processing. There are about 100 codes that at least one site pays and the others auto deny or
vice versa. If and when CO issues a PM which contains rules NHIC would adjust nationally. Please give
me a call if you have additional concerns that I may not be aware of. I have asked the team to complete
this within this quarter as this is an initiative that was sent to Jeff.

Thanks

-----Original Message-----
**From:** Lurvey, Arthur N
**Sent:** Tuesday, May 21, 2002 7:01 PM
**To:** Chapple, Kelly M; Haskins, Paulette K; Collier, Michelle; Watkins, Doniece; Simmons, Jacqueline
**Cc:** Chau, Angel; Lane, Colleen M; Rogan, Jerry; Johnson, Deborah A
**Subject:** RE: Drug Pricing Consistency - Next Phase

This project should be held briefly until the CO makes final determination of its
rules for self administration of medications and how and when non-self
administered meds are covered.

art

-----Original Message-----
**From:** Chapple, Kelly M
**Sent:** Wednesday, May 08, 2002 7:54 AM
**To:** Haskins, Paulette K; Collier, Michelle; Watkins, Doniece; Simmons, Jacqueline
**Cc:** Chau, Angel; Lane, Colleen M; Rogan, Jerry; Lurvey, Arthur N; Johnson, Deborah A
**Subject:** FW: Drug Pricing Consistency - Next Phase

Below is a spreadsheet that shows the discrepancies that the NHIC sites have on front-
end denials for drugs and biologicals.  Our goal is to have all three sites to agree on
pricing, and front-end denial of injection codes, so that the three sites can be consistent.
This will also help with our last phase which we will be for one person to update the
injection codes for all three sites, we then can alternate this job function and hopefully
this could lead to other shared business needs in the future.

Colleen Lane, Angel Chau, and myself have completed the first phase of the drug pricing
project in which we came to an agreement on pricing.  We now are allowing the same
amounts for all of our injection codes.  We would like MR to review the spreadsheet that
was created for this project and see if an agreement can be made on the injection codes
that we differ on for denials.

Deb Johnson has sent Jeff Brooks the pricing project indicating it as an initiative for this
year.  She's the lead for the drug pricing project and would like to present the project
completion details to Jeff and Anne the management team.

Could you please review the spreadsheet and let us know if we can agree on the
discrepancies that the three sites have.  If you would like to have our assistance to help
set up a meeting with all three sites to discuss the differences, please let us know and we
will help to coordinate the meeting.  It is imperative that this issue be resolved since we
are one Carrier.  This will also avoid possible future inquiries from Provider or CMS  as
why one site is paying while the other is denying.

NHIC-LUPRON/AWP
ENE 0005025

viewItem [https://www.lextranet.com/lcs/search/prodDocs/viewItem lcs?docID=2250015eDocID=0tableID=1183]

If you have any questions, please feel free to contact any of us three.

Kelly Chapple
Medicare Systems Support
Service Center Analyst
620 J Street
Marysville, CA 95901
(530) 634-7428
kelly.chapple@eds.com

-----Original Message-----
**From:** Lane, Colleen M
**Sent:** Friday, May 03, 2002 7:57 AM
**To:** Chapple, Kelly M; Chau, Angel
**Cc:** Johnson, Deborah A
**Subject:** Drug Pricing Consistency - Next Phase

Hi guys,

Melissa and I were discussing the next phase of our drug pricing project this morning where we would like to get the rest of the discrepancies worked out (one site has a code as N/C, another is paying). We were wondering if you guys would be able to get some assistance from your MR areas to help us work out some of these. We came up with an idea that whichever site has the discrepancy should review that code and share the information.

For example, code 90371 is N/C by S. Cal. N. Cal and NE have a price of $135.43. S. Cal. should review this code to determine why it is not covered. Then N. Cal and NE can work to determine if we should also have this as N/C, or to continue paying.

For 90389, NE should review, because we have code as N/C whereas N. Cal and S. Cal have pricing.

For 90586, N. Cal should review, because it is N/C, whereas S. Cal and NE have pricing.

If a code is different among all 3 of us, we can get together at a later time to review to determine what should be done (like on 90385).

Just a FYI, Deb J. has submitted this project as a business initiative to Jeff Brooks!

Here's the spreadsheet:
<< File: 2002 Drugs Comparison03.xls >>

Thanks for your help!

NHIC-LUPRON/AWP
ENE 0005026

AWP003-0005

*Colleen Lane*

Colleen Lane
Business Services Analyst
Medicare System Support
EDS/NHIC New England Medicare B

☎ 781.741.3111 [8-423]
🖨 781.741.3011 (fax)
✉ <mailto:colleen.lane@eds.com>

Please visit the following helpful websites:
www.medicarenhic.com
www.cms.hhs.gov
www.medicare.gov

NHIC-LUPRON/AWP
ENE 0005027

AWP003-0006      L