UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL CLASS ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF CHARLES HANNAFORD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO TRACK 1 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO CLASS 3**

I, Charles Hannaford, under the penalty of perjury, hereby declare as follows:

1.  I submit this Declaration in support Plaintiffs' Opposition to Track 1 Defendants' Motion for Summary Judgment.

2.  I have personal knowledge of the facts stated below, would so testify in court if called upon to do so, and am competent to provide testimony.

3.  I am the Fund Administrator for the Pipefitters Local 537 Trust Funds (the "Fund"). I have been the Fund Administrator since March 1, 2003. I have been a member of the Pipefitters Local 537 Union (the "Union"), and have personally received benefits through the Fund as a member of the Union, continuously since approximately 1975.

4.  My formal education consists of an undergraduate degree in Business from Boston University in 1966. I also obtained a Masters Degree in systems management from the University of Southern California in 1970.

5.  After a four year apprenticeship ending in 1979 I worked full-time for Honeywell Controls in Newton, Massachusetts until approximately 1984. At that time I went to work for

Carrier Air Conditioning in the Boston area and was employed by Carrier until 2002 with the exception of two time periods. In 1991, as a member of the Air Force Reserves I was activated into full-time service during Operation Desert Storm. I returned to Carrier Air in 1993. In addition, for 2 years beginning in 1987 I worked for Jaymont Management Company.

6. All of the Fund's operations are conducted from its location at 35 Travis Street, Unit One, Allston, Massachusetts. The Fund operates out of a small space of approximately 1,300 square feet. The staff of the Fund is likewise very small, consisting of myself and four other employees in total. The other employees consist of an office manager, one employee who deals primarily with qualified domestic relations orders, and three other employees who each only have individual responsibility for issues related either to pension benefits, annuity benefits, or the health and welfare benefits provided to Union members.

7. The Fund is a Taft-Hartley Fund, governed by a Board of Trustees consisting of three trustees appointed by management and three labor trustees. In addition to providing a number of other benefits, the Fund provides major medical benefits, including prescription drug benefits, to all union members and their eligible dependants.

8. Currently there are approximately 4600 individuals, both union members and their dependants, who receive major medical benefits, including prescription drug benefits, through the Fund.

9. Members of the Fund are tradesmen and tradeswomen who work on buildings systems, including but not limited to heating ventilation and air conditioning (HVAC) systems. Members of the Union and of the Fund generally work and live in Eastern Massachusetts in an area bounded north by Salem, Massachusetts, West by Interstate 495 and South by Route 128 in Massachusetts.

10. The Fund finances medical and other benefits for its members through employer contributions negotiated by the Union through the collective bargaining process. The Fund is self insured. The Fund is fully responsible and at-risk for all payments made for medical benefits, including pharmaceutical products, administered to its eligible members, within the parameters of the coverage provided by the Fund and outlined for its members in the yearly summary of benefits. In general, the Fund covers 90% of all costs associated with treatment of its members, including the cost of pharmaceuticals.

11. Since approximately 1979 the Fund has contracted with Blue Cross / Blue Shield of Massachusetts ("BCBS") to administer the major medical benefit, including coverage for all prescription benefits, provided to members. The financial arrangement between the Fund and BCBS is "cost plus" meaning that BCBS charges the Fund whatever it pays for the particular service or pharmaceutical plus an administrative fee. In this way the Fund is fully responsible for all costs associated with benefits provided to its members.

12. Until beginning my position as Fund Administrator I had not encountered the term "AWP" or Average Wholesale Price. When I began as Fund Administrator I was told by staff who had been working at the Fund for approximately twenty years that the AWP was in fact the average wholesale cost of a particular drug. At the time Pipefitters had a small program for retirees through a PBM and had contracted to provide very limited prescription coverage to retirees of up to $700 per year. That contracted reimbursement paid by the Fund under that program for brand name drugs was AWP less 18%. The Fund subscribed to the RedBook in order to spot check the prices being paid to ensure that the Fund was being charged 18% less than the published average wholesale price.

13.     It was not until approximately March 31, 2003 when I read an article in the Wall Street Journal Entitled "Hired to Cut Costs, Firms Find Profits in Generic Drugs," attached hereto as <u>Exhibit A</u>, that I or members of the Fund staff came to understand that the published AWPs were inflated and were not the actual average of wholesale prices. Shortly thereafter I brought this article and the subject matter of AWP inflation to the attention of my staff and to members of the Board of Trustees. This was the first time any of them had any indication that the published AWPs were not in fact the average of wholesale prices.

14.     Although the Wall Street Journal Article attached as Exhibit A concerns the deep discounts off of AWP available to PBMs it does not identify all of the drugs which are subject to such discounts and does not discuss the role Defendants in this litigation play in setting the AWP or in marketing the difference between their published AWP and the actual acquisition cost to providers as a means of selling more of their products. No one at the Fund has ever had any communications with any drugs companies concerning the relationship between AWP and the actual prices at which their drugs are available for purchase by providers.

15.     At some point in late 2004 I also became aware that through its contract with BCBS, the Fund was also paying for certain pharmaceuticals at a price that is based on the published AWP. The particular prices paid by the Fund for medical services and pharmaceuticals are not separately negotiated by the Fund. The Fund is much too small and has too few resources to undertake such a task. The prices paid by the Fund are those paid by BCBS for the particular drug or service.

16.     I first heard of this litigation involving AWP at a meeting of the Massachusetts Coalition of Taft-Hartley Funds sometime in the summer of 2005. This coalition is a group of funds very similar to the Fund whose administrators meet periodically to discuss issues relevant to health

care, pension and annuity benefits provided to their members. It consists of approximately 15 Taft-Hartley funds, all of whom, like the Fund, contract with larger entities to administer their health benefits. In my experience many, if not the vast majority, of the Taft-Hartley funds of which I am aware through the Massachusetts Coalition contract with BCBS in much the same way the Fund does for administration of their benefits.

17. Despite my awareness of the Wall Street Journal article in March of 2003, I still had insufficient information at that time to determine whether the AWPs were inflated over the actual prices being paid by health care providers for these drugs and if inflated, how much that inflation was. The Fund lacks the resources in both time and money to undertake such a wide ranging and in-depth analysis. Until approached about participation in this lawsuit in the summer of 2005, I feel I did not possess sufficient knowledge or information concerning the nature or extent of the AWP inflation to bring suit. To the best of my knowledge, the Fund could not have discovered the AWP scheme outlined in the complaint in this matter any sooner than it did.

I make the foregoing statements under penalty of perjury on the date written next to my name below.

Date: August 28, 2006

Charles Hannaford

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF CHARLES HANNAFORD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO TRACK 1 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO CLASS 3**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 30, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

      By     **/s/ Steve W. Berman**
      Steve W. Berman
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Fifth Avenue, Suite 2900
      Seattle, WA 98101
      (206) 623-7292