UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

**PLAINTIFFS' L.R. 56.1 COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO THE TRACK 1 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO CLASS 3**

Pursuant to Local Rule 56.1, Plaintiffs hereby submit their Statement of Undisputed Material Facts in Support of their Opposition to Defendants' Motion for Summary Judgment as to the Class 3 claims.

1. AWP was the reimbursement benchmark for the Subject Drugs for Class 3 Members during the Class Period.

2. Each Track 1 Defendant knew that AWP was the reimbursement mechanism during the Class Period.

3. Each Track 1 Defendant caused AWPs to be published for each of their subject drugs.

4. AstraZeneca[1] caused AWPs for all of its drugs, including Zoladex, to be published by the pharmaceutical industry pricing services.

---

[1] "AstraZeneca" is used to refer to AstraZeneca PLC; Zeneca, Inc.; AstraZeneca Pharmaceuticals L.P. and AstraZeneca U.S. "BMS" or the "BMS Group" is used to refer to Bristol-Myers Squibb Co.; Oncology Therapeutics Network Corp. ("OTN"); and Apothecon, Inc. "GSK" is generally used to refer to GlaxoSmithKline P.L.C. GSK is the result of a merger between GlaxoWellcome, Inc. ("Glaxo") and SmithKline Beecham Corporation ("SKB"). Where appropriate, "Glaxo" and "SKB" are used to refer to the pre-merger companies. "J&J" refers to Johnson & Johnson; Centocor, Inc.; Ortho Biotech, Inc. ("OBI"); McNeil-PPC, Inc.; and Janssen Pharmaceutical Products, L.P. The Schering-Plough Group consists of the parent-corporation, Schering-Plough

5. AstraZeneca set the published AWPs for all of its drugs, including Zoladex, prior to 2002.

6. AstraZeneca communicated its AWPs to the publishers for publication.

7. AstraZeneca adopted the AWPs set by First DataBank and communicated them to Redbook after 2001.

8. BMS caused AWPs for all of its drugs to be published.

9. BMS controlled the AWPs for its subject drugs by reporting wholesale list prices with full knowledge of the mark-up factors that the publishers would use to create the AWPs.

10. BMS internally published the AWPs for its products.

11. BMS wholly-owned specialty distributor OTN republished AWPs for BMS subject drugs.

12. OTN published online reports to which customers subscribed, including the "AWP Report," which contained a list of current AWPs.

13. OTN published the "AWP/Price Report," which contained the AWPs for drugs that OTN clients had purchased, and the billing unit for each particular drug.

14. J&J caused AWPs for all of its drugs to be published.

15. J&J set the AWPs for Procrit and Remicade throughout the Class Period.

16. OBI set the list price for Procrit.

17. At the time of launch and every Procrit price change prior to June 2004, OBI sent a communication to all of the major publishers announcing the new list prices and corresponding AWPs that OBI had calculated internally for Procrit.

---

Corporation ("SP"), and its wholly-owned subsidiary, Warrick Pharmaceuticals Corporation ("Warrick"). The term "SPW" is generally used where the evidence applies against both parent and subsidiary.

18. The AWPs that OBI sent to publishers were neither recommendations nor suggestions.

19. The AWP for Procrit was created by routinely and mechanically applying a 20 percent mark up to list price at the time of launch and for every price change thereafter.

20. Centacor provided First DataBank with the AWP for Remicaid.

21. J&J knew its pharmaceutical divisions set the WACS and AWPs for their respective drugs.

22. Schering-Plough controlled and set the AWPs for its products.

23. Schering-Plough reported pricing information for their medicines to pharmaceutical industry pricing publications.

24. Schering-Plough reported the AWPs for their medicines to pharmaceutical industry pricing publications.

25. Schering-Plough caused AWPs for all of its drugs to be published.

26. The AWPs that each Track 1 Defendant caused to be published neither reflected an average nor included the discounts called for by OIG Guidelines

27. Each Track 1 Defendant manipulated and marketed spreads.

28. AstraZeneca's AWPs neither reflected an average nor met OIG Guidelines.

29. AstraZeneca purposefully manipulated and marketed spreads.

30. AstraZeneca manipulated the AWPs of its subject drugs.

31. AstraZeneca communicated its AWPs to the sales force for the purpose of marketing the reimbursement mechanism to its physician customers.

32. BMS's AWPs neither reflected an average nor met OIG Guidelines.

33. BMS purposefully manipulated and marketed spreads.

34. BMS knew that its subject drugs were sold at prices well below AWP.

35. BMS created spreads through confidential contract pricing, rebates and other forms of discounting.

36. BMS knew that physicians working in office-based oncology practices considered spreads in making pharmaceutical product buying decisions.

37. BMS created spreads through special contract pricing and other discounting methods.

38. BMS manipulated the spreads on its drug Blenoxane in order to induce office-based oncology practices to purchase the drug.

39. BMS manipulated the spreads on its drug Cytoxan in order to induce office-based oncology practices to purchase the drug.

40. BMS manipulated the spreads on its drug VePesid in order to induce office-based oncology practices to purchase the drug.

41. BMS manipulated the spreads on its drug Etopophos in order to induce office-based oncology practices to purchase the drug.

42. BMS manipulated the spreads on its drug Rubex in order to induce office-based oncology practices to purchase the drug.

43. BMS manipulated the spreads on its drug Taxol in order to induce office-based oncology practices to purchase the drug.

44. BMS manipulated the spreads on its drug Paraplatin in order to induce office-based oncology practices to purchase the drug.

45. BMS actively marketed the spread between actual acquisition cost and AWP in order to take advantage of the importance that prescribers place on drug reimbursements.

46. SKB's overall sales strategy was to promote Kytril based on spread.

47. J&J's AWPs neither reflected an average nor met OIG Guidelines.

48. J&J purposefully manipulated and marketed spreads.

49. The AWP for J&J products was used as a reference for reimbursement and not as a price for sales.

50. J&J never sold Procrit at AWP or list price.

51. Centocor never sold any Remicade at AWP or at any price above WAC.

52. In response to the introduction of the drug Aranesp, OBI sought to increase the level of rebates and discounts that it offered to its customers.

53. Schering-Plough's AWPs neither reflected an average nor met OIG Guidelines.

54. Schering-Plough purposefully manipulated and marketed spreads.

55. Schering-Plough marketed Intron A using off-invoice discounts and price protection orders that resulted in inflating the spread between acquisition cost and AWP.

56. Schering-Plough oncology drugs sales representative were trained to provide reimbursement information to the physicians and pharmacies that they called on.

57. Schering-Plough established inflated AWPs with full knowledge that AWP was the benchmark for third-party payors' reimbursements to providers.

All documents and deposition testimony supporting this Local Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment are identified in Plaintiffs' Memorandum in Support of their Motion for Partial Summary Judgment and have been submitted therewith, and these references and source materials are expressly incorporated herewith. In particular, all record cites are identified in Part III of Plaintiffs' Memorandum in Support of their Motion for Partial Summary Judgment, and all documents and

deposition testimony are submitted as exhibits to the Berman Declaration.  Rather than unnecessarily magnify the already substantial pile of paper on file in this case, Plaintiffs have not burdened the Court with a duplication of the record identified and attached in the pleadings submitted herewith.

DATED:  August 30, 2006.

By    /s/ Steve W. Berman
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 7 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of Plaintiffs' attorneys and that, on August 30, 2006, I caused copies of **PLAINTIFFS' L.R. 56.1 COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO THE TRACK 1 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO CLASS 3** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                       /s/ Steve W. Berman
                                                       Steve W. Berman

001534-16  126530 V1