UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | CIVIL ACTION:  01-CV-12257-PBS <br><br> Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE JOHNSON & JOHNSON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLASS 3**

Plaintiffs hereby respond to the Johnson & Johnson Defendants' ("J&J") Motion for Summary Judgment on Class 3.  Class 3 consists of Massachusetts consumers and third-party payors ("TPPs") for certain Medicare Part B covered drugs outside of the Medicare context.  J&J's motion is based on the argument that the spreads for its drugs Procrit and Remicade were not large enough to deceive Plaintiffs and the Class.  As detailed in Plaintiffs' Response to J&J's Motion for Summary Judgment on Classes 1 and 2, J&J's claims rest largely on the self-serving analysis of its own "expert" Jayson Dukes, together with the unsupported assertions about Class members' knowledge concerning the real acquisition prices for both Remicade and Procrit.[1]  Because J&J's Motion for Summary Judgment raises questions of pure fact, it must be denied.

**A.    The Remicade and Procrit Spreads Reveal Deception**

The 30% spread threshold determined by Plaintiffs' economics expert, Dr. Raymond Hartman, is a bright line test, equivalent to a speed limit.  Dr. Hartman explained that the market

---

[1] Plaintiffs incorporate by reference their Opposition to J&J's Motion for Summary Judgment on Classes 1 and 2, including all exhibits and supporting documentation.

understood, and expected, up to a 30% spread between AWP and the actual acquisition cost of physician-administered drugs. *See* Ex. 1 (December 15, 2005, Hartman Liability Decl., ¶ 59(e) p. 40).[2]  AWPs that exceed the 30% threshold are considered deceptive.  It is significant to note that J&J is not claiming it did not manipulate the spread, or that it did not market the spread for its own purposes, but rather that its manipulation of the spreads did not exceed Dr. Hartman's 30% ceiling, or if they did it was not by enough to be deceptive.  *See* J&J's Memorandum in Support of Summary Judgment on Class 3 at 1.

In the case of Remicade, Dr. Hartman calculated that the ASP to AWP spread was, at all times, over the 30% threshold.  J&J acknowledges this, but alleges that Dr. Hartman's spread calculations are incorrect.  The only basis for J&J's assertion is the testimony of its hired accountant, Jayson Dukes.

**B.      Jayson Dukes Is Not an Expert and Not Determinative of Anything**

As discussed previously, Mr. Dukes' report creates, at best, a "battle of the experts" that is not susceptible to resolution in the context of summary judgment.  *See* Plaintiffs' Opposition to the J&J Defendants' Motion for Summary Judgment as to Classes 1 and 2 (April 16, 2006) at 13-15.

Nevertheless, Mr. Dukes' deposition, which was conducted after the briefing of the Class 1 and 2 Summary Judgment Motions, exposed the gossamer thin basis for his "opinions" and his status as an expert.  Shockingly, Mr. Dukes revealed during his testimony that all of his calculations were made at the direction of J&J's counsel.  *See* Ex. 2 (Dukes Dep. at 169-70).  Mr. Dukes did no independent investigation to decide which calculations were appropriate; nor

---

[2] All exhibits referenced in Plaintiffs' Opposition are attached to the Declaration of Steve W. Berman in Support of Plaintiffs' Memorandum in Opposition to the Johnson & Johnson Defendants' Motion for Summary Judgment on Class 3 ("Berman Decl.").

did he analyze or confirm any of the data or statements provided by Centocor. *Id*. at 72, 80, 82, 125.

Mr. Dukes, whose main academic credential is being a Certified Public Accountant, admitted that if he conducted an audit of Centocor or OBI, he would have confirmed all the statements and claims that served as the basis of his opinions. *Id*. at 82-83. Instead, for purposes of this litigation, Mr. Dukes blindly accepted information provided by J&J and its counsel. Certainly, this unverified data cannot serve as the basis of an expert opinion.

Indeed, a similar scenario was presented to the First Circuit in *Irvine v. Murad Skin Research Labs*, 194 F.3d 313, 321 (1st Cir. 1999). In that case, the Court negated a jury verdict after it concluded that an accountant, who reviewed purchase and sales transactions to calculate damages, based his opinions exclusively on representations made by the plaintiff's management and failed to independently examine any documents to verify the accuracy of the information provided. *Id*. In awarding a new trial the First Circuit held, "[a]bsent adequate factual data to support the [accountant]'s conclusions his testimony was unreliable." *Id*. Just as in *Irvine*, Mr. Dukes' unconfirmed, spoon-fed opinion is wholly unreliable and cannot serve as the basis of summary judgment.

Specifically, in the case of Remicade, Mr. Dukes relied on Centocor's claim that all of its sales were at list price. He then reviewed all Centocor sales that were below list price and excluded, or "grossed up," those transactions to list price for one of several reasons, which his declaration misleadingly refers to as "[a]ssumptions." *See* Ex. 3 (Dukes Decl., Attachment 2).

Similarly, in the case of Procrit, Mr. Dukes admitted that he accepted, without any investigation or analysis, the revised class of trade determinations provided by OBI. *See* Ex. 2 (Dukes Dep. at 115, 131-32). Dukes then used this new class of trade calculations to remove

various low priced sales from his analysis, which, of course, had the effect of raising the ASP price of Procrit, and thus, lowering the spread.  Ex. 3 (Dukes Decl., Ex. 5 and ¶ 29).

