UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF STEVE W. BERMAN PURSUANT TO RULE 56(F) WITH RESPECT TO SCHERING-PLOUGH'S MOTION FOR SUMMARY JUDGMENT AS TO CLASS 3**

I, Steve W. Berman, under penalty of perjury, and pursuant to Fed. R. Civ. P. 56(f), declares as follows:

1.  I am one of the attorneys for Class Plaintiffs in this matter.

2.  Pursuant to Rule 56(f), I request that the Court allow additional discovery in response to Schering's Motion for Summary Judgment on Class 3 (and as to all classes).

3.  One of the drugs at issue in this case is Intron-A, a drug used in treatment of superficial bladder cancer and Hepatitis C. Plaintiffs believe and have submitted evidence demonstrating that the AWPs for this drug were inflated.

4.  Plaintiffs have propounded discovery calling for all documents evidencing inflation of AWPs for this drug, including interrogatories asking for the specifics of discounts, free goods, kickbacks, and the like for each drug.

5.  According to the U.S. Attorney's Office in Boston, on August 29, 2006, Schering-Plough agreed to pay a total of $435 million to resolve criminal and civil charges in connection

- 1 -

- 2 -

with illegal sale and marketing of Temodar and Intron-A.  A copy of that Release is attached as Exhibit A.

6. According to the Release, Schering induced physicians to start patients on Intron-A by paying their kickbacks and did so for Temodar via other inducement.  The Release states: "Scheming induced physicians to start patients on Intron-A for Hepatitis C by paying them remuneration . . . ."  It further states that with respect to Temodar, inducement included preceptorships, entertainment, and other remuneration.  According to the *Wall Street Journal* (*see* Exhibit B), **these inducements included paying doctors up to $500 for each patient started on Temodar and Intron-A**.

7. These $500 payments, as well as other inducements and kickbacks, would be highly relevant to calculation of ASP and bear directly on the extent of AWP inflation and on the unfair and deceptive practices perpetuated by Schering.

8. Plaintiffs do not believe that evidence relating to these payments/inducement has been produced.  This evidence is material to rebutting the Motion for Summary Judgment.  It is also material to deciding whether Temodar should be part of Class 3.  It should be evidence easily produced by Schering.

Executed this 30th day of August, 2006.

                                                             **/s/ Steve W. Berman**
                                                             STEVE W. BERMAN

- 3 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF STEVE W. BERMAN PURSUANT TO RULE 56(F) WITH RESPECT TO SCHERING-PLOUGH'S MOTION FOR SUMMARY JUDGMENT AS TO CLASS 3**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 30, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

      By      **/s/ Steve W. Berman**
         Steve W. Berman
         **HAGENS BERMAN SOBOL SHAPIRO LLP**
         1301 Fifth Avenue, Suite 2900
         Seattle, WA  98101
         (206) 623-7292

# EXHIBIT A



U.S. Department of Justice

**Michael J. Sullivan**
*United States Attorney*
*District of Massachusetts*

*Press Office: (617) 748-3139*

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

August 29, 2006

PRESS RELEASE

**SCHERING TO PAY $435 MILLION FOR
THE IMPROPER MARKETING OF DRUGS AND
MEDICAID FRAUD**

Boston, MA... Delaware corporation **SCHERING-PLOUGH CORPORATION**, together with its subsidiary, **SCHERING SALES CORPORATION** have agreed to pay a total of $435,000,000 to resolve criminal charges and civil liabilities in connection with illegal sales and marketing programs for its drugs Temodar for use in the treatment of brain tumors and metastases, and Intron A for use in treatment of superficial bladder cancer and hepatitis C. The resolution also pertains to Medicaid fraud involving Schering's drugs Claritin RediTabs, a non-sedating antihistamine, and K-Dur, used in treating stomach conditions.

