# EXHIBIT 4

<u>Exhibit D</u>

CLASS ESCROW AGREEMENT

This Class Escrow Agreement (this "Agreement") is made and entered into by Frontier Bank through its Trust Department (the "Escrow Agent"), SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") and Class Plaintiffs as defined in the Settlement Agreement and Release of the GlaxoSmithKline Defendants dated on or about August 10, 2006 ("GSK MDL Settlement Agreement"), in consideration of the following promises of each party. GSK and Class Plaintiffs are referred to collectively as the "Settling Parties" in the litigation entitled *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (the "MDL Class Action"). Unless otherwise provided herein, the terms defined in the GSK MDL Settlement Agreement shall have the same meaning in this Agreement

## I.   Terms and Conditions

1. GSK and Lead Class Counsel hereby appoint the Escrow Agent to establish and administer an escrow account on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

2. GSK shall deliver to the Escrow Agent a settlement payment in the amount of $65,500,000.00 as required by Paragraph 3(a) of the GSK MDL Settlement Agreement in immediately available United States funds (the "Class Escrow Funds") pursuant to the wire transfer instructions provided in paragraph 1 of Section IV below. Escrow Agent shall confirm receipt of such funds in writing to the Settling Parties.

3. Until the Escrow Agent receives written notification from counsel for GSK and Lead Class Counsel that the GSK MDL Settlement Agreement has become effective, it shall invest and reinvest the Class Escrow Funds in United States Agency or Treasury Securities (or a mutual fund investing solely in such instruments) or other similar short-term United States government obligations as shall be directed in writing by Lead Class Counsel for the Class Plaintiffs and as shall be acceptable to the Escrow Agent. In the absence of written direction from the Settling Parties regarding the investment of the Class Escrow Funds, Escrow Agent will invest and reinvest the Escrow Funds in the STI Classic U.S. Treasury Money Market Fund. For the purposes of this Agreement, the date on which the GSK MDL Settlement Agreement shall become effective is as defined in Paragraph 13 of the GSK MDL Settlement Agreement.

4. All interest on or other income realized by investment of the Class Escrow Funds or any portion thereof shall be accumulated and added to the Class Escrow Funds.

1

131728v2

        Any investment losses realized by investment of Class Escrow Funds or any portion thereof shall be charged to the Class Escrow Funds.

5. This Escrow Agreement and the Class Escrow Funds are subject to the supervision and control of the United States District Court for the District of Massachusetts (the "MDL Court"). Except as set forth in paragraph 6(a) and 6(b) of this Section I, the Class Escrow Funds shall be withdrawn or otherwise removed from the Escrow Account established pursuant to this Class Escrow Agreement only in accordance with the terms of an order of the MDL Court delivered to the Escrow Agent by Lead Class Counsel.

6. The Escrow Agent shall deliver the Escrow Funds only as set forth below:

    (a) Following receipt of written notice signed by counsel for GSK and Lead Class Counsel stating that the MDL Settlement Agreement has not been approved by the MDL Court or has been cancelled or terminated or has otherwise become null and void for any reason, the Escrow Agent shall disburse the Class Escrow Funds, including any interest or other income earned thereon, to GSK net of taxes paid or due with respect thereto, the fees and costs paid or incurred for the settlement notice, and any fees or costs paid or incurred for administration of the Escrow Account;

    (b) Regardless of whether the GSK MDL Class Agreement has become effective, the Escrow Agent shall disburse funds as needed for

       (i) payment of taxes or estimated taxes that become due on income earned by the Class Escrow Funds, as determined by Complete Claims Solutions, Inc. ("CCS"), the Class Administrator for the Settlement, with notice of such payments to Lead Class Counsel and GSK;

       (ii) payment of the costs associated with claims administration including, but not limited to, settlement notice. Such payment will be made at the direction of Lead Class Counsel, with notice of such payments provided to GSK; and

       (iii) all other payments contemplated by the GSK MDL Settlement Agreement and authorized by the MDL Court by court Order delivered to the Escrow Agent by Lead Class Counsel.

    (c) After receipt of written notice signed by counsel for GSK and Lead Class Counsel stating that the MDL Settlement Agreement has become effective, the Escrow Agent shall, upon receipt of an order of the Court so directing

       (i) disburse any remaining amounts for reimbursement or payment of costs and expenses incurred in the provision of notice to the members of the

2

131728v2

    Class and the administration and distribution of the settlement, in accordance with such order of the Court; and

    (ii) distribute the remaining Escrow Funds, as ordered by the Court.

    provided, however, that the Escrow Agent shall retain amounts in the Escrow Account necessary for the payment of taxes or estimated taxes and fees and expenses of the Escrow Agent, as directed by Lead Class Counsel.

7. The Class Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of the Settling Parties, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Class Escrow Funds to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

8. After the GSK MDL Settlement Agreement becomes effective, GSK shall no longer have any interest in the Class Escrow Funds, and shall no longer have any rights or obligations under this Class Escrow Agreement.

9. All Counsel for all Settling Parties' each warrant to and agree with Escrow Agent that, unless otherwise expressly set forth in this Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Class Escrow Funds or any part of the Class Escrow Funds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Class Escrow Funds or any part of the Class Escrow Funds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Class Escrow Funds or any part of the Class Escrow Funds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Class Escrow Funds or any part thereof.

