UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) ) THIS DOCUMENT RELATES TO: ) ALL CONSOLIDATED PRIVATE CLASS ) ACTIONS ) | MDL No.1456 <br><br> Civil Action No. 01-CV-12257-PBS <br><br> Judge Patti B. Saris <br><br> Chief Magistrate Judge Marianne B. Bowler |

**TRACK 2 DEFENDANTS' NOTICE OF SUPPLEMENTAL
EVIDENCE RELEVANT TO CLASS CERTIFICATION**

In the Court's August 16, 2005 opinion on Track 1 Class Certification, the Court gave plaintiffs leave to file a third amended complaint naming Medicare Part B Class representatives "[b]ecause plaintiffs state that they have individuals waiting in the wings . . ." 8/16/05 Opinion at p. 44. Thereafter, plaintiffs filed two more amended complaints proposing different individual class representatives for the Medicare Part B claims. After the close of briefing on class certification, plaintiffs' counsel produced documents from Community Catalyst, a non-profit organization affiliated with the Prescription Access Litigation Project ("PAL"). Both Community Catalyst and PAL, in turn, are affiliated with the lead firm representing plaintiffs in this action. These documents show that, after the Court's August 16, 2005 Order, the following occurred:

- Plaintiffs' counsel, Community Catalyst and PAL "mounted an unprecedented outreach effort to identify class action representatives for the three classes Judge Saris certified and/or provisionally certified" before the October 17, 2005 filing deadline for the Third Amended Master Consolidated Complaint. In discussions with plaintiffs' counsel "following the issuance of the class certification order," these organizations agreed to "pursue the broadest and most intense outreach strategies possible." See Declaration of Aimée E. Bierman in Support of Track 2

Defendants' Notice of Supplemental Evidence Relevant to Class Certification ("Bierman Decl.") Ex. A.

- PAL solicited non-profit organizations around the country by advertising that "PAL attorneys are making grants available to certain groups that can help identify people who might be eligible to join the case." The sole purpose of these grants was to identify eligible class representatives. See Bierman Decl. Ex. B.

- Interested organizations sent grant proposals to PAL describing actions they would take to find individual plaintiffs (See Bierman Decl. Ex. A). It appears that plaintiffs' counsel paid $100,000 to thirteen of these organizations. One of the $10,000 payments was made to a putative named plaintiff, Health Care For All. See Bierman Decl. Ex. C.

- The grant recipients engaged in wide-ranging strategies to find class representatives. Tactics included automated calls to targeted groups, emails to members of the non-profit organizations, newspaper and radio advertisements, contacting retirement and health care facilities, and mass mailings. Through these strategies, thousands of potential class representatives were contacted. See Bierman Decl. Ex. A.

- Plaintiffs' counsel was directly involved in crafting this outreach program, including the specific questions to be asked. See Bierman Decl. Ex. D.

- All potential leads were directly forwarded to plaintiffs' counsel to determine whether they fit within the class definitions. See Bierman Decl. Ex. E.

- "[A]fter having moved heaven and earth to locate people, and having generated hundreds of intakes" not one eligible plaintiff was identified by the project. As stated by Community Catalyst, "[f]inding these plaintiffs is damn near impossible." See Bierman Decl. Ex. F.

- Plaintiffs' counsel then "worked out arrangements with a law firm that had actively gone after consumers over time" to find the individuals named in the Third Amended Master Consolidated Complaint. See Bierman Decl. Ex. G.

- After the outreach effort failed to identify a single class representative, a PAL official stated "we engaged in enormous efforts to find these individuals" and identified "hundreds of individuals who appeared at first blush to be eligible, who only turned out to be ineligible after investigation of medical records, etc." The same official commented that "[g]iven that in addition to PAL, dozens of firms (with the resources that such firms are able to command, I might add) were also looking for plaintiffs, I believe will in fact demonstrate the near-intractability of this effort." See Bierman Decl. Ex. H.

- In assessing the reasons why the outreach program failed to identify a single eligible class representative, PAL noted that:

2

- o Individuals who paid based on AWP make up "such a small sliver of Medicare beneficiaries," and it is difficult "to track down eligible folks." See Bierman Decl. Ex. A.

- o Even "individuals and other groups [who] were receptive to the case and understood its importance" did not "call [ ] the lawyers." See id.

- o Individuals were reluctant to take on the "commitment, responsibilities and vulnerabilities involved" in being a named plaintiff, "especially where there is no big financial incentive (people have to be pretty committed to the issue)." See id.

- o "Many people were unclear about their own insurance situations (e.g., didn't even know they had supplemental coverage; didn't distinguish between supplemental coverage and other Rx drug coverage." See id.

- In a later meeting on the same subject, PAL identified many of these factors as "The Obstacles" to the outreach effort. See Bierman Decl. Ex. I.

These documents support the arguments previously briefed by the Track 2 defendants in opposition to class certification. Among other things, they show that class certification is inappropriate here because "class members [are] impossible to identify prior to individualized fact-finding and litigation." See Track Two Defendants' Memorandum In Opposition to Class Certification at p. 39 (quoting Crosby v. Social Sec. Admin., 796 F.2d 576, 580 (1st Cir. 1986)).

Dated:  September 6, 2006                     Respectfully submitted,

                                                              s/ Michael DeMarco
Michael DeMarco (BBO #119960)
 mdemarco@klng.com
Aimée E. Bierman (BBO #640385)
 abierman@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
(617) 261-3100

3

>Michael L. Koon
>James P. Muehlberger
>Nicholas Mizell
>Shook, Hardy & Bacon L.L.P.
>2555 Grand Blvd.
>Kansas City, Missouri 64108-2613
>(816) 474-6550
>
>Attorneys for Aventis Pharmaceuticals Inc. and on behalf of the following Track 2 Defendants: Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare Incorporation, Fujisawa USA, Inc., Hoechst Marion Roussel, Inc., Immunex Corporation, Pfizer Inc., Pharmacia Corp., Pharmacia & Upjohn, Sicor Inc. f/k/a Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring LLC.

## **CERTIFICATE OF SERVICE**

I, Michael DeMarco, hereby certify that on September 6, 2006, I caused a true and correct copy of the foregoing Track 2 Defendants' Notice of Supplemental Evidence Relevant to Class Certification to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


Dated: September 6, 2006               /s/ Michael DeMarco
                                       Michael DeMarco