# EXHIBIT "A"



30 WINTER STREET
SUITE 1010
BOSTON, MA 02108
TEL 617.338.6035
FAX 617.451.5838
HTTP://PRESCRIPTIONACCESS.ORG

## MEMORANDUM

To:     Alex Sugerman-Brozan, Steve Rosenfeld, Rob Restuccia, Susan Sherry, Steve
        Berman, Tom Sobol, Wanda Garcia

From:   Renée Markus Hodin

Date:   October 26, 2005

Re:     AWP Outreach Efforts – Post Class Certification Order

Following Judge Saris' August 16, 2005 Order regarding class certification in the AWP
case, PAL and its member organizations mounted an unprecedented outreach effort to
identify class action representatives for the three classes Judge Saris certified and/or
provisionally certified.

Despite these efforts, no plaintiffs were ultimately identified in time for the October 17,
2005 filing of the Third Amended Master Consolidated Complaint. This memo examines
our outreach efforts for the purpose of contributing to the larger evaluation among the
AWP team. We want – and expect -- to be part of further discussions about why much of
the team's efforts failed to yield eligible plaintiffs, in the hopes of developing new
strategies for identifying plaintiffs in the next stages of the case (and in other cases). **I
will be in touch to schedule a conference call among PAL, CC and HBSS.**

### Overall Approach

In discussions with HBSS following the issuance of the class certification order, we all
agreed that we should pursue the broadest and most intense outreach strategies possible.
The underlying assumption was that reaching the most people possible would result in
the identification of eligible plaintiffs.

### Individual Plaintiffs

In order to reach individuals who might have qualified for (a) the proposed nationwide
class of Medicare beneficiaries; or (b) the class of Massachusetts individuals outside the
Medicare context, PAL implemented the following strategies:

- Designed extensive new materials, including talking points, flyers, fact sheets,
  newsletter articles, lists of drugs with indications
- Coordinated grant program for 13 groups (see attachments for workplans) –
  solicited and shaped proposals, provided ongoing feedback, check-ins and

1

AWP-PAL-00074

assistance (e.g. additional materials, suggestions for additional and more targeted outreach)

- Two nationwide e-mail alerts to all PAL member groups asking them to participate in plaintiff recruitment – provided them with downloadable banner and button for their websites, provided them with flyers to distribute
- Re-designed PAL website to focus on AWP recruitment; featured banner on top of all pages and new intake form
- Purchased and staffed a table at the Alliance for Retired Americans annual conference. Used raffle to get individuals to complete screening forms. Received approximately 100 forms, each of which was followed up with a phone call and intake.
- Fielded approximately 80 e-mails and phone calls generated by the Alliance for Retired Americans' *Friday Alert*; conducted intakes with each
- Searched the PAL database for each Track I drug and contacted all individuals matching to those drugs (15 individuals).
- Maintained detailed database of AWP intakes (approximately 200 in total).
- Worked with Families USA to get them to post AWP-related materials on their website.
- Worked with Medicare Rights Center hotline counselors to get them to screen callers for Track 1 drugs and/or interest in the case
- Designed materials that were targeted to disease group outreach – breast cancer, AIDS
- Discussed the case with -- and sent AWP materials to -- service agencies such as H.O.M.E., and Mass Home Care
- Fielded robocalls from Citizen Action of New and New Jersey Citizen Action (approximately 30 in total)

As a result of PAL's own intakes, the following individuals were passed along to HBSS for further contact and investigation:

- Betty Brennan
- Regina Galeene
- Judy Stevens
- Thomas Burnett
- Kit Carson
- Rosalind Sandler
- Mary Lee McLure
- Mildred Cliff White
- Don Coleman
- Clyde Oskins
- Amy Radewahn
- Frank Brice
- Dorothy Davies
- Jo C. Williams
- Liz Gardener

2

AWP-PAL-00075

- Roxanne Johnson
- Martin Cooper
- Joyce Cooper

We received reports back on the status of some of these potential plaintiffs, but not on others.

Although we have not yet received information from all HBSS attorneys/paralegals fielding calls, we can safely say that they fielded several hundred calls on the case.

### Third-Party Payor Plaintiffs

In addition to the outreach to individuals, PAL also did extensive outreach and recruitment to Massachusetts Third-Party Payors (TPPs) who potentially qualified to be class representatives in the certified class of Massachusetts TPPs who made payments for Track 1 drugs. PAL contacted and recruited the following TPPs.

(1) Commonwealth Care Alliance – Because they only started making payments in 2004, they were deemed to be ineligible
(2) New England Council of Carpenters Health & Welfare Fund – Intense recruitment, resulted in willingness to participate. Ultimately discovered that they were not eligible because payments were not based on AWP.
(3) Massachusetts Coalition of Taft-Hartley Funds – PAL presentation on 9/14; follow-up pitch sent in minutes; follow-up phone calls
   a. Boston Building Service Employees (SEIU 615) – Declined to participate because of resource issues. Ultimately discovered that they were not eligible because payments were not based on AWP.
   b. IUOE Local 877 – Declined to participate because of resource issues. Ultimately discovered that they were not eligible because payments were not based on AWP.
   c. IUOE Local 4 – Intense recruitment, resulted in willingness to participate. Ultimately discovered that they were not eligible because payments were not based on AWP.
   d. Cement Masons Local 534 – Declined to participate because of resource issues. Ultimately discovered that they were not eligible because payments were not based on AWP.
   e. Teamsters Local 25 – Intense recruitment, but declined because of resource issues. Likely not eligible anyway because payments were not based on AWP.
   f. Pipefitters Local 537 Trust Funds – in process
   g. Sheetmetal Workers 17 – in process (early)
   h. IUOE Local 98 – in process (early)
(4) Neighborhood Health Plan – Intensely recruited, but declined because of resource issues involved in making the decision.
(5) BCBSMA – in process

3

AWP-PAL-00076

### Grantee Follow-Up and Evaluation

Alex and I interviewed representatives from eleven of the thirteen groups that received outreach grants from HBSS to get their feedback and reflections on the effort. The following is what we heard:

Overall:

- Most groups were very surprised that calls weren't coming through. Individuals and other groups were receptive to the case and understood its importance, but it didn't result in people calling the lawyers.

- The AWP case, unlike other single drug cases, was much more nebulous. Harder for people to comprehend.

- Senior centers and area agencies on aging would have been fruitful avenues, but there wasn't enough time to set up presentations.

- People were fearful of getting involved in lawsuits and/or talking to attorneys.

- Lots of people were concerns about the commitment, responsibilities and vulnerabilities involved in being a plaintiff. We need to come up with a way to talk about the concept of lawsuits that's not threatening, i.e. characterize it as another way to protect consumers e.g. "We don't want to file lawsuits, but here are the circumstances where we realize we have no choice but to go to court."

- Participating in a lawsuit is a pretty tall order, especially where there is no big financial incentive (people have to be pretty committed to the issue).

- Three people mentioned that they had trouble either reaching the attorneys/paralegals at HBSS or that once they got through, they attorney/paralegal was "rude", "impatient" or "didn't seem like he knew how to talk to seniors." One person said the attorney/paralegal "seemed like he could have cared less."

- This was such a small sliver of Medicare beneficiaries; doesn't match up with those populations that they're used to tapping into.

- There wasn't a clear way, demographically speaking, to track down eligible folks.

- People who might have qualified are "not in circulation" – they're home and sick.

- There is an anti-litigation feeling in my state. People are wary of "plaintiff solicitation."

- Period of time was too short.

4

AWP-PAL-00077

- The people who we were trying to reach have conditions that make them quite sick. Sick people don't have the energy to get involved with things like this. Getting involved is a big step, particularly if they're not already involved with the PAL group.

- People who might have been eligible are generally fragile, need a lot of handholding from someone who will spend time with them and listen. They require a lot of intense follow-through.

- Groups that have a lot of union members or contacts may not have the best luck – though benefits are being lost, for the most part, union retirees have good benefits.

## Materials:

- Most felt the materials PAL produced were on clear and on target.

- One person thought they should have been more specific (e.g. Are you on Medicare only, without any other additional insurance and have you taken any of these drugs?' perhaps listing a few of the ones people were more familiar with.)

- One person felt that we could have selected other conditions to highlight on the flyer, e.g. migraines.

- One group consistently paired the flyer with the list of drugs and thought that was effective.

- One group thought a different design or color might have improved the flyer's impact.

- One person said the response was mixed – some people told them the materials weren't clear enough that people would be joining a lawsuit, others said the lawsuit was overemphasized (and, presumably, scared people away)

## Suggestions for where efforts might have been better focused:

- Buy commercial insurance market data to figure out characteristics and location of people without supplemental insurance reside – use this data to inform outreach strategies.

- Focus more on the disability community, including independent living centers.

- Public flu clinics (though we were on the early side)

- Medicare Part D forums

- Call people directly.

