# EXHIBIT 6

1                   IN THE CIRCUIT COURT OF THE
                  SECOND JUDICIAL CIRCUIT, IN
2                   AND FOR LEON COUNTY, FLORIDA

3   THE STATE OF FLORIDA

4   ex rel.

5     VEN-A-CARE OF THE FLORIDA
      KEYS, INC., a Florida
6      Corporation, by and
       through its principal
7       officers and directors,
        ZACHARY T. BENTLEY and.
8     T. MARK JONES,

9        Plaintiffs,

10   vs.                      CASE NO.:  98-3032A

11   BOEHRINGER INGELHEIM
      CORPORATION; DEY, INC.; DEY,
12   L.P.; EMD PHARMACEUTICALS,
      INC.; LIPHA, S.A.; MERCK KGaA;
13   MERCK-LIPHA, S.A.; SCHERING
      CORPORATION; SCHERING-PLOUGH
14   CORPORATION; ROXANE
      LABORATORIES, INC.; and
15   WARRICK PHARMACEUTICALS
      CORPORATION,
16
        Defendants.
17   _____/

18            MOTION HEARING

19        The above-entitled matter came on to be heard
      before the Honorable L. RALPH SMITH, presiding as Circuit

20   Judge, at Courtroom 3-B, Leon County Courthouse,

Tallahassee, Florida, on July 19, 2004, commencing at 3:40

21   p.m.


22

Reported by:
23      RAY D. CONVERY
Court Reporter
24


25

1  APPEARANCES OF COUNSEL:

2  On behalf of the Plaintiffs:
   MARK STEPHEN THOMAS, ESQ.
3  MARY SIEGER MILLER, ESQ.
   Office of the Attorney General
4  300 - The Capitol
   Tallahassee, FL 323991050
5  Phone:  850-414-3600
   Fax:  850-487-9475
6  E-Mail:  Mark_Thomas@oag.state.fl.us
   E-Mail:  Mary85nd@aol.com
7
   For the Relators:
8
   JAMES JOSEPH BREEN, ESQ.
9  The Breen Law Firm
   3562 Old Milton Parkway - No. PKWY000
10  Alpharetta, GA 30005-4464
   Phone:  770-740-0008
11  Fax:  770-740-9109
   E-Mail:  Jbreen@breenlaw.com
12
   and
13
   GARY L. AZORSKY, ESQ.
14  BERGER & MONTAGUE, P.C.
   1622 Locust Street
15  Philadelphia, PA 19103
   Phone:  800-424-6690
16  Fax:  215-875-4604
   gazorsky@bm.net
17
   On behalf of the Defendants Dey, Inc., and Dey, L.P:
18
   KELLY OVERSTREET JOHNSON, ESQ.
19  BROAD AND CASSEL
   Post Office Box 11300 (32302-3300)
20  215 South Monroe Street - Suite 400

Tallahassee, FL 32301
21  Phone:  850-681-6810
Fax:  850-681-9792
22  E-Mail:  Kjohnson@broadandcassel.com


23


24                    (continued)


25

1   APPEARANCES OF COUNSEL (continued):


2
     On behalf of the Defendants Dey, Inc., and Dey, L.P, and EMD
3    Pharmaceuticals:
     CHRISTOPHER C. PALERMO, ESQ.
4    KELLEY DRYE & WARREN LLP
     101 Park Avenue
5    New York, NY 10178-0002
     Phone: 212-808-7789
6    Fax: 212-808-7897
     cpalermo@kelleydrye.com
7
     On behalf of the Defendants Schering, Schering-Plough and
8    Warrick:


9    DANA GEORGE TOOLE, ESQ.
     DUNLAP, TOOLE, SHIPMAN & WHITNEY, LLC
10   2057 Delta Way
     Tallahassee, FL 323034227
11   Phone:  850-385-5000
     Fax:  850-385-7636
12   E-Mail:  Dana@duntoole.com


13   On behalf of the Defendant Warrick:


14   JOHN P. McDONALD, ESQ.
     Locke, Liddell & Sapp, LLP
15   2200 Ross Avenue - Suite 2200
     Dallas, TX  75201-6776
16   Phone: 214-740-8000
     Fax:  214-740-8800
17


18


19


20

21

22

23

24

25

1                P R O C E E D I N G S

2        THE COURT:  Be seated.

3        MS. JOHNSON:  Judge, I just had something hand-

4    delivered to you.  I think it went the same way when

5    you were coming in the back way.  I gave it to Karen,

6    but anyway, she will probably be coming in so --

7        THE COURT:  Did you deliver it to the J.A.?

8        MS. JOHNSON:  I gave it to Karen and she was going

9    to try and catch you, because we think we've made your

10    life a little bit easier.  We're hoping so.

11        THE COURT:  Okay.  That would be good.  Are you

12    ready to proceed or do I need to wait until we get

13    this?

14        MS. JOHNSON:  Well, we can do it any way.

15        Let me just tell you a little bit about where we

16    are.  We have various motions for protective order that

17    are pending that have been filed by all the different

18    parties, and we have spent a good bit of time trying to

19    come up with some language that might be agreeable to

20    us so that -- at least focus some of the issues for you

21      on where the areas of disagreement are.

22          I think all of the parties agree that we need a

23      protective order because this is going to be a document

24      with -- you know, a case with voluminous documents and

25      a lot OF privileged and sensitive information.  So

file:///k|/My%20Documents/PO-FLHearingTr.txt

5

1    we're not disputing, any of us, the need for a

2    protective order.  The problems that we were dealing

3    with was how do we craft one.  So we think we've taken

4    a good stab at it.

5         We're hoping that today we can finish everything

6    because basically what we've had is a sort of a stall

7    on the ability of the parties to exchange documents

8    because of the lack of a protective order.  If you'll

9    remember, back at the hearing months ago, we talked

10    about all the documents, and with few exceptions the

11    parties are still sort of holding on to a lot of

12    documents that we haven't been able to exchange.  So

13    we're hopeful today that we're going to be able to wrap

14    this up.

15         We essentially have two issues that are not

16    covered or not agreed on in that order.  One is dealing

17    with the classification of the plaintiff in the case.

