UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America, ex rel. Ven-a-Care* | ) | |
| *of the Florida Keys, Inc., v. Abbott* | ) | |
| *Laboratories, Inc., and Hospira, Inc.* | ) | |
| CIVIL ACTION NO. 06-11337-PBS | ) | |

**UNITED STATES' AND RELATOR'S MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR A COMPREHENSIVE CASE MANAGEMENT ORDER**

**INTRODUCTION**

This case concerns Abbott Laboratories, Inc.'s ("Abbott's") liability under the False

Claims Act ("FCA") and the common law for reporting inflated and false prices for certain of its

drugs to price reporting reference compendia, which Abbott knew led to inflated government

reimbursement for those drugs.  It is not about government drug reimbursement generally.  The

United States and Relator ("Plaintiffs") file this Motion, and Memorandum in support, pursuant

to the Court's Order dated August 25, 2006 (Dkt. No. 3031), requiring a brief setting forth their

proposed Case Management Order ("CMO") that addresses: (1) the allowable scope of Abbott's

discovery; (2) the length of time for discovery; (3) scheduling of discovery; and (4) numerical

limitations on interrogatories, requests for admission, document requests and deposition hours.

The proposed attached comprehensive CMO (Ex. 1), will allow the parties to fully develop their

claims and defenses, streamline and coordinate discovery with other defendants who may

become parties to future actions by the United States, and take discovery that is directly related to

the allegations in the Complaint and any specific defenses thereto.  As to any discovery into

Abbott's general "government knowledge" defense, that should be deferred until the Court's

ruling on Abbott's motion to dismiss.  As counsel for the United States informed the Court at the

last status conference, the United States anticipated filing claims against other defendants in this

Multidistrict Litigation ("MDL") proceeding.[1]  Status Conf. Tr. 7:8-16, Aug. 3, 2006.  Therefore,

the Plaintiffs respectfully request that the Court enter the proposed CMO, which, by its terms, is

made applicable (unless modified) to future actions brought by the United States and transferred

to this MDL proceeding.

I.     **LEGAL STANDARDS**

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure ("Federal Rules"), a

party may obtain discovery regarding any matter not privileged that is relevant to the claim or

defense of any party.  All discovery is subject to limitations that a Court may properly impose

under 26(b)(2) of the Federal Rules.  The court has broad power to control discovery. *U.S. Steel

v. M. DeMatteo Constr. Co.*, 315 F.3d 43, 53 (1st Cir. 2002) (management of pretrial discovery

lies within the sound discretion of the trial court); *Santiago v. Fenton*, 891 F.2d 373, 379 (1st Cir.

1989).  In doing so, it can weigh discovery burdens against the likelihood of finding relevant

material.  *Mack v. Great Atlantic & Pacific Tea Co. Inc.*, 871 F.2d 179, 186-87 (1st Cir.1989);

*Santiago*, 891 F.2d at 379-80 (upholding district court decision to disallow discovery where

discovery burdens on defendants found to outweigh plaintiff's need for the discovery).  As this

Circuit has said:

---

[1]Since the status conference the United States has filed a Complaint against Dey
Laboratories on August 22, 2006.  *U.S. ex rel. Ven-A-Care v. Dey Inc., Dey L.P., Inc., and Dey
L.P.*, (D. Mass.), Civ. No. 05-11084-MEL.

> Specifically, Rule 26(b)(1) was added to deal with the problem of over-discovery. *See* Fed.R.Civ.P. 26 advisory committee's note (1983 amendments). The rule, applicable in this instance, provides in part that the court shall restrict discovery which 'is unduly burdensome or expensive, taking into account the needs of the case.' Fed.R.Civ.P. 26(b)(1).

*Mack*, 871 F.2d at 187. Adoption of the Plaintiffs' proposed CMO is within the broad discretion of this Court to manage pretrial discovery.

## II.     ALLOWABLE SCOPE OF ABBOTT'S DISCOVERY

### A.     The Discovery Abbott Seeks is Not Directly Related to the Conduct Alleged in the Complaint.

This case concerns allegations that Abbott falsely reported drug prices to national compendia which it knew Medicare and Medicaid relied on to set reimbursement rates for those drugs. Abbott sold its products to its customers at far lower prices, thereby creating a "spread" between the reimbursement and purchase price. Abbott's spreads were typically 800 to over 1000 percent, which Abbott then used to market certain of its drugs, promoting this spread or profit margin that its customers would realize. The scheme resulted in losses to the Medicaid and Medicare programs, in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*.

