**EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-21303-CIV-GOLD

| | |
|---|---|
| UNITED STATES OF AMERICA <br> <u>ex rel.</u> <br><br>     VEN-A-CARE OF THE <br>     FLORIDA KEYS, INC. <br>     a Florida Corporation, <br>     by and through its principal <br>     officers and directors, <br>     ZACHARY T. BENTLEY and <br>     T. MARK JONES, <br>                       Plaintiff, <br> vs. <br><br>     ABBOTT LABORATORIES; <br>     <u>et al.</u>, <br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## UNITED STATES' FIRST REQUEST FOR PRODUCTION TO DEFENDANTS ABBOTT AND HOSPIRA

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff, the United States of America, requests that the Defendants (hereafter collectively "Abbott" or "Defendants") produce for inspection and copying each document listed below that is within any Defendants' possession, custody or control. The United States requests that Defendants serve any objections to these requests and make the documents specified below available for inspection and copying at the Department of Justice within 30 days.

## I. INSTRUCTIONS

A.    Information and Documents sought by these requests shall include information and Documents within any Defendants' possession, custody or control, or within the possession, custody or control of any Defendants' agents, officers, employees, attorneys or investigators, or

1

any person acting as one or more Defendants' representative or on one or more Defendants'

behalf, including, but not limited to, any otherwise independent attorneys, accountants, or

consultants.  Information and Documents sought by these requests includes information and

Documents maintained at any local, regional, group, divisional or corporate office.

B.      Whenever appropriate, the singular form of a word shall be interpreted as plural,

and the masculine gender shall be deemed to include the feminine.

C.      The fact that some portion of the documents responsive to these requests may

already be in the custody of the United States does not excuse current physical production

pursuant to these requests of any and all other documents not previously produced.  To the extent

responsive documents have already been produced to the United States, prior to producing

additional copies of those documents, please identify the previous production(s) which contained

such documents and, to the extent possible, where such documents were located within those

productions, by document control number.  The United States will accept specific designation of

responsive documents, by document control number, in lieu of actual production.

D.      If the contention is made that any requested document is not subject to discovery

in whole or part by reason of privilege or otherwise, identify each such document by date,

author(s), addressee(s), recipient(s), title, subject matter, purpose, and present custody, and set

forth the nature of the claimed privilege or other grounds for refusal to produce in a log

consistent with the requirements of Fed. R. Civ. P. 26(b)(5).

E.      If it is known that any requested document or any set of documents that may have

contained documents was, but is no longer, in Abbott's possession, custody or control, state what

disposition was made of the document and when, and state the date the documents were lost or

destroyed.

2

F.     All materials identified pursuant to these requests shall be segregated and labeled so as to identify to which requests such material responds.

G.     Selection of documents from files and other sources shall be performed in such a manner as to insure that the source and location of each document may be readily determined.

H.     File folders and other containers in which YOU find documents responsive to these requests, and labels identifying those folders and other containers, shall be produced intact with such documents.

I.     Documents attached to each other shall not be separated unless sufficient records are kept to permit reconstruction of such grouping and the separation is identified.

J.     Consistent with Rule 26(e) of the Federal Rules of Civil Procedure, these requests are continuing in character.  Defendants are thus required to amend their responses to these requests and to supplement their production if, at any time before trial, they learn that their prior responses and production are in some material respect incomplete or incorrect.

K.     All document requests should be responded to in accordance with the Instructions and Definitions provided herein.

L.     These requests are not intended to and should not be construed to limit or otherwise modify any other discovery request issued in this case.

## II. DEFINITIONS

A.     As used herein, the term "Documents" is used in its broadest sense, as defined in the Federal Rules of Civil Procedure, and includes the original of each existing identical or non-identical copy or draft thereof, by whatever means made, of any writing of any kind.  The term "Documents" includes writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs;

3

computer and network activity logs; hard drives; backup data; removable computer storage

media such as tapes, disks, and cards; printouts; document image files; Web pages; databases;

spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks;

statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic

presentations; drawings; films; charts; digital or chemical process photographs; video,

phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes.

Information that serves to identify, locate, or link such material, such as file inventories, file

folders, indices, and metadata, is also included in this definition.  (Where Documents are stored

on computer programs, discs or tapes, the records to be produced shall be accompanied by all

programming and other instructions necessary to their use or retrieval.)

      With respect to those requests below seeking Documents that refer, relate or pertain to

disclosures made by You, the documents sought shall include all documents created by YOU

and/or used by YOU to disclose to any Medicare, Medicaid or insurance company employee or

representative that You raised, increased, changed or decreased, or caused the raising, increase,

change or decrease of reported prices (including but not limited to AWP, WAC or DP) on Your

products.

      B.     As used herein, the terms "YOU," "YOUR," "Abbott," "Hospira" and

"Defendants" refer to all the Defendants named in this lawsuit; to their corporate predecessors,

including all merged predecessor corporations; to any other past or present subsidiary, affiliate

or d/b/a of any Defendant named in this lawsuit; and to all entities currently or formerly owned,

operated, or managed by any Defendant, and all current and former directors, officers,

principals, partners, employees, agents, representatives, or other persons acting for or on behalf

thereof, including, but not limited to, any otherwise independent attorney, accountant, investigator or consultant.

C.    The term "affiliated" shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

D.    Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

E.    The terms "accuracy," "accurate" or "accurately," when used in reference to Price Representations or sales transactions, are used with reference to whether the information is reflective of the prices generally and currently available in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

F.    The term "Price Representations" means any statement, assertion, representation or declaration of the price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

G.    The term "Pharmaceutical" means any drug or other product sold by You which requires a physician's prescription, and includes but is not limited to "biological" products such as hemophilia factors and intravenous solutions such as sodium chloride solution.

