# EXHIBIT 9

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

## SUBPOENA IN A CIVIL CASE

In re LUPRON MARKETING AND SALES
PRACTICES LITIGATION

CASE NUMBER:  MDL DOCKET NO. 1430
Master File No. 01-CV-10861
Judge Richard G. Stearns (D. Mass.)

TO:  Office of the General Counsel

United States Department of Health and Human Services
Room 711-E
200 Independence Avenue, S.W.
Washington, D.C.  20201

✠    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
date, and time specified below (list documents or objects):

See EXHIBIT A (attached)

| PLACE | DATE AND TIME |
|---|---|
| Joshua T. Buchman, Esq.<br>McDermott, Will & Emery<br>227 West Monroe Street<br>Chicago, IL  60606-5096<br>(312) 372-2000 | January 5, 2004 |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 10-23-03 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Michael S. Nadel, D.C. Bar # 470144
(Attorney for Abbott Laboratories)
McDermott, Will & Emery
600 Thirteenth Street
Washington, D.C.  200005
(202) 756-8000

(See Rule 45, Federal Rules of civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A TO SUBPOENA TO HHS

### PRELIMINARY STATEMENT

Abbott Laboratories ("Abbott"), TAP Pharmaceutical Products Inc. and TAP Pharmaceuticals Inc. (collectively "TAP"), and Takeda Chemical Industries, Ltd. ("Takeda") are serving this Subpoena on the Office of the General Counsel of the United States Department of Health and Human Services ("HHS") pursuant to Rule 45 of the Federal Rules of Civil Procedure and 45 C.F.R. § 2.5.

### DEFINITIONS

1.    "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in the possession, custody or control of Plaintiffs or known or believed by Plaintiffs to exist.

2.    "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography or other means or process.

3.    "Correspondence" means all communications between two different persons or entities, including e-mail and other forms of electronic communications.

4.    "Home drug infusion therapy services" means the administration of drugs at the patient's home using an infusion pump.

5. "Home nebulizer treatments" means the administration of drugs at the patient's home by means of a nebulizer.

6. "AWP" shall refer to the published Average Wholesale Price as reported in pharmaceutical pricing compendia, such as the Red Book and First Data Bank.

7. "HHS" means the United States Department of Health and Human Services and all constituent agencies.

8. "CMS" means Centers for Medicare and Medicaid Services, formerly known as Health Care Financing Administration ("HCFA"), and encompasses the Social and Rehabilitation Service ("SRS"), HCFA's predecessor in the administration of the Medicaid program.

9. "OIG" means the HHS Office of Inspector General.

10. "Carrier" shall mean and refer to any and all insurance companies or other entities that have contracted with HCFA or CMS at any time from Jan. 1, 1985 to the present to process claims submitted under Part B of the Medicare program.

11. "Relating to" means all information, facts and/or documents that directly, indirectly or in any other way support, negate, bear upon, touch upon, incorporate, affect, include, pertain to and/or are otherwise connected with the subject matter about which a request is being made.

12. "Communication" means the transmission, sending and/or receipt of information of any kind by and/or through any means including but not limited to speech, writings, language, computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, microfilm, microfiche, photographic film of any type and/or other media of any kind.

13.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

14.     The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun, and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

## INSTRUCTIONS

1.     Abbott, TAP, and Takeda request that HHS certify that the records it produces are true and correct copies.

2.     Unless the request specifically relates to an earlier time period, the requests below refer to the period of January 1, 1991 to the present

3.     The headings provided in the document requests, below, are intended to assist HHS in locating responsive documents by setting forth general categories, and should not be relied upon to modify in any way the actual numbered requests.

4.     Please produce documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.    The following constituents within HHS are believed by Abbott, TAP, and Takeda to be in possession of documents responsive to this subpoena: (a) HHS Main Office and Regional Offices; (b) HHS Office of General Counsel; (c) OIG; (d) CMS; and (e) Public Health Service.

5.     Provide the following information for each document withheld on the grounds of privilege:

    (a)     its date;

    (b)     its title;

3

      (c)     its author;

      (d)     its addressee;

      (e)     the identity of each person who received and/or saw the original or any copy of such document;

      (f)     the specific privilege under which it is withheld;

      (g)     its general subject matter;

      (h)     its present custodian(s); and

      (i)     a description of the document adequate to support the contention of privilege.

