# EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc., and Hospira, Inc.*<br>Civil Action No. 06-11337-PBS | MDL No. 1456<br>Civil Action No. 01-12257-PBS |

## DECLARATION OF KAREN JACKSON

I, Karen Jackson, declare the following to be a true and correct statement of facts:

1. I am Director of the Medicare Contractor Management Group, Center for Medicare Management, within the Centers for Medicare & Medicaid Services (CMS). I have held this position since May 2004. My responsibilities include overall management and evaluation of the Medicare carriers and fiscal intermediaries that serve the Medicare fee-for-service benefit program.

2. I submit this declaration in support of the United States' & Relators' Motion for a Comprehensive Case Management Order. I have reviewed the defendant Abbott's First Set of Requests for Production of Documents and Tangible Things to Plaintiff United States of America. I understand that the defendant is seeking documents from CMS's

Medicare fee-for-service carriers related to Medicare Part B reimbursement of drugs, including the use of Average Wholesale Price (AWP). The defendant has requested that the government produce all responsive documents that were generated from January 1, 1965 to January 31, 2001.

3. CMS currently has eighteen Medicare Carriers. It is my understanding that in 1966, CMS contracted with over 100 private insurance companies to process Medicare fee-for-service claims. There were more than fifty carriers at the beginning of the Medicare program in 1966, with multiple carriers in some states. There has been significant consolidation within the Medicare carrier community since the beginning of the program. In the past 20 years, at least 20 companies have either non-renewed or otherwise lost their Medicare carrier contracts. Under the original Medicare legislation, when a Medicare contractor gave up their contract, CMS selected a replacement fiscal intermediary or carrier from the remaining pool of contractors through a competitive process. The transfer of contract required significant changes in the management and storage of records as new contractors became responsible for claims administration. Because of the expense associated with physical transfer and cataloging of historical information, off-site records storage arrangements were often carried over from the departing contractor to the new contractor, the result being that Medicare claims and pricing information is stored in as many as 100 different locations across the country.

4. CMS has not defined a standard storage medium for records retained by Medicare contractors, so there is tremendous variability in the mode by which records are stored.

2

The technology used to image, index and store records electronically has evolved so much in the last decade that it would be nearly impossible (or tremendously expensive) to restore old records because the equipment used to archive the information has been phased out of service or destroyed. So, while the storage locations are largely known, the means for accessing the information does not exist, either through a standard document cataloging system or through current technology. In order to segregate drug pricing information or information related to individual manufacturers, CMS or contractor employees would have to manually search in each of the storage locations located across the country, through millions of pages of information.

5. In order to collect all of the requested information, CMS will need to survey our Medicare contractors, instruct them to review large quantities of off-site records for potential relevancy, and then instruct them to collect, copy, and produce all responsive documents. If the carriers are required to collect these off-site documents, the burden on the carriers to search for this information will be enormous.

6. CMS contracts with the carriers to provide many different services under the Medicare program. Yet, due to the financial and time resources needed to conduct the requested document production, the capacity of carriers to conduct their operations would be severely diminished during an operation of this size. This would have a significant impact on the Medicare program and Medicare providers and beneficiaries who rely on this vital health care program.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 9/15/2006

Karen Jackson

4