## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) AVERAGE WHOLESALE PRICE ) LITIGATION ) | MDL NO. 1456 Civil Action No. 01-12257-P ?? |
| _____ ) | |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | |

*The City of New York v. Abbott Labs., et al.* )
(S.D.N.Y. No. 04-CV-06054) )
*County of Suffolk v. Abbott Labs., et al.* )
(E.D.N.Y. No. CV-03-229) )
*County of Westchester v. Abbott Labs., et al.* )
(S.D.N.Y. No. 03-CV-6178) )
*County of Rockland v. Abbott Labs., et al.* )
(S.D.N.Y. No. 03-CV-7055) )
*County of Dutchess v. Abbott Labs, et al.* )
(S.D.N.Y. No. 05-CV-06458) )
*County of Putnam v. Abbott Labs, et al.* )
(S.D.N.Y. No. 05-CV-04740) )
*County of Washington v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00408) )
*County of Rensselaer v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00422) )
*County of Albany v. Abbott Labs, et al* )
(N.D.N.Y. No. 05-CV-00425) )
*County of Warren v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00468) )
*County of Greene v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00474) )
*County of Saratoga v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00478) )
*County of Columbia v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00867) )
*Essex County v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00878) )
*County of Chenango v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00354) )
*County of Broome v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00456) )
*County of Onondaga v. Abbott Labs, et al.* )
(N.D.N.Y. No. 05-CV-00088) )

*caption continued on inside front cover*

## BRIEF OF THE ATTORNEY GENERAL OF
## THE STATE OF NEW YORK AS AMICUS CURIAE

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................... . ............... ii

PRELIMINARY STATEMENT ............................... ................ 1

OVERVIEW ............................................ . ............... 2

A.  The Relationship between New York State and the Social Services
    Districts with Respect to Medicaid Fraud Enforcement .................... 2

B.  The Status of Related Litigation in New York State Courts ................ 3

C.  The Desirability of Certifying an Issue to the New York C u t of Appeals ..... 4

ARGUMENT ............................................ . ............... 5

POINT I  -  THE PLAINTIFF COUNTIES STATE A CLAIM  IN DER
             SECTION 145-b OF THE NEW YORK SOCIAL
             SERVICES LAW .......................... . ............... 5

POINT II  -  THE PLAINTIFF COUNTIES HAVE STANDING T'O SUE
             UNDER SECTION 349 OF THE NEW YORK GE NERAL
             BUSINESS LAW ......................... . ............ 12

POINT III  -  THE PLAINTIFF COUNTIES MAY NOT ASSER'  CAUSES OF
             ACTION UNDER SECTIONS 366-b OR 367-a(7)( ) OF THE
             NEW YORK SOCIAL SERVICES LAW, OR SEC TIONS
             515.2(b)(4)-(5) OF THE SOCIAL SERVICES REG JLATIONS ...... 15

CONCLUSION .......................................... . ............... 18

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE**

577 Broadway Real Estate Partners v. Giacinto,
    182 A.D.2d 374 (1st Dep't 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA,
    3 N.Y.3d 200 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

County of Erie v. Abbott Laboratories, Inc.,
    Index No. 2005-2439 (N.Y. Sup. Ct. Erie County Sept. 7, 2006) . . . . . . . . . . . . . . . 11, 12

County of Suffolk v. Abbott Laboratories ("Suffolk I"),
    339 F. Supp. 2d 165 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 13

Goshen v. Mut. Life Ins. Co.,
    98 N.Y.2d 314 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Harvey-Cook v. Steel,
    124 A.D.2d 709 (2d Dep't 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kuriansky v. Baghai-Kermani,
    Index No. 42931/92 (N.Y. Sup. Ct. New York County Sept. 29, 19 8) . . . . . . . . . . . . . 11

Kuriansky v. Pro. Care, Inc.,
    147 Misc. 2d 782 (N.Y. Sup. Ct. Albany County 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Matter of Asman v. Ambach,
    64 N.Y.2d 989 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Matter of Cortlandt Nursing Care Ctr. v. Whalen,
    46 N.Y.2d 979 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Matter of Scanlan v. Buffalo Pub. Sch. Sys.,
    90 N.Y.2d 662, 677 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Pelaez v. Seide,
    2 N.Y.3d 186, 201 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

People v. Brooklyn Psychosocial Rehabilitation. Institute ("BPRI"),
    185 A.D.2d 230 (2d Dep't 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES (cont'd)**

**CASES**                                                               **PAGE**

People v. Pharmacia Corp.,
Index No. 905-04 (N.Y. Sup. Ct. Albany County June 1, 2004) . . . . . . . . . . . . . . . . . . 10

