# EXHIBIT 1



12048920
Aug 10 2006
10:12PM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Juddge Patti B. Saris |
| *State of Nevada v. Abbott Labs., Inc. et al.*, CA No. 02-CV-00260-ECR (Nevada I), and | |
| *State of Nevada v. American Home Products, et al.,* CA No. 02-CV-12086-PBS (Nevada II) | |

**MEMORANDUM OF LAW IN OPPOSITION TO NEVADA'S
MOTION FOR A PROTECTIVE ORDER RELATING
TO DEFENDANTS' DEPOSITION SUBPOENA TO MGM MIRAGE**

Defendants in the above-captioned matters respectfully submit this memorandum of law in opposition to The State Of Nevada's Motion For Protective Order Relating To Defendants' Deposition Subpoena To MGM Mirage, filed with this Court on August 8, 2006.[1]

**PRELIMINARY STATEMENT**

The State of Nevada ("Plaintiff") moves here for a protective order to preclude the deposition of MGM Mirage, a non-party to these litigations. MGM Mirage has neither moved for a protective order nor joined Plaintiff's motion. In fact, MGM Mirage has worked with Defendants to proceed with the deposition at issue as efficiently and expeditiously as possible.

Plaintiff primarily complains that the MGM Mirage deposition was scheduled after fact discovery closed, and therefore it should be not be allowed to go forward. Plaintiff's argument ignores the fact that Plaintiff created this situation. By rejecting Defendants' proposal to stipulate to the authenticity and admissibility of certain documents produced by five non-parties, including Great Falls Clinic, MGM Mirage, the Minnesota Multi-State Contracting Alliance for Pharmacy, Snyders Drug Stores, and Walgreens, Plaintiff has made it necessary for Defendants to establish the authenticity and admissibility of those documents by other means.[2] A stipulation would have saved MGM Mirage, the other non-parties, Plaintiff, and Defendants the time and cost of an otherwise needless deposition.

---

[1] To the extent that Plaintiff seeks a protective order that prevents any additional depositions of non-parties from being taken, including any that have not yet been scheduled, *see* Plaint. Mem. at 3, fn 2, this brief is filed in opposition to that aspect of Plaintiff's motion as well. Additionally, although Plaintiff has included only the Nevada cases in the caption of its motion, a ruling with respect to all non-parties may also impact the Montana litigation.

[2] In addition to developing the necessary factual record with respect to the authenticity and admissibility of documents produced by non-parties to these litigations through depositions, documents that qualify as business records under Fed. R. Evid. 803(6) may also be self-authenticated, under Fed. R. Evid. 902(11), through the use of a declaration of a custodian or other qualified person.

1

Additionally, Plaintiff's effort to bar this deposition as untimely is inconsistent with the fact that Plaintiff has scheduled and taken Fed. R. Civ. P. 30(b)(6) depositions of individual Defendant's corporate designees after the March 31, 2006 discovery cutoff. Like those depositions, the MGM Mirage deposition was noticed well before fact discovery closed; it was simply scheduled outside of the discovery period. Plaintiff should not be permitted to "game" the process by relying on its unreasonableness to preclude timely noticed legitimate discovery.

## FACTUAL BACKGROUND

On November 14, 2005, Defendants served subpoenas pursuant to Fed. R. Civ. P. 45 for the production of documents on Mandalay Bay Resort & Casino; MGM Grand Hotel and Casino; and The Mirage Casino and Hotel, and on January 10, 2006, Defendants served subpoenas pursuant to Rules 45 and 30(b)(6) of the Fed. R. Civ. P. noticing depositions on these companies. Lonergan Decl., ¶ 3, Ex. 1.[3] All six subpoenas were served well before fact discovery ended on March 31, 2006. *See* Case Management Order No. 23. Through April 11, 2006, MGM Mirage, the corporate parent of Mandalay Bay Resort & Casino; MGM Grand Hotel and Casino; and The Mirage Casino and Hotel, produced documents and electronic data in response to these subpoenas. Lonergan Decl., ¶ 4, Ex. 2.

On May 3, 2006, Defendants provided Plaintiff with copies of documents produced by MGM Mirage pursuant to the above-referenced subpoenas. Lonergan Decl., ¶ 5, Ex. 3. On May 12, 2006, Defendants attempted to begin discussions with Plaintiff regarding a stipulation as to the authenticity of the documents produced by MGM Mirage and other non-parties to these litigations. Lonergan Decl., ¶ 6, Ex. 4.

---

[3] Plaintiff's claim that Defendants served subpoenas on only Mandalay Bay Resort & Casino (Nevada's Motion For a Protective Order at p. 2) is contradicted by the record.

