

Practising Law Institute
Corporate Law and Practice Course Handbook Series
PLI Order No. B0-00H5
November, 1999

Antitrust Litigation Strategies for Success 1999

**\*17** PRETRIAL PREPARATION IN ANTITRUST CASES: WHAT CAN ONE LEARN FROM THE
MICROSOFT CASE?

Richard L. Schwartz
**New York State Attorney General's Office [FN1]**

Copyright (c) 1999, Practising Law Institute

**\*18** [TABLE OF EXHIBITS]

Exhibit A: United States vs. Microsoft Corporation, State of New York vs. Microsoft Corporation: Pretrial Order No. 1

Exhibit B: United States vs. Microsoft Corporation, State of New York vs. Microsoft Corporation: Pretrial Order No. 2

Exhibit C: United States vs. Microsoft Corporation, State of New York vs. Microsoft Corporation: Final Pretrial Order

Exhibit D: United States vs. Microsoft Corporation, State of New York vs. Microsoft Corporation: Transcript of
Proceedings Before the Honorable Judge Thomas P. Jackson, May 22, 1998

Exhibit E: United States vs. Microsoft Corporation, State of New York vs. Microsoft Corporation: Transcript of
Proceedings Before the Honorable Judge Thomas P. Jackson, June 9, 1998

Exhibit F: United States vs. Microsoft Corporation, State of New York vs. Microsoft Corporation: Stipulation and
Protective Order

**Deputy Chief, Antitrust Bureau**

**\*19 Introduction**

This paper addresses the question: What can the litigator who must navigate the pretrial preparation process in antitrust
litigation learn from the Microsoft [FN2] case?

The antitrust litigation of today and tomorrow is taking place in a different doctrinal and judicial climate than the last great
wave of antitrust litigation in the 1970's, most notably the IBM and AT&T cases. In recent years, federal judges have taken
on a much more active role in managing the cases brought before them. This trend is reflected in and has been reinforced by
changes in the Federal Rules of Civil Procedure, principally Rules 16 and 26, which give federal judges broad authority and
powerful tools to manage litigation through pre-trial conferences, scheduling orders, and other means. In Microsoft, a federal
judge applied such litigation management tools to move complex antitrust litigation quickly and efficiently to trial, while
affording the parties fair and reasonable opportunities to discover the facts, present their cases, and develop a record.

**\*20** For the practitioner, the question that Microsoft places in the foreground is: How best to take account the current
environment and judicial management techniques so as to advance the client's strategic and tactical objectives? Here, I briefly
describe certain of Judge Jackson's key procedural decisions in managing the Microsoft case, and explore how antitrust
litigators can start factoring them into their thinking. [FN3]

The discussion below is in four parts. First, I discuss the changed procedural framework for complex antitrust litigation. Second, I describe some of Judge Jackson's case management decisions. Copies of the most important pretrial orders and transcripts of pretrial conferences are attached. Third, I ask what lessons can be learned from these which can aid the practitioner. Fourth, I deal very briefly with the topic of protective orders in antitrust litigation.

## The Procedural Context

FRCP 16 authorizes the Court to direct the parties to appear before it for conferences "for such purposes as (1) expediting the disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation, and (5) facilitating the settlement of the case." FRCP 16(a).

Rule 16 also authorizes the Court to enter a scheduling order "that limits the time (1) to join other parties and to amend the pleadings; (2) to file motions; and (3) to complete discovery." **\*21** FRCP 16(b). Rule 26 requires the parties to confer and present proposed discovery plan(s) to the Court, FRCP 26(f), and grants the Court explicit authority to limit discovery when the burden and expense of proposed discovery "outweighs its likely benefit," FRCP 26(b)(2).

These provisions became part of the federal rules through a series of amendments beginning in 1983. They have been generally viewed as marking a considerable shift toward a more active judicial role in managing civil litigation. Their premise is "that the judiciary must serve as the critical source of discipline in the [civil litigation] system. After considering the inputs and needs of the parties, it is the court's responsibility to ensure that each case is positioned as quickly and as efficiently as possible for disposition. Toward this end, it is the court's responsibility to fix the deadlines for all the major pretrial events and for the trial, just as it is the court's responsibility to fix the fundamental shape and direction of pretrial activity." 3 Moore's Federal Practice § 16.03[1][c] at 16-26 (3d ed.1999).

This shift in turn reflected a recognition that when the pretrial phase of civil litigation was left to "adversarial self-execution" the resulting costs and delays not only represented large negatives in themselves but threatened to undermine the system's goal of securing timely justice on the merits. Id. The major antitrust cases, of course, were Exhibit A in support of this view. Judge Jackson, in particular, has stated that he had the AT&T and IBM cases very much in mind in considering how best to manage Microsoft.

## Judge Jackson's Case Management Decisions

On May 18, 1998, the federal government and 20 states filed, in separate actions, complaints and applications for preliminary relief against Microsoft. At that point, Judge Jackson already had the advantage of familiarity with a preceding related controversy, having ruled on the **\*22** United States' petition to hold Microsoft in contempt for violating the terms of the 1995 Consent Decree which had resolved a previous government complaint that Microsoft had unlawfully maintained its monopoly in PC operating systems.

On May 22, at a conference with the parties, Judge Jackson advanced and consolidated the trial of both actions on the merits with the hearing of plaintiffs' preliminary injunction applications, pursuant to FRCP 65(a)(2), and set a trial date of September 8, 1998, less than four months away. Arguably, this was Judge Jackson's single most important case management decision.

Next, at a June 9 conference, the results of which were later embodied in Pretrial Order No. 1, Judge Jackson largely set the procedural framework for trial and made important decisions regarding pretrial proceedings. With respect to trial, Judge Jackson most importantly (1) limited the number of witnesses on each side to a maximum of 12 (while allowing expansion for good cause); (2) required the submission of direct testimony on both sides in written form, with the exception of hostile witnesses; and (3) set dates shortly in advance of the final pretrial conference for the submission by both sides of lists of witnesses and pretrial statements.

Within the framework imposed by the timing and manner of trial, Judge Jackson largely left the timing and extent of discovery in the hands of the parties. He adopted provisions agreed upon by the parties which shortened the time periods allotted by the federal rules for parties to respond to discovery demands. Thus, Pretrial Order No. 1 required that each party

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"shall respond, including objections, to all interrogatories and requests for admissions served by an adverse party within ten calendar days of such service." PTO No. 1, ¶ 2. Similarly, each party was permitted to take depositions on ten calendar days notice and required to respond to **\*23** document demands within ten calendar days of service. Id., ¶¶ 1 and 3.

  Judge Jackson did not, however, place any explicit limits on the use of any discovery device, including depositions and interrogatories; rather, he simply cautioned the parties not to make use of unreasonably large numbers of either. Nor did he set any time limits for the completion of particular phases of discovery. In particular, he initially declined to set deadlines for the completion of expert discovery, or any of its stages, including designation of expert witnesses, submission of expert reports, and depositions of experts.

  However, the parties were unable to agree on the timing of expert discovery, and in Pretrial Order No. 2. Judge Jackson staggered only very slightly the disclosure dates for plaintiffs and defendant, requiring that plaintiffs identify expert witnesses and make the disclosures required by Rule 26(a)(2) [FN4] two days before Microsoft was required to do so. Judge Jackson also ordered that expert depositions should take place during a ten day period preceding trial, and that no such deposition might last more than one day without leave of Court.

### Microsoft and the Pretrial Process

  Though patterns repeat themselves, every case is different; cardboard cut-out applications of Judge Jackson's case management rulings in Microsoft aren't to be expected. In fact, in considering Judge Jackson's most important case management decision -- the consolidation of **\*24** the preliminary injunction hearing with the trial on the merits, which in turn dictated a short trial date -- one point to consider is whether, absent the plaintiffs' applications for preliminary relief, the trial date could reasonably have been as short as it was.

  In evaluating Microsoft's repeated pleas for more time to prepare for trial, the need for expedition if any preliminary relief was to be meaningful undoubtedly weighed heavily on the other side of the scale. There were other arguments against delay as well, of course, but, in a case without an application for preliminary relief the balancing at least, if not the result, would likely be different.

  Nevertheless, in view of the generally recognized fact that "nothing spurs litigants to more efficient pretrial work and to more serious consideration of settlement than an early, firm trial date" [FN5] some shortening of the pretrial preparation period generally for complex antitrust cases is reasonably to be expected. To the extent that occurs, there are pros and cons for both plaintiffs and defendants. Defendants, obviously, will complain, as Microsoft did, that they simply do not have enough time to prepare for trial. But an early trial date imposes constraints on plaintiffs as well. It may leave little time for the development of new theories or significant changes or broadening of the case. Indeed, non-core theories and claims may have to be jettisoned if they can't efficiently be prepared and tried in time available. In Microsoft, the States amended their complaint following Judge Jackson's decision to set an early trial to drop claims regarding Microsoft's conduct with respect to its office productivity applications which would have been very difficult to fit into the limitations imposed on the case.

  **\*25** Having established what is arguably the most effective discipline on the parties -- an early trial date -- Judge Jackson, as indicated above, initially set few limits on discovery. In particular, he imposed, in the pretrial phase, no limits on the number of depositions of fact witnesses which the parties could take. At least where the parties have substantial resources, such an approach makes it more difficult for any party to claim that it has not been able to develop the facts it needs to present its case at trial. Where the federal government or the States are suing, a defendant can be expected to argue, as Microsoft did, that there was unfairness in allowing the parties equal federal rules discovery when plaintiffs had already had a chance to develop their case through investigative subpoenas. Governmental plaintiffs can reply that investigative "discovery" is limited and undertaken for different purposes, and that government lawyers must spend time and resources learning the details of a business already familiar to those who carry it on. Judge Jackson did not impose any limits on plaintiffs' discovery on this ground, but did urge the plaintiffs "that you don't plow ground that you don't need to plow again." [FN6]

  Local rules sometimes contain presumptive limits on the use of particular discovery devices. For obvious reasons, those limitations are not likely to apply as written to complex antitrust litigation. One question is whether and under what circumstances any numerical limitations on the use of particular discovery devices are likely to be imposed in this sort of case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The timing of discovery, particular expert discovery, is another question. Judge Jackson initially left this issue to the parties, imposing virtually simultaneous expert disclosures only after they were unable to agree. Testimony of economists has long been central to antitrust cases, and **\*26** is today if anything even more so. In high-tech fields, as Microsoft illustrates, testimony of industry and technical experts is likely to be very important as well. And where there is little time between submission of expert testimony and preparing pretrial submissions and possibly written direct testimony, counsel will be particularly concerned about scheduling, and perhaps well advised to seek the Court's intervention on this point sooner, rather than later.

Both the limitations imposed on the trial itself and the ways in which evidence can be introduced at trial will also have very significant consequences for the pretrial preparation process. The primary limitation which Judge Jackson imposed was on the number of witnesses rather than on the length of their testimony or the over-all trial time available to each party. Obviously, counsel will want to think about what sort of limitation, if any, would best suit their case and their likely array of witnesses -- to the extent that these are known --very early in the process. And once a particular limitation is imposed, to ask how the case can best be presented within these parameters.

The ways in which evidence may be presented at trial will also be important to consider as that evidence is prepared during the pretrial process. The much-discussed videotape of Bill Gates' deposition was of course the starkest example of this in the Microsoft case. Judge Jackson initially ordered that only excerpts of depositions would be introduced into evidence at trial, Pretrial Order No. 2, filed August 6, 1998, ¶ 4, but later decided that deposition evidence would be shown on videotape in open court when available. Final Pretrial Order, dated October 9, 1998, at 3.

In fact, videotaped depositions might be used even more extensively at other trials. In Microsoft, Judge Jackson granted each of the parties nation-wide subpoena power to compel the **\*27** appearance of witnesses at trial, and was therefore in a position to restrict the introduction of deposition testimony at trial. In general, apart from its use to impeach or as an admission of a party opponent, deposition testimony was to be "offered to prove only subordinate or predicate issues...or foundation evidence for direct testimony or expert opinion to be presented at trial." Pretrial Order No. 2, filed August 6, 1998, ¶ 4a. Absent such subpoena power, parties might rely more extensively on videotaped depositions than was the case in Microsoft.

In general, counsel will have to give thought in the pretrial preparation process to the likely impact in the courtroom and beyond it of what appears on the screens in the courtroom, as well as in the witness box. Depending on the case this may include, as it did in Microsoft, videotaped technical demonstrations used to supplement a witness's oral or written testimony. [FN7]

### Protective Orders at the Pretrial and Trial Stages

Protective orders are ordinarily entered into by the parties and approved by the court in antitrust litigation as a preliminary to the exchange of any confidential information. A copy of the protective order entered in Microsoft, filed May 27, 1998, is annexed hereto, as illustrating the types of provisions typically found in such orders

From the standpoint of the litigator at the pretrial stage, it is useful to remember that, as a practical matter, the ability to keep documents and information confidential and non-public -- available only for purposes of the litigation -- may substantially decrease or vanish at the summary judgment or trial stage with respect to documents or information entered into evidence. **\*28** This is because "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." United States v. Amodeo, 71 F.3d. 1044, 1049 (2d Cir. 1995) (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982).

Accordingly, Judge Jackson ordered in Microsoft that "no protective order or stipulation of confidentiality heretofore entered in this case shall preclude a reference in open court by any party or witness to any matter purportedly covered thereby, and all evidence (including exhibits) once adduced is deemed a part of the public record, and shall be accessible without restriction to the public at large unless compelling reason to the contrary is shown, see JB Pictures, Inc. V. Department of Defense, 86 F.3d. 236, 239 (D.C. Cir. 1996)..." Final Pretrial Order, dated October 9, 1998, at 3.

[FN1]. This paper was prepared for the Practicing Law Institute Program on Antitrust Litigation in New York City,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

November 8-9, 1999. The views expressed are the author's own and not necessarily those of any other person or entity.

[FN2]. United States v. Microsoft Corp. Civ. No. 98-1232 (TPJ); State of New York, et al. v. Microsoft Corp, Civ. No. 98-1233 (TPJ).

[FN3]. My treatment here is necessarily brief, selective, and preliminary  (the case, even at the trial court level, is not over), designed only to offer some starting points for thinking useful to practitioners. Microsoft's case management aspects will undoubtedly receive a great deal of attention. See, for example, the excellent assessment by Andrew I Gavril, "An Analysis of Some Procedural Aspects of the Microsoft Trial," Antitrust, Summer 1999, pp.7-13.

[FN4].  FRCP 26(b)(2) requires a written report "prepared and signed by the witness" which "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceeding ten years; the compensation to be paid for the study and testimony; and a listing of any other case in which the witness has testified as an expert at trial or by deposition within the preceding four years."

[FN5]. 3 Moore's Federal Practice § 16.13.[2][b] at 16-61 (3d. ed. 1999).

[FN6]. June 9, 1998 Tr. at 8.

[FN7]. Judge Jackson permitted such videotaped technical demonstrations in  Microsoft, and established disclosure rules to ensure that parties were able to review the method and content of each other's presentations in a manner sufficient to allow informed cross-examination. PTO No. 2, ¶ 5.

**\*29** [EXHIBIT A]

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, Plaintiff, vs. MICROSOFT CORPORATION, Defendant.

Civil Action No. 98-1232 (TPJ)

STATE OF NEW YORK ex rel.

Attorney General DENNIS C. VACCO, et al., Plaintiffs, vs. MICROSOFT CORPORATION, Defendant.

Civil Action No. 98-1233 (TPJ)

**PRETRIAL ORDER NO. 1**

 Having fully considered the written submissions of the parties and the arguments of counsel at a hearing on June 9, 1998, the Court enters the following Order to govern pretrial proceedings in this action.

**NON-EXPERT DISCOVERY**

 1. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, and subject to any notifications of non-parties and designations of confidential information pursuant to the Stipulation and Protective Order entered by the Court on May 27, 1998, each party shall respond, including objections, to any requests for production of documents within ten calendar days of service of any such requests.

 **\*30** 2. Pursuant to Rules 33 and 36 of the Federal Rules of Civil Procedure, each party shall respond, including objections, to all interrogatories and requests for admissions served by an adverse party within ten calendar days of such service. The presumptive limitations on interrogatories set forth in Local Rule 207(b) shall not apply, but counsel for the parties shall exercise their good judgment in not serving unreasonably large numbers of interrogatories on an adverse party.

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3. Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure and Local Rule 208, each party may take depositions upon oral examination on ten calendar days' notice. The presumptive limitations on depositions set forth in Local Rule 207(b) shall not apply, but counsel for the parties shall exercise their good judgment in not taking an unreasonably large number of depositions.

4. In the context of the expedited proceedings ordered by the Court in this action, the Court finds that ten calendar days is also a reasonable period for compliance with discovery subpoenas directed to non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure and requests that other district courts from which such subpoenas are issued require prompt compliance therewith, subject to the legitimate objections of such non-parties.

5. The Court expects the parties to work in good faith to resolve discovery disputes. The Court will, however, entertain in-chambers conferences or conference calls with counsel in lieu of formal motions to resolve routine discovery disputes that may arise. In dealing with discovery matters, the parties shall strictly comply with Local Rule 106.

### PRETRIAL SUBMISSIONS

6. Microsoft shall file its answers to the complaints by July 28, 1998.

**\*31** 7. Microsoft shall file a legal memorandum in opposition to plaintiffs' motions for a preliminary injunction on August 10, 1998 (without the evidentiary materials typically required by Local Rule 205(c)) and plaintiffs shall file reply memoranda, if any, in support of those motions on August 24, 1998.

8. The parties shall file lists of witnesses they intend to call at trial on August 21, 1998, which lists may be supplemented in advance of the pretrial conference for good cause shown.

