**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' EMERGENCY MOTION TO COMPEL SCHERING PLOUGH TO PRODUCE DOCUMENTS AND DATA UNDERLYING CRIMINAL PLEA AND SETTLEMENT AGREEMENT**

**I.      INTRODUCTION**

Plaintiffs bring this emergency motion weeks before trial to obtain specific evidence of illegal Schering-Plough Corp. ("Schering") recently illuminated by the drug manufacturer's criminal plea and settlement with the United States government. The evidence that must underlie this plea is clearly responsive to long-outstanding discovery requests from plaintiffs to Schering; yet Schering has not – and will not – produce this evidence voluntarily.

Three weeks ago, the United States government and Schering publicly announced that they had reached a settlement in connection with the federal government's investigation of Schering's illegal conduct related to the sales of certain drugs.[1] Two days ago, Schering pled guilty to a conspiracy to violate 18 U.S.C. § 1001 (making false statements) in connection with the same conduct. The announcement of the Settlement Agreement ("Agreement" or "U.S. Agreement") and the subsequent guilty plea revealed new and explicit evidence of Schering's promotion of certain drugs through "illegal remuneration" that included direct payments of cash

---

[1] The Department of Justice and the U.S. Attorney's office in Boston participated in the investigation.

and other compensation to prescribers and encouragement of improper billing for the drugs by physicians.

The announcement, with its description of Schering's conduct and Schering's admission of guilt, surprised plaintiffs. Nothing in Schering's productions in this case would have alerted plaintiffs to the facts now publicly available. Yet, the same illegal conduct is partly at the core of both cases. Plaintiffs immediately conducted another review of documents produced by Schering in this case, to the extent possible, and confirmed that evidence of the criminal conduct described had ***never been produced*** in this case despite its responsive nature and numerous discovery requests to Schering over years. Plaintiffs approached Schering to produce the underlying information or to produce a witness to testify about the underlying conduct. Schering rebuffed both requests.

## II. STATEMENT OF FACTS

The Agreement and criminal plea encompass the following "covered conduct" with respect to Temodar and Intron-A:

> Schering sold the drugs to various customers including, among others, health maintenance organizations ("HMOs"), hospitals, long-term care providers, chain pharmacies, specialty pharmacies, and physicians.
>
> (v)     The United States contends that, as part of Schering's sales and marketing practices for PEG-Intron, Rebetron, and PEG-Intron Combination Therapy for patients with Hepatitis C from January 1999 through December 2002, ***Schering knowingly and willfully offered and paid illegal remuneration to induce physicians to start patients on drug therapy for Hepatitis C in violation of 42 U.S.C. § 1320a-7b(b)(2)*** through three improper sales and marketing programs:  the ReCAP Program, which paid physicians up to $500 for each patient begun on drug therapy for Hepatitis C; the Physician Assistants ("PA") Fellowship Program, which placed Schering-funded physician assistants in busy physician practices; and Low Quintile Advisory Board programs, which paid physicians for attendance at Schering-sponsored events. Furthermore, the Government contends that during this time

period, Schering knowingly caused the submission of false or fraudulent claims to the Medicaid and TRICARE Programs for PEG-Intron, Rebetron, and PEG-Intron Combination Therapy, and caused the DVA to purchase PEG-Intron, Rebetron, and PEG-Intron Combination Therapy by providing physicians with illegal remuneration through these three programs to induce them to prescribe these drugs to patients;

(vi)    The United States contends that, as part of Schering's sales and marketing practices for *Temodar*, from September 1999 through December 2003, Schering knowingly and willfully offered and paid various *forms of illegal remuneration* to physicians and physicians' practices to induce utilization of Temodar for brain tumors and brain metastases, including, for example, improper preceptorships, advisory boards, entertainment, and placement of clinical studies in violation of 42 U.S.C. § 1320a-7b(b)(2). Furthermore, the Government contends that, during this time period, Schering knowingly caused the submission of false or fraudulent claims for Temodar to the Medicaid and TRICARE Programs and caused the DVA to purchase Temodar by providing physicians and physicians' practices with *illegal remuneration to induce them to prescribe Temodar for patients*;

