**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| _____ ) ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS ) ) ) | Chief Magistrate Judge Marianne B. Bowler |
| ) ) ) | **ORAL ARGUMENT REQUESTED** |

**TRACK 1 DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR EMERGENCY MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS FROM SHEET METAL WORKERS NATIONAL HEALTH FUND**

The Track 1 Defendants respectfully move this Court to order Plaintiff Sheet Metal Workers National Health Fund ("SMW") to produce "documents concerning any coverage of prescription drugs, any contracts with pharmaceutical benefit managers or other entities relating to prescription drug benefits, or any information disclosing the reimbursement rates for pharmaceuticals covered under [SMW] plans," as these documents are necessary for trial and responsive to outstanding discovery requests.

**PRELIMINARY STATEMENT**

SMW is a class representative for Class 2 in this litigation, a trial on the claims of which is beginning in approximately 6 weeks. SMW refuses to produce documents that are responsive to document requests that the Track 1 Defendants served last December, are highly relevant to Class 2 claims, and are necessary to presenting a defense at trial. SMW does not contest that the documents exist, and they cannot seriously contest that they are relevant and responsive to the

outstanding discovery requests. Their refusal to produce the documents rests on an argument that the motion to compel their production comes too late, which argument has no support from any authorities. Defendants are entitled to the prompt production of these documents to ensure that they are not prejudiced from presenting an adequate defense at trial, and – given the current schedule – they request that this Court order SMW to produce the documents within 7 days of the date of the order.

## FACTUAL BACKGROUND

On August 16, 2005, the Court issued a decision on class certification which permitted Plaintiffs, within 60 days of that opinion, to propose additional class representatives and produce materials that would support the adequacy and typicality of the proposed representatives. *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 96 (D. Mass. 2005). Discovery relating to Track 1 closed a few days later, on August 31, 2005. (*See* CMO No. 13 (March 10, 2005), attached as Ex. A to the 9/22/2006 Decl. of Eric Christofferson in Supp. of Defs.' Emergency Mot. to Compel (the "Christofferson Decl.").) Plaintiffs proposed SMW as a Class 2 representative on October 17, 2005,[1] and Plaintiffs began to produce material relating to SMW's adequacy and typicality as a class representative in late October 2005.[2]

On November 17, 2005, Defendants deposed a representative of SMW, Glenn Randle, (*See* Christofferson Decl. at ¶ 3), who professed a lack of awareness of drug pricing, a lack of understanding of AWP, and altogether a lack of sophistication in matters relating to health care that appeared inconsistent with the responsibilities of SMW to its active members, for whom the Union negotiates drug benefits, and on whose behalf it engages a third-party administrator.

---

[1] *See* Third Amended Master Consolidated Complaint (Oct. 17, 2005) at ¶ 25a (attached as Ex. B to the Christofferson Decl.)

[2] *See* letters from Plaintiffs' counsel (attached as Exs. C, D, and E to the Christofferson Decl.)

Shortly thereafter, on December 13, 2005, the Track 1 Defendants served on SMW requests for production of documents requesting *inter alia* :

> 1. All Documents that describe the hospital, medical or prescription drug benefits that You offer to Participants or Beneficiaries, including, without limitation, plan documents, summary plan descriptions, adoption agreements and/or all amendments thereto, summaries of material modifications, riders, addenda and co-payment schedules . . . .
>
> 4. All documents relating or referring to Your contractual relationships with Third Party Administrators, Pharmacy Benefit Managers, Specialty Pharmacy, Mail Order Pharmacy, benefit Consultants, Auditors, Wholesalers, Manufacturers, Independent Practice Associations or Providers, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.
>
> 5. All documents reflecting the actual or potential negotiation, renewal or replacement of contractual relationships with Third Party Administrators, Pharmacy Benefit Mangers, Specialty Pharmacy, Mail Order Pharmacy, Benefit Consultants, Auditors, Manufacturers or Providers.
>
> 6. All documents relating or referring to AWPs for drugs . . . .
>
> 8. All documents concerning AMP, WC, MAC, EAC, Best Price or any other drug pricing or reimbursement information.

(*See* Ex. F to the Christofferson Decl.)  Later that month, the Court issued an order stating that "[d]ocument production by [SMW] shall be *substantially* completed by March 1, 2006." (Case Management Order No. 19 (Dec. 29, 2005) ¶ 4 (emphasis added), attached as Ex. G to Christofferson Decl.)

Plaintiffs began producing SMW claims data at the end of December 2005 and continued production into January 2006.[3]  (*See* Christofferson Decl. ¶ 5.)  Thereafter, the parties held a

---

[3] The Court ordered that SMW would be a class representative for Class 2 on January 30, 2006.  (*See* Consolidated Order Re: Motion for Class Certification (Jan. 30, 2006) (certifying SMW as class representative for Class 2), attached as Ex. H to the Christofferson Decl.)

telephone conference to address outstanding issues, as the production was not yet complete. (Christofferson Decl. ¶ 6.) Plaintiffs stated in the conference that they were continuing to look for responsive material. (*Id.*) On March 29, 2006, Plaintiffs told Defendants that they did not have additional responsive documents relating to the issues discussed during the conference, which pertained specifically to the drug benefit offered Medicare-eligible retired members of SMW and did not include the drug benefit offered to active members. (*See* Ex. I to the Christofferson Decl.)

