Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
IN RE PHARMACEUTICAL INDUSTRY )    MDL NO. 1456
AVERAGE WHOLESALE PRICE        )    CIVIL ACTION NO.
LITIGATION                     )    01-12257-PBS
_____)
```

## CASE MANAGEMENT ORDER NO. 13

March 10, 2005

Saris, U.S.D.J.

After review of the submissions, I order the following revised schedule for track one defendants:

1.  Regardless of the status of the motion for class certification:

| | |
|---|---|
| August 31, 2005 | - Close of Fact Discovery |
| October 1, 2005 | - Plaintiffs file their expert reports on liability |
| November 15, 2005 | - Defendants file expert reports on liability |
| January 15, 2006 | - Completion of expert depositions |

2.  If this Court's order on class certification is unappealed, the parties shall propose a schedule for summary judgment briefing within 15 days of the Court's order.

3.  If this Court's order on class certification is appealed:

| | |
|---|---|
| 30 days after the Court of Appeals' decision on appeal from class certification ("Appeals Decision") | - Defendants' motion for summary judgment |
| 60 days after the Appeals Decision | - Plaintiffs' opposition |

75 days after the Appeals                - The Reply
Decision

 90 days after the Appeals               - The Surreply
Decision


                                    _S/PATTI B. SARIS_____
                                    United States District Judge

Exhibit B



7117802

Oct 17 2005
8:37PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | MDL No. 1456 |
| | ) | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) | Judge Patti B. Saris |
| | ) | |

## THIRD AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

## AMENDED TO COMPLY WITH COURT'S CLASS CERTIFICATION ORDER

## REDACTED VERSION

payments, and the UFCW member paid the remainder.  Further, UFCW has made co-payments under Medicare Part B throughout the Class Period.  A member's 20 percent co-payment under Medicare Part B is, and has been, an eligible expense under UFCW's plans during the Class Period.  If Medicare pays a portion of a Fund member's claim under Medicare Part B, UFCW reimburses the remainder of the claim.

23.     For transactions that occurred after October 31, 2004, Plaintiff UFCW is able to determine for which drugs it reimbursed and by how much it reimbursed by performing a computer search of its claims files.  Such files also show which of its covered members had an amount due and owing after UFCW made its reimbursement of the claim.

24.     Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("PMBT") is a voluntary employee benefits association maintained pursuant to the federal Employee Retirement Security Act, 29 U.S.C. § 1132, *et seq.*, and to the settlement of a federal court action (Case No. 3:94-0573) brought in the United States District Court for the Middle District of Tennessee against Pirelli Armstrong Tire Corp. ("Pirelli") in the early 1990's by many Pirelli retirees, for the purpose of providing health and medical bnefits to eligible participants and beneficiaries.  PMBT maintains its principal place of business in Goodlettsville, Sumner County, Tennessee.

25.     During the Class Period, PMBT also reimbursed its members for portions of pharmaceutical bills (including physician-administered drugs) that were covered in the first instance by Medicare Part B.  The plan expressly states that it pays 20 percent of all covered Medicare Part B claims.  The fund notified that Medicare Part B has covered a given drug or procedure and has paid 80 percent of the cost.  The fund then pays the identified "coinsurance" amount, or 20 percent of the total cost Medicare has paid.  Numerous drugs fall into this category.  Based on a recent review of a small number of our files, PMBT has determined that, with respect to drugs manufactured by the Track 1 Defendants (Astra-Zeneca, Bristol-Myers-

Squibb, Glaxo-Smith-Kline and Johnson & Johnson), PMBT made Medicare co-payments with respect to at least the following drugs:  Zovirax (Glaxo Smith Kiline), Zoladex (Astra-Zeneca), Cytoxan (Bristol-Myers-Squibb), and Procrit (Johnson & Johnson).  Because the fund is composed of retirees, about two-thirds of whom are eligible for Medicare, and because the search was only of a relatively small number of files, plaintiffs are confident that further investigation will show that other drugs were paid for in the Medicare Part B context with respect to the various companies known in this case as "Track 1" and "Track 2" Defendants. Our investigation is continuing.

