**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: | ) |
| *The City of New York v. Abbott Labs., et al.* (S.D.N.Y. No. 04-CV-06054) | ) |
| *County of Suffolk v. Abbott Labs., et al.* (E.D.N.Y. No. CV-03-229) | ) |
| *County of Westchester v. Abbott Labs., et al.* (S.D.N.Y. No. 03-CV-6178) | ) |
| *County of Rockland v. Abbott Labs., et al.* (S.D.N.Y. No. 03-CV-7055) | ) |
| *County of Dutchess v. Abbott Labs, et al.* (S.D.N.Y. No. 05-CV-06458) | ) |
| *County of Putnam v. Abbott Labs, et al.* (S.D.N.Y. No. 05-CV-04740) | ) |
| *County of Washington v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00408) | ) |
| *County of Rensselaer v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00422) | ) |
| *County of Albany v. Abbott Labs, et al* (N.D.N.Y. No. 05-CV-00425) | ) |
| *County of Warren v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00468) | ) |
| *County of Greene v. Abbott Labs, et al.* (N.D.N.Y. No. 05-CV-00474) | ) |

[Caption Continues on Next Page]

**DEFENDANTS' RESPONSE TO THE BRIEF OF THE
ATTORNEY GENERAL OF THE STATE OF NEW YORK AS AMICUS CURIAE
AND TO PLAINTIFFS' POST-ORAL ARGUMENT SUBMISSIONS**

*County of Saratoga v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00478)   )
*County of Columbia v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00867)   )
*Essex County v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00878)   )
*County of Chenango v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00354)   )
*County of Broome v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00456)   )
*County of Onondaga v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00088)   )
*County of Tompkins v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00397)   )
*County of Cayuga v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00423)   )
*County of Madison v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00714)   )
*County of Cortland v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00881)   )
*County of Herkimer v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00415)   )
*County of Oneida v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00489)   )
*County of Fulton v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00519)   )
*County of St. Lawrence v. Abbott Labs, et al.*)
(N.D.N.Y. No. 05-CV-00479)   )
*County of Jefferson v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00715)   )
*County of Lewis v. Abbott Labs, et al.*   )
(N.D.N.Y. No. 05-CV-00839)   )
*County of Chautauqua v. Abbott Labs, et al.* )
(W.D.N.Y. No. 05-CV-06204)   )
*County of Allegany v. Abbott Labs, et al.*   )
(W.D.N.Y. No. 05-CV-06231)   )
*County of Cattaraugus v. Abbott Labs, et al.* )
(W.D.N.Y. No. 05-CV-06242)   )
*County of Genesee v. Abbott Labs, et al.*   )
(W.D.N.Y. No. 05-CV-06206)   )
*County of Wayne v. Abbott Labs, et al.*   )
(W.D.N.Y. No. 05-CV-06138)   )
*County of Monroe v. Abbott Labs, et al.*   )
(W.D.N.Y. No. 05-CV-06148)   )
*County of Yates v. Abbott Labs, et al.*   )
(W.D.N.Y. No. 05-CV-06172)   )

[Caption Continues on Next Page]

| | |
|---|---|
| *County of Niagara v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06296) | ) |
| *County of Seneca v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06370) | ) |
| *County of Orleans v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06371) | ) |
| *County of Ontario v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06373) | ) |
| *County of Schuyler v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06387) | ) |
| *County of Steuben v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06223) | ) |
| *County of Chemung v. Abbott Labs, et al.* | ) |
| (W.D.N.Y. No. 05-CV-06744) | ) |
| AND | ) |
| *County of Nassau v. Abbott Labs, et al.* | ) |
| (E.D.N.Y. No. 04-CV-5126) | ) |
| _____ | ) |

Preliminary Statement

On June 16, 2006, the Court heard oral argument on defendants' motions to dismiss the Consolidated Complaint of the City of New York and other New York counties and the Second Amended Complaint of Nassau County. (All plaintiffs are referred to herein as the "Counties"). The Court has since received three filings addressed to the merits of the causes of actions alleged: (1) Plaintiffs' Response to Issues Raised During June 16, 2006 Oral Argument, dated July 7, 2006; (2) Plaintiffs' Notice of Supplemental Authority dated September 14, 2006; and (3) the Brief of the Attorney General of the State of New York as Amicus Curiae dated September 15, 2006 (the "NY AG brief"). This is Defendants' combined response.[1]

