# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Civil Action No. 01-cv-12257-PBS |
| THIS DOCUMENT RELATES TO ALL ACTIONS. | Judge Patti B. Saris<br>Magistrate Judge Marianne B. Bowler |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TRACK 1 DEFENDANTS' "EMERGENCY" MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM SHEET METAL WORKERS NATIONAL HEALTH FUND

Seven months after the close of discovery for Sheet Metal Workers National Health Fund ("Sheet Metals"), over a year after Track 1 discovery has closed, and months after summary judgment with regard to Track 1-Class 2 has been fully briefed, Track 1 Defendants have filed an "emergency" motion seeking discovery from Sheet Metals, Plaintiffs' Class 2 representative, which Defendants have *never* previously requested. Not only is Defendants' request, which comes just over a month before trial is scheduled to occur, well beyond the deadline for conducting Track 1 discovery or class representative discovery, Defendants have provided ***absolutely no reason*** for their delay. Defendants purport to seek this information from Sheet Metals to show the possibility (because no other evidence they have solicited from Sheet Metals has even given an indicia that this might be the case) that Sheet Metals had knowledge of Defendants' AWP/ASP spreads. Not only has this Court repeatedly indicated that such "knowledge" is marginally relevant to Class 2, where there is a statute in place that requires Sheet Metals and other members of Class 2 to reimburse based on AWP, but Defendants have been making this argument throughout this litigation. Therefore, it should come as no surprise to them, nor should it be the basis of an "emergency" motion, to request these documents from Sheet Metals now. Because of Defendants' extreme delay in requesting these documents, and

because of their tenuous relationship to Class 2 (and Sheet Metals as a member of that Class), Defendants' "Emergency" Motion should be denied.

I.  **Defendants' Request Comes Too Late**

As Defendants point out, pursuant to Case Management Order No. 19 discovery for Sheet Metals was to be completed by March 1, 2006. *See* Ex. G to Christofferson Decl.[1] Defendants fail to point out to the Court that these dates were suggested by Defendants and thereafter agreed upon by Plaintiffs. *See* Dec. 9, 2005 e-mail from Adeel A. Mangi to Edward Notargiacomo, Ex. A to Declaration of Jennifer Fountain Connolly ("Connolly Decl."). As Defendants also point out, Sheet Metals completed its document production on March 29, 2006. *See* Ex. I to Christofferson Decl. Further, Track 1 discovery terminated over a year ago.[2] The parties' summary judgment papers with regard to Class 2 have been fully briefed since April 28 of this year. This Court held oral argument on those motions on May 23.

What Defendants omit in their chronology of events is that *six months* elapsed between the time that Sheet Metals completed its document production and Defendants purportedly "discovered" that documents regarding Sheet Metals' active members had not been produced. Because Plaintiffs are only seeking recovery on behalf of Sheet Metals' Supplemental Medicare Wraparound Plus ("SMW+") Plan, which pays 20% of Medicare's allowable amount for Sheet Metals' retirees (as opposed to its active members), Plaintiffs did nothing to disguise the fact that

---

[1] Defendants claim that there is something magical about the fact that the CMO provides that discovery from Sheet Metals was to be "substantially" completed. There is no such magic. Indeed, Defendants' conduct in failing to seek any additional discovery from Sheet Metals since March indicates that Defendants themselves never believed there was any exception to that deadline.

[2] Indeed, the same law firm that filed this "emergency motion" recently denied Plaintiffs' request for relevant discovery that Schering-Plough deliberately withheld from Plaintiffs on the grounds that Track 1 discovery was completed. *See* Sept. 8, 2006 letter to Steve W. Berman from Adam Wright, Ex. B to Connolly Decl. ("we respectfully remind you that discovery has been closed by order of the Court for more than a year. Trial is scheduled to being in two months. . . . Under such circumstances, additional discovery is both inappropriate and unnecessary.").

2

they had not and would not produce documents relating to Sheet Metals' active members. The only reason for Defendants' tardy discovery is their own lack of diligence. Because Sheet Metals is not responsible for Defendants' own failures to investigate their defenses in a timely fashion, it should not have to incur the substantial burden to produce the documents requested by them.[3]

