# EXHIBIT C



KINSELLA / NOVAK
COMMUNICATIONS, LTD.
A SOURCECORP™ COMPANY

# Notice Program
## Class 3 Consumers

## *In Re: Pharmaceutical Industry Average Wholesale Price Litigation,*

### Case No. MDL No. 1456
### (CA:01-CV-12257-PBS) (D.Mass.)

2120 L Street, NW | Suite 205 | Washington, DC 20037
Phone: 202.686.4111 | Fax: 202.293.6961 | Email: info@kinsella-novak.com | http://www.kinsella-novak.com

**THE ART & SCIENCE OF LEGAL NOTIFICATION**

# Table of Contents

|  | Page |
|---|---|
| Firm Overview | 1 |
| Relevant Case Experience | 2 |
| Technical Approach | 3 |
| Situation Analysis | 5 |
| Class Definition | 6 |
| Product Background | 7 |
| Notice Plan Overview | 8 |
| Direct Notice | 9 |
| Paid Media Methodology | 10 |
| Target Audience | 11 |
| Demographics | 12 |
| Paid Media Program | 13 |
| Local Newspapers | 14 |
| Massachusetts Media Delivery | 16 |
| Notice Design | 17 |
| Earned Media | 18 |
| Informational Web Site | 19 |
| Toll-Free Telephone Support | 20 |

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

Exhibit 1 – Long Form Notice

Exhibit 2 – Publication Notice

Exhibit 3 – Media Schedule

# Firm Overview

Kinsella/Novak Communications ("KNC") provides nationally recognized expertise in the design of media-based legal notification programs for class actions and bankruptcies.

The firm has designed, implemented or consulted on over 250 class actions and bankruptcies and specializes in the most complex and often precedent-setting notice efforts. National and statewide notification programs include asbestos, breast implants, consumer fraud, home siding products, infant formula, polybutylene plumbing, tobacco, antitrust securities and Holocaust claims.  The firm has selected and placed over $145 million in paid legal advertising.

KNC develops advertisements, press materials, Web sites, and other notice materials bridging the gap between litigation complexities and the need for a clear and simple explanation of legal rights.  In addition to designing and producing notices in "plain language," all KNC notice programs are fully compliant with Rule 23 of the Federal Rules of Civil Procedure and comparable state guidelines.  The firm employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court.

# Relevant Case Experience

KNC has significant notification experience including consumer class actions involving pharmaceuticals.

## Pharmaceutical Cases

➢ *State of Connecticut v. Mylan Laboratories, Inc.,*
   MDL 1290, Misc. No. 99-276 (TFH-JMF) (Lorazepam and Clorazepate)

➢ *In re Buspirone Antitrust Litigation,*
   MDL-1413 (S.D.N.Y.) (BuSpar)

➢ *In re Cardizem* CD *Antitrust Litigation,*
   99-MD-1278 (E.D. Mich.) (Cardizem)

➢ *State of Ohio v. Bristol-Myers Squibb, Co.,*
   1:02-cv-01080 (D.D.C.) (Taxol)

## Other Selected Cases

➢ *In re Nasdaq Market-Makers Antitrust Litigation,*
   No. M21-68 (RWS), 94 Civ. 3996 (RWS), MDL No. 1203 (S.D.N.Y.) (securities)

➢ *In re Compact Disc Minimum Advertised Price Antitrust Litigation,*
   MDL No. 1361 (D. Me.) (prerecorded music products)

➢ *In re Toys "R" Us Antitrust Litigation,*
   MDL No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

➢ *Cox v. Shell Oil Co.,*
   No. 199,844 (Tenn. Ch. Ct., Obion County) (polybutylene pipe)

➢ *Naef v. Masonite,*
   No. CV-94-4033 (Ala. Cir. Ct., Mobile County) (hardboard siding)

➢ *In re Holocaust Victims Assets Litigation,*
   No. CV 96-4849 (Consolidated with CV-5161 and CV 97461) (E.D.N.Y.)

➢ *Ruff, et al. v. Parex, Inc.,*
   No. 96-CVS-0059 (N.C. Super. Ct., New Hanover County) (EIFS stucco)

➢ *Fettke v. McDonald's Corporation,*
   Case No. 044109 (Cal. Super. Ct., Marin County) (trans-fatty acids)

# Technical Approach

KNC's technical approach is based on its expertise as a leading provider of notice in class actions, knowledge of court-approved notice programs at the state and federal levels and years of experience in designing and implementing legal notification programs both nationally and internationally.

KNC begins by conducting detailed research on the claim that is the subject of the class action and how it is related to a population, its location and temporal characteristics. This information identifies the demographic characteristics of class members — such as age, gender, income, and education level — and the geographic distribution of potential class members. This research provides the parameters for identifying and locating class members and shapes the scope of the notice program.

Specifically, KNC:

➢ Reviews demographic and product information provided by the client or independently researched and establishes a demographic profile of the target audience. All media selections are based on this profile in order to ensure the highest reach of potential class members and frequency of message exposure.

➢ Evaluates the effectiveness of media vehicles – consumer magazines, newspapers, specialty publications, broadcast television, radio and the Internet – in reaching the target audience.

➢ Analyzes publications using syndicated data sources and tools, such as the Audit Bureau of Circulation (ABC) statements, which certify how many readers buy or obtain copies of publications, and MediaMark Research ("MRI") which measures how many people open or read publications.

➢ Examines the geographic distribution of potential class members at the level of detail necessary to determine effective geographic coverage.

➢ Selects media available during the established notice period ensuring timely notice to class members.

➢ Creates and implements all notice communications, including: published notice, print, audio and video news releases, television and radio spots, Internet advertising and Web sites.

➢ Ensures that published notices and long form notices are written in "plain language."

➢ Uses established advertising relationships to negotiate the deepest available discounts on national advertising and secure optimum placement with respect to the media habits of the target audience.

➢ Designs and implements an "earned media" program to further supplement the published notice through print, audio and video news releases and non-paid media outreach.  Tracks and verifies all media placements and press stories developed through "earned media."

➢ Designs and maintains a Web site to enable class members to access all relevant information including long form notices, claim forms and court documents. Provides registration and email capabilities on the site.

➢ Integrates all aspects of the notification program with selected claims administrators.

➢ Provides advice, affidavits, depositions and court testimony with respect to the design and implementation of the notification program.

*In Re Pharmaceutical Industry Average Wholesale Price Litigation*

# Situation Analysis

The average wholesale price ("AWP") is the published price used to establish reimbursement rates for drugs industry-wide. Plaintiffs claim that the Defendants control the AWP for their drugs. Specifically, they claim that forty-two drug manufacturers artificially raised and falsely overstated the AWP of over 300 drugs. This resulted in inflated payments by consumers and other entities such as health and welfare plans and health insurers. Defendants deny these allegations.

The Court will conduct a two-phase trial beginning with four of the drug manufacturers. These companies (the "Defendants") are:

**AstraZeneca**
AstraZeneca
PLC, Zeneca, Inc.
AstraZeneca Pharmaceuticals L.P.
AstraZeneca U.S.

**The BMS Group**
Bristol-Myers Squibb Co.
Oncology Therapeutics Network Corp.
Apothecon, Inc.

**The Johnson & Johnson Group**
Johnson & Johnson
Centocor, Inc.
Ortho Biotech
McNeil-PPC, Inc.
Janssen Pharmaceutica Products, L.P.

