## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S OPPOSITION TO
## UNITED STATES' AND RELATORS' MOTION FOR A PROTECTIVE ORDER

The MDL 1456 Protective Order (Dkt. No. 276) has been in effect (virtually without

incident) for nearly four years, and applies to all cases in the MDL.  (*Id.* ¶ 1.)  The Government

nonetheless contends that it needs modifications to the MDL 1456 Protective Order to account

for its "unique" status.  Whatever the merits of that claim, Abbott worked in good faith with

Plaintiffs to make the few changes the Government said it needed, so that the parties could

present the Court with an Order that preserved the structure of the MDL 1456 Protective Order

while accommodating the Government.  As even the instant *United States' And Relators' Motion*

*For A Protective Order* ("Motion") recites, the parties "had come close to agreed-upon

provisions" that satisfied the Government's concerns.  (Motion at 3 n.2.; *see also* Ex. B

(Abbott's last proposal on amending the MDL 1456 Protective Order, blacklined from the MDL

1456 Protective Order, and largely agreeing to the Government's requested changes); Ex. C

(Government states in follow-up correspondence that "we are getting much closer to reaching

agreement on many provisions.").)

Now, however, the Government has determined to jettison these negotiations (and the

MDL 1456 Protective Order) in their entirety, and ask that this Court enter a brand new and

entirely different order, applicable only to actions in which the Government is a party.  But Plaintiffs' Motion, and the proposed order it asks the Court to enter, rest on blatant mischaracterization of the law of protective orders in civil discovery.  Through those mischaracterizations, Plaintiffs attempt to (1) end-run the procedures established in the MDL to challenge confidentiality designations, and (2) impose a series of one-sided provisions calculated to make it harder for Abbott (and later defendants, if the Government ever unseals as to them) to litigate this matter.  The remainder of the motion seeks provisions that could easily be achieved through amending the MDL 1456 Protective Order (which Abbott has already agreed to do), rather than simply throwing it out with the bath water.

Worse, although Plaintiffs assert that entering a brand new protective order at this late date would promote "efficiency and . . . minimize confusion that may result from entering . . . amendments to the current Protective Order" (Motion at 1 n.1), their proposed order would engender the opposite.  In fact, it threatens to throw the entire MDL discovery process, which has proceeded under the MDL 1456 Protective Order for nearly four years, into chaos – by, among other things, creating different rules and standards that apply to only some, but not all, cases in the MDL.

At bottom, Plaintiffs' attempt to secure a "special" protective order, applicable only to cases in the MDL where the Government is a party, is simply wrong-headed and unnecessary. The Government is a civil litigant like any other in this case; nothing has changed by the mere fact that the Government has belatedly elected to unseal as to Abbott.  And as the parties' negotiations confirmed (before they were abruptly cut off), the MDL 1456 Protective Order can be modified to address any legitimate concerns the Government has.  The modified MDL 1456 Protective Order proposed by Abbott, and attached hereto as Ex. A, should be entered for this case.

## ARGUMENT

**I.    PLAINTIFFS' NEW PROPOSED PROTECTIVE ORDER IS PREMISED ON A MISCHARACTERIZATION OF THE LAW.**

**A.    There Is No Need To Change The Definition Of "Confidential" Under Which The MDL 1456 Parties Have Operated For Nearly Four Years.**

**1.    Unlike Filed Documents, Civil Discovery Materials Covered By A Protective Order Are Not (Contrary To What The Government Asserts) Presumptively Public.**

Plaintiffs' Motion begins with a flagrant misstatement of the law of protective orders in civil actions.  Plaintiffs string cite a series of cases for the proposition that civil discovery is presumptively public.  (*See* Motion at 4.)  That is not how the Supreme Court (or any other federal court) sees it.  *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial . . . and, in general, they are conducted in private as a matter of modern practice . . . .  Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").  Rather, when considering whether litigation materials should be public or not,

> the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).

