UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
IN RE PHARMACEUTICAL INDUSTRY           )   MDL NO. 1456
AVERAGE WHOLESALE PRICE                 )
LITIGATION                              )   CIVIL ACTION NO. 01-CV-12257-PBS
_____ )
                                        )   Hon. Patti B. Saris
THIS DOCUMENT RELATES TO                )
ALL ACTIONS                             )
                                        )
_____ )

**TRACK 1 DEFENDANTS' MEMORANDUM OF LAW REGARDING FORMS
AND MANNER OF NOTICE FOR CLASS 3 CONSUMERS**

Plaintiffs have filed a suggested notice plan for Class 3 consumers.  Their message to the Court is that the only feasible plan is a publication plan, no actual notice, with an extremely short opt out period.  While Defendants have worked with Plaintiffs on the text of the notices and have no objection to the language, Defendants strongly oppose Plaintiffs' suggested notice plan.  Simply, it is not satisfactory under Federal Rule of Civil Procedure 23.  Below we explain why.

**PRELIMINARY STATEMENT**

Plaintiffs' proposal for providing notice pursuant to Federal Rule of Civil Procedure 23 to Class 3 consumers is, in the immortal words (even in Red Sox nation) of Yogi Berra, "deja vu all over again."  Once again, Plaintiffs attempt to cobble together a notice program at the eleventh hour.  It has been well over a year since the class certification order, and four months since this Court exhibited great frustration with Plaintiffs' failure to exert any real effort to identify the names of absent class members.  This Court ultimately required Plaintiffs to satisfy the mandates of the Due Process Clause by obtaining the names of Class 1 members from the Centers for Medicare and Medicaid Services.  Despite all of this, Plaintiffs again tell this Court that time

constraints make publication notice the only feasible plan for notifying Class 3 consumers prior to the start of the November 6 trial.

When evaluated according to the requirements of Rule 23 and Due Process, rather than the exigency manufactured by Plaintiffs' own dilatoriness and failure to take seriously the requirements of Rule 23 and this Court's prior admonitions, Plaintiffs' proposed publication notice plan for Class 3 consumers is simply unacceptable.  As this Court is well aware, actual notice to class members is required when names and addresses can be obtained.  Plaintiffs concede that names and addresses of Class 3 consumers are overwhelmingly ascertainable, but that it might take several weeks to acquire them.  As an alternative, Plaintiffs suggest that Class 3 consumers should be notified via publication and given only two weeks to opt out.  This plan is plainly insufficient and suffers from many of the same constitutional defects that doomed Plaintiffs' original notice plan for Class 1.  Furthermore, the extreme brevity of the opt-out period virtually obliterates an individual's right to opt out of the class.

We all have already "been there, done that" on this issue.  Simply put, Plaintiffs' "it'll take time" excuse is of no moment, and there certainly is no record on which this Court can conclude that providing actual notice to Class 3 consumers is not feasible.  In the end, Plaintiffs have again put the Court in a difficult position.  The solution, however, is not to jettison Rule 23 and the constitutional requirements for proper notice.

**ARGUMENT**

I. **THE CONSTITUTION REQUIRES NOTICE BY DIRECT MAIL TO CONSUMERS IN CLASS 3**

   A. **When the names and addresses of class members can be ascertained through reasonable efforts, the Constitution requires notice by direct mail.**

As this Court is well aware, the United States Constitution requires that absent class members receive the best notice practicable in order to protect their due process rights. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173, 176 (1974). Under well-established Supreme Court precedent, this means that the Court must use actual, individual notice whenever class members' names and last known addresses can be obtained. See e.g., id. at 173, 176 (describing requirement that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort" as an "unambiguous requirement" of Federal Rule of Civil Procedure 23(c)(2)); In re Nissan Motor Corporation Antitrust Litigation, 552 F.2d 1088 (5th Cir. 1977) (same); 3 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 8:3, 171 (4th ed. 2005) (noting that when names and addresses of class members are known, "individual notice is clearly the best notice practicable within the meaning of Rule 23(c)(2) and prior Supreme Court precedent.").

Neither time nor financial constraints will excuse Plaintiffs from fulfilling this constitutional mandate. Eisen, 417 U.S. at 176 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs."); see also Mullane, 339 U.S at 318 ("Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding

are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."); In re Nissan, 552 F.2d at 1100 ("While the mechanical process of examining the cards may prove to be expensive and time-consuming, the individual right of absentee class members to due process makes the cost and effort reasonable.").

