**EXHIBIT 1**

1 of 1 DOCUMENT

Copyright © 1997 The Bureau of National Affairs, Inc.
Toxics Law Reporter

September 24, 1997

12 Toxics L. Rep. (BNA) 488

LENGTH: 43 words

SECTION: ANALYSIS AND PERSPECTIVE.

Class action law is in the midst of a sea change. Whether it be congressional curtailing of securities litigation, judicial limitations on the more expansive use of the class device, or the work of the Advisory Committee on Civil Rules, change is underway.

Federal mass tort class actions, in particular, are reeling from a series of split decisions that strike down the settlement class action in one case and affirm it in another. n1 Courts at all levels are agonizing over a number of issues with respect to certification, the binding of future claims, and immature mass torts. n2

> n1 Georgine v. Amchem Prod., 878 F. Supp. 716 (E.D. Pa. 1994), rev'd, 83 F.3d 610 (3d Cir.), aff'd 117 S. Ct. 2231 (1997) (striking down asbestos class action settlement); Ahearn v. Fibreboard, No. 6:93cv526 (E.D. Tex. 1995), aff'd sub nom, Flanagan v. Ahearn, 90 F.3d 963 (5th Cir. 1996) (where Fifth Circuit upheld asbestos class action settlement); vacated in light of Amchem sub nom Ortiz v. Fibreboard.

> n2 See Georgine, Ahearn and Castano v. American Tobacco, 150 F.R.D. 544 (E.D. La. 1995), rev'd, 84 F.3d 734 (5th Cir. 1996).

Among the issues in flux, **notice** is of increasing concern, particularly in mass tort, product liability, and other class actions where class members are not readily identifiable. This concern is not unfounded given the wide range of judicial interpretations of adequacy.

TITLE: THE TEN COMMANDMENTS OF CLASS ACTION NOTICE.

AUTHOR: Katherine Kinsella *

> * Katherine Kinsella is president of Kinsella Communications Ltd., an advertising and communications firm specializing in legal notification for class actions and mass tort bankruptcies.

TEXT:

Rule 23(b)(3) of the Federal Rules of Civil Procedure stipulates that direct **notice** by mail is required when class members are identifiable. In class actions where the majority of class members are not readily identifiable, published **notice** is mandated. n3

> n3 See Fed.R.Civ.Pro. Rule 23(c)(3), "The court shall direct to the members of the class the best **notice** practicable under the circumstances. . . ."

But "published" **notice** is actually a misnomer, having expanded from simple newspaper **notice** to encompass nearly the whole spectrum of media—including broadcast vehicles and the Internet. In fact, publishing **notice** today requires not only an understanding of the law, but also an understanding of a complex and changing media environment.

Ten key principles, or "commandments," should guide the development and implementation of a **notice** program. Although not carved in stone, these principles are grounded in advertising methodology and measurable outcomes that provide accountability and ensure adequacy of **notice**.

© BNA, Inc. Toxics Law Reporter, September 24, 1997

## COMMANDMENT # 1

### Base Notice Program On Specifics

Every class action is unique and requires a notice program tailored to the specifics of the case.

Factors such as the demographics of class members, the distribution of product, the number of readily identifiable class members, anticipated class size, and jurisdictional breadth (national versus statewide) can and must influence the direction and scope of the notice program.

A cookie-cutter approach to notice ignores the facts of the individual case.

## COMMANDMENT # 2

### Know The Product

Knowing how a product was used or consumed, by whom, over what period of time, and where provides information essential to the effective design of a notice program.

In some cases, the identification of manufacturing plants, geographic sales and distribution patterns, and third-party involvement with the product or class members are relevant factors. This product information provides insight into the demographic characteristics of class members, likely geographic distribution of future claims, and how a media plan should be constructed.

