# EXHIBIT 3

S. Hrg. 105–85

# PRESIDENT'S FISCAL YEAR 1998 BUDGET PROPOSAL FOR MEDICARE, MEDICAID, AND WELFARE



## HEARINGS

BEFORE THE

## COMMITTEE ON FINANCE UNITED STATES SENATE

ONE HUNDRED FIFTH CONGRESS

FIRST SESSION

WITH VIEWS FROM

CONGRESSIONAL ADVISORY COMMISSIONS; CONGRESSIONAL BUDGET OFFICE; AND THE GENERAL ACCOUNTING OFFICE

FEBRUARY 13 AND 27; MARCH 4 AND 5, 1997



Printed for the use of the Committee on Finance

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1997

42-162—CC

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402
ISBN 0-16-055948-0

IV

IV | Page

## MARCH 5, 1997

### OPENING STATEMENTS

Roth, Hon. William V., Jr., a U.S. Senator from Delaware, chairman, Committee on Finance ........ 87
Moynihan, Hon. Daniel Patrick, a U.S. Senator from New York ........ 88

### PUBLIC WITNESSES

Baumgarten, Jane, member of the board of directors, American Association of Retired Persons, North Bend, OR ........ 88
Linden, Todd C., president and chief executive officer, Grinnell Regional Medical Center, Grinnell, IA, on behalf of the American Hospital Association ........ 90
Nelson, Alan R., M.D., executive vice president, American Society of Internal Medicine, Washington, DC ........ 92
Schwartz, Seymour I., M.D., chairman of the board of regents, American College of Surgeons, Washington, DC ........ 94
Size, Tim, executive director, Rural Wisconsin Health Cooperative, Sauk City, WI, on behalf of the National Rural Health Association ........ 96

### ALPHABETICAL LISTING AND APPENDIX MATERIAL SUBMITTED

Baucus, Hon. Max:
  Letter from GAO, dated October 2, 1995 ........ 354
Baumgarten, Jane:
  Testimony ........ 88
  Prepared statement ........ 367
Chafee, Hon. John H.:
  Prepared statement ........ 121
D'Amato, Hon. Alfonse:
  Prepared statement ........ 122
Jeffords, Hon. James M.:
  Prepared statement ........ 122
Linden, Todd C.:
  Testimony ........ 90
  Prepared statement ........ 123
  Responses to questions from Senator Hatch ........ 128
Mack, Hon. Connie:
  Prepared statement ........ 123
Moynihan, Hon. Daniel Patrick:
  Opening statements ........ 2, 88
Nelson, Alan R., M.D.:
  Testimony ........ 92
  Prepared statement ........ 130
  Responses to questions from Senator Hatch ........ 140
Newhouse, Joseph P., Ph.D.
  Testimony ........ 40
  Prepared statement ........ 143
  Responses to questions from Senators Jeffords, Mack, and Moynihan ........ 165
Ratner, Jonathan, Ph.D.:
  Testimony ........ 77
  Prepared statement ........ 170
  Responses to questions from Senator Murkowski ........ 181
Roth, Hon. William V., Jr.:
  Opening statements ........ 1, 39, 61, 87
Schwartz, Seymour I., M.D.:
  Testimony ........ 94
  Prepared statement ........ 183
Shalala, Hon. Donna E., Ph.D.:
  Testimony ........ 3
  Prepared statement ........ 203
  Responses to questions from committee members ........ 252
Size, Tim:
  Testimony ........ 96
  Prepared statement ........ 284
  Responses to questions from Senator Kerrey ........ 310

265

**Senator Hatch's Questions:**

Q1. The President's FY 1998 Budget proposes to reduce reimbursement for prescription drugs prescribed in a physician's office and reimbursed by Medicare. What is your rationale for this new policy?

A1. While Medicare does not have an expansive outpatient drug benefit, it does cover outpatient injectable drugs that are furnished by a physician and certain drugs that are administered with durable medical equipment. In 1992, the Medicare-allowed charges for these drugs were $680 million. In 1995, allowed charges were $1.8 billion, an increase of over 250 percent in only three years.

Medicare pays the "average wholesale price" (AWP) for covered drugs. However, the AWP is not the average price actually charged by wholesalers to their customers. Rather, it is a "sticker" price set by drug manufacturers and published in several commercial catalogs. As a result, the HHS Inspector General estimates that Medicare currently pays 15 to 30 percent more because the physician is marking up the drug when the manufacturer charges the patient less than the average wholesale price. We believe that physicians should be paid for their professional services and not derive a profit from drugs furnished incident to their professional services. Also, the current payment rules for drugs allow an increase in the AWP even if the cost to the physician remains constant. This creates an incentive for physicians to furnish the most profitable drugs. Our proposal would remove this incentive so that the decision to furnish a particular drug is more directly based on medical considerations.

Q2. How would this new policy work? How would HCFA determine acquisition costs? How would HCFA determine the median national cost that is to be the cap for payment on each drug? How will this program be administered and what will be the costs in dollars and FTEs?

A2. Effective January 1, 1998, the Administration's proposal would eliminate the mark-up for drugs by basing Medicare's payment on the provider's acquisition cost of the drug. Effective January 1, 2000, payments for a particular drug would not be allowed to exceed the national median cost of that drug.

Under the proposed policy, physicians would report their acquisition cost for each drug on the claim submitted for reimbursement. Physicians, rather than HCFA, would determine their acquisition cost. The median limit would be implemented based on actual costs reported for each drug for 12-month periods beginning July 1, 1998. Median limits have been implemented for other Part B services (e.g., clinical diagnostic laboratory services and durable medical equipment). Carriers report the data to HCFA and the median is calculated for each code in HCFA Central Office. The median for each code is then furnished to all carriers to be used as part of the payment screens developed for the following January. We do not have dollar or FTE estimates for the costs of administering this policy, but since HCFA has

Hatch - 1