# EXHIBIT 23

| | |
|---|---|
| **From:** | "Duerr, Gary - Medicaid" <DuerrG@idhw.state.id.us> |
| **To:** | "garza maria (E-mail)" <mgarza@cms.hhs.gov> |
| **Date:** | 12/10/01 1:38PM |
| **Subject:** | FW: ID 01-012 |

As requested the following is a summary of the points discussed during the conference call 12/10/01 at 9:30 AM MST. Those in attendance via phone conference included Maria Garza, Kim Howell, Gary Duerr and Shawna Kittridge.

· The State of Idaho conducted no further study or cost analysis as a determination for the reimbursement rate change beyond the previously submitted Myers and Stauffer Dispensing Cost Study of Kentucky and Arkansas. However, we are aware of CMS's concern that any possible future reimbursement changes to the AWP calculation or dispensing fee may necessitate another pharmacy cost survey.

· Representatives from the state pharmacy association, hospital association, and retailer's association met with the Department numerous times to negotiate reimbursement rates for pharmacies. It should be noted that the pharmacy representatives were concerned that lowering the dispensing fee may create additional access problems for Medicaid participants, especially those serviced by rural independent pharmacies.

· The OIG report was mentioned as it "added fuel" to the already burning fire to cutback spending by the state. The OIG report is currently under attack for methodology and extrapolation of national cost savings estimates. In addition it does not take into consideration FUL pricing, SMAC pricing, previous OIG reductions for injectable medications or recently discounted manufacturer AWP's (eg. Abbott). However, the OIG report does reiterate the general knowledge that AWP is significantly higher than pharmacy acquisition cost.

· CMS expressed concern that this reduction was just a "testing of the waters" for possible future pharmacy reductions.


-----Original Message-----
From: Duerr, Gary - Medicaid
Sent: Monday, December 10, 2001 1:55 PM
To: 'Maria Garza'
Cc: Swatsenbarg, Paul - Medicaid; Kittleson, Kathleen - Westgate
Subject: RE: ID 01-012


As requested from the telephone conference this AM including Maria Garza, Kim Howell, Gary Duerr, and Shawna Kittridge the following is a summary of the points discussed:


-----Original Message-----
From: Maria Garza [mailto:MGarza@cms.hhs.gov]
Sent: Friday, December 07, 2001 4:15 PM
To: Duerr, Gary - Medicaid
Cc: Kimberly Howell
Subject: RE: ID 01-012

Lets plan for Monday @ 8:30 Pacific Standard Time, 9:30 am Central Time
& 11:30 Eastern for Baltimore.

I hope we can discuss the use of the submitted survey and audit report
in supporting the AWP adjustment to - 12%.

Maybe our conversation will clarify our continuing questions and further
explain Idaho's information.

Look forward to the discussion. Kim, please advise if this conflicts
with your schedule.

Maria

>>> "Duerr, Gary - Medicaid" <DuerrG@idhw.state.id.us> 12/07/01 02:31PM
>>>
How about Monday? Just let me know what time works for you folks..

-----Original Message-----
From: Maria Garza [mailto:MGarza@cms.hhs.gov]
Sent: Friday, December 07, 2001 2:05 PM
To: Duerr, Gary - Medicaid
Subject: RE: ID 01-012


Can we schedule a conference call to clarify our concerns.

Please advise your availability during the next week. Please keep in
mind our Central Office is 3 hour ahead of me and 2 for you.

