# EXHIBIT 24

Dorothy Poulsen                                          February 22, 2006
                           Seattle, WA

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---

IN RE: PHARMACEUTICAL    )
INDUSTRY AVERAGE         )
WHOLESALE PRICE          )
LITIGATION               ) MDL Docket No.
                         ) Civil Action 01CV12257PBS

---

DEPOSITION UPON ORAL EXAMINATION OF

DOROTHY POULSEN

---

9:00 a.m

February 22, 2006

PERKINS COIE

1201 Third Avenue, #4800

Seattle, Washington  98101


REPORTED BY:  Judith A. Robinson, CCR #2171

Dorothy Poulsen                                       February 22, 2006
                          Seattle, WA
Page 57

1  be reimbursed our actual acquisition cost plus a fee
2  equivalent to the amount we receive for other state
3  facility prescriptions."
4       A.   Right.
5       Q.   Did you agree that the change to
6  reimbursement methodology from AWP minus 10% to
7  actual acquisition cost occur for MedManagement?
8            MR. LOPEZ:  Object to the form.
9            THE WITNESS:  Yes.
10 BY MS. O'SULLIVAN:
11      Q.   Is it fair to say, that as of this time in
12 1997, you understood that AWP minus 10% did not
13 represent actual acquisition cost?
14      A.   Yes.
15      Q.   The court reporter has handed you Exhibit
16 Poulsen 004 Bates numbered MT018455, a 1-page
17 document dated July 30, 1997.
18           Is this a letter that you sent to Al Stark
19 of MedManagement?
20      A.   Yes, it is.
21      Q.   And comparing Exhibit Poulsen 003 to this
22 document has Exhibit Poulsen 004, is this your

5e65ecd9-b485-4146-86c9-6eee27c89d03

Dorothy Poulsen                                February 22, 2006
                          Seattle, WA

Page 131

1   have been $16 or, you know, between $8 and $16 per
2   prescription and we were paying $4.20.
3           When we used our methodology to determine
4   what our dispensing fee should be, the amount we
5   came up with was invariably higher than what the
6   capped dispensing fee was. So virtually everyone had
7   the capped dispensing fee.
8       Q.  Did you do the analysis that led to this
9   conclusion that the dispensing fee only covered one-
10  quarter to one-half of the cost?
11      A.  I believe so.
12      Q.  Do you know where those dispensing fees
13  are located at Montana Medicaid?
14      A.  In a file folder.
15      Q.  Who keeps that file?
16      A.  The pharmacy program officer or in
17  archives.  Or at this point in time, they may have
18  done many things differently.  But at the time I was
19  doing it, it would have been in a file folder.
20      Q.  Based on this analysis that you did in
21  Exhibit Poulsen 012, was it your understanding that
22  Montana Pharmacy would lose money on every drug it

Dorothy Poulsen February 22, 2006
Seattle, WA

Page 132

1    dispensed, unless it received some additional
2    reimbursement from Medicaid?
3              MR. LOPEZ:  Objection.
4              THE WITNESS:  That was my rationale for
5    paying them is AWP less 10%, rather than some other
6    amount, is that otherwise, they would not be paid
7    sufficiently to provide services to our clients.
8    BY MS. O'SULLIVAN:
9         Q.   Was it your understanding that the
10   reimbursement methodology of AWP minus 10% was in
11   part intended to make up for the lack of
12   reimbursement for the dispensing fee?
13             MR. LOPEZ:  Objection.
14             THE WITNESS:  That was my assumption.
15   When I came into the position, this was a system
16   that was set up. This was how it was set up.  What I
17   then tried to determine or figure out over the years
18   is why we would set things up this way.  So that was
19   my understanding is we paid this way because -- I'm
20   not sure which is the chicken and which is the egg.
21   Did we pay a low dispensing fee because we thought
22   that they were making money on the drug?  Or did we