UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO HAVE HEARINGS ON "INDIVIDUAL DEFENDANTS'
OPPOSITIONS TO CLASS CERTIFICATION"**

The Track Two Defendants claim that they need another hearing on the Article III standing of each Class representative.  They do so after having filed voluminous briefs, "expert" declarations, pages of PowerPoint slides, and a full argument.  They do so under the guise of the need to examine each individual plaintiff's purchase history in order to ascertain Article III standing.  As the Court noted at the hearing on class certification with respect to the Track Two Defendants:  ". . . last time around when I got into the duking it out whether Mr. Bean did or didn't take it, the argument didn't help me very much."  TR at 39:3-7.  The Court then inquired of Defendants if they wished to undertake that kind of duking or rest on their papers, and Mr. DeMarco offered that most Track Two Defendants "are willing to rest on their papers and the demonstratives that we've provided to you."  TR at 40:4-7.  Having made this concession and given the prior history on duking, a second argument should not be permitted.  Mr. Dodds then proceeded to argue the standing issue at length.  And when Mr. Raskin returned to the issue of

- 1 -

001534-16 132507 V1

Article III standing, the third defense speaker to do so, and asserted that this is a threshold issue, the Court stated: "I don't buy it, okay, but I do buy that I need to go class rep by class rep." TR at 165. Given this history, plaintiffs believe an additional hearing is not necessary. Defendants have had more than ample opportunity on this issue.

In addition, the standing issue Defendants now seek to reargue centers on the issue of whether a given plaintiff can trace his or her multi-source drug to a specific manufacturer. In other words, can the elderly Mr. Bean, so sick that he must take a variety of drugs, trace which manufacturer provided his Dextrose, even though each manufacturer contributed to his injury by contributing to an inflated median AWP. Standing is lacking, according to Defendants, who now seek to hide behind the anonymity caused by J-codes by essentially saying, "Ha ha, the entire market for the drug may have been inflated due to our combined conduct that created an inflated median AWP, but you can't prove you took my drug," thus no class can be certified. Don't provide that elderly patient relief, say the Defendants, even where spreads were as high as 300% to 1000% or more.

The law is not so blind or unforgiving as to require such detailed proof in this context to create standing.

The basic idea is that when each generic posts an unlawfully inflated AWP, that generic company has affected the median AWP for all purchasers, not just the purchasers of that generic company's product. So, for example, if Plaintiffs can establish that Abbott unlawfully inflated the AWP for albuterol, and if Plaintiffs can show that the inflation was a substantial contributing factor for the J-code that was used for Medicare Part B reimbursements (either by being an AWP above the median, or by being an AWP sufficiently close to the median so as to maintain the AWP game by virtue of the Nash Equilibrium approach described by Dr. Hartman), then all

payments made under the J-code were unlawfully higher than they should have been regardless of which product was purchased using that J-code. A person or entity that purchased any product using that J-code purchased a product the price for which was based on the wrongdoing of the defendant.

Another way to look at this is the fact that manufacturers can hide behind the obscurity of the J-code feature that actually argues in favor of certification. Under Massachusetts and every other state law there is the basic principal that when two or more tortfeasors each cause an indivisible harm, they are each jointly and severally liable for the whole of the harm suffered. The *Restatement (Third) of Torts* echoes this conception of joint and several liability, focusing on the conduct of the tortfeasors rather than on harm caused by a product: "If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each person is jointly and severally liable for the recoverable damages caused by the tortious conduct." *Restatement (Third) of Torts*, § A18. *See also*, *e.g.*, *Harper v. Albert*, 400 F.3d 1052, 1061-62 (7th Cir. 2005) (quoting *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) and noting "[j]oint and several liability is a theory of recovery which requires that the plaintiffs, in an action alleging tortious or constitutionally repugnant conduct by multiple actors, establish that each defendant acted in concert to 'produce a single, indivisible injury.'"); *Ravo v. Rogatnick*, 514 N.E.2d 1104, 1108 (N.Y. 1987) (finding joint and several liability appropriate where the plaintiff suffered brain damage and the defendants, an obstetrician and a pediatrician, failed to submit any evidence upon which apportionment of damages could be based).

Successful application of joint and several liability does not require that all tortfeasors be joined to the action. *See*, *e.g.*, *Shantigar Found. v. Bear Mt. Builders*, 804 N.E.2d 324, 332 (Mass. 2004) ("Under our current system of joint and several liability, a plaintiff injured by more

than one tortfeasor may sue any or all of them for her full damages."); *Restatement (Second) of Torts*, § 882 ("If each of two or more persons is subject to liability for the full amount of damages allowed for a single harm resulting from their tortious conduct, the injured person can properly maintain a single action against one, some or all of them.").

Interestingly in the MBTE cases Judge Shira Scheindlin canvassed this area. In *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("In re MTBE")*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005), cities, municipal corporations, and public and private water providers sued multiple designers, manufacturers, and distributors of gasoline containing the additive methyl tertiary butyl ether ("MTBE") for alleged groundwater contamination. Defendants sought the dismissal of complaints filed in fifteen states, in part based on questions of whether the plaintiffs could proceed with their claims based on collective theories of liability. *Id.* at 361-62. In her opinion, Judge Shira Scheindlin engaged in a multi-page examination of six forms of collective liability, including concurrent wrongdoing (or joint and several liability), concert of action liability, alternative liability, enterprise liability, market share liability, and "'commingled product' market share liability." *Id.* at 370-79.

Judge Scheindlin noted, as Defendants have here, that those states that utilize market share liability reserve it for use in cases involving fungible goods, *e.g.*, where a ***product*** caused harm to the plaintiffs. *Id.* at 375-76. Concurrent wrongdoing, concert of action liability, and alternative liability, however, all focus on the tortious ***conduct*** of the defendants. *Id.* at 371-72 (noting, in discussing joint and several liability, that "[f]or liability to attach, defendants' tortious ***conduct*** need not be simultaneous in time, but must combine to produce plaintiff's indivisible injury. This concept of concurrent wrongdoing evolved to relieve plaintiffs of the burden of establishing several liability in cases where more than one defendant proximately caused the

harm."); 372 (regarding the theory of concert of action: "One party is responsible for the acts of another if it (a) *does a tortious act* in concert…, or (b) knows that the other's *conduct* constitutes a breach of a duty and gives substantial assistance… , or (c) …[its] own *conduct*, separately considered, constitutes a breach of duty to the third person."); *Restatement (Second) of Torts*, § 433B(2) (defining alternative liability:  "Where the tortious *conduct* of two or more actors has combined to bring about harm to the plaintiff … the burden of proof as to the apportionment is upon each such actor.") (emphasis added).

Under this approach each defendant is liable for the whole of the harm suffered by the plaintiff regardless of which companies' products the plaintiff purchased.  Thus, for example, Abbott would be responsible for all albuterol overpayments, not just those associated with the sales of Abbott's albuterol.  *However*, the plaintiffs' damages disclosures filed here do not do this.  Instead, the disclosures only ask for the damages associated with each defendant's product.

Plaintiffs have established standing by the purchase of a drug manufactured by each Defendant that was purchased at inflated prices due to Defendants' practices.

DATED:  October 6, 2006

By    /s/ Steve W. Berman
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

- 7 -

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 8 -

## **CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on October 6, 2006, I caused copies of **CLASS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO HAVE HEARINGS ON "INDIVIDUAL DEFENDANTS' OPPOSITIONS TO CLASS CERTIFICATION"** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

 /s/ Steve W. Berman
Steve W. Berman