UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
IN RE PHARMACEUTICAL INDUSTRY    )
AVERAGE WHOLESALE PRICE          )    MDL NO. 1456
LITIGATION                       )    CIVIL ACTION NO.
_____)     01-CV-12257-PBS
                                 )
                                 )
THIS DOCUMENT RELATES TO:        )
                                 )
All Actions;                     )
                                 )
State of Nevada v. Abbott        )
Labs., Inc., et al., Case No.    )
CV 02-00260, and                 )
                                 )
State of Montana v. Abbott       )
Labs., et al., Civil Action      )
No. 02-12084-PBS.                )
_____)
```

**REPORT AND RECOMMENDATION RE:**
**PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST**
**BAXTER HEALTHCARE FOR OBFUSCATION OF DOCUMENTS AND**
**DILATORY TACTICS (DOCKET ENTRY # 2786); MONTANA AND NEVADA'S**
**JOINDER IN PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT**
**JUDGMENT AGAINST BAXTER HEALTHCARE FOR OBFUSCATION**
**OF DOCUMENTS AND DILATORY TACTICS**
**(DOCKET ENTRY # 2907)**

**October 10, 2006**

**BOWLER, U.S.M.J.**

Pending before this court are two motions seeking sanctions against defendant Baxter Healthcare Corporation ("Baxter"), a named defendant in this multidistrict proposed class action alleging the fraudulent overstatement of the published "average wholesale price" of various prescription drugs ("the MDL action") as well as in State of Nevada v. Abbott Laboratories, Inc., et

al., Case No. CV 02-00260 ("the Nevada I action)[1] and in State of Montana v. Abbott Laboratories, et al., Civil Action No. 02-12084-PBS ("the Montana action"). The first motion, filed by plaintiffs in the MDL action ("plaintiffs"), seeks sanctions based upon Baxter's purported failure to produce documents responsive to an omnibus request in a timely manner and then producing an overwhelming number of documents at or around a June 1, 2006 deadline. In the second motion, Montana and Nevada seek to join in the foregoing motion and allege additional failures on the part of Baxter to timely respond to requests for production made in the Nevada I and Montana actions as well as in the MDL action. After conducting a hearing on September 19, 2006, this court took the motions (Docket Entry ## 2786 & 2907) under advisement.

BACKGROUND

Montana and Nevada initially filed the Montana and Nevada I actions in state court. In October 2002, both cases were transferred and consolidated with the MDL action. In June 2003, however, the court allowed Nevada's motion to remand to the extent it sought a remand of the Nevada I action and remanded the

---

[1] Prior to remand, this action was docketed as State of Nevada v. Abbott Laboratories, Inc., et al., Civil Action No. 02-12085-PBS. Baxter is not a named defendant in State of Nevada v. State of American Home Products, et al., Civil Action No. 02-12086, often referred to as the Nevada II action. (Docket Entry # 866, nn. 4 & 6; Docket Entry # 2955, ¶ 5).

Nevada I action to the Second Judicial District Court, Washoe County, Nevada.  (Docket Entry # 379).  In the same Memorandum Order, the court denied Montana's motion to remand.  Case Management Order No. 9 invited the parties in each state court case to coordinate discovery with the MDL action and thereby fully participate in all discovery activities in the MDL action. (Docket Entry # 612).  The parties in Nevada I made such an election.  (Docket Entry # 657).

The genesis of this dispute began in August 2003.  At that time, Montana served a request for production of documents upon Baxter in the Montana action and moved to compel production on September 3, 2003.  On September 23, 2003, the court denied the motion to compel.  (Docket Entry # 495).

In November 2003, Nevada served Baxter with a request for production of documents in the Nevada I action.  The majority of the 56 requests in the Montana action and the 41 requests in the Nevada I action were overly broad and burdensome.  Numerous requests included multiple subparts.[2]

In March 2004, plaintiffs served Baxter and other defendants with omnibus requests for production of documents in the MDL action.  The 84 requests served on Baxter included numerous subparts and a number of overly broad requests.  In April and May 2004, the parties continued discussions and correspondence

---

[2]  Requests 22, 26, 43 and 46 in the Montana action provide examples of the more overbroad requests.

3

relative to narrowing the requests and agreeing upon a production deadline.[3]  In July 2004, Baxter sent a 24 page single space letter to plaintiffs explaining why certain drugs should not be pursued and a proposal limiting discovery to a list of Baxter drugs set forth in an attached tab.  Inexplicably, plaintiffs did not reply to this letter until April 2005.

