# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 03- |
| ASTRAZENECA PHARMACEUTICALS LP, | : |
| Defendant. | : |

### INFORMATION

The Acting United States Attorney for the District of Delaware charges that:

### Preliminary Allegations

At all times material hereto, unless otherwise alleged:

### The Defendant

1. The defendant, AstraZeneca Pharmaceuticals LP, which is headquartered in Wilmington, Delaware, is an indirect subsidiary of AstraZeneca PLC, a pharmaceutical company headquartered in England. AstraZeneca PLC was formed in 1999 through the merger of Zeneca PLC with Astra AB. Prior to that time, and during most of the time period relevant to this Information, the United States operating subsidiary of Zeneca PLC was Zeneca Inc. which had its headquarters in Wilmington, Delaware. Hereinafter, the defendant, AstraZeneca Pharmaceuticals LP, its parents, subsidiaries and prior entities, will collectively be referred to as "Zeneca."

2. From in or around 1990, and continuing through the date of this Information, Zeneca sold a drug called Zoladex in several different formulations. Like any drug, distribution of

Zoladex for human use was subject to the requirements of the Federal Food, Drug, and Cosmetic Act. At all times material hereto, Zeneca had approval to distribute Zoladex for the treatment of prostate cancer. In the marketing of Zoladex, Zeneca has employed and maintained extensive marketing and sales departments. Since at least the early 1990's, Zeneca has sold and provided the drug Zoladex to urologists across the country, including to urologists practicing medicine in the State of Delaware and to, among other urologists, Dr. Saad Antoun, practicing medicine in the State of New Jersey, and to Dr. Stanley Hopkins, practicing medicine in the State of Florida.

3. Zoladex was administered in pellet form by injection into the skin of the patient's abdomen, by a physician or a nurse under the supervision of a physician. At various times in the 1990s and continuing until the present, Zoladex was available in one month and three month doses. It was typical that a patient whose prostate cancer was being treated with Zoladex would receive regular injections of that drug for an extended period of time, often for the remainder of his life.

4. At all times material to this Information, Zeneca sold Zoladex directly to urologists, among other purchasers.

5. At all times material to this Information, it was a crime, in violation of 21 U.S.C. §§ 331(t) and 333(c) for an employee of a company engaged in the lawful distribution of drugs to provide a drug sample free of charge to a physician with the intention and expectation that the physician would use that sample in the treatment of a patient and thereafter bill either the patient or the patient's insurance company for that drug sample which had been provided to the physician free of charge.

6. Beginning in or about 1993 and continuing to at least July, 1996, the defendant, Zeneca, through its employees, provided a total of thousands of free samples of Zoladex to

2

physicians knowing and expecting that certain of those physicians would prescribe and administer drug samples to their patients and thereafter seek and receive reimbursement for those free samples.

## COUNT ONE

7. Paragraphs 1 through 6 of this Information are herein realleged and incorporated by reference.

8. From in or around 1993, through in or around at least July, 1996, in the District of Delaware and elsewhere throughout the United States, the defendant, Zeneca, together with certain of its employees, certain urologists, and others known and unknown to the Acting United States Attorney, did knowingly and willfully combine, conspire and agree to violate 21 U.S.C. §§ 353(c)(1), 331(t), and 333(b)(1)(B), by submitting, and by causing to be submitted, claims for payment for the prescription of Zoladex which had been provided as free samples to the urologists.

### Objective of the Conspiracy

9. The objectives of this conspiracy varied depending upon the participant. The core objective of this conspiracy for Zeneca was to obtain money from increased sales of Zoladex, while the core objective for the physicians was to obtain money from reimbursement for samples of Zoladex. It was an objective of Zeneca in this conspiracy to provide free samples of Zoladex to physicians as an inducement to those physicians to order Zoladex. It was an objective of some of the physicians participating in this conspiracy to bill for the free samples in order to increase their income.

### Overt Acts

3

10. In furtherance of the conspiracy, the defendant, Zeneca, and other conspirators known and unknown to the Acting United States Attorney, committed, among other acts, the following overt acts in the District of Delaware and elsewhere:

a. On various dates beginning in late 1995, and continuing until at least July 1996, employees of Zeneca provided to Dr. Saad Antoun 195 free samples of Zoladex;

b. On various dates beginning in late 1995, and continuing until at least July 1996, Dr. Saad Antoun sought and received reimbursement for samples of Zoladex which he had received free from Zeneca;

c. On various dates beginning in January, 1995, and continuing until at least July, 1996, employees of Zeneca provided to Dr. Stanley Hopkins 223 free samples of Zoladex; and

d. On various dates beginning in January, 1995, and continuing until at least July 1996, Dr. Stanley Hopkins sought and received reimbursement for samples of Zoladex which he had received free from Zeneca;

All in violation of Title 18, United States Code, Section 371.

RICHARD G. ANDREWS
Acting United States Attorney

BY: _____
Beth Moskow-Schnoll
Assistant United States Attorney

Dated:

4