Exhibit 8

STATE'S
EXHIBIT
#7

1                    IN THE UNITED STATES DISTRICT COURT

2                  IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4     UNITED STATES OF AMERICA,        :    CRIMINAL ACTION
                                       :
5              Plaintiff               :
                                       :
6              v.                      :
                                       :
7     ROBERT A. BERKMAN,               :
                                       :
8              Defendant               :    NO. 03-45 (JJF)

9                              - - -

10                                   Wilmington, Delaware
                                    Thursday, July 17, 2003
11                                  12:00 o'clock, p.m.

12                             - - -

13    BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

14                             - - -

15    APPEARANCES:

16              BETH MOSKOW-SCHNOLL, ESQ.,
                Assistant United States Attorney
17
                     Counsel for Plaintiff
18

19              TERRY K. SHERMAN, ESQ.,

20                   Counsel for Defendant

21

22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25

2

PROCEEDINGS

1

2

3

4        (Proceedings commenced in the courtroom beginning

5    at 12:00 p.m.)

6

7        THE COURT:  Good afternoon.  Be seated, please.

8        MS. MOSKOW-SCHNOLL:  Good afternoon, your Honor.

9    Now is the time the Court has set for the change of -- entry

10   of a plea hearing in the case of United States versus Robert

11   A. Berkman, Criminal Action No. 03-45.

12        I will hand forward the executed memorandum of

13   plea agreement, which also has attached a copy of the

14   settlement agreement.

15        THE COURT:  Thank you.

16        (Ms. Moskow-Schnoll handed documents to the

17   Court.)

18        THE COURT:  All right.  Mr. Sherman, Dr. Berkman,

19   do you want to step up to the podium, please?

20        MR. SHERMAN:  Thank you, your Honor.  Good

21   afternoon.

22        THE COURT:  Good afternoon.

23        THE COURT:  Doctor, if you would just take the

24   other side because I'm going to ask you some questions, by

25   where the microphone is.  That's perfect.

3

1        Doctor, as you heard, I've been told by the

2   Government that you are offering to plead guilty and I have

3   to ask you some questions so that I can satisfy myself that

4   you're competent and capable to entering this guilty plea,

5   that you understand the charges that have been brought

6   against you as well as the consequences, and that there's

7   some factual basis for you to plead guilty.  All of this is

8   done under oath, so it's important you give truthful

9   responses.

10        If it's later found out your responses were

11   untruthful, the Government can make a decision to charge you

12   with a new and separate crime, such as perjury or making a

13   false statement.

14        Do you understand that?

15        THE DEFENDANT:  Yes, I do, your Honor.

16        THE COURT:  All right.  I will have the clerk

17   administer an oath to you.

18           ... DR. ROBERT A. BERKMAN, having been

19           duly sworn, was examined and testified as

20           follows ...

21        THE COURT:  All right.  Doctor, first, I'm going

22   to ask you some questions with regard to your waiver of

23   indictment and allowing this case to proceed by an

24   information.

25        Is there a waiver that has been executed?

4

1          MR. SHERMAN:  Your Honor, there has been a

2    waiver.

3          THE COURT:  Thank you.

4          I've just been handed up what is captioned a

5    waiver of indictment, and it indicates that you have signed

6    that along with Mr. Sherman.

7          Do you recall signing this?

8          THE DEFENDANT:  Yes, I do, your Honor.

9          THE COURT:  And do you recall reviewing the

10   contents of it with Mr. Sherman?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  Now, I'm just going to review with

13   you the various paragraphs of this waiver.

14         It says here that you're accused of violating by

15   an information to be filed, 18 United States Code, Section

16   371], conspiracy to violate the Prescription Drug Marketing

17   Act, that you've been advised of the charges and your rights

18   and you're willing to voluntarily, intelligently waive

19   prosecution by indictment and allow the Government to proceed

20   against you simply by filing a piece of paper which we

21   lawyers call an information.

22         Do you understand that?

23         THE DEFENDANT:  Yes, I do, your Honor.

24         THE COURT:  Do you understand that unless you

25   waive indictment as you've indicated you're willing to do,

5

1  you couldn't be charged with these crimes unless a Grand Jury

2  were to meet and find that there was probable cause to

3  believe that you've committed the offense you're being

4  accused of and actually voted and returned an indictment

5  against you?

