**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL NO. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS <br> 06-CV-10690-PBS <br><br> Judge Patti B. Saris <br><br> Chief Mag. Judge Marianne B. Bowler |
| THIS DOCUMENT RELATES TO: | | |
| *State of Florida, et al. v. Mylan Laboratories, Inc., et al.* | | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR REMAND**

Plaintiffs, State of Florida, Office of the Attorney General, Department of Legal Affairs (hereinafter "the Attorney General"), by and through the undersigned Assistant Attorneys General and the Relator, Ven-A-Care of the Florida Keys, Inc. (hereinafter "the Relator") filed a Motion for Remand and Incorporated Memorandum of Law to Florida Circuit Court in the United States District Court for the Northern District of Florida on January 11, 2006.[1]  This memorandum of law is submitted in support of that motion, pursuant to this Court's order dated September 11, 2006 (Docket #3090).

## I.  PRELIMINARY STATEMENT

The complaint in this case was filed in the state court by the same plaintiffs that filed the complaint in *State of Florida v. Alpharma, Inc.,* Civ. Action No. 1:05-CV-11795-PBS (hereinafter "the *Alpharma* case").  Like, the *Alpharma* case, this case asserts only state law claims under a state law reimbursement system.  There are no claims pertaining to Medicare, Medicaid rebates or Federal Upper Limits (hereinafter "FULs").  By Memorandum and Order dated September 6, 2006 this Court remanded the *Alpharma* case to the state court of Florida because "there is no actual, substantial, and disputed federal issue implicated in Plaintiff's claim . . ." *In re Pharm. Indus. Average Wholesale Price Litig.,* 2006 U.S. Dist. LEXIS 63655 at *30 (D. Mass. 2006) (hereinafter "*Alpharma* remand decision").  Because the claims herein are nearly identical to those asserted in

---

[1] Plaintiffs' Motion for Remand was fully briefed before the Northern District of Florida. Following transfer to this Court, Plaintiffs sought rebriefing to address newly decided case law and tailor briefing to First Circuit law.

2

the *Alpharma* case and comprehensively examined by this Court in its *Alpharma* remand decision, it is obvious that the instant case should be remanded also. Because Defendants refused to consent to remand, however, the issue is being rebriefed.

## II. ARGUMENT

An action "arises under" federal law within the meaning of 28 U.S.C. § 1331 if: (1) federal law creates the cause of action; or (2) the plaintiff's right to relief depends on resolution of a substantial question of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363, 2366–67 (2005); *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983). Where state law creates a cause of action, the state law claim may be treated as one "arising under" federal law only if "the state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial." *Grable & Sons Metal Prods., Inc.*, 125 S. Ct. at 2368; *see also Metheny v. Becker,* 352 F.3d 458, 461 (1st Cir. 2003) (resolution of the claim must necessarily require resolution of a substantial federal question); *Alpharma, 2006 U.S. Dist. LEXIS 63655 at \*19; Struffolino v. McCoy*, 2005 U.S. Dist. LEXIS 14158 at \*8 (D.N.H. 2005) (where plaintiff could establish his state law negligence claim based on violation of either federal or state statute, federal question jurisdiction not established). State law claims do not confer federal jurisdiction merely because they reference federal law in establishing an element of the state law claim. *Empire Healthchoice Assurance, Inc. v. McVeigh,* ___ U.S. ___, 126 S.Ct. 2121, 2137 (2006); *Merrell-Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *Alpharma*, *supra*, at \*27.

