UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION:  01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO THE CLASS ACTION | ) ) | |

## ABBOTT LABORATORIES' MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFFS' THIRD PARTY SUBPOENAS

Even though Abbott has produced over a quarter of a million pages of discovery to Plaintiffs, and Plaintiffs have pending before this Court a sanctions motion complaining they have *too much* Abbott information (*see* Dkt. No. 2963), Plaintiffs are now serving yet *more* discovery on Abbott's customers – months after Track 2 discovery has closed.  Plaintiffs have subpoenaed *eleven* different entities, broadly seeking all documents and communications with Abbott, concerning all of Abbott's subject drugs (or pricing of the subject drugs), from 1991 to the present (the "Subpoenas").  This wasteful and improper foray should be stopped because:

- Even under the best possible scenario for Plaintiffs (*i.e*. the scenario Plaintiffs asked for), Track 2 discovery closed nearly three months before these Subpoenas were served.

- There is no excuse for Plaintiffs' tardiness.  Plaintiffs have long known the identity of Abbott's customers, and can offer no legitimate excuse for having delayed in seeking discovery from them.

- The breadth of the Subpoenas is overwhelming and harassing – not only to the non-party customers, but also to Abbott, who must monitor this thirteenth-hour fishing expedition.

The Subpoenas should be quashed, and a protective order should issue to prevent their enforcement.

## BACKGROUND

### 1. Plaintiffs Have Sought And Received Hundreds Of Thousands Of Pages Of Discovery From Abbott Including Nationwide Sales Data.

On March 25, 2004, Judge Saris entered CMO 10, which provided for the phasing of discovery by "track." (Dkt. No. 756, ¶ 2.) Plaintiffs were quick to take advantage of the availability of discovery. On March 31, 2004, Plaintiffs served an Omnibus Request for Production of Documents on Abbott and several other defendants – which this Court has already recognized included "a number of overly broad requests." (Dkt. No. 3177 at 3; *see* Ex. 1, Plaintiffs' Omnibus Request for Production.) In response, Abbott has produced over 250,000 pages of documents to Plaintiffs, as well as electronic national sales data – not to mention making corporate and other witnesses available for depositions and allowing Plaintiffs to interview Abbott's IT personnel. Due to the breadth of Plaintiffs' Omnibus Requests, Plaintiffs have documents and data related to Abbott customers, including those named in the Subpoenas, and should have been aware long ago that those customers might have relevant information.

### 2. Even Under The Most Generous Construction Possible, Track 2 Discovery Closed In June, 2006.

Initially, Track 2 discovery was set to close on October 3, 2005. (Dkt. No. 746, IV, ¶ 2) On March 28, 2005, in CMO 14, Judge Saris extended the close of fact discovery to December 3, 2005. (Dkt. No. 1457, ¶ 4.) On September 28, 2005, Plaintiffs moved for a "stay of Track [2] discovery" asking that the Court "tie the discovery more closely to class certification proceedings." (Dkt. No. 1741.) In the alternative, Plaintiffs requested "that the Court provide 90 additional days beyond December 3rd in order to complete Track 2 discovery…." (*Id*.) On November 21, 2005, the Court denied Plaintiffs' request for a stay and ordered the parties to submit "a stipulation on discovery relating to any non-physician-administered drugs by December 2, 2005." (Dkt. No. 1897, ¶ 4.) A later order amended CMO 16 and directed the

parties to "confer on a discovery schedule that makes sense and submit a joint and/or alternative schedule by December 9, 2005."  (Dkt. No. 1925, ¶ 3.)

Because the parties were unable to agree on a scheduling order, two competing proposals were filed.  Plaintiffs' proposal asked that the deadline for Track 2 discovery be extended to June 30, 2006.  (Dkt. No. 1955.)  Defendants argued that Plaintiffs should be held to their original position as stated in their motion for stay of Track 2 discovery – that is, an additional 90 days beyond the December 3, 2005, deadline was sufficient.  (Dkt. No. 1950-1.)  Plaintiffs filed no response.  Thus, the best case scenario for Plaintiffs with respect to a discovery cut-off would be June 30, 2006 – the date they requested in their final discovery proposal.  (Dkt. No. 1955.)

