UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO ALL ACTIONS. | MDL No. 1456 <br><br> CIVIL ACTION:  01-CV-12257-PBS <br><br> Judge Patti B. Saris <br> Magistrate Judge Marianne B. Bowler |

**PLAINTIFFS' OPPOSITION TO THE TRACK 1 DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' EXHIBITS  RELATING TO THE CONDUCT OF NON-TRACK 1 DEFENDANT PHARMACEUTICAL COMPANIES**

This is a bench trial before a Court who is intimately familiar with the facts alleged, the parties' positions regarding the import of those facts, as well as, by virtue of the review of thousands of pages of expert reports, the pharmaceutical industry generally.  Despite the posture of this trial, Defendants seek to exclude Plaintiffs from introducing evidence, because Defendants claim they will be "unfairly prejudiced" by their admission, in the form of documents produced by GlaxoSmithKline ("GSK") and some Track 2 Defendants, to show how *these Defendants* knew that their actions in marketing the spread for *their* drugs injured members of Class 2 and Class 3.  But simply because Defendants do not like what these documents say about pharmaceutical company marketing tactics does not mean that they should be excluded at trial.

Specifically, Track 1 Defendants ask this Court to exclude Plaintiffs' exhibits produced by Track 2 Defendants and by Defendant GSK for three reasons.  First, Defendants claim that the exhibits are irrelevant.  Second, they argue that they are inadmissible hearsay.  Third, they claim that they are unfairly prejudicial.  However, because under Mass. Gen. Laws Chapter 93A

- 1 -

Plaintiffs must prove that Defendants' actions were unfair – which includes, among other factors, an inquiry into whether their conduct caused substantial injury to members of Class 2 and 3 – Plaintiffs are entitled to examine Defendants' witnesses regarding whether they themselves viewed their conduct or the conduct of other pharmaceutical companies as injuring the public. Therefore, Defendants' relevance argument fails.  Likewise, because Plaintiffs do not seek to admit these documents for the truth of the matter asserted within them, Defendants' hearsay argument also lacks merit.  Finally, Defendants will not be "unfairly prejudiced" by having to answer questions regarding whether they knew that such actions would injure third-party payors, especially since Plaintiffs will likewise prove at trial that these Defendants engaged in these same tactics.  Indeed, part of what Plaintiffs will prove at trial is that Defendants increased the spread in order to gain market share from some of these competitors for their own Subject Drugs. For all of these reasons, Defendants' motion in limine should be denied.

## I.   THE EXHIBITS AT ISSUE

Contrary to Defendants' vanilla representations about the contents of the exhibits at issue (*i.e.,* claiming they are related to "reimbursement" and "what happens when [a pharmaceutical manufacturer] raises prices"), they are actually documents that show the reactions of Defendants' competitors to marketing the spread between WAC and AWP and show that at least certain market participants knew these actions would result in members of Class 2 and Class 3 being overcharged for Defendants' drugs.

- Exhibit 905-908 (GSK).  These are letters exchanged between the General Counsel of SmithKline Beecham ("SKB") and counsel at Glaxo starting with a February 6, 1995 letter from Glaxo to SKB stating that Glaxo intended to challenge SKB's marketing of Kytril with the FDA.  Specifically, page 345 of Exhibit 905 includes a statement that "a significant number of these [SKB] pieces . . . contain direct statements or make references as to how institutions can increase their 'profits' from Medicare through the use of Kytril. . . . This raises

- 2 -

significant fraud and abuse issues which I am sure you will want to investigate." *See also id.* at 388 (attaching offending document). The responses from SKB to Glaxo also challenge Glaxo's promotion of Zofran, including Glaxo's practice of raising the AWP for Zofran and simultaneously fully discounting the increase to physicians. Ex. 907 at 541. SKB's response states that "[a]bsent any other tenable explanation, this adjustment appears to reflect an intent to induce physicians to purchase Zofran based on the opportunity to receive increased reimbursement from Medicare and other third party payors." *Id.*

- Exhibit 963 (Dey). This is a Complaint filed by Dey against First DataBank, Inc. ("FDB") alleging that, beginning in April 2003, FDB tortiously interfered with contracts between Dey and its customers by arbitrarily changing Dey's AWPs. The Complaint contains statements that acknowledge the ubiquity of AWP in the marketplace such as that "[t]he vast majority of prescription drug transactions – as much as 85% - are covered, in whole or in part, by third-party payor reimbursement arrangements such as managed care plans and Medicaid." It also states that "[b]oth Medicaid and the private insurance system rely on the reimbursement formulas that utilize the AWP." *Id.* at ¶¶ 14-16.

- Exhibit 964-965 (Immunex). Exhibit 964 is a February 21, 1997 memo that sets forth, on a drug-by-drug basis, how Immunex could market the spread to providers. Exhibit 965 is a document entitled "Health Care Policy Fast Facts" that explains the process that begins with the announcement of AWP by manufacturers and ends with the resulting publication of AWP by the publishers. It also includes a statement that "physician's offices use their own charge schedule for billing purposes, and get reimbursed at AWP."

