## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | MDL No. 1456 <br><br> Master File No. 01-CV-12257-PBS <br><br> Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS |  |  |

### <u>DECLARATION OF ADEEL A. MANGI</u>

I, Adeel A. Mangi, declare as follows:

1.    I am associated with Patterson Belknap Webb & Tyler LLP, counsel for Johnson & Johnson, Centocor Inc., and Ortho Biotech Products, L.P.  I submit this declaration in support of The Track 1 Defendants' Emergency Motion to Compel Plaintiff Blue Cross Blue Shield Of Massachusetts To Produce Susan Pierce For Deposition.

2.     Attached as Exhibit 1 is a copy of Case Management Order 19.

3.    Attached as Exhibit 2 is a copy of the subpoena served by defendants on BCBSMA dated December 9, 2006.

4.    Attached as Exhibit 3 are relevant excerpts from the transcript of the May 9, 2006 hearing before Magistrate Judge Bowler relating to defendants' motion to compel the production of specific documents from BCBSMA.

5.    Attached as Exhibit 4 are copies of letter from counsel for Blue Cross Blue Shield of Massachusetts ("BCBSMA") dated June 30, August 18 and October 2, 2006 accompanying document productions made on those dates.  Those document productions were unrelated to the areas of discovery that are the focus of this motion.

6.      BCBSMA produced James Fanale for deposition on June 9, 2006 and produced Michael Mulrey for deposition as a corporate representative on October 5, 2006.  Those depositions were unrelated to the areas of discovery that are the focus of this motion.

7.      On October 4, 2006 BCBSMA produced Kenneth Arruda as a Rule 30(b)(6) witness to testify with regard to specific topics relating to Medigap and premium setting.  Those narrowed topics were identified in a letter to counsel for BCBSMA dated August 22, 2006 attached as Exhibit 5.

8.      Mr. Arruda was the first witness produced by BCBSMA who was designated to testify with regard to its Medigap products and premium setting.

9.      In the run-up to Mr. Arruda's deposition, BCBSMA produced documents relevant to Medigap and premium setting on September 29, 2006 and October 3, 2006.  Copies of the letter and email accompanying those production are attached as Exhibits 6 and 7.

10.      At Mr. Arruda's deposition it emerged that had reviewed memoranda relating to premium rate setting in advance of the deposition that had not been produced.  Defendants demanded on the record the production of those documents – authored by BCBSMA employee Lucinda Lewis – and they were produced in the course of the deposition.

11.      Attached as Exhibit 8 is a letter sent by defendants to counsel for BCBSMA dated October 7, 2006 detailing the bases for seeking the deposition of Susan Pierce.

12.      Attached as Exhibit 9 is a letter from counsel for BCBSMA dated October 12, 2006 refusing to produce Ms. Pierce for deposition.

13.      Attached as Exhibit 10 are copies of documents produced by BCBSMA in the course of Mr. Arruda's deposition, which were authored by Lucinda Lewis.

14.      Attached as Exhibit 11 is an email sent to counsel for BCBSMA notifying them

1316374v1

that a motion to compel the deposition of Ms. Pierce would be made shortly.

I declare under penalty of perjury that the foregoing is true and correct.


_____ /s/ Adeel A. Mangi_____

Executed on this 16th day of October 2006

1316374v1

# Exhibit 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>Civil Action No. 01-12257-PBS |
| | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | Chief Mag. Judge Marianne B. Bowler |

### [PROPOSED] CASE MANAGEMENT ORDER NO. 19

December 29, 2005

Saris, U.S.D.J.

WHEREAS, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("Pirelli") and Sheet Metal Workers National Health Fund ("SMW") were named as plaintiffs in the Third Amended Complaint dated October 17, 2005;

WHEREAS, this Court granted Plaintiffs' Motion to Include Pipefitters Local 537 Trust Funds ("Pipefitters Local") as a plaintiff on December 5, 2005;

WHEREAS, the parties have stipulated, and the Court hereby orders, that Blue Cross/Blue Shield of Massachusetts ("BCBS of MA"), Pirelli and SMW shall also be included as plaintiffs in this litigation;

WHEREAS, Defendants served initial document requests and Rule 30(b)(6) notices on BCBS of MA, Pirelli and SMW on or before December 14, 2005.

