**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** ) ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** ) ) | Chief Magistrate Judge Marianne B. Bowler |
| *State of Montana v. Abbott Labs., Inc., et al.,*<br>CA No. 02-CV-12084-PBS ) ) ) | REQUEST FOR ORAL ARGUMENT<br><br>LEAVE TO FILE GRANTED 9/14/2006 |

## DEFENDANT BAYER CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS FIRST MOTION TO COMPEL PLAINTIFF THE STATE OF MONTANA TO PRODUCE A RULE 30(B)(6) WITNESS

Defendant Bayer Corporation's ("Bayer's") Motion seeks to compel Montana to designate a witness to testify concerning: (1) how Montana used or considered the Average Sales Price ("ASP") data Bayer provided to the State for *all Bayer's products* under Montana's 2001 Settlement Agreement with Bayer; and (2) communications between Montana and the National Association of Medicaid Fraud Control Units ("NAMFCU") concerning the 2001 settlement or the State's 2003 settlement with Bayer resolving different State claims. These subjects lie at the heart of Bayer's defenses in this matter. Montana has refused to name a single 30(b)(6) witness to testify on the State's behalf on these subjects.

Despite its sharp rhetoric, Montana's response does not dispute the central facts that justify granting the Motion. There is no dispute that (i) the 30(b)(6) Notice (attached hereto as Exhibit A) was served within the then-applicable fact discovery period set by Case Management Order ("CMO") 15; (ii) the Notice seeks testimony that is material to the issues in the case

against Bayer; and (iii) Montana has refused to designate *any* 30(b)(6) witness to testify on the identified subjects.

Rather than contest these facts, Montana instead attempts to justify its refusal to designate a 30(b)(6) witness on the ground that Montana's written discovery responses already provide the information sought through the 30(b)(6) Notice. Yet Montana's one-paragraph response to an interrogatory concerning Bayer's ASP information comes nowhere near answering all the questions that may properly be posed to a 30(b)(6) witness on this subject. Montana's fallback claim that the Motion should be denied because Bayer allegedly had "ample opportunity" to obtain its sought-after information at other depositions and failed to do so (Opp. at 5-6), is contradicted by its own claim that Montana has been unable to locate a witness with personal knowledge on the identified subjects (Opp. at 6.) In any event, Bayer is not obligated to hunt among the various Montana witnesses who testified to try to find one with personal knowledge on the subjects in its 30(b)(6) Notice; and even if a witness could be found by Bayer to testify – a witness Montana claims it could not find – this would not satisfy Montana's 30(b)(6) obligation to designate a witness to speak for and bind the State itself on the 30(b)(6) Notice subjects.

Bayer's Motion to Compel should be granted, and Montana should be ordered to identify a 30(b)(6) witness on the identified subjects.

**ARGUMENT**

**I.    Bayer's Rule 30(b)(6) Notice Was Timely And Seeks Relevant Testimony.**

Although accusing Bayer of undue delay, Montana nonetheless concedes that Bayer's Notice was served within the time the Court originally set for fact discovery, under CMO 15 (which date was later extended by 60 days by CMO 23). (Opp. at 2.) Montana also does not contest the relevance of the testimony Bayer seeks. Indeed, evidence that Montana has

2

possessed ASP data for all of Bayer's drugs since 2001 but has not altered how it pays providers of Bayer drugs under its Medicaid program contradicts the State's claim that it would have paid less for Bayer drugs had it been provided the very same data prior to 2001. Testimony concerning Montana's communications with NAMFCU would further underscore this point since NAMFCU told Montana Medicaid that ASP data would "provide you the basis for determining where and how Medicaid prices should be adjusted." (*See* Letter from NAMFCU to Medicaid Pharmacy Directors (January 29, 2001), attached hereto as Exhibit B, at 2.)

Because Bayer's 30(b)(6) request is timely and seeks relevant testimony, Montana must designate a representative to testify on the topics covered in the Notice.

## II.   Bayer's 30(b)(6) Notice Seeks Non-Duplicative Information That Is Reasonably Available To Montana.

Montana wrongly asserts (Opp. at 1, 5) that Bayer has previously received all of the information covered by its 30(b)(6) Notice through other discovery. The 30(b)(6) Notice requested Montana to designate deponents to testify on (1) the State's "use or consideration of Bayer ASP information"; and (2) any "Communications" between Montana and the NAMFCU concerning the 2001 or 2003 Bayer settlements. (Exhibit A, at 2.) Contrary to Montana's Opposition (at 3-4), its five-sentence response to a separate Bayer interrogatory does not relieve it of its obligation to produce a Rule 30(b)(6) deponent. The referenced interrogatory response simply asserts, without elaboration or explanation, that Montana "receives Bayer ASP information," but that, because it would require a "manual process" to incorporate ASP data into its pricing algorithm, Montana does not use that ASP information "as a benchmark in evaluating, revising or settling payments to Providers under the Montana Medicaid program."

Such a response comes nowhere near to answering the universe of questions Bayer might appropriately ask Montana's 30(b)(6) deponent concerning its "use or consideration of Bayer

ASP information." For example, did Montana ever even consider or evaluate using Bayer's

ASPs as a benchmark in calculating Medicaid drug payments; if not, why not? What "manual

process" precluded Montana from utilizing Bayer's ASP information? Did the same issues exist

for the entire period covered by Montana's lawsuit such that having Bayer's ASP information

during this entire period would have made no difference to Montana's calculation of Medicaid

drug payments? Where and how was the Bayer ASP data stored? Did other state agencies or

programs have access to this Bayer ASP data, and, if so, which agencies or programs accessed

this information, when, and for what purpose? This handful of sample questions – clearly

relevant and appropriate for Bayer's defenses – are not answered by Montana's brief

interrogatory response.  Bayer should have the opportunity to pose them to a Rule 30(b)(6)

witness designated by Montana.

