UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br>)<br>)<br>) | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc., and Hospira, Inc.*<br>CIVIL ACTION NO. 06-11337-PBS )<br>)<br>)<br>)<br>) | *Leave to file granted on September 19, 2006* |

**THE UNITED STATES' SURREPLY TO ABBOTT LABORATORIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Abbott Laboratories, Inc.'s ("Abbott") Reply Memorandum in Support of it Motion to Dismiss ("Reply") reiterates many of its previous falsity, presentment, government knowledge, Anti-kickback Statute ("AKS"), common law and Rule 9(b) particularity arguments; those arguments have already been thoroughly briefed in the United States' Opposition to Abbott's Motion to Dismiss ("Opposition"). The United States submits this brief surreply to address some points raised in Abbott's Reply.

- **This case is about recovering for Abbott's fraudulent conduct, not retrospectively reinventing the pharmaceutical reimbursement system**. Abbott claims that this case represents an effort by the Department of Justice or the Executive Branch to retroactively legislate drug reimbursement through litigation. Reply at 1-2. Abbott's assertion is intended to deflect attention away from its own misconduct by arguing that the real culprits are flawed government reimbursement systems. This case is about the United

States attempting to recover tens of millions of dollars in damages caused by Abbott's particular abuse of those reimbursement systems. Had Abbott been truthful in its price reporting, the United States would not have sued the company. The government reimbursement system did not prompt Abbott to submit false pricing information. That was Abbott's choice.

- **The grossly inflated reimbursements for Abbott products were not sanctioned "government spending."** Abbott states that the amount of inflated reimbursement the government paid for its products was "money the Government spent pursuing its policy objectives." Reply at 2. Paying illegal remuneration on Abbott's behalf to Abbott customers was never a government policy goal. Indeed, this lawsuit is evidence that the inflated spreads Abbott created and marketed for its particular products were not sanctioned "government spending." As set forth in the Complaint, in 1999, the New York Medicaid program was paying an almost $69 for Vancomycin 1 GM FTV, a drug that was typically available on the market for $5. Complaint at ¶ 82. That $64 spread on Vancomycin 1 GM FTV paid for by the New York Medicaid program was not "government spending" sought and willingly paid for by the United States to effectuate any Medicare or Medicaid policy goal. The $64 spread was created by Abbott to advance Abbott's marketing goals at the government's expense. Complaint at ¶¶ 66-67, 87. Abbott's "government spending" argument is no basis for dismissing the United States' Complaint.

- **Medicaid programs reimbursed for Abbott drugs based on the specific prices Abbott reported**. In its Reply, Abbott states, "*All* multi-source drugs within a J-Code,

2

whether Abbott's or someone else's, were reimbursed at the same level – the provider's charge or a *median* AWP for *all* sources, or the lowest brand name drug. (Mem. at 3-5.)" Reply at 3 (emphasis in original); *see also id.* at 8, 12.  Abbott is suggesting that both the Medicare and Medicaid programs reimbursed for generic, multi-source drugs using a median of the AWP from all manufacturers of a given generic drug.  That statement is not accurate.  It is true that the Medicare program reimbursed multi-source products using a median AWP, *see* Complaint at ¶¶ 46-50, and some Medicaid reimbursement for physician-administered drugs is done by reference to median AWPs.  A large amount of Medicaid reimbursement for the Abbott drugs at issue in this case, however, is drug and manufacturer-specific; *i.e.*, reimbursement levels for a particular manufacturer's drug are set by reference to the individual company's price representations.  Complaint ¶¶ 39-45. In other words, Abbott's reported prices for each of its drugs set individual Medicaid reimbursement levels for each of those Abbott's drugs.  *See, e.g.,* Complaint at ¶ 82 (New York's reimbursement of $68.77 for Abbott's Vancomycin 1 GM FTV based on a reported AWP of $76.42 for Abbott's Vancomycin 1 GM FTV, not a median).  All reimbursement for the Abbott drugs at issue in this case was not done using a median AWP.

