# EXHIBIT A

1                    IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF MASSACHUSETTS

2

3

      In re:                          )

4     PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS

      AVERAGE WHOLESALE PRICE         ) MDL No. 1456

5     LITIGATION                      )

6

7

8                         STATUS CONFERENCE

9               BEFORE THE HONORABLE PATTI B. SARIS

                     UNITED STATES DISTRICT JUDGE

10

11

12

13

                              United States District Court

14                            1 Courthouse Way, Courtroom 19

                              Boston, Massachusetts

15                            August 3, 2006, 4:25 p.m.

16

17

18

19

20

21

22

                         LEE A. MARZILLI

23               CERTIFIED REALTIME REPORTER

                 United States District Court

24               1 Courthouse Way, Room 3205

                     Boston, MA  02210

25                       (617)345-6787

```
 1    A P P E A R A N C E S:
 2
      For the Plaintiffs:
 3
 4         STEVE W. BERMAN, ESQ., Hagens Berman Sobol Shapiro LLP,
      1301 5th Avenue, Suite 2900, Seattle, Washington, 98101-1090.
 5
           THOMAS M. SOBOL, ESQ. and EDWARD NOTARGIACOMO, ESQ.,
 6    Hagens Berman Sobol Shapiro LLP, One Main Street, Cambridge,
      Massachusetts, 02142.
 7
           SHANIN SPECTER, ESQ., and DONALD E. HAVILAND, JR.,
 8    Kline & Specter, P.C., 1525 Locust Street, 19th Floor,
      Philadelphia, Pennsylvania, 19102.
 9
10
      For the Defendants:
11
           STEVEN M. EDWARDS, ESQ., Hogan & Hartson, LLP,
12    875 Third Avenue, Suite 2600, New York, New York, 10012.
13         JOHN T. MONTGOMERY, ESQ., Ropes & Gray, LLP,
      One International Place, Boston, Massachusetts, 02110.
14
           D. SCOTT WISE, ESQ., Davis, Polk & Wardwell,
15    450 Lexington Avenue, New York, New York, 10017.
16         WILLIAM F. CAVANAUGH, JR., ESQ., Patterson, Belknap,
      Webb & Tyler, 1133 Avenue of the Americas, New York, New
17    York, 10036-6710.
18         MICHAEL DeMARCO, ESQ., Kirkpatrick & Lockhart Nicholson
      Graham, LLP, State Street Financial Center, One Lincoln
19    Street, Boston, Massachusetts, 02111-2950.
20         JAMES P. MUEHLBERGER, ESQ., Shook, Hardy & Bacon,
      2555 Grand Boulevard, Kansas City, Missouri, 64108-2613.
21
           SCOTT A. STEMPEL, ESQ., Morgan, Lewis & Buckins, LLP,
22    1111 Pennsylvania Avenue, N.W., Washington, D.C., 20004.
23         JAMES R. DALY, ESQ., Jones Day, 77 West Wacker Drive,
      Chicago, Illinois, 50501-1692.
24
           JAMES J. BREEN, ESQ., The Breen Law Firm, P.A.,
25    3562 Old Milton Parkway, Alpharetta, Georgia, 30005.
```

3

1

For the United States:

2

        GEJAA T GOBENA, ESQ., United States Department of

3    Justice, Civil Division, Commercial Litigation-Fraud Section,

     601 D Street, N.W., P.O. Box 261, Washington, D.C., 20044.

4

        GEORGE B. HENDERSON, ESQ., Assistant United States

5    Attorney, Office of the United States Attorney, 1 Courthouse

     Way, Boston, Massachusetts, 02210.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE CLERK:  In re:  Pharmaceutical Industry Average

3    Wholesale Price Litigation, Civil Action No. 01-12257,

4    MDL 1456, will now be heard before this Court.  Will counsel

5    please identify themselves for the record August 3, 2006.

6          MR. SOBOL:  Good afternoon, your Honor.  Tom Sobol

7    for the plaintiffs.

8          THE COURT:  Good afternoon.

9          MR. SPECTER:  Good afternoon.  Shanin Specter,

10   plaintiffs.

11         MR. HAVILAND:  Don Haviland, your Honor, for the

12   plaintiffs.

13         MR. BERMAN:  Steve Berman, your Honor.

14         MR. EDWARDS:  Steve Edwards, BMS.

15         MR. MONTGOMERY:  John Montgomery, Schering-Plough

16   and Warrick.

17         MR. WISE:  Scott Wise for AstraZeneca, your Honor.

18         MR. CAVANAUGH:  Bill Cavanaugh, Johnson & Johnson.

19         MR. DeMARCO:  Michael DeMarco, Aventis.

20         MR. MUEHLBERGER:  Jim Muehlberger, Aventis.

21         MR. STEMPEL:  Scott Stempel, Pfizer and Pharmacia.

22         MR. GOBENA:  Your Honor, I would just like to let

23   you know the United States --

24         THE COURT:  Has arrived.  Actually, why don't you

25   come on up here.

1                 MR. GOBENA:  All right.

2                 THE COURT:  And I'm going to ask the USA something

3      ex parte for one second because there's something that was

4      just transferred up here, and I'm not sure --

5                 MR. GOBENA:  Your Honor, should we identify

6      ourselves for the record?

7                 THE COURT:  Yes, do that, because I didn't know

8      there were so many of you all.

