# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

**ABBOTT LABORATORIES, INC.'S SUR-REPLY TO
UNITED STATES' AND RELATORS' MOTION FOR A PROTECTIVE ORDER**

The Court should refuse the Government's request for a wholesale revision of the Protective Order (*see* Dkt. No. 276) under which the parties to MDL 1456 have operated, virtually without incident, for nearly four years. The Order was the subject of extensive negotiations, and applies to *all* cases in the MDL – including this one. (*Id.* ¶ 1.) The Government could have been part of those negotiations had it not chosen to wait *eleven years* to unseal its complaint against Abbott. Nevertheless, to the extent that the Government genuinely has unique interests, those considerations are addressed in the slightly amended MDL 1456 Protective Order attached as Exhibit A to Abbott's Response.

In considering the Government's request for a new Protective Order, the Court should keep in mind a few important points:

1. **The Court Already Has Resolved The Issue of "Sharing" With Government Plaintiffs.** The Government seeks the right to disclose all of Abbott's Confidential documents with any and all State officials (and agents and private counsel) for any reason or for no reason at all. The Court already has determined that such unfettered sharing of discovery is not warranted, and has set forth in CMO 9 reasonable parameters to permit government plaintiffs access to

documents relevant to their claims.  Upon request, defendants who produced documents to MDL plaintiffs:

> shall make those documents available to any government plaintiff in any action included within MDL 1456, *except that no plaintiff shall be entitled to have access to*: a) documents produced by a defendant that is not named as a defendant in the operative complaint filed by such plaintiff, b) documents relating to drugs that are not identified in the operative complaint filed by such plaintiff, and c) documents produced by a defendant that are not otherwise relevant to claims asserted against that defendant in the operative complaint filed by such plaintiff.

Abbott has already produced documents fitting this description to the Government.

The Government's request for sharing provisions broader than CMO 9 can only mean that it (a) wants documents that have nothing to do with its case; (b) wants to share them beyond the MDL in other cases being presided over by other courts – perhaps in flat defiance of relevancy or other rulings in those courts; or (c) wants to share them with people who have not even sued Abbott on the allegations at issue in this case.  This Court in CMO 9 already has decided that such uses of MDL 1456 discovery are not appropriate and should not be allowed.

    2.    **Abbott's Confidentiality Designations Should Not Concern This Court.**  The Government complains at length about Abbott's Confidentiality designations, both in this and in other cases, but curiously refuses to avail itself of existing procedures to resolve such disputes in MDL 1456.  (*See* Dkt. No 276 ¶ 17.)  Under the Protective Order pursuant to which Abbott made its designations, the parties must "try first to dispose of such dispute[s] in good faith on an informal basis." (*Id.*)  Abbott has offered several times to address any concerns Plaintiffs might have about its designations.  (*See* Ex. A at 2; Ex. B at 5.)  Rather than abide by these procedures, the Government has filed its Motion, asking the Court to change the entire framework of the MDL 1456 Protective Order regarding what is Confidential and how Confidentiality designations are challenged – but only for cases in which it, the Government, is a party.   This Court need not give special treatment to the Government to resolve this dispute, but should

instead direct the Government to discuss its complaints with Abbott and, if necessary, utilize the dispute resolution procedures contained in the existing Protective Order for MDL 1456.

3. **Ven-A-Care Has Access To Abbott's Documents Under Abbott's Proposed Order.** The Government contends that Abbott's proposed order would not allow the Relator in this case to see Confidential materials. That is wrong. Abbott's proposed order, like the existing Protective Order, would allow Ven-A-Care's in-house counsel to review such materials, just as it would allow Abbott's in-house counsel to review Ven-A-Care's and the Government's Confidential documents. (*See* Dkt. No. 3153, at Ex. A ¶ 4(a).)

