# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| ALL ACTIONS | |

**PLAINTIFFS' OBJECTIONS TO OCTOBER 10, 2006 REPORT AND RECOMMENDATION BY MAGISTRATE REGARDING PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE FOR OBFUSCATION OF DOCUMENTS AND DILATORY TACTICS AND <u>MONTANA AND NEVADA'S JOINDER THEREIN</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    PLAINTIFFS OBJECT TO THE REPORT BECAUSE IT DOES NOT
       ACCURATELY REFLECT THE FACTS .......................................................................3

       A.     The Report Erroneously Characterizes Plaintiffs' Discovery Requests as
              Overbroad In Order To Excuse Baxter's Late Production Despite the Fact That
              Baxter Never Sought the Court's Intervention – Timely or Otherwise .................. 3

              1.     Baxter did not complain to this Court that Plaintiffs' requests were
                     overbroad in 2004 ......................................................................................3

              2.     Baxter did not complain to this Court that Plaintiffs' requests were
                     overbroad in 2005 ......................................................................................4

              3.     Even after Plaintiffs filed a motion to compel against Baxter,
                     Baxter did not object to the breadth of Plaintiffs' requests; indeed,
                     Baxter agreed to produce its documents and agreed not to dump
                     the majority of its production on Plaintiffs on the deadline in
                     exchange for the withdrawal of Plaintiffs' motion .....................................6

       B.     The Report Erroneously Excuses Baxter's Late Production Based on the Size
              and Cost, Notwithstanding the Timing .................................................................. 7

              1.     The period between January 1, 2006 and May 30, 2006, the close
                     of written discovery with respect to Baxter .................................................7

              2.     The production of four million pages since the close of written
                     discovery ...................................................................................................9

              3.     Baxter admits that almost 80% of its "first review" of documents
                     did not occur until after April 1, 2006 – more than two years after
                     it was served with the Omnibus requests ...................................................10

       C.     The Report Erroneously Relies on A Misunderstanding of the Facts and Red
              Herrings To Excuse Baxter's Late Production ...................................................... 12

              1.     The report erroneously relies on Baxter's request to exclude certain
                     drugs from the litigation as cause for delay but fails to recognize
                     that Baxter never sought to exclude all drugs – and thus discovery
                     should have proceeded regardless...........................................................12

              2.     The report erroneously alleges that the parties agreed to a delay in
                     production of hard copy documents while Baxter focused on
                     transactional data ...................................................................................13

III.     PLAINTIFFS OBJECT TO THE REPORT BECAUSE THE MAGISTRATE'S FAILURE TO FASHION ANY SANCTION TO PUNISH BAXTER'S OBFUSCATION OF DOCUMENTS IS CLEARLY ERRONEOUS .............................14

      A.     The Report's Finding that Rule 37 Sanctions Against Baxter Are Not Warranted Is Clearly Erroneous........................................................................... 16

      B.     The Report's Finding that § 1927 Sanctions Against Baxter Are Not Warranted Is Clearly Erroneous........................................................................... 19

      C.     The Report's Finding that Sanctions Should Not Be Fashioned Under the Court's Inherent Powers is Clearly Erroneous................................................ 23

      D.     This Court Should Sanction Baxter For Withholding 75% Of Its Production Until After The Close Of Discovery ................................................. 25

IV.     CONCLUSION....................................................................................................26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aoude v. Mobil Oil Corp.,*
    892 F.2d 1115 (1st Cir. 1989)..................................................................................23, 25

*Apex Oil Co. v. Belcher Co. of N.Y.,*
    855 F.2d 1009 (2d Cir. 1988)..................................................................................20, 23

*Atkins v. Fischer,*
    232 F.R.D. 116 (D.D.C. 2005)........................................................................................24

*Beh-Hanson v. Arconium Specialty Alloys Co.,*
    No. 03-263, 2004 U.S. Dist. Lexis 27732 (D.R.I. Jun 18, 2004)................................19, 21

*Carlucci v. Piper Aircraft Corp.,*
    775 F.2d 1440 (11th Cir. 1985) .....................................................................................15

*Chambers v. NASCO,*
    501 U.S. 32 (1991)..........................................................................................................23

*Coleman v. Smith,*
    814 F.2d 1142 (7th Cir. 1987) .......................................................................................15

*Cruz v. Savage,*
    896 F.2d 626 (1st Cir. 1990)...............................................................................20, 22, 23

*Currier v. United Techs., Corp.,*
    No. 02-107-P-H, 2003 U.S. Dist. Lexis 21127 (D. Me. Nov. 21, 2003) ..........................15

*DLC Mgmt. Corp. v. Hyde Park,*
    163 F.3d 124 (2d Cir. 1998)...........................................................................................15

*Damiani v. Rhode Island Hosp.,*
    704 F.2d 12 (1st Cir. 1983)............................................................................................18

*Gagnon v. Teledyne Princeton, Inc.,*
    437 F.3d 188 (1st Cir. 2006)..........................................................................................17

*Labadie Coal Co. v. Black,*
    672 F.2d 92 (D.C. Cir. 1982).........................................................................................21

-iii-

*Marathon Ashland Petroleum LLC v. Equili Co., L.P.*,
No. 00-CV-2935, 2004 U.S. Dist. Lexis 7954 (S.D.N.Y. May 4, 2004)..........................15

*Metropolitan Opera Ass'n v. Local 100, Hotel Emples. & Restaurant Emples. Int'l Union*,
No. 00-CV-3613, 2004 U.S. Dist. Lexis 17093 (S.D.N.Y. Aug. 27, 2004) ..........19, 20, 22

*National Hockey League v. Metropolitan Hockey Club*,
427 U.S. 639 (1976)................................................................................................16, 17

*Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried Employees v. Carroll*,
No. 93-1585, 1993 U.S. App. Lexis 34032 (1st Cir. Dec. 30, 1993) ...............................24

*Petroleum Insurance Agency, Inc. v. Hartford Acci. & Indem. Co.*,
106 F.R.D. 59 (D. Mass. 1985)........................................................................................25

*Pro Spice, Inc. v. Omni Trade Group, Inc.*,
No. 01-1661, 2003 U.S. Dist. Lexis 23831 (E.D. Pa. Dec. 16, 2003) ........................20, 22

*R.W. Int'l Corp. v. Welch Foods, Inc.*,
937 F.2d 11 (1st Cir. 1991)..............................................................................................18

*Tantivy Communs., Inc. v. Lucent Techs. Inc.*,
No. 2:04-CV-79, 2005 U.S. Dist. Lexis 29981 (E.D. Tex. Nov. 1, 2005)........................25

*Tracy v. Financial Ins. Mgmt. Corp.*,
No. 1:04-cv-00619, 2005 U.S. Dist. Lexis 38323 (S.D. Ind. Aug. 22, 2005) ..................25

*Wanderer v. Johnston*,
910 F.2d 652 (9th Cir. 1990) .......................................................................................3, 16

*Webb v. District of Columbia*,
146 F.3d 964 (D.C. Cir. 1998).........................................................................................24

*Wilson v. Bradlees of New Eng., Inc.*,
250 F.3d 10 (1st Cir. 2001)..............................................................................................17

## STATUTES

28 U.S.C. § 1927...........................................................................................19, 22, 23

## SECONDARY AUTHORITY

Rosenberg, *Sanctions to Effectuate Pretrial Discovery,* 58 Colum. L. Rev. 480, 482
        (1958) .................................................................................................................16

