## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**CLASS PLAINTIFFS' SUPPLEMENTAL MEMO CONCERNING THE PRELIMINARY APPROVAL OF PROPOSED NATIONWIDE GSK CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASSES AND APPROVAL OF NOTICE PLAN**

In a hearing on September 12, 2006 concerning the Joint Motion for Entry of an Order Granting Preliminary Approval of the GSK Settlement, this Court requested that the Class Plaintiffs provide a concise summary of some of the important financial aspects of the Settlement Agreement and Release of the GlaxoSmithKline Defendants dated August 10, 2006.  Class Plaintiffs have attempted to do so below.

### A.    Total Settlement Amount and Claims Involved

Defendant GSK has agreed to pay a total of $70,000,000 (hereinafter the "Settlement Amount") to settle 1) all class claims brought in the MDL Class Actions in their entirety on behalf of both consumers and third party payors; 2) all *Parens Patriae* /Consumer Restitution and Penalty Claims brought by the Attorneys General of the States of Arizona, Connecticut, Montana, New York and Nevada (hereinafter the "Participating State Plaintiffs") on behalf of the consumers in those states; 3) all Parens Patriae/Consumer Restitution and Penalty Claims brought or possessed by the Attorneys General of the States of Pennsylvania, Illinois, Kentucky,

and Wisconsin (hereinafter the "Litigating State Plaintiffs') on behalf of the consumers in those

states, and 4) the claims of various third party payors, consisting of certain health insurance

companies and health plans who are represented separately from members of the proposed Third

Party Payor settlement class (herinafter the "Independent Settling Health Plans" or "ISHPs").

     The Participating State Plaintiffs have also entered into agreements with GSK, separate

from the MDL Settlement Agreement, wherein they have agreed to accept a portion of the total

Settlement Amount to satisfy their Parens Patriae/Consumer Restitution and Penalty Claims and

have negotiated for a separate payment, outside of any portion of the Settlement Amount they

will receive under the MDL Settlement Agreement, to settle claims related to their payments for

GSK drugs under their respective Medicaid programs.  The Litigating State Plaintiffs have not

yet reached an agreement with GSK to settle any of their claims.  The MDL Settlement

Agreement provides that a certain amount of the total Settlement Amount be set aside to satisfy

the non-Medicaid claims possessed by those states, should they later decide to settle with GSK,

as more fully set out below.

    **B.**    **Allocation of the $70,000,000 Settlement Amount**

     The $70 million Total Settlement Amount will be allocated, in summary, as follows:

     1.    The Participating State Plaintiffs will receive a total of $2.5 million for their

parens patriae/consumer restitution claims, and $2 million will be set aside to settle such non-

Medicaid claims by Litigating State Plaintiffs should they reach an agreement with GSK within

90 days of preliminary approval of the proposed class settlement.[1]

---

[1]     As explained below, if such settlements are not reached between GSK and each
Litigating State, then portions of this $2 million will go back into the Settlement Amount to be
distributed to the classes and the ISHPs, thus increasing the remaining total to above the $65.5
million figure used below.

2.      The remaining $65.5 million will be allocated as follows:

a.      Thirty percent (30%),or $19.65 million, will be allocated to pay claims of consumer class members who paid for GSK drugs based on AWP, including consumers in all 50 states, and

b.      Seventy percent (70%) of the $65.5 million, or $45.85 million, will be allocated to pay the claims of all TPPs, which includes TPP class members and members of the ISHP Group.  The $45.85 allocated for payment of TPP claims will initially be allocated equally (50/50) between the TPP class plaintiffs and the ISHP group members.  To ensure that each TPP, whether they are a class member or an ISHP group member, obtains the same recovery for every dollar spent, the Settlement Agreement calls for a reconciliation or "true-up" of the monies set aside for TPP class plaintiffs and ISHP group members based on the total amounts of purchases claimed by each group through a claims process that is identical for all TPPs, whether they are claiming as a member of the class or are a member of the ISHP Group.

Awards for attorneys fees, litigation costs, and the costs of notice and administration of the settlement will also come out of the $65.5 million Settlement Amount, in amounts that cannot be determined at this time, but which will be determined by the Court in connection with its Final Approval of the settlement.

