UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | ) ) ) ) ) |
| **THIS DOCUMENT RELATES TO:** | ) ) ) |
| State of Arizona v. Abbott Labs, Inc., et al.<br><br>Civ. Action No. 1:06-CV-11069-PBS | ) **MDL NO. 1456**<br>) **CIVIL ACTION NO.**<br>) **01-12257-PBS**<br>) ) ) ) ) ) |

**MEMORANDUM AND ORDER**

October 24, 2006

Saris, U.S.D.J.

### I. INTRODUCTION

The State of Arizona brought this action in its own capacity and as parens patriae on behalf of Medicare beneficiaries, third-party payors, and other state residents in state court against various pharmaceutical companies, alleging that they violated state law by fraudulently misrepresenting prescription drug prices. Defendants removed the suit on the ground that plaintiff bases its claims on a specific interpretation of the term "average wholesale price" in the federal Medicare statute, 42 U.S.C. § 1395u(o). Arguing that there is no substantial and disputed federal issue, plaintiff seeks remand to state court. Plaintiff's motion to remand is **DENIED**.

**II. BACKGROUND**

The State of Arizona, through its Attorney General, brought suit against more than twenty pharmaceutical manufacturers, alleging that they fraudulently and grossly inflated the prices of drugs to consumers by misstating the "Average Wholesale Prices" ("AWPs") of their drugs in industry publications. (Compl. ¶¶ 1-2.) Plaintiff claims that the inflated drug prices were used for repayment by Arizona's Medicaid program, Medicare Part B beneficiaries, third-party payors and Arizona residents purchasing drugs outside these programs. (Compl. ¶ 2.) Arizona asserts the claims on behalf of itself, Medicare beneficiaries and other Arizona residents. Plaintiff asserts two state law causes of action: a claim for violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522(A) (2006); and racketeering under Arizona's Racketeering Act, Ariz. Rev. Stat. § 13-2301, et seq. (2006). (Compl. ¶¶ 569-85.)

This Court has entertained many similar AWP claims since 2001, and has fully explained the operation of the drug reimbursement procedures in prior opinions with which the Court assumes familiarity. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61 (D. Mass. 2005).

To recap, Medicare is a purely federal program that provides health insurance to individuals age 65 and older, as well as other qualifying individuals. See 42 U.S.C. § 1395c (2006).

Until 2005, Medicare Part B covered certain classes of prescription drugs. See id. §§ 1395j-1395w. Under Part B, the federal government paid 80 percent of the allowable cost of covered drugs and the beneficiary was responsible for the remaining 20 percent. See id. § 1395l. From 1998 until 2004, the Medicare statute set reimbursement of covered drugs at the lesser of the actual charge on the Medicare claim form or 95 percent of AWP. 42 U.S.C. § 1395u(o); 42 C.F.R. § 405.517(b) (2006). In 2004, reimbursement under the statute was reduced to 85 percent of AWP. 42 U.S.C. § 1395u(o); 42 C.F.R. § 414.707. As of January 1, 2005 the reimbursement rate no longer depends upon AWP. See 42 C.F.R. § 414.904.

Defendant pharmaceutical manufacturers set the AWP for each of their drugs. The manufacturers send their AWPs to industrial publications, such as First DataBank or Red Book, that compile and publish a list of the AWPs for most available drugs. Pursuant to the statute, Medicare reimbursed providers, such as pharmacies and doctors, for a drug based on its published AWP. When the price paid by a provider to the wholesaler or drug manufacturer was less than the reimbursement the provider received, the provider pocketed the difference, or "spread." By creating large spreads, the pharmaceutical companies marketed their drugs to providers, who have great discretion in determining which drugs to administer. Arizona Medicare Part B beneficiaries bore part of the burden of this spread by paying a

20 percent co-payment of a grossly inflated AWP.

Arizona, as well as third-party payors (primarily private insurers and health and welfare plans) reimburse physicians and pharmacies for certain drugs based upon AWP.  This includes contractors under Arizona's Medicaid program, the Arizona Health Care Cost Containment System ("AHCCCS").  See Ariz. Rev. Stat. § 36-2901, et seq. (2006).  The AHCCCS Administration contracts with health plans and other contractors to provide eligible low-income Arizona residents with a range of health care services, including prescription drugs.  Additionally, the AHCCCS Administration directly pays for health care services, including prescription drugs, for persons receiving benefits through the Indian Health Service, the Federal Emergency Services program, Qualified Medicare Beneficiary programs, and the State Emergency Services program.  Plaintiff alleges that both the state Medicaid contractors and the AHCCCS Administration paid inflated reimbursement prices for prescription drugs based upon defendants' reported AWPs.

