# 13

# Trial Affidavit of Michael T. Mulrey

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: ALL CLASS ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br>Judge Patti B. Saris |

### TRIAL AFFIDAVIT OF MICHAEL T. MULREY

I, Michael T. Mulrey, pursuant to 28 U.S.C. § 1746, on oath, depose and state as follows:

1.      I am a resident of the Commonwealth of Massachusetts. I have personal knowledge of the facts stated below, would so testify in court if called upon to do so, and am competent to provide testimony.

2.      I have a Bachelors of Arts degree in business and economics from St. Anselm College.

3.      Since October 2000, I have been the Manager of the Professional Provider Reimbursement Area within the Actuarial Department at Blue Cross Blue Shield of Massachusetts ("BCBSMA"). I began my professional affiliation with BCBSMA in 1987 as a Senior Financial Analyst working for Medical East and Medical West Community Health Plan ("Medical West"). From 1991 to 1994, I worked in the HMO Blue Information System area as a Senior Business Systems Analyst. From 1994 to 1998, I worked in the Provider Contracting area as a Senior Contract Analyst.

1

4.  My current department within BCBSMA maintains and updates the various fee schedules used as the basis for reimbursement to physicians in the BCBSMA network for all services as well as physician administered drugs.

5.  BCBSMA has historically had several types of contractual arrangements with physicians and physician groups, including fee-for-service arrangements, capitated arrangements and risk sharing arrangements. To my knowledge however, fee-for-service arrangements have always been the most prominent contractual arrangement between physicians and physician groups and BCBSMA. This is especially true from the late 1990's to today as BCBSMA entered into fewer and fewer risk-sharing arrangements such as capitated contracts with physicians and physician groups.

6.  Overwhelmingly, the majority of reimbursements BCBS has made since the mid-1990's have been made on the basis of a fee-for-service arrangement based on fee schedules created and maintained by BCBSMA.

7.  There currently exist four main fee schedules that govern the reimbursement to physicians, including for payment of physician administered drugs. These four fee schedules are 1) an HMO fee schedule, 2) a PPO fee schedule, 3) an indemnity fee schedule, and 4) a Medicare HMO fee schedule.

8.  The HMO fee schedule reimburses physicians for services covered under our HMO products. The PPO fee schedule reimburses physicians for services covered under our PPA products. The Indemnity fee schedule reimburses physicians for services covered under our Indemnity products. The Medicare HMO fee schedule reimburses physicians for services covered under our Medicare Advantage HMO (Blue Care 65) products.

9.  Currently, every physician administered drug code listed on these four fee schedules is set at the same fee.

10. Under my direction and supervision, my staff is responsible for establishing and maintaining these fee schedules. From 1991 until 1995, the reimbursement amounts in these fee schedules was established based on the Usual and Customary ("U&C") charge for the particular drug.

11. In 1995, BCBSMA began using the AWP as a basis for reimbursement to physicians for physician administered drugs. From 1995 to 1998, BCBSMA used 100% of AWP as the basis for establishing the reimbursement amounts in its fee schedules related to physician reimbursement for physician administered drugs. In 1998, BCBSMA moved to using 95% of AWP as the basis for the reimbursement amounts set forth in these fee schedules.

12. Until 2005, BCBSMA obtained the AWP it used for these fee schedules from Medicare. Fee updates would be retrieved from Medicare/NHIC websites or the Medicare B Resource guide.

13. As a result of the fact that the four fee schedules relate to physician administered drugs are identical, reimbursement to physicians is essentially identical for every physician administered drug listed on each of the fee schedules. The only exception to this statement relates to the reimbursement to some physicians under BCBSMA's Medicare Advantage plan formerly knows as "Blue Care 65" and now known as "Medicare HMO Blue." Under that product, primary care physicians ("PCPs") are reimbursed at 85% of the stated fee in the fee schedule for all physician administered drugs except certain vaccinations for which they are paid 100% of the stated fee. The

3

Medicare HMO Blue PCPs also receive a $7 payment per month for each enrollee under their care. Under the Medicare HMO Blue product, specialists are paid 100% of the stated fee regardless of the type of physician administered drug and are not paid a monthly amount per member.

