**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) |
| | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| | Judge Patti B. Saris |
| ALL CLASS ACTIONS | ) ) ) |

**SCHERING-PLOUGH CORPORATION'S AND WARRICK PHARMACEUTICALS
CORPORATION'S MEMORANDUM IN SUPPORT OF THEIR MOTION IN LIMINE
TO EXCLUDE THE TESTIMONY OF CHARLES M. ALCORN,
BEATRICE E. MANNING, AND G. RAYMOND PIRONTI, JR.**

Schering-Plough Corporation ("Schering") and Warrick Pharmaceuticals Corporation

("Warrick") respectfully submit this memorandum in support of their Motion in Limine to

Exclude the Testimony of Charles M. Alcorn, Beatrice E. Manning, and G. Raymond Pironti, Jr.

**PRELIMINARY STATEMENT**

Plaintiffs proffer testimony by three witnesses about drugs, conduct, and entities not at

issue in this case.  Each witness was a relator in a *qui tam* action that was settled in 2004 – a

settlement each relator describes as a "global resolution" of the issues raised therein.  The best

evidence regarding that case are the settlement papers, which are attached hereto as exhibits.[1]

These papers show that the settled case had nothing to do with AWP, Medicare, any subject

_____

[1] *See* Settlement Agreement and Release, attached hereto as Ex. A ("Settlement Agreement"); Complaint-in-Intervention, *United States ex rel. Charles Alcorn, Beatrice Manning and G. Raymond Pironti, Jr. v. Schering-Plough Corporation*, No. 98-5688 attached hereto as Ex. B ("Complaint"); Information, *United States v. Schering Sales Corp.*, No. 04-443, attached hereto as Ex. C ("Information"); Plea Agreement, *United States v. Schering Sales Corp.*, No. 04-443, attached hereto as Ex. D ("Plea Agreement").  All citations to "Ex. __" refer to exhibits attached to the Declaration of Adam Wright, filed herewith.

drug, or any Massachusetts TPP or consumer.  Most importantly for purposes of this Court, not a single one of the inflammatory accusations contained in the declarations regarding AWPs, spreads, and Medicare was in *any* way in *any* of the papers describing the settlement – an outcome that belies common sense if, in fact, such issues had been part of the settlement. Accordingly, the proffered testimony about that case is irrelevant and inadmissible.

Charles M. Alcorn, Beatrice E. Manning, and G. Raymond Pironti, Jr. ("Relators") are former employees of Integrated Therapeutics Group ("ITG"), a subsidiary of Schering, and were *qui tam* relators in the settled case.  Settlement Agreement ¶ I.  The allegations made in that case concerned Medicaid's "best price" for Claritin.  *See id.* ¶ H; *see also* Complaint ¶¶ 19-33.  In settling the case, Schering expressly denied what was alleged.  Settlement Agreement ¶¶ II.J-K. Contemporaneously with the Settlement, a Schering subsidiary, Schering Sales Corporation, pled guilty to a violation of 42 U.S.C. § 1320a-7b based on a payment to an HMO relating to Claritin. *See* Information ¶ 29; Plea Agreement ¶ 1.

The proffered testimony summarizes the allegations made in the settled case, dressed up with sporadic references to AWP to make it appear, falsely, as if AWP had figured in the settled case.  Ms. Manning devotes most of her testimony to describing allegations made in the settled case and the terms of the settlement.  Decl. of Beatrice E. Manning, Ph.D. ¶¶ 7, 9-11 (Oct. 27, 2006) (Docket No. 3274-12) ("Manning Decl.").  Mr. Pironti does the same.  Decl. of G. Raymond Pironti, Jr. ¶ 5 (Oct. 27, 2006) (Docket No. 3274-14) ("Pironti Decl.").  Mr. Alcorn adds to his description of the settled allegations a description of the three "elements" of the Settlement.  Decl. of Charles Alcorn ¶¶ 8, 11-13 (Nov. 1, 2006) (Docket No. 3295) ("Alcorn Decl.").  They all use the same words to say the same things.  *See* Manning Decl. ¶ 8; Alcorn Decl. ¶ 10; Pironti Decl. ¶ 6.

