UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | MDL NO. 1456<br>CIVIL ACTION NO. 01-CV-12257-PBS<br>Judge Patti B. Saris<br><br>Chief Magistrate Judge Marianne B. Bowler |

**DEFENDANT IMMUNEX CORPORATION'S OBJECTIONS TO OCTOBER 23, 2006 ORDER BY CHIEF MAGISTRATE JUDGE BOWLER REGARDING IMMUNEX'S MOTION FOR PROTECTIVE ORDER REGARDING MAY 17, 2006, DEPOSITION NOTICE**

Pursuant to Fed. R. Civ. P. 72(a), Immunex Corporation respectfully submits the following objections to the Order of Chief Magistrate Judge Bowler issued in open court on October 23, 2006 (the "Order"), in which Judge Bowler denied the motion for protective order filed by Immunex regarding Plaintiffs' untimely May 17, 2006, deposition notice.

### I. INTRODUCTION

Judge Bowler's ruling was clearly erroneous and inconsistent with other rulings issued on the same day on other protective order motions. Plaintiffs' deposition notice was issued after the close of Track Two discovery, yet Judge Bowler denied Immunex's motion on the basis that Plaintiffs had "specifically identified" the fact witnesses for whom they sought depositions after the discovery cut-off. This is a reason without a rhyme.

Moreover, although Plaintiffs alleged that various Track Two Defendants engaged in various delays during the discovery process – and Plaintiffs used these alleged delays as a basis to request that the Track Two discovery schedule be extended – Plaintiffs have never alleged that

Immunex engaged in any delays because Immunex did not. Plaintiffs can offer no justification for their delay as to Immunex. Thus, even if discovery should remain open as to certain Track Two Defendants – an issue not presented by Immunex's objections – it has been closed for months as to Immunex and, accordingly, Judge Bowler's ruling should be reversed.

## II.    PROCEDURAL BACKGROUND

### A.    The Discovery Schedule Governing Track Two

On March 25, 2004, the Court entered CMO 10, which provided for the phasing of discovery by "track." Declaration of Kathleen M. O'Sullivan, Ex. 1. Track One fact discovery was to close on January 30, 2005; Track Two fact discovery was to close on October 3, 2005. *Id.* Approximately a year later, in response to briefing by the parties, the Court extended the discovery cut-off for both Track One and Track Two Defendants. In CMO 13, the Court extended the discovery cut-off for Track One Defendants to August 31, 2005. *Id.*, Ex. 2. And in CMO 14, on March 28, 2005, the Court extended the discovery cut-off for Track Two Defendants to December 3, 2005. *Id.*, Ex. 3.

On September 28, 2005, Plaintiffs moved for a "stay of Track Two discovery" and asked the Court to "tie the discovery more closely to class certification proceedings." Docket Entry No. 1741 at 2. In that motion, Plaintiffs stated that "if the Court is not inclined to adopt plaintiffs' proposal to stay Track Two discovery pending standing determinations, Plaintiffs respectfully request that the Court provide 90 additional days beyond December 3rd in order to complete Track Two discovery. . . ." *Id.* at 6. On November 21, 2005, the Court issued CMO 16, which denied Plaintiffs' request for an indefinite stay of discovery linked to class certification. O'Sullivan Decl., Ex. 4. CMO 16 also directed the parties to "confer and submit a stipulation on discovery

relating to any non-physician-administered drugs by December 2, 2005."[1] *Id.* A subsequent order directed the parties to "confer on a discovery schedule that makes sense and submit a joint and/or alternative schedule by December 9, 2005," stressed that it is "important to keep Track Two from becoming the molasses track," but also contemplated that "[g]iven the different stages of document production, one possibility is a different wrap-up schedule for each defendant." O'Sullivan Decl., Ex. 5.

The parties conferred, but were unable to agree upon a discovery schedule. As a result, the Track Two Defendants and Plaintiffs filed separate proposed discovery schedules. Plaintiffs proposed that fact discovery continue for nearly seven more months, until June 30, 2006. Docket Entry # 1899. The Track Two Defendants proposed that the Court enter exactly what Plaintiffs sought in the event that the Court rejected their request for a floating stay – a 90-day extension (i.e., until March 3, 2006), for those discovery requests and deposition notices served on or before the December 3 cut-off. Docket Entry #1950. Many Track Two Defendants, including Immunex, filed individual memoranda in support of the proposed Track Two discovery schedule. *Id.* (Immunex memorandum at 24-26). Plaintiffs did not file any response to Immunex's memorandum. As of this filing, the Court has not ruled on the competing scheduling orders. According to Plaintiffs, this means that the Court has "tacitly" agreed that discovery of Track Two Defendants may continue – apparently indefinitely, regardless of the individual circumstances of the Track Two Defendant. O'Sullivan Decl. ¶ 6. As set forth below, Immunex's circumstances are unique.

