# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

THIS DOCUMENT RELATES TO ALL
CLASS ACTIONS

MDL NO. 1456
CIVIL ACTION NO. 01-CV-12257-PBS
Judge Patti B. Saris

Chief Magistrate Judge Marianne B. Bowler

## DECLARATION OF KATHLEEN M. O'SULLIVAN IN SUPPORT OF DEFENDANT IMMUNEX CORPORATION'S OBJECTIONS TO OCTOBER 23, 2006 ORDER BY CHIEF MAGISTRATE JUDGE BOWLER REGARDING IMMUNEX'S MOTION FOR PROTECTIVE ORDER REGARDING MAY 17, 2006, DEPOSITION NOTICE

I, Kathleen M. O'Sullivan, duly declare as follows:

I am a partner at the law firm of Perkins Coie LLP, in Seattle, Washington,

representing Immunex Corporation ("Immunex").

1.  Attached as Exhibit 1 is a true and correct copy of CMO 10.

2.  Attached as Exhibit 2 is a true and correct copy of CMO 13.

3.  Attached as Exhibit 3 is a true and correct copy of CMO 14.

4.  Attached as Exhibit 4 is a true and correct copy of CMO 16.

1

5.   Attached as Exhibit 5 is a true and correct copy of Order re:  Plaintiffs' Motion for Clarification of Case Management Order #16.

6.   On May 24, 2006, I held a meet and confer telephone conference with Plaintiffs' counsel, Robert F. Lopez, regarding Plaintiffs' May 17, 2006, deposition notice to Immunex. Mr. Lopez explained Plaintiffs' position as being that there is no discovery cut-off applicable to Track Two discovery and that the Court has "tacitly" agreed that discovery of Track Two Defendants may continue.

7.   Immunex has not sold or marketed any drugs in four years.

8.   Of the five Immunex "Subject Drugs" in the MDL (Leukine, Novantrone, Thioplex, leucovorin calcium, and methotrexate sodium), Immunex sold two of these products to one company in 2001 (leucovorin calcium and methotrexate sodium), sold Leukine to a second company in mid-2002, licensed Novantrone to a third company in 2002, and ceased all sales of Thioplex, which had come to face generic competition, by late 2002.

9.   There are no current Immunex employees who are knowledgeable regarding the sales and marketing of any of the former Immunex products.

10.  I and my colleagues at Perkins Coie endeavored to cooperate early with Plaintiffs' counsel in the discovery process because of the difficulty of locating documents and tracking down former employees in a company that was no longer engaged in the business of selling and marketing of drugs.

11.  Immunex began its document production nearly four years ago, with a substantial production pursuant to CMO 5; the production included over 90 boxes of documents plus electronic files, including sales data.

2

12.  Immunex's CMO 5 production also included an electronic copy of an Access database containing "call notes" of Immunex sales representatives' "calls" on physicians or other potential customers.

13.  Attached as Exhibit 6 is a true and correct copy of a letter from me to Sean R. Matt dated June 9, 2003, which I sent to Plaintiffs' counsel after they informed Immunex counsel which of the Immunex CMO 5 production they wanted copies of.

14.  Almost a year later, Plaintiffs' counsel informed Immunex counsel that they could not locate the Immunex call notes database, so we produced another copy of it to Plaintiffs' counsel.  Attached as Exhibit 7 is a true and correct copy of a letter from my partner David J. Burman to Steve W. Berman and Mr. Matt, dated April 26, 2004.

15.  In each instance, we produced the entire call notes database to Plaintiffs' counsel, without any limitation on what Plaintiffs' counsel could see.

16.  Immunex completed its document production by the end of the summer of 2005, following multiple supplemental productions, most of which consisted of electronic sales and chargeback data that Plaintiffs had specifically requested in a letter from Mr. Matt to Mr. Burman, dated April 21, 2005.  Attached as Exhibit 8 is a true and correct copy of Mr. Matt's April 21, 2005 letter to Mr. Burman.

17.  As of the December 3, 2005 cut-off, Immunex had a good faith belief that it had no outstanding document issues with Plaintiffs.

18.  The May 17, 2006 deposition notice is the sixth deposition notice that Immunex received from Plaintiffs in this case.

19.  In response to the first five notices, Immunex cooperated with Plaintiffs in locating and producing its former employees, who are located across the country; eleven Immunex depositions have occurred.

20.  Immunex received its first deposition notice from Plaintiffs in June 2003. Plaintiffs then stated they would "hold these notices in abeyance."

21.  In April 2004, Immunex received an "Amended" 30(b)(6) notice.

22.  Immunex's counsel identified three individuals who would testify on behalf of the company and offered to make them available in May 2004.

23.  On May 18, 2004, in a telephone call, Plaintiffs' counsel cancelled the Immunex 30(b)(6) depositions that had been scheduled for May 25-27, 2004.

