UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION:<br>01-cv-12257-PBS<br><br>Judge Patti B. Saris |

**PLAINTIFFS' RESPONSE TO THE TRACK 1 DEFENDANTS' OBJECTIONS TO PLAINTIFFS' FACT WITNESSES' TRIAL DECLARATIONS**

Class Plaintiffs respond to the Track 1 Defendants' ("Defendants") Objections to Plaintiffs' Fact Witnesses' Trial Declarations as follows:

**A.   Individual Consumer Declarations[1]**

Defendants claim that the individual consumer declarations are objectionable because the consumers' testimony that they were unaware of Defendants' conduct alleged in this case is not based on personal knowledge.  But Defendants' argument is circular:  those consumers lack personal knowledge because Defendants' fraud concealed their conduct from them.

In their proposed Common Proposed Findings of Fact and Conclusions of Law [Dkt. No. 3290], Defendants ask this Court to find as a matter of law that "in determining whether a challenged act or statement is 'deceptive,' the court must consider whether the statement has the capacity to cause plaintiffs, 'acting reasonably under the circumstances, to act differently from the way they otherwise would have acted.'" *Id.*, ¶ 4 (citation omitted).  Defendants also ask the Court to conclude that "there can be no claim of

---

[1] Track 1 Defendants' arguments regarding the adequacy of their proposed stipulation were addressed in Class Plaintiffs' Response to Motion to Exclude Consumers From Testifying [Dkt. No. 3316-1].  Plaintiffs incorporate their arguments in that brief here.

deceptiveness when the plaintiff was not, in fact, deceived." *Id*., ¶ 6; *see also* ¶ 19 (asking Court to conclude that "[k]nowledge of the truth eliminates any possible causal connection between the alleged deception and the alleged injury under Chapter 93A."). Even though they ask this Court to make those findings, Defendants seek to preclude consumers from testifying that they lacked personal knowledge of Defendants' conduct. While it is understandable that Defendants would prefer that the results of their fraud not have a face in the courtroom, if they intend to prove their defense as set forth above, Defendants cannot exclude the testimony of these consumers on that very issue.

Defendants also seek to exclude under the best evidence rule consumers' testimony regarding the coinsurance amounts they paid. Actually, Defendants refer to "payment amounts," but the consumer trial affidavits only aver, as a general matter, to the percentage amount that they were required to pay under their plans. In any event, the best evidence rule does not apply here because, contrary to Defendants' statement that underlying documents were not produced in this litigation, for the UFCW consumers, their plan documents were produced by UFCW over two years ago. Ms. Hopkins' plan documents were likewise produced to Defendants during the course of this litigation – and produced *again* to Defendants pursuant to their request this week. ***Indeed, many of the documents Defendants claim were not produced were marked as exhibits to Ms. Hopkins' deposition.*** Moreover, the best evidence rule does not apply because the content of those consumers' plans are not at issue.

Defendants next claim that various sections of the consumer trial affidavits are irrelevant, lack foundation, and constitute improper lay opinion. However, in all of the instances identified by Defendants, they simply seek to exclude a consumer from

2

testifying that she believed Defendants' conduct to be unfair.  *See, e.g.,* Barreca Trial Aff., ¶ 15 ("I do not believe it is right for the defendants to get additional money and profits from people who are relying on their pharmaceuticals for their health."), ¶ 21 ("[i]t is my personal opinion that whatever system is used as a basis for calculating my co-payment should be fair and accurate and not subject to manipulation."); Choice Trial Aff., ¶ 19 ("I understand that my payments were based on the higher published prices.  If these facts are true, I feel it is unfair for drug companies to publish prices that have no real meaning, the effect of which is to cause me and others like me to pay more for those drugs."); Garcia Trial Aff., ¶ 14 ("it is my personal opinion that whatever system is used as a basis for calculating my co-payment should be fair and accurate and not subject to manipulation.").  Defendants cannot seriously contend that the opinion of the people they injured regarding the fairness of their conduct is irrelevant.  Of course, if they wish to examine these consumers at trial regarding the basis for their opinions, they are entitled to do so.

Finally, Defendants seek to strike as "irrelevant" parts of Ms. Hopkins' trial affidavit that relate to her medical condition.  However, because Defendants are asking this Court to conclude that Plaintiffs must establish that these class representatives would have acted differently had they known of Defendants' fraud (apparently suggesting that Ms. Hopkins should have simply refused to take her life-saving medication and die), it is appropriate for Ms. Hopkins to testify why she was taking Defendants' drugs in the first instance.

