UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' OPPOSITION TO SCHERING-PLOUGH CORPORATION'S AND WARRICK PHARMACEUTICALS CORPORATION'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF CHARLES M. ALCORN, BEATRICE E. MANNING, AND G. RAYMOND PIRONTI, JR.**

Defendants Schering-Plough Corporation's ("Schering") and Warrick Pharmaceuticals Corporation's ("Warrick") (Schering and Warrick collectively referred to as "SPW"), Motion in Limine to Exclude the Testimony of Charles A. Alcorn ("Alcorn"), Beatrice E. Manning ("Manning"), and G. Raymond Pironti, Jr. ("Pironti") [Dkt.. No. 3300] seeks to deny this Court the opportunity to hear competent, relevant and truthful testimony from former Schering employees who acquired personal knowledge of the inner-workings of SPW regarding how it planned, established and marketed AWP-spreads for SPW drugs in general, as well as the subject drugs, Intron-A and Proventil/Warrick albuterol sulfate solution, specifically. Indeed, while SPW's motion in limine attempts to lead this Court to believe that the testimony of SPW's former employees is improper testimony regarding SPW's settlement of a *qui tam* action in 2004, their proposed trial declarations are not so limited. The testimony of these witnesses

strikes to the very heart of the case against SPW.  For these reasons, SPW's motion should be denied.

### A. The Proposed Testimony of the Former Employees Relate to Matters at Issue in this Case

In sum, the trial affidavits of Pironti, Manning and Alcorn state the following:

1. Schering gave undocumented quantities of Warrick albuterol solution as free goods in transactions as "kick-backs" for "added value" when promoting other Schering drugs. Declaration of G. Raymond Pironti, Jr. ("Pironti Trial Decl."), ¶ 8.  The value of such free goods was directly connected to the value of AWP-based reimbursement from TPPs, Medicare and Medicare beneficiaries' co-payments.  Pironti Trial Decl., ¶ 9; Declaration of Charles M. Alcorn ("Alcorn Trial Decl."), ¶¶ 13 and 14.

2. Schering gave steeply discounted or "nominally priced" Proventil and Warrick albuterol sulfate solution as a contract tool to promote other SP drugs.  The value of such a contract tool was directly connected to the value of AWP-based reimbursement from TPPs, Medicare and Medicare beneficiaries' co-payments over the highly discounted acquisition costs. Pironti Trial Decl., ¶ 9; Alcorn Trial Decl., ¶¶ 13 and 14.

3. Through its subsidiaries such as ITG and Warrick, Schering planned and implemented inflated AWP pricing schemes to increase the market share and utilization of its drugs.  Pironti Trial Decl., ¶ 11. Alcorn Trial Decl., ¶¶ 13 and 14.

4. Schering used deceptive contracting practices, such as hidden "bundling" of discounted Warrick generic albuterol solution in the marketing of other Schering drugs.  Pironti Trial Decl., ¶ 12.

5.      Schering's senior management implemented a well-known strategy to manipulate AWP and sales pricing for both branded and generic SPW products. Pironti Trial Decl., ¶ 14; Alcorn Trial Decl., ¶ 15.

6.      Schering marketed AWP-based reimbursement spreads for its drugs, including Proventil and Warrick albuterol sulfate solution. Alcorn Trial Decl., ¶¶ 15-17; Pironti Trial Decl., ¶ 14; Declaration of Beatrice E. Manning, Ph.D ("Manning Trial Decl."), ¶ 13.

Despite this relevant testimony, SPW claims that the proposed testimony of the former SP employees concerns drugs, conduct and entities not at issue in this case. SPW is wrong on all three counts. First, there is no dispute that the SPW drugs at issue in this case are Intron-A, Proventil albuterol sulfate solution and Warrick-labeled generic albuterol solution. Also, there can be no dispute that how SPW uses and markets AWP-based reimbursement spreads to sell its products is relevant to the issues at trial. Finally, because one of the issues in Plaintiffs' case against SPW is its use of subsidiaries as instrumentalities to implement its deceptive marketing schemes, testimony related to Integrated Therapeutics Group ("ITG"), Schering's subsidiary, is relevant to this case.[1]

**B.      The Relevance of the Former Employee Declarations Should Not Be Judged by the Language of the *Qui Tam* Settlement Agreement**

Rather than addressing whether the proposed former employee testimony will be relevant at trial, SPW steers the Court to an entirely unrelated analysis of whether the proposed declarations relate to the terms of the *qui tam* settlement agreement and whether the terms of the settlement agreement are related to this case. But even though these former employees were

---

[1] Likewise, SPW argues that the proposed testimony should be stricken because it does not repeat the word "AWP" with sufficient frequency, as if such a "test" exists. SPW's argument is nonsense: the determination of relevance is far more nuanced than SPW's proposed keyword search "test." Rather, the question is whether the totality of the testimony is relevant to the issues to be tried, and it certainly is.

indeed relators in the *qui tam* settlement, as demonstrated above it does not follow that the relevance of their proposed testimony is limited to that settlement.  Thus, SPW's claim that the settlement documents in the *qui tam* action do not refer to "AWP, Medicare, any subject drug, or any Massachusetts TTP or consumer" is but a diversionary tactic to distract the Court from reviewing highly relevant and – for SPW – damaging testimony.

