# TAB F

## ADDENDUM TO ONCOLOGY DISTRIBUTOR AGREEMENT

THIS ADDENDUM TO ONCOLOGY DISTRIBUTOR AGREEMENT ("Addendum") is dated as of October 6, 2003 ("Effective Date") and is made by and between ONCOLOGY THERAPEUTICS NETWORK JOINT VENTURE, L.P., a Delaware limited partnership ("OTN") and AMERICAN PHARMACEUTICAL PARTNERS, INC., an Illinois corporation ("APP").

### RECITALS

A.  APP and OTN (as successor-in-interest to Oncology Therapeutic Network, a Delaware corporation) are parties to that certain Oncology Distributor Agreement dated June 13, 2001 (inclusive of Exhibit A (List of Products) and Exhibit B (Payment Terms), as modified by that certain Oncology Distributor Agreement Addendum dated June 13, 2001, as further modified by that certain Letter Agreement (with attached OTN Rebate Program Pamidronate Disodium) dated May 24, 2002, as further modified by that certain Addendum To OTN Contract #485218 dated August 7, 2002, and including all other addenda, modifications and amendments (collectively, the "Distributor Agreement")). The Distributor Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

B.  Pursuant to this Addendum, OTN and APP intend to further modify the Distributor Agreement on the terms and conditions set forth herein below.

NOW, THEREFORE, in consideration of the covenants and conditions set forth herein, for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the undersigned agree as follows:

1.  Recitals. The foregoing Recitals are incorporated by reference as if fully set forth herein.

2.  Term of Distributor Agreement. Section 10 of the Distributor Agreement is hereby modified to provide that the term of the Distributor Agreement is extended to December 31, 2004.

3.  Pamidronate Marketing Fee.

    3.1  The Distributor Agreement contemplates that APP will manufacture, package and label (with APP's brand) (i) Pamidronate Disodium Injection 30mg, 30mg/ml 10 ml SD Vial Liquid (NDC #63323; Product Number 730410); and (ii) Pamidronate Disodium Injection 90mg, 90mg/ml 10 ml SD Vial Liquid (NDC #63323; Product Number 730510) (together, "APP-Branded Pamidronate").

    3.2  In addition, APP has now agreed to manufacture, package and label (with OTN's private brand) Pamidronate Disodium Injection 90mg, 10 ml (NDC #63323; Product Number 73535; Product Code OT730510) ("OTN-Branded Pamidronate"). OTN-Branded Pamidronate is hereby deemed added to Exhibit "A" to the Distributor Agreement.

Defendants' Exhibit
2600
01-12257-PBS

1

3.3 All provisions in the Distributor Agreement with respect to Marketing Fees for the sale of Pamidronate (whether APP-Branded Pamidronate or OTN-Branded Pamidronate) are hereby replaced with the following new Pamidronate Marketing Fee provision:

"<u>Pamidronate Marketing Fee</u>. In consideration for the significant marketing efforts OTN will undertake to sell APP-Branded Pamidronate and OTN-Branded Pamidronate, APP agrees to pay OTN a marketing fee ("**Pamidronate Marketing Fee**"). The Pamidronate Marketing Fee will be paid by APP to OTN quarterly, based on the total number of milligrams of APP-Branded Pamidronate and OTN-Branded Pamidronate sold by OTN to End Users (defined below) during the immediately preceding calendar quarter. The Pamidronate Marketing Fee will be calculated as follows: (i) making reference to Column 1 in <u>Exhibit "2"</u> attached hereto and incorporated herein, select the range of milligrams of all Pamidronate products sold by OTN to End Users during the calendar quarter just ended; (ii) making reference to Column 2 in <u>Exhibit "2"</u>, determine the applicable Percent of Net Sales which correlates to the range of milligrams of all Pamidronate products sold by OTN to End Users during the calendar quarter just ended; and (iii) for each calendar quarter, multiply the applicable Percent of Net Sales times OTN's Quarterly Net Sales (defined below) for the calendar quarter in question. The result is the Pamidronate Marketing Fee for the quarter in question.

(a) <u>OTN's Quarterly Net Sales.</u> The phrase "**OTN's Quarterly Net Sales**" means the sum of the following: (i) the Pamidronate Contract Price (defined below) during the calendar quarter in question, *multiplied by* (ii) the total quantity of APP-Branded Pamidronate and OTN-Branded Pamidronate sold (measured in units) by OTN to End Users during the calendar quarter in question, *reduced by* (iii) the dollar amount of returned goods credits actually received by OTN from APP during the same calendar quarter for APP-Branded Pamidronate and OTN-Branded Pamidronate.

