UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re. PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO THE AMENDED MASTER CONSOLIDATED CLASS ACTION ) ) ) ) ) | Hon. Patti Saris |

**MEMORANDUM OF UNITED STATES REGARDING TRACK ONE DEFENDANTS' EFFORT TO SECURE TESTIMONY OF FORMER EMPLOYEES OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES**

The United States of America, on behalf of itself and the Department of Health and Human Services (HHS), Centers for Medicare and Medicaid Services (CMS), *amicus curiae*, through its undersigned counsel, respectfully submits this memorandum, as directed by the Court on Monday, November 13, 2006, concerning the Track One Defendants' effort to secure the testimony of certain former employees of the Department of Health and Human Services.

**BACKGROUND**

On October 20, 2006, the Track One Defendants filed an *Emergency Motion to Declare the Touhy Regulation Inapplicable and for Leave to Take Trial Depositions of Certain Former Government Employees* ("Emergency Motion") (Docket entry #3239). The Emergency Motion sought relief with respect to four individuals: Christopher Jennings (described by the defendants as a former Deputy Assistant to the President for Health Policy Development), former HHS HCFA Administrators Thomas Scully, former

HCFA Administrator Nancy Ann Min DeParle, and former HHS employee Stanley Weintraub.  By electronic Order dated October 20, 2006, the Court denied the defendants' request for leave to take trial depositions of the former government employees.[1]

On October 31, 2006, the United States filed its *Opposition of United States to Track One Defendants' Emergency Motion to Declare the Touhy Regulation Inapplicable and for Leave to Take Trial Depositions of Certain Former Government Employees* (Docket entry #3281) ("October 31 Memorandum").  That Memorandum sets forth the government's position concerning the *Touhy*-related issues, and the Court is respectfully referred to that memorandum.[2]  The following discussion focuses on recent developments since the filing of the above-mentioned papers and provides further argument on certain issues.

### A.     Christopher Jennings

In the *October 31 Memorandum*, the United States explained that the defendants had submitted their *Touhy* request for testimony of Mr. Jennings to the White House

---

[1] The Court stated in its order, "I decline the request for leave to depose former government employees who decline to testify voluntarily.  Discovery is closed, and trial is three weeks away. With respect to the substantive Touhy issues, I await the government's brief.  This controversy has been brewing since 9/12/06, and it is unlikely I will resolve them (not to mention issues of the deliberative process privilege) before trial."

[2] A courtesy copy of the *October 31 Memorandum* is being provided to the Court, together with a courtesy copy of the instant memorandum.  In the October 31 Memorandum the United States did not address the defendants' request to take trial depositions, as that issue was rendered moot by the Court's October 20, 2006, Order.

Office of Administration, but that Mr. Jennings was never an employee of that office, and that therefore the White House Office of Administration was not in a position to act on the request.  Mr. Jennings was an HHS employee from February 1993 until November 1994.  However, as the government pointed out in its *October 31 Memorandum*, and as remains true now, the defendants have not made a request to HHS for testimony from Mr. Jennings, and, consequently, there is no *Touhy* issue properly before the Court.

In any event, Mr. Jennings lives in Virginia and is not agreeable to giving testimony at the Track 1 trial.  *See* Declaration of Christopher Jennings, attached as Exhibit A.   Since there is no valid subpoena for his testimony, it would appear that any issues concerning privileges or the applicability of the HHS *Touhy* regulations are moot.

**B.    Thomas A. Scully and Nancy-Ann Min DeParle**

With regard to former HHS employees Thomas Scully and Nancy-Ann Min, the United States respectfully refers the Court to the arguments in the *October 31 Memorandum*, wherein the United States argues that (a) the United States is not a "party" to the Track One trial and that the HHS *Touhy* regulations therefore do apply; (b) the Court lacks jurisdiction over the defendants' *Emergency Motion* because the defendants had neither initiated an independent action under the Administrative Procedures Act nor moved to enforce any subpoena under Fed. R. Civ. P. 45; and (c) in any event, the defendants made no showing that the HHS decision denying their request was arbitrary or capricious.  In addition, the United States understands that neither Mr. Scully nor Ms.

Min DeParle is willing to testify voluntarily. Accordingly, any *Touhy* issues concerning these individuals appear to be moot.

      **C.**     **Stanley Weintraub**

The United States understands that the Court has ruled that the defendants may not pay Mr. Weintraub for his testimony. In light of this, the United States does not know whether Mr. Weintraub will agree to testify voluntarily. As a precaution, the United States assumes he is willing to testify and that therefore the *Touhy* and privilege issues are ripe with regard to his potential testimony.

The United States re-asserts its position that the Court lacks jurisdiction to consider the defendants' arguments. The HHS has not authorized Mr. Weintraub's testimony; the United States is not a "party" to the case currently being tried, *see October 31 Memorandum* at pp. 3-8, and therefore the HHS *Touhy* regulation is fully applicable; and the defendants have not brought a proper challenge to the HHS decision. *Id*. at 9. To the government's knowledge, the defendants have not instituted an independent action against HHS under the Administrative Procedures Act, and there is no subpoena that the defendants seek to enforce.

