DX 2763 Referenced in Pearson Trial Decl.

# ORTHO BIOTECH PRODUCTS, L.P.

REBATE AGREEMENT BETWEEN

| CUSTOMER | SUPPLIER |
|---|---|
| Customer Name Keystone Mercy<br>Street Address 200 Stevens Drive<br>City, State Philadelphia, PA 19113-1570<br>Phone No: 215-937-5013<br>Fax No: 215-937-5018<br>Att: Mesfin Tegenu, MS, R.Ph.<br>Effective Date: January 1, 2001 | Ortho Biotech Products, L.P.<br>700 US Highway #202 S.<br>Raritan, New Jersey 08869<br>Phone No.: (908) 704-5000<br>Fax No.: (908) 704-5346<br>Att: Contract Management<br>End Date: December 31, 2003<br>Supplier's Contract No.: |

TABLE OF CONTENTS


| | PAGE |
|---|---|
| REBATE AGREEMENT BETWEEN | 1 |
| TABLE OF CONTENTS | 1 |
| DEFINITIONS | 1 |
| REBATE TERMS | 2 |
| PRODUCT SPECIFIC TERMS | 3 |
| GENERAL PROVISIONS | 3 |
| SIGNATURES | 4 |
| EXHIBIT A: REBATE SCHEDULE | 5 |
| EXHIBIT B: PRODUCT LIST | 6 |
| EXHIBIT C: LIST OF PLANS AND BENEFICIARIES | 8 |


## DEFINITIONS

In this Agreement the following terms shall have the meanings assigned to them below whenever they are printed with initial capitalization.

**"AWP"** shall mean the Average Wholesale Price of a Drug on the first day of the relevant quarter as published in First Data Bank or other reliable reporting service selected by Supplier.

**"Beneficiary"** shall mean an individual who is covered by and eligible for Benefits under one of Customer's Plans.

**"Benefit"** shall mean a Drug reimbursement program under which Participating Providers dispense Products in accordance with one or more Formularies controlled by Customer.

**"Claims Processor"** shall mean an entity which does not manage or enforce a Formulary, or affect the selection and/or dispensing of Product but acts as a reporting body to a payor.

**"Defined Product Market"** shall mean the then current list of Drugs included in the therapeutic categories in which each Product competes as published and distributed every calendar quarter by Supplier.

**"DLP"** shall mean Distributor List Price. For purposes of Rebate calculation, DLP shall mean Distributor List Price in effect on the first day of the relevant calendar quarter.

**"Drug"** shall mean any pharmaceutical, whether manufactured by Supplier or by any third party.

**"Formulary"** shall mean a national or Plan-specific list of Drugs, which, in Customer's sole opinion, reflects the most appropriate Drug therapy, and which will be dispensed through the Participating Providers to Beneficiaries. This list is subject to periodic review and modification by the Customer or its Plans.

- An **"Open"** Formulary allows reimbursement for both Formulary and non-Formulary Drugs.
- A **"Closed"** Formulary limits reimbursement to those Drugs in the Formulary.

**"Formulary Status"** shall mean an award of a Drug on a national and/or Plan-specific Formulary as listed below. The therapeutic class shall be defined by Supplier's Defined Product Market for the affected Product. On any Formulary, with respect to a specific Drug:

- **"Restricted Status"** shall mean the Drug is reimbursed with limitations, e.g. with prior authorization, by specialists only, for selected indications or use in a step-care protocol.
- **"Unrestricted Status"** shall mean the Drug is reimbursed without limitations, e.g. with prior authorization, by specialists only, for selected indications or use in a step-care protocol.
- **"Equal Status"** shall mean the Drug competes against other Drugs on an equal basis, with all cost management controls and interventions being equal, for labeled indications.
- **"Preferred Status"** shall mean Equal Status plus the Drug is favored over all other Drugs also available.
- **"Exclusive Status"** shall mean Preferred Status plus the Drug is the ONLY Drug in its class reimbursed.

**"Market Share Report"** shall mean a report submitted to Supplier by Customer summarizing the utilization of each Product compared with the utilization of Drugs in the relevant Defined Product Market. This report will include all brands or generics within the therapeutic category. The Market Share Report shall be provided to Supplier in the then current version of the National Council For Prescription Drug Programs ("NCPDP") Standard Claims Billing Tape Format showing each prescription for a Product, and where applicable each prescription for Drugs dispensed by a Participating Provider to a Beneficiary for which Customer seeks a Rebate hereunder.

