DX 2765 Referenced in Pearson Trial Decl.

## REBATE AGREEMENT BETWEEN

| CUSTOMER | | SUPPLIER | |
|---|---|---|---|
| Customer Name | Internal Medicine Associates | Ortho Biotech Products, L.P. | |
| Street Address | Landmark Med Ctr. 550 Landmark Ave PO Box 550 | 700 US Highway 202 South | |
| City, State | Bloomington, IN 47402 | Raritan, New Jersey 08869 | |
| Phone No: | 812-335-6903 | Phone No.: | (908) 704-5133 |
| Fax No: | 812-335-3251 | Fax No.: | (908) 704-5346 |
| Att: | Pat Wallis | Att: | Elaine Kling |
| Effective Date: | April 1, 2001 | | |
| End Date: | March 31, 2004 | | |

## TABLE OF CONTENTS

| PAGE | | PAGE |
|---|---|---|
| REBATE AGREEMENT BETWEEN ........ 1 | | SIGNATURES ........ 3 |
| TABLE OF CONTENTS ........ 1 | | EXHIBIT A1: VOLUME-BASED REBATE SCHEDULE ........ 4 |
| DEFINITIONS ........ 1 | | EXHIBIT A2: MARKET SHARE-BASED REBATE SCHEDULE 5 |
| REBATE TERMS ........ 1 | | EXHIBIT B: PRODUCT LIST ........ 6 |
| PRODUCT SPECIFIC TERMS ........ 2 | | EXHIBIT C: LIST OF PARTICIPATING MEMBERS ........ 7 |
| GENERAL PROVISIONS ........ 2 | | EXHIBIT D: PHYSICIAN DISTRIBUTOR ........ 8 |

## DEFINITIONS

In this Agreement, the following terms shall have the meanings assigned to them below whenever they are printed with initial capitalization.

"**Baseline Sales Volume**" shall mean Sales Volume during the twelve (12) months immediately proceeding this Agreement Effective Date.

"**Defined Product Market**" shall mean the then current list of Drugs included in the therapeutic categories in which Product competes as published and distributed every calendar year by Supplier.

"**DLP**" shall mean Distributor List Price. For purposes of Rebate calculation, DLP shall mean Distributor List Price in effect on the first day of the relevant calendar year.

"**Drug**" shall mean any pharmaceutical, whether manufactured by Supplier or by any third party.

"**Maintain Sales Volume**" shall mean that current contract year Sales Volume meets or exceeds all previous contract year Sales Volumes and Baseline Sales Volume.

"**NDC**" shall mean National Drug Code.

"**Participating Member**" shall mean a physician or a name of a group of physicians whose Product purchases will be included in the calculation of Rebate payments.

"**Product**" shall mean PROCRIT.

"**Product Credits**" shall mean the total amount of Rebate credited to Customer for a calendar year at the Physician Distributor listed in Exhibit D.

"**Product Market Share**" shall mean the sum total of Product units utilized to patients for a year divided by the sum total of units utilized to patients for all Drugs in the relevant Defined Product Market.

"**Rebate**" shall mean a retrospective reimbursement based on the utilization of Product, to be credited to Customer under this Agreement.

"**Right-of-First-Refusal (ROFR)**" shall mean the following:
a. Customer and OBI will discuss the transition from a volume-based agreement to a market share-based agreement immediately upon a competing erythropoietic agent obtaining a respective FDA – approved nondialysis indication – plus
b. Customer will provide OBI the opportunity to match any competing offer for a market share agreement. Upon OBI matching said offer, Customer will enter into the market share agreement with OBI.

"**Sales Growth**" shall mean a specific Sales Volume Performance Measurement for which a Customer can earn a Rebate.

"**Sales Volume**" shall mean the net purchases (List Price minus all discounts and rebates) of Product during a twelve month period of time.

"**Units Utilized**" shall mean the number of units dispensed to Patients for a given period.

"**Utilization Report**" shall mean a report, of the Units Utilized of each Drug in the Defined Product Market, including all brands or generics within the therapeutic category.

## REBATE TERMS

1. **Prices.** All Products eligible under this agreement shall be sold by Supplier to Distributors at the DLP in effect at the time of sale. Supplier may change the DLP of any Product at any time and from time-to-time.

