UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL CLASS ACTIONS | Judge Patti B. Saris |

## DECLARATION OF CARTER L. DUTCH

I, CARTER L. DUTCH, hereby declare:

### Background

1.  I have personal knowledge of the facts stated in this Declaration, and they are true and correct. I am competent to testify about the facts stated in this Declaration.

2.  I reside at 7 Prospect Place in Springfield, New Jersey.

3.  I have been employed by Schering Corporation ("Schering") since 1998, and I am currently the National Director of Corporate Accounts (East).

### Education

4.  I received a Bachelor of Science in Biological Sciences from the University of Pittsburgh in 1990. I then attended the Graduate School of Industrial Administration and the Heinz School of Public Policy at Carnegie Mellon University, where I received a Masters of Science in Private and Public Management, with a Finance Concentration, in 1992.

5.  From 1988 to 1992, while I was attending school, I worked as a microbiologist at the University of Pittsburgh Medical Center. I also volunteered as a liver transplant and research technician.

## Professional Experience

6. Before coming to Schering in 1998, I held a variety of jobs as a financial analyst. From 1992 to 1995, I worked as a Budget Examiner in the Health and Income Maintenance Division of the Executive Office of the President, Office of Management and Budget.

7. From 1995 to 1998, I worked as a Senior Financial Analyst for two different health systems. worked for the University of Chicago Health System from 1995 to 1997. In that position, I participated in financial analysis of the development of physician networks. I also assisted in contracting for physician reimbursement with managed care organizations. That system had a Staff Model Physician Group, an affiliated hospital, a Medicaid Health Maintenance Organization ("HMO"), and a series of system-owned clinics. From 1997 to 1998, I worked as a Senior Financial Analyst in Group Health Underwriting at Prudential Healthcare, which at that time was a third-party payor.

8. In March 1998, I started at Schering as a Contract Manager for Managed Markets Finance Group (then called Contracts & Pricing). I implemented product and health management agreements with managed care organizations, assisted the Managed Markets Field Force in the preparation and presentation of business agreements with customers and senior managers, and, where necessary, worked directly with customers to complete business terms and contracts.

9. In April 2000, I became a Product Manager for Schering Marketing, focused on Managed Care. In this position, I developed, implemented, and managed comprehensive programs and services to help maximize Managed Care access and sales for various products. I helped manage a $10 million annual promotion budget, and helped develop contracting and value strategies.

10. In January 2002, I became a Director of Contracting & Rebate Administration at Schering. In this position, I had responsibility for the conception, development, and implementation of economic, pricing, and contracting strategies for Schering pharmaceutical products for all U.S. commercial markets, including HMOs, group purchasing organizations ("GPOs"), pharmaceutical benefit managers ("PBMs"), oncology wholesalers, and specialty pharmacies.

11. In May 2006, I started in my current position as National Director of Corporate Accounts (East) at Schering. I am responsible for negotiating with wholesalers, PBMs, HMOs, and retailers. I also have responsibility for working in the U.S. Managed Market Division for analyzing our contracts, reviewing rebate arrangements with commercial customers, and developing contracting strategies.

### Pricing

12. Wholesale Acquisition Cost ("WAC") is an undiscounted list price. At Schering, WAC used to be called Net Direct Price or Direct Price. It is now referred to as WAC. Schering has for years reported WAC to customers and to the industry pricing compendia.

13. WAC (Direct Price) has always been the actual price paid by Schering's full-line wholesale customers. For example, up until 2004, if a retail chain or a wholesaler purchased product directly from Schering, it would pay WAC (Direct Price), subject to an industry standard 2% prompt pay discount.

14. In 2004, Schering started negotiating Inventory Management Agreements ("IMAs") with full-line wholesale customers. A wholesale customer with an IMA received a small, additional, discount for its efforts to manage its inventory of Schering products and report regularly its inventory of Schering products to Schering. A wholesale customer with an IMA

still received less than a 5% discount from WAC from Schering, including the IMA and prompt pay discounts.

15. When I discussed sales with wholesalers, I discussed WAC (Direct Price). Average Wholesale Price ("AWP") was simply not relevant to these discussions.

### Third-Party Payors

16. In my experience, including experience gained while I worked for the University of Chicago Health Care System and Prudential Healthcare, health plans and insurers are very knowledgeable about drug prices. They have access to benefit consultants, PBMs, pricing compendia, manufacturer price lists, and other sources of pricing information. Often times, I've seen how mergers in the insurance industry pool knowledge about drug prices between companies. In addition, individuals often move from one industry participant to another, and share their knowledge as to pricing available in the market place.

17. Any third-party payor of any significance has a Schering employee from the Managed Markets Field Force assigned to call on it regularly to discuss the efficacy of Schering products and their availability to the third-party payors' members. This provides an easy point-of-entry for third-party payors to get information about Schering's WAC pricing and available discounts.

18. Many third-party payors gain information as to levels of drug prices through direct contracts with Schering or through proposals for such direct contracts. Third-party payors are always free to propose a direct contract with Schering, and most third-party payors can readily do so through Schering personnel who call on them regularly. 'It has been my observation that some third-party payors submit requests for contracts to Schering just to make sure their PBM's rates on Schering drugs are competitive. These kinds of "fishing expeditions"

are ways for even small plans to gather information.

19. Schering has had direct contracts with third-party payors, some of which were based in Massachusetts. Exhibit 2900 and 2901 are contracts that Schering had with Fallon Clinic; these contracts included prices for numerous Schering drugs, including Intron A and Proventil solution. Exhibit 2902 is a contract Schering had with Aetna Healthcare in 1998 for numerous Schering drugs, including Intron A and Proventil solution. Exhibit 2903 is a contract Schering had with Harvard Pilgrim Healthcare in 2002, which covered numerous Schering drugs like Intron A. Exhibit 2937 is a 1996 chargeback contract Schering had with Blue Cross Blue Shield, which covered numerous Schering drugs like Intron A and Proventil solution. These are fair and accurate copies of contracts, kept in the regular course of business, that Schering had with Massachusetts third-party payors. In addition, these contracts and, in particular, the discounted pricing for drugs, are typical of contracts between Schering and third-party payors.

20. At no time in my career have I have ever come across anyone who told me that he or she thought that Average Wholesale Price was an average of wholesale prices. The people I interacted with understood that Average Wholesale Price, in the branded industry, had a public and known relationship with WAC. For Schering drugs, it was known that AWP was a 20% mark-up from the list price, or WAC.

I declare under penalty of perjury that the foregoing is true and correct.

_Carter L. Dutch_

Carter L. Dutch

Executed this 17th day of November 2006 in Kenilworth, NJ.