# Exhibits Referenced in the Declaration of Debra Kane

# Part 1



## LABORATORIES

### TELEFAX TRANSMITTAL COVER SHEET

| TO: | Ina |
|---|---|
| COMPANY NAME: | First Data Book |
| FROM: | Peter Kamins |
| TELEPHONE # | (908) 298-4952 |
| TELEFAX #: | (908) 298-2436 |
| TOTAL # OF PAGES (including this page): | 3 |

Schering Laboratories
Trade Sales-K-5-2/B-6
2000 Galloping Hill Road
Kenilworth, NJ 07033

*Per your request*

FAXMASTER.DOC

HIGHLY
CONFIDENTIAL

FDB-AWP 03988

Plaintiffs' Exhibit
403
01-12257-PBS

```
SCHERING LABORATORIES                WESTERN UNION MAILGRAM
GALLOPING HILL ROAD
KENILWORTH, N.J. 07033                              UNITED STATES
                                                    POSTAL SERVICE
```

0902580001247  11/07/00        PAH1 - PAHA
EM16634

Peter Kanius
1004 Meridian Way
Yardley PA  19067-5834

DEAR CUSTOMER,

EFFECTIVE TUESDAY, NOVEMBER 07, 2000 AT 05:00 PM EDST, PRICES FOR
THE FOLLOWING SCHERING PRODUCTS WERE INCREASED. ALL ORDERS RECEIVED
AFTER 05:00 PM EDST, TUESDAY, NOVEMBER 07, 2000 WILL BE BILLED AT
THE NEW PRICES.

A PRICE PROTECTED ORDER AND A CURRENT PRICE LIST WILL BE SENT TO
YOUR BUYER SHORTLY.

| SCHERING PRODUCTS | NDC 0085 | NDP | AWP |
|---|---|---|---|
| CLARITIN D TABLETS 5MG/120MG | 0635-01 | $ 114.58 | $ 137.50 |
| CLARITIN D TABLETS 5MG/120MG | 0635-04 | 114.58 | 137.50 |
| CLARITIN D TABLETS 5MG/120MG | 0635-05 | 34.36 | 41.23 |
| CLARITIN-D 24 10MG/240MG | 1233-01 | 229.14 | 274.97 |
| CLARITIN-D 24 10MG/240MG | 1233-02 | 229.14 | 274.97 |
| CLARITIN REDITABS 30'S | 1128-02 | 70.34 | 84.41 |
| CLARITIN SYRUP 10MG/10ML | 1223-01 | 113.71 | 136.45 |
| CLARITIN TABLETS 10MG | 0458-03 | 203.34 | 244.01 |
| CLARITIN TABLETS 10MG | 0458-04 | 203.34 | 244.01 |
| CLARITIN TABLETS 10MG | 0458-05 | 60.98 | 73.19 |
| CLARITIN TABLETS 10MG | 0458-06 | 1016.61 | 1219.93 |

| ONCOLOGY PRODUCTS | NDC 0085 | NDP | AWP |
|---|---|---|---|
| INTRO A FOR INJ MULTIDOSE PEN | 1235-01 | $ 333.25 | $ 399.90 |
| INTRO A FOR INJ MULTIDOSE PEN | 1242-01 | 199.94 | 239.93 |
| INTRO A FOR INJ MULTIDOSE PEN | 1254-01 | 666.51 | 799.81 |
| INTRON A INJ PAK 10MIU HSA FRE | 1179-02 | 666.51 | 799.81 |
| INTRON A INJ 18MIU HSA FREE | 1168-01 | 199.94 | 239.93 |
| INTRON A INJ 25MIU HSA FREE | 1133-01 | 277.72 | 333.26 |
| INTRON A INJ 3MIU HSA FREE | 1184-02 | 199.94 | 239.93 |
| INTRON A INJ 5MIU HSA FREE | 1191-02 | 333.25 | 399.90 |
| INTRON A INJECTABLE 10MILLN IU | 0571-02 | 111.07 | 133.28 |
| INTRON A INJECTABLE 18MILLN IU | 1110-01 | 199.94 | 239.93 |
| INTRON A INJECTABLE 25MILLN IU | 0285-02 | 277.72 | 333.26 |

To reply by Mailgram Message, see reverse side for Western Union's toll-free number.

