**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' OPPOSITION TO TRACK ONE DEFENDANTS'
EMERGENCY MOTION TO DECLARE THE *TOUHY* REGULATION INAPPLICABLE
AND FOR LEAVE TO TAKE TRIAL DEPOSITIONS
OF CERTAIN FORMER GOVERNMENT EMPLOYEES**

## I.     INTRODUCTION

During the Court's pretrial conference, the Court requested Plaintiffs' position regarding

whether the United States "is now a member of the litigation."  *See* Transcript of Final Pretrial

Conference (Oct. 31, 2006) ("FPC Transcript"), at 36.  More specifically, the Court observed

that it was faced with a "novel issue" of whether, though the United States is now part of the

MDL but not a party to this class action, the *Touhy* regulations apply.  *Id.* at 40-41.

Plaintiffs submit that the *Touhy* regulations apply because the United States is not a party

to this case.  Furthermore, there is no applicable authority for Defendants' position that the

United States has become a "*de facto* party" by virtue of its submission of an *amicus* brief or by

virtue of its intervention in another lawsuit transferred to this Court by the MDL Panel.

Lastly, because Mr. Weintraub is apparently the only witness identified by Defendants in

their Emergency Motion who has agreed to testify, Plaintiffs limit the remainder of their

response to Mr. Weintraub.  Mr. Weintraub should not be permitted to testify, even if the Court

1

finds that the *Touhy* regulations do not apply.  Mr. Weintraub, a paid expert for the industry, has

nothing to add to these proceedings that Defendants' phalanx of other experts won't already be

discussing.

## II.     ARGUMENT

**A.     The United States Is Not An Actual or *"DeFacto"* Party To This Case**

> **1.     The United States is not a Party to this Case Because MDL Consolidation
> does not Merge all Transferred Proceedings in the MDL into a Single,
> Indivisible Action**

DHHS's *Touhy* regulation does not apply in "[a]ny civil or criminal proceedings where

the United States, the Department of Health and Human Services, and any agency thereof, or any

other Federal agency is a party."  45 C.F.R. § 2.1(d)(1).  But the United States is not a party to

this proceeding.  The multidistrict litigation transfer statute provides that "[w]hen civil actions

involving one or more common questions of fact are pending in different districts, such actions

may be transferred to any district for coordinated or consolidated pretrial proceedings."  28

U.S.C. § 1407(a).  As the United States Supreme Court held many years ago, "consolidation is

permitted as a matter of convenience and economy in administration, ***but does not*** merge the

suits into a single cause, or change the rights of the parties, ***or make those who are parties in***

***one suit parties in another***."  *Johnson v. Manhattan R. Co.*, 289 U.S. 479, 496-97 (1933)

(emphasis added).  As one commentator has further explained:

> [M]erger is never so complete even in consolidation as to deprive
> any party of substantial rights which he may have possessed had
> the actions proceeded separately.  The actions retain their separate
> identity, ***and the parties and pleadings in one action do not***
> ***automatically become parties and pleadings in the other action.***

Joan Steinman, *Article:  Law of the Case:  A Judicial Puzzle in Consolidated and Transferred*

*Cases and in Multidistrict Litigation*, 135 U. PA. L. REV. 595, 7096 (March 1987) (hereinafter

"Steinman") (citing 5 MOORE'S FEDERAL PRACTICE § 42.02[3], at 42.28-42.29 (footnotes omitted) and cases therein cited) (emphasis added).

Indeed, although there are limited cases on this subject, existing authority holds that, while the law of the case doctrine might, in order to promote the efficiency of the proceedings, apply to coordinated or consolidated proceedings within an MDL, the doctrines of collateral estoppel and res judicata would ***not*** apply because parties in coordinated or consolidated proceedings are ***not*** parties to each other's actions, and to apply those doctrines to them would deny them the right to be heard.  For example, the United States District Court for the Eastern District of Pennsylvania has issued a series of opinions making clear that, with respect to ***procedural*** issues designed to promote efficiency (such as the issuance of orders governing discovery), the law of the case doctrine should prohibit the relitigation of those issues by the transferee judge if the transferor court decided them prior to transfer.  *See ABC Great States, Inc. v. Globe Ticket Corp.*, 316 F. Supp. 449, 451 (E.D. Pa. 1970) (holding law of case applied to previous order striking notice of deposition); *Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Co.*, 323 F. Supp. 381, 383 (E.D. Pa. 1970) (citing *ABC Great States* with approval and holding that law of case doctrine should apply to MDL proceeding).

However, the law of the case doctrine cannot extend, by virtue of the doctrines of collateral estoppel or res judicata, to bind parties in coordinated or consolidated proceedings because doing so would deny their right to be heard.  For example, as one commentator has explained,

> Some judges have expressed the view that law of the case is particularly applicable in section 1407 litigation to avoid constant relitigation of the same issues by the numerous parties involved. The courts should not lose sight of the fact, however, that for purposes of law of the case doctrine, section 1407 consolidation, like Rule 42 consolidation, does not render rulings in one case also

> rulings in the other consolidated actions.  Due process requires that persons not parties to a particular litigation be afforded their own day in court unless the circumstances warrant a conclusion that they were in privity with the litigants against whom a ruling was made.  ***Presenting similar claims or defenses, or raising the same legal issues as someone else, has never sufficed for such privity***.

