# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ALCORN, BEATRICE MANNING and G. RAYMOND PIRONTI, Jr. on behalf of the UNITED STATES OF AMERICA, | : | JURY TRIAL DEMANDED |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 98-CV-5688 |
| SCHERING-PLOUGH CORP., | : | |
| Defendant. | : | FILED UNDER SEAL |

## FIRST AMENDED COMPLAINT

Plaintiffs Charles Alcorn, Beatrice Manning and G. Raymond Pironti, Jr. (collectively "Plaintiffs"), through their undersigned counsel, hereby file their First Amended Complaint and allege the following:

### PARTIES

1. Plaintiff Charles Alcorn ("Alcorn") is a citizen of the Commonwealth of Pennsylvania, with a residence located in Reading, Pennsylvania.

2. Plaintiff Beatrice Manning ("Manning") is a citizen of the State of Massachusetts, with a residence located in Stow, Massachusetts.

3. Plaintiff Raymond Pironti, Jr. ("Pironti") is a citizen of the State of Florida, with a residence located in Palm Harbor, Florida.

4. Plaintiffs bring this action on behalf of the United States of America.

5. Defendant Schering-Plough Corp. ("Schering") is a New Jersey corporation with its principal place of business in Madison, New Jersey. Schering-Plough regularly transacts business in this judicial district.

{00013371;v2}

## NATURE OF THE ACTION

6. This action is brought by Plaintiffs on behalf of the United States of America under the False Claims Act, 31 U.S.C. §3729, *et seq.* Plaintiffs file this action as relators under section 3730 of the False Claims Act.

7. Plaintiffs allege that Schering engaged in a fraudulent scheme that caused the federal government to pay unlawfully inflated prices for Schering's product Claritin™ by charging the federal government and its beneficiaries prices in excess of the statutorily mandated "best price" for Claritin™.

## JURISDICTION AND VENUE

8. This action arises under 28 U.S.C. §1345 and 31 U.S.C. §3729 and this Court has jurisdiction pursuant to each named statute.

9. Venue is proper in the Eastern District of Pennsylvania pursuant to 31 U.S.C. §3732(a) because it is in this judicial district where the defendant may be found, resides, or transacts business, and in which acts prescribed by 31 U.S.C. §3726 occurred.

## FACTS

10. Plaintiffs are former employees of Integrated Therapeutics Group, Inc. ("ITG"), a wholly-owned subsidiary of Schering.

11. Schering is a pharmaceutical company with over $7 billion in annual sales.

12. The leading product manufactured by Schering during the time period covered by this complaint was Claritin™, a non-sedating antihistamine used for the treatment of seasonal allergic rhinitis.

13. Plaintiffs allege that Schering engaged in a fraudulent scheme that caused the federal government to pay unlawfully inflated prices for Claritin™ by charging the federal government prices in excess of the statutorily mandated "best price" for Claritin™.

14. Schering implemented this fraudulent scheme by providing "rebates in disguise" to customers in several forms. These included : (a) payments or "partnership fees" - paid to customers for their services or products (*e.g.*, software, data) far in excess of their value; (b) free or nominally priced drugs - as a subsidy for premium priced Claritin™; and (c) free or underpaid health management goods and services - offered outright or as part of a benefit share.

15. Schering created ITG to further its fraudulent plan.

16. ITG's mission was to develop and offer health management and other services to health maintenance organizations who included Schering's products in their formularies.

17. Among other things, the health management services created by ITG enabled health maintenance organizations ("HMOs") to identify high risk patients and to target those patients for early intervention services, thereby avoiding or reducing costly emergency and inpatient medical treatment.

18. The services that ITG offered HMOs enabled them to save tens of millions of dollars.

19. Schering created the ITG health management services program so that it would not have to reduce the price of its products, thereby enabling it to continue to charge the federal government an artificially high price.

20. Schering provided health management services to HMOs at little or no cost. It did not provide these same valuable services to the federal government or to Medicaid enrollees participating in the HMOs that accepted these services.

21. Internally, Schering and ITG consistently recognized the monetary value of the underpriced or free health management services they provided to Schering's customers.

22. Schering did not include the value of free or underpriced health management services it provided to customers when calculating the "best price" it charged the federal government for Claritin™.

23. Schering, through ITG, purported to charge customers for the valuable health management services ITG provided.

24. In fact, however, Schering and ITG almost never collected the monies charged for these health management services or the services were offered far below actual value and usually below cost.

25. ITG purported to charge customers through "benefit share arrangements," pursuant to which ITG would provide health management services and share in a portion of the savings in medical costs resulting from the customer's use of ITG's health management services. In reality, ITG almost never collected its "benefit share" from the customer.

26. Alternatively, ITG would charge a customer a fee for health management services but the fee would be at or below the cost to Schering for the services provided.

27. ITG also entered into arrangements known as "partnership agreements" with customers, pursuant to which ITG would make cash payments to the customer in exchange for services or products provided to ITG. These payments were often made in advance of any goods or services being received and far in excess of the value of the goods and services that ITG received.

28. For example, beginning in 1998, Schering implemented health management and member retention programs for PacifiCare, one of Schering's most important managed care customers, in response to concerns raised by PacifiCare regarding the price of Claritin™. These

programs and other considerations Schering provided to PacifiCare were in reality "rebates in disguise" as a Claritin™ price concession.

29. Schering did not factor the value of these services and other payments into the "best price" for Claritin™ that it reported to the federal government from 1998 through 2002.

30. Schering also provided CIGNA, one of its largest managed care customers, with expanded health management services while charging CIGNA fees that were less than Schering's expenses for the expanded services. These expanded health management services and other considerations that Schering provided to CIGNA were in reality "rebates in disguise" as a Claritin™ price concession.

31. Schering did not factor the value of these services and other payments into the "best price" for Claritin™ that it reported to the federal government from 1998 through 2002.

## COUNT I: FALSE CLAIMS ACT

32. Paragraphs 1 through 31 of the First Amended Complaint are incorporated herein by reference and realleged as if fully set forth.

33. The activities of Schering set forth above violated the False Claims Act in that Schering knowingly presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. §3729(a)(1).

34. The claims were false and fraudulent in that the federal government was caused to overpay for Claritin™ both for direct purchases it made and for reimbursements of purchases made for federal beneficiaries. The claims submitted to the federal government for payment did not reflect the true "best price" for Claritin™.

35. Schering's false and fraudulent misrepresentations were made with the intent to induce the federal government's reliance thereon.

36. The federal government justifiably relied upon Schering's fraudulent misrepresentations.

37. The United States of America was damaged as a result.

WHEREFORE, Plaintiffs demand judgment on behalf of the United States of America for the following relief:

(a) an amount equal to the number of false or fraudulent claims which will be proven at trial multiplied as provided for in 31 U.S.C. §3129(a);

(b) three times the total amount of damages sustained by the United States of America because of the acts complained of in this count;

(c) an award of statutory attorneys' fees and costs; and,

(d) such other and further relief as the Court shall deem proper.

Respectfully submitted,

*[signature]*
Steven J. Engelmyer, Esq.
KLEINBARD, BELL & BRECKER LLP
1900 Market Street; Suite 700
Philadelphia, PA 19103
215-568-2000

*[signature]* (sje)
Neil Mullin, Esq.
SMITH MULLIN, P.C.
240 Claremont Avenue
Montclair, NJ 07042

Attorneys for Plaintiffs Charles Alcorn, Beatrice Manning and G. Raymond Pironti, Jr.

Dated: July 12, 2004