UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM REGARDING THE TRANSACTION REQUIREMENT
IN GEN. LAWS CHAPTER 93A, § 11**

**TABLE OF CONTENTS**

**PAGE**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................1 |
| II. | THERE IS NO PRIVITY REQUIREMENT UNDER GEN. LAWS CHAPTER 93A, § 11................................................................................................................2 |
| III. | DEFENDANTS' ARGUMENT THAT § 11 REQUIRES A TRANSACTION "BETWEEN THE PARTIES" LACKS MERIT ...................................................3 |
| IV. | SECTION 9 NOT SECTION 11 APPLIES TO THE CLAIMS OF BLUE CROSS, THE TAFT HARTLEY FUNDS AND CONSUMERS .......................................7 |

**I.      INTRODUCTION**

After five years of litigation and nary a peep on the topic, Defendants now argue that the Section 11 aspect of Plaintiffs' 93A claim is precluded due to the absence of direct privity in the business transactions between the defendant manufacturers and those who over-reimbursed for their drugs.  In their opening statement Defendants claimed that there exists a "long line of cases" that Section 11 is inapplicable without a "business to business transaction."  (11/6/06 Trial Transcript at 68.)

Nonsense.  There is a long line of cases in this state holding that there is no "between the parties" transaction requirement, nor is privity required.  Defendants cannot create such a requirement through their misconstruction of the case law which simply requires the existence of a transaction for a § 11 claim, not that the transaction be directly between the parties.

Rather, it is sufficient under Massachusetts law to invoke the protection of Section 11 to demonstrate that Defendants' acts or practices interfered with trade or commerce.  *See*, *e.g.*, *Spenser v. Doyle*, 50 Mass. App. Ct. 6, 733 N.E.2d 1082 (Mass. App. 2000).  The misconduct of Defendants easily meets this test.  Defendants' misconduct – of causing the publication of inflated AWPs in relationship to the average selling prices at which they sold their drugs, coupled with the marketing of that spread to physicians and other dispensers – was the lynchpin of millions of the fraudulent reimbursement transactions and therefore certainly interfered with trade or commerce.  In short, this case involves literally millions of reimbursement transactions in trade or commerce, all keyed directly to the Defendants' pivotal and fraudulent conduct, all of which are within the scope of Section 11.

## II. THERE IS NO PRIVITY REQUIREMENT UNDER GEN. LAWS CHAPTER 93A, § 11

The unbroken line of authority by the Supreme Judicial Court ("SJC") establishes that claims under Gen. Laws Chapter 93A, § 11 do not require privity of contract. *NEI v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 323, 446 N.E.2d 681 (1983); *Maillet v. ATF-Davidson Co.*, 407 Mass. 185, 189, 552 N.E.2d 95 (1990); *First Enters. v. Cooper*, 425 Mass. 344, 347, 680 N.E.2d 1163 (1997). A similar unbroken line exists for the Appeals Court and Federal courts sitting in Massachusetts. *Mongeau v. Boutelle*, 10 Mass. App. Ct. 246, 407 N.E.2d 352 (1980); *Chestnut Hill Dev. Corp. v. Otis Elevator Co.,* 653 F. Supp. 927, 932 (D. Mass. 1987); *Spencer v. Doyle*, 50 Mass. App. Ct. 6, 11, 733 N.E.2d 1082 (2000); *Reisman v. KPMG Peat Marwick LLP,* 57 Mass. App. Ct. 100, 125, 787 N.E.2d 1060 (2003).

The absence of a privity requirement was made clear in a pair of cases dating back almost 25 years. In *Mongeau v. Boutelle,* 10 Mass. App. Ct. at 247-48, the Court held that a seller's broker could be held liable to the buyer in a real estate transaction even though there was no privity between them. The broker had entered into a transaction with the seller, not the buyer, yet nevertheless the buyer could sue the broker for the misconduct alleged therein. Three years later, the SJC in *NEI v. Boston Survey Consultants,* 388 Mass. 320, 446 N.E.2d 681 (1983), addressed whether a seller's land-surveyor could be liable to a buyer. The SJC noted that "[a]lthough we recognize that there is no requirement of privity of contract, it is somewhat significant [the surveyor] had no contractual or business relationship with the plaintiffs." *NEI*, 388 Mass. at 324. It also observed that in that case the land surveyors had made no "misstatements to the Plaintiffs or to anyone else", that the report that they had prepared was accurate, and that the report really failed to discuss the significance of its test results; thus, there is no claim available against the surveyors. *Id.*

Accordingly, from the very beginnings of construction of Gen. Laws Chapter 93A, Massachusetts courts have not required direct privity of conduct in a transaction between the parties for liability under Section 11, although courts might look to a possible de minis role of an alleged wrongdoer when looking to whether, as a whole, there was actionable conduct.

