# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM REGARDING DEFENDANTS' *PER SE* UNFAIR OR DECEPTIVE ACTS OR PRACTICES**

001534-16 141013 V1

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..................................................................................................................2

II. LAW ESTABLISHING *PER SE* LIABILITY ....................................................................3

    A. Massachusetts Attorney General Regulations Define Unfair Acts or Practices in Violation of Ch. 93A, § 2..................................................................3

    B. A Violation of Mass. Regs. Code tit. 940, § 3.16 Constitutes a *Per Se* Unfair or Deceptive Act or Practice in Violation of Ch. 93A, § 2 ..........................4

    C. Defendants Have Committed a *Per Se* Violation of Ch. 93A, § 2 by Violating Mass. Regs. Code tit. 940, § 3.16(4) and Federal Trade Commission Law ........................................................................................................6

    D. Defendants Have Committed a *Per Se* Violation of Ch. 93A, § 2 by Violating Mass. Regs. Code tit. 940, § 3.16(3) and State Regulations Governing List Pricing.......................................................................................................10

        1. Section 3.04......................................................................................................10

        2. Section 3.05(1).................................................................................................11

    E. Defendants Have Committed a *Per Se* Violation of Ch. 93A, § 2 by Violating Mass. Regs. Code tit. 940, § 3.16(4) and the Medicare Act..................12

III. CONCLUSION.....................................................................................................................14

## I. INTRODUCTION

The Court has requested that Plaintiffs brief the issue of whether Defendants' acts or practices are *per se* unfair or deceptive in violation of Ch. 93A. The short answer to that inquiry is a resounding **yes**.

There are three sources of law supporting a finding that Defendants have committed *per se* unfair or deceptive acts or practices:[1]

*First*, Mass. Regs. Code tit. 940, § 3.16(4) provides that violations of the Federal Trade Commission Act constitute violations of Ch. 93A, § 2. The FTC has long held that fictitious list prices violate the FTC Act, and that the label "list price" cannot be used unless "substantial sales" are made at that price. *See*, *e.g.*, *Matter of Regina Corp.*, 61 F.T.C. 983, 1962 F.T.C. Lexis 92, at *2 (Oct. 11, 1962) ("*Regina I*"), *aff'd*, *Regina Corp. v. F.T.C.*, 322 F.2d 765 (3d Cir. 1963), *and modified by Matter of Regina Corp.*, 65 F.T.C. 246, 1964 F.T.C. Lexis 30 (Apr. 7, 1964) ("*Regina II*"). Defendants' AWPs, which Defendants themselves have deemed "list prices," violated the FTC Act because, as Defendants admit, **no** sales, let alone "substantial sales," ever were made at near AWP.

*Second*, Mass. Regs. Code tit. 940, § 3.16(3) provides that a violation of a state regulation intended to protect consumers constitutes an unfair or deceptive practice in violation of Ch. 93A, § 2. The Attorney General has adopted specific pricing regulations providing that claims of list price must be based on fact. Mass. Regs. Code tit. 940, § 3.04. Because it is well-established that Defendants' AWPs for the Subject Drugs bore no relationship to actual prices in the marketplace, and that **no** sales were ever made anywhere near AWP, Defendants have violated this regulation and, therefore, Ch. 93A, § 2.

---

[1] In addition to finding that Defendants committed unfair or deceptive acts or practices in violation of Ch. 93A, § 2 based on these tenets of per se liability, the Court can and should also find that Defendants committed unfair or deceptive acts or practices apart from the per se analysis.

*Third*, Mass. Regs. Code tit. 940, § 3.16(4) also provides that a violation of a federal consumer protection statute will constitute a *per se* violation of Ch. 93A, § 2. The Medicare Act was passed to protect Medicare beneficiaries and their assigns and "make[] all levels of reasonable and necessary medical care more readily available to the aged, while at the same time discouraging excessive expenditure by requiring beneficiaries to pay for a proportionate share of the cost of the services they use." *TAP Pharms. v. United States HHS*, 163 F.3d 199, 204 (4th Cir. 1998). Defendants' concerted frustration of these purposes through gaming the AWP system and not reporting actual average prices as the Court has found Congress intended harmed the very consumers for which the Act was passed to protect. As such, Defendants have committed a *per se* violation of Ch. 93A, § 2 by virtue of Mass. Regs. Code tit. 940, § 3.16(4).

