<u>PATIENT ASSISTANCE PROGRAM GRANT AGREEMENT</u>

Agreement effective as of the last date of signature of either of the parties as set forth on the signature block below (the "Effective Date") by and between AmeriCares Foundation, Inc. 161 Cherry Street, New Canaan, Connecticut 06840 ("Foundation") and Schering Corporation, 2000 Galloping Hill Road, Kenilworth, New Jersey 07033 ("Schering")

WHEREAS, Foundation is a nonprofit private foundation that is exempt from federal and state income tax pursuant to Section 501(a) and 501(c)(3) of the Internal Revenue Code, as amended, and which is not a private foundation.  Foundation provides certain pharmaceutical products free of charge to Patients (as hereinafter defined) requiring such products pursuant to the Patient Assistance Program, which pharmaceutical products have been donated to Foundation;

WHEREAS, Schering Corporation is a research based pharmaceutical company that manufactures, markets and sells certain pharmaceutical products;

WHEREAS, Schering desires to donate certain pharmaceutical products (the "Products") and funding (the "Funding") to Foundation so that Foundation may make such Products available to certain eligible patients through Foundation's Patient Assistance Program;

## ARTICLE I
## DEFINITIONS

"Documedics" shall mean the organization providing certain logistical, operational, administrative and other assistance regarding eligibility determinations for Patients to participate in the Program.

"Patients" shall mean an individual(s) who meets the eligibility criteria set forth in Exhibit A hereto.

"Products" shall mean those pharmaceutical products of and/or marketed by Schering which have been donated to Foundation by Schering as identified in Exhibit B, as may be amended from time to time, with respect to which Foundation shall provide Services in accordance with this Agreement.

"Services" shall mean those mail service pharmacy or other services provided by Foundation for the Program hereunder, as said Services are further defined in Article II of this Agreement.

## ARTICLE II
## PATIENT ASSISTANCE PROGRAM SERVICES

Defendants' Exhibit

**2964**

01-12257 - PBS

2.1     Foundation shall supply Product(s) to those persons eligible to participate in the Program pursuant to agreed upon guidelines and criteria (the "Criteria") as administered by Documedics. The Patient enrollment, approval, and eligibility process shall be administered by Documedics (pursuant to an arrangement between Documedics and Schering) based on such Criteria as set forth in Exhibit A. Foundation and Schering shall ensure that the Program enrollment materials clearly specify and inform each Patient of the respective roles of Foundation and Schering in the Program prior to such Patients participation in the Program. Such Program enrollment materials will be annexed hereto and incorporated herein as an Exhibit to this Agreement within thirty (30) days of the Effective Date.

2.2     Foundation shall establish an account for each physician or Patient, as applicable, who participates in the Program. Within forty-eight hours after Foundation has received a prescription, or an order from a physician, for Patient (excluding weekends and holidays) (the "Period"), provided that no follow-up is required, Foundation will process the application. Foundation and Schering shall develop objective criteria for handling orders for any Patient that has become ineligible to participate in the Program. Such objective criteria will be annexed hereto and incorporated herein as an Exhibit to this Agreement within thirty (30) days of the Effective Date.

2.3     Also within the Period, provided that no follow-up is required, and subject to Section 2.2 above, Foundation will: (a) verify that the prescription is for a Patient; (b) fill the orders with no substitution; and (c) verify that the Prescription has been written for dosages and frequencies of administration that are within the FDA approved guidelines included within the Product packet insert or are as otherwise directed by the physician.

2.4     Foundation shall then fill the Prescription and ship it via express overnight delivery, to the Patient at the address the Patient has indicated or to the ordering physician at the address the physician had indicated (as applicable). This agreement shall not include the shipment of Product to Patients or physicians in Puerto Rico, unless and until Foundation, in its discretion, has successfully obtained all applicable registrations and permits to allow such shipments; provided that such shipments are otherwise allowable under applicable law. All deliveries of the Product by Foundation to the Patients or to the ordering physicians shall be in standard shipping containers provided by Foundation and the means of shipping and packaging shall conform to delivery specifications for the Product as specified on the Product label or Product packet insert.

