**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL No. 1456<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS and 01-CV-339 | | |

**TRIAL OF CLASS 2 AND 3 CLAIMS**

**DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' RESPONSE MEMORANDUM REGARDING THE TRANSACTION REQUIREMENT UNDER <u>MASSACHUSETTS GENERAL LAWS CH. 93A, § 11</u>**

## I. INTRODUCTION

Because Plaintiffs cannot satisfy the legal requirements of Massachusetts General Laws, ch. 93A, § 11, they have contorted the law by piecing together quotations out of context and misconstruing legal holdings to suit their needs. As demonstrated below, Plaintiffs cannot circumvent their obligation to fulfill the legal requirements of § 11. Section 11 of ch. 93A requires that Plaintiffs, entities engaged in trade or commerce, demonstrate that the allegedly deceptive or unfair conduct occurred in the context of a transaction with Defendants. Plaintiffs have not and cannot fulfill this requirement.

## II. PLAINTIFFS HAVE FAILED TO REFUTE THE REQUIREMENT THAT THE ALLEGEDLY DECEPTIVE OR UNFAIR CONDUCT MUST HAVE OCCURRED DURING A TRANSACTION "BETWEEN THE PARTIES, EITHER ACTUAL OR CONTEMPLATED."

Plaintiffs fail to respond to—and ask this Court to ignore—the Massachusetts Supreme Judicial Court's ("SJC") clear pronouncement that § 11 requires "a commercial transaction between the person engaged in trade or commerce with another person engaged in trade or commerce" and description of a "commercial transaction" as "an exchange of goods or services between the parties, either actual or contemplated." Szalla v. Locke, 421 Mass. 448, 451-52, 657 N.E.2d 1267, 1269-70 (1995). As explained by the SJC in Szalla, "[t]he development of c. 93A [§ 11] suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities." Id. at 451 (citing Manning v. Zuckerman, 388 Mass. 8, 12, 444 N.E.2d 1262 (1983)); see also Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 679 N.E.2d 191 (1997) (finding the transaction requirement satisfied because "[t]he arrangement between Linkage and Boston University was an arm's-length transaction between two corporations under which Linkage provided services to Boston University and received compensation") cert. denied, 552 U.S. 1015 (1997).[1]

---

[1] Post-Szalla decisions of both federal and state courts explicitly recognize the requirement that the alleged objectionable conduct in a § 11 case must have occurred during a commercial interaction between the parties. Recently, in Swenson v. Yellow Transportation, Inc., the Federal District Court of Massachusetts repeated this requirement: "Apart from claims of unfair competition, a plaintiff must allege some sort of *transaction between the parties* for liability to attach under sections two and eleven." 317 F. Supp. 2d 51, 56 (D. Mass. 2004) (emphasis added); see also L.B. Corp. v. Schweitzer-Mauduit Int'l Inc., 121 F. Supp. 2d 147 (D. Mass. 2000) ("[A] plaintiff must allege some sort of transaction between the parties for liability to attach under sections two and eleven. This is the 'common thread' of 93A cases."); Cash Energy, Inc. v. Weiner, 768 F. Supp. 892, 894 (D. Mass. 1991) ("Moreover, the assumed premise that, apart from claims of unfair competition, section 11 applies only between parties having some transactional business relationship is consistent with the development of Chapter 93A."). Massachusetts state courts have similarly reiterated this requirement. Milliken & Co. v. Duro Textiles, LLC, 19 Mass. L. Rep. 509, 2005 Mass. Super. LEXIS 376, at *51 (2005) (holding that plaintiff cannot assert a 93A claim against defendants because "Milliken has proffered no evidence of any commercial transaction between itself on the one hand and [defendants] on the other."); O'Brien v. Comenitz, 14 Mass. L. Rep. 589, 2002 Mass. Super. LEXIS 194 (2002) ("For c. 93A, § 11 to apply, however, the plaintiff and the defendant must be engaged in commerce with each other.").

