# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

## ABBOTT LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF *EX PARTE* FILINGS

Defendant Abbott Laboratories, Inc. ("Abbott") has moved this Court to compel the United States to produce to Abbott, subject to appropriate redactions and confidentiality protections, all *ex parte* communications and documents that have been made or filed in the above-captioned case, including all filings made under seal in the underlying *qui tam* in the Southern District of Florida.[1]  Providing Abbott access to the record is supported by the numerous courts that have ordered the unsealing of *qui tam* case records under similar circumstances, and is consistent with the policy favoring open judicial proceedings.  Indeed, a heavy burden lies with the United States, not Abbott, to keep secret the proceedings in this case.

During the eleven-plus years between the filing of a *qui tam* complaint in 1995 and the United States' decision to intervene against Abbott in 2006, the United States had numerous *ex*

---

[1] Because all claims against Abbott were severed from the underlying *qui tam* and transferred to this Court pursuant to 28 U.S.C. § 1407, Abbott's request for relief is appropriately directed to this Court.  *See* 28 U.S.C. § 1407(b); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.12 (3d Cir. 2002) (noting 28 U.S.C. § 1407(b) "empowers the transferee judge in multidistrict cases to act not only on behalf of the transferee district, but also with 'the powers of a district judge in any district for the purpose of conducting pretrial depositions and such coordinated or consolidated proceedings'") (quoting 28 U.S.C. § 1407(b)).  Moreover, Judge Gold of the Southern District of Florida issued an order administratively closing the case against Abbott.  *See* Order Administratively Closing Case (7/31/06) (Ex. B).

Pursuant to Rule 1.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Abbott assumes that this Court has received copies of all filings made by the United States since the inception of this *qui tam* action.  *See also* Letter from S. Jones (Clerk, D. Mass.) to C. Maddox (Clerk, S.D. Fla.) (8/2/06) (Ex. C) (requesting S.D. Fla. clerk to "please provide the original case file, along with a certified copy of the docket entries and a copy of the transfer order for the case now pending in your district as indicated above").

*parte* communications with the District Court for the Southern District of Florida (the "Florida court").  Now that the United States has intervened, Abbott seeks to learn the substance of those *ex parte* communications and to receive copies of all filings in the case against Abbott.  That information is potentially relevant to numerous issues in this matter, including:

- Whether the United States provided the "good cause" required by the False Claims Act when it repeatedly delayed its intervention decision;

- The extent and timing of the United States' knowledge regarding the alleged misconduct and why it took so long to decide whether to intervene;

- Whether the court file contains evidence supporting Abbott's defenses of government knowledge, estoppel, and laches; and

- Whether the United States or the relator made any misrepresentations to the Florida court or acted without candor in their *ex parte* communications with that court.

Abbott has requested these communications from the United States and explained their relevance to this case.  Abbott has indicated it would accept these communications in a form that redacts the names and identifying information of other defendants, and that it would treat the communications as confidential.  Yet, with no justification, the United States continues to withhold all of its *ex parte* communications with the Florida court.  Because the United States has flatly refused to disclose any of its *ex parte* communications, Abbott has no choice but to seek relief from this Court.[2]

## BACKGROUND

### A.   The History Of This Case.

1.      This case began as part of a *qui tam* complaint, which Ven-A-Care filed against Abbott and several other defendants in the Southern District of Florida under the False Claims Act on June 23, 1995.

---

[2] Because the United States has not yet decided whether to intervene as to all other defendants named in the *qui tam*, Abbott is not requesting that the Court unseal the record.

2.     For the next eleven years, the United States (presumably) filed under seal, among other things, numerous motions to extend the 60-day investigatory period provided by the False Claims Act to determine whether to intervene.  31 U.S.C. § 3730(b)(3).  These *ex parte* motions should have been accompanied by affidavits or other submissions establishing "good cause" for extending the 60-day decision period.  *Id.*

3.     During the eleven years in which it was deciding whether to intervene, the United States availed itself of extensive, one-sided discovery regarding this civil case.  Using its subpoena power, the United States sought and received documents from Abbott.  The United States collected potentially relevant documents and data from third parties, analyzed data, interviewed and possibly deposed critical witnesses while evidence was still fresh, and otherwise took steps to preserve evidence and build its case against Abbott.

