# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action No. 01-CV-12257 PBS |
| THIS DOCUMENT RELATES TO 01-CV-12257-PBS AND 01-CV-339 | Judge Patti B. Saris<br>Chief Magistrate Judge Marianne B. Bowler |

## THE BMS DEFENDANTS' SUPPLEMENTAL MEMORANUM IN RESPONSE TO PLAINTIFFS' MEMORANDUM REGARDING PER SE VIOLATIONS OF MASS. G.L. ch. 93A

**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, Massachusetts
(617) 371-1000

*Of Counsel*:
   Thomas E. Dwyer, Jr.

**HOGAN & HARTSON L.L.P.**
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Of Counsel*:
   Steven M. Edwards, Esq.
   Lyndon M. Tretter, Esq.

*Attorneys for Defendants Bristol-Myers Squibb Co. and Oncology Therapeutics Network Corp.*

\\\058559/000059 - 971993 v1

BMS submits this supplemental memorandum in response to plaintiffs' memorandum regarding <u>per se</u> violations of Mass. G.L. ch. 93A insofar as it addresses list prices. BMS agrees with the point made in the memorandum submitted on behalf of all defendants that the FTC's guidelines concerning deceptive pricing are inapplicable to this case. BMS submits this supplemental memorandum to make the additional point that, even if the FTC guidelines applied, BMS's wholesale list prices, which are the only prices it reports to industry publications, conform to those guidelines.

As demonstrated by Defendants' Exhibit 2524 and the testimony of Dr. Bell, 88.8% of BMS's net revenues during the period 1993-2002 were achieved from sales within 5% of BMS's list price -- 96% for products that were protected by patents and 31.5% for products as to which the patents had expired and the BMS drug was subject to multi-source competition. This more than satisfies the FTC guideline, which states that a list price "will not be deemed fictitious if it is the price at which substantial (that is, not isolated or insignificant) sales are made in the advertiser's trade area . . . ." 16 C.F.R. § 233.3(d). BMS's sales at or near list -- including those generating the 31.5% of net revenue for products subject to multi-source competition -- cannot be considered "isolated or insignificant" under any definition of those terms.

Plaintiffs contend that in <u>Helbros Watch Co. v. FTC</u>, 310 F.2d 868, 870 (D.C. Cir. 1962), the FTC suggested that 60% of sales made at list price would not be "sufficiently substantial" to satisfy the FTC's requirements. (Pltfs' Mem. at 8.) <u>Helbros</u> was decided in 1961, shortly before the FTC rendered its initial decision in <u>Matter of Regina Corp.</u>, 61 F.T.C. 983, 1962 F.T.C. Lexis 92, at *34-36 (Oct. 11, 1962) (<u>Regina I</u>), where it held that a list price must be the usual and customary price at which a product is sold. As we have pointed out countless times before (and plaintiffs now appear to reluctantly concede), <u>Regina</u> was effectively overruled

by the FTC when it adopted 16 C.F.R. § 233.3(d), which employs the "not isolated or insignificant" test for list prices. See Regina II, 65 F.T.C. 246, 1964 F.T.C. Lexis 30, at *8-10 (April 7, 1964).

Furthermore, contrary to what plaintiffs suggest, the FTC guideline does not provide that list prices "cannot be used" unless there are substantial sales at list. (Pltfs' Mem. at 7.) Rather, it states that a list price "will not be deemed fictitious if it is the price at which substantial (that is, not isolated or insignificant) sales are made . . . ." 16 C.F.R. § 233.3(d) (emphasis added). Thus, on its face, the FTC guideline is a safe-harbor, not a prohibition, and BMS's conduct falls within that safe-harbor.

Even if BMS's conduct did not qualify for the safe-harbor of the FTC guideline, it is well-established that conduct that conforms to standard industry practice cannot be considered unfair under Mass. G.L. ch. 93A. See, e.g., James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1251 (1st Cir. 1997) (finding no 93A unfairness when insurer "adhered to the industry custom"). BMS did not change its list prices after products lost exclusivity and ASPs were going down because it continued to make substantial sales at list price. (12/6/06 (Pasqualone) Tr. 10-11.) As Christof Marre testified, if BMS reduced its list prices to reflect ASPs, it would lose that revenue because BMS had no way of charging a customer more than list price. (11/14/06 (Marre) Tr. 164.)

Plaintiffs have pointed to isolated instances in which sales at list price were low in a particular year to argue that, in those situations at least, BMS should have reduced its list price. It is difficult to predict in advance, however, when such situations will occur. Furthermore, as the example of Cytoxan illustrates, the multi-source market is volatile and prices may rebound after suffering a temporary decline. (DX 2524.) Even in the case of Taxol in 2002, where (after

9 years with more than 90% of net sales at or near list) the percentage of sales at or near list price declined, BMS still achieved several millions of dollars in revenue in sales at or near list price. (11/14/06 (Marre) Tr. 159.)

It would be unreasonable to expect BMS to alter a business model that has been in existence for more than 30 years to accommodate every unique situation.  There is no principled doctrine that would permit the Court to conclude that a manufacturer was legally required to lower its list price and forego that revenue.  BMS should be judged on the basis of its conduct over the time period as a whole.

Dated:    December 12, 2006

                                  Respectfully Submitted,

By:   /s/ Jacob T. Elberg (BBO No. 657469)
Thomas E. Dwyer (BBO No. 139660)
Jacob T. Elberg (BBO No. 657469)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA  02210
Tel: (617) 371-1000
Fax: (617) 371-1037
tdwyer@dwyercollora.com
jelberg@dwyercollora.com

Steven M. Edwards (SE 2773)
Lyndon M. Tretter ((LT 4031)
Admitted *pro hac vice*
**HOGAN & HARTSON LLP**
875 Third Avenue
New York, NY  10022
Tel: (212) 918- 3000

*Attorneys for Defendants Bristol-Myers Squibb Company and Oncology Therapeutics Network, Corp.*

\\\058559/000059 - 971993 v1       3

## CERTIFICATE OF SERVICE

   I, Jacob T. Elberg, certify that on December 12, 2006 a true and correct copy of BMS Defendants' Supplemental Memorandum in Response to Plaintiffs' Memorandum Regarding Per Se Violations of Mass. G.L. ch. 93A was served on all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                   /s/ Jacob T. Elberg
                    Jacob Elberg

\\\058559/000059 - 971993 v1