Mere mathematical calculation and analysis, directed completely by counsel, cannot rise to the level of expert opinion.  *See DataQuill Ltd. v. Handspring, Inc.*, No. 01 C 4635, 2003 U.S. Dist. Lexis 2981, at *11 (N.D. Ill. Feb. 28, 2003) ("We doubt the value … of a hired expert's opinion when the party hiring him has put words … in his report-leaving him, in essence, a highly qualified puppet.").  Mr. Dukes cannot be called an "expert" under any analysis, and his result-oriented conclusions and calculations must be completely disregarded.

In addition, Mr. Dukes' entire report is based on the premise that he calculated ASPs for Procrit with the same methodologies used by Dr. Hartman.  Ex. 3 (Dukes Decl., ¶ 8); *see also* Ex. 2 (Dukes Dep. at 22).  That premise is false.  At his deposition, Mr. Dukes admitted that some of his calculations were not the same as Dr. Hartman's, and in many cases, he simply did not know if he was using the same analysis as Dr. Hartman.  Mr. Dukes admitted that, different from Dr. Harman's analysis and at the direction of defense counsel, he excluded all sales at $0 and subtracted from AWP certain managed care rebates.  Ex. 2 (Dukes Dep. at 87, 97-98). Mr. Dukes also admitted that he simply did not know how Dr. Hartman accounted for prompt payment discounts, service fees, patient assistance fees and certain sales that occurred around price changes.  *Id*. at 41-42, 71-72, 75.  Mr. Dukes excluded all of these sales, which, of course, resulted in higher ASPs and lower spreads.  *Id*. at 166-69.  Mr. Dukes excluded such sales only at the behest of J&J's counsel.  *Id*. at 169-70.

Similarly, Mr. Dukes, the proffered "expert," had no idea whether the calculation of ASP under Medicare required the inclusion of all of the prompt payment discounts, service fees, patient assistance fees, and rebates that he excluded.  *Id*. at 41, 53, 72, 106.  As such, Mr. Dukes'

- 4 -

ASPs are substantially inflated above the ASPs J&J would have been required to report under the Medicare Modernization Act.  42 C.F.R. § 414.804(2) (2006).

Mr. Dukes' calculations are not the work of an expert, but rather the work of a bean-counter directed by J&J's counsel.  Such calculations should be given no weight by the Court, and certainly cannot be the basis to grant summary judgment.

### C.    The Procrit Spreads Are Actionable

J&J seeks summary judgment arguing that spreads on Procrit, while over Dr. Hartman's 30% liability threshold, were not always over the limit or were barely over the limit.  As Dr. Hartman explained during his deposition, the 30% liability threshold is equivalent to a speed limit, and a manufacturer is subject to liability the moment he exceeds the limit.  Ex. 4 (Hartman Dep., 3/1/2006, at 1235-36).  Similarly, Dr. Hartman's analysis plainly indicates that, for many years in the Class Period, Procrit was above the liability threshold for fraud and, therefore summary judgment must be denied.

To get the Procrit spreads under the limit, J&J and Mr. Dukes have misstated and recast Dr. Hartman's spread figures beyond recognition.  The chart of Procrit spreads on page 2 of J&J's Memorandum does not reflect the spreads in Dr. Hartman's December 15, 2005 Declaration, or even the improperly averaged spreads used by Mr. Dukes.[3]  An examination of Dr. Hartman's spread and damage calculations shows that the spreads on at least some NDC's of Procrit were over the 30% threshold in eight different years, resulting in fraudulent overcharges

---

[3] Mr. Dukes performed a separate "weighted average" of all NDCs calculation.  This was not in Dr. Hartman's report.  See Ex. 2 (Dukes Dep. at 120, 168-69).  The clear purpose of such a calculation was to hide the fact that, in many years, some NDCs of Procrit had fraudulent spreads, while others did not.

in those years.[4]  In fact, Dr. Hartman calculated Procrit damages of $1.5 million for Class 3.  *See* Ex. 1 (December 15, 2005, Hartman Liability Decl., Attachment J.4.j).

Also misleading is the chart of Procrit Prices on page 3 of J&J's Memorandum.  J&J suggests that because certain members of Class 3 were paying prices that were near the ASP of Procrit, those Class members were aware of the fraud.  This logic is flawed; the fact that a few Class members bought Procrit at prices that coincidentally were near ASP, does not mean those TPPs, and certainly all members of Class 3, were aware of the actual ASPs, which were closely guarded secrets at J&J.  In fact, the evidence is to the contrary.  *See*, *e.g.*, Hannaford Decl.; Mulrey Decl. ¶¶ 14-15.

Interestingly, nowhere did J&J ask a witness or show a witness its ASPs and its spread marketing documents, and ask if a witness was aware of this information.  And the answer is no one was aware of this information.  J&J thus seeks summary judgment as to an entire Class, based on inferences it draws from the price paid by some Class members.  This is not a basis for summary judgment.

## CONCLUSION

As set forth above, J&J has not established any legitimate basis to challenge Plaintiffs' Class 3 claims; therefore, J&J's Motion for Summary Judgment must be denied.

---

[4] Dr. Hartman shows fraudulent spreads and damages in 1993, 1995, 1996, 1997, 1998, 1999, 2002 and 2003.  *See* Ex. 1 (December 15, 2005, Hartman Liability Decl., Attachments G.4.c and J.4.j).

| | |
|---|---|
| DATED:  August 30, 2006. | By      /s/ Steve W. Berman          |

    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

- 7 -

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 9 -

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 30, 2006, I caused copies of **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE JOHNSON & JOHNSON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLASS 3** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


      **/s/ Steve W. Berman**
      Steve W. Berman