United States Attorney for the District of Massachusetts Michael J. Sullivan, Department of Health and Human Services Regional Inspector General Joseph Moraski, United States Food and Drug Administration Special Agent in Charge Mark Dragonetti, Department of Defense Criminal Investigative Service Special Agent in Charge Edward Bradley, and Department of Veteran's Affairs Special Agent in Charge Jeffrey Hughes announced today that **SCHERING SALES CORPORATION** will pay a $180,000,000 criminal fine and, together with **SCHERING-PLOUGH CORPORATION**, another $255,000,000 to settle civil liabilities. Today's global resolution ensures that the federal Medicaid program and each of the State Medicaid agencies which paid for prescriptions of Claritin RediTabs and K-Dur will obtain the benefit of the best price offered by Schering to commercial purchasers of those drugs, and will ensure that Schering pays appropriate damages for improperly promoting its drugs for uses not approved by the FDA and from offering or paying kickbacks to physicians to prescribe those drugs.

"The Justice Department is committed to rooting out and prosecuting health care fraud," said Deputy Attorney General Paul J. McNulty. "It is vital to public health and safety that pharmaceutical companies are deterred from improperly marketing their drugs to doctors and patients to treat illnesses that these drugs are not approved to treat. This settlement sends a clear message to the pharmaceutical industry that the Justice Department will not tolerate these deceptive and illegal marketing practices."

"The American people, as both taxpayers and consumers, expect our health care system to be free from fraud and corruption," stated U.S. Attorney Michael J. Sullivan. "The pharmaceutical industry has an obligation to ensure that all rules, regulations and laws are complied with. To do less erodes public confidence, compromises the patient physician relationship and adds costs to important government programs. We will not tolerate attempts to profit at the expense of the ill and needy in our society."

To resolve the criminal charges, **SCHERING SALES CORPORATION** has agreed to plead guilty to a one count criminal conspiracy to make false statements to both the Food and Drug Administration regarding its improper drug promotional activity and to the Health Care Financing Administration regarding its best price for certain drugs, and to pay a $180,000,000 criminal fine. As a result of its criminal conviction, **SCHERING SALES** will be excluded permanently from participation in all federal health care programs.

**SCHERING PLOUGH CORPORATION** also agreed to settle its civil False Claims Act liabilities and liabilities under the Food Drug and Cosmetic Act for a total of $255,025,000. Specifically, **SCHERING** will pay $159,502,000, plus interest, to the United States in civil damages for losses suffered by the Medicare program, the federal portion of the Medicaid program, the Veteran's Administration, the Department of Defense and the Federal Employees Health Benefits program as a result of **SCHERING's** improper drug promotion and marketing misconduct, and Medicaid rebate fraud. **SCHERING** will also pay a total of $91,602,000, plus interest, to settle its civil liabilities to the fifty states and the District of Columbia for losses the state Medicaid programs suffered. In addition, **SCHERING** will refund $3,921,090 to the Public Health Service (PHS) programs that also were entitled to a lower price on certain drugs.

The first object of the conspiracy to which **SCHERING SALES** will plead guilty charges that it conspired with others to give free Claritin Redi-Tabs to a major health maintenance organization to disguise a new lower price being offered to the HMO to obtain its business. Drug manufacturers are required to report their best price on drugs provided to certain commercial customers, including HMOs, to the Health Care Financing Administration ("HCFA"), and to pay quarterly rebates to the Medicaid program, the nation's taxpayer funded health insurance program for the poor and disabled, to be sure the Medicaid program obtains the benefit of that low price. From April 1998 through 1999, **SCHERING SALES** reported a false best price to HCFA, which failed to include the new low price of Claritin Redi-Tabs provided to the HMO, to avoid paying millions of dollars in additional rebates to the Medicaid program.

"Investigation of prescription drug fraud is a priority of the Office of Inspector General (OIG) and resolution of this case stems from OIG's strong relationship with our law-enforcement partners," said Daniel R. Levinson, Inspector General of the U.S. Department of Health and Human Services. "In addition to enforcement, OIG strongly supports implementation of compliance measures by pharmaceutical companies that are designed to address all risk areas of their business - whether they be pricing, marketing or promotional practices. The expanded Corporate Integrity Agreement with Schering-Plough incorporates additional ways for OIG and the Company to monitor these issues and minimize the risk of off-label promotion."