## II. Provisions as to Escrow Agent

1. This Escrow Agreement expressly and exclusively sets forth the duties of Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Class Escrow Agreement against Escrow Agent.

2. This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this

escrow. Unless it is signed by the Escrow Agent as a party, no other agreement including the GSK MDL Settlement Agreement entered into between the parties, or any of them, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with Escrow Agent or the Escrow Agent may have knowledge thereof.

3. Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4. Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Class Escrow Agreement. The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Class Escrow Agreement.

5. Escrow Agent shall be protected in acting upon any document which Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Class Escrow Funds.

6. In the event of any disagreement between any of the parties to this Class Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Agreement, or in the event that Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the United States District Court for the District of Massachusetts, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and Escrow Agent shall have been notified thereof in writing signed by all such parties.

7. Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

4

8. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Class Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

9. The Escrow Agent will maintain a daily record of all transactions in the Class Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than annually) reflecting all such transactions and the property held in the account as of the end of the reporting period.

10. The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary. The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

### III. Compensation of Escrow Agent

1. Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Class Escrow Agreement (including reasonable fees and expenses of Escrow Agent's counsel). Lead Class Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to other provisions of this paragraph. The Escrow Agent is entitled to reimbursement for reasonable expenses for each year or any part thereof.

2. The Escrow Agent shall not debit the Class Escrow Funds for any charge for its fees or its costs and expenses, until it shall have received a copy of an order issued by the Court, approving the amount of fees, costs and expenses to which it is entitled. Fees and expenses of the Escrow Agent charged against the Escrow Funds shall, to the extent possible, be paid out of interest earned.

### IV. Miscellaneous

1. Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

    If to Escrow Agent:

5

131728v2

       Frontier Bank - Trust Department
       2825 Colby Avenue
       Everett, WA 98201-3512

       <u>Cash / Wire Instructions</u>:

       Frontier Bank Everett
       ABA #125107626
       Frontier Bank Trust Department  Account #3226000226
       FFC: (GSK AWP Settlement Class Escrow Fund/#62-3300)

If to Lead Class Counsel:

       Edward Notargiacomo
       HAGENS BERMAN SOBOL SHAPIRO LLP
       One Main Street, 4th Floor
       Cambridge, MA 02142Seattle, WA 98101
       Telephone: (617) 482-3700
       Facsimile: (617) 482-3003

If to GSK

       Frederick G. Herold
       Dechert LLP
       1117 California Avenue
       Palo Alto, CA
       94304-1106
       Telephone: (650) 813-4930
       Facsimile: (650) 813-4848

If to CCS:

       Thomas R. Glenn
       Sr. Vice President & COO
       Complete Claim Solutions, LLC
       5210 Hood Road
       Palm Beach Gardens, Florida 33418
       Telephone: (561) 651-7777
       Facsimile: (561) 651-7788 Fax

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

2.    Any disputes arising under this agreement will be governed by Massachusetts law. It shall inure to and be binding upon the parties hereto and their respective

successors, heirs and assigns. All representations, covenants, and indemnifications contained in this Class Escrow Agreement shall survive the termination of this Class Escrow Agreement.

3. The terms of this Class Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4. If any provision of this agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5. The Escrow Agent may resign at any time from its obligations under this Class Escrow Agreement by providing written notice to the parties hereto. Such resignation shall be effective not less than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement. The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent. Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6. All titles and headings in this Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8. This Agreement shall be effective as of the date the last party to this Agreement fully and appropriately executes this document.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.

Dated: September 5, 2006

_____
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel


Dated: August ___, 2006

_____
Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 813-4930
Facsimile: (650) 813-4848

Counsel for SmithKline Beecham Corporation, d/b/a GlaxoSmithKline


Dated: August ___, 2006

_____
Kari L. Dahl
Vice President & Manager Trust Administration
Frontier Bank - Trust Department
2825 Colby Avenue
Everett, WA 98201-3512
Telephone: (425) 258-0225
Facsimile: (425) 258-0216

Escrow Agent Frontier Bank – Trust Department

Dated: August ___, 2006

_____
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel

Dated: August 28, 2006

_____
Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 813-4930
Facsimile: (650) 813-4848

Counsel for SmithKline Beecham Corporation, d/b/a GlaxoSmithKline

Dated: August ___, 2006

_____
Kari L. Dahl
Vice President & Manager Trust Administration
Frontier Bank - Trust Department
2825 Colby Avenue
Everett, WA 98201-3512
Telephone: (425) 258-0225
Facsimile: (425) 258-0216

Escrow Agent Frontier Bank – Trust Department

Dated: August ____, 2006

_____
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel

Dated: August ____, 2006

_____
Frederick G. Herold
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 813-4930
Facsimile: (650) 813-4848

Counsel for SmithKline Beecham Corporation, d/b/a GlaxoSmithKline

Dated: August 28, 2006

*/s/ Kari L Dahl*
_____
Kari L. Dahl
Vice President & Manager Trust Administration
Frontier Bank - Trust Department
2825 Colby Avenue
Everett, WA 98201-3512
Telephone: (425) 258-0225
Facsimile: (425) 258-0216

Escrow Agent Frontier Bank – Trust Department

8

131728v2