5

AWP-PAL-00078

- Follow-up with related organizations to make sure they distributed materials.
- More direct presentations to groups, less paper outreach (would have required more time).
- Social service agencies
- Children of the people who paid for the drugs
- Sympathetic doctors (e.g. those involved in Physicians for a National Health Plan)
- More mainstream advertising (but also question whether this is too "seedy")
- More one-on-one or small groups discussions
- County nutrition programs
- Senior Fairs, County Fairs
- Paid TV spots

## PAL and CC Evaluation

PAL's and CC's own internal evaluation resulted in the following thoughts and findings:

- People feared getting involved; this required face-to-face organizing
- This case didn't offer people a sense of continuity; the goal/benefit was too unclear (especially when weighed against responsibilities)
- Many people were unclear about their own insurance situations (e.g. didn't even know they had supplemental coverage; didn't distinguish between supplemental coverage and other Rx drug coverage)
- This case, more than any other, was very confusing.
- There were too many steps to qualify folks (more steps than other cases); there were too many opportunities for people to fall through the cracks.
- The timeline was relatively tight, especially for grantees, who are engaged in other work.
- The realization that we needed to shift gears from broad outreach to more targeted strategy came too late in the game to be effective.

6

AWP-PAL-00079

- Messaging was difficult since there were so many criteria.

- We focused on broad outreach and not deep, targeted outreach.

- We didn't spend enough time up front thinking about where to find the *right* people (i.e. those without supplemental insurance).

- We assumed for too long that broad outreach would produce eligible plaintiffs. By the time we realized eligible people weren't surfacing, and re-thought the strategy, it was too late in the game.

- Full-scale outreach didn't begin until at least two weeks after the decision; should have begun sooner.

- Could have spent more time getting to non-MA TPP's and asking them to help identify individual members on whose behalf they paid (as long as member didn't pay flat fee).

- Could have done a more in-depth early assessment of our own internal connections to TPPs and others who are connected with the right population.

- Could have done more targeted outreach to low income or minority communities.

- Could have done some early testing of various targeted strategies to see what worked.

7

AWP-PAL-00080

## CITIZEN ACTION OF NEW YORK

Traditional Outreach:

- ✓ Contact our 10,000 person e-mail list.
- ✓ Send a flyer to the 550 and organizational and individual members of our health care coalition.
- ✓ Place newsletter articles in senior papers.
- ✓ Have direct conversations with our activist and leaders.

Automated Calls:

Test making automated calls to women, over the age of 65. We would test, and if successful employ on a larger scale, automated calls to women over the age of 67 with a script along the following lines (a quick draft!):

> Hello, this is Eileen Harris. I'm a cancer survivor and I'm calling because I'm concerned about the high cost of prescription drugs for people like me who have received treatment for cancer. If you or someone in your home is on Medicare and has received prescription drugs in your doctor's office or the hospital, I'd like your help in making prescriptions more affordable. I'm a member of Citizen Action of New York, a statewide consumer group. We're not asking for money. We are asking for you to help us make drugs more affordable. So if you or a member of your family is on Medicare and has been given drugs in a doctor's office or hospital, please dial 1 now and learn how you can help make prescription drugs more affordable. Thank you for dialing 1, now.

Calls would be made during the day. If the person dials 1 they would be patched through directly to the paralegals at the Hagens Berman office. We can control the rate of calls so as to not overload the paralegal staff. We can also identify everyone who as dialed 1 to do outreach to any of those whose calls were not successfully completed.

Number of calls: If the tests work (defined as a high enough response rate to identify plaintiffs – we'll make that judgment based on how it goes), we can make up to 50,000 calls.

8

AWP-PAL-00081

## CITIZENS FOR CONSUMER JUSTICE

1. Organizational Allies:

I have list of 180 Pennsylvania organizations that were involved in the Stakeholders
Alliance to Defend Medicaid. Of these organizations there are 70 who were active
supporters and have potential members and clients that are on Medicare. Several of these
organizations work directly with People with HIV/AIDS, People who have cancer and
Elderly who take the kinds of medications listed in the suit.

My plan is to contact the directors, social workers and healthcare providers who can best
connect me with folks who might join the lawsuit.

Then I will engage in a thorough follow up to make sure that these folks are indeed
eligible and will be able to commit what it takes to make it to the end of the case.

2. Social Security Campaign member base

I have a mailing list and email list of 400 individuals who supported our recent state-wide
social security campaign. More than half are seniors many of which are on Medicare. I
will put out a mailing and e-invite to these individuals and then follow-up with a phone
call invite.

3. Data base mailing

We have a data base of 1000 names and addresses of seniors who have been involved in
our Medicare and prescription drug campaigns.

We will include a "call for plaintiffs " in our CCJ newsletter that will go directly to
them.

Additional activities:

Outreach to 40 block captains in Philadelphia.

9

AWP-PAL-00082

## CONGRESS OF CALIFORNIA SENIORS

### Outreach to CCS Members

- Post information about the case and contact information on our website
- Send hard copy information to each of our regional organizations (covering 90% of the state)
- Make follow up calls to our regional chairs and officers about the case and our plaintiff identification effort
- Conduct a conference call with CCS regional chairs
- Do an email blast "action alert" to our membership on our email list (two or more during the effort)

We would expect to make positive contact with at least 50,000 CCS members through these efforts.

### Outreach to Affiliated Groups

- Contact the 125 affiliated organizations who are part of CCS...union retiree clubs, Gray Panthers chapters, Older Women's League chapters, some AARP chapters, California Seniors Coalition, California Senior Advocates League, etc. to disseminate information and contacts
- Request that affiliated organizations post information on their websites and in any planned newsletters
- Contact health-related allies and affiliates such as the San Francisco AIDS Foundation, Health Access, the state's HICAPS (SHIPS) and health/disease advocacy groups

We would expect to make indirect contact to another 50,000 persons through these efforts.

### Other Outreach Activities

- Provide information to upcoming convention/association meetings, including the national convention of the Older Women's League to be held in Sacramento in early October and the state convention of the California Alliance of Retired Americans planned for early November
- Send flyers and contact information to the district offices of progressive state legislators
- Send information and make contact with the 33 Area Agencies on Aging offices throughout the state and ask them to post flyers and include information in any planned meetings or events
- Post flyers in up to 400 senior community centers in counties where we have active CCS participation
- Contact the publishers of TodaysSeniorsNetwork.com, an affiliated on-line senior news magazine with over one million visitors annually, to post information on the site.

10

AWP-PAL-00083

- Prepare an article and send to senior publications and to newspapers with senior sections/editors
- Send a media advisory to radio stations with a mature listenership
- Include information about the case and how potential plaintiffs can make contact in 30 planned workshops on Medicare Part D and senior women's nutrition which CCS plans to conduct prior to Thanksgiving (1500 or more direct participants)
- Work with the Consumer Attorneys of California (an ally of CCS) to identify other means to conduct outreach to potential plaintiffs

We estimate that we could reach a fairly large number of persons through these efforts, probably in excess of 100,000…although that number is a rough estimate.

Additional activities:

Sent several hundred e-mails with flyer to directors of senior community centers as well as to senior congregate meal sites.

Asked 16 regional chairs to make presentations at their regional meetings. Most reported back that they did present information and hand out flyers.

11

AWP-PAL-00084

## COUNCIL ON AGING SERVICES FOR SENIORS

- AD in the North Bay Business Journal special healthcare edition (needs to happen ASAP).
- Ad in the Press Democrat, circ. 140,000
- Flyer in our newspaper, Sonoma Seniors Today - circ. 14,000 to be dropped by Oct. 1 at 200 drops across county.
- Flyers sent to all of our clients, about 1,300 and to all the clients of the county senior centers which is an additional 500 people or more.
- Flyers sent to all of our employees with a Memo from CEO, placed in paychecks and sent second week of Sept.- 80 employees.
- Flyers given to all 500 participants at the Wheels for Meals motorcycle fundraiser on Sept. 11.

12

AWP-PAL-00085

## FLORIDA ALLIANCE FOR RETIRED AMERICANS

-Outreach via FLARA Retiree Coordinators which do outreach throughout the State of Florida within their local Labor Councils

-Mail to All FLARA Affiliated Club Leadership for distribution to their club membership and signage for within their communities of residence

-Mail to All FLARA Board Members for distribution to their local club membership and signage for within their communities of residence

-Email notices to All FLARA E-activists statewide

-Outreach to yet unaffiliated Senior Organizations statewide

-Direct mail to membership until budget is exhausted

13

AWP-PAL-00086

## HEALTH CARE FOR ALL

Health Care For All is well positioned in Massachusetts to find plaintiffs for the Prescription Access Litigation Project's (PAL's) pending lawsuit on average wholesale price (AWP), because of our involvement with consumers throughout the state and our ties to senior organizations, disease advocates and other community groups. We communicate regularly with the 12,000 members in our database through e-mail updates and direct mailings. We also interact with a much broader audience through our helpline, which averages about 50 phone calls a week. Our strong relationships with consumer groups including senior advocacy organizations and disease groups allow us to multiply our contacts in the community many times over.

We have mobilized at least one staff member from each of the following divisions on our staff to participate in this effort: communications, helpline, programs and policy to participate in this effort. We have also assigned a staff member to be a central contact for all possible plaintiffs and assigned another staff member to oversee the effort. We are also prepared to include other staff as necessary to avail ourselves of their contacts and connections with certain communities. The steps we will take to identify and recruit plaintiffs include, but are not limited to the following.