18    That may not seem like a big issue, but we have not

19    been able to agree on that.

20         It's our position that the Plaintiff is the State

21    of Florida as captioned in the case.  The A.G.'s Office

22    believes that the Plaintiff or the appropriate party in

23    interest is the Attorney General and AHCA.  So that's

24    one issue.

25        And the second issue is the disclosure of

1      documents to law enforcement personnel, which we have

2      not been able to agree on.

3          THE COURT:  The second issue was what?

4          MS. JOHNSON:  The disclosure of some of this

5      privileged information to law enforcement personnel

6      upon request.  But otherwise the order is fairly --

7      we've spent an awful lot of time and we think we can

8      all live with it except for those two issues.  I think

9      that I'm explaining everything appropriately.

10         MR. THOMAS:  That's accurate, Your Honor, and we

11      can certainly address those in order.

12         First of all, the style of the case obviously

13      starts with the State of Florida.  Judge, that's

14      required underneath Chapter 68.  Section 68.083(2)

15      requires that qui tam actions in Florida be brought "in

16      the name of the State of Florida," quote/unquote,

17      that's the reason for the style.

18         Regardless, that doesn't translate to "and each

19      and every possible subdivision of the state of Florida

20      therein or there contained within."  The complaint in

21      the body plainly states that it's brought on behalf of

22      the Office of the Attorney General, Charlie Crist,

23      representing itself and the victim in this instance, or

24      the alleged victim, the Agency for Health Care

25      Administration.

1      Judge, respectfully, the Defendants don't get to

2    pick who it is who's on the left-hand side of the V in

3    "Attorney General V."  The Plaintiffs do.  The A.G.

4    will of course cooperate continuously with the

5    Defendants in obtaining any information from any

6    governmental unit that we do not directly represent,

7    but necessarily the Attorney General reserves for

8    itself and only itself the right to state who it is

9    that they're the lawyer for, and we do not represent

10    cities.  We do not represent counties.  We don't

11    represent other executive agencies, only the Agency for

12    Health Care Administration.

13        THE COURT:  What's the statute we're dealing with?

14        MR. THOMAS:  Chapter 68, Judge.

15        THE COURT:  Sixty-eight --

16        MR. THOMAS:  68.083.

17        THE COURT:  Sixty-eight --

18        MR. THOMAS:  Chapter 68, Section 68.083, paragraph

19    (2).

20        THE COURT:  And what are the subsections now?

21          MR. THOMAS:  .083 paragraph (2).  And, as well,

22     Judge, there's a definition in the statutory

23     definitions in Chapter 68 expressly describing what the

24     word "agency" means.  It's the particular entity being

25     represented.

1          This is purely a Medicaid case.  The Agency for

2     Health Care is the single state agency that handles

3     Medicaid.

4          MS. JOHNSON:  Judge, if I may, the crux of the

5     dispute I think has to do with the discovery-related

6     issues because our discovery that has gone to the

7     Attorney General's Office defined the Plaintiff as the

8     State of Florida and with Ven-A-Care as the Relators

9     part of the caption in the case, and there's been a

10     series of objections raised by the Attorney General's

11     Office that that is not appropriate, that they are only

12     representing themselves, the Attorney General's Office

13     and AHCA.

14          I did find one case that I would like to give to

15     Your Honor.  It's United States vs. National

16     Broadcasting Company, and it's 65 FRD 415.  It's a 1974

17     case.  Judge, this case dealt with -- the Plaintiff was

18     the United States of America acting by and through the

19     Department of Justice, and it dealt with a variety of

20     discovery disputes, but on page three there -- you'll

21      see there is -- on the right-hand column it says

22      "First -- Preliminarily to resolution of the question

23      whether there has been any failure of compliance with

24      the Court's orders, several important considerations

25      arise.  First, while the Department of Justice, upon

1     proper authorization by the Attorney General, brings

2     antitrust actions, the Department is not the plaintiff.

3     The Department of Justice is the plaintiff's counsel.

4     The plaintiff is the government of the United States

5     acting on behalf of its citizens.  Therefore, when

6     considering what action was or was not taken in

7     compliance with the Court's orders, this court will

8     look to the actions or inactions of the government as a

9     whole, not just the Department of Justice."

10          We think that this case is very analogous to the

11     case that we have before Your Honor in that the

12     Attorney General is acting on behalf of the State and

13     is the lawyer, but the State is the overall plaintiff

14     and they control the agencies and have the ability to

15     get information from the agencies, which is really why

16     there's this dispute.  And we think the caption in the

17     case is very clear.  It is the State of Florida and

18     they can't try to narrow it.

19          Also in the prayer for relief they specifically

20     make a claim on behalf of the State of Florida and the

21      Relator against the Defendants.  So we believe that,

22      appropriately in the protective order, that the style

23      of the case is the plaintiff is the State of Florida

24      and it should not be limited to AHCA and the Attorney

25      General's Office.

1          MR. THOMAS:  And, Your Honor, in competing case

2      law that the Attorney General's Office feels is on

3      point, Marshal vs. NALC, United States District Court,

4      Southern District of New York, if I might quote:

5      "Plaintiff is hereby reminded that the discovery order

6      only requires the production of documents in the

7      possession, custody or control of the Defendant or of

8      another entity that keeps or supplies a personnel

9      record for the Defendant.  The Defendants are not

10      required to obtain documents from other agencies for

11      production pursuant to the discovery order."

12          Your Honor, at no time has the Attorney General

13      represented that they in fact are the attorney for

14      anyone other than themselves and the victim in this

15      case, the Agency for Health Care Administration.  And

16      as I previously stated, the Attorney General pledges

17      that we will be as cooperative as possible in helping

18      to obtain any information that we might be able to from

19      anyone, whether it be a governmental entity or not,

20      pursuant to any discovery requests or public record

21      requests of any of the Defendants.  We're not

22      attempting to withhold anything, and we will be

23      absolutely cooperative.

24          What concerns us is the assertion that we

25      represent people that we do not feel that we represent

1    in this action.  That's highly troublesome for us

2    because we necessarily must feel that we have command

3    over whom it is we have as a client, who we owe a duty

4    to and who we represent as attorneys.