Abbott has served upon the United States and Relator five hundred and one (501) initial discovery requests.[2] The majority of these 501 discovery requests are not related to this alleged conduct. Abbott's proposed categories of document requests (Ex. 2) pertain broadly to the government's awareness of the pharmaceutical industry's pricing practices, and not Abbott's

---

[2]Abbott has served four sets of discovery on Plaintiffs: (1) Abbott's First Set of Requests for Production of Documents and Tangible Things to the United States, (2) Abbott's First Set of Requests for Admission to Plaintiffs; (3) Abbott's First Set of Requests for Production of Documents to Relator; and (4) Abbott's First Set of Interrogatories to Plaintiffs. Exs. 2-5, respectively. The United States has served a First Set of Requests for Production of Documents to Abbott. Ex. 6.

specific conduct.  Abbott's Requests for Production ("RFPs") call for information all agencies of the government have received from all pharmaceutical companies relating to actual drug prices (Category 3, RFPs 19-36); HHS rulemaking and Medicaid determinations (Category 4, RFPs 37-50); information relating to the Medicaid Rebate program, 42 U.S.C. § 1396r-8, including the information pertaining to the calculations based on the Medicaid utilization for a company's drugs and the sales prices reported by the company for its drugs (Category 5, RFPs 51-55); communications between Relator and the government concerning prices paid by providers for drugs (Category 6, RFPs 56-64); communications between the carriers and intermediaries and the government concerning whether reported average wholesale prices exceeded actual or average prices, or materials received from third parties concerning the prices or costs of drugs (Category 7, RFPs 72-76, 79-81); communications from anyone outside of the government to anyone inside the government regarding drug pricing and the actual cost of drugs; settlements, investigations, lawsuits and overpayment actions relating to drug pricing; documents relating to efforts to change drug payment methodologies; the government's consideration of methodologies that do not use average wholesale prices; the government's requests to manufacturers and distributors for pricing information; and the government's knowledge of inaccurate prices and the price spreads created by all manufacturers.[3]  Ex. 4.

Abbott also propounded discovery related to 75 reports (and one report by a consulting firm) of the federal government's analyses of its spending on drugs purchased from

---

[3]Abbott's Interrogatories 2, 3, 11, 14, 15 similarly call for broad information not limited to Abbott's drugs or Abbott's conduct alleged in the Complaint.  Ex. 5.

pharmaceutical manufacturers.[4]  These 75 reports are extraordinarily broad in scope and do not

specifically address Abbott's conduct as set forth in the Complaint.  Abbott intends to take

discovery not just against CMS, the agency responsible for the overall management of the

Medicare and Medicaid programs, but also against multiple agencies of the federal government,

and Congress.[5]  These agencies have no information pertaining to the allegations in the

Complaint.

     **B.**     **The Burden of Abbott's Proposed Discovery Outweighs Its Likely Benefit.**

Abbott is not entitled to much of the discovery it seeks for at least two reasons.  First,

Abbott's discovery directed at the United States is unduly burdensome.  Second, the discovery

Abbott seeks calls for information that is far broader than the specific conduct alleged in the

Complaint, and will not support any specific defense it may have, and thus, the burden imposed

---

[4]Abbott's Requests for Production of Documents to U.S. (Schedule A), Ex. 2.

[5]Abbott directs its discovery at Congress and any congressional committees or subcommittees, including but not limited to the Congressional Budget Office; Senate Finance Committee; the House Committee on Ways and Means; the House Committee on Energy and Commerce; the Subcommittee on Oversight and Investigations of the House Committee on Energy and Commerce; General Accounting Office; and the Medicare Payment Advisory Commission ("MedPAC"), which is an independent federal body established by the Balanced Budget Act of 1997 § 4022, 42 U.S.C. § 1395b-6, to advise the U.S. Congress on issues affecting the Medicare program; and federal agencies that include, the Office of Management and Budget; U.S. Department of Commerce; U.S. Department of Defense; U.S. Department of Justice; U.S. Department of Veterans Affairs; and, U.S. Department of Health and Human Services ("HHS"), including but not limited to the Office of Inspector General and the Pharmacy Affairs Branch. Abbott also directs its discovery to approximately 18 carriers who contract with CMS to process claims under Medicare Part B (Medical Insurance), and the Pharmacy Services Support Center ("PSSC"), which operates under a contract between the American Pharmacists Association and the Office of Pharmacy Affairs in the Health Resources and Services Administration, Healthcare Systems Bureau of HHS.  Ex. 4, ¶¶ 10 and 50.

on the United States by Abbott's proposed discovery outweighs any likely benefit.  Fed. R. Civ.