H.    The term "Identified Pharmaceuticals" means the brand name, trade name or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

5

I.      The term "Spread" is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid by purchasers of the Pharmaceuticals) and the price or cost set, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (to purchasers of the Pharmaceuticals).  Third party payors include Medicare, Medicaid and private insurance.  Thus, the Spread is the profit or potential profit to a purchaser of the drug who will seek reimbursement from the Medicare or Medicaid Programs, or other third party payors.

J.      The term "AWP" means the price that You report, advertise, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

K.      The term "WAC" means the price that You report, advertise, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

L.      The term "Direct Price" means the price You report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

M.      The term "Best Price" means the price You report or otherwise disseminate as the best price for any Pharmaceutical, including the price You report for purposes of the Medicaid rebate program.

N.      The term "AMP"  means the price You report or otherwise disseminate as the average manufacturers price for any Pharmaceutical, including the price You report for purposes of the Medicaid rebate program.

Relevant Time Period: Unless otherwise indicated in a specific request, the requests herein refer to documents created from January 1, 1990 to the present and documents relating to such period even though created before that period.

### III.  DOCUMENT REQUESTS

1.     All Documents responsive to the subpoenas served by the Department of Health and
Human Services attached hereto as Exhibits B & C, had such subpoenas been served today,
including, but not limited to (a) all Documents that were previously set aside or identified as
being responsive to the subpoenas and (b) all Documents that were created or received by YOU
after YOU were served with or responded to the subpoenas.

2.     All Documents produced by You in response to a subpoena or other document request of
any State, or in any litigation commenced against You, in which Your creation or dissemination
of any prices of your products in order to influence the reimbursement amounts paid by third
party payors (such as Medicare, Medicaid or any insurance company) is at issue, including but
not limited to:

      a.    Robert J. Swanston v. TAP Pharmaceutical Products Inc., et al., Case No.
CV-2002-004988, Superior Court of the State of Arizona, Maricopa
County;

      b.    State of West Virginia v. Warrick Pharmaceuticals Corp., et al., Case No.
01 -C-3011, Circuit Court of Kanawha County, WV;

      c.    Peralta v. Abbott Laboratories Inc., Case No. BC 259587, Superior Court
for the State of California, Los Angeles County;

      d.    State of Nevada v. Abbott Laboratories Inc., et al., Case No. CV-N-02-
0080-ECR-RAM, Second Judicial District Court, Washoe County, NV;

      e.    Commonwealth of Kentucky v. Abbott Laboratories Inc., Civil Action No.
03-CI-1134, Franklin Circuit Court, KY;

      f.    Commonwealth of Pennsylvania, filed in March 2004 in the
Commonwealth Court of Pennsylvania;

      g.    State of Ohio v. Dey, Inc., et al., Case No. A0402047, Court of Common
Pleas, Hamilton County, OH;

      h.    State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott

Laboratories Inc., et al., Cause No. GV401286, District Court, Travis County, TX ;

i.    State of Wisconsin v. Abbott Laboratories Inc., et al., Case No. 04 CV 1709 Unclassified- Civil: 30703, Circuit Court of Dane County, WI

j.    City of New York v. Abbott Laboratories Inc., et al.. Case No. 04-CV-06504, S.D.N.Y.;

k.    Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc., et al., No. 21 2 MD 2004, Commonwealth Court of Pennsylvania; and,

l.    In re Pharmaceutical Industry Average Wholesale Price Litigation (MDL 1456) Civil Action No. 01-CV-12257 PBS, D. Mass, including actions transferred to MDL 1456.

3.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative of the existence of a Spread on any of Your pharmaceutical products.

4.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative about the nature of Your role in the creation or existence of the Spread.

5.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative that You raised or increased, or caused the raising or increase, of reported prices (including but not limited to AWP, WAC or DP) on Your products in order to cause an increase in the reimbursement for those products by third party payors (including but not limited to Medicare, Medicaid or any insurance company).

6.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative that You raised or

8

increased prices on Your products in order to help You sell more of those products by making those products more profitable to Your customers.

7.     All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative that You raised or increased prices on Your products in order to help You sell more of those products by making those products more profitable to Your customers and that Your market share increased as a result.

8.     All documents which mention, evidence or reflect any disclosure by You of Your accurate transaction prices or the scope and size of the spread on any of Your products to any Medicare, Medicaid or insurance company employee or representative.

9.     All documents which mention, evidence or reflect any request for clarification or guidance from You to any Medicare, Medicaid, insurance company employee or representative or Publisher regarding the meaning, intent or goal of any provision or term of any regulation, statute, or policy regarding the setting of reimbursement for pharmaceutical products.

10.     All documents which mention, evidence or reflect any request for clarification or guidance from You to any Medicare, Medicaid, insurance company employee or representative or Publisher regarding the meaning, intent or goal of any provision or term of any regulation, statute, or policy regarding the Medicaid pharmaceutical rebate program.

11.     All documents which mention, evidence or reflect any request for clarification or guidance from You to any Medicare, Medicaid, insurance company employee or representative or Publisher regarding the meaning of AWP, WAC, Direct Price, Best Price, Estimated Acquisition Cost, or any other term of any regulation, statute, or policy regarding the setting of reimbursement for pharmaceutical products.

9

12.    All documents which mention, evidence or reflect any confusion, understanding or interpretation by You regarding the meaning of AWP, WAC, Direct Price, Best Price, Estimated Acquisition Cost, or any other term of any regulation, statute, or policy regarding the setting of reimbursement for pharmaceutical products.