## DOCUMENTS TO PRODUCE

### Regulatory Documents Regarding Medicare or Medicaid Drug Reimbursement

1.    All documents relating to the promulgation of a regulation concerning Medicare reimbursement for prescription drugs, effective January 1, 1992, including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation. (The Notice of Proposed Rulemaking for the regulation was published at 56 Fed. Reg. 25,860 (June 5, 1991), and the Notice of Final Rule was published at 56 Fed. Reg. 59,424 (Nov. 25, 1991).) This request seeks only documents relating to reimbursement by Medicare of prescription drugs, and not documents related to other matters covered by the regulation in question.

2.    All documents relating to the promulgation of a regulation concerning Medicare reimbursement for prescription drugs, effective January 1, 1999, including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation. (The Notice of Proposed Rulemaking

for the regulation was published at 63 Fed. Reg. 30,818 (June 5, 1998), and the Notice of Final Rule was published at 63 Fed. Reg. 58,814 (Nov. 2, 1998).) This request seeks only documents related to reimbursement by Medicare of prescription drugs, and not documents relating to other matters covered by the regulation in question.

3.      From 1985 to the present, all documents relating to the promulgation of a regulation concerning Medicaid reimbursement for prescription drugs published at 34 Fed. Reg. 1,244 (January 25, 1969), codified at 45 C.F.R. § 250.30(b)(2) (1970), including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation.  This request seeks only documents related to reimbursement by Medicaid of prescription drugs, and not documents related to other matters covered by the regulation in question.

4.      From 1974 to the present, all documents relating to the promulgation of a regulation concerning Medicaid reimbursement for prescription drugs, effective July 1976, including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation.  (The Notice of Proposed Rulemaking for the regulation was published at 39 Fed. Reg. 41,480 (Nov. 27, 1974), and the Notice of Final Rule was published at 40 Fed. Reg. 34,516 (Aug. 15, 1975).) This request seeks only documents related to reimbursement by Medicaid of prescription drugs, and not documents relating to other matters covered by the regulation in question.

5.      From 1985 to the present, all documents relating to the promulgation of a regulation concerning Medicaid reimbursement for prescription drugs, effective in 1987, including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation.  (The

Notice of Proposed Rulemaking for the regulation was published at 52 Fed. Reg. 28,648 (July 31, 1987).)  This request seeks only documents related to reimbursement by Medicaid of prescription drugs, and not documents relating to other matters covered by the regulation in question.

6.      From 1985 to the present, all documents relating to the decision that Medicare covers prescription drugs provided incident to durable medical equipment, including all documents related to Section 2100.5 of the Medicare Carrier's Manual, and all revisions or modifications thereto.

7.      All documents relating to HCFA/CMS's actual or proposed use of its "inherent reasonableness" authority in connection with Medicare reimbursement of prescription drugs.

<u>Audits, Reviews, Analyses, Reports and Publications</u>

8.      From 1985 to the present, all documents relating to OIG audits and reports regarding reimbursement or payment for prescription drugs by Medicare, Medicaid, the Department of Veterans Affairs or any other federal agency or federal health benefits program, including drafts, work papers, surveys, survey responses, interview summaries, correspondence, notes, and all responses and drafts of responses to OIG audits and reports.

9.      From 1985 to the present, all documents relating to reviews of drug purchase prices by pharmacies in Arkansas, Louisiana, New Mexico, Oklahoma and Texas, performed by HCFA Region VI and referenced in <u>Louisiana v. Department of Health and Human Services</u>, 905 F.2d 877, 882 (5th Cir. 1990).

10.      From 1985 to the present, all documents relating to efforts by HCFA or CMS, Carriers or other Medicare contractors to determine acquisition costs of drugs, including efforts to determine "estimated acquisition cost" pursuant to 42 C.F.R. § 405.517 (1992).

11.     All documents relating to a report prepared for CMS by PricewaterhouseCoopers entitled "A Study of Pharmaceutical Benefit Management" (June 2001), and referenced at 67 Fed. Reg. 10,285 (March 6, 2002), including the report, drafts of the report, correspondence relating to the report, and all documents relating to the engagement of PricewaterhouseCoopers to prepare the report.

12.     From 1968 to the present, all documents relating to a report prepared by the Task Force on Prescription Drugs, the Office of the Secretary, United States Department of Health, Education and Welfare, entitled "The Drug Makers and the Drug Distributor" and dated December 1968.

13.     From 1985 to the present, all OIG correspondence with Congress, including Semi-Annual Reports, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

14.     From 1985 to the present, all OIG Red Books and Orange Books relating to Medicare's or Medicaid's method of reimbursement for prescription drugs.