People v. SmithKlineBeecham Corp.,
Index No. 905-03 (N.Y. Sup. Ct. Albany County Aug. 10, 2006) . . . . . . . . . . . . . . . 3, 4

Post v. 120 East End Ave. Corp.,
62 N.Y.2d 19 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 7

Sheehy v. Big Flats Cmty. Day, Inc.,
73 N.Y.2d 629 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State v. New York Oncology Hematology, P.C. and U.S. Oncology, Inc.,
Index No. 5489/04 (N.Y. Sup. Ct. Albany County Aug. 24, 2006) . . . . . . . . . . . . . . . 12

**FEDERAL REGULATIONS**

42 C.F.R. § 455.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**NEW YORK STATUTES**

New York Executive Law § 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 17

New York Executive Law § 63-c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York General Business Law § 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

New York Social Services Law § 61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

New York Social Services Law § 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

New York Social Services Law § 145-b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

New York Social Services Law § 363-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

New York Social Services Law § 365 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14-15

iii

## TABLE OF AUTHORITIES (cont'd)

**NEW YORK STATUTES**                                                               **PAGE**

New York Social Services Law § 366-b .............................. ............... 1, 16

New York Social Services Law § 367-a .............................. ........... 1, 16, 17

New York Social Services Law § 368-a .............................. ................ 15

## NEW YORK RULES AND REGULATIONS

18 N.Y.C.R.R. part 515 ............................................... ................ 16

18 N.Y.C.R.R. § 515.2 ............................................. ............... 1, 16

18 N.Y.C.R.R. § 515.3 ............................................................ ................ 2

18 N.Y.C.R.R. § 518.5 ............................................... ............... 2, 17

22 N.Y.C.R.R. § 500.27 ............................................ ................ 4

## MISCELLANEOUS

Act of April 12, 2005, ch. 58, part C, § 5, N.Y. Laws 2043 ............................. ................ 3

Act of Aug. 6, 1975, ch. 659, 1975 McKinney's N.Y. Laws 1017. ........ ................ 8

Governor's Program Bill Memorandum (July 16, 1975)
reprinted in Governors Bill Jacket for ch. 659 (1975) .......... .............. 7-8

Merriam Webster's Collegiate Dictionary (10th ed. 1994) ............. ............... 6

Statutes § 321, 1 McKinney's Cons. Laws of N.Y. (1971) ............. ................ 7

## PRELIMINARY STATEMENT

The Attorney General of the State of New York submits this brie: as amicus curiae in

response to this Court's letter dated June 30, 2006, inviting this Office to comment on three

issues of New York law:

(1) Whether the statutory language "on behalf of himself or o ners" allows the plaintiffs to state a claim under N.Y. Soc. Serv. Law § 14: -b against the defendant pharmaceutical companies, which did not "obta n payment from public funds."

(2) Whether the plaintiffs have standing to sue under N.Y. Ge t. Bus. Law § 349 in light of the New York Court of Appeals' decision i Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA, Inc., 818 N.E.2d 1140, 3 N.Y.3d 200, 785 N.Y.S.2d 399 (2004) (holding that "third party payers cannot recover derivatively").

(3) Whether the plaintiffs may assert causes of action under N Y Soc. Serv. Law §§ 366-b, 367-a(7)(d) and N.Y.C.R.R. § 515.2(b)(4)-(5), either as public entities or parties with implied rights of action.

Additionally, the Court has requested this Office to provide "a bett :r explanation of the

relationship between the State of New York and the social services distric : . . . with respect to

enforcement of [Medicaid fraud]; the status of related litigation in the state courts of New York;

and the desirability of certifying any of the issues to the New York Court c Appeals."

For the reasons given below, we believe that the plaintiff counties have properly stated a

claim against defendants under New York Social Services Law ("N.Y. Soc Serv. Law") § 145-b,

and have standing to sue under New York General Business Law ("N.Y. G n Bus. Law") § 349.

In our view, however, the counties may not assert causes of action under N w York Social

Services Law §§ 366-b, 367-a(7)(d), or 18 New York Codes, Rules, and Re gulations

("N.Y.C.R.R.") § 515.2(b)(4)-(5), or under related provisions authorizing tl New York State

Department of Health — but not the local social services districts — to seel civil recoveries.

Before turning to those points, we provide an overview explainir g the relationship

between New York State and the local districts, and responding to the other background

questions raised in the Court's letter.