2

In furtherance of its effort to reach a mutually agreeable stipulation with respect to documents and data produced by certain non-parties, on June 29, 2006, Defendants provided Plaintiff with a Proposed Stipulation Regarding Authentication and Admissibility of Certain Non-Party Documents, which specifically identified each of the documents and/or data produced by the non-parties that were the subject of the proposed stipulation. Lonergan Decl., ¶ 7, Ex. 5. Three weeks later, Plaintiff rejected Defendants' proposed stipulation. Lonergan Decl., ¶ 8, Ex. 6 ("The States cannot stipulate to the authenticity and admissibility of these documents."). Furthermore, with respect to the MGM Mirage documents that were the subject of the proposed stipulation, Plaintiff raised concerns regarding one document (*i.e.,* MGMM000476 - MGMM000508). *Id.*

Because Plaintiff's refusal to stipulate to the authenticity and admissibility of the documents left Defendants with no choice but to obtain the evidence with respect to the authenticity and admissibility of the documents produced by MGM Mirage, on July 25, 2006, Defendants informed Plaintiff that the deposition of an MGM Mirage designee had been scheduled for August 15, 2006. Lonergan Decl., ¶ 9, Exs. 7, 8.

Finally, even after scheduling the MGM Mirage deposition, Defendants attempted to work with Plaintiff to reach a mutually-agreeable stipulation as to the authenticity and admissibility of the non-party documents. Indeed, during an August 8, 2006 meet and confer, Defendants offered to amend the proposed stipulation and to exclude from the set of MGM documents identified in the June 29, 2006 proposed stipulation the one MGM Mirage document for which Plaintiff had identified concerns. Lonergan Decl., ¶ 10, Ex. 9. Plaintiff rejected this proposal, offered no counterproposal, and advised that it would seek a protective order. *Id.*[4]

---

[4] With respect to Defendants' August 8, 2006, proposal to exclude the MGM Mirage document from the proposed stipulation, in an August 9, 2006, e-mail, Plaintiff's counsel stated that Defendants "had not asked to

3

**ARGUMENT**

Plaintiff's motion should be denied for three independent reasons.  First, Plaintiff lacks standing to bring this motion on behalf of a non-party.  Second, Plaintiff's refusal to agree to Defendants' proposed stipulation necessitated that Defendants establish the authenticity and admissibility of non-party documents by other means.  Third, Plaintiff's effort to prevent these depositions of non-parties is at odds with the fact that it continues to depose Defendants.

**I.    PLAINTIFF LACKS STANDING TO OBTAIN THE REMEDY IT SEEKS**

Plaintiff's motion should be denied for the threshold reason that it lacks standing to bring the motion.  The subpoenas served on the non-parties were issued under Fed. R. Civ. P. 45.  A party generally lacks standing to challenge a subpoena served on a non-party pursuant to Fed. R. Civ. P. 45 unless that party can demonstrate that it has some proprietary interest that will be jeopardized by the discovery.  *See*, *e.g.*, *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) ("[A] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right."); 9A Wright & Miller, *Federal Practice & Procedure* § 2459 (2005) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought.")  Plaintiff has not argued that it has any "personal right or privilege" at stake in these non-party depositions that would give it standing.

Plaintiff attempts to circumvent these authorities by arguing that it has standing under Fed. R. Civ. P. 26 to challenge the subpoenas, because it is seeking to enforce a case management order rather than seeking to quash a subpoena.  Plaint. Mem. at 4-6.  This is a

---

reopen that issue" during the August 8 meet and confer, and she was "not prepared to do [sic] discuss [the stipulation] as it had been many weeks since [she] had looked at the documents."  Lonergan Decl., ¶ 11, Ex. 10.

4

classic distinction without a difference.  Absent privilege or privacy concerns – neither of which Plaintiff has asserted – Plaintiff cannot prevent a non-party deposition from being taken regardless of whether it styles its motion as one for a protective order or one to quash.  *See*, *e.g.*, *In re Application of FB Foods, Inc.*, 2005 WL 2875366 at *1 (S.D.N.Y. Nov. 2, 2005) ("Absent a showing of privilege or privacy, a party ordinarily lacks standing to challenge a non-party subpoena *with a motion for a protective order* or to quash.") (emphasis added); 9A Wright & Miller, *Federal Practice & Procedure* § 2459 (2005) ("A motion to quash, *or for a protective order*, should be made by the person from whom the documents or things are requested") (emphasis added).

To be sure, not all courts agree on the unavailability of Fed. R. Civ. P. 26 to challenge a non-party deposition.  Plaintiff, however, has not cited a single case in which a court granted a motion for a protective order to stop a deposition where, like here, the subpoena was served *before* discovery closed.  All of the case law cited by Plaintiff involved parties trying to enforce subpoenas that were served after discovery had closed (or, in one case, had a return date that postdated discovery cutoff).  Where, as here, the subpoenas are served and noticed during the discovery period, a party seeking to prevent discovery cannot claim lack of notice.  Furthermore, given the factual context here (*i.e.,* the deposition was timely noticed, any burden upon Plaintiff is self-imposed, and the documents are relevant to Defendants' defense of Plaintiff's parens patriae claims), Plaintiff's motion should be denied.