9. The parties shall file their pretrial statements on August 31, 1998 in accordance with Local Rule 209(b).

10. The final pretrial conference shall be held at 10:00 A.M. on September 3, 1998.

### CONDUCT OF THE TRIAL

11. Plaintiffs as a group and defendant shall each be limited to between six and 12 witnesses at trial, although the Court will consider increasing that number for good cause shown.

12. The parties shall file the direct examinations of their witnesses, with the exception of hostile witnesses, in the form of written declarations on or before September 3, 1998.

13. The parties shall submit proposed findings of fact and conclusions of law on a schedule to be established by the Court at the conclusion of trial.

### SUBPOENAS FOR WITNESSES

14. Because there are witnesses with knowledge of relevant matters residing throughout the United States, the Court hereby finds that there is good cause to give all parties **\*32** to this action permission pursuant to 15 U.S.C. § 23 to issue subpoenas to compel witnesses living outside this District to appear to testify at trial.

### SERVICE OF DISCOVERY REQUESTS AND RESPONSES AND PRETRIAL SUBMISSIONS

15. Service on Microsoft of any pleading or other submission to this Court or any requests for discovery under the Federal Rules of Civil Procedure or responses thereto shall be sufficient if delivered by hand, facsimile or overnight courier either to Sullivan & Cromwell's offices in New York at 125 Broad Street, 27th Floor, New York, New York 10004 or to Sullivan & Cromwell's offices in Washington, D.C. at 1701 Pennsylvania Avenue, N.W., 7th Floor, Washington, D.C. 20006.

16. Service on plaintiffs of any pleading or other submission to this Court or any requests for discovery under the Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Rules of Civil Procedure or responses thereto shall be sufficient if delivered by hand, facsimile or overnight courier to (a) A. Douglas Melamed, Esq., U.S. Department of Justice, Antitrust Division, 10th Street & Constitution Avenue, N.W., Washington, D.C. 20530, (b) Phillip R. Malone, Esq., U.S. Department of Justice, Antitrust Division, 450 Golden Gate Avenue, Room 10-0101, San Francisco, California 94102 and (c) Stephen D. Houck, Esq., Chief, Antitrust Bureau, New York State Attorney General's Office, 120 Broadway, Suite 2601, New York, New York 10271.

**\*33** SO ORDERED:
Thomas Penfield Jackson
United States District Judge

### **\*35** [EXHIBIT B]

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, Plaintiff, v. MICROSOFT CORPORATION, Defendant.

Civil Action No. 98-1232

STATE OF NEW YORK, ex rel.

Attorney General DENNIS C. VACCO, et al., Plaintiffs and Counterclaim-Defendants, v. MICROSOFT CORPORATION, Defendant and Counterclaim-Plaintiff.

Civil Action No. 98-1233

### PRETRIAL ORDER NO. 2

  Upon consideration of the proposals of the parties for a further pretrial order to supplement Pretrial Order No. 1 of June 12, 1998, and in accordance with the proceedings in open court at the hearing of August 6, 1998, it is, this 6th day of August, 1998,

  ORDERED, as follows:

### MODIFICATION OF PRETRIAL ORDER NO.1

  1. To the extent any provision of Pretrial Order No. 1 is inconsistent with any provision of this Pretrial Order No. 2, **\*36** Pretrial Order No. 1 is modified or superseded and the applicable provision of the Pretrial Order No. 2 shall apply.

### MANDATORY EXPERT DISCLOSURES AND DISCOVERY

  2. No later than August 19, 1998, plaintiffs shall identify the expert witnesses they intend to call to testify at trial and, separately with respect to each witness so identified, shall produce the reports and other materials required under Fed. R. Civ. P. 26(a)(2)(A),(B). No later than August 21, 1998, defendant shall identify the expert witnesses it intends to call to testify at trial and, separately with respect to each witness so identified, shall produce the reports and other materials required under Fed. R. Civ. P. 26(a)(2)(A),(B).

  3. Witnesses identified pursuant to the preceding paragraph may be deposed on or after August 24, 1998, provided that, (a) no such deposition may last more than one day without leave of Court, and (b) no such deposition shall occur later than September 3, 1998.

### USE OF DEPOSITION TESTIMONY AT TRIAL

  4. In addition to the maximum of twelve (12) witnesses per side to be called at trial, the parties may introduce as evidence excerpts of depositions taken in this action pursuant to paragraph 3 of Pretrial Order No. 1. Except for purposes of proof of an admission by a party opponent or impeachment of a trial witness, such deposition excerpts may be introduced solely under

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the terms hereafter set forth:

   *37 a. As a general rule, deposition excerpts should be offered to prove only subordinate or predicate issues, such as authenticity of exhibits (where contested) or foundation evidence for direct testimony or expert opinion to be presented at trial. No party should expect to prove a genuinely contested issue of material fact solely by means of deposition excerpts.

   b. Each side shall be permitted to designate a reasonable number of deposition excerpts of witnesses for introduction as evidence. Such designations will be filed with the Court and served on all parties at the same time as the parties are required to file the direct examinations of their trial witnesses. Counsel for the parties shall act reasonably and exercise good judgment in not submitting excessive numbers of designations, recognizing that the Court will disregard deposition testimony it deems immaterial, collateral, cumulative, or confusing.

   c. No more than seven (7) days after receiving the initial deposition designations permitted under the preceding subparagraph, each side may file with the Court and serve on all parties rebuttal designations of deposition excerpts. Each such rebuttal designation must be directly responsive to testimony included in the adverse party's initial deposition designations; to the extent such rebuttal designations are not directly responsive to the adverse party's initial designations, the Court may either entertain *38 motions in limine to strike such non-responsive rebuttal designations or simply disregard them.

   d. A party may not designate as evidence any portion of the deposition testimony of a witness that such party intends to call as a witness at trial, except as set forth below. A party shall be permitted:

      i. To include in its rebuttal designations excerpts of the depositions of a witness that such party intends to call as a witness at trial if such rebuttal designations (1) respond directly to initial designations made by the adverse party, and (2) are beyond the scope of the particular witness' previously described and/or filed direct testimony; and

      ii. To introduce portions of the deposition of a witness in lieu of the written witness declaration specified in Pretrial Order No. 1, ¶ 12, where that witness declines to cooperate in the preparation of a separate witness declaration. Alternatively, a witness who declines to cooperate in the preparation of a separate witness declaration may be called as a "hostile" witness at trial.

   e. All deposition excerpts submitted pursuant to this Paragraph shall be submitted only in transcript form and not *39 in the form of videotaped excerpts, except as provided below.

## TECHNICAL DEMONSTRATIONS AT TRIAL

  5. Notwithstanding the requirement set forth at Paragraph 12 of Pretrial Order No. 1 that the direct examinations of all witness be "in the form of written declarations," each side shall be permitted to have one or more witnesses supplement prefiled declarations by presenting by videotape technical demonstrations relevant to the subject matter of the witness' pre-filed declaration, provided that, (a) the adverse party was represented at the making of the videotape; or (b) a description of the demonstrative presentations is included in the prefiled declaration; and (c) the adverse party is afforded the opportunity to review the videotape at least seventy-two (72) hours prior to the testimony of the witness at trial.

## IDENTIFICATION OF WITNESSES/SUBMISSION OF DIRECT TESTIMONY

  6. On August 21, 1998, all parties shall simultaneously file with the Court and serve to opposing parties a list of the witnesses that the party intends to call in its case-in-chief at trial. Such list shall contain no more than twelve (12) witnesses.

  7. The identification of witnesses called for by ¶ 6 shall not relieve the parties of obligations under Local Rule 209(b), and no more than two (2) witnesses appearing in the Pretrial Statement of a party shall be other than those disclosed pursuant to ¶ 6.

  *40 8. Each side shall be permitted to call no more than two (2) rebuttal or surrebuttal witnesses after the close of defendant's case-in-chief. Rebuttal and surrebuttal witnesses need not be disclosed in advance.

  9. At any time after the identification of a witness but before the commencement of trial, a party may depose trial witnesses of the adverse party if such witnesses have not previously been deposed in this action.

  10. A party may alter its final witness list in its Pretrial Statement only with leave of Court and a showing of good cause to prevent manifest injustice.

  11. Plaintiffs shall file the direct examinations of their witnesses, with the exception of hostile witnesses, in the form of

1152 PLI/Corp 17                                                                                 Page 9
1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

written declarations on or before September 3, 1998.

  12. Defendant shall file the direct examinations of its witnesses, with the exception of hostile witnesses, in the form of written declarations on or before five (5) days prior to the date on which the Court and counsel anticipate plaintiffs' case-in-chief will be completed.

Thomas Penfield Jackson
U.S. District Judge

### *41 [EXHIBIT C]

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, Plaintiff, v. MICROSOFT CORPORATION, Defendant.

Civil Action No. 98-1232 (TPJ)

STATE OF NEW YORK, ex rel.

Attorney General DENNIS C. VACCO, et al., Plaintiffs and Counterclaim-Defendants, v. MICROSOFT CORPORATION, Defendant and Counterclaim Plaintiff.

Civil Action No. 98-1233 (TPJ)

### FINAL PRETRIAL ORDER

  In accordance with the proceedings at the Final Pretrial Conference of October 9, 1998, it is, this 9th day of October, 1998,

  ORDERED, that the Pretrial Statements of the parties, including their Schedules of Witnesses and Final Lists of Exhibits separately filed (as they may be modified or supplemented from time to time with leave of Court), are adopted and incorporated herein, and shall control the subsequent course of these actions unless this Order itself shall be modified to prevent manifest injustice; and it is

  **\*42** FURTHER ORDERED, that the trial of these actions shall commence at 10:00 a.m., October 19, 1998, and shall continue from day to day, and week to week, Mondays through Thursdays (the Court's calendar permitting), holidays excepted, until the taking of evidence has been completed; and it is

  FURTHER ORDERED, that at the outset of their case-in-chief, the parties shall advise the Court and one another of the expected order in which their witnesses will be called, and will give the Court and their adversaries forty-eight (48) hours' advance notice of any proposed change in that order of witnesses, which will be permitted only with leave of Court; and it is

  FURTHER ORDERED, that upon commencement of the trial plaintiffs shall present the direct testimony of their witnesses in writing, which each witness shall avow under oath on the record as he or she is called, and the plaintiffs shall then tender the witness for oral cross-examination by the defendant. Upon completion of each cross-examination plaintiffs may conduct an oral redirect examination of the witness, to be followed by oral recross-examination, and (with leave of Court) such further oral redirect and recross-examination as the Court may deem warranted. When examination of the witness has concluded, the Court will excuse the witness, and plaintiffs shall call the next witness in succession who shall be examined in similar fashion, and so forth, until plaintiffs' case-in-chief shall have been fully presented and plaintiffs have rested.

  Upon completion of proceedings on defendant's motion for judgment as a matter of law, if any, if the motion is not granted defendant shall present its witnesses in like fashion, and cross-examination and redirect examination shall proceed as in plaintiffs' case.

  IT IS FURTHER ORDERED, that the manner of presentation of rebuttal and surrebuttal evidence is reserved for later determination; and it is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*43** FURTHER ORDERED, that any discovery heretofore initiated and not yet completed may continue to completion while trial is in progress (although in a manner not to interfere with trial), and the record shall be held open a reasonable time, if necessary, to receive relevant and material evidence developed thereby; but no new discovery shall be initiated by any party after entry of this Final Pretrial Order except with prior leave of Court for cause shown; and it is

FURTHER ORDERED, that no protective order or stipulation of confidentiality heretofore entered in this case shall preclude a reference in open court by any party or witness to any matter purportedly covered thereby, and all evidence (including exhibits) once adduced is deemed a part of the public record, and shall be accessible without restriction to the public at large unless compelling reason to the contrary is shown, see JB Pictures, Inc. v. Department of Defense, 86 F.3d 236, 239 (D.C. Cir. 1996); and it is

FURTHER ORDERED, that evidence presented by deposition (other than by way of use in cross-examination) shall be shown on videotape in open court as well as offered in transcript form, unless otherwise ordered; or, if no videotape of a deposition was made, a deposition shall be offered in transcript form alone; but all deposition testimony admitted in whatever form shall be deemed a part of the public record, and accessible to the public at large to the same extent as all other evidence in the case; and it is

FURTHER ORDERED, that the parties shall be prepared to submit proposed findings and conclusions following the close of evidence in a form and upon a schedule to be prescribed by the Court.

```
Thomas Penfield Jackson
U.S. District Judge
```

### **\*45** [EXHIBIT D]

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, PLAINTIFF, VS. MICROSOFT CORPORATION, ET AL. DEFENDANTS

C. A. NO. 98-1232

STATE OF NEW YORK, ET AL. PLAINTIFFS VS. MICROSOFT CORPORATION, ET AL. DEFENDANTS

C. A. NO. 98-1233

```
WASHINGTON, D. C.
MAY 22, 1998
```

### TRANSCRIPT OF PROCEEDINGS

### BEFORE THE HONORABLE THOMAS P. JACKSON

```
FOR THE UNITED STATES:
PHILLIP MALONE, ESQ.
DAVID BOIES, ESQ.
FOR THE STATE OF NEW YORK:
STEPHEN HOUCK, ESQ.
FOR THE DEFENDANT:
RICHARD UROWSKY, ESQ.
RICHARD PEPPERMAN, ESQ.
STEVEN HOLLEY, ESQ.
COURT REPORTER:
PHYLLIS MERANA
6816 U. S. COURTHOUSE
```

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 1152 PLI/Corp 17)**

3RD & CONSTITUTION AVE., N.W.
WASHINGTON, D. C. 20001

**\*46** PROCEEDINGS

THE DEPUTY CLERK: CIVIL ACTION 98-1232, UNITED STATES OF AMERICA VERSUS MICROSOFT, AND CIVIL ACTION 98-1233, THE STATE OF NEW YORK, ET AL. VERSUS MICROSOFT.

MR. PHILLIP MALONE FOR THE UNITED STATES.

MR. RICHARD UROWSKY, JOHN WARDEN AND STEVEN HOLLEY FOR MICROSOFT.

MR. BLUMENTHAL AND MR. HOUCK FOR THE STATES' ATTORNEY GENERALS.

THE COURT: GOOD MORNING, GENTLEMEN.

MR. MALONE: GOOD MORNING, YOUR HONOR.

MR. HOUCK: GOOD MORNING, YOUR HONOR.

MR. WARDEN: GOOD MORNING, YOUR HONOR.

THE COURT: ALL RIGHT. I THINK PROBABLY THE FIRST ORDER OF BUSINESS WOULD BE WITH RESPECT TO THE APPLICATION TO CONSOLIDATE THESE CASES. AND IT CERTAINLY OCCURS TO ME THAT AT THIS STAGE THEY ARE ALTOGETHER APPROPRIATELY CONSOLIDATED. SO MY INCLINATION WOULD BE TO ENTER AN ORDER CONSOLIDATING THESE CASES FOR ALL PURPOSES, PENDING FURTHER ORDER OF COURT, LEAVING OPEN THE POSSIBILITY THAT THEY COULD AT SOME LATER DATE BE SEPARATED, IF NECESSARY.

THE APPLICATION OF MICROSOFT FOR AN ENLARGEMENT OF TIME TO RESPOND HAS CERTAIN SUPERFICIAL APPEAL TO ME, BECAUSE WHAT OCCURS TO ME AS WHAT MIGHT BE A DESIRABLE APPROACH TO THESE CASES WOULD BE TO ADVANCE THE HEARING ON **\*47** THE PRELIMINARY INJUNCTION, OR ADVANCE THE HEARING ON THE MERITS AND THE PRELIMINARY INJUNCTION AND HEAR THEM SIMULTANEOUSLY PURSUANT TO RULE 65(a)(2), IF THAT COULD BE DONE, AND RESOLVE THESE ISSUES ONCE AND FOR ALL FOR RESOLUTION FURTHER ON UP THE LINE, AS I AM SURE WILL BE OCCURRING, IRRESPECTIVE OF THE OUTCOME HERE. BUT, ON THE OTHER HAND, THERE IS A RATHER SIGNIFICANT DEGREE OF URGENCY, AT LEAST SUGGESTED IN THE PLAINTIFFS' APPLICATIONS FOR THE PRELIMINARY INJUNCTION, WHICH APPEARS TO BE DRIVEN IN MAJOR PART BY THIS JUNE 25TH DATE. AND I AM NOT SURE WHAT THE SIGNIFICANCE OF THE JUNE 25TH DATE IS.

IS THIS THE DATE ON WHICH OEM'S ARE ALLOWED FIRST TO MARKET THE PRODUCT TO THE PUBLIC? CAN SOMEBODY ENLIGHTEN ME?

MR. WARDEN?

MR. WARDEN: I WOULD BE HAPPY TO TRY, YOUR HONOR.

THE COURT: ALL RIGHT.

MR. WARDEN: WINDOWS 98 HAS BEEN RELEASED BY MICROSOFT TO THE OEM'S, AND THEY ARE FREE TO INSTALL IT AND SHIP COMPUTERS WITH IT ON IT AT ANY TIME. AND WE BELIEVE THEY WILL BE DOING SO NEXT WEEK WHEN THEY RECEIVE A COUPLE MILLION BACK-UP COPIES IN THE FORM OF CD-ROMS, WHICH ARE BEING MADE BY SO-CALLED REPLICATERS RIGHT NOW. TWO MILLION ARE EXPECTED TO BE COMPLETED BY TODAY. AND THEY PUT ONE OF THESE BACKUPS IN EACH BOX SO THAT IF THE COMPUTER FAILS, FOR **\*48** SOME REASON, THE USER CAN REINSTALL THE OPERATING

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

SYSTEM.

 THE COURT: WHAT YOU'RE TELLING ME IS AT THIS POINT MICROSOFT HAS, FOR ALL PRACTICAL PURPOSES, LOST CONTROL?