(viii)   The United States contends that, as part of Schering's sales and marketing practices for Intron-A for superficial bladder cancer from September 1999 through December 2003, Schering knowingly and willfully offered and paid various forms of illegal remuneration to physicians and physicians' practices to induce the utilization of Intron-A for superficial bladder cancer including, for example, improper preceptorships, advisory boards, entertainment, and placement of clinical studies in violation of 42 U.S.C. § 1320a-7b(b)(2), and encouragement of improper billing by physicians of Intron-A vial overfill and free drugs.  The Government further contends that Schering promoted Intron-A for superficial bladder cancer although Schering did not have approval from the FDA for use in that indication.  Furthermore, the Government contends that, during this time period, Schering knowingly caused the submission of false or fraudulent claims to the Medicaid, Medicare, and TRICARE Programs for Intron-A and caused the DVA to purchase Intron-A by inducing physicians to prescribe it to patients with superficial bladder cancer by providing them with such illegal remuneration.

Settlement Agreement at 5-8 (emphasis added).[2]

The "covered conduct" directly correlates to plaintiffs' charges against Schering in this case. Here, plaintiffs specifically allege that Schering violated consumer laws by causing AWPs to be published that did not reflect true average costs because, among other things, the published AWPs did not reflect all remunerations paid to physicians. Such remunerations included the use of free goods and other inducements. Plaintiffs further allege that Schering and other drug manufacturers offered this remuneration to induce physicians to prescribe those drugs. This is part of the illegal conduct that the U.S. Agreement and Schering's subsequent guilty plea cover. The two cases share a common core conduct – compensation designed to induce use and enhance provider payments.

The OIG has made it clear that drug manufacturers must factor in free goods and all forms of remuneration when reporting AWP:

> Where appropriate, manufacturers' reported prices should accurately take into account price reductions, cash discounts, free goods contingent on a purchase agreement, rebates, up-front payments, coupons, goods in kind, free or reduced-price services, grants, or other price concessions or similar benefits offered to some or all purchasers. Any discount, price concession, or similar benefit offered on purchases of multiple products should be fairly apportioned among the products (and could potentially raise anti-kickback issues). Underlying assumptions used in connection with reported prices should be reasoned, consistent, and appropriately documented, and pharmaceutical manufacturers should retain all relevant records reflecting reported prices and efforts to comply with federal health care program requirements. [*OIG Compliance Program Guidance for Pharmaceutical Manufacturers*, 68 Fed. Reg. 23731, at 23733-34 (May 5, 2003).]

Clearly, then, illegal remuneration in the form of inducements is relevant to both the United States' case and this case. The Agreement and the criminal plea are based on it. And, the AWP

---

[2] *See* Declaration of Steve W. Berman in Support of Plaintiffs' Emergency Motion to Compel Schering Plough to Produce Documents and Data Underlying Criminal Plea and Settlement Agreement, Ex. A.

cases across the country have pursued the same covert (and illegal) remuneration through discovery and motions practice for five years. The preamble to the Agreement recognizes the intersection of the two cases and the fact that the victims of the scheme – or "covered conduct" – are those who paid for the drugs, *i.e.,* members of the classes before this Court.

But, unbelievably, despite diligent efforts, the plaintiffs in this case did not know about these specific instances of illegal inducements until the public announcement of the settlement ***because Schering did not tell them***. Plaintiffs have served interrogatories on several occasions seeking information of each instance in which Schering offered physicians or others illegal remuneration. For example, Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Schering-Plough (and others) ("Omnibus RFPs and Interrogatories") No. 26(c) asked:

> Request No. 26. For each of your AWPIDs, all documents that reflect the prices, charged to, or terms of conditions of sale for, purchases of the AWPID including, but not limited to:
>
> (c) discounts, rebates, chargebacks or other adjustments offered to any class of purchaser.[3]

Schering responded:

> Response to request No. 26:
>
> In addition to the General Objections set forth above, Schering objects to request No. 26 on the grounds that it is overly broad and that responding to the Request as stated would be unduly burdensome. Specifically, Schering objects on the grounds that the Request seeks documents relating to all pricing and sale conditions that fall within eleven categories for each of the Subject Drugs, and producing the requested data will be unnecessarily costly. Schering further objects to Request No. 26 on the ground that the terms "adjustment" and "discount" are vague and ambiguous. Schering objects to Request No. 26 to the extent it calls for individualized data with respect to every purchase and sale of a drug. ***Subject to these objections, Schering will make available***

---

[3] Berman Decl., Ex. B.

>> *for inspection non-privileged electronic data containing the information called for in Request No. 26 for the Subject Drugs to the extent that such data exist.* [Emphasis added.][4]

The same RFP's and interrogatories requests "documents sufficient to identify "[d]ocuments summarizing all rebates, chargebacks, discounts, allowances, credits, administrative fees, price volume discounts or other incentives." Omnibus RFPs and Interrogatories No. 28(i).[5] Again, Schering-Plough objected, but concluded: "Subject to these objections, *Schering will make available for inspection non-privileged electronic data containing the information called for in Request No. 28 for the Subject Drugs, to the extent such data exist*." Berman Decl, Ex. C (emphasis added).

The Omnibus RFPs and Interrogatories also included a series of requests related to "inducements" offered by the drug manufacturer. Berman Decl., Ex. B at Request Nos. 36, 37, 41. To each, Schering-Plough responded that it would "make available for inspection non-privileged documents." *Id.*, Ex. C.[6]

Initially, PEG-Intron, Intron-A and Temodar, the three drugs covered by the Agreement and plea, were all in the case. Yet, Schering refused to identify such instances with respect to these drugs. Instead, Schering dumped millions of documents on class plaintiffs. When specific witnesses were deposed in the MDL they professed no knowledge of the issues raised by the Government's charges.

When the plea Agreement was announced, plaintiffs immediately reviewed Schering's production in this case to confirm whether the evidence had been produced. It had not.

---

[4] Berman Decl., Ex. C.

[5] Berman Decl., Ex. B.

[6] These examples are representative. There are numerous additional instances of discovery requests and interrogatories that plaintiffs served on Schering Plough to uncover documents and other evidence of the drug manufacturers' inducement practices.

Plaintiffs immediately asked Schering to identify specifically where in the Schering MDL production the information underlying the plea had been produced.[7]  Schering provided no such specification.[8]  And when plaintiffs noticed and scheduled a 30(b)(6) deposition to examine Schering on the Government's charges and the underlying evidence, Schering simply *did not show up*.[9]  Plaintiffs attempted to intervene in the Rule 11 hearing to obtain the withheld information, but the Court advised that the hearing was not a vehicle for discovery in this case.  Plaintiffs agree that this Court provides a more appropriate forum to resolve what is essentially a discovery issue.

The parties conferred via letter regarding the production of the documentation sought through this motion.  Copies of the correspondence are attached to the Berman Declaration at Ex. D and E.  The parties are at an impasse.  They have been unable to resolve their differences without Court intervention.

### III.    ARGUMENT

Schering has agreed to substantial fines and a criminal guilty plea in response to allegations regarding conduct that is also at the core of the AWP litigation.  It is clear from the Agreement and the public press releases that the underlying evidence documents the illegal Schering conduct that the two cases have in common.  It is equally clear that Schering has not produced the evidence in this case or, if it has, it is well buried and Schering will not say where.

As discussed above, any objections by Schering that the information is irrelevant and should be rejected.  Schering – a party that has withheld the evidence from plaintiffs for years –

---

[7] *See* Berman Decl., Ex. D.

[8] *See* Berman Decl., Ex. E.