After reviewing the material produced on behalf of SMW and recognizing that SMW did not produce documents bearing on the benefits offered to active members of the Union and the roles played in establishing those benefits by consultants, PBMs and others who have the sophistication that the SMW deposition witness disclaimed having, defendants renewed their outstanding written requests for such documents. These are the documents that are the subject of this Emergency Motion to Compel.

By letter to Plaintiffs dated September 14, 2006 (attached as Ex. J to the Christofferson Decl.), Defendants requested that SMW produce "documents concerning any coverage of prescription drugs, any contracts with pharmaceutical benefit managers or other entities relating to prescription drug benefits, or any information disclosing the reimbursement rates for pharmaceuticals covered under [SMW] plans." Defendants discussed this letter with Plaintiffs by telephone on September 18, 2006. (*See* Christofferson Decl. ¶ 9.) Plaintiffs then responded, by letter dated September 18, 2006 (attached as Ex. K to the Christofferson Decl.), and stated that SMW will not produce any additional documents because "track 1 discovery ended months ago" and because "under CMO 19, the deadline for production from Sheet Metals was March 1, 2006." However, as noted above, SMW was not added as a class representative until after the

Case 1:01-cv-12257-PBS   Document 3138   Filed 09/26/06   Page 5 of 10

discovery deadline, and the documents sought are responsive to the document requests, served on December 13, 2005, which permitted adequate time for response before the March 1, 2006 "deadline."[4]

## ARGUMENT

The few documents that Defendants seek through this motion are relevant to key elements of this case and are essential to rebutting Plaintiffs' claims. Plaintiffs' primary argument – that Defendants request is somehow untimely – is entirely unavailing. Because this case is going to trial on November 6th, Plaintiffs should be required to produce the documents in question immediately.

**I. DEFENDANTS' REQUEST IS REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE AND IS NOT UNDULY BURDENSOME**

Plaintiffs do not seriously contest – nor can they – that the documents sought are not reasonably likely to lead to the discovery of admissible evidence. The scope of discovery under Fed. R. Civ. P. 26(b)(1) is "very broad." *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001). Indeed, "information is discoverable if there is any possibility that it might be relevant to the subject matter of the motion." Id. at 17; *see also Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428 (D. Mass. 1993); *Schuurman v. North Reading*, 139 F.R.D. 276 (D. Mass. 1991).

Defendants are requesting documents from SMW sufficient to show the rates at which it provides reimbursement for pharmaceuticals purchased by or administered to its participants in SMW's plans for active workers. Plaintiffs' core allegation in this case is that they were duped by Defendants' AWP fraud, which caused them to believe that AWPs represented the prices at which pharmacies and physicians were acquiring pharmaceuticals. A central part of Defendants'

---

[4] *See* Ex. F to the Christofferson Decl. As discussed above, the documents in the September 14, 2006 letter are responsive to requests 1, 4, 5, 6 and 8.

-5-

presentation at trial, however, will be that third-party payors like SMW could not have been deceived because they had knowledge of the differences between AWPs and acquisition costs from a variety of sources, including – as is the case here – the amounts that these third-party payors remit in reimbursement pursuant to their non-Medicare plans.

The record reflects that most Taft-Hartley funds engage benefit consultants and contract with PBMs providing them with access to a highly sophisticated understanding of pharmaceutical reimbursement.  As this court acknowledged in the context of class certification:

> TPPs are commonly advised by benefits consulting companies, like Segal Company, Towers Perrin and Mercer.  In virtually all instances, self-insured employers and union benefit funds retain consultants to represent them in negotiations with PBMs, and five of the six named union benefit funds in this action used such consultants.

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. at 72.   Discovery already received from SMW reveals that they have several non-Medicare plans to provide benefits to active workers and that they were using a pharmaceutical benefits manager ("PBM") to contract, and manage reimbursement rates, with pharmacies.  (*See* Sheet Metal Workers' National Health Fund: Consultant's Annual Experience and Statistical Report Year Ended December 31, 2004 at SMW 56639, 56662-69 (evidencing a relationship with National Prescription Administrators), attached as Ex. L to the Christofferson Decl.)   As the massive discovery in this case has shown, PBMs are able to secure contracts with pharmacies that provide reimbursement at levels significantly below AWP.  *E.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. at 72-74 (noting that PBM contracts reimburse pharmacies at rates ranging from AWP minus 13 % to AWP minus 25 %).  If SMW provides reimbursement significantly below AWP for albuterol, a drug at issue in this case and dispensed by pharmacies, this would show that SMW was not deceived by so-called "spreads" between AWP and provider acquisition costs because

they themselves were providing reimbursement to providers significantly below AWP. Because witnesses designated to testify on behalf of SMW have disclaimed having the knowledge that one would expect should flow from its contractual relationships with PBMs and TPAs, Defendants must now move to compel the production of documents relating to reimbursement for pharmaceuticals under plans for active members which we believe will show that SMW, like the other Taft-Hartley Funds in this case, reimbursed for both self administered and physician administered drugs at significant discounts off of AWP.