25a.    Plaintiff Sheet Metal Workers National Health Fund ("SMW Health Fund") is a Taft-Hartley trust administered pursuant to the requirements of 29 U.S.C. § 186 by an equal number of trustees appointed by labor representatives and union representatives.  Its Fund Office is in Goodlettsville, Tennessee.  The SMW Health Fund is also a multiemployer welfare fund subject to ERISA.  The SMW Heath Fund provides a Supplemental Medicare Wraparound Plus ("SMW+") program that covers the Medicare Part B co-payments of its beneficiaries.  There are over 15,000 retirees and covered beneficiaries who receive benefits under the SMW+ program. During the Class Period, the SMW Health Fund has paid for portions of pharmaceutical bills that were covered in the first instance by Medicare Part B.  The drugs for which payments were made include Cytoxan (BMS), Etopophos (BMS), Kytril (GSK), Levaquin (J&J), Nevelbine (GSK), Paraplatin (BMS), Procrit (J&J), Remicade (J&J), Rubex (BMS), Taxol (BMS), Vepesid (BMS) and Zoladex (AstraZeneca).

**3.    Proposed Class 3 Representatives (TPPs and Consumers for AWP-Based Charges on Physician Administered Drugs Outside of Medicare)**

26.    UFCW is also a proposed representative for this Class.

27.    Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund ("CMHV") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations

Act ("LMRA"), 29 U.S.C. § 186(c)(5), and as defined by §§ 1002(1) and (3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., for the purpose of

providing health benefits to eligible participants and beneficiaries.  As such, CMHV is a legal

entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d).  CMHV maintains

its principal place of business at 9555 West Sam Houston Parkway South, Suite 400, Houston,

Texas.  During the Class Period, Carpenters Welfare Trust Fund has been billed for and paid

charges for Covered Drugs and otherwise made payments for drugs outside of the Medicare Part

B context based on published AWPs.  These drugs are identified in Appendix B.  During the

period relevant to the complaint, CMHV used an administrator to provide medical and drug

benefits to its members.  CMHV's administrator contracted directly with a PBM to provide

pharmacy services to CMHV participants.  By contract, all of CMHV's drug purchases were

directly and expressly tied to AWP.  CMHV paid for brand named drugs in both the retail and

mail order context based on AWP minus a fixed percentage.  For generic drugs in the retail

context CMHV paid based upon MAC, which itself was tied to AWP and in the mail order

context CMHV's generic purchases were made at either MAC or AWP minus a fixed

percentage.  By contract, the AWP used to determine prices was based on that published by

"First Databank Blue Book."

       28.     Plaintiff Teamsters Health & Welfare Fund of Philadelphia and Vicinity

("THWF") is an employee welfare benefit plan and employee benefit plan established and

maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan

established and maintained pursuant to §§ 1002(1) and (3) of ERISA, for the purpose of

providing health benefits to eligible participants and beneficiaries.  As such, THWF is a legal

entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d).  THWF maintains its

principal place of business at Fourth & Cherry Streets, Philadelphia, Pennsylvania 19106.  It

provides comprehensive health coverage for over 28,000 participants and beneficiaries in parts

THIRD AMENDED MASTER CONSOLIDATED    - 14 -
CLASS ACTION COMPLAINT
1534.16 0301 BSC.DOC

Exhibit C

# T H E | W E X L E R | F I R M LLP

October 24, 2005

***Via Facsimile (without enclosures)***
***Via Federal Express (with enclosures)***

Mr. D. Scott Wise
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

Re:   *In re Pharmaceutical Industry Average Wholesale Price Litigation*
      MDL No. 1456 (D. Mass.)

Dear Scott:

In addition to the consumer plaintiffs I advised you of on Friday, this firm likewise represents and will be your contact for Sheet Metal Workers National Health Fund ("Sheet Metals") and Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli"). Attached are Pirelli 0001-0059 and SMW 0001-0033, which are the summary plan descriptions for the Pirelli and Sheet Metals funds, respectively. By the end of the day tomorrow we will be producing the remaining documents showing the remaining documents responsive to Judge Saris' order from these funds.