Argument

I.  **IMPLIED RIGHTS OF ACTION**

Plaintiffs' Notice of Supplemental Authority concerned a September 7, 2006 decision by Justice Eugene M. Fahey in *County of Erie v. Abbott Labs., Inc, et al.*, Index No. 2005-2439 (N.Y. Sup. Ct., Erie Co.) ("*Erie County*"), a case similar to those before this Court. The *Erie County* decision holds, and the New York Attorney General likewise concludes, that New York's counties do not have implied rights of action under the statutes and regulations pled in this case, Soc. Serv. Law §§ 366-b, 367-a and N.Y.C.R.R. Section 515.2(b). The NY AG Brief (joined in by the New York State Department of Health) is particularly emphatic that the express reference in these laws to the "department" and their omission of any reference to the local social services districts was deliberate and that "[t]o permit the counties to bring such an action would be inconsistent with the regulatory scheme . . . ." NY AG Brief at 16; *see also Erie County* slip. op. at 24. Defendants concur.

---

[1] Each defendant has joined in this document only as to those cases in which the defendant is a party.

\\\NY - 058559/000059 - 954685 v1                                1

II.    **COMMON LAW FRAUD**

The NY AG brief did not analyze the Counties' common law fraud claims. Justice Fahey in *Erie County* dismissed the plaintiff's fraudulent concealment claim, but upheld its common law fraud claim based on the "*Eaton*" line of cases, which recognize third-party reliance as a basis for a fraud claim in certain situations. *Erie Decision*, slip. op. at 16-17. The problem is that *Eaton* line has no application to *this* situation. Justice Fahey's holding was therefore erroneous and should not be followed by this Court.

As *Eaton* itself makes clear, third-party reliance applies under New York fraud law only when the plaintiff has received some form of communication (even if a summary one) of the defendant's allegedly fraudulent statement through the third-party. There, the Court of Appeals held that " if A. . . . makes a false or exaggerated statement of his pecuniary means to B. . . . and B. communicates the statement to C. who acts upon it, A. cannot be held [liable, unless] A. makes the statement to B. for the purpose of being communicated to C. or intending that it shall reach and influence him . . . ." *Eaton, Cole & Burnham Co. v. Avery*, 83 N.Y. 31, 33-34 (1880) (emphasis added).

The Court of Appeals reiterated this "general and unremarkable" principle that "liability for fraud can by imposed through communication by a third-party" in *SIPC v. BDO Seidman*, LLP, 95 N.Y.2d 702, 710 (2001), a case certified to the Court by the Second Circuit. Analyzing *Tindle v. Birkett*, 171 N.E. 520 (1902), a case following *Eaton*, the *BDO Seidman* Court explained that "[i]n *Tindle*, plaintiff received defendant's misrepresentation [from the third-party] in the form of a positive credit report upon which it relied." *Id*. (emphasis added).

The Court ruled that, by contrast, the plaintiff SIPC could assert no fraud claim because it "did not specifically know of any of" defendant's alleged misrepresentations.  95 N.Y.2d. at 710.[2]

Here, the Counties did not and do not receive even a summary communication of the defendants' AWPs.  All the Counties ever receive is a bill from the State telling them how much to reimburse the State.  See Transcript of June 16, 2006 Oral Argument at 41-43 (where the Court aptly summarized the Counties' argument as "you're saying the mere fact of [the Counties'] paying the [State's] bills is enough to be a reliance.")  The Counties may try to use their payment based on AWP to argue the *causation* prong of their common law fraud claim, but they cannot satisfy the *reliance* prong under the so-called "third-party" reliance cases in New York because it is undisputed that the Counties never saw, heard or read the AWPs "in any form."  Id. at 42 (counsel for New York City confirming that Counties "don't actually see the AWP or WAC numbers").  Thus, *Eaton, Tindle* and *BDO Seidman* – three New York Court of Appeals decisions dating from 1880 to 2001 – all require dismissal of the Counties' fraud claims.

III.     **GENERAL BUSINESS LAW § 349**

The New York Attorney General and Justice Fahey take different positions with respect to the Counties' GBL § 349 claim.  Justice Fahey noted that in *Blue Cross & Blue Shield of New Jersey, Inc. v. Phillip Morris, USA*  3 N.Y.3d 200, 785 N.Y.S.2d 399 (2004), the Court of Appeals held that insurers, as third-party payers, do not have standing under the statute.  Justice Fahey dismissed Erie County's claims under the statute because the County is "as remote a party as the private insurer in *Blue Cross*."  Slip op. at 28.