Defendants claim that Plaintiffs would suffer no prejudice by having to produce these documents now. On the contrary, Plaintiffs' pretrial disclosures are due this Monday. Plaintiffs have based their preparation on the documents they and Defendants have already produced. They cannot and should not be expected to, in addition to their preparation of their case against four defendants, halt that preparation to produce additional documents and then plan a rebuttal to Defendants' "newly found" Class 2 defense. Indeed, *none* of the cases cited by Defendants – which simply provide that this Court has jurisdiction over pretrial discovery – hold that Plaintiffs should have to.[4] On the contrary, a host of authority says that Defendants' requests come too late. *See Bloom v. AGFA Corp.*, No. 94-2033, 1995 U.S. App. LEXIS 8983, at *3 (1st Cir. Apr. 18, 1995) (affirming the trial court's entry of judgment for the defendant and denying plaintiff's belated motion to reopen discovery because "[p]arties who, like [plaintiff], have easily foreseeable needs for pretrial discovery cannot wait until the district court is performing rites of

---

[3] Defendants claim that "witnesses designated to testify on behalf of SMW have disclaimed having the knowledge that one would expect should flow from its contractual relationships with PBMs and TPAs." Defendants' Memo., at 7. However, even though Defendants claim the requests they now seek were covered by their previous requests, and even though the depositions of the two Sheet Metals designees, Glenn Randle and Teresa Jernigan, were taken on November 17, 2005 and January 13, 2006, respectively, Defendants ***never*** objected to the extent of the knowledge of these witnesses and ***never*** asked Sheet Metals to designate another witness. Defendants have therefore waived the right to get this information from an "emergency" motion.

[4] *Financial Bldg Consultants, Inc. v. American Druggists Ins. Co.*, 91 F.R.D. 59 (N.D. Ga. 1981), a case decided 25 years ago and the only case Defendants cite where discovery was ordered after a discovery deadline, involved a request made by defendants while their request to extend the discovery deadline was pending. Clearly Defendants never made such a request here.

3

interment before attempting to secure necessary facts."); *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 266 (1st Cir. 1993) (affirming district court's denial of appellant's eve-of-trial motion to compel production when appellant knew a year earlier that appellee intended to offer evidence on the issue and noting that "the discovery deadline had long since passed and the district court had no automatic obligation to reopen the discovery period."). *See also McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 813 (E.D. Cal. 2006) (denying defendant's request to depose additional witnesses on the eve of trial should the court deny its motion in limine because "[t]he parties are fully engaged in trial preparation and at this late juncture, there are no grounds to delay that preparation by re-opening discovery.'"); *Lingo Corp. v. Topix, Inc.*, 218 F.R.D. 385, 387 (S.D.N.Y. 2003) (denying plaintiff's request to reopen discovery because it was untimely, and "A further reopening months after the discovery cutoff is inappropriate."(citing *Colletti v. Fagin*, 1999 U.S. Dist. LEXIS 2635, No. 90 Civ. 4591, 1999 WL 126461, at *3 (S.D.N.Y. Mar. 10, 1999) (denying request to "reopen discovery on the eve of trial" where party had prior opportunity to conduct the same discovery and "chose not to do so")); *Fournier v. McCann Erickson*, 242 F. Supp. 2d 318, 334 (S.D.N.Y. 2003) (denying plaintiff's motion to compel response to untimely requests to admit because "the Court has been presented with no compelling reason to do so, especially where, as here, the request is made more than one year after the discovery deadline and on the eve of trial.").

II.  **This Court Has Repeatedly Held That A Third Party Payors' ("TPP's") "Expectation" Of The AWP/ASP Spread Has Little Bearing On Class 2**

Defendants claim that Plaintiffs do not "seriously contest" the relevance of Defendants' requests to Sheet Metals. Nothing could be further from the truth. Plaintiffs' counsel's letter to Defendants refusing to produce those documents notes "the highly attenuated nature" of Defendants' last-minute requests. *See* Ex. K to Christofferson Decl. Indeed, possibly outside of

4

Defendants' statute of limitations defenses, this Court has held that TPP "expectations" regarding AWP/ASP spreads is not relevant to Class 2.

Consistent with numerous expert opinions submitted in connection with Plaintiffs' motion for class certification of Track 1,[5] this Court, too, found in its Memorandum and Order Re: Motion for Class Certification [Doc No. 1648] that: "AWP was the basis for drug reimbursement under Medicare Part B for most of the proposed class period." *In re Pharm. Indus. Average Wholesale Pricing Ltiig.*, 230 F.R.D. 61, 70 (D. Mass. 2005). This Court likewise found that: "Medicare pays 80% of the allowed amount of a covered drug, and the beneficiary is responsible for paying the other 20%. 42 U.S.C. § 13951 (a) (1) (S). Many beneficiaries have purchased private 'MediGap' (or 'wrap around') insurance, which pays all or some of this 20% payment." *Id.* at 71. Therefore, MediGap payors were, by statute, making payments based on AWP. Thus, although this Court noted that "[s]ome TPPS [who are MediGap payors] may have greater sophistication with respect to the existence of spreads because they purchase self-administered drugs . . . [that knowledge was irrelevant because] the reimbursement rate is set by statute, not negotiation." *Id.* at 86.