**The Schering Plough Group**
Schering-Plough Corporation
Warrick Pharmaceuticals Corporation

Plaintiffs seek monetary compensation and a court order prohibiting the Defendants from inflating the AWP for their drugs.

# Class Definition

The Court has approved three individual sub-classes in this matter. This Notice Plan is designed to reach the consumer members of Class 3. A previous plan was submitted and approved by the Court to reach the Members of Classes 1 (Medicare Part B Co-Payment Class) and 2 (Third-Party Payor MediGap Supplemental Insurance Class) as well as TPPs in Class 3. The Class targeted in this Notice Plan includes the following:

Class 3: Consumer Class for Medicare Part B Drugs Outside of the Medicare Context, i.e., Medicare Part B Drugs Paid for by Contract

All natural persons who made or who incurred an obligation enforceable at the time of judgment to make a payment for purchases in Massachusetts, for a physician-administered Subject Drug that was manufactured by AstraZeneca (AstraZeneca, PLC, Zeneca, Incl., AstraZeneca Pharmaceuticals L.P., and AstraZeneca U.S.), the BMS Group (Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp., and Apothecon, Inc.), the Johnson & Johnson Group (Johnson & Johnson, Centocor, Inc., Ortho Biotech, McNeil-PPC, Inc., and Janssen Pharmaceutica Products, L.P.), or the Schering Plough Group (Schering-Plough Corporation and Warrick Pharmaceuticals Corporation). Included within this Class are natural persons who paid coinsurance (i.e., co-payments proportional to the reimbursed amount) for a Subject Drug purchased in Massachusetts, where such coinsurance was based upon use of AWP as a pricing standard. Excluded from this Class are any payments or reimbursements for generic drugs that are based on Maximum Allowable Cost ("MAC") and not AWP.

# Product Background

The first phase of the lawsuit involves the four drug manufacturers and 15 drugs that are used to treat a wide range of medical conditions and diseases.  The drugs are used in the treatment of, among others: anemia, arthritis, asthma, blood clots, cancer of the cervix and uterus, heart failure, HIV, Leukemia, lung and testicular cancer, ovarian and stomach cancer, prostate and breast cancer, and shingles.

The specific drugs are:

## AstraZeneca
Zoladex

## BMS Group
Blenoxane             Rubex
Cytoxan               Taxol
Etopophos             VePesid
Paraplatin

## Johnson & Johnson Group
Procrit               Remicade

## Schering Plough Group
Albuterol             Proventil
Intron A              Temodar
Perphenazine

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

# Notice Plan Overview

This plan is submitted by KNC in connection with *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, M.D.L. No. 1456 (CA: 01-CV-12257-PBS) in the District Court of Massachusetts.  The plan outlines procedures to provide notice of the certification of this case as a class action consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  The Notice Program is directed to all Consumer Class Members in Class 3.

Based upon information provided by Counsel, the results of research on Class Members and their response to media and the media habits of the target audiences, the following four-part notice program is recommended:

➢ Direct notice by first-class mail to:

   • All callers to the toll-free information line who request a *Notice of Class Action Pendency* as a result of seeing the Publication Notice.

➢ Broad published notice through the use of paid media, including local daily newspapers and Hispanic newspapers.

➢ Earned media notice through a press release sent to major national print and electronic outlets.

➢ Electronic notice through a dedicated Web site.

# Direct Notice

Direct mail notice will consist of mailing the *Notice of Class Action Pendency* (Exhibit 1) to identifiable Class Members informing them of their legal rights and how they may participate in or opt-out of the class action.  The *Notice of Class Action Pendency* will be sent to:

> ➢  All callers to a toll-free information line who request the *Notice of Class Action Pendency*.  A toll-free number for this information line will prominently appear in the Publication Notice.  Class Members may also download the *Notice* in PDF format from the Notice Web site.

# Paid Media Methodology

KNC notice plans directed to unidentified class members (1) identify the demographics of class members and establish a target audience;  (2) outline the methodology for selecting the media and other plan elements and how they relate to product usage or exposure; and (3) provide results that quantify for the court the adequacy of the notice based upon recognized tools of media measurement.

In the wake of the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999), the reliability of a notice expert's testimony should be tested against the standards developed within the media industry for determining whether, to what degree and at what frequency a target audience has been reached.  In assessing the expert's reliability, the court must determine whether the testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," (526 U.S. at 152).  That showing would likely require evidence that the expert's data and methodology are similar to that used by professionals in the relevant field.

In keeping with the *Daubert* and *Kumho* rulings, KNC employs the methodology and measurement tools used in the media planning and advertising industry for designing and measuring the adequacy of a paid media program to reach a particular audience.

Choosing a target audience encompassing the characteristics of Class Members is the first step in designing the paid media program. Media vehicles are chosen based on their ability to provide effective and cost efficient reach among the target audience.  The selected media vehicles are then measured against the target audience to establish the *reach* of the media program and the *frequency* of exposure to the media vehicles.  *Reach* and *frequency* estimates are two of the primary measurements used to quantify the media penetration of a target audience.

> ➢ *Reach* is the estimated percentage of a target audience reached one or more times through a specific media vehicle or combination of media vehicles within a given period.

> ➢ *Frequency* is the estimated average number of times an audience is exposed to an advertising vehicle carrying the message within a given period of time.

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

# Target Audiences

To develop a profile of the demographics and media habits of Class Members and their heirs, KNC analyzed syndicated data available from the 2006 Doublebase Survey[1] from MediaMark Research, Inc. ("MRI").

MRI is the leading U.S. supplier of multimedia audience research. As a nationally accredited research firm, it provides information to magazines, television, radio, Internet and other media, leading national advertisers and over 450 advertising agencies -- including 90 of the top 100 in the United States. MRI's nationally syndicated data are widely used by these companies as the basis for the majority of the media and marketing plans written for advertised brands in the United States.

Specifically, MRI provides data on audience size, composition and other relevant factors pertaining to major media vehicles. MRI presents a single-source measurement of major media, products, services and in-depth consumer demographic and lifestyle characteristics.

MRI provides data on both branded and generic prescription drug users. An examination of this data indicates that Adults 35 years of age and older represent 75% of prescription drug users and is the largest consumer segment of the Class. Using MRI, KNC determined that the following three demographics are the best demographic targets against which to effectively select and measure media to reach the Class:

➢ Adults 35 years or age and older in Massachusetts who used branded or generic prescription drugs during the past twelve months "("Drug Consumers Adults 35+").

➢ Adults 18 years of age and older in Massachusetts who used branded or generic prescription drugs during the past twelve months ("All Drug Consumers").

➢ Adults 35 years of age and older in Massachusetts, which is likely to include a majority of heirs.