Certainly, documents on which a district court relies in *rendering judgment* tend to be more susceptible to public disclosure.  *See id.* at 1049-50.  In contrast, "[d]ocuments that play no role in the performance of Article III functions, *such as those passed between the parties in discovery*, lie entirely beyond the presumption's reach, and stand on a different footing than a . . . document which is presented to the court to invoke its powers or affect its decisions."  *Id.*

(emphasis added) (internal citations and quotations omitted); *see also Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("Portions of discovery may be conducted in private to expedite disclosure.  Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court.  But most portions of discovery that are filed and form the basis of judicial action must eventually be released, and it should go without saying that the judge's opinions and orders belong in the public domain.") (citations omitted).  As the First Circuit has explained, the reason for this distinction is obvious:

> [I]t must be recognized that an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power.  The relevance or reliability of a statement or document cannot be determined until heard or read by counsel, and, if necessary, by the court or other judicial officer.  As a result, the temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material.  Unlimited access to every item turned up in the course of litigation would be unthinkable.  Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information.

*In re Boston Herald, Inc*., 321 F.3d 174, 194 (1st Cir. 2003) (quoting *Amodeo*, 71 F.3d at 1048-49); *see also Seattle Times*, 467 U.S. at 33 (noting that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action").

Even Plaintiffs' own authorities – even as selectively quoted and elided in Plaintiffs' brief – do not support their claim that civil discovery is presumptively public.  In *Lugosch v. Pyramid Co. of Onondang*a, 435 F.3d 110, 119 (2d Cir. 2006), directly following the language Plaintiffs quote about the "right of public access to judicial documents [being] firmly rooted in our nation's history," the court explained that "[b]efore any such common law right can attach," a document must (1) be a judicial document, (2) be analyzed on the *Amodeo* continuum, and (3) even if it passes those tests, must also be subjected to the balancing of competing interests.  *Id*. at

119-120.  Plaintiffs' Motion regrettably omits that explanation.  Similarly, in *San Jose Mercury News v. U.S. District Court*, 187 F.3d 1096, 1102-03 (9th Cir. 1999), the first bit of quoted language in Plaintiffs' brief about the "federal common-law right of [public] access" is directed to "pretrial documents *filed* in civil cases" with a court (emphasis added); Plaintiffs' ellipses mask the fact that, by the time the court reached the second portion Plaintiffs quote (about presumptive public access to documents), it was discussing an entirely new issue.  And, while Plaintiffs neglect to mention it, *Krynicki and Lopahic v. Falk II*, 983 F. 2d 74 (7th Cir. 1992) dealt with the sealing of appellate briefs, which again, are documents filed with a court.  That, of course, is not what this Motion is about.[1]  Thus, contrary to Plaintiffs' assertions, Abbott's private discovery materials in this civil case are *not* presumptively public.

> **2.      Plaintiffs Are Trying To Limit The Scope Of Protected Materials Far Beyond What The Law Permits.**

Starting from their flawed view of civil discovery, Plaintiffs next attempt to narrow the definition of "confidential" documents protected from disclosure by the MDL 1456 Protective Order.  Plaintiffs first suggest that a protective order should apply only to those kinds of information set out in Federal Rule of Civil Procedure 26(c)(7), including "trade secret[s] or other confidential research, development, or commercial information."  They are wrong; the law goes further.  *See, e.g.*, *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999) ("There is no objection to an order that allows the parties to keep their trade secrets (*or some other properly demarcated category of legitimately confidential*

---

[1] Plaintiffs' bald assertion that "[t]he presumption in favor of open proceedings is all the more compelling in this case, where the United States is seeking recovery of public funds" (Motion at 5) is bogus.  Merely asserting that the Government is somehow special, even repeatedly, does not make it legally so.  Indeed, there is no authority suggesting that the Government has any kind of "special" status when it comes to civil discovery in this matter.

*information*) out of the public record); *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003) ("Personal financial information . . . is universally presumed to be private, not public.").

This Court recognized as much when it entered the MDL 1456 Protective Order, which protects as "confidential" three categories of information:  (a) "proprietary or other commercially sensitive information"; (b) "personal financial information"; (c) "information that should otherwise be subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure".  (Dkt. No. 276 ¶ 3; Ex. A ¶ 3.)  Each of these categories is a proper category for discovery protection.  Surely, the Court would not have entered the MDL 1456 Protective Order if it thought it did not comply with the law – but that is essentially what Plaintiffs are now arguing, years after the fact.