Moreover, when a source exists from which the actual names of absentee class members can be obtained, courts require substantial effort to gather them. See Eisen, 417 U.S. at 175 (reasonable effort required plaintiffs to gather 2,250,000 names and addresses by comparing several million computerized records and to provide actual notice by mail to each class member so identified); In re Nissan, 552 F.2d at 1098-1100 (manual search by plaintiff for identifiable class members through 1,700,000 cards listing names and addresses of purchasers of new motor vehicles, while expensive and time-consuming, is within range of "reasonable effort" required by Eisen). In fact, if the information necessary to identify absent class members is possessed by third parties, a plaintiff must seek the information either by consent or, if necessary, subpoena duces tecum. In re Visa Check/ Mastermoney Antitrust Litig., No. CV-96-5238, 2002 U.S. Dist. LEXIS 23327, at *6-7 (E.D.N.Y. June 21, 2002) (district court directed plaintiffs to subpoena 81 financial institutions in attempt to obtain names and addresses of additional class members); Pickett v. IBP, Inc., No. 96-A-1103-N, 2001 U.S. Dist. LEXIS 22453 (M.D. Ala. Dec. 21, 2001) (court-ordered notice plan directed plaintiffs to subpoena information from third parties who did not cooperate); R.K. Peil v. National Semiconductor Corp., No. 77-4244, 1986 U.S. Dist. LEXIS 19014, at *18  (E.D. Pa. Oct. 16, 1998) (district court stated that if any third parties are "unwilling to identify or notify beneficial purchasers for purposes of this class action, plaintiff shall issue subpoena duces tecum to recalcitrant nominees.").

### B.     Plaintiffs represent that direct notice could be accomplished in 10 weeks.

Plaintiffs represent that the names and last known addresses of a large majority of Class 3 consumer members are readily available. According to Plaintiffs, the five largest insurers in the Commonwealth of Massachusetts insure approximately 87% of the "covered lives" in Massachusetts.[1] (Pls.' Class 3 Notice Memorandum at 3). Plaintiffs have contacted Blue Cross Blue Shield of Massachusetts ("BCBSMA"), which represents almost 50% of the "covered lives," and determined that BCBSMA can provide names and last known addresses of its class members in approximately four weeks. (Id. at 4). At that point, it will take Plaintiffs' notice vendor, Complete Claims Solutions, Inc., approximately two additional weeks to send the notice to its intended recipients. (Id.). Factoring in a period of time for negotiation and coordination with the remaining four major Massachusetts insurers,[2] Plaintiffs estimate that notice by mail to absent Class 3 consumers could be completed in a total of 10 weeks. (Id. at 5).

Given the relative ease with which notice by mail can be accomplished in this case, there is absolutely no justification for Plaintiffs' failure to do so. In fact, it would be a clear violation of the due process rights of absent class members for this Court to adjudicate their claims without providing the "best notice practicable" under the circumstances.[3] FED. R. CIV. P. 23(c)(2)(B); see Eisen, 417 U.S. 156.

---

[1] Plaintiffs cite the AIS Database from 2004. (Pls.' Class 3 Notice Memorandum at 3). While Plaintiffs represent that the five largest insurers cover 87% of the covered lives, they do not specify whether that percentage is calculated based upon the entire class period, or only represents the covered lives in 2004. Defendants note that, to the extent Plaintiffs' figures do not span the entire class period, they should be revised in accordance with Plaintiffs' obligation to exert reasonable efforts to identify the names and last known addresses of the entire class.

[2] These insurers are Harvard Pilgrim Health Care, Tufts Health Plan, Fallon Community Health Plan, and Cigna Health Care of Massachusetts.