In asbestos cases, for example, occupational exposure is the overwhelming source of injury or exposure. The period of time that asbestos was in the workplace, the professions exposed (building and construction trades, shipbuilding industries, and naval or merchant marines), and the latency period for disease manifestation help provide a demographic profile of class members—male, blue-collar workers, aged 45+. In addition, the extraordinary use of asbestos insulation in shipbuilding during wartime pinpoints specific geographic areas where enormous number of class members are likely to be located.

## COMMANDMENT # 3

### Define Your Target Audience

In designing a notice campaign, the critical first question should not be: Where should we place the notice? but rather: Whom do we have to reach?

All measured media is bought on the basis of demographics. Online syndicated market research companies such as Simmons Market Research Bureau Inc. and MediaMark Research Inc., regularly survey consumers with respect to product usage and media habits. These data permit the identification of demographic characteristics and groups and provides information on the penetration of demographic groups by specific media vehicles within each medium.

In *Cox v. Shell Oil Co.*, n4 a polybutylene plumbing products liability class action, the product was used extensively in mobile homes and lower-to medium-priced houses. Using syndicated data, a national analysis of homeowners with homes that were valued at less than $100,000 indicated that the main target was adults, aged 35+, with household incomes of less than $45,000 and a high school education or less.

n4 *No. 18,844, 1995 WL 775363 (Tenn. Ch. 1995).*

## COMMANDMENT # 4

### Use Demographic Profiles To Buy Media

Once a demographic profile is established, the media can be identified to reach the targeted audience. Syndicated market research enables different types of media to be compared for audience penetration and cost. For example, TV penetration of a particular target audience can be compared to that of radio, magazines and newspapers. In addition, each media vehicle—a specific television show, a radio program, or a magazine—is indexed with respect to its penetration of the target audience.

In *Nealy v. Woodmen of the World Life Ins. Co.*, n5 an insurance discrimination case, the insurance product was sold to African-Americans in the South. Using Simmons Market Research Bureau data, demographic profiles were

© BNA, Inc. Toxics Law Reporter, September 24, 1997

constructed by race and census area for purchasers of annuities, term, and life insurance policies.

n5 No.3:93 CV536 BN (S.D. Miss).

These demographics were cross-referenced with the media consumed by the identified demographic group. The original contemplated newspaper-based **notice** plan became a more effective television-based **notice** plan became a more effective television-based plan for essentially the same budget.

## COMMANDMENT # 5

### Target Notice Campaign Geographically

Although a class action may be national in scope, because of product distribution and usage, the majority of class members may reside in discrete geographic areas. Targeting a national **notice** campaign geographically has three benefits: it directs the media to areas and markets where class members are most likely to be found, makes media expenditures more cost-efficient, and allows individuals most likely to be class members to be exposed to the **notice** multiple times.

In *Backstrom v. The Methodist Hospital,* n6 a temporo-mandibular joint (TMJ) disease/disorder class action, product sales records were analyzed by zip code, enabling the paid media program to be highly targeted and weighted to areas where the TMJ product was used. The resulting **notice** program provided national **notice** with multiple exposures to class members in geographic areas where they were most likely to be located.

n6 No. H941877 (S.D. Tex.).

## COMMANDMENT # 6

### Use Paid Advertising

Paid media should be the basic component of a **notice** plan to reach unidentifiable class members because it is targetable to specific demographic groups, is measured by accredited marketing research firms for audience reach and message exposure, and is contractually guaranteed to appear.

Notice by press release, video news release, or letters to third-parties who may have contact with mass tort claimants can be extremely valuable, but is not certain **notice**. The court must be satisfied before approving a **notice** program that the **notice** will reach class members.

The problem with unpaid, or "earned," media is not whether the class action is reported in the media. Instead, the problem is its effectiveness as a primary **notice** vehicle. Contact information—which must be conveyed for the **notice** to be successful—is often not included in news articles. A news story may provide general information on a class action but may not provide sufficient information for a class member to have access to the complete **notice**.

Both third-party **notice** to individuals or organizations who have a connection to class members and earned media efforts can increase awareness of the class action and result in **notice** to some class members. Their role, however, should be supplemental.