Marla

>>> "Duerr, Gary - Medicaid" <DuerrG@idhw.state.id.us> 12/06/01 11:38AM
>>>
Marla: The addition of the OIG report to our request was simply added
as supplemental information supporting the premise that AWP (average
wholesale price) is a currently accepted pricing standard, which as
everyone associated with pharmaceuticals understands is not actual cost
of the drug for any trade class. In fact, the tongue-in-cheek
definition of AWP in the drug industry today is, "Ain't What's Paid".
Our reimbursement choices are limited to WAC (wholesale acquisition
cost) Plus a percentage or AWP Minus a percentage. Idaho chooses to
adopt AWP minus 12% plus a dispensing fee as an accessible, reasonable,
and acceptable level of reimbursment for our Medicaid pharmacy
providers. The specifics of the OIG report are being challenged in many
arenas, but the fact that brand and generic drugs have significant
discount from AWP is not being questioned. If this OIG report confuses
the issue, perhaps we should ignore it at this time and concentrate on
the M & S survey to facillitate the State Plan update. Any questions
please feel free to call.

-----Original Message-----
From: Maria Garza [mailto:MGarza@cms.hhs.gov]

Sent: Friday, November 30, 2001 9:01 AM
To: Duerr, Gary - Medicaid
Subject: RE: ID 01-012


IN reviewing the attached information CMS is still trying to understand
the use of the two surveys submitted to explain your AWP change.

The M&S survey previously used to support AWP - 3% to AWP- 11%, This
was a significant change to the AWP, the survey findings indicate then
avg range of discounts from 9%, to 12% with 10% as being most common.
Idaho then elected use to 11%. Now using this same report is ok because
the range is covered in the survey BUT using the OIG report to
supplement Idaho's recent 1% adjustment is confusing as the OIG report
indicates range of brand prescription at -21.9% & generic at -69.3 %.

Please explain further. If a call would best facilitate the exchange
let me know your availability so we can coordinate with my counterpart
in Central Office.

Maria


>>> "Duerr, Gary - Medicaid" <DuerrG@idhw.state.ld.us> 11/27/01 03:08PM
>>>
Maria - sorry for the delay, but I was out of the office all of last
week. (1) This AWP minus change was a direct result of the Governor's
ordered cutback of all state agencies. The basis for this decision was
the recent OIG AWP Report and the Myers and Stauffer Dispensing Cost
Study of Kentucky and Arkansas which was shared with your office in 1999
when we last made a change in pharmacy reimbursement. Both studies
showed significant differences between AWP and actual acquisition costs.
(2) Gives us the ability to prior authorize drugs such as Provigil,
Aldara, and Regranex for appropriate diagnosis. We found these being
utilized for numerous non FDA nor medically acceptable indications.
Prolastin was PA'd after a physician was found to be prescribing twice
the recommended dose. When challenged to defend the high dose he
quickly reduced to acceptable levels. Without this prior authorization
process we would have no way of knowing about inappropriate dosing and
usage, thus spending thousands of dollars unnecessarily. (3) We do not
have a preferred formulary at this time, but we have authorized Idaho
State University, our DUR contractor, to begin formulating a preferred
drug program. I trust this will facilitate your review, and should you
have any questions please call me at 208-364-1832.


-----Original Message-----
From: Maria Garza [mailto:MGarza@cms.hhs.gov]
Sent: Tuesday, November 13, 2001 12:48 PM
To: Duerr, Gary - Medicaid
Subject: ID 01-012


Hi Gary,



I have been assigned to your SPA. Based on my review, I would like to informally request the following:

(1) documentation to support the reimbursement from AWP-11% to AWP-12% (state's methodology demonstrating the rate adjustment i.e copy of the survey conducted, the auditors analyst of costs) and

(2) clarification regarding prior authorization for other medications as determined by DHW for therapeutic and/or pricing issues.

Is your state using a preferred formulary. ..?

Maria

Maria Garza
Centers for Medicare & Medicaid Services
Division of Medicaid & State Operations
2201 Sixth Ave, RX-43
Seattle, WA 98121

VOICE:  (206) 615-2542
FAX:    (206) 615-2472
mgarza@cms.hhs.gov

CC:         "Swatsenbarg, Paul - Medicald" <swatsenb@idhw.state.id.us>, "Kittridge, Shawna - Medicaid" <KittridS@idhw.state.id.us>