By letter dated April 20, 2005, plaintiffs' counsel clarified and refined the requests for sales related data. Notwithstanding the continued dispute over the drugs at issue with Baxter in the MDL action ("the subject drugs"),[4] in light of the refinement of the requests, Baxter then asked plaintiffs whether it should initially focus upon producing sales transaction data or electronic and hard copy documents. Plaintiffs preferred that Baxter initially focus on sales transaction data and Baxter complied.

Gathering the sales transaction data proved difficult but Baxter succeeded in producing sales transaction data for the subject drugs in August and September 2005.  The production consisted of 16 gigabytes of data which roughly translates into

---

[3]  Case Management Order No. 10 imposed a 60 day time limit to respond to requests for production.  (Docket Entry # 765, ¶ 4).

[4]  Although the time line is unclear, plaintiffs eventually agreed, as Baxter anticipated, to exclude six of the 19 Baxter drugs.  (Docket Entry # 2918, ¶ 5).  In early 2006, Montana, Nevada and Baxter reached an agreement to remove these same drugs from the Montana and Nevada I actions.  (Docket Entry # 2955, ¶ 9).

the equivalent of 250,000 pages of information.

Dissatisfied with the pace of Baxter's production of documents, on November 8, 2005, plaintiffs filed a motion in the MDL action to compel Baxter to produce the remaining documents responsive to the omnibus requests within 30 days. (Docket Entry # 1862). Baxter's counsel then contacted plaintiffs' counsel and the two agreed to allow Baxter until June 1, 2006, to complete production provided that Baxter produce the documents on a rolling basis as opposed to on the eve of the deadline. On November 22, 2005, plaintiffs withdrew the motion to compel without prejudice. (Docket Entry # 1901). On January 6, 2006, this court simply noted the withdrawal of the motion to compel.

In conjunction with filing the notice of withdrawal of the motion to compel, plaintiffs and Baxter filed a joint motion on November 22, 2005, seeking to extend the track II discovery with respect to Baxter. The motion requested a deadline of June 1, 2006, as the "final date for production of documents." (Docket Entry # 1899). The motion notes that the parties conferred with respect to Baxter's proposed rolling production but does not explicitly ask for production on a rolling basis. Although subsequent rulings relative to discovery make the request outdated,[5] the motion (Docket Entry # 1899) remains pending on

---

[5]   On February 3, 2006, the court entered Case Management Order No. 23 which set February 28, 2006, as the date for completion of document production in the Montana and Nevada I actions and March 31, 2006, as the close of fact discovery.

the docket.  Notably, this court did not allow the motion and
order Baxter to produce the requested documents.

On March 6, 2006, however, the court allowed Baxter's motion
(Docket Entry # 2167) to extend track II discovery as applied to
Baxter in the MDL, Montana and Nevada I actions.  The motion
requested a June 1, 2006 deadline as the "[f]inal date for
production of documents."  (Docket Entry # 2167).  In allowing
the motion on March 6, 2006, the court thereby established June
1, 2006, as the formal deadline for Baxter to produce documents.[6]
The Order did not, however, mandate a rolling production.  As
noted <u>infra</u>, Baxter did not comply with the Order because it
failed to produce all of the requested documents on or before
June 1, 2006.

The process of obtaining electronic and hard copy documents
responsive to the requests, however, proved daunting.  Baxter
nonetheless engaged in a diligent and good faith effort to
compile the relevant documents in a timely manner.  First, Baxter
obtained a list of potentially relevant Baxter employees.[7]  It
reviewed and revised the list and then sent 600 employees a
questionnaire asking about the relevant documents.  After
receiving and reviewing these responses, Baxter interviewed 550
of these employees and inventoried the pertinent documents of

---

[6]  The Order additionally set September 30, 2006, as the
final date for depositions of fact witnesses.

[7]  Baxter has more than 45,000 employees and offices
throughout the United States.  (Docket Entry # 2788, Ex.18).

6

each relevant employee.

For technical reasons, Baxter could not limit an electronic capture of documents to just the documents responsive to the requests.  Consequently, Baxter captured all of the employees' e-mail, collected hard copies of documents from individual offices, examined several shared files and located thousands of files in two archive locations.  Baxter selected hundreds of these boxes for copying and scanning.  Baxter eventually collected for review more than five million potentially relevant documents.  It produced approximately 23% of the reviewed documents as responsive to the requests in the MDL, Montana and Nevada I actions.  The production totaled nearly one million documents.