6            THE DEFENDANT:  I understand that, your Honor.

7            THE COURT:  Do you understand that the Grand Jury

8  is composed of at least 16, but not more than 23 lay people

9  or citizens?  At least 12 of those grand jurors would have to

10  find that there was probable cause to believe that you've

11  committed the offenses before you could be indicted, and that

12  by waiving indictment, as I've said, the Government is only

13  going to proceed -- will proceed against you only by filing

14  that sheet of paper.

15            Do you understand that, sir?

16            THE DEFENDANT:  I accept that, your Honor.

17            THE COURT:  You also understand that in waiving

18  your right to indictment, that Grand Juries actually do meet

19  and vote, and sometimes they vote not to indict a defendant.

20            Do you understand that?

21            THE DEFENDANT:  I accept that.

22            THE COURT:  All right.  Now, has anybody made you

23  any promises or has any anybody threatened you to get you to

24  do this?

25            THE DEFENDANT:  Absolutely not, sir.

6

1          THE COURT:  And could you tell me for purposes of

2   the record, you're presently employed as a physician?

3          THE DEFENDANT:  Yes, I am.

4          THE COURT:  And where are you employed?

5          THE DEFENDANT:  Columbus, Ohio.

6          THE COURT:  Have you ever been treated for any

7   type of addiction to drugs or alcohol?

8          THE DEFENDANT:  Absolutely never.

9          THE COURT:  Have you ever been treated for any

10  type of psychiatric or psychological disorder, what we would

11  commonly refer to as a mental illness?

12         THE DEFENDANT:  Never, sir.

13         THE COURT:  In the last 24 hours, have you drank

14  any alcoholic beverages?

15         THE DEFENDANT:  No, sir.  I don't drink, sir.

16         THE COURT:  All right.  Have you taken any drugs,

17  legal or illegal, that could affect your ability to

18  understand the proceedings here today?

19         THE DEFENDANT:  Absolutely not, sir.

20         THE COURT:  And you feel competent you've had a

21  fair opportunity to consult with Mr. Sherman, who's your

22  attorney in this case, and you're satisfied with his

23  representation?

24         THE DEFENDANT:  Yes, I am, sir.

25         THE COURT:  Okay.  Based on the responses you've

7

1   given me here today, then, I'm going to accept your waiver of

2   indictment, finding that you are capable to do it and

3   competent and it's being done voluntarily, without any threat

4   or coercion, and I will file it with the clerk in open court

5   at this time.

6          I'm now going to proceed to ask you some

7   questions about your offer of a guilty plea to the

8   information that the Government has filed, which is that

9   piece of paper I talked about when we spoke with regard to

10  your waiver of indictment.

11         If I asked you all of those questions about your

12  present employment, use of drugs or alcohol, all of those

13  answers would be the same as we begin to discuss this

14  criminal charge?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Have you had an opportunity to review

17  in detail the charges the Government alleges in this

18  information with Mr. Sherman?

19         THE DEFENDANT:  Yes, I have, sir.

20         THE COURT:  Are you satisfied you understand the

21  charges the Government brings against you?

22         THE DEFENDANT:  Yes, sir, I do.

23         THE COURT:  I need you to tell me in your own

24  words what conduct you engaged in that makes you believe

25  you're guilty of this information.

8

1          THE DEFENDANT:  I have violated federal law, your

2  Honor.  I should have understood that the Medicare system was

3  a reimbursement system and that it was not a for-profit

4  system.  That was my first error.

5          The second was when I was engaged in the use of

6  the medication Zoladex and the pharmaceutical company,

7  AstraZeneca, presented to me incentives relative to the

8  purchase and securement of the medication, and advising me

9  that it could be used for enhancing revenues in my practice

10  by virtue of purchase agreements and incentives and

11  implications, I accepted them, your Honor.

12          I take responsibility for that.  They purported

13  that it was appropriate.  I realize now that it was not and

14  the discounts that I received, I realize that I should have

15  reported them, but I did not.

16          THE COURT:  All right.  And you understand that

17  all of that was illegal and in violation of federal criminal

18  statute?

19          THE DEFENDANT:  Yes, sir, I now do.

20          THE COURT:  I'm going to ask the prosecutor, Ms.

21  Moskow-Schnoll, to provide us with an offer of evidence the

22  Government would have presented against you had this case

23  gone to trial.