The Supreme Court recently affirmed in *Grable* that the key to federal jurisdiction in presumptively state law cases is whether the claims "<u>really and substantially</u> involve a <u>dispute or</u>

controversy respecting the validity, construction or effect of federal law." 125 S. Ct. at 2367 (quoting *Shuthis v. McDougal*, 225 U.S. 561, 569 (1912)) (emphasis added). This two-pronged initial test "a contested and substantial federal question,"— is necessary to establish eligibility for federal jurisdiction. *Grable,* 125 S. Ct. at 2367 (emphasis added). Even with that, however, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts." *Id. See Alpharma*, *supra*, at \*19; *In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 98, 108 (D. Mass. 2006). Since *Grable*, the Supreme Court has stressed that the substantial federal question basis for federal jurisdiction is a "slim category," basically involving cases where the disputed federal issue is a controlling legal question. *McVeigh*, 126 S. Ct. at 2137. A review of Plaintiffs' Amended Complaint and Defendants' removal petition demonstrates, as in the *Alpharma* case, that this case does not qualify for federal jurisdiction under the "contested and substantial federal question" test. Plaintiffs respectfully argue that the exercise of federal jurisdiction would also be inappropriate under the second step balancing described in *Grable* and circumscribed in *McVeigh*.

     **A.**    **There Are No Federal Issues Raised In This Case**

In their removal notice, Defendants to the jurisprudence governing federal jurisdiction and contend, without basis, that Plaintiffs' action necessarily raises "substantive, disputed issues of federal law" embedded in the Amended Complaint. *See* Defs. Notice of Removal, ¶ 7. According to the Defendants, these substantive and disputed issues of federal law are: the definitions of Average Wholesale Price (hereinafter "AWP") and Wholesaler Acquisition Cost (hereinafter "WAC") within the Medicaid program; the procedures for setting a FUL for pharmaceutical

reimbursement under the Medicaid program; and general federal involvement in the Medicaid program. *See* Defs. Notice of Removal, ¶ 8. In fact, however, none of these contentions withstands scrutiny, as this Court held in its *Alpharma* remand decision. Initially, the operative pricing terms derive from the Florida Medicaid program as administered by the Florida Agency for Health Care Administration (hereinafter "AHCA"). *See* Fla. Atty. Gen. Am. Compl., ¶¶ 11-25. Further, resolution of this action does not depend upon an interpretation or application of (non-existent) federal definitions of AWP or WAC, the procedures for setting a FUL, or general federal involvement in the Medicaid program.

Medicaid consists of various state programs that are jointly funded by the federal and state governments. Each state designates a single state agency that administers its Medicaid program, which is AHCA in Florida. States decide whether or not to provide pharmaceutical coverage for Medicaid recipients. *See* § 409.906(20), Fla. Stat. States determine their own Medicaid reimbursement formula. States determine where to obtain prices used for reimbursement. States decide whether and how to set state Maximum Allowable Costs.[2]

Plaintiffs' Amended Complaint alleges that from July 1, 1994, through and including

---

[2] Defendants' representation to the District Court for the Northern District of Florida that "Medicaid payment for covered outpatient prescription drugs is established by federal statute" can only be characterized as misleading. *See* Def. Mem. p. 8, (citing 42 U.S.C. §1396r-8). Section 1396r-8 is focused on the federal Medicaid rebate program, which Defendants continually and erroneously try to inject into this case. While the federal government will only allow reimbursement for drugs covered by rebate agreements, the federal statute does not "establish" that any state Medicaid program will reimburse for prescription drugs. Each state decides itself whether to pay for drugs and under what system. *See Pharm. Research & Mfr. of Am v. Walsh*, 538 U.S. 644, 650 (2003) (state plan defines the specific kinds of medical services covered); *In re Pharm. Indus. Average Wholesale Price Litig.*, 321 F. Supp. 2d 187, 195 (D. Mass. 2004) (Medicaid act does not require states to cover prescription drugs). There are no claims at issue that are based in any way upon 42 U.S.C. § 1396r-8.