### 3. Plaintiffs Have No Legitimate Basis For Having Failed To Issue The Subpoenas To Abbott's Customers Before Now.

On September 26, 2006 – at least *three months* after discovery closed, even on the reading most generous to Plaintiffs – Plaintiffs gave notice to Abbott that they had served the Subpoenas on eleven Abbott customers.  The Subpoenas are strikingly broad in scope, seeking all documents reflecting communications with or about Abbott concerning its subject drugs; all documents relating to profits, all documents relating to AWP; all documents relating to marketing, advertising, and promotion of the Subject drugs; and all documents relating to retention of documents from eleven entities over the last one and a half decades.  These requests overlap significantly with the broad discovery already served on Abbott.  And they are well past any reasonable conception of timely.  Nor is there any evident reason Plaintiffs could not have timely served these Subpoenas.

**ARGUMENT**

The Court should enter a protective order or quash the Subpoenas for either (or both) of two reasons. *First*, the discovery deadline has passed. *Second*, the Subpoenas are duplicative and burdensome for both Abbott and Abbott's customers.

**II. ABBOTT HAS AMPLY DEMONSTRATED GOOD CAUSE TO JUSTIFY THE ENTRY OF A PROTECTIVE ORDER.**

"Rule 45 Subpoenas, which are intended to secure the pre-trial production of documents and things, are encompassed within the definition of 'discovery,' as enunciated in Rule 26(a)(5) and, therefore, are subject to all the same time constraints that apply to all of the other methods of formal discovery." *Alper v. United States*, 190 F.R.D. 281, 284 (D. Mass. 2000) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus. Inc.*, 177 F.R.D. 443, 443 (D. Minn. 1997)) (internal quotes and emphasis omitted). "The issue is not one of privity between a party and the subpoenaed third-person, but is one of case management under [Fed. R. Civ. P.] 15 and 26." *Id.* at 445; *accord Williams v. Weems Cmty. Mental Health Ctr.*, 2006 WL 905955, *1 (S.D. Miss. Apr. 7, 2006) ("Plaintiff seeks to compel the Defendants to adhere to the discovery deadline previously imposed by the court. There being no standing problem in such a motion, the court will consider it as such."). Accordingly, Abbott has standing to seek a protective order blocking enforcement of these Subpoenas.[1]

A protective order should issue where, as here, there is a showing of "good cause." *See, e.g., id.* at *2. This burden is easily satisfied by demonstrating that the discovery deadline has passed. *See Marvin Timber*, 177 F.R.D. at 445 (granting motion for protective order based on expiration of discovery deadline); *Williams*, 2006 WL 905955 at *2 (same); *see also Alper*, 190

---

[1] Indeed, even if a party does not have standing to quash a Rule 45 subpoena, that party may still oppose the subpoena by motion for a protective order predicated on passage of the discovery deadline. *See id.* at 445 n.2 ("There *can be no question* as to the standing of [a party] to seek protection from discovery gone away.") (emphasis added).

F.R.D. at 284.  ("At bottom, Plaintiff cannot now obtain through one means, Rule 45, what he has been precluded from obtaining through another, the expired discovery schedule.").  Abbott, as a party in this matter, has an interest in enforcement of the Track 2 discovery deadline. *Williams*, 2006 WL 905955 at *1.  That deadline has passed, and Plaintiffs cannot contend otherwise.  In the dueling proposals for closure of Track 2 discovery, Defendants contended the date should be March 3, 2006, and Plaintiffs contended the date should be June 30, 2006.  Nobody urges extending discovery into late September, 2006.  Accordingly, *even if Judge Saris granted Plaintiffs' requested extension, the discovery deadline for Track 2 would have been June 30, 2006.*  Track 2 discovery has long been closed.  It should come as little surprise then that Plaintiffs' counsel declined to contradict defense counsel on this point during the class certification hearing before Judge Saris on September 12, 2006:

> THE COURT: Is discovery closed for Track 2?
> MR. DODDS: Yes, it is, your Honor. The discovery has been done.
> The work has been done.

(Ex. 2, Transcript of 9/12/2006 Hrg. at 55.)

Finally, there is simply no justification for Plaintiffs' delay in issuing the Subpoenas. The identity of these customers and the possibility that Abbott's customers may have relevant documents has been known for almost 2 years.  Plaintiffs, who sat idly by as the clock (even under their own generous view) ticked down to zero, cannot now be heard to complain.  In fact, Judge Saris has stated as much with regard to Track 2 subpoenas directed at third parties.  *See* Saris Order of 09/29/06 ("Denied as the motion is untimely" and "defendants have known since March that production was incomplete from their point of view.").  The Court should issue a protective order precluding this untimely new discovery.