- Exhibit 975 (Baxter). This is an in-house memo that describes the actions of Baxter's (unnamed) competitors of marketing the spread. It concludes by saying that "[t]he deliberate manipulation of AWP or WAC prices is a problem that we need to address. The spread between acquisition cost and AWP/WAC is direct profit for customers, and is being used to increase product positioning in the market by certain manufacturers."

Notably, all of these documents share one thing in common: they acknowledge that AWP is a benchmark for reimbursement in the Medicare and private payor contexts and show that manipulating AWP results in injury to members of Class 2 and Class 3. It is irrelevant that these are not documents produced by the Track 1 Defendants: they may still be used at trial to examine witnesses regarding whether *they* believed this type of conduct had similar effects in the marketplace. They may also be used at trial to contest Defendants testimony to the contrary.

## II. THE EXHIBITS DEFENDANTS SEEK TO EXCLUDE ARE RELEVANT TO DEFENDANTS' KNOWLEDGE THAT THEIR CONDUCT WOULD CAUSE SUBSTANTIAL INJURY

Defendants are simply wrong that the exhibits at issue are irrelevant to anything Plaintiffs must prove at trial. Under Section 93A Plaintiffs must prove that Defendants' conduct was unfair or deceptive. One of the factors Massachusetts considers in whether conduct is unfair is whether it causes substantial injury to ***consumers, competitors*** or other business people. *PMP Assocs. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 321 N.E.2d 915, 918 (1975). *See also Leardi v. Brown*, 394 Mass. 151, 156, 474 N.E.2d 1094, 1099 (1985) ("In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public.") (quoting *P. Lorrilard Co. v. FTC*, 186 F.2d 52, 58 (4th Cir. 1950)). One of the many ways Plaintiffs intend to prove that Defendants' actions caused substantial injury is to show, through Defendants' own documents and through the documents Defendants seek to exclude, that Defendants ***knew*** their own conduct would cause this injury.[1]

---

[1] In support of their argument that these exhibits have "no relevance" to the issues at trial, Defendants cite *United States v. Vallejo*, 237 F.3d 1008, 2001 U.S. App. Lexis 554 (9th Cir. 2001). In *Vallejo*, the Ninth Circuit held that drug trafficking evidence should not have been admitted by the trial court "*where such evidence is not otherwise probative of a matter properly before the court.*" *Id.*, at *2. (emphasis added). As set forth above, this is not the case here.

- 4 -

### III. PLAINTIFFS DO NOT SEEK TO OFFER THE EXHIBITS DEFENDANTS SEEK TO EXCLUDE FOR THE TRUTH OF THE MATTER ASSERTED

Defendants admittedly assume that the exhibits at issue are "apparently offered" to prove the truth of the matter asserted. As explained above, this is not the case. Therefore, the exhibits are not hearsay.[2]

### IV. DEFENDANTS WILL NOT BE "UNFAIRLY PREJUDICED" BY THE INTRODUCTION OF THE EXHIBITS THEY SEEK TO EXCLUDE

Finally, Defendants will not be, as they spend the bulk of their brief arguing, "unfairly prejudiced" by the introduction of documents that describe the views of Defendants' competitors of the effects of marketing the spread on members of Class 2 and Class 3. This is particularly true with regard to a bench trial conducted by a Court who has gone to extraordinary lengths to educate itself about the facts in this case and is therefore unlikely to be "misled" by their use.[3]

Defendants similarly suggest that this Court should use Fed. R. Civ. P. 403 to limit evidence generally in this case. There is no question that this Court will. However, the

---

[2] For this reason Defendants are likewise incorrect that the Dey Complaint is inadmissible hearsay. Defendants rely upon *Century "21" Shows v. Owens*, 400 F.2d 603 (8th Cir. 1968) and *Stevenson v. Hearst Consol. Publ'ns, Inc.* 214 F.2d 902 (2d Cir. 1954). In both of those cases, the parties sought to introduce court documents for the truth of the matter asserted, which Plaintiffs do not seek here. *See Century "21,"* 400 F.2d at 609 and *Stevenson*, 214 F.2d at 907. Defendants likewise claim that, if these exhibits were offered for the truth of the matter asserted, they are not subject to the co-conspirator exception of Fed. R. Evid. 801(d) (2) because "[t]his is not a conspiracy case." However, as the exhibits are not offered for this purpose, the Defendants' arguments are irrelevant.