The schedule for discovery of Pipefitters Local, Pirelli, SMW and BCBS of MA , is as follows:

1.      Pipefitters Local, Pirelli, SMW and BCBS of MA shall produce claims data, provider contracts, electronic fee schedules, and documents showing that they purchased physician-administered drugs based on AWP by December 30, 2005.

2.      Pipefitters Local, Pirelli, SMW, and BCBS of MA shall produce witnesses for Rule 30(b)(6) depositions by January 13, 2006.

3.      Defendants shall serve any non-party subpoenas relating to Pipefitters Local, Pirelli, SMW and BCBS of MA by January 20, 2006.

1243237v1

3

4.    Document production by Pipefitters Local, Pirelli, SMW and BCBS of MA shall be substantially completed by March 1, 2006.

5.    Depositions of Pipefitters Local, Pirelli, SMW and BCBS of MA shall be completed by April 15, 2006. To the extent that any of Pipefitters Local, Pirelli, SMW or BCBS of MA have previously provided testimony on issues related to their adequacy as a class representative in this case, the witness(es) shall not be re-deposed on these issues, except (i) to the extent documents or data relevant to their adequacy as a class representatives were or are produced after the deposition and on or prior to December 30, 2005, (ii) if the parties so agree, or (iii) by order of the Court.

6.    All other aspects of the track one schedule shall remain in place.


Dated: December __, 2005

_____
Hon. Patti B. Saris
United States District Judge

# Exhibit 2

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION : : : : : : : THIS DOCUMENT RELATES TO THE MASTER CONSOLIDATED CLASS ACTION : : : : : | **SUBPOENA IN A CIVIL CASE** MDL NO. 1456<br><br>Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris (case pending in D. Mass.) |

TO:    Blue Cross and Blue Shield of Massachusetts
       Landmark Center
       401 Park Drive
       Boston, MA 02215

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   See deposition topics at Schedule B, attached hereto.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Blue Cross and Blue Shield of Massachusetts<br>Landmark Center<br>401 Park Drive<br>Boston, MA 02215 | December 30, 2005 at 9:30 am |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
       See documents to be produced at Schedule A, attached hereto.

| PLACE | DATE AND TIME |
|---|---|
| Blue Cross and Blue Shield of Massachusetts<br>Landmark Center<br>401 Park Drive<br>Boston, MA 02215 | December 29, 2005 at 9:30 am |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Erik Haas* /AM<br>Attorney for Defendants Johnson & Johnson, Centocor Inc. and Ortho Biotech Products L.P., on behalf of all defendants to the Amended Master Consolidated Class Action Complaint | December 9, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER: Erik Haas, Patterson, Belknap, Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036. (212) 336 2000.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party service the subpoena shall not be entitled to inspect and copy materials or inspect the premises expect pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i)     fails to allow reasonable time for compliance;
(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv)    subjects a person to undue burden.

(B) If a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii)   requires a person who is not a party of an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS

1.      "Blue Cross and Blue Shield of Massachusetts" ("BCBS") means BCBS and any of its past or present trustees, officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

2.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

3.      "AWP" or "Average Wholesale Price" means the amounts listed for drugs under such designations in publications by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank" or "Blue Book") and Medi-Span's Master Drug Database ("Medi-Span").

4.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

5.      "Concerning" means referring to, describing, evidencing, or constituting.

6.      "Copy" or "Copies" when used in reference to a document means any color or black-and-white reproduction of a document, regardless of whether the reproduction is made by means of carbon paper pressure, sensitive paper, photostat, xerography, or other means or process.

7.      "Document" means the original and each non-identical copy of a document in any medium, including electronic form, whether or not it was communicated to any person

1

other than the author, and shall include but not be limited to, writings, printings, photographs, photocopies, tapes, recordings, video recordings, electronic data, e-mails, and any other symbolic representations in your possession, custody or control or known or believed by you to exist.

8.     "HCPCS" means the Healthcare Common Procedure Coding System.

9.     "Manufacturer" means a company that manufactures pharmaceutical products, including, without limitation, all drugs listed in Exhibit A hereto.

10.    "NDC" means National Drug Code.