     Montana also maintains (Opp. at 3-4) that a 30(b)(6) deposition would be duplicative

because the State has previously responded to Bayer's request for production of "[a]ll

Documents related to communications with [NAMFCU]" that it had searched and had been

"unable to locate any responsive documents."  But Bayer's 30(b)(6) request is not limited to

documentary evidence of communications, as was the request for production, but extends to any

oral communication, as well as testimony concerning written communications for which there is

no documentary record.

     Nor can Montana avoid its discovery obligations merely by asserting (Opp. at 6) that

"there is neither a current employee with information nor institutional knowledge of these topics

beyond that which has already been provided." Montana may not "subvert the beneficial

purposes of [Rule 30(b)(6)] by simply incanting that no witness is available who personally has

direct knowledge concerning all of the areas of inquiry." *Prokosch v. Catalina Lighting, Inc.*,

193 F.R.D. 633, 638 (D. Minn. 2000). Rather, Montana has an obligation to "make a reasonable attempt to ascertain information reasonably available to [it]" and to use that information to prepare a witness to testify. *Big Top USA, Inc. v. The Wittern Group*, 183 F.R.D. 331, 339 (D. Mass. 1998) (Saris, J.). "If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation." *Briddell v. St. Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005). "Any other interpretation of the Rule would allow the responding [party] to 'sandbag' the depositional process 'by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.'" *Prokosch*, 193 F.R.D. at 639 (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996)).

Nothing in Montana's Opposition suggests that it has undertaken any effort to use available documentary and other sources to educate a witness to testify on the topics covered in the Notice. In addition, if after this searching effort Montana is still unable to prepare a witness on these topics, Rule 30(b)(6) requires that Montana designate a witness who can provide binding testimony to that effect and whom Bayer can question regarding the means used to prepare for the deposition. There is no other way for Bayer to "fully and fairly explor[e]" Montana's position on these issues in advance of trial. *Id*. at 639.

### III.    Montana Cannot Avoid Designating A 30(b)(6) Witness Simply Because Other Non-30(b)(6) Witnesses Were Not Questioned On The Same Subjects.

Although Montana asserts that no witness exists to testify on the State's behalf on the 30(b)(6) Notice subjects, it also seeks denial of the Motion because Bayer did not ask questions on these subjects from other (unidentified) witnesses. (Opp. at 5-6.) Bayer, however, is not obligated to hunt among the various Montana witnesses who testified to try to find one with personal knowledge on the subjects in its 30(b)(6) Notice. Moreover, even if a witness could be found by Bayer to testify on the Notice subjects – a witness Montana claims it could not find –

this would not satisfy Montana's 30(b)(6) obligations. Bayer sought a 30(b)(6) witness on these subjects to speak for and bind the State itself. *See Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005). Any other non-30(b)(6) witness could testify only to their personal knowledge, which would not necessarily bind the State.

Moreover, any failure to coordinate the Bayer-specific 30(b)(6) deposition with the depositions of other State witnesses is the fault of Montana, not Bayer. On March 18, 2006, Bayer's counsel asked Montana's counsel by e-mail "whether any of the deponents for the already-scheduled depositions coming up over the coming weeks might appropriately also be designated a 30(b)(6) witness for the Bayer subjects." (See Affidavit of Michael Doss, attached hereto as Exhibit C, and 3/18/06 E-mail From M. Doss to J. Breckenridge, attached to the Affidavit as Exhibit 1.) If so, Bayer agreed to have its "30(b)(6) deposition tag along immediately after the individual deposition." (*Id.*) Despite this offer, Montana did not identify any of the following Montana witnesses as 30(b)(6) deponents on the Notice subjects.

At the time of Bayer's offer, those yet to testify included the director of Montana Medicaid from March 2001 to July 2003 (*see* 4/5/06 Deposition of Margaret Bullock, attached hereto as Exhibit D, at 19:14 to 20:12); her successor (*see* 4/18/06 Deposition of Charles L. Hunter, attached hereto as Exhibit E, at 16:18 to 17:9, 48:6-13); and Montana's current supervisor of Medicaid's pharmacy program (*see* 4/12/06 Deposition of Mary Dalton, attached hereto as Exhibit F, at 23:21 to 24:20). Montana's failure to designate and prepare one or more of these individuals as its 30(b)(6) deponents on the issues in Bayer's Notice should not prejudice Bayer's reasonable discovery request.

## IV.   Conclusion

For the foregoing reasons and those previously stated in the Motion, Bayer requests that the Court grant its Motion, and compel the State of Montana to produce a Rule 30(b)(6) witness on the topics identified in Bayer's Notice within 14 days of the Court's Order.

### Certification Pursuant to Local Rules 7.1 and 37.1

Pursuant to Local Rules 7.1(a)(2) and 37.1 of this Court, the undersigned counsel certifies that counsel for Bayer has conferred unsuccessfully with Montana's counsel in an effort to reach a resolution on the Rule 30(b)(6) discovery request on which, as identified above, the parties have reached impasse.

October 17, 2006

/s/ Jaime L.M. Jones
Richard D. Raskin
Michael Doss
Jaime L.M. Jones
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
312-853-7000 (tel.)
312-853-7036 (facsimile)
*Attorneys for Defendant Bayer Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2006, I caused a true and correct copy of Defendants Bayer Corporation's Reply Memorandum In Support of Its First Motion to Compel Plaintiff The State of Montana To Produce A Rule 30(b)(6) Witness, together with accompanying exhibits, to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 in MDL No. 1456.

/s/ Jaime L.M. Jones