- **Abbott's lowering of its reported prices after 2001 reflects the falsity of its price reporting prior to 2001**.  In both its Memorandum of Law and its Reply, Abbott claims that the United States must plead a "true price" from which Abbott deviated to satisfy the FCA's falsity element.  There is absolutely no such requirement under the FCA that the United States must plead a *one* "true" price to establish the falsity of Abbott's price

3

reporting, and Abbott points to no authority supporting this contention. In 2000, Abbott was reporting a Direct Price of $64.35 for its Vancomycin 1 GM FTV, which was marked up by the price reporting compendia by 18.75% to set an AWP of $76.42. Complaint ¶ 81. Abbott was typically selling that drug for approximately $5 at the time. *Id*. By 2002, Abbott's price reporting practices had changed after the government's investigation of similar pricing conduct by TAP Pharmaceuticals (a joint venture between Takeda Chemical Industries, Ltd. and Abbott). Abbott's AWP for Vancomycin 1 GM FTV in 2002 was $6.06. *Id*. at ¶ 84. An AWP of $6.06 was certainly more reflective of actual market prices of approximately $5 than the false AWP of $76.42 which was based on Abbott's false reported DPs. Abbott will not be able to contest that the prices it reported for the drugs at issue in this case far exceeded the actual prices at which Abbott sold those same drugs to its customers for the time period at issue in this case.

- **The government reports Abbott references do not insulate Abbott from liability.**

    Almost all of the government reports Abbott refers to are irrelevant to Abbott's misconduct.[1] The issue in this case is Abbott's price reporting and manipulation of

---

[1] Abbott argues that the reports reflect government knowledge sufficient to insulate it from liability. Government knowledge in an FCA case only goes to scienter. *See* Opposition at 24. Abbott argues that the United States has conceded in other proceedings that government knowledge also "goes to falsity," citing a government amicus brief filed in *United States ex rel. Kriendler & Kriendler v. United Tech. Corp.*, 985 F.2d 1148 (2d Cir. 1993). Reply at 11, fn. 12. Abbott mischaracterizes the government's amicus brief in that case. The government contended in that brief that government knowledge bears on scienter, a view that has been consistently adopted by the courts. *See, e.g.*, *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir.2002); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000). The one sentence referring to scienter and falsity in the *Kriendler* amicus brief addressed the very rare and hypothetical situation – certainly not presented here – where the government and a contractor so fully and completely discussed and agreed to the contractor's actions that a court could conclude that the contract had, in fact, been modified. *See Kriendler*,

government reimbursements for the drugs set forth in the Complaint.  Of the various government reports Abbott improperly appends to its motion to dismiss, only one discusses any of the Abbott drugs in the Complaint.  Abbott's Memorandum of Law in Support of Its Motion to Dismiss ("Abbott Memorandum of Law") at 6, App. A, Tab 20. That report only discusses Medicare (and not Medicaid) reimbursement for one drug. There is nothing in the report that indicates that the Medicare and Medicaid programs intended to pay inflated reimbursement for Vancomycin, requiring dismissal of this action.  There are no other reports cited by Abbott that directly address Abbott's conduct as set forth in the United States' Complaint, nor do they in any way condone or approve Abbott's misconduct.

- **"Justifiable reliance" is not an element of federal FCA claim.**  Abbott attempts in its Reply to graft a "justifiable reliance" element to the FCA relying on irrelevant and inapposite state common law fraud and fraudulent misrepresentation case law.  Reply at 11.  That analysis has no place in this Court's consideration of whether the United States has stated a claim under the federal FCA.

- **The implied certification theory of AKS-based FCA liability applies to both the Medicare and Medicaid claims**. Abbott argues in both its Motion to Dismiss Memorandum of Law and in its Reply brief that the implied certification theory of AKS-based FCA liability does not apply to Medicaid claims, citing *United States ex rel. Pogue v. Diabetes Treatment Centers of Americai*, 238 F. Supp. 2d 258, 263-266 (D.D.C. 2002).

---

985 F. 2d at 1157.  Again, Abbott has not demonstrated, nor will it be able to demonstrate, that it ever fully informed the government that its reported prices were grossly inflated, let alone that the government agreed that Abbott's inflated prices were acceptable.