9                 MR. GOBENA:  My name is Gejaa Govena.  I'm with the

10     Justice Department.

11                MR. HENDERSON:  George Henderson, Assistant U.S.

12     Attorney.

13                MR. BREEN:   Jim Breen for the relator Ven-A-Care,

14     the 402s.

15                THE COURT:  All right, then we know.  All right, I

16     just didn't know if that's public.

17                MR. HENDERSON:  It is as a matter of the caption of

18     the case.

19                THE COURT:  All right, so why don't at least one of

20     you sit here.  The case involving -- you've stepped in and

21     decided to intervene, is that it?

22                MR. GOBENA:  That's correct, your Honor.

23                THE COURT:  The government has?  Are you all

24     familiar with what I'm talking about?

25                MR. MONTGOMERY:  Yes, your Honor.

1          MR. CAVANAUGH:  Yes.

2          THE COURT:  All right, so you get a table to

3    yourself.

4          MR. DALY:  Your Honor, just for the record, Jim

5    Daly.  I'm here for Abbott Labs, the company that the

6    government intervened with respect to.

7          THE COURT:  Okay, thank you very much.  I wasn't

8    sure, because I just got notice of it through the MBD docket,

9    whether it was still sealed or not, and that was why I wanted

10   to make sure that I checked that out before I spilled it out

11   in front of this entire room.  But it's now public.  The

12   Department of Justice is here, right?

13         MR. GOBENA:  That's correct, your Honor.

14         THE COURT:  All right, so what is your position in

15   general in this case?  I haven't had a chance to even go

16   through what the case is about from the Justice Department's

17   point of view.

18         MR. GOBENA:  Sure, your Honor.  As your Honor has

19   noted, we've intervened in a case that originated in the

20   Southern District of Florida against -- the defendants in the

21   case are Abbott Labs and Hospira as well --

22         THE COURT:  And?

23         MR. GOBENA:  Hospira, which was a spin-off of

24   Abbott Labs, and what was spun off was the division that

25   manufactured the drugs that were identified in our complaint.

1            THE COURT:  Yes, but what's the case?  Was it an

2    AWP case?

3            MR. GOBENA:  It's a False Claims Act case alleging

4    AWP pricing fraud, so it's the same general subject matter as

5    these cases, but we're bringing it under the False Claims Act

6    as well as we have an unjust enrichment claim and a common

7    law fraud claim as well.

8            THE COURT:  And just so I can get a lay of the

9    land -- you may not be prepared to answer this question -- is

10   this just going to be limited to these drugs involving

11   Abbott, or are you going to have a stake in the rest of this

12   litigation?

13           MR. GOBENA:  We're really not prepared to answer

14   that question at this time, your Honor, but it's fair to say

15   that there may be additional defendants that enter into our

16   case.

17           THE COURT:  All right, thank you.  Right now, I

18   thought it would be worthwhile to ask the plaintiffs how much

19   they've accomplished in their notice, since that essentially

20   is the threshold to doing anything, what's been sent out,

21   what hasn't been -- oh, there you are.

22           MR. NOTARGIACOMO:  Good afternoon, your Honor.  Ed

23   Notargiacomo for the plaintiffs.  We are on track with

24   everything your Honor has ordered us to do.  On Friday

25   , July 28, we mailed all of the TPP notices.

```
1              THE COURT:  Third-party payor, right.

2              MR. NOTARGIACOMO:  Third-party payor notices.  The

3    Web site for third-party payors, that version of the Web site

4    went live on Monday, so that as those third-party payors

5    receive the notices, additional information is available.

6    The same thing with the phone bank available to answer

7    third-party payor questions about it as they receive the

8    notices.  We are on track with the consumer --

9              THE COURT:  So just remind me.  Is that just

10   Track 1 third-party payors, or is it Track 2 as well?

11             MR. NOTARGIACOMO:  It is just Track 1 third-party

12   payors, your Honor.

13             THE COURT:  And just in Massachusetts?

14             MR. NOTARGIACOMO:  Well, the third-party payors

15   could be anywhere in the United States.

16             THE COURT:  Right, but just with respect to the

17   Massachusetts 93A claim.

18             MR. NOTARGIACOMO:  That's right.

19             THE COURT:  Yes, I misspoke.  All right, so that's

20   going forward just on people who have claims under the

21   Massachusetts statute with respect to third-party payors just

22   for Track 1?

23             MR. NOTARGIACOMO:  Yes, your Honor.  The notice

24   included notice to third-party payors who would be in Class 2

25   as well as Class 3.
```

1          THE COURT:  All right, so for everyone.  I don't

2     have to worry about them again.

3          MR. NOTARGIACOMO:  That's correct.

4          THE COURT:  What about, when's the opt-out date?

5     What did we end up with?

6          MR. NOTARGIACOMO:  I believe October 1, 2006.

7          THE COURT:  Now, as I understand it, and I don't

8     know if you all saw this, I got a report from the Department

9     of Health and Human Services yesterday through Mr. Henderson

10    which basically said that, much more polite language, but

11    basically no way are they going to let the notice go in the

12    Medicare bulletin, legalese for "over my dead body."  So at

13    this point I think that that is a moot issue.  It's too

14    expensive; they don't want it.  It's not worth the holdup to

15    litigate the thing.  Does anyone feel differently about

16    that?

17          Okay, so we're back with the individualized

18    notice.  And, Mr. Henderson, are we on track for that?  Have

19    you checked?

20          MR. HENDERSON:  I haven't checked recently.  I've

21    certainly let the agency know of your order, and I haven't

22    heard anything, anything suggesting that they can't meet it.