4. **Abbott's Proposed Order Permits Witnesses To See Documents.** The Government contends that Abbott's proposed order would not allow witnesses to see Confidential or Highly Confidential materials. The order itself states otherwise. (*See id.*, at Ex. A ¶¶ 4(f) & 6(f).) As to "potential" witnesses – whatever that might mean – the Government offers no explanation why such persons should get to see Abbott's Confidential documents.

5. **Any Changes To The MDL 1456 Protective Order Should Apply Equally To Both Parties.** Finally, this Court should not grant the Government's request for special treatment. In many instances, the Government's proposed order seeks to place special burdens on the defendant or grant privileges only to the Government. If the Court accepts any of the Government's proposed provisions, it should change them to refer neutrally to the obligations and rights of "the parties."

## CONCLUSION

The Motion should be denied, and discovery should proceed in this case – as in all others consolidated in this MDL – under the MDL 1456 Protective Order, as amended and attached as Exhibit A to Abbott's Response. (Dkt. No. 3153, at Ex. A.)

Dated:  October 20, 2006

Respectfully submitted,

/s/ Brian J. Murray
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113

TELEPHONE: (202) 879-3939 • FACSIMILE: (202) 626-1700

Direct Number: (202) 879-3734
christophercook@jonesday.com

September 15, 2006

VIA EMAIL

Mark A. Lavine, Esq.
Assistant United States Attorney
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

    Re:   *U.S. ex rel. Ven-A-Care v. Abbott Laboratories and Hospira, Inc.*,
              Case No. 06-CV-21303-ASG

Dear Mark:

    This letter responds to the production issues raised in your letter of September 7, 2006 and identifies a few more issues with Plaintiffs' initial production. I will give you a call shortly to set up a time to discuss these issues, as you suggest. As noted below, however, I would ask you to contact Beth O'Connor in our Chicago office to discuss confidentiality designations.

### Abbott's Production

    *OCR Files.* You have requested that Abbott produce OCR and related load information for the seven disks produced by Abbott in its initial disclosures. The question of OCR data falls into two categories:

> As to **paper documents** that have been produced as images rather than hard copies, neither party is obligated to produce OCR data. To the extent that we pay for a vendor to conduct OCR or other coding of such documents, we do not intend to share that work product with the government, nor do we expect the government to share its work product with us under similar circumstances.

> As to **electronic documents** such as emails, OCR processing is not necessary if the documents are produced either in native format or in another format that preserves all of the digital text in the document. CMO 10 requires that electronic documents be produced in electronic format. As you know, this is an issue we have raised also, and I recommend that we come to a mutual understanding about how the parties will handle production of such electronic documents in order to maintain text fields and metadata. To answer your specific question regarding our


EXHIBIT A

JONES DAY

Mark A. Lavine, Esq.
September 15, 2006
Page 2

initial disclosures, the information on CD ABTDOJE0001 that you believed to be OCR data was, in fact, text extracted from electronic documents.

***Bates Numbers.*** No Bates numbers were removed in connection with Abbott's initial disclosures. During the ten-plus years in which the government's investigation has been underway, the technology of document productions has changed. Early document productions were made in paper format and subsequently scanned. Later document productions have been purely electronic. If a document was previously produced in paper format, the scanned version you received reflects the physical sticker that we put on the document at the time of that production. As to documents previously produced in electronic format, Bates numbers were endorsed electronically at the time of production. In those cases, the Bates number endorsements were specific to those productions; therefore, the Bates numbers would not be contained in the ABT-DOJ document production.

***Redactions.*** To the extent that any documents were redacted to exclude information on the basis of relevancy, Abbott has produced complete, unredacted versions of those previously redacted documents as part of its initial production. To the extent that you have seen documents that have been redacted to excise portions relating to certain drugs, you also should find in our disclosures a non-redacted copy of the same document.

As to redactions for privilege, I do not believe that we are obligated to provide a privilege log at this time. I will be happy to discuss with you, however, the timing and details of the parties' exchange of such privilege logs.