C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2281 (1970) ..........................16

# I.     INTRODUCTION

Plaintiffs object to the October 10, 2006 Report and Recommendation of Magistrate

Judge Bowler ("Report") because it is based on a clearly erroneous reading of the factual record

and would set the unheard of precedent of allowing a defendant to dump millions of pages on a

plaintiff at the eleventh hour and continuing *after* the close of written discovery.  Plaintiffs object

to the Report as clearly erroneous because it extols the virtues of a sophisticated defendant's

discovery conduct that precludes an opponent from using the defendant's documents at

depositions, in class certification proceedings, or in connection with summary judgment

proceedings.  Plaintiffs object to the Report as clearly erroneous because it fails to fashion any

sanction at all for a defendant's tactics that are not permitted under the Federal Rules of Civil

Procedure, are in direct contravention of this Court's Case Management Orders, and are totally

inconsistent with defense counsel's representations.  Accordingly, Plaintiffs object to the Report

because Baxter's gaming of the discovery and litigation process should not be given this Court's

imprimatur under any set of circumstances.[1]

The close of written discovery with respect to Baxter was June 1, 2006.[2]  From the

inception of this case until May 2006, Baxter produced only 230,446 pages of documents.

---

[1] Plaintiffs' original pleadings and exhibits are located in the record as follows:  (1) Plaintiffs' Motion For Sanctions and Default Judgment Against Baxter Healthcare For Obfuscation of Documents and Dilatory Tactics at <u>Docket Entry 2786</u>; Memorandum of Law In Support Plaintiffs' Motion For Sanctions and Default Judgment Against Baxter Healthcare For Obfuscation of Documents and Dilatory Tactics at <u>Docket Entry 2787</u>; Declaration of Elizabeth A. Fegan in Support of Motion For Sanctions and Default Judgment Against Baxter Healthcare For Obfuscation of Documents and Dilatory Tactics ("Fegan Decl. I") at <u>Docket Entry 2788-1</u>; and (2) Reply In Support of Plaintiffs' Motion For Sanctions and Default Judgment Against Baxter Healthcare For Obfuscation of Documents and Dilatory Tactics at <u>Docket Entry 2982</u>; Second Declaration of Elizabeth A. Fegan in Support of Motion For Sanctions and Default Judgment Against Baxter Healthcare For Obfuscation of Documents and Dilatory Tactics ("Fegan Decl. II") at <u>Docket Entry 2983</u>.

[2] On March 6, 2006, the Court entered an Electronic Order granting Baxter's Motion for Extension of Time of Track II Discovery Schedule and to Amend CMO No. 23 Only with Respect to Baxter.

However, just 30 days before the close of written discovery, Baxter inundated Plaintiffs with a deluge of documents that continues to this day – almost 145 days since the close of discovery.  In fact, of the 6,617,839 pages produced by Baxter since May, 1, 2006, ***more than 4.5 million pages were produced the day of or in the months after the close of written discovery***.

With all due respect, Magistrate Judge Bowler's designation of Baxter's production, which was made in total disregard for the Federal Rules of Civil Procedure, this Court's Case Management Orders and defense counsel's representations to Plaintiffs, as "laudable" appears to be entirely based on: (i) her characterization of Plaintiffs' discovery requests as "overbroad" despite the fact that Baxter never sought protection from responding to them; (ii) the size of the production notwithstanding the timing; and (iii) the costs to Baxter.  The Magistrate absolutely ignored the fact that, by its own admissions, 79.8% of Baxter's "first review" effort to review and produce documents was not expended until the period between April 1, 2006 and June 30, 2006, with the production of more than 75% of its documents (and 22.6%[3] of Baxter's "first review time") occurring ***after*** the close of discovery.  However, neither the costs of production nor the size of the production excuse a litigant's duties to comply with the Rules or the Court's Orders and thus are a clearly erroneous basis for the denial of sanctions.

---

[3] The percentage of review time occurring after the close of discover is more likely than not even greater as of today, because these numbers were based on Baxter's representations in Baxter Healthcare Corporation's Opposition to Plaintiffs' Motion For Sanctions and Default Judgment Against Baxter Healthcare ("Baxter Mem."), Docket Entry 2917 at 7.  According to Baxter's breakdown of contract attorney time, from August 2005 to March 2006, Baxter employed contract attorneys that barely scratched the surface of the production, spending just 19% of Baxter's total review time on reviewing and producing documents.  Then on the eve of discovery but too late to comply with its discovery obligations, Baxter ramped up, spending 58.2% of its total attorney document review time on reviewing and producing documents.  And then, even after discovery closed and as if it doesn't recognize the import of its admission, Baxter spent another 22.6% of its total attorney document review time in June 2006.  *Id.*

Moreover, the law is clear that a litigant's failure to produce documents by the discovery deadline constitutes sanctionable conduct.  Magistrate Judge Bowler's failure to fashion **any** sanction for Baxter's conduct is thus clearly erroneous.  As a result, the "sanction" actually falls on Plaintiffs' shoulders who now are unable to review the documents for use at depositions, or in connection with the fully-briefed class certification and summary judgment motions before this Court.

## II.   PLAINTIFFS OBJECT TO THE REPORT BECAUSE IT DOES NOT ACCURATELY REFLECT THE FACTS

**A.   The Report Erroneously Characterizes Plaintiffs' Discovery Requests as Overbroad In Order To Excuse Baxter's Late Production Despite the Fact That Baxter Never Sought the Court's Intervention – Timely or Otherwise**

The Report erroneously characterizes Plaintiffs' discovery requests as overbroad.  Yet Baxter never filed a motion for protective order or otherwise sought the Court's intervention during the discovery period on that basis.  *See Wanderer v. Johnston*, 910 F.2d 652, 654 (9th Cir. 1990) (A defendant's improper conduct with respect to discovery cannot be excused where the "defendants never obtained a protective order relieving them of any obligation….").  Rather, Baxter conferred with Plaintiffs and agreed to produce documents in response to Plaintiffs' discovery requests.

**1.   Baxter did not complain to this Court that Plaintiffs' requests were overbroad in 2004**

On March 31, 2004, Plaintiffs served all Defendants, including Baxter, with Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to All Other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery, dated March 31, 2004 ("Omnibus Requests").  Fegan Decl. I, ¶ 2, Ex. 1.  Pursuant

to CMO No. 10, Baxter was required to produce documents within 60 days.  On April 26, 2004, Plaintiffs' counsel, Sean Matt, conferred with Baxter's counsel, Merle DeLancey, during which Baxter's counsel requested that Plaintiffs provide Baxter an extension to the production deadline. Based on Baxter's position as a Phase II Defendant, Plaintiffs agreed to "such an extension provided that Baxter produces on a rolling basis, works in good faith to produce the documents as soon as possible and, in any event, completes its production by August 1, 2004."  *See* E-Mail from Sean Matt to Merle DeLancey dated April 27, 2004, Fegan Decl. I, Ex. 2.