                    **(i)      Participating State Plaintiffs**

The Attorneys General of New York, Connecticut, Arizona, Montana and Nevada, who all filed separate private AWP cases against GSK, have agreed to settle their individual *parens patria* and consumer penalty claims, as well as related claims for costs and attorneys' fees, for a total of $2.5 million.  Each state's share of the $2.5 million was negotiated and is set forth in separate state-specific agreements between each of these states and GSK.

The $2.5 million is not related to any of these state's Medicaid claims.  The states' Medicaid claims are subject to the separate settlement agreements with GSK, which need not be approved by the MDL Court.  The $2.5 million is also not a recovery for the consumers of those states, but rather a recovery for each participating States' claims.  The consumers of each of these states will be eligible to fully participate in the Consumer Class Fund discussed below and will be compensated through the claims process established by the MDL settlement.

In addition to the $2.5 million, each of the Participating State Plaintiffs will also be allowed to make a claim from the TPP Class Fund for its non-Medicaid state programs, to the extent they exist[2] and have made AWP-based payments for the GSK drugs at issue.  One state, Connecticut, rather than make a claim for such amounts through the class claims process, is allocated $30,000.00 for purchases made by its non-Medicaid state program.  This amount is to be paid to Connecticut after preliminary approval of the class settlement.   This amount is an estimate of what the Connecticut non-Medicaid state program would likely receive in the TPP claims process, based on its total purchases for the GSK drugs at issue.

Finally, each Participating State will be allowed to participate in a mediation process after a distribution to all consumer claimants, to determine how any funds remaining in the Consumer Settlement Fund should be allocated and to whom.

### (ii)      Litigating State Plaintiffs

At the time of the settlement with GSK, the Attorneys General of Pennsylvania, Illinois, Kentucky and Wisconsin had filed separate AWP cases against GSK.  These states have not reached an agreement to settle their claims with GSK.  However, the MDL Settlement

---

[2] Many states, Montana and Nevada for instance, do not have non-Medicaid state programs that have made purchases or reimbursements of pharmaceuticals for their population.

Agreement provides that $2 million of the Settlement Amount be set aside for a period of 90 days from the Court's entry of a preliminary approval order to resolve the claims of these Litigating State Plaintiffs.  If any of these states choose to participate and enter into an agreement with GSK within 90 days of preliminary approval, they will essentially become Participating State Plaintiffs and will be able to participate in the settlement in the same manner as Participating States, as described above.  The payment to Litigating States for release of their *parens patria* and/or consumer restitution claims will be made from the $2 million set aside for this purpose.  Each Litigating state has been allocated a share of the $2 million based upon the relative size of their Medicare populations[3].

Any portion of the $2 million dollars not paid to one or more Litigating State Plaintiffs, because they fail to reach an agreement with GSK within 90 days of preliminary approval of the class settlement, will be allocated as follows:  (1) 25% will be paid into the class escrow account for distribution to class members, (2) 75% will be set aside and used to reimburse the class fund for the costs associated with notice to consumer class members and if there are funds remaining, for the cost associated with notice to TPP class members.  If, in the unlikely event there are funds remaining of the 75% of these funds after all notice costs have been reimbursed, the remaining funds will be returned to GSK.

### (iii)    Settlement Fund Amount To Be Deposited Into Class Escrow Account

The Settlement Fund Amount to be deposited into the Class Escrow Account is initially a minimum of $65.5.  This number may increase if any of the Litigating State Plaintiffs choose to participate in the settlement or not as described above.  This number includes the funds that will

---

[3] The relative percentages of each Litigating States' Medicare populations, according to publicly available 2004 data, are:  Pennsylvania: 40.2%, Illinois: 31.8%; Wisconsin: 15.5% and Kentucky; 12.5%.

be used for the payment of attorneys fees, litigation expenses, the cost of notice to the class and the cost of claims administration -- all of which will be paid out of the Class Escrow Account at the Court's discretion – as well as the funds that will be used to pay the claims of the Independent Settling Health Plans (which would have been TPP class members, but chose instead to settle separately).

The Settlement Fund Amount is initially broken into two pools -- one for consumers totaling 30% of $65.5 million or $19.65 million, and one for TPPs, totaling 70% of $65.6 million or $45.85 million,  The TPP share is then split 50/50 between TPP class members and ISHPs, each of which are initially allocated $22.92 million.

### (a)    Consumer Settlement Pool

The Consumer Settlement Pool, consisting of $19.65 million, is set aside to satisfy the claims of all consumer class members who submit a valid claim from any of the 50 States (and the District of Columbia).  The criteria for submission of a valid claim is described in detail in the Settlement Agreement and associated notices, and is summarized in Section C (i) infra.