Plaintiff filed this complaint in Arizona state court on December 6, 2005.  Arizona seeks to return to its residents the increased medication costs caused by defendants' wrongful conduct, to disgorge defendants "excessive profits" and to enjoin further violations of Arizona law.  Defendants removed the case on January 5, 2006 to the District Court for the District of Arizona.  On January 30, 2006, the Judicial Panel on

Multidistrict Litigation ("JPML") issued a conditional transfer order, which was opposed by plaintiffs. On June 16, 2006, the JPML denied plaintiff's motion to vacate the conditional transfer order and ordered the case to be transferred to this Court. Plaintiff filed a timely motion to remand the case on August 11, 2006.

### III.  DISCUSSION

A party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. See BIW Deceived v. Local 56, 132 F.3d 824, 831 (1st Cir. 1997). Because the removal statute should be strictly construed, any doubts about the propriety of removal should be construed against the party seeking removal. See, e.g., Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). Jurisdiction must be evident from the basis of the well-pleaded complaint; a defense based in federal law is inadequate to confer jurisdiction on this Court. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) ("Merrell Dow").

The Supreme Court's recent decision in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005) explains the method for determining federal question jurisdiction when, as in this case, a federal question is embedded in state-law claims. Clarifying conflicting interpretations of Merrell Dow, the Supreme Court held that a claim need not be brought under federal

law for there to be valid federal question jurisdiction.  Id. at 317-18; McCready v. White, 417 F.3d 700, 702-03 (7th Cir. 2005) (noting that Grable put the "kibosh" on the possibility that a federal cause of action was necessary to establish federal question jurisdiction).  The Court laid out a three part inquiry for determining the existence of federal question jurisdiction: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.  The Court guided lower courts to engage in a "contextual inquiry" that examines "the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts." Id. at 318-19.

Plaintiff alleges that the pharmaceutical companies intentionally inflated the AWP for their drugs, knowing that those inflated figures would be used as the basis for prescription drug co-payments by Arizona Medicare beneficiaries in violation of the Arizona Consumer Fraud Act and the Arizona Racketeering Act, and that these state law claims do not raise any federal issues.  Defendants argue that the plaintiff's theory of recovery necessarily raises the substantial federal issue of the meaning of AWP under the Medicare statute, which affects both liability and damages.

This is not the first time that this court has addressed the meaning of "AWP" under Medicare in the context of a motion to remand. In <u>State of Montana v. Abbott Labs</u>, 266 F. Supp. 2d 250 (D. Mass. 2003), the state alleged that its Medicare beneficiaries overpaid based on defendant drug manufacturers' overstatements of AWP. Agreeing with the defendants that an essential element of the parens patriae claim was proof of a discrepancy between the AWPs reported by the pharmaceutical companies and the meaning of AWP under the Medicare statute, the Court held: "The adjudication of whether the term 'average wholesale price' in the Medicare statute embraces a 'spread' could have broad implications for Medicare reimbursements and co-payments." <u>Id.</u> at 255. That case, however, was decided before the <u>Grable</u> decision. At that time, under First Circuit precedent, I interpreted <u>Merrell Dow</u> to preclude the exercise of federal jurisdiction where the federal statute did not provide a private remedy. <u>Id.</u> at 257; <u>see also</u> <u>Minnesota v. Pharmacia Corp.</u>, 278 F. Supp. 2d 101, 103 (D. Mass. 2003) ("[T]he First Circuit and a number of other courts read <u>Merrell Dow</u> as an instruction to remand state-law claims like Minnesota's, where the right to relief depends on the application of a federal statute that does not provide a private remedy."). Because the Medicare statute did not have a private cause of action, this court therefore remanded the case back to the state court.

It is now clear under <u>Grable</u> that the lack of a private

federal cause of action does not preclude jurisdiction.  This court, recently reviewing the Montana decision, reaffirmed that the meaning of the term AWP under the federal Medicare statute is a "weighty federal question."  In re Pharm. Indus. Average Wholesale Price Litig., 2006 U.S. Dist. LEXIS 63655, at *24 (Sept. 6, 2006).  However, in that case, I remanded the state-law action which sought relief solely under the state Medicaid statute.  While that state statute used the term "Average Wholesale Price" there was no indication in the statute, legislative history or caselaw that it should be construed in sync with the federal statute.

    Using Grable eyes in analyzing this parens patriae action, I (again) conclude that the meaning of AWP in the federal Medicare statute is a substantial federal issue that properly belongs in federal court.  The government has a strong national interest in prohibiting fraud upon Medicare beneficiaries because fraudulent acts threaten Medicare's integrity.  Fischer v. United States, 529 U.S. 667, 681 (2000); see Grable, 545 U.S. at 315 (noting that the meaning of the federal tax provision is an "important issue of federal law" because the government has a "strong interest" in the prompt collection of taxes).  The interpretation of AWP under the statute determines whether the Arizona Medicare beneficiaries, by definition the sick and elderly, overpaid on their drug co-payments.  Furthermore, once the meaning of AWP is determined, it can be applied to the many pending similar

pharmaceutical drug pricing cases in the Medicare context.  See Empire HealthChoice Assur., Inc. v. McVeigh, 126 S. Ct. 2121, 2137 (2006) (noting that in Grable an important factor favoring jurisdiction was that the resolution of the embedded federal question would control numerous similar tax cases).  This directly impacts the viability and effectiveness of the federal Medicare program.  Arizona's state-law claims on behalf of Medicare Part B beneficiaries based on the meaning of AWP in the federal statute therefore raise a substantial federal issue.