14. The fee schedules maintained by BCBSMA, including the four fee schedules related to reimbursement for physician administered drugs, are referenced in contracts with physicians and physician groups.

15. BCBSMA maintains electronic claims data in its TPS claim system. This system records a multitude of variables related to each claim paid by BCBSMA, including claims for payment for physician administered drugs administered to BCBSMA members and participants in plans for which BCBS is the fund administrator. It is possible, using the information recorded in the claims data to determine which claims were paid based upon the fee schedules referenced above and which may have been paid under a different arrangement, such as a capitated arrangement, with the physician or physician group. To determine if a claim was paid as a "capitated" claim, one would need to look at the TPS claim segment HM screen where the Claim Payment element would show a value of "05"

16. Early in 2004, sometime after CMS announced that beginning in 2006 Medicare would no longer rely on AWP as a basis for reimbursement of physician administered drugs and would rely instead on ASP, my staff, under my supervision, conducted an analysis of the impact on Medicare's new fee schedules using historic utilization data from BCBSMA.

17. That analysis was presented to and discussed at the Provider Financial Strategy Work Group ("PFSWG"), the working group within BCBSMA that makes policy

4

decisions related to, among other things, BCBSMA policy as it relates to reimbursement to physicians and physician groups.

18.     Until I began looking at materials published by Medicare in preparation for the analysis my staff and I conducted in early 2004 concerning the impact of a move from the use of AWP to ASP, I believed that the AWPs BCBSMA had been using as a basis for reimbursement were the prices at which, on average, physicians were paying to purchase physician administered drugs.

19.     I was not aware that the AWPs which BCBSMA used to establish its fee schedules for physician administered drugs may have been inflated and may not have borne a reasonable or predictable relationship to the actual prices being paid by physicians for these drugs.

20.     Until approximately early 2004, when this issue was considered by the PFSWG, I was not aware of any discussion or analysis of the relationship between the AWP being used by BCBSMA as a basis for reimbursement and the actual prices at which physicians and physician groups could purchase physician administered drugs.

21.     Based on a discussion that I had with Denise Demaina, who was the BCBSMA employee responsible for retrieving the data in connection with this litigation, my understanding of the data produced by BCBSMA in this matter is as follows: BCBSMA has produced claims data related to the J-codes of the drugs at issue in this case. Based on that data, BCBSMA has paid for the drugs at issue in this case as reflected in the charts attached as Exhibit B. The first part of Exhibit A reflects payments for the drugs at issue under BCBSMA's Medex or MediGap products. The second part of Exhibit A reflects payments for the drugs at issue under BCBSMA's other commercial products.

5

I make the foregoing statements under penalty of perjury on the date written next to my name below.

Date: October 27, 2006

_____
Michael T. Mulrey

# EXHBIT A

## BCBSMA PAYMENT FOR TRACK I DRUGS
## UNDER MEDEX PRODUCTS (CLASS 2 PURCHASES)

| Track I Defendant | Drug Reimbursed by BCBSMA under commercial products |
|---|---|
| AstraZeneca | Zoladex |
| Bristol Meyers Squibb | Blenoxane<br><br>Cytoxan<br><br>Etopophos<br><br>Paraplatin<br><br>Rubex<br><br>Taxol<br><br>Vepesid |
| Johnson & Johnson | Procrit<br><br>Remicade |
| Schering Plough and Warrick | Albuterol<br><br>Intron A<br><br>Perphenazine<br><br>Proventil<br><br>Temodar |

001534-16 136696 V1

EXHIBIT A
Page 2

BCBSMA PAYMENT FOR TRACK I DRUGS
UNDER COMMERCIAL PRODUCTS (CLASS 3 PURCHASES)

| Track I Defendant | Drug Reimbursed by BCBSMA under commercial products |
|---|---|
| AstraZeneca | Zoladex |
| Bristol Meyers Squibb | Blenoxane |
| | Cytoxan |
| | Etopophos |
| | Paraplatin |
| | Rubex |
| | Taxol |
| | Vepesid |
| Johnson & Johnson | Procrit |
| | Remicade |
| Schering Plough and Warrick | Albuterol |
| | Intron A |
| | Perphenazine |
| | Proventil |
| | Temodar |

001534-16 136696 V1