In four pages of testimony, Ms. Manning mentions AWP in two sentences in the last two paragraphs.  Manning Decl. ¶¶ 13, 14.  The term "AWP" appears three times in the seven pages of Mr. Pironti's declaration.  Pironti Decl. ¶¶ 8, 13, 14.  Mr. Alcorn mentions "AWP" a few times in eleven pages, but spends more time making claims about Schering's "young, debt-ridden lawyers."  *See* Alcorn Decl. ¶¶ 6, 12-17.   Most of the exhibits referenced in the Relators' testimony do not even refer to AWP.[2]  Nowhere in any of the declarations is there any reference to Massachusetts, much less any Massachusetts third party payor or Massachusetts consumer. The same is true for the exhibits referenced in each declaration.

## ARGUMENT

The Relators' proffered testimony is irrelevant because it relates to drugs, conduct, and issues not at issue in this case.  Fed. R. Evid. 402, 403.  Its only possible purpose can be to show a propensity from which the Court would be asked to infer conduct in accordance with it, which is an illegitimate purpose.  Fed. R. Evid. 404.  The Relators' belated and nearly identical references to AWP are so obviously *post hoc*, vague, and conclusory that they should also be excluded for lack of personal knowledge.  Fed. R. Evid. 602.  This is a case under Chapter 93A about AWP, Medicare, and Massachusetts TPPs – subjects that are not even remotely related to the settled case or the Relators' testimony.

The proffer of this testimony is an attempt to bolster a fading case.  None of these individuals was previously identified as having any relevant testimony.  None of Plaintiffs' document requests related to ITG.  Now, on the eve of trial, Plaintiffs proffer testimony about a

---

[2] Neither of the two exhibits Manning references even mention AWP.  *See* Manning Decl. ¶ 5 (Pls.' Ex. 407 is an organization chart), ¶ 9 (Pls.' Ex. 565 describes the "business rationale" for ITG and does not mention AWP).  Four of the exhibits to which Mr. Pironti refers make no mention of AWP.  *See* Pironti Decl. ¶ 7 (Pls.' Ex. 565 is the same organization chart referenced by Ms. Manning), ¶ 10 (Pls.' Ex. 714 is a memorandum regarding nominal pricing), ¶ 12 (Pls.' Ex. 418 is a contract proposal that does not mention AWP), ¶ 13 (Pls.' Ex. 505 is a summary of free goods).

3

case unrelated to this one containing wild accusations about Schering's legal department that never previously appeared in the settled case or anywhere else. *See* Alcorn Decl. ¶¶ 18-19. This gambit should not be permitted to distract Schering, Warrick, and the Court from matters that are at issue in the pending case.

## I.  RELATORS' PROFFERED TESTIMONY IS IRRELEVANT

Most of the Relators' proffered testimony is so far afield as to be obviously irrelevant: ITG is not involved in this case. Claritin is not involved in this case. Medicaid and its "best price" reporting requirements are not involved in this case. Health management services, fees, samples, and nominal pricing are not at issue in this case; none of these practices have anything to do with AWP or the drugs at issue here. Plaintiffs' expert, Dr. Hartman, has not adverted to any of these practices in calculating prices or spreads. *See* Decl. of Raymond S. Hartman in Supp. of Pls.' Claims of Liability and Calculation of Damages (Dec. 15, 2005), Attachment G.5.D, filed as Ex. 1 to Decl. of Steve W. Berman in Supp. of Pls.' Mem. in Opp'n to Track 1 Defs.' Joint Motion for Summ. J. (Apr. 7, 2006).

Mr. Alcorn's allegations against Schering's lawyers exemplify the lengths to which the Plaintiffs are willing to use obviously incompetent testimony to smear Schering with obviously irrelevant accusations for the illegitimate purpose of deflecting attention from the emptiness of their case on the merits. Mr. Alcorn, now a law student, reports comments from former colleagues at Schering as a basis for swearing, on personal knowledge, that "SP's practice was to hire young, debt-ridden lawyers fresh out of law school" who were punished if they did not

---

Five of the six exhibits to which Mr. Alcorn refers make no mention of AWP. *See* Alcorn Decl. ¶ 6 (Pls.' Ex. 407), ¶ 11 (Pls.' Ex. 565), ¶ 13 (Pls.' Ex. 714), ¶ 20 (Pls.' Exs. 550, 551).

condone questionable conduct including destruction of documents.  Alcorn Decl. ¶ 19. [3]  What slander this is, and what a distraction it would be, for Schering to use its time in this case to defend its legal department against it.