---

[1] The five Immunex "subject drugs" are all physician-administered drugs, with the exception of a small number of NDCs.

B.  **Background Regarding Immunex**

Immunex has not sold or marketed any drugs in four years. O'Sullivan Decl. ¶ 7. Of the five Immunex "Subject Drugs" in the MDL (Leukine, Novantrone, Thioplex, leucovorin calcium, and methotrexate sodium), Immunex sold two of these products to one company in 2001 (leucovorin calcium and methotrexate sodium), sold Leukine to a second company in mid-2002, licensed Novantrone to a third company in 2002, and ceased all sales of Thioplex, which had come to face generic competition, by late 2002. *Id.* ¶ 8. As a result of these transactions, there are no current Immunex employees who are knowledgeable regarding the sales and marketing of any of the former Immunex products. *Id.* ¶ 9. Also as a result of these transactions, Immunex's counsel endeavored to cooperate early with Plaintiffs' counsel in the discovery process because of the difficulty of locating documents and tracking down former employees in a company that was no longer engaged in the business of selling and marketing of drugs. *Id.* ¶ 10.

C.  **The Timing of Immunex's Document Production**

Immunex began its document production nearly four years ago, with a substantial production pursuant to CMO 5. *Id.* ¶ 11. Immunex's CMO 5 production, begun in December 2002, included over 90 boxes of documents plus electronic files, including sales data. *Id.* The CMO 5 production also included an electronic copy of an Access database containing "call notes" of Immunex sales representatives' "calls" on physicians or other potential customers. *Id.* ¶ 12. Immunex again produced the CD containing the call notes database to Plaintiffs in June 2003, after Plaintiffs' counsel finally informed Immunex counsel which of the Immunex CMO 5 production they wanted copies of. *Id.* ¶ 13, Ex. 6 at 23 (CD labeled "Access Spreadsheets," IAWP149257). Almost a year later, Plaintiffs' counsel informed Immunex counsel that they could not locate the Immunex call notes database, so Immunex produced another copy of it to Plaintiffs'

counsel. *Id.* ¶ 14, Ex. 7. In each instance, Immunex produced the entire call notes database to Plaintiffs' counsel, without any limitation on what Plaintiffs' counsel could see. *Id.* ¶ 15.

Immunex completed its document production by the end of the summer of 2005, following multiple supplemental productions, most of which consisted of electronic sales and chargeback data that Plaintiffs had specifically requested in a letter dated April 21, 2005. *Id.* ¶ 16; Ex. 8. As of the December 3, 2005, cut-off, Immunex had a good faith belief that it had no outstanding document issues with Plaintiffs. *Id.* ¶ 17.

### D.  Immunex's Cooperation with Plaintiffs' First Five Deposition Notices

The May 17, 2006 deposition notice is the sixth deposition notice that Immunex received from Plaintiffs in this case. O'Sullivan Decl. ¶ 18. In response to the first five notices, Immunex cooperated with Plaintiffs in locating and producing its former employees, who are located across the country. *Id.* ¶ 19. As a result of Immunex's cooperation, eleven Immunex depositions have occurred. *Id.* ¶ 20.

A brief history of the timing of these depositions reveals the numerous delays by the Plaintiffs, not Immunex, in proceeding with these depositions. Immunex received its first deposition notice from Plaintiffs in June 2003. *Id.* ¶ 21. Plaintiffs then stated they would "hold these notices in abeyance." *Id.* In April 2004, Immunex received an "Amended" 30(b)(6) notice. *Id.* ¶ 21. Immunex identified three individuals who would testify on behalf of the company and offered to make them available in May 2004. *Id.* ¶ 22. The day after Immunex's counsel spoke with Plaintiffs' counsel regarding the scheduling of these depositions, Plaintiffs cancelled the depositions. *Id.* ¶ 23.

In May 2005, Immunex received a new and different 30(b)(6) notice from Plaintiffs. *Id.* ¶ 24. In response, Immunex identified two individuals, both of whom testified in September

2005. *Id.* ¶ 25. On November 7, 2005, on the eve of the discovery cut-off, Plaintiffs served a notice for the deposition of five Immunex fact witnesses, including one of the 30(b)(6) witnesses. *Id.* ¶ 26. Immunex offered to make all available, and to do so even if the depositions occurred after the December 2005 cut-off, given that these are former employees and that scheduling the depositions around the holidays was difficult. *Id.* ¶ 27. Plaintiffs proceeded with four of the five depositions on the November 2005 notice. *Id.* ¶ 28.