24.  In May 2005, Immunex received a new and different 30(b)(6) notice from Plaintiffs.

25.  In response, Immunex identified two individuals, both of whom testified in September 2005.

26.  On November 7, 2005, on the eve of the discovery cut-off, Plaintiffs served a notice for the deposition of five Immunex fact witnesses, including one of the 30(b)(6) witnesses.

27.  On behalf of Immunex, Mr. Burman and I agreed with Mr. Matt to make all five witnesses available, and to do so even if the depositions occurred after the December 2005 cut-off, given that these are former employees and that scheduling the depositions around the holidays was difficult, particularly with witnesses located around the country who were former employees.

28.  Plaintiffs proceeded with four of the five depositions on the November 2005 notice.

29.  In February 2006, Plaintiffs served a notice for the deposition of five more Immunex fact witnesses.

4

30.  I objected based on the untimeliness of the notice given the December 2005 cut-off for Track Two discovery, but Mr. Matt argued that these witnesses had testimony that was also relevant to the Montana and Nevada cases, in which the discovery cut-off of March 31, 2006 had not yet passed.

31.  Immunex decided to resolve the issue without involving the Court, and agreed to make all of the witnesses available.

32.  Plaintiffs proceeded with all five of the depositions, including depositions of Immunex's former Vice President of Sales, former National Account (Sales) Manager, former Senior Director of Trade Relations (sales to wholesalers and oncology distributors), and former Director of Sales Operations.

33.  During a March 21, 2006 deposition, Joyce Golden, former Director of Sales Operations, was questioned in great length about the call notes database that Immunex had produced to Plaintiffs for the first time in 2002.

34.  Plaintiffs did not follow up with any additional discovery of Immunex prior to the cut-off in the Montana and Nevada cases, but nearly two months later, on May 17, 2006, Plaintiffs served the deposition notice at issue, a true and correct copy of which is attached as Exhibit 9.

35.  The notice calls for deposition of five former Immunex sales representatives.

36.  None of these individuals currently works for Immunex and none has worked there since July 2002.

Executed this 2nd day of November, 2006.


/s/ Kathleen M. O'Sullivan
Kathleen M. O'Sullivan

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2006, I caused a true and correct copy of the

Declaration of Kathleen M. O'Sullivan in Support of Defendant Immunex Corporation's

Objections to October 23, 2006 Order by Chief Magistrate Judge Bowler regarding

Immunex's Motion for Protective Order Regarding May 17, 2006, Deposition Notice to be

served on all counsel of record by electronic service pursuant to Paragraph 11 of the Case

Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and

notification to all parties.

By ____/s/ Kathleen M. O'Sullivan____
Kathleen M. O'Sullivan

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

)
IN RE PHARMACEUTICAL INDUSTRY    )       MDL NO. 1456
AVERAGE WHOLESALE PRICE          )       CIVIL ACTION NO.
LITIGATION                       )       01-12257-PBS
)

---

### CASE MANAGEMENT ORDER NO. 10

March 25, 2004

Saris, U.S.D.J.

## I.  PHASING OF DISCOVERY

1.  Discovery shall be permissible with respect to all
parties, claims and issues not dismissed under the February 24,
2004 Memorandum and Order.  Discovery, motion practice and trial
shall occur in two phases.

2.  Phase 1 shall consist of a "fast track" in which five
Defendants will litigate all phases of the case through summary
judgment.  The cases against those five companies shall proceed
on the Phase 1 schedule set below.  Phase 2 shall consist of a
"regular track."

3.  The case is referred to Chief Magistrate Judge Bowler
for case management and all non-dispositive matters.

## II. ADDITIONAL DISCOVERY RULES

1.  To the extent they have not done so, all Defendants are
directed to supplement their document productions under the order
of this Court dated October 28, 2002 (relating to production of

documents produced to governmental bodies concerning AWP matters)
by producing all documents relating to any drugs in Appendix A to
the AMCC, and all non-privileged documents relating to any drugs,
produced by any Defendant in response to recent subpoenas issued
by the House Energy and Commerce Committee, or any other
governmental body.  Defendants shall make these documents
available to counsel for the Plaintiffs for inspection and
photocopying within 30 days.

2.   The identification of a drug on the Phase 1 list
includes all NDC's for that drug, including NDC's not in the
AMCC.

3.   Any documents available in an electronic format shall be
so provided in that format, i.e., in an identical, usable
electronic format.  If issues regarding compatibility of computer
systems and software arise, the producing parties shall confer to
resolve the matters.

4.   A responding party to an initial document request shall
complete production of all documents within sixty (60) days of
service of such request.  Any dispute over the document request
(i.e., overbreadth or burden) shall be presented to the
magistrate judge within 30 days after service of the request
after the parties have conferred.  Even if there is a dispute
over a document request, the undisputed documents shall be
produced within 60 days.