The Court should reject Defendants' objections aimed at the individual consumer trial declarations.

**B.     Payor Declarations**

   1.     **BCBS Mass**

Defendants object to portions of the trial affidavits submitted by Maureen Coneys, Deborah DeVaux and Michael Mulrey, all employees of BCBSMA.[2]  Most of Defendants' objections relate to statements concerning fee schedules, contracts or drug codes, claiming that they violate the best evidence rule.  However, BCBSMA has produced to Defendants all of the relevant data, contracts and fee schedules at issue, and many of them are designated as trial exhibits in the case.  These writings, such as contracts, are voluminous, and, in other instances such as with drug codes and fee schedules, they exist as large data files with which the witness is either intimately familiar or actually creates and maintains as part of their job responsibilities.  Plaintiffs should not be forced to burden the Court with endless data printouts or data files as part of its testimony when the contents of these writing are not the primary issue in the case.  If there is some question about the accuracy of the witness's statement concerning these data or documents, Defendants will have every opportunity to cross examine the witnesses concerning these issues.

   As they do with almost every one of Plaintiffs' trial affidavits, Defendants also object to Ms. DeVaux's and Mr. Mulrey's statements concerning their lack of knowledge of

---

   [2] Defendants have also included with their brief a copy of the Trial Affidavit of Kenneth Arruda, also of BCBSMA, but provide no further guidance as to the statements objected to or the basis of the objections.  The Arruda Affidavit attached as Exhibit 3 to Defendants' Motion contains no annotations.

4

Defendants' AWP scheme on the basis of a lack of personal knowledge and lack of foundation. There is no need to repeat Plaintiffs position with respect to these objections.

Plaintiffs address additional objections with respect to specific affidavits below:

### a. Maureen Coneys

Defendants object that Ms. Coneys' testimony concerning the contracting for physician administered drugs by the staff model HMO and her testimony concerning the type of information that would have been shared between the staff model HMO and BCBSMA lacks foundation and that she lacks personal knowledge. As Ms. Coneys indicates in her affidavit, she was the Executive Director for Medical East Community Health Plan, one half of the staff-model HMO which consisted of Medical East and a Medical West. Her statements are based on her direct experience in that position. Defendants' objections should be overruled.

### b. Deborah DeVaux

Defendants object to Ms. DeVaux's assertion concerning the establishment of fee schedules related to BCBSMA's reimbursement of physician administered drugs, claiming it is hearsay. Although Ms. DeVaux acknowledges that she does not establish the fee schedule herself, she is testifying about her personal experience when she indicates the fee schedules are developed by BCBSMA's Actuarial area. There is nothing in her testimony that indicates she is relaying information from someone else. Even more to the point, the Federal Rules of Evidence exclude hearsay because it may not be tested through cross examination. In this case, Mr. Mulrey, from the Actuarial department at BCBSMA, will also be called as a witness, and Defendants will have every opportunity to cross examine him concerning these fee schedules.

     **c.**     **Michael T. Mulrey**

Defendants object that Mr. Mulrey's testimony concerning BCBSMA's payment for the drugs at issue in this case is hearsay. This is presumably based on the fact that Mr. Mulrey mentions that another employee at BCBSMA, Ms. Demaina, was responsible for producing the claims data from BCBSMA. However, Mr. Mulrey's testimony concerning what that data reveals about BCBSMA's purchases is based not only on discussions with Ms. Demaina, but upon his own examination of the data at issue. Mr. Mulrey will be able to testify about his first hand experience with BCBSMA's claims data. The Court should reject Defendants' objection.

     **2.**     **Pipefitters**

Defendants seek to exclude portions of the trial declaration of Charles Hannaford, the Fund Administrator of Pipefitters Local 537 Trust Funds ("Piperfitters") on various bases. Defendants claim that inclusion of the list of drugs purchased by Pipefitters violates Fed.R. Evid. 1006. Defendants also claim that Mr. Hannaford's testimony concerning what he was told about the meaning of AWP by staff at Pipefitters violates the rule against hearsay, and that he lacks personal knowledge about what they knew or understood. Defendants make a number of other objections regarding lack of personal knowledge as to Mr. Hannaford's trial affidavit. As with the other declarations, Defendants also object to Mr. Hannaford's testimony concerning Defendants' AWP scheme on the basis that his testimony lacks foundation or assumes facts not in evidence. Each challenge fails.