SPW also argues that evidence of Schering's connection with the 2005 Kick-back guilty plea is inadmissible under Fed. R. Evid. 404(b).  However, the proposed former employee testimony regarding the underlying facts associated with Schering's anti-kickback violation is not being offered to show a "propensity;" rather, these same acts demonstrate (1) Schering's knowledge, motivation and intentions in maintaining the ongoing false AWP-reimbursement-spread scheme so as to provide value in promoting sales of its products; (2) Schering's control and use of its sham subsidiaries to conduct its deceptive practices; and (3) a common course of conduct and scheme to deceive through the use of inflated AWP pricing.  Rule 404(b) specifically provides that other wrongful acts may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  In this regard, it is clear that "bad acts" may be admissible to show that SPW was involved in an ongoing scheme (in this case AWP spread marketing).  *See U.S. v. Cifarelli*, 401 F.2d 512 (2d Cir.), *cert. denied*, 393 U.S. 987 (1968) (evidence of other similar transactions, including criminal offenses, is admissible, when its purpose is to show a common plan or scheme and an intent to defraud).

## C.   SPW's Arguments Regarding ITG Are Non-Starters

SPW also claims that the former employee testimony should be stricken because "[n]one of Plaintiffs' document requests related to ITG".  This point is simply irrelevant:  regardless of the nature of Plaintiffs' requests, SPW ***produced*** ITG documents, and those documents just happen to be highly relevant to this trial.

Finally, SPW falsely asserts that because these proposed witnesses are former "employees" of ITG, a subsidiary of Schering, they therefore lack personal knowledge as to Schering's or Warrick's practices relating to AWP. However, as set forth in the proposed declarations, these witnesses have personal knowledge regarding SPW policies and procedures on AWP pricing and marketing. *See* Manning Trial Decl., ¶¶ 4-6, 12 and 13; Pironti Trial Decl., ¶¶ 4,10-12, and 14; and Alcorn Trial Decl., ¶¶ 3-7, 16, 17, 18-20. If Defendants wish to attack this knowledge as inadequate to make the assertions in the proposed testimony, they may do so at trial via cross-examination. Simply making the unsupported statement that these witnesses could not possibly have such knowledge does not suffice.

**D.     SPW's Legal Department's Role in Deceptive Acts is Highly Relevant**

Former Schering executive employee, Charles Alcorn, provides the Court with a detailed, first-hand description of SPW's legal department's shocking behavior and role in both implementing and concealing SPW's deceptive and illegal marketing schemes. SPW attempts to divert this Court's focus from SPW's legal department's complicity in wrongful acts by calling Alcorn's testimony "wild accusations", "slander…and…a distraction". SPW's name-calling never addresses the substance or detail of Alcorn's testimony other than his comment on a purported hiring practice.[2] However, an examination of the detail and nature of Alcorn's testimony shows that Alcorn states a sound foundation for personal knowledge of the facts in his declaration. Alcorn's pertinent testimony includes the following specific facts:

1.     Spreadsheets routinely used in sales presentations to customers showing comparative reimbursement values were destroyed after use at the direction of Schering corporate in-house counsel. *See,* Alcorn Trial Decl., ¶17.

---

[2] Plaintiffs agree to strike the second sentence of the Alcorn Trial Decl., ¶19, regarding Schering hiring practice regarding "young, debt-ridden lawyers fresh out of law school" – irrelevant.

2. Schering in-house lawyers, including Joe Larosa, were instructed by Schering Senior Vice President Roch Doliveux to develop and implement contracting strategies that used nominal pricing, free or under-priced services and payments as kickbacks to specific MCOs and PBMs. Such marketing practices were planned and implemented with the full participation of Schering in-house counsel.  *See*, Alcorn Trial Decl., ¶18.

3. Schering in-house lawyers participated in the implementation of kickback schemes and bogus clinical trial payments by preparing contracts that were intended to establish facial legitimacy, prevent detection by government auditors, and minimize liability.  *See*, Alcorn Trial Decl., ¶¶18 and 20.

There is nothing "wild" about Alcorn's testimony; the testimony is specific, names the participants in the wrongful acts; and describes the wrongful acts and temporal context of specific contracting schemes that involved inflated AWP reimbursement spread issues.  Alcorn's testimony needs to be considered by this Court. SPW offered no counter-declarations or documents in support of its motion to show Alcorn is wrong – Alcorn's testimony stands unopposed at this point. If SPW has evidence to counter Alcorn's testimony, SPW needs to bring it to Court for cross-examination during the trial.

WHEREFORE Plaintiffs respectfully request that this Court deny SPW's motion in limine, and all other relief that it deems just and proper.

| | |
|---|---|
| DATED:  November 5, 2006 | By      /s/ Steve W. Berman            |

                                                Thomas M. Sobol (BBO#471770)
                                                Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Donald E. Haviland, Jr.
The Haviland Law Firm LLC
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO THE SCHERING-PLOUGH GROUP'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF FORMER SCHERING-PLOUGH CORPORATION EMPLOYEES, CHARLES M. ALCORN, BEATRICE E. MANNING, AND G. RAYMOND PIRONTI, JR.** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 5, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292