(b) <u>Pamidronate Contract Price</u>. The phrase "**Pamidronate Contract Price**" means the total amount APP agreed to charge OTN for APP-Branded Pamidronate and OTN-Branded Pamidronate (measured in units) during the calendar quarter in question.

(c) <u>Margin Protection.</u> APP guarantees to OTN a 10% margin on the Pamidronate Contract Price, providing that the price OTN sells OTN-Branded Pamidronate is not lower than 5% of the Pamidronate Contract Price and the minimal performance compliance conditions are met.

(d) <u>End Users</u>. The phrase "**End Users**" means those persons and entities to whom OTN intends to sell APP-Branded Pamidronate and OTN-Branded Pamidronate, including but not limited to oncology clinics, oncology offices and physicians, regardless of their GPO affiliation.

4. <u>Shortages.</u> APP agrees to and shall use good faith efforts to manufacture sufficient quantities of OTN-Branded Pamidronate to meet OTN's requirements. On a continuous basis throughout the Term of this Distributor Agreement, APP agrees to and shall manufacture not less than 120% of the quantity of OTN-Branded Pamidronate that OTN projects it will require as

reflected in the two (2) most recent OTN-Branded Pamidronate Production Forecasts delivered by OTN to APP. In the event that APP does not manufacture sufficient quantities of OTN-Branded Pamidronate to meet OTN's requirements, APP agrees to and shall compensate OTN for the shortages by promptly delivering to OTN quantities of APP-Branded Pamidronate equal to the shorted quantities of OTN-Branded Pamidronate, at the same price OTN would have paid were the OTN-Branded Pamidronate available, *less* a ten percent (10%) discount to compensate OTN for the market-based dilution of its own OTN-Branded Pamidronate.

5. <u>Chargeback Amount.</u> All definitions of Chargeback Amounts set forth in the Distributor Agreement are hereby deleted in their entirety and replaced with the following new definition of Chargeback Amount:

> "**Chargeback Amount**" means that amount which is equal to the difference between WAC and OTN's contracted price from APP on a price per unit basis of product sold by OTN. "WAC" means the wholesale acquisition cost, which is the acquisition cost per unit of product charged by APP to the wholesaler or charged by APP to OTN's Logistics Provider who sells the product to OTN. "**OTN's Logistics Provider**" means any third party or entity selected by OTN from time to time to provide OTN with agreed drug warehousing and order fulfillment services."

6. <u>Returned Goods Policy.</u> APP agrees to and shall accept from OTN and/or OTN's Logistics Provider all returned drug products (including, but not limited to, APP-Branded Pamidronate and OTN-Branded Pamidronate) in accordance with and pursuant to the Returned Goods Policy attached hereto as <u>Exhibit "3"</u> and incorporated herein by reference.

7. <u>Brand Protection Period.</u> The companies listed below are referred to herein as the "**Target Companies.**" APP agrees that it will not, for a period of one hundred eighty (180) calendar days following the date of the launch or release by OTN of any OTN-Branded Pamidronate or any other OTN privately labeled drug compound, launch or release for the account or benefit of any of the Target Companies any privately labeled version of the same drug compound launched or released by OTN. The Target Companies are identified as follows:

   7.1   NOA

   7.2   Oncology Supply

   7.3   US Oncology

   7.4   US Oncology/Select Plus

   7.5   ION

   7.6   NSS

   7.7   Florida Infusion

   7.8   Priority Health

3

8. **Confidentiality.** The terms and conditions set forth in that certain Confidentiality Agreement, executed by OTN and APP on May 29, 2003, are incorporated by reference as if fully set forth herein.

9. **Indemnification Obligations; Releases and Waivers.**

   9.1 **By APP**

   (a) <u>General Indemnification Obligations</u>. APP agrees to and shall indemnify, defend, protect and hold harmless OTN and its officers, directors, partners (general and limited), members, employees, agents and representatives from and against any liability for claims, losses or damages (including without limitation attorneys' fees, costs and expenses) actually paid or incurred caused by the negligence or willful misconduct of APP or any of its officers, directors, partners (general and limited), members, employees, agents and representatives. Provided, however, the foregoing indemnity obligations shall not apply to any liability for claims, losses or damages resulting from the negligence or willful misconduct of OTN.