In any event, as argued in the United States' *October 31 Memorandum*, HHS has properly determined that Mr. Weintraub's testimony on behalf of the defendants would likely disclose matters protected by the government's deliberative process privilege.

The deliberative process privilege has been long recognized to protect materials "prepared in order to assist an agency decisionmaker in arriving at his decision."

*Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975). Protected information may include "recommendations, draft documents, proposals, suggestions, and other subjective [information] which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see Town of Norfolk v. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992). A predecisional document is "deliberative" if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Inst. v. Department of Health & Human Servs.*, 889 F.2d 1118, 1119 (D.C. Cir. 1989); *Providence Journal Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992).

> The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." Sears, Roebuck & Co., 421 U.S. at 151 . . . . More specifically, courts have consistently advanced three policy rationales for this exemption: (1) it encourages open and frank discussions among agency personnel; (2) it protects against the premature disclosure of an agency's policies before they have been formally adopted; and (3) it prevents against public confusion that might result from the disclosure of reasons and rationales that do not, in fact, form the ultimate basis for the agency's decision.

*North Dartmouth Properties, Inc. v. U.S. Dep't of Housing and Urban Dev.*, 984 F. Supp. 65, 67 (D. Mass. 1997). As observed by this Court in *American Federation of Government Employees, AFL-CIO, v. U.S. Dep't of HHS*, 63 F. Supp. 2d 104, 107 (D. Mass. 1999):

5

> The intended beneficiaries of [the deliberative process privilege] include: (1) agency subordinates, who can provide their superiors with candid opinions without fear that those opinions will later be subjected to public ridicule or criticism; (2) the agencies themselves, which are protected against premature disclosure of proposed policies; and (3) the public, which can be confused and misled by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for that action. *Providence Journal*, 981 F.2d at 557; *see City of Virginia Beach v. United States Dep't of Commerce*, 995 F.2d 1247, 1252-53 (4th Cir.1993) (Exemption 5 insulates against chilling effect disclosure would have on agency employees "judged not on the basis of their final decisions, but for matters they considered before making up their minds."). Exemption 5 "was created to prevent the disruption of a free flow of ideas, opinions, advice and frank discussions within agencies concerning their policies and programs." *National Wildlife*, 861 F.2d at 1117 ( quoting *Julian v. United States Dep't of Justice*, 806 F.2d 1411, 1419 (9th Cir.1986)).

The defendants' *Touhy* request stated the scope of Mr. Weintraub's anticipated testimony as follows:

> Ms. DeParle, Mr. Scully, and Mr. Weintraub would testify regarding their knowledge of average wholesale price ("AWP") for drugs covered by Medicare Part B during, but not limited to, their tenure at the Center for Medicare & Medicaid Services ("CMS"), formerly Health Care Financing Administration ("HCFA"). . . . Mr. Weintraub was a Senior Policy Advisor at CMS from 1984 to 1998.
>
> Specifically, Ms. DeParle, Mr. Scully, and Mr. Weintraub would testify to their knowledge or understanding of the use of AWP for reimbursement, the relationship between AWP and provider acquisition costs, the extent to which reimbursement for drug ingredients operated as a cross-subsidy for the inadequate reimbursement of the costs of service and administration, the reasons for maintaining AWP

6

> as part of Medicare reimbursement, and the general operation of the reimbursement system.
>
> * * *
>
> Similarly, Mr. Weintraub can offer unique testimony in light of his role in developing and implementing Medicare Part B reimbursement policies from 1984 to 1998 while a Branch Chief and senior Policy Advisor at HCFA. In addition to his perspective concerning the evolution of the AWP reimbursement methodology over time, Mr. Weintraub played a key role in drafting the 1991 proposed and final rules in the Federal Register setting drug reimbursement at the lower of estimated acquisition cost or AWP, as well as in drafting the Medicare reimbursement provision of the Balanced Budget Act of 1998. He can also testify as to government reports and knowledge regarding AWP.

Exhibit D to defendants' *Emergency Motion* at 2.

The vaguely-worded descriptions of the testimony sought by the defendants evince an intent to elicit testimony of the internal policy deliberations of Mr. Weintraub and other agency employees concerning HHS regulatory decisions, and including his subjective understandings and opinions regarding AWP reimbursement. To the extent this is not the case, the testimony is irrelevant. For example, there is no basis to allow testimony regarding Mr. Weintraub's "role in drafting the 1991 proposed and final rules in the *Federal Register* setting drug reimbursement at the lower of estimated acquisition cost or AWP." The nature of Mr. Weintraub's role in drafting these publications is of no consequence in this litigation; obviously the defendants seek more than this: they wish to elicit Mr. Weintraub's testimony about the opinions and internal discussions that he and other agency officials had during those rule-making proceedings. This is the stuff of