"National Market Share" shall mean that share of the Products within the Defined Product Market category on a national basis as reported to Supplier by the independent entity IMS America.

**"NDC"** shall mean National Drug Code.

**"Participating Provider"** shall mean a mail order distribution center, a DME provider, or a licensed pharmacy under contract with Customer to provide Drugs, and/or other health

DEFENDANT'S EXHIBIT 2763
PENGAD 800-631-6989



HIGHLY CONFIDENTIAL

management services to Beneficiaries pursuant to Plan and Benefit requirements.

**"Plan"** shall mean a collection of group or non-group Benefits managed by Customer and included on the List of Plans and Beneficiaries.

**"Product"** shall mean DME or a pharmaceutical manufactured, distributed or marketed by Supplier or any of its affiliates and included on the Product List.

**"Product Market Share"** shall mean the sum of all Units Utilized for each NDC for a Product in approved indications, divided by the sum of all equivalent Units Utilized for each NDC for all Drugs in approved indications within a Product's Defined Product Market category.

**"Rebate"** shall mean a retrospective reimbursement, based on the utilization of Products, to be paid or credited to Customer under this Agreement.

**"Units Utilized"** shall mean the number of units (e.g. tablets, grams, tubes, Dialpaks®) dispensed to Beneficiaries for a given period.

**"Utilization Report"** shall mean a report, of the Units Utilized of each Drug in the Defined Product Market, dispensed under Benefits to Beneficiaries, including all brands or generics within the therapeutic category. The Utilization Report shall be provided to Supplier in the then current version of the National Council For Prescription Drug Programs ("NCPDP") Standard Claims Billing Tape Format showing each prescription for a Product, and where applicable each prescription for Drugs dispensed by a Participating Provider to a Beneficiary for which Customer seeks a Rebate hereunder.

## REBATE TERMS

1. **Prices.** All Products eligible under this agreement shall be sold by Supplier to Distributors at the DLP in effect at the time of sale. Supplier may change the DLP of any Product at any time and from time-to-time.

2. **Rebate Eligibility**
   a. Supplier shall pay to Customer the Rebates described on the Rebate Schedule, with respect to each Product dispensed to a Beneficiary under a Benefit if and only if such Product is included on Formulary with Equal Status at minimum unless specifically provided otherwise herein.

   b. Failure to meet the performance requirements with respect to a specific Plan and/or Product shall not affect the Rebates otherwise payable with respect to other Plans and/or Products provided that all reports provided to Supplier, exclude the data, including Units Utilized of non-compliant Products, for any Plan and/or Product that is not in compliance with the terms and conditions of this Agreement.

3. **Changes to Defined Product Markets**
   a. Supplier retains the right to define or redefine any Defined Product Market based upon:
      i. the entry of a Drug into the market,
      ii. the removal/discontinuation of a Drug from the market,
      iii. a change in the indication of any Drug, or
      iv. a modification by Supplier of their view of competitive Drugs against which Supplier's Products compete.

   b. Any changes to Defined Product Markets will reflect Supplier's standard definition, rather than a specific definition with regard to Customer or this Agreement.

   c. If there is a change in a Product's Defined Product Market, Supplier shall provide Customer with the revised Defined Product Market at minimum 30 days before the start of the calendar quarter in which such change takes effect. Each quarterly revision of the Defined Product Market shall contain a summary of changes from the previous version.

4. **Rebate Policies**
   a. Rebates shall be paid on a calendar quarter basis, the first and last quarters may be less than a full calendar quarter.

   b. The aggregate Rebate for each calendar quarter shall be paid by Supplier to Customer for each calendar quarter within 60 days after receipt by Supplier of all reports from Customer for such quarter as required by the **Reports, Record Keeping and Audit** provision herein. Notwithstanding the previous sentence, calculation and payment of the first quarter's rebate may take longer due to initial loading requirements. Customer may provide baseline reports upon signing this Agreement to expedite this process.

   c. Supplier will provide a summary of the rebate calculations and the revelent National Market Share to Customer along with the rebate payment.

   d. Any Rebates paid on basis of Formulary Status or specific intervention shall be paid by Supplier after Customer has fulfilled such activity.