2. **Rebate Eligibility**
   a. Supplier shall pay to Customer the Rebates described in Exhibit A1 upon Customer's achievement of the performance measurements. Rebates shall be calculated off net purchases of Product.
   b. Upon mutual agreement of Customer and Supplier to exercise the Right-of-First-Refusal clause, Rebate Eligibility will convert to those requirements listed in Exhibit A2. Rebates shall be calculated off net purchases of Products.
   c. All Rebate payments will be provided in Product credits loaded to the Physician Distributor listed in Exhibit D.
   d. Rebate payments will only be calculated against purchases made by Participating Members listed in Exhibit C.

DEFENDANT'S EXHIBIT 2765

Page 1 of 9

HIGHLY CONFIDENTIAL

MDL-OBI00031940

3. **Changes to Defined Product Markets**
   a. Upon conversion to the market share rebate described in Exhibit A2, Supplier retains the right to define or redefine any Defined Product Market based upon:
      i. the entry of a Drug into the market,
      ii. the removal/discontinuation of a Drug from the market,
      iii. a change in the indication of any Drug, or
      iv. a modification by Supplier of their view of competitive Drugs against which Supplier's Products competes.
   b. If there is a change in a Product's Defined Product Market, Supplier shall provide Customer with the revised Defined Product Market at minimum 30 days before the start of the contract year in which such change takes effect.

4. **Rebate Policies**
   a. During the use of the volume rebate described in Exhibit A1, Rebates shall be calculated on purchases made by Participating Members and reported to Supplier by Physician Distributors. Rebates shall be paid on a contract year basis.
   b. The aggregate Rebate for each contract year shall be paid by Supplier to Customer within 60 days after receipt by Supplier of all reports from Customer for such year as required by the **Reports, Record Keeping and Audit** provision herein.
   c. Supplier will provide a summary of the rebate calculations along with the rebate payment.
   d. All Product Credits utilized by Customer during the contract year will be included in the calculation of Sales Volume and Sales Growth numbers.

5. **Participating Member Eligibility.** Rebates shall not be paid for transactions involving:
   a. Participating Members residing outside of the fifty United States and the District of Columbia,
   b. Utilization by Participating Members for which Supplier is obligated to pay Rebates under prior agreements with commercial third parties or under any Federal or State government non-capitated benefit program including but not limited to Medicare or Medicaid, or
   c. Claims for utilization submitted later than 180 days after the end of a contract year.

6. **Reports, Record Keeping and Audit**
   a. During the use of the volume rebate described in Exhibit A1, Customer shall have no responsibility for submitting reports.
   b. During the use of the market share rebate described in Exhibit A2, Customer shall provide Supplier with a Utilization Report within 60 days after the end of each contract year. Notwithstanding the foregoing, Customer is under no obligation to provide any confidential patient information to Supplier.
   c. Customer warrants the accuracy of all reports submitted pursuant to this Agreement.
   d. During the term of this Agreement and for a period of three (3) years following the date of dispensing of Products by Participating Members, Customer shall keep and maintain accurate records with respect to the dispensing of Products by Participating Members reported by Customer pursuant to this Agreement.
   e. Supplier shall have the right, upon reasonable notice and during regular business hours, to audit the Customer's books and records, to determine the accuracy of all reports and claims submitted and compliance with this Agreement.

7. **Own Use.** Customer warrants that all Products for which a Rebate will be claimed hereunder will be dispensed for use by Participating Members only.

---

### PRODUCT SPECIFIC TERMS

Supplier's obligation to pay Rebates with respect to Product shall be subject to these Product Specific Terms:

1. **Nondialysis Use** PROCRIT® (Epoetin alfa) is promoted for nondialysis use only. Supplier will not honor Rebate payments associated with this contract for any purchases made by Customer, for any Epoetin alfa usage by patients receiving dialysis treatment. Dialysis Centers are excluded from receiving rebates for PROCRIT under this agreement.
2. Supplier may discontinue or modify any Product at any time.

---

### GENERAL PROVISIONS

1. **Changes in Products** Supplier may discontinue or modify any Product at any time.

1. **Term** The term of this Agreement is set forth on the first page hereof. Either party may terminate this Agreement earlier by giving 30 days' notice to the other party. The provisions of these General Provisions shall survive termination of this Agreement.