HIGHLY CONFIDENTIAL       FDB-AWP 03989

SCHERING LABORATORIES
GALLOPING HILL ROAD
KENILWORTH, N.J. 07033

**WESTERN UNION MAILGRAM**
UNITED STATES POSTAL SERVICE

090950001367 12/13/00    SOF1 - SOFA
EM16634

Attn Kathy Gutesell
Medi-Span, Inc
First Databank
1111 Baybill Dr Ste 350 -
San Bruno CA  94066-3056

DEAR CUSTOMER,

EFFECTIVE WEDNESDAY, DECEMBER 13, 2000 AT 5:00 PM EDST, PRICES FOR
THE FOLLOWING SCHERING PRODUCTS WERE INCREASED. ALL ORDERS RECEIVED
AFTER 5:00 PM EDST, WEDNESDAY, DECEMBER 13, 2000 WILL BE BILLED AT THE
NEW PRICES.  A PRICE PROTECTED ORDER AND A CURRENT PRICE LIST WILL
BE SENT TO YOUR BUYER SHORTLY.

| ACS PRODUCTS | NDC 0085 | WAC NDP | AWP |
|---|---|---|---|
| INTEGRILIN 75MG/10ML VIAL | 1136-01 | $148.82 | $178.58 |
| INTEGRILIN 20MG/10ML BOLUS VIAL | 1177-01 | 47.63 | 57.16 |
| INTEGRILIN 20MG/10ML VIAL | 1177-02 | 396.79 | 476.15 |

SINCERELY,

FRANK J. DILASCIA, RPH
V.P., TRADE SALES & PHARM DEVELOPMENT

MGMCOMP  20:29 EST

HIGHLY CONFIDENTIAL

FDB-AWP 03990

To reply by Mailgram Message, see reverse side for Western Union's toll-free number.

# SCHERING CORPORATION

2000 GALLOPING HILL ROAD  KENILWORTH, N.J. 07033

TELEPHONE: (908) 298-4000

March 4, 2002

Patrick Reilly
Co-Director Pharmacy Services
Fallon Clinic
100 Hartwell St.
West Boylston, MA 01583

Re: Staff Model HMO Purchase Agreement

Dear Mr. Reilly,

At the request of David Canepa, Managed Care Area Manager, Schering Corporation is pleased to send to you for your review and approval two originals of the above-referenced Purchase Agreement between Schering Corporation and Fallon Clinic Pilgrim Health Care, Inc. – Fallon Clinic Staff.

If this Purchase Agreement is acceptable to you, please arrange to have both enclosed originals executed by an authorized representative of Fallon Clinic and return same to my attention at the above address. Upon receipt of the signed agreements, I will arrange for approval and execution of both documents by an authorized representative of Schering Corporation and return one fully executed original to your attention for your files.

This letter and the enclosed Purchase Agreement do not constitute an offer subject to acceptance and the enclosed Purchase Agreement shall not become effective unless and until the Purchase Agreement is signed by Schering Corporation.

Thank you for your continued interest in the Schering/Key product line.

Sincerely,

*Jerry Ken-Kwo Hefe for Craig Masker*
Craig Masker
Manager, Contracts and Pricing

Enclosures

cc: David Canepa

Defendants' Exhibit
**2900**
01-12257 - PBS

Highly Confidential

SW0143845



# Staff Model HMO Purchase Agreement Schering Corporation

# FALLON CLINIC

Prepared for:
Fallon Clinic
100 Hartwell St.
West Boylston, MA 01583

Prepared by:
David Canepa
Managed Care Account Manager
Schering Corporation
March 4, 2002

Highly Confidential

# PURCHASE AGREEMENT

This Purchase Agreement is between Fallon Clinic, ("Fallon Clinic"), having a place of business at 100 Hartwell St., West Boylston, MA 01583 and Schering Corporation ("Schering"), a Delaware corporation, having a place of business at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033.

This Agreement sets forth the terms and conditions pursuant to which Schering will provide pricing to Fallon Clinic staff model health maintenance organization (the "Fallon Clinic Staff Model HMO") based, in part, on the actual dispensing of those Schering products specified in Exhibit B ("Products") to Eligible Members (as defined below) by the Fallon Clinic Staff Model HMO.

Fallon Clinic and Schering agree as follows:

**ARTICLE 1.    DEFINITIONS:**

1.1  "Eligible Member" as used herein shall mean an individual enrolled in the Fallon Clinic Staff Model HMO; *provided, however*, that "Eligible Members" shall not include individuals who are also enrolled in other organizations that either (i) purchase any of the Products other than pursuant to this Agreement; or (ii) receive rebates based on utilization of the Products by any such individual.