*See* Steinman, 135 U. Pa. L. Rev. at 669 (emphasis added).  As is obvious, the United States Government is not in privity with any litigant in any of the cases consolidated in this MDL proceeding.

Defendants' cases are not to the contrary.  For example, in *Alexander v. FBI*, 186 F.R.D. 66 (D.D.C. 1998), the plaintiffs sought a second deposition of a Department of Defense employee in an action where they had sued the FBI for violating their privacy.  There, the United States was clearly a named defendant.  Indeed, the Court did not apply the relevant *Touhy* regulation because it would create a "significant separation of powers problem."  *Id.* at 70 (citation omitted).  Similarly, in *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989), another case cited by Defendants, the EPA was a named defendant.  Again, and in contrast, the United States is not a party to these MDL class actions.

## 2.   The United States has not Become a "*De Facto* Party" to this Litigation

Defendants claim that, even if the United States is not an actual party, it has become a "*de facto* party" upon (i) initiating its own proceeding against Abbott Laboratories, Inc. ("Abbott") through intervention in the *Ven-A-Care* action and (ii) submitting an *amicus* brief in this proceeding.  For this proposition, Defendants rely on two cases.  In the first case, *Southmark Props. v. Charles House Corp.*, 742 F.2d 862 (5th Cir. 1984), the Court barred as *res judicata* a real estate company's counterclaim seeking to invalidate a real estate investment trust's purchase of the company's property under Chapter 10 of the Bankruptcy Act.  In so holding, the Court found that, **under the Bankruptcy Act** the company and its president and stockholder were all

"parties in interest" to the bankruptcy proceeding that approved the sale challenged in the counterclaim.  In no way did that Court adopt any rule that "*de facto* parties" exist in the federal rules; instead, the Court was merely interpreting "parties in interest," a term specifically defined by the Bankruptcy Act.  *Id.* at 869.[1]  The court also found persuasive markers of identity between the president and his company based on his position in the company, direct pecuniary interest in the outcome of the matter, and his exercise of substantial control over prior litigation on behalf of the company.  *Id.* at 870.  In contrast, not one of these factors applies here; the United States simply has no relationship with the class plaintiffs and certainly exercises no control over them in this or any prior litigation.  *See also International Ass'n of Machinists Nat'l Pension Fund v. Estate of Dickey*, 808 F.2d 483, 485 (6th Cir. 1987) ("The District Court has invented the category 'de facto party' when there is no authority for doing so.  Either Dickey was a party or he was not a party.").

The second case on which Defendants rely, *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 459 F. Supp. 507 (S.D. Fla. 1978), held that the Florida Division of Archives was bound by the results of a proceeding that distributed salvaged articles from a sunken ship in which the United States participated but in which the State of Florida, after receiving due notice and relying on the United States to protect its interest, failed to intervene.  Although Defendants claim that this case supports their argument that a party can become a *de facto* party by merely participating in a case, the *Treasure Salvors* court made clear that such a concept only applies when that participating party "has adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based," which, as set forth above, a party to a coordinated or consolidated proceeding would not have.  Moreover, the

---

[1] The only cases in the First Circuit specifically dealing with "*de facto* parties" are likewise bankruptcy cases. *See In re Choquette*, 290 B.R. 183, 187-88 (Bankr. D. Mass. 2003).  *See also In re Santos*, BAP NO. PR 05-036, 2006 Bankr. Lexis 2304 (Bankr. Fed. App. Sept. 25, 2006) (citing *Choquette*).

*Treasure Salvors* court specifically held that the Florida Division of Archives was in privity with the federal government (*id.* at 516), a claim Defendants do not and cannot make here.

To be sure, there are cases other than those relied on by Defendants that recognize the concept of a "de facto party;" however, **in every instance**, those courts held that a person is a "*de facto* party" **only** if there is a close relationship (usually one of privity) between that person and an actual party to a prior proceeding.  For example, in *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 777 (9th Cir. 1994), Exxon argued that employees of federal agencies who were defendants in the lawsuit were "*de facto* parties" to that lawsuit.  Although the Court did not specifically adopt Exxon's verbiage, it held that the *Touhy* regulations did not apply in that context because of the close relationship between employer and employee.  In other contexts, this Court has defined privity in terms of controlling a party's involvement in the litigation or having some other very close relationship.  *See, e.g., Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136, 140-142 (D. Mass. 2002) (Saris, J.) ("Privity is generally held to exist 'if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative.'"); *State Police for Automatic Retirement Ass'n v. DiFava*, 164 F. Supp. 2d 141, 150 (D. Mass. 2001) (Saris, J.) ("Application of the term privity 'represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'") (holding government's prior action precluded litigation of individual action only where government had sought and could seek identical relief for same proposed plaintiffs) (internal citations omitted).  But Defendants do not and cannot claim that such a relationship exists between the class action plaintiffs here and the United States.