### III.  DEFENDANTS' ARGUMENT THAT § 11 REQUIRES A TRANSACTION "BETWEEN THE PARTIES" LACKS MERIT

A review of the cases shows that Section 11 of Gen. Laws Chapter 93A simply requires that there be a transaction in "trade or commerce," *not* that there is an immutable requirement that there be a business relationship *between the parties* as urged by Defendants.  *See Standard Register Co. v. Bolton-Emerson, Inc.,* 38 Mass. App. Ct. 545, 547, 649 N.E.2d 791, 794-95 (1995); *Chestnut Hill*, 653 F. Supp. at 933 (extending the coverage of Section 11 to intended third-party beneficiaries).  In *Standard Register*, the court more specifically held:

> [P]rivity is not required to maintain a nonwarranty-based action under 93A, i.e., one based on fraud, *so long as the parties are engaged in more than a minor or insignificant business relationship*.  *See Mongeau v. Boutelle*, 10 Mass. App. Ct. 246, 247-248, 407 N.E.2d 352 (1980).  *Contrast Nei v. Boston Survey Consultants, Inc*., 388 Mass. 320, 323-324, 446 N.E.2d 681 (1983). *See also Chestnut Hill Dev. Corp. v. Otis Elevator Co*., 653 F. Supp. 927, 933 (D. Mass. 1987) (discussion of privity requirement).

38 Mass. App. Ct. at 551, 649 N.E.2d at 795 (emphasis added).  Although Massachusetts courts have not expressly delineated what "more than a minor or significant business relationship" means, some guidance does exist.

For example, in *First Enterprises, Ltd. v. Cooper*, 425 Mass. 344, 680 N.E.2d 1163 (Mass. 1997), the Court held that the plaintiff buyer of goods could bring an action under Section 11 based on the sellers' attorneys' unsubstantiated assurances about their clients' ability to pay for goods, even though the relevant "transaction" was not a transaction between the attorneys

001534-16 141256 V1

3

and the buyer.  The Court held that because the attorneys had "injected themselves into the trade and commerce of the two businesses" (*id.* at 344, 1165), there was a significant relationship between the parties for Section 11 purposes.  *Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 653 F. Supp. at 933 (involved a claim by a condominium developer against the elevator subcontractor with whom it had no business; in permitting the claims to proceed to trial, the court observed that there is "no requirement that parties be in privity before their actions come within the regulatory ambit of M.G.L.c. 93A § 2").

Defendants' lead case is not factually on point.  In *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892 (D. Mass. 1991), a federal court (Keeton J.), was presented with an odd § 11 claim in which the only connection between the two businesses was the happenstance that they were abutting landowners.  One landowner (the plaintiff) complained that it should have been told by the other landowner (the defendant) of contamination of the defendant's land (since the plaintiff had been planning a condominium project for the plaintiff's property, and would like to have known about the abutting contamination).  The *Cash Energy* court could find no law whatsoever for the proposition that there needed to be a relationship between the parties in order for there to be a § 11 claim.  *Cash Energy,* 768 F. Supp. at 983.  But the circumstances appeared novel since the § 11 claim arose simply out of the happenstance that the plaintiff and defendant businesses physically abutted one another.  The Court concluded, then, that there must be "limits of common sense", and thus a motion to dismiss the Chapter 93A claim would be allowed.  *See also L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*, 121 F. Supp. 2d 147 (D. Mass. 2000) (involving a claim by one business against another where the only connection between the two was that they were abutting land owners, and thus there was no transaction at all in the case); *Swenson v. Yellow Transp., Inc.*, 317 F. Supp. 2d 51 (D. Mass. 2004) (where the only connection

between the parties was the automotive accident that gave rise to the case).  *Cash Energy*, *L.B. Corp.,* and *Swenson* are best understood for the simple proposition that there must be some kind of a business transaction in a § 11 case; they do not represent an abridgement of the long-standing rule that privity is not a requirement for a § 11 claim.  Simple absence of a transaction was also found dispositive in *Szalla v. Locke*, 421 Mass. 448, 451, 657 N.E.2d 1267 (1995) (involving a private arrangement to form a business together and a falling out of the parties to that proposed venture; following the line of cases that "parties in the same venture [did] not fall within the scope of G.L.c. 93A, § 11", the Court concluded that here was simply "no commercial transaction on these facts in the sense required by c. 93A").

In the present case there are millions of transactions each time a class member pays for a drug manufactured by a defendant.