Plaintiffs respectfully submit that the Court can and should find a *per se* violation of Ch. 93A, § 2 based on these principles of law.

## II.   LAW ESTABLISHING *PER SE* LIABILITY

### A.   Massachusetts Attorney General Regulations Define Unfair Acts or Practices in Violation of Ch. 93A, § 2

Mass. Gen. Laws Ch. 93A, § 2(c) provides that "[t]he attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of [Ch. 93A]." "The Attorney General's power to promulgate rules and regulations is limited by § 2(c) only to the extent that such rules shall not be inconsistent with FTC and Federal court interpretations of the FTC Act mentioned in § 2(b)." *Purity Supreme, Inc. v. Attorney Gen.*, 380 Mass. 762, 407 N.E.2d 297, 301 (1980); *see also id.* at 304 ("The Attorney General is not constrained to propose abstract definitions of the words 'unfair' or 'deceptive'; rather, he is to identify particular business practices as falling within their scope."). Attorney General rules and regulations, including those relating to Chapter 93A, "unless invalid, have the force of law." *Homsi v. C.H. Babb Co.*, 10

Mass. App. Ct. 474, 479, 409 N.E.2d 219, 224 (1980) (citation omitted); *see also Purity Supreme*, 407 N.E.2d at 306 ("[W]e hold that the Legislature has, by G.L. c. 93A, § 2(c), delegated to the Attorney General the power to promulgate rules and regulations defining with specificity acts and practices which violate G.L. c. 93A, § 2(a).").

Pursuant to this authority, the Attorney General has promulgated rules and regulations interpreting Mass. Gen. Laws Ch. 93A, including Mass. Regs. Code tit. 940, § 3.16, which provides:

> [A]n act or practice is a violation of M.G.L. c.93A, § 2 if:
>
> (1) It is oppressive or otherwise unconscionable in any respect; or
>
> (2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or
>
> (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; or
>
> (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2.

### B.   A Violation of Mass. Regs. Code tit. 940, § 3.16 Constitutes a *Per Se* Unfair or Deceptive Act or Practice in Violation of Ch. 93A, § 2

Violation of one of these regulations leads to a *per se* finding of unfair or deceptive acts or practices under Ch. 93A, § 2. *See*, *e.g.*, *In re Nosek*, 2006 U.S. Dist. Lexis 82416, at *26 (D. Mass. Nov. 13, 2006) (Young, J.) ("Under 940 Code of Massachusetts Regulations § 3.16(4), a violation of chapter 93A occurs automatically if a violation of a federal consumer protection statute is found."); *Cablevision, Inc. v. Public Improvement Comm'n*, 184 F.3d 88, 106 (1st Cir.

1999) ("one can commit a chapter 93A violation without behaving like a 'rascal,' if one violates consumer protection or public safety laws") (citing Mass. Regs. Code tit. 940, § 3.16); *Hershenow v. Enter. Rent-A-Car Co. of Boston*, 445 Mass. 790, 801, 840 N.E.2d 526, 535 (2006) (assuming that violation of a state statute governing car rental disclosures would constitute *per se* unfair and deceptive practice per 940 Mass. Code. Regs. § 3.16(3) but holding that Ch. 93A was not violated because plaintiffs failed to establish loss causation); *Sheehy v. Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 195, 507 N.E.2d 781, 785 (1987) (finding *per se* liability under subsection (2) of the regulation in case where seller of property failed to disclose that the property had been contaminated by hazardous material); *In re Tavares*, 298 B.R. 195, 202-03 (Bank. D. Mass. 2003) (liability under federal usury statute passed to protect the public could result in *per se* violation of Ch. 93A, § 2 by virtue of Mass. Regs. Code tit. 940, § 3.16).