2.5     Each subsequent prescription for the supply of Product will be sent by the Patient or his/her physician, as applicable, directly to Foundation in the self-addressed envelope provided by Foundation with the previous shipment. At the end of the Patient's eligibility period, the Patient or his/her physician, on behalf of the Patient, must submit a new application and the Patient must be reapproved for continued eligibility before any further prescriptions are filled or shipped by Foundation.

2.6     Foundation, through its chosen subcontractor, shall provide consultation and cognitive services to Patients regarding the Product consistent with any applicable law,

rules and regulations governing the practice of pharmacy. Patient information regarding the Product shall be provided by Foundation in accordance with any applicable laws, rules and regulations. Foundation shall <u>periodically</u> review patient information forms used by Foundation for the Product, and any modifications thereto. Foundation also may provide to Patients, Schering's current product packet insert for each Product.

2.7     Foundation shall supply to Schering (without patient-identifiable information), via a mutually agreed method of electronic data transmission or hard copy, inventory and status reports on the Program as described in Exhibit C.

2.8     Compliance with Applicable Laws. Foundation agrees that the Program hereunder shall be conducted in accordance with all applicable laws including, but not limited to those laws, rules, and regulations pertaining to the Drug Enforcement Administration, the Food and Drug Administration (as applicable), and state pharmacy boards.

2.9     Foundation shall have the right to subcontract all or substantially all of its obligations hereunder to an independent third party without any further consent from Schering, *provided, however*, that no such subcontract shall relieve Foundation of its obligations hereunder. Schering understands that Foundation has designated Express Scripts Specialty Distribution Services, Inc. ("SDS") as a vendor to fulfill some of Foundation's responsibilities as set forth in this Agreement. Foundation shall provide Schering with thirty (30) days written notice of any change in subcontractors. Schering's continued involvement with the Program shall be subject to Schering's approval of any subcontractor.

## ARTICLE III
## SUPPLY OF PRODUCT

3.1     During the Term of the Agreement, Schering shall provide and ship to Foundation sufficient quantities of the Products to enable Foundation to administer the Program and meet Patient needs in a timely fashion without lapses. The parties shall mutually agree upon a sufficient level of inventory of Product. Foundation agrees that said Product shall not be used for any purpose other than the Program. Notwithstanding the foregoing, in the event Schering cannot supply said Products for reasons beyond its control, including inventory shortage or Force Majeure, as set forth herein, such an event shall not constitute a breach of this Agreement. The parties acknowledge that Schering shall be responsible for all costs and expenses of delivering the Product to Foundation's designated facility.

3.2     Excess Product. Schering shall notify Foundation as to the disposition of any Product donated to Foundation under this Agreement, which is in Foundation's possession, but not dispensed through the Program upon expiration or earlier termination of this Agreement.

3.3    Risk of Loss. All risk of Product loss or damage during the time such Product is in Foundation's or its designee's possession, after receipt from Schering, shall be borne by Foundation, except to the extent caused by the negligence or willful misconduct of Schering.

3.4    Audit. During the Term of the Agreement, upon reasonable notice and during normal business hours, Schering, or any third party auditor designated by Schering shall be entitled to audit and inspect those books and records of Foundation which are maintained by Foundation, Foundations designee's or subcontractors in connection with its performance of the Services, subject to confidentiality constraints and applicable law.

## ARTICLE IV
## FUNDING

4.1    FUNDING. Each quarter, Foundation will request Product to support the future needs of the Program over the following quarter. Foundation shall provide monthly invoices for Funding representing costs for actual product shipments to be paid within thirty (30) days of receipt of invoice. Foundation shall provide adequate documentation in support of all in invoices. The request shall be forwarded to Director, OBBU at Schering at the address set forth on the signature block. Upon receiving the request, Schering will initiate the necessary steps to provide the required Funding for the program in terms of Product and Funding so that Foundation can meet its Program requirements to eligible Patients in a timely fashion. The amount of Funding provided by Schering shall include funding to support all fees attributable to the Program as follows:

| Drug/Service Specifications | Price per shipment |
|---|---|
| Non-Schedule drug in Schering stock bottles (Eulexin) | $18.00 |
| Non-scheduled drugs repackaged (Temodar) | $19.50 |
| Schedule II drugs | $20.75 |
| Temperature controlled drugs (Intron A, Rebetron) | $22.00 |