Plaintiffs do not address the long line of cases cited by Defendants, but rather argue that § 11 does not require privity of contract. Although some of the cases cited by Plaintiffs contain this statement in dicta, none turns on the lack of contractual privity and there can be no doubt that some form of transactional business relationship between the parties is required.[2] Further, all but two of the cases cited were decided before the Massachusetts SJC decided Szalla and are thus now irrelevant to the extent that they can be read to contradict the holding of the SJC.[3] The two post-Szalla cases Plaintiffs cite are entirely consistent with the transaction requirement. In Reisman v. KPMG Peat Marwick LLP, the Court allowed plaintiff's § 11 claim to proceed against an accounting firm that allegedly gave him unfair or deceptive advice regarding a stock sale. 57 Mass. App. Ct. 100, 125, 787 N.E.2d 1060, 1078 (2003) (noting that Peat Marwick advised plaintiffs and was the auditor of record for plaintiffs' company). In contrast, in First

---

[2] Plaintiffs cite three Massachusetts SJC cases for this proposition, all of which are inapposite. Despite Plaintiffs' contention, First Enterprises Ltd. v. Cooper does not discuss privity at all. 425 Mass. 344, 347-48, 680 N.E.2d 1163, 1165 (1997). Although Nei v. Boston Survey Consultants, Inc. recognized in dicta that there is no requirement of privity of contract, the court refused to impose liability under § 11 because plaintiff had no business relationship with the defendant and defendant did not make any misstatements to the plaintiff. 388 Mass. 320, 324, 446 N.E.2d 681, 684 (1983). Finally, Maillet v. ATF-Davidson Co. is irrelevant, as it was decided under ch. 93A, § 9 not § 11. 407 Mass. 185, 190, 552 N.E.2d 95, 98 (1990) (noting that claim is under § 9).

[3] Plaintiffs' citation to pre-Szalla cases is nothing more than a deliberate distraction. Nonetheless, the pre-Szalla cases cited by Plaintiffs—if they are at all relevant—do not negate the holding of Szalla. The two pre-Szalla cases that found liability under § 11 both concerned allegations that the defendant made misrepresentations to the plaintiff during the course of transaction negotiations. In Standard Register Co. v. Bolton-Emerson, Inc., the plaintiff sued defendant Bolton-Emerson, Inc. and two of its corporate officers for the defective manufacture and delivery of a label machine known as a hot melt coater. 38 Mass. App. Ct. 545, 649 N.E.2d 791 (1995). The Massachusetts District Court confirmed that the corporate officers could be held liable under § 11, even though they did not sign the sales contract, because the officers "took an active role in the dealings with Standard Register," "negotiated and induced" the contract, and "orchestrated the misrepresentation regarding progress of the project." Id. at 551. Similarly, in Chestnut Hill Development Corp. v. Otis Elevator Co., plaintiff developer asserted a claim against the subcontractor who sold and installed elevators in the development project. 653 F. Supp. 927 (D. Mass. 1987). Although the plaintiff did not execute the contract directly with the subcontractor, the district court held that the plaintiff could bring a 93A claim on the basis of a series of misrepresentations that the subcontractor made directly to the plaintiff that influenced the plaintiff's decision to choose the particular subcontractor. The court emphasized that "there was an active, three-way negotiation over the Otis-Vappi subcontract and Chestnut Hill alleges it was an active participant in those negotiations." Id. at 932.

Enterprises, Ltd. v. Cooper, the Court held that plaintiff's § 11 claim could not succeed because the defendant's conduct did not occur in the context of a commercial "marketplace transaction."[4] 425 Mass. 344, 347, 80 N.E.2d 1163, 1165 (1997). In yet a further attempt to confuse, Plaintiffs cite additional pre-Szalla cases that do not support their proposition.[5] More importantly, however, no post-Szalla case cited by Plaintiffs imposes § 11 liability where there was no business transaction between the parties. Regardless of whether there is contractual privity between the plaintiff and defendant, § 11 absolutely requires that the objectionable conduct must have occurred during a commercial interaction between the parties. There are important policy reasons supporting this requirement, as the Massachusetts Legislature recognized that any attempt to extend liability to situations in which the allegedly deceptive or unfair conduct did not occur during a transaction between the parties would inhibit businesses from engaging in vigorous competition in the marketplace by "converting any tort claim against a business into a Chapter 93A claim, because all torts encompass 'acts or practices' that could arguably be considered 'unfair.'" L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc., 121 F. Supp. 2d 147, 152 (D. Mass. 2000). In this case, Plaintiffs' § 11 claim must fail because it does not involve alleged deceptive or unfair conduct which occurred during a business transaction between Plaintiffs and Defendants.