4.     Finally, on March 17, 2006, the United States elected to intervene.  At that time, the United States requested the District Court for the Southern District of Florida to unseal "a redacted copy of the relator's complaint identifying all of its Medicaid and Medicare claims against Abbott, this Notice, and the attached proposed Order."  Notice of Election to Intervene, at 4 (3/17/06).  On that same date, the United States moved to sever all Abbott claims from the underlying *qui tam*.  *See* Motion to Sever as to Defendant Abbott Laboratories, Inc. (3/17/06).  The United States simultaneously filed its Complaint against Abbott, while Ven-A-Care amended its Fourth Amended Complaint against Abbott by adopting the United States' Complaint.  *See* Complaint (3/17/06); Plaintiff Ven-A-Care's Motion for Leave to Amend Complaint by Adopting United States' Complaint in Intervention (3/17/06).  The Florida court granted these motions on May 16, 2006.

5.     Also on March 17, 2006, the United States made an *ex parte* request to the Florida court that "*all other papers on file in this action remain under seal* because . . . such papers are

3

provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended." Notice of Election to Intervene, at 4 (emphasis added). The Florida court granted the United States' *ex parte* request without hearing from Abbott. *See* Order on Notice of Election to Intervene, at 2 (5/16/2006). Accordingly, all other pleadings filed in the case against Abbott—including the United States' motions for extensions—remain under seal in the Florida court even though no claims remain under seal against Abbott.

6.     The litigation was transferred to this Court on July 27, 2006.

**B.     Abbott's Repeated Requests For The Government's *Ex Parte* Communications.**

7.     Upon being served with the United States' Complaint (the operative pleading in this case), counsel for Abbott immediately asked the United States whether it would agree to allow Abbott access to all documents that had been filed *ex parte* and under seal in the Florida court. Abbott put this request in writing on July 13, 2006, asking for "all documents relating in any way to claims asserted against Abbott . . . still under seal in this litigation . . . ." *See* Letter from J. Daly to M. Lavine (7/13/06) (Ex. D). Abbott indicated that it would accept redaction of information identifying other defendants to allay any concern about disrupting ongoing investigations and to answer any objections that a disclosure of the Government's filings might violate the seal. *Id*.

8.     Abbott has repeated its request for these documents several times over the last few months. *See* Letter from C. Cook to M. Lavine (10/13/06) (Ex. E); Letter from C. Cook to M. Lavine (10/30/06) (Ex. F); Letter from C. Cook to G. Gobena and J. Breen (11/3/06) (Ex. G). For six months Abbott sought to secure an agreement to allow Abbott limited, redacted access to the requested documents. During that time, the United States misled Abbott about its intentions

and failed to provide any legitimate reason to withhold all of its *ex parte* communications with the Court.

9.      At one point, the United States went so far as to state that it was reviewing the documents under seal to determine what it would agree to provide to Abbott.  *See, e.g.*, Letter from C. Cook to M. Lavine (10/13/06) (Ex. E).  From the parties' discussions on the issue, Abbott expected that the United States would conduct a good-faith review of the filings and determine what filings it would provide to Abbott without the need for intervention by the Court.

10.     To Abbott's surprise, the United States declared on November 8, 2006 that it would not agree to provide Abbott *any* of the documents that it had filed under seal.  *See* Letter from J. Draycott to C. Cook (11/8/06).  The United States offered no explanation for its refusal.

## ARGUMENT

## I.      THE JUDICIAL RECORD SHOULD BE PRODUCED TO ABBOTT NOW THAT THE GOVERNMENT HAS INTERVENED.

The False Claims Act allows materials to be filed under seal in a *qui tam* action only until the United States decides whether to intervene.  *See* 31 U.S.C. § 3730(b)(2)-(3).  Once the United States makes its intervention decision, however, "unsealing of the complaint is virtually automatic."  *United States ex rel. McCoy v. California Med. Review, Inc.*, 715 F. Supp. 967, 969 (N.D. Cal. 1989).

The rest of the court's docket, too, becomes public record once the United States intervenes.  Nothing in the False Claims Act or its legislative history authorizes keeping the judicial record under seal forever.  *See* 31 U.S.C. § 3730(b)(2)-(3); *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228, 1230-31 (N.D. Ala. 2000) (noting the False Claims Act "'makes no mention of the [United States'] right to keep in camera information under seal indefinitely'" following intervention and finding "no authority under the [False

Claims Act] or elsewhere to hold information relating to this cause under seal") (citation omitted); *California Med. Review*, 715 F. Supp. at 969 ("neither [§3730(b)(2)] nor any other [section] in the FCA provides authority for retaining the civil action under seal once the Government has elected to intervene").  To the contrary, courts faced with a request to unseal documents once the United States has intervened have generally "considered lifting the seal on the entire record to be appropriate." *United States ex rel. Lee v. Horizon West, Inc.*, No. C 00-2921 SBA, 2006 WL 305966, *2 (N.D. Cal. Feb. 8, 2006) (citing *United States ex rel. Erickson v. Univ. of Washington Physicians*, 339 F. Supp. 2d 1124, 1126-7 (W.D. Wash. 2004); *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1191 (N.D. Cal. 1997); *United States v. CACI Int'l. Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995); *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994); *California Med. Review*, 715 F. Supp. at 967).