2

"The Centers for Medicare & Medicaid Services is committed to protect the Medicare program for beneficiaries and taxpayers, and with the implementation of the prescription drug benefit, it is even more important for the Government to fully investigate health care fraud relating to prescription drugs," said CMS Administrator Mark B. McClellan, M.D., Ph.D. "At the same time, drug manufacturers have a duty to implement strong compliance measures that will address all risk areas of their business including pricing, marketing or promotions. "

The second object of the conspiracy to which **SCHERING SALES** will plead guilty charges that it conspired with others to make false statements to the FDA in response to the FDA's inquiry regarding certain illegal promotional activities by the Company's sales representatives at a national medical conference for oncologists. Those false statements were designed to reassure the FDA that the promotional activities were isolated and not directed by home office, when in fact, the activities were widespread and part of the national marketing plan. In addition, the Company sought to falsely lull the FDA into believing that it had taken appropriate steps to reinforce the message with its sales representatives that such promotional activities were prohibited, when in fact, the Company knew and expected that those activities would continue.

"The FDA takes seriously its responsibilities to protect consumers from products that are promoted for unapproved uses," says Margaret Glavin, the FDA's Associate Commissioner for regulatory affairs. "Pharmaceutical manufacturers who mislead FDA place consumers at risk."

The civil settlement resolves allegations that **SCHERING-PLOUGH CORPORATION** and **SCHERING SALES** knowingly caused the submission of false and/or fraudulent claims for **SCHERING'S** drugs that were not eligible for reimbursement. These included the government's claims that (1) **SCHERING** misreported its best price to HCFA on Claritin ReidTabs to evade Medicaid rebate liability, (2) **SCHERING** misreported its best price on private-labeled K-Dur to HCFA to evade Medicaid rebate liability, (3) **SCHERING** overcharged the PHS entities because of its misreporting of best price to HCFA, (4) **SCHERING** induced physicians to start patients on Intron A for Hepatitis C by paying them remuneration through three marketing programs, (5) **SCHERING** induced physicians to use Temodar for certain patients with brain tumors and brain metastases and to use Intron A for certain patients with superficial bladder cancer through improper preceptorships, sham advisory boards, lavish entertainment, and improper placement of clinical trials; and (6) **SCHERING** knowingly promoted off label uses of Temodar for certain brain tumors and brain metastases and Intron A for superficial bladder cancer despite not having FDA approval.

**SCHERING-PLOUGH CORPORATION** will be subject to an amendment to its existing Corporate Integrity Agreement. That amendment requires Schering to continue extensive work that the Company has undertaken in the last two years to monitor and correct the shortcomings in Schering's drug sales, marketing and pricing activities. After the activities were uncovered by the government, **SCHERING-PLOUGH** cooperated with the investigation and actively worked on compliance issues through a significantly expanded compliance department.

The investigation was conducted by the Food and Drug Administration's Regional Office of Criminal Investigations in both Boston and Miami; the Department of Health and Human Services' Office of Inspector General, Office of Investigations; the Defense Criminal Investigative Service of the Department of Defense; and the United States Office of Veteran's Affairs' Office of the Inspector General.

Assistance in the investigation was also provided by Patrick Lupinetti, Director of the New York State Attorney General's Special Projects and Medicaid Fraud Control Unit and David Waterbury, Director of the Washington State Attorney's General's Medicaid Fraud Control Unit, who coordinated the National Medicaid Fraud Units. The criminal investigation and resolution were handled by Assistant U.S. Attorneys Susan Winkler, Chief of Sullivan's Health Care Fraud Unit, and Jeremy Sternberg. The civil investigation and settlement were handled by Assistant U.S. Attorneys Susan Winkler, Jennifer Boal, Chief of Sullivan's Civil Division, Gregg Shapiro, and Department of Justice Trial Attorney Andy Mao of the Fraud Section of the Civil Division. The Amendment to the Corporate Integrity Agreement was negotiated by Senior Counsel Mary Riordan in the Office of General Counsel in the Department of Health and Human Services, Office of Inspector General.

Press Contact: Christina DiIorio-Sterling, (617) 748-3356

# EXHIBIT B

# Schering-Plough Settles Charges for $435 Million

Schering-Plough Corp. agreed to pay $435 million and a unit pleaded guilty to criminal charges to settle federal allegations of fraudulent drug marketing and pricing.