▶ Partner with targeted disease groups that represent likely plaintiffs to educate them about the AWP lawsuit and enlist their help in identifying plaintiffs. These groups, many of which we already work with productively, include Aids Action, the American Cancer Society, the Boston Center for Independent Living, the Boston Urban Asthma Coalition, the Hepatitis C Coalition, the Lung Society and the Massachusetts Breast Cancer Coalition and the Massachusetts Lung Association.

▶Partner with senior groups to educate them about the AWP lawsuit and enlist their help in identifying plaintiffs among their constituencies. These groups, all of whom we have strong relationships with, include AARP Massachusetts, the Medicare Advocacy Project, the Massachusetts Senior Action Council and the Massachusetts Association of Older Americans.

▶ Mobilize each staff member of Health Care For All to reach out to their contacts in all their coalitions to spread the word about the AWP case and the need for plaintiffs. Each staff member at Health Care For All participates in coalitions varying in size from 15 members to 170, all of whom look to Health Care For All for leadership on health care advocacy and organizing.

▶ Circulate recruitment materials to all the local weekly newspapers in the state to publicize the need for plaintiffs. We have relationships with many of these weeklies and have had good luck getting materials printed by many of them.

▶ Contact our membership through e-mail and/or direct mail to ask possible plaintiffs among the membership to come forward and to ask them to spread the word to their friends and contacts.

14

AWP-PAL-00087

▶ Purchase or arrange for free radio advertisements, perhaps with the use of a familiar voice to advertise the need for plaintiffs.

▶ Purchase print advertisements, as funds and time allow.

▶ Advertise the need for plaintiffs on our web site, which is read regularly by advocates and consumers.

▶ Review our database of helpline callers to identify Medicare recipients who may have been cancer patients and, if enough people appear to be potential plaintiffs, make calls to these people to recruit them as plaintiffs.

▶ Work with Health Law Advocates, our public interest law firm, to see if they their client database reveals potential plaintiffs that we could call to recruit.

▶ Consider using an automated call system to reach out to hundreds of people at once, perhaps using a notable person to make the call, such as former Governor Michael Dukakis. We will only use this technique if we are able to identify a finite list of reasonably likely candidates to call.

15

AWP-PAL-00088

## MASSPIRG

Dropped a little under 6,000 flyers in 4 weeks through the door to door canvass. The towns were Cambridge, Lexington, Acton and Melrose.

16

AWP-PAL-00089

## MINNESOTA SENIOR FEDERATION

We presently have approximately 5000 individuals using our domestic and foreign drug-purchasing program. We will specifically target those purchasing the prescription drugs involved in the case.

Asking our suppliers to comb through the list of purchases to determine those to be targeted, calling them to determine if the want information and sending them the pertinent information.

We will prominently feature the case and means to participate, on our web site - providing a link, if possible, to the law firm handling the case and or Pal.

Over the last five years, we have conducted approximately 40 bus trips to Canada we will target those who have gone on the trips, based on the prescriptions they use, to participants in the court case.

Our organizations structure involves various boards, committees, assemblies and workshops in each of our eight regions. We also have a public speakers bureau, made up of volunteers, that conducts almost daily speeches in the community at large. The groups they address vary from business to church groups they also speak to our 110-affiliate organizations. In addition to our volunteer speakers bureau staff often does public speaking at the request of other organizations, two that will fall into the appropriate time period are: the state Foster Grandparent Program (500 attendees) and the Minnesota Federation of Teachers Retired (150 attendees). Staff will also be conducting multiple Medicare part D workshops. We will prepare a written statement for staff or leadership to present at each of these gatherings, accompanied by appropriate fliers.

We publish a statewide monthly newspaper "The Senior News" its' circulation is about 50.000. It sent to our membership and made available amongst other places at libraries, senior centers, senior high-rises, and nursing homes. We will do a feature story about the case and encourage including.

Finally, we have developed a number of strategic coalitions with other organizations to advance our shared, agendas. The most notable of these for this endeavor is the "Minnesota Leadership Council," made up of the Executive Directors of twelve of the states largest senior serve providers. We seek their support of this enterprise

17

AWP-PAL-00090

## NEW JERSEY CITIZEN ACTION

New Jersey Citizen Action proposes to provide outreach services for the Prescription Access Litigation (PAL) Project's "Average Wholesale Price" (AWP) case. Specifically, NJCA will use its organizational resources, including staff, and base of affiliated organizations and allies to assist PAL in identifying individuals on Medicare who have paid for certain drugs, (i.e., those generally prescribed for cancer, asthma, emphysema or hepatitis C) and who may be willing and eligible to be added as plaintiffs to the case.

As PAL needs to identify individuals by October 16th, NJCA proposes to implement the following outreach plan immediately:

1.  Develop and distribute Urgent Action Request and flyer describing the case to our 100+ Board and Affiliate members (attached) requesting they distribute the information to their memberships, which number in the tens of thousands, (for example, CWA represents over 36,000 NJ residents, the NJ Tenants Organization represents thousands of tenants throughout the state, HPAE represents over 11,000 nurses and other health care professionals, etc.). NJCA staff will follow-up on these requests via personal phone calls to the leadership of these organizations. Materials can be distributed by September 16th.

2.  Distribute Action Request, flyer and provide similar follow-up to allied health care coalition partners including AARP-NJ, New Jersey Public Interest Research Group, the Anti-Poverty Network of NJ, a statewide coalition of advocacy and social service organizations representing poor and fixed income residents, NJ Appleseed and the Monday Morning Network of county based disability advocacy organizations.

3.  NJCA provides community education presentations to community based organizations on an on-going basis. We will provide information about the AWP case at these presentations beginning immediately and through early October. On Saturday, September 17, 2004 NJCA is presenting a forum In Newark for women heads of households who are interested in becoming first time home buyers. Generally, 600 area residents register for the program. NJCA will distribute information on the AWP case at this forum.

4.  NJCA will compliment direct mail, telephone follow up and outreach through presentations with electronic actions to our 7,000 members with email addresses and post information about the case and project on our web site.

5.  NJCA will assign our Central Jersey Organizer, Mike Olender, to this project. Mike is our lead health care organizer as well.

18

Additional activities:

Robo-calls to approximately 4,000 women 67+ with incomes $25,000-$30,000 in counties that are not high-income

Distributed flyers in two senior developments.

19

AWP-PAL-00092

## NEW YORK STATEWIDE SENIOR ACTION COUNCIL

**NOTE**: Organizer they hired to work on this outreach was unable to start until late September/early October because of family emergencies. The Executive Director of New York Statewide Senior Action Council is conducting an accounting, but estimates that very little of the grant was used. Once the accounting is complete, they will be sending the remaining funds back to HBSS.

However, the outreach they conducted included:

- E-mail to 120 people and organizations who are affiliated with the Capital Area Consortium on Aging and Disabilities. Most of the recipients work in organizations with outreach to seniors and persons with disabilities.

- Meeting with two physicians and a nurse practitioner in a medical practice providing home medical care for 500 home-bound patients to ask them to identify patients who qualify.

- E-mail to 1,100 people on the New York State Alliance for Retired Americans email roster.

- E-mail to persons with disabilities across NY State and the US, centers for independent living, health care institutions and others.

- Supplied sympathetic pharmacist with fliers to be placed in Rx bags in a major pharmacy in largest Albany suburb.

- Presentation at annual New York StateWide convention.

20

AWP-PAL-00093

## PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS

### September 9th:

Pennsylvania Alliance for Retired Americans State Breakfast at National Convention, Washington DC – Make announcement and handout flyers to the more then 50 PA delegates attending convention. Ask them to bring information back to their chapters.

### Week of September 12th:

Create Special Newsletter with announcement and information on the AWP case. Newsletter mailed to 155affiliated retiree organizations, 921 individual members, and 8 Central Labor Councils across Pennsylvania.

Create special email alert that would go out statewide to 1,200 ARA activists with announcement and information on the AWP case.

Notify 8 PARA Retiree Zone Coordinators of AWP case. Conduct targeted outreach in each zone to potential plaintiffs.

**Month of September**: Affiliate Chapter Visits around the state to Steelworker, UNITE-HERE!, and CWA chapters with AWP presentations.

Additional activities:

Mailed cover letter, flyers and drug list to 650 Senior Centers 67 Area Agencies on Aging

Sent direct email to 327 program directors of Senior Centers including the cover letter, flyer, drug list

Called senior centers in the Harrisburg, Pittsburgh, and Philadelphia area and suburbs to talk about the case and encourage them to use materials.

Sent materials to all UNITE-HERE retiree clubs.

21

AWP-PAL-00094

## UNITED SENIOR ACTION OF INDIANA

1. Mail to each address on our database information about the lawsuit.
Our database includes:

- approximately 14,000 members
- all public libraries in the state
- all area agencies on aging, and a great number of additional social service agencies

2. An email message to over 500 members on our Email Alert Network.
3. A news release to all weekly and daily publications in the state.
4. We will announce the suit and encourage outreach at all meetings of our members between now and October.

In addition, we will research the feasibility of placing "ads" in key newspapers.
However, we will need the very last possible date you want people calling you. There are 2-4 publications that have a strong senior audience but they are monthlies. Therefore, the next possible issue would come out October 1st and we are not sure if this would fit your schedule.