5        THE COURT:  It's your position that the Attorney

6    General is the head of the Department of Legal Affairs.

7        MR. THOMAS:  Yes, sir.

8        THE COURT:  So the Department is bringing the

9    action through the head of the Department, the Attorney

10    General --

11        MR. THOMAS:  Yes, sir.

12        THE COURT:  -- on behalf of the State of Florida.

13        MR. THOMAS:  Yes, sir.  That's the caption that's

14    required pursuant to the statute.

15        THE COURT:  But it's the Department through the

16    department head, the Attorney General, that's bringing

17    the action.

18        MR. THOMAS:  Yes, sir.

19        THE COURT:  Well, I think that's the way the

20    statute reads.

21        MR. THOMAS:  Yes, sir.  And in any analogous

22   circumstance, when one entity agency such as the

23   Department of Legal Affairs brings an action, it

24   certainly does not mean all of the executive- or

25   cabinet-level agencies; it is the agency that is

1    expressly bringing the action.

2        THE COURT:  Well, in 68.083 it makes reference to

3    the department bringing the action.

4        MR. THOMAS:  Yes, sir.

5        THE COURT:  And in 68.082 it defines what the

6    department is.

7        MR. THOMAS:  Yes, sir.

8        THE COURT:  Which is the Department of Legal

9    Affairs.

10       MR. THOMAS:  That's correct, sir, one agency, the

11   Department of Legal Affairs.

12       THE COURT:  That's what -- that's the way it's

13   defined in the statutes.

14       MR. THOMAS:  Yes, sir.

15       MS. JOHNSON:  Judge, our position is that the

16   Department is not the one that brought the lawsuit; the

17   state of Florida is, as indicated in the caption of the

18   case.  The lawsuit is styled the State of Florida, ex

19   rel. Ven-A-Care of the Florida Keys.  It's not styled

20   "Department of Legal Affairs."

21          MR. THOMAS:  Judge, for us to have styled it the

22     "Department of Legal Affairs and the Agency for Health

23     Care Administration," we would not have been in

24     compliance with 68.083(2).  That section requires that

25     the words, "the state of Florida," appear in the

1    caption.

2        THE COURT:  That it be brought in the name of the

3    State of Florida.

4        MR. THOMAS:  Yes, sir.

5        THE COURT:  Well, I think that's -- you've

6    complied with the statute.

7        MR. THOMAS:  Yes, sir, as we're required to.

8        MS. JOHNSON:  And, Judge, that's what we're

9    saying:  They have complied with the statute.  It is

10    brought in the name the State of Florida.  The State of

11    Florida is the Plaintiff.  They can't say that the

12    State of Florida is somebody else, and that case that I

13    gave you is very analogous.

14        THE COURT:  Do you have a case you want me to look

15    at?

16        MR. BREEN:  Your Honor, Jim Breen for the Relator,

17    Ven-A-Care.  I just wanted to clarify a point if I

18    could.  I think the issue here is -- I don't think

19    there's any question that the Attorney General

20    represents the State of Florida.  We're all in

21    agreement on that.  Just kicking off discovery in this

22    case, I think what everybody's trying to do is make

23    sure that the lines of attack on discovery are real

24    clear, and some of the discovery demands that have been

25    made by the Defendants and directed to the Attorney

1    General don't just deal with the agency that's the

2    primary agency here that paid the Medicaid claims,

3    which is the Agency for Health Care Administration.

4    There's no doubt that the Attorney General represents

5    the State of Florida and the Agency for Health Care

6    Administration has brought this false claims action for

7    Medicaid fraud.  That's what the case is about.

8        The problem is a discovery issue, and it's maybe

9    perhaps more of a Rule 1.280 issue than anything else,

10    and that is, when the Defendants served a request for

11    production on the Attorney General who's trying to

12    collect for Medicaid fraud against the Agency for

13    Health Care Administration, does the Attorney General

14    have to go down to Dade county or the local government

15    or do they have to go to the Department of

16    Transportation to find records, or do they have to go

17    to the Department of Corrections to find records or the

18    Board of Education, the Department of Education to find

19    records?  That's the issue, and that's the issue we're

20    going to run into in discovery.

21          What we respectfully submit is that the discovery

22     in this case and the way the statute is set up, it

23     should -- discovery should follow, and that is that

24     there was a Medicaid fraud committed, at least alleged,

25     on the Agency for Health Care Administration.  It cost

1       the state of Florida money.  The Attorney General's

2       brought the lawsuit.  The State of Florida should

3       answer discovery as in any other case, but it's got to

4       be kind of clear -- it's got to be clear going into it

5       who the real parties in interest are here.  And it is

6       the state of Florida through its Agency for Health Care

7       Administration, and every time the Attorney General

8       gets a request for production it should not have to go

9       to the 20-plus agencies or local governments to find

10       documents and what have you.

11          To the extent that the Defendants want anything

12       from those other agencies or governmental entities,

13       they should request them by subpoena or whatever

14       mechanism they want and, of course, the Attorney

15       General and the Relator will cooperate fully in

16       discovery against third parties also.  But we just want

17       it real clear going into this case that they can't be

18       inundating the Attorney General's Office with demands

19       for discovery that are far, far, far broader than the

20       allegations in this case by using the many agencies of

21      the State of Florida or local governments.  That's the

22      issue, and I think that's -- I think that's the issue

23      that we're trying to kind of get some clarification of

24      going into discovery here, Judge.

25              THE COURT:  Well, I think, if we were dealing with

1       a private individual bringing the action in the name of

2       the State of Florida, that private individual would be

3       bringing it on behalf of the State of Florida, but they

4       wouldn't have access to any of those agency records in

5       the least and they couldn't possibly provide those

6       requested documents.  If the Department of Legal

7       Affairs takes over that action, they ought to be in the

8       same posture.