P. 26(b)(2); *Mack*, 871 F.2d at 186-87.

There will be an unnecessary burden to the United States' agencies even to produce the

first set of documents sought by Abbott.  Just a few examples will demonstrate this point.

Abbott's Request for Production no. 113 directed at the United States asks for all

communications between all agencies of the federal government and the entire pharmaceutical

industry over a 35 year period.  Ex. 2.  Its Request for Production no. 19 is similarly expansive in

its scope.  It asks for all communications involving anybody working for or on behalf of the

government relating to, among other things, drug pricing, or the acquisition cost of drugs.  *Id.*

Request for Production no. 32 asks for "all pricing data received or calculated by the U.S.

Government or its agents" with no limitation as to any category of drugs or specific

manufacturer.  *Id.*

In addition, declarations from just two government agencies further demonstrate the

burdensomeness of Abbott's requests.  As detailed in the declaration, it would be an enormous

task, entailing thousands of hours, for the Department of Veterans Affairs ("VA") to search for,

retrieve, and produce all VA documents that may be responsive to Abbott's document requests,

and would disrupt the agency's primary mission.  *See* Decl. of Melbourne A. Noel (Ex. 7).

Additionally, the scope of Abbott's discovery directed at CMS is burdensome because it seeks

information far broader than Abbott's drugs and the conduct alleged in the Complaint.  *See* Decl.

of Karen Jackson (Ex. 10).  Discovery of such scope and magnitude as that contemplated by

Abbott would have a significant impact on the Medicare program, including Medicare

beneficiaries and providers who rely on this vital health care program.

C.     **Abbott's Proposed Discovery Will Not Support a "Government Knowledge" Argument.**

Abbott contends that the government knew generally that average wholesale prices reported by pharmaceutical companies to price reporting reference compendia were higher than actual acquisition costs, and that somehow this generalized knowledge insulates Abbott from liability for its specific conduct.[6]  As shown in the United States' Opposition to Abbott's Motion to Dismiss, filed contemporaneously, government knowledge of the falsity of a claim or statement, standing alone, does not defeat an action brought under the False Claims Act.  *See* U.S. Opp. Mot. Dismiss, filed Sept. 15, 2006, at 23 (citations omitted).  At most, False Claims Act cases have recognized that where a defendant has made a full disclosure to appropriate government officials about specific issues or problems, and where defendants have fully cooperated in resolving any issues surrounding the issues or problems, that evidence may be relevant to the defendant's scienter.  *See* U.S. Opp. Mot. Dismiss, filed Sept. 15, 2006, at 24-25 (citations omitted).  To prove that a defendant's scienter was negated, the defendant must offer credible evidence of a meeting of the minds between a defendant and the government such that the defendant reasonably believed that its representations were accurate and its conduct was permissible.  Abbott's proposed discovery, however, does not go to this issue.

Abbott has never produced a shred of evidence that it either disclosed its inflated prices or its marketing practices, or that regulators blessed the conduct alleged in the Complaint.  As

---

[6]While Abbott has yet to file an answer, its argument can be found in its motion to dismiss filed in the District Court for the Southern District of Florida.  *See* Abbott's July 7, 2006 Mem. of Law in Supp. of its Mot. to Dismiss at 17.  Abbott's Appendix A to the motion to dismiss purports to "provide[] and summarize[] four decades worth of public documents showing that government knew compendia prices were not acquisition costs."  Mem. Law at 5.

Abbott itself recently noted, from 1996 to 2005, the United States through the Department of Justice and the Department of Health and Human Services issued six separate document requests to Abbott.  *See* Abbott's Aug. 18, 2006, Mot. for Entry of CMO and To Order Commencement of Discovery, 1, fn. 1 (Dkt. No. 2992).  Not a single document produced by Abbott shows that it made any disclosure or that it cooperated with the government in any way with regard to that conduct.  In addition, as recently as August 8, 2006, Abbott made its initial disclosures in this case, pursuant to Rule 26(a)(1) of the Federal Rules.  Ex. 8.  Again, notwithstanding its Rule 26(a)(1) obligations, no such evidence was provided.