13.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative of all documents which mention, evidence or reflect the actual prices you charged to, and the actual prices paid by, your customers for the Identified Pharmaceuticals.  These documents should include all documents reflecting any and all inducements, discounts, rebates or other advantages enjoyed by your customers as a result of their use or purchase or any of the Identified Pharmaceuticals.

14.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative that the prices You reported for Medicaid and Medicare reimbursement were inflated in comparison with Your actual pricing practices.

15.    All documents which mention, evidence or reflect any disclosure by You to any Medicare, Medicaid or insurance company employee or representative that You were marketing the spread to customers.

16.    All documents which mention, evidence or reflect any response of any Medicare, Medicaid or insurance company employee or representative to any disclosure or request described in paragraphs 3 - 15 above.

17.    All documents which mention, evidence or reflect the purpose, goal or reason for the transmittal of the information described in paragraphs 3 - 15 above, including internal memoranda, cover letters, analysis or strategy discussions.

10

18.     All documents which mention, evidence or reflect the actual prices you charged to, and

the actual prices paid by, your customers for the Identified Pharmaceuticals.  These documents

should include all documents reflecting any and all inducements, discounts, rebates or other

advantages enjoyed by your customers as a result of their use or purchase or any of the Identified

Pharmaceuticals.


Respectfully submitted,

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____
MARK A. LAVINE
ANA MARIA MARTINEZ
ANN ST. PETER-GRIFFITH
Assistant U.S. Attorneys
99 N.E. 4th Street
Miami, FL   33132
Phone:  (305) 961-9003
Fax: (305) 536-4101
Fla. Bar No. 648876
Mark.Lavine@usdoj.gov


_____
MICHAEL F. HERTZ
JOYCE R. BRANDA
RENÉE BROOKER
JUSTIN DRAYCOTT
GEJAA T. GOBENA
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088

11

## CERTIFICATE OF SERVICE

IT IS HEREBY certified that a true and correct copy of the foregoing UNITED STATES' FIRST REQUEST FOR PRODUCTION TO DEFENDANTS ABBOTT AND HOSPIRA was served via overnight delivery to those individuals identified on the attached Service List this 19th day of July, 2006:

Mark A. Lavine
Assistant United States Attorney

12

## SERVICE LIST

United States of America, ex rel Ven-A-Care of the Florida Keys, Inc.,
v.
Abbott Laboratories, et al.

Case No. 06-21303-Civ-GOLD/Turnoff

James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL 33027
Tel: (954) 874-1635
Fax: (954) 874-1705
Email: jbreen@breenlaw.com
*Counsel for Relator*

Mark P. Schnapp, Esquire
Sabrina R. Ferris, Esquire
Greenberg Traurig, P.A
1221 Brickell Avenue
Miami, Florida 33131
Tel: (305) 579-0541
Fax:(305) 579-0717
Email: SchnappM@gtlaw.com
Email: FerrisS@gtlaw.com

Daniel Reidy, Esq.
James Daly, Esq.
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, Illinois 60601-1692
Tel: (312) 782-3939
Fax: (312) 782-8585
Email: jrdaly@jonesday.com
*Counsel for Defendants*

Gejaa T. Gobena
Civil Division
Ben Franklin Station
Commercial Litigation Branch
Fraud Section
601 D Street NW
Suite 9028
Washington, DC 20004
Tel: (202) 307-1088
Fax: (202) 307-3852
Email: gejaa.gobena@usdoj.gov
*Counsel for Plaintiff*

Mark A. Lavine
Assistant U.S. Attorney
United States Attorney's Office
99 N.E. 4th Street
Miami, FL 33132
Tel: (305) 961-9003
Fax: (305) 536-4101
E-mail: mark.lavine@usdoj.gov
*Counsel for Plaintiff*

13

# EXHIBIT A

| DRUG | NDC# |
|------|------|
| Sodium Chloride Injection | 00074196607 |
| Water for Injection 30 ml | 00074397703 |
| Vancomycin HCl 500 mg | 00074433201 |
| Water for Injection 10 ml | 00074488710 |
| Water for Injection 20 ml | 00074488720 |
| Sterile Water for Injection | 00074488750 |
| Sodium Chloride Injection | 00074488810 |
| Sodium Chloride Injection | 00074488820 |
| Sodium Chloride Irrigation | 00074613802 |
| Sodium Chloride Irrigation | 00074613803 |
| Sodium Chloride Irrigation | 00074613822 |
| Sterile Water for Irrigation | 00074613902 |
| Sterile Water for Irrigation | 00074613903 |
| Sterile Water for Irrigation | 00074613922 |
| Vancomycin HCL 5 gm | 00074650901 |
| Vancomycin HCL 1 gm | 00074653301 |
| Vancomycin HCL 500 mg Add-Vantage | 00074653401 |
| Vancomycin HCL 1 gm Add-Vantage | 00074653501 |
| 5% Dextrose in Water 50 ml | 00074710013 |
| 5% Dextrose in Water 100 ml | 00074710023 |
| Sodium Chloride Injection | 00074710102 |
| Sodium Chloride 0.9% 50ml | 00074710113 |
| Sodium Chloride 0.9% 100 ml | 00074710123 |
| Dextrose Injection | 00074712007 |
| Sodium Chloride Irrigation | 00074713809 |
| Sterile Water for Irrigation | 00074713909 |
| Dextrose 5%/ Kcl/NaCl 1000 ml | 00074790209 |
| Dextrose Injection | 00074792202 |
| 5% Dextrose in Water 500 ml | 00074792203 |
| 5% Dextrose in Water1000 ml | 00074792209 |
| Dextrose Injection | 00074792336 |
| Dextrose Injection | 00074792337 |
| Dextrose 5% and 0.225% NaCL Injection | 00074792409 |
| Dextrose 5% and 0.225% NaCL Injection | 00074792609 |
| 5% Dextrose/ NaCl 0.9% 1000 ml | 00074794109 |
| Sodium Chloride Irrigation | 00074797205 |
| Sterile Water for Irrigation | 00074797305 |
| Sodium Chloride 0.9% 250 ml | 00074798302 |
| Sodium Chloride 0.9% 500 ml | 00074798303 |
| Sodium Chloride 0.9% 1000 ml | 00074798309 |
| Sodium Chloride Injection | 00074798436 |