15.     All documents relating to committees or task forces within HHS that review, consider, establish, or alter policies for Medicare reimbursement for prescription drugs, including agendas and minutes of meetings, correspondence, memoranda, lists of members, and notes.

16.     All documents relating to efforts by CMS, HCFA or Carriers to base Medicare reimbursement for prescription drugs on the "least costly alternative" or any standard other than AWP.

17.     All documents relating to efforts by the Department of Justice to consider, calculate, or apply average wholesale prices that differ from the AWPs for the prescription drugs

published in pharmaceutical industry pricing compendia, such as the <u>Red Book</u> and <u>First Data Bank</u>.

18.    All documents relating to efforts by CMS, HCFA or Carriers to consider, calculate or apply average wholesale prices that differ from the published AWPs for the prescription drugs.

19.    From 1985 to the present, all documents considering hypothetical, proposed or actual federal legislation concerning Medicare or Medicaid reimbursement for prescription drugs.

20.    To the extent not covered above, from 1985 to the present, all HHS reviews, studies, analyses, audits and reports relating to the fact that AWP commonly exceeds the actual sales price or acquisition cost of a drug.

21.    To the extent not covered above, from 1985 to the present, all HHS reviews, studies, analyses, audits and reports relating to the fact that AWP commonly exceeds the actual average wholesale price of a drug.

<u>Communications with State Government Entities Regarding
AWP or Medicaid Drug Payments</u>

22.    From 1985 to the present, all written communications with any State Medicaid agency regarding Medicaid reimbursement for prescription drugs.

23.    From 1985 to the present, all documents relating to non-written communications, such as meetings or phone conversations, with any State Medicaid agency regarding Medicaid reimbursement for prescription drugs.

24.    From 1985 to the present, all documents relating to CMS, HCFA, or SRS policies, regulations, rules or standards related to Medicaid reimbursement for prescription drugs.

25.     From 1985 to the present, all written communications with any State Medicaid agency regarding the possibility that CMS or HCFA might disapprove a State Medicaid plan due to the manner in which a proposed or existing State Medicaid program reimburses for prescription drugs.

26.     From 1985 to the present, all documents relating to non-written communications, such as meetings or phone conversations, with any State Medicaid agency regarding the possibility that CMS or HCFA might disapprove a State Medicaid plan due to the manner in which a proposed or existing State Medicaid program reimburses for prescription drugs.

<u>Communications with Federal Government Entities or Government Contractors<br>Regarding AWP or Medicare Drug Reimbursement</u>

27.     All written communications with any Carrier, Carrier Advisory Committees, or other Medicare contractor, regarding the method(s) by which Medicare reimburses for prescription drugs.

28.     All documents relating to non-written communications, such as meetings or phone conversations, with any Carrier, Carrier Advisory Committees or other Medicare contractor regarding Medicare's method of reimbursement for prescription drugs.

29.     All written communications with the Office of Management and Budget regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including the performance of surveys or other actions to determine the estimated acquisition cost of prescription drugs under 42 C.F.R. § 405.517 (1992).

30.     All documents relating to non-written communications with the Office of Management and Budget regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including the performance of surveys or other actions to determine the estimated acquisition cost for prescription drugs under 42 C.F.R. § 405.517 (1992).

31.     All written communications with Members of Congress, their staff, or any Congressional committees regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

32.     All documents relating to non-written communications, such as meetings or phone conversations, with Members of Congress, their staff, or any Congressional committees regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

33.     All written communications with the Office of Technology Assessment regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

34.     All documents relating to non-written communications, such as meetings or phone conversations, with the Office of Technology Assessment regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

35.     All written communications with the General Accounting Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

36.     All documents relating to non-written communications, such as meetings or phone conversations, with the General Accounting Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

37.     All written communications with the Congressional Budget Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

38.     All documents relating to non-written communications, such as meetings or phone conversations, with the Congressional Budget Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

39.     All written communications with the Department of Justice regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

40.    All documents relating to non-written communications, such as meetings or phone conversations, with the Department of Justice regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

41.    All written communications with the Department of Justice regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

42.    All written communications with the Office of the President of the United States regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including all documents related to the Medicare prescription drug provisions of any President's annual proposed budgets and President Clinton's December 13, 1997 radio address to the nation.

43.    All documents relating to non-written communications, such as meetings or phone conversations, with the Office of the President of the United States regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including all documents related to the Medicare prescription drug provisions of any President's annual proposed budgets and President Clinton's December 13, 1997 radio address to the nation.