## OVERVIEW

### A.    The Relationship between New York State and the Soc al Services Districts with Respect to Medicaid Fraud Enforcement

The Department of Health ("DOH") has been designated "as the single state agency to

supervise the administration" of the Medicaid program in New York State . N.Y. Soc. Serv. Law

§ 363-a(1).  DOH has authority to impose sanctions for unacceptable practices relating to

Medicaid, 18 N.Y.C.R.R. § 515.3, and to initiate civil actions to recover Medicaid overpayments,

N.Y. Soc. Serv. Law § 145-b(2), 18 N.Y.C.R.R. § 518.5(c).  Recently enacted legislation created

a new Office of Medicaid Inspector General within DOH, to coordinate DOH enforcement

activities and conduct investigations of Medicaid fraud.  Pursuant to federal law, DOH is

required to refer allegations of suspected fraud and abuse by Medicaid providers to the Medicaid

Fraud Control Unit within the Office of the Attorney General for investigation and possible civil

or criminal prosecution.  42 C.F.R. § 455.15(a).  Additionally, the Attorney General may bring

civil actions to remedy Medicaid fraud pursuant to New York Executive Law ("N.Y. Exec.

Law") § 63(12).

New York City and each county in New York State outside of New York City have been

constituted as local social services districts.  N.Y. Soc. Serv. Law § 61.  "Subject to the

supervision of [DOH]," each such district "shall furnish medical assistance to the persons eligible

2

therefor who reside in its territory." Id. § 365(1). The counties may com nence civil actions to recover damages for Medicaid fraud. See id. § 145-b(2) ("the local social services district or the state shall have a right to recover civil damages"). However, the countie may retain a share of any proceeds from such actions only if DOH has approved the litigation as a "demonstration program[]" under Part C, § 5 of the Act of April 12, 2005, ch. 58, N.Y. L ws 2043, at 2118— as it has with the counties' litigation pending before this Court, see Cicala D cl. Exh. B.

As with any lawsuit by a city or county to recover money that was "without right obtained," where a county brings a Medicaid fraud action seeking damage s, New York State may, in its discretion, have "the entire cause of action . . . transferred to ar d become[] absolutely vested in the state." N.Y. Exec. Law § 63-c(1)-(2).

**B.     The Status of Related Litigation in New York State Courts**

In February 2003, the People of the State of New York ("State") cc nmenced three separate actions alleging AWP fraud in Supreme Court, Albany County ag inst Pharmacia Corp. (Index No. 905-04); GlaxoSmithKline, PLC (Index No. 905-03); and Aver is Pharmaceuticals, Inc. (Index No. 1150-03).

On August 10, 2006, the State and GlaxoSmithKline ("GSK") enter ed into a consent order and judgment, which, in exchange for certain consideration, released GSK from Medicaid-related AWP fraud claims relating to the drugs Zofran, Kytril, and Amoxil. Consent Order and Judgment ¶ 8, People v. SmithKlineBeecham Corp., Index No. 905-03 (N.Y. Sup. Ct. Albany County Aug. 10, 2006). The consent order further discharged GSK "from a y obligation to pay Medicaid-related restitution, damages, and/or any fine or penalty to . . . the State of New York or

3

any of its counties or other subdivisions" for the three aforementioned di ips. Id.

The State continues to litigate its AWP fraud actions against Pha macia and Aventis.

## C.    The Desirability of Certifying an Issue to the New Yor Court of Appeals

The New York Court of Appeals considers requests for certificati n only from "the

Supreme Court of the United States, any United States Court of Appeals, or a court of last resort

of any other state." 22 N.Y.C.R.R. § 500.27(a). The Court of Appeals w ll not accept

certification from a federal district court.

4

## ARGUMENT

## POINT I

## THE PLAINTIFF COUNTIES STATE A CLAIM UNDER S ECTION 145-b OF THE NEW YORK SOCIAL SERVICES LAW

Section 145-b of the New York Social Services Law provides for :reble damages for

fraudulently inducing the payment of public health program funds.[1] Sect on 145-b "is a remedial

sanction enforceable by civil proceedings." Harvey-Cook v. Steel, 124 A D.2d 709, 710 (2d

Dep't 1986); see also Kuriansky v. Pro. Care, Inc., 147 Misc. 2d 782, 79; (N.Y. Sup. Ct. Albany

County 1990) ("Social Services Law § 145-b is . . . remedial"). As New 'crk's highest court has

frequently explained, a statute, such as this one, that is "remedial in natur . . . should be liberally

construed to spread its beneficial effects as widely as possible." Post v. 1 0 East End Ave.