Therefore, Defendants respectfully submit that the court should follow the rule that an Fed. R. Civ. P. 45 subpoena can be challenged only as provided by Fed. R. Civ. P. 45 itself – which Plaintiff undisputedly lacks standing to do – and not by Fed. R. Civ. P. 26 as Plaintiff purports to do here.  *See Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 686 (D. Kan.

5

1995) (noting that only the party to whom a subpoena was issued has standing to challenge the subpoena under Fed. R. Civ. P. 45 absent a claim of personal privilege, and overruling defendant's objection to a third-party subpoena on the ground that the subpoena was issued after the close of discovery). *See also*, *O'Boyle v. Jensen*, 150 F.R.D. 519, 520 (M.D. Pa. 1993) ("The subpoenas at issue are addressed to third parties, not to the plaintiff. The discovery deadline established by the court precludes parties from conducting any further discovery addressed to each other or requiring one another's presence or participation, e.g., discovery in the form of interrogatories or depositions. It was not intended to preclude, and does not preclude, parties from gathering additional information on their own case or that of their opponent through independent lines of inquiry not directed to, or requiring the participation of, the other side.").

## II.  PLAINTIFF HAS FAILED TO OFFER ANY SUBSTANTIVE FACTUAL REASON WHY THE DEPOSITIONS SHOULD NOT GO FORWARD

### A.  Plaintiff's refusal to stipulate necessitated that Defendants establish the authenticity and admissibility of non-party documents by other means

Plaintiff's refusal to stipulate to the authenticity and admissibility of the non-party documents identified in Defendants' proposed stipulation requires that Defendants build the factual record with respect to those documents by other means. Nevertheless, Plaintiff seeks the "extraordinary measure" of preventing depositions from being taken and therefore must satisfy the "heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998) (denying protective order to prevent deposition where moving party offered only conclusory arguments in support of motion). Plaintiff has failed to offer any support beyond conclusory allegations of the supposed burden that these depositions would place upon it.

Instead, Plaintiff seizes on the fact that the depositions at issue were not scheduled until some time after discovery closed on March 31, 2006. This ignores the fact that MGM Mirage did not complete its production pursuant to timely subpoenas until after discovery had closed. Lonergan Decl., ¶ 4, Ex. 2. Plaintiff also ignores the fact that rather than immediately move to schedule the depositions,[5] Defendants first attempted to negotiate a stipulation with Plaintiff, and after Plaintiff's initial rejection of such a stipulation, Defendants attempted to negotiate a compromised stipulation. Lonergan Decl., ¶¶ 6 -10, Ex. 4-5, 9.

### B. Plaintiff's Position that the non-party depositions are untimely is inconsistent with the fact that Plaintiff has taken 30(b)(6) depositions of Defendants after March 31, 2006

Plaintiff's complaint that these non-party depositions are untimely is inconsistent with the fact that Plaintiff has taken 30(b)(6) depositions after March 31, 2006. Indeed, Plaintiff has scheduled and taken 30(b)(6) depositions of *Defendants* after the March 31 discovery cutoff date, and here Defendants only seek to take 30(b)(6) depositions of *non-parties*. Indeed, all of Plaintiff's complaints about the timing and supposed burden of the *non-party* depositions apply equally to Plaintiff's depositions of *Defendants*.

---

[5] Somewhat puzzlingly, Plaintiff also argues that the January 10, 2006, deposition subpoenas were "far broader" and "completely different" than the MGM Mirage depositions at issue here. Plaint. Mem. at 4, fn 3. This is a red herring. The MGM Mirage deposition at issue here is narrowly focused. It is aimed at establishing the authenticity and admissibility of certain documents produced by MGM Mirage that are directly relevant to issues identified in the subpoenas. Moreover, establishing the authenticity and admissibility of documents is a routine part of almost all depositions. Plaintiff cites no authority holding that a party must provide specific notice in its subpoenas of its intent to establish a document's authenticity at deposition.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion for a protective order.

Dated:	New York, New York
	August 10, 2006

        KAYE SCHOLER, LLP

        By:  /s/ Samuel Lonergan

           Jane Parver (admitted *pro hac vice*)
           Saul Morgenstern (admitted *pro hac vice*)
           Sam Lonergan (admitted *pro hac vice*)
        425 Park Avenue
        New York, New York 10022
        (212) 836-8000

        *Attorneys for Defendant*
        *Novartis Pharmaceuticals Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2006, I caused a true and correct copy of the foregoing, Memorandum of Law in Opposition to Nevada's Motion for a Protective Order Relating to Defendants' Deposition Subpoena to MGM Mirage, to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.

    /s/ Samuel Lonergan

Samuel Lonergan
Kaye Scholer LLP
425 Park Avenue
New York, NY 10034