 MR. WARDEN: THAT'S CORRECT.

 THE COURT: HOW MANY OF THESE ARE OUT THERE?

 MR. WARDEN: WELL, EVERY OEM WHO WANTS THEM -- AND THIRTY FLEW TO SEATTLE TO PICK THEM UP ON THE RELEASE DATE -- HAS THEM. AND, IN FACT, WE'RE TOLD THAT IBM BROUGHT ITS LAB ON ITS PLANE SO IT COULD CONDUCT ITS FINAL TEST ON THE FLIGHT HOME AND BE READY TO START, AS SOON AS IT GOT HOME, WITH THE INSTALLATION.

 NOW, THOSE ARE OUT OF OUR CONTROL.

 THE COURT: SO THERE IS NO WAY THAT YOU COULD EMBARGO THEM?

 MR. WARDEN: NO, WE CAN'T EMBARGO THEM.

 THE COURT: ALL RIGHT.

 MR. WARDEN: AND, YOUR HONOR SHOULD BE AWARE WE HAVE BEEN ADVISED BY COMPUTER MANUFACTURERS -- P.C. MANUFACTURERS -- THAT THEIR SALES HAVE DROPPED OFF MARKEDLY BECAUSE CONSUMERS ARE HOLDING UP BUYING UNTIL THE NEW MACHINES WITH WINDOWS 98 ARRIVE IN THE RETAIL DISTRIBUTION CHANNEL.

 RETAIL SALES OF WINDOWS 98 ITSELF -- THAT IS THE DISK FOR INSTALLATION BY PEOPLE WHO ALREADY HAVE THEIR P.C.'S -- WILL BEGIN ON JUNE 15TH. ADVERTISING AND **\*49** PROMOTION WILL NOT BEGIN UNTIL JUNE 25, WHICH IS THE OFFICIAL, QUOTE, LAUNCH DATE.

 THE COURT: ALL RIGHT.

 MR. WARDEN: BUT WALL-MART WILL HAVE THEM, AND THEY CAN START SELLING THEM ON JUNE 15TH.

 THE COURT: THAT IS THE MARKETING DATE, IN EFFECT?

 MR. WARDEN: YES. SO THAT'S THE STORY.

 NOW, YOUR HONOR, WOULD YOU LIKE ME TO ADDRESS THE ISSUE OF URGENCY AS WELL, BECAUSE I THINK THERE IS A LARGER CONTEXT THAN THIS FOR THE URGENCY.

 THE COURT: WELL, LET ME FIRST ASK A QUESTION OF THE PLAINTIFFS.

 MR. WARDEN: SURE.

 THE COURT: MR. BOIES?

 MR. BOIES: YES, YOUR HONOR.

 THE COURT: IT HAS BEEN A WHILE SINCE I HAVE SEEN YOU.

 MR. BOIES: GOOD MORNING, YOUR HONOR.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1152 PLI/Corp 17                                                                                          Page 13
1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

THE COURT: WELCOME BACK.

MR. BOIES: THANK YOU VERY MUCH.

YOUR HONOR, I THINK IT IS TRUE THAT MICROSOFT HAS DISTRIBUTED TO THE OEM'S WINDOWS 98, AND THE UNITED STATES IS NOT SEEKING TO HAVE THEM CLAW IT BACK IN SOME WAY. THE RELIEF THAT WE'RE SEEKING --

THE COURT: YOU SAY THAT, AND THAT IS WHAT I **\*50** WANTED TO ASK YOU ABOUT. I HAVE BEEN LOOKING AT YOUR PROPOSED ORDER HERE, AND YOU TELL ME HOW IN THE WORLD I COULD ENTER AN INJUNCTION EMBRACING YOUR PROPOSED PARAGRAPHS, 4, 5 AND 6 AT THIS POINT WITHOUT DE FACTO REQUIRING A COMPLETE RECALL OF WINDOWS 98.

MR. BOIES: BECAUSE, YOUR HONOR, WHAT THE RELIEF SEEKS -- AND PERHAPS IT NEEDS TO BE CLEARER, BUT WHAT WE INTENDED THE RELIEF TO SEEK WAS THAT TO THE EXTENT THAT WINDOWS HAS BUNDLED THE BROWSER TOGETHER WITH THE OPERATING SYSTEM, THAT THERE WOULD BE TWO BASIC KINDS OF RELIEF THAT WOULD BE GRANTED ON A PRELIMINARY BASIS. ONE TYPE OF RELIEF WOULD SIMPLY BE TO ENJOIN MICROSOFT FROM ENFORCING ITS CONTRACTS WITH PEOPLE.

THE COURT: I DON'T HAVE ANY PROBLEM WITH THAT IN TERMS OF BEING ABLE TO GRANT THAT FORM OF RELIEF WITHOUT DOING IRREPARABLE HARM TO MICROSOFT.

MR. BOIES: RIGHT.

THE COURT: BUT LOOK AT PARAGRAPHS 4, 5 AND 6 OF YOUR PROPOSED ORDER.

MR. BOIES: NOW, WITH RESPECT TO -- LET ME TAKE 4 FIRST.

THE COURT: ALL RIGHT.

MR. BOIES: 4 IS, LIKE THE PRIOR ONES, A RESTRICTION ON THEM ENFORCING CONTRACTS WITH THE OEM'S. IN OTHER WORDS, WHAT 4 IS DIRECTED AT ARE CONTRACTS WITH THE **\*51** OEM'S THAT RESTRICT THE RIGHT OF THE OEM TO THEMSELVES ADD A SCREEN TO THE BOOT-UP SEQUENCE -- TO THEMSELVES MODIFY THE BOOT-UP SEQUENCE.

THE COURT: YOU'RE TELLING ME THAT THAT CAN BE DONE WITHOUT --

MR. BOIES: WITHOUT MICROSOFT EVER RECALLING THE OPERATING SYSTEM.

THE COURT: WITHOUT ANY ALTERATION TO THE OPERATING SYSTEM AS MICROSOFT HAS SHIPPED IT, IS THAT CORRECT?

MR. BOIES: WELL, THERE WOULD HAVE TO BE SOME MODIFICATION IN ORDER TO ADD AN ADDITIONAL SCREEN, FOR EXAMPLE, OR TO ADD ADDITIONAL ICONS ON THE SCREEN, OR TAKE OFF THE INTERNET EXPLORER ICON, SO THAT THE OEM'S WOULD HAVE TO DO THAT. AND THE OEM'S MIGHT CHOOSE NOT TO DO THAT, YOUR HONOR.

ALL THAT PARAGRAPH 4 ATTEMPTS TO DO IS TO GIVE THE OEM'S THE RIGHT TO MAKE THOSE CHANGES, IF THEY DECIDE THAT IT IS DESIRABLE FROM A COMPETITIVE STANDPOINT TO DO SO. SO WITH RESPECT TO PARAGRAPH 4, ALL THAT IS REQUIRED IS THAT THE OEM'S BE RELIEVED OF THE CONTRACTUAL RESTRICTIONS -- CONTRACTUAL RESTRICTIONS THAT WERE, FOR THE MOST PART, IMPOSED A LITTLE OVER TWO YEARS AGO BY MICROSOFT AS PART OF WHAT IS ALLEGED IN THE COMPLAINT TO BE AN ATTEMPT TO PREVENT THE OEM'S FROM MODIFYING THE OPERATING SYSTEM TO EITHER TAKE **\*52** OFF A BUNDLED BROWSER OR TO ADD A DIFFERENT BROWSER IN SUBSTITUTION.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THE COURT: WELL, EVEN IF IT COULD BE DONE OR EVEN IF THEY WERE CONTRACTUALLY FREE TO DO SO, MY UNDERSTANDING IS THAT WINDOWS 98 IS COMPLETELY BUNDLED AND THE RESULT WOULD BE, INDEED, IN THIS CASE, WERE AN OEM TO TRY TO DO THAT, HE WOULD BREAK THE SYSTEM.

MR. BOIES: YOUR HONOR, WE BELIEVE THE EVIDENCE WILL SHOW THAT THAT IS NOT SO. WE BELIEVE THAT THERE ARE PORTIONS OF THE CODE THAT HAVE BEEN SUFFICIENTLY EMBEDDED, THE WAY THEY HAVE DESIGNED THE SYSTEM, SO THAT THOSE PORTIONS COULD NOT BE TAKEN OUT WITHOUT SO-CALLED BREAKING THE SYSTEM. HOWEVER, WITH RESPECT TO WINDOWS 98, OTHER PORTIONS OF THE CODE, INCLUDING THE PORTIONS OF THE CODE THAT MAKE THE BROWSER FUNCTION ACCESSIBLE TO THE CONSUMER OR TO THE USER CAN BE TAKEN OUT WITHOUT BREAKING THE SYSTEM.

AND I, FRANKLY, DON'T THINK THAT MICROSOFT IS GOING TO DISPUTE THAT. IF THEY DISPUTE THAT, I THINK THE FACTS WILL PROVE THEM COMPLETELY WRONG IN THAT.

WITH RESPECT TO TAKING OUT INTERNET BROWSER, I THINK YOU HAVE TO LOOK AT TWO DIFFERENT ISSUES. ONE IS: CAN YOU TAKE OUT ALL OF THE CODE THAT IS EMBEDDED IN THERE? AND THE ANSWER IS THAT YOU CAN'T WITHOUT A MAJOR REDESIGN EFFORT. THE SECOND ISSUE, THOUGH, IS CAN YOU TAKE OUT, OR SUPPRESS, OR MODIFY THE CODE THAT MAKES THE BROWSING **\*53** FUNCTION ACCESSIBLE TO CONSUMERS AND GIVE THEM A CHOICE -- GIVE THE OEM'S AND ULTIMATELY GIVE THE CONSUMER A CHOICE OF WHETHER THEY USE INTERNET EXPLORER OR AN ALTERNATIVE BROWSER.

THE COURT: AND YOU SAY THAT --

MR. BOIES: ABSOLUTELY, YOUR HONOR.

THE COURT: -- THAT IS AS POSSIBLE WITH WINDOWS 98 AS IT PROVED TO BE WITH 95?

MR. BOIES: WE BELIEVE IT IS AS POSSIBLE. THEY HAVE MADE IT A LITTLE MORE DIFFICULT THE WAY THEY HAVE DESIGNED IT, YOUR HONOR, BUT IT IS ENTIRELY PRACTICAL. I, FRANKLY, DON'T THINK THEY WANT TO GET UP IN FRONT OF THIS COURT AND TELL YOU THAT THAT IS NOT PRACTICAL, BUT IF THEY DO, WE WILL PROVE THAT.

THE COURT: ALL RIGHT. GO TO PARAGRAPH 5.

MR. BOIES: NOW, WITH RESPECT TO PARAGRAPH 5, THAT DOES REQUIRE A CHANGE IN THE OPERATING SYSTEM, BUT IT IS A CHANGE TO ADD, NOT DELETE.

THE COURT: AND YOU SAY THIS IS SOMETHING THAT AN OEM COULD DO WITHOUT IMPAIRING THE WINDOWS 98?

MR. BOIES: THEY COULD DO 4 WITHOUT IMPAIRING WINDOWS 98. THEY COULD ALSO PROBABLY DO 5 WITHOUT IMPAIRING WINDOWS 98, BUT UNLIKE 4, 5 DOES REQUIRE MICROSOFT TO DO SOMETHING, YOUR HONOR. 5 REQUIRES THAT MICROSOFT COME FORTH WITH ANOTHER VERSION OF WINDOWS 98 -- THAT AS LONG AS THEY **\*54** ARE GOING TO BUNDLE, THEIR BROWSER BUNDLES A COMPETITIVE BROWSER.

SO WHAT IT TRIES TO DO -- AND NUMBER 5 IS LIMITED IN TIME -- WHAT IT TRIES TO DO, IN ORDER TO PREVENT THE TIPPING OF THE MARKET IRREVOCABLY IN MICROSOFT'S DIRECTION, IS TO PRESERVE SOME ELEMENT OF COMPETITION BY REQUIRING MICROSOFT TO GIVE END-USERS AND OEM'S A REALISTIC CHOICE BETWEEN BROWSERS. AND SINCE WE CAN'T -- WE AGREE WITH THE COURT WE CANNOT, AS A PRACTICAL MATTER, IN A MEANINGFUL PERIOD OF TIME, GET THEM TO TOTALLY TAKE OUT ALL OF THE CODE OF THEIR INTERNET EXPLORER. AND SO WHAT WE'RE SAYING IS THAT THEY OUGHT TO BE REQUIRED, FOR A LIMITED PERIOD OF TIME WHILE THIS SORTS ITSELF OUT, SO THE CHOICE IS NOT ENTIRELY FORECLOSED, TO GIVE A CHOICE OF EITHER THEIRS OR A COMPETITIVE BROWSER.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THAT WOULD REQUIRE MICROSOFT TO DO SOMETHING. IT WOULD REQUIRE THEM, HOWEVER, ONLY TO ADD, NOT SUBTRACT. AGAIN, YOUR HONOR, I DON'T THINK THEY WILL GET UP HERE AND TELL YOU THAT THEY CANNOT PRACTICABLY DO THAT. IF THEY DO, WE WILL PROVE THAT WRONG AT A HEARING.

WE RECOGNIZE THAT WILL TAKE SOME TIME. WHAT WE'RE ASKING FOR IS A HEARING SO THAT WE CAN GET AN ORDER. AND, OBVIOUSLY, AT THAT HEARING, THEY WILL BE ABLE TO CONVINCE THE COURT HOW LONG THEY SHOULD HAVE IN ORDER TO IMPLEMENT THIS PROVISION.

**\*55** WITH RESPECT TO THE FIRST PARAGRAPHS OF THE RELIEF -- WITH RESPECT TO PARAGRAPH 4, BUT ALSO WITH RESPECT TO PARAGRAPHS 1, 2 AND 3, THOSE PARAGRAPHS OF THE RELIEF, 1, 2, 3 AND 4, CAN BE IMPLEMENTED IMMEDIATELY, BECAUSE ALL THOSE PARAGRAPHS SEEK IS TO ENJOIN THE ENFORCEMENT OF CONTRACTS.

THE COURT: ALL RIGHT.

MR. BOIES: PARAGRAPH 5 WOULD TAKE SOME TIME TO IMPLEMENT, BUT MICROSOFT ISN'T EVEN GOING TO BEGIN TO DO THAT WORK UNTIL WE GET AN ORDER FROM THE COURT. AND SO WHAT WE WANT TO DO IS WE WANT TO ACCELERATE, AS MUCH AS WE CAN, THE TIME WHEN WE CAN HAVE THE HEARING, DEMONSTRATE OUR ENTITLEMENT TO THE RELIEF IN NUMBER 5, AND THEN MICROSOFT WILL HAVE AN APPROPRIATE AMOUNT OF TIME IN ORDER TO IMPLEMENT IT.

NOW, WITH RESPECT TO PARAGRAPH 6, YOUR HONOR, THIS DOES NOT, AGAIN, REQUIRE MICROSOFT TO DO ANYTHING OTHER THAN TO GIVE THE OEM A DEDUCTION. THAT IS, MICROSOFT'S ONLY ACTION THAT IS REQUIRED IN PARAGRAPH 6 IS THAT TO THE EXTENT THAT AN OEM DOES NOT WANT THIS BUNDLED INTERNET EXPLORER, THE OEM CAN SAY, "I DON'T WANT IT; I AM GOING TO REMOVE IT," AND MICROSOFT THEN HAS TO GIVE THEM A DEDUCTION FROM THE LICENSE PRICE IN ORDER TO COMPENSATE THEM FOR THE REASONABLE COST OF REMOVING IT.

AGAIN, THE REASON FOR THIS APPROACH IS TO -- WE **\*56** KNEW THAT MICROSOFT WOULD COME IN AND SAY TO YOUR HONOR THAT IT WOULD TAKE FOREVER TO REDESIGN THEIR PRODUCTS AND THE PRODUCTS WERE ALREADY OUT THERE. AND SO WHAT WE HAVE TRIED TO DO IS STRUCTURE RELIEF THAT REQUIRED THEM TO DO VERY LITTLE. IT DOES NOT REQUIRE THEM TO REDESIGN THEIR PRODUCT AT ALL WITH RESPECT TO 1, 2, 3, 4 AND 6. WITH RESPECT TO ALL OF THOSE PARAGRAPHS OF THE RELIEF, IT IS SIMPLY GIVING THE OEM -- OR IN THE CASE OF SOME PARAGRAPHS, THE INTERNET SERVICE PROVIDER -- THE RIGHT TO DO WHAT IS NOW FORBIDDEN THEM UNDER CONTRACTS, AND WITH RESPECT TO PARAGRAPH 6, IT IS TO REQUIRE MICROSOFT TO PAY THE REASONABLE COST OF THE OEM'S DOING THE UNBUNDLING.

WITH RESPECT TO PARAGRAPH 5, PARAGRAPH 5 IS DIFFERENT. PARAGRAPH 5 DOES REQUIRE THEM TO DO SOMETHING. IT REQUIRES THEM TO ADD A COMPETITIVE BROWSER FOR THE LIMITED PERIOD OF TIME AT ISSUE.

THE COURT: ALL RIGHT. THANK YOU.

MR. BOIES: THANK YOU, YOUR HONOR.

THE COURT: MR. WARDEN?

MR. HOUCK: YOUR HONOR, MY NAME IS STEPHEN HOUCK. I REPRESENT NEW YORK STATE AND THE OTHER NINETEEN STATES AND THE DISTRICT OF COLUMBIA.