[9] *See* Berman Decl., Ex. F (Deposition Transcript of Schering Plough Corp. Rule 30(b)(6) (Sept. 13, 2006)).

has proved itself to be particularly poor arbiter of "relevance" here. Descriptions of the "covered conduct" demonstrate its relevance to allegations in the case and meet the Fed. R. Civ. P. 26(b)(1) standard for discovery which includes "any matter, not privileged, that is relevant to the claim or defense of any party . . . if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." Not only does the described conduct appear to be directly relevant to the AWP MDL plaintiffs' claims *and admissible* in the impending trial, it may also lead to additional evidence of Schering's systemic efforts to thwart accurate AWP pricing.

Any argument that plaintiffs should be denied access to the documents because the cases are unrelated or dissimilar or because the criminal case does not involve AWP must also be rejected. The basis of plaintiffs' motion is not a claim that the cases are identical; they are not. The basis is the common conduct alleged by each and the evidence that must be supporting those claims in the criminal case. The same evidence can be used to prove the allegations in both cases.

Equally unavailing is Schering's anticipated objection that discovery closed over a year ago.[10] All parties are under a continuing duty to supplement discovery responses when additional information, "not otherwise made known to the parties during the discovery process" is learned. Fed. R. Civ. P. 26(e). A party's obligation to produce evidence otherwise responsive to outstanding requests and discoverable is not abrogated by case deadlines. This is particularly true where, as here, the evidence may have been willfully suppressed by the party seeking to avoid discovery. In short, discovery never closes on evidence a party suppresses.

---

[10] Schering made the argument that the AWP MDL plaintiffs were not entitled to this newly-revealed evidence because the discovery period in this case had been closed for over one year in its Response to AWP MDL Plaintiffs' Notice of Intent to Appear at Rule 11 Hearing To Present Comment Upon the Appropriate Sentencing in the criminal case

001534-16 130087 V1

Fortunately, Schering's unfair suppression of relevant evidence up until this time, whether willful or inadvertent, is easily remedied. There is a discrete collection of documents that has obviously been assembled and produced to the United States government. Schering should be ordered to produce the information immediately *and* to produce a witness to testify on behalf of the corporation to interpret the information and what else might exist. In the alternative, if Schering claims that it has already produced the underlying documents and other data, Schering should be ordered to identify the specific location of that information.

The expedited time frame for relief is necessary because of the short window available before trial for plaintiffs to review and assimilate the relevant information into their case. The expedited time frame is justified by Schering's blatant, and possibly deliberate, neglect in providing plaintiffs with the evidence during the ordinary course of discovery and its utter unreasonableness in requiring plaintiffs to file this motion to obtain information.

## IV.     RELIEF REQUESTED

For the foregoing reasons, plaintiffs should be granted access to the documents and other data at issue *prior to the November 6, 2006 trial*. Plaintiffs hereby request the following relief:

1. Schering should be ordered immediately designate and provide a witness or witnesses to testify on behalf of the corporation as to the details of the "covered conduct" referred to in the Settlement Agreement, including:  (a) the identities of all physicians who accepted illegal remuneration for any of the three drugs; and (b) the form(s) and amount(s) of the remuneration;

2. Schering should be ordered to produce materials and back up documents relating to the covered conduct in a format accessible and readable to plaintiffs and their experts;

- 9 -

3. If Schering contends that the responsive material has been produced in the MDL litigation, Schering should be ordered to identify the responsive documents by name and where they were produced so all MDL plaintiffs can access them.

DATED: September 22, 2006.                     By     /s/ Steve W. Berman
                                                     Thomas M. Sobol (BBO#471770)
                                                     Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm
740 S. Third Street, 3rd Floor
Philadelphia, PA  19147
Facsimile:  (215) 392-4400
Telephone:  (215) 609-4661

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 12 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

    I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on September 22, 2006, I caused copies of **PLAINTIFFS' EMERGENCY MOTION TO COMPEL SCHERING PLOUGH TO PRODUCE DOCUMENTS AND DATA UNDERLYING CRIMINAL PLEA AND SETTLEMENT AGREEMENT** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                   **/s/ Steve W. Berman**
                                                   Steve W. Berman

001534-16 130087 V1