Plaintiffs may contest Defendants' argument about the relevance of such information, but the Court has not ruled that such evidence is irrelevant or otherwise inadmissible. Indeed, Judge Saris has ruled that it most certainly *is relevant*, at least with respect to Defendants' statute-of-limitations defense. (*See* 5/23/06 Hr'g Tr. at 63-65 (noting that knowledge could put a member of class two on "inquiry notice" and thus be relevant for purposes of the statute of limitations), attached as Ex. M to the Christofferson Decl.; 6/26/06 Hr'g Tr. at 74 (highlighting the statute of limitations as a serious issue for third party payors), attached as Ex. N to the Christofferson Decl.; *see also* 5/23/06 Hr'g Tr. at 67 (noting that knowledge could be relevant to Defendants' state of mind.)) Thus, the documents in question easily meet the unexacting standard of Rule 26(b)(1).

Moreover, the discovery sought is not burdensome and, for that additional reason, does not violate Rule 26. Defendants are merely seeking a representative sample of documents that would show the reimbursement rates for pharmaceuticals – both self-administered and physician-administered – that SMW pays pursuant to its plans for active workers. Defendants are not seeking claims data that would show the particular amounts that SMW paid on behalf of particular participants; rather, Defendants seek contracts and other agreements between SMW (or

its agent) and the parties with whom it contracts for services – whether it be a PBM or other intermediary, or physicians or pharmacies themselves. Such documents are easily identifiable and could be produced in short order.

## II.     DEFENDANTS' REQUEST IS TIMELY

The Court's case-management orders do not prevent Defendants from obtaining the documents requested. Pursuant to CMO No. 13, general discovery relating to the case against the Track 1 Defendants concluded on August 31, 2005. But discovery relating to SMW is not governed by CMO No. 13. As Plaintiffs concede, discovery relating to SMW is governed by CMO No. 19, which ordered that SMW's production of documents be "substantially complete" by March 1, 2006. Of course, Defendants served their document requests – to which the documents in question are responsive – on SMW in December of last year. Defendants have not issued any "new" request. The fact that CMO No. 19 required SMW to "substantially" complete its production by March 1, 2006 does not obviate Defendants' right to obtain documents sought pursuant to a proper and timely request for the production. The use of the word "substantially" clearly demonstrates the Court's intent and understanding that some documents might be produced *after* March 1, 2006, as is the case here.

The fact that Defendants have now focused on a few additional documents that are unquestionably responsive to their valid requests for production is of no moment. Defendants have not waived their rights to these documents and none of the applicable deadlines prevent the court from ordering SMW to produce additional documents. "It has long been held that the Federal Courts possess the inherent power to order discovery and inspection." *United States v. Kloepper*, 725 F. Supp. 638, 640 (D. Mass. 1989) (internal citation omitted); *see also United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999) (noting federal courts' "'inherent powers' in performing their case-management function); *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95

F.3d 86, 91 (1st Cir. 1996) (noting that the trial court has "broad discretion" in dealing with pre-trial discovery); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782-83 (1st Cir. 1988) (noting courts' "unanim[ity] in finding such an inherent power to modify discovery-related protective orders, even after judgment, when circumstances justify"); *cf. Fin. Bldg. Consultants, Inc. v Am. Druggists Ins. Co.*, 91 F.R.D. 59 (N.D. Ga. 1981) (exercising discretion "in the interest of expediting this litigation" to order production of materials despite fact that they were requested informally in letter from defense counsel to plaintiff's counsel after expiration of discovery deadline).  Furthermore, Plaintiffs can point to no prejudice that would result to them from producing these few documents.  Defendants are preparing for trial and these few documents are necessary to Defendants' presentation.  Plaintiffs' have no authority for refusing to comply with Defendants' eminently reasonable request.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that their motion be GRANTED and that SMW be required to produce the documents within 7 days.

> Respectfully Submitted,
>
> THE TRACK 1 DEFENDANTS
>
> /s/ Eric P. Christofferson
> John T. Montgomery (BBO#352220)
> Steven A. Kaufman (BBO#262230)
> Eric P. Christofferson (BBO#654087)
> Ropes & Gray LLP
> One International Place
> Boston, Massachusetts 02110-2624
> (617) 951-7000
>
> *Attorneys for Schering-Plough Corporation and Warrick Pharmaceuticals Corporation*

Dated:  September 26, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2006, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ Eric P. Christofferson  
Eric P. Christofferson