Glenn Randle, a member of the Sheet Metals Board of Trustees, is available for a deposition in either San Antonio or Austin, Texas on November 17, 28-29, or December 1, 2, 5-9. I am in the process of obtaining potential deposition dates for John Johnson, a Pirelli trustee, and anticipate having those for you tomorrow. Please contact me to further schedule these depositions.

In addition, enclosed is our second production of documents relating to the consumer plaintiffs this firm represents. This production includes:

>       BARRECA 0001 - 0037
>       BYRSKI 0002 - 0020
>       CHOICE 0006 - 0007
>       DISON 0001-0030
>       NELSON 0002 - 0005
>       TELL 0001

---

Contact Information:   **Jennifer Fountain Connolly**
**312 261 6195 Direct Dial**
**jfconnolly@wexlerfirm.com**

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
**www.wexlerfirm.com**

T H E │ W E X L E R │ F I R M LLP

Mr. D. Scott Wise
October 24, 2005
Page 2

Finally, the following chart updates the proposed deposition dates for the consumer clients this firm represents.

| Name | Location of Deposition | Proposed Dates |
|---|---|---|
| Ms. Bonnie Barnewolt | Peoria, Illinois | November 1, 2005<br>November 2, 2005<br>November 3, 2005<br>November 4, 2005<br>November 7, 2005<br>November 7, 2005<br>November 8, 2005<br>November 9, 2005<br>November 10, 2005<br>November 16, 2005<br>(p.m. preferred) |
| Ms. Cheryl Barreca | Schaumburg, Illinois | TBD |
| Ms. Cynthia Byrski | Chicago Heights, Illinois | November 1, 2005<br>November 2, 2005<br>November 3, 2005<br>November 4, 2005<br>November 8, 2005<br>November 9, 2005<br>November 14, 2005<br>November 15, 2005<br>November 16, 2005<br>November 17, 2005<br>(p.m. preferred) |
| Ms. Mary Cauble | Granite City, Illinois | TBD |
| Ms. Anna Choice | Chicago, Illinois | November 2, 2005<br>November 9, 2005<br>November 16, 2005 |
| Ms. Joyce Dison | Toulon, Illinois | Any day prior to November 11, 2005<br>(a.m. preferred) |
| Ms. Tracy Garcia | Oak Lawn, Illinois | TBD |
| Ms. Donna Kendall | Decatur, Illinois | October 28, 2005<br>November 4, 2005<br>November 11, 2005 |

# T H E │ W E X L E R │ F I R M LLP

Mr. D. Scott Wise
October 24, 2005
Page 3

| Name | Location of Deposition | Proposed Dates |
|------|------------------------|----------------|
| Ms. Sandra Leef | Chicago, Illinois | TBD |
| Mr. Gerald Miller | Peoria, Illinois | Not available before November 16, 2005 due to severe illness and medical appointments.  We will speak to you separately about scheduling this deposition. |
| Mr. Joseph Miller | Merrillville, Indiana | TBD |
| Ms. Constance Nelson | McHenry, Illinois | November 1, 2005<br>November 2, 2005<br>November 3, 2005<br>November 4, 2005 |
| Ms. Andrea Palenica | Oak Lawn, Illinois (can travel to Chicago) | November 1, 2005<br>November 2, 2005<br>November 3, 2005<br>November 4, 2005 |
| Ms. Regina Shoemaker | Crown Point, Indiana | October 31, 2005<br>November 2, 2005<br>November 7, 2005<br>November 9, 2005 |
| Mr. Scott Tell | Freeport, Illinois/Cedarville, Illinois | November 8, 2005 (preferred) But any time after 3:00 p.m. is fine until November 16 and if given sufficient notice can arrange other times. |
| Mr. Kenneth Vanderwal | Dyer, Indiana | November 8, 2005 |
| Ms. Pauline Vernick | Buffalo Grove, Illinois | November 7, 2005 (p.m.) |
| Ms. Mardolyn Vescovi | Shorewood, Illinois | TBD |
| Ms. Kathleen Weaver-Zech | Chicago, Illinois | TBD |
| Ms. Susan Wessels | Rock Falls, Illinois | TBD |

# THE │ WEXLER │ FIRM LLP

Mr. D. Scott Wise
October 24, 2005
Page 4

Please give me a call if you have any questions or to schedule these depositions.