---

[2] The Second Circuit reached the same result in a "third-party" fraud claim brought by private customers of a defunct broker/dealer against the same accounting firm.  See *SIPC v. BDO Seidman, LLP*. 222 F.3d 63, 72 (2d Cir. 2000) ("Because Baron's customers never received Seidman's alleged misrepresentations in any form . . . the plaintiffs cannot establish that the customers relied to their detriment on that misinformation." (emphasis added)).

\\\NY - 058559/000059 - 954685 v1                                3

The New York Attorney General takes the opposite position on the ground that "unlike in Blue Cross, the counties' injury results directly from the alleged deceptive practice." NY AG Brief at. 14.  However, the only support he cites for that proposition is the general law which requires counties to provide medical assistance to needy persons, such as through county hospitals.  Id.  The Attorney General does not deal with the statutory construct relevant to this case under which the State pays 100% of the Medicaid provider's claim and is, in part, indemnified by the Counties, Soc. Serv. Law §§ 367-b(2), b(3), and by the federal government. Under *Blue Cross*, such an indemnification relationship does not satisfy the standing requirement of Section 349.

Further, other portions of the NY AG Brief are inconsistent with the position that the counties are directly injured.  For example, the Attorney General argues that the State has the right to take over any suit brought by the Counties and has discretion over the extent to which, if at all, the Counties may share in the proceeds of any recovery.  NY AG Br. at 3 & 17 n.10. Indeed, as this Court is aware, the State of New York has settled the claims of the Counties in these cases as to certain drugs against defendant GlaxoSmithKline over the Counties' objections. All of this militates against finding that the Counties have standing under Gen. Business Law § 349.

IV.   **SOC. SERV. LAW § 145-b**

In *New York v. Pharmacia Corp.,* Index Nos. 905-04, 905-03, 1150-03 (Sup. Ct. Albany Co. June 1, 2004), the Court dismissed the State's Soc. Serv. Law §145-b claims against three drug companies because the companies obtained no public funds as required by the statute. Not surprisingly, the New York Attorney General (which litigated and lost the issue in Albany) advises this Court that the Albany Court was wrong.  Justice Fahey, relying on this Court's

\\\NY - 058559/000059 - 954685 v1                                         4

opinion in "*Suffolk I*", disagreed with the Albany Court's interpretation of the statute. Slip. op at 22-23.

Respectfully, both Justice Fahey and the New York Attorney General are wrong and the Albany Court was correct.[3] The key clause is subsection 145-b(1)(c), which states in relevant part that "For the purposes of this section . . . a corporation has . . . obtained public funds when . . . any public funds are used to reimburse . . . an entity from which [the corporation obtained] payment . . . ."

This subsection confirms that the phrase "on behalf of himself or others" in subsection 145-b(1)(a) modifies the phrase "to obtain payment from public funds," not the verb-less phrase "by means of a false statement or representation".[4] If subsection 145-b(1)(a) really imposed liability where a corporate defendant had not obtained any public funds, but had merely aided and abetted some other entity in obtaining the funds, subsection (1)(c)'s language about the entity's payment to the corporation out of those funds would be largely superfluous.

Alternatively, both Justice Fahey and the Attorney General posit that subsection (1)(c) applies on its face: the "entity" reimbursed with public funds is the Medicaid provider, e.g., a pharmacy, and (they suggest) that several such entities paid the corporate defendants for their drugs out of those public funds. Slip. op. at 23; NY AG Brief at 6-7. The problem with this theory is that defendants are not alleged to have received any payment from the pharmacies or other Medicaid providers at all, let alone payments that are traceable to "public funds." This is

---

[3] The Counties have submitted the briefs in the *Pharmacia* case as Exhibit B to their July 7, 2006 submission to this Court. The briefs show that the arguments concerning Section 145-b were fully vetted before the Albany Court. Significantly, although New York law permits interlocutory appeals, the New York Attorney General has not appealed the Albany Court's dismissal of the Section 145-b claim.

[4] Subsection 145-b(1)(a), in full, provides: "It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter."

because many manufacturers sell to wholesalers or others in the chain of distribution who take title to the drugs and resell them to pharmacies. These manufacturers have no relationship with and receive no money from the Medicaid providers themselves.