Since issuing its order on class certification, this Court has not wavered from its view that TPP knowledge of AWP/ASP spreads is not relevant to Class 2. Indeed, in connection with

---

[5] In his Declaration in Support of Plaintiffs' Motion for [Track 1] Certification (Sept. 3, 2004), Dr. Hartman explained that expectations were not an issue in the Medicare Part B context because reimbursement rates for Medicare Part B are not negotiated and instead are "set by regulation below the but-for AWP and at ASP." *Id.* at 24 n.52. He further explained in his Rebuttal Declaration (Dec. 16, 2004) that "[g]iven Medicare's reliance upon AWP, Class member reimbursement for claims related to Medicare Part B coinsurance has been explicitly related to AWP." *Id.* ¶ 21(b), at 22. During the December 6, 2004 evidentiary tutorial, Dr. Rosenthal explained that "[t]he third-party payors in this instance [MediGap] really take the reimbursement as set by Medicare and merely fill in that 20 percent. So, they're not really in a position to negotiate." Trans. of Day One Tutorial – Evidentiary Hearing, at 18:10-13. Dr. Berndt likewise concluded that, with regard to Part B reimbursement, AWP was the "*de facto*" benchmark by virtue of the statutory scheme in place. Report of Independent Expert Professor Ernst R. Berndt To Judge Patti B. Saris [Doc. No. 1384] ¶ 63.

hearing Plaintiffs' motion for class certification regarding the Track 2 Defendants a few weeks ago, this Court recently reiterated this belief. *See* Trans. of Track 2 class certification hearing (Sept. 12, 2006), at 49 ("By definition, they do pay based on AWP because that's what the statute says . . .") and at 74 ("That having been said, I've got a statute. So, I mean, I'm vested in the statute."), Ex. C to Connolly Decl.[6]

Defendants claim that they require this information with specific regard to Sheet Metals because Glenn Randle, one of Sheet Metals trustees, "professed a lack of awareness of drug pricing, a lack of awareness of AWP, and altogether a lack of sophistication in matters relating to health care that appeared inconsistent with the responsibilities of SMW to its active members." Defendants' Memorandum [Doc. No. 3138], at 1. In making this grossly outrageous claim, Defendants ignore that Sheet Metals relies on Southern Benefits Administrators, its Third Party Administrator, for knowledge regarding the reimbursement of pharmaceuticals. Mr. Randle testified extensively regarding his personal experience and background during his deposition and made it absolutely clear that he has no background in the pharmaceutical industry and no background in health care. *See* Deposition Tr. of Glenn Randle (Nov. 17, 2005), at 16-23, Ex. D to Connolly Decl. But that is not his responsibility as a trustee of the Plan. Instead, it is his responsibility to select appropriate persons and entities with such expertise, such as Southern Benefits, to provide this information.

Indeed, Mr. Randle repeatedly testified that he deferred questions about pharmaceutical pricing and reimbursement to Southern Benefits. *See* Randle Dep. at 64:18-65:8 (Southern

---

[6] The authority cited by Defendants for the purported proposition that this Court has held that knowledge is relevant to members of Class 2 only stands for the proposition that such evidence *may* be relevant to Defendants' statute of limitations defenses. However, Defendants have the burden of proof on those defenses and, given the fact that they appear not to have prepared for those defenses, which appeared in the answers they filed two and a half years ago, until a little more than a month before trial, Defendants' request that Sheet Metals should have to produce documents related to *their defense* at the last minute lacks credulity.