---

[1] The study, conducted since 1979, surveys persons 18 years of age and older in the contiguous 48 states. MRI conducts more than 26,000 personal interviews with consumers in two waves annually each lasting six months and consisting of 13,000 interviews. Produced annually by MRI, the Doublebase study consists of two full years of data drawn from over 50,000 respondents. Consumer information is recorded on 500 product/service categories, 6,000 brands and various lifestyle activities. Respondents are selected based on the ability to project their responses nationally.

# DEMOGRAPHICS

The chart below outlines the overall demographics of the three target audiences:

| DEMOGRAPHICS | DRUG CONSUMERS ADULTS 18+ | DRUG CONSUMERS ADULTS 35+ | ADULTS 35+ |
|---|---|---|---|
| | | | |
| Male | 35.7% | 35.9% | 47.1% |
| Female | 64.3% | 64.1% | 52.9% |
| **Age** | | | |
| 18 - 24 | 6.9% | N/A | N/A |
| 25 - 34 | 12.7% | N/A | N/A |
| 35 - 44 | 18.4% | 22.9% | 30.3% |
| 45 - 54 | 26.2% | 32.6% | 27.8% |
| 55 - 64 | 16.6% | 20.7% | 20.1% |
| 65+ | 19.1% | 23.8% | 21.8% |
| **Education** | | | |
| Graduated/Attended College | 58.7% | 56.3% | 54.3% |
| Graduated High School | 32.9% | 33.7% | 34.7% |
| **Household Income** | | | |
| Under $10,000 | 4.0% | 3.3% | 2.7% |
| $10,000 - $29,999 | 16.1% | 15.9% | 17.4% |
| $30,000 - $49,999 | 11.9% | 12.5% | 15.7% |
| $50,000 - $74,999 | 25.7% | 22.3% | 20.5% |
| $75,000 + | 42.4% | 46.0% | 43.7% |
| **Ethnicity** | | | |
| Caucasian | 89.4% | 93.2% | 90.1% |
| African-American | 4.2% | 4.0% | 4.3% |
| Hispanic | 1.8% | 3.4% | 3.0% |
| Asian | 4.3% | 1.6% | 3.4% |
| **Location**[2] | | | |
| A & B Counties | 95.3% | 94.2% | 95.2% |
| C & D Counties | 4.7% | 5.8% | 4.8% |

[2] A Counties, as defined by A.C. Nielsen Company, are all counties belonging to the 25 largest metropolitan areas.  These metro areas correspond to the MSA (Metropolitan Statistical Area) and include the largest cities and consolidated areas in the United States. B Counties, as defined by A.C. Nielsen Company, are all counties not included under A that are either over 150,000 population or in a metro area over 150,000 population according to the latest census. C Counties, as defined by A.C. Nielsen Company, are all counties not included under A or B that either have over 40,000 population or are in a metropolitan area of over 40,000 population according to the late census. D Counties are, essentially, rural counties in the Nielsen classification system of A, B, C, D counties.

# Local Newspapers

Local daily newspapers serve as a widely read, timely and credible information source that allows for the geographic targeting of notice.  Insertions in the daily editions of key local and Hispanic newspapers will provide the target audience with numerous opportunities to see the Notice.

An approximately 5-3/4" x 8" ad will be placed three times in the daily editions of the following 30 local newspapers and three times in the Sunday editions of 15 local newspapers.

| NEWSPAPERS | DAILY CIRCULATION IN MASSACHUSETTS | SUNDAY CIRCULATION IN MASSACHUSETTS |
|---|---|---|
| Athol Daily News | 5,400 | - |
| Attleboro Sun Chronicle | 19,572 | 19,930 |
| Boston Globe | 412,733 | 629,369 |
| Boston Herald | 224,726 | 138,473 |
| Brockton Enterprise | 35,010 | 41,217 |
| Fall River Herald News | 21,293 | 22,524 |
| Fitchburg Sentinel & Enterprise | 16,890 | 17,451 |
| Gardner News | 6,545 | - |
| Gloucester Daily Times | 10,508 | - |
| Greenfield The Recorder | 13,910 | - |
| Hyannis Cape Cod Times | 48,237 | 55,936 |
| Lowell Sun | 47,364 | 49,243 |
| Lynn Daily Item | 14,420 | - |
| Malden Evening News/ Medford Daily Mercury | 13,800 | - |
| Metrowest Daily News | 45,744 | 43,920 |
| New Bedford Standard Times | 34,625 | 37,211 |
| Newbury Port Daily News | 12,371 | - |
| North Adams Transcript | 6,546 | - |
| North Andover Eagle Tribune | 37,134 | 38,053 |
| Northampton Daily Hampshire Gazette | 18,182 | - |
| Pittsfield Berkshire Eagle | 28,499 | 31,429 |
| Quincy Patriot Ledger | 58,455 | - |
| Salem News | 31,220 | - |
| Southbridge Evening News | 5,000 | - |
| Springfield Republican | 83,707 | 125,587 |
| Taunton Daily Gazette | 10,456 | 9,699 |
| Wakefield Daily Item | 4,556 | - |

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

*In Re Pharmaceutical Industry Average Wholesale Price Litigation*

| | | |
|---|---|---|
| Westfield Evening News | 5,700 | - |
| Woburn Daily Times Chronicle | 8,259 | - |
| Worcester Telegram & Gazette | 100,103 | 117,589 |

An approximately 6-3/4" x 7" will be placed two times in the weekly editions of the following 7 Hispanic newspapers.

| NEWSPAPERS | WEEKLY CIRCULATION IN MASSACHUSETTS |
|---|---|
| *El Latino Expreso* | 13,500 |
| *El Mundo* | 30,000 |
| *El Planeta* | 60,000 |
| *La Semana* | 17,500 |
| *Providence En Espanol* | 24,775 |
| *Siglo 21* | 25,000 |
| *Vocero Hispano* | 26,000 |

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

# Paid Media Program

To reach unidentifiable Class Members, KNC recommends the use of measurable paid media.  Paid media advertising is guaranteed to appear, allowing for control of the content, timing and positioning of the message, making it an invaluable part of any notice campaign. Newspapers, consumer magazines, television, radio and the Internet, among other sources, offer paid media opportunities.

In considering which media to use for this case, KNC evaluated the cost-effectiveness, exposure opportunities and reach potential of each media type.   Television was not selected due to its high cost.  Radio is a frequency medium best used locally.  Print media was selected because of its widespread use, and its value as a credible and tangible information source that allows for extended body copy.

In choosing which placements would be best for this case, KNC reviewed potential print publications for the compatibility for reach to the target audience in the required time frame.  Newspapers offer efficient and cost-effective vehicles for reaching all demographic segments of the population.  Given the broad scope of the Class in this notice program and the demographics and media habits of the target audiences, daily newspapers and Hispanic newspapers are recommended.

# Massachusetts Media Delivery

The paid media program outlined above is designed to deliver the following estimated reach and frequency measurements[3]:

➢ An estimated 81.0 % of Drug Consumer Adults 35+ will be reached with an average estimated frequency of 4.6 times, delivering 5,350,000 gross impressions.[4]

➢ An estimated 76.8% of All Drug Consumers will be reached with an average estimated frequency of 4.5 times, delivering 6,059,000 gross impressions.