Plaintiffs also ask the Court to define "trade secret," *a priori* and for all discovery in this case, as being limited to the definition found in the Uniform Trade Secrets Act.  Plaintiffs argue that the definition is necessary because, otherwise, the terms of Rule 26(c)(7) and the Protective Order "are left to a defendant's unilateral interpretation . . . ."  (Motion at 6.)  But that is transparently false.  The MDL 1456 Protective Order itself provides a process for Plaintiffs to challenge, and the Court to decide, the applicability of those terms to a given document or documents.  (Ex. A ¶ 19; Dkt. No. 276 ¶ 17.)  Nor does adding a definition of "trade secret" help this particular problem, because each party remains, even under Plaintiffs' proposed protective order, free "unilaterally" to interpret that provision – which is, perhaps, why even Plaintiffs' order provides for a challenge process.  (Motion Ex. 1 ¶ 15.)

Finally, Plaintiffs point specifically to the "Highly Confidential" subset of "Confidential" material in the MDL 1456 Protective Order, complaining that such items as current and past (to the extent they reflect on current) "methods, procedures, and processes relating to the pricing of pharmaceuticals . . . marketing plans and methods . . . business planning and information" and

"past or current company personnel or employee information" are "[o]n their face . . . overly broad under Federal Rule 26(c)(7)" – and apparently, according to Plaintiffs, under their proposed definition of trade secrets.  The complaint is interesting, since Plaintiffs' proposed order would do away with the "highly confidential" designation entirely, further confusing matters in this MDL.  Moreover, Plaintiffs cite no law to support their complaint, and worse, they fail to point the Court to extensive law to the contrary.  *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414-15 (S.D. Ind. 2001) (holding, by reference to the Uniform Trade Secrets Act, that "customer lists and pricing information," as well as "research and data compiled by Plaintiffs," are protected trade secrets); *Cason v. Builders FirstSource-Southeast Group, Inc*., 159 F.Supp.2d 242, 247 (W.D.N.C. 2001) (finding there is a strong public interest against public disclosure of personnel files); *United States v. Dentsply Int'l, Inc*., 187 F.R.D. 152, 159 n.6 (D. Del. 1999) (affording protection to corporate strategies, sales plans, and pricing information); *Cumberland Packing Corp. v. Monsanto Co*., 184 F.R.D. 504, 506 (E.D.N.Y. 1999) ("Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like.").[2]

Thus, this Court's definition of "confidential" (and "highly confidential," for that matter) in the MDL 1456 Protective Order is legally correct, and Plaintiffs have not remotely provided a basis to suggest otherwise.

---

[2] Plaintiffs also misleadingly cite *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 290 (D. Del. 1985), a case where the Court had to determine whether the Coca-Cola formula should be protected, for the proposition that "[n]othing is sacred in civil litigation." They neglect to mention that the Court held the formula to be a protectable trade secret and ordered that, while the claims in the suit required that the formula be disclosed to a *litigating opponent* (which is not what this Motion is about), *extra stringent* measures should be taken, beyond the typical civil protective order entered in the case, to prevent its disclosure to *third parties* (which is what this Motion is about).  *See id.* at 300 ("[A] more stringent protective order than the one currently in effect is warranted to prevent public disclosure of the formulae.").

###### 3.    Plaintiffs' New Definition Of "Confidential," Applicable Only In This Case, Would Cause Confusion And Lead To Inefficiencies.

Finally, there are strong practical reasons to leave the definition of "confidential" the same for all MDL 1456 cases.  Whether Plaintiffs like it or not, their case is now part of MDL 1456.  The MDL has operated for nearly four years under the MDL 1456 Protective Order with minimal issues.  If the definition of "confidential" were to be narrowed for just this case (or worse, if Plaintiffs finally unseal as to other defendants already in the MDL, the subset of all cases that involve the Government), it would create massive confusion.  Plaintiffs have not even attempted to explain why documents should be Confidential for some parts of the MDL and not for others, nor could they.