[3] As defined in this Court's January 30, 2006 certification order, the consumer portion of Class 3 includes uninsured individuals who purchased one of the subject drugs at a price based upon AWP. Accordingly, Plaintiffs are obligated to pursue avenues to obtain names and addresses for this potentially substantial portion of the class as well. As Plaintiffs have made no effort to do so nor provided any admissible evidence from which this Court could (…continued)

5

## II.     PLAINTIFFS' PUBLICATION-ONLY PLAN IS CONSTITUTIONALLY DEFICIENT.

### A.     Publication notice is not a substitute for actual notice by mail.

The Supreme Court has repeatedly emphasized that publication notice is not a substitute for actual notice. <u>Mullane</u>, 339 U.S. at 315; <u>Eisen</u>, 417 U.S. at 175 ("[N]otice by publication had long been recognized as a poor substitute for actual notice and that its justification was 'difficult at best.'") (quoting <u>Schroeder v. City of New York</u>, 371 U.S. 208, 213 (1962)).  Moreover, arguments based upon expediency or efficiency cannot trump constitutional due process requirements. <u>Mullane</u>, 339 U.S at 318 ("Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties.")  Accordingly, the impending trial date is no justification for reliance on a publication-only plan whose reach is predicated on "probabilities" rather than the certainty of direct mail.

---

(continued…) make a factual determination that such names cannot be obtained through "reasonable efforts," this Court must reject Plaintiffs' notice proposal for this reason as well.  <u>See</u> Consolidated Order Re: Motion for Class Certification dated January 30, 2006 at 5-6) ("All natural persons who made or who incurred an obligation enforceable at the time of judgment to make a payment for purchases in Massachusetts, all Third-Party Payors who made reimbursements based on contracts expressly using AWP as a pricing standard for purchase in Massachusetts, and all Third-Party Payors who made reimbursements based on contracts expressly using AWP as a pricing standard and have their principle place of business in Massachusetts, for a physician-administered Subject Drug that was manufactured by AstraZeneca (AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P., and AstraZeneca U.S.), the BMS Group (Bristol-Myers Squibb Co., Oncology Therapeutics Network Corp. and Apothecon, Inc.), SmithKline Beecham Corporation d/b/a GlaxoSmithKline, the Johnson & Johnson Group (Johnson & Johnson, Centocor, Inc., Ortho Biotech, McNeil-PPC, Inc., and Janssen Pharmaceutical Products, L.P.), or the Schering Plough Group (Schering-Plough Corporation and Warrick Pharmaceuticals Corporation).  Included within this Class are natural persons who paid coinsurance (i.e., co-payments proportional to the reimbursed amount) for a Subject Drug purchased in Massachusetts, where such coinsurance was based upon use of AWP as a pricing standard.  Excluded from this Class are any payments or reimbursements for generic drugs that are based on MAC and not AWP.").

**B.     Plaintiffs' media plan does not reach an adequate number of class members**.

According to Plaintiffs' notice expert, Katherine Kinsella, the most critical step in developing a notice program that will successfully reach absent class members is understanding the target audience.  See Exhibit 1 (Katherine Kinsella, *The Ten Commandments of Class Action Notice*, 12 TOXICS L. REP. 488 (Sept. 24, 1997)).  Furthermore, Kinsella explains that the more specifically the target audience is defined, the more effectively one can tailor the media program to actually reach the target.  (Id.).  Nonetheless, the three demographic targets chosen for Plaintiffs' publication plan are exceedingly broad:

- Adults 35 years of age and older in Massachusetts who used branded or generic prescription drugs during the past twelve months;

- Adults 18 years of age and older in Massachusetts who used branded or generic prescription drugs during the past twelve months;

- Adults 35 years of age and older in Massachusetts.

(Pls.' Mem., Exhibit C at 11).  Rather than create a notice program targeted to the users of the various drugs at issue in this litigation, it appears that Plaintiffs have targeted the entire adult population of the Commonwealth of Massachusetts.  The specifications of this plan are directly contrary to the principles that should guide a notice plan, as articulated by Plaintiffs' own expert.  Furthermore, in contrast to Plaintiffs' remarkably broad demographic targets, the number of advertisements is meager.  Plaintiffs propose that the notice will be placed three times in daily editions of thirty local newspapers, three times in the Sunday editions of fifteen local newspapers, and two times in the weekly editions of seven Hispanic newspapers.  Given the breadth of the target and the paucity of advertisements, neither Defendants nor this Court should have much confidence in Plaintiffs' ability to reach an adequate number of absent class members.