## COMMANDMENT # 7

### Use Reach And Frequency Measurements

The advertising industry has a language of its own, including terms such as: gross impressions, gross rating points, reach, and frequency. These measurements are all important but reach and frequency are the essential measurements for the purpose of gauging adequacy of **notice**.

Reach is the percentage of a target audience reached through a specific media vehicle or combination of media vehicles.

Frequency is the average number of times an audience is exposed to a message. Some individuals who are heavy consumers of media may see an ad five times, others in the target group may only see it once or not at all.

© BNA, Inc. Toxics Law Reporter, September 24, 1997

The figures are important because they are the national standard rates of measurement in the advertising industry and because they quantify for the court the percentage of audience reached and the number of opportunities class members had to see the **notice**.

Unfortunately, not all media are measured. For example, community newspapers and trade publications are not included in national readership surveys. However, most national media are measured and, when possible, reach and frequency measurements should be used. Providing these statistics will help ensure that the **notice** process will withstand attack either in the trial court or on appeal.

## COMMANDMENT # 8

### Design Notice To Attract Attention

Although securities class actions have a high percentage of well-educated class members, that is not the case with most consumer-oriented or mass tort class actions where many class members have a high school education or less.

The most critical element of the published **notice is the headline**. There is absolutely no incentive for a "general" consumer to stop and read a legal advertisement that uses the case caption in tiny print as the **headline**. There are only a few seconds to capture the attention of a reader. The **headline** must be sufficiently broad to allow individuals who may potentially be class members to read further and determine if they should seek additional information.

The summary **notice** should provide the most salient information points—what the suit is about, who the suit involves, what their rights are, what action is necessary, and most importantly, how to get more information—which should explain the details of the litigation in understandable language.

Whenever possible, **notice** should use simple language versus "legal" language to explain the litigation and the rights of class members. Obviously, class members must receive the full **notice** as it has been approved by the court. However, a reader-friendly summary of the key elements of the **notice**, a question-and-answer document that allows individuals to access the information from their frame of reference, or even the use of topical subheads within the text of a **notice** to guide readers will render the **notice** more understandable.

## COMMANDMENT # 9

### Integrate All Facets Of Notice Campaign

Providing adequate **notice** involves more than just mailing **notice** to readily identifiable class members and placing a few ads in selected publications. Individuals get their information from multiple sources at different times and in different ways. The **notice** process also consists of cost-effective printing and mailing in a reasonable time-frame, sophisticated toll-free telephone systems, and prompt recognition and addressing of problems that will inevitably arise.

The adage about too many cooks, especially inexperienced cooks, certainly pertains to **notice** programs. All facets of the notification process including direct **notice**, toll-free telephone systems, paid and unpaid media, and record keeping should be integrated and centrally coordinated.

In class actions for settlement purposes, **notice** initiates the claims process. Thinking through and integrating the **notice** and claims processes at or before certification eliminates problems and saves time and money.

## COMMANDMENT # 10

### Guide Court Through Notice Plan

Grasping media concepts and understanding advertising language and techniques is not intuitive. They can be explained, however, in a **notice** plan that guides the court through the who, why, and how of **notice**. In addition, the use of recognized measurements and projected outcomes, as previously discussed, provides the court with real tools to evaluate the adequacy of any **notice** program.

In an era of exploding information and communication technologies, it is vital that individual legal rights—and awareness of those rights—not become a casualty to either today's media complexity or yesterday's anachronistic traditions.

Just as law evolves through practice and court interpretation, **notice** standards are evolving. The most important step toward a standard of adequacy is that **notice** be delivered in a manner in which the class members have an

© BNA, Inc. Toxics Law Reporter, September 24, 1997



opportunity to actually see and understand the **notice**. Approaching the requirement of **notice** with a methodology based on principles that not only ensures delivery of **notice**, but also measures adequacy, is the first step toward establishing a standard that protects the legal rights of class members.