Baxter engaged more than 100 contract attorneys to review the documents.  After the contract attorneys completed their review, Baxter conducted a necessary and additional review of the documents to ascertain if any were privileged.  The documents also required conversion to a certain format and final proof reading before production of the documents to plaintiffs.  Baxter and the contract attorneys spent well over 100,000 hours working on discovery efforts[8] and Baxter expended more than $10 million on such efforts.

In accordance with a rolling production, Baxter produced certain documents on December 16 and 23, 2005, and January 19 and

---

[8]  Contract attorneys billed Baxter for 88,950 hours of work.

27, February 2, 10 and 23, March 7, 10, 17 and 23, May 11 and 30 and June 1, 2006. (Docket Entry # 2788, Ex. 22 & 24; Docket Entry # 2918, ¶ 14). Additional productions after the June 1, 2006 deadline occurred on June 19, 22, 27 and 29 and July 10, 2006. Correspondence in the Montana and Nevada I actions depict a similar rolling production of documents occurring on June 1, 6, 7, 19, and 29 and July 11, 2006. In addition to the documents produced to the MDL plaintiffs, Baxter produced another 200,000 documents responsive to the requests in the Montana and Nevada I actions. By early August 2006, Baxter had produced the majority of documents responsive to the requests in the MDL, Montana and Nevada I actions.

Baxter does not deny that the bulk of production in the MDL, Montana and Nevada I actions occurred near or shortly after the June 1, 2006 deadline. Thus, even though plaintiffs attempted to avoid such a scenario, Baxter produced ten hard drives of documents on or after May 30, 2006. Plaintiffs submit that even after the close of discovery, Baxter produced approximately 3,890,432 pages of documents.

Given the absence of a trial date for the track II defendants such as Baxter, however, plaintiffs, Montana and Nevada suffered little, if any, prejudice. Moreover, as early as March 1, 2006, they knew that Baxter had collected in excess of 6,500,000 documents potentially responsive to the requests (Docket Entry # 2167) thereby forecasting a mammoth production.

DISCUSSION

Plaintiffs, as well as Montana and Nevada, seek a default judgment as a sanction for Baxter's untimely and massive production of documents near or after the June 1, 2006 deadline. In seeking such a sanction, as well as any "other and further relief as" this court "deems appropriate" (Docket Entry ## 2786 & 2907), they rely on this court's inherent power, 28 U.S.C. § 1927 ("section 1927") and Rule 37, Fed. R. Civ. P. ("Rule 37").[9]

First and foremost, the requested sanction of a default judgment is "drastic" and customarily reserved only for "'an extreme situation.'"  Ungar v. Palestinian Authority, 325 F.Supp.2d 15, 60 (D.R.I. 2004) (quoting Luis C. Forteza e Hijos, Inc. v. Mills, 534 F.2d 415, 419 (1st Cir. 1976)), cert. denied, __U.S.__, 126 S.Ct. 715 (2005); see also Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) (dismissal ordinarily employed as sanction where "misconduct is extreme"); Farm Construction Services, Inc. v. Fudge, 831 F.2d 18, 20 (1st  Cir. 1987) (affirming dismissal for failure to produce documents but noting that dismissal for noncompliance with discovery orders is inappropriate where misconduct "has been due to inability, and not to willfulness, bad faith, or any fault of" recalcitrant

_____

[9]  They do not rely or cite the sanction authority provided under Rule 16(f), Fed. R. Civ. P., for the violation of a scheduling order.

party).  Moreover, default judgments are particularly disfavored because they contravene the policy of the law that favors "'disposition of cases on their merits.'"  Affanato v. Merrill Brothers, 547 F.2d 138, 140 (1st Cir. 1977) (addressing propriety of default judgment against the defendant under Rule 37(b)(2)(C)).  In the case at bar, the totality of the circumstances do not warrant the extreme sanction of a default judgment or, in fact, any sanction.

Turning to the cited bases for imposing a sanction, it is beyond dispute that "courts cannot effectively administer justice unless they are accorded the right to establish orderly processes and manage their own affairs" with the concomitant "authority to order sanctions in appropriate cases."  Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).  A court's "inherent powers to sanction parties for litigation abuses include the power to . . . enter default judgment."  John's Insulation, Inc. v. L. Addison and Associates, Inc., 156 F.3d 101, 108 (1st Cir. 1998).  The First Circuit in John's Insulation likened the analysis of entering a default judgment as a sanction to the process of entering a dismissal as a sanction.  Using "an open-ended balancing test," the court considers whether:

> there is extremely protracted inaction, disobedience of court orders, ignorance of warnings, contumacious conduct, . . . or some other aggravating circumstance such as prejudice to the defendant, glaring weakness in the plaintiff's case, and the wasteful expenditure of a significant amount of the district court's time.