24          Ms. Moskow-Schnoll?

25          MS. MOSKOW-SCHNOLL:  Your Honor, Astra-Zeneca

1  Pharmaceuticals lP is a pharmaceutical company headquartered

2  in Wilmington, Delaware.  The defendant is a urologist

3  licensed to practice medicine in the State of Ohio, with a

4  practice located in Columbus Ohio.

5         Zoladex is a drug used in the treatment of

6  prostate cancer.  The drug is manufactured and marketed by

7  Astra-Zeneca.  Medicare reimburses for injectable drugs such

8  as Zoladex based upon the average wholesale price or AWP for

9  such drugs as published in the pharmaceutical industry

10  reference known as the Redbook.

11         The Zoladex AWP published in the Redbook was a

12  number supplied by Astra-Zeneca.  In effect, this allowed

13  Astra-Zeneca to control the amount of reimbursement Medicare

14  paid to physicians for prescriptions.

15         Because Astra-Zeneca charged urologists less than

16  the published AWP for Zoladex, a physician could earn a

17  profit by choosing to treat a prostate cancer patient with

18  Zoladex.  Astra-Zeneca referred to this profit as return to

19  practice.

20         In addition to the return to practice, in

21  order to induce physicians to purchase or to continue

22  purchasing Zoladex, Astra-Zeneca provided free samples

23  of the drug to physicians, both intending and expecting

24  that certain of those physicians would administer the free

25  samples and thereafter bill their patients and their

10

1    patients' insurers.

2              Specifically, when Dr. Berkman stated that he

3    would switch his patients from Zoladex to Lupron if he did

4    not get a better deal from Astra-Zeneca, Astra-Zeneca

5    provided free injections of Zoladex.

6              In this way, beginning in or around February 1994

7    and continuing at least until July 1996, Astra-Zeneca sales

8    representatives provided to Dr. Berkman approximately 223

9    free one-month sample doses of Zoladex.  Each sample was

10   labeled not for retail sale and Dr. Berkman signed a sample

11   receipt card for each sample dose he received.  At least one

12   Astra-Zeneca sales representative additionally provided Dr.

13   Berkman's office with labels that Dr. Berkman's staff used to

14   cover up the not-for-resale statement on the packaging.

15             Dr. Berkman administered the free samples and

16   received approximately $84,448 in billing for the free

17   samples.

18             THE COURT:  Doctor, you've heard what the

19   prosecutor says the evidence the Government would have

20   brought against you is.

21             Do you have any strong disagreement with that

22   evidence?

23             THE DEFENDANT:  No, sir.  I have no

24   disagreement.

25             THE COURT:  Mr. Sherman?

1          MR. SHERMAN:  Well, your Honor, the free Zoladex

2    that was provided to Dr. Berkman was represented to him as

3    part of a volume discount, and that's -- and the second thing

4    I think the record ought to clearly represent is the use of

5    Zoladex by Dr. Berkman was never motivated to the patient.

6    It was motivated by the need of the patient to receive the

7    drug.

8          There was no issue that the patients that

9    received Zoladex shouldn't have received it or that treatment

10   in another fashion would have been more appropriate.

11         THE COURT:  All right.  With those two further

12   understandings of Dr. Berkman's view of the Government's

13   evidence, is there anything additional?

14         MR. SHERMAN:  Not at this time, your Honor.

15         THE COURT:  All right.  Doctor, do you agree with

16   what Mr. Sherman has told us?

17         THE DEFENDANT:  Yes, sir, I do.

18         THE COURT:  Okay.  I'm going to ask you about the

19   memorandum of plea agreement and what I guess is an

20   attachment.  It's called the Settlement Agreement Between the

21   Office of Inspector General and the Department of Health and

22   Human Services and Robert A. Berkman, M.D.

23         Have you reviewed both the memorandum of plea

24   agreement and this settlement document?

25         THE DEFENDANT:  Yes, sir, I have.

12

1           THE COURT:  And have you talked with Mr. Sherman

2   about both of these documents?

3           THE DEFENDANT:  I have, your Honor.

4           THE COURT:  And in the memorandum of plea

5   agreement, it says in Paragraph 1 that the violation you're

6   pleading guilty to carries a maximum penalty of imprisonment

7   of not more than five years and a $250,000 fine, three years

8   of supervised release and a $100 special assessment.