June 30, 2004, the Florida Medicaid program reimbursed for pharmaceutical products based on an "Estimated Acquisition Cost" ("EAC"), which is the least of AWP less 13.25 percent plus a dispensing fee or WAC plus 7 percent plus a dispensing fee.[3]  Also calculated in the "lesser of" formula is the FUL plus a dispensing fee, the "State Maximum Allowable Cost" ("SMAC") plus a dispensing fee, and the provider's "usual and customary charge" to the public.  If any of these benchmarks is less than the lower of the adjusted AWP or WAC plus a dispensing fee, then the Florida Medicaid program reimburses at that lowest amount.  *See* Fla. Atty. Gen. Am. Compl. ¶¶ 18–21. As is true for all state Medicaid programs, however, the pharmaceutical reimbursement mechanisms were always set by the State of Florida, not the federal government. Furthermore, there is no reference to any federal pricing terms anywhere in Florida's reimbursement methodology in the Pharmacy Provider Handbook (which is adopted as administrative rule in Florida) or in the later legislation governing pharmaceutical reimbursement.  Indeed, there are no federal definitions of AWP or WAC applicable to the time frame of the Amended Complaint.  *See Pennsylvania v. TAP Pharma. Prods.,* 415 F. Supp. 2d 516, 525–26 (E.D. Pa. 2005) (remanding case including Medicare co-pay claims in part because neither Medicare nor Congress defined AWP).  Defendants' reference to AWP and WAC in the federal Medicaid program, therefore, is a red herring in terms of establishing federal jurisdiction.[4]

---

[3]     Pursuant to a legislative change effective July 1, 2004, the EAC is the lower of AWP less 15.4 percent or WAC plus 5.75 percent, whichever is less. Additionally, from July 2000 thorough April 2002, the Florida Medicaid Program reimbursed providers at AWP minus13.25 percent plus a dispensing fee.

[4]     It is patently false for Defendants to state, as they did in their submission to the Northern District of Florida, that "plaintiffs do not dispute that [their] claims depend on

Defendants' second asserted basis of jurisdiction, procedures for setting FULs, fares no better. The federal government sets reimbursement limits for specified drugs. States can either implement these Federal Upper Limits, or demonstrate that in the aggregate, they are not paying more than the established FULs for particular groups of drugs. *See* 42 U.S.C. § 1396r-8(e). While FUL is a portion of Florida's "lowest of" reimbursement methodology, the Amended Complaint does not raise any issue about FULs on the subject drugs, much less a substantial or a disputed federal issue in this case. If FULs assume a role of any significance at all, it will be a role created by Defendants, perhaps asserting that the federal government could or should have impacted prices by using FULs more extensively. The law is clear, however, that federal questions raised as a defense do not confer federal subject matter jurisdiction. *Franchise Tax Bd.,* 463 U.S. at 10-11; *Rossello-Gonzalez v. Caldron-Serra*, 398 F.3d 1, 10 (1st Cir. 2005); *Alpharma, supra, at *27; Associacion de Detallistas v. Shell Chemical Yabucoa, Inc.,* 380 F.Supp.2d 40, 42 (D. P.R. 2005). Defendants assert that mere reference to FULs in Florida's reimbursement formula is a hook for federal jurisdiction. What Defendants ignore, however, is the fact that there is <u>no issue</u> concerning FULs in Plaintiffs' action, let alone a substantial or contested issue.

The United States Supreme Court recently reaffirmed that a mere federal "element" in a case does not confer federal jurisdiction. *McVeigh*, 126 S.Ct.at 2137 ("it takes more than a

---

interpretation of key terms such as AWP, Wholesale Acquisition Cost (WAC) and Federal Upper Limits (FUL) that are employed in the federal Medicaid statute and regulations." Defs.' Mem. at 2. Plaintiffs disagree that the terms AWP and WAC in the Florida reimbursement system derive from any federal Medicaid statute or regulations or are dependent upon any interpretation of terms in federal statutes or regulations. Plaintiffs further dispute that any interpretation or construction of the term FUL is at issue in this case.