### III. THE SUBPOENAS SHOULD ALSO BE QUASHED BECAUSE THEY ARE DUPLICATIVE AND BURDENSOME.

Abbott also has standing to seek quashing of the Subpoenas under Rule 45, because they are duplicative and burdensome. As noted in *Marvin Lumber*, "[t]he obligation of a party to monitor an opponent's discovery . . . is no less burdensome or expensive than that demanded by the other methods of formal discovery and, in fact, can be considerably more burdensome and expensive than those forms of discovery which are unquestionably regulated by Rule 16." 177 F.R.D. at 445. Moreover, Abbott may be forced to expend resources itself in responding to these untimely Subpoenas. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("To the extent that Defendants would be required to incur third party discovery costs that rise to the level of an undue burden for Defendants, Defendants have standing to quash on those grounds."). Given the breadth, burden, and timing of Plaintiffs' new requests, any expenditure in response to the Subpoenas should be considered undue and burdensome.

*First*, the Subpoenas request documents that overlap with Plaintiffs' previous document requests. Although Plaintiffs' document requests never specifically named the Abbott customers that are the subject of Plaintiffs' Subpoenas, Plaintiffs have documents related to these customers and Abbott's sales data specifically names these customers. Moreover, the sales data produced by Abbott nearly two years ago provides *national* sales data for the subject drugs to *all* of Abbott's customers for nearly a decade. Furthermore, in a corporate representative deposition of Michael Sellers taken almost a year ago, Plaintiffs' counsel specifically asked how to determine who are Abbott's largest customers. The witness stated that one would have to look at the sales data to make this determination, and even named the IT person that Plaintiffs' counsel interviewed over a year ago as the individual responsible for pulling such information.

*Second*, Plaintiffs could have served similar document requests on Abbott well over a year ago relating to these specific customers.  In fact, of the eleven entities Plaintiffs hit with the subpoenas, some deal exclusively (or almost so) with hospitals – transactions that are not even relevant to this litigation.  Plaintiffs' failure to employ proper discovery devices, opting instead to burden Abbott's customers with subpoenas at this late date, is inexcusable.

In sum, because Abbott will certainly feel the burden of these broad and tardy Subpoenas, Abbott has standing to seek to quash them, and they should be quashed.

## CONCLUSION

Abbott respectfully requests that is motion be granted, that the Court enter a protective order barring Plaintiffs from enforcing, prosecuting, or executing the Subpoenas, and in addition (or in the alternative), that the Court quash Plaintiffs' Subpoenas.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, Abbott Laboratories hereby requests oral argument on this Motion.

Dated:  October 10, 2006

Respectfully submitted,

/s/ Brian J. Murray
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7306

*Counsel for Defendant Abbott Laboratories*

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(A)(2), I certify that the moving parties have communicated with counsel for Plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

      /s/ Brian J. Murray

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing ABBOTT LABORATORIES' MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFFS' THIRD PARTY SUBPOENAS was served on all counsel of record electronically by causing same to be posted via LexisNexis this 10th day of October, 2006.

In addition, ABBOTT LABORATORIES' MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH PLAINTIFFS' THIRD PARTY SUBPOENAS was served, via FedEx, upon the following:

Amerinet, Inc.
c/o CT Corporation System
120 South Central Avenue
Clayton, MO

Apria Healthcare Group, Inc.
c/o National Registered Agents, Inc.
2030 Main Street, Suite 1030
Irvine, CA 92614

Gerimed, Inc.
c/o H. Joseph Schutte
9505 Williamsburg Plaza
Louisville, KY 40222

Healthtrust Purchasing Group, LP
c/o CT Corporation System
800 S. Gay St., Suite 2021
Knoxville, TX 37929

Managed Healthcare Associates, Inc.
c/o Corporation Trust Company
820 Bear Tavern Road
West Trenton, NJ 08628

Medassets, Inc.
c/o CT Corporation System
1201 Peachtree St. N.E.
Atlanta, GA 30361

Novation LLC
c/o CT Corporation System
350 N. St. Paul St.
Dallas, TX 75201

Omnicare, Inc.
c/o CSC-Lawyers Incorporating Service
421 West Main Street
Frankfort, KY 40601

Pharmaceutical Buyers, Inc.
c/o The Prentice Hall Corporation System, Inc.
1560 Broadway
Denver, CO 80802

Pharmacy Factors of Florida
c/o CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324

Premier, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

This 10th day of October, 2006.

/s/ Brian J. Murray