[3] Notably, all of the cases Defendants cite for the proposition that they will be "unfairly prejudiced" involved jury trials. The general rule for bench trials is that risk of prejudice is not a proper ground for excluding evidence under Rule 403. *See e.g., Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994). Despite this rule, the Defendants cite two cases where the court excluded evidence that might unduly influence the jury, *Staniewicz v. Beecham, Inc.*, 687 F.2d 526 (1st Cir. 1982) and *Silva v. Showcase Cinemas Concessions*, 736 F.2d 810 (1st Cir. 1984). In *Silva*, the court excluded evidence that the plaintiff's assailant had been convicted of manslaughter because its probative value was outweighed by its potential prejudice *to the jury*. *Silva*, 736 F.2d at 813. Likewise, in *Staniewicz*, when weighing the probative and prejudicial value of a piece of evidence in an age discrimination suit, the court held that "there [was] too great a danger in [that] case that *the jury* would look at a document like this as the answer…" Staniewicz, 687 F.2d at 529-30 (emphasis added). Similar dangers do not exist here.

- 5 -

appropriate way to limit evidence is to evaluate its probativeness or its tendency to be duplicative on a case-by-case basis at trial, not to exclude in a wholesale fashion otherwise relevant evidence. *Dente v. Riddell, Inc.,* 664 F.2d 1, 5 (1st Cir. 1981).[4]  A court cannot adequately assess either the probative value or the potential prejudice of the statements at a pre-trial stage of the proceedings. *United States v Rastelli,* 653 F. Supp 1034, 1053 (E.D.N.Y. 1986).  It is only during trial that the nature and extent of the proof, and how the party intends to use the evidence in question will be clear and will enable the court to best perform the balancing process contemplated by Fed. R. Evid. 403.  *United States v. Anderson*, 575 F. Supp. 31, 33 (S.D.N.Y. 1983), *United States v. Vastola*, 670 F. Supp. 1244, 1262 (D.N.J. 1987).  Generally, a balancing of the value and effect of evidence is most effectively done at trial, when it can be evaluated in the factual context of the case and the defenses put forward. *See e.g., Luce v. United States*, 469 U.S. 38, 41 (1984).  And if Defendants are truly interested in a less "protracted" trial, they can look to their own list of 985 exhibits.

Defendants further suggest that the introduction of these mere *seven* exhibits will "force" Defendants to rebut them by introducing additional exhibits and witnesses.  Defendants'

---

[4] *United States v. IBM Corp.*, 87 F.R.D. 411 (S.D.N.Y. 1980), relied on by Defendants, involved a defendant who sought to call roughly 120 additional witnesses who had not been disclosed on its witness list to lay foundation for exhibits which the court had previously excluded from evidence, in an attempt to have the court reconsider that ruling. *Id.* at 413-14.  Similarly, *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 10 (D. Conn. 1977) dealt with the issue of an "overwhelming" amount of evidence.  Indeed, contrary to the Defendants' assertion that it is up to the "court to police evidence," the court in *SCM* held that "the purpose of the rule can best be achieved by considering time in the aggregate and leaving to counsel the initial responsibility for making individualized selections as to the relative degree of probative value from the mass of evidence available." *Id.* at 13-14. When the court has put time limits on a party's case, "it is the task of counsel, not the Court, to make the selection of materials most appropriate for introduction into evidence." *Id.* at 12-13.

argument is a non-starter: preparing for an additional seven documents surely will not so drastically affect Defendants' trial preparation.[5]

WHEREFORE Plaintiffs respectfully request that this Court DENY The Track 1 Defendants' Motion In Limine To Exclude Plaintiffs' Exhibits Relating To The Conduct of Non-Track 1 Defendant Pharmaceutical Companies, and all other relief that this Court deems just and proper.

DATED:  October 16, 2006

By: /s/  Steve W. Berman
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

---

[5] Defendants cite a slew of cases for the twin propositions that evidence related to "tangential" issues should be excluded and that evidence relating to factual propositions different than those before the Court should be excluded. But, though no one disputes those general propositions, none of those cases deal with the situation posed by the introduction of the exhibits Defendants seek to exclude. Instead, the evidence sought to be admitted in those cases was either wholly irrelevant to the issues before the court, available in a redacted form, or would have caused considerable delay. See *Stathos v. Bowden*, 728 F.2d 15 (1st Cir. 1984); *United States v. Beauchamp*, 986 F.2d 1 (1st Cir. 1993); *Northside Mercury Sales & Serv., Inc. v. Ford Motor Co.*, 871 F.2d 758 (8th Cir. 1989); *Poling v. Morgan*, 829 F.2d 882 (9th Cir. 1987); *Cameron v. Otto Bock Orthopedic Indus.*, 43 F.3d 14 (1st Cir. 1994); *United States Fid. & Guar. Co. v. Baker Material Handling Corp.*, 62 F.3d 24 (1st Cir. 1995) and *Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir. 1984).

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street
Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

CO-LEAD COUNSEL FOR PLAINTIFFS

- 8 -

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**

Docket No. MDL 1456

      I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on October 16, 2006, I caused copies of **PLAINTIFFS' OPPOSITION TO THE TRACK 1 DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' EXHIBITS RELATING TO THE CONDUCT OF NON-TRACK 1 DEFENDANT PHARMACEUTICAL COMPANIES** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

                                                          /s/ Steve W. Berman
                                                         Steve W. Berman