11.    The terms "Participant" and "Beneficiary" mean a person for whom a health plan or health and welfare fund provides any medical or health insurance benefit.

12.    "Person" means any natural person or any business, legal, or governmental entity or association.

13.    "Price" means any payment made for a drug with or without discounts, rebates or other incentives affecting the cost of the drug.

14.    "Provider" means any physician or entity that provides health care to any Participant or Beneficiary.

15.    "Relating" means in any way concerning or referring to, consisting of, involving, regarding or connected with the subject matter of the request.

16.    "Site of care" means the location where a Provider infuses or injects any Participant or Beneficiary with a drug, including, without limitation, a hospital or Providers' office.

17.    "TAMCC" means the Third Amended Master Consolidated Class Action Complaint filed in connection with MDL Docket No. 1456, Civil Action No. 01-12257-PBS, in

2

the United States District Court for the District of Massachusetts.

18.     "You" or "your" shall refer to BCBS.

3

## INSTRUCTIONS

1.      Unless otherwise specifically stated, the requests below refer to the period of January 1, 1991 to the present.

2.      The singular form of a noun or pronoun shall include within its meaning the plural form of the noun or pronoun and vice versa; the masculine form of a pronoun shall include within its meaning the feminine form of the pronoun and vice versa; and the use of any tense of any verb shall include within its meaning all other tenses of the verb.

3.      Each request for production of documents extends to all documents in the possession, custody, or control of you or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

4.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

5.      Provide the following information for each document withheld on the grounds of privilege:

4

1237870v4

    (a)      its date;

    (b)      its title;

    (c)      its author;

    (d)      its addressee;

    (e)      the specific privilege under which it is withheld;

    (f)      its general subject matter; and

    (g)      a description of it that you contend is adequate to support your contention that it is privileged.

6.    These requests for production of documents are continuing in nature pursuant to Rule 26 of the Federal Rules of Civil Procedure so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

7.    The documents produced must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request.

8.    To the extent that you consider any of the following requests for production of documents objectionable, please respond to the remainder of the production request, and separately state the part of each request to which you object and each ground for each objection.

5

**SCHEDULE A**
**DOCUMENTS TO BE PRODUCED**

1.     All documents relating to or reflecting any definition or meaning of AWP.

2.     Final and signed copies of all contracts between BCBS and providers relating to reimbursement for drugs or services associated with drug administration, including all attachments and documents referenced in said contracts.

3.     All templates or standard forms relating to contracts between BCBS and providers generated by BCBS or maintained in BCBS' files.

4.     All provider reimbursement fee schedules, all documents detailing how these fee schedules were calculated or derived, any logs or records of changes to fee schedules, and all documents concerning the protocol or policy with respect to the revision of or disclosure to providers of fee schedules.  To the extent you maintain electronic tables reflecting reimbursements that differ from the fee schedules, also produce all such electronic tables.

5.     All documents concerning the negotiation of reimbursement to providers for physicians administered drugs or the administration of physician-administered drugs.

6.     All documents disclosing rebates paid by drug manufacturers to you, including rebate reports.

7.     All documents, including communications between you and providers, relating to or reflecting:

           (a)     The costs to providers of acquiring physician-administered drugs, including, but not limited to, the drugs on the list attached hereto as Exhibit A that are physician-administered;

           (b)     Any differences between the costs to providers of acquiring physician-administered drugs and the amounts you reimburse providers for such physician-

6

1237870v4

administered drugs;

           (c)    Your or your clients' awareness, expectation and understanding that the costs to providers of acquiring physician-administered drugs varies by, among other things, provider and drug;

           (d)    Your or your clients' awareness, expectation and understanding that the costs to providers of acquiring or administering physician-administered drugs are different from the amounts you reimburse providers in relation to such physician-administered drugs.

           (e)    Your or your clients' intention or the fact that drug reimbursement acted as a cross-subsidy for service or administration reimbursements that were inadequate or were perceived by providers  to be inadequate.

      8.    Documents sufficient to identify the medical benefit plans and the terms of the medical benefit plans you offered to your clients, including any HMO, PPO, indemnity, Medicare, Medicaid or supplemental insurance plans.