That case actually contradicts Abbott's argument. The District Court in that case "reaffirmed" the holding in *United States ex rel. Pogue v. American Healthcorp, Inc.*, 914 F.Supp. 1507 (M.D.Tenn.1996) ("Pogue 1") that the plaintiff sufficiently stated an FCA cause of action, based on implied certification, involving Medicaid claims. *See Pogue*, 238 F. Supp. 2d at 263, 266 (¶ 48 of the relator's Fourth Amended Complaint alleged that "Medicare and *Medicaid* claims submitted or caused to be submitted by defendants would have been denied had the government known of the violations of the Anti-Kickback and Stark Laws.") (emphasis added). The AKS applies to illegal remuneration used to induce customers to buy and bill "Federal health care programs" for Abbott's drugs. 42 U.S.C. § 1320a-7b. The Medicaid program is a Federal healthcare program and therefore subject to the AKS. *See id*. at § 1320a-7b(f) ("For purposes of this section, the term 'Federal health care program' means– (1) any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of Title 5); or (2) any State health care program, as defined in section 1320a-7(h) of this title.") There is no case law supporting the notion that an implied certification theory of FCA liability is limited to Medicare claims.

- **The issue of ambiguity only implicates FCA scienter**. Abbott mischaracterizes *United States ex rel. Oliver v. Parsons Co.*, which unambiguously stands for the proposition that issue of ambiguity is only relevant to the issue of a defendant's scienter in an FCA case. 195 F.3d 457, 463 (9th Cir. 1999). Other courts have reached the same conclusion. *See also, United States ex rel. Walker v. R & F Properties, Inc.*, 433 F. 3d 1349 (11th Cir.

2005) ("[T]he district court erred by holding that any ambiguity in the earlier version of 42 CFR § 410.26 and the HCFA 1500 certification necessarily forecloses, as a matter of law, the falsity of claims submitted by LFM prior to January 1, 2002."); *Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1053 (D. Minn. 2002)("If a statement alleged to be false is ambiguous, the government (or here, the relator) must establish the defendant's knowledge of the falsity of the statement."); *United States v. Rogers et al.*, No. 1:97-cv 461, 2001 WL 818160, at *8 (E.D. Tenn. June 28, 2001) ("defendants' contention that they made a reasonable interpretation of HCFA's . . . rules and regulations only goes to the scienter element and whether the defendants acted 'knowingly' as defined in 31 U.S.C. § 3729(b).")

- **The United States Can Plead Both Fraud and Unjust Enrichment Counts**. A party may state two or more claims for relief "regardless of consistency and whether based on legal, equitable or maritime grounds." Fed. R. Civ. P. 8(e)(2).  When faced with the same argument Abbott makes here – that an unjust enrichment cause of action cannot stand because it is based on the same wrong as the fraud claims – in another case, this Court noted that "[c]ourts have been flexible regarding when in the trial they require the plaintiff to choose its avenue of recovery." *Massachusetts v. Mylan Laboratories, Inc.*, 357 F. Supp. 2d. 314, 324 (D. Mass 2005).  As in that case, the United States respectfully requests that the Court not force the United States to choose its remedy at this very early stage of the litigation.

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court deny Abbott's motion to dismiss.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN | PETER D. KEISLER |
| UNITED STATES ATTORNEY | ASSISTANT ATTORNEY GENERAL |
| | |
| George B. Henderson, II | |
| Assistant U.S. Attorney |  /s/ Gejaa T. Gobena |
| John Joseph Moakley U.S. Courthouse | Michael F. Hertz |
| Suite 9200, 1 Courthouse Way | Joyce R. Branda |
| Boston, MA 02210 | Renée Brooker |
| Phone: (617) 748-3398 | Justin Draycott |
| Fax: (617) 748-3272 | Gejaa T. Gobena |
| | Civil Division |
| R. ALEXANDER ACOSTA | Commercial Litigation Branch |
| UNITED STATES ATTORNEY | P. O. Box 261 |
| SOUTHERN DISTRICT OF FLORIDA | Ben Franklin Station |
| | Washington, D.C. 20044 |
|  /s/ Mark A. Lavine | Phone: (202) 307-1088 |
| Mark A. Lavine | |
| Ana Maria Martinez | |
| Ann St. Peter-Griffith | |
| Special Assistant U.S. Attorneys | |
| 99 N.E. 4th Street, 3rd Floor | |
| Miami, FL 33132 | |
| Phone: (305) 961-9003 | |
| Fax: (305) 536-4101 | |

Dated: October 18, 2006

### CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **THE UNITED STATES' SURREPLY TO ABBOTT LABORATORIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: October 18, 2006

/s/ Gejaa T. Gobena
Gejaa T. Gobena