23    I can certainly follow up to make sure.

24          THE COURT:  Okay, so what I want you to do is every

25    month check.

 1          MR. HENDERSON:  All right.

 2          THE COURT:  Because, as you can tell, I'm really

 3   moving this at this point, and I'm counting on a Class 1

 4   trial in March.

 5          MR. HENDERSON:  All right, I'll put that on my

 6   calendar.

 7          THE COURT:  You know, just tickler it in every

 8   month, write me a little status report just to make sure

 9   we're on track because I've got this whole thing triggered to

10   a March date.

11          MR. NOTARGIACOMO:  All right.

12          THE COURT:  All right, that's great, with respect

13   to Class 1.

14          Now we're dealing with September and November, the

15   two time periods.  I've had a chance to briefly read your

16   submissions because I didn't get them till late yesterday,

17   and I was on trial all day today and haven't had a chance to

18   return to them.  So the gist of it is, as I understand it,

19   everyone agrees nothing will happen as far as the trial in

20   September.  There's a disagreement about November, about

21   whether there should be any proceeding and what it should

22   look like.  You want to do Daubert in September.

23          MR. MONTGOMERY:  Correct, correct.

24          THE COURT:  But I'm just talking about the trial, a

25   basic merits proceeding, which we are going to get to.  I'm

1    going to do something in November.  I've locked it up, I have

2    staffed up, and that's what we're going to do.  So I reject

3    plaintiffs' request to move everything into March.  I reject

4    defendants' request to just do knowledge.  Knowledge is a

5    piece of it.  The plaintiffs have ignored the fact that

6    knowledge is relevant because I have a statute of limitations

7    problem.  I've got a discovery rule.  At the very least, we

8    have to find out what they knew and when they knew it for

9    when the discovery rule tolled, although you might be quite

10   right that it isn't dispositive on a 93A claim.

11        In addition, knowledge is quite relevant to

12   reasonable reliance, especially in the world of Class 3.  So

13   I will take whatever I learn in the trial in November, and I

14   will use it in dealing with the Class 3.

15        Class 2 is more of a statutory kind of claim,

16   although I still have the intent to deceive, and that

17   intent-to-deceive knowledge has some relevance as to whether

18   or not there was an intent to deceive.  So knowledge is

19   relevant, but it's not dispositive.

20        MR. MONTGOMERY:  Your Honor, we apologize that your

21   Honor did not receive our paper earlier.  I think our concept

22   about how to proceed in November is to focus, in order to

23   avoid any overlap with Class 1, on the conduct of the TPPs

24   and the context in which they were operating during the class

25   period, for your Honor to take all of the evidence that the

1    parties would present with respect to that scope.  And at

2    some point, of course, you're going to have to determine the

3    issues to which that evidence is relevant.  We certainly have

4    a disagreement about the relevance of this evidence, but

5    certainly it is relevant to the statute of limitations issue,

6    and that's why we focused on statute of limitations.

7            THE COURT:  Right.

8            MR. MONTGOMERY:  But we think it's broader.

9            THE COURT:  I think that I want to jump start this

10   for lots of reasons.  One is, this litigation is too slow.

11   I'm starting myself to feel bogged under by it without an end

12   in sight.  I think, to the extent that I hold a trial, I will

13   get a handle on the issues in a way that will make me a

14   better trial judge for the actual jury trial.  Two, I think

15   it will facilitate people taking a good look at whether

16   settlement is in their best interests; and, three, I can sort

17   of figure out as I'm going some of the expert issues without

18   having to have a major new Daubert hearing.  I was thinking

19   of possibly -- are you going to be calling your witness in

20   any event for that --

21           MR. BERMAN:  Our expert witness?

22           THE COURT:  Yes.

23           MR. BERMAN:  Yes, we are, your Honor.

24           THE COURT:  So one thought I have is, since you're

25   paying him by the day anyway, I'm sort of assuming, I would

1    see him some of the afternoons on the Track 3 expectation

2    kind of theory.

3              MR. BERMAN:  Correct.

4              THE COURT:  Does that make sense?

5              MR. BERMAN:  We were going to suggest that you can

6    do any Daubert-ing while you're listening and they're

7    cross-examining at that hearing.

8              THE COURT:  So I'm going to do Track 1, Class 2, in

9    November.

10             Now, I don't know what plaintiff is thinking about

11   when you're talking about -- what was it, 20 hours a side for

12   a 93A?  That was what you were talking about?

13             MR. BERMAN:  Well, what we think we need to do --

14             THE COURT:  You think you're going to do a

15   two-month trial?

16             MR. BERMAN:  No, we don't.  We think we need

17   roughly five to seven days --

18             THE COURT:  Three and a half hours a day.

19             MR. BERMAN:  -- to get in everything we need to get

20   in on knowledge.

21             THE COURT:  No, no, no, this is the whole -- catch

22   this -- the whole.  It's not just knowledge.  You're going to

23   prove your case, if you can.

24             MR. BERMAN:  Correct.

25             THE COURT:  So I don't know why it's just

1    knowledge.  You think you can do seven trial days to try

2    your -- so we'll do -- we'll have a three-week trial.

3              MR. BERMAN:  Correct.  We can get our liability

4    case out in five to seven trial days.