***Confidentiality Designations.*** Your letter cites documents transmitted by Abbott employees to publishers as examples of unwarranted confidentiality designations. We believe that Abbott's confidentiality designations are appropriate under the "commercially sensitive information" requirement of the governing MDL protective order. Abbott's confidentiality designations have not been challenged in the MDL, and I strongly believe our clients have more important matters to address in this litigation. Nevertheless, if you wish to discuss the validity of specific confidentiality designations, please call Beth O'Connor at 312-269-1529 to arrange a mutually convenient time.

### Plaintiffs' Production

***PSPS Data.*** We have discovered significant problems with the Medicare Part B Physician Supplier Procedure Summary ("PSPS") CDs produced as a part of Plaintiffs' initial disclosures. Plaintiffs produced PSPS data for the period 1991 to 2004. We have identified two issues with the data.

JONES DAY

Mark A. Lavine, Esq.
September 15, 2006
Page 3

First, the data for 1994 to 2004 appears to be incomplete. The files for these years do not contain any records for the J-Codes identified in paragraph 35 of the Complaint. Indeed, the data does not contain any J-Code records at all; this may be a lack of certain files. The data for 1991 to 1993 contains 26 self-extracting executable files. Two of these files, named "ALPHAB" and "ERRANT1," contain records for J-Codes. As to each year from 1994 to 2004, by contrast, the CDs contain from four to 20 files. For none of these years do we have files named "ALPHAB" or "ERRANT1." The last file we received had a size of 0 K and does not extract itself.

Second, the data for 1991 to 1993 does not contain records relating to J7051, one of the J-Codes identified in the Complaint.

***Documents Redacted or Removed for Relevancy.*** The government has removed or redacted certain documents from its initial disclosure based on alleged lack of relevancy. For example, the pages immediately preceding and following the six-page document numbered HHC001-0614 through HHC001-0619 have been "removed for relevancy" according to your production. To quote your September 7 letter on this topic, "it would be quite difficult to identify a privilege that would support such redactions." Accordingly, we ask you to reverse all redactions not based on privilege and produce complete copies of documents redacted on the basis of relevancy, as Abbott already has done.

***First DataBank and Wholesaler Information.*** If, as you say, the documents previously produced by First DataBank, wholesalers and any other third parties are not voluminous, we would ask that you provide copies to us as quickly as possible. As with all productions, we prefer to receive scanned images.

Sincerely,

/s/ R. Christopher Cook

R. Christopher Cook

cc:  Gejaa Gobena
     James J. Breen
     Renee Brooker
     Ann St. Peter-Griffith

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

October 13, 2006

VIA EMAIL

Mark A. Lavine, Esq.
Assistant United States Attorney
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

    Re:    *U.S. ex rel. Ven-A-Care v. Abbott Laboratories and Hospira, Inc.*,
              Case No. 06-CV-21303-ASG

Dear Mark:

    I write to follow up on the various discovery issues we discussed last Wednesday, October 3, 2006, and to summarize my understanding of where the parties stand on those issues.

### Plaintiffs' Production

    ***PSPS Data.***  You have reviewed the PSPS data on the CDs in your possession and believe, with the exception of J-Code 7051, that your CDs have the relevant PSPS information for J-Codes named in the Complaint for the years 1991 through 2004. For each year, the relevant information is contained in a file named "ALPHAB." Our disks for the years 1994 through 2004 do not contain an a file titled "ALPHAB." You believe this was likely the result of a copying error. You have agreed to send us corrected CDs for the years 1994 through 2004, as well as information for J-Code 7051.

    *Status:*  We received today CDs from you in response to our request for corrected data. We will review the data and, if we still cannot access it, contact you further.

    ***Documents Redacted or Removed for Relevancy.***  You agreed to review those documents from the Government's initial disclosure production that have been redacted with the notation "removed for relevancy." We previously identified the pages immediately preceding and following the six-page document numbered HHC001-0614 through HHC001-0619 as an example of such redactions. Unless these documents are privileged, or the government can articulate some other legally sufficient reason not to produce them, we have asked that you produce unredacted copies of these documents.