During that meet and confer process, Plaintiffs' counsel pressed to have Baxter **complete** its production by August 1, 2004.  *See* Letter dated May 26, 2004 from Sean Matt to Merle DeLancey, Fegan Decl. I, Ex. 3.  When Baxter stated that it would not be able to do so, Plaintiffs' counsel, Sean Matt, wrote Baxter, suggesting certain compromises on the scope of the production, and requested a complete production by September 1, 2005.  *Id.*, at 3, ¶ 6. However, at no time during this process did Baxter advise Plaintiffs that it would produce **no** documents, nor did Baxter seek the Court's intervention.

2.     **Baxter did not complain to this Court that Plaintiffs' requests were overbroad in 2005**

Unbelievably, for the next year, Baxter admittedly did not produce a single responsive document.  Thus, on May 11, 2005, in anticipation of a meet and confer with Baxter's counsel, Plaintiffs counsel, Elizabeth A. Fegan, requested that Baxter "be ready to discuss and disclose the 'reasonable search' it promised to conduct and has conducted to date to identify responsive documents." [4]  *See* Letter dated May 11, 2005 from Elizabeth A. Fegan to Merle DeLancey,

---

[4] Baxter represented that it had or would conduct such a "reasonable search" in responses to Plaintiffs' Omnibus Request.  *See* Baxter International Inc. and Baxter Healthcare Corporation's Objections and Responses to Plaintiffs' Omnibus Requests for Production and Interrogatories, at

Fegan Decl. I, Ex. 6.  On May 24, 2005, Plaintiffs counsel, Elizabeth A. Fegan, and Baxter's

counsel conferred regarding the production of documents by Baxter in response to Plaintiffs'

Omnibus Requests for Production.  At that time, Plaintiffs counsel advised that the lack of

production was unacceptable, and requested that the production begin and be done on a rolling

basis.[5]   The parties reconvened for subsequent meet and confers on June 3, 17, 27, and July 29,

2005.[6]  Again, at no time during this process did Baxter move for protection from having to

respond to Plaintiffs' discovery requests for any reason, including the characterization of the

requests as overbroad.

     Despite these extensive meet and confers, by October 31, 2005, there were serious

deficiencies in Baxter's production.[7]  Thus, Plaintiffs' counsel sent a letter stating:

---

Preliminary Statement, ¶ 2, and Specific Responses and Objections to the Document Requests, Nos. 1-24, 27-28, 30-31, 33, 35, 36-37, 41-61, 63-82, Fegan Decl. I, Ex. 4.

[5] *See* Letter dated May 27, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on May 24, 2005), Fegan Decl. I, Ex. 7; Letter from Merle Delancey to Elizabeth A. Fegan dated June 3, 2005 (agreeing to produce documents on a rolling basis), Fegan Decl. I, Ex. 8.

[6] *See* Letter dated June 6, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on June 3, 2005 and noting that Baxter had again agreed to produce documents on a rolling basis beginning the week of June 13, 2005), Fegan Decl. I, Ex. 9; Letter dated June 22, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on June 17, 2005 and again pushing for production and/or access), Fegan Decl. I, Ex. 11; Letter dated June 27, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing meet and confer held on June 27, 2005 and again pushing for production and/or access), Fegan Decl. I, Ex. 12; Letter dated July 29, 2005 from Elizabeth A. Fegan to Merle DeLancey (memorializing agreement and July 29 meet and confer), Fegan Decl. I, Ex. 13.

[7] Pursuant to CMO No. 5, Baxter initially produced 20,622 pages of documents previously produced to the government.  *See* Fegan Decl. I, at ¶ 3 (these documents were bates-stamped BAX MDL 0000001-0020622).  During 2005, Baxter produced an additional 26,634 pages of documents.  *See* Letter dated June 17, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0020729-0024217), Fegan Decl. I, Ex. 10; Letter dated September 30, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0024514-0035869), Fegan Decl. I, Ex. 14; Letter dated December 16, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0035870-0046862), Fegan Decl. I, Ex. 20; Letter dated December 23, 2005 from Merle DeLancey to Elizabeth A. Fegan (enclosing one CD-ROM containing pages bates-stamped BAX MDL 0046863-0047662), Fegan Decl. I, Ex. 21.

Some of the deficiencies in production include but may not be limited to: (i) Baxter has yet to produce e-mail (other than what may have been included in the Government Investigation document set); (ii) Baxter has yet to produce documents maintained off-site; (iii) Baxter has yet to produce documents maintained in its electronic databases (separate from e-mail); (iv) Baxter has yet to produce documents identified at the 30(b)(6) depositions (again other than what may have been included in the Government Investigation document set); and (v) Baxter has yet to produce or make available all relevant contracts, or an agreed upon sampling thereof (with the limited exception of a discrete subset of BioScience contracts). Nor has Baxter affirmed that documents in these categories do not exist or that they otherwise have been produced in full.

Letter dated October 31, 2005 from Elizabeth A. Fegan to Merle DeLancey, Fegan Decl. I, Ex. 15.  These issues were not resolved.

**3.    Even after Plaintiffs filed a motion to compel against Baxter, Baxter did not object to the breadth of Plaintiffs' requests; indeed, Baxter agreed to produce its documents and agreed not to dump the majority of its production on Plaintiffs on the deadline in exchange for the withdrawal of Plaintiffs' motion**

On November 8, 2005, Plaintiffs filed a Motion To Compel Production by Baxter.[8]  *See* Fegan Decl. I, Ex. 16.  In response, Baxter's counsel, Merle DeLancey, contacted Plaintiffs' counsel, requested that Plaintiffs withdraw their Motion To Compel and, in exchange, Baxter would agree to the submission of an agreement before the Court that Baxter would complete document production by June 1, 2006.  Further, Baxter specifically agreed to produce on a rolling basis and **NOT** dump all the documents on Plaintiffs at the deadline.  Fegan Decl. I, ¶ 5.  Plaintiffs confirmed this issue in writing, stating:

We also discussed my concern that the [extension of the document production date to June 1, 2006] set forth above will only work if

---

[8] At the time of filing of the motion, Baxter had only produced:  (i) the Government Investigation documents required by CMO 5 (comprised of approximately 20,000 pages); (ii) two disks containing less than 4,000 pages (or just two boxes) of documents; (iii) two years' worth of active contracts for one of two divisions at issue (of which Plaintiffs copied approximately 10,000 pages); and (iv) certain transactional data.

> Baxter's document production is truly conducted on a rolling basis,
> noting that the dates will not be feasible if Baxter dumps the
> majority of documents on Plaintiffs on June 1, 2006. You agreed,
> and stated that you intended to produce the documents on a rolling
> basis.

Letter dated November 15, 2005 from Elizabeth A. Fegan to Merle DeLancey, Fegan Decl. I,

Ex. 19.

Moreover, Baxter was advising during this period that the full production would take just

several more months.  *See* Letter dated November 8, 2005 from Merle DeLancey to Elizabeth A.

Fegan (stating that Baxter "is in the process of a rolling production … that may not be completed

for several additional months"), Fegan Decl. I, Ex. 18.  Based on the representations of Baxter's

counsel and the pace and quantitative content of the rolling productions at the time, Plaintiffs

expected a manageable production that could be culled and reviewed in time to complete

depositions during the summer of 2006.  Thus, even in response to a Motion To Compel, Baxter

did not take the opportunity to file a response with this Court that Plaintiffs' discovery requests

were overbroad.  Instead, Baxter agreed to produce documents on a rolling basis.  There is

absolutely no basis in the record for the Court to conclude that it was the breadth of the requests

that proved daunting to Baxter.