Any funds remaining in the Consumer Settlement Pool which are not claimed and therefore are not distributed to consumer class members will be made the subject of a binding mediation with MDL Mediator Eric Green, who will determine how any unclaimed monies should be divided between consumers, the Participating State Plaintiffs with parens patriae/consumer restitution claims, TPPs, and ISHPs..  The decision of the MDL Mediator shall be presented to the Court for review and approval.

### (b)    TPP Settlement Pool

As explained above, the TPP Settlement Pool is initially funded with 50% of the 70% that remains of $65.6 million, or $22.92 million.  These funds are set aside to pay the claims of TPP

class members who file a valid claim with the claims administrator.  The criteria for submission of a valid claim is described in detail in the Settlement Agreement and associated notices, and is summarized in Section C (ii) infra.

As explained more fully in the section below, the amount of funds that are actually paid to TPP class members is a function of the total amount of claims of all TPPs, including TPP Class Members, ISHP Group Members and TPPs who have opted out of the Class and are not ISHP Group Members ("TPP Opt-Outs").  TPP Class Members, in the aggregate, may receive more or less than the full $22.92 million depending on how many claims they submit in relation to the total number of claims submitted in the aggregate by all TPP Class Members, all ISHP Group Members and all TPP Opt-Outs.

### (iv)      ISHP Group Settlement Pool

Like the TPP Settlement Pool, the ISHP Group Settlement Pool is initially funded with 50% of the 70% that remains of $65.6 million, or $22.92 million.  These funds are set aside to pay the claims of ISHP Group Members who, like TPP Class Members, will be required to provide claim documentation and data to verify their AWP-based claimed purchases of the GKS Drugs at issue to the Claims Administrator.  The ISHP Group Member claims will be subject to the same audit process as claims submitted by TPP Class Members.

The amount of money ultimately paid to the ISHP Group will be a function of a "true-up" process once all claims for all TPP Class Members and all ISHP Group Members have been submitted, audited and approved by the Claims Administrator and all TPP Opt Outs have been identified.  See Section C (iv) infra.

### (a)      ISHP Initial Payment

From the money set aside in the ISHP Group Settlement Pool, $11 million will be paid to the ISHP Group within ten business days of this Court's Preliminary Approval Order. The remaining funds will be kept aside and subject to the "true-up" described in Section C (iv). In exchange for receipt of this sum, the ISHPs will fully release their claims against GSK. Because they are separately represented and have chosen not to be class members under the settlement, the ISHPs can provide a release to GSK without the need for Court approval or the time involved in providing notice. In return, the GSK Settlement Agreement provides for an expedited payment of some portion of the monies the ISHP Group Members would ultimately be entitled to from the ISHP Group Settlement Pool.

The $11 million was derived by making certain conservative assumptions about the size of the ISHP claims as compared to those of TPPs. First, before entering into the GSK Settlement Agreement, the ISHP Group Members demonstrated that they insure more than 60% of the "covered lives" (those individuals with health insurance) in the United States. In the experience of class counsel this measure has been an effective proxy for the amount of relative claims by ISHP Group Members in other similar settlements. Despite having demonstrated 60% of the covered lives in the United States, the ISHP Group have, in the aggregate, been initially allocated only 50% of the $45.85 million in total funds allocated to all TPPs. Second, certain robust assumptions were made about the amount of attorneys' fees and costs that would be applied to the amounts ultimately available to be distributed to the ISHP Group. Finally, in determining the initial payment to the ISHP Group, after all of these factors were taken into account, only 75% of the calculated amount will be paid out to the ISHP Group as an initial payment, leaving the remainder in the ISHP Group Settlement Fund to be subject to the "true-up" described in Section C (iv).

### (v)       GSK Refund for TPP Opt-Outs

In the event there are valid TPP Opt-Outs from the Class, once all claims of all TPPs, including TPP Class Members and ISHP Group Members have been received and audited, GSK will be entitled to a refund of a percentage of the $45.85 million set aside for TPP claims.  The amount of the refund is meant to approximate the amount of funds the TPP Opt-Out would have been entitled to under the claims process, free of any reduction for attorneys' fees or costs of notice or administration.  Presumably any TPP-Opt out may seek to separately negotiate with or litigate their claims against GSK.