Under Grable, the federal issue must also be "actually disputed" in the litigation.  Grable, 545 U.S. at 314.  The Medicare statute does not define the term AWP.  See 42 U.S.C. § 1395u(o); id. § 1395x ("Definitions" section).  For plaintiff to succeed on the asserted theory of liability, the AWPs reported by defendants must be different from the AWP required under the Medicare statute.  From day one of the litigation, defendants have vigorously protested that Congress understood that AWP did not represent the actual cost that providers paid for drugs.  The determination of the actual meaning of AWP under the Medicare statute has been hotly disputed in the multi-district litigation and is a crucial component of plaintiff's theory of liability.

The final question under Grable is whether granting federal jurisdiction will disturb "any congressionally approved balance of federal and state judicial responsibilities."  Grable, 545 U.S. at 314.  Federal jurisdiction over a matter should not

"materially affect, or threaten to affect, the normal currents of litigation." Id. at 319. Here, "raising Arizona" from state to federal jurisdiction is unlikely to upset any balance because of the substantial number of similar cases that are already pending in federal courts. The claims that Arizona brings on behalf of its Medicare Part B beneficiaries raise the same issues that are currently before this court in a multi-district litigation that involves over ninety similar pharmaceutical pricing cases. See In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 66-67 (D. Mass. 2005). Medicare Part B beneficiaries make up the first class of plaintiffs in that litigation. See In re Pharm. Indus. Average Wholesale Price Litig., 233 F.R.D. 229, 230 (D. Mass. 2006). Finally, as one district court aptly stated: "There is . . . no congressionally approved balance of judicial responsibilities in this arena. During the approximately 13 years that the price controls have been in place, both state and federal courts have heard cases related to the statutes directly governing them." County of Santa Clara v. Astra USA, Inc., 401 F. Supp. 2d 1022, 1029 (N.D. Cal. 2005).

It is true that other district courts reached contrary post-Grable decisions in similar cases involving a state's parens patriae claims on behalf of Medicare Part B beneficiaries. See Commonwealth of Pennsylvania v. Tap Pharm. Prods., 415 F. Supp. 2d 516, 524-25 (E.D. Pa. 2005) (remanding under Grable upon finding that (1) "the term 'average wholesale price' is not

10

'actually disputed' because the Commonwealth does not premise its parens patriae claim on the construction of these words as they appear in the applicable Medicare statute and regulations" and (2) there is no substantial federal question because "AWP is no longer the standard for reimbursement under Medicare" and "a court would not need to construe the term 'average wholesale price' beyond its plain meaning"); Wisconsin v. Abbott Labs., 390 F. Supp. 2d 815, 823 (W.D. Wis. 2005) (remanding under Grable upon finding that granting jurisdiction would disturb the federal and state court balance because "[a]t best the federal and state interests are equivalent" and "shifting all of these [state filed pharmaceutical pricing cases] . . . into federal court would work a significant disruption in the division of labor between federal and state courts").  As the judge assigned the massive multi-district litigation, involving class actions and numerous attorney general suits, I conclude that the issue of the meaning of AWP under the federal Medicare statute has national significance.  A federal forum provides experience, solicitude and uniformity on this important federal issue.  See Grable, 545 U.S. at 312.

Citing Grable and Merrell Dow, plaintiff also argues that the absence of both a federal cause of action and of federal preemption of state remedies weighs heavily against a finding of federal jurisdiction.  See Grable, 545 U.S. at 318; Merrell Dow, 478 U.S. at 811-14.  While the presence of a federal cause of

11

action is a welcome mat, its absence is not a deadbolt.  Rather, the absence of a federal cause of action or of federal preemption of state remedies is "an important clue to Congress's conception of jurisdiction."  Grable, 545 U.S. at 318 (emphasis added).  In Merrell Dow, the Court was concerned that the exercise of federal jurisdiction in those circumstances "would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues."  Id.  As explained above, granting federal jurisdiction in this case does not open the door to a horde: the horde has already stormed the border.  Arizona's state law claims on behalf of Medicare Part B beneficiaries raise a substantial, actually disputed federal issue that does not threaten the balance of judicial responsibilities.

The Court has supplemental jurisdiction over Arizona's claims on behalf of the third-party payors, private payors and state Medicaid contractors making drug payments outside of the Medicare Part B program.  See 28 U.S.C. § 1367(a) (2006) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); see also City of Chi. v. Int'l College of Surgeons, 522 U.S. 156, 165 (1997) ("[Section 1367(a)]

applies with equal force to cases removed to federal court as to cases initially filed there.").

## **ORDER**

The motion to remand (Docket No. 2974) is **DENIED**.

                                        **S/PATTI B. SARIS**
                                        United States District Judge