## II.    RELATORS' PROFFERED TESTIMONY VIOLATES FED. R. EVID. 404

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Ev. 404(b).  *See, e.g., Suprenant v. Rivas*, 424 F.3d 5, 22 (1st Cir. 2005) (finding evidence inadmissible where proponent relied on propensity inference to establish probative value).  The Relators' proffered testimony is barred by Fed. R. Evid. 404(b) unless it is demonstrably offered for a purpose other than to show propensity, and it is necessary to accomplish that other, legitimate purpose*, see United States v. Brandon*, 17 F.3d 409, 443-45 (1st Cir. 1994).  Neither condition is met here.

The Relators' testimony is plainly proffered to show that Schering has a propensity to do what is alleged in this case.  The Relators' account of a settlement involving allegations of misconduct relating to ITG, Medicaid, and Claritin is proffered for the purpose of persuading the Court to conclude that Schering engaged in misconduct relating to Warrick, Medicare, and drugs not including Claritin.  *See* Manning Decl. ¶¶ 7, 9-11 (describing settlement); Pironti Decl. ¶¶ 5-6 (same); Alcorn Decl. ¶¶ 8-13.  Plaintiffs, through the Relators, say that a company that would "cheat Medicaid" is a company that would "cheat" Medicare.  Manning Decl. ¶ 8; Pironti Decl. ¶ 6; Alcorn Decl. ¶ 10.  These are precisely the kinds of inferences expressly prohibited by Fed. R. Evid. 404(b).

---

[3] Pursuant to the Court's request at the October 31, 2006 hearing, objectionable testimony is highlighted in yellow on the attached transcripts.  *See* Alcorn Decl., attached hereto as Ex. E; Manning Decl., attached hereto as Ex. F; Pironti Decl., attached hereto as Ex. G.  For each, the grounds for the objection, as well as the relevant section of the memorandum, appear in the margin.

### III.    RELATORS' PROFFERED TESTIMONY FAILS UNDER FED. R. EVID. 602

The limitation of testimony to a witness's personal knowledge prevents an employee from attesting to employer conduct of which he lacks personal knowledge.  *Trigano v. Bain & CO., Inc.*, 380 F.3d 22, 33 (1st Cir. 2004) (affirming exclusion of testimony based on lack of foundation when employee "was competent to testify about procedures in the *Paris* office . . . [but] did not establish that she knew enough about procedures in the *Tokyo* office) (emphasis in original).  The "requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise."  *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315- 316 (1st Cir. 2001) (under Fed. R. Civ. P. 56(e), recommending "a selective approach to [assessing the witness'] affidavit" and stating that "personal knowledge is the touchstone.").  Here, the Relators are former employees of a health management subsidiary, ITG, and, as such, they had no apparent involvement with Schering's or Warrick's practices relating to AWP.  Certainly they provide no foundation in their proffered testimony for their statements on these subjects.

Ms. Manning describes her position as one that would not permit her to witness any of the conduct she alleges.  She says that she managed clinical opportunities, and she refers in her description to an organizational chart showing that her responsibilities were separate from those of the ITG Sales Marketing Division.  Manning Decl. ¶ 5 (referencing Pls.' Ex. 407, an organization chart).  Then out of the blue, in the last two paragraphs of her declaration – the only two paragraphs in the entire declaration that mention AWP – she claims that "SP relied on the value of spreads" and that she "witnessed" presentations involving "the reimbursements spreads created by false AWPs . . ."  *Id.* ¶¶ 12, 13.  Her description of her position and its responsibilities makes it extremely unlikely that Ms. Manning would be in a position to know anything regarding AWP.  Certainly, nothing in her declaration demonstrates affirmatively that she is competent to

testify in these conclusory terms about AWPs or spreads.  Had there been any substance to these

allegations about misconduct relating to AWP, such allegations surely would have been part of

the Settlement, a Settlement to which Ms. Manning was a party and a Settlement which Ms.