In February 2006, Plaintiffs served a notice for the deposition of five more Immunex fact witnesses. *Id.* ¶ 29. Immunex objected based on the untimeliness of the notice given the December 2005 cut-off for Track Two discovery, but Plaintiffs argued that these witnesses had testimony that was also relevant to the Montana and Nevada cases, in which the discovery cut-off of March 31, 2006 had not yet passed. *Id.* ¶ 30. Immunex decided to resolve the issue without involving the Court, and agreed to make all of the witnesses available. *Id.* ¶ 31. Plaintiffs proceeded with all five of the depositions, including depositions of Immunex's former Vice President of Sales, former National Account (Sales) Manager, former Senior Director of Trade Relations (sales to wholesalers and oncology distributors), and former Director of Sales Operations. *Id.* ¶ 32. During a March 21, 2006 deposition, Joyce Golden, former Director of Sales Operations, was questioned in great length about the call notes database that Immunex had produced to Plaintiffs for the first time in 2002. *Id.* ¶ 33. Plaintiffs did not follow up with any additional discovery of Immunex prior to the cut-off in the Montana and Nevada cases, but nearly two months later, on May 17, 2006, Plaintiffs served the deposition notice at issue. *Id.* ¶ 34, Ex. 9. The notice calls for deposition of five former Immunex sales representatives. *Id.* ¶ 35 None of these individuals currently works for Immunex and none has worked there since July 2002. *Id.* ¶ 36.

### III. ARGUMENT

Judge Bowler's ruling is clearly erroneous because (1) discovery against Immunex closed no later than March 3, 2006 (if not on December 3, 2005), and (2) that Plaintiffs "specifically identified" the witnesses listed in the May 17, 2006, deposition notice is not a basis for permitting those depositions to go forward.

As set forth above, *see* Section II.A., *infra*, Plaintiffs had ample time and opportunity to conduct depositions of Immunex witnesses they now want well after the close of discovery. Plaintiffs knew as of the Court's March 28, 2005 CMO 14 that they had until December 3, 2005 – eight months – to complete their discovery of the Track Two Defendants. O'Sullivan Decl. Ex's 1, 3. As to Immunex, this should not have been a problem, as Plaintiffs had the bulk of Immunex's document production for years. Again as to Immunex, Plaintiffs made some effort to complete their discovery prior to the cut-off by proceeding with Immunex 30(b)(6) depositions and noticing five other Immunex fact witnesses prior to the December 3 discovery cut-off.

Plaintiffs did not complete that discovery. Instead, Plaintiffs moved for a stay of Track Two discovery on September 28, 2005, and asked, if the stay was not granted, that the "Court provide 90 additional days beyond December 3rd in order to complete Track Two discovery." The Court denied Plaintiffs' request for a stay in CMO 16 (entered 11/21/05). O'Sullivan Decl., Ex. 4. Plaintiffs filed a motion for clarification of CMO 16 on November 28 (Docket Entry # 1912) which resulted in the Court's December 1, 2005, order stating that "this is the holiday season" and that there was "no reason to pressure the litigants, counsel, associates and paralegals to complete all discovery *this month*." Order re: Plaintiffs' Motion for Clarification of Case Management Order #16 (emphasis added). O'Sullivan Decl., Ex. 5.

In the spirit of the Court's December 1 order, Immunex did not insist that Plaintiffs complete all of their timely noted depositions prior to December 3, or even prior to December 31. And when Plaintiffs noted five additional Immunex depositions on February 6, 2006, arguing that those depositions were also noted in the Montana and Nevada AWP MDL cases filed by the same Plaintiffs' counsel (and where the discovery cut-off of March 31, 2006, had not yet passed), Immunex agreed that the depositions could go forward. Certainly, however, by May 17, the "holiday season" had long passed. The discovery cut-off in the Montana and Nevada cases had likewise passed. And even had the Court granted Plaintiffs the additional 90 days to complete Track Two discovery, which Plaintiffs requested (but which the Court has not granted), the "new" discovery cut-off of March 3 for Track Two discovery had also long passed.