5.   Privilege logs shall be provided 14 days after a production, and shall provide reasons for each document withheld from production, as well as for each redaction from a document produced.  There shall be no redaction of documents by any party on any basis other than a bona fide claim of a recognized lawful privilege.  No stamps of "confidential" or the like shall be on the text of a document.  All documents shall be produced in their original size.

6.   Each Defendant shall produce 30(b)(6) witnesses within 45 days of such a request.

7.   A party shall provide a "three week deposition notice" under which such party provides at least 21 days notice for a proposed deposition.  A responding party may suggest an alternative date no later than seven more working days from the original notice.  The parties shall confer in good faith.  Any motion for a protective order shall be filed at least five working days before the scheduled deposition; any response shall be filed within two working days.

8.   No deposition of a witness by a deposing party shall be longer than twenty-one hours unless agreed by the parties or permitted by court order.  The non-deposing party shall have seven hours for cross-examination.  There shall be two hours for re-direct and two hours for re-cross.

### III.   PHASE 1 SCHEDULE

The following five companies from the AMCC are subject to the Phase I fast track: AstraZeneca; the BMS Group (Bristol-Myers, OTN and Apothecon); the GSK Group (GlaxoSmithKline, SmithKline Beecham and Glaxo Wellcome); the Johnson and Johnson Group (J&J, Centocor and Ortho); and the Schering-Plough Group (Schering and Warrick).

The schedule shall be as follows for Phase I:

1. Plaintiffs' Motion for Class Certification on Phase 1 shall be filed by September 3, 2004.

2. Plaintiffs' Disclosure of Expert Reports in Support of Motion for Class Certification filed by September 3, 2004.

3. Discovery of Plaintiffs' Experts on Class Certification completed by October 4, 2004.

4. Defendants' Opposition to class certification to be filed by October 25, 2004, along with any expert reports.

5. Discovery of Defendants' experts completed by November 23, 2004.

6. Plaintiffs' Reply on Class Certification filed by December 1, 2004.

7. Any surreply shall be filed by December 8, 2004.

8. Hearing on Class Certification on December 17, 2004 at 2:00 p.m.

9. Close of Phase 1 Fact Discovery on January 30, 2005.

4

10.    Plaintiffs serve liability expert reports on January 31, 2005.

11.    Defendants serve expert reports on liability on February 28, 2005.

12.    Close of Expert Discovery on March 30, 2005.

13.    Summary Judgment Motions filed no later than April 15, 2005.

14.    Oppositions due May 2, 2005.

15.    Replies due on May 16, 2005.

16.    Any surreply on May 30, 2005.

17.    Hearing on Motions for Summary Judgment on June 8, 2005 at 2:00 p.m.

## IV.   PHASE 2 SCHEDULE

1.    After the Court's ruling on the Phase 1 certification motion, the Court shall set a Phase 2 briefing schedule on class certification.   Plaintiffs shall be prepared to file the motion for class certification within sixty (60) days of the Court's ruling.

2.    Fact discovery on Phase 2 will close on October 3, 2005. Plaintiffs shall file expert reports on November 1, 2005. Defendant shall file expert reports on December 1, 2005.   Expert discovery shall be completed by January 16, 2006.   Any motion for summary judgment shall be filed by January 30, 2006.   Any opposition shall be filed by February 12, 2006.   Any reply by

February 27, 2006, and the sur-reply by March 13, 2006.

## V.   Together Rx

After some reflection, I have placed the Together Rx program on the regular track. As I read the two proposals, creation of a third track seems unwieldy and confusing. In particular, the issues involving product-specific discovery for 170 drugs involved in the Together Rx program seem too complex to resolve on a fast track. Nothing in this order precludes Defendants from moving for summary judgment earlier.

## VI.   MISCELLANEOUS

To protect the integrity of the MDL process, Defendants shall notify the Plaintiffs and the Court in writing of any attempts to settle any of the claims before this Court in another jurisdiction upon commencement of such discussions. Failure to do so may result in injunctive relief, contempt sanctions, and refusal to give any judgment preclusive effect.

## VII.   BRIEFING

No brief shall be longer than 20 pages, unless advance permission of the Court is obtained.

## VIII.   MEDIATION

Within 30 days, the fast track parties shall propose a process and schedule for mediation.

## IX.   CASE MANAGEMENT

The case management order is applicable to all related cases

6

brought by the state and county governmental entities.  When I
resolve the pending motions, I will enter a separate case
management order.