Defendants' claim that the Hannaford declaration violates Fed. R. Evid. 1006 should be rejected on the basis that Pipefitters has produced the data evidencing

Pipefitter's purchases.  Defendants assume incorrectly that there was some interim summary of that data from which the list in Mr. Hannaford's affidavit was created, and that Plaintiffs failed to produce the summary.  However, Pipefitter's data is not voluminous.  Defendants have the data from which the list in Mr. Hannaford's affidavit was created.

Defendants' objections related to Hannaford's testimony of what he was told by staff about AWP when he began as the Fund Administrator and his testimony about when he and his staff first had some indication that AWP was not the actual average of wholesale prices should be rejected.  Defendants themselves have made knowledge by the named Plaintiffs about AWP an issue in this case.  Mr. Hannaford's testimony in this regard goes directly to his state of mind and his understanding of the term AWP and as such is an exception to the hearsay rule.  Similarly, Mr. Hannaford's understanding of what others at Pipefitters understood or knew about AWP go directly to his understanding and his state of mind regarding the same subject.

Defendants' claim that Mr. Hannaford lacks personal knowledge of some of the statements made in his affidavit.  However, his personal knowledge related to those statements, for example his assertion that in his experience most of the other Taft-Hartley plans which he has encountered through the Massachusetts Coalition of Taft-Hartley Funds also contract with BCBSMA, can and will be explored when Mr. Hannaford takes the stand.

Finally, Defendants object to Mr. Hannaford's testimony concerning his lack of knowledge about the fact of Defendants' AWP scheme or the details of that scheme, claiming his testimony lacks foundation or assumes facts not in evidence.  These

objections are nonsensical. The very point of Mr. Hannaford's testimony in this regard is that he lacked any knowledge of Defendants scheme or any understanding of the details of that scheme. Whether the scheme existed and whether Plaintiffs will prove its existence is a matter that will be determined by the Court.

### 3. Gina Alongi

Defendants challenge the Affidavit of Gina Alongi, the Administrator of International Union of Operating Engineers Local 4's Health and Welfare Fund, on several grounds, primarily claiming that her discussions of Local 4's drug payments violate the hearsay and best evidence rules. Defendants also claim that the paragraphs in which Ms. Alongi discusses what Local 4 did or did not know about the Defendants' conduct lack foundation, are not based on personal knowledge, or call for legal conclusions.

Defendants' foundation, best evidence and hearsay objections are resolved by the fact that Local 4 has produced the contracts referenced by Ms. Alongi, namely contracts with Caremark, Express Scripts and BCBSMA.[3]

The remainder of Defendants' objections relate to Ms. Alongi's discussion of the fraud being alleged. Defendants wrongly claim Ms. Alongi states a legal conclusion when, in Paragraphs 18 and 20, she states that the Defendants' practices were unfair or misleading. Such statements are not legal conclusions and are admissible from a plaintiff class member who is making claims under a consumer protection statute.[4] The statement

---

[3] Plaintiffs believe Defendants' hearsay and foundation objections are baseless even if the contracts were not produced. The documents Ms. Alongi references are business records and within hearsay exceptions. Similarly, the best evidence rule, Fed. R. Evid. 1002-1004, does not apply unless the contents of an original document are at issue. *See* Fed. R. Evid. 1004(4). In this case, Local 4's contracts are not in issue.

[4] Such statements are also well within the boundaries of lay opinion under Fed. R. Evid. 701.

8

that Local 4 never purchased drugs on its own and had no knowledge of actual transaction prices is a fact, not a conclusion.

Similarly, as they did with consumer witnesses, Defendants object to Ms. Alongi's testimony that she was unaware of the Defendants' spread marketing and manipulation. *Id.*, ¶¶ 19, 22 and 25. The whole point of Ms. Alongi's testimony is that Local 4 was unaware of the Defendants' activities. To object to such testimony on the basis that it lacks personal knowledge is non-sensical and only underlines Ms. Alongi's point: She didn't know what Defendants were doing with the AWP spread.