   (b) <u>OTN-Branded Pamidronate Indemnification Obligations.</u> APP acknowledges that OTN has had and will have no role with respect to (i) sourcing, preparing, storing on APP's premises, shipping (up to the point where OTN's Logistics Provider receives the shipment), manufacturing, packaging and labeling (with respect to Food and Drug Administration ("FDA") and/ Federal Trade Commission ("FTC") requirements) of OTN-Branded Pamidronate, (ii) obtaining FDA, FTC or other federal, state and local approvals for the use, sale and distribution of OTN-Branded Pamidronate to members of the public, or (iii) compliance with any FDA and/or FTC requirements directly or indirectly having application to OTN-Branded Pamidronate (collectively, "**OTN-Branded Pamidronate Matters**"). As a result, APP hereby agrees to indemnify, defend, protect and hold harmless OTN and its officers, directors, partners (general and limited), members, employees, agents and representatives from any fines, penalties, claims, losses, damages (including but not limited to attorneys' fees, costs and expenses) or liabilities arising out of or relating directly or indirectly to (i) any OTN-Branded Pamidronate Matters, (ii) injury or death to persons or property alleged to have been directly or indirectly caused by OTN-Branded Pamidronate, (iii) "class of trade" pricing, if any, maintained by APP, with respect to OTN-Branded Pamidronate, and (iv) any legal action or proceeding (whether judicial, administrative or otherwise) brought against OTN based on claims or allegations directly or indirectly related to OTN-Branded Pamidronate not included above. Provided, however, the foregoing indemnity obligations shall not apply to any liability for claims, losses or damages resulting from the negligence or willful misconduct of OTN.

   (c) <u>Releases and Waivers</u>. APP hereby releases, waives and forever relinquishes the right to bring any legal action or proceeding of any kind against OTN and its officers, directors, partners (general and limited), members, employees, agents and representatives relating directly or indirectly to (i) any OTN-Branded Pamidronate Matters, (ii) injury or death to persons or property alleged to have been directly or indirectly caused by OTN-Branded Pamidronate, and (iii) "class of trade" pricing, if any, maintained by APP, with respect to OTN-Branded Pamidronate.

9.2 **By OTN.**

(a) <u>General Indemnification Obligations.</u> OTN agrees to and shall indemnify, defend, protect and hold harmless APP and its officers, directors, partners (general and limited), members, employees, agents and representatives from and against any liability for claims, losses or damages (including without limitation attorneys' fees) actually paid or incurred caused by the negligence or willful misconduct of OTN or any of its officers, directors, partners (general and limited), members, employees, agents and representatives. Provided, however, the foregoing indemnity obligations shall not apply to any liability for claims, losses or damages resulting from the negligence or willful misconduct of APP, nor to any liability for which APP has agreed to indemnify OTN pursuant to Section 4.2 above.

(b) <u>Releases and Waivers</u>. OTN hereby releases, waives and forever relinquishes the right to bring any legal action or proceeding of any kind against APP and its officers, directors, partners (general and limited), members, employees, agents and representatives relating directly or indirectly to any damage, injury or death caused by the negligence, willful act or omission of OTN's Logistics Provider with respect to OTN-Branded Pamidronate after the same is delivered by APP to OTN's Logistics Provider.

10. <u>Miscellaneous.</u>

10.1 <u>Authority.</u> The persons signing below represent and warrant that they have the requisite authority to execute this Addendum.

10.2 <u>Conflict or Inconsistency</u>. In the event of any conflict or inconsistency between this Addendum and the Distributor Agreement, the provisions of this Addendum shall control. Except as modified by this Addendum, the Distributor Agreement remains in force and effect according to its terms. All references in the Distributor Agreement to Pamidronate, APP-Branded Pamidronate and/or Pamidronate Disodium Injection shall be deemed to include OTN-Branded Pamidronate; and (except as otherwise provided by this Addendum) all fees, charges, contract prices, chargebacks, margin protections, rebates, return policies and payment terms applicable to Pamidronate, APP-Branded Pamidronate and/or Pamidronate Disodium Injection shall apply to OTN-Branded Pamidronate.