7

deliberative process.  Mr. Weintraub was not the decision-making official regarding these publications; he was a subordinate who played an advisory role, providing advice on matters of policy.  Evidence of policy deliberations of Mr. Weintraub and other policymakers is privileged.  *American Federation of Government Employees, AFL-CIO,* 63 F. Supp. 2d at 107.  Moreover, the testimony of a subordinate employee reflecting back on internal deliberations occurring 15 years ago is irrelevant.  It would be improper in the present context to allow testimony on why agency decisionmakers made the decisions they did.  The reasons for the 1991 proposed and final rules are set forth in the published preambles to those agency actions, as set forth in the Federal Register.  It is those published explanations -- and only those published explanations -- that reflect the reasons that were finally approved by the Secretary of HHS.  *See United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) (reversing district court's interpretation of federal regulation based on affidavits of present and former agency officials, stating "agency interpretations are only relevant if they are reflected in public documents . . . . The non-public or informal understandings of agency officials concerning the meaning of a regulation are thus not relevant.").

       The same conclusion applies to the defendants' desire to elicit testimony regarding Mr. Weintraub's apparent role "in drafting the Medicare reimbursement provision of the Balanced Budget Act of 1998."  It goes without saying that the testimony of an executive branch employee who participated in drafting legislation is not relevant to the meaning of that legislation.  *See United States v. Lachman*, *supra*.  And there is no basis for Mr.

Weintraub to testify about "government reports and knowledge regarding AWP." There is no indication that Mr. Weintraub participated in drafting any government reports (other than the 1991 Federal Register publications), and, in any event, the government reports at issue (whatever they are) are not so complicated as to require explanation.

Finally, the defendants' vague request for testimony regarding Mr. Weintraub's "perspective concerning the evolution of the AWP reimbursement methodology over time" similarly appears designed to elicit Mr. Weintraub's subjective opinions about the import of agency regulations and other HHS public pronouncements. This is simply a guise to elicit evidence protected by the deliberative process privilege. To the extent such opinions are not evident in the agency's public pronouncements, they can only reflect internal deliberations of policy-making officials. The United States does not see how such evidence is relevant to issues present in this case.

At the beginning of the trial proceedings on Monday, November 13, 2006, this Court suggested that communications made by Mr. Weintraub to industry representatives would fall beyond the ambit of the deliberative process privilege and could be relevant if they might have led the industry to believe that their reporting of inflated AWPs was permissible. First, the defendants' *Touhy* request did not ask HHS to permit testimony regarding communications that Mr. Weintraub might have had with industry representatives. Therefore the defendants have not exhausted the administrative remedy provided them under the regulations, and their effort to obtain such testimony should be rejected.

Second, the United States is not aware that Mr. Weintraub can give testimony on any communications with industry representatives (other than communications made by way of *Federal Register* publications or other official agency pronouncements). The defendants have not identified any meeting or seminar with industry representatives that Mr. Weintraub attended where AWP reimbursement was discussed; nor have they asserted that any communication of this nature occurred. In short, the defendants have not properly asked for testimony on this subject, and there is no indication that such evidence exists. To now allow inquiry into this subject would be a fishing expedition at a time when discovery is long past and the Court has denied the defendants' request to take depositions. For this reason, the United States opposes the taking of a deposition of Mr. Weintraub to explore the boundaries of privileged and non-privileged testimony.

## CONCLUSION

For the foregoing reasons, the Court should deny the Track One Defendants' Emergency Motion to Declare the Touhy Regulation Inapplicable and for Leave to Take

Trial Depositions of Certain Former Government Employees, and the Court should deny the defendants' request to present trial testimony of Mr. Weintraub.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                By:   /s/ George B. Henderson, II
                         George B. Henderson, II
                         Assistant U.S. Attorney
                         John J. Moakley U.S. Courthouse
                         1 Courthouse Way, Suite 9200
                         Boston, MA  02110
                         (617) 748-3272

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above "Opposition of United States to Track One Defendants' Emergency Motion to Declare the Touhy Regulation Inapplicable and for Leave to Take Trial Depositions of Certain Former Government Employees" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


                                   /s/ George B. Henderson, II
Dated: November 17, 2006         George B. Henderson, II

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re. PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO THE ) AMENDED MASTER CONSOLIDATED ) CLASS ACTION ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS Hon. Patti Saris |

### DECLARATION OF CHRISTOPHER JENNINGS

I, Christopher Jennings, hereby declare and state as follows:

1. I reside in Arlington, Virginia.

2. Counsel for certain defendants in the above-captioned matter have asked me to testify at the trial now occurring in Boston, Massachusetts.

3. I understand that the Department of Justice has advised defendants that my testimony implicates issues of governmental privileges, and I also understand that the Department of Justice has advised defendants that they should make a formal request for my testimony to my former employer, the Department of Health and Human Services.

4. Furthermore, I am extremely busy and I do not wish to testify in Boston on this matter. Therefore I respectfully decline to testify unless required to do so by a court order or valid subpoena.

I declare under penalty of perjury that the foregoing is true and correct to the best knowledge and belief.

Executed this 17th day of November, 2006, at Washington, D.C.

Christopher Jennings