5. **Benefits and Beneficiaries Eligibility.** Rebates or any other form of incentives shall not be paid for transactions involving:

   a. Benefits provided or Beneficiaries residing outside of the fifty United States and the District of Columbia;

   b. Plans for which Customer acts as a Claims Processor only;

   c. Benefits provided on behalf of a Plan Sponsor where Customer does not develop, implement and control the formulary or Benefits delivered without a signed formulary management agreement in place between Customer and the Plan sponsor.

   d. Utilization by Beneficiaries for which Supplier is obligated to pay Rebates under prior agreements with commercial third parties or under any Federal or State government non-capitated benefit program including but not limited to Medicare or Medicaid, or

   e. Claims for utilization submitted later than 180 days after the end of a calendar quarter.

6. **Reports, Record Keeping and Audit**
   a. To allow Supplier to calculate the amount of Rebates, Customer shall submit reports to Supplier as specified in this section. The reports shall be transmitted by magnetic tape or electronic data transfer.

   b. Customer shall provide Supplier with the following reports within 60 days after the end of each calendar quarter. Notwithstanding the foregoing, Customer is under no obligation to provide any confidential patient information to Supplier.
      i. UTILIZATION REPORT,
      ii. MARKET SHARE REPORT,

iii. LIST OF PLANS AND BENEFICIARIES in the format illustrated by the corresponding Exhibit.

c. Customer warrants the accuracy of all reports submitted pursuant to this Agreement and that Customer is in compliance with all interventional and formulary management requirements herein.

d. Customer must at all times maintain the computer systems capability to prepare the reports listed in this section and to accurately track the Beneficiary, Benefit, Product and Participating Provider information necessary to implement this Agreement.

e. During the term of this Agreement and for a period of three (3) years following the date of dispensing of Products by Participating Providers, Customer shall keep and maintain accurate records with respect to the dispensing of Products by Participating Providers reported by Customer pursuant to this Agreement.

f. Supplier shall have the right, upon reasonable notice and during regular business hours, to audit the Customer's books and records to determine the accuracy of all reports and claims submitted and compliance with this Agreement. Such audits shall be limited to one in any twelve-month period and any request for audit must be made not later than twenty-four months after the close of the contract year relevant to such report or claim.

7. **Own Use.** Customer warrants that all Products for which a Rebate will be claimed hereunder will be dispensed for use by Beneficiaries under Customer's Plans.

## PRODUCT SPECIFIC TERMS

Supplier's obligation to pay Rebates with respect to the Products below shall be subject to these Product Specific Terms.

**Nondialysis use** PROCRIT® (Epoetin alfa) is promoted for nondialysis use only. Supplier will not honor Rebate payments associated with this contract, for any purchases made by Customer, for any Epoetin alfa usage by patients receiving dialysis treatment. Dialysis Centers are excluded from receiving rebates for PRCOCRIT under this agreement.

Supplier may discontinue or modify any Product at any time.

## GENERAL PROVISIONS

1. **Changes In Products** If the regulatory status of a Product changes, e.g. from "prescription" to "over-the-counter," then Supplier may delete that Product from the Product List by notice to Customer. Supplier may discontinue or modify any Product at any time.

2. **Term** The term of this Agreement is set forth on the first page hereof. Customer or Supplier may terminate this Agreement earlier by giving 30 days' notice to the other party. The provisions of these General Provisions shall survive termination of this Agreement.

3. **Notices** Any notice given in connection with this Agreement shall be sufficient if in writing and delivered by messenger or sent by postage prepaid mail or by facsimile to the address of the recipient as set forth on the first page of this Agreement or as changed by the recipient by notice given hereunder. Notices or communications shall be effective when received by or otherwise known to the recipient or its legal representative. This methods of delivery described above are not intended to be exclusive, and any notice actually received shall be sufficient.

4. **Entire Agreement** This Agreement, including all of the sections and attachments listed in the Table of Contents, constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior negotiations, agreements and understandings between the parties, whether oral or in writing, concerning the subject matter hereof. This Agreement may be modified only by an amendment signed by Customer and Supplier in the manner described in the Execution provision herein. The terms of any purchase order, invoice or similar document used to implement this Agreement shall not modify and shall be subject to this Agreement.

5. **Assignment** Neither Customer nor Supplier may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other. For purposes of this provision, assignment shall include any assignment by operation of law and any change in control of Customer or Supplier.

6. **Relationship of Parties.** The relationship of Customer to Supplier is that of independent contractor. This Agreement does not create a partnership, association, or other business entity. Neither Customer nor Supplier has the right to bind the other.

7. **No Third Party Beneficiaries** Unless specifically provided elsewhere herein, nothing in this Agreement is intended to benefit any person or entity not a party hereto.

8. **Publicity** Neither Customer nor Supplier shall permit or generate any publicity, advertising or promotion concerning this Agreement without the prior written consent of the other.