2. **Notices** Any notice given in connection with this Agreement shall be sufficient if in writing and delivered by messenger or sent by postage prepaid mail or by facsimile to the address of the recipient as set forth on the cover page to this Agreement or as changed by the recipient by notice given hereunder. Notices or communications shall be effective when received by or otherwise known to the recipient or its legal representative. This provision is not intended to be exclusive, and any notice actually received shall be sufficient.

3. **Entire Agreement** This Agreement, including all of the sections and attachments listed in the Table of Contents, constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior negotiations, agreements and understandings between the parties, whether oral or in writing, concerning the subject matter hereof. This Agreement may be modified only by an amendment signed by Customer and Supplier in the manner described in the Execution provision herein. The terms of any purchase order, invoice or similar

HIGHLY CONFIDENTIAL                                                                                              MDL-OBI00031941

document used to implement this Agreement shall not modify and shall be subject to this Agreement.

4. **Assignment** Neither party may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other party. For purposes of this provision, assignment shall include any assignment by operation of law and any change in control of a party.

5. **Relationship of Parties.** The relationship of Customer to Supplier is that of independent contractor. This Agreement does not create a partnership, association, or other business entity. Neither party has the right to bind the other.

6. **No Third Party Beneficiaries** Unless specifically provided elsewhere herein, nothing in this Agreement is intended to benefit any person or entity not a party hereto.

7. **Publicity** Neither party shall permit or generate any publicity, advertising or promotion concerning this Agreement without the prior written consent of the other party.

8. **Confidentiality** Neither party shall use information contained in this Agreement for any purpose not contemplated by this Agreement, and each party shall restrict access to this Agreement and to information exchanged hereunder to personnel within its organization who need such access in order to perform their duties. The parties agree that the information contained in or related to the implementation of this agreement shall not be shared with any individuals or organizations not a signator to this agreement. The term "party" includes employees or consultants required to effectively implement this agreement as long as they individually have signed confidentiality agreements. Violation of this clause may lead to immediate termination of this agreement.

9. **Legal Changes** If any governmental entity shall enact or amend a law or adopt or amend a regulation, or if any governmental entity or court of competent jurisdiction shall adopt or amend an interpretation of a law or regulation, or if a judgment/award is rendered in litigation/arbitration, that has the effect of (a) prohibiting any right or obligation of a party under this Agreement, (b) making any such right materially less valuable or any such obligation materially more burdensome to a party, or (c) changing materially the economic conditions underlying any portion of this agreement, then such party may upon notice to the other party terminate immediately such right or obligation or portion of this Agreement insofar as such law, regulation or interpretation/judgment or award applies.

In the specific example of changes in published Medicare usage guidelines for PROCRIT, Supplier reserves the right to adjust, at its sole discretion, the Maintain Sales Volume and Sales Growth Performance Measurements described in the Rebate Schedule of this Agreement. Any adjustment in the hurdle would reflect substantial changes in PROCRIT reimbursement rates and coverage patterns. Any and all changes in Performance Measurements will be communicated to Customer in writing.

10. **Force Majeure** Noncompliance with any obligation under this Agreement for reasons of force majeure (such as: acts, regulations or laws of any government; war or civil commotion; destruction of production facilities or materials; fire, earthquake or storm; labor disturbances; failure of public utilities or common carriers; and any other causes beyond the reasonable control of the party affected) shall not constitute a breach of this Agreement.

11. **Execution** This Agreement will not be considered valid until all required signatures as indicated below have been affixed.

12. **Pricing and Discount Disclosure**

   a. Customer and Participants are hereby advised that they are obligated to:

   i. fully and accurately disclose the cost of all Products purchased hereunder – including any discounts, rebates, or other price reductions – in cost reports or claims for reimbursement by Customer and Participants to Medicare, Medicaid, or other health care programs requiring such disclosure, and

   ii. provide such documentation to representatives of the Secretary of the Department of Health and Human Services and state agencies upon request.

   b. Unless noted otherwise, the value of any Product listed as $0.00 on any invoice may constitute a discount which should also be evaluated by Customer and Participants when filing such reports.

   c. The value of any item which is designated as or known to Customer or Participants to constitute a sample should not be included as a discount for cost reporting purposes and no reimbursement for such items should be sought from third party payers.

   d. Customer and Participants are strongly urged to retain this Agreement, invoices, and any later documentation provided by Supplier regarding the existence and amounts of discounts, rebates, or other price reductions.

   e. Customer and Participants may request additional information from Supplier in order to meet their reporting or disclosure obligations by writing to the address in the introduction.