1.2  "Formulary" as used herein shall mean a listing of the drugs Fallon Clinic has reviewed, approved and recommended for use at the Fallon Clinic Staff Model HMO.

1.3  "Net Direct Price" as used herein shall mean the price published from time to time by Schering as its net direct price for each Product.

**ARTICLE 2.    PRODUCT SALE**

2.1  **Sale of Product.** Schering shall make the Products available to the Fallon Clinic Staff Model HMO through Cardinal Distribution, Inc. and Mckesson HBOC (the "Prime Vendors"). Fallon Clinic shall notify Schering in writing of any change to its Prime Vendor, which Prime Vendor shall be mutually acceptable to Fallon Clinic and Schering. Schering shall report to the Prime Vendor the pricing to which the Fallon Clinic Staff Model HMO is entitled for the Products pursuant to this Agreement. The actual price for the Products paid by the Fallon Clinic Staff Model HMO to the Prime Vendor shall be as agreed upon by Fallon Clinic and its Prime Vendor.

2.2  **Product Returns.** All Product returns are subject to Schering's Institutional Returned Goods Policy attached hereto as **Exhibit A**.

2.3  **Schering Warranties and Covenants.** Schering warrants that all Product sold to the Fallon Clinic Staff Model HMO pursuant to this Agreement conforms to the descriptions set forth in each such Product's respective labeling provided that such units of the Products are used by the Fallon Clinic Staff Model HMO in accordance with such labeling.

3

Highly Confidential                                                                                                             SW0143847

ARTICLE 3.    OBLIGATIONS OF FALLON CLINIC STAFF:

3.1  **Formulary.**  In order to obtain the discounted pricing on each Product as detailed in **Exhibit B**, the Fallon Clinic Staff Model HMO must list such Product on its Formulary with the Formulary status for such Product detailed in **Exhibit B**. In the event the Fallon Clinic Staff Model HMO fails to satisfy the Formulary listing requirements established pursuant to this Section 3.1 for any Product, the Fallon Clinic Staff Model HMO will not be entitled to and shall not receive the discounted pricing for such Product detailed in **Article 4**.

3.2  **Own Use.**  Fallon Clinic hereby warrants and agrees that all Product purchased pursuant to this Agreement shall be utilized solely by the Fallon Clinic Staff Model HMO for the treatment of Eligible Members of the Fallon Clinic Staff Model HMO and not for resale or distribution. Fallon Clinic acknowledges and agrees that Schering is not required to provide a discount for any Product sold or dispensed to anyone who is not an Eligible Member of the Fallon Clinic Staff Model HMO.

3.3  **Audit.**  Fallon Clinic agrees to institute and conduct on a regular basis random audits of the Fallon Clinic Staff Model HMO to ensure that actual dispensing of the Products complies with the terms of this Agreement, including the restrictions of Section 3.2 hereof. Adjustments as a result of such audits shall be refunded to Schering no later than thirty (30) days after completion of such audit. Fallon Clinic shall at all times keep and maintain accurate books, records and files with respect to the Products, any reports submitted to Schering as part of the random audits completed pursuant to this Section, and all information relating to the purchase and dispensing of the Products pursuant to this Agreement. Fallon Clinic agrees that Schering shall have the right to conduct inspections and/or audits of Fallon Clinic's and/or the Fallon Clinic Staff Model HMO's books, records, and files from time to time, and that within ten (10) days following Fallon Clinic's receipt of a written request from Schering, the Fallon Clinic Staff Model HMO and/or Fallon Clinic shall make such information (and such other information necessary to confirm such information) available in a manner satisfactory to Schering, for inspection and/or audit by Schering's representatives or its designated auditors during regular business hours. Schering agrees that any such inspections and/or audits shall be subject to the requirements of state and federal law regarding the confidentiality of medical and prescription records.

ARTICLE 4.    OBLIGATIONS OF SCHERING:

4.1  **Discount.**  Subject to compliance with all of the terms and satisfaction of all of the conditions set forth in this Agreement, and subject further to the provisions of Section 4.2 hereof, Schering shall provide Fallon Clinic with the discounted pricing set forth on **Exhibit B** for each of the Products dispensed by the Fallon Clinic Staff Model HMO for the treatment of Eligible Members. All discounts pursuant to this Agreement shall be based on Schering's Net Direct Price for Products.