Defendants' position that the United States has become a party because it submitted an *amicus* brief in this case likewise finds no support in the law. *Amicus* participation does not make one a party to the action in which the *amicus* brief is submitted. *See, e.g., National Fuel Gas Distrib. Corp. v. TGX Corp.*, 950 F.2d 829, 838-39 (2d Cir. 1991). Moreover, making the United States a party by virtue of its submission of an *amicus* brief would be particularly unfair here, where the Court requested the United States submit such a brief.

**B.     Mr. Weintraub's Testimony Is Unnecessary**

The Court has already stated that Mr. Weintraub may not testify regarding the meaning of AWP, but the Court nonetheless suggested that it may be willing to entertain Weintraub's testimony regarding "basically industry knowledge for the purpose of the third-party payor class." *See* FPC Transcript, at 37.[2] However, Mr. Weintraub's testimony is not necessary for this purpose. Defendants have a plethora of largely overlapping experts, many of whom will testify on purported industry "knowledge" issues. Another "make-weight" defense witness in this already protracted trial is simply unnecessary.

Defendants should also not be rewarded for manufacturing the need to bring their so-called "emergency" motion. This litigation has been pending for almost five years now, Defendants put the "knowledge" issue into play from the very beginning, and they have known about Mr. Weintraub for a long time. Indeed, Weintraub served as an "expert" witness for Defendant TAP Pharmaceuticals in the North Carolina Lupron litigation styled *Stetser v. TAP Pharm. Prods. Inc.*, No. 1 CV 5268, Sup. Ct. North Carolina (New Hanover County). Mr.

---

[2] Because the Court has held "it's quite clear that the *Touhy* rules cover former employees" (FPC Transcript, at 40), and because Plaintiffs agree with that conclusion, we do not address Defendants' arguments regarding that subject. And because of the Court's October 20 order denied Defendants' request for trial depositions (and because that request is now moot), Plaintiffs likewise do not address those issues. Finally, Plaintiffs specifically reserve their right to submit opposition briefs to Defendants' Emergency Motion (or motions to strike) regarding Nancy-Ann Min DeParle, Thomas A. Scully and Christopher Jennings, should issues regarding those individuals become ripe.

Weintraub submitted his report on behalf of the defendant in that matter in April 2004.[3]  Yet, Defendants waited until the very eve of trial to press this motion.

Defendants' tardy motion should be denied for a final reason.  Because Weintraub has nothing to add that is not already being covered by defense experts, Defendants' real agenda in advancing the prospect of Mr. Weintraub's testimony is to embellish the record with the paid-for testimony of someone who was purportedly "in the know" at HCFA – to "back door" the testimony of a witness who the government has already explained should not be a witness given the high likelihood that the witness will disclose matters protected by the government's deliberative process privilege.[4]  This is simply a compromised witness who should not be permitted to appear in court.  As noted above, Weintraub was an industry expert in the Lupron North Carolina case, which involves some of the same issues at play in the instant trial.  Moreover, Defendants recently admitted that they would pay Weintraub again, this time for his testimony *in this case*.  Upon learning of this unsavory fact, the Court properly put an end to the improper maneuver and explained that, if Mr. Weintraub appears, Defendants would be prohibited from paying him.  Furthermore, Weintraub's former company consulting company, Muse and Associates, was recently purchased by United BioSource Corporation, which, among other things, appears to assist pharmaceutical companies in "deliver[ing] the scientific evidence necessary to demonstrate the clinical benefits, safety, and economic value of their products."  *See* http://www.unitedbiosource.com/about-us.aspx.  Mr. Weintraub is no longer an objective fact

---

[3] Defendants appended this expert report to their Memorandum in Support of Emergency Motion to Authorize Subpoenas for Certain Former Government Employees, which was filed on November 17, 2006.  Plaintiffs will respond to this latest memorandum in due course.  Notably, the so-called "expert report" submitted by Mr. Weintraub in the North Carolina case adds little.  Those portions of the report not constituting rank hearsay and speculation merely discuss several public documents – like OIG reports – the Court has already reviewed here.  The Court needs no assistance in reviewing those documents.

[4] Because the government has already submitted a brief regarding the deliberative process privilege, Plaintiffs will not further argue the point here other than to note that the government's brief presents a proper and compelling argument.

witness.  The Court should reject Defendants' quest to present the testimony of an industry hand in the guise of an independent "fact" witness.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' "emergency" motion.


DATED:  November 20, 2006

By    /s/ **Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496b-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Donald E. Haviland, Jr.
The Haviland Law Firm LLC
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO TRACK ONE DEFENDANTS' EMERGENCY MOTION TO DECLARE THE *TOUHY* REGULATION INAPPLICABLE AND FOR LEAVE TO TAKE TRIAL DEPOSITIONS OF CERTAIN FORMER GOVERNMENT EMPLOYEES** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 20, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

By **/s/ Steve W. Berman**
     Steve W. Berman
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
     1301 Fifth Avenue, Suite 2900
     Seattle, WA  98101
     (206) 623-7292