### IV. DEFENDANTS' INTERFERED IN "TRADE OR COMMERECE" THROUGH THEIR PARTICIPATION IN FRAUDULENT REMIBURSEMENT TRANSACTIONS

In rejecting a requirement of privity in § 11 claims, the SJC has articulated two alternatives by which a § 11 claim may succeed.  In *First Enters. Ltd. v. Cooper*, 425 Mass. 344, 680 N.E.2d 1163 (1997), the question was whether a lawyer could be held liable under Section 11 to his clients adversaries for engaging in "trade or commerce" by submitting a false legal claim against those adversaries.  The Court posed the two alternatives as follows:

> "[T]o survive the defendant's motion to dismiss, the plaintiffs must show that the defendant had a commercial relationship with the plaintiffs *or* that the defendant's actions interfered with 'trade or commerce'"  [*First Enters., Ltd.* 425 Mass. at 347 (emphasis added).]

*See also Spencer v. Doyle*, 50 Mass. App. Ct. at 10 (presenting the same ***alternative*** approach that either (i) there must exist either some "commercial relationship" between the parties, or (ii) that the plaintiffs must demonstrate that the defendants' actions interfered with "[t]rade or

commerce". *See also Reisman v. KPMG,* 57 Mass. App. Ct. 100, 787 N.E.2d 1060 (2003) (finding sufficient business relationship under § 11 when plaintiffs stockholders relied on financial statements prepared by the corporation's accounting firm).[1]

Applying the law to the facts of this case, Defendants are subject to liability under Gen. Laws Chapter 93A, §11. Defendants' direct complicity in the critical aspects of the misconduct – inflating the AWP and marketing the spread, thereby causing over-reimbursement for specialty pharmaceuticals – involved numerous business transactions affecting the trade or commerce. The claims of class members under § 11 present a significant and direct relationship between Defendants' misconduct and the harm caused to the class members, all in the context of transactions occurring in trade or commerce. Defendants caused fraudulently inflated AWPs to be published knowing that members of Class 2 and Class 3 would use those AWPs when either purchasing or reimbursing for Defendants' subject drugs. Because Defendants could have and did actually foresee that the members of Class 2 and Class 3 would rely on their published

---

[1] Defendants' remaining cases are similarly unpersuasive because they either (1) stand for the unremarkable proposition that there must be an unfair practice under Section 11, or (2) simply state that there must be a business relationship (as opposed to a non-business relationship) between the parties. *See States Res. Corp. v. Architectural Team, Inc.,* 433 F.3d 73, 84 (1st Cir. 2005) (when determining whether the proposed counterclaim under Chapter 93A by defendant was futile, the court declined to rule on whether a commercial transaction took place because it held that there was nothing unfair or deceptive about plaintiff's conduct); *McAdams v. Mass. Mut. Life Ins. Co.,* 391 F.3d 287, 303 (1st Cir. 2004) (when affirming dismissal of the Chapter 93A § 11 claim brought by a group of former general agents of defendant insurer alleging that the plan was managed in violation of the contract and other common law duties, the First Circuit declined to address the district court's holding that this was a purely private contract between employers and employees that was not open to the public, and instead held that defendant did not act in dereliction of its contractual obligations, and that Chapter 93A requires more than a mere difference of opinion); *Swenson v. Yellow Transp., Inc.,* 317 F. Supp. 2d at 55 (granting summary judgment against plaintiffs because they tried to fit a "straight-forward motor vehicle accident" into the rubric of Chapter 93A, despite the fact that the accident was the result of mere negligence and not a deceptive or unfair act); *L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.,* 121 F. Supp. 2d at 152 (where plaintiff sought compensation for damage to its real properly caused by chemicals seeping into the groundwater by the abutting landowner, the court held that plaintiff's 93A claim could not survive because, among other reasons, plaintiff was complaining about excessive pumping for a well, not of unfair acts or business practices); *Nei v. Boston Survey Consultants*, 388 Mass. at 317 (in a case concerning a surveyor's failure to disclose to a buyer a fact about the purchased land, the court found that the surveyors played a "minor role" in the plaintiff's purchase of the property, did not misrepresent the size of the lot, made no misstatements to the plaintiffs or to anyone else, and provided accurate reports); *Begelfer v. Najarian,* 381 Mass. 177, 409 N.E. 4d 167, 176 (1980) (in a case where the plaintiffs engaged in buying, selling, and renovating residential properties and executed several notes with defendants towards a loan, the only relevant question the court considered was whether the defendants, private individuals who took part in an isolated transaction, could be held liable under 93A § 11).