As the Supreme Judicial Court of Massachusetts (the "SJC") explained in *Purity Supreme*:

> That the Legislature intended the Attorney General's regulations to set standards the violations of which would constitute violations of c. 93A is consistent with the over-all purpose of c. 93A and with both FTC practice and the practice in other States.  As of 1977, 48 States plus Puerto Rico and Guam had enacted consumer protection laws.  Uranga, Idaho and Oregon Consumer Protection Acts: Administrative Powers of the Attorneys General, 13 *Willamette L.J.* 455, 455 (1977).  Many of these are "little FTC acts," as is G. L. c. 93A, and most are enforced by State Attorneys General.  Tongren & Samuels, The Development of Consumer Protection Activities in the Ohio Attorney General's Office, 37 *Ohio St. L.J.* 581, 582 (1976).  Note, Consumer Protection by the State Attorneys General:  Time for Renewal, 49 *Notre Dame Law*, 410, 411 & n.7 (1973).  *See also* Pirozzolo, Chapter 93A: The Massachusetts Little FTC Act -- A Potent Unexplored Remedy in Business Disputes, 62 Mass. L.Q. 77 *passim* (1977).  Many States provide by statute that rules made by the enforcement agency shall have the force of law, or that violation of a rule will be prima facie evidence of violation of the statute.  *See*, *e.g.*, Ill. Ann. Stat. c. 121 1/2, § 264 (Smith-Hurd Supp. 1979) (force of law); Me. Rev. Stat.

> Ann. tit. 5, § 207(2) (prima facie evidence); N.J. Stat. Ann. § 56:8-4 (1964) (force of law); R.I. Gen. Laws § 6-13.1-7 (c) (Supp. 1979) (force of law); Vt. Stat. Ann. tit.9, § 2453 (d) (1970) (prima facie evidence). Other States have established by case law that rules made by their Attorneys General have the force of law. *See*, *e.g.*, *Department of Legal Affairs v. Rogers*, 329 So. 2d 257, 261 n.2, 267 (Fla. 1976). Oregon provides by statute a list of acts which will be considered unfair or deceptive, and adds a "catch-all" category. *See* Or. Rev. Stat. § 646.608(1)(u) (1979). In order for an act to fall within the "catch-all" category, the Attorney General has to have first promulgated a rule which covers the act. *See* Or. Rev. Stat. § 646.608(4) (1979). *See generally* Uranga, *supra* at 474-475.

380 Mass. at 771-72 & n.11, 407 N.E.2d 297.

The effect of a *per se* violation is that an unfair or deceptive act or practice is found to have occurred under Ch. 93A, § 2. However, a plaintiff must still establish causation and injury under Ch. 93A. *See Hershenow*, 445 Mass. at 799 n.17, 840 N.E.2d 526, 535.

**C.      Defendants Have Committed a *Per Se* Violation of Ch. 93A, § 2 by Violating Mass. Regs. Code tit. 940, § 3.16(4) and Federal Trade Commission Law**

Mass. Regs. Code tit. 940, § 3.16(4) deems it a violation of Ch. 93A, § 2 if the conduct at issue violates the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (the "FTC Act"). Indeed, in construing G.L. Ch. 93A, courts are to be guided by interpretations given by the Federal Trade Commission (the "FTC") and federal courts to section 5(a) of the FTC Act. Mass. Gen. Laws Ch. 93A, § 2(b); *Slaney v. Westwood Auto., Inc.*, 366 Mass. 688, 694, 322 N.E.2d 768 (1975); *PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 595, 321 N.E.2d 915 (1975).

Disseminating pricing information when fully aware that such prices are not the usual and customary prices at which the products are sold – as Defendants have done –constitutes unfair and deceptive practices under the FTC Act. *See Regina I*, 61 F.T.C. 983, 1962 F.T.C. Lexis 92, at *34-36 (citing cases).

- 6 -

At issue in *Regina* were fictitious list prices supplied by a manufacturer to "distributors and retailers . . . thereby representing, directly or indirectly or by implication, that such 'list' prices are the usual and customary retail prices for such merchandise," 1962 F.T.C. Lexis 92, at *2-3.  Initially, the FTC found that this violated the FTC Act and issued a cease and desist order against Regina on the basis that

> [m]isrepresentations of the usual and customary value of a product and of savings afforded by an offered sale price of such product are unfair and deceptive practices under the Federal Trade Commission Act. . . .  In this case, Regina disseminated its suggested list prices to resellers rather than directly to the purchasing public.  Regina was fully aware that these suggested list prices were not the usual and customary retail prices at which Regina products were sold in the trading areas involved.  In so furnishing fictitious retail prices to resellers, Regina placed in the hands of retailers and others the means and instrumentalities by which they could mislead and deceive the purchasing public.  Such practice is a violation of the Federal Trade Commission Act.