4.2    Foundation and Schering mutually agree that the Funding requested by Foundation to operate the Program may be recorded as an unconditional promise to give and Foundation may record it as an unconditional pledge receivable on its records as may be required if it so chooses.

ited in the          4.3    Foundation will ship the amount of Product (i.e., number of days supply) in a single mailer as set forth in Article II above. Foundation and Schering shall mutually agree upon a reasonable increase in the shipping charge component by an amount equal to any increase in its parcel delivery costs from vendors over the costs in effect on the date of this Agreement. Changes in Shipping Costs will be applicable as soon as

mutually agreed delivery costs are increased. Foundation shall provide Schering with written verification of any proposed increase in Shipping Costs.

4.4    On or after the (1st) anniversary of this Agreement and each anniversary thereafter, Foundation shall be entitled to increase the non-Shipping Cost component of the Funding by no more than a percentage equal to the percentage increase to the then current twelve (12) month Consumer Price Index (all items) for the metro St. Louis area, as published by the U.S. Department of Labor, Bureau of Labor Statistics. Foundation shall be reimbursed by Schering for late fees payable to fulfillment agent of Foundation arising from untimely provision of Funding by Schering, *provided, however* Schering shall not reimburse late fees if incurred as a result of untimeliness of Foundation in seeking or distributing the Funding.

## ARTICLE V
## TERM AND TERMINATION

5.1    Unless earlier terminated as set forth below, the term of this Agreement shall begin on the Effective Date and shall continue for a period of two (2) year(s), and shall thereafter automatically renew for additional one (1) year periods. Either party may terminate this Agreement at any time with or without cause by giving the other party forty-five (45) days prior written notice of such termination. In the event of termination, the parties shall mutually agree on a Transition of Services to be undertaken pursuant to a mutually agreed Schedule of Transition. The parties agree to assist one another in all reasonable respects with the transfer of the Program including developing appropriate measures to meet Patient needs raised by transfer of the Program.

5.2    Any party shall have the right to terminate this Agreement upon five (5) days written notice if another party becomes bankrupt or insolvent, or if a receiver is appointed for any part of its assets and said appointment is not vacated within sixty (60) days.

5.3    Termination Due to Change in Law. Both parties shall have the right to terminate this Agreement upon not less than 30 days' prior written notice to the other party in the event that any federal, state or local statute, law, legislation, regulation, rule, guidance, order or other pronouncement having the force of law of a court or governmental authority having jurisdiction (collectively, "Law") is promulgated, issued or enacted, or a change or interpretation of an existing Law is promulgated, issued or made, which, in the opinion of the party giving such notice, could result in this Agreement, or the transactions contemplated hereby, being found to violate applicable law or would otherwise have a material adverse effect on such party and/or any of its affiliates which was unforeseen at the time this Agreement was entered into if this Agreement remains in effect; *provided, however*, that so long as the affected party uses its reasonable commercial efforts to give notice of such event within such 30 day period, such notice shall be effective immediately prior to such Law or interpretation becoming effective even if the same results in less than 30 days' notice.

5.4     In the event of termination, Schering shall provide Product and Funding to Foundation in order to carry out the Program up to and through the effective date of termination and Foundation shall fulfill all of its obligations hereunder up to the effective date of termination.

## ARTICLE VI
## INDEMNIFICATION

6.1     Schering shall indemnify and hold harmless Foundation and its directors, officers, employees, volunteers and affiliates from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation reasonable attorney's fees) arising out of: (i) any breach by Schering of this Agreement, including, but not limited to, its representations and warranties; (ii) the negligent act or omission, or the willful misconduct, of Schering or any of its employees in connection with the performance of its obligations under this Agreement; and (iii) Schering's use of Patient information in violation of applicable laws governing confidentiality; except to the extent such claims arise out of Foundation's negligence or willful misconduct or breach hereunder, including but not limited to a breach of its representations and warranties hereunder.