---

[4] It should also be noted that Plaintiffs' description of the facts and holding of First Enterprises is entirely inaccurate and presumably refers to a different case.

[5] Plaintiffs cite two additional pre-Szalla cases that—consistent with Szalla—denied liability under § 11 because the allegedly offensive conduct did not occur during a transaction between the parties. In Nei v. Boston Survey Consultants, Inc., the SJC upheld the dismissal of a § 11 claim by a plaintiff property buyer against a surveying company that had been hired by the property sellers because the surveyor "played only a minor role in the purchase of the property" and "did not participate in the negotiations or in the signing of the purchase and sale agreement." 388 Mass. at 324. In Spencer v. Doyle, the Massachusetts Appeals Court found that the plaintiffs could not establish a § 11 violation because there was "no commercial relationship between the [plaintiffs] and [defendant], which is necessary to a claim under c. 93A, § 11." 50 Mass. App. Ct. 6, 13, 733 N.E.2d 1082, 1087 (2000).

4

### III. IF PLAINTIFFS CAN MAINTAIN A CLAIM UNDER CH. 93A THAT CLAIM IS GOVERNED BY § 11.

Having insisted that Blue Cross Blue Shield of Massachusetts ("BCBS MA"), Sheet Metal Workers, and Pipefitters have a claim under § 11 of ch. 93A, but then, unable to prove the required elements of that section, Plaintiffs resort to a desperate and feeble argument: they should not be considered business entities subject to the requirements of § 11 but rather, individual consumers entitled to sue under § 9.[6]  (See Plaintiffs' Combined Proposed Findings of Fact, Conclusions of Law and Trial Brief for the Phase 1 Trial Against the Track 1 Defendants at 125, ¶ 398).

#### A.  Section 11 Governs the Claims of Institutional Plaintiffs in Classes 2 and 3.

A claim is governed by § 11 of the statute where both parties to the transaction are engaged in "trade or commerce." Linkage Corp., 425 Mass. at 23.  To determine whether either party to a transaction is engaged in "trade or commerce" a court will consider whether the activity at issue is "motivated by business and not personal reasons and was primarily commercial in character" and also whether the work was "'done in a business context' which makes it part of trade or commerce within the meaning of G. L. c. 93A." Miller v. Risk Mgmt. Found. of the Harvard Med. Inst., Inc., 36 Mass. App. Ct. 411, 416, 632 N.E.2d 841, 844 (1993) (citing Lantner v. Carson, 374 Mass. 606, 611, 373 N.E.2d 973, 976-7 (1978)).

---

[6] Plaintiffs cannot have it both ways; under ch. 93A a plaintiff is either a consumer who can only bring a claim under § 9, or a business, only entitled to bring suit under § 11. Frullo v. Landenberger, 61 Mass. App. Ct. 814, 819-821, 814 N.E.2d 1105, 1111 (2004) (citing Lantner v. Carson, 374 Mass. 606, 610, 373 N.E.2d 973, 976 (1978)) ("[Ch. 93A] distinguishes between 'consumer' and 'business' claims, the former actionable under § 9, the latter actionable under § 11." ).  That is, "where § 9 affords a private remedy to the individual consumer. . . , an entirely different section, § 11, extends the same remedy to '[a]ny person who engages in the conduct of any trade or commerce'" Id.  Thus,"[w]hereas a defendant must be engaged in trade or commerce, i.e., acting in a business context, to be liable under either § 9 or § 11, a plaintiff who acts in a business context has a cause of action exclusively under § 11." Id.