This is simple common sense:  Once the Government has made its intervention decision and commenced litigation, there is no reason to deny the defendant access to the materials filed under seal, and the presumption again applies "that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).  To the extent that the United States seeks to continue to shield from the public judicial records in a *qui tam* lawsuit after intervention, the Government bears the burden of explaining why that record should be sealed.  *See, e.g.*, *Horizon West*, 2006 WL 305966 at *2.  Moreover, the "appropriateness of making court files accessible is accentuated in cases where the government is a party," and "'[o]nly the most compelling reasons can justify non-disclosure of judicial records.'"  *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (citation omitted).[3]

---

[3] Imposing confidentiality protections in the form of a protective order is consistent with this policy of open judicial records.  The presumption that judicial records are open to the public does not apply to materials produced in civil discovery. *See In re Boston Herald, Inc.*, 321 F.3d 174, 194 (1st Cir. 2003); *United States v. Amodeo*, 71

Federal courts have repeatedly denied Government requests to keep False Claims Act litigation secret after the Government intervenes.  Even when the Government objects to such disclosure, courts order production if the Government fails to explain, with specifics, what harm would result.  *See Univ. of Washington Physicians*, 339 F. Supp. 2d at 1126-27 ("careful *in camera* examination of the court file in this case shows that the documents at issue, including those cited by the government as containing particularly sensitive information, merely describe routine investigative procedures"); *United States ex rel. Goodstein v. McLaren Reg. Med. Ctr.*, No. 97-CV-72992-DT, 2001 WL 34091259, *3 (E.D. Mich. 2001) (ordering production after *in camera* review, reasoning "[w]hile these documents generally mention an investigatorial plan, they set forth very little with respect to the details of this plan"); *Straus*, 846 F. Supp. at 23 (*in camera* review determined that United States' status report should be unsealed and made available to defendants because the report "describes routine investigative procedures which anyone with rudimentary knowledge of investigative procedures would assume would be utilized in the regular course of business"); *CACI Int'l*, 885 F. Supp. at 82-83.  Importantly, courts have ordered disclosure of documents filed under seal regardless of whether the documents would be useful to the defendants.  *See, e.g.*, *Straus*, 846 F. Supp. at 23 (noting the information "may be of some, albeit doubtless limited, use to the defense").

Indeed, documents originally filed under seal have been produced to Abbott in a related AWP case.  As the Court knows, the State of California and Ven-A-Care are plaintiffs in an AWP *qui tam* against Abbott.  That case has been consolidated into MDL 1456.  Before consolidation, however, the state court before which the case was pending ordered the plaintiffs

---

(continued…)

F.3d 1044, 1049 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than a . . . document which is presented to the court to invoke its powers or affect its decisions.").

to provide, in redacted form, documents that had been filed with the court under seal pursuant to the California state false claims statute.  *See* Protective Order and Partial Unsealing Order to Provide Defendants With Documents in the Court File and Stipulation to Entry Thereof (Ex. H).  That order was the result of a court-mandated meeting among the parties "concerning a procedure to provide defendants with redacted and/or unredacted copies of documents in the Court's file."  *Id*. at 1.

During the eight months since it elected to intervene, the United States has failed to identify any legitimate or compelling government interest that would be damaged by disclosing to Abbott the Government's *ex parte* submissions to the Court.  To the extent, however, that any confidentiality concerns exist, they can be resolved by allowing the United States to redact the names and identifying information of other defendants and ordering Abbott to keep confidential material designated as "confidential" by the United States.

## II.   THE JUDICIAL RECORD IS RELEVANT TO THE DEVELOPMENT OF ABBOTT'S DEFENSE.

Although Abbott bears no burden in requesting access to the files in this civil case, the Court should consider the importance of the United States' *ex parte* filings to the development of Abbott's defenses.  For that additional reason, the Court should give Abbott complete access to the judicial record.