The settlement is one of the largest in a crackdown that has forced Schering-Plough

*By Sylvia Pagan Westphal and Zachary M. Seward in Boston and John Carreyrou in New York*

and other big drug marketers to return billions of dollars the government says were illegally extracted from Medicare and Medicaid. Schering-Plough, of Kenilworth, N.J., will pay $255 million to settle related civil accusations. Its Schering Sales unit will pay a $180 million criminal fine.



The government accused the company of illegally inducing doctors to prescribe a number of drugs, including the cancer medications Temodar and Intron A and several hepatitis treatments, by, among other things, paying doctors up to $500 for each patient started on therapy, placing Schering-Plough-funded physician assistants in doctor's offices or paying doctors to attend Schering-Plough events.

According to prosecutors, Schering-Plough hid favorable prices it had negotiated with some health plans for two of its drugs, Claritin Redi-Tabs and K-Dur, overcharging Medicaid as a result. Drug makers are required to give Medicaid the lowest price paid by any other buyer.

Schering Sales agreed to plead guilty to one count of criminal conspiracy for making false statements regarding its price for Claritin as negotiated with a health plan and for lying to the Food and Drug Administration about its promotion of Temodar and Intron A. Except for that plea, Schering-Plough neither admitted or denied other wrongdoing alleged in the settlement.

## Side Effects

Timeline of Schering-Plough's legal problems:

- **May 2002** The FDA fines Schering-Plough $500 million and forces it to revamp its manufacturing under a consent decree
- **April 2003** Fred Hassan succeeds Richard Kogan as CEO.
- **September 2003** The SEC fines Schering-Plough $1 million and Kogan $50,000 for selectively disclosing material information.
- **July 2004** Schering-Plough pays $345.5 million to settle charges brought by the U.S. Attorney in Philadelphia that it defrauded Medicare.
- **Aug. 29, 2006** Schering-Plough pays $435 million to resolve similar criminal charges brought by the U.S. Attorney in Boston and civil liabilities.

Source: WSJ research

"We will not tolerate corporate attempts to profit at the expense of the ill and needy in our society," said Michael Sullivan, the U.S. attorney in Boston, whose office brought the case.

The settlement, subject to court approval, resolves the biggest remaining liability Schering-Plough Chief Executive Fred Hassan inherited from previous management. Mr. Hassan took the helm in 2003 with a mandate to turn around the drug maker after it was crippled by a series of problems, ranging from shoddy manufacturing to federal investigations.

"With this agreement, we are putting issues from the past behind us," Brent Saunders, senior vice president of global compliance and business practices, said in a statement.

A company's criminal conviction or guilty plea can often be fatal. But in its health-care cases, the government has repeatedly reached settlements that exact a guilty plea while avoiding the direst consequences.

The guilty plea from Schering Sales means it can no longer sell drugs to the government, but its marketing functions have been taken over by other parts of the company, which are permitted to continue doing business with Medicaid and Medicare.

Schering Sales "is an entity whose sole purpose is to plead guilty in these matters," said Mr. Saunders. "Schering-Plough takes responsibility for the actions of the past while not putting patients in a position where they can't get important medications," he said.

According to the government's complaint, Schering-Plough realized approximately $124 million in before-tax profits from its off-label marketing of Intron A and Temodar. In the case of Claritin, the company failed to pay the government program more than $4 million in rebates, the complaint said.

The settlement follows a similar agreement two years ago with the U.S. attorney in Philadelphia. Under that deal, Schering-Plough pleaded guilty and paid $345.5 million to settle charges that it defrauded Medicare by overcharging the agency for allergy drug Claritin.

Mr. Sullivan said his office's investigation of Schering-Plough was continuing, and he wouldn't rule out future criminal charges.

In July 2005 the company said it had added $250 million to its litigation reserves, for a total of $500 million, relating to the investigation.

**Online Today:** *WSJ.com subscribers can read the U.S. Attorney's statement on the government's settlement with Schering-Plough, at* **WSJ.com/OnlineToday**.