22

AWP-PAL-00095

## WISCONSIN CITIZEN ACTION

**Proposal for PAL** - To be carried out by one full-time staff person exclusively devoted to this work September 5 – October 7th (moved over from our canvass operation) and supplemented with some time and contacts of Ellie Hurley (health care organizer) and Darcy Haber (health care campaign director) as needed to meet goals successfully. The following leads and tasks would be used as a starting point for the new hire. They may not necessarily carry out all leads/possibilities as some may prove to be more fruitful than others. The organizer would also not be precluded from adding to this list as their reourcefulness/creativity allowed.

I.    Member Contact
    a. Potentially calling the 13,000 members with phone numbers that are 65+ (using robocalls or temp agency if necessary)
    b. sending a more specific targeted email to our 700 members with email that are 65+
    c. passing out flyers through one of our Milwaukee organizers who does ministry in nursing homes on her own time (she has agreed to do this)
    d. Making community contacts through our Green Bay Social Security task force members many of whom are seniors who are active in the community
    e. Make flyer prominent on our website and likely to come up in a search for "medicare and drugs and Wisconsin"

II.   Member Organization Contacts
    a. Table at the CWAG (Coalition of Wisconsin Aging Groups, an affiliate) district meetings in early September
    b. Negotiate a one-time use of the Alliance for Retired American's email list to send a mass email to their members who have email (total membership of 70,000) ARA-WI Chapter is an affiliate of ours.
    c. Sending out emails on retirees listserve through our Union partners
    d. Spread the word in specific congregations through our faith affiliates
    e. Utilize our good working relationships with AARP's statewide office to see how they can be helpful with their newsletter or other mailings. AARP –Wisconsin chapter is an affiliate of ours.
    f. Working with our affiliated disability groups such as Wisconsin Coalition for Advocacy and the Survical Coalition to see if they can spread word through their networks of people with disabilities.
    g. If necessary, place ads in union retireee newsletters

III.  Community Contacts
    a. Using established relationships with local senior coalitions and senior centers to flyer nursing homes, senior centers, speak at events, make announcements at gatherings, etc
    b. Partnering with ElderLaw

23

AWP-PAL-00096

     c. Contacting local cancer support groups and attempting to gain access/send a message to their members

     d. Using our local media to advertise the class action law suit. In Madison we have an Air America affiliate that has allowed us to do PSA's in the past on our issues as well a community radio station that would most likely also allow a PSA (unless there is an FAA regulation against it?)

There is also a possibility that organizations will be holding Medicare Part D informational sessions in the coming month (for example the Waukesha County Dept on Senior Services will be holding them early September) and we will be able to table or speak to people at those.

24

AWP-PAL-00097

# EXHIBIT "B"

Blank    *[handwritten: Let P → Send HCFA blurb → they'll wait for DC 47]*    Page 1 of 3

*[handwritten: FDB → FDB meeting w/ New M's were]*

**Renee Markus Hodin**    *[handwritten: to mpure get]*    *[handwritten: if we do it now, we move well + relief, we set good precedent]*

From:    Renee Markus Hodin    *[handwritten: DC 47]*    *[handwritten: criterion:]*

Sent:    Monday, August 29, 2005 12:25 PM

To:    Alex Sugerman-Brozan; 'Steve Berman'    *[handwritten: one for calibrating—need to jump on it]*

Cc:    'Thomas Sobol'; Susan Sherry    *[handwritten: the in some maters, takes you multiline guzzcg]*    *[handwritten: Susan 781.592.8671]*

Subject:    RE: AWP outreach

To get things started, here's my initial cut at PAL groups that would be potential recipients:    *[handwritten: 617.784.4572 (cell)]*

*[handwritten: Not ready you do]*

10  ✱ CA PIRG.

5  ✱ Congress of CA Seniors.    *[handwritten: That's different]*    *[handwritten: phone bank Special newsletter]*

10.  ✱ Council on Aging Services for Seniors    *[handwritten: arrange attys to work w/ New]*

Florida Alliance for Retired Americans  **YES**

✱ Florida CHAIN

10  United Senior Action of Indiana    *[handwritten: more MA focus — less Medicare specific]*

10  Health Care for All

5  MonPIRG

5  Minnesota Senior Federation    *[handwritten: very from conversation]*    *[handwritten: MASSPIRG]*

5  New Jersey Citizen Action    *[handwritten: Can they convert TPPs to id. members]*

10  Citizen Action of New York (AWP Plaintiff)    *[handwritten: orgs. could join if they bony]*

10  New York Statewide Senior Action Coalition (AWP Plaintiff)  + AAA ?    *[handwritten: broader reach - less arguant]*    *[handwritten: Someone to be task]*

6  Working in Neighborhoods Senior Action Coalition - QH    *[handwritten: ND]*

✱ Citizens for Consumer Justice – PA (AWP Plaintiff)

5  Pennsylvania Alliance for Retired Americans

Vermont PIRG (AWP Plaintiff)    *[handwritten: members no could sc indiv.]*

10  Wisconsin Citizen Action (AWP Plaintiff)    *[handwritten: Get the guy at otm d. cut + new]*

From: Alex Sugerman-Brozan
Sent: Monday, August 29, 2005 12:17 PM
To: 'Steve Berman'; Renee Markus Hodin
Cc: 'Thomas Sobol'; Susan Sherry    *[handwritten: by Dec 17 deposition]*
Subject: RE: AWP outreach    *[handwritten: email them Call]*

8/29/2005

AWP-PAL-00002

It would certainly help. From the orgs' perspective generally, there's no incentive to do outreach for individual plaintiffs since it doesn't get the org into the case. Haven't heard from Steve R yet in response to our email. I can call him to see if he's available but I think Renee and I (and Sue, if she's available) are the key people to have on this call.

What times today can you, Tom and Steve B, do a call? Let us know ASAP.

**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Monday, August 29, 2005 12:15 PM
**To:** Renee Markus Hodin
**Cc:** Alex Sugerman-Brozan; Thomas Sobol
**Subject:** RE: AWP outreach

our thinking is they need staff or resources etc to work this and a grant might do the trick

**From:** Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
**Sent:** Monday, August 29, 2005 7:55 AM
**To:** Steve Berman
**Cc:** Alex Sugerman-Brozan
**Subject:** RE: AWP outreach

The attached went out to the five plaintiff organizations last Thursday. We're planning to send a similar – but shorter – appeal to all PAL orgs today.

**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Monday, August 29, 2005 10:36 AM
**To:** Renee Markus Hodin
**Subject:** FW: AWP outreach
**Importance:** High

is this going out

if so when and to whom

**From:** Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
**Sent:** Wednesday, August 24, 2005 12:59 PM
**To:** Alex Sugerman-Brozan; Steve Berman
**Subject:** RE: AWP outreach
**Importance:** High

Here's a draft of the flyer Alex was referring to.

8/29/2005

AWP-PAL-00003

## Renee Markus Hodin

**From:** Shirlee Zane [szanecoa@sonic.net]

**Sent:** Tuesday, August 30, 2005 1:51 PM

**To:** Renee Markus Hodin

**Subject:** Re: Ideas

Here are the ides from COA:

- AD in the North Bay Business Journal special healthcare edition (needs to happen ASAP).
- Ad in the Press Democrat, circ. 140,000 (2×) ~form scann~ ~very~ visible    (4-5 ~months~)
- Flyer in our newspaper, Sonoma Seniors Today - circ. 14,000 to be dropped by Oct. 1 at 200 drops across county.
- Flyers sent to all of our clients, about 1,300 and to all the clients of the county senior centers which is an additional 500 people or more.
- Flyers sent to all of our employees with a Memo from CEO, placed in paychecks and sent second week of Sept.- 80 employees.
- Flyers given to all 500 participants at the Wheels for Meals motorcycle fundraiser on Sept. 11.

Shirlee

----- Original Message -----
**From:** Renee Markus Hodin
**To:** szanecoa@sonic.net
**Sent:** Tuesday, August 30, 2005 7:56 AM
**Subject:** URGENT REQUEST FOR HELP

### CONFIDENTIAL

### URGENT REQUEST FOR HELP IN FIGHTING DRUG COMPANY GREED!!!

### NEW PLAINTIFFS NEEDED IN PAL'S MOST IMPORTANT CASE!

Dear Shirley:

As you may recall, one of PAL's most important cases has to do with the **"Average Wholesale Price" (AWP),** which is a figure used throughout the health care system to determine drug prices. This case alleges that drug companies have manipulated AWP to inflate drug prices and have caused consumers to pay too much for their drugs. The suit is against nearly every major drug company in the industry. **This case holds the promise of changing how drugs are paid for and making prescription drugs more affordable.**

Recently, the Judge in this case ruled that the case can go forward, but only if certain types of individuals step forward to be added as plaintiffs in the case. **If appropriate people are not identified by October 16th, the Court may not allow the class action to go forward against some of the drug companies.**

**PAL needs your help to identify individuals on Medicare** who have paid for certain drugs that are

8/30/2005

AWP-PAL-00030

administered in a doctor's office or in a hospital. Many of these drugs are used to treat cancer, asthma, emphysema and Hepatitis C.