9           So I think, you know, even though this case that

10       you've cited to me is analogous, that's a federal case

11       dealing with the federal system and that's a district

12       court case out of California that doesn't appear to

13       have -- it must not have the same statutory language we

14       have here.  So I think our statute -- the statutory

15       provision of our statute supports the position of the

16       State and that would be the order of the Court.

17           MR. BREEN:  And, Your Honor, the only other issue

18       outstanding on the protective order -- and,

19       Ms. Overstreet, correct me if I'm wrong, but it gets to

20       this -- and we've worked hard on this, Judge.  You can

21      see this order's long, and there's a lot of things to

22      it and a lot of thought has gone into it, but the

23      bottom line here and the dispute that we just can't get

24      over -- and we need to get it resolved so that we can

25      finish this thing and get on with our discovery.  These

1       lawsuits, they're all over the country.  They've been

2       brought by a number of states.  There's federal

3       investigations going on against these Defendants and

4       others, other drug companies, and the state attorney

5       generals and the Department of Justice are constantly

6       sharing information with each other, both on a civil

7       level, a civil investigative level, on a civil lawsuit

8       level, and on a criminal level.  And the question

9       becomes, when we get requested -- and when I say "we,"

10      the Relator, and my client, Ven-A-Care, has been

11      subpoenaed by Congress and by a number of other people

12      also, or an attorney general gets a request from other

13      law enforcement agencies, when we get requested

14      information by subpoena or by government request from

15      one investigative agency to another, what notice if any

16      do we have to give to the Defendants?

17          The protective order we've worked out provides for

18      a mechanism for turning that information over, I think,

19      but the question is what notice do we have to give to

20      the Defendants?  And I believe, and it's our position,

21      the Relator and the State Attorney General, that if

22      it's a civil -- purely a civil request or that type of

23      thing, I don't think there's any objection to giving

24      them notice of it; is that correct?

25          MR. THOMAS:  Absolutely not, Your Honor.

1            MR. BREEN:  But if criminal law enforcement

2      authorities ask us or other investigative agencies ask

3      the Attorney General or the Relator for information and

4      they're qualified under your protective order to get

5      the information and they ask us not to tell the

6      Defendants about it, we shouldn't have to give the

7      Defendants notice.  Maybe we should have to file

8      something with Your Honor in camera or at least have

9      the record covered, but we shouldn't have to go and

10      tell the Defendants if information's requested of us of

11      an entity that's allowed to have the information under

12      your protective order because we've agreed to that.  We

13      shouldn't have to give the Defendants notice about

14      that, and that's what the issue is.

15            MR. McDONALD:  Your Honor, I'm John Mcdonald

16      representing Warrick and Schering.

17            Actually Mr. Breen I think jumped the gun a little

18      bit as far as what our agreement is.  We have not come

19      to any kind of agreement about allowing either the

20      State or the Relator to share information with other

21    law enforcement officials, and this is in the civil

22    context.  I don't mean to address what may happen

23    through a criminal subpoena or grand jury subpoena or

24    something like that, but in the civil context of the

25    State volunteering information or Ven-A-Care

1      voluntarily sharing information with other attorney

2      generals, we have not come to any kind of agreement on

3      that.

4           The Defendants are very much against allowing the

5      State or Ven-A-Care to share our highly confidential

6      pricing information and confidential internal

7      information with other third parties, and that includes

8      law enforcement officials in other states and the

9      federal government.  I don't know of any reason why the

10     State needs to go do that.

11          Mr. Thomas just got up here and made a very strong

12     argument about how he only represents this one

13     individual agency in the State of Texas, and he doesn't

14     represent any other agencies and he doesn't represent

15     any other entities, and he doesn't represent any other

16     persons, yet now they want to be able to take this

17     information and ship it out throughout the United

18     States.  I don't understand that argument.  It's

19     important to us to maintain control of this

20     information.

21          If these other state officials or law enforcement

22    agencies want this information from my client or from

23    Dey, they have the authority to do that.  They can

24    institute their own proceeding.  They can institute

25    their own CID process, and they can ask for that

1     information from us directly.

2           We are just asking that we are able to maintain

3     control of that information.  I don't understand why

4     the State of Florida needs to be a portal through which

5     our confidential information is shipped throughout the

6     United States.

7        MS. MILLER:  Judge, I'll be brief.  It's an

8     interesting argument; however, there's already

9     precedent for the State of Texas acting as a portal for

10     shipping confidential information which they wish to so

11     dearly control.  It's been happening in Texas.  We

12     attached the Texas protective order to our motions --

13     to the various motions, as did the Defendants.  That

14     order provided for sharing with law enforcement

15     personnel from other states, and we are merely asking

16     to do the same.

17           There are lawsuits being filed by other states.

18     There has been information being -- that has been

19     swapped between the states.  That's how this state has

20     gotten some information pursuant to that protective

21    order after signing off on an agreement that we will

22    not disclose it to an inappropriate person, therefore

23    giving the defendants some measure of comfort.

24        It also seems to me there's also subpoenas being

25    issued just about every day in ongoing investigations.

1      This all gets tied into the notice issues that

2      Mr. Breen has raised that, if there is a criminal

3      investigation ongoing, certainly we can't be telling

4      the defendant about that.  If it's something from

5      another state, it might not -- they may or may not be

6      the target, but we can't be telling them that.  The

7      same thing for another qui tam lawsuit that may be

8      under seal.

9          On top of that, it just seems to me, well, why not

10     have Florida be a portal for the other states?  The

11     other states will bear the burden of the expense.  I'm

12     sure the Defendants will offer to share in that expense

13     to avoid this, but at the same time it may avoid the

14     whole CID or the investigative subpoena issue coming up

15     at all or even being issued, and then there's the risk,

16     of course, to the Defendants that such a subpoena would

17     make the papers and then their stocks would take a hit.

18     This is another way for the Defendants to get the -- to

19     be cooperative without having to run the risk of the

20     publicity.  Thank you.

21          MR. McDONALD:  Your Honor, if I may, I honestly

22     don't understand the issue about stocks, and that's

23     nowhere in our motivation.

24          My client is currently subject to nine other

25     lawsuits throughout various states as well as a

1      multi-district litigation pending in Massachusetts.