In fact, Abbott's Rule 26(a)(1) disclosure provided the names of approximately 300 individuals, only four (4) of whom are Abbott employees.[7]  None of the descriptions of the four Abbott employees indicate that they have information related to communications with regulators involved in the reimbursement process concerning the conduct alleged in the Complaint.  Nor do the materials contained in Abbott's Rule 26(a)(1) disclosures include any such evidence.  The approximately 296 other individuals included in the disclosure are: former President William Clinton; former Secretary of Health and Human Services, Tommy Thompson; Former Comptroller General of the United States, Milton J. Socolar; 18 former and current United States' Senators and Congresspersons; 86 general employees of HHS, the Government Accountability Office, the Office of Management and Budget, and the Veterans Administration;

---

[7]Other than specifically disclosing these four named individuals at Ex. B of its initial disclosures, Abbott discloses generally "individuals identified in documents made available to plaintiffs," and stipulates that "in addition to [these approximately 300 named individuals], many individuals have provided testimony in connection with proceedings in [Multidistrict Litigation] 1456.  Such individuals are incorporated herein by reference."  *See* Abbott's Aug. 9, 2006 Rule 26(a)(1) Disclosure ¶¶6 and 7, at 3 (Ex. 8).

116 state employees; 22 employees of health insurance companies; 20 employees of fiscal intermediaries or carriers; and a handful of employees of professional associations, health care services networks, lobbying organizations, and health care associations.  Abbott does not suggest that it disclosed to any of these individuals information about its pricing and marketing of its drugs, nor that the company cooperated with the regulators to address the problems with Abbott's conduct alleged in the Complaint.

If Abbott possessed such evidence of disclosure to and cooperation with the government, it would have sufficient information to craft narrow discovery requests, and it would be unnecessary to search the government's files broadly for evidence that explained Abbott's scienter.  On the other hand, in the absence of actual disclosure to and cooperation with the government, Abbott is not entitled to broad discovery for information that it knows does not exist.  In short, broad discovery of "government knowledge" will not advance any legitimate defense.[8]

On balance, the burden to the United States, resulting from the first 501 discovery requests Abbott served, outweighs Abbott's need for the discovery, or the likelihood of finding relevant material.  Fed. R. Civ. P. 26(b)(2)(iii); *Mack*, 871 F.2d at 186-87; *Santiago*, 891 F.2d at 379.  Thus, the United States and Relator ask this Court to set discovery parameters that focus on the conduct alleged in the Complaint and any specific defenses thereto.  Specifically, Plaintiffs request that all discovery served prior to the effective date of a CMO be deemed withdrawn, and that all future discovery directed at the "United States" pertain specifically to the United States

---

[8]Abbott should be required to make at least this threshold showing of disclosure and cooperation before it would be entitled to future discovery on the issue.

9

Department of Health and Human Services ("HHS"), including the Centers for Medicare and

Medicaid Services ("CMS"), the victim agency, and its agents, concerning Defendants' drugs and

the conduct set forth in the Complaint.  We further ask that the Court defer other discovery until

such time as the Court considers and squarely addresses Abbott's "government knowledge"

argument in its Motion to Dismiss.

## III.    DISCOVERY LENGTH AND SCHEDULING

As described more fully below, the United States and Relator propose an eighteen (18)

month discovery period to complete all fact discovery, in accordance with the schedule set forth

in the proposed CMO (Ex. 1).  Plaintiffs further contemplate additional expert discovery after the

completion of each side's fact discovery and exchange of expert reports.  Plaintiffs believe this is

both an adequate and realistic schedule.

The Plaintiffs bear the burden of proof in this case in which the United States and Relator

seek to recover hundreds of millions of Medicaid and Medicare dollars intended to benefit the

poor and elderly, and appropriate penalties.  To prove their case, the United States and Relator

will be required to depose current and former Abbott employees in its national marketing

department, among other departments, as well as third parties such as Abbott's customers,

wholesalers, and drug pricing publishers.  It is likely that the United States and Relator will call

numerous expert witnesses to address both liability and damages issues; we expect the same from

Abbott.  Document production is anticipated to be in the millions of pages.  Processing of these

documents in a manner that allows efficient review is time-consuming.  In addition, the United

States has not had access previously to the document or deposition discovery related to Abbott in

the MDL proceeding, or in other state cases as a result of restrictive protective orders.  Effective

10

deposition discovery will require that the United States and Relator have sufficient time to receive, process, search, and review millions of pages of relevant materials prior to depositions. A shorter period of one year, as proposed by Defendant in its proposed CMO, is inadequate. *See* Abbott's Proposed CMO attached to its Aug. 18, 2006, Mot. for Entry of CMO and To Order Commencement of Discovery (Dkt. No. 2992).