4409A 4409

# UNITED STATES OF AMERICA

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### OFFICE OF INSPECTOR GENERAL

### SUBPOENA DUCES TECUM

TO

Abbott Pharmaceuticals
Division of Abbott Labs
1 Abbott Park Road
Abbott Park, IL 60024-3500

*by service upon its registered agent:*
CT Corporation
1200 S. Pine Island Road
Plantation, FL 33324

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* Special Agent Kevin Aberle ,
*an official of the Office of Inspector General, at* 15500 New Barn Road, Suite 207

*in the City of* Miami Lakes *and State of* Florida
*on the* ____ *day of* October 31 , *19* 97 , *at* 9 *o'clock,* a __ *m of*
*that day, in connection with* an investigation of Medicaid and/or Medicare fraud

*and you are hereby required to bring with you and produce at said time and place the following:*

### SEE ATTACHED

*which are necessary in the performance of the responsibility of the Inspector General under Public Law 95-452 [5 USC App. 3 Section 6(a)(4)], as amended by Public Law 100-504, to conduct and supervise audits and investigations and to promote economy, efficiency and effectiveness in the administration of and to prevent and detect fraud and abuse in the programs and operations of the Department of Health and Human Services.*



*IN TESTIMONY WHEREOF*

Albert A. Hallmark *the undersigned official of the Office of Inspector General of said DEPARTMENT OF HEALTH AND HUMAN SERVICES, has hereunto set* his *hand this* 6th *day of* October *19* 97 .

B

## DEFINITIONS

"**Listed Pharmaceuticals**" means the brand name, trade name or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

## I.   INSTRUCTIONS

A.   Each Document Request shall be construed to include documents within the knowledge, possession or control of the subpoenaed party, its attorneys, investigators, agents, owners, officers, employees, or other representatives of the subpoenaed party and/or its attorneys, as of the date of the answers given to these Document Requests and any supplemental information, knowledge, data, documents or communication responsive to these Document Requests which is subsequently generated, obtained or discovered.

B.   If the response to any Document Request consists in whole or in part of an objection relating to or including burdensomeness, then with respect to such responses:

1.   Provide such information as can be ascertained without undue burden;

2.   State with particularity the basis for each such objection, including:

(a)   a description of the process or method required to obtain any fact responsive to the Document Request; and

(b)   the estimated costs and time required to obtain any fact responsive to the Document Request.

3.   Describe the nature and extent of the documents or other source(s), if any, from which any fact responsive to the Document Request can be obtained; and

4.   State whether the documents or other sources will be made available for inspection and copying.

C.   If you claim privilege as a ground for not providing documents in response to any Document Request, describe the factual basis for said claim or privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim. If the claim of privilege relates to identification of a document, also state the date the document was prepared, the author, the addressees, all recipients and the general subject matter.

D.   If the response to any Document Request consists, in whole or in part, of an objection(s), state with specificity the full objection(s) and the particularized basis for each said objection.

II.  DEFINITIONS

As used in these Document Requests, the following terms include the meanings set forth below:

A.   "You" or "your" means Abbott Laboratories, Abbott Pharmaceuticals, Abbott Labs and any other affiliated company, parent, subsidiary, division, joint venture or other entity or agent acting on your behalf in manufacturing, marketing or distributing the Listed Pharmaceuticals.

B.   The term "document" means any writing or recording of any kind whether written, graphic, pictorial, photographic, phonographic, mechanical, taped, saved on computer disc, hard drives or data tapes or otherwise, and every non-identical copy now or formerly in your possession, custody or control. Different versions of the same document, such as different copies of a written record bearing different handwritten notations, are different documents within the meaning of the term as used.  In case originals or original non-identical copies are not available, "document" includes copies of originals or copies of non-identical copies as the case may be.

C.   The term "identify" has the following meanings:

1.   When used in reference to a natural person, it means to state his or her full name, his or her last known residence, business address, and business telephone number.

2.   "Identify" when referring to corporate or other entities shall mean to set forth:  (a) the name; (b) present or last known address; (c) its principal place of business; and (d) the form or

2

manner of its organization.  Once a corporation or
other entity has thus been identified, it shall be
sufficient thereafter when identifying that
corporation or other entity to state its full
name.

3.    When used in reference to a communication, it
      means:

      a)    If such communication was oral, to identify
            the person speaking and the person spoken to,
            who else was present, and to state the date
            and place of the communication and its
            substance;

      b)    if such communication was contained in a
            document, to identify the document.

4.    When used in reference to a document, it means to
      state the type of document (e.g., letter,
      telegram, magnetic tape, chart, etc.), describing
      it sufficiently (date, author, recipient(s)) for
      purposes of a request to produce or subpoena duces
      tecum.   In lieu of identification of a document,
      the document may be made available for inspection
      and copying.  If any such document was, but is no
      longer in your possession, or subject to your
      control, please state what disposition was made of
      it.

5.    When used in reference to a course of conduct, it
      means to furnish the names, addresses, and
      positions of those persons who have committed the
      acts alleged and the names, addresses, and
      positions of those persons who have knowledge of
      the conduct as identified.

D.    The term **"communication"** means a transmittal of
information, or request for information, by document or otherwise
and includes any conversation in person, by telephone or by any
other means, as well as any utterance heard by another person
whether in person, by telephone or otherwise.