44.    To the extent not covered by the above requests, all written communications between HHS or any HHS constituent agency and any state or federal governmental entity outside HHS regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

45.    To the extent not covered by the above requests, all documents relating to non-written communications, such as meetings and phone conversations, between HHS or any HHS constituent agency and any state or federal governmental entity outside HHS regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

Communications with Non-Governmental Entities Regarding
AWP or Medicare or Medicaid Reimbursement of Drugs

46.     All written communications with pharmaceutical manufacturers or associations representing or consisting of pharmaceutical manufacturers regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

47.     All documents relating to non-written communications, such as meetings or phone conversations, with pharmaceutical manufacturers or associations representing or consisting of pharmaceutical manufacturers regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

48.     All written communications with publishers of pharmaceutical pricing compendia regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

49.     All documents relating to non-written communications, such as meetings and phone conversations, with publishers of pharmaceutical pricing compendia regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

50.     All written communications with pharmacists, pharmacies, or associations representing or consisting of pharmacies or pharmacists, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

51.     All documents relating to non-written communications such as meetings and phone conversations, with pharmacists, pharmacies, or associations representing or consisting of pharmacies or pharmacists, regarding Medicare's or Medicaid's method of reimbursement for prescription drugs.

52.     All written communications with health care providers, or associations representing or consisting of health care providers, including the American Society of Clinical Oncology and the American Urology Association, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

53.    All documents relating to non-written communications, such as meetings or phone conversations, with health care providers, or associations representing or consisting of health care providers, including the American Society of Clinical Oncology, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

54.    All written communications with health care providers regarding agreements between insurers and providers pursuant to which health care providers waive coinsurance or copayment amounts required under Medicare, including agreements between insurers and physicians that require physicians to waive Medicare copayment obligations as a condition of participation in insurance company networks.

55.    All documents relating to non-written communications, such as meetings or phone conversations, with health care providers regarding agreements between insurers and providers pursuant to which health care providers waive coinsurance or copayment amounts required under Medicare, including agreements between insurers and physicians that require physicians to waive Medicare copayment obligations as a condition of participation in insurance company networks.

56.    All written communications with cancer survivors or cancer patients, or associations representing or consisting of such individuals, the National Coalition for Cancer Survivorship, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

57.    All documents relating to non-written communications, such as meetings or phone conversations, with cancer survivors or cancer patients, or associations representing or consisting of such individuals, including the National Coalition for Cancer Survivorship, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

58.   All written communications with private insurers, Carriers, ERISA plan administrators, health maintenance organizations, Blue Cross organizations or other non-governmental third-party payors regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

59.   All documents relating to non-written communications, such as meetings or phone conversations, with private insurers, Carriers, ERISA plan administrators, health maintenance organizations, Blue Cross organizations or other non-governmental third-party payors regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

60.   To the extent not covered above, all written communications with non-governmental entities, including the press, healthcare providers, associations and members of the general public, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

61.   From 1985 to the present, copies of all Freedom of Information Act requests submitted to HHS or any HHS constituent agency seeking documents regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, all responses thereto, and all documents produced in response to such requests.

<u>HHS Administrative and Judicial Litigation Concerning AWP</u>

62.   From 1985 to the present, all documents relating to Amendment 87-33 to the Louisiana State Medicaid plan. (To facilitate the search for responsive documents, note that HCFA published a Notice of hearing on this matter at 53 Fed. Reg. 29,381 (Aug. 4, 1988).)

63.   From 1985 to the present, all documents relating to <u>In re Disapproval of Louisiana State Plan Amendment No. 87-33</u>, No. 88-11 (HCFA Administrator June 9, 1989), including

briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions.

64.     From 1985 to the present, all documents relating to <u>State of Louisiana v. United States Department of Health and Human Services</u>, No. 89-4566, opinion reported at 905 F.2d 877 (5th Cir. 1990), including briefs, exhibits, appendixes, the Administrative Record, all other filings, correspondence, and transcripts of oral argument.

65.     From 1985 to the present, all documents relating to Amendment 88-05 to the Arkansas State Medicaid plan, including all documents relating to administrative proceedings regarding HCFA's decision to disapprove Amendment 88-05 to the Arkansas State Medicaid plan, such as briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions.   (To facilitate the search for responsive documents, note that HCFA published a Notice of hearing on this matter at 53 Fed. Reg. 45,587 (Nov. 10, 1988).)