---

[1]   Section 145-b(1) provides in relevant part:

> (a) It shall be unlawful for any person, firm or corporation l n(wingly by
> means of a false statement or representation, or by deliberai : concealment
> of any material fact, or other fraudulent scheme or device, c a behalf of
> himself or others, to attempt to obtain or to obtain payment fc m public
> funds for services or supplies furnished or purportedly furni ;hed pursuant
> to this chapter.

> (b) For purposes of this section, "statement or representatio; " ncludes, but
> is not limited to: . . . an acknowledgment, certification, clai 1, ratification
> or report of data which serves as the basis for a claim or a ra e of payment,
> financial information whether in a cost report or otherwise . . .

> (c) For purposes of this section, a person, firm or corporatio: l as
> attempted to obtain or has obtained public funds when any p ir ion of the
> funds from which payment was attempted or obtained are pu il c funds, or
> any public funds are used to reimburse or make prospective ; a; ment to an
> entity from which payment was attempted or obtained.

N.Y. Soc. Serv. Law § 145-b(1)(a)-(c).

5

Corp., 62 N.Y.2d 19, 24 (1984); see also Matter of Asman v. Ambach, 6 N.Y.2d 989, 990
(1985) (same).

In County of Suffolk v. Abbott Laboratories, 339 F. Supp. 2d 165 (D. Mass. 2004)
("Suffolk I"), this Court held that Suffolk County had "assert[ed] a colorable claim under
[Section 145-b] with respect to the alleged AWP fraud." Id. at 180. Defendants nonetheless
contend that plaintiffs here have failed to state a Section 145-b claim, arg ing that "[s]ince drug
manufacturers do not obtain payment from the Medicaid program for drugs, they cannot be liable
under the statute." Defs'. Joint Mem. of Law, dated March 3, 2006, ("De . Mem.") at 22. That
argument fails because it is contrary both to Section 145-b's text and to its remedial purpose.

The statute expressly defines a "statement or representation" action able under Section
145-b to include a "report of data which serves as the basis for . . . a rate o payment," N.Y. Soc.
Serv. Law § 145-b(1)(b), such as the pricing data reported here. It also provides for recovery
against any party who makes a fraudulent statement to obtain payment from public funds "on
behalf of himself or others." Id. § 145-b(1)(a). To act on another's "behal " means to act in his
"interest" or "benefit." Merriam Webster's Collegiate Dictionary 103 (10th ed. 1994). As this
Court previously noted, defendants here allegedly made false statements tc o tain payment "'on
behalf of' providers." Suffolk I, 339 F. Supp. 2d at 179. The plaintiff cou ties therefore have
stated a viable claim under Section 145-b.

Defendants' focus on the statutory term "obtain" is unavailing. Det Mem. at 22.
Defendants do "obtain" public funds, under the broad definition of that term set forth in Section
145-b(1)(c). Pursuant to that provision, a party obtains public funds if it receives payment from
any entity that is reimbursed from such funds. See N.Y. Soc. Serv. Law § 145-b(1)(c) ("For

6

purposes of this section, a person . . . has obtained public funds when . . any public funds are used to reimburse or make prospective payments to an entity from which payment was . . . obtained."). Here, plaintiffs allege that "public funds were used to reimburse providers, from whom Defendants obtained payment." Suffolk I, 339 F. Supp. 2d at 179 Thus, defendants have "obtain[ed]" public funds within the meaning of Section 145-b.

Defendants' interpretation of Section 145-b also must be rejected because it is incompatible with the statute's remedial purpose. As noted, remedial statutes, such as Section 145-b, must be given a liberal construction. Post, 62 N.Y.2d at 24; see al o 577 Broadway Real Estate Partners v. Giacinto, 182 A.D.2d 374, 375 (1st Dep't 1992) ("As a remedial act, the statute is subject to liberal construction to advance the remedy."). "A liberal construction of [remedial] statutes is one which is in the interest of those whose rights are to be protected, and if a case is within the beneficial intention of a remedial act it is deemed within the statute, though actually it is not within the letter of the law." Statutes § 321, 1 McKinney's Cons. Laws of N.Y. at 491 (1971). Accordingly, courts must reject any interpretation of a remedial statute "that vitiates its remedial purpose and leads to unreasonable and potentially unjust consequences." Matter of Scanlan v. Buffalo Pub. Sch. Sys., 90 N.Y.2d 662, 677 (1997) (internal quotation marks omitted).