I DON'T WANT TO REPEAT WHAT MR. BOIES JUST STATED, BUT I DO WANT TO TAKE A MINUTE BRIEFLY TO TELL YOU WHAT THE STATES' CASE IS ABOUT IN RESPONSE TO YOUR HONOR'S QUESTIONS.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*57** IN ESSENCE, WHAT THE STATES ARE COMPLAINING ABOUT ARE TWO FORMS OF CONTRACTUAL ARRANGEMENTS. ONE IS THE CONTRACTUAL ARRANGEMENTS BY WHICH MICROSOFT TIES THE WEB BROWSER TO ITS DOMINANT OPERATING SYSTEM. THESE ARE CONTRACT PROVISIONS IMPOSED ON THE OEM'S. AND THE OTHER SET OF CONTRACT PROVISIONS AT ISSUE ARE EXCLUSIONARY CONTRACTS MICROSOFT HAS WITH INTERNET SERVICE PROVIDERS AND OTHERS THAT PREVENT THEM FROM PROMOTING OR DISTRIBUTING COMPETING BROWSERS.

SO, IN ESSENCE, WHAT WE'RE ASKING YOUR HONOR TO DO IS TO LIFT THESE CONTRACTUAL RESTRICTIONS.

DURING THE COURSE OF OUR INVESTIGATION, WE HAVE ALSO SEEN CONSIDERABLE CONCERN AMONG OEM'S THAT IF THEY UTILIZE COMPETITIVE PRODUCTS WITH MICROSOFT'S OPERATING SYSTEM, MICROSOFT WILL RETALIATE OR DISCRIMINATE AGAINST THEM. SO ONE OF THE PROVISIONS IN OUR REQUESTED RELIEF IS ENTRY OF AN ORDER PROHIBITING THAT SORT OF CONDUCT BY MICROSOFT.

WITH RESPECT TO URGENCY, YOUR HONOR, WE HAVE SPOKEN TO A RESPECTED ANALYST IN THE COMPUTER INDUSTRY, INTERNATIONAL DATA, WHICH PREDICTS THAT MICROSOFT, BEGINNING JUNE 25TH, WILL SHIP APPROXIMATELY TWO MILLION COPIES OF WINDOWS 98 PER MONTH.

SO WE DO BELIEVE, YOUR HONOR, THAT THERE IS CONSIDERABLE URGENCY HERE TO ENTER RELIEF THAT WILL PROVIDE **\*58** THE CHOICE WE SEEK FOR CONSUMERS BEFORE THE MARKET, AS MR. BOIES SAID, CAN TIP IRREVOCABLY IN FAVOR OF MICROSOFT.

THAT'S ESSENTIALLY WHAT WE'RE ASKING FOR. WE THINK THIS CAN BE ACCOMPLISHED RELATIVELY QUICKLY AND RELATIVELY EASILY, JUDGE.

THANK YOU.

THE COURT: ALL RIGHT. THANK YOU, MR. HOUCK.

MR. WARDEN: YOUR HONOR, I AM GOING TO WORK BACK FROM PARAGRAPH 7 -- I AM SORRY -- PARAGRAPH 6 OF THE REQUEST FOR RELIEF, BUT FIRST LET ME SAY THAT I BELIEVE THE GOVERNMENT, AT LEAST, HAS CONCEDED THAT JUNE 25 IS NOT RELEVANT TO THE MOTION. THERE IS NOTHING MAGIC ABOUT THE RELEASE DATE TO THE RELIEF THAT IS REQUESTED.

I BELIEVE THE STATES MENTIONED THAT DATE AND SAID TWO MILLION A MONTH AFTER THAT, BUT TWO MILLION A MONTH IS GOING ON NOW, TOO.

NOW, AS TO PARAGRAPH 6, ON ANY VERSION OF THE FACTS, THERE IS NO URGENCY TO PARAGRAPH 6. FIRST OF ALL, IT IS NOT PRACTICABLE, CONTRARY TO THE PROPOSITION ASSERTED BY MY BROTHER, MR. BOIES, TO REMOVE THE MEANS BY WHICH USERS MAY READILY USE I.E. TO BROWSE THE WEB WITHOUT A REWRITE OF WINDOWS 98.

SECONDLY, AS TO PARAGRAPH 6, I AM ADVISED THAT THE RELIEF SOUGHT BY 6(ii) OF OUR PAYING THE COST OF DELETING OR NOT INSTALLING IS ABOUT TWO CENTS PER PERSONAL COMPUTER.

**\*59** THE COURT: ALL RIGHT.

MR. WARDEN: SO I DON'T SEE HOW THERE COULD POSSIBLY BE ANY URGENCY TO THAT.

GOING ONTO PARAGRAPH 5, I HAVE TWO POINTS TO MAKE. ONE IS, AGAIN, THAT IT'S NOT PRACTICABLE TO DO THIS WITHOUT A REWRITE, AND THE SECOND IS WITH RESPECT TO THE SO-CALLED "MUST CARRY" PROVISION, 5(i), WHICH IS WHAT MR. BOIES FOCUSED ON, YOUR HONOR WILL KNOW, AND I AM SURE HAVE IN MIND, THAT OEM'S ARE AND ALWAYS HAVE BEEN FREE TO INSTALL NETSCAPE

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NAVIGATOR ON TOP OF WINDOWS.

OUR LICENSE DOES NOT EVEN BEGIN TO PURPORT TO DO THAT. AND THERE IS NO TECHNOLOGICAL BARRIER TO DOING IT. IN FACT, WE HAVE GONE OUT OF OUR WAY TO BE SURE THAT NETSCAPE AND OTHERS CAN DESIGN THEIR PRODUCTS TO WORK WITH WINDOWS CONTINUALLY. AND NO ONE HAS EVER CONTENDED OTHERWISE.

SO WHAT IS SOUGHT IN 5(i) TO BE REQUIRED TO BE DONE BY US IS WHOLLY UNNECESSARY SINCE OEM'S ARE ABLE TO DO IT AND IT'S FREE TO THEM FROM NETSCAPE.

THE COURT: YOU SAY 5(ii) WOULD REQUIRE A REWRITE?

MR. WARDEN: YES. I MEAN YOU COULD DELETE THE ICON, BUT IF YOU'RE TALKING ABOUT DELETING THE OTHER MEANS BY WHICH USERS MAY READILY USE I.E. TO BROWSE THE WEB, THAT CANNOT BE DONE WITHOUT A REWRITE OF WINDOWS 98. IT IS NOT PRACTICABLE.

**\*60** THE COURT: GO TO 4.

MR. WARDEN: NOW, AS YOUR HONOR KNOWS, USERS CAN DELETE ANYTHING THEY WANT. AND IF THEY INSTALL NAVIGATOR, OR IF THE OEM INSTALLS NAVIGATOR, IT BECOMES THE DEFAULT BROWSER, BECAUSE IT'S PROGRAMMED TO MAKE ITSELF SUCH.

GOING TO 4, FIRST OF ALL, THIS HAS NOTHING TO DO -- 4 HAS NOTHING TO DO WITH THE ALLEGED URGENT NEED FOR RELIEF AFFECTING BROWSERS TO THE EXTENT THAT IT HAS TO DO WITH SCREENS, "BOOT UP" SEQUENCE AND SO ON. WHAT THIS IS A REQUEST FOR IS THAT OEM'S BE ALLOWED TO CREATE THEIR OWN VERSION OF OUR COPYRIGHTED PRODUCT, WHICH WE WARRANT AND WE ARE REGARDED AS THE SPONSOR OF BY THE ULTIMATE END-USER AND WHICH WE HAVE TO SUPPORT.

ALL THE MANUALS AND BACK-UP DISKS FOR WINDOWS 98 ASSUME THE MICROSOFT COPYRIGHTED VERSION OF WINDOWS 98, NOT SOME OTHER VERSION. AND THIS, I THINK, IS IRREPARABLE INJURY TO MICROSOFT, BOTH, AS A MATTER OF FACT, BECAUSE OF THOSE FACTS, THAT WE ARE THE AUTHOR AND VIEWED AS SUCH, AND ALSO AS A MATTER OF LAW. IT'S LIKE SAYING THAT A PUBLISHER OF A COPYRIGHTED WORK CAN CHANGE THE AUTHOR'S NAME OR WHATEVER.

THE COURT: MR. BOIES TELLS ME THAT YOU WOULD NOT STAND UP HERE AND TELL ME THAT PARAGRAPH 4 WOULD REQUIRE A REWRITE. IS THAT CORRECT?

MR. WARDEN: IT DOES NOT REQUIRE US TO DO ANYTHING, **\*61** AS IT'S WRITTEN, EXCEPT REWRITE OUR LICENSES.

THE COURT: OKAY.

MR. WARDEN: ALL RIGHT. BUT IT, IN MY OPINION, DOES CAUSE US IRREPARABLE INJURY, BECAUSE IT AUTHORIZES THE ALTERATION OF OUR COPYRIGHTED PRODUCT BY ITS PUBLISHERS, THE OEM'S. REMEMBER, THE END-USER IS ALWAYS FREE TO MAKE THAT MODIFICATION.

THE COURT: WE HAVEN'T GOTTEN TO IRREPARABLE HARM YET.

MR. WARDEN: ALL RIGHT. WELL, I THINK THAT HAS TO DO WITH URGENCY. AND I DON'T SEE ANYTHING URGENT ABOUT THIS.

THE COURT: I CAME OUT HERE THINKING THAT THERE WAS SOMETHING MAGIC ABOUT THE JUNE 25TH DATE, AND I THINK IT IS FAIRLY CLEAR TO ME THAT JUNE 25TH IS NOT A DATE OVER WHICH YOU EXERCISE ANY SIGNIFICANT CONTROL IN TERMS OF WHAT'S OUT ON THE MARKET OR THAT IT'S OF ANY PARTICULAR CONSEQUENCE, OTHER THAN THAT IT'S SOONER, RATHER THAN LATER, TO THE

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PLAINTIFFS.

MR. WARDEN: RIGHT. I THINK IS ABSOLUTELY RIGHT.

THE COURT: LET'S TALK ABOUT GETTING THIS MATTER READY FOR TRIAL. BY THE TIME YOU PROPOSE THAT YOU WOULD BE READY TO GO TO HEARING ON A PRELIMINARY INJUNCTION BY FIGURES THAT I HAVE HEARD HERE THIS MORNING, THERE WOULD BE 16 OR 18 MILLION HORSES OUT OF THE BARN. I THINK THAT IS *62 PROBABLY TOO MANY, BUT I AM SYMPATHETIC WITH YOUR BEING GIVEN AN OPPORTUNITY TO PREPARE REASONABLY TO TAKE THIS CASE TO HEARING ON A PRELIMINARY INJUNCTION.

AGAIN, MY OBSERVATION IS THAT IF I HAD MY DRUTHERS, I PROBABLY WOULD LIKE TO SEE THE HEARING ON THE MERITS CONSOLIDATED WITH THE PRELIMINARY INJUNCTION HEARING AND MAKE ONE FINAL DISPOSITION OF IT AND THAT EITHER YOU OR MR. BOIES AND HIS CO-PLAINTIFFS TAKE IT DIRECTLY UP TO THE FIFTH FLOOR. BUT I DON'T KNOW WHETHER THAT'S A PRACTICAL POSSIBILITY HERE. WHAT WOULD BE YOUR OBSERVATION ON IT?

MR. WARDEN: I THINK I WOULD HAVE TO CONFER WITH MY CLIENT ABOUT THAT BEFORE RESPONDING, YOUR HONOR, AND I WOULD BE HAPPY TO DO SO.

THE COURT: ALL RIGHT.

MR. WARDEN: I DO THINK IT'S QUITE CLEAR THAT THE TIME PERIOD WE HAVE ASKED FOR, EVEN IF IT'S JUST FOR A PRELIMINARY INJUNCTION HEARING, IS REASONABLE AND FAIR AND WHAT A FAIR VIEW OF DUE PROCESS WOULD REQUIRE IN RELATION TO THE AMOUNT OF TIME THE GOVERNMENT HAS HAD TO CONDUCT AN EX PARTE INVESTIGATION, WITH COMPULSORY PROCESS, AND TO SUBMIT THE TALL STACK OF PAPERS OVER THERE ON THE PAPER. THE SHORT STACK IS THE STATES' PAPERS. AND WE HAVE GOT A LOT OF DEPOSITIONS TO TAKE. AND I WON'T BORE YOUR HONOR BY ENUMERATING THEM, BUT I WILL BE HAPPY TO CONFER WITH MY CLIENT.

*63 THE COURT: YOU CERTAINLY HAVE A LOT OF DEPOSITIONS THAT YOU MAY WANT TO TAKE IN CONNECTION WITH A DISPOSITION ON THE MERITS, BUT IN TERMS OF PRELIMINARY RELIEF, TO WAIT UNTIL NOVEMBER, OR DECEMBER, OR JANUARY FOR THIS MATTER TO COME ONTO HEARING MEANS THAT IT'S NOT PRELIMINARY RELIEF AT ALL.

MR. WARDEN: YOUR HONOR, IF THE GOVERNMENT WERE TO SIMPLIFY THEIR APPLICATION FOR PRELIMINARY RELIEF BY DROPPING SOME LEGAL CLAIMS AND SOME FACTUAL CLAIMS, THAT WOULD BE A DIFFERENT MATTER, BUT THEY HAVE RELIED ON 26 NON-MIRCOSOFT WITNESSES IN THEIR MOVING PAPERS.

I THINK WE, OBVIOUSLY, HAVE TO DEAL WITH THOSE 26, AND THEN WE HAVE TO DEAL WITH OTHER RELEVANT WITNESSES, LIKE THE EIGHT OTHER SIGNIFICANT MANUFACTURERS OF OPERATING SYSTEMS, ALL OF WHOM INCLUDE BROWSING CAPABILITY IN THEIR OPERATING SYSTEMS.

IN OTHER WORDS, WHAT WE'RE DOING ISN'T AT ALL UNUSUAL. OPERATING SYSTEMS COME WITH BROWSERS, JUST LIKE CARS COME WITH ENGINES, AS JUSTICE O'CONNOR OBSERVED IN JEFFERSON PARISH.

IN ANY EVENT, WE HAVE TO DEPOSE THOSE PEOPLE. WE HAVE TO DEPOSE NETSCAPE, FOR WHOSE PURPORTED BENEFIT THIS ACTION IS BROUGHT, AND THAT IS GOING TO TAKE SEVERAL DEPOSITIONS, BECAUSE THERE IS A LOT OF ALLEGATIONS ABOUT A SUPPOSED MEETING. NO ONE CLAIMS ANY AGREEMENT WAS REACHED *64 AT THE MEETING OF ANY KIND, BUT WE HAVE TO DO THAT TO BE READY FOR THE PRELIMINARY INJUNCTION HEARING, IF THOSE FACTUAL ELEMENTS ARE TO BE A PART OF THAT HEARING.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 1152 PLI/Corp 17)**

AND I THINK YOUR HONOR SHOULD KNOW ON THIS QUESTION OF URGENCY THAT MR. BARKSDALE, CEO OF NETSCAPE, SAID ONE MONTH AGO AT A PRESS CONFERENCE IN LONDON THAT MICROSOFT'S UPCOMING WINDOWS 98 WILL BE A CERTAIN SUCCESS BUT WILL NOT HAVE A MAJOR IMPACT OR NETSCAPE'S SHARE OF THE WEB BROWSER MARKET.

AND I HAVE, IF YOUR HONOR WOULD LIKE -- MR. PEPPERMAN CAN HAND UP THE PRINTOUT FROM THE WEB OF THE REPORT OF THAT PRESS CONFERENCE.

THE COURT: WHOSE PRESS CONFERENCE IS THIS?

MR. WARDEN: NETSCAPE. THE MANUFACTURER OF THE NETSCAPE NAVIGATOR.

THE COURT: WHAT AM I SUPPOSED TO DO WITH THIS?

MR. WARDEN: I AM JUST CALLING THIS TO YOUR HONOR'S ATTENTION ON THE QUESTION OF URGENCY. WE'RE SUPPOSEDLY ABOUT TO TIP THEM OUT OF THE BROWSER BUSINESS, AND THEY SAY THAT WINDOWS 98 ISN'T GOING TO HAVE ANY EFFECT ON THEM.

WOULD YOU LIKE ME NOW TO CONFER ABOUT YOUR HONOR'S PROCEDURAL SUGGESTION OR QUESTION?

THE COURT: YES. WHY DON'T YOU DO THAT. I AM GOING TO ASK MR. BOIES AND MR. HOUCK IF THEY WILL TELL ME, *65 IN VIEW OF THE FACT THAT THERE APPEARS TO BE NO MAGIC TO JUNE 25TH, WHY THEIR PROPOSED HEARING DATE OF JUNE 18TH ISN'T AS UNREALISTIC AS THE DEFENDANT SAYS IT IS.

MR. BOIES: YOUR HONOR, I THINK THE COURT IS RIGHT THAT THERE IS NO ABSOLUTE MAGIC ABOUT JUNE 25TH, BECAUSE SOME SHIPMENTS OF WINDOWS 98 ARE INEVITABLY GOING TO GO OUT ON JUNE 25TH. AND WE HAVE NOT MADE ANY EFFORT TO STOP THAT. HOWEVER, YOUR HONOR, THERE ARE THREE THINGS --

THE COURT: I GATHER THERE ARE A LOT THAT ARE GOING TO GO OUT.

MR. BOIES: THERE ARE A LOT THAT ARE GOING TO GO OUT, BUT A LOT ARE GOING TO GO OUT THE NEXT MONTH AND THE MONTH AFTER THAT. AND WHAT WE'RE SEEKING FIRST IS RELIEF FROM THE CONTRACTUAL RESTRICTIONS IN PARAGRAPHS 1, 2, 3, AND 4. AND IT IS CRITICAL THAT THOSE CONTRACTUAL RESTRICTIONS BE ELIMINATED SO THAT THE OEM'S AND THE OTHER PEOPLE AFFECTED BY THOSE CONTRACTUAL PROVISIONS CAN BEGIN TO TAKE ACTION THAT WILL PERMIT THEM TO INTRODUCE CHOICE AS A RESULT OF THE ELIMINATION OF THOSE CONTRACTUAL PROVISIONS. AND IT IS IMPORTANT THAT THAT BE DONE AS CONTEMPORANEOUSLY AS POSSIBLE WITH THE JUNE 25TH SHIP DATE.