Very truly yours,

Jennifer Fountain Connolly
JFC:lmv

cc:     Kenneth A. Wexler (without enclosures)
        Steve W. Berman (without enclosures)

Exhibit D

\T H E | W E X L E R | F I R M ᴸᴸᴾ

October 31, 2005

**_Via Federal Express_**

Mr. D. Scott Wise                    Eric P. Christofferson
Davis Polk & Wardwell                Ropes & Gray LLP
450 Lexington Avenue                 One International Place
New York, NY  10017                  Boston, MA  02110

   Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*
     MDL No. 1456 (D. Mass.)

Dear Scott and Eric:

Enclosed are copies of billing records for the Sheet Metal Workers National Health Fund ("Sheet Metals") and Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli") funds, Bates labeled SMW 0034-580 and Pirelli 0060-0125, which establish these funds' payment of the Medicare Part B 20% co-payment for each Track 1 defendant in the above-referenced litigation.

We believe that we have redacted all identifying personal information from these documents. However, in the event that you discover any such information within these documents, we request that you return any documents with that information to us and notify us of your discovery immediately.  Upon receipt of any such documents, we will redact them accordingly and provide you with replacement copies not containing the identifying personal information.  Production of these documents shall in no way constitute permission for defendants to contact any individual members of the Sheet Metals or Pirelli funds.

Your acceptance of these documents shall constitute agreement to these terms.

Please call with any questions.

Very truly yours,

Jennifer Fountain Connolly
JFC:lmv

cc: Kenneth A. Wexler (without enclosures)
  Steve W. Berman (via facsimile without enclosures)

Contact Information: **Jennifer Fountain Connolly**
        **312 261 6195 Direct Dial**
        **jfconnolly@wexlerfirm.com**

One North LaSalle Street  312 346 2222
Suite 2000      312 346 0022 fax
Chicago, Illinois 60602  **www.wexlerfirm.com**

Exhibit E

T H E | W E X L E R | F I R M LLP

November 24, 2005

***Via Federal Express***

Eric P. Christofferson, Guest
Ropes & Gray LLP
One International Place
Boston, MA  02110

   Re: *In re Pharmaceutical Industry Average Wholesale Price Litigation*
     MDL No. 1456 (D. Mass.)

Dear Eric:

Enclosed is a copy of the Sheet Metal Workers' National Health Fund's ("Sheet Metals'") agreement with its third party administrator, Bates labeled SMW 56611-56630 and Sheet Metals' annual report for the year ended December 31, 2004, Bates labeled SMW56631-56683.  Please note that pages containing information about active participants have been redacted and/or removed.

Please call with any questions.

Very truly yours,

*Jennifer F. Connolly /dmg*

Jennifer Fountain Connolly
JFC:dmg

Enclosures

---

Contact Information: **Jennifer Fountain Connolly**
**312 261 6195 Direct Dial**
**jfconnolly@wexlerfirm.com**

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
**www.wexlerfirm.com**

Exhibit E

T H E | W E X L E R | F I R M ᴸᴸᴾ

November 24, 2005

***Via Federal Express***

Eric P. Christofferson, Guest
Ropes & Gray LLP
One International Place
Boston, MA  02110

      Re:    *In re Pharmaceutical Industry Average Wholesale Price Litigation*
               MDL No. 1456 (D. Mass.)

Dear Eric:

Enclosed is a copy of the Sheet Metal Workers' National Health Fund's ("Sheet Metals'") agreement with its third party administrator, Bates labeled SMW 56611-56630 and Sheet Metals' annual report for the year ended December 31, 2004, Bates labeled SMW56631-56683.  Please note that pages containing information about active participants have been redacted and/or removed.

Please call with any questions.