It is one thing for the Attorney General to suggest that Section 145-b is "remedial" and should be construed broadly (*but see, infra*); it is wholly another for him to ask this Court to re-write the statute so that plaintiffs are relieved from pleading identifiable public funds that went from the Medicaid "entity" to the defendant "corporation."[5] Indeed, it is precisely because such showing must be made that the *Pharmacia* Court dismissed New York State's Section 145-b claim, citing *People v. Brooklyn Psychological Rehabilitation Institute*, 185 A.D.2d 230 (2d Dep't 1992) ("*BPRI*"). In *BPRI*, the State proved that "the funds collected from the Medicaid fraud were paid [to the other defendants] in the form of grossly inflated rents." *Id*. at 234. Thus, there was actual tracing of the Medicaid funds.[6] By contrast, in *Pharmacia*, the State, and in this case, the Counties, do not and cannot identify any public funds that went to defendants. Accordingly, their Section 145-b claims should be dismissed.

Finally, the cases that the Attorney General cites for the proposition that Section 145-b is "remedial" have nothing to do with statutory construction. Those cases involved

---

[5] Unfortunately, that is what happened in the one unreported case upon which the Counties and the Attorney General rely: *Kuriansky v. Baghai-Kermani*, Index No. 42931/92 (N.Y. Sup. Ct., Sept. 29, 1998) (annexed as Exhibit C to the Counties' July 7, 2006 submission). In *Kuriansky*, the pro se defendant, a psychiatrist, had been convicted criminally for selling prescriptions for controlled substances to Medicaid beneficiaries who had the prescriptions filled by pharmacies. The State brought a companion civil case under, among other things, Soc. Serv. Law Section 145-b. The Court held for the State based on the criminal conviction notwithstanding the fact that defendant received nothing from the pharmacies. The Court wrote that "The State loses the same amount of money, and the Medicaid system suffers the same level of abuse, whether the payments are received by the perpetrator of the fraud or by a third-party." In other words, in its desire to reach what it considered to be a just result, the Court simply ignored the Section 145-b's requirement that the defendant obtain public funds. Indeed, the *Kuriansky* court admitted that it was going beyond the precedent in the one appellate decision on Section 145-b, *BPRI* (discussed in the text above), because "in that case the physician . . . had a financial interest in the actual recipient of the [M]edicaid funds." This Court should not follow *Kuriansky* and should apply the literal language of the statute as the courts did in *Pharmacia* and *BPRI*.

[6] In addition, as the *Baghai-Kermani* Court noted, the other defendants in *BPRI* (an individual psychiatrist and his family members) owned and controlled the corporate defendant that received the public funds.

whether the treble damages remedy in that statute violated the Constitution's Double Jeopardy Clause for those who had already been convicted criminally for Medicaid fraud. For Double Jeopardy purposes, the statute was deemed to be remedial, not penal. *Harvey-Cook v. Steel*, 124 A.D.2d 709 (2d Cir. 1986); *Kuriansky v. Pro Care, Inc.*, 147 Misc.2d 782, 792 (N.Y.Sup. Ct. Albany Co. 1990).

It is clear from another case that the Counties rely upon (in connection with their unjust enrichment claims), *Cox v. Microsoft Corp.,* 290 A.D.2d 206, 207, 737 N.Y.S.2d 1, 2 (1st Dep't 2002), that treble damages statutes are "punitive" from a statutory construction point of view and thus should be strictly construed. The *Cox* Court stated:

> It has long been recognized that a provision for the trebling of damages is penal and subject to strict construction (see, *Newcomb v. Butterfield*, 8 Johns 342, 345 **3[1811] ). In *Lyke v. Anderson*, 147 A.D.2d 18, 541 N.Y.S.2d 817 [wrongful eviction], the Appellate Division, Second Department (at 28, 541 N.Y.S.2d 817) restated the view that "multiple damage statutes are penal in nature and are to be strictly construed", acknowledging the legislative prerogative to establish criteria short of actual malice to justify imposition of the penalty (*supra*, at 31, 541 N.Y.S.2d 817, citing *Welch v. Mr. Christmas*, 57 N.Y.2d 143, 150, 454 N.Y.S.2d 971, 440 N.E.2d 1317).
>
> \*            \*            \*
>
> The idea that multiple damage awards are punitive finds support in the ancestry of numerous treble damages provisions having their origins in equivalent provisions of former criminal statutes.

Because Soc. Serv. Law § 145-b is an analog to criminal Medicaid fraud statutes, it should be strictly construed.