6

Benefits and Teresa Jernigan of Southern Benefits would be most familiar with the claims process and the actual methodology of the process); *id.* at 93:9-20 (Randle knew that the "health fund paid a portion of pharmaceutical bills that were covered in the first instance by Medicare Part B" by virtue of a "review of claims paid," and that "Southern Benefit Administrator is involved in it, as they have the records. I think there was people involved in that process. I don't know the exact details of how that was done as to who did it, but a sampling should have been done by the Southern Benefit Administrators, Teresa Jernigan, her people."); *id.* at 125:7-126:5 ("Q. Is it your testimony that you're certain that the amount that this check/EFT reference at the top of this Page 42 is in reference to an amount that the Fund paid to the provider as opposed to what Medicare paid in terms of its 80 percent that it owed to the provider?...A. Yeah, certainly, you know, I couldn't state anything pertaining to that with certainty, you know. I'm looking at this for the first time. I've never been in this part of the process. So I couldn't tell you for sure. That would be something Teresa Jernigan [would know]."); *Id.* at 60:22-61:21("Q. You've testified that at least it's your understanding that if a physician-administered drug is administered pursuant to the ...Outpatient Prospective Payment System and that the Fund is ... providing reimbursement for that drug,...the Fund will determine the total allowable charge. Do you know if that determination is based upon the average wholesale price of that drug? ... A. Our instructions to them [Southern Benefit], what I understand is done is that they never deviate from the Medicare-approved claim. So it sounds like some of these are a little bit hard to interpret, but they always base from the Medicare approval. They don't step out and look at any costs separate from that Medicare approval. So they let Medicare be the guide."); *id.* at 62:6-22 ("Q. You don't know whether the determination that the Fund makes pursuant to this section with respect to physician-administered drugs is based on average wholesale price of those drugs?...A. Again,

[Southern Benefits Administrators is] instructed to follow Medicare. Medicare would be the one doing this average wholesale price situation. Our people should never step into that arena. It's always behind the Medicare....Q. So you do know that it's based on AWP? A. No, it's based on Medicare, on their approval, their paid claim."), Ex. D to Connolly Decl. Importantly, and what Defendants fail to tell this Court, ***Defendants took the deposition of a representative of Southern Benefits and never asked her about their purported "knowledge" theory that is the basis of their "emergency" motion now.***

Defendants further claim that these documents are relevant because this Court has found that some TPPs are advised by consultants who have knowledge of AWP/ASP spreads. What Defendants fail to tell this Court, however, is that Sheet Metals *never engaged such a consultant* and that there is no evidence in the record that Sheet Metals did. The "consultant report" attached as Exhibit L to the Christofferson Declaration is nothing more than an actuarial report regarding the health care expenses of the fund. Defendants do not suggest – because it is absolutely untrue – that this consultant had or should have had any knowledge regarding AWP/ASP spreads. Regardless of Defendants' "theory" about TPP knowledge for Class 2, the fact is that theory does not apply to Sheet Metals. This makes Defendants' requests to Sheet Metals nothing more than a fishing expedition. Especially given the stage of the litigation in which these requests appeared, they should not be tolerated by this Court.

WHEREFORE Plaintiffs respectfully request that this Court deny Track 1 Defendants' "Emergency" Motion to Compel the Production of Documents From Sheet Metal Workers National Heath Fund, and all other relief that this Court deems just and proper.

DATED: September 27, 2006                    By: /s/ Jennifer Fountain Connolly
                                                 Kenneth A. Wexler
                                                 Jennifer Fountain Connolly
                                                 Wexler Toriseva Wallace LLP
                                                 One N. LaSalle Street, Suite 2000
                                                 Chicago, IL  60602
                                                 Telephone: (312) 346-2222
                                                 Facsimile: (312) 346-0022

                                                 Thomas M. Sobol (BBO#471770)
                                                 Edward Notargiacomo (BBO#567636)
                                                 Hagens Berman Sobol Shapiro LLP
                                                 One Main Street, 4th Floor
                                                 Cambridge, MA  02142
                                                 Telephone: (617) 482-3700
                                                 Facsimile: (617) 482-3003

                                                 Steve W. Berman
                                                 Sean R. Matt
                                                 Hagens Berman Sobol Shapiro LLP
                                                 1301 Fifth Avenue, Suite 2900
                                                 Seattle, WA  98101
                                                 Telephone: (206) 623-7292
                                                 Facsimile: (206) 623-0594

                                                 Elizabeth A. Fegan
                                                 Hagens Berman Sobol Shapiro LLP
                                                 60 W. Randolph Street, Suite 200
                                                 Chicago, IL  60601
                                                 Telephone: (312) 762-9235
                                                 Facsimile: (312) 762-9286

                                                 Eugene A. Spector
                                                 Jeffrey Kodroff
                                                 Spector, Roseman & Kodroff, P.C.
                                                 1818 Market Street, Suite 2500
                                                 Philadelphia, PA  19103
                                                 Telephone: (215) 496-0300
                                                 Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 W. Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**

Docket No. MDL 1456

I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on September 27, 2006, I caused copies of ***Plaintiffs' Memorandum In Opposition To Track 1 Defendants' "Emergency" Motion To Compel The Production Of Documents From Sheet Metal Workers National Health Fund*** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/ Jennifer Fountain Connolly
Jennifer Fountain Connolly