➢ An estimated 82.0% of Adults 35+ will be reached with an average estimated frequency of 4.5 times, delivering 11,979,000 gross impressions.

The paid media program provides Class Members with multiple exposure opportunities to media vehicles carrying the Publication Notice.

| TARGET | % OF TARGET REACHED | AVERAGE FREQUENCY | GROSS IMPRESSIONS |
|---|---|---|---|
| Drug Consumers Adults 35+ | 81.0% | 4.6 | 5,350,000 |
| All Drug Consumers | 76.8% | 4.5 | 6.059,000 |
| Adults 35+ | 82.0% | 4.5 | 11,979,000 |

---

[3] MRI is a sample-based survey.  Therefore, estimates of audience and/or demographics from these surveys are subject to sampling and non-sampling error.  The use of mathematical values from those surveys should not be regarded as a representation that they are exact to the precise mathematical value stated.

[4] Gross impressions are the total number of times a media vehicle containing the Publication Notice is seen. This is a duplicated figure, as some viewers (readers) will see several media vehicles (publications) that contain the Publication Notice.

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

# Notice Design

## Print Design

The plain language Publication Notice has been designed to alert Class Members to the litigation through the use of a bold headline (Exhibit 2).  This headline will enable Class Members to quickly determine if they are potentially affected by the litigation. Plain language text provides important information regarding the subject of the litigation, the Class definition and the legal rights available to Class Members.

Each advertisement will prominently feature a toll-free number, Web site and mailing addresses for Class Members to obtain the Long Form Notice and other information.  The design of the Publication Notice takes into account empirical research developed over the past 30 years about how people read and assimilate information.

Recent revisions to Rule 23(c)(2) of the Federal Rules of Civil Procedure require class action notices to be written in "plain, easily understood language."  KNC drafts and places plain language ads fully compliant with this revision.   The firm maintains a strong commitment to adhering to the plain language requirement while drawing on its experience and expertise to draft notices that effectively communicate with class members.

One-sixth-page ads will be used in local daily newspapers and Hispanic newspapers. After reviewing the content and special sections of each publication, the best possible position will be negotiated for placement of the Publication Notice.

# Earned Media

The thrust of the earned media program is to amplify the notice to Class Members through the use of free media.  The earned media portion of this notice program will augment the paid media plan developed to reach the Class.  The third-party endorsement from reliable sources such as the news media can add immeasurable value to outreach efforts.

Outreach to print and electronic media will focus primarily on key daily newspapers, wire services, newspaper bureaus nationally and major television and radio outlets.

A press release will be distributed to major media outlets in Massachusetts.   The press release will highlight the toll-free telephone number and Web site address that Class Members can call or visit for complete information.

# Informational Web Site

An informational interactive Web site is a critical component of the Notice campaign. The URL is a constant information source instantly accessible to millions. The informational Web site utilizes the Internet's ability to serve as a key distribution channel and customer service bureau. Combining clean site design, consistent site navigation clues and built-in flexibility, the Web site provides Class Members with easy access to the details of the litigation.

## Clean Design

The site is cleanly designed for ease of use and comprehension. Web pages on the site are simple, containing words, icons, documents and images.

A directory located in a column on the left-hand side of the page provides links to the information available on the Web site. These can include "Court Documents," "Long Form Notice," and "Questions/Links." The Web site can also feature a "Frequently Asked Questions" section answering commonly asked questions. If necessary, it will also provide a toll-free number for individuals seeking additional information and the address or email of Class Counsel,

## Consistent Navigation Cues

Wherever the user goes from the homepage to another part of the site, links to the homepage and subsections remain on the left side of all pages, while the case title and cite remains fixed on top.

## Built-In Flexibility

Though simply designed, the Web site is not restrictive. The site's basic architecture enables updates and new features to be added quickly.

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

# Toll-Free Telephone Support

A toll-free interactive voice response system (IVR) will be established to service Class Members calling as a result of seeing the published notice.  Callers requesting the *Notice of Class Action Pendency* will be prompted to input the telephone number of the residence where they would like to receive the Notice.

The system uses an address look-up database to locate the corresponding address of the resident.  A portion of the address will be read back to the caller for address verification. For successful look-ups, the caller will be asked to speak the Class Member's full name and to spell the last name.  If the look-up fails, is incorrect, or the call is placed from a rotary dial telephone, the caller will be prompted to speak the potential Class Member's name, address and telephone number.

The IVR system will provide an option for callers to speak to a live operator.

© 2006 Kinsella/Novak Communications, Ltd.
Proprietary and Confidential.

# EXHIBIT 1

# If You Made a Percentage Co-Payment for any of the Drugs Listed Below or You are the Heir to Someone Who Has,

## Class Action Lawsuits May Affect Your Rights

**Albuterol Sulfate**

**Blenoxane** (*bleomycin sulfate*)

**Cytoxan** (*cyclophosphamide*)

**Etopophos** (*etoposide phosphate*)

**Intron A** (*interferon alfa*)

**Paraplatin** (*carboplatin*)

**Perphenazine**

**Procrit** (*epoetin alfa*)

**Proventil** (*albuterol*)

**Remicade** (*infliximab*)

**Rubex** (*doxorubicin hcl*)

**Taxol** (*paclitaxel*)

**Temodor** (temozolomide)

**VePesid** (*etoposide*)

**Zoladex** (*goserelin acetate*)

*The District Court has authorized this Notice.  It is not a solicitation from a lawyer. You are not being sued.*

[Insert in Spanish:  For More Information On This Lawsuit Visit www.AWPLitigation.net ]

➢ Lawsuits claim that certain drug companies reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. The reported AWPs may be used to set the price that consumers making percentage co-payments will pay for the drugs. The lawsuits claim consumers making percentage co-payments paid more than they should have because of the false and inflated AWPs. The lawsuit asks the Court to award money damages to people that made percentage co-payments for the drugs in Massachusetts. Defendants deny the claims asserted in the lawsuits.

➢ The Class consists of people who made co-payments for certain drugs ("Covered Drugs") manufactured and marketed by Defendants AstraZeneca, Bristol-Myers Squibb Group, Johnson & Johnson Group and the Schering Plough Group.

➢ Certain dosages of the following Covered Drugs are included in the Class: **Albuterol Sulfate, Blenoxane (**bleomycin sulfate**), Cytoxan (**cyclophosphamide), **Etopophos (**etoposide phosphate**), Intron A (**interferon alfa), **Paraplatin (**carboplatin), **Perphenazine, Procrit (**epoetin alfa), **Provintil (**albuterol), **Remicade (**infliximab**), Rubex (**doxorubicin hcl**), Taxol (**paclitaxel), **Temodor (**temozolomide), **VePesid (**etoposide**) and Zoladex (**goserelin acetate**)**.

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

➢ The Court has said that the lawsuits can proceed on behalf of people who made a percentage co-payment for a Covered Drug between January 1, 1991 and January 30, 2006.  If you are an heir or legal successor to the rights of someone who made such a co-payment, you are also included in the Class.  See Question 7 to see if you are a member of the Class.