If Plaintiffs are really concerned about whether documents already produced in this MDL have been properly designated confidential, and whether they should remain so for purposes of this case, there are procedures in the MDL 1456 Protective Order to deal with that.  (Ex. A ¶ 19.)  But, despite their professed objections to some of Abbott's confidentiality designations thus far (Motion at 6-7), Plaintiffs have not used the available mechanisms in the MDL 1456 Protective Order to bring the matter before the Court for a ruling.  They are instead content merely to allege wrongdoing, studiously avoiding even attaching any of the documents complained of (*see id.* at 7 & n.4), and apparently hoping the Court will simply believe them (and rule in their favor on an issue they have not even properly placed before the Court) without more.  Plaintiffs should not be rewarded for such behavior.

In sum, then, Plaintiffs have offered no valid reason to deviate from the definition of confidential material set forth in the MDL 1456 Protective Order, and there is none.

**B.     Plaintiffs Have No Right To Hand Over Abbott's Private Documents To States Or Other Persons Or Entities That Are Not Parties To This Litigation.**

Plaintiffs also proclaim that they ought to be permitted to obtain Abbott's private documents, then share them with whatever State officials (and agents and private counsel) they want, for any reason or no reason at all.  (Motion at 7-10; *id.* Ex. 1 ¶ 13(j)(1).)  Plaintiffs cite no federal authority on the subject – only a series of state cases, in most of which the parties simply agreed to such sharing.  The argument is as illogical as it is unsupported.  A protective order, like the name suggests, is designed to *protect* discovery exchanged between litigating parties from being disclosed to third parties.  Free sharing of information with non-parties to this case, including States (and their agents and even private counsel, *see* Motion Ex. 1 ¶ 13(j)(1)) as Plaintiffs seek to do, would thwart that purpose.

Typically, parties in collateral litigation seeking access to discovery materials here would have to seek leave to enter this Court's protective order – and there is no reason to believe litigating States would be granted such access.  *See* Manual for Complex Litig. § 11.432 (4th ed. 2004) (noting that "If a party freely disclosed information without contest based on the premise that it would remain confidential, subsequent dissemination may be unfair and may, in the long run, reduce other litigants' confidence in protective order, rendering them less useful as a tool for preventing discovery abuse and encouraging more strenuous objections to discovery requests."). *First*, they would have to show that the materials from this case were relevant to their own case. *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1132 (9th Cir. 2003).  *Second*, they would have to satisfy this Court that discovery would appropriate in the collateral case, lest this Court be used as an end-run around another court's orders.  *See id*. at 1132 ("[A] court should not grant a collateral litigant's request for such modification automatically.  As an initial matter, the collateral litigant must demonstrate the relevance of the protected discovery to the collateral

proceedings and its general discoverability therein.  Requiring a showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding."). *Third*, they would then have to satisfy the courts in which they were litigating that the discovery they sought was appropriate.  *Id.* at 1133 ("Even if the issuing court modifies the protective order, it does not decide whether the collateral litigants will ultimately obtain the discovery materials. . . .  "[O]nce the district court has modified its protective order, it must refrain from embroiling itself in the specific discovery disputes applicable only to the collateral suits.").

Plaintiffs offer no authority to jettison this careful procedure in favor of sharing Abbott's private documents, willy nilly, with Abbott's opponents.  Plaintiffs have not secured the right, simply by filing this lawsuit, to share Abbott's private documents – for whatever cause, or no cause at all – just because they think doing so would be nice.  Nor have States earned the right to use Plaintiffs as their discovery foil in this case, to obtain information for other cases.  The "sharing" provision (Motion Ex. 1 ¶ 13(j)(1)) should not be allowed.