Some of the most fundamental flaws of Plaintiffs' notice program are the questions it fails to answer—what percentage of Zoladex users will be reached? What percentage of Taxol users? What percentage of Procrit users? And so on. Plaintiffs' submission does not answer these essential questions, which are critical to the Court's ability to properly evaluate the plan. For instance, given the characteristics of Plaintiffs' media plan, few Zoladex users are likely to see the notice advertisement. As Plaintiffs are by now certainly aware, the majority of Zoladex users are older men with prostate cancer. See Exhibit 2 (Declaration of Gregory Looney at ¶ 4 ("[B]etween 1991 and 2004, over 90% of AstraZeneca's sales of Zoladex were for the treatment of prostate cancer.")). Plaintiffs' three demographic targets, however, skew overwhelmingly female (64.3%; 64.1%; and 52.9%, respectively) and contain only a very small percentage of mature age groups (for individuals over 65 years of age, the figures are 19.1%; 23.8%; and 21.8%, respectively; for individuals 55 to 64 years of age, the figures are 16.6%; 20.7%; and 20.1%, respectively). (Pls.' Mem., Exhibit C at 12). The same reasoning applies to each of the subject drugs in this litigation.

In sum, even if actual notice by direct mail were not possible (which it is), there is no factual basis upon which this Court could find that Plaintiffs' publication program is the "best notice practicable" consistent with the constitutional mandate. In re Visa Check/ Mastermoney Antitrust Litig., 2002 U.S. Dist. LEXIS 23327, at *6-7 (district court must make factual determination that plaintiffs have satisfied constitutional obligation).

### C.   The opt out period is woefully inadequate.

Finally, Plaintiffs state that their publication plan will achieve adequate levels of reach and frequency by October 22, leaving most class members two weeks to opt-out of the class. (Pls.' Mem. at 3). The time constraints of Plaintiffs' publication plan are woefully inadequate,

especially in light of the reality that many of the class members are seriously ill and, quite understandably, have other more pressing demands on their time.  See, e.g., Mullane, 339 U.S. at 314 (noting that notice period must "afford a reasonable time for those interested to choose whether to appear or default, acquiesce or contest."); Greenfield v. Villager Indust. Incorp., 483 F.2d 824, 834 (3rd Cir. 1973) ("A one-month period hardly seems sufficient."); Tylka v. Gerber Prod. Co., 182 F.R.D. 573, 579 (D. Ill. 1998) ("Adequate notification can accordingly be published approximately 120 days before trial with no resulting prejudice to either side."); 7AA Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1788 (3d ed. 2005) ("[T]he question of when the notice is given directly relates to the ability to assure that the absentees' rights are fully protected.  Thus, notice must be sent long before the merits of the case are adjudicated.").  Given the importance of the class members' individual claims, Plaintiffs' desire to bind class members to the outcome of this litigation on such short notice is not only constitutionally inadequate, but also fundamentally unfair.

This Court is the ultimate safeguard of the rights of absent class members and is charged with ensuring that the notice plan meets constitutional requirements.  FED. R. CIV. P. 23(d). Plaintiffs' failure to effectuate a constitutionally sound notice program, despite this Court's prior admonition, cannot be tolerated at the expense of the Due Process rights of absent class members.  Given Plaintiffs' admission that the names of the majority of class members can be readily obtained in a reasonable amount of time, the constitutional directive is clear—Plaintiffs must provide actual notice by mail to absent consumer members of Class 3.

## **CONCLUSION**

For all of the foregoing reasons and in light of the considerable interests at stake, Track 1 Defendants respectfully request that this Court reject Plaintiffs' publication-only notice plan for the consumer members of Class 3.

Respectfully submitted,

THE FOLLOWING TRACK 1 DEFENDANTS

By:   /s/ Katherine B. Schmeckpeper

Nicholas C. Theodorou (BBO # 496730)
Katherine B. Schmeckpeper (BBO #663200)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110

D. Scott Wise
Michael Flynn
Kimberley Harris
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

Attorneys for AstraZeneca Pharmaceuticals LP

Steven M. Edwards
Lyndon M. Tretter
Hogan & Hartson, LLP
875 Third Avenue, Suite 2600
New York, NY 10022

Attorneys for the Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp.

William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Attorneys for the Johnson & Johnson Defendants

John T. Montgomery (BBO #352220)
Steven A. Kaufman (BBO #262230)
Eric P. Christofferson (BBO #654087)
Ropes & Gray LLP
One International Place
Boston, MA 02110

Attorneys for Schering-Plough Corp. and
Warrick Pharmaceuticals Corp.

Dated: October 2, 2006

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was delivered on October 2, 2006 to counsel for plaintiffs and to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, via LexisNexis File & Serve.

       /s/ Katherine B. Schmeckpeper
       Katherine B. Schmeckpeper