Id. at 109.

Baxter's conduct falls significantly short of this standard. Baxter did not engage in contumacious conduct, bad faith or the wasteful expenditure of this court's time.  Imposition of a sanction would not deter others from engaging in similar conduct. Prejudice of any significant degree to plaintiffs, Montana and Nevada is notably absent.  Although Baxter failed to comply with the June 1, 2006 deadline set in the March 6, 2006 Order, Baxter acted in good faith and engaged in a concerted and expensive effort to comply with the deadline.  The delay in production and the amount of documents produced at or after the deadline was due to the global scope of the requests as well as to Baxter's inability to produce the documents within the time allotted and technical difficulties that made an electronic search for the documents using search terms difficult.

For similar reasons, Baxter has not acted "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Pan American Grain Manufacturing Co. v. Puerto Rico Port Authority, 295 F.3d 108, 117 (1st Cir. 2002); see Jones v. Hirschfeld, 348 F.Supp.2d 50, 62 (S.D.N.Y. 2004) (court has "'inherent power' to impose sanctions against parties or their counsel who have litigated in bad faith or who have willfully abused the litigation process;" citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991)); accord Whitney Brothers Company v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995) ("district court may use its inherent powers to assess

11

attorneys' fees against a party that has '"acted in bad faith, vexatiously, wantonly, or for oppressive reasons"'"). Such powers, however, "must be exercised with restraint and discretion . . . and reserved for egregious circumstances." <u>Whitney Brothers Company v. Sprafkin</u>, 60 F.3d at 13.

Baxter has not been uncooperative. <u>Cf. Jones v. Winnepesaukee Realty</u>, 990 F.2d 1, 4-5 (1st Cir. 1993) (uncooperative manner of the plaintiffs and filing patently frivolous pleadings as well as pleadings "riddled with demonstrably false allegations" justified lower court's finding of bad faith and sanctions under its inherent power). To the contrary, it engaged in a serious and concerted effort to comply with the requests.

In sum, Baxter's conduct does not warrant the sanction of a default judgment or, indeed, any lesser sanction under this court's inherent power.

Section 1927 provides a basis to assess attorneys' fees, costs and expenses upon a recalcitrant attorney. "Under section 1927, an attorney's conduct must multiply the proceedings and be 'unreasonable and vexatious' to warrant the imposition of sanctions." <u>Cruz v. Savage</u>, 896 F.2d 626, 631 (1st Cir. 1990). Although "an attorney's bad faith will always justify sanctions under section 1927," <u>Id.</u>, at 631, the statute "does 'not require a finding of subjective bad faith.'" <u>Plante v. Fleet National Bank</u>, 978 F.Supp. 59, 69 (D.R.I. 1997) (quoting <u>Cruz</u>). Rather,

it is sufficient if "an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process of justice.'" <u>Cruz v. Savage</u>, 896 F.2d at 632 (quoting <u>United States v. Nesglo, Inc.</u>, 744 F.2d 887, 891 (1st Cir. 1984)). "[U]nintended, inadvertent, and negligent acts," however, "will not support an imposition of sanctions under section 1927." <u>Id.</u> at 632; <u>accord</u> <u>Schwartz v. Millon Air, Inc.</u>, 341 F.2d 1220, 1225 (11th Cir. 2003) ("section 1927 is not about mere negligence").

Sanctions under section 1927 are inappropriate. First, plaintiffs, Montana and Nevada request the imposition of section 1927 sanctions on Baxter. The statute, however, limits the imposition of sanctions to counsel or a party proceeding pro se. <u>See</u> <u>Akyempong and Joseph Akyempong v. United States Immigration and Naturalization Service</u>, 1995 WL 520018 at * 1 (E.D.N.Y. Aug. 15, 1995) (section 1927 "does not govern the imposition of sanctions against a party"); <u>Wages v. Internal Revenue Service</u>, 915 F.2d 1230, 1235-1236 (9th Cir. 1990) (section 1927 sanctions may be imposed against party when that party is proceeding pro se); <u>Flip Side Productions, Inc. v. Jam Productions, Ltd.</u>, 843 F.2d 1024, 1035 n. 12 (7th Cir. 1988) (section 1927 "provides only for the imposition of sanctions against counsel").