9           Do you understand that they're the maximum

10  penalties you're exposing yourself to buy your guilty plea

11  here today?

12          THE DEFENDANT:  I do, your Honor.

13          THE COURT:  And do you also understand that there

14  are sentencing guidelines in place in Federal Court and

15  you'll be sentenced in accordance with those guidelines

16  unless there's some reason, either that there should be a

17  departure upwardly or downwardly, which would have to be

18  justified?

19          THE DEFENDANT:  I accept that, your Honor.

20          THE COURT:  And do you understand all the

21  provisions of this memorandum of plea agreement?  This is the

22  time to ask questions about it if you don't.

23          THE DEFENDANT:  I understand it, sir.

24          THE COURT:  And on the copy that has been given

25  to me, there's a signature there.  Is that your signature

13

1    along with Mr. Sherman's?

2             THE DEFENDANT:  Yes, sir, it is.

3             THE COURT:  Now, are all the promises you've

4    received from the United States Government to get you to

5    enter into this plea agreement which relates to the criminal

6    charge and the settlement agreement with the Inspector

7    General, are all the promises or guarantees or matters in

8    exchange you've gotten contained in these two documents?

9             THE DEFENDANT:  I received no promises, sir,

10   other than the document.  It's just the document.  That's all

11   I received.

12            THE COURT:  Sometimes defendants come back and

13   they say, Well, gosh, I was told this and I know it wasn't in

14   the agreement.  But what I want to be sure is everything you

15   have discussed and been told would be given in exchange to

16   get your plea and to get the settlement agreement they're all

17   in the documents; correct?

18            THE DEFENDANT:  There was nothing else, sir.

19   Just the document.

20            THE COURT:  Is anybody threatening you or in any

21   way forcing you to plead guilty?

22            THE DEFENDANT:  No, sir.

23            THE COURT:  Has anybody promised you what the

24   sentence will be?

25            THE DEFENDANT:  No, sir.

14

1          THE COURT:  I'm now going to review with you your

2     rights as a defendant.

3          Do you understand you have the absolute right to

4     continue to plead not guilty and no one could force you to

5     plead guilty, and understand that the burden is always on the

6     United States Government to prove your guilt in this criminal

7     charge by a standard of beyond a reasonable doubt?

8          THE DEFENDANT:  I accept that.

9          THE COURT:  Do you understand that if you told me

10    that you wanted to continue to plead not guilty, that I would

11    schedule a trial and 12 jurors would be impaneled to sit and

12    hear your case?

13         THE DEFENDANT:  I'm aware of that, sir.

14         THE COURT:  Do you understand at that trial you

15    would have the right to be represented by an attorney, in

16    this case Mr. Sherman, and you could, through your attorney,

17    challenge the Government's evidence, both exhibits and

18    testimony?

19         THE DEFENDANT:  I understand that, sir.

20         THE COURT:  Do you understand that you could

21    also, through your attorney, present evidence on your behalf,

22    both witnesses and exhibits, and that you could use the power

23    of the Court to subpoena persons or documents that you

24    thought might favor your case to be forced to be brought to

25    Court here?

15

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Do you also understand, as I've told

4    you, that you don't have to do anything during the trial

5    because the burden is always on the Government, not on the

6    defendant.  And, in addition, you have an absolute right

7    against self-incrimination, so you could just sit through the

8    trial and not have to say anything.

9          Do you understand that?

10         THE DEFENDANT:  I do.

11         THE COURT:  Do you understand if you wanted to

12   testify in your cause, after consultation with your attorney,

13   you could make a decision to testify?

14         THE DEFENDANT:  Yes, sir, I understand that.

15         THE COURT:  Do you understand that for you to be

16   found guilty, all 12 jurors would have to agree that you were

17   guilty.  In other words, their verdict would have to be

18   unanimous?

19         THE DEFENDANT:  I understand that.

20         THE COURT:  Do you understand if that jury were

21   to find you guilty by unanimous vote, that you could appeal

22   their decision to a higher Court, the Court of Appeals for

23   the Third Circuit in Philadelphia?

24         THE DEFENDANT:  Yes, sir, I do.

25         THE COURT:  Do you also understand that when you

1   plead guilty, there is no appeal from the facts of the case

2   because you've admitted you're guilty.  You can appeal the

3   sentence if you believe any part or all of it is illegal, but

4   there's no appeal from your guilt or innocence determination

5   because you admitted guilt?