7

federal element to open the 'arising under' door" quoting *Grable*, 545 U.S. at 313).  *McVeigh* involved an action by a health insurance carrier that contracted with the federal government to provide health insurance benefits to federal employees under the Federal Employees Health Benefits Act, 5 U.S.C. § 8901, *et seq.*  The federal government paid approximately 75% of the insurance premiums.  In a wrongful death action filed under state law, after a settlement between the estate of a deceased federal employee and the tortfeasors, the insurance carrier sued for reimbursement of the deceased employee's medical benefits, objecting to an offset for attorneys' fees incurred in the underlying state tort suit.  The case had considerable ties to federal law.  The "statute [at issue] is federal, the program it creates is federal, the program's beneficiaries are federal employees working throughout the country, the Federal Government pays all relevant costs, and the Federal Government receives all relevant payments," *Id.* at 2139 (Breyer, J., dissenting).  Despite all of the apparent ties to federal law, the United States Supreme Court determined that this state court wrongful death action arising under state law was just that—a case arising under state law—and remanded the case to state court.

In *McVeigh,* the Supreme Court determined that there was no substantial, disputed federal issue.  *Id.* at 2137.  The Court distinguished *Grable* as involving one discrete legal issue, whereas *McVeigh*—like the instant case—was "fact-bound and situation-specific." *Id.* at 2137.  *McVeigh* plainly exposes the failing in Defendants' argument: the mere fact that the federal government stands to recover some indefinite sum of money depending upon the resolution of the claims does not create a federal question.  *See Municipality of San Juan v. Corporacion para el Fomento Economico de la Ciudad Capital*, 415 F.3d 145, 148 (1st Cir. 2005) (category of cases addressed by *Grable* is "narrowly drawn").

Further, "general federal involvement" in a program or issue is plainly not enough to confer federal jurisdiction. Defs. Notice of Removal, ¶ 8. As the Supreme Court held in *Grable,* "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial . . ." 125 S. Ct. at 2367 (emphasis added). *See e.g., RBM Techs., Inc. v. Lash*, 2004 U.S. Dist. LEXIS 15963 at * 7 (D. Mass. 2004) (general federal interest in copyright principles does not confer federal jurisdiction in contract case); *Gattegno v. Sprint Corp.,* 297 F. Supp. 2d 372, 375 - 76 (D. Mass. 2003) (where plaintiff did not claim that defendant lacked federal authorization to collect fees and instead premised claim on false, deceptive and misleading manner in which defendant described and collected fees, no substantial disputed federal question was raised). As this Court concluded in its *Alpharma* remand decision, federal jurisdiction cannot be established based on a "gestalt" theory of Medicaid being largely a federal program and federal issues thus somehow coming into play. *Alpharma*, *supra*, at *28.

Any reliance on *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022 (N.D. Cal. 2005) for guidance in this case is entirely misplaced. *Santa Clara* raised "two stated federal legal issues: one contractual and one statutory." *Id.* at 1025. *Santa Clara* involved claims that a county was "victimized by drug prices in excess of those allowed under a federal statute, 42 U.S.C. § 256b, and under the Pharmaceutical Pricing Agreement, a contract between the federal government and the manufacturers." *Id.* at 1025. "The contract, by its own terms, must be 'construed in accordance with Federal common law.'" *Id.* Since the instant case does not implicate a federal statute or a federal contract, *Santa Clara* is totally inapposite. Therefore, state plaintiffs with cases asserting only state Medicaid price fraud claims brought under state laws should clearly be remanded to the state courts. *See Florida v. Alpharma*, *supra*; *Missouri*

9

*v. Mylan Labs*, 2006 U.S. Dist. LEXIS 32570 (E.D. Mo. 2006); *Minnesota v. Pharmacia Corp.*, 2005 U.S. Dist. LEXIS 27638 (D. Minn. 2005); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815 (W.D. Wis. 2005); *Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F.Supp.2d 516 (E.D. Pa. 2005); *Alabama v. Abbott Labs.*, Civ. Act. No. 2:05cv647-T, Order dated Aug. 11, 2005 (M.D. Ala. 2005); *Texas v. Abbott Labs., Inc.*, 2005 U.S. Dist. LEXIS 42434 (W.D. Tex. Dec. 5, 2005).