      9.    Documents sufficient to identify any staff model HMO owned by or affiliated with you, the organizational structure of any such staff model HMO, and the terms of operation of the staff model HMO.

      10.    All documents relating to or reflecting differences between the amounts you reimburse in relation to physician-administered drugs when they are administered in hospitals as compared to providers' offices, including, but not limited to, all strategic plans and business plans comparing the associated costs of administration in each site of care, or indicating an incentive or preference to administer subject drugs in a providers' office rather than in a hospital setting.

      11.    Electronic field descriptions listing and describing the electronic claims data fields available and maintained in BCBS's claims processing system or systems or on behalf of BCBS, including fields relating to both medical claims data and retail pharmacy claims data.

7

12.     Electronic medical claims data (hospital and provider data) regarding reimbursement for all drugs on the list attached hereto at Exhibit A, including reimbursements for physician services incident to drug administration and further including all available data fields.

13.     To the extent any of the drugs on the list attached hereto at Exhibit A are dispensed to patients by retail pharmacies that are then reimbursed by BCBS, electronic claims data regarding such reimbursements, including all available data fields.

14.     All claims processing manuals corresponding to the electronic medical claims data produced.

15.     All documents relating to any attempt by BCBS of MA to calculate the amounts it pays in reimbursements for physician administered drugs by individual NDCs, including any attempt to cross-walk or translate HCPCS codes to NDCs.

16.     All documents you produced in any other litigation, government investigation or inquiry related to (i) the use of AWP in Medicare, Medicaid or private reimbursement, or (ii) claims by providers concerning the adequacy of the reimbursement or disclosures you made.

17.     All documents, including electronic transaction records and contracts, concerning your purchases of drugs from Manufacturers, Wholesalers, Specialty Pharmacies or any other person or entity, including documents sufficient to determine the cost of the drugs purchased and how such costs were determined.

18.     All documents relating to any specialty pharmacy programs you have implemented or considered, including documents analyzing whether to initiate a specialty

8

1237870v4

pharmacy program, establishing a specialty pharmacy program and administering a specialty pharmacy program.

19.    All documents regarding advisory boards conducted by you or on your behalf and involving physicians or pharmacists, including final reports or other documents reflecting the issues discussed, participants in and conclusions of such advisory boards.

20.    All documents reflecting or regarding any consideration of or actual changes to your reimbursements for drugs or services based on or by reference to changes in Medicare's reimbursement rates for drugs or services since 2003.

21.    All documents regarding the process whereby you determine drug formularies, preferential or priority authorizations, or otherwise establish a preference for any drugs, including analysis of the economic merits of selecting or setting preferences for certain drugs as compared to others.

22.    Documents sufficient to show your expenditures on physician-administered drugs on quarterly basis since 1991.

23.    All documents reflecting any controls, measures, studies or benchmark comparisons considered or implemented by you to manage the costs of reimbursements for physician-administered drugs.

24.    All documents concerning the profit, margin or return you have earned, are earning, and anticipate earning in connection with contracts with providers, including any analysis of the impact or effect of payment for physician-administered drugs in connection with those contracts.

1237870v4

25.     All minutes from meetings where reimbursement or payment for subject drugs was discussed, including meetings where the setting of reimbursement or payment rates was discussed.

26.     All documents concerning your involvements in any internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews or audits regarding drug pricing or reimbursement or payment amounts or rates for any subject drug, including but not limited to documents regarding your participation in the following study: "'Health Plan Payment for Physician-Administered Drugs,' A Study conducted by Dyckman & Associates for the Medicare Payment Advisory Commission, August 2003 No 03-5."

27.     Documents reflecting analysis performed by you in setting premiums, including comparisons of premium revenue to costs of reimbursement for drugs and physician services.

28.     All documents concerning Pipefitters Local 537 Trust Funds, including but not limited to contracts, correspondence, emails, plan designs, and reimbursement data.

29.     All communications with witnesses or potential witnesses in connection with this case including, without limitation, expert witnesses and fact witnesses.

30.     All documents that support any claim asserted in the TAMCC, as well as any other documents that you plan to offer in evidence in this case.