5              THE COURT:  But what about damages?

6              MR. BERMAN:  And damages.

7              THE COURT:  Okay, so seven trial days.

8              And what do you think you need?

9              MR. MONTGOMERY:  Your Honor, if you're talking

10   about trying the entire case on Class 2 and Class 3 --

11             THE COURT:  No, just Class 2.

12             MR. MONTGOMERY:  Just Class 2, and then you're

13   talking about doing Daubert --

14             THE COURT:  And there may be some overlap that I'll

15   just, you know, import into a Class 3.  I'm assuming a fair

16   amount will --

17             MR. MONTGOMERY:  Yes, but to just talk about

18   Class 2 and Class 3 together for a second, and just starting

19   with statute of limitations but extending to other issues,

20   we've got the same class representatives, the same kinds of

21   issues, the same conduct focusing on the TPP part of the

22   story.  So it's the same for Class 2 and Class 3 until you

23   get to the edges.  It's exactly the same.

24             THE COURT:  Well, the edges, though, are the really

25   hard economic issues because one's a statutory claim and

1    one's sort of more of a, was there an unfair or deceptive

2    practice that somehow inflated the price in a way the TPPs

3    couldn't have known?  So you may think it's identical or not.

4    I haven't thought it through --

5              MR. MONTGOMERY:  We do, and I know we need to have

6    more discussion, and this is not the time to do it.

7              THE COURT:  You need to have more discussion about

8    it, but, in any event, damages will vary dramatically.

9              MR. MONTGOMERY:  Damages will vary.

10             THE COURT:  Okay, so it's possible liability is the

11   same.  I really haven't given it any thought, so. . .  I'd be

12   willing to consider Track 2 and 3, but I want the whole

13   thing.  I want people to really focus on this.  How many

14   defendants are going to be in Track 1, four or five?

15             MR. BERMAN:  Just four, your Honor.

16             MR. MONTGOMERY:  No.  In Track 1 there are three.

17   Oh, excuse me, Class 1 is three.  Track 1 is four.  Excuse

18   me.

19             MR. BERMAN:  Four, and the fifth will -- we're

20   almost there.  Next week.

21             THE COURT:  The check's in the mail?

22             MR. SOBOL:  Yes.

23             MR. BERMAN:  Next week.

24             MR. SOBOL:  The check's in the mail.

25             THE COURT:  So that's where we'll go on it in

1    November.  But let's assume for a minute you're right, that

2    it ends up being both classes and I can maybe do the Daubert

3    hearing sort of simultaneously with the bench trial so that

4    we're not wasting additional time, how much time will it

5    take?

6              MR. MONTGOMERY:  Yes, I mean, this here is a lot

7    more complicated, your Honor, because if we're not talking

8    any longer as we were a month ago about the TPPs' conduct,

9    that evidence, and we're talking about the individual conduct

10   of each of four companies --

11             THE COURT:  Right.

12             MR. MONTGOMERY:  -- that we haven't thought about.

13   I think we need to confer.  We've got four separate cases.

14             THE COURT:  I do, I agree.  That's why I'm asking

15   this.

16             MR. MONTGOMERY:  And so I think I need to confer

17   and we need to talk about that.  We can do that right now,

18   but that's a --

19             THE COURT:  So you can prove against four separate

20   defendants in seven days?

21             MR. BERMAN:  Yes, your Honor.  We planned it out.

22   We've been anticipating this.

23             THE COURT:  Okay.

24             MR. MONTGOMERY:  May we have a moment?

25             THE COURT:  Yes.  You know, you don't have to do

1    this on the fly.  I mean, it's --

2            MR. MONTGOMERY:  We think it's a long time.  I

3    mean --

4            THE COURT:  Well, I'm not going to probably give

5    you everything you want because in a bench trial, I can play

6    with different ideas, like you can submit the direct by

7    affidavit, and then we can do cross, or you can do the direct

8    by affidavit and then do maybe an hour or two just to sort of

9    bring me along, if you will, to highlight your big points and

10   then have cross.  There's so much we can do, and I know this

11   case at this point, so I don't need background on the

12   industry so much.  It's always good to refresh my

13   recollection because there's the WACs and the MACs and, you

14   know, all the different acronyms, but basically I have some

15   sense of how it works, so I think it's not going to be so

16   hard.  But what date did we have it set for?

17           MR. BERMAN:  You just had a month.  You didn't give

18   us a date for the November trial.

19           THE CLERK:  Yes.  It's November 6.

20           MR. EDWARDS:  Originally, your Honor, you had

21   November 8 as a potential trial date for BMS when we were

22   doing Class 1 trials first.

23           MR. MONTGOMERY:  But in your recent order, you

24   simply said "in November."

25           THE COURT:  All right, so fair enough.  Okay, so

1    it's November 6?  Okay.  So I think that's right.  As soon as

2    I took Mr. Wise out of the hot seat as the only guy up there,

3    never did I see a happier man as he walked out of the last

4    hearing.  Hopefully you're going to have to prove against

5    separate defendants, so it is a bigger case.

6           MR. MONTGOMERY:  You know, another issue I just

7    would like to mention, if your Honor is going to do a

8    proceeding that focuses on the defendants' conduct, it is

9    important, I think, you understand that that same evidence is

10   then going to be presented in the individual company cases on

11   Class 1 beginning in March.

12          THE COURT:  A lot of it will be.

13          MR. MONTGOMERY:  It will be exactly the same

14   evidence, so there is some inefficiency.