    *Status*:  You indicated that you could get us an answer to this question in approximately one week.


EXHIBIT B

**JONES DAY**

Mark A. Lavine, Esq.
October 13, 2006
Page 2

***First DataBank Documents.*** You indicated that you would image and send all of the documents produced by First DataBank that related to Abbott, but that it would take some time to separate out the documents that do not relate to Abbott. We advised you that we are requesting the production of all documents produced by First Databank — including documents that do not relate specifically to Abbott products — and that you need not go through the effort of separating the documents. You agreed to take my request under advisement.

*Status*: You stated that we could expect to receive a CD of the First DataBank documents, at least those relating to Abbott, within two weeks.

***Wholesaler and Other Third Party Documents.*** You noted that documents produced to you by wholesalers (which comprise approximately 100,000 pages from 15 to 20 companies) were produced in response to subpoenas from HHS, and that there may be confidentiality issues to consider before producing them. You are contacting these companies to determine whether they want to assert a confidentiality objection before producing these documents to us.

*Status*: You were unable to commit to a specific date to produce these documents. We are interested in expediting this process in order to gain access to all documents, data or information the government has in its possession or control as a result of its ten-year investigation. At the earliest possible time, we would like to determine whether that material is relevant to our case and, if it is, to decide how we can most efficiently review or copy the material. To speed that process, we respectfully ask that you provide us a description, including the source and volume, of all such documents, data and other information that the government gathered in the course of its investigation.

***File Source Index.*** You did not know whether the Government would be able to provide a File Source Index for the Government's initial document production.

*Status*: You indicated you could determine whether the Government could provide a File Source Index for the documents produced fairly quickly, in any event within two weeks. We also will determine the extent to which Abbott can provide similar information for its productions to date.

***Production of Electronic Documents.*** In order to facilitate the exchange of electronic documents in electronic format, you will forward a document that sets forth the guidelines the DOJ typically uses when requesting production in electronic format. We will share that document with our technical personnel when we get it.

*Status*: I received an email from you with DOJ electronic production guidelines, and I have forwarded that to the appropriate people here at Jones Day. I hope to have someone contact you shortly to negotiate a mutually agreeable format for electronic document exchanges.

**JONES DAY**

Mark A. Lavine, Esq.
October 13, 2006
Page 3

***Carriers and Fiscal Intermediaries.*** We have again asked whether the Government, as Plaintiff in this action, will consider documents in the possession of Medicare carriers or Medicaid fiscal intermediaries to be in the possession of the "United States," such that document requests directed to the "United States" are sufficient to request production of responsive materials in the possession of such entities. If your position is that we must serve subpoenas on these carriers and intermediaries, we have asked you whether DOJ represents these entities and will accept service of these subpoenas. You did not yet know the answer to these questions.

*Status*: You stated you would have an answer for us on this issue within one to two weeks.

***Under-seal File.*** We again asked you to produce all documents in any way related to Abbott that were filed under seal in the Southern District of Florida or elsewhere in connection with Ven-A-Care's *qui tam* lawsuit. This request has been outstanding for months, and we again ask you to provide a copy of the Abbott-related pleadings filed under seal in this lawsuit against our client. *See* Letter from J. Daly to M. Lavine dated July 13, 2006. Once the seal was lifted as to the allegations against Abbott, Abbott was entitled to receive those materials immediately. The current stay of *discovery* between the parties is irrelevant to Abbott's entitlement to view *pleadings* for which there is no longer any legitimate basis to be filed under seal. *See, e.g., U.S. ex rel. McCoy v. California Medical Review, Inc.*, 715 F. Supp. 967, 968 (N.D. Cal. 1989) ("neither [§3730(b)(2)] nor any other [section] in the FCA provides authority for retaining the civil action under seal once the Government has elected to intervene"); *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228, 1230-31 (N.D. Ala. 2000) (noting that the act "makes no mention of the government's right to keep *in camera* information under seal indefinitely" and finding "no authority under the [FCA] or elsewhere to hold information relating to this cause under seal") (citation omitted). *See also Nixon v. Warner Comm'n, Inc.*, 435 U.S. 589, 597 (1978) ("courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents").