**B.      The Report Erroneously Excuses Baxter's Late Production Based on the Size and
Cost, Notwithstanding the Timing**

**1.      The period between January 1, 2006 and May 30, 2006, the close of written
discovery with respect to Baxter**

Between January 1, 2006 and April 30, 2006, Baxter made an additional nine productions

in the form of 10 CD-ROMs containing 182,784 pages.[9]  Despite these productions, Baxter

continued with its plan to undermine Plaintiffs' ability to conduct reasonable discovery by failing

---

[9] *See* Letters dated January 19, 27, February 2, 10, 23, March 7, 10, 17, and 23, 2006 (the group of
which contained pages bates-stamped BAX MDL 0047663-0203446), Fegan Decl. I, Group Ex. 22.

to disclose in any of the cover letters to Baxter's production (or by any other manner) that these

productions constituted just a fraction of its production, or that Baxter intended to renege on its

agreement not to dump all the documents on Plaintiffs on the discovery deadline.

The close of written discovery with respect to Baxter was June 1, 2006.  Yet less than

three weeks before the close, Baxter produced what it described as five DVDs, one Hard Drive,

two CD-ROMs and hardcopy documents, all of which contained more than 668,430 pages.[10]

That production alone contained ***three times*** as many documents as had been produced to date.

Then, just three business days before the close of written discovery, Baxter's counsel sent

a letter detailing, for the very first time, that it intended to produce 2,000,000 pages the following

week as well as provide access to an on-line repository containing an unspecified amount of

documents.  *See* Letter dated May 26, 2006 from Merle DeLancey to Elizabeth A. Fegan, Fegan

Decl. I, Ex. 25.

On May 30, 2006, the day before the close of written discovery, Baxter produced

1,263,636 pages of documents.[11]  Had this been the end of Baxter's production, 90% of its

production had just occurred on the last day of document discovery despite the fact that these

cases had been pending against Baxter since at least as early as November 15, 2001.[12]  Yet this

was not the end of Baxter's production.

---

[10] *See* Letter dated May 11, 2006 from Tina Reynolds to Elizabeth A. Fegan (enclosing hardware containing pages bates-stamped BAX MDL E 0000001-668428; 203477, 203478), Fegan Decl. I, Ex. 24.

[11] *See* Letter dated May 30, 2006 from Tina Reynolds to Elizabeth A. Fegan (enclosing two Hard Drives containing documents bates-stamped BAX MDL E 0669393-1933029), Fegan Decl. I, Ex. 26.  *See also* Letter dated May 26, 2006 from Merle DeLancey to Elizabeth A. Fegan (describing upcoming production of over 2,000,000 additional pages), Fegan Decl. I, Ex. 25.

[12] *See United Food and Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Baxter Int'l, Inc.*, No. 01 C 8828 (N.D. Ill.) (filed on Nov. 15, 2001 and transferred May 20, 2002 to District of Massachusetts to MDL 1456).

2.       **The production of four million pages since the close of written discovery**

Since June 1, 2006, despite the fact that written discovery is closed and Plaintiffs were supposed to only have three months to complete oral discovery, Baxter has continued to produce documents. And not just stragglers – but approximately four million pages!

Baxter has made nine (9) productions post-discovery closure (and still has not represented that it is finished), including:

- June 1, 2006:  more than 3,000,000 pages[13]
- June 19, 2006:  423,894 pages[14]
- June 22, 2006:  265,261 pages[15]
- June 27, 2006:  16,087 pages[16]
- June 29, 2006:  236,984 pages[17]
- July 10, 2006:  222,382 pages[18]
- September 8, 2006:  319,888 pages[19]

---

[13] The June 1, 2006 production included one million pages on Hard Drives plus access to a remote Internet site that houses 543,000 documents, comprised of at least more than 2 million pages. For purposes of this motion, Plaintiffs are guestimating that each document is comprised of an average of four pages. Plaintiffs make this estimate based on good faith and their experience to date with Baxter's production, among other things. Fegan Decl. I., ¶ 6 . Based on the other documents produced by Baxter prior to April 2006, Plaintiffs believe that this estimate underestimates the total number of pages per document. *See also* Letter dated June 1, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing two Hard Drives containing documents bates-stamped BAX MDL E 1933030-2962307 and providing Lextranet instructions and Password), Fegan Decl. I, Ex.27.

[14] *See* Letters dated June 19, 2006 and June 22, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing three Hard Drives containing documents bates-stamped BAX MDL E 2962308-3386202, and BAX MDL S 0000001-0265261), Fegan Decl. I, Ex. 28.

[15] *Id.*

[16] Letter dated June 27, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL E 3386203-3402290), Fegan Decl. II, ¶ 2, Ex. 1.

[17] Letter dated June 29, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL S 0265262-0502246), Fegan Decl. II, Ex. 2.

[18] Letter from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL S 0502247-0724629), Fegan Decl. II, Ex. 3.

- September 27, 2006:  7,202 pages plus a CD containing field sales notes[20]
- October 3, 2006:  23,561 pages[21]

There can be no valid excuse for Baxter to have waited to produce six million pages beginning in April 2006, of which four million were produced after the close of discovery.  This litigation has been pending since 2001, and Baxter has had ample opportunity to view the scope of Phase I Discovery.  Now that the dump has occurred this late in the litigation, Baxter has sprung its discovery trap and ensured that there was no way for Plaintiffs to physically review the documents in time for identification of deponents and completion of oral discovery by August 31, 2006.  Nor would it be feasible to extend this litigation by the number of years[22] it would take to conduct a reasonably-paced and cost-efficient review of the documents (not to mention to then conduct oral discovery thereafter).

### 3. Baxter admits that almost 80% of its "first review" of documents did not occur until after April 1, 2006 – more than two years after it was served with the Omnibus requests

Baxter does not dispute that the majority of its document production "came at or just after" the close of discovery.[23]  A review of Baxter's breakdown of attorney time spent on

---

[19] Letter dated September 8, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL S 0724630-1044518), attached as Exhibit 1 to the Third Declaration of Elizabeth A. Fegan ("Fegan Decl. III"), submitted herewith in support of Plaintiffs' Objections To October 10, 2006 Report.

[20] Letter dated September 27, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing two Hard Drives containing documents bates-stamped BAX MDL S 1044519-1045640 and BAX MDL E 3402291-3408372), Fegan Decl. III, Ex. 2.

[21] Letter dated October 3, 2006 from Shamir Patel to Elizabeth A. Fegan (enclosing one Hard Drive containing documents bates-stamped BAX MDL S 1045641-1069202), Fegan Decl. III, Ex. 3.

[22] It is reasonable, based on experience and precedent, to estimate that one attorney could review 800 pages per day (based on 100 pages per hour and an 8-hour day).  Thus, a team of 10 attorneys could review 8,000 pages a day.  Based on this estimate, it would take a team of 10 attorneys at least 728 days to review the documents produced by Baxter just since April.

[23] Baxter Mem. at 10.

-10-

document production shows that Baxter did not even start what it calls the "first review"[24] for the

purpose of production until August 2005, 45 months after the AWP litigation against Baxter was

commenced and just nine months before the close of discovery.