The percentage of the $45.85 million refunded to GSK will be equal to the percentage of purchases by TPP Opt-Outs compared to the claimed purchases of all TPPs, including ISHP Group Members, that have submitted claims documentation to the Claims Administrator.  So if TPP Opt-Outs represent purchases that are 2% of the purchases of the sum of all TPP purchases including TPP Class Claims, ISHP Group claims and TPP Opt-Out purchases, GSK will receive 2% of $45.85 million in refund or $917,000.00.

As part of their opt-out, TPP Opt-Outs are requested to provide the Claims Administrator with the amount of their purchases of the GSK drugs during the relevant time period.  This information is not required in order for a TPP to validly opt-out of the Class but it is requested in order to make the calculation of the GSK Refund and the "true-up" of TPP/ISHP claims easier. In the event insufficient information is provided by TPP Opt-Outs, the parties have agreed to cooperate and use other available information to estimate the purchases of TPP Opt-Outs.

The GSK Settlement Agreement also provides 33% of any monies refunded to GSK in the form of the GSK Refund will be maintained by GSK up to two years in order to satisfy any claim for attorneys fees, costs or expenses by Class counsel or the Class.  GSK is required to notify class counsel of the existence of any settlement with a TPP Opt-Out and Class Counsel will submit a motion to the Court seeking costs and expenses be paid out of monies set aside for that purpose.

C.      **Calculation of Payments to Class Members and the ISHP Group**

        (i).     **Consumer Class Members**

In addition to submitting their claimed out-of-pocket expenditures on each GSK Drug during the class period, in order to validate their claim for AWP-based payments associated with each GSK Drug for which they seek payment from the Consumer Settlement Fund, it is requested that Consumer Class Members submit one proof of payment for each of the drugs listed in Exhibit A to the GSK MDL Settlement Agreement for which they are seeking payment.

Proof of payment may be in the form of:

(1) a written prescription for the drug;

(2) a receipt, cancelled check, or credit card statement that shows that they have paid for the drug;

(3) an EOB (explanation of benefits) that shows they made or are obligated to make a percentage co-payment for the drug;

(4) a letter from their physician stating that he or she prescribed and that the Class Member paid or is obligated to pay a percentage co-payment for the drug at least once and setting forth the amount of the co-payment; or

(5) a notarized statement by the Class Member indicating they paid or are obligated to

pay a percentage co-payment for the drug between January 1, 1991 through June 1, 2006, including the total of all percentage co-payments for the drug during that time period.

Lead Class Counsel have established a "Recognized Claim Percentage" ("RCP") for each of the categories of GSK drugs listed on Exhibit A to the GSK MDL Agreement.  The RCP for each category of GSK Covered Drugs is a percentage of total payments that was negotiated by the parties and is consistent with Plaintiffs' assessment of liability and damages for each drug.  A Class Member need not calculate its payments based on the RCPs, they need only claim the total amount of their out-of-pocket expenses for each drug and the RCP will be applied by the Claims Administrator in order to determine their recognized loss.

The Recognized Claim Percentage for each drug is listed below:

|  | Drug Name | Dosages | Recognized Claim Percentage |
|---|---|---|---|
| GSK Category A Drugs | Kytril | Injection: 1mg <br> Tablets: 1mg | 50% |
|  | Zofran | Injection Solution: 2mg/ml <br> Injection (Pre-mixed): 32mg/50ml <br> Tablets: 4mg; 8mg; 24mg | 50% |
|  |  |  |  |
| GSK Category B Drugs | Alkeran | Injection: 50mg <br> Tablets: 2mg | 5% |
|  | Imitrex | Injection: 0.5ml <br> Injection Stat dose Refill: 6mg/0.5ml <br> Self-dose System (Rx only) | 5% |
|  | Lanoxin | Injection Solution: 0.5mg <br> Pediatric Injection: 0.1mg | 5% |

| | Myleran | Tablets: 2mg | 5% |
|---|---|---|---|
| | Navelbine | Injection: 10mg/1ml; 50mg/5ml | 5% |
| | Retrovir | IV Infusion: 10mg/ml | 5% |
| | Ventolin | Inhalation Solution: 0.083% 3ml; 0.5% 5mg/ml | 5% |
| | Zovirax | Powder for Injection: 500mg; 1000mg | 5% |

After the purchase amount for each GSK Covered Drug claimed by each Consumer Class Member submitting a valid claim has been accepted by the Claims Administrator as submitted in accordance with the requirements set forth on the Consumer Claim Form, the Claims Administrator will apply the RCP associated with each drug to the purchase amount claimed by each Consumer Class Member for that particular drug. The product of these figures is the Consumer Class Member's "Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member.