Manning – and the other two Relators - describe as complete.  *See id.* ¶ 7; Pironti Decl. ¶ 5;

Alcorn Decl. ¶ 8 (describing settlement as "global resolution").

Mr. Alcorn alleges, in direct contradiction of the Plaintiffs, that managed care

organizations were the complicit recipients of illegal spreads created by nominal pricing and

other devices.  He claims to know this by witnessing "wink-wink" interactions between ITG

representatives and managed care organizations in which the ITG participants used nominal

pricing and other devices to create and market spreads to managed care organizations.  Alcorn

Decl. ¶ 16.  Of course, Mr. Alcorn didn't see anyone wink; he didn't hear anyone say what he

says was unspoken; and of course he didn't read anyone's mind.  He didn't witness anything of

the kind he alleges; no one could:  No one could see the wink that didn't occur, hear the sound

that was not uttered, read the mind that was not expressed in words or actions.  What he alleges

was in his head, not his senses.  In the same vein, Mr. Alcorn cannot have admissible testimony

about documents that he admits were written while he was "not present or employed at SP. "  *Id.*

¶ 13 (referencing document authored five *years* before his arrival at ITG).

Similarly, Mr. Pironti proffers testimony regarding two documents that were created

*years* after he left Schering.  For example, Mr. Pironti offers his opinion on an e-mail dated

2002, even though he was not a recipient of the e-mail and, in fact, left the company four years

earlier.  Pironti Decl. ¶ 14 (commenting on Pls.' Ex. 497).[4]  Similarly, Mr. Pironti reviews a chart

purporting to show free goods for the years 1998 to 2003.  *Id.* ¶ 13 (referencing Pls.' Ex. 505).

Even though he was not an employee for almost the entire period purportedly covered by the chart, Mr. Pironti opines that "there would not have been any reporting of those free goods. . ." *Id.* Mr. Pironti cannot know what was reported, much less when it was reported or to whom; Mr. Pironti only offers his opinion as to what might have happened, years after he left the company.

The Relators' lack of personal knowledge regarding matters relevant to this case is shown clearly in their discussion of Plaintiffs' Exhibit 565, a draft memorandum regarding ITG. All three Relators emphasize the same phrase on the same page of the same document: that ITG existed "*to compete on a basis other than price*." Manning Decl. ¶ 9; Pironti Decl. ¶ 7; Alcorn Decl. ¶ 11. From this document, the Court is supposed to conclude that to "compete on a basis other than price" was to compete on the basis of "high AWPs." Manning Decl. ¶ 12; Alcorn Decl. ¶ 14. The Court is further supposed to conclude that reliance on "high AWPs" was not only the practice of ITG, but also the practice of Schering and, by even further implication, Warrick. Yet, not a single page in the referenced exhibit says anything about AWP or competing on the basis of AWP, much less competing on the basis of AWP regarding subject drugs. It says nothing regarding Warrick or any Warrick product. It says nothing about Medicare or any Massachusetts third party payor. Such testimony is exactly the kind of baseless conjecture that Fed. R. Evid. 602 was meant to prevent, and that the Court should strike. *See Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir.1988); *see also Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D. Mass. 1997). Without personal knowledge, much less any relevant or otherwise admissible testimony, the Relators should not be allowed to testify.

---

[4] Mr. Alcorn also offers his opinion on the same e-mail, *see* Alcorn Decl. ¶ 15, even though he was not a recipient of the e-mail, nor was he an employee at the time the e-mail was sent.

## CONCLUSION

For the foregoing reasons, the Court should grant Schering's and Warrick's Motion in

Limine to Exclude the Testimony of Charles M. Alcorn, Beatrice E. Manning, and G. Raymond

Pironti, Jr.

Respectfully submitted,

/s/ John T. Montgomery
John T. Montgomery (BBO#352220)
Steven A. Kaufman (BBO#262230)
Eric P. Christofferson (BBO#654087)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

*Attorneys for Schering-Plough Corporation and
Warrick Pharmaceuticals Corporation*

Dated:  November 2, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2006, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ Adam Wright
Adam Wright