The notion, by Judge Bowler, that the untimely discovery of former Immunex employees may go forward simply because Plaintiffs "specifically identified the individuals" is not based in law and certainly was not based on any argument of the Plaintiffs. Judge Bowler's Order denying Immunex's motion for a protective order is clearly erroneous in that the deposition notice was clearly untimely, and Plaintiffs did not seek leave to take the untimely discovery.[2] Nor would Plaintiffs have any basis to claim that delays by Immunex – as opposed to the Plaintiffs' own delays – justified providing the Plaintiffs with additional time. This is evident in Plaintiffs' own filings, most notably their filings of November 28 and December 9 (Docket Entry #'s 1912 and 1953), in which Plaintiffs accused eight Track Two Defendants of various delays that allegedly supported an extension to the Track Two discovery schedule, yet Plaintiffs did not make a single

---

[2] Under the Federal Rules of Civil Procedure, a protective order may be granted upon "good cause shown" that the "disclosure or discovery not be had." Fed. R. Civ. P. 26(c). Motions for protective orders are routinely granted where discovery is sought in an untimely fashion. *See Chrysler Intern. Corp. v. Chemaly*, 280 F.3d 1358, 1362 (11th Cir. 2002).

accusation as to Immunex. Nor did Plaintiffs file a response to Defendant Immunex Corporation's Memorandum Regarding Track Two Discovery Schedule (part of Track Two Defendants' Submission Regarding Discovery Schedule, filed December 9, 2005, Docket Entry # 1950), in which Immunex explained the story of Immunex's cooperation to the Court and Immunex's position that "Plaintiffs have had every opportunity to complete discovery of Immunex within the time period established by the Court at Plaintiffs' request. No further extension – other than to complete the four depositions [timely] noted by Plaintiffs – is warranted." *Id.* at 2.

The clear error in denying Immunex's motion for a protective order is seen in particular when one examines Judge Bowler's rulings on other motions in the same day, when Judge Bowler granted Montana and Nevada's Motion for Protective Order Relating to Defendants' Second Subpoena to Blue Cross Blue Shield of Montana (Docket Entry # 2745) on the basis that Defendants served the second subpoena after the discovery cut-off, and denied State of Nevada's Motion for Protective Order relating to Defendants' Deposition Subpoena to MGM Mirage (Docket Entry # 2966) on the basis that Defendants served the subpoena prior to the discovery cut-off. As to Blue Cross Blue Shield of Montana and MGM Mirage, those decisions by Judge Bowler were correct as they were based on the fundamental principle that discovery deadlines have meaning. *See Otero v. Buslee*, 695 F.2d 1244, 1247-48 (10th Cir. 1982) ("We find that the district court did not abuse its discretion in imposing a reasonable discovery deadline and enforcing it by granting Mr. Otero's motion for a protective order.").

After having had *years* to review Immunex's documents and depose Immunex's witnesses, Plaintiffs have had ample opportunity to obtain discovery from Immunex. Under Fed. R. Civ. P. 26(b)(2), the Court has the authority to and should impose some limits now. To quote from a brief filed by the States of Montana and Nevada, "At some point, discovery in this case must end.

That point, with limited exceptions, came and went . . . . [Plaintiffs] can offer no justification for their delay in noticing the deposition[s]." Motion for Protective Order Relating to Defendants' Second Subpoena to Blue Cross Blue Shield of Montana, Docket Entry # 2745 at 2. And to cite a proverb previously invoked by this Court, "what's sauce for the goose is sauce for the gander."

## IV.   CONCLUSION

On December 1, 2005, the Court stated that it is "important to keep Track 2 from becoming the molasses track," yet that is what exactly what Judge Bowler has permitted the Plaintiffs to do with Immunex. For the foregoing reasons, the Court should overturn Chief Magistrate Judge Bowler's order and issue a protective order precluding Plaintiffs from going forward with the five depositions of former Immunex employees identified in the May 17, 2006, deposition notice.

November 2, 2006

          Respectfully submitted,

          /s/ Kathleen M. O'Sullivan
          Kathleen M. O'Sullivan
          David J. Burman

          PERKINS COIE LLP
          1201 Third Avenue, Suite 4800
          Seattle, WA 98101-3099
          Telephone: (206) 359-8000
          Facsimile: (206) 359-9000

          Thomas J. Sartory
          GOULSTON & STORRS LLP
          400 Atlantic Avenue
          Boston, MA 02110-3333
          Telephone: (617) 482-1776
          Facsimile: (617) 574-4112

          Attorneys for Defendant Immunex Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2006, I caused a true and correct copy of Objections to October 23, 2006 Order by Chief Magistrate Judge Bowler Regarding Defendant Immunex Corporation's Motion for Protective Order Regarding May 17, 2006, Deposition Notice on all counsel of record electronically via LexisNexis File & Serve.

Kathleen M. O'Sullivan
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
206.359.8000