                                    S/PATTI B. SARIS
                                    United States District Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
IN RE PHARMACEUTICAL INDUSTRY  )      MDL NO. 1456
AVERAGE WHOLESALE PRICE        )      CIVIL ACTION NO.
LITIGATION                     )      01-12257-PBS
_____)
```

### CASE MANAGEMENT ORDER NO. 13

March 10, 2005

Saris, U.S.D.J.

After review of the submissions, I order the following
revised schedule for track one defendants:

1.  Regardless of the status of the motion for class
certification:

| | |
|---|---|
| August 31, 2005 | - Close of Fact Discovery |
| October 1, 2005 | - Plaintiffs file their expert reports on liability |
| November 15, 2005 | - Defendants file expert reports on liability |
| January 15, 2006 | - Completion of expert depositions |

2.  If this Court's order on class certification is
unappealed, the parties shall propose a schedule for summary
judgment briefing within 15 days of the Court's order.

3.  If this Court's order on class certification is
appealed:

| | |
|---|---|
| 30 days after the Court of Appeals' decision on appeal from class certification ("Appeals Decision") | - Defendants' motion for summary judgment |
| 60 days after the Appeals Decision | - Plaintiffs' opposition |

75 days after the Appeals       - The Reply
Decision

90 days after the Appeals      - The Surreply
Decision


             **S/PATTI B. SARIS**
             United States District Judge

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
IN RE PHARMACEUTICAL INDUSTRY   )   MDL NO. 1456
AVERAGE WHOLESALE PRICE         )   CIVIL ACTION NO.
LITIGATION                      )   01-12257-PBS
                                )
```

## CASE MANAGEMENT ORDER NO. 14

March 28, 2005

Saris, U.S.D.J.

After review of the submissions, I order the following revised schedule for the Track Two Defendants:

1.  The "Triggering Date" is the date the Track One class certification Order becomes final if it is unappealed, or the date that the Court of Appeals issues a decision.

2.  If the Plaintiffs seek to file expert reports in support of class certification, they shall file the reports within 30 days of the Triggering Date.  Defendants shall file any expert reports 60 days after the Triggering Date.  No depositions shall be allowed.

3.  With respect to briefing, the Court orders the following schedule:

| | | |
|---|---|---|
| 30 days after the Triggering Date | - | Motion for Class Certification for Phase II Defendants (together with expert reports) |
| 60 days after the Triggering Date | - | Opposition (together with expert reports) |
| 90 days after the Triggering Date | - | Reply |
| 120 days after the Triggering Date | - | Surreply |

4.   Regardless of the status of the motion for class certification:

| | | |
|---|---|---|
| December 3, 2005 | - | Close of Fact Discovery |
| January 15, 2006 | - | Plaintiffs file their expert reports on liability |
| January 30, 2006 | - | Defendants file expert reports on liability |
| March 15, 2006 | - | Completion of expert depositions |

5.   If this Court's Order on class certification for Track Two is unappealed, the parties shall propose a schedule for summary judgment briefing within 15 days of the Court's Order.

6.   If this Court's Order on class certification is appealed:

| | | |
|---|---|---|
| 30 days after the Court of Appeals Decision on Track Two certification ("Appeals Decision") | - | Defendants' motion for summary judgment |
| 60 days after the Appeals Decision | - | Plaintiffs' opposition |
| 75 days after the Appeals Decision | - | Reply |
| 90 days after the Appeals Decision | - | Surreply |

/s/ Patti B. Saris
_____
PATTI B. SARIS
United States District Judge

2

# EXHIBIT 4

Case 1:01-cv-12257-PBS     Document 1897     Filed 11/21/2005     Page 1 of 2



Nov 22 2005
6:49PM

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | M.D.L. No. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | |

**CASE MANAGEMENT ORDER #16**

November 21, 2005

Saris, U.S.D.J.

IT IS HEREBY ORDERED as follows:

1.  Any amendment to the Second Amended Consolidated Class Action Complaint to add plaintiffs or proposed class representatives for claims against the Track Two Defendants shall be filed within 30 days of this Court's final order regarding class certification with respect to the Track One Defendants. Any amendment to add proposed class representatives shall allege facts demonstrating the typicality and adequacy of the new proposed class representatives.

2.  Plaintiffs shall produce all documents supporting the claims of any new plaintiffs or proposed class representatives for claims against the Track Two Defendants.

3.  Any depositions of new plaintiffs or proposed class representatives for claims against the Track Two Defendants shall be completed within 30 days of the date that any amendment

seeking to add such plaintiffs or proposed class representatives is held.

4.  The parties' cross-motions to modify the Track Two discovery schedule are otherwise **DENIED**.  However, Plaintiffs may focus discovery on the physician-administered drugs and defer discovery on the claims involving pills purchased from pharmacies pending any appeal of the Court's class certification order.  The parties shall confer and submit a stipulation on discovery relating to any non-physician-administered drugs by December 2, 2005.

S/PATTI B. SARIS
United States District Judge

EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | ) |  |
| --- | --- | --- |
| IN RE PHARMACEUTICAL INDUSTRY | ) | M.D.L. No. 1456 |
| AVERAGE WHOLESALE PRICE | ) | Civil Action No. 01-12257-PBS |
| LITIGATION | ) |  |
|  | ) |  |
| THIS DOCUMENT RELATES TO ALL | ) |  |
| CLASS ACTIONS | ) |  |
|  | ) |  |

**ORDER RE: PLAINTIFFS' MOTION FOR CLARIFICATION
OF CASE MANAGEMENT ORDER #16**

December 1, 2005

Saris, U.S.D.J.