The remaining objections relating to ambiguity and Ms. Alongi's authority to speak for Local 4 can easily be dispensed when Ms. Alongi takes the witness stand.

### 4. Sheet Metal Workers National Health Fund ("Sheet Metals") (Randle and Faulkner)

Defendants similarly seek to exclude the testimony of two Sheet Metals' witnesses on the basis that they lack personal knowledge of Defendants' fraud. However, the fact that the Sheet Metals witnesses did not know of Defendants' actions is relevant because Defendants have asked this Court to conclude that all TPP members of Class 2 and Class 3 are sophisticated payors that either knew or should have known of Defendants' AWP inflation. Notably, with regard to Sheet Metals specifically, in their Common Proposed Findings of Fact and Conclusions of Law, Defendants ask this Court to conclude that Southern Benefits, Sheet Metals' third party administrator, ***knew or should have known that***: (1) "AWP did not bear a predictable relationship to provider acquisition costs" (¶ 36); (2) "both self-administered and physician-administered drugs were available at discounts – often significant discounts – from AWP" (¶ 37); and (3) "that there was a significant discrepancy between the rates at which it reimbursed for

pharmaceuticals in the private market versus rates at which it reimbursed for pharmaceuticals under Medicare Part B" (¶ 38). It is therefore entirely relevant whether Sheet Metals' representatives knew about Defendants' fraud.[5]

Defendants thereafter claim that Sheet Metals cannot testify whether Southern Benefit told the Fund about Defendants' AWP inflation because Mr. Randle, the Fund's trustee, lacks personal knowledge of that statement. However, since Southern Benefit's job is to advise the Fund's trustees, and Mr. Randle has been a trustee for over twenty years (far longer than the class period), Defendants' claim is non-sensical.

### 5. Daniel Ryan (United Food Commercial Workers Unions and Employers Midwest Health Fund) ("UFCW")

Defendants object to the Trial Affidavit of Dan Ryan of UFCW on the grounds that Mr. Ryan lacks personal knowledge regarding whether he knew of various aspects of Defendants' conduct alleged in this litigation. *See* Ryan Trial Aff., ¶¶ 9-29. However, for the reasons set forth above, whether Mr. Ryan knew about Defendants' conduct is relevant to whether he and UFCW were deceived. In short, the reason he lacks personal knowledge of Defendants' conduct is because it was concealed from him and other payors like UFCW.[6]

---

[5] Defendants also claim that Sheet Metal's third-party administrator cannot testify regarding what Sheet Metal's trustees knew. However, as Sharon Faulkner's Trial Affidavit makes clear, Southern Benefit does the day-to-day administration of Sheet Metals' Supplemental Medicare Wraparound Plus ("SWW+") program, and, in connection with doing so, works with the Fund's trustees. *See* Faulkner Trial Aff., ¶¶ 2-4. Therefore, Ms. Faulkner has a basis for this knowledge.

[6] Defendants likewise claim that Mr. Ryan lacks personal knowledge regarding why UFCW brought this lawsuit (¶ 5). As his Trial Affidavit indicates (¶ 3), as Fund Administrator Mr. Ryan reports to the Board of Trustees (who ultimately made the decision to file this lawsuit); therefore, he can testify regarding that decision. Defendants also claim that Mr. Ryan cannot testify regarding (1) his conversations with BCBS of Illinois during this litigation regarding the basis for its allowable charges (¶ 8), or (2) his lack of conversations with UFCW's actuarial and employee benefit consultant firm, The Segal Company, regarding Defendants' conduct in this case (¶ 32). However, because the conversation with BCBS Illinois is not offered for the truth of the matter

10

C.  **Schering-Plough Relator Declarations**

Defendants also seek to silence former employees of Schering-Plough Corporation ("Schering") and Warrick Pharmaceuticals Corporation ("Warrick") (collectively referred to as "SPW"), Charles A. Alcorn, Beatrice E. Manning, and G. Raymond Pironti, Jr., from testifying regarding SPW's planning, setting, using and marketing of AWP-spreads for SPW drugs in general, as well as the subject drugs Intron-A and Proventil/Warrick albuterol sulfate solution.[7]

Defendants falsely assert the former SPW employees' proffered testimony concerns drugs, conduct, and entities not at issue in this case. There is no dispute that Intron-A, Proventil albuterol sulfate solution and Warrick-labeled generic albuterol solution are subject drugs in this litigation. Also, there can be no dispute that how SPW uses and markets AWP-based reimbursement spreads to sell its products is relevant to the issues at trial. Furthermore, the manner in which Schering uses its subsidiaries as mere instrumentalities to implement its deceptive marketing schemes is likewise relevant.