10.3 <u>Successors</u>. The covenants, agreements, representations, warranties and provisions set forth in this Addendum and in the Distributor Agreement shall be binding upon, and shall inure to the benefit of, each of the parties hereto and to their respective successors, transferees and assigns.

10.4 <u>Counterparts</u>. This Addendum may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute but one and the same agreement.

10.5 <u>Attorneys' Fees</u>. If any legal or administrative action or proceeding is brought by either party against the other party to enforce or interpret any term or provision of this Addendum or the Distributor Agreement, the prevailing party in said action or proceeding shall be entitled to recover from the party not prevailing its reasonable attorneys' fees and costs incurred in connection with the prosecution or defense of such action or proceeding.

10.6  Severability. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

IN WITNESS WHEREOF the parties have executed this Addendum as of the date and year first above written.

**APP**

AMERICAN PHARMACEUTICAL
PARTNERS, INC., an Illinois
corporation,

By: _Thomas E. Shea/jr_
Name: _Tomas E. Shea_
Title: _VP Corp Marketing_

Date: _Oct. 6, 2003_

**OTN**

ONCOLOGY THERAPEUTICS
NETWORK JOINT VENTURE, LP,
a Delaware limited partnership,

By: _Jack Avery_
Name: _Clark P. Avery_
Title: _VP. Business Development_

Date: _October 6, 2003_

## EXHIBIT "1"

## DISTRIBUTOR AGREEMENT

## SEE ATTACHED

## EXHIBIT "2"

## PAMIDRONATE MARKETING FEE

| RANGE OF TOTAL MILLIGRAMS OF APP-BRANDED PAMIDRONATE AND OTN-BRANDED PAMIDRONATE SOLD TO END USERS EACH CALENDAR QUARTER COLUMN 1 | | PERCENT OF NET SALES COLUMN 2 |
|---|---|---|
| From Milligrams | To Milligrams | Percent of Net Sales |
| 0 | 0 | 0% |
| 540,001 | 809,730 | 5% |
| 809,731 | 1,079,730 | 7% |
| 1,079,731 | 1,226,966 | 13% |
| 1,226,967 | 1,363,296 | 15% |
| 1,363,297 | 1,435,048 | 17% |
| 1,435,049 | | 22% |

1

### EXHIBIT "3"

### RETURNED GOODS POLICY

1. **General Policy.** American Pharmaceutical Partners, Inc. will issue credit in accordance with this policy only for authorized returns of current American Pharmaceutical Partners, Inc. product(s). Product(s) must be returned in full, unopened, undamaged, original American Pharmaceutical Partners, Inc. shelf packs as determined by American Pharmaceutical Partners, Inc. and when requested provide adequate documentation to ensure that the product(s) was properly stored. All returns must be accompanied by a current Returned Goods Authorization Form. All returns must be received by American Pharmaceutical Partners, Inc. within 30 days of authorization. **Proof of purchase and proper storage may also be required.** Upon receipt of authorized product(s), at American Pharmaceutical Partners, Inc.'s discretion a credit allowance may be issued in the form of a credit or replacement product(s). Those returns which are subject to rejection by American Pharmaceutical Partners, Inc. and will not be eligible for or receive any credit may include, but are not limited to; Unauthorized returns, returns which do not contain adequate information as required by the American Pharmaceutical Partners, Inc. Return Goods Authorization Form, and returns which do not otherwise comply with this policy. Product received in this category will not be able to be returned to the customer and hence will be destroyed by us with a potential cost for destruction assessed to the customer.

A. **EXPIRED PRODUCTS:** At the discretion of American Pharmaceutical Partners, Inc., a 100% credit will be issued (less a 10% processing charge) for the expiration-dated product(s) that are returned up to six (6) months following expiration.

B. **NON-EXPIRED PRODUCTS:** At the discretion of American Pharmaceutical Partners, Inc., a 100% credit will be issued (less a 10 % processing charge) for non-expiration dated product(s) (i.e., devices) that are returned within two (2) years after the date of purchase from American Pharmaceutical Partners, Inc.

C. **ORDER ERRORS:** 100% credit will be issued (less a 10% processing charge) for the return of product(s) ordered in error direct from American Pharmaceutical Partners, Inc. American Pharmaceutical Partners, Inc. must be notified of the error within 10 business days of receipt of the ordered merchandise by customer.