9. **Confidentiality** Neither Customer nor Supplier shall use information contained in this Agreement for any purpose not contemplated by this Agreement, and each shall restrict access to this Agreement and to information exchanged hereunder to personnel within its organization who need such access in order to perform their duties.

10. **Legal Changes** If any governmental entity shall enact or amend a law or adopt or amend a regulation, or if any governmental entity or court of competent jurisdiction shall adopt or amend an interpretation of a law or regulation, or if a judgment/award is rendered in litigation/arbitration, that has the effect of (a) prohibiting any right or obligation under this Agreement, (b) making any such right materially less valuable or any such obligation materially more burdensome, or (c) changing materially the economic conditions underlying any portion of this agreement, then such person affected may upon notice hereunder terminate immediately such right or obligation or portion of this Agreement insofar as such law, regulation or interpretation judgment or award applies.

11. **Force Majeure** Noncompliance with any obligation under this Agreement for reasons of force majeure (such as: acts, regulations or laws of any government; war or civil commotion; destruction of production facilities or materials; fire, earthquake or storm; labor disturbances; failure of public utilities or common carriers; and any other causes beyond the reasonable control of the entity affected) shall not constitute a breach of this Agreement.

12. **Pricing and Discount Disclosure**

a. Customer and Participants are hereby advised that they are obligated to: 1) fully and accurately disclose the cost of all Products purchased hereunder – including any discounts, rebates, or other price reductions – in cost reports or claims for reimbursement by Customer and Participants to Medicare, Medicaid, or other health care programs requiring such disclosure, and 2) provide such documentation to representatives of the Secretary of the Department of Health and Human Services and state agencies upon request.

b. Unless noted otherwise, the value of any Product listed as $0.00 on any invoice may constitute a discount which should also be evaluated by Customer and Participants when filing such reports.

c. C. The value of any item which is designated as or known to Customer or Participants to constitute a sample should not be included as a discount for cost-reporting purposes and no reimbursement for such items should be sought from third party payers.

d. Customer and Participants are strongly urged to retain this Agreement, invoices and any later documentation provided by Supplier regarding the existence and amounts of discounts, rebates, or other price reductions.

e. Customer and Participants may request additional information from Supplier in order to meet their reporting or disclosure obligations by writing to the address in the Introduction.

13. **Execution** This Agreement will not be considered valid until all required signatures as indicated below have been affixed.

14. **DISPUTE RESOLUTION** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. THE ARBITRATION SHALL BE HELD IN NEW JERSEY AND THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE LAW OF NEW JERSEY, EXCEPT THAT THE INTERPRETATION AND ENFORCEMENT OF THIS ARBITRATION PROVISION SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT. THE ARBITRATOR SHALL NOT AWARD ANY PUNITIVE, EXEMPLARY, MULTIPLIED OR CONSEQUENTIAL DAMAGES, AND EACH ENTITY BOUND HEREBY IRREVOCABLY WAIVES ANY RIGHT TO SEEK SUCH DAMAGES IN ARBITRATION OR IN JUDICIAL PROCEEDINGS. THE PARTIES AGREE TO COMPLETE ALL ARBITRATION PROCEEDINGS WITHIN SIX MONTHS OF THE INITIATION OF THE ARBITRATION.

**SIGNATURES**

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their duly authorized officers or representatives.

| **Ortho Biotech Products, L.P.** | **Keystone Mercy** |
|---|---|
| [signature] 5/3/01 | Destin Tesani 5/1/01 |
| Thomas C. Hiriak **Date**<br>**Director, Strategic Accounts** | **[Customer Name & Title] Date**<br>VP Pharmacy Services |

# EXHIBIT A: REBATE SCHEDULE

**GENERAL NOTES**

1. Rebates shall be earned by Customer upon Customer's performance meeting the conditions of the Product Specific Notes described below and all other applicable conditions in this Agreement.