13. **DISPUTE RESOLUTION** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. THE ARBITRATION SHALL BE HELD IN NEW JERSEY AND THE ARBITRATOR SHALL APPLY THE SUBSTANTIVE LAW OF NEW JERSEY, EXCEPT THAT THE INTERPRETATION AND ENFORCEMENT OF THIS ARBITRATION PROVISION SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT. THE ARBITRATOR SHALL NOT AWARD ANY PARTY PUNITIVE, EXEMPLARY, MULTIPLIED OR CONSEQUENTIAL DAMAGES, AND EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT TO SEEK SUCH DAMAGES IN ARBITRATION OR IN JUDICIAL PROCEEDINGS. THE PARTIES AGREE TO COMPLETE ALL ARBITRATION PROCEEDINGS WITHIN SIX MONTHS OF THE INITIATION OF THE ARBITRATION.

HIGHLY CONFIDENTIAL

MDL-OBI00031942

## SIGNATURES

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their duly authorized officers or representatives.

| SUPPLIER | | CUSTOMER | |
|---|---|---|---|
| [signature] | 4/30/01 | [signature] Latus E Wallis | |
| Thomas C. Hirlak | Date | [Customer Name & Title] | Date |
| Director, Strategic Accounts | | | |



HIGHLY CONFIDENTIAL                                              MDL-OBI00031943

Internal Medicine Associates

EXHIBIT A1: VOLUME-BASED REBATE SCHEDULE

| CONTRACT YEAR | PERFORMANCE REBATES | | |
|---|---|---|---|
| | Performance Measurement | Contract Year Sales Volume | Rebate Percentage |
| 1 | ROFR + Maintain Sales Volume | $50,000 – 700,000<br>$700,001 – 3 Million<br>$3 Million+ | 0.25%<br>0.50%<br>0.75% |
| | Sales Growth | Sales Over $60,000 | 0.25% |
| 2 | ROFR + Maintain Sales Volume | $50,000 – 700,000<br>$700,001 – 3 Million<br>$3 Million+ | 0.25%<br>0.50%<br>0.75% |
| | Sales Growth | Sales Over $67,200 | 0.25% |
| 3 | ROFR + Maintain Sales Volume | $50,000 – 700,000<br>$700,001 – 3 Million<br>$3 Million+ | 0.25%<br>0.50%<br>0.75% |
| | Sales Growth | Sales Over $73,920 | 0.25% |

**GENERAL NOTES**

1. A specific Rebate percent shall be associated with each Performance Measurement and such Rebate percent shall be earned by Customer upon Customer's performance meeting the conditions of such Performance Measurement and all other applicable conditions in this Agreement.

2. A Performance Rebate multiplier is available to Customer in Contract Year 2 and 3.
   a. Year 2: If the ROFR + Maintain Sales Volume Performance Measurements are achieved in Contract Years 1 and 2, then the Rebate Percentages for Year 2 will be multiplied by 1.5. If the earned Rebate Percentage during Year 2 is 0% but Customer's total contract purchases exceed the sum of the sales growth hurdles to date, then Customer will receive the following rebate percentages based upon Contract Year 2 Sales Volume.

| CONTRACT YEAR 2 SALES VOLUME | REBATE PERCENTAGE |
|---|---|
| $50,000 – 700,000 | 0.5% |
| $700,001 – 3 Million | 0.75% |
| $3 Million+ | 1.0% |

   b. Year 3: If the ROFR + Maintain Sales Volume Performance Measurements are achieved in all Contract Years, then the Rebate Percentage for Year 3 will be doubled. If the ROFR + Maintain Sales Volume Performance Measurements are achieved in two out of the three Contract Years, then the Rebate Percentage for Year 3 will be multiplied by 1.5. If the earned Rebate Percentage during Year 3 is 0% but Customer's total contract purchases exceed the sum of the sales growth hurdles to date, then Customer will receive the following rebate percentages based upon Contract Year 3 Sales Volume.