4.2  **Price Increases.**  Anything to the contrary herein notwithstanding, Schering hereby reserves the right in its sole discretion to increase the prices for the Products set forth on Exhibit B at any time to reflect or account for comparable increases made to its published Net Direct Price list. If Fallon Clinic receives discounts in excess of the discount percentages off Net Direct Price listed in Exhibit B, Schering has the right to recover such excess discounts.

4

4.3  **Eligibility for Discounts.** The Fallon Clinic Staff Model HMO's continued access to the Product discount for each Product is contingent upon Fallon Clinic complying with all of its obligations and responsibilities pertaining to such Product as detailed in this Agreement. Failure on the part of Fallon Clinic to fulfill its responsibilities or satisfy the conditions as set forth herein for a Product shall be grounds for Schering to reduce the discount for such Product to zero percent.

4.4  **Ineligibility for Discounts.** No discounts will be provided hereunder for:

(a)  any Product which is listed on the Formulary other than as set forth in this Agreement;

(b)  any units of Product for which Schering is obligated to pay rebates or provide discounts or other price reductions to any other party or governmental entity or with respect to any government health program including, without limitation Medicaid, Medicare or similar programs; and/or

(c)  any units of Product which are not used or dispensed as required by this Agreement.

4.5  **Excess Discounts.** If Schering reasonably determines as a result of an inspection and/or audit of Fallon Clinic (or the Fallon Clinic Staff Model HMO), any notice to Schering or other information that (i) Fallon Clinic has not satisfied all of the conditions in order to obtain the discounts set forth in this Agreement, (ii) any Product purchased hereunder shall have been sold, dispensed or administered for purposes other than the Fallon Clinic Staff Model HMO's own use as set forth in Section 3.2, or (iii) all or any part of the discounts previously granted by Schering to the Fallon Clinic Staff Model HMO hereunder are not required under this Agreement, then, in each such case, Fallon Clinic shall pay to Schering an amount equal to all or any portion of such excess discount granted hereunder with respect to the Product quantities purchased by the Fallon Clinic Staff Model HMO within thirty (30) days of being notified of such excess discount by Schering.

4.6  **Adjustment to Discounts.** Schering reserves the right to make adjustments to the discounted pricing available hereunder based on the introduction of generic competition, a new product entry, or implementation of a MAC (Maximum Allowable Cost) program. Should Schering cease marketing/manufacturing of any of the Products, or any package size of any of the Products, then this Agreement shall terminate with regard to the Product or such package size as the case may be.

4.7  **Product Availability.** Subject to the provisions of the following sentence, Schering will use its reasonable commercial efforts to make all Products available to Fallon Clinic during the term of this Agreement. It is understood that some Products may be discontinued or unavailable during the term of this Agreement. Schering use its reasonable commercial efforts to Notify Fallon Clinic of such discontinuance or unavailability at the earliest date possible.

**ARTICLE 5. TERM AND TERMINATION:**

5.1  **Term.** The term of this Agreement shall commence thirty (30) days after execution by Schering. Unless sooner terminated as provided for herein, this Agreement shall remain in effect until March 31, 2004 (the "Term"). The Term may be extended only by a written amendment to this Agreement which is signed by both Fallon Clinic and Schering.

- 5 -

Highly Confidential

SW0143849

5.2 **Termination Without Cause/Termination for Cause.** This Agreement may be terminated by either party (a) without cause upon not less than 30 days' prior written notice to the other party, (b) if the other party is in breach of its obligations, representations or warranties set forth in this Agreement which breach is not cured within 10 days after receipt of written notice of such breach from the non-breaching party, (c) upon enactment of federal, state or local legislation, rules or regulations (collectively "Laws"), or the issuance of an interpretation of existing Laws, which, in the reasonable opinion of either party, could have a material adverse impact on such party and/or any of its affiliates (economic or otherwise) if the Agreement remained in effect unmodified or (d) upon the insolvency, dissolution, liquidation, receivership or other similar reorganization of either party, whether voluntary or involuntary.

5.3 **Survival.** Termination of this Agreement for whatever the reason shall not affect the rights and obligations of the parties accruing prior to the effective date of termination.