AWPs, there was a sufficient business relationship between the parties under Section 11, and Defendants' acts or practices interfered with trade or commerce. Defendants themselves, in their own documents, recognized that there was a transaction at issue and that their actions effected such transactions. *See* Plaintiffs' Trial Exhibit 14, at AZ0237144, discussing the impact of raising AWPs on Medicare co-payors; and Plaintiffs' Trial Exhibit 259, discussing "public relations issue" if patients found out they were being billed off of fictitious numbers. The Court should reject Defendants' unsupported effort to cabin the statute.

The purposes of the statute are furthered by this approach. The "Massachusetts state business protection statute confers standing broadly upon 'any person who engaged in the conduct of any trade or commerce and who suffers any loss of money or property' from the unfair or deceptive trade practices of another." *Skinder-Strauss Assocs. v. Massachusetts Continuing Legal Educ.*, 914 F. Supp. 665, 680 (D. Mass. 1995) (quoting Chapter 93A § 11). Section 11 provides "a private cause of action to a person [including various business entities] who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business." *Manning v. Zuckerman*, 388 Mass. 8, 10, 444 N.E.2d 1262 (Mass. 1983) (citing *Nader v. Citron*, 360 N.E.2d 870, 871 (Mass. 1977)). Importantly, Massachusetts courts have held that "[t]echnicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." *Leardi v. Brown*, 394 Mass. 151, 159, 474 N.E.2d 1094 (1985) (quoting *Baldassari v. Public Fin. Trust*, 369 Mass. 33, 41 (1975)).

## IV.   SECTION 9 NOT SECTION 11 APPLIES TO THE CLAIMS OF BLUE CROSS, THE TAFT HARTLEY FUNDS AND CONSUMERS

During Defendants' opening, Mr. Wise, speaking on behalf of all Defendants, claimed that the ***plaintiff classes can only invoke*** the protections of Section 11. (11/6/06 Trial Transcript

at 64.)  However, Defendants are also incorrect in that only Section 9 applies to the claims of the named plaintiffs.  The claims of the consumer Plaintiffs, Sheet Metals, BCBS-MA and Pipefitters are governed by Section 9 and not by Section 11.  Section 9 grants a cause of action to "[a]ny person other than a person entitled to bring action under section eleven of this chapter."  Sections 9 and 11 are mutually exclusive in that businesses generally proceed under Section 11, as the section specifically states that "any person who engages in the conduct of any trade or commerce" may bring an action.  *Continental Ins. Co. v. Bahnan*, 216 F.3d 150, 156 (1st Cir. 2000).  However, Section 9 applies not only to consumers, but also to not-for-profit TPPs who, under relevant Massachusetts law, are not viewed to be "engaged in business or commerce" under Section 11.  Notably, courts have held that BCBS-MA, in its capacity of reimbursing for its members' purchases of pharmaceuticals, may recover under Section 9.  See, e.g., *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 45 (D.D.C. 2003) (finding Plaintiff BCBS-MA "has standing to assert a claim under Section 9 of Massachusetts's Consumer Protection Act because '[t]he transactions identified by Plaintiff here – payment for members' prescription drug claims . . . are clearly at the core of BCBS Massachusetts's charitable mission.'").[2]  The same rationale applies to Pipefitters and Sheet Metals, both of which are Taft-Hartley Funds that exist solely to provide benefits, including major medical benefits, to their union members, that are financed through employer contributions negotiated by the Union through the collective bargaining process.  *See, e.g*., Trial Affidavit of Charles Hannaford, ¶¶ 7-10; Trial Affidavit of Glenn Randle, ¶ 2.

---

[2] *See also In re Cardizem Antitrust Litig.*, No. 99-Md-1278 slip op. at 6 (E.D. Mich. May 27, 2003); and *Kartell v. Blue Shield of Massachusetts, Inc.*, 592 F.2d 1191 (1st Cir. 1979) (reviewing non-profit status of BCBS).

001534-16  141256 V1

## V.     CONCLUSION

Defendants' diversion from the trial lacks merit. The Section 11 claims are proper and should proceed.


DATED:  November 21, 2006               By     /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Elizabeth Fegan
Hagens Berman Sobol Shapiro LLP
60 W. Randolph Street, Suite 200
Chicago, IL  60601
Telephone: (312) 762-9235
Facsimile: (312) 762-9286

Eugene A. Spector
Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Allan Hoffman
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Donald E. Haviland, Jr.
The Haviland Law Firm, LLC
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 392-4400
Phone:  (215) 609-4661

**CO-LEAD COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM REGARDING THE TRANSACTION REQUIREMENT IN GEN. LAWS CHAPTER 93A, § 11** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 21, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

By /s/ Steve W. Berman
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292