*Regina I*, 1962 F.T.C. Lexis 92, at *34-35 (citations omitted).  *See also Niresk Indus., Inc. v. FTC*, 278 F.2d 337, 340 (7th Cir. 1960) ("Misrepresentations of the regular and customary value of a product offered for sale and of savings afforded by an offered sale price of such product are unfair and deceptive practices as defined by the Act.").

As another court has explained in another FTC action from the same time period:

> Fictitious prices are illegal even though it is obvious to the sophisticated that the price tag is only a come-on.  "The law is not made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."

*Helbros Watch Co. v. FTC*, 310 F.2d 868, 870 n.4 (D.C. Cir. 1962) (citations omitted).

After the Court of Appeals for the Third Circuit affirmed *Regina I*, the FTC updated its pricing guidelines to provide that list prices cannot be used unless "substantial (that is, not isolated or insignificant) sales are made in the advertiser's trade area (the area in which he does

- 7 -

business).” FTC Guides Against Deceptive Pricing, 16 C.F.R. § 233.3(d).[2] The FTC then modified the terms of the cease and desist order issued in *Regina I* in light of the new guidelines. *Regina II*, 1964 F.T.C. Lexis 30, at *8-10. Under the modified order, the FTC ordered the manufacturer to cease and desist from "[a]dvertising or disseminating any list or preticketed price unless such price is a good faith estimate of the actual retail price and does not appreciably exceed the highest price at which substantial sales are made in respondent's trade area." *Id.*, at *10.

The FTC did not define "substantial." However, the D.C. Circuit in *Helbros Watch* had previously upheld the FTC's ruling that "preticketing" constituted unlawful "fictitious pricing" where 40 percent of all sales were made at prices substantially less than the preticketed price. 310 F.2d at 870. In other words, 60 percent of sales made at the preticketed price was not sufficiently substantial. The FTC has also made clear that phony wholesale prices are forbidden. *Federated Nationwide Wholesalers Serv. v. FTC*, 398 F.2d 253, 257 (2d Cir. 1968) (upholding FTC finding that calling prices "wholesale" was deceptive when prices charged are uniformly higher than actual prices paid by retailers).

Pursuant to this FTC Act jurisprudence, Defendants' pricing practices here violate the FTC Act as applied in *Regina II* and expounded in the FTC Guides Against Deceptive Pricing, 16 C.F.R. § 233.3(d). ***Defendants' AWPs for the Subject Drugs, which Defendants themselves have deemed "list prices" and which the Court finds are formulaic equivalents to wholesale***

---

[2] As the Court of Appeals for the Seventh Circuit has commented with respect to the FTC Deceptive Pricing Guides, "[a]lthough they are not 'as stringent or detailed' as some of the state initiatives in this area, these guidelines have served as 'the benchmark standard' for more than thirty years." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 972 (7th Cir. 1999) (citation omitted). The court explained that "[t]he [FTC] regulations do not simply offer the defendant safe harbor against a charge of deceptive advertising; they essentially define the circumstances under which the advertising of a discount price is deceptive." *Id.* at 973. The court also called for deference to the FTC: "[A]s the administrative agency charged with preventing unfair trade practices, the [FTC's] assessment of what constitutes deceptive advertising commands deference from the judiciary. . . . It is no doubt for that very reason that even the Illinois statute mandates consideration of the FTC's views on what constitutes an unfair, misleading, or deceptive act." *Id.* at 973. As shown above, Ch. 93A mandates similar consideration.

*list prices (and vice versa), violate these well established principles because the record evidence plainly demonstrates that <u>no</u> sales, let alone "substantial sales," were ever made at those AWPs*.