6.2     Foundation shall indemnify and hold harmless Schering and its shareholders, directors officers, employees and affiliates from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation reasonable attorney's fees) arising out of: (i) any breach by Foundation of this Agreement, including, but not limited to, its representations and warranties; (ii) the negligent act or omission, or the willful misconduct, of Foundation in connection with the performance of its obligations under this Agreement; (iii) any provision or disclosure of information, including Patient information by Foundation to Documedics, Foundation, and/or Foundation's third party auditor and Documedics, Foundation's and or Foundation's third party auditor's use of such information; and (iv) any claim arising from Documedics' determination of eligibility consistent with the criteria for any applicant or Patient in the Program; except to the extent such claims arise out of Foundations negligence or willful misconduct or breach hereunder, including but not limited to a breach of its representations and warranties hereunder.

## ARTICLE VII
## CONFIDENTIALITY

CONFIDENTIALITY: Foundation and Schering agree, through expiration of this Agreement and for 5 years thereafter, to retain in confidence, and cause its directors, officers, employees, agents and consultants (collectively, "Representatives"), to retain in confidence, all information, knowledge, technology and trade secrets relating to the Product and the transactions contemplated by this Agreement, including without limitation the terms of this Agreement, all pricing information relating to the Product and all information pertaining to the manufacture, storage, handling and packaging of the Product (collectively, the "Confidential Information") and that it will not, without the written consent of the other party, use Information supplied hereunder for any purpose

other than for purposes of performing this Agreement. The restrictions of this section shall not apply to Confidential Information: (a) which is or becomes public knowledge; or (b) which is made lawfully available to Program by an independent third party; or (c) which is required by law, regulation, rule, act, or order of any governmental authority or agency to be disclosed by the receiving party; *provided, however*, that the other party gives the other sufficient advance written notice to permit it to seek a protective order or other similar order with respect to such Confidential Information and thereafter discloses only the minimum Confidential Information required to be disclosed in order to comply. This covenant shall survive expiration or earlier termination of this Agreement.

## ARTICLE VIII
## MISCELLANIOUS

8.1     Representations and Warranties. Foundation hereby represents and warrants that it is an entity exempt from federal income tax under Section 501(a) as an organization described in Section 501(c) (3) of the Internal Revenue Code of 1986, as amended (the "Code") and that it is not a private foundation within the meaning of Section 509(a) of the Code. Foundation hereby further represents and warrants that it will not use any of the Products in a manner contrary to the requirements of Section 1.170A-4A(b)(2) of the Treasury Regulations (the "Regulations"). Foundation shall promptly notify Schering in writing if any of the representatives set forth in this Section cease to be true. Foundation shall, within ninety (90) days after the end of each calendar year, furnish Schering with a written statement satisfying the requirements of Section 1.170A04A(b)(2) of the Regulations, and any other documentation reasonably requested in writing by Schering to substantiate its claim of a charitable deduction in respect of any Product provided or payments made in support of the Program.

8.2     INSURANCE:     Each party shall procure and maintain during the term of this Agreement, comprehensive general liability insurance in the amount of Three Million Dollars ($3,000,000) per claim made, and in the aggregate, including but not limited to, for contractual liability, personal and bodily injury, and product liability. Each party shall provide the other parties with evidence of such insurance upon request. A party may not cause or permit such insurance to be cancelled without obtaining comparable replacement coverage or modified to materially reduce its scope or limits of coverage during the Term of this Agreement.

8.3     FORCE MAJEURE: If the performance or observance of this Agreement or of any obligation herein is prevented or delayed by reason of an act of God, civil commotion, storm, fire, riots, strikes, legal moratorium, war, revolution, or action by government, the party so affected shall, upon prompt notice of such cause being given to the other party, be excused from such performance or observance, only to the extent of such prevention or during the period of such delay, provided that the party so affected shall use commercially reasonable efforts to avoid or remove the cause(s) of non-performance and observance.