BCBS MA, Sheet Metal Workers, Pipefitters, and the institutional plaintiffs they purport to represent, are involved in the purchase and sale of millions of dollars worth of health insurance coverage. As BCBS MA and all Class 2 and 3 institutional Plaintiffs are operating in a business context, they are therefore engaged in "trade or commerce" and § 11 governs.[7]

Massachusetts courts have adjudicated countless third party payors' claims under § 11 of ch. 93A. See, e.g., Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 712 N.E.2d 93 (1999) (insurer recovered judgment under ch. 93A § 11 against plaintiff where plaintiff was found to have acted unfairly in filing ch. 93A suit against insurer); Hochen v. Bobst Group, Inc., 198 F.R.D. 11 (D. Mass. 2000) (magistrate judge found nonparty insurer had standing to file Rule 11 motion for sanctions against plaintiff for unfairly filing motion to add insurer as defendant); Int'l Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 443 N.E.2d 1308 (1983) (deciding a case involving § 11 claim by an insurer against an insured arising out of misrepresentations by the insured in an application for a bond); Sidney Binder, Inc. v. Jewelers Mut. Ins. Co., 28 Mass. App. Ct. 459, 465-56, 552 N.E.2d 568, 571-72 (1990) (remanding to trial court for subsidiary finding of fact concerning insurer's ch. 93A § 11 counterclaim against insured for allegedly making fraudulent claim, and stating that insurance companies may sue as well as be sued under ch. 93A). Further, Massachusetts courts have consistently rejected BCBS MA's argument that it does not engage in "trade or commerce" for purposes of ch. 93A. See Singh v. Blue Cross & Blue Shield of Mass., Inc., 182 F. Supp. 2d 164, 179-80 (D. Mass. 2001) (rejecting BCBS MA's argument that since it "is a charitable organization, it is not engaged in

---

[7] It is also important to note that Plaintiffs do not claim, nor could they, that Class 2 or Class 3 are purely consumer classes. Indeed, in creating Class 2, the Court cited § 11 and noted that "corporations may bring class actions claims." In re Pharm. Indust. Average Wholesale Price Litig., 230 F.R.D. 61, 86 (D. Mass. 2005). The Court also noted that, in certifying a corporate class only as to ch. 93A, it was important that "many such laws do not cover corporations." Id. at 90.

6

'trade or commerce' for the purposes of M.G.L. ch. 93A when it is engaged in its 'core mission'"), aff'd, 308 F.3d 25 (1st Cir. 2002).

### B. Plaintiffs' Single Cited Case is Unavailing.

Plaintiffs' volte face is wholly based on a decision from the District Court in the District of Columbia, which they cite for the proposition that their claims are governed by § 9 of ch. 93A.[8] In re Lorazepam & Clorazepate Antitrust Litigation, 295 F. Supp. 2d 30, 47 (D.D.C. 2003). Plaintiffs rely on a single decision penned by a non-Massachusetts court, which no subsequent Massachusetts court has followed, and it got Massachusetts law flatly wrong.

The Lorazepam Court reaches its conclusion based on four Massachusetts cases.[9] However, the Court's attempt at applying those cases reveals the depth of its misunderstanding of the law. All four of those cases involve entities being sued as *defendants* and making the affirmative defense argument that the ch. 93A claims against them should be dismissed entirely.[10] In each of these four cases, the Massachusetts SJC held that ch. 93A did not apply

---

[8] Plaintiffs also refer to Continental Insurance Company v. Bahnan, a case which only serves to buttress Defendants' argument that Plaintiffs' claims are governed by § 11. 216 F.3d 150, 156 (1st Cir. 2000). There, the individual's claim arose when his insurance claims were rejected by his insurer. Because he rented out the insured apartments, the court found that he did not qualify as a § 9 "consumer;" although that plaintiff was an individual, the Court found that he was engaged in "trade or commerce" and could not avoid the requirements of § 11. That court stated that "[w]ithal, section 11 affords no relief to consumers and, conversely, section 9 affords no relief to persons engaged in trade or commerce." Id. at 156.

[9] Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 679, N.E.2d 191 (1997), Poznik v. Massachusetts Med. Prof. Instit. Assoc., 417 Mass. 48, 628 N.E.2d 1 (1994), Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 592 N.E.2d 1317 (1992), and All Seasons Servs., Inc. v. Comm'r of Health & Hosps., 416 Mass. 269, 620 N.E.2d 778 (1993).