Under the statutory framework created by Congress in the False Claims Act, the United States is provided 60 days to determine whether to intervene in a *qui tam* action.  31 U.S.C. § 3730(b)(2).  Only for "good cause shown" may the Government seek an extension of the 60-day period through a motion that "may be supported by affidavits or other submissions in camera." *Id*. at § 3730(b)(3).  Congress did not envision that repeated prolonging of the seal would be necessary or commonplace.  *See* S. Rep. No. 99-345, at 24-25 (1986), reprinted in 1986

U.S.C.C.A.N. 5266, 5289 ("The Committee feels that with the vast majority of cases, 60 days is

an adequate amount of time to allow United States coordination, review and decision.").

While some extension of the seal may be warranted in large and complex cases, courts

have increasingly recognized pragmatic and even Constitutional limits to the Government's

ability to keep cases in limbo for years or, in this case, for over a decade.  For example, the

Eastern District of Louisiana, in a case where it was "extremely concerned that the United States

has taken so much time [18 months] without being able to reach a decision," recognized that the

"'practice of conducting one-sided discovery for months or years while the case is under seal

was not contemplated by Congress and is not authorized by the statute'" and that "Defendants

have a legitimate interest in building their defense while the evidence is still fresh."  *United

States ex rel. Lacorte  v. SmithKline Beecham Clinical Lab., Inc.*, No. CIV. A. 97-0942, 1998

WL 840012, *1 (E.D. La. 1998) (citations omitted).

Other courts, too, have taken a dim view of the Government's extended delay in

intervening in a *qui tam* case, especially when coupled with one-sided civil discovery during the

period of delay.  *See, e.g.*, *United States ex rel. Health Outcomes Techns., Inc. v. Hallmark

Health Sys., Inc.*, 409 F. Supp. 2d 43, 50-52 (D. Mass. 2006) (holding that Government's

complaint did not relate back to relator's *qui tam* complaint for statute of limitations purposes,

and noting "the government's investigation dragged on incessantly" (seven years) and that

statutes of limitation "'promote justice by preventing surprises through the revival of claims that

have been allowed to slumber until evidence has been lost, memories have faded, and witnesses

have disappeared'") (citation omitted); *Baker & Taylor,* 955 F. Supp. at 1190 ("In this case, the

government appears to be fully engaged in its discovery, without giving the defendants the

opportunity even to answer the complaint.  The government's return to the order to show cause

states that each of the defendants has been served with a subpoena, investigative interviews have

been conducted with numerous current and former B&T employees and government personnel have been criss-crossing the country to conduct interviews and audits.").

Here, the United States' *ex parte* communications with the court very well might support a challenge to whether the Government's purported reasons for delay, coupled with the extraordinary length of the delay (eleven years), were sufficient under the law to extend the seal and the Government's intervention decision.  Those filings also may reveal that the Government sought to gain an unfair advantage against Abbott by delaying its intervention.  Until Abbott actually sees these submissions, of course, it cannot assess whether they give rise to or support a claim for relief.  Accordingly, the Government's *ex parte* communications, including the reasons articulated by the United States to establish the "good cause shown" to delay its intervention decision, are a proper subject of discovery.

Other courts have ordered disclosure based in part on the relevance of the judicial record to a defendant's defense.  In *Horizon West*, for example, the court ordered disclosure of the documents because they "may shed light on the Government's knowledge of [defendant's] alleged wrongdoing and whether the Government was justified in delaying its prosecution [of defendant] for nearly five years."  2006 WL 305966 at *3.  The Court explicitly rejected the Government's argument that the sealed documents were irrelevant because the relator's complaint allegedly tolled the statute of limitations, reasoning the defendant was "at least entitled to the disclosure of all pertinent facts relating to the Government's investigation and the reasons

for the Government's delay." *Id.*[4]  The result here should be no different:  The United States

should be forced to reveal to Abbott its *ex parte* communications with the Florida court.[5]

Similarly, declarations and affidavits submitted to the Court under seal may be relevant to

what the United States knew—and when—about the conduct at issue in the Complaint.  The

United States' knowledge is a key issue in discovery, as such knowledge is inconsistent with the

Government's claim that it was duped by Abbott into believing that AWPs reflected actual

acquisition cost.  In fact, the United States was put on notice of the "spreads" for the Abbott

drugs at issue in this case at least as early as June 1995, when Ven-A-Care filed its original *qui*

*tam* complaint.  Yet, the United States seeks damages through January of *2001*.  The documents

that remain under seal may contain admissions regarding the United States' knowledge and its

belated decision to intervene.  These documents could form a critical part of defenses based on

government knowledge and delay, such as laches and estoppel.