Because the AWP case is one of the most important challenges to drug company greed going on in this country today, **PAL attorneys are making grants available** to certain groups that can help identify people who might be eligible to join the case. **The Council on Aging Services for Seniors has been selected as a possible grant recipient** because of its past involvement in PAL and its ability to mobilize potential plaintiffs.

I will be calling you later today to discuss this proposal in further detail and to talk about your ideas for reaching out to your constituents over the coming month.

Renée

Renée Markus Hodin
*Associate Director for the Prescription Access Litigation (PAL) Project*

Community Catalyst
30 Winter Street, Suite 1010
Boston, MA 02108
Tel: 617.275.2810
Fax: 617.451.5838
hodin@communitycatalyst.org

www.prescriptionaccess.org
www.communitycatalyst.org

Building consumer and community participation in the shaping of our health system.

8/30/2005

AWP-PAL-00031

# EXHIBIT "C"

## Renee Markus Hodin

| From: | Renee Markus Hodin |
| Sent: | Monday, August 29, 2005 4:23 PM |
| To: | 'steve@hbsslaw.com'; 'Thomas Sobol' |
| Cc: | Alex Sugerman-Brozan; Susan Sherry; Steven Rosenfeld |
| Subject: | Proposed AWP grant recipients |
| Importance: High | |

*[handwritten: Melissa -- Snd AWP Ref seer Send more info eter Closed]*

Steve & Tom –

After further discussion, we would propose approaching the following PAL groups to assess their interest and capacity for **quick** and **broad** outreach to potential AWP plaintiffs. If this list looks good to you, we will begin contacting folks tomorrow.

*[handwritten: 8/30/05 Call]*

| | | | *E-mail* | |
| Renée | | | | |
| 1. CALPIRG | $10,000 | *Proposed rec'd* | Y | *spoke 1:55 maybe* |
| Congress of CA Seniors | $5,000 | | √ | LM 2pm, 9:11 LM |
| 3. Council on Aging Services for Seniors | $7,500 | | X | spoke 1:40; 2es |
| Florida Alliance for Retired Americans | $5,000 *John Degren* | | Y | LM 1:55 |
| 5. United Senior Action of Indiana | $7,500 | | | LM 1:55 |
| 6. Health Care For All | $10,000 | | Y | Melissa will call all back; Seth |
| 7. MASSPIRG *(coll me. 978-897-9910)* | $5,000 | | Y | LM 1:20 |
| 8. Minnesota Senior Federation | $5,000 | | Y | LM 12:40 9/1 |
| 9. New Jersey Citizen Action | $5,000 | | Y | LM 12:45 |
| 10. Citizen Action of New York | $10,000 | | √ | LM 12:30 spoke |
| 11. New York Statewide Senior Action Council | $10,000 | | √ | LM 12:50 |
| 12. Citizens for Consumer Justice (PA) | $5,000 | | Y | LM 12:45 9/1 LM pm |
| 13. Pennsylvania Alliance for Retired Americans *Deni Perez-ar.* | $5,000 | | Y+fax | LM 12:50 yes |
| 14. Wisconsin Citizen Action | $10,000 | | Y | LM 12:40 |

TOTAL: $100,000

Renée Markus Hodin
*Associate Director for the Prescription Access Litigation (PAL) Project*

Community Catalyst
30 Winter Street, Suite 1010

8/30/2005

AWP-PAL-00098

## Heather Miller

**From:** Thomas Sobol

**Sent:** August 29, 2005 4:30 PM

**To:** Renee Markus Hodin; Steve Berman

**Cc:** Alex Sugerman-Brozan; Susan Sherry; Stephen Rosenfeld

**Subject:** RE: Proposed AWP grant recipients

This looks good to me.

They key to this is really giving incentivs for these groups to go FULL BORE.

**From:** Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
**Sent:** August 29, 2005 4:23 PM
**To:** Steve Berman; Thomas Sobol
**Cc:** Alex Sugerman-Brozan; Susan Sherry; Steven Rosenfeld
**Subject:** Proposed AWP grant recipients
**Importance:** High

Steve & Tom –

After further discussion, we would propose approaching the following PAL groups to assess their interest and capacity for **quick** and **broad** outreach to potential AWP plaintiffs. If this list looks good to you, we will begin contacting folks tomorrow.

Renée

| 1. CALPIRG | $10,000 |
| 2. Congress of CA Seniors | $5,000 |
| 3. Council on Aging Services for Seniors | $7,500 |
| 4. Florida Alliance for Retired Americans | $5,000 |
| 5. United Senior Action of Indiana | $7,500 |
| 6. Health Care For All | $10,000 |
| 7. MASSPIRG | $5,000 |
| 8. Minnesota Senior Federation | $5,000 |
| 9. New Jersey Citizen Action | $5,000 |
| 10. Citizen Action of New York | $10,000 |
| 11. New York Statewide Senior Action Council | $10,000 |
| 12. Citizens for Consumer Justice (PA) | $5,000 |
| 13. Pennsylvania Alliance for Retired Americans | $5,000 |
| 14. Wisconsin Citizen Action | $10,000 |

TOTAL:                          $100,000

7/10/2006

AWP-PAL-00158

Renée Markus Hodin
*Associate Director for the Prescription Access Litigation (PAL) Project*

Community Catalyst
30 Winter Street, Suite 1010
Boston, MA  02108
Tel: 617.275.2810
Fax: 617.451.5838
hodin@communitycatalyst.org

www.prescriptionaccess.org
www.communitycatalyst.org

Building consumer and community participation in the shaping of our health system.

7/10/2006

AWP-PAL-00159

## PAL Large Team Meeting Minutes 9.14.05

**Attendees:** Alex, Renee, Sara, Steve, Sue, Kate, Betsy, Marcia and Julie

Lipitor: We have found two indie plaintiffs from intakes received at the ARA conference, one of which is willing to be a spokesperson for the press outreach we do and is a member of both NY StateWide and JPAC. We may want to consider involving these two groups in the press strategy as well. Steve will also be a member rep for HCFA and DC 37 will participate as a TPP.

We are also working on a women's angle for press as well. Renee recently spoke to someone at the Women's Health Network, who may be a good fit for this type of press. We have already developed a list of women's magazines that we can target.

AWP: PAL has started their outreach in addition to HBSS allotting $100,000 to be distributed to PAL groups to do outreach. 13 groups have agreed to take a chunk of the money and have submitted bulleted proposals to Renee that outlines their outreach plan. The methods of outreach vary as well as the amount of money the groups received. We also got the word out to the rest of the coalition who have begun to disseminate the information to their networks.

Steve commented on the importance of this outreach push as a test of our ability to follow through on what we say we can accomplish. He thinks we should be contacting the groups daily to make sure that they are continuing to think of new methods of outreach but also to let them know what types of things we are doing. He also thinks that by being a major part of this process we will reap the benefits later during settlement when we could ask for a piece of the lawyers fees.

The deadline for an amended complaint is Oct. 16.

BNA AWP article: We really want to use this article to influence the Medicaid discussion. Marcia highlighted the shift in discussion around Medicaid due to Katrina; there is no longer going to be the tax cut or the $10 billion cut. The discussion has shifted to the benefits of the program which offers a good opportunity for us to contribute to the debate. Sue thinks we should proceed as we planned and treat it as if the debate is still going on. She believes we can highlight the consumer friendly methods that exist to deal with Medicaid.

Distribution plan and who is doing what:
- Targeted letter to Congress – **Marcia and Michael M**
- Generic letter to state/federal policy folks, Medicaid directors, governors, and budget committee people - **Marcia and Michael M**
- Letter to funders – **Kate**
- OpEd - **Alex**
- Press Statement – **Marcia and Michael M**
- PAL newsletter list omitting "consumers" – **Julie**
- List of receivers; Congress, governors, policy folks, state Medicaid leaders, state health committee leaders – **Jen and Julie**
- List of Funders - **Kate**

AWP-PAL-00106

Timeline: The press statement, OpEd and the letter to Congress should all go out at once, the **week of Sept. 26th**. Then the generic letters and letter to funders should be done.

Sue also believes that we can parlay this claim of knowledge into a proposal about getting a consumer education piece on the ground. Steve also thinks we need to get reprints and make sure that they relay the two media outlets that carried the piece.

### *Cy pres* Update
**Relafen:** Still waiting for the judge to rule on the $500,000 in which we submitted a proposal with Jerry Avorn's dept about generic education.

**Augmentin:** The proposal is pretty much finished but Tom S thinks that we should wait to submit it to the other lead counselors. They have decided to wait to file the motion until all the claims data is in, including the TPPs, and that may take a few months.

**Lupron:** We are still waiting on ACS, who Sue continues to talk to. There may be a way to do it without them or with just Tom Sellers. There is also the women's angle which Alex spoke to OBOS about and who suggested a few other groups we could work with. Alex is writing up a memo to send to OBOS who will in turn distribute it to the other possible groups. Steve also mentioned that the amount of left over funds has been increased because of the decision of the judge to fold in certain costs.

High Donor Consultant: Alex is going to call Ken Wexler about his donation of $50,000 since all the obstacles of Paxil are now moot. Betsy Tarlin has decided not to apply for the consultant position because of a conflict of interest. Alex has to call two other interested parties and people continue to spread the word about the job. Steve thinks that the best question to ask potential consultants is about their experience with individual high donors and the amounts they have raised. Kate also brought up the fact that there is a significant research role required for the job.