2           The Texas case which is now over did allow the

3      State of Texas, the Attorney General to share this

4      information with limited law enforcement personnel upon

5      the condition that they not only gave us notice of any

6      such disclosure, as well as they also told us what they

7      gave, but that case is over.

8           The Plaintiffs in West Virginia sought this same

9      type of relief, and if we're citing precedent, the West

10     Virginia court denied the Plaintiffs the ability to

11     share that information with other law enforcement

12     personnel.

13          There is also no mechanism in the pending

14     multi-district-court litigation pending in Massachusets

15     that allows the Plaintiffs in that case to share

16     information produced in that case with other law

17     enforcement personnel.

18          If Ms. Miller wants to argue that this information

19     is already out there, well then, it's already out there

20     and we'll deal with that through the Texas court; but

21    we don't want to have all these various courts and this

22    information being spread through all various

23    mechanisms.  We want to maintain control of our

24    confidential, highly confidential information.

25        THE COURT:  Well, what is the type of information

1    that you contend to be confidential?

2        MR. McDONALD:  Well, for example, Your Honor, dead

3    net pricing, absolute bottom-line pricing information

4    that has been provided or will be provided to the State

5    in conjunction --

6        THE COURT:  That term doesn't mean anything to me.

7        MR. McDONALD:  That means essentially the absolute

8    lowest price that our product would be sold minus

9    rebates, whatever else may be out there, the absolute

10    bottom-line lowest price.  It's very proprietary

11    information.  In fact, you know, I'm concerned about

12    frankly sharing that with our co-defendants because at

13    the end of the day we're competitors.  We're selling

14    the same information.  It's very proprietary

15    information.  For a company to let out its pricing

16    information, competitors -- their competitors out there

17    in the industry can take advantage of learning that

18    type of information, and we're trying to maintain

19    control of it.

20        THE COURT:  Well, if the government is paying for

21    prescription drugs based upon a percentage of what they

22    think the average wholesale price is and a manufacturer

23    knows that the government's trying to find out what

24    that average wholesale price is, and if the

25    manufacturer doesn't respond direct to the government

1       but responds by making representations to some other

2       entity that they know will do that for them, the

3       accuracy of that information is something that I think

4       the government's entitled to know.

5           If your company manufactures drugs and they know

6       that there's an information-gathering company that

7       finds out the information that -- the most reliable

8       information they can from all of the manufacturers,

9       what is the average wholesale price, because they'll

10      make that information then available to -- in Florida

11      to AHCA or the other governmental agencies.  If they

12      are making false statements as to that advertisement,

13      that average wholesale price, knowing that AHCA's going

14      to be relying on it, that may be the gravamen of an

15      action against them, that may be what that this case is

16      all about, I don't know.  But whatever information they

17      gather from this lawsuit should hardly be, you know,

18      confidential information.  I mean, if your

19      manufacturing company has disclosed it to this

20      information-gathering organization, that's publication

file:///k|/My%20Documents/PO-FLHearingTr.txt

21     to the world.

22          MR. McDONALD:  Your Honor, I don't disagree that

23     publicly disclosed information is not confidential.

24     We're not talking about those types of documents.

25     We're talking about documents that are not otherwise

1      public.  This is private, proprietary information that

2      is not made public.

3          THE COURT:  But if that's information that the

4      Department of Legal Affairs is able to discover through

5      proper discovery devices in a lawsuit and they get that

6      information, if the Court that orders you to provide

7      that to them concludes that that is confidential and it

8      can't be disclosed to anyone else, such an order can be

9      entered.  If the Court looks at it and concludes that

10      -- it's understandable you wouldn't necessarily want

11      someone to know about it, but you can't prevent that

12      from being shared.  A lot of companies, when they

13      settle multi-million-dollar tort claim, they like to

14      keep all that information confidential so lawyers in

15      other states won't be able to discover it, but if it's

16      not things that you can seal the court file on, when

17      you file a lawsuit or get involved in a lawsuit, it

18      becomes public information, but I don't know what

19      information y'all are trying to protect.

20          MR. McDONALD:  Your Honor, unfortunately I don't

21    have specific examples of documents that I can provide

22    to the Court to have some type of hearing on.  I don't

23    think the Plaintiffs, either the State or Ven-A-Care,

24    disputes that the Defendants in this case will produce

25    information that should be subject to a protective

1    order and should not be made public.  I don't think

2    there's any contention by the Plaintiffs or

3    Ven-A-Care -- and I think they'll correct me if I'm

4    misstating that.

5         The issue then is, of this information that they

6    acknowledge should be covered by a protective order,

7    should they then be allowed to share that

8    protective-order-cloaked information with other

9    attorney generals in other states and other law

10    enforcement officials?  That's the first question:

11    Should they be allowed to do that?

12         We take the position that, no, they shouldn't be

13    allowed to do that.  If these other law enforcement

14    officials or other states want that information from

15    us, they have courts in their states that can spend

16    their time and they can go do that, can go through

17    their own process to get that information from them and

18    we can deal with that.

19         The second issue then, if the Court disagrees with

20    us and says, well, no, I believe that the State can

file:///k|/My%20Documents/PO-FLHearingTr.txt

21      share that information with other law enforcement

22      personnel, then we would ask that, as in the Texas

23      proceeding, the Court provide that the State should

24      give us notice of who they've given this information to

25      and what exactly they've provided these other officials

1    so that we can maintain control over these -- of this

2    information so that, if it shows up in some newspaper

3    or becomes public, we'll have a way of tracing of how

4    it got there.  If in fact we don't know who it was

5    given to or what was given to these people, we'll have

6    no way of doing that.

7         MR. BREEN:  Your Honor, maybe there's a way we can

8    kind of move to this a little bit more deliberately and

9    slowly.

10        Our primary concern, as I understand it, as

11   Mr. McDonald said, there's two issues:  One, is it

12   confidential?  In other words, should the whole world

13   know about it or not, like the product liability cases

14   or those types of situations; should the whole world

15   know about it or not?

16        The other one is:  Should other law enforcement

17   agencies know about it, and if so, should we have to

18   tell the Defendants that we told them about it?  Really

19   two different issues.