## IV.    NUMERICAL PARAMETERS

The United States and Relator ask the Court to permit each side to propound no more than seventy-five (75) interrogatories, a reasonable amount of requests for the production of documents not to exceed seven (7) sets, and 50 requests for admission, and to notice no more than 250 hours of fact depositions.  Plaintiffs believe this proposal is fair and reasonable to the parties as set forth below.

### A.    Interrogatories

Abbott proposes that each side be permitted to propound and serve seventy-five (75) interrogatories. *See* Abbott's Aug. 18, 2006, Mot. for Entry of CMO and To Order Commencement of Discovery, 6 (Dkt. No. 2992).  We agree. *See* proposed CMO, Ex. 1, ¶ 10A.

### B.    Requests for Production of Documents

Abbott proposes that the parties be permitted to serve a reasonable amount of discovery requests not to exceed seven (7) sets of such requests. *See* Abbott's Proposed CMO attached to its Aug. 18, 2006, Mot. for Entry of CMO and To Order Commencement of Discovery, 2, ¶7 (Dkt. No. 2992).  We agree. *See* proposed CMO, Ex. 1, ¶ 10B.  However, the United States has two concerns with respect to Abbott's 126 Requests for the Production of Documents served to date. *See* Ex. 2.  First, Abbott's requests do not account for the enormous volume of materials the

United States has already produced to Abbott in prior MDL proceedings in the District of

Massachusetts.  In 2003, Abbott and other defendants served HHS and the carriers who contract

with CMS to process claims under Medicare Part B (Medical Insurance) with numerous

subpoenas in *In re Lupron Marketing & Sales Practice Litig*. ("*Lupron MDL*") (D. Mass), MDL.

No. 1430, 01-CV-10861-RGS, and earlier in this very MDL proceeding.  Abbott and other

defendants obtained thousands of documents from the United States, which it has not expressly

acknowledged in this case.  The subpoenas directed to the carriers resulted in production by CMS

of approximately 92,000 pages.  HHS produced an additional 22,000 pages and 3,808 electronic

files.  Abbott has re-served many of the same or substantially same document requests upon the

United States in this case.[9]

The United States completed its production in those proceedings without objection by any

party, and should not be placed with the burden of determining which of the tens of thousands of

documents it previously produced to Abbott and other defendants in this and the *Lupron MDL*

proceedings match Abbott's current document requests in this case.  Moreover, Abbott's counsel

in this case was lead counsel for defendants in the handling of the subpoenas and receipt of the

government's production.  Abbott is therefore in the best position to refocus its discovery

requests to avoid burdening the government to reproduce the same materials.  For these reasons,

the United States requests that the Court require that Abbott not re-serve upon the United States

---

[9]By way of example, compare Abbott's Requests 1-5 in this case ("Ven-A-Care Request") (Ex. 2) with Abbott's Requests 78-80 per the Lupron subpoena ("Lupron Request") (Ex. 9); Ven-A-Care Request 12 (Ex. 2) with Lupron Requests 21-23, 27-30 (Ex. 9); Ven-A-Care Request 19 (Ex. 2) with Lupron Requests 13, 29-45 (Ex. 9); Ven-A-Care Request 20 (Ex. 2) with Lupron Requests 8, 11, 12, 20 (Ex. 9); Ven-A-Care Request 22 (Ex. 2) with Lupron Requests 18, 20-21 (Ex. 9); Ven-A-Care Request 37 (Ex. 2) with Lupron Requests 1-6, 19, 24 (Ex. 9); Ven-A-Care Request 43 (Ex. 2) with Lupron Requests 10, 62-64 (Ex. 9).

any document requests to which the United States previously produced responsive materials. This request comports with the general intent of this Court's CMO No. 9 (Dkt. No. 612), which is to avoid duplication of discovery, and which directs all parties to "attempt to coordinate with the parties in all other cases in MDL 1456 before pursuing discovery." CMO No. 9, at 1 (Dkt. No. 612).