E.    The term **"entity"** means an individual, corporation,
partnership, proprietorship, professional corporation,
association, group, governmental agency or agent, municipal
corporation, state government, local government, political
subdivision, or any other legal entity of any kind, whether for

3

237c

profit or not for profit.

F.    The words **"and"** and **"or"** shall mean **"and/or."**

G.    The term **"relate to"** means concerning, embodying, considering, mentioning, respecting, bearing on, referring to or addressed in whole or in part to that subject.

H.    The term **"interest"** shall mean any form of monetary investment in or control over an entity.

I.    The term **"affiliated"** shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

J.    Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

K.    The phrase **"possession or control"** means to have physical possession, legal or effective control, or majority or joint ownership.  This includes assets that are being held by another party on behalf of an individual or entity.

L.    **"Pricing Correspondence"** means any document (excluding invoices) containing a representation of price for a Listed Pharmaceutical directed to any or all of the state government offices  (or privately contracted agents) of the states of Texas, Florida, Colorado, Alabama, Massachusetts and Maryland that are responsible for receiving, processing, and/or paying claims for Medicaid reimbursement for the Listed Pharmaceuticals or setting the rates of reimbursement for the Listed Pharmaceuticals.

M.    **"Request for Information for New Drug Product Or Request for Additional Information of Products Currently Included in Texas Medicaid"** means the survey/questionnaire required by the state of Texas Department of Health Bureau of Vendor Drug for the approval for reimbursement of any pharmaceutical under the Texas Vendor Drug Program.

N.     **"Publishers"** means the publishers of the following pharmaceutical pricing guides and/or databases:  the Medical Economics *Drug Topics Red Book*; the Hearst Corporation's *First DataBank*; or *Medi-Span, Inc.*

O.    **"AWP"** means the price that you report, advertise or publish as the average wholesale price for the Listed Pharmaceuticals.

P.   "**Direct Price**" means the price you report, advertise or publish as the "DP" or direct price for the Listed Pharmaceuticals.

Q.   "**Best Price**" means the price you report, advertise or publish as the best price for the Listed Pharmaceuticals.

R.   "**AMP**" means the price you report, advertise or publish as the "average manufacturer's price" for the Listed Pharmaceuticals.

S.   "**Medicaid representative**" means any state's Medicaid program employees or officials, or their agents, fiscal agents, sub-contractors or designees.

T.   "**Price representations**" means any statement, assertion or declaration of the price of the Listed Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, or Suggested Net Trade.

**Relevant Time Period:**  The requests herein refer to documents created from January 1, 1994 to the present and documents relating to such period even though created before that period.

## DOCUMENTS REQUESTED

1.   All documents that reflect, discuss, analyze or comment upon the prices which you have set for the sale of, or at which you have sold, any of the Listed Pharmaceuticals to Florida Infusion/Nation's Drug, Ultracare, Oncology Therapeutics Network, FFF Enterprises, Inc., National Specialty Services, ASD (a subsidiary of Bergen Brunswig Drug Co.), and/or Oncology Supply Co., Inc. (a division of ASD) for the years 1994, 1995, and 1996, including but not limited to contracts, price lists, or any documents reflecting charge back agreements, rebates, discounts or other items of value offered or given.

2.   All documents that reflect, discuss, analyze or comment upon the prices which you have set for the sale of, or at which you have sold, any of the Listed

5

Pharmaceuticals to GNYHA Alternate Care, Automated
Health Technologies, Pharmaceutical Buyers, Inc.,
Amerinet, Gerimed/IV Med, and/or Health Care Purchasing
Agency (a subsidiary of Bergen Brunswig Co.), for the
years 1994, 1995, and 1996 including but not limited to
contracts, price lists, or any documents reflecting
charge back agreements, rebates, discounts or other
items of value offered or given.

3.   All documents that reflect, discuss, analyze or comment
     upon the prices which you have set for the sale of, or
     at which you have sold, any of the Listed
     Pharmaceuticals to Texas Oncology Pharmacy Services,
     Inc. (a subsidiary of Physician Reliance Network,
     Inc.), Lessner & Troner, M.D.'s. P.A., NMC Homecare,
     Inc., Caremark, Coram Health Care, Quantum Health
     Resources, Olsten Health Services, Kimberly Care, Vital
     Systems, Texas Health Resources, Nova Factor, American
     Pharmaceutical Services, Abbey Health Care, Home
     Patient Care, Inc. (a/k/a HPC, Inc.) and/or Home
     Patient Care, America (HPC America) for the years 1994,
     1995, and 1996, including but not limited to contracts,
     price lists, or any documents reflecting charge back
     agreements, rebates, discounts or other items of value
     offered or given.

4.   All Pricing Correspondence, and drafts thereof, for any
     of the Listed Pharmaceuticals.

5.   All documents that reflect, discuss, analyze or comment
     upon any decision to increase the amounts of any of the
     Price representations of a Listed Pharmaceutical as
     reported by you to the Publishers, to any state's
     Medicaid representatives or to any Medicare carrier
     while maintaining at the same level or reducing the
     price at which you actually sold any of the Listed
     Pharmaceuticals to physicians, physicians groups,
     hospital groups, home infusion or IV pharmacies,
     wholesalers (including but not limited to Florida
     Infusion/Nation's Drug, Ultracare, Oncology
     Therapeutics Network, FFF Enterprises, Inc., National
     Specialty Services, ASD (a subsidiary of Bergen
     Brunswig Drug Co.), Oncology Supply Co., Inc. (a
     division of ASD), GNYHA Alternate Care, Automated
     Health Technologies, Pharmaceutical Buyers, Inc.,
     Amerinet, Gerimed/IV Med, Health Care Purchasing Agency
     (a subsidiary of Bergen Brunswig Co.), Lessner &
     Troner, M.D.'s. P.A., NMC Homecare, Inc., Caremark,

Coram Health Care, Quantum Health Resources, Olsten
Health Services, Kimberly Care, Vital Systems, Texas
Health Resources, Nova Factor, American Pharmaceutical
Services, Abbey Health Care, Home Patient Care, Inc.
(a/k/a HPC, Inc.) and/or Home Patient Care, America
(HPC America) and/or any other entity marketing the
Listed Pharmaceuticals) in any or all of the following
states: Texas, Florida, Colorado, Alabama,
Massachusetts and Maryland.