66.     From 1985 to the present, all documents relating to administrative proceedings regarding HCFA's refusal to pay the federal portion for certain Arkansas Medicaid reimbursement for prescription drugs in 1989, including briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions. (To facilitate the search for responsive documents, note that the HHS Department Appeals Board issued decisions regarding this matter on Aug. 22, 1991 (Decision No. 1273) and Apr. 29, 1992 (Decision No. 1329).)

67.     From 1985 to the present, all documents relating to an amendment to the Oklahoma State Medicaid plan submitted in October 1987, and revised in March 1988, concerning Oklahoma Medicaid reimbursement for prescription drugs.

68.     From 1985 to the present, all documents relating to administrative proceedings regarding HCFA's decision to disapprove Amendment 87-18 to the Oklahoma State Medicaid

plan including but not limited to briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions. (To facilitate the search for responsive documents, note that HCFA published a Notice of hearing on this matter at 53 Fed. Reg. 38,979 (Oct. 4, 1988).)

69.     From 1985 to the present, all documents relating to an amendment to the Oklahoma State Medicaid plan submitted in April 1989 concerning Oklahoma Medicaid reimbursement for prescription drugs, including all documents relating to administrative proceedings regarding HCFA's refusal to pay the federal portion for certain Oklahoma Medicaid reimbursement for prescription drugs in 1989, such as briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions. (To facilitate the search for responsive documents, note that the HHS Department Appeals Board issued a decision regarding this matter on Aug. 13, 1991 (Decision No. 1271).)

70.     To the extent not requested above, from 1985 to the present, all documents relating to any administrative or judicial proceedings involving actual or threatened action by CMS/HCFA/SRS to disapprove a State Medicaid plan or plan amendment, or to disallow federal financial participation, due to alleged excessive Medicaid reimbursement for prescription drugs.

71.     To the extent not requested above, from 1985 to the present, all documents relating to any administrative or judicial proceedings concerning the appropriateness of AWP as a measure for reimbursement for prescription drugs.

Medicare Reimbursement for Professional Services of Oncologists

72.     Copies of the federal supply schedule for drugs for each year.

73.     All documents relating to setting the Medicare fee schedule payments for professional services for the administration of chemotherapy or other drugs used in connection with treatment of cancer.

74. All documents relating to whether Medicare adequately reimburses oncologists or other doctors for professional services for the administration of chemotherapy or other drugs used in connection with treatment of cancer.

75. All documents relating to the computation of the practice expense component used or considered for use to derive the Medicare physician fee schedule for the administration of chemotherapy or other drugs used in connection with anticancer chemotherapy treatment.

### Home Drug Infusion Therapy and Nebulizer Treatments

76. All documents relating to whether Medicare adequately reimburses providers for the provision of home drug infusion therapy services, including all documents evidencing that Medicare reimbursement for drugs is the means by which providers of professional services associated with home drug infusion therapy are reimbursed for such services.

77. All documents relating to whether Medicare adequately reimburses providers for the provision of home nebulizer treatments, including all documents noting that Medicare reimbursement for drugs constitutes the means of reimbursing providers for professional services associated with home nebulizer treatments.

### HHS Organizational Documents

78. All organizational charts for HHS, HHS Central and Regional Offices, HCFA/CMS, OIG and the Public Health Service.

79. All document retention or destruction policies for HHS, HHS Central and Regional Offices, HCFA/CMS, OIG and the Public Health Service.

80. Documents sufficient to describe the manner by which electronic documents, including e-mails, are preserved or deleted, for HHS, HHS Central and Regional Offices, HCFA/CMS and OIG.

17

81.     Documents sufficient to identify the name and address of all Medicare Carriers and fiscal intermediaries.

82.     Copies of contracts with Medicare Carriers and fiscal intermediaries.

83.     All documents relating to policies, procedures or practices of HHS, HHS Central and Regional Offices, HCFA/CMS or OIG, regarding the preservation or destruction of documents relating to Medicare's or Medicaid's method of reimbursement for prescription drugs.

84.     Documents sufficient to identify all efforts made by HHS, HHS Central and Regional Offices, HCFA/CMS or OIG to preserve documents relating to Medicare's or Medicaid's method of reimbursement for drugs.

85.     Documents sufficient to identify any document responsive to this subpoena that has been deleted, discarded or destroyed.

86.     Documents sufficient to describe the manner in which HHS electronic documents, including e-mails, are preserved or deleted, discarded or destroyed.

CHI99 4191096-1.023560.0042

18