The remedial purpose of Section 145-b, as set forth in its legislative history, is "[t]o create a right on behalf of the State to sue for damages in cases of fraud or misrepresentation in connection with medicaid reimbursement." Governor's Program Bill Memorandum (July 16,

1975), at 1, reprinted in Governors Bill Jacket for ch. 659 (1975).[2] To g  e effect to that purpose, the statute must be construed to reach the AWP scheme alleged here. D fendants allegedly have made "fraudulent statement[s] regarding AWP in order to get a higher re mbursement rate for providers who purchase [their] drugs." Suffolk I, 339 F. Supp. 2d at 179 That conduct plainly falls within the statutory purpose of counteracting Medicaid fraud.

From the State's perspective, it is of no consequence whether the  a ty making fraudulent representations is paid directly by the Medicaid program (which defendan ts concede would be actionable under Section 145-b), or induces overpayment to others (whic efendants argue is not actionable). In both events, the injury to the Medicaid program — an  t ie public fisc that finances it — is the same. Medicaid fraud is no less damaging when the  l-gotten funds are paid to third-parties.[3]

Defendants rely heavily on Section 145-b's legislative history, arg in g that because it references fraud by Medicaid providers, only providers may be held liable under the statute. Def. Mem. at 23. Medicaid fraud is indeed commonly committed by providers insofar as providers often commit the final overt act to carry out such fraud, but nothing in the e islative history states that fraud by others cannot result in Section 145-b liability. To the contrary, the legislative

---

[2]     The statutory purpose also is reflected in the title of the legislation hat established Section 145-b: "An Act to amend the social services law, in relatio to interest and penalties for false statements or misrepresentations in connection v ith medicaid reimbursement." Act of Aug. 6, 1975, ch. 659, 1975 McKinney's I.Y. Laws 1017.

[3]     Although defendants are not paid directly from the Medicaid progr m, they nonetheless profit from the AWP scheme alleged here. Their market share is in roased when providers select their drugs over competitors' because of fraudulent y inflated reimbursement rates. Thus, defendants have the same incentive as Medicaid providers do to defraud the Medicaid program — economic benefit.

8

purpose of sanctioning misrepresentations "in connection with medicaid reimbursement" strongly suggests that the statute is intended to reach all fraudulent conduct targeting the Medicaid program.[4]

As New York's highest court made clear in Scanlan, where a remedial statute's legislative history contains no clear and unambiguous intent that it be narrowly interpreted, the statutory language is to be construed broadly to spread its beneficial effects as widely as possible. In Scanlan, the Court of Appeals faced the question whether the petitioners — part-time and substitute teachers — had sufficiently demonstrated eligibility for "retroactive" membership in the state Teachers Retirement System, which could result in higher pension benefits. The legislative history of the applicable statute stated that retroactive membership was to be conditioned on the satisfaction of "stringent criteria." 90 N.Y.2d at 675-7 (internal quotation marks omitted). Yet the teachers in Scanlan "essentially submitted nothing more than their own statements that they were eligible." Id. at 675.

Observing that "[r]emedial statutes, of course, should be construed broadly so as to effectuate their purpose," id. at 676, the court held that the teachers' statements alone could suffice to demonstrate eligibility. Id. at 676-78. That interpretation of the retroactive membership statute, the court explained, "better comports with the statute's over-all purpose and the policy behind its enactment." Id. at 676.

Likewise, here, interpreting Section 145-b to reach the alleged AWP scheme better comports with the statute's remedial purposes and underlying policies. And nothing in Section

---

[4]     The Legislature's intent to reach all Medicaid fraud most clearly is seen in the text of Section 145-b itself, which nowhere limits liability to Medicaid providers.

145-b's legislative history suggests that the Legislature intended to place AWP fraud outside the statute's reach. The mere fact that the legislative history refers to the most common type of Medicaid fraud — fraud carried out by providers — does not suggest that the Legislature viewed other types of fraud as acceptable.

Precedent also supports a broad interpretation of Section 145-b. The sole decision by a New York State appellate court that addresses the question whether a party must receive public funds directly to be liable under Section 145-b is People v. Brooklyn Psychosocial Rehabilitation Institute, 185 A.D.2d 230 (2d Dep't 1992) ("BPRI"). There, the Appellate Division held that the individual defendant could be held personally liable where public funds were paid not to him directly but rather to entities controlled by him and his family members. Personal liability was appropriate, the court explained, because, inter alia, "this fraud inured to the benefit of [the defendant] and his family." Id. at 234.

Three New York courts of original jurisdiction also have addressed the question whether parties must receive direct payment of public funds to be liable under Section 145-b. Two of them held that direct receipt of public funds is not a predicate to liability; one erroneously held to the contrary.