THE SECOND POINT, YOUR HONOR, IS THAT ALTHOUGH THERE IS CERTAINLY GOING TO BE SOME SHIPMENTS THAT COME OUT ON JUNE 25, THERE REALLY ARE TWO BASIC PRODUCT CYCLES IN THE P.C. INDUSTRY. ONE IS A PRODUCT CYCLE THAT COMES OUT ABOUT *66 NOW AND ONE IS A PRODUCT CYCLE THAT WILL BEGIN ROUGHLY IN SEPTEMBER IN ANTICIPATION OF THE CHRISTMAS SEASON.

NOW, IF WE DON'T HAVE PRELIMINARY RELIEF BEFORE OEM'S ARE RECEIVING WHATEVER OPERATING SYSTEM THEY ARE GOING TO PUT IN THEIR COMPUTERS THAT THEY SHIP IN SEPTEMBER -- THAT IS, IF WE DON'T HAVE A RESOLUTION OF THIS BY LATE JULY OR EARLY AUGUST, WE'RE GOING TO BE FACED WITH THE SAME POSITION THAT WE NOW HAVE, WHICH IS THAT THE ARGUMENT IS MADE, "WELL, YOU HAVE MISSED THIS OPPORTUNITY TO STOP IT, AND SO PUT IT OFF FOR A FEW MORE MONTHS." SO THAT WHILE THERE ARE CERTAINLY GOING TO BE JUNE 25TH COPIES THAT WILL GO OUT, ONE OF THE THINGS THAT WE WANT TO BE SURE OF IS THAT WE SOLVE THIS PROBLEM BEFORE THE SHIPMENTS THAT ARE GOING TO GO OUT WITH RESPECT TO THE SEPTEMBER SHIPMENTS IN ANTICIPATION OF THE CHRISTMAS SEASON.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THE THIRD POINT, YOUR HONOR -- AND I THINK YOUR HONOR PUT YOUR FINGER RIGHT ON IT WHEN YOU SAID THERE ARE AN AWFUL LOT OF HORSES THAT ARE GOING OUT OF THE BARN WHILE WE DELAY, AND THAT IS THAT AS THE PAPERS MAKE CLEAR AND AS THE AFFIDAVITS OF THE EXPERT ECONOMIST MAKE CLEAR, THIS IS A SITUATION IN WHICH MICROSOFT HAS ALREADY MADE TREMENDOUS STRIDES IN TERMS OF MARKET SHARE.

DOMINANCE, ONCE ACHIEVED, PARTICULARLY GIVEN MICROSOFT'S OTHER SITUATION, IS GOING TO MAKE IT VERY, VERY DIFFICULT TO REVERSE THAT DOMINANCE. AND SO IT IS IMPORTANT **\*67** THAT THERE BE PROMPT RELIEF. IT DOESN'T HAVE TO BE BY JUNE 25. I AM NOT GOING TO STAND HERE AND TELL THE COURT IT HAS TO BE BY JUNE 25, OR HAS TO BE BY JUNE 18TH, OR HAS TO BE BY JUNE 26TH, BUT WHAT I WILL SAY TO THE COURT IS THAT IT HAS TO BE PROMPT AND IT HAS TO BE SO THAT WHATEVER THE RULES OF THE GAME ARE, THEY ARE ESTABLISHED BY LATE JULY OR EARLY AUGUST.

NOW, I WOULD ALSO SAY, YOUR HONOR, THAT THIS IS NOT A SITUATION IN WHICH MY FRIEND AND COLLEAGUE HAS IDENTIFIED A LARGE NUMBER OF FACTUAL ISSUES. HE SAYS 6 WOULD REQUIRE A REWRITE, BUT HE SAYS IT'S ONLY GOING TO COST TWO CENTS A COPY. THAT IS NOT MUCH OF A REWRITE.

HE SAYS THAT HE THINKS HE CAN WIN PARAGRAPH 4 ON AN ARGUMENT UNDER THE LAW OF COPYRIGHT. THAT IS NOT SOMETHING THAT YOU NEED A LOT OF DISCOVERY FOR.

THERE ARE NOT A LOT OF ISSUES HERE. IF THEY WANT TO CONTEST WHAT CAN BE DONE, OR WHAT CAN'T BE DONE, OR HOW LONG IT'S GOING TO TAKE, THAT IS SOMETHING FOR ONE WITNESS OR TWO WITNESSES, AT MOST, AT A HEARING. THE FUNDAMENTAL FACTS OF MICROSOFT'S POWER IN THE OPERATING SYSTEM MARKET -- ITS CONTRACTS ARE WHAT THEY ARE AND THE PRACTICES ARE WHAT THEY ARE. THESE ARE THEIR PRACTICES, THEIR CONTRACTS, AND THEIR MARKET SHARE. THERE ISN'T A LOT OF FACTUAL INVESTIGATION THAT THEY NEED. THERE ISN'T A LOT OF DISPUTED FACTUAL ISSUES, WHICH IS WHAT WOULD TAKE A LONG TIME FOR **\*68** DISCOVERY OR FOR A HEARING.

THEY HAVE THEIR LEGAL ARGUMENTS. THEY ARE GOING TO MAKE THEIR LEGAL ARGUMENTS, AND WE'RE GOING TO MAKE OURS, BUT I JUST URGE THE COURT TO DO THAT AS PROMPTLY AS POSSIBLE.

THE COURT: ALL RIGHT.

WHAT IS YOUR POSITION, BY THE WAY, ON CONSOLIDATION UNDER RULE 65(a)(2).

MR. BOIES: YOUR HONOR, WE ABSOLUTELY AGREE THAT THIS IS A CASE THAT IS APPROPRIATE FOR CONSOLIDATION. OUR ONLY POINT WAS THAT YOU CAN CONSOLIDATE FOR DISCOVERY, CONSOLIDATE FOR MOTIONS AND LEAVE THE ISSUE OF CONSOLIDATION FOR TRIAL LATER. WE THINK IT'S PREMATURE TO DECIDE HOW THIS CASE WOULD BE TRIED.

THE COURT: I'M NOT TALKING ABOUT CONSOLIDATION OF CASES. CONSOLIDATION OF PRELIMINARY INJUNCTION AND HEARING ON THE MERITS.

MR. BOIES: OH, WITH RESPECT TO CONSOLIDATION OF THAT -- I AM SORRY, YOUR HONOR. IF WE COULD GET A HEARING SUCH THAT WE COULD RESOLVE THIS BY LATE JULY OR EARLY AUGUST, I THINK THAT WOULD MAKE SENSE.

THE COURT: ALL RIGHT.

MR. BOIES: HOWEVER, I THINK IT IS CRITICAL, YOUR HONOR, THAT THE ISSUE BE RESOLVED, AT LEAST ON A PRELIMINARY BASIS, BY LATE JULY OR EARLY AUGUST.

**\*69** THE COURT: ALL RIGHT. THANK YOU.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

MR. HOUCK?

MR. HOUCK: YOUR HONOR, I AGREE WITH MR. BOIES. THERE IS NOTHING MAGICAL ABOUT JUNE 25TH, BUT WE DO BELIEVE THERE IS CONSIDERABLE URGENCY. I THINK THE COMPUTER INDUSTRY PRESENTS A CHALLENGE FOR THE COURTS AND FOR LAWYERS AS JUDICIAL OFFICERS. THE COMPUTER MARKETPLACE TRANSFORMS SO RAPIDLY THAT IF WE ALLOW WHAT WE BELIEVE ARE THESE PREDATORY PRACTICES TO STAY IN PLACE ANY LONGER THAN NECESSARY, THE DAMAGE TO THE MARKETPLACE CAN BE SEVERE AND MILLIONS OF CONSUMERS EVERY MONTH WILL BE INJURED.

I ALSO JUST WANTED TO ADDRESS VERY BRIEFLY MR. WARDEN'S ARGUMENT WITH RESPECT TO DISCOVERY AND HIS NEED FOR DISCOVERY. WE DON'T THINK MUCH DISCOVERY IS NECESSARY, YOUR HONOR. THE ISSUES HERE ARE REALLY ISSUES PARTICULARLY WITHIN MICROSOFT'S PURVIEW AND KNOWLEDGE.

NEW YORK STATE COMMENCED ITS INVESTIGATION APPROXIMATELY NINE MONTHS AGO. MOST OF THAT TIME WAS UTILIZED BY US TO LEARN BASIC FACTS ABOUT THE INDUSTRY AND ABOUT MICROSOFT, WHICH THEY CERTAINLY ALREADY WELL KNOW. AND I WOULD ADVERT YOUR HONOR TO PAGE 3 OF MICROSOFT'S MOTION TO CONSOLIDATE, WHERE MICROSOFT LISTS WHAT IT CONSIDERS TO BE THE ISSUES OF LAW AND FACT OF RELEVANCE HERE. I WOULDN'T NECESSARILY AGREE WITH ALL OF THEM, BUT THEY LIST TEN, AND I WOULD JUST LIKE TO GO THROUGH THEM, *70 BECAUSE I THINK IT ILLUSTRATES THE POINT THAT REALLY NO DISCOVERY IS NECESSARY.

THE FIRST ISSUE THEY IDENTIFY IS THE DESIGN OF WINDOWS 98. THIS CERTAINLY IS AN ISSUE THAT MICROSOFT HAS PLENTY OF KNOWLEDGE ABOUT AND DOESN'T NEED ANY DISCOVERY ON.

THE SECOND ISSUE THEY IDENTIFY IS THE ROLE OF INTERNET EXPLORER TECHNOLOGIES IN WINDOW 98. AGAIN, THIS IS SOMETHING PARTICULARLY WITHIN THEIR KEN.

THE THIRD ISSUE THEY IDENTIFY IS THE EXTENT TO WHICH THOSE TECHNOLOGIES CAN BE REMOVED FROM WINDOWS 98 WITHOUT SERIOUSLY DEGRADING THE FUNCTIONALITY OF THE OPERATING SYSTEM. ONCE AGAIN, THIS IS A TECHNICAL ISSUE THAT MICROSOFT WELL KNOWS ABOUT THAT COULD READILY BE THE SUBJECT OF TECHNICAL TESTIMONY AT A PRELIMINARY INJUNCTION HEARING.

THE FOURTH ISSUE THEY IDENTIFY IS MICROSOFT'S LICENSE AGREEMENTS WITH COMPUTER MANUFACTURES. AS MR. BOIES SAYS, THESE CONTRACTS ARE WHAT THEY ARE. THEY ARE BLACK AND WHITE. THERE IS NOTHING MAGICAL ABOUT THEM THAT REQUIRES A LOT OF DISCOVERY.

THE FIFTH ITEM IS ANOTHER ITEM I MENTIONED EARLIER, WHICH IS MICROSOFT'S AGREEMENTS WITH INTERNET SERVICE PROVIDERS, INTERNET CONTENT PROVIDERS, AND ONLINE SERVICES. ONCE AGAIN, THESE ARE CONTRACTS THAT THE COURT CAN READILY READ AND UNDERSTAND WITHOUT THE NEED FOR *71 SUBSTANTIAL DISCOVERY.

THE SIXTH ISSUE THEY IDENTIFY IS A DEFINITION OF RELEVANT PRODUCT AND GEOGRAPHIC MARKETS. THIS IS A SUBJECT OF THE EXPERT AFFIDAVITS WE SUBMITTED BY ECONOMISTS. THIS IS A SUBJECT THAT OCCURS ALL THE TIME IN MERGER CASES THAT IS DEALT WITH QUITE RAPIDLY AND READILY IN THE CONTEXT OF PRELIMINARY INJUNCTION HEARINGS.

THE SEVENTH ISSUE THEY HAVE IDENTIFIED IS WHETHER MICROSOFT POSSESSES MONOPOLY POWER. I DON'T THINK ANYONE SERIOUSLY WILL CONTEND THAT A NINETY-PERCENT MARKET SHARE, WHICH THEY HAVE IN THE OPERATING SYSTEM MARKET, IS NOT MONOPOLY POWER. IN ANY EVENT, IT IS SOMETHING THAT IS READILY ADDUCIBLE BY EXPERT ECONOMISTS' TESTIMONY.

THE EIGHTH ISSUE THEY IDENTIFY IS WHETHER WINDOWS 98 AND ITS TIGHTLY-INTEGRATED, AS THEY

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

SAY, INTERNET EXPLORER ELEMENTS ARE "SEPARATE PRODUCTS" FOR TYING LAW PURPOSES. THIS IS ESSENTIALLY A LEGAL ISSUE, JUDGE.

 THE NINTH ISSUE THEY IDENTIFY IS WHETHER THERE IS ANY DEMAND AMONG COMPUTER MANUFACTURERS FOR OPERATING SYSTEM SOFTWARE WITHOUT INTERNET TECHNOLOGIES. AGAIN, WHILE THIS MAY REQUIRE A LITTLE BIT OF INFORMATION OUTSIDE MICROSOFT, IT IS CERTAINLY SOMETHING THAT WE HAVE ATTEMPTED TO ESTABLISH, PRINCIPALLY THROUGH THEIR DOCUMENTS AND TESTIMONY.

 THE TENTH AND FINAL ISSUE THEY HAVE IDENTIFIED IS *72 WHETHER THE RELIEF REQUESTED BY THE D.O.J. AND THE STATES CONSTITUTES A CONFISCATION OF MICROSOFT'S INTELLECTUAL PROPERTY RIGHTS, WHICH IS SOMETHING MR. WARDEN HAS ALREADY ARGUED. AND THAT, AGAIN, IS A LEGAL ISSUE.

 I DON'T THINK MICROSOFT IS SURPRISED BY ANY OF THE LEGAL ISSUES HERE. DURING THE COURSE OF OUR INVESTIGATION, THEY FAVORED US WITH A LENGTHY WHITE PAPER DISCUSSING THE LEGAL ISSUES. AS YOUR HONOR MIGHT SURMISE, WE DID NOT FIND THAT WHITE PAPER PERSUASIVE. YOUR HONOR MIGHT LOOK AT IT OTHERWISE, BUT THESE ARE LEGAL ISSUES THAT CLEARLY THE SULLIVAN & CROMWELL FIRM, A VERY FINE FIRM, HAS THOUGHT LONG AND HARD ABOUT, AND I HAVE EVERY EXPECTATION THEY ALREADY HAVE A BRIEF SOMEWHERE SITTING IN A WORD PROCESSOR, UNDOUBTEDLY IN MICROSOFT WORD.

 THE POINT IS, YOUR HONOR, NONE OF THESE ISSUES REALLY REQUIRE A LOT OF DISCOVERY. THEY ARE LEGAL ISSUES AND PRETTY STRAIGHTFORWARD CONTRACTUAL ISSUES.

 THE COURT: ALL RIGHT. WHAT'S YOUR POSITION ON CONSOLIDATION OF MERITS AND PRELIMINARY INJUNCTION, IF IT CAN BE DONE?

 MR. HOUCK: WELL, OUR PRINCIPAL CONCERN IS THAT THAT NOT DELAY THE HEARING ON PRELIMINARY INJUNCTION, BECAUSE WE THINK THAT RELIEF IS VERY IMPORTANT.

 THE COURT: ALL RIGHT.

 MR. WARDEN?

 *73 MR. WARDEN: I DIDN'T ACTUALLY HAVE A CHANCE TO CONFER WITH MY CLIENT, BECAUSE I HAD TO LISTEN TO THIS, BUT I WANT TO MAKE JUST A FEW POINTS, YOUR HONOR.

 FIRST IS A FACTUAL MATTER OR TWO FACTUAL MATTERS. ONE IS THAT MACHINES -- P.C.'S FOR THE CHRISTMAS SELLING SEASON WILL BE IN PRODUCTION IN JUNE, NOT AT THE END OF THE SUMMER. THE SECOND IS THAT, AS YOUR HONOR WILL RECALL, RELIEF RELATING TO WHAT IS REQUESTED IN PARAGRAPH ONE OF THE DEMAND FOR A PRELIMINARY INJUNCTION WAS ENTERED BY YOUR HONOR IN THE CONSENT DECREE ENFORCEMENT PROCEEDING WITH RESPECT TO WINDOWS 95. AND YOUR HONOR SHOULD BE AWARE THAT THE OPTIONS THAT WERE MADE AVAILABLE AS A RESULT OF THE JANUARY STIPULATION AND ORDER WITH RESPECT TO COMPLIANCE WITH YOUR HONOR'S DECEMBER ORDER HAVE NOT BEEN UTILIZED, SO FAR AS WE OR THE GOVERNMENT KNOW, TO DATE BY ANY OEM.

 THE COURT: SO I AM TOLD.

 MR. WARDEN: WE'RE TOLD THAT NEXT MONTH ONE MAY UTILIZE THE DELETION OPTION, BUT NOT FOR THE PURPOSE OF ADDING ANOTHER BROWSER AND, THEREFORE, HAVING SOME IMPACT ON COMPETITION IN THE BROWSER MARKET.

 YOUR HONOR SHOULD ALSO HAVE IN MIND, WITH RESPECT TO URGENCY, WITH RESPECT TO PARAGRAPHS 2 AND 3 AND 4 THAT THE INTRODUCTION OF WINDOWS 98 DOESN'T CHANGE ANY OF THIS.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 1152 PLI/Corp 17)**

THAT THE CONTRACTUAL RELATIONSHIPS THAT ARE ATTACKED THERE COULD AS EASILY HAVE BEEN ATTACKED EIGHTEEN MONTHS AGO, A *74 YEAR AGO, OR SIX MONTHS AGO, OR A YEAR FROM NOW. THIS HAS REALLY NOTHING TO DO WITH THE CHANGE FROM WINDOWS 95 TO WINDOWS 98.