Very truly yours,

*Jennifer F. Connolly /dmg*

Jennifer Fountain Connolly
JFC:dmg

Enclosures

---

Contact Information:    **Jennifer Fountain Connolly**
**312 261 6195 Direct Dial**
jfconnolly@wexlerfirm.com

One North LaSalle Street
Suite 2000
Chicago, Illinois 60602

312 346 2222
312 346 0022 fax
**www.wexlerfirm.com**

Exhibit F



7635268

Dec 13 2005
1:13PM

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE ) | |
| LITIGATION ) | Civil Action No. 01-12257-PBS |
| ) | |
| ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: ) | |
| ALL ACTIONS ) | Chief Magistrate Judge Marianne B. Bowler |
| ) | |

### FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
### TO SHEET METAL WORKERS NATIONAL HEALTH FUND

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules

of Civil Procedure, Defendants Schering-Plough Corporation and Warrick Pharmaceuticals

Corporation, by their attorneys, on behalf of themselves and all defendants named in the Third

Amended Master Consolidated Class Action Complaint in the above captioned case, hereby

requests that Sheet Metal Workers National Health Fund produce within thirty (30) days of

service the documents listed below.

### DEFINITIONS

1.      "You," "Your," "Sheet Metal Workers" or the "Fund" shall refer to Sheet

Metal Workers National Health Fund.

2.      "TAMCC" means the Third Amended Master Consolidated Class Action

Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in

the United States District Court for the District of Massachusetts.

3.      "Defendants" refers to the Defendants listed in the TAMCC.

4.      "Third Party Administrator" means any entity that provides administrative services relating to hospital or medical benefits offered by Sheet Metal Workers to any Participant and/or Beneficiary.

5.      "Pharmacy Benefit Manager" means any entity that provides administrative services relating to prescription drug benefits offered by Sheet Metal Workers to any Participant and/or Beneficiary.

6.      "Benefit Consultant" means any person and/or entity that provides information, counsel and/or advice to Sheet Metal Workers regarding any hospital, medical or prescription drug benefit and/or service provided by Sheet Metal Workers to any Participant or Beneficiary.

7.       "Auditor" means any entity not a Third-Party Administrator, Pharmacy Benefit Manager, Benefit Consultant or attorney that Sheet Metal Workers has engaged or retained to review of any aspect of medical or prescription drugs coverage and/or services that Sheet Metal Workers provides to Participants and/or Beneficiaries.

8.      "Wholesaler" means any entity that purchases Subject Drugs from a Manufacturer and resells such drugs to any other entity.

9.      "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, Subject Drugs.

10.      "Provider" means any entity and/or physician that provides hospital or medical care or prescription drugs to any Participant or Beneficiary.

11.      "Mail Order Pharmacy" means an entity that resells drugs including, without limitation, Subject Drugs, by mail to any Participant and/or Beneficiary.

12.        "Specialty Pharmacy" means an entity or division of an entity not part of a medical practice or medical professional corporation, that provides physician-administered drugs for use by any Participant or Beneficiary.

13.        "Subject Drugs" shall refer to the drugs listed in Exhibit A, attached hereto.

14.        "AWP" or "Average Wholesale Price" means the price for drugs as periodically published by several pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book") and Medi-Span's Master Drug Database ("Medi-span").

15.        "Publisher" or "Publishers" refers to any pharmaceutical price publishing service, including but not limited to, the Red Book, First Data Bank, Blue Book and Medi-Span.

16.        "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

17.        "P & T" or "Pharmaceutical and Therapeutic" means any entity and/or committee responsible for making decisions regarding drugs to be included and/or excluded from a formulary.

18.        The terms "Participant" and "Beneficiary" mean a person for whom any Fund provides health insurance or prescription drug coverage, including policyholders and dependents.

19.        "Independent Practice Association" means any organized group of Providers whose members provide health care to any Participant and/or Beneficiary.

20.        "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

21.     "MAC" or "Maximum Allowable Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 442.332.

22.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

23.     "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

24.     "CMS" shall mean Centers for Medicare and Medicaid Services.

25.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

26.     "Communication," as defined in Local Rule 26.5(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

27.     "Concerning," as defined in Local Rule 26.5(c)(7), means referring to, describing, evidencing, or constituting.

28.     "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

29.     "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, c-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

30.     "Person," as defined in Local Rule 26. 5(c)(6), means any natural person or any business, legal, or governmental entity or association.