## V. **UNJUST ENRICHMENT**

Justice Fahey noted the conflict among New York's intermediate appellate courts over whether privity between plaintiff and defendant is required to support an unjust enrichment claim. Slip. op. at 29 (citing *Cox v. Microsoft Corp.*, 8 A.D.3d 39 (1st Dep't 2004) and *Sperry v. Crompton Corp.*, 26 A.D.3d 488 (2d Dep't 2006)). He upheld Erie County's unjust enrichment

claim as "bare bones, but sufficient" based on the allegation that the "benefit" the County sought to recover was defendants' alleged "gains" from the increased sale of drugs "earned as a result of the [AWP] scheme alleged herein" and not the "overpayments made by the County Medicaid Program" to the pharmacists.  Slip op. at 29.

Defendants maintain that *Sperry* is correct that privity is required under New York law and, therefore, that the Counties should not be permitted to pursue their AWP-based unjust enrichment claims.[7]  Moreover, even if this Court declines to follow *Sperry*, the unjust enrichment claims fail under Fed. R. Civ. P. 9(b), which, as defendants have previously shown governs unjust enrichment claims sounding in fraud.  *Cf. Erie County*, Slip op. at 13-14 (comparing the strictness of federal particularity requirement with that of the New York State requirement).   Plaintiffs have not pled any facts to support their conclusory theory that manufacturers have increased their sales volumes or the price paid by Medicaid through their conduct.

VI.     **PHYSICIAN ADMINISTERED DRUGS**

At the June 16, 2006 oral argument, the Counties admitted that physician-administered drugs ("PADs") that were reimbursed based on actual acquisition cost instead of AWP should not be part of their case.  Transcript of June 16, 2006 Oral Argument at 53.  The Counties informed this Court that they had the means to verify whether the PADs named in their Complaints were reimbursed based on actual acquisition cost or AWP (or some other logic), and agreed both to provide such information to this Court, and to inform this Court how long it would take them to accomplish this.  Id. at 53-55.

---

[7] As to the "Best Price" unjust enrichment claims, those are barred by the existence of express contracts – the Medicaid Rebate agreements.

In their July 7, 2006 filing, however, the Counties made the blanket assertion that "[e]very physician administered drug listed on Exhibit A to the Consolidated Complaint has been reimbursed based on AWP and, as such, is properly part of this case" and simply renewed their representation that they "can quantify which of their PAD expenditures were based on AWP as opposed to actual cost. . . . [and] stand ready to supply the Court with these dollar figures should the Court so desire and at any time." Plaintiff's July 7, 2006 Response to Issues Raised During June 16, 2006 Oral Argument at 8.

Defendants respectfully submit that the Court should take the Counties up on their offer to provide such information—including, for each PAD, to what extent it was reimbursed based on AWP—in order to allow the Court to accomplish its stated goal of winnowing PADs not reimbursed at AWP from this case. *Id*. at 55. This clarification is critical because the law requires reimbursement of such PADs to be based on actual cost. N.Y. Soc. Serv. Law § 367-a(9)(a). Any PADs reimbursed contrary to this statute should be dismissed from this case because the Counties cannot properly claim damages based on their own violation of New York's Medicaid laws.

Conclusion

For the foregoing reasons, the Court should dismiss the Consolidated Complaint of the City of New York and other New York counties and the Second Amended Complaint of Nassau County in their entirety.

Dated:   Boston, Massachusetts
         September __, 2006

Respectfully Submitted,

ON BEHALF OF ALL DEFENDANTS
SERVED IN ACCORDANCE WITH FRCP. 4
OR WHO HAVE WAIVED SERVICE

By:   /s/ Jacob T. Elberg
      Thomas E. Dwyer (BBO No. 139660)
      Jacob T. Elberg (BBO No. 657469)
      **DWYER & COLLORA, LLP**
      600 Atlantic Avenue
      Boston, MA  02210
      Tel: (617) 371-1000
      Fax: (617) 371-1037
      tdwyer@dwyercollora.com
      jelberg@dwyercollora.com

      Steven M. Edwards (SE 2773)
      Lyndon M. Tretter (LT 4031)
      Admitted *pro hac vice*
      **HOGAN & HARTSON LLP**
      875 Third Avenue
      New York, NY  10022
      Tel: (212) 918- 3640

      Attorneys for Defendant Bristol-Myers Squibb Company