➢ The Court has determined that the case can go forward as a class action but has not made a decision on the merit of the claims.  A trial will determine whether the claims in this lawsuit against each Defendant listed above are true. The trial begins on November 6, 2006.

➢ If you were covered under Medicare with respect to treatment involving any of these drugs and made co-payments in connection with such treatment, you are not part of this Class.  You may be a member of a different Class of Medicare beneficiaries.  To find out if you may be a member of this separate Class, call xxx-xxxx-xxxx or visit www.awplitigation.net.

➢ <u>These lawsuits are not about the safety and effectiveness of these drugs</u>.

This Notice explains what your rights and choices are as a member of the Class.   ***You must make a choice now regarding your rights.   Please read all of this Notice carefully***.

## A SUMMARY OF YOUR RIGHTS AND CHOICES:

| You May: | | Due Date |
|---|---|---|
| **Remain in Lawsuit** | ***Stay in the lawsuit and wait for the result.***<br>By doing nothing, you stay in the lawsuit and may share in any recovery, if there is one, but you give up the right to sue the Defendants yourself about the claims in the lawsuit.  You will also be bound by the outcome of any trial. | ***<u>Do Nothing</u>*** |
| **Exclude Yourself** | ***Get out of the Class.***<br>You can write and ask to get out of the lawsuit.  If any money or benefits are awarded later in a trial or settlement, you will not get these benefits, but you keep the right to sue the drug companies on your own about the claims in the lawsuit. **See Questions 9-11.** | ***<u>Postmarked by</u>***<br>**November 3, 2006** |
| **Appear In The Lawsuit** | ***Participate in the lawsuit on your own or through a lawyer.***<br>If you don't exclude yourself, you can appear and speak in the lawsuit on your own or through your own lawyer.  (Class Counsel has been appointed to represent you) **See Questions 12 and 13.** | ***<u>Filed by</u>***<br>**November 6, 2006** |

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-2-

# WHAT THIS NOTICE CONTAINS

**Basic Information** ................................................ Page
    1.  Why did I get this Notice?   4
    2.  What is this lawsuit about?   4
    3.  Why is this a class action?   5

**The Claims In The Lawsuit** .................................. Page
    4.  What do the Plaintiffs claim?   5
    5.  What do the Defendants say about the claims?   5
    6.  Has the Court decided who is right in the lawsuit?   6

**Who are Class Members?**..................................... Page
    7.  Am I a Member of the Class?   6

**What are the Covered Drugs**.................................... Page
    8.  How can I tell if the drug I took is included as a Covered Drug?   8

**Your Rights – Getting Out of the Class Action**....………… Page
    9.  Can I get out of the lawsuit and the Class?   10
    10. How do I exclude myself from the Class?   10
    11. What happens if I exclude myself from the lawsuit?   11

**Your Rights – Appearing In The Lawsuit**…………..…….. Page
    12. Can I appear or speak in this lawsuit?   11
    13. How do I appear in this lawsuit?   11

**If You Do Nothing**……………………………..…….. Page
    14. What happens if I don't do anything at all?   12

**The Lawyers Representing You** .............................. Page
    15. Do I have a lawyer in this lawsuit?   12
    16. Can you elaborate on who pays the lawyers and how much they will be paid?   12
    17. Should I get my own lawyer?   13

**Getting More Information** ……………………………….. Page
    18. Are more details and information available?   13
    19. How will I be notified about the outcome of the trial?   13

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

# BASIC INFORMATION

## 1.  Why did I get this Notice?

Lawsuits have been filed against a number of drug companies on behalf of people who paid for one or more of the drugs – called "Covered Drugs" – see Question 8.  You received this Notice because you requested a copy.

You have legal rights and choices to make before a trial will decide whether the claims being made against the Defendant drug companies on your behalf are true. The trial begins on November 6, 2006.  **You must make you choice whether to remain in the Class or exclude yourself before November 3, 2006.**

This Notice explains:

- What the lawsuits are about, and why they are class action lawsuits.
- What the lawsuits claim and what the drug companies say about the claims.
- Who is affected by the lawsuits.
- Who represents the class in the lawsuits.
- What your legal rights and choices are.
- How and by when you need to act.

## 2.  What are these lawsuits about?

Plaintiffs allege Defendant drug companies either report the average wholesale price ("AWP") of each drug they make to trade publications or provide those publications with information from which the publications calculate an AWP for each of Defendants' drugs.  The published AWP of a drug may be used to set the price that consumers making percentage co-payments will pay for the drug.  The lawsuits claim that consumers making percentage co-payments paid more than they should have paid for the Covered Drugs because drug companies intentionally reported false and inflated AWPs concerning these drugs.

The Court in charge of the lawsuits is the United States District Court for the District of Massachusetts.  The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS.  The people who sued are called the Plaintiffs.  The drug companies they sued are called the Defendants.

The lawsuits include 42 Defendants.  At this time, the Court has certified a separate Class of people who made percentage co-payments in Massachusetts for Covered drugs manufactured by the Defendants listed below.  This Class is called the Private Payor Class.

- <u>AstraZeneca</u> (which includes AstraZeneca Pharmaceuticals L.P.),
- The <u>Bristol-Myers Squibb</u> Group (which includes: Bristol-Myers Squibb Co.; Oncology Therapeutics Network Corp.; and Apothecon, Inc.),

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-4-

- The <u>Johnson & Johnson</u> Group (which includes: Johnson & Johnson; Centocor, Inc.; Ortho Biotech Products, L.P), and

- The <u>Schering Plough</u> Group (which includes: the Schering-Plough Corporation; and Warrick Pharmaceuticals Corporation)

Whenever you see the word "Defendants" in this Notice, it includes only the companies listed above: AstraZeneca, Bristol-Myers Squibb Group, the Johnson & Johnson Group and the Schering Plough Group.

If you were covered under Medicare with respect to treatment involving any of these drugs and made co-payments in connection with such treatment, you are not part of this Class. You may be a member of a different Class of Medicare beneficiaries. To find out if you may be a member of this separate Class, call xxx-xxxx-xxxx or visit www.awplitigation.net.

**3.  Why are these class actions?**

In a class action lawsuit, one or more people called "class representatives" sue on behalf of people who have similar claims. The people together are a "class" or "class members." The court must determine if it will allow the lawsuit to proceed as a class action. If it does, a trial of the claims then decides the lawsuit for everyone in the class. The Court in this lawsuit certified a separate class of people who made percentage co-payments for drugs manufactured by each Defendant.

## THE CLAIMS IN THE LAWSUITS

**4.  What do the Plaintiffs claim?**

The Plaintiffs claim that the Defendants violated various state consumer protection laws because they intentionally provided false and inflated AWPs on certain types of outpatient drugs, including the Covered Drugs. The lawsuit also claims that the Defendants intentionally reported inflated AWPs with the knowledge that insurers, doctors and pharmacies rely on reported AWPs to determine the prices they will charge consumers for those drugs. The lawsuit says that as a result of the inflated AWPs, people who made percentage co-payments paid more than they should have. The lawsuit asks the Court to award money damages to those people.