**C.    Plaintiffs' Efforts To Provide Broad Access To Outside Counsel And Government Employees Not Working On This Case Are Equally Unsupported.**

Plaintiffs' proposed protective order would also provide broad access to Abbott's documents to others who have no legitimate need for them – though their motion does not even try to defend these points.  For example, paragraph 13(c) wrongly seeks to share Abbott's private documents with lawyers who are not even counsel of record for a party in this litigation. Similarly, paragraph 13(k) would allow sharing of Abbott's documents with Government employees not even working on this case, so long as they are working on "investigations or litigation of issues similar to this action," whatever that means.  These provisions are wholly unsupported and entirely inappropriate.

**D.    Plaintiffs' Proposal For Documents Produced In Other Cases Makes No Sense, And Would Eviscerate Other Courts' Protective Orders.**

Finally, Plaintiffs also seek to incorporate a provision in their proposed protective order that would nullify various state-court protective orders.  The provision decrees that "DOCUMENTS that a party has produced in another investigation that are required to be produced in this action need not be re-produced if the DOCUMENTS have already been provided to the opposing parties in this case, and if the parties so agree that a re-production is unnecessary."  (Motion Ex. 1 ¶ 2.)  But the condition for this decree is that such documents "shall be deemed to be produced under the terms of this Order *and shall not be governed by a Protective Order entered in any other action*."  (*Id.*)  This is improper.  Plaintiffs do not have the power to excuse their own compliance with protective orders issued by other courts in other cases.  Nor do Plaintiffs cite a single authority stating that they do.  (*See* Motion at 12.)  Simply complaining that other court's protective orders "are frequently overly restrictive" (*id.*) does not excuse compliance with those orders; again, the Government, as a civil litigant, is no different than any other.

**II.    TO THE EXTENT THE GOVERNMENT'S INVOLVEMENT IN MDL 1456 ACTUALLY GIVES RISE TO "UNIQUE CONCERNS," ABBOTT'S PROPOSED MODIFICATIONS TO THE MDL 1456 PROTECTIVE ORDER ACCOMMODATE THOSE CONCERNS.**

The only provisions that really deal with alleged "special circumstances" of the Government are found in paragraphs 16-18 of the Plaintiffs' proposed order.  (*See* Motion at 10 (describing these provisions as addressing "unique obligations and concerns" of the "United States" which Plaintiffs assert "must be addressed").)  There, Plaintiffs seek to protect their right to share Abbott's documents with U.S. agencies, Congress, and third parties.  The provisions Plaintiffs propose, however, are (1) unilateral (applying only to the United States) and (2) wildly

overbroad.  (*E.g.*, Motion Ex. 1 ¶ 16 (Protective Order may not "*prevent* or in *any way limit* or *impair* the *right* of the *United States* to disclose" documents to government agencies).)

Abbott does not disagree that *all parties* should be able to comply with legal obligations to provide documents to U.S. Government agencies when faced with a valid request, produce documents to the Congress when faced with a valid request, and provide information to third parties.  Plaintiffs' concerns as to third-party sharing are, however, adequately addressed by MDL 1456 Protective Order ¶ 9.  And the remaining concerns (U.S. agencies and Congress) would be alleviated by language Abbott proposed by way of amendments to the MDL 1456 Protective Order – which would apply to both Plaintiffs *and* Defendants, and are no broader than needed.  (*See* Ex. A. ¶¶ 10-11.)  In addition, when a designating party's private documents are to be shared in one of these ways, the party has the right to know of the sharing; a designating party should not have to rely solely on a litigating opponent to protect the designating party's rights.  Abbott's revisions made such provision, while Plaintiffs' new provisions do not.

Thus, to the extent Plaintiffs' motion involves actual Government concerns (as opposed to overreaching based on misstatements of law), the parties' negotiations had already addressed those concerns.  There is simply no reason to enter a whole new, separate protective order here.

## CONCLUSION

The Motion should be denied, and discovery should proceed in this case – as in all others consolidated in this MDL – under the MDL 1456 Protective Order, as amended and attached hereto as Ex. A.

Dated:  September 29, 2006

Respectfully submitted,

/s/ Brian J. Murray
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

     I, Brian J. Murray, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S OPPOSITION TO UNITED STATES' AND RELATORS' MOTION FOR A PROTECTIVE ORDER to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 29th day of September, 2006.


                        /s/ Brian J. Murray
                        Brian J. Murray