Second, there is no factual basis under which to impose section 1927 sanctions. Baxter's counsel has not acted in bad faith. To the contrary, Baxter and its counsel have engaged in a

13

lengthy, time consuming and expensive effort to comply with the
global requests.  Such behavior is neither harassing nor
vexatious and certainly did not multiply the proceedings.  While
Baxter missed the June 1, 2006 deadline with respect to all of
the documents, plaintiffs, Montana and Nevada presently possess
most if not all of the responsive documents.  There has been no
resulting multiplication of the proceedings as a result of the
missed deadline.

As to Rule 37(b) sanctions,[10] the rule "requires that a
court order must be in effect, and then violated, as a
prerequisite for the imposition of sanctions thereunder."
Thibeault v. Square D Co., 960 F.2d 239, 245 (1st Cir. 1992)
(citing R.W. International  Corp. v. Welch Foods, Inc., 937 F.2d
11, 15 (1st Cir. 1991)).  The March 6, 2006 Order presents the
only possible order relating to the production of the requested
documents.[11]  Baxter violated that Order by not producing all of
the requested documents by the June 1, 2006 deadline.

By its terms, Rule 37(b)(2)(C) permits, as a sanction for
disobeying a discovery order, "rendering a judgment by default
against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(C).
Moreover, there is "nothing in Rule 37(b) that states or suggests

---

[10]   Plaintiffs cite to Rule 37(b) (Docket Entry # 2787, p.
17) as opposed to another subsection of Rule 37.
[11]   Plaintiffs', Montana's and Nevada's papers do not cite
the March 6, 2006 Order although they do note the close of
written discovery as June 1, 2006.

14

that any particular sanction can be used only after all the other sanctions have been considered or tried." Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 25 (1st Cir. 2006) (internal brackets omitted).  Rule 37(b) also lists a realm of available sanctions and gives the court the discretion to "make such orders in regard to the failure as are just."  Fed. R. Civ. P. 37(b)(2).  Absent "substantial justification" or other circumstances that make an award unjust, however, the court "shall" require the disobedient party or the attorney to "pay the reasonable expenses . . . caused by the failure."  Fed. R. Civ. P. 37(b)(2)(E).

Baxter has not engaged in repeated violations of court orders or a history of noncompliance.  Cf. Estates of Ungar ex rel. Strachman v. Palestinian Authority, 325 F.Supp.2d at 26 ("history of refusing to comply with" court's "orders and the rules of procedure governing depositions, interrogatories, and requests for the production of documents and for admissions" and "deliberate nature of conduct justified lower court's Rule 37(b) sanction requiring payment of attorneys' fees").  The need to maintain an orderly administration of justice does not warrant a default and there is little if any prejudice to plaintiffs, Montana and Nevada resulting from the noncompliance with the June 1, 2006 deadline.  See Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).  The Order does not forewarn Baxter that noncompliance will result in sanctions.  Id.  Baxter's noncompliance was inadvertent and Baxter engaged in a concerted and commendable

15

effort to comply with the deadline.  Given these as well as other factors, Baxter's conduct does not support the sanction of a default judgment or any other Rule 37(b) sanction.

Turning to the presence of substantial justification or unjust circumstances, Baxter bears the burden of "'showing that [its] failure is justified or that special circumstances make an award of expenses unjust.'"  Metrocorps, Inc. v. Eastern Massachusetts Junior Drum & Bugle Corps Association, 912 F.2d 1, 2 (1st Cir. 1990) (quoting the advisory committee notes to Rule 37(b)).  Baxter's misconduct in missing the June 1, 2006 deadline imposed by the March 6, 2006 Order was inevitable given the breadth of the requests, the manpower and effort involved to comply, the technical difficulties and plaintiffs' own failure to respond to the July 14, 2004 letter for more than ten months. Baxter acted in good faith at all times in attempting to comply with the deadline.  Plaintiffs, Montana and Nevada suffered little prejudice given the absence of a trial date with respect to Baxter and they retained the ability to depose fact witnesses up to and including September 30, 2006.  Completion of expert depositions will not take place until December 30, 2006.  See James Wm. Moore Moore's Federal Practice § 37.51[9][a] (3rd ed. 2005) (likely that party will meet burden where failure was "at the periphery of the order, and caused other parties to suffer no prejudice" or "was attributable entirely to forces or circumstances beyond the party's control").  Given the foregoing

16

as well as Baxter's significant, laudable and expensive efforts to comply with the March 6, 2006 Order, this court finds the failure substantially justified and that circumstances make an award of monetary expenses unjust.


<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[12] that the motions for sanctions and default judgments against Baxter (Docket Entry ## 2786 & 2907) be **DENIED**.



<u>/s/ Marianne B. Bowler</u>
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[12]   Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  <u>United States v. Escoboza Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

17