6               THE DEFENDANT:  I accept that.

7               THE COURT:  Do you understand that all the rights

8   I've discussed with you and your right to a jury trial are

9   being given up or waived by you by your entry of this guilty

10  plea?

11              THE DEFENDANT:  I do, sir.

12              THE COURT:  Do you also understand that as a

13  convicted felon, you are going to lose valuable civil rights,

14  such as the right to vote, the right to ever hold public

15  office and the right to ever be around or near firearms and

16  other consequences that may pertain from jurisdiction to

17  jurisdiction that I'm not mentioning here, but what I want

18  you to understand is that being a convicted felon carries

19  with it penalties in addition to the sentence that would be

20  imposed in this case.

21              Do you understand that, sir?

22              THE DEFENDANT:  I accept that.

23              THE COURT:  Mr. Sherman, do you know anything

24  else I should ask Dr. Berkman?

25              MR. SHERMAN:  No, your Honor.  I think you're

1   doing quite well.

2          THE COURT:  Ms. Moskow-Schnoll, do you know

3   anything else I should ask Dr. Berkman?

4          MS. MOSKOW-SCHNOLL:  No, your Honor.

5          THE COURT:  Dr. Berkman, based on the responses

6   you've given here today, I find you're competent and capable

7   to enter a guilty plea.  I further find that you are fully

8   aware of the charges against you and the consequences that

9   will flow from this guilty plea.  I further find there's a

10  basis in fact for you to plead guilty to this information,

11  both by your own admission of guilt and your acceptance of

12  the clarifications made by Mr. Sherman of the Government's

13  offer of proof.

14         For all of these reasons, I now adjudge you

15  guilty of the information count and ask you to indicate your

16  guilty plea by signing the information when presented it by

17  the Clerk of the Court.

18         I'm going to indicate my acceptance of your

19  guilty plea by signing the memorandum of plea agreement and

20  filing it in open court with the clerk at this time.

21         DEPUTY CLERK:  The information has been signed,

22  your Honor.

23         THE COURT:  All right.  Dr. Berkman, someone

24  from our presentence office will be contacting you as well as

25  Mr. Sherman.  It's important you cooperate with that officer

18

1  so I will have all the information you want me to have when

2  the time comes for sentencing.

3         I'm going to have sentencing scheduled by my

4  office contacting Mr. Sherman and Ms. Moskow-Schnoll and it

5  will be in approximately three months, and we'll get that

6  date probably in the next 30 days.

7         Mr. Sherman, is there anything further.

8         MR. SHERMAN:  No, your Honor.

9         THE COURT:  Ms. Moskow-Schnoll?

10        MS. MOSKOW-SCHNOLL:  No, your Honor.

11        THE COURT:  All right.  This matter then may

12  stand in recess.  I have another matter to take up.

13        (Court recessed at 12:18 p.m.)

14              - - -

15

16                              OHIO STATE MEDICAL BOARD

17                              DEC 1 6 2003

18

19

20

21        I hereby certify that the foregoing is a true
22        and accurate transcript from my stenographic
23        notes in the proceeding.
          Valerie J. Gunning
24            Official Court Reporter
              U. S. District Court
25

1

```
  1              VALERIE J. GUNNING, INC.
                 OFFICIAL COURT REPORTER
  2              844 KING STREET, LOCKBOX 24
                 ROOM 3410
  3              WILMINGTON, DELAWARE  19801
                 EIN 33-1053161
  4

  5              DECEMBER 9, 2003            OHIO STATE MEDICAL BOARD

  6   STATE MEDICAL BOARD OF OHIO              DEC 1 0 2003
      ATTN: CHUCK WOODBECK, ESQ.
  7   77 S. HIGH STREET, 17TH FLOOR
      COLUMBUS, OHIO 43215-6127
  8
      IN RE:  USA v. ROBERT A. BERKMAN
  9   CRIMINAL ACTION NO. 03-41 (JJF)
      DISTRICT OF DELAWARE
 10

 11   CHANGE OF PLEA HELD THURSDAY, JULY 17, 2003 BEFORE JUDGE
      FARNANIN IN WILMINGTON, DELAWARE.
 12
      1 COPY, 18 PAGES AT $.83 PER PAGE ------------------ $14.94
 13
      THANK YOU.
 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```