Finally, although not referenced in Plaintiffs' Amended Complaint or in Defendants' removal notice, and thus not even cognizable as an argument against remand, in their response to Plaintiffs' motion to remand in the Northern District of Florida, Defendants argue that the existence of federal Medicaid rebates confers federal jurisdiction. Again, Defendants' position is wholly without merit. Defendants ignore the indisputable facts that there are no <u>issues</u> pertaining to rebates—and plainly no contested or substantial issues—in Plaintiffs' Amended Complaint. The parties are not arguing whether rebates were or should have been paid, or in what amount, or even whether Defendants made false statements to Florida Medicaid with regard to the rebates or the non-AWP or WAC pricing constructs used to compute rebates. As this Court observed in its *Alpharma* Remand decision, rebates come into play at most as a damages set-off. [5] This argument is insufficient to establish federal jurisdiction. *Alpharma*, *supra*, at *27.

### B. The Federal-State Balance Does Not Support Federal Jurisdiction

---

[5] Other defendants have already conceded this point, such as those in the *Alpharma* case (which was just remanded by this Court). Transcript of Hearing of January 26, 2006, p. 69 ("MR. FLEDER: And there's absolutely no doubt that if the state were to be correct that they are entitled to damages, by necessity this Court would have to get into whether the rebates were proper because we would be seeking, for certain, a setoff for any rebate payments that were made . . . .").

Should this Court revisit its holding in *Alpharma* and find that there is a substantial, disputed federal question embedded in Plaintiffs' claims, which Plaintiffs vigorously dispute, the next step in the analysis of federal jurisdiction is to ascertain whether "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Grable*, 125 S. Ct. at 2367. There are especially compelling reasons to take a cautious approach to finding federal-question jurisdiction in this case, in which the Attorney General of the State of Florida and Ven-A-Care of the Florida Keys, Inc, a Florida corporation, are the Plaintiffs and the movants for remand. The Supreme Court has stated that "considerations of comity make us reluctant to snatch cases which a state has brought from the courts of that state, unless some clear rule demands it." *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. at 22. Although this Court stated in dicta in *Alpharma* that the balancing step would "not doom Defendants' removal attempt" if a substantial, disputed federal question existed, *Alpharma*, *supra*, at *30, Plaintiffs respectfully submit that an appropriate balancing would lead to remand for the reasons discussed below.

The *Grable* Court found federal jurisdiction because (1) the meaning of the statute was the only contested factual or legal issue in the case; (2) the federal government had a strong and substantive interest in the interpretation of the federal tax provision that governed its abilities to pursue collection of taxes and pursue property of delinquents to satisfy its claims; and (3) a finding of jurisdiction in the very rare quiet title circumstances presented would "portend only a microscopic effect on the federal-state division of labor." 125 S. Ct. at 2368. In *McVeigh*, the Supreme Court emphasized the significance of these factors, finding that *Grable* involved a

11

"nearly pure issue of law," that would be settled once and for all and govern many subsequent tax sales cases. 126 S. Ct. at 2136–37.  More significantly, *McVeigh* determined that federal jurisdiction was found in *Grable* based on a legal issue regarding the action of a federal agency and its compatibility with a federal statute.  *Id.* at 2137.