31.     All documents concerning the computation of damages for the claims set forth in the TAMCC.

32.     All documents relating to any alleged misrepresentation or omission by any of the Defendants.

10

1237870v4

33.    All agreements, understandings and fee or cost arrangements with your counsel and/or with any other plaintiff or third party relating to this case.

34.    All current and historical organizational charts for all of your departments.

35.    Documents sufficient to show your document retention policies.

11

**SCHEDULE B**
**DEPOSITION TOPICS**

1.      Your understanding, use, and knowledge of the terms "Average Wholesale Price," "AWP," "Wholesale Acquisition Cost," or "WAC."

2.      All methodologies (e.g., capitation, usual and customary charges, AWP-based formula, or use of specialty pharmacies) you utilized or considered utilizing to determine the amounts to pay or reimburse health care providers (e.g., doctors, hospitals, clinics) for drugs administered in physician's offices or hospitals, including the extent to which any reimbursements are tied to the AWPs of specific drugs.

3.      All rationales, information, and factors considered by you in deciding whether or not to adopt the reimbursement methodologies described in Subject 2.

4.      All rationales, information, and factors considered by you in deciding whether or not to pay a separate administration fee in addition to the price of the drug itself.

5.      Any actions that you have taken to reduce either your total expenditures on pharmaceutical benefits or the amount spent on any particular pharmaceutical product.

6.      Whether and to what extent you provide different reimbursement rates for subject drugs when they are administered in providers' offices rather than in hospitals, including your rationale for doing so or not doing so, including any studies or analysis you have made concerning the relatives costs of the administration of subject drugs in providers' offices rather than in hospitals.

7.      Whether and to what extent you set drug reimbursement for drugs

12

1237870v4

administered and dispensed based on competitive negotiations with health care providers.

8.    The substance of such negotiations, including whether and to what extent they expressly dealt with a distinction between the reimbursement of the drug itself and the reimbursement for the medical provider's administration services, or referenced Medicare reimbursement rates.

9.    Your understanding, knowledge and expectations (if any) of whether health care providers earn a margin on drugs administered, including whether such a margin depended, in part, on the difference between the reimbursement you paid and the actual acquisition costs for the drugs, net of any incentives provided by the drug manufacturers, and the effect (if any) of such knowledge on the setting of reimbursement rates.

10.    Your knowledge and understanding of whether any administration fees you reimbursed to providers were sufficient to cover the provider's costs in administering the corresponding drugs.

11.    Your understanding and knowledge of whether drug manufacturers provided health care providers with discounts, rebates and other incentives that were not reported in pricing compendia or otherwise disclosed to the public, including whether or not the published AWP was adjusted to account for these discounts, rebates and other incentives.

12.    Fee schedules for physician-administered drugs, including the methodologies used to develop the schedules, the rationales for such methodologies, and whether the fee schedules were communicated to the physicians.

13.    Whether and to what extent a Staff-Model HMO was implemented by your plan and if so, when it began and when it ceased operation, its purchasing practices and the terms

13

1237870v4

of its contracts with Drug Manufacturers and Wholesalers.

   14. Any specialty pharmacy program considered or implemented by you.

   15. Your compensation as a Medicare Part B Carrier, and the reason(s) that you transferred your Medicare Part B business to another carrier at the end of 1997.

   16. The existence of, participation in, membership of and issues discussed at any physician or pharmacist advisory boards related to drug reimbursement organized or conducted by BCBS.

   17. Your contracts with drug manufacturers and wholesalers for the purchase of physician-administered drugs or for rebates on physician-administered drugs.

   18. Your knowledge of government studies, reports, and communications concerning actual acquisition costs for drugs.

   19. Your knowledge and understanding of any activity undertaken by any drug manufacturer to artificially inflate the AWPs for their drugs.

   20. All issues raised or addressed in the documents demands attached at Schedule A to this subpoena or in documents produced by you in response to this subpoena.

   21. All issues raised or addressed in the subpoena issued to BCBS by Aventis Pharmaceuticals on behalf of all defendants dated October 28, 2005, the deposition topics from which are hereby incorporated by reference.

   22. All documents produced in response to defendants' subpoenas, including whether such documents are authentic within the meaning of Rule 901 of the Federal Rules of Evidence, and Records of Regularly Conducted Activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

14

1237870v4