15          THE COURT:  There's overlap, I understand that, but

16   I just can't wait, and then something else will happen, and

17   then something else will happen.  I need some forward

18   momentum on this case.  As far as I was concerned, September

19   was where I had blocked off huge amounts of time and staffed

20   up and was ready to go, and then this issue happened with

21   Medicare and with the plaintiffs assuming I'd go

22   publication.  That could happen again with another issue.

23   What if the Medicare machines break down or there's another

24   hurricane and then we get bumped again?  Things happen that I

25   can't control.  But I can control 93A and my schedule, your

1    schedules, short of a national emergency, so I plan on doing

2    this.

3              Now, to the extent I do this, does the United

4    States want to be part of this?

5              MR. GOBENA:  Your Honor, we've only intervened,

6    obviously, against Abbott labs and Hospira, so I don't

7    believe they're one of the defendants in that.

8              THE COURT:  No, but I sure could use some amicus

9    help on some of these issues.

10             MR. GOBENA:  If your Honor would like that, we'd be

11   more than happy to provide amicus briefing on any issues that

12   your Honor would like.

13             THE COURT:  So that's a good thought.  On

14   individual -- what's coming up obviously, is, will people

15   from the Center for Medicare and Medicaid Services be

16   subpoenaed as part of the trial?

17             MR. EDWARDS:  No.

18             MR. BERMAN:  Not from us.

19             MR. MONTGOMERY:  We don't know.

20             THE COURT:  Okay.  So one thing, you could work

21   together with them so -- Toohy regulations, is that it?  Is

22   that the name of those regulations that you don't get anyone

23   unless you jump through three hurdles --

24             MR. HENDERSON:  That's the name of it.

25             THE COURT:  -- and do a backward flip, right?  You

```
1    have to decide sooner rather than later if you want a

2    government witness.  The issue that might be worthwhile,

3    which I cannot rule on motions for summary judgment till

4    class notice goes out, a problem, at least for -- so, as I

5    understand it, the motions for summary judgment are just

6    sitting there on what AWP means, if you would like to submit

7    an amicus as a statutory matter.

8                   MR. GOBENA:  You're asking the United States, your

9    Honor?

10                  THE COURT:  Yes.

11                  MR. GOBENA:  Yes, I mean, if your Honor would like

12   that, we can do that.

13                  THE COURT:  Thank you.  So do I need my own

14   expert?  You all know this case at this point better than I

15   do.  Is there anything that's going to be so hard -- the one

16   thing I'm worrying about is not the basic case; I think I can

17   understand it as well as the next person.  It's assessing the

18   Daubert challenge.  We've let go our independent expert, and

19   the question is, on the expectation theory, which is a novel

20   one, and I understand it's derived from the antitrust area,

21   should I get somebody?

22                  MR. MONTGOMERY:  Your Honor, if you think it would

23   be helpful, we certainly wouldn't disagree that it may.  And

24   while we let Professor Byrne go, I think there's still the

25   reservation that you have to ask him if he's available again.
```

1          THE COURT:  I talked with him, and I'm just trying

2     to remember.  I think he had a few offers to do things with

3     the industry, and it was going to conflict him out.

4          MR. CAVANAUGH:  Your Honor, we took an informal

5     poll.  We don't think any of the companies have retained him

6     at this point.

7          THE COURT:  I could give him a call.

8          MR. BERMAN:  We were asked, if you recall, to stop

9     retaining him because he wanted to go work for the industry.

10          THE COURT:  But maybe he never did, but I think he

11     had an -- I can't remember what it was.  I think -- you know,

12     it's funny, you think you remember and you don't -- I think

13     he had an opportunity to go work with somebody in the

14     industry, and he wasn't going to take it if I definitely

15     needed him, and I told him at that stage I wasn't sure.

16          MR. BERMAN:  But our concern is that it may not be

17     these four but it may be three others in the AWP case that --

18          THE COURT:  Well, I'll ask.  I'll ask.  And if not,

19     I'll try and find somebody else.  Do you have somebody else

20     that you all agreed upon?  Was there a runner-up when we put

21     him in the saddle?

22          MR. CAVANAUGH:  No.

23          MR. MONTGOMERY:  No.  They suggested

24     Professor Byrne, and we accepted.

25          MR. SOBOL:  Can we have a moment, your Honor?

```
1              THE COURT:  Yes.

2              (Discussion off the record amongst plaintiffs'

3    counsel.)

4              MR. SOBOL:  The concern, your Honor, that the

5    plaintiffs would have regarding either Professor Byrne or

6    some other independent expert before you would be a vehicle

7    by which any of the parties could at least question the

8    expert if the expert was going down a trail which they,

9    frankly, thought was incorrect.

10             THE COURT:  I think that's actually helpful.

11             MR. SOBOL:  And that would be an important

12   procedural safeguard to make sure that --

13             THE COURT:  So we're at the trial stage, not the

14   class cert stage.

15             MR. SOBOL:  Sure.

16             THE COURT:  I think that's totally fair, I agree.

17   Yes, that makes sense because even somebody who's neutral, I

18   mean, it's a difference of expert opinion.  It would

19   highlight, at least, the fair areas of disagreement.  So if

20   he can't do it, I have actually one other person partly in

21   mind, although I haven't asked him so I'm reluctant to

22   float --

23             MR. CAVANAUGH:  Don't tell us.

24             THE COURT:  -- that I might call, and if he's

25   available, then float the name, but I'll start with
```

1     Professor Byrne.

2          Okay, so proposed findings of fact and law, I don't

3     think I need a pretrial memo.  I don't have the room for all

4     the memos that I've received in my office, so I think what

5     we're better off doing is a brief set of proposed findings of

6     fact and law just to give me a heads-up about where you're

7     going, and then it can be supplemented afterwards.  Does that

8     make some sense to all of you?  I'm talking about, you know,

9     20, 25 pages for proposed findings.  We could do it the way,

10    actually, you've done it in the past; maybe 25 pages sort of

11    on any common industrywide issues and maybe -- does it make

12    sense to do 15 for each company?  I'm going to be getting

13    very company-specific.  I mean, at this point, I have to be

14    quite candid, I haven't so much except for maybe a drug here

15    or a drug there, and I'm assuming that it's going to have to

16    be very specific per company.