*Status*: You stated that you would let us know your position on this issue within a week. Please advise us immediately on this issue, so that we can determine whether to seek relief from the Court.

***Relator Statement.*** We asked for production of the statement submitted to the government by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2).

*Status*: You stated that you would let us know your position on this issue within a week.

***Privilege Logs.*** We discussed whether we could agree on a time period in which to exchange privilege logs. Abbott proposes that the parties exchange privilege logs within 30 days after a document production is complete.

JONES DAY

Mark A. Lavine, Esq.
October 13, 2006
Page 4

*Status:* You are going to determine whether the Government can agree to the production of a privilege log within 30 days from the date that a document production is completed. We plan to discuss the matter further within the next week.

**Damage Disclosures.** We expressed our belief that Abbott was entitled to more information relating to Plaintiffs' alternative damage theory, as discussed in my letters of August 29, 2006 and September 15, 2006. We continue to believe that the question of what the Medicare and Medicaid clients *would have paid* absent Abbott's alleged wrongdoing is not a question that relies upon expert testimony, but is a question that can be answered by your clients. My letter of September 15, 2006 sets forth the additional information that we believe Plaintiffs should provide.

*Status:* You stated that you would advise us in the coming week whether the Government will supplement its disclosure.

### Abbott's Production

**OCR Files.** You have asked for OCR load files for all documents produced by Abbott. We expressed our position that neither party is obligated to produce OCR load files for non-electronic documents that have been copied or scanned for production. The process of creating such OCR data from non-electronic documents is as much work product as bibliographical coding or other analysis. Also, as noted in previous correspondence, the OCR data previously produced by the Government is not compatible with the document database that we use in this case. In short, we do not believe that sharing of OCR load files is required or advisable in this litigation; each side should create OCR data at is own expense as it sees fit.

*Status:* Further discussion of this issue does not appear to be useful unless you provide additional information that Abbott is required to provide OCR data to you or you convince us that it is advisable to share the cost of such work.

**Bates Numbers.** You have asked about documents bearing multiple "Bates" numbers in Abbott's production. Documents produced by Abbott contain multiple "Bates" numbers to the extent that an earlier production was done with physical numbers. Documents that have been produced specifically for the Texas AG case or MDL 1456 contain the computer-generated Bates numbers from those productions. To the extent that prior productions in cases other than Texas or MDL 1456 contained computer-generated control numbers, the documents produced to you do not contain numbers from the prior productions. The absence of multiple numbers in this regard is not the result of Abbott removing earlier Bates numbers. You stated that the absence of prior production control numbers impedes your ability to compare Abbott's production in this case to the production of documents by Abbott to plaintiffs in other AWP-related actions. Accordingly, you asked whether we would provide a cross-walk between the control numbers from these other document productions.

**JONES DAY**

Mark A. Lavine, Esq.
October 13, 2006
Page 5

*Status:* We have considered your request and respectfully decline to create the cross-walk you have requested. Such a cross-walk does not currently exist and we are aware of no obligation for Abbott to expend the money and labor needed to create such a cross-walk, nor have you identified such an obligation.

***Redactions.*** I believe this is no longer an outstanding issue.

***Confidentiality Designations.*** You have asked Abbott to reconsider all of its confidentiality designations. As I stated on the phone and in my earlier letter, all of Abbott's confidentiality designations have been made in good faith, including the specific example cited in your letter. I have invited you to share your specific concerns with Beth O'Connor in our Chicago office at 312-269-1529, who is closer to that process and can address your specific concerns.

*Status:* We decline your invitation to revisit all of Abbott's confidentiality designations. Beth O'Connor remains available to discuss individual designations.

Sincerely,

R. Christopher Cook

cc:   Gejaa Gobena
      James J. Breen
      Renee Brooker
      Ann St. Peter-Griffith