In fact, Baxter barely paid attention to document review and production prior to April

2006.  By its own admission, 79.8% of Baxter's "first review" effort to review and produce

documents was not expended until the period between April 1, 2006 and June 30, 2006, with

22.6% of that time occurring **after** the close of discovery.[25]  Baxter's late review is consistent

with the fact that more than 96% of its document production occurred after April 1, 2006.

Baxter has not and cannot proffer any valid excuse for its dilatory efforts.  Rather, Baxter

would have this Court:

- forgive its discovery transgressions based on the sheer number of hours contract attorneys spent reviewing documents without regard to the fact that these hours were spent literally in the waning days of the five-year lifespan of this case and at a time too late for Plaintiffs to incorporate those documents into the prosecution of their case;

- ignore its attorney's representations to Plaintiffs that Baxter would not dump the majority of its documents on Plaintiffs at the close of discovery, which resulted in the withdrawal of Plaintiffs' Motion To Compel;[26] and/or

---

[24] Baxter Mem. at 6.

[25] Baxter Mem. at 7.  According to Baxter's breakdown of contract attorney time, from August 2005 to March 2006, Baxter employed contract attorneys that barely scratched the surface of the production, spending just 19% of Baxter's total review time on reviewing and producing documents.  Then on the eve of discovery but too late to comply with its discovery obligations, Baxter ramped up, spending 58.2% of its total attorney document review time on reviewing and producing documents.  And then, even after discovery closed and as if it doesn't recognize the import of its admission, Baxter spent another 22.6% of its total attorney document review time in June 2006.  *Id.*

[26] *See* Letter dated November 15, 2005 from Elizabeth A. Fegan to Merle DeLancey ("We also discussed my concern that the [extension of the document production date to June 1, 2006] set forth above will only work if Baxter's document production is truly conducted on a rolling basis, noting that the dates will not be feasible if Baxter dumps the majority of documents on Plaintiffs on June 1, 2006.  You agreed, and stated that you intended to produce the documents on a rolling basis."), Fegan Decl. I, Ex. 19.

- sanction Plaintiffs by requiring them to hire hundreds of contract attorneys despite the fact that it is too late to use Baxter's documents in connection with oral discovery, class certification or summary judgment proceedings.

These alternatives, which are *de facto* adopted in the Magistrate's Report as a result of its failure to fashion any sanction at all, make a mockery of this Court's Case Management Orders and of the just, efficient and orderly discovery process contemplated by the Federal Rules of Civil Procedure and the Local Rules.

**C.    The Report Erroneously Relies on A Misunderstanding of the Facts and Red Herrings To Excuse Baxter's Late Production**

    **1.    The report erroneously relies on Baxter's request to exclude certain drugs from the litigation as cause for delay but fails to recognize that Baxter never sought to exclude all drugs – and thus discovery should have proceeded regardless**

Baxter did request that Plaintiffs not pursue what it referred to as certain "de minimus" drugs in the litigation.  And Plaintiffs' response was delayed by their pursuit of the Phase I defendants.[27]  *See, e.g.,* Letter from Elizabeth A. Fegan to Merle DeLancey dated April 28, 2005, Fegan Decl. I, Ex. 5.

However, at no time did Baxter ever seek to exclude the four main pharmaceutical drugs, including Dextrose, Sodium Chloride, Gammagard and Recombinate, from this litigation.  From the start, Baxter conceded that these four drugs were subject to discovery.  Nor could Baxter have legitimately argued otherwise as these were the four drugs that the DOJ previously investigated and determined to have inflated AWPs.  For example, Plaintiffs alleged in their complaints that Baxter's AWP for its sodium chloride was $928.51, whereas the DOJ determined

---

[27] Ultimately, because Baxter did not wish to provide Plaintiffs with all of the data they needed to consider Baxter's request, Plaintiffs and Baxter agreed to only exclude the drugs from one division (Anesthesia and Critical Care) and further agreed that discovery with respect to the other two divisions (BioScience and Medication Delivery) would proceed apace.

that the actual AWP for Baxter's sodium chloride solution was $1.71 – a 54,199 percent difference.

Thus, the discussions related to whether or not certain alleged "de minimus" drugs would be excluded from the litigation cannot form the basis for Baxter's delayed production of documents related to drugs that both parties agreed from the outset would remain in the litigation.  *See, e.g.,* Letter from Elizabeth A. Fegan to Merle DeLancey dated November 8, 2005 (stating "Moreover, it is clear that Baxter used this delay not just with respect to the drugs that you requested be withdrawn but also the drugs that even you admitted from the beginning would be subject to discovery.  Thus, even if we were to accept your posturing as true, it is clear that Baxter has delayed production of documents with respect to drugs that have always been at issue."), Fegan Decl. I, Ex. 17.

**2.      The report erroneously alleges that the parties agreed to a delay in production of hard copy documents while Baxter focused on transactional data**

The Report erroneously excuses Baxter's delayed production based on the Magistrate's understanding that Plaintiffs agreed that Baxter could indefinitely delay production of all documents while it worked on producing transactional data.  This is not correct.  The parties only agreed that Baxter could delay the production of electronic documents contained in the electronic e-mail or field sales note databases (called Siebel and Goldmine) while working on transactional data – and only then by four weeks.  On June 6, 2005, Plaintiffs confirmed that this delay applied only to electronic databases, and further confirmed that they were only agreeing to a delay of four weeks:

> We further discussed the search terms that would be used for the e-mail, Siebel and Goldmine databases…. [Y]ou advised that the same people who are in the process of producing transactional data will be the ones to undertake the above database searches.

> Accordingly, you requested a prioritization of the transactional database production versus the above production, I advised you that the transactional data should come first as Baxter is only one of four defendants that has yet to produce any data. However, I stated that the process of producing transactional data should not indefinitely delay the above electronic production. As you may expect, the database search may yield thousands of documents and we will thus need some time to review them. Thus, since you did not indicate when you thought the transactional database search may be completed, please advise as to your expected completion date. If you do not expect to be completed with your transactional data search within four weeks, please advise us immediately so that we can confer as to an alternative resolution to this matter.

*See* Letter dated June 28, 2006, at 3-4, Fegan Decl. I, Ex. 9. Thus, there was never any agreement between the parties that the production of hard copy documents would be delayed by the production of electronic information. Rather, it was always agreed that the production of hard copy documents would proceed simultaneously to the production of transactional data (which is what in fact occurred[28]). Accordingly, the Report's reliance on an erroneous understanding of the parties' agreement does not support an excuse for Baxter's complete failure to produce 75% of its documents until ***after*** the close of discovery.

### III.      PLAINTIFFS OBJECT TO THE REPORT BECAUSE THE MAGISTRATE'S FAILURE TO FASHION ANY SANCTION TO PUNISH BAXTER'S OBFUSCATION OF DOCUMENTS IS CLEARLY ERRONEOUS

The Report's conclusion that Baxter's production of 4 million pages after the close of written discovery (and at a time when the documents are useless for identifying potential witnesses, identifying potential third parties that may have documents responsive to this litigation, understanding the documents in order to prepare for depositions (of which the majority have already taken place in light of the September 30 deadline for oral discovery without the benefit of these documents), reviewing and digesting the documents in order to understand

---

[28] Baxter produced transactional data on August 4, 2005 and September 19, 2005, which was during the time it was also producing some hard copy documents. *See* note 6, *supra*.