In order to encourage Consumer Class Members to file claims, and subject to Court approval, Lead Class Counsel has established a Minimum Recognized Claim for Consumer Class Members. Any Recognized Claim which falls below $100.00 shall be assumed to equal $100.00 for the purposes of calculating the payment made to each Consumer Class Member.

If, after the application of the Minimum Recognized Consumer Claim as set forth above, the sum of all Recognized Claims of all Consumer Class Members is equal to or less than the funds available for distribution in the Consumer Settlement Pool, each Consumer Class Member shall receive a payment equal to 100% of his or her Recognized Claim. If, after the application

of the Minimum Recognized Consumer Claim as set forth above, the sum of all Recognized

Claims of all Consumer Class Member is greater than the funds available for distribution in the

Consumer Settlement Pool, each Consumer Class Member shall receive a pro-rata share of the

Net Consumer Settlement Pool in proportion to his/her Recognized Claim.

A sample calculation of two hypothetical Consumer Class Members is set forth below:

Consumer 1

Claimed Out-of-Pocket expenses:

> Kytril Injectible - $780.00  (RCP = 50%)
> Myleran - $110.00 (RCP = 5%)

Calculation of Recognized Claim:

> ($780 X .50) + ($110 X .05) = $390+ $5.50 = $395.50

Application of Minimum Recognized Consumer Claim:

> $395.50 is greater than $100.00 minimum.  Minimum is inapplicable.
Recognized Claim is $395.50

Consumer 2

Claimed Out-of-Pocket expenses:

> Zofran Injectible - $100 (RCP=50%)
> Lanoxin - $250 (RCP = 5%)

Calculation of Recognized Claim:

> ($100 X .50) + ($250 X .05) = $50.00 + $12.50 = $62.50

Application of Minimum Recognized Consumer Claim:

> $62.50 is less than $100.00 minimum.  Minimum is applicable.
Recognized Claim is $100.00

**(ii.)  TPP Class Members**

TPP Class members will be required to submit as part of their claim the amount of AWP-based purchases of each GSK drug during the period of January 1, 1999 to December 31, 2003. This period is substituted for claims associated with the full class period in recognition of the difficulty TPPs have in accessing claims data that is older and likely not kept electronically or on current electronic systems.  This "proxy period" shall be used to determine the payments made to each TPP Class Member.

In order to validate their claim for payment associated with the GSK Drug for which they seek payment from the Settlement, TPP Class Members with claimed purchases for all GSK Drugs during the proxy period that exceed $300,000.00 in total shall be requested to submit electronic claims documentation with their claim.  The form and data required to be submitted are delineated in the TPP Claim Form.  Those TPPs whose claimed purchases are $300,000.00 or less need not submit electronic claims documentation with their claim but must furnish such claims documentation if requested by the Claims Administrator.

After the purchase amount for each GSK Drug claimed by each TPP Class Member submitting a valid claim has been accepted by the Claims Administrator as submitted in accordance with the requirements set forth on the TPP Claim Form, the Claims Administrator will apply the RCP associated with each drug to the purchase amount claimed by each TPP Class Member for that particular drug.  The RCPs applied to TPP Claims are identical to those set forth above for Consumers Class Members.  The product of these figures is the TPP Class Member's "Recognized Claim" used for purposes of calculating the payment made to each TPP Class Member.

If the sum of all Recognized Claims of all TPP Class Members is equal to or less than the funds available for distribution from the TPP Settlement Pool, each TPP Class Member shall receive a payment equal to 100% of its Recognized Claim.  If the sum of all Recognized Claims of all Consumer Class Member is greater than funds available for distribution from the TPP Settlement Pool, each TPP Class Member shall receive a pro-rata share of the Net TPP Settlement Pool in proportion to its Recognized Claim amount.

### (iii.)  ISHP Group Members

In order to validate their claim for payment associated with the GSK Drug for which they seek payment, each ISHP Group Member must submit the amount of AWP-based purchases for each GSK Drug for the same proxy period as TPP Class Members.  Additionally, each ISHP Group Member is requested to submit electronic documentation with certain specified data fields.  Those data fields correspond to the data requested of each TPP Class Member with a claim greater than $300,000 and are set forth with specificity on Exhibit I to the GSK Settlement Agreement.