In Case Management Order #16, the Court denied the request to stay all discovery pending the class certification decision for Track One defendants.  It also permitted Plaintiffs to proceed only on the physician-administered drugs.  I don't know how many physician-administered drugs are involved in the Track Two litigation, or whether defendants' allegedly feckless and belated document production involves those particular drugs, rather than the pills.  Accordingly, I have no basis for deciding whether the full continuance by Plaintiffs is necessary.

This is the holiday season.  I see no reason to pressure the litigants, counsel, associates and paralegals to complete all discovery this month.  Nonetheless, it important to keep Track Two from becoming the molasses track.

Therefore, the parties shall confer on a discovery schedule that makes sense and submit a joint and/or alternative schedule by December 9, 2005.  Given the different stages of document production, one possibility is a different wrap-up schedule for each defendant.

S/PATTI B. SARIS
United States District Judge

# EXHIBIT 6



June 9, 2003

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.583.8888
FAX: 206.583.8500
www.perkinscoie.com

**VIA LEGAL MESSENGER**

Sean R. Matt
Hagens Berman LLP
1301 Fifth Avenue
Seattle, WA 98101

Re:   **In re Pharmaceutical Industry AWP Litigation,**
       **MDL No. 1456, Civil Action No. 01-CV-12257-PBS**

Dear Sean:

Enclosed are the four final boxes of documents that you requested. The documents
contain the following bates ranges:

**Box 10:**  IAWP 069677 - 085314 (P009402 - P025037)

**Box 11:**  IAWP 085315 - 089416 (P025038 - P029139)

**Box 12:**  IAWP 089417 - 102821 (P029140 - P043047)

**Box 13:**  IAWP 111507 - 150159 (P051729 - P090502).

Also enclosed are computer disks and CDs containing the electronic invoices and
spreadsheets that were made available for your review electronically, and were
produced to the government in electronic form. This completes Immunex's production
of the documents that were previously produced to the government, pursuant to CMO
No. 5.

Very truly yours,

Kathleen M. O'Sullivan

KMO:eg

cc:   David J. Burman

[06735-0051/SL031600.052]

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · HONG KONG · LOS ANGELES
MENLO PARK · OLYMPIA · PORTLAND · SAN FRANCISCO · SEATTLE · SPOKANE · WASHINGTON, D.C.

Perkins Coie LLP (Perkins Coie LLC in Illinois)





Q2 - 1995

P 075594

HIGHLY CONFIDENTIAL

IAWP135251

































Samples '95 - 99

P 089598

HIGHLY CONFIDENTIAL

IAWP149255



**Samples '00**

**P 089599**

**IAWP149256**

**HIGHLY CONFIDENTIAL**





HIGHLY CONFIDENTIAL

IAWP135250

Case 1:01-cv-12257-PBS   Document 2603   Filed 05/25/2006   Page 25 of 41



HIGHLY CONFIDENTIAL

IAWP135251



HIGHLY CONFIDENTIAL                                    IAWP135252



HIGHLY CONFIDENTIAL

IAWP135253

SONY                    I N D E X

Q1 - 1996

P 075597

HIGHLY CONFIDENTIAL                    IAWP135254



**HIGHLY CONFIDENTIAL**

Case 1:01-cv-12257-PBS    Document 2603    Filed 05/25/2006    Page 30 of 41



HIGHLY CONFIDENTIAL

IAWP135256

Case 1:01-cv-12257-PBS   Document 2603   Filed 05/25/2006   Page 31 of 41



HIGHLY CONFIDENTIAL

IAWP135257



HIGHLY CONFIDENTIAL

IAWP135260



**HIGHLY CONFIDENTIAL**

IAWP135261

SONY                    I N D E X

Q3-1997

Q4-1997

P 075605

HIGHLY CONFIDENTIAL

IAWP135262

SONY        I N D E X

Q1 - 1998

Q2 - 1998

P 075606

HIGHLY CONFIDENTIAL

IAWP135263



HIGHLY CONFIDENTIAL

IAWP135264

SONY                    I N D E X

Q1 - 1999

Q2 - 1999

P  075608

HIGHLY CONFIDENTIAL

IAWP135265

SONY                    I N D E X

Q3- 1999

Q4- 1999

P 075609

HIGHLY CONFIDENTIAL

IAWP135266

SONY                    I N D E X

Q1 - 2000
Q2 - 2000

P 075610

HIGHLY CONFIDENTIAL

IAWP135267

HIGHLY CONFIDENTIAL



HIGHLY CONFIDENTIAL

# EXHIBIT 7



David J. Burman
PHONE: 206.359.8426
FAX: 206.359.9426
EMAIL: DBurman@perkinscoie.com