Defendants next argue that the relators' testimony is irrelevant and inadmissible because the settlement documents involving the *qui tam* action (in which Manning, Alcorn and Pironti were relators) do not refer to "AWP, Medicare, any subject drug, or any Massachusetts TTP or consumer." In making such a claim, Defendants assume that

---

asserted (but instead to show that Mr. Ryan did not know whether UFCW paid based on AWP until after UFCW filed this litigation), and because there is no specific Segal conversation Mr. Ryan is testifying about, the hearsay rule does not apply.

   [7] Defendant SPW has filed a separate motion in limine with respect the testimony of these relators, and Plaintiffs have filed an opposition thereto, which Plaintiffs incorporate herein by this reference.  *See* Plaintiffs' Opposition to Schering-Plough Corporation's and Warrick Pharmaceuticals Corporation's Motion in Limine to Exclude the Testimony of Charles M. Alcorn, Beatrice E. Manning, and G. Raymond Pironti, Jr.

the relator witnesses are somehow being offered to testify regarding their involvement in the *qui tam* settlement. However, their involvement in that settlement is merely tangential to their proposed testimony, which is offered to show how SPW accomplished the facts alleged in this case through sham subsidiary corporations.

Defendants also claim that the relators' proposed testimony is not admissible to show "propensity." However, the testimony of the witnesses regarding the underlying facts of Schering's acts is not being offered for that purpose, but instead to show (1) Schering's knowledge, motivation and intentions in maintaining the ongoing false AWP-reimbursement-spread scheme so as to provide value in promoting sales of its products, (2) Schering's control and use of its sham subsidiaries to conduct its deceptive practices; and (3) a common course of conduct and scheme to deceive through the use of inflated AWP pricing. This is entirely consistent with the intent of Rule 404(b).[8] *See also See U.S. v. Cifarelli*, 401 F.2d 512 (2d Cir.), *cert. denied*, 393 U.S. 987 (1968) (evidence of other similar transactions, including criminal offenses, is admissible, when its purpose is to show a common plan or scheme and an intent to defraud).

      Defendants also claim the relators' proposed testimony is irrelevant because "[n]one of Plaintiffs' document requests related to ITG." While Plaintiffs did not identify ITG specifically, SWP *produced* ITG documents in response to Plaintiffs' requests for documents related to the allegations in Plaintiffs' complaints regarding manipulation of AWPs and marketing of the spreads to sell Schering drugs through hidden rebates, discounts and free goods. Those documents are clearly relevant.

---

[8] Defendants likewise claim that the relators' testimony is not relevant because it does not have the acronym "AWP" repeated with sufficient frequency, but federal courts do not recognize such a limited definition of relevance.

12

Finally, SPW incorrectly states that, because the witnesses are former "employees" of ITG, they therefore lack personal knowledge regarding Schering or Warrick. However, because these witnesses were in positions to know SPW policies and procedures on AWP pricing and marketing, Defendants' claim lacks merit. *See* Manning Trial Decl., ¶¶ 4-6, 12 and 13; Pironti Trial Decl., ¶¶ 4,10-12, and 14; and Alcorn Trial Decl., ¶¶3-7, 16, 17, 18-20. If SPW believes that it can demonstrate that the witnesses do indeed lack personal knowledge, SPW do that during cross examination. Simply making the unsupported assertion in a brief to the Court does not suffice.

**D.   Conclusion**

For the foregoing reasons, the Court should reject Defendants' objections.

DATED:  November 5, 2006                             By: /s/ Steve W. Berman

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003

*LIAISON COUNSEL*

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone:  (312) 762-9235
Facsimile:  (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Marc H. Edelson
Allan Hoffman
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone:  (215) 230-8043
Facsimile:  (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

***CO-LEAD COUNSEL FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on November 5, 2006, I caused copies of ***Plaintiffs' Response to The Track 1 Defendants' Objections to Plaintiffs' Fact Witnesses' Trial Declarations*** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/  Steve W. Berman
Steve W. Berman