D. **SHIPPING ERRORS:** 100% credit will be issued on returns of product(s) shipped in error by American Pharmaceutical Partners, Inc. American Pharmaceutical Partners, Inc. must be notified of the error within 10 business days of receipt of the merchandise by customer.

E. **PRICE INCREASES:** Product returns after the effective date of any price increase will be credited at the current list price.

F. **DAMAGED PRODUCTS:** 100% credit, or replacement product(s), will be issued for the return of product(s) which are damaged during shipment from American Pharmaceutical Partners, Inc. to the specified OTN location. OTN must notify American Pharmaceutical Partners, Inc. within

1

5 business days from time of receiving shipment and must provide a copy of the shipper's bill of lading, clearly marked damaged to be eligible for credit. This policy does not cover shipments, by the OTN, to separate distribution centers.

2. **Return Authorization.** All returns must be authorized in writing by either the American Pharmaceutical Partners, Inc. Customer Operations Department or by an American Pharmaceutical Partners, Inc. sales representative. All returns for credit must be accompanied by a completed Returned Goods Authorization Form that requires information regarding the returned product(s) name, potency, lot number, expiration date, the quantity to be returned, the reason for the return and such other information as requested by American Pharmaceutical Partners, Inc. American Pharmaceutical Partners, Inc. RESERVES THE RIGHT TO REQUEST PROOF OF PURCHASE PRIOR TO AUTHORIZING ANY RETURN. UNAUTHORIZED RETURNS AND RETURNS NOT ACCOMPANIED BY A RETURNED GOODS AUTHORIZATION FORM WILL NOT BE ELIGIBLE FOR CREDIT.

3. **Return Location.** All authorized returned goods along with the completed Returned Goods Authorization Form, are to be sent to the following address (unless a different address is specified at the time of authorization):

> American Pharmaceutical Partners, Inc.
> 600 Supreme Drive
> Bensenville, IL 60106
> Attn: Returned Goods Department
> 1-888-386-1300

A copy of the RGA form should be included in every box that is being returned so proper identification can be made by APP personnel. The customer shall be responsible for any shipping charges associated with the return of American Pharmaceutical Partners, Inc. product, except that product which is returned as a result of an American Pharmaceutical Partners, Inc. shipping error or product recall. American Pharmaceutical Partners, Inc. does not assume any responsibility for any loss or damage to the returned product incurred while in transit.

4. **Returns not Eligible for Credit.** No credit will be issued for return of discontinued product(s); product(s) not in their original unopened packages; partials; product(s) returned on behalf of end-user customers; product(s) sold pursuant to special sales promotion programs or product(s) covered by an American Pharmaceutical Partners, Inc. returned goods waiver program; packages which have been marked or disfigured in any way; product(s) damaged by water or fire; product(s) which have been involved in a fire or bankruptcy sale; product(s) returned after 10 days of shipment that were improperly stored or lack appropriate documentation of storage condition; returned product(s) that have been held, stored, shipped, or returned in a container that casts doubt on the safety, identity, quality, strength or purity of the product(s); or returned product(s) that are otherwise in an unsatisfactory condition at the sole discretion of American Pharmaceutical Partners, Inc.

5. **Third Party Return Goods Companies.** American Pharmaceutical Partners, Inc. will not accept returns for credit from third party return goods companies.

## 6. Miscellaneous Information.

A. American Pharmaceutical Partners, Inc. representatives are not permitted to pick up or destroy product(s) for return.

B. American Pharmaceutical Partners, Inc. reserves the right to inspect all returns before issuing credit.

C. This Returned Goods Policy is subject to revision in whole or in part at American Pharmaceutical Partners, Inc.'s discretion without prior written notice. As deemed necessary by American Pharmaceutical Partners, Inc., notice of any change in the Returned Goods Policy and the effective date of any such change will be provided to American Pharmaceutical Partners, Inc. customers. Returned goods credits will be issued by American Pharmaceutical Partners, Inc. in accordance with the policy in effect at the time American Pharmaceutical Partners, Inc. authorizes the return.

D. Manufacturers are expressly forbidden under the Federal Food, Drug and Cosmetics Act from returning expired dated items to customers. Such items returned to American Pharmaceutical Partners, Inc. will be destroyed. American Pharmaceutical Partners, Inc. also reserves the right to destroy without credit packages that are unfit or unsafe for sale or do not comply with applicable law.

09/03 Wholesaler Returned Goods Policy with revisions noted.