**PRODUCT-SPECIFIC NOTES**

1. Customer shall be eligible to earn a 2% Quarterly Volume Rebate providing the following terms and conditions are met:

   a. PROCRIT must be a reimbursed benefit, at minimum. PROCRIT is promoted for non-dialysis use only. Supplier will not honor payments of any incentives (including prime vendor discounts or volume rebates) and/or fees associated with this Agreement, for any purchases or reimbursements made by Customer, for any epoetin alfa usage by patients receiving dialysis treatment. Dialysis Centers are excluded from receiving discounts or rebates for PROCRIT under this Agreement. The parties acknowledge that there are no incentives, fees or reimbursement for PROCRIT for dialysis use under this Agreement.

   b. Customer maintains quarterly PROCRIT utilization (in dollars) as indicated in the table below:

| | Year 1 | Year 2 | Year 3 |
|---|---|---|---|
| ~~Quarterly~~ Annual PROCRIT Utilization Requirement | ~~$1,272,920~~ 900,000 | ~~$1,425,670~~ 1,000,000 | ~~$1,568,240~~ 1,100,000 |

   c. Customer and Supplier agree that the PROCRIT Volume Rebate described above will be replaced with a two percent (2%) market share based rebate immediately upon a competing erythropoietic agent obtaining a respective FDA approved non-dialysis indication. The Market Share Rebate will be earned by Customer when PROCRIT market share within all nondialysis uses equals or exceeds National Market Share within the Defined Product Market as defined by Supplier and PROCRIT is listed as the preferred formulary erythropoietic agent for nondialysis use.

   d. To the extent Customer receives a competitive offer from another erythropoietic agent, Customer shall provide Supplier the opportunity to match said competing offer. Upon Supplier matching said offer, Customer will maintain the market share agreement with Supplier.

   e. Customer shall provide Supplier with end-user utilization data on a quarterly basis to the following address: Johnson & Johnson Healthcare Systems, 425 Hoes Lane, Piscataway, NJ 08855-6800, Payments Dept.

**EXHIBIT B: PRODUCT LIST**

| NDC | Product | Generic Description | Strength | How Supplied | Selling Unit of Measure |
|---|---|---|---|---|---|
| 59676-302-01 | PROCRIT | Epoetin alfa | 2,000 u/1ml | 1ml vials | 6 |
| 59676-303-01 | PROCRIT | Epoetin alfa | 3,000 u/1ml | 1ml vials | 6 |
| 59676-304-01 | PROCRIT | Epoetin alfa | 4,000 u/1ml | 1ml vials | 6 |
| 59676-310-01 | PROCRIT | Epoetin alfa | 10,000 u/1ml | 1ml vials | 6 |
| 59676-312-01 | PROCRIT | Epoetin alfa | 10,000 u/2ml | 2ml vials | 6 |
| 59676-320-01 | PROCRIT | Epoetin alfa | 20,000 u/1ml | 1ml vials | 6 |
| 59676-340-01 | PROCRIT | Epoetin alfa | 40,000 u/1ml | 1ml vials | 4 |
| 59676-302-02 | PROCRIT | Epoetin alfa | 2,000 u/ml | 1ml vials | 25 |
| 59676-303-02 | PROCRIT | Epoetin alfa | 3,000 u/ml | 1ml vials | 25 |
| 59676-304-02 | PROCRIT | Epoetin alfa | 4,000 u/ml | 1ml vials | 25 |
| 59676-310-02 | PROCRIT | Epoetin alfa | 10,000 u/ml | 1ml vials | 25 |

**EXHIBIT C: LIST OF PLANS AND BENEFICIARIES**

In the LIST OF PLANS AND BENEFICIARIES data report, Customer shall provide Supplier with a current list of Plans and number of Beneficiaries in the following format:

| PLAN NAME | IDENTIFICATION (e.g. DEA#) | NEW PLAN (✓) | ADDRESS | TOTAL BENEFICIARIES FOR {PERIOD} |
|---|---|---|---|---|
| | | | | |

List the Plan(s) that have been terminated since last submission of report:

| PLAN NAME | IDENTIFICATION (e.g. DEA #) | ADDRESS | TOTAL BENEFICIARIES FOR {PERIOD} |
|---|---|---|---|
| | | | |

**Addendum from the Customer**

The parties agree and acknowledge that all Keystone Mercy Health Plan formulary designations and other intervention or management programs have been and will continue to be designed and implemented based upon, and subject to, independent clinical and efficiency considerations and not upon, or in return for, the discounts and/or rebates contemplated by this Agreement. Accordingly, notwithstanding any other provision of this Agreement, Keystone Mercy Health Plan may at any time in its discretion in accordance with its own clinical and management judgement make modifications to its formularies and other pharmacy benefit program; provided that if such modifications result in such programs failing to otherwise comply with the applicable requirements herein, then discounts and/or rebates shall no longer be payable beginning the quarter in which such non-compliance commenced. Keystone Mercy Health Plan shall develop the content of all communications regarding pharmaceuticals independent of the influence or control of the manufacturer except as the parties may otherwise agree in writing.