| CONTRACT YEAR 3 SALES VOLUME | REBATE PERCENTAGE |
|---|---|
| $50,000 – 700,000 | 0.5% |
| $700,001 – 3 Million | 0.75% |
| $3 Million+ | 1.0% |

HIGHLY CONFIDENTIAL

MDL-OBI00031944

**EXHIBIT A2: MARKET SHARE-BASED REBATE SCHEDULE**

| CONTRACT YEAR SALES VOLUME | MARKET SHARE | REBATE % |
|---|---|---|
| $50,000 – 700,000 | Equal to or greater than 85% | 1.0% |
| $700,001 – 3 Million | Equal to or greater than 85% | 1.5% |
| $3 Million+ | Equal to or greater than 85% | 2.0% |

**GENERAL NOTES**

1. A specific Rebate percent shall be associated with each Performance Tier, and such Rebate percent shall be earned by Customer upon Customer's performance meeting the conditions of such Performance Tier and all other applicable conditions in this Agreement.

2. **Nondialysis Use** PROCRIT® (Epoetin alfa) is promoted for nondialysis use only. Supplier will not honor Rebate payments associated with this contract, for any purchases made by Customer, for any Epoetin alfa usage by patients receiving dialysis treatment. Dialysis Centers are excluded from receiving rebates for PROCRIT under this agreement.



HIGHLY CONFIDENTIAL                                                                                           MDL-OBI00031945

**EXHIBIT B: PRODUCT LIST**

| NDC | Product | Generic Description | Strength | How Supplied | Selling Unit of Measure |
|---|---|---|---|---|---|
| 59676-302-01 | PROCRIT | Epoetin alfa | 2,000 u/1ml | 1ml vials | 6 |
| 59676-303-01 | PROCRIT | Epoetin alfa | 3,000 u/1ml | 1ml vials | 6 |
| 59676-304-01 | PROCRIT | Epoetin alfa | 4,000 u/1ml | 1ml vials | 6 |
| 59676-310-01 | PROCRIT | Epoetin alfa | 10,000 u/1ml | 1ml vials | 6 |
| 59676-312-01 | PROCRIT | Epoetin alfa | 10,000 u/2ml | 2ml vials | 6 |
| 59676-320-01 | PROCRIT | Epoetin alfa | 20,000 u/1ml | 1ml vials | 6 |
| 59676-340-01 | PROCRIT | Epoetin alfa | 40,000 u/1ml | 1ml vials | 4 |
| 59676-302-02 | PROCRIT | Epoetin alfa | 2,000 u/ml | 1ml vials | 25 |
| 59676-303-02 | PROCRIT | Epoetin alfa | 3,000 u/ml | 1ml vials | 25 |
| 59676-304-02 | PROCRIT | Epoetin alfa | 4,000 u/ml | 1ml vials | 25 |
| 59676-310-02 | PROCRIT | Epoetin alfa | 10,000 u/ml | 1ml vials | 25 |



Confidential

Page 7 of 9

HIGHLY CONFIDENTIAL

MDL-OBI00031946

**EXHIBIT C: LIST OF PARTICIPATING MEMBERS**

In the LIST OF Participating Members, Customer and Supplier will identify the physicians whose PROCRIT purchases will count towards the performance hurdles and on whose purchases performance rebates will be paid:

| PHYSICIAN NAME | IDENTIFICATION (e.g. DEA#) | ADDRESS |
|---|---|---|
| Allen Miller | AM8281165 | Internal Medicine Associates Bloomington, IN |
| Jacqueline Joyce | BJ5227992 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

In addition, Customer and Supplier will identify the name of practices whose PROCRIT purchases will count towards the performance hurdles and on whose purchases performance rebates will be paid:

| PRACTICE NAME | IDENTIFICATION (e.g. DEA #) | ADDRESS |
|---|---|---|
| | | |

Page 8 of 9

Confidential

HIGHLY CONFIDENTIAL                                                          MDL-OBI00031947

**EXHIBIT D: PHYSICIAN DISTRIBUTOR**

In Exhibit D, Customer shall provide Supplier with the name of the physician distributor at which Customer wants all rebates, in the form of PROCRIT product credits, reported and paid.

Name of Physician Distributor: _Oncology Supply_

Name of Secondary Physician Distributor: _OTN_

HIGHLY CONFIDENTIAL

MDL-OBI00031948