**ARTICLE 6.   GENERAL PROVISIONS:**

6.1 **Confidentiality:** Fallon Clinic shall maintain the confidentiality of all the terms and conditions of this Agreement throughout the duration hereof and for a period of three (3) years following the expiration or termination of this Agreement. It is agreed by both parties hereto that the confidentiality of an Eligible Member's personal identifying information and medical report must be protected. Fallon Clinic and Fallon Clinic Staff Model HMO are each prohibited from sending to Schering reports or other information which contain the names, address, telephone number or any other information that would, in the reasonable estimation of the parties hereto, enable Schering to establish the identity of an Eligible Member. Schering may review reports with full Eligible Member names for auditing purposes only if the report remains on Fallon Clinic's premises and no copies or transcript of the Eligible Member's report are made by Schering.

6.2 **Use of Health Plan Name:** Schering may not use the name of Fallon Clinic or the Fallon Clinic Staff Model HMO for any advertisement or publicity or any other reason unless such use has been reviewed and approved by Fallon Clinic prior to use or publication.

6.3 **Notices:** Any notice required or permitted hereunder shall be given in person or sent by first class, certified mail:

To Fallon Clinic at:                                    To Schering at:

    Fallon Clinic                                    Schering Corporation
    630 Plantation Street                          2000 Galloping Hill Road
    Worcester, MA 01605                          Kenilworth, New Jersey 07033
    ATTN: Patrick Reilly                            ATTN: Contracts & Pricing

or to such other address or to such other person as may be designated by written notice given from time to time during the term of this Agreement by one party to the other.

6.4 **Force Majeure:** Noncompliance with the obligations of this Agreement due to *force majeure*, laws or regulations of any government, war, civil commotion, destruction of production

6

facilities and materials, fire, earthquake or storm, labor disturbances, shortage of materials, failure of public utilities or common carriers, and any other causes beyond the reasonable control of the parties, shall not constitute breach of contract.

6.5 **Non-Assignment:** Neither party shall have the right to assign this Agreement to a third party without the prior written consent of the other party, which consent shall not be unreasonably withheld. Provided, however, that either party may assign its duties, rights and interests under this Agreement, in whole or in part, to its subsidiaries or affiliates without such prior written consent. Any permitted assignee shall assume all obligations of its assignor under this Agreement. No assignment shall relieve either party of responsibility for the performance of any obligations which have already accrued. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assigns.

6.6 **Invalidity/Governing Law:** If any provision of this Agreement is finally declared or found to be illegal or unenforceable by a court of competent jurisdiction, both parties shall be relieved of all obligations arising under such provision, but if capable of performance, the remainder of this Agreement shall not be affected by such declaration or finding. **This Agreement shall be governed by, and enforced and construed in accordance with, the laws of the State of New Jersey without giving effect to the conflicts of laws provision thereof.**

6.7 **Indemnification:** Each party hereto ("Indemnifying Party") shall indemnify and hold harmless the other party, its affiliates, and its and their respective officers, directors, agents and employees from and against any and all liability, loss, proceeding, action, damage, cost or expense of any kind, including without limitation reasonable attorneys' fees and expenses, arising out of or based upon the negligent or willful acts or omissions of the Indemnifying Party or its officers, directors, agents or employees in the performance of its or their obligations pursuant to this Agreement.

6.8 **Compliance With Laws:** Fallon Clinic shall, and shall cause the Fallon Clinic Staff Model HMO to, comply with all applicable laws in connection with this Agreement, including without limitation the reporting requirements and applicable provisions of 42 U.S.C. §1320a-7b (prohibiting illegal remuneration), by fully and accurately disclosing all discounts contained in this Agreement in any filings or claims made under any Federal healthcare program, including the Medicare and Medicaid programs.

6.9 **Entire Agreement; Amendment:** This Agreement, including the Exhibits attached hereto, contains a total integration of all rights, obligations and agreement of both parties with regard to the subject matter hereof. There are no extrinsic conditions, collateral agreements or undertakings of any kind regarding the subject matter hereof, and it is the express intentions of both parties that any and all prior or contemporaneous agreements, promises, negotiations or representations, either oral or written, relating to the subject matter hereof that are not expressly set forth herein are to have no force, effect, or legal consequences of any kind. This Agreement may only be amended by a writing signed by both parties hereto.