Furthermore, Defendants' wholesale list prices – whether denominated wholesale list prices, wholesale acquisition costs, or some other term (collectively "list prices") – violated the FTC Act, even though Defendants claim that, for some drugs, substantial sales were made at, close to, or very close to, these list prices.  As to the Subject Drugs here at issue, the evidence reveals that at a certain point – sometimes in response to the entry to the market of a generic competitor and sometimes in response to already existing competition – actual sale prices decreased, often dramatically, while Defendants made it their practice *not* to submit revised, that is, lower, list prices, to the Publishers, even though Defendants knew that the Publishers would continue regular, periodic re-publications of the list prices that Defendants themselves had previously provided to the Publishers.  After actual prices began tumbling, Defendants could no longer claim that *substantial* sales were being made at, close to, or very close to, the list prices that they caused to be published and re-published.  *Regina II*, 1964 F.T.C. Lexis 30, at *10; *Helbros Watch*, 310 F.2d at 870; 16 C.F.R. § 233.3(d); *see also In the Matter of John Surrey, Ltd., et al.*, 67 F.T.C. 299, 1965 F.T.C. Lexis 42, at *73 (1965) (respondent ordered to cease and desist from "[u]sing the words "manufacturer's list price," "suggested list price," . . . or words of similar import, to refer to the price at which any product is generally sold by others, when such amount appreciably exceeds the highest price at which substantial sales of the product are being made by principal retail outlets in representative communities throughout respondents' trade area at the time such representation is made").

Accordingly, because Defendants have violated Section 5 of the FTC Act (15 U.S.C. § 45(a)(1)), they have committed unfair and deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A, § 2 by virtue of Mass. Regs. Code tit. 940, § 3.16(4).

### D.   Defendants Have Committed a *Per Se* Violation of Ch. 93A, § 2 by Violating Mass. Regs. Code tit. 940, § 3.16(3) and State Regulations Governing List Pricing

Mass. Regs. Code tit. 940, § 3.16(3) deems it a violation of Chapter 93A, § 2 to fail to comply with "existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." Defendants' pricing practices violated at least the following Attorney General regulations that are intended to protect consumers through regulating pricing conduct: Mass. Regs. Code tit. 940, §§ 3.04 and 3.05(1).

The preface to these regulations demonstrates their broad application. For example, the Attorney General explained that "940 CMR 3.00 is promulgated pursuant to M.G.L. c. 93A, § 2(c) for purposes of determining whether conduct, terminology or representations involve unfair methods of competition or unfair or deceptive acts or practices, in violation of M.G.L. c. 3A, § 2(a). 940 CMR 3.00 is not intended to be all inclusive as to the types of activities declared unlawful by M.G.L. c. 93A, § 2(a) but are [sic] intended to be of ***general application***." Preface to Regulations Pertaining to Mass. Gen. Laws Ch. 93A, § 2 (emphasis added). These regulations of "general application" can and should be applied here.

#### 1.   Section 3.04

Mass. Regs. Code tit. 940, § 3.04 provides in pertinent part:

> No claim or representation shall be made by any means which has the capacity or tendency or effect of deceiving buyers or prospective buyers as to the value of the past, present, common or usual price of a product, or as to any reduction in price of a product . . . . [V]alue claims utilized in connection with terms such as . . . 'list price' or other like terms, expressions or representations must

- 10 -

>be based on facts provable by the claimant . . . [b]y his own records; or [b]y reasonably substantial competitive sales in the trading area where such claims or representations are made, under circumstances and conditions as represented or implied by the claims or representations.

Defendants' widely published AWPs, which Defendants themselves have deemed "list prices," violated Mass. Regs. Code tit. 940, § 3.04 because no sales were ever were made at their published AWPs. In other words, Defendants cannot demonstrate that the AWPs they established and caused to be published were "based on facts provable by the claimant" or "[b]y reasonably substantial competitive sales" as the regulation commands. Moreover, the false pricing signal delivered by fictitious AWPs certainly have "the capacity or tendency or effect of deceiving buyers or prospective buyers as to the . . . common or usual price of a product." Indeed, it is difficult to imagine a more obvious violation of Mass. Regs. Code tit. 940, § 3.04. And as demonstrated *supra*, the same conclusion obtains for Defendants' widely published wholesale list prices, whether denominated wholesale list prices, wholesale acquisition costs, or some other term.

### 2. Section 3.05(1)

Mass. Regs. Code tit. 940, § 3.05(1) provides in pertinent part that "[n]o claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or effect of deceiving buyers or prospective buyers in any material respect." The falsity of Defendants' AWPs, as just discussed *supra*, also violated § 3.05(1). Fictitious pricing signals certainly have the capacity or effect of deceiving market participants in a material respect.