8.4   ASSIGNMENT:   Neither party shall assign this Agreement to any person, firm, partnership, corporation, or other entity (including by operation of law, judicial process, or otherwise) without the prior written consent of the other party, which consent may be withheld for any reason.

8.5   NOTICES:   Each notice required or permitted to be given or sent under this Agreement shall be hand delivered or sent by express delivery service or certified or registered mail, postage prepaid to the parties at the addresses indicated on the signature blocks below.

**IN WITNESS WHEREOF,** the parties have signed this Agreement effective as of the date first written above.

AmeriCares Foundation, Inc.
161 Cherry Street
New Canaan, Connecticut

Name: _Stephen B. Skalel_
Title: _V. P. Operations_
Date: _12-5-00_

Schering Corporation
2000 Galloping Hill Road
Kenilworth, New Jersey 07033

Name: _____
Title: _President, Schering Laboratories_
Date: _____

LEGAL REVIEW
JB

280592-1

SCHERING LAW DEPT.                                                                    ✍ 003

09/12/00   TUE 16:17 FAX 203 972 0116         AmeriCares                             ✍ 020

09/11/00   09:36 FAX 908 298 5239             S-P LAW DEPT                           ✍ 018/025

*Schering-Plough Corporation*
*Discussion Draft – 07/17/00*

$A$

EXHIBIT &

CRITERIA

To meet the Criteria, individuals must:

1.  Lack public or private prescription drug insurance (including, but not limited to, Medicare, Medicaid, CHAMPUS, etc.); and

2.  Have personal income levels such that they are generally not otherwise able to pay for the Product.

*INCLUDE WRITTEN CRITERIA specific to schering-plough*

-EXHIBIT A-

## Allegretti, Donna

From:      Petruccelli, Steven
Sent:      Monday, December 11, 2000 6:57 AM
To:        Allegretti, Donna
Subject:   FW: CTC $$ criteria

-----Original Message-----
From: Donna Rosina [mailto:drosina@documedics.com]
Sent: Wednesday, December 06, 2000 7:34 PM
To: Steve Pettruccelli (E-mail)
Subject: CTC $$ criteria

Patient Assistance Programs- Eulexin

When a patient qualifies for a Cost Share Program, based on the eligibility
grids, the patient will be required to purchase a determined out of pocket
amount worth of drug, on a monthly basis. Any additional drug will be
dispensed at no charge.  When a patient qualifies for Indigent Drug Program,
the patient will be dispensed their full prescribed dose free of charge.

Program Groups:                        % of Poverty Level
1.      B3G1                           300%
2.      B2G1                           260%
3.      B1G1                           220%

4.      B1G2                           180%
5.      B1G3                           140%
6.      Indigent Drug Program                 100%


1.

Patient Assistance Programs- Intron/Rebetron

When a patient qualifies for Indigent Drug Program, the patient will be
dispensed their full prescribed dose free of charge.

Program Groups:                        % of Poverty Level
1.      Indigent Drug Program               325%


Eligibility Regions

GROUP      REGIONS
Group A    AK, CT, D.C., HI, NJ, Philadelphia, CA, MA, Manhattan*
Group B    MD, NH, NY (excluding Manhattan), RI, Miami, DE, IL, NV, AZ, CO, ME,
MI, MN, OH, PA (excluding Philadelphia), VT, WA, Atlanta, New Orleans
Group C    FL (excluding Miami), IN, IA, KN, MO, NE, NM, ND, OR, UT, VA, WI, WY

Group D    AL, AR, GA (excluding Atlanta), ID, KY, LA (excluding New Orleans),
MS, MT, NC, OK, SC, SD, TN, TX, WV


FEDERAL POVERTY LEVEL GUIDELINES

SOURCE: Federal Register, Vol. 63, No. 36, February 24,1998, pp. 9235-9238

1998 HHS Poverty Guidelines
Size of  Family Unit 48 Contiguous States and DC    Alaska  Hawaii
1        $8,050  $10,070 $9,260
2        10,850  13,570  12,480
3        13,650  17,070  15,700

1

EXHIBIT A

| | | | |
|---|---|---|---|
| 4 | 16,450 | 20,570 | 18,920 |
| 5 | 19,250 | 24,070 | 22,140 |
| 6 | 22,050 | 27,570 | 25,360 |
| 7 | 24,850 | 31,070 | 28,580 |
| 8 | 27,650 | 34,570 | 31,600 |
| For each additional person, add | 2,800 | 3,500 | 3,220 |

## ASSETS ELIGIBILITY

Patients must provide documentation of their assets to participate in the Eulexin Patient Assistance Program.  No assets limits are needed to participate in the Intron/Rebetron Indigent Drug Program.