[10] Although Plaintiffs characterize themselves as "non-profit" entities, this legal status is only relevant when determining if an entity is subject to ch. 93A liability as a *defendant*. When an entity sues as a plaintiff, whether it is nominally a "non-profit" entity is irrelevant; in determining which section of ch. 93A an entity is entitled to sue under, courts carefully analyze the context of the transaction and the totality of the circumstances. See Spence v. Boston Edison Co., 390 Mass. 604, 459 N.E.2d 80 (1983) (finding that Boston Housing Authority suing as plaintiff, was entitled to bring its claim under § 11). Further, it should be noted that an entity's organizational status is not dispositive as to whether, as a defendant, it can avoid liability under ch. 93A. Planned Parenthood Fed'n of Amer., Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 494, 498 N.E.2d 1044, (…continued)

7

because the entity's characteristics shielded it from any liability under ch. 93A. Not a single one of those cases remotely broaches the issue of whether such an entity, suing as a *plaintiff*, could affirmatively use its status to avoid the requirements of § 11 by suing under § 9. Had the Lorazepam court taken the time to become more familiar with Massachusetts law, and been less dismissive of the Massachusetts SJC, it would have known that the Massachusetts SJC explained that it has "repeatedly refrained from imposing [ch. 93A] liability" on such entities being sued as defendants even though, when suing as a plaintiff, such "an entity may be engaged in trade or commerce." Boston Housing Authority v. Howard, 427 Mass 537, 539, 695 N.E.2d 192, 193-94 (1998). Thus, Plaintiffs' sole support for their unsupportable legal argument is a case that misconstrues the law.

In contrast to the Lorazepam decision, when the Massachusetts SJC did explore the issue of whether a particular type of entity suing as a plaintiff could invoke its status to avoid the requirements of § 11, the outcome was resoundingly contrary to Plaintiffs' argument here. In Massachusetts Farm Bureau Fed'n, Inc. v. Blue Cross Blue Shield of Massachusetts, Inc., BCBS MA, there a defendant faced with a plaintiff invoking § 9, asserted "since Farm Bureau is a business, 'with a background of knowledge, resources, and experience in the insurance industry,' there is no reason to expect Blue Cross-Blue Shield 'to modify [its] standard practices for dealing with major business accounts.'" 403 Mass. 722, 730 n.3, 532 N.E.2d 660, 664 n.3 (1989). Moreover, the plaintiff in that case was a Massachusetts non-profit corporation which provided various services to its members, including the provision of health-care insurance

---

(continued…)
1052 (1986) (stating that courts "need to look at the particular circumstances to determine whether the acts complained of were committed within a 'business context'").

coverage, vis-à-vis BCBS MA, just like Sheet Metal Workers and Pipefitters.  There the SJC held that both companies were engaged in trade or commerce such that § 11 of ch. 93A applied.

The Lorazepam Court dismisses the Massachusetts Farm Bureau decision, made by the highest state court, in a less than respectful manner, stating its uneducated opinion (see Boston Housing Authority, 427 Mass. at 539, supra), that the opinion was "devoid of discussion."  In re Lorazepam & Clorazepate Antitrust Litigation, 295 F. Supp. 2d at 47.  However, a review of Massachusetts case law reveals that where a business plaintiff in a ch. 93A case attempts affirmatively to use its organizational status as a sword, to lower its legal burden by invoking § 9, rather than as a shield, to avoid ch. 93A liability entirely, Massachusetts courts reject such gambits; the policy behind ch. 93A demands that those claims proceed under § 11 of the statute. For example, in Liquor Liability Joint Underwriting Association of Massachusetts v. Great American Insurance Co., the Liquor Liability Joint Underwriting Association of Massachusetts ("LLJUA"), an insurance entity, which, like BCBS MA, operates pursuant to a legislative mandate, attempted to argue that its claims were governed by § 9, not § 11.  The Court disagreed, stating that the plaintiff insurer was clearly not a "consumer" as contemplated by the statute. The Court stated:

> [T]he Supreme Judicial Court observed that the purpose of G.L.c. 93A, § 9 is to "provide a more equitable balance in the relationship of consumers to persons conducting business activities." Clearly G.L.c. 93A, § 9 contemplates the situation where one party in the bargain, the consumer who buys goods or services, is at an economic disadvantage in relation to the business, the seller of those goods or services.  That is not the case here.

Liquor Liab. Joint Underwriting Ass'n of Mass. v. Great Am. Ins. Co., 16 Mass. L. Rep. 268, 2003 Mass. Super. LEXIS 128, *84-85 (2003) (citing Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 80, 365 N.E.2d 802 (1977)).