Finally, granting Abbott access is critical to verifying the accuracy in general of factual

representations made to the Court by the Relator and the United States between 1995 and 2006.

*Ex parte* submissions are not subject to the beneficial testing that is an important part of our

adversary system.  *See Health Outcomes*, 409 F. Supp.2d at 51-52 (the "government's *ex parte*

---

[4] The Government's lengthy, eight-year delay in prosecuting claims in another the False Claims Act case was highlighted in the Second Circuit's November 16, 2006 decision in *United States  v. The Baylor Univ. Med. Ctr.*, No. 05-2951-cv, 2006 WL 3317695, Slip Op. at 6-9, 11-17 (2d. Cir. Nov. 16, 2006) (Ex. I).  In that case, the Second Circuit granted defendants' motion to dismiss the Government's False Claims Act claims on statute of limitations grounds.  The Second Circuit held that the Government's complaint-in-intervention did not relate back to the date on which the relator filed its complaint.

[5] Recent decisions have rejected what Abbott anticipates will be the United States' argument in response— that the Florida court's decisions to allow the extensions constitute "law of the case."  *See, e.g.*, *United States ex rel. Health Outcomes Technologies, Inc. v. Hallmark Health Sys., Inc.*, 409 F. Supp.2d 43, 51-52 (D. Mass. 2006) (court was "underwhelmed" by Government's law-of-the-case argument, reasoning the "government's *ex parte* actions will not now be left unchallenged in a court that enjoys the benefit of an adversarial proceeding in order to give deference to judgments made by a court that did not"); *Baylor*, Slip Op. at 11-17 (2d. Cir. Nov. 16, 2006) (Ex. I) (overturning District Court decision applying the law-of-the-case doctrine and granting motion to dismiss under statute of limitations).  *See also Baker & Taylor*, 955 F. Supp. at 1191-92 ("The court notes with regret that when the earlier extensions were granted in this case, the effects of inertia and the lack of an opposing party may have resulted in a less searching inquiry regarding good cause than is appropriate.").

actions will not now be left unchallenged in a court that enjoys the benefit of an adversarial proceeding in order to give deference to judgments made by a court that did not"). Moreover, misrepresentation by the Relator or the United States may give rise to a claim for relief by Abbott. *See, e.g., United States ex rel. King v. Hillcrest Healthcare Ctr.*, 264 F.3d 1271, 1280-82 (10th Cir. 2001), *cert. denied*, 535 U.S. 905 (2002). In *King*, the court dismissed a Relator's claims for lack of subject matter jurisdiction because the Relator failed to disclose to the Government all necessary information upon the filing of his *qui tam* complaint.

In this case, Abbott is entitled to confirm that *ex parte* disclosures and factual representations made by the Plaintiffs have been accurate and complete. If any discrepancies exist in the record, Abbott should be permitted to decide whether a claim for relief is appropriate.

## CONCLUSION

For all these reasons, Abbott respectfully asks that the Court enter an Order requiring the United States to provide Abbott, subject to appropriate redactions and confidentiality provisions, with copies of all documents that have been filed under seal in this case, including all filings in *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*, Case No. 95-1354-CIV-GOLD, United States District Court for the Southern District of Florida, prior to the severance of Plaintiffs' claims against Abbott.

Dated:  December 1, 2006                    Respectfully submitted,

                                           /s/ R. Christopher Cook
                                           James R. Daly
                                           Tina M. Tabacchi
                                           Brian J. Murray
                                           JONES DAY
                                           77 West Wacker Drive, Suite 3500
                                           Chicago, Illinois  60601
                                           Telephone:  (312) 782-3939
                                           Facsimile:  (312) 782-8585

                                           R. Christopher Cook
                                           David S. Torborg
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, D.C.  20001-2113
                                           Telephone:  (202) 879-3939
                                           Facsimile:  (202) 626-1700

                                           *Counsel for Defendant Abbott Laboratories, Inc.*

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

I certify that the moving party communicated with counsel for Plaintiffs in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

<u>/s/ R. Christopher Cook</u>
R. Christopher Cook

## <u>CERTIFICATE OF SERVICE</u>

I, R. Christopher Cook, an attorney, hereby certify that I caused a true and correct copy of the foregoing ABBOTT LABORATORIES, INC.'S MOTION TO COMPEL PRODUCTION OF *EX PARTE* FILINGS, and memorandum and materials in support, be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 1st day of December, 2006.

/s/ R. Christopher Cook
R. Christopher Cook