Americorps: CC is going to have a legal americorps fellow who is starting at the end of Sept., beginning of Oct. He will work with both CC and PAL.

*Side Effects* Director: Kathleen is coming to Boston during the running of *Side Effects* at the MFA. PAL is planning to host an event here at CC with her as a speaker and invite local PAL coalition groups to attend. Sue suggested that we invite local press to attend as well, perhaps a few columnists; Bob Cutner, Eileen McNamara and Chris Rowland. Kathleen will be here the week of the 27th.

AWP-PAL-00107

# EXHIBIT "D"

## Heather Miller

**From:**     Renee Markus Hodin [hodin@communitycatalyst.org]

**Sent:**     September 06, 2005 5:53 PM

**To:**       Steve Berman; Robert Haegele

**Cc:**       Alex Sugerman-Brozan

**Subject:** RE: issue i have with intake form is one of the most important questions


Again, I hear your perspective, but as an old trial lawyer once said to me "it is what it is." If they have the right drugs and the right insurance, we'll find that out. If they don't, we'll still have lots of rich information for future cases (where the criteria isn't nearly as complicated).

I guess I'm figure out how people think, and my sense is that going back chronologically garners the best response.

But, I suppose that another way to do this is to ask them what drugs they took, when and then for the drugs that fall within the most relevant time period, what their insurance situation was.


**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Tuesday, September 06, 2005 5:45 PM
**To:** Renee Markus Hodin; Robert Haegele
**Cc:** Alex Sugerman-Brozan
**Subject:** RE: issue i have with intake form is one of the most important questions


i come at it from a trial lawyers perspective  ,,,ask the question the way to get best info not lead them into an answer you are not likely to like and i think that form is likely to do that and the follow on you have will be lost

## but so be it

**From:** Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
**Sent:** Tuesday, September 06, 2005 2:40 PM
**To:** Steve Berman; Robert Haegele
**Cc:** Alex Sugerman-Brozan
**Subject:** RE: issue i have with intake form is one of the most important questions

I understand your issue, but think it's dealt with by asking (below that)

"Did you have the same insurance coverage during the time you took these prescription drugs? If not, please list the other insurance coverage you had (and when)"

This is a really long class period for people and since we're also trying to get as much info as we can for other cases as well, I always start with the present and work backwards.


7/11/2006

AWP-PAL-00447

**From:** Steve Berman [mailto:Steve@hbsslaw.com]
**Sent:** Tuesday, September 06, 2005 5:35 PM
**To:** Robert Haegele
**Cc:** Alex Sugerman-Brozan; Renee Markus Hodin
**Subject:** issue i have with intake form is one of the most important questions


*it says on page 2 " i have a flat fee"*

*always ask questions in present tense*


*it shood say during the period 1997-223 did you have a co pay*


*at any point was it a percent of cost of the drug i.e. if a 100 you paid 20 if 50 you paid 10*


*point is now today most are flat but back  them most were graduated*

AWP-PAL-00448

# EXHIBIT "E"

## Heather Miller

**From:** Steve Berman

**Sent:** August 31, 2005 5:32 PM

**To:** Renee Markus Hodin

**Subject:** RE: AWP recruiting grants

# where are we on getting this started

**From:** Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
**Sent:** Wednesday, August 31, 2005 10:54 AM
**To:** Steve Berman; Thomas Sobol
**Cc:** Alex Sugerman-Brozan
**Subject:** AWP recruiting grants
**Importance:** High

Steve & Tom –

We've reached out to all of the groups that were on the potential grantee list the other day and are getting very positive
responses. However, since people are going to get started right away, we need a few details sewn up ASAP:

  **(1)  HBSS staff:** Who will be the HBSS attorneys or paralegals assigned to the groups?
  **(2)  Call-back number:** Will there be a toll-free number for people to call?
  **(3)  Intake form:** Can you send us the intake form you're using?
  **(4)  Grant:** How will this work, i.e. will there be a formal contract that groups need to sign?  When will the money be paid to
    the groups?

Renée

Renée Markus Hodin
*Associate Director for the Prescription Access Litigation (PAL) Project*

Community Catalyst
30 Winter Street, Suite 1010
Boston, MA  02108
Tel: 617.275.2810
Fax: 617.451.5838
hodin@communitycatalyst.org

www.prescriptionaccess.org
www.communitycatalyst.org

Building consumer and community participation in the shaping of our health system.

AWP-PAL-00233

RE: Draft intake form

## Heather Miller

**From:** Renee Markus Hodin [hodin@communitycatalyst.org]
**Sent:** September 01, 2005 9:46 PM
**To:** Robert Haegele
**Subject:** RE: Draft intake form

Great! Should I parcel them out for purposes of the flyers (right now only your name appears)? If so, I'll need their names.


-----Original Message-----
From: Robert Haegele [mailto:Robert@hbsslaw.com]
Sent: Thu 9/1/2005 5:27 PM
To: Renee Markus Hodin
Subject: RE: Draft intake form

Renee:

In addition to myself we will have two attorneys and one paralegal doing the intakes.

Rob

_____

From: Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
Sent: Thursday, September 01, 2005 1:19 PM
To: Robert Haegele
Cc: Alex Sugerman-Brozan
Subject: Draft intake form


I started making some edits to the last form we were using, but need to take a closer look at it. In the meantime, any suggestions are welcome.



Renée Markus Hodin

Associate Director for the Prescription Access Litigation (PAL) Project


Community Catalyst

30 Winter Street, Suite 1010

Boston, MA 02108

Tel: 617.275.2810

Fax: 617.451.5838


7/10/2006

AWP-PAL-00375

RE: Draft intake form

hodin@communitycatalyst.org

www.prescriptionaccess.org

www.communitycatalyst.org

Building consumer and community participation in the shaping of our health system.

7/10/2006

**AWP-PAL-00376**

# EXHIBIT "F"

## Heather Miller

**From:** Stephen Rosenfeld

**Sent:** October 17, 2005 10:10 PM

**To:** Alex Sugerman-Brozan

**Cc:** Renee Markus Hodin; Susan Sherry; Rob Restuccia

**Subject:** RE: Ma tpp

Did individual plaintiffs come from other non-PAL sources?

S. Stephen Rosenfeld
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
t: (617) 723-7470
f: (617) 227-2843
e: ssr@rosenfeld.com
w: www.rosenfeld.com

CONFIDENTIALITY NOTICE: This communication may contain privileged and confidential information. It is intended only for the use of the recipient named above. If you are not the intended recipient of this communication, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by collect telephone call and return the original message to us at the address above via United States Postal Service.

-----Original Message-----
**From:** Alex Sugerman-Brozan [mailto:alexsb@communitycatalyst.org]
**Sent:** Monday, October 17, 2005 9:57 PM
**To:** Steven Rosenfeld
**Cc:** Renee Markus Hodin; Susan Sherry; Rob Restuccia
**Subject:** RE: Ma tpp

Seems to be. And this is after having moved heaven and earth to locate people, and having generated hundreds of individual intakes. Finding these plaintiffs is damn near impossible.

Alex

Alex Sugerman-Brozan
*Director for the Prescription Access Litigation (PAL) Project*
Community Catalyst
30 Winter Street, Suite 1010
Boston, Massachusetts 02108
Tel: 617.275.2822
Fax: 617.451.5838 (f)
Email: alexsb@communitycatalyst.org
www.prescriptionaccess.org - *Now accepting donations online!*
www.communitycatalyst.org
Building consumer and community participation in the shaping of our health system.

-----Original Message-----
**From:** Stephen Rosenfeld [mailto:ssr@rosenfeld.com]

7/11/2006

AWP-PAL-00990

**Sent:** Monday, October 17, 2005 9:41 PM
**To:** Renee Markus Hodin; Alex Sugerman-Brozan; Rob Restuccia
**Subject:** FW: Ma tpp

Is this true? Not one?

S. Stephen Rosenfeld
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
t: (617) 723-7470
f: (617) 227-2843
e: ssr@rosenfeld.com
w: www.rosenfeld.com

CONFIDENTIALITY NOTICE: This communication may contain privileged and confidential information. It is intended only
for the use of the recipient named above. If you are not the intended recipient of this communication, or the employee or agent
responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying
of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by
collect telephone call and return the original message to us at the address above via United States Postal Service.

-----Original Message-----
**From:** Thomas Sobol [mailto:Tom@hbsslaw.com]
**Sent:** Monday, October 17, 2005 2:59 PM
**To:** Steve Berman; Steven Rosenfeld; Renee Markus Hodin; Alex Sugerman-Brozan; Rob Restuccia
**Cc:** David Nalven; Sean Matt
**Subject:** RE: Ma tpp

copying Rob and Steve R.