20        Maybe a way to resolve this would be to hold off

21    on the issue of whether or not the proprietary -- this

22    information that the Defendants are claiming is

23    proprietary -- let them mark it as confidential, let

24    them mark it as the categories we have in our

25    protective order, and then, to the extent that we're

1        going to contest that, we'll contest it and then Your

2        Honor will have the actual information in front of you

3        so you can make a ruling and everybody can make their

4        arguments.

5            But in terms of sharing with other law

6        enforcement, if we get a criminal request from a

7        federal or state agency that's conducting a criminal

8        investigation, then we would request that we be allowed

9        to honor that request and turn the information over and

10       not have to give the Defendants notice of that.

11       Perhaps we can make a -- file something in camera or

12       under seal or keep a log of it that we'd have to

13       produce upon being required to produce it, but the only

14       thing we're asking is that we not be required to go

15       tell the Defendants if we're asked by a criminal law

16       enforcement agency to provide this information.  That's

17       really a separate issue.

18           As far as the issue of whether it's confidential

19       and should be disclosed in the first place or under

20       what conditions if any we can share it with another

21     attorney general's office in a civil investigation, we

22     can come back with the specific information and Your

23     Honor could rule on that perhaps having the exact

24     information in front you if that would be necessary at

25     the time.

1          THE COURT:  Well, I feel like the Court would have

2     a very difficult time in entering any kind of order

3     today that would cover every conceivable piece of

4     information that might be relevant to this lawsuit.

5          With what I know about the essential elements of

6     the claims, I have a very, very difficult time

7     believing that that information is confidential that

8     deals with pricing.  In other words, a manufacturer may

9     sell to Wal-Mart for, you know, an extremely low price

10     because of the volume they're dealing with, whereas

11     they might not sell to Sears & Roebuck that used to be

12     the giant at the same price.  They may not want, you

13     know, Sears & Roebuck to know what they're selling it

14     to Wal-Mart for, but the fact that that may be

15     information that they want to not have to disclose may

16     be their private business where they never have to

17     disclose it, but if they're telling the government that

18     we're going to supply the armed forces with these same

19     products that we provide to Sears & Roebuck or to

20     Wal-Mart and we will -- because of the volume we know

21      that you're going to be buying, we'll sell it to you

22      for 90 percent of our lowest wholesale prize, you've

23      then opened yourself up.  You can't keep that secret

24      anymore.  The government would be entitled, if they're

25      claiming that there's been some kind of fraud

file:///k|/My%20Documents/PO-FLHearingTr.txt

30

1    perpetrated on the government, to obtain that

2    information.  If the government obtains that

3    information and it's revealed that the manufacturer was

4    charging these prices, then it's going to be public

5    information.  There's no reason that anyone should

6    protect the manufacturer from that.

7        The government may in the course of litigation

8    say, well, we're willing to enter into these

9    confidentiality agreements, and we have no desire to

10    disclose to other states because we're interested in

11    our lawsuit, but another state may come in and say,

12    well, for us to plow that same ground will be requiring

13    us to duplicate these same resources that have drained

14    the State of Florida, and why should the manufacturers

15    be able to put us to that expense?  And as to the

16    example I just mentioned, I think the answer would be

17    they should not be.

18        Now, for us to -- for you to ask me to now

19    determine which one of those issues will always be

20    trade secret or never be trade secret, I couldn't enter

21    an order like that today, and I don't know where y'all

22    have gotten -- I couldn't just carte blanche say

23    everything that you discover in the course of this

24    lawsuit you can share with anybody in the world by just

25    giving them notice of it, or even if I don't want to

1    give them notice, if it's a criminal case, then I don't

2    know that I can necessarily -- I know I can't with the

3    information I've got right now.

4        If you can give me some idea about the nature of

5    the information that according to counsel here the

6    State concedes is confidential, then that type thing,

7    if it's truly confidential, you may not should be able

8    to share it with anybody.

9        MR. BREEN:  Well, Your Honor, I think you've hit

10    the nail on the head.  What we're trying to do and

11    we're -- what this protective order is designed to do

12    is not for either side to be admitting -- when the

13    other one says it's confidential, the other side's not

14    admitting it's confidential, but the protective order

15    is designed to let -- to give everybody a fair

16    opportunity to mark their documents under these

17    classifications that we've agreed on the

18    classifications, and then, if anybody wants to dispute

19    it, we've got an opportunity to do it.  So we've set

20    the system up for that.

21          The limited question is:  Who if anybody can we

22     share it with, government-agency-wise, before coming

23     back and getting an order from Your Honor?  That's the

24     question.  And if Your Honor's inclined to say we can't

25     come up with an order saying you can share it with

1      anybody until you come back and get another order from

2      me, then I guess that's where we are, and we understand

3      that, but we just need to know today going forward what

4      the rules are.

5          THE COURT:  Well, I know from personal experience

6      as a lawyer and now from the viewpoint of the bench

7      that there's some people in litigation, either the

8      lawyers or the clients who have a stamp that's called

9      "confidential" and they stamp it on every piece of

10     paper that comes through their office, whether it's a

11     notice of hearing or anything else.  It's just

12     someone's got a full-time job with that stamp, and when

13     they go to produce the information in the course of a

14     lawsuit, stamp it confidential, not to be disclosed to

15     anyone else.  Well, that may be very prophylactic on

16     certain things, but it causes an enormous amount of

17     problems to the system.

18         There's some companies, every time they settle a

19     lawsuit, they want an agreement to seal the file.  Even

20     in states like Florida where you've had public record

21      records statutes, state agencies years ago destroyed

22      files.  Without any approval from the archives or

23      anybody, because of settlement of a lawsuit, they

24      destroyed them.

25              Now, there's no need to make it such a major feat

1    to protect something that's truly confidential.  If

2    it's not truly confidential, then don't make it appear

3    that it is.  I don't know --

4         MR. PALERMO:  Your Honor, if I might, Chris

5    Palermo on behalf of Dey.  I believe Mr. Breen has

6    described in general the issues in the sense that

7    there's a procedure in the draft of the protective

8    order that was submitted to Your Honor that would allow

9    for challenges to confidential designations, so that

10    the issue at the present time that's before the Court

11    is the issue, which is a narrower issue, in terms of

12    whether or not the State should have the right to

13    disclose information that they have to law enforcement

14    agencies.