Second, Abbott represented to Plaintiffs during the Rule 26(f) discussions in this case that it would produce as initial disclosures all materials Abbott previously produced in any related litigation. This is also a requirement imposed by this Court's CMO No. 9 (Dkt. No. 612). Therefore, the United States requests that Abbott, within ten (10) days from the date of entry of the proposed CMO, be required to produce, or represent to the United States that it has produced, all materials and depositions it has provided thus far to parties in this MDL proceeding, or in any other private or state court action related to pricing litigation.

### C.      Requests for Admission

The United States and Relator request that the parties be permitted to propound and serve up to 50 requests for admission. *See* proposed CMO, Ex. 1, ¶ 10C. Properly framed and appropriately narrow requests for admission can serve to promote efficiency and economy.

Abbott seeks no limitations on requests for admission. *See* Abbott's Aug. 18, 2006 Mot. for Entry of CMO and To Order Commencement of Discovery, 2 (Dkt. No. 2992). Before the discovery stay in place, Abbott served 298 Requests for Admission, which were not focused on Abbott's drugs or the conduct alleged in the Complaint. The Local Rule in this district provides for a limitation of 25. D. Mass R. 26.1(c). The number and nature of Abbott's requests do not serve the purpose of Rule 36 of the Federal Rules:

> Rule 36 serves two vital purposes, both of which are designated to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.

Fed. R. Civ. P. 36, advisory committee's notes, 1970 Amendment.  Rule 36 does not contemplate requests for admission directed at disputed facts or controverted legal issues in the case.  *See Chicago Dist. Council of Carpenters Pension Fund v P. M. Q. T., Inc.,* 169 F.R.D. 336, 341 (N.D. Ill. 1996); *Burns v. Phillips,* 50 F. R. D. 187, 188-189 (N.D.  Ga. 1970); *California v. The Jules Fribourg,* 19 F.R.D. 432, 435-4366 (N.D. Cal.1955).

The majority of Abbott's Requests for Admission are improper, and demonstrate why an excessive number of requests for admission in this case will not serve the purposes for which the rule was intended.  It appears that Abbott may have been attempting to circumvent the numerical limitations on interrogatories by serving a larger number of requests for admission, for which there was no limitation under the Rules then applicable.  Under both the Federal Rules and the Local Rules in Florida where Abbott served the Requests for Admission, the number of interrogatories shall not exceed 25.[10]  Fed. R. Civ. P. 33(a), S.D. Fla. L.R. 26.1.G.  Utilizing interrogatories disguised as requests for admission in an attempt to circumvent a local rule limiting the number of interrogatories is an abuse of the discovery process.  *Misco, Inc v. United States Steel Corp.*, 784 F.2d 198, 206 (6th Cir.1986);  *In re Olympia Holding Corp. v. Belt Concepts of America, Inc.,* 189 B.R. 846, 853 (Bankr. M.D. Fla. 1995); *see also Moss v. Enlarged City School Dist. of City of Amsterdam,* 166 F. Supp. 2d 668, 670 (N.D.N.Y. 2001).

---

[10]There is no Local Rule of the Southern District of Florida that expressly limits the number of requests for admission.

14

Many of Abbott's Requests for Admission improperly request Plaintiffs to state the truth of a legal conclusion.[11]  *See Welcher v. Idaho Dep't. of Corr.,* No. CV05-184, 2006 WL 1663567, at *2-3 (D. Idaho 2006); *Reliance Ins. Co. v. Marathon LeTourneau Co.*, 152 F.R.D. 524, 525 n. 2 (S.D.W.Va. 1994).  Some are improper contention interrogatories.[12]  *In re Olympia Holding Corp.*, 189 B.R. at 853*; California v. The Jules Fribourg*, 19 F.R.D. at 435;  *In re Bell Atlantic Corp. Sec. Litig.*, 1996 U.S. Dist. LEXIS 1182 (E.D. Pa. Feb. 2, 1996)*; SEC v. Micro-Moisture Controls, Inc.*, 21 F.R.D. 164, 166  (S.D.N.Y. 1957).  Others are improper requests directed at quoted text within documents.[13]  *See Van Wagenen v. Consolidated Rail Corp.,* 170 F.R.D. 86 (N.D.N.Y. 1997) (finding requests for admission seeking admission of the truth of quotes from a document unreasonably duplicative and cumulative).  The improper and excessive nature of Abbott's Requests for Admissions demonstrates that some limitations should be imposed.  For these reasons, Plaintiffs request that the Court adopt their proposed comprehensive CMO, which allows each side to propound no more than 50 Requests for Admission.