6.    All communications between you and any distributor,
      wholesaler, home infusion or IV pharmacy, physician,
      buying group, or hospital group, that discuss the Price
      Representations of any of the Listed Pharmaceuticals in
      comparison to the reimbursement rates of the Medicaid
      programs in any or all of the following states:Texas,
      Florida, Colorado, Alabama, Massachusetts and Maryland
      for any of the Listed Pharmaceuticals.

7.    All of your internal communications that discuss the
      Price representations of any of the Listed
      Pharmaceuticals in comparison to the reimbursement
      rates of the Medicaid programs in any or all of the
      following states:Texas, Florida, Colorado, Alabama,
      Massachusetts and Maryland for any of the Listed
      Pharmaceuticals.

8.    All documents created by you that compare or analyze
      other drug manufacturers' published Price
      Representations with your Price Representations for any
      of the Listed Pharmaceuticals or their generic
      equivalents.

9.    All documents that discuss or refer to the "wholesale
      acquisition cost" or "WAC" reimbursement rates set by
      the Alabama, Florida and/or Colorado Medicaid programs
      and/or how those reimbursement rates affect your
      marketing or sale of any of the Listed Pharmaceuticals.

10.   All documents that discuss or refer to the "wholesale
      estimated acquisition cost" or "WEAC" reimbursement
      rates set by the Texas Medicaid program and/or how
      those reimbursement rates affect your marketing or sale
      of any of the Listed Pharmaceuticals.

11.   All documents that discuss or refer to the "direct

7

estimated acquisition cost" or "DEAC" reimbursement
rate set by the Texas Medicaid program and/or how those
reimbursement rates affect your marketing or sale of
any of the Listed Pharmaceuticals.

12.   All documents that reflect the price used by you to
compute the rebate you paid to each of the Medicaid
programs of Texas, Florida, Colorado, Alabama,
Massachusetts and Maryland for each of the Listed
Pharmaceuticals from 1990 to the present.

13.   All "Applications for Inclusion of a New Product and
the Recertification of Products Presently Included in
the Texas Vendor Drug Program" sent to the Texas
Medicaid Program, and drafts thereof.

14.   All documents, not otherwise described in paragraph 13,
transmitted to the Texas Medicaid Program which
contained any Price Representations regarding any of
the Listed Pharmaceuticals, and drafts thereof.

15.   All documents which mention, evidence or reflect any
discussions or analysis regarding the manner in which
to provide the information described in paragraphs 13
and 14.

# EXHIBIT A

# ABBOTT LABORATORIES

1) Amikacin Sulfate
2) Clindamycin Phosphate
3) Dextrose 5%
4) Dextrose 5%/Sodium Chloride 0.9%
5) Furosemide
6) Heparin Lock Flush
7) Pentamidine Isethionate
8) Lactated Ringers
9) Sodium Bicarbonate
10) Sodium Chloride 0.9%
11) Tobramycin Sulfate
12) Vancomycin HCL
13) Water for Injection, Sterile



**DEPARTMENT OF HEALTH & HUMAN SERVICES**          Office of Inspector General

Office of Investigations
8100 Oak Lane, Ste 306
Miami, FL 33016


July 25, 2000


Abbott Laboratories, Inc.
1 Abbott Park Road
Abbott Park, IL. 60064-3500



Dear Sir or Madame:

     Accompanying this letter is a subpoena addressed to you as Records
Custodian returnable at a location of the Miami Field Office, Office of
Inspector General, before my designee, Special Agent Alain Rossello.
The subpoena has been issued pursuant to the authority provided to the
Inspector General under Public Law 95-452 (5 UCS Appendix 3, Section 6
(a) (4) ), as amended by Public Law 100-504.

     After you review the subpoena, you will see that it seeks
documents similar to those demanded in a previous subpoena served upon
your or your subsidiaries.  Please note that the intent of the current
subpoena is to acquire different documents than those acquired in
response to the previous subpoena.  To the extent that this subpoena
can be interpreted to demand documents already provided in response to
the previous subpoena, duplicate production is not required.

     Fully legible and complete copies of the records called for by the
subpoena will be accepted in response to the subpoena, provided that
the original records will be made available to employees of my office,
upon request, during normal business hours.  Otherwise, original
documents (including copies as maintained in your files) should be
produced.

Failure to appear at the time and place specified in the subpoena may
be taken as a failure to comply with the subpoena. However, as a
convenience, you may assemble the documents requested and mail them by
certified mail on or before August 28, 2000 to:  HHS/OIG/OI, ATTN: SA
Alain Rossello, 99 N.E. 4th Street, 3rd Floor, Miami, FL  33132.

If you have any questions please feel free to contact SA Alain Rossello
at (305)536-6927.