The lone decision requiring receipt of public funds for Section 145-b liability was issued in the pending AWP fraud actions brought by the State, People v. Pharmacia Corp., Index No. 905-04, Slip Op. at 10 (N.Y. Sup. Ct. Albany County June 1, 2004). The Pharmacia court offered virtually no analysis to explain its ruling. Significantly, the court made no attempt to reconcile its conclusion with the "on behalf of . . . others" provision, or with the definition of "obtain" set forth in Section 145-b(1)(c). The sole authority cited is BPRI — which, as noted, in

10

fact shows that a person may be liable under Section 145-b if Medicaid ı aıd inures to his benefit.

A better reasoned decision is <u>Kuriansky v. Baghai-Kermani</u>, Inde : No. 42931/92 (N.Y. Sup. Ct. New York County Sept. 29, 1998), which squarely rejected the ( el endant's "argu[ment] that he is not liable under Social Service Law § 145-b since he did not rei eive the Medicaid payments." <u>Id.</u> at 3. As the court explained, "the wording ('on behalf of uinself or others') and purpose of Social Service Law § 145-b clearly encompass defendant here  "he State loses the same amount of money, and the Medicaid system suffers the same level o ' a buse, whether the payments are received by the perpetrator of the fraud or by a third party." <u>Ić.</u> at 4.

To the same effect is <u>County of Erie v. Abbott Laboratories, Inc.</u>, I ıcɛx No. 2005-2439 (N.Y. Sup. Ct. Erie County Sept. 7, 2006), the most recent decision addres siɪg the reach of Section 145-b. Like this case, <u>Erie</u> is an AWP fraud case brought by a cou ıt'/ against pharmaceutical companies. Defendants there argued that Erie County's Sɛ :t on 145-b claim should be dismissed under <u>Pharamacia.</u> The court disagreed, explaining th ıt the county had alleged that "defendants made fraudulent AWP statements 'on behalf of' iı :eɪmediaries to induce them to sell more of defendants' drugs." <u>Id.</u> at 23 (internal quotation mark. oɪnitted). The court further noted that the broad definition of "obtain" set forth in Section 145-ɹ ˈl )(c) "would cover the situation of pharmaceutical companies obtaining payment from pharmaˈ iɛ 3, that are then reimbursed through public funds." <u>Id.</u> The court also expressly rejected thɛ defendants'

11

argument — advanced by defendants here as well — that the statute's legislative history

precluded enforcement against pharmaceutical companies.  Id.[5]

## POINT II

### THE PLAINTIFF COUNTIES HAVE STANDING TO SUE UNDER
### SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW

Section 349 of the New York General Business Law provides for monetary and injunctive

relief for "[d]eceptive acts or practices in the conduct of any business . . . in this state." N.Y.

Gen. Bus. Law § 349(a).[6] "This legislation, much like its federal counterpart, the Federal Trade

_____

[5]    Although few reported decisions reflect it, New York State does in fact enforce Section
145-b against parties other than Medicaid providers. For example in State v. New York
Oncology Hematology, P.C. and U.S. Oncology, Inc., Index No. 5839/04 (N.Y. Sup. Ct.
Albany County Aug. 24, 2006), the State sued a physician practice group and its
corporate billing services manager for overpayment on claims that had been prepared by
the billing manager.  The matter was settled upon payment by the billing management
company.

[6]    Section 349 provides in relevant part:

> (a) Deceptive acts or practices in the conduct of any business, trade or
> commerce or in the furnishing of any service in this state are hereby
> declared unlawful.
>
> * * *
>
> (h) In addition to the right of action granted to the attorney general
> pursuant to this section, any person who has been injured by reason of any
> violation of this section may bring an action in his own name to enjoin
> such unlawful act or practice, an action to recover his actual damages or
> fifty dollars, whichever is greater, or both such actions. The court may, in
> its discretion, increase the award of damages to an amount not to exceed
> three times the actual damages up to one thousand dollars, if the court
> finds the defendant willfully or knowingly violated this section  The court
> may award reasonable attorney's fees to a prevailing plaintiff

Commission Act, is intentionally broad, applying to virtually all economic activity. The statute seeks to secure an honest market place where trust, and not deception, prevails." Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 323-24 (2002) (internal quotation marks and citations omitted).

Defendants have argued that the plaintiff counties lack standing to bring a Section 349 claim because their injuries putatively are derivative of the injury to the State. Def. Mem. at 14-16. In Suffolk I, this Court declined to rule on that defense, stating that it "may revisit the issue" after the Court of Appeals' decision in a then-pending case, Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris USA, 3 N.Y.3d 200 (2004). Suffolk I, 339 F. Supp. 2d at 182. The Court of Appeals has since handed down its decision in Blue Cross, and nothing therein suggests that the plaintiff counties lack standing to bring a Section 349 claim here. To the contrary, the counties have standing under Section 349 because they were directly injured by reason of a deceptive practice.