 AND YOUR HONOR SHOULD ALSO KNOW THAT THE MOST -- AND I EMPHASIS "MOST" -- BY FAR MOST OF THE CONTRACTS WITH OTHERS THAN OEM'S THAT ARE ATTACKED WILL BE EXPIRING IN AUGUST OR SEPTEMBER AND THAT MICROSOFT HAS ALREADY WAIVED ANY PROVISIONS IN ALMOST ALL OF THESE CONTRACTS THAT GIVE IT ANY KIND OF EXCLUSIVITY OR EVEN PREFERENTIAL TREATMENT.

 SO, IN FACT, THE CASE IS LESS COMPELLING THAN IT WOULD HAVE BEEN -- WERE IT EVER COMPELLING -- A YEAR AGO.

 YOUR HONOR ALSO KNOWS THAT THERE IS NOTHING THAT FORECLOSES ANY CHANNEL OF COMMERCE TO NAVIGATOR -- NETSCAPE'S NAVIGATOR, THE OTHER BROWSER THAT THE GOVERNMENT FAVORS. THEY HAVE FREE ABILITY TO DISTRIBUTE IT TO OEM'S RETAIL OR ANY OTHER WAY. THEY HAVE EXCLUSIVE MARKETING ARRANGEMENTS WITH ALL OF THE REBOC'S.

 MR. HOLLEY RECEIVED THIS IN THE MAIL THIS WEEK FREE FROM BELL ATLANTIC -- THAT'S NAVIGATOR -- FREE, IN THE MAIL, UNSOLICITED. AND THAT IS HOW HARD IT IS TO MAIL. IT'S THIS BIG. (INDICATING.)

 THE COURT: ALL RIGHT. TENTATIVELY, I WOULD LIKE TO CALL FOR MICROSOFT'S OPPOSITION TO THE MOTIONS FOR PRELIMINARY INJUNCTION AND ANSWERS TO THE COMPLAINT -- I WOULD LIKE AN ANSWER TO THE COMPLAINT ON MONDAY, JULY 28TH *75 AND OPPOSITION TO THE MOTION FOR A PRELIMINARY INJUNCTION ON MONDAY, AUGUST 10TH, AND A REPLY FROM THE PLAINTIFFS ON MONDAY, AUGUST 24TH. MY TENTATIVE INCLINATION IS TO CONSOLIDATE, BUT I WILL REVISIT THAT, IF NECESSARY.

 MR. WARDEN: NOW YOU'RE TALKING ABOUT PRELIMINARY INJUNCTION AND TRIAL ON THE MERITS?

 THE COURT: HEARING ON THE MERITS. AND I WOULD LIKE TO SCHEDULE TRIAL FOR SEPTEMBER 8TH.

 MR. WARDEN: YOUR HONOR, WITH THE GREATEST OF RESPECT, THAT ISN'T ENOUGH TIME FOR US. AND I WANT YOUR HONOR TO BE ASSURED --

 THE COURT: COME BACK TO ME AFTER YOU HAVE MADE A CONSCIENTIOUS EFFORT. I TEND TO THINK THAT IT IS, BECAUSE I HAVE HAD EXPERIENCE WITH OTHER CASES OF THIS ORDER OF MAGNITUDE, WHERE, WITH A DILIGENT EFFORT, LAW FIRMS OF YOUR SIZE AND THE DEPARTMENT OF JUSTICE, HAVE BEEN ABLE TO PUT TOGETHER, IN FAIRLY SHORT ORDER, A COMPLEX CASE, ONE AS COMPLEX AS THIS.

 MR. WARDEN: YOUR HONOR, WE'LL COME BACK, I AM SURE. YOUR HONOR IS NOW TALKING ABOUT, TENTATIVELY, AT LEAST, A TRIAL ON THE MERITS, AND THAT MAKES THE BURDEN ALL THE GREATER. I DON'T THINK WE COULD BE READY REASONABLY FOR A PRELIMINARY INJUNCTION HEARING BY THEN, BUT YOU HAVE SAID TO COME BACK, AND WE'LL COME BACK.

 THE COURT: COME BACK TO ME LATER ON AFTER YOU *76 HAVE MADE THE EFFORT TO TRY TO GET READY TO TAKE THIS CASE TO TRIAL. AND IF YOU CAN CONVINCE ME THAT YOU SHOULD BE GIVEN MORE TIME, I WILL TRY TO LISTEN WITH AN OPEN MIND.

 MR. WARDEN: WELL, I FEEL RELATIVELY CONFIDENT WE WILL BE BACK, BUT LET ME ASK YOUR HONOR TO HAVE IN MIND THE FOLLOWING, AND THAT IS THAT A LOT OF THE DISCOVERY THAT IS GOING TO BE TAKEN IN THIS CASE IS GOING TO BE FROM COMMERCIAL FOES OF OUR CLIENT, AND WE ARE GOING TO NEED EVERYTHING THAT RELATES TO DISCOVERY RESOLVED EXPEDITIOUSLY AND WITHOUT DELAYS OCCASIONED BY OBSTREPEROUSNESS FROM NONPARTIES.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THAT'S GOING TO BE VERY IMPORTANT. THAT WOULD HAVE BEEN IMPORTANT HAD WE GONE TO TRIAL IN JANUARY, AND IT'S GOING TO BE IMPORTANT IN ANYTHING REMOTELY APPROACHING YOUR HONOR'S TENTATIVE SCHEDULE.

THE COURT: THERE ARE VARIOUS WAYS TO ADDRESS DISCOVERY PROBLEMS, IF AND WHEN THEY MATERIALIZE. ONE WOULD BE TO REFER THE DISCOVERY SUPERVISION TO A MAGISTRATE JUDGE, WHO WOULD BE READILY AVAILABLE TO RULE PROMPTLY ON ANY CONTROVERSIES THAT ARISE. SECOND, WOULD BE TO -- AND I KNOW YOU DETEST THE WORD -- APPOINT A SPECIAL MASTER.

MR. WARDEN: WE WOULD, I THINK, PREFER A PROMPT RECOURSE TO YOUR HONOR, BUT WE'LL WAIT. I JUST WANTED TO ALERT YOU TO THAT, BECAUSE THAT DOES BEAR ON THE TIME THAT IS GOING TO BE CONSUMED HERE IN PREPARING. AND THAT IS THE *77 ONLY REASON I BROUGHT IT UP.

I ALSO WANT THE PUBLIC RECORD TO BE ABSOLUTELY CLEAR THAT MICROSOFT HAS NO INTEREST IN DELAY FOR THE SAKE OF DELAY. WE WISH THIS CASE HAD NEVER HAD BEEN BROUGHT. WE DON'T THINK IT SHOULD HAVE BEEN BROUGHT, AND WE WOULD LIKE TO GET IT OVER WITH AS QUICKLY AS POSSIBLE, COMPATIBLE WITH RATIONAL PRESENTATION ON A FAIR BASIS TO THE COURT.

THE COURT: I WILL ACCEPT YOUR REPRESENTATION.

MR. WARDEN: THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT. NOW THAT LEAVES ONLY THE QUESTION OF WHAT HAPPENS TO CIVIL ACTION 94-1564, THE ORPHAN THAT IS NOW IN THE COURT OF APPEALS. DOES ANYBODY HAVE ANY INFORMATION ON IT?

MR. WARDEN: WELL, THE COURT SAID IN ITS STAY ORDER THAT THEY HAD DELIBERATED. SO WE DON'T KNOW WHEN WE'RE GOING TO GET THEIR DECISION.

THE COURT: ARE YOU ALL AGREED THAT IT IS NOT RENDERED MOOT BY THIS?

MR. WARDEN: YES, YOUR HONOR.

THE COURT: IT IS NOT MOOT?

MR. WARDEN: IT IS NOT MOOT.

THE COURT: OKAY.

MR. BOIES: I THINK IT IS NOT MOOT, YOUR HONOR. I THINK ITS ISSUES ARE ENTIRELY SUBSUMED WITHIN THE ISSUES THAT ARE BEFORE THE COURT NOW, BUT AS A MATTER OF JUST LAW *78 ENFORCEMENT POLICY, IT IS IMPORTANT, OBVIOUSLY, TO ENFORCE CONSENT DECREES, BUT I DON'T THINK THAT THERE IS ANYTHING IN THAT CASE THAT IS NOT ALSO IN THE CASE IN FRONT OF YOUR HONOR.

THE COURT: WELL, IT MAY BE THAT WE WILL HAVE A DECISION IN THIS THAT CASE AND WE WILL HAVE SOME EXPRESSION OF APPELLATE OPINION ON SOME OF THE ISSUES THAT WILL COVER THIS.

MR. BOIES: I THINK IT IS UNLIKELY THAT ANYTHING IN THAT CASE WOULD AFFECT THE ISSUES HERE BECAUSE OF THE DIFFERENCE IN THE LEGAL THEORIES -- THIS IS UNDER THE ANTITRUST LAWS AND THAT WAS UNDER THE CONSENT DECREE -- AND THE DIFFERENCE IN TERMS OF THE RECORD. I THINK WE WILL HAVE A DECISION, PRESUMABLY, BEFORE THE DATE THE COURT HAS SET.

THE COURT: I WOULD HOPE SO.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

MR. WARDEN: I WOULD EXPECT IT, TOO, BUT I REMIND YOUR HONOR -- AND MR. BOIES MAY NOT BE AWARE OF IT, BUT THE GOVERNMENT ARGUED IN THE CONSENT DECREE CASE THAT THE MINIMUM REQUIREMENT OF THE SO-CALLED ANTI-TYING PROVISION IN THAT CASE WAS THAT REQUIRED BY THE SHERMAN ACT. SO THEY INTRODUCED THE ANTITRUST LAW INTO THAT PROCEEDING. THIS ISN'T AS DIFFERENT AS MR. BOIES WOULD NOW HAVE IT.

MR. BOIES: OF COURSE, MICROSOFT TOOK THE OPPOSING VIEW, YOUR HONOR. AND IF THE COURT OF APPEALS TAKES OUR VIEW, THEN MAYBE WE WILL GET SOMETHING THAT IS USEFUL.

**\*79** MR. HOUCK: I WOULD JUST LIKE TO POINT OUT, WE'RE NEUTRAL ON THIS, YOUR HONOR. WE'RE NOT PARTIES TO THAT CASE, SO WE'RE NOT BOUND NO MATTER WHAT THE COURT OF APPEALS SAYS.

THE COURT: FAIR ENOUGH. OKAY. ALL RIGHT. THANK YOU, GENTLEMEN. HAVE AT IT. GOOD LUCK TO YOU.

MR. BOIES: THANK YOU VERY MUCH, YOUR HONOR.

MR. WARDEN: THANK YOU, YOUR HONOR.

MR. HOUCK: THANK YOU, YOUR HONOR.

(WHEREUPON, THE ABOVE-ENTITLED MATTER WAS ADJOURNED.)

CERTIFICATE OF REPORTER

THIS RECORD IS CERTIFIED BY THE UNDERSIGNED REPORTER TO BE THE OFFICIAL TRANSCRIPT OF THE PROCEEDINGS INDICATED.

PHYLLIS MERANA

**\*81** [EXHIBIT E]

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, PLAINTIFF, vs. MICROSOFT CORPORATION, ET AL. DEFENDANTS

C. A. NO. 98-1232

STATE OF NEW YORK, ET AL. PLAINTIFFS vs. MICROSOFT CORPORATION, ET AL. DEFENDANTS

C. A. NO. 98-1233

WASHINGTON, D. C.
JUNE 9, 1998

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE THOMAS P. JACKSON

FOR THE UNITED STATES:
PHILLIP MALONE, ESQ.
DAVID BOIES, ESQ.
FOR THE STATE OF NEW YORK:
STEPHEN HOUCK, ESQ.
FOR THE DEFENDANT:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1152 PLI/Corp 17                                                                     Page 26
1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

RICHARD UROWSKY, ESQ.
JOHN L. WARDEN, ESQ.
STEVEN HOLLEY, ESQ.
COURT REPORTER:
PHYLLIS MERANA
6816 U. S. COURTHOUSE
3RD & CONSTITUTION AVE., N.W.
WASHINGTON, D. C. 20001

### *82 PROCEEDINGS

THE DEPUTY CLERK: CIVIL ACTION 98-1232, UNITED STATES OF AMERICA VERSUS MICROSOFT, AND 98-1233, THE STATE OF NEW YORK, ET AL. VERSUS MICROSOFT.

MR. DAVID BOIES AND STEPHEN HOUCK FOR THE PLAINTIFFS.

JOHN WARDEN FOR THE DEFENDANT.

THE COURT: COUNSEL, I THOUGHT I WOULD START BY SUMMARIZING SOME OF THE MATTERS THAT WE DISCUSSED PRELIMINARILY IN CHAMBERS. PRELIMINARILY, AS YOU KNOW, MEANS THAT THERE IS NOTHING DEFINITIVE ABOUT WHAT IT IS THAT I HAVE TO SAY AT THIS POINT, BUT IT REPRESENTS WHAT I WOULD ANTICIPATE, IF I AM FORTUNATE, WILL BE THE COURSE OF THIS CASE.

IT IS MY EXPECTATION THAT I WILL ENTER AN ORDER LIMITING THE NUMBER OF WITNESSES TO BE PRESENTED BY PLAINTIFFS AND DEFENDANTS TO SIX TO TWELVE WITNESSES EACH, WITH LIBERAL USE OF SUMMARY WITNESSES, AS NECESSARY, AND TO REQUIRE THAT BY THE TIME OF THE PRETRIAL CONFERENCE, THE DIRECT TESTIMONY OF ALL WITNESSES PROFFERED BY EITHER SIDE HAS BEEN SUBMITTED IN WRITING IN THE FORM OF A DECLARATION, EXCLUSIVE OF HOSTILE WITNESSES, WHOSE TESTIMONY, OF COURSE, CANNOT BE TREATED IN THAT FASHION. THEREAFTER, THE IN-COURT PROCEEDINGS WILL BE, IN EFFECT, LIMITED TO THE CROSS-EXAMINATION OF THOSE WITNESSES IN THE CUSTOMARY ORDER.

**\*83** NOW, THE SIX-TO-TWELVE-WITNESS RULE, IF YOU WILL, IS A PRECATORY RULE. THAT DOESN'T MEAN THAT, IF GOOD CAUSE IS SHOWN, I WOULD NOT EXPAND THAT NUMBER OF WITNESSES PER SIDE TO SOME OTHER REASONABLE NUMBER, BUT, AS A GENERAL PROPOSITION, I WANT YOU TO ANTICIPATE THAT I WOULD EXPECT THAT SIX TO TWELVE WITNESSES PER SIDE WOULD BE CALLED DURING THE COURSE OF THE TRIAL. I AM PREPARED TO DEVOTE THE MONTH OF SEPTEMBER TO THE TRIAL OF THIS CASE.

AS YOU KNOW, WE DISCUSSED PROPOSED DATES FOR A PRETRIAL CONFERENCE IN CHAMBERS, AND IN A SPIRIT OF ACCOMMODATION, EVERYBODY IS NOW AGREED THAT WE WILL HAVE A PRETRIAL CONFERENCE ON THURSDAY, SEPTEMBER 3RD, WHICH I WOULD PROPOSE TO BEGIN IN COURT HERE AT 10:00 O'CLOCK.

IN CONNECTION WITH A PRETRIAL CONFERENCE, I CALL YOUR ATTENTION TO OUR LOCAL RULE 209, WHICH PRESCRIBES THE CONTENTS OF THE PRETRIAL STATEMENTS TO BE FILED, AND I WOULD LIKE TO HAVE YOU ADHERE DIRECTLY TO THAT RULE IN LETTER AND SPIRIT.

THERE HAS BEEN SOME ISSUE RAISED AS TO WHETHER OR NOT, IN VIEW OF THE FACT THAT THE HEARING ON THE PRELIMINARY INJUNCTION AND TRIAL ON THE MERITS HAVE BEEN CONSOLIDATED, THAT AN OPPOSITION TO THE APPLICATION OF THE PLAINTIFFS FOR PRELIMINARY INJUNCTION IS TO BE REQUIRED OF THE DEFENDANT MICROSOFT, AND THE ANSWER IS "YES," THE ONLY CAVEAT BEING SINCE TESTIMONY WILL BE SUBMITTED IN WRITTEN FORM BY TRIAL, **\*84** OR AT TRIAL, I DO NOT THINK THAT IT IS NECESSARY FOR MICROSOFT TO RESPOND WITH EVIDENTIARY DETAIL, SPECIFICALLY DEPOSITIONS AND DECLARATIONS OR AFFIDAVITS, TO THE CONTENTIONS MADE BY THE PLAINTIFFS IN

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THEIR APPLICATIONS FOR THE PRELIMINARY INJUNCTION, BUT I WILL WANT A MEMORANDUM OF LAW SETTING FORTH THE NATURE OF MICROSOFT'S DEFENSES BY THE PRESCRIBED DATE, NAMELY, AUGUST 10TH.

 I WOULD LIKE TO CALL COUNSEL'S ATTENTION ALSO TO OUR LOCAL RULE 106(B), BECAUSE IT VARIES PRACTICE WITH WHICH YOU MAY HAVE BECOME ACQUAINTED IN OTHER PARTS OF THE COUNTRY. RULE 106(B) PROHIBITS CORRESPONDENCE BY THE COURT, UNLESS SOLICITED, AND I DO NOT SOLICIT IT. IF YOU HAVE ANY MATTER THAT YOU WANT TO BRING TO THE COURT'S ATTENTION, IT SHOULD BE DONE BY WRITTEN MOTION, WHICH WILL BECOME PART OF THE PUBLIC RECORD.