31.     "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

## INSTRUCTIONS

1.     Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.     The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.     Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.     If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the

person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.      Provide the following information for each document withheld on the grounds of privilege:

> (a)    its date;
>
> (b)    its title;
>
> (c)    its author;
>
> (d)    its addressee;
>
> (e)    the specific privilege under which it is withheld;
>
> (f)    its general subject matter; and
>
> (g)    a description of it that you contend is adequate to support your contention that it is privileged.

6.      These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

7.      To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

## DOCUMENTS TO BE PRODUCED

1.      All documents that describe the hospital, medical or prescription drug benefits that You offer to Participants or Beneficiaries, including, without limitation, plan documents,

summary plan descriptions, adoption agreements and/or all amendments thereto, summaries of material modifications, riders, addenda and co-payment schedules.

2.      All documents regarding or reflecting consideration of potential changes to hospital, medical or prescription drug benefits offered to Your Participants or Beneficiaries.

3.      All minutes or other summaries of any meetings or conferences held by You, Your trustees, management or directors or Your Pharmaceutical and Therapeutic Committee relating or referring to drug benefits under either hospital/medical or prescription drug coverage You provide Beneficiaries or Participants.

4.      All documents relating or referring to Your contractual relationships with Third Party Administrators, Pharmacy Benefit Managers, Specialty Pharmacy, Mail Order Pharmacy, Benefit Consultants, Auditors, Wholesalers, Manufacturers, Independent Practice Associations or Providers, including, without limitation, master agreements, addenda, schedules, attachments, requests for proposal, responses to requests for proposal and correspondence.

5.      All documents reflecting the actual or potential negotiation, renewal or replacement of contractual relationships with Third Party Administrators, Pharmacy Benefit Managers, Specialty Pharmacy, Mail Order Pharmacy, Benefit Consultants, Auditors, Manufacturers or Providers.

6.      All documents relating or referring to AWPs for drugs.

7.      All documents relating or referring to any definition or meaning of AWP.

8.      All documents concerning AMP, WAC, MAC, EAC, Best Price or any other drug pricing or reimbursement information.

9.      All documents relating or referring to the relative acquisition cost to Providers of multisource, generic or other drugs that have lost patent protection as compared to brand-name drugs or other drugs that are still on patent.

10.     All documents relating or referring to the relative reimbursement rates You pay for multisource, generic or other drugs that have lost patent protection as compared to brand-name drugs or other drugs that are still on patent.

11.     All documents concerning Your decision to rely on, reliance on, or use of drug pricing information published by any Publisher.

12.     All documents created by or received from any Publisher, including but not limited to drug pricing information, and communications, memoranda, contracts or agreements between You and any Publisher.

13.     All documents provided to, created by or received from CMS, United States Department of Health and Human Services, The Health and Human Services Office of the Inspector General, the General Accounting Office, Congress or any other federal institution, agency, department, or office regarding the pricing of prescription drugs.

14.     All documents concerning any internal or external, formal or informal, assessments, studies, analyses, reviews or audits regarding drug pricing or reimbursement amounts.

15.     Electronic medical claims data regarding reimbursement to Providers for the Subject Drugs, including all data regarding reimbursement for related administration or service fees, and all claims processing manuals corresponding to the electronic medical claims data produced.

16.     All documents concerning any requests by You for any information concerning the pricing or reimbursement for Subject Drugs.

17.     All communications between You and any Third Party Administrator, Specialty Pharmacy, Mail Order Pharmacy, Benefit Consultant, Auditor, Retailer, Mail Order Pharmacy, Independent Practice Association and/or Provider relating or referring to Subject Drugs.

18.     All communications relating or referring Participants' and Beneficiaries' receipt of Subject Drugs, including, without limitation, invoices from Providers or Specialty Pharmacy, payments to Providers or Specialty Pharmacy, claims materials, marketing materials, coverage materials, benefit evaluations, benefit decisions, reimbursements, discounts or Medigap coverage.

19.     All documents relating or referring to any Participant's or Beneficiary's payment for Subject Drugs, including, without limitation, any co-payments made by any Participant or Beneficiary, and any alleged damages arising from such purchases.

20.     All documents which reflect, discuss, memorialize, or otherwise relate to the price of or reimbursement rate for any Subject Drug.

21.     All documents relating or referring to any relationships with insurers insofar as they cover Subject Drugs, including, without limitation, base medical contracts, contracts for facilities or contracts with Providers.