**5.  What do the Defendants say about the claims?**

The Defendants deny the factual allegations being made; contend that the lawsuits and damages are precluded under the law; contend that the alleged conduct, if proved, does not violate the consumer protection laws, and that many class members will not be able to establish elements required by the consumer protection laws, or prove they paid a doctor for the subject drugs.

In addition, Bristol-Myers Squibb points out that it does not report AWPs; it reports list prices at which a substantial percentage of its sales are made. The Johnson & Johnson Group says that Plaintiffs did not calculate Johnson & Johnson's drug prices correctly and, when these errors are corrected, it is obvious that the published prices for Johnson & Johnson drugs were not inflated. The Johnson & Johnson Group points out that it did not give doctors discounts on the drug

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-5-

Remicade, and the small discounts it gave to doctors on the drug Procrit were disclosed.  The Johnson & Johnson Group says its drugs are less expensive than competing therapies, so Class Members who received Johnson & Johnson's products saved money. The Schering Plough Group states that its reporting practices are consistent with standard industry practice and that – at least with respect to its generic product - - reimbursement is almost never based on their AWPs.

### 6.  Has the Court decided who is right in the lawsuit?

No.  The Court hasn't decided who is right in the lawsuit yet. By deciding now that the lawsuit can continue as a class action, the Court isn't saying who will win.

# WHO ARE CLASS MEMBERS?

*To know if you're affected by this lawsuit, you first should determine if you're a member of the Class.*

### 7.  Am I a Member of the Private Payor Class?

You're a member of the Class and part of this lawsuit if you are a resident of Massachusetts, **and** between January 1, 1991 and January 30, 2006, you paid (or are currently obligated to pay) a <u>percentage co-payment</u> for any of the Covered Drugs (listed in Question 8) that were manufactured and marketed by the Defendants.   The Class and the drugs involved are as follows:

| Defendant Class | Subject Drug(s) |
|---|---|
| AstraZeneca Class | Zoladex (goserelin acetate) |
| Bristol-Myers Squibb Class | Blenoxane (bleomycin sulfate) <br> Cytoxan (cyclophosphamide) <br> Etopophos (etoposide phosphate) <br> Paraplatin (carboplatin) <br> Rubex (doxorubicin hcl) <br> Taxol (paclitaxel) <br> VePesid (etoposide) |
| Johnson & Johnson Class | Remicade (infliximab) <br> Procrit (epoetin alfa) |
| Schering Plough Class | Albuterol Sulfate <br> Intron A (interferon alfa) <br> Perphenazine <br> Proventil (albuterol) <br> Temodor (temozolomide) |

Stated in more detail, you are a member of the Class if you fulfill the criteria listed in either 1, 2, or 3 below.

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-6-

1.      You are in the Class if you: (a) made a percentage co-payment between January 1, 1991 and January 30, 2006, (b) received one or more of the Covered Drugs during that time period in Massachusetts, and (c) paid your doctor for one or more of the drugs.  You are not in the Class if you paid a flat amount such as $10 or $20 per dose or if you were fully reimbursed for your payment by a private insurer.

2.      You are in the Class if you are the legal heir of, or the legal successor to, the rights of a person who made a percentage co-payment who met all three criteria set forth in "1" immediately above but who is now deceased.  You need to consult your own lawyer to determine if you are the legal successor to any such rights.  Your lawyer will help you determine whether you qualify as a "legal heir" under state laws of intestacy, will, trust, or any other applicable law.

3.      You are a member of the Class if you: (a) made a percentage co-payment between January 1, 1991 and January 30, 2006, (b) received one or more of the Covered Drugs during that time period in Massachusetts, and (c) incurred a "legal obligation" to pay your doctor a percentage co-payment for one or more of the drugs but did not do so.  You may have incurred a "legal obligation" if (a) your doctor billed either you or your insurer for one or more of the drugs but neither you nor your insurer paid, or (b) if you did not pay because your doctor did not bill you, and (c) the time period for bringing a legal claim against you to enforce payment for one or more of the drugs has not already expired under the law.

If you were covered under Medicare with respect to treatment involving any of these drugs and made co-payments in connection with such treatment, you are not part of this Class.  You may be a member of a different Class of Medicare beneficiaries.  To find out if you may be a member of this separate Class, call xxx-xxxx-xxxx or visit www.awplitigation.net.

**IMPORTANT:**  *This is not a bill or a collection notice.  The Court is not suggesting, requesting or requiring that consumers who were billed for one or more of the aforementioned drugs but did not pay, or were not billed at all should pay their doctors now or that they are obligated to do so.*

You are also **not** part of the Class if:

(a) You were fully reimbursed for the co-payment you made (for example, a second private insurer reimbursed you the full amount); *or*

(b) Your co-payment was a flat amount instead of a percentage of the total charge (for example, your private insurer paid for all of the co-payment except for a flat amount such as $10 or $20 that you had to pay). If your co-payment is a set dollar amount and does not differ with the price of the drug, your co-payment is a flat co-payment and not a percentage co-payment and you are not a member of the Class.

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-7-

# WHAT ARE THE COVERED DRUGS?

**8.  How can I tell if the drug I took is included as a Covered Drug?**

Most, but not all, of the Covered Drugs are ones that a doctor administers to you in the form of an injection – either through a shot, an IV, or an implant beneath the skin.  A few are drugs that you take yourself, such as the pill forms of Cytoxan and VePesid – cancer therapy drugs.  Most of the Covered Drugs are used for the treatment of various types of leukemia and cancers of the breast, ovaries, cervix, prostrate, testes, lung, brain, and bone marrow.  Other Covered Drugs are used to treat nausea or anemia resulting from cancer therapy, asthma, migraines, heart problems, leukemia, herpes, psychoses, or rheumatoid arthritis.

The Covered Drugs, by Defendant, are listed below:

## AstraZeneca
*AstraZeneca, AstraZeneca Pharmaceuticals and AstraZeneca U.S.*

| Drug Name | Treatment | Dosages |
|---|---|---|
| **Zoladex (goserelin acetate)** | Prostrate and breast cancer; Endometriosis | Implant: 3.6mg Injection (3 month): 10.8mg Kit for injection: 10.8mg syringe;  3.6mg syringe |

## Bristol-Myers Squibb Group
*Bristol-Myers Squibb, Oncology Therapeutics Network and Apothecon*

| Drug Name | Treatment | Dosages |
|---|---|---|
| **Blenoxane (bleomycin sulfate)** | Cancer of cervix and uterus, head and neck, or testicle and penile cancer; Hodgkin's disease | Powder for Injection: 15 Unit Vial; 30 Unit Vial |
| **Cytoxan (cyclophosphamide)** | Cancer (primarily breast, ovarian); Leukemia; Nephrotic syndrome (kidney disease) | Injection: 100mg; 200 mg; 500mg; 1gm; 1x2gm; Lyophilized Injection: 100mg; 200mg; 500mg Powder for Injection: 500mg; 1gm; 2gm Tablets: 25mg; 50 mg |
| **Etopophos (etoposide phosphate)** | Lung and testicular cancer; Cancer of the lymph glands; Leukemia | Powder for Injection: 100mg |