The instant case does not meet those criteria for federal jurisdiction in any respect.  This case is focused solely on the acts of the pharmaceutical company Defendants and whether those acts violated state laws.  This issue is fact based.  The challenged conduct arises under the Florida Medicaid program, which set and administered its own pharmaceutical reimbursement standards. There is no federal statute or regulation that defines the pricing terms at issue or requires any state Medicaid program, including the Florida Medicaid program, to use the particular pricing constructs at issue.  As discussed above, the two federal elements tangentially related to this case—Medicaid rebates and FULs—are merely pieces of the overall pharmaceutical component of Medicaid.  However, neither of these elements are at issue and no legal determination or factual findings regarding Medicaid rebates or FULs will be made in this case.  As this court noted in its *Alpharma* remand decision, the only basis for balancing state and federal interests in favor of federal jurisdiction would be if the claims "turn[ed] on the meaning of the particular provisions of the federal Medicaid statute." *Alpharma, supra*, at *30.  Plainly that is not the case since Florida's reimbursement system is a creation of state law.  Indeed, for much of the period in question, Florida's reimbursement was based primarily on WAC prices, a term that was not used in the federal statutes.

Moreover, there is no general basis to assert federal jurisdiction over these state false claims act and Florida common law allegations.  This Court has clearly held that even under

12

Medicare—a federal program—there is no preemption of a state's ability to regulate fraudulent billing practices under state law. *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 187-88 (D. Mass. 2002); *see also Hofler v. Aetna US Healthcare of Cal., Inc.,* 296 F. 3d 764,768 (9th Cir.2002), *overruled on other grounds by Martin v. Franklin Capital Corp.*, __ U.S. __, 126 S. Ct. 704 (2005) (remanding, in part, because Congress did not manifest intent to convert state regulation of Medicare practices into federal questions).

Guidance as to how to balance state and federal interests in policing fraud and corruption in state Medicaid programs is also apparent from the overall structure of the Medicaid program and Medicaid fraud control initiatives. As this Court and others have observed, Medicaid is a unique joint federal-state program. "[S]tates have historically played a significant role in investigating and prosecuting Medicaid fraud." *In re Pharm. Indus. Average Wholesale Price Litig.,* 321 F. Supp. 2d 187, 198 (D. Mass. 2004). While states can initiate and prosecute cases in federal court, it is indisputably easier and more cost effective for a state Attorney General to prosecute in its local state court when state law permits, rather than pursue its claims in federal court and possibly become inexplicably intertwined in multi-district proceedings in a distant court. Thus the State of Florida respectfully disagrees with this Court's observation, in dicta in *Alpharma,* that the existence of an MDL proceeding is a factor supporting jurisdiction.

Furthermore, with some exceptions, states are required to establish Medicaid fraud control units, such as the Florida Attorney General's Office unit prosecuting this matter. Congress recently provided significant financial incentives for Medicaid False Claims Act recovery to states that enact false claims acts similar to the federal act, evidencing the Congressional intent to make Medicaid fraud enforcement a joint federal-state venture and place upon the states

responsibility to recover misappropriated Medicaid funds. 42 U.S.C. §1396h. Further, although Congress set standards that states must meet to qualify for these incentives, Congress made no effort to establish federal jurisdiction. When two virtually identical Florida state cases are properly pending in state court, [6] concerns of comity, uniformity and judicial efficiency all counsel remand of this case.

### C.    Given That Claims in The Instant Case and *Alpharma* Are Virtually Identical, Defendants' Refusal to Withdraw Their Remand Motion Was Baseless and Plaintiffs Are Entitled to Fees

Plaintiffs request attorneys' fees and costs in connection with proceedings on this remand motion following this Court's *Alpharma* remand decision. *See* Fed.R.Civ.P. 11. Fees should be granted where Defendants pursued a baseless motion for no legitimate reason. Here, this Court has already examined the issue of federal question jurisdiction in a virtually identical case and concluded that no such jurisdiction existed. Further, these Defendants were aware of the proper distinction this Court drew between Medicaid and Medicare, knew there were no FUL or Medicaid rebate issues in the case, and asserted baseless arguments that AWP and WAC in the Florida Medicaid reimbursement system were based on federal law, yet continued their attempt to justify removal on those issues.