17         MR. CAVANAUGH:  It will be.

18         MR. MONTGOMERY:  I think that would be easy for all

19    of us to do, your Honor.  I mean, we do have summary judgment

20    papers in front of you.  If it's more efficient for you to

21    see this shorter form --

22         THE COURT:  Would that be -- I mean, my concern is,

23    as soon as I wait until after the trial to get proposed

24    findings of fact, you will all ask for a month.

25         MR. MONTGOMERY:  We're fine --

1                THE COURT:  And then you ask for a continuance.

2                MR. MONTGOMERY:  We're fine submitting proposed

3     findings beforehand.  I'm just reminding your Honor that

4     there are summary judgment papers which --

5                THE COURT:  Do you all want to rely on that?  That

6     makes sense.

7                MR. BERMAN:  No.  We would like to submit proposed

8     findings.

9                THE COURT:  Well, here's the issue with doing it

10    afterwards:  I forget, the problem is.  I'm on to seventeen

11    other things.  I've got, believe it or not, two other MDLs.

12    I've got a lot of criminal cases.  So I'll forget.  So when

13    you ask for a month, and then you'll ask for a month

14    continuance, and then you want to reply to one another, and

15    now by the time I get to it, it's four or five months out,

16    and I've forgotten.  So I think we're really much better off

17    with things in advance.  And if you think the summary

18    judgment motions, I can use that, that would be great.

19               MR. BERMAN:  We need to first put in findings that

20    focus more on the 93A issues and all our evidence related to

21    that than we did in the summary judgment.

22               THE COURT:  All right, fair enough.  Really just so

23    you don't all have to coordinate, do you want to each do a

24    20-page memo, that's it?   I'll let you supplement

25    afterwards, 20 pages of proposed findings of fact per

1    defendant, because it's going to be very defendant-specific,

2    and --

3              MR. MONTGOMERY:  Do you want common?

4              THE COURT:  If you do.  Otherwise I could just rely

5    on the summary judgment.  The common stuff, I think I know

6    what you're going to say.  Whether you prove it up, I don't

7    know, but I think I know the case.

8              MR. MONTGOMERY:  When would you like it?

9              THE COURT:  I don't know.  How about a week

10   beforehand?  Does that seem fair enough?

11             MR. CAVANAUGH:  That's fine.

12             THE COURT:  And you just told me this, but when was

13   the opt-out time for the third-party payors?

14             MR. NOTARGIACOMO:  October 1, your Honor.

15             THE COURT:  So if I were to rule on the motion for

16   summary judgment, it would probably have to be sometime in

17   October, if I did.  I may just move it all into the bench

18   trial, depending on how it goes.

19             Is that all we need to deal with?

20             MR. BERMAN:  Could I just ask -- and maybe everyone

21   in Boston knows this, but I don't -- what days of the week

22   you're going to hold court and the what the times will be?

23             THE COURT:  In general, we go from 9:00 to 1:00

24   with a half an hour break at 11:00.

25             MR. EDWARDS:  Five days?

1            THE COURT:  Five days a week.

2            MR. EDWARDS:  Your Honor, I assume we're going to

3     have some exchange of witness lists and exhibits?

4            THE COURT:  Yes, we'll send out a little pretrial

5     order in general, yes, and premarked exhibits, and I'll want

6     a set of exhibits for me and a set of exhibits for my law

7     clerks.  And I will guarantee you that if you start giving me

8     18 boxes a side, I won't look at it.  I won't look at

9     anything that's not flagged for me at the trial so I can put

10    a sticky on it and underline it because I'm just not going to

11    sit and read huge boxes of documents.  So it would be very

12    useful to have them here, and you'll turn me to such and such

13    a page, and I will underline it, asterisk it and put a flag

14    on it.  But I'm not going to just sit and randomly read

15    exhibits.  It's not worth it just for an appellate record.

16           So, you know, we can just do it right now.  A week

17    beforehand you'll get me -- is that acceptable for a witness

18    list, or do you want to know it further in advance than

19    that?  Two weeks in advance?

20           MR. EDWARDS:  Yes, I would think further in

21    advance, your Honor, so we can prepare for cross-examination.

22           THE COURT:  All right, on both sides.  So two weeks

23    in advance, witness lists, premarked exhibits, and share them

24    with one another; any motions in limine, although with a

25    bench trial, I'll tend to just go as we go.  And the key

1    unanswered question, absolutely essential, is:  Do you agree

2    that we should do 2 and 3 at the same time?

3            MR. BERMAN:  No.  We think, given the breadth of

4    the evidence that you're going to hear in 2, we have to prove

5    our case against each person, defendant, we should just get

6    one clean shot done; and that by doing 2, we're going to have

7    laid a foundation for 1 and 3 later on.