Baxter's practices with respect to AWP, or relying on the documents in connection with class certification proceedings) is not cause for sanctions is clearly erroneous.

"It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1446 (11th Cir. 1985). Moreover, courts almost always impose sanctions when documents are produced ***after*** the close of discovery and where the opponent is prejudiced. *See, e.g., DLC Mgmt. Corp. v. Hyde Park*, 163 F.3d 124 (2d Cir. 1998) (after the close of discovery, the defendant produced two boxes of documents and several large maps that had previously been sought in discovery. The Court found this late production to be sanctionable conduct and, relying on its inherent powers to fashion an appropriate sanction, imposed an award of attorneys fees in the amount of approximately $40,000); *Coleman v. Smith*, 814 F.2d 1142, 1145 (7th Cir. 1987) (affirming a default judgment where the defendant "produced key documents after discovery had closed."); *Marathon Ashland Petroleum LLC v. Equili Co., L.P.*, No. 00-CV-2935, 2004 U.S. Dist. Lexis 7954 (S.D.N.Y. May 4, 2004) (awarding monetary sanctions where documents produced late in one instance and after the close of discovery in another); *Currier v. United Techs., Corp.*, No. 02-107-P-H, 2003 U.S. Dist. Lexis 21127 (D. Me. Nov. 21, 2003) (imposing sanction of adverse inference instruction where party failed to produce documents during discovery period, waiting until after the pre-trial conference to do so). This Court should impose sanctions also, whether pursuant to statute or its inherent powers. Baxter's failure to produce approximately four million documents until after the close of discovery is unheralded in the case law, where litigants are routinely sanctioned for waiting until after the close of discovery to produce a box or certain key documents. The Report's conclusion otherwise should be rejected.

-15-

**A.     The Report's Finding that Rule 37 Sanctions Against Baxter Are Not Warranted Is Clearly Erroneous**

Rule 37 sanctions are intended to "punish[] evasion of pretrial discovery."  Rosenberg, *Sanctions to Effectuate Pretrial Discovery*, 58 Colum. L. Rev. 480, 482 (1958); *see* 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2281 at 753 (1970) ("Without adequate sanctions, the procedures for discovery would be ineffectual.").  The leading Supreme Court decision under Rule 37 is *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976), in which the Supreme Court granted district courts considerable discretion to impose the extreme sanction of dismissal or default where there has been flagrant, bad faith disregard of discovery duties.  *Id.*; *Wanderer v. Johnston*, 910 F.2d at 656.  The facts here are similar to those considered by the Supreme Court:

> After seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs, the Court must and does conclude that the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify flagrant bad faith when after being expressly directed to perform an act by a date certain, *viz.*, June 14, 1974, they failed to perform and compounded that noncompliance by waiting until five days afterwards before they filed any motions. Moreover, this action was taken in the face of warnings that their failure to provide certain information could result in the imposition of sanctions under Fed. R. Civ. P. 37.

*National Hockey League*, 427 U.S. at 640-41.

Here, two years passed without substantial production by Baxter and without Baxter advising Plaintiffs of the volume to come at the eleventh hour.  Moreover, in the face of Plaintiffs' Motion To Compel, Baxter's counsel specifically promised not to do a document dump on Plaintiffs on the discovery deadline.  In exchange, Baxter manipulated Plaintiffs into agreeing to withdraw their Motion to Compel and to a discovery extension.  As the Supreme

-16-

Court recognized, this is exactly the type of conduct that "demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents."  *Id.* at 640.

Baxter asserted before the Magistrate that this Court cannot exercise its authority to impose sanctions pursuant to Fed. R. Civ. P. 37, because it has not violated any Court Order – other than this Court's Case Management Orders ("CMOs").  Such an assertion smacks of disrespect for this Court's diligence and energy invested in the more than 25 CMOs entered to date, which have clearly kept this MDL on track for the first trial to occur in November.  Moreover, Baxter's position is contrary to the law.

The First Circuit has made abundantly clear that "a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through the court" through the issuance of case management orders.  *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191 (1st Cir. 2006).  Moreover, the First Circuit has consistently taken the stance that litigants have a broad duty to comply with those case management orders, and may sanction any party for their failure to comply.  *Id.* (citing *Primus v. United States*, 389 F.3d 231 (1st Cir. 2004)) ("[T]he adoption of Rule 37(c)(1) in 1993 'gave teeth to a significantly broadened duty' to comply with case management orders, . . . and 'the required sanction in the ordinary case is mandatory preclusion.'"  *Id.* (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)).[29]

---

[29] Moreover, the authority of a trial court to exclude documents that are not timely produced under the deadlines set by a case management order was well-established in the First Circuit before the 1993 amendment to the Rules.  *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 20 (1st Cir. 2001) (citing *Fusco v. General Motors Corp.*, 11 F.3d 259, 265 (1st Cir. 1993) and stating "Indeed, we held in *Fusco* (a pre-amendment case) that the duty of a party to seasonably supplement its disclosures under Rule 26(e) 'carries with it the implicit authority of the district court to exclude such materials when not timely produced even if there was no rigid deadline for production.'  *See also Williams v. Monarch Machine Tool Co., Inc.*, 26 F.3d 228, 230 (1st Cir. 1994).").

Moreover, the First Circuit supports dismissals for a litigant's failure to meet its

discovery deadlines.  In *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 17 (1st Cir. 1983), the

First Circuit affirmed the district court's order of dismissal where:

> the plaintiff's attorney arrogated control of discovery to himself
> and changed the date of compliance to suit his own convenience
> and that of his client. If such conduct were condoned by a slap on
> the wrist, the District Court of Rhode Island might well find the
> lawyers calling the tune on discovery schedules. There is no claim
> that such conduct was accepted practice in the District Court of
> Rhode Island or had been tacitly sanctioned by the court in other
> cases. . . . The day has long since passed when we can indulge
> lawyers the luxury of conducting lawsuits in a manner and at a
> pace that best suits their convenience. The processing of cases
> must proceed expeditiously if trials are to be held at all.

*Id.* at 16.  Yet that is exactly what the Report does; the Report gives Baxter and its counsel a free

pass (not even a slap on the wrist) for not producing millions of documents in a timely manner.

The Magistrate's recommendation cannot be squared with First Circuit law, and is thus clearly

erroneous.

Here, as a result of Baxter's manipulation of Plaintiffs, CMO 23, as amended with

respect to Baxter only, required that Baxter complete its document production by June 1, 2006.[30]

Baxter does not dispute that it failed to do so, producing 75% of its documents after the close of

discovery.  The First Circuit has recognized that sanctions can be imposed where "a response [to

discovery] has eventuated, but is so flawed as to be tantamount to no response at all."  *R.W. Int'l

Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 18 (1st Cir. 1991)  Here, that is exactly the case:  the

production of four million documents after the close of discovery (and an additional two million

just before discovery closed) is tantamount to no response at all – the timing of the production

---

[30] On March 6, 2006, the Court entered an Electronic Order granting Baxter's Motion for Extension of
Time of Track II Discovery Schedule and to Amend CMO No. 23 Only with Respect to Baxter.

makes the documents worthless to the prosecution of Plaintiffs' case.  Thus, sanctions are appropriate.