After the purchase amount for each GSK Drug claimed by each ISHP Group member submitting the correct claim documentation has been accepted by the Claims Administrator as submitted in accordance with the requirements set forth on Exhibit I to the Settlement Agreement, the Claims Administrator will apply the RCP associated with each drug to the purchase amount claimed by each ISHP Group Member for that particular drug.  The RCPs to be applied to ISHP Group Member purchase amounts are identical to those identified above.  The sum of these figures is the ISHP Group Member's "Recognized Claim" used for purposes of calculating the payment made to the ISHP Group Members in total.

### (iv).    True-Up of Amounts Allocated to TPPs, ISHPs and the GSK Refund

At the time when all TPP-Opt Outs have been identified, all TPP Class Members have submitted claims, all ISHP Group members have submitted adequate claims documentation and all of the claims and documentation received by the Claims Administrator have been subject to the audit processes customarily employed by the Claims Administrator for these purposes, a calculation will be made by the Claims Administrator, as to 1) the amount of funds that should be made available to the TPP Class Members for distribution in accordance with their Recognized Claim amounts 2) the amount of funds (if any) that should be transferred to the ISHP Group Settlement Fund for further distribution to the members of the ISHP Group and 3) the amount of any refund to GSK attributable to any TPP Opt-Outs.  This "true-up" process is necessary in order to ensure that each TPP, whether a TPP Class Member or an ISHP Group Member, is paid the same amount for every dollar of claimed expenditure.  This can only be determined after all the claims for all TPPs have been submitted and subjected to the audit process.

The determination of each of these amounts is done first by calculating the percentage of claimed dollar expenditures (or in the case of TPP Opt-Outs, purchases) of each of the TPPs, ISHP and TPP Opt-Outs in relation to the sum of all of their claimed purchases combined. These relative percentages are used first to calculate the GSK Refund pursuant to Section B (v) above, then to calculate how much additional money, if any, should be paid out to the ISHP Group above the $11 million already paid to them previously.  The remaining funds whether in the TPP Settlement Pool or in the ISHP Settlement Pool are to be distributed to TPP Class Members.

If the ISHPs represent more than 37.5%[4] of the total TPP expenditures (TPPs, ISHPs and TPP Opt Outs), they are entitled to additional funds.  The additional funds are to be paid first from the ISHP Settlement Pool and then, if necessary, from the TPP Settlement Pool.  If the additional funds to which ISHP Group members are entitled do not exceed the amount remaining in the ISHP Settlement Pool, those remaining funds will be distributed to TPP Class Members.

Example calculations of the additional amounts to be paid to the ISHP Group are set forth below.  In the first example, the ISHPs represent 60% of all TPP purchases, in the second example, they represent only 40% of all TPP purchases.

Example 1

Assumptions:

      ISHP Group Recognized Claim Percentage = 60%
      Net Fees and Expenses =  $17 million
      GSK Refund = $3 million
      Total Deposits to Class TPP Pot and ISHP Pot =  $46 million

ISHP Group Reversion Amount Calculation:

      ISHP Over/Underage = 60-37.5 =  22.5%

      Fees and Expenses Attributable to TPPs and ISHPs = $17M X .70 = $11.9M

      22.5% X ($46M - $11.9M - $3M) =  $6,997,500

      $6,997,000 due to be paid to ISHP Group Members first from the amount remaining in the ISHP Settlement Pot and the balance from TPP Settlement Pot at the conclusion of the claims process

      Total payment to ISHP Group Members = $6,997,500 + $11,000,000 = $17,997,500

---

[4]  37.5% is the amount already paid to the ISHP Group.  They were allocated 50% of the funds set aside for TPPs and paid 75% of that amount.  .50 x .75 = .375

Example 2

Assumptions:

ISHP Group Recognized Claim Percentage = 40%
Net Fees and Expenses =  $17 million
GSK Refund = $3 million
Total Deposits to Class TPP Pot and ISHP Pot =  $46 million

ISHP Group Reversion Amount Calculation:

ISHP Over/Underage = 40-37.5 =  2.5%

Fees and Expenses Attributable to TPPs and ISHPs = $17M X .70 = $11.9M

2.5% X ($46M - $11.9M - $3M) =  $777,500

$777,500 due to be paid from ISHP Settlement Pool to ISHP Group Members.
Any funds remaining in ISHP Settlement Pool to be returned to TPP Settlement
Pool for distribution to TPP Class Members.