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

April 26, 2004

**VIA MESSENGER**

Steve W. Berman
Sean Matt
Hagens Berman LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

**Re: Pharmaceutical Industry Average Wholesale Price Litigation, MDL 1456**

Dear Steve and Sean:

Pursuant to our meet-and-confer of Tuesday, April 20, regarding Plaintiffs' Omnibus Requests for Production, and our exchange of e-mails over the past few days, enclosed are:

(1)     historical organizational charts requested in Omnibus RFP No. 2 (bates numbered IAWP150497 – IAWP150526);

(2)     two CDs that we made available for your review as of December 2002 pursuant to CMO 5 (IAWP149257-58); and

(3)     19 floppy disks that we made available for your review as of December 2002 pursuant to CMO 5 (IAWP 135250-57, IAWP 135260-68, and IAWP 149255-56).

We provided you with a copy of these CDs and the floppy disks in a letter dated June 9, 2003, from Katie O'Sullivan to Sean. (A copy of this letter is also enclosed.) One CD contains (a) Excel spreadsheets containing such sales data from DDD as Immunex has reflecting the ultimate customer, (b) Excel spreadsheets containing information about wholesaler sales and chargebacks, and (c) an Excel spreadsheet containing information

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · HONG KONG · LOS ANGELES
MENLO PARK · OLYMPIA · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP (Perkins Coie LLC in Illinois)

Steve W. Berman
Sean Matt
Hagens Berman LLP
April 26, 2004
Page 2

about direct sales (i.e., not through wholesalers).  Thus, this CD contains information
sought in Omnibus RFP Nos. 25-27.

The other CD contains Access spreadsheets from Immunex's call notes database.  Thus,
this CD contains information sought, at least in part, in Omnibus RFP Nos. 47-48.

17 of the floppy disks contain quarterly information about sales of Immunex products to
individual customers (sought in Omnibus RFP Nos. 25-27).  The remaining two floppy
disks contain information about Immunex's professional samples program (sought in
Omnibus RFP no. 37).

To confirm our recent e-mail exchange, the next step on the Immunex side is that we are
working on putting together a list of the additional electronic financial and transactional
information that Immunex still has in a usable electronic format.  We should have that to
you in the next few weeks, along with formal objections to the omnibus discovery
requests and the 30(b)(6) notice.

You also mentioned some specific types of "core" information.  We are determining what
else, if anything, we might have.  As I said in our meet-and-confer and by e-mail, please
let us know if there are other specific categories of documents that you want us to follow
up on.

Very truly yours,

David J. Burman

Enclosures

cc:    Kathleen M. O'Sullivan

# EXHIBIT 8



**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**

hbsslaw.com
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

SEAN R. MATT
(206) 224-9327
sean@hbsslaw.com

April 21, 2005

*Via Facsimile*

Mr. David J. Burman
Perkins & Coie
1201 Third Avenue, Suite 4000
Seattle, WA 98101

> Re:     <u>In re Pharmaceutical Industry AWP Litigation</u>
>         Immunex Transaction Data

Dear David:

Plaintiffs' experts have reviewed the sales-related financial data that Immunex has produced. The data is incomplete in several respects. Identified below are additional data requests, in addition to a number of related follow-up questions. Plaintiffs request that Immunex provide this information, which is encompassed by earlier discovery requests, within 30 days.

**1.     Direct Sales / Transaction Data**

a.  We only have transaction-level sales data for Leukine and Novantrone (IAWP 135250 - IAWP 135257 and IAWP 135260 - IAWP 135267). We need complete transactional data for all Subject Drugs, including Thioplex, Methotrexate and Leucovorin Calcium.

b.  We only have transactional sales data from January, 1995 to June, 2000. To the extent that this does not cover the entire class period, we need complete transactional data for the time span we do not have.

c.  The transactional data we have received include codes for class of trade, but no description of those codes. Please provide such information for all customers for all drugs.

1534.16 0296 LTR.DOC

Mr. David J. Burman
April 21, 2005
Page 2

    d.  The transactional data we have received contain "NDCs" in a non-standard format, *i.e.*, they are not in the NDC-11 format.  If possible, please provide such data for all drugs.

    e.  The transactional data we have received do not appear to contain any records such as returns, discounts, price adjustments or other price offsets.  To the extent that such transactions or price offsets are maintained in the Immunex sales or invoice or transaction data, please provide such data for all drugs.  Also, please provide information sufficient to identify these types of transactions.

    f.  Regarding the summary spreadsheets we received (IAWP 150900: "97HistorybyNDC.xls", "98HistorybyNDC.xls", "99HistorybyNDC.xls", "2000HistorybyNDC.xls", "2001HistorybyNDC.xls" and "2002HistorybyNDC.xls" (through 3rd quarter)):

- To the extent the class period extends beyond this time period (1997Q1 to 2002Q3), please provide additional summaries.