7

Highly Confidential

SW0143851

Schering Corporation:

By: _____
Craig Masker
Title: Manager, Contracts & Pricing
Date: 5/19/02

Fallon Clinic:

By: _____
Title: Co-Director, Pharmacy
Date: 3/7/02

8

Highly Confidential

SW0143852

# EXHIBIT A

## INSTITUTIONAL RETURNED GOODS POLICY/RX

All returns of merchandise for credit over $10,000 must have the prior approval of an authorized Representative and must be forwarded prepaid directly to Schering Corporation, 1011 Morris Avenue, Union, New Jersey 07083.

a. Credit will be allowed on unopened and undamaged packages at current contract prices as of date of return (except merchandise sold on a special promotion offer, in which case the invoice price will apply) as follows:
   1. For prescription products not purchased on contract, returns made within 3 months after a price increase will be credited at the price prior to the price increase.
   2. Dated products will be given full credit up to one year after expiration. No credit will be issued for products returned more than one year after expiration.
   3. Based on Schering's judgement, packages that are partially filled or show other evidence of being opened, will receive partial credit.

b. The above adjustments will appear on Schering's credit memoranda as follows:
   1. Items given full credit will show as individual line extension.
   2. Items currently in the line for which only partial credit has been allowed will be shown as separate line extensions.
   3. Old discontinued items receiving partial credit will be included under "Miscellaneous Product".

c. Manufacturers are expressly forbidden (under the Federal Food, Drug, and Cosmetic Act) from returning expired dated items to customers. Such items returned to Schering will be destroyed. Schering also reserves the right to destroy without credit packages that are unfit or unsafe for sale or do not comply with applicable law.

d. Consideration will be given to adjustments for losses suffered in a natural disaster (flood, hurricane, tornado, etc.) not covered by insurance. Your Schering representative will be glad to assist you in such emergencies.

e. Schering representatives are not permitted to modify any of the above policies.

f. Schering reserves the right to change, alter or amend this policy by giving (30) thirty days notice.

---

This returned goods policy does not apply to goods returned by persons other than the original wholesaler or hospital purchaser of the goods, or to goods which have been repacked in other than original Schering/Key containers.

---

9

Highly Confidential

SW0143853

## EXHIBIT B - PRICING

| NDC | COMPANY PRODUCT | SIZE | % DISCOUNT FROM NDP | (1) CONTRACT PRICE | (2) FORMULARY STATUS |
|---|---|---|---|---|---|
| 00085126401 | CLARINEX TABLETS | 100 | 20.0% | $146.11 | LISTED |
| 00085126402 | CLARINEX TABLETS | 500 | 20.0% | $730.57 | LISTED |
| 00085126403 | CLARINEX TABLETS | 100 U/D | 20.0% | $146.11 | LISTED |
| 00085126404 | CLARINEX TABLETS | 30 | 20.0% | $43.83 | LISTED |
| 00085122301 | CLARITIN SYRUP | 16OZ | 26.0% | $96.56 | LISTED |
| 00085045803 | CLARITIN TABLETS | 100 | 20.0% | $186.70 | LISTED |
| 00085045804 | CLARITIN TABLETS | 100 U/D | 20.0% | $186.70 | LISTED |
| 00085045805 | CLARITIN TABLETS | 30 | 20.0% | $55.99 | LISTED |
| 00085045806 | CLARITIN TABLETS | 500 | 20.0% | $933.40 | LISTED |
| 00085057102 | INTRON A    10MIU | 2ML | 15.0% | $100.64 | LISTED |
| 00085118402 | INTRON A    3MIU SOL | 6 X 0.5ML | 15.0% | $181.17 | LISTED |
| 00085064705 | INTRON A    3MIU, Pak-3 | 6x1ML | 15.0% | $181.17 | LISTED |
| 00085012002 | INTRON A    5MIU | 1ML | 15.0% | $50.32 | LISTED |
| 00085012005 | INTRON A    5MIU | 1ML | 15.0% | $0.00 | LISTED |
| 00085119102 | INTRON A    5MIU SOL | 6 X 0.5ML | 15.0% | $301.95 | LISTED |
| 00085117902 | INTRON A    10MIU SOL | 6 X 1ML | 15.0% | $603.92 | LISTED |
| 00085111001 | INTRON A    18 MIU | 1ML | 15.0% | $181.17 | LISTED |
| 00085116801 | INTRON A    18MIU SOL | 6MIU/1ML | 15.0% | $181.17 | LISTED |
| 00085028502 | INTRON A    25MIU | 5ML | 15.0% | $251.63 | LISTED |
| 00085113301 | INTRON A    25MIU SOL | 10MIU/1ML | 15.0% | $251.63 | LISTED |
| 00085053901 | INTRON A    50MIU | 1ML | 15.0% | $503.26 | LISTED |
| 00085125401 | INTRON A    Solution Multidose Pens 10MIU | 6x10MIU/.2 ml | 15.0% | $603.92 | LISTED |
| 00085124201 | INTRON A    Solution Multidose Pens 3MIU | 6x3MIU/.2 ml | 15.0% | $181.17 | LISTED |
| 00085123501 | INTRON A    Solution Multidose Pens 5MIU | 6x5MIU/.2 ml | 15.0% | $301.95 | LISTED |
| 00085119701 | NASONEX NASAL SPRAY | 17GM | 35.0% | $33.38 | LISTED |
| 00085330535 | NITRO-DUR  INST  .1MG | 30 | 60.0% | $19.09 | LISTED |
| 00085331035 | NITRO-DUR  INST  .2MG | 30 | 60.0% | $19.09 | LISTED |
| 00085331535 | NITRO-DUR  INST  .3MG | 30 | 60.0% | $21.71 | LISTED |
| 00085332035 | NITRO-DUR  INST  .4MG | 30 | 60.0% | $21.71 | LISTED |
| 00085333035 | NITRO-DUR  INST  .6MG | 30 | 60.0% | $23.55 | LISTED |
| 00085081935 | NITRO-DUR  INST  .8MG | 30 | 60.0% | $23.55 | LISTED |