- 11 -

**E.     Defendants Have Committed a *Per Se* Violation of Ch. 93A, § 2 by Violating Mass. Regs. Code tit. 940, § 3.16(4) and the Medicare Act**

Mass. Regs. Code tit. 940, § 3.16(4) also provides that a violation of a federal consumer protection statute will constitute a *per se* violation of Ch. 93A, § 2. The Medicare Act is such a statute.

42 C.F.R. § 405.517, which explicitly references "average wholesale price," was promulgated under the Act on November 25, 1991 by the federal Department of Health & Human Services. *See* Court's Memorandum and Order, November 2, 2006 ("Nov. 2, 2006 Order"), at 6. That regulation was a direct articulation of Congress's 1989 statutory directive to control Part B-related spending,[3] and, as such, should be considered a federal law meant for the protection of consumers within the meaning of Mass. Regs. Code tit. 940, § 3.16(4). Indeed, the federal government adopted 42 C.F.R. § 405.517 as a means of containing costs and ensuring thereby that reimbursements and co-payments for drugs would be based on actual indications of what was happening in the marketplace. Promulgation of 42 C.F.R. § 405.517 and later, the enactment of 42 U.S.C. § 1395u(o), which also references average wholesale price, are functions of Congress's intent that Medicare and its beneficiaries should pay for covered drugs at reasonable levels, based on actual costs. *See* Br. of United States, at pp. 16-17 ("In this case, the plain meaning interpretation of 'average wholesale price' comports with the Medicare statute and its general payment objectives. As noted above, a consistent and overarching objective of the Medicare statute has been to reimburse for drugs and biologicals based upon standards of 'reasonable charges' and 'reasonable cost.'") (citing 42 U.S.C. §§ 1395l(a)(1) and 1395x(v); S. Rep. No. 404, 89th Cong. 1st Sess. (1965), *reprinted in* 1965 U.S.C.A.A.N. at 1985).

---

[3] Brief of the United States as *Amicus Curiae*, Sept. 15, 2006 ("Br. of United States") at pp. 7, 12-13.

As the Fourth Circuit Court of Appeals has observed in discussing the interests protected by Medicare Part B:

> Medicare Part B, like many statutes, embodies a compromise between ideals of achievement and economic feasibility that puts its basic purposes in tension. The Act seeks to "make the best of modern medicine more readily available to the aged," but it tries to do so by covering only "reasonable and necessary" care in a manner that will ensure the financial integrity of the system. Perhaps the clearest indication of the statute's competing goals appears in its provision establishing that health care services will generally be covered at a statutorily-defined percentage of their cost. 42 U.S.C.A. § 1395l (West 1992 & Supp. 1998). Through this provision, ***the Act makes all levels of reasonable and necessary medical care more readily available to the aged, while at the same time discouraging excessive expenditure*** by requiring beneficiaries to pay for a proportionate share of the cost of the services they use.

*TAP Pharms. v. United States HHS*, 163 F.3d at 204 (emphasis added).[4]

Given that beneficiaries and their Medigap insurers make co-pays based on the allowed amount for drugs that are covered by Medicare Part B, 42 U.S.C. § 1395l(a)(1)(S), which allowed amounts were based on AWP for the class periods, the financial controls that Congress imposed on Medicare expenditures necessarily were meant also to benefit other payors, including beneficiaries and their insurers, under the system.

The Court has appropriately ruled that Congress intended AWP to be an actual average price that includes discounts and rebates. Nov. 2, 2006 Plain Meaning Order at 22-23. By reporting misleading and fictitious AWPs, Defendants have frustrated the purposes of the Medicare Act. When Defendants violated Medicare's financial controls and ignored the lawful

---

[4] This case arose when TAP challenged a Medicare carrier's decision to reduce the reimbursement paid for Lupron to the amount paid for Zoladex. The court ultimately rejected TAP's challenge on prudential standing grounds, finding that TAP's interests were not within the zone of interests to be protected by the Medicare statute. In doing so, the court explained that "[t]he parties expressly subject to the Act are beneficiaries and their assigns, see 42 C.F.R. § 424.55, whose statutorily-protected interests are in the direct receipt and provision of 'reasonable and necessary' medical services, 42 U.S.C.A. 1395y(a)(1)(A)." *Id.* at 208.