If the patient demonstrates that he or she has less than $60,000 the patientfor purposes of the Program will receive drug free of charge. . Asset eligibility assessment excludes primary car and residence.

## ELIGIBILITY GRID for Eulexin

### REGION A
(5% higher than Region B)

| Household Size | B3G1 | B2G1 | B1G1 | B1G2 | B1G3 | Indigent Drug Program |
|---|---|---|---|---|---|---|
| 1 | 36,500 | 32,000 | 29,200 | 25,600 | 22,410 | 18,640 |
| 2 | 49,100 | 43,500 | 39,300 | 34,400 | 29,500 | 25,125 |
| 3 | 61,700 | 55,500 | 49,400 | 43,500 | 37,000 | 30,900 |
| 4 | 74,300 | 66,900 | 59,500 | 52,000 | 44,600 | 37,200 |

### REGION B
(5% higher than Region C)

| Household Size | B3G1 | B2G1 | B1G1 | B1G2 | B1G3 | Indigent Drug Program |
|---|---|---|---|---|---|---|
| 1 | 34,800 | 31,300 | 27,800 | 24,860 | 21,340 | 17,750 |
| 2 | 46,800 | 41,400 | 37,400 | 32,800 | 28,100 | 23,925 |
| 3 | 58,800 | 53,000 | 47,000 | 41,200 | 35,300 | 29,400 |
| 4 | 70,800 | 63,700 | 56,600 | 49,500 | 42,500 | 35,400 |

### REGION C
(5% higher than Region D)

| Household Size | B3G1 | B2G1 | B1G1 | B1G2 | B1G3 | Indigent Drug Program |
|---|---|---|---|---|---|---|
| 1 | 33,100 | 29,800 | 26,500 | 23,670 | 20,325 | 16,905 |
| 2 | 44,600 | 39,500 | 35,700 | 31,200 | 26,700 | 22,785 |
| 3 | 56,000 | 50,400 | 44,800 | 39,200 | 33,600 | 28,000 |
| 4 | 67,400 | 60,700 | 53,900 | 47,200 | 40,400 | 33,700 |

### REGION D

| Household Size | B3G1 | B2G1 | B1G1 | B1G2 | B1G3 | Indigent Drug Program |
|---|---|---|---|---|---|---|
| 1 | 31,600 | 28,400 | 25,200 | 22,540 | 19,320 | 16,100 |
| 2 | 42,400 | 37,800 | 34,000 | 29,700 | 25,500 | 21,700 |
| 3 | 53,300 | 48,000 | 42,700 | 37,300 | 32,000 | 26,700 |
| 4 | 64,200 | 57,800 | 51,400 | 45,900 | 38,500 | 32,100 |

11/17/00  13:37 FAX 908 298 4252          SCHERING LAW DEPT.                              @004
                                                                                              @022
  09/12/00  TUE 16:17 FAX 203 972 0116        AmeriCares
                                                                                         @021/025
09/11/00  09:36 FAX 908 298 5238            S-P LAW DEPT