Similarly, the Boston Housing Authority would appear to qualify as an entity with a § 11 exemption under Plaintiffs' estimation of the law.  However, in Spence v. Boston Edison Co., when the Boston Housing Authority brought suit against Boston Edison Company, the Massachusetts SJC held that the ch. 93A claim asserted by the Boston Housing Authority was governed by § 11.  Both parties there were "worldly wise businesses," notwithstanding the organizational and regulated status of the two companies, and the SJC held that the Boston Housing Authority's claim was appropriately brought under § 11 of ch. 93A.  Spence v. Boston Edison Co., 390 Mass. 604, 616, 459 N.E.2d 80, 87-88 (1983).  The SJC has explained that such an entity may be immune from ch. 93A liability as a defendant, but that if it sues as a plaintiff, it proceeds under § 11.  Compare Peabody N.E., Inc. v. Marshfield, 426 Mass. 436, 440 689, N.E.2d 774,778-79 (1998) (finding City of Boston not liable under Ch. 93A) with Boston v. Aetna Life Ins. Co., 399 Mass. 569, 574-575, 506 N.E.2d 106, 109-110 (1987) (finding the city of Boston's claims regarding health insurance policies for patients at Boston City Hospital were appropriately brought under § 11).

Plaintiffs rely on a single case, In re Lorazepam & Clorazepate Antitrust Litigation, in a last-gasp attempt to fit its claims into ch. 93A; to the extent that case purports to say that a business similar to Plaintiffs can sue under § 9, it is flatly wrong.  The cases Lorazepam relies upon simply do not stand for the proposition that parties like Plaintiffs may maintain a ch. 93A claim under § 9, and the Massachusetts SJC and other Massachusetts courts hold to the contrary.[11]

---

[11] This very Court has written that when a party invokes its organizational status in the context of a ch. 93A claim, the Court's inquiry turns on the nature of the transaction at issue between the two parties. Trustees of Boston University v. ASM Communications, Inc., 33 F. Supp. 2d 66 (D. Mass. 1998) (Saris, J.) (stating that a party may "not [be] engaged in trade or commerce 'if, *in the transaction* in question, the nonprofit is merely engaged in the customary business necessary to meet its charitable purpose'") (emphasis added).  Here, there is no transaction sufficient to fulfill the requirements of a § 11 claim and Plaintiffs cannot escape that reality by invoking certain (…continued)

**IV.     CONCLUSION**

Defendants respectfully submit that Plaintiffs' claims are governed by 93A § 11 and that Plaintiffs must demonstrate that the allegedly deceptive or unfair conduct occurred in the context of a transaction with Defendants as required.

Respectfully submitted,

THE FOLLOWING TRACK 1 DEFENDANTS

By: /s/ Katherine B. Schmeckpeper

Nicholas C. Theodorou (BBO # 496730)
Michael P. Boudett (BBO # 558757)
Katherine B. Schmeckpeper (BBO # 663200)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  022110

D. Scott Wise
Michael S. Flynn
Kimberley D. Harris
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017

Attorneys for AstraZeneca Pharmaceuticals LP

---

(continued…)
characteristics; a transaction is still required, regardless of the status of the Plaintiffs.  Because no such transaction occurred, the entire inquiry regarding Plaintiffs' alleged status is wholly inapplicable.

Steven M. Edwards
Lyndon M. Tretter
Hogan & Hartson LLP
875 Third Avenue, Suite 2600
New York, NY 10022

Attorneys for the Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp.

William F. Cavanaugh, Jr.
Andrew D. Schau
Erik Haas
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Attorneys for the Johnson & Johnson Defendants

John T. Montgomery (BBO #352220)
Steven A. Kaufman (BBO #262230)
Eric P. Christofferson (BBO #654087)
Ropes & Gray LLP
One International Place
Boston, MA 02110

Attorneys for Schering-Plough Corp. and Warrick Pharmaceuticals Corp.

Dated: December 1, 2006

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the foregoing was delivered on December 1, 2006 to counsel for plaintiffs and to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, via LexisNexis File & Serve.

                                            By: /s/ Katherine B. Schmeckpeper
                                                  Katherine B. Schmeckpeper