---

**From:** Steve Berman
**Sent:** October 17, 2005 2:56 PM
**To:** Thomas Sobol; 'Renee Markus Hodin'; 'Alex Sugerman-Brozan'
**Cc:** David Nalven; Sean Matt
**Subject:** RE: Ma tpp

# I don't think we got one plaintiff from the pal outreach. Not casting blame just reporting the result

---

**From:** Thomas Sobol
**Sent:** Monday, October 17, 2005 11:35 AM
**To:** Renee Markus Hodin; 'Alex Sugerman-Brozan'
**Cc:** Steve Berman; David Nalven; Sean Matt
**Subject:** Ma tpp

We assume that the funds you have sent our way all use hcvm and that (other than carpenters) they still do

If that is correct then we canot determine if physician admin payments are awp and they are out

As to carpenters seame thing

David will write a letter that explains all this and expresess reall apprecaition to them for all their hard work

AWP-PAL-00991

**Thomas M. Sobol**
**HAGENS BERMAN SOBOL SHAPIRO LLP**
**One Main Street**
**4th Floor**
**Cambridge, MA 02142**
**tom@hbsslaw.com**
**(617) 482-3700**
**(617) 482-3003 (Fax)**

**CONFIDENTIAL NOTE:  The information contained in and documents accompanying this e-mail
transmission are confidential and/or legally privileged materials from the law firm of Hagens
Berman Sobol Shapiro LLP.  The information is intended only for the use of the individual(s) or
entity(ies) addressed in this e-mail transmission.  If you are not the intended recipient, you are
hereby notified that any disclosure, copying, distribution or the taking of any action in reliance of
the contents of this information is strictly prohibited, and that the documents attached should be
discarded immediately.**

AWP-PAL-00992

# EXHIBIT "G"

## Heather Miller

| From: | Renee Markus Hodin [hodin@communitycatalyst.org] |
|---|---|
| Sent: | October 25, 2005 5:09 PM |
| To: | Thomas Sobol; Steve Berman |
| Cc: | Alex Sugerman-Brozan |

**Subject:** RE: Q re: AWP individual plaintiffs

So, these people just happened to be in their database?  Or, did they –over time – target Medicare beneficiaries without supplemental insurance.  If, it's the latter, we're interested in hearing how they targeted these folks.

**From:** Thomas Sobol [mailto:Tom@hbsslaw.com]
**Sent:** Tuesday, October 25, 2005 5:07 PM
**To:** Renee Markus Hodin; Steve Berman
**Cc:** Alex Sugerman-Brozan
**Subject:** RE: Q re: AWP individual plaintiffs

We worked out arrangements with a law firm that had actively gone after consumers over time.

Frankly, from my point of view they did exactly what I had hoped PAL would be able to do over time.  I don't want to sound too sour, but it is a reality of this that for four years PAL was unable to undertake outreach that could lead to a single qualifiying consumer.

**From:** Renee Markus Hodin [mailto:hodin@communitycatalyst.org]
**Sent:** October 25, 2005 4:50 PM
**To:** Steve Berman; Thomas Sobol
**Cc:** Alex Sugerman-Brozan
**Subject:** Q re: AWP individual plaintiffs
**Importance:** High

As you know, we're preparing a memo at PAL about the recent AWP outreach efforts. Part of our evaluation has included talking to each of the grantee organizations. **Everyone wants to know how the 7 individuals named in the 3rd AMCC were identified.**

Renée Markus Hodin
*Associate Director for the Prescription Access Litigation (PAL) Project*

Community Catalyst
30 Winter Street, Suite 1010
Boston, MA  02108
Tel: 617.275.2810
Fax: 617.451.5838
hodin@communitycatalyst.org

www.prescriptionaccess.org
www.communitycatalyst.org

Building consumer and community participation in the shaping of our health system.

AWP-PAL-01175

# EXHIBIT "H"

## Heather Miller

**From:**   Alex Sugerman-Brozan [asugerman@communitycatalyst.org]

**Sent:**   October 18, 2005 11:28 AM

**To:**   Renee Markus Hodin; Rob Restuccia; Stephen Rosenfeld; Susan Sherry; Julie Bizzotto

**Subject:** RE: finding plantiffs

I agree that an evaluation of this "campaign" (which is what it really was) makes sense.  Why don't we do that at next week's PAL Large Team meeting?

**From:** Renee Markus Hodin
**Sent:** Tuesday, October 18, 2005 11:21 AM
**To:** Rob Restuccia; Alex Sugerman-Brozan; Steven Rosenfeld; Susan Sherry; Julie Bizzotto
**Cc:** Susan Sherry
**Subject:** RE: finding plantiffs

Agreed.  I'd love this opportunity and would be happy to help prepare the background materials necessary to get everyone ready for a productive discussion.

**From:** Rob Restuccia
**Sent:** Tuesday, October 18, 2005 11:18 AM
**To:** Renee Markus Hodin; Alex Sugerman-Brozan; Steven Rosenfeld; Susan Sherry; Julie Bizzotto
**Cc:** Susan Sherry
**Subject:** finding plantiffs

Hi Everyone,

I think that this is a great opportunity for us all to evaluate our combined efforts.  I urge us not to get into a negative dynamic the pits our lawyers and us.  We are in this together and dependent on each other.  There are some objective circumstances that neither of controlled and we developed a joint strategy based on our best judgments. CC made some recommendations that did not work out as expected.  While nothing worked to produce what we needed, clearly some things worked better than others.  Also, some things cost more than others.  For example, we gave money to groups – how did they do?  How did they use the money?  We they creative in their efforts?  Were their efforts too wholesale where we needed retail?  We need to ask ourselves tough questions.  It would be a good idea to find out what worked and not assume it was the result of just more resources.  We may have some explaining to do to the lawyers but that should not be our first concern.  Any explaining must come after a very careful evaluation of the overall work of find plantiffs and our work in particular.

Rob

Robert Restuccia
Executive Director
Community Catalyst
30 Winter Street
Boston, MA 02108
617-275-2814 direct
617-451-5838 fax
restuccia@communitycatalyst.org
-----Original Message-----
**From:** Renee Markus Hodin
**Sent:** Tuesday, October 18, 2005 10:58 AM
**To:** Alex Sugerman-Brozan; Steven Rosenfeld; Susan Sherry; Julie Bizzotto; Rob Restuccia
**Subject:** RE: Kaiser and Harvard Pilgrim win FDA contract to help track the effect of new drugs

A few comments:

7/11/2006

AWP-PAL-01269

First, I don't think that the complaint will be that elucidating. Though it will name names, we'll need to find out from HBSS how the individuals were identified in the first place.

Second, the number of people who at first blush seemed eligible was in the tens not the hundreds. We certainly talked to and/or sent along to HBSS hundreds of people who inquired about the case, but we were able to rule out the vast majority upon first interview. We received follow-up from HBSS on some, but not all, of the potentially eligible that we passed along. Of the ones we did hear about, they fell away for a variety of reasons, including as Alex said, their medical records didn't support their eligibility. Others, as we discussed inn earlier conversations, decided they didn't want to get involved in litigation after all.

Third, I don't believe they identified a MA TPP at all. Our leads were the best leads, but they have not come through (or at least not yet, as far as BCBSMA is concerned) for the reasons we're all aware.

Finally, I personally feel like we failed, but have no idea what we could have done differently – learning how HBSS came up with the non-PAL plaintiffs would be a place to start. **We've been quite successful in identifying plaintiffs in nearly every other case.** Unfortunately, Judge Saris' decision created a very small box, in terms of criteria. I, for one, would like to process how to get to that box. Presumably, we'll be working on Track 2.

**From:** Alex Sugerman-Brozan
**Sent:** Tuesday, October 18, 2005 10:33 AM
**To:** Steven Rosenfeld; Susan Sherry; Julie Bizzotto; Rob Restuccia
**Cc:** Renee Markus Hodin
**Subject:** RE: Kaiser and Harvard Pilgrim win FDA contract to help track the effect of new drugs
**Importance:** High

We've been trying to get information out of Tom and Steve. Presumably, since they do in fact have plaintiffs to cover each of the 5 defendants, those plaintiffs came from a non-PAL source.   Once we have a copy of the complaint, things will be clearer. We're trying to get that from them.

I do not necessarily agree we have some explaining to do. You yourself said at a recent team meeting that all we can do is all we can do -- we engaged in enormous efforts to find these individuals -- the fact that we weren't able to find plaintiffs doesn't mean we didn't do enough or that we did something wrong. This was the hardest plaintiff recruitment effort we've ever engaged in and I think the bottom line is it was a matter of dumb luck. We identified hundreds of individuals who appeared at first blush to be eligible, who only turned out to be ineligible after investigation of medical records, etc.

I think that once we have the complaint we will in fact see how intractable the challenge is -- my guess is that there are only one or a few plaintiffs for each defendant -- Given that in addition to PAL, dozens of firms (with the resources that such firms are able to command, I might add) were also looking for plaintiffs, I believe it will in fact demonstrate the near-intractability of this effort.

Alex

**From:** Stephen Rosenfeld [mailto:ssr@rosenfeld.com]
**Sent:** Tuesday, October 18, 2005 10:29 AM
**To:** Alex Sugerman-Brozan; Rob Restuccia; Aron Israelite; Julie Bizzotto; Renee Markus Hodin; Sara Brophy; Susan Sherry
**Subject:** RE: Kaiser and Harvard Pilgrim win FDA contract to help track the effect of new drugs

Alex, et al, I didn't see a response to my question about whether there were any individual AWP plaintiffs obtained from non-PAL sources. This will be very important in making our case to Tom and Steve. If there were none, then that suggests the intractability of the challenge. If there were some from other sources, then we have some explaining to do. So, can you please tell me which it is? Many thanks.