15        And the -- as I understand it -- and I'm sure

16    counsel that's present will correct me if I'm wrong,

17    but as I understand it, that issue has come up in West

18    Virginia where the State of West Virginia was denied

19    the right to disclose it to other law enforcement

20    agencies, and in Texas where, to the extent that

21    disclosure to other law enforcement agencies was

22    permitted, the State was required to give notice to the

23    Defendants that the information was being -- to whom

24    the information was being disclosed and notice as to

25    what information was being disclosed.

1          I don't think that there's a case in these groups

2     of cases where the state has an unfettered right to

3     disclose to a law enforcement agency pursuant to a

4     court order.

5          And I think that, as the motions for protective

6     order made clear, both sides are in agreement

7     conceptually that there needs to be a protective order

8     for certain information that is at the heart of this

9     lawsuit.  So that I think the procedures that we've

10     worked very hard to try to establish in the protective

11     order that we've submitted will allow the designations

12     to be made subject to the right of challenge, and

13     hopefully, I think, on all sides, reduce the number of

14     instances in which issues needs to be brought to the

15     Court's attention with respect to whether a type of

16     information is confidential, highly confidential or

17     otherwise.  That was the intention broadly, I think, in

18     terms of the negotiations we had back and forth

19     regarding the protective order.

20          THE COURT:  Is there something in this proposed

21      protective order that identifies the information that

22      both parties acknowledge is confidential and should

23      never be revealed to anybody?

24          MR. BREEN:  Well, Your Honor, it doesn't go

25      that -- in other words, what the protective order does,

1    it sets up the classifications for confidential

2    information.

3        We haven't come to -- until we actually see a

4    document or group of documents that they've put the

5    classification on, we can't say whether we would agree

6    that it would meet that classification or not; but what

7    the protective order does is it gives us a procedure so

8    that we can work it out.

9        I can tell you that in Texas -- and Mr. McDonald

10    and I just litigated this case over three and a half

11    years in Texas -- we probably turned over, I don't

12    know, a million documents, and I don't know that we

13    ever had to litigate one time the classification on a

14    document; did we?

15        MR. McDONALD:  We did not.

16        MR. BREEN:  We had a procedure in place.  Now,

17    granted that the rules of judicial administration are a

18    little more flexible there than they are in Florida in

19    terms of sealed documents and confidential protective

20    orders, but still we were able to do that, and we never

Case 1:01-cv-12257-PBS    Document 3106-8    Filed 09/15/06    Page 71 of 90

21      really had a problem we had to present to the Court

22      with respect to the classification of documents.

23          The protective order was designed to allow us to

24      works these things out but to have some rules so that,

25      if there is something we have to bring to Your Honor,

1    it's limited and it's clear what we're bringing to the

2    court for a resolution.

3        Now, when the time comes to give them -- publish

4    them to a jury, that will be a different issue and

5    we'll have to then approach that separately if and when

6    that time comes.  But the protective order we've got in

7    place is -- I think we've got it 100 percent worked out

8    by agreement with the question of, number one, can we

9    turn them over to these qualified persons without

10   notice?  And if I'm -- what I'm hearing is perhaps the

11   best way to do this is not to turn them over to anybody

12   unless we come back to see Your Honor and -- either by

13   agreement, by subsequent agreement, or come back to see

14   Your Honor and have Your Honor make the decision.

15       THE COURT:  Well, I think, if y'all are trying to

16   work out an agreement along those lines that you're

17   talking about, that both sides ought to be realistic

18   enough to know that, if the State of Colorado has not

19   yet filed an action like this but they know that their

20   citizens are getting ripped off by paying too high for

Case 1:01-cv-12257-PBS    Document 3106-8    Filed 09/15/06    Page 73 of 90

21      drugs and you can go to Canada and get it cheaper or

22      you can go to Texas and get it cheaper, then Colorado

23      may have a very sincere interest in bringing an action

24      like this on their own.

25          Now, if they would be entitled to file a suit and

1    get this information out there or in federal court in

2    Colorado, they ought to be able to get this information

3    from another state that's done the same things.  And

4    so, if you have a confidentiality agreement or a

5    protective order that would enforce a confidentiality

6    agreement saying, all right, you've gotten this

7    information, and if your counterpart in another state

8    occupying that same identical role, the attorney

9    general or the agency that's entitled to bring these

10   type actions wants this information, you can give it to

11   them at will; you don't have to tell anybody you've

12   done it.  As a matter of fact, it may be more effective

13   in getting the accurate information if they don't know,

14   but you don't have to tell anybody.

15        Now, if a competitor of a manufacturer called and

16   said, oh, we know you've got all this information about

17   how much they're charging Wal-Mart for this product and

18   it's not in the Wall Street Journal yet and it's not in

19   these other places and it's not been presented to a

20   jury yet but we want you to tell us so that we can

file:///k|/My%20Documents/PO-FLHearingTr.txt

21    compete favorably with them, then you couldn't give

22    them that.  But a governmental agency who is trying to

23    make people be honest ought to be able to do it.

24         MR. BREEN:  And that's all we ask, Judge.  We're

25    asking -- the categories of agencies that we're -- the

1          Attorney General is asking for leave to be able to

2      share this information with are other state attorney

3      generals, the Department of Justice --

4          THE COURT:  And you can put in that that you can

5      only do that then if that state attorney general will

6      agree to a confidentiality --

7          MR. BREEN:  It's in there.  They've actually not

8      only agreed with the confidentiality, but signed and

9      agreed to be bound by Your Honor's jurisdiction.  It's

10      already in the order.

11          MR. AZORSKY:  It's in our proposed language.

12          THE COURT:  I don't see where that should be --

13      pose a problem to anybody that wants to be honest.

14          MR. BREEN:  That's all we ask, Judge, and the

15      question is:  Do we have to notify the Defendants if

16      the State of Colorado Attorney General asks our

17      attorney general for the information?  Do we have to

18      tell the Defendants they asked for it?