### D.     Depositions

The parties agree that each side should be permitted an *hour* limitation for fact depositions to be allotted at each side's discretion without limitation on the *number* of

---

[11]Requests for Admission 1-21, 29-35, 37-41, 148, 212-216, 257-258, and 292.  Ex. 3.

[12]Requests for Admission 22-28, 68-76, 95-98, and 145 improperly request Plaintiffs to state the truth of contention interrogatories.  Ex. 3.  *Compare, e.g.,* Request for Admission 22 and 23.

[13]Requests for Admission 146, 153, 184, 186, 190-194, 200, 205 208, 212-216, 230, 248, 250-251, 254-255, 260, 261, 268, 269, 271, 274, 280, 296- 298.  Ex. 3.

depositions a party may take.[14]  The United States and Relator propose that both sides each be allotted 250 hours for 30(b)(1) and (6) fact depositions under the Federal Rules, including depositions of party and non-party deponents, and that certain additional parameters be set to accommodate witnesses and the parties, such as those forth in the proposed CMO.[15]  Ex. 1, ¶ 11. Plaintiffs further request that Abbott share and coordinate those hours with other defendants including any defendants to future lawsuits filed by the United States that join this MDL proceeding.  Ex. 1, ¶¶ 3, 11A.  With respect to depositions of expert witnesses, the United States and Relator ask that the parties be permitted to exceed the "one day of seven hours" limitation under Rule 30(d)(2) of the Federal Rules, and be required to provide proper notice to all parties of the expected length of time of a deposition.  Ex. 1, ¶¶ 11G.  Abbott's proposed CMO is silent on the issue of the number of hours for expert depositions.

Abbott however proposes that each side be permitted to take 500 hours of fact depositions.  *See* Abbott's Aug. 18, 2006, Mot. for Entry of CMO and To Order Commencement of Discovery, 6 (Dkt. No. 2992).  Plaintiffs do not believe this number of hours is reasonable or necessary, as it based in part upon Abbott's plan to engage in overly broad discovery that is not focused on the conduct alleged in the Complaint and any specific defenses thereto, as discussed above.  In addition, Abbott has had the opportunity to take or have access to numerous

---

[14] This does not affect any appropriate motion for protective order that a party may legitimately file under Federal Rule 26(c).

[15]The United States and Relator further request that the Case Management Order include the following requirements: Unless otherwise authorized by the Court or stipulated by the parties (1) a Rule 30(b)(1) deposition is limited to one day of seven hours; and (2) a Rule 30(b)(6) deposition is limited to two days of fourteen hours.  Also, the Plaintiffs request that videotaped depositions be permitted pursuant to 30(b)(2) and (3) of the Federal Rules with certain requirements.

depositions in the MDL proceedings already.  There is simply no reason to take an additional 500 hours of deposition.

## CONCLUSION

For the reasons set forth above, the United States and Relator request that the Court enter their attached comprehensive Case Management Order set forth at Exhibit 1.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN                    PETER D. KEISLER
UNITED STATES ATTORNEY                 ASSISTANT ATTORNEY GENERAL

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse     /s/ Renée Brooker
Suite 9200, 1 Courthouse Way            Michael F. Hertz
Boston, MA 02210                        Joyce R. Branda
Phone: (617) 748-3272                   Renée Brooker
Fax: (617) 748-3971                     Justin Draycott
                                        Gejaa T. Gobena
R. ALEXANDER ACOSTA                     Civil Division
UNITED STATES ATTORNEY                  Commercial Litigation Branch
SOUTHERN DISTRICT OF FLORIDA            P. O. Box 261
                                        Ben Franklin Station
/s/ Mark A. Lavine                      Washington, D.C.  20044
Mark A. Lavine                          Phone:  (202) 307-1088
Ana Maria Martinez                      Fax: (202) 307-3852
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101

For the relator, Ven-A-Care of the Florida
Keys, Inc.,

/s/ James J. Breen
James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel:  (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com

Dated: September 15, 2006

18

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' AND RELATOR'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A COMPREHENSIVE CASE MANAGEMENT ORDER** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Renée Brooker

Renée Brooker

Dated: September 15, 2006

19