                         Sincerely,


                         Linda J. Hillier
                         Regional Inspector
                         General for Investigations

# UNITED STATES OF AMERICA
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### OFFICE OF INSPECTOR GENERAL

---

## SUBPOENA DUCES TECUM

TO:

**Abbott Laboratories, Inc.**  *by service upon its registered agent:*
**1 Abbott Park Road**  **CT Corporation**
**Abbott Park, IL. 60064-3500**  **1200 S. Pine Island Road**
 **Plantation, FL 33324**

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE*  Special Agent Alain Rossello ,
*an official of the Office of Inspector General, at*  99 N.E. 4th St., Suite 300

*in the City of*  Miami  *and State of*  Florida
*on the*  28th  *day of*  August  *,20*  00  *, at*  9  *o'c*  am
*that day, in connection with*  an investigation of Medicaid and/or Medicare fraud.
 Should you have any questions, please contact Alain Rossello, Special Agent, U.S. Dept. Of Health
  Services, Office of Inspector General, at 305-536-6927.

 ;

*and you are hereby required to bring with you and produce at said time and place the following:*

### SEE ATTACHED

*which are necessary in the performance of the responsibility of the Inspector General under Public Law
95-452[5 USC App. 3 Section 6(a)(4)], as amended by Public Law 100-504, to conduct and supervise
audits and investigations and to promote economy, efficiency and effectiveness in the administration of
and to prevent and detect fraud and abuse in the programs and operations of the Department of Health
and Human Services*



*IN TESTIMONY WHEREOF*
Linda J. Hillier  *the undersigned official of the
Office of Inspector General of said DEPARTMENT
OF HEALTH AND HUMAN SERVICES, HAS
hereunto set h  er  hand this*  21  *d a y
of*  July  *20*  00  *.*
*Regional Inspector General for Investigations*

6587

## I.    INSTRUCTIONS

A.    Each Document Request shall be construed to include documents within the knowledge, possession or control of the subpoenaed party, its attorneys, investigators, agents, owners, officers, employees, or other representatives of the subpoenaed party and/or its attorneys, as of the date of the answers given to these Document Requests and any supplemental information, knowledge, data, documents or communication responsive to these Document Requests which is subsequently obtained or discovered.

B.    If you claim privilege as a ground for not providing documents in response to any Document Request, describe the factual basis for said claim or privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim, including the date the document was prepared, the author, the addressees, all recipients and the general subject matter.

C.    If the response to any Document Request consists, in whole or in part, of an objection(s), state with specificity the full objection(s) and the particularized basis for each said objection.

## II.    DEFINITIONS

As used in these Document Requests, the following terms include the meanings set forth below:

A.    "**You**" or "**your**" means Abbott Laboratories, Abbott Pharmaceuticals, Abbott Labs and any other affiliated company, parent, subsidiary, division, joint venture or other entity or agent acting on your behalf in purchasing, marketing or distributing any of the Listed Pharmaceuticals.

B.    The term "**document**" means any writing or recording of any kind whether written, graphic, pictorial, photographic, phonographic, mechanical, taped, saved on computer disc, hard drives or data tapes or otherwise, and every non-identical copy. Different versions of the same document, such as different copies of a written record bearing different handwritten notations, are different documents within the meaning of the term as used. In case originals or original non-identical copies are not available, "document" includes copies of originals or copies of non-identical copies as the case may be.

C.    The term "**identify**" has the following meanings:

1.    "**Identify**" when used in reference to a natural person, means to provide any documents that list the person's full name, their last known residence, business address, and business telephone number.

2.      **"Identify"** when referring to corporate or other entities shall mean to provide any documents that list:  (a) the name; (b) present or last known address; (c) its principal place of business; and (d) the form or manner of its organization.

3.      **"Identify"** when used in reference to a communication, means that if such communication was contained in a document, to provide the document.

D.      The term **"communication"** means a transmittal of information, or request for information, by document and includes documentation thereof, and if such communication was contained in a document, to provide the document.

E.      The term **"entity"** means an individual, corporation, partnership, proprietorship, professional corporation, association, group, governmental agency or agent, municipal corporation, state government, local government, political subdivision, or any other legal entity of any kind, whether for profit or not for profit.

F.      The words **"and"** and **"or"** shall mean "and/or."

G.      The term **"affiliated"** shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

H.      Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

I.      The terms **"accuracy," "accurate"** or **"accurately,"** when used in reference to Price Representations, are used with reference to whether the information is reflective of the prices actually paid in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

J.      The term **"Price Representations"** means any statement, assertion, representation or declaration of the price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

K.      The term **"Pharmaceutical"** means any drug or other product sold by you which requires a physician's prescription, and includes but is not limited to "biological" products such as hemophilia factors and intravenous solutions such as sodium chloride solution.

L.          The term **"Listed Pharmaceuticals"** means the brand name, trade name or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

M.          The term "**Spread**" is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid **by** purchasers of the Pharmaceuticals) and the price or cost set, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (**to** purchasers of the Pharmaceuticals). Third party payors include Medicare, Medicaid and private insurance. Thus, the Spread is the gross profit actually or potentially realized by the purchasers of the Pharmaceuticals.

N.          The term "**Request for Information for New Drug Product Or Request for Additional Information of Products Currently Included in Texas Medicaid**" means the survey/questionnaire required by the state of Texas Department of Health Bureau of Vendor Drug for the approval for reimbursement of any Pharmaceutical under the Texas Vendor Drug Program.

O.          The term "**Publishers**" means any person or entity engaged in publishing drug prices, including the publishers of the following pharmaceutical pricing guides and/or databases:  the Medical Economics *Drug Topics Red Book*; the Hearst Corporation's *First DataBank*; or *Medi-Span, Inc.*

P.          The term "**Medicare Representative**" means any Medicare program employees or officials, or their agents, fiscal agents, sub-contractors or designees, including any Medicare carrier or fiscal intermediary.

Q.          The term "**Medicaid Representative**" means any state's Medicaid program employees or officials, or their agents, fiscal agents, sub-contractors or designees.