Blue Cross held that Section 349 did not "abrogate the common law" rule that "an insurer or other third-party payer of medical expenditures may not recover derivatively for injuries suffered by its insured. Rather, the insurer's sole remedy is in equitable subrogation." 3 N.Y.3d at 206. Because the injury asserted by the plaintiff insurers in Blue Cross was "derivative" or "indirect," the Court determined that the plaintiffs lacked standing under Section 349. Id. at 207-08.

The deceptive practice alleged in Blue Cross was that tobacco companies, "knowing that smoking causes cancer, misrepresented the dangers of smoking and engaged in a campaign to encourage consumers to smoke." Id. at 206. The alleged injury to the insurers was that they bore the medical costs incurred by smokers who became ill. Id. That injury was deemed "indirect,"

13

and thus not cognizable under Section 349, because it resulted not from the deceptive act itself but rather from a prior injury sustained by smokers. As the court explain d, "[a]n injury is indirect or derivative when the loss arises solely as a result of injuries sus a ned by another party. . . . [Plaintiff's] claims are . . . indirect because the losses it experienced rose wholly as a result of smoking related illnesses suffered by [its] subscribers." Id. at 207.

Blue Cross is no bar to the counties' standing here because, unlike in Blue Cross, the counties' injuries result directly from the alleged deceptive practice. The lefendant pharmaceutical companies allegedly reported false pricing data in order to in flate Medicaid reimbursement rates. The principal injury inflicted by that deceptive act i: the overpayment of Medicaid reimbursement, and it is sustained directly by the entities that pa / such reimbursement — i.e., federal, state, and local governments. This case therefore is not lik Hlue Cross, where the plaintiff insurers' injuries resulted from antecedent injuries to third par ies. In Blue Cross, a deceptive act injured smokers by making them ill, and those illnesses in tu: 1 resulted in monetary damages to the plaintiffs; here, the damages are caused directly by the dece it ve act.

Defendants do not dispute that the State, as distinct from the counti s, is directly injured by the alleged AWP fraud. Rather, defendants' argument is that the counti( s' damages are "entirely derivative of the alleged damages attributed to New York State." Def. Mem. 15. But the counties are damaged in precisely the same respect as is the State by AV F fraud — they are made to pay inflated rates for Medicaid reimbursement. The counties' oblig ation to pay such reimbursement, at rates determined by AWPs, is not derivative of the State' cbligation. Rather, each county, as a local social services district, has an independent duty to "f nish medical assistance to the persons eligible therefor who reside in its territory." N.Y. S oc. Serv. Law §

14

365(1)(a); see also N.Y. Soc. Serv. Law § 62(1) ("each public welfare di trict shall be

responsible for the assistance and care of any person who resides or is fo n l in its territory and

who is in need of public assistance"); N.Y. Soc. Serv. Law § 368-a (prov li ig for partial state

reimbursement of "the expenditures made by social services districts for 1 ic dical assistance for

needy persons").

Because the counties, like the State, must bear a portion of the cos s of Medicaid

reimbursement, the counties are directly injured by the alleged AWP sche nc, and thus have

standing to sue under Section 349 of the New York General Business Law

## POINT III

## THE PLAINTIFF COUNTIES MAY NOT ASSERT CAUSES OF ACTION UNDER SECTIONS 366-b OR 367-a(7)(d) OF THE NEW YO. RK SOCIAL SERVICES LAW, OR SECTIONS 515.2(b)(4)-(5) OF THE SO CIAL SERVICES REGULATIONS

Neither Sections 366-b or 367-a of the Social Services Law or Sect on 515.2 of the Social

Services regulations sets forth a cause of action that may be asserted by the counties to recover

for the AWP scheme alleged here.[7]

---

[7]     Point III of this brief sets forth the position of both the Office of the . tt orney General and
DOH. Since DOH is the agency charged with administering the prov s ons at issue in
Point III, the position stated herein is entitled to substantial deference fi om this Court.
See Matter of Cortlandt Nursing Care Ctr. v. Whalen, 46 N.Y.2d 979  9 80 (1979).