 MR. WARDEN ASKED WHETHER OR NOT PROVISIONS COULD BE MADE FOR THE PARTIES TO AVAIL THEMSELVES OF THE RIGHT OF NATIONWIDE SERVICE OF PROCESS, AND THE ANSWER IS "YES." I AM PREPARED TO SIGN AN ORDER WHICH WILL ACCORD THE RIGHT OF NATIONWIDE SERVICE OF PROCESS TO ALL PARTIES TO THE CASE.

 IT IS MY PREFERENCE, UNLESS IT BECOMES NECESSARY TO DO SO, NOT TO SET DEADLINES FOR THE DESIGNATION OF EXPERT WITNESSES, PARTICULARLY IN VIEW OF THE LIMITATION THAT I HAVE IMPOSED ON THE NUMBER OF WITNESSES, OR OTHER DISCOVERY DEADLINES, WHICH IT SEEMS TO ME SHOULD BE UNNECESSARY, GIVEN **85** THE CALIBER OF COUNSEL THAT WE HAVE IN THIS CASE, UNLESS WE REACH A POINT AT WHICH IT LOOKS AS IF THERE ARE SIGNIFICANT PROBLEMS TO BE ENCOUNTERED WITH RESPECT TO DISCOVERY AND THE DISCLOSURE OF THE LITIGANTS' CASES TO ONE ANOTHER. AND, IN THAT CONNECTION, I WOULD LIKE TO KNOW ABOUT IT SOONER RATHER THAN LATER. IF WE ARE GOING TO ENCOUNTER A NUMBER OF DISCOVERY CONTROVERSIES, SOME OF WHICH MAY BE ENTIRELY LEGITIMATE, SUCH AS WORK PRODUCT CONTROVERSIES, IT IS MY INCLINATION TO APPOINT A SPECIAL MASTER, WHO WILL PRESIDE OVER ALL DISCOVERY DISPUTES -- SOMEONE WHO CAN DEVOTE FULL TIME AND ATTENTION.

 YOU HAVE BOTH CONCURRED IN THE FILING OF PRETRIAL STATEMENTS ON AUGUST 31ST, AND THAT IS CERTAINLY IN ACCORD WITH MY WISHES. THAT DATE IS ACCEPTABLE FOR THE FILING OF PRETRIAL STATEMENTS.

 I EXPECT THAT DURING THE MONTHS OF JULY AND AUGUST, I AM PERIODICALLY GOING TO ASK THE PARTIES TO COME TO COURT AND MAKE STATUS REPORTS ON HOW THEY BELIEVE DISCOVERY IS PROGRESSING AND WHETHER OR NOT THERE ARE GROUNDS FOR TAKING MORE STRINGENT MEASURES TO SUPERVISE THE DISCOVERY PROCESS, BUT I AM HOPEFUL THAT THAT WILL NOT OCCUR.

 ALSO, INSOFAR AS ROUTINE GARDEN-VARIETY TYPE OF DISCOVERY DISPUTES ARE CONCERNED, RATHER THAN FILING A MOTION, I WOULD MUCH PREFER THAT THE PARTIES CALL CHAMBERS **86** AND ARRANGE TO MEET FOR AN INFORMAL, IN-CHAMBERS DISCOVERY CONFERENCE, AT WHICH I WILL NOT RULE, BUT I WILL OFFER MY SUGGESTIONS AS TO HOW IT MIGHT BE RESOLVED, AND BY THAT MEANS I WOULD HOPE THAT WE WOULD REDUCE THE AMOUNT OF PAPER AND THE AMOUNT OF ACRIMONY THAT SOMETIMES ACCOMPANIES THE DISCOVERY PROCESS.

 I THINK THAT PRETTY WELL SUMMARIZES WHAT WE CONSIDERED IN CHAMBERS A FEW MINUTES AGO. IF ANYBODY WISHES TO CONTRIBUTE ANY FURTHER OBSERVATIONS TO IT, I WOULD WELCOME HEARING THEM. IF ANYONE WISHES TO TAKE ISSUE WITH ANY OF THE PROPOSED RULINGS THAT I ANTICIPATE THAT I WILL BE MAKING, BY ALL MEANS DO SO.

 MR. WARDEN?

 MR. WARDEN: YOUR HONOR, MAY I BE HEARD JUST WITH RESPECT TO SOMETHING WE DIDN'T DISCUSS BECAUSE THERE WASN'T ANY REAL DISAGREEMENT BETWEEN US?

 BOTH DRAFT PROPOSED ORDERS SUBMITTED TO YOUR HONOR SHORTENED THE TIME FOR BOTH PARTIES AND NONPARTIES TO RESPOND TO DISCOVERY REQUESTS WITH RESPECT TO ADMISSIONS,

**(Cite as: 1152 PLI/Corp 17)**

INTERROGATORIES, DOCUMENTS AND DEPOSITIONS. AND I THINK THERE WAS AGREEMENT ON WHAT THOSE TIME PERIODS WERE. MAY WE EMBODY THOSE PROVISIONS IN A PROPOSED ORDER FOR YOUR HONOR, AS WELL AS THE THINGS THAT YOUR HONOR --

THE COURT: IS THERE ANY DISAGREEMENT?

MR. BOIES: NONE, YOUR HONOR.

**\*87** THE COURT: ALL RIGHT.

MR. BOIES: I THINK WE HAVE CERTAINLY AGREED AS TO THE PARTIES. I AM NOT SURE WE CAN BIND NONPARTIES.

THE COURT: YOU CAN'T BIND NONPARTIES.

MR. WARDEN: WE CANNOT BIND, BUT IT WOULD BE HELPFUL TO HAVE THE COURT'S EXPRESSION OF URGENCY IN SOME FORM.

THE COURT: WELL, INCLUDE SOME PRECATORY LANGUAGE IN THE ORDER.

MR. WARDEN: THANK YOU.

THE COURT: MR. HOUCK?

MR. HOUCK: WITH RESPECT TO INTERROGATORIES, ANOTHER SUBJECT WE DIDN'T DISCUSS, JUDGE, WAS THE NUMBER OF INTERROGATORIES. I TAKE IT, CONSISTENT WITH YOUR VIEW, THAT YOU'RE NOT GOING TO IMPOSE ANY --

THE COURT: NO LIMITS, UNLESS IT BECOMES NECESSARY.

MR. HOUCK: FINE.

THE COURT: I JUST TRUST YOUR GOOD JUDGMENT.

MR. HOUCK: YOU WOULD LIKE COUNSEL TO SUBMIT A PROPOSED ORDER EMBODYING YOUR HONOR'S RULINGS?

THE COURT: IF YOU ARE ABLE TO DO SO --

MR. HOUCK: WE WILL WORK TO THAT END.

THE COURT: -- I WOULD BE DELIGHTED TO HAVE YOU DO THAT.

**\*88** MR. WARDEN: YOUR HONOR, I THINK WE CAN DO THAT. GIVEN THIS REFERENCE TO THE NUMBER OF INTERROGATORIES, I DO WANT TO STATE -- AND THE COURT IS FULLY AWARE OF IT -- THAT BOTH OF THE PLAINTIFFS HAVE HAD MONTHS TO PREPARE, AND IT'S OUR TURN TO DO SOME REAL WORK NOW. AND IF WE'RE GOING TO BE BURDENED BY DOCUMENT REQUESTS, AND INTERROGATORIES, AND EXTENSIVE DEPOSITIONS OF OUR PEOPLE, WHOM THEY HAVE ALREADY HAD A CRACK AT, IT'S GOING TO BE A MUCH GREATER BURDEN FOR US TO GET READY FOR THE TRIAL.

THE COURT: ALL RIGHT.

MR. WARDEN: THANK YOU, YOUR HONOR.

THE COURT: YOUR POINT IS WELL TAKEN.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

MR. BOIES: I THINK THAT MICROSOFT HAS CLEARLY THE RESOURCES TO RESPOND TO SOME DISCOVERY. WE DO INTEND TO TAKE EXTENSIVE DISCOVERY OF MICROSOFT, AS THE COURT IS AWARE. WHAT HAS HAPPENED UP TO NOW HAS BEEN PART OF THE INVESTIGATION. THAT INVESTIGATION HAS BEEN LIMITED. THE CIVIL INVESTIGATIVE DEMAND DEPOSITIONS WERE, BY THEIR TERMS, LIMITED. OBVIOUSLY, IF MICROSOFT BELIEVES THAT IT DOES NOT HAVE THE RESOURCES TO RESPOND TO DISCOVERY, THEY CAN COME BACK TO THE COURT.

THE COURT: I AM NOT SUGGESTING, MR. BOIES, THAT YOU CAN'T TAKE THEIR DEPOSITIONS. I AM JUST URGING THAT YOU DON'T PLOW GROUND THAT YOU DON'T NEED TO PLOW AGAIN.

MR. BOIES: WE DON'T PLAN TO DO THAT, JUDGE.

**\*89** THE COURT: ALL RIGHT. AND, AGAIN, AT LEAST INITIALLY, I AM GOING TO TRUST BOTH OF YOU OR ALL OF YOU TO USE GOOD JUDGMENT AND DISCRETION AS TO WHAT DISCOVERY YOU WILL TAKE OF ONE ANOTHER.

WHEN MIGHT I EXPECT A PROPOSED FORM OF ORDER? AND DON'T USE THE WORD  "PROPOSED" ON THE FORM OF ORDER.

MR. WARDEN: WE WILL DO IT THIS AFTERNOON OR TOMORROW MORNING.

MR. BOIES: YES.

MR. WARDEN: IS THAT ACCEPTABLE?

THE COURT: ABSOLUTELY.

MR. WARDEN: OKAY.

THE COURT: ABSOLUTELY.

MR. WARDEN: THANK YOU.

THE COURT: INSOFAR AS PERIODIC STATUS REPORTS ARE CONCERNED, I WILL NOT SCHEDULE THEM UNLESS I HAVE AN INDICATION FROM AT LEAST ONE PARTY THAT IT WOULD BE HELPFUL DOING SO. IF WE ARE TO HAVE THEM, THEN, FOR PLANNING PURPOSES, CAN WE SIMPLY SAY THEY WILL GENERALLY BE HELD AT 10:00 O'CLOCK ON TUESDAY MORNING, OR LET'S SAY 11:00 O'CLOCK ON TUESDAY MORNING?

MR. WARDEN: THAT'S FINE FOR US.

MR. BOIES: THAT WOULD BE GOOD, YOUR HONOR.

MR. HOUCK: I WOULD JUST LIKE TO SAY FOR THE RECORD, JUDGE, WHAT I TOLD YOU IN CHAMBERS, WHICH IS A **\*90** CONCERN I HAVE IS THAT WE REALLY WANT TO TRY TO MEET THE SEPTEMBER 8TH TRIAL DATE, AS I KNOW YOUR HONOR DOES. AND THE CONCERN I HAVE IS THAT A LOT OF THIS STUFF MAY GET BACK-LOADED IF THERE IS NO FIRM DATE FOR THE SUBMISSION OF EXPERT REPORTS AND SO ON. I GUESS WHAT I AM CONCERNED ABOUT IS WE'RE GOING TO HAVE AN AWFUL LOT OF WORK TO DO RIGHT AT THE END OF AUGUST. I DON'T WANT TO GIVE MY FRIENDS OVER HERE ANY CAUSE TO COME BACK TO THE COURT AND ASK FOR AN EXTENSION OF THE TRIAL DATE.

I AM HOPEFUL WE CAN AVOID THOSE ISSUES, BUT IF WE CANNOT, WE WILL RAISE THOSE WITH YOUR HONOR AT THE STATUS CONFERENCES.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

  THE COURT: YES, AND SOONER RATHER THAN LATER.

  MR. HOUCK: YES. ABSOLUTELY.

  THE COURT: THERE IS ONE OTHER THING THAT I DID NOT MENTION HERE THAT I SHOULD HAVE MENTIONED, AND THAT IS THAT I WILL, AT THE CONCLUSION OF THE EVIDENTIARY PROCEEDINGS, BEGINNING ON SEPTEMBER 8TH, ASK THE PARTIES TO PREPARE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. AND IF THAT IS DONE WITH ALACRITY, I ASSURE YOU THAT I WILL TRY TO GET A DECISION IN THE SAME SPIRIT AS QUICKLY AS POSSIBLE.

  ALL RIGHT. IF THERE IS NOTHING FURTHER THAT WE NEED TO DO, I WILL LOOK FOR YOUR FORM OF ORDER.

  MR. WARDEN: THANK YOU, YOUR HONOR.

**\*91** [EXHIBIT F]

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, Plaintiff, vs. MICROSOFT CORPORATION, Defendant.

Civil Action No. 98-1232 (TPJ)

STATE OF NEW YORK ex rel.

Attorney General DENNIS C. VACCO, et al., Plaintiffs, vs. MICROSOFT CORPORATION, Defendant.

Civil Action No. 98-1233 (TPJ)

**STIPULATION AND PROTECTIVE ORDER**

  The parties, by their undersigned counsel, hereby stipulate and agree, subject to the approval of the Court, as follows:

**PREAMBLE**

  1. Because plaintiffs wish to ensure that matters raised by these actions are open to the public to the greatest extent practicable;

  2. Having determined that certain information produced or to be produced by defendant and third parties voluntarily or in response to various Civil Investigative Demands and Subpoenas Duces Tecum (collectively, the "CIDs") served upon defendant and third parties pursuant to the Antitrust Civil Process Act ("ACPA"), 15 U.S.C. § § 1311-1314, or any **\*92** of the Relevant State Statutes (as defined in paragraph A. 12. below); or other forms of compulsory process; or produced in response to discovery requests issued by the United States Department of Justice (the "Department") pursuant to the Final Judgment entered August 21, 1995 (the "Consent Decree"), or produced by defendant and third parties in response to Requests for Additional Information and Documents ("Second Requests") issued by the Department under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"), 15 U.S.C. § 18a, or produced by the parties or by third parties pursuant to the Federal Rules of Civil Procedure during discovery in these actions, contains Confidential Information (as defined in paragraph A.9., below) the unauthorized disclosure of which would be detrimental to the legitimate commercial interests of the party or third party that produced this information; and

  3. Having shown good cause pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure;

  4. It is hereby stipulated and agreed by the parties and ordered by the Court that the following procedures shall govern the production and use of all documents, testimony, interrogatory answers and other information in these actions, including information produced by parties currently named or later joined in these actions and all third parties subject to discovery

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

herein:

## A. DEFINITIONS

For the purposes of this Order:

1. "Document" includes all tangible written, recorded, or graphic material, and intangible data files, such as magnetic computer files, whether produced or created by a party or another person, and whether produced pursuant to the **\*93** federal discovery rules, by agreement or otherwise, and includes, without limitation, interrogatory answers, responses to requests for admissions, deposition transcripts and exhibits, pleadings, motions, briefs, affidavits, declarations or other filings in connection with these actions.

2. "Department" means the United States Department of Justice and all subdivisions thereof, as well as all officers, employees, agents, representatives, contractors, consultants, attorneys, or any of them.

3. "States" means each and every of the following States in their sovereign capacities and as parens patriae on behalf of the residents of their respective States: California, Connecticut, Florida, Illinois, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, New Mexico, New York, North Carolina, Ohio, South Carolina, Utah, West Virginia and Wisconsin and the District of Columbia.

4. "These actions" means the cases captioned United States v. Microsoft Corp., Civil Action No. 98-1232 (TPJ), and New York ex rel. Vacco v. Microsoft Corp., Civil Action No. 98-1233 (TPJ), pending in the United States District Court for the District of Columbia. Those actions were consolidated by Order dated May 22, 1998.

5. "Disclosed" means shown, divulged, revealed, produced, described or transmitted, in whole or in part.

6. "Outside counsel" means the counsel of record specifically listed as appearing in these actions, as well as other persons employed by their law firms who are **\*94** working on these actions. Any person identified as "Outside counsel" shall not be an employee of the defendant.

7. "In-house counsel" means all lawyers employed by a party who are working on these actions, as well as paralegal assistants, secretaries, and clerical and administrative personnel employed by the party who are involved in preparation for the trial and/or appeal of these actions.

8. "Producing party" means the party or third party that produced Confidential Information to any of the parties.

9. "Confidential Information" means any trade secret or other confidential research, development or commercial information contained in any document as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil Procedure and any applicable case law interpreting Rule 26(c)(7).

10. "Highly Confidential Information" means trade secret or other confidential research, development or commercial information contained in any document as such terms are used in Rule 26(c)(7) of the Federal Rules of Civil Procedure and any applicable case law interpreting Rule 26(c)(7) that is entitled to a higher level of protection than Confidential Information due to its commercial sensitivity. All protections applicable under this Order to Confidential Information apply as well to Highly Confidential Information.