22.     All documents relating or referring to any subrogation rights that You may have relating to damages incurred by any of Your Participants or Beneficiaries.

23.     Your annual reports, state and federal tax filings, documents filed with federal or state agencies, articles of incorporation, by-laws, charters.

24.     Documents sufficient to show Your organizational structure during the time period for which You claim damages in the TAMCC.

25.     All communications with witnesses or potential witnesses in connection with this case including, without limitation, expert witnesses and fact witnesses.

26.     All documents that support any claim asserted in the TAMCC, as well as any other documents that You plan to offer in evidence in this case.

27.     All documents concerning the computation of damages for the claims set forth in the TAMCC.

28.     All documents relating to any alleged misrepresentation or omission by any of the Defendants.

29.     All agreements, understandings and fee or cost arrangements with Your counsel and/or with any other plaintiff or third party relating to this case.


                                        By attorneys,


                                        /s/ Eric P. Christofferson
                                        John T. Montgomery
                                        Steven A. Kaufman
                                        Eric P. Christofferson
                                        Ropes & Gray LLP
                                        One International Place
                                        Boston, Massachusetts 02110-2624
                                        (617) 951-7000

                                        *Attorneys for Schering-Plough Corporation and*
                                        *Warrick Pharmaceuticals Corporation*

Dated:  December 13, 2005

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on December 13, 2005, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456 and further caused a copy of the same to be served upon counsel for Caremark, Inc. via facsimile and first-class mail.

/s/ Eric P. Christofferson     
Eric P. Christofferson

Exhibit G

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE ) | MDL NO. 1456 |
| LITIGATION ) | Civil Action No. 01-12257-PBS |
| ) | |
| ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO ) | |
| 01-CV-12257-PBS AND 01-CV-339 ) | Chief Mag. Judge Marianne B. Bowler |
| ) | |

### [PROPOSED] CASE MANAGEMENT ORDER NO. 19

December 29, 2005

Saris, U.S.D.J.

WHEREAS, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli") and Sheet Metal Workers National Health Fund ("SMW") were named as plaintiffs in the Third Amended Complaint dated October 17, 2005;

WHEREAS, this Court granted Plaintiffs' Motion to Include Pipefitters Local 537 Trust Funds ("Pipefitters Local") as a plaintiff on December 5, 2005;

WHEREAS, the parties have stipulated, and the Court hereby orders, that Blue Cross/Blue Shield of Massachusetts ("BCBS of MA"), Pirelli and SMW shall also be included as plaintiffs in this litigation;

WHEREAS, Defendants served initial document requests and Rule 30(b)(6) notices on BCBS of MA, Pirelli and SMW on or before December 14, 2005.

The schedule for discovery of Pipefitters Local, Pirelli, SMW and BCBS of MA , is as follows:

1.    Pipefitters Local, Pirelli, SMW and BCBS of MA shall produce claims data, provider contracts, electronic fee schedules, and documents showing that they purchased physician-administered drugs based on AWP by December 30, 2005.

2.    Pipefitters Local, Pirelli, SMW, and BCBS of MA shall produce witnesses for Rule 30(b)(6) depositions by January 13, 2006.

3.    Defendants shall serve any non-party subpoenas relating to Pipefitters Local, Pirelli, SMW and BCBS of MA by January 20, 2006.

3

1243237v1

4.     Document production by Pipefitters Local, Pirelli, SMW and BCBS of MA shall be substantially completed by March 1, 2006.

5.     Depositions of Pipefitters Local, Pirelli, SMW and BCBS of MA shall be completed by April 15, 2006. To the extent that any of Pipefitters Local, Pirelli, SMW or BCBS of MA have previously provided testimony on issues related to their adequacy as a class representative in this case, the witness(es) shall not be re-deposed on these issues, except (i) to the extent documents or data relevant to their adequacy as a class representatives were or are produced after the deposition and on or prior to December 30, 2005, (ii) if the parties so agree, or (iii) by order of the Court.

6.     All other aspects of the track one schedule shall remain in place.

Dated: December 27, 2005

_____

Hon. Patti B. Saris
United States District Judge