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-8-

| Paraplatin (carboplatin) | Ovarian cancer | <u>Powder for Injection</u>: 50mg; 150mg; 450mg |
| **Rubex (doxorubicin hcl)** | Ovarian and breast cancer; Cancers of the bone, stomach, lung, bladder and thyroid; Leukemia | <u>Powder for Injection</u>: 10mg; 50mg; 100mg <u>Powder for Injection (Under Immunex label)</u>: 10mg; 50mg; 100mg |
| **Taxol (paclitaxel)** | Ovarian and breast cancer; Lung cancer; Kaposi's sarcoma | <u>Injection</u>: 30mg; 30mg/5ml; 300mg/50ml <u>Injection Solution</u>: 100mg; 100mg/16.7ml |
| **VePesid (etoposide)** | Testicular cancer; Small cell lung cancer | <u>Injection Solution</u>: 100mg; 150mg; 500mg; 1gm <u>Capsules</u>: 500mg |

## Johnson & Johnson Group
*Johnson & Johnson, Centocor, Ortho Biotech, McNeil-PPC and Janssen Pharmaceutica Products*

| **Drug Name** | **Treatment** | **Dosages** |
| --- | --- | --- |
| **Remicade (infliximab)** | Rheumatoid arthritis; Crohn's disease; Ulcerative colitis | <u>Intravenous Injection</u>: 100 mg vial |
| **Procit (epoetin alfa)** | Anemia (especially anemia due to chemotherapy or HIV) | <u>Solution for Injection</u>: 2,000 Unit/ml; 3,000 Unit/ml; 4,000 Unit/ml; 10,000 Unit/ml; 20,000 Unit/ml; 40,000 Unit/ml |

## Schering Plough Group
*Schering Plough and Warrick Pharmaceuticals*

| **Drug Name** | **Treatment** | **Dosages** |
| --- | --- | --- |
| **Albuterol Sulfate** | Asthma, chronic bronchitis, emphysema, and other lung diseases | <u>Inhalation Solution</u> <u>Sulfate Inhalation Solution</u> |
| **Intron A** | Melanoma, leukemia, hepatitis B and C, lymphoma, Kaposi's sarcoma | <u>Solution for Injection</u>: 10million, 18million, 30million, 60 million multidose pen; |

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-9-

| | | 3million, 5million, 10million, 18million, 25 million unit HSA-Free vials<br>Powder for Injection: 3million, 5million, 10million, 18million, 25 million, 50million unit vials |
|---|---|---|
| **Perphenazine** | Psychiatric disorders; Severe nausea and vomiting | Tablets: 2mg; 4mg; 8mg; 16mg |
| **Proventil** | Asthma, bronchitis, and emphysema. | Inhalation Solution: 5mg/ml; .83mg/ml |
| **Temodar** | Cancerous brain tumors | Capsules: 5mg; 20mg; 100mg; 250mg |

Please carefully review the list of Covered Drugs.  If your doctor gave you or prescribed one or more of these drugs in the listed forms and dosages during the time periods listed in Question 7 you might be a member of the Class.  To determine if you are a member of the Class please read Question 7.

## YOUR RIGHTS – GETTING OUT OF THE CLASS ACTION

### 9.  Can I get out of the lawsuit and the Class?

If you don't want to be in the Class and you want to keep the right to sue the Defendants about the same claims on your own, you must take steps to get out of the Class.  This is called excluding yourself.  By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against the Defendants about the claims in this lawsuit.  You may exclude yourself from the litigation against one or more Defendants and remain in the litigation against the other Defendants.  If you exclude yourself from the Class, you will not be bound by the results of the trial against Defendants.

### 10.  How do I exclude myself from the Class?

To exclude yourself from the Class, you can (a) fill out and mail the attached opt-out form or (b) send a letter signed by you that includes all of the following:

- Your name, address, and telephone number;
- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS;
- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*
- A statement that you want to be excluded from the Class, specifying whether you wish to exclude yourself from the litigation against all Defendants or just some of the Defendants.  If you wish to exclude yourself from the litigation against less than all Defendants you must specify which Defendants by name.

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

Your exclusion letter must be mailed first class, **postmarked on or before November 3, 2006,** to:

> AWP Litigation Administrator, c/o Complete Claim Solutions, LLC
> P.O. Box 24654
> West Palm Beach, FL 33416

Please remember that you can't exclude yourself by phone or by sending an email.

### 11.  What happens if I exclude myself from the lawsuit?

If you exclude yourself from the Class, you will not get money or benefits from the Class if any are obtained from a settlement or trial of the lawsuit involving the remaining Defendants.  If you exclude yourself, you're no longer part of the Class, and nothing that happens in the lawsuit affects you.  But you can sue or be part of a different lawsuit against the Defendants about the claims in this case.

If you do not exclude yourself, you will be bound by the results in the lawsuit.  Thus, if Defendants win, your claim will be extinguished.  Defendants claim that the persons and entities representing your interests do not have a valid claim, and if that is correct, your claim will be extinguished unless you exclude yourself.

## YOUR RIGHTS – APPEARING IN THE LAWSUIT

### 12.  Can I appear or speak in this lawsuit?

As long as you don't exclude yourself, you can (but do not have to) participate and speak for yourself in this lawsuit through your own lawyer.  This is called making an appearance.  Remember that you may have to pay for the lawyer yourself.  If you appear in the lawsuit, you are still a member of the Class and can share in any benefits the Class might receive as a result of settlement or a trial.

### 13.  How do I appear in this lawsuit?

If you want your own lawyer instead of Class Counsel to participate or speak for you in this lawsuit, your lawyer must give the Court a paper that is called a Notice of Appearance.  The Notice of Appearance should include the name and number of the lawsuit, and state that you wish to enter an appearance in the lawsuit.

The Notice of Appearance must be filed with the Court at the following address:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

The Notice of Appearance must be filed using the following Civil Action Number:

> 01-CV-12257-PBS

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

Your Notice of Appearance should be filed with the Court before the beginning of the trial of each Defendant in this lawsuit. The trial will begin November 6, 2006.

# IF YOU DO NOTHING

### 14.  What happens if I don't do anything at all?

If you do nothing, you stay in the Class.  As a member of the Class, you will be bound by the results of the trial, whether those results are favorable or unfavorable to the Class, and you will not be able to sue any Defendant(s) on your own.  Depending on the outcome of the Class trial or trials or other rulings by the Court, in the future Class Members may be asked to provide information regarding the drugs they paid for in order to claim a portion of any class recovery.  You will receive further instructions at that time explaining what information you are required to furnish and where and when to send it if there is a recovery or settlement.  There is no recovery or settlement at this time.

# THE LAWYERS REPRESENTING YOU

### 15.  Do I have a lawyer in this lawsuit?

Yes.   The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hagens-berman.com
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
    *and*
One Main Street, 4th Floor
Cambridge, MA 02142

Mark H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman & Kodroff, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Toriseva Wallace LLP
www.wtwlaw.us
One North LaSalle St., Suite 2000
Chicago, IL 60602

Haviland Law Firm LLC
www.havilandlaw.com
740 South 3rd St., 3rd. Floor
Philadelphia, PA 19147

These lawyers are called Class Counsel.  You won't be charged personally for these lawyers, but they will ask the Court to award them a fee to be paid out of any recovery.  More information about Class Counsel and their experience is available at the Web sites listed above.