### III.  CONCLUSION

Because there are no substantial disputed federal issues raised by Plaintiffs' claims, and because a balancing of federal-state interests supports allowing the Florida Attorney General to enforce Florida-based claims pertaining to the Florida Medicaid Program reimbursement system

---

[6] In addition to the *Alpharma* case, a case brought by the State of Florida and Ven-A-Care against manufacturers Dey, Roxane, and Schering is being actively litigated in state court.

in Florida courts, there is no basis for federal jurisdiction in this case. Plaintiffs' motion for remand should be granted.

Respectfully Submitted,

DATED: October 10 , 2006               By /s/ Mary S. Miller

Mark S. Thomas (FL Bar No. 0001716)
Mary S. Miller (FL Bar No. 0780420)
Assistant Attorneys General
CHARLES J. CRIST, JR.
STATE OF FLORIDA ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
MEDICAID FRAUD CONTROL UNIT
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone:850-414-3600
Facsimile:850-487-9475
ATTORNEYS FOR THE STATE OF FLORIDA

James J. Breen
Alison W. Simon
THE BREEN LAW FIRM, P.A.
Post Office Box 297470
Pembroke Pines, FL 33029-7470

Gary Azorsky
Susan Schneider Thomas
Joy P. Clairmont
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-5711
Facsimile: 215-875-4604

Jonathan Shapiro
STERN, SHAPIRO, WEISSBERG & GARIN LLP
90 Canal Street
Boston, MA

15

ATTORNEYS FOR VEN-A-CARE OF THE FLORIDA KEYS, INC.

CERTIFICATE OF SERVICE

 I hereby certify that I, Susan Schneider Thomas, an attorney, caused a true and correct copy of the foregoing to be served on all counsel of record electronically on October 10, 2006, pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LEXIS File & Serve electronic filing service. I hereby also certify that a copy hereof was furnished via U.S. Mail this 10th day of October 2006, to the following:

|  |  |
|---|---|
|  | Christopher C. Palmero<br>Kelley, Drye & Warren LLP<br>101 Park Ave.<br>New York, NY 10178<br><br>Attorney for Defendants Mylan Laboratories and Mylan Pharmaceutials, Inc. |
| Jay Shapiro<br>Christopher L. Barnett<br>Samuel O. Patmore<br>Stearns Weaver Miller Weissler Ahladeff<br>Suite 2200 - Museum Tower<br>150 W. Flagler Street<br>Miami, FL 33130 | T. Reed Stephens<br>Elizabeth I. Hack<br>Sonnenschein Nath & Rosenthal LLP<br>& Sitterson, P.A.<br>1301 K Street, N.W.<br>Suite 600, East Tower<br>Washington, DC 20005<br><br>Attorneys for Defendants Novapharm, Ltd., Teva Pharmaceutical Industries, Ltd., and Teva Pharmaceutical USA |

| | |
|---|---|
| Stephen A. Ecenia<br>Rutledge, Ecenia, Purnell & Hoffman, P.A.<br>P.O. Box 551<br>215 S. Monroe Street, Suite 420<br>Tallahassee, FL 32301<br><br>Attorneys for Alpharma, Inc., Alpharma, USPD, Inc. f/k/a Barre-National, Inc., Barre Parent Corporation, Purepac Pharmaceutical Co., Watson Pharmaceuticals, Inc. and Schein Pharmaceuticals (n/k/a Watson Pharma, Inc.) | Douglas B. Farquhar<br>Michelle L. Butler<br>Christine P. Bump<br>Hyman, Phelps & McNamara, P.C.<br>700 Thirteenth Street, N.W.<br>Suite 1200<br>Washington, D.C. 20005<br><br>Attorneys for Defendants Watson Pharmaceuticals, Inc. and Schein Pharmaceuticals<br>(n/k/a Watson Pharma, Inc.) |

/s/   SUSAN SCHNEIDER THOMAS
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
ATTORNEYS FOR VEN-A-CARE OF THE
FLORIDA KEYS, INC.