8            THE COURT:  So what is the increment -- other

9    than -- damages is obviously key, that whole expectation

10   theory, but other than that, what would be different?

11           MR. BERMAN:  Testimony about how people were

12   looking at AWP used in the non-Medicare context.  There's

13   that whole other umbrella of, you know, they're going to say

14   there were negotiations; we're going to say there were no

15   negotiations.  They're going to say physicians had market

16   power to change it; we're going to say that they didn't.

17   None of that is in Class 2 because they had to pay per

18   statute.

19           THE COURT:  Well, what if we were to just make it

20   in a Class 2, but I would take everything from Class 2?  In

21   other words, I wouldn't start again from scratch.

22           MR. BERMAN:  That would be fine with us as well.

23           THE COURT:  And we could set something maybe in

24   January -- well, we may all be dead by then, this is such a

25   huge effort.  And you'll get me if you think I should do it

1    all at once, and then maybe you'd explain why you think it's

2    appropriate within the next week or two?  Does that make

3    sense, a couple of weeks?  And you'll tell me why it isn't,

4    and then we'll have plenty of time to resolve it.

5           MR. MONTGOMERY:  Thank you.

6           THE COURT:  But if we move beyond that, even if I

7    only do 2, I would be planning on doing 3 pretty fast right

8    afterwards.  And also, if you could give me some really fair

9    sense of how long you think it would take and the difference

10   between 2 and 3, would it make a difference, that would be

11   really useful.

12          MR. EDWARDS:  Your Honor, at the risk of belaboring

13   the issue, would it make sense for plaintiffs to provide

14   witness lists and exhibit lists first so that we're not

15   passing like ships in the night if we do it simultaneously?

16          MR. BERMAN:  It should be mutual, your Honor.  We

17   have a lot of work to do, and to make us give it to them

18   earlier is a lot.

19          THE COURT:  But it does make some sense.  So three

20   weeks in advance of the trial you do it.  Two weeks in

21   advance of the trial you do it, and then you can supplement,

22   as long as --

23          MR. BERMAN:  That's fair.

24          THE COURT:  Okay, to meet head on what they're

25   going to do, okay?  And then my --

1          MR. SOBOL:  Witnesses and exhibits, your Honor?

2          THE COURT:  Yes.  And my sense is, for people out

3     of town, we're certainly not going to do it the Wednesday

4     before Thanksgiving so you can get out of here by Tuesday,

5     and I'll stop the week before Christmas so people can be home

6     for Christmas parties and the like.  So I've got to assume

7     we're going to be done before Christmas.  At least I'll be

8     very reluctant to have a trial go beyond that, let's put it

9     that way.  So that would leave us what, six weeks?  This is

10    probably only going to be a month anyway.  I doubt I'm going

11    to let it go a full six weeks.  So are we all set?

12         MR. DALY:  Your Honor, I wanted to address the

13    amicus point that your Honor raised, speaking for Abbott and

14    Hospira.  The federal government, the Department of Justice,

15    CMS, they are now in this case.  They are advocates, they are

16    litigants.  And Abbott, for one, would object to an amicus

17    brief being filed by an advocate in a matter that's before

18    your Honor.  For example, we have a motion to dismiss that's

19    pending that your Honor will be looking at in due course, and

20    we would object to the United States being treated as an

21    amicus on issues that will be litigated in this case with

22    them as a party.

23         THE COURT:  I understand, but a lot of the -- and I

24    will take it with that weight that they're now in it.  That

25    having been said, it's a statutory issue and they're the

1    agency.  I'm assuming they're going to represent CMS in this,

2    right?

3              MR. GOBENA:  They're our client, your Honor.

4              THE COURT:  They're your client?  So I would like

5    to know what CMS's position is.

6              MR. GOBENA:  Your Honor, a procedural matter

7    related to that.  When would you like any briefing on this

8    issue?  I mean, I understand you have a trial coming up.

9              THE COURT:  I'm not here to destroy your family

10   vacation.  When could you do it?

11             MR. GOBENA:  You know, I think I'd probably need a

12   few weeks.

13             THE COURT:  You're getting a whisper from over

14   here.

15             MR. GOBENA:  Your Honor, if we could have it by

16   September 15, the second week in September, if everything's

17   provided, that would be helpful for us.

18             THE COURT:  September 15.

19             MR. GOBENA:  Is that too late for your Honor?

20             THE COURT:  Okay.  But it can't be an extension

21   because the truth is, if I'm going to rule on it, the motion

22   for summary judgment, I can't rule on it until after the

23   opt-out period, which is only two weeks later.  However, the

24   trial is looming.  I'm not sure I can get out a decision -- I

25   may merge it all into the bench trial, but it can't be any

1    later than that.  So I know you have a thousand hoops to jump

2    through down there, but I'll need it.

3            And let me ask you this:  If they need some witness

4    from the Center for Medi -- either side decides to call

5    someone, are you the person they should get in touch with to

6    sort of jump any of those hurdles?

7            MR. GOBENA:  Either contact myself or

8    AUSA Henderson.

9            MR. DeMARCO:  Your Honor, on behalf of the

10   Track 2s --

11           THE COURT:  Yes, I saw you sitting back there

12   silently.

13           MR. DeMARCO:  Thank you.  Good afternoon, your

14   Honor.

15           THE COURT:  Good afternoon.  Welcome back.

16           MR. DeMARCO:  If the Track 1s are finished, we just

17   wanted to have a few minutes to address a couple of lingering

18   Track 2 issues, in light of the upcoming class cert hearing

19   next month.