**B.**     **The Report's Finding that § 1927 Sanctions Against Baxter Are Not Warranted Is Clearly Erroneous**

Sanctions pursuant to 28 U.S.C. § 1927 are appropriate here because Baxter's counsel has unreasonably and vexatiously multiplied these proceedings by, *inter alia*:  (i) their failure to counsel their client, Baxter, to begin the document review and production process until August 2005 – 45 months after the AWP litigation against Baxter was commenced; (ii) their misrepresentations to Plaintiffs' counsel, in their successful effort to cause Plaintiffs to withdraw their Motion To Compel against Baxter, that they would ensure that the majority of Baxter's production would not be dumped on Plaintiffs on the discovery deadline; (iii) their failure to dedicate sufficient resources to ensure that Baxter could comply with the discovery deadlines and allow Plaintiffs sufficient time to incorporate the documents into the prosecution of their case, as demonstrated by the admission that 79.8% of the "first review" was not expended until the period between April 1, 2006 and June 30, 2006; and (iv) their production of 75% of Baxter's documents, comprised of at least 4 million pages, ***after*** the close of discovery.

Section 1927 affords the Court authority and discretion to impose sanctions on any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Beh-Hanson v. Arconium Specialty Alloys Co*., No. 03-263, 2004 U.S. Dist. Lexis 27732, at *5-6 (D.R.I. Jun 18, 2004).  Sanctions under § 1927 are appropriate for discovery misconduct related to nonproduction or belated production.  *Id.; Metropolitan Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*,

No. 00-CV-3613, 2004 U.S. Dist. Lexis 17093 (S.D.N.Y. Aug. 27, 2004). *See also Cruz v. Savage*, 896 F.2d 626, 634 (1st Cir. 1990) (affirming the award of § 1927 sanctions when the attorney "continually engaged in obfuscation of the issues, hyperbolism and groundless presumptions," and refused to produce the knife that the defendant had admitted she had been given); *Pro Spice, Inc. v. Omni Trade Group, Inc*., No. 01-1661, 2003 U.S. Dist. Lexis 23831, at *5 (E.D. Pa. Dec. 16, 2003) (providing plaintiff's costs for the motion to compel in a case where defendant committed repeated discovery abuses, noting that the second motion to compel "would not have been necessary if they had been more forthright to plaintiff's discovery requests"); *Apex Oil Co. v. Belcher Co. of N.Y*., 855 F.2d 1009, 1020 (2d Cir. 1988) (affirming § 1927 sanctions, when "[i]n each [discovery dispute], prior to making its motion, Apex's counsel attempted to resolve the matter informally . . . [a]nd, in each case, . . . Apex's counsel was 'told to make a motion.' After each motion was made, defense counsel 'mysteriously,' in the district court's words, complied with the requests.").

The First Circuit has provided the following guidance for courts applying § 1927:

> We do not require a finding of subjective bad faith as a predicate to the imposition of sanctions. Behavior is vexatious when it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927. The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice. Yet, we agree with other courts considering this question that section 1927's requirement that the multiplication of the proceedings be vexatious necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence. Finally, in assessing whether an attorney acted unreasonably and vexatiously in multiplying proceedings, the district courts in this circuit should apply an objective standard.

-20-

*Beh-Hanson*, 2004 U.S. Dist. Lexis 27732, at *6-7 (quoting *Cruz v. Savage,* 896 F.2d 626, 631-32 (1st Cir. 1990)).  In *Beh-Hanson*, the court imposed discovery sanctions on the plaintiff's counsel for repeatedly failing to disclose that there were no responsive documents to certain requests, even after defendant filed a motion to compel.  *See id.*, at *20-22.  Even though the attorney did not necessarily act in bad faith, sanctions were appropriate because he "act[ed] in disregard of whether his conduct constitute[d] harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process of justice.'"  *Id.*, at *22-23 (quoting *Cruz v. Savage*, 896 F.2d at 632 (quoting *United States v. Nesglo, Inc.*, 744 F.2d 887, 891 (1st Cir. 1984)).  The court noted that sanctions also act as a deterrent to those litigants who may be tempted to engage in vexatious or harassing conduct without the possibility of being sanctioned.  *Id.*, at *23 (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576 (1st Cir. 1989)).  *See also Labadie Coal Co. v. Black*, 672 F. 2d 92, 100 (D.C. Cir. 1982) (vacating judgment in favor of defendant where "the court's . . . attempts to compensate for defendant's disorganization by admitting evidence produced only at the last minute, worked prejudice to plaintiff's attempts to justify its action . . .").

Here, Baxter's attorney, Merle DeLancey specifically made the representation that Baxter would not dump its documents on Plaintiffs at the eleventh hour.  Had Mr. DeLancey not made that representation, Plaintiffs would not have withdrawn their Motion To Compel.  It is only through the manipulation of the attorney that a Court Order was not entered on the Motion To Compel that required production on a timely basis.  There is not one published precedent that condones this type of behavior.  Rather, the case law demonstrates that § 1927 is supposed to ensure that attorneys do not flout the very law under which they operate.

Baxter makes just one conclusory (and unfounded) statement in support of its position that its attorneys should not be sanctioned for their dilatory conduct, stating courts only use § 1927 "where there has been egregious behavior on the party of counsel amounting to abuse of the judicial process – a circumstance not present here."  Baxter Mem. at 13.  Yet Baxter offers not one fact in support of this argument.  *See generally* Baxter Mem. § III.B.  In fact, no where throughout its brief does Baxter distinguish or explain whose decision (Baxter's or its counsel's) it was to:

- Not produce a single document in response to Plaintiffs' Omnibus Requests for Production and Interrogatories to Defendants Abbott, Amgen, Aventis, Baxter, Bayer, Boehringer, Braun, Dey, Fujisawa, Novartis, Pfizer, Pharmacia, Sicor, TAP and Watson and to All Other Defendants With Respect to Drugs That Were Not Previously Subject to Discovery ("Omnibus Requests") between March 31, 2004, the date the Omnibus Requests were served, and June 17, 2005;

- Fail to engage a team of attorneys to review documents for the purpose of production until August 2005, 45 months after the AWP litigation against Baxter was commenced and just nine months before the close of discovery;

- Refrain from spending the time necessary to get through the document review and production process in a timely manner prior to April 2006, and thus by its own admission having to expend 79.8% of its effort to review and produce documents during the period between April 1, 2006 and June 30, 2006;

- Produce just 4% of Baxter's total document set prior to April 1, 2006; 96 % of its total documents after April 1, 2006; and 75% of its total documents after the close of discovery.

Nor does Baxter provide any legal support that is on point.  In fact, Baxter does not dispute that sanctions under § 1927 are appropriate for discovery misconduct related to nonproduction or belated production.[31]  Thus, where the record is undisputed and clearly shows that neither Baxter

---

[31] *See Metropolitan Opera Ass'n,* 2004 U.S. Dist. Lexis 17093.  *See also Cruz v. Savage*, 896 F.2d at 634 (affirming the award of § 1927 sanctions when the attorney "continually engaged in obfuscation of the issues, hyperbolism and groundless presumptions," and refused to produce the knife that the defendant had admitted she had been given); *Pro Spice*, 2003 U.S. Dist. Lexis 23831, at *5 (providing plaintiff's costs for the motion to compel in a case where defendant committed repeated discovery abuses, noting that the second motion to compel "would not have been necessary if they had been more forthright to

nor its counsel took any steps[32] to ensure compliance with this Court's Orders and, *inter alia*, produced 75% of Baxter's documents ***after*** the close of discovery, § 1927 sanctions are warranted.