Total payment to ISHP Group Members = $11,000,000 + $777,5000 =
$11,777,500.00

## D.     Attorney's Fees, Expenses and Incentive Award

Class Plaintiffs' Counsel will submit a fee petition for an award of fees, reimbursement

of costs and expenses, and award of incentive payments to appropriate Plaintiffs or Class

representatives.  Understanding that the award of attorneys' fees is a matter committed to the

sole discretion of this Court, Defendants will not object to Counsel's request for a reasonable

attorneys' fee.  Defendants also will not object to Counsel's request to the Court for an award of

reasonable expenses.  Such fees and expenses are to be paid from monies allocated to the

Consumer and TPP Settlement Funds, after approval by the Court.  The Settlement Agreement

provides for incentive awards as determined by this Court for services rendered to the Class by

the Class Representatives.

Class Counsel have reached an agreement with members of the ISHP Group and ISHP Group Counsel concerning attorneys fees.  That agreement is identified for the Court pursuant to Fed.R.Civ.P 23(e).

**E.      Suggested Deadlines for Inclusion in Preliminary Approval Order**

Class Counsel and GSK previously submitted a proposed Order Granting Preliminary Approval for the Court's consideration.[5]  During the September 12, 2006 preliminary approval hearing, the Court requested that the parties propose dates for the key events set forth in the proposed Preliminary Approval Order.  Plaintiffs and GSK propose the following dates:

Insert the date of the Preliminary Approval hearing, September 12, 2006, into the last Whereas clause on the first page;

Insert February 7, 2007 into Paragraph 9, as the date by which the proposed Notice Plan shall commence;

Insert May 27, 2007 into Paragraph 11 as the opt-out deadline;

Insert May 28, 2007 into both blanks in Paragraph 16 (a), as the deadlines for claims submissions;

Insert a date on or about July 6, 2007 (in accordance with the Court's calendar) in Paragraph 23, as the date for the Fairness Hearing to determine whether a final approval order should be issued;

Insert June 15, 2007 in Paragraph 24, as the date by which Class Counsel shall file papers in support of final approval of the settlement and a fee petition;

---

[5]      A revised version of the proposed Preliminary Approval Order was filed, along with certain minor corrections to the settlement papers, on September 5, 2006.  For the Court's convenience, a copy of the revised Proposed Order is submitted as  Exhibit A hereto.

Insert June 22, 2007 into all blanks in Paragraph 25, as the dates by which oppositions or objections to the settlement must be filed and served.

Insert June 22, 2007 in Paragraph 29, as the date by which counsel for any class member who wishes to be heard concerning the fairness of the settlement must enter an appearance.

For all of the reasons set forth in the Joint Motion for Entry of an Order Granting Preliminary Approval of the GSK Settlement, as well as the reasons discussed at the September 12, 2006 hearing as supplemented by this submission, Class Counsel and GSK respectfully request the Court preliminarily approve the GSK Settlement by entering the proposed Preliminary Approval Order with the dates proposed herein.


DATED:  October 24, 2006.                    By_____/s/ Steve W/ Berman_____
                                             Thomas M. Sobol (BBO#471770)
                                             Edward Notargiacomo (BBO#567636)
                                             Hagens Berman Sobol Shapiro LLP
                                             One Main Street, 4th Floor
                                             Cambridge, MA  02142
                                             Telephone: (617) 482-3700
                                             Facsimile: (617) 482-3003

                                             **LIAISON COUNSEL**

                                             Steve W. Berman
                                             Sean R. Matt
                                             Hagens Berman Sobol Shapiro LLP
                                             1301 Fifth Avenue, Suite 2900
                                             Seattle, WA  98101
                                             Telephone: (206) 623-7292
                                             Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm
740 S. Third Street, 3rd Floor
Philadelphia, PA  19147
Facsimile:  (215) 392-4400
Telephone:  (215) 609-4661

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456


I, Ed Notargiacomo, hereby certify that I am one of plaintiffs' attorneys and that, on October 24, 2006, I caused copies of **CLASS PLAINTIFFS' SUPPLEMENTAL MEMO CONCERNING THE PRELIMINARY APPROVAL OF PROPOSED NATIONWIDE GSK CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASSES AND APPROVAL OF NOTICE PLAN** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


<u>**/s/ Ed Notargiacomo**</u>
Ed Notargiacomo