- Please provide a description of how net sales and ASP are calculated. Include in the description what sort of price offsets, rebates, discounts, etc. are factored into net sales and/or ASP.

## 2.    Indirect Sales / Chargeback Data

    a.  We only have transaction-level chargeback data for Leukine and Novantrone (IAWP 149258).  We need complete chargeback data for all Subject Drugs, including Thioplex, Methotrexate and Leucovorin Calcium.

    b.  We only have chargeback data from July, 1995 to October, 2001.  To the extent that this does not cover the entire class period, we need complete chargeback data for the time span we do not have.

    c.  The chargeback data we have do not include customer class of trade information.  Please provide such information for all customers for all drugs.

## 3.    Rebate and Administrative Fee Data

    a.  *To date, we have received no rebate or administrative fee data.*

    b.  For all drugs (by NDC), for the entire class period, please provide all rebate transactions, including amount, date of rebate, information sufficient to

Mr. David J. Burman
April 21, 2005
Page 3

  identify the type of rebate, information sufficient to identify the customer, and class of trade designations (if any).

 c. For all drugs (by NDC), for the entire class period, please provide all administrative fee transactions, including amount, date of payment, information sufficient to identify the type of administrative fee (if applicable), information sufficient to identify the customer, and class of trade designations (if any).

**4.** **Free Samples Data**

 a. We only have free samples data for Leukine and Novantrone (IAWP 149255 and IAWP 149256).  We need complete free samples data for all Subject Drugs, including Thioplex, Methotrexate and Leucovorin Calcium.

 b. We have free samples data from November, 1994 to December, 2000.  To the extent that this does not cover the entire class period, we need complete free samples data for the time span we do not have.

 c. The free samples data we have do not indicate the NDC for each drug. Please provide all of the sample data by NDC.

**5.** **Other Discount Data**

 a. For all drugs (by NDC), for the entire class period, please provide any other discounts not reflected in the above (1 through 4), including but not limited to discounts achieved through bundling one product with another.

**6.** **Documentation for All Data**

 a. Include complete documentation for all items above (1 through 5) such as lists of fields, descriptions of information contained in those fields (e.g. field lengths, formats, etc.), and descriptions of any codes used in any fields (such as class of trade designations).

Mr. David J. Burman
April 21, 2005
Page 4

Thank you for your attention to these data issues, and please call if you have any questions.

Sincerely,

Sean R. Matt

cc:    Steve W. Berman, Esq.

EXHIBIT 9



May 17 2006
5:41PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY      )
AVERAGE WHOLESALE PRICE            )     MDL No. 1456
LITIGATION                         )
                                   )     CIVIL ACTION: 01-CV-12257-PBS
                                   )
THIS DOCUMENT RELATES TO           )     Judge Patti B. Saris
ALL CLASS ACTIONS                  )
                                   )

## NOTICE OF DEPOSITIONS

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30, the undersigned counsel will take the depositions of the following persons on the date and time indicated. The depositions will be recorded by stenographic and/or sound and visual means and will take place at the location indicated.

| Deponent | Location | Date/Time |
|---|---|---|
| Marc Wells | Hagens Berman Sobol Shapiro LLP 1301 5th Avenue, Suite 2900 Seattle, WA 98101 | June 7, 2006 at 9:30 a.m. |
| R.J. Myer | Hagens Berman Sobol Shapiro LLP 1301 5th Avenue, Suite 2900 Seattle, WA 98101 | June 8, 2006 at 9:30 a.m. |
| Raul Serrano | Hagens Berman Sobol Shapiro LLP 1301 5th Avenue, Suite 2900 Seattle, WA 98101 | June 9, 2006 at 9:30 a.m. |
| Lisa Johnson | Hagens Berman Sobol Shapiro LLP 1301 5th Avenue, Suite 2900 Seattle, WA 98101 | June 12, 2006 at 9:30 a.m. |
| Jack Joseph | Hagens Berman Sobol Shapiro LLP 1301 5th Avenue, Suite 2900 Seattle, WA 98101 | June 13, 2006 at 9:30 a.m. |

- 1 -

Pursuant to Fed. R. Civ. P. 30(b)(5), the witness is commanded to produce and permit for inspection and copying the documents specified in the attached Schedule A. *See also Carter v. United States*, 164 F.R.D. 131 (D. Mass. 1995).

You are invited to attend and participate.

DATED: May 17, 2006.

By___ /s/ Sean R. Matt_____
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL 60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

- 2 -

001534-16 109889 V1

Kenneth A. Wexler
Jennifer Fountain Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Shanin Specter
Donald E. Haviland, Jr.
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
Facsimile:  (215) 772-1359
Telephone:  (215) 772-1000

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  109889 V1

## SCHEDULE A

A.   **DEFINITIONS**

1.   "Document(s)" is used in the broadest possible sense and means without limitation, any written, printed, typed, photostated, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof.  This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings.  Without limiting the generality of the foregoing, "document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice-mail," questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by you or anyone else.