10

Highly Confidential

SW0143854

## EXHIBIT B – PRICING

| NDC | COMPANY PRODUCT | SIZE | % DISCOUNT FROM NDP | (1) CONTRACT PRICE | (2) FORMULARY STATUS |
|---|---|---|---|---|---|
| 00085061402 | PROVENTIL INHALATION AEROSOL | 17G | 15.0% | $25.66 | LISTED |
| 00085061403 | PROVENTIL INHALATION REFILL | 17G | 15.0% | $22.30 | LISTED |
| 00085020802 | PROVENTIL SOLUTION | 20ML | 15.0% | $15.94 | LISTED |
| 00085020901 | PROVENTIL SOLUTION | 25X3ML | 15.0% | $36.32 | LISTED |
| 00085123602 | REBETRON 1000/MDV | 1000 | 10.0% | $603.24 | LISTED |
| 00085124102 | REBETRON 1000/PAK-3 | 1000 | 10.0% | $603.24 | LISTED |
| 00085125802 | REBETRON 1000/PEN | 1000 | 10.0% | $603.24 | LISTED |
| 00085123601 | REBETRON 1200/MDV | 1200 | 10.0% | $666.57 | LISTED |
| 00085124101 | REBETRON 1200/PAK-3 | 1200 | 10.0% | $666.57 | LISTED |
| 00085125801 | REBETRON 1200/PEN | 1200 | 10.0% | $666.57 | LISTED |
| 00085123603 | REBETRON 600/MDV | 600 | 10.0% | $494.03 | LISTED |
| 00085124103 | REBETRON 600/PAK-3 | 600 | 10.0% | $494.03 | LISTED |
| 00085125803 | REBETRON 600/PEN | 600 | 10.0% | $494.03 | LISTED |
| 00085104901 | VANCENASE AQ DS | 19G | 27.5% | $34.87 | LISTED |
| 00085064902 | VANCENASE NASAL POCKETHALER | 7G | 25.0% | $29.47 | LISTED |
| 00085073602 | VANCERIL INHALER | 7G | 25.0% | $29.95 | LISTED |

(1) Contract Price represents the contract price calculated based upon the discount percentage listed above off Schering's Net Direct Price on March 1, 2002. See **Article 4.2** with regards to commercial price increases.

(2) With respect to each Schering Product selected, non-formulary products shall be NDC blocked and/or in a third or higher tier with a co-pay arrangement differential of at least $15.

11

Highly Confidential

SW0143855

# AMENDMENT
## PURCHASE AGREEMENT

AMENDMENT (the "Amendment") to Purchase Agreement dated March 4, 2002, between Fallon Clinic, ("Fallon Clinic"), having a place of business at 100 Hartwell St., West Boylston, MA 01583 and Schering Corporation ("Schering"), a Delaware corporation, having a place of business at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033.

1. This Amendment supplements and amends the Purchase Agreement (Contract # 200219) as heretofore supplemented and amended ("the Agreement").

2. This Amendment shall become effective thirty (30) days after execution by Schering. This Amendment will remain in effect through March 31, 2004, unless sooner terminated in accordance with the Agreement.

3. The Agreement is hereby amended to add the Schering Products Peg-Intron and Rebetol to Exhibit B of the Agreement as set forth attached hereto.