meaning of AWP, their actions harmed not only the government but also the Medicare beneficiaries and insurers.  As the Court has already found:

> [B]ecause the government shoulders only 80 percent of drug costs under Medicare under the industry's interpretation, Congress would be intentionally subjecting Medicare beneficiaries, who are often old, poor, and, and sick, to exorbitant drug co-payments based on artificially high prices.  The interpretation that Congress intended to permit fictitious pricing produces the absurd result of penalizing the very beneficiaries the statute was designed to help.

Nov. 2, 2006 Plain Meaning Order at 22.

Defendants' practices perverted a system meant to protect the Medicare system and, by necessary extension, its beneficiaries and Medigap insurers, from unreasonable drug charges.  It is no wonder that a key Congressman was left to wonder aloud in 2001, "Why on earth do we have a system that requires a Medicare beneficiary to pay 20 percent as a copay of an artificial price?"  Nov. 2, 2006 Plain Meaning Order at 11, 21 (quoting *Medicare Drug Reimbursements: A Broken System for Patients and Taxpayers:  Joint Hearing Before the Subcomm. on Health and the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 107th Cong. 87-88 (2001)).  The reason, of course, is Defendants' gaming of the system to move product, to the detriment of Plaintiffs.  As Thomas Scully, former Administrator for CMS put it, "[t]he fact that the beneficiaries pay 20 percent copayments is a gigantic problem."  *Id.* at 22 (citation omitted).  The Court should hold pursuant to Massachusetts law that Defendants in causing this "gigantic problem" committed *per se* violations of Mass. Gen. Laws Ch. 93A, § 2(a) through their violations of the Medicare Act and Mass. Regs. Code tit. 940, § 3.16(4).

### III.    CONCLUSION

For all of the foregoing reasons, the Court should find the Defendants have committed *per se* violations of Mass. Gen. Laws Ch. 93A, § 2(a).

- 14 -

DATED:  November 27, 2006                By      /s/ Steve W. Berman
                                            Thomas M. Sobol (BBO#471770)
                                            Edward Notargiacomo (BBO#567636)
                                         Hagens Berman Sobol Shapiro LLP
                                         One Main Street, 4th Floor
                                         Cambridge, MA  02142
                                         Telephone: (617) 482-3700
                                         Facsimile: (617) 482-3003
                                         **LIAISON COUNSEL**

                                         Steve W. Berman
                                         Sean R. Matt
                                         Robert F. Lopez
                                         Hagens Berman Sobol Shapiro LLP
                                         1301 Fifth Avenue, Suite 2900
                                         Seattle, WA  98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594

                                         Elizabeth Fegan
                                         Hagens Berman Sobol Shapiro LLP
                                         60 W. Randolph Street, Suite 200
                                         Chicago, IL  60601
                                         Telephone: (312) 762-9235
                                         Facsimile: (312) 762-9286

                                         Eugene A. Spector
                                         Jeffrey Kodroff
                                         Spector, Roseman & Kodroff, P.C.
                                         1818 Market Street, Suite 2500
                                         Philadelphia, PA  19103
                                         Telephone: (215) 496-0300
                                         Facsimile: (215) 496-6611

                                         Marc H. Edelson
                                         Allan Hoffman
                                         Hoffman & Edelson
                                         45 West Court Street
                                         Doylestown, PA  18901
                                         Telephone: (215) 230-8043
                                         Facsimile: (215) 230-8735

Kenneth A. Wexler
Jennifer F. Connolly
The Wexler Firm LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Donald E. Haviland, Jr.
The Haviland Law Firm
740 S. Third Street, Third Floor
Philadelphia, PA  19147
Facsimile:  (215) 609-4661
Telephone:  (215) 392-4400

**CO-LEAD COUNSEL FOR PLAINTIFFS**

- 16 -

001534-16 141013 V1

**CERTIFICATE OF SERVICE**

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM REGARDING DEFENDANTS'** *PER SE* **UNFAIR OR DECEPTIVE ACTS OR PRACTICES** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 27, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292