Schering-Plough Corporation
Discussion Draft – 07/17/00

Exhibit B

~~Attachment 1~~ – Products

| NDC | Drug Name | Drug Description |
|---|---|---|
| 0085-0525-05 | EULEXIN | CAPSULES 125 MG 500's |
| 0085-0525-06 | EULEXIN | CAPSULES 125 MG 180's |
| 0085-1235-01 | INTRON | MULTIDOSE PEN 5MIU |
| 0085-1242-01 | INTRON | MULTIDOSE PEN 3MIU |
| 0085-1254-01 | INTRON | MULTIDOSE PEN 10MIU |
| 0085-1179-02 | INTRON A | PAK-1- 10MIU 6X1ML |
| 0085-1168-01 | INTRON A | SOLUTION 18 MIU 3 ML |
| 0085-1133-01 | INTRON A | SOLUTION 25 MIU 2.5 ME |
| 0085-1184-02 | INTRON A | PAK-3 3MIU 6X0.3ML |
| 0085-1191-02 | INTRON A | PAK-5 5MIU 6X0.5 ML |
| 0085-0571-02 | INTRON A | INJ 10MIU 2ML VIAL |
| 0085-1110-01 | INTRON A | INJ 18MIU 1 ML VIAL |
| 0085-0285-02 | INTRON A | INJ 25MIU VIAL |
| 0085-0647-05 | INTRON A | PAK-3 3MIU 6X1ML SYRINGE |
| 0085-0120-02 | INTRON A | INJ 5MIU 1ML VIAL |
| 0085-0539-01 | INTRON A | INK 50MIU 1 ML VIAL |
| 0085-1236-01 | REBETRON | MULTIDOSE VIAL 1200's |
| 0085-1236-02 | REBETRON | MULTIDOSE VIAL 1000's |
| 0085-1236-03 | REBETRON | MULTIDOSE VIAL 600's |

11/17/00  13:37 FAX 908 298 4252        SCHERING LAW DEPT.                                    ☒005

09/12/00  TUE 16:17 FAX 203 972 0116        AmeriCares                                      ☒023

09/11/00  09:36 FAX 908 298 5239        S-P LAW DEPT                                 ☒022/025

*Schering-Plough Corporation*
*Discussion Draft – 07/17/00*

| NDC | Drug Name | Drug Description |
|---|---|---|
| 0085-1241-01 | REBETRON | PAK-3 1200's |
| 0085-1241-02 | REBETRON | PAK-3 1000's |
| 0085-1241-03 | REBETRON | PAK-3 600's |
| 0085-1258-01 | REBETRON | PEN 1200's |
| 0085-1258-02 | REBETRON | PEN 1000's |
| 0085-1258-03 | REBETRON | PEN 600's |
| 0085-1244-01 | TEMADAR | CAPSULES 20MG 5's |
| 0085-1244-02 | TEMADAR | CAPSULES 20MG 20's |
| 0085-1248-01 | TEMADAR | CAPSULES 5MG 5's |
| 0085-1248-02 | TEMADAR | CAPSULES 5MG 20's |
| 0085-1252-01 | TEMADAR | CAPSULES 250MG 5's |
| 0085-1252-02 | TEMADAR | CAPSULES 250MG 20's |
| 0085-1259-01 | TEMADAR | CAPSULES 100MG 5's |
| 0085-1259-02 | TEMADAR | CAPSULES 100MG 20's |

*Schering-Plough Corporation*
*Discussion Draft – 07/17/00*

## EXHIBIT # C

### REPORTS

The following is a summary of the data and information to be contained in each report to be provided to Foundation by SDS in accordance with Section 2.7 of the Agreement. SDS shall cooperate in good faith with respect to the reasonable requests of Foundation with respect to the content, format or other presentation of these reports. Additional data and information which are specific to the Program for a particular Product shall be set forth in the applicable Program Requirements Agreement.

1. Inventory Reconciliation Report
   Frequency: monthly and annually
   Format:
   ☒ Beginning Inventory
   ☒ Receipts
   ☒ Shipments
   ☒ Inventory Adjustments (by type)
   ☒ Ending Inventory
   ☒ Within 15 business days from the last business day of each quarter

2. Inventory Replenishment
   ☒ Drug Code (NDC)
   ☒ Quantity (capsules and/or bottles)
   ☒ Lot Number Shipped

   SDS and AmeriCares will formally, in written form, reconcile any differences between AmeriCares' and SDS' records of inventory

Specific elements of the above reports will be established by Foundation for inclusion by SDS. Foundation may modify these reports, the elements, and frequency of reports from time to time subject to confidentiality constraints and the conditions of Section 2.8 of the Agreement.