S. Stephen Rosenfeld
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108

AWP-PAL-01270

t: (617) 723-7470
f: (617) 227-2843
e: ssr@rosenfeld.com
w: www.rosenfeld.com

CONFIDENTIALITY NOTICE: This communication may contain privileged and confidential information. It is intended only for the use of the recipient named above. If you are not the intended recipient of this communication, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by collect telephone call and return the original message to us at the address above via United States Postal Service.

-----Original Message-----
**From:** Alex Sugerman-Brozan [mailto:alexsb@communitycatalyst.org]
**Sent:** Tuesday, October 18, 2005 10:13 AM
**To:** Rob Restuccia; Aron Israelite; Julie Bizzotto; Renee Markus Hodin; Sara Brophy; Steven Rosenfeld; Susan Sherry
**Subject:** Kaiser and Harvard Pilgrim win FDA contract to help track the effect of new drugs

San Francisco Business Times

From the October 17, 2005 print edition
Health care

# Kaiser wins FDA contract to help track the effect of new drugs

Chris Rauber

Kaiser Permanente is one of four health-care organizations nationally to win first-of-their-kind contracts from the U.S. Food and Drug Administration to help research the effects of pharmaceuticals on large patient populations after those drugs go on the market.

It's part of a push by the FDA's Center for Drug Evaluation and Research to undertake more comprehensive "post-market surveillance," in the aftermath of Merck & Co.'s voluntary recall of its blockbuster Vioxx painkiller in September 2004.

Merck pulled Vioxx off the market after data, including some based on Kaiser research, indicated that the risk of heart attacks and sudden cardiac deaths tripled for patients taking Vioxx compared with those taking a rival drug.

Oakland-based Kaiser will get $1.3 million over the next five years to provide data to the FDA from its Kaiser Foundation Research Institute, also in Oakland. The institute's database has detailed information on the experiences of more than 6 million Kaiser HMO patients.

Overall, the four contracting organizations track data on more than 20 million Americans' health.

Other contract winners are UnitedHealth Group Inc. in Minneapolis, Nashville-based Vanderbilt University, and Harvard Pilgrim Health Care in Wellesley, Mass. Each has a large database of patient data the FDA now can use to monitor the safety and effectiveness of drugs that have gone on the market. Many critics feel the agency has been lax in following up on drugs once they've been approved for sale, a point of view that gained credence when Vioxx ran into serious safety problems.

AWP-PAL-01271

"The big advantage of having large databases to monitor new drugs is one of speed," said institute spokesman Kevin McCormack. "In a clinical trial the medication may be tested on a few thousand carefully selected and monitored people. Once on the market, however, the drug may be taken by millions." So tracking drug reactions through large databases like Kaiser's or Vanderbilt's is expected to help the FDA quickly uncover problems that otherwise could take years to discover.

"You can very quickly compare who gets a particular drug to those who don't," said Joe Selby, the institute's director. He stressed that Kaiser and the other contractors are working in conjunction with the FDA on the data, not simply turning it over to the feds. And none of the data will be marked with patient names or other identifiable information.

But the cumulative weight of the evidence can be conclusive. "When you have large numbers, things that shouldn't be happening twice start happening (in the data)," Selby said.

Alex Sugerman-Brozan
*Director for the Prescription Access Litigation (PAL) Project*

Community Catalyst
30 Winter Street, Suite 1010
Boston, Massachusetts 02108
Tel: 617.275.2822
Fax: 617.451.5838 (f)
Email: alexsb@communitycatalyst.org

www.prescriptionaccess.org - *Now accepting donations online!*
www.communitycatalyst.org

Building consumer and community participation in the shaping of our health system.

AWP-PAL-01272

# EXHIBIT "I"

**PAL Large Team Meeting Minutes  10.26.05**

**Attendees:** Alex, Marcia, Sue, Kate, Rob, Betsy, Michael M, Aron, Renee, Sara and Julie

AWP Outreach Evaluation: First, we went over the history of our recruitment efforts since 2003. Originally, there were 14 groups who were interested in being plaintiffs and who needed to find reps with the exact qualification that we are currently looking for. These groups found member reps but it was afterwards discovered that all the member reps had supplemental coverage and the judge dismissed all of the PAL plaintiffs.

When the amended master consolidated complaint was filed, Tom Sobol called and told us we could find folks who had paid completely out of pocket for the drugs. We found 5 groups who are still in the case now. This is the stage when the case was opened up to oral drugs. Then HBSS found out that the new member reps, who paid out of pocket, were ineligible because they didn't pay based on AWP. So then groups had to again find new member reps who paid based on a percentage or had an annual floor or ceiling amount. The recent decision eliminated oral drugs and we are now looking for folks with the same payment plan as we originally were but now there are fewer drugs. We did go through long stretches of time when we were not doing any outreach for this case.

Rob was interested in finding out how many people are out there who could have qualified. Marcia suggested that the AARP might be helpful in finding out this info. This issue also raises the question of how the settlement money would get distributed individuals since they are so hard to find.

The discussion then turned to Renee's memo. We believe the information was distributed to around 100,000 people.

**The Obstacles:**
- Peoples fear of getting involved – needed fact-to-face organizing
- Sense of continuity
- People didn't understand their own insurance situations
- PAL isn't integrated in the groups other work
- Confusing case
- Too many steps to qualify folks
- Timeline, especially for grantees
- Shifting gears from broad outreach to more targeted strategy, too late in the game
- Resources
- Messaging

**What we didn't do:**
- We went too broad and didn't have enough depth
- Didn't fully think about *where* to find the right people
- Figured out where to find the right people too late
- Community Catalyst didn't leap to action
- Assumed for too long that volume would produce

7/10/20062:35:31 PM

1

AWP-PAL-00116

- Unclear goal for individual to understand
- Wrong group of grantees because they work with and targeted wrong population
- Didn't use TPP's to get individual plaintiffs
- Getting groups to target more -- basic organizing methods
- No initial assessment to determine and use our own connections
- Shouldn't have focused solely on diseases as hook
- Didn't outreach to low income or minority communities
- Cast too wide a net
- Should have test various targeting strategies
- Need to diversify PAL coalition
- Use a "medical advisor" to help target population, for the PAL groups as well

What's to be done:

- Report to HBSS – stating clearly the original idea of casting a wide net and creating high volume
- Need to get info from HBSS on their outreach efforts; how this case will effect them and their future drug cases
- Report to Grantees
- Conference call with HBSS to analysis each others evaluations


Atlantic: CC is probably going to be part of other group's proposals, like MCLA and the Medicare Rights Center, so we have a good reputation with Atlantic. We need to move quickly on our concept paper and get Laura Robbins bulleted point before Thanksgiving. Marcia is going to drive the process and develop a broader proposal that incorporates both PAL and PAL Plus.

Sue suggested that we have to start by adding strategic and programmatic components to the outline that Kate did. Including in this is the work done with IMAP that draws our network of doctors. Then tying this to our litigation work and the educational component and how our work in the state policy arena can influence federal policy. PAL in itself brings the expertise and knowledge as well as connections and credibility.

Alex suggested that the notes don't illustrate our niche and we need to work in the specifics that will show this. Michael had looked over the previous notes from the conversation with Laura and thought that the proposal needed to have a vision of where we want to be in three years and the path that will get us there, which includes sustainability. The question of *cy pres* being an aspect of sustainability was raised and Alex believes that it is too unpredictable to be included in that section but could be part of the public education piece.

Sue talked about the Pension Rights Center, since Atlantic suggested this as a model, and explained how it is very policy based, including reports and articles. If we can produce a state strategy that would tip to the federal level we could use our educational materials as a tie in to advocacy. We could use our policy materials on the ground as educational tools.

AWP-PAL-00117

Marcia outlined what she believes our niche to be, which includes consumer groups with a view of the policies of Rx drugs that is not a knee jerk reaction. We work to protect individuals as well as the broad idea of access.

Review of Memo:

#1 "scam detection": Along the same idea of what we presented to HBSS. We would focus on Part D but still work on the broader issue of researching and analyzing industry disorientations. We should also included examples from PAL Plus and link this to our expertise and describe how we can bring this frame to the next level. We also have an offensive legal strategy that can connect #1 and #2.

    b. Link but not "track" this with RealBenefits
    c. add physicians – integrate IMAP work
    d. and e. take out
    f. add to a
    g. pull out and put into a public education section that includes communications, materials, and messaging

 #2, Support consumer-based litigation efforts, and #3, Strengthen outcomes favorable to consumers in settlements, and half of #4, Generate and promote *cy pres* proposals, should all be put under one category.

#5, Generate new policy options, and #6, Support policy change proposals, should go under a Policy category and include the IMAP strategy; transparency, pricing (AWP and PBM's) and formularies.

#6, Support policy change proposals, need to identify and track policy change and how states can tip federal policy. Outline the different roles that members of the PAL coalition can take on. Differentiate between issues we will initiate and those we will just support.

After this we should put in a Public Education section.

#7, Develop financial support from a variety of sources, Take *cy pres* out and insert information about high donor strategy.

**Next steps:** Decide on partnerships, insert aging aspects, and define outcomes

AWP-PAL-00118