19          THE COURT:  The same type of information they

20      could get to out there, they ought to be able to get to

21      it through you.

22          MR. BREEN:  That's it, and that's what the

23      Attorney General is trying to do to be able to bring

24      these actions without spending a lot of extra money.

25          MR. McDONALD:  Your Honor, I want to stress it's

1      not a matter of being honest.  Our clients try to be

2      honest with giving information that's requested of

3      them, and we're not anywhere close to being on the

4      merits of this case, and we have all kinds of evidence

5      to show Your Honor about how our clients have been

6      honest.

7          What we're trying to address here today as far as

8      this information is we really are trying to maintain

9      control over this information, and again, we have not

10     exchanged information in this case, but as Mr. Breen

11     said, he and I have been through three and a half years

12     of litigation in Texas, so he knows that some of this

13     information that I'm going to give to him, he's going

14     to agree it's confidential and it's highly proprietary,

15     and I don't think he can legitimately dispute that.

16         I'm trying to maintain control over where that

17     information goes.  If it goes to Arkansas -- and I

18     don't know what their Freedom of Information Act laws

19     are and how that information is then going to get

20     disseminated.  We want to maintain control over where

file:///k|/My%20Documents/PO-FLHearingTr.txt

21      this information is going, who it's going to and what

22      they're getting.

23          I respect Your Honor's ruling that you have told

24      us today that you're going to allow the Attorney

25      General to share it with other law enforcement

1    officials.  Obviously we've opposed that, but I respect

2    the Court's ruling.

3        We would ask Your Honor, though, that the Attorney

4    General, if they're going to share this information,

5    that they tell us what information they're giving to

6    these law enforcement officials so that we can maintain

7    control of our -- and we know who has our proprietary

8    information out there within the universe.  Otherwise

9    you just can't maintain control over it.  You might as

10   well publish it somewhere.

11     MS. JOHNSON:  And, Judge, if I might add, too,

12   this worked very well in Texas, and we've got copies of

13   the letters, and it was just done as a matter of

14   procedure where, when the documents were disclosed, it

15   was done by Bates number and, you know, the following

16   documents were given to this agency, and it wasn't a

17   problem, and that would at least satisfy our concern

18   about control over the documents.

19     MR. THOMAS:  Your Honor, I thought I had heard you

20   rule on this matter.

file:///k|/My%20Documents/PO-FLHearingTr.txt

21          THE COURT:  Well, we can rehash it all day long, I

22     guess.

23          MR. THOMAS:  Not on our behalf, sir.

24          MS. MILLER:  You've heard our position.

25          Judge, would you like for us to submit a proposed

1    order to you?

2        THE COURT:  I think, if you'll do it along the

3    lines of what I have articulated there --

4        MS. MILLER:  Yes, I'd be delighted to do that.

5        THE COURT:  -- I think that's the proper way to do

6    it.

7        MR. THOMAS:  Very good, sir.

8        MS. JOHNSON:  Judge, if I can just clarify, I

9    didn't hear you rule on whether or not they had to give

10    us notice.

11        THE COURT:  I don't think that they should be when

12    they're giving it to another state agency that would be

13    entitled to get that same information in their own

14    lawsuit and if they agree to the restriction that they

15    won't disclose it to people who are otherwise like

16    competitors or something of that nature.  Any

17    governmental agency that's trying to get to the bottom

18    of all this claim that the drugs are being charged too

19    high to the government, if not honesty in disclosure of

20    information, I think the governmental agencies ought to

21      be able to get that information and they wouldn't have

22      to -- the State of Florida wouldn't have to tell you

23      that they've given this information to some other state

24      who hasn't yet gone through this process.

25          MS. JOHNSON:  And I guess our concern is that this

1      will be different from how it's been handled in all

2      these other states that have dealt with this issue, and

3      at a minimum we think it would be sort of the middle

4      ground to -- if they're going to give the documents, to

5      at least notify who they're giving them to and what

6      they're giving, and it's worked in Texas and it wasn't

7      a problem.

8            THE COURT:  I think that, if we can avoid a lot of

9      this unnecessary bureaucracy, the whole country would

10      not better off.  This is not just a small, isolated

11      local problem.  This is a national and I guess

12      potentially international concern.  I think that the

13      information ought to be available to the government to

14      share with other governmental agencies who have the

15      right two get that same type of information as long as

16      that attorney general or law enforcement agency will

17      agree to the restrictions that are -- that we've been

18      discussing here.

19            MR. BREEN:  Very well.

20            THE COURT:  All right.  If you would prepare an

21    order.

22          MS. MILLER:  Yes, sir.  We'll get it to you as

23    soon as possible.

24          MR. TOOLE:  Your Honor, would it be your

25    preference for your rulings on these two points to be

1    incorporated in the protective order that has already

2    been submitted to you as opposed to a separate order,

3    because certainly that would seem to make sense?

4        MR. AZORSKY:  Yeah.  We will amend the protective

5    order that was submitted to conform to your rulings

6    today.

7        MS. MILLER:  Yes, that was my plan.

8        MR. BREEN:  Thank you, Your Honor.

9        MR. THOMAS:  Thank you, Judge.

10        (Whereupon, the proceeding was concluded at 4:36

11  p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2    STATE OF FLORIDA    )

3    COUNTY OF LEON       )

4            I, RAY D. CONVERY, Court Reporter at Tallahassee,

5    Florida, do hereby certify as follows:

6            THAT I correctly reported in shorthand the

7    foregoing proceedings at the time and place stated in the

8    caption hereof;

9            THAT I later reduced the shorthand notes to

10   typewriting, or under my supervision, and that the foregoing

11   pages 4 through 43 represent a true, correct, and complete

12   transcript of said proceedings;

13            And I further certify that I am not of kin or

14   counsel to the parties in the case; am not in the regular

15   employ of counsel for any of said parties; nor am I in

16   anywise interested in the result of said case.

17            Dated this 3rd day of August, 2004.

18

19

20

21

22    _____

23            RAY D. CONVERY

24            Court Reporter and Notary Public

25            State of Florida at Large