R.          The term "**AWP**" means the price that you report, advertise, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

S.          The term "**WAC**" means the price that you report, advertise, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

T.          The term "**Direct Price**" means the price you report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

U.          The term "**Best Price**" means the price you report or otherwise disseminate as the best price for any Pharmaceutical, including the price you report for purposes of the Medicaid rebate program.

V.        The term **"AMP"** means the price you report or otherwise disseminate as the average manufacturers price for any Pharmaceutical, including the price you report for purposes of the Medicaid rebate program.

**Relevant Time Period:** Unless otherwise indicated in a specific request, the requests herein refer to documents created from January 1, 1990 to the present and documents relating to such period even though created before that period.

## DOCUMENTS REQUESTED

1.    All documents (excluding invoices) which mention, evidence or reflect any Price Representation for a Listed Pharmaceutical sent or directed by you or on your behalf to any government office or official (or their privately contracted agents) responsible for receiving, processing, and/or paying claims for Medicaid or Medicare reimbursement for the Listed Pharmaceuticals, setting the rates of reimbursement for the Listed Pharmaceuticals, or for calculating Medicaid rebates for the Listed Pharmaceuticals.

2.    All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any explanation or definition of any terms commonly used to describe Price Representations or charge-back arrangements.

3.    All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any Price Representations regarding the Listed Pharmaceuticals.

4.    All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any reimbursement information regarding the Medicare Program or any Medicaid Program.

5.    All documents which mention, evidence or reflect any Price Representation for a Listed Pharmaceutical sent or provided by you or on your behalf to any elected official of any State or the United States.

6.    All documents which mention, evidence or reflect any explanation or definition of any terms commonly used to describe Price Representations, AMP, Best Price or charge-back arrangements sent or provided by you or on your behalf to any elected official of any State or the United States.

7.    All documents which mention, evidence or reflect any Price Representations sent to or received from any Publishers for any of the Listed Pharmaceuticals, including but not limited to new product submissions, data requests or price updates.

8.    All documents which mention, evidence or reflect the purpose, goal or reason for the transmittal of the information described in paragraphs 1 - 7, including internal memoranda, cover letters, analysis or strategy discussions.

9.    All documents which mention, evidence or reflect the reimbursement rates set or methodologies used by any state's Medicaid program, the Medicare program, or any private insurance program, including all documents which mention, evidence or reflect

how those reimbursement rates affect your marketing or sale of any of your Pharmaceuticals.

10. All documents  which mention, evidence or reflect the Price Representations of any of your Pharmaceuticals in comparison to or in connection with the reimbursement rates of any state's Medicaid program, the Medicare program, or any private insurance program.

11. All documents which mention, evidence or reflect other drug manufacturers' Price Representations in comparison to or in connection with (a) your Price Representations or (b) the reimbursement rates of any state's Medicaid program, the Medicare program, or any private insurance program.

12. All "Applications for Inclusion of a New Product and the Recertification of Products Presently Included in the Texas Vendor Drug Program" sent to the Texas Medicaid Program and all other similar forms or applications, and drafts thereof.

13. All documents, not otherwise described in paragraph 12, transmitted to the Texas Medicaid Program which contained any Price Representations regarding any of your Pharmaceuticals, and drafts thereof.

14. All documents which mention, evidence or reflect any discussions or analysis regarding supplying or otherwise reporting the information described in paragraphs 12 and 13.

15. All documents that mention, evidence or reflect any impact upon the net purchase or sale price of any Listed Pharmaceutical due to any payment or proposed payment in cash or in kind directly or indirectly, including charge backs, discounts, the Spread, rebates, free pharmaceuticals, administrative fees, sponsorship of meetings, drug studies, educational or research grants or off-invoice pricing.

16. All documents that mention, evidence or reflect any impact of the Spread upon the sale of your Pharmaceuticals to any purchaser, including any documents analyzing the gross profit or estimated gross profit of any purchaser.

17. All documents that mention evidence or reflect the gross profits or estimated gross profits for any purchaser with respect to any of the Listed Pharmaceuticals.

18. All documents that summarize or describe the function of any system for connecting or interfacing with physicians' billing systems or practice management systems.

19. All documents that mention, evidence or reflect any payment in cash or in kind directly or indirectly to any employee of any agency involved in the administration of any Medicaid program or the Medicare program, or to any of their family members.

20. All documents that mention, evidence or reflect any communications directed by you or on your behalf to any purchaser which mention, evidence or reflect either reimbursement

amounts for the Listed Pharmaceuticals or the Spread, including documents which reference AWP or WAC.

21.     All documents which mention, evidence or reflect any occasion whereby the net price or cost to a purchaser was less than that reflected on the invoice to the purchaser, including any arrangement whereby payments were made directly to the purchaser or free goods were delivered directly to the purchaser thereby resulting in a reduction of the net price or net cost of the purchaser.

22.     All documents which mention, evidence or reflect any price changes or changes in Price Representations to any of your Pharmaceuticals from April 30, 2000 to the present.

23.     All documents which mention, evidence or reflect the reason for any price change or changes in Price Representations described in paragraph 22.

# EXHIBIT A

# ABBOTT LABORATORIES

1) Amikacin Sulfate
2) Clindamycin Phosphate
3) Dextrose 5%
4) Dextrose 5%/Sodium Chloride 0.9%
5) Furosemide
6) Heparin Lock Flush
7) Pentamidine Isethionate
8) Lactated Ringers
9) Acyclovir
10) Sodium Chloride 0.9%
11) Tobramycin Sulfate
12) Vancomycin HCL
13) Water for Injection, Sterile
14) Amino Acids/Electrolytes
15) Dextrose 5% with Potassium and Sodium Chloride