15

Section 366-b makes it a class A misdemeanor to fraudulently ob a n medical assistance. N.Y. Soc. Serv. Law § 366-b(1). A criminal provision, it cannot be appl ed by the counties in this civil proceeding.[8]

Section 367-a(7)(d) concerns rebate agreements entered into betw en drug manufacturers and the federal government or DOH pursuant to Section 1927 of the fede al Social Security Act. It does not create any cause of action to recover damages or obtain other 1 l ef. Similarly, Sections 515.2(b)(4)-(5), which make it an "unacceptable practice" to cor vert medical assistance or pay bribes or kickbacks, also do not create any cause of action, either e plicitly or implicitly, that may be asserted by the counties here. To permit the counties to bring a ch an action would be inconsistent with the regulatory scheme, which empowers DOH, not th counties, to bring enforcement actions against unacceptable practices. Cf. Sheehy v. Big Fla s Cmty. Day, Inc., 73 N.Y.2d 629, 635-36 (1989) (where Legislature has explicitly provided for n forcement, courts ordinarily should not find that an additional private right of action was imp ied); Pelaez v. Seide, 2 N.Y.3d 186, 201 (2004) (same).[9]

The social services laws expressly authorize "the department" — i. ., DOH — to bring civil actions to recover overpayments by the Medicaid program, including v rpayments

---

[8]    The Attorney General — but not the counties — may bring a civil a ti n for injunctive and other relief for violations of Section 366-b(1) pursuant to N.Y. 1 x c. Law § 63(12), which authorizes the Attorney General to bring an action to remedy n / "persistent fraud or illegality" in the conduct of business.

[9]    Pursuant to its authority to approve "demonstration programs" under S ction 5, Part C, Chapter 58 of the Laws of 2005, DOH has authorized certain countie 1 to pursue Medicaid overpayments by undertaking audits under 18 N.Y.C.R.R. part 515.  Absent such specific DOH authorization, however, the counties have no general authority o act under part 515. DOH has not authorized the plaintiff counties to enforce Part 5 5 here.

16

resulting from unacceptable practices. See, e.g., N.Y. Soc. Serv. Law § 367-a(10)(d) ("The department may bring and maintain an action . . . for any claimed overpayments made to the provider."); 18 N.Y.C.R.R. § 518.5(c) ("The department reserves the right to initiate or participate in civil proceedings, including actions at law or in equity to re over any overpayment . . . ."). However, those causes of action are not available to the counties. Where the social services law vests authority to act in both the State and the local districts, t does so explicitly. See, e.g., N.Y. Soc. Serv. Law § 145-b(2) ("the local social services distri t or the state shall have a right to recover civil damages"). Where, in contrast, the law expre sly authorizes only "the department" to take some action, the local districts may not act in DOH's stead, except to the extent that DOH has delegated its authority to the districts. No delegat o 1 of the authority to pursue recoveries under Sections 367-a(10)(d) and 518.5(c), or any other s atute or regulation, has occurred here.[10]

---

[10]    Included in the record before this Court is a letter dated November 1 2005, from Kathryn Kuhmerker, then a Deputy Commissioner at DOH, purporting to "d(putize[]" the firm of Kirby McInerney & Squire, LLP, to "represent[] the State of New Y rk's interests for the purposes of" the pending litigation. Cicala Decl. Exh. C. Whatever may be the effect of that letter, it was not intended to mean, and does not mean, that Kirb / McInerny & Squire may bring on behalf of the counties any AWP fraud claim belonging to DOH or the State of New York. Pursuant to N.Y. Executive Law §§ 63(1) and 63(7), re Attorney General alone has "charge and control of all the legal business of the departmr nts and bureaus of the state," and alone (with the governor's approval) is empowered to retain private attorneys to represent the State and to fix their compensation. The A tc rney General has not engaged private counsel to litigate AWP fraud claims on behalf c New York State or its departments, and accordingly all authority to bring such claims rel ains vested in this Office.

17

## CONCLUSION

For the foregoing reasons, this Court should hold that plaintiffs ha 'e stated a claim

against defendants under Section 145-b of the New York Social Services . a w; that plaintiffs

have standing to sue under Section 349 of the New York General Busines: Law; and that

plaintiffs may not assert causes of action under Sections 366-b or 367-a(7) d of the New York

Social Services Law, or Sections 515.2(b)(4)-(5) of Title 18 of the New Y k Codes, Rules, and

Regulations.

Dated: New York, New York
       September 15, 2006

Respectfully submitte(

ELIOT SPITZER
Attorney General of th
  State of New York
Attorney for Amicus C ir ae

By:

GREGORY SILBI R T
Assistant Solicitor 3 neral
120 Broadway, 25( 1 Floor
New York, New Y ir : 10271
(212) 416-6274

CAITLIN J. HALLIGAN
Solicitor General

GREGORY SILBERT
Assistant Solicitor General

of Counsel

18