11. "Third party" means any natural person, partnership, corporation, association, or other legal entity not named as a party to these actions:

12. "Relevant State Statutes" means each and every one of the following: Cal. Gov't Code § 11180; Conn. Gen. Stat. § 35-42; **\*95**D.C. Code Ann. § 28- 4505; Fla. Stat. Ann. § 542.28; 740 Ill. Comp. Stat. 10/7.2; Iowa Code § 553.9; Kan. Stat. Ann. § 50-631; Ky. Rev. Stat. Ann. § 367.240; La. Rev. Stat. Ann. § 51:143; Md. Code Ann., Com. Law § 11-205; Mass. Gen. Laws ch. 93, § 8, ch. 93A; Mich. Comp. Laws § 445.776; Minn. Stat. § 8.31; N.M. Stat. Ann. § 57-1-5; N.Y. Gen. Bus. Law § 343; N.C. Gen. Stat. § 75-9, 75-10; Ohio Rev. Code Ann. § 1331.16; S.C. Code Ann. § 39-5-70; Utah Code Ann. § 76-10-916; 76-10-917; W. Va. Code § 47-18-7; Wis. Stat. § 165.065.; Cal. Bus. & Prof Code § 16700 et seq.; Conn. Gen. Stat. § 35-24 et seq.; D.C. Code Ann. § 28-4501 et seq.; Fla. Stat. Ann. § 542.15 et seq.; 740 Ill. Comp. Stat. 10/1 et seq.; Iowa Code § 553.1 et seq.; Kan. Stat. Ann. § 50-623 et seq.; Ky. Rev. Stat. Ann. § 367.170 et seq.; La. Rev. Stat. Ann. § 51:122 et seq.; Md. Code Ann., Com. Law § 11-201 et seq.; Mass. Gen. Laws ch. 93, § 1 et seq.; Mich. Comp. Laws § 445.771 et seq.; Minn. Stat. § 325D.49 et seq.; N.M. Stat. Ann. § 57-1-1 et seq.; N.Y. Gen. Bus. Law § 340 et seq.; N.C. Gen. Stat. § § 75-1 et seq.; Ohio Rev. Code Ann. § 1331.01 et seq.; S.C. Code Ann. § 39-3-10 et seq.; S.C. Code Ann. § 39-5-10 et seq.; Utah Code Ann. § § 76-10-911 et seq.; W. Va. Code § 47-18-1 et seq.; Wis. Stat. § 133.01 et seq.

## B. PERMISSIBLE USE OF CONFIDENTIAL INFORMATION

1. All persons obtaining access to Confidential Information in connection with these actions shall use that information only for preparation and trial of these actions, including any appeal and retrial, and shall not use such Confidential Information for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

any other purpose, including the furtherance of that person's business interests, or in any administrative **\*96** or other judicial proceeding. Any person found to have made an impermissible use of Confidential Information will be subject, without limitation, to civil and criminal penalties for contempt of court. Nothing in this provision, however, shall restrict the rights of plaintiffs to make use of Confidential Information outside the context of these actions to the extent otherwise permitted under 15 U.S.C. § 1 et seq.; 15 U.S.C. § 1311-1314 et seq.; 15 U.S.C. § 12 et seq.; any of the Relevant State Statutes, or any other applicable law.

  2. Confidential information shall not be copied or reproduced for use in these actions except to the extent such copying or reproduction is reasonably necessary to the conduct of these actions, and all such copies or reproductions shall be subject to the terms of this Order. If the duplicating process by which copies or reproductions of Confidential Information are made does not preserve the confidentiality designations that appear on the original documents, all such copies or reproductions shall be stamped "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as appropriate. All copies or reproductions of Confidential Information shall be kept under the control of the persons described in Section D, infra.

## C. DESIGNATION OF CONFIDENTIAL DOCUMENTS

  1. A party or third party that has previously submitted documents to the parties voluntarily, or in complying with informal discovery requests or discovery requests served upon them pursuant to the ACPA, the Relevant State Statutes, the Consent Decree, the HSR Act or the Federal Rules of Civil Procedure, may designate any documents submitted in response to such discovery requests "CONFIDENTIAL" to the extent such documents contain Confidential Information or "HIGHLY CONFIDENTIAL" to the extent such documents contain Highly Confidential Information.

  **\*97** 2. A party or third party may designate information provided following the entry of this Order as confidential or highly confidential by placing on or affixing to a document containing such information (in such manner as will not interfere with the legibility thereof) the phrase "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on each page of the document entitled to such designation.

  3. A designation of confidentiality shall constitute a representation to the Court, made in good faith, that the Confidential Information or Highly Confidential Information is not reasonably believed to be already in the public domain, and that counsel believes that the information so designated constitutes Confidential Information or Highly Confidential Information as defined in this Order.

  4. Transcripts of depositions shall be given the protections afforded Confidential Information under this Order for a period of five (5) days after a complete copy of the transcript has been provided to the deponent or his or her counsel to give the parties and third parties an opportunity to designate information contained in that transcript as Confidential Information. Any party or third party that wishes to designate all or any portion of the transcript of a deposition as Highly Confidential Information shall so state on the record during the deposition. The transcript of the deposition shall then be given the protections afforded Highly Confidential Information under this Order for a period of five (5) days after a complete copy of the transcript has been provided to the deponent or his or her counsel to give the parties and third parties an opportunity to designate information contained in that transcript as Highly Confidential Information.

  5. A deponent or counsel for that deponent shall designate the portions of the deponent's deposition that qualify as Confidential Information or Highly Confidential Information **\*98** by page and line number. Such designation shall be made no more than five (5) days after receipt of the complete transcript and shall be communicated to all parties.

  6. The burden of proving that any information is confidential or highly confidential shall remain with the producing party making such designation(s).

## D. DISCLOSURE OF CONFIDENTIAL INFORMATION

  1. Subject to Section B, supra, except with prior consent of the producing party or upon prior order of a court of competent jurisdiction, and except as otherwise permitted by Section D(3), infra, Confidential Information may be disclosed only to:

    a. The parties and their employees engaged in the preparation of these actions for trial or appeal;

    b. Defendant's in-house counsel, including attorneys, paralegal assistants, secretaries and clerical and administrative personnel employed by defendant who are involved in the preparation of these actions for trial or appeal;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

c. Defendant's outside counsel of record including partners, associates, paralegal assistants, secretaries and clerical and administrative personnel employed by such counsel who are involved in the preparation of these actions for trial or appeal;

d. Persons who are known with certainty to have prior knowledge of the specific Confidential Information to be disclosed;

e. The Court and all of its support personnel directly involved in the preparation of these actions for trial;

f. Stenographers or other persons involved in taking or transcribing testimony in these actions;

g. Litigation support services, including outside copying services; and

**\*99** h. Independent consultants or experts retained by plaintiffs or counsel for defendant for purposes of assisting them in these actions, provided, however, that such persons are not presently, and have no current plans to become, employees of defendant.

2. Subject to Section B, supra, except with prior consent of the producing party or upon prior order of a court of competent jurisdiction, and except as otherwise permitted by Section D(3), infra, Highly Confidential Information may be disclosed only to:

a. Employees of the plaintiffs who are directly engaged in the preparation of these actions for trial or appeal;

b. Defendant's outside counsel of record including partners, associates, paralegal assistants, secretaries and clerical and administrative personnel employed by such counsel who are engaged in the preparation of these actions for trial or appeal;

c. Persons who are known with certainty to have prior knowledge of the Highly Confidential Information to be disclosed;

d. The Court and all of its support personnel directly involved in the preparation of these actions for trial;

e. Stenographers or other persons involved in taking or transcribing testimony in these actions;

f. Litigation support services, including outside copying services; and

g. Independent consultants or experts retained by plaintiffs or counsel for defendant for purposes of assisting them in these actions, provided, however, that such persons are not presently, and have no current plans to become, employees of defendant.

**\*100** 3. The Department and the States shall treat all Confidential Information in accordance with the policy regarding disclosure of designated commercially or financially sensitive information set forth at 28 C.F.R. § 16.7. The Department and the States shall treat all information obtained in discovery in these actions that has been designated as Confidential Information or Highly Confidential Information by defendant or third parties as "confidential business information" pursuant to the Freedom of Information Act, 5 U.S.C. § 522(b)(4), or the most closely analogous term provided in the Relevant State Statutes and shall honor all statutory obligations to protect the confidentiality of all such information obtained voluntarily or by means of compulsory process. If any request is made to the Department or the States for Confidential Information covered by this Order, the Department or the States, as the case may be, shall promptly give notice of that request to the producing party.

## E. INTERIM DISCLOSURE OF CONFIDENTIAL INFORMATION

1. All documents produced by parties and third parties voluntarily, in response to CIDs or to other requests for information shall be treated as if designated as Confidential Information until such time as the party or third party producing such information identifies the documents, if any, it wishes to have treated as Confidential Information.

2. Third parties shall have three (3) business days following notification by plaintiffs that documents they previously produced to them may be subject to discovery in these actions to affix appropriate confidentiality designations to such documents or to make such designations by sending a letter to plaintiffs specifying by Bates range the documents that the third party designates as confidential or highly confidential before such documents are produced to defendant. On an ongoing basis, plaintiffs shall, when they determine that they may need to produce to defendant documents previously produced to plaintiffs by any third **\*101** party, immediately notify that third party of the planned production and the requirement that the third party designate information as confidential in a timely fashion.

3. All documents produced by defendant voluntarily or in response to CIDs or other requests for information shall be treated as if designated as "Confidential Information" until such time as plaintiffs specify which of those documents they intend to offer as exhibits in any public proceeding in these actions. Within 72 hours after receiving such notice from plaintiffs, defendant will indicate which of those exhibits should be given confidential treatment under this Order. Plaintiffs remain free to challenge defendant's continued confidentiality designations of such exhibits under Section I, infra.

## F. CONFIDENTIALITY UNDERTAKING

1152 PLI/Corp 17                                                                                                            Page 34
1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

1. Before any person described in Subsections D(1)(h) and D(2)(g), supra, is given access to Confidential Information to the extent permitted under this Order, such person shall first read this Order and execute an agreement substantially in the form attached hereto as Exhibit A. Execution of that agreement confirms the signatory's willingness to be bound by the provisions of this Order and to waive any objection, jurisdictional or otherwise, to the exercise by the Court of its power to enforce the terms of this Order by such means as the Court deems appropriate. Copies of such agreements shall be retained by the parties. Within 72 hours after the entry of this Order, the parties will cause all persons described in Subsection D(1)(h) and D(2)(g)) who have previously been given access to confidential information to execute such an agreement.

2. Counsel for the parties to whom Confidential Information has been furnished shall be responsible for restricting disclosure in accordance with the provisions of this Order.

## *102 G. UNRESTRICTED INFORMATION AND DOCUMENTS

1. This Order shall not restrict the use or disclosure of information that was not obtained through discovery in these actions or by plaintiffs in their prior investigations of defendant pursuant to the ACPA, the Relevant State Statutes, the Consent Decree, the HSR Act, the Federal Rules of Civil Procedure or other applicable law, provided, however, that inadvertent production of any information not designated as Confidential Information or Highly Confidential Information shall not itself be deemed a waiver of the producing party's or third party's claim of confidentiality as to such information, and the producing party or third party may thereafter designate such information as Confidential Information or Highly Confidential Information, as appropriate.

2. Nothing shall prevent disclosure beyond the terms of this Order if the party or other person designating the documents as confidential expressly consents to such disclosure, either in writing or in the record of any proceeding in these actions.

## H. FILING UNDER SEAL

1. Documents containing Confidential Information shall not be filed with the Clerk of the Court except when required by Court rules or in connection with motions or other matters pending before the Court. Any Confidential Information (including, without limitation, deposition transcripts, exhibits, briefs, affidavits and declarations), if filed, shall be filed under seal as long as the information retains its status as confidential. Where possible, only confidential portions of filings with the Court shall be filed under seal. Documents filed under seal shall be placed in an envelope bearing the following legend:
     **\*103** This envelope contains documents filed under seal in United States of America v. Microsoft Corporation, Civil Action No. 98-1232 (TPJ) (D.D.C.), and New York ex rel. Vacco, et al. v. Microsoft Corporation, Civil Action No. 98-1233 (TPJ) (D.D.C.), pursuant to a Protective Order, dated May __, 1998. The documents contain Confidential Information [or Highly Confidential Information] within the meaning of the Order. This envelope shall not be opened and its contents shall not be displayed, revealed or made public except pursuant to order of the Court.

2. Where documents filed under seal are transmitted between the parties or to the Court by facsimile, the above message shall be placed on the facsimile cover sheet or on a sheet directly following the facsimile cover sheet.

## I. CHALLENGES TO DESIGNATIONS OF CONFIDENTIALITY

1. Any party may, at any time after attempting to resolve the matter by agreement, apply by motion to the Court for a ruling that certain information designated as confidential is not entitled to confidential treatment under this Order. The confidential status of the information at issue shall be maintained pending the Court's ruling on the motion.

2. The parties shall not be obligated to challenge the propriety of any designation of information as confidential and the failure to do so promptly shall not preclude any subsequent objection to such designation or motion seeking permission to disclose such material to persons not referred to in Section D, supra.

## J. USE OF CONFIDENTIAL INFORMATION AT TRIAL

1. Subject to the Federal Rules of Evidence, Confidential Information may be disclosed at trial or at a hearing in open court. Either party intending to use Confidential Information shall notify the producing party or third party of the listing as a trial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exhibit of documents containing its Confidential Information within one day after so listing such documents. Where the disclosure would be made to a witness from a different party or third party or **\*104** where the Confidential Information to be disclosed was not listed on the trial exhibit list, the party disclosing the Confidential Information must provide 24 hours' advance notice (or, if that is not possible, as much advance notice as is practicable in the circumstances) to the producing party or third party.

2. Any producing person may move the Court for an order that the evidence be received under conditions to prevent its disclosure to persons not entitled under this Order to have access to it. The Court shall then determine whether the proffered evidence should continue to be treated as confidential and, if so, what protection, if any, should be afforded to such evidence at the trial or hearing. Nothing in this Order shall operate as an admission by any party that any particular discovery material is, or is not, admissible in evidence at the trial of these actions.

## K. DEPOSITION PROCEDURES

1. At any deposition session, when counsel for a party or witness deems that the answer to a question will result in the disclosure of Confidential Information or Highly Confidential Information, counsel shall have the option, in lieu of taking other steps available under the Federal Rules of Civil Procedure, to request that all persons other than the reporter, counsel and individuals specified in subparagraphs D(1) and D(2) hereof who have access to the appropriate category of information leave the deposition room during the confidential portion of the deposition. When Highly Confidential Information is the subject of examination, defendant's in-house counsel may also be excluded by plaintiffs or the deponent. The failure of such other persons to comply with such requests shall constitute substantial justification for counsel to advise the witness that he or she need not answer the question pending.

**\*105** 2. At any deposition session, Confidential Information or Highly Confidential Information produced by a producing party may be shown to a director, officer, employee, or consultant or expert of that producing party.

## L. EFFORTS BY THIRD PARTIES TO OBTAIN CONFIDENTIAL INFORMATION

1. If defendant has obtained Confidential Information under the terms of this Order and receives a subpoena or other compulsory process commanding the production of such Confidential information, defendant shall promptly notify the producing party. Defendant shall not produce any Confidential Information in response to the subpoena without the prior written consent of the producing party unless in response to an order of a court of competent jurisdiction.

2. Defendant will not object to the producing party having a reasonable opportunity to appear in the litigation or process commanding disclosure of the producing party's Confidential Information for the sole purpose of seeking to prevent or restrict disclosure thereof.

## M. NONWAIVER OF OBJECTIONS TO DISCOVERY

Nothing herein shall affect any person's right to object to any discovery request, including the right to assert that no discovery should be had of certain documents or information. Nor shall anything herein affect any person's right to seek the production of documents, testimony or any other information from any other source.

## N. PROCEDURE UPON UNAUTHORIZED DISCLOSURE

1. If Confidential Information under the terms of this Order is disclosed to any person other than one entitled to disclosure in the manner authorized under the Order, the party responsible for the unauthorized disclosure shall immediately upon learning of such disclosure **\*106** inform the party or third party that made the designation of confidentiality in writing of all pertinent facts relating to such disclosure and shall make every effort to prevent further unauthorized disclosure of the information.

2. Notwithstanding the foregoing, counsel are responsible for employing reasonable measures to control, consistent with the terms of this Order, duplication of, access to and distribution of confidential information under the terms of this Order.

## O. PROCEDURE UPON TERMINATION OF LITIGATION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1152 PLI/Corp 17
**(Cite as: 1152 PLI/Corp 17)**

  1. The protection of Confidential Information under the terms of this Order shall not terminate at the conclusion of these actions. Within 30 days after the final conclusion of all aspects of these actions by judgment not subject to appeal or by settlement (including any subsequent judicial approval process and all appeals), defendant at its costs shall return or destroy all documents produced by plaintiffs that contain or refer to Confidential Information, other than trial transcripts and trial exhibits admitted into evidence; provided, however, that privileged documents or attorney work product need not be returned or destroyed. Defendant shall certify its compliance with this paragraph and shall deliver such a certification to counsel for the producing person not more than 60 days after the final conclusion of these actions.

  2. Copies of all documents designated as "Confidential Information" or  "Highly Confidential Information" under the terms of this Order that remain in plaintiffs' custody after the final conclusion of all aspects of these actions by judgment not subject to appeal or by settlement (including any subsequent judicial process and all appeals) shall continue to be afforded all confidentiality protections provided by law or under this Order to the extent not inconsistent with the savings clause in subparagraph B(1), supra.

### *107 P. RIGHT TO SEEK MODIFICATION

  Nothing in this Order shall be construed to limit, restrict or otherwise affect the ability of the parties to seek by motion to modify this Order for good cause shown.

```
Dated: Washington, D.C.
May 27, 1998
Phillip R. Malone
Antitrust Division
U.S. DEPARTMENT OF JUSTICE
450 Golden Gate Avenue
San Francisco, California 94102
(415) 436-6675
Counsel for Plaintiff United States of America
*108 Stephen D. Houck
Chief, Antitrust Bureau
New York State Department of Law
120 Broadway, Suite 2601
New York, New York 10271
(212) 416-8275
Counsel for Plaintiff States
Steven L. Holley
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004
(212) 558-4000
Counsel for Defendant Microsoft Corporation
SO ORDERED:
Thomas Penfield Jackson
United States District Judge
5/27/98
```
**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.