### 16.  Can you elaborate on who pays the lawyers and how much will they be paid?

If Class Counsel obtains money or benefits for the Class through a settlement or a successful trial, they will ask the Court for payment of attorneys' fees and expenses out of the total amount of money and benefits obtained.  The Court must approve the amount of attorneys' fees and

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-12-

expenses.  If Class Counsel doesn't obtain any money or benefits for the Class, they won't receive or ask to receive any attorneys' fees or reimbursement of expenses.

**17.  Should I get my own lawyer?**

You don't need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (*see* Questions 12 and 13 to find out how to submit a Notice of Appearance).  If you hire a lawyer to appear for you in the lawsuit, you will have to make your own arrangement for that lawyer's compensation.

## GETTING MORE INFORMATION

**18.  Are more details and information available?**

This Notice is just a summary of the lawsuit. More details are in the Complaint filed by Class Counsel, and the other legal documents that have been filed with the Court in this lawsuit.   You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210.  Copies of some of the important documents, like the Complaint are also available on-line at www.AWPlitigation.net.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the AWP Litigation Web site at www.AWPitigation.net
- Call toll free 1-800-419-5391 (For the deaf and hard-of-hearing utilizing a TDD/TTY, please call 1-8XX-XXX-XXXX)
- Write to: AWP Litigation Administrator, c/o Complete Claim Solutions, LLC, P.O. Box 24654, West Palm Beach, FL 33416.

**19.  How will I be notified about the outcome of the trial?**

Information about the trial will be posted on the Web site as appropriate.  You may also register on the Web site or by mail to get notification of the outcome of the litigation and other significant occurrences associated with this case.  To register by mail send a letter to the AWP Litigation Administrator at the address above.  To register on the Web site, go to the site and access the "Registration" link on the Web site menu.

*By Order of the United States District Court, District of Massachusetts.*

Date: _____          _____
                                                            The Honorable Judge Patti B. Saris

*Questions? Call toll free 1-800-419-5391, or visit www.AWPlitigation.net.*

-13-

# EXHIBIT 2

# If You Made a Percentage Co-Payment for any of the Drugs Listed Below or You are the Heir to Someone Who Has,

## Class Action Lawsuits May Affect Your Rights

**Albuterol Sulfate**
**Blenoxane** *(bleomycin sulfate)*
**Cytoxan** *(cyclophosphamide)*
**Etopophos** *(etoposide phosphate)*
**Intron A** *(interferon alfa)*

**Paraplatin** *(carboplatin)*
**Perphenazine**
**Procrit** *(epoetin alfa)*
**Proventil** *(albuterol)*
**Remicade** *(infliximab)*

**Rubex** *(doxorubicin hcl)*
**Taxol** *(paclitaxel)*
**Temodor** *(temozolomide)*
**VePesid** *(etoposide)*
**Zoladex** *(goserelin acetate)*

There are class action lawsuits pending in the U.S. District Court for the District of Massachusetts. The lawsuits are called *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS.

The lawsuits claim that certain drug companies intentionally reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. The reported AWPs may be used to set the price that consumers making percentage co-payments will pay for the drugs. The lawsuits claim consumers making percentage co-payments paid more than they should have because of the false and inflated AWPs. The lawsuits ask the Court to award money damages to people that made percentage co-payments for the drugs in Massachusetts.

The Court has determined that the case can go forward as a class action but has not made a decision on the merit of the claims. A trial will determine the claims against each Defendant. The trial will begin November 6, 2006.

**What Drugs are Covered by the Litigation?**
Certain dosages of the drugs listed above made by the Defendants **AstraZeneca, Bristol-Myers Squibb Group, Johnson & Johnson Group and the Schering Plough Group** are part of the lawsuit ("Covered Drugs"). For a list of the dosages, by drug, visit the Web site or call or write as indicated below.

**What do the Defendants say about the lawsuits?**
The Defendants say they didn't do anything wrong. Defendants deny that they are responsible for any of the claims made in the lawsuit and will vigorously defend against these claims. The Defendants deny the factual allegations being made. The Defendants also contend that the lawsuits and damages are precluded under the law and that the alleged conduct, if proved, does not violate consumer protection laws. Defendants also argue that many Class Members will not be able to prove they paid a doctor for the subject drugs.

**Am I Involved in the Litigation?**
• You are a member of the Private Payor Class if you made a percentage co-payment for a Covered Drug between January 1, 1991 to January 30, 2006. If you are an heir or legal successor to the rights of someone who made such a co-payment, you are also included in the Class.
• You are excluded from the Class if you made flat co-payments (a co-payment that does not differ with the cost of the drug), or you were reimbursed for co-payments or have the right to be reimbursed.
• If you made a Medicare Part B co-payment for any of these drugs, you are not a member of this Class. You may be a member of a different Class and will be notified separately. For more information, call 1-000-000-0000 or visit www.AWPLitigation.net.
*The Court is <u>not</u> suggesting, requesting, or requiring that consumers who were not billed a percentage co-payment by their doctors, or who were billed but did not pay, should pay their doctors now or that they are obligated to do so.*

**What Are My Rights as a Member of the Private Payor Class?**
• **If you wish to remain a member of the Private Payor Class**, you don't need to do anything at this time. If you don't exclude yourself, you'll be bound by whatever happens in the lawsuit, and you won't be able to sue the Defendants on your own about the claims in the lawsuit. Court-appointed Counsel will represent all members of the Class and will ask the Court to pay their fees and expenses out of any recovery they achieve for the Class. You may also hire your own attorney at your own cost to speak or appear on your behalf.
• **If you wish not to participate in the Class**, you must mail a personally signed, written request to be excluded to the address below. A mail-in opt-out form is available at www.xxxxxxxxxx.com. You may also request to be excluded from the lawsuit against one or more Defendants and remain in the litigation against the other Defendants. The request must be postmarked by **November 3, 2006**. If you exclude yourself from the Class, the lawsuits will not affect you. This means that you will not share in any recovery, if there is one, but you can sue the Defendants about the same claims.

**For a Detailed Notice about the Covered Drugs and AWP Litigation**
**Call toll-free: 1 XXX-XXX-XXXX (Se Habla Español)**
**or Visit: www.xxxxxxxxxxxxxxx.com**
**Or Write: AWP Class Action Litigation, P.O. Box XXX, City, State 00000**

EXHIBIT 3

## AWP Massacusetts Media Schedules
### September 28, 2006

| PUBLICATION (ISSUE DATE) | October | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| **Newspapers** | | | | | | | | | | | | | | | | | | | | |
| Sunday | ■ | | | | | | | ■ | | | | | | | ■ | | | | | |
| Weekday | | | | ■ | | | | | | ■ | | ■ | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |
| Hispanic Newspapers | | | | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |

**The solid colored boxes represent the on-sale/mail date for each publication.**
**Exact dates for daily newspapers are approximate.**