20           THE COURT:  Okay.  I haven't read it yet.

21           MR. DeMARCO:  That's fine.  We don't want to cut

22   into their time.

23           THE COURT:  No, they're done.

24           MR. DeMARCO:  They're done.  Okay, well, my

25   colleague Scott Stempel would like to raise a couple of

1    issues with respect to the class cert hearing and a couple of

2    other housekeeping matters as well.

3          MR. STEMPELL:  Your Honor, just one issue with

4    respect to the class cert hearing that occurs.  As you were

5    discussing the possibility of bringing in an independent

6    expert, we thought it was a terrific area when you did it to

7    consider class certification for Track 1.  We've got the

8    hearing coming up.  Professor Byrne specifically identified

9    some areas that were in need of further development of the

10   record, which is exactly where we focused in discovery when

11   you sent us off to do discovery; specifically, the treatment

12   of multisource drugs and private payor physician-administered

13   drugs.  And we think it would be helpful to have an

14   independent expert, Professor Byrne if he's available,

15   consider the record that we've developed to shed some light

16   on any lingering questions.

17          THE COURT:  On class cert?

18          MR. STEMPELL:  On class cert, in continuation of

19   the role he has played, and in fact --

20          THE COURT:  I'll see.  I released him, so I just

21   would have to find out.

22          MR. STEMPELL:  There's one housekeeping issue that

23   Abbott and Dey have asked me to raise, and that is an open

24   issue on an objection from a ruling from Magistrate Bowler.

25   It's Docket 2140.  It was fully briefed back in March, and it

1    had to do with a --

2            THE COURT:  The objections were briefed?

3            MR. STEMPELL:  Yes, the objections were briefed.

4    Judge Bowler issued an order quashing some third-party

5    subpoenas and --

6            THE COURT:  I'm sorry, I missed that, so I'm glad

7    you brought that up, so we'll get those.

8            MR. STEMPELL:  And just to alert you, we believe we

9    have reached an agreement, and we'll be submitting a joint

10   scheduling order relating to Mr. Bean, who is the belatedly

11   added class rep.

12           THE COURT:  Okay, thank you.  And have we

13   subpoenaed CMS yet for the lists with respect to Track 2 so

14   I'm not back where I started?

15           MR. BERMAN:  We're right on the verge.

16           MR. MONTGOMERY:  Your Honor, with respect to the

17   amicus brief, we would like leave to respond, if there's

18   anything we need to respond to it.

19           THE COURT:  Of course.

20           MR. MONTGOMERY:  And in particular, we'd like to

21   address the question, at least these three gentlemen would,

22   whether it's appropriate for your Honor to rule on the

23   statutory issue in light of the pendency of the notice

24   process with respect to Class 1.  I think there's a potential

25   complication there as a Rule 23 matter.

```
1              THE COURT:  Well, I can do it with respect to TPPs,
2    and then I'm going to have to do it again with respect to
3    Class 1.  And that's a legal issue, in any event.  What I'm
4    trying to say is, the odds of my issuing an opinion before
5    the -- what it might mean I have to do is wait until the
6    opt-out period for Class 1.
7              MR. MONTGOMERY:  And that's all I was suggesting.
8              THE COURT:  But it doesn't mean I have to stop
9    doing the trial.
10             MR. MONTGOMERY:  I wasn't suggesting that, your
11   Honor.  It was just a matter of when you issue a ruling.
12             THE COURT:  It's a good question because
13   essentially, while not technically binding on the class, as a
14   matter of law of the case -- I wouldn't be violating anything
15   by doing that, but the question is whether it's wise.  Do you
16   follow me, Mr. Sobol and Mr. Berman?
17             MR. BERMAN:  Yes, your Honor.  And our position is
18   that since you're not ruling on a claim but you're only
19   ruling on the legal meaning of the term, that you can do that
20   before the Class 2 trial, and that it's really not --
21             THE COURT:  It may be.  I just haven't thought of
22   it, and it's a great point.  I'll think of it.  If worse
23   comes to worse -- I mean, I'm not going to spit this thing
24   out like a, my expression, an ATM ruling where you stick in
25   the card and out comes the opinion.  The odds of my even
```

1    finishing it before the opt-out period for the Class 1s is

2    pretty low, I think, so -- okay, great, have a nice summer,

3    because I don't see you again, do I?

4              MR. BERMAN:  No, your Honor.

5              THE CLERK:  Court is in recess.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T E

 2

 3

     UNITED STATES DISTRICT COURT )

 4   DISTRICT OF MASSACHUSETTS     ) ss.

     CITY OF BOSTON                )

 5

 6

 7

 8          I, Lee A. Marzilli, Official Federal Court

 9   Reporter, do hereby certify that the foregoing transcript,

10   Pages 1 through 35 inclusive, was recorded by me

11   stenographically at the time and place aforesaid in Civil

12   Action No. 01-12257-PBS, MDL No. 1456, In re:  Pharmaceutical

13   Industry Average Wholesale Price Litigation, and thereafter

14   by me reduced to typewriting and is a true and accurate

15   record of the proceedings.

16          In witness whereof I have hereunto set my hand this

17   8th day of August, 2006.

18

19

20

21

22

23          _____

            LEE A. MARZILLI, CRR

24          OFFICIAL FEDERAL COURT REPORTER

25
```