**C.     The Report's Finding that Sanctions Should Not Be Fashioned Under the Court's Inherent Powers is Clearly Erroneous**

Courts have the inherent power to "impose silence, respect, and decorum," powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO,* 501 U.S. 32, 43 (1991) (citations omitted).  Accordingly, courts have the discretion and ability to fashion an appropriate and commensurate sanction for conduct that it finds to be abusive of the judicial process, even if there is also a separate statutory authority to sanction the same conduct.  *See id.*, at 44-45.  *See also Aoude v. Mobil Oil Corp*., 892 F.2d 1115, 1118 (1st Cir. 1989).

The circumstances in this case are exactly of the type under which this Court should exercise its inherent authority to sanction Baxter.  Baxter has made it virtually impossible for Plaintiffs to use its documents in the prosecution of their case.  By producing four million documents after the close of written discovery, Baxter has made it impossible to use them for any substantive purpose.  Thus, where Baxter has so severely handicapped its opponent, there is no reason to allow Baxter to continue to defend.  Sanctions are wholly appropriate to address this

---

plaintiff's discovery requests"); *Apex Oil Co*, 855 F.2d at 1020 (affirming § 1927 sanctions, when "[i]n each [discovery dispute], prior to making its motion, Apex's counsel attempted to resolve the matter informally . . . [a]nd, in each case, . . . Apex's counsel was 'told to make a motion.'  After each motion was made, defense counsel 'mysteriously,' in the district court's words, complied with the requests.").

[32] The First Circuit does "not require a finding of subjective bad faith as a predicate to the imposition of sanctions.  Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so."  *Cruz v. Savage*, 896 F.2d at 631-32 (internal citations omitted).

type of egregious discovery abuse.  *See*, *e.g.*, *Pension Admin. Comm. of the Sheraton Corp. Retirement Plan for Salaried Employees v. Carroll*, No. 93-1585, 1993 U.S. App. Lexis 34032, at *17 (1st Cir. Dec. 30, 1993) (affirming district court's entry of a default judgment under Rule 37 when "a party fails to comply with a discovery order," based on "repeated violations of the court's orders to produce documents and submit to a deposition, [and] his failure to pay the $2,000 sanction") (unreported decision); *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998); *Atkins v. Fischer*, 232 F.R.D. 116, 128 (D.D.C. 2005).

Under *Webb*, a sanction of dismissal is justified when:  (1) the other party has been "so prejudiced by the misconduct that it would be unfair to require [the party] to proceed further in the case" (citation omitted); (2) the party's misconduct has put "an intolerable burden" on the court by requiring the court to modify its own docket and operations in order to accommodate the delay; or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future."  *Webb*, 146 F.3d at 971.  Here, default judgment is one of the appropriate sanctions because Baxter's conduct has so severely limited and prejudiced Plaintiffs' ability to use the documents produced by Baxter in fashioning their prosecution.  It would be utterly impossible to review the millions of pages in short order so as to make use of them in this litigation.  That appears to be exactly the result Baxter intended – but it is a result that should not be tolerated in the judicial process. Nor should this Court be placed in the intolerable position of delaying years' worth of work by modifying its own docket and operations in order to accommodate the discovery abuses and wrongdoing of one Defendant.

**D.      This Court Should Sanction Baxter For Withholding 75% Of Its Production Until After The Close Of Discovery**

As set forth above, Plaintiffs continue to believe that a default judgment is the most appropriate sanction.  However, there are other alternative sanctions that may be considered, including adverse inference instructions or monetary compensation, such as attorneys' fees, or costs.  *See, e.g., Aoude v. Mobil Oil Corp.*, 892 F.2d at 1119 (indicating that it is beyond question that a district court has the inherent power to manage its affairs, including "the ability to do whatever is reasonably necessary to deter abuse of the judicial process") (citation omitted); *Petroleum Ins. Agency, Inc. v. Hartford Acci. & Indem. Co.*, 106 F.R.D. 59, 70 (D. Mass. 1985) (discussing court's inherent power to impose sanctions, and indicating that such power "may be exercised to sanction non-production of documents even when no order compelling production pursuant to Rule 37(a)(2), F. R. Civ. P., was obtained") (citations omitted).

Where a party withholds documents, courts have fashioned appropriate monetary sanctions so that the "punishment fits the crime."  *See e.g., Tracy v. Financial Ins. Mgmt. Corp.*, No. 1:04-cv-00619, 2005 U.S. Dist. Lexis 38323, at *3-4, 11 (S.D. Ind. Aug. 22, 2005) (Defendant who produced responsive email on the last day of out-of-state depositions by plaintiff was ordered to pay for additional telephonic depositions and for half the cost of additional in-person depositions pursuant to Rule 37(c)(1)); *Tantivy Communs., Inc. v. Lucent Techs. Inc.*, No. :2:04-CV-79, 2005 U.S. Dist. Lexis 29981, at *2 (E.D. Tex. Nov. 1, 2005) (finding defendant's actions sanctionable by producing relevant document in an untimely manner, permitting destruction of others, and trying to "hide the ball" in other ways).  Thus, there are several options.

This Court could bar Baxter from relying on any documents produced on or after June 1, 2006 in connection with class certification, summary judgment or at trial and enter an adverse instruction that assumes the late-produced documents support Plaintiffs' case.  Or this Court could award Plaintiffs' attorneys fees in bringing these motions as well as the fees and costs it would take to review the late produced documents during a 75-day period.  Plaintiffs estimate that it would take 100 attorneys 75 days to review 6,000,000 pages (based on each attorney reviewing 800 pages per day).  Thus, the estimated cost would be calculated as:  100 attorneys (8 hours $35/hour) x 75 days = $2,100,000.00.  Moreover, if this were the Court's inclination, the Court could then allow Plaintiffs an additional 90 days to take depositions with the benefit of those documents.  Thus, whether this Court bases its decision on the Federal Rules of Civil Procedure or its inherent power, sanctions should be entered against Baxter.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit these Objections to the Magistrate's October 10, 2006 Report and Recommendation, and request an order sanctioning Baxter, and for such other and further relief as this Court deems appropriate.

001534-16  135079 V1

DATED:  October 24, 2006.

By    <u>  /s/ Elizabeth A. Fegan          </u>
Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo
(BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

001534-16 135079 V1

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

**CERTIFICATE OF SERVICE BY LEXIS/NEXIS FILE & SERVE**

I, Elizabeth A. Fegan, hereby certify that I am one of plaintiffs' attorneys and that, on October 24, 2006, I caused copies of PLAINTIFFS' OBJECTIONS TO OCTOBER 10, 2006 REPORT AND RECOMMENDATION BY MAGISTRATE REGARDING PLAINTIFFS' MOTION FOR SANCTIONS AND DEFAULT JUDGMENT AGAINST BAXTER HEALTHCARE FOR OBFUSCATION OF DOCUMENTS AND DILATORY TACTICS AND MONTANA AND NEVADA'S JOINDER THEREIN to be served on all counsel of record by causing same to be posted electronically via LexisNexis File & Serve.

By_____/s/ Elizabeth A. Fegan_____
    Elizabeth A. Fegan

001534-16  135079 V1