2.   "All documents" means every document and every non-identical copy known to you and every such document or writing which you can locate or discover by reasonably diligent efforts, including, but not limited to, documents now in the possession, custody or control of

- 4 -

Defendant, its merged or acquired predecessors, its former and present directors, officers, counsel, agents, employees and/or persons acting on its behalf.

      3.     "You" or "Your" means the deponent to whom this notice is directed (*e.g.,* Marc Wells, *et al.*).

      4.     "Concerning" means relating to, referring to, in connection with, pertaining to, describing, discussing, analyzing, reflecting, summarizing, evidencing, embodying or constituting.

      5.     "AWP" means the Average Wholesale Price reported to and/or reported by an industry trade Publication.

      6.     "Spread" or "Margin" refers to the difference between (i) the AWP or any price upon which reimbursement for a drug is based (including but not limited to reimbursements made by Medicare, Medicaid, a health insurer, a health maintenance organization, and a PBM), and (ii) the actual or net price paid for a drug.

      7.     "Publication" means a publication identified in Health Care Financing Administration Program Memorandum AB-99-63 and includes the *First DataBank*, *Red Book*, *Blue Book*, and *Medispan*.

      8.     "Provider" means any physician or entity that provides health care to any patient or any buying group acting on behalf of providers.

**B.**    **RULES OF CONSTRUCTION**

      1.     All/Each - The terms "all" and "each" shall be construed as meaning either all and each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

      2.     And/Or - The connectives "and" and "or" shall be construed either disjunctively and conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

      3.     The use of the singular form of any word shall include the plural and vice versa.

(b)     The name of the recipient of the document;

(c)     The names of the persons to whom copies were sent;

(d)     The job title of every individual named in (a), (b), and (c) above;

(e)     The date the document was created, sent, and received;

(f)     The location of the document;

(g)     The custodian of the document;

(h)     A brief description of the nature and subject matter of the document; and

(i)     A statement of the privilege asserted and each and every fact or basis upon which a privilege is claimed or on which the document is otherwise withheld.

7.      Notwithstanding the assertion of any objection to production, if a document contains non-objectionable or non-privileged matter, please produce that document, redacting that portion for which the objection is asserted, provided that the identification requested in paragraphs (h) and (i) above are furnished.

**D.     RELEVANT TIME PERIOD**

Unless otherwise stated, these requests call for the production of all documents identified in the requests that were generated and/or maintained during the period January 1, 1991 to the date of production (the "Relevant Time Period"), or refer or relate to the Relevant Time Period.

**E.     DOCUMENTS TO BE PRODUCED**

1.      All documents, such as reports or notes, relating to, or memorializing, any sales calls you made with respect to any Immunex Corporation drug(s) or biologic agent(s), whether the documents were created by you for your manager or other supervisory personnel, or created by you for your own professional or personal use.

2.      All documents that compare, or refer to the comparison of, the AWP for any drug(s) or biologic agent(s) on the one hand with the provider net cost or provider actual cost for

- 7 -

any drug(s) or biologic agent(s) on the other hand, whether the referenced drug(s) or biologic agent(s) is/are manufactured or sold by Immunex Corporation or any other company.

3. All documents that constitute, contain, or refer to any economic analysis or profitability analysis concerning any drug(s) or biologic agent(s), which documents explicitly or implicitly refer to, or show, spread or margin (as those terms are defined herein) with regard to any drug(s) or biologic agent(s), whether the referenced drug(s) or biologic agent(s) were manufactured or sold by Immunex Corporation or any other company.

4. All documents, copies of which you gave to any provider, that show or set forth the AWP or AWPs for any drug(s) or biologic agent(s), whether the referenced drug(s) or biologic agent(s) was/were manufactured by Immunex Corporation or any other company, and

5. All documents reflecting a discussion between you and any provider regarding or referencing the AWP or AWPs for any drug(s) or biologic agent(s), whether the referenced drug(s) or biologic agent(s) was/were manufactured by Immunex Corporation or any other company.

6. All training materials, and all materials given to you at any sales or marketing meetings, that refer to the profitability to any provider relative to any drug(s) or biologic(s), or the spread or margin (as those terms are defined herein) for any drug(s) or biologic(s), whether the referenced drug(s) or biologic(s) was/were manufactured by Immunex Corporation or any other company.

### CERTIFICATE OF SERVICE

I hereby certify that I, Robert F. Lopez, an attorney, caused a true and correct copy of the foregoing, **NOTICE OF DEPOSITIONS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on May 17, 2006, a copy to LexisNexis File & Serve for Posting and notification to all parties

By_____ /s/ Robert F. Lopez_____
    Robert F. Lopez
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    (206) 623-7292

001534-16  109889 V1