4. Except as modified in this Amendment, the Agreement and all of its terms and conditions shall remain in full force and effect.

SCHERING CORPORATION

By: _____
Craig Masker
Manager, Contracts and Pricing
Dated: 3/19/02

Fallon Clinic

By: _____
Name: Patrick Reilly
Title: Co-Director, Pharmacy
Dated: 3/7/02

Defendants' Exhibit
**2901**
01-12257 - PBS

Highly Confidential

SW0143859

**EXHIBIT A**

(Intentionally left blank.  No change from Agreement)

Highly Confidential

SW0143860

## EXHIBIT B - PRICING

| NDC | COMPANY PRODUCT | SIZE | % DISCOUNT FROM NDP | (1) CONTRACT PRICE | (2) FORMULARY STATUS |
|---|---|---|---|---|---|
| 00085136801 | PEG INTRON FOR INJ 0.7ML DILUENT | 100mcg | 2.0% | $202.43 | LISTED (a) |
| 00085129101 | PEG INTRON FOR INJ 0.7ML DILUENT | 160mcg | 2.0% | $212.55 | LISTED (a) |
| 00085130401 | PEG INTRON FOR INJ 0.7ML DILUENT | 240mcg | 2.0% | $223.18 | LISTED (a) |
| 00085127901 | PEG INTRON FOR INJ 0.7ML DILUENT | 300mcg | 2.0% | $234.33 | LISTED (a) |
| 00085132704 | REBETOL CAPS 200MG | 42 | 10.0% | $309.96 | LISTED (a) |
| 00085135105 | REBETOL CAPS 200MG | 56 | 10.0% | $413.28 | LISTED (a) |
| 00085138507 | REBETOL CAPS 200MG | 70 | 10.0% | $516.60 | LISTED (a) |
| 00085119403 | REBETOL CAPS 200MG | 84 | 10.0% | $619.92 | LISTED (a) |

(a) Both Peg-Intron and Rebetol must be listed on Formulary.

**Terms:**

> To be eligible for the Peg-Intron and Rebetol contract pricing set forth in Exhibit B, Fallon Clinic must provide unencumbered reimbursement for both Peg Intron and Rebetol. For the purposes of this Amendment unencumbered reimbursement for Peg Intron and Rebetol shall mean Peg Intron and Rebetol shall have an equivalent (or better) status as compared to other Hepatitis C therapies within this therapy class on Fallon Clinic's formulary or equivalent listing for injectable products.

> Additionally, Fallon Clinic shall not subject Peg-Intron and Rebetol to a Restriction or Economic Penalty, whether by reason of its listing on Fallon Clinic's Formulary or otherwise. For the purposes of this Amendment and the Agreement, the term "Restriction and Economic Penalty" with respect to any product shall mean (a) making such product subject to NDC blocks or other pharmacy prompts that discourage the dispensing or prohibit reimbursement of such product, unless (i) such blocks or prompts are related to drug interactions with other prescription or over-the-counter drug products, (ii) such blocks or prompts are related to contraindications, or (iii) it becomes generally accepted in the US medical community that the use of the product should be restricted or curtailed for clinical reasons relating to patient safety.

**Counter Detailing:**

> No contract pricing shall be provided for Peg Intron and Rebetol if during the Term of this Agreement Fallon Clinic engages in any counter-detailing or disincentivizing efforts against Peg Intron and Rebetol in favor of a competitive product within the same therapeutic class. This restriction shall apply to Fallon Clinic or any subsidiary and/or affiliate of Fallon Clinic entitled to discounts

Highly Confidential

SW0143861

under the terms and conditions of this Agreement. For the purposes of this Agreement, counter-detailing and disincentivizing shall include, but will not be limited to, any effort by Fallon Clinic to actively replace prescriptions for Product(s) to competitive products whether generic or branded within the same therapy class. *Schering reserves the right to renegotiate discounts on Peg Intron and Rebetol if Fallon Clinic restricts utilization of Peg Intron or Rebetol more specifically than is outlined in the FDA approved package insert for these products.*

**In addition, Fallon Clinic must fulfill the following HCV Initiatives:**

- Fallon Clinic shall offer Be-In-Charge enrollment to all new eligible members treated with Schering HCV Products via written communication.

- Fallon Clinic shall communicate to all affiliated I.D.'s and G.E.'s within Fallon Clinic's physician network describing the value of the Be-In-Charge program via letter distribution or other commercially acceptable methods of communication.

Highly Confidential

SW0143862